WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail
Ralph I. Miller

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

------------------------------------------------------------------x

**REPLY IN SUPPORT OF THE PLAN ADMINISTRATOR'S**
**FIVE HUNDRENDTH OMNIBUS OBJECTION TO CLAIMS**
**<u>(NO LIABILITY FOR STONEHILL FRAUD CLAIMS)</u>**

## TABLE OF CONTENTS

REPLY ...................................................................................................................................1

    I.      Stonehill's Proffered Legal Standard Was Expressly Overruled ............................2

    II.    Stonehill Failed to State a Claim for Fraud under New York Law ........................3

         A.     Stonehill Concedes It Cannot Use the Financial Statements ......................3

         B.     No Claims Based on Comfort Statements ....................................................3

         C.     Stonehill Failed to Allege Reasonable Reliance .........................................8

         D.     Stonehill Failed to Allege Proximate Causation .......................................14

             i.      No Alleged Transaction Causation ................................................14

             ii.     No Alleged Loss Causation ...........................................................15

         E.     Stonehill Failed to Allege Recoverable Damages ....................................18

    III.   Stonehill Failed to State a Claim for Agency Under New York Law ..................21

         A.     No Allegation of Actual Authority .............................................................21

         B.     Failure to Allege Apparent Authority ........................................................24

CONCLUSION ....................................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*,
    No. 650027/11, 2012 WL 1450022, at *5-7 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 23, 2012), *rev'd*,
    967 N.Y.S.2d 1 (1st Dep't 2013), *rev'd*, 25 N.Y.3d 1043 (N.Y. 2015) ................................11

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.,*
    10 N.Y.S.3d 486 (N.Y. 2015) ......................................................................................10, 11

*Acticon AG v. China N.E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)...................................................................................................19

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*,
    254 F. Supp. 2d 373 (S.D.N.Y. 2003).....................................................................................5

*Alpert v. Shea Could Climenko & Casey*,
    559 N.Y.S.2d 312 (1st Dep't 1990) .................................................................................20, 21

*In re Ames Dep't Stores, Inc.,*
    274 B.R. 600 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. LFD Operating, Inc. v. Ames Dep't
    Stores, Inc.*, No. 01-42217 (REG), 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004), *aff'd sub
    nom. In re Ames Dep't Stores, Inc.*, 144 F. App'x 900 (2d Cir. 2005) .....................................23

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 327(S.D.N.Y. 2010) ...............................................................................15, 26

*Aris Multi-Strategy Offshore Fund, Ltd. v. Devaney*,
    No. 602231/08, 2009 WL 5851192 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 14, 2009) ...............11, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................2, 25

*AUSA Life Ins. Co. v. Ernst & Young*,
    206 F.3d 202 (2d Cir. 2000)...........................................................................................14, 18

*In re B. & R. Glove Corp.*,
    279 F. 372 (2d Cir. 1922).....................................................................................................11

*Bavaria Int'l Aircraft Leasing GmbH v. Clayton, Dubilier & Rice, Inc.*,
    No. 03 Civ. 0377 (NRB), 2003 WL 21767739 (S.D.N.Y. July 30, 2003)................................5

*Belin v. Weissler*,
    No. 97 Civ. 8787 (RWS), 1998 WL 391114 (S.D.N.Y. July 14, 1998) ...................................8

ii

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................2, 11

*Bennett v. U.S. Trust Co.*,
    770 F.2d 308 (2d Cir. 1985)............................................................................15, 16

*Cannon v. Douglas Elliman, LLC*,
    No. 06 Civ. 7092 (NRB), 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007)...............................23

*Carbon Capital Management, LLC v. American Express Co.*,
    932 N.Y.S.2d 488 (2nd Dep't 2011) ..............................................................12, 13

*Car Carriers, Inc. v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) .....................................................................7

*Cohen v. Prudential-Bache Secs., Inc.*,
    713 F. Supp. 653 (S.D.N.Y. 1989) ...............................................................7

*Commercial Fin. Servs., Inc. v. Great Am. Ins. Co.*,
    381 F. Supp. 2d 291 (S.D.N.Y. 2005).............................................................25

*Conley v. Gibson*,
    355 U.S. 41 (1957).............................................................................2, 25

*Davis v. CCF Capital Corp.*,
    717 N.Y.S.2d 207 (2d Dep't 2000)................................................................7

*DH Cattle Holdings Co. v. Smith*,
    607 N.Y.S.2d 227 (1st Dep't 1994) ...............................................................3

*Doehla v. Wathne Ltd.*,
    No. 98 Civ. 6087 (CSH), 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999)...................................13

*Dover Ltd. v. A.B. Watley, Inc.*,
    423 F. Supp. 2d 303 (S.D.N.Y. 2006).............................................................5

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014).....................................................................2

*Elbit Sys., Ltd. v. Credit Suisse Grp.*,
    917 F. Supp. 2d 217 (S.D.N.Y. 2013)............................................................25

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
    343 F.3d 189 (2d Cir. N.Y. 2003)..............................................................12, 16

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)....................................................................5

*In re Fairway Grp. Holding Corp. Secs. Litig.*,
  No. 14 Civ. 0950 (LAK) (AJP), 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015).........................7

*Freudenberg v. E*TRADE Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)......................................................................................7

*Geary v. Hunton & Williams*,
  684 N.Y.S.2d 207 (1st Dep't 1999) .......................................................................................20

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998)........................................................................................8

*Hallock v. State*,
  64 N.Y.2d 224 (N.Y. 1984) ...................................................................................................24

*Hunt v. Alliance N. Am. Gov. Income Trust Inc.*,
  159 F.3d 723 (2d Cir. 1998)....................................................................................................9

*Isr. Discount Bank v. NCC Sportswear, Corp.*,
  No. 603912/06, 2008 WL 518151 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 21, 2008) .........................5

*Johnson v. Priceline.com, Inc.*,
  711 F.3d 271 (2d Cir. 2013)...................................................................................................22

*Kensington Publ'g Corp. v. Kable News Co., Inc.*,
  474 N.Y.S.2d 524 (1st Dep't 1984) .......................................................................................20

*Lama Holding Co. v. Smith Barney, Inc.*,
  88 N.Y. 2d 413 (N.Y. 1996) ..................................................................................................20

*Laub v. Faessel*,
  745 N.Y.S. 2d 534 (1st Dep't 2002) ......................................................................................16

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997)..................................................................................................9

*Longo v. Butler Equities II, L.P.*,
  718 N.Y.S.2d 30, 31 (N.Y. App. Div. 1st Dep't 2000) ............................................................5

*Matana v. Merkin*,
  989 F. Supp. 2d 313 (S.D.N.Y. 2013)..............................................................................14, 15

*Maung Ng We v. Merrill Lynch & Co.*,
  No. 99- 9687, 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000)............................................22, 23

*In re Merrill Lynch Auction Rate Secs. Litig.*,
  No. 09-2030, 2011 WL 1330847, at *6 (S.D.N.Y. Mar. 30, 2011) ...................................16, 17

iv

*Miller v. Lazard, Ltd.*,
    473 F. Supp. 2d 571 (S.D.N.Y. 2007)..................................................................6

*National Western Life Insurance Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    89 F. App'x 287 (2d Cir. Jan. 12, 2004) .............................................................12

*Newman v. Rothschild*,
    662 F. Supp. 957 (S.D.N.Y. 1987) .....................................................................7

*In re Oxford Health Plans, Inc.*,
    187 F.R.D. 133 (S.D.N.Y. 1999) ........................................................................4

*Page v. Clark*,
    195 N.Y.S. 529 (N.Y. Sup Ct. Cayuga Cnty. 1922) .....................................18, 19

*Race v. Goldstar Jewellery, LLC*,
    924 N.Y.S.2d 166 (2d Dep't 2011).....................................................................23

*Rather v. CBS Corp.*,
    886 N.Y.S.2d 121 (1st Dep't 2009) ...................................................................20

*Robinson v. Deutsche Bank Trust Co. Americas*,
    572 F. Supp. 2d 319 (S.D.N.Y. 2008)................................................................10

*Rodas v. Manitaras*,
    552 N.Y.S. 2d 618 (1st Dep't 1990) ....................................................................9

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
    404 F. Supp. 2d 605 (D.N.J. 2005) ...................................................................19

*Scutti Enters., LLC v. Park Place Entm't Corp.*,
    322 F.3d 211 (2d Cir. 2003)................................................................................2

*In re Shulman Transp. Enters., Inc.*,
    744 F.2d 293 (2d Cir. 1984)........................................................................22, 23

*Steger v. Orth*,
    258 F. 619 (2d Cir. 1919)..................................................................................19

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
    665 N.Y.S.2d 415 (1st Dep't 1997) .....................................................................8

*UST Private Equity Investors Funds, Inc. v. Salomon Smith Barney*,
    733 N.Y.S.2d 385 (1st Dep't 2001) .....................................................................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009)................................................................21

WEIL:\95403087\6\58399.0011

*Waksman v. Cohen*,
    No. 00 Civ. 9005 (WK), 2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002)...................................9

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) ......................................................................................6

*In re White*,
    168 B.R. 825 (Bankr. D. Conn. 1994) .....................................................................................20

*Yucyco, Ltd. v. Republic of Slovenia*,
    984 F. Supp. 209 (S.D.N.Y. 1997) ............................................................................................7

*Zanani v. Savad*,
    630 N.Y.S.2d 89 (2d Dep't 1995).........................................................................................4, 5

**Statutes**

C.P.L.R. 3211...................................................................................................................5, 11

**Other Authorities**

Rule 8 ............................................................................................................................11

Rule 9(b) ...................................................................................................................5, 6, 7

Rule 12(b)(6)...............................................................................................................5, 23

WEIL:\95403087\6\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates") files this reply to the response [ECF No. 50282] (the "Response") of Stonehill Institutional Partners, L.P. and Stonehill Offshore Partners Limited (together, "Stonehill") to the Plan Administrator's Five Hundredth Omnibus Objection to Claims (No Liability for Stonehill Fraud Claims) [ECF No. 49764] (the "Objection")[1] and respectfully represents as follows:

## **REPLY**

1.      The Court should sustain the Objection on each of the independent bases it asserts.  Those grounds include: (I) Stonehill's failure to allege each and every prima facie element of fraud: (A) Stonehill failed to allege a material misrepresentation of fact; (B) Stonehill failed to allege reasonable reliance; (C) Stonehill failed to allege proximate causation (both loss causation and transaction causation); and (D) Stonehill failed to allege recoverable damages; and (II) Stonehill's failure to allege facts to support independent liability of twenty separate defendants.

2.      To dismiss the Second Amended Claims, the Court need only sustain one of the many bases for objection.  Conversely, for the Second Amended Claims to survive, Stonehill would have had to overcome each and every basis for objection.  As demonstrated below, Stonehill failed to do so.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed such terms in the Objection.

## I.    Stonehill's Proffered Legal Standard Was Expressly Overruled

3.    As an initial matter, the legal standard upon which Stonehill relies in its Response was expressly overruled by the Supreme Court of the United States more than eight years ago.  In particular, Stonehill asserts:

> A court may not dismiss a complaint "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief."

(Resp. ¶ 25 (quoting *Allstate Ins. Co. v. Sidakis*, No. 13-CV-7211, 2014 WL 5698854, at *2 (E.D.N.Y. Nov. 5, 2014), and *Scutti Enters., LLC v. Park Place. Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)).)  The cases Stonehill cited adopt their "no set of facts" language from a line of cases dating back to *Conley v. Gibson*, 355 U.S. 41 (1957).

4.    In overruling *Conley*, the Supreme Court stated: "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . [T]his famous observation has earned its retirement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 563 (2007).  The Supreme Court subsequently stated: "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 678 (2009) (quotation marks omitted).

5.    More recently, the Court of Appeals for the Second Circuit has stated: "Contrary to *Conley's* 'no-set-of-facts' standard, which requires only that a complaint not *preclude* the viability of claims, *Twombly* and *Iqbal* require that a complaint *support* the viability of its claims by pleading sufficient nonconclusory factual matter to set forth a claim that is plausible on its face." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for *all* civil actions . . . ." (quotation marks and citation omitted; emphasis added)).

2

## II.    Stonehill Failed to State a Claim for Fraud under New York Law

### A.    Stonehill Concedes It Cannot Use the Financial Statements

6.    In response to the Objection, Stonehill concedes it will not attempt to assert an independent fraud claim based on the Financial Statements.  (Resp. ¶ 48 n.12.)  Thus, Stonehill's $163 million claims rest on Comfort Statements made during a single telephone call.

### B.    No Claims Based on Comfort Statements

7.    Stonehill cannot avoid the impact of case law cited in the Objection which holds that a party asserting a fraud claim must articulate (i) a specific misrepresentation of a material present fact, (ii) more than vague expressions of hope and future expectation, and (iii) more than "mere opinion and puffery."  (Obj. ¶ 22 (citing *DH Cattle Holdings Co. v. Smith*, 607 N.Y.S.2d 227, 231 (1st Dep't 1994)).)

8.    Stonehill's reliance on *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, to save its claims is misplaced.  135 S. Ct. 1318, 1325 (2015).  *Omnicare* holds that the statement "we believe [x]" may be a misrepresentation of a material present fact if the speaker does not believe "[x]."  *Id.* at 1326, 1327.  The Court distinguished the statement "we believe," which is "determinate [and] verifiable," from "mere puffery."  *Omnicare*, 135 S.Ct. at 1326.  Even under *Omnicare*, "investors [may not] second-guess inherently subjective and uncertain assessments."  *Id.* at 1327.  The Comfort Statements alleged are not the type of "we believe," "determinate [and] verifiable" statements addressed in *Omnicare*.  By contrast, they are exactly the puffery-type statements that New York State courts have robustly held are not actionable.  (*See* Obj. ¶ 23 (collecting cases).)  The *Omnicare* decision was issued prior to Stonehill's filing of the Second Amended Claims.  If Stonehill wanted *Omnicare* to apply, Stonehill could have alleged facts consistent with the decision.

3

9.      Likewise, the statements in *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999), are easily distinguished from the Comfort Statements.  In *Oxford*, the court observed that it would be "disingenuous to suggest that factual assertions are puffery and opinion that no reasonable investor could reasonably rely on for their truth simply because [the speaker] claims only to have stated that it believes in their truth." *Id.* at 141.  As demonstrated in the Objection, the Comfort Statements are not factual assertions on which a reasonable investor could reasonably rely.  As demonstrated by the multitude of cases cited in the Objection (including the many that post-date *Oxford*), *Oxford* does not preclude a court from dismissing a claim based on non-actionable statements of opinion.  Moreover, the *Oxford* court applied the pre-*Twombly* pleading standard that "[d]ismissal is appropriate only if the plaintiffs can prove no set of facts that would entitle them to relief." *Id.* at 138.

10.     In its Response, Stonehill concedes that half of the Comfort Statements are not misrepresentations of a material present fact.  (*See* Resp. ¶¶ 32, 33.)  Stonehill failed to rebut the Plan Administrator's arguments with respect to the remaining Comfort Statements.

11.     As set forth in the Objection, the remaining Comfort Statements are not actionable because they are not statements of fact.  New York and federal courts have repeatedly dismissed fraud claims based on those types of statements.  (*See* Obj. ¶ 23 (collecting cases).)

12.     Stonehill cites *Zanani v. Savad*, 630 N.Y.S.2d 89 (2d Dep't 1995), for the proposition that "where alleged misrepresentations relate to past or existing facts they constitute actionable statements of fact."  (Resp. ¶ 33).  This is not determinative, though, because *Zanani* does not hold that all such misrepresentations are actionable.  *Zanani* states that actionable statements of fact are "distinguished from a mere estimate or expression of opinion." *Id.* at 90 (noting, for example, that even "a projection of a plaintiff's future real estate tax liability

4

generally is considered to be an estimate and can only reasonably be understood as such given the volatility of tax rates and assessments."). In addition, *Zanani* was considering a motion to dismiss under C.P.L.R. 3211, a materially more lenient standard than required here.

13.    Further, Rule 9(b) requires that the Second Amended Claims explain why the alleged statements are fraudulent. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). A plaintiff must allege facts that show "why the plaintiff believes the statements were fraudulent." *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006). Alleged representations must "be individually analyzed in order to determine whether the plaintiff has pleaded fraud with particularity." *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 382 n.2 (S.D.N.Y. 2003) (a complaint that "alleges that the 'overall impression' conveyed by the defendants was misleading," does not satisfy Rule 9(b)); *see also Bavaria Int'l Aircraft Leasing*, No. 03 Civ. 0377 (NRB), 2003 WL 21767739 at *4 (S.D.N.Y. July 30, 2003) ("[T]he law is clear that where a complaint alleges several fraudulent statements or omissions, courts must examine each allegation to determine whether it independently satisfies the requirements for fraud under Rule 12(b)(6) and 9(b)[.]"); *Omnicare*, 135 S. Ct. at 1324–27 (separately analyzing each alleged fraudulent statement).

- The Second Amended Claims include only generalized, blanket allegations about "business operations" on which "the Lehman Entities' business model was founded." (2d Am. Claims ¶ 29.) Stonehill's failure to identify what about those "business operations" made this Comfort Statement false—or even to identify which of "the Lehman Entities" was involved in such "business operations"—fails to satisfy the particularity requirement of Rule 9(b). *See Longo v. Butler Equities II, L.P.*, 718 N.Y.S.2d 30, 31 (N.Y. App. Div. 1st Dep't 2000); *Isr. Discount Bank v. NCC Sportswear, Corp.*, No. 603912/06, 2008 WL 518151 at *3 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 21, 2008) (statement that "the company was doing well financially" not actionable as fraud).

- Stonehill's blanket allegations about "the Lehman Entities'" "long term assets[,] and short term liabilities" do not satisfy the particularity requirements of Rule 9(b). *See Eternity Global*, 375 F.3d at 187. LBHI's prepetition consolidated financial

WEIL:\95403087\6\58399.0011

statements, for example, show massive assets and liabilities of various tenors. *See* Lehman Brothers Holdings Inc. Form 10-Q at 48 (July 10, 2008) (Condensed Consolidated Balance Sheet). Stonehill does not allege which of "the Lehman Entities" was involved in unspecified relevant "business operations." In the context of an international corporate organization and capital structure, Stonehill's generalized allegations do not satisfy Rule 9(b). *See, e.g.*, *Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 586 (S.D.N.Y. 2007) (dismissing action under Rule 9(b) where "the Complaint does not identify any specific sales of shares to hedge funds that were allegedly 'flipped' immediately after the IPO, nor does it indicate to whom the shares were sold"). *See also, e.g.*, *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 389 (Bankr. S.D.N.Y. 2014) (dismissing complaint where it did not "at the least identify in its complaint the particular Debtors that are to be included as part of the collapsing analysis, and whose assets are alleged to have been transferred or subjected to liens").

- The Second Amended Claims fail to satisfy Rule 9(b) with respect to the statement that "**Lehman . . . had a cushion** of $12 billion of **surplus** cash" on September 8, 2008. Stonehill failed to allege why the statement was false. Stonehill alleges the Chapter 11 Estates had less than $12 billion of unencumbered cash on September 12, 2008. (2d Am. Claims ¶ 27.) But an allegation regarding liquidity **on September 12, 2008** does not contradict a statement about liquidity **on September 8, 2008**. This is particularly true given the well-known, fast-changing circumstances leading up to these chapter 11 cases.

- Finally, a "significant limitation" on the "ability to deleverage," a "lack of liquidity," and "depressed prices" (2d Am. Claims ¶¶ 30–32) are not facts that contradict representations made in Comfort Statements. They are just glass-half-empty versions of the Comfort Statements. They do not establish falsity.

14. Stonehilll attempts to create an exception to the case law cited in the Objection without support from any case law. Stonehill coins the term "affirmative reassurances" to capture puffery and mere opinion in the Comfort Statements related to "current corporate strength and the probable future of a company or investment." (Resp. ¶¶ 38, 40.) Without precedent Stonehill asserts that the "affirmative reassurances" are equivalent to statements of material present fact. As demonstrated below, the cases Stonehill cited do not support Stonehill's new theory of liability. Each case involves determinate, verifiable statements of material fact. However they are defined, the Comfort Statements are not actionable in a claim for fraud.

6

- The statements in *Freudenberg v. E*TRADE Fin. Corp.*, 712 F. Supp. 2d. 171 (S.D.N.Y. 2010), were "misrepresentations of existing facts": "decline in asset quality"; "growth in cash, assets and credit"; "specific 'credit characteristics'—FICO scores and LTVs." *Id.* at 189, 190, 191 (citations omitted).

- The Report and Recommendation in *In re Fairway Grp. Holding Corp. Secs. Litig.*, No. 14 Civ. 0950 (LAK) (AJP), 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) is similarly inapposite. There:

  > plaintiff contrasts statements in the IPO Prospectus highlighting Fairway's "'scalable infrastructure'" and "'proven ability to replicate [its] store model'" with statements from [witnesses] that Fairway's infrastructure, including its IT department and its warehousing and distribution facilities, could not support Fairway's current stores, let alone a significant expansion.

  *Id.* at 8 (citations omitted).

- *Davis v. CCF Capital Corp.*, 717 N.Y.S.2d 207 (2d Dep't 2000), involved consumer plaintiffs, a defendant who "held himself out as having expertise as a financial advisor," and a fiduciary relationship between the parties. *Id.* at 209. The defendant allegedly represented that certain mortgage "loans were low risk, high yield, secure, safe, sound, and suitable for [plaintiffs'] retirement funds." *Id.* But in fact "[t]he mortgages were inadequately secured. Two of the mortgages [were] in default, and one is in foreclosure." *Id. Cohen v. Prudential-Bache Secs., Inc.*, 713 F. Supp. 653 (S.D.N.Y. 1989), involves facts substantially similar to those in *Davis* and is inapposite for the same reasons. *See id.* at 657.

- *Newman v. Rothschild*, 662 F. Supp. 957 (S.D.N.Y. 1987), involved alleged representations that the plaintiffs could "earn 20 to 30% return on [their] investment without risk to principal." *Id.* at 959. The court held that "[t]he inclusion of a specific percentage such as this puts the misrepresentation in a different category from" mere puffery. *Id.*

15.     The Court should reject Stonehill's attempt throughout the Response (and particularly in paragraphs 28–45) to amend the Second Amended Claims to bring them into compliance with the requirements of Rule 9(b). "[I]t is well-settled that a claim for relief may not be amended by the briefs in opposition to a motion to dismiss." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 216, 217 (S.D.N.Y. 1997) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988) (quotation marks omitted)); *accord Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (describing this principle

as "axiomatic").  Stonehill has had adequate opportunities to plead its fraud claims against the

Chapter 11 Estates.  (*See* Obj. ¶¶ 6–14.)  Its time for pleading ended with the Second Amended

Claims.

### C.    Stonehill Failed to Allege Reasonable Reliance

16.    As argued in the Objection and as conceded in the Response, Stonehill's

claims for fraud cannot be based on the Financial Statements.  (Obj. ¶¶ 24–30; Resp. ¶ 48 n.12.)

Accordingly, the relevant reliance inquiry is limited to Stonehill's alleged *reliance on the*

*Comfort Statements* (assuming *arguendo*, the Comfort Statements contain misrepresentations of

material fact, which they do not).

17.    As set forth in the Objection, it is "a matter of law" that a sophisticated

plaintiff cannot establish justifiable reliance on alleged misrepresentations "if that plaintiff failed

to make use of the means of verification that were available to it, such as reviewing the files of

the other parties."  *UST Private Equity Investors Funds, Inc. v. Salomon Smith Barney*, 733

N.Y.S.2d 385, 386 (1st Dep't 2001); *see also Belin v. Weissler*, No. 97 Civ. 8787 (RWS), 1998

WL 391114, at *6 (S.D.N.Y. July 14, 1998) (citing *Lazard Freres & Co. v. Protective Life Ins.*

*Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) (dismissing fraud claim based on plaintiff's failure to

fulfill his "obligation . . . to secure and review a copy of the insurance policy upon which his

investment decision was allegedly premised"); *Granite Partners, L.P. v. Bear, Stearns & Co.*

*Inc.*, 17 F. Supp. 2d 275, 290 (S.D.N.Y. 1998); *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,

665 N.Y.S.2d 415, 417, 418 (1st Dep't 1997) ("Plaintiffs were relatively sophisticated investors

who should have understood the risks of investing in a real estate venture without conducting a

'due diligence' investigation or consulting their lawyers and accountants.  In fact, Lorraine

Borden did not even read the *prospectus,* the implication being that she entered into this venture

based on Politis' alleged oral promises alone.  As such reliance is not reasonable, the existence of

8

a dispute as to whether Politis made such promises does not create a triable issue on the fraud claim."). A sophisticated plaintiff on notice of inconsistent or incomplete information may not rely solely on a party's oral representation even where it does not have access to underlying documentation. *See Waksman v. Cohen*, No. 00 Civ. 9005 (WK), 2002 WL 31466417, at *7 (S.D.N.Y. Nov. 4, 2002); *Rodas v. Manitaras*, 552 N.Y.S. 2d 618, 620 (1st Dep't 1990). Courts may dismiss a claim on a motion to dismiss for failure to allege reasonable reliance. *See Hunt v. Alliance N. Am. Gov. Income Trust Inc.*, 159 F.3d 723, 730 (2d Cir. 1998).

18.    The Second Amended Claims contain *no* allegation that Stonehill took *any step following its conversation with Mr. Wickham* to verify the Comfort Statements. Accordingly, Stonehill's reliance on the Comfort Statements was unreasonable as a matter of law.

19.    In its Response, Stonehill confuses and attempts to substitute allegations of reliance on Financial Statements with the requisite (but absent) allegations of reliance on subsequent Comfort Statements. Stonehill incorrectly describes its conversation with Mr. Wickham as Stonehill's relevant inquiry (*e.g.*, Resp. ¶ 59) *after and based on* its "mid-2008" review of the Financial Statements (*id.* ¶ 47 (quoting 2d Am. Claim ¶ 17), 48, 50). But the duty to inquire arises after the relevant misrepresentation (here, the Comfort Statements) has occurred. *See Rodas*, 552 N.Y.S.2d at 620 ("[W]here, as here, a party has been put on notice of the existence of material facts which have not been documented and . . . nevertheless proceeds with a transaction without securing the available documentation . . . he may truly be said to have willingly assumed the business risk that the facts may not be as represented."); *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d at 1543 (quoting *Rodas*). The Second Amended Claims contain no allegation that Stonehill requested any factual information in support of the Comfort

9

Statements, *i.e.*, no allegation of a relevant "inquiry." The Comfort Statements, without more, are not actionable. Any reliance by Stonehill on the Comfort Statements was unreasonable as a matter of law.

20.    As described in the paragraphs below, the cases cited in the Response on this prima facie element provide no basis to overrule the Objection.

21.    Despite clear Second Circuit precedent, Stonehill cited four cases for the blanket proposition that this Court cannot dismiss a claim based on a failure to allege reasonable reliance. One case directly contradicts Stonehill's assertion. In *Robinson v. Deutsche Bank Trust Co. Americas*, 572 F. Supp. 2d 319 (S.D.N.Y. 2008), the District Court specifically stated that, "under certain circumstances, dismissal is appropriate at this stage in the litigation." *Id.* at 323. None of the other cases supports Stonehill's blanket assertion. As Stonehill concedes in its quotation of *ACA Financial Guaranty Corp. v. Goldman, Sachs & Co.,* 10 N.Y.S.3d 486 (N.Y. 2015), "what constitutes reasonable reliance is *not generally* a question to be resolved as a matter of law on a motion to dismiss." *Id.* at 487, 488 (emphasis added). But, the court in that case reiterated that "when the party to whom a misrepresentation is made has hints of its falsity, a heightened degree of diligence is required of it. It cannot reasonably rely on such representations without making additional inquiry to determine their accuracy." *Id.* at 487 (quoting *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1002 (N.Y. 2011)). Here, Wickham allegedly made the Comfort Statements on September 8, 2008. On September 9, 2008, LBHI's stock price declined by 45%. (Hopkins Decl. Ex. A.) Between September 10 and September 12, 2008, the price declined by an additional 53%. (*Id.*) On September 15, 2008, LBHI commenced its chapter 11 case and its stock declined 94%. (*Id.*) Stonehill's Response that "after [the Comfort Statements], Stonehill was not on notice of any

10

material facts that would have made its reliance unquestionably unreasonable" is patently

meritless. (Resp. ¶ 56.) *See In re B. & R. Glove Corp.*, 279 F. 372, 380 (2d Cir. 1922).

Moreover, the court in *ACA Financial* applied the pleading standard under C.P.L.R. 3211, where

"the criterion is whether the proponent of the pleading has a cause of action, not whether he has

stated one." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, No. 650027/11, 2012 WL

1450022, at *5-7 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 23, 2012), *rev'd*, 967 N.Y.S.2d 1 (1st Dep't

2013), *rev'd*, 25 N.Y.3d 1043 (N.Y. 2015).    Here, the standard under Rule 8 and *Twombly* is

more exacting.

22.    Like *ACA Financial*, the court in *Aris Multi-Strategy Offshore Fund, Ltd.*

*v. Devaney* applied the more lenient pleading standard of C.P.L.R. 3211. No. 602231/08, 2009

WL 5851192, at *4 (N.Y. Sup. Ct. N.Y. Cnty. Dec. 14, 2009). In addition, in that case, the court

found that the defendant owed a fiduciary duty to the plaintiff. This is relevant because the court

stated "[r]eliance on a fiduciary's representation is generally justified," and reliance on a

fiduciary may be reasonable even if "plaintiffs had opportunity to conduct their own due

diligence." *Id.* at 8.

23.    Similarly*, Maloul v. Berkowitz* does not create a bar to dismissal of a

claim on a motion to dismiss. No. 07 Civ. 8525 (LBS), 2008 WL 2876532 (S.D.N.Y. July 23,

2008). As quoted by Stonehill, the case states only that reliance is not "generally" determinative

on a motion to dismiss. *Id.* at 2. The discussion in the case does not support Stonehill's reliance

arguments. The case involved "inexperienced, casual" plaintiffs and the court stated:

> We find that this case is readily distinguishable from other cases where motions to
> dismiss have been granted for inappropriate reliance based on plaintiff's
> sophistication and experience. Quite simply, "sophisticated business entities are
> held to a higher standard." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d
> 393, 406 (S.D.N.Y. 2004). *See Most v. Monti*, 91 A.D.2d 606, 456 N.Y.S.2d 427,
> 428 (N.Y. App. Div. 2d Dep't 1982) ("What plaintiffs seek in this instance is an

implausible finding that an experienced businessman . . . in assuming a major proprietary interest in a commercial enterprise, and incurring a heavy financial obligation, did so on verbal assurances given him by one of the defendants."); *Marine Midland Bank v. Palm Beach Moorings, Inc.*, 61 A.D.2d 927, 403 N.Y.S.2d 15, 17 (N.Y. App. Div. 1st Dep't 1978) ("The thesis advanced requires a finding that an experienced business man, assuming a controlling interest in a corporation and incurring heavy financial obligations, did so on the basis of verbal assurances given to him by the seller and a bank official.").

. . . It is worth noting that at least one case suggests that if plaintiff is sophisticated and experienced, these factors trump the personal relationship between the parties. *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196 (2d Cir. N.Y. 2003) ("Given the sophistication of this financial transaction and of the parties, and absent any allegation of a fiduciary relationship, the personal friendship between Waldron and Hansen does not make appellant's reliance on the alleged extra-contractual representations reasonable."). Here, plaintiff appears to have been an inexperienced, casual investor based on the facts alleged in the Complaint, and thus *Emergent Capital* is inapplicable.

*Maloul*, 2008 WL 2876532 at \*3 & n.3.

24.     Stonehill next cited two cases for the generic proposition that sophisticated entities can, without more, justifiably rely on fraudulent statements.  (Resp. ¶ 54.)  Neither is binding or persuasive.  *National Western Life Insurance Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* involved an analysis under Texas law, which has a materially different duty of inquiry than New York law does.  89 F. App'x 287, 290, 291, 292 (2d Cir. Jan. 12, 2004) ("[u]nder applicable Texas law, this duty of inquiry 'extends only to those matters that are fairly suggested by facts that are actually known, rather than circumstances that merely arouse suspicion in the mind of a reasonably prudent person'" and recognizing that "that a person may not justifiably rely on a representation if 'there are 'red flags' indicating such reliance is unwarranted.'") (citations omitted).  *Carbon Capital Management, LLC v. American Express Co.* is equally unpersuasive.  932 N.Y.S.2d 488 (2nd Dep't 2011).  The court held that sophisticated plaintiffs may sometimes reasonably rely on a misrepresentation but did not describe the circumstances under which such reliance would be reasonable.  *Id.* at 494.  For the reason

WEIL:\95403087\6\58399.0011

explained by the court in *Aris*, it is relevant that in *Carbon Capital*, the defendant owed the plaintiff a fiduciary duty that is not owed in the current case to Stonehill.

25.     Stonehill cited *Doehla v. Wathne Ltd.*, No. 98 Civ. 6087 (CSH), 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999), for the proposition that the Second Amended Claims need not contain "affirmative allegations detailing the investigative efforts." (Resp. ¶ 53.) But *Doehla* applies only where, among other things, there is "no suggestion of red flags or other circumstances exist making the plaintiff's inactivity unquestionably unreasonable." *Doehla*, 1999 WL 566311 at *12. Here, as described above, the market waived "red flags" after the Comfort Statements were made. Stonehill's inactivity was unquestionably unreasonable while LBHI's stock price declined over 90% subsequent to the Comfort Statements and leading up to the Commencement Date and the filing of insolvency proceedings for Lehman affiliates around the world; it was even more unreasonable following the Commencement Date. Even if Stonehill spoke with Wickham as a result of "red flags regarding the Lehman Entities' stability" before September 8, 2015 (Resp. ¶ 53 & n.18), Stonehill ignored all flags and circumstances that arose subsequently.

26.     Finally, Stonehill cited three cases for the proposition that a plaintiff need not investigate if matters are "peculiarly" in the defendant's knowledge. (Resp. ¶ 55 (citing *Yusin Brake Corp. v. Motorcar Parts of Am., Inc.*, No. 13 Civ. 9223 (DLC), 2014 WL 2560612 (S.D.N.Y. June 6, 2014); *Warner Theatre Assocs. Ltd. P'ship v. Metro. Life Ins. Co.*, 149 F.3d 134 (2d Cir. 1998); and *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748 (DAB), 2006 WL 278138 (S.D.N.Y. Feb. 2, 2006).) These cases have no relevance to the Second Amended Claims. The subject matter of the Comfort Statements (Lehman's financial stability, cash and liquidity, ability to obtain financing, and operations in the ordinary course)

13

were not "peculiarly" in the defendant's knowledge.  As LBHI's stock price and public chapter 11 filing indicated, the market was aware of changing circumstances subsequent to the Comfort Statements.

### D.     Stonehill Failed to Allege Proximate Causation

#### i.     No Alleged Transaction Causation

27.     Stonehill's Response actually supports the Objection with respect to transaction causation.  First, Stonehill concedes that the only "transaction" alleged in the Second Amended Claims is that: but for the Purported Misrepresentations, Stonehill would have transferred its prime brokerage accounts to another broker-dealer and terminated its foreign exchange forward contracts prior to the SIPA Commencement Date.  (Resp. ¶ 61 ("Put another way, maintaining its securities at LBI is the act that, but for [the Purported Misrepresentations], Stonehill would not have done to its detriment.").)  Second, Stonehill acknowledges the applicability of the District Court ruling in *Matana v. Merkin*, 989 F. Supp. 2d 313 (S.D.N.Y. 2013), to the Claims.  (*Id.* ¶¶ 62, 63.)

28.     As set forth in the Objection, the "transaction" alleged by Stonehill is insufficient to plead a Diminution Claim.  (Obj. ¶ 48 n.9).  The District Court ruling in *Matana v. Merkin* makes clear that for Stonehill to establish transaction causation in a fraud claim to recover investment losses (*i.e.*, the Diminution Claims), Stonehill must have alleged reliance on the Purported Misrepresentations in deciding to not liquidate *that investment* (*i.e.*, each of the 137 unique securities in its prime brokerage account the allegedly decreased in value) prior to the SIPA Commencement Date.  *Matana*, 989 F. Supp. 2d at 324.[2]  Clearly Stonehill did not do this.

---

[2] The two cases cited by Stonehill where the court actually discussed whether the plaintiff adequately alleged transaction causation further demonstrate that the relevant "transaction" for establishing transaction causation with respect to fraud claims seeking recovery of investment losses based on the diminution in value of securities held by a plaintiff is the decision by the plaintiff to either purchase or hold the securities giving rise to the loss.  *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 209 (2d Cir. 2000) (finding transaction causation where plaintiff

As noted in the Objection, Stonehill could not do this because Stonehill acknowledged that "Lehman Brothers does not advise prime brokerage customers … on … the nature, value, potential or suitability of any particular investment."  (Obj. n.9 (quoting PB Agreements § 21(i)).

29.    The District Court ruling in *Matana* also makes clear that Stonehill must have alleged more than it did to "plausibly plead" transaction causation in a fraud claim to recover the FX Claims.  Stonehill did not at all allege that, in the week before or the week after LBHI filed its bankruptcy petition, Stonehill *could have* either novated or terminated its in-the-money contracts with LBI and avoided the FX Claims.  Novation would have required Stonehill to allege that a third party was willing to take on LBI's credit risk when it was seeking to reduce its commercial exposure to Lehman Brothers itself.  (*See* 2d Am. Claim ¶ 37 (stating that the purpose of the Comfort Statements was to "dissuade [Stonehill] from . . . reducing [its] counterparty exposure to LBI.").)  Termination would have resulted only in a receivable from, and the same general unsecured claim against, LBI.

ii.    No Alleged Loss Causation

30.    Stonehill's Response also supports the Objection with respect to loss causation.  Stonehill admits that "the Lehman Entities' misrepresentations did not relate to the value of Stonehill's securities."  (Resp. ¶ 68.)  This admission precludes any finding of loss causation with respect to the Diminution Claims under controlling precedent.

31.    Loss causation in a fraud claim seeking damages for diminution in value of securities requires adequate allegation of a causal connection between the alleged misrepresentation and the decline in value of the securities.  *See Bennett v. U.S. Trust Co.*, 770

---

alleged that but for alleged misrepresentations regarding the financial soundness of the issuer, plaintiffs would not have purchased or continued to hold securities of issuer); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 351 (S.D.N.Y. 2010) (finding transaction causation where plaintiff alleged that but for alleged misrepresentations regarding defendants' participation as equity investors in real estate deal, the plaintiff would not have made the investment).

15

F.2d 308, 314 (2d Cir. 1985); *accord Laub v. Faessel*, 745 N.Y.S. 2d 534, 536 (1st Dep't 2002)

(dismissing fraud claim for failure to plead loss causation because plaintiff failed to allege that

any of the defendant's purported misrepresentations "concerned the financial condition of any of

the companies whose stock he recommended to plaintiff."); *see also Emergent Capital*, 343 F.3d

at 197 ("the proximate cause element of common law fraud requires that plaintiff adequately

allege a causal connection between defendants' [misrepresentations] and the subsequent decline

in the value of [the plaintiff's] securities").  As described below, none of the cases cited in the

Response on this point contradict the Second Circuit's holding in *Bennett*.

32.    Stonehill cannot rely on *Marbury Management, Inc. v. Kohn,* as it

attempts to.  629 F.2d 705, 708 (2d Cir. 1980).  In *Bennett*, the Second Circuit distinguished the

misrepresentations at issue in *Marbury*, which related to the value of the securities at issue in that

case, from misrepresentations, such as the Purported Misrepresentations here, that do not relate

to the value of the securities at issue in Stonehill's accounts.  *Bennett*, 770 F.2d at 314.  In

*Marbury*, the court found that misrepresentations established the requisite loss causation because

the misrepresentation related to the investment quality of the securities giving rise to the

plaintiffs' loss.  *Marbury*, 629 F.2d at 708.  In *Bennett*, the court noted that the plaintiffs in

*Marbury* established loss causation because the alleged misrepresentations "induced the

plaintiffs to purchase and retain specific securities despite their misgivings about the stock."

*Bennett*, 770 F.2d at 314.    Unlike the misrepresentations in *Marbury*, the Purported

Misrepresentations did not induce Stonehill to purchase or decide to retain the various third-party

securities in its prime brokerage account.

33.    The relevant allegation before the District Court in *In re Merrill Lynch

Auction Rate Securities Litigation* was "that Defendants made specific misrepresentations to

16

reassure plaintiffs about [securities] after the [market *for those securities*] began to crumble." No. 09-2030, 2011 WL 1330847, at *5 (S.D.N.Y. Mar. 30, 2011).  Thus, the misrepresentation in *Merrill* is easily distinguished from the Purported Misrepresentations here, which Stonehill admits "*did not relate to … Stonehill's securities*."  (Resp. ¶ 68 (emphasis added).)  It is of no import that the court in *Merrill* rejected the defendants' argument that the plaintiffs failed to allege loss causation because they failed to account for "broader market phenomena" that would have "impaired the value" of the defendants' securities. *In re Merrill*, 2011 WL 1330847 at *11. Here, Stonehill concedes there is no allegation that the Purported Misrepresentations had *any* effect on the value of Stonehill's securities.  (Resp. ¶ 68.)  The Objection did not argue that Stonehill's claims fail because they fail to plead allegations sufficient to exclude *every* non-fraud explanation for the alleged loss; the Objection argued, correctly, that the claims fail to allege *any* fraud-based explanation for the diminution in value in Stonehill's securities (*i.e.*, loss causation).

34.    As in *Merrill*, the alleged misrepresentation in *Financial Guaranty Insurance Company v. Putnam Advisory Co., LLC* ("_FGIC_") was causally connected to the subsequent decline in value of the plaintiff's securities. 783 F.3d 395, 403 (2d Cir. 2015).  In FGIC, the defendant made misrepresentations about certain securities—specifically the selection methodology and quality of the collateral underlying the particular securities.  *Id.* at 403.  The court concluded loss causation was adequately plead because "at least some of the economic harm" incurred was alleged to be causally connected to the misrepresentations about the collateral.  *Id.* at 403.  Stonehill did not allege that "at least some of the economic harm" associated with the Diminution Claims (*i.e.*, the diminution in value of its securities) is causally connected in any way to the Purported Misrepresentations.  Rather, Stonehill admits that the

17

Purported Misrepresentations "*did not relate to … Stonehill's securities.*"  (Resp. ¶ 68 (emphasis added).)

35.     Likewise, the alleged misrepresentation in *AUSA Life Insurance Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000), related to the securities that declined in value. *Id.* at 213.   The court in *AUSA* reasoned that the "defendants intended that their misrepresentations should cause the plaintiffs to *keep their bonds*," which subsequently caused the plaintiffs investment losses when the value of *those bonds* declined in value.  *Id* at 212. (emphasis added).  As set forth in the Objection, Stonehill did not allege that the Purported Misrepresentations caused Stonehill to buy or sell the securities in its account on the SIPA Commencement Date.  Stonehill alleged only that, but for the Purported Misrepresentations, Stonehill's securities would have lost value in the custody of another broker.

### E.     Stonehill Failed to Allege Recoverable Damages

36.     As stated in the Objection, Stonehill failed to allege that it suffered *any* of the $152 million damages it asserts in its Diminution Claims.  (Obj. ¶ 51.)  Stonehill alleged only that certain securities had different values on different dates.  Stonehill did not allege that it sold any of the securities such that it realized an actual loss, and it did not admit if it held securities while values increased, mitigating all losses entirely.

37.     In the Response to this objection, Stonehill relies on three cases.  None excuses assertion of an actual loss in a common law fraud claim asserted against a chapter 11 estate more than 6 years after the alleged fraud occurred.

38.     In *Page v. Clark*, 195 N.Y.S. 529 (N.Y. Sup Ct. Cayuga Cnty. 1922), there was no question that the plaintiff suffered an actual loss while holding, and without selling, shares of stock in her company.  *Id.* at 529, 30.  The company filed for bankruptcy and the stock was rendered worthless while in the hands of the plaintiff.  *Id.*  In that case, "[t]he claim [was]

WEIL:\95403087\6\58399.0011

that the bankruptcy proceedings were initiated in fraud." *Id.* The damage sought by the plaintiff was the difference between the value of her stock prior to the filing of the bankruptcy (to be determined) and the value post-bankruptcy (*i.e.*, zero). *Id.* The allegation of actual loss that existed in *Page* is not present in the Second Amended Claims.

39.     The two other cases are even less relevant. They are Section 10(b) federal securities law cases, not common law fraud claims like Stonehill's. The reasoning behind these cases does not apply to Stonehill's. The courts in *In re Royal Dutch/Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605 (D.N.J. 2005), and *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 692 F.3d 34 (2d Cir. 2012), analyzed claims under the specific statutory scheme of the Private Securities Litigation Reform Act. The courts in those cases concluded that the statutory scheme provides a measure of damages that does not mandate sale of the securities. *Royal/Dutch*, 404 F. Supp. 2d at 608; *Acticon*, 692 F.3d at 38. The intent of the statutory provision in those cases is to measure—and limit—damages to the loss in value of a security caused by the defendant. *Royal/Dutch*, 404 F. Supp. 2d at 609; *Acticon*, 692 F.3d at 40, 41. The intent is not to provide a windfall to a plaintiff. Accordingly, even in these cases, the measure of damages is not, as Stonehill purports here, fixed as the difference between the value of a security on two dates. The measure of damages is refined to ensure that a plaintiff recovers only the loss that is attributed to the fraud and not the loss attributable to other factors. *Royal/Dutch*, 404 F. Supp. 2d at 609; *Acticon*, 692 F.3d at 40, 41. Here, as is clear from the Objection and above, there is no proximate cause between the Comfort Statements and the Diminution Claims.

40.     Stonehill is wrong to assert that it "is not required to address [in its claims or now] any factors that may have mitigated its loss". (Resp. ¶ 78.) A tort claimant has a duty to mitigate its losses, (*Steger v. Orth*, 258 F. 619, 624 (2d Cir. 1919)), and a creditor in a

19

bankruptcy files a claim subject to penalty of perjury that the information provided is true and correct. *See In re White*, 168 B.R. 825, 833 (Bankr. D. Conn. 1994). Having filed the Second Amended Claims more than six and a half years after the commencement of these cases, Stonehill had an obligation to assert only actual losses, if any. The Second Amended Claims may be dismissed on this basis alone.

41.     Moreover, Stonehill is barred from recovering the Diminution Claims on account of its fraud claims under New York law. Indeed, Stonehill acknowledges that New York law applies the "out-of-pocket" rule to fraud claims, which limits damages to those necessary "to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." (Resp. ¶ 73); *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y. 2d 413, 421 (N.Y. 1996) (emphasis added). Stonehill also does not dispute that "the victim of fraud may not recover the benefit of an alternative agreement overlooked in favor of the fraudulent one." *Alpert v. Shea Could Climenko & Casey*, 559 N.Y.S.2d 312, 315 (1st Dep't 1990); *see also Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 127, 128 (1st Dep't 2009); *Geary v. Hunton & Williams*,684 N.Y.S.2d 207, 207 (1st Dep't 1999); *Kensington Publ'g Corp. v. Kable News Co., Inc.*, 474 N.Y.S.2d 524, 526 (1st Dep't 1984).

42.     Stonehill's only response to these arguments is the erroneous assertion that (i) "Stonehill does not seek damages for lost profits or, . . . the prevention of a hypothetical sale" (Resp. ¶ 74), and (ii) "Stonehill does not allege that it should 'recover the benefit of an alternative agreement'" (id. ¶ 75). But, in fact, Stonehill seeks just that: "Claimant hereby asserts a claim against the Debtors for damages representing the diminution in value of the securities held by LBI under the PB Agreement from the date when LBI's SIPA Proceeding was commenced through the date that such securities were returned to Claimant." (2d Amended

Claim ¶ 14.)  Stonehill admits it is "seeking . . . damages resulting from its inability to stem the losses by simply obtaining market prices for its securities during the period it was not able to access the securities."  (Resp. ¶ 75.)  The only way Stonehill could have obtained market prices for its securities is by engaging in alternative transactions (*i.e.*, trades; hypothetical sales of securities that never actually occurred).  Thus, the Diminution Claims are classic "alternative bargain" damages that are not recoverable on account of a fraud claim under New York law.  The loss of the alternative bargain is too "undeterminable and speculative" as a matter of law.  *Lama*, 88 N.Y. 2d at 414; *Alpert*, 559 N.Y.S.2d at 315.

43.    Stonehill's citation to *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596 (S.D.N.Y. 2009), a section 10(b) federal securities law case, does not alter the analysis.  *Id.* at 611.  There, the court held that the plaintiffs had alleged recoverable damages by asserting that the relevant security decreased in value after the defendant issued a corrective disclosure—the plaintiffs had "allege[d] a loss and connect[ed] that loss to [the defendants'] disclosure."  *Id.*   Here, Stonehill failed to connect their alleged losses to the Purported Misrepresentations such that the Diminution Claims constitute recoverable damages for a fraud claim under New York law.

## III.    Stonehill Failed to State a Claim for Agency Under New York Law

44.    The Second Amended Claims failed to allege that Wickham had the authority—apparent or actual—to bind each of the Chapter 11 Estates as their agent.

### A.    No Allegation of Actual Authority

45.    Stonehill attempts to allege in its Response, for the first time, that Wickham acted with *actual* authority of each of twenty Chapter 11 Estates.  Having failed to make this allegation in its Second Amended Claims, Stonehill is barred now as a matter of law from doing so.

21

46.     Stonehill mistakenly suggests that the Plan Administrator waived the right
to contest actual authority by not specifically addressing it in the Objection.  (Resp. ¶ 80 n.30.)
This is wrong for a number of reasons.  First among them: the Plan Administrator reserved all
rights to dispute liability for the Second Amended Claims.  (Obj. ¶ 66.)  As importantly, the Plan
Administrator was not required to make arguments on Stonehill's behalf.  If Stonehill intended to
allege that Wickham had actual authority to act as agent for each of the Chapter 11 Estates, it
should have expressly stated so and plead the elements necessary to establish agency under New
York law.

47.     The Second Amended Claims do not allege sufficient facts to establish
that Wickham had the actual authority to act as agent for each of the Chapter 11 Estates.  The
requirements for establishing agency are "assent," "benefit," and "control."  *See e.g.*, *In re
Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("Agency is the fiduciary
relation which results from the manifestation of consent by one person to another that the other
shall act on his behalf and subject to his control, and consent by the other so to act.") (quoting
RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958)).[3]

48.     Under New York law, "it is critical to the establishment of an agency
relationship that the agent acts subject to the principal's direction and control.  The importance of
control by the principal is paramount.  There is no agency relationship where the alleged
principal has no right of control over the alleged agent."  *Maung Ng We*, 2000 WL 1159835, at
*4 (internal citations and quotation marks omitted); *see also Shulman*, 744 F.2d at 295 ("An

---

[3]  *See also Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 277 n.3 (2d Cir. 2013) (describing how the Third
Restatement's definition of agency includes "'that the agent shall act on the principal's behalf and subject to the
principal's control,' . . . this definition is materially similar to that appearing in § 1 of the Second Restatement . . .
and we do not distinguish between the two."); *Maung Ng We v. Merrill Lynch & Co.*, No. 99- 9687, 2000 WL
1159835, at *4, *9 (S.D.N.Y. Aug. 15, 2000) (finding that "[a]long with control, another important feature of an
agency relationship is that the actions taken by the purported agent are taken on behalf of and for the benefit of the
principal—not the agent.");.

essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control.") (citing RESTATEMENT (SECOND) OF AGENCY §§ 1(1) cmt. b, 14 (1958)); *In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 618 (Bankr. S.D.N.Y. 2002) ("When the existence of an agency relationship is uncertain, courts often look to the alleged principal's right to control as a critical indicator."), *aff'd sub nom. LFD Operating, Inc. v. Ames Dep't Stores, Inc.*, No. 01-42217 (REG), 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004), *aff'd sub nom. In re Ames Dep't Stores, Inc.*, 144 F. App'x 900 (2d Cir. 2005).

49.    An agency-based cause of action that depends upon "conclusory and unsupported allegation[s] of control" should be dismissed under Rule 12(b)(6). *Maung Ng We*, 2000 WL 1159835, at *4, *5 (internal citations and quotation marks omitted); *see also Shulman*, 744 F.2d at 295 (describing control a "critical element" of establishing agency); *Ames Dep't Stores*, 274 B.R. at 618 ("if an alleged agent's acts concerning a certain subject matter cannot be controlled and directed by the principal, there is no agency relationship with regard to that subject matter"); *Race v. Goldstar Jewellery, LLC*, 924 N.Y.S.2d 166, 167 (2d Dep't 2011) ("the basic tenet of a principal-agent relationship is that the principal retains control over the conduct of the agent with respect to matters entrusted to the agent"). Moreover, a conclusory allegation of an agency relationship based on the plaintiff's employment is not sufficient to allege an agency relationship under New York law. *See e.g.*, *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *5 (S.D.N.Y. Dec. 10, 2007) (dismissing agency claims "because the complaint only contains conclusory allegations of an agency relationship with respect to plaintiffs' employment . . . [specifically, that there was] no allegation that [the alleged principal] controlled, or even affected, [the alleged agent's] conduct . . . .").

23

50.     The Second Amended Claims contain no mention of each Chapter 11 Estate's *control over Wickham*.  Stonehill only alleged that Wickham held a title at LBHI and LBI.  (2d Am. Claims ¶ 24.)  There is not a single specific reference to any other Chapter 11 Estate.  Stonehill's conclusory statement that Wickham "was the [sic] LBHI's (and therefore the Lehman Entities') Global Head of Equity Derivatives" is insufficient as a matter of law to establish that Wickham had the actual authority to act as agent for each of the Chapter 11 Estates.  (*Id.* ¶ 24.)  Absent allegations of each Chapter 11 Estate's control over Wickham's communications with prime brokerage customers, there can be no agency relationship such that the Comfort Statements can be imputed to twenty Chapter 11 Estates.

### B.     Failure to Allege Apparent Authority

51.     Stonehill alleged that it "understood" Wickham "had ***apparent authority*** to act" for the Chapter 11 Estates (*id.*) but failed to adequately plead that Wickham had apparent authority to act on behalf of each of the Chapter 11 Estates.  To adequately plead apparent authority, a plaintiff must allege "words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority" to act on the principal's behalf.  *Hallock v. State*, 64 N.Y.2d 224, 231 (N.Y. 1984) (emphasis added).  The Second Amended Claims allege no words or conduct of any of the Chapter 11 Estates that was communicated to Stonehill.

52.     Looking only at what was alleged: LBI was Stonehill's prime broker (2d Am. Claims ¶ 5); Stonehill "left a voice message . . . making references to concerns about Stonehill's prime brokerage relationship" and asking for a return call (*id.* ¶ 22); Wickham returned the call (*id.* ¶ 24); and Wickham was the Global Head of Prime Brokerage at LBI (*id.*).  Stonehill's attempt to use the fact that Wickham was asked to return a phone call to establish apparent authority fails as a matter of law.  This argument is, at best, circular, as Stonehill failed

24

to allege sufficient facts to establish that the person who asked Wickham to return his call was, in fact, an agent of each of the twenty Chapter 11 Estates.

53.     Stonehill's reference to a more relaxed pleading standard does not excuse the failure to allege each of the essential elements of agency.  The cases cited in the Response do not prevent dismissal of a claim at this stage of litigation.   In *Elbit Systems*, for example, the court found sufficient facts were alleged to "decidedly move the agency theory from possible to plausible" based on actual authority, but found that "[a]pparent authority is not adequately alleged to be present."  *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 226 (S.D.N.Y. 2013).  Moreover, the cases cited in the Response do not require this Court to find *any or every* conclusory allegation of actual authority, express or implied, sufficient on its own under the federal pleading rules.   In *Commercial Financial Services*, the court considered whether a purported agent was permitted to act as the principal's agent to bind the principal in dealings with a third party.  *Commercial Fin. Servs., Inc. v. Great Am. Ins. Co.*, 381 F. Supp. 2d 291 (S.D.N.Y. 2005).  The "conclusory" allegations *of fact* in the complaint in that case were much more substantial than anything alleged by Stonehill here.  There, the complaint alleged: (i) the principal did not communicate directly with the third party on insurance issues, but allowed the agent to countersign policies and to communicate all information regarding the principal's insurance to the third party; (ii) the agent's chairman signed numerous binders and other policy documents as the principal's "Authorized Representative"; and (iii) an affiliated principal company website identifies the agent as one of its agents.  *See Commercial Fin. Servs.*, 381 F. Supp. 2d at 296, 297.  In addition, the court in *Commercial Financial Services* used the more lenient *Conley* pleading standard, *id.* at 300, which has subsequently been superseded by more stringent pleading requirements of *Iqbal* by the Supreme Court.  (*See supra* ¶¶ 4, 5.)  Likewise,

25

the court in *Amusement Industries* listed eight separate, specific, detailed allegations of fact alleged in the complaint that "easily allow a reasonable inference" that two alleged principals had given a purported agent actual authority.[4]   *Amusement Indus. v. Stern*, 693 F. Supp. 2d 327, 345 (S.D.N.Y. 2010).   There is no resemblance between the facts detailed in the complaint in *Amusement Industries* and the conclusory assertions in Stonehill's claims.

---

[4] The allegations included:

> (1) Friedman approached Amusement stating that he represented not only Stern and First Republic but also Safrin and Egert, and that Safrin, a respected New York real estate investor, was supplying much of the equity needed for the acquisition . . .; (2) "Friedman repeatedly represented to Amusement that he had been retained by . . . Safrin and Egert to act as an attorney for them and to serve as an agent for them" . . . ; (3) a retainer letter from Friedman to Egert existed indicating that Friedman was representing "The Safrin Group" on at least some real estate matters . . . ; (4) Friedman conveyed Safrin's personal financial statements and tax returns to "interested parties," . . . . (5) Egert, who is Safrin's son-in-law, told Steven Alevy that Friedman had authority to bind Egert and Safrin with regard to negotiating the relative equity participations in the Portfolio . . . (6) Friedman sent an assignment of Safrin's membership interest in First Republic and the underlying LLC ownership structure to Amusement that contained Safrin's purported signature . . . ; (7) during the two weeks preceding the transmittal of Amusement's $13 million, "Egert directed Steven Alevy to negotiate with Friedman for a larger part of the equity in the Portfolio that would come from Safrin's share," . . . ; and (8) Safrin told Steven Alevy that he was participating in the acquisition of the Portfolio . . . .

*Amusement Indus.*, 693 F. Supp. 2d at 345.

## **CONCLUSION**

Stonehill has not overcome each and all of bases set forth in the Objection to its claims.   Based on the Objection, this reply and on all of the proceedings before this Court in these cases, the Second Amended Claims should be dismissed with prejudice.

Dated:   July 28, 2015
New York, New York

  /s/ *Garrett A. Fail*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Garrett A. Fail
Ralph I. Miller

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

WEIL:\95403087\6\58399.0011