# Exhibit 2

**LBSF INTERCOMPANY NOTE AND SECURITY AGREEMENT**

[_____ __], 2015

**FOR VALUE RECEIVED**, LEHMAN BROTHERS HOLDINGS INC., a corporation organized under the laws of Delaware (the "Obligor"), hereby unconditionally promises to pay to LEHMAN BROTHERS SPECIAL FINANCING INC., a corporation organized under the laws of Delaware (the "Payee"), the sum of $300,000,000.00 (the "Initial Principal Amount") and each additional principal amount recorded on *Exhibit A* hereto (collectively, the "Additional Principal Amounts", and together with the Initial Principal Amount, the "Principal Amount") on the terms and subject to the conditions provided herein. The Obligor and the Payee intend that this LBSF Intercompany Note and Security Agreement (this "Note") constitute indebtedness for all federal, state and local income tax purposes and agree not to take any positions contrary with the foregoing characterization of this Note.

WHEREAS, LBHI has certain rights, title and interests in respect of deposit account numbers 20435400, 30826233 and 30870189 at Citibank, N.A. ("Citibank," and such accounts, collectively, the "Deposit Accounts,") which, as of the date hereof, have a balance of approximately $2.069 billion;

WHEREAS, Citibank has asserted claims against the Payee in the principal amount of no less than $1,599,804,273 as set forth in proof of claim number 67733 (the "Citibank LBSF Claim") and claims against the Obligor, as guarantor of the Citibank LBSF Claim, as set forth in proof of claim 67736 (the "Citibank Guarantee Claim");

WHEREAS, the Obligor, as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of LBHI and its Affiliated Debtors (the "Plan"),[1] is contesting, among other things, the validity of the Citibank LBSF Claim, Citibank's entitlement to retain funds held in the Deposit Accounts or to set off the Citibank Guarantee Claim against those funds, and as a result, the Citibank LBSF Claim and Citibank Guarantee Claim are Disputed;

WHEREAS, the Obligor, as Plan Administrator, has determined that the aggregate reserves maintained with respect to the Citibank LBSF Claim, taken together with the Deposit Accounts, exceed the maximum amount that Obligor and Payee would be required to pay Citibank in the event the Citibank LBSF Claim becomes an Allowed Claim;

WHEREAS, in the event the Obligor makes payment in full to Citibank of all obligations owed by LBSF and guaranteed by LBHI, with respect to the Citibank LBSF Claim, Obligor may be entitled to exercise rights against LBSF to the extent permitted under the terms of the applicable guarantee documents, section 509 of the Bankruptcy Code and applicable non-bankruptcy law (such rights, the "Subrogation Rights");

WHEREAS, in the event that the Citibank is ordered by Final Order to return all or a portion of the Deposit Accounts to Obligor, such amounts can be utilized by the Obligor to pay any liability the Obligor owes to the Payee in respect of this Note;

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Plan.

WHEREAS, the Payee has agreed to invest (the "Investment") with the Obligor a portion of its Disputed Claims reserve; and

WHEREAS, the Investment and the entry into this Note by the parties hereto have been approved by the United States Bankruptcy Court for the Southern District of New York.

NOW, THEREFORE, in consideration of the premises and the covenants and agreements contained herein, the parties hereto hereby agree as follows:

1. Additional Advances. Additional Principal Amounts may be advanced to the Obligor under this Note in connection with additional Distributions pursuant to and as defined in the Plan and recorded on *Exhibit A* hereto, *provided that* the amount advanced under the Note may be increased by (i) an amount equal to the Available Cash Payee would be required to retain under Section 8.4 of the Plan on account of the Citibank LBSF Claim on any future Distribution Date and (ii) the amount, estimated as of such Distribution Date, of Obligor's Subrogation Rights relating to Citibank's claim for fees allocable to the Citibank LBSF Claim in excess of $34.2 million, both of which shall be advanced under the Note and recorded on Exhibit A thereto; *provided further* that the aggregate Principal Amount shall not exceed at any time the Initial Principal Amount plus $150,000,000.00.

2. Interest. Interest shall accrue on the outstanding Principal Amount of this Note from the date of advance of the Initial Principal Amount until the repayment of all amounts outstanding under this Note, at a rate per annum equal to the rate of interest earned by the Payee on its reserves for Disputed Claims under Section 8.4 of the Plan, determined quarterly on the last day of each calendar quarter (the "Investment Rate") plus 0.50% per annum. Interest shall be computed on the basis of a 360-day year consisting of twelve 30-day months but calculated and paid on the basis of the actual number of days elapsed. Accrued and unpaid interest shall be payable on the date of any voluntary, mandatory or deemed repayment under this Note.

3. Mandatory Repayment Date. Following the entry of a Final Order determining the Allowed Amount of the Citibank LBSF Claim, the full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall become due and payable on the date (the "Mandatory Repayment Date") that is ten (10) days after the following two events shall have occurred: (i) Citibank has released to the Obligor funds in the Deposit Accounts in accordance with such Final Order, and (ii) Citibank has deducted funds in the Deposit Accounts in satisfaction of amounts owed by LBSF under Section 8.4 of the Plan on account of the Citibank LBSF Claim.

4. Deemed Repayment. If following the entry of a Final Order determining the Allowed Amount of the Citibank LBSF Claim, the Obligor has a valid claim against the Payee in respect of its Subrogation Rights, the Obligor may satisfy its obligations in respect of the Note by setoff of any amount of Distributions then due from the Payee to the Obligor with respect to the Obligor's exercise of Subrogation Rights in connection with the Citibank LBSF Claim, excluding amounts attributable to any Plan Adjustment, against the Obligor's obligations under the Note (the "Deemed Repayment"). Thereafter, LBSF shall be authorized to distribute directly to LBHI an amount equal to the Plan Adjustment that would have been distributed to LBHI on account of the Citibank LBSF Claim in accordance with section 6.5(a) of the Plan. The Deemed Repayment shall be in lieu of Payee's Distribution of such amount to the Obligor.

5. Payments Generally, Etc. Subject to Section 4, each payment of all or part of the Principal Amount of this Note, together with all accrued and unpaid interest hereunder, shall be payable by wire transfer of immediately available funds to a bank account specified by Payee. All monies due hereunder shall be paid in U.S. Dollars. If any payment on this Note shall be due on a Saturday, Sunday

or public holiday on which banks in New York City are authorized to be closed, it shall be payable on the next succeeding business day.  Upon final payment of the full outstanding Principal Amount of this Note, together with all accrued and unpaid interest hereunder, this Note shall be surrendered to the Obligor for cancellation.  All payments hereunder shall be applied to accrued and unpaid interest and to outstanding principal in such order as determined by Payee in its sole discretion.

6. Prepayment.  The Obligor may, at its option, prepay this Note, in whole or in part, at any time or from time to time without penalty or premium (each such prepayment, a "Prepayment").  Any Prepayment of any portion of the Principal Amount of this Note shall be accompanied by payment of all accrued and unpaid interest through the date of such Prepayment.

7. Proceeds as Authorized Distributions under the Plan.  The Obligor shall be authorized but not directed to distribute as Distributions under the Plan the proceeds of the advances under this Note.  Notwithstanding the foregoing, the Obligor shall be required to hold back from such Distributions as "restricted cash" (i.e., cash that is not Available Cash) an amount reasonably estimated by the Obligor equal to 36 months of interest on the Principal Amount from the date of advance of the Initial Principal Amount at the Investment Rate plus 0.50% per annum.

8. Security.

(a) In order to secure the full and punctual observance and performance when due of the obligations under this Note, including, but not limited to, the payment of all principal, interest and other amounts now or hereafter payable by the Obligor pursuant to this Note (collectively, the "Secured Obligations"), the Obligor hereby charges, assigns, pledges and grants to the Payee a continuing security interest in and to, and a lien upon and right of set-off against, and agrees to transfer to the Payee, as and by way of a security interest having priority over all other security interests (other than with respect to the Citi Setoff Rights, as such rights may be determined by a Final Order, and Citibank's right, as provided in and in accordance with the Investment Approval Order, in its sole discretion, to deduct from the Deposit Accounts an amount equal to the amount of Distributions that LBSF would owe Citibank under Section 8.4 of the Plan in the event the Citibank LBSF Claim is an Allowed General Unsecured Claim against LBSF), with power of sale, in all of the Obligor's right, title and interest in the following collateral, whether now owned or existing or hereafter acquired or arising and wherever located (the "Collateral"; terms in subclauses (i) through (iii) below shall have the meanings applicable to them as used in Article 9 of the Uniform Commercial Code as in effect from time to time in the State of New York (the "UCC")):

(i) the Deposit Accounts;

(ii) all accounts, general intangibles, instruments, proceeds (including money) and any right to payment, whether or not such right is evidenced by an instrument and whether or not it has been earned by performance, in each case, arising under or in respect of

(1) the funds in the Deposit Accounts to which the Obligor may be entitled;

(2) any Distribution (as defined in the Plan) to which the Obligor may be entitled on account of Obligor's Subrogation Rights with respect to the Citibank LBSF Claim; and

(iii) all proceeds, products, accessions, rents and profits of or in respect of the collateral specified in clause (i) or clause (ii), as applicable, and all proceeds of any insurance, indemnity, warranty or guarantee payable to the Obligor from time to time with respect to such collateral (whether

3

such proceeds arise before or after the commencement of any proceeding by or against the Obligor or with respect to the Obligor).

(b) The Obligor hereby authorizes the Payee to file, in the name of the Obligor, UCC financing and continuation statements (the "UCC Filings") that the Payee may deem necessary or appropriate to protect or maintain the perfection of the security interests. The Obligor will not except with at least 10 calendar days prior written notice to the Payee change its legal name, identity or organizational structure.

(c) The Obligor agrees to negotiate and act in good faith as the Payee may request from time to time to take such actions as may be necessary to perfect the security interests in Collateral granted hereunder and for the Payee to obtain the full benefits of this Note and the rights and powers herein granted (including, without limitation, in connection with any transfer or assignment of the Collateral or any part thereof by the Payee when an Event of Default has occurred and is continuing), including without limitation by executing and delivering any such documents, agreements, certificates or other instruments (including an account control agreement with respect to the Deposit Accounts) or take such further action to enable the Payee to exercise and enforce any of its rights, powers and remedies with respect to the Collateral. The Obligor shall take all actions necessary or advisable to maintain the continuous validity and perfection at the same or higher priority of the Payee's security interest in the Collateral granted or intended to be granted hereby.

(d) The Obligor hereby irrevocably constitutes and appoints the Payee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Obligor and in the name of the Obligor or in its own name, at any time and from time to time in the Payee's discretion, for the purpose of carrying out the terms of this Note, at the expense of the Obligor, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Note, and, without limiting the generality of the foregoing, the Obligor hereby gives the Payee the power and right, on behalf of the Payee, without notice to or assent by the Obligor. The Obligor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and is irrevocable.

(e) The security interest granted by the Obligor shall terminate and all rights to the Collateral shall revert to the Obligor when all Secured Obligations shall have been paid or performed in full. Upon the termination of the security interest and release of Collateral, the Payee will, at the expense of the Obligor, execute and deliver to the Obligor such documents as the Obligor shall reasonably request to evidence the termination of the security interest and the release of the Collateral.

(f) Notwithstanding any other provision in this Note, the security interests granted by Obligor herein shall:

    (i) not affect the Citi Setoff Rights (as defined in the Amended Stipulation Establishing Distribution Reserves For Claims Filed by Citibank, N.A., Citigroup Global Markets Ltd. and Citigroup Global Markets Inc., dated February 25, 2013) before entry of (1) a Final Order determining the validity of such Citi Setoff Rights, and (2) in the event the Citi Setoff Rights are determined to be valid by such Final Order, a Final Order determining the Allowed Amount of the Citibank Guarantee Claim;

    (ii) be subordinated to the Citi Setoff Rights to the extent that the Citi Setoff Rights are determined to be valid by a Final Order, provided that

4

        Citibank will exercise such setoff rights within ten (10) days after the following two events shall have occurred: (1) the entry of a Final Order determining the validity of the Citi Setoff Rights, and (ii) entry of a Final Order determining the Allowed Amount of the Citibank Guarantee Claim;

(iii)    not permit LBSF to take any action to enforce LBSF's rights under this Note or any account control agreement with respect to the Deposit Accounts until at least ten (10) business days following the entry of (1) a Final Order determining the validity of the Citi Setoff Rights against the Deposit Accounts, and (2) in the event the Citi Setoff Rights are determined to be valid by such Final Order, a Final Order determining the Allowed Amount of the Citibank Guarantee Claim; and

(iv)    not affect Citibank's right, as provided in and in accordance with the Investment Approval Order, to deduct from the Deposit Accounts an amount equal to the amount of Distributions that LBSF would owe Citibank under Section 8.4 of the Plan in the event the Citibank LBSF Claim is an Allowed General Unsecured Claim against LBSF.

        9.    <u>Waterfall</u>. All proceeds received by the Payee in respect of any sale, any collection from, or other realization upon all or any part of the Collateral shall be applied in full or in part by the Payee against, the Secured Obligations in the following order of priority: <u>first</u>, to the payment of all reasonable costs and expenses of such sale, collection or other realization; <u>second</u>, to the extent of any excess of such proceeds, to the payment of all other Secured Obligations; and <u>third</u>, to the extent of any excess of such proceeds, to the Obligor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.

        10.    <u>Event of Default</u>.

        (a)    The occurrence of any one or more of the following events shall constitute an Event of Default (an "<u>Event of Default</u>") under this Note: (i) the failure to pay principal of or interest on this Note when due; or (ii) any failure by the Obligor to perform or comply with any term or condition contained in this Note, and any breach or default hereunder or written repudiation or assertion of the invalidity of the liens granted hereunder. The Obligor agrees that upon an Event of Default under this Note, then all or any part of the unpaid Principal Amount of and accrued and unpaid interest on this Note, after written notice by the Payee to the Obligor, shall immediately become due and payable.

        (b)    If an Event of Default occurs, the Obligor agrees to pay to the Payee all reasonable and documented out-of-pocket expenses incurred by Payee, including reasonable attorneys' fees, in enforcing and collecting this Note or in exercising remedies with respect to the Collateral. The Obligor shall reimburse the Payee for any and all costs and expenses, including reasonable attorneys' fees and expenses, incurred by the Payee in taking any action to collect or otherwise enforce this Note against the Obligor or any other Person who is or may become liable thereunder or in exercising remedies with respect to the Collateral. All such costs and expenses shall be repayable to the Payee on demand.

        (c)    If an Event of Default has occurred and is continuing, the Payee may exercise all the rights of a secured party under the UCC (whether or not in effect in the jurisdiction where such rights are exercised) with respect to the Collateral and all rights under any other applicable laws and, in addition, the Payee may, without being required to give any notice, except as herein provided or as may be required by mandatory provisions of law, sell or otherwise dispose of the Collateral or any part thereof.

Notice of any such sale or other disposition shall be given to the Obligor ten (10) days prior to such sale or disposition.

11. <u>No Waiver by Payee</u>. No delay or omission of Payee or any other holder hereof to exercise any power, right or remedy accruing to Payee or any other holder hereof shall impair any such power, right or remedy or shall be construed to be a waiver of the right to exercise any such power, right or remedy; nor shall any single or partial exercise by the Payee of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. Payee's right to accelerate this Note for any late payment or Obligor's failure to timely fulfill its other obligations hereunder shall not be waived or deemed waived by Payee by Payee's having accepted a late payment or late payments in the past or Payee otherwise not accelerating this Note or exercising other remedies for Obligor's failure to timely perform its obligations hereunder. No waiver by the Payee of any default or Event of Default shall be deemed to be a waiver of any other subsequent default or Event of Default, nor shall any such waiver by the Payee be deemed to be a continuing waiver. The rights and remedies specified herein are cumulative and are not exclusive of any other rights or remedies the Payee would otherwise have. Payee shall not be obligated or be deemed obligated to notify Obligor that it is requiring Obligor to strictly comply with the terms and provisions of this Note before accelerating this Note and exercising its other remedies hereunder because of Obligor's failure to timely perform its obligations under this Note.

12. <u>Obligor Waiver; Indemnity</u>. The Obligor hereby forever waives presentment, presentment for payment, demand, protest, notice of protest, notice of dishonor of this Note and all other demands and notices in connection with the delivery, acceptance, performance and enforcement of this Note. The Obligor further agrees to indemnify and hold harmless the Payee from any and all damages, losses, costs and expenses (including, without limitation, attorneys' fees and expenses) which the Payee may incur by reason of the Obligor's failure promptly to pay when due the indebtedness evidenced by this Note.

13. <u>Conflict with Investment Approval Order</u>. In the event of any conflict between this Note (or any portion hereof) and any provision of the Investment Approval Order, the terms of the Investment Approval Order shall prevail.

14. <u>Sections</u>. Section headings appearing in this Note are for convenient reference only and shall not be used to interpret or limit the meaning of any provision of this Note. As used herein, "Section" shall refer to sections of this Note unless otherwise specified.

15. <u>VENUE; CHOICE OF LAW</u>. THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK UNLESS THE CONTEXT REQUIRES OTHERWISE, WITHOUT GIVING EFFECT TO ANY PROVISION THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION. ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST THE OBLIGOR OR THE PAYEE ARISING OUT OF OR RELATING HERETO SHALL BE BROUGHT IN EITHER (i) THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, IF SUCH COURT HAS SUBJECT MATTER JURISDICTION, OR OTHERWISE (ii) THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, BOROUGH OF MANHATTAN OR, IF THAT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IN ANY STATE COURT LOCATED IN THE CITY OF NEW YORK. BY EXECUTING AND DELIVERING THIS NOTE, THE OBLIGOR, FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, IRREVOCABLY (A) ACCEPTS GENERALLY AND UNCONDITIONALLY THE JURISDICTION AND VENUE OF SUCH COURTS; (B) WAIVES ANY DEFENSE OF FORUM NON CONVENIENS; (C) AGREES THAT SERVICE OF ALL PROCESS IN ANY SUCH PROCEEDING

IN ANY SUCH COURT MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS PROVIDED NEXT TO ITS NAME ON THE SIGNATURE PAGE ATTACHED HERETO; AND (D) AGREES THAT SERVICE AS PROVIDED IN CLAUSE (C) ABOVE IS SUFFICIENT TO CONFER PERSONAL JURISDICTION OVER THE APPLICABLE PARTY IN ANY SUCH PROCEEDING IN ANY SUCH COURT, AND OTHERWISE CONSTITUTES EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT.

16.     WAIVER OF JURY TRIAL.  EACH OF THE PARTIES HERETO HEREBY AGREES TO WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING HEREUNDER OR UNDER ANY OF THE OTHER SECURITY DOCUMENTS OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS LOAN TRANSACTION OR THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  EACH PARTY HERETO ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE, AND THAT EACH WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS.  EACH PARTY HERETO FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING (OTHER THAN BY A MUTUAL WRITTEN WAIVER SPECIFICALLY REFERRING TO THIS SECTION 15 AND EXECUTED BY EACH OF THE PARTIES HERETO), AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS HERETO OR ANY OF THE OTHER SECURITY DOCUMENTS OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE LOANS MADE HEREUNDER.  IN THE EVENT OF LITIGATION, THIS NOTE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

17.     Records of Additional Principal Amounts and Payments.  All Additional Principal Amounts lent to the Obligor shall be evidenced and noted by the Payee on *Exhibit A* hereto and the records of Payee shall be *prima facie* evidence of the amounts owing on this Note; *provided*, *however*, that the failure of the Payee to make such a notation or any error in such notation shall not affect the obligations of the Obligor under this Note.

18.     Severability.  If any provision of this Note is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Note shall not be affected thereby, and this Note shall be liberally construed so as to carry out the intent of the parties to it.  Each waiver in this Note is subject to the overriding and controlling rule that it shall be effective only if and to the extent that (a) it is not prohibited by applicable law and (b) applicable law neither provides for nor allows any material sanctions to be imposed against Payee for having bargained for and obtained it.

19.     Notices.  Any notice, request or other communication required or permitted to be given hereunder shall be given in writing by delivering it against receipt for it, by depositing it with an overnight delivery service or by depositing it in a receptacle maintained by the United States Postal Service, postage prepaid, registered or certified mail, return receipt requested, addressed to the respective parties as reflected in the preamble hereto.  Obligor's address for notice may be changed at any time and

from time to time, but only after ten (10) calendar days advance written notice to Payee and shall be the most recent such address furnished in writing by Obligor to Payee. Payee's address for notice may be changed at any time and from time to time, but only after ten (10) calendar days advance written notice to Obligor and shall be the most recent such address furnished in writing by Payee to Obligor. Actual notice, however and from whomever given or received, shall always be effective when received.

20. ENTIRE AGREEMENT. THIS NOTE, THE UCC FILINGS AND ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH SECTION 8 OF THIS NOTE (INCLUDING THE INVESTMENT APPROVAL ORDER) EMBODY THE ENTIRE AGREEMENT AND UNDERSTANDING BETWEEN PAYEE AND OBLIGOR AND OTHER PARTIES WITH RESPECT TO THEIR SUBJECT MATTER AND SUPERSEDE ALL PRIOR CONFLICTING OR INCONSISTENT AGREEMENTS, CONSENTS AND UNDERSTANDINGS RELATING TO SUCH SUBJECT MATTER. OBLIGOR ACKNOWLEDGES AND AGREES THAT THERE IS NO ORAL AGREEMENT BETWEEN OBLIGOR AND PAYEE WHICH HAS NOT BEEN INCORPORATED IN THIS NOTE, THE UCC FILINGS OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH SECTION 8 OF THIS NOTE. FOR THE AVOIDANCE OF DOUBT, THE OBLIGOR AND THE PAYEE ACKNOWLEDGE AND AGREE THAT EXCEPT AS EXPRESSLY SET FORTH HEREIN, ANY INTERCOMPANY BALANCES OF ANY KIND BETWEEN THE PARTIES SHALL NOT BE GOVERNED BY THIS NOTE.

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF**, the undersigned has executed this Note as of the date first written above.

                                                    LEHMAN BROTHERS HOLDINGS INC.,
                                                  as Obligor

                                                  By:   Lehman Brothers Holdings Inc., as Plan Administrator

                                                      By:_____
                                                           Name:
                                                           Title:

Accepted and Agreed:

LEHMAN BROTHERS SPECIAL
FINANCING INC.,
as Payee

By:   Lehman Brothers Holdings Inc., as Plan Administrator

      By:_____
          Name:
          Title:

[SIGNATURE PAGE TO LBSF INTERCOMPANY NOTE AND SECURITY AGREEMENT]

*Exhibit A*
*to LBSF Intercompany Note and Security Agreement*

Additional Principal Amounts

| Relevant Plan Distribution | Date of Advance of Additional Principal Amount | Additional Principal Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |