WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Lehman Brothers Holdings Inc.
and Certain of its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                : Chapter 11 Case No.
                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,         : 08-13555 (SCC)
                                                     :
              Debtors.                               : (Jointly Administered)
------------------------------------------------------------------x

# THE PLAN ADMINISTRATOR'S REPLY TO
CLAIMANTS' SYLVIA VEGA-SUTFIN, MICHELLE SEYMOUR,
CHERYL MCNEIL, LINDA HOWARD-JAMES, ISABEL GUAJARDO
AND DENISE COLOMBO OPPOSITION TO PLAN ADMINISTRATOR'S
SUPPLEMENTAL OBJECTION TO THE FOUR HUNDRED THIRTY-FIRST
OMNIBUS OBJECTION TO CLAIMS (REDUCE AND ALLOW CLAIMS)

# TABLE OF CONTENTS

**Judicial Notice of the Warn Act Notice and
the LBHI SEC Filing Is Warranted and Appropriate** ...........................................................1

**Claimants Have Failed to State A Claim for Defamation** ..........................................................4

**Claimants Cannot Seek Economic Damages for
the Time Period After BNC's Closure on October 22, 2007** .......................................................7

**Claimants' Claims for Punitive Damages Should be Disallowed** ............................................10

**Claimants' Request for Relief From The Stay Should be Denied** ...........................................12

**Conclusion** ...................................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Continental Cas. Co. v. Marshall Granger & Co.*,
 921 F. Supp. 2d 111 (S.D.N.Y. 2013) ...................................................................................3

*Cuenca v. Safeway San Francisco Employees Fed. Credit Union*,
 180 Cal. App. 3d 985, 225 Cal. Rptr. 852 (Ct. App. 1986) ....................................................6

*EEOC v. Monarch Machine Tool Co.*,
 737 F.2d 1444 (6th Cir. 1980) ...........................................................................................3, 7

*Herring v. Fry's Food & Drug Store*,
 1992 U.S. Dist. LEXIS 2994 (N.D. Cal. 1992) ..................................................................3, 7

*In re Motors Liquidation Company*,
 2012 BANKR. LEXIS 6258 (Bankr. S.D.N.Y. 2012) ..................................................2, 3, 11, 12

*Jacobson v. Schwarzenegger*,
 357 F.Supp.2d 1198 (C.D. Cal. 2004) ...............................................................................3, 5

*Jensen v. Hewlett Packard Co.*,
 14 Cal.App.4th 958 (1993) ....................................................................................................6

*King v. UPS*,
 152 Cal. App. 4th 426 (2007) ................................................................................................5

*Lyle v. Warner Bros. Television Prods.*,
 38 Cal. 4th 264 (2006) .......................................................................................................3, 8

*Miano v. AC&R Advertising, Inc.*,
 875 F. Supp. 204 (S.D.N.Y. 1995) .....................................................................................3, 7

*Pashman v. Aetna Ins. Co*,
 2014 U.S. Dist. LEXIS 98190 (N.D.Cal. July 18, 2014) .......................................................5

*Ponderosa Homes, Inc. v. City of San Ramon*,
 23 Cal.App.4th 1761 (1994) ...............................................................................................3, 4

*Priest v. Rotary*,
 634 F.Supp. 571 (N.D. Cal. 1986) .....................................................................................3, 7

*Reno v. Baird*,
 18 Cal. 4th 640 (1998) .......................................................................................................3, 8

*Rodriguez v. McDonnel Douglas Corp*,
    87 Cal.App.3d 626 (1978) ...................................................................................4, 8

*Slack v. Havens*,
    522 F.2d 1091 (9th Cir. 1975) ............................................................................4, 7

*Sonnax v. Tri-Component Prods. Corp (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990) ..................................................................................12

*Stockton Newspapers, Inc. v. Redevelopment Agency*,
    171 Cal.App.3d 95 (1985) .........................................................................................4

*Weiss v. Inc. Vill. of Sag Harbor*,
    762 F. Supp. 2d 560 (E.D.N.Y. 2011) .......................................................................3

*Willaims v. Pharmacia, Inc.*,
    137 F.3d 944 (7th Cir. 1998) ................................................................................4, 8

*Wysinger v. Automobile Club of Southern California*,
    157 Cal.App.4th 413 (2007) .................................................................................4, 8

**Statutes**

Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) .................................4

Cal. Civ. Code § 47(c) ......................................................................................................5

Cal. Civ. Code § 438(c)(1)(B)(ii) .....................................................................................4

**Other Authorities**

California Civil Jury Instructions 2433 ................................................................4, 9, 10

Fed. R. Bankr. 9014 ..........................................................................................................3

Fed. R. Bankr. 7012(b) .....................................................................................................3

Fed. R. Civ. P. 12(b) ......................................................................................................3, 4

Fed. R. Civ. P. 12(c) .........................................................................................................4

Fed. R. Evid. 201(b)(2) .................................................................................................3, 4

2

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (the "Plan Administrator") under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737] (the "Plan"), on behalf of BNC Mortgage Inc. ("BNC"), files this reply (the "Reply") to the opposition of claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda (Weeks) Howard-James, Isabel Guajardo, and Coleen Denise Colombo (collectively, the "Claimants"), filed on July 27, 2015 [ECF No. 50457] (the "Opposition"), to the Plan Administrators' supplemental objection filed on June 22, 2015 [ECF No. 50054] (the "Supplemental Objection"),[1] and respectfully represents as follows:

## Judicial Notice of the Warn Act Notice and the LBHI SEC Filing Is Warranted and Appropriate

1. As an initial matter, Claimants contend that the Court cannot take judicial notice of the Warn Act Notice and LBHI's Securities and Exchange Commission Form 10-K for the fiscal year ended November 30, 2007 (the "LBHI SEC Filing") because they are dated after the filing of the Complaint. Claimants, however, fail to distinguish between the underlying lawsuit and this contested matter concerning the Claims. Both the Warn Act Notice, dated as of August 22, 2007 and the LBHI SEC Filing, effective as November 30, 2007, predate the Claims filed in July 2009. Thus, the authorities cited by Claimants simply are inapposite. *See* Opposition at 4-5.

2. Moreover, Claimants cannot shield themselves from the defects in the Claims by attaching the Complaint. During these Chapter 11 Cases, Claimants have repeatedly

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Supplemental Objection.

relied upon the allegations and assertions made in the Complaint. *See, e.g.*, ECF No. 44848. In filing the Claims in these Chapter 11 Cases, the Claimants willingly and unilaterally submitted the Complaint to substantiate their alleged damages amounting to $35 million in the aggregate. The face of each Claim states that the basis for the claim is ". . . per attached complaint." Thus, Claimants have incorporated the Complaint into their respective Claims by reference. *See In re Motors Liquidation Company*, 2012 BANKR. LEXIS 6258, fn. 2 (Bankr. S.D.N.Y. 2012) ("Motors Liquidation") (claimant's proof of claim incorporated the Equal Employment Opportunity Commission Charge and a related state court complaint). Additionally, Claimants specifically stated in a prior pleading before the Court that "[t]he Claimants are former employees of BNC . . . whose Claims are based on causes of action stated in [the Complaint]." *See* ECF No. 40127. To date, no other documents have been filed in support of Claimants' Claims and no amendments were timely made to the Claims.

        3. Despite Claimants' consistent practice of relying on the Complaint during these Chapter 11 Cases they are attempting to assert that the Court cannot consider pertinent documents that existed and were publicly available prior to the filing of the Claims. Notably, Claimants do not dispute BNC's closure date or the substance of the documents attached to the Supplemental Objection. Inasmuch as Claimants failed to update the information and facts set forth in their respective Claims prior to July 7, 2009, the date the Claims were filed, such failure cannot preclude the Court from taking judicial notice of the occurrence of events and the filing of public documents *two years* prior to the commencement of BNC's Chapter 11 Case. At the time Claimants' filed their Claims with the Court, both the WARN Act Notice and the LBHI SEC Filing were in existence.

2

4. It is well established that there are circumstances in which it is appropriate for a court to consider documents outside of a complaint on a motion to dismiss. In pertinent part, courts are entitled to consider (a) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (b) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *See Continental Cas. Co. v. Marshall Granger & Co.*, 921 F. Supp. 2d 111, 117 (S.D.N.Y. 2013); *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). In light of the fact that the Court considers the Supplemental Objection pursuant to the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable to these Chapter 11 Cases by Rule 7012(b) of the Bankruptcy Rules,[2] the above noted exceptions to the submission of documents outside of a complaint are specifically applicable to the documents submitted with the Supplemental Objection.

5. Additionally, in making its request for judicial notice, the Plan Administrator requests that the Court take judicial notice of certain documents pursuant to Federal Rule of Evidence 201(b)(2). Rule 201(b)(2) permits judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The closure of BNC can be accurately and readily determined from the WARN Act Notice and the LBHI SEC Filing and their authenticity cannot (and has not) been questioned by Claimants. Tellingly, Claimants do not dispute the closure date of BNC anywhere in their Opposition.

6. Thus, in accordance with the generally accepted law in this jurisdiction and elsewhere, the exhibits to the Supplemental Objection may be considered by the Court and

---

[2] Bankruptcy Rule 9014 allows the bankruptcy court "at any stage in a particular contested matter to direct that one or more of the rules applicable to adversary proceedings apply." *See* FED. BANKR. R. 9014.

3

serve as a basis for dismissing certain of components of the Claims as a matter of law. Accordingly, the Plan Administrator submits that judicial notice of the closing of BNC's operations, effective October 22, 2007, is warranted and appropriate.

### Claimants Have Failed to State A Claim for Defamation

7.  Claimants contend that the Plan Administrator has waived its right to challenge Claimants' claims because BNC filed an Answer nearly eight years ago in the state court proceeding. Again, Claimants conflate the litigation in the underlying state court action with the contested Claims that are currently before the Court. Although Claimants chose to simply attach the Complaint to their respective Claims, the state court answer filed by BNC does not affect the Plan Administrator's right to challenge the sufficiency of the proofs of claim filed in these Chapter 11 Cases.

8.  In any event, California law permits a defendant to challenge the sufficiency of a complaint even after an answer is filed. Pursuant to California Code of Civil Procedure § 438(c)(1)(B)(ii), a defendant can file a motion for judgment on the pleadings if the "complaint does not state facts sufficient to constitute a cause or causes of action against that Defendant." It is well established in California that such a motion can be filed any time prior to trial and even at trial and will be governed by the same standard as a demurrer (which is the California state court equivalent of a 12(b)(6) motion). *Stockton Newspapers, Inc. v. Redevelopment Agency*, 171 Cal.App.3d 95, 99 (1985); *Ponderosa Homes, Inc. v. City of San Ramon*, 23 Cal.App.4th 1761, 1767 (1994); *see also Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (concluding that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)").

4

9. With respect to the substantive arguments made by Claimants in support of the adequacy of their defamation allegations, Claimants do not dispute that California law requires that "the substance" of the alleged defamatory statement be pled in order to sufficiently state a claim for defamation. Opposition, p. 5. Instead, Claimants argue that they have adequately pled a defamation claim by merely alleging that employees of BNC made defamatory statements about Claimants' "work performance and abilities." This vague allegation – which is alleged to have been made by three different individuals about all six Claimants – contains virtually no substance at all. It does not allege when the statements were made, the circumstances in which they were made, or even what was allegedly said. It runs afoul of California's requirement that "the alleged defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216 (C.D. Cal. 2004). Rather, such allegations constitute "general allegations of the defamatory statements which do not identify the substance of what was said" which is insufficient in California. *Id.*

10. Claimants' defamation claim also should be disallowed because of the California privilege that permits employers to communicate without malice, with persons who have a "common interest" in the subject matter of the communication. Cal. Civ. Code § 47(c). Because employers and employees have a common interest in preserving morale and job efficiency, an employer's statement to employees regarding the reasons for an employer's adverse employment action are generally privileged. *See King v. UPS*, 152 Cal. App. 4th 426, 440 (2007). Here, Claimants' vague allegations relating to alleged defamation concerning their "work performance and abilities" fall squarely within this privilege. *Pashman v. Aetna Ins. Co*, 2014 U.S. Dist. LEXIS 98190 at * 61 (N.D.Cal. July 18, 2014) ("In fact, employers may share a

5

common interest in an employee's or former employee's performance with not only a supervisory committee or board of directors, but also with other employees in the same company or even third parties . . ."); *Cuenca v. Safeway San Francisco Employees Fed. Credit Union*, 180 Cal. App. 3d 985, 996, 225 Cal. Rptr. 852 (Ct. App. 1986) (finding that defendant's allegedly defamatory statements were relevant to plaintiff's ability to perform her job and therefore privileged).

11.     In addition to being privileged, California law provides that statements by an employer concerning an employee's "work performance or abilities" are statements of opinion that are not actionable as defamation. *See Jensen v. Hewlett Packard Co.*, 14 Cal.App.4th 958, 964-65 (1993). This is true even when the statements regarding work performance are "objectively wrong and cannot be supported by reference to concrete, provable facts." *Id.* at 965 (concluding that statements that the employee was "not carrying his weight, had a negative attitude in dealing with others, evidenced a lack of direction in his project activities and was unwilling to take responsibility for the projects that he oversaw" were statements of opinion and not actionable defamation).

12.     Moreover, Claimants have not proffered any factual allegations in their Opposition to support their request that the Court give them leave to file an amended defamation claim. Instead, Claimants confusingly contend that the automatic stay would need to be lifted in order to amend their *state court* complaint, but as discussed above, this proceeding concerns the Claims that they have filed in these Chapter 11 Cases. Further, no amendment would allow Claimants to avoid the fact that the allegedly defamatory statements are privileged statements and that such statements are considered statements of opinion. The balance of the equities weighs against Claimants obtaining leave from the Court to belatedly amend the Claims.

WEIL:\95419955\5\50482.0005

**Claimants Cannot Seek Economic Damages for
the Time Period After BNC's Closure on October 22, 2007**

13. With respect to the Plan Administrator's request that lost income be disallowed for the time period after October 22, 2007, Claimants make the same argument discussed above that the Plan Administrator has somehow waived its right to seek disallowance of these damages by filing an answer in state court nearly eight years ago. For the reasons discussed above in Paragraphs 7 and 8, the Court should reject this argument.

14. Despite BNC's closure and bankruptcy and its limited resources to pay claims, Claimants continue to seek lost wages for the time period beyond BNC's closure in October 2007, which has significantly impeded efforts to resolve the Claims. In support of their theory of continued lost wages, Claimants have asserted a "lost earning capacity" theory of damages which has never been accepted by a California court in an employment case.

15. In addition, Claimants allege that a jury (not the Court) must decide whether they can seek damages for the time period after BNC's closure. However, Claimants have failed to provide any authority to support this argument. In fact, all of the cases cited by the Plan Administrator involved cases in which the Court (not a jury) ruled *as a matter of law* that lost wages were precluded after the employer went out of business. *Slack v. Havens*, 522 F.2d 1091, 1095 (9th Cir. 1975) (concluding as a matter of law in a Title VII case that back pay was precluded after the dissolution of the employer); *Herring v. Fry's Food & Drug Store*, 1992 U.S. Dist. LEXIS 2994, at *13-14 (N.D. Cal. 1992) (granting summary adjudication in a Title VII case with respect to a claim for back pay after the employer closed); *Priest v. Rotary*, 634 F. Supp. 571, 580, 585 (N.D. Cal. 1986) (concluding as a matter of law in a Title VII case that an employee's entitlement to back pay terminated when the employer was sold); *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1453 (6th Cir. 1980) (same); *Miano v. AC&R Advertising,*

7

*Inc.*, 875 F. Supp. 204, 222 (S.D.N.Y. 1995) (concluding as a matter of law in an age discrimination case that the right to back pay ceases if employer goes out of business). In other words, each of these cases involved situations in which the Court (and not a jury) ruled that damages were barred as a matter of law for the period beyond the employer's closing.

16. Claimants attempt to distinguish these cases by noting that they arose under Title VII and not California's Fair Employment and Housing Act ("FEHA"), but California courts look to Title VII decisional law in order to interpret FEHA. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279, (2006) (concluding that California courts apply the same standard in FEHA cases as Title VII cases and can seek guidance from Title VII decisions); *Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998) (same).

17. Claimants cite three inapposite cases tin support of their argument that they can pursue damages for the time period beyond BNC's closure. In *Rodriguez v. McDonnel Douglas Corp*, 87 Cal.App.3d 626, 656 (1978), the plaintiff was a sprinkler fitter apprentice who suffered physical injuries in an industrial accident. As a result of the injuries, the plaintiff was unable to complete his apprenticeship and become a journeyman sprinkler fitter. The case did not arise in the employment context and did not involve a closing of an employer's business. In *Wysinger v. Automobile Club of Southern California*, 157 Cal.App.4th 413 (2007), a jury awarded economic damages in a disability discrimination case. Although Claimants cite this case for the proposition that the jury awarded damages for the inability of the plaintiff to work anywhere, the damages actually related to the plaintiff's inability to return to work with the defendant, whose operations were ongoing. *Wysinger* did not involve claims against a defendant whose business had closed. Finally, Claimants cite to *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998), a Seventh Circuit decision that also did not involve the closing of an

8

employer's business. As a result, the Court did not consider whether economic damages are available for the time period beyond the closing of the employer's business.

18. Claimants also attempt to rely on CACI 2433 which is the California jury instruction for damages relating to "Wrongful Discharge in Violation of Public Policy." This jury instruction actually *supports* the Plan Administrator's position that the "lost earning capacity" theory of damages is not recognized in California. CACI 2433 states that the jury must follow this procedure in determining damages:

> If you find that [*name of defendant*] [discharged/constructively discharged] [*name of plaintiff*] in violation of public policy, then you must decide the amount of damages that [*name of plaintiff*] has proven [he/she] is entitled to recover, if any. To make that decision, you must:
>
> 1. Decide the amount that [*name of plaintiff*] would have earned up to today, including any benefits and pay increases; [and]
>
> 2. Add the present cash value of any future wages and benefits that [he/she] would have earned for the length of time the employment with [*name of defendant*] was reasonably certain to continue; [and]
>
> 3. [Add damages for [describe any other damages that were allegedly caused by defendant's conduct, e.g., "emotional distress"] if you find that [name of defendant]'s conduct was a substantial factor in causing that harm.]
>
> In determining the period that [*name of plaintiff*]'s employment was reasonably certain to have continued, you should consider such things as:
>
> (a) [*Name of plaintiff*]'s age, work performance, and intent regarding continuing employment with [*name of defendant*];
>
> (b) [*Name of defendant*]'s prospects for continuing the operations involving [*name of plaintiff*]; and
>
> (c) Any other factor that bears on how long [*name of plaintiff*] would have continued to work.

19. Thus, by its plain terms, CACI 2433 limits damages that a plaintiff would have earned "for the length of time the employment with [the defendant] was reasonably certain

9

to continue" and does not authorize a jury to award economic damages beyond the time period that the plaintiff's employment with the defendant would have continued. Furthermore, CACI 2433 instructs juries to consider "[The defendant]'s prospects for continuing the operations involving [the plaintiff]" in making its calculation, which further evidences the fact that CACI 2433 does not contemplate an award of economic damages for a time period beyond the time that the plaintiff's employment with the defendant would have continued.

20. Finally, it is worth mentioning that Claimants' "lost earning capacity" argument – in which they essentially contend that their BNC employment precluded them from other gainful employment – is not supported by any factual allegations. Claimants have not demonstrated, because they cannot, that they were unable to obtain employment after their resignations from BNC.

21. For these reasons, the Plan Administrator requests that the Court disallow Claimants' claims for lost wages to the extent they seek lost wages for the time period beyond BNC's closure in October 2007 and disallow any request for "lost earning capacity" damages.

**Claimants' Claims for Punitive Damages Should be Disallowed**

22. With respect to the claim for punitive damages, the Opposition either cites to factually and legally distinguishable cases outside of this jurisdiction or cites cases to counter arguments that the Plan Administrator has not made. As a result, the Plan Administrator has not discussed each case cited in the Opposition. Further, the Opposition mischaracterizes and fails to address the legal reasons actually set forth in the Supplemental Objection for disallowing Claimants' excessive punitive damages.

23. First, several paragraphs of the Opposition state that the Plan Administrator is seeking to subordinate Claimants' punitive damage claims. In fact the Plan Administrator has not made such a request; the Plan Administrator has unequivocally sought the

10

*disallowance* of the inflated punitive damage claims. *See* Supplemental Objection at ¶¶ 4, 5, 23-28. The Plan Administrator is not seeking the subordination of Claimants' unspecified punitive damages that appear to be sixty (60) to one hundred seventy (170) times the maximum amount that any Claimant earned from BNC each year. Accordingly, the Plan Administrator will not address Claimants' arguments regarding subordination of the punitive damage portion of their Claims.

24. Second, despite Claimants' position to the contrary, Judge Gerber's decision in *Motors Liquidation* is particularly instructive here. In *Motors Liquidation*, a claimant was seeking allowance of a claim for compensatory and punitive damages for alleged employment discrimination, asserting that he was unlawfully terminated due to, among other reasons, his religion and race. At the very outset Judge Gerber states that "[m]ost of [the claimant's] claims must be dismissed as a matter of law. . . . The punitive damage claims must be dismissed because they are not recoverable under Title VII, the Michigan Civil Rights Law, or the ADEA, and for the additional reason that they cannot be recovered against an estate, like this one, in liquidation." *Motors Liquidation*, 2012 BANKR. LEXIS 6258, *2. The findings in *Motors Liquidation* are clear and belie Claimants' contention that the case is inapplicable. At no point did the Supplemental Objection assert that Judge Gerber applied section 105(a) in his decision-making process; however, regardless of the statutory basis – the point remains that, in this Circuit in similarly situated cases, punitive damages are disfavored and disallowed.

25. Third, Claimants ignore the fact that they have asserted claims for (1) lost wages after BNC ceased operating, (2) lost earnings without any evidentiary support that the Claimants have not been employed since their resignations, and (3) defamation despite the existence of privilege and the inability to provide the substance of what was said, when and to

11

whom. Instead, Claimants rather astonishingly state that the Claims may be even higher than the asserted amounts because "[t]he case is still in the early stages of discovery and the amount of any compensatory damages and corresponding punitive damages is yet to be determined."[3] Opposition at 17. The Plan Administrator respectfully requests that the Court find, as did Judge Gerber in *Motors Liquidation*, that punitive damages should be disallowed when, *inter alia*, such claims are based on claims devoid of merit and asserted in a liquidating bankruptcy case.

26.  Regardless of how Claimants attempt to reshape the argument, the following are facts before the Court: (i) BNC is liquidating, (ii) Claimants' inflated Claims in the aggregate amount of $35 million will dwarf an estate of approximately $16 million, (iii) Claimants are attempting to seek an unknown amount of punitive damages based, in part, on claims that are devoid of merit, and (iv) Claimants are seeking to have the other creditors of BNC's estate, innocent parties, bear the cost of BNC's alleged wrongdoing. The Plan Administrator reiterates that none of the purposes to be achieved by an award of punitive damages are implicated here. Accordingly, the portion of the Claims attributable to punitive damages should be disallowed.

## Claimants' Request for Relief From The Stay Should be Denied

27.  At the end of the Opposition, Claimants have renewed their request for relief from the automatic stay to allow for litigation to proceed in the California State Court. Aside from being procedurally improper, Claimants have not demonstrated a change in circumstances since this Court denied their request in October 2014 and remain unable to sustain their burden of showing that relief from the stay is appropriate under the test set forth in *Sonnax*

---

[3] Claimants assert the opposite contention on page 2 of the Opposition, stating "the parties engaged in extensive discovery . . ." Similarly, in the Stay Relief Motion, Claimants argued that the automatic stay should be lifted to proceed with the California Case because the proceedings were far along. Claimants should be estopped from taking blatantly inconsistent positions.

12

*v. Tri-Component Prods. Corp (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). Claimants are once again attempting to impermissibly wrest from this Court one of its principal responsibilities – the allowance of claims. Claimants' request is procedurally improper and should be denied once again.

## **Conclusion**

For all the foregoing reasons and those set forth in the Supplemental Objection, and accepting as true all allegations contained in the Claims that have not been refuted by the Supplemental Objection and this Reply, the Plan Administrator requests that the Court enter the proposed order attached to the Supplemental Objection that (A) disallows any: (i) damages for defamation, (ii) compensatory damages for the period subsequent to October 22, 2007, and (iii) punitive damages, and (B) approves the Claim Reduction Procedures set forth in the Supplemental Objection and directs the Claimants to comply with such procedures.

Dated: July 31, 2015
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates