WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------ x

## LEHMAN BROTHERS HOLDINGS INC.'S
## (1) REPLY TO SPANISH BROADCASTING SYSTEM, INC.'S RESPONSE TO LEHMAN BROTHERS HOLDINGS INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 7056-1 IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT REGARDING CLAIM 67707 FILED BY SPANISH BROADCASTING SYSTEM, INC.; AND (2) RESPONSE TO SPANISH BROADCASTING SYSTEM, INC.'S COUNTERSTATEMENT OF ADDITIONAL FACTS <u>AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED</u>

Pursuant to Local Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York, Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (ECF No. 22737), on behalf of Lehman Commercial Paper Inc. ("LCPI"), hereby submits this (1) Reply to Spanish Broadcasting System, Inc.'s ("Spanish Broadcasting") Response to LBHI's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (the "Motion") and (2) Response to Spanish Broadcasting's Counterstatement of Additional Facts As to Which There Is a Genuine Issue to Be Tried.

## REPLY TO SPANISH BROADCASTING'S RESPONSE
## TO LBHI'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The following sets forth the Plan Administrator's replies to Spanish Broadcasting's responses to the statements asserted in the Plan Administrator's Rule 7056-1 Statement.[1]

## GENERAL REPLY

For purposes of this reply, each numbered paragraph below corresponds to the same numbered paragraph in the Plan Administrator's Rule 7056-1 Statement. The Plan Administrator's initial statement is in regular text, Spanish Broadcasting's response is in italics, and the Plan Administrator's reply (where one is provided) is in bold. The Plan Administrator has not provided a reply in every instance. The fact that no reply is provided with respect to a particular fact should not be construed as a concession with regard to any issue or objection; it

---

[1] Capitalized terms not defined herein shall have the same meanings ascribed to them in the *Memorandum of Law of Lehman Brothers Holdings Inc. in Support of Motion for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc.*, filed on June 18, 2015 (ECF No. 50033) (the "Moving Memorandum" or Mov. Mem.").

WEIL:\95425323\6\58399.0011

merely reflects that in the Plan Administrator's view, the original factual assertion stands on its own.

Any substantive replies provided are made without prejudice, and the Plan Administrator reserves all of its rights, to: (a) contest the materiality of any facts contained in Spanish Broadcasting's responses in connection with the Motion; (b) contest the facts contained in those responses in any further proceedings in this or in any other litigation or matter; (c) cite, submit or rely upon such additional and further facts, evidence, circumstances, documents, and testimony with respect to the subject matter of Spanish Broadcasting's responses in any further proceedings in this or any other litigation or matter should it become relevant; (d) challenge the admissibility or authenticity of any of the putative evidence cited by Spanish Broadcasting; and/or (e) contest whether any of the statements contained in the responses are supported by the particular documents and testimony cited therein.

Where the Plan Administrator does not dispute statements contained in a particular response, it does so for purposes of the Motion only (subject to preserving its objection to the relevance and materiality of any facts contained therein), and such reply is made without prejudice to, and reserving all of its rights and objections thereto, including without limitation, its ability to: (a) contest the facts contained therein in any further proceedings in this or any other litigation or matter, and/or (b) to challenge the admissibility of the putative evidence cited at the time it is offered.

For the Court's convenience, this reply submission reprints all of the original facts asserted and Spanish Broadcasting's responses, whether or not a reply is provided herein, so that they all appear in a single document for more efficient review.

WEIL:\95425323\6\58399.0011

In accordance with, subject to, and as limited by, this General Reply, the Plan

Administrator specifically responds to each of Spanish Broadcasting's paragraphs as follows:

## The Credit Agreement

1.     On or about June 10, 2005, LCPI, as administrative agent and lender, and Spanish Broadcasting System, Inc. ("Spanish Broadcasting"), as borrower, entered into a Credit Agreement (the "Credit Agreement").[2]  *See* Ex. B, Claim No. 67707 of Spanish Broadcasting (without exhibits) (the "Claim").[3]

*Spanish Broadcasting's Response to Paragraph No. 1:  Undisputed.*

2.     Pursuant to the Credit Agreement, LCPI and certain other lenders agreed to collectively make a term loan to Spanish Broadcasting in the amount of $325 million (the "Term Loan") on the closing date, which the Credit Agreement defines as June 10, 2005.  *See* Ex. B, Credit Agreement §§ 2.1(a), 1.1 (definitions of "Closing Date," "Term Loan" and "Term Loan Commitment").

*Spanish Broadcasting's Response to Paragraph No. 2:  Undisputed.*

3.     The Credit Agreement provided for a revolving credit facility under which Spanish Broadcasting, as borrower, had the right to request that the lenders loan it a total of $25 million, with each lender responsible for a portion of the $25 million (the "Revolving Credit Facility").  *Id.* §§ 2.4(a), 1.1 (definition of "Revolving Credit Loan").

*Spanish Broadcasting's Response to Paragraph No. 3:  Disputed.  Each lender under the Credit Agreement was responsible for a specified portion of the $25 million Revolving Credit Facility. See declaration (the "Garcia Declaration") of Joseph A.  Garcia, dated July 23, 2015, Ex.  B (Credit Agreement), §§ 1.1 (definition of "Revolving Credit Commitment"), 2.4(a).*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated.  The Plan Administrator does not dispute that each lender under the Credit Agreement was responsible for a specified portion of the $25 million Revolving Credit Facility.  Thus, Paragraph No. 1 should be deemed admitted.**

---

[2] Attached hereto as Exhibit A is the *Declaration of Ralph I. Miller in Support of Motion for Summary Judgment* (the "Miller Declaration"), which authenticates various documents produced by the Plan Administrator to Spanish Broadcasting in connection with this contested matter.

[3] Attached to the Claim were the Credit Agreement and a report from Capstone Advisory Group, LLC (the "Capstone Report"), but for ease of reference, they are separately attached hereto as Exhibit C and Exhibit D, respectively.

WEIL:\95425323\6\58399.0011

4.      At all relevant times, LCPI's credit commitment under the Revolving Credit Facility was $10 million.  *See* Miller Decl. Ex. 2.

*Spanish Broadcasting's Response to Paragraph No. 4:  Undisputed.*

5.      As administrative agent, LCPI had the additional responsibility of facilitating the funding of loans to Spanish Broadcasting under the Revolving Credit Facility. *See* Ex. C § 2.5.

*Spanish Broadcasting's Response to Paragraph No. 5:  Disputed.  Section 2.5 of the Credit Agreement did not state that LCPI had the "responsibility" for "facilitating" the funding of loans.  See Garcia Declaration, Ex.  B (Credit Agreement), § 2.5.  Section 2.5 of the Credit Agreement did provide, among other things, that "[e]ach Revolving Credit Lender will make the amount of its pro rata share of each borrowing available to the Administrative Agent [i.e., Lehman] for the account of the Borrower" and that "[s]uch borrowing will then be made available to the Borrower by the Administrative Agent in like funds as received by the Administrative Agent."  Id.*

**Reply:  The Plan Administrator does not dispute that section 2.5 of the Credit Agreement contains the text quoted by Spanish Broadcasting.  The Plan Administrator further states that the acts described in section 2.5 constitute "facilitating the funding of loans" as described in Paragraph No. 5.  Thus, Paragraph No. 5 should be deemed admitted.**

6.      Spanish Broadcasting agreed to repay the aggregate outstanding principal balance of the Term Loan no later than June 10, 2012, (*id.* §§ 2.3, 1.1 (definition of "Term Loan Maturity Date")), and to repay all amounts loaned to it under the Revolving Credit Facility no later than June 10, 2010.  *Id.* §§ 1.1 (definition of "Revolving Credit Termination Date"); 2.8(a).  Spanish Broadcasting agreed to repay each of the loans, together with interest at a specified rate.  *Id.* § 2.15.

*Spanish Broadcasting's Response to Paragraph No. 6:  Undisputed.*

7.      Section 10.12(a) of the Credit Agreement refers to "any legal action or proceeding relating to this Agreement and the other Loan Documents to which [Spanish Broadcasting] is a party."  *Id.* § 10.12(a).

*Spanish Broadcasting's Response to Paragraph No. 7:  Undisputed that the quoted text, except for the words in brackets, appeared in Section 10.12(a) of the Credit Agreement.*

**Reply:  The words "Spanish Broadcasting" in brackets in Paragraph No. 7 replaced the word "it" in the Credit Agreement and were included to clarify that "it" referred to the**

**"Borrower," which the Credit Agreement defines as "Spanish Broadcasting System, Inc."
7056-1 Statement, Ex. C at 1.1.  Thus, Paragraph No. 7 should be deemed admitted.**

8.      This contested matter qualifies as "a legal action or proceeding referred to in
[Section 10.12]" of the Credit Agreement.

*Spanish Broadcasting's Response to Paragraph No. 8: Undisputed that this contested matter
relates to the Credit Agreement.*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the
facts as stated, and thus, Paragraph No. 8 should be deemed admitted.**

9.      Section 10.12(e) of the Credit Agreement provides:

The Borrower [*e.g.* Spanish Broadcasting] hereby irrevocably and
unconditionally . . . waives, to the maximum extent not prohibited
by law, any right it may have to claim or recover in any legal
action or proceeding referred to in this Section any special,
exemplary, punitive or consequential damages.
*Id.* § 10.12(e).

*Spanish Broadcasting's Response to Paragraph No. 9:  Undisputed that the quoted text, except
for the words in brackets, appeared in Section 10.12 of the Credit Agreement, but disputed to the
extent that it implies that Section 10.12(e) of the Credit Agreement (the "Alleged Waiver")
remains effective and enforceable.  The Alleged Waiver did not remain effective following the
termination of the Credit Agreement pursuant to the payoff letter (the "Payoff Letter"), dated
February 7, 2012, between Spanish Broadcasting and Lehman.  See declaration (the "Gittlitz
Declaration") of Sheryl Gittlitz, dated July 23, 2015, ¶¶ 6-7, 22-24; Garcia Declaration, ¶ 37.
Spanish Broadcasting respectfully refers the Court to the Gittlitz Declaration and the Garcia
Declaration, which are being filed contemporaneously herewith.*

**Reply:  The words "Spanish Broadcasting" in brackets in Paragraph No. 9 replaced the
word "Borrower" in the Credit Agreement, which the Credit Agreement defines as
"Spanish Broadcasting System, Inc."  7056-1 Statement, Ex. C at 1.1.  The remainder of
Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as
stated and constitutes legal argument.  Thus, Paragraph No. 9 should be deemed admitted.**

10.     On the closing date defined by the Credit Agreement, the lenders under the Credit
Agreement—including LCPI—loaned Spanish Broadcasting $325 million as
required by the Credit Agreement.  *See* Reply of Spanish Broadcasting, ECF No.
34175 ¶ 5.

*Spanish Broadcasting's Response to Paragraph No. 10:  Undisputed.*

I.        **The Bankruptcy Filings and Draw Request**

11.    On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  *See* Case No. 08-13555, ECF No. 1.

*Spanish Broadcasting's Response to Paragraph No.11:  Undisputed.*

12.    On October 3, 2008, Spanish Broadcasting requested an advance of the full $25 million available under the Revolving Credit Facility (the "Draw Request").  *See* Miller Decl. Ex. 1 (the "Notice of Borrowing").

*Spanish Broadcasting's Response to Paragraph No. 12:  Undisputed.*

13.    The Notice of Borrowing sent by Spanish Broadcasting to LCPI, as administrative agent, states that the "Business Day of the proposed Loan is October 6, 2008," meaning that Spanish Broadcasting requested that the $25 million loan be provided to Spanish Broadcasting on October 6, 2008.  *Id.*

*Spanish Broadcasting's Response to Paragraph No. 13: Undisputed that the quoted text appears in the Notice of Borrowing.  Pursuant to Section 2.5(b) of the Credit Agreement, Spanish Broadcasting was required to submit the Notice of Borrowing one business day prior to the borrowing date for the proposed loan under the Revolving Credit Facility.  See Garcia Declaration, Ex. B (Credit Agreement), § 2.5(b).  Spanish Broadcasting submitted the $25 million Draw Request on Friday, October 3, 2008, which was one business day prior to the October 6, 2008 borrowing date specified in the Notice of Borrowing.  See Garcia Declaration, ¶ 14.*

**Reply:  The first sentence of Spanish Broadcasting's response indicates that Paragraph No. 13 is undisputed.  The remainder of Spanish Broadcasting's response is non-responsive because it does not dispute the facts as stated.  Thus, Paragraph No. 13 should be deemed admitted.**

14.    On October 5, 2008, LCPI commenced a voluntary case under chapter 11 of the Bankruptcy Code.  *See* Case No. 08-13900, ECF No. 1.

*Spanish Broadcasting's Response to Paragraph No. 14:  Undisputed.*

15.    LCPI did not fund its $10 million portion of the Draw Request.  *See* Miller Decl. Ex. 2.

*Spanish Broadcasting's Response to Paragraph No. 15:  Undisputed.*

16.    As administrative agent under the Credit Agreement, LCPI facilitated the funding of the $15 million due from the other lenders to Spanish Broadcasting.  *Id.*

*Spanish Broadcasting's Response to Paragraph No. 16: Undisputed that the lenders under the Credit Agreement other than Lehman funded $15 million of the Draw Request.  See Garcia Declaration, ¶ 15.*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated, and thus, Paragraph No. 16 should be deemed admitted.**

17.    Spanish Broadcasting received $15 million of the $25 million it requested pursuant to the Draw Request.  *See* ECF No. 34549-1, Ex. E ¶ 4 ("[T]he other lenders under the Credit Agreement funded $15 million of the $25 million [D]raw [R]equest."); Miller Decl. Ex. 2.

*Spanish Broadcasting's Response to Paragraph No. 17:  Undisputed.*

## II.    The Claim

18.    On November 3, 2011, Spanish Broadcasting filed the Claim.  *See* Ex. B.

*Spanish Broadcasting's Response to Paragraph No. 18:  Undisputed.*

19.    The Claim amends proof of claim number 15941, filed in an unliquidated amount against LCPI on September 18, 2009, which claim was expunged pursuant to the *Order Granting Debtors' Two Hundred Thirty-Seventh Omnibus Objection to Claims (Amended and Superseded Claims)*, dated January 26, 2012.  *See* ECF No. 24682.

*Spanish Broadcasting's Response to Paragraph No. 19:  Undisputed.*

20.    In the Claim, Spanish Broadcasting seeks $55,462,228.33.  *See* Ex. B.

*Spanish Broadcasting's Response to Paragraph No. 20: Disputed that Spanish Broadcasting currently seeks to recover damages in a total amount of $55,462,228.33.  Spanish Broadcasting expressly listed the categories of damages that it seeks to recover in its response to Lehman's Interrogatory No. 13.  See Lehman Rule 7056 Statement, Ex. A (the "Miller Declaration"), Ex. 6 (Spanish Broadcasting's responses to Lehman's interrogatories).  Spanish Broadcasting's damages are also described at length in the accompanying (a) Garcia Declaration (b) expert report (the "Trautman Report") of James Trautman of Bortz Media & Sports Group, Inc., Spanish Broadcasting's media expert, and (c) expert report (the "Kearns Report") of*

WEIL:\95425323\6\58399.0011

Christopher J.  Kearns of Berkeley Research Group, LLC ("BRG"), Spanish Broadcasting's financial advisor.[4]  Spanish Broadcasting respectfully refers the Court to the Garcia Declaration, the Kearns Report and the Trautman Report, which are being filed contemporaneously herewith.

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated, and thus, Paragraph No. 20 should be deemed admitted.  Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.**

21.  Attached to the Claim were the Credit Agreement and the Capstone Report detailing the various components of Spanish Broadcasting's alleged damages. *See* Exs. C & D.

*Spanish Broadcasting's Response to Paragraph No. 21: Disputed that all of the damages that Spanish Broadcasting seeks to recover are set forth in the attachments to Spanish Broadcasting's proof of claim number 67707 (the "Proof of Claim").  The damages that Spanish Broadcasting seeks to recover are described in detail in (a) Spanish Broadcasting's response to Lehman's Interrogatory No. 13; (b) the Garcia Declaration; (c) the Kearns Report; and (d) the Trautman Report.  See Miller Declaration, Ex. 6 (interrogatory responses); Garcia Declaration, ¶¶ 27-36; Trautman Report (passim); Kearns Report (passim).*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated, and thus, Paragraph No. 21 should be deemed admitted.  Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.**

22.  The Capstone Report states that Spanish Broadcasting suffered $39.6 million in damages stemming from an "expected" decline in its total invested capital, which Spanish Broadcasting defined as "the market value of common equity, preferred equity, long-term debt, cash, and minority interest."  Ex. D at 1, 2.

*Spanish Broadcasting's Response to Paragraph No. 22: Undisputed that the quoted text appears in the Capstone Report attached to the Proof of Claim, but disputed to the extent that Lehman has quoted language out of context and omitted words in a manner that materially alters and misinterprets its original meaning.  Spanish Broadcasting seeks, inter alia, direct damages resulting from a diminution in the value of Spanish Broadcasting caused by Lehman's failure to fund.  See Kearns Report, at 3, 10-11.  The damages that Spanish Broadcasting seeks to recover*

---

[4] The former members and senior professionals at Capstone Advisory Group, LLC joined BRG on June 1, 2015.

WEIL:\95425323\6\58399.0011

*are described in detail in (a) Spanish Broadcasting's response to Lehman's Interrogatory No. 13; (b) the Garcia Declaration; (c) the Kearns Report; and (d) the Trautman Report. See Miller Declaration, Ex. 6 (interrogatory responses); Garcia Declaration, ¶¶ 27-36; Trautman Report (passim); Kearns Report (passim).*

**Reply: Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated or identify the words that Spanish Broadcasting claims were omitted or how Spanish Broadcasting believes the Plan Administrator quoted the language out of context. Thus, Paragraph No. 22 should be deemed admitted. Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.**

23.    The Capstone Report states Spanish Broadcasting suffered $9.9 million in damages (the "Swap Damages") as a result of its alleged inability to terminate an ISDA Master Agreement, dated June 28, 2005 (the "Swap"), that it had entered into with LCPI's affiliate, Lehman Brothers Special Financing Inc. ("LBSF"). *See id.* at 1, 15; Miller Decl. Ex. 3.

*Spanish Broadcasting's Response to Paragraph No. 23: Disputed that all of the damages that Spanish Broadcasting seeks to recover are set forth in the attachments to the Proof of Claim. The damages that Spanish Broadcasting seeks to recover are described in detail in (a) Spanish Broadcasting's response to Lehman's Interrogatory No. 13; (b) the Garcia Declaration; (c) the Trautman Report; and (d) the Kearns Report. See Miller Declaration, Ex. 6 (interrogatory responses); Garcia Declaration, ¶¶ 27-36; Trautman Report; (passim); Kearns Report (passim).*

**Reply: Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated, and thus, Paragraph No. 23 should be deemed admitted. Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.**

24.    The Capstone Report states that Spanish Broadcasting is entitled to $273,333.33, representing the "financing and unfunded revolver fees" that it paid to LCPI in its capacity as administrative agent, over the life of the Credit Agreement (the "Fee Damages"). Ex. D at 1, 16.

*Spanish Broadcasting's Response to Paragraph No. 24: Disputed that all of the damages that Spanish Broadcasting seeks to recover are set forth in the attachments to the Proof of Claim. The damages that Spanish Broadcasting seeks to recover are described in detail in (a) Spanish Broadcasting's response to Lehman's Interrogatory No. 13; (b) the Garcia Declaration; (c) the Trautman Report; and (d) the Kearns Report. See Miller Declaration, Ex. 6 (interrogatory responses); Garcia Declaration, ¶¶ 27-36; Trautman Report; (passim); Kearns Report (passim).*

WEIL:\95425323\6\58399.0011

**Reply:** Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated, and thus, Paragraph No. 24 should be deemed admitted. Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.

25.    The Capstone Report states that Spanish Broadcasting seeks to recover approximately $5.7 million for what it cost Spanish Broadcasting to replace LCPI's $10 million commitment under the Revolving Credit Facility (the "Replacement Cost Damages"). *Id.* at 1, 17. Spanish Broadcasting later withdrew the Replacement Cost Damages from its Claim. *See* Feb. 13, 2013 Hr'g Tr. at 134:25–135:5, ECF No. 34990 (Ms. Primoff: . . . On the $5.7 million, I believe we previously communicated to Lehman that we are withdrawing that element of the claim. So that's – that's not – that's not an issue.").

*Spanish Broadcasting's Response to Paragraph No. 25: Undisputed that Spanish Broadcasting withdrew the Replacement Cost Damages prior to the February 13, 2013 Sufficiency Hearing before Judge Peck.*

**Reply:** Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated. Thus, Paragraph No. 25 should be deemed admitted.

## III.    The Payoff Letter

26.    On or about February 7, 2012, Spanish Broadcasting and LCPI executed a letter terminating the Credit Agreement (the "Payoff Letter"). *See* Miller Decl. Ex. 4 (the "Payoff Letter").

*Spanish Broadcasting's Response to Paragraph No. 26:  Undisputed.*

27.    In connection with the negotiations of the Payoff Letter, Spanish Broadcasting was represented by Kaye Scholer LLP and LCPI was represented by Weil, Gotshal & Manges LLP. *See* Miller Decl. ¶ 6.

*Spanish Broadcasting's Response to Paragraph No. 27:  Undisputed.*

28.    Section 1(a) of the Payoff Letter states:

Effective as of the Effective Date (defined below) . . . all outstanding Loans and all other amounts owing by [Spanish Broadcasting] under the Credit Agreement (including all principal,

accrued interest and fees) shall be paid in full and the Credit Agreement and all obligations of [Spanish Broadcasting] and the other Loan Parties thereunder and under the other Loan Documents shall be terminated (other than contingent obligations which expressly survive the terms of the Credit Agreement or such other Loan Documents, including without limitation, Section 10.5 of the Credit Agreement).

Miller Decl. Ex. 4 § 1(a).

*Spanish Broadcasting's Response to Paragraph No. 28:  Undisputed that the quoted text, except for the words in brackets, appears in Section 1(a) of the Payoff Letter.*

**Reply:  The words "Spanish Broadcasting" in brackets in Paragraph No. 28 replaced the word "Borrower," which the Payoff Letter defines as "Spanish Broadcasting System, Inc." Thus, Paragraph No. 28 should be deemed admitted.**

29.     The Payoff Letter states that "[c]apitalized terms used but not defined herein shall have the meanings given such terms in the Credit Agreement." *Id.* at 1.  The Credit Agreement defines "Loan" as "any loan made by any Lender pursuant to this Agreement." Ex. C § 1.1.  The Credit Agreement defines "Loan Parties" as "[Spanish Broadcasting] and each Subsidiary of [Spanish Broadcasting] that is a party to a Loan Document." *Id.*  The Credit Agreement defines "Loan Documents" as the "[First Lien Credit Agreement, as amended, supplemented, replaced or otherwise modified from time to time], the Security Documents, the Intercreditor Agreement, the Fee Letter, the Applications and the Notes." *Id.*

*Spanish Broadcasting's Response to Paragraph No. 29:  Disputed to the extent that the first sentence misquotes the Payoff Letter by adding the word "shall."  Undisputed that the remainder of the quoted text, except for the words in brackets, appears in the Credit Agreement.*

**Reply:  The Plan Administrator agrees that the word "shall" was mistakenly included in the text quoted in Paragraph No. 29.  The words "Spanish Broadcasting" in brackets in Paragraph No. 29 replaced the word "Borrower," which the Credit Agreement defines as "Spanish Broadcasting System, Inc." 7056-1 Statement, Ex. C at 1.1.  The phrase, "First Lien Credit Agreement, as amended, supplemented, replaced or otherwise modified from time to time" in brackets replaced the word "Agreement" in the Credit Agreement, which the Credit Agreement defines as "this First Lien Credit Agreement, as amended, supplemented, replaced or otherwise modified from time to time." 7056-1 Statement, Ex. C §1.1 (defining "Agreement").  Thus, except for the inclusion of the word, "shall," Paragraph No. 29 should be deemed admitted.**

30.     Section 4 of the Payoff Letter is entitled "Release" and states:
Except as set forth in the last sentence of this paragraph, [Spanish Broadcasting], on behalf of itself and the other Loan Parties,

WEIL:\95425323\6\58399.0011

hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have against [LCPI] (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors and assigns (collectively, the "Released Parties") to the extent arising out of or in connection with the Loan Documents including, without limitation, any failure by the Lehman [sic] or its affiliates to fund any Loan required to be funded by it under the Credit Agreement (collectively, the "Claims").  Except as set forth in the last sentence of this paragraph, each of [Spanish Broadcasting] and the other Loan Parties further agree forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims and from exercising any right of recoupment or setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this letter agreement. The foregoing release shall not apply to [the Claim] (as such claim may be amended in accordance with applicable law).

Miller Decl. Ex. 4 § 4.

*Spanish Broadcasting's Response to Paragraph No. 30:  Undisputed that the quoted text, except for the words in brackets, appears in Section 4 of the Payoff Letter.*

**Reply:  The words "Spanish Broadcasting" in brackets in Paragraph No. 30 replaced the word "Borrower," which the Payoff Letter defines as "Spanish Broadcasting System, Inc." Miller Decl. Ex. 4.  The word "LCPI" in brackets in Paragraph No. 30 replaced the word "Lehman" which the Payoff Letter defines as "Lehman Commercial Paper Inc.," *id*., which is referred to in the Moving Memorandum as "LCPI."  Moving Mem. at 1.  The words "the Claim" in brackets in Paragraph 30 replaced the words "Proof of Claim (Claim Number 67707)" in the Payoff Letter, *id*. § 4, and the "Claim" is defined in the Plan Administrator's 7056-1 Statement defines as "Claim No. 67707 of Spanish Broadcasting."  7056-1 Statement ¶1.  Thus, Paragraph No. 30 should be deemed admitted.**

31.    The Payoff Letter does not contain a release of claims or defenses by LCPI.

*Spanish Broadcasting's Response to Paragraph No. 31:  Disputed to the extent that it implies that the Alleged Waiver remains effective and enforceable.  The Alleged Waiver did not remain*

13

*effective following the termination of the Credit Agreement pursuant to the Payoff Letter. See Gittlitz Declaration, ¶¶ 6-7, 22-24; Garcia Declaration, ¶ 37.*

**Reply: Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated and constitutes legal argument. Thus, Paragraph No. 31 should be deemed admitted.**

## IV.     Discovery

32.     On October 14, 2014, the Court entered the *Claims Litigation Schedule With Respect to Claim No. 67707 Filed by Spanish Broadcasting System, Inc. and the Objection Interposed by Lehman Brothers Holdings Inc.*, as amended from time to time, which was negotiated by the parties and called for the exchange of document requests and interrogatories, among other discovery devices. *See* ECF No. 46498.

*Spanish Broadcasting's Response to Paragraph No. 32: Undisputed.*

33.     The interrogatories served by the Plan Administrator on Spanish Broadcasting included Interrogatory No. 23, which requested that Spanish Broadcasting "[d]escribe in detail the amount and computation of damages that Spanish Broadcasting is seeking in this matter." *See* Miller Decl. Ex. 5 ¶ 23.

*Spanish Broadcasting's Response to Paragraph No. 33: Disputed. Lehman did not interpose any Interrogatory No. 23 on Spanish Broadcasting. See Miller Declaration, Ex. 5. The quoted text appears in Lehman's Interrogatory No. 13. Id.*

**Reply: The Plan Administrator agrees that the quoted text appears in the Plan Administrator's Interrogatory No. 13. With that modification, Paragraph No. 33 should be deemed admitted.**

34.     In its response (Miller Decl. Ex. 6) to LBHI Interrogatory No. 23, Spanish Broadcasting provided the following description of its damages:

(a)     Damages in an amount of approximately $30.3 million in impacted EBITDA resulting from Lehman's failure to fund the Draw;

(b)     [the Swap Damages] in an amount of approximately $17.2 million relating to Spanish Broadcasting's inability to terminate the Swap;

(c)     [Fee Damages] in the amount of $273,333.33 on account of the fees that Spanish Broadcasting paid to Lehman for the portion of the Draw that Lehman failed to fund;

(d)     Interest on the foregoing; and

14

    (e)    Spanish Broadcasting's costs, expenses and reasonable attorneys' fees relating to [this dispute], including, without limitation, all costs, expenses and fees relating to Spanish Broadcasting's testifying and non-testifying experts.

*Id.* at 23–24.

*Spanish Broadcasting's Response to Paragraph No. 34: Disputed. Lehman did not interpose any Interrogatory No. 23 on Spanish Broadcasting. See Miller Declaration, Ex. 5. The quoted text, except for the language in brackets, appears in Spanish Broadcasting's response to Lehman's Interrogatory No. 13. See Miller Declaration, Ex. 6 (interrogatory responses), at 23-24.*

**Reply:  The Plan Administrator agrees that the quoted text (except for the words in brackets) appears in Spanish Broadcasting's response to the Plan Administrator's Interrogatory No. 13.  The terms in brackets were added for clarification and do not substantively alter the meaning of the quoted text.  Thus, with the clarification that the text responds to Interrogatory No. 13, Paragraph No. 34 should be deemed admitted.**

    35.    Spanish Broadcasting has confirmed that it has produced "a universe of documents that . . . demonstrates [its] damages". Miller Decl. Ex. 7, Apr. 27, 2015 Hr'g Tr. at 14:25–15:4.

*Spanish Broadcasting's Response to Paragraph No. 35:  Undisputed that the quoted text appears in the transcript of the April 27, 2015 hearing, but disputed to the extent that Lehman has quoted language out of context and omitted words in a manner that materially alters and misinterprets its original meaning. Spanish Broadcasting respectfully refers the Court to the transcript of the April 27, 2015 hearing. In addition, it is undisputed that discovery has not been completed in this contested matter. See Lehman's summary judgment motion (the "<u>Motion</u>"), dated June 18, 2015 [Dkt No. 50033], at 11 n.11 (noting that there exist "pending disputes with regard to document production.").*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated or identify the words that Spanish Broadcasting claims were omitted or how Spanish Broadcasting believes the Plan Administrator quoted the language out of context. For the convenience of the Court, the relevant excerpt of the April 27, 2015 hearing transcript is set forth below:**

    **THE COURT:  So do you have a universe of documents let's try to back into this. Do you have a universe of documents that you think demonstrates your damages?**

    **MS. PRIMOFF:  Yes.**

    **THE COURT:  Have you produced those?**

WEIL:\95425323\6\58399.0011

MS. PRIMOFF:  Yes.

**Miller Decl. Ex. 7, Apr. 27, 2015 Hr'g Tr. at 14:24–15:4.  Thus, Paragraph No. 35 should be deemed admitted.**

## V.    EBITDA Damages

36.    On February 11, 2013, Spanish Broadcasting filed the declaration of Joseph A. Garcia in support of the Claim, attached hereto as <u>Exhibit E</u>.

*Spanish Broadcasting's Response to Paragraph No. 36:  Undisputed.*

37.    Spanish Broadcasting alleges that it suffered "another level of lost market value due to the resulting forced reduction in its productions and revenue generating activities."  Ex. E ¶ 10.  Specifically, Spanish Broadcasting alleges that its lack of $10 million "prevented [it] from operating at its current and budgeted levels at the time, and therefore forced Spanish Broadcasting to immediately take steps to cut costs and preserve cash. . . . Spanish Broadcasting's ability to produce programming and generate revenue were reduced as a result, and Spanish Broadcasting was not able to achieve budgeted financial levels."  *Id.* ¶ 9.

*Spanish Broadcasting's Response to Paragraph No. 37: Undisputed that the quoted text, except for the words in brackets, appears in the Declaration of Joseph A.  Garcia dated February 11, 2013 (the "2013 <u>Garcia Declaration</u>"), but disputed to the extent that Lehman has quoted language out of context and omitted words in a manner that materially alters and misinterprets its original meaning.  Spanish Broadcasting respectfully refers the Court to the 2013 Garcia Declaration.*

**<u>Reply</u>:  The word "it" in brackets replaced the words "Spanish Broadcasting."  The remainder of Spanish Broadcasting's response is non-responsive because its response fails to dispute the facts as stated or identify the words that Spanish Broadcasting claims were omitted or how Spanish Broadcasting believes the Plan Administrator quoted the language out of context.  Thus, Paragraph No. 37 should be deemed admitted.**

## VI.    Swap Damages

38.    Spanish Broadcasting and LBSF entered into that certain 1992 form ISDA Master Agreement and schedule governing swap transactions, dated as of June 28, 2005 (the "<u>Master Agreement</u>").  *See* Miller Decl. Ex. 3.

*Spanish Broadcasting's Response to Paragraph No. 38: Disputed to the extent that it implies that Spanish Broadcasting entered into the ISDA Master Agreement for reasons unrelated to the Credit Agreement.  In connection with the Credit Agreement, pursuant to an affirmative*

*covenant imposed by Lehman, Spanish Broadcasting was required to enter into the swap agreement.  See Garcia Declaration, ¶¶ 8, 30.*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated.  Thus, Paragraph No. 38 should be deemed admitted.**

39.    Spanish Broadcasting and LBSF executed a confirmation on June 29, 2005, pursuant to which the parties entered into an interest rate swap transaction.  *See* Miller Decl. Ex. 3 (the "Swap").

*Spanish Broadcasting's Response to Paragraph No. 39: Disputed to the extent that it implies that Spanish Broadcasting entered into the Swap for reasons unrelated to the Credit Agreement. In connection with the Credit Agreement, pursuant to an affirmative covenant imposed by Lehman, Spanish Broadcasting was required to enter into the swap agreement.  See Garcia Declaration, ¶¶ 8, 30.*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated.  Thus, Paragraph No. 39 should be deemed admitted.**

40.    Pursuant to the Master Agreement, LBHI served as "Credit Support Provider" for LBSF.  Miller Decl. Ex. 3, Swap Sched. Pt. 4(g).  The Master Agreement provided that, upon the bankruptcy of LBHI or LBSF, Spanish Broadcasting was entitled to terminate all transactions outstanding under the Master Agreement, including the Swap.  Miller Decl. Ex. 3, Master Agreement §§ 5(a)(vii), 6.

*Spanish Broadcasting's Response to Paragraph No. 40:  Undisputed.*

41.    Spanish Broadcasting did not terminate the Swap upon the commencement of the chapter 11 cases of LBHI or LBSF.  Rather, the Swap was terminated pursuant to that certain confidential Hedge Amendment and Settlement Agreement between LBSF and Spanish Broadcasting, dated as of June 17, 2010.  *See* Ex. D at 1.

*Spanish Broadcasting's Response to Paragraph No. 41: Undisputed that the Swap was terminated pursuant to the Hedge Amendment and Settlement Agreement, but disputed to the extent it implies that Spanish Broadcasting had sufficient available cash to terminate the Swap following Lehman's failure to fund the Revolving Credit Facility.  Spanish Broadcasting was left with dangerously low cash reserves as a result of Lehman's failure to fund the Revolving Credit Facility and, as a result, Spanish Broadcasting did not have the approximately $6 million it needed to terminate the Swap.  See Garcia Declaration, ¶¶ 16, 31; Kearns Report, at 3-4, 12*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute all of the facts as stated.  Thus, Paragraph No. 41 should be deemed admitted.**

17

42.    Because it did not receive $10 million, Spanish Broadcasting asserts it "[u]ltimately . . . paid $9,886,745 more in damages to [LBSF] for termination of the Swap than it would have been required to pay had it been able to terminate the Swap in October 2008 as contemplated.  Ex. E ¶ 8.

*Spanish Broadcasting's Response to Paragraph No. 42: Undisputed that the quoted text appears in the 2013 Garcia Declaration, but disputed that all of the damages that Spanish Broadcasting seeks to recover (including, without limitation, Swap Damages in amount of $17,054,558) are set forth in the 2013 Garcia Declaration.  The damages that Spanish Broadcasting seeks to recover are described in detail in (a) Spanish Broadcasting's response to Lehman's Interrogatory No. 13; (b) the Garcia Declaration; (c) the Trautman Report; and (d) the Kearns Report.  See Miller Declaration, Ex. 6 (interrogatory responses); Garcia Declaration, ¶¶ 27-36; Trautman Report; (passim); Kearns Report (passim).*

**Reply:  Spanish Broadcasting's response is non-responsive because it fails to dispute the facts as stated.  Thus, Paragraph No. 42 should be deemed admitted.  Further, the Plan Administrator does not dispute the remaining statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the damages sought by Spanish Broadcasting, the qualifications of the purported experts, and any opinions described in their purported expert reports, in the event that the Motion is denied in whole or in part.**

43.    Spanish Broadcasting asserts that, if LCPI had funded its *pro rata* share of the Draw Request, Spanish Broadcasting would have paid "somewhere between $5 and $6 million" to LBSF to terminate the Swap it had entered into with LBSF.  *Id.* ¶ 7.  *Compare* Ex. D at 1 (estimating that Spanish Broadcasting would have been required to pay $6,008,991.58 to terminate the Swap on October 3, 2008).

*Spanish Broadcasting's Response to Paragraph No. 43: Undisputed that if Lehman had funded the Draw, then Spanish Broadcasting would have terminated the Swap for a close-out amount of $6,008,991.58, based on the three-month LIBOR forward curve as of October 3, 2008.  See Garcia Declaration, ¶ 31; Kearns Report, at 12-13.*

**Reply:  For purposes of the Motion only, the Plan Administrator does not dispute the statements in Spanish Broadcasting's response, but reserves the right to dispute and challenge the statements in the event the Motion is denied in whole or in part.**

WEIL:\95425323\6\58399.0011

## RESPONSE TO SPANISH BROADCASTING'S
## COUNTERSTATEMENT OF ADDITIONAL MATERIAL
## FACTS AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED

The following sets forth the Plan Administrator's responses to Spanish

Broadcasting's Counterstatement of Additional Material Facts.

## GENERAL RESPONSE

As set forth below in each response to Spanish Broadcasting's individual

paragraphs, many of Spanish Broadcasting's supposed "facts" are not material to the Motion or

are not facts at all, but constitute legal conclusions.  The Plan Administrator nevertheless

provides substantive responses to many of the statements contained in each paragraph.  The

substantive responses are made without prejudice, and the Plan Administrator reserves all of its

rights, to: (a) contest the materiality of any facts contained in those paragraphs in connection

with the Motion; (b) contest the facts contained in those paragraphs in any further proceedings in

this or in any other litigation or matter; (c) cite, submit or rely upon such additional and further

facts, evidence, circumstances, documents, and testimony with respect to the subject matter of

that paragraph in any further proceedings in this or any other litigation or matter should it

become relevant; (d) challenge the admissibility or authenticity of any of the putative evidence

cited by Spanish Broadcasting; and/or (e) contest whether any of the statements contained in the

paragraphs are supported by the particular documents and testimony cited therein.

Where the Plan Administrator does not dispute statements contained in a

particular paragraph, it does so for purposes of the Motion only (subject to preserving its

objection to the relevance and materiality of any facts contained therein), and such response is

made without prejudice to, and reserving all of its rights and objections thereto, including

without limitation, its ability to: (a) contest the facts contained therein in any further proceedings

in this or any other litigation or matter, and/or (b) to challenge the admissibility of the putative

evidence cited at the time it is offered.

In accordance with, subject to, and as limited by, this General Response, the Plan

Administrator specifically responds to each of Spanish Broadcasting's paragraphs as follows:

## SPECIFIC RESPONSES

Spanish Broadcasting's Paragraph No. 1:  Dating back to Spanish Broadcasting's IPO in 1999,
Lehman had a longstanding business relationship with Spanish Broadcasting as Spanish
Broadcasting's trusted financial advisor and arranger of financings.  Garcia Declaration, ¶¶ 3-6.
Whenever Spanish Broadcasting needed to raise money, it turned to Lehman for help.  *Id.* at ¶ 3.

**Response to Spanish Broadcasting's Paragraph No. 1:**  The Plan Administrator does not

dispute that LBHI and its affiliates (collectively, "Lehman") had a longstanding business

relationship with Spanish Broadcasting.  The Plan Administrator disputes the remaining

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of those statements

constitute "material facts" for purposes of this Motion under Rule 7056 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") or Rule 7056-1 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy

Rules").

Spanish Broadcasting's Paragraph No. 2:  For a number of years, a senior managing director of
Lehman sat on Spanish Broadcasting's board of directors.  *Id.* at ¶ 4.  Not only did Spanish
Broadcasting view Lehman as part of its company, but Lehman itself likewise considered its
relationship with Spanish Broadcasting to be a "partnership."  *Id.*  Lehman described the
relationship as a "partnership" in the presentation it made to Spanish Broadcasting in order to
induce Spanish Broadcasting to enter the Credit Agreement.  See *id.* at ¶ 4, Ex.  A (Lehman
presentation materials dated April 7, 2005).

**Response to Spanish Broadcasting's Paragraph No. 2:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

WEIL:\95425323\6\58399.0011

paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 3</u>:  Lehman regularly made presentations to Spanish
Broadcasting, offering advice on the refinancing of Spanish Broadcasting's preferred stock,
advice on the Swap, dated as of June 28, 2005, between Spanish Broadcasting and Lehman
Brothers Special Financing, Inc., advice on the possibility of "going private," information and
advice about potential acquisitions and combinations, and information and advice on various
other general business matters.  See *id.*  At ¶ 5.  Spanish Broadcasting was guided by Lehman's
advice and counsel in a number of transactions and potential transactions, and relied on Lehman
as a trusted advisor.  *Id.*  Lehman collected fees from Spanish Broadcasting in excess of **$30
million**.  *Id.*

**<u>Response to Spanish Broadcasting's Paragraph No. 3</u>:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of the Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 4</u>:  Lehman was the lead underwriter on Spanish
Broadcasting's IPO in 1999.  *Id.* at ¶ 6.  Following the IPO, Lehman continued to serve as
Spanish Broadcasting's principal financial advisor through a number of financings and
refinancings as a participant, lender and administrative agent, among other roles, up until the
filing of the Lehman bankruptcy in 2008.  *Id.*

**<u>Response to Spanish Broadcasting's Paragraph No. 4</u>:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of the Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 5</u>:  As Spanish Broadcasting's trusted advisor, Lehman
was well aware of the financial needs of Spanish Broadcasting and structured the financial
arrangements under and in connection with the Credit Agreement accordingly.  *Id.* at ¶ 8.  To
that end, Lehman arranged for Spanish Broadcasting to enter into the Credit Agreement, which

WEIL:\95425323\6\58399.0011

included a first lien term loan facility of $325,000,000, required (at Lehman's insistence) that Spanish Broadcasting enter into the Swap with Lehman Brothers Special Financing, Inc., and also included, with Lehman's advice and counsel, the Revolving Credit Facility of $25 million. *Id.*  Lehman's counsel drafted the Credit Agreement.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 5:**  The Plan Administrator does not dispute that Spanish Broadcasting and LCPI entered into the Credit Agreement, dated as of June 10, 2005, that included a first lien term loan facility of $325,000,000 and a revolving credit facility of $25 million (the "Revolving Credit Facility").  The Plan Administrator also does not dispute that Spanish Broadcasting entered into the Swap with Lehman Brothers Special Financing, Inc.  pursuant to a 1992 form ISDA Master Agreement, dated as of June 28, 2005.  The Plan Administrator disputes the remaining statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  The remaining statements do not constitute "material facts" for purposes of the Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 6: Lehman worked with Spanish Broadcasting to put the Revolving Credit Facility in place.  *Id.* at ¶ 9.  Lehman plainly understood and, indeed, advised Spanish Broadcasting that it should have the Revolving Credit Facility to support the ongoing working capital needs of Spanish Broadcasting.  *Id.*  Indeed, Section 4.16(b) of the Credit Agreement provided that the proceeds of the Revolving Credit Facility "**shall be used for working capital purposes, capital needs and general corporate purposes**" of Spanish Broadcasting.  See Garcia Declaration, ¶ 9, Ex.  B (Credit Agreement), § 4.16(b) (emphasis added).  Lehman took on the obligation to fund 40 percent (*i.e.*, $10 million) of the $25 million Revolving Credit Facility.  Garcia Declaration, ¶ 9.  At the time the parties entered into the Credit Agreement and thereafter, Lehman plainly understood that if it failed to fund the revolver, Spanish Broadcasting would be left without the funds it needed for "working capital purposes, capital needs and general corporate purposes," and Spanish Broadcasting would suffer damages as a result.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 6:**  The Plan Administrator does not dispute that section 4.16(b) of the Credit Agreement contains the words stated in section 4.16(b).  The Plan Administrator does not dispute that LCPI agreed to fund $10 million of the $25 million

Revolving Credit Facility, which constitutes 40% of the Revolving Credit Facility.  The Plan

Administrator disputes the remaining statements in this paragraph because they are irrelevant to,

and have no bearing on, the Motion and should not be considered by the Court in connection

therewith.  The remaining statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 7:  As of October 2008, Spanish Broadcasting's capital
structure also included $18.5 million in indebtedness under a secured promissory note (the
"Mega TV Note"), dated March 1, 2006, among, *inter alia*, Spanish Broadcasting, as maker, and
BC Media Funding Company II, LLC, as holder and assignee.  Garcia Declaration, ¶ 10, Ex.  C
(Mega TV Note); Ex.  D (Security Agreement).  The Mega TV Note had an impending maturity
date of January 2, 2009.  Garcia Declaration, ¶ 10.  The lender under the Mega TV Note was
unwilling to extend the maturity date.  *Id.*  As a business matter, Spanish Broadcasting could not
risk a default on the Mega TV Note because such a default would have triggered a cross-default
under the Credit Agreement.  *Id.*; Garcia Declaration, Ex.  B (Credit Agreement), §§ 1.1
(definition of "Event of Default"), 8(e).  It was essential that Spanish Broadcasting not take any
action that would cause a default under the Credit Agreement because, among other things, the
Credit Agreement had a below- market interest rate.  Garcia Declaration, ¶ 10.

**Response to Spanish Broadcasting's Paragraph No. 7:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 8: In addition, Spanish Broadcasting was a guarantor
under a note (the "MBC Note"), dated January 4, 2007, between SBS Miami Broadcast Center,
Inc. and Wachovia Bank, National Association.  *Id.* at ¶ 11, Ex.  E (MBC Note), Ex.  F
(Unconditional Guaranty (the "MBC Guaranty")).  The MBC Guaranty required Spanish
Broadcasting to hold cash equal to at least 1.2 times the outstanding principal balance under the
MBC Note.  See *id.*, Ex.  F (MBC Guaranty), at 6.  As of September 30, 2008, $7.1 million
remained outstanding under the MBC Note; therefore, Spanish Broadcasting was required to
hold $8.5 million in cash.  *Id.* at ¶ 11.

**Response to Spanish Broadcasting's Paragraph No. 8:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 9:  Spanish Broadcasting also issued certain preferred stock (the "Preferred Stock") pursuant to a Certificate of Designations, dated October 29, 2003 (the "Certificate of Designations").  *Id.* at ¶ 12, Ex.  G (Certificate of Designations).  The Certificate of Designations provided for the payment of quarterly cash dividends in the amount of $2.5 million, commencing on January 15, 2009.  *Id.* at ¶ 12.  Pursuant to the Certificate of Designations, Spanish Broadcasting could not incur additional indebtedness in October 2008 because its Debt to Cash Flow Ratio (as defined in the Certificate of Designations) was greater than 7 to 1.  See *id.* at ¶ 12, Ex.  G, § 11(b).

**Response to Spanish Broadcasting's Paragraph No. 9:**  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of the Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.  The Plan Administrator

further disputes the last sentence because it is a legal conclusion, not a "material fact[]" as

required by Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 10: Spanish Broadcasting held approximately $34 million in cash as of September 30, 2008.  *Id.* at ¶ 13.  Of that amount, Spanish Broadcasting was required to hold $8.5 million in cash pursuant to the MBC Guaranty, as set forth above, which left $25.5 million of available cash.  *Id.*  In view of the impending maturity of the $18.5 million Mega TV Note on January 2, 2009, Spanish Broadcasting would have remaining cash of only $7 million -- without even taking into account the $5 million December interest payment under the Credit Agreement and presuming that Spanish Broadcasting made the $2.5 million dividend payment on the Preferred Stock in kind rather than in cash (such in kind payment was made on October 15, 2008).  *Id.*  Accordingly, Spanish Broadcasting determined that it needed to draw the full $25 million available under the revolver for working capital.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 10:**  The Plan Administrator does not

dispute the first sentence in this paragraph.  The Plan Administrator disputes the remaining

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

WEIL:\95425323\6\58399.0011

and should not be considered by the Court in connection therewith.  None of those statements

constitute "material facts" for purposes of this Motion under Rule 7056 of the Bankruptcy Rules

or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 11</u>: On October 3, 2008, Spanish Broadcasting submitted
the Draw in accordance with the terms of the Credit Agreement for the entire $25 million of
availability under the revolver.  *Id.* at ¶ 14.  Spanish Broadcasting intended to use the $25 million
Draw plus a portion of cash on hand in order to (a) pay off the $18.5 million Mega TV Note,
which had a maturity date of January 2, 2009; (b) terminate the Swap with Lehman and close out
approximately $6 million of obligations thereunder; (c) fund $4 million of Spanish
Broadcasting's operational expenses, specifically advertising, promotional and other marketing
expenses (collectively, "<u>Marketing Expenses</u>"); and (d) pay the $5 million December interest
payment under the Credit Agreement.  *Id.*  After Lehman failed to fund the Draw, the lenders
who did fund $15 million of the $25 million Draw chose not to fund the $10 million portion that
Lehman failed to fund, despite the fact that Spanish Broadcasting explicitly asked the lenders to
do so.  *Id.* at ¶ 15.

**<u>Response to Spanish Broadcasting's Paragraph No. 11</u>:**  The Plan Administrator does not

dispute that on October 3, 2008, Spanish Broadcasting submitted a draw request for the entire

$25 million available under the Revolving Credit Facility.  The Plan Administrator disputes the

remaining statement in the first sentence because it is a legal conclusion, not a "material fact[]"

as required by Rule 7056-1 of the Local Bankruptcy Rules.  The Plan Administrator also disputes

the remaining statements in this paragraph because they are irrelevant to, and have no bearing

on, the Motion and should not be considered by the Court in connection therewith.  None of

them constitute "material facts" for purposes of this Motion under Rule 7056 of the Bankruptcy

Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 12</u>:  Because Lehman did not fund its $10 million portion
of the Draw, Spanish Broadcasting was compelled to use the entire $15 million it did receive
from the Draw, plus $3.5 million of its already low cash reserves, to make the $18.5 million
payment on the maturing Mega TV Note.  *Id.* at ¶ 16.  Spanish Broadcasting was left with
dangerously low cash reserves as a result of Lehman's failure to fund and, as a result, Spanish
Broadcasting did not have the approximately $6 million it needed to terminate the Swap and the
$4 million it needed for Marketing Expenses.  *Id.*

WEIL:\95425323\6\58399.0011

**Response to Spanish Broadcasting's Paragraph No. 12:** The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 13: Lehman's breach of its obligation to fund the Draw
left Spanish Broadcasting undercapitalized.  *Id.* at ¶¶ 17-18.  S&P and Moody's each
downgraded Spanish Broadcasting expressly as a result of Lehman's failure to fund the Draw.
See *id.* at ¶ 17, Ex.  H (S&P report), Ex.  I (Moody's report).

**Response to Spanish Broadcasting's Paragraph No. 13:** The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 14:  Following Lehman's failure to fund the Draw in
October 2008, Spanish Broadcasting was unable to obtain alternate financing of the $10 million
for several reasons, including but not limited to the following: (1) the incurrence of any
additional indebtedness was barred under the terms of the Certificate of Designations for the
Preferred Stock; (2) no lender would have agreed to provide fresh capital on a basis that was *pari
passu* with the Credit Agreement because Spanish Broadcasting's existing indebtedness under
the Credit Agreement was trading in the marketplace at or below 58 cents on the dollar in the
fourth quarter of 2008; (3) a refinancing of the entire Credit Agreement was not at all feasible,
because Spanish Broadcasting already had below-market financing in place and no company
raised capital in the fourth quarter of 2008 at rates of return even close to those required by third-
party investors in Spanish Broadcasting's senior credit facilities; (4) the incurrence of
indebtedness on a priming basis to the lenders under the Credit Agreement would have required
unanimous consent of the Credit Agreement lenders, which would not have been forthcoming;
and (5) Lehman itself, in its capacity as Administrative Agent and a Lender under the Credit
Agreement, had imposed such arduous conditions on obtaining a third party loan that those
conditions made it impracticable (if not impossible) for Spanish Broadcasting to find an alternate
lender.  *See id.* at ¶¶ 19-26.

WEIL:\95425323\6\58399.0011

**Response to Spanish Broadcasting's Paragraph No. 14:**  The Plan Administrator disputes the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  None of the facts in this paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 15:  Spanish Broadcasting was in regular communications with Lehman personnel in the days leading up to and following Spanish Broadcasting's issuance of the Draw and Lehman's failure to fund its share.  See Garcia Declaration, ¶ 27.  Lehman was well aware of Spanish Broadcasting's need for Lehman's $10 million and well aware that Spanish Broadcasting could not obtain funds elsewhere.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 15:**  The Plan Administrator disputes the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  The remaining statements do not constitute "material facts" for purposes of the Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 16:  The failure of Lehman to fund the Draw caused Spanish Broadcasting to suffer damages in the aggregate amount of $41.9 million, which is comprised of (a) damages in an amount of $24,500,000 (the "Impacted EBITDA Damages") resulting from Spanish Broadcasting's lack of $4 million in funds needed for Marketing Expenses; (b) damages in an amount of $17,054,558 (the "Swap Damages") resulting from Spanish Broadcasting's lack of capital to terminate and close out the Swap in October 2008; and (c) damages in an amount of $343,333 (the "Fee Damages") on account of fees that Spanish Broadcasting paid to Lehman for the $10 million revolver commitment that Lehman failed to fund.  See *id.* at ¶¶ 27-35; Trautman Report (*passim*); Kearns Report (*passim*).

**Response to Spanish Broadcasting's Paragraph No. 16:**  For purposes of the Motion only, the Plan Administrator does not dispute the statements in subsections (a) and (b) of this paragraph, but reserves the right to dispute and challenge all of the statements in the event the Motion is denied in whole or in part.  The Plan Administrator disputes the statement in subsection (c) of this paragraph because it is irrelevant to, and has no bearing on, the Motion and should not be

WEIL:\95425323\6\58399.0011

considered by the Court in connection therewith.  Thus, subsection (c) does not constitute a

"material fact[]" for purposes of the Motion under Rule 7056 of the Bankruptcy Rules or Rule

7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 17</u>:  The damages that Spanish Broadcasting suffered
were the natural and probable consequence of Lehman's failure to fund the Draw.  See Trautman
Report, ¶¶ 4-9; Kearns Report, at 3, 15.  More particularly, the Impacted EBITDA Damages, the
Swap Damages and the Fee Damages flowed directly from Lehman's failure to fund the
Revolving Credit Facility and are indicative of a measure of what it would take to put Spanish
Broadcasting in the same position it would have been in if Lehman had funded the Revolving
Credit Facility.  See Trautman Report, ¶¶ 4-9, 19; Kearns Report, at 15.

**<u>Response to Spanish Broadcasting's Paragraph No. 17</u>:**  The Plan Administrator disputes the

statements in this paragraph because they are legal conclusions, not "material facts" as required

by Rule 7056-1 of the Local Bankruptcy Rules

<u>Spanish Broadcasting's Paragraph No. 18</u>:  In addition, the Impacted EBITDA Damages, the
Swap Damages and the Fee Damages relate to the injuries that Spanish Broadcasting suffered
directly in connection with the Credit Agreement, and not with "collateral business
arrangements," as Lehman alleges in its Motion.  See Garcia Declaration, ¶ 36.

**<u>Response to Spanish Broadcasting's Paragraph No. 18</u>:**  The Plan Administrator disputes the

statements in this paragraph because they are legal conclusions, not "material facts" as required

by Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 19</u>:  The Payoff Letter as well as the Credit Agreement,
which were both drafted by Lehman's counsel, were explicit as to which provisions of the Credit
Agreement survived termination.  See Gittlitz Declaration, ¶ 6.  More particularly, when Lehman
wanted to provide that a provision of the Credit Agreement would remain effective following the
termination of the Credit Agreement, it did so with specificity in the Payoff Letter and/or the
Credit Agreement. See <i>id.</i> at ¶ 6, Ex.  A (Payoff Letter), ¶ 1(a) (providing for survival of
contingent obligations pursuant to Section 10.5 of the Credit Agreement), ¶ 4 (providing for
survival of Spanish Broadcasting's Proof of Claim); Garcia Declaration, Ex.  B, Credit
Agreement § 2.19(c) (survival of provision regarding certificate of additional amounts payable),
§ 2.20(e) (survival of provision regarding taxes), § 2.21 (survival of indemnity provision), § 9.7
(survival of indemnification provision), § 10.5 (survival of provision regarding payment of
expenses).  Through their respective attorneys at Kaye Scholer LLP ("<u>Kaye Scholer</u>") and Weil,
Gotshal & Manges LLP ("<u>Weil</u>"), Spanish Broadcasting and Lehman carefully and extensively

WEIL:\95425323\6\58399.0011

negotiated those provisions of the Credit Agreement that would remain effective following the parties' entry into the Payoff Letter, which terminated the Credit Agreement.  See Gittlitz Declaration, ¶ 6.

**Response to Spanish Broadcasting's Paragraph No. 19**:  The Plan Administrator does not

dispute that LCPI's counsel, Weil, Gotshal & Manges ("<u>Weil</u>") prepared the initial draft of the

Payoff Letter, and that Spanish Broadcasting's counsel, Kaye Scholer LLP (<u>Kaye Scholer</u>")

actively participated in the negotiations.  The Plan Administrator disputes the second sentence in

this paragraph because it is a legal conclusion, not a "material fact[]" as required by Rule 7056-1

of the Local Bankruptcy Rules.  The Plan Administrator also disputes the second sentence and

the remaining statements in this paragraph because they are irrelevant to, and have no bearing

on, the Motion and should not be considered by the Court in connection therewith.  Thus, they do

not constitute "material facts" for purposes of the Motion under Rule 7056 of the Bankruptcy

Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 20</u>:  Neither the Credit Agreement nor the Payoff Letter provides for the survival of the Alleged Waiver contained in Section 10.12(e) of the Credit Agreement.  See Gittlitz Declaration, ¶ 7; Garcia Declaration, Ex.  B, Credit Agreement, § 10.12(e).

**Response to Spanish Broadcasting's Paragraph No. 20**:  The Plan Administrator disputes the

statements in this paragraph because they are legal conclusions, not "material facts" as required

by Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 21</u>:  Sheryl Gittlitz of Kaye Scholer represented Spanish Broadcasting in its extensive negotiations with Lehman between January 30, 2012 and February 7, 2012 concerning the terms of the Payoff Letter.  See Gittlitz Declaration, ¶ 8.  During that time, the parties, through their respective attorneys, carefully negotiated the two survival provisions contained in the Payoff Letter, *i.e.*, Sections 1(a) and 4 thereof.  *Id.*  The evolution of the parties' agreement over those precise terms of the Payoff Letter that would remain effective following the termination of the Credit Agreement is summarized below.  *Id.*

WEIL:\95425323\6\58399.0011

**Response to Spanish Broadcasting's Paragraph No. 21**: The Plan Administrator does not

dispute that Sheryl Gittlitz of Kaye Scholer represented Spanish Broadcasting in the negotiations

of the Payoff Letter. The Plan Administrator disputes the last sentence because it is a legal

conclusion, not a "material fact[]" as required by Rule 7056-1 of the Local Bankruptcy Rules.

The Plan Administrator also disputes the remaining statements in this paragraph.

Spanish Broadcasting's Paragraph No. 22: On January 30, 2012, Kaye Scholer, as counsel for
Spanish Broadcasting, emailed Weil, as counsel for Lehman, to inquire as to when Weil would
circulate a draft of the Payoff Letter. See *id.* at ¶ 9, Ex. B (email dated January 30, 2012).

**Response to Spanish Broadcasting's Paragraph No. 22**: The Plan Administrator does not

dispute that Exhibit B to the Gittlitz Declaration contains the words stated in Exhibit B. The

Plan Administrator, however, does dispute the statement in this paragraph because it is irrelevant

to, and has no bearing on, the Motion and should not be considered by the Court in connection

therewith. Thus, the statement does not constitute a "material fact[]" for purposes of the Motion

under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 23: On January 31, 2012, Weil sent Kaye Scholer an
email attaching a draft of the Payoff Letter (the "January 31 Lehman Draft"). See *id.* at ¶ 10.
Section 1(a) of the January 31 Lehman Draft provided that as of the effective date of the Payoff
Letter,
> all outstanding Loans and all other amounts owing by the Borrower [*i.e.*, Spanish
> Broadcasting] under the Credit Agreement . . . shall be paid in full and the Credit
> Agreement and all obligations of the Borrower and the other Loan Parties
> thereunder and under the other Loan Documents shall be terminated (other than
> contingent obligations which survive by the terms of the Credit Agreement or
> such other Loan Documents, including without limitation, Section 10.5 of the
> Credit Agreement).

See *id.* at ¶ 10, Ex. C (email from Weil dated January 31, 2012), Ex. D (January 31 Lehman
Draft), ¶ 1(a) (emphasis added). This language provides that all of Spanish Broadcasting's
"obligations" under the Credit Agreement would not survive the termination of the Credit
Agreement, except where the Credit Agreement provides for survival. See *id.* at ¶ 10.
Significantly, Section 1(a) of the January 31 Lehman Draft did not use the capitalized term
"Obligation," which was a defined term under Section 1.1 of the Credit Agreement. *Id.* Instead,
Section 1(a) of the January 31 Lehman Draft used the lower-case term "obligation" in its

ordinary meaning, *i.e.* "the action of obligating oneself to a course of action (as by a promise or vow)." *Id.* (quoting Merriam-Webster's Collegiate Dictionary (11th ed. 2004)). The Alleged Waiver was clearly an "obligation" of Spanish Broadcasting, since it required Spanish Broadcasting to waive its right to claim or recover consequential damages. *Id.* Therefore, Lehman, who drafted the Payoff Letter, provided from the outset that the Alleged Waiver would <u>not</u> survive the termination of the Credit Agreement. *Id.*

**Response to Spanish Broadcasting's Paragraph No. 23**: The Plan Administrator does not

dispute that Exhibits C and D to the Gittlitz Declaration contain the words stated in the exhibits.

The Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

connection therewith. The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

The Plan Administrator further disputes the statements in this paragraph because they are legal

conclusions, not "material facts" as required by Rule 7056-1 of the Local Bankruptcy Rules.


Spanish Broadcasting's Paragraph No. 24: In addition, Section 4 of the January 31 Lehman Draft provided that Spanish Broadcasting would release "all claims" that it had against Lehman arising out of or in connection with the Credit Agreement. See *id.* at ¶ 11, Ex. D (January 31 Lehman Draft), ¶ 4. Section 4 of the January 31 Lehman Draft did not carve out Spanish Broadcasting's Proof of Claim from the release. *Id.* at ¶ 11. Thus, the January 31 Lehman Draft provided that Spanish Broadcasting would release its claims against Lehman contained in the Proof of Claim filed on November 3, 2011. *Id.*

**Response to Spanish Broadcasting's Paragraph No. 24**: The Plan Administrator does not

dispute that Exhibit D to the Gittlitz Declaration contains the words stated in the exhibit. The

Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

connection therewith. The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

The Plan Administrator further disputes the last sentence in this paragraph because it is a legal

conclusion, not a "material fact[]" as required by Rule 7056-1 of the Local Bankruptcy Rules.

WEIL:\95425323\6\58399.0011

<u>Spanish Broadcasting's Paragraph No. 25</u>:  The January 31 Lehman Draft was not acceptable to Spanish Broadcasting because (a) the language in Section 1(a) was not sufficiently explicit as to which provisions of the Credit Agreement would survive termination; and (b) Spanish Broadcasting was not willing to release its claims against Lehman that were the subject of its Proof of Claim.  *Id.* at ¶ 12.

**<u>Response to Spanish Broadcasting's Paragraph No. 25</u>**:  The Plan Administrator disputes the statement contained in this paragraph because it has no firsthand knowledge of Spanish Broadcasting's unexpressed thoughts and intentions.  The Plan Administrator further disputes the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  Thus, nothing in this paragraph constitutes a "material fact[]" for purposes of the Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

<u>Spanish Broadcasting's Paragraph No. 26</u>: Accordingly, on January 31, 2012, Kaye Scholer sent Weil an email, attaching Spanish Broadcasting's comments (the "<u>January 31 SB Comments</u>") to the January 31 Lehman Draft that Weil had circulated earlier that day.  *Id.* at ¶ 13.  With respect to Section 1(a), Spanish Broadcasting changed the phrase "other than contingent obligations which survive by the terms of the Credit Agreement" to "other than contingent obligations which <u>expressly</u> survive by the terms of the Credit Agreement."  See *id.* at ¶ 13, Ex.  E (email from Kaye Scholer to Weil dated January 31, 2012), Ex.  F (January 31 SB Comments), ¶ 1(a) (emphasis added).  The intent of this comment was to make clear that all of the obligations under the Credit Agreement (including Spanish Broadcasting's obligation to waive its right to claim or recover consequential damages under Section 10.12(e) of the Credit Agreement) would terminate, except where the Credit Agreement expressly provided for survival.  *Id.* at ¶ 13.  Since the Credit Agreement did not expressly provide for the survival of the Alleged Waiver, Spanish Broadcasting intended this comment to make clear that the Alleged Waiver would <u>not</u> be effective or enforceable following the termination of the Credit Agreement.  *Id.*  With respect to the release contained in Section 4 of the January 31 Lehman Draft, Spanish Broadcasting deleted the release in its entirety.  See *id.* at ¶ 13, Ex F (January 31 SB Comments), ¶ 4.

**<u>Response to Spanish Broadcasting's Paragraph No. 26</u>**:  The Plan Administrator does not dispute that Exhibits E and F to the Gittlitz Declaration contain the words stated in the exhibits.

The Plan Administrator, however, disputes all of the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court

in connection therewith.  These statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 27: On February 2, 2012, Weil sent Kaye Scholer an
email, attaching a revised draft of the Payoff Letter (the "February 2 Lehman Draft").  *Id.* at ¶ 14.
This time, Lehman incorporated Spanish Broadcasting's language in Section 1(a), as set forth in
the January 31 SB Comments.  *Id.*  Thus, the agreed upon language in Section 1(a) provided that
Spanish Broadcasting's obligations under the Credit Agreement shall be terminated, "other than
contingent obligations which expressly survive by the terms of the Credit Agreement."  See *id.* at
¶ 14, Ex.  G (February 2, 2012 email from Weil); Ex.  H (February 2 Lehman Draft), ¶ 1(a)
(emphasis added).  With respect to Section 4, Lehman restored the release of claims that Spanish
Broadcasting had deleted in its January 31 SB Comments.  See *id.* at ¶ 14, Ex.  H (February 2
Lehman Draft), ¶ 4.

**Response to Spanish Broadcasting's Paragraph No. 27:**  The Plan Administrator does not

dispute that Exhibits G and H to the Gittlitz Declaration contain the words stated in the exhibits.

The Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

connection therewith.  The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 28: On February 3, 2012, Weil sent Kaye Scholer an
email, attaching a further revised draft of the Payoff Letter (the "February 3 Lehman Draft").  *Id.*
at ¶ 15.  The release in Section 4 of the February 3 Lehman Draft included a carve-out for the
Proof of Claim.  *Id.*  More particularly, the final sentence of Section 4 of the February 3 Lehman
Draft provided that: "The foregoing release shall not apply to Proof of Claim (Claim Number
67707) filed against Lehman on September 18, 2009 (as such claim may be amended in
accordance with applicable law)."  See *id.* at ¶ 15, Ex.  I (February 3, 2012 email from Weil); Ex.
J (February 3 Lehman Draft), ¶ 4.

**Response to Spanish Broadcasting's Paragraph No. 28:**  The Plan Administrator does not

dispute that Exhibits I and J to the Gittlitz Declaration contain the words stated in the exhibits.

The Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

WEIL:\95425323\6\58399.0011

connection therewith.  The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 29: On February 3, 2012, Kaye Scholer sent Weil an email, stating that the language at the end of the release in Section 4 of the Payoff Letter should be revised to provide that:

> The foregoing release shall not apply to the Proof of Claim (Claim Number 67707) filed against Lehman on September 18, 2009, as amended on November 3, 2011 (as such claim may be further amended in accordance with applicable law or in accordance with the Attachment to Amended Proof of Claim of Spanish Broadcasting System, Inc., as filed with the United States Bankruptcy Court/Southern District of New York on November 3, 2011).

See *id.* at ¶ 16, Ex.  K (February 3, 2012 email from Kaye Scholer).

**Response to Spanish Broadcasting's Paragraph No. 29**:  The Plan Administrator does not

dispute that Exhibit K to the Gittlitz Declaration contains the words stated in the exhibit.  The

Plan Administrator, however, does dispute the statement in this paragraph because it is irrelevant

to, and has no bearing on, the Motion and should not be considered by the Court in connection

therewith.  The statement does not constitute a "material fact[]" for purposes of the Motion under

Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 30:  On February 3, 2012, Kaye Scholer sent Weil a further email, stating that the phrase "Except as set forth in the last sentence of this paragraph" should be added in two places in Section 4 of the Payoff Letter.  See *id.* at ¶ 17, Ex.  L (February 3, 2012 additional email from Kaye Scholer).

**Response to Spanish Broadcasting's Paragraph No. 30**:  The Plan Administrator does not

dispute that Exhibit L to the Gittlitz Declaration contains the words stated in the exhibit.  The

Plan Administrator, however, does dispute the statement in this paragraph because it is irrelevant

to, and has no bearing on, the Motion and should not be considered by the Court in connection

therewith.  The statement does not constitute a "material fact[]" for purposes of the Motion under

Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 31: On February 6, 2012, Weil sent Kaye Scholer an email, stating that the language that Kaye Scholer proposed adding to Section 4 "does not work for us."  See *id.* at ¶ 18, Ex.  M (February 6, 2012 email from Weil).  Weil invited Kaye Scholer to speak with Lehman's bankruptcy counsel "to discuss this further."  See *id.* at ¶ 18.

**Response to Spanish Broadcasting's Paragraph No. 31:**  The Plan Administrator does not

dispute that Exhibit M to the Gittlitz Declaration contains the words stated in the exhibit.  The

Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

connection therewith.  The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 32: On February 6, 2012, Kaye Scholer sent Weil an email, attaching revised comments to Section 4 of the Payoff Letter.  *Id.* at ¶ 19.  More specifically, Kaye Scholer removed a reference to Spanish Broadcasting's proof of claim filed on September 18, 2009, and replaced it with a reference to the Proof of Claim filed on November 3, 2011.  See *id.* at ¶ 19, Ex.  N (February 6, 2012 email from Kaye Scholer).

**Response to Spanish Broadcasting's Paragraph No. 32:**  The Plan Administrator does not

dispute that Exhibit N to the Gittlitz Declaration contains the words stated in the exhibit.  The

Plan Administrator, however, does dispute the statements in this paragraph because they are

irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in

connection therewith.  The statements do not constitute "material facts" for purposes of the

Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 33: On February 6, 2012, Weil sent Kaye Scholer an email, attaching a further revised draft of the Payoff Letter (the "February 6 Lehman Draft") that incorporated Spanish Broadcasting's comments to Section 4.  *Id.* at ¶ 20.  More particularly, Section 4 of the February 6 Lehman Draft provided that:

> **Except as set forth in the last sentence of this paragraph**, the Borrower, on behalf of itself and the other Loan Parties, hereby unconditionally and irrevocably waives all claims, suits, debts, liens, losses, causes of action, demands, rights, damages or costs, or expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, which any of them may have or claim to have

against Lehman (whether in its capacity as an agent, lender, hedging counterparty or otherwise) or its agents, employees, officers, affiliates, directors, representatives, attorneys, successors and assigns (collectively, the "Released Parties") to the extent arising out of or in connection with the Loan Documents including, without limitation, any failure by the Lehman or its affiliates to fund any Loan required to be funded by it under the Credit Agreement (collectively, the "Claims").  **Except as set forth in the last sentence of this paragraph**, each of the Borrower and the other Loan Parties further agree forever to refrain from commencing, instituting or prosecuting any lawsuit, action or other proceeding against any Released Parties with respect to any and all of the foregoing described waived, released, acquitted and discharged Claims and from exercising any right of recoupment or setoff that it may have under a master netting agreement or otherwise against any Released Party with respect to Obligations under the Loan Documents.  Each of the Released Parties shall be a third party beneficiary of this letter agreement.  **The foregoing release shall not apply to Proof of Claim (Claim Number 67707) filed against Lehman on November 3, 2011 (as such claim may be amended in accordance with applicable law).**

See *id.* at ¶ 20, Ex.  O (February 6 email from Weil); Ex.  P (February 6 Lehman Draft), ¶ 4 (emphasis added).  This agreed upon language was ultimately incorporated in the version of the Payoff Letter that the parties executed on February 7, 2012.  See *id.* at ¶ 20.  The foregoing examination of the negotiating history of the Payoff Letter demonstrates that the intent of the parties was that Spanish Broadcasting did not waive its claims against Lehman arising out of Lehman's failure to fund the Draw, which claims were the subject of the Proof of Claim.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 33**:  The Plan Administrator does not dispute that Exhibit O and P to the Gittlitz Declaration contain the words stated in the exhibits. The Plan Administrator does not dispute that the Payoff Letter contains the words reflected in this paragraph.  The Plan Administrator disputes the final sentence in this paragraph because it is a legal conclusion, not a "material fact[]" as required by Rule 7056-1 of the Local Bankruptcy Rules.  The Plan Administrator also disputes the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  The statements do not constitute "material facts" for purposes of the Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

WEIL:\95425323\6\58399.0011

Spanish Broadcasting's Paragraph No. 34: On February 7, 2012, Spanish Broadcasting and Lehman executed the Payoff Letter that contained the parties' agreed upon survival provisions in Sections 1(a) and 4.  See *id.* at ¶ 21, Ex.  Q (February 7, 2012 email from Kaye Scholer); Ex.  A (fully executed Payoff Letter).

**Response to Spanish Broadcasting's Paragraph No. 34**:  The Plan Administrator does not

dispute that the parties executed the Payoff Letter on or around February 7, 2012.  The Plan

Administrator disputes the Payoff Letter "contained the parties' agreed-upon survival

provisions" because the statement is a legal conclusion, not a "material fact[]" as required by

Rule 7056-1 of the Local Bankruptcy Rules.


Spanish Broadcasting's Paragraph No. 35:  The negotiations surrounding the Payoff Letter took place under highly unusual circumstances in which a borrower and a lender negotiated the termination of a credit agreement after the <u>lender</u> had defaulted and the borrower had asserted claims against the lender for failing to fund its obligations under the credit agreement.  See Gittlitz Declaration, ¶ 22.  In the context of these unusual circumstances, Lehman and Spanish Broadcasting carefully and extensively negotiated expressly which provisions of the Credit Agreement would survive termination thereof pursuant to the provisions of the Payoff Letter.  *Id.* At no point during Ms. Gittlitz's negotiations with Lehman's counsel did Lehman take the position that the Alleged Waiver would survive the termination of the Credit Agreement.  *Id.* Indeed, Section 1(a) of the January 31 Lehman Draft and all subsequent versions of the Payoff Letter (including the execution version) provided that all of the Spanish Broadcasting's "obligations" under the Credit Agreement (including the Alleged Waiver) would terminate, except where the Credit Agreement provided for survival.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 35**:  The Plan Administrator disputes the

statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion

and should not be considered by the Court in connection therewith.  None of the facts in this

paragraph constitute "material facts" for purposes of the Motion under Rule 7056 of the

Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.


Spanish Broadcasting's Paragraph No. 36: Nor did Lehman take the position during the negotiations that Spanish Broadcasting had waived its claims against Lehman that it asserted in the Proof of Claim.  *Id.* at ¶ 23.  On the contrary, Lehman agreed to carve out the Proof of Claim from the release set forth in Section 4 of the Payoff Letter.  *Id.*

WEIL:\95425323\6\58399.0011

**Response to Spanish Broadcasting's Paragraph No. 36**:  The Plan Administrator disputes the statements in this paragraph because they are irrelevant to, and have no bearing on, the Motion and should not be considered by the Court in connection therewith.  None of the statements in this paragraph constitute "material facts" for purposes of this Motion under Rule 7056 of the Bankruptcy Rules or Rule 7056-1 of the Local Bankruptcy Rules.

Spanish Broadcasting's Paragraph No. 37: In its Motion, Lehman takes the position that the Alleged Waiver remains effective and enforceable, despite the fact that neither the Credit Agreement nor the Payoff Letter provides for the survival of the Alleged Waiver.  *Id.* at 24. However, based on the extensive negotiations between Spanish Broadcasting 's counsel and Lehman 's counsel , the parties to the Payoff Letter did not intend for the Alleged Waiver to remain effective following the termination of the Credit Agreement.  *Id.*  On the contrary, if Lehman had intended for the Alleged Waiver to survive, it would have expressly provided for the survival of the Alleged Waiver in the Payoff Letter.  *Id.*  Lehman chose not to do so.  *Id.*

**Response to Spanish Broadcasting's Paragraph No. 37**:  The Plan Administrator does not dispute that it takes the position that the waiver of consequential damages remains effective and enforceable, but disputes the remaining statement in the first sentence of this paragraph because the statement is a legal conclusion, not a "material fact[]" as required by Rule 7056-1 of the Local Bankruptcy Rules.  The Plan Administrator disputes the remaining statements in this paragraph.

Dated: August 13, 2015
      New York, New York

*/s/  Ralph I. Miller*
WEIL, GOTSHAL & MANGES LLP
Ralph I. Miller
Jacqueline Marcus
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

WEIL:\95425323\6\58399.0011