Joshua Dorchak
**MORGAN, LEWIS & BOCKIUS**
101 Park Avenue
New York, New York 10178

Attorneys for Attestor Value Master Fund LP
and Deutsche Bank AG and Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                               :
In re                                          :    Chapter 11
                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,       :    Case No. 08-13555 (SCC)
                                               :
                            Debtors.           :    (Jointly Administered)
                                               :
------------------------------------------------------------x

**OBJECTION AND JOINDER IN OBJECTION**
**OF ATTESTOR VALUE MASTER FUND LP AND DEUTSCHE BANK AG**
**AND AFFILIATES TO MOTION OF PLAN ADMINISTRATOR**
**TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES**

Attestor Value Master Fund LP ("Attestor") and Deutsche Bank AG and its affiliates (collectively, "Deutsche Bank") (Attestor and Deutsche Bank together, the "Objectors"), by their attorneys, Morgan, Lewis & Bockius LLP, hereby object to the *Motion of the Plan Administrator Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors to Estimate Claims for Reserve and Distribution Purposes* [ECF #49954] (the "Motion"), for the reasons set forth below, in addition to the reasons set forth in the *Preliminary Objection of CarVal Investors UK Limited* to the Motion [ECF #50466] (the "CarVal Objection"), in which the Objectors hereby join.[1]

---
[1] The Plan Administrator agreed to extend the Objectors' deadline to respond to the Motion to August 14, 2015.

DB3/ 200392178.1

**PRELIMINARY STATEMENT**

1. In the Motion, the Plan Administrator seeks effectively to disallow, without objecting to them, 1,148 claims (the "Claims") filed by hundreds of creditors (the "Claimants") against Lehman Brothers Holdings Inc. ("LBHI") based on LBHI's guaranty of the primary obligations of its subsidiary Lehman Brothers International (Europe) ("LBIE"). This objection directly concerns 62 of the Claims: 12 of them held by Attestor (Motion, Ex. A, items 91-102)[2] and 50 of them held by Deutsche Bank (Motion, Ex. A, items 391-439, 441).[3] These Claims are prima facie valid, noncontingent, and in relevant part liquidated (collectively, the "Objectors' Claims"). *See* Motion, Ex. A (showing liquidated amount for each claim).[4] The Motion should be denied as to the Objectors' Claims because the Motion fails procedurally and substantively under the Bankruptcy Code, the case law, and the Plan.

2. The Plan provides, in relevant part: "The Plan Administrator may at any time request on behalf of any Debtor that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, **to the extent permitted by the Bankruptcy Code and Bankruptcy Rules** …." Plan § 9.3 (emphasis added). The Bankruptcy Code provides, in relevant part: "There shall be estimated for purpose of allowance under this section -- (1) **any contingent or unliquidated claim**, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case …." 11 U.S.C. § 502(c)(1) (emphasis added). Because the

---

[2] Attestor notes that, due to a clerical error, three of the Claims, owned by Attestor but not publicly registered in its name when the Motion was filed (Motion, Ex. A, items 129, 763, 976), were not initially identified to the Plan Administrator as being subject to potential objection, and as a result were inadvertently included in the exhibit to this Court's recent order granting the Motion in part (Order [ECF# 50298], Ex. A, items 113, 580, 752). While Attestor acknowledges the procedural issue created by this mistake (which Attestor is discussing with the Plan Administrator), this objection applies substantively to these Claims as well.

[3] Deutsche Bank does not object to the Motion with respect to item 440, which Deutsche Bank no longer owns.

[4] Many of the Objectors' Claims were originally filed to include then undetermined amounts, but these amounts should be irrelevant to the Motion, because the Plan Administrator keeps no reserves and takes no other action (and might never do so) on account of them, and so they cannot be causing any delay, undue or otherwise, in this case.

DB3/ 200392178.1

2

Objectors' Claims are neither contingent nor unliquidated, the Bankruptcy Code does not expressly permit -- and consistent with the case law of this Court and the Circuit Courts, should be read to prohibit -- the estimation of the Objectors' Claims. Because the Bankruptcy Code does not permit the estimation of the Objectors' Claims, the Plan does not permit the estimation of the Objectors' Claims. For this reason alone, the Motion should be denied.

3. Even if this Court should extrapolate from Section 502(c)(1) an authorization to estimate fixed and liquidated, prima facie valid claims that are allegedly unduly delaying the administration of the case for any reason whatsoever, the Motion still fails. The Plan Administrator cannot remotely meet its burden of showing that the Disputed status of the Objectors' Claims is "unduly delay[ing]" this case.

4. The essence of the Motion is an argument that the Claims should be deemed superfluous and thus meritless and, as such, should not force LBHI's creditors to suffer any longer the "unnecessary" suppression of $4.3 billion in distributions or force LBHI itself to suffer the "unfortunate" oppression of complying with claim resolution and debtor protection procedures set forth in the Plan. The Plan Administrator attempts to enhance this argument with purported concerns that the Claimants have inflated their claims "by billions of dollars," are likely to dodge discovery and the Plan's disgorgement obligations from hiding places "spread around the globe," and have inexplicably refused to do the right thing and abandon the Claims "consensually." Every element of this presentation is exaggerated, incomplete, and unfair.

5. The Claims are not today, and very well may never be, meritless or superfluous. As is described in general terms below, there are several possible outcomes in the "Waterfall Applications" litigation ongoing in the LBIE case (which, between "Waterfall I" and "Waterfall II," involves over 40 complex questions and sub-questions) that could result in LBHI being

required to pay distributions on the Claims pursuant to the Plan. In fact, several such possible outcomes are being actively supported by the Plan Administrator (either directly or through entities in which LBHI has a substantial economic interest) in the Waterfall Applications: for example, LBIE's Administration being converted to a Liquidation, and creditors like the Claimants thereby losing their entitlement to be paid statutory interest from LBIE's "surplus" for the entire period of the Administration. On this theory and others, the Plan Administrator is seeking to deprive the Claimants of the surplus in the LBIE case -- and simultaneously in this case is seeking to deprive the Claimants of the Claims because of their supposedly inevitable receipt of that same surplus.

6.   The Plan Administrator's maintaining even a full reserve for the Objectors' Claims pursuant to Section 8.4 of the Plan cannot reasonably be considered "unduly" prejudicial to LBHI's creditors at this point in this case. LBHI's creditors have already received tens of billions of dollars in distributions, already reaching in many LBHI Classes over 150% of the estimated recovery rates in the Disclosure Statement for the Plan. ECF #49001 (Seventh Distribution Notice, at 4); *cf.* ECF #19629 (Disclosure Statement, at 6). There is no exigency here at all, much less one that need or should be addressed by depriving Objectors of their day in court on the merits of the Objectors' Claims. This is all the more true now that this Court has granted the Motion and freed up the reserves with respect to over 900 of the 1,148 Claims. *See* Order (granting the Motion in part) (ECF #50298).

7.   The Objectors' Claims do not require the allegedly elaborate and expensive burdens of discovery and distribution policing that the Plan Administrator describes at length in the Motion. In the nearly two years before the current claim objection deadline arrives, there will likely be substantially greater clarity on the treatment of the surplus in the LBIE

Proceedings, which will enhance the likelihood of efficient claim resolution discussions between the Plan Administrator and the Objectors (which have settled numerous disputes with the Debtors and the Plan Administrator in the past). And of course, if the Plan Administrator eventually succeeds in disallowing the Objectors' Claims on the merits, it will never need to monitor distributions on their account.

8. The Plan Administrator's vaguer allegations -- that the Claimants have overstated their claims, will fail to comply with discovery demands or Plan provisions, and should have withdrawn their claims a long time ago -- are just attempts to bias this Court against the Claimants.

9. Finally, the Plan Administrator cites no precedent that actually supports the relief sought in the Motion. *See* Motion ¶ 22. The three estimation orders entered by Judge Peck in this case were solely for purposes of establishing reserves, and expressly not for purposes of allowance or distribution, and did not estimate any nonduplicative or noncontingent claim at zero. Judge Gonzalez in *Enron* and the Delaware District Court estimated at zero claims already disallowed on the merits. The Eastern District of Kentucky Bankruptcy Court estimated a claim where the plan's estimation provision "expand[ed] considerably on § 502(c)" and did not even require a showing of undue delay. And finally, Judge Gerber in *Adelphia* estimated a claim to determine plan feasibility, but for purposes of allowance he expressly held that "section 502(c)(1), by its terms … does not authorize estimation of a liquidated claim."

10. In sum, the relief sought in the Motion is not "permitted by the Bankruptcy Code" or the Plan; is contrary to the Plan Administrator's precedent; and, in any event, is based on an "expect[ation]" that may turn out to be false, exaggerated assertions of burden and delay, and speculative slurs against the Claimants.

11. For all of these reasons, the Objectors respectfully request that the Motion be denied with respect to the Objectors' Claims.

## BACKGROUND

12. The key issue underlying the Motion is the Claimants' potential aggregate recovery on the Claims, which are "Guarantee Claims," and on the corresponding "Primary Claims" against LBIE. The Motion implicates two provisions of the Plan: Section 8.13(a), which protects the LBHI estate from overpaying on claims by capping aggregate recoveries by holders of Guarantee Claims; and Section 8.13(d), which is intended to protect holders of Guarantee Claims, to some degree, against shortfalls in their aggregate recoveries by deeming distributions on Primary Claims in foreign currency to have been received in U.S. Dollars at the conversion rate in effect on the Plan Confirmation date.[5]

13. There is no question that if the Objectors' Claims were allowed today in filed amounts that reflected the allowed principal amounts of their Primary Claims, each Claim would be entitled to a distribution from LBHI. That is because each Primary Claim in a currency other than Pounds Sterling was converted to Pounds Sterling in LBIE's case at the conversion rate in effect on September 15, 2008, and the 100 pence in the pound that the Claimant has received from LBIE is converted into U.S. Dollars for the purpose of determining whether the Claim has been satisfied in full at the conversion rate in effect on December 6, 2011, when the Pound Sterling had weakened against the U.S. Dollar. *See* Plan § 8.13(d).

14. Potential future recoveries on the Primary Claims from LBIE depend on the ongoing "Waterfall Applications" (comprising the "Waterfall I Application" and the "Waterfall II Application"), a multifaceted litigation in which the English courts will resolve dozens of

---

[5] The Plan Administrator discusses Section 8.13(e) at length, which requires claimants to provide security or other assurances against being overcompensated and to disgorge any overcompensation; but this section is not relevant here, because there is no near-term prospect of the Claims receiving any distributions.

disputes about different stakeholders' respective entitlements to the surplus and their relative priorities in receiving payments out of the surplus. A summary of the Waterfall Applications, including LBHI's participation therein, is provided in the CarVal Objection (¶¶ 3-7, 17-26, 31-33, 38, 42). The Objectors here highlight just some of the highly complex, interconnected issues being considered in the English courts that are relevant to the Motion:

- if the LBIE Administration converts to a Liquidation, whether or not any statutory interest is payable for the entire period of the Administration;

- whether the rule in *Bower v. Marris* applies to distributions in a "solvent" administration (i.e., an administration where there is a surplus after paying 100% distributions on the Sterling value of admitted debts), such that distributions would be applied first to accrued but unpaid interest on those debts before applying any balance to reduce the principal amount due;

- whether the billions of dollars of subordinated debt owed by LBIE ranks prior to statutory interest on proved debts admitted by LBIE and whether interest on such debt (which could potentially be at a high rate) ranks equally with statutory interest on admitted debts;

- for what period statutory interest is payable on admitted claims that were contingent or future at the time of the Administration filing; and

- whether any entitlements to statutory interest, contractual interest or so called currency conversion losses have been waived by various agreements entered into between LBIE and creditors since the start of the Administration.

For these and numerous other reasons, what the Claimants actually will recover from LBIE and how those recoveries should be applied as a matter of English law remain decidedly uncertain.[6]

15.     There are actually two stages of variables that defeat the Plan Administrator's purported certainty that the Claims will be satisfied in full under the Plan. First, the English

---

[6] The Objectors note that shortly after the CarVal Objection was filed, the English High Court issued its first instance decision on the first two parts of the Waterfall II Application. LBIE's Administrators have provided copies and summaries of these decisions at: http://www.pwc.co.uk/business-recovery/administrations/lehman/index.jhtml.

Courts must resolve both Waterfall Applications with finality, determining the nature and amount of the Claimants' entitlements to recoveries in LBIE's case. Second, this Court must determine which components of LBIE's obligations to the Claimants are also LBHI's obligations as LBIE's guarantor, and also which components of the Claimants' recoveries from LBIE constitute "consideration provided on the corresponding Primary Claim[s]" for purposes of Section 8.13(a) of the Plan -- issues that this Court has not to date addressed. Only after all of these determinations are made will it be clear whether the Claims against LBHI are entitled to recovery under Article VIII of the Plan.

16. The Plan Administrator admits that "[a]s a result of the different conversion rates, it is possible that a Guarantee Claim may be entitled to additional consideration before it is deemed satisfied under the Plan, even though the related Primary Claim against LBIE has received 100% in distributions from LBIE." Motion ¶ 18. The Plan Administrator also admits that "[t]he exact timing and quantum of any further distributions from LBIE are unknown and dependent upon the outcome of pending litigation in the United Kingdom." *Id.* ¶ 15. But the Plan Administrator improperly sweeps aside all the complexities, in favor of the conclusion that "[b]ecause all Relevant Guarantee claims are expected to be satisfied in full from LBIE, they will not be entitled to a net recovery from LBHI." *Id.* ¶ 27. For the reasons given above, the Objectors do not share the Plan Administrator's simplistic assumption that all of the Claims will inevitably be satisfied in full by LBIE. Nor should this Court. The Motion should be denied with respect to the Objectors' Claims.

# ARGUMENT

17. The Motion should be denied with respect to the Objectors' Claims because the Plan does not permit estimation of the Objectors' Claims and because, in any event, the Plan Administrator has not remotely met its burden of showing that the merely disputed status of the Objectors' Claims is so unduly delaying the administration of this case as to justify their effective disallowance.

### A.     The Plan Does Not Permit the Objectors' Claims to be Estimated.

18. The Plan permits claim estimation only "to the extent permitted by the Bankruptcy Code." Plan § 9.3. This Court recently summarized the "gating requirements" for claim estimation under the Bankruptcy Code:

> In order to seek estimation, however, a party must demonstrate that the gating requirements for estimation are met -- namely, that the claim to be estimated is contingent or unliquidated and that the delay associated with the fixing or liquidation of such claim would be "undue."

*In re Lightsquared, Inc.,* No. 12-12080, 2014 WL 5488413, at *3 (Bankr. S.D.N.Y. Oct. 30, 2014) (citing *In re Dow Corning Corp.,* 211 B.R. 545, 562-63 (Bankr. E.D. Mich. 1997)). In considering whether to estimate a claim, "it is within [the court's] sound discretion and not the obligation of [the court] to estimate a claim." *Id.* (brackets in original) (citing *In re Apex Oil Co.,* 107 B.R. 189, 193 (Bankr. E.D. Mo. 1989)). Because the Objectors' Claims are neither contingent nor unliquidated, they cannot be estimated under the Plan. *See id.*

### 1.     The Objectors' Claims Are Neither Contingent Nor Unliquidated.

19. As this Court has noted, it is well settled that: "Upon default of the principal on the underlying debt, liability on a guaranty becomes fixed and is no longer contingent because all predicates to enforcement have occurred." *Lightsquared,* 2014 WL 5488413, at *3 (citing cases). "Nor does the fact that the [direct obligor] may be able to satisfy the claim render a

guaranty claim contingent." *Id.*, 2014 WL 5488413, at *4 (citing cases). Likewise, a guaranty claim is not unliquidated simply because the value of any consideration paid by the primary obligor will be credited against the recovery on the guaranty claim -- even if there is a "likelihood that the [claimant] will be repaid in full" through sources other than the guaranty claim. *Id.,* 2014 WL 5488413, at *5.

20. Finally, it is well settled that "the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated." *In re Mazzeo*, 131 F.3d 295, 304-05 (2d Cir. 1997) (noting the "overwhelming body of precedent" as so holding).

21. The liquidated amounts of the Objectors' Claims are set forth in the Exhibit to the Motion. Although many of the Objectors' Claims were originally filed to include as yet undetermined amounts, even if those amounts were potentially subject to estimation, they necessarily fail the "undue delay" requirement: the Plan Administrator is not reserving any funds or taking any other action on account of unliquidated portions of claims, and so they cannot be causing any delay, undue or otherwise, in distributions to LBHI's creditors.[7]

22. Thus, as a matter of fact and law, the Objectors' Claims are neither contingent nor unliquidated.

### 2. The Bankruptcy Code Does Not Implicitly Permit Estimation of Fixed and Liquidated Claims for Allowance Purposes.

23. The principle that, as Judge Gerber held in *Adelphia*, "section 502(c)(1), by its terms … does not authorize estimation of a liquidated claim" is consistent with the vast majority of the case law. *Adelphia*, 341 B.R. at 424; *see, e.g., In re Audre, Inc.*, 216 B.R. 19, 30 (9th Cir.

---

[7] For the avoidance of doubt, the Objectors reserve their rights to amend or modify the liquidated portions of the Objectors' Claims to the extent permitted by the Bankruptcy Code and the Plan Confirmation Order.

BAP 1997) ("Resorting to § 502(c) is only appropriate when the claim is either contingent or unliquidated. If the debt does not fit this definition, estimation is inappropriate.") (reversing bankruptcy court); *In re Continental Airlines,* 981 F.2d 1450, 1461 (5th Cir. 1993) ("[I]n cases where a claim is neither contingent nor unliquidated, estimation is simply inappropriate.") (internal quotation marks omitted); *In re Comdisco, Inc.,* 271 B.R. 273, 281 (Bankr. N.D. Ill. 2002) ("Section 502(c) allows [a] Court to estimate only contingent and unliquidated claims, but not claims that are merely disputed."); *In re S. Cinemas, Inc.,* 256 B.R. 520, 553 (Bankr. M.D. Fla. 2000) (under Section 502(c), "where a claim is neither contingent nor unliquidated, estimation is simply inappropriate."); *In re Nugent,* 254 B.R. 14, 38 (Bankr. D.N.J 1998) ("a court may only estimate contingent or unliquidated claims" under Section 502(c)).

24. The Plan Administrator's precedent in support of the Motion only shows how extraordinary and improper the relief sought in the Motion actually is:

- The three estimation orders entered by Judge Peck in this case (i) were solely for purposes of establishing reserves, and expressly not for purposes of allowance or distribution, and (ii) did not estimate any nonduplicative or noncontingent claim at zero. *See* Motion ¶ 22 n. 6.

- In *Enron*, Judge Gonzalez estimated a claim, where: (i) the Plan expressly provided for the estimation of any claim, without reference to the Bankruptcy Code; (ii) the Court had already disallowed and expunged the claim on the merits and because it was late filed; (iii) the Plan expressly provided that disallowed claims were entitled to no reserves; and (iv) the motion was heard only one year after the plan had gone effective and only two "very conservative" distributions had been made. *In re Enron Corp.,* No. 01-16043, 2006 WL 544463, at *2-3, 7 (Bankr. S.D.N.Y. Jan. 17, 2006).

- Likewise, in *Oakwood Homes*, the Delaware District Court held that a claim already disallowed on the merits could be estimated at zero for reserve purposes, where the Plan expressly provided for reserves at the claim amount determined by order of the Bankruptcy Court. *In re Oakwood Homes Corp.,* 329 B.R. 19, 22

(D. Del. 2005); *see In re Genesis Health Ventures, Inc.,* 272 B.R. 558 (Bankr. D. Del. 2002) (claim disallowed on the merits).

- In *Adelphia*, Judge Gerber held that estimation of a certain liquidated claim was permissible to determine plan feasibility, but expressly (i) rejected the assertion that a liquidated claim may be estimated as to "actual allowance … with such little due process," and (ii) agreed with the claimants that "section 502(c)(1), by its terms … does not authorize estimation of a liquidated claim." *In re Adelphia Bus. Solutions, Inc.,* 341 B.R. 415, 422, 424 (Bankr. S.D.N.Y. 2003); *cf. In re Teigen,* 228 B.R. 720, 723-24 (Bankr. D.S.D. 1998) (called "unpersuasive" in *Lightsquared, Inc.,* 2014 WL 5488413, at *5).

- In *Wallace's Bookstore*, the Eastern District of Kentucky Bankruptcy Court held that a liquidated claim could be estimated, but only because the scope of the Plan's estimation procedures "expand[ed] considerably on § 502(c)," by including any disputed claims, whether or not they were contingent or unliquidated, and even whether or not they would allegedly cause undue delay. *In re Wallace's Bookstores, Inc.,* 317 B.R. 720, 723-24 (Bankr. E.D. Ky. 2004).

Because the Plan in this case expressly limits estimation "to the extent permitted by the Bankruptcy Code," § 9.4, the Plan Administrator's precedent is all off point -- except for Judge Gerber's decision, which directly and expressly contradicts the Plan Administrator's position, on both statutory and due process grounds. *See Adelphia,* 341 B.R. at 422, 424.

25. This Court should follow this Court's and the Circuit Courts' holdings on this point. Because the Objectors' Claims are neither contingent nor unliquidated, they cannot be estimated under the Bankruptcy Code or the Plan. *See Audre,* 216 B.R. at 30; *Continental Airlines,* 981 F.2d at 1461; *Adelphia,* 341 B.R. at 424; *see also Enron,* 2006 WL 544463, at *2-3, 7; *cf.* Plan § 9.3.

### B. The Objectors' Claims Are Not Unduly Delaying the Administration of This Case.

26. If this Court should overlook the "gating requirements" and see fit to address the substance of the Motion, the Motion nonetheless should be denied. The Objectors' Claims are not "unduly delaying" the administration of this case merely because the Plan requires the Plan Administrator to reserve for them today (§ 8.4) and to address their merits someday (§6(b)(i)).

#### 1. The Objectors' Claims Are Not Meritless or Superfluous.

27. The Plan Administrator's confidence that all of the Primary Claims corresponding the Claims will be satisfied in full by LBIE and thus the Claims have no value under the Plan is based on willfully ignoring the numerous issues to be decided in the Waterfall Applications.

28. The simplest example of this is the currency conversion issue. The Plan Administrator admits that, "due to an idiosyncratic provision of the Plan" (i.e., the currency conversion provision, § 8.13(d)), at least some of the Claims are not yet "deemed satisfied in full under the Plan." Motion ¶ 2. But the Plan Administrator does not acknowledge that the Claimants might not receive sufficient further payments from the LBIE estate's "surplus" to cover the current currency conversion shortfall. One reason why the Claimants might not receive sufficient payments of the surplus is the theory, which could prevail on an appeal to the UK Supreme Court in the Waterfall I Application, that if LBIE's Administration converts to a Liquidation, then the claimants should lose their entitlement to statutory interest for the entire period of the Administration. This is one of the potential outcomes that LBHI is actively supporting in the Waterfall I Application, because every Pound Sterling of the surplus that is not paid to LBIE's senior creditors is instead paid to the joint venture entity (in which LBHI holds a substantial economic interest) that holds the subordinated debt of LBIE. It is hardly fair for the Plan Administrator to be asking the English courts to deprive the Claimants of the surplus while

asking this Court to deprive the Claimants of the Claims because of their supposedly inevitable receipt of the surplus.

29. There are many other potential outcomes in the Waterfall Applications that could result in the Claimants receiving drastically reduced amounts (and LBHI indirectly receiving drastically increased amounts) of the surplus, including: (i) the billions of dollars of LBIE's subordinated debt ranking prior to statutory interest on LBIE's proved debts, all the more so if interest on the subordinated debt, potentially at a high rate, ranks equally with statutory interest on admitted debts; (ii) statutory interest not being payable on later admitted claims for such time as they were contingent; and (iii) entitlements to statutory interest, contractual interest or so called currency conversion losses being found to have been waived by various postpetition agreements entered into with LBIE.

30. Moreover, the Plan Administrator implicitly and improperly assumes throughout the Motion that all amounts paid by LBIE to the Claimants -- including statutory interest and currency conversion true-ups, <u>beyond</u> the principal amount of the Primary Claims -- constitute "consideration provided on the corresponding Primary Claim[s]" under Section 8.13(a) of the Plan that count against the Claimants' aggregate recoveries on their Primary Claims and Guarantee Claims. But the scope of that key phrase in Section 8.13(a) is not self-evident, and this Court has never been asked to determine it. If the Plan Administrator is correct that statutory interest and currency conversion true-ups, beyond the principal amount of the Primary Claims, constitute "consideration provided on the corresponding Primary Claim[s]," then the Plan Administrator's further assumption that LBHI's guaranty obligations do <u>not</u> extend to such amounts must be <u>incorrect</u>, because it should be undisputed that LBHI, in guarantying all of LBIE's obligations, at a minimum guaranteed the payment of the Primary Claims.

31.     Objectors provide these examples not to invite a full briefing on the effect of the Waterfall Applications or Article VIII of the Plan on the Claims -- indeed, a full inquiry is premature -- but rather to show that there are significant variables in the LBIE case, willfully ignored by the Plan Administrator, that could result in the Primary Claims not being full satisfied under Sections 8.13(a) and 8.13(d) of the Plan, which in turn would result in the Claimants' being entitled to recovery on the Claims.

32.     For all of these reasons, this Court should decline the Plan Administrator's invitation to assess the Motion beginning with the simplistic assumption that, one way or the other, "all Relevant Guarantee Claims are expected to be satisfied in full from LBIE, [and] they will not be entitled to a net recovery from LBHI." *See* Motion ¶ 27.

### 2.     The "Delay" Is Not "Undue" in this Context.

33.     Ultimately, the Plan Administrator's alleged justification for the extraordinary Motion is undue delay in administering this case.  The "delay" of determining the legitimate amount of the Claims should not be considered "undue" in any event, but certainly not here, where there is no exigency of any sort.

34.     With respect to the alleged burden on LBHI's creditors, the Plan Administrator's maintaining even a full reserve for the Objectors' Claims pursuant to Section 8.4 of the Plan, so that the Objectors' Claims can be resolved on the merits, cannot reasonably be considered "unduly" prejudicial to LBHI's creditors at this point in this case.  In the three years after the Plan's effective date, LBHI's creditors have already received tens of billions of dollars in distributions, reaching in many LBHI Classes over 150% of the estimated recovery rate in the Disclosure Statement for the Plan.  ECF #49001 (Seventh Distribution Notice, at 4); *cf.* ECF #19629 (Disclosure Statement, at 6).  There is no exigency here at all, much less one that need or

should be addressed by depriving Objectors of their day in court on the merits of the Objectors' Claims. To the extent the alleged urgency underlying the Motion was a matter of quantity, it has been substantially mitigated by the fact that the Motion has been granted with respect to over 900 of the 1,148 Claims. *See* Order (granting the Motion in part) (ECF #50298).

35. With respect to the alleged burden on the Plan Administrator, there is no need for discovery or other claim resolution activities for the Claims at this point. The Plan Administrator's recently extended deadline to object to claims is almost two years away. During the interim there will likely be substantially greater clarity on the treatment of the surplus in the LBIE Proceedings, which will enhance the likelihood of efficient claim resolution discussions. Throughout this case, the Debtors and the Plan Administrator have been notably successful in resolving disputed claims without protracted litigation. There is no reason to assume that the Objectors' Claims would be so egregious an exception to this rule as to create "undue delay" in this case. The Plan Administrator need not engage in any of the Plan's protections against overpayment to the Objectors, for the simple reason that the Objectors' Claims are not yet allowed and thus the Claimants are not being paid. The alleged burden and delay on these points are imaginary.

36. The Plan Administrator "believes" that the Claims "may be overstated by billions of dollars," even though it hasn't taken any discovery. Leaving aside the non sequitur, this belief, being based on "other Guarantee Claims," simply reinforces that the Claims are no different from other claims, which the claimants have every right to assert and the Plan Administrator has every right to dispute. Complying with the claims resolution process set forth in the Plan, even absent the Plan Administrator's record of efficiency, cannot per se cause

"undue delay." In fact, there is actually an excellent reason for "delay" here: the resolution of the Claims is premature until the Waterfall Applications have been resolved with finality.

37. The notion that the Claimants (if served with discovery) may not respond to discovery demands, when failure to do so would result in the Claims being disallowed, or that the Claimants (if the Claims were allowed) may not comply with Section 8.13(e) of the Plan, when failure to do so would result in the Claims receiving no distributions, is nonsensical speculation. So is the notion that the Claimants will force the Plan Administrator to waste time chasing them all over the globe. A simple omnibus objection would force the Claimants to engage or else forfeit their claims.

38. Finally, the Objectors have not withdrawn their Claims "consensually," as the Plan Administrator would prefer, because those Claims have potential value, as explained in summary above. The Plan Administrator appears to have filed an estimation motion instead of an omnibus objection because the Plan Administrator cannot assert, much less prove, that the Claims are <u>certain</u> to have no value. In any event, a claimant's refusal to withdraw its claim based on the claimant's good faith belief that its claim is valid and may be entitled to recovery cannot reasonably be said to "unduly delay" a bankruptcy case.

39. The Objectors reserve their rights to supplement or modify this objection in response to any subsequent submissions concerning the Motion by other parties in interest.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the CarVal Objection, the Objectors respectfully request that this Court deny the Motion with respect to the Objectors' Claims.

Dated:   New York, New York
         August 14, 2015

        **MORGAN, LEWIS & BOCKIUS LLP**

By:   /s/  *Joshua Dorchak*
      Joshua Dorchak
      101 Park Avenue
      New York, New York  10178
      212.309.6000
      joshua.dorchak@morganlewis.com

      Attorneys for Attestor Value Master Fund LP and
      Deutsche Bank AG and Affiliates