| | |
|---|---|
| Franklin H. Top III (admitted *pro hac vice*)<br>Scott A. Lewis (admitted *pro hac vice*)<br>CHAPMAN AND CUTLER LLP<br>111 West Monroe Street<br>Chicago, Illinois  60603<br>Telephone: (312) 845-3000<br><br>*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts* | M. William Munno<br>Daniel E. Guzmán<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, New York  10004<br>Telephone: (212) 574-1587<br><br>*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts* |
| John C. Weitnauer (admitted *pro hac vice*)<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309<br>Telephone: (404) 881-7000<br><br>*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* | Richard C. Pedone (admitted *pro hac vice*)<br>NIXON PEABODY LLP<br>437 Madison Avenue<br>New York, New York  10022<br>Telephone: (212) 940-3085<br><br>*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.,*<br><br>Debtors. | Case No. 08-13555 (SCC) |

**SUPPLEMENTAL STATUS REPORT OF THE RMBS TRUSTEES'**
**IN CONNECTION WITH THE RMBS PROTOCOL**

The RMBS Trustees[1] submit this Supplemental Status Report in connection with the RMBS Protocol.[2] At the September 17, 2015, Status Conference (the "**Status Conference**"), the

---

[1] U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust, National Association, and Deutsche Bank National Trust Company, not individually but solely in their respective capacities as trustees for certain RMBS trusts (each a "*Trustee*" and collectively the "*RMBS Trustees*").

Court received an update from the Plan Administrator and the RMBS Trustees. This Supplemental Status Report is filed in response to certain statements made by the Plan Administrator and corresponding questions raised by the Court.

**I.    The Issues Raised by the Plan Administrator at the Status Conference**

　　*A.    Introduction*

1.    The "second general observation" made by the Plan Administrator at the Status Conference was that the RMBS Trustees had taken a "very broad view of what documentation is sufficient to establish a claim." *Transcript of Status Conference* (filed herewith as **Exhibit 1**) ("**Tr.**") 5:13-15. Plainly suggesting that claims are being made in an irresponsible or reckless manner, the Plan Administrator went on to say that "anything that could facially seem to be a claim, [the RMBS Trustees] just throw it over to us for us to ... make an assessment and rebut the claim." Tr. 5:18-20.

2.    Then, after describing several examples of supposedly overly broad claims (responded to below), the Plan Administrator stated (in response to questions from the Court) that this "observation" applies to a vast number of claims – "it may be somewhat pervasive, it could be over 30 percent of the claims being put to us, if not higher." Tr. 9:2-4.

3.    Later, the Plan Administrator went on to assert that "the trustees are presenting claims *on virtually all nonperforming loans with a value of at least $1,000,* so we have a very low monetary threshold for the claims that are being put forward to us." Tr. 11:12-15 (emphasis added). While the Plan Administrator later admitted that "we don't know the number" of low

---

[2]    *Order Establishing A Protocol To Resolve Claims Filed By Trustees On Behalf Of Certain Issuers Of Residential Mortgage-Backed Securities* (ECF 47569). All terms that are not defined herein shall have the definition set forth in the RMBS Claims Protocol. All data and numerical information contained in this Supplemental Status Report is through September 10, 2015, unless otherwise indicated, and relates solely to Covered Loans.

2

value claims submitted, Tr. 16:21, the impression was clearly given that the number was large enough to burden the estate with unwarranted expense. *See* Tr. 11:15-19.

4.   The Plan Administrator's criticisms of the RMBS Claims were unsupported and are not accurate, and none of them can be characterized as "systemic" or "pervasive."[3]

> B.   *Whether a loan "comports with underwriting guidelines" is only relevant if the breach alleged is that the loan does not comport with underwriting guidelines.*

5.   The Plan Administrator's first example of alleged overly broad assertion of claims was this:

> certain claims that have been put forward to us as obvious breaches of reps and warranties by borrower. When we provide over to the trustees the underwriting guidelines that the loan was written under, the loan actually comports with the underwriting guidelines, so we have to go through this process of them sending it over to us, us looking at it, saying well it actually comports with the underwriting guidelines, and then sort of putting that to the side.

Tr. 6:6-14.

6.   The RMBS Trustees have submitted claims where there were breaches of representations and warranties as listed in the governing documents.

7.   *Only 3 trusts* out of 251 even have a rep and warranty that the loans in the trust comply with the underwriting guidelines.[4] Affidavit of Allen Pfeiffer dated September 28, 2015 ("**Pfeiffer Affidavit**") at ¶ 4, filed herewith as **Exhibit 2**. The Plan Administrator has not yet responded to any of the claims made on these loans from these three trusts.[5]

---

[3]   We note that under the relevant transaction documents, the RMBS Trustees only need give notice "upon discovery" of a breach, which notice must be given prior to litigation and thus prior to the RMBS Trustees possessing subpoena power. The burden then shifts to the Plan Administrator to cure or repurchase.

[4]   Because the Mortgage Loan Sale and Servicing Agreement or similarly entitled document for each Covered Trust is applicable specifically to that trust, the RMBS Trustees, along with their advisors, undertook a detailed review of the relevant sections of the document on a trust-by-trust basis. The result of this was a map of the representations and warranties applicable to each trust.

[5]   The three trusts with a no breach of underwriting guidelines representation and warranty are: BNCMT 2007-3, BNCMT 2007-4 and SASC 2007-BNC1.

3

8.  The other 248 trusts do not have a compliance with "underwriting guidelines" rep and warranty. Consequently, whether a particular loan may arguably "comport" with the underwriting guidelines is irrelevant to whether the loan breached the reps and warranties that are actually contained in the governing documents. The Plan Administrator apparently contends that compliance with underwriting guidelines somehow negates breaches of reps and warranties, and has included this "defense" to 2,308 of the 18,482 rejected claims (12.48%). Pfeiffer Affidavit at ¶ 5.

9.  At most, the Plan Administrator arguably might have a defense to a breach claim with respect to an underwriting guidelines rep and warranty. It would *not* be relevant to a claim that the loan breached a different rep and warranty.

    C.    *Misrepresentation of Income.*

10.  The Plan Administrator also asserts that "a W-2 or tax return for a year or two after the loan was originated" is an example of "where [the RMBS Trustees] haven't put forth ... sufficient evidence for us to show the breach occurred at the time of origination." Tr. 7:19-23. The RMBS Trustees disagree[6] - among other evidence, "near year" evidence can demonstrate that a borrower *lied* about their income in a prior year and supports a breach claim.[7]

11.  Of the RMBS Claims reviewed by the Plan Administrator, there are 3,404 claims based on "near year" evidence of misrepresentation of income, of which only 1,743 of these claims

---

[6] The RMBS Trustees retained five nationally recognized review firms to review loan files – (1) Digital Risk Advisory Services; (2) Opus Capital Market Consultants, LLC; (3) EdgeMac Mortgage Advisory Services, LLC; (4) CrossCheck Compliance LLC; and (5) The Oak Leaf Group, LLC (collectively the "*Loan Review Firms*") – and a nationally recognized financial advisor, Duff & Phelps, LLC (*"Duff & Phelps"*) to, among other tasks, (i) oversee the efforts of the Loan Review Firms to ensure a review consistent with the RMBS Claims Protocol and each other, (ii) prepare and submit RMBS Claims to the Debtors, and (iii) coordinate with the Plan Administrator's professionals on the Protocol. In the aggregate, approximately 600 people are involved in fulfilling the requirements of the Protocol.

[7] "Near year" evidence is defined, for purposes of the RMBS Trustees' review, to mean in the same or following 1 calendar year for a loan closed prior to April 1 or following 2 calendar years for a loan closed after to April 1.

4

were single-breach loans, while the remaining loans have other breaches supporting the claim. Pfeiffer Affidavit at ¶ 6. As contemplated by the Protocol, the RMBS Trustees will re-examine each one of these claims along with the denials provided by the Plan Administrator and draw on the knowledge and experience of their experts and five loan review firms to confirm whether the misrepresentations of income are properly supported.

12.     The RMBS Trustees also wish to point out that the Plan Administrator has rejected 6,415 misrepresentation of income claims out of 6,830 where the breach was supported by "*same year*" evidence. Pfeiffer Affidavit at ¶ 7. The RMBS Trustees submit that this is an example of unreasonable rejections by the Plan Administrator of valid claims.

        D.     *Breach Claims Based on Typographical Errors in Appraisals*

13.     The Plan Administrator asserted that:

> There are a number of other examples where there are typographical errors in the appraisal reports, they have put those forward to us, they're really not material errors in the appraisal's report. And we expect and we have a meeting, process with them, some of those claims are going to fall by the side.

Tr. 7:24-8:4; *see also* Tr. 16:1-7. Of course, some level of error is inevitable in a project of this size and scope – by both the RMBS Trustees and Plan Administrator. Based on the Plan Administrator's rebuttals, the RMBS Trustees have identified only 41 instances (0.2% of the Claims addressed by the Plan Administrator) where the Plan Administrator asserted that a typographical error was a defense to the submitted claim (whether the typographical error was in an appraisal or some other document). Only 6 of these claims were single-breach loans while the remaining loans have other breaches supporting the claim. Pfeiffer Affidavit at ¶ 8. The RMBS Trustees are reviewing these 41 claims in light of the Plan Administrator's rebuttal.

5

> E.  *Misrepresentation of Occupancy*

14. The Plan Administrator alleged:

> Another example is a number of claims were, [the RMBS Trustees] have claims of misrepresentation from the borrower, that this is a primary residence when in fact it was a second home. And it's clear when you actually look at the entire underwriting file for some of those that it was disclosed to the originator that these were in fact second homes so there's really no breach of misrepresentation by the borrower.

Tr. 8: 5-11. *See also* Tr. 16: 8-15. The Plan Administrator rejected 2,464 RMBS Claims of the 2,773 submitted (89%) where the borrower misrepresented the intended occupancy status of the Mortgaged Property. Pfeiffer Affidavit at ¶ 9. Although we may find instances of our error, the RMBS Trustees have thus far reviewed 568 of these RMBS Claims under Step 2 of the Protocol and have not found *any* examples in which a review of the "entire" file reveals that the borrower disclosed to the originator that "in fact" it was a second home or investment property. The RMBS Trustees continue to review each response provided by the Plan Administrator.

> F.  *Of the RMBS Claims submitted through September 10, 2015, only 59 had losses of less than $1,000*

15. Only 59 of the 31,730 liquidated loans that were submitted through September 10, 2015 had losses of less than $1,000 (0.186%). Only 92 such loans had losses between $1,000 and $10,000 (0.290%), and 175 of such loans had losses between $10,000 and $20,000 (0.552%). The total of such loans (326) is only 1.027% of the loans submitted. Pfeiffer Affidavit at ¶ 10. Said another way, *99.0% of the claims submitted were for loans that had losses of more than $20,000.*[8]

---

[8] For loans responded to by the Plan Administrator, only 57 of the 19,189 loans had losses of less than $1,000 (.297%). Only 70 such loans had losses between $1,000 and $10,000 (.365%), and 34 of such loans had losses between $10,000 and $20,000 (.177%). The total of such loans (161) is only .839% of the loans responded to by the Plan Administrator – less than 1%.

6

16.     The loans with small losses were either because the loans were part of the original random sample[9] (all of which were submitted), or because they were non-liquidated at the time that they were placed into the review queue and later liquidated with small losses.  The RMBS Trustees have an effective prioritization process in place to review loans that make economic sense relative to expected recoveries.

17.     The RMBS Trustees monitor and update the Purchase Price of RMBS Claims on a monthly basis, sharing this information with the Plan Administrator.  When it is the case that a loan is paid off without a loss after being submitted as an RMBS Claim, the RMBS Trustees promptly rescind the claim.  It may also occur that a RMBS Claim previously submitted will liquidate with only a small loss and will remain as an RMBS Claim.[10]

18.     None of the unsupported examples given by the Plan Administrator at the Status Conference support the assertion that the RMBS Trustees are "shoveling" claims over to the Plan Administrator without a valid basis for them.

G.     *The Material Breach Rate*

19.     Through June 30, 2015, on a rolling bi-monthly basis, the RMBS Trustees filed claims on 25,360 loans of 50,317 reviewed loans, a breach rate of 50.4%.  Of the 25,360 loans submitted with claims, the Plan Administrator responded on August 31, 2015 on 19,189 Claim Files.[11]  The Plan Administrator rejected 18,482 (96.3%) and approved 707 (3.7%).

---

[9]     The random sample was selected in 2012, as was discussed in the RMBS Trustees' Reserve Motion. ECF 46078  The RMBS Trustees have a standing objection to the Protocol Order.

[10]    Aggregate claim amounts with respect to loans with losses less than $20,000 may be significant.  The RMBS Trustees reserve all their rights with respect to submitting a claim on any loan.

[11]    As noted in the second Status Report filed on September 14, 2015 (ECF 50931) (the "Second Status Report"), the Plan Administrator approved 707 RMBS Claims, rejected 18,482 RMBS Claims (a total of 19,189) and deemed 6,179 RMBS Claim Files to have insufficient documentation for review.

20.     The Plan Administrator's high rejection rate – and the corresponding unprecedented low breach rate of 1.8% (calculated as 3.7% of the RMBS Trustees initial breach rate of 50.4%) is dramatically at odds with Lehman's own pre-bankruptcy review.

21.     For example, Lehman's review in February 2007, before its bankruptcy filing, revealed that a "review of 240 LXS loans" showed "50% … contained material misrepresentation."[12]

22.     The breach rate results – 48.5% through September 10, 2015 – found by the RMBS Trustees are consistent with what Lehman found pre-bankruptcy pursuant to its own review.

      *H.    The RMBS Trustees' Loan Review Process*

23.     Before reviewing the loan files, the RMBS Trustees, along with their advisors, undertook a detailed review of the relevant sections of the transaction documents on a trust-by-trust basis. The result of this was a mapping of the relevant representations and warranties and the set of associated defects for each trust.

24.     The RMBS Trustees, along with their advisors, then exclude certain defects that may only be technical in nature and would not have a material and/or adverse effect contemplated by the underlying document. The loan review began at the outset of the Sample review in 2012 and was then refined over time as five loan review firms were engaged by the RMBS Trustees to comply with the Protocol.

25.     The loan files were then reviewed in accordance with a standard review practice to determine whether there are material breaches of representations and warranties.

26.     After the initial review of each loan file, the Loan Review Firms had their quality control personnel check the results.  Finally, Duff & Phelps conducted a further quality control check on the underlying breaches before submitting a RMBS Claim.

---

[12]    Risk Review, Aurora and BNC, February 2007, at p.10, available at http://web.stanford.edu/~jbulow/Lehmandocs/docs/DEBTORS/LBEX-DOCID%20188325.pdf .

## II. DISCLOSURE TO THIRD PARTIES.

**27.    The RMBS Trustees, with input from their counsel and advisors, are reviewing Covered Loans for breaches of representations and warranties.  The Plan Administrator has the right to object to any claim submitted by the RMBS Trustees as provided in the RMBS Claims Protocol.  While the RMBS Trustees have submitted claims, they make no representation or warranty that the Plan Administrator will agree with the claims or that the claims will ultimately be recoverable against the Estate.**

        Respectfully Submitted,

Dated: September 28, 2015

    **U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

**BY:** /s/ Franklin H. Top III

    **ONE OF ITS ATTORNEYS**

**LAW DEBENTURE TRUST COMPANY OF NEW YORK, SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

**BY:** /s/ M. William Munno

    **ONE OF ITS ATTORNEYS**

**WILMINGTON TRUST COMPANY AND WILMINGTON TRUST, NATIONAL ASSOCIATION, EACH SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

**BY:** /s/ John C. Weitnauer

    **ONE OF ITS ATTORNEYS**

**DEUTSCHE BANK NATIONAL TRUST COMPANY, SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

**BY:** /s/ Richard C. Pedone

**ONE OF ITS ATTORNEYS**