WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.*,** | : | **08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------------x

### DECLARATION OF MARTIN POTTS IN SUPPORT OF FIVE HUNDRED TENTH OMNIBUS OBJECTION TO CLAIMS (DISPUTED VALUATION CLAIMS)

Pursuant to 28 U.S.C. § 1746, I, Martin Potts, declare:

1.    I am over the age of 18 years and make these statements of my personal knowledge based on my personal experience, my review of business records of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), and my participation in settlement negotiations between Deka and Lehman Brothers (Luxembourg) S.A. ("Lehman Luxembourg"). If called to testify, I could testify to the truth of the matters set forth herein.

2.    I submit this Declaration in support of the *Five Hundred Tenth Omnibus Objection to Claims (Disputed Valuation Claims)*, dated September 29, 2015 (the "Five Hundred Tenth Omnibus Objection") pursuant to which the Plan Administrator has objected to proofs of claim number 19985, 19989, 19990, 19991 and 19992 filed by DEKA International S.A. or International Fund Management S.A. (collectively, "Deka").

3.      Deka and Lehman Luxembourg entered into a settlement agreement (the "Settlement") on February 23, 2015.  A copy of the Settlement is attached to this Declaration as Exhibit A.

4.      The claims allowed against Lehman Luxembourg pursuant to the Settlement were admitted by the court in Luxembourg to the Luxembourg proceeding on April 22, 2015.  A copy of the notice of admission of these claims is attached to this Declaration as Exhibit B.

5.      On June 18, 2015, the Luxembourg court entered a certificate of no appeal confirming that no creditors had objected to the claims being allowed in the Luxembourg proceeding.  A copy of the certificate is attached to this Declaration as Exhibit C.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of September 2015.

/s/   _____
Martin Potts

WEIL:\95480339\1\58399.0011

**EXHIBIT A**

## SETTLEMENT AGREEMENT

**THIS AGREEMENT** is dated            2 3      February, 2015

**AND MADE BETWEEN:**

(1)     **LEHMAN BROTHERS (LUXEMBOURG) S.A. (in judicial liquidation)**, a company incorporated in Luxembourg, registered at the Register of Commerce and Companies (RCS) under number B 39564 whose registered office is 29, Avenue Monterey, L-1325 Luxembourg (**"LBL"**), dissolved and wound up pursuant to a judgment issued on 1st April 2009 by the District Court of Luxembourg sitting in commercial matters, acting and represented by its judicial liquidators Jacques DELVAUX and Laurent FISCH;

(2)     **Jacques DELVAUX**, attorney at law, residing professionally at L-1325 Luxembourg, 2, rue de la Chapelle;

(3)     **Laurent FISCH**, attorney at law, residing professionally at L-1950 Luxembourg, 14, rue Auguste Lumière;

        both acting in their capacity as joint judicial liquidators and representatives of the LBL creditors' estate (the **"Joint Liquidators"**);

(4)     **DekaBank Deutsche Girozentrale**, a financial institution incorporated in the Federal Republic of Germany, registered at the Register of the Lower Regional Court of Frankfurt am Main under number HRA 16068, whose registered office is at Mainzer Landstrasse 16, D-60325 Frankfurt am Main (**"DekaBank"**);

(5)     Deka International S.A. and International Fund Management S.A. each acting in their capacity as management company of the respective funds and entities listed in Annex 1 to this Agreement (such entities being the **"Deka Funds"**);

(each a **"Party"** and together the **"Parties"**).

**BACKGROUND**

(A)     On 1 April 2009, LBL entered into liquidation, with the appointment of the Joint Liquidators by order of the Luxembourg court made on that day.

(B)     Prior to the entry into administration and subsequent liquidation of LBL, DekaBank and the Deka Funds entered into certain securities lending transactions with LBL under a Global Master Securities Lending Agreement dated 28 March 2006 and as amended on 19 February 2008 (date of agreement) / 20 February 2008 (signing date) (the "**GMSLA**").

(C)     On 1 April 2008 (date of agreement) / 6 April 2008 (signing date), DekaBank and the Deka Funds entered into a Securities Lending Transaction on a Basket of Ordinary Shares (the "**SLT Agreement**").  It is alleged on behalf of the Deka Funds that amounts are payable to them by LBL under the SLT Agreement.

(D)     By a notice dated 16 September 2008, DekaBank and the Deka Funds designated an Event of Default under the GMSLA (as defined therein) and the Parties' respective obligations under the GMSLA were accelerated so as to require performance thereof at the time of the Event of Default. Pursuant to the GMSLA an account shall be taken, as at the time of the Event of Default, of the amounts due to and from LBL from and to each of DekaBank and the Deka Funds, with the net amount, representing the difference between the amounts payable to each other, payable by the Party owing the greater sum to the Party owing the lesser sum.

(E)     On or around 31 July 2009, DekaBank and the Deka Funds submitted proofs of claim to LBL's liquidation in respect of the amounts DekaBank and the Deka Funds claimed were owed to them under the GMSLA and the SLT Agreement (each an "**Original Proof of Claim**").

(F)     On 28 February 2014, LBL, represented by the Joint Liquidators, distributed a First Liquidation Dividend (as defined below) to the admitted creditors of LBL and constituted equivalent cash reserves for the claims which had not been verified yet by the Joint Liquidators at that time, including an amount of EUR 78,564,702.97 for DekaBank and the Deka Funds.

(G)     On 21 March 2014 DekaBank and the Deka Funds amended the Original Proofs of Claim following discussions between the Parties regarding netting off under the GMSLA (each an **"Amended Proof of Claim"**).

(H)     The Amended Proofs of Claim are disputed (the **"Dispute"**). In particular (but without limitation), there are disagreements between the Parties as to the amount of legal fees claimed, the manufactured dividends payable under the GMSLA, the fees payable under the SLT Agreement and the valuation of certain securities.

(I)     The Parties now wish to settle the Dispute on the terms set out in this Agreement.

(J)     This Agreement is entered into to avoid the time and significant irrecoverable expense of protracted litigation. The Parties make no admissions of liability in relation to the subject matter of the Dispute and this Agreement and nothing in this Agreement shall be construed as acceptance of the contentions of any of the Parties hereto, save insofar as the Deka Creditor Claims are to be admitted as creditor claims on the terms set out in this Agreement (i.e. in the event of an Admission).

1.      **DEFINITIONS AND INTERPRETATION**

1.1     In this Agreement, the following words have the following meanings:

**"Admission"** is as defined in clause 5.2 below.

**"Admission Date"** shall be (i) in the event that there is no Opposition, the day on which Admission occurs, if Admission occurs on or before 31 December 2015, or (ii) the date on which Opposition Rejection occurs, if Opposition Rejection occurs on or before 31 December 2015 (it being accepted by the Parties, for the avoidance of doubt, that the Admission Date shall not be capable of occurring after 31 December 2015).

**"Agreement"** means this agreement as may be amended from time to time.

**"Amended Proof of Claim"** is as defined in recital (G) above.

**"Approval Date"** is as defined in clause 2.1 below.

**"Approval Order"** is as defined in clause 2.1(a) below.

**"Business Day"** means any day, other than a Saturday or Sunday, which is both a Hesse Business Day and a Luxembourg Business Day.

**"Claims"** means any actual or potential claim, counterclaim, demand, complaint, right of set-off, right of contribution, right of indemnity, cause of action, or right or interest of any kind or nature whatsoever, whether in existence now or coming into existence at some time in the future, whether known or unknown, suspected or unsuspected, however and whenever arising, in whatever capacity or jurisdiction, whether or not within the contemplation of the Parties at the time of this Agreement, including claims which as a matter of law did not at the date of this Agreement exist and whose existence cannot currently be foreseen and any claims or rights of action arising from a subsequent change or clarification of the law, which LBL and / or the Joint Liquidators on the one hand and DekaBank and / or the Deka Funds on the other hand have or could have against each other arising out of or in connection with:

(a)         the GMSLA;

(b)         the SLT Agreement;

(c)         the Dispute; and/or

(d)         the relationship between LBL and / or the Joint Liquidators on the one hand and DekaBank and / or the Deka Funds on the other hand up to and including the date of this Agreement.

For the avoidance of doubt, **"Claims"** does not include claims to enforce the terms of this Agreement.

**"Deka Creditors"** means the entities set out in Annex 2 to this Agreement.

**"Deka Creditor Claims"** means the LBL agreed claims of the Deka Creditors for payment against LBL under clause 10.2 of the GMSLA, in the maximum total amount of EUR 39,197,632.98 comprised of the individual amounts set against each Deka Creditor in Annex 2 to this Agreement.

**"Deka Debtor Amounts"** means the total amount of EUR 25,621,233.52, comprised of the amounts that the Deka Debtors have agreed to pay to LBL pursuant to this Agreement in respect of LBL's claims for payment from the Deka Debtors under clause 10.2 of the GMSLA, each as set out in Annex 3 to this Agreement.

**"Deka Debtors"** means the entities listed in Annex 3 to this Agreement.

**"Dispute"** is as defined in recital (H) above.

**"First Liquidation Dividend"** means the dividend of 42.5 per. cent so far paid by LBL, as at the date of this Agreement, in relation to admitted claims made into its liquidation.

**"GMSLA"** is as defined in recital (B) above.

**"Group Company"** means any subsidiary undertakings, any company of which DekaBank and / or the Deka Funds are a subsidiary undertaking and any other subsidiary undertakings of any such parent undertaking; and shall also include any funds (of whatsoever nature and whether or not such fund is a distinct legal entity) in respect of which DekaBank acts as manager, management company or agent.

**"Hesse Business Day"** means any day, other than a Saturday or Sunday or bank or public holiday in Hesse (Germany).

**"LBL Account"** is the account held by LBL with Banque et Caisse d'Epargne de l'Etat Luxembourg, 1 place de Metz, L-2954 Luxembourg under IBAN LU07 0019 2855 4603 7000 and SWIFT Code BCEELULL.

**"LBL Loss"** is as defined in clause 12 below.

**"Luxembourg Business Day"** means any day, other than a Saturday or Sunday or bank or public holiday in Luxembourg.

**"Luxembourg Court"** means the Luxembourg District Court (*"Tribunal d'arrondissement de et à Luxembourg, siégeant en matière commerciale"*).

**"Liquidation Order"** means the court order n° 451/09 dated 1 April 2009 by the Luxembourg Court in relation to the compulsory liquidation of LBL, as this order has been subsequently amended and supplemented.

**"Opposition"** an opposition (*"contredit"*) to the Deka Creditor Claims raised by a third party following Publication, where the purpose of such opposition (*"contredit"*) is to challenge the admission of the Deka Creditor Claims in whole or in part.

**"Opposition Rejection"** the final rejection by the Luxembourg Court of all Oppositions, which shall be deemed to occur on the earlier of (i) the date on which all parties (for the avoidance of doubt including any third party creditor of LBL with standing to appeal) with standing to appeal such rejection waive their rights of appeal, (ii) the dismissal by the Luxembourg Court of any appeal against such rejection, and including the dismissal of any subsequent appeal by the Luxembourg Court, and (iii) the expiry of any periods within which any such appeal(s) can be brought.

**"Original Proofs of Claim"** is as defined in recital (E) above.

**"Payment Deadline"** means the fifth Hesse Business Day following the deemed delivery by LBL to the Deka Debtors in accordance with clause 21 of this Agreement of a written notice confirming the occurrence of the Admission Date.

**"Pre-contractual Statement"** is as defined in clause 9.2 below.

**"Publication"** is the publication of the Deka Creditor Claims as further defined in clause 5.1 below.

**"Publication Date"** is the date on which Publication occurs.

**"Publication Period"** means the first ten days of any given month of any given year, during which claims may be published by LBL in accordance with the Liquidation Order.

**"SLT Agreement"** is as defined in recital (C) above.

"**Standstill Agreement**" means the standstill agreement attached at Annex 4 to this Agreement, as made by the parties thereto on 8 September 2014.

"**Subsequent Dividend**" is as defined in clause 6.1(b).

1.2     Words in the plural include the singular, and words in the singular include the plural.

2.      **APPROVAL DATE**

2.1     This Agreement shall take effect upon the latest of:

(a)     the issuing of a written order by the Luxembourg Court approving the terms of this Agreement in full *("homologation")* (the "**Approval Order**") and the delivery of a copy of the Approval Order to DekaBank and the Deka Funds in accordance with clause 21;

(b)     the completion of any steps ordered by the Luxembourg Court as conditions to the approval referred to in clause 2.1(a) above, if any. In the event of a dispute as to whether such steps have been completed the determination of the Luxembourg Court in that regard shall be determinative;

(c)     the earlier of the waiver by the Parties and/or by the Ministère Public of any right to oppose ("*faire opposition*") or to appeal ("*faire appel*") the Approval Order, and the expiry of the period within which the Parties and/or the Ministère Public may oppose or appeal the Approval Order;

(d)     if the Approval Order is opposed ("*faire opposition*") or appealed ("*faire appel*"), the later of the dismissal of that appeal or opposition and any subsequent appeal by the Luxembourg Court, and the expiry of any periods within which any such dismissal(s) can be appealed; and

(e)     the service upon DekaBank and the Deka Funds by LBL of a copy of the *"certificate de non opposition et de non appel"* issued to LBL by the *"greffier en chef"*;

the date on which the last of the events set out at (a), (b), (c), (d) and (e) above occurs being the "**Approval Date**".

2.2   If the Approval Date does not occur by 31 December 2015 this Agreement shall be deemed null and void.

2.3   Herewith the Parties each agree to expressly and irrevocably acknowledge and accept the Approval Order, and to waive any right of opposition or appeal ("*voies de recours*") against the Approval Order provided that the terms and conditions of this Agreement are approved in full by the Luxembourg Court by means of the Approval Order save for any conditions ordered by the Luxembourg Court as mentioned in clause 2.1. If required, the Parties will provide such waiver as soon as reasonably practicable following the issuance of the Approval Order.

2.4   In the event that (i) Admission does not occur on or before 31 December 2015, or (ii) an Opposition is made, and the Deka Creditors do not file an objection to that Opposition with the Luxembourg Court within the period within which such objection must be filed or (iii) an Opposition is accepted by the Luxembourg Court, (which acceptance shall be deemed to occur on the earlier of (a) the date on which all parties (for the avoidance of doubt including any third party creditor of LBL with standing to appeal) with standing to appeal the acceptance of such Opposition waive their rights of appeal, (b) the dismissal by the Luxembourg Court of any appeal against the acceptance of such Opposition, and including the dismissal of any subsequent appeal by the Luxembourg Court, and (c) the expiry of any periods within which any such appeal(s) can be brought) this Agreement shall terminate and the Parties shall have no further obligations under this Agreement after that date.

3.    **FULL AND FINAL SETTLEMENT**

3.1   This clause 3 will only come into effect on the Admission Date, being understood that LBL shall deliver to DekaBank and the Deka Funds in accordance with clause 21 of this Agreement a written notice confirming the occurrence of the Admission Date.

3.2   This Agreement shall be in full and final settlement of all and any Claims existing between the Parties and the Parties covenant in favour of each other that with effect from the Admission Date they will not take any step or proceeding or make

or assert any claim (whether by way of litigation or otherwise) against the other Party in connection with or in relation to (either directly or indirectly) the Claims.

3.3    The Parties agree that for the purpose of this Agreement the Deka Debtor Amounts ceased to incur interest from 12.00 CET on 17 June 2014, and that interest upon the Deka Creditor Claims ceased to accrue from and including the date of the Liquidation Order.

3.4    The Parties irrevocably waive and release any and all Claims they may have against each other.

3.5    For the avoidance of doubt, any claim for payment against LBL under clause 10.2 of the GMSLA which exceeds the total amount of EUR 39,197,632.98 and/or exceeds the individual amounts set out in Annex 2 of this Agreement shall be treated as a Claim for the purposes of this Agreement and waived and released pursuant to this clause 3 on the Admission Date.

4.    **PAYMENT**

4.1    On or before the Payment Deadline the Deka Debtors shall pay, and the Deka Debtors shall procure the payment of, the Deka Debtor Amounts into the LBL Account.

4.2    Should any part of the Deka Debtor Amounts not be paid on or before the Payment Deadline, interest shall be payable by the Deka Debtors to LBL on such unpaid part of the Deka Debtor Amounts from and including the date of the Payment Deadline, and the Deka Debtors shall procure the payment of such interest at the rate of 2% above the base rate for the time being of the Euro OverNight Index Average (EONIA). Such interest shall accrue daily on the basis of a 360-day year until the Deka Debtor Amounts are received in full in the LBL Account.

4.3    The Deka Debtor Amounts (and any interest thereon as further detailed in clause 4.2 above) shall be paid in full without set-off or counterclaim and without deduction or withholding, unless such deduction or withholding is required by law.

4.4    If the Deka Debtors, or any of them, are required by law to make any deduction or withholding from the Deka Debtor Amounts, the Deka Debtor Amounts shall be increased to the extent necessary to ensure that, after making of the deduction or

withholding, LBL receives and retains (free from any liability in respect of the deduction or withholding) a net sum equal to that which it would have received and retained had no deduction or withholding been required or made. In case of any deduction or withholding from the Deka Debtor Amount already placed in the LBL Account, which is not under the control of the Deka Debtors, and which is not required to be made as a consequence by the payment by the Deka Debtors of the Deka Debtor Amount to the LBL Amount, LBL shall be liable for such deduction or withholding accordingly. The Parties hereby agree that any costs and charges charged on such LBL Account, if any, are payable by LBL.

4.5    With effect from the Admission Date, each of the Deka Debtors acknowledges that it is liable for the payment of its respective Deka Debtor Amount (only) as outlined in Annex 3 together with any interest thereon pursuant to clause 4.2 above.

5.    **PUBLICATION OF THE DEKA CREDITOR CLAIMS**

5.1    In the first Publication Period after the Approval Date, the Joint Liquidators shall publish the Deka Creditor Claims as admitted creditor claims, in accordance with the Liquidation Order (**"Publication"**).

5.2    The Deka Creditor Claims will be finally admitted if, during the first Publication Period following the Publication, there is no opposition (*"contredit"*) to the Deka Creditor Claims and the Deka Creditor Claims are finally admitted in the full amounts set out in Annex 2 to this Agreement in the minutes executed by the Supervisory Judge of LBL (such minutes also to be signed by the Joint Liquidators, and a copy provided to DekaBank and the Deka Funds in accordance with clause 21 of this Agreement) (the **"Admission"**).

6.    **PAYMENT OF DIVIDENDS TO THE DEKA CREDITORS**

6.1    Within five Luxembourg Business Days after the receipt by LBL of the Deka Debtor Amounts in full in to the LBL Account (including any interest payable thereon pursuant to clause 4.2 of this Agreement), LBL and/or the Joint Liquidators shall file a petition seeking court approval to pay a dividend equivalent to the First Liquidation Dividend to the Deka Creditors in respect of each of the Deka Creditor Claims. For the avoidance of doubt, the Parties expressly acknowledge and agree that following the Admission Date:

(a)        to the extent that the reserves held by LBL in respect of the First Liquidation Dividend payable by LBL to the Deka Creditors in relation to the Deka Creditor Claims exceed the First Liquidation Dividend payable in respect of the Deka Creditor Claims, the surplus shall not be released to the Deka Creditors being however agreed that the First Liquidation Dividend payable to the Deka Creditors shall be calculated in accordance with the Deka Creditor Claims; and

(b)        to the extent that LBL pays further dividends in relation to creditor claims it has approved in addition to the First Liquidation Dividend (each a **"Subsequent Dividend"**), a Subsequent Dividend shall also be paid in respect of the Deka Creditor Claims at the same rate, and at the same time, as any Subsequent Dividends paid to LBL's other approved creditors.

## 7.     COVENANT NOT TO SUE

7.1    LBL covenants in favour of DekaBank and the Deka Funds that following the Admission Date, and save for any steps it may take to enforce the rights and obligations contained in this Agreement, it will not take any step or proceeding or make or assert any claim (whether by way of litigation or otherwise) against DekaBank and / or the Deka Funds in connection with or in relation to (either directly or indirectly) the Claims.

7.2    DekaBank and the Deka Funds covenant in favour of LBL that following the Admission Date, and save for any steps they may take to enforce the rights and obligations contained in this Agreement, they will not take any step or proceeding or make or assert any claim (whether by way of litigation or otherwise) against LBL in connection with or in relation to (either directly or indirectly) the Claims, without prejudice to their rights as admitted creditors in the amounts of the Deka Creditor Claims.

## 8.     TERMINATION OF EXISTING CONTRACTS

For the avoidance of doubt, and to the extent that they have not already terminated, the Parties agree that on the Admission Date the GMSLA, the SLT Agreement, all of the Parties' rights and obligations thereunder and any transactions under the GMSLA and/or the SLT Agreement are (to the extent not

previously terminated) terminated without any further liability on the part of any Party.

**9.     ENTIRE AGREEMENT**

**9.1**     The Parties agree that this Agreement and the Standstill Agreement together constitute the entire understanding and agreement between the Parties in relation to the subject matter of this Agreement.

**9.2**     Each of the Parties acknowledges that it has not entered into this Agreement in reliance wholly or partly on any representation or warranty made by or on behalf of any of the other Parties to this Agreement (whether orally or in writing) (a **"Pre-contractual Statement"**) other than as expressly set out in this Agreement.

**9.3**     Save in the case of fraud, no Party to this Agreement shall have any right of action against any other Party to this Agreement arising out of or in connection with any Pre-contractual Statement.

**10.     CONFIDENTIALITY**

**10.1**     The Parties and their advisers shall keep confidential and not disclose or use any information received or obtained as a result of entering into or performing this Agreement which relates to:

(a)     the existence and/or terms of this Agreement; and/or

(b)     the negotiations relating to this Agreement.

**10.2**     Clause 10.1 above shall not prohibit disclosure or use of any information if and to the extent:

(a)     the disclosure is made to the auditors, insurers and/or lawyers of DekaBank and/or the Deka Funds on terms which preserve confidentiality;

(b)     the disclosure is made to LBL's declared creditors, and in particular to Lehman Brothers Holding Inc. and its counsel and advisors;

(c)     the disclosure is made within court proceedings in Luxembourg, the United States of America or abroad being directly or indirectly linked to the settlement of the Dispute and/or the settlement of mutual claims between the Parties under this Agreement;

(d)     the disclosure or use is required pursuant to a legal or regulatory obligation (as the case may be also towards third parties) and / or required for the Group Companies internal obligations including but not limited to accounting or bookkeeping obligations; and / or

(e)     the other Parties have consented to such disclosure or use in writing.

10.3    The Parties consent to the disclosure of the existence and/or terms of this Agreement and the negotiations relating to this Agreement to:

(a)     each of the Supervisory Judge, the Public Prosecutor and the Luxembourg Court for the purpose of obtaining approval of this Agreement;

(b)     the Luxembourg Court or the Court of any other jurisdiction for the purpose of any proceedings or any other legal proceedings to which this Agreement may be relevant;

(c)     the Luxembourg tax authorities;

(d)     LBL's declared creditors;

(e)     any legal or other advisors of LBL and/or the Joint Liquidators and/or the auditors of LBL;

(f)     any subsequent liquidator of LBL or any other officeholder of LBL;

(g)     any party as required by law or any court of competent jurisdiction or as required by the rules and regulations of any regulatory or government body;

(h)     any person for the purpose of the exercise by the Joint Liquidators of their powers and duties as Joint Liquidators of LBL.

11.    **REPRESENTATIONS AND WARRANTIES**

11.1    Each of the Parties to this Agreement represents and warrants that:

(a)    it is validly existing, duly empowered and authorised to execute and perform the obligations set out in this Agreement;

(b)    it has not sold, transferred, assigned or otherwise disposed of the claims released pursuant to this Agreement;

(c)    this Agreement is binding upon it and enforceable in accordance with its terms;

(d)    it has not, sold, transferred, assigned or otherwise disposed of any of the Deka Creditor Claims or the Claims, as the case may be;

(e)    it has the full right, power and authority to execute and perform the obligations contained in this Agreement;

(f)    is a sophisticated party and fully understands the subject matter of this Agreement;

(g)    has been represented and advised by legal counsel in connection with the terms and subject matter of this Agreement;

(h)    has adequate information concerning the matters that are the subject of this Agreement; and

(i)    save as provided in clause 11.3 below, it has independently and without reliance upon any statement of any other Party, the Joint Liquidators, advisors, officers, employees, agents and/or representatives of any Party, decided voluntarily to enter into this Agreement.

11.2    DekaBank and the Deka Funds warrant that in relation to the GMSLA and the SLT Agreement, they transacted only on their own behalf, and that no other funds, entities for which DekaBank acts as agent, management company and/or representative, or any Group Companies are party to, or enjoy any rights under, the GMSLA and/or the SLT Agreement.

**11.3** The Parties shall repeat the warranty and representation set out at clause 11.1(d) above as at the Admission Date.

**11.4** Each of the Parties represent and warrant to each other that, to the best of their knowledge, information and belief having made due and careful enquiries:

    (a) the information they have provided to each other in relation to the GMSLA and the SLT Agreement is accurate; and

    (b) there is no other information relevant to the calculation of the amounts due under the GMSLA and the SLT Agreement which has not been provided to the other party.

## 12. INDEMNITY FOR BREACH OF REPRESENTATIONS AND WARRANTIES

DekaBank and the Deka Funds undertake to LBL that if LBL or any of its Joint Liquidators, and / or any officers, agents, advisors or employees of LBL incurs any liability, damages, cost, loss or expense (including, without limitation, legal fees, costs or expenses) (a **"LBL Loss"**) in respect of any breach of any representation, warranty or agreement contained in this Agreement, DekaBank and the Deka Funds shall indemnify LBL in respect of such LBL Loss, and shall pay to LBL on demand an amount equal to such LBL Loss, such LBL Loss to be calculated, at the election of LBL, at either the date of breach of the representation, warranty or agreement concerned, or at the date on which LBL submits a claim for such LBL Loss. The liability of DekaBank and each of the Deka Funds under this Agreement is strictly several, all joint liability is excluded.

## 13. LIABILITY OF THE JOINT LIQUIDATORS

**13.1** The Joint Liquidators sign this Agreement as agents for and on behalf of LBL and they shall not incur any personal liability in respect of any of the obligations undertaken by LBL under this Agreement or in respect of any failure by LBL to observe, perform or comply with any such obligations, or under or in relation to any arrangements or negotiations associated or related to this Agreement, or under any document or assurance made pursuant to this Agreement.

**13.2** The exclusion of liability set out in clause 13.1 above shall arise and continue notwithstanding the termination of the agency of the Joint Liquidators and shall operate as a waiver of any and all claims including, but not limited to, claims in tort,

equity and common law as well as under the laws of contract and under the
Luxembourg Civil Code.

**14.    RIGHTS OF THIRD PARTIES**

14.1    Unless otherwise agreed, a person or entity that is not a Party to this Agreement
shall have no rights to enforce any of its terms.

14.2    Notwithstanding clause 14.1, DekaBank and the Deka Funds are entitled to assign at
any time all or any rights under this Agreement to any other Group Company without
the prior consent given by LBL and/or the Joint Liquidators. Such assignment shall be
binding on LBL and/or the Joint Liquidators provided in each case written notice of
such assignment is given to LBL.

14.3    The Parties further agree that upon the Admission Date, the Deka Creditors may
assign any of their rights in the Deka Creditor Claims to any third parties, provided in
each case prior written notice of such assignment has been given to LBL.

**15.    SEVERABILITY**

The illegality, invalidity or unenforceability of any provision of this Agreement shall
not affect the legality, validity or enforceability of any other provision. If any
provision of this Agreement is found to be void or unenforceable, that provision shall
be deemed to be deleted from this Agreement and the remaining provisions of this
Agreement shall continue in full force and effect and the Parties shall use their
respective reasonable endeavours to procure that any such provision is replaced by a
provision which is valid and enforceable, and which gives effect to the spirit and
intent of this Agreement.

**16.    COUNTERPARTS**

This Agreement may be executed in as many counterparts as there are Parties with a
distinct interest and all of such counterparts, taken together, shall be deemed to
constitute one and the same instrument.

**17.    COSTS**

For the avoidance of doubt, and save to the extent that any Party's costs are deemed to form a component of the Deka Debtor Amounts and / or the Deka Creditor Claims, as the case may be, each Party will bear its own legal and other costs arising out of and in relation to the Dispute and this Agreement.

**18.    VARIATIONS**

Any variation of this Agreement shall be in writing and signed by or on behalf of each Party.

**19.    FURTHER ASSURANCE**

Each Party shall (at its own expense) promptly execute and deliver all such documents and do all such things as may be required for the purpose of giving full effect to the provisions of this Agreement.

**20.    GOVERNING LAW AND JURISDICTION**

**20.1**    This Agreement (including any non-contractual obligations arising under or in connection with this Agreement) shall be governed by and construed in accordance with Luxembourg law in general and with the provisions of articles 2044 and following of the Luxembourg Civil Code (on settlements *("transactions")*) in particular.

**20.2**    Any dispute arising out of or in connection with or concerning the carrying into effect of this Agreement shall be subject to the exclusive jurisdiction of the courts of the District of Luxembourg (Luxembourg) and the Parties hereby irrevocably submit to the exclusive jurisdiction of the courts of Luxembourg for these purposes.

**21.    NOTICES**

**21.1**    All notices and documents under this Agreement shall be in writing, and shall be delivered to the following addresses:

(a)    in the case of LBL, to Lehman Brothers (Luxembourg) S.A. en liquidation, 29, Avenue Monterey / PO Box 320, L- 2013 Luxembourg-City (Grand-Duché de

Luxembourg) and jointliquidators@liquidation-lb.lu with a copy to Travers Smith LLP, 10 Snow Hill, London EC1A 2AL and caroline.edwards@traverssmith.com;

(b) in the case of the DekaBank, to DekaBank Deutsche Girozentrale, Mainzer Landstraße 16, 60325 Frankfurt am Main, Germany, email to Andreas.Binder@deka.de and Marcus.Ullrich@deka.de; and

(c) in the case of the Deka Funds, to Deka International S.A., 5, rue des Labours, L-1912 Luxemburg, email to Holger.Hildebrandt@deka.lu and Eugen.Lehnertz@deka.lu and for information purposes email to Andreas.Binder@deka.de and Marcus.Ullrich@deka.de and to International Fund Management S.A., 3, rue des Labours, L-1912 Luxemburg, email to Holger.Hildebrandt@deka.lu and Eugen.Lehnertz@deka.lu and for information purposes email to Andreas.Binder@deka.de and Marcus.Ullrich@deka.de.

21.2    A notice and / or document served under this Agreement upon LBL and /or the Deka Funds will be deemed delivered as follows:

(a) when delivered by courier before 4.30 p.m. CET on a Luxembourg Business Day, on the day of delivery, and if after 4.30 p.m. or on a day other than a Luxembourg Business Day, on the following Luxembourg Business Day; and

(b) when sent by email, if sent before 4.30 p.m. CET on a Luxembourg Business Day, on the day of delivery, and if sent after 4.30 p.m. CET or on a day other than a Luxembourg Business Day, on the following Luxembourg Business Day. In each case, and without limitation, a delivery receipt received by the sender shall be sufficient to evince the delivery of the email, and the time and date at which it was sent.

21.3    A notice and / or document served under this Agreement upon DekaBank will be deemed delivered as follows:

(a) when delivered by courier before 4.30 p.m. CET on a Hesse Business Day, on the day of delivery, and if after 4.30 p.m. or on a day other than a Hesse Business Day, on the following Hesse Business Day; and

(b)    when sent by email, if sent before 4.30 p.m. CET on a Hesse Business Day, on the day of delivery, and if sent after 4.30 p.m. CET or on a day other than a Hesse Business Day, on the following Hesse Business Day. In each case, and without limitation, a delivery receipt received by the sender shall be sufficient to evince the delivery of the email, and the time and date at which it was sent.

**22.    SERVICE OF PROCESS**

22.1    DekaBank and the Deka Funds appoint Maître Jackye Elombo, Rechtsanwältin, Wildgen, Partners in Law, 69, Bd. de la Pétrusse, L-2320 Luxembourg, and LBL appoints Maître Paulo Lopes Da Silva, Avocat à la Cour, at MOLITOR, 8, rue Sainte-Zithe, PO Box 690, L-2016 Luxembourg, to receive, on their behalf or for them, as the case may be, service of process in any proceedings in relation to this Agreement in Luxembourg and service of any notice under this Agreement.

22.2    Such service shall be deemed completed on delivery to the individuals named in clause 22.1 above (whether or not it is forwarded to and received by DekaBank, the Deka Funds, or LBL, as the case may be). If for any reason such individuals cease to be able to act as such or no longer have an address in Luxembourg, DekaBank, the Deka Funds, or LBL, as the case may be, agree to appoint a substitute process agent acceptable to LBL, or DekaBank or the Deka Funds, as the case may be, and shall immediately notify the other Parties to this Agreement of such appointment.

**EXECUTED** by the Parties in as many counterparts as there are Parties with a distinct interest, each party acknowledging good receipt of its own counterpart.

**SIGNED on the day above written** by **Lehman Brothers (Luxembourg) S.A. (in liquidation),**
acting through its Joint Liquidators

_____

Jacques DELVAUX, Joint Liquidator

_____

Laurent FISCH, Joint Liquidator

**SIGNED by Jacques DELVAUX**

**SIGNED by Laurent FISCH**

_____

Jacques DELVAUX, as Joint Liquidator of
**Lehman Brothers (Luxembourg) S.A. (in
liquidation)**

_____

Laurent FISCH, as Joint Liquidator of **Lehman
Brothers (Luxembourg) S.A. (in liquidation)**

**SIGNED on the day above written** by **DekaBank Deutsche Girozentrale** acting through and
represented by

_____

_____

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as
management company of the fund DEKA-EUROSTOCKS represented by

_____

_____

SIGNED on the day above written by **Lehman Brothers (Luxembourg) S.A. (in liquidation),**
acting through its Joint Liquidators

| | |
|---|---|
| _____ | _____ |
| Jacques DELVAUX, Joint Liquidator | Laurent FISCH, Joint Liquidator |
| **SIGNED** by **Jacques DELVAUX** | **SIGNED** by **Laurent FISCH** |
| _____ | _____ |
| Jacques DELVAUX, as Joint Liquidator of Lehman Brothers (Luxembourg) S.A. (in liquidation) | Laurent FISCH, as Joint Liquidator of **Lehman Brothers (Luxembourg) S.A. (in liquidation)** |

SIGNED on the day above written by **DekaBank Deutsche Girozentrale** acting through and
represented by

_____        _____
Stefan Hochmeister                         Elisabeth Roegele
Head of Markets                              Chefsyndikus

SIGNED on the day above written by **Deka International S.A.** acting in its capacity as
management company of the fund DEKA-EUROSTOCKS represented by

_____        _____
**Holger Hildebrandt**                       **Eugen Lehnertz**
**Managing Director**                       **Managing Director**

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as management company of the fund DEKALUX-MIDCAP represented by

|  |  |
|---|---|
| **Holger Hildebrandt**<br>**Managing Director** | **Eugen Lehnertz**<br>**Managing Director** |

**SIGNED on the day above written** by **International Fund Management S.A.** acting in its capacity as management company of the fund IFM-INVEST: VERMÖGENSMANAGMENT AKTIEN (former IFM-INVEST: AKTIEN GLOBAL) represented by

|  |  |
|---|---|
| **Holger Hildebrandt**<br>**Managing Director** | **Eugen Lehnertz**<br>**Managing Director** |

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as management company of the fund DEKALUX-EUROPA represented by

|  |  |
|---|---|
| **Holger Hildebrandt**<br>**Managing Director** | **Eugen Lehnertz**<br>**Managing Director** |

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as management company of the fund DEKA-NACHHALTIGKEIT AKTIEN (legal successor of DEKALUX-GLOBALVALUE by means of a merger effective as of 30 November 2012)


Holger Hildebrandt
Managing Director

Eugen Lehnertz
Managing Director

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as management company of the fund DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND (former SWISS VERMÖGENSMANAGEMENT AKTIEN EUROLAND) represented by


Holger Hildebrandt
Managing Director

Eugen Lehnertz
Managing Director

**SIGNED on the day above written** by **Deka International S.A.** acting in its capacity as management company of the fund DEKA-EUROPAVALUE represented by


Holger Hildebrandt
Managing Director

Eugen Lehnertz
Managing Director

**SIGNED on the day above written** by **International Fund Management S.A.** acting in its capacity as management company of the fund IFM-INVEST: AKTIEN EUROPA represented by

| | |
|---|---|
| **Holger Hildebrandt**<br>**Managing Director** | **Eugen Lehnertz**<br>**Managing Director** |

**ANNEX 1**

**The Deka Funds**

| | | |
|---|---|---|
| 1. | Deka International S.A. on behalf of | DEKA-EUROSTOCKS |
| 2. | Deka International S.A. on behalf of | DEKALUX-MIDCAP |
| 3. | International Fund Management S.A. on behalf of | IFM-INVEST: VERMÖGENSMANAGEMENT AKTIEN (former IFM-INVEST: AKTIEN GLOBAL) |
| 4. | Deka International S.A. on behalf of | DEKALUX-EUROPA |
| 5. | Deka International S.A. on behalf of | DEKA-NACHHALTIGKEIT AKTIEN (legal successor of DEKALUX-GLOBALVALUE) |
| 6. | Deka International S.A. on behalf of | DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND (former SWISS VERMÖGENSMANAGEMENT AKTIEN EUROLAND) |
| 7. | Deka International S.A. on behalf of | DEKA-EUROPAVALUE |
| 8. | International Fund Management S.A. on behalf of | IFM-INVEST: AKTIEN EUROPA |

**ANNEX 2**

**The Deka Creditors**

| Deka Creditor | Deka Creditor Amount |
|---|---|
| DEKA-EUROSTOCKS | EUR  34.267.336,40 |
| DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND | EUR      201.411,52 |
| DEKA-EUROPAVALUE | EUR   4.728.885,06 |

**ANNEX 3**

**The Deka Debtors**

| Deka Debtor | Deka Debtor Claim |
|---|---|
| DekaBank | EUR  15.370.899,03 |
| DEKALUX-MIDCAP | EUR        15.395,03 |
| IFM-INVEST:     VERMÖGENSMANAGEMENT AKTIEN | EUR        422.310,13 |
| DEKALUX-EUROPA | EUR     5.396.075,32 |
| DEKA-NACHHALTIGKEIT AKTIEN | EUR        281,91 |
| IFM-INVEST: AKTIEN EUROPA | EUR     4.416.272,10 |

**ANNEX 4**

**STANDSTILL AGREEMENT**

**THIS AGREEMENT** is made on 8 September 2014.

**BETWEEN:**

(1)     **LEHMAN BROTHERS (LUXEMBOURG) S.A. (in judicial liquidation)**, a company incorporated in Luxembourg, registered at the Register of Commerce and Companies (RCS) under number B 39564 whose registered office is 29, Avenue Monterey, L-1325 Luxembourg, being dissolved and wound up pursuant to a judgment issued on 1st April 2009 by the District Court of Luxembourg sitting in commercial matters, acting and represented by its judicial liquidators Jacques DELVAUX and Laurent FISCH (**"LBL"**);

(2)     **DEKABANK DEUTSCHE GIROZENTRALE**, a company incorporated in the Federal Republic of Germany, registered at the register of the Lower Regional Court of Frankfurt am Main under number HRA 16068, whose registered office is located at Mainzer Landstraße 16, 60325 Frankfurt am Main, Germany (**"DekaBank"**), acting on its own behalf;

(3)     **DEKA INTERNATIONAL S.A.** and **INTERNATIONAL FUND MANAGEMENT S.A.**, each acting in their capacity as management company of the respective funds and entities listed in Annex 1 to this Agreement (such entities being the **"Deka Funds"**);

(each being a **"Party"**, and together being the **"Parties"**).

**IN PRESENCE OF:**

(4)     **LEHMAN BROTHERS HOLDINGS INC.**, a corporation incorporated under the laws of the state of Delaware, registered with the Secretary of State of the State of Delaware and whose registered office is situated at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, United States of America.

**WHEREAS:**

(A)     DekaBank, acting on its own behalf and as agent on behalf of the Deka Funds, entered into certain securities lending transactions with LBL under a Global Master Securities Lending Agreement dated 28 March 2006 and as amended on 19 February 2008 (date of agreement) / 20 February 2008 (signing date) (the **"GMSLA"**).

(B)     On 1 April 2008 (date of agreement) / 6 April 2008 (signing date), DekaBank, in its capacity as agent for the Deka Funds, entered into a Securities Lending Transaction on a Basket of

1



Ordinary Shares (the **"SLT Agreement"**). It is alleged on behalf of the Deka Funds that amounts are payable to them by LBL under the SLT Agreement.

(C)     By a notice dated 16 September 2008, DekaBank, acting in its own capacity and on behalf of the Deka Funds, designated an Event of Default under the GMSLA and the Parties' respective obligations under the GMSLA were accelerated so as to require performance thereof at the time of the Event of Default. Pursuant to the GMSLA an account shall be taken, as at the time of the Event of Default, of the amounts due to and from LBL from and to each of DekaBank and the Deka Funds, with the net amount, representing the difference between the amounts payable to each other, payable by the Party owing the greater sum to the Party owing the lesser sum.

(D)     On 1 April 2009, LBL entered into liquidation, with the appointment of the Joint Liquidators by order of the Luxembourg court made on that day.

(E)     On or around 31 July 2009, DekaBank and the Deka Funds submitted proofs of claim to LBL's liquidation in respect of the amounts DekaBank and the Deka Funds claimed were owed to them under the GMSLA and the SLT Agreement (each an **"Original Proof of Claim"**).

(F)     On 21 March 2014 DekaBank and the Deka Funds amended the Original Proof of Claims following discussions between the Parties in respect of set-off under the GMSLA (each an **"Amended Proof of Claim"**).

(G)     The Parties are in disagreement in relation to a number of aspects of the Amended Proof of Claims and in respect of amounts owed by DekaBank and certain of the Deka Funds to LBL. In particular, (but without limitation) there are disagreements between the Parties as to the amount of legal fees claimed, the manufactured dividends payable under the GMSLA, the fees payable under the SLT Agreement and the valuation of certain securities (the **"Dispute"**).

(H)     The Parties are taking part in settlement discussions in order to attempt to avoid the time and irrecoverable expense that would be incurred if the Dispute proceeded to litigation. This Agreement is entered into in order that the Parties may continue to explore whether it is possible to settle the Dispute without recourse to legal proceedings, while seeking to preserve all of their respective legal rights concerning the Dispute and in order to make provision for the suspension of any applicable limitation periods, statutes of limitation,

2

statutes of repose or other time-based limitation (together **"Limitation Periods"**) for the Standstill Period (as defined below).

**IT IS AGREED AS FOLLOWS:**

1.    In this Agreement, words in the singular shall include the plural and vice versa, and the following words shall have the following meanings:

| | |
|---|---|
| **Business Day** | means any day (excluding Saturdays, Sundays and bank or public holiday) on which banks in each of Hesse (Germany), London (United Kingdom) and Luxembourg are open for business. |
| **CET** | Central European Time |
| **Claims** | means any actual or potential claim, counterclaim, demand, complaint, right of set-off, right of contribution, right of indemnity, cause of action, or right or interest of any kind or nature whatsoever, whether in existence now or coming into existence at some time in the future, whether known or unknown, suspected or unsuspected, however and whenever arising, in whatever capacity or jurisdiction, whether or not within the contemplation of the Parties at the time of this Agreement, including claims which as a matter of law did not at the date of this Agreement exist and whose existence cannot currently be foreseen and any claims or rights of action arising from a subsequent change or clarification of the law, which LBL and / or the Joint Liquidators on the one hand and DekaBank and / or the Deka Funds on the other hand have or could have against each other arising out of or in connection with: |

    (a)   the GMSLA;

    (b)   the SLT Agreement;

    (c)   the Dispute; and/or

    (d)   the relationship between LBL and / or the Joint Liquidators on the one hand and DekaBank and / or the Deka Funds on the other hand up to and including the date of this Agreement.

| | |
|---|---|
| **Joint Liquidators** | means Jacques DELVAUX and Laurent FISCH, acting in their |

3

|  |  |
|---|---|
|  | capacity as the judicial liquidators of LBL, as appointed by the Luxembourg court on 1 April 2009. |
| **Limitation Defence** | Any defence or argument based on limitation, time bar, laches, delay, estoppel or other defence based on the passage of time. |
| **Standstill Period** | the period starting from and including the date of this Agreement to and including the Standstill Termination Date. |
| **Standstill Termination Date** | the earlier of: <br><br> (a) 1 March 2016; or <br><br> (b) the day falling 42 days after a Standstill Termination Notice is deemed served by one Party on each of the other Parties pursuant to clause 9 below. |
| **Standstill Termination Notice** | as defined in clause 9 below. |

2.  LBL will not commence any proceedings against DekaBank or any of the Deka Funds in relation to the Claims during the Standstill Period.

3.  DekaBank will not commence any proceedings against LBL in relation to the Claims during the Standstill Period.

4.  Each of the Deka Funds will not commence any proceedings against LBL in relation to the Claims during the Standstill Period.

5.  No account will be taken of the Standstill Period for the purposes of calculating any Limitation Period which is relevant to the Claims. Each Party agrees that it will not raise as a defence to any Claim, any Limitation Defence which relies upon time which elapsed during the Standstill Period. The Parties agree that the running of time, for the purposes of calculating any Limitation Period which is relevant to any Claim, will recommence on the first Business Day following the Standstill Termination Date.

6.  Each of the Parties acknowledges that the other Parties intend to forbear from commencing proceedings in respect of any Claims in consideration for, and in reliance upon, their entry into this Agreement. The Parties will not seek to argue that this Agreement is unsupported by any or any adequate consideration or is otherwise unenforceable.

7.  Except as set out in this Agreement, the rights, remedies and defences of each Party as at the date of this Agreement are expressly reserved in full. For the avoidance of any doubt, this

4



Agreement does not affect any defence of limitation available to any of the Parties at the date of this Agreement.

8.      Nothing in this Agreement will be construed as an admission of liability by any of the Parties to this Agreement. This Agreement will not be admissible as evidence in any legal proceedings except for the purpose of enforcing, proving a breach of or establishing, should it be contested, the existence and/or terms of, this Agreement.

9.      Any notice of termination of the Standstill Period (a **"Standstill Termination Notice"**) shall be in writing and shall be delivered by courier and by email:

    (a)     in the case of LBL, to [Lehman Brothers (Luxembourg) S.A. en liquidation, 29, Avenue Monterey / PO Box 320, L- 2013 Luxembourg-City (Grand-Duché de Luxembourg) and jointliquidators@liquidation-lb.lu ];

    (b)     in the case of the DekaBank, to DekaBank Deutsche Girozentrale, Mainzer Landstraße 16, 60325 Frankfurt am Main, Germany, email to Andreas.Binder@deka.de and Marcus.Ullrich@deka.de; and

    (c)     in the case of the Deka Funds, to Deka International S.A., 5, rue des Labours, L-1912 Luxemburg, email to Holger.Hildebrandt@deka.lu and Eugen.Lehnertz@deka.lu and to International Fund Management S.A., 3, rue des Labours, L-1912 Luxemburg, email to Holger.Hildebrandt@deka.lu and Eugen.Lehnertz@deka.lu.

Any Standstill Termination Notice shall be effective only when it has been delivered both by email and by courier, and shall take effect immediately upon the later of its deemed delivery by email and its deemed delivery by courier.

Any Standstill Termination Notice shall be deemed delivered as follows:

    (a)     when delivered by courier before 4.30 p.m. CET on a Business Day, on the day of delivery, and if after 4.30 p.m. or on a day other than a Business Day, on the following Business Day; and

    (b)     when sent by email, if sent before 4.30 p.m. CET on a Business Day, on the day of delivery, and if sent after 4.30 p.m. CET or on a day other than a Business Day, on the following Business Day. In each case, and without limitation, a delivery receipt received by the sender shall be sufficient to evince the delivery of the email, and the time and date at which it was sent.

9.1     The Parties and their professional advisers shall keep confidential and not disclose or use any information received or obtained as a result of entering into or performing this Agreement which relates to:

    **9.1.1**     the existence and/or terms of this Agreement; and/or

    **9.1.2**     the negotiations relating to this Agreement.



**9.2**     Clause 9.1 above shall not prohibit disclosure or use of any information if and to the extent:

    **9.2.1**     the disclosure is made to the Parties' auditors, insurers and/or lawyers on terms which preserve confidentiality;

    **9.2.2**     the disclosure is made to LBL's declared creditors, including but not limited to LBHI Estates Ltd;

    **9.2.3**     the disclosure is made within court proceedings in Luxembourg, the United States of America or abroad being directly or indirectly linked to the settlement of the Dispute and/or the settlement of mutual claims between the Parties under this Agreement;

    **9.2.4**     the disclosure or use is required pursuant to a legal or regulatory obligation, provided that prior to any such disclosure or use of any information, notice is given (to the extent legally possible) by the disclosing Party to the other Parties, of the disclosure, and the nature and extent of the disclosure; and/or

    **9.2.5**     the other Parties to the Agreement have agreed to such disclosure.

**9.3**     The Parties consent to the disclosure of the existence and/or terms of this Agreement and the negotiations relating to this Agreement to:

    **9.3.1**     each of (1) LBL's Supervisory Judge, (2) the Public Prosecutor and (3) the Luxembourg Court for the purpose of obtaining approval of this Agreement;

    **9.3.2**     the Luxembourg Court or the Court of any other jurisdiction for the purpose of any proceedings or any other legal proceedings to which this Agreement may be relevant;

    **9.3.3**     the Luxembourg tax authorities;

    **9.3.4**     LBL's declared creditors;

    **9.3.5**     any legal or other advisers of LBL and/or the Joint Liquidators and/or the auditors of LBL;

    **9.3.6**     any subsequent liquidator of LBL;

    **9.3.7**     any other officeholder of LBL;



6

9.3.8    any party as required by law or any court of competent jurisdiction or as required by the rules and regulations of any regulatory or government body;

9.3.9    any person for the purpose of the exercise by the Joint Liquidators of their powers and duties as Joint Liquidators of LBL.

10.    The Parties each warrant that the individuals signing this Agreement on their behalf are fully authorised to do so and have power legally to bind the entity on whose behalf they are signing this Agreement.

11.    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter, existence, negotiation, validity, termination or enforceability (including non-contractual disputes or claims) shall be governed by and construed in accordance with English law.

12.    The Parties agree that the Courts of England and Wales shall have exclusive jurisdiction in relation to any disputes arising out of or in connection with this Agreement, including non-contractual disputes or claims.

13.    This Agreement may be executed in one or more counterparts by one or more of the Parties and such counterparts shall together constitute one Agreement. Faxed signatures and/or scanned signatures sent by email shall be deemed the same as original signatures and shall be considered legal and binding for the purposes of this Agreement.

SIGNED by Jacques DELVAUX                    SIGNED by Laurent FISCH

_____                    _____

Jacques DELVAUX, as Joint Liquidator of   Laurent FISCH, as Joint Liquidator of **Lehman**
**Lehman Brothers (Luxembourg) S.A. (in**  **Brothers (Luxembourg) S.A. (in liquidation)**
**liquidation)**

SIGNED by **DekaBank Deutsche Girozentrale** acting through and represented by

_____                    _____

[...]

7

**SIGNED** by **DekaBank Deutsche Girozentrale** acting through and represented by

Andreas Binder
Senior Legal Counsel

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKA-EUROSTOCKS represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKALUX-MIDCAP represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **International Fund Management S.A.** acting in its capacity as management company
of the fund IFM-INVEST: VERMÖGENSMANAGMENT AKTIEN (former IFM-INVEST:
AKTIEN GLOBAL) represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKALUX-EUROPA represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka** International S.A. acting in its capacity as management company of the fund DEKA-NACHHALTIGKEIT AKTIEN (legal successor of DEKALUX-GLOBALVALUE by means of a merger effective as of 30 November 2012)

_____
**Eugen Lehnertz**

_____
**Holger Hildebrandt**

**SIGNED** by **Deka** International S.A. acting in its capacity as management company of the fund DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND (former SWISS VERMÖGENSMANAGEMENT AKTIEN EUROLAND) represented by

_____
**Eugen Lehnertz**

_____
**Holger Hildebrandt**

**SIGNED** by **Deka** International S.A. acting in its capacity as management company of the fund DEKA-EUROPAVALU: presented by

_____
**Eugen Lehnertz**

_____
**Holger Hildebrandt**

**SIGNED** by **International Fund Management S.A.** acting in its capacity as management company of the fund IFM-INVEST: AKTIEN EUROPA represented by

_____
**Eugen Lehnertz**

_____
**Holger Hildebrandt**

IN PRESENCE OF LEHMAN BROTHERS HOLDINGS INC. ("LBHI"), WHICH ACKNOWLEDGES THE PRESENT AGREEMENT, AND IN CONNECTION WITH SUCH ACKNOWLEDGMENT, AGREES, AS DOES DEKABANK (AS DEFINED IN THE PRESENT AGREEMENT) AND THE DEKA FUNDS (AS DEFINED IN THE PRESENT AGREEMENT), THAT (I) NOTHING IN THE PRESENT AGREEMENT WAIVES, MODIFIES, DISCHARGES, OR OTHERWISE AFFECTS THE RESPECTIVE RIGHTS AND OBLIGATIONS, IF ANY, OF LBHI, DEKABANK, AND THE DEKA FUNDS UNDER THE TERMS OF THE GUARANTEE DATED AUGUST 31, 2006 IN FAVOR OF DEKABANK AND THE GUARANTEE DATED MARCH 4, 2004 IN FAVOR OF DEKABANK (TOGETHER, THE "GUARANTEES"), (II) LBHI'S, DEKABANK'S, AND THE DEKA FUNDS'S RESPECTIVE RIGHTS TO OBJECT TO, CLASSIFY, PROSECUTE, OR DEFEND ANY CLAIMS ARISING OUT OF OR RELATING TO THE GUARANTEES ON ANY BASIS ARE PRESERVED, AND (III) LBHI'S ACKNOWLEDGMENT OF THE PRESENT AGREEMENT SHALL NOT CONSTITUTE ANY ADMISSION OR FINDING WITH RESPECT TO THE TERMS SET FORTH IN THE PRESENT AGREEMENT.

SIGNED by **Lehman Brothers Holdings Inc.** represented by

_____          _____
[NAME/TITLE]                      [NAME/TITLE]

SIGNED by **DekaBank Deutsche Girozentrale** acting through and represented by

_____          _____
                                  [...]

SIGNED by **Deka International S.A.** acting in its capacity as management company of the fund DEKA-EUROSTOCKS represented by

_____          _____
                                  [...]

10

**SIGNED** by **DekaBank Deutsche Girozentrale** acting through and represented by

Andreas Binder
Senior Legal Counsel

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund DEKA-EUROSTOCKS represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund DEKALUX-MIDCAP represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **International Fund Management S.A.** acting in its capacity as management company of the fund IFM-INVEST: VERMÖGENSMANAGMENT AKTIEN (former IFM-INVEST: AKTIEN GLOBAL) represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund DEKALUX-EUROPA represented by

Eugen Lehnertz

Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKA-NACHHALTIGKEIT AKTIEN (legal successor of DEKALUX-GLOBALVALUE by means
of a merger effective as of 30 November 2012)

_(signature)_                                              _(signature)_

_____                                  _____
Eugen Lehnertz                                            Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND (former SWISS
VERMÖGENSMANAGEMENT AKTIEN EUROLAND) represented by

_(signature)_                                              _(signature)_

_____                                  _____
Eugen Lehnertz                                            Holger Hildebrandt

**SIGNED** by **Deka International S.A.** acting in its capacity as management company of the fund
DEKA-EUROPAVALUE represented by

_(signature)_                                              _(signature)_

_____                                  _____
Eugen Lehnertz                                            Holger Hildebrandt

**SIGNED** by **International Fund Management S.A.** acting in its capacity as management company
of the fund IFM-INVEST: AKTIEN EUROPA represented by

_(signature)_                                              _(signature)_

_____                                  _____
Eugen Lehnertz

Holger Hildebrandt

**Schedule 1**

| 1. | Deka International S.A. on behalf of | DEKA-EUROSTOCKS |
|---|---|---|
| 2. | Deka International S.A. on behalf of | DEKALUX-MIDCAP |
| 3. | International Fund Management S.A. on behalf of | IFM-INVEST: VERMÖGENSMANAGEMENT AKTIEN (former IFM-INVEST: AKTIEN GLOBAL) |
| 4. | Deka International S.A. on behalf of | DEKALUX-EUROPA |
| 5. | Deka International S.A. on behalf of | DEKA-NACHHALTIGKEIT AKTIEN (legal successor of DEKALUX-GLOBALVALUE) |
| 6. | Deka International S.A. on behalf of | DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND (former SWISS VERMÖGENSMANAGEMENT AKTIEN EUROLAND) |
| 7. | Deka International S.A. on behalf of | DEKA-EUROPAVALUE |
| 8. | International Fund Management S.A. on behalf of | IFM-INVEST: AKTIEN EUROPA |

13

**EXHIBIT B**

**LEHMAN BROTHERS (Luxembourg) S.A. (en liquidation judiciaire)**

Siège social: L-2163 Luxembourg, 29, avenue Monterey

RCS Luxembourg n°B39564

Dissoute et mise en liquidation par un jugement n°451/09 rendu en date du 1ᵉʳ avril 2009 par le Tribunal

d'arrondissement de et à Luxembourg siégeant en matière commercial tel que modifié

-----

### PROCES VERBAL D'ADMISSION,

concernant des créances chirographaires à déclarer admissibles produites par

DekaBank Deutsche Girozentrale, International Fund Management S.A. et Deka

International S.A.,

L'an deux mille quinze, le $2\,2$                    avril

Les soussignés, **Jacques DELVAUX**, avocat à la Cour, demeurant professionnellement à L-1930 LUXEMBOURG, 2, rue de la Chapelle et **Laurent FISCH**, avocat à la Cour, demeurant professionnellement à L-1610 Luxembourg, 36, Avenue de la Gare et agissant en leur qualité de liquidateurs judiciaires de la société anonyme dénommée **LEHMAN BROTHERS (LUXEMBOURG) S.A. en liquidation judiciaire**, ayant eu son siège social à L-1371 LUXEMBOURG, 7, Val Sainte Croix, et établie et ayant actuellement son siège social à L-2163 LUXEMBOURG, 29, Avenue Monterey, immatriculée au registre de commerce et des sociétés de Luxembourg sous le numéro B 39564, dissoute et mise en liquidation par un jugement n°451/09 rendu en date du 1ᵉʳ avril 2009 par le Tribunal d'arrondissement de et à Luxembourg siégeant en matière commerciale («**LBLux**»), nommés à cette fonction par ledit jugement en date du 1ᵉʳ avril 2009, ensemble avec Monsieur le Juge Commissaire, également soussigné,

Sur les créances numéro 29 à 37 les créances chirographaires ci-après spécifiées et totalisant EUR 39.197.632,98 comme suit :

| N° | Deka Creditor | Deka Creditor Amount |
|---|---|---|
| Créance 37 | DEKA-EUROSTOCKS | EUR 34.267.336,40 |
| Créance 31 | DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND | EUR 201.411,52 |
| Créance 29 | DEKA–EUROPAVALUE | EUR 4.728.885,06 |
| **TOTAL** | | **EUR 39.197.632,98** |

En exécution du jugement de mise en liquidation du premier avril 2009 tel que modifié,



Ont constaté que la liste numéro 3 renseignant les trois créances chirographaires ci-avant spécifiées déclarées admissibles ont été déposées au Greffe du Tribunal d'Arrondissement de et à Luxembourg, siégeant en matière commerciale, 2ème chambre du 1er au 10 avril 2015,

Qu'aucun contredit n'a été formé contre les créances renseignées sur la prédite liste numéro 3,

Qu'en conséquence les 3 créances déclarées admissibles et non contredites portées sur la dite liste numéro 3 sont définitivement admises au passif de la liquidation de la société anonyme Lehman Brothers (Luxembourg) S.A. prédésignée,

De tout ce qui précède il a été dressé le présent procès-verbal qui a été signé par les liquidateurs prédésignés et par Monsieur le Juge Commissaire,

Date qu'en tête des présentes.

Jacques DELVAUX                    Laurent FISCH                    Jean-Paul       HOFFMANN

**LEHMAN BROTHERS (Luxembourg) S.A. (in liquidation)**
Registered office: L-2163 Luxembourg, 29, avenue Monterey
RCS Luxembourg No. B39564
Dissolved and in liquidation by judgment No. 451/09 as amended, rendered on April 1, 2009 by
District Court of and in Luxembourg sitting in commercial matters

-----

**RECORD OF ADMISSION,**

concerning unsecured debts declared admissible of DekaBank Deutsche Girozentrale,
International Fund Management S.A. and Deka International S.A.,

**Two thousand and fifteen,   April** [handwritten: 22]

The undersigned, **Jacques DELVAUX**, Attorney at Law, with professional offices at L-1930
Luxembourg, 2, rue de la Chapelle and **Laurent FISCH**, Attorney at Law, with professional
offices at L-1610 Luxembourg, 36, Avenue de la Gare and acting in their capacity as liquidators
of the public company referred to as **LEHMAN BROTHERS (LUXEMBOURG) S.A. in
liquidation**, with previous registered office at L-1371 LUXEMBOURG, 7, Val Sainte Croix,
and current registered office at L-2163 Luxembourg, 29, avenue Monterey, registered with the
Commerce and Companies Register of Luxembourg under number B 39564, dissolved and
liquidated by judgment No. 451/09 rendered on April 1, 2009 by the District Court of and in
Luxembourg sitting as commercial matters ("**LBLux**"), appointed to this function by said
judgment dated April 1, 2009, along with Bankrupcy Judge, also undersigned,

On debts numbered 29 and 37 specified unsecured debts below totaling EUR 39,197,632.98 as
follows:

| No. | Deka Creditor | Deka Creditor Amount |
|---|---|---|
| Debt 37 | DEKA-EUROSTOCKS | EUR 34,267,336.40 |
| Debt 31 | DEKA PRIVATE BANKING PORTFOLIO AKTIEN EUROLAND | EUR 201,411.52 |
| Debt 29 | DEKA-EUROPAVALUE | EUR 4,728,885.06 |
| **TOTAL** | | **EUR 39.197.632.98** |

In execution of the liquidation judgment of April 1, 2009 as amended,

[initials]

Note that list number 3 indicating the three specified unsecured debts above declared admissible were filed with the Registrar of the District Court of and in Luxembourg, sitting in commercial matters, 2nd chamber April 1st and 10, 2015,

There is no doubt of the debts indicated on list number 3 above,

Accordingly the 3 debts declared admissible and non-contested on said list number 3 are definitively admitted to the list of liabilities in the liquidation of the public company Lehman Brothers (Luxembourg) S.A. referred to above,

Based on the preceding, this report was drawn up and signed by the liquidators referred to above and by the Bankruptcy Judge,

Dated as at the beginning of this document.

[signature]                    [signature]                    [signature]
Jaques DELVAUX          Laurent FISCH              John Paul HOFFMANN

**<u>EXHIBIT C</u>**

## CERTIFICAT DE NON-APPEL ET DE NON-OPPOSITION

Vu le certificat de non-appel et non-opposition délivré le 28 avril 2015 par Maître Paulo LOPES DA SILVA, Avocat à la Cour, demeurant à Luxembourg, constitué pour :

1.    **Maître Jacques DELVAUX**, avocat à la Cour, demeurant professionnellement à L-1325 LUXEMBOURG, 2, rue de la Chapelle ;

2.    **Maître Laurent FISCH**, avocat à la Cour, demeurant professionnellement à L-1950 LUXEMBOURG, 14, rue Auguste Lumière;

les deux agissant en leur qualité de liquidateurs judiciaires et pour autant que de besoin comme représentants de la masse des créanciers de **la société anonyme LEHMAN BROTHERS (LUXEMBOURG) S.A. en liquidation judiciaire**, ayant eu son siège social à L-1371 LUXEMBOURG, 7, Val Sainte Croix, établie et ayant actuellement son siège social à L-1325 LUXEMBOURG, 2, rue de la Chapelle, immatriculée au registre de commerce et des sociétés de Luxembourg sous le numéro B 39564, dissoute et mise en liquidation par un jugement n° 451/09 rendu en date du 1$^{er}$ avril 2009 par le Tribunal d'arrondissement de et à Luxembourg siégeant en matière commerciale, agissant et représentée par ses liquidateurs Maître Jacques DELVAUX et Maître Laurent FISCH nommés par ledit jugement ;

constatant qu'à sa connaissance, il n'y a ni acte d'opposition, ni acte d'appel,

contre le jugement commercial II n°510/2015 rendu par Monsieur Jean-Paul HOFFMANN, premier vice-président du Tribunal d'arrondissement de et à Luxembourg, en date du 13 mars 2015, entre la partie demanderesse préqualifiée, et les parties défenderesses :

1.    **Monsieur le Procureur d'Etat près le Tribunal d'arrondissement de et à Luxembourg,** Cité Judiciaire, Plateau du Saint-Esprit, Luxembourg ;

2.    **la société DEKABANK DEUTSCHE GIROZENTRALE**, établie et ayant son siège social en Allemagne à D-60325 FRANKFURT-AM-MAIN, Landstrasse 16, immatriculée au « *Amtsgericht* » de Francfort sous le numéro HRA 16068, représentée par à ses organes légaux et statutaires actuellement en fonction ;

3.    **la société anonyme DEKA INTERNATIONAL S.A.**, établie et ayant son siège social à L-1912 LUXEMBOURG, 5, rue des Labours, immatriculée au registre de commerce et des sociétés de Luxembourg sous le numéro B 28.599, représentée par son conseil d'administration actuellement en fonction,

4.    **la société anonyme INTERNATIONAL FUND MANAGEMENT S.A.**, établie et ayant son siège social à L-1912 LUXEMBOURG, 3, rue des Labours, immatriculée au registre de commerce et des sociétés de Luxembourg sous le numéro B 8.558, représentée par son conseil d'administration actuellement en fonction,

5.    **la société anonyme LEHMAN BROTHERS (LUXEMBOURG) S.A. en liquidation judiciaire**, ayant eu son siège social à L-1371 LUXEMBOURG, 7, Val Sainte Croix, établie et ayant actuellement son siège social à L-2163 LUXEMBOURG, 29, avenue Monterey, représentée pour les besoins de la présente procédure par son conseil d'administration,

et pour autant que de besoin par ses liquidateurs judiciaires préqualifiés ;

signifié en date du 22 avril 2015 par Monsieur l'Huissier de Justice suppléant Cathérine NILLES en remplacement de Monsieur l'Huissier de Justice Patrick KURDYBAN ;

Je soussigné                                  , Greffier en chef près du Tribunal d'arrondissement de et à Luxembourg

Certifie qu'il n'existe au greffe du Tribunal d'arrondissement de et à Luxembourg, aucune déclaration d'opposition, ni d'acte d'appel contre ledit jugement.

Luxembourg, le    1 8 JUIN 2015

Pour Monsieur le greffier en chef
Georges BIGELBACH, empêché,
le greffier
Gilles FABER



## CERTIFICATE OF NON-APPEAL AND NO OBJECTION

Given the certificate of non-appeal and no objection issued April 28, 2015 by Mr. Paulo LOPES DA SILVA, Attorney, residing in Luxembourg, for:

1.    **Mr. Jacques DELVAUX**, Attorney at Law, professional offices at L-1325 LUXEMBOURG, 2, rue de la Chapelle;

2.    **Mr. Laurent FISCH**, Attorney at Law, professional offices at L-1950 LUXEMBOURG, 14, rue Auguste Lumière;

both acting in their capacity as liquidators and as necessary as representatives of the creditors of **LEHMAN BROTHERS (LUXEMBOURG) S.A. in liquidation**, with previous registered office at L-1371 LUXEMBOURG, 7, Val Sainte Croix, and current registered office at L-1325 Luxembourg, 2, rue de la Chapelle, registered with the Luxembourg Commerce and Companies Register under number B 39564, dissolved and liquidated by judgment No. 451/09 dated April 1, 2009 by the District Court of and in Luxembourg sitting in commercial matters, acting and represented by its liquidators Mr. Jacques DELVAUX and Mr. Laurent FISCH appointed by said judgment;

noting that to his knowledge, there is no notice of opposition or notice of appeal

against the business judgment No. 510/2015 rendered by Mr. Jean-Paul HOFFMANN, senior vice president of the District Court of and in Luxembourg, dated of March 13, 2015, between prequalified plaintiff and the defendants:

1.    **State Prosecutor at the District Court of and in Luxembourg**, Cité, Plateau du Saint-Esprit, Luxembourg;

2.    **DEKABANK DEUTSCHE GIROZENTRALE**, with registered office in Germany at D-60325 FRANKFURT-AM-MAIN, Landstrasse 16, registered with the *"Amtsgericht"* of Frankfurt under the HRA number 16068, represented by its legal and statutory bodies currently in operation;

3.    **public company DEKA INTERNATIONAL S.A.,** having its registered office at L-1912 Luxembourg, 5, rue des Labours, registered with the Commerce and Companies Register of Luxembourg under number B 28.599, represented by its board of directors currently in office,

4.    **public company INTERNATIONAL FUND MANAGEMENT S.A.,** with registered office at L-1912 Luxembourg, 3, rue des Labours, registered with the Commerce and Companies Register of Luxembourg under number B 8.558, represented by its board of directors currently in office,

5.      **public company Lehman Brothers (Luxembourg) S.A. in liquidation**, with registered office at L-1371 LUXEMBOURG, 7, Val Sainte Croix, with registered office currently located at L-2163 LUXEMBOURG, 29, avenue Monterey, represented for the purposes of these proceedings by its board of directors,

      and as necessary by its prequalified liquidators;

issued on April 22, 2015 by Deputy Court Bailiff Catherine NILLES replacing Court Bailiff Patrick KURDYBAN;

I, the undersigned,                Chief Registrar of the District Court of and in Luxembourg

Certify that there is no statement of objections or notice of appeal against said judgment at the registrar of the District Court of and in Luxembourg.

Luxembourg, [stamp:] [l8 June 2015]

For Chief Registrar
George BIGELBACH, in his absence
registrar
Gilles FABER

[seal: DISTRICT COURT – OF LUXEMBOURG]

[stamp: FABER]
[signature]