Hearing Date and Time: October 8, 2015 at 10:00 a.m. (ET)
Response Deadline: October 1, 2015 at 4:00 p.m. (ET)

MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 506-2500
Fax (212) 262-1910
Howard S. Beltzer, Esq.
Christine A. Walsh, Esq.

*COUNSEL TO BNP PARIBAS*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, ) | |
| ) | Case No. 08-13555 (SCC) |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |

**RESPONSE OF BNP PARIBAS TO FIVE HUNDRED EIGHTH OMNIBUS OBJECTION TO CLAIMS (DISPUTED VALUATION CLAIMS)**

**TO:    THE HONORABLE JUDGE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:**

BNP Paribas ("BNPP"), through its undersigned counsel, hereby responds to the Five Hundred Eighth Omnibus Objection to Claims (Disputed Valuation Claims), dated September 4, 2015 (the "Objection") filed by the Plan Administrator for Lehman Brothers Holdings Inc. ("LBHI") and affiliated debtors, as follows:

**FACTUAL BACKGROUND**

1.    As detailed in the Stipulation, Agreement and Order Regarding Certain Proofs of Claim Filed by BNP Paribas, approved by the Court on April 23, 2012 [Dkt. No. 27555] (the "Stipulation"), attached hereto as Exhibit A, BNPP filed several amendments to its proof of claim against LBHI. Such claim and related amendments were omnibus claims, encompassing

both primary and guarantee claims against LBHI on account of a variety of derivative and other transactions. Claim number 67938 is the subject of the Objection.

2.  The Objection focuses on (i) BNPP's asserted claim against LBHI on account of its guarantee, dated as of June 8, 1994 (the "Guarantee"), appended hereto as Exhibit B, of derivative transactions between BNPP and Lehman Brothers Finance S.A. ("LBF"), and (ii) the attorneys fee component of BNPP's claim against LBHI. Each of these matters is addressed below.

## RESPONSE

## LBHI GUARANTEE OF LBF CLAIM

3.  BNPP (f/k/a "Banque Paribas") and LBF were parties to a 1992 ISDA Master Agreement (Multicurrency-Cross Border), dated as of June 8, 1994, and entered into miscellaneous transactions thereunder. By notice dated September 15, 2008, BNPP designated September 15, 2008 as the Early Termination Date in respect of all such outstanding transactions. LBHI absolutely and unconditionally guaranteed all such obligations of LBF pursuant to the Guarantee, as well as the Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005. The claim was included in claim number 67938 in the amount of $114,236,241.14, plus additional unliquidated and contingent amounts.[1]

4.  BNPP duly and timely submitted derivative and guarantee questionnaires in respect of this claim, in accordance with the claims procedures adopted in these proceedings. BNPP provided a copy of the Statement under Section 6(d) of the ISDA Master Agreement, which sets forth the manner in which the claim was calculated, in connection with the derivative questionnaire.

---

[1] In its proof of claim, BNPP also set forth setoff rights in respect of a portion of this claim.

5. On January 14, 2013, BNPP received a letter dated January 10, 2013 (the "Determination Letter") from PricewaterhouseCoopers AG, as the bankruptcy liquidator for LBF appointed in Switzerland (the "Liquidator"), in which the Liquidator agreed to allow BNPP's claim against LBF in the amount of CHF 125,230,160.12.  A copy of the Determination Letter is appended hereto as Exhibit C.  BNPP has received distributions from LBF in the Swiss liquidation in the aggregate amount of CHF 66,760,451.38.

6. In its 6(d) statement under the ISDA Master Agreement and related supporting valuation details, BNPP has amply supported the valuation techniques used in calculating its derivatives termination claim, which it believes to be conservative in all regards.  LBHI, in the Objection, provides no evidentiary basis, or even rationale, to rebut BNPP's claim calculus, other than a vague reference to "the fair, accurate, and reasonable value of the underlying agreements." Objection at ¶ 14.  BNPP respectfully submits that this conclusory statement should not suffice, for purposes of Section 502 of the Bankruptcy Code, to rebut BNPP's filed claim and its supporting materials.

7. Furthermore, BNPP notes that the Guarantee is unconditional (Guarantee, ¶ a), constitutes a guarantee of payment when due and not of collection (Guarantee, ¶ b), and is enforceable notwithstanding "any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor" (Guarantee, ¶ c).  Such an unconditional guarantee, with its broad waiver of defenses, should be given full respect under New York law, which is applicable to the Guarantee.  *See, e.g., First N.Y. Bank for Bus. v. DeMarco,* 130 B.R. 650, 654 (S.D.N.Y. 1991) ("[a]bsolute and unconditional guaranties ... are consistently upheld by New York courts.  Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims." (internal citations omitted)).  This

3

is especially so where the bankruptcy liquidator of the primary obligor, after due consideration, agreed to the amount of the beneficiary's underlying claim, as is the case here.  Importantly, the most recent statement on point of the New York Court of Appeals contains an enthusiastic and plenary affirmation of the enforceability of unconditional guarantees.  *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Rabobank Intl.," N.Y. Branch v. Navarro*, 25 N.Y.3d 485, 493 (2015) ("…guaranties that are 'absolute and unconditional,' have been consistently upheld by New York courts." (internal citations omitted)).  Indeed, the court affirmed the enforceability of absolute guarantees "even to claims of fraudulent inducement in the execution of the guaranty," which allegations have not (and cannot) be asserted by LBHI in connection with its execution of the Guarantee here.  *See Id.*

8.     Additionally, BNPP notes that its claim under the Guarantee is allowable in the full amount asserted, without deduction of the distribution it received from LBF, unless and until it receives a 100 percent payout on such claim.  This was established in the seminal United States Supreme Court decision in *Ivanhoe Building & Loan Ass'n. v. Orr*, 295 U.S. 243, 246-47 (1935) (a creditor need not deduct from his claim in bankruptcy an amount received from a non-debtor third party in partial satisfaction of an obligation).  This principle was also recognized in an earlier Second Circuit case involving a creditor with claims against two bankrupt estates.  *In re N.Y. Commercial Co.*, 233 F. 906, 909 (2d Cir. 1916) ("The claimants … having a demand against two insolvent estates, had a right to prove against each for the full amount, and could assert their right against one unimpaired by the fact that they held security against the other."). *See also Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012) (following *Ivanhoe*); *In re National Energy and Gas Transmission, Inc.*, 492 F.3d 297 (4th Cir. 2007 (same); *In re Biaggio*, 496 B.R. 600 (Bankr. N.D. Cal. 2012) (same).

4

## ATTORNEYS FEE CLAIM

9.      In claim 67938, BNPP asserted a claim for certain of its legal fees incurred in connection with these proceedings.  Specifically, BNPP only sought legal fees allocated to components of its claim where the underlying agreements provided a contractual basis for reimbursement of such amounts.  The methodology for allocating and asserting such claim was carefully considered by BNPP, and is summarized in Exhibit L to such proof of claim, which is appended hereto as <u>Exhibit D</u>.  Additionally, the documents supporting the reimbursement of such amounts were included in the exhibits to the proof of claim, as well as the derivative and guarantee questionnaires.

10.     Here again, LBHI, in the Objection, provides only a vague and inadequate rejoinder to BNPP's detailed recitation of its legal fee claim.  The Objection states only that BNPP's legal fee claim should be expunged "because underlying claims against the primary obligors were withdrawn, resolved pursuant to settlement, or satisfied in full, and/or BNPP has not otherwise provided sufficient information to establish LBHI's liability for the asserted claim."  Objection, ¶ 15.  These objections are unavailing, and misstate the record of these proceedings.

11.     Thus, the Stipulation, which among other things allowed BNPP's unsecured promissory note claim against LBHI, expressly reserved both parties' rights in respect of the allowability of attorneys fees with respect to such claim (Stipulation, ¶ E., ¶ 3); the mere fact that the underlying claim was "resolved pursuant to settlement" does not affect BNPP's right to reimbursement of its attorneys fees pursuant to the underlying transactional documentation, and LBHI in the Stipulation agreed that such matter was to be resolved at a later date.  BNPP also notes that, as stated in <u>Exhibit D</u> hereto, it is not seeking reimbursement of its legal fees as to

5

those components of its claim subject to a Termination and Settlement Agreement with the Debtor. Furthermore, BNPP is not seeking legal fees regarding components of the LBHI claim as to which it has withdrawn the underlying claim against the primary obligor. The total amount of legal fees for which BNPP is seeking reimbursement at the current time is $1,243,637.57.

12. BNPP respectfully submits that its entitlement to reimbursement of attorneys fees, in respect of those portions of its claim as to which it has a contractual basis for such reimbursement, is appropriate under *Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 452 (2007) (valid claim for attorneys fees under state law is allowable in bankruptcy unless expressly disallowed under Bankruptcy Code) and *In re United Merchants & Mfrs. Inc.*, 674 F.2d 134 (2d Cir. 1982) (attorneys fees of unsecured creditor allowable where reimbursable per prepetition contract). The Objection asserts no contrary evidence or rationale, and should be rejected.

**CONCLUSION**

13. For the aforementioned reasons, BNPP respectfully submits that the Objection should be rejected as to its claims, and that both its guarantee claim against LBHI in regard to LBF and its claim for attorneys fees against LBHI should be allowed in full.

Dated: October 1, 2015
       New York, New York

                      MAYER BROWN LLP

                      By /s/ Howard S. Beltzer
                            Howard S. Beltzer
                            Christine A. Walsh
                            1221 Avenue of the Americas
                            New York, NY 10020
                            Telephone: (212) 506-2684
                            Facsimile: (212) 849-5784

                            *Attorneys for BNP Paribas*