**Response Deadline: November 16, 2015, at 4:00 p.m. (Eastern Time)**
**Hearing Date: November 23, 2015, at 2:00 p.m. (Eastern Time)**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Fletcher W. Strong

ROLLIN BRASWELL FISHER
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone:  (303) 945-7415
Facsimile:  (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ——————————————————— x | | |
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | |
| | : | |
| **Debtors.** | : | |
| ——————————————————— x | | |

**NOTICE OF HEARING ON MOTION IN AID OF**
**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**
**ORDER FOR INDEMNIFICATION CLAIMS OF THE**
**DEBTORS AGAINST MORTGAGE LOAN SELLERS**

  **PLEASE TAKE NOTICE** that on October 22, 2015, Lehman Brothers Holdings Inc.

("LBHI" or the "Plan Administrator"), as Plan Administrator for the entities in the above

referenced chapter 11 cases (the "Debtors"), filed a motion in aid of alternative dispute resolution

procedures order for indemnification claims of the Debtors against mortgage loan sellers (the "Motion"), and that a hearing (the "Hearing") to consider the Motion will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **November 23, 2015, at 2:00 p.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

      **PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable Portable Document Format (PDF) (with a hard copy delivered directly to Chambers), and shall be served upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 621; (ii) special counsel for LBHI, Wollmuth Maher & Deutsch LLP, 500 Fifth Avenue, New York, New York 10110 (Attn:  James N. Lawlor, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn:  William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.), so as to be so filed and received by no later than **November 16, 2015, at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion or any relief requested therein, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Motion, which order may be entered with no further notice or

opportunity to be heard offered to any party.

       **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  New York, New York
       October 22, 2015

                                                   */s/William A. Maher*
                                       William A. Maher
                                       Paul R. DeFilippo
                                       James N. Lawlor
                                       Adam M. Bialek
                                       Fletcher W. Strong

                                       WOLLMUTH MAHER & DEUTSCH LLP
                                       500 Fifth Avenue
                                       New York, New York 10110
                                       Telephone:  (212) 382-3300
                                       Facsimile:  (212) 382-0050

                                              -and-

                                       ROLLIN BRASWELL FISHER LLC
                                       8350 E. Crescent Pkwy., Suite 100
                                       Greenwood Village, Colorado 80111
                                       Telephone:  (303) 945-7415
                                       Facsimile:  (303) 974-7468
                                       Michael A. Rollin
                                         Maritza Dominguez Braswell (*pro hac vice*)

                                       *Counsel for Lehman Brothers Holdings Inc.*

**Response Deadline: November 16, 2015, at 4:00 p.m. (Eastern Time)**
**Hearing Date: November 23, 2015, at 2:00 p.m. (Eastern Time)**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Fletcher W. Strong

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone:  (303) 945-7415
Facsimile:  (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————— x | | |
| | : | **Chapter 11** |
| **In re:** | : | |
| | : | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | |
| | : | |
| **Debtors.** | : | |
| ———————————————————— x | | |

**MOTION IN AID OF ALTERNATIVE DISPUTE RESOLUTION**
**PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS**
**OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

JURISDICTION ..................................................................................................................... 3

BACKGROUND .................................................................................................................... 3

A.      Debtors' Motion for Alternative Dispute Resolution Procedures Order
With Respect to Indemnification Claims Against Mortgage Loan Sellers ............................... 3

B.      Identification of Successor Entities that are Potentially Liable for Sellers'
Debts and Obligations Under Applicable Successor Liability Doctrines ................................. 5

RELIEF REQUESTED ........................................................................................................... 8

ARGUMENT .......................................................................................................................... 9

A.      LBHI Has Uncovered Evidence of Successor Liability .......................................... 9

      a. Expressly or Impliedly Assuming Liabilities of Predecessor ............................. 10

      b. De Facto Merger .............................................................................................. 12

      c. Mere Continuation ........................................................................................... 13

      d. Fraudulent Transaction ..................................................................................... 14

            i. Constructive Fraudulent Transfers ........................................................... 15

            ii. Actual Fraudulent Transfers .................................................................... 16

B.      The Court Has Authority to Direct the Successors to Participate in ADR ............... 17

C.      Successors Should Be Made to Comply With the ADR Order ................................ 21

NOTICE ................................................................................................................................. 23

CONCLUSION ...................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*,
    448 Fed. Appx. 134 (2d Cir. 2011) ...................................................................17

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*,
    712 F. Supp. 1010 (D. Mass. 1989) .................................................................14

*Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Products, Inc.*,
    837 P.2d 282 (Colo. App. 1992) ......................................................................13

*Amjad Munim, M.D., P.A. v. Azar*,
    648 So. 2d 145 (Fla. Dist. Ct. App. 1994) .......................................................13

*Antiphon, Inc. v. LEP Transport, Inc.*,
    183 Mich.App. 377 (Mich. 1990) ...................................................................11

*Atlas Tool Co. v. C. I. R.*,
    614 F.2d 860 (3d Cir. 1980).............................................................................12

*Back v. LTV Corp. (In re Chateaugay Corp.)*,
    213 B.R. 633 (S.D.N.Y. 1997).........................................................................19

*Bud Antle, Inc. v. E. Foods, Inc.*,
    758 F.2d 1451 (11th Cir. 1985).......................................................................12

*Cargo Partner AG v. Albatrans Inc.*,
    207 F.Supp.2d 86 (S.D.N.Y.2002)....................................................................8

*Colon v. Multi-Pak Corp.*,
    477 F. Supp. 2d 620 (S.D.N.Y. 2007) ........................................................9, 12

*Doktor v. Werner Co.*,
    762 F. Supp. 2d 494 (E.D.N.Y. 2011)................................................................8

*Drug, Inc. v. Hunt*,
    35 Del. 339 (Del. 1933)....................................................................................12

*Eastern Airlines, Inc. v. General Mills, Inc. (In re Ionoshphere Clubs, Inc.)*,
    No. 89 B 10448, 1999 Bankr. LEXIS 1875 (Bankr. S.D.N.Y. May 12, 1999) .................19

*Elmer v. Tenneco Resins, Inc.*,
    698 F. Supp. 535 (D. Del. 1988) .....................................................................11

*Fehl v. S. W. C. Corp.*,
    433 F. Supp. 939 (D. Del. 1977) ....................................................................12, 13

*Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc.*,
    186 B.R. 603 (E.D. Pa. 1994) ..............................................................................14

*Fisher v. SmithKline Beecham Corp.*,
    No. 07–CV–347A(F), 2009 WL 899433 (W.D.N.Y. Mar. 26, 2009)................................22

*Fizzano Bros. Concrete Products v. XLN, Inc.*,
    615 Pa. 242 (Pa. 2012) ........................................................................................13

*Florom v. Elliott Mfg.*,
    867 F.2d 570 (10th Cir. 1989)..............................................................................10

*Fountain v. Colonial Chevrolet Co.*,
    No. C.A. 85C-DE-88, 1988 WL 40019 (Del. Super. Apr. 13, 1988) ................................10

*Franklin v. USX Corp.*,
    87 Cal. App. 4th 615 (Cali. App. Ct. 2001) .........................................................13

*In re Fundamental Long Term Care, Inc.*,
    507 B.R. 359 (Bankr. M.D. Fla. 2014) ................................................................17

*Gee v. Tenneco, Inc.*,
    615 F.2d 857 (9th Cir. 1980)...............................................................................12

*Glynwed, Inc. v. Plastimatic, Inc.*,
    869 F. Supp. 265 (D.N.J. 1994) ....................................................................13, 14

*Goodbody & Co. v. Rigel*,
    339 So. 2d 272 (Fla. Dist. Ct. App. 1976) .........................................................10

*Gorsuch v. Formtek Metal Forming, Inc.*,
    803 F. Supp. 2d 1016 (E.D. Mo. 2011) ................................................................ 9

*Graef v. Hegedus*,
    698 So. 2d 655 (Fla. Dist. Ct. App. 1997) .........................................................15

*Grey v. F.D.I.C.*,
    No. 88 Civ.7452(THK), 2002 WL 959564 (S.D.N.Y. May 8, 2002) ..............................22

*Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*,
    638 F. Supp. 2d 278 (D. Conn. 2009) ................................................................10

*In re Hagerstown Fiber Ltd. P'ship*,
    277 B.R. 181 (Bankr. S.D.N.Y. 2002) ...........................................................................19

*In re Ismael Longoria*,
    400 B.R. 543 (W.D. Tex. 2009) .....................................................................................20

*Hoche Productions, S.A. v. Jayark Films Corp.*,
    256 F. Supp. 291 (S.D.N.Y. 1966) ...............................................................................12

*In re Knippen*,
    355 B.R. 710 (Bankr. N.D. Ill. 2006)............................................................................16

*Jones v. Reno Hilton Resort Corp.*,
    889 F. Supp. 408 (D. Nev. 1995) ..................................................................................11

*J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*,
    124 B.R. 931 (S.D.N.Y. 1991)......................................................................................20

*Ladjevardian v. Laidlaw-Coggeshall, Inc.*,
    431 F. Supp. 834 (S.D.N.Y. 1977)................................................................................13

*LaPollo by LaPollo v. Gen. Elec. Co.*,
    664 F. Supp. 178 (D.N.J. 1987) ......................................................................................9

*Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*,
    989 F. Supp. 2d 411 (E.D. Pa. 2013), *aff'd*, 785 F.3d 96 (3d Cir. 2015)...............7, 12, 13

*Marenyi v. Packard Press Corp.*,
    No. 90-CV-4439, 1994 WL 16000129 (S.D.N.Y. June 9, 1994)....................................13

*Marnavi S.p.A. v. Keehan*,
    900 F. Supp. 2d 377 (D. Del. 2012) .............................................................................12

*Matter of Sargeant Farms, Inc.*,
    224 B.R. 842 (Bankr. M.D. Fla. 1998) ....................................................................19, 20

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
    965 N.Y.S.2d 284 (N.Y. Sup. Ct. 2013) .......................................................................11

*In re Metro-Goldwyn-Mayer*,
    459 B.R. 555 (Bankr. S.D.N.Y. 2010) ....................................................................17, 18

*Miles Multimedia, LLC v. Schumann Printers, Inc.*,
    No. 11-CV-03150-RBJ, 2013 WL 1858448 (D. Colo. May 2, 2013)..............................14

*Mozingo v. Correct Mfg. Corp.*,
   752 F.2d 168 (5th Cir. 1985).......................................................................................14

*Parklane Hosiery Co., Inc. v. Shore*,
   439 U.S. 322 (1979) ...................................................................................................21

*Perry Drug Stores v. CSK Auto Corp.*,
   93 F. App'x 677 (6th Cir. 2003) ...............................................................................10

*In re Petrie Retail, Inc.*,
   304 F.3d 223 (2d Cir. 2002)......................................................................................18

*Polius v. Clark Equip. Co.*,
   802 F.2d 75 (3d Cir. 1986)........................................................................................14

*Ray v. Alad Corp.*,
   19 Cal. 3d 22 (Cal. 1977)............................................................................................9

*Ruedy v. Toledo Factories Co.*,
   22 N.E.2d 293 (Ohio App. Ct. 1939)........................................................................12

*Ruiz v. ExCello Corp.*,
   653 P.2d 415 (Colo. App. 1982) .........................................................................12, 13

*Schumacher v. Richards Shear Company, Inc.*,
   59 N.Y.2d 239, 451 N.E.2d 195 (1983)...................................................................10

*Smith v. Navistar Int'l Transp. Corp.*,
   737 F. Supp. 1446 (D. Md. 1988)..............................................................................11

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
   783 F. Supp. 2d 648 (S.D.N.Y. 2011).......................................................................10

*Sorenson v. Allied Products Corp.*,
   706 N.E.2d 1097 (Ind. Ct. App. 1999)......................................................................12

*In re Sosa*,
   443 B.R. 263 (Bankr. D.R.I. 2011) ...........................................................................19

*Sourcing Mgmt., Inc. v. Simclar, Inc.*,
   No. 3:14-CV-2552-L, 2015 WL 4587974 (N.D. Tex. July 30, 2015) ........................17

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
   971 F. Supp. 2d 368 (S.D.N.Y. 2013)............................................................15, 16, 17

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009) ...................................................................................................18

*U.S. v. Sterling Centrecorp Inc.*,
    960 F. Supp. 2d 1025 (E.D. Cal. 2013) ...............................................................10, 11

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. - Petrobras*,
    No. 98 CIV.3099 (THK), 2005 WL 289575 (S.D.N.Y. Feb. 4, 2005) *amended sub nom.*
    2005 WL 736149 (S.D.N.Y. Mar. 29, 2005) ...................................................................10

*Vill. Builders 96, L.P. v. U.S. Labs., Inc.*,
    121 Nev. 261 (Nev. 2005) ...................................................................................10, 12, 13

*Warfield v. KR Entertainment, Inc. (In re Fed. Fountain, Inc.)*,
    165 F.3d 600 (8th Cir. 1999) ......................................................................................20

*Woods v. Holy Cross Hospital*,
    591 F.2d 1164 (5th Cir. 1979) ....................................................................................21

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..................................................................................................21

### **Statutory Authority**

11 U.S.C. § 105 ..............................................................................................................19

28 U.S.C. § 157 ................................................................................................................3

28 U.S.C. § 1334 ..............................................................................................................3

A.S. § 34.40.010 ............................................................................................................15

Bankruptcy Rule 1015 .....................................................................................................3

Bankruptcy Rule 9014 ...................................................................................................20

Bankruptcy Rule 7004 ...................................................................................................20

K.R.S. § 378.010 ...........................................................................................................15

La. Civ. Code art. 2036 ..................................................................................................15

Md. Code, Com. Law § 15-201 ......................................................................................15

N.Y. Debt. & Cred. Law § 270 ......................................................................................15

S.C. Code § 27-23-10.................................................................................................................15

Va. Code § 55-80 ......................................................................................................................15

### **Miscellaneous Authority**

5 Collier on Bankruptcy ¶ 548.04 ............................................................................................16

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan

Administrator pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors, for LBHI and certain of its subsidiaries

(collectively, the "Debtors"), moves (the "Motion") for an order in aid of the Court's Alternative

Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against

Mortgage Loan Sellers, dated June 24, 2014 [Dkt. No. 45277] (the "ADR Order"), and

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      This Motion arises from the ADR Order, which established a mediation process to

resolve the thousands of contractual Indemnification Claims[1] that LBHI holds against loan

originators and other sellers of allegedly defective residential mortgage loans.  LBHI's

Indemnification Claims accrued in early 2014 when it entered into multi-billion dollar

settlements with Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan

Mortgage Corp. ("Freddie Mac").  The ADR Order directed the mortgage loan sellers and other

institutions that sold or delivered the defective mortgage loans to LBHI and received an ADR

notice providing supporting information for LBHI's indemnification claims and settlement

demand (the "ADR Package") to participate, in good faith, in mandatory mediation.  The ADR

Order provided, *inter alia*, that all such mediations were to be conducted in a confidential manner

and that participating loan Sellers would not be waiving any alleged defense that they held to

LBHI's Indemnification Claims.

2.      Since the ADR Order was entered, LBHI has undertaken multiple mediations with

Sellers, while simultaneously negotiating pre-mediation with many more.  During that process,

---

[1] All capitalized terms in the Preliminary Statement not otherwise defined herein or in the preamble above are
defined in the Background section below.

and the process of preparing to initiate ADR on other counterparties, LBHI has discovered that at

least fifty-four Sellers have effectively transferred their businesses to another entity, through a

stock sale, a sale of substantially all of their assets to a third-party, reorganizing as a different

corporate entity while continuing the normal business operations and the name, a third-party alter

ego continuing the Seller's business operations, and the like.  LBHI has conducted investigations

into many of these transactions, and as set forth herein, has a reasonable basis to asssert that each

of the Successors may be liable to LBHI under applicable state law successor liability doctrines

to the same extent as the former Sellers.  Nonetheless, many of the Successors are refusing to

participate in the mediation process based on their argument that they are not liable for the

relevant Sellers' debts and obligations.

3.      LBHI submits that the Successors' arguments are not valid grounds for refusing

participation because they simply constitute another alleged defense to liability.  All defenses that

an ADR counterparty possesses, including allegations that the entities are not successors to a

Seller, are expressly preserved.  Indeed, the ADR Order requires participation, notwithstanding

any defenses that the parties may raise.

4.      Under the ADR Order, LBHI has the option of engaging in individualized motion

practice to attempt to compel compliance, including seeking sanctions against non-participating

Sellers.  Notwithstanding the ADR Order's enforcement mechanisms, LBHI submits that the

better course is to seek entry of an order in aid of the ADR Order that expressly directs the

Successors to participate in the indemnification ADR process in good faith.  Entry of such an

order is the most cost-effective, expedient and least burdensome means of asserting and

potentially resolving LBHI's Indemnification Claims.  Moreover, granting the Motion will have

an added benefit to LBHI:  Because the ADR Order contains significant confidentiality

requirements, LBHI is reluctant to send ADR Packages and turn over confidential documents to

the Successors when such entities are asserting that they are not bound by the ADR Order's

provisions.  The proposed order will resolve this issue by explicitly providing that the Successors

are bound by the terms of the ADR Order, including the confidentiality provisions.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334

and Section 14.1 of the Plan.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

7.      Commencing on September 15, 2008, and periodically thereafter, the Debtors

commenced with this Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11

of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to

Bankruptcy Rule 1015(b).

8.      By Order dated December 6, 2011 (the "Confirmation Order"), the Bankruptcy

Court confirmed the Modified Third Amended Plan of Reorganization of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), which became effective on March 6, 2012.

**A.      Debtors' Motion for Alternative Dispute Resolution Procedures Order
With Respect to Indemnification Claims Against Mortgage Loan Sellers**

9.      On May 29, 2014, LBHI filed its *Motion for Alternative Dispute Resolution*

*Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers*

[Dkt. No. 44450]  (the "ADR Motion").  The ADR Motion sought Court authority to establish

alternative dispute resolution ("ADR") procedures to address the Indemnification Claims LBHI

held (and continues to hold) against approximately 3,000 counterparties involving more than

3

11,000 mortgage loans.  These claims arose from LBHI's multi-billion dollar settlements with

Fannie Mae and Freddie Mac (collectively, the "GSEs") related to mortgage loans sold from

LBHI to the GSEs.[2]  As a result of the settlement of the GSEs' claims against LBHI, LBHI

became entitled to seek reimbursement and indemnification from the mortgage loan sellers and

other institutions (such as brokers) that sold or delivered the defective mortgage loans to LBHI

(collectively, the "Sellers").  The Sellers agreed to indemnify the Debtors with respect to any

third-party liability, judgments, or damages suffered as a result of the mortgage loans (the

"Indemnification Claims").[3]  The ADR Motion sought entry of an ADR procedures order for the

resolution and recovery by the Debtors on account of the Indemnification Claims on an expedited

and cost-effective basis.

10.    On June 12, 2014 and June 13, 2014, various Sellers filed eleven separate

responses and objections to the ADR Motion.

11.    On June 17, 2014, LBHI filed an omnibus reply in further support of the ADR

Motion.  [Dkt. No. 44728].

---

[2] *See* Settlement Agreement, dated January 22, 2014, by and among LBHI, *et al*., and Fannie Mae  [Dkt. No. 42153] (the "Fannie Settlement"); Settlement and Assignment Agreement, dated February 12, 2014, by and among LBHI, *et al*., and Freddie Mac [Dkt. No. 42754] (the "Freddie Settlement" and together with the Fannie Settlement, the "Settlement Agreements").  The Settlement Agreements were approved by Orders dated January 31, 2014 [Dkt. No. 42420] and February 19, 2014 [Dkt. No. 42918] (collectively, the "Settlement Orders").

[3] An example of the broad indemnification language in one of the agreements that LBHI had with its counterparties is as follows:

> 711.  INDEMNIFICATION AND THIRD PARTY CLAIMS.  In addition to any repurchase and cure obligations of Seller, … Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

Seller's Guide, § 711, dated April 15, 2005.

4

12.     On June 19, 2014, the Court held a hearing on the ADR Motion.

13.     On July 18, 2014, the Court entered the ADR Order.  The ADR Order set forth a mandatory process for the Sellers' participation in non-binding mediation related to the Indemnification Claims.  ADR Order ¶ 6.[4]

14.     After entry of the ADR Order, LBHI began instituting ADR proceedings against many of the Sellers.  LBHI's indemnification ADR proceedings remain ongoing.

**B.     Identification of Successor Entities That Are Potentially Liable for Sellers' Debts and Obligations Under Applicable Successor Liability Doctrines**

15.     Upon initiation of the indemnification ADR proceedings against the Sellers, to date, LBHI discovered that potentially well over a hundred Sellers had effectively transferred their businesses to another entity through a stock sale, a sale of substantially all of their assets to a third-party, reorganizing as a different corporate entity while continuing the normal business operations and the name, a third-party alter ego continuing the Seller's business operations, and the like (the "Successors").  A list of the the entities for which LBHI has thus far been able to determine there is indicia of successor liability (*i.e.* the Successors) is annexed hereto as **Exhibit A**.  There may be additional undiscovered entities that qualify as Successors, which LBHI may seek to have governed by the relief proposed herein.

16.     Although LBHI cannot conclusively determine the existence of successor liability prior to the ADR process or the initiation of litigation, it has discovered indicia giving rise to reasonable grounds to assert that certain Successors may be legally responsible for the liability of certain Sellers.  This includes, but is not limited to, the following:

---

[4] Subsequently, certain modified ADR Orders were entered with respect to some of the objectors to the ADR Motion.

a.  The Successor acquired the Seller and appears to have continued the operations of that entity;

b.  The Successor absorbed the Seller through merger;

c.  The Successor changed its name from the name of the Seller and has continued the operations of the Seller;

d.  The Successor was a parent or related entity of the Seller and after the Seller was dissolved, the Successor continued the Seller's operations as a division of the Successor;

e.  The Successor operates one or more branches at the same location(s) as the Seller, often times with the owner(s) and/or officer(s) of the Seller serving as branch manager(s) for the Successor;

f.  The Successor shares common owners, directors, and/or employees with the Seller;

g.  The Successor continued the Seller's business operations at the same headquarters, principal place of business, and/or branch location as the Seller;

h.  The Successor continued the Seller's business operations using the same phone number, fax number, and/or email as the Seller;

i.  The Successor's website can be accessed by being redirected from the Seller's website;

j.  The Successor shares the same National Mortgage Licensing System & Registry ("NMLS") number as the Seller;

k.  The Successor and the Seller have the same or substantially similar logos and branding; and

6

l.   The Successor was identified by another name and the Seller conducted

business under that name.

17.      It is not uncommon for mortgage loan sellers experiencing financial or legal

difficulties to attempt to avoid such problems by transferring their business to new or successor

entities.  Based on LBHI's initial investigation, LBHI believes that each of the Successors set

forth in Exhibit A is or may be liable for the related Seller's debts and obligations in accordance

with applicable state successor liability law.

18.      When contacted by LBHI with either pre-mediation negotiations or by the delivery

of an ADR Package, some of the Successors have asserted they would ignore and/or not comply

with the ADR Order.  Others have asserted they have no liability for the debts or obligations of

the applicable Seller and have refused to negotiate in good faith.

19.      LBHI has experienced such recalcitrance previously in pursuing indemnification

claims against mortgage loan sellers and has been forced to litigate the matter.  For example, in

*Lehman Bros. Holdings Inc. v. Gateway Funding Divers. Mort. Svcs., L.P.*, LBHI sued and

asserted indemnification claims unrelated to the GSE settlements against a defendant that had

purchased substantially all of the assets of an indemnifying seller under a theory of *de facto*

merger under Pennsylvania state law.  989 F. Supp. 2d 411 (E.D. Pa. 2013), *aff'd*, 785 F.3d 96

(3d Cir. 2015).  The district court concluded that the defendant was, in fact, the successor by

merger to the original seller and held the successor liable.  *Id*. at 439.  The district court's

determination was recently upheld by the Third Circuit.  *Lehman Bros. Holdings Inc. v. Gateway

Funding Divers. Mort. Svcs., L.P.*, 785 F.3d 96, 103 (3d Cir. 2015).

7

## RELIEF REQUESTED

20.     Given the refusal by certain Successors to participate in ADR notwithstanding the terms of the ADR Order, LBHI seeks an order that will specifically direct the Successors to participate.[5]  While LBHI believes that the ADR Order already requires participation, an order expressly governing Successors will remove any doubt.  Such an Order is preferable to engaging in individualized motion practice compelling a party to participate and/or subjecting it to sanctions as permitted under the ADR Order.  LBHI submits that the Court has the inherent authority to issue such an Order.

21.     Moreover, such an Order does not prejudice the Successors as they are already bound (through their predecessor Sellers) by the ADR Order and they will continue to retain any and all defenses to LBHI's Indemnification Claims, including the defense that they are not successors to any particular Seller.  Entry of the Order will also protect LBHI by making it clear that service of an ADR Package on a Successor does not constitute a violation of the confidentiality provisions of the ADR Order should it later be determined that there is no successor liability.  Accordingly, the Court should enter the order annexed hereto as **Exhibit B** granting the Motion, binding the Successors to the ADR Order, and ordering the Successors' good faith participation in ADR of LBHI's Indemnification Claims.

---

[5] To the extent that the sale of a Seller's assets to a third-party has been approved by a court of competent jurisdiction and conclusively immunizes the asset purchaser from successor liability to the Seller's creditors, either by its terms or under applicable law, LBHI could not (and would not) pursue the Indemnification Claims against such third-parties.  *See, e.g., Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) (rejecting successor liability claims against purchaser of bankrupt debtor's assets effectuated through court approved asset sale); *Cargo Partner AG v. Albatrans Inc.*, 207 F.Supp.2d 86, 112 (S.D.N.Y.2002) (recognizing that imposition of successor liability on purchaser of bankrupt entity's assets would discourage asset sales and thereby decrease overall amount of money available to creditors).  Accordingly, the proposed order specifically carves out such asset purchasers.  *See* Ex. B, Proposed Order at 2.

8

## ARGUMENT

**A.      LBHI Has Uncovered Evidence of Successor Liability**

22.      Based upon prior experience and the evidence collected in LBHI's preliminary investigation, LBHI believes that there will be substantial evidence that each of the Successors are liable for the contractual indemnification obligations of a Seller.  While, as a general rule, successors are not liable for the debts and obligations of their predecessors,  *see, e.g.*, *Gorsuch v. Formtek Metal Forming, Inc.*, 803 F. Supp. 2d 1016, 1021 (E.D. Mo. 2011); *Colon v. Multi-Pak Corp.*, 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007), there are four significant exceptions under state law that result in liability.  Liability vests in a successor entity when:

     a.   The successor expressly or impliedly assumes the liabilities of the predecessor;

     b.   The underlying transaction constituted a "*de facto* merger";

     c.   The successor is the "mere continuation" of the predecessor; or

     d.   The underlying transaction is a constructive or actual fraud in order to escape liabilities.[6]

23.      LBHI submits that each of the Successors may be found liable for the debts and obligations of the Sellers, including the Indemnification Claims, in accordance with the general doctrines for successor liability listed above that are recognized in varying degrees in all 50 states and the District of Columbia.  A brief overview of the doctrines are set forth below.

---

[6] Certain jurisdictions also recognize a "product line exception" making the successor liable for allegedly defective products in a product line that continue to be manufactured by the successor in tort cases.  *See, e.g., LaPollo by LaPollo v. Gen. Elec. Co.*, 664 F. Supp. 178, 181 (D.N.J. 1987); *Ray v. Alad Corp.*, 19 Cal. 3d 22, 34 (Cal. 1977). However, this doctrine is not especially relevant for purposes of LBHI's Indemnification Claims against the Sellers. Nevertheless, LBHI reserves its right to assert its Indemnification Claims against the Successors in accordance with any and all applicable successor liability doctrines.

### a.    Expressly or Impliedly Assuming Liabilities of Predecessor

24.    A successor may become liable for the predecessor's debts and obligations when either (i) the contract itself ***expressly*** provides for the assumption of liabilities by the successor, or (ii) based on the circumstances, the successor entity ***impliedly*** assumed the liabilities of the predecessor.  *See, e.g., Florom v. Elliott Mfg.*, 867 F.2d 570, 574-75 (10th Cir. 1989) (applying Colorado law); *Software Freedom Conservancy, Inc. v. Best Buy Co.*, 783 F. Supp. 2d 648, 653 (S.D.N.Y. 2011) (applying California law); *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 268 (Nev. 2005) (applying Nevada law); *Fountain v. Colonial Chevrolet Co.*, No. C.A. 85C-DE-88, 1988 WL 40019, at *7 (Del. Super. Apr. 13, 1988) (applying Delaware law); *Schumacher v. Richards Shear Company, Inc.*, 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198, (1983) (applying New York law); *Goodbody & Co. v. Rigel*, 339 So. 2d 272, 274 (Fla. Dist. Ct. App. 1976) (applying Florida law).

25.    If the agreement that led to the transfer of the business, such as an asset purchase agreement, specifically provides that the successor has assumed responsibility for the debts or obligations at issue, then the successor will be liable in accordance with basic principles of contract law.  For example, in *Perry Drug Stores v. CSK Auto Corp.*, the court found that the plaintiff had sufficiently pled a claim for express assumption of liabilities where the successor entity under the "Plan of Complete Liquidation and Dissolution" agreed to liquidate and distribute the predecessor's assets "subject to all debts, obligations, contracts and liabilities of the" predecessor corporation.  93 F. App'x 677, 681 (6th Cir. 2003) (applying Michigan law).[7]

---

[7] *See also Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 289 (D. Conn. 2009) (finding that successor's assumption of "'current liabilities,' not to exceed $75,000" did not constitute general assumption of *all* of predecessor's liabilities under Connecticut law); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. - Petrobras*, No. 98 CIV.3099 (THK), 2005 WL 289575, at *24 (S.D.N.Y. Feb. 4, 2005) *amended sub nom. U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A. -Petrobras*, No. 98 CIV. 3099 (THK), 2005 WL 736149 (S.D.N.Y. Mar. 29, 2005) (holding that indemnity agreements expressly transferred liabilities for all losses and expenses related to certain bonds under New York law); *U.S. v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1036 (E.D. Cal. 2013)

26.    Should LBHI be able to establish that an applicable underlying agreement between the parties expressly provided for the Successor to be liable for all of the Seller's debts and obligations or claims related to mortgage loan defects (which form the basis of LBHI's Indemnification Claims), or any similar provision, then the Successor will be liable to LBHI for the Indemnification Claims in accordance with the express assumption of liability doctrine.

27.    Assumption of liabilities need not be express.  Where a Successor has acted in a manner that implies that it is taking on the predecessor's debts and obligations, then state law will deem the Successor liable for the predecessor's debts and obligations (in whole or in part).  *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 311 (N.Y. Sup. Ct. 2013) (implied assumption of liability focuses "on the relationship between asset buyer and seller and the buyer's post-acquisition conduct with respect to the assets" under New York law); *Smith v. Navistar Int'l Transp. Corp.*, 737 F. Supp. 1446, 1449 (D. Md. 1988) (successor's "conduct must manifest an intent to assume the tort liability of its predecessor, or the equities must be sufficiently strong to impose that liability on the successor" under Maryland law).  For example, in *Antiphon, Inc. v. LEP Transport, Inc.,* the court ruled that a successor corporation that held itself out as the predecessor corporation to its creditors who were unaware of the dissolution of the predecessor, was "estopped from denying liability by the existence of an implied agreement to assume the liabilities of [the predecessor]."  183 Mich.App. 377, 385-86 (Mich. 1990) (applying Michigan law); *see also U.S. v. Sterling Centrecorp Inc.*, 960 F. Supp. 2d 1025, 1038 (E.D. Cal. 2013) (finding seller's assignment of insurance policies to purchaser, dissolution of

---

(concluding that acquisition of all assets "subject to its liabilities" resulted in express assumption of liabilities under California law); *Jones v. Reno Hilton Resort Corp.*, 889 F. Supp. 408, 412 (D. Nev. 1995) (noting defendant accepts liability for events occurring after the acquisition under Nevada law); *Elmer v. Tenneco Resins, Inc.*, 698 F. Supp. 535, 541 (D. Del. 1988) (finding defendant's agreement to assume any and all liabilities reasonably resulted in defendant assuming liability for plaintiff's claims under Delaware law).

seller, and purchaser's assumption of worker's compensation claims evidenced intention that purchaser would acquire seller's liabilities under California law).

28.      Many of the Successor entities are operating out the same location, using the same telephone numbers, using similar names, and have the same officers and employees.  Such conduct suggests that these Successors have impliedly assumed the Sellers' liabilities.

### b.      De Facto Merger

29.      The concept of "*de facto* merger" is most often applied to situations in which the ownership, assets and management of one corporation are combined with those of another preexisting entity and is widely recognized.[8]  The factors that courts consider in determining whether there has been a *de facto* merger are:

> (1)      Continuity of ownership;
> (2)      Continuity of management;
> (3)      Dissolution of the selling entity; and
> (4)      Assumption of liabilities necessary for the continuation of the business.

*See Colon*, 477 F. Supp. 2d at 626 (New York law); *Sorenson v. Allied Products Corp.*, 706 N.E.2d 1097, Prod. Liab. Rep. (CCH) ¶15478, 109 A.L.R.5th 771 (Ind. Ct. App. 1999) (Indiana law).[9]  The key factor is the continuity of ownership between the parties.  *See Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985) (Georgia law and collecting cases); *Atlas Tool Co. v. C. I. R.*, 614 F.2d 860, 871 (3d Cir. 1980) (New Jersey law); *Fehl v. S. W. C. Corp.*,

---

[8] *See, e.g., Gee v. Tenneco, Inc.*, 615 F.2d 857, 865 (9th Cir. 1980) (applying California law); *Hoche Productions, S.A. v. Jayark Films Corp.*, 256 F. Supp. 291, 296 (S.D.N.Y. 1966) (applying New York law); *Ruedy v. Toledo Factories Co.*, 22 N.E.2d 293, 293 (Ohio App. Ct. 1939) (applying Ohio law); *Drug, Inc. v. Hunt*, 35 Del. 339, 361-63 (Del. 1933) (applying Delaware law); *Gateway Funding Divers.*, 785 F.3d at 431, *aff'd*, 785 F.3d at 103 (applying Pennsylvania law); *Vill. Builders 96, L.P.*, 121 Nev. at 269 (applying Nevada law); *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo. App. 1982) (applying Colorado law).

[9] *But see Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012) (Delaware test for de facto merger: (1) one corporation transferred all assets to another corporation, (2) payment was made in stock issued by transferee to shareholders of transferor, and (3) in exchange for stock, transferee agreed to assume all debts and liabilities of transferor).

433 F. Supp. 939, 947 (D. Del. 1977) (Delaware law); *Fizzano Bros. Concrete Products v. XLN,*

*Inc.*, 615 Pa. 242, 273 (Pa. 2012) (Pennsylvania law). LBHI submits that certain of the

Successors have the same owners as did the respective Seller entities along with continuity of

management, assumption of liabilities and the like. Thus, LBHI believes that it will be able to

demonstrate that many of the Successors are liable under the *de facto* merger doctrine, as it did in

the *Gateway* litigation.

### c.    Mere Continuation

30.    The "mere continuation" exception to successor liability applies when the

corporation merely changes its corporate form, but otherwise continues operations with the same

management and shareholders. *See Ladjevardian v. Laidlaw-Coggeshall, Inc.*, 431 F. Supp. 834,

839 (S.D.N.Y. 1977) ("What it accomplishes is something in the nature of a corporate

reorganization, rather than a mere sale.") (New York law); *Amjad Munim, M.D., P.A. v. Azar*,

648 So. 2d 145, 154 (Fla. Dist. Ct. App. 1994) ("purchasing corporation is merely a 'new hat' for

the seller") (Florida law). The mere continuation doctrine is widely recognized.[10] Like the *de*

*facto* merger doctrine, mere continuation "envisions a common identity of directors, stockholders

and the existence of only one corporation at the completion of the transfer." *Ladjevardian*, 431

F. Supp. at 839; *see also Alcan Aluminum Corp., Metal Goods Div. v. Elec. Metal Products, Inc.*,

837 P.2d 282, 283 (Colo. App. 1992) ("'mere continuation' exception applies when there is a

---

[10] *See, e.g., Marenyi v. Packard Press Corp.*, No. 90-CV-4439, 1994 WL 16000129, at *6 (S.D.N.Y. June 9, 1994) (New York law); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 271 (D.N.J. 1994) (New Jersey law); *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo. App. 1982) (Colorado law); *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 626 (Cali. App. Ct. 2001) (California law); *Fehl*, 433 F. Supp. at 945-46 (Delaware law); *Vill. Builders 96, L.P.*, 121 Nev. at 264 (Nevada law).

continuation of directors and management, shareholder interest, and, in some cases, inadequate

consideration") (Colorado law).[11]

31.    As applied to the Successors, they will be found liable for LBHI's Indemnification

Claims if the Successors constitute a "mere continuation" of the Sellers such that the Successors

have the same ownership and/or management of the Sellers, with the Successor entity merely

constituting a "new hat" of the Seller.  *See, e.g., Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168,

176 (5th Cir. 1985) (finding mere continuation where parent company created subsidiary,

subsidiary issued equity to shareholders of parent, certain assets of parent transferred to

subsidiary, and much of the same management operated subsidiary under Mississippi law);

*Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc.*, 186 B.R. 603, 609 (E.D. Pa.

1994) (ruling purchaser was "mere continuation" of selling corporation where purchaser had

essentially same management and employees as seller, produced and sold similar product, used

same facility, and selling corporation was dissolved under Pennsylvania law).

### d.    Fraudulent Transaction

32.    The fourth exception to the general rule that a successor is not liable for the debts

and obligations of the predecessor is when the transaction at issue constituted a fraud to escape

liabilities, and is often handled in the context of state fraudulent transfer law.  *See, e.g., Miles*

*Multimedia, LLC v. Schumann Printers, Inc.*, No. 11-CV-03150-RBJ, 2013 WL 1858448, at *6

(D. Colo. May 2, 2013) (agreeing that Colorado Uniform Fraudulent Transfer Act was

"reasonable source of information as to what constitutes a fraudulent transfer" with respect to

---

[11] Because of the similarities between the "mere continuation" and *de facto* merger" doctrines, certain jurisdictions treat the doctrines as one and the same.  *See, e.g., Polius v. Clark Equip. Co.*, 802 F.2d 75, 85 (3d Cir. 1986) ("*de facto* merger doctrine subsumes the mere continuation theory"); *Glynwed, Inc.*, 869 F. Supp. at 275 ("de facto consolidation and mere continuation theories 'tend to overlap' and 'no criteria can be identified that distinguish them in any useful manner'"); *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1010, 1019 n.15 (D. Mass. 1989) ("the distinction between the two exceptions seems more apparent than real . . . the *de facto* merger exception subsumes the continuation exception").

14

court's analysis of whether asset purchaser was liable for seller's debts); *Graef v. Hegedus*, 698

So. 2d 655, 656 (Fla. Dist. Ct. App. 1997) (stating that whether transaction constitutes fraudulent

transfer in accordance with successor liability doctrine is determined under Florida's Uniform

Fraudulent Transfer Act).  In other words, if the predecessor made a fraudulent conveyance of its

assets to the successor entity, then a creditor can seek to avoid that transaction under the laws in

force in all of the jurisdictions which permit creditors to seek avoidance of fraudulent transfers.

Fraudulent transfer jurisprudence is also largely similar across the different jurisdictions as 43

states have adopted the Uniform Fraudulent Transfer Act.[12]  In general, there are two kinds of

fraudulent transfers which may be avoided: (i) constructive fraudulent transfers, and (ii) actual

fraudulent transfers.

### i.    Constructive Fraudulent Transfers

33.    Liability for constructive fraudulent transfers may be imposed when the transferor

received less than reasonably equivalent consideration for the assets while the transferor was

insolvent or rendered insolvent by the transfer.  *See Tommy Lee Handbags Mfg. Ltd. v. 1948

Corp.*, 971 F. Supp. 2d 368, 383 (S.D.N.Y. 2013) (finding constructive fraudulent transfer claim

under New York law adequately pled based on asset sale transactions without fair consideration,

while entity was insolvent).

34.    LBHI submits that many of the Sellers likely received less than reasonably

equivalent value for their business assets, transferred them while insolvent or were rendered

---

[12] The Uniform Fraudulent Transfer Act ("UFTA") has been adopted in 43 states and the District of Columbia, with
the following seven states having adopted another form of fraudulent transfer law, most notably the Uniform
Fraudulent Conveyance Act which is the precursor of the UFTA: (i) Alaska (A.S. § 34.40.010 *et seq.*); (ii) Kentucky
(K.R.S. § 378.010 *et seq.*); (iii) Louisiana (La. Civ. Code art. 2036 *et seq.*); (iv) Maryland (Md. Code, Com. Law §
15-201 *et seq.*); (v) New York (N.Y. Debt. & Cred. Law § 270 *et seq.*); (vi) South Carolina (S.C. Code § 27-23-10 *et
seq.*); and (vii) Virginia (Va. Code § 55-80 *et seq.*).

insolvent by the transfer.  Under such circumstances, the Successors will be liable to LBHI for

the Indemnification Claims.

### ii.    Actual Fraudulent Transfers

35.    Actual fraudulent transfer liability arises where the transfer was made with the

intent to hinder, delay or defraud present or future creditors of the transferor.  *See Tommy Lee*

*Handbags Mfg. Ltd.*, 971 F. Supp. 2d at 382.  In determining the transferor's actual intent,

consideration may be given to the following "badges of fraud":

> (1)    the transfer or obligation was to an insider;
> (2)    the transferor retained possession or control of the property transferred after the transfer;
> (3)    the transfer or obligation was disclosed or concealed;
> (4)    before the transfer was made or obligation was incurred, the transferor had been sued or threatened with suit;
> (5)    the transfer was of substantially all the transferor's assets;
> (6)    the transferor absconded;
> (7)    the transferor removed or concealed assets;
> (8)    the value of the consideration received by the transferor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9)    the transferor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10)   the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11)   the transferor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the transferor.

5 Collier on Bankruptcy ¶ 548.04[1][b][i] (listing 11 badges of fraud); *In re Knippen*, 355 B.R.

710, 732 (Bankr. N.D. Ill. 2006) (same).[13]

36.    The Successors will be liable for the Indemnification Claims if the underlying

transfer was undertaken with the intent to hinder, delay or defraud the Sellers' creditors,

including LBHI.  LBHI will be able to establish such intent where "badges of fraud" are present.

*See, e.g., Tommy Lee Handbags Mfg. Ltd.*, 971 F. Supp. 2d at 382-83 (sustaining actual

---

[13] These eleven badges of fraud are expressly incorporated into the UFTA.

fraudulent transfer claim under New York law given personal relationship between transferor and transferee, common ownership interests, inadequacy of consideration, suspicious timing of transaction, and transaction was concealed); *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 380-81 (Bankr. M.D. Fla. 2014) (finding actual fraudulent transfer claim adequately pled under Florida law where transferee paid 10% of the market price of assets transferred, transfer was concealed, transferor had been sued before transfer, and transferor rendered insolvent shortly after transfer); *Sourcing Mgmt., Inc. v. Simclar, Inc.*, No. 3:14-CV-2552-L, 2015 WL 4587974, at *15 (N.D. Tex. July 30, 2015) (upholding actual fraudulent transfer claim under Texas law where transferor remained in control of assets, transfer was concealed, transferor was sued pre-transfer, transfer was substantially all of debtor's assets, and transfer made before substantial debt incurred). LBHI submits that certain of the transactions that resulted in the Successors acquiring the business or the assets of Sellers are likely to be the product of actual fraudulent intent.

## B.    The Court Has Authority to Direct the Successors to Participate in ADR

37.    The Court has post-confirmation jurisdiction to consider this Motion and enter the proposed relief in the Order granting the Motion annexed hereto as Exhibit B because (i) this matter has a close nexus to the Plan, and (ii) the Plan explicitly permits and contemplates the Court exercising post-confirmation jurisdiction over this matter. *See Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 Fed. Appx. 134, 137 (2d Cir. 2011). Significantly, the Court already determined that it had post-confirmation jurisdiction to consider the ADR Motion and enter the ADR Order. *See* ADR Order § A. By this Motion, LBHI merely seeks an order in aid of the ADR Order, clarifying its application to the Successors.

38.    *First*, the Motion and the relief have a "close nexus" to the bankruptcy case. *DPH Holdings Corp.*, 448 Fed. Appx. at 137; *see also In re Metro-Goldwyn-Mayer*, 459 B.R. 550, 556

17

(Bankr. S.D.N.Y. 2010) ("'close nexus' test is met when a matter affects the interpretation,

implementation, consummation, execution, or administration of the confirmed plan") (citation

and internal quotation marks omitted).  Pursuant to Section 14.1(i) of the Plan, the Court retained

jurisdiction to "issue injunctions, enter and implement other orders, and take such other actions as

may be necessary or appropriate to enforce or to restrain interference by any person with the

consummation, implementation or enforcement of . . . any [] order of the Bankruptcy Court."

Plan § 14.1(i).  Bankruptcy courts also have inherent authority to interpret and enforce their own

prior orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (upholding the

bankruptcy court's jurisdiction to enter a "clarifying order," interpreting the scope of an

injunction contained in a prior order confirming a chapter 11 plan); *In re Petrie Retail, Inc.*, 304

F.3d 223, 230 (2d Cir. 2002) ("bankruptcy court retains post-confirmation jurisdiction to interpret

and enforce its own orders").

39.    Additionally, Section 13.8 of the Plan specifically provides that LBHI retains

Litigation Claims, and the Plan's definition of Litigation Claims as "liquidated or unliquidated,

fixed or contingent, matured or unmatured" causes of action "based in whole or in part upon any

act or omission or other event occurring prior to the Effective Date" plainly encompasses the

Indemnification Claims to be mediated against the Successors.  This Court also previously ruled

that the Indemnification ADR Procedures contemplated by the ADR Motion and ADR Order

"has a close nexus to the chapter 11 cases and the [Plan]."  ADR Order § A.

40.    *Second*, the Bankruptcy Court was expressly granted the jurisdiction to adjudicate

the Indemnification Claims (as well as enter orders in connection with such adjudications, as is

the case here).  "Where the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's

post-confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all

18

proceedings 'related to' the bankruptcy.'"  *See Eastern Airlines, Inc. v. General Mills, Inc. (In re Ionosphere Clubs, Inc.)*, No. 89 B 10448, 1999 Bankr. LEXIS 1875, at \*21 (Bankr. S.D.N.Y. May 12, 1999) (*quoting Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638-39 (S.D.N.Y. 1997)).

41.     The Confirmation Order provides that the Bankruptcy Court shall, upon the "Effective Date," retain "exclusive jurisdiction over all matters arising under or related to, the Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan." *See* Confirmation Order ¶ 77.  Article XIV of the Plan contains a list of matters over which the Bankruptcy Court retained exclusive jurisdiction  *See* Plan § 14.1 (b), (i), (k).  The Plan and Confirmation Order expressly preserve Indemnification Claims for the benefit of creditors and provide for the Court's jurisdiction over the "consummation, implementation or enforcement" of any Court order, such as the ADR Order.  As a result, both the Plan and Confirmation Order support the Court's exercise of jurisdiction to consider the Motion and enter the proposed order granting the relief sought.

42.     In addition, section 105(a) of the Bankruptcy Code grants the Bankruptcy Court broad authority and discretion to take such actions and implement such procedures as are necessary to oversee court-approved ADR. 11 U.S.C. § 105(a); *see also In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) ("it is within a district court's inherent powers to order even non-consensual mediation in those cases in which the step seems reasonably likely to serve the interests of justice") (citations omitted); *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (recognizing "court's power" to enter order related to pending arbitration which "flows from its inherent power to control its docket"); *Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 847 (Bankr. M.D. Fla. 1998) ("bankruptcy court has the authority and power to

promulgate rules associated with court-annexed mediation and, where necessary, to require the parties to participate in same"). Accordingly, the Court has the authority to interpret and enforce the ADR Order as it relates to the Successors.

43.     The Court may also exercise personal jurisdiction over the Successors. Having given notice and an opportunity to be heard to currently known Successors, LBHI seeks to expressly mandate the participation of the Successors within the scope of the ADR Order. This also constitutes a contested matter under Bankruptcy Rule 9014(a). Under Rule 9014(b), service in a contested matter is made "in the manner provided for service of a summons and complaint by Rule 7004." The Court has jurisdiction over a party under Rule 7004 so long as such party has minimum contacts with the United States, as all the Successors do. *See Warfield v. KR Entertainment, Inc.* (*In re Fed. Fountain, Inc.*), 165 F.3d 600, 602 (8th Cir. 1999); *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.)*, 124 B.R. 931, 934 (S.D.N.Y. 1991) ("In a Chapter 11 [proceeding, the court] has nationwide personal jurisdiction over the defendants."); *In re Ismael Longoria*, 400 B.R. 543, 551-52 (W.D. Tex. 2009) (where party to contested matter has been properly served under Bankruptcy Rules, court can exercise nationwide personal jurisdiction). Further, the Court has already considered and approved the same procedure with respect to the original ADR Motion. Indeed, the Court contemplated that foreign Successors that were not subject to the Court's nationwide personal jurisdiction would be given an opportunity to raise such a defense with the Court, should the situation ever arise. *See* Hearing Tr. at 49 - 50; *see also* ADR Order § A ("[t]he Court has jurisdiction to enter this Order").

20

### C.    Successors Should Be Made to Comply With the ADR Order

44.    The ADR Order mandates participation in ADR notwithstanding any defenses that the parties may purportedly hold, including that they are not liable for the Sellers' obligations under applicable state law.  *See* ADR Order § 6 (providing that upon receipt of ADR Package, participation in ADR is "mandatory").  Indeed, many of the original Sellers' objections to the ADR Motion were based upon alleged individual defenses, which the Sellers argued protected them from being forced to participate.  The Court rejected those arguments.

45.    Rather, the ADR Order expressly provides that participation in mediation would not prejudice any defense.  *See* ADR Order § 15 (stating that participation in ADR will not cause any defenses to be waived); *see also* Hearing Tr. at 67 (Court stating that entry of ADR Order would not "prejudice any arguments" raised by defendants concerning certain defenses); at 68 ("you're not waiving any rights by participating in mediation").  The Successors' generalized defense based on successor liability law, should similarly not preclude the Successors from participating in ADR.

46.    Requiring the Successors to participate in the ADR process does not run afoul of due process.  Due process concerns only arise when there is the threat of a binding order or judgment on a party.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980) (due process concerns arise in context of "power to render a ***valid judgment***" over out of state defendants) (emphasis added); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a ***judgment to be binding on a litigant*** who was not a party or a privy and therefore has never had an opportunity to be heard.") (emphasis added); *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1176-77 (5th Cir. 1979) (held mandatory mediation process "do not violate the federal right to due process of law of law").  Whereas

21

here, mediation is by its very nature non-binding, and the ADR Order explicitly states that the Successors cannot be forced to accept any specific settlement or compromise. *See* ADR Order § 6(b) ("[n]o party is required to settle or compromise any dispute or enter into a particular settlement or compromise").

47.     The alternative to mediation would be multiple individual lawsuits or motions for sanctions under the ADR Order,[14] which would be antithetical to the favored policy of utilizing the cost-effective and expedited alternative dispute resolution process. *See Fisher v. SmithKline Beecham Corp.*, No. 07–CV–347A(F), 2009 WL 899433, at *2 (W.D.N.Y. Mar. 26, 2009); *Grey v. F.D.I.C.*, No. 88 Civ.7452(THK), 2002 WL 959564, at *5 (S.D.N.Y. May 8, 2002). This Court previously rejected the Sellers' argument that it would be somehow more cost-effective or less burdensome on the parties for LBHI to simply file suit against the Sellers. *See* Hearing Tr. at 46-48.

48.     In addition, the ADR Order provides that information and documents exchanged between the parties are to remain confidential. *See, e.g.,* ADR Order § 5. Accordingly, to the extent that the Successors are denying liability for the Sellers' debts and obligations, an order from the Court is required to clarify that LBHI's service of the ADR Package or any related document concerning LBHI's Indemnification Claims on the Successors does not constitute a violation of the ADR Order.

49.     Further, while LBHI's investigation to date has identified fifty-four Successors (*see* Ex. A) and provided them with notice of this Motion, LBHI will likely identify additional Successors. When such Successors are identified, LBHI may make additional applications for the relief set forth herein.

---

[14] *See* ADR Order § 12.

### NOTICE

50.    No trustee has been appointed in these chapter 11 cases.  LBHI, in accordance

with the procedures set forth in the amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Dkt. No. 9635], has served notice of

this Motion on (i) the U.S. Trustee; (ii) all known Successors; and (iii) all parties who have

requested notice in these chapter 11 cases.  LBHI submits that no other or further notice need be

provided.

51.    While the ADR Motion was granted with the Court's entry of the ADR Order, no

previous request for the relief sought herein has been made by LBHI to this or any other court.

## **CONCLUSION**

WHEREFORE, LBHI respectfully requests that the Court grant the relief requested herein by entering the Proposed Order annexed hereto as Exhibit B, and grant such other and further relief as it deems just and proper.


Dated:  New York, New York
         October 22, 2015

                              */s/William A. Maher*
                            William A. Maher
                            Paul R. DeFilippo
                            James N. Lawlor
                            Adam M. Bialek
                            Fletcher W. Strong

                            WOLLMUTH MAHER & DEUTSCH LLP
                            500 Fifth Avenue
                            New York, New York 10110
                            Telephone:  (212) 382-3300
                            Facsimile:  (212) 382-0050

                                 -and-

                            ROLLIN BRASWELL FISHER LLC
                            8350 E. Crescent Pkwy., suite 100
                            Greenwood Village, Colorado 80111
                            Telephone:  (303) 945-7415
                            Facsimile:  (303) 974-7468
                            Michael A. Rollin
                            Maritza Dominguez Braswell (*pro hac vice*)

                            *Counsel for Lehman Brothers Holdings Inc.*