**Hearing Date and Time:  December 17, 2015 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  November 5, 2015 at 4:00 p.m. (Eastern Time)**

Dean A. Ziehl
Maria A. Bove
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017-2024
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Attorneys for Lehman Brothers Holdings, Inc.*
*and Certain Affiliates*

---------------------------------------------------------------------------X
In re:                                                  :      Chapter 11
                                                        :
                                                        :      Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :
                                                        :      (Jointly Administered)
                    Debtors.                            :
---------------------------------------------------------------------------X

# MOTION FOR ORDER COMPELLING ARBITRATION OF DISPUTES UNDER SETTLEMENT AGREEMENT BETWEEN DEBTORS AND ARCH INSURANCE COMPANY

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. FACTUAL CONTEXT FOR MOTION .................................................................................... 3

III. JURISDICTION .......................................................................................................................... 7

IV. RELIEF REQUESTED ............................................................................................................... 7

    A. Arbitrability is Decided in the First Instance by the Arbitrator ............................... 8

    B. The Entire Dispute is Subject to Arbitration.......................................................... 12

V. NOTICE ..................................................................................................................................... 15

VI. CONCLUSION.......................................................................................................................... 16

DOCS_LA:293497.5 52063/013

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643, 106 S.Ct. 1415 (1986) .......................................................................... 9

*Baker v. Conoco Pipeline Co.*,
    280 F.Supp.2d 1285 (N.D. Okla. 2003) ..................................................................... 15

*ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*,
    102 F.3d 677 (2d Cir. 1996) ....................................................................................... 16

*Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*,
    942 F. Supp. 757 (D. Conn. 1996) ............................................................................. 16

*Doctor's Assocs., Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995) ......................................................................................... 14

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938, 115 S.Ct. 1920 (1995) .......................................................................... 9

*Gibson v. Seabury Transp. Advisor LLC*,
    91 A.D.3d 465, 936 N.Y.S.2d 539, 539 (2012) ......................................................... 12

*Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*,
    408 F.2d 606 (2d Cir. 1969) ....................................................................................... 15

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ................................................. 9

*Martin K. Eby Const. Co., Inc. v. City of Arvada, Colo.*,
    522 F.Supp. 449 (D. Colo. 1981) ............................................................................... 16

*Moses H. Cone Hospital v. Mercury Constr.*,
    460 U.S. 1, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) ............................................ 15

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 103 S.Ct. 927 (1983) ........................................................................ 9, 13

*P & P Indus., Inc. v. Sutter Corp.*,
    179 F.3d 861 (10th Cir. 1999) .................................................................................... 13

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ............................................................................. 8, 9, 10

*PaineWebber, Inc. v. Cohen*,
    276 F.3d 197 (6th Cir. 2001) ............................................................................................. 15

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41 (2d Cir.1996) ................................................................................................... 16

*Rafferty v. Xinhua Fin. Ltd.*,
    No. 11 CIV. 133 CM, 2011 WL 335312, at *5 (S.D.N.Y. Jan. 31, 2011) ............................... 11

*Schulze and Burch Biscuit Co. v. Tree Top, Inc.*,
    642 F.Supp. 1155 (N.D.Ill.1986), aff'd, 831 F.2d 709 (7th Cir.1987) ...................................... 13

*Sharp Electronics Corp. v. Branded Products, Inc.*,
    604 F. Supp. 239 (S.D.N.Y. 1984) ...................................................................................... 15

*Shaw Group Inc. v. Triplefine Intern. Corp.*,
    322 F.3d 115, 120 (2d Cir. 2003) ......................................................................................... 8

*Smith Barney Shearson Inc. v. Sacharow*,
    91 N.Y.2d 39, 666 N.Y.S.2d 990, 991 (1997) ....................................................................... 10

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*,
    497 Fed.Appx. 740 (9th Cir. 2012) ...................................................................................... 12

**Statutes**

9 U.S.C. § 1 ................................................................................................................................ 7
9 U.S.C. § 2 ................................................................................................................................ 7
9 U.S.C. § 4 ................................................................................................................................ 8
28 U.S.C. § 1334 ........................................................................................................................ 7
28 U.S.C. § 157 .......................................................................................................................... 7
28 U.S.C. § 157(b) ..................................................................................................................... 7

DOCS_LA:293497.5 52063/013

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman Commercial Paper Inc. ("LCPI") (together, the "Lehman Debtors" and together with non-debtor affiliates Lehman ALI, Inc. and LV Ritter Ranch LLC, "Lehman"), file this Motion (the "Motion") and in support thereof respectfully represent:

## I. PRELIMINARY STATEMENT[1]

1. The Motion concerns disputes arising under a settlement agreement between Lehman and Arch Insurance Company ("Arch") approved by this Court on October 19, 2011 (the "Arch Settlement Agreement"). The Arch Settlement Agreement allocates financial responsibility for development work to be performed at a project owned by Lehman in Palmdale, California, referred to as the "Ritter Ranch Project." It contains an arbitration clause by which the parties agreed to submit "any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT … to binding arbitration at and be administered by the Judicial Arbitration and Mediation Service ("JAMS") …."

2. A dispute has arisen under the Arch Settlement Agreement that Arch refuses to submit to arbitration. Lehman contends that all conditions have been met to the release of certain collateral securing its obligations. Arch disagrees and refuses to release the collateral, which includes a trust deed that clouds title to the Ritter Ranch Project. Underlying its refusal is a contention that it is not required under the Arch Settlement Agreement to perform

---

[1] Capitalized terms used in this Preliminary Statement, but not otherwise defined below, shall have the meanings ascribed to them elsewhere in this Motion.

1

certain development work at the Ritter Ranch Project under its separate agreement with the City of Palmdale, California (the "City"). The allocation of such costs between Lehman and Arch was a primary subject of the Arch Settlement Agreement. Nonetheless, Arch contends that it cannot be made to arbitrate the dispute because it pertains to its obligations to the City, and the City is an "indispensable party" that cannot be compelled to arbitrate.

3. Arch's position is meritless. First, whether the dispute is arbitrable is for the arbitrator to determine, not the Court. The parties' delegation of authority over their disputes to JAMS is expressed in the broadest possible terms, and the JAMS rules provide that the arbitrator shall decide whether issues fall within the scope of the arbitration clause. The law is clear that this delegation of authority must be enforced.

4. Second, even if the Court rules that it must decide the question of arbitrability, the question is easily answered. The dispute is "any dispute." The fact that it relates to obligations under a third party contract does not nullify the requirement that Lehman and Arch arbitrate "any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT." Controlling authority holds unequivocally that a party to an arbitration agreement may not avoid arbitration by claiming that a nonparty to the arbitration agreement is an indispensable party. Regardless, the crux of the dispute is not whether the development work will be done, but whether Lehman or Arch was intended to bear the financial burden under the Arch Settlement Agreement.

5. Lehman is marketing the Ritter Ranch Project, and Arch's refusal to release its collateral adversely affects Lehman's ability to sell the Ritter Ranch Project. Lehman and Arch agreed to resolve disputes promptly by seeking consideration from JAMS within 48 hours of submitting a dispute. By delaying its responses and then refusing to execute a joint

submission, Arch has already managed to achieve months of delay. Its excuse is so lacking in merit as to suggest that its goal is merely to gain further delay by requiring Lehman to file this Motion. Accordingly, the Lehman Debtors request that the Court summarily issue an order compelling arbitration of the entire dispute.

## II.    FACTUAL CONTEXT FOR MOTION

6.    Several years ago, LBHI, LCPI, Lehman ALI, Inc. and certain affiliates that took title to the projects entered into global settlement agreements with Arch in connection with certain surety bonds issued by Arch with respect to various California land development projects then owned by affiliates of The SunCal Companies and, in certain instances, by Lehman as well. The background is thoroughly discussed in the *Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Enter Into Settlement With Arch Insurance Company*, filed on September 28, 2011 [Docket No. 20369] (the "Settlement Motion"), appended hereto as Exhibit A.

7.    One of those development projects is the Ritter Ranch Project, located on 10,625 acres of land in Palmdale, California. The Ritter Ranch Project is the subject of the Arch Settlement Agreement that was appended as Exhibit A to the Settlement Motion. As recited therein, Arch had issued surety bonds to secure certain development work relating to the Ritter Ranch Project (the "Ritter Ranch Bonds"), in the aggregate outstanding penal sum of $12,796,467, for the benefit of the then-developer, Palmdale Hills Property, LLC (an affiliate of The SunCal Companies).

8.    The City had made demand upon and filed a lawsuit against Arch seeking performance by Arch under the Ritter Ranch Bonds. Arch and the City reached an agreement with respect to those obligations (referenced by the parties as the "ELR Settlement Agreement").

3

9. Certain Lehman entities had lent approximately $284,000,000 in original principal amount on a senior secured basis to Palmdale Hills Property, LLC, which filed for protection under chapter 11 together with other SunCal Companies in November 2008. Arch was an intervening plaintiff in an equitable subordination proceeding against Lehman.

10. With the approval of this Court, Lehman sponsored a plan of reorganization that provided in relevant part for the transfer of the Ritter Ranch Project and certain other projects to Lehman nominees. In connection therewith, Lehman and Arch negotiated the Arch Settlement Agreement (dated September 27, 2011 and joined by LV Ritter Ranch LLC pursuant to an *Amendment to Settlement Agreement* dated April 27, 2012) to resolve Arch's obligations under the Ritter Ranch Bonds. In short, it provided that the Ritter Ranch Bonds would remain in effect and that Arch would continue to perform its obligations to the City under the ELR Settlement Agreement, and that Lehman would reimburse Arch for such work in a capped amount of up to $1,100,000. Arch would bear all costs exceeding the capped amount. Specifically, Lehman would:

> … reimburse ARCH in an aggregate amount (the "ELR PAYMENT CAP AMOUNT") equal to the lesser of (a) $1,100,000, and (b) the actual amounts paid by ARCH in respect of the work ("ELR WORK") committed to be performed by ARCH under the ELR SETTLEMENT AGREEMENT. Any and all claims that ARCH may have against the RITTER RANCH DEBTOR or any other SUNCAL DEBTOR arising from any costs, expenses or other losses incurred by ARCH in respect of the ELR WORK in excess of the ELR PAYMENT CAP AMOUNT shall be waived by ARCH.

Arch Settlement Agreement, ¶ 3.d. The Arch Settlement Agreement also provided for the Lehman nominee that held title to the Ritter Ranch Project (LV Ritter Ranch LLC) to place $1.5 million into escrow and deliver a deed of trust in favor of Arch encumbering the Ritter Ranch

4

Project to secure Lehman's reimbursement obligation under the Arch Settlement Agreement (the "Arch Collateral"). *Id*.

  11.  Paragraph 13 of the Arch Settlement Agreement provides in full:

  13.  <u>*Dispute Resolution Procedures, Venue and Choice of Law*</u>

> If the PARTIES cannot resolve any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT or with respect to any claims arising under this AGREEMENT, the PARTIES agree that any such dispute will be submitted to binding arbitration at and be administered by the Judicial Arbitration and Mediation Service ("<u>JAMS</u>") before retired Judge Daniel Weinstein (or such other mediator/arbitrator as JAMS may appoint and the PARTIES may agree to if Judge Weinstein is unavailable). The PARTIES will request consideration of the dispute by Judge Weinstein (or other agreed upon mediator/arbitrator) within forty-eight (48) hours following a written notice from any PARTY to the other PARTIES that a dispute has arisen which cannot be resolved consensually among the PARTIES and will request the issuance of an expedited written opinion from Judge Weinstein (or other agreed upon mediator/arbitrator) which written opinion will be fully binding upon the PARTIES. The administration fees and expenses of any mediation shall be borne equally by the LEHMAN PARTIES, on the one hand, and ARCH, on the other hand.

  12.  On October 19, 2011, the Court entered its Order Granting Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Enter Into Settlement With Arch Insurance Company [Docket No. 21034] (attached hereto as <u>Exhibit B</u>). The Order provided in part that "this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order. . . ." Order at 4.

5

13. A dispute has arisen between Lehman and Arch under the Arch Settlement Agremeent. As described in July 28, 2015 correspondence from Lehman to Arch,[2] the dispute concerns whether the conditions of the Arch Settlement Agreement have been met for the release of the Arch Collateral. As described in the July 28 letter:

> Arch would not release the Arch Collateral because there remained an unresolved issue regarding the completion of certain ELR Work, particularly the undergrounding of the street light wiring in connection with the installation of certain street lights on Elizabeth Lake Road (the "Undergrounding Work"). The Undergrounding Work is estimated to cost approximately $2.7 million and it is Arch's position that this work was not included among the ELR Work that Arch agreed to perform under the ELR Settlement Agreement.
>
> * * *
>
> As detailed above, a dispute has arisen between Arch and the Lehman Parties as to (a) whether Arch is obligated under the ELR Settlement Agreement, and by reference therein, under the Settlement Agreement, to complete the Undergrounding Work at its sole expense (and if so, whether Arch is entitled to any reimbursement therefor under the Settlement Agreement beyond the ELR Payment Cap Amount of $1.1 million), and (b) whether Arch is required under the Settlement Agreement to release the Arch Collateral irrespective of the resolution of the issues described in clause (a).

14. Lehman requested that Arch agree to arbitrate the dispute pursuant to paragraph 13 of the Arch Settlement Agreement. By letter dated July 31, 2015, Arch responded that it is unwilling to submit to arbitration a portion of the dispute: the question of whether it is required under the Arch Settlement Agreement to perform and pay for the Undergrounding

---

[2] The initial correspondence describing the parties' respective positions (Lehman's July 28, 2015 letter to Arch, and Arch's July 31, 2015 response to Lehman) are each appended to Lehman's August 20, 2015 letter to the JAMS arbitrator, the Hon. Daniel Weinstein (Ret.), submitted with the concurrently filed Affidavit of Dean A. Ziehl.

6

Work. Fairly characterized, its position is that because the issue concerns the ELR Settlement Agreement between Arch and the City, and the City cannot be compelled to participate, the issue is not subject to arbitration because the City is an "indispensable party." Arch will consent to arbitrate only one issue: whether it is required to release the Arch Collateral irrespective of who is responsible for the Undergrounding Work, and refuses to allow the arbitrator to decide what issues are arbitrable, much less hear the full dispute.

15.    By letter dated August 20, 2015, Lehman apprised the arbitrator of the dispute and the parties' respective positions concerning arbitration, and asked him to order the parties to submit the dispute to arbitration. After supplemental submissions from the parties, JAMS advised that it cannot proceed unless both sides execute the same version of a Stipulation for Arbitration.

16.    Finally, following a status conference with JAMS and requesting over a week to review the straight-forward law on whether the arbitrator is to decide arbitrability (as the JAMS rules provide), Arch notified Lehman on October 14, 2015 that it would not agree to submit the issue of arbitrability to the arbitrator.

### III.    JURISDICTION

17.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV.    RELIEF REQUESTED

18.    By this Motion, Lehman respectfully requests the entry of an order (a) compelling Arch to submit the entire dispute between the parties to arbitration, including the question of arbitrability, and/or (b) determining that the entire dispute is arbitrable and compelling Arch to submit the entire dispute to arbitration.

7

A.  **Arbitrability is Decided in the First Instance by the Arbitrator**

19. Because the arbitration provision is part of a contract affecting interstate commerce, it is governed by the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 1, 2; *Shaw Group Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (hereinafter, "Shaw").

20. Pursuant to section 4 of the Federal Arbitration Act, the court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  "The role of the courts in reviewing matters subject to arbitration, therefore, is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate, in whole or in part."  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).  Where the arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983)).

21. The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986)).  In evaluating whether the parties so intended to provide, courts apply ordinary state-law contract principles.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995).  *See generally Shaw*, 322 F.3d at 120-121.

8

22. In *PaineWebber Inc. v. Bybyk*, the Second Circuit found that several provisions of a client agreement evidenced the parties' intent to arbitrate all issues, including arbitrability:

> (a) "*[A]ny and all controversies ... concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement ... shall be determined by arbitration....*"
>
> (b) "[T]he parties are waiving their right to seek remedies in court...."
>
> (c) "[A]ny arbitration under this agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act...."
>
> (d) "[A]rbitration shall be governed by the rules of the organization convening the panel...."

*PaineWebber Inc. v. Bybyk*, 81 F.3d at 1199 (emphasis in original).

> The meaning of the first of these provisions is plain indeed: any and all controversies are to be determined by arbitration. The wording is inclusive, categorical, unconditional and unlimited. The words "any and all" are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration. That provision expressly includes the category of disputes regarding the construction of the Agreement—such as whether it incorporates the NASD Code.

*Id*. "An objective reading of the Agreement, therefore, leads us to conclude that the parties intended to arbitrate issues of arbitrability." *Id*. at 1200.

The arbitration provision before the Second Circuit in *Shaw* provided:

> All disputes between you and us concerning or arising out of this Agreement shall be referred to arbitration to the International Chamber of Commerce, New York, New York, in accordance with the rules and procedures of International Arbitration. This Agreement and the rights and obligations of the parties shall be construed in accordance with and governed by the laws of New York.

*Shaw*, 322 F.3d at 120. The court found that "a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to

9

arbitrate issues of arbitrability.'" *Id*. at 121 (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d at 1199–1200)). The Second Circuit observed that the New York Court of Appeals had also cited *PaineWebber* approvingly and reached the same conclusion in *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 43, 46, 666 N.Y.S.2d 990, 991 (1997) (holding that language providing for "[a]ny controversy" between the parties to be "settled by arbitration," was sufficiently "plain and sweeping" to indicate an intent to have arbitrability decided by the arbitrators).

23.    As additional support, the court found that "the parties' intent to arbitrate arbitrability is further evidenced by their agreement to refer all disputes to 'the International Chamber of Commerce ... in accordance with the rules and procedures of International Arbitration'" *Id*. at 122. Although the parties did not specify which rules were to apply, the court stated that they must have at least assumed such language to include the ICC's own rules, and that such rules provide for the arbitrator to address questions of arbitrability. *Id*.

24.    The Second Circuit decisions apply squarely to the Arch Settlement Agreement. Like the agreements in *Shaw*, *PaineWebber* and *Smith Barney Shearson*, the Arch Settlement Agreement states the parties' agreement to arbitrate their disputes in the broadest possible terms. The parties agreed to submit "any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT … to binding arbitration at and be administered by the Judicial Arbitration and Mediation Service ("JAMS")." *See also Rafferty v. Xinhua Fin. Ltd.*, No. 11 CIV. 133 CM, 2011 WL 335312, at *5 (S.D.N.Y. Jan. 31, 2011) ("[T]he parties' intent to arbitrate the question of arbitrability is evidenced by the language used in the Merger Agreement's arbitration provision [which] states that 'any and all disputes ... arising under or relating to this Agreement ... shall be resolved through binding arbitration.'").

10

25.     Second, in agreeing that the binding arbitration would be administered by JAMS, Arch and Lehman accepted the JAMS Comprehensive Arbitration Rules & Procedures (the "Rules").  Rule 1(b) provides that "[t]he Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS … without specifying any particular JAMS Rules…."[3]  Rule 11(b) provides for the JAMS arbitrator to decide arbitrability:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

26.     "By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability." *Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 Fed.Appx. 740, 742 (9th Cir. 2012) (applying New York law); *Gibson v. Seabury Transp. Advisor LLC*, 91 A.D.3d 465, 936 N.Y.S.2d 539, 539 (2012) (intent to allow arbitrator to decide issue of arbitrability demonstrated by parties' incorporation of JAMS/Endispute's commercial rules).  An argument that Paragraph 13 does not specify which rules are to apply would be unavailing.  More clearly than in *Shaw*, in agreeing that disputes were to be "administered" by JAMS, the parties manifestly intended that JAMS rules would apply.[4]  *See also P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999) ("A party who consents by contract to arbitration before the AAA also consents to be bound by the

---

[3] The JAMS Rules may be accessed at http://www.jamsadr.com/rules-comprehensive-arbitration/.

[4] Notably, Rule 8(c) of the JAMS Streamlined Arbitration Rules & Procedures also provides that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

11

procedural rules of the AAA, unless that party indicates otherwise in the contract."); *Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 642 F.Supp. 1155, 1157 (N.D.Ill.1986), aff'd, 831 F.2d 709 (7th Cir.1987) ("[s]ince the drafter of the arbitration provision contemplated arbitration by the AAA of all disputes arising out of the contract, the relevant commercial arbitration rules promulgated by the AAA were incorporated into the arbitration agreement.").

27. Lehman respectfully submits that the foregoing authority dictates the conclusion that the parties clearly and unmistakeably intended questions of arbitrability to be decided by the arbitrator.

**B.    The Entire Dispute is Subject to Arbitration**

28. If the Court decides that it must determine arbitrability, it should rule that the entire dispute must be arbitrated. The decision is made even easier by the fact that there is no presumption to overcome; to the contrary, any ambiguity is to be resolved in favor of finding that parties intended to arbitrate their dispute. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24-25; *Shaw*, 322 F.3d at 120.

29. Here there is not even an ambiguity. Arch cannot overcome the broad language of the arbitration agreement. Arch and Lehman agreed to submit to binding arbitration "any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT." Self-evidently, a dispute concerning whether the conditions to a release of the Arch Collateral have been met is such a dispute.

30. Arch argues that arbitration is not required because the dispute concerns Arch's obligations to the City, not to Lehman. That does not mean, however, that there is not also a dispute between Arch and Lehman under the Arch Settlement Agreement concerning whether Arch must perform the Undergrounding Work. Arch's failure to perform obligations

12

that are required for the development of the property will saddle Lehman, directly or indirectly, with costs that Lehman contends were to be borne by Arch under the Arch Settlement Agreement. That is a dispute concerning the performance, interpretation or enforcement of the Arch Settlement Agreement. A party cannot unilaterally deny that a dispute exists.

31. Arch's argument that the issue cannot be arbitrated because the City cannot be joined and is an "indispensable party" flies in the face of Supreme Court and Second Circuit authority that refuses to permit a party to avoid arbitration by claiming that nonparties to the arbitration agreement are indispensable parties. *See, e.g., Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("If such a rule were adopted, a party resisting arbitration could defeat federal jurisdiction simply by … by claiming that the local [non-diverse] defendants in the parallel action were "indispensable parties" to the petition to compel."). *See also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 205-06 (6th Cir. 2001) (same).

> Allen need not be a party to this proceeding. The Supreme Court has stated: if [petitioner] obtains an arbitration order for its dispute, the [respondent] will be forced to resolve these related disputes in different forums. That misfortune, however, ... occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to the arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not the arbitration agreement. If the dispute between [petitioner] and [respondent] is arbitrable under the Act, then the [respondent's] two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation. *Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (emphasis in original) (footnote omitted). *See also Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2d Cir. 1969).

*Sharp Electronics Corp. v. Branded Products, Inc.*, 604 F. Supp. 239, 241-42 (S.D.N.Y. 1984).

Thus enforcement of arbitration under the Federal Arbitration Act will not be denied as to the

13

two parties to the arbitration clause even when other parties to the dispute cannot be ordered to arbitrate. *Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2d Cir. 1969). *See also Baker v. Conoco Pipeline Co.*, 280 F.Supp.2d 1285, 1303-04 (N.D. Okla. 2003) ((plaintiff cannot avoid arbitration by adding nonsignatory defendant); *Cosmotek Mumessillik Ve Ticaret Ltd. Sirkketi v. Cosmotek USA, Inc.*, 942 F. Supp. 757, 759 (D. Conn. 1996) (same); *Martin K. Eby Const. Co., Inc. v. City of Arvada, Colo.*, 522 F.Supp. 449, 450 (D. Colo. 1981) (same).

32. The City is not an "indispensable party" in any event, or even a necessary party. It would not be bound by any arbitration award and would not be required do anything. "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract. . . . Furthermore, Connecticut is not required to do anything under the arbitration award, and thus its absence could in no way preclude complete relief from being granted. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir.1996) (complete relief "can be accorded even without the [absent party], because nothing in the district court's statements or final judgment requires the [absent party] to do anything or change any of its positions")." *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996).

33. This is first and foremost a financial dispute between Lehman and Arch. The Undergrounding Work that the City has made demand upon Arch to perform is work that will have to be performed by somebody in order to gain the requisite approvals and proceed with the development. If Arch does not perform the work, the burden will fall to the owner/developer, to Lehman's detriment. The arbitrator has broad discretion under the JAMS Rules to fashion a remedy that addresses the respective rights and obligations of Lehman and

Arch. Rule 24(c) provides that where, as in the Arch Settlement Agreement, the parties do not specify rules of law, "the Arbitrator shall be guided by the rules of law and equity that he or she deems to be most appropriate [and] may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement. . . ." It cannot be assumed that a just and equitable remedy requires the City's participation, particularly in view of the Supreme Court's directive that piecemeal resolution of a dispute is not a basis for refusing arbitration.

34. The fact that Arch disputes its separate obligations to the City is no basis for excluding that issue from the agreed upon vehicle for resolving its disputes with Lehman. To do so would indefinitely frustrate the purpose of the arbitration provision and impede Lehman's right to enforce Arch's obligations under the Arch Settlement Agreement.

## V. NOTICE

35. Notice of this Motion has been provided to the parties entitled to notice in accordance with the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].

## VI. CONCLUSION

WHEREFORE, the Lehman Debtors respectfully request that this Court enter an order (i) compelling Arch to submit the dispute to arbitration, including the issue of arbitrability, and/or (ii) determining that the dispute is arbitrable, and compelling Arch to submit the dispute to arbitration, and (iii) granting such other and further relief as the Court deems just.

Dated: October 26, 2015
      New York, New York

                                       */s/ Dean A. Ziehl*
                                      Dean A. Ziehl
                                      Maria A. Bove
                                      PACHULSKI STANG ZIEHL & JONES LLP
                                      780 Third Avenue, 36th Floor
                                      New York, New York 10017-2024
                                      Telephone: (212) 561-7700
                                      Facsimile: (212) 561-7777

                                      *Attorneys for Lehman Brothers Holdings Inc.*
                                      *and Certain Affiliates*