**Hearing Date and Time: November 13, 2015 at 12:00 p.m.**
**Objection Deadline: November 6, 2015 at 4:00 p.m.**

**BAKER & McKENZIE LLP**
**452 Fifth Avenue**
**New York, New York  10018**
**Telephone:  (212) 626-4100**
**Facsimile:  (212) 310-1600**
**Ira A. Reid (IR-0113)**

**Attorneys for Pentwater Growth Fund Ltd.**
**and Pentwater Credit Partners Fund Ltd.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | Case No. 08-13555 (SCC) |
| | (Jointly Administered) |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | |
| | Chapter 11 |
| **Debtors.** | |

**OBJECTION BY PENTWATER GROWTH FUND LTD. AND**
**PENTWATER CREDIT PARTNERS FUND LTD. TO DEBTORS'**
**RENEWED MOTION TO ALLOW DISCLOSURE OF DERIVATIVES**
**QUESTIONNAIRES**

Pentwater Growth Fund Limited ("Growth") and Pentwater Credit Partners Fund Ltd. ("Credit" and, collectively with Growth, "Pentwater"), by and through their undersigned counsel, hereby object to the renewed motion filed by Lehman Brothers Holdings Inc., as Plan Administrator on behalf of its affiliated debtors (collectively, the "Debtors" or "Movants") seeking to allow disclosure of derivatives questionnaires (the "Motion") as it relates to Pentwater, and states as follows:

**Preliminary Statement**

1.     Pentwater objects to the Motion on the grounds that disclosure of its derivative questionnaire responses and related documentation uploaded to the purportedly secure Lehman website dedicated for that purpose, would be prejudicial to Pentwater and inequitable.  Pentwater uploaded this confidential and commercial information in reliance on the Debtors' agreement and the Court's Bar Date Order (defined below) that the information placed on the secure website would remain confidential.  Moreover, re-writing the confidentiality requirement of the Court's Bar Date Order now, six years after Pentwater and other creditors relied on it, is fundamentally unfair and inequitable.  This is  particularly the case where, as here, it is predicated on the fact that the Debtors now apparently find it inconvenient to live with the bargain they previously struck with creditors, and are seemingly unwilling to fight their discovery battles directly with the litigants for whose benefit they are now seeking disclosure of information belonging to third parties.  Finally, effectively voiding prior confidentiality provisions of a negotiated order is a recipe for undercutting future creditor willingness to rely on negotiated solutions and court orders in future bankruptcy cases.

**Background**

2.     Growth and Credit timely filed derivatives proofs of claim (the "Pentwater Claims") and uploaded derivatives and guarantee questionnaires pursuant to the Court's July 2, 2009 *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* (the "Bar Date Order").  The Pentwater Claims have been fully allowed, including mutual releases, pursuant to settlement stipulation with the Debtors (and, in the case of Growth, an order of this Court).

2

3. The Bar Date Order required that the Debtors create an independent, secure website for the uploading of derivative and guarantee questionnaires, as well as supporting documentation in the nature of confidential and commercial information under section 107(b) of the Bankruptcy Code. It states that "the information submitted on the website http://www.lehman-claims.com in respect of Derivative Contracts and Guarantees will not be accessible on the website other than by the party that submitted such information, the Debtors, the Creditors' Committee and their respective advisors and counsel." Bar Date Order, p. 9. This confidentiality language was prompted by creditor objections, and Pentwater relied on this confidentiality language when it uploaded its questionnaire responses, ISDA documentation and claim calculation spreadsheets onto the secure website. Specifically, counsel for the Debtors stated on the record at the June 24, 2009 claims bar date hearing:

> [D]ue to many of the concerns received from counterparties to the derivatives questionnaires specifically, the derivatives questionnaire will be a separate Web site. And as parties upload information, it will not be viewable or accessible other than by the party making the submission and by the debtors and the creditors' committee. So no party will be able to go onto the derivative questionnaire Web site and view the submissions information of another party.

*In re Lehman Bros. Holdings Inc.*, case no. 08-1355 (Bankr. S.D.N.Y. Jun. 24, 2009) (the "Transcript"), 94:17-25. A copy of the relevant portions of the Transcript is attached as Exhibit A. At that hearing, the Court also noted:

> Any procedures that we adopt will be strictly enforced. There'll be no slippery slopes … [T]he procedures that I want to adopt are the procedures that everybody will comply with. But in order to develop those procedures, I need to be assured that they're right and appropriate and that they balance, under the circumstances of this case, the relative burden…
>
> I want to make sure that when I approve the procedures I don't, nine months from now, have a hearing like I had today on the sale hearing in which somebody says we didn't think of something we should have thought of.

3

Transcript,112:13-19; 114:11-14.

**<u>Argument</u>**

4.    The disclosure of Pentwater's derivative questionnaire responses and the related documentation it uploaded in connection with those responses, if made public to its competitors and investors, would provide valuable information concerning Pentwater's operations as a hedge fund, and an unfair advantage to competitors, notwithstanding that the information is more than six years old. The fact that derivative transaction information is six years old does not mean that it is a "relic" as the Debtors suggest. It remains relevant, despite its age, because that information can be analyzed to glean how derivative counterparties, such as Pentwater, currently value similar derivative transactions and calculate close-out amounts, including through disclosure of such details as "trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, but/sell, call or put, cap or floor, effective date, and maturity date." *See* Derivative Questionnaire section 4(d).

5.    Moreover, the Debtors' argument for eliminating the confidential nature of the derivative questionnaire filings is predicated on the fundamentally flawed proposition that parties need not be held to their prior commitments when it is inconvenient to do so, and that it is acceptable to renege on a confidentiality agreement under those circumstances, notwithstanding that counterparties relied on that agreement and took it seriously.

6.    Whether or not the Debtors believe that the Litigation Claimants have a valid basis for requesting the questionnaires, they need to be held accountable and live up to the confidentiality obligations to which they previously agreed to be bound, regardless of whether they now find it inconvenient to do so. If that means seeking disclosure agreements with each

4

objecting derivative counterparty, then so be it. Moreover, if the Debtors do not believe that the Litigation Claimants' demand for all derivative questionnaire responses and materials is reasonable or necessary, then they need to make their case for a protective order to this Court, instead of trying to undo a deal struck with creditors more than six years ago, a deal that was embodied in a Court order requiring the submission of confidential commercial information in what became an unprecedented proof of claim filing process.

7. Finally, excusing the Debtors now from abiding by the rules they previously agreed to observe, for the sole reason that it is now inconvenient for them to live by those rules, after their derivative counterparties in good faith engaged in a process that they thought actually would result in finality, will seriously chill the willingness of creditors to engage in similar compromises during future cases.

**WHEREFORE,** Pentwater, respectfully requests that the Motion be denied.

Dated: New York, New York
November 5, 2015

**BAKER & McKENZIE LLP**

By:   /s/ Ira A. Reid_____

Ira A. Reid (IR-0113)
452 Fifth Avenue
New York, New York 10018
Telephone:  (212) 626-4100
Facsimile:  (212) 310-1600

Attorneys for Pentwater Growth Fund Ltd.
and Pentwater Credit Partners Fund Ltd.

5

# EXHIBIT A

NYCDMS/1171192.1

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


        Debtors.

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.


        Debtor.

- - - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        June 24, 2009

        10:15 AM

B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

94

1 complete the derivative questionnaire.

2 On page 9, in order to accommodate the numerous
3 international protocols and the general cooperative nature
4 among the various administrators, the debtors do require that
5 such administrators file proofs of claim by September 1st, but
6 they will not need to complete the derivative questionnaire.
7 And those administrators will continue to work through the
8 protocol process in providing information to the debtors and
9 quantifying those claims.

10 The next paragraph, inserted paragraph, on page 9,
11 the claims process we're all familiar with involves a claims
12 agent that has a publicly attestable Web site where one's
13 proofs of claim are submitted; they're available on the Web
14 site to any member of the public. The general proof of claim
15 Web site here maintained by Epiq Systems will not be any
16 different. Proofs of claim that are filed need to be, as part
17 of the Court's records, publicly available. But due to many of
18 the concerns received from counterparties as to the derivative
19 questionnaire specifically, the derivative questionnaire will
20 be a separate Web site. And as parties upload information, it
21 will not be viewable or accessible other than by the party
22 making the submission and by the debtors and the creditors'
23 committee. So no party will be able to go onto the derivative
24 questionnaire Web site and view the submissions information of
25 another party.

08-13555-mg Doc 51349 Filed 11/05/15 Entered 11/05/15 16:32:12 Main Document
Pg 9 of 11

112

1  associated with the six-step derivatives unwind processes
2  described in the affidavit, and whether or not six steps as
3  opposed to four steps as opposed to ten steps may be the right
4  approach, I don't have good answers.  Additionally, what I
5  don't know, because there's no evidence on it, and maybe
6  there's no need for evidence on it, is the burden, if any,
7  which is being imposed on counterparties in having to comply
8  with this questionnaire.
9      And since I've already indicated that I understand
10 the philosophy that underlies that saving paragraph that you
11 stuck into the order, I think the saving paragraph about
12 substantial compliance is an invitation to gaming the system,
13 and I don't like it.  Any procedures that we adopt will be
14 strictly enforced.  There'll be no slippery slopes so that the
15 procedures that I want to adopt are the procedures that
16 everybody will comply with.  But in order to develop those
17 procedures, I need to be assured that they're right and
18 appropriate and that they balance, under the circumstances of
19 this case, the relative burden.
20     I'm fully comfortable that under 105 and other
21 applicable provisions, given the unique circumstances of this
22 case, I have the authority to adopt specific procedures
23 relative to derivatives and guaranty claims and to deviate from
24 the standard proof-of-claim form.  That's not the issue.  The
25 issue is making sure that we do it right and that the right

113

1 input has been put into the mix. I recognize that there has
2 been dialogue with the creditors' committee, that, no doubt,
3 you've had dialogue with various aggressive objectors, and that
4 the ultimate order may in fact be, under the circumstances, if
5 not perfect, close to workable.
6       I have questions whether we can get where we want to
7 get today because the record that I want to have established is
8 more than just the declaration on the six-step process. I want
9 a record in which the debtor proves up the extraordinary nature
10 of the derivatives claims, the million transactions, the ten
11 thousand counterparties, the extraordinary burden on the estate
12 if procedures specially crafted to deal with the problem are
13 not adopted.
14       The nature of the derivative transactions that we're
15 talking about here, what's involved conventionally in
16 determining breakage associated with such transactions? What
17 are the varying approaches to value? What are the varying
18 approaches to claims articulation? What proof is ordinarily
19 required in connection with presenting such claims? What
20 happens in a nonbankruptcy setting when parties in the market
21 are involved in swap termination or derivative termination or
22 whatever may be the terminated contract? I suspect that it may
23 be possible to analogize, from the free market approach, how
24 parties actually value these things when a party is out of the
25 money and exposed to a claim. But I also expect that there may

114

1  be differences when parties are alive and functioning and have
2  multiple transactions. So you can give a little on one in the
3  hope of getting one on another.
4  　　　　　Here we're talking about dead Lehman Brothers. This
5  is your one-time shot to maximize your recovery. And it raises
6  questions in my mind as to how counterparties are going to
7  approach this process. I want to know what Lehman's people
8  think about that process and how it can be most efficiently
9  managed, because we're not just talking about a questionnaire;
10 we're talking about the biggest administrative headache in this
11 case. And for that reason, I want to make sure that when I
12 approve the procedures I don't, nine months from now, have a
13 hearing like I had today on the sale hearing in which somebody
14 says we didn't think of something we should have thought of.
15 　　　　　So I'm not suggesting for a moment that a tremendous
16 amount of topflight work hasn't gone into where we are right
17 now. I want a record that allows me to comfortably approve
18 those procedures. And I don't think we're going to get it
19 today if all we're doing is cross-examining the witness whose
20 declaration I have. Now, it could happen, and if everybody
21 consents to it we can do it at 2 o'clock, but that means that
22 the parties who have sought an adjournment of today's hearing
23 will all waive their objections. And I'm prepared to have an
24 evidentiary hearing at 2. I'll be here all afternoon. But I'm
25 also prepared to do it another day when everybody who's