**HEARING DATE AND TIME: November 13, 2015 at 12:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE: November 6, 2015 at 4:00 p.m. (Eastern Time)**

Erik S. Groothuis
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
(212) 344-5400
egroothuis@schlamstone.com

*Attorneys for JR Moore, LP, LM Moore, LP,*
*MF Moore LP (formerly Moore Global Fixed*
*Income Fund (Master) LP), Moore Capital Advisors, LLC,*
*Moore Global Investments, Ltd.,*
*Moore Emerging Markets Funds (Master) LP,*
*Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP,*
*SJL Moore Ltd., and Trade Process Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
| | |
|---|---|
| In re : | **Chapter 11 Case No.** |
| : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : | **08-13555 (SCC)** |
| : | |
| Debtors. : | **(Jointly Administered)** |

------------------------------------------------------------------------X

**RESPONSE OF JR MOORE, LP, LM MOORE, LP, MF MOORE LP (FORMERLY MOORE GLOBAL FIXED INCOME FUND (MASTER) LP), MOORE CAPITAL ADVISORS, LLC, MOORE GLOBAL INVESTMENTS, LTD., MOORE EMERGING MARKETS FUNDS (MASTER) LP, MOORE MACRO FUND, LP, MOORE MACRO MARKETS FUND (MASTER), LP, SJL MOORE LTD., AND TRADE PROCESS CORPORATION TO MOTION TO RENEW MOTION TO ALLOW DISCLOSURE OF THE DERIVATIVE QUESTIONNAIRES PURSUANT TO SECTION 107(a) OF THE BANKRUPTCY CODE**

JR Moore, LP, LM Moore, LP, MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP), Moore Capital Advisors, LLC, Moore Global Investments, Ltd., Moore Emerging Markets Funds (Master) LP, Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP, SJL Moore Ltd., and Trade Process Corporation (together, the "Moore Entities"),

by and through their undersigned counsel, hereby submit this response to the Motion to Renew Motion to Allow Disclosure of the Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code (the "Motion"),[1] as follows:

## BACKGROUND

1. Through the Motion, Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, and on behalf of its affiliates (collectively, "Lehman"), seeks an order "that, notwithstanding anything to the contrary in the Bar Date Order, Lehman is authorized to use and produce the Derivative Questionnaires (and supporting materials) of the Objecting Parties as discovery materials solely in connection with any Lehman-related litigation . . ."

2. The Motion seeks essentially the same relief Lehman originally asked for back in March, when it filed a prior iteration of the Motion that it now purports to "renew." The Moore Entities, like many others, raised concerns then about the loss of certain protections they understood they had when they filed confidential and proprietary information in support of their proofs of claim. Specifically, when they filed the Derivative Questionnaires and associated backup, the Moore Entities believed that access to their confidential and proprietary information would be restricted to Lehman, its Creditors' Committee, and their respective advisors and counsel.

3. Lehman asserts that it has spent the past six months trying to "appropriately balance the Objecting Parties' asserted interest in preserving the confidentiality of these materials, while still making them accessible to [Lehman] as discovery materials." Motion ¶ 4. But the Moore Entities submitted a proposed order that met Lehman's purported objectives

---

[1] Capitalized terms not defined herein shall have the definitions ascribed to them in the Motion.

2

precisely: by redacting any identifying information, Lehman could make use of the Derivative Questionnaires in discovery without causing injury to the Moore Entities (and others) by giving their competitors and/or counterparties inside information. Lehman does not explain why the Moore Entities' proposal does not achieve Lehman's stated objectives, other than to say that Lehman was "unable to obtain sufficient support" to make it workable and that "Lehman's efforts to negotiate a consensual global resolution have reached an impasse." *Id*. ¶¶ 4-5.

## ARGUMENT

### A. Information Filed With The Derivative Questionnaires Is Not Outdated And Therefore The Limitation On Access Should Be Maintained

4. As this Court recognized when it amended the Bar Date Order to limit accessibility to the Derivative Questionnaires, the Derivative Questionnaires contain sensitive and proprietary information. Although the trade information and valuations compiled by the Moore Entities to support their termination calculations are several years old, that information may reveal confidential information about the Moore Entities' trading counterparties and proprietary trading strategies that may still be in use to this day.

5. Moreover, the Derivative Questionnaires included the Moore Entities' negotiated ISDA Master Agreements with Lehman (the "Moore ISDAs"). The Moore ISDAs contain confidential commercial and legal terms that were carefully negotiated with Lehman for that specific trading relationship, some of which the Moore Entities consider to be proprietary. If the Moore ISDAs were available to third party litigants – some of which include the industry's largest global swap dealers and competitors of the Moore Entities - these litigants would have the ability to scrutinize and leverage their knowledge of the Moore ISDAs' terms in their future negotiations with the Moore Entities, thereby placing the Moore Entities at a competitive disadvantage vis-à-vis those counterparties.

6.     Bankruptcy Code Section 107(b) permits the Court to "protect an entity; with respect to a trade secret or confidential research, development, or commercial information." The information included in the Derivative Questionnaires and related documentation qualifies for protection under this provision. It remains confidential and commercially sensitive today, just as it was when the Bar Date Order was negotiated.

### B.     A Protective Order In A Pending Adversary Proceeding Will Be Compromised If The Motion Is Granted

7.     The Moore Entities are currently engaged in an adversary proceeding with Lehman. As part of the discovery process in the adversary proceeding, Lehman and the Moore Entities have entered into a confidentiality agreement and protective order intended to protect sensitive commercial and proprietary information. If the Motion is granted, some of the information subject to the protective order could be filed in court without the benefit of the protective order, thereby negating the Court-approved protective order between Lehman and the Moore Entities. Moreover, third-party litigants receiving the Derivative Questionnaires would not be required to keep the information in the Derivative Questionnaires confidential. Therefore, they could share the Moore Entities' confidential information with anyone without restriction.

### C.     The Identity Of The Counterparties Should Be Redacted Or Removed From Any Information Disclosed To Third Party Litigants

8.     The Moore Entities are mindful of the burden Lehman claims will result from having to file the Derivative Questionnaires (or portions thereof) under seal. The Moore Entities believe that both Lehman's asserted interest in minimizing its administrative burden and its counterparties' interest in protecting their confidential and proprietary information can each be accommodated if Lehman provides anonymous Derivative Questionnaires to its litigation adversaries. In other words, the Moore Entities request that the relief sought in the Motion be

modified so that Lehman is directed to redact all identifying information concerning the party who submitted the Derivative Questionnaire before disclosing documents.

9. This modification is similar to the relief Lehman itself proposed during its attempts to resolve this dispute. Lehman has not explained why the Motion does not follow this sensible course, other than to say that the estate was not able to obtain "sufficient support" or to achieve a "consensual global resolution." Of course, the fact that not *every* counterparty has agreed does not mean that Lehman should ignore the legitimate concerns of the Moore Entities—and presumably many other counterparties—for the sake of uniformity.

### D. At A Minimum, Any Derivative Questionnaires Lehman Produces In Discovery Should Be Designated As Confidential Under Applicable Protective Orders And The Moore ISDAs Should Be Protected

10. If the Motion is granted without the modification suggested in the previous section, Lehman should at least be directed to do two things: (1) designate the Derivative Questionnaires and associated backup materials as "confidential" under appropriate protective orders so that they are not made available to the general public and cannot be used by Lehman's litigation adversaries for purposes other than litigation; and (2) restrict the Moore ISDAs from disclosure on the grounds that they are confidential and proprietary and have no bearing on the valuation issues Lehman is litigating.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Moore Entities respectfully request that this Court grant the Motion with the modification that Lehman shall be directed to redact all identifying information concerning the source of any Derivative Questionnaires, including any negotiated agreements such as the Moore ISDAs, before disclosing documents to litigation adversaries, and grant such other, further or different relief as this Court deems just and proper.

Dated: New York, New York
November 6, 2015

        SCHLAM STONE & DOLAN LLP

By:   s/ Erik S. Groothuis

Erik S. Groothuis (EG-4529)
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
(212) 344-5400
egroothuis@schlamstone.com

*Attorneys for JR Moore, LP, LM Moore, LP, MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP), Moore Capital Advisors, LLC, Moore Global Investments, Ltd., Moore Emerging Markets Funds (Master) LP, Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP, SJL Moore Ltd., and Trade Process Corporation*

OF COUNSEL
Lauren Teigland-Hunt
Teigland-Hunt LLP
127 West 24th Street, 4th Floor
New York, NY 10011
(212) 269-1600
lteigland@teiglandhut.com