**HEARING DATE AND TIME:  November 13, 2015 at 12:00 p.m. (ET)**
**OBJECTION DEADLINE:  November 6, 2015 at 4:00 p.m. (ET)**

Shmuel Vasser
Janet M. Doherty
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036
Tel.: (212) 698-3500
Fax: (212) 698-3599

*Attorney for Russell Investments and its Affiliated Entities*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------- | x | |
| In re: | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ------------------------------------------------------------------- | x | |

**OBJECTION OF RUSSELL INVESTMENTS AND ITS AFFILIATED ENTITIES TO MOTION TO RENEW MOTION TO ALLOW DISCLOSURE OF THE DERIVATIVES QUESTIONNAIRES PURSUANT TO SECTION 107(a) OF THE BANKRUPTCY CODE**

21647599

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 2

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 8

I.      Lehman Cannot Meet The Applicable Burden For Establishing A Basis  For
        Relief From The Bar Date Order Under Fed. R. Civ. P. 60(b) ............................... 8

II.     Lehman Cannot Meet The Applicable Burden For Establishing A Basis For
        Relief From The Bar Date Order Under Rule 9023 Of The Federal Rules Of
        Bankruptcy Procedure .......................................................................................... 11

III.    Lehman Cannot Overcome The Presumption Against Modifying
        Confidentiality Provisions Under Second Circuit Law ........................................ 12

EXHIBIT A

EXHIBIT B

## TABLE OF AUTHORITIES

CASES

AT&T Corp. v. Sprint Corp.,
    407 F.3d 560 (2d Cir. 2005)....................................................................................................13

Freedom N.Y., Inc. v. United States,
    438 F. Supp. 2d 457 (S.D.N.Y. 2006)................................................................................9, 10

Ill. Dep't of Rev. v. Energy Biogas Corp. (In re U.S. Energy Sys., Inc.),
    2013 U.S. Dist. LEXIS 132115 (S.D.N.Y. Sept. 13, 2013)......................................................8

In re Old Carco LLC,
    423 B.R. 40 (Bankr. S.D.N.Y. 2010)........................................................................................9

Ionosphere Clubs, Inc. v. Am. Nat'l Bank and Trust Co. of Chi. (In re Ionosphere Clubs,
    Inc.),
    156 B.R. 414 (S.D.N.Y. 1993)..........................................................................................13, 14

Kellogg v. Strack,
    269 F.3d 100 (2d Cir. 2001)....................................................................................................11

Maressa v. A.H. Robins Co.,
    839 F.2d 220 (4th Cir. 1988) ....................................................................................................8

Med. Diagnostic Imaging, PLLC v. Carecore Nat'l LLC,
    2009 U.S. Dist. LEXIS 60979 (S.D.N.Y. July 16, 2009) .......................................................13

Nevado v. United States,
    282 F. App'x 944 (2d Cir. 2008) .............................................................................................11

Paddington Partners v. Bouchard,
    34 F.3d 1132 (2d. Cir. 1994)...................................................................................................10

Residential Funding Co. v. HSBC Mort. Corp. (USA) (In re Residential Capital, LLC),
    536 B.R. 132 (Bankr. S.D.N.Y. 2015) ...................................................................................12

Rodriguez v. Mitchell,
    252 F.3d 191 (2d Cir. 2001)....................................................................................................11

Satterfield v. Pfizer, Inc.,
    208 F. App'x 59 (2d Cir. 2006) ..............................................................................................11

Teligent, Inc. v. K&L Gates LLP (In re Teligent, Inc.),
    640 F.3d 53 (2d Cir. 2011)..........................................................................................12, 13, 14

Truskoski v. ESPN, Inc.,
    60 F.3d 74 (2d Cir. 1995)........................................................................................................11

United States v. Int'l Bhd. Of Teamsters,
    247 F.3d 370 (2d Cir. 2001)..................................................................................................10

**STATUTES**

11 U.S.C. § 107.............................................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9023 ..........................................................................................................11, 12

Fed. R. Bankr. P. 9024 ..................................................................................................................8

Fed. R. Civ. P. 59 .......................................................................................................................11

Fed. R. Civ. P. 60 ........................................................................................................8, 9, 10, 11

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Russell Investments, as investment advisor and/or manager to certain of its

affiliated entities (the "**Affiliated Entities**," and together with Russell Investments, "**Russell**"),[1]

by its undersigned counsel, submits this objection (the "**Objection**") in opposition to the *Motion

to Renew Motion to Allow Disclosure of Derivatives Questionnaires Pursuant to Section 107(a)

of the Bankruptcy Code* [Dkt. No. 51312] (the "**Renewal Motion**").  In support of this Objection,

Russell relies upon and incorporates by reference the *Declaration of Elliot Cohen in Support of

the Objection of Russell Investments and Its Affiliated Entities to Motion to Renew Motion to

Allow Disclosure of Derivatives Questionnaires Pursuant to Section 107(a) of the Bankruptcy

Code* (the "**Cohen Declaration**"), attached hereto as <u>Exhibit A</u>, and respectfully states as

follows:

---

[1]     The Affiliated Entities are as follows: (i) Civil Aviation Authority Pension Scheme, (ii) Nochu Russell Multi-Strategy Global Bond Fund, (iii) CEBFT Russell Fixed Income II Fund, (iv) CEBFT Russell Long Duration Fixed Income Fund, (v) CEBFT Russell Multi-Manager Bond Fund, (vi) Frank Russell Multi-Strategy Global Bond Fund, (vii) Frank Russell US Bond Fund, (viii) HYDRO ONE PENSION PLAN, (ix) Retirement Plan for Employees of Aetna Services, Inc. (AET), (x) Reynolds American Inc. Defined Benefit Master Trust, (xi) RGF Russell Global Equity Fund, (xii) RIC Emerging Markets, (xiii) RIC II plc The Global Bond (Euro Hedged) Fund, (xiv) RIC III plc The Active Currency Fund, (xv) RIC IV plc The Alpha Fund, (xvi) RIC plc The Global Bond Fund, (xvii) RIC plc the U.S. Bond Fund, (xviii) RIC Russell Short Duration Bond Fund, (xix) RIC Russell Strategic Bond Fund, (xx) RIC-OMIGSA Global Bond Fund, (xxi) RIC-OMIGSA Global Money Market Fund, (xxii) RIF Core Bond Fund, (xxiii) RIFL LLC Russell International Equity Fund, (xxiv) RIML Russell International Bond Fund - $A Hedged, (xxv) GPF (THAILAND) INVESTMENT FUND, (xxvi) MSMM Funds PLC Global Bond (Euro Hedged) Fund, (xxvii) MSMM Funds PLC Global Bond Fund, (xxviii) Russell Global Equity, (xxix) RUT The International Bond Fund, (xxx) San Diego County Employee Retirement Systems, (xxxi) J Sainsbury Common Investment Fund, (xxxii) J Sainsbury Common Investment Fund Limited, (xxxiii) Ohio SERS Core Full, (xxxiv) Oregon Public Employees Retirement System, (xxxv) Reynolds America Inc. Defined Benefit Master Trust, (xxxvi) Wyoming Retirement System, (xxxvii) Xerox Pensions Limited, (xxxviii) Xerox Pensions Ltd. (for Xerox Pension Scheme), (xxxix) KAISER FOUNDATION HOSPITALS INC, and (xl) SHROPSHIRE COUNTY PENSION FUND.

**PRELIMINARY STATEMENT**[2]

1.      The Derivatives Questionnaires submitted by Russell contains commercially sensitive, proprietary and confidential information.  The Derivatives Questionnaires were submitted by Russell in reliance on the Bar Date Order (specifically the Confidentiality Provision and the Injunction Provision).  The relief requested by the Renewal Motion ignores that Russell relied upon the protection provided by the Bar Date Order in its submissions.

2.      The Renewal Motion provides no basis in law or fact for overturning the Bar Date Order, over six years after it was entered.  The Renewal Motion is an attempt to overcome the Bar Date Order, but Lehman is unable to, and does not even attempt to, meet the applicable standards to obtain relief from the Bar Date Order under Rule 60 of the Federal Rules of Civil Procedure, Rule 9023 of the Federal Rules of Bankruptcy Procedure, or Teligent.

**BACKGROUND**

3.      On May 26, 2009, Lehman Brothers Holdings Inc. ("**LBHI**") and its debtor affiliates (collectively, the "**Lehman**") filed the *Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form* [Dkt. No. 3654] (the "**Bar Date Motion**"), requesting approval of certain deadlines and procedures related to the assertion of claims against Lehman.  Among the requested procedures was the requirement for derivatives counterparties to submit responses to a questionnaire (the "**Derivatives Questionnaire**").

---

[2]      Each capitalized term used in the Preliminary Statement but not defined shall have the meaning ascribed to it in the Objection.

4.      The information requested in the Derivatives Questionnaire included proprietary and confidential information that Russell would not publicly disclose.  See Cohen Dec., ¶ 3.  Russell Investments and the Affiliated Entities view and treat their derivatives agreements and the detailed trade data related to those agreements, which have been used to document their derivatives transactions, as proprietary and confidential.  See id.  In addition, certain of the derivatives agreements contain confidentiality provisions therein and the underlying agreements between Russell Investments and certain of the Affiliated Entities are subject to confidentiality provisions.  See id.[3]

5.      Third parties' knowledge of the negotiated terms and conditions of the derivatives agreements or the detailed trade data would allow potential counterparties and others in the investment industry to gain insights into the strategies of, and gain a negotiating advantage with respect to, Russell Investments and the Affiliated Entities.  See id., ¶ 6.

6.      Numerous parties objected to the Bar Date Motion, most of which were focused on the Derivatives Questionnaire and put the issue of maintaining the confidentiality of the Derivatives Questionnaires squarely before the Court.  In response to the many objections, Lehman filed the *Debtors' Omnibus Reply to Objections to the Motion of the Debtors, Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form* [Dkt. No. 4113] (the **"Lehman Reply"**).   With respect to the information requested in the Derivatives Questionnaires, Lehman asserted that the derivative counterparty "is the only party that has information regarding" the underlying

---

[3]      Certain of the Affiliated Entities are foreign entities subject to foreign regimes that have strict privacy and confidentiality laws.  The issues that may be raised by these foreign confidentiality obligations are beyond the scope of this Objection.

transaction and that "there is no way for the Debtors to obtain such information other than from the counterparty." Lehman Reply, ¶ 15. Additionally, Exhibit A to the Lehman Reply acknowledges that certain derivative counterparties objected to the Bar Date Motion as it fails to address whether the information uploaded to the website would be confidential, could be redacted prior to submission to protect proprietary or confidential information, and whether such information would be disclosed to other parties without a court order. Id., Ex. A, 6; Initial Motion (defined below), ¶ 3. In response to the objections, the Bar Date Order (as defined below) was altered to address these specific concerns about the Derivatives Questionnaire.

7.    On June 24, 2009, the Court held a hearing (the "**Hearing**") on the Bar Date Motion. At the Hearing, counsel for Lehman presented a number of changes made to the proposed procedures including a provision to address the concerns over the confidentiality of the Derivatives Questionnaires:

> The next paragraph, inserted paragraph on page 9, the claims process we're all familiar with involves a claims agent that has a publicly available Web site where one's proofs of claim are submitted; they're available on the Web site to any member of the public. The general proofs of claim Web site here maintained by Epiq Systems will not be any different. **Proofs of claim that are filed need to be, as part of the Court's records, publicly available. But due to many of the concerns received from counterparties to the derivatives questionnaires specifically, the derivatives questionnaire will be a separate Web site. And as parties upload the information, it will not be viewable or accessible other than by the party making the submission and by the debtors and the creditors' committee. So no party will be able to go onto the derivative questionnaire Web site and view the submissions information of another party.**

In re Lehman Bros. Holdings Inc., Case No. 08-13555 (SCC) [Dkt. No. 4183] (Bankr. S.D.N.Y. Jun. 24, 2009) (the "**Transcript**"), 94:10-25 (emphasis added). A copy of the relevant portions of the Transcript is attached hereto as Exhibit B.

8.      At the Hearing, Judge Peck addressed his concern that the procedures for

asserting claims, including derivatives-based claims, should be final once he entered a bar date

order.  He stated:

> **Any procedures that we adopt will be strictly enforced**.  There'll be no slippery slopes . . . [T]he procedures that I want to adopt are the procedures that everybody will comply with.  But in order to develop those procedures, I need to be assured that they're right and appropriate …
>
> I want to know what Lehman's people think about that process and how it can be most efficiently managed, because we're not just talking about a questionnaire; we're talking about the biggest administrative headache in this case.  I want to make sure that when I approve the procedures I don't, nine months from now, have a hearing like I had today on the sale hearing in which somebody says we didn't think of something we should have thought of.

Transcript, Ex. B at 112:13-18; 114: 7-14 (emphasis added).

9.      Based on the record at the Hearing, on July 2, 2009, the Courted entered

the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule

3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form

and Manner of Notice Thereof and Approval of the Proof of Claim Form* [Dkt. No. 4271] (the

"**Bar Date Order**"), which provides, in relevant part, that "[t]he information submitted on the

website http://www.lehman-claims.com in respect of Derivatives Contracts and Guarantees will

not be accessible on the website other than by the party that submitted such information, the

Debtors, the Creditors' Committee and their respective advisors and counsel . . . ."  See Bar Date

Order, p. 9 (the "**Confidentiality Provision**").  There is no time limit on the Confidentiality

Provision in the Bar Date Order.

10.     Additionally, the Bar Date Order included the following provision:

> Any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date, <u>specifically</u>, including filling out the Derivative

5

Questionnaire … and uploading required information to the website
http://lehman-claims.com … shall be forever barred, estopped and
enjoined from asserting such claim against the Debtors.

Bar Date Order, pp. 9-10 (the "**Injunction Provision**").

11.     The Bar Date Order does not provide for further amendment or
modification of the Bar Date Order.

12.     Russell submitted the Derivatives Questionnaires in a timely manner and
in compliance with the Bar Date Order.  Russell did so in reliance on the Confidentiality
Provision of the Bar Date Order, with the expectation that their Derivatives Questionnaires
would not be distributed beyond the representatives of Lehman and the Official Committee of
Unsecured Creditors.  See Cohen Dec., ¶ 4.  Given the Confidentiality Provision, the Injunction
Provision and the general assurance that confidentiality should not be a concern when submitting
the Derivatives Questionnaires, Russell did not redact any confidential or proprietary
information, nor did Russell analyze its submissions with regard to broader dissemination as it
would have if Russell had known that their data would later become publicly available.  See id.

13.     Six years later, on March 19, 2015, Lehman filed the *Motion to Allow
Disclosure of the Derivatives Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code*
[Dkt. No. 48939] (the "**Initial Motion**"), seeking authority to disclose the information submitted
by Russell pursuant to the Bar Date Order and the Derivatives Questionnaires, notwithstanding
the Confidentiality Provision in the Bar Date Order.  In the Initial Motion, Lehman admits that
the Confidentiality Provision was added to address the concern "that the proposed order failed to
address whether the uploaded information could be redacted and/or would be disclosed to other
parties without court order."  See Initial Motion, ¶ 3.  The Initial Motion further acknowledges
that Lehman added the Confidentiality Provision to provide comfort to the objectors that their

6

disclosures would remain confidential.  See id.  While Lehman argues that "no specific findings

were made with respect to the confidential nature of the information submitted in connection

with the Derivative Questionnaires," see Initial Motion, ¶ 3, the fact of the matter is that parties

objected to the Bar Date Motion on the basis that the Derivatives Questionnaire should be kept

confidential, Lehman consensually resolved the objections with the Confidential Provision,

Lehman informed the Court about the resolution at the Hearing, and the Court approved the Bar

Date Order.  This is an absurd statement – it is clear from the objections, the Lehman Reply and

the Transcript that the confidentiality issue was squarely before of the Court when considering

whether to enter the Bar Date Order.

14.    Russell filed a joinder to objections to the Initial Motion [Dkt. No. 49053].

Indeed, Lehman received objections and joinders to objections relating to the Initial Motion from

approximately fifty parties.  In order to try to formulate and negotiate an alternative approach to

the disclosure of the Derivatives Questionnaires that would address Russell's and other's

concerns, Lehman adjourned the Initial Motion in an attempt to reach a solution that would

balance the objecting parties interest in preserving the confidentiality of the Derivatives

Questionnaires, while still making them accessible as discovery materials.  See Renewal Motion,

¶ 3.

15.    On October 30. 2015, Lehman filed the Renewal Motion, renewing the

relief requested in the Initial Motion.  Lehman asserts that the reason for the Renewal Motion is

that it was unable to reach a global resolution.  See id., ¶ 5.[4]

---

[4]    While unable to disclose the details of settlement discussions, given that the discussions were subject to
Federal Rule of Evidence 408, Russell represents that it was very close to a resolution with Lehman on the
disclosure of Russell's Derivatives Questionnaires.  Instead of being subject to the Renewal Motion,
Russell believes that an individual agreement with Lehman, providing for redacted versions of the
Derivatives Questionnaires as discovery material, can be reached very quickly.  Russell believes that it will
not be onerous or expensive for Lehman to work with Russell on an individual basis to obtain the necessary
consent while addressing Russell's confidentiality concerns.

## ARGUMENT

**I.      Lehman Cannot Meet The Applicable Burden For Establishing A Basis For Relief From The Bar Date Order Under Fed. R. Civ. P. 60(b)**

16.      Rule 9024 of the Federal Rules of Bankruptcy Procedure makes Rule 60 of the Federal Rules of Civil Procedure, which expressly governs "Relief from a Judgment or Order," applicable in bankruptcy proceedings.  Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60.[5]

17.      The Renewal Motion is essentially a motion seeking relief from the Bar Date Order, thus the Rule 60 standards are applicable.  <u>See</u> Renewal Motion, Ex. A ("ORDERED that, notwithstanding anything to the contrary in the Bar Date Order, Lehman is authorized to use and produce the Derivative Questionnaires as discovery materials in any Lehman-related adversary proceeding or claim objection . . ."); <u>Ill. Dep't of Rev. v. Energy Biogas Corp. (In re U.S. Energy Sys., Inc.</u>), 2013 U.S. Dist. LEXIS 132115, at *1 (S.D.N.Y. Sept. 13, 2013) (considering a motion for relief from a bar date order under Rule 60(b)); <u>Maressa v. A.H. Robins Co.</u>, 839 F.2d 220, 221 (4th Cir. 1988) (same).  As discussed above, Judge Peck

---

[5]      Fed. R. Civ. P. 60(b) provides:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

8

noted at the Hearing that "[a]ny procedures that we adopt will be strictly enforced."  <u>See</u>
Transcript, Ex. B at 112:13.

18.    From the face of Rule 60(b), it is clear that Lehman could only obtain the
relief requested under Rule 60(b)(6) – "any other reason that justifies relief."  All of the other
provisions are inapplicable.  Rule 60(b) provides for "extraordinary judicial relief" that may only
be granted in "exceptional circumstances."  <u>In re Old Carco LLC</u>, 423 B.R. 40, 45 (Bankr.
S.D.N.Y. 2010).  Additional requirements to obtain relief under Rule 60(b) are that (i) the
supporting evidence be "highly convincing;" (ii) there be good cause for the movant's failure to
act sooner; and (iii) application of the rule not impose undue hardship on other parties.
<u>See</u> <u>Freedom N.Y., Inc. v. United States</u>, 438 F. Supp. 2d 457, 462-63 (S.D.N.Y. 2006) (citations
omitted).  And, a motion under Rule 60(b) must be made within a reasonable time.  Fed. R. Civ.
P. 60(c)(1).

19.    The Renewal Motion does not come close to demonstrating why Lehman
is entitled to extraordinary judicial relief, nor does the Renewal Motion provide (i) any highly
convincing supporting evidence, (ii) good cause for waiting for six years to obtain relief from the
Bar Date Order, or (iii) a showing that the relief will not impose undue hardship on Russell.
Lehman has not advanced a single argument regarding why it is entitled to relief under Rule
60(b).[6]  The basis for the Renewal Motion is that Lehman wants to make its affirmative litigation
process easier to manage.  Allowing Lehman to void the Confidentiality Provision, solely
because it renders production in certain unrelated litigations with third parties more difficult for
Lehman, would eviscerate the purpose and protections afforded to the derivative counterparties

---

[6]    Even if Lehman was not subject to Rule 60(b) scrutiny, there is a fatal flaw with respect to the Renewal
Motion.  The Renewal Motion is based upon section 107 of the Bankruptcy Code.  The Derivatives
Questionnaires, however, do not constitute "paper[s] filed in a case."  11 U.S.C. § 107(a).  As a result,
Lehman's entire argument, pursuant to section 107, is erroneous.

9

by the Bar Date Order.  Additionally, the disclosure of Russell's Derivatives Questionnaires
would unduly burden Russell as it would affect future negotiations with potential derivatives
counterparties and adversely affect relationships between Russell and its existing or prospective
clients.  See Cohen Dec., ¶ 6.  Allowing other market participants to see the Derivatives
Questionnaires would give those other market participants an unfair commercial advantage.  See
id.

20.     Lehman argues that none of the derivative counterparties "provided
sufficient evidentiary support for their position that information in their Derivatives
Questionnaires . . . merits protection any more, and Lehman remains unpersuaded that any will
be able to do so."  Renewal Motion, ¶ 4.  This argument is misplaced, however, as it ignores that
the burden is not on Russell to show that the information is no longer confidential (which is
wrong), but rather it is Lehman's burden to show that it is entitled to amend the Bar Date Order,
which it has clearly not met.  United States v. Int'l Bhd. Of Teamsters, 247 F.3d 370, 391 (2d
Cir. 2001) ("The burden of proof is on the party seeking relief from judgment"); Paddington
Partners v. Bouchard, 34 F.3d 1132, 1142 (2d. Cir. 1994) ("This Circuit has indicated, however,
that since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets
its burden of demonstrating 'exceptional circumstances.'"); Freedom N.Y., Inc., 438 F. Supp. 2d
at 462 (holding movant bears the burden of proof).

21.     Nor did Lehman seek relief within a reasonable time – waiting six years
makes this requirement impossible to satisfy.  While Rule 60(c)(1) does not provide a precise
timeframe as to how long Lehman has to file the motion pursuant to Rule 60(b)(6), it is clear that
in the Second Circuit, absent mitigating circumstances, six years is unreasonable.[7]  See

---

[7]     Indeed, Lehman realized at least four years ago that it could not disclose the Derivatives Questionnaires in
response to discovery requests without getting permission from the derivatives counterparties.  See

e.g., Nevado v. United States, 282 F. App'x 944, 946 (2d Cir. 2008) ("the twenty eight month

delay that occurred between the district court's decision and defendant's Rule 60(b) motion is

unreasonable."); Satterfield v. Pfizer, Inc., 208 F. App'x 59, 61 (2d Cir. 2006) (finding four year

delay from the date of judgment in bringing Rule 60(b) motion to be unreasonable); Kellogg v.

Strack, 269 F.3d 100, 104 (2d Cir. 2001) (finding a twenty-six month delay to be "a patently

unreasonable delay absent mitigating circumstances"); Rodriguez v. Mitchell, 252 F.3d 191, 201

(2d Cir. 2001) ("We do not think that three and one-half years from the date judgment was

entered is a reasonable time"); Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995) (finding

an eighteen month delay after entry of a judgment to be unreasonable).  It is fundamentally

unfair to change the Bar Date Order six years after it was entered.  Judge Peck specifically

emphasized the need for finality in the procedures he approved concerning the Derivatives

Questionnaire, and Lehman should not be able to revisit this issue six years later.   See

Transcript, Ex. B. at 112:13.

## II.    Lehman Cannot Meet The Applicable Burden For Establishing A Basis For Relief From The Bar Date Order Under Rule 9023 Of The Federal Rules Of Bankruptcy Procedure

22.    Rule 9023 of the Federal Rules of Bankruptcy Procedure addresses "New

Trials; Amendment of Judgments" and makes Rule 59 of the Federal Rules of Civil Procedure

applicable in bankruptcy proceedings.  Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59.  Bankruptcy

Rule 9023 provides that "a motion for a new trial or to alter or amend a judgment shall be filed

… no later than 14 days after entry of judgment."  It is clear that the Renewal Motion is a de

---

*Objection of Creditors to the Debtors' Motion to Allow Disclosure of the Derivative Questionnaires*, Ex. B. [Dkt. No. 49132] (letters from Lehman to various derivative counterparties dating from 2012 acknowledging the confidentiality of the Derivatives Questionnaires and the need to preserve confidentiality with producing them in discovery).  While Russell maintains that even two years is not a reasonable timeframe to make a Rule 60(b) motion in this case, it is clear that Lehman did not need six years to realize that it had a potential issue with respect to the Bar Date Order.

facto attempt to amend the Bar Date Order.  See Renewal Motion, ¶ 14 ("the restrictions of the

Bar Date Order should be lifted."); Id., Ex. A ("ORDERED that, notwithstanding anything to the

contrary in the Bar Date Order, Lehman is authorized to use and produce the Derivative

Questionnaires as discovery materials in any Lehman-related adversary proceeding or claim

objection . . .").  The Bar Date Order was entered in July 2009, and Lehman has waited over six

years to attempt to amend the order.  Lehman did not meet the 14 day requirement to amend a

judgment, and therefore, relief is not appropriate pursuant to Bankruptcy Rule 9023.

### III.    Lehman Cannot Overcome The Presumption Against Modifying Confidentiality Provisions Under Second Circuit Law

23.    In the Second Circuit, a protective order that "has been entered and relied

upon . . . should not be modified 'absent a showing of improvidence in the grant of the order or

some extraordinary circumstances or compelling need.'"  Teligent, Inc. v. K&L Gates LLP (In re

Teligent, Inc.), 640 F.3d 53, 59 (2d Cir. 2011) (citation omitted). A party seeking disclosure of

confidential information provided pursuant to a protective order "'must demonstrate (1) a special

need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that

the need for the evidence outweighs the interest in maintaining confidentiality.'"  Teligent, 640

F.3d at 58-59; Residential Funding Co. v. HSBC Mort. Corp. (USA) (In re Residential Capital,

LLC), 536 B.R. 132, 143 (Bankr. S.D.N.Y. 2015).  "A movant seeking to modify a protective

order has 'a very high bar to overcome,' and must establish all three elements of this three-part

test 'to warrant disclosure of otherwise non-discoverable documents.'"  Id. (citations omitted).

24.    Under the first prong of the Teligent analysis, Lehman must establish

"improvidence in the grant of the order or some extraordinary circumstances or compelling

need." Teligent, 640 F.3d at 59.  Lehman has failed to produce any evidence that there is a

compelling need or extraordinary circumstances warranting disclosure of the Derivatives

12

Questionnaires. Lehman's rationale for modifying the Bar Date Order and making the Derivatives Questionnaires public – to streamline discovery and assist in the orderly resolution of claims (see Initial Motion, ¶ 6) – falls far short of what is required under Teligent. See Med. Diagnostic Imaging, PLLC v. Carecore Nat'l LLC, 2009 U.S. Dist. LEXIS 60979, at *7 (S.D.N.Y. July 16, 2009) (explaining that the "need for efficiency . . . is hardly an extraordinary or compelling circumstance.")

25.    Even if Lehman could establish a basis for relief under the first prong, which it cannot, under the second prong of the Teligent analysis, Lehman must also establish that barring the discovery of such material would be unfair. Teligent, 640 F.3d at 58. Lehman cannot satisfy this prong either -- indeed, granting discovery of the material would be unfair to Russell. According to the Second Circuit, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005) (citation omitted). "The mere fact the information was disclosed pursuant to a protective order suggests that reliance can be presumed." Ionosphere Clubs, Inc. v. Am. Nat'l Bank and Trust Co. of Chi. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 434 (S.D.N.Y. 1993). Russell complied with the Bar Date Order and submitted fulsome Derivatives Questionnaires in reliance on the Confidentiality Provision and the assurance that the information would not be made publicly available. It was through the Confidentiality Provision that Lehman was able to obtain information that would otherwise have only been disclosed after extensive discovery and litigation.[8] Lehman has not presented any

---

[8]    Moreover, the effect of the Renewal Motion is for the Litigation Claimants (as defined in the Renewal Motion) to obtain indirect discovery against third parties not subject to the underlying litigation. The Derivatives Questionnaires are not Lehman's information, and the derivative counterparties that provided the Derivatives Questionnaires "[are] the only part[ies] that has information regarding" the underlying transaction and that "there is no way for the Debtors to obtain such information other than from the counterpart[ies]." Lehman Reply, ¶ 15. Absent the Bar Date Order, Lehman would not have this information. The Litigation Claimants do not have any basis to serve a discovery request for the

evidence to overcome the presumption of unfairness to Russell.  Lehman cannot now claim it is unfair to protect information that it agreed to protect.  Ionoshpere Clubs, 156 B.R. at 431 ("a party to the stipulations which became the basis of the Protective Orders, . . . cannot now object to the Protective Orders.  . . . Plaintiffs cannot now attempt to undo what they have willingly wrought.")

26.    Even if, *arguendo*, Lehman met the first two prongs of Teligent, Lehman still needs to establish that the need for such materials outweighs the interest of maintaining confidentiality.  Teligent, 640 F.3d at 58.  Lehman has not met this standard.  Reliance on a confidentiality provision favors a presumption against modification of the confidentiality provisions of protective orders.  Id. at 60.  Lehman's naked assertions of efficiency and that the information contained in the Derivatives Questionnaire is stale do not outweigh the interest of maintaining confidentiality.  See Initial Motion, ¶ 5, 13.  As a threshold matter, Russell believes that it can efficiently reach an individual agreement with Lehman with respect to the disclosure of the Derivatives Questionnaires.  Also, Lehman incorrectly contends that the information is not confidential because it is "more than six years old."  Id.  The passage of time should not affect the confidential treatment of the information, and the Bar Date Order did not contain an expiration date on the Confidentiality Provision.  Accordingly, Russell had no expectation at the time of submitting such information that the Confidentiality Provision would expire or that the Derivatives Questionnaires would become subject to disclosure to unknown third parties without restriction.

27.    Moreover, the information contained in the Derivatives Questionnaires still contains confidential and proprietary information.  See Cohen Dec., ¶ 3.  Disclosure of the

---

Derivatives Questionnaires upon Russell, and the consequence of the relief requested in the Renewal Motion is as if such request was served and complied with.

Derivatives Questionnaires would breach express confidentiality obligations that Russell

Investments and certain of the Affiliated Entities are contractually bound by – the passage of

time does not nullify such confidentiality agreements.  See id.  Nor does the passage of time

render Russell's investment strategies non-confidential.  There has not been a monumental shift

in the derivatives market since Russell submitted the Derivatives Questionnaires – Russell

Investments and the Affiliated Entities still utilize certain investment strategies that were utilized

at the time of submission.  See id., ¶ 5.  Allowing other market participants to see negotiated

terms contained in the Derivatives Questionnaires, the derivatives agreements and the related

commercial terms of individual trades would give those other market participants leverage in

their future negotiations with Russell Investments or the Affiliated Entities, resulting in an unfair

competitive advantage.  See id., ¶ 6.  Additionally, third parties' knowledge of the detailed trade

data would allow potential counterparties and others in the investment industry to reverse

engineer the data in order to gain insights into the investment strategies of Russell Investments

and the Affiliated Entities.  See id.

28.    Entering the relief requested would cause predictable and unfavorable

consequences to the administration of future bankruptcy cases.  Creditors in future bankruptcy

cases will no longer willingly provide confidential information to debtors upon an order that such

documents will remain confidential.  The Renewal Motion perversely encourages parties to not

settle disputes and to engage in litigation as an avenue to receive confidential information in

order to support a potentially better settlement.

29.    Russell reserves any and all applicable rights at law and/or equity, all

claims, and all defenses, including without limitation the right to discovery in connection with

the Initial Motion and Renewal Motion and the right to amend or supplement this Objection and

to join in the objection of any other party to the Renewal Motion.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, Russell requests that the Court deny the Motion and grant Russell

such other and further relief as the Court deems just and proper.


Dated:   New York, New York                    Respectfully Submitted,
         November 6, 2015


                                               DECHERT LLP

                                               By: */s/ Shmuel Vasser*
                                               Shmuel Vasser
                                               Janet M. Doherty
                                               1095 Avenue of the Americas
                                               New York, NY  10036
                                               Tel.: (212) 698-3500
                                               Fax: (212) 698-3599
                                               shmuel.vasser@dechert.com
                                               janet.doherty@dechert.com

                                               *Attorney for Russell Investments*
                                               *and its Affiliated Entities*

## EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------------- x
In re:                                          :   Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :   08-13555 (SCC)
                                                :
                      Debtors.                  :   (Jointly Administered)
--------------------------------------------------------------------- x
```

## DECLARATION OF ELLIOT COHEN IN SUPPORT OF OBJECTION OF RUSSELL INVESTMENTS AND ITS AFFILIATED ENTITIES TO MOTION TO RENEW MOTION TO ALLOW DISCLOSURE OF THE DERIVATIVES QUESTIONNAIRES PURSUANT TO SECTION 107(a) OF THE BANKRUPTCY CODE

I, Elliot Cohen, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am Associate General Counsel of Russell Investments ("**Russell**"), and work in its offices located at 1301 2nd Avenue, 18th Floor, Seattle, WA 98101.  I am of sound mind, and in all respects qualified to make this Declaration.

2.      I submit this declaration (the "**Declaration**") in support of the *Objection of Russell Investments and Its Affiliated Entities to Motion to Renew Motion to Allow Disclosure of Derivatives Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code* (the "**Objection**").[1]  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.

3.      The information requested in the Derivatives Questionnaire included proprietary and confidential information that Russell would not publicly disclose.  I am informed that Russell Investments and the Affiliated Entities view and treat their derivatives agreements and the detailed trade data related to those agreements, which have been used to document their

---

[1]      Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Objection.

21647599

derivatives transactions, as proprietary and confidential.  In addition, I am aware that certain of

the derivatives agreements contain confidentiality provisions therein and the underlying

agreements between Russell Investments and certain of the Affiliated Entities are subject to

confidentiality provisions.

      4.    It is my belief that Russell submitted the Derivatives Questionnaires in a

timely manner and in compliance with the Bar Date Order in reliance on the Confidentiality

Provision of the Bar Date Order, with the expectation that their Derivatives Questionnaires

would not be distributed beyond the representatives of Lehman and the Official Committee of

Unsecured Creditors.  I am certain that given the Confidentiality Provision, the Injunction

Provision and the general assurance that confidentiality should not be a concern when submitting

the Derivatives Questionnaires, Russell did not redact any confidential or proprietary

information, nor did Russell analyze its submissions with regard to broader dissemination as it

would have if Russell had known that their data would later become publicly available.

      5.    It is my understanding that Russell Investments and the Affiliated Entities

still utilize certain investment strategies that were utilized at the time of submission of the

Derivatives Questionnaires.

      6.    It is my belief that the disclosure of Russell's Derivatives Questionnaires

would unduly burden Russell as it would affect future negotiations with potential derivatives

counterparties and adversely affect relations between Russell and its existing or prospective

clients.  It is my belief that third parties' knowledge of the negotiated terms and conditions of the

derivatives agreements or the detailed trade data would allow potential counterparties and others

in the investment industry to gain insights into the strategies of, and gain a negotiating advantage

with respect to, Russell Investments and the Affiliated Entities.  I believe that such disclosure

2

would result in an unfair competitive advantage.   Additionally, third parties' knowledge of the

detailed trade data could allow potential counterparties and others in the investment industry to

reverse engineer the data in order to gain insights into the investment strategies of Russell

Investments and the Affiliated Entities.

       7.     I declare under 28 U.S.C. § 1746 that, to the best of my knowledge, and

after reasonable inquiry, the foregoing is true and correct.

Dated:     November 6, 2015
           New York, New York

                                    */s/ Elliot Cohen*                 
                                    Elliot Cohen

**EXHIBIT B**

21647599

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.



            Debtors.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS INC.



            Debtor.

- - - - - - - - - - - - - - - - - - - -x

            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            June 24, 2009

            10:15 AM

B E F O R E :

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

94

1      complete the derivative questionnaire.

2            On page 9, in order to accommodate the numerous

3      international protocols and the general cooperative nature

4      among the various administrators, the debtors do require that

5      such administrators file proofs of claim by September 1st, but

6      they will not need to complete the derivative questionnaire.

7      And those administrators will continue to work through the

8      protocol process in providing information to the debtors and

9      quantifying those claims.

10           The next paragraph, inserted paragraph, on page 9,

11     the claims process we're all familiar with involves a claims

12     agent that has a publicly attestable Web site where one's

13     proofs of claim are submitted; they're available on the Web

14     site to any member of the public.  The general proof of claim

15     Web site here maintained by Epiq Systems will not be any

16     different.  Proofs of claim that are filed need to be, as part

17     of the Court's records, publicly available.  But due to many of

18     the concerns received from counterparties as to the derivative

19     questionnaire specifically, the derivative questionnaire will

20     be a separate Web site.  And as parties upload information, it

21     will not be viewable or accessible other than by the party

22     making the submission and by the debtors and the creditors'

23     committee.  So no party will be able to go onto the derivative

24     questionnaire Web site and view the submissions information of

25     another party.

112

1    associated with the six-step derivatives unwind processes

2    described in the affidavit, and whether or not six steps as

3    opposed to four steps as opposed to ten steps may be the right

4    approach, I don't have good answers.  Additionally, what I

5    don't know, because there's no evidence on it, and maybe

6    there's no need for evidence on it, is the burden, if any,

7    which is being imposed on counterparties in having to comply

8    with this questionnaire.

9         And since I've already indicated that I understand

10   the philosophy that underlies that saving paragraph that you

11   stuck into the order, I think the saving paragraph about

12   substantial compliance is an invitation to gaming the system,

13   and I don't like it.  Any procedures that we adopt will be

14   strictly enforced.  There'll be no slippery slopes so that the

15   procedures that I want to adopt are the procedures that

16   everybody will comply with.  But in order to develop those

17   procedures, I need to be assured that they're right and

18   appropriate and that they balance, under the circumstances of

19   this case, the relative burden.

20        I'm fully comfortable that under 105 and other

21   applicable provisions, given the unique circumstances of this

22   case, I have the authority to adopt specific procedures

23   relative to derivatives and guaranty claims and to deviate from

24   the standard proof-of-claim form.  That's not the issue.  The

25   issue is making sure that we do it right and that the right

113

1    input has been put into the mix.  I recognize that there has

2    been dialogue with the creditors' committee, that, no doubt,

3    you've had dialogue with various aggressive objectors, and that

4    the ultimate order may in fact be, under the circumstances, if

5    not perfect, close to workable.

6            I have questions whether we can get where we want to

7    get today because the record that I want to have established is

8    more than just the declaration on the six-step process.  I want

9    a record in which the debtor proves up the extraordinary nature

10   of the derivatives claims, the million transactions, the ten

11   thousand counterparties, the extraordinary burden on the estate

12   if procedures specially crafted to deal with the problem are

13   not adopted.

14           The nature of the derivative transactions that we're

15   talking about here, what's involved conventionally in

16   determining breakage associated with such transactions?  What

17   are the varying approaches to value?  What are the varying

18   approaches to claims articulation?  What proof is ordinarily

19   required in connection with presenting such claims?  What

20   happens in a nonbankruptcy setting when parties in the market

21   are involved in swap termination or derivative termination or

22   whatever may be the terminated contract?  I suspect that it may

23   be possible to analogize, from the free market approach, how

24   parties actually value these things when a party is out of the

25   money and exposed to a claim.  But I also expect that there may

114

1    be differences when parties are alive and functioning and have

2    multiple transactions.  So you can give a little on one in the

3    hope of getting one on another.

4            Here we're talking about dead Lehman Brothers.  This

5    is your one-time shot to maximize your recovery.  And it raises

6    questions in my mind as to how counterparties are going to

7    approach this process.  I want to know what Lehman's people

8    think about that process and how it can be most efficiently

9    managed, because we're not just talking about a questionnaire;

10   we're talking about the biggest administrative headache in this

11   case.  And for that reason, I want to make sure that when I

12   approve the procedures I don't, nine months from now, have a

13   hearing like I had today on the sale hearing in which somebody

14   says we didn't think of something we should have thought of.

15           So I'm not suggesting for a moment that a tremendous

16   amount of topflight work hasn't gone into where we are right

17   now.  I want a record that allows me to comfortably approve

18   those procedures.  And I don't think we're going to get it

19   today if all we're doing is cross-examining the witness whose

20   declaration I have.  Now, it could happen, and if everybody

21   consents to it we can do it at 2 o'clock, but that means that

22   the parties who have sought an adjournment of today's hearing

23   will all waive their objections.  And I'm prepared to have an

24   evidentiary hearing at 2.  I'll be here all afternoon.  But I'm

25   also prepared to do it another day when everybody who's