**HEARING DATE AND TIME: November 13, 2015 at 12:00 p.m. (Eastern Time)**

Turner P. Smith
L.P. Harrison 3rd
Peter J. Behmke
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 PARK AVENUE
NEW YORK, NEW YORK 10178

Andrew J. Rossman
Diane Cafferata Hutnyan
Scott C. Shelley
Lindsay M. Weber
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010

*Attorneys for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------ X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | : | |
| | : | |
| Debtors. | : | |

------------------------------------------------------------------------ X

**OMNIBUS REPLY IN SUPPORT OF MOTION TO RENEW MOTION TO ALLOW
DISCLOSURE OF DERIVATIVES QUESTIONNAIRES PURSUANT
TO SECTION 107(a) OF THE BANKRUPTCY CODE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PROCEDURAL STATEMENT ................................................................................................1

DISCUSSION ....................................................................................................................3

I.      PROCEDURAL OBJECTIONS ...................................................................................3

    A.      Section 107(b) Does Not Apply to Protect the Derivative Questionnaires
                From Being Used As Discovery Materials ...............................................3

    B.      Rule 60 Does Not Apply to Interlocutory or Administrative Orders
                Including the Bar Date Order...................................................................8

II.     SUBSTANTIVE OBJECTIONS ..................................................................................13

    A.      The Bulk of the Objections Mischaracterize the Motion.........................13

    B.      The Unresolved Objectors' Relevance Argument Is Proceeding-Specific
                and Is Best Addressed When Lehman Receives a Request for Production
                of the Derivative Questionnaires In a Particular Matter, and Does Not
                Justify Prohibiting Their General Use In Discovery................................13

    C.      The Derivatives Questionnaires Are Already Discoverable, But At Great
                Expense to Lehman And Its Adversaries, And Imposing A Burden on the
                Court ...................................................................................................15

    D.      The Bank Group Cannot Avoid Disclosure of Their Derivative
                Questionnaires......................................................................................17

NOTICE...........................................................................................................................20

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>CASES</u>

*Escalera v. New York House Authority*,
    924 F.Supp. 1323 (S.D.N.Y. 1996) ................................................................. 11

*Flaxman, Coleman, Gorman & Rossoff v. Cheek*,
    355 F.2d 672 (9th Cir. 1966) ........................................................................ 9

*In re Anthracite Capital Inc.*,
    492 B.R. 162 (Bankr. S.D.N.Y. 2013) ........................................................ 5, 6

*In re Enron Corp.*,
    2003 WL 1562202 (Bankr. S.D.N.Y. 2003) .................................................. 9

*In re FiberMark, Inc.*,
    330 B.R. 480 (Bankr. D. Vt. 2005) .............................................................. 12

*In re Food Management Group, LLC*,
    359 B.R. 543 (Bankr. S.D.N.Y. 2007) .......................................................... 5

*In re Qimonda AG Bankruptcy Litigation*,
    433 B.R. 547 (Bankr. E.D. Va. 2010) ........................................................... 9

*In re Starbrite Properties Corp.*,
    2012 WL 2050745 (Bankr. E.D.N.Y. 2012) .................................................. 5

<u>STATUTES</u>

Fed. R. Bankr. P. 9018, § 107(a) ..................................................................... passim

Fed. R. Bankr. P. 9018, § 107(b) ..................................................................... passim

Fed. R. Bankr. P. 9018, § 9023 .................................................................... 12, 13

Fed. R. Civ. P. 60 ............................................................................................ 8

Fed. R. Civ. P. 60(b) ........................................................................... 8, 9, 11, 12

Fed. R. Civ. P. 60(b)(5)-(6) ............................................................................ 11

<u>OTHER AUTHORITIES</u>

11 Wright, Miller & Kane, Federal Practice & Procedure § 2852 ................................9

Lehman[1] respectfully submits this omnibus reply (the "Renewal Reply") in support of the

Renewal Motion and respectfully states as follows:

## PROCEDURAL STATEMENT

1.      Lehman filed the Renewal Motion on October 30, 2015, with an original

objection deadline of November 6, 2015 at 4:00 p.m. (Eastern Time).  Thirty-nine parties filed or

submitted objections or renewed objections before that date and two parties filed or submitted

objections after that date (collectively, the "Objecting Parties").

2.      After Lehman renewed its motion, it continued to engage in good faith

discussions with the remaining Objecting Parties and developed two revised proposals, pursuant

to which it has now reached a resolution with many of the Objecting Parties and anticipate

reaching a resolution with several others prior to the hearing on this Motion.

3.      On November 5, 2015, Lehman proposed a solution to the Creditors to the

Debtors group (the "Bank Group") to address their unique objections.  Negotiations continue

regarding this solution.

4.      On the same day, Lehman advanced a proposal to the remaining Objecting Parties

(the "Non-Bank Group"), that features an anonymization scheme and provisions for sharing

redacted and unredacted Derivative Questionnaires.  Several Objecting Parties have agreed to

this proposal.

5.      Thus, the Derivative Questionnaires of the Objecting Parties now fall in three

groups:

---

[1]  Capitalized terms used herein and not otherwise defined herein shall have the same
meanings set forth in the Initial Motion [Dkt. No. 51312].

1

a.  Parties who objected to the Initial Motion, have not reached a resolution with

Lehman regarding their Derivative Questionnaires, but who did not object to the

Renewal Motion ("Unrenewed Objectors").  Lehman provided notice of the

Renewal Motion and the objection deadline to these parties and advised them to

file objections or renew their objections to the Initial Motion if they still had such

objections.  Because they failed to renew their objection, the Court should grant

Lehman's motion as to these parties.

b.  Parties who objected to the Renewal Motion but who either have agreed, or will

agree, with one of the two proposals advanced on November 5 by Lehman

("Settling Objectors").[2]  Lehman is drafting a proposed order memorializing the

agreed-upon terms of disclosure with these parties to submit to the Court.

c.  Parties who objected to the Renewed Motion and neither have agreed nor will

agree to either of Lehman's two proposals ("Unresolved Objectors").  Lehman

respectfully requests that the objections of the Unresolved Objectors be overruled

and the motion be granted as to these parties.[3]

---

[2]  Lehman has also reached settlement with KfW (a.k.a. Kreditanstalt fuer Wiederaufbau based on that party's particularized, specific showing that information included in its Derivative Questionnaire is both highly confidential and sensitive, and (as a settlement agreement) lacks probativeness.  *See* Objection to Motion to Renew Motion to Allow Disclosure of the Derivatives Questionnaires [Docket 51397].

[3]  Because the Objecting Parties continue to shift from being Unresolved Objectors to Settling Objectors, Lehman will produce a final list of each party in those categories at or after the hearing.

## DISCUSSION

6.        Because the Unresolved Objectors raise a host of similar issues, for the Court's convenience we are submitting one omnibus reply brief attempting to address all of them, issue by issue.[4]

## I.        PROCEDURAL OBJECTIONS

### A.        Section 107(b) Does Not Apply to Protect the Derivative Questionnaires From Being Used As Discovery Materials

7.        Recognizing the uphill battle they face to overcome the presumption of public access, the Unresolved Objectors assert that § 107(a) is not relevant to the current Motion because the Derivative Questionnaires are distinct from the Proof of Claims and do not constitute "a paper filed in a case under this title and the dockets of the bankruptcy court." *See e.g.*, Objection of Derivative Questionnaire Respondents to Renewed Motion to Allow Disclosure of the Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code [Docket No. 51363] at ¶¶ 20-21.  However, in making this argument to circumvent the presumption of access, the Unresolved Objectors ignore the text of the Bar Date Order itself.  For example, the Derivative Questionnaire form attached to the Bar Date Order as Exhibit C explains "that information stated on or uploaded on this website is being submitted *as part of the Proof of Claim form*." (emphasis added).  Further, during the June 24, 2009 hearing on the Bar Date Motion (the "Hearing"), Lehman explicitly stated that the Derivative Questionnaires are part of the proof of claims.  Hr'g Tr. *In re Lehman Bros. Holding Inc.*, Case No. 08-13555 [Dkt. No. 4183] (Bankr. S.D.N.Y. June 24, 2009) (the "Transcript") at 100:14-18  ("[T]he additional language at the top of the derivative questionnaire is there to reflect that this is a submission in

---

[4]   To the extent that any Unrenewed Objectors address these same issues before or during the hearing, Lehman's reply responds to such arguments as well.

connection with, and as part of, a proof of claim, and mirrors the language that is found in every

proof-of-claim form.").  Moreover, Judge Peck rejected the suggestion that the Derivative

Questionnaires should be distinct from the proof of claims.  During the Hearing, he explained

that the Derivative Questionnaires must be considered part of the proof of claims to ensure

parties would actually comply with the process.  *Id.* at 125:1-8. ("It's obvious to me that linking

the questionnaire to the bar date means that it's coercive [if] someone fails to file the

questionnaire.").  Judge Peck agreed with Lehman that the derivative questionnaires were part of

the proof of claims, such that failure to file the derivative questionnaire would result in denial of

the claim.  The Bar Date Order further clarifies that all "information submitted on the website

will be subject to the same rules and standards as amendments and supplements to the proofs of

claim . . . ."  Bar Date Order at 9.  Based on the language of the Bar Date Order and the

clarifications offered by Lehman and the Court, it is clear that the Derivative Questionnaires

constitute part of the Proof of Claims—and the Objecting Parties acknowledge that the Proof of

Claims are subject to the § 107(a) presumptions.

8.     Some of the Unresolved Objectors invoke the Court's power to maintain some

documents as confidential pursuant to 11 U.S.C. § 107(b).  Section 107(b) can only overcome

section 107(a)'s "strong presumption and public policy in favor of public access to court

records"  mandating that "*all* papers filed with the bankruptcy court are 'public records'" when

'the bankruptcy court' decides to protect the information pursuant to the standards set forth in

section 107(b).'"  *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y.

2007).  Section 107(b)'s exception is narrowly construed and the party seeking to restrict access

bears the burden of proof.  *In re Starbrite Properties Corp.*, 2012 WL 2050745, at *6 (Bankr.

E.D.N.Y. 2012).

9.    The Unresolved Objectors have failed to satisfy their burden of proof because they have, with one notable exception (see footnote 2, *supra*), relied exclusively on generalized assertions of confidentiality.  "Inherent in the language of section 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that a particular document at issue is properly classified as 'confidential' or 'scandalous.'"  *In re Anthracite Capital Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013).  Rather than providing specific examples of proprietary information, the Unresolved Objectors have made blanket statements that "some" information "may" be confidential and "may" cause reputational harm.  *See, e.g.*, Objection of Citadel Energy Investments Ltd. and Citadel Equity Fund Ltd. to Motion to Renew Motion to Allow Disclosure of Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code [Dkt. No. 51379] at ¶ 6 ("Although the trade information and valuations compiled by the Citadel Entities to support their termination calculations are now nearly 6 years old, that information *may* reveal confidential information about the Citadel Entities' trading counterparties and proprietary trading strategies that *may* still be relevant today.") (emphasis added).  Notably, the Unresolved Objectors fail to even establish that trading strategies are still confidential and employed six years later. Such conclusory statements do not satisfy the requirement that parties must "allege with specificity what information is jeopardized."  *In re Anthracite Capital Inc.*, 492 B.R. at 179.

10.    Some of the Unresolved Objectors attempt to rely on the Bar Date Order itself to establish a "presumption" of confidentiality or shift the burden of proof.  *See, e.g.*, Objection of Russell Investments and its Affiliated Entities to Motion to Renew Motion to Allow Disclosure of the Derivatives Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code ("Russell Objection") [Dkt. No. 51404] at ¶ 23 (arguing that a protective order should not be modified

absent a showing of extraordinary circumstances).  Such a presumption only exists, however, when there has been an explicit finding of confidentiality under section 107(b) standards.  *In re FiberMark, Inc.* 330 B.R. 480, 504 (Bankr. D. Vt. 2005) (observing that the 2nd Circuit's presumption against modification applies only when "the court had made particular findings warranting a seal, prior to the motions at issue.").  Absent such a finding, prior confidentiality orders or stipulations should have no bearing on subsequent motions.  *See In re Anthracite Capital, Inc.*, 492 B.R. at 180 (prior confidentiality order does not change the analysis under 170(b) nor does it "displace this Court's duty to scrutinize the request for a seal order."); *In re FiberMark, Inc.*, 330 B.R. at 496 (prior order was not based on "any finding that there was a compelling reason to seal the document," thus "the posture of this case is now the same as the posture of a request to seal an unsealed document.").  In this case, the Bar Date Order was issued to expedite the proof of claims process and included no findings as to whether the documents actually warranted confidential treatment.  Judge Peck made no reference to the confidentiality concerns during the Hearing, and there is no indication that he even considered section 107(b) standards, much less the confidentiality of particular documents.[5]  Thus the Bar Date Order has no bearing on the motion at hand.[6]

11.    Further, some of the materials that many counterparties have pointed to as extraordinarily sensitive and requiring protection – ISDA, CSA and other agreements with

---

[5]    The only reference to the accessibility of the Derivative Questionnaire website was made by the debtors when discussing the edits to the prior draft order.  *See* Transcript at 94:10-25.

[6]    Moreover, any reliance on the expectation of confidentiality is both unlikely and unjustified.  The clear language of the Bar Date Order is limited merely to the accessibility of the website.  In addition, it seems unlikely that the parties would 'overproduce' given their repeated concerns about the burden of producing so many documents.  This is particularly true in light of the Debtors' representations on record to approach the process in good faith and not arbitrarily seek expungement of the claims.  Transcript at 97:2-18.

negotiated terms – may be produced freely in discovery because they already reside in Lehman's files, which are not governed by the Bar Date Order.  Not one of the counterparties has explained how the Bar Date Order prevents the disclosure of an ISDA agreement residing on Epiq as part of a Derivative Questionnaire when a copy of that same agreement was received by Lehman and resides in its files as regular discovery materials which may be produced by Lehman at any time.

12.     Even if the Court believes that the documents may contain some confidential information, the proper course of action would be to permit limited redactions rather than denying the relief requested in the Renewed Motion.  Accordingly, Lehman's proposal to the Non-Bank Group was designed to preserve the content of the evidence while allowing anonymization of sensitive material.  Lehman—along with the many counterparties who have explicitly endorsed the proposal—believes this balances the concerns of the Objectors with the evidentiary needs of other counterparties.[7]

13.     It is also a much more workable solution than that offered by the Citadel Entities and other Objectors who have expressly joined or incorporated the Citadel Entities' objection.[8]

---

[7]  Russell Investments' contention that Lehman should negotiate individual agreements with all the Unresolved Objectors is simply unworkable.  It would be an extraordinary burden to require Lehman to monitor and adhere to the individualized provisions of each agreement across all its litigations that are handled by multiple law firms, and over an indefinite period of time.  Moreover, Lehman has attempted to reach very workable agreements with the Unresolved Objectors but has been unsuccessful.  *See* Russell Objection at ¶ 15, n.4.  Despite its representation that the parties were "very close to a resolution," Russell Investments simply refused to agree, without any elaboration, to many of the terms of the proposal made to the Non-Banks.  *See id.*

[8]  *See* Ontario Teachers' Pension Plan Board [Dkt. No. 51375]; Tudor Respondents [ Dkt. No. 51379]; Och-Ziff Respondents [Dkt. No. 51377]; Landesbank Baden-Württemberg [Dkt. No. 51378]; HSBC Parties [Dkt. No. 51381]; Bill & Melinda Gates Foundation Trust [Dkt. No. 51382]; Cascade Investment, L.L.C. [Dkt. No. 51384]; Castlerigg Master Investments Ltd. [Dkt. No. 51385]; Convexity Master Fund L.P. [Dkt. No. 51386]; Fig Entities [Dkt. No. 51387]; GE Financial Markets [Dkt. No. 51388]; HBK Master Fund L.P. [Dkt. No. 51389]; International Bank for Reconstruction and Development as Trustee of the Retired Staff Benefits Plan and

The Citadel Entities propose wholesale manipulation and concealment of evidence, asking the

Court to permit them to "(a) narrow the disclosure of the Derivatives Questionnaires to only the

information included in the calculation statements that is relevant to the valuation of individual

trades and (b) allow claimants to redact all *identifying, confidential and proprietary information*

from any calculation statement excerpts."  Objection of Citadel Energy Investments Ltd. and

Citadel Equity Fund Ltd. to Motion to Renew Motion to Allow Disclosure of Derivatives

Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code [Dkt. No. 51379] at ¶ 11

(emphasis added).  This vague proposal, much like its generalized assertions of confidentiality,

provides absolutely no check whatsoever on what a party may redact.  The Unresolved Objectors

should not be permitted to bulldoze over the important policies advanced by § 107(a) and

conceal evidence based on their sole determination as to what is confidential.[9]

### B.    Rule 60 Does Not Apply to Interlocutory or Administrative Orders Including the Bar Date Order

14.    In a separate line of argumentation, several Objecting Parties assert that the

Renew Motion must be analyzed pursuant to FRCP Rule 60.  This is completely unfounded.

Case law makes it clear that Rule 60(b) applies only to final judgments.  *In re Qimonda AG*

*Bankruptcy Litigation*, 433 B.R. 547, 556 (Bankr. E.D. Va. 2010) ("[T]he power of a court to

---

Trust [Dkt. No. 51390]; International Bank for Reconstruction and Development as Trustee of
the Staff Retirement Plan and Trust [Dkt. No. 51391]; International Bank for Reconstruction and
Development for the Post-Employment Benefits Plan [Dkt. No. 51392]; International Bank for
Reconstruction and Development [Dkt. No. 51393]; Natixis and Natixis Financial Products Inc.
[Dkt. No. 51394]; and United Technologies Corporation  [Dkt. No. 51395].

[9]    As set forth above at ¶ 9 and footnote 2, all but one of the Objecting Parties failed to
provide any specific showing of confidentiality with respect to the material in their Derivative
Questionnaires and have relied instead on broad, unsupported arguments as to the "confidential
and proprietary" nature of the entire collection of the materials.  For this reason alone, there is no
doubt that giving the Unresolved Objectors a license to redact whatever they deem confidential
would result in much discoverable evidence being improperly concealed.

modify an interlocutory judgment or order at any time prior to final judgment remains unchanged

and is not limited by the provisions of Rule 60(b).") (*quoting* 11 Wright, Miller & Kane, Federal

Practice & Procedure § 2852).

15.    In contrast, the Bar Date Order is properly classified as an interlocutory or

administrative order because it lacks finality and does not embody any findings of fact or law.

*See In re Enron Corp.*, 2003 WL 1562202, at 12 (Bankr. S.D.N.Y. 2003) (an interlocutory order

is defined as an order "in which there is something left for the court to decide after issuing the

order"); *Flaxman, Coleman, Gorman & Rossoff v. Cheek*, 355 F.2d 672, 674 (9th Cir. 1966)

(noting that administrative orders which do not rely on any findings of facts or conclusions of

law are subject to reconsideration and reexamination by the court).  Indeed, the Order itself

acknowledges that the procedures may be modified with the consent of the Court or the Creditors

Committee.  Bar Date Order at 12 ("Debtors shall not enter into any stipulations or agreements

that modify the procedures set forth in this Order for the filing of Proofs of Claims based on

Derivative Contracts (including the completion of the Derivative Questionnaire) without either

the consent of the Creditors' Committee or the approval of the Court . . . .").  This express

approval of future modifications belies any claim that the order is "final" for purposes of Rule

60(b).

16.    Some of the Objectors cite to a portion of the Transcript to support their argument

that Judge Peck intended the Bar Date Order to be "final."  *See, e.g.*, Objection of Derivative

Questionnaire Respondents to Renewed Motion to Allow Disclosure of the Derivative

Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code [Docket 51363] at ¶ 7;

Russell Objection at ¶ 8.  Read in context of the hearing though, these comments had nothing to

do with discovery obligations or protective orders; they had to do with creating clear proof of

claim procedures that could be enforced against all the creditors.  Judge Peck was particularly

concerned with a savings clause in the draft order that would have prohibited expungement of

claims so long as the creditors "substantially complied" with the proof of claim procedures.

Though this might give the creditors some flexibility, he believed it would lead to endless

litigation.  Transcript at 112:9-16  ("I think the saving paragraph about substantial compliance is

an invitation to gaming the system and I don't like it.  Any procedures that we adopt will be

strictly enforced."); see also *id.* at 97:20-24 ("I have some concern as to whether or not this isn't

just an open-ended invitation to endless litigation over whether or not there is or is not

substantial good-faith compliance with the procedures.").  Judge Peck wanted a strong

evidentiary record documenting both the needs of the debtors and the burdens on the creditors so

he could feel confident in issuing procedures that could be strictly enforced against the creditors.

*Id.* at 117:23-118: ("I believed that the philosophy providing flexibility to parties who don't

comply, while admirable, is, I think, a fool's errand.  I think that what we need are procedures

that will be rigidly and strictly applied; procedures that will be known to everybody, and you

either comply or take the consequences of failing to comply.  Complete proof of claim

transparency.  You file it and you comply, or you're out of luck.").

        17.     During this portion of the Hearing, Judge Peck never indicated that the agreement

regarding access to the Derivative Questionnaire website would be "final."  Indeed, Judge Peck

never mentioned the website access provision throughout the entire hearing.  To the contrary, he

did acknowledge multiple times that the Bar Date Order could not cover all eventualities.  *Id.* at

125:9-12 ("Whether or not there needs to be some timing relief or extension for cause shown for

certain parties who are truly burdened and can show the burden, we can deal with that on a case-

by-case basis."); Hr'g Tr. *In re Lehman Bros. Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. June

29, 2009) [Dkt. No. Docket 4254] at Tr. 86:14-18 ("This is an extraordinary complex

undertaking.  Unprecedented, actually, in the history of global finance.  And to the extent you get

this right the first time, that's an achievement which is properly mostly to be chalked off to good

luck.  And to the extent that there turns out to be some problems along the way I won't be

surprised and I hope we can address them.").  Judge Peck gave no indication that his acceptance

of the website access provision was perpetual, nor did he even acknowledge that his Bar Date

Order would be binding without any future negotiations.  Thus, Rule 60(b) cannot apply to the

current motion.

18.     And even if Rule 60(b) applies to the Bar Date Order, the present motion clearly

satisfies the requirements for relief.  Rule 60(b) provides that "the court may relieve a party or its

legal representative from a final judgment, order, or proceeding" if "applying it prospectively is

no longer equitable" or "any other reason . . . justifies relief."  Fed. R. Civ. P. 60(b)(5)-(6).

Pursuant to these provisions, the court may grant relief when there has been a change in

circumstances that makes application of the order inequitable.  In particular, there are three

categories of "changes in circumstances" that justify modification or relief from a prior order: (1)

changed factual circumstances that make compliance substantially more onerous; (2) the decree

proves to be unworkable due to unforeseen obstacles; and (3) enforcement of decree would be

detrimental to the public interest.  *See Escalera v. New York House Authority*, 924 F.Supp. 1323,

1339 (S.D.N.Y. 1996) (analyzing Rule 60(b) in the context of consent decrees).

19.     All three factors are present in this case.  As noted below, litigants in the adverse

actions have demanded productions of all Derivative Questionnaire materials.  Satisfying these

demands while adhering to the strictures of the Bar Date Order is a substantial and unforeseen

burden on the estate.  In addition, the compliance costs (both in terms of monetary costs and

time) harm litigants and Lehman's creditors.  Thus, even if the Court concludes that Rule 60(b)

is applicable, the Court should employ its equitable powers to grant the relief requested in the

Renewal Motion.

20.    Russell Investments' arguments regarding Rule 9023 of the Federal Rules of

Bankruptcy Procedures are similarly unavailing.  *See* Russell Objection at ¶ 22.  Rule 9023

applies only when a party is seeking to modify a prior order—and such modification is necessary

only when the prior order actually addresses the requested relief.  The Bar Date Order, however,

never addressed the confidentiality of the Derivative Questionnaire materials during litigation

nor Lehman's obligation in regards to confidentiality.  The order simply provides that the

information "will not be accessible on the website other than by the party that submitted such

information, the Debtors, the Creditors' Committee and their respective advisors and counsel . . .

."  Bar Date Order at 9.  Thus this case is similar to that addressed by the *In re FiberMark, Inc.*

court: "The Court has not yet made any finding that there was a compelling reason to seal the

document.  Neither it nor any of the parties had even seen the Report—indeed, the Examiner had

probably not even begun drafting it—at the time the Order was entered directing the Examiner to

file the Report under seal.  The Court made no specific findings under Fed. R. Bankr. P. 9018, §

107(b), or Rule 26 that would make the current question of whether to seal the Report

tantamount to a "modification" of the Court's May 13th Order."  *Id.* at 496.  Since the Bar Date

Order made no findings regarding the confidentiality of the Derivative Questionnaire materials

during adversarial proceedings, the relief requested in the Renew Motion would not constitute a

"modification."  Thus, Rule 9023 is inapplicable.

## II.    SUBSTANTIVE OBJECTIONS

### A.    The Bulk of the Objections Mischaracterize the Motion

21.    Lehman is not seeking to widely disclose the Derivative Questionnaires; it is asking for the ability to disclose the materials in discovery, with limited potential for narrow disclosure under particular circumstances.  *See* Initial Motion at ¶ 14 ("Movants therefore request that the Court enter an order allowing the unrestricted production of the Derivative Questionnaires to avoid uncertainty and future disputes regarding use of those materials by the Lehman estates and the Litigation Claimants.  To be clear, the Derivative Questionnaires would not become publicly accessible on the Lehman claims website.  Instead, Lehman is seeking authorization to freely exchange the Derivative Questionnaires as discovery materials in connection with any Lehman-related adversary proceeding or claim objection.  If, however, information contained in the Derivative Questionnaires is later filed with the Court, such information need not be redacted and/or filed under seal.").

22.    The bulk of the objections mischaracterize the Motion as asking to disclose the Derivatives Questionnaires publicly and ignore that in all likelihood, none or very little of the materials will ever be filed.

### B.    The Unresolved Objectors' Relevance Argument Is Proceeding-Specific and Is Best Addressed When Lehman Receives a Request for Production of the Derivative Questionnaires In a Particular Matter, and Does Not Justify Prohibiting Their General Use In Discovery

23.    Some Unresolved Objectors have asserted that the Derivative Questionnaires are irrelevant to the Litigation Claims and should not be produced on that ground.   This argument simply lacks foundation, as the current motion deals with the use of the Derivative Questionnaires as discovery materials in multiple actions.  And although Lehman does not believe the Derivative Questionnaires are relevant or probative evidence on the points it believes

several of the Litigation Claimants are hoping to make with them, it is in the best position to evaluate claims of relevance in each matter and determine whether the Derivative Questionnaires need to be produced or whether they are irrelevant and need not be produced.

24.     For example, in Lehman's adversary proceeding against litigation claimant Citibank, Citibank has repeatedly and consistently demanded all of the Derivative Questionnaires derivatives counterparties have submitted to Lehman.  While disagreeing with Citibank's argument for relevance, Lehman does not oppose this production but has been unable to produce Derivative Questionnaires from the Objecting Parties without engaging in a costly and time consuming notice and consent process.  Meanwhile, Citibank claims it has been prejudiced by Lehman's inability to produce these materials, including because its experts have not been able to consider the materials that Lehman has had access to.  On October 9, 2015, Citibank stated if it did not receive the materials by October 12, it would move to compel their production.[10] Despite subsequent attempts to meet and confer, on October 19, 2015, Citibank again threatened to seek court intervention to compel production and extend the expert discovery schedule if Lehman did not produce the materials by October 30, 2015.[11]  It is not just a matter of making things a little more convenient for Lehman, as some parties have contended; this issue has become a burden to Lehman, to its adversaries, and ultimately to the Court, and resolving the matter decisively now will eliminate this burden in many more actions to come.

---

[10]     Declaration of Diane Cafferata Hutnyan in Support of Reply in Support of Motion to Renew Motion to Allow Disclosure of Derivatives Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code ("Hutnyan Decl."), Ex. A (Letter from William A. Clareman to Diane Cafferata Hutnyan, dated October 9, 2015).

[11]     Hutnyan Decl., Ex. B (Letter from William A. Clareman to Diane Cafferata Hutnyan, dated October 19, 2015).

25.     A similar situation arose in Lehman's adversary proceeding versus litigation claimant JPMorgan, in which JPMorgan has demanded the production of Derivative Questionnaires and the backup materials submitted with the Derivative Questionnaires for 37 counterparties.  It has reiterated this demand in written correspondence as recently as September 10, 2015 and reserved the right to seek additional Derivative Questionnaires.[12]

26.     Meanwhile, Lehman must retain the right to produce some of the evidence in the Derivative Questionnaires to and/or for related entities for the narrow purpose of litigation and settlement of claims and to rebut various representations other parties have made with respect to the supposed contents of the Derivative Questionnaires.  For example, Lehman entities must be able to use "cost of funds" information contained in the Derivative Questionnaires in matters in which adversaries have made representations about their cost of funds that are inconsistent with their representations in their Derivative Questionnaires.  Some of the Unresolved Objectors have even indicated that they are not withholding the Derivative Questionnaires from use in discovery because they believe they are confidential, sensitive or proprietary, but instead because they do not want the "cost of funds" evidence to be available for use by the Lehman entities.  This is improper.

C.     **The Derivatives Questionnaires Are Already Discoverable, But At Great Expense to Lehman And Its Adversaries, And Imposing A Burden on the Court**

27.     Similarly, any objection that the benefits of allowing Lehman to disclose the Derivative Questionnaires are outweighed by the burdens it would place on the Unresolved Objectors is a red herring.  *See, e.g.*, Objection of Citadel Energy Investments Ltd. And Citadel

---

[12]    Hutnyan Decl., Ex. C (Letter from Courtney L. Heavey to Ben Odell and Peter Behmke, dated September 10, 2015).

15

Equity Fund Ltd. to Motion to Renew Motion to Allow Disclosure of Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code [Dkt. No. 51379] at ¶ 10.  Lehman may produce the materials regardless of the outcome of this Motion; the difference will be the amount of burden *Lehman* will face in complying with its discovery obligations.

28.     By this Motion, Lehman is seeking a streamlined process that would permit Lehman to disclose the information to other litigants in discovery and disclosure of the information publicly in connection with the litigation in only very specific limited circumstances. Without relief from the Court, Lehman must continue to do this same thing the hard way:  every time a request comes in, Lehman must provide notice to each counterparty seeking their consent. This process is not only extremely time consuming, costly, and burdensome to Lehman, but may result in repeated motion practice, when Derivative Questionnaire counterparties fail to respond or refuse to cooperate even though they cannot make a proper showing that the materials are actually commercially sensitive and should be protected from disclosure.  These issues can be resolved today, avoiding all that cost and waste.

29.     Requiring the sealing of the Derivative Questionnaires adds substantially to the cost.  Any requirement to seal certain information would require Lehman to determine which data would need to be sealed and then redacted in a non-sealed version, creating additional burden expense to Lehman.  This would be made all the more impossible in light of the fact that over six months, even the counterparties who submitted these Derivative Questionnaires failed to make an adequate showing that any specific information in their Derivative Questionnaires is actually confidential commercial information warranting protecting under Section 107(b).[13]

---

[13]    In contrast, a previously objecting party recently approached Lehman explaining that one specific document attached to its Derivative Questionnaire was extremely confidential and

30.    Instead, the best, least cumbersome, least costly solution for the Estate, but which also grants limited protection to the Derivative Questionnaires counterparties, is the one the Court had months ago:  some form of limited anonymization. If the Unresolved Objectors felt so strongly that their information was highly sensitive, they could have accepted Lehman's recently revised proposal permitting anonymization of identifying information and severely restricting access to unredacted Derivative Questionnaires materials.

### D.    The Bank Group Cannot Avoid Disclosure of Their Derivative Questionnaires

31.    In addition to the many arguments already discussed in the sections above, the Bank Group[14] has advanced an additional argument that claims that Lehman's course of conduct since the Bar Date Order constitutes an admission that the information contained in the Derivative Questionnaires is confidential and deserves protection on those grounds.  The Bank Group cites three actions by Lehman in particular: (1) the Debtors' offer to produce the Derivative Questionnaires to Citibank and JPMorgan with a designation of "Highly Confidential" under the operative protective orders in those litigations; (2) the entrance by the Debtors and the Creditor's Committee into an agreement with the Bank Group to designate certain discovery materials in the Citibank litigation as "Highly Confidential Bank Discovery

---

sensitive and explained specifically how the document was not relevant.  Lehman agreed that this document could be withheld, and will seek the Court's approval of this agreement.  This type of showing is meaningfully different than the general and conclusory statements of the Objecting Parties. *See* footnote 2, *supra*.

[14]    Renewed Objection of Creditors to the Debtors' Renewed Motion to Allow Disclosure of the Derivatives Questionnaires [Dkt. No. 51406] filed by Bank of America N.A, Barclays Bank plc, BNP Paribas SA, Citadel LLC, Deutsche Bank AG, Goldman Sachs Group Inc., Merrill Lynch & Co. Inc., Morgan Stanley Capital Group Inc., Morgan Stanley Capital Services Inc., Morgan Stanley & Co. International plc, Royal Bank of Scotland PLC, Société Générale SA, UBS AG (the "Bank Group") (renewing and incorporating the Objection of Creditors to the Debtors' Motion to Allow Disclosure of the Derivatives Questionnaires [Dkt. No. 49132]).

Material"; and (3) LBHI's references to the Derivative Questionnaires at a March 2015 hearing concerning post-petition interest demands ("PPI Demands").[15]  In each of these instances, however, Lehman's conduct was, in fact, consistent with its belief that the six-year-old information contained in the Derivative Questionnaires does ***not*** merit confidential treatment.

32.    First, when faced with document requests for the production of the Derivative Questionnaires and related information in litigation with JPMorgan and Citibank, the Debtors and the Creditors Committee did not believe the information merited confidential protection but offered to designate such information as "Highly Confidential" under the terms of the protective orders in those cases in order to address potential concerns by the Bank Group.  For example, the Creditors Committee expressed to the Bank Group that communications related to the Bank Group's Derivative Questionnaires should be able to be produced in the Citibank litigation without being subject to any further protection than that afforded to all discovery materials under the protective order in that case, explaining, "The fact that the Banks made the Communications with Lehman without negotiating for any further protection at the time illustrates that the Banks' supposed concern now is unfounded."[16]

33.    Second, while the Debtors and the Creditors Committee entered into an agreement with the Bank Group in the Citibank litigation to afford special confidentiality protection to some documents produced pursuant to subpoena (which did not include the Derivative Questionnaire materials at issue here) in that litigation by the Bank Group, the Debtors and Creditors Committee again made clear that they did so as a compromise in order to resolve the Bank Group's objections and facilitate production, while asserting their view that in fact the materials

---

[15] Objection of Creditors to the Debtors' Motion to Allow Disclosure of the Derivatives Questionnaires [Dkt. No. 49132] at ¶¶ 6-8.

[16] Hutnyan Decl., Ex. D (Email from Ben Odell to various banks, dated April 10, 2014).

18

were no longer confidential.  For example, the Creditors Committee wrote to the Bank Group on

March 12, 2014, stating, "Meanwhile, the Banks' position that they require special

confidentiality protections before they will produce pursuant to the subpoenas is quite weak,

given the fact that the Banks' productions of materials are limited to the September 2008

timeframe, and are thus more than five years old."[17]

34.     Third, at the March 2015 hearing concerning PPI Demands, LBHI never

represented that the information in the Derivative Questionnaires necessitated confidentiality

protection.  Instead, LBHI, in the process of requesting that the PPI Demands be filed with the

claims agent rather than on the public docket, raised the Derivative Questionnaires as an example

of an instance in which the Court had previously implemented this same procedure.[18]  Counsel

for LBHI explained that the procedure it was requesting "is a simplified variant of requirements

that Judge Peck established with regard to derivatives claims, the so-called derivatives

questionnaires . . ."[19]  In sum, Lehman simply referenced the procedural mechanism by which

the Derivative Questionnaires were submitted to facilitate the production of various documents

in the Citibank and JPMorgan litigations.  Contrary to the Bank Group's objection, this conduct

was entirely consistent with Lehman's belief that the information contained in the Derivative

Questionnaires does not merit confidential treatment.

---

[17] Hutnyan Decl., Ex. E (Letter from Diane Cafferata Hutnyan to various banks, dated March 12, 2014).

[18] Hr'g Tr., *In re Lehman Bros. Inc.*, No. 08-1420 (SCC) SIPA (Bankr. S.D.N.Y. Mar. 11, 2015) [Dkt. No. 51406, Exhibit E].

[19] *Id.* at 20:18-21.  *See also id.* at 21:23-22:3 ("MR. FAIL: The derivatives questionnaires were uploaded electronically, but they were not accessible on the public website where they claims docket is available.  JUDGE CHAPMAN: Okay. Thank you.  MR. MILLER: And the same would be true here of this--this upload information, Your Honor.").

## NOTICE

35.     Notice of this Motion has been provided in accordance with the Case

Management Order, and notice has been given to: (i) the U.S. Trustee; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) counsel for the Creditors

Committee; (v) all other parties who have either requested notice or with a particularized interest

in the matters set forth herein; and (vi) all Lehman creditors party to a derivatives contract.

Lehman submits that no other notice is necessary.

**WHEREFORE,** Lehman respectfully requests that the Court grant the relief requested

herein and such other and further relief as is just, including entry of an order approving the

procedure agreed upon by the Settling Objectors and of an order authorizing Lehman to use and

produce the Derivative Questionnaires (and supporting materials) of the Unresolved Parties as

discovery materials solely in connection with any Lehman-related litigation, including any

adversary proceeding or claim objection, on the terms and conditions set forth herein.

Dated:  November 11, 2015
     New York, New York

                  Respectfully submitted,

                  CURTIS, MALLET-PREVOST, COLT &
                  MOSLE LLP

              By:  */s/Peter J. Behmke*
                  Turner P. Smith
                  L.P. Harrison 3rd
                  Peter J. Behmke

                  and

                  QUINN EMANUEL URQUHART &
                  SULLIVAN, LLP

              By:  */s/Andrew J. Rossman*

Andrew J. Rossman
Diane Cafferata Hutnyan
Scott C. Shelley
Lindsay M. Weber

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*