Turner P. Smith
L.P. Harrison 3rd
Peter J. Behmke
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 PARK AVENUE
NEW YORK, NEW YORK 10178

Andrew J. Rossman
Diane Cafferata Hutnyan
Scott C. Shelley
Lindsay M. Weber
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010

*Attorneys for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | : | |
| | : | |
| Debtors. | : | |

-------------------------------------------------------------------------- X

**DECLARATION OF DIANE CAFFERATA HUTNYAN IN SUPPORT OF REPLY IN**
**SUPPORT OF MOTION TO RENEW MOTION TO ALLOW**
**DISCLOSURE OF DERIVATIVES QUESTIONNAIRES PURSUANT**
**TO SECTION 107(a) OF THE BANKRUPTCY CODE**

Diane Cafferata Hutnyan hereby declares, under penalty of perjury:

1.      I am a partner with Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), counsel of record for Lehman Brothers Holdings Inc. and Certain of Its Affiliates (collectively, "<u>Lehman</u>"), debtors in the above-captioned action.

2.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of a letter from William A. Clareman to me, dated October 9, 2015.

3.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of a letter from William A. Clareman to me, dated October 19, 2015.

4.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of a letter from Courtney L. Heavey to Ben Odell and Peter Behmke without the originally attached exhibits, dated September 10, 2015.

5.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of an email from Ben Odell to various banks, dated April 10, 2014.

6.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of a letter from me to various banks, dated March 12, 2014.


Dated: Los Angeles, California
          November 11, 2015


                                                  */s/ Diane Cafferata Hutnyan*
                                                  Diane Cafferata Hutnyan

# EXHIBIT A

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3248

WRITER'S DIRECT FACSIMILE
212-492-0248

WRITER'S DIRECT E-MAIL ADDRESS
wclareman@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
BRIAN M. JANSON
JAREN JANGHORBANI
MEREDITH J. KANE

ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID N. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. BACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

October 9, 2015

**Via Email**

Diane C. Hutnyan
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

*Lehman Brothers Holdings, Inc., et al.* v. *Citibank, N.A., et al.,*
Adv. Proc. No. 12-01044 (SCC)

Dear Diane,

We write regarding outstanding questions from our August 25, August 27, and September 10, 2015 letters to which we have not received any response from plaintiffs, as well as several issues that arose during the October 1, 2015 deposition of Mr. Melchior.

1.    Lehman's Outstanding Rule 30(b)(6) Testimony

As you know, at the June 12, 2015 Rule 30(b)(6) deposition of Mr. Browning, after Mr. Browning was unable to provide complete and accurate testimony regarding the spreadsheets Lehman produced relating to Topics 20, 22, and 23 of Citi's December 15, 2014 Rule 30(b)(6) notice, plaintiffs agreed to address in writing Citi's questions regarding the data appearing in these spreadsheets.  (*See* Browning Dep. 226:22–227:12 (June 12, 2015).)  Citi provided its questions in its August 25, 2015 letter (Ltr. from W. Clareman to D. Hutnyan (Aug. 25, 2015)), and on August 27, 2015, plaintiffs indicated they had "begun the process of preparing answers to the questions"

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                                        2

Citi raised. (Ltr. from D. Hutnyan to W. Clareman (Aug. 27, 2015).) Please let us know by **Monday, October 12**, when we can expect to receive substantive responses to our questions on these topics.

In our August 27 letter, we identified a portion of Mr. Browning's Rule 30(b)(6) testimony on behalf of Lehman relating to the marking of curves or books at Lehman on and after September 15, 2008, which we believe was inconsistent with materials plaintiffs have produced, and specifically detailed the ways in which we believe this testimony might be inaccurate. To help clarify this apparent inconsistency, we further requested that Lehman produce a discrete subset of data reflecting trading activity and the mark-to-market mid-system values associated with LBI-booked trades for relevant products and trades from September 15 through 19, 2008. (*See* Ltr. from W. Clareman to D. Hutnyan at 1–2 (Aug. 27, 2015).) To date, <u>over a month</u> after our August 27 letter, we have received no response from plaintiffs. In light of the rapidly filling deposition calendar and upcoming depositions of Lehman witnesses, please let us know by **Monday, October 12**, (1) whether Mr. Browning's testimony was indeed inaccurate; (2) if so, when we can continue our examination on this subject to address this inaccuracy; and (3) when we can expect to receive the data for LBI-booked trades we requested.

    2.    <u>Lehman's Production of Derivatives Questionnaire Materials</u>

In addition, in our August 27 letter, we noted that, at the time, over two-and-a-half months after the Court entered an order approving the disclosure of Derivatives Questionnaire ("DQ") data, and despite the parties' agreement that, upon the Court's entry of such an order, Lehman would promptly produce to Citi all of the questionnaires Lehman's derivatives counterparties submitted to the Lehman estate, as well as a searchable compilation compiled by the Lehman estate of data derived from the DQs for all product types at issue in this litigation, we had not received any of this information. (*See id.* at 2–3.) While we have subsequently received a production of materials plaintiffs stated reflect certain DQs submitted to Lehman, our September 10 letter specifically requested clarification as to whether this production contained all of the materials Lehman has agreed to produce, and if not, by what date Citi would receive this outstanding information. (*See* Ltr. from W. Clareman to C. Kercher & D. Hutnyan at 2 (Sept. 10, 2015).) It has now been <u>over four months</u> since the Court approved the production of this material on June 8, 2015. Please produce by **Monday, October 12** (informally, if necessary), the outstanding materials plaintiffs long ago agreed to produce. If we have not received these materials by October 12, we will be forced to move to compel their production.

    3.    Lehman's Production of Reuters Dealing and
          <u>Other Electronic Communications</u>

Our August 27 letter also reiterated our request from February 3, 2015 that plaintiffs confirm they investigated and produced all responsive chats from Bloomberg,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                                    3

Reuters Dealing, and similar platforms used by Lehman document custodians. (*See* Ltr.
from W. Clareman to D. Hutnyan at 3–4 (Aug. 27, 2015) (citing Ltr. from J. Wood to D.
Hutnyan at 2 (Feb. 3, 2015).) We raised this issue again in our September 10 letter. (*See*
Ltr. from W. Clareman to C. Kercher & D. Hutnyan at 2 (Sept. 10, 2015).) This request
has been outstanding for <u>over eight months</u> at this point, yet we have received no
response from plaintiffs. Given the upcoming depositions of Lehman witnesses, some of
whom might have communicated using these systems, please produce these materials
(informally, if necessary) or provide answers to our outstanding questions by **Monday,
October 12**.

    4.    Lehman's Identification of Data Purchased from
<u>Third-Party Vendors</u>

    On June 6, 2012, the parties agreed to exchange narrative descriptions of
data purchased from third-party vendors for use in this litigation. On July 21, 2015, we
requested an update of all third-party data sources Lehman had purchased to date. (*See*
Email from E. Berg to D. Hutnyan (July 21, 2015).) When plaintiffs responded on
August 31, 2015, for securitized products, you identified Markit Partners, Intex,
Bloomberg, CMA, TRACE, and New Oak Partners as market data sources. (*See* Email
from D. Hutnyan to E. Berg (Aug. 31, 2015).) At the October 1, 2015 deposition of Mr.
Melchior, however, Mr. Melchior testified that "in certain cases" for securitized products,
Lehman relied on information provided by Gifford Fong Associates. (*See* Melchior Dep.
at 278:3–281:12 (Oct. 1, 2015).) The information received from Gifford Fong Associates
is plainly relevant to the parties' valuation dispute, and must be produced. In addition,
please confirm that all other data sources plaintiffs used and relied upon by Lehman have
either been produced or disclosed in their August 31 correspondence by **Monday
October 12**.

    5.    <u>Lehman's Production of Data Supporting Its Complaint Valuations</u>

    At the October 1, 2015 deposition, Mr. Melchior also testified that for the
long-dated callable swap trades between Citi and Lehman, Lehman calculated the values
of these trades for the purposes of Lehman's complaint by relying on "legacy collected
data" to which Lehman still had access. (*Id.* at 294:17–297:4.) We reiterate the request
we made at the deposition that Lehman produce this data (informally if necessary) by
**Monday October 12**.

    6.    <u>Lehman's Insufficient Preparation of Its Rule 30(b)(6) Witnesses</u>

    As you know, Topic 8 of our December 15, 2014 Rule 30(b)(6) notice
called for testimony regarding the models Lehman used for pricing or valuing credit
correlation derivatives trades, including "any Copula-based or other credit correlation
model used in the pricing or valuation of index and bespoke tranches." However, at the
October 1 deposition, Mr. Melchior was unfamiliar with basic concepts and terms
relating to these products and models. (*See, e.g.*, *id.* at 76:14–79:16 (unfamiliar with the

Diane Hutnyan                                                                                    4

term "CDX Series 9, 5 Year Intrinsic"); *id.* at 81:6–23 (unfamiliar with term "additive
swap adjustment"); *id.* at 82:8–10 (unfamiliar with term "spread dispersion").) As it
became apparent from Mr. Melchior's testimony, there are clearly other employees at
Lehman who actually understand these products and the models used to value them,
including Mr. Ian Burke. (*See, e.g., id.* at 88:10–90:7, 92:6–15, 96:12–97:14, 120:14–
121:8 (testifying as to conversations with Mr. Burke regarding Lehman's use of Gaussian
Copula or base correlation models and the difficulties market participants had in 2008
pricing index tranches).) Accordingly, so that Citi receives the deposition testimony to
which it is entitled on this topic, we request Mr. Burke's deposition as a supplemental
Rule 30(b)(6) witness as soon as possible, and by no later than **Friday, October 23**.

> 7.    System-Generated Mid-Market Value for FX Options

Lehman has produced mid-market valuations generated in the ordinary
course of business for its FX Options trades. (*See* LEH_CITI_1872970–
LEH_CITI_1872978.) It is our understanding—based upon Lehman's production, Mr.
Melchior's testimony, and Mr. Browning's testimony—that these mid-market valuations
were generated in the Murex system. (*See, e.g.,* Melchior Dep. at 209:13–23;
LEH_CITI_01468130.) Other documents from Lehman's production, however, suggest
that Lehman used additional systems or models to generate mid-market valuations for its
FX Option trades, in addition to Murex, including but not limited to the "One Plus"
model. (*See, e.g.,* LBI-CITI-00148863.) Please confirm that Lehman did not generate
any additional mid-market valuations in the ordinary course of business for its FX
Options trades other than those appearing in the documents Bates numbered
LEH_CITI_1872970–LEH_CITI_1872978, and that Lehman did not otherwise make
adjustments to those Murex generated mark-to-market values for purposes of calculating
margin or P&L. Please provide this confirmation no later than **Friday, October 16**. If
Lehman did generate any such valuations or documents, please produce this data
(informally, if necessary) by that same date.

> 8.    Unexplained Discrepancies between the Third
>        Amended Complaint Trade Valuations and
>        Lehman's Produced Trade Valuation File

As you also know, Topic 20 of our December 15, 2015 Rule 30(b)(6)
deposition notice sought testimony regarding the file that Lehman produced in response
to our request for trade-by-trade valuations, produced as LEH_CITI_1707987. During
the October 1 deposition, Mr. Melchior was unable to explain apparent discrepancies
between the valuations reflected in plaintiffs' Third Amended Complaint and the trade-
by-trade valuation file, and was in fact surprised that any such discrepancies existed.
(*See, e.g.* Melchior Dep. at 297:17–301:8.) By **Monday, October 12**, please produce a
corrected file containing the valuations actually used for purposes of the Third Amended
Complaint (informally, if necessary). We also reserve the right to continue Mr.
Melchior's deposition with respect to the corrected file or to obtain an explanation for the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                                          5

existence of different valuations in Lehman's pleadings and document productions,
which Mr. Melchior was unable to provide on October 1.

*        *        *

   As always, we write without prejudice to any of defendants' rights, all of
which are expressly reserved.

      Very truly yours,

      William A. Clareman

cc:  Counsel of record

# EXHIBIT B

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946 1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212-373-3248

WRITER'S DIRECT FACSIMILE

212-492-0248

WRITER'S DIRECT E-MAIL ADDRESS

wclareman@paulweiss.com

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86 10) 5828 6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2 CHOME
CHIYODA-KU TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
EDWARD T ACKERMAN
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
CATHERINE L GOODALL
ERIC GOODISON
CHARLES H GOOGE JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
AMRAN HUSSEIN
LORETTA A IPPOLITO
BRIAN M JANSON
JAREN JANGHORBANI
MEREDITH J KANE

ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
BRIAN KIM
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
LORIN L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
ELIZABETH M SACKSTEDER
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JENNIFER H WU
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
TAURIE M ZEITZER
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

October 19, 2015

**By Email**

Diane C. Hutnyan
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

*Lehman Brothers Holdings, Inc., et al.* v. *Citibank, N.A., et al.*,
Adv. Proc. No. 12-01044 (SCC)

Dear Diane:

We write further to the parties' October 12, 2015 meet-and-confer regarding discovery and specifically to address plaintiffs' continuing failure to produce Derivatives Questionnaire responses ("DQs") and the searchable compilation of DQ data that plaintiffs agreed to produce in September 2014.

The parties negotiated the scope of plaintiffs' production of DQs at length, and those negotiations concluded more than a year ago. As we explained repeatedly during those negotiations, our fundamental—and wholly reasonable—position is that the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                          2

parties must be on a level playing field with respect to their ability to review and analyze this information, which Lehman has had in its possession for more than six years.[1]

  More than thirteen months ago, plaintiffs agreed to produce all DQs in Lehman's possession, as well as a searchable compilation of data reflecting trade level details, counterparties, and valuation information, subject to the Court's approval of an amendment to the Bar Date Order to modify Lehman's confidentiality obligations relating to DQs, and you assured us that Lehman would produce these materials promptly after the Court's approval was obtained. (*See* Ltr. from A. Rossman to J. Wright & W. Claremen at 2 (Sept. 9, 2014); Ltr. from L. Velazquez to D. Hutnyan & L. Weber at 1–2 (Mar. 17, 2015).) More than four months ago, the Court entered an order allowing the production of the vast majority of the DQs in Lehman's possession. (*See* Order Granting Motion to Allow Disclosure of the Derivative Questionnaires Pursuant to Section 107(a) of the Bankruptcy Code, Dkt. No. 49936 (June 9, 2015).) Yet, to date, Lehman has failed to produce the searchable compilation it agreed to produce more than a year ago, despite our requests that this compilation be produced on a priority basis. Nor has Lehman produced DQs from the remaining objecting parties with whom Lehman is purportedly still "negotiating," seven months after Lehman filed its application with the Court.

  Lehman's delay and continuing failure to produce this information is deeply prejudicial to Citi. The deadline for substantial completion of document discovery lapsed nearly nine months ago, yet this important discovery obligation remains unfulfilled. Fact discovery closes in fewer than 45 days, and the parties are on the eve of expert discovery, yet Citi and its experts have been deprived documents that we have been demanding, and that Lehman has had free use of, for years. Lehman has belatedly produced DQs from scores of counterparties reflecting hundreds of thousands of derivatives trades, and, as plaintiffs know well, it is extraordinarily burdensome and time-consuming to review these materials (particularly in light of the substantially reduced amount of time Citi has to do so compared to Lehman). Thus, in an attempt to put the parties on closer to equal footing, Citi has insisted on the production of the searchable compilation Lehman agreed to produce more than a year ago.

  During our October 12 meet-and-confer, we were dismayed to learn that not only is there no timetable for the production of this material, but plaintiffs refuse even to provide us with any assurances that the searchable compilation and remaining DQs will be produced *before the close of fact discovery* on November 30, 2015. This is simply unacceptable.

---

[1] In June 2012, when plaintiffs first objected to producing the DQs, we made clear that we were willing to resolve this discovery issue by narrowing our request to include only data from Lehman's top 21 counterparties by trade count, provided that plaintiffs agreed that no additional DQ data could be reviewed or relied upon by Lehman or its experts and consultants. (*See* Ltr. from C. Hammerman to P. Behmke and A. Rossman (June 14, 2012); Ltr. from C. Hammerman to R. Lee at 1–2 (Aug. 10, 2012).) After initially agreeing to this limitation, plaintiffs reneged on that agreement and subsequently refused to be bound by this limitation. (*See* Ltr. from W. Claremen to A. Rossman (July 30, 2014).)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                           3

During our meet-and-confer, we also learned that plaintiffs have not made any attempt to expedite resolution of their disputes with the remaining objectors by seeking, at this point, to limit production of their DQs solely for this case. As you know, our adversary proceeding has a Confidentiality Stipulation and Protective Order that imposes broad protections for confidential and highly confidential discovery material, which should alleviate any concerns about confidentiality the counterparties have (a point we have made for more than a year and specifically asked be included in Lehman's moving papers). Although you did not disclose the number or identities of the objecting parties during the meet-and-confer, we understand that many of the objectors are big bank counterparties. Those entities consented to the production of their DQ data in our case years ago. As a result, we expect that the actual number of objecting parties that have not yet consented to production of DQs in our case is likely quite small. Given these facts, we see no reason why plaintiffs have not simply asked the limited number of remaining objecting parties for consent to produce their DQ data to us, subject to the strict terms of our protective order. That plaintiffs would prefer to resolve all issues with these objecting parties across all adversary proceedings (some of which may have less stringent confidentiality restrictions) is of no moment and certainly is no excuse for Lehman to fail to abide by its discovery obligations in this case. At this late stage, we must insist that plaintiffs immediately provide us with the list of any remaining objectors and their counsel so that we may contact them directly to get resolution of these issues.

In addition, we must insist that Lehman produce, by no later than October 23, a fully searchable compilation file for all DQs that have been produced to date so that, as an interim measure until a resolution with these remaining objecting parties is reached, Citi can begin to review this material. Your suggestion during the meet-and-confer that a filtered or redacted compilation could not be produced because plaintiffs are unable to confidently identify the remaining objecting parties is simply not credible. (*See* Ltr. from A. Rossman to J. Wright & W. Clareman at 2 (Sept. 9, 2014) (describing the searchable compilation as "an Excel spreadsheet [that] include[s] columns for counter-party").

Cumulatively, Lehman's dilatory approach to the production of the searchable compilation and remaining DQs has significantly prejudiced Citi's ability to review this voluminous amount of material and to litigate on a level playing field with Lehman. If Lehman has not fully complied with its obligations to produce all of the DQs and the searchable compilation by October 30, 2015, we will have no choice but to seek relief from the Court. That application will both seek to compel production by Lehman, and will also seek a modification of the discovery schedule to ensure that Citi has received this material at least four months prior to the submission of expert reports.

*        *        *

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane Hutnyan                                                                                4

        As always, we write without prejudice to any of defendants' rights, all of which are expressly reserved.

                  Sincerely,

                  William A. Clareman

cc:    Counsel of record

# EXHIBIT C

## WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
PAUL VIZCARRONDO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MARC WOLINSKY
DAVID GRUENSTEIN
STEVEN A. ROSENBLUM
STEPHANIE J. SELIGMAN
JOHN F. SAVARESE
SCOTT K. CHARLES
JODI J. SCHWARTZ
ADAM O. EMMERICH
GEORGE T. CONWAY III

RALPH M. LEVENE
RICHARD G. MASON
MICHAEL J. SEGAL
DAVID M. SILK
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
RACHELLE SILVERBERG
STEVEN A. COHEN
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE S. MAKOW

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150
TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)
LEONARD M. ROSEN (1965-2014)

OF COUNSEL

WILLIAM T. ALLEN
PETER C. CANELLOS
DAVID M. EINHORN
KENNETH B. FORREST
THEODORE GEWERTZ
MAURA R. GROSSMAN
RICHARD D. KATCHER
DOUGLAS K. MAYER
ROBERT B. MAZUR
PHILIP MINDLIN
ROBERT M. MORGENTHAU

DAVID S. NEILL
BERNARD W. NUSSBAUM
LAWRENCE B. PEDOWITZ
ERIC S. ROBINSON
PATRICIA A. ROBINSON*
ERIC M. ROTH
MICHAEL W. SCHWARTZ
ELLIOTT V. STEIN
WARREN R. STERN
PATRICIA A. VLAHAKIS
AMY R. WOLF

* ADMITTED IN THE DISTRICT OF COLUMBIA

COUNSEL

DAVID M. ADLERSTEIN
AMANDA K. ALLEXON
LOUIS J. BARASH
DIANNA CHEN
ANDREW J.H. CHEUNG
PAMELA EHRENKRANZ
KATHRYN GETTLES-ATWA
PAULA N. GORDON

NANCY B. GREENBAUM
MARK A. KOENIG
J. AUSTIN LYONS
ALICIA C. McCARTHY
SABASTIAN V. NILES
AMANDA N. PERSAUD
JEFFREY A. WATIKER

JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
DAVID A. SCHWARTZ
JOHN F. LYNCH
WILLIAM SAVITT
ERIC M. ROSOF
MARTIN J.E. ARMS
GREGORY E. OSTLING
DAVID B. ANDERS
ANDREA K. WAHLQUIST
ADAM J. SHAPIRO
NELSON O. FITTS
JOSHUA M. HOLMES
DAVID E. SHAPIRO
DAMIAN G. DIDDEN
ANTE VUCIC

IAN BOCZKO
MATTHEW M. GUEST
DAVID E. KAHAN
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN
ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN
RONALD C. CHEN
GORDON S. MOODIE
DONGJU SONG
BRADLEY R. WILSON
GRAHAM W. MELI
GREGORY E. PESSIN
CARRIE M. REILLY
MARK F. VEBLEN
VICTOR GOLDFELD
EDWARD J. LEE
BRANDON C. PRICE
KEVIN S. SCHWARTZ

September 10, 2015

**<u>BY E-MAIL</u>**

Ben Odell, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017-2543

Peter Behmke, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York  10178-0061

      Re:    *Lehman Bros. Holdings Inc. et al.* v. *JPMorgan Chase Bank, N.A., et al.*
            (*In re Lehman Bros. Holdings Inc.*), No. 12-01874 (Bankr. S.D.N.Y.)
            <u>(SCC)</u>

Dear Ben and Peter:

        Further to our discussions in the various meet and confers regarding the derivatives document requests served by both parties, we write to confirm our understanding of how Lehman Brothers Holdings, Inc. et al. ("LBHI") will be responding to the First, Second, and Third Requests of JPMorgan Chase Bank, N.A., et al. ("JPMorgan") for Production of

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 2

Documents, as well as how JPMorgan plans to respond to (and has been responding to) LBHI's
First, Second, Third, and Fourth Requests for Production of Documents.

**LBHI's Production in Response to JPMorgan's Requests for Production**

   First, we understand that LBHI will undertake the following with respect to
JPMorgan's Requests for Production:

- LBHI will search for responsive Documents in its own possession as well as in the
  possession of each of LBHI's subsidiaries.

- LBHI is in possession of — or has access to — all Documents and files (whether in hard
  copy, electronic copy or any other format) that were in the possession of LBHI, LBHI's
  subsidiaries, and any employees of LBHI or its subsidiaries, up to and including
  December 31, 2008.

- For the period subsequent to September 15, 2008, LBHI will search for any responsive
  Documents in its own possession as well as for Documents that may be in the possession
  of Alvarez & Marsal or the Estate.

   Second, LBHI will produce "Documents" as defined in each of JPMorgan's
Requests for Production, which, as articulated in that definition, will include, but not be limited
to, emails, hard-copy Documents and any interoffice and intra-office communications, including
any Bloomberg emails, Bloomberg chats and any other chat programming LBHI used at the
time.

   Third, LBHI will produce Documents in the form and manner described in the
Instructions in each of JPMorgan's Requests for Production.

   Fourth, to the extent LBHI is withholding or redacting any Document or any
portion of a Document on the grounds that it is subject to Federal Rule of Evidence 408, LBHI
will specify in its privilege log that LBHI is withholding or redacting the Document based on
Federal Rule of Evidence 408 and provide a sufficient description of the material being withheld
or redacted to allow us to assess the basis.  As we have previously stated, we do not believe that
the Federal Rule of Evidence 408 is a basis for withholding any Document or redacting any
portion of a Document in this case.

   Fifth, LBHI has agreed to conduct its search for responsive Documents through a
combination of Document collections methodologies, including, but not limited to, collecting
Documents from relevant LBHI repositories or custodians that may have gathered relevant
Documents, collecting hard copy Documents from custodians, as well as running agreed-upon
searches over custodians' Documents and relevant hard drives and shared drives.  Although
LBHI has agreed to undertake different search processes for different Requests, LBHI will

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 3

produce non-privileged Documents responsive to any Request regardless of the method by which
it finds that Document.  For example, for Requests where LBHI has agreed to only undertake a
Document collection, LBHI will produce Documents responsive to these Requests, if any, that it
finds while reviewing emails for other Requests.  Moreover, although the parties have agreed on
the application of search terms in many instances, LBHI will produce any Document it is aware
of that is responsive to any JPMorgan's Requests, even if it does not hit on a search term.

    LBHI has agreed to conduct its search in response to JPMorgan's First and
Second Requests for Production in the manner identified in Exhibits A and B, and as described
in further detail below.  JPMorgan reserves the right to modify this process if it determines that
the searches specified in Exhibits A and B are not identifying the types of Documents that
JPMorgan would expect to find in response to its Requests.

    Sixth, while Exhibit A identifies the custodians whose Documents LBHI will
search, JPMorgan reserves the right to seek Documents from additional custodians who may be
identified as part of its review of LBHI's Productions.

    Seventh, with respect to JPMorgan's First Request for Production, LBHI will
produce Documents responsive to the Requests as drafted in JPMorgan's First Request for
Production, notwithstanding LBHI's Responses and Objections, subject to the modifications
discussed in the tenth section of this letter as well as the following:

    (a)  With respect to Request 1-7,[1] LBHI will produce all Documents identified
in this Request from the period of September 11, 2008 to September 19, 2008.

    (b)  With respect to Request 1-8, LBHI will produce all Documents
concerning or reflecting any valuation, pricing or trading of any reference obligation, asset,
security, commodity, index or currency underlying any of the credit default swaps between
JPMorgan and Lehman.  We note that LBHI's hit report from July 12, 2015 did not include the
search strings for this Request, and thus we assume that LBHI is willing to run the search terms
we have proposed for this Request.

    (c)  With respect to Request 1-12, LBHI will produce all Documents
concerning collateral in connection with the JPMorgan/Lehman Derivatives Transactions.  While
we reserve our rights to do so at a later date, we are not currently seeking trade confirms in
response to this Request.

    (d)  With respect to Request 1-14, LBHI will produce all responsive
Documents based on the search identified in Exhibit B for the time period of September 13, 2008

---

[1] Throughout this letter, requests will be referred to in the form of 1-7, where the 1 refers to the
First Request for Production, and 7 refers to the seventh request within the First Request for
Production.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 4

through December 31, 2008, but JPMorgan requests that LBHI undertake a collection for responsive Documents for the full year of 2008.

(e)     With respect to Requests 1-25 and 1-26, LBHI will produce all Documents responsive to these Requests.  While LBHI has represented to JPMorgan that LBHI did not have any systems to capture intraday marks, to the extent intraday marks are reflected or referenced in other documents such as email communications or Bloomberg chats, they are responsive and will be produced.

(f)     With respect to Request 1-29, LBHI will produce all Documents responsive to this Request pursuant to a Document collection for the period of September 11, 2008 through September 19, 2008.

(g)     With respect to Requests 1-38 through 1-44, the parties have agreed to target specific counterparties and defaults in which Lehman previously closed out derivatives positions.  LBHI has confirmed that after a good faith and reasonable investigation, the list of counterparties identified in the attachment to the email from Ben Odell dated May 6, 2015, is a complete list of counterparties for whom Lehman closed out derivatives positions at any point in time between January 1, 2004 and the present.  In the instances where LBHI has indicated that Lehman did not close out derivatives with the specified counterparty (*i.e.*, Countrywide Financial), LBHI has made that representation after determining that Lehman did not have any derivatives positions with the counterparty at the time of the counterparty's default.  The parties have thus far agreed that the Lehman closeouts of positions with Bear Stearns High Grade Structured Credit Enhanced Leverage Fund, Bear Stearns High Grade Structured Credit Fund, IndyMac Bancorp, Northern Rock, and PreBuy Electric are prior Lehman closeouts that are responsive to Requests 1-38 through 1-44.  LBHI has identified the relevant custodians and search terms for the prior closeouts aside from PreBuy Electric and LBHI is currently trying to determine who the relevant custodians would be for PreBuy Electric.  JPMorgan reserves the right to seek information regarding additional Lehman closeouts and from additional custodians involved in these closeouts.

(h)     With respect to Requests 1-84 and 1-85, LBHI has represented that it has undertaken a good faith and reasonable search and was unable to find any past deposition transcripts responsive to these Requests.  However, LBHI will produce any future deposition transcripts responsive to this request to the extent that LBHI controls the confidentiality of the deposition transcript.  If LBHI does not control the confidentiality of the responsive transcript, LBHI will identify the transcript for JPMorgan.  LBHI will attempt in good faith to resolve confidentiality issues amongst the relevant parties and produce that transcript upon resolution of those issues.

(i)     With respect to Request 1-86, JPMorgan has agreed to not pursue this Request for the time being.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 5

(j)     With respect to Request 1-87, LBHI has expressed concerns regarding LBHI's ability to identify Documents responsive to this Request because the Documents LBHI produced to Citi included both derivatives-related Documents as well as Documents regarding Citi's collateral requests.  As previously stated, we do not believe that it would unduly burdensome to identify derivatives-related Documents from LBHI's own production, particularly given that such documents are likely to post-date LBHI's bankruptcy and many of the collateral request documents would pre-date LBHI's bankruptcy.  Documents relating to how Citi closed out its derivatives position at the same time, and in the same markets, as JPMorgan are potentially relevant to what should be considered "commercially reasonable."  LBHI has represented that it plans "to produce a large portion of the collected documents with limited review or no review at all," as set forth in its August 18, 2015 letter.  While we remain of the view that this is an inappropriate approach and reserve our rights with respect to this practice, you cannot engage in a process of producing nonresponsive documents and at the same time hold back responsive documents on the basis that it would be burdensome to separate out the nonresponsive documents from this discrete set.  We requested on our September 1, 2015 meet and confer that you produce the entirety of LBHI's production to Citi.  While this approach would require LBHI to produce some non-responsive documents, LBHI has already stated that it intends to produce a myriad of non-responsive documents in any event.  Please let us know what LBHI's position is.

Eighth, with respect to JPMorgan's Second Request for Production, LBHI will produce Documents responsive to the Requests as drafted in JPMorgan's Second Request for Production, notwithstanding LBHI's Responses and Objections, subject to the following modifications:

(a)     With respect to Requests 2-4 and 2-5, JPMorgan has agreed to not pursue these Requests for the time being.

(b)     With respect to Request 2-7, LBHI will produce all responsive LBDP policies, procedures or practices in place as of 2008.  JPMorgan reserves the right to seek additional Documents responsive to this Request at a later date.

Ninth, with respect to JPMorgan's Third Request for Production, Exhibit B identifies the manner in which LBHI will review Documents, including for which Requests LBHI will collect Documents, for which Requests LBHI will run searches for Documents, and what search terms and date ranges LBHI will use in its searches.  We understand that LBHI is currently running hit reports for JPMorgan's search term proposals and JPMorgan awaits your confirmation that LBHI will search for and review Documents in the manner identified in Exhibit B.  JPMorgan further writes to confirm that LBHI has agreed to produce Documents responsive to the Requests as drafted in JPMorgan's Third Request for Production, notwithstanding LBHI's Responses and Objections, subject to the modifications discussed the tenth section of this letter as well as the following:

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 6

(a)    With respect to Requests 3-1 and 3-2, LBHI will produce Documents responsive to these Requests which will include, but will not be limited to, Derivatives Questionnaires and the backup materials submitted with the Derivatives Questionnaires (collectively, the "DQs") and documents and communications between the LBHI and the counterparties explaining the materials submitted in Derivatives Questionnaires ("DQ Communications").  Among other things, this production will also include any documentation reflecting or explaining how the Big Banks calculated any mark-to-market values, transaction costs or other add-ons, and how the positions were aggregated or netted.  With respect to Request 3-2, as stated in our email dated August 6, 2015, JPMorgan is willing to hold off on requesting that LBHI run searches for Documents responsive to Request 3-2 based on LBHI's agreement that it will produce all DQ Communications as a collection without applying search terms.  JPMorgan reserves the right to ask that LBHI run searches over custodians' documents if the collection process does not sufficiently identify responsive Documents.

Moreover, with respect to the production of DQs, we ask that you promptly produce the DQs from all of the counterparties who did not object to the lifting of the Bar Date Order, since these documents are no longer subject to any confidentiality restrictions.  *See* Order Granting Motion to Allow Disclosure of the Derivatives Questionnaires (June 9, 2015).

You took the position at the hearing before Judge Chapman on your motion to lift the Bar Date Order that DQ *communications* are not governed by the confidentiality provisions of the Bar Date Order.  Therefore, there is nothing preventing you from producing these documents and we would expect to receive these absent the negotiation of any other confidentiality restrictions.[2]  At this time, we are only seeking the DQ Communications associated with the top 13 counterparties identified in your letter dated June 12, 2015.  Please produce these promptly.

(b)    With respect to Request 3-4, JPMorgan writes to confirm your representation made during our meet and confer on May 22, 2015, that the compensation of each of Lehman's Derivatives Professionals is not impacted by the amount of money that Lehman may recover from JPMorgan in this proceeding, the amount of any reduction in JPMorgan's derivatives-related claims, or otherwise in relation to the JPMorgan-Lehman derivatives positions.

---

[2] We reiterate once again that JPMorgan reserves the right to seek additional DQs and DQ Communications given LBHI's position that it is reserving the right to rely on additional counterparties' DQs and related information.  We therefore reserve the right to seek additional DQs and DQ Communications beyond any additional ones that you may decide to produce at a later time, for example, in connection with expert reports.  We also reserve the right to seek additional DQs if the confidentiality status of the DQs is affected by a further Court Order.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 7

       (c)     With respect to Request 3-10, LBHI will produce responsive Documents collected within LBHI's repositories during the requested time period.

       (d)     With respect to Request 3-11, LBHI will produce all responsive Documents prior to LBHI's bankruptcy on September 15, 2008. For Documents on or after September 15, 2008, LBHI will produce all responsive Documents that LBHI used in formulating its objection. However, LBHI has taken the position that it objects to, and intends to assert privilege with respect to, any valuation of the JPMorgan-Lehman derivatives transactions on or after September 15, 2008 that may have been undertaken but were not ultimately relied upon in formulating LBHI's objection. We note that a similar issue recently arose in *Moore Macro Fund, LP*, *et al.* v. *Lehman Bros. Holding, Inc.*, in which the plaintiffs filed a motion to compel the production of LBHI's post-bankruptcy valuations of the derivatives positions, which LBHI had also claimed were privileged, and the Court ordered LBHI to produce internal valuations prior to the initiation of litigation. *See* Oral Argument on Moore's Motion to Compel, 14-AP-02021 (SCC) (July 22, 2015). In light of this decision, we reiterate our request that LBHI produce all Documents reflecting any valuation of the JPMorgan-Lehman derivatives transactions on or after September 15, 2008. Please let us know whether LBHI continues to assert privilege with respect to these Documents.

       (e)     With respect to Request 3-12, LBHI will produce all Documents concerning mark-to-market values for September 15 through September 19, 2008 that Lehman collected or calculated for the JPMorgan/Lehman Derivatives Transactions. This production will include all Documents explaining, discussing or establishing how the mark-to-market values were collected or calculated.

       (f)     With respect to Requests 3-21 through 3-23, LBHI continues to object for the same reasons set forth in Section 7(j) of this letter: *i.e.*, that it is unduly burdensome and a portion of the material is irrelevant to our case. You have also claimed that these Requests are premature. We have expressed our position that there should not be a significant burden in identifying the derivatives-related material and that such material is critically important, given that plaintiffs' complaint focuses on whether JPMorgan's closeout was commercially reasonable. We have also expressed a willingness to compromise and seek production of Documents dated September 15, 2008 or later, as these are the Documents more likely to be responsive to the derivatives case as opposed to the collateral case. Consistent with our position set forth in Section 7(j) above, we request that you produce all of these materials given your position regarding producing nonresponsive Documents. Please confirm whether you are still refusing to produce anything in response to these Requests.

       <u>Tenth</u>, the following are Document Requests in which you have indicated that the scope of your production may be impacted by your interpretation of Federal Rule of Evidence 408. In our letters of May 28, 2015 and June 12, 2015, we have separately addressed the reasons why we disagree with your position and interpretation of Federal Rule of Evidence 408. As stated in our letter dated June 12, 2015, it is unclear how you are defining "settlement

Wachtell, Lipton, Rosen & Katz

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 8

negotiations" for which you refuse to produce information.  Accordingly, we write to confirm the
universe of requests that you have indicated are implicated by your objection based on Federal
Rule of Evidence 408.  As we stated in our June 12, 2015 letter, we will await your production
on these requests and the associated privilege log and reserve all rights.

(a)      Requests:  1-4, 1-11,[3] 1-19 through 1-24, 1-27 through 1-28, 1-30 through
1-33, 1-67, and 1-71.

For the avoidance of doubt, we note that these Requests for which you have
objected on the grounds of Federal Rule of Evidence 408 seek Documents in addition to the DQs
and DQ Communications, which consistent with the seventh section of this letter, above, we
expect that you will produce in full.

(b)      With respect to Requests 1-67 and 1-71, LBHI will produce all Documents
responsive to this Request, though you have raised a confidentiality concern regarding the
derivatives settlement framework, which you claim that LBHI will need to resolve before it can
produce documents.  As stated above, you have taken the position that DQ Communications are
not implicated by the Bar Date Order.  These Requests do not ask for the DQs themselves, so we
do not understand the basis for your confidentiality concern.  We thus ask that you further
explain your position with respect to the confidentiality concerns in this Request.

## JPMorgan's Production in Response to LBHI's Requests for Production

Eleventh, we write to confirm how JPMorgan will produce Documents in
response to LBHI's Requests for Production.  With respect to the manner in which JPMorgan
will conduct its search for responsive Documents, as identified in Exhibit C, for some Requests
JPMorgan will undertake a Document collection process, and for other Requests JPMorgan will
search custodians' emails.  With respect to JPMorgan's searches of custodian emails, JPMorgan
will review all emails and Bloomberg chats from September 11, 2008 through September 19,
2008, without using search terms or technology-assisted review, for a select group of JPMorgan
derivatives traders identified in Exhibit C.  For all other date ranges and custodians, JPMorgan
will use technology-assisted review where an email search is appropriate; as we have previously
explained, any technology-assisted review is supplemented by human reviewers.

---

[3] We note with respect to this Request that your responses and objections did not specify any
objection on the basis that the Request sought information protected from discovery under your
interpretation of Federal Rule of Evidence 408.  We have previously requested that you amend
your responses and objections if you would like to raise an objection on the basis of Federal Rule
of Evidence 408, which you have not done.  We therefore believe it is particularly inappropriate
to withhold any Documents or redact any portion of any Document responsive to this Request on
the ground that the material is protected under Federal Rule of Evidence 408.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 9

JPMorgan will not produce any document identified as identical to a document produced in the main adversary case, *Lehman Bros. Holdings Inc.* v. *JPMorgan Chase Bank, N.A.*, No. 10-03266 (Bankr. S.D.N.Y.); No. 11-6760 (S.D.N.Y.).

Twelfth, with respect to LBHI's First Request for Production, JPMorgan will conduct a good faith and reasonable search as set forth in Exhibit C and produce non-privileged responsive Documents, to the extent they exist, as stated in JPMorgan's Responses and Objections, to the extent they are identified by that search, and subject to the following:

(a)     With respect to Request 1-1, JPMorgan will produce Documents forming the basis of the specified claims, but JPMorgan will not undertake any special efforts to organize this production in any manner beyond the way in which these Documents are kept in the ordinary course at JPMorgan.

(b)     With respect to Request 1-3, JPMorgan will produce responsive Documents to the extent and in the manner that such information was maintained in JPMorgan's centralized systems.  JPMorgan will not compile, organize or summarize any of this information beyond how the data was stored in JPMorgan's centralized systems.

(c)     With respect to Request 1-10, JPMorgan will produce Documents reflecting replacement trades JPMorgan entered into as part of calculating a closeout value for Lehman Terminated Transactions.

(d)     With respect to Request 1-17, JPMorgan will produce firm-wide policies and procedures for hedging or managing the risk of derivatives transactions governed by the 2002 ISDA Master Agreement or the 1992 Multi-Currency-Cross Border ISDA Master Agreement in effect as of September 2008.

(e)     With respect to Request 1-18, JPMorgan will produce Documents concerning actions JPMorgan took to hedge its derivatives-related exposure to Lehman.

(f)     With respect to Request 1-19, JPMorgan will produce intra-day or closing derivatives-related risk reports and Documents concerning how JPMorgan managed its derivatives-related risk with respect to Lehman.

(g)     With respect to Requests 1-21 through 1-24, LBHI has agreed not to pursue these Requests at this time.

(h)     With respect to Request 1-25, JPMorgan will produce Documents from September 15, 2008 through September 19, 2008 concerning any valuation, market pricing or trading of any reference obligation, security, or currency underlying the credit default swaps between JPMorgan and Lehman.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 10

(i)   With respect to Request 1-26, JPMorgan will produce firm-wide policies
and procedures for calculating Early Termination Amounts or Close-out Amounts that were in
effect as of September 2008.

(j)   With respect to Request 1-27, JPMorgan will produce firm-wide policies
and procedures instructing traders with regard to the operational termination of trades governed
by the 2002 ISDA Master Agreement or the 1992 Multi-Currency-Cross Border ISDA Master
Agreement.

(k)   With respect to Request 1-28, JPMorgan will produce firm-wide policies
and procedures in effect as of September 2008, regarding how to value trading books for
transactions governed by the 2002 ISDA Master Agreement or the 1992 Multi-Currency-Cross
Border ISDA Master Agreement.

(l)   With respect to Request 1-30, JPMorgan will produce Documents
concerning the gains or losses JPMorgan incurred in connection with the Early Termination of
the Lehman Terminated Transactions.

(m)   With respect to Request 1-32, JPMorgan will produce Documents
identifying the credit default swap, interest rate swap and FX trades JPMorgan entered into with
any party from September 15, 2008 through September 19, 2008.

(n)   With respect to Request 1-33, JPMorgan will produce the following
information received from derivatives counterparties from September 12, 2008 through
September 19, 2008:  (a) derivatives trades; (b) dealer quotations; (c) mid-market prices; (d)
screenshots; (e) bid/offer adjustments; (f) liquidity adjustments; and (g) responses to OWICs or
BWICs.  With respect to credit default swaps, this Request will be limited to any trade or
transaction where the Reference Entity (or Reference Obligation) is the same or similar to any
entities defined as a Reference entity (or Reference Obligation) under any Master Agreement
between JPMorgan and Lehman.

(o)   With respect to Request 1-34, JPMorgan will produce price quotes
JPMorgan received from third-party vendors with respect to the Lehman Terminated
Transactions from September 12, 2008 through September 19, 2008.

Thirteenth, with respect to LBHI's Second Request for Production, JPMorgan will
conduct a good faith and reasonable search as set forth in Exhibit C and produce non-privileged
responsive Documents, to the extent they exist, consistent with JPMorgan's Responses and
Objections, to the extent they are identified by that search, and subject to the following:

(a)   With respect to Requests 2-3 through 2-5, JPMorgan maintains its
objection as articulated in its Responses and Objections on the grounds that these Requests seek

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 11

documents that are privileged, including but not limited to the Bank Examiner privilege and
confidential supervisory information privilege.

(b)    With respect to Request 2-7, JPMorgan will produce Documents
identifying any stress-testing, risk modeling, contingency planning reports performed by
JPMorgan regarding the impact of Lehman filing for bankruptcy on the derivatives contracts
between JPMorgan and Lehman.

(c)    With respect to Request 2-8, JPMorgan will produce profit and loss
reports related to the entry or exit of a derivatives trade with Lehman.

(d)    With respect to Request 2-9, JPMorgan will produce documents
summarizing the number of derivatives trades JPMorgan entered into daily from January 1, 2008
through December 31, 2008 to the extent such information is available in JPMorgan's centralized
systems.

(e)    With respect to Request 2-10, JPMorgan will produce information
regarding the Trade Parameters, as defined in LBHI's Second Request for Production, of
derivatives trades that JPMorgan entered into between August 2008 and October 2008, to the
extent that such information is centrally maintained in a JPMorgan database.

(f)    With respect to Request 2-11, JPMorgan maintains its objection as
articulated in its Responses and Objections due to the significant burden and limited relevance of
this Request.

(g)    With respect to Request 2-12, JPMorgan will produce all transcripts of
depositions of any employee or former employee of JPMorgan concerning a derivatives closeout
following a counterparty default or Early Termination given in connection with any proceeding
pertaining to derivatives closeout calculations at any time since January 2006.

(h)    With respect to Request 2-13, LBHI has agreed not to pursue this Request
and instead, JPMorgan and LBHI will agree that JPMorgan can satisfy its obligations in
responding to the subpoena in *Lehman Brothers Holdings Inc., et al.* v. *Citibank, N.A., et al.,* No.
12-01044 (JPM) (Bankr. S.D.N.Y.) by producing documents in the present case between LBHI
and JPMorgan.

Fourteenth, with respect to LBHI's Third Request for Production, the parties have
yet to negotiate the applicable date ranges, which Requests are susceptible to email review and
which Requests require a collection process, but JPMorgan writes to confirm its understanding of
the substance of what it plans to produce, subject to an agreement on time periods.  Pursuant to a
good faith and reasonable search to be agreed upon by the parties, JPMorgan will produce non-
privileged responsive Documents, to the extent they exist, consistent with JPMorgan's
Responses and Objections, subject to the following:

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 12

       (a)      With respect to Request 3-4, JPMorgan will produce firm-wide policies and procedures of CPG concerning the closeout of trades with a defaulted derivatives counterparty that were in effect as of September 2008.

       (b)      With respect to Request 3-5, JPMorgan will produce Documents concerning the actual or contemplated changes, amendments or exceptions to firm-wide policies and procedures of CPG concerning the closeout of trades with a defaulted derivatives counterparty.

       (c)      With respect to Request 3-6, JPMorgan is willing to produce responsive Documents for a select group of prior JPMorgan closeouts, the scope of which JPMorgan is willing to negotiate.

       (d)      With respect to Request 3-10, JPMorgan is willing to produce Documents that contain an explanation of any alleged difference or discrepancy between the amounts submitted by JPMorgan personnel to CPG in connection with the closeout of a Lehman Terminated Transaction and the amounts submitted by JPMorgan in its proofs of claim for the Lehman Terminated Transactions.

       (e)      With respect to Request 3-12, JPMorgan is willing to produce Documents concerning risk modeling or contingency planning that JPMorgan performed regarding its derivatives-related exposure to Lehman or Lehman to JPMorgan, including the economic effect of a default under any of JPMorgan's derivatives positions with Lehman.

       (f)      With respect to Request 3-16, JPMorgan is willing to produce Documents concerning quality controls, cross checking or revisions of values or amounts submitted by JPMorgan traders to CPG with respect to any of the Lehman Terminated Transactions.

       (g)      With respect to Request 3-17, JPMorgan is willing to produce Documents concerning the existence or potential availability of Lehman collateral for offset against JPMorgan's derivatives-related exposure to Lehman, including but not limited to any communications informing JPMorgan personnel of the collateral for this purpose.

       (h)      With respect to Request 3-18, JPMorgan will produce Documents concerning the methodology in which any JPMorgan transactions or hedges entered into in anticipation of or in response to the bankruptcy, default, or insolvency of any Lehman entity were included in the closeout amounts of the Lehman Terminated Transactions.

       (i)      With respect to Request 3-25, JPMorgan maintains its objection as articulated in its Responses and Objections on the grounds that this Request seeks documents that are privileged, including but not limited to the Bank Examiner privilege.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 13

       (j)     With respect to Requests 3-26 through 3-30, JPMorgan is standing on its objection as articulated in its Responses and Objections on the grounds that this Request seeks Documents irrelevant to the circumstances at issue in this case.

       Fifteenth, with respect to LBHI's Fourth Request for Production, JPMorgan will conduct a good faith and reasonable search as set forth in Exhibit C, and produce non-privileged responsive Documents, to the extent they exist, consistent with JPMorgan's Responses and Objections, subject to the following:

       (a)     With respect to Request 4-1, JPMorgan will produce Documents reflecting firm-wide commentary on derivatives market conditions authored by JPMorgan from September 1, 2008 to September 30, 2008.

       (b)     With respect to Requests 4-4 and 4-5, JPMorgan will produce bid and offer quotations for derivatives trades provided or received by JPMorgan from August 2008 through October 2008, to the extent such information is contained in centralized files, and will otherwise produce all such information from September 11, 2008 through September 19, 2008 consistent with JPMorgan's review of certain custodians' emails without the use of search terms.

       (c)     With respect to Request 4-6, JPMorgan will produce Documents reflecting requests by JPMorgan to enter into derivatives trades from August 2008 through October 2008, to the extent such information is contained in centralized files, and will otherwise produce all such information from September 11, 2008 through September 19, 2008 consistent with JPMorgan's review of certain custodians' emails without the use of search terms.

       (d)     With respect to Request 4-7, JPMorgan will produce firm-wide policies in effect as of September 2008 for providing or receiving prices and quotations for derivatives trades to or from third parties.

       (e)     With respect to Request 4-8, JPMorgan will produce firm-wide policies in effect as of September 2008 for marking trades.

       (f)     With respect to Request 4-9, JPMorgan will produce firm-wide policies in effect as of September 2008 for verifying prices used to value derivatives trades.

       (g)     With respect to Requests 4-10 and 4-11, JPMorgan maintains its objection as articulated in its Responses and Objections on the grounds that these Requests seek Documents that are subject to claims of privilege, including but not limited to the Bank Examiner privilege and confidential supervisory information privilege.

       (h)     With respect to Request 4-12, JPMorgan will produce firm-wide policies in effect as of September 2008 for establishing reserves or valuation adjustments related to derivatives trades.

WACHTELL, LIPTON, ROSEN & KATZ

Ben Odell, Esq.
Peter Behmke, Esq.
September 10, 2015
Page 14

(i)     With respect to Requests 4-14 and 4-15, JPMorgan maintains its objection as articulated in its Responses and Objections on the grounds that these Requests seek Documents that are privileged, and the Requests are overly broad and unduly burdensome.

(j)     With respect to Request 4-16, JPMorgan will produce firm-wide policies in effect as of September 2008 regarding the ability of JPMorgan's derivatives desks or business units to enter into derivatives trades with other JPMorgan desks or business units.

(k)     With respect to Requests 4-17 and 4-18, JPMorgan maintains its objection as articulated in its Responses and Objections on the grounds that these Requests seek Documents that are privileged and the Requests are overly broad and unduly burdensome.

(l)     With respect to Request 4-19, JPMorgan will produce Documents reflecting the systems and databases that traders used to capture derivatives trades, mark derivatives positions or assess derivatives-related risk.

(m)     With respect to Request 4-20, JPMorgan maintains its objection as articulated in its Responses and Objections on the grounds that this Request seeks Documents that are privileged and that the Request is overly broad and unduly burdensome.

Please let us know as soon as possible if any of the above does not accurately describe your position.  JPMorgan reserves all rights, including in the event that we determine that the searches conducted do not sufficiently capture the Documents JPMorgan has requested or if any Requests or searches prove unduly burdensome for JPMorgan.

Sincerely,

Courtney L. Heavey

# EXHIBIT D

## Ben Odell

| | |
|---|---|
| **From:** | Ben Odell |
| **Sent:** | Thursday, April 10, 2014 10:59 PM |
| **To:** | 'Halstead, Ellen'; 'jb.heaton@bartlit-beck.com'; 'cboccuzzi@cgsh.com'; 'aanon@curtis.com' |
| **Cc:** | Diane Hutnyan; 'Behmke, Peter J.'; 'Wright, James'; 'Martin, D. Ross'; 'Claudia Hammerman'; 'sshimshak@paulweiss.com'; 'George W Kroup'; 'William Clareman'; 'Dorchak, Joshua'; 'Daniel Laguardia'; 'schoe@cgsh.com'; 'MHanchet@mayerbrown.com'; 'CHoupt@mayerbrown.com'; 'igoldstein@proskauer.com'; 'bmorag@cgsh.com'; 'RZiegler@mayerbrown.com'; 'Melissa Godwin'; 'Daniel Lewis'; 'btunis@cgsh.com'; 'ebalter@cgsh.com'; 'Ellenberg, Mark'; 'Hawkins, Howard'; 'Ragep, Anwar'; 'sspringer@proskauer.com'; 'memcdonald@cgsh.com'; 'CWalsh@mayerbrown.com' |
| **Subject:** | RE: Lehman Brothers Holdings Inc. et al. v. Citibank N.A. et al. |

Ellen,

The Communications referred to in your email are in Lehman's possession, and are the subject of a document request from Citi to Lehman.  The Banks had the right to be notified of the impending production of the Communications under the Settlement Negotiations Agreement, and Lehman provided such notification.  However, the Banks do not have a right, under that Agreement or otherwise, to dictate the terms of the production.  The fact that the Banks made the Communications with Lehman without negotiating for any further protection at the time illustrates that the Banks' supposed concern now is unfounded.  We have repeatedly made clear that Lehman has no recourse to withhold the Communications from Defendants unless the Banks seek judicial relief to object to their production.  The Banks have not done so.  As the Court ordered that the 2013 Protective Order currently governs the production of documents in this matter, absent judicial relief or a mutually acceptable agreement between the Parties, the production must be made pursuant to that order.

**Ben Odell**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3501 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
benodell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Halstead, Ellen [mailto:Ellen.Halstead@cwt.com]
**Sent:** Thursday, April 10, 2014 2:38 PM
**To:** Ben Odell; jb.heaton@bartlit-beck.com; 'cboccuzzi@cgsh.com'; 'aanon@curtis.com'
**Cc:** Diane Hutnyan; Behmke, Peter J.; 'Wright, James'; 'Martin, D. Ross'; 'Claudia Hammerman'; sshimshak@paulweiss.com; 'George W Kroup'; 'William Clareman'; Dorchak, Joshua; 'Daniel Laguardia'; 'schoe@cgsh.com'; 'MHanchet@mayerbrown.com'; 'CHoupt@mayerbrown.com'; 'igoldstein@proskauer.com'; 'bmorag@cgsh.com'; 'RZiegler@mayerbrown.com'; 'Melissa Godwin'; 'Daniel Lewis'; 'btunis@cgsh.com'; 'ebalter@cgsh.com'; Ellenberg, Mark; Hawkins, Howard; Ragep, Anwar; 'sspringer@proskauer.com';

'memcdonald@cgsh.com'; 'CWalsh@mayerbrown.com'
**Subject:** RE: Lehman Brothers Holdings Inc. et al. v. Citibank N.A. et al.

J.B., Diane,
I am writing on behalf of the Banks to respond to J.B.'s request in his April 7, 2014 letter that Lehman produce the "'Group C' discovery Citi has requested, comprising the Lehman estate's communications with the Banks following the bankruptcy" (collectively, the "Communications").  Please note that I am including attorneys for Curtis Mallet on this email as some of the Banks have been corresponding with Curtis Mallet regarding the Communications.

As J.B. proposed in his letter, the Banks have no objection to the production of the Communications to Citi provided that the Communications be designated and treated as "Highly Confidential" under the terms of the 2012 Protective Order pending resolution of the proposed side agreement, which the Banks hope the parties will be able to formalize shortly. The Banks would also expect that if the Communications are produced to Bracebridge that Bracebridge would also agree in writing to treat the Communications as "Highly Confidential" under the terms of the same terms and conditions.

Additionally, as you both may know, certain Banks have objected to the production of certain of the Communications on various grounds and have requested that Lehman not produce those Communications to Citi and Bracebridge. This email is not intended to waive or override any of those specific objections made by those Banks.  In particular, the Banks note that to the extent Lehman plans to produce documents beyond the scope of those documents we understand were requested by Citi – including, for example, any documents concerning the Banks' settlement positions, including any offers of compromise or negotiations about the terms and conditions of settlement agreements – that such documents were not requested by Citi, and thus there is no basis for Lehman to disclose them.  Accordingly, such documents may not be produced

The Banks expressly reserve any and all rights and objections to the subpoenas and the 2013 Protective Order.


Ellen M. Halstead
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Tel:  +1 212.504.6732
Cell: +1 917.526.2478
Fax: +1 212.504.6666
ellen.halstead@cwt.com
www.cadwalader.com

---

**From:** Ben Odell [mailto:benodell@quinnemanuel.com]
**Sent:** Wednesday, April 09, 2014 4:09 PM
**To:** jb.heaton@bartlit-beck.com; 'cboccuzzi@cgsh.com'; Halstead, Ellen
**Cc:** Diane Hutnyan; Behmke, Peter J.; 'Wright, James'; 'Martin, D. Ross'; 'Claudia Hammerman'; sshimshak@paulweiss.com; 'George W Kroup'; 'William Clareman'; Dorchak, Joshua; 'Daniel Laguardia'; 'schoe@cgsh.com'; 'MHanchet@mayerbrown.com'; 'CHoupt@mayerbrown.com'; 'igoldstein@proskauer.com'; 'bmorag@cgsh.com'; 'RZiegler@mayerbrown.com'; 'Melissa Godwin'; 'Daniel Lewis'; 'btunis@cgsh.com'; 'ebalter@cgsh.com'; Ellenberg, Mark; Hawkins, Howard; Ragep, Anwar; 'sspringer@proskauer.com'; 'memcdonald@cgsh.com'; 'CWalsh@mayerbrown.com'
**Subject:** RE: Lehman Brothers Holdings Inc. et al. v. Citibank N.A. et al.

Counsel:

Please see the attached letter.


**Ben Odell**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213-443-3501 Direct
213-443-3000 Main Office Number
213-443-3100 Fax

benodell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** JB Heaton [mailto:jb.heaton@bartlit-beck.com]
**Sent:** Monday, April 07, 2014 12:31 PM
**To:** Diane Hutnyan; Halstead, Ellen
**Cc:** pbehmke@curtis.com; james.wright@ropesgray.com; ross.martin@ropesgray.com; chammerman@paulweiss.com; sshimshak@paulweiss.com; gkroup@paulweiss.com; wclareman@paulweiss.com; joshua.dorchak@bingham.com; daniel.laguardia@shearman.com; schoe@cgsh.com; MHanchet@mayerbrown.com; CHoupt@mayerbrown.com; Ellen.Halstead@cwt.com; igoldstein@proskauer.com; bmorag@cgsh.com; RZiegler@mayerbrown.com; melissa.godwin@shearman.com; cboccuzzi@cgsh.com; daniel.lewis@shearman.com; btunis@cgsh.com; ebalter@cgsh.com; Mark.Ellenberg@cwt.com; Howard.Hawkins@cwt.com; Anwar.Ragep@cwt.com; sspringer@proskauer.com; memcdonald@cgsh.com; CWalsh@mayerbrown.com; JB Heaton
**Subject:** Lehman Brothers Holdings Inc. et al. v. Citibank N.A. et al.


Please see the attached letter.

_____

J.B. Heaton
Bartlit Beck Herman Palenchar & Scott LLP
54 West Hubbard, Suite 300
Chicago, Illinois 60654
(312) 494-4425 (Office)
(312) 494-4440 (Fax)
www.bartlit-beck.com <http://www.bartlit-beck.com/>

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.


---------------------------------------------------------------------
IRS Circular 230 Legend: Any advice contained herein was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties. Unless otherwise specifically indicated above, you should assume that any statement in this email relating to any U.S. federal, state, or local tax matter was written in connection with the promotion or marketing by other parties of the transaction(s) or matter(s) addressed in this email. Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.



===================
NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way

from its use.

---------------------------------------------------------------------

# EXHIBIT E

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianehutnyan@quinnemanuel.com**

March 12, 2014

<u>VIA EMAIL</u>
Joshua Dorchak, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689

George W. Kroup, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

James A. Wright III, Esq.
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600

      Re:    *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
              Adv. Proc. No. 12-01044(JMP)

Counsel:

We write regarding the application of the protective order in the above-referenced proceeding to purportedly confidential bank information being produced by third parties in this action.

On October 15, 2012, a Confidentiality Stipulation and Protective Order ("2012 Protective Order") was entered in this action.  On December 20, 2013, an amended Confidentiality Stipulation and Protective Order ("2013 Protective Order") was executed by Plaintiffs and Defendants Citibank, N.A., Citigroup Global Markets Ltd., Citigroup Financial Products Inc.,

Page 2

Citigroup Energy Inc., Citi Canyon Ltd., Citi Swapco Inc., FYI Ltd., FFI Fund Ltd., and Olifant
Fund, Ltd. (collectively "Defendants"), which was entered by the Court on March 7, 2014.

On February 20, Plaintiffs and third parties Bank of America N.A,  Barclays PLC, BNP Paribas
SA, Citadel LLC, Deutsche Bank AG, Goldman Sachs Group Inc., Merrill Lynch & Co. Inc.,
Morgan Stanley & Co. LLC, Royal Bank of Scotland PLC, Societe Generale SA, UBS AG,
(collectively the "Banks") negotiated an arrangement regarding the special treatment of certain
documents to be produced by the Banks in this litigation.  In essence, section 4 of the 2012
Protective Order would apply to any documents produced as "Highly Confidential" by the Banks
and to any documents that contain trade or quotation information from the Banks that are
produced by any other third party as "Highly Confidential" (collectively "Claimed HC Discovery
Material"); and (2) the Claimed HC Discovery Material could be accessed by up to thirty (30)
members of the Lehman Brothers Holdings Inc. Estate's Derivatives Front Office Valuation and
Middle Office/Operations teams.  The Banks, however, conditioned their final agreement to this
arrangement on Defendants' approval.

Defendants refused to agree, proposing two alternate versions of the agreement – one in which
access to the Lehman employees was eliminated, and a second in which sixty Citi and
Bracebridge employees would also be granted access to the Claimed HC Discovery Material.

Plaintiffs disagree with a number of the assertions made by Citi in its rejection of Plaintiffs'
tentative agreement with the Banks.  During the negotiations over the revised protective order,
Defendants took the position that the 2012 Protective Order did not allow for Highly
Confidential material to be shared with current employees other than in-house counsel or
employees expected to be deponents or trial witnesses, and Defendants expressed a preference
for retaining this "status quo."  Based on Citi's representations at the time, we understood that
Defendants did not have the same need to consult about Highly Confidential documents with
internally-employed individuals as did Plaintiffs, because both Citi and Bracebridge had instead
retained outside consultants for that purpose.  Contrary to Defendants' current posturing, the
entire negotiation over this provision of the new protective order was in fact centered on the
employees in Lehman's Derivatives Front-Office Valuation and Middle Officer/Operations team,
not on employees from Citi and Bracebridge.  The limitation to thirty of these individuals in the
2013 Protective Order was made specifically to encompass this particular group of Lehman
employees.  Defendants have never to date expressed a need to share documents with employees
engaged in internal consulting, let alone that they have sixty such employees.  As Defendants use
outside consultants for this purpose, who are already covered by the protective orders, any notion
that the agreement between Plaintiffs and the Banks is somehow unfair to Defendants is false.
We believe Defendant's contention that their internal employees must have equal access to the
Banks' Highly Confidential documents is simply an effort to hinder and delay third  party
productions.

Meanwhile, the Banks' position that they require special confidentiality protections  before they
will produce pursuant to the subpoenas is quite weak, given the fact that the Banks' productions
of materials are limited to the September 2008 timeframe, and are thus more than five years old.

Page 3

We note that the Banks voluntarily provided similar information in their Derivatives
Questionnaires ("DQs") to the Lehman Estates' valuation employees, which contained
substantial amounts of information concerning the Banks' derivatives portfolios facing Lehman
as of September 2008.  At that time, the information was arguably more sensitive, yet the Banks
did not try to impose any limitations on the ability of these employees to view the DQs and
supporting information, and Plaintiffs do not see why their access should be different with
respect to discovery material in this case.

Further, the Banks' failure to take even the smallest step toward obtaining special protections for
the Claimed HC Discovery Material illustrates that posturing, not a legitimate need for additional
confidentiality, motivates the Banks' position.  The Banks had every opportunity to object to the
2013 Protective Order before it was entered, but none of them did so.  Then, on February 13,
2014, Plaintiffs informed the Banks that additional correspondence regarding the Banks' claims
and DQs would be produced to Citi in the litigation, and that the Banks would have to seek
judicial intervention if they wished to impose confidentiality restrictions on these documents.
Again, not one bank bothered.

Given these circumstances, Plaintiffs believe the 2013 Protective Order is more than sufficient to
adequately protect the Banks' interests in the confidentiality of their information.  That said,
Plaintiffs also remain willing to enter into the agreement negotiated with the Banks on February
20 or the alternate version of the agreement proposed by Citi in which thirty employees from
each party would have access to the Claimed HC Discovery Material (both of which are enclosed
herein).  However, if the parties cannot reach agreement by March 20, 2014 on one of these three
options, or on some other alternative arrangement that ensures the necessary Lehman employees
have access to the Claimed HC Discovery Material, Plaintiffs will seek the Court's assistance in
resolving the matter.

Kind regards,

Diane C. Hutnyan

cc:     Emily Balter, Esq.; Peter Behmke, Esq.; Carmen Boccuzzi, Esq.; Shawn Chen, Esq.;
Shiwon Choe, Esq.; Mark Ellenberg, Esq.; Melissa Godwin, Esq.; Irena Goldstein, Esq.; Ellen
Halstead, Esq.; Mark Hanchet, Esq.; Howard Hawkins, Esq.; Christopher Houpt, Esq.; Daniel
Laguardia, Esq.; Daniel Lewis, Esq.; Mark McDonald, Esq.; Derek Mize, Esq.; Boaz Morag,
Esq.; Anwar Ragep, Esq.; Andrew Rossman, Esq.; Samantha Springer, Esq.; Brent Tunis, Esq.;
Christine Walsh, Esq,; Richard Ziegler, Esq.