WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- x
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (SCC)
                                           :
                            Debtors.       :    (Jointly Administered)
-------------------------------------------------------------- x
```

## <u>OMNIBUS REPLY TO RESPONSES TO OMNIBUS OBJECTIONS TO CLAIMS</u>

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), as Plan Administrator under the

*Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its*

*Affiliated Debtors*, respectfully represents as follows:

1.    The Plan Administrator seeks to enforce the clear, contractual

subordination provisions of the guarantee underlying portions of 111 outstanding proofs of claim

relying on such guarantees.  Any obligation of LBHI under the respective guarantee ranks junior

to all subordinated liabilities of LBHI.  No basis exists to deny the relief requested.

### <u>Procedural History</u>

2.    To ensure the proper priority for distributions among creditors, LBHI filed

the following to reclassify to the level of preferred equity approximately 1,600 claims asserting

guarantees of obligations of Lehman Brothers UK Capital Funding IV L.P. ("UK IV") or

Lehman Brothers UK Capital Funding V L.P. ("UK V"):

    a.    *Debtors' Two Hundred Thirteenth Omnibus Objection to Claims*, dated September 16, 2011 [ECF No. 20102];

    b.    *Debtors' Two Hundred Fourteenth Omnibus Objection to Claims*, dated September 16, 2011 [ECF No. 20103];

    c.    *Debtors' Two Hundred Fifteenth Omnibus Objection to Claims*, dated September 16, 2011 [ECF No. 20104]; and

    d.    *Debtors' Two Hundred Sixteenth Omnibus Objection to Claims*, dated September 16, 2011 [ECF No. 20105].

In the objections, the Debtors also disputed that LBHI had any liability for the claims.

3.    The Court conducted a hearing and entered orders granting the objections to the extent they were uncontested for approximately 1,441 claims. *See* ECF. Nos. 22934 (471 claims on 213th Objection); 22881 (442 claims on 214th Objection); 23047 (447 claims on 215th Objection); and 22938 (81 claims on 216th Objection).

4.    A number of creditors, many *pro se*, filed or served various responses (the "Responses"). *Only a minority of the Responses disputed that the claims should be subordinated to other claims against LBHI.* The vast majority of Responses objected *only to the disallowance*, not to the reclassification, of claims.

5.    The Debtors filed a reply to each of the Responses. *See Omnibus Reply to Responses to Debtors' Two Hundred Thirteenth Omnibus Objection to Claims*, dated April 21, 2012, [ECF No. 27540]; *Omnibus Reply to Responses to Debtors' Two Hundred Fourteenth Omnibus Objection to Claims*, dated April 21, 2012, [ECF No. 27541]; *Omnibus Reply to Responses to Debtors' Two Hundred Fifteenth Omnibus Objection to Claims*, dated April 21, 2012, [ECF No. 27542]; *Omnibus Reply to Responses to Debtors' Two Hundred Sixteenth Omnibus Objection to Claims*, dated April 21, 2012, [ECF No. 27543] (collectively, the

"Replies").  In their Replies, the Debtors withdrew without prejudice their objection to liability

for the claims, thereby resolving in whole the vast majority of the Responses.  *See* Replies ¶ 2.

6.      On April 26, 2012, the Court conducted a hearing to consider

subordination of all claims then subject to the objections and still outstanding, other than ten

claims for which the Debtors had granted an adjournment (as a courtesy for three creditors with

scheduling conflicts).  Only nineteen creditors appeared either in person or telephonically at the

hearing.  The Court heard arguments from each creditor that appeared.  Apr. 26, 2012 Hr'g Tr.

7.      No creditor made any substantive argument at the hearing that had not

been set forth in a Response and addressed in the Debtors' Replies.  Instead, one creditor's

representative conceded the subordinated nature of LBHI's guarantee but, for the first time at the

hearing, raised the specter that a "potential fact dispute" might exist and asked for a delay for

"limited discovery" as to whether there was any other, non-subordinated guarantee in connection

with the claims.  *Id.* at 39:10-40:1.  Notwithstanding representations on the record that "Lehman

is aware of no fact or circumstance or argument in law that would prevent it from prosecuting its

objection," and that "Lehman is not aware of any other guarantee, which would cover Lehman

Brothers UK Capital Funding [IV] LP's obligations or Lehman Brothers UK Capital Funding

[V] LP's obligations," *id.* at 40:5-13, three other creditors' representatives seized the opportunity

to join in requesting an adjournment.  *Id.* at 44:11-24, 46:5-6, 50:5.  Similarly, one representative

argued that the Debtors should produce executed copies of the subordinated guarantee, as

opposed to the forms of guarantee filed with the Objections.  *Id.* at 42:18-43:5.  Two

representatives separately disputed the level of subordination that the Debtors sought, one

arguing it should "be below Class 10(c) [subordinated claims] and above Class 11 [section

510(b) subordinated claims]," *id.* at 44:6, and another arguing it should be "after the main

creditors but before the equity interests" (i.e. below Class 11 and above Class 12 equity interests). *Id.* at 49:12-18. As the Court observed, given the projected partial recoveries to general unsecured creditors, there is no practical difference among subordinated classes or between subordinated classes and equity interests. *Id.* at 49:19-20.

8.      The Court adjourned the hearing so that representatives of the three creditors for whom the hearing had been adjourned could be heard, *id.* at 65:19-22, and "targeted discovery of an informal nature with regard to the existence of guarantees that may be applicable to these claims" could take place "to the extent that any party had a desire" before the Court ruled on the Objections. *Id.* at 66:12-16.

9.      Following the hearing, by emails on July 11, 2012 and July 17, 2012, each party that appeared at the hearing was provided a copy of the relevant subordinated guarantee agreement executed by LBHI. The executed agreements were materially identical to the copies filed with the objections. Copies of the executed agreements are attached hereto as Exhibits B and C. The emails further contained confirmation that:

> [t]he Plan Administrator has reviewed the Subordinated Guarantees as well as all other guarantees known by the Plan Administrator to have been issued by LBHI in other contexts. Based upon this review, the Plan Administrator believes the Subordinated Guarantees are the only guarantees issued by LBHI that relate to Lehman Brothers UK Capital Funding IV LP, Lehman Brothers UK Capital Funding V LP, or the securities issued by such entities. The Plan Administrator is not aware of any other documents that would attribute liability to LBHI on account of such securities and has no reason to believe that such documents exist.

Finally, to resolve the dispute as to the relative priority of claims subject to the objections relative to equity interests and other claims against LBHI, the emails included proposed language for an amended order:

> ORDERED that the Subordinated Guarantee Claims listed on Exhibit A annexed hereto (the "Reclassified Claims") shall not be classified under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan") in LBHI Class 1, LBHI Class 2, LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 6A, LBHI Class 6B, LBHI Class 7, LBHI Class 8, LBHI Class 9A, LBHI Class 9B, LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C of the Plan (collectively, "LBHI Classes 1-10C"), or as an Administrative Expense Claim or Priority Tax Claim against LBHI, or as a Claim against or Equity Interest in any Debtor other than LBHI; and it is further

ORDERED that no Distributions shall be made on account of the Reclassified Claims unless and until all holders of Allowed Claims (as such term is defined in the Plan) in LBHI Classes 1-10C are satisfied in full in accordance with the Plan; and it is further

ORDERED that the Reclassified Claims shall be deemed to be classified in either LBHI Class 11 or LBHI Class 12 and that in the event that all holders of Allowed Claims in LBHI Classes 1-10C are satisfied in full in accordance with the Plan, the Court shall determine whether the Reclassified Claims shall be classified in LBHI Class 11 or LBHI Class 12; and it is further

ORDERED that the respective rights of all affected parties in interest, including each of the Debtors, the Plan Administrator, and each Respondent, to argue or dispute the amount of or the relative priority of the Reclassified Claims between and among the Claims in LBHI Class 11 and the Equity Interests in LBHI Class 12 shall be fully preserved….

10.     As a result of the foregoing, creditors consented to entry of supplemental orders granting the objections with respect to 34 claims for which Responses had been filed.  *See* ECF. Nos. 29603, 30374, 30843 (11 claims on 213th Objection); 29556, 30377, 30844 (10 claims on 214th Objection); 29542 (8 claims on 215th Objection); and 29599, 30378 51370 (5 claims on 216th Objection).  The claims resolved include seven of the ten claims for which the April 26th hearing had been adjourned and claims of six of the creditors that appeared at the April 26th hearing.

11.     The Plan Administrator subsequently filed an objection to each other guarantee claim that was based on a primary obligation of UK IV or UK V.  The Court entered an order granting the *Three Hundred Seventy-Ninth Omnibus Objection to Claims* with respect to all but one claim, for which the objection was adjourned.  *See* ECF Nos. 20102, 34457.  The

letter filed by the holder of the claim that was adjourned contained no basis to deny the objection.  *See* ECF No. 34477.  The Court also entered orders granting the *Four Hundred Twenty-Eighth Omnibus Objection to Claims* with respect to all claims subject to the objection.  *See* ECF Nos. 38967, 40016, 40279.  The deadline for the holders of five claims to object to the *Five Hundred Eleventh Omnibus Objection to Claims* has not passed.  *See* ECF No. 51423.

## Reply

12.    There are no facts in question.  The representations previously made with respect to the nonexistence of other guarantees of obligations of UK IV and UK V remain true today.

13.    There is no legal basis to deviate from clear, repeatedly disclosed, contractual subordination provisions:  the remaining claims "at all times rank: (a) junior to all subordinated liabilities of LBHI… [and] (c) senior to the [common stock] of LBHI."[1]

---

[1]  Prospectus IV at 36; Prospectus V at 35.  *See also* Prospectus IV at 6; Prospectus V at 6 ("The Subordinated Guarantee will rank *pari passu* with the noncumulative perpetual preferred securities or preferred stock of LBHI (whether or not in issue)."); Prospectus IV at 16; Prospectus V at 6 ("The obligations of LBHI under the Subordinated Guarantee will rank junior as to payments to all liabilities to creditors of LBHI (including without limitation general creditors and subordinated debt holders excluding Parity Securities and Junior Share Capital) and claims of holders of senior ranking securities. In the event that LBHI is wound-up, liquidated or dissolved, the assets of LBHI would be available to pay obligations under the Subordinated Guarantee only after all payments have been made on such senior liabilities and claims."); Prospectus IV at 15; Prospectus V at 6 ("The Preferred Securities are guaranteed on a limited and subordinated basis by LBHI pursuant to the terms of the Subordinated Guarantee. Accordingly, if LBHI's financial condition were to deteriorate, the Holders may suffer direct and materially adverse consequences, including non-payment… of payments under the Subordinated Guarantee."); Prospectus IV at 9; Prospectus V at 9 ("The Preferred Securities, together with the Subordinated Guarantee, are intended to provide Holders, with respect to the Issuer, with rights on liquidation of the Issuer equivalent to non-cumulative preferred stock of LBHI, whether or not issued.")

14.     The Court should enter orders consistent with its prior supplemental orders

granting the pending objections with respect to the portions of all of the claims listed on Exhibit

A hereto.  Doing so will resolve approximately 10% in number of all Disputed Claims.

Dated:     November 13, 2015
           New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

**Exhibit A**

WEIL:\95489540\6\58399.0011

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 1 | ADVENTIST UNION LIMITED | 40232 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 1,069,000.00 |
| 2 | ALMADA GONZALEZ, ERNESTO JAVIER & ANA MARIA GOMEZ MUNDO | 51285 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 300,000.00 |
| 3 | ALONSO VERTIZ, RAFAEL | 47459 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 200,000.00 |
| 4 | AVELINO ORNELAS, MANUEL | 43259 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 1,020,316.67 |
| 5 | BANCO SANTANDER INTERNATIONAL, AS AGENT | 55675 | 08-13555 (SCC) | Omnibus Objection 213 | XS0301813522 | $ 0.00 * |
| 6 | BANK JULIUS BAER & CO. LTD. | 55515 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 203,948.33 * |
| 7 | BANK OF EAST ASIA LTD., THE, AS NOMINEE | 47294 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 109,948.00 |
| 8 | BANK OF EAST ASIA LTD., THE, AS NOMINEE | 47296 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 109,948.00 |
| 9 | BANQUE PRIVEE | 46890 | 08-13555 (SCC) | Omnibus Objection 216 | XS0282978666 | $ 145,098.00 |
| | | | 08-13555 (SCC) | Omnibus Objection 216 | XS0301813522 | $ 377,377.00 |
| | | | | | | $ 522,475.00 |
| 10 | BARNUEVO VIGIL DE QUINONES, MARIA PILAR | 44436 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 28,302.00 |
| 11 | BESSIO, MIRTA | 47444 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 80,000.00 |
| 12 | BIROL, ATIL | 10985 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 61,196.00 |
| 13 | BITKID B.V. | 52186 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 72,626.00 |
| 14 | BLASCO MARTIN, GREGORIO & | 60503 | 08-13555 (SCC) | Omnibus Objection 215 | XS0282978666 | $ 43,691.57 |
| 15 | BLOOMINGDALE'S INT VENT LTD. | 45086 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 21,000.00 |
| 16 | BORRINO, ALBERTO M. | 41133 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 15,000.00 |
| 17 | BRICENO VARGAS, ANTONIO & DE LA R DE BRICENO, PATRICIA | 49488 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 400,000.00 |

\* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 18 | BUOYANT HILL CORPORATION | 45682 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 16,000.00 |
| 19 | CALZADA REBOLLEDO, ROSA MARIA & | 56936 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 105,000.00 |
| 20 | CAMARENA PADILLA, EDUARDO & MARIA DE LA LUZ | 56943 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 294,000.00 |
| 21 | CAMARENA PADILLA, MA DE LA LUZ & ROSA EVELIA | 56945 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 727,000.00 |
| 22 | CAMARENA PADILLA, ROSA EVELIA & MA DE LA LUZ | 56944 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 410,000.00 |
| 23 | CAMARENA PADILLA, SOCORRO & MA DE LA LUZ | 56942 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 241,000.00 |
| 24 | CASTANEDA SAN ROMAN, HERMINIA & | 50842 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 100,000.00 |
| 25 | CASTELLANOS RAMIREZ, HECTOR | 50682 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 167,000.00 |
| 26 | CHAN, PETER AND ROSE | 41639 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 11,000.00 |
| 27 | CHEN, ROSA TE | 40968 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 28 | CHINA UNIQUE HOLDINGS LTD | 40813 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 21,000.00 |
| 29 | CHIPHAR CORPORATION | 40814 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 |
| 30 | COLE, FRANK | 37020 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 41,580.00 |
| 31 | DARYANI, PARASRAM, NEELAM P., VIKAS P. & NIKESH P | 59233 | 08-13555 (SCC) | Omnibus Objection 216 | XS0301813522 | $ 1,000,000.00 |
| 32 | DARYANI, PARASRAM/ NEELAM P DARYANI/ | 36634 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 1,000,000.00 * |
| 33 | DARYANI, VIKAS PARASRAM/ | 36639 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 * |
| 34 | DAVID JESUS ALPIZAR CARRILLO & | 49481 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 200,000.00 |
| 35 | DE BAEREMAECKER, CAROLINA | 36813 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |

* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

## EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 36 | DIAZ CLARK, MONICA | 49486 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 100,000.00 |
| 37 | DIEZ EZCURRA, CLARA | 37672 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 49,528.50 |
| 38 | DOTSON INVESTMENTS, LTD | 47035 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 237,304.48 |
| 39 | DUARTE, ALEJANDRO DIEGO | 61645 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 100,000.00 |
| 40 | FLORES, SERGIO LEAL AND JOSEFINA FLORES OCHOA | 64859 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 142,000.00 |
| 41 | FRANCISCO D'LUNA CANTON, JOSE/ LILIANA ASCENCIO DE LUNA | 65592 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 50,000.00 |
| 42 | FUNG, GRACE SIN YU | 36560 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 |
| 43 | GALLEGO, JAIME HERNANDEZ & TERCERO, REGINA HERNANDEZ | 50393 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 80,000.00 |
| 44 | GARCIA PASTORI, SYLVIA | 36815 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 80,000.00 |
| 45 | GESTION PARTICIPATIVA XXI, S.L. | 50526 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 73,585.20 |
| 46 | GOMEZ FLORES, MA DE LA PAZ & MA DEL REFUGIO | 56949 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 1,000,000.00 |
| 47 | GONZALEZ ENRIQUE, ALICIA AND GARCIA GONZALEZ, RUBEN | 51597 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 200,000.00 |
| 48 | GONZALEZ, GEORGINA MARGARITA | 49490 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 150,000.00 |
| 49 | GONZALO PEREZ DE GUZMAN SAN ROMAN | 50562 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 86,818.71 |
| 50 | GUZMAN ALDANA, ESTHELA M. | 51091 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 345,000.00 |
| 51 | HEINZ-JOACHIN, ELBE | 24466 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 56,744.00 |

\* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 52 | HONGKONG AND SHANGHAI BANKING CORPORATION LTD, SINGAPORE BRANCH, THE | 56671 | 08-13555 (SCC) | Omnibus Objection 216 | XS0282978666 | $ 2,699,533.32 * |
| | | | 08-13555 (SCC) | Omnibus Objection 216 | XS0301813522 | $ 918,457.50 * |
| | | | | | | $3,617,990.82 |
| 53 | IP LAM SANG & TSE SIU MUI | 45386 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 * |
| 54 | JABBOUR, LAMITA | 56189 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 500,000.00 |
| 55 | JANUS SYSTEMS S A | 55211 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 150,000.00 |
| 56 | JIMENEZ CASADO, MARIA DEL CARMEN | 41120 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 211,258.86 |
| 57 | JIMENEZ CASADO, SANTIAGO | 41121 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 138,909.94 |
| 58 | JOSE RUIVO DRAGAO, JOAO | 64556 | 08-13555 (SCC) | Omnibus Objection 379 | XS0301813522 | $ 51,015.83 |
| 59 | JOSEFINA FLORES OCHOA/SERGIO LEAL FLORES | 64860 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 258,000.00 |
| 60 | KADER, SAMIR AMR MOHAMED ZAKI ABDEL | 36674 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 50,000.00 * |
| 61 | KRAEMER, WILHELM | 41222 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 16,000.00 |
| 62 | LEE, TSU-SHIU AND LEE, YEN SHU MEEI | 42343 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 63 | LIN WEN YEN AND LIN-CHOU CHIANG HUA | 41316 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 64 | LINUESA SANCHEZ, ANDRES | 42390 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 36,174.46 |
| 65 | LLOVET GARCIA, JUAN ENRIQUE | 36808 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 60,000.00 |
| 66 | LLOVET GARCIA, MARIA DOLORES | 36807 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 60,000.00 |
| 67 | LLOVET GARCIA, MARIA ISABEL | 36810 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 60,000.00 |

\* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 68 | LLOVET GARCIA, MARIA SYLVIA | 36806 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 60,000.00 |
| 69 | LLOVET RUBIO, JUAN ENRIQUE | 36809 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 80,000.00 |
| 70 | LUMINANCE VENTURES LTD | 40810 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 21,000.00 |
| 71 | LUNA, JOSE RICARDO ALCALA AND ANA MARIA OCAMPO FLORES | 56480 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 105,000.00 |
| 72 | MARTINEZ, ENRIQUE VILLAGRASA | 41489 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 47,750.29 |
| 73 | MATEOS ESCUDERO, MARIA AGUEDA | 46683 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 283,020.00 |
| 74 | MATRIX CONTROL | 40812 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 32,000.00 |
| 75 | MICHELINI, MARGARITA | 36811 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 76 | MM2275 CO. LTD. | 40397 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 77 | MURCIA, JAMIE H. | 67453 | 08-13555 (SCC) | Omnibus Objection 215 | XS0282978666 | $ 1,417,829.53 |
| 78 | NEMOY, DANIEL | 36817 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 30,000.00 |
| 79 | OCCHIONE, LIONEL DARDO | 47474 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 89,000.00 |
| 80 | OCHOA, JOSEFINA FLORES & JOSEFINA LEAL FLORES | 64861 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 320,000.00 |
| 81 | OCTAVIO VELASCO, MARGARITA AND SEVILLA | 50683 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 116,000.00 |
| 82 | OROZCO COVARRUBIAS, FRANCISCO | 51092 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 200,000.00 |
| 83 | PARAMO, PATRICIA DE GUADALUPE | 65675 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 150,000.00 |
| 84 | PEREZ GARCIA, BLAS | 57034 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 21,704.68 |
| 85 | PINKY LIMITED | 42614 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |

\* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 86 | PO WAN LUK, KIT CHE FAN, KITTY KIT TAK FAN, AND A CHEUNG FAN KIT LING | 41254 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 87 | PRECIAT DE MENENDEZ, ANA MARIA | 51128 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 148,000.00 |
| 88 | RIDGECREST HOLDINGS LTD | 46589 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 |
| 89 | ROLDOS, JORGE | 36814 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 20,000.00 |
| 90 | ROLDOS, MARGARITA | 36818 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 50,000.00 |
| 91 | S. FEIJ | 63000 | 08-13555 (SCC) | Omnibus Objection 216 | XS0282978666 | $ 7,087.50 |
| 92 | SAEZ JORGE, CONCEPCION | 60501 | 08-13555 (SCC) | Omnibus Objection 215 | XS0282978666 | $ 142,725.80 |
| 93 | SANTOS GRADIM, JOAQUIM ARMINDO | 61429 | 08-13555 (SCC) | Omnibus Objection 215 | XS0282978666 | $ 708,707.44 |
| 94 | SAUER, KLAUS PETER | 34579 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 |
| 95 | SHYH-AN SU AND SHIOW-CHIN SU LUO | 40346 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 96 | SR. SIMON JUAN GALMES CERDO | 55517 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 203,948.33 * |
| 97 | SUGIARTO, BAMBANG/ LAU HA CHUN | 36650 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 50,000.00 * |
| 98 | SUWANG-SUN CO LTD | 40811 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 10,000.00 |
| 99 | TACTICS LIMITED | 54791 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 11,000.00 |
| 100 | TAHRA HOLDINGS INC | 57049 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 200,000.00 |
| 101 | TAN, CARIDAD & ALLEN ANTONIO | 45610 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 25,000.00 |
| 102 | TOUCHE, ANTONIO WALKER & DE WALKER, IRMA OLVERA | 50394 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 100,000.00 |
| 103 | TU, CHARLES AND PATTY | 55003 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 23,000.00 |

* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)

**EXHIBIT A - SUBORDINATED GUARANTEE CLAIMS**

| | NAME | CLAIM # | CASE NUMBER | OMNIBUS OBJECTION | ISIN^ | AMOUNTS TO BE SUBORDINATED |
|---|---|---|---|---|---|---|
| 104 | UBS AG | 59233 | 08-13555 (SCC) | Omnibus Objection 216 | XS0282978666 | $ 0.00 * |
| | | | 08-13555 (SCC) | Omnibus Objection 216 | XS0301813522 | $ 0.00 * |
| | | | | | | Undetermined |
| 105 | VAN ROOY, S.A.B. | 54549 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 106,132.50 |
| 106 | VIDRIO CHAVEZ, GERARDO ARMANDO | 56046 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 100,000.00 |
| 107 | VIDRIO CHAVEZ, GERARDO ARMANDO | 57713 | 08-13555 (SCC) | Omnibus Objection 215 | XS0301813522 | $ 110,000.00 |
| 108 | WING LUNG BANK LIMITED | 45202 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 3,522,076.25 |
| 109 | WONG HUNG YING | 43442 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 100,000.00 * |
| 110 | YARNOZ DIEZ, ISABEL MARIA | 37668 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 84,906.00 |
| 111 | YETTI LTD. | 40541 | 08-13555 (SCC) | Omnibus Objection 214 | XS0301813522 | $ 80,000.00 |
| 112 | ZEELAND INTERNATIONAL LIMITED | 37379 | 08-13555 (SCC) | Omnibus Objection 213 | XS0282978666 | $ 427,290.00 |
| | | | | | TOTAL | $ 26,444,540.69 |

\* Indicates claim contains unliquidated and/or undetermined amounts

^ Only those portions of the claim related to the ISINs listed are subject to the Plan Administrators' Five Hundred Eleventh Omnibus Objection.

**Exhibit B**

WEIL:\95489540\6\58399.0011

## SUBORDINATED GUARANTEE

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated 25 January 2007, is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

### 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 3 January 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**<sup>SM</sup>) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

## 2.    Guarantee

2.1    Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2    All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d)    where the Holder would not have been entitled to Additional Amounts.

2.3    LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4    The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a)    the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b)    the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c)    any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d)    the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)    any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)    the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)    junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)    *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)    senior to the Junior Share Capital of LBHI.

2.10    No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11    In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received

by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

**3.    Undertakings of LBHI**

3.1    LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2    Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3    LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**4.    Termination**

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)    full payment of the Optional Redemption Price;

(b)    purchase and cancellation of all Preferred Securities;

(c)    dissolution of the Issuer; or

(d)    if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

## 5.    Transfer; Amendment; Notices

5.1    Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2    Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3    Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:  Corporate Counsel
Facsimile:  (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4    This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

## 6.    Governing Law

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor

By: _____
    Name:
    Title:

**EXHIBIT C**

WEIL:\95489540\6\58399.0011

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated 1 June 2007, is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

## 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 10 May 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding US$ Fixed Rate Enhanced Capital Advantaged Preferred Securities (**US$ ECAPS®**) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

## 2.   Guarantee

2.1   Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2   All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a)   to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)   where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c)   where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d)   where the Holder would not have been entitled to Additional Amounts.

2.3   LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4   The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a)   the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b)   the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c)   any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d)   the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)    any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)    the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)    junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)    *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)    senior to the Junior Share Capital of LBHI.

2.10    No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11    In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received

by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

**3.    Undertakings of LBHI**

3.1    LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2    Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3    LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

**4.    Termination**

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)    full payment of the Optional Redemption Price;

(b)    purchase and cancellation of all Preferred Securities;

(c)    dissolution of the Issuer; or

(d)    if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

**5.    Transfer; Amendment; Notices**

5.1    Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2    Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3    Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:   Corporate Counsel
Facsimile:   (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4    This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

**6.    Governing Law**

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor

By: _____

    Name:

    Title:

**CARLO PELLERANI**
**Authorised Signatory**