Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    CASE NO. 08-13555-scc   ADV. CASE NO. 08-01420

4    - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC.,

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - x

11   In the Matter of:

12

13   LEHMAN BROTHERS INC.

14

15   - - - - - - - - - - - - - - - - - - x

16                         U.S. Bankruptcy Court

17                         One Bowling Green

18                         New York, New York

19

20                         November 4, 2015

21                         10:07 AM

22   B E F O R E:

23   HON. SHELLEY C. CHAPMAN

24   U.S. BANKRUPTCY JUDGE

25   ECRO - TB

Page 2

1    HEARING Re:  Doc #50899 Five Hundred Eighth Omnibus

2    Objection to Claims (Disputed Valuation Claims) reset for

3    12/17/15 at 10 a.m.

4

5    HEARING Re:  Adversary proceeding: 08-01420-scc Lehman

6    Brothers Inc.; Doc #12655 Trustees Motion to Reclassify

7    Certain Deferred Compensation Claims as Unsecured Non-

8    Priority General Credit Claims

9

10   HEARING Re:  Adversary proceeding: 08-01420-scc Lehman

11   Brothers Inc., Doc #12656 Trustee's Motion to Reclassify

12   Certain Substantively identical Deferred Compensation Claims

13   as Unsecured General Creditor Claims

14

15   HEARING Re:  Adversary proceeding: 15-01299-scc Lehman

16   Brothers Holdings Inc., in its capacity as v Longwood at

17   Oakmont, Inc., Pre-trial conference

18

19   HEARING Re:  Adversary proceeding: 15-01300-scc Lehman

20   Brothers Holdings Inc., in its capacity as v Presbyterian

21   SeniorCare, Pre-trial conference

22

23

24

25   Transcribed by:  Sheila Orms

Page 3

```
 1    A P P E A R A N C E S :

 2

 3    HUGHES HUBBARD

 4         Attorneys for LBI Trustee

 5         One Battery Park Plaza

 6         New York, NY  10004

 7

 8    BY:  KAREN M. CHAU, ESQ.

 9         JAMES C. FITZPATRICK, ESQ.

10

11    MAYER BROWN

12         Attorneys for BNP Paribas

13         1221 Avenue of the Americas

14         New York, NY  10020

15

16    BY:  CHRISTINE A. WALSH, ESQ.

17         HOWARD S. BELTZER, ESQ.

18

19    WEIL GOTSHAL & MANGES

20         Attorneys for Lehman Brothers Holdings, Inc.

21         767 Fifth Avenue

22         New York, NY  10153

23

24    BY:  GARRETT A. FAIL, ESQ.

25
```

Page 4

1    LEECH TISHMAN FUSCALDOT LAMPL

2         Attorneys for Presbyterian SeniorCare

3

4    BY:  DAVID LAMPL, ESQ.

5

6    SCAROLA MALONE & ZUBATOV

7         Attorneys for 344 claimants

8         1700 Broadway

9         41st Floor

10        New York, NY  10019

11

12   BY:  RICHARD SCAROLA, ESQ.

13

14   PAUL HASTINGS

15        Attorneys for Lehman Brothers Holdings, Inc.

16

17   BY:  JOSHUA BENNETT, ESQ.

18

19   TELEPHONIC APPEARANCES:

20   RAJ V. IYER, CANYON PARTNERS

21   MICHAEL G. LINN, FARALLON CAPITAL MANAGEMENT

22   JASON B. SANJANA, REORG RESEARCH, INC.

23   MICHAIL ZEKYRGIAS, MERRILL LYNCH

24   CHRISTOPHER ABAD, EMPYREAN CAPITAL PARTNERS

25

1                P R O C E E D I N G S

2           THE COURT:  Please have a seat.  How are you

3     today, Mr. Fail?

4           MR. FAIL:  Good morning, Your Honor.  Very well,

5     thank you.  And yourself?

6           THE COURT:  Good.

7           MR. FAIL:  For the record, Garrett Fail, Weil

8     Gotshal & Manges for Lehman Brothers Holdings, Inc.

9           Your Honor, you may recall that on June 30th, the

10    Court entered an order after notice to all parties in

11    interest, extending for 18 months the deadline for the plan

12    administrator to object to all claims against the debtors.

13          Shortly thereafter the debtors objected in their

14    508th omnibus objection to Claim No. 67938, which is

15    significant in size, even in the context of these cases,

16    Your Honor.  That claim was filed BNP Paribas and at this

17    time, seeks more than $114 million.

18          This is a derivatives claim where the primary

19    obligor was a foreign affiliate not under the control of

20    LBHI or the Chapter 11 debtors post-petition.  As set forth

21    in the objection, as it did with tens of thousands of other

22    claims, Your Honor, the plan administrator reviewed the

23    documentation submitted with the claim, reviewed the

24    debtor's records and other available determination, to

25    determine the fair, accurate, reasonable value of the claim

Page 6

1    based on the underlying documents.

2            BNP filed a response to the objection.  It asked

3    the Court to reject or essentially dismiss the objection and

4    allow the guarantee claim in full.

5            It notes that BNP filed both derivative and

6    guaranteed questionnaires required for derivative guarantee

7    claims.  It says that it provided information required by

8    the ISDA agreements and the questionnaires.  It says that it

9    supported the valuation techniques that it used to calculate

10   the termination claims, and therefore, it concludes the

11   objection is insufficient to rebut the presumption of

12   validity of the claim.

13           But whether BNP submitted all of the information

14   in its claim, in the guarantee questionnaire, in the

15   derivatives questionnaire that was required by the Court's

16   orders and by the underlying ISDA agreements, to be entitled

17   to an initial presumption ability, and whether the plan

18   administrator has or can rebut the presumption, that's not

19   before the Court today at this initial sufficiency hearing.

20           That argument and evidence regarding valuation

21   would be heard at a merits hearing at some later date.  So,

22   Your Honor, why are we here today.

23           We're here today because BNP believes that there

24   should not be a merits hearing on this claim.  And BNP

25   alleges that LBHI cannot object to a guarantee claim,

1    specifically where the primary claim has been allowed by

2    LBF, the non-controlled affiliate's foreign administrator.

3            As set forth in LBHI's reply, that argument is

4    inconsistent with the debtor's plan, with U.S. law and

5    indeed with Swiss law.

6            Section 9.1 of the debtor's plan which was

7    confirmed explicitly reserved the debtor's right to "object

8    to, oppose and defend against all claims on any basis."  It

9    went on to specifically say, "notwithstanding that a primary

10   claim is allowed against a primary obligor, the debtor's

11   reserve the right to object to, oppose, and defend against

12   all guarantee claims."

13           This provision existed because the debtors knew

14   that various foreign administrators and estates would have

15   different levels of capabilities, resources, interests, and

16   in interests in objecting to various primary claims.  In

17   this instance, with respect to BNP's primary claim, it

18   appears LBF didn't challenge any one of the 1,300

19   termination values for example.

20           Your Honor, as cited in the cases in LBHI's reply,

21   we believe U.S. law simply does not prohibit challenges to

22   the amounts of an underlying guarantee claim, even if

23   there's an unconditional guarantee, and here we're not

24   challenging the nature of the guarantee.

25           And, Your Honor, as stated in our reply under

1    Swiss law, a claim allowed pursuant to a co-location

2    proceeding, which BNP's claim was, is done without a

3    judicial proceeding, without court order, without any

4    showing, without any admission, the allowance isn't binding

5    on any other party and it's not binding in LBF in any other

6    proceeding.

7            So, Your Honor, if the Court agrees that LBHI has

8    the obligation and indeed the right to review and object

9    where appropriate to claims filed against it, LBHI would

10   proceed in due course over time to prosecute the objection

11   if a consensual resolution cannot be received either

12   voluntarily or through ADR.

13           And, Your Honor, if you have any questions I'm

14   happy to answer them at this time.

15           THE COURT:  So the request is I think summarized

16   at the end of the reply, which is simply that -- to make

17   clear that the trust -- that the debtors can continue as you

18   said to prosecute the objection.

19           MR. FAIL:  That's right, Your Honor.

20           THE COURT:  All right.  Why don't I hear from

21   counsel for BNP.

22           MR. FAIL:  Thank you, Your Honor.

23           THE COURT:  Thank you.

24           MR. BELTZER:  Good morning, Your Honor, Howard

25   Beltzer and Christine Walsh from Mayer Brown for BNP

1    Paribas.

2            If I might, Your Honor, I'll be brief, but I'd

3    like to begin with the recitation of the background of this

4    hearing, and what I hope is a reasonable way forward.

5            THE COURT:  Okay.

6            MR. BELTZER:  And one which would not require a

7    decision by Your Honor on the issue presented in Mr. Fail's

8    reply from last Friday, but let me get into the background

9    for a moment.

10           BNP filed --

11           THE COURT:  Wait.  When you say would not require

12   a decision on the issue presented, what do you mean by that?

13           MR. BELTZER:  I'm suggesting, Your Honor, that the

14   suretyship law on the precise effect of the Swiss allowance

15   of the underlying claim on the guarantor's right to object

16   to the guarantee claim.

17           THE COURT:  That's not -- I mean, that -- I don't

18   view that issue as being before me today.

19           MR. BELTZER:  Okay.

20           THE COURT:  I view the issue before me today is go

21   or no go.  In other words, your position is that there can

22   be no challenge to the claim.  And so either we're going to

23   stop and never come back again after today or we're going to

24   keep going, so.

25           MR. BELTZER:  I'm actually suggesting, Your Honor,

Page 10

1    that we keep going, but that we reserve on the issue

2    ultimately of whether Your Honor would be bound to give

3    deference to the Swiss court determination.

4              THE COURT:  Again, I'm going to repeat, I don't

5    disagree with you, right?  But what you -- your choice

6    number one would be for me to say, objection overruled,

7    done.  Claim fully allowed in the full amount.

8              MR. BELTZER:  Your Honor, as Mr. Fail noted in his

9    reply, the parties have exchanged documents.

10             THE COURT:  Right.

11             MR. BELTZER:  I will report to Your Honor that in

12   the past BNP had asserted claims in these proceedings in

13   excess of a billion dollars I believe at the beginning.

14   They've all been sequentially allowed, stipulated, the

15   parties have engaged in extremely --

16             THE COURT:  Right.

17             MR. BELTZER:  -- dialogue over time.

18             THE COURT:  Right.

19             MR. BELTZER:  I would hope that that would be the

20   case here.  And it's really just a question -- I viewed it

21   as Mr. Fail -- the estate trying as a threshold matter to

22   say, you are not bound, and think we should just reserve on

23   that issue.

24             THE COURT:  I'm not going to make any such

25   pronouncements.  Obviously, there are -- it's obvious to me

1    that there are a lot of complicated issues that --

2              MR. BELTZER:  Yes.

3              THE COURT:  -- have to do with the interplay

4    through various laws --

5              MR. BELTZER:  Yes.

6              THE COURT:  -- the plan, it's a very multi-layered

7    analysis.

8              MR. BELTZER:  Yes.

9              THE COURT:  So I view this simply as binary.  Do

10   we never see you again --

11             MR. BELTZER:  Right.

12             THE COURT:  -- or do we keep going and allow the

13   estate to continue to prosecute its objection.  So if you're

14   agreeing, I mean, I'm going to allow the estate to continue

15   to prosecute its objection.

16             MR. BELTZER:  Right.

17             THE COURT:  I'm not going to make any

18   pronouncement on anything remotely related to the merits.

19             MR. BELTZER:  So that was going to be my

20   suggestion after seven eloquent minutes I think we're fine

21   with that, thank you, Your Honor.

22             THE COURT:  All right.  So I don't even know, Mr.

23   Fail, if I need -- what kind of an order I need today.

24             MR. FAIL:  Thank you, Your Honor.  I don't think

25   any order is requested or required.  I think there's been an

Page 12

1    objection pending, we'll treat guaranteed claims -- the

2    estate will treat guarantee claims where the primary obligor

3    is LBF, as it would treat every other guarantee claim, the

4    thousands of others, and proceed with this objection either

5    voluntarily, settlement, the ADR, litigation, we'll set up a

6    schedule --

7            THE COURT:  And BNP's rights are reserved --

8            MR. FAIL:  -- I'm sure we'll be able to work

9    through that.

10           THE COURT:  -- to make the arguments that you

11   can't do any of that.

12           MR. FAIL:  Right, Your Honor.  And if it becomes a

13   threshold issue that can't be -- you know, that gets in the

14   way of something we may be back here for that issue.  And if

15   it makes sense to just go forward with a full trial, we'll

16   be back at that point.

17           THE COURT:  Okay.  All right.  That sounds good.

18   Thank you very much.

19           MR. BELTZER:  Thank you, Your Honor.

20           MR. FAIL:  Thank you very much, Your Honor.

21           Your Honor, the next item on the agenda is the LBI

22   docket.

23           THE COURT:  I think that's right.

24           MR. FAIL:  And with the Court's permission, may I

25   be excused?

1          THE COURT:  Yes.

2          MR. FAIL:  Thank you.

3          THE COURT:  Thank you.  Good morning.

4          PARTIES:  Good morning, Your Honor.

5          MR. FITZPATRICK:  Good morning, Your Honor, Jim

6   Fitzpatrick and Karen Chau for the LBI trustee.

7          THE COURT:  Okay.

8          MR. FITZPATRICK:  With Your Honor's permission I

9   believe there are -- each motion is listed separately on the

10  agenda --

11         THE COURT:  Right.

12         MR. FITZPATRICK:  -- but I'll address both of them

13  at the same time --

14         THE COURT:  Sure.

15         MR. FITZPATRICK:  -- because substantively they're

16  essentially the same, Your Honor.

17         Really what I would -- the only thing I would like

18  to add in connection with our papers, is that the

19  opposition, as Your Honor knows --

20         THE COURT:  Before you get started --

21         MR. FITZPATRICK:  Yes.

22         THE COURT:  -- could I clarify the overlap between

23  this and what's come before this?

24         MR. FITZPATRICK:  Yes.

25         THE COURT:  So that I understand what we've done

Page 14

1    with respect to these claims?  Are these the same claims

2    that have been subordinated?

3                MR. FITZPATRICK:  That we are seeking to

4    subordinate, yes, Your Honor.

5                THE COURT:  That you're seeking to subordinate.

6                MR. FITZPATRICK:  Yes, Your Honor.

7                THE COURT:  So there was a trial.

8                MR. FITZPATRICK:  No, I'll clarify for Your Honor.

9                THE COURT:  Okay.

10               MR. FITZPATRICK:  Yes.  We -- the trustee

11   originally by objection and subsequently converted by Your

12   Honor's order to an adversary proceeding --

13               THE COURT:  Right.

14               MR. FITZPATRICK:  -- brought an action to

15   subordinate these claims.

16               The claimants moved to compel arbitration.

17               THE COURT:  Right.

18               MR. FITZPATRICK:  Which we opposed.  Your Honor

19   denied --

20               THE COURT:  Denied it.

21               MR. FITZPATRICK:  -- the motion to compel

22   arbitration.  That was appealed to the district court.  The

23   Court --

24               THE COURT:  And affirmed, and I was affirmed.

25               MR. FITZPATRICK:  -- Judge Ramos affirmed.

Page 15

1            THE COURT:  Right.

2            MR. FITZPATRICK:  That has now been appealed just

3    within the last several days to the Second Circuit, so

4    there's a Second Circuit appeal --

5            THE COURT:  Okay.

6            MR. FITZPATRICK:  -- pending on the issue of

7    whether to compel arbitration.

8            In addition to the appeal of the arbitration

9    motion --

10           THE COURT:  There's a motion to withdraw the

11   reference.

12           MR. FITZPATRICK:  -- a move to withdraw the

13   reference, that has not been -- that's pending before Judge

14   Ramos.

15           THE COURT:  Okay.

16           MR. FITZPATRICK:  That hasn't been ruled on.

17           THE COURT:  Okay.

18           MR. FITZPATRICK:  But that is all with respect to

19   the adversary proceeding to subordinate the claims.

20           This motion is for the same claims, but to address

21   the separate issue of whether they are secured or not.  And

22   it is the trustee's position that without prejudice to any

23   arguments being made as to whether or not they are

24   subordinated, they are clearly not secured.

25           And the reason we make that motion now, frankly,

Page 16

1    as Your Honor is well aware, the estate reserves at

2    different tiers and is currently reserving the 260 million

3    approximate dollars for these claims within the secured

4    pool.

5            And so what this request, if granted, would allow

6    us to do is to move it into the general unsecured creditor

7    pool, and then it would be available for general creditors

8    and pending -- without prejudice and pending anything that

9    happens with respect to the issue of whether the claims are

10   subordinated or not.

11           THE COURT:  Okay.

12           MR. FITZPATRICK:  In terms of the merits, the

13   objection to our motion or the opposition to our motion was

14   largely focused on the procedure and the burdens that each

15   party had.  And so we just wanted to clarify.

16           The trustee's position is that in order to bring a

17   secured claim that's based on a document, as part of the

18   proof of claim, one has to write the documents and also

19   evidence that this security interest has been perfected

20   under Bankruptcy Rule 3001.

21           There was no submission, of course, that any

22   security interest was perfected, and as -- in terms of

23   submission of the document, there was a document submitted,

24   which was the ESOP agreement.  But that agreement doesn't

25   give any indication that the claims are secured, in fact, it

1    says the opposite, it's unsecured.  And so first, the

2    trustee's position would be that that doesn't even reach the

3    level of meeting the prima facie burden, so that we have to

4    come forward with any evidence.

5            Alternatively, if it's considered that just saying

6    in the proof of claim that it is secured is sufficient, we'd

7    submit the agreement itself which says that they are

8    unsecured is more than enough to meet the trustee's burden

9    to come forward with some evidence, and then the burden

10   would shift back to the claimants.

11           And again, we are unaware of any evidence that --

12   what the agreement says isn't what it means, which is that

13   it's unsecured.  We're not aware of any evidence or any law

14   that would suggest that despite this agreement that says

15   this, in fact, the claimants have secured claims.  And so

16   that's the basis -- the substantive basis of our position.

17           We also addressed and I think that's been conceded

18   that this was likely an error by pro se claimants.  There

19   was a box checked on some for wages earned, but they clearly

20   were not earned within 180 days of the bankruptcy.  So we

21   addressed that.  I don't think that's really in dispute, so

22   they're not priority either.

23           And so unless Your Honor has questions, that's our

24   position.

25           THE COURT:  Okay.  All right.  Thank you.  Good

Page 18

1    morning.

2             MR. SCAROLA:  Rick Scarola for the claimants, some

3    of the claimants, 344 of the claims that are in issue.

4             Your Honor has probably read sufficiently our

5    papers to understand that the issue we have is most

6    immediately one of procedure.  What I heard Mr. Fitzpatrick

7    say is more than --

8             THE COURT:  Well, let me --

9             MR. SCAROLA:  I'm sorry.

10            THE COURT:  Let me tee it off.  Because Mr.

11   Fitzpatrick has it right, you -- it takes more than simply

12   stating that you have a secured claim in order to get out of

13   the starting gate.  So at its most fundamental level, a

14   secured claim requires that the claimant have a lien on

15   property of the debtor's estate.  If you had a mortgage on a

16   building, if you had something.

17            Your description and you have three different

18   theories, so to speak, doesn't satisfy that.  So it's as if

19   you are alleging that, for example, your claimants were

20   secured by the -- a security interest in the old

21   headquarters building, and you don't attach a mortgage and

22   then you turn to the trustee and he says, well, there is no

23   such mortgage.  And then under your view, I think, of the

24   way the burden shifts, you still would prevail because the

25   trustee can't come up with what you've alleged exists.

Page 19

1          So you've made a declaration of a secured claim,

2    but you haven't satisfied the initial burden of any

3    documentation or any recitation of the elements that, in

4    fact, constitute a secured claim.

5          So it's not a matter of evidence or not.  There's

6    nothing to shoot at if you will.

7          MR. SCAROLA:  Your Honor, if that's going to be

8    your ruling I understand that.  I'll address it briefly, but

9    it is in our papers.

10          Let me tell you the Section 541 proposition as an

11    example.  It is not possible -- this is not a security

12    interest in the nature of a mortgage.  If it were, there'd

13    be a mortgage attached.

14          This is a proposition of law.  It's stated in the

15    proof of claim.  There's nothing one could attach.  However,

16    what matters here, and I don't think it's fair to

17    characterize it as Your Honor did or it's accurate to

18    characterize it as Your Honor did that there's nothing to

19    shoot at, is that that has been stated plainly.  There's no

20    document one could attach on that issue.

21          Now, before the motion was made, if I may, it will

22    not take long --

23          THE COURT:  No, that's okay.

24          MR. SCAROLA:  -- but I do need to say this.  Mr.

25    Fitzpatrick and I have a collegial relationship for a couple

Page 20

1    of years.  He actually asked Judge Ramos in effect for I'll

2    call it loosely an advisory ruling that it wasn't going to

3    conflict with his jurisdiction while the arbitration appeal

4    was pending before him if this motion remained, and we spent

5    some time in front of Judge Ramos.

6              We talked then, and I said -- and Judge Ramos

7    said, I've got a thick skin, if you think you're not

8    invoking contract provisions that are at issue here, more

9    power to you, go ahead, make your motion.  And before he did

10   that, I said, Jim, these are the issues, what do you have to

11   say about them.  And what I got was ships passing in the

12   night.  I got references to the Section 507 proposition,

13   which is checked by a few of the claimants.  I think these

14   are individuals claims.

15             It's clearly, the 507 proposition about retirement

16   funds collected in the last 180 days is obviously a non-fit.

17   This is a 1986 deferred compensation plan, and that's not

18   something we're arguing.

19             Yet he argued that to me, and that's the only

20   substantive point that he argues in his papers.  There's no

21   substantive -- the reference to Section 541 or the other

22   propositions in the proof of claim apart from simply quoting

23   it, it is not discussed at all by the trustee.

24             THE COURT:  Well, I think the difficulty --

25             MR. SCAROLA:  And if Your Honor is going to --

Page 21

1          THE COURT:  I think the difficulty is that it's

2   very hard to refute something that you believe is inapposite

3   and baseless.  It's very hard to argue in an analytical way

4   with something that you believe is simply inapplicable or

5   insufficient.

6          So we can go through each of your three bases, and

7   I can explain to you why I believe they're insufficient, but

8   that's the fundamental disconnect.  Is that it's essentially

9   asking somebody to prove a negative.  Where the trustee is

10  at a loss to do -- say anything more than what he said

11  because frankly there's nothing more to say.

12         There -- if -- the grounds are so wide of the

13  mark, that there's nothing more than can be meaningful said.

14  So if you feel that there's something else that you can do

15  to persuade me that what you allege as the basis of these

16  being secured claims, I'm very happy to listen to it.  But I

17  don't see it.

18         MR. SCAROLA:  Your Honor, I can simply say and I

19  will rest on the papers in this respect, the trustee, I

20  believe, and it's what lawyers often do, could have made its

21  argument as to a view, if it had that view, as to the points

22  made and the proofs of claim being inapposite or wide on the

23  mark, I think the terms you used, but he did not do that.

24  He did not reference them at all.

25         That being the case, the motion doesn't meet the

Page 22

1    threshold of the Bankruptcy Rule 8013 of the cases that

2    discuss what a motion needs.

3            THE COURT:  Well, let me -- you know, I need to --

4    we --

5            MR. SCAROLA:  And I'm not in a position --

6            THE COURT:  We need to -- really, I need to keep

7    going back and forth with you a little because let's drill

8    down on it.  This is what you say.  This claim is a secured

9    claim to the extent of the value of such insurance policies

10   if it is determined that claimant has an interest in such

11   life insurance policies by reason of the ESOP and/or the

12   custom and actual practice.  That's what you said.

13           MR. SCAROLA:  I actually am not the one who wrote

14   that, it was predecessor counsel, but I understand you're

15   quoting what's in the proof of claim.

16           THE COURT:  Okay.  But that's -- here's why I have

17   a secured claim because there's an interest in the life

18   insurance policy.  On its face that doesn't describe a

19   security interest in something that would give rise to a

20   secured claim.  Those words don't describe a secured claim.

21   They don't --

22           MR. SCAROLA:  I'm not going to agree or disagree

23   with that.  And frankly, it is because I would be doing my

24   clients a disservice.  The reason is that the trustee did

25   not say that in its papers.

Page 23

1          If the trustee --

2          THE COURT:  Sure he did.

3          MR. SCAROLA:  No, he did not, Your Honor, he did

4   not anywhere make reference to, in any discussion, the three

5   points made in the proofs of claim.  They are simply not

6   discussed.  He discusses the Section 507 proposition about

7   the last 180 days, but he does not discuss Section 541.

8          The Section 541 points which I think are the third

9   of the three in the proof of claim and order, they are

10  matters of law.  They are --

11         THE COURT:  I will be very --

12         MR. SCAROLA:  -- issues with which you might

13  disagree, or he might disagree meaning the trustee.  But the

14  trustee did not say I disagree.  The trustee did not say

15  they don't apply for some reason.  And again, I cannot

16  without doing my clients a grave disservice,

17  extemporaneously brief what the trustee didn't brief.

18         The trustee didn't even say, gee, I can't get my

19  head around that, or I don't understand it, or it's wide of

20  the mark.  It is simply not adverted to in the trustee's

21  moving papers.

22         I can say no more than that, and that is an

23  absolute truth.  They quote it, they move on, they don't

24  discuss it.  All they say is we, the trustee, and our

25  counsel have decided that this has no merit.  In my

Page 24

1    understanding of the law, that's not a proper motion.  We've

2    cited the cases and the rule that say so.  And I will not

3    without risk of committing malpractice extemporaneously

4    brief these issues which the trustee hasn't briefed --

5              THE COURT:  Well, you're --

6              MR. SCAROLA:  -- standing here before Your Honor.

7    I cannot do that, because the trustee has not done it.

8              THE COURT:  Why don't you take the opportunity to

9    explain to me what you mean by the 541 issue.  Because it's

10   far from clear what the theory is that you are asserting

11   under 541(b)(7) or (8).

12             MR. SCAROLA:  It may be far from clear, Your

13   Honor, but again, I mean, on the face of the statute, it is

14   outside -- it is an amount -- sorry.  I am now addressing

15   something the trustee has not said.  I need to make that

16   clear once again, and I think that this is not something

17   that is a proper way for me to be proceeding on this motion.

18             THE COURT:  Well, what are you --

19             MR. SCAROLA:  I'm making an argument against

20   something the trustee has not argued.

21             THE COURT:  But --

22             MR. SCAROLA:  But to the extent in general, I can

23   state it.  It is a statute, and the Court is much more

24   familiar with the statute than I am, I expect.  And the

25   statute says, certain amounts received by an employer,

Page 25

1    certain amounts received -- I'm sorry, it's either withheld

2    or received I think is the terminology, or outside the

3    estate.  And --

4              THE COURT:  Okay.  So --

5              MR. SCAROLA:  -- it is there in black and white on

6    the face of the statue.

7              THE COURT:  So in order to --

8              MR. SCAROLA:  So if that is applicable, then the

9    amounts that we are quote/unquote fighting over, are at a

10   minimum entitled to secured status.  In fact, I think some

11   cases would say --

12             THE COURT:  Here's the thing --

13             MR. SCAROLA:  -- more than secured status.

14             THE COURT:  -- what you just said I am having a

15   hard time following.  Just as point B that claimant -- that

16   such life insurance policies are determined to be ESOP plan

17   assets, and are not property of the debtor's estate.

18             In order to have a secured claim, you have to have

19   a security interest on property of the debtor's estate.  B

20   and C of your recitation of why these are secured rests on

21   the proposition that the insurance policies are not property

22   of the estate.

23             It therefore follows that it is impossible for the

24   claims to be secured by having an interest in something that

25   is not property of the estate.  So I'm not quite sure, I've

Page 26

1    really not come across this kind of wrangling if you will

2    over what the trustee said or didn't say, and I'm trying to

3    be as measured about this as possible, but I think the

4    difficulty that the trustee has had is that it's not a close

5    question.

6              These -- as a matter of a prima facie claim, you

7    have not asserted anything that comes close to establishing

8    a prima facie case for these being secured claims.

9              MR. SCAROLA:  Your Honor, I have not heard that

10   from the trustee's counsel and the dialogue before this

11   motion, and I have not heard that even in their motion as

12   its written.  That being the case, I understand Your Honor

13   saying it is hard to understand some portion of this, I

14   think you were referring to the Section 541 proposition.  It

15   is a legal issue, it is one that has not been briefed by the

16   trustee in making the motion addressed to it.

17             THE COURT:  Let me ask --

18             MR. SCAROLA:  And if --

19             THE COURT:  -- let me give you a hypothetical,

20   okay.

21             If you cited to -- I'm going to pick a totally

22   inapposite section, okay.  You have a secured claim pursuant

23   to the provisions of, and I literally just opened the book,

24   okay, pursuant to the provisions of 11 U.S.C. 1106, which is

25   the provision of the Code that has to do with the duties of

Page 27

1    the trustee, as an example.  It's completely got nothing to

2    do with a secured claim.

3            Why would there have to be briefing over the

4    inapplicability of that when from the get go, the trustee is

5    simply saying prima facie -- he says it right here.

6    "Claimants have failed to satisfy the basic rules of

7    asserting a proof of claim, and therefore, do not establish

8    any prima facie case."  There's only --

9            MR. SCAROLA:  Your Honor --

10           THE COURT:  -- so many ways of saying that.

11           MR. SCAROLA:  I don't know what paragraph you

12   quoted, but from recollection, I think that's the paragraph

13   in which they say, well, where's the mortgage document that

14   should be attached.  Well, we're not talking about that kind

15   of claim.

16           To answer your hypothetical and I understand your

17   hypothetical, the trustee could say, this is nonsense,

18   because it doesn't apply for the following reasons.  But

19   this trustee --

20           THE COURT:  But you can't put -- you can't say --

21           MR. SCAROLA:  -- on this motion does not say --

22           THE COURT:  -- or to take my hypothetical, right,

23   you can't -- it doesn't apply for the following reasons.  It

24   doesn't apply because it doesn't apply.  I mean, it's hard

25   to explain the inapplicability of something that wholly

Page 28

1    doesn't apply.  How can you --

2           MR. SCAROLA:  Your Honor --

3           THE COURT:  -- explain that --

4           MR. SCAROLA:  -- first of all I don't think --

5    sorry.

6           THE COURT:  -- you know, if you say, you know, the

7    sun rises in the west.  The answer is, no, it doesn't.

8    Right?  There's not much, the sun -- you say no, it doesn't,

9    the sun rises in the east.  So here the trustee is

10   attempting to say, this is what you have to do to satisfy

11   the rules in asserting a prima facie claim.  I'm looking at

12   what was done, none of what is here satisfies that.

13          MR. SCAROLA:  Respectfully, Judge, I disagree.  I

14   think in my first appearance before you, you said don't say

15   respectfully, but I don't know how else to put it.

16          THE COURT:  Okay.

17          MR. SCAROLA:  I don't want to go in circles with

18   you.  I can only say that it is so fundamental that, yes,

19   had I cited a proposition that the sun sets in the east and

20   rises in the west, I do believe if you want to take that

21   extreme hypothetical, that a proper motion would have at

22   least had a paragraph explaining based on --

23          THE COURT:  Well, what about --

24          MR. SCAROLA:  -- for reference to nothing other

25   than a Wikipedia page --

1              THE COURT:  But what about --

2              MR. SCAROLA:  -- with why that silliness might not

3     be true.  But we're not dealing with --

4              THE COURT:  -- the bankruptcy -- wait.  But wait.

5              MR. SCAROLA:  -- something silly.

6              THE COURT:  But wait.  What about in the reply,

7     paragraph 5, page 2, there's a repeated recitation of

8     paragraph 4 as this Court and others in the Second Circuit

9     have held, claims are disallowed or reclassified for failure

10    to support the claim with sufficient evidence, because

11    absent documentation it's not sufficient for the objector to

12    concede the validity of a claim where --

13             MR. SCAROLA:  Well, again, I don't want to go in

14    circles, Your Honor.  There is no documentation as to

15    Section 541.  It's not that kind of an issue.

16             THE COURT:  Well then you say --

17             MR. SCAROLA:  It's not referring --

18             THE COURT:  -- that under --

19             MR. SCAROLA:  May I at least give the answer?

20             THE COURT:  Yeah, go ahead.

21             MR. SCAROLA:  I mean, if isn't (indiscernible) you

22    accept, I'll understand that.  But that paragraph fairly

23    read is addressed to the plain vanilla scenario of okay

24    you're claiming you have a mortgage or a UCC security

25    interest, you've got to attach it.  And it's self-evident

Page 30

 1    that that's not what's identified in the proof of claim.

 2    There is no document.

 3              One could disagree with the applicability of

 4    Section 541 or not.  But it is incumbent on the trustee to

 5    brief it, who has not, and if --

 6              THE COURT:  But what do I about -- no, what about

 7    --

 8              MR. SCAROLA:  -- he does not, I believe the motion

 9    has to be denied.

10              THE COURT:  But he has --

11              MR. SCAROLA:  If you think that burden shifted to

12    us --

13              THE COURT:  Mr. Scarola, he has --

14              MR. SCAROLA:  -- you're going to rule against us.

15              THE COURT:  -- briefed it.  Paragraph 5,

16    "Bankruptcy Rule 3001(c) requires that when a claim or

17    interest in property of the debtor securing the claim is

18    based on a writing, the original or duplicate shall be filed

19    with the proof of claim."

20              So I think your point is that there is no writing.

21    Although you --

22              MR. SCAROLA:  It is on that claim something in the

23    nature of writing, correct.

24              THE COURT:  So how you could have a security

25    interest --

Page 31

1           MR. SCAROLA:  It's a statutory proposition.

2           THE COURT:  -- that arises without a writing is an

3    interesting question.

4           MR. SCAROLA:  It's a statutory proposition.

5           THE COURT:  Okay.  And the statute is 541 you say?

6           MR. SCAROLA:  Correct.

7           THE COURT:  Right.  And footnote 4 in the

8    trustee's reply says, "It is true that the trustee did not

9    directly address in the motion the assertions in the proof

10   of claim that the claims were secured to the extent of the

11   value of the COLI policies if it is determined that wages

12   withheld by LBI are contributed to LBI," et cetera, "or

13   Sections 541(b)(7) and/or (8) of the Bankruptcy Code.  These

14   provisions do not give rise to security interests in the

15   debtors and are irrelevant to the classification of the

16   claims.

17           "Moreover, Bankruptcy Rule 3001(d) provides that

18   if a security interest in property of the debtor is claimed,

19   the proof of claim shall be accompanied by evidence that the

20   security interest has been perfected."

21           On no level has the proof of claim met the

22   requirements of 3001(c) or (d).  The citations to 541 as the

23   trustee says, are irrelevant.  So I concur with the

24   trustee's view that they're irrelevant.  So I'm at a loss to

25   know how much more -- you know, how many more rounds we can

Page 32

1    go.  I find it difficult to give a fuller explanation of why

2    it's irrelevant, and I would ask you what your evidence is

3    as required by Rule 3001(d) that the security interest has

4    been perfected.

5            MR. SCAROLA:  A number of ones.  First of all,

6    you're telling me that their brief is in a footnote in their

7    reply brief.  Our footnote 8 of our brief discusses the law

8    as to why you can't do that, and it's an age old proposition

9    that you can't make your argument in your reply brief, if

10   that's even an argument and I'm not sure that it is.

11           Again, with regard to the question of what is the

12   evidence, I believe it is a legal argument with respect to

13   Section 541, not addressed.  And again, I asked Mr.

14   Fitzgerald what is your proposition on this, he did not

15   address it at all with me.  He didn't address it in these

16   papers, except in what I think are statements generally

17   asked a position that the proof of claim is inadequate

18   because of the lack of something, whether it's the

19   attachment of something or something else.  He did not

20   address the applicability or not of the statute.

21           In other respects, in the dialogue that he and I

22   had, I asked --

23           THE COURT:  Because you haven't asserted a prima

24   facie claim.  I keep going --

25           MR. SCAROLA:  We are also -- you know, I keep

Page 33

1    trying to get the answer out --

2             THE COURT:  Go ahead.

3             MR. SCAROLA:  -- and I don't seem to.

4             THE COURT:  Go ahead.

5             MR. SCAROLA:  But I'm arguing against a motion

6    that hasn't been made, which is the basic problem I have

7    here, and the basic -- and the principal opposition in our

8    brief.  I'm arguing against something that hasn't been

9    stated by the trustee.  And I don't feel comfortable doing

10   that because that's not a way to serve my clients.  I don't

11   believe that's what the law provides or requires, but what

12   is your evidence.

13            I mean, one aspect of the dialogue with the

14   trustee was where is the discovery.  There were changes to

15   the insurance policies.  Candidly I'm somewhat handicapped

16   in addressing a long dialogue that took place about the

17   insurance policies after the bankruptcy, because on the part

18   of the group with which I work most closely, the person

19   spearheading that was killed in an accident in December of

20   2014.  I've lost the benefit of what learning that person

21   has.

22            We asked for discovery, we would've asked for more

23   pointed discovery, but the trustee's answer was initially

24   through Mr. Fitzpatrick, I'm going to look into giving you,

25   I'm not quite sure what, and then later, we're not going to

Page 34

 1    give you anything.

 2           Now the rules about hearings, which -- and we

 3    discuss this in our brief talk about an evidentiary hearing

 4    after discovery.  There are many changes involving these

 5    insurance policies.  I think there were initially three sets

 6    of policies with three different companies.  There was

 7    review by the IRS.  We didn't even get --

 8           THE COURT:  But you say that they belong to -- you

 9    say --

10           MR. SCAROLA:  -- to that.

11           THE COURT:  You say that -- you, in your proof of

12    claim, you say that they're property of the ESOP, not

13    property of the debtor.  As a matter of law, you cannot have

14    a secured claim without an interest in property of the

15    debtor.

16           So you, yourself, are articulating a basis for a

17    secured claim that is unsustainable.  It is incorrect.  You

18    cannot have a secured claim against property that's not

19    property of the debtor.

20           So within the four corners of your argument --

21           MR. SCAROLA:  I'm sorry.

22           THE COURT:  Have you --

23           MR. SCAROLA:  The insurance policies were property

24    of the debtor, I'm not sure I understand.

25           THE COURT:  You say in your proof of claim, that

Page 35

1    they belong to the ESOP, that they're not property of the

2    debtor.  That's what you say.

3            MR. SCAROLA:  I think I misheard the last sentence

4    that Your Honor spoke or --

5            THE COURT:  Okay.  "Such life insurance policies

6    are determined to be ESOP plan assets in accordance with the

7    provisions of ERISA, and that in accordance with applicable

8    law, such life insurance policies may be used only for the

9    exclusive benefit of the ESOP claimants, and are not

10   property of the debtor's estate."  Your words --

11           MR. SCAROLA:  And if that doesn't give rise to a

12   security --

13           THE COURT:  -- in the proof of claim.

14           MR. SCAROLA:  -- a security interest, and I

15   believe there are cases if we would've had proper briefing

16   which -- property that the trustee or the debtor has custody

17   of, which are not property of the debtor, then they either

18   equated to the status of a security interest or they're

19   treated more than a mere security interest.  The stay should

20   be lifted, and there should be an opportunity to seek back

21   the property that belongs to the debtor.

22           I mean that's -- we're opening a set of issues

23   that the trustee did not brief.  And again, you're putting

24   me in the position of articulating a brief on something as

25   an opponent to a motion that my adversary has not put out --

Page 36

1           THE COURT:  Well, I'm not --

2           MR. SCAROLA:  -- in front of us.  And that is

3    fundamentally what the opposition is.

4           I asked Mr. Fitzpatrick in July, tell us, and he

5    cited the Danberry (ph) case which deals solely with the

6    question of unfunded plans, which is not even an issue.  I

7    said that's not the point, what about what's in the proof of

8    claim.  He said, we disagree with you.  He might have even

9    used the word I fundamentally disagree with you, but I think

10   I quoted it.  And that's it.  And there's no more than that

11   in his papers.

12          And I cannot, because as I said enumerable times

13   now, I cannot do my clients a service by acting as if --

14          THE COURT:  Well, you --

15          MR. SCAROLA:  -- I have just litigated and briefed

16   the issue that was not briefed --

17          THE COURT:  Well, here's the thing.

18          MR. SCAROLA:  -- as we believe needed to be done

19   by the trustee.  And if Your Honor is going to disagree with

20   --

21          THE COURT:  Paragraph 21 --

22          MR. SCAROLA:  -- that, I'm going to lose this

23   motion.

24          THE COURT:  Paragraph 21 --

25          MR. SCAROLA:  I understand.

1          THE COURT:  Paragraph 21 of the initial objection

2     says, "The claims do not provide any evidence that they have

3     any security interest, or that any security interest has

4     been perfected as is required by Rule 2001(d).  None of the

5     claimants have submitted any document evidencing the

6     perfection of a security interest or lien in the assets of

7     LBI.  The only property in which some of the claimants

8     purport to assert a lien are corporate owned life insurance

9     policies, which they assert were purchased by LBI in order

10    to recoup the costs of operating the deferred comp claims.

11          "Even assuming that LBI did purchase COLIs for

12    that purpose, the claimants have not provided, and the

13    trustee is not aware of any support for the theory that they

14    have a security interest in such COLI policies.

15          "Footnote.  In fact, the ESOP agreements state

16    that the payments made under the agreements are unsecured."

17          So --

18          MR. SCAROLA:  Two things.  Your Honor, that

19    doesn't address the 541 issue, number one.  Number two, the

20    footnote relies on exactly what Mr. Fitzpatrick told the

21    district court, they will not rely on, which is a

22    proposition in the ESOP agreement, which is subject to the

23    litigation on the subordination issue, the one to which Your

24    Honor eluded to earlier, that you thought might have been

25    already subject to a trial but it hasn't been reached.

1            There are reasons, and now we're getting way far

2    afield from what's been briefed here, but --

3            THE COURT:  Secured versus unsecured is different

4    than subordinated.  So this is cited --

5            MR. SCAROLA:  Yes, it is.  It is different from

6    subordinated, but the point I'm making is that you quoted a

7    passage of the trustee's brief in which he's referring to a

8    sentence or a clause in the ESOP agreement, and there are

9    various reasons why the adversary proceeding on

10   subordination is asserting essentially as its defenses,

11   because they're a defendant in an adversary proceeding to

12   subordinate, our clients are, that that language is invalid

13   for a number of reasons.

14           I -- all I'm saying is that by opening that door,

15   he's just sucked back in the issues that are, in fact, on

16   appeal with regard to the question of, is this case

17   arbitral.  And that is something that when we saw Judge

18   Ramos on July 29th he said he's not going to do, yet he did

19   it, and now I'm being asked to address it.

20           THE COURT:  Well, I feel like --

21           MR. SCAROLA:  And I feel like I'm again --

22           THE COURT:  -- you know, I feel like you're -- and

23   I feel like you're setting me up for some sort of a

24   procedural error that you're then going to try to make

25   something out of it.  You don't even --

1           MR. SCAROLA:  If I were only so (indiscernible) I

2    would be quite the better lawyer than I am, but.

3           THE COURT:  Well, I think -- my point -- the point

4    that the trustee makes by dropping that into a footnote is

5    that the only documents that you allude to have an

6    indication in them that's directly contrary to what you're

7    saying.  I don't need to, just to be clear, I don't need to

8    reach that point at all because my view is that the trustee

9    is correct, that there has not been compliance with

10   Bankruptcy Rule 3001, and that there has not been the

11   assertion of a prima facie claim on -- there has not been a

12   prima facie assertion of a secured claim for the reasons

13   that I think I've now tried to explain a couple of times.

14           What I'd like to do is to allow Mr. Fitzpatrick an

15   opportunity to respond to some of the things that you said,

16   because they were rather pointed in his direction, in both

17   senses of the word, and then I'll be happy to give you a

18   chance to wrap up.

19           MR. SCAROLA:  Your Honor, at the end of this

20   passage, I just need to again stress that in answering the

21   Court's question, in no respect do I want to be deemed to

22   have stepped back from the position in my brief, which is

23   what was submitted by the trustee as a motion does not

24   constitute a sufficient motion for purposes of --

25           THE COURT:  Okay.  I can't --

Page 40

1          MR. SCAROLA:  -- what they are trying to achieve.

2   I have tried to address the questions as best I could

3   extemporaneously.  It is not hopefully to be quoted back to

4   me as see Scarola gave the answer, or the best answer they

5   had because that will only happen in the face of what we

6   would've thought would've been a proper motion.

7          I understand Your Honor's indication of how you

8   might rule, and nothing about this is an effort by us to

9   either set up some procedural defect because frankly in July

10  and in August when we corresponded with Mr. Fitzpatrick, I

11  say, lay your cards on the table, and he didn't.

12         So while I understand the Court's concern about

13  procedural errors, we're certainly not setting anything up.

14  We made every effort to have Mr. Fitzpatrick even before a

15  motion was made, lay out considerations, some of which may

16  be along lines that you discussed on one issue or another,

17  but they weren't.  They weren't discussed with us.  When I

18  said, let's do this in an orderly way, and they weren't put

19  in his papers.

20         So with respect to, you know, the question that we

21  have in some way been -- I'm going to use the word

22  disingenuous, although I know it hasn't come up, I really

23  don't think that that's the case, and I think we've been --

24         THE COURT:  I don't think anyone's suggesting that

25  you've been disingenuous.

 1              MR. SCAROLA:  It's a reference back to the concept

 2     of my discussions somehow setting up a procedural failure.

 3     I believe the procedural failing is set up in the manner in

 4     which the trustee proceeded.

 5              Your Honor's indications --

 6              THE COURT:  Well, that's going to --

 7              MR. SCAROLA:  -- you'll disagree with that, but

 8     that is --

 9              THE COURT:  Okay.

10              MR. SCAROLA:  -- where we are.

11              THE COURT:  No, I was referring to your reference

12     to the trustee reneging, if you will, on a representation

13     that had been made to Judge Ramos, and I, of course, have no

14     knowledge of --

15              MR. SCAROLA:  It's in our papers.

16              THE COURT:  -- anything.

17              MR. SCAROLA:  It's in our papers, it's in the

18     declaration that's --

19              THE COURT:  Well, I --

20              MR. SCAROLA:  -- been submitted and it's in our

21     brief.  I mean, I'm just saying it's not something I'm

22     springing, that was discussed in our papers.

23              THE COURT:  Well, I would -- I won't say anymore

24     about that.

25              Mr. Fitzpatrick.

Page 42

1           MR. FITZPATRICK:  Yes, Your Honor.  Just on the

2   procedural point, the -- it is correct that because the

3   motion to withdraw the reference and the arbitration appeal

4   were currently pending before Judge Ramos, I did request a

5   conference, and we had a conference before Judge Ramos

6   before I made this motion in front of Your Honor.

7           We believed frankly that we could have made this

8   motion even without that conference because the matters were

9   separate.  But I just thought it was a common sense thing to

10  do.

11          THE COURT:  Sure.  I would have -- you know, with

12  respect to the motion to withdraw the reference, I proceed

13  under the rubric of until the district court tells me to

14  stop I keep going.  And I think the district understands

15  that and I have had no communication with Judge Ramos.

16          With respect to the appeal, it's a fair question.

17  I probably would have asked the question of you, as to

18  whether or not I ought to proceed given the pendency of the

19  appeal on the arbitration.

20          MR. FITZPATRICK:  Yes.  And our position on that

21  is that you can because the only issue that is being argued,

22  that is subject to arbitration is the subordination issue.

23  And the arbitration clause itself says that the things that

24  -- refers to the subordination issue and not the secured

25  issue.  And so that would've been our answer had Your Honor

Page 43

1    asked.

2            We also just candidly felt that because the

3    motions were pending before Judge Ramos that a conference

4    was appropriate, and we have attached the transcript of that

5    conference to our papers.

6            THE COURT:  Yes, okay.

7            MR. FITZPATRICK:  I -- the only representation I

8    believe I made was that the issues of subordination and

9    secured versus unsecured are different, which I stand by.

10           In terms of the merits, candidly I think Your

11   Honor and Mr. Scarola discussed anything -- any points I

12   would have made on reply.  If Your Honor has questions, I'm

13   happy to address them, but that is our position, that

14   Bankruptcy Rules 3001(c) and (d) haven't been complied with

15   by the proof of claim.  And so there is no security interest

16   here.

17           The issues with respect to 541, as Your Honor

18   said, don't have anything to do with security interests, and

19   that's our position.  Thank you, Your Honor.

20           THE COURT:  Okay.  All right.  Mr. Scarola, any

21   further comments?

22           MR. SCAROLA:  No, Your Honor.

23           THE COURT:  All right.  Well, I'm going to grant

24   the trustee's motion to reclassify for the reasons I think

25   that I have extensively explained here today on the hearing.

Page 44

1    So I will ask the trustee to prepare an order and to share

2    it with Mr. Scarola and the transcript will stand as the

3    reasons for the Court's ruling.

4              All right?  Thank you all very much.

5              All right.  I think we now move into some of the

6    adversary proceeding pre-trial conferences.

7              I have LBSF versus Longwood.

8              Good morning.

9              MR. BENNETT:  Good morning, Your Honor, Joshua

10   Bennett from Paul Hastings on behalf Lehman Brothers

11   Holdings, Inc. as the plan administrator for Lehman Brothers

12   Special Financing, Inc.

13             There are two adversary proceedings for which

14   we're counsel that are on the record today.  They're both

15   substantially similar matters.  Counsel is the same in both

16   parties, the transactions at issue are virtually identical.

17             Just very briefly, both of them relate to interest

18   rate swaps that were terminated by Lehman's counterparty

19   upon the bankruptcy, and the dispute is about the

20   termination payment.

21             I believe Your Honor has familiarity with these,

22   because there are several other --

23             THE COURT:  Yes.

24             MR. BENNETT:  -- termination interest rate --

25             THE COURT:  Quite a few.

Page 45

1          MR. BENNETT:  Okay.  The issues in both of these

2     matters are that upon the termination, the counterparties

3     did the market quotation process as is required by the four

4     corners of the interest rate swap and the market quotation

5     failed.  And based on that failure, the counterparty

6     determined that its loss payment was equal to zero.  We

7     believe that's contrary to law, we believe it's contrary to

8     the contract, and we believe that the loss payments should

9     have been in the range of $2 million in one of the matters

10    and roughly $6 million in the other.

11          THE COURT:  Is Longwood at Oakmont a non-profit, a

12    hospital, a governmental entity?

13          MR. BENNETT:  Yes.  I'm sure they can answer that

14    question better than I can.

15          THE COURT:  Okay.

16          MR. BENNETT:  But both the defendants in the two

17    cases are non-profit charitable organizations.  Both are

18    involved in old age homes and old age facilities, senior

19    care in the Pennsylvania area.  I believe they're both

20    affiliate -- not necessarily corporate relatives, but

21    affiliated through an old age care network in the

22    Pennsylvania area.  And the --

23          THE COURT:  All right.  And have there been -- has

24    there been any ADR or any settlement discussions?

25          MR. BENNETT:  There was ADR certainly years ago,

Page 46

1   obviously it did not result in a resolution of the matter.

2   Both actions were effectively stayed pursuant to agreements.

3          THE COURT:  Right.

4          MR. BENNETT:  That was lifted when we -- when

5   Lehman terminated the stipulation, shortly after file these

6   proceedings, they were filed -- both complaints were filed

7   on September 15th.  Both answers were filed on Friday,

8   October 30th.  We've had several discussions, several

9   successful good effective efficient discussions with defense

10  counsel in good faith.  For the last couple of days, we've

11  been trying to work out a scheduling order.  We know Your

12  Honor's position based on some of the other matters that you

13  want to move these along as quickly as possible.

14         THE COURT:  Right.

15         MR. BENNETT:  As plaintiffs will be happy to do

16  so.  What we proposed recently to defense counsel was a

17  scheduling order based on the model in the Lehman versus

18  Commonwealth of Massachusetts matter.  It's a scheduling

19  order that you so ordered about six weeks ago.

20         THE COURT:  Okay.

21         MR. BENNETT:  Essentially the same items and the

22  same time period.  We added a little more time in light of

23  some holidays that are coming up.  We are very close.  I

24  think there's roughly two or three items depending on how

25  you shake it out that we're still in some discussions with.

1          I discussed it with defense counsel this morning

2     before coming into this courtroom, so we're very close.  I

3     believe both sides --

4          THE COURT:  Is it your concept that the -- that

5     these two matters are going to proceed in tandem because of

6     the common element of the advisor or are they just going to

7     -- that's neither here nor there?

8          MR. BENNETT:  We would like them to proceed in

9     tandem.  We believe the scheduling items should be the same

10    dates.  One of issues that may or may not be outstanding is

11    precisely that, and I'll leave it to my counterparty to

12    respond to.

13         THE COURT:  Okay.

14         MR. BENNETT:  There are similarities.  I believe

15    the same documents, you know, can be produced in one, and

16    can be marked for -- you know, as if production in the

17    other, and many of the witnesses, if not most of the

18    witnesses, will be --

19         THE COURT:  Okay.  All right.

20         MR. BENNETT:  -- identical in both matters.

21         THE COURT:  Thank you.  All right.

22         MR. LAMPL:  Good morning, Your Honor.

23         THE COURT:  Good morning.

24         MR. LAMPL:  David Lampl, Leech Tishman Fuscaldot

25    and Lampl, Pittsburgh, Pennsylvania, and my partner, David

Page 48

1    Weist (ph) is here with me today.

2              THE COURT:  And you're here for both matters?

3              MR. LAMPL:  Yes, Your Honor.

4              THE COURT:  Okay.

5              MR. LAMPL:  Both Presbyterian SeniorCare and

6    Longwood are -- Presbyterian SeniorCare is a faith based

7    charitable organization providing senior care assisted

8    living facilities in western Pennsylvania.

9              THE COURT:  Okay.

10             MR. LAMPL:  Longwood is a separate entity, but

11   they are affiliated in the sense that they are both again

12   not for profit charitable organizations --

13             THE COURT:  Okay.

14             MR. LAMPL:  -- providing senior care services to

15   the elderly.

16             We represent both defendants.  We have been served

17   with the complaints.  We asked for an extension of time to

18   file those answers, and we were granted a two week extension

19   of time.  We did work diligently to file the answers in

20   these matters.  Those were filed on Friday.  On Friday

21   afternoon, Mr. Bennett circulated a proposed scheduling

22   order.  We circulated on Monday an order which we modeled

23   after a very similar case which is pending before Your Honor

24   in the Mirabella matter, which is also a senior care

25   facility on the west coast.

Page 49

1          There are some interesting overlaps between these

2     matters we believe.  But as Mr. Bennett represented, we are

3     very close to working out a scheduling order.  We do need to

4     have some input from our clients, given the timing of the

5     answer, and our travel schedules in getting here today.

6          We have some --

7          THE COURT:  It's a nice day to be in New York,

8     though.

9          MR. LAMPL:  A nice day to be in New York, yes,

10    Your Honor.

11         THE COURT:  It would've been nicer if we were

12    having a ticker tape parade for the Mets, but that's a

13    different story.

14         MR. LAMPL:  Right.  As a side note, last year I

15    was in San Francisco at this time when the Giants had their

16    ticker tape parade, so I thought maybe the same would happen

17    in New York, but not to be.

18         And we're, of course, disappointed that the

19    Pirates only made it to the wild card game and did not

20    proceed beyond that.

21         THE COURT:  There's always next year, right?

22         MR. LAMPL:  Always next year.  Always next year.

23         So, Your Honor, again, we're close.  One of the

24    fundamental allegations of the complaint is that somehow

25    these two charitable entities by following the advice of

Page 50

1   their professional advisors somehow corrupted the

2   marketplace, and therefore, we think it may be imperative

3   for us to depose the 11 or 12 referenced market makers that

4   were solicited to make a market quotation for or given an

5   offer to assume the position that Lehman Brothers Special

6   Finance had in this interest rate swap agreement, so that we

7   can refute this fundamental allegation that somehow this was

8   the springboard or the cascade of bad faith allegations that

9   have been made in the complaint.

10          So again, our defendants are not sophisticated

11  corporate, you know, for profit entities, and they find

12  themselves in this world of interest rate derivatives, as

13  opposed to the protection that they thought they were buying

14  by those agreements.

15          THE COURT:  Right.  I mean I think that, you know,

16  it's no with great joy that these claims are pursued against

17  non-profits and governmental entities.  Unfortunately, there

18  are a lot of them, and I think that it came probably as an

19  unhappy surprise that what was viewed as financial

20  protection, could possibly turn in this way.  So I

21  appreciate kind of the level of -- particular level of

22  unhappiness with being faced with these claims.

23          Nonetheless, the trustee has a fiduciary duty and

24  has to proceed, and this isn't the first time where there's

25  been an allegation that the termination and the market

Page 51

1    quotation process was not conducted in a manner that's

2    consistent with what the ISDA requires.  So we'll just have

3    to get to the bottom of it.

4            MR. LAMPL:  Right.  And we'll have to deal -- and

5    that is the allegation we obviously with our financial

6    advisors believe differently and that's what will be before

7    Your Honor to decide.

8            THE COURT:  Do you think that there is any benefit

9    before you embark on what's going to be expensive litigation

10   for everybody, that you already mentioned, you know,

11   deposing the referenced market makers, there will have to be

12   experts.  Is there any benefit to sitting down with a

13   mediator?

14           MR. LAMPL:  Your Honor, the clients, prior to our

15   involvement, did participate in the mediation process that

16   had been established.

17           THE COURT:  Uh-huh.

18           MR. LAMPL:  Whether there would be some benefit in

19   perhaps with a newly or a different mediator, there may be.

20   But I don't think we're at that point yet.  And it's

21   something --

22           THE COURT:  Okay.

23           MR. LAMPL:  -- that I think we can explore as we -

24   -

25           THE COURT:  Okay.

1          MR. LAMPL:  -- delve into this.

2          THE COURT:  All right.  So are you contemplating a

3     stipulation that culminates in a trial date?

4          MR. LAMPL:  Your Honor, I think our contemplation

5     is that we will submit an order which would then I think

6     after all discovery is completed, report back to Your Honor.

7     And I believe the proposal is for Your Honor at your

8     discretion to schedule another pre-trial conference, then,

9     of course, set a trial date at that point.

10          THE COURT:  Give me a rough idea of the time

11     period you're looking at because we're now in the world of -

12     - we're booking, we're booking trials.

13          MR. LAMPL:  Right.  I think the proposed order,

14     Your Honor, is for all discovery to be completed roughly by

15     May of next year.

16          THE COURT:  May of 2016.

17          MR. LAMPL:  Of 2016.  That was the proposal.  We

18     may tweak that within a few days, certainly not months, you

19     know, maybe a month at most or two.  So somewhere in that

20     time frame, Your Honor.  And then at the end of the -- that

21     time frame and the exchange of expert reports, it is

22     contemplated, at least under the proposal, that Your Honor

23     would then set at your discretion a pretrial conference.

24          THE COURT:  Okay.  I mean, off the top of my head,

25     I already know that I have two weeks at the end of September

Page 53

1    booked for a trial.  So the spaces are going like hot cakes.

2    So, you know -- so October of next year is still a

3    possibility, early December is still a possibility.  Give

4    some thought as you move toward that goal.  We certainly

5    don't have to give a view today of how much time you would

6    need, bearing in the mind the maximum, that lawyers are

7    always wrong when they estimate time.  And whether or not,

8    to that point, my custom and practice is to let the

9    attorneys be the drivers of how much time they need.  The

10   alternative, of course, is to have a timed trial and have a

11   set number of days, and have the parties divide up the trial

12   time.

13          If that's preferable to you folks, I'm happy to do

14   that as well.  So -- but it's -- that's just kind of like

15   far in the future.

16          MR. LAMPL:  And quite candidly, I'm sure the

17   determination of how much time we will need will be

18   developed as we go through the discovery process so that

19   while --

20          THE COURT:  Right, right.

21          MR. LAMPL:  -- whether we need to bring in as

22   witnesses the reference market makers or one or two as a

23   sampling or not.

24          THE COURT:  Okay.

25          MR. LAMPL:  You know, that may streamline the

1    process, but I don't think we'll know that --

2             THE COURT:  Right.

3             MR. LAMPL:  -- until we get further along.

4             THE COURT:  All right.  So I'll wait to hear from

5    you with -- once you've agreed on an order and we'll get

6    that on the docket, and you'll let me know if at any point

7    you need our help or you decide that you want to have a

8    session with a mediator, I'd be happy to make some

9    suggestions on --

10            MR. LAMPL:  We appreciate that --

11            THE COURT:  -- someone who might be able to help.

12            MR. LAMPL:  -- Your Honor, and we will take you up

13   on that.

14            THE COURT:  All right.  Thank you very much.

15            Okay.  I think that leaves us with -- is that it?

16   Is there another one?

17            MR. BENNETT:  Thank you, Your Honor.

18            THE COURT:  Thank you.  I think that's it.  Yeah,

19   is anyone here on Allied World Assurance versus LB Rose

20   Ranch?

21        (No response)

22            THE COURT:  Okay.  That's it.

23   (Proceedings concluded at 11:12 AM)

24                      * * * * *

25

Page 55

1                        I N D E X

2

3                      R U L I N G S

4    IDENTIFICATION                                    PAGE

5    Adversary proceeding: 08-01420-scc Lehman          43

6    Brothers, Inc., Doc #12656 Trustee's Motion to

7    Reclassify Certain Substantively identical

8    Deferred Compensation Claims as Unsecured General

9    Creditor Claims

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATE

2    I, Sheila G. Orms, certify that the foregoing is a true and

3    accurate transcript from the official electronic sound

4    recording.

5    Shelia G. Orms

6    _____

7    SHEILA ORMS, APPROVED TRANSCRIBER

8

9    DATED:  November 5, 2015

10

11

12

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501