Evans Prieston, Esq. 3062098
James W. Brody, Esq. 212967
Tracy L. Henderson, Esq. 252888
American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
(415) 878-0300

*Attorneys for Gateway Funding Diversified Mortgage Services, L.P., First Mortgage Corporation, Bank of Commerce  Mortgage ("BCM"), Apex Home Loans, Inc., and Hartland Mortgage Centers, Inc. and Pacor Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **LEHMAN BROTHERS HOLDINGS., et al.,** | **Case No. 08-13555-scc** |
| Debtors. | |

**RESPONSE OF GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P., FIRST MORTGAGE CORPORATION, BANK OF COMMERCE MORTGAGE, APEX HOME LOANS, INC., AND HARTLAND MORTGAGE CENTERS, INC., AND PACOR MORTGAGE CORPORATON TO MOTION IN AID OF ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR INDEMNIFICATION CLAIMS OF THE DEBTORS AGAINST LOAN SELLERS**

## TABLE OF CONTENTS

I.     INTRODUCTION……………………………………………………………………..…1

II.    THIS MOTION IS FATALLY DEFICIENT AND MUST BE DENIED BECAUSE
       IT IS UNSUPPORTED BY ANY EVIDENCE THAT COMPLETE STRANGERS
       TO THE UNDERLYING TRANSACTIONS OR AGREEMENTS SHOULD BE
       REQUIRED TO MEDIATE CLAIMS AGAINST OTHER ENTITIES; EXHIBIT A
       TO THE MOTION MUST BE STRIKEN AS CONCLUSORY, ARGUMENTATIVE
       AND LACKING FOUNDATION  …………………………………...………………………….3

III.   THE CONCLUSORY ASSERTIONS MADE IN EXHIBIT A, EVEN IF ACCEPTED
       AS TRUE, WOULD NOT GIVE RISE TO SUCCESSOR LIABILITY UNDER
       APPLICABLE NEW YORK LAW…………………………………….………………………6

       A.     First Mortgage Corp. and Freedom Mortgage Corp.,…………………………………7

       B.     Bank of Commerce Mortgage………………………………………………………8

       C.     Nationwide Home Mortgage, Inc. and Apex Home Loans, Inc………………………9

       D.     Arlington Capital Mortgage Corp. and Gateway Funding
              Diversified Mortgage Services, L.P……………………………………………………10

       E      Hartland Mortgage Centers, Inc. and Pacor Mortgage Corp…………………………...13

IV.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER
       THIS CONTESTED MATTER OR *IN PERSONAM* JURISDICTION OVER
       THE ALLEGED SUCCESSORS………………………………………………………..14

       A.     LBHI Has Not Satisfied the "Close Nexus" Test for Establishing
              Subject Matter Jurisdiction.........…………………………………………………14

       B.     The Alleged Successors' Due Process Rights Would Be Violated If This Court
              Exercised Personal Jurisdiction Over Them………………………………….....…18

V.     CONCLUSION………………………………………………………………………….24

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009) .................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 555 (2007) (Fed. R. Civ. P. 8(a)(2) ............................... 15

*Boilermaker-Blacksmith Nat. Pension Fund v. Gendron*,
  96 F. Supp. 2d 1202, 1216 (D. Kan. 2000) ......................................... 19

*Bozel*,
  434 B.R. at *97-98 ............................................................................. 19

*Call Center Technologies, Inc. v. Grand Adventures Tour & Travel Pub. Corp.*,
  635 F.3d 48, 52 (2d Cir. 2011) .............................................................. 4

*Cantor v. American Banknote Corp.*,
  2007 WL 3084966, *3 (S.D.N.Y. Oct. 22, 2007) ................................. 13

*Cargo Partner AG v. Albatrans, Inc.*,
  352 F.3d 41, 46 (2d Cir. 2003) ......................................................... 5, 6

*Cargo Partner AG v. Albatrans, Inc.*,
  supra at 46 ......................................................................................... 12

*Cargo Partner AG*,
  352 F.3d at 45-46 ........................................................................ 8, 12

*Cargo Partner, AG*,
  352 F.3d at 47 ................................................................................... 10

*Daimler AG v. Bauman*, ___ U.S. ___,
  134 S.Ct. 746, 751, 755 (2013) .......................................................... 17

*Daimler*,
  134 S.Ct. at 754 ................................................................................. 17

*Doktor v. Werner Co.*,
  762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011) ........................................... 6

*Doktor v. Werner Co.*,
  762 F. Supp. 2d at 499 ................................................................. 11, 12

*Doktor*,
  762 F. Supp. 2d at 499 ........................................................................ 8

*Finkel v. E.A. Technologies, Inc.*,
  2014 WL 436475759 at *11 (E.D.N.Y. Sept. 3, 2014) ........................... 7

*Finkel*,
  2014 WL 436475759 at *11-13 ............................................................. 9

*Gucci America, Inc. v. Weixing Li*,
  768 F.3d 122, 142, n. 21 (2d Cir. 2014) .............................................. 16

*Guo Jin v. EBI, Inc.*,
  2008 WL 896192 at *2 (E.D.N.Y. March 31, 2008) ............................. 17

*Heights v. U.S. Electrical Tool Co.*,
  138 A.D.2d 369, 370, 525 N.Y.S.2d 653 (2d Dep't 1988) ...................... 4

*Heights*,
  138 A.D.2d at 370 .............................................................................. 20

*In re Bozel SA*,
  434 B.R. 86, 97-98, 100-01 (S.D.N.Y. 2010) ................................................................ 18
*In re DPH Holdings Corp.*,
  448 Fed. Appx. 134, 136-37 (2d Cir. 2011) ................................................................ 15
*In re General Media, Inc.*,
  335 B.R. 66, 74 (S.D.N.Y. 2005) ................................................................................. 13
*In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 204-15 (S.D.N.Y. 2002) .................... 16
*In re Indicon*,
  499 B.R. 395, 400 (D. Conn. 2013) ............................................................................. 14
*In re McGuire*,
  450 B.R. 68, 71-73 (D.N.J. 2011) .................................................................................. 3
*In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 557-58 (S.D.N.Y. 2011) ................... 15
*In re New England Nat., LLC*,
  2012 WL 3987648, *6 (Bankr. D. Conn. Sept. 11, 2012) ............................................ 14
*In re Petrie Retail, Inc.*,
  304 F.3d 223, 229-230 (2d Cir. 2002) ......................................................................... 15
*In re Sosa*,
  277 B.R. 263, 264 (Bankr. D.R.I. 2011) ...................................................................... 16
*In re Zumbrum*,
  88 B.R. 250, 252 (9th Cir. BAP 1988) ......................................................................... 21
*J.T. Moran Fin. Corp. v. American Consol. Fin. Corp.*,
  124 B.R. 931, 934 (S.D.N.Y. 1991) ............................................................................. 19
*Ladjevardian*,
  431 F. Supp. at 839-40 ......................................................................................... 8, 12
*Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*,
  785 F.3d 96 (3d Cir. 2015) ........................................................................................... 9
*Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*,
  989 F. Supp. 2d 411 (E.D. Pa. 2013) ............................................................................ 9
*Lehman Bros. Holdings, Inc.*,
  989 F. Supp. 2d at *434-35 ........................................................................................ 10
*Lehman Bros. Holdings, Inc.*,
  989 F. Supp. 2d at *436-37 ........................................................................................ 11
*Lehman Bros. Holdings, Inc.*,
  989 F. Supp. 2d at 439 ................................................................................................. 9
*Levy v. Kosher Overseers Ass'n of America, Inc.*,
  104 F.3d 38, 41 (2d Cir 1997) .................................................................................... 10
*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
  119 F.3d 935, 946-948 (11th Cir. 1997) ..................................................................... 18
*Republic of Panama*,
  119 F.3d at 942 ......................................................................................................... 19
*Republic of Panama*,
  119 F.3d at 946 ......................................................................................................... 19
*Sargeant Farms, Inc.*,
  224 B.R. 842, 844 (Bankr. M.D. Fla. 1998) ............................................................... 16
*Schumacher v. Richards Shear Co., Inc.*,
  59 N.Y.2d 239, 245, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983) ................................. 6
*State Farm Fire & Cas. Co. v. Main Bros. Oil Co.*
  (2012)  101 A.D.3d 1575, 1577 ................................................................................... 6

*State Farm Fire & Cas. Co. v. Main Bros. Oil Co.,*
  *supra,* at 1577........................................................................................................... 12
*Ta Chong Bank Ltd. v. Hitachi High Technologies America, Inc.,*
  610 F.3d 1063, 1068 (9th Cir. 2010) .................................................................... 16
*Travelers Indemnity Co. v. Bailey,*
  557 U.S. 137, 151 (2009)........................................................................................ 15
*U.S. S.E.C. v. Sharef,*
  924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013)........................................................... 19
*Walden v. Fiore,* ___ U.S. ___,
  134 S.Ct. 1115, 1121 (2014).................................................................................. 17
*Woods v. Holy Cross Hospital,*
  591 F.2d 1164, 1176-77 (5th Cir. 1979) .............................................................. 21
*Zoological Soc. of Buffalo, Inc. v. CarvedRock, LLC,*
  2011 WL 6329872 (W.D.N.Y. Dec. 19, 2011.).................................................... 18
*Zoological Soc. of Buffalo, Inc. v. CarvedRock, LLC,*
  2011 WL 6329929 at *3 (W.D.N.Y. Oct. 12, 2011)............................................ 18

## Rules

Fed. R. Bankr. P. 7004..................................................................................... 16, 19
Fed. R. Bankr. P. 7004(d) .................................................................................... 19
Fed. R. Bankr. P. 7012(b) .................................................................................... 15
Fed. R. Bankr. P. 9014......................................................................................... 21
Fed. R. Bankr. P. 9017........................................................................................... 3
Fed. R. Civ. P. 12(b) ............................................................................................ 15
Fed. R. Civ. P. 25(c) ............................................................................................ 14
N.Y. DCD. Law §§ 270, 273 ............................................................................ 8, 12
New York Debtor and Creditor Law § 273 .......................................................... 7
Rule 7004 ............................................................................................................. 21

## Treatises

*Bankruptcy, National. ed.*, ¶ 19:127.1 ................................................................ 3
Fed. R. Bankr. P. 9006(d) ...................................................................................... 3
Fitzgerald, Gonzalez, & Walrath, *Bankruptcy, National ed.: The Rutter Group Practice Guide*
  (The Rutter Group 2015), ¶¶ 19:40, 19:135............................................................ 3

## I.      INTRODUCTION

Gateway Funding Diversified Mortgage Services, L.P., First Mortgage Corporation[1], Bank of Commerce  Mortgage ("BCM"), Apex Home Loans, Inc., and Hartland Mortgage Centers, Inc. and Pacor Mortgage Corporation[2] ("Alleged Successors") are five of the 54 entities that Lehman Brothers Holdings, Inc. ("LBHI"), as Plan Administrator, is attempting to compel to participate in a mandatory mediation of indemnification claims it purports to have been assigned by Lehman Brothers Bank, FSB ("LBB"), for alleged breaches of representations and warranties of various Loan Purchase or Broker Agreements("Agreements").  LBHI's claims do not directly exist against these entities, which are complete strangers to the Agreements and to the underlying transactions.  The claims actually exist against *other* sellers of certain mortgage loans that LBB purchased, and it is those sellers which LBHI purports to have privity of contract by way of a purported assignment of the Agreements from LBB to LBHI.  The Alleged Successors are not in privity with either LBHI or its assignor, were possibly not even in business at the time of the alleged transactions between LBB and the sellers, did not sell any loans to LBB, and have not been served with a complaint or joined in any adversary proceedings brought to prosecute these claims.  Nevertheless, LBHI's seeks to enforce this Court's July 18, 2014 ADR Order against them, mandating that these complete strangers to LBHI's claims to appear in New York to negotiate liability for claims against *other* entities, of which they have no knowledge, under threat of sanctions, based exclusively on unsupported inferences that these entities could possibly be liable to LBHI under one of the four exceptions to the successor liability general rule.

LBHI contends that the Court would be warranted in granting this relief based on LBHI's mere belief, and conjecture, that there *may* be facts that take these strangers to these Agreements and transactions, or the Alleged Successors, outside the reach of the general rule that a purchaser

---

[1] First Mortgage is opposing the motion as to the claim that Freedom Mortgage is its successor.

[2] Hartland and Pacor are jointly opposing the motion as to the claim that Pacor is Hartland's successor.

of assets does not assume the seller's liability and make each of them directly liable for LBHI's claims against an alleged predecessor or the actual mortgage loan seller. LBHI's motion fails to establish with admissible evidence that there is sufficient grounds to compel these strangers to the transactions to participate in mediation. In fact, in its motion LBHI admits that it does not possess sufficient facts to "conclusively determine the existence of successor liability." Notwithstanding its own failure of proof, LBHI urges the Court to hale the Alleged Successors into this forum on the basis that, after they have expended considerable expense, they can *then* assert a "generalized defense based on successor liability law" in the mediation. This is classically putting the cart before the horse and is a shameless attempt at an end run around due process.

LBHI's motion fundamentally misunderstands the law and burdens of proof applicable here. LBHI bears the affirmative burden of proving successor liability in a contested matter and, pursuant to the Federal Rules of Evidence and Federal Rules of Bankruptcy Procedure, it is required to do so through facts supported by admissible evidence. Absent such a factual showing, the Alleged Successors are complete strangers to LBB's claims for alleged breaches and should no more answer to them than any other entity in the United States not properly established to be successor in interest. Thus, as to these strangers and alleged Successors, the Court's exercise of subject matter jurisdiction over this contested matter and *in personam* jurisdiction would be in excess of the Court's powers and an infringement of their due process rights under the Fifth Amendment to the U.S. Constitution.

For these reasons, explained more fully below, the Alleged Successors respectfully request that this Court deny LBHI's Motion in Aid of Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers ("LBHI's Motion").

II.    **THIS MOTION IS FATALLY DEFICIENT AND MUST BE DENIED BECAUSE IT IS UNSUPPORTED BY ANY EVIDENCE THAT COMPLETE STRANGERS TO THE UNDERLYING TRANSACTIONS OR AGREEMENTS SHOULD BE REQUIRED TO MEDIATE CLAIMS AGAINST OTHER ENTITIES; EXHIBIT A TO THE MOTION MUST    BE    STRIKEN    AS    CONCLUSORY, ARGUMENTATIVE AND LACKING FOUNDATION**

LBHI brought this contested matter by a motion. Under Fed. R. Bankr. P. 9017, the Federal Rules of Evidence apply to all proceedings in the bankruptcy court, including contested matters. "Thus, all motions involving factual issues must include a declaration proving the facts in issue by admissible evidence." Fitzgerald, Gonzalez, & Walrath, *Bankruptcy, National ed.: The Rutter Group Practice Guide* (The Rutter Group 2015), ¶¶ 19:40, 19:135 ("A motion involving factual contentions (most do) must include admissible evidence establishing the relevant facts to meet the burden of proof"); Fed. R. Bankr. P. 9006(d) (affidavits or declarations under penalty of perjury supporting a motion must be filed and served with the motion). Factual contentions raised in a memorandum of points and authorities are argument and do not constitute evidence. *Bankruptcy, National. ed.*, ¶ 19:127.1. Where a motion attempts to argue relevant facts in its memorandum of points and authorities, but fails to include a declaration proving those facts, the motion may be opposed on the ground that it is not supported by admissible evidence. *Id*. at ¶ 19:222.[3]

LBHI's motion is fatally flawed on this very ground and should be denied. The availability of the relief LBHI seeks, an order compelling the Alleged Successors to participate in a mandatory mediation of LBB's claims, turns on a factual showing that LBHI bears the burden to make. LBHI must prove that each Alleged Successor can be held liable as the successor of a seller of an allegedly defective mortgage loan purchased by LBB from a

---

[3] See, e.g., *In re McGuire*, 450 B.R. 68, 71-73 (D.N.J. 2011) (where defendant in adversary proceeding moved for relief from default entered against him, Court denied motion on ground that is was not supported by any proper evidence; self-styled "Verified Application" filed in support of motion, in lieu of brief and supporting declarations under penalty of perjury, was defective because it was not made under penalty of perjury and made factual assertions in the third person and on information and belief suggesting that they were not within defendant's personal knowledge).

completely different entity.  As the Second Circuit stated in *Call Center Technologies, Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 52 (2d Cir. 2011):  "[b]ecause the 'general rule' is that a purchaser of assets does not assume the predecessor's liability, it follows that the *proponent of successor liability* must offer proof that one of the aforementioned exceptions to the general rule applies."  (Emphasis added); see also *Heights v. U.S. Electrical Tool Co.*, 138 A.D.2d 369, 370, 525 N.Y.S.2d 653 (2d Dep't 1988) (dismissing complaint where plaintiff failed to show how defendant could be liable as corporate successor).  Despite the fact-intensive nature of this showing, LBHI's motion is devoid of evidentiary support, including even mere declarations under penalty of perjury.

In lieu of introducing admissible evidence (or any evidence at all), LBHI's motion makes naked assertions, based on mere belief, that the Alleged Successors "may" meet one of the four exceptions to the general rule stated above. (LBHI's Motion, p. 7, ¶ 17) ("Based on LBHI's initial investigation, LBHI *believes* that each of the Successors set forth in Exhibit A is or *may* be liable for the related Seller's debts and obligations in accordance with applicable state successor liability law"; (emphasis added).  LBHI also accompanies its motion with a self-styled "Exhibit A," in which LBHI claims tentatively to have reached certain factual conclusions concerning each Alleged Successor's relationship with a seller of an allegedly defective mortgage loan.[4] Exhibit A is sheer, conclusory, unsubstantiated argument and should be disregarded.  It is riddled with vague assertions, lacking any factual foundation, that certain entities "purchased or *otherwise* merged" with others. (Emphasis added.)  Furthermore, each entry under the column entitled "Links Between Counterparty and Potential Successor" is prefaced by the argumentative assertion that "[i]nformation by LBHI indicates the following . . ."  Since the source and nature

---

[4] LBHI admits in its motion that it "cannot conclusively determine the existence of successor liability prior to the ADR process or the initiation of litigation" and has merely "discovered indicia giving rise to reasonable grounds to assert that certain Successors may be legally responsible for the liability of certain sellers."  (LBHI's Motion, p. 5, ¶ 16.)

of this information is undisclosed, it is impossible to determine whether it satisfies the requirements of the Federal Rules of Evidence, as it must.

LBHI cannot be permitted to make an end-run around the Federal Rules of Evidence, as incorporated by the Federal Rules of Bankruptcy Procedure and plainly applicable here.  Simply, the key difference here - from the jurisdictional attacks on the original sellers in privity with LBHI's assignor, which the Court did not find persuasive is that LBHI fails to prove facts to establish that these complete strangers to the transactions between LBHI's assignor and various mortgage sellers are successors pursuant any exceptions to the general rule that purchasers of assets are not liable.  Thus, its motion should be denied on the ground, standing alone, that is that LBHI's claim of successor liability is not only unsupported by any admissible evidence, but that LBHI has likewise failed to establish jurisdiction over these complete strangers.

### III.    THE CONCLUSORY ASSERTIONS MADE IN EXHIBIT A, EVEN IF ACCEPTED AS TRUE, WOULD NOT GIVE RISE TO SUCCESSOR LIABILITY UNDER APPLICABLE NEW YORK LAW

Assuming, *arguendo*, that this Court had subject matter jurisdiction over this contested matter and personal jurisdiction over the Alleged Successors and assuming, *arguendo*, that the conclusory assertions LBHI made in Exhibit A could be accepted as true, most of the Alleged Successors still would not be liable for LBHI's claims under any of the four exceptions, recognized by the New York courts, to the general rule that a corporation that purchases the assets of another is not liable for the seller's liabilities.[5]  These exceptions are as follows:  (1) the buying corporation expressly or impliedly assumed the selling corporation's debts; (2) there was a *de facto* merger[6] between the buying and selling corporations; (3) the buying corporation was a

---

[5] Substantive New York law is applicable here. New York is the jurisdiction of the ADR Order and the loan purchase agreements between the sellers and LBB state that New York law will govern disputes between the parties.

[6] [T]o find that a de facto merger has occurred there must be [1] a continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; [3] a dissolution of the selling corporation[;] **and** [4] the assumption of liabilities by the purchaser.  *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46 (2d Cir. 2003).  In conducting such an inquiry, courts consider factors such as whether the successor purchased the predecessor's intangible assets such as goodwill, customer lists, accounts

5

mere continuation of the selling corporation, or (4) the transaction was entered into fraudulently

to escape liabilities. *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 245, 451 N.E.2d

195, 464 N.Y.S.2d 437 (1983). None of the supposed "links" between the following sellers and

corresponding Alleged Successors, as set forth in Exhibit A, are sufficient to prove successor

liability under any of these theories.

### A.    First Mortgage Corp. and Freedom Mortgage Corp.

LBHI claims that Freedom Mortgage Corp. is the successor of First Mortgage Corp.

because:

> The original entity, First Mortgage, was purchased by or otherwise merged into
> Freedom. Freedom appears to have continued First Mortgage operations with
> numerous former First Mortgage employees. Ex. A., p. 3.

First, there is no information in this entry to establish that there was a continuity of

ownership after the alleged "purchases" or "mergers" such that the sellers' shareholders became

shareholders of the Alleged Successors or same management, assets or physical location. These

omission preclude LBHI from prevailing against Freedom Mortgage based on the *de facto*

merger and mere continuation exceptions to the general rule against successor liability.[7]

There is also no information from which to conclude that Freedom Mortgage Corp.

expressly or impliedly assumed the corresponding seller's liabilities. There are no agreements

between Freedom Mortgage Corp. and First Mortgage that expressly provide that this Alleged

Successor would be liable for the seller's alleged liabilities related to the mortgage loans that

form the basis of LBHI's current claims.

Finally, no information establishes that the alleged "purchase", which is unsubstantiated,

was lacking fair consideration, which is an essential prerequisite to a constructive fraudulent

---

receivable, trademarks, and records, and whether there was any continuity of ownership, management, employees or the business
in general. *State Farm Fire & Cas. Co. v. Main Bros. Oil Co.*(2012) 101 A.D.3d 1575, 1577
[7] See *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45-46 (2d Cir. 2003); *Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 499
(E.D.N.Y. 2011) (mere continuation theory of successor liability requires plaintiff to prove continuity of ownership).

conveyance under New York Debtor and Creditor Law § 273.  *Finkel v. E.A. Technologies, Inc.*, 2014 WL 436475759 at *11 (E.D.N.Y. Sept. 3, 2014) ("Under § 273 of the DCL, a conveyance by a debtor is deemed constructively fraudulent if (1) it is made without fair consideration and (2) the transferor is insolvent or will be rendered insolvent by the transfer in question"). Similarly, no information creates an inference that the sellers actually intended to hinder, delay, or defraud present or future creditors, including information that the "badges of fraud" were present in the "purchase" transactions. Successor liability then cannot be based on an actual fraudulent conveyance of the sellers' property or assets either.  *Id*. at *12-13.

Finally, LBHI is essentially asking for a *second* mediation as to First Mortgage.  In June 2015, LBHI and First Mortgage mediated the claims on two loans.  LBHI, unhappy with that outcome, is now asking for a second opportunity for a mediation with a stranger entity Freedom as the alleged successor, when First Mortgage, the alleged predecessor, has already complied with their obligations under the ADR Order.  On this basis the request should be denied.

### B.    Bank of Commerce Mortgage.

LBHI claims that Bank of Commerce Mortgage ("BCM") is the successor of Capital Market Funding Inc. ("Capital") because:

> The original entity, Capital Market, was suspended by the Franchise Tax Board. Capital Market was purchased by or otherwise merged into BCM, which continued to operate an office at capital Market's former address and with its former employees.  Capital Market's former owner and officer or director, as well as another former officer or director of Capial Market, continued as managers with BCM. Ex. A., p. 4.

LBHI has constructive knowledge that these facts are incorrect.  According to public record from the State of California Bureau of Real Estate ("SCBRE"), Commerce Home Mortgage, Inc., f/k/a BCM has no affiliation with Capital.  In fact, according to the same source SCBRE, Land Home Financial Services, Inc., ("Land Home"), which is an active corporation, has been a dba as Capital Market Funding and both which lack any connection to BCM.  Even if assuming

*arguendo* that LBHI could establish a connection, since Land Home remains an active corporation, the *de facto* merger and mere continuation exceptions do not apply here. They both require that the selling corporation be dissolved. *Cargo Partner AG*, 352 F.3d at 45-46; *Doktor*, 762 F. Supp. 2d at 499. The absence of any admissible evidence of a transfer of Capital's property or assets to BCM also rules out a constructive or actual fraudulent conveyance. N.Y. DCD. Law §§ 270, 273 (requiring a "conveyance" for a fraudulent transfer, which is defined as including "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance"). Lastly, successor liability cannot be based on BCM's express or implied assumption of Capital's liabilities as there is no evidence of any agreement between them, pursuant to which BCM assumed Capital's liabilities, and any conduct or representations by BCM that indicated its intention to do so. *Ladjevardian*, 431 F. Supp. at 839-40.

### C.    Nationwide Home Mortgage, Inc. and Apex Home Loans, Inc.

LBHI claims that Apex Home Loans, Inc. is the successor of Nationwide Home Mortgage, Inc. because:

> The original entity, NHM, was forfeited. NHM merged into Apex, which now operates with NHM's former phone number. NHM's former President is now the Chairman of Apex, and NHM's former registered agent is now the Chief Operating Officer of Apex. Ex. A., p. 5.

Since this entry does not state that NHM has been dissolved, rather than merely forfeited, and that there is a continuity of ownership post-merger, the *de facto* merger exception does not apply. *Cargo Partner AG*, 352 F.3d at 45-46. There is also no information that establishes the existence of an agreement, pursuant to which Apex expressly assumed NHM's potential liabilities related to the mortgage loans that form the basis of LBB's claims against NHM, or conduct or representations that indicate Apex's intention to assume to do. *Ladjevardian*, 431 F. Supp. at 839-40. Therefore, successor liability cannot be based on Apex's express or implied assumption

of NHM's liabilities.  Lastly, there is no information upon which to find a constructive or actual fraudulent conveyance of NHM's property or assets, i.e., that the transaction between NHM and Apex was consummated without an exchange of fair consideration or that sufficient "badges of fraud" were present to give rise to an inference of fraud.  *Finkel*, 2014 WL 436475759 at *11-13.

### D.    Arlington Capital Mortgage Corp. and Gateway Funding Diversified Mortgage Services, L.P.

LBHI claims that Gateway Funding Diversified Mortgage Services, L.P. is the successor of Arlington Capital Mortgage Corp. because Arlington was "acquired by Gateway in 2008" and "[i]n 2013 the District Court for the Eastern District of Pennsylvania found that Gateway had successor liability for ACMC."   Ex. A, p. 1. LBHI does not identify the Pennsylvania district court decision that it argues has a preclusive effect here, but the Alleged Successors presume it is *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*, 989 F. Supp. 2d 411 (E.D. Pa. 2013), aff'd, *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*, 785 F.3d 96 (3d Cir. 2015).   That decision sets forth the Pennsylvania district court's findings of fact and conclusions of law after a bench trial on LBHI's claims against Gateway, as Arlington's alleged successor-in-interest, arising from Arlington's alleged breaches of its loan purchase agreement with LBB in connection with four particular residential mortgage loans.  Among its conclusions of law, the Court found that there was a *de facto* merger between Gateway and Arlington that made Gateway liable, as Arlington's successor, for Arlington's alleged breaches of the loan purchase agreement.  *Lehman Bros. Holdings, Inc.*, 989 F. Supp. 2d at 439.

Under the doctrine of collateral estoppel, or issue preclusion, "when an action between two parties terminates in a valid judgment, a later action between the parties may be affected . . . and possibly barred, . . . even though it involves a different claim or cause of action." *Levy v.*

9

*Kosher Overseers Ass'n of America, Inc.*, 104 F.3d 38, 41 (2d Cir 1997) (decision of the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office did not have a preclusive effect in a subsequent lawsuit claiming violations of the Lanham Act because the legal standards applied by the TTAB were not identical to those that governed the Lanham Act claims). In order to apply the doctrine of collateral estoppel to bar litigation of an issue: (1) the issues in both proceedings must be identical; (2) the issue in the prior proceeding must have been actually litigated and actually decided; (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits. *Id*. The doctrine cannot be invoked here because LBHI cannot satisfy the threshold requirement that the issues decided by the Pennsylvania district court are identical to the issues presented in this contested matter.

The Pennsylvania district court's decision that there was a *de facto* merger of Arlington and Gateway was based on Pennsylvania law, which departs from New York law on *de facto* mergers in at least two significant ways. First, the Pennsylvania district court stated: "[a]lthough Pennsylvania law requires 'some sort of continuation of the stockholders' ownership,' this continuity of ownership need not be evidenced by an exchange of stock," and "may take the form of obligations, cash, property, or rights in lieu of shares in the new or surviving corporation." *Lehman Bros. Holdings, Inc.*, 989 F. Supp. 2d at *434-35. On that basis, the Pennsylvania district court held that the continuity of ownership factor was satisfied, even though Arlington's shareholders did not receive Gateway stock or partnership interests , because they were entitled to share in Gateway's profits pursuant to certain employment and noncompetition agreements. *Id*. at *434-36. This conclusion is contrary to New York law. On the continuity of ownership factor, the Second Circuit in *Cargo Partner, AG*, 352 F.3d at 47, applying New York law, equated "continuity of ownership" with "continuity of stockholders"

10

and held that this factor was not met by allegations that the selling corporation's sole shareholder was given a contractual interest to share in the purchasing entity's profits to be generated using the seller's former assets. This contractual arrangement "establishes neither continued 'ownership' nor 'stockholdings'." *Id.* at 43-44, 47.

Second, the Pennsylvania district court stated that for a *de facto* merger to occur, under Pennsylvania law, "a corporation need not completely cease to exist . . . this factor . . . [is] satisfied when the predecessor corporation does not dissolve, but is reduced to an assetless shell." *Lehman Bros. Holdings, Inc.*, 989 F. Supp. 2d at *436-37. Applying that standard, the Pennsylvania district court found that the third factor in the *de factor* merger analysis was met even though Arlington did not formally dissolve, did not cease all business activities, and continued to exist as an entity that filed tax returns and defended law suits. *Id.* at 437. By contrast, New York law requires the selling corporation to dissolve before a *de facto* merger can be found to have occurred. For example, in *Doktor v. Werner Co.*, 762 F. Supp. 2d at 499, the district court applied New York law to rule out successor liability based on the *de facto* merger and mere continuation exceptions where the seller continued to exist, albeit as a liquidated trust. The Court stated: "[w]here, as here, 'the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable.' " *Id.*

Finally, the Court's decision in Pennsylvania hinged on the relative agreements in place with respect to each loan rendering the analysis dependent on the loan files and relative agreements. That fact intensive evidence simply has not been established here by way of the cursory information provided in Exhibit A.

Since the legal standards applied by the Pennsylvania district court to hold Gateway liable as Arlington's successor are not identical to the legal standards to be applied in this

contested matter and, thus, a different outcome could result in this Court, the Pennsylvania district court's finding that a *de facto* merger occurred between Arlington and Gateway cannot be given a preclusive effect here.

### E    Hartland Mortgage Centers, Inc. and Pacor Mortgage Corp.

LBHI claims that Pacor Mortgage Corp. is the successor of Hartland Mortgage Centers, Inc. because:

> The original entity, Hartland, is still listed as an active corporation. However, Hartland's website is expired, and it appears that Pacor has continued Hartland's operations. Several managers and employees of Hartland are listed as managers and employees of Pacor, and Pacor is operating a branch at the address Hartland listed in the Broker Agreement. Ex. A., p. 4.

Since Hartland remains an active corporation, the de facto merger and mere continuation exceptions do not apply here. They both require that the selling corporation be dissolved. Cargo Partner AG, 352 F.3d at 45-46; Doktor, 762 F. Supp. 2d at 499. The absence of a transfer of Hartland's property or assets to Pacor also rules out a constructive or actual fraudulent conveyance. N.Y. DCD. Law §§ 270, 273 (requiring a "conveyance" for a fraudulent transfer, which is defined as including "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance"). Simply obtaining a defunct and non-producing entity's employees without transfer of stock, exchange of consideration for items such as goodwill, customer lists, accounts receivable, trademarks, and records, use of assets, or any assumption of liabilities by Pacor does not a successor in interest make. Lastly, successor liability cannot be based on Pacor's express or implied assumption of Hartland's liabilities, as there is no express agreement between them nor any conduct or representations by Pacor that indicated its intention to do so. *Ladjevardian*, 431 F. Supp. at 839-40; *State Farm Fire & Cas. Co. v. Main Bros. Oil Co., supra,* at 1577; *Cargo Partner AG v. Albatrans, Inc.*, supra at 46.

12

IV.    **THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THIS CONTESTED MATTER OR** *IN PERSONAM* **JURISDICTION OVER THE ALLEGED SUCCESSORS**

A.    **LBHI Has Not Satisfied the "Close Nexus" Test for Establishing Subject Matter Jurisdiction**

A party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements:  (1) the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, or consummation of the confirmed plan, and (2) the plan must provide for the retention of jurisdiction over the dispute.  *Cantor v. American Banknote Corp.*, 2007 WL 3084966, *3 (S.D.N.Y. Oct. 22, 2007) (where confirmation order and reorganization plan merely authorized debtor to enter into agreement with plaintiff entitling him to bring action against debtor for employment benefits, district court held that bankruptcy court lacked post-confirmation subject matter jurisdiction over plaintiff's action for benefits since agreement was not part of reorganization plan and action did not require interpretation of plan.)  Here, neither requirement is met.

In an attempt to satisfy the first factor, LBHI argues that the ADR Order is encompassed by the confirmed Modified Third Amended Plan of Reorganization of Lehman Brothers Holding, Inc. and Its Affiliated Debtors ("Confirmed Plan") effective on March 6, 2012.  Even assuming that the ADR Order has a close nexus to the Confirmed Plan, LBHI has not demonstrated how this contested matter affects the meaning, implementation or consummation of the ADR Order, let alone the Confirmed Plan as to these alleged successors.  *In re General Media, Inc.*, 335 B.R. 66, 74 (S.D.N.Y. 2005) ("Broadly speaking, the proceeding must affect some aspect of the plan—its meaning, its implementation or its consummation—to come within the Court's post-confirmation jurisdiction).  LBHI does not ask the Court to construe any language in the ADR Order, as a matter of law.  Rather it asks the Court to resolve factual questions as to whether the

Alleged Successors come within one of the four exceptions to the general rule that a purchaser of assets does not assume the seller's liabilities.

Nor does LBHI seek to implement or consummate the ADR Order or the Confirmed Plan. Even if section 13.8 of the Confirmed Plan can be construed as contemplating and preserving LBHI's assigned claims for breaches of contractual warranties and representations in the loan purchase agreements between the sellers and LBB, the purpose of this contested matter is not to prosecute *those* claims. The simple fact is that none of the Alleged Successors has been joined as a defendant or substituted as a party, pursuant to Fed. R. Civ. P. 25(c), in any action instituted by LBHI, as LBB's assignee, asserting those claims. LBHI fails even to make an affirmative factual showing—as it must to bear its burden of proving subject matter jurisdiction—that there would be grounds for such a joinder or substitution based on a successor liability theory. *In re Indicon*, 499 B.R. 395, 400 (D. Conn. 2013) ("the party asserting the court's subject matter jurisdiction has the burden of proving it by a preponderance of the evidence"). Although "[d]etermining whether the 'close nexus' test has been satisfied is a fact sensitive endeavor," LHBI engages in no factual analysis based on admissible evidence to show that any Alleged Successor has any potential liability for any contract or indemnification claim contemplated by the Confirmed Plan. *In re New England Nat., LLC*, 2012 WL 3987648, *6 (Bankr. D. Conn. Sept. 11, 2012) (bankruptcy court deferred resolving whether it had post-confirmation subject matter jurisdiction over adversary proceeding until parties submitted statements of facts together with supporting evidence regarding whether proceeding had close nexus to bankruptcy plan). LBHI's prolix argument and web of citations to the Confirmed Plan and U.S. Bankruptcy Code do not conceal the real purpose of this contested matter—to hale into the Bankruptcy Court, post-confirmation when the Court's jurisdiction is significantly diminished, third parties who were not involved in the original mortgage loan sale transactions,

have no privity of contract to either LBB or LBHI, may not have even been active at the time of the transactions or involved in any way in the bankruptcy case, any adversary proceeding therein, or any claim preserved by the Confirmed Plan.[8]

Regarding the second factor, whether the Confirmed Plan provides for the retention of jurisdiction over this dispute, LBHI relies on a provision in the order confirming the Confirmed Plan, which it construes as conferring upon the Bankruptcy Court exclusive jurisdiction over LBHI's assigned claims. This argument is a red herring. There are no claims currently pending against the Alleged Successors over which this Court retains exclusive jurisdiction pursuant to this provision. Moreover, the complete dearth of facts and evidence presented in this contested matter suggests that LBHI could not state cognizable claims against the Alleged Successors, i.e., claims that would be plausible on their face and raise the right to relief against them above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Fed. R. Civ. P. 8(a)(2) requires a claimant to plead factual matter sufficient to state a claim for relief that is plausible on its face and "raise[s] a right to relief above the speculative level").[9]

Contrary to LBHI's representations, it is not within the Bankruptcy Court's powers under to 11 U.S.C. § 105(a) to entertain this contested matter and compel the Alleged Successors to participate in mandatory mediation. Section 105(a) only authorizes the Court to issue orders or enter judgments that are "necessary or appropriate," adjectives that hardly describe the unwarranted relief requested here. The decisions LBHI cites to support this argument are also

---

[8] The decisions cited by LBHI are all distinguishable or unhelpful to LBHI. In *In re DPH Holdings Corp.*, 448 Fed. Appx. 134, 136-37 (2d Cir. 2011), the Court held that there was a close nexus between a bankruptcy plan and an adversary proceeding seeking declaratory relief where resolution of the adversary proceeding would determine whether claims asserted against the bankruptcy estate would be allowed or disallowed. In *In re Metro-Goldwyn-Mayer Studios Inc.*, 459 B.R. 550, 557-58 (S.D.N.Y. 2011), the Court concluded that it *lacked* post-confirmation subject matter jurisdiction to grant the debtor's motion seeking approval of certain asset purchase transactions. In *re Petrie Retail, Inc.*, 304 F.3d 223, 229-230 (2d Cir. 2002), the Court held that the bankruptcy court had subject matter jurisdiction over a post-confirmation dispute between two non-debtors concerning a pre-petition lease on the ground, inter alia, that the dispute was based on rights established in a bankruptcy-approved sale order, required an interpretation of that order, and sought enforcement of an injunction issued as part of that order, the reorganization plan and the confirmation order. Lastly, in *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009), the Court held that the bankruptcy court had subject matter jurisdiction to interpret the scope of its earlier bar order, incorporated by reference in the reorganization plan of a bankrupt manufacturer of asbestos-based products, to determine whether the order authorized an injunction against claims brought against non-debtor insurers that were not derivative of the debtor's wrongdoing.
[9] Fed. R. Civ. P. 12(b) is applicable to adversary proceedings in the bankruptcy courts under Fed. R. Bankr. P. 7012(b).

unavailing. *In re Hagerstown Fiber Ltd. Partnership*, 277 B.R. 181, 204-15 (S.D.N.Y. 2002), has nothing to do with a bankruptcy court's authority to implement court-approved ADR against third parties who have no involvement in any transaction that could lead to a claim against them. It addressed the permissibility of enforcing a contractual arbitration clause against a debtor in an adversary proceeding. *In re Sosa*, 277 B.R. 263, 264 (Bankr. D.R.I. 2011), and *Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 844 (Bankr. M.D. Fla. 1998), are equally inapposite. The former addressed the joint motion of a debtor and secured creditor to facilitate the resolution of various issues by a mediator, and the latter addressed the permissibility of compelling a secured creditor of the debtor to participate in a loss mitigation program. Unlike the Alleged Successors here, the secured creditors in those cases were both actually subject to the bankruptcy court's equitable jurisdiction. *Ta Chong Bank Ltd. v. Hitachi High Technologies America, Inc.*, 610 F.3d 1063, 1068 (9th Cir. 2010) ("when a creditor files a claim against a bankruptcy estate, the creditor subjects itself to the bankruptcy court's equitable power").

LBHI has failed to satisfy the two-prong "close nexus" test that it admits it must meet to establish this Court's subject matter jurisdiction over this contested action. This deficiency provides another independent reason to deny LBHI's motion.

## B.   The Alleged Successors' Due Process Rights Would Be Violated If This Court Exercised Personal Jurisdiction Over Them

LBHI asserts that this Court has personal jurisdiction over the Alleged Successors because they were served with notice of this motion in the manner required by Fed. R. Bankr. P. 7004 and have minimum contacts with the United States. This argument stands on a shaky foundation as it is unsettled in the Second Circuit whether the federal minimum contacts test applies in this instance. As the Second Circuit stated in *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 142, n. 21 (2d Cir. 2014):

Several of our sister circuits have endorsed the position that, when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole . . . *[t]his Court has not yet decided that issue.*" (Emphasis added.)

Even if the federal minimum contacts test were applicable here and the forum were the United States as a whole, LBHI's motion does not allege any facts, much less introduce admissible evidence, to establish minimum contacts that create general *in personam* jurisdiction over each Alleged Successor, i.e., that the Alleged Successor is domiciled in the United States or has such continuous and systematic contacts with the American forum as to render it essentially at home there. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 751, 755 (2013).[10]  LBHI merely makes the conclusory assertion that "all the Successors do [have minimum contacts with the United States]."  (LBHI's Motion, p. 20, ¶ 43.)  Allegations of jurisdiction, to pass muster, must constitute more than mere legal conclusions or argument restated as statements of fact. *Guo Jin v. EBI, Inc.*, 2008 WL 896192 at *2 (E.D.N.Y. March 31, 2008); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

LBHI's motion also fails to posit facts and admissible evidence sufficient to establish specific jurisdiction over the Alleged Successors.  To establish specific jurisdiction, LBHI must establish that each Alleged Successor's "suit-related conduct" creates the necessary connection to the forum.  *Walden v. Fiore*, ___ U.S. ___, 134 S.Ct. 1115, 1121 (2014) ("To establish specific *in personam* jurisdiction, the defendant's 'suit-related conduct' must create the necessary connection to the forum state").  To establish "suit-related conduct" in the context of this bankruptcy proceeding, LBHI must establish that each Alleged Successor meets one of the

---

[10] A court can exercise two types of personal jurisdiction over a defendant:  general jurisdiction and specific jurisdiction. *Daimler*, 134 S.Ct. at 754.  General or all-purpose jurisdiction permits a court to hear any and all claims against an entity when its affiliations with the state in which the suit is brought are so constant and pervasive as to render it essentially at home in the state.  *Id*. at 751.

four fact-intensive tests for successor liability and, thus, faces potential liability for a seller's allegedly defective mortgage loan.  As previously explained, LBHI has not remotely made such a showing.  LBHI merely states its "belief" based on inconclusive "indicia" that each Alleged Successor may be liable for a seller's obligations, without advancing any relevant facts supported by admissible evidence.  (LBHI's Motion, pp. 5, 7, ¶¶ 16, 17, Ex. A.)  This shortcoming is explained by LBHI's admission that it does not have definitive facts to establish the successor liability of any Alleged Successor.  (LBHI's Motion, p. 5, ¶ 16.)  "[A] plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction." *Zoological Soc. of Buffalo, Inc. v. CarvedRock, LLC*, 2011 WL 6329929 at *3 (W.D.N.Y. Oct. 12, 2011), Report and Recommendation Adopted by *Zoological Soc. of Buffalo, Inc. v. CarvedRock, LLC*, 2011 WL 6329872 (W.D.N.Y. Dec. 19, 2011.)

Even assuming, *arguendo*, that LBHI established the requisite minimum contacts, the Due Process Clause of the Fifth Amendment to the U.S. Constitution would require that the exercise of jurisdiction over the Alleged Successors be "reasonable" and not offend "traditional notions of fair play and substantial justice."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946-948 (11th Cir. 1997) (Due Process Clause of the Fifth Amendment provides an independent constitutional limitation on a court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision; Fifth Amendment inquiry focuses on the "fairness and reasonableness" of requiring defendant to litigate in a particular forum and whether defendant's liberty interest will be burdened by the assertion of jurisdiction in a faraway and inconvenient forum); *In re Bozel SA*, 434 B.R. 86, 97-98, 100-01 (S.D.N.Y. 2010) (engaging in "reasonableness" inquiry to determine whether bankruptcy court had personal jurisdiction over defendant served by

nationwide service of process pursuant to Fed. R. Bankr. P. 7004(d); "[i]n addition to the minimum contacts analysis, due process requires courts to consider the reasonableness of subjecting the defendant to personal jurisdiction to ensure that it comports with 'traditional notions of fair play and substantial justice' ").[11]  This "reasonableness" inquiry requires weighing and balancing several factors, including: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. *Id.* at 100.[12]

The balance of these factors overwhelmingly tilts in favor of finding that it would be unreasonable for the Court to exercise personal jurisdiction over the Alleged Successors and, contrary to LBHI's representations, such an exercise of jurisdiction would run afoul of the Due Process Clause of the Fifth Amendment.  The Alleged Successors would be subjected to the inconvenience and expense of attending a mandatory mediation in a distant forum in which they would be required to attempt to negotiate a settlement in good faith or face sanctions for claims that have not yet been established to even exist.  The Alleged Successors, who are strangers to the underlying agreements and transactions on which LBHI bases its claims and may not have even been in business at the time would simply attend the mediation as required, but not having

---

[11] Where Congress has authorized a federal court to exercise its jurisdiction in matters involving federal questions, the constitutionality of such jurisdiction must be tested under the Due Process Clause of the Fifth Amendment, which restricts Congress, rather than under the Fourteenth Amendment, which limits the power of the states. *Republic of Panama*, 119 F.3d at 942; *Bozel*, 434 B.R. at *97-98.

[12] See also *U.S. S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 548 (S.D.N.Y. 2013) (in action for violations of federal securities laws, which authorize nationwide service of process, exercise of jurisdiction over defendant was unreasonable in light of his lack of geographic ties to the United States, his advanced age, his poor proficiency in English, and forum's diminished interest in adjudicating the matter since Germany already resolved an action against him and the SEC already obtained comprehensive remedies against his employer); *Boilermaker-Blacksmith Nat. Pension Fund v. Gendron*, 96 F. Supp. 2d 1202, 1216 (D. Kan. 2000) (in action for violations of Employment Retirement Income Security Act, which authorizes nationwide service of process, Kansas district court's exercise of personal jurisdiction over individual defendant who resided in New Jersey was reasonable only in light of plaintiffs' evidence that she was alter ego of corporate defendant that failed to make required fringe benefit contributions and that was subject to court's jurisdiction). *J.T. Moran Fin. Corp. v. American Consol. Fin. Corp.*, 124 B.R. 931, 934 (S.D.N.Y. 1991), a decision LBHI cites, was decided before 1996, when Fed. R. Bankr. P. 7004 was amended to add subdivision (f), which states that nationwide service of process is effective to establish personal jurisdiction over a person provided "the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Moran* was also decided before *Republic of Panama*, 119 F.3d at 946, in which the Eleventh Circuit recognized that personal jurisdiction asserted under a federal statute, rather than under a state long-arm statute, does not mean that Fifth Amendment notions of fairness and reasonableness should be discarded.

any true liability based on the filing of an adversary proceeding, enter into a fiscally wasteful proceeding. That burden would be grave and undue since LBHI has failed to make a factual showing that the Alleged Successors have potential liability, under any theory of successor liability, for the allegedly defective mortgage loans at issue in LBHI's ADR proceedings against the sellers. LBHI turns the law on its head when it contends that the relief it seeks would not burden the Alleged Successors because they could assert their "generalized defense based on successor liability law" in the mediation. (LBHI's Motion, p. 21, ¶ 45.) As previously explained, it is firmly settled law that the proponent of successor liability, LBHI here, carries the burden of proving the applicability of one of the exceptions to the general rule that an alleged successor does not assume the seller's liability. *Call Center Technologies, Inc.*, 635 F.3d at 52; *Heights*, 138 A.D.2d at 370. And in the case of one of the seller's First Mortgage, LBHI is asking the Court for a second opportunity at mediation, which was already completed in June 2015. This undue burden for all these strangers to these claims is not outweighed by the Bankruptcy Court's interest in utilizing the expedient alternative dispute resolution process. That interest is diminished, if nonexistent here, where the entities sought to be compelled to participate in mandatory mediation have not been shown to have any potential liability for the claims at issue and because LBHI wants to find alternate entities responsible for the claims that they have not successfully resolved due to financial hardship or other issues with the alleged predecessors.

LBHI argues that due process considerations are not implicated in this contested matter because it does not pose the "threat of a binding order or judgment" on the Alleged Successors. This argument is incomprehensible since the order that LBHI seeks will, by its express terms, bind the Alleged Successors to the provisions of the ADR Order and require them to participate in the mediation of the claims assigned to LBHI in good faith or risk the imposition of sanctions.

In addition, it is apparent from the clear requirements of Fed. R. Bankr. P. 9014 that the fundamental requisites of due process must be satisfied in a contested matter. *In re Zumbrum*, 88 B.R. 250, 252 (9th Cir. BAP 1988) (in light of Rule 9014's clear requirements, "the fundamental requisites of due process must be satisfied in a contested matter in the same manner as in an adversary proceeding"). Subdivisions (a) and (b) of Rule 9014 require that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought" and "[t]he motion shall be served in the manner provided for service of a summons and complaint by Rule 7004," i.e., by nationwide service of process. None of the cases LBHI cites addresses the issue presented here, to wit: the extent to which the Due Process Clause of the Fifth Amendment governs a contested matter in the Bankruptcy Court comparable to this one. *Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1176-77 (5th Cir. 1979), merely addresses the constitutionality of a Florida statute that mandates a medical malpractice claimant to participate in a mediation process prior to bringing an action in court. Unlike the plaintiff in *Wood*, the Alleged Successors, complete strangers, are not challenging the constitutionality of the Bankruptcy Court's ADR procedures; rather they are challenging this Court's exercise of jurisdiction over them, so as to bind them to the ADR Order, on the ground that it would violate the Due Process Clause of the Fifth Amendment.

## V.       CONCLUSION

For all the foregoing reasons, the Alleged Successors, Gateway Funding, First Mortgage, Pacor Mortgage, Bank of Commerce and Apex, respectfully request that this Court deny LBHI's motion and refrain from enforcing the July 18, 2014 ADR Order against them.

Dated: November 16, 2015

/s/ Evans Prieston
Evans Prieston, Esq
James Brody, Esq
Tracy L. Henderson, Esq

American Mortgage Law Group
75 Rowland Way, Suite 350
Novato, CA 94945
thenderson@americanmlg.com
Telephone: (415) 878-0300
Facsimile: (415) 878-0035

*Attorneys for Attorneys for Gateway
Funding Diversified Mortgage Services,
L.P., First Mortgage Corporation[13], Bank of
Commerce  Mortgage ("BCM"), Apex
Home Loans, Inc., and Hartland Mortgage
Centers, Inc. and Pacor Mortgage
Corporation*

---

[13] First Mortgage is opposing the motion as to the claim that Freedom Mortgage is its successor in interest. Gateway, Apex, and BCM are opposing as alleged successors.