Armen Shahinian, Esq.
Scott A. Zuber, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Tel: (973) 530-2046
Fax: (973) 530-2246

-and-

Ronald W. Hopkins, Esq.
GASCOU HOPKINS LLP
9696 Culver Blvd Suite 302
Culver City CA 90232
Tel: (310) 785-9116
Fax: (310) 785-9149
*Attorneys for Arch Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |
|---|---|
| | : Chapter 11 |
| In re: | : |
| | : Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC. et al. | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |
| | x |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

**OPPOSITION OF ARCH INSURANCE COMPANY TO MOTION FOR ORDER
COMPELLING ARBITRATION OF DISPUTES UNDER SETTLEMENT
AGREEMENT BETWEEN DEBTORS AND ARCH INSURANCE COMPANY**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     FACTUAL BACKGROUND............................................................................. 2

        A.      THE SUBMISSION OF TWO ISSUES TO JAMS BY LEHMAN:
                ONE ARISING UNDER THE ARCH/LEHMAN AGREEMENT,
                WHICH HAS AN ARBITRATION CLAUSE, AND ONE
                SEEKING INTERPRETATION OF THE ARCH/CITY
                AGREEMENT, WHICH DOES NOT.................................................... 2

        B.      GENERAL FACTUAL BACKGROUND OF THE RITTER
                RANCH PROJECT................................................................................ 3

III.    OPPOSITION ................................................................................................. 10

        A.      THE BANKRUPTCY COURT DOES NOT HAVE
                JURISDICTION TO HEAR THIS MATTER...................................... 10

                1.      Under the FAA, Jurisdiction to Hear the Motion Lies Only
                        in an   Article III District Court Located in the Central
                        District of California. ................................................................ 11

                2.      This Matter Lacks a Sufficient Post-Confirmation "Close
                        Nexus" to the Lehman Plan to Warrant Continuing
                        Bankruptcy Court Jurisdiction. ................................................ 13

        B.      ARBITRATION IS FUNDAMENTALLY A MATTER OF
                CONTRACT AND IS INTENDED TO RESOLVE ONLY THE
                SPECIFIC DISPUTES THAT THE PARTIES AGREED TO
                SUBMIT TO ARBITRATION. .......................................................... 15

                1.      A Party May Not be Compelled to Arbitrate Unless it Has
                        Voluntarily Consented to Arbitrate the Dispute in Question.... 15

                2.      There is no Evidence that Arch Agreed with the Lehman
                        Parties to Binding Arbitration of the Substantive Scope of
                        the Separate Arch/City Agreement. ......................................... 16

        C.      THE ARBITRATION SUBMISSION LETTER OF THE
                LEHMAN PARTIES REQUESTS THAT THE ARBITRATOR,
                ACTING UNDER THE DISPUTES CLAUSE OF THE
                ARCH/LEHMAN AGREEMENT, MAKE A BINDING
                DETERMINATION OF THE SCOPE, RIGHTS AND
                OBLIGATIONS OF ARCH AND THE CITY UNDER THE
                ARCH/CITY AGREEMENT, WHICH DOES NOT HAVE AN
                ARBITRATION PROVISION AND TO WHICH THE LEHMAN

PARTIES ARE NOT A PARTY. .......................................................................... 16

    1.    The Lehman Parties Have no Standing in the First Instance to Ask the Arbitrator to Determine the Rights and Obligations Between Arch and the City Under the Arch/City Agreement. ............................................................................. 16

    2.    The Lehman Parties are not Third Party Beneficiaries of the Arch/City Agreement. .................................................................. 17

    3.    The Arbitration Clause in the Arch/Lehman Agreement, by its Terms, Applies Only to Interpretation of the Arch/Lehman Agreement, and not the Arch/City Agreement. ............................................................................. 17

    4.    The Lehman Parties Cannot Show that Their Second Claim Falls within the Arbitration Clause of the Arch/Lehman Agreement. ............................................................................. 18

D.    COURTS HAVE THE POWER ON THE FIRST INSTANCE TO MAKE SUBSTANTIVE FINDINGS WITH RESPECT TO THE ARBITRABILITY OF A DISPUTE UNLESS THE PARTIES CLEARLY AND UNMISTAKABLY PROVIDE OTHERWISE. ...................... 20

    1.    A District Court has the Power Under the FAA to Determine Arbitrability, and not the Arbitrator. ....................................... 20

    2.    There is no Clear and Unmistakable Evidence that the Parties Intended the Arbitration Provision in the ARCH/LEHMAN AGREEMENT to Permit the Arbitrator to Determine Arbitrability of Issues Pertaining to the ARCH/CITY AGREEMENT. .................................................. 21

E.    DENIAL OF THIS MOTION TO COMPEL FOR FAILURE TO JOIN AN INDISPENSABLE PARTY IS CONSISTENT WITH FRCP RULE 19 AND CALIFORNIA LAW. ...................................... 23

    1.    The Court May Look to State Law for Joinder Procedures in a Motion to Compel Under the FAA. ......................................... 23

    2.    California Statute Permits Discretion to Refuse to Enforce Even a Valid Agreement Where There is Pending Litigation with a Third Party on the Same Issues. ...................................... 24

    3.    Denial of the Motion is Also Consistent with FRCP RULE 19, as an Indispensable Party is not Subject to the Arbitration Agreement. ............................................................. 25

4.    The Policy Favoring "Piecemeal Litigation" Case Law Cited
by the LEHMAN PARTIES is Inapplicable Because the
Parties Seeking to Compel Arbitration were Not Seeking
Arbitration of Rights Owned by Third Parties ......................................... 26

IV.    CONCLUSION ............................................................................................................... 29

5615379.5

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alpert v Alphagraphics Franchising Inc.*,
    731 F.Supp. 685 (D.N.J. 1990) ............................................................................12

*Arthur Andersen LLP v. Carlisle*,
    556 55 U.S. 634 (2009)........................................................................................23

*AT & T Technologies v. Communications Workers of America*,
    477 U.S. 643, 106 S. Ct. 1451 (1986)...............................................................19, 21

*Bacardi International v. Suarez and Co, Inc.*,
    719 F.3d 1 (1st. Cir. 2013)..................................................................................28

*Baker v. Conoco Pipeline Co.*,
    280 F.Supp.2d 1285 (N.D. Oklahoma 2003) .........................................................26

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)...........................................12

*Boyd v. Home of Legends Inc.*
    981 F. Supp. 1423(N.D. Ala. 1997).....................................................................17

*Collazos v. United States*,
    368 F.3d 190 (2d Cir. 2004)................................................................................12

*Conn-Tech Development Co. v University of Connecticut Education Properties, Inc.*,
    102 F.3d 677 (2d.Cir. 1996)................................................................................27

*Daniels v. Sunrise Senior Living, Inc.*,
    212 Cal. App. 4th 674( 2013) ..............................................................................25

*Edelman v. Poster*,
    894 N.Y.S. 2d 398 (App. Div. 1st Dep't 2010) .....................................................23

*Falise v. American Tobacco Co.*,
    241 B.R. 48 (E.D.N.Y. 1999) .............................................................................14

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995)......................................................................................19, 21

*Fund v. Absolut Balancing Co., Inc.*,
    884 F.Supp.2d 617 (E.D. Mich. 2012)..................................................................18

5615379.5

*Gates v. Gates*,
    168 Vt. 64, 716 A.2d 794 (1998) ........................................................................16

*In re General Media, Inc.*,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ...................................................13, 14, 15

*Grandis Family Partnership Ltd. v. Hess*
    588 F.Supp.2d 1319 (S.D. Fla. 2008) ..............................................................17

*Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*,
    408 F.2d 606 (2d. Cir. 1969) ............................................................................26

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .......................................................................................20, 21

*Intervest International Equities Corporation v. Aberlich*,
    2013 WL 1316997 (E.D. Mich. 2013) ..............................................................26

*Kramer v. Toyota Motor Corp.*
    705 F.3d 1122 (9th Cir. 2013) ..........................................................................17

*Luke v. Gentry Realty, Ltd.*,
    105 Haw. 241 (2004) ........................................................................................15

*Management Recruiters of Albany Inc. v. Management Recruiters International Inc.*,
    643 F.Supp. 750 (N.D.N.Y. 1986) ...................................................................12

*Martin K. Eby Constr. Co. v. City of Arvada*,
    552 F.Supp. 449 (D.Colo. 1981) ......................................................................26

*McDermott v. City of New York*,
    50 N.Y.2d 211, 406 N.E.2d 460 (1980) ..............................................27, 28, 29

*McDonnel Douglas Financial Corp. v Pennsylvania Power and Light Co.*,
    858 F.2d 825 (2d. Cir. 1988) ............................................................................19

*Mutual Benefit Life Insurance Co. v. Zimmerman*
    970 F.2d 899 (3d. Cir. 1992) ............................................................................19

*NASDAQ OMX Group, Inc. v. UBS Securities, LLC*,
    770 F.3d 1010 (2d. Cir. 2014) ..........................................................................18

*New England Energy Inc. v. Keystone Shipping Co.*,
    855 F.2d 1 (1st Cir. 1088) ................................................................................23

*Paine Webber Inc. v. Cohen*
    276 F. 3d 897 (6th. Cir. 2011) ..........................................................................26

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41(2d. Cir. 1996)...................................................................................27

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3rd Cir. 2004) ...........................................................................14

*Sharp Electronics v. Branded Products, Inc.*
    604 F. Supp. 239 (S.D.N.Y. 1984) ...................................................................26

*In re Skyline, Inc.*,
    512 B.R. 159 (S.D.N.Y. 2014), *aff'd,* 601 Fed.Appx. 52 (2d Cir. 2015) ................14

*Soto v. American Honda Motor Co. Inc.*,
    946 F.Supp.2d 949 (N.D. Cal. 2012) ...............................................................18

*State of New York v. Speonk Fuel, Inc.*,
    762 N.Y.2d. 674, 307 A.2d 59 (2003) ..........................................................27, 29

*Stolt-Nielsen S.A. v. Animal Feeds International Corp.*,
    559 U.S. 662 (2010)...................................................................................15, 16

*Superior Energy Service LLC v. Cabinda Gulf Oil Company*,
    2013 WL 6406324 (N.D.Cal. 2013) .................................................................24

*United States v. Dauray*,
    215 F.3d 257 (2d Cir. 2000)...........................................................................12

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997)............................................................................16

*Wynn-Resorts v. Atlantic-Pacific Capital*,
    497 Fed.Appx. 740 (9th Cir. 2012)..................................................................21

**Statutes**

28 U.S.C. §§ 157 and 1334...............................................................................10

28 U.S.C. § 157(b) .........................................................................................10

9 U.S.C. § 4...................................................................................................11

California Civil Code section 1281.2.....................................................................24

California Code of Civil procedure section 1281.2(c) ...............................................24

Subdivision Map Act—California Government Code section 66499 *et seq.* ..................3

**Other Authorities**

Fed.R.Civ.P. 19 .................................................................................................................25, 26, 28

JAMS Rule 11 ............................................................................................................................22

JAMS Rule 11(b) .......................................................................................................................22

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Arch Insurance Company ("Arch") hereby files this opposition to the motion of Lehman

Brothers Holdings, Inc.("LBHI"), its affiliated debtor, Lehman Commercial Paper Inc. ("LCPI"

and sometimes referred to collectively with LBHI and certain affiliates as the "Debtors"), and

their non-debtor affiliates Lehman ALI, Inc. ("LAI") and LV Ritter Ranch LLC (collectively,

with LBHI, LCPI and LAI, the "Lehman Parties") to compel arbitration of certain disputes

between Arch and the Lehman Parties (the "Motion"), and in support thereof respectfully

represents:

## I.    PRELIMINARY STATEMENT

By way of the Motion, the Lehman Parties improperly seek from this Court an order

compelling Arch to submit to arbitration, at JAMS in California, the substantive scope of a 2011

settlement agreement between Arch and the City of Palmdale (California) (the "Arch/City

Agreement") - an agreement to which the Lehman Parties are strangers.    Specifically, the

Lehman Parties: (i) are not signatories to the Arch/City Agreement; (ii) are conferred no rights,

including as third-party beneficiaries, thereunder; and (iii) had no role in negotiating the

Arch/City Agreement, which does not even include an arbitration provision.    And, the dispute is

already the subject of a pending declaratory judgment action in California, to be adjudicated

under California state law.

Further, as a threshold matter, this Court does not have jurisdiction to compel arbitration,

as:  (a) such a request is governed by the Federal Arbitration Act (the "FAA"), which provides

that arbitrability requests are to be presented to a United States district court (not a bankruptcy

court); and, under applicable law, the power of such district court extends only to arbitrations to

be held in the district in which the court is located (a New York court can only direct arbitration

in New York, not in California, as requested by the Lehman Parties); and (b) the matter lacks a

sufficient, post-confirmation "close nexus" to the confirmed Lehman Plan (as defined below), as

required under law governing the limited scope of post-confirmation bankruptcy court

jurisdiction, since the matter sought to be arbitrated does not affect any aspect of the Lehman

Plan – its meaning, implementation or consummation - nor will the outcome of the dispute result

in any meaningful distribution to unsecured creditors of the holding an estimated $362 billion in

claims.

## II.    FACTUAL BACKGROUND[1]

### A.    The Submission of Two Issues to JAMS by Lehman: One Arising Under the Arch/Lehman Agreement, Which has an Arbitration Clause, and One Seeking Interpretation of the Arch/City Agreement, Which Does Not.

The Lehman Parties sought Arch's consent in late July to submit two issues for

arbitration at JAMS under the arbitration clause in the Arch/Lehman Agreement.    The first issue

is whether Arch must consent to the release of collateral pledged by the Lehman Parties to Arch

to secure obligations of the Lehman Parties to Arch under the Arch/Lehman Agreement.    Arch

has agreed and offered to arbitrate this issue with the Lehman Parties, as it is within the

arbitration clause of the Arch/Lehman Agreement and involves an interpretation of that

agreement.    Arch went so far as to suggest an appropriate neutral summary of the issue for the

Arbitrator:    "[a]re the Lehman [P]arties presently entitled under the Settlement Agreement to

demand that Arch consent to release of the $1.5MM in escrowed collateral and to release of the

Deed of Trust."

---

[1]
    All facts referenced in this section are set forth in the attached declaration of one of Arch's attorneys, Ronald W. Hopkins, and the exhibits referenced therein.

2

The second issue which the Lehman Parties sought Arch's consent to submit is a determination of the substantive scope of the construction duties assumed by Arch to the City (as defined below) under the Arch/City Agreement, under which the City and Arch compromised the City's rights under certain subdivision bonds and agreed on a limited scope of work to be undertaken by Arch, with a value of approximately $1,000,000, to satisfy Arch's bond obligations to the City. The letter of the Lehman Parties' counsel Ziehl to JAMS described the second issue as follows: "...whether ARCH is obligated under the **ELR Settlement Agreement**...to complete the Undergrounding Work at its sole expense." The "ELR Settlement Agreement" is the Arch/City Agreement described above, which does not have an arbitration provision and to which the Lehman Parties are not signatories. The scope of Arch's obligations under the ELR Settlement Agreement is the subject of pending litigation in California between the parties to that agreement.

Arch promptly responded to the proposed submission by the Lehman Parties to JAMS in two days—agreeing to arbitrate the first issue—and objecting that the Arbitrator has no jurisdiction under the Arch/Lehman Agreement to make a binding adjudication of the scope of contractual obligations between Arch and the City under the Arch/City Agreement.

**B.    General Factual Background of the Ritter Ranch Project.**

Arch is a surety which issued more than $75,000,000 of subdivision performance bonds on behalf of a subdivision developer—the Suncal Companies—in the mid-2000s. These statutory subdivision performance bonds are required under the Subdivision Map Act—California Government Code section 66499 *et seq*. Generally, the bonds act as security to guaranty to a municipality that a subdivision developer/bond principal will perform the public infrastructure in and around a residential subdivision, and will not sell off the homes without completing the surrounding infrastructure. Each project of the Suncal Companies was organized as a stand-alone

3

limited liability company. The stand-alone entity at issue here was Palmdale Hills Property LLC, and the project was known as "Ritter Ranch".

Certain of the Lehman Parties were the primary investors and sources of funding for the Suncal Companies and their stand-alone entitites. Shortly after the Debtors each filed their respective voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code in September of 2008, the Suncal Companies' stand-alones each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, or were subject to involuntary petitions filed against them, in November of 2008, in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

After the filing of the petition by Palmdale Hills Property LLC, the City of Palmdale ("the City") filed a lawsuit against Arch in Los Angeles County Superior Court in November of 2009 seeking to enforce approximately $7,000,000 in subdivision performance bonds for work on and around Elizabeth Lake Road ("ELR"), a rural road located a few hundred yards adjacent to the subdivision. Arch's primary defense to the lawsuit was that construction of the $7,000,000 in road improvements would constitute economic waste—because no homes had ever been built at Ritter Ranch - nor were they likely to be built for some time in the future given the present depressed housing market for rural satellite subdivisions.

Arch and the City engaged in extensive meetings and negotiations between May of 2010 and January of 2011 to try to resolve the Superior Court lawsuit. These negotiations led to the February 10, 2011 Arch/City Agreement.[2] The City agreed to accept performance by Arch of approximately $1,000,000 of road improvements in exchange for the release of the $7,000,000

---

[2] The February 10, 2011 ARCH-CITY AGREEMENT( the "ELR SETTLEMENT AGREEMENT") is attached as Exhibit D to the September 25, 2011 ARCH-LEHMAN AGREEMENT, which Lehman has submitted to the Court as part of its Exhibit 1.

of road-related bonds. The two types of work to be done were miscellaneous road completion work—bid at $300,000—and street light installation—with a rough estimated cost of approximately $700,000. The City and Arch specifically agreed that Arch would perform the approximately $700,000 of street light installation work, above the $408,000 penal sum limit of the related Street Light Bond—in exchange for the ultimate release of the $7,000,000 in street-related bonds. The Lehman Parties did not have ownership of the Ritter Ranch project at the time of execution of the Arch/City Agreement - and took no part whatsoever in the extensive negotiations between Arch and the City leading to that agreement. The Lehman Parties have never had any ownership interest in the Arch statutory bonds issued in favor of the City.

During the pendency of the Suncal Companies' stand-alone Chapter 11 cases, the Suncal Companies and the Lehman Parties, as primary creditor, proposed rival plans of reorganization of the Suncal Companies stand-alones. Under the plan proposed by the Suncal Companies, the Suncal Companies would maintain ownership of the projects with a new primary investor. Under the Lehman Parties' rival plan, each subdivision project would transfer to a new stand-alone owned and controlled by the Lehman Parties.

The Lehman Parties sought Arch's support for their reorganization plans, as Arch was a significant creditor of the Suncal Companies, which faced claims and lawsuits from municipalities to enforce subdivision performance bonds. The carrot offered by the Lehman Parties to Arch for support of certain of their plans was an agreement to reimburse Arch for expenses incurred in engaging contractors to perform infrastructure work under settlements with municipalities.

The negotiation and resolution of the main issues in the bankruptcies of the Suncal Companies stand-alones was accomplished at a "mega-mediation" conducted at JAMS in Santa

5

Monica, California and Napa, California by The Hon. Daniel Weinstein, Judge retired, in January and February of 2011. The mediation resulted in a settlement in principle between the Lehman Parties and Arch as to certain of the Suncal stand-alone debtors-in-possession.

Under the terms of the settlement in principle, the Lehman Parties would reimburse Arch for approximately $10,000,000 of construction costs that Arch owed to completion contractors for infrastructure work in process at the Suncal Marblehead project. As to Ritter Ranch, the Lehman Parties offered to reimburse Arch for the construction work to be done under the Arch/City Agreement—which at the time was to be accomplished within a few months. The Lehman Parties insisted upon a cap or ceiling to the reimbursement amount related to the ELR work. The cap of $1,100,000 for the Lehman Parties to reimburse Arch was determined by adding the $300,000 bid for the miscellaneous road work and the $700,000 rough estimate of the cost of the street light installation work, and adding a contingency of $100,000.

During the mediation, Patrick Nails, as representative of Arch, and Robert Brusco, as representative of the Lehman Parties, agreed that if disputes arose between Arch and the Lehman Parties regarding the agreements reached at mediation, the parties would submit the disputes to binding arbitration at JAMS by Judge Weinstein. The purpose was to arrive at an expedited resolution to avoid plan confirmation complications if a party attempted to back out of the commitments made during the settlement in principle reached at the mediation.

Ultimately, it took several months to reduce the settlement in principle to the written Arch/Lehman Agreement, which was executed on September 25, 2011. By the time of the closing of the Arch/Lehman Agreement in October of 2011, Arch had already arranged completion of the miscellaneous road work at Ritter Ranch under the Arch/City Agreement. The Lehman Parties reimbursed Arch approximately $200,000 for the road completion costs at the

6

time of closing, leaving about $900,000 for the Lehman Parties to reimburse Arch in the future for the Street Light Installation work.

The Street Light Installation work could not proceed within the time frame called for in the Arch/City Agreement in 2011. Unforeseen by either the City or Arch, the public utility So. Cal Edison ("Edison") required that it control every aspect of the Street Light design process. Edison went through its own internally required three-step process for re-design of the Street Lights three separate times (with mistakes discovered in their early iterations of the plans) and did not produce a buildable set of plans until approximately November of 2014.

In the interim, the Lehman Parties took title to the project under the stand-alone LV Ritter Ranch LLC. After the takeover, Arch met and coordinated with the Lehman Parties and their construction consultants—just as Arch and the Lehman Parties had done on the Suncal Marblehead project—to review the progress of the Edison design. There were numerous meetings between the City, the Lehman Parties, the construction consultants, Edison and Arch, between 2012 and 2014, to review the status and progress of the Edison design. The Lehman Parties, as successor developer, in the meantime, began to arrange for other improvements required by the City of LV Ritter Ranch as new owner to maintain the project's residential development entitlements.

In November of 2014, the Lehman Parties and their construction consultants informed Arch that the latest Edison plans were now buildable; the Lehman Parties also provided Arch with cost estimates for the Arch Street Light work at a total increased cost of about $940,000— beyond the $700,000 rough estimate made in 2010. Under these estimates, Arch's total costs would exceed the remainder of the Lehman Parties' reimbursement duties to Arch by approximately $40,000. Arch agreed to accept this loss and asked the Lehman Parties to arrange

5615379.5

for contracts to review—with the work to be performed by the contractor chosen by the Lehman Parties to perform their other infrastructure work at the project required of the Lehman Parties by the City.

The Lehman Parties also changed project management in November of 2014, replacing the project manager with whom Arch had been meeting between 2012 and 2014. Rather than soliciting contracts for the Street Light Work—the Lehman Parties made a complete about-face in early 2015 and informed Arch that, in their opinion, the Arch/City Agreement requires Arch to perform approximately $2,000,000 in additional undergrounding work for the whole project beyond the approximately $940,000 cost of the Street Light installation. The Lehman Parties offered to split this cost 50/50 with Arch because responsibility was not "clear."

When Arch declined to agree to increase the scope of its obligations to the City as negotiated under the Arch/City Agreement, the Lehman Parties then went to the City to claim that no work was progressing at the project because Arch would not fund its share of the costs. The City then sent Arch a default notice *concerning its rights arising under the Arch/City Agreement.* (Exhibit 1)

The Lehman Parties then sought to initiate a binding arbitration at JAMS of two issues— (1) whether Arch must consent to release of $1.5MM of collateral pledged against the satisfaction of the Lehman Parties' reimbursement duties to Arch under the Arch/Lehman Agreement, and (2) whether Arch's duties to the City **under the Arch/City Agreement** expanded by approximately $2,000,000 more than Arch negotiated with the City in 2010 and 2011, prior to any involvement of the Lehman Parties with the project.

The purpose of the Lehman Parties' submission to arbitration is clear. As noted in their brief, the Lehman Parties are trying to sell and unload this highly undesirable real estate asset.

8

The City has a right under the Subdivision Map Act to require of the Lehman Parties, as project owners, that infrastructure be performed as a condition to maintaining the development entitlements for the project. If the Lehman Parties can transfer any part of their responsibilities as subdivision owner/developer to Arch, then they will obtain more profit upon sale. Thus, the Lehman Parties apparently intend to use the shield of the reimbursement "cap" as a sword to argue that Arch has $2,000,000 more in obligations than it agreed with the City to perform.

The central fallacy to the Lehman Parties' position is that it cannot be demonstrated from any reasonable or objective standard that Arch agreed to a binding arbitration with the Lehman Parties of the substantive scope of the infrastructure construction duties required under the Arch/ City Agreement. The Lehman Parties submit no evidence on this issue.

The procedural status of this matter at JAMS is that, upon receipt of Arch's objections to JAMS jurisdiction as to the second issue (Exhibits 3 and 4), Judge Weinstein required a response brief from the Lehman Parties. Thereafter, JAMS sent both parties its own internal, required stipulation form, in which all parties are required to waive any conflicts of interest to have the same mediator conduct an arbitration who previously conducted a mediation in the same matter. The Lehman Parties signed the stipulation as sent by JAMS. Arch signed the stipulation as to the issue which it agrees to be arbitrable—but with an added caveat that it does not consent to JAMS' jurisdiction to determine the scope of the Arch/City Agreement. (Exhibit 5.) JAMS has indicated it will not appoint the arbitrator unless and until both parties sign the same version of the conflict waiver stipulation for a prior mediator of the same matter to be appointed arbitrator.

In order to resolve the impasse and to seek clarification of its own responsibilities to the City under the Arch/City Agreement, again, to which the Lehman Parties are not signatories— Arch filed a declaratory judgment action against the City in the Central District of California,

9

case No.2:15-cv-07435-FMO-PJWx.(Exhibit 6.)  The City's counsel is in process of accepting

service of the summons and complaint.  The City was unaware of the Lehman Parties' attempt to

seek binding arbitration of the substantive scope of the Arch/City Agreement without the City's

participation.  Arch respectfully contends that this action between the actual and indispensable

parties to the Arch/City Agreement is the only appropriate forum to determine the scope of the

Arch/City Agreement, as opposed to the request for binding arbitration from the Lehman Parties

who are at best interlopers with only a highly remote and tangential interest in the Arch/City

Agreement.

In sum, arbitration is a matter of consent based upon the expectations of the parties.  The

arbitration clause in the Arch/Lehman Agreement cannot reasonably be read by any objective

standard as consent by Arch to binding arbitration of the substantive scope of its duties to the

City arising under the Arch/City Agreement.  The attempt by the Lehman Parties to 'bootstrap'

their arbitration clause onto a separate contract to which they are not parties should not be

countenanced.

### III.    OPPOSITION

**A.    The Bankruptcy Court Does Not Have Jurisdiction to Hear this Matter.**

The Lehman Parties state that "[t]his Court has jurisdiction to consider this matter

pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §

157(b)."  *See* Motion at ¶ 17.  This conclusory statement, however, is insufficient to establish

post-confirmation jurisdiction of the bankruptcy court to compel arbitration.  Sections 157 and

1334 of Title 28 of the United States Code are inapplicable to this Court's jurisdictional analysis.

In order to establish that this Court has (post-confirmation) jurisdiction to hear and rule on the

Motion, the Lehman Parties must show that:  (a) this Court has the authority to hear the Motion

and enter an order compelling arbitration, under the FAA, and (b) a determination on the Motion

10

5615379.5

and the issues raised therein has a "close nexus" to the *Third Amended Joint Chapter 11 Plan of*

*Lehman Brothers Holdings, Inc. and its Affiliated Debtors* (the "Lehman Plan") [Doc. No.

22737], which was confirmed by Order of the Bankruptcy Court (Judge Peck) on December 6,

2011. As set forth below, Arch respectfully submits that this Court does not have the authority

to hear this matter under the FAA, as it is not a district court located in the Central District of

California. Further, the issues raised in the Motion do not have a close nexus to the confirmed

Lehman Plan, necessary to confer post-confirmation jurisdiction, as the resolution of the Motion

does not involve the meaning, interpretation or consummation of the Lehman Plan, nor will it

impact the distributions to general unsecured creditors; rather, the issues raised in the Motion

relate solely to the interpretation of a contract under state law, to which the Lehman Parties are

strangers.

> 1.    Under the FAA, Jurisdiction to Hear the Motion Lies Only in an
>       Article III District Court Located in the Central District of California.

Arch respectfully submits that only a United States District Court located in the Central

District of California may enter an order compelling arbitration in California, as the Lehman

Parties have requested – a New York court cannot direct arbitration outside of New York. The

Lehman Parties concede that their request to compel arbitration is governed by the FAA. *See*

Motion at ¶ 19. Section 4 of the FAA provides, in pertinent part, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration may
> petition any **United States district court** which, save for such
> agreement, would have jurisdiction under Title 28, in a civil action
> or in admiralty of the subject matter of a suit arising out of the
> controversy between the parties, for an order directing that such
> arbitration proceed in the manner provided for in such agreement. .
> . . The hearing and proceedings, under such an agreement, ***shall be***
> ***within the district in which the petition for an order directing***
> ***such arbitration is filed***.

9 U.S.C. § 4 (emphasis added).

11

The court's "starting point in statutory interpretation is the statute's plain meaning . . .".
*United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) (citing *United States v. Piervinanzi*,
23 F.3d 670, 677 (2d Cir. 1994); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122
S.Ct. 941, 151 L.Ed.2d 908 (2002) ("The first step is to determine whether the language at issue
has a plain and unambiguous meaning with regard to the particular dispute in the case.") (internal
quotation marks and citations omitted); *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir.
2004) ("Well-established principles of construction dictate that statutory analysis necessarily
begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there.").
Arch submits that the plain language of Section 4 of the FAA requires that a petition for an order
compelling arbitration be made to a United States district court, not to a bankruptcy court. For
this reason alone, Arch submits that this Court does not have the authority to hear the Motion,
which seeks to compel arbitration under the FAA.

Further, the language of Section 4 of the FAA requires that an arbitration take place in
the same district in which the petition for an order directing such arbitration is filed (in this case,
the Motion). The power of a federal district court to compel arbitration under Section 4 of the
FAA has been held to extend only to arbitrations to be held in the district in which the court is
located. *See, e.g., Management Recruiters of Albany Inc. v. Management Recruiters
International Inc.*, 643 F.Supp. 750 (N.D.N.Y. 1986); *Alpert v Alphagraphics Franchising Inc.*,
731 F.Supp. 685 (D.N.J. 1990). A federal court in New York can only direct an arbitration to be
held in New York, not in California, as the Lehman Parties are seeking. There is no agreement
among the parties to arbitrate in New York and no jurisdiction under the FAA for a New York
district court to enforce any alleged agreement to arbitrate in California.

12

    2.    This Matter Lacks a Sufficient Post-Confirmation "Close Nexus" to the Lehman
           Plan to Warrant Continuing Bankruptcy Court Jurisdiction.

Assuming, *arguendo*, that this Court has the authority to hear this matter under the FAA,

it cannot compel Arch to arbitrate this issue because it lacks the jurisdiction to enter any order

compelling Arch to do so following confirmation of the Lehman Plan.

"[A]ll courts that have addressed the question [of the bankruptcy court's jurisdiction

following plan confirmation] have ruled that once confirmation occurs, the bankruptcy court's

jurisdiction shrinks. *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (citing

*North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir.

1944); *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991)). In *General Media*, Judge

Bernstein stated that:

> [A] party invoking the bankruptcy court's post-confirmation
> jurisdiction ***must*** satisfy two requirements. First, the matter must
> have a "close nexus to the bankruptcy plan or proceeding, as when
> a matter affects the interpretation, implementation, consummation,
> execution, or administration of the confirmed plan or incorporated
> litigation trust agreement." . . . Second, the plan must provide for
> the retention of jurisdiction over the dispute.[3]

*Id.* at 73-74 (emphasis added). In this regard, Judge Bernstein went on to note that:

> [T]he distinction between core and non-core jurisdiction may not
> be particularly relevant after confirmation. Although the cases
> generally focus on "related to" post-confirmation jurisdiction, the
> scope of the post-confirmation jurisdiction mapped out by the case
> law usually meets the definition of a core proceeding. Broadly
> speaking, the proceeding must affect some aspect of the plan—its
> meaning, its implementation or its consummation—to come within
> the Court's post-confirmation jurisdiction. By definition, plan-
> related matters arise only in the context of a chapter 11 bankruptcy
> case.

---

[3] Arch concedes that the Lehman Plan includes language purporting to retain the jurisdiction of this Court on certain
matters; Arch does not concede, however, that the Lehman Plan confers jurisdiction on this Court to hear this
Motion and enter an order compelling arbitration.

*Id.* Where the case has been fully administered and the interests of the creditors will be unaffected by the resolution of the dispute, bankruptcy courts have declined to exercise post-confirmation subject matter jurisdiction. *In re Skyline, Inc.*, 512 B.R. 159, 173 (S.D.N.Y. 2014), *aff'd,* 601 Fed.Appx. 52 (2d Cir. 2015).

In this case, the Lehman Parties cannot show that the Arch/City AGREEMENT bears a close nexus to Lehman Plan. Several factors that have been considered in assessing whether a "close nexus" exists are whether the matter requires the court to interpret the plan, whether any of the proceeds from the dispute will be paid to unsecured creditors, and whether the claims arise under state law. *See General Media*, 335 B.R. at 75; *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168 (3rd Cir. 2004) (analyzing *Falise v. American Tobacco Co.*, 241 B.R. 48, 52 & 55 (E.D.N.Y. 1999)). No factors exist in this matter for finding the bankruptcy court's jurisdiction appropriate. The dispute requires no interpretation of the Lehman Plan. Instead, the issue necessarily involves the interpretation of the Arch/City Agreement, a contract to which the Lehman Parties are not even parties and which involves California state law. The lawsuit Arch filed against the City is a declaratory action to determine Arch's rights under the Arch/City Agreement and the outcome of that action will not result in any meaningful distribution to the Debtors' unsecured creditors. In this regard, Arch notes that the Debtors' represent in the *Debtors' Disclosure Statement For Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code* (the "Disclosure Statement") [Doc. No. 19629] that the they estimate the Allowed Claims (as such term is defined in the Disclosure Statement) against them to be approximately $362 billion. *See* Disclosure Statement at pg. 47. The dispute between Arch and the Lehman Parties involves, at most, $2 million - a *de minimis* amount given the magnitude of the claims against the Debtors.

14

Finally, the issues that the Lehman Parties seek to arbitrate relate solely to California state law claims, which are "typically non-core." *See General Media*, 335 B.R. at 75.

Accordingly, based upon the foregoing, this Court does not have jurisdiction to decide the Motion.

**B.     Arbitration is Fundamentally a Matter of Contract and is Intended to Resolve Only the Specific Disputes that the Parties Agreed to Submit to Arbitration.**

1.     A Party May Not be Compelled to Arbitrate Unless it Has Voluntarily Consented to Arbitrate the Dispute in Question.

Arbitration is a creature or matter of contract. Since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which that party has not agreed to submit. *See, e.g., Luke v. Gentry Realty, Ltd.,* 105 Haw. 241 (2004) (holding that without an agreement to arbitrate, a court may not force parties to engage in arbitration.) In *Stolt-Nielsen S.A. v. Animal Feeds International Corp.,* 559 U.S. 662 (2010), the Court held that a party may not be compelled under the FAA to submit to arbitration unless there is a contractual basis for concluding that the party agreed to do so. The Court stated the general rule on interpretation of arbitration clauses as follows: "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties (citation omitted.) In this endeavor, 'as with any other contract, the parties' intentions control.' (citation omitted.)" *Id.* at 682. The Court went on to state that "[n]othing in the FAA authorizes a court to compel arbitration of any issues, *or by any parties,* that are not already covered by the agreement. 'Arbitration is simply a matter of contract *between the parties*; it is a way to resolve those disputes—but only those disputes that the *parties* have agreed to submit to arbitration (Citation omitted.)'" *Id.* at 683-684 (emphasis added).

The Lehman Parties' position is at war with the foundational FAA principle that arbitration is a matter of consent. Unless authorized by a statute or rule, a court cannot order the

parties to arbitrate their future disputes without a voluntary agreement. *See, e.g., Gates v. Gates*, 168 Vt. 64, 716 A.2d 794 (1998). The arbitration agreement must be entered into voluntarily by all parties involved. *See, e.g., WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997).

        2.     There is no Evidence that Arch Agreed with the Lehman Parties to Binding Arbitration of the Substantive Scope of the Separate Arch/City Agreement.

Just as the plaintiffs in *Stolt-Nielsen* did not consent to arbitration—so here there is no evidence that Arch agreed to submit *the scope of its contract with the City* to binding arbitration under the Arch/Lehman Agreement. There is no statement within the Arch/Lehman Agreement that the arbitration provision applies to interpretation of the Arch/City Agreement itself. The City and Arch did not consent to arbitrate any dispute concerning their separate agreement. The Arch/City Agreement specifically describes resolution of disputes arising under that contract in a court of law, not arbitration.

**C.    The Arbitration Submission Letter of the Lehman Parties Requests that the Arbitrator, Acting Under the Disputes Clause of the Arch/Lehman Agreement, Make a Binding Determination of the Scope, Rights and Obligations of Arch and the City under the Arch/City Agreement, Which Does Not Have an Arbitration Provision and to Which the Lehman Parties are Not a Party.**

        1.     The Lehman Parties Have no Standing in the First Instance to Ask the Arbitrator to Determine the Rights and Obligations Between Arch and the City Under the Arch/City Agreement.

The second issue that the Lehman Parties have submitted to JAMS over Arch's objection is described in Exhibit A to the submission letter to JAMS as follows: "…whether Arch is obligated ***under the ELR Settlement Agreement***, and by reference therein, under the Settlement Agreement, to complete the Undergrounding Work at its sole expense (and if so, whether Arch is entitled to any reimbursement therefor under the Settlement Agreement beyond the ELR Payment Cap Amount of $1.1 million…")(emphasis added). The Arch/City Agreement is a separate contract in which Arch undertook to arrange for completion of two types of subdivision

improvements to the City.  It is axiomatic that one who is not a party to a contract has no

standing to compel arbitration under a contract. *Boyd v. Home of Legends Inc.* 981 F. Supp.

1423(N.D. Ala. 1997); *Kramer v. Toyota Motor Corp.* 705 F.3d 1122 (9th Cir. 2013)

> 2.    The Lehman Parties are not Third Party Beneficiaries of the Arch/City
> Agreement.

The Arch/City Agreement is merely referenced in and attached to the Arch/Lehman

Agreement, and its terms are *not incorporated* into the Arch/Lehman Agreement.  Under New

York law, even a related contract *between the same parties* to a contract with an arbitration

agreement may not be subject to arbitration where the second contract was not incorporated by

reference. *Grandis Family Partnership Ltd. v. Hess* 588 F.Supp.2d 1319 (S.D. Fla. 2008)

(emphasis added).

Further, the Arch/City Agreement states, in explicit terms: "[t]his Agreement is not

intended to create, nor shall it be in any way interpreted or construed to create,  any third party

beneficiary rights in any other person or entity not a Party hereto…" *See* Arch/City Agreement

at ¶ 9. The Lehman Parties have no substantive rights in the Arch/City Agreement.   The

Arch/City Agreement references resolution of disputes arising under that contract in a court of

law.

> 3.    The Arbitration Clause in the Arch/Lehman Agreement, by its Terms, Applies
> Only to Interpretation of the Arch/Lehman Agreement, and not the Arch/City
> Agreement.

Paragraph 13 of the Arch/Lehman Agreement states:

> If the PARTIES cannot resolve any dispute which may arise between them
> concerning the performance, interpretation or enforcement of ***this***
> ***AGREEMENT*** or with any claims arising under this AGREEMENT, the
> PARTIES agree that any such dispute will be submitted to binding
> arbitration at and be administered by the Judicial Arbitration and
> Mediation Service "JAMS") before Judge Daniel Weinstein. . . .

Arch/Lehman Agreement at ¶13 (emphasis added).

5615379.5

In *Soto v. American Honda Motor Co. Inc.*, 946 F.Supp.2d 949 (N.D. Cal. 2012), the Court held that an automobile manufacturer who was *not a signatory* to a sales contract between its subsidiary automobile financer and an automobile purchaser could not compel arbitration of a buyer's products liability claims against it. Here, the situation of the Lehman Parties is even further attenuated. There are no claims against it. The Lehman Parties, at best, have a contingent reimbursement duty to Arch, which has not yet accrued. The Lehman Parties nevertheless attempt to use the Arch/Lehman Agreement as a basis to seek a prospective, affirmative determination of substantive rights which they do not own and which arise under an agreement to which they are not even a signatory.

The dispute resolution procedures in paragraph 13 of the Arch/Lehman Agreement do not, on their face, provide for interpretation of the substantive scope of rights and obligations arising between Arch and the City under the Arch/City Agreement. An arbitration panel may not determine the rights or obligations of non-parties to the arbitration. *Sheet Metal Employers Industry promotion Fund v. Absolut Balancing Co., Inc.*, 884 F.Supp.2d 617 (E.D. Mich. 2012).

4.    The Lehman Parties Cannot Show that Their Second Claim Falls within the Arbitration Clause of the Arch/Lehman Agreement.

In a motion to compel arbitration under the FAA, a party seeking to compel arbitration must show that (a) the parties have entered into a valid agreement to arbitrate, and (b) the claim asserted comes within the *scope* of the arbitration agreement. *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2d. Cir. 2014). Here, Arch does not contest that a valid agreement to arbitrate exists between Arch and the Lehman Parties. Arch contends, however, that the scope of the agreement does not apply to substantive interpretation of Arch's separate contract with a third party. The Lehman Parties do not have derivative rights from the City---because the Arch/City Agreement states that it is *not* a third party beneficiary contract. In

18

general, a non-signatory may not compel arbitration of a contract containing an arbitration clause where it is not a third party beneficiary to a contract. *Mutual Benefit Life Insurance Co. v. Zimmerman* 970 F.2d 899 (3d. Cir. 1992). Here, not only are the Lehman Parties not third party beneficiaries, but the contract on which they seek to compel arbitration does *not* have an arbitration provision.

In *First Options of Chicago v. Kaplan,* 514 U.S. 938 (1995), the Court held that shareholders of an investment company who did not sign an arbitration agreement did not manifest an intent to arbitrate their personal liability to an options maker. The court stated: "…a party can be forced to arbitrate only those issues that it has specifically agreed to submit to arbitration…". *Id.* at 943. In *AT & T Technologies v. Communications Workers of America,* 477 U.S. 643, 106 S. Ct. 1451 (1986)*,* cited by the Lehman Parties, the Court stated*:* "[t]he first principle gleaned from *Trilogy* is that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit (citations omitted).  The axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."

The attached declaration of Patrick Nails, General Counsel for Arch, who negotiated the arbitration clause with Robert Brusco of the Lehman Parties at the 2011 mediation, categorically states that it was not within the expectations of Arch that the binding arbitration provision could be applied to interpret Arch's duties under its contracts with third party bond obligees such as the City.  The Lehman Parties offer no evidence to the contrary.  The criterion for determining whether a particular dispute is in fact arbitrable is the actual intent of the parties in making their agreement to arbitrate. *McDonnel Douglas Financial Corp. v Pennsylvania Power and Light Co.*, 858 F.2d 825 (2d. Cir. 1988)*.*

19

The Lehman Parties seek by way of the submission to arbitration to cause the arbitrator to make a binding determination and interpretation *not* of the Arch/Lehman Agreement, but rather of the scope and technical meaning of Exhibit B to the Arch/City Agreement. That dispute in the first instance is simply not "…any dispute them which may arise between them concerning the performance interpretation or enforcement under this Agreement…" The Arch/City Agreement was negotiated over the course of several months in 2010 and 2011 in meetings at City Hall involving numerous participants—well before the Lehman Parties took title to the project—and totally without any participation by the Lehman Parties (*See Declaration of Ronald W. Hopkins*). Any resolution of a dispute concerning the technical duties under that agreement does not involve any evidence which could be offered by the Lehman Parties (who were not present), and is inherently inappropriate for the expedited procedure provided for in the Arch/Lehman Agreement.

**D.    Courts Have the Power in the First Instance to Make Substantive Findings with Respect to the Arbitrability of a Dispute Unless the Parties Clearly and Unmistakably Provide Otherwise.**

1.    A District Court, and not the Arbitrator, has the Power Under the FAA to Determine Arbitrability

In *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002), the Court stated the general rule as follows:

> This Court has determined that "arbitration is matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." [citations omitted]. Although the Court has also long recognized and enforced a "liberal federal policy favoring arbitration agreements" [citations omitted], it has made clear that there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, *i.e,* the "*question of arbitrability,*" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise. . . . Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. [citations omitted].

> . . . Similarly, a disagreement about whether an arbitration clause
> in a concededly binding contract applies to a particular type of
> controversy is for the court.

Id., at 83-84 (emphasis in original).  In *AT & T Technologies,* the Court stated: "[t]he second

rule, which follows inexorably from the first, is that the question of arbitrability---whether a

collective bargaining agreement creates a duty for the parties to arbitrate the particular

grievance—is undeniably an issue for judicial determination.  Unless the parties clearly and

unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be

decided by the court, not the arbitrator." Id. *at 649.*[4]

2.    There is no Clear and Unmistakable Evidence that the Parties Intended the
Arbitration Provision in the Arch/Lehman Agreement to Permit the Arbitrator to
<u>Determine Arbitrability of Issues Pertaining to the Arch/City Agreement</u>.

In this matter, there is no clear and unmistakable evidence that evinces an intent by the

parties to agree for the arbitrator to determine arbitrability.  As explained in *First Options, supra,*

*"courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear*

*and unmistakable evidence they did so."* 514 U.S. 938, 944 (emphasis added).  The parties did

not specifically agree that JAMS Rules apply, as was the case in *Wynn-Resorts v. Atlantic-*

*Pacific Capital,* 497 Fed.Appx. 740 (9th Cir. 2012)—where the parties specifically incorporated

JAMS Rules and the court found the dispute was "clearly within the agreement".  The parties

here appear to have requested a 48 hour expedited proceeding to seek a quick written opinion

---

[4]
Co-counsel for the Lehman Parties, Weil Gotshal, who drafted the Arch/Lehman Agreement described the issue as follows: "The Supreme court has interpreted these provisions of the FAA to delineate between the respective authority of the courts and arbitrators to rule on various issues.  Matters of 'substantive arbitrability'—'gateway' issues to be resolved by the courts—are narrowly circumscribed, limited only to: (i)whether the dispute falls within the scope of the parties' arbitration agreement..." "The Future of Class Arbitration: Recent Supreme Court Jurisprudence on Arbitration Clause Interpretation and Enforceability" Class Action Monitor, Weil, Gotshal & Manges, July 23, 2013. The Weil Gotshal firm also counsels in the article that one should seek judicial determination of substantive arbitrability and: "To the extent the court declines to address construction of the clause and instead delegates determination of the issue to an arbitrator, the party should object to arbitral resolution of the question each step of the way so as to preserve the issue for judicial review." *Id.,* at 8.

21

from Judge Weinstein as to disputes concerning the interpretation of the commitments made at mediation in the Arch/Lehman Agreement in a proceeding to take place *at* JAMS. Such an expedited proceeding as described in the relevant clause is not stated to be in accordance with JAMS procedural rules and there is no mention of JAMS Rule 11. There is no "clear and unmistakable" agreement to apply JAMS Rule 11.

Similarly, Paragraph 13 drafted by the Lehman Parties does *not* provide for arbitration of all disputes which "arise out of or relate to" the Arch/Lehman Agreement, nor does it apply to "related contracts." Surely, sophisticated counsel such as Weil Gotshal, which drafted the Arch/Lehman Agreement, would have included a provision that the JAMS Rules would apply to interpretation of any "related contracts," had the parties so intended.

Further, even if JAMS Rule 11 were found to be applicable—by its terms it only permits a ruling by the arbitrator on arbitrability of disputes regarding "the scope of the agreement under which arbitration is sought." Rule 11(b) does not permit the arbitrator to make an arbitrability decision concerning the interpretation or substantive scope of a separate agreement involving a third party who is not a party or signatory to the agreement under which arbitration is sought to be compelled. Nevertheless, the Lehman Parties' submission letter asks JAMS to determine Arch's obligations "under the ELR Settlement Agreement."

Paragraph 13 provides for resolution of disputes concerning the interpretation of the Arch/Lehman Agreement. It does not provide a basis for a binding determination of issues concerning the scope of the Arch/City Agreement—specifically the dollar value of the improvements which Arch agreed with the City to provide *to the City* under Exhibit B to the Arch/City Agreement. The Lehman Parties cannot manufacture jurisdiction to force a binding determination of the substantive scope of the Arch/City Agreement by a tribunal which has no

22

jurisdiction over the dispute. A court will not order a party to submit to arbitration absent

evidence of the party's unequivocal intent to arbitrate the relevant dispute and unless the dispute

falls clearly within the class of claims which the parties agreed to refer to arbitration. *Edelman v.*

*Poster,* 894 N.Y.S. 2d 398 (App. Div. 1st Dep't 2010).

**E.    Denial of this Motion to Compel for Failure to Join an Indispensable Party is
       Consistent with F.R.Civ.P. RULE 19 and California Law.**

      1.    The Court May Look to State Law for Joinder Procedures in a Motion to Compel
          Under the FAA.

Federal courts may look to state law authority for guidance on joinder issues where the

FAA is silent on an issue. *New England Energy Inc. v. Keystone Shipping Co.,* 855 F.2d 1 (1st

Cir. 1088). In *Arthur Andersen LLP v. Carlisle,* 556 55 U.S. 634 (2009), the Court held that the

FAA does not "alter background principles of state contract law" and that traditional principles

of state law allow a contract to be enforced by or against non-parties where they have assumed

the contract, incorporated a contract by reference, or become third party beneficiaries. In this

instance, the Lehman Parties neither assumed the Arch/City Agreement, did not incorporate the

contract by reference in the Arch/Lehman Agreement, and the Arch/City Agreement by its terms

states that there are to be no intended third party beneficiaries. But, most importantly, the

referenced contract does not contain an arbitration clause.

There is also no choice of law provision in the Arch/Lehman Agreement. Choice of law

was listed in the heading to paragraph 13 drafted by counsel for the Lehman Parties but not

present in the text. Because the agreement was made in California and to be performed in

California, and the requested arbitration was to take place in California, California law applies.

5615379.5

2.    California Statute Permits Discretion to Refuse to Enforce Even a Valid
Agreement Where There is Pending Litigation with a Third Party on the Same
Issues.

Under California Code of Civil procedure section 1281.2(c) a court has discretion to

refuse to enforce a written arbitration agreement where a signatory already is engaged in

litigation with third parties regarding issues common to the litigation and arbitration.  The court

also has the power to order intervention or joinder of all parties in a single proceeding when (a) a

party to the agreement also is a party to pending litigation with a third party who did not agree to

arbitrate; (2) the pending third party litigation arises out of the same transaction or series of

related transactions as the claim subject to arbitration; and (3) the possibility of conflicting

rulings  on common factual or legal issues exists.

California Civil Code section 1281.2 states, in pertinent part:

On petition of a party to an arbitration agreement alleging the existence of
a written agreement to arbitrate a controversy and that a party thereto
refuses to arbitrate such controversy, the court shall order the petitioner
and the respondent to arbitrate the controversy if it determines that an
agreement to arbitrate the controversy exists, unless it determines that:
…
(c) A party to the arbitration agreement is also a party to a pending court
action or special proceeding with a third party, arising out of the same
transaction or series of transactions and there is a possibility of conflicting
rulings on a common issue of law or fact. For purposes of this section, a
pending court action or special proceeding includes an action or
proceeding initiated by the party refusing to arbitrate after the petition to
arbitrate has been filed, but on or before  the date of hearing of the
petition.

Under California law, a non-signatory such as the City cannot be forced to arbitration under the

Arch/Lehman Agreement under a third party beneficiary or incorporation by reference doctrine.

*Superior Energy Service LLC v. Cabinda Gulf Oil Company,* 2013 WL 6406324 (N.D.Cal.

2013).

24

3.     Denial of the Motion is Also Consistent with FRCP Rule 19, as an Indispensable
Party is not Subject to the Arbitration Agreement.

The City in like manner is an indispensable party to adjudication of the substantive scope

of the rights and obligations arising between Arch and the City under the Arch/City Agreement.

Rule 19 of the Federal Rules of Civil Procedure reads in pertinent part as follows:

"(a) PERSONS REQUIRED TO BE JOINED IF FEASIBLE.

(1)     *Required Party.* A person who is subject to service of process and
whose joinder will not deprive the court of subject-matter jurisdiction
must be joined as a party if:

(A)     In that person's absence, the court cannot accord complete relief
among existing parties; or

(B)     That person claims an interest in the subject matter of the action
and is so situated that disposing of the action in the person's absence may:

(i)     as  a practical matter impair or impede the person's ability to
protect the interest; or

(ii)     leave an existing party subject to a substantial risk of incurring
double, multiple or otherwise inconsistent obligations because of the
interest."

Fed.R.Civ.P. 19.  In this case, the arbitrator has no jurisdiction to make a finding with respect to

the scope of the Arch/City Agreement which would be binding upon the City; and Arch would

be left with a substantial risk of incurring inconsistent obligations to the City and to the Lehman

Parties should the arbitrator so rule.

If a party cannot be joined in an action under Rule 19, "the Court must determine

whether, in equity and good conscience, the action should proceed among the existing parties or

should be dismissed." Fed.R.Civ.P. 19.  Further, a trial court has discretion under California law

to refuse to uphold an arbitration provision if there is a danger of inconsistent rulings on common

issues of fact with a non-arbitrable claim involving a third party.  *Daniels v. Sunrise Senior*

*Living, Inc.,* 212 Cal. App. 4th 674( 2013).

25

In *Intervest International Equities Corporation v. Aberlich*, 2013 WL 1316997 (E.D. Mich. 2013), the Court vacated an arbitration award in an action against two capital management companies under Rule 19—on the grounds that one could not be subject to federal diversity jurisdiction. The court held that the non-diverse party's presence was "essential to confirm or vacate the arbitration award", and that "The court is not convinced it can provide complete relief without MCN's presence."

4.    The Policy Favoring "Piecemeal Litigation" Case Law Cited by the Lehman Parties is Inapplicable Because the Parties Seeking to Compel Arbitration were Not Seeking Arbitration of Rights Owned by Third Parties.

The case law cited by the Lehman Parties for the doctrine that "piecemeal litigation" is permitted under the FAA simply does not involve any situations in which the party moving to compel is seeking an adjudication of the rights *owned by a third party without the third party's participation*. The cited cases all involve situations in which a party is asserting direct contractual rights that it owns itself—but a third party who is not essential to the resolution of the dispute could not be joined. In *Hamilton Life Insurance Co. v. Republic National Life Insurance Co.*, 408 F.2d 606 (2d. Cir. 1969), one insurer sued another on a contract between the two insurers—and a third party insurer ceded part of the risk could not be joined. In *Baker v. Conoco Pipeline Co.*, 280 F.Supp.2d 1285 (N.D. Oklahoma 2003) property owners sued a petroleum pipeline company for damage to property under a contract granting access to the property—but could not join a tree service hired by the pipeline company. In *Paine Webber Inc. v. Cohen* 276 F. 3d 897 (6th. Cir. 2011) a brokerage firm sued a client's executor over a contract between them, and a manager could not be joined. In *Sharp Electronics v. Branded Products, Inc.* 604 F. Supp. 239 (S.D.N.Y. 1984) a manufacturer sued a distributor under their distribution agreement—and a third party tortfeasor could not be joined. In *Martin K. Eby Constr. Co. v. City of Arvada*, 552 F.Supp. 449 (D.Colo. 1981) a construction company sued a City on a

26

construction contract between them—and a third party design consultant tortfeasor could not be joined. In *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41(2d. Cir. 1996)—two partners in a joint venture sued an officer for breach of an employment contract—but a third party to the joint venture did not join as plaintiff. In *Conn-Tech Development Co. v University of Connecticut Education Properties, Inc.*, 102 F.3d 677 (2d.Cir. 1996), a development group sued a university for breach of a master development agreement—but the State could not be joined. The courts upheld the enforceability of arbitration provisions in each instance despite potential further litigation with third parties and the possibility of "piecemeal" results—but in each instance the rights to be adjudicated at the arbitration were direct contract rights *between the two involved contracting parties.* The parties who could not be joined were ancillary parties not "central to resolution of the dispute."

In the current matter, the rights which the Lehman Parties seek to litigate are *owned by the City,* not by the Lehman Parties, and arise from statutory bond duties provided by Arch to the City under the Subdivision Map Act. It is the Lehman Parties whose issues are entirely ancillary to the main dispute, and are not "central to the dispute." They are indemnitors to Arch, with the scope of such indemnity being predicated upon the scope of Arch's obligations under the Arch/City Agreement, which have not yet been adjudicated. In fact, the cause of action for indemnity has not yet even accrued, as accrual will occur upon payment by Arch. "Indemnification claims generally do not accrue for the purpose of the Statute of Limitations until the party seeking indemnification has made payment to the injured person." *McDermott v. City of New York*, 50 N.Y.2d 211, 216, 406 N.E.2d 460, 461 (1980); *see also, State of New York v. Speonk Fuel, Inc.*, 762 N.Y.2d. 674, 307 A.2d 59 (2003). "This principle stems from the nature of indemnification claims and does not vary according to the breach of duty for which

5615379.5

indemnification is sought." *McDermott, supra*. "Since the city's third-party complaint was interposed before payment to plaintiff before the city sustained damage the indemnification cause of action was not time barred." *Id*. Litigation over the scope of those rights and obligations without participation by the City—a non-signatory to the Arch/Lehman Agreement-- obviously exposes Arch to inconsistent results; and it is wholly premature to be arbitrating the scope of indemnity obligations when the cause of action for indemnity has not yet accrued.    It is axiomatic that the City is an indispensable party to litigation of the scope of rights that it solely owns. Under Rule 19 equitable principles, equity and good conscience should not permit a party who is without any ownership of the rights to purport to submit those rights to a binding determination in a forum without the City's presence. The City's substantive rights arise under an agreement under which both Arch and the City did not provide for arbitration.

In *Bacardi International v. Suarez and Co, Inc.*, 719 F.3d 1 (1st. Cir. 2013), the Court ordered the stay of an action in which an indispensable party could not participate in favor of first-filed parallel proceedings. The Court discussed the equitable nature of Rule 19 as follows:

> Rule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit (citations omitted). The Rule provides for dismissal of suits when joinder of a required party is not feasible and that party is indispensable. Fed. R. Civ. P. calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case.

*Id.* at 9.  On the face of the Arch/City Agreement, the rights of the City are "central to the suit" within the meaning of Rule 19.   Under California law, complete relief cannot be afforded without the City's presence in litigation, and permitting the arbitration to proceed between Arch and the Lehman Parties on the scope of the Arch/Lehman Agreement—merely referenced but not incorporated into the Arch/Lehman Agreement—would expose Arch to a substantial risk of inconsistent results and would be wholly premature, as the scope of the indemnity obligation will

28

be the subject of an indemnity claim that has not yet accrued.  *See, Speonk Fuel supra.,
McDermott, supra.*   Under California law, the court has discretion to refuse the petition to
arbitrate—while Arch seeks declaratory relief against the City to determine the scope of the
rights and obligations between the two actual contracting parties-- in its pending action in the
Central District of California.

## IV.    CONCLUSION

The Arch/City Agreement does not have an arbitration clause.  The Lehman Parties are
neither parties to the Arch/City Agreement, nor are they third party beneficiaries of the
agreement.  The Lehman Parties seek to "bootstrap" an arbitration clause in their reimbursement
agreement with Arch to try to compel arbitration of a substantive dispute between third parties.
The arbitration clause in the Arch/Lehman agreement does not provide that the arbitrator has any
authority to decide arbitrability of the scope of the separate Arch/City Agreement, much less do
so in clear and unmistakable language.  Only a District Court in California has authority under
the FAA to determine the merits of this motion.  This court should not countenance the attempt
of the Lehman Parties to manufacture JAMS jurisdiction over this dispute where there is no
binding contractual agreement between the parties, and where substantive rights held by
indispensable third parties not subject to arbitration are at issue.

5615379.5

WHEREFORE, Arch respectfully submits that This Court should either deny the motion

to compel or, alternatively, abstain from deciding the motion due to lack of jurisdiction.


Dated:  November 19, 2015


/s/ Armen Shahinian
Armen Shahinian
Scott A. Zuber
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, New Jersey 07052
Tel: (973) 530-2046
Fax: (973) 530-2246

-and-

Ronald W. Hopkins, Esq.
GASCOU HOPKINS LLP
9696 Culver Blvd Suite 302
Culver City CA 90232
Tel: (310) 785-9116
Fax: (310) 785-9149

*Attorneys for Arch Insurance Company*

30