UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

# DECLARATION OF PATRICK K. NAILS IN SUPPORT OF OPPOSITION TO MOTION FOR ORDER COMPELLING ARBITRATION OF DISPUTES UNDER SETTLEMENT AGREEMENT BETWEEN DEBTORS AND ARCH INSURANCE COMPANY

I, Patrick K. Nails, declare:

1. I am an attorney at law and Senior Vice President, General Counsel and Corporate Secretary for ARCH Insurance Company. My office address is: Arch Insurance Group Inc., 300 Plaza III, 3d Floor, Jersey City, NJ 07311. This declaration is offered in support of ARCH's opposition to the Motion to Compel Arbitration brought by the LEHMAN PARTIES. If called upon to testify in this action, I could and would state the following of my own personal knowledge:

2. ARCH is a performance bond surety who issued several hundred million dollars of subdivision performance bonds on behalf of entities associated with the SUNCAL COMPANIES in the early 2000s. Each subdivision project owned by the principal SUNCAL COMPANIES was organized as a separate stand-alone entity. The entity at issue in this Petition was Palmdale Hills Property LLC, and the subdivision project being developed by Palmdale Hills Property was known as Ritter Ranch.

3. I am informed and believe that some or all of the LEHMAN PARTIES were the primary investor and source of funding for many of the SUNCAL stand-alone entities, including Palmdale Hills Property LLC.

4. The SUNCAL stand-alone entities bonded by ARCH either filed voluntary Chapter 11 reorganization petitions in the United States Bankruptcy Court, Central District of

1

DECLARATION OF PATRICK K. NAILS

California, Santa Ana Division, or had involuntary petitions files by their creditors seeking Chapter 11 reorganization, in approximately November of 2008. These petitions shortly followed the Chapter 11 bankruptcies of certain of the investor LEHMAN ENTITIES filed in New York in September of 2008.

5.  After the SUNCAL entities filed for bankruptcy protection—certain of the public entity obligees on the ARCH bonds, either filed lawsuits against ARCH to enforce the bonds, or made claim on the bonds. The City of Palmdale, an obligee of the ARCH bonds on Ritter Ranch, filed a lawsuit against ARCH to enforce approximately $7,000,000 of the bonds issued by ARCH on behalf of Palmdale Hills property LLC on or about October 29, 2009.

6.  The LEHMAN PARTIES in their status as lenders/investors and ARCH as a surety facing claims on SUNCAL bonds in the face amount of more than $75,000,000-- became significant creditors against many of the SUNCAL stand-alone entities, including Palmdale Hills Property LLC, in their status as debtors-in-possession in the various Chapter 11 proceedings.

7.  During the course of the stand-alone Chapter 11 proceedings—ARCH reached a settlement of a performance bond lawsuit with the City of San Clemente—which called for ARCH to arrange construction of part of a subdivision known as Marblehead, at a cost of approximately $10,000,000. By the time of the first mediation sessions regarding the Chapter 11 proceedings—ARCH was also concluding settlement negotiations with the City of Palmdale regarding its lawsuit on a portion of the Ritter Ranch bonds. The negotiations with the City of Palmdale in 2010 and early 2011 led to a settlement in which ARCH agreed to arrange for the performance of work estimated to be in the amount of approximately $1,000,000 for the City of Palmdale, in exchange for release by the CITY of approximately $7,000,000 of bonds. The LEHMAN PARTIES had no role whatsoever in the settlement by ARCH of the lawsuits by the City obligees San Clemente and Palmdale.

8.  During the course of the Chapter 11 bankruptcy proceedings of these SUNCAL stand-alone entities, the LEHMAN PARTIES and SUNCAL proposed rival plans for reorganization of several of the stand-alones, including Palmdale Hills Property LLC.

2
**DECLARATION OF PATRICK K. NAILS**

9. In order to resolve issues and disputes concerning the rival reorganization plans and various rights and obligations of the parties---a "mega-mediation" was scheduled at JAMS in Santa Monica, California before Retired Judge Weinstein. The mediation sessions occurred in January and February 2011.

10. I was Senior Vice President of ARCH at that time, and the principal representative for ARCH at these negotiations. Robert Brusco, an officer of Lehman Brothers Holdings, was the principal representative for the LEHMAN PARTIES at the mediation.

11. The mediation resulted in a settlement in principle as between ARCH and the LEHMAN PARTIES with respect to several of the stand-alone entities. Generally, ARCH agreed to support the Chapter 11 reorganization plans proposed by the LEHMAN PARTIES in which title to the subdivisions would pass to new stand-alones to be formed by and owned the LEHMAN PARTIES. In consideration for supporting the plans of the LEHMAN PARTIES— the LEHMAN PARTIES agreed to reimburse ARCH for various expenses that ARCH had incurred and would incur in honoring performance bond obligations to public entity claimants or payment bond claims of unpaid contractors pertaining to the SUNCAL stand-alones, including approximately $10,000,000 of reimbursements for construction expenses on the Marblehead project.

12. Under the Settlement Agreement pertaining to Ritter Ranch, the LEHMAN PARTIES agreed to reimburse ARCH up to $1,100,000 for the cost of completing the items of improvement under the prior settlement agreement with the City of Palmdale which were estimated to cost $1,000,000. The LEHMAN PARTIES specifically requested a "cap" or "ceiling" on the reimbursement amount to ARCH. The $1,100,000 reimbursement cap was based upon a cost estimate for the work, plus a small contingency.

13. It ultimately took approximately eight months for the settlements in principle reached at the January-February 2011 mediations to be reduced to written settlement agreements.

14. At the time of the settlement in principle, Mr. Brusco for the LEHMAN PARTIES and I on behalf of ARCH agreed that disputes concerning the interpretation of the

3

**DECLARATION OF PATRICK K. NAILS**

1  settlement in principle between ARCH and the LEHMAN PARTIES would be decided by the
2  JAMS mediator, Hon. Judge Weinstein, Retired.

3      15. I have now been informed that the LEHMAN PARTIES are seeking to submit
4  issues regarding the scope of ARCH's construction duties to the City of Palmdale under ARCH's
5  separate, prior settlement with the CITY to binding arbitration by Judge Weinstein at JAMS, and
6  are alleging that ARCH's financial obligations to the CITY are far greater than the amounts
7  discussed between ARCH and the CITY during the 2010-2011 settlement negotiations. The
8  LEHMAN PARTIES are apparently requesting a binding, expedited arbitration award by Judge
9  Weinstein of the scope of ARCH's construction obligations to the CITY. The LEHMAN
10 PARTIES are not parties to the agreement between ARCH and the CITY of PALMDALE and
11 had no involvement with or knowledge of the settlement negotiations between ARCH and the
12 City—which occurred well prior to the LEHMAN PARTIES taking title to the property. The
13 only issue discussed at the mediation in this regard was the agreement of the LEHMAN
14 PARTIES to reimburse ARCH for construction costs expended by ARCH on the Ritter Ranch
15 project, and the request by the LEHMAN PARTIES for a "cap" or "ceiling" on the amount of the
16 reimbursements.

17     16. There were no discussions whatsoever between ARCH and the LEHMAN
18 PARTIES regarding submission of any disputes between ARCH and the City of Palmdale to
19 binding arbitration at JAMS by Judge Weinstein. ARCH never consented and would never
20 consent to any such request by the LEHMAN PARTIES to agree to JAMS jurisdiction over any
21 disputes concerning interpretation of the ARCH/CITY OF PALMDALE separate settlement
22 agreement. ARCH of course contends that the City of Palmdale is inherently an indispensable
23 party to the resolution of any such disputes. The purpose of the agreement to submit disputes
24 concerning the settlement in principle to JAMS was to be an expedient mechanism in the event a
25 party attempted to back out of the agreements negotiated under the aegis of Judge Weinstein at
26 the mediation. It was absolutely not in the contemplation of the parties at the time of the
27 settlement that the LEHMAN PARTIES could seek binding arbitration at JAMS over any
28

4

**DECLARATION OF PATRICK K. NAILS**

dispute arising from settlement agreements between ARCH and third parties to which the LEHMAN PARTIES were not signatories.

Pursuant to 20 U.S.C. section 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct..

Executed this 30th day of October, 2015, at Jersey City, New Jersey.

_____
Patrick K. Nails

5

**DECLARATION OF PATRICK K. NAILS**