**Presentment Date: November 24, 2015 at 12:00 p.m. (Eastern Time)**
**Objection Deadline: November 24, 2015 at 11:30 a.m. (Eastern Time)**

Bennette D. Kramer
Erik S. Groothuis
Samuel L. Butt
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
(212) 344-5400
bdk@schlamstone.com
egroothuis@schlamstone.com
sbutt@schlamstone.com

*Attorneys for Plaintiffs*

| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>　　　　　　　　　　　　　*Debtors.* | Chapter 11<br><br>Case No.: 08-13555 (SCC)<br><br>(Jointly Administered) |
|---|---|
| MOORE MACRO FUND, LP, MOORE MACRO MARKETS FUND (MASTER), LP, SJL MOORE, LTD., JR MOOR, LP, LM MOORE LP, MF MOORE LO (Formerly MOORE GLOBAL FIXED INCOME FUND (MASTER LP), MOORE GLOBAL INVESTMENTS, LTD., MOORE EMERGING MARKETS FUND (MASTER) LP. MOORE CAPITAL ADVISORS, L.L.C. and TRADE PROCESS CORPORATION,<br>　　　　　　　　　　　　　*Plaintiffs,*<br><br>　　　　　　*-against-*<br>LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC. and LEHMAN BROTHERS COMMERCIAL CORPORATION,<br>　　　　　　　　　　　　　*Defendants.* | Adv. Proc. No.: 14-02021 (SCC) |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' PROPOSED ORDER DISMISSING
<u>CERTAIN COUTERCLAIMS</u>**

Plaintiffs (the "Moore Entities"), by and through their undersigned counsel, hereby submit this objection to the Defendants' Proposed Order Dismissing Certain Counterclaims (the "Proposed Order"), in connection with Defendants' Notice of Presentment, dated November 17, 2015, as follows:

## PRELIMINARY STATEMENT

1. A year-and-a-half ago, the Moore Entities commenced this action seeking a judgment declaring, among other things, that certain contractually mandated payments Plaintiffs made following Defendants' bankruptcy filings complied with the parties' ISDA agreements. Plaintiffs sought this declaration because Defendants abruptly, nearly six years after they had filed for bankruptcy, contended that the Moore Entities owed them tens of millions of dollars more than the Moore Entities had already paid, and Defendants subsequently filed counterclaims in this action asserting those alleged valuation differences as damages.

2. The Moore Entities have always believed, and contended, that Defendants' valuation claims had no merit and were advanced by Defendants solely to inflate the sums at issue in this case, in an effort to cajole Plaintiffs into settlement. Defendants now seek to withdraw their valuation claims, belatedly acknowledging that those claims always lacked merit. Because Defendants have caused the Moore Entities to litigate these meritless claims for eighteen months—at great expense to the Moore Entities, to Defendants' estates (and thus to their creditors), and to the Court—they should not be permitted to withdraw them at this stage without prejudice.

3. This Court should sign the Moore Entities' Proposed Counter-Order, which requires dismissal **with prejudice** of the counterclaims that are the subject of the Proposed Order, and further should direct that the proofs of claim submitted by Moore Macro Fund, LP

("MMF") with respect to Lehman Brothers Commercial Corporation ("LBCC") and, as necessary, Lehman Brothers Holdings, Inc. ("LBHI"), as guarantor (together, the "LBCC Claims"), be allowed and paid. A clean copy of the Proposed Counter-Order is attached hereto as Exhibit 1 and a redline version showing the changes from Defendants' Proposed Order is attached hereto as Exhibit 2.

4. First, dismissal without prejudice is not a right under Fed. R. Civ. P. 41(a)(2). Given the length of the time this action has been pending, together with the significant expenses the Moore Entities have incurred defending the valuation claims, dismissal with prejudice should be ordered. The Moore Entities should not have to face the prospect of defending against such claims a second time.

5. Second, with the valuation claims dismissed, the only basis for Defendants' refusal to allow the LBCC Claims is gone. LBCC has already made distributions to its allowed creditors. There is no longer any reason to treat the LBCC Claims any differently from the claims of LBCC's other undisputed creditors or to delay payment further.

## BACKGROUND

6. The Moore Entities filed their adversary complaint on May 30, 2014, seeking a declaration that Plaintiffs' valuations, assignments and setoffs were valid. (Dkt 1.)[1] Defendants filed an Amended Answer, Counterclaims, and Claims Objections on December 24, 2014 (Dkt. 31), which is the subject of the Proposed Order, and the Moore Entities filed an Answer to the Counterclaims on June 30, 2015 (Dkt. 61).

---

[1] All docket references are to the docket for Adversary Proceeding No. 14-02021 (SCC).

**A.    Valuation**

7.    Defendants alleged, in their Eighth Counterclaim, that the Moore Entities breached the ISDA Master Agreements ("ISDAs") with Defendants by failing to properly calculate amounts payable to or receivable by Defendants using Loss, as that term is defined in the ISDAs.[2] Defendants sought attorneys' fees for that claimed breach in their Tenth Cause of Action and, in doing so, acknowledged to this Court that, should one party's untenable calculation of valuations under the ISDA cause the other party to incur attorney's fees and expenses, such other party should be awarded attorney's fees, costs and litigation expenses by this Court.  Defendants' Ninth Cause of Action objected to the LBCC Claims (and other proofs of claim submitted by the Moore Entities) based on the alleged faulty valuations.

8.    Through these causes of action, Defendants have claimed damages of over $20 million based on Plaintiffs' alleged failure to properly calculate Loss, plus interest at the ISDA default rate (over 13% according to Defendants, compounding daily), amounting to additional tens of millions of dollars.  Thus, Defendants' valuation claims became the central focus of this dispute and the driver, by far, of the bulk of the Plaintiffs' litigation expenses in this matter.

9.    Given the magnitude of the claims asserting valuation differences, the Moore Entities were required to devote significant time and expense to defend themselves.  For example, the Moore Entities moved to compel the production of both Lehman's internal valuations of the transactions with the Moore Entities and the valuations by other Lehman counterparties of trades similar to those at issue in this dispute. (Dkt. 52).  This Court ordered

---

[2] Defendants previously agreed not to challenge the valuations where the Market Quotation process was used, although such valuations were originally part of Defendants' claims.

4

such documents to be produced at the July 22, 2015 hearing on the Moore Entities' motion. And when Defendants failed to comply with the Court's order and failed to produce the documents the Court ordered at that July 22, 2015 hearing, the Moore Entities were forced to return to the Court to seek compliance. (Dkt. 76).

10. In addition to analyzing each and every trade in dispute, the Moore Entities undertook the burden of reviewing and producing—at Defendants' insistence—documents showing 17,725 market trades booked in Moore's system for the period of September 15, 2008 through October 6, 2008, in portfolios with disputed trades.

11. Now, apparently because Defendants are finally faced with the prospect of turning over their own valuations of the trades at issue, they have elected to voluntarily withdraw their claims instead of disclosing those internal valuations.

**B.    The LBCC Claims**

12. On or about September 19, 2009, MMF filed the LBCC Claims, specifically proof of claim No. 33510 against LBCC in the amount of $2,320,398 and proof of claim No. 33511 with respect to Lehman Brothers Holdings, Inc., as guarantor, in the amount of $2,320,398. The LBCC Claims included $27,972 interest as of the date they were filed, calculated at the Default Rate of 1.22%, to which MMF is undisputedly entitled under the relevant ISDA Master Agreement. Interest continues to accrue at the Default Rate.

## ARGUMENT

**1.    THE CLAIMS MUST BE DISMISSED WITH PREJUDICE**

13.    Rule 41(a)(2), made applicable by Fed. R. Bankr. P. 7041, in relevant part, provides for voluntary dismissal:

> **By Court Order; Effect.** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper*…Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice. (emphasis in Italics added).

In *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990), the Second Circuit concluded that "[v]oluntary dismissal without prejudice is thus not a matter of right" and set forth five factors relevant to consideration of a motion under Rule 41(a)(2). These factors include the "plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Id*.

14.    Consideration of these factors demonstrates that dismissal with prejudice is appropriate here. First, this matter has been pending since May of 2014. Plaintiffs have always contended that Defendants were keeping their valuation claims alive solely for their *in terrorem* effect on the Moore Entities. It was only when the Moore Entities had pushed Defendants to the brink of finally having to disclose Defendants' internal valuations that Defendants decided to walk away from their claims.

15.    Second, as set forth above, Plaintiffs have expended significant time and resources on Defendants' valuation claims, including a lengthy (and successful) effort to obtain Defendants' internal valuations. If the valuation claims were brought again, the Moore Entities

6

would be forced to incur sizable and duplicative expenses. It would be unfair for the Moore Entities to have to face that prospect in the future.

16. Last, Defendants' proffered reason for the dismissal, namely a review of the documents the Moore Entities produced concerning their market trading activity for the period from September 15, 2008 to October 6, 2008 in portfolios with disputed trades, does not hold up. For one thing, Defendants have had in their possession for over six years information provided by Plaintiffs that is more than sufficient to allow Defendants to assess the reasonableness of Plaintiffs' valuations. Further, the production to which Defendants refer in their present motion was made on August 21, 2015, nearly three months ago. Defendants do not explain what they saw in that production of trade data for the three-week period following the relevant valuation dates that supposedly caused them to surrender tens of millions of dollars in claims based on alleged valuation differences as of September 15 and 16, 2008. In other words, the August 21, 2015 production shed no light on valuation of the disputed trades as of September 15 and 16, 2008.

17. Accordingly, while Plaintiffs do not object to dismissal of the claims at issue, the dismissal must be with prejudice.[3] *See Graven v. Children's Home, R.T.F., Inc.*, 2015 WL 1446659, at *2 (N.D.N.Y. Mar. 30, 2015) (only terms on which dismissal under Rule 41(a)(2) would be just is if claims were dismissed with prejudice, and dismissing claims with prejudice); *Hoolan v. Stewart Manor Country Club, LLC*, 887 F.Supp.2d 485, 496 (E.D.N.Y.2012) (certain

---

[3] The Moore Entities note that when the parties were negotiating a potential stipulation for the dismissal of these claims, Defendants' own proposal acknowledged that the claims should be dismissed with prejudice. (*See* Ex. 3). The parties were unable to come to a consensual resolution concerning the claims that are the subject of Defendants' proposed order because Defendants demanded that each side bear their own attorneys' fees and costs with respect to the dismissed claims. Under the Master Agreements, however, the Moore Entities are entitled to such fees and costs and intend to pursue them.

claims should be dismissed with prejudice under Rule 41(a)(2) because those claims lacked merit and because the parties had devoted substantial energy to the case, and directing plaintiff to inform court whether it would withdraw claims with prejudice).

18. Should the Court be inclined to dismiss the claims without prejudice over Plaintiffs' objection, the Court should set a schedule for submission and hearing regarding the Moore Entities' attorneys' fees associated with the dismissed claims. Courts routinely grant fee awards when a party dismisses claims without prejudice. *See Jewelers Vigilance Committee, Inc. v. Vitale, Inc.*, No. 90-1476, 1997 WL 582823, at *4 (S.D.N.Y. Sept. 19, 1997) (citing *Colombrito v. Kelly*, 764 F.2d 122, 133 (2d Cir. 1985)). "The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." *Colombrito*, 764 F.2d at 133 (citations omitted). Generally, both attorneys' fees and costs are included in fee awards. *See*, *e.g.*, *Colombrito*, 764 F.2d at 133; *Mercer Tool Corp. v. Friedr. Dick*, 179 F.R.D. 391, 395-97 (E.D.N.Y. 1998). Fees are granted regardless of whether claims were brought in good faith. *Hinfin Realty Corp. v. The Pittston Co.*, 212 F.R.D. 461, 463 (E.D.N.Y. 2002).

## II. THE COURT SHOULD ORDER THE LBCC CLAIMS PAID

19. Once Defendants' valuation claims are dismissed, including its claim objections premised on valuation issues in the Ninth Counterclaim, there is no basis for Defendants' continued refusal to pay the LBCC Claims. The sole objection to these claims was premised upon valuation issues that are no longer in dispute. There is also no question that MMF is entitled to post-petition interest, at the rate set forth in the ISDA, since LBCC is solvent. *Kitrosser v. CIT Grp./Factoring, Inc.*, 177 B.R. 458, 469 (S.D.N.Y. 1995) ("debtor is required

to pay postpetition interest on unsecured or undersecured debt when the debtor in a bankruptcy reorganization is found to be solvent"). Of course, to the extent MMF's claim against LBCC (proof of claim No. 33510) is paid in full, the LBHI guarantee claim (proof of claim No. 33511) will be unnecessary.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Moore Entities respectfully request that this Court sign their Proposed Counter-Order, submitted herewith, and grant such other, further or different relief as this Court deems just and proper.

Dated: New York, New York
November 24, 2015

SCHLAM STONE & DOLAN LLP


By:    s/ Erik S. Groothuis

Bennette D. Kramer (BK-1269)
Erik S. Groothuis
Samuel L. Butt
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004
(212) 344-5400
bdk@schlamstone.com
egroothuis@schlamstone.com
sbutt@schlamstone.com

*Attorneys for Plaintiffs*

OF COUNSEL
Lauren Teigland-Hunt
Teigland-Hunt LLP
127 West 24th Street, 4th Floor
New York, NY 10011
(212) 269-1600
lteigland@teiglandhut.com

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of November 2015, I caused the foregoing Objection to Defendants' Proposed Order Dismissing Certain Counterclaims to be served upon the following attorneys of record via the Court's ECF system and by e-mail:

> Jayant W. Tambe
> Locke R. McMurray
> Tracy V. Schaffer
> Stephen P. Farrelly
> JONES DAY
> 222 East 41st Street
> New York, New York 10017
> *Attorneys for Defendants*

Dated: New York, New York
November 24, 2014

**SCHLAM STONE & DOLAN LLP**

By:   ___/s/  Erik S. Groothuis_____
Erik S. Groothuis
Samuel L. Butt
26 Broadway, 19th Floor
New York, NY  10004
(212) 344-5400 (telephone)
(212) 344-7677 (facsimile)

*Attorneys for Plaintiffs Moore Macro Fund, LP, Moore Macro Markets Fund (Master), LP, SJL Moore, Ltd., JR Moore, LP, LM Moore LP, MF Moore LP (formerly Moore Global Fixed Income Fund (Master) LP), Moore Global Investments, Ltd. Moore Emerging Markets Funder (Master) LP, Moore Capital Advisors, L.L.C., and Trade Process Corporation*