**Hearing Date and Time: December 17, 2015 at 10:00 a.m. (Eastern Time)**

Dean A. Ziehl
Maria A. Bove
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Attorneys for Lehman Brothers Holdings, Inc.*
*and Certain Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------X
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

--------------------------------------------------------------------------------X

**LEHMAN'S REPLY TO OPPOSITION OF ARCH INSURANCE**
**COMPANY TO MOTION FOR ORDER COMPELLING ARBITRATION**
**OF DISPUTES UNDER SETTLEMENT AGREEMENT BETWEEN**
**DEBTORS AND ARCH INSURANCE COMPANY**

# <u>TABLE OF CONTENTS</u>

Page

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    THE COURT HAS JURISDICTION AND VENUE IS PROPER .................................... 4

    A.     This Court Has Jurisdiction to Compel Arbitration ................................................. 4

    B.     The Motion is Properly Brought in this District ..................................................... 6

III.   THE DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION CLAUSE ............. 7

IV.    THE ARBITRATOR SHOULD DECIDE ARBITRABILITY ........................................ 9

V.     THE ARBITRATOR MAY INTERPRET THE ELR AGREEMENT FOR
THE PURPOSE OF RESOLVING THE DISPUTE BETWEEN ARCH
AND LEHMAN ................................................................................................... 12

VI.    CONCLUSION .................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643, 106 S. Ct. 1415 (1986) ........................................................................................ 9

*ATSA of California, Inc. v. Continental Ins. Co.*,
702 F.2d 172 (9th Cir. 1983) .................................................................................................... 7

*Bacardi International Ltd. v. Suarez and Co., Inc.*,
719 F.3d 1 (1st Cir. 2013) ................................................................................................. 16, 17

*C.F. Trust, Inc. v. Tyler*,
318 B.R. 795 (E.D. Va. 2004) .................................................................................................. 5

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800, 96 S.Ct. 1236 (1976) ................................................................................. 16, 17

*Daniels v. Sunrise Senior Living, Inc.*,
212 Cal. App. 4th 674 (2013) ................................................................................................ 15

*Doctor's Assocs., Inc. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ...................................................................................................... 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 115 S.Ct. 1920 (1995) ............................................................................... 11, 12

*Gulf Ins. Co., Glasbrenner*,
343 B.R. 47 (S.D.N.Y. 2006) ................................................................................................... 6

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*,
355 B.R. 214 (D. Haw. 2006) ................................................................................................. 5

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79, 123 S.Ct. 588 (2002) .......................................................................................... 9

*In re Chateaugay Corp*
201 B.R. 48 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997) ................. 6

*In re Gen. Growth Props., Inc.*,
460 B.R. 592 (Bankr. S.D.N.Y. 2011) ..................................................................................... 5

*In re LightSquared, Inc., et al.*,
539 B.R. 232 (S.D.N.Y. 2015) ................................................................................................ 4

*In re Motors Liquidation Co.*,
   2011 WL 1842224 (S.D.N.Y. May 10, 2011) ....................................................... 5

*In re Motors Liquidation Co.*,
   514 B.R. 377 (Bankr. S.D.N.Y. 2014) ................................................................. 5

*In re Portrait Corp. of Am., Inc.*,
   406 B.R. 637 (Bankr. S.D.N.Y. 2009) ................................................................. 5

*In re Standing Order of Reference Re: Title 11*,
   12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) ........................................................... 4

*In re Sterling Optical Corp.*,
   302 B.R. 792 (Bankr. S.D.N.Y. 2003) ................................................................. 5

*Indian Harbor Ins. Co. v. Global Transport System, Inc.*,
   197 F. Supp. 2d 1 (S.D.N.Y. 2002) ................................................................. 6, 7

*Intervest International Equities Corp. v. Aberlich*,
   2013 WL 1316997 (E.D. Mich. Mar. 29, 2013) ..................................................... 15

*Jefferson County v. Barton-Douglas Contractors, Inc.*,
   282 N.W.2d 155 (Iowa S.Ct. 1979) ................................................................. 14

*Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P., et al.*,
   487 B.R. 158 (S.D.N.Y. 2013) ......................................................................... 5

*Martin K. Eby Const. Co., Inc. v. City of Arvada, Colo.*,
   522 F.Supp. 449 (1981) ................................................................................ 14

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S.Ct. 927 (1983) ................................................................. 7, 16

*New England Energy Inc. v. Keystone Shipping Co.*,
   855 F2d 1 (1st Cir. 1988) ............................................................................ 14

*Ore & Chemical Corp. v. Stinnes Interoil, Inc.*,
   606 F. Supp. 1510 (S.D.N.Y. 1985) ................................................................. 14

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996) ......................................................................... 10

*Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*,
   308 Minn. 20, 240 N.W.2d 551 (1976) .............................................................. 14

*Rafferty v. Xinhua Fin. Ltd.*,
   2011 WL 335312, at *5 (S.D.N.Y. Jan. 31, 2011) ................................................. 10

*Robert Lawrence Co. v. Devonshire Fabrics, Inc.*,
   271 F.2d 402 (2d Cir. 1959) ................................................................................................ 14

*Shaw Group Inc. v. Triplefine Intern. Corp.*,
   322 F.3d 115 (2d Cir. 2003) ................................................................................................ 10

*Soto v. American Honda Motor Co. Inc.*,
   946 F. Supp. 2d 949 (N.D. Cal. 2012) ................................................................................ 13

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
   559 U.S. 662, 130 S. Ct. 1758 (2010) ................................................................................... 9

*Tribul Merchant Services, LLC v. ComVest Group*,
   2012 WL 5879523 (E.D.N.Y. Nov. 21, 2012), at *11 .......................................................... 5

**Statutes**

28 U.S.C. § 1334 ................................................................................................................... 4, 5, 6

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtor, Lehman

Commercial Paper Inc. ("LCPI") (together, the "Lehman Debtors" and together with non-debtor

affiliates Lehman ALI, Inc. and LV Ritter Ranch LLC, "Lehman"), respectfully submit the

following reply to the *Opposition of Arch Insurance Company to Motion for Order Compelling*

*Arbitration of Disputes Under Settlement Agreement Between Debtors and Arch Insurance*

*Company* [Dkt. No. 51511] (the "Opposition") and in support thereof respectfully represent:

## I.
## PRELIMINARY STATEMENT[1]

1.      This is a dispute between Lehman and Arch Insurance Company ("Arch")

concerning the allocation of financial responsibility between them under their settlement

agreement (the "Arch Settlement Agreement").  One consequence of the dispute is that Arch

refuses to release certain collateral securing Lehman's reimbursement obligations, including trust

deeds that encumber title to property that a Lehman nominee is endeavoring to sell for the

benefit of creditors.  Arch derides this motive for compelling arbitration as trivial or even shady,

as if what it describes as Lehman's desire to "unload this highly undesirable real estate asset" in

a favorable market is somehow an illegitimate or insufficient reason for the requested relief.

Arch would prefer continued inaction (the declaratory relief complaint to which it refers was

filed only *after the arbitration demand was made*, for the purpose of forestalling arbitration, and

evidently has not even been served); the passage of time both postpones its expenditures and

---

[1] Capitalized terms used in this Preliminary Statement, but not otherwise defined below, shall have the meanings
ascribed to them in the Motion and elsewhere in this Reply.

1

increases the time pressure on Lehman to undertake the work that it contends is Arch's

responsibility.

2.       The Court's jurisdiction over its order approving Lehman's settlement,

both inherent and as expressly retained in the order itself, did not vanish upon plan confirmation.

The law is well-established that a court retains jurisdiction to enforce its own orders, and it

would have jurisdiction to consider a motion to compel arbitration under the Federal Arbitration

Act (the "FAA") regardless.  Venue under the FAA (confused by Arch with jurisdiction) is also

proper.  The Arch Settlement Agreement mandates arbitration by JAMS of "any dispute" but

does not dictate where (nor has Lehman insisted on any locale).  Were it required to support

venue in this district under the FAA, nothing in the contract prevents the Court from directing

that the arbitration be conducted locally.  Not only is JAMS located in New York, but the

specific arbitrator chosen by the parties, the Hon. Daniel Weinstein (ret.) maintains a local office

as well.  For that matter, so does Arch, which is a Missouri corporation with its principal place of

business in Jersey City, New Jersey. In short, there is no jurisdictional bar to the relief requested

by Lehman.

3.       Arch's arguments rest upon its relentless and inaccurate depiction of this

as a dispute exclusively between Arch and the City of Palmdale, California (the "City") under

their settlement agreement (the "ELR Agreement").  Under this view, Lehman is a mere

interloper in a dispute that Arch did not agree to arbitrate, that must be litigated in California

under California law, and in which the City is an indispensable party.  From this characterization

flows Arch's various arguments that the Motion is brought in the wrong venue, that Lehman

lacks the standing or legal right to compel the parties to the ELR Agreement to arbitrate without

their consent, that California law governs arbitrability, and that Arch did not agree to arbitrate

2

this wholly distinct dispute, much less clearly and unmistakably delegate the issue of arbitrability to the arbitrator.

4.    Arch cannot prevail by denying the existence of a substantive dispute with Lehman under the Arch Settlement Agreement.  Arch and Lehman agreed to submit "*any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT … to binding arbitration at and be administered by the Judicial Arbitration and Mediation Service ("JAMS")….*"  As Arch admits, there is an overarching dispute concerning whether conditions to the release of collateral securing Lehman's reimbursement obligations have been met.  One underlying issue is who bears financial responsibility for the Undergrounding Work.  The fact that it involves an interpretation of Arch's contract with the City does not permit Arch to carve out that part of the dispute and unilaterally declare that it is not a dispute under the Arch Settlement Agreement.  Regardless, it is clear from Arch's own description that the dispute concerning the Undergrounding Work is very much a dispute with Lehman, which is not a passive bystander but an active participant accused by Arch of ginning up the contested obligation in the first place.[2]  On its face, without any ambiguity, this qualifies as "any dispute."  Accordingly, Arch's attempt to prove by extrinsic evidence that it did not intend to arbitrate this particular type of dispute is irrelevant as a matter of law.

5.    Once it is recognized that the dispute that Lehman seeks to arbitrate is a dispute between Arch and Lehman concerning the performance of the Arch Settlement Agreement, Arch's arguments topple and its legal authorities become uniformally inapplicable or supportive of Lehman's position.  The law could hardly be clearer that by agreeing contractually to commit "any dispute" to JAMS arbitration, Arch not only agreed that this dispute is arbitrable,

---

[2] Opp. at 7-8.

3

but clearly and unmistakably permitted the arbitrator to decide arbitrability.  It is equally clear

that Arch cannot avoid arbitration by arguing that Lehman is not a beneficiary under the ELR

Agreement and lacks standing to enforce it, nor by championing third party rights and claiming

that the City is an "indispensable party," nor by complaining about "piecemeal" litigation, nor by

arguing that California law governs arbitrability and permits denial of arbitration where there is

related third party litigation.

**II.**

**THE COURT HAS JURISDICTION AND VENUE IS PROPER**

6.      Arch mistakenly contends that this Court does not have the authority to

hear this matter "under the FAA, as it is not a district court located in the Central District of

California."  Opp. at 11.  To the contrary, this Court (a) has jurisdiction to compel arbitration and

(b) is free under the Arch Settlement Agreement and the FAA to direct that the arbitration take

place in New York if necessary to support venue over the Motion.

**A.      This Court Has Jurisdiction to Compel Arbitration**

7.      Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334, which vests

original jurisdiction in the district courts of "all civil proceedings arising under title 11, or arising

in or related to cases under title 11."  28 U.S.C. § 1334.  *See In re LightSquared, Inc., et al.*, 539

B.R. 232, 240 (S.D.N.Y. 2015).  The Southern District of New York has, by standing order,

delegated its authority in this regard to the Bankruptcy Court.  *In re Standing Order of Reference

Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

8.      The order approving the settlement expressly provided "that this Court

shall retain jurisdiction to hear and determine all matters arising from or related to the

implementation or interpretation of this Order."  Order at 4.  Moreover, a bankruptcy court

always has subject matter jurisdiction under 28 U.S.C. § 1334 to enforce its own orders under its

4

"arising in" jurisdiction. *In re Motors Liquidation Co.*, 514 B.R. 377, 381 (Bankr. S.D.N.Y.

2014); *Lothian Cassidy, LLC v. Lothian Exploration & Development II, L.P., et al.*, 487 B.R.

158, 162 (S.D.N.Y. 2013) ("Arising in" claims may include "[m]atters involving the

enforcement or construction of a bankruptcy court order ..." (quoting *In re Sterling Optical

Corp.*, 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003)); *see also In re Gen. Growth Props., Inc.*, 460

B.R. 592, 598 (Bankr. S.D.N.Y. 2011) ("A bankruptcy court always has jurisdiction to interpret

its own orders.") (internal citations omitted).

9.    In fact, as an "arising in" proceeding, a post-confirmation proceeding

involving a bankruptcy court's enforcement of its own order is a "core" proceeding that is

unaffected by the reduced scope of post-confirmation jurisdiction. *Lothian*, 487 B.R. at 164

(where the court had core jurisdiction to interpret a sales order, "[i]t does not matter ... that the

Debtors' chapter 11 plan has been confirmed") (citing *In re Portrait Corp. of Am., Inc.*, 406 B.R.

637, 641 (Bankr. S.D.N.Y. 2009)).[3]

10.    Thus, *In re Motors Liquidation Co.*, 2011 WL 1842224 (S.D.N.Y. May

10, 2011) upheld the bankruptcy court's exercise of post-confirmation jurisdiction enforcing its

pre-confirmation sale order, observing that (a) the sale order itself expressly provided for the

retention of the bankruptcy court's jurisdiction to interpret and enforce it, and (b) "it is well-

established that '[a] bankruptcy court retains post-confirmation jurisdiction to interpret and

enforce its own orders, particularly when disputes arise over a bankruptcy plan of

reorganization,'" and (c) the sale order constitutes a core proceeding and a motion seeking

---

[3] *See also Tribul Merchant Services, LLC v. ComVest Group*, 2012 WL 5879523 (E.D.N.Y. Nov. 21, 2012), at *11; *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 219 (D. Haw. 2006) (post-confirmation actions to enforce discharge injunction are core proceedings "because they call on the bankruptcy court to construe and enforce its own orders"); *C.F. Trust, Inc. v. Tyler*, 318 B.R. 795 (E.D. Va. 2004) (post-confirmation motion to interpret and enforce a release agreement was core matter).

enforcement of an order resolving a core matter based on a retained jurisdiction clause is itself a core matter. *Id.* at *4 (citation omitted).[4]

11.    Furthermore, "[b]ankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334." *See In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), *aff'd in part,* 213 B.R. 633 (S.D.N.Y. 1997); *accord Gulf Ins. Co., Glasbrenner*, 343 B.R. 47, 56 (S.D.N.Y. 2006).

## B.    The Motion is Properly Brought in this District

12.    Arch argues that the Court lacks jurisdiction because section 4 of the FAA provides that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." According to Arch, the Court therefore lacks jurisdiction because it cannot order an arbitration to take place in California.

13.    Courts refer to section 4 of the FAA as a "venue" not a "jurisdictional" statute and have determined that it is discretionary, not mandatory. *See, e.g., Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996); *Indian Harbor Ins. Co. v. Global Transport System, Inc*., 197 F. Supp. 2d 1, 3 (S.D.N.Y. 2002) (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co*., 529 U.S. 193, 194-96, 120 S. Ct. 1331 (2000) (ordering arbitration to take place in New York despite forum selection clause requiring that arbitration take place in Puerto Rico).

14.    Thus, "[t]aken as a whole, Section 4 provides that a motion to compel arbitration may be brought in any district court having jurisdiction, *unless the parties have agreed to a different forum*, in which case, the action must be brought in the agreed-upon forum,

---

[4] The district court ultimately found that it was not necessary to decide the question of jurisdiction because the appeal was moot.

in accordance with the parties' agreement." *Id.* Section 4 of the FAA speaks to where the actual arbitration, *not the action to compel arbitration*, takes place. *See Indian Harbor*, 197 F. Supp. 2d at 3.

15.     Regardless, the Arch Settlement Agreement does not provide that the arbitration must take place in California, as Arch assumes. It provides that it must be administered by JAMS, and selects the Hon. Daniel Weinstein (ret.) as arbitrator, but is silent as to venue. JAMS operates in New York, of course, and Judge Weinstein maintains offices here as well. *See* http://www.jamsadr.com/weinstein. As both Lehman and Arch operate locally, the arbitration may certainly be conducted in this district if the Court so orders. *See ATSA of California, Inc. v. Continental Ins. Co*., 702 F.2d 172, 175 (9th Cir. 1983) (rejecting argument that arbitration should not be compelled because the agreement did not specify either the governing law or the arbitration forum, and ruling that section 4 of the FAA authorized the district court to order that arbitration take place within the district).

### III.
### THE DISPUTE IS WITHIN THE SCOPE OF THE ARBITRATION CLAUSE

16.     As Arch agrees, arbitration is a matter of contract. Where the contract is ambiguous, the FAA's policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983)).

17.     The parties agreed to arbitrate "any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT…." As discussed in the Motion and Opposition, the primary issue that was resolved by the Arch Settlement Agreement was the allocation between Lehman and Arch of costs for the work to be performed under the ELR Agreement. Lehman undertook to reimburse certain costs to Arch,

7

which reimbursement obligation was secured by collateral that included a trust deed to the Ritter

Ranch Project.  The broader issue in dispute is whether Arch must release the collateral, which

Arch acknowledges is subject to arbitration.  Arch's substantive defense, in effect, is that there

should be no dispute over who pays for the Undergrounding Work because the work is not

required in the first place.  In its description of the dispute, Arch contends that the requirement

originated with Lehman, alleging that the dispute over the Undergrounding Work only came up

when Lehman changed project managers "and informed Arch that, in [Lehman's] opinion, the

Arch/City Agreement requires Arch to perform approximately $2 million in additional

undergrounding work…."  Opp. at 8.

18.    On its face, a dispute over whether it is Arch's responsibility and not

Lehman's to pay for the Undergrounding Work and release the collateral is a "dispute …

between them concerning the performance, interpretation or enforcement" of the Arch

Settlement Agreement.  Rather than acknowledge that it has a dispute with Lehman that involves

in part the interpretation of a contract between Arch and a third party, and addressing whether

such a dispute is arbitrable – a legal issue that Arch would lose – Arch simply denies the

existence of a dispute with Lehman.   Instead, it depicts an entirely separate dispute exclusively

between it and the City, a dispute it argues it did not agree with Lehman to arbitrate.  In an effort

to lend substance to its separate dispute, Arch sued the City for declaratory relief on September

23, 2015, nearly two months *after* Lehman demanded arbitration.  In arguing that Lehman is

trying to preempt "pending litigation," Arch implies misleadingly that its lawsuit preceded the

arbitration demand.  It did not, and Arch's go-slow approach is further evidenced by the fact that

after two months the City is still "in process of accepting service of the summons and

complaint."  Opp. at 10.

8

19. Arch's reliance on *Stolt-Nielsen S.A. v. AnimalFeeds International Corp*., 559 U.S. 662, 130 S. Ct. 1758 (2010) is wholly misplaced. The issue in that case was whether class arbitration was permissible, a concept that the Supreme Court found is "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id*. at 665. The Supreme Court has firmly and repeatedly articulated a rule that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415 (1986) (citation omitted). That presumption of arbitrability conclusively defeats Arch's argument that "[t]here is no statement within the Arch/Lehman Agreement that the arbitration provision applies to interpretation of the Arch/City Agreement itself." Opp. at 16.

## IV.
## THE ARBITRATOR SHOULD DECIDE ARBITRABILITY

20. The parties agree on the law. Whereas there is a presumption in favor of finding disputes to be arbitrable under the FAA, "the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83, 123 S.Ct. 588 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 649, 106 S.Ct. 1415 (1986)). Arch argues that there is no clear and unmistakable evidence that the parties intended arbitrability to be decided by the arbitrator, but the cited authorities all support the opposite conclusion.

21. As discussed in the Motion, it is not necessary for the parties to specify in their agreement that they have committed the question of arbitrability to the arbitrator. Controlling authority holds that the parties' agreement to submit "any and all" disputes to arbitration constitutes clear and unmistakable evidence of such intent. *PaineWebber Inc. v.*

*Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996) ("The words "any and all" are elastic enough to

encompass disputes over whether a claim is timely and whether a claim is within the scope of

arbitration."). *Shaw Group Inc. v. Triplefine Intern. Corp*., 322 F.3d 115, 121 (2d Cir. 2003) ("a

referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as

to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'") (quoting

*PaineWebber Inc. v. Bybyk*).[5]

     22.    Arch does not address this principle or authority.  It attacks what is only a

secondary consideration – whether the agreement adopts arbitral rules that provide for arbitrators

to decide arbitrability, such as JAMS Rule 11.  In this regard, Arch points out that the "[t]he

parties did not specifically agree that JAMS Rules apply."  Opp. at 21.  Arch further observes

that the Arch Settlement Agreement calls for expedited consideration ("The PARTIES will

request consideration of the dispute by Judge Weinstein … within forty-eight (48) hours

following a written notice … and will request the issuance of an expedited written opinion") and

questions whether JAMS Rule 11 still applies.  The short response to this argument is that the

incorporation of specific arbitration rules was expressly characterized by the Second Circuit in

*Shaw Group* as providing *secondary* support for its conclusion that the contract manifested a

clear and unmistakable intent to arbitrate arbitrability.  *Shaw Group Inc. v. Triplefine Intern.*

*Corp.*, 322 F.3d at 122.  In that case and the others, the key evidence of the parties' agreement to

---

[5] *See also Rafferty v. Xinhua Fin. Ltd*., 2011 WL 335312, at *5 (S.D.N.Y. Jan. 31, 2011) ("[T]he parties' intent to
arbitrate the question of arbitrability is evidenced by the language used in the Merger Agreement's arbitration
provision … [which] states that 'any and all disputes ... arising under or relating to this Agreement ... shall be
resolved through binding arbitration.'").

allow the arbitrator to decide arbitrability was their agreement to submit any and all disputes to arbitration.[6]

23.    Arch also suggests that the failure to utilize broader language in the arbitration clause precludes a finding that the parties intended for the arbitrator to decide arbitrability. According to Arch, the agreement should have provided for the arbitration of all disputes which "*arise out of or relate to*" the Arch Settlement Agreement. It is unclear, however, how that phrase is any broader than "*any dispute which may arise between them concerning the performance, interpretation or enforcement of this AGREEMENT*" and there is no law supporting any distinction on that basis. Opp. at 17. At bottom, the argument relies upon Arch's false premise that what Lehman seeks to arbitrate is a dispute between Arch and the City, not Arch and Lehman (and thus does not concern the performance, interpretation or enforcement of the Arch Settlement Agreement). The same flawed mantra underlies Arch's final argument that the parties did not intend for the arbitrator to determine the arbitrability of the ELR Agreement. Opp. at 22.

24.    *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920 (1995), cited by Arch, is instructive by comparison. There, the Supreme Court found that there was not clear and unmistakable evidence that the parties had agreed to arbitrate arbitrability, where the overall agreement was comprised of four documents, only one of which had an arbitration clause, and only the party trying to enforce the arbitration clause had signed

---

[6] In any event, JAMS Rule 11 continues to apply; the fact that the parties agreed to ask Judge Weinstein for expedited consideration does not equate to a wholesale abandonment of the JAMS Rules, which contemplate customization by the parties. *See* JAMS Rule 2(a) ("The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies …. The Party-agreed procedures shall be enforceable as if contained in these Rules.").

that agreement, while the party contesting arbitration had not. *Id*. at 941. This case is obviously

a far cry from *First Options*.

## V.
## THE ARBITRATOR MAY INTERPRET THE ELR AGREEMENT FOR THE PURPOSE OF RESOLVING THE DISPUTE BETWEEN ARCH AND LEHMAN

25.     Fairly characterized, the dispute that Lehman seeks to arbitrate, and that

Arch agreed to arbitrate, is a dispute between Lehman and Arch (based in New York and New

Jersey, respectively) that may require, in part, the interpretation of the ELR Agreement between

Arch and the City concerning work to be done in California – an agreement that is expressly the

subject of the Arch Settlement Agreement and is attached thereto. The law is clear that the

Arbitrator may do that, and that Arch may not avoid its agreement to arbitrate by positing that

the City is an indispensable party or invoking its rights or complaining of piecemeal litigation.

That is why Arch insists upon mischaracterizing this as a California-centric dispute between

Arch and the City exclusively, under a contract that has no arbitration clause and is governed by

California law.

26.     Arch's remaining arguments are based upon this mischaracterization.

Thus, when Arch argues that Lehman lacks standing to seek arbitration, it is on the basis that

Lehman is not a party to the ELR Agreement and is not a third party beneficiary, and "one who

is not a party to a contract has no standing to compel arbitration under a contract. Opp. at 17.

The contract that Lehman is enforcing, however, is the Arch Settlement Agreement, which

addresses the parties' respective rights under the attached ELR Agreement, not the ELR

Agreement itself. To the same effect, Arch argues that "even a related contract between the

same parties to a contract with an arbitration agreement may not be subject to arbitration when

the second contract was not incorporated by reference." *Id*. The dispute here does not involve

multiple conflicting contracts between the same parties, however, but a single contract, the Arch

12

Settlement Agreement, that unambiguously provides for the arbitration of all disputes concerning its performance or interpretation. Inapposite for the same reason is *Soto v. American Honda Motor Co. Inc.*, 946 F. Supp. 2d 949 (N.D. Cal. 2012), holding that a manufacturer that was not a party to a sales contract between its financing subsidiary and the purchaser could not use that contract to compel arbitration of product liability claims. Again, Lehman is enforcing its own agreement with Arch, not someone else's.

27.    What is correct is that the resolution of this dispute may require interpreting the ELR Agreement. As Arch notes, "[a]n arbitration panel may not determine the rights or obligations of non-parties to the arbitration." Opp. at 18. Lehman agrees: the arbitrator's decision is not binding upon the City. This leads conceptually to Arch's subsequent arguments that the Motion should be denied because the City would be an indispensable party to the arbitration or because it would usurp Arch's (later-filed and unserved) suit against the City. Opp. at 23-26.

28.    Here, Arch misstates the law. It asserts: "Because the agreement was made in California and to be performed in California, and the requested arbitration was to take place in California, California law applies." *Id*. at 23. It then invokes section 1281.2(c) of the California Code of Civil Procedure, which confers discretion upon a court to refuse to enforce an arbitration agreement where "a party to the arbitration agreement is also a party to a pending court action … with a third party … and there is a possibility of conflicting rulings on a common issue of law or facts." *Id.* at 24. This is presumably why Arch decided to create a "pending court action" two months after the arbitration demand by filing a declaratory relief complaint against the City (which it has not yet served).

13

29.    California law does not apply.  The law in the Second Circuit and

elsewhere is that courts may not refuse to enforce arbitration agreements on the basis of precisely

this type of state law under the FAA.

> In asserting that arbitration between Eby and Arvada should be stayed because of Arvada's third-party claim against ECI, Arvada relies primarily upon *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551, 553 (1976).  That case holds that, under Minnesota law, an arbitration agreement between two parties will not be enforced when a multi-party dispute exists and other parties are not obligated to arbitrate.  Iowa law requires the same result. *Jefferson County v. Barton-Douglas Contractors, Inc.*, 282 N.W.2d 155, 159 (Iowa S.Ct. 1979).
>
> Eby seeks enforcement of Arvada's promise to arbitrate under the Federal Arbitration Act. That Act establishes a strong federal policy favoring arbitration. State law determinations, therefore, do not control.  *See Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 404-09 (2d Cir. 1959).  Enforcement of arbitration under the Federal Arbitration Act will not be denied as to the two parties to the arbitration clause even when other parties to the dispute cannot be ordered to arbitrate.  *Hamilton Life Insurance Co. v. Republic National Life Insurance Co*., 408 F.2d 606, 609 (2d Cir. 1969). Therefore, Arvada's claim against ECI does not prevent enforcement of Arvada's promise to arbitrate with Eby.

*Martin K. Eby Const. Co., Inc. v. City of Arvada, Colo*., 522 F. Supp. 449, 450 (D. Colo. 1981)

(refusing either to stay arbitration or to join a non-consenting third party).[7]  It should be noted, as

well, that the Arch Settlement Agreement is not to be performed in California – it allocates

financial responsibilities – and it does not specify that the arbitration must take place in

California.  Arch misleadingly conflates the Arch Settlement Agreement and the ELR

Agreement to support its argument.

-------

[7] Arch's prefatory statement that federal courts may look to state law authority for guidance on joinder issues where the FAA is silent is inapposite.  In a split decision, the First Circuit approved the consolidation of arbitration proceedings, an issue on which the FAA is silent.  *New England Energy Inc. v. Keystone Shipping Co*., 855 F2d 1 (1st Cir. 1988).  The dissent notes that New York law is to the contrary.  *Ore & Chemical Corp. v. Stinnes Interoil, Inc*., 606 F. Supp. 1510, 1512-15 (S.D.N.Y. 1985).

30.    Arch then argues that the Motion should be denied because the City is an indispensable party, again citing (inapposite) authority applying the inapplicable California statute (Opp. at 25),[8] followed by a mis-citation to an even less apt case, *Intervest International Equities Corp. v. Aberlich*, 2013 WL 1316997 (E.D. Mich. Mar. 29, 2013).[9]    There is a litany of controlling authority cited in the Motion holding that arbitration cannot be denied on this basis. Arch attempts to distinguish all of them by reverting to its mantra that this is a dispute between Arch and the City, not Lehman and Arch.    It asserts that such law "simply does not involve any situations in which the party moving to compel is seeking an adjudication of the rights *owned by a third party without the third party's participation*.    The cited cases all involve situations in which a party is asserting direct contractual rights that it owns itself – but a third party who is not essential to the resolution of the dispute could not be joined."    Opp. at 26 (emphasis in original). The twin fallacies are (a) Lehman is asserting direct contractual rights that it holds itself – its rights under the Arch Settlement Agreement, and (b) Lehman is *not* seeking to adjudicate the City's rights.    The City cannot be bound.    As a consequence, Arch *might* be subject to piecemeal litigation, but on that separate issue, the Supreme Court has once again held squarely that the possibility of piecemeal litigation is an inevitable consequence of the federal policy of enforcing arbitration agreements under the FAA.

---

[8] Arch cites *Daniels v. Sunrise Senior Living, Inc*., 212 Cal. App. 4th 674 (2013), which not only applies inapplicable law, but involved a scenario where arbitration would actually have split claims between the same parties, and the person asserting the statute was the absent third party, not someone purporting to champion its rights.

[9] Arch cites *Intervest* as having vacated an arbitration award under Rule 19 based on the absence of a non-diverse party.    Opp. at 26.    Actually, the decision dismissed an action that sought to vacate an award.    Furthermore, the missing party in that case was not a party that could not be joined in the arbitration, like the City in this case.    To the contrary, it was a party to the arbitration, and the petitioner was seeking to vacate the award on the basis that the missing party should not have been a party to the arbitration.    To that end, the petitioner purposely filed its petition in a district where the missing party would destroy jurisdiction.    *Id*. at *2-4.    The attempt failed.

15

> That misfortune … occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to the arbitration agreement.  Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not the arbitration agreement.  If the dispute between [petitioner] and [respondent] is arbitrable under the Act, then the [respondent's] two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation.

*Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. at 20, 103 S.Ct. at 939.  Hence the previously cited rule under the FAA that state laws that permit the non-enforcement of arbitration agreements involving disputes with third parties are inapplicable.

31.     Finally, Arch suggests a stay while it litigates with the City over whether the Undergrounding Work is required (even as it contends it is Lehman and not Arch that would be financially responsible for it), citing *Bacardi International Ltd. v. Suarez and Co., Inc*., 719 F.3d 1 (1st Cir. 2013) as precedent for staying an arbitration in favor of first-filed litigation. Opp. at 28.  *Bacardi* is entirely distinct.  It was a proceeding to confirm the award in an arbitration that had already taken place, and it was stayed as a matter of comity under the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236 (1976) where the issue had already been decided and was on appeal in Puerto Rico.

> Here there is more than simple parallel litigation. Rather, the two considerations of comity and wise judicial administration together counsel a stay. The Commonwealth proceeding involves the same legal issues as the federal one, includes all parties to the arbitration, has already been decided by the initial reviewing court, and is now on appeal. In addition, the Commonwealth proceeding was filed first, this federal proceeding was filed about a month later, and we have some concern that BIL has engaged in forum-shopping.

719 F.3d at 14.  This case bears no resemblance to *Bacardi*.  There is no first-filed or parallel litigation here, much less one that has been decided and is on appeal, and there is no issue of

16

comity or other basis for abstention under *Colorado River*.  There is just an unserved complaint filed by Arch after Lehman demanded arbitration, and its filing two months after the arbitration demand raises the same forum-shopping issues that concerned the First Circuit, except by Arch and not Lehman.

## VI.
## CONCLUSION

WHEREFORE, Lehman respectfully requests that this Court enter an order (i) compelling Arch to submit the dispute to arbitration, including the issue of arbitrability, and/or (ii) determining that the dispute is arbitrable, and compelling Arch  to submit the dispute to arbitration, and (iii) granting such other and further relief as the Court deems just.

Dated:    December 15, 2015
           New York, New York

                        */s/ Dean A. Ziehl*
                        Dean A. Ziehl
                        Maria A. Bove
                        PACHULSKI STANG ZIEHL & JONES LLP
                        780 Third Avenue, 34th Floor
                        New York, New York 10017-2024
                        Telephone: (212) 561-7700
                        Facsimile: (212) 561-7777

                        *Attorneys for Lehman Brothers Holdings Inc.*
                        *and Certain Affiliates*