WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:     (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>          Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>          Plaintiff,<br>    - against -<br><br>IFREEDOM DIRECT CORPORATION<br>(F/K/A NEW FREEDOM MORTGAGE<br>CORPORATION),<br><br>          Defendant. | Adversary Proceeding<br><br>No. _____ |

## ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan"), for its Complaint against Defendant iFreedom Direct

Corporation's f/k/a New Freedom Mortgage Corporation ("iFreedom" or "New Freedom"),

alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.       In this action, LBHI seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims judgments and any other costs, fees and expenses LBHI incurred as a result of iFreedom's sale and/or submission of six defective mortgage loans in breach of iFreedom's representations, warranties, and covenants (the "Defective Loans").

2.       LBHI sold the Defective Loans to the Federal National Home Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") under agreements that included representations and warranties about the Defective Loans that were co-extensive with those made by iFreedom.  LBHI retained the right to seek indemnification from iFreedom in the event it became liable for certain indemnification events. After Fannie Mae and Freddie Mac discovered that the mortgage loans breached certain of those representations and warranties, Fannie Mae and Freddie Mac made claims upon LBHI for losses suffered on the Defective Loans.  In January and February 2014, respectively, the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754), triggering LBHI's right to indemnification under the Agreements, as defined below, with iFreedom.

3.       By this action, LBHI seeks to recover money damages from iFreedom for the indemnification claim.

2

## PARTIES

4.      On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  LBHI is a Delaware corporation with its principal place of business in New York, New York.

5.      Upon information and belief, Defendant iFreedom is a Utah corporation with its headquarters in Salt Lake City, Utah.

## JURISDICTION AND VENUE

6.      This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012.  The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

8.      Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

9.      This Court has personal jurisdiction over iFreedom.

## FACTUAL BACKGROUND

10.      At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), then sold the loans to third parties, including Fannie Mae and Freddie Mac.

11.      iFreedom engages, and at all relevant times engaged, in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

3

A.    **The Governing Agreements**

12.    This dispute arises out of (i) iFreedom's sale of residential mortgage loans to LBHI's assignor, LBB, under the Loan Purchase Agreement between LBB and New Freedom, dated July 8, 2004 (the "LPA"); and (ii) iFreedom's submission of residential mortgage loans to LBHI's assignor, LBB, under a Broker Agreement between New Freedom and LBB, dated September 27, 2005 (the "Broker Agreement").[1]  A true and correct copy of the LPA is attached hereto as Exhibit A and a true and correct copy of the Broker Agreement is attached hereto as Exhibit B.

13.    The LPA specifically incorporates the terms and conditions of the Seller's Guide of Lehman's loan administrator, Aurora Loan Services LLC (individually, the "Seller's Guide," and together with the LPA the "Correspondent Agreements") which sets forth additional duties and obligations of iFreedom.[2]

14.    The Seller's Guide in its entirety is valid and binding on iFreedom.  Attached hereto as Exhibit C are the specific sections most directly pertinent to the claims in this Complaint.

15.    The Correspondent Agreements sets forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and conveyance of the mortgage loans and mortgage loan documents.

---

[1] The operative Broker Agreement for each of the Defective Loans is the version in effect at the time Defendant sold the loan to LBB.  Although the language of certain sections referenced throughout this Complaint may vary slightly from Broker Agreement to Broker Agreement, it is generally consistent in all material respects.

[2] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time Defendant sold the loan to LBB.  Although the language of certain sections referenced throughout this Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

16.     The Correspondent Agreements and the Broker Agreement (collectively the "Agreements") also set forth iFreedom's duties and obligations regarding examination of mortgage loan files and underwriting; representations and warranties concerning the parties and individual mortgage loans purchased, sold or submitted; and iFreedom's indemnification obligations.

17.     Pursuant to the Correspondent Agreements, iFreedom sold to LBB the Defective Loans described herein.

18.     iFreedom sold Loan ******8465 to LBB pursuant to the terms of the Correspondent Agreements on August 9, 2006.

19.     iFreedom sold Loan ******7771 to LBB pursuant to the terms of the Correspondent Agreements on July 19, 2006.

20.     Pursuant to the terms of the Broker Agreement, iFreedom submitted to LBB the Defective Loans described herein.

21.     iFreedom brokered loan ******4936 which LBB funded pursuant to the terms of the Broker Agreement on December 22, 2005.

22.     iFreedom brokered loan ******4363 which LBB funded pursuant to the terms of the Broker Agreement on March 21, 2006.

23.     iFreedom brokered loan ******5674 which LBB funded pursuant to the terms of the Broker Agreement on August 8, 2006.

24.     iFreedom brokered loan ******6277 which LBB funded pursuant to the terms of the Broker Agreement on March 21, 2006.

25.     The parties agreed that iFreedom's obligations would extend to any subsequent purchasers and/or assignees of the loans, such as, in this case, LBHI.  The Seller's Guide defines

the "Purchaser" as LBB and, among others, its "successors and/or assigns." See Seller's Guide §

8. In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI

all of its rights and remedies under the Agreements pertaining to the Defective Loans

******8465, ******7771, ******4936, ******4363, ******5674, and ******6277.

26.      Further, the Seller's Guide provides that LBHI, as a subsequent holder of any

Mortgage Loan, "shall be a third party beneficiary" of the Correspondent Agreements. See

Seller's Guide § 711. Accordingly, LBHI as a "subsequent holder" (and third-party beneficiary)

of the Defective Loans is entitled to the all of the benefits of the Agreements, including the right

to indemnification.

**B.      iFreedom's Representations Under the Correspondent Agreements**

27.      With respect to each of the loans sold to LBHI under the Correspondent

Agreements, iFreedom made a number of representations, warranties, and covenants concerning

the quality of the mortgage loans.

28.      Specific examples of iFreedom's representations, warranties and covenants

concerning the quality of the mortgage loans include, but are not limited to the following:

     a) No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).

     b) Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

c) The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

d) The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

e) The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. Seller's Guide § 703(24).

29.    In certain instances, iFreedom was also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, iFreedom additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that:

All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

30.     iFreedom represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Correspondent Agreements.  See Seller's Guide § 702(5).

31.     LBHI relied upon the representations and warranties contained in the Correspondent Agreements in purchasing the Defective Loans.  Specifically, Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

32.     iFreedom agreed to indemnify LBHI from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorneys' fees. Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

8

**C.**     **iFreedom's Representations Under the Broker Agreement**

33.     With respect to each of the loans submitted under the Broker Agreement,
iFreedom made a number of representations, warranties, and covenants concerning the quality of
the mortgage loans.

34.     Specific examples of iFreedom's representations, warranties and covenants
concerning the quality of the mortgage loans include, but are not limited to the following:

> a. Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents . . . Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents. Broker Agreement § 8(g).

> b. Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan. Broker Agreement § 8(h).

35.     iFreedom represented and/or warranted that it had the ability to perform its
obligations under, and satisfy all requirements of, the Broker Agreement. See Broker Agreement
§ 8(a).

9

36.     iFreedom agreed to indemnify LBHI from liabilities, claims, judgments, losses

and expenses it might sustain as a result of the Defective Loans, including attorneys' fees.

Section 9 of the Broker Agreement, entitled "Indemnification," provides, in pertinent part, as

follows:

> In addition to Lender's rights and remedies under Applicable Law
> (whether arising at law or in equity), Broker shall indemnify and
> hold Lender, its successors and assigns, and their respective officers,
> directors, employees. shareholders, members, agents, contractors,
> affiliates and subsidiaries (collectively, the "Lender Indemnitees")
> harmless from and against, and shall reimburse Lender Indemnitees
> with respect to, any and all claims, demands, losses, damages,
> interest, penalties, fines, forfeitures, judgments and expenses
> (including, without limitation. reasonable fees and disbursements of
> counsel, and court costs) (any of the foregoing hereinafter referred
> to as a "Claim"), resulting from, relating to or arising out of, whether
> the result of negligent or intentional conduct or otherwise: (i) any
> breach of any representation or warranty made by Broker pursuant
> to this Agreement or Lender's Guidelines: (ii) any breach or failure
> to perform any covenant or obligation of Broker in this Agreement
> or Lender's Guidelines. . . .

## D.     LBHI's Settlement With Fannie Mae and Freddie Mac

37.     Fannie Mae and Freddie Mac discovered breaches of representations, warranties

and/or covenants in the Defective Loans that were co-extensive with the representations,

warranties, and covenants contained in the Agreements.

38.     Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy

proceeding to recover for losses on breaching mortgage loans sold to it by LBHI.

39.     LBHI examined Fannie Mae and Freddie Mac's claims, and determined that the

Defective Loans contained various defects which violated the representations, warranties and/or

covenants under the Agreements, including but not limited to the representations and warranties

that all the information provided in the loan files were true and correct and that the loans met

certain origination and underwriting requirements.  Thus, iFreedom's breaches, acts and

10

omissions resulted in LBHI incurring liability to Fannie Mae and Freddie Mac, which liability
was settled.

40.    The Bankruptcy Court approved LBHI's settlements with Fannie Mae and
Freddie Mac.

41.    The settlements triggered LBHI's right to indemnification under the Agreements
with iFreedom.

**E.    iFreedom's Obligation to Indemnify LBHI**

42.    iFreedom agreed to indemnify LBHI from liabilities, claims, judgments, losses
and expenses it might sustain as a result of the Defective Loans.  See Seller's Guide § 711;
Broker Agreement § 9.

43.    LBHI demanded that iFreedom indemnify LBHI, which demand was refused by
iFreedom.

44.    iFreedom's failure and refusal to indemnify LBHI for LBHI's liability to Fannie
Mae and Freddie Mac constitutes a breach of iFreedom's contractual indemnification
obligations.

45.    There may be additional breaches of iFreedom's representations, warranties and
covenants concerning the quality of the Defective Loans for which LBHI has not provide written
notice to iFreedom, or that LBHI may identify in the course of this adversary proceeding.

46.    Pursuant to Section 8 of the LPA, Section 23 of the Broker Agreement and
Section 713 of the Seller's Guide, the laws of the State of New York govern this contract action.

47.    All conditions precedent to bringing this action have been met, occurred or have
been waived.

11

## FIRST CLAIM FOR RELIEF
### (Contractual Indemnification)

48.     LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

49.     The Agreements are valid and enforceable contracts that are binding upon iFreedom.

50.     LBHI has substantially performed all of its obligations under the Agreements.

51.     iFreedom breached the Agreements by failing to indemnify LBHI for its liabilities, losses, claims, judgments and any other costs, fees and expenses as to the Defective Loans.

52.     iFreedom's breaches of the Agreements as to the Defective Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs, and all other fees and costs provided by the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant iFreedom as follows:

a)     For all damages arising from or relating to iFreedom's breaches of contract, in an amount to be determined at trial;

b)     For recoverable interest;

c)     For the costs and expenses incurred by LBHI in enforcing iFreedom's obligations under the Agreement, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

       d)      Providing for such other relief as the Court deems just and proper.

Dated: New York, New York
       December 16, 2015

/s/  William A. Maher
William A. Maher
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:   (212) 382-0050

*Counsel for Lehman Brothers Holdings Inc.*