# EXHIBIT B

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

**BROKER AGREEMENT**

THIS AGREEMENT (this "Agreement") is made as of ~~September~~ 27, 2005 between:

LEHMAN BROTHERS BANK, FSB, a federal savings bank ("Lender")

and

<u>New Freedom Mortgage Corporation</u>, a <u>UT Corporation</u> ("Broker").

Broker desires from time to time to submit certain single family residential mortgage loans that meet Lender's eligibility criteria (the "loans"; individually, a "loan") to Lender for Lender's underwriting and possible funding. This Agreement, including all attachments hereto, is intended to set forth the terms and conditions of the non-exclusive relationship between Lender and Broker and the terms and conditions that will govern any submission of loans by Broker to Lender and any subsequent funding by Lender.

Therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Broker agree as follows:

1.  **General Provisions.** Broker agrees from time to time to submit loan application packages to Lender, and provide certain additional services and facilities to Lender, subject to and upon the terms and conditions contained in this Agreement. This Agreement incorporates by this reference all other written materials, including without limitation, rate sheets, product profiles, underwriting guidelines, procedural guidelines, policies, loan commitments, closing instructions or other communications, announcements or guidelines provided by Lender to Broker from time to time (collectively, the "Lender's Guidelines").

2.  **Broker Services.** For each loan, Broker will submit to Lender a completed, original loan application package together with such related materials as may be required by Lender (the "Material"). Following submission of any loan application to Lender, Broker will perform the following services: (a) initiate/order verification of employment and verification of deposits, plus any additional documents required to establish income, employment and cash available for closing, if applicable; (b) initiate/order requests for mortgage and other loan verifications; (c) initiate/order appraisals of the property proposed as security for the loan (the "Property"); (d) analyze the applicant's income and debt and pre-qualify the applicant to determine the maximum mortgage amount an applicant can afford pursuant to Lender's Guidelines; (e) educate the applicant in the home buying and financing process and advise the applicant about the different types of credit products available, and demonstrate the differences in closing costs and monthly payments on a product-by-product basis; (f) collect financial information (tax returns, bank statements, etc.) and other related documents that are required as part of the application process; (g) assist the applicant in understanding and rectifying credit problems (with disclosure to Lender as required); (h) maintain regular contact with the applicant between application and closing to apprise them of the status of the application and the requirement to satisfy any outstanding conditions to closing, and to gather additional credit, financial and other information as needed; and (i) initiate/order inspections or engineering reports, if applicable. In addition, Broker will perform some or all of the following services, as requested by Lender: (a) initiate/order engineering reports of the Property, if necessary; (b) provide disclosures (truth-in-lending, good faith estimates, etc.) to the applicant as required by applicable federal, state and local laws, rules and regulations (collectively, "Applicable Law") or by Lender, (c) determine whether the Property is located in a flood zone or order a flood zone determination; and (d) participate in the loan closing. Broker shall review the accuracy and completeness of all information provided by loan applicants, and shall at all times maintain the integrity of Broker's loan application and processing operations.

3.  **Underwriting.** Loan underwriting approval decisions shall be made by Lender, in Lender's sole discretion, in accordance with Lender's approval criteria then in effect. Lender's underwriting determination will be conclusive. Lender will have absolutely no liability to Broker for any failure by Lender to underwrite any loan in accordance with Lender's Guidelines, unless such failure is due to gross negligence or willful misconduct by Lender. Broker shall not (i) represent to any prospective borrower that Lender has approved or will approve any loan application or (ii) issue a lock-in agreement, in either case, until Broker receives written notice of the commitment from Lender which shall include the interest rate, points and other terms of the commitment. Any

07/29/2005

Rev. 08/2004

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

notice of a commitment to a prospective borrower shall include a description of all conditions that need to be satisfied prior to closing ("Closing Conditions").

4. <u>Closing, Funding and Conveyance of Loans</u>. Broker will assist Lender in the closing and funding of approved loans including, but not limited to, arranging for a closing of the loan after (i) all Closing Conditions have been satisfied and (ii) all closing documents have been either prepared or approved by Lender. Lender shall have no obligation to fund any loan until all Closing Conditions have been satisfied. All loans shall be closed in Lender's name.

5. <u>Broker Compensation; Disclosure</u>. Broker shall properly and fully, in accordance with Applicable Law, disclose to the borrower all compensation that will be charged or earned by the Broker in connection with the loan, including any applicable yield spread premium. Such compensation shall be set forth on the Good Faith Estimate provided to the borrower and to the Lender and shall not be changed unless Broker shall properly redisclose such changes at least seven days prior to the closing by providing proper disclosures to the borrower and Lender in accordance with Applicable Law. Broker shall not charge the borrower any amount that exceeds Lender's Guidelines relating to loan pricing.

6. <u>Independent Contractor</u>. While engaging in any activities pursuant to this Agreement, Broker is acting solely as an independent contractor. Broker is not an agent or employee of Lender and nothing contained in this Agreement shall be deemed to make Broker an agent or employee of Lender. Broker shall not represent or imply in any manner that any of its officers or employees are officers or employees of Lender, and shall not represent or imply that its offices are offices or branches of Lender. Broker shall have no authority to execute any documents of any type on behalf of Lender nor shall Broker have the authority to make any commitments on behalf of Lender or in any manner to bind, contract, or incur liability for Lender. Broker shall not make any written or oral representations to any loan applicant that conflict with Broker's authority as set forth in this Agreement.

7. <u>Broker Responsible for Agents and Branches</u>. All references in this Agreement to "Broker" shall include Broker, and any of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Broker is fully liable under this Agreement for all acts and omissions of its agents, representatives, franchisees, branches or divisions that submit loan applications using Broker's name. Lender may conclusively rely on any such submission of an application as conclusive evidence of such agent's, representative's, franchisee's, branch's or division's authority to act for Broker hereunder, unless and until Lender has received written notice from Broker advising Lender that any particular agent, representative, franchisee, branch or division is no longer authorized to submit loans on its behalf hereunder.

8. <u>Representations and Warranties of Broker</u>. Broker makes and will be deemed to have made to Lender, as of the date hereof and as of the date of closing and funding of each loan, all of the following representations and warranties (and any additional representations and warranties set forth in Lender's Guidelines, from time to time):

(a) Broker (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation, and is authorized to transact business and in good standing under the laws of each jurisdiction in which it serves as a broker and in each jurisdiction in which mortgaged properties are located, (ii) has full power and authority, as applicable, to broker loans and to execute, deliver and perform its obligations under this Agreement, and (iii) has duly authorized the execution, delivery and performance of this Agreement by all requisite action.

(b) This Agreement constitutes the legal, valid and binding obligation of Broker, enforceable against Broker in accordance with its terms.

(c) Broker is the holder of a valid mortgage brokerage or other applicable license issued by each state in which broker conducts business where licensure of mortgage brokers is available under State law (even if a particular form of license is not technically required to be obtained by Broker because of the type of loan products offered by Broker or number of loans made by Broker), and Broker is the holder of all other licenses, permits and regulatory approvals as may be available to Broker by law in relation to the performance of Broker's responsibilities under this Agreement (even if a particular form of license is not technically required to be obtained by Broker). Broker shall maintain all such licenses in good standing throughout the term of this Agreement. Broker will retain on file with Lender current

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

copies of all such licenses and will immediately notify Lender if any licenses or registrations held by Broker are suspended, revoked, terminated or otherwise expire.

(d) Except as disclosed to Lender in writing, there is no suit, action, arbitration, proceeding or investigation (including without limitation, any proceeding alleging fraud on the part of Broker or any of its employees) pending, or to Broker's knowledge, threatened, against Broker or any of its current or former employees.

(e) All of the statements, information and documentation submitted by Broker to Lender in connection with Broker's application to become an approved broker hereunder, including any statements, information and documentation submitted by Broker in connection with periodic renewals or recertifications of Broker's approval, are and will be true, correct and complete in all material respects.

(f) Broker has received written authorization from the borrower to submit the loan application package to the Lender and to obtain and verify the borrower's credit information and other information contained in the loan application package.

(g) Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents (including, without limitation, the loan application, earnest money or purchase contract, property appraisal, verification of income, deposits and credit sources, and closing affidavits or certifications and other representations by borrowers), Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.

(h) Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.

(i) Except as otherwise disclosed to Lender in writing before the funding of any loan, neither Broker, nor any of its principals, employees or agents: (i) has received, or has any agreement to receive, any direct or indirect payment from any third party with respect to the loan application package (or the related real estate transaction), including without limitation, payments from escrow agents, appraisers, or real estate brokers, or agents of borrowers, (ii) has any direct or indirect ownership interest in any Property, or (iii) is a mortgagor in the loan transaction. Broker will not collect any fees in advance of closing from prospective borrowers unless permissible under Applicable Law and fully disclosed to Lender. Broker has not advanced funds or induced, selected or knowingly received advanced funds by a party other than the borrower for the payment of any amount required to obtain the loan.

(j) The appraisal obtained in connection with the loan was performed by an appraiser who holds all required licenses or approvals and has no interest in the real property to be appraised and who will receive no compensation which is affected by the approval or declination of the loan application.

(k) Broker has complied with all terms, conditions and requirements of Lender's Guidelines and this Agreement, and with Applicable Law relating to the loan application process. Broker has provided all disclosures to the borrower required by Lender or by Applicable Law to be made by Broker (including, but not limited to, disclosures which relate to the amount and source of compensation paid to Broker by a borrower, Lender or third parties) within the time frames required by Applicable Law.

(l) To Broker's knowledge, no loan will be classified as a (i) "high cost" loan under the Home Ownership and Equity Protection Act of 1994 or (ii) "high cost," "threshold," "covered", "abusive" or "predatory" loan under any other Applicable Law. No abusive or deceptive lending practices, including but not limited to, the extension of credit without regard for a borrower's ability to repay the loan and the extension of credit to a borrower which has no apparent benefit to the borrower, were

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

employed in connection with the origination of a loan. Broker has not mislead the borrower about the costs or benefits of the loan, or any features of the loan, such as prepayment charges, type of interest rate and manner of adjustment thereto, and closing costs and fees.

Each such representation and warranty will survive any due diligence review by Lender, the closing and funding of each loan, the liquidation or repurchase of any loan, the resale of any loan, and the termination of this Agreement.

9. Indemnification. In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees, shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines; (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines; (iii) any claim by a borrower resulting from Lender's failure or refusal to fund a loan package which failure or refusal is related to information obtained from Broker or Broker's conduct; or (iv) any excess fees or charges charged or received by Broker in connection with the origination of a loan.

If Lender repurchases a loan from a third party to whom Lender has sold such loan as a result of any breach or alleged breach of this Agreement by Broker, Lender may (without waiving any right or remedy against Broker) market the loan or the related mortgaged property for resale in any commercially reasonable manner as it may deem appropriate with full disclosure to prospective purchasers of the applicable defect, error or omission in the loan, without recourse against Lender for any loss or damage incurred by the purchaser in connection with the defect, error or omission. In the event of such sale, Lender's Claim against Broker shall include, without limitation, (i) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by Lender in the exercise of its rights and remedies in connection with the loan, the mortgaged property, and/or the borrower, together with interest thereon at the rate specified in the mortgage note, (ii) the amount of any premium, fee or other sum paid by Lender in connection with the origination of the loan and (iii) the difference between: (x) the repurchase price (including principal, interest, servicing advances and all other related costs and expenses) paid by Lender with respect to the repurchase of the loan and (y) the net sales price, if any, received by Lender upon the sale of such loan or the related mortgaged property.

Notwithstanding anything to the contrary contained in this Agreement, Lender's Guidelines or elsewhere, Broker expressly acknowledges and agrees that Lender's review of, or failure to review, any loan application package or closing document package or any portion thereof shall not limit or otherwise affect Lender's right to demand indemnification or any other relief provided by this Agreement.

Notwithstanding anything to the contrary, in no event shall a "full credit bid" made by Lender or any other party at a foreclosure sale of any property securing a loan limit the rights of Lender or the obligations of Broker under this Agreement.

10. Rights to Obtain Certain Information. During the term of this Agreement, Broker will furnish Lender with (i) copies of all renewals of its licenses within thirty (30) days after they are issued to Broker by the applicable regulatory authorities; and (ii) copies of Broker's audited financial statements promptly after they become available (in the event Broker does not obtain an audited financial statement, Broker will furnish Lender with its internally prepared financial statements which are certified by Broker's chief financial officer, principal or owner, as applicable). If requested by Lender, Broker shall also provide any other information reasonably related to substantiating Broker's continuing eligibility to participate in Lender's loan programs as in effect from time to time.

11. Adverse Action Notices. If Lender rejects a loan or makes a counteroffer, Lender may deliver to Broker a completed "adverse action notice" in the form required by the Equal Credit Opportunity Act specifying the reasons Lender has declined to fund the loan. If Lender delivers such notice to Broker, Broker shall deliver

-4-

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

this adverse action notice to the applicant within the time period required by Applicable Law. Notwithstanding the foregoing, Lender shall have the right to deliver adverse action notices directly to the applicant.

12. **Right to Contact Applicants.** Broker acknowledges that Lender shall have the right to contact any loan applicant or borrower in person or by mail, e-mail, or telephone, in connection with any application package submitted by Broker to Lender, and Lender shall have no liability to Broker for any such communication.

13. **Web Site Access.** To the extent that Broker is provided access to or use of any web site maintained by or on behalf of Lender, including the web site currently located at www.alservices.com, Broker shall comply with the terms of use and any other applicable policies and procedures maintained by or on behalf of Lender. Without limiting the foregoing, Broker shall comply with all policies and procedures relating to the protection of passwords and other security measures in connection with Broker's use of any such web site.

14. **Non-Exclusive Agreement.** Nothing in this Agreement shall be construed to create an exclusive relationship in any market or geographic area between Lender and Broker. Broker acknowledges that Lender provides the same or similar services to other brokers.

15. **Updates to Agreement.** Upon not less than ten (10) days prior written notice to Broker, Lender may modify and amend this Agreement. Any such modification or amendment shall only be effective with respect to loans submitted by Broker after the effective date of such modification or amendment. Such modification or amendment shall be deemed incorporated into this Agreement without further signature or acknowledgment by Broker.

16. **Termination.** This Agreement may be terminated by either party at any time upon delivery of written notice of termination to the other party. Upon termination of this Agreement by either party for any reason, Lender shall have the option, in its sole discretion, with respect to any loan that was registered prior to termination, (a) to lock, underwrite, close or fund any such loan application and Broker shall comply with all of its obligations under this Agreement with respect to such loans, or (b) to reject such loans and return such loan application packages to Broker without any further obligation of Lender. Any loans that do not have an interest rate lock-in agreement in place at the time of termination shall be deemed to be rejected and Lender shall have no further obligation with respect to such loans. All representations, warranties, rights to audits, indemnity obligations, and other remedies will survive the termination of this Agreement.

17. **Further Assurances.** Each party agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request, in order to effectuate the purposes and to carry out the terms of this Agreement. Without limitation of the foregoing, Broker agrees to do all things and to execute or otherwise obtain for Lender all additional documentation necessary to (i) properly complete Lender's approval of any loan, (ii) cure any breach or potential breach of Broker's warranties as to a closed loan, (iii) sell the loan to a secondary market investor or otherwise comply with FNMA, FHLMC, GNMA, FHA, VA or other secondary market requirements, or (iv) insure or guaranty the loans with the FHA, VA or private mortgage insurer, as applicable.

18. **Attorney's Fees.** If any action or proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

19. **Non-Assignability.** This Agreement may not be assigned by Broker without the prior written consent of Lender. Any attempted assignment without Lender's required consent shall be void. No loan packages may be submitted to Lender for which applications were solicited, or processing performed, by any entity or any employee of any entity that is not a party to this Agreement without the prior written consent of Lender. Lender, in its sole discretion, may assign this Agreement from time to time.

20. **No Waiver; Remedies Cumulative.** Failure or delay to exercise any right hereunder shall not act as a waiver of any other right, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. All rights and remedies of Lender under this Agreement are distinct from, and are cumulative with, any other rights

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

or remedies under this Agreement or Lender's Guidelines or afforded at law or in equity, and all such rights and remedies may be exercised concurrently, independently or successively.

      21.    Notices; Electronic Communications. All notices or other communications required or permitted hereunder shall be in writing and shall be delivered personally, or sent by certified, registered or express mail, postage prepaid, or by a national overnight carrier or by facsimile (with a confirming copy by mail or national overnight carrier) and shall be deemed given when so delivered personally or by facsimile, or if mailed, five days after the date of mailing, or if by overnight carrier, on the following business day, to the parties at the address specified below their signatures hereto or to such other address as any party hereto shall notify the other party hereto from time to time in writing.

      Notwithstanding the foregoing, any notices or communications relating to loan pricing, loan underwriting, the status of any loan, any changes to Lender's Guidelines or to this Agreement, may be provided by Lender to Broker by any means permitted by law, including, without limitation, telephone, facsimile, electronic mail, or by posting to Lender's designated web site. To the extent any such consent is required by Applicable Law, Broker hereby consents to the receipt of such notice or communications by such means. The provisions of this paragraph constitute the express consent of Broker to the receipt of any and all facsimile communications from Lender or its affiliates (including any such communications constituting advertisements under Applicable Law) at the fax number set forth below, or at any other fax number supplied by Broker.

      22.    Rights of Setoff. Lender may setoff against any amounts owed by Lender or its affiliates to Broker under this Agreement, Lender's Guidelines or otherwise, any amounts owed by Broker to Lender or its affiliates under this Agreement or Lender's Guidelines. Setoff may be exercised by Lender at any time and from time to time without prior notice to or demand upon Broker, all of which are hereby waived by Broker; provided, however, that Lender shall notify Broker within a reasonable time after effecting any such setoff. Failure to provide notice shall not invalidate the setoff.

      23.    Governing Law; Jurisdiction. **THIS AGREEMENT AND LENDER'S GUIDELINES SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT PREEMPTED BY FEDERAL LAW. BROKER IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE COURTS OF NEW YORK COUNTY AND THE FEDERAL COURTS OF THE SOUTHERN DISTRICT OF NEW YORK AS TO ANY DISPUTE CONCERNING THIS AGREEMENT.**

      24.    Waiver of Trial by Jury. EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

      25.    Privacy Laws. Other than in accordance with this Agreement, Broker will not disclose non-public personal information regarding any mortgagors or prospective mortgagors, and shall comply in all respects with the Gramm-Leach-Bliley Act and any state privacy laws. Broker hereby indemnifies and holds Lender harmless against any damages arising from the violation of any state or federal laws regarding privacy.

      26.    Cooperation with Authorities. Broker hereby consents to the disclosure of information regarding Broker, files submitted to Lender by Broker for approval or funding, prospective or existing mortgagors or mortgaged properties, appraisers and other third parties engaged by Broker or through Broker's efforts, or any other information regarding the business of Broker, to state or federal agencies in response to administrative or court subpoenas or upon written request of such agencies. Broker hereby indemnifies and holds Lender harmless from complying with such requests for information.

      27.    Business Practice Report Acknowledgment. Broker acknowledges that it is in the best interest of both Broker and Lender for Lender to perform due diligence concerning Broker's background and experience by periodically obtaining reports issued from various information service providers. Broker further acknowledges that Broker benefits from the efficiencies in the due diligence process that are possible when Lender and other similarly situated entities in the mortgage industry exchange information about their experiences in doing

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

business with individuals and companies such as Broker. Therefore, Broker hereby consents and gives Lender permission to submit of Broker's name and the names of Broker's employees for screening through various information providers and any and all mortgage industry background databases, including, without limitation, databases operated by Mortgage Asset Research Institute, Inc., such as the Mortgage Industry Data Exchange ("MIDEX"). Broker understands that Lender performs quality control reviews of the loans that Broker submits to Lender for registration, review, underwriting, and/or purchase.

Broker understands and hereby consents to the release of information about any loan application that is believed to contain misrepresentations and/or irregularities. Broker agrees and gives its consent that it and its employees may be named as the originating entity or loan officers on such loans. Broker hereby releases and agrees to hold harmless Lender, Mortgage Asset Research Institute, Inc., all MIDEX subscribers, and any trade associations that endorse the MIDEX system from any and all liability for damages, losses, costs, and expenses that may arise from the reporting or use of any information submitted by Lender or any other MIDEX subscriber to Mortgage Asset Research Institute, Inc., recorded in the MIDEX system, and used in any way by Lender or any other MIDEX subscriber.

28. Non-Solicitation. Broker (including any parent companies, subsidiaries, and/or affiliates) shall not solicit by means of direct mail, e-mail, Internet, or telephonic or personal solicitation, or by any other means, the prepayment in whole or in part of a mortgage loan funded by Lender for a period of one year from the date that such loan was funded by Lender hereunder. Advertising directed to the general public, including without limitation mass mailings based upon commercially acquired mailing lists, and newspaper, radio and television advertisements, shall not be deemed a solicitation prohibited by this Agreement. If Broker solicits any loan in contravention of this Section, Lender shall have all rights and remedies available under this Agreement, at law or in equity, including without limitation the right to injunctive relief and specific performance.

29. Restrictions on Publicity. Without the prior written consent of Lender, Broker shall not use the corporate names, logos, brand names, trademarks, trade names or service marks of Lender, Lehman Brothers or any of their respective affiliates, or otherwise identify Lender, Lehman Brothers or any of their respective affiliates, in Broker's advertising, marketing or promotional material, publicity releases, communications with the press, customer listings, testimonials, websites, any other material distributed by or on behalf of Broker or in any proposals to prospective borrowers, brokers, clients or appraisers.

30. Miscellaneous. This Agreement, Lender's Guidelines, and any Addenda or other written agreement entered into pursuant to this Agreement, set forth the entire agreement between Lender and Broker and supersedes all prior written, and all prior and contemporaneous oral, agreements, understandings, and arrangements between the parties. As used herein, references to this "Agreement" includes this Agreement, any Addenda hereto, and any amendments or modifications hereto or thereto. Lender's Guidelines may be modified by Lender at any time with respect to any loans submitted to Lender for review at any time after Broker is notified of such modification. Except as otherwise set forth herein, no terms or conditions of this Agreement may be waived or modified unless executed in writing by both parties. This Agreement shall be binding upon Broker, its successors and permitted assigns, and shall inure to the benefit of Lender, its successors and assigns. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

# AURORA LOAN SERVICES
*A Lehman Brothers Company*

**IN WITNESS WHEREOF,** the parties agree that this Agreement will only become effective on the date on which Lender executes the Agreement as set forth below. This Agreement shall not be effective until so executed by Lender.

BROKER:

New Freedom Mortgage Corporation

By: *[signature]*
Name: BRET J WALL
Title: MANAGING DIRECTOR - PRODUCTION
SS# 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
EIN#:
Date: 9/27/05

LENDER:

LEHMAN BROTHERS BANK, FSB

By:_____
Name:
Title:
Date:

ADDRESS FOR NOTICES TO BROKER:

NEW FREEDOM MORTGAGE CORPORATION
2363 S. FOOTHILL DR.
SALT LAKE CITY, UT 84109

Fax: 801-493-2834

ADDRESS FOR NOTICES TO LENDER:

Lehman Brothers Bank, FSB
10350 Park Meadows Drive
Littleton, CO 80124
Attention: 2005 Broker Recertification
Fax:    720-945-4913

-8-