HEARING DATE AND TIME: TBD
RESPONSE DEADLINE: TBD

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS<br>HOLDINGS INC., *et al.*,<br><br>　　　　　　　　　　Debtors. | Case No.   08-13555 (SCC)<br><br>Chapter 11<br><br>(Jointly Administered) |

**NOTICE OF FILING OF SUPPLEMENTAL APPLICATION OF WILMINGTON TRUST COMPANY, AS CO-CHAIR OF THE COMMITTEE AND INDENTURE TRUSTEE, FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES**

PLEASE TAKE NOTICE that Wilmington Trust Company, in its capacity as indenture trustee and as Co-Chair of the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. has filed its Supplemental Application of Wilmington Trust Company, as Co-Chair of the Committee and Indenture Trustee, for Payment of Fees and Reimbursement of Expenses ("**Supplemental Application**").  Additional notice will be provided when the date and time for a hearing to consider the Supplemental Application has been scheduled and a deadline for objections to the Supplemental Application has been set.

Dated:　New York, New York
　　　　 November 18, 2015

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP

　　　　　　　　　　　　　　　　　　　　By:　 s/ Dianne F. Coffino
　　　　　　　　　　　　　　　　　　　　　　　Dianne F. Coffino
　　　　　　　　　　　　　　　　　　　　The New York Times Building
　　　　　　　　　　　　　　　　　　　　620 Eighth Avenue
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 841-1000
　　　　　　　　　　　　　　　　　　　　Fax: (212) 841-1010
　　　　　　　　　　　　　　　　　　　　New York, NY 10018-1405
　　　　　　　　　　　　　　　　　　　　Counsel for Wilmington Trust Company, as
　　　　　　　　　　　　　　　　　　　　Co-Chair of the Committee and Indenture
　　　　　　　　　　　　　　　　　　　　Trustee

**Covington & Burling LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000
Counsel for Wilmington Trust Company,
As Co-Chair of the Committee and Indenture
Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS<br>HOLDINGS INC., *et al.*,<br><br>Debtors. | Case No. 08-13555 (SCC)<br><br>Chapter 11<br><br>(Jointly Administered) |

**SUPPLEMENTAL APPLICATION OF WILMINGTON TRUST COMPANY, AS CO-CHAIR OF THE COMMITTEE AND INDENTURE TRUSTEE, FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES**

TO THE HONORABLE JUDGE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Wilmington Trust Company ("**Wilmington Trust**"), in its capacity as indenture trustee and as Co-Chair of the Official Committee of Unsecured Creditors ("**Committee**") of Lehman Brothers Holdings Inc. ("**LBHI**") and the other above-captioned debtors ("**Debtors**" and with the Debtors' nondebtor and foreign affiliates, "**Lehman**") hereby submits this Supplemental Application ("**Supplemental Application**"),[1] pursuant to sections 502, 503(b)(3)(D), 503(b)(4) and 503(b)(5) of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, "**Bankruptcy Code**"), for approval of the payment by the Debtors of certain fees and

---

[1] Wilmington and certain other members of the Committee have contemporaneously filed an Amended Application for Payment of Fees and Reimbursement of Expenses Pursuant to Sections 503(b)(3)(D), 503(b)(4) and 503(b)(5) of the Bankruptcy Code ("**Amended Application**"). Capitalized terms not otherwise defined in this Supplemental Application have the meaning given to them in the Amended Application.

expenses incurred in connection with the above-captioned Chapter 11 cases ("**Chapter 11 Cases**"). In support of the Supplemental Application, Wilmington Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.      In Part I of this Supplemental Application, Wilmington Trust seeks, as a substantial contribution under Section 503(b) of the Bankruptcy Code, payment of fees and reimbursement of expenses it incurred in connection with work Wilmington Trust performed as Co-Chair of the Committee.

2.      Wilmington Trust served as Co-Chair of the Committee during the Chapter 11 Cases, along with Mizuho Corporate Bank ("**Mizuho**"). In its capacity as Co-Chair, Wilmington Trust performed work well "above and beyond" the duties of a normal committee member. The Co-Chairs were the initial point of contact and touchstone for Lehman executives and professionals during the Chapter 11 Cases. The Co-Chairs worked closely with the Debtors and their principals on the management and liquidation of Lehman's diverse asset classes, proposed transactions, potential and pending litigations and, most importantly, formulation of a plan. As Co-Chairs, Wilmington Trust and Mizuho met with or participated in regular teleconferences with the Debtors' management to discuss issues as they arose. The Co-Chairs along with their counsel and Committee professionals, participated in regular teleconferences and meetings (weekly and often more frequently) to review and propose responses to issues raised by the Debtors and to address the administration, governance and conduct of Committee deliberations. The Co-Chairs also were the liaison between the Committee and other parties in interests, meeting with different creditor groups and creditors as well as the administrators of the Debtors' foreign affiliates to resolve disputes and build a consensus on the terms of a plan of

2

reorganization. Wilmington Trust's efforts as Co-Chair, which required the assistance of counsel, contributed materially and substantially to the effective operation of the Committee and to the consensual resolution of the Chapter 11 Cases.

3. In Part II of this Supplemental Application, Wilmington Trust seeks allowance of an unsecured claim under the Senior Indenture (as defined below) in the full amount of its postpetition fees and expenses. Wilmington Trust seeks allowance of this unsecured claim solely to the extent that such fees and expenses are not paid either as substantial contribution award under the Amended Application and this Supplemental Application or under Section 6.7 of the Confirmed Plan following a successful appeal of Judge Sullivan's decision in *Davis v. Elliott Mgt. Corp. (In re Lehman Brothers Holdings Inc.)*, 508 B.R. 283, 295-96 (S.D.N.Y. 2014) ("**District Court Decision**"). Because Wilmington Trust has been paid its postpetition fees and expenses under the Fee Order, Wilmington Trust does not seek current payment of its unsecured claim. Wilmington Trust instead requests that the Court direct that amounts previously paid to Wilmington Trust under the Fee Order be deemed distributions on account of its allowed unsecured claim, up to an amount equal to its pro rata portion of amounts distributed by the Debtors based on the distribution percentage provided to holders of Class 7 General Unsecured Claims, and that these deemed distribution amounts be deducted from any amounts that Wilmington Trust may be required to refund to the Debtors under the Fee Order.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over these cases and the Supplemental Application under 28 U.S.C. 157 and 1334 and pursuant to Section 14.1(b), (g) and (o) of Article XIV of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its

Affiliated Debtors ("**Confirmed Plan**"). Venue of these proceedings and this Supplemental Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are Sections 502, 503(b)(1)(A), 503(b)(3)(D), 503(b)(4), and 503(b)(5) of the Bankruptcy Code.

### I. Wilmington Trust Merits a Substantial Contribution Award for its Co-Chair Role.

#### A. Background

6. The general background regarding the Lehman cases and the procedural background regarding these remand proceedings are discussed in the Amended Application. Applicant refers the Court to the Amended Application and incorporates these discussions by reference in this Application.

7. Wilmington Trust, was elected a Co-Chair of the Committee on September 17, 2008. Mizuho was also elected Co-Chair. Wilmington Trust and Mizuho served as Co-Chairs continuously through the Effective Date.

8. As a Co-Chair, Wilmington Trust assumed an additional set of duties above and beyond its duties as a Committee member. These additional duties included, among other things, the following:

> a. The Co-Chairs regularly interacted directly with the Debtors' management regarding asset management and liquidation issues and to discuss material developments in the Chapter 11 Case and related litigation. The Debtors' management actively sought the input of the Co-Chairs in developing responses to material issues, often at an early stage in the process. To this end, the Co-Chairs participated in numerous calls and in-person meetings with the Debtor's representatives regarding business and legal issues. These direct interactions between the Debtors and the Co-Chairs contributed to the resolution of significant and potentially contentious issues and allowed for the screening and streamlining of issues that were presented to the full Committee. The Co-Chairs thus served as a "gatekeeper" for the transmission of issues to the full Committee; this function was critical given the number and complexity of issues that arose in the Lehman cases.

4

b. Wilmington Trust and its counsel, Covington & Burling, LLP, participated in weekly and often more frequent Co-Chair meetings with the Committee's counsel and financial advisors. At these separate meetings, the Co-Chairs, their counsel, and the Committee's professionals reviewed and analyzed issues related to the management and liquidation of Lehman's complex asset classes, proposed transactions, positions taken or to be taken in pending contested matters or adversary proceedings, proposed settlements and plan strategies. As a result of the review and analysis performed by the Co-Chairs, proposals and strategies were further developed and some issues were addressed or eliminated prior to presentation to the Committee, thus creating greater efficiency in Committee deliberation and decision making. The Co-Chairs also addressed areas of disagreement among the Committee members and with the assistance of their counsel, analyzed and considered the different positions and analyzed potential bases for consensus within the Committee.

c. The Co-Chairs, along with their counsel and the Committee professionals, were members a Plan Working Group established early in the Chapter 11 Cases that included the Debtors and their professionals. The Plan Working Group met frequently to discuss and develop potential plan concepts. These meetings commenced well before the full Committee established regular meetings to consider plan issues and continued thereafter. In this regard, the Co-Chairs again played an instrumental role in developing, addressing, and vetting issues and shaping the discussion for the benefit of the full Committee. In particular, the separate work of the Co-Chairs contributed materially to the successful development of the Confirmed Plan.

d. The Co-Chairs also communicated directly with representatives of other major parties in the case, including representatives of the Debtors' foreign affiliates and members of the ad hoc committees, regarding significant issues in the cases. These meetings, which provided the Co-Chairs insight into the different, and sometimes adverse, positions held by various creditor groups, allowed the Co-Chairs to assist in building a consensus among the competing interest groups that led to confirmation of a consensual plan.

9. To fulfill its additional duties as Co-Chair, Wilmington Trust required and relied upon the advice of its own counsel. The issues raised during the Chapter 11 Cases were wide-ranging, complex, and often novel, and required analysis from multiple viewpoints; it was critical to Wilmington Trust that it have access to an informed and independent analysis from an independent advisor. Given its role as an independent and primary contact with the Debtors and other parties, Wilmington Trust relied heavily on the advice and counsel of Covington to assist it

5

in analyzing and assessing the various positions in the case—including, on occasion, the positions developed by Committee counsel or other Committee members.

10.     Wilmington Trust's substantial contribution to the successful resolution of the Lehman cases was acknowledged by other parties.  The Debtors' CEO, for example, in his declaration in support of the Original Application, particularly acknowledged the substantial contribution to the cases made by the Co-Chairs and each of their counsel.  *See* Declaration of John K. Suckow, as President and Chief Executive Officer of Lehman Brothers Holding Inc., in Support of the Omnibus Application of Individual Members of Official Committee of Unsecured Creditors and Indenture Trustees for Payment of Fees and Expenses, November 15, 2012 [Dkt. # 32129] ("**Suckow Declaration**"), at paragraph 7 ("The Applicants, and, in particular, the Creditors' Committee co-chairs (Mizuho Corporate Bank, Ltd. and Wilmington Trust Company) and their counsel, made important, substantial, and material contributions to the administration and successful resolution of these chapter 11 cases.").

B.     **Courts Have Recognized the Contributions of Committee Co-Chairs with Substantial Contribution Awards.**

11.     The general legal standards applicable to a claim for substantial contribution under Section 503(b) of the Bankruptcy Code, and the application of these standards to the Committee Members' requests for payment of fees and expenses, are discussed in detail in the Amended Application.  Wilmington Trust refers the Court to the legal analysis in the Amended Application and fully incorporates the legal argument by reference this Supplemental Application.

12.     More particularly, courts recognize that the work required of creditors' committee co-chairs goes above and beyond the work required of regular committee members and justifies a substantial contribution award.  *See In re Worldwide Direct, Inc.*, 334 B.R. 112, 128 (Bankr. D.

6

Del. 2005) ("Because [applicant] served as co-chair of the Committee, the Court believes that more work was required of it and its attorneys."); *see also White Motor*, 50 B.R. at 902-04 (noting extensive contribution of committee co-chairs and awarding administrative expense to co-chairs' counsel); *cf. In re Farm Bureau Services, Inc.*, 32 B.R. 69, 71 (Bankr. E.D. Mich. 1982) ("If work done above and beyond this level which amounts to special assignments and activity not done by ordinary members, then expenses of such activities may be reimbursed.") In the Chapter 11 Cases, more work was required of Wilmington Trust and its attorneys in connection with Wilmington Trust's role as Co-Chair than was required of a regular Committee member—in fact, given the extraordinary circumstances of these Chapter 11 Cases, more work, time and dedication were required of the Co-Chairs than would typically be expected of a creditors' committee co-chair, even one in a very large chapter 11 case.

13. As Co-Chair, Wilmington Trust and its counsel regularly participated in telephonic and in-person meetings separate from the full Committee or its subcommittees. The separate Co-Chair meetings materially and substantially contributed to the successful resolution of these cases by allowing for the development, analysis, and discussion of significant issues, particularly issues related to development and negotiation of a consensual plan. Courts have consistently held that a creditor substantially contributes to a chapter 11 case if its actions further the confirmation of a consensual plan.[2]

---

[2] *See In re Lehal Realty Assocs.*, 112 B.R. 588, 590 (Bankr. S.D.N.Y. 1990) (actions by creditor that led to consummation of chapter 11 liquidation plan compensable as substantial contribution); *In re Granite Partners, L.P.*, 213 B.R. 440, 446 (Bankr. S.D.N.Y. 1997) (substantial contribution appropriate where applicant "took an active role in facilitating the negotiation and successful confirmation of the plan"); *Spreights & Runyon v. Celotex Corp. (In re Celotex Corp.*, 227 F.3d 1336, 1340 (11th Cir. 2000) (applicant worked tirelessly for several years toward consensual resolution of chapter 11 case); *In re Baldwin-United Corp.,*, 73 B.R. 321, 341 (Bankr. S.D. Ohio 1987) (substantial contribution made where applicant mediated disputes among parties in interest leading to development of consensual plan); *In re* (continued…)

7

14. Further, the support of other parties in interest weighs in favor of granting a substantial contribution application.[3] The Debtors have expressly acknowledged the substantial contribution to the cases made by the Co-Chairs and their attorneys.[4]

15. Accordingly, Wilmington Trust respectfully requests that it be awarded its fees and expenses incurred in connection with performance of its duties as a Co-Chair of the Committee as substantial contribution under Sections 503(b)(3)(D), 503(b)(4) and 503(b)(5).

II. **Wilmington's Fees and Expenses Should be Allowed as an Unsecured Claim.**

A. **The Senior Indenture and the Proof of Claim**

16. Wilmington Trust serves as indenture trustee under the Indenture, dated as of September 1, 1987 (as amended, supplemented, or modified, "**Senior Indenture**"), between LBHI and Wilmington Trust.[5] A true and correct copy of the Senior Indenture is attached as **Exhibit "A"** to this Supplemental Application. The Senior Indenture permitted the issuance of multiple series of debt securities. On the Petition Date, approximately 800 separate securities ("**Senior Notes**") had been issued by LBHI under the Senior Indenture and remained outstanding.

---

*Encapsulation Int'l Inc.*, No. 96-31762 WHB, 1998 WL 801898 at *4 (Bankr. W.D. Tenn. Nov. 9, 1998) (reimbursing a creditor for fees and expenses incurred in connection with efforts that led to confirmation of a consensual plan of liquidation).

[3] *See Bodin Concrete, L.P. v. Concrete Opportunity Fund II, LLC*, Civ. No. 3:14-CV-1695-K, at *1 (N.D. Texas, Oct. 23, 2014) (affirming bankruptcy court award of substantial contribution reimbursement where bankruptcy court had noted general creditor support of application as part of overall factual record supporting its award).

[4] *See* Suckow Declaration.

[5] Wilmington Trust succeeded to Citibank as indenture trustee under the Indenture pursuant to Sections 610 and 611 of the Indenture and the Agreement of Resignation, Appointment and Acceptance, dated as of May 14, 2008, by and among LBHI, Wilmington Trust, as Successor Trustee, and Citibank, as Resigning Trustee.

17. Wilmington Trust filed a proof of claim (Proof of Claim # 10082) ("**Proof of Claim**") on behalf of the holders ("**Senior Noteholders**") of the Senior Notes. A true and correct copy of the Proof of Claim is attached as **Exhibit "B"** to this Supplemental Application. The Proof of Claim includes claims for, among other things, all principal and interest due and paying with respect to the Senior Notes and a claim for all prepetition and postpetition amounts owed by the Debtors for compensation, fees, and expenses of the Trustee under Section 607 of the Senior Indenture (discussed below), including the fees and expenses of Wilmington Trust's attorneys. Proof of Claim ¶¶ 11 - 13, at 4.

18. Section 607 of the Senior Indenture provides, among other things, that LBHI must pay Wilmington Trust compensation for services rendered by it in its capacity as Trustee under the Senior Indenture and reimburse Wilmington Trust for all reasonable expenses, disbursements and advances incurred or made by it in accordance with any provision of the Senior Indenture (including the reasonable compensation and the expenses and disbursements of Wilmington Trust's agents and counsel). Senior Indenture, §§ 607(1) and (2), at 49.[6]

---

[6] Section 607 of the Indenture provides:

The Company [i.e., LBHI] agrees:

(1) to pay to the Trustee from time to time such compensations in Dollars for all services rendered by it hereunder as may be mutually agreed in writing between the Company and the Trustee (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust);

(2) except as otherwise expressly provided herein, to reimburse the Trustee in Dollars for the Securities of any series upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advances as may be attributable to its negligence or bad faith; and

(3) to indemnify the Trustee and each predecessor Trustee in Dollars for the Securities of any series for, and to hold it harmless against, any loss, liability or expense incurred without negligence. or bad faith on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and

(continued…)

9

19. Under the Senior Indenture, LBHI also indemnified Wilmington Trust against any expense, including the costs of its counsel, arising out of its performance of its duties under the Senior Indenture. Senior Indenture, §§ 607(3), at 49.

20. As set forth in the Proof of Claim, Wilmington has asserted an unsecured claim for payment and reimbursement of the full amount of its prepetition and postpetition fees and expenses under Section 607 of the Senior Indenture ("**Unsecured Fee Claim**"). Wilmington Trust asserts the Unsecured Fee Claim as an alternative source of payment for any of its fees and expenses not paid as a substantial contribution award *or* under §§ 1123(b)(6) and 1129(a)(4) and pursuant to Section 6.7 of the Plan following successful appeal of the District Court Decision.

21. Under controlling Second Circuit authority, an unsecured creditor is entitled to recover its postpetition fees and costs as an unsecured claim if recovery of the fees and costs is authorized under a valid prepetition contract. *Ogle v. Fidelity & Deposit Co. of Maryland*, 586 F.3d 143, 146 (2d Cir. 2009) ("[T]he Bankruptcy Code does not bar an unsecured claim for postpetition attorneys' fees authorized by a valid prepetition contract valid under state law."); *see also SN Insurance Servs. v. Centre Insurance Co. (In re SNTL Corp.)*, 571 F.3d 826, 844 (9th Cir. 2009) (attorney's fees arising out of a prepetition contract but incurred postpetition fall within Bankruptcy Code's broad definition of "claim" and are allowable under Section 502(b)); *see also Travelers Casualty and Surety Co. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 451-56 (2007) (claim under prepetition contract for postpetition attorneys' fees "must be allowed under § 502(b)(1) unless it is unenforceable within the meaning of § 502(b)(1)").

---

expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

22. The Unsecured Fee Claim meets the criteria for allowance under *Ogle*. LBHI's obligation to pay and reimburse Wilmington Trust for its fees and expenses arises under a prepetition agreement—the Senior Indenture—that is indisputably valid under state law. Indeed, Wilmington Trust continues to perform its indenture trustee duties under the Senior Indenture. Under the express terms of the Senior Indenture, Wilmington Trust is entitled to payment or reimbursement of its fees and expenses that accrued in connection with the Chapter 11 Cases. As discussed above, Section 607 of the Senior Indenture requires LBHI to compensate Wilmington Trust for services rendered under the Senior Indenture, to reimburse Wilmington Trust for all reasonable expenses, disbursements and advances incurred or made by it (including the reasonable compensation and the expenses and disbursements of Wilmington Trust's agents and counsel), and to indemnify Wilmington Trust against losses incurred as a result of the performance of its duties. Senior Indenture, § 607. The Unsecured Fee Claim[7] comprises fees and expenses that arise from post-default actions taken by Wilmington Trust authorized under the Senior Indenture.

23. Courts have long recognized that an indenture trustee is entitled to payment of its fees and expenses, including attorneys' fees, as a matter of contractual right under indenture provisions similar to Section 607 of the Senior Indenture. *See Manufacturers Hanover Trust Co. v. Bartsh (In re Flight Trans. Corp. Sec. Litig.)*, 874 F.2d 576, 581 (8th Cir. 1989); *US Trust Co. v. Pardo (In re W.T. Grant Co.)*, 119 B.R. 898, 901 (S.D.N.Y. 1990)("[A]n indenture trustee is contractually entitled to payment for the performance of its duties regardless of whether its efforts benefitted the estate."); *In re Zenith Labs.*, 119 B.R. 51, 54 (Bankr. D.N.J. 1990) (debtor

---

[7] The aggregate amount of Wilmington Trust's fees and expenses incurred prior to the Effective Date is $11,919,456.45.

11

obligated under prepetition indenture and financing agreements to reimburse postpetition legal fees incurred by indenture trustee in defending adversary proceeding). Any such fees and expenses that arise postpetition are allowable as a prepetition unsecured claim. *See In re Flight Trans.*, 874 F.2d at 583 ("Under § 607 of the Indenture Agreement, [the indenture trustee] had a contractual right to payment for its services and to reimbursement of its expenses, including its attorney's fees. This right to payment arose when the Indenture Agreement was executed."); *Zenith*, 119 B.R. at 55 (allowing postpetition fees and expenses of the indenture trustee as an unsecured claim).

24. The Unsecured Fee Claim is a valid and enforceable claim under Section 607 of the Senior Indenture and therefore under *Ogle* it should be allowed in full as a Class 7 General Unsecured Claim against LBHI.[8]

25. Because the fees and expenses that comprise the Unsecured Fee Claim have been paid under the Fee Order, Wilmington Trust does not seek payment of the Unsecured Fee Claim. However, in the event that Wilmington Trust must refund any amounts to the Debtors under the Fee Order, Wilmington Trust requests that the Court direct that (i) the amounts previously paid to Wilmington Trust under the Fee Order be deemed distributions made on account of the Unsecured Fee Claim, up to an amount equal to Wilmington Trust's pro rata portion of the amounts distributed by the Debtors based on the distribution percentage provided to holders of Class 7 General Unsecured Claim, and (ii) these deemed distribution amounts be deducted from any amounts that Wilmington Trust may be required to refund to the Debtors under the Fee

---

[8] General unsecured claims against LBHI are classified as Class 7 claims under the Plan. Plan, § 3.1. As of the most recent distribution, the Debtors have made distributions to Class 7 general unsecured claims in an aggregate amount constituting 34.765294% of the allowed amount of such claims. *See* Eighth Distribution Notice, Exhibit A [Dkt. # 50894].

Order.[9] This will simplify the flow of funds to and from Debtors and will not prejudice the estate or its creditors because it entails only the reclassification of payments already received by Wilmington Trust and will not otherwise decrease the amount of funds otherwise available for distribution to other creditors.

---

[9] The Fee Order provides that "if this Order or the Memorandum Decision is reversed, vacated, or modified as to the payment of any fees or expenses as a result of the entry of a final order in any subsequent proceeding, then the Applicants shall refund and pay to the Debtors any amounts paid to the Applicants under Section 6.7 of the Plan to the extent affected by any reversal, vacatur, or modification[.]" Fee Order at 3-4.

## CONCLUSION

For the reasons set forth herein, Wilmington Trust respectfully requests that this Court enter an order granting the Supplemental Application.

Dated: New York, New York
December 18, 2015

**COVINGTON & BURLING LLP**

By: /s/ Dianne F. Coffino
    Dianne F. Coffino

The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Fax: (212) 841-1010

Counsel for Wilmington Trust Company, as Co-Chair of the Committee and Indenture Trustee