# **EXHIBIT B-4**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re </br></br>LEHMAN BROTHERS HOLDINGS INC., et al.,</br></br>　　　　　　　　　　Debtors. | Chapter 11 Case No.</br>08-13555 (SCC)</br></br>Jointly Administered |

### SUPPLEMENTAL DECLARATION OF JOHN GUILIANO IN SUPPORT OF AMENDED OMNIBUS APPLICATION OF CERTAIN INDIVIDUAL COMMITTEE MEMBERS FOR REIMBURSEMENT OF FEES AND EXPENSES

JOHN GUILIANO declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I previously was employed as a Vice President in the Default Administration Group of The Bank of New York Mellon ("BNYM"), a member of the Official Committee (the "Committee") of Unsecured Creditors of Lehman Brothers Holdings Inc., et al. (collectively, the "Debtors"). I retired from BNYM in September of 2014. Except as otherwise provided herein, the facts set forth in this declaration are based upon my personal knowledge. I am competent to testify to these facts.

2. I make this Supplemental Declaration in further support of the Omnibus Application of Individual Members Of Official Committee of Unsecured Creditors and Indenture Trustees Pursuant To Section 1129(a)(4), Or, Alternatively, Sections 503(b)(D)(3) and 503(b)(4) of Bankruptcy Code for Payment of Fees and Reimbursement of Expenses filed herein on January 30, 2010, as Docket No. 24762 (the "Application"). This Supplemental Declaration is also in support of the Amended Omnibus Application of Certain Individual Committee Members

SMRH:224400015.4　　　　　　　　　　　　　　　　-1-

for Payment of Fees and Reimbursement of Expenses, filed concurrently herewith ("Amended Application").

A. **Background and Summary of this Supplemental Declaration**

3.   On or about January 24, 2012, I executed my Initial Declaration in support of the Application ("Initial Declaration"). My Initial Declaration was filed in the above case on or about January 30, 2012, as Exhibit B-1 to the Application.

4.   Since the time of my Initial Declaration, the Hon. Richard J. Sullivan has issued his Memorandum and Order dated March 31, 2014, in which Judge Sullivan reversed a certain order of the Bankruptcy Court approving the Application and remanded the Application to the Bankruptcy Court with certain instructions in such order (the "Remand Order").

5.   I submit this Supplemental Declaration to explain the portion of the BNYM fees that BNYM feels qualify as a substantial contribution under the Remand Order. I understand that a declaration of David D'Amour of Sheppard Mullin will be filed concurrently herewith which will explain the portion of the Sheppard Mullin fees that qualify for payment as a substantial contribution under the Remand Order. ("D'Amour Declaration") This declaration and the D'Amour Declaration are submitted to explain the calculation by BNYM of the fees and expenses that BNYM feels qualify as a substantial contribution under the Remand Order. I reserve the right to give further direct testimony in connection with this litigation.

6.   I maintained detailed time sheets on a daily basis while I performed my services on the Committee. I have reviewed those time records and broken out those records into further categories so that we can identify the categories of services that constitute a substantial contribution. We also identify the time that we will not pursue as a substantial contribution under the terms of the Remand Order.

**B.     Reservation of Rights**

7.     It is the position of BNYM that it is entitled to have its fees and expenses allowed under Bankruptcy Code Section 1129(a)(4) and Section 6.7 of the Plan as long as such fees and expenses are "reasonable." However, BNYM has filed the Amended Application and prepared this Supplemental Declaration in order to comply with the requirements of the Remand Order. As set forth in the Amended Application, BNYM reserves its right to appeal the Remand Order and the decision of Judge Sullivan following the conclusion of this Court's proceedings on this remand. In addition, BNYM has filed its "Supplemental Motion of Bank of New York Mellon for Allowance of General Unsecured Claim and Deemed Distribution on Unsecured Claim". ("Supplemental Motion"). In the Supplemental Motion BNYM seeks an order that those portions of its fees and expenses that do not qualify as a substantial contribution are entitled to recovery as an unsecured claim. All rights are reserved with respect to the relief requested in that Supplemental Motion.

**C.     Nature of Claims**

8.     As set forth in the Initial Declaration, BNYM serves in various trust capacities in a substantial number of collateralized loan obligation issues, collateral debt obligation issues and other transactions involving one or more of the Debtors or their affiliates. In addition to that, BNYM serves as a successor trustee under the Indentures identified in paragraph four of my Initial Declaration. BNYM was appointed to the Committee only with respect to the claims that it has under such Indentures. BNYM filed thirteen proofs of claim (claim nos. 21797, 21798, 21799, 21800, 21801, 21802, 21803, 218804, 21805, 21806, 21807, 22122 and 22123) on behalf of itself and the holders of the securities issued under the

Indentures. The thirteen claims represent claims in the total principal amount of over $10.8 Billion.

**D.    My Appointment to the Committee and Need for Counsel**

9.    I served continuously on the Committee since the time it was formed. This is not the first Chapter 11 committee on which I have served on behalf of BNYM or its predecessors. Following is a list of the Chapter 11 Committees on which I have served:

| DEBTOR NAME | BANKRUPTCY FILING | FILE DATE |
|---|---|---|
| American Airlines Inc. | Southern District of New York | 11/29/2011 |
| Falcon Products Inc. | St. Louis, MO | 1/31/2005 |
| North Texas Bancshares | Delaware | 10/16/2013 |
| Pliant Corporation | Delaware | 1/3/2006 |
| RathGibson, Inc. | Delaware | 7/13/2009 |
| Lehman Brothers Holdings Inc. | Southern District of New York | 9/15/2008 |

10.    I set forth in my Initial Declaration the efforts that I have expended on the Committee in this case. While I have a lot of experience serving on other Chapter 11 committees, I have never spent as much time or taken as much effort as the work that I did on the Committee in this case. I also set forth in my Initial Declaration the work that our outside counsel, Sheppard Mullin, did in this case. Without the representation of Sheppard Mullin in this case, I could not have performed my duties in this case. The duties of a committee member in this case involved an analysis of a number of very complicated legal issues. It also involved attempts to reach an agreement with other Committee members with differing views on legal issues. I am not a lawyer. I am a business person. Without counsel, I could not have either (a) analyzed what decision I should make on complicated issues that involve legal components; or

(b) agree or disagree with other committee members with differing views on issues involving legal components.

11. I have never experienced the amount of work and the need for outside counsel as great as what I saw in the Lehman case. As Committee members, we and our counsel were involved in the day to day operations of the company. We also were dealing with complex legal and financial matters. In addition, under the settlement protocols we had authority to approve a certain level of settlements without the need to obtain court approval. In order to review these matters as a Committee member, it was important to have counsel. The level of work and the need for counsel was much greater in this case than in any other case in which I have sat as a committee member.

12. As I testified to in my Initial Declaration, I sat on two Subcommittees of the Committee: (i) the Derivatives Subcommittee; and (ii) the Private Equity Subcommittee. The service on both of the Subcommittees required an extensive devotion of time on my part and the need for counsel to consult with as to legal issues. My counsel was required to review materials submitted to me as a Committee member, participate in meetings and take positions many times adverse to other Committee members, and engage in discussions and deliberations on a wide array of legal and business issues.

E. **My Time Records and Breakdown of Portions of My Time Entitled to a Substantial Contribution Recovery**

13. In the original Application the Applicants sought approval of their fees and expenses incurred under the provisions of Paragraph 6.7 of the Plan. Such provision was defined in the original Application as the "Fee Payment Provision." As set forth in the original Application, Applicants felt that their fees and expenses in the total sum of approximately $26

million were reasonable and should be approved under the Fee Payment Provision and the provisions of Section 1129(a)(4) of the Bankruptcy Code. [Original Application, paragraphs 3 & 4]. As part of the original Application BNYM sought compensation under the Fee Payment Provision for my reasonable fees for the time I spent on the Committee Matters. BNYM also sought under the Fee Payment Provision compensation for reasonable fees related to our annual administration fee as an indenture trustee. Following is a chart that sets forth the amount allowed by Judge Peck as reasonable compensation under the Fee Payment Provision and the portion of such fees that are clearly justified to be awarded as a substantial contribution under the Remand Order. BNYM is willing to accept reduced amounts as follows under the Remand Order as a substantial contribution.

## BNYM FEES

**BNYM Fees Approved as Reasonable Under Fee Payment Provision**

| | | |
|---|---|---|
| (a) | Time Billed | $407,580 |
| (b) | Annual Administration Fees | $ 83,160 |
| | **Total Fees Approved:** | **$490,740** |

**Portion of BNYM Fees Entitled to Substantial Contribution Recovery**

| | | |
|---|---|---|
| (a) | Time for Derivatives Subcommittee | $118,198 |
| (b) | Time for Private Equity Subcommittee | $ 24,454 |
| (c) | Time for Committee | $185,448 |
| (d) | Annual Administrative Fee | $0 |
| | **Total Fees Substantial Contribution** | **$328,100** |

14. During my time as a Committee member I maintained detailed time records. As my Initial Declaration set forth, due to their voluminous nature, the Time and

Expense Records annexed to the Initial Declaration were not filed with the Court, but copies were delivered to the Court, the U.S. Trustee, and the Debtors. Those time records detail all of the time that I spent on preparing for and attending Committee meetings, Derivatives Subcommittee Meetings, and Private Equity Committee meetings. I only billed time for matters relating to Committee and Subcommittee matters and did not bill any time for matters relating to Indenture Trustee Work.

15. I have reviewed a breakdown of my timesheets that breaks out my time spent on Committee Matters, Derivative Subcommittee Matters and Private Equity Subcommittee Matters. It also breaks out Miscellaneous Time. All such Miscellaneous Time is related to either Committee Matters, Derivative Committee Matters or Private Equity Subcommittee Matters. The breakdown is accurate. I understand that the BNYM Fee Breakdown will be made available to the Court and the U.S. Trustee ("BNYM Fee Breakdown"). That BNYM Fee Breakdown breaks my time into the following four categories: (a) "DER" which is time spent preparing for or attending Derivatives Subcommittee meetings; (b) "PE" which is time spent preparing for or attending Private Equity Subcommittee meetings; (c) "UCC" which is time spent preparing for or attending Committee meetings; and, (d) "MISC" which is miscellaneous time preparing for either a Committee or Subcommittee meeting.

16. The total time for my hours, billed at $400 an hour, is as follows in the BNYM Fee Breakdown: (a) DER- $91,380; (b) PE-$17,720; (c) UCC-$204,180; and, (d) MISC-$93,620. We allocated the "MISC" or "Miscellaneous Time" category on a pro rata basis to the DER, PE and UCC categories, since such time was spent on the Derivatives Subcommittee, Private Equity Committee and Committee matters respectively. After such allocation, the

percentage of my total time that I expended on Committee matters can be broken down as follows:

    a.    Unsecured Creditors Committee Matters - 65% or $264,927.

    b.    Derivatives Subcommittee- 29% or $118,198.20.

    c.    Private Equity Subcommittee – 6% or $24,454.80.

17.    All of my time spent on the above matters benefited the creditors of the estate. However, I recognize that there are arguments that all of the time that I billed does not fall within the definition of a "substantial contribution" under the Remand Order, and BNYM is willing to accept the amounts set forth herein as a substantial contribution under such Remand Order.

18.    I feel that 100% of the time devoted to the Derivatives Subcommittee and the Private Equity Subcommittee Matters constituted a substantial contribution. These activities were well in excess of anything that would constitute normal committee matters. In addition to that the work on both Subcommittees was not only intensive, but very successful.

19.    I understand that all of my time on the Unsecured Creditors Committee Matters cannot be a substantial contribution under the Remand Order. There are portions of such meetings that consist of things that all Committee members must expect to do. That includes normal formation matters, bylaw matters, and listening to reports by the Debtor and Committee Counsel. However, this Committee did much more than a normal committee did and contributed heavily to many matters described in this declaration, in other declarations filed in this case, and in further proof to be given in this case. Based on my recollection of committee meetings I am of the opinion that 70%-80% of my time working on Unsecured Creditors Committee Matters was devoted to matters that were over and beyond what I would consider normal committee

work of listening to debtor reports, listening to Unsecured Creditors Committee counsel, working on formation documents, and the like. BNYM will therefore discount my time devoted to Committee Matters by 30%, and seek only $185,448 for Committee Matters. Hence the amount of time for which I feel BNYM is entitled to substantial contribution for my time is a total of $328,100. This consists of 100% of my time spent on Derivatives Committee and Private Equity Subcommittee Matters, and 70% of my time on Unsecured Creditors Committee Matters.

20. The $83,160 for the Annual Administration Fees of BNYM are appropriate claims against the estate, but are not ones for which BNYM will seek a substantial contribution recovery.

21. I therefore feel that of a total of $490,740 approved by Judge Peck and paid to BNYM by Lehman for its fees, BNYM should be able to retain as a substantial contribution a total of $328,100.

F. **Relief Sought**

22. BNYM therefore seeks an order that it is entitled to retain a total of $328,100 as a substantial contribution by BNYM which is explained in this declaration.

23. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17 day of DEC, 2015.

John Guiliano