# EXHIBIT  B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                    :

In re:                                      :         Chapter 11
                                                    :         Case No.
                                                    :

LEHMAN BROTHERS HOLDINGS INC., et al.,      :         08-13555
                                                    :         (SCC)
                                                    :

                        Debtors.             :         (Jointly
                                                    :         Administered)
                                                    :

---------------------------------------------------------------- x

**DECLARATION OF JOHN K. SUCKOW IN SUPPORT OF THE APPLICATION OF MIZUHO BANK LTD. PURSUANT TO SECTIONS 503(B)(3)(D)AND 503 (B)(4) OF THE BANKRUPTCY CODE FOR A SUBSTANTIAL CONTRIBUTION AWARD**

John K. Suckow hereby declares pursuant to 28 U.S.C. § 1746 as follows:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"), an international restructuring and consulting services firm. I am also the former President and Chief Executive Officer of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator")

2.      A&M was engaged by the above referenced debtors ("Lehman" or "the Debtors") following commencement of LBHI's Chapter 11 case on September 15, 2008. Since A&M's engagement, I was a member of the A&M senior management team for the Debtors. In April 2009, I was appointed President and Chief Operating Officer of LBHI. Upon the effective date (the "Effective Date") of the Debtors' Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), I was appointed Chief Executive Officer of LBHI. I resigned as Chief Executive Officer effective December 31, 2013. Since then my role has been limited to serving on the Plan Trust of LBHI and serving as the A&M relationship manager. Since the Effective Date, A&M has continued to provide services on behalf of the

Debtors' businesses and the continued administration of the chapter 11 cases in accordance with the confirmed Plan at the direction of the post Effective Date Board of Directors.

3.      I submit this Declaration in support of the application of Mizuho Bank, Ltd., f/k/a Mizuho Corporate Bank, Ltd., ("Mizuho") under Section 503 (b)(3) (D) and 503 (b) (4) of the Bankruptcy Code for an award of its actual, necessary expenses and the reasonable compensation and reimbursement of expenses incurred by its attorneys, based upon the substantial contribution Mizuho made to this case as member and co-chair of the Unsecured Creditors' Committee (the "UCC") and also in its capacity as an individual creditor of the estates.  Unless otherwise stated herein, the facts set forth in this Declaration are based upon my personal knowledge or the personal knowledge of employees of the Debtors or A&M who reported to me during the pendency of the cases.  The opinions expressed are based on my personal observations commencing September 16, 2008 and are not opinions of either LBHI or A&M.  If I were called upon to testify, I would and could testify competently as to the facts set forth herein.

4.      During my tenure at A&M, I have been engaged in a number of large, complex bankruptcies and have interacted with numerous creditors' committees.  I know that Mizuho was a member of the UCC from the time of its formation (September 2008) and served as its co-chair from inception through the Effective Date of the Plan.

5.      I believe that as committee member and co-chair, Mizuho, supported by its own professionals, rendered services which were extraordinary in amount and quality, and which provided direct and significant benefit to these estates in terms of (i) its participation in formulating a consensual plan in one of the most difficult and complex set of cases ever filed, and (ii) its contribution in maximizing the value of the unique and diverse assets held by the

-2-

estates.  Simply stated, Mizuho's work was above and beyond a normal creditor committee
member function.

6.    I came to know and trust Noel Purcell in 2008 from Mizuho's position, and
positive involvement, as co-chair of the UCC.  That interaction led to a recognition of Mr.
Purcell's value, particularly in the areas of banking and real estate.  As a result, Mr. Purcell's
input was welcomed by Lehman's management on many matters of critical importance
throughout the conduct of these cases.  In turn, Mr. Purcell made himself available for countless
calls, meetings, and discussions during and after business hours, on weekends and on holidays.
Indeed, during the course of these cases, Mr. Purcell was on site at Lehman's offices frequently,
often daily.

7.    In addition to its functions as co-chair, Mr. Purcell added significant value to
these estates and performed extraordinary service in connection with real estate transactions
including, but not limited to, the Archstone transaction.  In addition, Mr. Purcell communicated
frequently with my colleagues regarding the regulatory and financial concerns affecting Aurora
and Woodland banks.  Similarly, Mr. Purcell provided significant input to the Derivatives team
in a variety of ways, including negotiation of the "Big Banks" derivatives settlement,
notwithstanding that Mizuho itself did not fall within the paradigm of a "Big Bank".

8.    Mr. Purcell also served for three years as a member of the Fee Committee.  I
understand Mizuho sought no fee for its services notwithstanding orders of this Court that
allowed for such compensation and its efforts in addressing the professionals' applications
resulted in significant savings to the creditors of these estates.  Further, even after successful
negotiation of the Plan in June 2011, and implementation of frameworks for addressing the
different asset pools and disposition of assets, Mr. Purcell continued to add value by participating

in the formation of the Board Selection Committee and ultimately, the Plan Trust necessary for

Lehman's functioning post- Effective Date.

9.    Many of the matters, such as the capital infusion into non-Debtor banks or real

estate transactions, were extremely sensitive because they contemplated the investment of estate

funds into what was otherwise structured as a liquidation for the benefit of creditors.  Based upon

its experience in the real estate and banking communities, and its creditor standing, Mizuho

brought a level of depth and perspective to the process which was unique and significant.  While

many parties reviewed or provided input regarding these matters, there can be little dispute that

Mr. Purcell's involvement was above and beyond a normal creditor committee member's

participation.

10.    I have reviewed the decision by Judge Peck, dated February 15, 2013, in these

cases, In re Lehman Bros Holding Inc., 487 B.R. 181 (Bankr. S.D.N.Y. 2013), in which he found

that the Plan provision allowing for the payment of fees was enforceable.  In particular, I took

note of his statement in footnote 5 stating the "Applicants performed services within such an

extraordinary setting that it would have been difficult if not impossible for them to have carried

out their duties without being able to confer with their own counsel." 487 B.R. at 185.  Without

regard to the legal underpinnings of the decision, I am confident that this statement is accurate

insofar as it applies to Mizuho.

11.    Accordingly, I believe Mizuho, with the support of its attorneys, made a

substantial contribution to the Lehman estates.


I declare under penalty of perjury that, to the best of my knowledge, and after reasonable

inquiry, the foregoing is true and correct.

-4-

/s/ John K. Suckow
_____
John K. Suckow

Dated:    December 18, 2015
          New York, New York