Hearing Date and Time: January 21, 2016 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: January 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------ x

## NOTICE OF PLAN ADMINISTRATOR'S OBJECTION TO CLAIM 17562

**PLEASE TAKE NOTICE** that Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-referenced chapter 11 cases, filed an objection to proof of claim number 17562, and that a hearing (the "Hearing") to consider the objection will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **January 21, 2016 at 10:00 a.m. (Prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any further responses to the objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Garrett A. Fail, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **January 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline").

WEIL:\95569055\1\58399.0011

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:  December 21, 2016
         New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

Hearing Date and Time: January 21, 2016 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: January 14, 2016 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
In re                                                             :   Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                          :   08-13555 (SCC)
                                                                  :
                          Debtors.                                :   (Jointly Administered)
------------------------------------------------------------------- x

## PLAN ADMINISTRATOR'S OBJECTION TO CLAIM 17562

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, respectfully represents as follows:

### RELIEF REQUESTED

1.  LBHI files this objection pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking disallowance and expungement of proof of claim number 17562 (the "Himfield Claim"). In the alternative, if the Himfield Claim is not disallowed and expunged, LBHI seeks to subordinate the Himfield Claim pursuant to section 510(b) of the Bankruptcy Code.

1

## JURISDICTION

2.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

3.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.    On December 6, 2011 the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the chapter 11 estates of the above-captioned debtors.

## THE HIMFIELD CLAIM[1]

5.    Prior to the commencement of these cases, Himfield held approximately $46.2 million in notional amount of notes issued by one of LBHI's affiliates, Lehman Brothers Treasury Co. BV (ISIN XS0230176793) (the "LBT Notes"). The LBT Notes benefitted from a specific guarantee by LBHI. In the week leading up to LBHI's chapter 11 filing, on September 10, 2008, Himfield entered into a contract with Lehman Brothers Commercial Corporation Asia Limited ("LBCCA"), another one of LBHI's affiliates, to sell the LBT Notes. Payment of $45,553,200 (the "Purchase Price") was due to Himfield on September 16, 2008. The LBT

---

[1] Based upon documents provided, the following appear to be the facts being alleged by Himfield. The Plan Administrator reserves all rights to dispute these facts.

2

Notes were transferred, but Himfield did not receive the Purchase Price.[2] Himfield has asserted claims related to the trade, the LBT Notes and the Purchase Price against LBCCA and Lehman Brothers International Europe (in administration). Those primary claims remain disputed and unresolved. Himfield asserts that LBHI is liable for the Purchase Price and expenses as a result of a resolution passed by the Executive Committee of the Board of Directors of LBHI in 2005, not a specific guarantee.

## OBJECTION

6.   A properly filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

**I.   The Himfield Claim Should Be Disallowed
Because It Fails to State a Prima Facie Guarantee Claim**

7.   LBHI's liability on account of the Himfield Claim is predicated on LBHI's purported general guarantee of LBCCA (the "Purported Guarantee"). At most, however, the Purported Guarantee is a general guarantee that is enforceable by Himfield only if it knew of and relied on the existence of the Purported Guarantee when entering into the trade with LBCCA

---

[2] Himfiled's brokerage account at LBCCA appears to have been credited with the Purchase Price.

3

giving rise to the Himfield Claim. To date, Himfield has not provided any such evidence of knowledge and reliance and, therefore, has failed to state a prima facie guarantee claim against LBHI.

8. A guarantee is a contractual undertaking by one party, the guarantor, to satisfy the obligations of another party, the primary obligor, to a third party, the creditor, in the event of a default by the primary obligor. *See Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *13 (S.D.N.Y. Aug. 11, 2006); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 1 cmts. f, g (1996); BLACK'S LAW DICTIONARY (9th ed. 2009); 38 AM. JUR. 2D GUARANTY § 1 (2014).

9. Like all contracts, acceptance is a crucial element in forming a valid guarantee contract. The United States Supreme Court in *Davis Sewing-Machine Co. v. Richards* explained:

> A contract of guaranty, like every other contract, can only be made by mutual assent of the parties. . . . [I]f the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, *needing an acceptance by the other party to complete the contract*.

115 U.S. 524, 525 (1885) (emphasis added).[3]

10. Specific guarantees identify the benefiting creditor or, "with precision," the underlying agreements being guaranteed. *See, e.g., Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 400 (S.D.N.Y. 2000) (stating that a valid guarantee must describe "with precision the obligation to which the person is bound"). Leumi has not alleged that LBHI ever issued a specific guarantee related to the Purchase Agreement.

---

[3] Furthermore, under the New York Statute of Frauds, a guaranty contract must be in writing and signed by the guarantor. *See* N.Y. GEN. OBLIG. LAW § 5-701(a)(2); *see also DeRosis v. Kaufman*, 641 N.Y.S.2d 831, 832–34 (1st Dep't 1996).

11. To benefit from a general guarantee, a creditor must show that it knew of the existence of the guarantee and acted in reliance upon its terms when entering into the transaction with the primary obligor. General guarantees are offers that can be accepted by anyone to whom they are presented and do not necessarily specify the particular transactions that will be guaranteed. *See Evansville Nat'l Bank v. Kaufman*, 93 N.Y. 273, 276 (1883); 38 AM. JUR. 2D GUARANTY § 14; *see also Philip Carey Co. v. Duffy*, 10 N.Y.S.2d 876, 876 (N.Y. App. Div. 1939). Acceptance of a general guarantee may be indicated by a party extending credit in reliance on the guarantee—and the extension of credit also qualifies as consideration for the guarantee. *See Evansville Nat'l Bank*, 93 N.Y. at 279; 63 N.Y. JUR. 2D GUARANTY & SURETYSHIP § 78 (2014); *see also Union Carbide Corp. v. Katz*, 489 F.2d 1374, 1376 (7th Cir. 1973); *Farmers' State Bank of York v. Brock*, 234 N.W. 92, 94 (Neb. 1931). As the court in *F.D.I.C. v. Schumacher*, 660 F. Supp. 6 (E.D.N.Y. 1984), explained:

> It is, of course, elementary that a creditor's right to enforce a contract of guaranty must be based upon knowledge of the existence of the guaranty and that the credit must be extended in reliance thereof[.]

*Id.* at 8 (citations omitted). Indeed, it is well-settled that:

> A "general" guaranty is addressed to persons generally and may be enforced by anyone to whom it is presented although it has been recognized that the person so acting must have had definite knowledge of the existence of the guaranty and acted in reliance on it.

38 AM. JUR. 2D GUARANTY § 14 (emphasis added).

12. Therefore, courts consistently require knowledge and reliance in enforcing claims based on general guarantees. *See, e.g.*, *Duffy*, 10 N.Y.S.2d at 876; *see also Joe Balestrieri & Co. v. Comm'r of Internal Revenue*, 177 F.2d 867, 873 (9th Cir. 1949) (recognizing the validity of guarantee claim where guarantee was made at the request of the prospective creditor and was delivered by the primary obligor); *J. C. Wattenbarger & Sons v.*

5

*Sanders*, 30 Cal. Rptr. 910, 915 (Dist. Ct. App. 1963) (rejecting guarantee claim where there was "no proof that credit was extended with knowledge of it and reliance upon it"); *Calcot Ass'n v. Coast Cotton Mills*, 295 P.2d 1, 4 (Cal. Dist. Ct. App. 1956) (recognizing guarantee claim where court recognized that product was delivered to the primary obligor "only because the guaranties had been made"). *Farmers' State Bank of York v. Brock*, for example, concerned a general guarantee signed by the primary obligor's stockholders so that the primary obligor could obtain further extensions of credit. 234 N.W. at 92–93. The court granted judgment only to those guarantee claim creditors "who had knowledge of it and extended credit to the association on the faith and credit of it." *Id.* at 94. As for the other creditors who provided insufficient evidence of knowledge and reliance, the court ruled that there was no consideration for the guarantee and denied judgment. *Id.*

13. To the extent that the Purported Guarantee is found to be a guarantee, it could be, at best, a general guarantee.[4] It does not identify any particular counterparty or transaction to which it might apply, and it certainly does not identify any "with precision." *See Cavendish Traders, Ltd.*, 117 F. Supp. 2d at 400. Accordingly, a guarantee claim based on the Purported Guarantee alone could be enforceable only by a creditor that establishes—as a required, prima facie element of its claim—that it knew of and relied upon the Purported Guarantee when transacting business with the relevant primary obligor.

14. Himfield has not provided any evidence that it knew of or relied upon the Purported Guarantee when entering into the Purchase Agreement. Consequently, Himfield does not have a valid guarantee claim against LBHI, and the Plan Administrator and the Court have no basis for allowing the Himfiled Claim.

---

[4] The Plan Administrator reserves all arguments as to whether the Purported Guarantee is a guaranty contract of any kind, as well as whether the Purported Guarantee would satisfy the Statute of Frauds.

## II. The Himfield Claim Would Be Subordinated Pursuant to Section 510(b) of the Bankruptcy Code

15. Even assuming, *arguendo*, that the Himfield Claim states a valid guarantee claim, the Himfield Claim must be subordinated to all general unsecured claims against LBHI's estate pursuant to the mandatory language of section 510(b) of the Bankruptcy Code. *See* 11 U.S.C. §510(b) (providing that "a claim arising from rescission of a purchase or sale of a security of the debtor or . . . for damages arising from the purchase or sale of such security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security"); *see also In re Enron Corp.*, 341 B.R. 141, 149 (Bankr. S.D.N.Y. 2006) ("a claim will be subordinated under section 510(b) if the claim is for damages and if those damages 'arise from' the purchase or sale of a security.").

16. Because the LBT Notes were issued by an affiliate of LBHI and the Himfield Claim arises from an alleged breach of an agreement to purchase the LBT Notes, the Himfield Claim falls squarely within the scope of section 510(b), in that it is "a claim arising from rescission of a purchase or sale of a security…of an affiliate of the debtor," or, alternatively, "for damages arising from the purchase or sale of such a security." The Himfield Claim would be properly classified in LBHI Class 11 of the Plan,[5] which includes claims against LBHI that are subject to section 510(b) of the Bankruptcy Code, unless such claims arise out of equity interests in LBHI. (Plan at § 4.16.)

17. The clear statutory language and binding Second Circuit precedent requires that the Himfield Claim be subordinated to all of the general unsecured claims in

---

[5] The Plan Administrator need not commence an adversary proceeding for this Court to subordinate the Himfield Claim because (i) the Himfield Claim is not yet "allowed" and (ii) the Plan provides for subordination of claims subject to section 510(b) of the Bankruptcy Code. FED R. BANKR. P. 7001(8) ("The following are adversary proceedings… (8) a proceeding to subordinate any *allowed* claim or interest, *except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination*") (emphasis added).

LBHI's chapter 11 case. Recently, both this Court and the District Court for the Southern District of New York held that claims just like those asserted in the Himfield Claim must be subordinated pursuant to section 510(b) of the Bankruptcy Code. *See In re Lehman Brothers Inc.*, 519 B.R. 434, 445 (S.D.N.Y. 2014), *aff'g In re Lehman Brothers Inc.*, 503 B.R. 778 (Bankr. S.D.N.Y. 2014). And the United States Court of Appeals for the Second Circuit recently held that claims related to the purchase or sale of securities of an affiliate of the debtor "should be subordinated in the debtor's bankruptcy proceeding to all claims or interests senior or equal to claims in the bankruptcy proceeding that are of the same type as the underlying securities (generally, secured debt, unsecured debt, common stock, etc.; and in some circumstances potentially a narrower sub-category)." *ANZ Securities, Inc. v. Giddens (In re Lehman Brothers Inc.)*, Case No. 14-3686, 2015 WL 8593604, at *3, 1 (2d Cir. Dec. 14, 2015) ("[Section 510(b)] treats the security of an 'affiliate' as a security of the debtor for this purpose.").

## RESERVATION OF RIGHTS

18. The Plan Administrator reserves all rights to object on any other bases to the Himfield Claim. The Plan Administrator reserves the right to conduct discovery as to the Himfield Claim and any matters raised by Himfield and to supplement this and other filings as a result thereof.

## NOTICE

19. No trustee has been appointed in these chapter 11 cases. Notice of this omnibus objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Himfield; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on

June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]. The Plan Administrator submits that no other or further notice need be provided.

20. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: December 21, 2015
      New York, New York

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                   :     Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :     08-13555 (SCC)
                                                        :
                        Debtors.                        :     (Jointly Administered)
------------------------------------------------------------------x

### ORDER GRANTING PLAN ADMINISTRATOR'S OBJECTION TO CLAIM 17562

Upon the objection to claim number 17562, dated December 21, 2015 (the "Objection"),[6] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to disallow and expunge the No Liability Claims pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, all as more fully described in the Objection; and due and proper notice of the Objection having been provided as stated therein, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted as set forth herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Himfield Claim is disallowed and expunged in its entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

---

[6] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Five Hundred Fifteenth Omnibus Objection to Claims.

matters arising from or related to this Order.

Dated: _____, 2016
      New York, New York

                                                      _____
                                                      UNITED STATES BANKRUPTCY JUDGE

11