**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                       :

In re:                                                         :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      Case No. 08-13555 (SCC)
                                                         :
                Debtors.                   :
------------------------------------------------------------------------x

**MEMORANDUM DECISION GRANTING PLAN ADMINISTRATOR'S MOTION FOR
SUMMARY JUDGMENT REGARDING CLAIM 67707 FILED BY SPANISH
BROADCASTING SYSTEM, INC.**

A P P E A R A N C E S:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
By:    Ralph I. Miller, Esq.
         Jacqueline Marcus, Esq.

*Attorneys for Lehman Brothers Holdings Inc.*

KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
By:    Madlyn Gleich Primoff, Esq.

*Attorneys for Spanish Broadcasting System, Inc.*

**SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE**

       Before the court is the Motion of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, for Summary Judgment Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc. (the "Motion") [ECF No. 50032].

       Spanish Broadcasting System, Inc. ("Spanish Broadcasting") filed proof of claim number 67707 (the "Claim") against Lehman Commercial Paper Inc. ("LCPI") on November 3, 2011.

*See* LBHI Facts[1] Ex. B. The Claim amends proof of claim number 15941, filed on September 18, 2009.[2] The Claim arises from that certain Credit Agreement, dated as of June 10, 2005, among Spanish Broadcasting, as borrower; LCPI, as lender and administrative agent; and certain other lenders (the "Credit Agreement"). *See* LBHI Facts Ex. C. By the Claim, Spanish Broadcasting seeks damages of $55,462,228.33 allegedly arising from the failure of LCPI, as lender under the Credit Agreement, to fund $10 million pursuant to a draw request made by Spanish Broadcasting on October 3, 2008. On July 10, 2012, LBHI, as Plan Administrator, objected to the Claim via its Three Hundred Twenty-Eighth Omnibus Objection to Claims (No Liability Claims) [ECF No. 29323] (the "Claims Objection").

On February 13, 2013, at a "Sufficiency Hearing"[3] on the Claim, the Honorable James M. Peck,[4] declined to disallow the Claim.[5] Thereafter, pursuant to a Claims Litigation Schedule with Respect to Claim No. 67707 Filed by Spanish Broadcasting System, Inc. and the Objection Interposed by Lehman Brothers Holdings Inc. [ECF No. 46498] (the "Scheduling Order"), as amended, the parties engaged in a discovery process. At an April 27, 2015 discovery conference before the Court, LBHI proposed that it should be permitted to file a summary judgment motion

---

[1] References to "LBHI Facts" are to that certain Statement of Undisputed Material Facts Pursuant to Local Rule 7056-1 in Support of Motion for Summary Judgment Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc. [ECF No. 50032].

[2] The Court disallowed and expunged proof of claim number 15941 on January 26, 2012 by entry of its Order Granting Debtors' Two Hundred Thirty-Seventh Omnibus Objection to Claims (Amended and Superseded Claims) [ECF No. 24682].

[3] Pursuant to the Court's April 19, 2010 Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors [ECF No. 8474], all hearings "to address the legal sufficiency of [a] particular Contested Claim and whether the Contested Claim states a claim against the asserted Debtor under Bankruptcy Rule 7012" shall be "Sufficiency Hearings," unless LBHI, as Plan Administrator serves the holder of a contested claim with a Notice of ADR Procedure or Notice of Merits Hearing. *Id.* ¶ 4(a). The standard of review for a Sufficiency Hearing is "equivalent to the standard applied by the Court upon a motion to dismiss for failure to state a claim." *Id.*

[4] The Honorable James M. Peck retired from the bench on January 31, 2014. These cases were transferred to the Honorable Shelley C. Chapman on February 1, 2014.

[5] Despite having ruled that Spanish Broadcasting "will get [its] day in court," Judge Peck noted that "the claims being asserted here are bloated, excessive, and probably not allowable." 2/13/13 Tr. 143:25-144:1; 143:17-18 (Peck).

2

on the issue of whether section 10.12(e) of the Credit Agreement, which comprised a waiver by Spanish Broadcasting of "any special, exemplary, punitive or consequential damages," survived termination of the Credit Agreement pursuant to that certain payoff letter, dated February 7, 2012 between LCPI and Spanish Broadcasting (the "Payoff Letter").  LBHI Facts Ex. C § 10.12(e); Miller Decl.[6] Ex. 4.  The parties subsequently exchanged discovery with respect to the negotiation of the Payoff Letter, and, on May 22, 2015, the Court entered a Stipulated Order Regarding Briefing Schedule Regarding Claim 67707 of Spanish Broadcasting System, Inc. [ECF No. 49706], thereby granting LBHI's request to file the Motion.

In accordance with the terms of the parties' agreement, LBHI filed the Motion together with a Memorandum of Law of Lehman Brothers Holdings Inc. in Support of Motion for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 [ECF No. 50033] on June 26, 2014.  Spanish Broadcasting filed its Memorandum of Law in Opposition to Motion by Lehman Brothers Holdings Inc. for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc. [ECF No. 50415] (the "Opposition") on July 23, 2015.  LBHI filed a Reply Memorandum of Law in Further Support of Motion for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc. [ECF No. 50596] (the "Reply") on August 13, 2015.  The Court heard oral argument on September 21, 2015, at which time it took the matter under advisement.

---

[6] References to "Miller Decl." are to that certain Declaration of Ralph I. Miller in Support of Motion for Summary Judgment Regarding Claim 67707 Filed by Spanish Broadcasting System, Inc., which document is attached as Exhibit A to the LBHI Facts.

For the reasons set forth in this Memorandum Decision, the Court will grant the Motion. Accordingly, the Claim, to the extent not already withdrawn, and with the exception of the Fee Damages (as defined below), shall be disallowed and expunged from the claims register.

## I. Factual Background

### A. *Credit Agreement*

The Credit Agreement, pursuant to which LCPI served as administrative agent and as lender, provided for a term loan of $325 million (the "Term Loan") and a revolving credit facility of $25 million (the "RCF"), which Spanish Broadcasting could draw upon at its election following closing. LBHI Facts ¶¶ 2, 3. LCPI was committed to fund $10 million of the $25 million RCF. LBHI Facts ¶ 4. The lenders under the Credit Agreement, including LCPI, fully funded the Term Loan in the amount of $325 million on June 10, 2005. LBHI Facts ¶ 10. Section 2.5(b) of the Credit Agreement required Spanish Broadcasting to submit a draw request on the RCF one business day prior to the borrowing date of the proposed loan. LBHI Facts Ex. C § 2.5(b). The Credit Agreement further provided, in section 10.12(e) (the "Damages Waiver"), that

> [Spanish Broadcasting] hereby irrevocably and unconditionally . . . waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding [relating to the Credit Agreement or other loan documents] any special, exemplary, punitive or consequential damages.

LBHI Facts Ex. C § 10.12(e).

### B. *Swap Agreement*

On or about June 28, 2005, Spanish Broadcasting entered into a 1992 form ISDA Master Agreement and schedule governing swap transactions (the "Master Agreement") with Lehman Brothers Special Financing Inc. ("LBSF"). *See* Miller Decl. Ex. 3. On June 29, 2005, Spanish Broadcasting and LBSF entered into a confirmation whereby LBSF agreed to pay Spanish

4

Broadcasting a floating rate of interest on a notional principal amount of $324,187,500 (which amount would decline by amortization payments through June 2010), and Spanish Broadcasting agreed to pay LBSF a fixed rate of 4.23% on the same notional principal amount (the "Swap"). *See id.*

LBHI served as Credit Support Provider under the Master Agreement. *Id.* at Sched. Pt. 4(g). On September 15, 2008, LBHI and certain of its subsidiaries[7] each filed a voluntary petition under chapter 11 of title 11 of the United States Code. *See* ECF No. 1. LBHI's bankruptcy entitled Spanish Broadcasting to terminate all outstanding transactions under the Master Agreement, including the Swap. Miller Decl. Ex. 3 §§ 5(a)(vii), 6. Spanish Broadcasting, however, did not terminate the Swap until June 17, 2010, upon its entry into that certain Hedge Amendment and Settlement Agreement with LBSF. LBHI Facts Ex. D at 1. Spanish Broadcasting estimates that, had it terminated the Swap on October 3, 2008, the date of the Draw Request (as defined below), Spanish Broadcasting would have owed LBSF a close-out payment of $6,008,991.58. Garcia Decl.[8] ¶ 31. When Spanish Broadcasting ultimately terminated the Swap on June 17, 2010, it paid a close-out payment of $10,311,965.00. *Id.*

### C. *LCPI's Failure to Fund*

As of September 30, 2008, Spanish Broadcasting held approximately $34 million in cash. Garcia Decl. ¶ 13. At that time, Spanish Broadcasting was guarantor under a note, dated January 4, 2007, between SBS Miami Broadcast Center, Inc. and Wachovia Bank (the "MBC Guaranty"). *Id.* ¶ 11, Ex. F. Under the terms of the MBC Guaranty, as of September 30, 2008,

---

[7] LBSF and LCPI are subsidiaries of LBHI, but did not file their own respective chapter 11 petitions until October 3 (LBSF) and October 5 (LCPI), 2008.

[8] References to "Garcia Decl." are to the Declaration of Joseph A. Garcia in Support of Spanish Broadcasting System, Inc.'s Opposition to Motion by Lehman Brothers Holdings Inc. for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 Filed By Spanish Broadcasting System, Inc. [ECF No. 50418].

Spanish Broadcasting was required to hold $8.5 million in cash. *Id.* ¶ 11, Ex. F at 6; that requirement left Spanish Broadcasting with $25.5 million of available cash on September 30, 2008. *Id.* ¶ 13.

At that time, the impending obligations of Spanish Broadcasting included (i) the maturity of its obligations under a secured promissory note, dated March 1, 2006, among Spanish Broadcasting, as maker, and BC Medic Funding Company II, LLC, as holder and assignee (the "Mega TV Note") in the amount of $18.5 million; (ii) a $5 million interest payment on the Term Loan payable in December 2008; and (iii) a $2.5 million dividend on preferred stock, payable in cash or in kind at Spanish Broadcasting's discretion. Opp'n at 7; Garcia Decl. ¶ 13.

On October 3, 2008, Spanish Broadcasting submitted a draw request for the full amount of the $25 million RCF (the "Draw Request"). Miller Decl. Ex. 1. Spanish Broadcasting intended to use the funds, plus a portion of cash on hand, to (i) pay off the $18.5 million Mega TV Note; (ii) terminate the Swap with LBSF and make a close-out payment of approximately $6 million; (iii) fund $4 million in advertising and marketing expenses; and (iv) pay the $5 million December 2008 interest payment on the Term Loan. Garcia Decl. ¶ 14. The Draw Request stated that the borrowing date for the proposed $25 million loan would be October 6, 2008. *Id.* As noted, LCPI commenced its chapter 11 case on October 5, 2008; it did not fund its $10 million portion of the Draw Request. *See* Miller Decl. Ex. 2. As administrative agent, LCPI facilitated the funding of the $15 million due from other lenders to Spanish Broadcasting. *Id.* Thus, Spanish Broadcasting received $15 million of the $25 million it requested pursuant to the Draw Request.

6

### D. The Claim and Damages Alleged

The Claim seeks damages of $55,462,228.33. LBHI Facts Ex. B. Spanish Broadcasting filed the Credit Agreement and a report of Capstone Advisory Group, LLC (the "Capstone Report"), Spanish Broadcasting's financial advisor, as exhibits to the Claim. LBHI Facts Exs. C, D. According to the Capstone Report, Spanish Broadcasting's asserted damages are comprised of the following:

- $39.6 million in damages stemming from the expected decline in Spanish Broadcasting's "total invested capital … as defined by the market value of common equity, preferred equity, long-term debt, cash, and minority interest, versus the actual decline … that [Spanish Broadcasting] experienced";
- $9,886,745 in damages as a result of Spanish Broadcasting's alleged inability to terminate the Swap;
- $273,333.33 in fees paid to LCPI, as administrative agent, over the life of the Credit Agreement (the "Fee Damages"); and
- $5,702,150 in costs Spanish Broadcasting allegedly incurred in replacing LCPI's $10 million commitment to fund the RCF ("Replacement Cost Damages").

LBHI Facts Ex. D at 1, 2, 16, 17. The parties have agreed that the Fee Damages are not a subject of the Motion. Moreover, subsequent to the filing of the Claim, Spanish Broadcasting withdrew the portion of the Claim seeking Replacement Cost Damages.

Despite the fact that Spanish Broadcasting has not formally amended the Claim, its iteration of alleged damages has varied throughout these proceedings. In its response to Interrogatory No. 13, which was served on Spanish Broadcasting by LBHI pursuant to the Scheduling Order, Spanish Broadcasting asserted that "[a] detailed computation of damages is premature at this time," but nonetheless asserted damages in excess of $47.8 million, as follows:

- $30.3 million in impacted EBITDA[9] resulting from LPCI's failure to fund its portion of the Draw Request (the "EBITDA Damages");
- $17.2 million in damages relating to Spanish Broadcasting's inability to terminate the Swap on October 3, 2008 (the "Swap Damages");

---

[9] EBITDA is "earnings before interest, taxes, depreciation, and amortization, and is "used as an indicator of a company's profitability and ability to service its debt." BLACK'S LAW DICTIONARY (10th ed. 2014).

7

- $273,333.33 in fees paid to LCPI, as administrative agent, on account of the portion of the Draw Request that LCPI failed to fund;
- Interest on the foregoing; and
- Spanish Broadcasting's costs, expenses and reasonable attorneys' fees relating to [this dispute], including, without limitation, all costs, expenses, and fees relating to Spanish Broadcasting's testifying and non-testifying experts.

Miller Decl. Ex. 6 at 23-24.

In the Opposition, Spanish Broadcasting asserts damages in the aggregate amount of $41.9 million, as follows:

- EBITDA Damages: $24.5 million, resulting from Spanish Broadcasting's lack of $4 million in funds needed for marketing expenses;
- Swap Damages: $17,054,558, resulting from Spanish Broadcasting's inability to terminate the Swap on October 3, 2008; and
- Fee Damages: $343,333 in fees paid to LCPI, as administrative agent, on account of the portion of the Draw Request that LCPI failed to fund.

Opp'n at 10.

### E. *Payoff Letter*

Spanish Broadcasting had agreed to repay the aggregate outstanding principal balance of the Term Loan no later than the Term Loan Maturity Date, defined as June 10, 2012. LBHI Facts Ex. C § 1.1. Pursuant to the Payoff Letter, Spanish Broadcasting and LCPI terminated the Credit Agreement on February 7, 2012. Miller Decl. Ex. 4. Section 1(a) of the Payoff Letter provided, in relevant part, that, as of the effective date of the Payoff Letter

> all outstanding Loans and all other amounts owing by [Spanish Broadcasting] under the Credit Agreement (including all principal, accrued interest and fees) shall be paid in full and the Credit Agreement and all obligations of [Spanish Broadcasting] and the other Loan Parties thereunder and under the other Loan Documents shall be terminated other than contingent obligations which expressly survive the terms of the Credit Agreement or such other Loan Documents, including without limitation, Section 10.5 of the Credit Agreement.

Miller Decl. Ex. 4 § 1(a).

8

The Payoff Letter also contains a broad release by Spanish Broadcasting of any claims "to the extent arising out of or in connection with the [Credit Agreement and other loan documents] including, without limitation, any failure by the Lehman [sic] or any of its affiliates to fund any Loan required to be funded by it under the Credit Agreement" (the "Release"). Miller Decl. Ex. 4 § 4. The Claim is excluded from the Release. *Id.* The Payoff Letter does not contain a release of claims or defenses by LCPI. LBHI Facts ¶ 31; *see generally* Miller Decl. Ex. 4.

## II. Applicable Standard of Review

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," and the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(a); *see NML Capital v. Republic of Argentina,* 621 F.3d 230, 236 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Redd v. Wright*, 597 F.3d 532, 535-36 (2d Cir. 2010)). The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party. *See NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (citing *Liberty Lobby*, 477 U.S. at 255; *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991)). In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Liberty Lobby*, 477 U.S. at 249 (internal quotation marks omitted)).

By the Motion, LBHI seeks a ruling that (i) the Damages Waiver was a waiver of all consequential and special damages and (ii) the EBITDA Damages and the Swap Damages are barred by the Damages Waiver. In order to determine whether LBHI should be granted

9

summary judgment, the Court must examine (i) whether, as is asserted by LBHI, the Damages Waiver is enforceable in light of the Payoff Letter and (ii) if so, whether the EBITDA Damages and Swap Damages constitute consequential damages.

### III. Discussion

#### A. The Damages Waiver

##### 1. There Is No Issue of Fact with Respect to the Existence of the Damages Waiver

LBHI asserts that the Damages Waiver is part of the parties' bargain that should be enforced according to its terms. Spanish Broadcasting argues, however, that the existence of a waiver is itself a question of fact that depends on the intent of the parties, and, therefore, summary judgment is inappropriate. Opp'n at 20 (citing *NetTech Solutions L.L.C. v. ZipPark.com*, No. 01 Civ. 2683 (SAS), 2001 WL 1111966 (S.D.N.Y. Sept. 20, 2001); *In re Caldor*, 217 B.R. 121 (Bankr. S.D.N.Y. 1998)). The Court agrees with LBHI.

A waiver is an "intentional relinquishment of a known right." *Voest-Alpine International Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983). "The intention to relinquish a right may be established either as a matter of law or [as a matter of] fact." *Id.*; *see also Semtex Corp. v. UBAF Arab Am. Bank*, 51 F.3d 13, 14 (2d Cir. 1995) (quoting *Voest-Alpine*). Waiver is established as a matter of law where a party's "express declarations … are so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary." *Voest-Alpine*, 707 F.2d at 685 (internal quotation marks and citation omitted).

Spanish Broadcasting's reliance on *NetTech Solutions* and *Caldor* in support of its argument is misplaced inasmuch as those cases involved implied waivers, thereby necessitating an examination of the parties' conduct and making summary judgment inappropriate. *See*

10

*NetTech Solutions*, 2001 WL 1111966 at *6 (explaining that "[moving] defendants argue that plaintiffs' correspondence and actions establish plaintiffs['] waiver of" certain claims at issue); *Caldor*, 217 B.R. at 133 (addressing alleged implied waiver of right to recover overpayments under a lease agreement). Here, by contrast, Spanish Broadcasting clearly manifested its intent to relinquish its right to consequential damages when it agreed to include language in the Credit Agreement stating that it "irrevocably and unconditionally … waives … any special, exemplary, punitive or consequential damages." LBHI Facts Ex. C § 10.12(e). Because there was no implied waiver here, but rather, an explicit written damages waiver, the Court need not examine the parties' intent.

Limitation on liability provisions routinely are agreed upon by parties to contracts and enforced by courts inasmuch as they "represent[] the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed … ." *Metro Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 643 N.E. 2d 504, 507 (N.Y. 1994); *see also My Play City, Inc. v. Conduit Ltd.*, 589 Fed. App'x 559, 562 (2d Cir. 2014). While parties "may later regret their assumption of the risks of non-performance in this manner … the courts let them lie on the bed they made." *Metro Life Ins.*, 643 N.E. 2d at 507 (quoting 5 CORBIN ON CONTRACTS § 1086). The Court finds that, by entering into the Credit Agreement containing the Damages Waiver, as of June 10, 2005, Spanish Broadcasting waived its right to, among other things, seek consequential damages on account of the Credit Agreement and its related loan documents.

### 2. *The Damages Waiver Survived the Termination of the Credit Agreement*

Spanish Broadcasting next argues that the plain language of the Payoff Letter as well as communications between counsel to the parties to the Payoff Letter surrounding its negotiation

11

and execution establish that the Damages Waiver did not survive termination of the Credit Agreement.  Opp'n at 21.  Alternatively, Spanish Broadcasting submits that those communications give rise to an issue of fact as to whether the parties intended for the Damages Waiver to survive termination of the Credit Agreement via the Payoff Letter.  *Id.*

Pursuant to the express language of the Payoff Letter, which provides that "all obligations of [Spanish Broadcasting] and the other Loan Parties [under the Credit Agreement] and under the other Loan Documents shall be terminated," the parties terminated all of Spanish Broadcasting's "obligations" under the Credit Agreement, save for those contingent obligations that expressly survived under the Credit Agreement or other loan documents.  *See* Miller Decl. Ex. 4 § 1(a). Spanish Broadcasting asserts, without support, that the Damages Waiver constitutes an "obligation" of Spanish Broadcasting under the Credit Agreement because it "required Spanish Broadcasting to waive its right to claim or recover consequential damages."  Opp'n at 12. Accordingly, Spanish Broadcasting contends that section 1(a) of the Payoff Letter terminated the Damages Waiver because it was an obligation of Spanish Broadcasting under the Credit Agreement that did not expressly survive termination under the terms of the Credit Agreement or other loan documents.  *Id.*

The Damages Waiver is not, on its face, a continuing "obligation," and Spanish Broadcasting has offered no legal support for its argument that it should be considered one under the Payoff Letter.  Rather, the Damages Waiver is, by its terms, an irrevocable and unconditional relinquishment of rights that was complete and required no further action from Spanish Broadcasting upon execution of the Credit Agreement in June 2005.  By the Payoff Letter, the parties did not revoke or undo the Damages Waiver.  *See generally* Miller Decl. Ex. 4.  The Payoff Letter terminated only "obligations" and does not affect the enforceability of the

12

Damages Waiver; accordingly, there is no material issue of fact as to whether the parties intended the Damages Waiver to survive.[10] The Damages Waiver remains an unconditional and enforceable waiver of Spanish Broadcasting's right to bring suit for consequential damages that was effective as of the execution of the Credit Agreement in 2005.[11]

### 3. *Characterization of Damages as Direct or Consequential Does Not Raise an Issue of Fact*

The parties do not dispute that the Damages Waiver, if enforceable, bars suits for consequential damages, but not direct damages, resulting from LCPI's failure to fund its portion of the RCF. Direct damages are "those which are the natural and probable consequence of the breach." *Am. List Corp. v. U.S. News and World Report, Inc.*, 549 N.E.2d 1161, 1164 (N.Y. 1989), while consequential damages "compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." *Global Crossing Telecommuns., Inc. v. CCT Communs., Inc. (In re CCT Communs., Inc.)*, 464 B.R. 97, 117 (Bankr. S.D.N.Y. 2011) (quoting *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000)).

Spanish Broadcasting asserts that the characterization of damages is an issue of fact that must be reserved for trial. Opp'n at 28-29. That assertion is incorrect. *See PNC Bank, N.A. v. Wolters Kluwer Fin. Servs., Inc.*, 73 F.Supp. 3d 358, 372 (S.D.N.Y. 2014) (finding that "to the extent PNC argues that the characterization of its damages request is a question of fact that may not be resolved on summary judgment … it is wrong"). Indeed, "[c]ourts in this District have

---

[10] The Court finds that, for the reasons described in the Reply, the cases cited by Spanish Broadcasting for the proposition that a survival provision was required to preserve the Damages Waiver are inapposite. *See* Reply at 9-11.

[11] Moreover, Spanish Broadcasting, by its reliance on the history of negotiations of the Payoff Letter, essentially asks the Court to disregard the plain language of the agreement. The Court declines to do so. *See Hickman v. Saunders*, 645 N.Y.S.2d 49, 51 (App. Div. 1996) (explaining that, under New York law, "if the language of [a written] agreement is free from ambiguity, its meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence").

often determined, at the summary judgment stage, whether damages claims are general[12] or consequential." *Id.* (citing *Phoenix Warehouse of Calif., LLC v. Townley, Inc.*, No. 08 Civ. 2856 (NRB), 2011 U.S. Dist. LEXIS 37206, 2011 WL 1345134 (S.D.N.Y. Mar. 29, 2011); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314 (S.D.N.Y. 2009); *E. Brass & Copper Co. v. Gen. Elec. Supply Corp.*, 101 F. Supp. 410 (S.D.N.Y. 1951)).

### *4. The Alleged Damages are Consequential and, Therefore, Have Been Waived*

Spanish Broadcasting has submitted purported expert reports[13] of James Trautman and Christopher J. Kearns.[14] Both reports contain statements that Spanish Broadcasting submits "expressly state, based on an in-depth analysis of Spanish Broadcasting's damages," that such damages "are the natural and probable consequence of [LCPI's] failure to fund the [Draw Request]." Opp'n at 30. Spanish Broadcasting relies on these reports in support of its position that its asserted damages, including the EBITDA Damages and the Swap Damages, constitute direct damages rather than consequential damages.

Specifically, with respect to the EBITDA Damages, Spanish Broadcasting, relying on the Trautman Report, asserts that, as a result of the decline in marketing and promotional expenditures in the affected markets caused by LCPI's failure to fund, Spanish Broadcasting experienced declines in audience ratings and, therefore, a decline in advertising revenue. Opp'n at 30; Trautman Report ¶¶ 7, 12-22. Mr. Trautman states that the decline in advertising revenue

---

[12] General damages are synonymous with "direct" damages. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (noting that "general damages" are also termed "direct damages").

[13] The Court adopts LBHI's characterization of Messrs. Trautman and Kearns as "purported" experts because neither has been qualified as an expert under the Federal Rules of Evidence. *See* Reply at 19; Fed. R. Evid. 702.

[14] The reports are annexed as Exhibits 1 (Expert Report of James Trautman (the "Trautman Report")) and 2 (Expert Report of Christopher J. Kearns (the "Kearns Report")) to the Declaration of Madlyn Gleich Primoff in Support of Spanish Broadcasting System, Inc.'s Opposition to Motion by Lehman Brothers Holdings Inc. for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure Regarding Claim 67707 Filed By Spanish Broadcasting System, Inc. [ECF No. 50421].

was the natural and probable consequence of the reduction in marketing and promotional expenditures. Trautman Report ¶¶ 7-9.

With respect to Swap Damages, Spanish Broadcasting asserts that, as a direct result of LCPI's failure to fund its $10 million portion of the RCF, Spanish Broadcasting did not have sufficient funds to terminate the Swap and make an approximately $6 million close-out payment. Opp'n at 8. Mr. Kearns concludes that (i) Spanish Broadcasting could not have obtained replacement financing; (ii) the intended uses of the Draw Request are consistent with the permitted use of revolving credit facility proceeds under the Credit Agreement; and (iii) Spanish Broadcasting's alleged damages were the natural and probable consequence of LCPI's failure to fund the Draw Request. Kearns Report at 3-7, 8, 15.

A close examination of the Trautman Report and the Kearns Report reveals, however, that both reports are replete with unsupported conclusory statements and legal conclusions and, in some instances, sheer speculation. For example, Mr. Trautman states that he bases his report in part on (i) advice he received from Spanish Broadcasting's counsel that direct damages are "the natural and probable consequence of a breach of contract;" and (ii) Spanish Broadcasting's representation that it would have used $4 million of the $10 million requested from LCPI for marketing and promotional expenses. Trautman Report ¶¶ 4, 5. Mr. Kearns, on the other hand, concludes that Spanish Broadcasting could not have obtained replacement financing, notwithstanding Spanish Broadcasting's failure to provide evidence that it actually sought replacement financing. Kearns Report at 3-7; Reply at 22 n. 14. Neither the Trautman Report nor the Kearns Report supports the conclusion that the damages alleged by Spanish Broadcasting constitute direct damages.

LBHI correctly asserts that Spanish Broadcasting essentially seeks lost profits through its claim for EBITDA Damages, which may be recovered as direct damages only when they represent amounts a breaching party agreed to pay under the contract at issue. The Second Circuit has explained, however, that lost profits constitute consequential damages when "the non-breaching party suffers loss of profits on collateral business arrangements." *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 109 (2d Cir. 2007). In *Compania Embotelladora*, cited by LBHI in support of is position, the plaintiff sought "to recover lost profits from lost sales to third-parties that [were] not governed" by the parties' contract. 650 F. Supp. 2d at 322. The court held that the damages were "properly characterized as consequential damages, because, as a result of [the defendant's alleged] breach, [plaintiff] suffered lost profits on collateral business arrangements." *Id. See also In re Vivaro Corp.*, No. 12-13810, 2014 WL 486288 at *4 (Bankr. S.D.N.Y. Feb. 6, 2014) (characterizing as consequential damages plaintiff's "lost profits from unmade sales to third-parties in collateral transactions, none of which would have been governed by the contract between" the parties).

Here, Spanish Broadcasting, like the plaintiffs in *Compania Embotelladora* and *Vivaro Corp.*, is essentially seeking lost profits on collateral business arrangements through its claim for EBITDA Damages. Relying on the Trautman Report, Spanish Broadcasting attempts to characterize the EBITDA Damages as "diminution in value" damages allegedly resulting from Spanish Broadcasting's inability to spend $4 million on marketing expenses. *See* Opp'n at 29-33. In fact, the Trautman Report demonstrates that the EBITDA Damages are properly characterized as lost profits. Specifically, Mr. Trautman concludes:

> I estimate that the aggregate loss in gross advertising sales for [Spanish Broadcasting] in calendar year 2010 attributable to the reduced marketing and promotional spending (i.e., compared to the position [Spanish Broadcasting] would have been in had [LCPI] performed under the contract) amounted to on the

16

>order of $13 million.  Moreover, it is my opinion that the effects of the reduction in spending on [Spanish Broadcasting's] market position and advertising sales performance have been **ongoing**, since lost awareness and/or loyalty would only be "recoverable" as a result of an exceptional (and costly) promotional effort to recapture it.

Trautman Report ¶ 7 (emphasis in original).  In other words, Mr. Trautman characterizes the EBITDA Damages as lost advertising revenue, *i.e.*, lost profits.  The EBITDA Damages are thus consequential damages and would be recoverable only if LCPI had agreed to pay them pursuant to the Credit Agreement.  LCPI did not do so.  Accordingly, the EBITDA Damages are consequential damages subject to the Damages Waiver.

LBHI also correctly asserts that the Swap Damages are not the "natural and probable consequence" of LCPI's failure to fund such that the Swap Damages could be considered direct damages.  *See, e.g., Am. List Corp. v. U.S. News and World Report, Inc.*, 549 N.E.2d 1161, 1164 (N.Y. 1989) (holding that direct damages are "those which are the natural and probable consequence of the breach").  Rather, the Swap Damages comprise losses resulting from a collateral business relationship with LBSF, and, as such, bear no relationship to LCPI's failure to fund the Draw Request.  The Swap Damages, like the EBITDA Damages, are consequential damages.

Moreover, as LBHI argues, in order to demonstrate as a factual matter that the Swap Damages are the natural and probable consequence of LCPI's failure to fund, Spanish Broadcasting would need to show not only that it would have terminated the Swap had it received the $10 million from LCPI but also that without the $10 million from LCPI, Spanish Broadcasting had no alternative but to keep the Swap in place.  *See* Mem. Supp. Mot. at 28.  Such a showing is not possible on the basis of the record before the Court.

17

As of October 6, 2008, when LCPI failed to fund its $10 million portion of the RCF and Spanish Broadcasting received $15 million from the RCF, its available cash and impending payment obligations were as follows:

- $49 million of cash ($34 million plus $15 million RCF);
- $8.5 million required to be kept pursuant to the MBC Guaranty;
- $18.5 million payable on the Mega TV Note on January 2, 2009;
- $5 million interest payment on the Term Loan, payable in December 2008;
- $2.5 million dividend on preferred stock, payable in cash or in kind, on October 15, 2008.

Accordingly, on October 6, 2008, when Spanish Broadcasting had the right to terminate the Swap and make a close-out payment to LBSF of approximately $6 million, it had $40.5 million of cash available to do so. Indeed, whether Spanish Broadcasting opted to pay the preferred stock dividend in kind or in cash, it still could have elected to prioritize the remainder of its funds differently than it actually did. For example, it could have paid its upcoming $23.5 million in obligations, and made the $6 million close-out payment to terminate the Swap, while retaining $11 million in available cash. Accordingly, LCPI's failure to fund its portion of the RCF did not limit Spanish Broadcasting's ability to terminate the Swap. Thus, Spanish Broadcasting's decision not to terminate the Swap was in every sense just that: Spanish Broadcasting's decision. The resulting Swap Damages were not a natural and probable consequence of LCPI's failure to fund that would render such damages "direct damages" under applicable case law. Thus, the Swap Damages are not direct damages caused by LCPI's breach and therefore must be considered consequential damages subject to the Damages Waiver.

**IV. Conclusion**

For the reasons stated, the Motion is granted. To the extent not already withdrawn, and with the exception of the Fee Damages, the Claim shall be disallowed in its entirety and

expunged from the claims register.   LBHI is directed to settle an order consistent with this

Memorandum Decision.

Dated: December 29, 2015
New York, New York

                                              /s/ Shelley C. Chapman
                                              UNITED STATES BANKRUPTCY JUDGE