ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*application to be filed*)
Lindsay A. Unruh *(application to be filed)*
Corey Longhurst *(application to be filed)*

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>- against -<br><br>STANDARD PACIFIC MORTGAGE, INC. f/k/a FAMILY LENDING SERVICES, INC.,<br><br>Defendant. | Adversary Proceeding<br><br>No. _____ |

**ADVERSARY COMPLAINT**

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan") for its Complaint against Defendant Standard Pacific Mortgage, Inc. f/k/a Family Lending Services, Inc. ("Standard Pacific" or "Defendant"), alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other

matters, as follows:

## NATURE OF ACTION

1. In this action, LBHI seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims, judgments and any other costs, fees and expenses LBHI incurred as a result of Defendant's sale of twenty-four defective mortgage loans in breach of Defendant's representations, warranties and covenants concerning those loans (the "Defective Loans") and/or from other acts or omissions of Defendant.

2. LBHI sold the Defective Loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") under agreements that included representations and warranties about the Defective Loans that were co-extensive with those made by Defendant. LBHI retained the right to seek indemnification from Defendant in the event it became liable for certain indemnified events. After Fannie Mae and Freddie Mac discovered that the mortgage loans breached certain of those representations and warranties, Fannie Mae and Freddie Mac made claims upon LBHI for losses suffered on the Defective Loans. In January and February 2014, respectively, the Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754), triggering LBHI's right to indemnification under the Agreements, as defined below, with Defendant.

3. By this action, LBHI seeks to recover money damages from Defendant for the indemnification claim.

## PARTIES

4.     On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code.  LBHI is a Delaware corporation with its principal place of business in New York, New York.

5.     Upon information and belief, Defendant is a Delaware corporation with its principal place of business in Irvine, California.

## JURISDICTION AND VENUE

6.     This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.     This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

8.     Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

9.     This Court has personal jurisdiction over Defendant.

## FACTUAL BACKGROUND

10.    At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), and then sold the loans to third parties, including Fannie Mae and Freddie Mac.

11.    At all relevant times, Defendant engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

A.      **The Governing Agreements**

12.     This dispute arises out of Defendant's sale of residential mortgage loans to LBHI's assignor, LBB, under two Loan Purchase Agreements between LBB and Defendant, both dated September 8, 2004 (the "LPAs"). A true and correct copy of the September 8, 2004 Servicing Released Transactions Loan Purchase Agreement is attached hereto as Exhibit A. A true and correct copy of the September 8, 2004 Bulk Purchase/Servicing Released Transactions Loan Purchase Agreement is attached hereto as Exhibit B.

13.     The LPAs specifically incorporate the terms and conditions of the Seller's Guide of Lehman's loan administrator, Aurora Loan Services LLC (individually, the "Seller's Guide," and together with the LPAs, the "Agreements"), which sets forth additional duties and obligations of Defendant.[1]

14.     The Seller's Guide in its entirety is valid and binding upon Defendant. Attached hereto as Exhibit C are the specific sections most directly pertinent to the claims in this Complaint.

15.     The Agreements set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and conveyance of the mortgage loans and mortgage loan documents.

16.     The Agreements also set forth Defendant's duties and obligations regarding examination of mortgage loan files and underwriting; representations and warranties concerning the parties and individual mortgage loans purchased or sold; and Defendant's indemnification obligation.

---

[1] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time Defendant sold the loan to LBB. Although the language of certain sections referenced throughout this Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

4

17. Pursuant to the Agreements, Defendant sold to LBB the Defective Loans described herein.

18. Defendant sold Loan ******3184 to LBB pursuant to the terms of the Agreements on November 6, 2006.

19. Defendant sold Loan ******2233 to LBB pursuant to the terms of the Agreements on March 7, 2007.

20. Defendant sold Loan ******3062 to LBB pursuant to the terms of the Agreements on May 1, 2007.

21. Defendant sold Loan ******4327 to LBB pursuant to the terms of the Agreements on March 30, 2007.

22. Defendant sold Loan ******8029 to LBB pursuant to the terms of the Agreements on May 4, 2007.

23. Defendant sold Loan ******6708 to LBB pursuant to the terms of the Agreements on April 16, 2007.

24. Defendant sold Loan ******7260 to LBB pursuant to the terms of the Agreements on May 14, 2007.

25. Defendant sold Loan ******7123 to LBB pursuant to the terms of the Agreements on September 18, 2006.

26. Defendant sold Loan ******3753 to LBB pursuant to the terms of the Agreements on June 11, 2007.

27. Defendant sold Loan ******0373 to LBB pursuant to the terms of the Agreements on January 3, 2007.

28. Defendant sold Loan ******0019 to LBB pursuant to the terms of the

Agreements on January 22, 2007.

29. Defendant sold Loan ******7022 to LBB pursuant to the terms of the Agreements on July 16, 2007.

30. Defendant sold Loan ******5767 to LBB pursuant to the terms of the Agreements on November 22, 2006.

31. Defendant sold Loan ******6257 to LBB pursuant to the terms of the Agreements on April 13, 2007.

32. Defendant sold Loan ******8898 to LBB pursuant to the terms of the Agreements on December 28, 2006.

33. Defendant sold Loan ******7466 to LBB pursuant to the terms of the Agreements on May 14, 2007.

34. Defendant sold Loan ******8620 to LBB pursuant to the terms of the Agreements on October 23, 2006.

35. Defendant sold Loan ******7375 to LBB pursuant to the terms of the Agreements on May 18, 2007.

36. Defendant sold Loan ******8366 to LBB pursuant to the terms of the Agreements on May 21, 2007.

37. Defendant sold Loan ******9161 to LBB pursuant to the terms of the Agreements on September 15, 2006.

38. Defendant sold Loan ******4177 to LBB pursuant to the terms of the Agreements on April 2, 2007.

39. Defendant sold Loan ******0623 to LBB pursuant to the terms of the Agreements on July 11, 2007.

40. Defendant sold Loan ******3196 to LBB pursuant to the terms of the Agreements on October 26, 2006.

41. Defendant sold Loan ******0127 to LBB pursuant to the terms of the Agreements on April 24, 2007.

42. The parties agreed that Defendant's obligations would extend to any subsequent purchasers and/or assignees of the loans, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." See Seller's Guide § 8. In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the Defective Loans.

43. Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the Agreements. See Seller's Guide § 711. Accordingly, LBHI as a "subsequent holder" (and third-party beneficiary) of the Defective Loans is entitled to all of the benefits of the Agreements, including the right to indemnification.

B.   **Defendant's Representations Under the Agreements**

44. With respect to each of the loans sold to LBB under the Agreements, Defendant made a number of representations, warranties and covenants concerning the quality of the mortgage loans.

45. Specific examples of Defendant's representations, warranties and covenants concerning the quality of the mortgage loans include, but are not limited, to the following:

> a) No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).
>
> b) Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees,

7

pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

c) The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

d) There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration. Seller's Guide § 703(18).

e) The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Product Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

f) The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certifications), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. Seller's Guide § 703(24).

g) Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal

8

and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof. The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan. Seller's Guide § 703(36).

46. In certain instances, Defendant was also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, Defendant additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

47. Defendant represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreements. See Seller's Guide § 702(5).

48. LBHI relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans. Specifically, Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties as set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

49. Defendant agreed to indemnify LBHI from liabilities, claims, judgments, losses

9

and expenses it might sustain as a result of the Defective Loans, including attorneys' fees. Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligation hereunder, including, without limitation, the repurchase obligation set forth above.

### C.     LBHI's Settlements with Fannie Mae and Freddie Mac

50.    Fannie Mae and Freddie Mac discovered breaches of representations, warranties and/or covenants in the Defective Loans that were co-extensive with the representations and warranties contained in the Agreements.

51.    Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on breaching mortgage loans sold to them by LBHI.

52.    LBHI examined Fannie Mae's and Freddie Mac's claims, and determined that the Defective Loans contained various defects which violated the representations, warranties and/or covenants under the Agreements, including but not limited to the representations and warranties that all the information provided in the loan files were true and correct and that the loans met certain origination and underwriting requirements. Defendant's breaches, acts or omissions thus resulted in LBHI's liability to Fannie Mae and Freddie Mac, which liability was settled.

53. The Bankruptcy Court approved LBHI's settlements with Fannie Mae and Freddie Mac.

54. The settlements triggered LBHI's right to indemnification under the Agreements with Defendant.

**D.    Defendant's Obligation to Indemnify LBHI**

55. Defendant agreed to indemnify LBHI from liabilities, claims, judgments, losses, and expenses it might sustain as a result of the Defective Loans. See Seller's Guide § 711.

56. LBHI demanded that Defendant indemnify LBHI, which demand was refused by Defendant.

57. Defendant's failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae and Freddie Mac constitutes a breach of Defendant's contractual indemnification obligations.

58. There may be additional breaches of Defendant's representations, warranties and covenants concerning the quality of the Defective Loans for which LBHI has not provided written notice to Defendant, or that LBHI may identify in the course of this adversary proceeding.

59. Pursuant to Section 8 of the Loan Purchase Agreements and Section 713 of the Seller's Guide, the laws of the State of New York govern this contract action.

60. All conditions precedent to bringing this action have been met, occurred or have been waived.

**FIRST CLAIM FOR RELIEF**

**(Contractual Indemnification)**

61. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

11

62. The Agreements are valid and enforceable contracts that are binding upon Defendant.

63. LBHI has substantially performed all of its obligations under the Agreements.

64. Defendant is required to indemnify LBHI for LBHI's liability to Fannie Mae and Freddie Mac with respect to the Defective Loans.

65. Defendant breached the Agreements by failing to indemnify LBHI for its liabilities, losses, claims, judgments and any other costs, fees and expenses as to the Defective Loans.

66. Defendant's breaches of the Agreements as to the Defective Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs, and all other fees and costs provided by the Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

a) For all damages arising from or relating to Defendant's indemnification obligation and breach of contract, in an amount to be determined at trial;

b) For recoverable interest;

c) For the costs and expenses incurred by LBHI in enforcing Defendant's obligations under the Agreements, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

d) Providing for such other relief as the Court deems just and proper.

Dated: January 6, 2016

*s/ Michael A. Rollin*
Michael A. Rollin
Maritza Dominguez Braswell *(application to be filed)*
Lindsay A. Unruh *(application to be filed)*
Corey Longhurst *(application to be filed)*

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Counsel for Lehman Brothers Holdings Inc.*

13