ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell *(application to be filed)*
Lindsay A. Unruh *(application to be filed)*
Tara K. Williams *(application to be filed)*

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br>- against -<br><br>AMERICAN BANK and CONGRESSIONAL BANCSHARES, INC. (successor-in-interest),<br><br>Defendants. | Adversary Proceeding<br><br>No. _____ |

## ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its

Affiliated Debtors (the "Plan"), for its Complaint against Defendants American Bank

("American") and Congressional Bancshares, Inc. ("Congressional," and collectively with

American, "Defendants"), alleges upon knowledge as to itself and its own conduct, and upon

information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.      In this action, LBHI seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims, judgments, and any other costs, fees, and expenses LBHI incurred as a result of American's sale of five defective mortgage loans in breach of American's representations, warranties and covenants concerning those loans (the "Defective Loans") and/or from other acts or omissions of American.

2.      LBHI sold the Defective Loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") under agreements that included representations and warranties about the Defective Loans that were co-extensive with those made by American.  LBHI retained the right to seek indemnification from American in the event it became liable for certain indemnification events.  After Fannie Mae and Freddie Mac discovered that the Defective Loans breached certain of those representations and warranties, Fannie Mae and Freddie Mac made claims upon LBHI for losses suffered on the Defective Loans. In January and February 2014, respectively, the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754), triggering LBHI's right to indemnification under the Agreements, as defined below.

3.      By this action, LBHI seeks to recover money damages from Defendants for the indemnification claim.

## PARTIES

4.      On September 15, 2008, Plaintiff LBHI commenced with the Bankruptcy Court a voluntary case under Chapter 11 of the Bankruptcy Code.  LBHI is a Delaware corporation with its principal place of business in New York, New York

5.      Upon information and belief, American is a federal savings association with its

principal place of business in Rockville, Maryland.

6.      Upon information and belief, Congressional is a Maryland corporation with its principal place of business in Bethesda, Maryland.  Congressional is the successor-in-interest to American.

## <u>JURISDICTION AND VENUE</u>

7.      This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

8.      This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court dated December 6, 2011 (the "<u>Confirmation Order</u>"), and became effective on March 6, 2012.  The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

9.      Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

10.     This Court has personal jurisdiction over Defendants.

## <u>FACTUAL BACKGROUND</u>

11.     At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("<u>LBB</u>"), and then sold the loans to third parties, including Fannie Mae and Freddie Mac.

12.     At all relevant times, American engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

## A.      <u>The Governing Agreements</u>

13.     This dispute arises out of American's sale of residential mortgage loans to LBHI's assignor, LBB, under the Loan Purchase Agreement between LBB and American, dated

September 13, 2004 (the "LPA").  A true and correct copy of the LPA is attached hereto as

Exhibit A.

14.      The LPA specifically incorporated the terms and conditions of the Seller's Guide

of Lehman's loan administrator, Aurora Loan Services, LLC (individually, the "Seller's Guide,"

and together with the LPA, the "Agreements"), which sets forth additional duties and obligations

of American.[1]

15.      The Seller's Guide in its entirety is valid and binding upon American.  Attached

hereto as Exhibit B are the specific sections most directly pertinent to the claims in the Complaint.

16.      The Agreements set forth the duties and obligations of the parties with respect to

the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and

conveyance of the mortgage loans and mortgage loan documents.

17.      The Agreements also set forth the duties and obligations regarding examination of

mortgage loan files and underwriting; representations and warranties concerning the parties and

individual mortgage loans purchased or sold; and indemnification obligations.

18.      Pursuant to the Agreements, American sold to LBB the Defective Loans described

herein.

19.      American sold Loan ******6267 to LBB pursuant to the terms of the Agreements

on July 6, 2007.

20.      American sold Loan ******6384 to LBB pursuant to the terms of the Agreements

on March 19, 2007.

21.      American sold Loan ******2873 to LBB pursuant to the terms of the Agreements

---

[1] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time American sold the
loan to LBB.  Although the language of certain sections referenced throughout this Complaint may vary slightly from
Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

on July 23, 2007.

22.    American sold Loan ******9794 to LBB pursuant to the terms of the Agreements on January 25, 2007.

23.    American sold Loan ******0964 to LBB pursuant to the terms of the Agreements on November 2, 2007.

24.    The parties agreed that American's obligations would extend to any subsequent purchasers and/or assignees, such as, in this case, LBHI.  The Seller's Guide defines "Purchaser" as LBB and, among others, its "successors and/or assigns."  See Seller's Guide § 8.  In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the Defective Loans.

25.    Further, the Seller's Guide provides that LBHI, as a subsequent holder of any mortgage loan, "shall be a third party beneficiary" of the Agreements.  See Seller's Guide § 711.  Accordingly, LBHI as a "subsequent holder" (and third-party beneficiary) of the Defective Loans is entitled to all the benefits of the Agreements, including the right to indemnification.

**B.    American's Representations Under the Agreements**

26.    With respect to each of the loans sold to LBB under the Agreements, American made a number of representations, warranties and covenants concerning the quality of the mortgage loans.

27.    Specific examples of American's representations, warranties and covenants concerning the quality of the mortgage loans include, but are not limited to, the following:

a)  No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.  Seller's Guide § 703(1).

5

b)  Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

c)  The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.  Seller's Guide § 703(12).

d)  There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration.  Seller's Guide § 703(18).

e)  The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Product Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

f)  Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method

6

> meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof. The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan. Seller's Guide § 703(36).

28.    In certain instances, American was also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, American additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

29.    American represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreements. Seller's Guide § 702(5).

30.    LBHI relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans. Specifically, Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

31.    American agreed to indemnify LBHI from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorney's fees. Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from  any act or failure to act  or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.  In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligation hereunder, including, without limitation, the repurchase obligation set forth above.

## C.    LBHI's Settlements with Fannie Mae and Freddie Mac

32.    Fannie Mae and Freddie Mac discovered breaches of representations, warranties and/or covenants in the Defective Loans that were co-extensive with the representations and warranties contained in the Agreements.

33.    Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on breaching mortgage loans sold by LBHI.

34.    LBHI examined Fannie Mae's and Freddie Mac's claims, and determined that the Defective Loans contained various defects which violated the representations, warranties and/or covenants under the Agreements, including but not limited to the representations and warranties that all the information provided in the loan files was true and correct and that the loans met certain origination and underwriting requirements.  Thus, American's breaches, acts and omissions resulted in LBHI's liability to Fannie Mae and Freddie Mac, which liability was settled.

35.    The Bankruptcy Court approved LBHI's settlements with Fannie Mae and Freddie Mac.

36.     The settlements triggered LBHI's right to indemnification under the Agreements.

**D.     Defendants' Obligation to Indemnify LBHI**

37.     American agreed to indemnify LBHI from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans.  Seller's Guide § 711.

38.     LBHI demanded that American indemnify LBHI, which demand was refused by American.

39.     American's failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae and Freddie Mac constitutes a breach of American's contractual indemnification obligations.

40.     Congressional is liable for American's debts to LBHI because Congressional is American's successor.

41.     There may be additional breaches of American's representations, warranties and covenants concerning the quality of the Defective Loans for which LBHI has not provided written notice to American, or that LBHI may identify in the course of this adversary proceeding.

42.     Pursuant to Section 8 of the Loan Purchase Agreement and Section 713 of the Seller's Guide, the laws of the State of New York govern this contract action.

43.     All conditions precedent to bringing this action have been met, occurred or have been waived.

## FIRST CLAIM FOR RELIEF

### (Contractual Indemnification)

44.     LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

45.     The Agreements are valid and enforceable contracts that are binding upon American.

46.     LBHI has substantially performed all of its obligations under the Agreements.

47.     American is required to indemnify LBHI for LBHI's liability to Fannie Mae and Freddie Mac with respect to the Defective Loans.

48.     American breached the Agreements by failing to indemnify LBHI for its liabilities, losses, claims, judgments and any other costs, fees and expenses it incurred as to the Defective Loans.

49.      American's breaches of the Agreements as to the Defective Loans resulted in actual and consequential damages to LBHI in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorney's fees, litigation costs, and all other fees and costs provided by the Agreements.

50.     Congressional is liable for American's debts to LBHI because Congressional is American's successor.

## **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

a)  For all damages arising from or relating to American's indemnification obligation and breach of contract, in an amount to be determined at trial;

b)  For recoverable interest;

c)  For the costs and expenses incurred by LBHI in enforcing American's obligations under the Agreements, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

d)  Providing for such other relief as the Court deems just and proper.

Dated: January 6, 2016

_s/ Michael A. Rollin_

Michael A. Rollin
Maritza Dominguez Braswell *(application to be filed)*
Lindsay A. Unruh *(application to be filed)*
Tara K. Williams *(application to be filed)*

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Counsel for Lehman Brothers Holdings Inc.*