Hearing Date and Time: February 8, 2016 at 10:00 a.m.  (Prevailing Eastern Time)
Objection Date and Time: February 2, 2016 at 4:00 p.m.  (Prevailing Eastern Time)

Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Counsel to Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc.

Joseph D. Pizzurro
Michael J. Moscato
Peter J. Behmke
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Counsel to Lehman Brothers Holdings Inc. and
Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------- X
In re:                                                            :      Chapter 11
                                                                  :      Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                           :
                                                                  :
                          Debtors.                                :
----------------------------------------------------------------------- X
LEHMAN BROTHERS HOLDINGS INC., LEHMAN                              :
BROTHERS SPECIAL FINANCING INC., LEHMAN                            :
BROTHERS COMMODITY SERVICES INC., LEHMAN                           :
BROTHERS COMMERCIAL CORPORATION, and                              :
OFFICIAL COMMITTEE OF UNSECURED                                   :
CREDITORS OF LEHMAN BROTHERS HOLDINGS                              :      Adversary Proceeding
INC., *et al.*,                                                   :      No. 12-01874 (SCC)
                          Plaintiffs,                             :
                                                                  :
                    v.                                            :
                                                                  :
JPMORGAN CHASE BANK, N.A., J.P. MORGAN MARKETS                     :
LIMITED (F/K/A BEAR STEARNS INTERNATIONAL                         :
LIMITED), J.P. MORGAN SECURITIES LTD., J.P. MORGAN                 :
VENTURES ENERGY CORPORATION, JP MORGAN CHASE                      :
AND CO., JPMORGAN BANK DUBLIN (F/K/A BEAR                         :
STEARNS BANK PLC), BEAR STEARNS CREDIT                            :
PRODUCTS INC. and BEAR STEARNS FOREX INC.,                        :
                                                                  :
                          Defendants.                             :
----------------------------------------------------------------------- X

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(A), FOR ENTRY OF ORDER APPROVING SETTLEMENT AGREEMENT WITH JPMORGAN CHASE BANK, N.A. AND CERTAIN OF ITS AFFILIATES WITH RESPECT TO AVOIDANCE ACTION AND <u>DERIVATIVES CLAIMS OBJECTIONS AND GRANTING RELATED RELIEF</u>**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated January 25, 2016

(the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as

Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors [ECF No. 23023-1], on behalf of itself,

Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp.

("LBCC"), and Lehman Brothers Commodity Services Inc. ("LBCS," and, with LBHI, LBSF,

and LBCC, the "Lehman Parties"), together with the Official Committee of Unsecured Creditors,

through its Litigation Subcommittee (the "Committee,"[1] and together with LBHI, the

"Movants"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code") for approval of a settlement agreement among the Plan Administrator, on behalf of the

Lehman Parties, and JPMorgan Chase Bank, N.A. ("JPMCB" and, collectively with all of its

relevant affiliates, "JPMorgan") and the other JPMorgan Parties,[2] all as more fully described in

the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy

Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom

623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on February

8, 2016 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing").

---

[1]      Section 15.1(a) of the Plan (p. 93), and paragraph 48 of the Order Confirming the Plan [ECF No. 23023 (the "Confirmation Order") (p. 43)] both provide that "[o]n the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (1) implementation of the Plan through the date of the initial Distribution in accordance with section 8.3 of the Plan; (ii) defending any appeals from this Confirmation Order until final disposition of such appeals; and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date.  Following the Effective Date, the litigation and derivatives subcommittees of the Creditors' Committee may continue functioning for the limited purposes of (i) resolving pending litigation . . . ."

[2]      As used herein, the term "JPMorgan Parties" means JPMCB, J.P. Morgan Markets Limited (f/k/a Bear Stearns International Limited) ("JPMML"), J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.) ("JPMSL"), J.P. Morgan Ventures Energy Corporation ("JPMVEC"), JPMorgan Chase & Co. ("JPMC"), J.P. Morgan Dublin plc (f/k/a J.P. Morgan Bank Dublin plc) ("JPMBD"), Bear Stearns Credit Products Inc. ("BSCP") and Bear Stearns Forex Inc. ("BSF").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system (with a courtesy copy delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI and certain of its affiliates, Curtis, Mallet-Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, NY 10178 (Attn: Joseph D. Pizzurro, Michael J. Moscato and Peter J. Behmke); (iii) attorneys for the Committee, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn: Susheel Kirpalani, Andrew J. Rossman and James Tecce); (iv) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq. and Andrea B. Schwartz, Esq.); and (v) attorneys for JPMorgan Chase Bank, N.A., Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn: Harold S. Novikoff and Ian Boczko), so as to be so filed and received by no later than February 2, 2016 at 4:00 p.m. (Prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

3

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing and failure to appear may result in relief being granted or denied upon default.

Dated:    January 25, 2016
          New York, New York

                              CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

                              By: */s/ Joseph D. Pizzurro*
                              Joseph D. Pizzurro
                              Michael J. Moscato
                              Peter J. Behmke
                              *Counsel to Lehman Brothers Holdings Inc. and*
                              *Certain of Its Affiliates*


                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

                              By: */s/ Andrew J. Rossman*
                              Susheel Kirpalani
                              Andrew J. Rossman
                              James C. Tecce
                              Tyler G. Whitmer
                              *Counsel to the Official Committee of*
                              *Unsecured Creditors*

Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
*Counsel to Official Committee of Unsecured Creditors*
*of Lehman Brothers Holdings Inc.*

Joseph D. Pizzurro
Michael J. Moscato
Peter J. Behmke
**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
*Counsel to Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------- X
In re:                                                               :      Chapter 11
                                                                     :      Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., et al.,                               :
                                                                     :
                          Debtors.                                   :
-------------------------------------------------------------------- X
LEHMAN BROTHERS HOLDINGS INC., LEHMAN                                :
BROTHERS SPECIAL FINANCING INC., LEHMAN                              :
BROTHERS COMMODITY SERVICES INC., LEHMAN                             :
BROTHERS COMMERCIAL CORPORATION, and                                 :
OFFICIAL COMMITTEE OF UNSECURED                                      :
CREDITORS OF LEHMAN BROTHERS HOLDINGS                                :      Adversary Proceeding
INC., et al.,                                                        :      No. 12-01874 (SCC)
                          Plaintiffs,                                :
                                                                     :
               v.                                                    :
                                                                     :
JPMORGAN CHASE BANK, N.A., J.P. MORGAN MARKETS                       :
LIMITED (F/K/A BEAR STEARNS INTERNATIONAL                            :
LIMITED), J.P. MORGAN SECURITIES LTD., J.P. MORGAN                   :
VENTURES ENERGY CORPORATION, JP MORGAN CHASE                         :
AND CO., JPMORGAN BANK DUBLIN (F/K/A BEAR                            :
STEARNS BANK PLC), BEAR STEARNS CREDIT                               :
PRODUCTS INC. and BEAR STEARNS FOREX INC.,                           :
                                                                     :
                          Defendants.                                :
-------------------------------------------------------------------- X
```

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO FED. R. BANKR. P.**
**9019 AND 11 U.S.C. § 105(A), FOR ENTRY OF ORDER APPROVING**
**SETTLEMENT AGREEMENT WITH JPMORGAN CHASE BANK, N.A. AND**
**CERTAIN OF ITS AFFILIATES WITH RESPECT TO AVOIDANCE ACTION AND**
<u>**DERIVATIVES CLAIMS OBJECTIONS AND GRANTING RELATED RELIEF**</u>

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................2

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................8

    A.  Collateral Disposition Agreement.................................................................8

    B.  Avoidance Action ......................................................................................11

        (1).  The Adversary Proceeding and Motion to Dismiss ..................11

        (2).  Summary Judgment Decision ..................................................13

        (3).  SLCFC Motion.......................................................................14

    C.  Derivatives Objections ...............................................................................15

        (1).  Derivatives Action ................................................................15

        (2).  LBF/LBI Derivatives Action ..................................................18

        (3).  WaMu Derivatives Action ......................................................19

    D.  Tassimo Action ..........................................................................................20

    E.  Other Objections ........................................................................................20

        (1).  492nd Omnibus Objection ........................................................20

        (2).  Securities Lending Objection...................................................21

    F.  LBSF Action ..............................................................................................21

    G.  Negotiation Of Settlement Agreement.........................................................22

III.  JURISDICTION .........................................................................................................22

IV.  ARGUMENT ..............................................................................................................22

    A.  Applicable Standards For Bankruptcy Settlements .............................................22

    B.  Settlement Easily Satisfies Standards Applicable To Rule 9019 Motions ............25

    C.  LBHI Has Exclusive Authority To Settle Avoidance Actions ..............................27

NOTICE......................................................................................................................29

CONCLUSION............................................................................................................30

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors [ECF No. 23023-1] (the "Plan"), on behalf of itself,

Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp.

("LBCC"), and Lehman Brothers Commodity Services Inc. ("LBCS," and, with LBHI, LBSF,

and LBCC, the "Lehman Parties[3]"), and the Official Committee of Unsecured Creditors, through

its Litigation Subcommittee (the "Committee"[4] and, together with LBHI, the "Movants"), hereby

move (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532 (as amended, the "Bankruptcy Code"), for the entry of an order (a) approving the

Settlement Agreement[5] among the Lehman Parties, the Committee, and the JPMorgan Parties[6]

with respect to (i) the proceeding styled Lehman Brothers Holdings Inc. v. JPMorgan Chase

---

[3]    "Lehman" refers to LBHI and all of its relevant affiliates.

[4]    Section 15.1(a) of the Plan (p. 93), and paragraph 48 of the Order Confirming the Plan [ECF No. 23023 (the "Confirmation Order") (p. 43)] both provide that "[o]n the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (1) implementation of the Plan through the date of the initial Distribution in accordance with section 8.3 of the Plan; (ii) defending any appeals from this Confirmation Order until final disposition of such appeals; and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date. Following the Effective Date, the litigation and derivatives subcommittees of the Creditors' Committee may continue functioning for the limited purposes of (i) resolving pending litigation . . . ."

[5]    The Settlement Agreement is attached hereto as Exhibit A. The summary of the Settlement Agreement herein is qualified in its entirety by the terms and conditions of the Settlement Agreement. The terms and conditions of the Settlement Agreement control to the extent that there is any conflict or inconsistency between the summary and the Settlement Agreement. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

[6]    As used herein, the term "JPMorgan Parties" means JPMorgan Chase Bank, N.A. ("JPMCB" and, collectively with its relevant affiliates, "JPMorgan"), J.P. Morgan Markets Limited (f/k/a Bear Stearns International Limited) ("JPMML"), J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.) ("JPMSL"), J.P. Morgan Ventures Energy Corporation ("JPMVEC"), JPMorgan Chase & Co. ("JPMC"), J.P. Morgan Dublin plc (f/k/a J.P. Morgan Bank Dublin plc) ("JPMBD"), Bear Stearns Credit Products Inc. ("BSCP") and Bear Stearns Forex Inc. ("BSF"). As used herein, "Parties" refers to the JPMorgan Parties and the Lehman Parties.

1

<u>Bank, N.A.</u> (In re Lehman Bros. Holdings Inc.), Adv. Proc. 10-03266 (SCC) (Bankr. S.D.N.Y.), which was removed to the United States District Court for the Southern District of New York in 2014, Case No. 11 Civ. 6760 (RJS) (S.D.N.Y.) (the "Avoidance Action") and (ii) the Derivatives Objections[7] and (b) confirming that the resolution of the Avoidance Action on the terms set forth in the Settlement Agreement shall be binding on individual creditors, and respectfully state as follows:

## I.    PRELIMINARY STATEMENT

1.    Since the inception of these chapter 11 cases, the estates have dedicated considerable resources and energy to reviewing myriad complex relationships among Lehman and JPMorgan—far and away its largest creditor—and prosecuting and defending claims arising from those relationships.  In addition to initiating the Avoidance Action challenging certain pre-petition collateral and parent-level guarantees that JPMorgan obtained from LBHI (which sought, among other things, the return to LBHI of cash collateral), the estates have prosecuted objections to JPMorgan's claims against LBHI and its debtor-affiliates, including clearing-related claims (approximately $6.3 billion[8]) and derivatives claims (approximately $2.3 billion[9]). The Settlement Agreement finally resolves two of the three major pieces of litigation pending against JPMorgan (i.e., the Avoidance Action and the Derivatives Objections) in exchange for a cash payment of $1.42 billion and the Lehman Parties' agreement to withdraw those challenges.

---

[7]    "Derivatives Objections" refers to the Derivatives Action, the WaMu Derivatives Action and the LBF/LBI Derivatives Action, each as defined below.  The JPMorgan Parties' claims subject to the Derivatives Objections are referred to herein as the "Derivatives Claims".

[8]    This is the total amount of the deficiency claim and not necessarily an estimate of the amount by which Lehman contends the claim should be reduced.

[9]    This amount is the recovery sought by Lehman in the Derivatives Action (as defined below) and does not include the recoveries sought by Lehman in the smaller derivatives objections that are also part of this settlement.

The Settlement will enable additional creditor distributions of approximately $1.496 billion.

Specifically,

- ***Avoidance Action***.  LBHI and JPMCB will dismiss with prejudice their respective claims and counterclaims that are the subject of that litigation, including any potential constructive fraudulent conveyance claims that were or could be asserted by individual creditors (the "SLCFC Claims").  The Parties' agreement to toll the applicable statutes of limitation relating to the SLCFC Claims shall be terminated.  JPMCB will release its counterclaims, including its post-petition fraudulent inducement claim and purportedly secured indemnification claim, which indemnification claim has been asserted in a substantial amount.

- ***Cash Payment***.  JPMCB will return to LBHI for the benefit of LBHI and its subsidiaries cash totaling $1.420 billion that JPMCB provisionally applied pursuant to the Collateral Disposition Agreement dated March 16, 2010 [ECF No. 7619] (as amended and supplemented from time to time, the "CDA").  LBHI will also receive the right to withdraw its Debtor Deposit (as that term is defined in the CDA), currently totaling approximately $76 million.[10]  As a result, LBHI will be able to make $1.496 billion cash available for distribution to creditors in accordance with the terms of the Plan.

- ***Derivatives Objections***.  The JPMorgan Parties' Derivatives Claims will be reduced from their asserted amounts to amounts determined by the Plan Administrator in accordance with the Plan.  Specifically, under the CDA, in consideration of the cash payments that LBHI made to JPMorgan to provisionally satisfy JPMorgan's claims against Lehman Brothers Inc. ("LBI") and other subsidiaries of LBHI, LBHI subrogated to JPMorgan's claims against LBI and the other subsidiaries of LBHI—including with respect to the Derivatives Claims of the JPMorgan Parties against the Lehman Parties that will be resolved pursuant to the Settlement Agreement (hereinafter, the "Subrogated Derivatives Claims").[11]

  o The Derivatives Claim JPMCB originally asserted against LBSF (a portion of Claim No. 66455) will be reduced and allowed in the amount of $566,506,000.

---

[10]    Section 6 of the CDA obligates the Parties to pay adjustments in respect of certain changes to the Subrogated Claims (as defined in the CDA) acquired by LBHI from JPMorgan pursuant to the CDA, all subject to and in accordance with the terms and conditions of the CDA.  LBHI has made deposits into the Debtor Deposit (as defined in the CDA) in respect of accrued and potential adjustments under Section 6 of the CDA, the current balance of which is approximately $76 million.

[11]    Pursuant to the CDA and the Settlement Agreement, the Subrogated Derivatives Claims will be held by LBHI or another Lehman party.

    o   With respect to the remaining claims that are the subject of the Derivatives Action, the LBF/LBI Derivatives Action, and the WaMu Derivatives Action,[12] those claims will be assigned to certain of the Lehman Parties on a final basis and reconciled in amounts set forth in a joint instruction letter submitted to the claims agent retained in the Chapter 11 Cases: Epiq Systems Inc. (the "Claims Agent"). Each of these allowed amounts will be less than $200 million.[13]

- ***Settled True-Up Obligations***. The Parties will release true-up obligations provided for in the CDA (owed to each other on an aggregate basis in approximately equivalent amounts), including: the Letter Agreement True-Up Obligations, the LBI Settlement True-Up Obligations, the WaMu True-Up Obligations, the WaMu Re-transfer Obligations, and the Derivatives True-Up Obligations (each as defined below). In connection with the settlement of the foregoing true-up obligations, LBHI's and JPMCB's obligations to post deposits to secure their respective obligations are released.

- ***Disputes and Claims Excluded From Settlement Agreement***. Certain disputes are not covered by the Settlement Agreement (and the Parties' rights with respect to those disputes are reserved), i.e.: (i) the Tassimo Action (as defined below) challenging JPMCB's Clearing Claims (i.e., claims purportedly incurred by JPMCB as the main clearing bank and tri-party repo custodian for LBI), (ii) the Other Objections, including the 492nd Omnibus Objection (as defined below) and the Securities Lending Objection (as defined below), (iii) the LBSF Action (as defined below), (iv) the Non-CDA Claims,[14] and (v) all of the Parties' ongoing obligations under the CDA (except for those expressly released or waived in the Settlement Agreement, i.e., the Settled True-up Obligations). There will be no further Actions (as defined in the Settlement Agreement) commenced by the Lehman Parties or the Committee or its members against any of the JPMorgan Parties (other than any Action in the LBSF Action to the extent permitted under existing agreements among the relevant Parties), including that there will be no further objections to the JPMorgan Parties' claims in the Chapter 11 Cases, other than those claims already objected to in the Excluded Actions (as

---

[12] These are the claims identified in paragraphs F, G and I of the Settlement Agreement (i.e., Claim Nos. 66451, 66453, 66454, 66470, 66472, and 66476, as well as portions of Claim Nos. 66455, 66462, 66473 and 66474).

[13] See Order Modifying Certain Existing Claims Orders [ECF No. 29505] at 2 (¶ 1) ("The Plan Administrator is authorized to settle any and all Claims (as such term is defined in the Plan) asserted against the Debtors without prior approval of the Court or any other party in interest where (a) the allowed amount of the settlement Claim is less than or equal to $200 million or (b) if the Claim is a portion of a Divided Claim (as defined below), the Pro-Rata Amount (as defined below is less than or equal to $200 million."); at 3 (¶ 4) ("As used in these Settlement Procedures, 'Divided Claim' shall mean a Claim that was (a) asserted on one proof of claim and (b) divided such that a portion thereof is held by more than one claimant.").

[14] "Non-CDA Claims" refers to claims filed by JPMorgan for a customer, as agent, as trustee, in any other representative capacity, or otherwise in respect of which JPMorgan did not assert in the relevant proofs of claim that such claims were secured by the collateral posted by LBHI pursuant to the parent level guaranties at issue in the Avoidance Action.

defined in the Settlement Agreement), and any such further Actions are released and waived.

2.       This agreement concludes an extraordinary litigation effort that began almost immediately after Lehman commenced its chapter 11 cases.  On October 2, 2008, the Committee requested authority to take discovery of JPMCB under Bankruptcy Rule 2004.[15]  An effort ensued to gain an understanding of the multi-faceted relationship between JPMorgan and Lehman, with the Committee and Lehman working in tandem.  After scrutinizing that relationship for more than a year, Lehman and the Committee initiated a three-pronged litigation campaign, working together pursuant to a litigation protocol that did not give the Committee derivative standing to bring the estates' claims but nonetheless pledged continued cooperation and coordination.[16]

3.       The nature of the relationship between Lehman and JPMorgan presented challenges to pursuing estate claims in the Avoidance Action.  The act of accelerating, terminating, or liquidating clearing and derivatives contracts is typically defended by invoking the Bankruptcy Code's safe harbor provisions.[17]  Decisions from the United States Court of Appeals for the Second Circuit (the "Second Circuit") have taken a broad view of the safe harbors.  While Lehman and the Committee argued fervently that certain parent-level guaranties

---

[15]      See Motion Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc. For Leave To Conduct Discovery Of JPMorgan Chase Bank, N.A. Pursuant To 11 U.S.C. § 105(a) And 1103(c) And Federal Rule Of Bankruptcy Procedure 2004, dated October 2, 2008 [ECF No. 566].

[16]      See, e.g., Joint Motion Of Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc., et al., And Lehman Brothers Holdings Inc., Pursuant To 11 U.S.C. §§ 105(a), 1109(b) And Fed. R. Civ. P. 26(a) And 26(b), For Entry Of An Order Authorizing Committee's Intervention In Proceeding For All Purposes, dated May 26, 2010 [Avoidance Action ECF No. 2] at Exhibit A ("Protocol For Coordinating Prosecution Of Claims Against JPMorgan Chase Bank N.A. And Citibank N.A.;" "This memorandum outlines the protocol … that will govern the coordination between Lehman and the Committee with respect to the review, analysis, development and prosecution of the Lehman estates' claims and causes of action against JPMC and Citibank.").

[17]      See, e.g., 11 U.S.C. § 101(47) ("repurchase agreement" definition); § 101(53B) ("swap agreement" definition); § 741(7)(a)(iv) ("securities contract" definition includes "any extension of credit for the clearance or settlement of securities transactions").

and related security agreements were not qualified securities contracts, that the Second Circuit's

decisions interpreting the safe harbors were inapplicable, and that the safe harbors only insulated

certain "transfers"—not the incurrence of obligations—the Bankruptcy Court disagreed.  On

JPMCB's motions to dismiss, the Bankruptcy Court sided with JPMCB, finding that the parent-

level guaranties and security agreements were securities contracts and applying the safe harbors

to dismiss the preference and constructive fraudulent transfer claims from the Avoidance

Action.[18]  The Supreme Court's <u>Stern v. Marshall</u> decision and questions about the Bankruptcy

Court's ability to enter final orders in the Avoidance Action added another layer of complexity

and prompted a successful motion by JPMCB to withdraw the reference.

4.      On the parties' cross-motions for summary judgment, the District Court found the

voluminous record adduced during years-long fact and expert discovery did not support a

majority of Lehman's remaining claims, including claims for actual fraudulent conveyance,

breach of contract, coercion, and duress; only six counts remain (from 49) for trial in the

Avoidance Action along with JPMCB's counterclaims.[19]  At this point, the remaining Avoidance

Action litigation faces a long and uncertain path.  Irrespective of the outcome of a trial with

respect to the smattering of counts that remain, there is no certainty that Judge Peck's or Judge

---

[18]     See, e.g., Lehman Brothers Holdings, Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.), 469 B.R. 415, 435-36 (Bankr. S.D.N.Y. 2012) (Peck, J.) (examining Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc. v. American United Life Insurance Co. (In re Quebecor World (USA) Inc.), 453 B.R. 201 (Bankr. S.D.N.Y. 2011) and In re Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329 (2d Cir. 2011): [w]hile the definition of settlement payments—at issue in both Enron and Quebecor—has no direct bearing on this adversary proceeding, these decisions nonetheless are relevant precedents for the proposition that the language of the safe harbors is to be strictly interpreted even when the outcome may be prejudicial to the interests of the estate and its creditors …. Consistent with its approach in Quebecor, the Court will strictly construe the plain meaning of section 546(e) in judging whether the claims set forth in the Amended Complaint are subject to the safe harbors"); id. at 438 ("The August Agreements and several of the September Agreements qualify as 'securities contracts' under subsection (xi) of section 741(7)(A) because of their role as credit enhancements 'related to' and 'in connection with' other 'securities contracts.'").

[19]     See, e.g., Lehman Brothers Holdings, Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.), 544 B.R. 551, 556 (S.D.N.Y. 2015) (Sullivan, J.).

Sullivan's decisions will be reversed on appeal by the Second Circuit.  Moreover, dismissal of the Avoidance Action litigation removes any prospect that JPMCB will prevail with respect to its post-petition fraudulent inducement and indemnification claims against LBHI, which indemnification claims JPMCB alleges are secured and significant.

5.      Lehman and the Committee have pursued the Derivatives Objections with tenacity and focus.  Indeed, the estates have vigorously contended that the JPMorgan Parties (a) applied inaccurate valuations of terminated trades for claim calculation purposes as of dates after the Early Termination Date (September 15, 2008); (b) applied add-on charges to account for transaction costs (bid/offer spreads and liquidity premiums) as commercially unreasonable; (c) failed to net offsetting risk in certain circumstances; and (d) assigned inconsistent prices to identical or substantially similar positions.  The JPMorgan Parties have vigorously defended the computation of their derivatives claims, and assert that the derivatives close-outs and computations were done in a commercially reasonable manner and in compliance with the provisions of the applicable agreements.  The Settlement Agreement resolves the Derivatives Objections on fair and reasonable terms under Bankruptcy Rule 9019.

6.      While the Settlement Agreement is not a global resolution of all issues between the Parties, it ends a significant portion of their disagreements, removes the uncertainty inherent in any litigation where billions of dollars are at stake and multiple millions of fees will be spent, and enables a significant creditor distribution of almost $1.5 billion.  Accordingly, the Plan Administrator and the Committee have determined, in the exercise of their sound business judgment, that the Settlement Agreement is in the best interests of Lehman's estates and their creditors.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

7.    Commencing on September 15, 2008, and periodically thereafter (as applicable,
the "Petition Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary
cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

8.    On December 6, 2011, the Court approved and entered the Confirmation Order.
The Plan became effective on March 6, 2012.

### A.    COLLATERAL DISPOSITION AGREEMENT

9.    JPMorgan lodged proofs of claim against LBHI and its affiliated debtors in the
Chapter 11 Cases and against LBI in its Securities Investor Protection Act proceeding totaling
more than $29 billion in the aggregate (as of October 2008).[20]  In particular, JPMCB asserted
claims totaling approximately $25.3 billion against LBI (as primary obligor) allegedly for
"extensions of credit for the clearance and settlement of securities transactions under the [2000]
Clearance Agreement …" (hereinafter, the "Clearing Claims").[21]  JPMorgan also filed claims
against LBHI as the purported guarantor of LBI's obligations with respect to the Clearing Claims
and against LBHI as guarantor under various derivatives agreements.

10.    To satisfy its alleged Clearing Claims, JPMCB liquidated some of LBI's
securities collateral for approximately $19 billion.[22]  Certain securities collateral that had been

---

[20]    Debtors' Motion Pursuant To Section 363 Of Bankruptcy Code And Bankruptcy Rule 6004 For
Approval Of Collateral Disposition Agreement With JPMorgan Chase Bank, N.A., et al. (the "CDA Mot.") at 3 (¶ 4)
[ECF No. 7269].  See also Declaration Of Amy R. Wolf In Support Of Defendant's Motion To Dismiss dated
October 19, 2010 [Avoidance action ECF No. 53] ("Wolf Decl.") at 3 (¶ 15) ("Attached hereto as Exhibit 14 is a
copy of JPMorgan's proofs of claim, as amended April 1, 2010").

[21]    Wolf Decl. Ex. 14 (Amended And Restated Annex To Proofs Of Claim Of JPMorgan Chase Bank,
N.A., J.P. Morgan Securities Inc. and J.P. Morgan Clearing Corp. dated March 31, 2010 at 2 (¶ 2.A.I)).

[22]    See Wolf Decl. Ex. 14 (Amended And Restated Annex To Proofs Of Claim Of JPMorgan Chase
Bank, N.A., J.P. Morgan Securities Inc. and J.P. Morgan Clearing Corp. dated March 31, 2010 at 2-3 (¶ 2.A.I)) ("As
of March 15, 2010, such amount ["clearing claim" of $25,279,675,964] had been reduced to $6,333,781,099,

8

pledged was considered more difficult to sell at the time but nonetheless Lehman believed those securities to be extremely valuable (collectively, the "Structured Securities"). The Structured Securities included certain LBI collateral (including the structure known as RACERS) as well as LBHI securities collateral (including the structures known as Fenway, Pine, Spruce, and Verano). JPMCB did not sell the Structured Securities.

11.    In March 2010, JPMorgan and Lehman entered into the CDA.[23] Under that agreement, with respect to the $7.38 billion[24] in asserted claims against LBHI and its affiliated debtors that remained unsatisfied: (a) **all** of JPMorgan's claims would be allowed on a "provisional basis" against the Lehman estates, subject to challenge by Lehman; (b) LBHI would allow JPMorgan to provisionally apply cash collateral posted by LBHI; (c) LBHI would pay an additional approximately $550 million in cash to JPMorgan to satisfy all of JPMorgan's claims; (d) JPMorgan would return the Structured Securities to Lehman; and (e) LBHI would be subrogated to the claims JPMorgan had filed against the Lehman estates.[25] The CDA was not a

principally by application of the sale proceeds of securities collateral (the 'Clearance Agreement Securities Collateral') pledged by [LBI] pursuant to the Clearance Agreement to secure such claims, application of distributions received on the Clearance Agreement Securities Collateral, application of cash repo adjustments received with respect to the Clearance Agreement Securities Collateral, the exercise of setoff rights against certain of the Debtor's [LBI's] demand deposit accounts, application of collateral pledged by the Debtor in connection with the Agency MLSA … and other account activity").

[23]    All summaries and descriptions of the CDA in this Motion are for ease of reference only and do not constitute amendments of or admissions regarding its terms. To the extent there is any conflict or inconsistency between summaries or descriptions of the CDA in this Motion and the CDA itself, the terms of the CDA govern unchanged by this Motion.

[24]    See CDA Mot. at 4 (¶ 6) ("After giving effect to the application of Collateral to date (including from the receipt of proceeds received from the disposition of Collateral), the current outstanding amount of the Claims asserted by JPMorgan (including estimated accruals of interest and fees through March 31, 2010) is approximately $7.38 billion").

[25]    See CDA at 3 (¶ 3) ("Subrogation And Assignment. (a) In consideration of (i) the Cash Payment made by LBHI with respect to the Claims against LBI and other subsidiaries of LBHI, (ii) the application pursuant to Paragraph 1 of Cash Collateral posted by LBHI to the payment of Claims against LBHI and other subsidiaries of LBHI, and (iii) Prior Payments of Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, simultaneously with the payment of the Cash Payment and as described more detail in this

***settlement*** of JPMorgan's claims against the Lehman debtors. Instead, it allowed LBHI to pay down the full amount of JPMorgan's claims and stop the claimed accrual of post-petition interest—subject expressly to the estates' right to object to JPMorgan's underlying claims and challenge the validity of LBHI's parent-level guaranties.[26] The Court approved the CDA by order dated March 24, 2010 [ECF Nos. 7619, 7785].[27]

12.     The CDA includes certain true-up obligations, as further described therein. Important to this Motion, those obligations include, inter alia, the Settled True-up Obligations, as follows:

- adjustments agreed to between the Parties in letters amending and supplementing the CDA dated November 26, 2013, April 29, 2014 and June 13, 2014 (the "Letter Agreement True-Up Obligations");

- true-up obligations stemming from JPMCB's settlement with the Trustee for LBI's SIPA liquidation, specifically from the reversal of the application of $43,228,106.95 of LBI cash to claims asserted by JPMCB against LBI that were guaranteed by LBHI [ECF No. 4242] as part of JPMCB's settlement of disputes with the LBI Trustee, approved by the Court on June 23, 2011 [ECF No. 4356] (hereinafter, the "LBI Settlement True-Up Obligations");

- true-up obligations related to the WaMu Derivatives Objection (as defined below), specifically from a Binding Determination (as that term is defined in the

---

agreement: (1) LBHI shall be subrogated to the claims of the relevant JPMC Entities against LBHI and such other subsidiaries to the full extent of the payments made by LBHI or applied from its property (the 'Subrogated Claims') to such Claims.").

[26]     See CDA Mot. at 1 (¶ 1) ("In an effort to transfer management of certain illiquid securities held as collateral by JPMorgan back to certain of the Debtors, the Debtors and JPMorgan have reached [the CDA] …. [The CDA] provides the Debtors with the means of recovering and administering, in a manner most conducive to enhancing their value, illiquid securities with an aggregate face value in the billions of dollars. Second, it allows JPMorgan to apply cash and cash equivalents it is currently holding to provisionally satisfy its claims against the Debtors, while reserving the rights of all parties with respect to the propriety of such claims. Upon a further cash payment to JPMorgan by the Debtors in the amount of the unpaid claims balance remaining after application of the cash and cash equivalents, JPMorgan will transfer the illiquid securities to certain of the Debtors, with all parties reserving their respective rights.").

[27]     JPMCB and LBHI are parties to letter agreements amending and supplementing the CDA dated March 31, 2010, July 12, 2010, April 1, 2011, April 20, 2011, February 21, 2012, April 5, 2012, November 26, 2013 (the "November 26 Letter"), April 29, 2014 (the "April 29 Letter"), June 13, 2014 (the "June 13 Letter") and March 12, 2015.

CDA) that the WaMu Derivatives Claim (as defined below) and another claim (collectively with the WaMu Derivatives Claim, the "<u>WaMu Claims</u>") arising from securities options transactions that JPMCB acquired from Washington Mutual Bank FA ("<u>WaMu</u>") were not validly secured by cash collateral posted by LBHI (herinafter, the "<u>WaMu True-up Obligations</u>");

• LBHI's obligations under Section 6 of the CDA to transfer to JPMCB the Subrogated WaMu Claims and any prior distributions thereon (hereinafter, the "<u>WaMu Re-transfer Obligations</u>"); and

• true-up obligations relating to reductions in the Derivatives Claims which are obligations on the part of the relevant JPMorgan entity to pay adjustments under Section 6 of the CDA that could result from a Binding Determination (as defined in the CDA) reducing the amount of claims that are the subject of the Derivatives Action, the LBF/LBI Derivatives Action or the WaMu Derivatives Action (hereinafter, the "<u>Derivatives True-up Obligations</u>" and, collectively with the Letter Agreement True-up Obligations, the LBI Settlement True-Up Obligations, the WaMu True-up Obligations and the WaMu Re-transfer Obligations, the "<u>Settled True-up Obligations</u>").

## B.     AVOIDANCE ACTION

### (1).     THE ADVERSARY PROCEEDING AND MOTION TO DISMISS

13.     On May 26, 2010, LBHI and the Committee filed the complaint in the Avoidance Action, and filed an amended complaint on September 15, 2010. The amended complaint sought (a) to avoid and recover actual fraudulent conveyances[28] under section 548 of the Bankruptcy Code; (b) to avoid and recover constructively fraudulent conveyances under sections 544 and 548 of the Bankruptcy Code and applicable state law; (c) damages under various state law theories, including breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, and conversion; (d) claims for turnover under section 542 of the Bankruptcy Code, challenging setoff under section 553, alleging violations of the automatic stay under section 362, and seeking disallowance under section 502(d); (e) the imposition of

---

[28]     The terms "conveyances" and "SLCFC" as used herein includes "conveyances" and "obligations" as used in New York's Debtor and Creditor Law as well as any transfers or obligations permitted to be avoided by other applicable state laws.

constructive trust; and (f) a declaratory judgment (i) invalidating the agreements on the theories

of coercion and/or duress, lack of authority or apparent authority, and lack of consideration and

(ii) finding JPMCB has no lien over certain cash collateral.

14.    On December 1, 2010, JPMCB filed the Counterclaims of JPMorgan Chase Bank,

N.A. in the Avoidance Action (the "<u>Avoidance Action Counterclaims</u>") [Avoidance Action ECF

No. 33, amended on February 17, 2011 (Avoidance Action ECF No. 63)], alleging that LBHI

fraudulently induced JPMCB to extend intraday credit to LBI during the week of September 15,

2008 through causes of action sounding in fraud and aiding and abetting fraud by LBI.

According to JPMCB, to the extent the estates invalidated JPMCB's liens and clawed back the

LBHI collateral, JPMCB would nonetheless have a post-petition claim for damages resulting

from LBHI's alleged fraud.  The Avoidance Action Counterclaims also include claims for

indemnity that, if successful, would require LBHI to pay all or part of JPMCB's fees and

expenses relating to the Avoidance Action.

15.    JPMCB moved to dismiss all of Movants' causes of action in the Avoidance

Action and, on April 29, 2012, Judge Peck, writing for the Court, granted JPMCB's motion in

part and denied it in part [Avoidance Action ECF No. 134], dismissing twenty of Movants'

causes of action.  <u>See</u> <u>Lehman Brothers Holdings Inc., et al. v. JPMorgan Bank, N.A. (In re</u>

<u>Lehman Brothers Holdings Inc.)</u>, 469 B.R. 415 (Bankr. S.D.N.Y. 2012).

16.    In broad strokes, Judge Peck granted the motion as to counts based on

constructive fraudulent conveyance and preference but denied the motion with respect to the

other counts asserted.  Judge Peck found that the Bankruptcy Code's safe harbor provisions

applied to all claims asserted in LBHI's First Amended Complaint based on a preference or

constructively fraudulent conveyance theory (including counts that merely sought the avoidance of obligations incurred).[29]

17.    During the pendency of JPMCB's motion to dismiss and following the Court's order, the parties conducted extensive discovery concerning both Movants' claims and JPMCB's counterclaims.  Collectively, the Parties produced over 700,000 documents, deposed nearly 300 witnesses, and exchanged over 30 expert reports.

### (2).   Summary Judgment Decision

18.    On August 4, 2014, Judge Sullivan of the United States District Court for the Southern District of New York (the "District Court"), in Case No. 11-cv-6760 (RJS), withdrew the reference with respect to the Avoidance Action [District Court ECF No. 45].  JPMCB moved for summary judgment in the District Court with respect to all of Movants' remaining claims, and Movants cross-moved for summary judgment on certain of their claims and the Avoidance Action Counterclaims.  On September 30, 2015, Judge Sullivan granted JPMCB's summary judgment motion in part, dismissing twenty-three of the remaining causes of action asserted in the First Amended Complaint, and denied the summary judgment motion filed by the Movants [District Court ECF No. 100].  Judge Sullivan's decision left only six counts from the First

---

[29]    On August 7, 2012, the Court entered an Order Denying Plaintiffs' Motion for Reconsideration (Avoidance Action ECF No. 156).  Plaintiffs did not seek leave to appeal Judge Peck's decision at that time and continued to prosecute the claims remaining in the First Amended Complaint.  Judge Peck's decision is an interlocutory order to which an appeal as of right will not lie until a final order is entered disposing of all of the claims on a final basis.  See Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings Inc.), 480 B.R. 179, 186 (S.D.N.Y. 2012) (in denying JPMorgan's motion to withdraw the reference, the District Court noted that a bankruptcy court may enter an interlocutory order dismissing fewer than all of the claims in an adverse complaint) (citing O'Toole v. McTaggart (In re Trinsum Grp., Inc.), 467 B.R. 734, 738-39 (Bankr. S.D.N.Y. 2012) (an order dismissing some but not all claims in an adversary complaint is an interlocutory order)); see also Picard v. Katz, 466 B.R. 208, 210 (S.D.N.Y. 2012) (denying trustee's motion for certification of interlocutory appeal and for entry of a partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure of an order dismissing certain of the trustee's claims under the safe harbors).  On December 2, 2014, Plaintiffs requested that Judge Sullivan certify Judge Peck's order under Rule 54(b) for interlocutory appeal so that it could be heard by the District Court.  Judge Sullivan denied that request in an order dated December 8, 2014.

Amended Complaint for trial, including (i) three causes of action based on alleged violations of section 553 of the Bankruptcy Code that would also involve determining whether applicable safe harbor provisions apply, (ii) two causes of action alleging violations of the automatic stay of section 362 of the Bankruptcy Code, and (iii) a claim for equitable subordination under section 510(c) of the Bankruptcy Code. Judge Sullivan's decision also left for trial the Avoidance Action Counterclaims,[30] consisting of JPMCB's claims that LBHI fraudulently induced its post-petition extensions of credit, as well as indemnity claims that JPMCB alleges are substantial and entitled to secured status.

### (3).    SLCFC Motion

19.    In August 2015, the Plan Administrator filed the SLCFC Motion[31] requesting an order tolling the deadline for individual creditors to file SLCFC Claims and confirming that, to the extent LBHI and the Committee successfully prosecute or settle constructive fraudulent conveyance actions against JPMCB, that resolution will finally dispose of any and all litigation challenging the subject obligations and transfers, including the SLCFC Claims of individual creditors.

20.    JPMCB did not object to the SLCFC Motion. Instead, LBHI and JPMCB entered into an agreement to toll the deadlines applicable to state law claims intended to cover individual creditors' SLCFC Claims. On August 11, 2014, the Court "SO ORDERED" the Tolling Agreement And Stipulated Order Relating To Fraudulent Transfer Claims Of Individual LBHI Creditors entered into between LBHI and JPMCB (the "Tolling Order") [ECF No. 45685], which

---

[30]    With the exception of one cause of action previously voluntarily dismissed by JPMCB.

[31]    Motion Of Lehman Brothers Holdings Inc. For An Order (I) Determining (A) Automatic Stay Remains In Full Force And Effect And (B) Applicability Of State Law Tolling Statutes And 11 U.S.C. § 108(c) To State Law Constructive Fraudulent Conveyance Claims Of Individual Creditors Or, In Alternative, (II) Seeking A Limited Modification To Stay [ECF No. 45406] (the "SLCFC Motion").

states, inter alia, that (a) the statute of limitations applicable to any SLCFC Claims shall be

extended until August 12, 2016; and (b) "LBHI retains exclusive power to settle the [Avoidance

Action] on behalf of all creditors of the LBHI estate, and to the extent LBHI settles the

[Avoidance Action], such settlement shall be binding on individual creditors with respect to any

SLCFC Claims asserted or assertable against [JPMCB]."  See SLCFC Order ¶¶ 2-4.

## C.   DERIVATIVES OBJECTIONS

### (1).   Derivatives Action

21.     The Lehman Parties and the JPMorgan Parties entered into tens of thousands of

derivatives transactions governed by the following agreements (the "Primary Master

Agreements"):

| Date | Lehman Party | JPMorgan Party | Type |
|------|-------------|----------------|------|
| December 20, 1995 | LBSF | Morgan Guaranty Trust Co. of NY/JPMCB | ISDA |
| February 14, 2003 | LBSF | JPMC & Co. | ISDA |
| January 6, 1993 | LBSF | Bear Stearns Bank Dublin/JPMBD | ISDA |
| July 1, 2003 | LBSF | BSCP | ISDA |
| July 11, 2001 | LBSF | Bear Stearns International Limited/JPMML | ISDA |
| February 2, 2006 | LBCS | JPMCB | ISDA |
| October 1, 2007 | LBCS | JPMSL | ISDA |
| August 8, 2006 | LBCS | JPMVEC | ISDA |
| November 15, 1993 | LBCC | Morgan Guaranty Trust Co. of NY/JPMCB | ISDA |
| March 9, 1995 | LBCC | BSFX | FEOMA |

22.     As of LBHI's bankruptcy, there were approximately 70,000 derivatives trades

open between the Lehman Parties and the JPMorgan Parties under the Primary Master

Agreements.  At the time LBHI filed for bankruptcy, the Lehman Parties were "in-the-money"

by approximately $1 billion vis-à-vis the JPMorgan Parties on an aggregate basis across the entire portfolio of trades. LBHI's bankruptcy filing constituted an event of default under the Primary Master Agreements, entitling the JPMorgan Parties to terminate the trades. The JPMorgan Parties then closed out the trades and calculated Close-out Amounts and Loss Amounts (as defined by the applicable Primary Master Agreements). Ultimately, the JPMorgan Parties filed claims against the Lehman Parties under the Primary Master Agreements totaling approximately $2.3 billion, including claims against LBHI arising from LBHI's guarantee of amounts purportedly due upon the termination of derivatives trades between the JPMorgan Parties and the Lehman Parties. The JPMorgan Parties then set off approximately $1.9 billion in cash collateral pledged by LBHI under certain of the guaranties and security agreements challenged in the Avoidance Action.

23.    On September 14, 2012, LBHI and the Lehman Parties, along with the Committee, commenced Adversary Proceeding No. 12-01874 (SCC) (as amended on November 16, 2012 [Derivatives Action ECF No. 6], the "<u>Derivatives Action</u>")[32] alleging breaches of various contracts, seeking declaratory relief, and objecting to all or portions of Claim Nos. 66451 (by JPMML against LBSF), 66453 (by JPMSL against LBSF), 66454 (by JPMVEC against LBCS), 66455 (by JPMCB against LBSF), 66462 (by JPMCB against LBHI), 66470 (by JPMSL against LBHI), 66472 (by JPMVEC against LBHI), 66473 (by JPMCB against LBCS), 66474 (by JPMML against LBHI) and 66476 (by JPMCB against LBCC) (collectively, the "<u>Primary Derivatives Claims</u>"). The Derivatives Action alleges that the Primary Derivatives Claims were

---

[32]    <u>Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Commercial Corp., and Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A., J.P. Morgan Markets Limited (f/k/a Bear Stearns International Limited), J.P. Morgan Securities Ltd., J.P. Morgan Ventures Energy Corporation, JP Morgan Chase and Co., JPMorgan Bank Dublin (f/k/a Bear Stearns Bank PLC), Bear Stearns Credit Products Inc. and Bear Stearns Forex Inc. (In re Lehman Bros. Holdings Inc.)</u>, Adv. Proc. No. 12-01874 (SCC) [ECF No. 30936].

overstated.  It also asserts causes of action for breach of the Primary Master Agreements and

seeks to reduce the Primary Derivatives Claims due to alleged manipulation of the Close-Out

Amounts and Loss Amounts.  Specifically, the Lehman Parties argue:

- ***First***, by valuing terminated trades for claim calculation purposes as of dates after the Early Termination Date selected by the JPMorgan Parties—September 15, 2008 under almost all Primary Master Agreements—the JPMorgan Parties violated both the Primary Master Agreements and bankruptcy law, which mandated that the JPMorgan Parties calculate their claims as of the Early Termination Date so long as values could be determined as of that date.

- ***Second***, the JPMorgan Parties improperly increased their claims by hundreds of millions of dollars through add-on charges to account for transaction costs (bid/offer spreads and liquidity premiums) for hypothetical replacement transactions that Lehman alleges were not entered into by the JPMorgan Parties at the time of the close-out.  Moreover, even if they had entered into replacement trades, the charges incurred by the JPMorgan Parties would have been less than the claimed amount of the charges.  To that end, including these add-on charges in JPMorgan's Primary Derivatives Claims violated the commercial reasonableness requirements of the Primary Master Agreements.

- ***Third***, in certain cases, the JPMorgan Parties disregarded the standard market practice of managing the risk from a derivatives book on a portfolio basis (i.e., to determine the economic equivalent of the material terms of the transactions as a group), and did not aggregate similar trades when calculating the Close-Out Amounts and Loss Amounts, which increased the amount of add-on charges included in its claims.  This is contrary to standard commercial practice and violated the commercial reasonableness requirements of the Primary Master Agreements.

- ***Fourth***, in certain cases, the JPMorgan Parties assigned inconsistent prices in its Close-Out Amounts and Loss Amounts to identical or substantially similar positions, which was not commercially reasonable.

JPMorgan vigorously disputes each of the foregoing arguments and contends that its close-outs

were performed in a commercially reasonable manner and in accordance with the provisions of

the Primary Master Agreements.

24.     The Parties have conducted extensive document discovery in connection with the

Derivatives Action that remains ongoing.  To date, the Lehman Parties have produced over one

million documents, and the JPMorgan Parties have produced over 300,000 documents.  The

Lehman Parties' production comes from the files of 97 custodians. The JPMorgan Parties' productions come from the files of 71 custodians. In addition, the parties have exchanged and obtained from third parties vast quantities of trading data that will be examined to establish actual market values for the terminated positions.

### (2).    LBF/LBI Derivatives Action

25.     JPMCB and JPMML are parties to derivatives transactions with non-debtor LBHI affiliates LBI and Lehman Brothers Finance S.A. ("LBF") which were supported by guaranties from LBHI. The agreements governing those derivative transactions (the "LBF/LBI Master Agreements") are set forth below:

| Date | Lehman Party | JPMorgan Party | Type |
|---|---|---|---|
| November 15, 1993 | LBF | Morgan Guaranty Trust Co. of NY/JPMCB | ISDA |
| February 14, 2003 | LBF | Bear Stearns International Limited/JPMML | ISDA |
| September 8, 2004 | LBI | JPMCB | ISDA |

26.     At the time LBHI filed for bankruptcy, LBI and LBF were "in-the-money" by approximately $175 million vis-à-vis JPMCB and JPMML on an aggregate basis across the portfolio of trades under the LBF/LBI Master Agreements. LBHI's bankruptcy filing constituted an event of default under the LBF/LBI Master Agreements. After JPMCB and JPMML terminated the LBF/LBI Master Agreements and closed out the trades, they filed claims against LBHI as guarantor for over $160 million.

27.     On January 7, 2015, LBHI filed the Objection to Portions of Proofs of Claim No. 66462 and 66474 against Lehman Brothers Holdings Inc. of JPMorgan Chase Bank, N.A. and JPMorgan Markets Limited (f/k/a/ Bear Stearns International Limited) Regarding Derivatives Losses (the "LBF/LBI Derivatives Action") [ECF No. 47718], objecting to portions of Claim

Nos. 66462 (by JPMCB against LBHI) and 66474 (by JPMML against LBHI) described therein

as arising from LBHI's guarantee of amounts purportedly due upon the termination of

derivatives trades between JPMCB and LBF, JPMML and LBF, and JPMCB and LBI.  The

LBF/LBI Derivatives Action asks that the Court reduce the amounts of Claims Nos. 66474 and

66462; JPMCB disputes the contentions in the LBF/LBI Derivatives Action.  Formal discovery

concerning the LBF/LBI Master Agreements has not yet begun.

### (3). <u>WaMu Derivatives Action</u>

28.     Prior to the commencement of the Chapter 11 Cases, LBSF had a number of

derivatives transactions with WaMu, governed by an ISDA Master Agreement dated May 28,

1998 (the "<u>WaMu Master Agreement</u>") and guaranteed by LBHI.  After LBHI filed for

bankruptcy, WaMu notified LBSF that it was terminating the transactions under the WaMu

Master Agreement.  On September 25, 2008, the director of the Office of Thrift Supervision

placed WaMu into receivership and appointed the Federal Deposit Insurance Corporation

("<u>FDIC</u>") as receiver.  Later that day, the FDIC sold certain assets of WaMu to JPMorgan.  As

part of that sale, JPMorgan was assigned WaMu's rights under certain derivatives and swap

agreements, including the WaMu Master Agreement.  On April 1, 2010, JPMCB filed its

amended Proofs of Claim against LBHI and LBSF, including $80,313,435 under Claim No.

66455 against LBSF and 66462 against LBHI as guarantor (the "<u>WaMu Derivatives Claim</u>").

29.     On January 7, 2015, LBHI and LBSF filed the <u>Objection to Portions of Proof of</u>

<u>Claim No. 66462 Against Lehman Brothers Holdings Inc. and Proof of Claim No. 66455 Against</u>

<u>Lehman Brothers Special Financing Inc. of JPMorgan Chase Bank, N.A. Regarding Derivative</u>

<u>Losses</u> (the "<u>WaMu Derivatives Action</u>") [ECF No. 47716], objecting to the WaMu Derivatives

Claim on the grounds that it is overstated by approximately $16 million and asking the Court to

reduce it from $80,313,435 to $64,139,815; JPMCB disputes the contentions in the WaMu

Derivatives Action.  Discovery concerning the WaMu Derivatives Action has not yet begun.

### D.    TASSIMO ACTION

30.    JPMCB acted as the main clearing bank for Lehman's broker-dealer business and

as LBI's non-exclusive custodian for tri-party repurchase agreements and in that capacity asserts

the Clearing Claims.  In an effort to satisfy the Clearing Claims, JPMCB was entitled to, and did,

dispose of LBI securities collateral and apply the proceeds to reduce the approximately $25

billion of intraday credit it had outstanding to LBI related to its role as LBI's tripary repo

custodian.  On August 31, 2011, LBHI and the Committee filed the Objection to Proofs of Claim

No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc.

of JPMorgan Chase Bank, N.A. Regarding Triparty Repo-Related Losses (the "Tassimo Action")

[ECF No. 19604], objecting to portions of Claim No. 66462 (by JPMCB against LBHI) wherein

JPMCB asserts claims relating to the purported deficiency remaining after JPMCB's application

of proceeds from that disposition.  LBHI and the Committee contend that JPMCB's disposition

of certain of that collateral was commercially unreasonable.  JPMCB disputes the contentions in

the Tassimo Action.  JPMCB and LBHI are currently engaged in document discovery related to

the Tassimo Action.

### E.    OTHER OBJECTIONS

#### (1).    492nd Omnibus Objection

31.    On January 7, 2015, LBHI filed the 492nd Omnibus Objection to Miscellaneous

Claims by Various Subsidiaries of JPMorgan Chase Bank & Co. Against Various Debtors

(Insufficient Documentation Claims) (the "492nd Omnibus Objection") [ECF No. 47715],

objecting to all or portions of various claims by JPMorgan-affiliated entities against LBHI and

affiliated debtor entities on the grounds that they lack sufficient supporting documentation;

JPMCB disputes the contentions in the 492nd Omnibus Objection.  While Lehman and JPMorgan

have exchanged information related to the claims addressed in the 492nd Omnibus Objection,

formal discovery has not begun.

### (2).    Securities Lending Objection

32.    JPMCB served as custodian for LBI's securities lending transactions.  On January

7, 2015, LBHI filed the Objection to Portions of Proof of Claim No. 66462 Against Lehman

Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. of JPMorgan Chase Bank,

N.A. Regarding Securities Lending (the "Securities Lending Objection") [ECF No. 47719],

objecting to portions of Claim No. 66462 (by JPMCB against LBHI) wherein JPMCB asserts

claims relating to its role as custodian for LBI's securities lending transactions; JPMCB disputes

the contentions in the Securities Lending Objection.  While LBHI and JPMCB have exchanged

information related to the claims addressed in the Securities Lending Objection, formal

discovery has not begun.

### F.    LBSF ACTION

33.    On September 14, 2010, LBSF filed Adversary Proceeding No. 10-03547 (SCC)

against various parties, captioned Lehman Brothers Special Financing Inc. v. Bank of America

National Association, et al. (the "LBSF Action") [LBSF Action ECF No. 1] relating to LBSF's

role as swap counterparty in structures where, LBSF alleges, the related documentation

contained provisions which changed the relative priority of cash distributions from certain trusts

in response to a bankruptcy filing.  LBSF added JPMCB and JPMSL as parties in the second

amended complaint filed on July 23, 2012 [LBSF Action ECF No. 303-1], last amended on

October 13, 2015 [LBSF Action ECF No. 1156].  JPMCB and JPMSL dispute the allegations in

the LBSF Action.

**G.**    **NEGOTIATION OF SETTLEMENT AGREEMENT**

34.    Over the years, the Parties tried on multiple occasions to reach a global resolution of their various disputes.  In addition to repeated settlement discussions, the Parties participated in a formal mediation on October 21-23, 2013 before a highly experienced mediator, the Hon. Daniel Weinstein (Ret.).  Following the formal mediation, informal discussions continued over the ensuing months with and through Judge Weinstein, albeit without success.  In the wake of Judge Sullivan's summary judgment decision in the Avoidance Action, the Parties engaged in discussions outside the formal mediation process and ultimately reached the agreement reflected in the Settlement Agreement.

## III.    JURISDICTION

35.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## IV.    ARGUMENT

**A.**    **APPLICABLE STANDARDS FOR BANKRUPTCY SETTLEMENTS**

36.    Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. Proc. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness."  Id. (quoting Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)); accord In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

37.    Compromises are "a normal part of the process of reorganization."  Prot.  Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)

(quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).  Compromises

may be effected separately during the reorganization proceedings or in the body of the plan itself.

Drexel Burnham, 138 B.R. at 758.  The decision to approve a particular compromise lies within

the sound discretion of the bankruptcy court.  See Nellis v. Shugrue, 165 B.R. 115, 123

(S.D.N.Y. 1994).  The Court's discretion may be exercised "in light of the general public policy

favoring settlements."  In re Hibbard Brown & Co., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A

proposed compromise settlement implicates the issue of whether it is "fair and equitable, and in

the best interest of the [debtor's] estate."  In re Best Prods., 168 B.R. 35, 50 (Bankr. S.D.N.Y.

1994) (internal citations omitted).  The Court must apprise itself "of all relevant facts necessary

for an intelligent and objective opinion of the probabilities of ultimate success should the claim

be litigated."  Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc., 390 U.S. at 424.

38.     Courts typically consider the following factors in determining whether a

settlement should be approved: (i) the probability of success in litigation, with due consideration

for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment;

(iii) the complexity and likely duration of the litigation and any attendant expense,

inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who

affirmatively support, the proposed settlement; (v) the competence and experience of counsel

who support the settlement; (vi) the relative benefits to be received by members of any affected

class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and

not the product of fraud or collusion; and (viii) the debtor's informed judgment that the

settlement is fair and reasonable.  See id.; In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr.

S.D.N.Y. 1998); In re Best Prods. Co., 168 B.R. at 50.

39.    While a court must "evaluate . . . all . . . factors relevant to a fair and full
assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court
need not conduct a "mini-trial" of the merits of the claims being settled, In re W.T. Grant & Co.),
699 F.2d at 608, or conduct a full independent investigation, Drexel Burnham, 134 B.R. at 496.
Moreover, in reviewing a proposed global compromise, the Court need not be aware of or decide
the particulars of each individual claim resolved by the settlement or "assess the minutia of each
and every claim"; rather, the Court "need only canvass the issues and see whether the settlement
falls 'below the lowest point in the range of reasonableness.'" Shugrue, 165 B.R. at 123.  As one
court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether
the Settlement Agreement in its entirety is appropriate for the . . . estate." Air Line Pilots Ass'n,
Int'l v. Am.  Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 430 (S.D.N.Y.
1993), aff'd, 17 F.3d 600 (2d Cir. 1993).

40.    The Court also has authority under the broad equitable powers of the Bankruptcy
Code set forth in section 105(a) to approve the Settlement Agreement.  See, e.g., In re A.H.
Robbins, 880 F.2d 769, 776 (4th Cir. 1989) (section 105(a) authorizes the court to "issue any
order, process or judgment that is necessary or appropriate to carry out the provisions" of the
Bankruptcy Code); In re Joint E. & S. Dis. Asbestos Litig., 878 F. Supp. 473 (E.D.N.Y. &
S.D.N.Y. 1995) and 129 B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) of
the Bankruptcy Code authorizes the federal courts in bankruptcy cases to approve a settlement
modifying distributions, obligations, and payment procedures under a trust).

41.    This Court has granted similar relief in the Chapter 11 Cases pursuant to section
105(a) of the Bankruptcy Code.  See Order Approving the Settlement Agreement Relating to
Restructured Asset Certificates with Enhanced Returns, Series 2006-20AT Credit Default Swap

Agreement and Trust Agreement [ECF No. 49408]; Order Approving the Settlement Agreement

Relating to Exum Ridge CBO 2007-2 Credit Default Swap Agreement and Indenture [ECF No.

48318]; Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and

Section 105(a) of the Bankruptcy Code for Approval of Partial Settlement Agreement Relating to

SGS HY Credit Fund I (Exum Ridge CBO 2006-3) Swap Agreement and Indenture [ECF No.

45451]; Order Approving Partial Settlement Agreements Relating to Certain Credit Default

Swap Agreements and Trust Agreements [ECF No. 39624]; Order Pursuant to Section 105(a) of

the Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement

Relating to Airlie CDO I, Ltd.  [ECF No. 39017]; Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating

to Pebble Creek LCDO 2007-3, Ltd.  [ECF No. 36867]; Order Approving Settlement Agreement

and Indemnity Between Lehman Brothers Special Financing Inc. and Deutsche Bank Trust

Company Americas, as Trustee, Relating to Credit Default Swap Agreement [ECF No. 30096].

**B.**     **Settlement Easily Satisfies Standards Applicable To Rule 9019 Motions**

42.     The Settlement Agreement resolves any and all claims and causes of action with

respect to the Avoidance Action, the Derivatives Action, the LBF/LBI Derivatives Action, and

the WaMu Derivatives Action.  Each of the Tassimo Action, the Securities Lending Objection,

the 492nd Omnibus Objection, the LBSF Action, and the Non-CDA Claims is an "Excluded

Action" that is not resolved pursuant to the Settlement Agreement.

43.     Litigation is inherently uncertain.  There are significant risks facing both the

estates and JPMorgan if they continue with the Avoidance Action and the Derivatives

Objections.  Both the Bankruptcy Court and the District Court have issued extensive decisions

dismissing all but a small few of the claims asserted in the Avoidance Action.  There is no

certainty the Movants will prevail at trial with respect to the remaining six counts, and JPMCB's

claims for fraudulent inducement and indemnification against LBHI remain outstanding. After the trial, LBHI intends to appeal to the Second Circuit whether the transactions at issue are entitled to safe harbor protections.

44.     The CDA also impacts the value of the Avoidance Action. Under that agreement, JPMorgan retained the right to look to the value of the Structured Securities (as determined by the parties' agreement or a decision from the Court) to the extent its purportedly secured claims were determined to be unsecured. To that end, even if Lehman prevails in avoiding LBHI's guaranties or otherwise challenging the secured status of JPMorgan's claims, JPMorgan retains the right to look to other collateral to satisfy those claims. While the CDA leaves the method of valuation of the Structured Securities for this purpose undecided, it is worth noting that the Structured Securities have generated billions of dollars for the estate since JPMorgan returned them through the CDA. Stated simply, a victory in the Avoidance Action may not afford Lehman substantial relief.

45.     Absent a settlement, Lehman and the Committee will prosecute the Derivatives Objections with the same verve as the Avoidance Action given their long-held conviction that the JPMorgan Parties' Derivatives Claims are inflated by excessive charges and, if litigated to finality, will be reduced significantly if not disallowed in their entirety. However, litigating the Derivatives Action will be an enormously complicated undertaking involving, among other things, an assessment of what constitutes "commercially reasonable practices" by market making dealers and a substantial amount of work by hired experts.

46.     The settlement resolves the Derivatives Objections and Avoidance Action on fair and reasonable terms under Bankruptcy Rule 9019; a $1.420 billion cash payment; reduction and allowance of the Subrogated Derivatives Claims by the Plan Administrator; and the release of a

Debtor Deposit under the CDA totaling $76 million in connection with the settlement of offsetting true-up obligations.

47.     Time and cost are prominent considerations.  The estates have been investigating the claims asserted by the JPMorgan Parties since these cases began nearly eight years ago.  The Parties have engaged in discovery on a massive scale.  Hundreds of depositions have been taken, and millions of pages of documents have been produced.  The Avoidance Action has been pending for almost six years, and the various objections to the Derivatives Claims were filed at different points thereafter.  Both sides have incurred significant legal fees in prosecuting and defending fact-intensive claims and objections among tens of thousands of transactions between the parties.  The Settlement follows repeated attempts to reach a consensual resolution of the Parties' disputes.  The Settlement is indisputably the product of extensive arm's length negotiations.  Indeed, the Parties were only able to reach an agreement after years of hard-fought litigation involving extensive fact and expert discovery and dispositive motions.

48.     Accordingly, the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the Parties' disputes, well within the "range of reasonableness," and are in the best interests of LBHI, LBSF, the other Lehman Parties and their respective estates and creditors.

## C.     LBHI Has Exclusive Authority To Settle Avoidance Actions

49.     Bankruptcy courts have the authority to release third-party fraudulent conveyance actions on a permanent basis.  See Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC), 740 F.3d 81, 93 (2d Cir. 2014) (holding that individual claims that are duplicative of estate's fraudulent transfer claims are precluded by the trustee's settlement of the estate's claims); In re Dreier LLP, 429 B.R. 112, 133 (Bankr. S.D.N.Y. 2010) (bankruptcy court has jurisdiction to make the automatic stay permanent following the settlement of a fraudulent transfer claim by the

trustee); In re Berg, 376 B.R. 303, 314 (Bankr. D. Kan. 2007) (a release of a fraudulent transfer

claim by the trustee is binding upon unsecured creditors and prevents a creditor from pursuing a

state law action).

50.     The Court "has jurisdiction to make the automatic stay permanent following

settlement of a fraudulent transfer claim" because "absent that power, the Trustees will be

hampered in their ability to pursue and immediately settle fraudulent transfer claims from a

transferee fearful of paying twice for the same transfer—once on the Trustee's claim and a

second time on the [individual creditor's] claim." In re Dreier LLP, 429 B.R. at 133.

51.     "If a claim is a general one, with no particularized injury arising from it, and if

that claim could be brought by any creditor of the debtor, the trustee is the proper person to

assert the claim, and the creditors are bound by the outcome of the trustee's action." St. Paul

Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir. 1989); see also Madoff, 740

F.3d at 91 (a fraudulent transfer claim is "the paradigmatic example of a claim that is 'general' to

all creditors . . . in bankruptcy such a claim is usually brought by the trustee, for the benefit of all

creditors") (quoting Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas

Petroleum, Inc.), 522 F.3d 575, 589 n. 9 (5th Cir. 2008)).

52.     With respect to the SLCFC Claims, individual creditors are bound by LBHI's

settlement and disposal of any and all rights, claims and defenses asserted in the Avoidance

Action.  LBHI has the exclusive authority to settle those claims, and its prosecution and

settlement of them forecloses any attempt by individual creditors to bring them or the SLCFC

Claims.  Accordingly, the [Proposed] Order approving the Settlement Agreement provides that

the settlement releases under the Settlement Agreement with respect to the Avoidance Action

will be binding on individual creditors with respect to any of the SLCFC Claims asserted or

assertable against JPMCB.  Such a provision was already "SO ORDERED" in the SLFC Order

(¶ 2) and should be reiterated here.  Similarly, the [Proposed] Order provides that the agreement

to toll the statutes of limitation with respect to the SLCFC Claims in the SLFC Order shall be

terminated.

## NOTICE

53.    No trustee has been appointed in these Chapter 11 Cases.  The Movants have

served notice of this Motion in accordance with the procedures set forth in the second amended

order entered on June 17, 2010, governing case management and administrative procedures for

these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; (v) the attorneys for JPMorgan; and (vi) all parties who have requested

notice in the Chapter 11 Cases.  The Movants submit that no other or further notice need be

provided.  No previous request for the relief sought herein has been made by the Movants to this

or any other Court.

## CONCLUSION

WHEREFORE the Movants respectfully request that the Court enter an Order in the form attached to the Settlement Agreement as Exhibit A to the Settlement Agreement (a) granting the Motion and (b) awarding such other and further relief as it deems just and proper.

Dated:    January 25, 2016
          New York, New York

Respectfully submitted,

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

By: */s/ Joseph D. Pizzurro* _____
Joseph D. Pizzurro
Michael J. Moscato
Peter J. Behmke
*Counsel to Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew J. Rossman* _____
Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
*Counsel to the Official Committee of Unsecured Creditors*

30