WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Christopher J. Lucht

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone:    (303) 945-7415
Facsimile:    (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (application to be filed)
Lindsay Unruh (application to be filed)
Caleb Durling (application to be filed)

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No.<br>08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　　　- against -<br><br>1ST ADVANTAGE MORTGAGE, LLC, AFFILIATED FUNDING CORP., ALERA FINANCIAL, LLC, ALLIANCE FINANCING MORTGAGE CORP., ALPINE MORTGAGE LLC, AMERA MORTGAGE CORPORATION, AMERICAN HOME EQUITY CORPORATION, AMERICAN LENDING NETWORK | Adversary Proceeding<br>No. _____ |

INC., AMERICAN MORTGAGE EXPRESS FINANCIAL, AMERICA'S MORTGAGE ALLIANCE, INC., APPROVED FUNDING CORP., APREVA FINANCIAL CORPORATION, ARLINGTON CAPITAL MORTGAGE CORPORATION, ASCENT HOME LOANS INC., ATLANTIC BAY MORTGAGE GROUP LLC, AURORA MORTGAGE, LLC, AXIOM FINANCIAL, LLC., AXIS MORTGAGE & INVESTMENTS LLC, BANK OF ENGLAND, BELL AMERICA MORTGAGE LLC, BONDCORP REALTY SERVICES, INC., BRIER MORTGAGE CORP., BROADVIEW MORTGAGE CORPORATION, CENTRAL PACIFIC MORTGAGE COMPANY, CHERRY CREEK MORTGAGE CO., INC., CHICAGO BANCORP, INC., CHRISTOPHER E. HOBSON, INC. (D/B/A FRANKLIN FINANCIAL), CITIMUTUAL CORPORATION, CITY FIRST MORTGAGE SERVICES, L.L.C., CMG MORTGAGE INC., COMMUNITY BANKS OF COLORADO, CORNERSTONE HOME MORTGAGE CORP., CORNERSTONE MORTGAGE, INC., CRANBROOK MORTGAGE CORP., CRESTLINE FUNDING CORPORATION, CTX MORTGAGE COMPANY, LLC, DEUTSCHE BANK, AG (AS SUCCESSOR TO MORTGAGE IT, INC., D/B/A MIT LENDING), DHI MORTGAGE COMPANY, LTD., DIRECTORS MORTGAGE INC., DOLLAR MORTGAGE CORPORATION, DUXFORD FINANCIAL, INC., DYNAMIC CAPITAL MORTGAGE, INC., EAGLE HOME MORTGAGE, LLC, EXTOL MORTGAGE SERVICES, INC., FAIRMONT FUNDING LTD., FIRST BANK, FIRST CALIFORNIA MORTGAGE COMPANY, FIRST CAPITAL GROUP, LP, FIRST EQUITY MORTGAGE BANKERS, INC., FIRST MORTGAGE CORPORATION, FIRST RESIDENTIAL MORTGAGE SERVICES CORP., FLICK MORTGAGE INVESTORS, INC., FREEDOM MORTGAGE CORP., FRONTIER INVESTMENT COMPANY, GATEWAY BANK, FSB (AS SUCCESSOR TO ARLINGTON CAPITAL MORTGAGE CORPORATION), GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES LP, GATEWAY MORTGAGE GROUP, LLC, GEORGE MASON MORTGAGE LLC, GLOBAL ADVISORY GROUP, INC., GREENPOINT MORTGAGE FUNDING, INC., GUARANTEED RATE, INC., GUARANTY BANK, HARTLAND MORTGAGE CENTERS, INC., HOME LOAN CENTER, INC, HOME LOAN MORTGAGE CORPORATION, HSBC

MORTGAGE SERVICES INC., HYPERION CAPITAL GROUP, LLC, IMORTGAGE.COM, INC., ION CAPITAL, INC., JAMS-01, INC., K & B CAPITAL CORP., LAKELAND MORTGAGE CORP., LIBERTY FINANCIAL GROUP, INC., MARIBELLA MORTGAGE LLC, MASON DIXON FUNDING, INC., MEGA CAPITAL FUNDING, INC., MEGASTAR FINANCIAL CORP., MERRIMACK MORTGAGE COMPANY, INC., MILLENNIUM MORTGAGE CORP., MINNESOTA HOME MORTGAGE CORPORATION, MJS LENDING, INC., MORTGAGE CAPITAL ASSOCIATES, INC., MORTGAGE IT, INC., MORTGAGE PARTNERS, INC., MOUNTAIN AMERICA FINANCIAL SERVICES, LLC, MOUNTAIN WEST FINANCIAL, INC., MYLOR FINANCIAL GROUP, INC., NATIONAL FUNDING COMPANY, LLC, NATIONAL PENN BANK, NEW FED MORTGAGE CORP., NL, INC., NORTH COUNTY REAL ESTATE, INC., NORTHWEST MORTGAGE GROUP, INC., NOVA FINANCIAL & INVESTMENT CORPORATION, OAKTREE FUNDING CORPORATION, ORO REAL, INC., PACIFIC FIRST FINANCIAL SERVICES, LP, PARAMOUNT RESIDENTIAL MORTGAGE GROUP INC., PARKSIDE LENDING, LLC, PEMM.TEK MORTGAGE SERVICES, LLC, PHH HOME LOANS, LLC, PMAC LENDING SERVICES, INC., PMC BANCORP, POPULAR MORTGAGE CORP, PRIMARY CAPITAL ADVISORS, LC, PRIME MORTGAGE CORPORATION, PROMINENT MORTGAGE CORP., PTF FINANCIAL CORP., QUICKDRAW REAL ESTATE SERVICES, INC., RBC MORTGAGE COMPANY, REAL ESTATE FINANCIAL SERVICES, INC., RELIANT MORTGAGE COMPANY, LLC, REPUBLIC MORTGAGE HOME LOANS LLC, REPUBLIC STATE MORTGAGE COMPANY, RESIDENTIAL HOME FUNDING CORP., RESIDENTIAL MORTGAGE CAPITAL, RESPONSE MORTGAGE SERVICES, INC., REUNION MORTGAGE INC., RMR FINANCIAL, LLC, SACRAMENTO 1ST MORTGAGE, INC., SAN DIEGO GREAT WESTERN MORTGAGE CO. INC., SANTA CRUZ MORTGAGE COMPANY, SECURITY NATIONAL MORTGAGE COMPANY, SGB CORP., SHEA MORTGAGE INC., SIERRA PACIFIC MORTGAGE COMPANY INC, SIMONICH CORPORATION, SOLUBANC FUNDING, INC., SOUTHEAST FUNDING ALLIANCE, INC., STERLING NATIONAL MORTGAGE COMPANY, INC.,

| |
|---|
| SUBURBAN MORTGAGE, INC., SUN AMERICAN MORTGAGE COMPANY, SUNBELT LENDING SERVICES, INC., SUNSET DIRECT LENDING, LLC, SUNSET MORTGAGE CO., SUNSET MORTGAGE COMPANY, LP, THE LENDING COMPANY, UNIFIED CAPITAL GROUP, UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC, VISION MORTGAGE, L.L.C., WALL STREET MORTGAGE BANKERS, LTD., WEBSTER BANK N.A., WEGER MORTGAGE CORPORATION, WEI MORTGAGE CORPORATION, WESTSTAR MORTGAGE, INC., WHOLESALE AMERICA MORTGAGE, INC., WINDSOR CAPITAL MORTGAGE CORPORATION, WINSTAR MORTGAGE PARTNERS, INC., WR STARKEY MORTGAGE LLP, and ZINO FINANCIAL, INC., <br><br> Defendants. |

## ADVERSARY COMPLAINT

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for its Complaint against Defendants (identified in the caption and in Exhibit A) (attached hereto) (collectively, "Defendants") alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.  In this action, LBHI seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims, judgments and any other costs, fees and expenses LBHI incurred as a result of Defendants' sale and/or submission of thousands of defective mortgage loans in breach of Defendants' representations, warranties, and covenants (the "Defective Loans").

2.  LBHI sold the Defective Loans to the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") under

4

agreements that included representations and warranties about the Defective Loans that were co-extensive with those made by Defendants.  LBHI retained the right to seek indemnification from Defendants in the event it became liable for certain indemnification events.  After Fannie Mae and Freddie Mac discovered that the mortgage loans breached certain of those representations and warranties, Fannie Mae and Freddie Mac made claims upon LBHI for losses suffered on the Defective Loans.  In January and February 2014, respectively, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754), giving rise to LBHI's indemnification claims under the Agreements, as defined below, with Defendants.

3. By this action, LBHI seeks (i) to obtain a declaration that the court approved settlements between LBHI and Fannie Mae and Freddie Mac gave rise to LBHI's contractual indemnification claims under the Agreements, and (ii) recover money damages from Defendants for the indemnification claims.

**PARTIES**

4. On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  LBHI is a Delaware corporation with its principal place of business in New York, New York.

5. Upon information and belief, Defendants are incorporated in, residents of, and with headquarters and/or principal places of business in various states in the United States, as specified in Exhibit A attached hereto.

## JURISDICTION AND VENUE

6.      This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court, dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

8.      Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

9.      This Court has personal jurisdiction over Defendants.

## FACTUAL BACKGROUND

10.      At all relevant times, LBHI engaged in the purchase and sale of mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), then sold the loans to third parties, including Fannie Mae and Freddie Mac.

11.      Defendants engage, and at all relevant times engaged, in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

**A.**      **The Governing Agreements**

12.      This dispute arises out of (i) certain Defendants' sale of residential mortgage loans to LBHI's assignor, LBB, under a number of substantially similar Loan Purchase Agreements between LBB and certain Defendants (each an "LPA," collectively, the "LPAs");[1]

---

[1] Although the language of certain sections referenced throughout this Complaint may vary slightly from LPA to LPA, it is generally consistent in all material respects.

6

(ii) certain Defendants' submission of residential mortgage loans to LBHI's assignor, LBB, under a number of substantially similar Broker Agreements between LBB and certain Defendants (each a "Broker Agreement," collectively, the "Broker Agreements"),[2] and (iii) certain Defendants' sale of residential mortgage loans to LBHI's assignor, LBB, under a number of substantially similar Flow Mortgage Loan Purchase and Warranties Agreements between LBB and certain Defendants (the "Flow LPAs").[3] The dates of the relevant LPAs, Broker Agreements, and Flow LPAs are listed in Exhibit B hereto.

13.  The LPAs specifically incorporate the terms and conditions of the Seller's Guide of Lehman's loan administrator, Aurora Loan Services LLC (the "Seller's Guide") which sets forth additional duties and obligations of certain Defendants.[4] The Seller's Guide in its entirety is valid and binding on the Defendants who entered into the LPAs.

14.  The Flow LPAs incorporate the terms and conditions of the relevant Defendant's own underwriting guidelines.[5]

---

[2] The operative Broker Agreement for each of the Defective Loans is the version in effect at the time the Defendant sold the loan to LBB. Although the language of certain sections referenced throughout this Complaint may vary slightly from Broker Agreement to Broker Agreement, it is generally consistent in all material respects.

[3] The agreement with defendant HSBC Mortgage Services Inc. ("HSBC") is titled Mortgage Loan Purchase, Warranties and Interim Servicing Agreement.

[4] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time the Defendant sold the loan to LBB. Although the language of certain sections referenced throughout this Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

[5] See e.g., HSBC Flow LPA at §7(u) ("The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time the Mortgage Loan was originated or acquired by the Seller or an Affiliate.") and at §1 ("Definitions") at p. 11 ("Underwriting Guidelines. The Seller's written underwriting guidelines as in effect with respect to any Mortgage Loan at the time of its purchase or origination by Seller or its Affiliates, and as were delivered to Purchaser upon request.")

15. The LPAs and Flow LPAs set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and conveyance of the mortgage loans and mortgage loan documents.

16. The LPAs, Flow LPAs, and the Broker Agreements (collectively the "<u>Agreements</u>") also set forth Defendants' duties and obligations regarding examination of mortgage loan files and underwriting; representations and warranties concerning the parties and individual mortgage loans purchased, sold or submitted; and Defendants' indemnification obligations.

17. Pursuant to the Agreements, Defendants sold to LBB thousands of Defective Loans that resulted in LBHI being exposed to hundreds of millions of dollars of liability, as described further below.

18. The parties agreed that Defendants' obligations would extend to any subsequent purchasers and/or assignees, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." <u>See</u> Seller's Guide § 8. The Flow LPAs similarly provide that the agreement is for the benefit of, and enforceable by, the Purchaser and its "successors and assigns." <u>See e.g.,</u> HSBC Flow LPA at Section 21 ("Successor and Assigns; Assignment of Purchase Agreement") ("This Agreement may be assigned, pledged or hypothecated by the Purchaser in whole or in part, and with respect to one or more of the Mortgage Loans, without the consent of the Seller. There shall be no limitation on the number of assignments or transfers allowable by the Purchaser with respect to the Mortgage Loans and this Agreement.")

19. The Broker Agreements provide in Section 15 that LBB as the "Lender, in its sole discretion, may assign this Agreement from time to time."

8

20. In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the Defective Loans.

21. Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the LPAs. See Seller's Guide § 711.

22. Accordingly, LBHI as the "assignee," "subsequent holder" (and third-party beneficiary) of the Defective Loans is entitled to all the benefits of the Agreements, including the right to contractual indemnification.

B. **Defendants' Representations Under the LPAs**

23. With respect to each of the loans sold to LBHI (as, among other things, LBB's assignee) under the LPAs, Defendants made a number of representations, warranties, and covenants concerning the quality of the mortgage loans.

24. Specific examples of Defendants' representations, warranties and covenants concerning the quality of the mortgage loans include, but are not limited to, the following:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).

> Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein

9

not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration. Seller's Guide § 703(18).

The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. Seller's Guide § 703(24).

25. In certain instances, Defendants were also the underwriter of loans as permitted under the Seller's Guide. With respect to those loans, Defendants additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that:

All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

10

26.　Defendants represented and/or warranted that they had the ability to perform their obligations under, and satisfy all requirements of, the LPAs.  See Seller's Guide § 702(5).

27.　LBHI (as, among other things, LBB's assignee) relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans.  Specifically, Section 701 of the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

28.　Defendants agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorneys' fees.  Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

**C.      Defendants' Representations Under the Broker Agreements**

29.     With respect to each of the loans submitted under the Broker Agreements, Defendants made a number of representations, warranties, and covenants concerning the quality of the mortgage loans.

30.     Specific examples of Defendants' representations, warranties and covenants concerning the quality of the mortgage loans include, but are not limited to, the following:

> Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents . . . Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.  Broker Agreement § 8(g).

> Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.  Broker Agreement § 8(h).

31.     Defendants represented and/or warranted that they had the ability to perform their obligations under, and satisfy all requirements of, the Broker Agreements.  See Broker Agreement § 8(a).

32.     Defendants agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the

12

Defective Loans, including attorneys' fees. Section 9 of the Broker Agreement, entitled

"Indemnification," provides, in pertinent part, as follows:

> In addition to Lender's rights and remedies under Applicable Law (whether arising at law or in equity), Broker shall indemnify and hold Lender, its successors and assigns, and their respective officers, directors, employees. shareholders, members, agents, contractors, affiliates and subsidiaries (collectively, the "Lender Indemnitees") harmless from and against, and shall reimburse Lender Indemnitees with respect to, any and all claims, demands, losses, damages, interest, penalties, fines, forfeitures, judgments and expenses (including, without limitation, reasonable fees and disbursements of counsel, and court costs) (any of the foregoing hereinafter referred to as a "Claim"), resulting from, relating to or arising out of, whether the result of negligent or intentional conduct or otherwise: (i) any breach of any representation or warranty made by Broker pursuant to this Agreement or Lender's Guidelines: (ii) any breach or failure to perform any covenant or obligation of Broker in this Agreement or Lender's Guidelines. . . .

**D.    Defendants' Representations Under the Flow LPAs**

33.    With respect to the loans sold to LBHI (as, among other things, LBB's assignee) under the Flow LPAs, Defendants made a number of representations, warranties, and covenants concerning the quality of the mortgage loans.

34.    Specific examples of Defendants' representations, warranties and covenants concerning the quality of the mortgage loans include, but are not limited to the following:

> Mortgage Loans as Described. The information set forth in the related Mortgage Loan Schedule is complete, true and correct. HSBC Flow LPA § 7(a).
>
> Compliance with Applicable Laws. Any and all requirements of any federal, state or local law including, without limitation, usury, truth-in-lending, real estate settlement procedures, consumer credit protection, equal credit opportunity or disclosure laws applicable to the Mortgage Loan have been complied with and the Seller shall maintain in its possession, available for Purchaser's inspection, and shall deliver to the Purchaser upon demand, results of Seller's quality control testing in connection therewith. HSBC Flow LPA § 7(g).

13

Validity of Mortgage Documents. The Mortgage Note and the Mortgage and any other agreement executed and delivered by a Mortgagor in connection with a Mortgage Loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage and any other related agreement have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. With respect to each Cooperative Loan, the Mortgage Note, the Mortgage, the Pledge Agreement, and related documents are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note, the Mortgage, the Pledge Agreement, the Proprietary Lease, the Stock Power, Recognition Agreement and the Assignment of Proprietary Lease had legal capacity to enter into the Mortgage Loan and to execute and deliver such documents, and such documents have been duly and properly executed by such parties. HSBC Flow LPA § 7(k).

No Defaults. There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and, as of the Closing Date and Transfer Date, the Seller has not waived any default, breach, violation or event of acceleration, except in accordance with Accepted Servicing Practices. HSBC Flow LPA § 7(p).

Loan-to-Value Ratio; Combined Loan-to-Value Ratio. As of the date of origination, no Mortgage Loan had an LTV or a CLTV of greater than 100%. HSBC Flow LPA § 7(x).

Acceptable Investment. Other than with respect to the fact that the Mortgage Loans may be classified as "subprime" or other similar classification, the Seller has no knowledge of any circumstances or conditions with respect to the Mortgage, the Mortgaged Property, the Mortgagor, the Mortgage File or the Mortgagor's credit standing that can reasonably be expected to cause private institutional

investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan. HSBC Flow LPA § 7(z).

**Delivery of Mortgage Documents**. The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered by the Seller on or prior to the Closing Date pursuant to this Agreement have been delivered to the Purchaser or its designee. HSBC Flow LPA § 7(aa).

**Conformance with Underwriting Guidelines; Underwriting Methodology**. The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time the Mortgage Loan was originated or acquired by the Seller or an Affiliate. Notwithstanding the foregoing, no Mortgage Loan for which there is no credit report or credit score in the Mortgage File was underwritten without verification of the Mortgagor's income and assets. The Mortgage Note and Mortgage are on forms acceptable to participants in the secondary mortgage market for similar types of Mortgage Loans. The methodology used in underwriting the extension of credit for each Mortgage Loan does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan. HSBC Flow LPA § 7(u).

35.     The representations and warranties of the Flow LPAs are substantially similar to the HSBC Flow LPA. Other relevant representations and warranties from other Flow LPAs are identified in Exhibit C.

36.     Defendants represented and/or warranted that they had the ability to perform their obligations under, and satisfy all requirements of, the Flow LPAs. See e.g., HSBC Flow LPA § 6(d) ("The Seller is solvent and the sale of the Mortgage Loans will not cause the Seller to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of the Seller's creditors. … The Seller is in good standing to sell mortgage loans to and service mortgage loans for Fannie Mae or Freddie Mac, and no event has occurred,

15

including but not limited to a change in insurance coverage, which would make the Seller unable to comply with Fannie Mae or Freddie Mac eligibility requirements or which would require notification to either Fannie Mae or Freddie Mac.")

37. LBHI (as, among other things, LBB's assignee) relied upon the representations and warranties contained in the Flow LPAs in purchasing the Defective Loans.

38. Defendants agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorneys' fees. For example, Section 9 of the HSBC Flow LPA, entitled "Indemnification," provides as follows:

> The Seller agrees to indemnify the Purchaser and hold it harmless from and against any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that the Purchaser reasonably sustains arising out of or in connection with (i) any act or omission on the part any person or entity in the origination, processing, funding, servicing or the transfer of servicing of any Mortgage Loan prior to the related Transfer Date and (ii) the failure of the Seller to perform its duties and service and administer the Mortgage Loans in compliance with the terms of this Agreement.

39. Similar indemnification provisions are contained in the other Flow LPAs and are identified in Exhibit C.

**E.     LBHI's Settlement With Fannie Mae and Freddie Mac**

40. Fannie Mae and Freddie Mac discovered breaches of representations, warranties and/or covenants in the Defective Loans that were co-extensive with the representations, warranties, and covenants contained in the Agreements.

41. Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on breaching mortgage loans sold to them by LBHI.

42. LBHI examined Fannie Mae's and Freddie Mac's claims, and determined that the Defective Loans contained various defects which violated the representations, warranties and/or covenants under the Agreements, including but not limited to the representations and warranties that all the information provided in the loan files was true and correct and that the loans met certain origination and underwriting requirements. Thus, Defendants' breaches, acts and omissions resulted in LBHI incurring liability to Fannie Mae and Freddie Mac, which liability was settled.

43. The Bankruptcy Court approved LBHI's settlements with Fannie Mae and Freddie Mac.

**F.      Defendants' Obligation to Indemnify LBHI**

44. Defendants agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans. See Seller's Guide § 711; Broker Agreement § 9; HSBC Flow LPA § 9; Exhibit C.

45. LBHI has demanded that Defendants indemnify LBHI, which demands have been refused by such Defendants.

46. Such Defendants' failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae and Freddie Mac constitute breaches of those Defendants' contractual indemnification obligations.

47. Pursuant to the Agreements, upon information and belief, the laws of the State of New York govern this action.

48. All conditions precedent to bringing this action have been met, occurred or have been waived.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

49. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

50. A substantial and actual controversy exists between LBHI and Defendants as to when LBHI's contractual indemnification claim accrued.

51. A declaration of the rights and remedies of the parties under the Agreements is required to clarify and settle the legal issues involved and, in particular, to confirm that LBHI's indemnification claim against Defendants are timely.

52. Resolution of these issues will provide certainty to the parties to this adversary proceeding.

53. Pursuant to 28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001, this Court should issue judgment declaring that the court approved settlements between LBHI and Fannie Mae on or about January 31, 2014 and between LBHI and Freddie Mac on or about February 19, 2014 gave rise to LBHI's contractual indemnification claims under the Agreements.

## SECOND CLAIM FOR RELIEF
### (Contractual Indemnification)

54. LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

55. The Agreements are valid and enforceable contracts that are binding upon Defendants.

56. LBHI has substantially performed all of its obligations under the Agreements.

57. Defendants owe LBHI indemnity for its liabilities, losses, claims, judgments and any other costs, fees and expenses as to the Defective Loans.

58. Defendants breached the Agreements by failing to indemnify LBHI for its liabilities, losses, claims, judgments and any other costs, fees and expenses as to the Defective Loans.

59. Defendants' breaches of the Agreements as to the Defective Loans resulted in LBHI incurring liability and/or losses to third parties in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs, and all other fees and costs provided by the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant Defendants as follows:

a) A declaration that the Court approved settlements between LBHI and Fannie Mae and Freddie Mac gave rise to LBHI's contractual indemnification claims under the Agreements.

b) For all damages arising from or relating to Defendants' obligations under the indemnification provisions of the Agreements, in an amount to be determined at trial;

c) For recoverable interest;

d) For the costs and expenses incurred by LBHI in enforcing Defendants' obligations under the Agreement, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

  e)  Providing for such other relief as the Court deems just and proper.

Dated: New York, New York
    February 3, 2016

               /s/ William A. Maher
               William A. Maher
               Paul R. DeFilippo
               James N. Lawlor
               Adam M. Bialek
               Christopher J. Lucht

               WOLLMUTH MAHER & DEUTSCH LLP
               500 Fifth Avenue
               New York, New York 10110
               Telephone: (212) 382-3300
               Facsimile: (212) 382-0050

               Michael A. Rollin
               Maritza Dominguez Braswell
               Lindsay Unruh
               Caleb Durling

               ROLLIN BRASWELL FISHER LLC
               8350 E. Crescent Pkwy., Suite 100
               Greenwood Village, Colorado 80111
               Telephone:(303) 945-7415
               Facsimile: (303) 974-7468

               *Counsel for Lehman Brothers Holdings Inc.*