Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In re:

5

6    LEHMAN BROTHERS HOLDINGS INC.,

7                                    Case No. 08-13555(SCC)

8            Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   In re:

11

12   LEHMAN BROTHERS INC.           Adv. Case No. 08-01420(SCC)

13   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14

15                    U.S. Bankruptcy Court

16                    One Bowling Green

17                    New York, New York

18

19                    March 5, 2015

20                    10:55 AM

21

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1   Hearing re:  Adv. 08-01420 - Doc #9529 Two Hundred Fifty-

2   Fifth Omnibus Objection to General Creditor Claims re: Claim

3   of TTSD Trust U/A/D 6/7/07 (Claim No. 9001006)

4

5   Hearing re:  Doc# 19399 One Hundred Seventy-Third Omnibus

6   Objection to Claims (No Liability Employee Claims)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorney for Lehman Brothers Holdings Inc.

4         1300 Eye Street NW

5         Suite 900

6         Washington, DC 20005-3314

7

8    BY:  RALPH I. MILLER, ESQ.

9

10   WEIL, GOTSHAL & MANGES LLP

11        Attorneys for Lehman Brothers Holdings Inc.

12        767 Fifth Avenue

13        New York, NY 10153-0119

14

15   BY:  ALEXANDER WOOLVERTON, ESQ.

16        GARRETT A. FAIL, ESQ.

17

18   HUGHES HUBBARD & REED LLP

19        Attorney for the SIPA Trustee, Mr. Giddens

20        One Battery Park Plaza

21        New York, NY 10004-1482

22

23   BY:  JAMES B. KOBAK, JR., ESQ.

24

25

Page 4

1    ALSO APPEARING TELEPHONICALLY:

2    MICHAEL J. COLLINS, PRO SE

3    BARBARA DONAHUE, PRO SE

4    DONALD DYBECK, PRO SE

5    RAJ V. IYER

6    MICHAEL G. LINN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2               THE COURT:  Thank you very much for coming out in

3      the snow to be down here today.

4               Let me check to see who we have on the line.  I

5      have Mr. Michael Collins.  Are you there, sir?

6               MR. COLLINS:  Yes.

7               THE COURT:  All right, good afternoon.

8      Ms. Barbara Donahue, are you there, ma'am?

9               MS. DONAHUE:  Yes, ma'am, I'm here.

10              THE COURT:  All right, very good.  Thank you.

11       Mr. Donald Dybeck of Dybeck, are you there, sir?

12              MR. DYBECK:  Yes, Dybeck is the name, yes, I'm

13      here.

14              THE COURT:  All right, very good.  And Mr. Raj

15      Iyer?  Are you there?  Listen only.  Okay.  And Mr. Michael

16      Linn from Farallon Capital Management on listen only.

17              Is anyone else on the line on a live wire who

18      wishes to note their appearance?

19              Okay.  Ready when you are.

20              MR. KOBAK:  Good morning, Your Honor, James Kobak,

21      Hughes Hubbard & Reed, on the only matter on LBI calendar

22      this morning is the sufficiency hearing with respect to the

23      claim of TTSD Trust, and I believe Ms. Donahue as you know

24      that is on the phone.

25              THE COURT:  Okay.

Page 6

1              MR. KOBAK:  I'll try to keep this brief.

2              This is a claim based on an account that was

3    opened with Neuberger Berman in June of 2007, I think it

4    originally contained a million dollars, and the claim is for

5    approximately $200,000, which I think is for money that was

6    removed from the account because of a garnishment, although

7    it's a little unclear from the papers.

8              But in any event, every document and piece of

9    information submitted by the claimant shows that this was

10   always a Neuberger Berman account, Neuberger Berman was a

11   wholly-owned subsidiary of LBHI, not LBI, and was a sister

12   company of LBI.  LBI cleared for it, but Neuberger had the

13   account relationship with the customer.

14             The claimant has made various claims at different

15   stages.  One was that the account was wrongfully transferred

16   without her permission.

17             As the Court is aware, as part of this proceeding,

18   the clearing relationship that LBI had had with Neuberger

19   Berman was transferred to Ridge Clearing, that was approved

20   by the Court's order approving all the account transfers and

21   related agreements in December of 2009, and the Neuberger

22   Berman agreement is specifically referred to on the top of

23   page 3 of that order, and that's ECF number 2338.

24             And in addition to that, as the order recites,

25   SIPA provides that accounts can be transferred without the

Page 7

1    consent of the customer, that's Section 78fff-2f of SIPA.

2    So the transfer can't be the basis for a claim.

3         The claims that funds were removed because of a

4    garnishment, I believe that happened after the filing date

5    and after the clearing obligations were transferred to Ridge

6    pursuant to the Court order, so that can't be a basis for a

7    claim here.

8         In any event --

9         THE COURT:  What was the date again of the

10   transfer to Ridge?

11        MR. KOBAK:  September 22nd, 2008.

12        THE COURT:  Thank you.

13        MR. KOBAK:  And I believe the garnishment took

14   place in October of 2008 according to an opinion that we

15   cited of the California state courts.

16        In any event, it would be a claim against

17   Neuberger if there was a claim.

18        And I'll also note that the garnishment order was

19   upheld by an appellate court in California.

20        There were allegations made by the claimant for

21   the first time after our objection in August of 2014 that

22   back in 2007 she faxed instructions, apparently it doesn't

23   make much sense to me, but the day after the account was

24   opened to remove the court -- remove the account to New York

25   from California, whatever that means.  Even if that's true

Page 8

1   it would be a failure to act by Neuberger Berman, not by

2   LBI.  I don't think LBI would have accepted that account any

3   way because all these accounts were maintained in the so-

4   called Pam account range.

5           But in any event, not only is that not something

6   that LBI would be responsible for, but there's really no

7   allegation of any causation or damages resulting from that.

8           And finally at various times there are allegations

9   of general mismanagement and fraud by Lehman Brothers,

10  including the repo 105 transaction and some references to

11  Mr. Fall, but there's no allegation of any causal connection

12  between any of those vague allegations and damage to the

13  Neuberger Berman account.  And in addition these were

14  actions of LBHI, not LBI.

15          So in sum, from anything that we've been able to

16  divine from any of the statements that have been made at any

17  time we don't see any basis on which LBI or the estate could

18  possibly have a liability.

19          THE COURT:  All right.  Thank you very much.

20          Ms. Donahue?

21          MS. DONAHUE:  Yes, ma'am.

22          THE COURT:  Do you wish to be heard?

23          MS. DONAHUE:  Yes, please.

24          THE COURT:  Okay, I'm all ears.

25          MS. DONAHUE:  Thank you.

Page 9

1            Well first and foremost I want to thank Your Honor

2    very much for allowing to continue to today, which allowed

3    me to go to my son's promotion ceremony.  Two weeks ago that

4    really, really kind of the Court.

5            THE COURT:  Certainly.

6            MS. DONAHUE:  And I'm very, very grateful for

7    that.

8            THE COURT:  We wish him the very best.

9            MS. DONAHUE:  Thank you so much.  Very, very kind.

10           So yes, to address all of those points raised, and

11   again, I do apologize if (indiscernible) should be as pro se

12   I'll just have to kind of get through it.

13           They're alleging, as I understand, that there's no

14   legal or factual basis.  That's the first thing.

15           They're also asserting a claim that I'm seeking to

16   recover assets which were not held at LBI.

17           They're also -- I'm sorry.

18           THE COURT:  I'm sorry, if you could just speak a

19   little bit more slowly so I can hear everything.

20           MS. DONAHUE:  Oh, I'm certainly sorry.

21           As I understand it, Your Honor, there's four kind

22   of claims that they're making.

23           The first would be that there's no legal or

24   factual basis to allow for the claim against LBI.

25           The second would be that I'm trying to recover an

Page 10

1   asset that which was held in an account which was not LBI.

2          The third, as I understand it, is that LBI just

3   provided clearing services.

4          And if fourth as I understand it is that I'm

5   alleging wrong doing not against LBI.

6          Now to address those points and also what was just

7   raised in arguments just now, that couldn't be further from

8   the truth.

9          We opened the account, this is correct, in 2007

10  with Neuberger Berman, which is a wholly-owned subsidiary

11  entity of Lehman Brothers Inc.  At that point in time I was

12  living in California --

13          THE COURT:  Ms. Donahue, I'm going to interrupt

14  you just as I would if you were in the courtroom.

15          MS. DONAHUE:  Yes.

16          THE COURT:  That first statement is not correct.

17  Neuberger Berman was a wholly-owned subsidiary of Lehman

18  Brothers Holding (sic) Inc., that's a different entity from

19  LBI, from --

20          MS. DONAHUE:  Right.

21          THE COURT:  -- Lehman Brothers Inc.  It's a very

22  important distinction.

23          MS. DONAHUE:  Right.  Okay.  Yes, Your Honor.

24          THE COURT:  Okay?

25          MS. DONAHUE:  Okay.  So -- but what we did at that

Page 11

1   point I was moving back to New York, which is why I wanted

2   the transfer to happen from California.  We then -- it's

3   very, very specific in the agreements that we signed that

4   says it has to be in writing if we wanted to do any kind of

5   transfer, it's on the Neuberger Berman discretionary

6   investment advisory agreement page 1, item 1, it says

7   instructions about the account must be in writing.  So we

8   did just that.

9          THE COURT:  Okay.  I'm going to stop you again.

10  So let's try to --

11         MS. DONAHUE:  Okay.

12         THE COURT:  -- what I'm going to do is try to find

13  points of agreement.  And the first one appears to be that

14  you agree that this was a Neuberger Berman account, correct?

15         MS. DONAHUE:  It was opened as a Neuberger Berman

16  account, yes, ma'am.

17         THE COURT:  It was always a Neuberger Berman

18  account.

19         So when we take that very important predicate fact

20  and then take the next step, which is that with respect to

21  the activity in the Neuberger Berman account LBI, Lehman

22  Brothers Inc., was the clearing broker.  Agree?

23         MS. DONAHUE:  Well on that day at that point in

24  time but not thereafter, yes, ma'am.

25         THE COURT:  Well you heard Mr. Kobak describe when

1    the clearing function was transferred.

2            MS. DONAHUE:  Well, I did, and I guess jumping

3    ahead if I may, one of the biggest points is that when we

4    were refunded our money from this account it came from a

5    Bank of New York Mellon account which was wholly-owned by

6    Lehman Brothers Inc., not Lehman Brothers Holding (sic) Inc.

7            THE COURT:  What's your -- what is your basis for

8    that statement?

9            MS. DONAHUE:  The printout sheet I got, which I

10   furnished to the Court and furnished to the other side,

11   showing the Bank of New York Mellon account and the account

12   number, which we had traced right to Lehman Brothers Inc.,

13   not to Lehman Brothers Holding (sic) Inc.

14           THE COURT:  So you're asserting that Lehman

15   Brothers Inc. owned Mellon Bank?

16           MS. DONAHUE:  No, ma'am, they had an account at

17   Mellon Bank, and from that account that was the check that

18   was issued to me for my funds.  It went directly to

19   California Bank & Trust, and we traced it back that way.

20           THE COURT:  If you give me a minute I'm trying to

21   look at what you're talking about.

22           MS. DONAHUE:  Thank you, ma'am.  It was in the

23   papers submitted February 23rd.

24           THE COURT:  Right.  The -- are you talking about

25   checks that were drawn by Mr. Nahien (ph)?

1          MS. DONAHUE:  No, ma'am, I'm -- we closed the

2     account and in refunding the money to us from closing the

3     account that's where it came from, Bank of New York Mellon

4     under account -- under an account for Lehman Brothers Inc.

5          THE COURT:  Just give me a moment, I'm trying very

6     hard to understand what you're telling me, and I'm just not

7     seeing it.  So, I'm just looking back through all the

8     documents you submitted to see if I can figure out what

9     you're saying.

10          MS. DONAHUE:  Thank you, ma'am.  It was attached

11     to the request for judicial notice.  I sent it

12     February 17th, Mr. White kindly logged it in on

13     February 23rd.

14          THE COURT:  Okay.  Hold on just one second, let me

15     try to find it.  Are you talking about --

16          MS. DONAHUE:  Thank you.

17          THE COURT:  -- a wire transfer sheet?

18          MS. DONAHUE:  Yes.  Yes, at the very bottom it

19     says four-wires report-page 1/2.

20          THE COURT:  Okay.  So the -- it was a wire into

21     the trust account, correct?

22          MS. DONAHUE:  Correct, yes, ma'am.

23          THE COURT:  Of $780,384.29, right?

24          MS. DONAHUE:  Exactly correct.

25          THE COURT:  Okay.  And that's, as you said,

Page 14

1    attached to your request for judicial notice dated

2    February 17th, 2015.

3              MS. DONAHUE:  Yes, ma'am.

4              THE COURT:  And then three quarters of the way

5    down the page at the bottom there's something that says OGB,

6    maybe perhaps that's originating bank, I don't know, and

7    there's a number --

8              MS. DONAHUE:  Yes.

9              THE COURT:  -- 8661169975, and then written in

10   pencil, I don't know whose handwriting it is, that says Bank

11   of New York Mellon account.

12             MS. DONAHUE:  Exactly correct, yes, ma'am.

13             THE COURT:  Okay.  And you're telling me that the

14   meaning of that is what?

15             MS. DONAHUE:  That that is a Lehman Brothers Inc.

16   account, not a Lehman Brothers Holding (sic) Inc. account.

17             THE COURT:  All right.  Let's take a pause for a

18   moment on that and let me ask Mr. Kobak what he thinks about

19   that.

20             And I just want to remind you, Ms. Donahue, what

21   we're trying to do here today.  This is under the rubric of

22   the Lehman cases what we call a sufficiency hearing.  I'm

23   supposed to try to determine whether or not your claim kind

24   of gets out of the starting gate, whether there's enough

25   here, even assuming everything that you say is true for

1     there to be the basis of a claim.  I'm not here today to

2     resolve factual differences.  So that's why I'm asking

3     Mr. Kobak what he thinks about this and whether or not it

4     makes a difference in terms of Lehman's -- LBI's view of the

5     sufficiency of your claim.

6              So, Mr. Kobak, do you have the --

7              MR. KOBAK:  I do have it.

8              THE COURT:  -- spot that we're looking at?

9              MR. KOBAK:  I do have it in front of me, Your

10    Honor.

11             THE COURT:  All right.

12             MR. KOBAK:  And the date of this transaction, as

13    the document shows, is October 8th, 2008, which is well

14    after, at least a week or ten days, after the account

15    transfer took place.  So there's no way that these funds

16    could have come --

17             THE COURT:  The account --

18             MR. KOBAK:  -- from us.

19             THE COURT:  -- transfer took place from -- to --

20             MR. KOBAK:  To Ridge.  I'm sorry, the transfer of

21    the clearing agreements took place.  So the relationship

22    after this the money would have come -- would have had to

23    come through Ridge, it couldn't have come from us.

24             THE COURT:  Well -- okay.

25             See the problem I have, Ms. Donahue, is that

Page 16

```
 1    you're telling me that this is a Bank of New York Mellon

 2    account that was owned by LBI, and I have no way of -- I'm

 3    not intending to impugn your honesty -- but I have no way of

 4    knowing whether or not that's true.  That's an issue that

 5    would have to be proven with actual evidence.

 6              MR. KOBAK:  Your Honor, if I may.

 7              MS. DONAHUE:  Right.  And --

 8              THE COURT:  Hold on, Mr. Kobak just --

 9              MR. KOBAK:  I have one other point --

10              THE COURT:  -- wanted to say one more thing.

11              MR. KOBAK:  -- which is, it seems to me the money

12    would have come from the clearing broker any way because

13    that's one of the functions that they serve.

14              So the fact that -- even if it had come from LBI

15    it wouldn't show that the relationship was anything other

16    than a Neuberger Berman relationship.

17              THE COURT:  Right.  So in other words what you're

18    saying is that in the event, for whatever reason, the

19    accounts hadn't transferred the clearing broker, be it Ridge

20    or LBI, would have cleared the trades and then transferred

21    the funds.

22              MR. KOBAK:  Yeah, exactly, Your Honor.

23              THE COURT:  Okay.  The problem --

24              MS. DONAHUE:  If I may, Your Honor?

25              THE COURT:  The problem --
```

Page 17

1            MS. DONAHUE:  If I may, Your Honor?

2            THE COURT:  The problem, Ms. Donahue, is that you

3    haven't given me any pieces of paper that show that there's

4    a relationship between the trust and any Lehman entity.

5            MS. DONAHUE:  Well, Your Honor, if I may, I

6    furnished -- in my exhibits I furnished all the consolidated

7    1099's, and on every 1099 it says Lehman Brothers Inc., it

8    does not mention anything about any holding company.  The

9    address listed on Hudson Street is an address for Lehman

10   Brothers Inc., not a holding company.  The taxpayer, the

11   federal ID number is a Lehman Brothers Inc. tax ID number,

12   it's not a holding entity tax ID number, it's not a

13   Neuberger Berman one, it is a --

14           THE COURT:  Where -- slow down, please.  Where are

15   these 1099's?

16           MS. DONAHUE:  They were submitted as exhibits,

17   Your Honor, in my original opposition, which was submitted

18   -- let me look, I think it was back in September.  Yes,

19   ma'am, they -- it was submitted -- I'll give you a exact

20   date, August 11th, 2014.

21           THE COURT:  Okay.

22           MS. DONAHUE:  They are the exhibits that were

23   attached to that, and they're all the 1099's.

24           THE COURT:  Okay.  Let me get there.  Let me try

25   to get there.

Page 18

1              MS. DONAHUE:  Thank you.  Thank you.

2              THE COURT:  All right.  I see the Neuberger Berman

3    discretionary advisory account agreement.

4              MS. DONAHUE:  This I believe was Exhibit 5, ma'am.

5              THE COURT:  Okay.  And then Exhibit 4 is a

6    Neuberger Berman client statement.  Okay.  Exhibit -- I

7    think Exhibit 5, is that the one that --

8              MS. DONAHUE:  Yes, ma'am.

9              THE COURT:  -- I should be looking at?

10             MS. DONAHUE:  I believe so, ma'am, at the very top

11   it says 2007 consolidated form 1099.

12             THE COURT:  I'm looking at it.  Unfortunately the

13   -- at the upper right it says payer and I can't read what I

14   says.

15             MS. DONAHUE:  Upper right should say --

16             THE COURT:  I'm sorry, upper left.

17             MS. DONAHUE:  Oh, okay, thank you.  Yes, it says

18   payer and underneath it Lehman Brothers Inc., 70 Hudson

19   Street, 7th Floor --

20             THE COURT:  Okay.

21             MS. DONAHUE:  Jersey City, New Jersey.

22             THE COURT:  I have it.

23             MS. DONAHUE:  As you see, Your Honor, that goes

24   right to the TTSD Trust, so that shows you who the recipient

25   was, it's a 1099.  The federal ID number there on the --

Page 19

 1                THE COURT:  Okay.

 2                MS. DONAHUE:  -- left-hand side --

 3                THE COURT:  Okay.  I'm with you now.

 4                MS. DONAHUE:  Okay.

 5                THE COURT:  And you're saying that this is

 6    evidence that Lehman Brothers Inc. owned your account?

 7                MS. DONAHUE:  Yes, ma'am because the federal ID

 8    number relates to Lehman Brothers Inc., that's not a --

 9                THE COURT:  Okay.  But even if the federal ID

10    number relates to Lehman Brothers Inc. let me give you an

11    example.  If you maintain accounts, I'll pick another

12    broker, let's say I'll try to pick someone that everyone has

13    heard of, say Charles Schwab, right?

14                MS. DONAHUE:  Uh-huh.

15                THE COURT:  So Charles Schwab at the end of the

16    year when it's tax time you might have your money at Charles

17    Schwab and Charles Schwab might -- you might have that money

18    in various accounts, fidelity accounts or other types of

19    investment accounts, and Charles Schwab is sending you the

20    information about what dividends have been paid to you

21    through them based on the investments in those accounts.

22    That doesn't mean that Charles Schwab owns those accounts.

23                So this piece of paper indicates that LBI, Lehman

24    Brothers Inc., was the payer of what looks like interest

25    income and dividends, but that does not establish that LBI

Page 20

1     -- that you had an account with LBI.  This document is

2     consistent with LBI acting as the clearing broker for the

3     underlying Neuberger Berman account prior to the time that

4     the clearing function was transferred to Ridge.

5          Your -- the documents that you've submitted

6     establishing the account are -- it's a Neuberger Berman

7     account.  You haven't given me any documents that establish

8     that there is an account other than the Neuberger Berman

9     account in the name of TTSD Trust.

10         MS. DONAHUE:  Well, Your Honor, the thing that I

11    don't understand about that then is then why give a Lehman

12    Brothers tax ID number, why wouldn't it be a Neuberger

13    Berman tax ID number, and why did they change our account

14    number?  The account that was opened with Neuberger Berman

15    is not the same account number that's on that actual

16    statement that you're looking at.  Our original account

17    number began with 537, that account number is 555.  In the

18    transfer to Lehman Brothers they changed our account number.

19    We also verified --

20         THE COURT:  Ms. Donahue, after that did you get

21    account statements from LBI?

22         MS. DONAHUE:  We got -- for the longest time ever

23    we got no account statements at all, we just got these --

24    this 1099 at the end of every year.  And as I say, my

25    attorney at the time, Mr. Nahien, confirmed all this.  I

Page 21

1    mean we -- when we dialed the number that we were given,

2    that 877 number, they answered the phone Lehman Brothers,

3    they don't answer the phone Lehman Brothers Holding (sic),

4    they don't answer the phone Neuberger Berman.  We did our

5    due diligence to make sure this transfer happened as we had

6    specified.

7          THE COURT:  Mr. Kobak?

8          MR. KOBAK:  I think that the prefixes that she's

9    referring to really what they reflect is a different prefix

10   from LBI's clearing account to the Ridge clearing account,

11   and it took place after the account transfers.

12         THE COURT:  What's your response to the suggestion

13   that this document demonstrates that LBI owned the accounts

14   because it was paying dividends?

15         MR. KOBAK:  Well it would be paying the dividends,

16   it doesn't mean that the account relationship wasn't with

17   Neuberger Berman.  The document before that, which is

18   Exhibit 4, is an account statement, and it shows clearly

19   that it's a Neuberger Berman account, also indicating that

20   LBI was the clearing broker at that time.

21         THE COURT:  All right.  Ms. Donahue, there's a

22   document in your submissions called capital gain schedule.

23         MS. DONAHUE:  Yes, ma'am.  But I would also --

24         THE COURT:  Hold on, Ms. Donahue.  There's a

25   document that's attached to the trustee's papers that's a --

Page 22

1    it's a landscape printing, you know, sideways, and it's

2    called capital gain schedule.  Do you know which document

3    I'm talking about?

4            MS. DONAHUE:  Yes, ma'am.

5            THE COURT:  It's Exhibit 3 to the declaration of

6    Mr. Havalic.  Do you have that?

7            MS. DONAHUE:  Yes, ma'am.

8            THE COURT:  Okay.  So that says capital gain

9    schedule, and the dates are from January 1st, 2008 to

10   December 31st, 2008.  Do you see that?

11           MS. DONAHUE:  Yes, ma'am.

12           THE COURT:  Right.  And that is -- and it says

13   under portfolio number, it's blocked out, and then in

14   parentheses it says "Ridge number," right?  So this is your

15   account activity, right?

16           MS. DONAHUE:  Well, you know, and in fact we're

17   not certain of that.  I looked at that document and I don't

18   know that, because the one document I have from Ridge

19   Clearing is not that document, it's a check, and it's

20   completely different, and it's a check for $11.47.

21           THE COURT:  Well --

22           MS. DONAHUE:  So we -- we aren't able to verify

23   that document.

24           THE COURT:  But this document came from your

25   attorney, it came from Mr. Nahien, he sent it in to the

Page 23

```
 1    trustee.
 2              MS. DONAHUE:  Right, and he unfortunately has --
 3    is deceased, and I can't access his files, so I --
 4              THE COURT:  Well, but you -- we have the document
 5    and he sent it to the trustee, and on its face it's a client
 6    statement from Neuberger Berman and it covers the periods of
 7    2008 and 2009.
 8              MS. DONAHUE:  Right, Your Honor, I'm not -- again,
 9    I'm not disagreeing with that, it says Ridge Clearing and
10    Outsourcing Solutions, I have other documents that say that
11    on there, but that -- and in fact one check that I have came
12    from Bank of America, I mean it's not --
13              THE COURT:  Okay.  Let's try to stay with this
14    issue.  A document --
15              MS. DONAHUE:  We --
16              THE COURT:  -- that your attorney submitted to
17    Mr. Giddens in May of 2009 in support of your claim in this
18    case is an extensive capital gain schedule and Neuberger
19    Berman account statement, and it lists an extensive
20    portfolio of securities and the capital gains there from,
21    and I have to accept that as being in fact what it appears
22    to be, unless what you're going to -- unless what you're
23    telling me is that somehow it's not.
24              MS. DONAHUE:  Well, I think what I'm saying, Your
25    Honor, is that document and all the client statements,
```

Page 24

1    everything that we got say on there a Lehman Brothers

2    company.

3            THE COURT:  Okay.  Well let -- if that is -- if

4    that's the crux of what your contention is I will agree with

5    you that in a lot of instances there was letterhead and

6    there was other promotional type materials that for better

7    or worse used the shorthand Lehman or Lehman Brothers.  But

8    early on in this case my predecessor, Judge Peck, who

9    presided over this case from the time it was filed until a

10   year ago, held on numerous occasions that there was no basis

11   to ignore the distinctions between and among the various

12   Lehman entities.  Most importantly I would say between LBI,

13   which was a broker/dealer and was only permitted to engage

14   in certain activities on the one hand, and Lehman Brothers

15   Holding (sic) Inc., which was the parent company and the

16   holding company of a whole slew of other subsidiary

17   companies, all of which have been dealt with separately.

18           So the mere fact that there's correspondence that

19   says Neuberger Berman is a Lehman Brothers company that's

20   actually quite accurate.  LBHI owned Neuberger Berman but

21   sold Neuberger Berman.  And just as was the case with

22   respect to the big sale of Lehman that everyone read about

23   in the paper, which is to say the sale of Barclays, all of

24   those accounts got transferred to Barclays, the Neuberger

25   Berman accounts are Neuberger Berman accounts when the

Page 25

```
1    clearing function was transferred after LBI was placed in a

2    SIPA proceeding the clearing function was transferred and in

3    no instance were any of the account holders entitled to any

4    notice, and there's a good reason for that, and that's

5    because it recognizes the ministerial nature of the function

6    of LBI in those situations, and everything was done after

7    the filing dates under the oversight of this court and under

8    the oversight of SIPA with respect to LBI.

9              So, I'm -- it's my job today to give you the

10   benefit of every doubt, but I still have not heard anything

11   that enables me to identify any basis on which LBI or any

12   other Lehman entity would have responsibility for what

13   occurred with respect to your Neuberger Berman account.

14             As far as I can tell you seem to be complaining

15   about funds that were taken out of the account pursuant to

16   the -- a California garnishment, and --

17             MS. DONAHUE:  No, ma'am, that's actually related

18   to a different account.

19             THE COURT:  What is your theory or your thesis of

20   where the $200,000 went from your Neuberger Berman account,

21   the account that you believe is an LBI account?

22             MS. DONAHUE:  Well, I think, Your Honor, I think

23   it's -- and I appreciate your comments first and foremost --

24   I think it's kind of a twofold issue here.

25             I think that they're assuming, and they being, you
```

Page 26

1   know, Lehman Brothers, Neuberger Berman, they're assuming

2   more knowledge on the part of their investors than should be

3   reasonably acceptable, perhaps it's almost a decisive or a

4   God faith situation.

5          When I, you know, open an account and I then ask

6   to have the account moved and I put it in writing as I'm

7   told to do and I follow up and I call phone numbers and

8   people answer Lehman Brothers and I get account statements

9   -- pardon me -- 1099's that say only Lehman Brother on then,

10  not holding, not Ridge, not anything, when I go to the next

11  step of checking the federal ID number and I find that the

12  federal ID number relates only to Lehman Brothers Inc., not

13  to holding, not to anyone else, when I see that my account

14  number has been changed, when I check it with Epiq

15  Solutions, I felt that I did way more than due diligence to

16  make sure that they had followed my instructions and that my

17  account --

18          THE COURT:  Ms. Donahue, I'm so sorry, but I'm

19  going to take you back to the basics here, which is that the

20  trust, TTSD Trust, executed an account agreement with

21  Neuberger Berman, correct?

22          MS. DONAHUE:  I'm sorry, I didn't quite hear.

23          THE COURT:  The trust account is -- was between

24  the TTSD Trust and Neuberger Berman, correct?

25          MS. DONAHUE:  Initially, correct.

1        THE COURT:  Okay.  Did it -- in your view when did

2   it cease to be a Neuberger Berman account?

3        MS. DONAHUE:  Within the week of opening the

4   account itself.

5        THE COURT:  And what's your basis of that view

6   that it ceased to be a Neuberger Berman account?

7        MS. DONAHUE:  Thank you, Your Honor, because we

8   opened it on June 14th, 2007 and on June 15th, 2007, as per

9   the discretionary investment advisory agreement, we notified

10  them in writing to transfer the account to Lehman Brothers.

11       THE COURT:  I'm sorry, could you --

12       MS. DONAHUE:  And then once --

13       THE COURT:  -- say that again?  On --

14       MS. DONAHUE:  Yes, ma'am.  We opened the account

15  on June 14th, 2007 with Neuberger Berman, we immediately,

16  per their discretionary investment advisory agreement, put

17  in writing our instructions to transfer the account to their

18  parent company, Lehman Brothers, and then on the 22nd

19  Mr. Nahien followed up on that to confirm that that had been

20  done.

21       THE COURT:  Is there a -- so why is it that you

22  opened the account at Neuberger Berman and then a week later

23  wanted it transferred to Lehman Brothers?

24       MS. DONAHUE:  Because at the time I was located in

25  Los Angeles, Your Honor, and I was --

Page 28

1           THE COURT:  Because why?

2           MS. DONAHUE:  I was living in Los Angeles, which

3   is where Neuberger Berman is, and I was being transferred

4   back to New York, which is really where I'm from, and so I

5   wanted the account to be with Lehman Brothers, because not

6   only am I from New York, that's where Lehman Brothers' head

7   office is, and I actually at that point lived in Greenwich,

8   Connecticut --

9           THE COURT:  Ms. Donahue, I'm just -- if you could

10  see me I'm scratching my head, because Neuberger Berman has

11  always been in New York, so I'm now -- I'm getting even more

12  confused --

13          MS. DONAHUE:  No, Lehman Brothers --

14          THE COURT:  -- and I'm looking at your customer

15  claim form, which is Exhibit I to the Havalic declaration,,

16  and under basis for claim -- on that customer claim form it

17  states that LBI owes the trust $203,161.40, and it says

18  basis for claim, "Funds taken illegally from this account

19  without permission, account was based in New York, funds

20  were taken out in California."  So that's the basis of your

21  claim, the bar dates have all come and gone.  What does that

22  statement mean, account was based in New York, funds were

23  taken out in California?

24          MS. DONAHUE:  We asked to have the account

25  transferred to New York in the course of --

Page 29

1          THE COURT:  The account was always in New York and

2   you in your proof of claim state that the account was based

3   in New York.  Neuberger Berman was always and still is in

4   New York in terms of the physical edifice in which people go

5   to work, but as you know nowadays, you know, there's not

6   money and paper stock certificates in a vault somewhere,

7   everything is electronic.  So by your own account the

8   Neuberger Berman account was based in New York.

9          I can, based on previous proceedings in this

10  court, indeed I can take judicial notice of the fact that

11  Neuberger Berman during all relevant times was always in New

12  York.

13         So let's move on to the funds were taken out in

14  California.  What does that statement mean?

15         MS. DONAHUE:  Well, Your Honor, I'm just a little

16  confused because Neuberger Berman was in Los Angeles and I

17  went into their offices in Los Angeles to open this account.

18  So when my funds were transferred to LBI in New York it came

19  up missing, this $200,000, and when we were -- had the money

20  returned to us, which is the statement -- the bank transfer

21  statement you can see right there it was short $200,000.

22  But I went into the Neuberger Berman offices in Los Angeles,

23  not in New York to open this account.

24         THE COURT:  Well let me keep going here.  Attached

25  to your proof of claim is a document to George Walker and

                                                              Page 30

1      Joseph Amado (ph).  "Gentlemen, please be advised that I

2      will be filing a multi-million dollar lawsuit on behalf of

3      my two children against Neuberger Berman."  And you go on to

4      recite that you're suing a number of other individuals and

5      law firms, et cetera, and then you go on to say:

6           "Mr. Warneck (ph) responded incorrectly to a

7      garnishment.  This fact was pointed out to him by my lawyer,

8      Melvin Nahien, and even though he promised in a telephone

9      call on speakerphone in front of witnesses that he would

10     amend his response he never did.  The correct response would

11     have shown this account not to be subject to the garnishment

12     in question," and so forth and so on.

13          So -- and then you go on to say, "That while all

14     of this was going on Neuberger Berman purchased a $250,000

15     bond with my children's funds."  It's a carbon copy to the

16     managing director's of Hellman & Friedman and the managing

17     directors of Bain Capital, and there's a handwritten PS that

18     says:

19          "Additionally this account was maintained in New

20     York and funds were released in California without a sister

21     state motion judgment ever being filed, which is an SEC

22     violation."

23          So those allegations seem to me to be consistent

24     with an earlier version, if you will, of your claim that

25     what you're really complaining about is a wrongful

Page 31

```
 1    garnishment of that account which occurred on Neuberger

 2    Berman's watch by your own words.  Your words on this piece

 3    of paper submitted as a document under the Bankruptcy Code

 4    and SIPA in this court outline allegations only about

 5    Neuberger Berman and a wrongful taking out of funds in

 6    California, which foots with the narrative of the wrongful

 7    garnishment.

 8               So if your claim is now something else that

 9    doesn't relate to this it is out of time.  The bar dates

10    have long passed and it's not permissible to come up with

11    wholly new claims.  So that's among the many things I'm

12    struggling with here today, that's what I'm struggling with.

13               So, I need you to tell me once again or I'm going

14    to have to move on, because I do have a number of others

15    waiting to be heard today, what it is that you're telling me

16    is in fact your claim.  Because the -- it was an LBI account

17    and LBI stole my money claim is not what's on your customer

18    claim form.  And remember, the customer claim notion earlier

19    was also resolved that there was no customer claim here,

20    this entire dispute is over whether or not you have a -- the

21    trust has an unsecured claim.

22               So, I know I've been speaking for a long time, but

23    I'm going to ask you once more to tell me again what you

24    believe your claim is.

25               MS. DONAHUE:  Well, thank you, Your Honor.
```

1          Our entire contention is that even though the

2     account was opened in Neuberger Berman it was only opened

3     there because they were the entity in Los Angeles.  We

4     immediately, per their instructions, notified them that we

5     wanted our account to go to Lehman Brothers Inc.  That's my

6     whole contention right there.  We did not want a Neuberger

7     Berman account, we wanted a Lehman Brothers account, we

8     followed their instructions that it should be transferred to

9     Lehman Brothers, we followed --

10          THE COURT:  So subsequent -- but subsequent to

11     that time, if I accept that as true, which I will emphasize

12     again, forms no part of what the documentation of your claim

13     was and is entirely inconsistent with the documentation of

14     your claim, subsequent to that time the trust received

15     account statements from Neuberger Berman.

16          So you're telling me today that days after going

17     into a Neuberger Berman office in Los Angeles, which I will

18     accept that as true, and signing a discretionary account

19     agreement with Neuberger Berman, you had a change of heart

20     and there were written instructions that said we don't want

21     to do this, we want an LBI account.  I don't --

22          MS. DONAHUE:  Yes, ma'am.

23          THE COURT:  -- I don't see any of that.

24          But then what -- what then happened subsequently

25     was very complete statements from Neuberger Berman were

Page 33

1    issued by Neuberger Berman to the trustee, care of

2    Mr. Nahien, and then nothing else happened in terms of a

3    follow up where anyone said, wait, this is supposed to be an

4    LBI account and it's not.

5          What appears to have happened next, and your

6    letter underscores this, is that there was activity with

7    respect to the Neuberger Berman account, and you then

8    complained about that activity because you believed that the

9    funds were wrongfully withdrawn from the Neuberger Berman

10   account.

11         So it's inconsistent to say that this was an LBI

12   account and on the other hand to be complaining of activity

13   in a Neuberger Berman account.

14         MS. DONAHUE:  I think actually, Your Honor, that's

15   the crux of the issue, because it was to have been an LBI

16   account at that point so there shouldn't have been any

17   Neuberger Berman activity at all.

18         And to go to your point in reference to the

19   statements, yes, they said Neuberger Berman and we did

20   question it with them, but they also say all over them a

21   Lehman Brothers company.  So we --

22         THE COURT:  Yes, and I've already addressed the --

23         MS. DONAHUE:  Yes.

24         THE COURT:  -- the letterhead issue of a Lehman

25   Brothers company, in fact that's not inaccurate, because

Page 34

1    Neuberger Berman was in fact owned by Lehman Brothers

2    Holding (sic) Inc., LBHI, and clearing functions were

3    performed by Lehman Brothers Inc., the broker/dealer,

4    because it was the only Lehman Brothers company that was

5    permitted to clear and close trades.  It was a broker/dealer

6    licensed by the appropriate federal authorities.  LBHI could

7    not do that, LBHI could not hold those securities.

8              So, I'm going to just --

9              MS. DONAHUE:  I --

10             THE COURT:  -- I'm going to go -- I'm going to ask

11   you one more follow-up question though.  Where do you think

12   the $203,000 is that you're asking to be returned to you?

13             MS. DONAHUE:  I don't think we know at this point,

14   and I think that's the whole crux of the issue, Your Honor.

15             Two very quick things.  I understand what you're

16   saying with regards to the names of the document, but we did

17   question it, we were told that that's just the way --

18   exactly what you said kind of -- that's just the way the

19   documents come out with the names on it, not to worry about

20   it, and to someone who's not perhaps a sophisticated

21   investor if you see that name on there I think, okay, it's

22   also Lehman Brothers, just a quick point to that.  So we --

23   again, we believed that this was a Lehman Brothers account,

24   we have believed it since June 15th of 2007.

25             THE COURT:  But you didn't mention that at all in

Page 35

```
 1    your proof of claim, you didn't mention that at all in the

 2    letter indicating that you were going to file a multi-

 3    million dollar suit against various individuals and

 4    Neuberger Berman.  That was never mentioned at that stage.

 5              MS. DONAHUE:  I think it's because -- well we also

 6    sent the letters to Lehman Brothers, it wasn't just

 7    Neuberger Berman, because we were trying to ascertain where

 8    the money was, where the account was, they were completely

 9    not forthcoming with the information.

10              THE COURT:  So tell me --

11              MS. DONAHUE:  My attorney tried for two years.

12              THE COURT:  Tell me about the garnishment.  Where

13    were those funds taken out of?

14              MS. DONAHUE:  Those were taken out of a separate

15    account, Your Honor, and in fact were later returned, and

16    that was where we realized we had a problem because we

17    thought the account was in Lehman Brothers and all of a

18    sudden we're having a problem with Neuberger Berman, and we

19    said why are we even having a problem with you, you don't

20    maintain an account for us?

21              THE COURT:  Are you a trustee --

22              MS. DONAHUE:  And from --

23              THE COURT:  Ms. Donahue, are you a trustee of the

24    TTSD Trust?

25              MS. DONAHUE:  I was at the time, yes.
```

1          THE COURT:  Are you a trustee of the TTSD Trust

2     now?

3          MS. DONAHUE:  I don't -- you know, I'm not -- I

4     don't know, Your Honor.  I mean I was.  There's paperwork on

5     both sides.  I have a document which gives me the right to

6     represent it right now from the current trustees.

7          THE COURT:  From whom?

8          MS. DONAHUE:  From the current trustees.

9          THE COURT:  Well who are -- who is the current

10    trustee?

11          MS. DONAHUE:  Adrian Slaffer (ph).

12          THE COURT:  And what does that document that you

13    have -- what does the document say that you can do?

14          MS. DONAHUE:  Well it gives me the right to follow

15    through on anything with this trust for when I was a

16    trustee.  At this time and during all of this I was a

17    trustee.

18          THE COURT:  Are you a beneficiary of the trust?

19          MS. DONAHUE:  No, ma'am, I'm not.  My children are

20    the beneficiaries.

21          THE COURT:  Okay.  If you would give me a moment,

22    please.

23          MS. DONAHUE:  Sure.

24          THE COURT:  So let me ask, is there anything else

25    that LBI would like to -- that the trustee would like to put

Page 37

1    on the record?

2              MR. KOBAK:  I don't believe so, Your Honor.

3    Again, this was always a Neuberger Berman account.

4              THE COURT:  Okay.  Give me a moment.

5         (Pause)

6              THE COURT:  Ms. Donahue?

7              MS. DONAHUE:  Yes, ma'am.

8              THE COURT:  I've spent a lot of time reviewing

9    everything here, and I've spent also a lot of time reviewing

10   at this point hundreds, if not thousands, of Lehman claims,

11   and I am not seeing a claim here for the reasons that the

12   trustee has stated, and also because during the past hour as

13   I've gone back once again and looked at your materials,

14   there's a substantial departure from what your original

15   claim was stated to be and what your theory is now.  You've

16   eluded to a number of things that I don't believe make a

17   difference as a matter of law.

18             The problem, and the only thing that's causing me

19   to pause, is the fact that you are not represented by

20   counsel, and under those circumstances I believe it's -- I

21   am under an extra obligation to give you every opportunity

22   to attempt to make out your case.

23             I do not think that you have a valid claim, nor do

24   I believe that based on anything that you've submitted and

25   that you've argued in your extensive papers or here today

Page 38

1    would provide the basis for a claim.

2            However, having said that, if you believe you

3    could come to this courtroom, and that would be a

4    requirement, you would come to this courtroom and I would

5    permit you to put on evidence to attempt to establish your

6    claim, I would be willing to do that.

7            MS. DONAHUE:  That is incredibly kind.

8            THE COURT:  I'm sorry, and if you wish to retain

9    counsel in order to do that.

10           But I am telling you that the way things stand now

11   this was a Neuberger Berman account, it always was a

12   Neuberger Berman account, the only relationship with LBI was

13   that LBI at an earlier point in time was the clearing

14   broker, that function was clearly transferred to Ridge

15   pursuant to orders of this court, your consent was not

16   necessary for that transfer to have occurred, and that while

17   now it seems that there are vague, vague suggestions of some

18   kind of mismanagement or something, I have no ability to

19   identify anything you've said as a basis for a claim against

20   LBI or any other Lehman company for that matter.

21           So that's where things stand right now.  It would

22   be -- I believe that a ruling expunging your claim is

23   correct and would be held up by any appellate court to which

24   you might appeal, which is certainly your right, that is

25   certainly your right, and I have to tell you I don't usually

Page 39

```
 1    spend an hour with a claimant on a sufficiency hearing, but
 2    here we are.
 3            So, I'll give you a chance to respond, and if you
 4    would like to take me up on the opportunity, which I'm
 5    reluctant to grant, because remember, this is a collective
 6    proceeding and the more effort and funds that the trustee
 7    has to expend to deal with any particular claim diminishes
 8    the return to other valid claimants.  But be that as it may
 9    the trustee has a job to do, I have a job to do, and I'm
10    going to give you, I would say one more chance, and that
11    would be in the format of coming to this courtroom with or
12    without an attorney for a couple of hours if you would like
13    and put evidence on the record and attempt one last time to
14    convince me that you have a valid claim.
15            MS. DONAHUE:  Well, thank you, Your Honor, I think
16    you've been more than generous with your time and I can't
17    tell you how much I appreciate it, and I would very much
18    like to take you up on that kind offer and try to do just
19    that, perhaps get an attorney and then try to do that.
20            THE COURT:  Okay.  But bear in mind this is not an
21    opportunity to come up with new claims and new theories.
22    We're going to be -- the issue to be tried will be based on
23    the original claim that you submitted and would have to be
24    attempting to demonstrate the things that you've told me
25    here today, such as the significance of the transfer from
```

Page 40

1    Bank of Mellon New York, the concept that you somehow in

2    fact effectuated a transfer from Neuberger Berman to LBI,

3    all of the things that I found there's no evidence of.

4              But what I'm going to do is a transcript of this

5    hearing today will be ordered and will be produced, you can

6    contact the Hughes Hubbard firm and they will help you get a

7    copy, and then we're going to pick a date for you to come

8    and to have your opportunity to present anything more you

9    want in a further hearing, which will be an evidentiary

10   hearing.

11             So let's talk about some proposed dates for that.

12             MS. DONAHUE:  Yes, Your Honor, I appreciate that.

13   Is it something that I could go over the date with Hughes

14   Hubbard, would that be acceptable or --

15             THE COURT:  I --

16             MS. DONAHUE:  Because I am --

17             THE COURT:  I would like to pick a date --

18             MR. KOBAK:  Your Honor, we --

19             THE COURT:  -- because I'd like to move -- I need

20   to -- you've been given for good reason a number of

21   adjournments, and that's fine, but I need to move everything

22   along, because other claimants' claims of distributions are

23   held up when monies are set aside for various claims.  So, I

24   want to pick a date.  So let's do that now.

25             MS. DONAHUE:  Yes, Your Honor.  I would -- I do

Page 41

1    think I am going to probably want to retain an attorney as

2    well, so I think that they may take a little bit of time as

3    well.

4             THE COURT:  Well it's March.

5             MR. KOBAK:  Your Honor, any time in early April

6    would be fine with the trustee, and hopefully the weather

7    will be decent by then.  We would very much want to have the

8    date certain, this has been adjourned many times.

9             We ourselves suggested to the claimant that she

10   retain an attorney, some of the adjournments were supposedly

11   asked for for that purpose.  The estate and our attorneys

12   have spent an inordinate amount of time on this claim, you

13   know, among other things various allegations have been made

14   by Ms. Donahue against me, against Ms. Grag (ph), against

15   many others with all kinds of -- or at least purportedly

16   have been made with all kinds of authority.  So, I think --

17            THE COURT:  All right.  So --

18            MR. KOBAK:  -- for everyone's interest we should

19   get this done --

20            THE COURT:  Sure.

21            MR. KOBAK:  -- once and for all.

22            THE COURT:  For better or worse my April and May

23   is very, very booked, with among other things about a dozen

24   Lehman calendar days.  So, I think the first date that works

25   in terms of my calendar for a block of time would be

Page 42

1    June 17th at 2 o'clock.

2            MR. KOBAK:  That's fine.

3            THE COURT:  And -- so it's March 5th today, that

4    would give -- Ms. Donahue, that would give you three and a

5    half months, we would be solidly into a no snow -- hopefully

6    a no snow period of time, and even if it were to take you a

7    month to six weeks to identify a lawyer, I know it's very

8    important to you, but it is a relatively small universe of

9    documents and facts and time period, and that would give an

10   attorney ample time to come up to speed.

11           MS. DONAHUE:  Oh, yes, Your Honor, absolutely.

12   And I probably don't want to mention that it's 72 degrees

13   here today, but okay, I've said it now.

14           THE COURT:  Okay.  Well we hope you enjoy that.

15   We are -- we're going to keep moving so that folks can try

16   to get home in a blizzard here today.

17           June 17th at 2 o'clock, and I will allocate three

18   hours for the entire presentation of the case, and I will

19   allocate -- I will give you two of those hours and I will

20   give the trustee one hour.  So you will have the lion's

21   share of the time, and after you identify any counsel that

22   you would like to act on your behalf have him or her contact

23   the Hughes Hubbard firm and they can work through the

24   various things that I require in advance of an evidentiary

25   hearing, such as the identification of witnesses, the

Page 43

1    identification of documents, and the like.  All right?

2              Have a wonderful day.  You can disconnect with the

3    line now.

4              MS. DONAHUE:  Thank you, Your Honor.

5              THE COURT:  Thank you.  Okay.

6              MR. DYBECK:  Your Honor, this is Donald Dybeck, I

7    have a special request if you would.

8              THE COURT:  Sure.

9              MR. DYBECK:  I have a dental appointment pretty

10   soon and my case is going to be really short, and if

11   anything it might be entertaining.

12             THE COURT:  All right, we're going to go to that

13   right now.

14             MR. KOBAK:  And can we be excused, Your Honor?

15             MR. DYBECK:  Okay.

16             THE COURT:  Yes, you may.

17             MR. KOBAK:  Thank you.

18             THE COURT:  Thank you.

19             MR. DYBECK:  First of all, I'm a retired broker

20   from Smith Martin --

21             THE COURT:  Hold on just a minute.  Mr. Dybeck, I

22   have to give the attorneys for LBHI a chance to come up as

23   the attorneys for --

24             MR. DYBECK:  Oh, okay.

25             THE COURT:  -- the trustee leave.  So just give me

Page 44

1      -- give us one moment --

2             MR. DYBECK:  Sure.

3             THE COURT:  -- and let me get -- let me see who it

4      is that I'm going to be speaking to from the Weil, Gotshal

5      firm.

6             MR. DYBECK:  Oh, thank you.

7             THE COURT:  I'm guessing it's Mr. Miller.

8             MR. MILLER:  Yes, Your Honor, Ralph Miller from

9      Weil, Gotshal & Manges here on the plan -- on behalf of plan

10     administrator, LBHI, also known as Lehman Brothers Holdings

11     Inc.

12            And, Your Honor, we were going to propose a short

13     summary that pertains to all of these claims, which is quite

14     short, and also report to the Court on contact so we can

15     deal with all these claims.  I understand Mr. Dybeck --

16            THE COURT:  Sure.  Mr. Dybeck, what time is your

17     dentist appointment?

18            MR. DYBECK:  It's at 11 a.m.  I'm on the west

19     coast, and it takes me 20 minutes to get there.

20            THE COURT:  Okay.  So if we conclude here in the

21     next 20 minutes you'll be good to go?

22            MR. DYBECK:  Yeah.  Uh-huh.

23            THE COURT:  All right.  We're going to do that.

24     So let me let Mr. Miller proceed as he would like and then

25     we will give you the first opportunity to respond.

Page 45

1              Go ahead, Mr. Miller.

2              MR. DYBECK:  Thank you, Your Honor.

3              MR. MILLER:  Yes, Your Honor.

4              The plan administrator has a group of objections

5       and omnibus objection 173, that all deal with deferred

6       compensation plans that are the responsibility of LBI,

7       Lehman Brothers Inc.

8              My colleague, Mr. Woolverton, handled the reminder

9       calls.  We would like to put on the record those efforts.  I

10      can at least tell the Court happily that of the original

11      nine claimants two or not going to be heard today.  Mr. John

12      Waylan (ph) has formally withdrawn his claim --

13             THE COURT:  Okay.

14             MR. MILLER:  -- and one Mr. Edmond Finder (ph) has

15      been adjourned.

16             Very briefly do you want to -- if he might very

17      briefly tell you about the contact so you know

18      (indiscernible).

19             THE COURT:  Sure.  Hold on one second.  All right,

20      go ahead.

21             MR. MILLER:  Very briefly.

22             MR. WOOLVERTON:  Good afternoon, Your Honor,

23      Alexander Woolverton on behalf of the plan administrator.

24             As you know Epiq served -- or as you may know Epiq

25      served both the reply and notice of this hearing by

Page 46

1    overnight delivery to each of the claimant at issue today.

2    We do have delivery receipts that confirm the delivery of

3    the reply as well as affidavits of service of both the reply

4    and the notice of hearing that have been filed on the

5    docket.

6              As Mr. Miller has told you I personally attempted

7    to contact each of the nine claimants.  And as Mr. Miller

8    also told you Mr. Waylan agreed to withdraw his claim and

9    this hearing is adjourned as to the claim of Mr. Edmond

10   Finder.

11             I did speak to three claimants individually and

12   they will not be appearing.  Those claimants are

13   Mr. Morrison, Mr. Wagner (ph), and Mr. McGuin (ph).

14             When I spoke with Mr. McGuin he told me that he

15   had not personally received notice of this hearing, but that

16   he would check with his wife.  I informed him that we would

17   be seeking to move forward with the hearing today and he

18   said that he would not appear and that he would not appear

19   telephonically.  I have not since heard back from

20   Mr. McGuin.

21             THE COURT:  Okay.

22             MR. WOOLVERTON:  Both Mr. Collins and Mr. Dybeck

23   did say that they intend to be here --

24             THE COURT:  And they are.

25             MR. WOOLVERTON:  -- and they are indeed.

Page 47

1            THE COURT:  Okay.

2            MR. WOOLVERTON:  And I left voicemail messages for

3    Mr. Fritz (ph) and Mr. Smith.

4            And that concludes my presentation about it.

5            THE COURT:  Okay.  Thank you very much.

6            MR. WOOLVERTON:  Thank you.

7            MR. MILLER:  Your Honor, very briefly, because

8    this applies I think to all of the claimants.

9            There are two deferred compensation plans in

10   issue.  You can tell which claimant is under which plan by

11   looking at the copy of either the statement that they

12   submitted or --

13           THE COURT:  Right.

14           MR. MILLER:  -- in some cases letters that refer

15   to the statement, and conveniently the claimants I believe

16   are listed in alphabetical order, and the first six

17   claimants, Mr. Collins through Mr. Morrison, and that

18   includes Mr. Finder, who's been deferred, were under the LBI

19   executive and select employees plan, that includes

20   Mr. Dybeck who has asked to go first.  The two remaining

21   later claimants are under the Smith Barney and Lehman

22   Brothers plan and it is also called an LBI plan.

23           There are two differences that are important and

24   this does pertain to Mr. Dybeck's claim in particular.

25           There's a subordination provision in the LBI

Page 48

1    executive and select employees plan, which was the subject

2    of a proceeding in the LBI proceeding, and Mr. Dybeck made a

3    claim, for example, in the LBI proceeding, as did two of the

4    other claimants, Mr. Dybeck's claim was subordinated in the

5    LBI proceeding.  And so frankly, even if he had a claim

6    here, which we'll explain he doesn't, it would be a

7    subordinated claim.

8              The other plan, the Smith Barney plan has the

9    interesting fact that there was a guarantee of that plan by

10   Citi, and that claimants were actually all paid their full

11   amount under that plan.  And the claims of Mr. Smith and

12   Mr. Waylan were in fact expunged in the LBI proceeding as

13   already paid in full.

14             So there are -- we don't think we have to reach

15   actually either of those differences in the plan --

16             THE COURT:  Right.

17             MR. MILLER:  -- because all of these are LBI

18   plans.

19             Based on that, Your Honor, we'd be happy to let

20   Mr. Dybeck explain whatever he wants to talk about, and if

21   we could reserve some time I know Mr. Collins has some

22   material that he wants to bring to the Court's attention.

23             THE COURT:  Yes.  Okay.  Mr. Dybeck, is there

24   anything you'd like to say?

25             MR. DYBECK:  Well, yes.

1          First of all the main problem for me is that I

2    made an assumption in 1985 that these would be segregated

3    funds, and obviously they were not.  And also that the rules

4    involved in ERISA type accounts might apply, and that also

5    doesn't apply in this case apparently.

6          And so I -- my reason for being here is just maybe

7    to tell a sob story if you'll indulge me for just a moment.

8          THE COURT:  Go ahead.

9          MR. DYBECK:  Well the sob story involves my 33

10   years employed with the same firm, although the name on the

11   doors change many times.  I started with a (indiscernible)

12   firm in 1971 called Foster & Marshall in the Seattle area

13   and there have been at least a half a dozen mergers.

14         When Lehman was part of the program I signed up

15   for this voluntary deferred comp plan, and as people

16   sometimes do I didn't read all the small print, and you

17   know, was anxious to get some deferred comp.

18         I retired from my position in 2005, so I've been

19   retired ten years, and I was enjoying the annual payout from

20   this deferred comp plan until the last -- the number seven

21   check bounced, and we all know what happened after that.

22         Any event I got divorced in '94 and my ex-wife got

23   a very comfortable settlement based on the fact that I had

24   this deferred comp plan to rely on.  Well now it's not

25   there.

Page 50

1          Still I can get by without the money, but it's

2     kind of a hardship.  My wife has cancer and I'm living on

3     essentially a fixed income, even though I've spent time with

4     the Red Cross at Katrina and Sandy, and you know, it's a sob

5     story.

6          So whatever you guys figure out for me that's

7     fine, I can get by without it, but it's kind of a -- it kind

8     of -- it's kind of troublesome.  I couldn't afford to buy an

9     attorney.  In six years and the three or four pounds of

10    paper that I've gotten in the mail it probably would have

11    cost me $90,000 for my attorney to just look at that stuff.

12         So that's all I have to say.

13         THE COURT:  Well --

14         MR. DYBECK:  It's a sob story.

15         THE COURT:  -- let me share with you in response

16    to what you had to say.

17         I've presided over these cases for a little over a

18    year now having inherited them from Judge Peck who presided

19    over them since the time of the filing back in 2008 and

20    oversaw the plan process and began to, but was not able to,

21    complete the claims process.

22         Since I've taken over this job one of the -- not

23    one of the, let me correct that.  The hardest thing that I

24    had to do is to listen to stories like your own, and indeed

25    I presided over a very lengthy trial involving individuals

Page 51

1    such as yourself who were employed for in some cases decades

2    by LBHI and who as part of their compensation were receiving

3    deferred compensation and promises of deferred compensation

4    in the form of restricted stock units and other types of

5    consideration.  Many, many, many of them had very difficult

6    stories.

7            One woman in particular sticks with me because she

8    worked at a function at Lehman that was not an executive

9    function, she worked in the computer department and she was

10   instrumental in transitioning the Lehman computer systems

11   after the tragedies of 9/11, and then in the face of her own

12   personal tragedy losing her husband at a time when she had

13   two young daughters at home she continued to stick with

14   Lehman and very much relied on the prospect of getting her

15   deferred compensation.

16           And to her and to many, many other retirees and

17   individuals who relocated their families and who felt with

18   justification wronged by what had occurred I had to deny

19   their claims because I'm bound to follow the law and

20   interpret these undertakings that Lehman made to many of you

21   consistent with what the contract said, and indeed in your

22   words what all the fine print said.

23           And, you know, the good part about deferred comp

24   is that you have that promise of a payday down the road, but

25   sometimes it doesn't come to fruition.

1            The particular part of this story that you've told

2    me that resonates with me is of course with respect to your

3    wife and the divorce situation.  And I can tell you without

4    giving you any advice, but that after the terrible tragedy

5    of the Madoff Ponzi schemes, which was on a par but a

6    different type of tragedy than the Lehman Brothers cases,

7    there were many divorces that were affected by exactly the

8    types of circumstances you're describing.

9            MR. DYBECK:  Uh-huh.

10           THE COURT:  In other words in reliance on funds

11   that parties believed that they had based on the statements

12   that Mr. Madoff was sending them divorces and settlements in

13   connection with divorces were had, only to find out after

14   the fact that in fact those funds weren't there.  And I

15   believe that some of those cases went up to appeal here in

16   New York.  I'm not sure what the ultimate outcome was, but

17   it is a particular circumstance that's particularly

18   unfortunate in your case.

19           I can tell you with 100 percent confidence that

20   based on the type of claim that you have whether or not you

21   had an attorney would not have made any difference.

22           MR. DYBECK:  Well that's good to know.

23           THE COURT:  The $350 million in similar claims,

24   although they were LBHI claims that I did not allow, over

25   100 of those claimants I believe were represented by

Page 53

1    counsel, and those matters are now up on appeal.  So, I do

2    not believe that having had an attorney would have made any

3    difference, because for better or worse these are not claims

4    that I can allow against LBHI, and as Mr. Miller indicated

5    at the top of the hearing, they are subordinated.

6              So, I appreciate your fortitude and your making

7    time to come here today, and I wish from the bottom of my

8    heart that I could do something else, but I cannot.

9              MR. DYBECK:  Well, I certainly appreciate your

10   kind words.  And just knowing that there are others who were

11   far worse off than me is reassuring, but also the fact that

12   your words make me feel like somebody cares.  And, you know,

13   so, I'm fine with all this, you know, you do what you have

14   to do.

15             THE COURT:  I wish you a very good day, sir --

16             MR. DYBECK:  Thank you very much.

17             THE COURT:  -- and the very best of luck.  You can

18   disconnect from the line now.

19             All right.  I think that leaves us with

20   Mr. Collins.  Are you still there, sir?

21             MR. COLLINS:  Yes, I am.

22             THE COURT:  Okay.  Let me put something on the

23   record.

24             We received literally as I was putting on my robe

25   to come out here for the hearing at noon today a letter that

Page 54

1    we have since placed on the docket directed to me.  My

2    understanding is that counsel for Lehman has the document.

3    Attached to the document, which I have not looked at, is a

4    document that I've been given to understand contains some of

5    the back and forth regarding settlement of this claim.

6         The rules of the road, which you will have no way

7    of knowing, are that settlement discussions between parties

8    to a litigation to a lawsuit, which is what this in essence

9    is, are not permitted to reveal settlement discussions that

10   they've had.

11        So, I now understand it appears that there have

12   been settlement discussions.  The existence of those

13   settlement discussions or any numbers that have been

14   exchanged in connection with those settlement discussions

15   are not something that I am permitted to know or can take

16   into consideration in deciding the merits of your claim.

17        Mr. Miller's recitation of the reasons why your

18   claim cannot be allowed are in my mind accurate.  If there's

19   something that you would like to say before I rule I'd be

20   happy to hear you.

21        MR. COLLINS:  Well a couple of points.

22        First, you know, this whole process started back

23   in '08.  I was given a -- I'm told now my claim was filed

24   against the wrong entity, but on the proof of claim form --

25   I don't know if you have that there or not -- that I

Page 55

1    initially filed in 2008, you know, for any normal person to

2    not file against Lehman Brothers Holding (sic) Inc. after

3    getting this form would not be able to file against Lehman

4    Brothers Inc.  If you look at the form closely --

5            THE COURT:  Okay.  Hold -- Mr. Collins, hold on.

6    Hold on.  You're not being criticized for having filed

7    against the wrong debtor.  Your claim against LBHI is

8    duplicative of the claim that you filed against LBI.

9            MR. MILLER:  Your Honor, I don't believe that is

10   true.

11           MR. COLLINS:  I didn't file a claim against LBI.

12           THE COURT:  I'm sorry, hold on a second.  I'm

13   sorry, that was wrong, I withdraw that statement.  Go ahead,

14   keep going, sir.

15           MR. COLLINS:  Okay.  So on the claim form it says

16   In re: Lehman Brothers Holdings Inc., et al., debtors.  And

17   the next line it says name of debtor against which claim is

18   held, which I have to fill in.  And on the back page of this

19   proof of claim it lists the name of all the debtors and the

20   case numbers, okay?  That's the next column I've got to fill

21   in.  And nowhere is it ever listed Lehman Brothers Inc. with

22   a case number.  So in my filling this out (indiscernible) to

23   Lehman Brothers Holdings Inc., which as you know LBI was

24   always the wholly-owned subsidiary of that entity.  So

25   that's just common sense tells you that what you have to do.

Page 56

1    There's nothing on this form that specifies Lehman Brothers

2    Inc. and the bankruptcy number.  The only time I saw that

3    was when I received the notice from Lehman's attorney saying

4    that this court case was a SIPC and obviously your initials.

5    So now I'm saying that that was -- I'm told in prior

6    discussions that that was filed against the wrong people.

7            Several years after it was filed and actually

8    accepted by Epiq, which I realize Lehman always could have

9    contested or to try to deny the claim, but so now my

10   predicament is it's gone past the LBI filing, as I

11   understand it, that I would be too late for that.

12           And so I've looked at that constantly and I sent

13   you the letter I wrote, you probably haven't had a chance to

14   read the letter, but you know, simple common sense, you

15   know, will tell us that LBI was a directly -- direct

16   liability of LBHI.

17           THE COURT:  Okay.  Mr. Collins, let me stop you

18   there, because you say that, but as a matter of law that's

19   not so.  The liabilities of LBI and LBHI are distinct, and

20   it has been ruled as much by Judge Peck previously in this

21   case as well as by me on other occasions when individuals

22   like yourself say it's all the same thing, it's Lehman.  And

23   your plan documents -- the plan documents -- let's put aside

24   the poof of claim, okay?

25           I sympathize with what you're saying with respect

Page 57

1    to how confusing this all might have been, but your claim is

2    as a -- is with respect to amounts owing to you by LBI, not

3    LBHI, and there's no mixing together of the entities and

4    there's no veil piercing.  The estates are distinct, they

5    always will be distinct.  The employees of LBI -- former

6    employees of LBI, such as yourself, have whatever rights

7    they have in the LBI proceeding, but they have no rights in

8    the LBHI case unless there are other grounds to assert

9    claims other than their status as LBI employees.

10           Now you say in your letter, which was filed on

11   September 20th, 2011, addressed to whom it may concern, as

12   the Court is aware Lehman Holdings Inc., which I assume you

13   meant Lehman Brothers Holdings Inc., the debtor, has assumed

14   these obligations, and that's simply not true.  That's

15   simply not true.

16           So as Mr. Miller stated at the outset, to the

17   extent that these are -- is a claim that was assertable

18   against LBI it's already been found that it is a

19   subordinated claim, and there's no other basis for your

20   having an allowable claim against LBHI.

21           So, I guess what I'm trying to say is that the

22   basis -- the underlying basis of not allowing your claim

23   really doesn't turn on what you were talking about at the

24   beginning of having, you know, mistakenly filed this against

25   LBHI, because at the end of the day it wouldn't have

Page 58

1    mattered.

2              MR. COLLINS:  Let me say that I wasn't -- when I

3    made that I started from it because what I'm trying to tell

4    you is that proof of claim, I wasn't mistakenly filing

5    against the wrong entity, I filed against Lehman Brothers

6    Holdings Inc.  I was told later that must have been a

7    mistake I made for various different reasons, but I was

8    filing against Lehman Brothers Holdings Inc. because I

9    believed they're responsible.  And you're telling -- so what

10   you're saying is LBHI has no responsibility to participants.

11             THE COURT:  That's correct.

12             MR. COLLINS:  Okay.  Well can I ask you this

13   question then?  Why in the prospectus when they went public

14   Lehman Brothers Holdings Inc. in 1994, their prospectus they

15   aid American Express annual fee of .625 percent on all of

16   the outstanding balances in the employee comp plan,

17   including the one I was in, ESOP.  If they had no

18   responsibility for that plan and no obligation to

19   participants why would LBHI pay someone else to make them a

20   guarantee and not -- why didn't LBI do it?

21             THE COURT:  Let me ask Mr. Miller if he can answer

22   your question because I certainly can't.

23             MR. MILLER:  Yes, Your Honor, I can.

24             The answer is a little bit complicated, but

25   actually Mr. Collins has conveniently provided all the

page 59

Page 59

1    documents necessary to answer it.

2              THE COURT:  Okay.

3              MR. MILLER:  If you look at the statement that was

4    provided to Mr. Collins one of the points that it makes is

5    that he has selected what is called Option 1, and that is if

6    you look right under his name and then it has his social

7    security number it says, option selected Option 1.

8              THE COURT:  Let me -- I'm in tab F.

9              MR. MILLER:  Yes, Your Honor.

10             THE COURT:  Okay.

11             MR. MILLER:  And this is about -- this is just

12   after the -- there may be a blue sheet, I think right behind

13   his proof of claim form, which I'm not sure if the proof the

14   claim is in tab F.

15             THE COURT:  The tab F that I have is --

16             MR. MILLER:  Okay.  Well we have a copy of his

17   proof of claim.

18             THE COURT:  -- Mr. Collins' September 2011 letter

19   and then a memorandum on letterhead of Shearson Lehman

20   Brothers Inc. dated 1985.

21             MR. MILLER:  Okay.  May I approach, Your Honor,

22   and I'll provide a copy of --

23             THE COURT:  Sure.

24             MR. MILLER:  -- the proof of claim.

25             THE COURT:  Okay.  Mr. Collins, Mr. Miller is

Page 60

1     handing me up your proof of claim.  Do you have a copy?

2              MR. COLLINS:  Of my original proof of claim --

3              THE COURT:  Yes, sir.

4              MR. COLLINS:  -- from September of '09?

5              THE COURT:  September 17th, 2009 proof of claim.

6              MR. COLLINS:  Okay.

7              THE COURT:  Okay?  And it's the proof of claim

8     form and then there's a Lehman Brothers statement, and

9     Mr. Miller's pointing me to something, which is what again,

10    Mr. Miller?

11             MR. MILLER:  If you look right under his name,

12    social security number, which is just the last four digits,

13    it says --

14             THE COURT:  Yes.

15             MR. MILLER:  -- option selected Option 1.

16             THE COURT:  Yes, I see that.

17             MR. MILLER:  All right.  If you flip back through

18    the forms that are attached to claim form you will come to a

19    document, I believe, which has a description of the plan --

20             THE COURT:  The --

21             MR. MILLER:  -- which is the Shearson Lehman

22    Brothers Inc. executive and selective employees plan.

23             THE COURT:  I'm there.

24             MR. MILLER:  All right.

25             THE COURT:  Okay.

Page 61

1          MR. MILLER:  If you flip over, Your Honor --

2          THE COURT:  Mr. Collins are you following along?

3          MR. COLLINS:  I know what he's -- I'll have to

4     find it, but I know what he's referring to.

5          THE COURT:  Okay.

6          MR. MILLER:  All right.  If you flip over to

7     page 3 you will see Option 1, the original ESEP and you will

8     see that the second sentence says, this is -- "These

9     different options have factors related to an American

10    Express guarantee."  Option 1 it says:

11         "If you elect Option 1 no changes will be made to

12    your ESEP agreement and the American Express Company

13    guarantee as described later will not apply any of the

14    deferred compensation payable under the ESEP agreement."

15         This is the option he selected.

16         The other options, 2, 3, and 4, which I won't bore

17    the Court with, have a description of this American Express

18    Company guarantee, and basically American Express guaranteed

19    the collection by the participant to the extent that

20    payments were due on or before August 9, 2000.  This was

21    apparently an employee retention arrangement of some sort

22    when American Express spun off Shearson Lehman Brothers,

23    which is the prior name for LBI.

24         That guarantee, according to Mr. Collins, the fee

25    for that guarantee apparently was paid by LBHI, the acquirer

Page 62

1    of the assets from American Express, technically in that

2    transaction.

3         So, I guess the point of that is, number one, this

4    has nothing to do with Mr. Collins because he selected

5    Option No. 1.

6         Number two, the American Express guarantee was

7    over and done with August 9, 2000.

8         And number three, the fact that the acquirer of

9    assets from American Express paid something to offer a

10   guarantee to the former American Express employees, if they

11   selected it, also has nothing to do with alter ego or

12   piercing the corporate veil.

13        Long answer, but I believe actually Mr. Collins

14   has given us the documents to answer the question.

15        THE COURT:  Okay.  Mr. Collins?

16        MR. COLLINS:  So you're telling me that LBHI

17   bought the assets of LBI and that's how I was assumed into

18   this?

19        MR. MILLER:  Well American Express spun off assets

20   which were acquired by LBHI in the form of stock and the

21   Lehman -- what was the original name at that time I think

22   was, it was called Shearson Lehman Brothers, which is a name

23   change that became LBI, and you presumably were an employee

24   that had a compensation plan already in place from the

25   predecessor entity when it was owned by American Express and

Page 63

1    you selected apparently to keep the same plan in place.

2    So --

3                MR. COLLINS:  So when the company was spun off in

4    1994 from American Express and it was a new company, Lehman

5    Brothers Holdings Inc. stock, LBI was a part of that,

6    correct?

7                MR. MILLER:  LBHI was the holding company --

8                MR. COLLINS:  Right.

9                MR. MILLER:  -- that acquired the stock, I

10   believe.

11               THE COURT:  LBHI was the holding company that

12   acquired the stock.

13               MR. MILLER:  I believe that's correct.  Is that?

14   We think that is -- I think that's the correct -- yes, Your

15   Honor.  And LBHI as a part of its acquisition of stock from

16   American Express paid American Express a fee for a guarantee

17   that American Express also provided.

18               MR. COLLINS:  So they assumed then the operation I

19   guess of this ESOP plan, correct?

20               THE COURT:  No, that's not correct.

21               MR. MILLER:  That's not --

22               THE COURT:  That is not -- that's not correct,

23   Mr. Collins.  What Mr. Miller is describing basically the

24   flow of consideration in connection with an asset

25   acquisition of American Express.  So the payments that you

Page 64

1   are pointing to as evidence of the contention that I ought

2   to treat LBI and LBHI as one in the same in fact is not

3   evidence of that.  There is -- it has been established and

4   held countless times in this case that LBI and LBHI are

5   distinct entities and those employees of LBI who don't have

6   any other basis for claiming that they are owed money by

7   LBHI simply do not have allowable claims against LBHI, and

8   based on your submission it appears that that's the essence

9   of your claim and it does not hold up as a legitimate basis

10  for having an allowed claim against LBHI.

11          MR. COLLINS:  Are you saying to me that the

12  holding company here after being -- becoming independent

13  public in 1994 had no control -- operating control over LBI

14  whatsoever?

15          THE COURT:  Mr. Collins, we're going to wrap this

16  up in a bit now, but let me give you a little bit of further

17  observations.

18          All the time in public companies, non-public

19  companies corporations have parents, corporations have

20  subsidiaries, corporations have affiliates, and as long as

21  the corporate formalities are observed and accounts are kept

22  separately and one can tell whose assets are whose and whose

23  liabilities are whose, the mere fact that entities are part

24  of the same corporate family does not give rise to liability

25  by one corporation for the assets -- for the liabilities of

Page 65

1    another corporation in the family.

2              So let me say that to you the way Judge Peck said

3    it on at least one occasion in this case and it is what's

4    called the law of the case, which means that it is a

5    pronouncement of the court in this case and it is binding as

6    a matter of the law that applies going forward in the case.

7    In Judge Peck's words:

8              "These estates, that of LBI and LBHI, are distinct

9    and will always remain so.  The employees of LBI have

10   whatever rights they have in that proceeding.  They have no

11   rights in the LBHI case, unless of course they have other

12   grounds to assert claims other than their status as LBI

13   employees."

14             Those are the words of Judge Peck in a hearing

15   that was held in this court on November 22nd, 2013.  I've

16   said them probably a dozen times since I took over the

17   oversight of this case over a year ago, and it remains true

18   today.

19             I can hear your frustration, but --

20             MR. COLLINS:  What you're saying is I filed in the

21   wrong place.

22             THE COURT:  No, I -- sir, I've had a tremendous

23   amount of patience, about 20 minutes ago I said you did not

24   file in the wrong place, I said that you believed that -- if

25   you believed you had a claim against LBI I've now explained

Page 66

1    several reasons why you do not.  Mr. Miller himself has

2    articulated very clearly why you do not have a claim against

3    LBHI.

4           What I said in addition was had you filed the

5    claim against LBI it would be a subordinated claim and it

6    would not be entitled to any recovery because of the terms

7    of the plan, the LBI plan of which you are part.

8           So to state it in a different fashion, there is no

9    root that I can discern to a recovery on account of your

10   belonging to the plan to which you belonged as an employee

11   of LBI.

12          MR. COLLINS:  So let me just conclude and ask this

13   question.  So you're saying that any member of the ESOP plan

14   for the most part is subordinated and there's going to be no

15   claim payout.

16          THE COURT:  Mr. Miller?

17          MR. MILLER:  Your Honor --

18          THE COURT:  It's very hard to, and I think in

19   inappropriate for me to give you a pronouncement with

20   respect to claims that are not before me today.  Any claims

21   that are identical to yours will be or will have been

22   treated in the identical way.  One thing that I've learned

23   over the past year is that there were many, many

24   permutations and flavors of these deferred compensation

25   programs, and I cannot tell you that there isn't some form

Page 67

1     of it out there that might be entitled to different

2     treatment.  But I can tell you that any claim that's

3     identical to yours, barring some other independent basis for

4     an allowed claim against LBI or LBHI, would be and has been

5     treated in the same way.

6               MR. MILLER:  And, Your Honor, for convenient

7     preference in our response -- excuse me -- our reply, which

8     was sent to Mr. Collins, in paragraph 5 we summarized the

9     status of these claims.  Three of the claims that are before

10    the Court today, Mr. Morrison's, Mr. Dybeck's, and

11    Mr. McGuin's, those three claimants had five claims between

12    them because Mr. Dybeck happened to have three claims

13    himself.  Mr. Dybeck's three claims were subordinated and we

14    give the ECF number for that ruling.

15              THE COURT:  Okay.

16              MR. MILLER:  The claims of Mr. McGuin and

17    Mr. Morrison are subject to an objection and subordination,

18    but there's been no ruling on those claims yet.  And those

19    were the three claimants I was referring to.

20              Mr. Collins, according to my records, did not file

21    a claim in LBI.  Obviously by extension if he had he would

22    probably be in this group and would be subjected at least to

23    the objection and the request for subordination.  I think

24    that's the accurate statement.

25              THE COURT:  Right.  That's what I've been trying

Page 68

1    to explain, but I appreciate your clarifying that.

2              MR. MILLER:  All right.

3              THE COURT:  So, Mr. Collins, that's where we are.

4    Mr. Miller is going to -- so your claim is not going to be

5    allowed.  Mr. Miller is -- as we do after these hearings is

6    going to provide me with an order that reflects the

7    disposition of all the claims that were heard on today's

8    calendar.  He can send you a copy of that order.  It will

9    incorporate the reasons that I've put forth on the record

10   today as the reasons for my ruling.  And if you wish to

11   appeal the decision today that is your right and you can do

12   that on the basis of the order and on the transcript of

13   today's proceedings, but beyond that I can't give you any

14   further advice or direction with respect to what else you

15   may do.

16             MR. COLLINS:  Okay.  Thank you.

17             THE COURT:  Okay.  Thank you, sir.

18             MR. MILLER:  Unless there are any other questions,

19   Your Honor, we'll submit an order.

20             THE COURT:  Very good.  Thank you, Mr. Miller.

21             MR. MILLER:  Thank you for your time.

22             THE COURT:  Thank you everyone for your patience

23   and get home safely.

24             UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

25             THE COURT:  Thank you, Karen.

Page 69

1          (Whereupon these proceedings were concluded at 1:49 PM)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 70

1                              I N D E X

2

3                              RULINGS

4                                                              PAGE

5    Doc #9529 Two Hundred Fifty-Fifth Omnibus Objection

6    to General Creditor Claims re: Claim of TTSD Trust

7    U/A/D 6/7/07 (Claim No. 9001006)                          37

8

9    Doc# 19399 One Hundred Seventy-Third Omnibus Objection    50

10   to Claims (No Liability Employee Claims)                  68

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 71

1      C E R T I F I C A T I O N

2

3      I, Dawn South, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Dawn South          Digitally signed by Dawn South
                            DN: cn=Dawn South, o=Veritext, ou,
                            email=digital@veritext.com, c=US
6      _____   Date: 2016.01.27 16:07:57 -05'00'

7      Dawn South

8      AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12     Date:  March 9, 2015

13

14

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY 11501