B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

Southern District of New York

In re Lehman Brothers Holdings Inc, et al, Debtors          Case No. <u>08-13555 (JMP)</u>

## PARTIAL TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001 (e)(2), Fed. R. Bankr. P., of the partial transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee                                   Name of Transferor

**MERRILL, LYNCH, PIERCE, FENNER**          **FARALLON CAPITAL INSTITUTIONAL**
**& SMITH INCORPORATED**                      **PARTNERS II, L.P.**

Name and Address where notices to transferee
Should be sent:                                      Court Claim Number: **Multiple; see**
c/o 214 North Tryon Street, 15th Floor,              **attached schedule.**
Charlotte, N.C. 28255, USA                           Claim Amount: **see attached schedule.**

Attn: Gregory Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

Name and Address where transferee payments
should be sent (if different from above):

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____          Date: 12 February 2016
      SETH DENSON
      DIRECTOR
**MERRILL LYNCH, PIERCE, FENNER**
**& SMITH INCORPORATED**

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

SCHEDULE

Transferred Claims

| ISIN | Issuer | Guarantor | Principal / Notional Amount | ISIN CCY | POC # | USD Allowed Amount |
|---|---|---|---|---|---|---|
| XS0341920220 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | 1,350,000.00 | EUR | 59789 | 1,916,893.01 |
| XS0315504323 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | 300,000.00 | EUR | 62743 | 427,391.45 |
| XS0284511994 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | 393,125.00 | EUR | 66962 | 477,367.26 |

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged **Farallon Capital Institutional Partners II, L.P.** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Merrill Lynch, Pierce, Fenner & Smith Incorporated** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the amount specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number(s) set forth at Schedule 1 hereto (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto and (d) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b) and (c), the "Transferred Claims"). For the avoidance of doubt, Purchaser does not assume and shall not be responsible for any obligations or liabilities of the Seller related to or in connection with the Transferred Claims or the Proceedings.

2.    Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; and (g) with respect to the Purchased Claim, Seller or a predecessor in interest has received from Lehman Brothers Holdings Inc. ("LBHI") (A) the initial LBHI distribution on or about April 17, 2012 in the amount set forth in Schedule 1 (the "Initial LBHI Distribution"), (B) the second LBHI distribution on or about October 1, 2012 in the amount set forth in Schedule 1 (the "Second LBHI Distribution"), (C) the third LBHI distribution on or about April 3, 2013 in the amount set forth in Schedule 1 (the "Third LBHI Distribution"), (D) the fourth LBHI distribution on or about October 3, 2013, in the amount set forth in Schedule 1 (the "Fourth LBHI Distribution"), (C) the fifth LBHI distribution on or about April 3, 2014, in the amount set forth in Schedule 1 (the "Fifth LBHI Distribution"), (D) the sixth LBHI distribution on or about October 2, 2014 in the amount set forth in Schedule 1 (the "Sixth LBHI Distribution"), (E) the seventh LBHI distribution on or about April 2, 2015 in the amount set forth in Schedule 1 (the "Seventh LBHI Distribution"), and (F)  the eighth LBHI distribution on or about October 1, 2015 in the amount set forth in Schedule 1 (the "Eighth LBHI Distribution"); with respect to the Purchased Security, the Seller has received from Lehman Brothers Treasury Co., B.V. ("LBT") the fourth LBT distribution on or about October 28, 2014 (the "Fourth LBT Distribution"), the fifth LBT distribution on or about April 27, 2015 (the "Fifth LBT Distribution") and the sixth LBT distribution on or about October 29, 2015 (the "Sixth LBT Distribution"), and, to the best of Seller's knowledge, a predecessor in interest to Seller received (A) the initial LBT distribution on or about May 8, 2013 (the

"Initial LBT Distribution"), the second LBT distribution on or about October 24, 2013 (the "Second LBT Distribution"), the third LBT distribution on or about April 24, 2014 (the "Third LBT Distribution" and, together with the Initial LBHI Distribution, Second LBHI Distribution, Third LBHI Distribution, Fourth LBHI Distribution, Fifth LBHI Distribution, Sixth LBHI Distribution, Seventh LBHI Distribution, Eighth LBHI Distribution, the Initial LBT Distribution, the Second LBT Distribution, the Fourth LBT Distribution, the Fifth LBT Distribution and the Sixth LBT Distribution, the "Distributions"), in the amounts set forth on Schedule 1; (h) Seller has delivered to Purchaser true and correct copies of the Second LBHI Distribution, the Third LBHI Distribution, the Fourth LBHI Distribution, the Fifth LBHI Distribution, the Sixth LBHI Distribution, the Seventh LBHI Distribution and the Eighth LBHI Distribution notices from the Debtor, and there have been no revisions thereto, and (j) other than the Distributions, Seller has not received any payment or distribution, whether directly or indirectly, on account of the Transferred Claims and Purchased Securities.

3.     Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claims be delivered or made to Purchaser.

4.     All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.     Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser (including for the avoidance of doubt, any distributions Seller received after the trade date of 28 September 2015, including without limitation, the Eighth LBHI Distribution, and the Sixth LBT Distribution). Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.     Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer of Claim, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.     Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

2

[SIGNATURES ON FOLLOWING PAGE]

3

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this **12th** day of February 2016

**FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.**

By: Farallon Partners, L.L.C., Its General Partner

By: _____
Name:
Title: Monica R. Landry
Date: Managing Member

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED**

By: _____
Name:
Title:

214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

4

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this ___12th___ day of February 2016

**FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.**

By: Farallon Partners, L.L.C., Its General Partner

By: _____
Name: _____
Title: _____
Date: _____

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED**

By: _____
Name: _____
Title: SETH DENSON
       DIRECTOR
214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

4

## SCHEDULE 1

### Transferred Claims

#### Purchased Claim

The allowed amounts set forth below together with all accrued interest, fees and other recoveries due.

Lehman Programs Securities to which Transfer Relates

| Description | POC | ISIN | Issuer | Guarantor | Currency | Notional Amount | Allowed Amount Transferred herein |
|---|---|---|---|---|---|---|---|
| Lehman Program Security | 59789 | XS0341920220 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | EUR | 1,350,000.00 | US$ 1,916,893.01 |

#### LBHI Distributions

| Distribution | Purchased Claim Allowed amount | Purchased Claim Distribution |
|---|---|---|
| Initial Distribution | US$ 1,916,893.01 | US$ 69,185.06 |
| Second Distribution | US$ 1,916,893.01 | US$ 46,687.44 |
| Third Distribution | US$ 1,916,893.01 | US$ 58,968.67 |
| Fourth Distribution | US$ 1,916,893.01 | US$ 69,915.16 |
| Fifth Distribution | US$ 1,916,893.01 | US$ 75,944.16 |
| Sixth Distribution | US$ 1,916,893.01 | US$ 56,996.03 |
| Seventh Distribution | US$ 1,916,893.01 | US$ 38,896.39 |
| Eighth Distribution | US$ 1,916,893.01 | US$ 29,667.01 |

#### LBT Distributions

| Distribution | Purchased Claim Allowed Amount | Purchased Claim Distribution |
| --- | --- | --- |
| Initial Distribution | US$ 1,916,893.01 | EUR 181,924.85 |
| Second Distribution | US$ 1,916,893.01 | EUR 71,270.82 |
| Third Distribution | US$ 1,916,893.01 | EUR 76,601.98 |
| Fourth Distribution | US$ 1,916,893.01 | EUR 63,331.67 |
| Fifth Distribution | US$ 1,916,893.01 | EUR 50,738.00 |
| Sixth Distribution | US$ 1,916,893.01 | EUR 36,916.75 |

6

<u>AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM</u>
<u>LEHMAN PROGRAM SECURITY</u>

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged **Farallon Capital Institutional Partners II, L.P.** ("<u>Seller</u>") hereby unconditionally and irrevocably sells, transfers and assigns to Merrill Lynch, Pierce, Fenner & Smith Incorporated (the "<u>Purchaser</u>"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the amount specified in <u>Schedule 1</u> attached hereto (the "<u>Purchased Claim</u>"), in Seller's right, title and interest in and to Proof of Claim Number(s) set forth at <u>Schedule 1</u> hereto (the "<u>Proof of Claim</u>") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "<u>Proceedings</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"), administered under Case No. 08-13555 (JMP) (the "<u>Debtor</u>"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "<u>Transferred Claims</u>"), and (d) the security or securities (any such security, a "<u>Purchased Security</u>") relating to the Purchased Claim and specified in <u>Schedule 1</u> attached hereto. For the avoidance of doubt, Purchaser does not assume and shall not be responsible for any obligations or liabilities of the Seller related to or in connection with the Transferred Claims or the Proceedings.

2.    Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in <u>Schedule 1</u> attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; (g) with respect to the Purchased Claim, (i) to the best of Seller's knowledge, Seller's predecessor in interest has received (A) the initial distribution on or about April 17, 2012 at the rate of 3.609229% (the "<u>Initial LBHI Distribution</u>") and (B) the second distribution on or about October 1, 2012 at the rate of 2.435579% (the "<u>Second LBHI Distribution</u>"), and (ii) Seller or a predecessor in interest has received (A) the third distribution on or about April 3, 2013, in the amount set forth in <u>Schedule 1</u> (the "<u>Third LBHI Distribution</u>"), (B) the fourth distribution on or about October 3, 2013, in the amount set forth in <u>Schedule 1</u> (the "<u>Fourth LBHI Distribution</u>"), (C) the fifth distribution on or about April 3, 2014, in the amount set forth in <u>Schedule 1</u> (the "<u>Fifth LBHI Distribution</u>"), (D) the sixth distribution on or about October 2, 2014 in the amount set forth in <u>Schedule 1</u> (the "<u>Sixth LBHI Distribution</u>"), (E) the seventh distribution on or about April 2, 2015 in the amount set forth in Schedule 1 (the "<u>Seventh LBHI Distribution</u>"), and (F) the eighth distribution on or about October 1, 2015 in the amount set forth in Schedule 1 (the "<u>Eighth LBHI Distribution</u>"); (h) Seller has delivered to Purchaser true and correct copies of the Fourth LBHI Distribution, Fifth LBHI Distribution, Sixth LBHI Distribution, Seventh LBHI Distribution and Eighth LBHI Distribution notices from the Debtor. With respect to the Purchased Security, Seller or a predecessor in interest has received from Lehman Brothers Treasury Co., B.V. ("<u>LBT</u>") (A) the fourth LBT distribution on or about October 28, 2014 in the amount set forth in <u>Schedule 1</u> (the "<u>Fourth LBT Distribution</u>"), (B) the fifth LBT distribution on or about

April 27, 2015 in the amount set forth in Schedule 1 (the "Fifth LBT Distribution") and (C) the sixth LBT distribution on or about October 29, 2015 in the amount set forth in Schedule 1 (the "Sixth LBT Distribution" and, together with the Initial LBHI Distribution, the Second LBHI Distribution, the Third LBHI Distribution, the Fourth LBHI Distribution, the Fifth LBHI Distribution, the Sixth LBHI Distribution, the Seventh LBHI Distribution, the Eighth LBHI Distribution, the Fourth LBT Distribution and the Fifth LBT Distribution, the "Distributions"). Other than the Distributions, Seller has not received any payment or distribution, whether directly or indirectly, on account of the Purchased Security or the Transferred Claims.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Purchased Security and the Transferred Claims to Purchaser including for the avoidance of doubt, any distributions Seller received after the trade date of October 1, 2015, including without limitation, the Eighth LBHI Distribution and the Sixth LBT Distribution). Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is dated as of February 12, 2016.

**FARALLON    CAPITAL    INSTITUTIONAL PARTNERS II, L.P.**
**By: Farallon Partners, L.L.C., Its General Partner**

By: _____
Name: Monica R. Landry
Title: Managing Member
Date: _____

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED**

By: _____
Name:
Title:

214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

3

KL2 2939692.2

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is dated as of February 12, 2016.

FARALLON      CAPITAL      INSTITUTIONAL
PARTNERS II, L.P.
By: Farallon Partners, L.L.C., Its General Partner

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED

By:_____
Name:_____
Title:_____
Date:_____

Address:
One Maritime Plaza. Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

By:_____
Name:_____
Title:_____

SETH DENSON
DIRECTOR

214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

## SCHEDULE 1

### Transferred Claims

#### Purchased Claim

The allowed amounts set forth below together with all accrued interest, fees and other recoveries due.

Lehman Programs Securities to which Transfer Relates

| Description | POC | ISIN | Issuer | Guarantor | Currency | Notional Amount | Allowed Amount Transferred herein |
|---|---|---|---|---|---|---|---|
| Lehman Program Security | 62743 | XS0315504323 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | EUR | 300,000.00 | US$427,391.45 |

#### LBHI Distributions

| Distribution | Purchased Claim Distribution |
|---|---|
| Third Distribution | US$ 13,147.91 |
| Fourth Distribution | US$ 15,588.32 |
| Fifth Distribution | US$ 16,932.55 |
| Sixth Distribution | US$ 12,707.86 |
| Seventh Distribution | US$ 8,672.34 |
| Eighth Distribution | US$ 6,614.55 |

KL2 2939692.2

**LBI Distributions**

| Distribution | Purchased Claim Distribution |
|---|---|
| Fourth Distribution | EUR 13,252.36 ✓ |
| Fifth Distribution | EUR 10,617.10 ✓ |
| Sixth Distribution | EUR 7,724.95 ✓ |

KL2 29396922

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P. ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Merrill Lynch, Pierce, Fenner & Smith Incorporated** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the amount specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number(s) set forth at Schedule 1 hereto (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto. For the avoidance of doubt, Purchaser does not assume and shall not be responsible for any obligations or liabilities of the Seller related to or in connection with the Transferred Claims or the Proceedings.

2.    Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; (g) with respect to the Purchased Claim, (i) to the best of Seller's knowledge, Seller's predecessor in interest has received (A) the initial distribution on or about April 17, 2012 at the rate of 3.609229% (the "Initial LBHI Distribution"), (B) the second distribution on or about October 1, 2012 at the rate of 2.435579% (the "Second LBHI Distribution") and (C) the third distribution on or about April 3, 2013 at the rate of 3.076315% (the "Third LBHI Distribution"), and (ii) Seller or a predecessor in interest has received (A) the fourth distribution on or about October 3, 2013, in the amount set forth in Schedule 1 (the "Fourth LBHI Distribution"), (B) the fifth distribution on or about April 3, 2014, in the amount set forth in Schedule 1 (the "Fifth LBHI Distribution"), (C) the sixth distribution on or about October 2, 2014 in the amount set forth in Schedule 1 (the "Sixth LBHI Distribution"), (D) the seventh distribution on or about April 2, 2015 in the amount set forth in Schedule 1 (the "Seventh LBHI Distribution"), and (E) the eighth distribution on or about October 1, 2015 in the amount set forth in Schedule 1 (the "Eighth LBHI Distribution"); (h) Seller has delivered to Purchaser true and correct copies of the Fifth LBHI Distribution, Sixth LBHI Distribution, Seventh LBHI Distribution and Eighth LBHI Distribution notices from the Debtor. With respect to the Purchased Security, Seller or a predecessor in interest has received from Lehman Brothers Treasury Co., B.V. ("LBT") (A) the fourth LBT distribution on or about October 28, 2014 in the amount set forth in Schedule 1 (the "Fourth LBT Distribution"), (B) the fifth LBT distribution on or about April 27, 2015 in the amount set forth in Schedule 1 (the

"Fifth LBT Distribution") and (C) the sixth LBT distribution on or about October 29, 2015 in the amount set forth in Schedule 1 (the "Sixth LBT Distribution" and, together with the Initial LBHI Distribution, the Second LBHI Distribution, the Third LBHI Distribution, the Fourth LBHI Distribution, the Fifth LBHI Distribution, the Sixth LBHI Distribution, the Seventh LBHI Distribution, the Eighth LBHI Distribution, the Fourth LBT Distribution and the Fifth LBT Distribution, the "Distributions"). Other than the Distributions, Seller has not received any payment or distribution, whether directly or indirectly, on account of the Purchased Security or the Transferred Claims.

3.       Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.       All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.       Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Purchased Security and the Transferred Claims to Purchaser (including for the avoidance of doubt, any distributions Seller received after the trade date of October 1, 2015, including without limitation, the Eighth LBHI Distribution and the Sixth LBT Distribution). Seller has transferred, or shall transfer as soon as practicable the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.       Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.       Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is dated as of February 12, 2016.

FARALLON       CAPITAL       INSTITUTIONAL
PARTNERS II, L.P.

By: Farallon Partners, L.L.C., Its General Partner

By: _____
Name: Monica R. Landry
Title: Managing Member
Date: _____

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED

By: _____
Name:
Title:

214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

3

KL2 2939689.2

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is dated as of February 12, 2016.

FARALLON    CAPITAL    INSTITUTIONAL
PARTNERS II, L.P.

By: Farallon Partners, L.L.C., Its General Partner


By:_____
Name:_____
Title:_____
Date:_____

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
Attention: Jon Reef
Tel: 415-421-2132
E-mail: jreef@farcap.com

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED


By:_____
Name:
Title:    SETH DENSON
         DIRECTOR

214 North Tryon Street, 15th Floor,
Charlotte, N.C. 28255, USA
Attn: Gregory W Ponder
Tel: 001 980 386 8308
Email: gregory.w.ponder@baml.com

## SCHEDULE 1

### Transferred Claims

#### Purchased Claim

The allowed amounts set forth below together with all accrued interest, fees and other recoveries due.

Lehman Programs Securities to which Transfer Relates

| Description | POC | ISIN | Issuer | Guarantor | Currency | Notional Amount | Allowed Amount Transferred herein |
|---|---|---|---|---|---|---|---|
| Lehman Program Security | 66962 | XS0284511994 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings, Inc. | EUR | 393,125.00 | US$477,367.26 |

#### LBHI Distributions

| Distribution | Purchased Claim Distribution |
|---|---|
| Fourth Distribution | US$ 17,411.10 |
| Fifth Distribution | US$ 18,912.51 |
| Sixth Distribution | US$ 14,193.81 |
| Seventh Distribution | US$ 9,686.42 |
| Eighth Distribution | US$ 7,388.02 |

K2L2 29396892

**LBT Distributions**

| Distribution | Purchased Claim Distribution | |
|---|---|---|
| Fourth Distribution | EUR 14,352.44 | \ |
| Fifth Distribution | EUR 11,498.42 | \ |
| Sixth Distribution | EUR 8,366.20 | \ |

5