Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555(SCC)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS INC.,

7              Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    ADV. PROC. NO.: 14-02030(SCC)

10   LEHMAN BROTHERS SPECIAL FINANCING, INC.,

11             Plaintiff.

12   v

13   MERRILL LYNCH CAPITAL SERVICES, INC.,

14             Defendants.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16                  U.S. Bankruptcy Court

17                  One Bowling Green

18                  New York, New York

19

20                  May 12, 2015

21                  11:05 AM

22

23   B E F O R E :

24   HON SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    Doc #16 Motion to Dismiss Adversary Proceeding filed by

2    William J.F. Roll, III on behalf of Merrill Lynch Capital

3    Services, Inc.

4

5    Doc #24 Motion of Defendant, Merrill Lynch Capital Services,

6    Inc. to Amend Answer to Adversary Complaint

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach

1   A P P E A R A N C E S :

2   WOLLMUTH MAHER & DEUTSCH, LLP

3        Attorneys for

4        500 Fifth Avenue

5        New York, New York 10110

6

7   BY:  WILLIAM A. MAHER, ESQ.

8

9   SHEARMAN & STERLING, LLP

10        Attorneys for Defendant

11        599 Lexington Avenue

12        New York, New York 10022

13

14   BY:  WILLIAM J.F. ROLL, III, ESQ.

15        ADAM J. GOLDSTEIN, ESQ.

16

17   ALSO APPEARING TELEPHONICALLY:

18   MADLYN PRIMOFF

19   JOSEPH OTCHIN

20   RALPH MILLER

21   JACQUELINE MARCUS

22   DENISE ALVAREZ

23   RICHARD KATZ

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Hello.  Good morning.  Is anyone on

3      the line?

4            MS. PRIMOFF:  Yes.  It's Kaye Scholer, Madlyn

5      Primoff and Joseph Otchin.

6            THE COURT:  Okay.  Good morning.  How are you?

7            MR. MILLER:  Good morning, Your Honor.  This is

8      Ralph Miller.  Can you hear me?

9            THE COURT:  Yes.

10           MR. MILLER:  Yes, Your Honor.  I am here and also

11     with me on a different line are my partner, Jacqueline

12     Marcus, Denise Alvarez from Weil.  We also have listening

13     the managing director at Lehman who is in charge of this

14     claim.  That's Richard Katz and (indiscernible), a lawyer

15     with the general counsel's office.

16           THE COURT:  Okay.  All right.  I read -- I read

17     both letters and I'm really not going to have any re-

18     argument of the discussion that we had.  None of this,

19     frankly, turns on the characterization of the type of

20     damages.  I was convinced then and I remain convinced now

21     that LBHI out to be entitled, if it believes it's in a

22     position to do so, to file a dispositive motion.  And I

23     viewed the letter from Kaye Scholer as a motion for

24     reconsideration, and to the extent that that's, in fact,

25     what it is I'm going to deny it.  We had a long, thorough,

Page 5

1   and I thought very useful conversation about this issue and

2   we're going to stick with it.  And that's really all I had

3   to say.

4          So we -- where we had left it was that eventually

5   there was going to be an agreed schedule between the

6   parties.  Well, there was going to be a threshold

7   determination by LBHI whether or not it indeed was in a

8   position to seek summary judgment.  And at that point when

9   it so determined there would be this discussion between the

10  parties as to a schedule and we would hear from you either

11  with an agreed schedule or with a request for assistance in

12  order to reach an agreed schedule.

13         MS. PRIMOFF:  Okay.  We'll proceed in that

14  fashion, Your Honor.

15         MR. MILLER:  And, Your Honor, this is Ralph

16  Miller.  We certainly will proceed in that fashion.  We just

17  received the complete information on the payoff letter

18  yesterday and we're still analyzing it.

19         Our tentative view at this point is there is a

20  basis for a summary judgment, both on the issue of whether

21  there is a valid waiver of consequential, special and other

22  non-general or direct damages, and that is the payoff letter

23  issue primarily.  And, also, on whether the significant

24  components of this are within the definition of general

25  damages or whether they are barred by the waiver.

Page 6

```
 1              And we feel pretty good about that based on the

 2    discovery that has already occurred, Your Honor.

 3              THE COURT:  Okay.  All right.  So let's continue

 4    to go down that path and I'll look forward to hearing from

 5    you when you're ready for next steps.

 6              Thank you for making yourselves available for the

 7    call today.

 8              MR. MILLER:  Thank you for your time, Your Honor.

 9              THE COURT:  Certainly.

10              MS. PRIMOFF:  Thank you.  Bye-bye.

11        (Recess taken at 11:09 a.m.; resume at 2:05 p.m.)

12              THE COURT:  How is everyone today?

13              MR. ROLL:  Good.

14              MR. MAHER:  Very well, thank you.

15              THE COURT:  Some of you are going to qualify for

16    frequent flyer awards given the frequency with which you

17    appear here.

18        (Laughter)

19              THE COURT:  I'm ready when you are.

20              MR. ROLL:  Good afternoon, Your Honor.

21              THE COURT:  Good afternoon.

22              MR. ROLL:  William Roll of Shearman & Sterling

23    appearing on behalf of Bank of America, Merrill Lynch in the

24    Chapter 11 cases and Merrill Lynch Capital Services, Inc.,

25    the defendant in the adversary proceeding.
```

1          THE COURT:  I'm just going to say to all of you

2     that I've spent a lot of time with the papers.  I have a lot

3     of questions, but what I would really like to do is to just

4     give you an opportunity to present whatever arguments that

5     you want to present and I'm going to try my best not to

6     interrupt and keep all of my questions for the end to the

7     extent that you don't happen --

8          MR. ROLL:  Okay.

9          THE COURT:  -- to answer them.  But this is

10    complicated.

11         MR. ROLL:  It is complicated, Your Honor.  And in

12    a way it's part 2 of what we were here on --

13         THE COURT:  Right.

14         MR. ROLL:  -- back in October.

15         THE COURT:  Right.

16         MR. ROLL:  You know, there's no getting around the

17    fact that we were here once on a 12(b)(6) motion which Your

18    Honor denied and that related, as I'm sure the Court will

19    recall, to the settlement agreement and/or argument that

20    these transactions at the heart of this case were safe

21    harbored.

22         THE COURT:  Right.

23         MR. ROLL:  We still maintain that those apply --

24         THE COURT:  Sure.

25         MR. ROLL:  -- and we'll get to those and prevail

Page 8

1     on those on the merits if we have to.

2            But, frankly, it was LBSF's position at that last

3     hearing and, frankly, the Court's reaction to LBSF's

4     position at the last hearing that in part brings us here

5     today.

6            THE COURT:  Well, I don't -- I don't know if you

7     can -- I don't know if I'm to blame for your being here

8     today.  I mean, I said -- whatever it is I said, I said.

9     But I don't want to attach too much significance to -- you

10    know, to the idea or kind of buy into the suggestion that

11    this was my idea.

12           MR. ROLL:  I understand that, Your Honor.  And I'm

13    not at all saying that it was --

14           THE COURT:  Okay.

15           MR. ROLL:  -- the Court's doing.  It's -- it was

16    essentially LBSF saying in response to our argument that the

17    settlement agreement between Merrill and Bank of America

18    that covered all the derivative claims that allowed for the

19    plan to be confirmed covered to the two trades -- two sets

20    of trades at issue here.

21           And as Your Honor might recall, LBSF's position at

22    that point was well, wait a minute, LCH, the clearing house

23    that we say is the indispensable party now in this motion,

24    they're a central player here and they're not a party to the

25    settlement agreement.  So the settlement agreement can't

Page 9

1    apply.  And that got us into a discussion about were they

2    central, were they not central, and at one point the Court

3    said almost offhandedly, well, maybe you have another

4    motion.  That's all I was referring to.

5            But it was essentially the LBSF position that, my

6    goodness, LBSF is -- or LCH, rather, is at the heart of this

7    and so that ground for dismissal under 12(b)(6) can --

8            THE COURT:  I see what you're saying.

9            MR. ROLL:  -- apply.

10           THE COURT:  Okay.

11           MR. ROLL:  So that's all -- that's really all it

12   was.

13           With that as prologue, let me offer to the Court

14   maybe 30 seconds of a recap on the facts here, just so we're

15   all starting from the same spot.

16           This is a situation that arose out of a

17   circumstance in 2008 before the petition date when these two

18   parties, Merrill Lynch Capital Services and LBSF, had two

19   trades, two bilateral trades that were terminated.  At some

20   point thereafter, but still before the petition date, the

21   information relating to those trades, the economic terms

22   attached to those trades were somehow conveyed to LCH, the

23   clearing organization so it could serve as a clearing entity

24   in this particular circumstance.

25           We can argue about if we ever have to get to a

Page 10

```
 1    trial on the merits.  I'm sure we will argue about how that

 2    happened, you know, was it a mistake, was it something else,

 3    was it deliberate, did they do it, did we do it, did we both

 4    do it.  The fact of the matter is it happened and we don't

 5    have to decide how it happened now, but it did happen.

 6              And once it got there, once those two trades got

 7    there, LCH, in effect, inserted itself as clearing entities

 8    do in between the two parties.  And so where we had two

 9    bilateral trades, we now had two sets of trades that had

10    LBSF and LCH on one side and MLCS -- I'll call it Merrill

11    just to be easy -- Merrill and LCH on the other.

12              And Merrill and LBSF were no longer at privities

13    with each other.  There were no longer bilateral trades

14    between those two entities.

15              So -- as it was as a result of that situation in

16    the months prior to the petition date in September of 2008

17    that there were payments, margin payments made back and

18    forth by the two parties, LBSF and MLCS not to each other,

19    but to the LCH which stood in between them as a clearing

20    entity.

21              It's -- it's that money, it's the net amount that

22    flowed from LCH ultimately to Merrill that LBSF is trying to

23    get back now.

24              I do want to pause for a very short time on this

25    issue of how this happened because LBSF does spend a lot of
```

Page 11

1   what I'll call verbal energy in their papers to claims that

2   this was somehow nefarious, that this was intentional on

3   Merrill's part; that this was -- that this created -- this

4   was an effort to create fictitious or counterfeit trades.

5   There's a lot of that kind of language in their papers now

6   in this motion just as there was in their papers in

7   opposition to our motion last time.

8            And, in fact, they even refer to it at page 15 of

9   the brief as extra contractual misconduct on Merrill's part,

10  and they refer to these, what I just described as the

11  invention of fictitious trades.  That's at page 2 of their

12  brief.

13           That's actually not true.  And we're not here to

14  argue the merits, but I do want to say -- and we put this in

15  front of the Court so the Court was aware of this, too.  We

16  put this as an attachment to our brief, our reply brief.

17  LBSF was well aware in 2012 that it wasn't just Merrill

18  transmitting this data to LCH that caused this to happen.

19  LCH itself wrote to LBSF in 2012 in response to a question

20  that LBSF raised about one of these trades.  And LCH itself

21  said to LBSF, these trades were the result of information

22  conveyed by both Merrill and LBSF, and they actually came

23  from Swap Wire, which was yet another clearing organization.

24           So at the very least, and this is my only reason

25  for bringing it up now, there is no good faith basis for

Page 12

1    Lehman, the Lehman entity today to be asserting that this

2    was somehow a set of nefarious acts on Merrill's part --

3             THE COURT:  Well --

4             MR. ROLL:  -- to cause these --

5             THE COURT:  -- I see -- the attachment that you're

6    referring to is a Martin Hadfield (ph) email to a Martin

7    Potts.

8             MR. ROLL:  Yes.

9             THE COURT:  And the second paragraph refers to the

10   trade and it was sent from clearing -- sent for clearing

11   through Swap Wire by Lehman Brothers and Merrill Lynch

12   International, et cetera.

13            MR. ROLL:  Yes.

14            THE COURT:  The -- on the prior page, though,

15   there's a Potts to Hadfield email that says, "I'm struggling

16   to understand how the hedge trades were put in place.  I

17   believe the shots" -- I guess he means screenshots -- "you

18   show below illustrate that one -- that you traded one side

19   with another market participant.  We do not see the trade

20   with LBSF and do not see how they were put in place.  Who

21   entered the trades, in what platform, when and how is LBSF a

22   party to the trades?"

23            So the subsequent email doesn't really answer that

24   question.  But my point, more importantly, is that I don't

25   even get to what you referred to in the briefs.  It's a

1   motion -- you know, first of all, now we're on a 12(b)(7).

2   Last time we were on a 12(b)(6).  The same rules apply.  I

3   have to accept the well pleaded facts as true.

4           Paragraph 14, paragraph 14 of the complaint says,

5   "Merrill unilaterally submitted data that ostensibly

6   represented the erroneous transactions to LCH and LBSF for

7   the purposes of registering the trades with LCH."

8           So that's the predicate allegation, right?  And

9   that's -- so I can't connect what you're telling me with my

10  having to take that as true.

11          MR. ROLL:  Well, I can address that in two ways,

12  Your Honor.

13          First, I do believe that there is case law to the

14  effect that on a 12(b)(7) motion the Court can look at facts

15  beyond what's in the complaint.

16          THE COURT:  But I --

17          MR. ROLL:  And we cite that in our papers.

18          THE COURT:  But if I look at this it doesn't -- it

19  doesn't get you there --

20          MR. ROLL:  Well --

21          THE COURT:  -- because you still have the

22  allegation that the reason -- and make no mistake about it.

23  I have no idea what actually happened.  I have no idea if --

24  what exists, what doesn't exist, what the burden of proof

25  is, if we're going to find documents, if we're not going to

Page 14

1    find documents and what that all means.

2         What I'm struggling with is an allegation that in

3    essence says this was Merrill's doing.

4         MR. ROLL:  Right.  But that's -- that may be.  I

5    think there's a way to read this email, this set of emails

6    that addresses Your Honor's point, but I don't -- I don't

7    think we even need to spend time on that because here's the

8    thing.  It's --

9         THE COURT:  But it's important because your --

10   your argument has a lot to do with the notion that Lehman

11   did this; that Lehman participated in putting on its side of

12   the trade.  And what I have here -- again, on a motion to

13   dismiss, problematic that I'm even at this place.  But I

14   don't have anything that leads me in that direction at the

15   moment other --

16        MR. ROLL:  Well, we do have -- we do have two

17   things.  One, we do have what I believe to be a reference to

18   one of these specific trades coming from both parties.  Much

19   of the email traffic, much of the email exchange that Your

20   Honor is looking at and that we included here, which we did

21   just so we weren't accused of putting parts of emails in

22   here, relates to other trades.  I think it's only the

23   reference in the last paragraph that matters, the trade LCH

24   and 601981.

25        The others where there's a reference to we don't

1   see the trades and so forth, I think that's other -- I

2   believe that to be other --

3               THE COURT:  But -- I'm sorry.  And then I'll let

4   you move on to another point.  But this very reference says

5   it was sent for clearing from Swap Wire by Lehman Brothers

6   and Merrill Lynch on June 13th.  That matches up to the

7   allegation in their complaint that says that Merrill

8   unilaterally submitted the data.

9               MR. ROLL:  Well, this says that Swap Wire by

10  Lehman and Merrill Lynch.

11              THE COURT:  Read the paragraph -- allegation 14.

12  Merrill unilaterally submitted data that ostensibly

13  represented the erroneous transactions to LCH and LBSF for

14  the purpose of registering the trades with LCH.  By

15  submitting the data, Merrill represented to Lehman and to

16  LCH and Lehman that it had two U.S. dollar interest rate

17  drops with LBSF as the counterparty.

18              MR. ROLL:  I understand that's their allegation,

19  Your Honor, but I'm -- my point is I think the

20  correspondence we've looked at shows that that's just not

21  true.  At worst it was a -- it was an effort on the part of

22  -- or some action on the part of both parties that resulted

23  in these trades being accepted by LCH.

24              THE COURT:  But -- okay.  This is --

25              MR. ROLL:  LCH Is not --

1           THE COURT:  This is truly the last time that we'll

2    -- the allegation is that it was unilateral action by

3    Merrill Lynch.  And what you're telling me is, no, it

4    wasn't.  That's not a motion to dismiss.

5           MR. ROLL:  Well, here's -- here's the bottom line

6    on this.  It doesn't matter because we may not know why it

7    happened or how it happened, and that's what we're talking

8    about, and maybe I shouldn't have even brought it up.  Maybe

9    we shouldn't have even gotten into this in the papers, but I

10   was frankly annoyed that we were being accused of all this

11   nefariousness.  Legally right now it does not matter because

12   the why or the how doesn't matter, but the what does matter.

13   What happened does matter and we know that.  There's no

14   dispute about that.

15          These trades went live between the two parties on

16   one hand, LBSF and LCH on one hand and Merrill and LCH on

17   the other.  That we know.  That's clear from the complaint,

18   the complaint itself in paragraphs that begin beyond the

19   point that Your Honor read from as we get to paragraph 19

20   and 20 and beyond.  They readily admit that what we had here

21   were -- was LCH accepting these transactions --

22          THE COURT:  No --

23          MR. ROLL:  -- live --

24          THE COURT:  No dispute --

25          MR. ROLL:  No dispute about that.  And once they

Page 17

1   went live, once the trades went live, there's also no

2   dispute these two parties were no longer at privities with

3   each other, these parties being Lehman and Merrill, and they

4   had no quasi contractual, they had no contractual

5   relationship.

6           LC -- and it's also undisputed -- and, again, you

7   can look at paragraphs 19, 20, 24, 27 of the complaint.  LCH

8   is a party to all, all of the trades at issue in this case.

9   However they got there, however it happened, however they

10  arose, no matter who did what to make it happen it did

11  happen and as a result LCH is a party to all the trades in

12  this case.

13          And remember all we're saying at this point is

14  we're not saying they can't sue.  What we're saying is they

15  can't sue just us.  They have to sue LCH at the same time

16  because what they're getting at is the enforceability or

17  lack thereof, the validity or lack thereof of the trades

18  that LCH was involved in with them on the one hand and with

19  us, with Merrill on the other hand.  That's what they're

20  getting at.

21          And the reason for that and one illustration of

22  that is that every single dollar they're trying to recover

23  --

24          THE COURT:  But that's where -- that's where we --

25  that's where we again begin to be ships passing in the night

1    because -- and there's a lot of back and forth on this,

2    recessions, other R words.

3            But what they're saying is that's great, but this

4    is about unjust enrichment.  This is about unjust

5    enrichment.  If you take us through, and I'm going to say

6    this.  Mr. Martin, don't -- don't begin to think that I'm

7    actually -- like I've decided this.  I'm very much testing

8    out every angle of this, okay.

9            If you believe the allegation that Merrill

10   unilaterally did this, okay, then what Lehman is saying is,

11   yes, I agree with you.  All of that stuff happened after

12   that.  LCH did exactly what it was obligated to do under its

13   own rules.

14           MR. ROLL:  Right.

15           THE COURT:  We're not disputing that in the least.

16   But, Merrill, you started this.  You caused this problem and

17   as a result of that, forget about the contract, the

18   existence of it, an ability to unwind what may have happened

19   between parties who were acting innocently, right?  You were

20   unjustly enriched and I was, at my expense, pay me back.

21           It's kind of like basic first year law school

22   stuff.

23           MR. ROLL:  Well, except that -- except that

24   Merrill was not unjustly enriched.  We were -- by them.  We

25   got net payments from LCH that were on account of the risks

1    we were encountering with respect to the existence of those

2    live trades with LCH at the time.

3                THE COURT:  That you put on, for the purposes of

4    this part of the argument --

5                MR. ROLL:  For the purposes of this argument.

6                THE COURT:  For the purposes of this part of the

7    argument, yes, you got $21 million as a result of unilateral

8    action you took to put on trades unbeknownst to Lehman that

9    Lehman didn't want.

10               MR. ROLL:  On trades on which we're still on the

11   hook, for which we're still on the hook with LCH.  And

12   that's the reason why LCH should be here, so we can --

13               THE COURT:  Wait.  Wait.  Wait.  Wait.  Let's --

14               MR. ROLL:  I'm sorry.

15               THE COURT:  Let's follow it to its logical

16   conclusion --

17               MR. ROLL:  Of course.

18               THE COURT:  -- because you're trying to get off

19   the train a little early.  Okay.  You're saying, well, wait,

20   $21 million, this swap might move in the other direction.

21   That's not liability.  That's damages.  That's you look at

22   yield curves.  You try to figure out what's going to happen.

23               I agree with you, the right measure of damages may

24   not be a screenshot at a particular moment.

25               MR. ROLL:  Right.

Page 20

1          THE COURT:  But you flip to, listen, the past is

2     the past.  Here's where we are now and who knows what's

3     going to happen to the position in the future.  We may not

4     always be up 21 and LCH is now in the driver's seat.

5          But under the scenario pled in the complaint, this

6     is Merrill's doing.  So that's --

7          MR. ROLL:  That's the allegation.

8          THE COURT:  Right.

9          MR. ROLL:  That, of course, is the allegation.

10         THE COURT:  That's the allegation.

11         MR. ROLL:  But there's no dispute that we're still

12    on -- there really shouldn't be any dispute.  He may say

13    there is, but there really shouldn't be any dispute that

14    we're still on the hook to LCH.  And even if there is a

15    dispute, it's something we can prove in a nano second.

16         And, you know, that takes us into two areas.  One,

17    unjust enrichment and their other claims we're trying to

18    dismiss here are equitable in nature.  And so, you know,

19    they can't -- it can't be said to be equitable for them to

20    get their money back while we're still on the hook and still

21    at risk to another party without that party actually being

22    here.  And that's the equity.

23         The more specific, the more technically legal

24    point is embedded in Rule 19, and Rule 19 gives us the

25    ability to say to this Court there is a party here that

Page 21

1   under the terminology used in the rule is a required party.

2   It used to be called an indispensible party. It's a required

3   party because complete relief cannot be afforded to these

4   parties here, the existing parties in this case, which

5   includes us, without LCH being present.

6          And the reason for that is for them to prevail,

7   for LBSF to prevail it has to be the case that this Court

8   determines that those transactions are unenforceable, the

9   ones involving LCH, whether it's our doing, their doing, a

10  mistake, whether it was innocent or not.

11          THE COURT:  Yeah.  But that's where -- but that's

12  where I don't -- I don't necessarily agree because if

13  Merrill entered into a transaction that LCH booked in

14  reliance on it being a "real transaction," then as between

15  Merrill and LCH, sure, it's enforceable.  But Lehman, under

16  this scenario, was an innocent bystander.

17          So Merrill and Lehman, you make your peace with

18  each other, and Merrill and LCH, you -- Merrill has to live

19  with the consequences of what it did and that's not Lehman's

20  problem.

21          MR. ROLL:  But we're -- we would be happy to do

22  that if the required party were actually here and we were

23  allowed to put everything in one place, which is what Rule

24  19 contemplates.  The reason for the doctrine of

25  indispensable parties and required parties is to avoid

1    piecemeal litigation, to be able to have complete relief --

2              THE COURT:  But there's --

3              MR. ROLL:  -- afforded to all parties in front of

4    the Court.

5              THE COURT:  But there's -- but the complete relief

6    aspect of it, I'm -- there's nothing that I would have to be

7    ordering LCH to do that would be problematic insofar as it

8    would be absent.  The -- at the end of the trial,

9    hypothetically, if I were to conclude that the allegation

10   was true.  It was Merrill's unilateral conduct.  There was

11   no trade.  There was no original trade, right?

12             MR. ROLL:  Uh-huh.

13             THE COURT:  There would be a damages component and

14   Merrill would disgorge to Lehman some amount, and then it

15   could go off and settle up with LCH.

16             MR. ROLL:  Settle up in that -- in that construct,

17   Your Honor, with all due respect entails us going somewhere

18   else, following the venue provision in the LCH regulations,

19   which LBSF chose not to do and suing them in England for

20   something that LBSF as the plaintiff here should have been

21   required to do for us and for them and for the process.

22             THE COURT:  Why?

23             MR. ROLL:  Because Rule 19 says if there's a

24   required party it must be joined if it can be and if it

25   can't be joined --

Page 23

1              THE COURT:  But it's circular.

2              MR. ROLL:  -- it should be --

3              THE COURT:  It's circular, your argument.

4              MR. ROLL:  But -- not circular, but the circle

5      starts with is it a required party.  And it is a required

6      party because the cases are legion and will say if you have

7      at issue a contract or contracts that involves a party who

8      is not before the Court, that party is almost invariably a

9      required party, an indispensable party.

10             If the interests of that party or any of the

11     parties to the contract itself would be adjudicated in the

12     proceeding at hand, all parties to that contract should be

13     present in front of the court.  That's all we're saying.

14     They should have brought LCH into this case themselves.  It

15     should not be our burden.  This is not a tort case.  We're

16     not seeking contribution as joint tortfeasors.  This is

17     something different from that.  I think that's -- that's the

18     construct I think they -- LBSF would like all of us to

19     adopt.

20             But that's not this.  Our liability to LBSF, if it

21     were to happen here, would be entirely different from what

22     we would be going after LCH for.  What would our claim

23     against LCH be at that point; that we -- that we were found

24     to have been unjustly -- found to have unjustly enriched

25     LBSF.  But there's nothing that LCH did to cause that.  So

Page 24

```
1    --
2              THE COURT:  In --
3              MR. ROLL:  -- I don't know how we could --
4              THE COURT:  But that -- but so -- but then you
5    will bear the consequences of your wrongful act.
6              MR. ROLL:  If --
7              THE COURT:  So if a -- if Merrill Lynch made up
8    the trade, and I can't say it enough times.  This is just
9    for the purposes of the --
10             MR. ROLL:  Understood.
11             THE COURT:  -- argument.  Okay.  If Merrill Lynch
12   made up the trade, it should not be Lehman's problem.  Okay.
13   If -- if I induce you -- if I induce you to -- if I
14   fraudulently induce you to enter a contract with another
15   party and the other party is innocent, right, and I'm
16   damaged as a result of -- you're damaged as a result of my
17   fraudulent inducement, I mean, you -- if you've done
18   something wrong you should be held to account.  LCH, if --
19   it will say how was I supposed to know, Merrill, that you
20   made up this trade.  Leave me alone.
21             MR. ROLL:  And it can say all of that in this
22   courtroom as a party in this case.
23             THE COURT:  But why should Merrill be -- again,
24   hypothetically -- why should Merrill be entitled to deprive
25   Lehman of its chosen forum and make Lehman go to England
```

Page 25

1   where presumably you would submit to jurisdiction.  Okay.

2   Why should Lehman have to do that when you -- when

3   hypothetically under this hypothetical you're the wrongdoer?

4           MR. ROLL:  Well, two reasons.  One, we're both

5   members of the LCH organization.  We both signed on to their

6   regulations which requires that venue.

7           Secondly, we're not the ones who sat on this claim

8   -- and I'll use that term deliberately -- sat on this claim

9   for years until now to raise it, until there are questions

10  with respect to the statute of limitations and so forth.

11          THE COURT:  But you -- but that's -- but that

12  argument also gets -- to me gets into a cul-de-sac because

13  your position is that you didn't make up the trade.  Lehman

14  actually gave the data.  So if that's the case, nobody gets

15  to recover.  If that's true, if those facts are true, LCH is

16  completely free and rights over against LCH are completely

17  irrelevant --

18          MR. ROLL:  That's --

19          THE COURT:  -- because no one's got a claim

20  against LCH.  So the, gee, that's really not fair because we

21  -- they waited too long and now we can't go against LCH,

22  it's binary.  Either Merrill made up the trade or it didn't.

23  If Merrill made up the trade, it ought not be Lehman's

24  problem how you settle up with LCH or not.  If Lehman is

25  wrong and Lehman put the trade on, too bad for them.

Page 26

```
 1                MR. ROLL:  Right.

 2                THE COURT:  They get nothing.

 3                MR. ROLL:  I'm much more concerned about the

 4     scenario where Lehman is right to take Your Honor's

 5     hypothetical.  If Lehman is right that these were done

 6     improperly --

 7                THE COURT:  Yeah.

 8                MR. ROLL:  -- and what they're trying to get the

 9     Court to do is order these agreements to have been

10     improperly done --

11                THE COURT:  That's not what I'm -- that's not --

12     that's -- I wouldn't do that.

13                MR. ROLL:  But how -- how else would Your Honor do

14     it?  There would -- if they -- if the agreements remained in

15     place, then they would still be -- but they're not -- they

16     don't exist.  They're not here anymore to do this.

17                THE COURT:  Right.

18                MR. ROLL:  Their portfolio was auctioned off.

19     It's in the hands of the third party at this point.

20                THE COURT:  Exactly.

21                MR. ROLL:  Which --

22                THE COURT:  On --

23                MR. ROLL:  Which is also not before the Court.

24                THE COURT:  Exactly.  Life goes on between those

25     two parties.
```

Page 27

1                    MR. ROLL:  Well, it shouldn't --

2                    THE COURT:  So now -- so do I have to bring in

3        that party, too?

4                    MR. ROLL:  Maybe.  But --

5                    THE COURT:  I think so.

6                    MR. ROLL:  -- but that's not the motion we've

7        made.

8                    THE COURT:  I --

9                    MR. ROLL:  Based on the position --

10                   THE COURT:  I understand.  But if I have to bring

11       in LCH, then I have to bring in whoever brought Lehman's

12       position.

13                   MR. ROLL:  Well, if Your Honor is saying or were

14       to say hypothetically at some point that there's no relief

15       to be had against LCH in this courtroom, then there may have

16       to be somebody else that we look to, whether it's LCH or

17       Goldman.  It's Goldman who actually bought the portfolio.

18                   But that's -- I think that's a detour that I need

19       not get into.  We're not moving on that ground.  It's only

20       LCH.  It is based on the position they have taken throughout

21       this litigation that LCH has been involved here.  They

22       haven't raised the other party.

23                   THE COURT:  But if I agree with you on LCH, then I

24       have to bring Goldman in, too.

25                   MR. ROLL:  No, you -- no.  I think not, Your

1     Honor, because the -- because complete relief between these

2     two parties can be afforded by the Court if LCH is here

3     because Your Honor will either find that the contracts with

4     LCH are valid today or they're invalid because of something

5     that was done or not done, and we would go from there.

6              A judgment would be fashioned in somebody's favor

7     and against somebody else on the basis of --

8              THE COURT:  I've just articulated the --

9              MR. ROLL:  -- that.

10             THE COURT:  -- way I would fashion the judgment.

11    The judgment would be that Merrill fabricated the trade

12    completely and entirely without Lehman's knowledge.  This

13    caused Lehman to have -- be out the $21 million as of now.

14    What's going to happen over -- what's going to happen -- in

15    terms of a windfall to -- they're positing that.  That's the

16    windfall to Merrill.  Merrill says, well, but that's not the

17    windfall because who knows how the position is going to

18    shift over time, seg. the fact that we're still in this

19    trade with Goldman.  So we would pull out our handy dandy

20    curves and we would try to figure out what's going to happen

21    over time.  And that would be the number and everyone else,

22    life would go on.

23             And I've got absolutely nothing to say about it.

24    It would be purely damages in the nature of a tort for

25    having gotten Lehman into a trade in which it did not want

1    to be.

2            MR. ROLL:  But to do that Your Honor would have to

3    invalidate the trades that they're -- that they're a party

4    to or were a party to because that's -- it was pursuant to

5    those agreements that the money flowed from them to LCH and

6    from LCH to us.

7            So it's the flow of funds that they're trying to

8    reverse.  It's not some -- they've very careful about this.

9    If you look at the complaint they're not actually alleging

10   tortuous or fraudulent activity in there.

11           THE COURT:  No.

12           MR. ROLL:  It's only in the argumentation here

13   that --

14           THE COURT:  All they -- they just say as a direct

15   and proximate cause of the conduct LBSF has been -- as a

16   result of their unjust enrichment LBSF has been injured.

17           MR. ROLL:  Right.  But we didn't -- it doesn't say

18   we defrauded them.  It --

19           THE COURT:  It doesn't.

20           MR. ROLL:  -- doesn't say extra contractual

21   misconduct as it does in the brief.  It doesn't say it in

22   the complaint, which I would submit they drafted and filed

23   under a slightly different standard than what they did on --

24   with respect to the brief, and for good reason, because

25   they're not -- cause we -- they don't have any evidence.

Page 30

1    There is no evidence of that, of any fraudulent intent.

2           THE COURT:  I -- you're putting a word in my

3    mouth.  I'm not saying that there's fraud.  I'm just saying

4    that there -- that there was a trade put on by Merrill, for

5    the purposes of this argument, a trade put on by Merrill --

6           MR. ROLL:  Right.

7           THE COURT:  -- that was a mistake, that was wrong

8    --

9           MR. ROLL:  Right.

10           THE COURT:  -- that was not -- that Lehman did not

11    know about and was not on board with.  And that under the

12    most basic concepts of unjust enrichment --

13           MR. ROLL:  I -- if I may, Your Honor, I was simply

14    reacting to the Court's statement that there be a tort like

15    judgment here.  My point is simply that they haven't alleged

16    any tort claim.  They've couched these equitable claims as

17    quasi contractual and the reason for that is at most I think

18    they might be able to prove that there was a mistake.

19           THE COURT:  Okay.

20           MR. ROLL:  Not that there was a tort.  A mistake

21    is different.  We're not talking about --

22           THE COURT:  But if there's a mistake aren't they

23    entitled to be made whole --

24           MR. ROLL:  If --

25           THE COURT:  -- if the mistake was occasioned by

1    Merrill's conduct?

2            MR. ROLL:  And -- perhaps.  And my only point here

3    and the only point of this motion is that the process of

4    making them whole in that scenario, you know, without

5    underlying fraud or something like that, has to revolve

6    around the Court finding that those trades, the live trades

7    with LCH are unenforceable.  So they are, in effect --

8    they've taken issue with this, I know.  And we said it a

9    lot, but I'll say it again and again.  They are, in effect,

10   seeking recession of those trades as a basis to recover

11   those dollars back on a quasi contractual theory, not on a

12   tort theory, not on a tort damages theory.

13           THE COURT:  They're -- they don't have a -- you --

14   they do not -- there's no election for rescission.  There's

15   no cause of action for rescission.

16           MR. ROLL:  That's absolutely correct.  But they

17   speak several times in the complaint --

18           THE COURT:  You -- you made that -- you're making

19   that argument because it's a hook on which you can then say

20   I need to bring in LCH because then they're the party to the

21   contract which I have to rescind.

22           MR. ROLL:  Well, because they -- and I know they

23   don't have a claim that says rescission, but, in effect,

24   they're asking for rescission and they admit that several

25   times starting in paragraph 6 where they say, "in the

Page 32

```
 1    alternative if the Court does find that these trades are

 2    enforceable," clearly implying that -- the first alternative

 3    is the Court finding them not enforceable.  They know, and I

 4    submit that they knew this when they filed this claim, the

 5    way to get the kind of equitable relief on a quasi

 6    contractual theory they're looking for is to invalidate the

 7    contract.  It's to invalidate the actual contract and

 8    substitute in its place some kind of quasi contractual

 9    situation.  That's the only way it can work for them.

10            And if that's what they're attempting to do, and I

11    submit respectfully, Your Honor, if you really parse the

12    complaint, they acknowledge that; that that is what they're

13    trying to do.  Then under Rule 19 LCH has to be here.  It is

14    a required party because you cannot afford complete relief

15    to these two parties without the other party to the sets of

16    contracts being here.  Even if the ultimate judgment doesn't

17    require them to do anything or change its position, they

18    have to be here to allow complete relief between these

19    parties.

20            Without that we -- you know, we end up --

21            THE COURT:  Even if the ultimate --

22            MR. ROLL:  -- chasing them somewhere else.

23            THE COURT:  Even if the ultimate judgment doesn't

24    require them to do anything, why, then why?  All the

25    ultimate judgment would require is for you to pay Lehman
```

Page 33

1    money.  That's all.  Everybody else can go off their -- on

2    their merry way, go to England, do whatever they want, keep

3    the trade in place.

4           MR. ROLL:  Well --

5           THE COURT:  It doesn't require anybody else to do

6    anything except potentially Merrill to pay some sum of money

7    to Lehman --

8           MR. ROLL:  To somebody else.

9           THE COURT:  I'm sorry.

10           MR. ROLL:  To somebody else if the trades end up

11    the wrong way, the live trades -- the trades that are still

12    live.

13           THE COURT:  But we can -- but that doesn't require

14    anything but experts talking about -- trying to predict what

15    would have happened -- what would subsequently --

16           MR. ROLL:  Right.

17           THE COURT:  -- happen to the trades because if

18    ultimately you could demonstrate, for example, that Lehman

19    would have been in the money, I mean, that just affects the

20    -- that just affects the damage number.

21           MR. ROLL:  I understand that.  But they -- maybe

22    I'm just not -- I apologize for not being better  at

23    articulating this.

24           THE COURT:  No.

25           MR. ROLL:  This is, as Your Honor said at the top

```
 1    --

 2              THE COURT:  It's fun.

 3              MR. ROLL:  This is fun.

 4         (Laughter)

 5              MR. ROLL:  In a way it's fun, more fun for the

 6    Court than it is for me, just saying.

 7              THE COURT:  Don't be so sure of that.

 8              MR. ROLL:  Maybe I shouldn't assume too much.

 9              THE COURT:  No.

10              MR. ROLL:  But -- now I've lost my train of

11    thought.

12              THE COURT:  I'm sorry.

13              MR. ROLL:  It was really a good point.

14         (Laughter)

15              THE COURT:  It was the winning point, right?

16              MR. ROLL:  It was the winning point.

17              Here's the point I was trying to make, starting to

18    make.  You know, they're asking for their money back because

19    they -- on a net basis they're out $21 million, but they

20    don't dispute that during the course of the life of these

21    trades there were bookings back and forth.

22              THE COURT:  Yes, there were.

23              MR. ROLL:  There were actually legitimately done

24    pursuant to the terms of those trades.  Like --

25              THE COURT:  Okay.  But hold on.  But now you're
```

Page 35

```
 1    beginning to sound like Madoff.  Okay.

 2              MR. ROLL:  Oh, no.

 3              THE COURT:  Okay.  Now legitimate with them

 4    pursuant to the terms of the trade, the trade that shouldn't

 5    have existed in the first place.  That's -- so it's echos of

 6    Madoff, right, where you say, look, I made all this money.

 7    I mean, the -- you know, Madoff Securities booked all these

 8    trades.  Actually, no, there were no trades.

 9              So it's different, of course.

10              MR. ROLL:  Right.

11              THE COURT:  Okay.  But when you get down to the

12    predicate and you're getting to another important point

13    which is this near miss of figuring out that something was

14    wrong because of the return payment.  Right.  So that was a

15    moment in time pre-Lehman default --

16              MR. ROLL:  Right.

17              THE COURT:  -- where there was a little red flag

18    that went up.

19              MR. ROLL:  For both sides.

20              THE COURT:  Right.

21              MR. ROLL:  For both parties, right.

22              THE COURT:  That said, uh-oh, something's not

23    right here.  And then nothing happened.

24              MR. ROLL:  That's right.

25              THE COURT:  Right.
```

1          MR. ROLL:  So -- but, again, it's -- I -- whether

2     it's that set of events or the ones that relate to the $21

3     million, we're still talking about a circumstance where, as

4     Your Honor articulated a few minutes ago, the trade should

5     not have happened.  It should not have existed.  For

6     whatever reason, if that's the case, if that's the case for

7     whatever reason the appropriate result is effectively

8     rescission or a declaration from the Court that the

9     transactions are unenforceable and invalid, invalid from the

10    beginning.  That's the way they get their money back.

11          It's -- that's why we keep coming back to

12    rescission and that -- and that really is the response to

13    Your Honor's Madoff point --

14          THE COURT:  So what do we do about Goldman?

15          MR. ROLL:  At -- we're not asking for --

16          THE COURT:  Suppose I -- suppose -- but -- so what

17    do I do?  What do I do about Goldman?  I've got -- I've got

18    a -- you know, a bona fide purchaser who presumably bought

19    the -- Lehman's position without any knowledge of any of

20    this, I'll assume.

21          MR. ROLL:  Right.

22          THE COURT:  Right.  You say, great.  Bring LCH in,

23    terminate the trade.  What do I do about Goldman?  Who takes

24    care of them?

25          MR. ROLL:  I don't know.  I can't speak for

Page 37

1    Goldman in that circumstance, but I would note that at that

2    point we wouldn't have -- we wouldn't have a beef with them

3    in the conventional sense.  We would have exposure to them

4    as a result of the trade still being in existence, but --

5            THE COURT:  I'm rescinding -- I'm rescinding it.

6    So there's -- so I'm -- now we'll come back full circle.

7            MR. ROLL:  We have.

8            THE COURT:  Goldman is going to say, I guess

9    depending upon which way the wind is blowing, Goldman is

10   going to say I got a good trade.  You're not rescinding

11   anything.

12           So the very relief that you're saying I should

13   bring in LCH to afford in reality I could not do because

14   Goldman's yet another innocent party.

15           MR. ROLL:  Well, they're one step removed I --

16           THE COURT:  Sure.

17           MR. ROLL:  -- because they're not actually parties

18   to --

19           THE COURT:  Right.  So the only potential party

20   that did or did not do something unacceptable --

21           MR. ROLL:  Well, when Your Honor says --

22           THE COURT:  -- is Merrill.

23           MR. ROLL:  Not --

24           THE COURT:  That's the only allegation of any

25   party.  There's no allegation that Goldman did anything

Page 38

1    wrong.  There's no allegation that LCH did anything wrong.

2    The only party is Merrill.

3            MR. ROLL:  Well --

4            THE COURT:  Which Merrill is now saying, you know,

5    this is so complicated and there's all these required

6    parties and look at the LCH regulations say you've got to go

7    to London so Merrill --

8            MR. ROLL:  Right.

9            THE COURT:  -- has got to go to London.  If you

10   get to the second part of Rule 19 it doesn't really feel

11   like it satisfies the equitable prong of the rule that even

12   if I were to find that another party were required that the

13   fairest thing would be to dismiss.

14           MR. ROLL:  Well, there is -- there is -- just to

15   pick up where Your Honor started that thought, and there was

16   a lot in there.  There is an allegation that's more than

17   just Merrill.  It's an allegation in our answer.  It's an

18   allegation in our position.  It wasn't just us.  We say as a

19   matter of factual allegation, and you know that's not what

20   we're citing now, that it wasn't just us.  So that -- all of

21   that is still in front of us.  So it's not as if that's the

22   only allegation out there.

23           Given that fact, I think that's -- that issue

24   being joined, that issue being in existence, we're not

25   asking the Court to resolve it.  But the existence of that

Page 39

```
 1    issue, I think, gives the Court yet another basis in which

 2    to say we really do need the other party to these trades

 3    here because Merrill says one thing, LBSF says another.  We

 4    need to know what LCH says about it, too.  And we need to

 5    have them here to fashion whatever relief is ultimately

 6    fashioned with respect to the enforceability --

 7              THE COURT:  So why can't the two of you --

 8              MR. ROLL:  -- of all those contracts.

 9              THE COURT:  -- go to London and take -- get -- we

10    can -- I can issue letters rogatory and you can get -- do

11    document discovery.  You could take a deposition of whoever

12    has any knowledge if you can -- on the unlikely chance you

13    can actually find someone who has any knowledge, and then we

14    would have LCH's story.  They, of course, would not be

15    before the Court as a party --

16              MR. ROLL:  Right.

17              THE COURT:  -- you know, against the backdrop of

18    my view as I'm expressing it in this part of the argument

19    that we don't really need them.  But you would have their

20    records --

21              MR. ROLL:  Right.

22              THE COURT:  -- their part of the story.  We would

23    have your records.  We would have Lehman's records.  If

24    there is nothing, as seems to be the case, then as a matter

25    of law I would have to decide what -- you know, what the
```

Page 40

1    answer is.

2              MR. ROLL:  Well, if we got to that point that's

3    clearly what we would do if we get -- if this motion is

4    denied.  If we proceed in this court without them, that's

5    precisely what we'll do.  We'll -- they will be part of the

6    discovery that could either lead to a summary judgment

7    motion involving them.  There will undoubtedly be a summary

8    judgment motion on the settlement agreement point because

9    Your Honor indicated last time that it's facty, if Your

10   Honor recalls using that term, which we now use all the

11   time, by the way.

12             THE COURT:  Some of the judges in the District

13   Court use it as well.  I don't know -- I --

14             MR. ROLL:  As you've started a trend.

15             THE COURT:  It's a very good term.

16             MR. ROLL:  It's a good term.  And I was pleased to

17   see that the reporter rendered it correctly in the

18   transcript throughout, so I can actually point to it.

19             So it's -- that was Your Honor's position at that

20   time and we would, on the basis of that, seek summary

21   judgment on that claim as well as probably this one based on

22   what I assume we would find out in terms of the lack of

23   nefarious conduct on Merrill's part.

24             And I suppose at the end of the day if we --

25             THE COURT:  But I don't --

Page 41

1              MR. ROLL:  -- if we win --

2              THE COURT:  Do I think that -- do I -- I mean, I

3      have no reason to believe there was anything nefarious.

4      Something happened.  We don't know what it is.

5              MR. ROLL:  We don't know what and we don't know

6      who.  And I'm ready to believe at this point that in X

7      months down the road after summary judgment or after trial

8      we're going to win.  I'm perfectly prepared to believe that.

9              The real question is do we -- should we have to go

10     that way?  Should we have to endure the risk of losing in

11     that circumstance without the Court's ability to say here's

12     what I'm saying with respect to all of these contracts.

13     And that's -- that's really all this is about.

14              I -- you know, I do want the record to clearly

15     reflect that, you know, we do take issue with their position

16     on the merits and we --

17              THE COURT:  Sure.  Of course.

18              MR. ROLL:  -- will fight them on the beaches and

19     all of that, and I -- I do expect that we will find that

20     there's no liability on Merrill's part.  But --

21              THE COURT:  Sure.

22              MR. ROLL:  -- our point today is simply that to

23     get to that point in the fairest possible way and the way

24     that actually meshes with what Rule 19 says and the case law

25     interpreting it says, we need LCH here or we need LCH in

Page 42

1    front of some forum.  There's a separate issue of where that

2    should be.  I mean, we would say they can't be joined here

3    because of the venue provision.  But --

4              THE COURT:  But the -- I think, and let me double

5    check.  I think the set of regs that you attached are the

6    current regs.

7              MR. ROLL:  They are.

8              THE COURT:  So do you know if they in that -- at

9    least in that respect are identical to the regs that would

10   have governed at the time the trades were put on?

11             MR. ROLL:  I haven't studied them as closely as

12   others in my office and it won't surprise the Court to hear

13   it.  But I believe that in most material respects -- most

14   respects material to what we're doing here today they are

15   the same.

16             I also think that with respect to the venue and so

17   forth, if you're talking about an action now I think the

18   venue -- the choice of forum, the forum selection provision

19   in today's regs would be the one that we should follow in

20   any event.

21             THE COURT:  Really?

22             MR. ROLL:  I think if the claim is brought today

23   --

24             THE COURT:  Really?  Well, that's a whole

25   different kettle of fish.  If the regs at the time -- that

Page 43

1    wouldn't be what -- what the parties agreed to.  I mean, the

2    regs in -- the regs that were in effect --

3            MR. ROLL:  Well, if they're still --

4            THE COURT:  -- at the time the trades were --

5            MR. ROLL:  I'm presuming continuing membership in

6    the organization, so you --

7            THE COURT:  So --

8            MR. ROLL:  -- you're just -- you're bound on a

9    continuous basis by what's in there.  That's my point.  So

10   if it --

11           THE COURT:  Well, yeah.  But you're assuming a

12   lot.  I mean --

13           MR. ROLL:  Because this is a forum selection

14   provision that's not in the underlying agreement.  It's in a

15   set of regulations that governs the actions of members to

16   the organization.

17           THE COURT:  Sure.  But the question is whether

18   then the subsequent regs, it -- whether there's a current

19   that gets dropped and with respect to transactions that were

20   entered into under the old regs are governed by that versus

21   kind of an ovation saying that, well, back then for the

22   purposes of that trade I didn't agree to exclusive

23   jurisdiction and venue --

24           MR. ROLL:  Right.

25           THE COURT:  -- in England, but now --

1              MR. ROLL:  Well, if that's -- if that's actually

2       what we're down to, Your Honor, I don't want to speak out of

3       turn.  I don't know the answer specifically and we would --

4              THE COURT:  Well, it's part of --

5              MR. ROLL:  -- have to ask --

6              THE COURT:  It's kind of an important point

7       because if, in fact, LCH can be brought here because but for

8       that they could clearly be -- there's jurisdiction, right?

9       I mean, you're not speaking for them.

10             MR. ROLL:  I'm not speaking for them just as I'm

11      not speaking for Goldman.  I want the record to clearly

12      reflect that, too.

13             THE COURT:  Right.

14         (Laughter)

15             MR. ROLL:  It's easy for me to talk about them

16      when they're not here.

17             THE COURT:  Then you would really be in trouble.

18      Right.

19             MR. ROLL:  Right.

20             THE COURT:  But can you see why --

21             MR. ROLL:  I do.  But -- and I believe -- and

22      again I want to be candid with the Court.  I believe but I'm

23      not certain that the provision --

24             THE COURT:  Okay.

25             MR. ROLL:  -- is the same.

Page 45

 1            THE COURT:  Well, maybe that's something that

 2   after we're done here today probably over Lehman's objection

 3   you could submit the regulations that were then in effect.

 4            MR. ROLL:  Right.

 5            THE COURT:  And subject to your arguments that it

 6   doesn't matter.

 7            MR. ROLL:  Okay.  That we will do.

 8            THE COURT:  Okay.  Anything else?

 9            MR. ROLL:  I feel like there should be something

10   else, but --

11            THE COURT:  Well, you can wait to hear --

12            MR. ROLL:  I'll wait to hear what Mr. Maher has to

13   say.

14            THE COURT:  -- the hard time that I give Mr.

15   Maher.

16            MR. ROLL:  And I hope he has as much fun as I did.

17            Thank you, Your Honor.

18            THE COURT:  Thank you.

19            It looks like you're being given the answer over

20   there.

21            MR. MAHER:  Good afternoon, Your Honor.  Bill

22   Maher on behalf of Lehman Brothers Special Financing.

23            A year and three quarters ago the Second Circuit

24   in the Marville (ph) v Kirby case held that Rule 19, which

25   is why we're here today, recognizes "exceptional

Page 46

1     circumstances" -- emphasis on exceptional circumstances --

2     "in which a plaintiff's choice of parties or forum must give

3     way because of an absent party's interest in the outcome of

4     the action or involvement in the underlying dispute."

5              There are seven cases from the Second Circuit that

6     address indispensable party that are cited in the parties'

7     briefs, Your Honor.  All seven of them find that the

8     purported required indispensable party is, in fact, not

9     required and not indispensable, all seven.

10             Three of those cases were cases in which the

11    District Court found that the party was indispensable and

12    the Second Circuit decided to the contrary.  He has no cases

13    from the Second Circuit supporting his position.

14             You need to read two cases -- and I want to focus

15    very clearly on Rule 19.  You need to read two cases from

16    the Second Circuit to rule in our favor on this motion.  The

17    first is the Peragreen (ph) case and what it says is under

18    Rule 19(a)(1)(A), which is the only part of Rule 19(a) he is

19    focused on because he said this in footnote 11 in his brief,

20    in his reply brief, he says --

21             THE COURT:  Hold on.  Let me turn to your -- what

22    you're citing.

23        (Pause)

24             MR. MAHER:  It's on page 9, Your Honor.

25             THE COURT:  Yeah.  Yeah. I'm there.

1          MR. MAHER:  It says midway through that footnote,

2     "Notably MLCS has never argued the requirements of Rule

3     19(a)(1)(B) are satisfied here, and has relied solely on the

4     complete relief prong in Rule 19(a)(1)(A)."

5          So they are not arguing and they, of course,

6     cannot that LCH is claiming an interest in this proceeding

7     under 19(a)(1)(B) because it is not.  They are seeking that

8     this Court is required -- they are a required party, LCH,

9     under Rule 19(a)(1)(A) on the grounds "in that person's

10    absence the Court cannot afford complete relief among

11    existing parties."

12         The Second Circuit has defined what that means in

13    the Peragreen case.  That was in 1996.  And in the Peragreen

14    case what they decided is that "Complete relief can be

15    accorded to the parties to the litigation under 19(a)(1)(A)

16    if the non-party" -- as you said earlier Your Honor -- "if

17    the non-party is not required to do anything or to change

18    any of its positions."

19         That is the touch stone.  That is the test for --

20         THE COURT:  But what Mr. Roll said is that, in

21    fact, I would be requiring LCH to change its position

22    because a judgment in Lehman's favor -- and I'm using Lehman

23    instead of LBSF -- in Lehman's favor would require revoking,

24    rescinding the trade, the contract.  So why isn't he right?

25         MR. MAHER:  He's not right because you're not

Page 48

1    required, as you said earlier, to revoke the trade at all.

2    All it is is an unjust enrichment claim saying that the

3    monies that they were given improperly because this was not

4    a trade that was in existence.  They concede that.  There's

5    no underlying documentation that was in the prior motion.

6              Essentially, Judge, what happened here is they

7    said there's a mile race and I'm starting out one-tenth of a

8    mile from the finish.  And Lehman, here, you're starting at

9    the one-mile line.  That's the trade.  We're up 20 -- all

10   the trades start flat.  Every trade starts flat.  It may

11   change from thereafter, but it doesn't start where I'm in

12   the hole 21 million when the trade starts.  That's their

13   position.  It's not a rescission.  It's a you took $21

14   million of my money for a trade that never happened that has

15   nothing to do with LCH.

16             It may be, as you said, that LCH and Merrill have

17   a legitimate trade.  He could have swapped out of that trade

18   anytime he wanted.  He wanted to let it roll.  He wanted to

19   let it roll with $21 million of my money.  And we are

20   objecting to that.

21             THE COURT:  But now he's saying that it's going to

22   continue to roll because now Goldman is standing in Lehman's

23   shoes, right?

24             MR. MAHER:  Yes.

25             THE COURT:  So it's going to continue to roll to

1    the extent that it does, until it rolls off, so to speak the

2    trade might go in the other direction and why would it be

3    fair to give you $21 million when they don't end up $21

4    million up?  And that's where you get to my, look at the

5    yield curve, figure it out.

6              MR. MAHER:  Right.

7              THE COURT:  Do you agree with that?

8              MR. MAHER:  No.

9              THE COURT:  No?

10             MR. MAHER:  And here's why.

11             THE COURT:  You want $21 million.

12             MR. MAHER:  Yes.  However, we don't even get to

13   all of these hypothetical factual situations that counsel

14   has posited because before you there are no facts.  There

15   are no facts that Merrill is still on this trade.  There's

16   no facts that Goldman bought out the position.  There's no

17   facts of anything that he's talking about.  He's submitted

18   zero facts to you on this record, zero.  So all we have is

19   the pleading.

20             Now, of course, this motion could have been

21   brought when he brought the prior motion because there are

22   no facts he's bringing in.  What did he do?  He attached an

23   email to a reply brief that was handed to him during the

24   course of settlement discussions where Lehman is saying,

25   we're trying to figure out what's going on.  And he's using

1    that as factual evidence before the Court on a motion to

2    dismiss?  There are no facts before the Court.  That's why

3    even if you get past the 19(a)(1)(A) inquiry, which you

4    cannot because under Peragreen LCH is not being required to

5    do anything or change any of its positions as a result of

6    this litigation.

7            Separately, there may be a separate litigation.

8    But under 19(b) he needs facts to be able to prove the

9    equities and there are no facts.  So if you ask me did

10   Goldman change its position, did -- is Merrill still on the

11   -- I have no idea.  He may know.  I don't know.  That's why

12   we need to discover what the facts are, Your Honor, and

13   bring them to you.  All right.

14           But -- so 19(b), even if he could satisfy

15   19(a)(1)(A), he doesn't even -- he doesn't even -- he's made

16   no showing on 19(b) and he has the burden of proof so he

17   loses even if he could satisfy 19(a)(1)(A).  But he can't

18   and that's because of Peragreen on the standard and the

19   Second Circuit's clear decision in MasterCard v Visa.

20   Right.

21           MasterCard v Visa, this is a 2006 decision.  What

22   the Second Circuit clearly said in MasterCard v Visa is

23   okay, I have a litigation here in which MasterCard is suing

24   FIFA for sponsorship rights to the World Cup.  FIFA

25   subsequently came them to Visa.  And Visa knocks on the

Page 51

```
 1     door, unlike here well LCH is not knocking on the door

 2     saying, I want to be part of this case.  I have an interest.

 3     Visa says, knock, knock, knock, I have an interest.  So the

 4     party who purportedly was the indispensable party was there

 5     knocking on the door saying, I want in.  Let me in.  And the

 6     Second Circuit says, we don't need you.  You are not an

 7     indispensible party because the rights under this contract

 8     between MasterCard and FIFA can be determined without you

 9     being here.

10          Now there may be collateral consequences for you.

11     No question.  What they're saying here, collateral

12     consequences, I may have issues with my part of the trade

13     with LCH.  Second Circuit says it doesn't matter.  It

14     doesn't matter if there are subsequent collateral

15     consequences under a separate contract.  That was as a

16     result -- what was caused was not by the absence of the

17     indispensible party.  What caused this was FIFA granted

18     rights to a second party that they were not able to grant.

19     That was the cause of this, not the fact that the party is

20     not here.

21          Just as in this case, what caused this, Your

22     Honor, is that Merrill put on what we claim are fictitious

23     trades.  The consequences thereafter flow from its act in

24     that regard.  There may have been an intermediary.  There

25     may have been monies flowed back and forth, but it all comes
```

Page 52

1    from that.

2              So if you just read those two cases, Peragreen and

3    MasterCard v Visa, directly on point refutes everything that

4    he said.

5              THE COURT:  But then that gets back to the issue

6    of where Mr. Roll spent a lot of his time which was -- and

7    if he gets up on rebuttal he's -- I would say he might say,

8    did you hear that, Mr. Maher admitted my point.  He's saying

9    that I'm -- you have to rule that the contracts are

10   unenforceable.

11             MR. MAHER:  No.

12             THE COURT:  That's the difference with Visa and

13   MasterCard.

14             MR. MAHER:  No.

15             THE COURT:  Right?

16             MR. MAHER:  No.  No.  What I -- there's -- I'm not

17   saying and I've never said that you have to rule that the

18   contracts are unenforceable.  You had said earlier and I

19   agreed with it 100 percent.  All I'm saying is there was a

20   mistake at least, at least, maybe more, when we get into

21   discovery maybe we'll find more, but there's at least a

22   mistake that happened with respect to trades that never

23   existed being put on.

24             As a result of that, money that was Lehman's, was

25   taken from Lehman and was given to the benefit of Merrill

Page 53

1      Lynch.

2                   THE COURT:  So the judgment that was --

3                   MR. MAHER:  And I want that money back.

4                   THE COURT:  Right.  But the judgment that would

5      come out would say there exists and there continues to exist

6      a valid and enforceable contract with LCH?

7                   MR. MAHER:  No.  Why does that have to be part of

8      this at all?  All there has to be --

9                   THE COURT:  But it's not going to say that that's

10     unenforceable?

11                  MR. MAHER:  I don't think you need to say anything

12     about the enforceability of the LCH contract.  All you have

13     to say is the trade was non-existent, which I think they've

14     conceded there's no underlying documentation for it.  Mr.

15     Roll was up here at argument last time.

16                  THE COURT:  I --

17                  MR. MAHER:  He --

18                  THE COURT:  I think --

19                  MR. MAHER:  He admitted it on the record last

20     time.

21                  THE COURT:  I think he's going to tell me that

22     that's not exactly what he meant.

23                  MR. MAHER:  Okay.  Well --

24                  THE COURT:  I think -- he's laughing right now.

25                  MR. MAHER:  That is the allegation, Your Honor.

Page 54

1              THE COURT:  That is the allegation.

2              MR. MAHER:  Right.

3              THE COURT:  But I think that -- I think that --

4     well, I don't know.  I don't want to put words in anybody's

5     mouth.  I did ask last time, there were no trades, right,

6     and the answer was, correct.

7              MR. MAHER:  Yes.  There are no trades.  This was

8     something, our allegation that Merrill made up and they put

9     on a trade and as a result of that trade, purported trade,

10    which we don't believe was a trade, monies flowed, $21

11    million from Lehman's account to Merrill's account.

12             THE COURT:  So can I --

13             MR. MAHER:  You don't need to address whether the

14    contract is or isn't valid.

15             THE COURT:  This is totally not on the pleadings,

16    but I'm struggling to -- you know, I'm sticking to the

17    pleadings, well pled facts, trying to follow all the rules

18    that pertain in a motion to dismiss scenario.

19             But one begins to wonder how this all works.

20    Right.  So LCH is -- there -- it's a clearing house, right,

21    so it sees that one party wants to trade and it sees that

22    another party wants the other side to trade.  And it makes a

23    trade.  Right.

24             MR. MAHER:  Maybe.  What I -- my position --

25             THE COURT:  And, I mean, hypo --

1              MR. MAHER:  Yeah.

2              THE COURT:  I'm just trying to figure out.  So

3     what you're saying is that -- what you're saying is that it

4     was all Merrill's doing.  Merrill put up on some system, hi,

5     I'm LBSF.  I want to enter into this swap.  That's what

6     you're saying, right?

7              MR. MAHER:  I don't know --

8              THE COURT:  Or communicated -- somehow

9     communicated to LCH do I have a trade for you, right, here

10    is -- here is -- you know, on behalf of both Lehman and

11    Merrill and that was --

12             MR. MAHER:  Your Honor --

13             THE COURT:  I don't know.

14             MR. MAHER:  -- I don't know what happened.  You

15    don't know what happened.  Merrill Lynch may know what

16    happened, but they're not telling us.  And this case is

17    about trying to find out what the facts are so that we can

18    then present them to you and you can make a ruling as to

19    who's right, who's wrong, how did this happen, who was to

20    blame, if that's relevant, and who was enriched and who was

21    not.  And I think we need to get to discovery for that, Your

22    Honor.

23             Now since you denied the motion in October we have

24    attempted to get to discovery, but it has not happened.

25             THE COURT:  So if I -- if I were to -- if we were

1   to go down the road of peace, right, and you were to have

2   the discovery, maybe it sheds light on all of this in a way

3   that fills up the 19(b) bucket more or would make me smarter

4   on the issue of, you know, what really happened and maybe

5   the right thing to do would be to allow them to renew the

6   motion.

7          I don't know.  I mean, I think hopefully -- I

8   mean, I think as a frequent flyer and Mr. Roll not so much,

9   I want to get it right.

10          MR. MAHER:  Yes.

11          THE COURT:  Or at a minimum not get it wrong.

12          MR. ROLL:  I would like to get it right, too, Your

13   Honor.

14      (Laughter)

15          MR. MAHER:  Your Honor, I understand what you're

16   saying.  You can deny this motion, I believe, without

17   prejudice to subsequent reinstatement at a later time when

18   there are facts that may support his position.  I will tell

19   you having read these cases, Your Honor, and I've read

20   dozens of these cases, there are seven from the Second

21   Circuit that are cited in the papers.  There's no way they

22   meet this standard.  Even with all the discovery on the

23   planet they cannot meet the Second Circuit test because

24   there can be complete relief on our unjust enrichment claim

25   between Merrill Lynch and Lehman.  Peragreen says that.  The

Page 57

1    Visa/MasterCard case proves that.  And so no matter what

2    facts he finds he cannot meet this standard.

3          So -- but I -- I do not object if Your Honor says

4    I'll deny the motion without prejudice and they can bring it

5    again later on to the extent that they have facts that they

6    think satisfies it.

7          THE COURT:  Well, I'm going to be -- it's going to

8    be death by a thousand motions to dismiss if -- if I'm

9    reading Mr. Roll correctly.

10         But let me ask you a different question.  What's

11   your response to the charge -- you say you don't want to go

12   to England?  Why don't you want to go?

13         MR. MAHER:  We're not required to go.  We can

14   bring whatever claim we want at any time against any person

15   as long as we're not violating Rule 19.  That's what the

16   Second Circuit said a year and three quarters ago in the

17   Marville v Kirby case.  We have the right as the plaintiff

18   to bring the case where we want against who we want.  The

19   only contrary to that -- and that's Marville v Kirby.  It's

20   726 Fed. 3d. 119 (2013).  The only limitation on that, which

21   Mr. Roll is attempting to enforce, is if there's an

22   indispensable party we're required to do that.

23         I'm saying under the Second Circuit test it's not

24   even a close call.  It's not even close.

25         THE COURT:  Okay.  Thank you.

1          Mr. Roll.

2          MR. ROLL:  Thank you, Your Honor.

3          A couple of things.  First of all, if Mr. Maher is

4    suggesting that he will not oppose a court -- the Court

5    ruling that the motion could be denied without prejudice to

6    a renewal after some discovery, I would say we would take

7    that if -- if the alternative were an outright denial.  If

8    that's the way the Court thinks we ought to go we're happy

9    to do it that way.

10          We do think dismissal would still be warranted

11   now, but if that's the middle ground that would satisfy the

12   Court we would -- we wouldn't object.

13          I did not say the last time we were here, I did

14   not admit that there were no trades involving these parties.

15   What I actually said in an extended colloquy with the Court

16   was that there was no new documentation.  There was no

17   agreement, no new agreement between LBSF and Merrill.  I

18   didn't say there weren't new trades.  There were, in fact,

19   new trades and there are trades that still exist.  The trade

20   did happen.

21          THE COURT:  You mean -- you mean, and you're

22   distinguishing -- you're talking about under an existing

23   ISDA?

24          MR. ROLL:  Yes.  Yeah.  I mean, there -- there

25   were clearly economic terms arising from something.  I would

Page 59

1    say it's the prior deals between these two parties.  But

2    whatever --

3              THE COURT:  But -- wait.  Wait.  But now this gets

4    totally interesting.  Right.  So that's where I lose the

5    train of how this could have happened.

6              MR. ROLL:  But here's -- okay.  As long as we're

7    getting into that, you know, Your Honor said earlier --

8              THE COURT:  When you --

9              MR. ROLL:  -- and he -- and he -- there's this

10   notion that LCH didn't do anything wrong and Your Honor said

11   at one point I would like to know how this works.

12             How did LCH put on a trade with only one party

13   agreeing?  That's the question I would ask all of us here.

14   That's not the way markets work.  They had to, and I think

15   the Court was touching the edges of this.  They had to have

16   said, I don't know if it was have I got a trade for you, but

17   they had to have said to somebody, you know, is this -- is

18   this a real trade.  And the somebody that they asked that of

19   had to say yes, otherwise these monies would not be going

20   back and forth.

21             THE COURT:  But the problem that I have, the

22   problem that I have is paragraph 14.  The allegation is that

23   Merrill unilaterally submitted data that ostensibly

24   represented the erroneous transactions to LCH and LBSF for

25   the purposes of registering --

Page 60

1           MR. ROLL:  Right.  And that's -- and that's not

2     the end of the story.  The way things work in the real

3     world, and I admit that we are going to have to flush this

4     out in discovery.  But I'm pretty confident in the truth of

5     what I'm about to say.

6           LCH would not just say at that point that's it,

7     that's all I need.  They would actually ask for confirmation

8     from the counterparty, the prior counterparty.  And

9     presumably they got it or else these trades wouldn't have

10    been in existence for months with millions of dollars going

11    back and forth with all parties --

12           THE COURT:  But that --

13           MR. ROLL:  -- expecting that that was normal.

14           THE COURT:  But then that's -- but that's at odds

15    with what subsequently happened when there was the erroneous

16    payment.

17           MR. ROLL:  Well --

18           THE COURT:  So at that moment in time LBSF and

19    Merrill each looked at their books and said, we don't have

20    this trade.

21           MR. ROLL:  Right.

22           THE COURT:  Right.  So that cuts against the idea

23    that somebody -- that the next thing that happened was there

24    was some kind of a trade confirm or Bloomberg screen or

25    something -- I'm making this up -- that gave LCH reason to

Page 61

1    believe.  I don't know.

2            MR. ROLL:  All the more reason why they ought to

3    be here.  I think that's the real point.  It's a further

4    elemented mystery here.  It may be that it's further

5    evidence of a mistake.  It's certainly not evidence of

6    Merrill doing something wrong in a sense of being nefarious.

7            So, you know, I think -- I think it's a valid

8    question.  I think it is a little mysterious how this

9    happened with respect to that separate flow of money.  It

10   didn't happen the other way with respect to the 21 million.

11           THE COURT:  Right.  That is mysterious.

12           MR. ROLL:  It is mysterious.  But clearly the

13   money was flowing pursuant to terms that actually were in

14   existence with respect to trades that were in existence.

15   That's really all I wanted to say on --

16           THE COURT:  Well, but there were terms that were,

17   as far as LCH was concerned, live.

18           MR. ROLL:  And as far as LBSF was concerned and as

19   far as MLCS was concerned.  For many months the monies were

20   going back and forth pursuant to the actual terms of these

21   swap agreements.  That's -- you know, these were --

22           THE COURT:  But --

23           MR. ROLL:  -- these were swap agreements like all

24   other -- like the thousands of others --

25           THE COURT:  I understand, but when you -- but then

Page 62

1    I get back to Madoff.  Just the fact that the parties

2    continued to act in reliance on what was thought to be a

3    valid arrangement, an existing arrangement doesn't make it

4    so.

5              MR. ROLL:  Right.

6              THE COURT:  There's no -- there's no, you know,

7    like going back to first year law school, we don't have a

8    contract, but you come and paint my house.

9              MR. ROLL:  Right.  It's a mutual mistake.  It's a

10   mutual mistake.  The remedy for that is rescission.  That's

11   why we hammered on rescission.  That's the first year law

12   school course answer to that question.  If there's a mistake

13   that mutual, a mistake of fact which is apparently what we

14   have here --

15             THE COURT:  Well, the mutual mistake is between

16   Merrill and LCH.

17             MR. ROLL:  It's between Merrill and LCH and

18   between LBSF and LCH.  There could be mutual mistakes all

19   around.

20             If he really wants us to flush that out, if the

21   Court really wants us to flush that out we'll do that.  If

22   that's really where we're headed, we're happy to --

23             THE COURT:  I have to take --

24             MR. ROLL:  -- because I think --

25             THE COURT:  -- the complaint under -- for what it

Page 63

1    says.

2          MR. ROLL:  I understand.  But he is right that we

3    can make -- I mean, Rule -- the Rule 19(b) burden as he put

4    it, Rule 19 and Rule 12(b)(7), actually, I think it actually

5    says we can make --

6          THE COURT:  12.  Right.

7          MR. ROLL:  -- a Rule 19 motion at any point along

8    the way.

9          THE COURT:  Exactly.  Right.

10          MR. ROLL:  And he says, you know, fill up the

11    bucket with some discovery.  I think that was his phrase.

12    If that's what -- if given an opportunity to do that, we

13    would do that because we think it would ultimately show that

14    some of these fact issues that we're all a little unsure

15    about would come out --

16          THE COURT:  Has there been --

17          MR. ROLL:  -- would come out the right way.

18          THE COURT:  -- discovery?  Has there been --

19          MR. MAHER:  No, Your Honor.

20          MR. ROLL:  Well, the --

21          MR. MAHER:  We've attempted for months to try to

22    agree on a discovery schedule.  You -- if you'll remember,

23    you denied the motion in October, the motion --

24          THE COURT:  Yes.

25          MR. MAHER:  -- to dismiss.

Page 64

1           THE COURT:  Right.

2           MR. MAHER:  We engaged them -- with Merrill

3     thereafter to attempt to agree upon a discovery schedule

4     and, you know, without ascribing blame or fault we want to

5     move forward with discovery and it hasn't happened.  We

6     would like to move forward expeditiously now if you're

7     denying the motion, Your Honor, and we've -- we've tried to

8     negotiate an agreement with Merrill Lynch.  We haven't been

9     completely successful thus far.

10          If you're denying the motion and we can proceed

11    with discovery, what I would request is that we either set

12    -- send up an agreed proposed schedule or we submit whatever

13    we can agree on and alternatives for Your Honor to consider

14    so that an order can be entered so that we can move forward.

15          MR. ROLL:  It's -- I don't want to get into a

16    fight on the discovery, but it is -- it's not accurate to

17    say that we haven't engaged them.

18          THE COURT:  Okay.

19          MR. ROLL:  I mean, they've been sitting on it.

20    We've all been sitting on it for a good reason.  That's

21    because --

22          THE COURT:  Everyone --

23          MR. ROLL:  -- this was in the offing.

24          THE COURT:  Everyone has a lot of hard things to

25    do.  So that's not --

Page 65

1          MR. ROLL:  That's right.

2          THE COURT:  And I know you both to be extremely

3     diligent.  And I think this is a really -- this is a really

4     difficult one and I've been struggling with it for a while

5     and it's particularly vexing because of the sense of the

6     reality of not knowing what happened.

7          Moreover, I don't know if at the end of all this

8     discovery, right, there's nothing.

9          MR. ROLL:  Right.

10          THE COURT:  There could be nothing, right, and

11     then we're going to have some arching debate about burdens

12     of proof and I don't know what.  And, you know, what -- you

13     know, you'll undoubtedly would have to bring in experts on

14     what happens when this happens, but that -- that gives me

15     another headache.

16          But I do feel that not by much, but by a little

17     that Lehman has the better part of the argument at this

18     point.  I'm not convinced that LCH is a required party and I

19     -- and I don't think I have any facts or the facts such as I

20     do have takes me the other way in terms of what's fair.

21          But I would like to give you an opportunity to do

22     the discovery and to say that you can come back and try it

23     again either on another, bite my tongue, motion to dismiss

24     or renewed motion to dismiss or on a summary judgment.  But

25     it just seems to me that this is not a million pages of

Page 66

1    document discovery.  This is a very narrow window, maybe

2    it's a needle in a haystack, but I think you ought to do it

3    and then -- and I'm going to deny this motion without

4    prejudice to its renewal --

5              MR. ROLL:  Okay.

6              THE COURT:  -- at a subsequent point.

7              MR. ROLL:  At the risk of trying the Court's

8    patience --

9              THE COURT:  No.  No.  No.  Not at all.

10             MR. ROLL:  And I don't know if I will, but I --

11   the only other thing I wanted to be sure to say so it was in

12   the record is his discussion of those two cases that he

13   insisted that Your Honor read, the Peragreen case --

14             THE COURT:  Yes.

15             MR. ROLL:  -- and the MasterCard case --

16             THE COURT:  Sure.

17             MR. ROLL:  -- I would be remiss if I didn't say at

18   least something about each of those.

19             THE COURT:  Sure.

20             MR. ROLL:  I do think Your Honor should read those

21   as he suggested to get a sense of --

22             THE COURT:  I might have already.

23             MR. ROLL:  You may have already.  I was saying

24   that rhetorically, of course, but -- and I would just -- and

25   I don't want to belabor the point, but on MasterCard the

Page 67

1   important factor is that the common counterparty with

2   respect to the contracts at issue was actually in that case

3   already as the defendant.  So Visa --

4            THE COURT:  Right.

5            MR. ROLL:  -- you know --

6            THE COURT:  I -- right.

7            MR. ROLL:  -- was not the common --

8            THE COURT:  Yeah.  I hear you on that one and on

9   that one I -- because of my at least tentative view working

10  hypothesis that in order to award damages on account of

11  unjust enrichment I wouldn't have to undo the contract.  I

12  distinguish it in my mind, but I hear you.

13           But the other point was -- stated in stronger

14  terms was there's not a single Second Circuit case that does

15  what you want me to do.

16           MR. ROLL:  Well, it -- I would say MasterCard was

17  that case because it did say you didn't need to have Visa in

18  the case because the common counterparty was there.

19           And, finally, on Peragreen -- and I do apologize

20  for taking more time, but I think it's important.

21           THE COURT:  It's okay.

22           MR. ROLL:  That was the issue of whether LCH would

23  be required to change its position and because it wouldn't

24  be required to change its position or do something it's

25  therefore not required -- a required party.

Page 68

1          That's actually not the standard.  A close enough

2    -- a close reading of that case indicates that that's a

3    sufficient, but not a necessary ground for finding of a

4    party being required under Rule 19.

5          It works in some cases, but it's not -- it's not

6    the only basis on which a party can be found to be required.

7    I think the case really carefully lays out that you have to

8    look at it on a case by case basis.

9          That was the way they -- that was the way they

10   handled the issue in that case, but that's not a standard

11   the Second Circuit was articulating for all cases.

12          THE COURT:  Well, I'm going to stand by what I

13   said.  I think for the purposes -- I think undoubtedly --

14   well, I think there's a substantial likelihood that you

15   might come back after discovery and renew your motion at

16   which point it would be certainly important to me to

17   preserve all of your appellate rights, including any right

18   to assert at the end of someday that this shouldn't have

19   gone forward at all in the absence of LCH ?Goldman, a very

20   shaky point that got raised during this hearing.  Goldman in

21   quotes because, as Mr. Maher said, who knows what -- who it

22   really is.

23          But I would like you to do the discovery and see

24   what you find, and depending on what you find think about

25   whether mediation might be something that you're interested

Page 69

1    in or some kind of settlement discussions, not necessarily

2    within the overarching, you know, Lehman mediation

3    framework.  Just something I throw out every day of the

4    week, not particularly geared toward this, but given what

5    I'm concerned is going to become or could become an absence

6    of more facts, it worries me.

7              MR. ROLL:  We understand, Your Honor.

8              THE COURT:  But maybe the needles in the haystack

9    will be out there and clarity will be achieved.

10             MR. ROLL:  Well, we'll see if we can --

11             THE COURT:  For better or worse.

12             MR. ROLL:  We'll see where the discovery leads us

13   and we'll consider that -- those points, Your Honor.

14             THE COURT:  All right.  Thank you both so much.

15             MR. ROLL:  Thank you.  It's always a privilege to

16   be here.

17             MR. MAHER:  Thank you, Your Honor.

18             THE COURT:  All right.  Have a good afternoon.

19             MR. MAHER:  We're not objecting to that, Your

20   Honor.

21             THE COURT:  You're not objecting.  Right.  Okay.

22   So you'll -- do you want to give us an order on that?

23             MR. ROLL:  We'll submit an order.

24             THE COURT:  Okay.

25             MR. ROLL:  Thank you.

1          MR. MAHER:  Your Honor, should we submit an order

2     on this --

3               THE COURT:  Yes.

4               MR. MAHER:  I'll confer with counsel.

5               THE COURT:  Thank you.

6          (Whereupon, these proceedings concluded at 3:18 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 71

```
 1                        I N D E X

 2

 3                        RULINGS

 4   DESCRIPTION                           PAGE      LINE

 5   Doc #16 Motion to Dismiss Adversary

 6   Proceeding filed by William J.F. Roll, III

 7   on behalf of Merrill Lynch Capital

 8   Services, Inc.                         66        3

 9

10   Doc #24 Motion of Defendant, Merrill Lynch

11   Capital Services, Inc. to Amend Answer to

12   Adversary Complaint                    --        --

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 72

1                   C E R T I F I C A T I O N

2

3    I, Sherri L. Breach, certify that the foregoing transcript

4    is a true and accurate record of the proceedings.

5

6    Sherri          Digitally signed by Sherri Breach
                      DN: cn=Sherri Breach, o=Veritext,
                      ou, email=digital@veritext.com,
7    Breach          c=US
     _____Date: 2016.02.17 14:46:53 -05'00'_____

8    SHERRI L. BREACH

9    AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11

12   DATE:  May 15, 2015

13

14

15

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501