**Response Deadline: March 1, 2016, at 4:00 p.m. (Eastern Time)**
**Hearing Date: March 29, 2016, at 10:00 a.m. (Eastern Time)**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 08-13555 (SCC) |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | |
| Debtors. | |

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. TO
ENFORCE THE AUTOMATIC STAY, THE PLAN, AND THE
CONFIRMATION ORDER AGAINST iFREEDOM DIRECT
CORPORATION AND SECURITYNATIONAL MORTGAGE COMPANY**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (in such capacity, the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), by its undersigned attorneys, hereby moves (the "Motion") to enforce the Automatic Stay, Plan of Reorganization and Confirmation Order against iFreedom Direct Corporation (formerly known as New Freedom Mortgage Corporation) ("iFreedom") and SecurityNational Mortgage Company ("SecurityNational"), and in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. LBHI's settlements with Fannie Mae[1] and Freddie Mac triggered LBHI's Indemnification Claims against 3,000 counterparties involving more than 11,000 mortgage loans, which the Plan Administrator believes will generate substantial recoveries for the creditors under the Plan. To provide for the orderly resolution of the Indemnification Claims, the Court entered an Alternative Dispute Resolution Procedures Order, which directed parties to comply with the mediation procedures for all of the Indemnification Claims. To aid in the resolution of the Indemnification Claims, LBHI obtained a ruling from this Court and the United States District Court for the Southern District of New York that the Indemnification Claims were timely because they accrued upon LBHI's settlement with Fannie Mae and Freddie Mac (and not, as some counterparties had argued, years prior when the loans were first sold to LBHI prepetition).

2. iFreedom and SecurityNational are two counterparties that received notice of the Alternative Dispute Resolution Order and participated in the mediation process.

3. On or about December 18, 2015 and January 26, 2016, iFreedom filed five (5) separate complaints in the United States District Court for the District of Utah against LBHI (the "Utah Actions") and SecurityNational filed a complaint in Delaware superior court against LBHI (the "Delaware Action"), respectively. The six cases relate to loans iFreedom or

---

[1] Undefined capitalized terms in the Preliminary Statement are defined below.

2

SecurityNational originated or brokered pursuant to prepetition contractual agreements with LBHI's assignor, Lehman Brothers Bank, FSB ("LBB"), and which concern LBHI's Indemnification Claims. Each of the six cases seeks declarations (i) regarding the rights of the respective parties under the prepetition contractual agreements, and (ii) that any claims for indemnification held by LBHI are barred by applicable statute of limitations (*i.e.*, they accrued at the time the loans were sold to LBB – not at the time of LBHI's settlement with Fannie Mae and Freddie Mac, as this Court has ruled). LBHI respectfully submits that iFreedom's and SecurityNational's actions outside the Bankruptcy Court concerning prepetition contracts violate the automatic stay, which was continued in effect by the Plan and the Confirmation Order. LBHI seeks the entry of an order enforcing the stay and directing the dismissal of those actions.

4. iFreedom's and SecurityNational's Utah and Delaware Actions, which seek declarations as to the enforceability of LBHI's claims arising from prepetition contracts, violate the automatic stay by, among other things: (i) seeking to take control of assets of the estate, and (ii) subverting the prosecution of the claims held by LBHI. The Utah and Delaware Actions undermine LBHI's ability to litigate the Indemnification Claims, which the Plan and Confirmation Order addressed as a means to fund additional distributions to creditors. Since these claims are property of the estate, they are protected by the automatic stay. Further, although iFreedom and SecurityNational knew or should have known that LBHI's Plan provided for liquidation of these Indemnification Claims for the benefit of all creditors, iFreedom and SecurityNational engaged in forum shopping and filed the Utah and Delaware Actions, hoping that a non-bankruptcy judge will rule that they are not liable for the Indemnification Claims because those claims are untimely. Such an attempt to subvert the prosecution of claims held by a debtor violate the automatic stay.

5.  . Accordingly, the Utah Actions and Delaware Action are stayed and enjoined pursuant to section 362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and pursuant to the Plan and the Confirmation Order. Therefore, LBHI seeks an order pursuant to sections 105 and 362 of the Bankruptcy Code, substantially in the form attached hereto as Exhibit A, granting the following relief: (i) finding that iFreedom and SecurityNational violated the automatic stay ; (ii) enjoining and staying iFreedom and SecurityNational from seeking any other relief based on their claims against LBHI other than from the Bankruptcy Court or District Court; (iii) directing iFreedom to dismiss the Utah Actions and directing SecurityNational to dismiss the Delaware Action; and (iv) granting LBHI such other and further relief as is just.

## JURISDICTION

6.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Section 14.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and has a close nexus with LBHI's confirmed plan of reorganization, as it involves the interpretation and enforcement of its provisions.

## BACKGROUND

7.  Historically, LBHI purchased and sold residential mortgage loans, arranging directly or through its affiliates to purchase mortgage loans from loan originators and other third-parties (the "Sellers") and then package them for securitization and/or sale to third-parties, including the Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corp. ("Freddie Mac" and together with Fannie Mae, the "GSEs"). In such transactions, the Sellers granted the contractual right to require them to indemnify the purchaser and hold it harmless from any losses or damages suffered with respect to the loans. When LBHI

4

sold mortgage loans to the GSEs, the purchasers obtained a similar contractual right to recover from LBHI for defective mortgage loans. LBHI's agreements with the GSEs also contained representations, warranties and/or covenants regarding the loans that were co-extensive with the representations, warranties, and covenants contained in the Agreements.

8.  iFreedom and SecurityNational engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI. iFreedom also brokered loans to entities on the secondary market, including LBB and LBHI. iFreedom sold residential mortgage loans to LBHI's assignor, LBB, under the Loan Purchase Agreement between LBB and New Freedom, dated July 8, 2004 (the "iFreedom LPA"), and submitted residential mortgage loans to LBHI's assignor, LBB, under a Broker Agreement between New Freedom and LBB, dated September 27, 2005 (the "Broker Agreement").[2] A true and correct copy of the LPA is attached hereto as Exhibit B and a true and correct copy of the Broker Agreement is attached hereto as Exhibit C. SecurityNational sold residential mortgage loans to LBHI's assignor, LBB, under the Loan Purchase Agreements between LBB and SecurityNational, dated August 23, 2001 and April 15, 2005 (the "SecurityNational LPAs," and collectively with the iFreedom LPA, the "LPAs"). A true and correct copy of the SecurityNational LPAs are attached hereto as Exhibits D and E. The LPAs specifically incorporate the terms and conditions of the Seller's Guide of Lehman's loan administrator, Aurora Loan Services LLC (individually, the "Seller's Guide," and together with the LPAs the

---

[2] The operative Broker Agreement for each of the loans is the version in effect at the time Defendant sold the loan to LBB. iFreedom asserts that the operative agreement is an earlier version, a matter which LBHI disputes. Regardless of which version is found to be operative, the effect is the same.

5

"Correspondent Agreements") which sets forth additional duties and obligations of iFreedom and SecurityNational.[3]

9.  The Correspondent Agreements and the Broker Agreement (collectively the "Agreements") also set forth iFreedom's and/or SecurityNational's duties and obligations regarding examination of mortgage loan files and underwriting; representations and warranties concerning the parties and individual mortgage loans purchased, sold or submitted (including the quality and/or characteristics of the mortgage loans); and iFreedom's and SecurityNational's indemnification obligations.

**The Chapter 11 Cases**

10. Commencing on September 15, 2008 (the "LBHI Commencement Date"), and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

11. On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [ECF No. 4271]. The Bar Date Order established September 22, 2009 (the "Bar Date") as the general deadline for filing proofs of claim against certain of the Debtors, including LBHI.

12. By Order dated December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order"), which became effective on March 6, 2012 (the "Effective Date").

---

[3] The operative Seller's Guide for each of the loans is the version in effect at the time Defendants sold the loan to LBB. Although the language of certain sections referenced may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

6

### The GSE Settlements

13. After LBHI sold the mortgage loans to the GSEs, the GSEs discovered breaches of representations, warranties and/or covenants in the loans that were co-extensive with the representations, warranties, and covenants contained in the Agreements.

14. Both GSEs filed proofs of claim against LBHI and other Lehman entities (collectively, the "GSE Claims"), which GSE Claims included, among other things, "alleged indemnity/reimbursement obligations" and "indemnity claims" arising from the sale of mortgage loans, including mortgage loans purchased from the Sellers and transferred to the GSEs. *See* Settlement Agreement, dated January 22, 2014, by and among LBHI, et al., and Fannie Mae (the "Fannie Settlement") § 1 [ECF 42153]; Settlement and Assignment Agreement, dated February 12, 2014, by and among LBHI, et al., and Freddie Mac (the "Freddie Settlement") §§ C, E [ECF 42754].[4] After entry of the Confirmation Order, the Plan Administrator objected to the GSE Claims. While those objections were pending, the parties participated in extensive settlement negotiations, culminating in the GSE Settlement Agreements. The Plan Administrator filed motions seeking the Bankruptcy Court's approval of the GSE Settlement Agreements. The motions were granted, and the Bankruptcy Court approved the GSE Settlement Agreements by Orders dated January 31 and February 19, 2014 (the "GSE Settlement Orders") [ECF 42420, 42918].

15. The GSE Settlement Agreements, which allowed the GSEs' claims, triggered LBHI's right to indemnification under the Agreements, including the right to indemnification from iFreedom and SecurityNational.

---

[4] The Fannie Settlement and the Freddie Settlement are sometimes hereafter referred to together as the "GSE Settlement Agreements."

7

16. LBHI examined the GSEs' claims, and determined that certain loans, including those brokered by the iFreedom or sold by SecurityNational, contained various defects that violated the representations, warranties and/or covenants under the Agreements, including but not limited to the representations and warranties that all the information provided in the loan files were true and correct and that the loans met certain origination and underwriting requirements. Thus, as a result of the Sellers' breaches, acts and omissions (including iFreedom's and SecurityNational's), LBHI incurred liability to Fannie Mae and Freddie Mac, which liability was settled.

17. As a result of the GSE Settlement Agreements, LBHI holds claims against 3,000 counterparties involving more than 11,000 mortgage loans related to the GSE Settlement Agreements and has the right to demand that Sellers reimburse and indemnify LBHI pursuant to related prepetition transaction documents that contain indemnification provisions, wherein the Sellers agreed to hold LBHI (as, among other things, LBB's assign) harmless from any losses or damages suffered with respect to the mortgage loans (the "Indemnification Claims").

18. The Plan Administrator expects to obtain substantial recoveries in connection with the Indemnification Claims, which will ultimately be distributed to creditors under the Plan.

**The Relevant Provisions of the Plan**

19. The Plan provides for the orderly liquidation of all the property of the Debtors, which re-vested on the Effective Date for the benefit of creditors and equity holders. Post-confirmation, the equity in LBHI is held 100% by a trust defined in the Plan as the "Plan Trust." The Plan Trust is charged with liquidating the assets of all the Debtors, including LBHI. *See* Plan § 7.4 ("The Plan Trust shall be established on the Effective Date and shall continue in existence until the Closing Date. . . . The Plan Trust shall exercise voting rights . . . in

furtherance of the liquidation of the Debtors and compliance with the provisions of the Plan."). Moreover, the Plan provides that LBHI, the Plan Administrator, "shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities in accordance with Section 6.1(b)(iii) of the Plan." Plan §§ 1.115, 7.6. The Plan Administrator has the sole authority to liquidate assets, including the prosecution of Litigation Claims (as defined below), to maximize distributions to creditors. Plan § 6.1(b)(iii) and (iv).

20.     The Plan also expressly provides that LBHI will retain all Litigation Claims that the Plan does not otherwise dispose of. Plan § 13.8. "<u>Litigation Claims</u>" under the Plan means "any and all Causes of Action held by" LBHI. Plan § 1.102. The Plan further defines "<u>Causes of Action</u>" as "any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever . . . liquidated or *unliquidated*, fixed or *contingent*, matured or *unmatured*, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing *or hereafter arising*, in law, equity, or otherwise, *based in whole or in part upon any act or omission or other event occurring prior to the Effective Date*. Plan § 1.17 (emphasis added). This definition encompasses the Indemnification Claims.

21.     Section 8.14 of the Plan also expressly preserves the Debtors' rights to assert Litigation Claims for reimbursement and indemnification on account of Distributions made to the holders of Allowed Claims and provides, in relevant part, as follows:

> [e]xcept as otherwise agreed by the Debtors, the Debtors' rights to assert or prosecute Litigation Claims for *reimbursement, indemnification*, recoupment or any other similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, *on account of Distributions made to the holders of Allowed Claims* or Allowed Guarantee Claims, *shall be fully preserved* to the fullest extent permitted by applicable law.

9

Plan § 8.14(b) (emphasis added). The Confirmation Order reiterates LBHI's "rights to *assert or prosecute* Litigation Claims for *reimbursement, indemnification*, recoupment or any other similar right . . . ." Confirmation Order ¶ 79 (emphasis added). Thus, the Plan contemplates the post-confirmation monetization of LBHI's Indemnification Claims against Sellers, including claims that arise from the allowance of the GSEs' Claims.

Section 13.7 of the Plan and paragraph 54 of the Confirmation Order provide that "all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases." As LBHI's Chapter 11 Cases remain open, the automatic stay remains in effect.

**The ADR Procedure**

22.  On June 24, 2014, the Court entered the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, which established a comprehensive mediation procedure for Indemnification Claims (the "ADR Order") (ECF No. 45277). In the ADR Order, the Court directed parties to comply with the mediation procedures for all of the Indemnification Claims, including the claims against iFreedom. *See id.* at 2. The procedures contemplated service of an "Indemnification ADR Package" on Sellers, which included a notice of claims and demand for participation. *Id.* at 3.

**The iFreedom and SecurityNational ADR**
**Mediation and Complaints in Other Jurisdictions**

23.  Pursuant to the ADR Order, on April 28, 2015, LBHI served on iFreedom an Indemnification ADR Package. After the ADR Package was served, the parties participated in mediation, which did not resolve LBHI's claims.

10

24. Between December 10 and 14, 2015, iFreedom filed five (5) separate Utah Actions in the United States District Court for the District of Utah each relating to a particular mortgage loan originated or brokered by iFreedom. A copy of the Utah Complaints are attached hereto as Exhibits F, G, H, I and J. The Utah Complaints alleges that LBB sold each loan to LBHI, which then transferred the loan to either Fannie Mae or Freddie Mac. The Utah Actions seek, among other things, declarations regarding the respective rights of the parties under their contractual agreements and that any claims for indemnification held by LBHI are barred by the applicable statute of limitations. *See e.g.*, Ex. F.

25. Pursuant to the ADR Order, SecurityNational was served with an ADR notice on August 28, 2015. The parties were in mediation when SecurityNational filed the Delaware Complaint against LBHI on January 26, 2016, in Delaware Superior Court. A copy of the Delaware Complaint is attached hereto as Exhibit K. In the Delaware Complaint, SecurityNational seeks declarations regarding the respective rights of the parties under their contractual agreements and that any claims for indemnification held by LBHI are barred by the applicable statute of limitations. *Id.*

## BASIS FOR RELIEF REQUESTED

26. Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition operates as an automatic stay, applicable to all entities, of "the *commencement or continuation . . . of a judicial, administrative, or other action or proceeding* against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The Bankruptcy Code further stays "*any act* to

11

obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate.*" 11 U.S.C. § 362(a)(3) (emphasis added).

27.  Section 13.7 of the Plan and paragraph 54 of the Confirmation Order provide that "all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases." As LBHI's chapter 11 case remains open, the automatic stay remains in effect.

28.  The automatic stay bars any attempts to assert prepetition claims against LBHI, including the commencement of a lawsuit in a non-bankruptcy court. For example, in enacting section 362, Congress made clear that:

> [T]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595 at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6296-97; S. Rep. No. 95-989 at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5840-41; *see also Midatlantic Nat'l Bank v. New Jersey Dept of Envt'l Protection*, 474 U.S. 494, 503 (1986) (noting that the automatic stay is one of the fundamental protections afforded debtors under the Bankruptcy Code).

29.  iFreedom and SecurityNational seek declarations as to the enforceability of LBHI's claims arising from prepetition contracts. It is undisputed that the automatic stay applies to the commencement or continuation of all legal proceedings, including declaratory judgment actions, against a debtor. *See Commercial Union Ins. Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 31 B.R. 965, 970 (S.D.N.Y.1983) (affirming bankruptcy court's conclusion that automatic stay applied to pending declaratory judgment action); *Advanced Computer Servs. v.*

*MAI Sys. Corp.*, 161 B.R. 771, 774–75 (E.D.Va.1993) (concluding that section 362(a)(1) applied to complaint filed postpetition seeking declaratory and equitable relief). Section 362(a)(1), which remains in effect, bars the filing of such actions. The Utah Actions and the Delaware Action certainly involve the commencement of judicial proceedings seeking a determination of rights under a prepetition contracts between the parties and are thus barred. *See Global Indus. Tech., Inc. v. Ace Prop. & Cas. Ins. Co. (In re Global Indus. Tech., Inc.)*, 303 B.R. 753, 761-62 (W.D. Pa. 2004) (state court action brought by insurers for declaratory judgment regarding non-debtor's rights in insurance policies it shared with debtor violated automatic stay even though debtor was not named as defendant in state court action because outcome of state action could affect debtor's rights in shared insurance), *vacated in part, modified in part on other grounds*, 2004 WL 555418 (Bankr. W.D. Pa. Mar. 19, 2004).

30. The Utah Actions and the Delaware Action also violate Section 362(a)(3) of the code, which prohibits actions that seek to take control of assets of the estate. The Utah Actions and the Delaware Action are intended to undermine LBHI's ability to litigate the Indemnification Claims. Section 8.14(b) of the Plan and paragraph 79 of the Confirmation Order both provide that the Debtors retain the right to assert and prosecute Indemnification Claims. The foregoing provisions also make clear that LBHI will pursue Indemnification Claims as a means to fund additional distributions to creditors. Liquidating the Indemnification Claims undoubtedly will affect recoveries by creditors.

31. A fundamental policy underlying the Bankruptcy Code is the preservation of estate property for the benefit of all creditors in order to ensure the equitable distribution of assets of the estate. *See Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996). In accordance with that policy, the automatic stay "exists to protect the estate from a

chaotic and uncontrolled scramble for the Debtor's assets in a variety of uncoordinated proceedings in different courts" as well as to "protect and preserve the jurisdiction of the bankruptcy court so that the court can [properly] administer the debtor's estate in an orderly fashion." *Id.* (citations and internal quotations omitted). The Indemnification Claims asserted and to be asserted by the Plan Administrator are property of the estate and protected by the automatic stay.

32. Section 362(a)(3) specifically bars an action that attempts to assert control over property of the estate. For example, an insurer's declaratory judgment action to determine the scope of insurance coverage represents an act of potential control over an asset of the estate. *In re Pintlar Corp.*, 175 B.R. 379 (Bankr. D. Idaho 1994) (*citing In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986)).

33. Moreover, where a party files an action seeking declaratory relief in order to subvert the prosecution of claims held by a debtor, it violates Section 362(a)(3). *See Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 460 B.R.106 (Bankr. S.D.N.Y. 2011). In *Madoff*, Judge Lifland held that a defendant in a clawback case violated the stay when it brought a declaratory judgment in a Cayman's court. *Id.* at 114-15. The trustee had initiated lawsuits against the Cayman defendant in the bankruptcy court. The defendant then sought a declaration in the Cayman courts that it was not liable for the clawbacks. *Id.* The bankruptcy court concluded that filing of a declaratory judgment action itself was an attempt to interfere with property of the estate in violation of Section 362(a)(3) of the Code. *Id.*

34. Here, iFreedom and SecurityNational were already the subject of mediations with respect to the Indemnification Claims, and are now parties to the adversary proceedings

14

captioned *Lehman Brothers Hldgs. Inc. v. iFreedom Direct Corporation (f/k/a New Freedom Mortgage Corporation)*, Adv. Proc. No. 15-01426 (SCC), filed December 16, 2015 and *Lehman Bros. Hldgs. Inc. v. 1st Advantage Mortg., LLC et. al.*, Adv. Proc. No. 16-01019 (SCC), filed February 3, 2016. They also knew or should have known that LBHI's Plan provided for the liquidation of such claims for the benefit of all creditors, having received notice of the ADR Order, the Confirmation Order and the Plan. All provisions of the Plan and Confirmation Order, including those that continue the automatic stay until the closing of the case, are binding and enforceable on all parties and must be honored. *See In re St. James Mechanical, Inc.*, 434 B.R. 54, 64 (Bankr. E.D.N.Y. 2010). Notwithstanding the foregoing, iFreedom and SecurityNational engaged in forum shopping just as the defendant in *Madoff*, and filed the Utah Actions and the Delaware Action, hoping that a non-bankruptcy judge would rule that they were not liable for the Indemnification Claim. As such, iFreedom's and SecurityNational's actions violate Section 362(a)(3), which remains operative here until the closing of all of the Debtors' cases.

35. Because the automatic stay remains in effect, the Utah Actions and the Delaware Actions should be dismissed. *See e.g., Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994) (automatic stay is effective upon the filing of the petition and any subsequent proceedings violating the stay are void and without vitality).

## CONCLUSION

36. WHEREFORE the Plan Administrator respectfully requests that the Court order iFreedom to dismiss the Utah Actions and order SecurityNational to dismiss the Delaware

Action as having been brought in violation of the Automatic Stay, the Plan and the Confirmation Order and grant the relief requested herein and such other and further relief as is just.

Dated: New York, New York
February 17, 2016

          */s/William A. Maher*
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

-and-

Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Counsel for Lehman Brothers Holdings Inc.*