EFiled: Jan 26 2016 04:32PM EST
Transaction ID 58479873
Case No. N16C-01-221 PRW CCLD

IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | |
|---|---|
| SECURITY NATIONAL MORTGAGE COMPANY, a Utah corporation, <br><br> Plaintiff, <br><br> v. <br><br> LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. _____ CCLD |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff SecurityNational Mortgage Company ("SecurityNational") by way of its complaint alleges as follows:

### PARTIES

1. Plaintiff SecurityNational is a corporation organized and existing under the laws of the State of Utah.

2. Defendant Lehman Brothers Holdings Inc. ("LBHI") is a corporation organized and existing under the laws of the State of Delaware. On September 15, 2008, LBHI commenced a voluntary bankruptcy case pursuant to chapter 11 of the United States Bankruptcy Code. Its Plan was confirmed by order of the Bankruptcy Court dated December 6, 2011, and became effective on March 6, 2012.

3.  Pursuant to applicable law, including the Delaware Declaratory Judgment Act, 10 Del. C. § 6501, et seq., SecurityNational seeks a declaration of rights and other legal relations as hereinafter set forth.

## FACTUAL BACKGROUND – THE DISPUTE

4.  Lehman Brothers Bank, FSB ("Lehman Bank") at relevant times was a federal savings bank, and was a wholly owned subsidiary of Lehman Brothers Bancorp, Inc., a Delaware corporation ("Lehman Bancorp").[1] Lehman Bancorp in turn was a wholly owned subsidiary of LBHI. Neither Lehman Bank nor Lehman Bancorp was a party to the bankruptcy of LBHI.

5.  Aurora Loan Services LLC ("Aurora Loan Services") at relevant times was a Delaware limited liability company and a wholly owned subsidiary of Lehman Bank. It was not a party to LBHI's bankruptcy.

**Purchase of Loans by Lehman Bank From SecurityNational**

6.  Lehman Bank and SecurityNational entered into a Loan Purchase Agreement ("LPA") dated April 15, 2005 which established the terms pursuant to which Lehman Bank would purchase residential mortgage loans from SecurityNational. The LPA incorporated by reference a document known as the Seller's Guide which was issued by Aurora Loan Services.

---

[1] Lehman Bank's name was changed to Aurora Bank FSB, and presently Aurora Commercial Corporation is purportedly the successor organization to Aurora Bank FSB.

2

7. Many residential mortgage loans were purchased by Lehman Bank from SecurityNational pursuant to the LPA. The purchases allegedly included all of the loans set forth in Exhibit A attached hereto, which provide the alleged basis for LBHI's claims against SecurityNational (the "Loans"). The Loans purchased by Lehman Bank from SecurityNational were all purchased nine or more years ago in 2005, 2006 and 2007. SecurityNational never entered into any contract or transaction with LBHI relative to the Loans.

**Sale of Loans by Lehman Bank to LBHI – The LBHI Business "Plan" or "System"**

8. Over a period of time, Lehman Bank sold many residential mortgage loans to LBHI, which sales allegedly included the Loans. Upon information and belief, the sale agreement(s) between Lehman Bank and LBHI was materially different from the LPA and the Seller's Guide including the omission of similar representations and warranties.

9. The purchasing of loans by LBHI from Lehman Bank, including the Loans, was part of a business plan or system that was established involving LBHI and Lehman Bank.

10. With respect to the aforesaid business plan or system, Lehman Bank was typically the funder and purchaser of residential mortgage loans throughout the country, which loans to a substantial extent were thereafter purchased by LBHI from Lehman Bank. As admitted by LBHI in a court filing, it "acquired

3

LBB [Lehman Bank] [sic, i.e. Lehman Bancorp owned Lehman Bank, and Lehman Bancorp was a subsidiary of LBHI], a federally chartered savings bank, in order to provide LBHI with a cost effective method of financing the purchase of mortgage loans."

11. Further, LBHI admitted in a court filing that Lehman Bank was also acquired "to gain access to Federal Home Loan Bank funding, a stable and efficient funding source."

12. Lehman Bank's subsidiary, Aurora Loan Services, was also involved with residential mortgage loans as an operational arm of Lehman Bank's mortgage loan business, although, upon information and belief, Aurora Loan Services did not own any of the Loans.

13. A business purpose of the aforesaid "plan" or "system" involving LBHI and Lehman Bank was to protect the capital of Lehman Bank, thereby enhancing the bank's loan purchasing capacity so that the bank was able to buy more loans for subsequent sale to, and for the financial benefit of, LBHI.

14. Upon information and belief, when each of the Loans was sold by Lehman Bank to LBHI, Lehman Bank was fully compensated, i.e., at the time of the sale Lehman Bank was paid the full amount by LBHI that Lehman Bank had invested in each of the Loans at the time of the purchase by LBHI. As admitted in another court filing by LBHI, Lehman Bank "usually held loans it purchased from

4

[loan] originators ... for a short period of time, after which it generally sold the loans to LBHI at cost."

15.     Further, not only was Lehman Bank fully compensated for the sale of each of the Loans to LBHI, but, upon information and belief, LBHI purchased each of the Loans from Lehman Bank on a "non-recourse" basis so that LBHI had no remedies against Lehman Bank for any alleged deficiencies in any of the Loans. In a court filing dated July 15, 2009, LBHI expressly stated at page 5 thereof that "[t]he sales of the Residential Mortgage Loans from LBB [Lehman Bank] to LBHI were non-recourse, such that LBHI did not have remedies against LBB for any deficiencies of the Residential Mortgage Loans."

16.     This unusual approach of LBHI to purchase residential mortgage loans on a "non-recourse" basis from Lehman Bank served LBHI's and Lehman Bank's business interests by enhancing the financial capacity of the federally regulated Lehman Bank to purchase additional loans which in turn could be sold to LBHI. That is, not only would Lehman Bank be paid in full for the loans, but any potential or contingent liability to LBHI would be eliminated by the non-recourse nature of the sales.

**Indemnification Agreement**

17.     After Lehman Bank/Aurora Loan Services raised some alleged issues with respect to certain loans purchased by Lehman Bank from SecurityNational,

5

Lehman Bank and Aurora Loan Services entered into an Indemnification Agreement with SecurityNational dated December 17, 2007.

18. Among other things, the Indemnification Agreement governed payment for established loan "Losses" ("Losses" as defined in the Indemnification Agreement) by (i) Lehman Bank "and/or" (ii) Aurora Loan Services or the (iii) Servicer relative to loans sold to Lehman Bank by SecurityNational. Payments were made by SecurityNational for a period of time into an account from which money could be withdrawn for any established loan "Losses."

19. Pursuant to the Indemnification Agreement, SecurityNational deposited millions of dollars into the account. In November, 2010, after having more than $4.0 million dollars of SecurityNational's money taken from the Indemnification Agreement account for alleged loan "Losses," SecurityNational sent a letter expressing concerns about overpayment pursuant to said agreement, and questioned whether any further payments were due.

**Assignment of Rights Under the Indemnification Agreement to LBHI**

20. Months after SecurityNational's November, 2010 letter, an "Assignment Agreement" dated March 28, 2011 was entered into between "Aurora Bank FSB" (Lehman Bank) and Aurora Loan Services as assignors, and LBHI as assignee, for an assignment of rights and remedies under the December 17, 2007 Indemnification Agreement. Among other things the Assignment states:

6

    (a) To the extent assignable under the terms of the Agreement, the Assignor hereby assigns, transfers and conveys to the Assignee all rights it may have under the Agreement with respect to the LBHI Mortgage Loans, along with any or all of the remedies Assignor may have against the Seller under the Agreement with respect to the LBHI Mortgage Loans, including, without limitation, all repurchase and/or indemnification remedies and/or claims for damages.

21. After the aforesaid Assignment, LBHI sent on or about April 26, 2011 a monthly billing to SecurityNational for the first time claiming that a monthly payment relative to the Indemnification Agreement related account was due by May 10, 2011.

22. In view of the circumstances, including SecurityNational's concern for material overpayment from the Indemnification Agreement account, SecurityNational informed LBHI that the payment would not be made. Approximately one month later, LBHI unilaterally declared that the Indemnification Agreement was "null and void" as to any Losses not previously paid through SecurityNational's indemnification payments, which unilateral "null and void" declaration is disputed by SecurityNational.

23. In December, 2014 it was determined by Chief Judge David Nuffer of the United States District Court, District of Utah (case no. 2:11-cv-00434DN), that Lehman Bank and Aurora Loan Services materially breached the Indemnification Agreement by improperly utilizing more than $3.5 million dollars

of SecurityNational money from the Indemnification Agreement account for purported Losses but which losses were not suffered by Lehman Bank, Aurora Loan Services or the servicer. Thus, the payment allegedly due by SecurityNational as billed by LBHI in April, 2011 was not due, and the alleged basis for LBHI to declare the Indemnification Agreement null and void was not supported.

### Assignment of LPA Related Rights by Lehman Bank to LBHI

24. Another Assignment Agreement dated September 2, 2008 (months after the December 17, 2007 Indemnification Agreement was executed and approximately two weeks prior to LBHI filing bankruptcy) was also entered into between Lehman Bank as assignor, and LBHI as assignee, purportedly assigning certain rights under loan purchase agreements of various mortgage loan originating entities including SecurityNational ("LPA Assignment").

25. Section 1(a) of the LPA Assignment provides as follows:

> (a) The Assignor hereby assigns, transfers and conveys to the Assignee all of its rights in and to the Agreements, including rights in and to any or all representations, warranties or covenants made by Sellers to Assignor in the Seller's Guide and/or Agreements, along with any or all of the Assignor's remedies available against the Sellers for Sellers' breach of any representation, warranty or covenant under the Seller's Guide and/or Agreements, including, without limitation, the repurchase and indemnification remedies. Pursuant to Section 7 of the Seller's Guide, Assignee is an intended third party beneficiary of those representations, warranties,

8

covenants and remedies set forth in the Seller's Guide or Agreements.

26. The LPA Assignment makes no reference to specific loans to which rights or remedies are purportedly assigned.

**LBHI – Fannie Mae and Freddie Mac Agreements and Settlements**

27. After LBHI purchased the Loans from Lehman Bank LBHI asserts that it sold all of the Loans to either the Federal Home Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac"). SecurityNational was not a party to any of LBHI's agreements with Freddie Mac or Fannie Mae. Further, upon information and belief, a substantial number, if not all, of these sales involving Lehman Bank and LBHI, and LBHI and Fannie Mae and Freddie Mac predated the purported assignments relating to the Indemnification Agreement, and the LPA and Seller's Guide.

28. On or about September 22, 2009, Fannie Mae allegedly filed a proof of claim in LBHI's bankruptcy relative to asserted breaches of the agreement(s) between LBHI and Fannie Mae pertaining to certain loans. On or about September 22, 2009, Freddie Mac allegedly filed a proof of claim in LBHI's bankruptcy relative to asserted breaches of the agreement(s) between LBHI and Freddie Mac pertaining to certain loans.

29. In January, 2014, without any notice to, or any involvement of SecurityNational, LBHI entered into a settlement with Fannie Mae relative to

9

Fannie Mae's claim filed in the LBHI bankruptcy. Thereafter, without notice to, or any involvement of SecurityNational, LBHI entered into a settlement in February, 2014 with Freddie Mac relative to Freddie Mac's claim filed in the LBHI bankruptcy. The foregoing settlements allegedly involved numerous loans that had been sold to Fannie Mae and Freddie Mac, including the Loans.

30. Thereafter, LBHI filed a motion in the Bankruptcy Court dated May 29, 2014 wherein it unilaterally sought the establishment of non-binding alternative dispute resolution ("ADR") procedures, including non-binding mediation, for alleged indemnification claims against numerous mortgage loan originators, including SecurityNational, as a result of the aforesaid Fannie Mae and Freddie Mac settlements. SecurityNational filed an objection to the motion, including objecting to the jurisdiction of the Bankruptcy Court to enter any such order.

31. Under a reservation of all rights, including such pertaining to jurisdiction of the Bankruptcy Court, SecurityNational entered into an agreed form of order with LBHI relative to LBHI's motion for establishing alternative dispute resolution procedures which order is dated August 12, 2014.

32. Included in the aforesaid ADR procedures, for example, is a non-waiver of claims, defenses and remedies, as well as a non-waiver of a right to a jury trial. Further, there is no prohibition whatsoever against SecurityNational commencing litigation.

33. In August 2015, approximately one year after the August 12, 2014 ADR order, LBHI initiated the ADR procedures involving SecurityNational relative to the Loans which included mediation which took place in January, 2016 but which did not resolve the dispute between LBHI and SecurityNational.

34. The dispute between LBHI and SecurityNational involves millions of dollars claimed by LBHI based on alleged non-core indemnification claims involving the Loans. The alleged liability of SecurityNational is based solely on state law, and has nothing to do with bankruptcy law per se. SecurityNational disputes LBHI's position, asserting that SecurityNational has no liability to LBHI relative to the Loans.

## CLAIM FOR RELIEF

35. SecurityNational incorporates the allegations of paragraphs 1-34 as if fully set forth.

36. A substantial and actual continuing controversy exists between SecurityNational and LBHI as to their rights and other legal relations, including remedies, pertaining to the Loans.

37. For example, SecurityNational asserts that all of LBHI's claims against it, whether based on breach of contract, indemnification or otherwise, are barred by the statute of limitations. In addition to the foregoing, SecurityNational asserts in any event that LBHI has no claim against SecurityNational including

pursuant to the LPA and the Seller's Guide. The foregoing includes, but is not limited to, LBHI not having a claim as an assignee of purported rights from Lehman Bank, or as a purchaser of loans from Lehman Bank, and LBHI has no basis to assert against SecurityNational any indemnification for losses that it purportedly suffered relative to its relationship with Fannie Mae and Freddie Mac. Further, there are other issues, e.g. lack of notice to SecurityNational and lack of proof of breach of, or liability for any alleged losses pursuant to the LPA and Seller's Guide.

38.    Resolution of issues set forth herein will provide clarity, and be of service to the parties with respect to dispute resolution.

39.    Pursuant to applicable law, including the Delaware Declaratory Judgment Act, 10 Del. C. § 6501, et seq, this Court should enter judgment declaring the following:

(A)    Claims by LBHI against SecurityNational with respect to the Loans are barred by the statute of limitations.

(B)    Irrespective of the statute of limitations, LBHI has no claim against SecurityNational with respect to the Loans, including no claim pursuant to the LPA and incorporated Seller's Guide, including but not limited to §§ 710 and 711 of the Seller's Guide.

WHEREFORE, SecurityNational requests that judgment be granted in its favor against LBHI as follows:

(A)  Declaration(s) in favor of SecurityNational relative to the matters set forth herein, including paragraphs 37 and 39 hereof;

(B)  Attorney fees as may be permitted and costs; and

(C)  Such other and further relief deemed appropriate in the premises.

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Donald E. Reid*

Donald E. Reid (#1058)
Karl G. Randall (#5054)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*NationalSecurity Mortgage Company*

OF COUNSEL:

Gifford W. Price
MACKEY PRICE & MECHAM
350 American Plaza II
57 West 200 South
Salt Lake City, Utah 84101
(801) 575-5000

January 26, 2016

9757834