Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
*Counsel to Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ X
In re:                                                       :   Chapter 11
                                                             :   Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., et al.,                       :
                                                             :
                              Debtors.                       :
------------------------------------------------------------ X
```

## MOTION FOR SANCTIONS AGAINST WILLIAM KUNTZ III

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors [Docket No. 23023-1] (the "Plan"), submits this motion (the "Motion") for sanctions against William Kuntz III and, in support thereof, respectfully states as follows:

### PRELIMINARY STATEMENT

1.  LBHI is on the cusp of receiving nearly $1.5 billion and promptly distributing it to creditors as a result of the recently-approved settlement with JPMorgan. But a *pro se* litigant with a long, well-documented history of vexatious litigation, who this Court has repeatedly found to have no standing in these proceedings, has submitted frivolous papers that could delay that distribution, causing significant harm to the estates and creditors. LBHI does not lightly apply for sanctions against a *pro se* litigant, but this is not your average *pro se* litigant, and his antics have tipped over the line separating mere nuisance from something that will almost certainly cause substantial harm. LBHI has attempted to contact Mr. Kuntz in an effort to reason

with him, but those attempts have failed. LBHI therefore seeks sanctions in the form of any and all fees and expenses incurred in responding to Mr. Kuntz's submissions filed with respect to the Settlement Motion (defined below) and, to prevent him from causing similar harm in the future, an injunction preventing Mr. Kuntz from filing any pleadings in the above-captioned chapter 11 cases (the "Bankruptcy Cases") and any related adversary proceedings without prior approval of the Court.

## BACKGROUND

2.  On January 25, 2016, the Plan Administrator and the Committee filed the *Motion, Pursuant To Fed. R. Bankr. P. 9019 And 11 U.S.C. § 105(a), For Entry Of Order Approving Settlement Agreement With JPMorgan Chase Bank, N.A. And Certain Of Its Affiliates With Respect To Avoidance Action And Derivatives Claims Objections And Granting Related Relief* (the "Settlement Motion").

3.  The Settlement Motion requested approval of an agreement (the "Settlement Agreement") with JPMorgan Chase Bank, N.A. and certain of its affiliates (collectively, "JPMorgan") that resolved certain disputes among JPMorgan and the estates and that will result in the estates' receipt of sufficient cash to fund a $1.496 billion distribution to creditors.

4.  On January 30, 2016, Mr. Kuntz sent correspondence (the "January 30 Correspondence") to the Court (and others) which references the Settlement Agreement and suggests the matter should be stayed so an examiner can be appointed to investigate the loss of

2

stockholder equity.[1] A copy of this correspondence is attached hereto as **Exhibit 2**.[2] Mr. Kuntz's correspondence acknowledges and admits that all claims he filed against the estates have been expunged.[3]

5. On February 4, 2016, LBHI filed the *Certification Of No Objection Under 28 U.S.C. § 1746 Regarding Motion Of Lehman Brothers Holdings Inc. And Official Committee Of Unsecured Creditors, Pursuant To Fed. R. Bankr. P. 9019 And 11 U.S.C. § 105(a), For Entry Of Order Approving Settlement Agreement With JPMorgan Chase Bank, N.A. And Certain Of Its Affiliates With Respect To Avoidance Action And Derivatives Claims Objections And Granting Related Relief* (the "Certificate of No Objection"). The Certificate of No Objection attached the January 30 Correspondence.

6. On February 6, 2016, Mr. Kuntz sent correspondence (the "February 6 Correspondence") to counsel to JPMorgan. A copy of this letter is attached hereto as **Exhibit 5**. In this letter, Mr. Kuntz threatened to "confound the so called 'settlement.'" Exhibit 5 at 1 ("It would be far too easy to just sit back and file an appeal after Monday, assuming the Order is signed and confound the so called 'settlement.'").

7. On February 8, 2016, the Court conducted a hearing on the Settlement Motion at which the Settlement Agreement was approved. Mr. Kuntz did not attend the hearing, by

---

[1] As the Court is well aware, an examiner was appointed in these chapter 11 cases and submitted an extensive report examining, among other things, the transactions that formed the basis for the Avoidance Action (as defined in the Settlement Motion). See Order Directing Appointment Of An Examiner Pursuant To Section 1104(c)(2) of the Bankruptcy Code, Jan. 16, 2009, ECF 2569; Examiner Report, Volume 4 (examining pre-petition transfers involving JPMorgan).

[2] On February 3, 2016, the January 30 Correspondence was filed on the docket [Docket No. 51973].

[3] See Exhibit 2 at 1 ("I had my prior claims expunged . . . ."); Exhibit 3 at 1 (acknowledging the "expungement" of his claims). A copy of the relevant portions of the Claims Register reflecting the expungement of Mr. Kuntz's claims (Nos. 10509, 10510, 10511, 33550, 33551, 33552, 35120, 35121, 35122, 35123, 35430) is attached hereto as **Exhibit 4**.

telephone or otherwise. On the same day, the Court signed the *Order Granting Settlement Agreement* (the "Settlement Order") and entered it on the docket in the Adversary Proceeding [Adv. Proc. ECF No. 39].

8. On February 9, 2016, Mr. Kuntz sent via facsimile copies of the *Motion For Enlargement Of Time Within Which To File An* [sic] *Notice Of Appeal To The JPM Settlement Agreement* (the "Enlargement Application").

9. On February 11, 2016, the Court docketed the Settlement Order in the Chapter 11 Cases [ECF No. 52002].

10. On February 13, 2016, Mr. Kuntz sent via facsimile copies of the *Brief Memorandum In Support Of Motion To Enlarge Time* (the "Enlargement Memorandum").

11. On February 16, 2016, LBHI filed the *Opposition To Application For Enlargement Of Time Within Which To File A Notice Of Appeal From JPM Settlement Agreement* [ECF No. 52027] (the "Opposition").

12. On February 17, 2016, Mr. Kuntz sent via facsimile another letter addressing the Settlement Order (the "February 17 Correspondence"). A copy of the February 17 Correspondence is attached hereto as **Exhibit 6**. As explained herein, the Kuntz Submissions represent the most recent chapter in a pattern of vexatious conduct in this Court and others.

13. On February 18, 2016, Mr. Kuntz filed a purported notice of appeal from "the order of the court made on the 8th of Feb, 2016 which approved the proposed settlement between the estate of Lehman and the JPM Chase Bank" [ECF No. 52096] (together with the Enlargement Application, the Enlargement Memorandum, the January 30 Correspondence and the February 17 Correspondence, the "Kuntz Submissions").[4]

---

[4] The filing was entered on the electronic docket on February 19, 2016.

4

14. By this Motion, LBHI respectfully requests that the Court sanction Mr. Kuntz for acting in bad faith, vexatiously, and/or for oppressive reasons in connection with the Kuntz Submissions. Specifically, LBHI requests that the Court (a) require Mr. Kuntz to reimburse LBHI for any and all fees and expenses incurred by LBHI in responding to the Kuntz Submissions; (b) enjoin Mr. Kuntz from filing any complaint, motion, objection, pleading, or notice of appeal in the Bankruptcy Cases or any related adversary proceedings without first seeking leave of the Court; and (c) award such other, further relief as is deemed appropriate.

**ARGUMENT**

15. Federal courts—including bankruptcy courts—have inherent authority to "sanction parties appearing before it for acting in bad faith, vexatiously, or for oppressive reasons." Sassower v. Field, 973 F.2d 75, 80–81 (2d Cir. 1992) (citing Chambers v. Nasco, Inc., 501 U.S. 32, 44–45 (1991)); see O'Toole v. Wrobel (In re Sledziejowski), Adv. Pro. No. 13-098317, 2015 WL 2128595, at *5 (Bankr. S.D.N.Y. May 4, 2015) ("[B]ankruptcy courts possess the same inherent sanction powers that district courts enjoy."). Further, bankruptcy courts have the ability to "issue any order . . . that is necessary or appropriate to carry out the provisions of [title 11 of the United States Code (the "Bankruptcy Code")]." 11 U.S.C. § 105(a).

**I.    MR. KUNTZ IS A VEXATIOUS LITIGANT WHO LACKS STANDING**

   **A.    Mr. Kuntz Has No Standing To Object Or Appeal**

16. Mr. Kuntz lacks standing to object to the Settlement Motion or to appeal the Settlement Order, and the Kuntz Submissions are therefore frivolous. See, e.g., DISH Network Corporation v. DBSB N. Am. (In re DBSH N. Am.), 634 F.3d 79, 89 (2d Cir. 2011) (noting that "in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order

5

of the bankruptcy court"); Ace Am. Ins. Co. v. Old HB, Inc. (In re Old HB, Inc.), 525 B.R. 218, 222 (S.D.N.Y. 2015) (noting standard is "stricter than Article III's injury in fact test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters'") (quoting Drawbridge Special Opp. Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 242 (2d Cir. 2013)).

17.    There is no doubt that Mr. Kuntz lacks standing. As Judge Peck explained in his *Memorandum Opinion Granting Debtors' Objection to Claims 33660, 33551, 33552, 35121 and 35430 of William Kuntz III* [Docket No. 12662] (the "November 2010 Opinion"), issued over five years ago, even at that time "[Mr. Kuntz's] standing as a creditor ha[d] been suspect for some time . . . ." November 2010 Opinion at 1. In an order expunging Mr. Kuntz's claims, the Court stated:

> After giving Mr. Kuntz every opportunity to explain himself at the hearing on October 27 and every benefit of the doubt as to the probative value of evidence that might be presented through witnesses called by Mr. Kuntz, the Court is unable to discern any merit whatsoever to Mr. Kuntz's theory of liability and concludes that he should not even be permitted to try to establish the validity of his claim by calling witnesses such as Warren Buffet who are obvious strangers to the facts.

Id. at 4. Mr. Kuntz appealed the Court's decision and moved for a stay pending appeal, but Mr. Kuntz shortly thereafter consented to dismissal of the appeal. *Memorandum Decision Denying Motion Of William Kuntz III For Reconsideration Of Decision Granting Objections To His Claims* [Docket No. 12662] ("May 2012 Opinion") at 1. Kuntz then waited over ten months before filing a motion to reconsider, which was denied by the Court in the May 2012 Opinion, stating that "Mr. Kuntz has not shown and, in practical terms is incapable of showing, any facts consistent with his contention that Debtors are somehow liable to him for claims arising out of the Grand Union bankruptcy." Id. at 4.

6

18. Mr. Kuntz even acknowledges his lack of standing. <u>See</u> Enlargement Memorandum at 3 ("It is unclear that Movant is still 'a party in interest[.]'"); Enlargement Application at 1 (acknowledging the "expungement" of his claims); January 30 Correspondence ("I had my prior claims expunged by Judge Peck . . . ."). Despite recognizing that he has no standing, Mr. Kuntz nevertheless submitted the frivolous Kuntz Submissions, harming actual creditors in the process.

### B. Mr. Kuntz Has A Long History Of Vexatious Litigation

19. Mr. Kuntz is a well-known serial litigant. LBHI directs the Court to a decision issued by the District Court over 20 years ago, in which the District Court found that

> Kuntz's status as a *pro se* litigant is of little import. During his fourteen-year participation in the underlying Grant bankruptcy proceedings, Kuntz has amassed litigation experience that would embarrass the majority of associates, and some partners, at large New York law firms. He has already filed no fewer than eight appeals, all unsuccessful, with six dismissed as either untimely or for failure to prosecute. I had to adjourn one conference in this action because Kuntz had an argument before the Second Circuit. Although I am unsure what significance to give to the ten years that Kuntz purportedly spent in law school, I find that his failure to comply with court rules, procedures, and deadlines is the result of conscious disregard, and not because of unfamiliarity with the courts. Throughout the proceedings, Kuntz has demonstrated a consistent pattern of vexatious litigation and little respect for the courts or other parties. The acts required of Kuntz were within his complete control and there was no acceptable reason for the delay.

<u>Kuntz v. Pardo</u>, 160 B.R. 35, 39 (S.D.N.Y. 1993) (Sotomayor, J.). The court further stated that

> Kuntz's dilatory conduct throughout his participation in the Grant case evinces bad faith. Apart from the lack of merit to his appeals, he has repeatedly failed to abide by the rules of the court and repeatedly fails to prosecute the appeals that he has filed. By contrast to cases holding that a party should not be penalized without considering the relative culpability of the appellant and his or her attorney, Kuntz has elected to appear *pro se* and thus the culpability is all his. There is no injustice manifest in allowing Kuntz to bear the brunt of his own neglect.

<u>Id.</u> (internal citations omitted); <u>see also</u> <u>In re Silicon Graphics, Inc. et al.</u>, Case No. 06-10977 (Bankr. S.D.N.Y. June 20, 2007) (Mem. Decision Denying Mot. Of William Kuntz III For An

7

Order Reinstating His Proof of Claim, at 6) [Docket No. 877], aff'd, Case No. 07-7698 (DAB) (S.D.N.Y. Sept. 29, 2008) [Docket No. 9] (finding that Kuntz's "extensive legal experience, unlike many other pro se litigants, invokes little sympathy from this Court"); In re Commercial Financial Services, Inc., 238 B.R. 479, 484 n.7 (Bankr. N.D. Okla. 1999) (noting that Kuntz has considerable experience with federal law and his *pro se* status is not something the court considered relevant).[5]

---

[5] The court in Commercial Financial listed some of the published and unpublished decisions that Kuntz has been an active party:

> Kuntz v. DASU LLC, (In re Cray Computer Corp.), 145 F.3d 1345 (Table) (10th Cir. 1998); Kuntz v. Cray Computer Corp. (In re Cray Computer Corp.), 107 F.3d 880 (Table) (10th Cir. 1997); Kuntz v. Grand Union Co. (In re Grand Union Co.), 106 F.3d 385 (Table) (3d Cir. 1996); Kuntz v. Saul, Ewing, Remick & Saul, 200 B.R. 101 (D. Del. 1996) (Kuntz sanctioned for pursuing a frivolous appeal, notwithstanding his *pro se* status, because of Kuntz's extensive appellate experience – listing failed federal and state appeals); Kuntz v. Cray Computer Corp. (In re Cray Computer Corp.), 97 F.3d 1464 (Table) (10th Cir. 1996); Kuntz v. Nova Vista Industries, Inc. (In re Nova Vista Industries, Inc.), 1992 WL 60395 (S.D.N.Y. 1992); In re Adirondack Railway, 1990 WL 124225 (N.D.N.Y. 1990); Ehre v. State of New York (In re Adirondack Railway), 93 B.R. 867 (N.D.N.Y. 1998); In re W.T. Grant Co., 85 B.R. 250 (Bankr. S.D.N.Y. 1988), aff'd in part, reversed in part, 119 B.R. 898 (S.D.N.Y. 1990) (denial of Kuntz's request for fees and expenses); In re One Westminister Co., 74 B.R. 37 (D. Del. 1987); In re W.T. Grant Co., 4 B.R. 53 (Bankr. S.D.N.Y. 1980).

> Kuntz brought an action in connection with the fate of The Peter Kuntz Company, a company apparently founded by his grandfather, against six banks, an investment firm, and John and Jane Does 1-299, alleging a conspiracy to dismantle the company. See Kuntz v. Shawmut Bank of Boston, 1987 WL 11172 (S.D.N.Y. 1987).

> Kuntz also sued the New York State Senate, the New York State Board of Elections, various individuals, and numerous John and Jane Does, claiming constitutional violations in connection with Kuntz's attempt to run as an independent candidate for the United States House of Representatives in 1992. See Kuntz v. New York State Board of Elections, 924 F. Supp. 364 (N.D.N.Y. 1996); Kuntz v. New York State Senate, 113 F.3d 326 (2d Cir. 1997).

> Kuntz has filed complaints against the New York Stock Exchange (motion for leave to appeal denied, 92 N.Y.2d 877 (1998)); the Board of Governors of the Federal Reserve, *see* 1997 WL 150062 (D.C. Cir. 1997); the City of Dayton, Ohio, see 99 F.3d 1139 (Table) (6th Cir. 1996); the Department of Energy (1995); and the United States Postal Service (1993). Kuntz has also been to Tax Court, although not *pro se*. See Kuntz v. Commissioner, 64 T.C.M 1258 (1992).

> Further, Kuntz has unsuccessfully petitioned to the United States Supreme Court for writs of certiorari in numerous cases, including Kuntz v. Fadness, 519 U.S. 996 (1996); Kuntz v. Shawmut Bank of Boston, 501 U.S. 1252 (1991); Kuntz v. Manley, Burke and Fischer, *L.P.A.*,

20. Mr. Kuntz's addiction to frivolous litigation has continued in this case. See Pete Brush, *Lehman Pro Se Gadfly Appeals Judge's Dismissal*, LAW360, Nov. 19, 2010, *available at* http://www.law360.com/articles/210408/lehman-pro-se-gadfly-appeals-judge-s-dismissal. As previously discussed, the frivolous and vexatious nature of Mr. Kuntz's behavior has been recognized by this Court. See November 2010 Opinion at 2–3 ("Mr. Kuntz is a seasoned *pro se* litigation veteran who seems to relish coming to court to articulate provocative positions and to take issue with the retained professionals."); id. at 3–4 ("Mr. Kuntz's propensity to raise questions and to litigate has been a complicating factor that has added to the length of certain hearings. No doubt these activities . . . have been a source of some incremental administrative expenses."); id. at 10 ("To permit the hearing proposed by Mr. Kuntz in the context of these cases would be unnecessary, unreasonable and, in the Court's view, vexatious."); see also May 2012 Opinion at 1 ("Mr. Kuntz continues to press the tired and unsupported theme that Lehman Commercial Paper Inc. . . . is liable to him because of an allegedly improper diversion to the Debtors of funds that had been deposited in connection with earlier unrelated bankruptcy cases involving the Grand Union supermarket chain."); id. at 4 ("As a *pro se* litigant, Mr. Kuntz has been attempting for years to impose liability on the Debtors in relation to the earlier Grand Union bankruptcy cases, but his ongoing efforts are based on no more than speculation.").

---

500 U.S. 918 (1991); Kuntz v. City of Dayton, 499 U.S. 962 (1991); Kuntz v. Society Bank, N.A., 498 U.S. 1089 (1991); Kuntz v. Little Miami Railroad Co., 498 U.S. 1027 (1991); Kuntz v. City of Dayton, 488 U.S. 1008 (1989); Kuntz v. Shawmut Bank of Boston, 488 U.S. 952 (1988); Kuntz v. Winters National Bank and Trust Co., 465 U.S. 1080 (1984).

Commercial Financial, 238 B.R. at 484 n.7.

9

## II. SANCTIONS ARE APPROPRIATE

### A. Monetary Sanctions Are Appropriate

21. It is well recognized that courts have the authority to award attorneys' fees and costs as a sanction against a party for acting in bad faith, vexatiously, wantonly, or for oppressive reasons. Sassower v. Field, 973 F.2d 75, 80–81 (2d Cir. 1992) (upholding a district court's award of monetary sanctions against pro se litigants). Here, the Kuntz Submissions continue an extensive pattern of vexatious conduct—recognized by this and numerous other courts, see infra ¶¶ 18–19—and recycle baseless and incomprehensible arguments previously rejected by the Court. See November 2010 Opinion at 5–6, 8 (referring to Kuntz's claims as (a) "quite obviously devoid of any documentary support"; (b) "lacking in supporting evidence and logical linkage to the Debtors' cases"; and (c) "founded on pure speculation").

22. Further, as explained in the Opposition, Mr. Kuntz provided no cognizable legal or factual bases for his entitlement to the relief in the Kuntz Submissions. Mr. Kuntz's claims that his recent re-entry into these bankruptcy proceedings is not a case of "sour grapes" and does not represent an attempt to "extract/extort a settlement" strain credulity. Compare February 6 Correspondence at 1 ("It would be far too easy to . . . confound the so called 'settlement'"), with Enlargement Memorandum at 1 ("It might also be suggested that this is an attempt to extract/extort a settlement . . . ."). Under these circumstances, an award of attorneys fees and costs as requested herein is appropriate, to recompense the Estates for the costs imposed on it by the frivolous Kuntz Submissions.[6]

---

[6] To the extent it may become necessary, Movants reserve the right to seek further relief in the United States District Court for the Southern District of New York including, but not limited to, damages pursuant to Rule 8020 of the Federal Rules of Bankruptcy Procedure. See Fed. R. Bank. P. 8020(a) ("If the district court . . . determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee."); id. 8020(b) ("The district court . . . may . . . sanction a[] . . . party appearing before it for other misconduct . . . .").

10

### B.    A Filing Injunction Is Appropriate As Sanctions

23.    While monetary sanctions will alleviate some of the harm caused by the Kuntz Submissions, to the extent Mr. Kuntz causes a delay in the distribution to creditors of the cash due under the Settlement Agreement, creditors will nevertheless suffer significant harm in having a $1.5 billion cash distribution delayed.  Moreover, Mr. Kuntz's extensive history calls into question whether monetary sanctions will serve as a sufficient deterrent to similar behavior in the future.  Additional sanctions are therefore appropriate to ensure this situation does not repeat itself with future settlements.

24.    It is well-recognized that "federal court[s] [have] . . . authority to restrict the activity of abusive litigants." In re Troung, No. 09-11047, 2009 WL 2929261, at *7 (Bankr. S.D.N.Y. Sept. 3, 2009); see also Deep v. Danaher, 393 B.R. 51, 54–55 (N.D.N.Y. 2008) (holding that, pursuant to a bankruptcy court's discretionary authority under section 105(a) of the Bankruptcy Code, bankruptcy courts could enjoin future filings by a party absent leave of court). In exercising this authority, "[a] history of litigation entailing 'vexation, harassment and needless expenses to [other parties]' and 'an unnecessary burden on the courts and their support personnel' is enough." Martin-Trigona v. Lavien (In re Martin-Trigona), 737 F.2d 1254, 1262 (2d Cir. 1984) (quoting Shuffman v. Hartford Textile Corp. (In re Hartford Textile Corp.), 681 F.2d 895, 897 (2d Cir. 1982)).  Mr. Kuntz's behavior in this case is a prototypical example of the circumstances under which the relief currently requested is appropriate and necessary.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, LBHI respectfully requests that the Court enter an Order substantially in the form attached hereto as **Exhibit 1** (a) require Mr. Kuntz to reimburse LBHI for any and all fees and expenses incurred by LBHI in responding to the Kuntz Submissions; (b) enjoin Mr. Kuntz from filing any complaint, motion, objection, pleading, or notice of appeal in the Bankruptcy Cases or any related adversary proceedings without first seeking leave of the Court; and (c) awarding such other, further relief as is deemed appropriate.

Dated:  February 19, 2016
        New York, New York

                                        Respectfully submitted,

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

                                        By: */s/ Andrew J. Rossman*
                                            Susheel Kirpalani
                                            Andrew J. Rossman
                                            James C. Tecce
                                            Tyler G. Whitmer

                                            *Counsel to Lehman Brothers Holdings Inc.*