Alex R. Rovira
Brian J. Lohan
Andrew P. Propps
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5959

*Attorneys for Skandinaviska Enskilda Banken AB (publ)*

Response Deadline: Feb. 19, 2016 at 4 p.m.
(extended by agreement with Debtors)

Hearing Date: adjourned *sine die*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                                        :
In re:                                                                  :
                                                                        :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*                                : Chapter 11
                                                                        : Case No. 08-13555 (SCC)
                      Debtors.                                          :
                                                                        :
------------------------------------------------------------------------X

**RESPONSE AND RESERVATION OF RIGHTS OF SKANDINAVISKA ENSKILDA BANKEN AB (PUBL) TO THE PLAN ADMINISTRATOR'S FIVE HUNDRED EIGHTH OMNIBUS OBJECTION TO CLAIMS (DISPUTED VALUATION CLAIMS)**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Skandinaviska Enskilda Banken AB (publ) ("SEB"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Plan Administrator's Five Hundred Eighth Omnibus Objection to Claims (Disputed Valuation Claims) [Dkt. No. 50899] dated September 4, 2015 (the "Objection"), with respect to Claim No. 26485 (the "Guarantee Claim"). In support of the Response, SEB respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    By its Objection, Lehman Brothers Holdings Inc. ("LBHI") seeks to force SEB into accepting less than the 100% recovery to which it is entitled. LBHI unconditionally and

irrevocably guaranteed the obligations of its Swiss affiliate Lehman Brothers Finance S.A. ("LBF") under the LBF ISDA Agreement (as defined below), and waived any rights it may have had to protest the amount of LBF's obligations.

2. Nevertheless, LBHI includes the Guarantee Claim in an omnibus claims objection purporting to dispute the valuation of several claims; it does so without providing any basis for a different valuation – or even contesting the valuation of either the Guarantee Claim or SEB's underlying claim against LBF. Instead, LBHI argues without basis that between distributions made by LBF and LBHI funds deposited with SEB, with regard to which SEB has setoff rights, SEB ultimately will receive a full recovery and that SEB will have to return a portion of those deposited funds to LBHI. Therefore, LBHI argues, the Guarantee Claim should be reduced to $0, precluding any recovery by SEB from LBHI with regard to the LBF ISDA Agreement.

3. LBHI's argument is premature. The court-appointed liquidator of LBF is still in the process of making distributions – to date, it has distributed 57.7% of the value of unsecured claims. There is no assurance of any substantial future distributions from LBF. Indeed, the most recent report to LBF's creditors indicates that any further distributions largely will be dependent on the liquidator's successful pursuit of litigation, and the liquidator notes that creditors may receive *no* further distributions whatsoever. If at some point in the future, distributions from LBF reach such a level that LBF's obligations are satisfied by setoff of a portion of the deposited funds, SEB will return any excess funds, and the Guarantee Claim necessarily would be classified as satisfied in accordance with LBHI's confirmed Plan. Until that time, however, the Court should not allow LBHI to force SEB to accept an incomplete recovery but instead should permit SEB an avenue of recovering through LBHI's uncontested guarantee of LBF's obligations.

2

**RELEVANT BACKGROUND**

4. On October 7, 1994, SEB and LBF entered into a 1992 ISDA Master Agreement (Multicurrency—Cross Border) (the "LBF Master Agreement") and Schedule (the "LBF Schedule") and Credit Support Annex (together with any confirmations thereto, the "LBF ISDA Agreement"). The LBF ISDA Agreement is governed by English law.

5. As Credit Support Provider under the LBF ISDA Agreement, LBHI provided a signed guarantee of LBF's obligations under the LBF ISDA Agreement (the "LBHI Guarantee"). The LBHI Guarantee is governed by New York law.

6. On September 15, 2008 (the "Petition Date"), LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 29, 2008, the Swiss Federal Banking Commission issued an order commencing the liquidation of LBF under Swiss law and appointing PricewaterhouseCoopers AG, Zurich as liquidator of LBF (the "Liquidator"). On December 19, 2008, at the request of the Liquidator, the Swiss Federal Banking Commission converted LBF's proceeding to a bank/security dealer bankruptcy proceeding, with the Liquidator acting as bankruptcy liquidator of LBF.

7. As Credit Support Provider, LBHI's bankruptcy filing constituted an event of default under the LBF Master Agreement, which caused the termination of all transactions under the LBF ISDA Agreement. SEB was required to calculate the Settlement Amount (as defined in the LBF Master Agreement).[1] SEB calculated the Settlement Amount and on November 5, 2008, provided LBF a calculation statement as required by the LBF Master Agreement. SEB subsequently amended the calculation statement on December 17, 2008. This amended

---

[1] The LBF Schedule provides SEB, as the non-defaulting party under the LBF ISDA Agreement, the right to designate the termination currency so long as such currency "is freely available and convertible." LBF Schedule Part 1(g). SEB designated the termination currency as the Swedish krona. As such, the amount payable by LBF to SEB is in Swedish kronor (except for certain attorney's fees denominated in Swiss francs, as described below).

3

calculation statement, provided to the Liquidator, showed an amount payable by LBF of SEK 38,836,979, plus interest (as subsequently updated by SEB, the "Settlement Claim").[2]

8.      On September 22, 2009, SEB filed the Guarantee Claim. In the Guarantee Claim, SEB asserted a claim for not less than approximately $6,057,320.19. This amount consisted of $5,757,038.11 (SEB's calculation of the U.S. dollar equivalent of the SEK 38,836,979[3] listed in its December 17, 2008, calculation statement), $257,581.08 (accrued interest through September 20, 2009), and $42,701.00 (attorney's fees). SEB reserved its rights with regard to adding accruing interest and fees to the claimed amount.

9.      In its proof of claim, SEB also reserved certain rights with regard to a Danish krone denominated account (the "DKK Account") into which LBHI had deposited funds prior to the Petition Date. SEB disclosed the existence of the DKK Account and that it intended to exercise setoff rights with regard to the Guarantee Claim. Since the Petition Date, SEB has returned to LBHI certain funds deposited post-petition into the DKK Account pursuant to a stipulation with LBHI, which was filed with, and approved by, this Court. *See* Dkt. No. 8683. SEB also reached agreement with LBHI recognizing SEB's right of setoff relating to LBHI's guarantee of the obligations of Lehman Brothers Commercial Corporation, after which SEB withdrew funds from the DKK Account to the extent of that right of setoff. The DKK Account

---

[2] "SEK" denotes amounts denominated in the Swedish krona. "DKK" denotes amounts denominated in the Danish krone, and "CHF" denotes amounts denominated in the Swiss franc.

[3] As required by section 502(b) of the Bankruptcy Code, SEB converted the amounts due in Swedish kronor into U.S. dollars using an exchange rate as of the Petition Date, namely $1 = SEK 6.746. Converting the amounts submitted in Swedish kronor from Swedish kronor directly to U.S. dollars is appropriate for calculating the amount of the Guarantee Claim. The amounts submitted by SEB in Swedish kronor should not be converted into U.S. dollars directly from the Swiss franc amount determined by the Liquidator, as that amount was determined for the Liquidator's convenience and for the purposes of the Swiss proceeding based on the actual claim, which was in Swedish kronor, and used an exchange rate from Swedish kronor to Swiss francs as of December 22, 2008.

4

currently holds approximately DKK 11,089,484.25 (approximately $1,644,571, applying the exchange rate as of 8:30 a.m. EST on February 16, 2016, namely DKK 1 = $0.1483).

10. In March 2011, the Liquidator informed SEB that it must submit promptly any updated interest or attorney's fees or forfeit any additional amounts. On March 31, 2011, SEB did so, providing the Liquidator with total amounts of SEK 39,353,797.00 (including the Settlement Amount and accrued interest to December 22, 2008) plus CHF 7,991.35 in attorney's fees. In December 2012, the Liquidator notified SEB that it had accepted the amounts provided by SEB, but that the Liquidator had converted the Settlement Claim into Swiss francs in an amount of CHF 5,475,229.80.

11. Applying exchange rates as of the Petition Date,[4] the updated amounts submitted by SEB on March 31, 2011, total $5,840,811.12. In addition to this amount, the Guarantee Claim includes interest that has accrued on and after December 22, 2008 (as of February 17, 2016, no less than SEK 7,435,265, or $1,102,173.88) and attorney's fees and expenses that continue to accrue (no less than $190,808.94, including the $42,701 listed in SEB's proof of claim), for all of which LBF is obligated pursuant to the LBF ISDA Agreement and thus LBHI is obligated under the LBHI Guarantee. Thus the Guarantee Claim is in an amount no less than $7,133,793.94.

12. On December 6, 2011, this Court entered its *Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Dkt. No. 23023] (the "Confirmation Order," and such confirmed plan, the "Plan").

13. On September 4, 2015, LBHI filed the Objection. Through the Objection, LBHI asks this Court to reduce the Guarantee Claim to $0 because LBHI has calculated that after

---

[4] Namely, $1 = SEK 6.746 for amounts submitted by SEB in Swedish kronor, and $1 = CHF 1.1158 for amounts submitted by SEB in Swiss francs.

5

receiving all distributions from LBF and applying the funds in the DKK Account, SEB will be fully satisfied.

## RESPONSE

### I. LBHI Has Failed to Meet its Evidentiary Burden.

14. A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 551 (5th Cir. 1985). Once a proof of claim has been properly filed, thereby establishing its *prima facie* validity, the burden rests on any objectors to that claim to demonstrate "sufficient evidence" to overcome such *prima facie* validity. *In re Adelphia Commc'ns Corp.*, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007). An objection lacking such sufficient evidence is insufficient to negate a claim's *prima facie* validity. "The case law is clear. To prevail, an objector must affirmatively produce evidence to counter [a] creditor's claim." *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, 1999 WL 178788 at *4 (S.D.N.Y. Mar. 31, 1999).

15. LBHI has provided no evidence – sufficient or otherwise – supporting its objection to the Guarantee Claim. It simply recites that it has "review[ed] the relevant documentation and the Chapter 11 Estates' books and records," and after doing so, it determined that the Guarantee Claim should be reduced to $0. This is insufficient to negate the Guarantee Claim's *prima facie* validity, and the Objection should be overruled.

### II. LBHI Has No Basis on Which to Object to the Guarantee Claim.

16. LBHI has no right under the LBHI Guarantee to object to the amount of the Guarantee Claim. The amount of the Guarantee Claim depends on the amount of LBF's obligations to SEB under the LBF ISDA Agreement, which amount has been agreed to by LBF's

6

court-appointed Liquidator. Even if through the Objection LBHI is objecting to the Guarantee Claim on the basis that the underlying claim against LBF is satisfied, that objection fails because SEB's underlying claim against LBF has not been fully satisfied, and LBHI at this point cannot show that it ever will be satisfied, even with the application of the funds held in the DKK Account.

17. In fact, SEB understands that in the Liquidator's most recent report to LBF's creditors, provided in September 2015, the Liquidator indicated the possibility that *no* further distributions would be forthcoming from LBF. The Liquidator's estimated recovery ranged from 57.7% – the amount *already* distributed – to 63%, largely depending on the outcome of various litigation cases. Any attempt by LBHI to quantify the potential distributions to LBF's creditors based on these unresolved litigation cases should not be given any weight. *See, e.g.*, *In re Dewey & LeBouef LLP*, 478 B.R. 627, 642 (Bankr. S.D.N.Y. 2012) ("[T]he success rate of complex and protracted future litigation . . . is largely uncertain. While the Debtor estimates that partners received roughly $400 million in distributions during periods subject to various estate causes of action, the results of what is likely to be protracted litigation to recover more money would be uncertain . . . .").

18. LBHI does not, and cannot, contest the *validity* of its obligation to fulfill its guarantee of amounts payable by LBF. LBHI executed the LBHI Guarantee, and the LBHI Guarantee specifically references the LBF ISDA Agreement in its preamble. Under the LBHI Guarantee, LBHI

> unconditionally guarantees to [SEB] the due and punctual payment of all amounts payable by [LBF] under each Transaction when and as [LBF's] obligations thereunder shall become due and payable in accordance with the terms of the [LBF ISDA] Agreement. In case of the failure of [LBF] to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by [SEB], to pay or

7

        cause to be paid any such amounts punctually when and as the same shall become due and payable.

LBHI Guarantee ¶ (a). The LBHI Guarantee thus provides that LBHI shall pay to SEB any amount under the LBF ISDA Agreement payable by LBF – which amount, pursuant to the LBF ISDA Agreement, is to be determined by SEB.[5]

    19.    LBHI agreed that its obligations under the LBHI Guarantee "constitute a guarantee of payment when due and not of collection," LBHI Guarantee ¶ (b), and are

> **unconditional**, **irrespective of the validity, regularity or enforceability of the [LBF ISDA] Agreement against [LBF] . . . , the absence of any action to enforce [LBF's] obligations under the [LBF ISDA] Agreement, any waiver or consent by [SEB] with respect to any provisions thereof, the entry by [LBF] and [SEB] into additional Transactions under the [LBF ISDA] Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor** (excluding the defense of payment or statute of limitations, neither of which are waived); provided, however, that **Guarantor shall be entitled to exercise any right** that [LBF] could have exercised under the [LBF ISDA] Agreement **to cure any default** in respect of its obligations under the [LBF ISDA] Agreement **or to setoff, counterclaim or withhold payment in respect of any Event of Default or Potential Event of Default in respect of [SEB] or any Affiliate, but only to the extent such right is provided to [LBF] under the [LBF ISDA] Agreement**.

LBHI Guarantee ¶ (c) (emphasis added). LBHI also agreed to waive "promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the [LBF ISDA] Agreement and this Guarantee." LBHI Guarantee ¶ (f)(i).

---

[5] English law, which governs the LBF ISDA Agreement, imposes a high burden on a defaulting party to contest the non-defaulting party's calculation of Loss: "[I]n considering whether the non-defaulting party has 'reasonably determined' its Loss, that party is not required to comply with some objective standard of care as in a claim for negligence, but, expressing it negatively, must not arrive at a determination which no reasonable non-defaulting party could come to. It is essentially a test of rationality . . . ." *Fondazione Enasarco v. Lehman Bros. Fin. S.A.*, [2015] EWHC 1307 (Ch.), [53] (citing cases). Even if LBHI were permitted under the LBHI Guarantee to contest the amount due, and it cannot (*see* ¶¶ 16, 20), LBHI still would have to make a showing of irrationality in SEB's calculation, which it has not even *attempted* to do.

8

20.     Under New York law, even without the language in LBHI Guarantee paragraph (c), the LBHI Guarantee is an "absolute and unconditional" guarantee, under which LBHI has waived all defenses. *See, e.g.*, *U.S. Bank Nat'l Assoc. v. Perlmutter (In re S. Side House, LLC)*, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) ("New York State courts have long recognized that when a party guarantees payment of a debt, as opposed to collection of a debt, the guaranty is absolute and unconditional." (citations omitted)).  LBHI has thus waived any right to object to the amount of the LBF obligations for which it has provided the LBHI Guarantee, as well as any procedural requirements for SEB's assertion of its rights under the LBHI Guarantee. *See, e.g.*, *First New York Bank for Business v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("Absolute and unconditional guaranties . . . are consistently upheld by New York courts.  Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims." (citations omitted)); *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 495 (2015) (despite guarantor's arguments regarding the validity of the underlying debt, he "remains subject to his agreed upon absolute and unconditional liability because he claims a 'circumstance which might otherwise constitute a defense available to . . . a guarantor,' barred" by the guarantee (citations omitted)).  SEB is entitled to payment from LBHI to the extent that LBF does not meet its obligations.

21.     In 2012, the Liquidator accepted SEB's calculation of the amounts due from LBF – it did not exercise any rights LBF may have had to object to SEB's calculation statement.  The Liquidator continues to respect this accepted amount, making distributions on account of SEB's claim under the LBF ISDA Agreement totaling 57.70% of the Settlement Claim, or approximately CHF 3,159,208, through September 2015 based on that accepted amount.  The Plan provides that any distribution made in foreign currency with regard to obligations

9

guaranteed by LBHI are to be converted into U.S. dollars using an exchange rate as of the date of confirmation of the Plan; the converted amount is to be used for determining whether LBHI's guarantee obligations have been satisfied. Plan Section 8.13(d). Applying the proper exchange rate, the distributions by the Liquidator to date total approximately $3,409,831.

22. The distributions received on account of SEB's claim against LBF thus fall far short of LBF's obligation under the LBF ISDA Agreement and LBHI's obligation under the LBHI Guarantee. Even if SEB were to apply the amounts currently held by SEB in the DKK Account (DKK 11,089,484.25, or approximately $1,644,571),[6] at this point in time, given the amount of LBF's distributions on account of SEB's claim against LBF, the LBHI Guarantee still obligates LBHI to make cash distributions on the Guarantee Claim until the claim is fully satisfied or no further distributions are available.

23. SEB recognizes that it is limited to a single recovery between the distributions from LBF on account of the Settlement Claim, setoff of the funds in the DKK Account, and the distributions from LBHI on account of the Guarantee Claim. Indeed, to the extent that the Guarantee Claim is fully satisfied by distributions from LBF on account of the Settlement Claim and setoff of the funds in the DKK Account, any excess funds in the DKK Account will be returned to LBHI.[7] However, SEB has yet to receive that single recovery, and the Guarantee

---

[6] The DKK Account, which is collateral securing the Guarantee Claim, should be valued as of the time its value becomes pertinent, which is the date on which it is permitted to be applied to the Guarantee Claim. *See, e.g.*, *Prudential Ins. Co. of Am. v. SW Boston Hotel Venture, LLC (In re SW Boston Hotel Venture, LLC)*, 748 F.3d 393, 411 (1st Cir. 2014) (affirming use of sale date in determining value of collateral notwithstanding other dates of valuation because "a valuation made for one purpose at one point in a bankruptcy proceeding has no binding effect on valuations performed for other purposes at other points in the proceeding"); *In re Urban Communicators PCS, Ltd. P'ship*, 379 B.R. 232 (Bankr. S.D.N.Y. 2008) (where value of collateral had shifted multiple times during the course of the bankruptcy case, rendering the creditor at various times undersecured and oversecured, the court determined the value as the sale price for purposes of determining entitlement to interest pursuant to section 506(b)), *aff'd in part, rev'd in part on other grounds*, 394 B.R. 325 (S.D.N.Y. 2008). Thus, the DKK Account should be converted from Danish kroner into U.S. dollars as of the current date.

[7] SEB also has a foreign exchange claim of approximately $64,000 against LBHI (the "FX Claim"); SEB has a right of setoff with regard to the FX Claim, and so the FX Claim is secured to the extent of the available setoff. *See* 11

10

Claim should not be reduced or disallowed. *See, e.g.*, *Nuveen Mun. Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 295-96 (3d Cir. 2012) (creditor's claim against and recovery from debtor are not limited by the existence of a co-obligor, except insofar as the creditor is limited to a single recovery (*citing Ivanhoe Building & Loan Ass'n of Newark v. Orr*, 295 U.S. 243 (1935))); *In re N.Y. Commercial Co.*, 233 F. 906, 909 (2d Cir. 1916) ("The claimants . . . having a demand against two insolvent estates, had a right to prove against each for the full amount, and could assert their right against one unimpaired by the fact that they held security against the other."). The Court should overrule the Objection as to the Guarantee Claim.

## RESERVATION OF RIGHTS

24. Legal fees related to the LBF ISDA Agreement continue to accrue. LBF is responsible under the LBF ISDA Agreement for such legal fees, and thus amounts for which LBHI is responsible under the LBHI Guarantee. SEB reserves its rights to increase the amount of the Guarantee Claim to include such legal fees.

25. SEB further reserves its right to supplement this Response in the event that LBHI provides further arguments or evidence in support of its Objection, or if the Court conducts a hearing on the Objection as to the Guarantee Claim.

## CONCLUSION

26. WHEREFORE, SEB respectfully requests that the Court (i) overrule the Objection as it pertains to SEB, and (ii) grant SEB such further relief as the Court deems necessary and proper.

---

U.S.C. § 506(a)(1). Upon reaching agreement with LBHI, SEB intends to set off the funds in the DKK Account against the FX Claim.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: February 19, 2016<br>New York, New York | **SIDLEY AUSTIN LLP**<br><br>/s/ *Alex R. Rovira*<br>Alex R. Rovira (arovira@sidley.com)<br>Brian J. Lohan (blohan@sidley.com)<br>Andrew P. Propps (apropps@sidley.com)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br><br>*Attorneys for Skandinaviska Enskilda Banken AB (publ)* |