# **<u>EXHIBIT 18</u>**

## Ben Odell

**From:**        william kuntz <kuntzwm1@yahoo.com>
**Sent:**        Tuesday, February 23, 2016 2:13 PM
**To:**          Ben Odell
**Subject:**     IN RE W.T. GRANT CO.


On Wednesday, November 25, 2015 4:19 PM, william kuntz <kuntzwm1@yahoo.com> wrote:



[      ]

- Home

- Latest Decisions

- Featured Decisions

- Search

- Leagle Kontact

- About Us

- Contact Us

Share On Facebook  Share With Twitter  Share On Google+

Comments (0)  Email This Page  Print This Page

- View Case
- Cited Cases
- Citing Case

# IN RE W.T. GRANT CO.

*BANKRUPTCY NOS. 88 CIV. 5948 (MEL), 88 CIV. 5949 (MEL), 88 CIV. 6173 (MEL), 89 CIV. 998 (MEL).*

### 119 B.R. 898 (1990)

*In re W.T. GRANT COMPANY, Bankrupt. UNITED STATES TRUST COMPANY OF NEW YORK, Appellant, v. Joseph A. PARDO, as Trustee of the Estate of W.T. Grant Company, Appellee. ROBSON & MILLER, Appellant, v. Joseph A. PARDO, as Trustee of the Estate of W.T. Grant, Appellee. I. Walton BADER and Bader and Bader, Appellants, v. Joseph A. PARDO, as Trustee of the Estate of W.T. Grant, Appellee. William KUNTZ, III, Appellant, v. Joseph A. PARDO, as Trustee of the Estate of W.T. Grant, Appellee.*

*United States District Court, S.D. New York.*

*October 17, 1990.*

*Whitman & Ransom, New York City for appellant, U.S. Trust Co. of New York (William M. Kahn, Hollace T. Cohen, James H. Bell, of counsel).*

*Robson & Miller, New York City, for appellant Robson & Miller (Morton S. Robson, Kenneth N. Miller, of counsel).*

*Bader and Bader, White Plains, for appellants I. Walton Bader and Bader and Bader (I. Walton Bader, of counsel).*

*William Kuntz, III, Lake Placid, pro se.*

*Weil, Gotshal & Manges, New York City, for trustee-appellee (Richard P. Krasnow, Jacqueline N. Taubes, of counsel).*

LASKER, District Judge.

United States Trust Company of New York ("U.S. Trust"), Robson & Miller ("Robson"), Bader and Bader ("Bader") and William Kuntz, III ("Kuntz") appeal from the decision of Bankruptcy Judge Cornelius Blackshear in the W.T. Grant Company ("Grant") bankruptcy case denying the requests for fees and reimbursement of expenses of Robson, Bader and Kuntz, and awarding U.S. Trust substantially less than it had requested. 85 B.R. 250 (Bankr.S.D.N.Y.1988).

The decision to deny fees and expenses to Robson, Bader and Kuntz is affirmed. The decision to limit the fees and reimbursement for expenses awarded to U.S. Trust to $155,729.51 is reversed and the case is remanded.

Grant filed a petition for arrangement under Chapter XI of the Bankruptcy Act in October of 1975. When Grant was adjudicated a bankrupt in April of 1976, several creditor groups, including twenty-six banks holding secured claims (the "Bank Claimants"), made claims against the estate. The Bankruptcy Trustee negotiated settlement agreements with a number of creditor groups, including the Bank Claimants.

U.S. Trust was the successor trustee under an Indenture dated April 15, 1971 (the "Indenture").[1] In its capacity as Indenture Trustee for the Subordinated Debenture-holders, U.S. Trust raised objections to the secured claims of the banks. When these objections threatened to block the Bankruptcy Trustee's settlement with the Bank Claimants, the Bank Claimants agreed to set aside a Reserve Fund of $95,000,000 out of their settlement with the Trustee (the "Original Offer"). After some of the Subordinated Debentureholders raised objections to the Original Offer, further negotiations were held which resulted several years later in a second settlement agreement (the "Amended Offer") which was approved by Judge Galgay on June 23, 1981.

Under the terms of the Amended Offer, the Subordinated Debentureholders were to receive between 19% and 21% of the value of their debentures. The Amended Offer Order provided that

Any person or entity involved in the proceedings which were commenced by the Trustee's original application dated April 18, 1979 [the Original Offer], and in the formulation and effectiveness of the Amended Offer who believes that it is entitled to compensation for the services rendered in relation thereto may file an application for an allowance of compensation and/or necessary and proper out-of-pocket expenses, with the court. . . .

These expenses were to be paid out of 2% of the funds promised to the Subordinated Debentureholders under the Amended Offer. The applications were subject to approval by the Bankruptcy Court and the Trustee. Any of the 2% which was not awarded to the applicants was to be distributed

**[119 B.R. 900]**

to the Subordinated Debentureholders who accepted the Amended Offer and not to the bankrupt estate. Fee applications were submitted by a number of participants. Bankruptcy Judge Cornelius Blackshear disallowed entirely the applications of Bader, Robson, and Kuntz and disallowed substantially the application of Indenture Trustee U.S. Trust. Those applicants appeal from that determination, claiming, *inter alia,* that Judge Blackshear erroneously evaluated their applications according to the "benefit to the estate" standard.

## STANDARD OF REVIEW

A bankruptcy court's decision on an application for fees is reversible only if the court failed to apply the proper legal standards or made factual findings that were clearly erroneous. *In re Levine,* 32 B.R. 742 , 743 (S.D.N.Y.1983), *aff'd without opinion,* 732 F.2d 141 (2d Cir.1984); *In re Emergency Beacon Corp.,* 71 B.R. 117 , 120 (S.D.N.Y.1987).

## U.S. Trust

The bankruptcy court held that U.S. Trust was entitled to compensation only for services which "clearly benefit the estate and are non-duplicative." 85 B.R. at 269. U.S. Trust asserts that the application of the "benefit to the estate" standard to its request for compensation was wrong because: 1) U.S. Trust sought fees and expenses pursuant to the contractual terms of the Indenture, whose terms were embodied in the Amended Offer, and 2) the fees of U.S. Trust were not payable from the bankrupt estate but from the settlement fund.

1. The Indenture and the Amended Offer

In cases involving fee applications in which the applicant seeks to be paid from funds belonging to the bankrupt estate, the applicant is entitled to compensation only for those efforts which conferred a benefit upon the estate. *In re United Merchants and Manufacturers, Inc.,* 597 F.2d 348 (2d Cir.1979); *In re Multiponics, Inc.,* 436 F.Supp. 1072 (E.D.La.1977), *aff'd,* 622 F.2d 731 (5th Cir.1980); *In re Revere Copper and Brass, Inc.,* 60 B.R. 892 (Bankr.S.D.N.Y.1986). However, where fees are sought pursuant to a contractual right to payment, compensation is to be determined in accordance with the contractual provision. In *In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134 (2d Cir.1982), the Court of Appeals upheld the right of an unsecured creditor to be paid the fees and expenses of its counsel as provided in a loan

agreement. The court held that the policy of equitable distribution in bankruptcy does not render an unsecured creditor's otherwise valid contractual claim unenforceable in bankruptcy.

U.S. Trust's claim for fees and expenses is based on two contractual agreements, the Indenture and the Amended offer. Section 9.06 of the Indenture provides:

The Company covenants and agrees to pay the Trustee from time to time, and the Trustee shall be entitled to reasonable compensation, which shall not be limited by any provision of law in regard to the compensation of a trustee of any express trust, and the Company will reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred by the Trustee in accordance with any of the provisions of this Indenture, including the reasonable compensation and expenses and disbursements of its counsel and of all persons not in its regular employ . . .

U.S. Trust points out that the Indenture does not require that U.S. Trust's services as indenture trustee benefit the bankrupt estate to be compensable but provides for U.S. Trust to be paid for fulfilling its obligations as indenture trustee. The bankruptcy court stated:

[T]he mere fact that an indenture trustee fulfilled its obligated duties does not automatically entitle it to a fee allowance. There must be a true benefit to the estate and, to reiterate, a determination as to whether there was a benefit is limited by the parameters of the Amended Offer as approved, supra.

However, an indenture trustee is contractually entitled to payment for performance of its duties regardless of whether its efforts benefitted the estate. *In re New York, New Haven & Hartford R.Co.,* 421 F.Supp. 249 , 257-58 (D.Conn.1976), *aff'd,* 567 F.2d 166 (2d Cir.1977),*cert. denied sub nom., Zeldes v. Manufacturers Hanover Trust Co.,* 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977).

The Amended Offer provides that the bankruptcy court should determine the fees and expenses payable to U.S. Trust under the terms of the Indenture. Amended Offer, Statement of Terms ¶ 52. Accordingly, under both the Indenture and the Amended Offer, U.S. Trust is entitled to reasonable compensation and reimbursement for its duties as indenture trustee without regard to whether the execution of those duties benefitted the bankruptcy estate.

2. The Settlement Fund

The Amended Offer established a settlement fund for payment of the claims of the Debentureholders. The funds requested by U.S. Trust were not to be paid from the general estate but from the settlement fund established by the Bank Claimants for the benefit of the Debentureholders, the indenture trustee, and their counsel.

Because U.S. Trust is not seeking fees and expenses from the estate, but rather from a separate settlement fund belonging to their clients (the Subordinated Debentureholders), the "benefit to the estate" standard is not applicable to determine their entitlement to fees and expenses.[2]

Having determined that U.S. Trust is entitled to be compensated without regard to whether its services benefitted the bankruptcy estate as a whole, it becomes necessary to examine the bankruptcy court's reasons for approving or denying each category of fees and expenses. The services for which U.S. Trust sought reimbursement can be divided into four major categories: A) Services Rendered Before Negotiation of the Original Offer, B) Negotiation of the Original Offer, C) Services Rendered After Approval of the Original Offer, and D) Services Rendered After Approval of the Amended Offer.

## A. Services Rendered Before Negotiation of Original Offer

U.S. Trust's duties as indenture trustee began in October of 1975 when Grant filed its Chapter XI petition. U.S. Trust applied for reimbursement of $458,442.14 in fees and disbursements which it paid to its counsel, Whitman & Ransom, for services rendered from October 1975 through February 1978.

The bankruptcy court disallowed entirely U.S. Trust's application for fees and expenses incurred during this time period, ruling that under the terms of Paragraph 9 of the Amended Offer Order of June 23, 1981, any services rendered prior to the negotiation of the Original Offer were not compensable.

Paragraph 9 of the Amended Offer Order states:

Any person or entity involved in the proceedings which were commenced by the Trustee's original application dated April 18, 1979 [the Original Offer], and in the formulation and effectiveness of the Amended Offer who believes that it is entitled to compensation for the services rendered in relation thereto may file an application for compensation. . . .

U.S. Trust argues that the phrase "in relation thereto" encompasses all of the services it performed during this time period and also maintains that Paragraph 9 of the Amended Offer Order does not apply to or circumscribe the compensation of the indenture trustees, which the Amended Offer specifies is to be determined by the Bankruptcy Court as that payable under

**[119 B.R. 902]**

the respective indentures. U.S. Trust claims that it should have been compensated for the fees and expenses of Whitman & Ransom during this period attributable to seeking equitable subordination of the claims of the Banks. Because the Subordinated Debentures were, by their terms, subordinated to Senior Indebtedness, unless the security interests of the banks, the Senior Debentures and the Secured Suppliers could be invalidated (in whole or in part), the Debentureholders would receive nothing.

Whitman and Ransom's activities during this period included investigating the validity of the liens of the Bank Claimants and other creditors and investigating the Banks' involvement in the affairs of Grant, as well as opposing the Secured Suppliers Settlement, the Senior Debentureholders Settlement and the Global Settlement. U.S. Trust asserts that these actions were the predicate for the negotiations which resulted in the Original Offer and the Amended Offer. U.S. Trust represents that these actions provided the basis for its assertions against the Banks and Chase set forth in the Original Offer and the Amended Offer.

Whitman & Ransom participated in the Grant Chapter XI Creditors' Committee (the "Committee") meetings on behalf of U.S. Trust. U.S. Trust asserts that it accepted an invitation to serve as an ex officio member of the Committee to fulfill its duties under the Indenture. During this period, the Committee met for one or two days per week for presentations and reports by Grant, its accountants and management consultants concerning various aspects of Grant's business. U.S. Trust claims that attendance at these meetings enabled it to familiarize itself with Grant's management and financial structure and obtain valuable information concerning Grant's financial operations and its relations with its bank and trade creditors which was ultimately useful in

attacking the Banks' senior and secured position and in obtaining the Banks' agreement to the Original Offer and the Amended Offer.

Based on the information obtained at the Committee meetings, Whitman & Ransom began researching whether the Secured Suppliers, the Senior Debentureholders and the Bank Claimants had complied with the requirements of the Uniform Commercial Code ("U.C.C.") for the perfection of their security interests and whether the Bank Claimants claims were subject to the doctrine of equitable subordination.

During the same period, U.S. Trust and Grant successfully opposed a motion made on behalf of certain Debentureholders to convert the case to Chapter X.U.S. Trust strenuously opposed the motion because under the absolute priority rule as enunciated in *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106 , 60 S.Ct. 1, 84 L.Ed. 110 (1939), if the motion had been granted, the Debentureholders would not have received any distribution. U.S. Trust also successfully moved to intervene in a proceeding brought by the Secured Suppliers to enforce the Secured Suppliers' security interests in Grant's inventory.

U.S. Trust argues persuasively that Paragraph 9 not confine the services which were compensable to the time period in which the Original Offer and the Amended Offer were actually negotiated. While the record does not contain any legislative history which would indicate the intended scope of the phrase "in relation thereto," the words themselves suggest a broad interpretation which would encompass services rendered by Whitman & Ransom on behalf of U.S. Trust prior to the negotiation of the Original Offer including the creditor committee participation, the legal and factual investigation and the litigation which led to the allegations which formed the basis for the Original Offer and the Amended Offer.

The bankruptcy court's decision to deny reimbursement to U.S. Trust for fees and expenses during this period was erroneous for two reasons. First, the services performed by U.S. Trust and Whitman & Ransom prior to the negotiation of the Original Offer were services rendered "in relation" to the Amended Offer as specified in Paragraph 9. These services laid the groundwork

[119 B.R. 903]

for the Original Offer and the Amended Offer and gave the Subordinated Debentureholders bargaining power with the Bank Claimants.

Moreover, U.S. Trust performed these services or caused them to be performed pursuant to its contractual and statutory duties as indenture trustee. Under the terms of the Indenture (which are required under the Trust Indenture Act of 1939), when an Event of Default occurred, the indenture trustee was required to exercise the rights and powers vested in it by the indenture and to "use the same degree of care and skill in their exercise that a prudent man would exercise or use under the same circumstances in the conduct of his own affairs." Indenture, § 8.01. When Grant filed its bankruptcy petition on October 2, 1975, an "Event of Default" occurred under § 8.01 of the Indenture. From that point on, U.S. Trust was required to take the steps it took to secure the Subordinated Debentureholders recovery and entitled to be compensated for its efforts.

Accordingly, U.S. Trust is entitled to receive the $458,422.14 in reimbursement requested for this period.

## B. Negotiation of the Original Offer

1. March 1, 1978 — February 28, 1979

U.S. Trust sought reimbursement of $168,774.90 in fees and $6,889.86 in expenses for services of Whitman & Ransom rendered from March 1, 1978 through February 28, 1979 in connection with the negotiation of the Original Offer. Judge Blackshear awarded $40,500 in fees and $1500 in expenses, based on a finding that the vast majority of services rendered during this period were unrelated to the Original Offer. The only services for which the bankruptcy court awarded compensation were Whitman & Ransom's initiation and pursuit of settlement discussions with counsel to the Bank Claimants directed at securing the Bank Claimants' agreement to allow the Trustee to extend a settlement offer to the Subordinated Debenture Holders.

The bankruptcy court declined to compensate U.S. for its continued prosecution of its appeal of the district court decision affirming the bankruptcy court's order approving a settlement between the Bankruptcy Trustee and the Secured Suppliers Committee. U.S. Trust pursued this litigation based on its belief that if the security interest of the Secured Suppliers were to be declared invalid, the size of the bankruptcy estate would be greatly enhanced, thereby increasing the likelihood that the Subordinated Debentureholders would recover on their claims. Moreover, U.S. Trust determined that it was crucial to inform the Bank Claimants and the trustee for the Senior Debentureholders that unless some reasonable settlement was proposed to the Subordinated Debentureholders, progress in the case would be fraught with litigation. Accordingly, U.S. Trust made a strategic decision to act independently of the Bankruptcy Trustee by taking a position contrary to the Bank Claimants who were claiming a similar security interest.

The bankruptcy court also declined to compensate U.S. Trust for the services performed by Whitman & Ransom in pursuing the claims of the Subordinated Debentureholders against the Bank Claimants and Chase Manhattan Bank, the original indenture trustee. Those services included attendance at numerous depositions conducted by counsel for the Bankruptcy Trustee regarding the events which lead to the bankruptcy of Grant.

The bankruptcy court also disallowed U.S. Trust's claim for fees and expenses in connection with its review and analysis of the February 1978 press release of the Bankruptcy Trustee regarding the settlement with the Bank Claimants and the creation of the Reserve Fund and the actions that it took in response to the press release in order to preserve the rights of the Subordinated Debentureholders.

All of the services described above were performed "in relation to" the Original Offer and the Amended Offer in so far as they laid the groundwork for the negotiation of the Original Offer and the Amended Offer by bolstering the claims of the Subordinated Debentureholders. Accordingly, compensation is available for those services under the terms of the Amended Offer.

**[119 B.R. 904]**

Moreover, under the terms of the Indenture, U.S. Trust is entitled to be compensated in full for the services it performed as Indenture Trustee. Accordingly, U.S. Trust should have been awarded the full amount of its fee request for this period: $168,774.90 in fees and $6,889.86 in expenses.

2. March 1, 1979 — January 31, 1980

U.S. Trust requested $120,053.40 in fees and $6,312.72 in expenses for services rendered by Whitman & Ransom from March 1, 1979 through January 1, 1980. The bankruptcy court found that while the majority of the services rendered during that period were related to the negotiation of the Original Offer, U.S. Trust was not entitled to the full amount requested because: 1) some services were rendered to benefit "its constituency" (the Subordinated Debentureholders) and not the estate and 2) the time sheets and applications submitted were not sufficiently detailed. Accordingly, the bankruptcy court awarded U.S. Trust 90% of the fees and expenses requested for the services of Whitman & Ransom during this period ($108,048.06 in fees and $5,681.45 in expenses).

The bankruptcy court's decision to deny U.S. Trust's fee request because some services were performed to benefit the Subordinated Debentureholders rather than the estate was incorrect as a matter of law. As explained above, because the fees sought by U.S. Trust were to be taken from funds set aside exclusively for the Subordinated Debentureholders, there was no requirement that, to be compensable, the services rendered benefit the estate as a whole. While U.S. Trust, as Indenture Trustee, was obligated to look out for the interests of the Subordinated Debentureholders, it was nevertheless entitled under both the Indenture and the Amended Offer to be compensated for doing so.

However, the bankruptcy court's second reason for denying U.S. Trust its full fee request for this period, the failure to keep adequate time records, is legally sufficient. It is unclear from the opinion below how much of the fees denied were attributable to the absence of proper time records. Accordingly, the case is remanded for a determination as to what portion of the fees for this period were denied for this reason.

## C. Services Rendered After Approval of the Original Offer

U.S. Trust sought $87,833.17 in fees and expenses for services rendered by Whitman & Ransom from February 1, 1980 through July 31, 1981.

On February 20, 1980, the bankruptcy court issued an opinion and order approving the Original Offer. After the approval of the Original Offer, certain Subordinated Debentureholders attempted to send a letter to all of the Subordinated Debentureholders which the Bankruptcy Trustee and U.S. Trust thought contained materially misleading information. The Bankruptcy Trustee made a motion to enjoin the distribution of the letter to the Subordinated Debentureholders. U.S. Trust appeared at the hearing and filed a memorandum of law in support of the injunction. The bankruptcy court enjoined distribution of the letter to the Subordinated Debentureholders. *In re W.T. Grant Co.,* 6 B.R. 762 (Bankr.S.D.N.Y.1980).

Additionally, shortly after the Original Offer was approved, certain Subordinated Debentureholders filed notices of appeal from the order approving the Original Offer. U.S. Trust and the Bankruptcy

Trustee worked together to develop a compromise whereby the appeals would be dismissed. In April of 1981, the Bank Claimants made a settlement offer to the Subordinated Debentureholders which resulted in the Amended Offer. On June 23, 1981, the bankruptcy court signed an order approving the Amended Offer.

The bankruptcy court denied recovery for this period, stating that the services for which Whitman & Ransom sought compensation were duplicative because they had been adequately performed by the Bankruptcy Trustee. *In re Sapphire Steamship Lines, Inc.,* 509 F.2d 1242  (2d Cir.1975) the case cited by the bankruptcy

[119 B.R. 905]

court in support of its conclusion, is inapposite here. The *Sapphire Steamship* case involved creditor's counsel who were seeking fees from the bankruptcy estate and were denied compensation because they both failed to establish that the bankruptcy trustee failed or neglected to act and failed to secure court approval to act on behalf of the trustee. As explained above, U.S. Trust did not seek recovery from the bankruptcy estate, but rather from a separate fund belonging to its clients, the Subordinated Debentureholders. Accordingly, it was unnecessary for it to establish that the Bankruptcy Trustee failed to act or to secure court approval to act in the Trustee's place.

As U.S. Trust points out, the fact that it adopted the same position as the Bankruptcy Trustee on a number of issues does not automatically render its services duplicative. As the court held in *In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134 , 140 (1982), there is no "strict rule that expenses of duplicative services should always be disallowed." Rather,

[w]hether and to what extent duplicative services are necessary to protect the interests of the creditor is a question of fact to be determined by the bankruptcy court on a case-by-case basis. The controlling inquiry is whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtors property.

674 F.2d 134  (2d Cir.1982).

The *United Merchants* case was remanded to the bankruptcy court to permit the creditor "to attempt to establish that the claimed costs were incurred for services rendered to protect interests that they reasonably believed the Official Committee of Creditors could not or would not protect." *Id.* Similarly, in *James Talcott, Inc. v. Wharton,* 543 F.2d 986  (2d Cir.1976), the court stated:

We recognize that to some extent the services rendered to Talcott as a creditor might have duplicated those furnished by other counsel to the trustee in the same manner. However, the fact that the trustee, acting on behalf of the estate, saw fit to provide legal and accounting services in connection with some actions jointly taken by himself and Talcott, did not preclude Talcott from protecting its interest as a secured creditor in obtaining payment, which might differ from that of the estate. However, where the interests of Talcott and the trustee were parallel, the provision of duplicative services by the trustee may be taken into account in appraising the extent and value of the services reasonably necessary to preserve Talcott's interests.

543 F.2d at 994.

Here U.S. Trust argues that the Bankruptcy Trustee as a mere stakeholder, and under attack by the appellants, was not in a position to protect the Debentureholders' interests and that U.S. Trust was the only party who had the duty to protect the interests of the Debentureholders and to negotiate the Amended Offer on their behalf.

The bankruptcy court erred in determining that as a matter of law, U.S. Trust was not entitled to compensation for its services during this period because those services duplicated the efforts of the

Bankruptcy Trustee. Accordingly, the case is remanded to permit U.S. Trust to attempt to establish to what extent its services during this period were necessary to protect the interests of the Subordinated Debentureholders.

## D. Services Rendered After Approval of the Amended Offer

U.S. Trust sought compensation for the efforts it expended in defending the Amended Offer from attack after its approval. The bankruptcy court denied U.S. Trust compensation for services rendered after approval of the Amended Offer because it read the Amended Offer to preclude such recovery.

Several parties filed appeals from the Amended Offer Order. U.S. Trust urged the Bankruptcy Trustee to move at the District Court level for an expedited appeal, wrote a letter in support of the motion for an expedited appeal, and consulted with the Bankruptcy Trustee concerning

**[119 B.R. 906]**

the issues to be raised on appeal. After the District Court affirmed the Amended Offer Order, appeals were taken to the Court of Appeals for the Second Circuit. When counsel for the Bankruptcy Trustee refused U.S. Trust's request to seek another expedited appeal, U.S. Trust moved to intervene and requested an expedited briefing schedule in order to prevent further delay and prejudice to the Subordinated Debentureholders who had tendered their debentures. The Court of Appeals granted the motion to intervene and for an expedited appeal.

U.S. Trust then successfully opposed a motion for reconsideration of the order allowing it to intervene and a motion for an order disqualifying it from representing the Subordinated Debentureholders who had accepted the Amended Offer. U.S. Trust also opposed attempts by some of the appellants to delay argument of the appeal. In its brief in support of the affirmance of the district court, U.S. Trust discussed issues not raised by the Bankruptcy Trustee. After the Court of Appeals issued a decision affirming the district court, U.S. Trust and the Bankruptcy Trustee successfully opposed the appellants' motion for a rehearing *en banc* and their petition for a writ of certiorari. U.S. Trust argues that these efforts are compensable because it reasonably believed that they were necessary to assure that the Amended Offer would be affirmed. If the Amended Offer had failed, there would have been no assurance that the Debentureholders would recover anything. The Amended Offer provides for compensation of those involved in the "formulation and effectiveness of the Amended Offer" for all services rendered "in relation to" the Original Offer and the Amended Offer. As explained above, the words "in relation thereto" suggest that the phrase is to be construed broadly. The services rendered by U.S. Trust during this period fall into that category and accordingly are compensable. Moreover, as Indenture Trustee, U.S. Trust had a contractual right to be compensated for protecting the interests of the Subordinated Debentureholders and did so by ensuring their right to recovery under the Amended Offer.

## E. Compensation for Services of U.S. Trust Personnel

Judge Blackshear denied in its totality U.S. Trust's request to be paid $250,000 for its own services during the case, stating:

As we have already noted above, the mere fact that an indenture trustee fulfilled its obligated duties does not automatically entitle it to a fee allowance. There must be a true benefit to the estate and, to reiterate, a detrmination as to whether there was a benefit is limited by the parameters of the Amended Offer as approved, supra. Consequently, those services that were rendered prior to the negotiations of the Original Offer, supra, and those rendered subsequent to the approval of the Amended Offer on June 23, 1981 will be deemed non-compensable despite any contractual covenants to the contrary and despite the fact that U.S. Trust fulfilled its statutory duties under the Trust Indenture Act of 1939.

85 B.R. at 269.

The court held that U.S. Trust was not entitled to receive compensation for services rendered within the relevant period because § 62 of the Bankruptcy Act does not provide for such payment, U.S. Trust was represented by counsel, such payment would be prejudicial to other nonattorneys who were denied such fees and thus would violate the principle of maintaining equality of treatment of all creditors, and U.S. Trust did not keep adequate time records.

Because the settlement fund from which U.S. Trust is seeking payment belongs to the Subordinated Debentureholders and not to the bankruptcy estate, U.S. Trust's entitlement to compensation from the settlement fund is not in this case derived from the Bankruptcy Act but from the terms of the Amended Offer and the Indenture. Those documents indicate that the fees of both U.S. Trust and its counsel are payable.

U.S. Trust points out that other non-attorneys who applied for compensation properly

[119 B.R. 907]

were denied payment because their fees did not come within the definition of "Objectants*Attorneys* Fees" in paragraph 52 of the Amended Offer. By contrast, § 9.06 of the Indenture under which U.S. Trust's compensation was to be determined specifically provides for its compensation and reimbursement:
The Company covenants and agrees to pay the Trustee from time to time, and the Trustee shall be entitled to reasonable compensation, which shall not be limited by any provision of law in regard to the compensation of a trustee of any express trust, and the Company will reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred by the Trustee in accordance with any of the provisions of this Indenture, including the reasonable compensation and expenses and disbursements of its counsel and of all persons not in its regular employ. . . .

U.S. Trust argues that a deficiency in time records need not be fatal, relying on, for example, *In re Pacific Homes,* 20 B.R. 729 (Bankr.C.D.Cal.1982), in which the trustee was awarded fees notwithstanding the fact that it did not keep time records. U.S. Trust also points out that the Bankruptcy Court's ruling with respect to U.S. Trust is inconsistent with its order allowing payment to Citibank of its fees as indenture trustee for the 4% Debentures even though Citibank "apparently produced no time records."

As noted above, the failure to produce adequate time records is a legally sufficient reason for denying compensation. Accordingly, the case is remanded to determine to what extent the denial of fees to U.S. Trust was based on its failure to keep proper time records.

F. The Lien

As a further basis for the compensation it sought in the bankruptcy court, U.S. Trust cited the lien which the Indenture created against any funds which were to be distributed to the Subordinated Debentureholders.

The Indenture provides:

[T]o the extent the payment of U.S. Trust's reasonable compensation, expenses and counsel fees out of the estate . . . shall be denied for any reason payment of the same shall be secured by a lien on and shall be paid out of any and all distributions . . . which the Debentureholders will be entitled to . . .

§ 8.02.

The bankruptcy court concluded that U.S. Trust had waived its lien by not referring to the lien in the letters to the Subordinated Debentureholders which accompanied the Original Offer and the Amended Offer and by its failure to refer to the lien in the Pre-Hearing Order dated December 12, 1986.

U.S. Trust argues that the omission of any reference to its lien in its letters to the Subordinated Debentureholders did not constitute a waiver as a matter of law.

The law disfavors implicit waivers. U.S. Trust never explicitly waived its lien on the funds awarded to the Debentureholders. Neither the court below nor the Grant Trustee have put forward any persuasive reason that U.S. Trust intended to waive its lien. Accordingly, to the extent indicated above, U.S. Trust is entitled to "reasonable compensation, expenses and counsel fees."

## II. Bader, Robson and Kuntz

Bader, Robson and Kuntz each failed to present evidence that their services were non-duplicative or necessary to protect the interests of the Subordinated Debentureholders. Accordingly, the bankruptcy court properly denied them compensation.

A. Bader

The bankruptcy court denied in its entirety Bader's request for $406,678 in fees and expenses based on its findings that Bader was never adequately retained by his purported clients (85 B.R. at 260), failed to maintain adequate time records (85 B.R. at 261), and sought compensation for services that were predominately non-legal. *Id.*

These factual findings are supported by the record below. While Bader continues to assert that it represented "holders of a

**[119 B.R. 908]**

multi-million dollar bond position" (Bader Brief at 5) and an unofficial bondholders' committee (Bader Brief at 3), the testimony offered by Bader himself at the compensation hearings fails to support these assertions. At the hearings, Bader proffered approximately forty alleged retainer agreements and authorizations. He testified that he drafted the documents and gave them to Kurtz who was purportedly chairman of the bondholders' committee. Kurtz sent the documents to the various bondholders who executed them and returned them to Kurtz or Bader. Bader's testimony revealed that he never met any of his purported clients and had no way of knowing, much less proving, that the signatures on the documents were genuine.

Bader also testified that the alleged "unofficial bondholders' committee" had neither a charter nor by-laws, never met and never produced any records.

With respect to Bader's time records, the bankruptcy court concluded that the time records entires were

overly broad. the narrative part of the time sheet, which resembles a storybook more than a fee application, does little to detail each individual entry. The exact day in which such services were performed is not indicated by the entries of the time sheets.

85 B.R. at 261.

With respect to the services rendered by Bader, the bankruptcy court concluded on the basis of the evidence before it that those services were "both limited and ephemeral." 85 B.R. at 262. The court determined that a significant majority of the time for which Bader sought compensation was spent attending "conferences with bondholders which were, in actuality, nothing more than solicitation of clients." *Id.* Bader's purported co-counsel, Bradley Brewer, described Bader's efforts as follows: "Mr. Bader devoted his efforts mainly to making personal contact with an increasing number of objecting bondholders . . ." The bankruptcy court correctly held that such non-legal time is not compensable. *See, e.g., In re Meade Land & Development Co., Inc.,* 527 F.2d 280 , 285 (3d Cir.1975);*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714  (5th Cir.1974).

With respect to legal services that may have been rendered by Bader, the bankruptcy court's decision to decline to compensate Bader for those services is supported by evidence in the record, including Bader's own testimony that Kurtz, the one Subordinated Debentureholder whose retention of Bader has never been disputed, felt the need to retain co-counsel (Robson) because he was dissatisfied with Bader.

On appeal, Bader also raises several legal arguments that it claims justify reversing the bankruptcy court's denial of its' request for compensation. First, Bader challenges the legal standard applied by the bankruptcy court, asserting that its application should have been evaluated according to the so-called "creation of a fund" standard which it claims is applied in class actions. However, the Grant bankruptcy case was not a class action and Bader does not cite any authority to support the proposition that it should be treated as such for the purpose of evaluating fee applications.

Bader also argues, as does U.S. Trust, that the bankruptcy court erroneously evaluated his efforts according to whether they benefitted the estate rather than according to whether they benefitted the Subordinated Debentureholders. However, it is clear from the bankruptcy court's opinion that Bader failed to prove that his efforts benefitted the Subordinated Debentureholders.

Bader challenges the Bankruptcy Trustee's standing to participate in the fee application proceedings. It was the Bankruptcy Trustee who applied to the bankruptcy court for an order authorizing and approving the Amended Offer. The Amended Offer Order authorized the Bankruptcy Trustee to solicit acceptances from the Subordinated Debentureholders and to "take such action as may be necessary and appropriate to implement and effectuate the terms and provisions of the Amended Offer and [the Amended Offer Order]." Accordingly, the Amended Offer and the Amended Offer Order gave the Bankruptcy Trustee standing to participate in the proceedings to

**[119 B.R. 909]**

determine appropriate compensation pursuant to the Amended Offer. Moreover, Bader never questioned the bankruptcy Trustee's standing to participate in the compensation hearings.

In sum, Bader has failed to demonstrate that the bankruptcy court either was clearly erroneous or abused its discretion in holding that Bader was not entitled to compensation.

B. Robson

Robson's fee application was also denied in its entirety. Like Bader and U.S. Trust, Robson argues that the bankruptcy court erroneously evaluated his application according to the "benefit to the estate" standard. However, the record supports the bankruptcy court's conclusion that Robson's services were not beneficial to the Subordinated Debentureholders.

Robson failed to proffer any credible evidence as to whom, other than Kurtz and perhaps Bader, he represented. Robson testified that he acted as counsel to Bader, thereby representing the same parties as Bader. Yet there was no written contract signed by Bader and Robson evidencing a co-counsel agreement and no evidence that Kurtz, who allegedly retained Bader to represent Kurtz and the other bondholders in opposing the settlement, had been given any authority to retain counsel on behalf of anyone.

With respect to the actual services rendered, the bankruptcy court concluded that an excessive amount of time was spent on research, particularly with regard to the doctrine of equitable subordination. Moreover, Robson's attempt to take credit for benefitting the Subordinated Debentureholders through the Amended Offer is specious, given the fact that the difference between the amounts that the Subordinated Debentureholders would have received under the Original Offer and the Amended Offer is substantially equivalent to the interest that such holders would have received under the Original Offer had Robson and Bader not prosecuted appeals from the bankrutcy court's approval of the Original Offer.

Accordingly, the bankruptcy court did not abuse its discretion in denying Robson's fee application.

C. Kuntz

The bankruptcy court also did not abuse its discretion in denying compensation to Kuntz. Kuntz, a Subordinated Debentureholder, did not submit any documentation in support of his request for compensation of $8000 and submitted mere approximations in respect of his request for reimbursement of expenses totalling $8000. 85 B.R. at 266. Kuntz never testified in the proceedings below in support of his fee application. Moreover, the bankruptcy court was not convinced that the activities described in his fee application, such as "viewing video tapes" in Washington, D.C., had any impact on the formulation of the Amended Offer.

Kuntz's assertions that his recorded court appearances are tantamount to time records and his contention that the cost of coming to and staying in New York City is "not insubstantial" do not establish that the bankruptcy court's findings were erroneous.

## CONCLUSION

For the reasons explained above, the order of the bankruptcy court denying $1,097,227 in fees and expenses to U.S. Trust is reversed and the case is remanded 1) to determine what portion of fees denied is attributable to the failure of U.S. Trust or its counsel to maintain adequate time records

and 2) to allow U.S. Trust an opportunity to establish that services which were deemed duplicative were necessary to protect the interests of the Subordinated Debentureholders.

The order of the bankruptcy court denying fees and expenses to Robson, Bader and Kuntz is affirmed.

It is so ordered.

## FootNotes

1. The Indenture governed $92,507,000 of Grant's 4¾% Convertible Subordinated Debentures due in 1996 (the "Subordinated Debentures"). Chase Manhattan Bank was the original Indenture Trustee. Before Grant filed its Chapter XI petition, Chase, which was also one of the Bank Claimants, resigned as Indenture Trustee and was succeeded by U.S. Trust.

2. We recognize that at oral argument on U.S. Trust's motion for rehearing, Judge Blackshear stated that he intended the phrase "benefit to the estate" to mean benefit to the Subordinated Debentureholders. However, we cannot reconcile these statements with the reasons stated in his opinion for denying U.S. Trust compensation for certain services.