Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York  10178
212.309.6000

*Attorneys for Trinity Investments Limited*

Objection Deadline: April 4, 2016 at 4:00 p.m.
Reply Deadline: April 12, 2016 at 12:00 p.m.
Hearing Date: April 14, 2016 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | Jointly Administered |

**NOTICE OF MOTION OF TRINITY INVESTMENTS LIMITED**
**TO COMPEL OUTSTANDING DISTRIBUTIONS**
**ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS**

**PLEASE TAKE NOTICE THAT**, upon the accompanying Motion, and all pleadings and proceedings heretofore had before this Court, Trinity Investments Limited ("Trinity"), by its undersigned counsel, will move before the Honorable Shelley C. Chapman of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004, on **April 14, 2016 at 10:00 a.m.** (Prevailing Eastern Time) (the "Hearing"), or such other time as the Court may determine, for entry of an order to compel outstanding distributions on allowed, unsatisfied guarantee claims.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be in writing, must conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, must set forth the name of the objecting party, the basis for the objection and the specific

grounds therefore, and must be filed with the Bankruptcy Court, electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy hand-delivered directly to the Chambers of the Honorable Shelley C. Chapman at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 623, New York, New York 10004), in accordance with General Order M-242, and any objection must further be served upon (i) The Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Jacqueline Marcus, Esq., and Garrett A. Fail, Esq., attorneys for the Debtors; (iii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors; and (iv) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Joshua Dorchak, Esq., and Matthew C. Ziegler, Esq., attorneys for Trinity Investments Limited; so as to be filed and received by no later than **April 4, 2016 at 4:00 p.m.** (Prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing on any date

after the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted upon default.


Dated:   March 22, 2016
         New York, New York


                                        **MORGAN, LEWIS & BOCKIUS LLP**


                                        By: /s/ Joshua Dorchak
                                            Joshua Dorchak
                                            Matthew C. Ziegler
                                            101 Park Avenue
                                            New York, New York 10178
                                            Telephone:  212.309.6000
                                            Email:  joshua.dorchak@morganlewis.com
                                                    matthew.ziegler@morganlews.com

                                        *Attorneys for Trinity Investments Limited*

Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York  10178
212.309.6000

Objection Deadline:  April 4, 2016 at 4:00 p.m.
Reply Deadline:  April 12, 2016 at 12:00 p.m.
Hearing Date:  April 14, 2016 at 10:00 a.m.

*Attorneys for Trinity Investments Limited*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. | Jointly Administered |

### MOTION OF TRINITY INVESTMENTS LIMITED TO COMPEL OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS

Trinity Investments Limited ("Trinity"), through its undersigned attorneys, hereby moves this Court (the "Motion"), pursuant to Section 105(a) of the Bankruptcy Code and Rule 3021 of the Federal Rules of Bankruptcy Procedure, to enforce this Court's December 6, 2011 Order [Docket No. 23023] (the "Confirmation Order") confirming the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Plan"), by entering an order compelling Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator and Debtor, to pay Trinity the amounts that should have been paid, but were not paid, to Trinity in the most recent distribution to creditors on October 3, 2015 as the holder of numerous claims that were and remain settled, fixed, allowed, and not yet satisfied in full under the Plan.

### PRELIMINARY STATEMENT

1.      LBHI willfully and wrongfully excluded twenty-four Allowed Guarantee Claims held by Trinity from the eighth distribution to creditors in this case on October 1, 2015.  There

DB1/ 86634958.3

should be no question that these claims had not been (and have not been) satisfied in full, and thus were (and are) entitled to further distributions from LBHI, under the Plan. As described in detail in the accompanying Declaration of Pierre Bour in support of the Motion (the "Trinity Declaration"), these claims remain unsatisfied in full because Trinity, in its business judgment, declined to accept certain prejudicial conditions to further distributions on the related direct claims that were improperly imposed by the primary obligor, Lehman Brothers Bankhaus AG ("LBB"). Apparently, LBHI believes that it has the right to disavow its own obligations to Trinity under the Plan to the extent of distributions that LBHI would have preferred for Trinity to receive from LBB but that Trinity, with good reason, did not receive. Nothing in the Plan gives LBHI any such right to make business decisions for its creditors, to force its guarantee creditors to accept payments from primary obligors, or to credit itself for would-be third-party distributions not actually made. Accordingly, the Motion should be granted.

## BACKGROUND

2.      On and after September 15, 2008, LBHI and several of its direct and indirect subsidiaries filed the above-captioned jointly administered chapter 11 cases in the Court (the "LBHI Proceeding"). On December 6, 2011, the Court entered the Confirmation Order. On March 6, 2012, the Plan became effective. On April 17, 2012, LBHI made its initial distribution to holders of allowed general unsecured claims, and since that date LBHI has made further such distributions at six month intervals, pursuant to Section 8.3 of the Plan.

3.      On November 12, 2008, the German banking regulator filed insolvency proceedings against LBHI's wholly owned subsidiary LBB, and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main (the "LBB Court") opened insolvency proceeding, file no. 810 IN 1120/08 L (the "LBB Proceeding"), and appointed an insolvency

DB1/ 86634958.3

2

administrator (the "LBB Administrator"), in respect of LBB.  In October 2010, LBB made its

initial distribution to holders of allowed general unsecured claims, and since that date LBB has

made further such distributions at irregular intervals.

4.      As of November 24, 2014, Trinity, as assignee or subparticipant, held beneficial

interests in twenty-five duly filed claims against LBB based on bonds or other contractual

obligations of LBB (the "Direct Claims").  Trinity Decl. ¶ 9, Ex. A, Sched. A.  At that time, all

of the Direct Claims had been fixed and allowed by LBB and had received interim distributions

(net of tax withholdings) in the LBB Proceedings.  *Id.*

5.      As of November 24, 2014, Trinity, as assignee or subparticipant, held beneficial

interests in twenty-five duly filed LBB-related guarantee claims against LBHI (the "Guarantee

Claims") based on LBHI's specific, written guarantees of LBB's bond (Class 5) or other

contractual (Class 9A) obligations subject to the Direct Claims.  *Id.*  ¶ 10, Ex. A, Scheds. B & C,

Exs. E & F (representative LBHI guarantees for LBB bond and contract obligations,

respectively).  At that time, four of the Guarantee Claims had been fixed and allowed by LBHI

and had received interim distributions in the LBHI Proceedings.  *Id.*, Ex. A, Sched. B (top half of

page).

6.      In November 2014, LBB and LBHI, and LBHI and several creditors of both LBB

and LBHI, including Trinity, entered into separate but interrelated agreements that conditionally

resolved numerous legal and procedural disputes in the LBB Proceeding as well as numerous

LBB-related guarantee claim valuation disputes in the LBHI Proceeding, as summarized below.

*Id.* ¶¶ 12-15; *see* Plan Administrator's Quarterly Financial Report as of October 1, 2015 [Docket

No. 51709] ("10/1/2015 QFR") at 24 (under heading "*Bankhaus Creditors' Settlement*").

7.      On November 19, 2014, LBHI (as Plan Administrator under the Plan) and LBB

(through the LBB Administrator) entered into an agreement (the "LBHI-LBB Agreement")

which provided, among other things, for:

- a series of agreements known collectively as the "Harmonizing Resolution," including certain "Creditors Assembly Resolutions" resolving legal disputes as to the German Insolvency Code, and certain confirmations regarding the status of the LBB Proceeding and costs and fees incurred in the LBB Proceeding; and

- separate settlement agreements between LBHI and LBB creditors (collectively known as the "Bilateral Agreements") to implement the Harmonizing Resolution.

Trinity Decl. ¶ 12, Ex. A, ¶¶ H-I; *see* 10/1/2015 QFR at 24.

8.      On November 24, 2014, Trinity and LBHI entered into one such Bilateral

Agreement (the "Trinity-LBHI Agreement"), which provided, among other things, that:

- Trinity will support the Creditors Assembly Resolutions and the Harmonizing Resolution, and will not object to their implementation to the LBB Court or this Court, "subject to the correct implementation of the Harmonizing Resolution by the LBB Administrator, the Insolvency Court and LBHI" (¶ 4);

- Trinity consents to the LBB Administrator's management of the LBB Proceeding to date and his fees up to €500,000,000.00, including €312,180,375.00 to date (¶ 5);

- if a statutory majority of LBB's creditors, including Trinity and the other settling LBB creditors, voted in favor of the Creditors Assembly Resolutions, then Trinity's Guarantee Claims "shall be Allowed Claims in the [LBHI Proceeding] in the amounts and classes set forth … and *shall be entitled to receive distributions under the [Plan]* (in addition to distributions from LBB in respect of the [LBB] Claims) *without any deductions or withholdings whatsoever* (except for any tax withholding expressly required pursuant to the Plan) …." (¶ 7) (emphasis added);

- Trinity agrees to disgorge to LBHI any consideration received on account of any Allowed [ ] Guarantee Claim to the extent such consideration "*combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding* to [Trinity] or any previous holder on account of any portion of the related [Allowed Direct Claim] (converted to USD in accordance with section 8.13 (d) of the Plan), in the aggregate exceed[s] the allowed amount of such Allowed [ ] Guarantee Claim" (¶ 9) (emphasis added); and

- if the Guarantee Claims are Allowed and Trinity receives distributions from LBB on the Direct Claims and from LBHI on the Guarantee Claims that in the aggregate reach a certain amount determined by a formula (the "Quota Cap"), Trinity assigns the Guarantee Claims to LBHI, along with any distributions in excess of their maximum recovery under the Plan and any ancillary claims (¶ 10).

Trinity Decl. ¶ 13, Ex. A, ¶¶ 4-10 (emphasis added); *see* 10/1/2015 QFR at 24.

9.      At about the same time, several other creditors of LBB and LBHI entered into substantively identical or similar Bilateral Agreements with LBHI.  *See* Trinity Decl. ¶ 15, Ex. A, ¶ E; 10/1/2015 QFR at 24.

10.      On November 25, 2014 (the "Effective Date"), the LBB Administrator held a Creditors Assembly Meeting, the main purpose of which was for creditors to vote on the Creditors Assembly Resolutions, which, if approved, would affirm the Harmonizing Resolution and permit substantially all of LBB's remaining assets to be distributed to creditors with allowed claims.  Trinity Decl. ¶ 16; 10/1/2015 QFR at 24.  At that Creditors Assembly Meeting, 99.5% of LBB's voting creditors, including Trinity and the other parties to Bilateral Agreements, approved the Creditors Assembly Resolutions.  This approval triggered the effectiveness of the LBHI-LBB Agreement, the Trinity-LBHI Agreement, and the other Bilateral Agreements.  *Id.*  Accordingly, as of the Effective Date, the Direct Claims were fixed and allowed in the LBB Proceeding (as such, the "Allowed Direct Claims"), and twenty-four of the Guarantee Claims were fixed and allowed in the LBHI Proceeding (as such, the "Allowed Guarantee Claims").  Trinity Decl. ¶ 16, Ex. A ¶ 7; *see* 10/1/2015 QFR at 24.[1]

11.      As of the Effective Date, Trinity or its predecessors in interest had received the first through fourth distributions from LBB (net of tax withholdings) on nearly all of the Direct Claims (one Allowed Direct Claim (the "Unpaid Claim") has received no distributions to date),

---

[1]    The Trinity-LBHI Agreement also provided for the allowance of three direct claims against LBHI independently of any allowed claims against LBB, *see* Trinity Decl. ¶ 14, Ex. A, Sched. C, as well as the expungement of one claim as against LBB, none of which claims are relevant to the Motion.

and Trinity or its predecessors in interest had received the first through sixth distributions from LBHI only on those Guarantee Claims that were previously allowed. *Id.* ¶ 17.

12.     As of December 10, 2014, Trinity had become the record holder of all of the Allowed Guarantee Claims. *Id.* ¶ 18.

13.     In January-February 2015, LBB made its fifth distribution to creditors ("LBB D5"). Trinity received interim distributions in LBB D5 that resulted in an aggregate recovery (including tax withholdings) from LBB of 80% of the Allowed Direct Claims. *Id.* ¶ 19. Applying the EUR-USD foreign exchange rate dictated by section 8.13(d) of the Plan, this amount equated to 75.55% toward full satisfaction of the Allowed Guarantee Claims. *Id.*[2]

14.     On or about April 2, 2015, LBHI made its seventh distribution to creditors ("LBHI D7"). *See* Notice Regarding Seventh Distribution Pursuant to the [Plan] [Docket No. 49001] ("LBHI D7 Notice"). Because the Allowed Guarantee Claims were not deemed satisfied in full under the Plan, Trinity received direct and, as applicable, catch-up distributions in LBHI D7 that resulted in an aggregate recovery from LBHI of 21.73% (Class 5) or 20.46% (Class 9A) of the Allowed Guarantee Claims. Trinity Decl. ¶ 20; *see* LBHI D7 Notice at 4.

15.     Thus, through LBHI D7, Trinity or its predecessors in interest had received an aggregate 97.28% (Class 5) or 96.01% (Class 9A) toward full satisfaction of the Allowed Guarantee Claims pursuant to section 8.13 of the Plan. *Id.* ¶ 21.

16.     On August 10, 2015, LBB (through counsel) contacted Trinity concerning an anticipated sixth distribution from LBB ("LBB D6"), by which LBB proposed that Trinity would receive a final distribution of €5,093,728.95 (the "Proposed Final LBB Distribution"), which would bring Trinity's aggregate recovery (including tax withholdings) on the Allowed Direct

---

[2]   Trinity believes that it is undisputed that the EUR-USD exchange rate dictated by section 8.13(d) of the Plan is 1.3402. Trinity Decl. ¶ 19.

Claims and the Allowed Guarantee Claims to the Quota Cap set forth in the Trinity-LBHI Agreement.  *Id.* ¶ 22, Ex. B (8/10/2015 14:18 email).  LBB further asserted that, as preconditions to receiving the Proposed Final LBB Distribution, Trinity must sign (a) a confirmation that, upon receipt of the Proposed Final LBB Distribution, Trinity would have received the entire amount due on the Allowed Direct Claims, and (b) other unspecified "form sheets."  *Id.*, Ex. B.

17.     On August 13, 2015, LBB (through counsel) provided Trinity with copies of:  (a) the confirmation previewed three days earlier (the "Confirmation"); (b) a bank information "form sheet," which required that Trinity certify its wiring instructions; and (c) a withholding tax "form sheet," which required that Trinity certify its withholding tax status under German law. LBB requested that Trinity execute and return these documents within three business days.  *Id.* ¶ 23, Exs. C (8/13/2015 10:50 email, with original attachments) & D (Confirmation, with English translation).

18.     Trinity had no objection to the demand for the wiring instructions and tax status forms.  *Id.* ¶ 24.  Trinity did object to the Confirmation, however, because Trinity could not certify that its receipt of the Proposed Final LBB Distribution would constitute full payment of the Allowed Direct Claims, as explained below.  *Id.*

19.     The LBB Administrator has taken the position throughout the LBB Proceeding that the portion of any distribution that is in respect of the interest component of an allowed claim is subject, absent an exemption, to withholding tax at the rate of 25%, plus an additional solidarity surcharge of 5.5% applied to such withholding tax, under German law.  *Id.* ¶ 25.  As a result, the LBB Administrator had withheld a total of €1,158,058.20 (the "Prior Withholdings") from the amounts directly or indirectly distributed to Trinity based on the €7,897,604.53 aggregate interest component of the Allowed Direct Claims.  *Id.*, Ex. D.  The Proposed Final

LBB Distribution would have increased the tax withholdings from Trinity on the Allowed Direct Claims to €1,498,178.20 (the "Total Withholdings"). *Id.*

20.     In August 2015, and still today, Trinity has been unable to confirm that the Prior Withholdings will be, or that the Total Withholdings would be, properly refunded or credited to Trinity. Trinity has not received responses from the German tax authorities to its submissions seeking refunds of the Prior Withholdings. Unless and until this refund process is successfully completed and both distributions and withholdings on the Unpaid Claim are resolved, Trinity will not have received full payment from LBB. Trinity was unwilling to give LBB the Confirmation because doing so arguably would deprive Trinity of any recourse to LBB in the event that LBB's action or inaction deprived Trinity of (a) refunds for the Prior Withholdings or, if applicable, the Total Withholdings, or (b) distributions on the Unpaid Claim. *Id.* ¶ 26.

21.     Trinity explained to LBB why Trinity objected to providing the Confirmation, and Trinity further reminded LBB that LBB had no right to demand the Confirmation as a precondition to receipt of the Proposed Final LBB Distribution, because no such document was required by the Creditors Assembly Resolutions, the Harmonizing Resolution, or the LBHI-LBB Agreement. *Id.* ¶ 27. LBB disagreed, and refused to distribute any amount to Trinity in LBB D6 without first receiving the Confirmation. *Id.*

22.     At around the same time, LBHI contacted Trinity and argued that Trinity had an obligation to accept the Proposed Final LBB Distribution in LBB D6, which would result in the Allowed Guarantee Claims being satisfied in full under the Plan, and to provide LBB with any documents that it demanded in advance. *Id.* ¶ 28. Trinity disagreed that it had any such obligation under the Trinity-LBHI Agreement, the Plan, or otherwise, and Trinity explained to LBHI why Trinity could not provide the Confirmation to LBB. *Id.*

23.     Trinity and LBB did not resolve their dispute over the Confirmation. *Id.* ¶ 29. Toward the end of August 2015, LBB issued LBB D6, but distributed nothing to Trinity on the Allowed Direct Claims. *Id.* As a result, Trinity's aggregate recovery remained unchanged since LBHI D7: that is, 2.72% (Class 5) or 3.99% (Class 9A) remained outstanding toward full satisfaction of the Allowed Guarantee Claims under the Plan. *Id.* Trinity looked to the upcoming LBHI distribution in September/October 2015 ("LBHI D8") to reduce this deficiency. *Id.*; *see* Notice Regarding Eighth Distribution Pursuant to the [Plan] [Docket No. 50984] ("LBHI D8 Notice").

24.     In advance of LBHI D8, Trinity had told LBHI that Trinity would not provide the Confirmation and that without the Confirmation LBB refused to include Trinity in LBB D6. Thus, LBHI should have known that the Allowed Guarantee Claims would *not* be satisfied in full and *would* be entitled to distributions in LBHI D8 pursuant to sections 8.3 and 8.13 of the Plan. *See* Trinity Decl. ¶ 30. Nonetheless, when LBHI issued LBHI D8 on October 3, 2015, including 1.54% to Class 5 and 1.46% to Class 9A, LBHI distributed nothing to Trinity on the Allowed Guarantee Claims. *Id.*; *see* LBHI D8 Notice, Ex. A.

25.     In two subsequent discussions with LBHI, although Trinity again explained why Trinity did not receive any payment in LBB D6, LBHI essentially asserted that Trinity, in LBHI's opinion, *should have* accepted the Proposed Final LBB Distribution in LBB D6, which *would have* resulted in the Allowed Guarantee Claims being deemed satisfied in full under the Plan, which in turn *would have* made any distribution on the Allowed Guarantee Claims in LBHI D8 (or afterward) an excess recovery. *Id.* ¶ 31.

26.     Trinity considered the Confirmation not only improper but sufficiently prejudicial that Trinity preferred to forego the immediate recovery of the Proposed Final LBB Distribution

in LBB D6 in favor of a distribution in LBHI D8 that not only was less in amount but deferred

the satisfaction in full of the Allowed Guarantee Claims under the Plan for at least six months.

*Id.* ¶ 32.  Because LBHI has refused to include Trinity in LBHI D8 or (presumably) any further

distributions, Trinity may never receive the outstanding 2.72% (Class 5) or 3.99% (Class 9A)

due from LBHI on the Allowed Guarantee Claims without the assistance of this Court.  *Id.*

27.     For the avoidance of any doubt, Trinity is not seeking a recovery on the Allowed

Guarantee Claims that is greater than what the Plan or the Trinity-LBHI Agreement provides.

*Id.* ¶ 33.  Trinity is not seeking to have LBHI cover the Prior Withholdings.  *Id.*  Because

Trinity's disputes with LBB and LBHI remain unresolved, Trinity respectfully requests that this

Court compel LBHI (a) immediately to pay Trinity the amounts that should have been distributed

to Trinity in LBHI D8, and (b) to make further distributions to Trinity, not to exceed the

maximum recovery provided for in the Plan, on the Allowed Guarantee Claims.  *Id.*

## RELIEF REQUESTED

28.     Trinity respectfully requests that this Court promptly enter an order compelling

LBHI promptly to pay Trinity the amount that should have been paid to Trinity in LBHI D8, and

to pay Trinity the appropriate amount in subsequent distributions, not to exceed the maximum

recovery provided for in the Plan, in respect of the Allowed Guarantee Claims.

## ARGUMENT

29.     Although the background is lengthy, the question before this Court is simple:

Does LBHI have the right under the Plan or the Trinity-LBHI Agreement to force Trinity,

against its will and business judgment, to accept distributions on the Allowed Direct Claims, in

order to relieve LBHI of its obligation to make distributions on the Allowed Guarantee Claims?

The answer is No, and accordingly, this Court should compel LBHI to comply with its

DB1/ 86634958.3

10

obligations under the Plan to make the outstanding distribution and future distributions to Trinity on its Allowed Guarantee Claims.

30.     This Court has authority under Section 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11,]" and has the inherent authority to enforce its own orders -- including, of course, the Confirmation Order -- at any and all times.  This Court also has authority under Bankruptcy Rule 3021 to resolve disputes concerning distributions on allowed claims under a confirmed chapter 11 plan.  Pursuant to paragraph 77 of the Confirmation Order and section 14.1(j) of the Plan, this Court has authority "[t]o hear and determine any actions brought against the Plan Administrator in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan."

31.     Section 8.3 of the Plan requires the Debtors to make semiannual Distributions to holders of Allowed Claims.  Section 8.13(a) of the Plan provides that an Allowed Guarantee Claim "shall … be deemed satisfied in full" if it "receives Distributions (excluding Distributions contributed to the Plan Adjustment on account of such Allowed Guarantee Claim) that combined with Distributions or other consideration provided on the corresponding Primary Claim … equal the Allowed amount of such Guarantee Claim (or such amount as may be agreed to by a holder and the Debtors)."   Section 8.13(d) of the Plan provides that, "[f]or purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date."

32.     Thus, the Plan requires that the satisfaction of Allowed Guarantee Claims be determined based on Distributions that a creditor actually "receives" from the Debtor on its

Allowed Guarantee Claim and Distributions or other consideration actually "provided" on the corresponding Primary Claim.  The Trinity-LBHI Agreement mirrors this language, requiring that Trinity's maximum recovery is based on consideration actually "received" on account of an Allowed Guarantee Claim and distributions or other consideration actually "made or paid" by LBB on the Allowed Direct Claim.  Trinity Decl. ¶ 13, Ex. A, ¶ 9.  Neither the Plan nor the Trinity-LBHI Agreement mentions, much less purports to credit LBHI for, distributions on Primary Claims that are rejected, disputed, subject to unsatisfied conditions, or the like.  *See id.*

33.    As of the Record Date for LBHI D8 (August 22, 2015) and the date of LBHI D8 (October 1, 2015), it is undisputed that Trinity had *received* Distributions on the Allowed Guarantee Claims from LBHI and had been *provided* distributions and *paid* on the Allowed Direct Claims from LBB in an aggregate amount equal only to 97.28% (Class 5) or 96.01% (Class 9A) of full satisfaction of the Allowed Guaranteed Claims pursuant to Article VIII of the Plan.  Trinity Decl. ¶¶ 21, 29.  Thus, there should be no dispute that the Allowed Guarantee Claims were not as of LBHI D8, and are not today, "deemed satisfied in full" under the Plan. *See id.*; Plan §§ 8.13(a), 8.13(d).

34.    Nothing in the Plan or the Trinity-LBHI Agreement gives LBHI the right to compel Trinity to accept a distribution on the Allowed Direct Claims on terms that Trinity considers prejudicial (or to dictate to Trinity what constitutes prejudice).  *See* Plan § 8.13; Trinity Decl. ¶¶ 24-28, 32.  In this regard, the Plan and the Trinity-LBHI Agreement reflect the nature of the guarantees that LBHI originally gave, which are guarantees of payment and not of collection. *See* Trinity Decl. ¶¶ 7-8, Ex. E § 2.2 ("This Guarantee is one of payment and not collection."), Ex. F § 5 ("The Guarantor acknowledges and agrees that this Guarantee is one of payment and not of collection.").  Accordingly, Trinity has no obligation to accept distributions on the

Allowed Direct Claims from LBB at all, in order to be entitled to Distributions from LBHI on the Allowed Guarantee Claims. And certainly LBHI has no right to overrule Trinity's business judgment -- i.e., its decision not to submit the Certification improperly demanded by LBB based on a genuine concern of economic prejudice -- in order to reduce LBHI's own liability on the Allowed Guarantee Claims. *See* Plan § 8.13; Trinity Decl. ¶¶ 24-26, 32.[3]

35.     To avoid any doubt on the subject, Trinity declined to comply with LBB's unilateral, last-minute, unjustified demand for the Confirmation because it was materially prejudicial, in that it created a risk that Trinity would lose recourse to LBB in the event that Trinity did not eventually receive proper refunds for the Total Withholdings or distributions on the Unpaid Claim. Trinity Decl. ¶¶ 24-26, 32-33.

36.     Finally, although LBHI's compliance with its own Plan cannot be prejudicial to LBHI, it is important to note that, when the Allowed Guarantee Claims are satisfied in full under the Plan, LBHI will subrogate to Trinity's claims against LBB and will automatically take assignment of the Direct Claims pursuant to the LBHI Agreement. Plan § 8.14; Trinity Decl. ¶ 13, Ex. A, ¶ 10. Thus, LBHI should have a corresponding recovery from LBB for amounts distributed to Trinity and its predecessors in interest on the Allowed Guarantee Claims. *See id.*

---

[3]     The Plan gives LBHI the right to demand a certification, and potentially, security, from a holder of an Allowed Guarantee Claim, to protect against excess recoveries, but LBHI did not demand any such certification or security from Trinity and, in any event, LBHI was aware that Trinity would not accept the Proposed Final Distribution from LBB as matters stood. Plan § 8.13(e); Trinity Decl. ¶¶ 26-28.

## CONCLUSION

For the reasons set forth above, Trinity respectfully requests that this Court enter an order

that compels LBHI (a) promptly to pay Trinity the amounts that should have been paid to Trinity

in LBHI D8 on the Allowed Guarantee Claims, and (b) to include the Allowed Guarantee Claims

in any subsequent distributions, not to exceed the maximum recovery thereon provided for in the

Plan, with such other and further relief as this Court deems just and proper.

Dated:    March 22, 2016
          New York, New York

                              **MORGAN, LEWIS & BOCKIUS LLP**


By: _____
    Joshua Dorchak
    Matthew C. Ziegler
    101 Park Avenue
    New York, New York 10178
    Telephone:  212.309.6000
    Email:  joshua.dorchak@morganlewis.com
            matthew.ziegler@morganlews.com

    *Attorneys for Trinity Investments Limited*

DB1/ 86634958.3

14