Duncan E. Barber *(Pro Hac Vice Motion Pending)* (Colo. Bar No. 16768)
4582 S. Ulster St. Pkwy., Suite 1650
Denver, CO 80237
Phone: 720-488-0220
Fax: 720-488-7711
Email: dbarber@bsblawyers.com
*Attorneys for Ironbridge Mountain Cottages, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------
In re:

LEHMAN BROTHERS HOLDINGS
INC. and LB ROSE RANCH LLC

      :

         Debtors.            :

---------------------------------------------------------------

Chapter 11

Case No. 08-13555 (JMP)
(Jointly Administered)

**OBJECTION TO PLAN ADMINISTRATOR'S FIVE HUNDRED NINTH OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**
**BY HOLDER OF CLAIM NO. 30849**

Creditor, Ironbridge Aspen Collection, LLC ("Claimant"), hereby responds (the "Response") to the Plan Administrator's Five Hundred Ninth Omnibus Objection to Claims (the "Objection"), with respect to Claim No. 30849 (the "Claim").

In support hereof, Claimant states as follows:

**INTRODUCTION**

The Objection is vague, at best, asserting only summary statements without detail to support the summary statements which comprise the Objection. As such, the Objection does not

overcome the *prima facie* effect of the timely-filed Claim and should be denied.  *See* Fed. R.

Bankr. P. 3001(f).

## BACKGROUND

1.      The Claim is pending in the bankruptcy case of LB Rose Ranch LLC ("Debtor" or

"LBRR").

2.      In June 2004, LBRR entered into a Purchase and Sale Agreement (the "PSA")

with Hansen Construction, Inc. ("HCI").  Shortly thereafter, on October 1, 2004, HCI assigned

the PSA to Ironbridge Homes, LLC ("IBH"), pursuant to Section 22(b) of the PSA.

3.      The PSA related to LBRR's development of certain real property located in

Garfield County, Colorado, the sale of lots to third-parties once developed by LBRR and the

construction of homes on the lots (the "Ironbridge Development").  As part of obtaining local

government approval for the Ironbridge Development, LBRR agreed with Garfield County to

build thirty (30) "affordable homes" within the Ironbridge Development.

4.      On June 21, 2005, IBH assigned part of its interest under the PSA to Claimant.

Specifically, Claimant was assigned the obligation to construct the "Aspen Collection"

affordable home model in the Ironbridge Development.

5.      On September 5, 2006, LBRR, IBH, Claimant and others entered into a First

Amendment to the PSA, which, among other things, detailed the lots in Phase II of the

Ironbridge Development on which Claimant would build certain of the affordable homes.  The

First Amendment also clarified that the 30 affordable housing lots were expressly excluded from

IBH's right to purchase lots under the PSA.

6.      Ultimately, the parties agreed, among other things, on the essential terms for the construction of the affordable homes, referred to as the "Affordable Housing Agreement."  The parties further agreed that they would share in any savings Claimant achieved in building and affordable home at a cost below the budget the parties agreed to (the "Cost Savings").

7.      Four (4) in the Mountain Cottages series were completed and sold.  Ten (10) of the Aspen Collection series were completed and sold and ten (10) more were started and were 70% completed when LBRR ceased funding draws.  The remaining six (6) were slated to be built during the Phase III of the Ironbridge Development.

8.      Over the term of Claimant's performance, the parties agreed to changes in the budget for the Aspen Collection model which increased the budget by approximately $5,000 per unit.

9.      As stated, some but not all affordable homes were completed and others were in various stages of construction when LBRR ceased to fund construction draw draws due to the onset of financial difficulties that would ultimately result in LBRR and its affiliates seeking bankruptcy protection before this Court.

10.     After Debtor's bankruptcy filing, all activity at the Ironbridge Development ceased.

11.     The Claim is comprised of two parts:

    a.  **$184,001.00**:  for unpaid direct construction expenses which is secured (resulting from mechanic's liens rights under Colorado law and a Notice under Bankruptcy Code § 546(b) filed and served in this case);

    b.  **$204,830.00**:  representing the balance of unpaid Cost Savings, which is not

subject to mechanic's lien rights under Colorado law and, hence, is a general

unsecured claim.

12.     The secured portion of the claim enjoys the rights contained in Bankruptcy Code

§ 506(b).  Claimant's entitlement to post-petition interest (in the amount of 12% per annum) plus

attorneys' fees and costs arises under C.R.S. §§ 38-22-101(5) and 38-22-118.

13.     During the course of this case, Debtor obtained authority from the Court to reject

the PSA and Affordable Housing Agreement.  Although rejection of the PSA and Affordable

Housing Agreement gave rise to rejection damages claim, Claimant did not file an amended

claim asserting those additional amounts owing.

14.     Upon information and belief, in January 2010, LBRR hired another general

contractor to complete construction of the affordable homes and sold them to third-parties.

15.     Pursuant to a stipulated order of this Court, funds from those sales were escrowed

pending resolution of the Objection.

## RESPONSE TO EACH CLAIM OBJECTION

16.     Through the Objection, the Plan Administrator advances several vague theories

for why it believes the Claim should be disallowed.

17.      As stated above, Claimant does not believe that the Objection, as pled,

overcomes the *prima facie* validity of the Claim.  Nevertheless, Claimant will attempt to address

the inaccuracies of each of the Plan Administrator's theories.

18.      Claimant reserves the right to supplement this Response if the Plan Administrator

provides more detailed explanations for the bases on which the Objection is founded.

414234                                         4

A. **The Claim is Not Inflated**

19.     The Plan Administrator makes a general statement that the Claim is inflated, but provides no details of what is inflated about the Claim.

20.     The Claim is not inflated.

21.     The Claim is for unpaid direct construction expenses for certain affordable homes and the Cost Savings in building the units identified on Invoice No. 39924 dated April 21, 2009, 2009, a copy of which is attached to the Claim.  The underlying math is provided in that invoice. The voluminous documentation underlying the invoice is available but has never been requested by the Plan Administrator.

22.     There is nothing inflated about the Claim.  This basis should be rejected.

B. **Claimant Did Not Do Unauthorized Work Or Improperly Deviate from the Approved Budget**

23.     At all times, Claimant acted within the confines of the Affordable Housing Agreement and the parties' budget.  Claimant's obligation under the Affordable Housing Agreement was to build the affordable homes within the budget agreed to by the parties.  The Claim reflects the Cost Savings measured against the applicable budget.  The invoice showing the construction costs of each affordable home is also attached to the Claim.  Those costs are less than the agreed budget resulting in Cost Savings, as described on the invoice.  Pursuant to the parties' agreement, Claimant is entitled to seventy percent (70%) of the Costs Savings.

24.     Claimant had regular oral and written communications with LBRR regarding the construction and progress on the affordable homes.

25.     All work performed by Claimant was within the final Approved Budget.

26.     Until Debtor's financial situation began to deteriorate, it timely paid Claimant's

monthly draws and funded related expenses.

27.     To the extent Claimant exceeded the Approved Budget, which it did not, the
Affordable Housing Agreement only obligated Debtor to pay up to the Approved Budget.
However, LBRR never had cause to pay below what Claimant requested because the houses
were consistently built below the Approved Budget.

C.  **Completion of Work; All Work Performed by General Contractor**

28.     As a result of LBRR's default under the Affordable Housing Agreement, by
among other things failing to timely make payments on draws, Claimant stopped construction
work on the affordable homes.

29.     LBRR simply stopped performing its obligations and as a result, construction in
the Ironbridge Development stopped.

30.     All the work represented by the Claim was performed by or at the direction of
Claimant for the construction of the affordable units.  Where Claimant utilized subcontractors, it
paid those subcontractors and seeks payment of only those amounts to which Claimant is
entitled.

31.     No amounts included in the Claim are for unpaid bills related to goods and/or
services provided by someone else.

D.  **Duplicate Claims**

32.     Claimant agrees that to the extent its Claim asserts claims duplicative of Claim
Nos. 66154 or 30848, the Claim should exclude those other claims.  Claimant believes there is
no dispute on this point.

### E.  Disallowance Under Bankruptcy Code § 502(d)

33.     Debtor asserts that the Claim should be disallowed because of alleged preference payments made to Claimant.

34.     Because any payments Claimant received were on account of a secured claim (arising from Claimant's mechanic's lien rights), Bankruptcy Code § 502(d) is inapplicable and does not provide a basis for denial of the Claim.  *See, e.g., Bryant v. JCOR Mechanical, Inc. (In re The Electron Corp.)*, 336 B.R. 809 (10th Cir. B.A.P.  2006); *Official Committee of Unsecured Creditors of 360Networks (USA) Inc. v. AAF–McQuay, Inc. (In Re: 360 Networks (USA) Inc.)*, 327 B.R. 187 (Bankr. S.D.N.Y. 2005).

### F.  LBRR's Reservation of Setoff Rights and Counterclaims

35.     In the Objection, the Plan Administrator reserves setoff rights and counterclaims. The Objection does not contain a description of the setoff rights or counterclaims.

36.     Debtor also filed a complaint (the "Complaint") on November 30, 2011, against Claimant and other parties in the District Court for Garfield County, Colorado.  The Complaint is based on the business relationship formed in connection with the Ironbridge Development under the PSA and the Affordable Housing Agreement and asserts a variety of state law causes of action against multiple defendants, including breach of contract and other tort-based claims. More than half of the defendants are not parties before this Court.

37.     No progress has been made on the Complaint since Debtor abated it shortly after it was filed.  Upon information and belief, the Complaint has not been served on any of the defendants.

38.     To the extent the alleged setoff and/or counterclaims are based on the allegations in the Complaint, Claimant asserts that such claims are barred by the applicable statute of

414234                                              7

limitation, even giving consideration to the extension provided by 11 U.S.C. § 108, as well as

Colorado's application of the Economic Loss Rule, which bars the assertion of tort claims for

matters arising out of contract duties.  *Jorgenson v. Colorado Rural Properties, LLC*, 226 P.3d

1255, 1258 (Colo. App. 2010); *Makoto USA, Inc. v. Russell*, 2009 WL 4069579 (Colo. App.

Nov. 25, 2009); *Parr v. Triple L & J Corp.,* 107 P.3d 1104, 1107-08 (Colo. App. 2004); *Carder,*

*Inc. v. Cash,* 97 P.3d 174, 183-84 (Colo. App. 2003); *Logixx Automation, Inc. v. Lawrence*

*Michels Family Trust,* 56 P.3d 1224, 1230-31 (Colo. App. 2002); *BRW, Inc. v. Dufficy & Sons,*

*Inc.,* 99 P.3d 66, 74 (Colo. 2004).   Moreover, to the extent such alleged setoff and/or

counterclaims are not barred by the applicable statute of limitations and/or Economic Loss Rule,

Claimant does not believe that this Court has Constitutional authority to enter a final order on

such claims and Claimant does not consent to the Court entering final orders.[1]

### G.  Reservation of Rights

H.      Claimant objects to the Plan Administrator's attempt to reserve the right to bring

additional objections to the Claim and reserves its right to assert that any additional objections

are barred by *res judicata.*

---

[1] Moreover, given the scope of causes of actions in the Complaint and that the state court action involves multiple parties over whom this Court does not have jurisdiction, abstention is appropriate, to avoid conflicting rulings between this Court and the state court.

414234                                                                8

Wherefore, Claimant requests the Court enter an order overruling the Objection, allowing

the Claim as filed and granting such other and further relief as the Court deems just and proper.

Dated:  March 23, 2016
       Denver, Colorado                   BIEGING SHAPIRO & BARBER LLP

                                  By:___*/s/ Duncan E. Barber*_____
                                     Duncan E. Barber, Colorado Bar #16768
                              4582 South Ulster St. Parkway, Suite 1650
                              Denver, CO  80237
                              Tel:  (720) 488-0220
                              Fax:  (720) 488-7711
                              E-mail dbarber@bsblawyers.com

                              *Attorneys for Ironbridge Aspen Collection, LLC*

414234                                        9