Hearing Date: March 29, 2016 at 10:00 A.M. EST
Objection Deadline: March 23, 2016 at 4:00 PM EST

Duncan E. Barber *(Pro Hac Vice Motion Pending)* (Colo. Bar No. 16768)
4582 S. Ulster St. Pkwy., Suite 1650
Denver, CO  80237
Phone:  720-488-0220
Fax:  720-488-7711
Email:  dbarber@bsblawyers.com
*Attorneys for Ironbridge Homes, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------
In re:

LEHMAN BROTHERS HOLDINGS
INC. and LB ROSE RANCH LLC
          :
          Debtors.                                   :
---------------------------------------------------------------

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

**OBJECTION TO PLAN ADMINISTRATOR'S FIVE HUNDRED NINTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS) BY HOLDER OF CLAIM NO. 66154**

Creditor, Ironbridge Homes, LLC ("Claimant"), hereby responds (the "Response") to the Plan Administrator's Five Hundred Ninth Omnibus Objection to Claims (the "Objection"), with respect to Claim No. 66154 (the "Claim").

In support hereof, Claimant states as follows:

**INTRODUCTION**

The Objection is vague, at best, asserting only summary statements without detail to support the summary statements which comprise the Objection.  As such, the Objection does not

414516

overcome the *prima facie* effect of the timely-filed Claim and should be denied. *See* Fed. R. Bankr. P. 3001(f).

## BACKGROUND

1. The Claim is pending in the bankruptcy case of LB Rose Ranch LLC ("Debtor" or "LBRR").

2. In June 2004, LBRR entered into a Purchase and Sale Agreement (the "PSA") with Hansen Construction, Inc. ("HCI"). Shortly thereafter, on October 1, 2004, HCI assigned the PSA to Claimant, pursuant to Section 22(b) of the PSA.

3. The PSA related to LBRR's development of certain real property located in Garfield County, Colorado, the sale of lots to third-parties once developed by LBRR, and the construction of homes on lots that were sold (the "Ironbridge Development"). As part of obtaining local government approval for the Ironbridge Development, LBRR agreed with Garfield County to build thirty (30) "affordable homes" within the Ironbridge Development.[1]

4. Phase I of the Development was completed and all –platted lots sold and houses built (something in the range of 150 lots and houses). Additionally, Claimant built a recreation center in Phase I.

5. Phase II consisted of seventy-four (74) lots, a majority of which were sold prior to commencement of this bankruptcy case. Prior to the bankruptcy, sales activity within the

---

[1] The PSA in so far as it related to the lots designated for affordable housing was assigned to two entities affiliated with Claimant, Ironbridge Mountain Cottages, LLC, and Ironbridge Aspen Collection, LLC. These two (2) entities undertook the construction of the affordable homes, until LBRR's activities ceased at the Ironbridge Development. To the extent Debtor's Claim Objection relates to the construction of the affordable homes, reference is made to the Responses filed contemporaneously herewith to Claim Nos. 30848 and 30849, which are incorporated herein by this reference.

414516                                        2

Ironbridge Development was good, notwithstanding that the overall downturn the United States real estate market was experiencing at the time.

6. In the months leading to the initial Lehman companies' bankruptcy filings, and continuing thereafter, decisions by LBRR with respect to honoring its obligations under the PSA and the Ironbridge Development ceased. LBRR's inaction led to a number of problems, including: (i) sales were lost, (ii) contracts were cancelled; (iii) lenders refused to convert construction financing to permanent financing, leading to several foreclosures within the Ironbridge Development; (iv) the golf amenity (a key marketing sales attraction) became essentially valueless and (v) the uncertainty surrounding the build out of Phase III and the likely concomitant increase in HOA dues impacted sales.

7. After Debtor's bankruptcy filing, all home sales activity at the Ironbridge Development ceased.

8. The Claim is comprised of the following components:

   a. **$1,272,632**: As of December 31, 2008, Claimant was due $1,272,632 under the PSA for certain overpayments received by LBRR. Pursuant to the PSA, and the amendments thereto, the Debtor was entitled to receive fifty percent (50%) of the **profits** from each home. However, Claimant was successful at selling lots at a premium above the parties' projections and closing those sales prior to completion of construction of a home on the lot. As the lots sold, LBRR received fifty percent (50%) of the proceeds of the lot sales including the premiums, which LBRR retained as an advance until profits were determined on the construction of the home on each lot and a true up was calculated. The foregoing amount represents the excess amount received by

LBRR from the lot sales after a true up of the construction costs.

b. **$2,750,414**: As of December 31, 2009, Claimant was due $2,750,414 under the PSA for previously unallocated development costs, warranty claims and maintenance expenses. The PSA provided that certain development costs were to be recaptured on a lot by lot basis as lots sold and that some proceeds would be escrowed to cover warranty and maintenance claims. This figure presents hard, out of pocket costs and expenses actually incurred and paid by Claimant for these categories of expenses and costs.

c. **$783,350**: As of December 31, 2009, Claimant estimated that an additional $783,350 would be required for 2010 warranty and repair expenses. The amounts Claimant actually paid for 2010 warranty and repair expenses exceed that estimate.

d. The underlying documentation for the foregoing is available and is voluminous.

9. In addition to the foregoing, Claimant asserted its rights against Debtor on account of construction defects in some of the houses in Phase I of the Development. At the time the Claim was filed, the alleged construction defect issues were in their very preliminary stages. Since the Claim was filed, twenty-two (22) buyers of lots in Phase I sued Debtor, Claimant and others in Colorado (the "Construction Defect Litigation"). That Construction Defect Litigation was bifurcated into a state court suit with LBRR as the sole defendant and an arbitration with Claimant and all other parties as the defendants. The arbitration resulted in finding of liability among Claimant and the other defendant parties to the 20 homeowners (2 having dropped out) and the separate state court action involving LBRR resulted in jury verdicts

against LBRR. Those jury verdicts have yet to be reduced to judgments. Once judgments are entered in the state court action, the proportionality between and among the co-liable parties, LBRR, Claimant and others not before this Court, will be possible. At that point, this aspect of the Claim cannot be addressed.

10. During the course of this case, Debtor obtained authority from the Court to reject the PSA and the PSA was rejected. Although rejection of the PSA gave rise to rejection damages, Claimant did not file an amended claim asserting those additional amounts owing.

## RESPONSE TO EACH CLAIM OBJECTION

11. Through the Objection, the Plan Administrator advances three (3) vague theories for why it believes the Claim should be disallowed.

12. As stated above, Claimant does not believe that the Objection, as pled, overcomes the *prima facie* validity of the Claim. Nevertheless, Claimant will attempt to address the inaccuracies of each of the Plan Administrator's theories.

13. Claimant reserves the right to supplement this Response if the Plan Administrator provides more detailed explanations for the bases on which the Objection is founded.

14. Initially, a few clarifying comments.

15. **First**, the Claim does not seek damages under the "Affordable Homes Agreement." To be sure, LBRR owes certain amounts under the Affordable Homes Agreement and in connection with the construction of affordable homes. Those amounts are not included in the Claim but rather are sought by the Proof of Claim Nos. 30848 and 30849 and are addressed in the Responses filed to the Plan Administrator's objections to those claims, which Responses are filed contemporaneously herewith. The Claim seeks only amounts owing under the PSA and in connection with the Construction Defect Litigation, which is yet to be determined.

16. **Second**, Claimant denies the bald assertion that the Claim is inflated. Claimant believes it has accurately reported all sales and construction activities to LBRR and that that reporting is consistent with the PSA and the parties' long standing and developed course of dealing at the Ironbridge Development. Moreover, LBRR has never articulated the detail underlying its calculation.

A. **Claimant's Performance Complied with the Parties' Agreement**

17. The Plan Administrator's **first general assertion** is that "Claimant failed to comply with the express requirements of the unauthorized work." While that statement is unintelligible on its face, Claimant asserts that it substantially complied with the agreement of the parties.

18. Claimant sold lots, built homes, reported sales and building activities to LBRR and its agents and disbursed proceeds to LBRR. Over the years, there were hundreds of such communications and interactions, both orally and in writing.

19. To be sure, from inception of the PSA to the commencement of LBRR's bankruptcy case (over a five (5) year period), construction plans changed (increasing options both in design and in materials).

20. Claimant outright denies that it "materially" breached the parties' agreement.

21. Rather, LBRR's indecision and lack of performance (timely and otherwise), which only accelerated with the onset of the Lehman financial meltdown, constituted material breaches of the PSA.

22. The amounts set forth in ¶ 8 above are real, actually owing and are supported by voluminous documentation, invoices, checks, closing statement statements and the like, all of

which were provided to LBRR pre-petition in the ordinary course of the parties' business relationship.

23. This basis should be rejected.

B. **Affordable Housing Agreement**

24. The Plan Administrator's **second general assertion** relates to the Affordable Housing Agreement

25. This objection is directed to the affordable housing units and related construction and is addressed in the Responses to the Objection to Claim Nos. 30848 and 30849. Claimant incorporates its responses to the Plan Administrator's Objection to Claim Nos. 30848 and 30849.

26. Again, the amounts covered by the Claim (*i.e.*, Claim No. 66154) do not cover the amounts owing under Claim Nos. 30848 and 30849.

27. This basis should be denied.

C. **Breach of Contract**

28. The Plan Administrator's **third general assertion** is that Claimant materially breached.

29. Claimant did not breach the PSA, although performance became increasingly difficult and eventually ground to a halt as a result of LBRR utter lack of performance.

30. Sales and construction at Ironbridge Development ceased because of LBRR's inability to perform both before and after its bankruptcy filing.

31. Rather than elect to notice a default, Claimant attempted for months to work with LBRR to maintain the on-going operation and performance at Ironbridge Development.

32. LBRR failed to act in good faith in its performance under the PSA.

D. **Duplicate Claims**

33.  Next, the Plan Administrator's raises duplication in the Claim and Claim Nos. 30848 or 30849.

34.  As stated, Claimant agrees that to the extent its Claim asserts claims duplicative of Claim Nos. 30848 or 30849, the Claim should exclude those other claims.  Claimant believes there is no dispute on this point.

E. **Plan Administrator's Reservation of Setoff Rights and Counterclaims**

25.  In the Objection, the Plan Administrator reserves setoff rights and counterclaims. The Objection does not contain a description of the setoff rights or counterclaims.

26.  Debtor also filed a complaint (the "Complaint") on November 30, 2011, against Claimant and other parties in the District Court for Garfield County, Colorado.  The Complaint is based on the business relationship formed in connection with the Ironbridge Development under the PSA and the Affordable Housing Agreement and asserts a variety of state law causes of action against multiple defendants, including breach of contract and other tort-based claims. More than half of the defendants are not parties before this Court.

27.  No progress has been made on the Complaint since Debtor abated it shortly after it was filed.  Upon information and belief, the Complaint has not been served on any of the defendants.

28.  To the extent the alleged setoff and/or counterclaims are based on the allegations in the Complaint, Claimant asserts that such claims are barred by the applicable statute of limitation, even giving consideration to the extension provided by 11 U.S.C. § 108, as well as Colorado's application of the so-called Economic Loss Rule, which bars the assertion of tort claims for matters arising out of contract duties.  *Jorgenson v. Colorado Rural Properties, LLC*,

226 P.3d 1255, 1258 (Colo. App. 2010); *Makoto USA, Inc. v. Russell*, 2009 WL 4069579 (Colo. App. Nov. 25, 2009); *Parr v. Triple L & J Corp.,* 107 P.3d 1104, 1107-08 (Colo. App. 2004); *Carder, Inc. v. Cash,* 97 P.3d 174, 183-84 (Colo. App. 2003); *Logixx Automation, Inc. v. Lawrence Michels Family Trust,* 56 P.3d 1224, 1230-31 (Colo. App. 2002); *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo. 2004). Moreover, to the extent such alleged setoff and/or counterclaims are not barred by the applicable statute of limitations and/or Economic Loss Rule, Claimant does not believe that this Court has Constitutional authority to enter a final order on such claims and Claimant does not consent to the Court entering final orders.[2]

F. <u>Reservation of Rights</u>

29. Claimant objects to the Plan Administrator's attempt to reserve the right to bring additional objections to the Claim and reserves its right to assert that any additional objections are barred by *res judicata*.

Wherefore, Claimant requests the Court enter an order overruling the Objection, allowing the Claim as filed and granting such other and further relief as the Court deems just and proper.

Dated:  March 23, 2016
Denver, Colorado

BIEGING SHAPIRO & BARBER LLP

By: */s/ Duncan E. Barber*
    Duncan E. Barber, Colorado Bar #16768
4582 South Ulster St. Parkway, Suite 1650
Denver, CO  80237
Tel:  (720) 488-0220; Fax:  (720) 488-7711
E-mail dbarber@bsblawyers.com

*Attorneys for Ironbridge Homes, LLC*

---

[2] Moreover, given the scope of causes of actions in the Complaint and that the state court action involves multiple parties over whom this Court does not have jurisdiction, abstention is appropriate, to avoid conflicting rulings between this Court and the state court.

414516      9