Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    LEHMAN BROTHERS HOLDINGS

7    INC.,                           Case No. 08-13555-scc

8

9         Debtor.

10   - - - - - - - - - - - - - - x

11

12                       U.S. Bankruptcy Court

13                       One Bowling Green

14                       New York, New York

15

16                       March 4, 2016

17                       2:58 PM

18

19   B E F O R E:

20   HON. SHELLEY C. CHAPMAN

21   U.S. BANKRUPTCY JUDGE

22

23

24

25

Page 2

1    HEARING Re:  Doc #52107 Motion for Sanctions Against William

2    Kuntz III

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

```
 1    A P P E A R A N C E S :

 2    QUINN EMANUEL URQUHART & SULLIVAN, LLP

 3         Attorneys for the Creditors' Committee

 4         51 Madison Avenue

 5         22nd Floor

 6         New York, NY 10010

 7

 8    BY:  ANDREW J. ROSSMAN, ESQ.

 9         TYLER G. WHITMER, ESQ.

10         JAMES C. TECCE, ESQ.

11         WILLIAM PUGH, ESQ.

12

13    WACHTELL, LIPTON, ROSEN & KATZ

14         51 West 52nd Street

15         New York, NY 10019-6159

16

17    BY:  MOLLY GROVAK ABRAHAM, ESQ.

18

19    ALSO PRESENT:

20    WILLIAM KUNTZ III

21

22

23

24

25
```

Page 4

1                  P R O C E E D I N G S

2          THE COURT:  Hello.  Good afternoon.  Please have a

3     seat.  How's everyone today?  Good afternoon.

4          MR. KUNTZ:  Good afternoon, Your Honor.

5          THE COURT:  Want to have a seat?

6          MR. KUNTZ:  Not yet.  I'd like to say something if

7     I may.

8          THE COURT:  No, not until I say so.

9          MR. KUNTZ:  Already.

10          THE COURT:  Thank you very much.

11          Mr. Rossman, apparently there was recently filed

12     on the docket a couple of other papers by Mr. Kuntz

13     pertaining to this matter.  I'm not sure if you have them.

14     One was time stamped at 1:21 today, and now appears at

15     docket 522256.  I can hand you a copy.

16          MR. ROSSMAN:  Thank you, Your Honor.  We have not

17     received it.

18          THE COURT:  Mr. Kuntz, I assume that you have a

19     copy of this.  It's the one that begins:

20          "Your Honor, with respect to my suggestion of

21          recusal, it is with mild regret that I see Your Honor

22          made an order with respect to that.  I would have

23          preferred to see you take it under advisement, but that

24          was I am sure your decision, while it may turn out to

25          be the worst in your legal career.  Time will tell."

1          And so forth.  Here's a copy.

2          MR. ROSSMAN:  Thank you, Your Honor.

3          THE COURT:  In addition, and I haven't searched

4   the entire docket, but there does also appear to be one that

5   was filed on -- it was received in the clerk's office on

6   February 29th, and it appears at docket 52242.  It's

7   addressed to me, but it also appears to partially be

8   addressed to Judge Sullivan.  I'm not quite sure.

9          And the filing that I just handed you, the one at

10  docket ending 56, also appears to include some papers

11  addressed to Judge Sullivan.  That looks like it was filed

12  at the District Court on March 1st at 10:05.

13         In any event, Mr. Kuntz, is there anything else

14  that you filed or you'd like to bring to my attention?

15         MR. KUNTZ:  Well, thank you, Your Honor.

16         With cooperation of counsel they delivered to me

17  this large folder this morning, and I was also served with

18  the papers by the process server.  So I can acknowledge the

19  service it was made, but it wasn't made last month.

20         THE COURT:  Okay.

21         MR. KUNTZ:  I apologize in part for Tuesday's

22  discomfort, if you will, but there's an important process

23  here.  They rely upon email, I do not.  I rely upon the U.S.

24  mail, they give that afterthought, and I referred to

25  (indiscernible) in Exhibit 42 I believe, may be another

Page 6

1  exhibit, where they mailed me a document on the 18th or 19th

2  of last month.  When I checked my mail five, six days later

3  it wasn't there.  They apparently don't use what's called

4  accountable mail, express so you can track.

5          And further with respect to the papers Your Honor

6  just mentioned, I have actual time stamped copies, originals

7  for counsel.  I wasn't -- it didn't seem to me appropriate

8  to put them in the mail so they'd be across the street when

9  I could simply provide them for them now.  If Your Honor

10 would permit.

11         THE COURT:  Sure.  But you --

12         MR. KUNTZ:  Or if they would accept.

13         THE COURT:  Sure.  But there are rules, and these

14 filings aren't pursuant to any rules that I'm aware of, and

15 it's just happenstance that I happen to become aware of a

16 pleading that was filed at 1:21 today prior to a scheduled

17 3 o'clock hearing.  It's neither here nor there, you can

18 give Mr. Rossman whatever pleadings you'd like and we're

19 going to get started.

20         MR. KUNTZ:  Such is the same (indiscernible)

21 apparently those are filed out of time on their notice, but

22 such is -- well, Your Honor will hear that.

23         MR. ROSSMAN:  Is that a copy for me?

24         MR. KUNTZ:  Is somebody from the U.S. Trustee's

25 Office here?  One for each.  Well, I've given then one copy.

1          THE COURT:  That's fine.

2          MR. ROSSMAN:  We're fine.

3          THE COURT:  Thank you.

4          Okay.  Mr. Rossman, on for hearing today is a

5     motion for sanctions against Mr. Kuntz, so I'm ready to hear

6     you.

7          MR. ROSSMAN:  Thank you, Your Honor.  If I may I'm

8     going to come up to the podium.

9          THE COURT:  Sure.

10         MR. ROSSMAN:  But I want to begin, if Your Honor

11    will allow me, by making very clear the relief that we're

12    seeking and to make it also clear to Mr. Kuntz and to offer

13    to Mr. Kuntz a way out of this problem if he's willing to

14    entertain it.

15         I have in my hand a one-page stipulation of

16    dismissal with prejudice of his appeal of the order

17    approving the settlement.  And the very simple request that

18    we have is that he withdrew his appeal.  So I just want to

19    make clear --

20         THE COURT:  Sure.

21         MR. ROSSMAN:  -- on the record that we're asking

22    him if he would withdraw that appeal and providing him with

23    a copy of the stipulation, he can sign it or not, that's

24    purely his choice.

25         If he does I will represent to the Court and I'll

Page 8

1    represent to Mr. Kuntz that we will take down all of our

2    motions and we will not proceed with any sanctions with him

3    based on past conduct if he's willing to do that.  And if

4    he's not then I'll proceed with the rest of my motion.  But

5    I'd like to tender it --

6              THE COURT:  Okay.

7              MR. ROSSMAN:  -- if I may, on the record.

8              THE COURT:  I think that's a good idea.

9    Mr. Kuntz, do you understand --

10             MR. KUNTZ:  Would Your Honor like to have this

11   marked?

12             MR. ROSSMAN:  We can do that.

13             THE COURT:  We'll mark it as Sanction's Exhibit 1.

14             MR. ROSSMAN:  Sorry, Your Honor.  I seemed to have

15   taken all the copies with me.

16             THE COURT:  So, Mr. Kuntz, do you have an answer

17   for Mr. Rossman?

18             MR. KUNTZ:  Last Tuesday at the omnibus hearing

19   before it was interrupted by the fire alarm, Lehman omnibus

20   hearing Tuesday morning, I was prepared to offer a

21   stipulation which in effect would allow the funds to be

22   deposited in the court's registry account with some small

23   conditions.

24             My position is, is that there is a very curious

25   circumstance (indiscernible) with the state comptroller's

Page 9

1   office that gives me a sufficient standing to make the

2   suggestion I made.

3              THE COURT:  Mr. Kuntz, let me stop you.

4              MR. KUNTZ:  Thank you, Your Honor.

5              THE COURT:  Okay.  You do not have standing in

6   this proceeding.  The -- whatever unclaimed funds there are

7   in the state comptroller's office have nothing to do with

8   this proceeding at this point.

9              There was a bar date in this case and there was a

10  confirmed plan of reorganization which rendered any equity

11  interests in the Lehman Brothers' debtors worthless.

12             So whatever unclaimed funds there are at the state

13  comptroller's office are irrelevant.

14             Moreover, as you are sitting here today you do not

15  possess an interest, an economic interest in the Lehman

16  Brothers case, and therefore you have no standing.  You have

17  no standing.

18             So what Mr. Rossman is offering you --

19             MR. KUNTZ:  I understand, Your Honor.  May I be

20  heard?

21             THE COURT:  When I'm finished.

22             MR. KUNTZ:  Thank you, Your Honor.

23             THE COURT:  What Mr. Rossman is offering you is a

24  chance to discontinue your objection to the settlement.

25  He's not offering to negotiate with you nor is J.P. Morgan

Page 10

1    offering to negotiate with you.  It's a settlement that I've

2    approved, and the funds cannot be released until there's a

3    final order.

4          And you understand I think very well that the

5    filing of your objection and the appeal have confounded the

6    settlement.  Your word, not mine.

7          So therefore. Mr. Rossman. consistent with frankly

8    good practice and in the interest of fairness, is giving you

9    another opportunity to withdraw your objection, withdraw

10   your appeal as it has no merit, for among other reasons, you

11   have no standing in this proceeding.  So he's offering that

12   to you.

13         If that's accepted, as he said, I will agree that

14   this all will go away, even though frankly I would still

15   have the power to impose sanctions.  And if it were to go

16   away that means that there would be no need for further

17   proceedings before Judge Sullivan.

18         If you do not wish to withdraw your filings we're

19   going proceed with the sanctions hearing, and counsel has

20   indicated that the estate also wishes and intends to pursue

21   sanctions with Judge Sullivan over which I of course have

22   nothing to say, that's solely within his purview.

23         So now I'd like to know if you have an answer to

24   the question of are you willing to enter into this

25   stipulation?

Page 11

1              MR. KUNTZ:  No.

2              THE COURT:  Okay.  Mr. Rossman, you want to --

3              MR. KUNTZ:  May I be heard for a moment, Your

4        Honor?

5              THE COURT:  Sure, go ahead.

6              MR. KUNTZ:  Here's the problem that I see.

7        There's something on deposit in Albany.  Those documents

8        have been in -- docketed in this case from almost the

9        inception of the case.  Counsels' billing statements

10       indicates they reviewed the docket every single day back in

11       2008, 2009.  These documents that relate to the state

12       comptroller's office have been here almost a decade.

13             Now, I am not -- I always thought up until

14       recently that it was money, and I agree with Your Honor if

15       was money, there's nothing there.  But if it's not money, if

16       it's securities in Lehman Brothers, what I suggested to the

17       Court was not an objection and not a support, I simply said

18       that a successor examiner should be appointed to make this

19       squeaky clean.  And in response to that I got a certificate

20       of no objection under oath that I emailed to court and

21       that's when we went right off the rails.

22             And as far as I'm concerned until -- and as I

23       understand it that's a very serious situation, because as a

24       result of that affirmation under penalty of perjury that I

25       had emailed the Court, I basically felt if there's nothing

Page 12

1    going to happen in court why am I going to get on a bus at

2    midnight and ride all the way down here just to have, you

3    know, orders signed and go away.  And that's why we're here

4    today, is because somebody has -- one of those firms saw

5    something and they assumed by not paying careful attention

6    that I had emailed the Court, and I did not email the Court.

7    I would never email the Court.  It's not -- you know, I rely

8    upon the U.S. mail and I file my papers with the clerk.

9    Maybe traditionally --

10           THE COURT:  Mr. Kuntz, let me stop you, please.

11   You filed a piece of paper in connection with the approval

12   of the settlement with J.P. Morgan.

13           MR. KUNTZ:  I filed a suggestion that a successor

14   examiner be appointed.

15           THE COURT:  That's right, and that suggestion has

16   nothing to do with an objection on the merits to the

17   settlement.  A settlement is approved under Rule 9019 of the

18   thorough Rules of Bankruptcy Procedure and it requires a

19   determination that the settlement is in the best interest of

20   the estate under a standard that examines whether or not the

21   settlement is -- falls higher than the lower range -- the

22   bottom of the lower range of reasonableness.  The settlement

23   met those standards very easily, no one else indeed

24   objected.

25           Your document talking about a successor trustee

Page 13

1    was not on point -- successor examiner --

2             MR. KUNTZ:  Thank you, Your Honor.

3             THE COURT:  -- was not on point, had nothing to do

4    with the merits of the settlement.  I actually eluded -- we

5    spoke about it during the course of the hearing, if I'm

6    recalling it correctly.  The phone line was connected, I

7    asked if anyone was on the phone, if anyone else wished to

8    be heard, there was no response, I entered the order

9    approving the settlement.

10            So that piece of paper that you filed is not

11   inconsistent with the fact that the debtors filed a

12   certificate of no objection or anything else.

13            So we're going to go back to the point which is

14   that Mr. Rossman has offered you an opportunity to withdraw

15   your objection to the settlement and discontinue the appeal

16   and you've declined.

17            MR. KUNTZ:  Thank you, Your Honor.

18            THE COURT:  Okay.  Mr. Rossman?

19            MR. ROSSMAN:  Thank you, Your Honor.

20            Your Honor, I want to first bring to the Court's

21   attention that we filed an amended proposed order.

22            THE COURT: Okay.  I haven't had a chance to -- I

23   haven't seen that.

24            MR. ROSSMAN:  And I have a copy handy and I'd like

25   to hand the Court one.

Page 14

```
 1                THE COURT:  Okay.

 2                MR. ROSSMAN:  I'd like to hand Mr. Kuntz a copy.

 3                THE COURT:  Okay.

 4                MR. ROSSMAN:  And then I'd like to walk Your Honor

 5     through that --

 6                THE COURT:  Sure.

 7                MR. ROSSMAN:  -- and then the record of the

 8     proceeding.

 9                THE COURT:  Okay.  Thank you.  Thanks.  Okay, go

10     ahead.

11                MR. ROSSMAN:  So the -- what you have in front of

12     Your Honor is an order granting motion for sanctions against

13     William Kuntz III, it is a proposed order of course, subject

14     to the Court's review.

15                The order recites the background in the beginning,

16     and then I want to just take a moment to walk the Court

17     through the findings, which there are just four, and the

18     decretal paragraphs of which --

19                THE COURT:  Okay.

20                MR. ROSSMAN:  -- there are five.  Okay?

21                The order recites that the Court finds that Mr. --

22                THE COURT:  Mr. Kuntz, you might want to read

23     this.  You might want to be following along.

24                MR. KUNTZ:  Your Honor might care to examine the

25     documents from the state comptroller's office before you
```

Page 15

1    jump to a conclusion --

2              THE COURT:  Have a seat, Mr. Kuntz.

3              MR. KUNTZ:  -- that you've not.

4              THE COURT:  Have a seat.

5              MR. ROSSMAN:  And just --

6              MR. KUNTZ:  Thank you, Your Honor.

7              MR. ROSSMAN:  -- just so Your Honor understands

8    how I would propose to proceed, with Your Honor's

9    permission, I wanted to just identify and walk through the

10   order and then I have a presentation in terms of the --

11             THE COURT:  Okay.

12             MR. ROSSMAN:  -- evidence and the record.

13             So I'm not asking the Court to rule on --

14             THE COURT:  Sure.

15             MR. ROSSMAN:  -- the order at this point, I just

16   wanted to make sure the Court --

17             THE COURT:  Okay.

18             MR. ROSSMAN:  -- has that in front of it.

19             THE COURT:  All right.

20             MR. ROSSMAN:  So the order that we would propose

21   add the end of the hearing is that the Court find that

22   Mr. Kuntz lacks standing to participate in the Chapter 11

23   cases of Lehman Brothers, that's what we define as the

24   bankruptcy cases which deal with -- are the Lehman umbrella

25   Chapter 11 cases.  Lacks standing to object to the

Page 16

1    settlement motion, which refers to the 9019 motion approving

2    the settlement with J.P. Morgan, which Your Honor entered on

3    February 8th.  And to seek the relief that's sought by his

4    submissions.  That he lacks standing to seek the relief that

5    he does seek.

6              We ask further that the Court find that

7    Mr. Kuntz's submissions, which are defined as all the

8    submissions that he's made in the case, and there are

9    specifically attached as part of the binder submission that

10   we've made, Your Honor, that they are frivolous, that

11   they're not warranted by existing law, and they're based on

12   factual contentions that have no evidentiary.

13             That the Kuntz submissions have been filed for

14   improper purposes, including to harass, cause unnecessary

15   delay, and needlessly increase cost.

16             And fourth, that Mr. Kuntz has exhibited a

17   continued pattern of vexatious and frivolous conduct in the

18   bankruptcy cases.

19             Those are the fact findings we ask the Court --

20             THE COURT:  Okay.

21             MR. ROSSMAN:  -- to make.

22             THE COURT:  Just in the spirit of being able to

23   follow along the defined term Kuntz submissions tracks back

24   to the motion?

25             MR. ROSSMAN:  It does, Your Honor.

Page 17

1              THE COURT:  Okay.  Go ahead.

2              MR. ROSSMAN:  And on page 2 of the order we

3     propose in the court order that the motion is granted.

4              In paragraph 2 that the Court reserve decision on

5     whether Mr. Kuntz should be required to reimburse Lehman

6     Brothers for any and all fees and expenses incurred in

7     responding to the submissions.  So we're not asking for an

8     award of monetary sanctions today.

9              THE COURT:  Okay.

10             MR. ROSSMAN:  But the Court to reserve on that.

11             In paragraph 3 that with the exception of

12    Mr. Kuntz taking an appeal of this order itself that

13    Mr. Kuntz be enjoined from filing any complaint, motion,

14    objection, pleading, or notice of appeal in the bankruptcy

15    cases or any related adversary proceedings without first

16    having applied to the Court to obtain and without having

17    obtained express permission to file any such complaint,

18    motion, objection, pleading, or notice of appeal.

19             So that Your Honor understands, we think this very

20    closely tracks the case law on this, but what we are asking

21    for is a limited filing injunction that would prohibit

22    Mr. Kuntz from making any filing in the Lehman Brothers with

23    two exceptions.  One would be where he gets permission of

24    the Court to make a filing, and the other would be an appeal

25    of this very order.

1          Paragraph 4, consistent with that, states that

2    except with respect to an appeal of this order unless the

3    filing has been authorized by an order of the Court no

4    complaint, motion, objection, pleading, or notice of appeal

5    filed by Mr. Kuntz in the bankruptcy cases or any related

6    adversary proceeding shall have any force and effect.

7          And further consistent with that paragraph 5

8    provides that except with respect to an appeal of this order

9    the clerk of the court is hereby directed to take no action

10   with respect to any complaint, motion, objection, pleading,

11   or notice of appeal filed by Mr. Kuntz in the bankruptcy

12   cases or any related adversary proceedings unless authorized

13   to do so by an order of the Court.

14          So that is the relief that we're seeking in this

15   proceeding, Your Honor.

16          And if I may, we have a binder of materials that

17   we previously served, and to be fair, served just before

18   this hearing, so about 20 minutes before the hearing we

19   provided it to Mr. Kuntz, but it is a collection of what we

20   believe to be the full record of this case, which includes

21   all relevant filings that have been made as well as

22   correspondence that we've had with Mr. Kuntz, including his

23   to us and ours to him.

24          THE COURT:  Stopping short of the one that was

25   filed late this afternoon undoubtedly.

```
1              MR. ROSSMAN:  I believe we caught one of the two
2      that you mentioned.
3              THE COURT:  Okay.
4              MR. ROSSMAN:  Okay?
5              THE COURT:  Yeah.
6              MR. ROSSMAN:  And if I can have -- I have one for
7      Your Honor and --
8              THE COURT:  Okay.  Thank you very much.
9              MR. ROSSMAN:  Let me describe what's in the
10     binder, and we have filed this on the record, Your Honor --
11     I'm sorry -- we filed this on the docket.
12             THE COURT:  Okay.
13             MR. ROSSMAN:  The first is a very unexciting
14     declaration from me that introduces what's behind it.
15             And then behind that we have at tab --
16             THE COURT:  Mr. Kuntz -- excuse me, Mr. Rossman.
17     Can I ask you what you're doing, sir?
18             MR. KUNTZ:  I'm just looking for documents, Your
19     Honor.  I understand where counsel is going on this.
20             THE COURT:  Okay.
21             MR. KUNTZ:  And quite frankly until Your Honor --
22             THE COURT:  No, no, no.  You appear to be --
23             MR. KUNTZ:  May I finish, Your Honor?
24             THE COURT:  No, I'm talking now.
25             MR. KUNTZ:  All right.
```

Page 20

1              THE COURT:  You appear to be going through your

2     mail, and I expect persons who appear before me to show the

3     Court respect like the gentlemen who are sitting on the

4     other side of the room.

5              So if you are not working on your case I would

6     suggest that you stop what you're doing.

7              MR. KUNTZ:  If Your Honor please, on top of the

8     piles of mail is a letter from the gentlemen sitting over

9     there.  I am not looking through my -- I'm looking for

10    documents to appropriately respond.  And again, I can only

11    encourage Your Honor to look at facts and evidence that you

12    have not examined, you have jumped to a conclusion that I

13    have no standing.

14             Now, I accept the fact that whatever is in the

15    state comptroller's office --

16             THE COURT:  Mr. Kuntz --

17             MR. KUNTZ:  -- may be --

18             THE COURT:  -- have a seat, please.

19             MR. KUNTZ:  May I finish, Your Honor?

20             THE COURT:  I don't want to hear about the state

21    comptroller's office.  Mr. Rossman --

22             MR. KUNTZ:  Well if they give me standing and Your

23    Honor is wrong then you will be unhappy with me again.

24             THE COURT:  Mr. Kuntz, have a seat.  Thank you.

25             Go ahead, Mr. Rossman.

Page 21

1          MR. ROSSMAN:  Thank you, Your Honor.

2          So tab A is the exhibit lists that identifies all

3    the materials that we have filed on the docket and that

4    we've put in this binder, and there are three declarations

5    behind the exhibit lists.  One for Mr. Whitmer, one for

6    Mr. Odell, one for Mr. Pugh, each affirming the authenticity

7    of the documents.  We're sorry it had to be three lawyers,

8    but different lawyers received different pieces of

9    correspondence.

10          THE COURT:  Okay.

11          MR. ROSSMAN:  We wanted to make sure we had a

12    competent witness for each.

13          And then it continues -- the exhibit list

14    continues to describe all the correspondence that's attached

15    behind the tab that says category 2.  Communications with

16    Mr. Kuntz, category 3.  Other documents, for example, the

17    copy of the claims register is category 4.  And then

18    publicly filed documents such as motions and court pleadings

19    are behind category 5.

20          So we have attempted, as best we can, to provide

21    -- I think it's quite the feat -- to provide the Court with

22    a full record of all of the submissions and all of the

23    correspondence that are relevant to our motion for sanctions

24    here today.

25          THE COURT:  Okay.

Page 22

1            MR. ROSSMAN:  Now, if I may, Your Honor, I want to

2      take a couple minutes to make a few points.

3            So the first thing I'd like to do is to inform the

4      Court of the legal bases for the relief that we're seeking

5      and I want to be very precise about that.

6            THE COURT:  Okay.

7            MR. ROSSMAN:  Okay?  Mr. Kuntz is a pro se

8      litigant to my knowledge, he is not a lawyer admitted to

9      practice, so the rules are specifically tailored to --

10           THE COURT:  Sure.

11           MR. ROSSMAN:  -- you know, the rules that we're

12     invoking are specifically tailored to that.  Okay?  We do

13     not make our motion for sanctions pursuant Rule 11.  As Your

14     Honor may be away there is a notice period associated with

15     Rule 11, and the notice period in our view would have

16     enabled Mr. Kuntz to frustrate any effective relief on the

17     part of the proponents of the settlement.  But Rule 11 is

18     not the exclusive basis for sanctions or for the relief that

19     we're seeking here.

20           We also examined 28 U.S.C. 1927, which is the

21     statute that provides courts with authority over vexatious

22     litigants.

23           So Your Honor understands, there's actually split

24     of circuits on the authority to sanction someone under 1927

25     who is a pro se litigant as opposed to an admitted attorney.

Page 23

1   The Second Circuit is of the view that you cannot rely on

2   1927 as a basis to sanction a pro se litigant.  So we are

3   not relying on Section 1927.

4           We are relying on two things.  We are relying on

5   the inherent power of the court, and I will cite cases that

6   describe the Court's authority in this circumstance, and

7   we're relying on 11 U.S.C. 105, which is the -- essentially

8   the equivalent of the all Ritz Act (ph) as it applies to

9   bankruptcy cases and bankruptcy courts.

10          The United States Supreme --

11          THE COURT:  Well in fact taking you up on that

12   thread, yes, Rule 11 does have the so-called safe harbor

13   provision and the time periods involved don't make that a

14   good fit for the relief that you're seeking, but in spirit I

15   would say if not in letter it's been complied with because

16   you've offered Mr. Kuntz the opportunity to withdraw the

17   pleading with which -- to which you object and with which

18   you have a problem.  Be that as it may, it doesn't strictly

19   comply.

20          But since -- and I'm seeing this in the order that

21   you have handed up at the outset, you're actually not asking

22   today, it would appear, for the imposition of monetary

23   sanctions.

24          MR. ROSSMAN:  That's right, Your Honor.

25          THE COURT:  So that the only relief that you

Page 24

1    appear to be proceeding with is injunctive relief.

2              MR. ROSSMAN:  That's right.

3              THE COURT:  And I certainly have the ability and

4    the power to enter an injunction on a proper showing,

5    reserving to another day findings or further proceedings

6    with respect to fee -- and reimbursement of fees and

7    expenses.

8              I would also note that given pending sea of the

9    appeal before Judge Sullivan once that comes to a conclusion

10   that would, if you will, enable you to put a dollar amount

11   next to the amount of compensatory sanctions, and that it

12   would appear would be something that Judge Sullivan would

13   have jurisdiction to do.

14             I believe I would have jurisdiction to impose

15   monetary sanctions as well, but it doesn't appear we're

16   doing that today.

17             MR. ROSSMAN:  That's exactly correct, Your Honor.

18             THE COURT:  Okay.

19             MR. ROSSMAN:  And I agree with everything Your

20   Honor said.

21             So just so that you have the benefit of the

22   authorities available to you on the record the United States

23   Supreme Court in the Chambers v. Nasco case recognized that

24   a District Court, or in this case a bankruptcy court having

25   power, you know, equal in the circumstance, has authority to

Page 25

1    sanction parties appearing before it for acting in bad

2    faith, vexatiously, wantonly, or for oppressive reasons.

3            And we rely on no fewer than three Second Circuit

4    of Appeals cases.  The Safer (ph) case, the Sassower (ph)

5    case, and the Martin case, all of which have made it clear

6    that the court has the inherent authority and that

7    bankruptcy courts have the authority under section of the

8    Martin-Tragona case, and the bankruptcy courts have the

9    inherent authority plus the authority of Section 105 to

10   order sanctions where there are abuses of process or

11   vexatious conduct before the court.

12           And, you know, we cite particularly two examples.

13   There are more examples than this, Your Honor, but we cite

14   two cases where bankruptcy courts provided precisely the

15   relieve that we're seeking here.

16           So in the D -- I'm sorry, Your Honor -- in the

17   Deep v. Danaher case, is a Northern District of New York, a

18   filing injunction was issued in that case in reliance on

19   Section 105, and that's at 393 Bankruptcy Reporter 51.  And,

20   you know, the court citing 105 indicated that a bankruptcy

21   court may issue any order, process, or judgment that is

22   necessary or appropriate to carry out the provisions of this

23   title, including taking any action or making any

24   determination necessary or appropriate to enforce or

25   implement court orders or rules or to prevent an abuse of

Page 26

1    process.

2            We think that clearly applies here and that it's

3    in accordance with the Bankruptcy Code to the Court to issue

4    an injunction that enables the bankruptcy court's orders to

5    be meaningful rather than just -- and I'm quoting from the

6    Deep case -- "rather than continually thwarted by frivolous

7    filings aimed at preventing the implementation of the

8    bankruptcy court's orders and harassing litigants."

9            In the -- another case that we rely on, Your

10   Honor, is the Truong case here in the Southern District, and

11   there in that case there was an anti-filing injunction first

12   entered by Judge Peck and then a subsequent broader one that

13   was entered by Judge Glenn.  And in that case Judge Glenn

14   entered an order that prohibited nationwide any filings for

15   bankruptcy or suggestions of bankruptcy.  The issue there

16   was multiple fraudulent petitions for Chapter 13 relief.

17   Anywhere in the courts, state our federal, for a five-year

18   period.

19           What we are seeking here is far more carefully

20   tailored and limited relief with respect to Mr. Kuntz, which

21   is that just merely in the Lehman case that he be prohibited

22   from making filings, and as I indicated to the Court, we

23   have the two safety valves that are there, which one is he

24   can appeal that order if he thinks that order is

25   improvidently issued, otherwise he can come and seek leave

Page 27

1   of the Court.  So if he has a bona fide basis for making a

2   filing that no one can foresee at the moment, then he'll

3   have an opportunity to make his case, but he cannot merely

4   by putting something new on the docket vex and harass and

5   injure the litigants who are otherwise seeking to get the

6   benefit of the Court's orders.

7           Your Honor, the last thing that I want to just

8   take a moment --

9           THE COURT:  Let me ask you one clarifying

10  question.

11          MR. ROSSMAN:  Yes.

12          THE COURT:  Again, looking at the order that you

13  tendered, the order has a finding that Mr. Kuntz lacks

14  standing, but if I'm interpreting what you're saying

15  correctly, that even if he did have standing the objection

16  -- the so-called objection that was filed with respect to

17  the J.P. Morgan settlement in fact was not an objection to

18  the settlement inasmuch as it fairly read was on another

19  topic, which is the appointment of a successor examiner.

20          MR. ROSSMAN:  Correct.

21          THE COURT:  So even without regard to the issue of

22  standing I think you're asking me for this relief because

23  the appeal from the order approving the settlement is

24  frivolous.

25          MR. ROSSMAN:  Yes.  That's absolutely correct,

Page 28

1    Your Honor.

2              THE COURT:  And as another alternative, based on

3    the voluminous binder that you've handed up to me, apart and

4    independently of all that, there is the history of filings

5    in this case that forms a predicate separate and apart from

6    the standing issue for the relief that you're requesting.

7              MR. ROSSMAN:  That's --

8              THE COURT:  Do you agree with that?

9              MR. ROSSMAN:  I do, Your Honor.  I was going to

10   give you some detail about that.

11             THE COURT:  Okay.  Go ahead.

12             MR. ROSSMAN:  So we have cataloged our research of

13   the docket shows that Mr. Kuntz has made 100 -- I'm sorry --

14   there are 125 filings on the docket in the Lehman Brothers

15   cases that relate to Mr. Kuntz.  So I believe that is

16   filings that he made or responses that were made to his

17   filings.  Okay?  By our count he's filed 8 notices of

18   appeal, 21 objections, 9 other motions.

19             Now, we have cited to two written decisions of

20   Judge Peck previously.  I understand that Mr. Kuntz has

21   filed I think it's nine proofs of claim or amended proofs of

22   claim in total, and they're all identified in Judge Peck's

23   orders that we cite in our moving papers, Your Honor.  And

24   not only did Judge Peck write an opinion determining that

25   his claims are meritless and disallowing his claims in full,

1    but that his positions were vexatious, that the decision

2    disallowing his claims in full.  First there was a notice of

3    appeal and then the notice of appeal was withdrawn, so that

4    decision became final.  And some six months or more after

5    the fact Mr. Kuntz moved for reconsideration of the subject

6    of his second opinion by Judge Peck, and Judge Peck again --

7    I think this is in 2010 -- found that Mr. Kuntz was

8    vexatious at that point in time with respect to the proofs

9    of claim and the litigation surrounding those proofs of

10   claim that he had made where he is raising what we

11   understand to be substantially the same issues that he

12   claims are the one that is are giving him standing.

13          So in particular one of the arguments that was

14   raised before Judge Peck in his prior opinions was the

15   argument that had -- that Mr. Kuntz had some interest in the

16   Grand Union bankruptcy and that the Grand Union bankruptcy

17   somehow has some connection to Lehman Brothers, and Judge

18   Peck specifically found that he could discern no connection

19   between Grand Union and Lehman Brothers based on Mr. Kuntz's

20   submissions to the court.

21          And we also -- we don't know quite what he's

22   referring to in terms of the office of unclaimed funds with

23   the New York state controller's office -- but we believe

24   that the root of that, based on what Mr. Kuntz has

25   suggested, is also tied for Grand Union.  So it's all of the

1     same piece.

2              If I'm wrong about that I don't think that changes

3     the equation one bit, Your Honor, because the documents that

4     we have seen, there's apparently a letter that he's

5     exchanged with the unclaimed funds office that dates back to

6     October of 2008.

7              So as Your Honor has already observed, anything

8     that's there would already be the subject of bar orders in a

9     confirmed plan and could do him no good, but certainly he's

10    had ample time since 2008 to try to get whatever there is in

11    the unclaims office to the surface if he believes that gives

12    him a connection to this case, and that was something that

13    was available to him at the time he filed his already

14    expunged proofs of claim.

15             So, you know, we're in a posture, Your Honor,

16    where this is ground that's already been well trodden upon,

17    it's been the subject of substantial judicial activity

18    already, and Mr. Kuntz having, you know, had it already

19    determined against him that he has no claim, no standing, no

20    basis to be involved in the case at all, you know, to stand

21    on top of that and to ask for the right to be heard with

22    respect to the settlement, you know, we think is the

23    definition of frivolous and vexatious conduct.

24             And, Your Honor, the -- you know, we're quite

25    sympathetic to creditors as you know in our capacity, you

Page 31

```
 1    know, representing the official creditors' committee, and

 2    we're certainly sympathetic to pro se litigants, and we

 3    would lend a sympathetic ear if we thought that there was

 4    anything legitimate to what the concerns are that are being

 5    expressed here.

 6              What particularly is disturbing to us, Your Honor,

 7    is that in Mr. Kuntz's submissions and his correspondence we

 8    do not see a confused litigant.  We do not see someone who

 9    is of the view that he has a legitimate claim.  He admits

10    very clearly that he has no standing.  He admits that his

11    claims have been expunged.  He admits in his own

12    characterization, he says he has not filed an objection to

13    the settlement.  He is instead seeking a successor examiner

14    and he's putting forth his theory about the claims in the

15    unclaimed funds -- I'm sorry -- whatever exist ins the

16    unclaimed funds office.

17              But the tenor of his statements have made it quite

18    clear to us, Your Honor, that you know, he's not litigating

19    in good faith and that he's viewing this as a game, and that

20    is not something that we think is remotely appropriate.

21              So, you know, we've -- I can take Your Honor

22    through it, but you know, among the things that Mr. Kuntz

23    has said in his various filings is it would be far too easy

24    to just sit back and file an appeal after Monday, assuming

25    the order is signed, and confound the so-called settlement.
```

Page 32

```
 1    And you know, he's repeatedly made it difficult to have him

 2    served.  So he says to us, as I understand your practice

 3    unless I provide an email address on a pleading electronic

 4    service is a courtesy but it's sufficient to find me.  And

 5    then he continues, I was planning to leave for the Bahamas

 6    for about a month, and he actually faxes us what appears to

 7    be an itinerary from a travel website of a potential flight

 8    to the Bahamas.  He sends articles about people being bitten

 9    by a shark, about a ship wreck, you know, claim --

10              MR. KUNTZ:  Your Honor --

11              MR. ROSSMAN:  -- and it goes on and on and on, and

12    he criticizes the lawyers, he takes, you know, very personal

13    attacks.

14              THE COURT:  What is it, Mr. Kuntz?

15              MR. KUNTZ:  Your Honor hasn't addressed anything

16    about the sum and substance of email in the order.  The fact

17    that I mind send --

18              THE COURT:  Mr. Kuntz, I run my courtroom.  When

19    Mr. Rossman is done you'll have an opportunity to speak.

20              MR. KUNTZ:  Thank you, Your Honor.

21              THE COURT:  Go ahead, Mr. Rossman.

22              MR. ROSSMAN:  Thank you, Your Honor.

23              You know, he blames the lawyers.  Said, you're

24    creating this mud pile so why are you crying about it?  If

25    you really wish to look like total fools just keep it up, I
```

Page 33

```
 1    should start a list.  You know, he refers -- you know,

 2    referring again to the Grand Union proceedings.  He refers

 3    -- he's sending us an article about lawyer ethics in

 4    bankruptcy.  He mentions a long-standing animus between him

 5    and Weil, Gotshal referencing Weil's role in the Grand Union

 6    case, which I'm not sure I understand the connection.  He

 7    threatens that we're going to become a laughing stock of the

 8    entire legal community.

 9            He suggests that there should be a new team that

10    takes over.  I think at one point he referred to the young

11    tigers and old farts, pardon the expression, and I think I

12    was probably in the latter category in his description.

13            He mentions that, you know, there's no actual

14    overnight service from the west coast to Nantucket when he's

15    insisting that we serve him in Nantucket and suggesting that

16    our service for lawyers in my firm who are working in

17    California coming from California to Nantucket would not be

18    proper service or would not get there on time.

19            You know, one of the recent ones, court again?  I

20    guess I will miss my chainsaw sharpening class up here back

21    in the ice and snow of northern New York.  If Your Honor

22    wishes to hold me in contempt, you know, go ahead, is what

23    he said at the hearing when we were last in court.

24            So, you know, we are distressed that he's not

25    making a what we view to be a legitimate effort to advance
```

Page 34

1    actual interests in the settlement, but he seems to be

2    playing a bit of a game with the Court.

3              And I'll say, Your Honor, then I'll sit down,

4    Second Circuit in the Safer case has identified five factors

5    that the Court can consider in issuing sanctions or in

6    entering an order like the one that we ask for today.

7              One factor is the litigant's history of litigation

8    and in particular whether it entailed vexatious, harassing

9    or duplicative lawsuits.  And I think Mr. Kuntz has a well

10   documented history of vexatious litigation going back to an

11   opinion at least from 1992 from then District Court Judge

12   Sonia Sotomayor who found his conduct to be vexatious and

13   commented on his breadth of litigation experience.  But we

14   have the filing -- we need only look at filings in the

15   Lehman Brothers case to reach that conclusion.

16             The litigant's -- the second factor is the

17   litigant's motive in pursuing the litigation.  Does the

18   litigant have an objective, good faith expectation of

19   prevailing?  We submit that he does not.  He's admitted he

20   doesn't have an objection to the merits of the settlement,

21   and you know, clearly he's -- you know, I don't pretend to

22   know what his motives are, but I don't see a good faith

23   motive or a good faith expectation of prevailing.

24             You know, one of the factors is whether the

25   litigant is represented by counsel.  Clearly he's not, he's

Page 35

1    pro se, but I think his experience in the courts is well

2    documented and I don't think that's in his favor.

3             Fourth is whether the litigant has caused needless

4    expense of the parties who are opposed and unnecessary

5    burden on the courts and their personnel.  I think it's

6    palpable what the burden has been, you know, since 2010

7    alone in terms of what he's filed in the Lehman Brothers

8    case and then this motion -- recent motion practice related

9    to the settlement alone, and you know, frankly we think that

10   this is particularly strong circumstances for the issuance

11   of the sanctions given the amount that's at stake here.

12   There are real people that stand to gain the benefit of

13   $1.5 billion once those funds are released.  We have --

14            THE COURT:  Well that's the most -- that's one of

15   the most important points to me, because it's now been over

16   two years that I've been presiding over these cases after

17   Judge Peck retired and one of the many things that I've done

18   is deal with the claims not only of large financial

19   institutions but also of individuals who worked at Lehman

20   Brothers or otherwise had small deposits and other claims

21   against Lehman Brothers.  And I can tell you that many of

22   them in fact proceeded pro se and many of them dialed in.

23   Sometimes they appeared in the courtroom, sometimes they

24   spoke on their own behalf.  And unfortunately many of them

25   had substantial claims or claims that could not be allowed

Page 36

1    or claims that were not ultimately entitled to a

2    distribution because the claims were in the form of equity

3    or options or the like.  And on numerous occasions pro se

4    litigants have thanked me for the time that the Court took

5    to explain the proceedings.

6             And in one case, I actually have it in a special

7    place in my office, I received a letter from a man who

8    appeared telephonically and who had lost his wife to cancer,

9    made his plea for a distribution, listened to my explanation

10   of why I couldn't treat him any differently from others

11   similarly situated, and he sent me a letter thanking me for

12   my time and feeling that even though he didn't receive the

13   monetary distribution he received respect and due process.

14            So -- and of course outside the Lehman Brothers

15   case I have very substantial contact with pro se litigants

16   and have frequently been instrumental in suggesting counsel

17   for them resulting in frankly wonderful results.  Financial

18   settlements, women with disabled children getting to stay in

19   their rent-stabilized apartments instead of evicted and the

20   like.

21            So I am not without sympathy to pro se litigants,

22   I have a fair amount of experience with them.  I think that

23   I agree with your observation that Mr. Kuntz does not neatly

24   fall into that category by virtue of his history with this

25   case, his attitude towards the Court, as well as his utter

1  lack of a meritorious claim or any claim that relates to the

2  Lehman cases.

3          Anything else, Mr. Rossman?

4          MR. ROSSMAN:  No.  The last thing that I'll

5  mention, Your Honor, is, you know, the final factor is

6  whether sanctions would be adequate to protect the courts

7  and other parties.  I think we've covered that largely.

8          But I will say, Your Honor, that we made a real

9  effort to try to tailor the remedy to the harm here, and

10  while we think sanctions would be appropriate we don't know

11  that sanctions would necessarily change the behavior of

12  Mr. Kuntz.  We do think what's necessary and what is

13  appropriate is the filing injunction to prevent Mr. Kuntz

14  from doing in other circumstances what he's done here.

15          And I'll say, Your Honor, I -- you know, in my

16  experience before the Court in this case and in other cases

17  you've extended every opportunity for due process to every

18  litigant that's been here before.  I think this particular

19  litigant has exhausted any rational amount of patience that

20  a court would extent to this litigant, but even so the order

21  protects his rights fully.  And if he does have a valid

22  basis for proceeding against Lehman Brothers in the future,

23  although one does not exist today, that order would not take

24  away his rights, that order would channel his rights while

25  protecting other litigants.

1          Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you, Mr. Rossman.

3          Mr. Kuntz?

4          MR. KUNTZ:  Thank you, Your Honor.

5          THE COURT:  Uh-huh.

6          MR. KUNTZ:  I assume this is the microphone.

7          THE COURT:  It is.

8          MR. KUNTZ:  There was mention of nine claims

9    filed.  There was three claims that were amended twice due

10   to an error in calculation of the interest.

11          Is Your Honor is aware that this has become sort

12   of a Chinese fire drill?  What was a simple what I thought a

13   constructive suggestion because I have a long-standing

14   animus with the way the Lehman case has been administered, I

15   was in essence thrown out by Judge Peck's decision.

16          My problem is that there's a letter from Judge

17   Martini, U.S. District Court judge, which I believe counsel

18   is aware of, that addresses the role of Weil, Gotshal both

19   as the attorneys for financing certain security agreements

20   in Grand Union and as co-counsel for Grand Union in New

21   Jersey before Judge Winfield.

22          Now that's Judge Winfield's decision.  I was here

23   before Judge Winfield, I've been acquainted with her before

24   she took the bench.  And for Judge Peck to allow Weil,

25   Gotshal to prosecute the claims objections without anybody

Page 39

```
 1   saying well what about this letter from Judge Martini
 2   describing them as co-counsel to Grand Union when this
 3   problem that led me to come to Lehman Brothers, which is the
 4   pursuit of a $3 million escrow account how -- Judge Peck was
 5   always fair and understanding, firm.  I made my objections.
 6   For instance I said, why should the estate of Lehman
 7   Brothers be buying an apartment building in Marche, France,
 8   which has the second highest Muslim population of any city
 9   in France and then give some sort of mutual fund in India
10   which has the highest economy in the world rate?  Why would
11   they buy a property that's at risk both politically and
12   physically and then take something that's attractive in
13   India and throw it out?  Well those comments went here, they
14   went wherever.
15           But they rushed off to Judge Sullivan, they've
16   never paid the filling fee in this court -- the appeal fee.
17   I went to pay it this morning and I was declined because I
18   only had $50 bill.
19           So my solution is they're avenue to Judge Sullivan
20   is not to hijack my appeal, they're avenue was to file a
21   cross-appeal.  You know, they're oh, we have this huge sum
22   of money that's at risk in (indiscernible).  They couldn't
23   afford a $296 filing fee in this court.  And as far as I
24   understand things, until that filing fee is paid they really
25   shouldn't be over in District Court.  They are in District
```

Page 40

1    Court as you've seen, I've responded to the District Court's

2    papers, I'm here once we ironed out the papers things.  I've

3    put everything else in my life pretty much aside.  I planned

4    to go to the Bahamas three or four times, that's out the

5    window.  I have papers that are due in Supreme Court in

6    Essex County returnable Monday, I haven't even been able to

7    converse with the lawyers to ask for an extension of time.

8            You know, I mean so I'm basically playing this

9    very seriously as best I know how and it's not -- my

10   suggestion was constructive because in the big world this

11   settlement agreement between the bank and Lehman who -- it

12   was the bank's action that precipitated the, as I understand

13   it, the collapse of Lehman.  If they'd been allowed to last

14   three more days the federal reserve bank might have backed

15   up like they did with AIG and bail them out.  Well that

16   happened.

17           So now the single most event that brought on the

18   economic collapse that can be identified was the

19   relationship between the bank and Lehman and out of what I

20   consider to be having been humanly involved in this case

21   almost as Judge Peck said every omnibus hearing I was there,

22   is that this needs to be squeaky clean.

23           And if Your Honor says I don't have the authority

24   to do it, it's a bad idea, and I never intended to appeal.

25   I simply asked for an extension of time, they filed papers,

Page 41

1    and in those papers they said I was sanctioned by Judge

2    McKelvie in Delaware in Grand Union.  That never happened.

3    Now, Judge McKelvie wanted to sanction me, very much wanted

4    to sanction me, but when the professionals left with their

5    $750,000 in fees that stopped.  They have not produced a

6    copy of that docket.  And Judge McKelvie, unfortunately,

7    gave more concern over the $750,000 in professional fees

8    than the $700 million that the investors lost in Grand

9    Union.

10             Now, I'm like only one of three survivors of who

11    held those notes, 99.7 percent of those noteholders have

12    been wiped out.  And if 100 percent of the noteholders get

13    wiped out it's a prima facie case (indiscernible).

14             So my pursuit of the escrow account that Lehman

15    brought across the river from New Jersey here was basically

16    under a theory of constructive trust, nobody would give me

17    any documents, and as Your Honor spoke the other day about

18    people issuing their own subpoenas, I understand there's a

19    very fine line about what gets me in trouble and what not

20    gets me in trouble.  I was cautioned by the Tenth Circuit

21    court of Appeals in  (indiscernible).  I'm not issuing

22    subpoenas.

23             And if Your Honor has read Judge Peck's decision

24    there were two key witnesses.  Both very distinguished.  One

25    is extremely wealthy.  I was going to invite them to come

Page 42

1    and testify.  I'm not, you know, just trying to serve

2    subpoenas and stuff, there are limits.

3            Now, if Your Honor has -- I don't know if counsel

4    has reviewed this letter from Judge Martini, but to pursue

5    and rely upon Judge Peck's decision based on what really

6    happened with Weil, Gotshal is questionable.  As I stated to

7    them, I said I think standing is a loser whether I have it.

8            Whether I have -- if there is something in Albany,

9    whether it's class X Chinese yen, triple X, I don't know

10   preferred, whatever, and I get no financial distribution

11   under the plan I still believe that allows me to make a

12   constructive comment or I shouldn't be here at all.  It

13   should be the state comptroller's office representing all

14   the people who they're holding -- apparently they're holding

15   quite a bit of Lehman stuff, and as Your Honor may have seen

16   in the other thing they're holding 50 or 60 or 70 accounts

17   of monies that Lehman instead of being here saying geeze

18   isn't that guy awful because we created this mess, we --

19   they should be up there saying well what happened to -- I

20   mean prior to Your Honor being -- assuming this case Judge

21   Peck supervised the recovery of almost 12- to $15 million

22   from the state comptroller's office.  There is more money

23   there.  To my knowledge the state comptroller's office filed

24   huge claims, got a settlement, they've never been heard from

25   again.  They originally wanted a trustee appointed in this

1   case.  That was I guess declined.  And as I stated before, I

2   always thought this was money.  So in which case I would

3   agree with you I should be sanctioned, have no standing, and

4   I never would have said anything.

5          But recently the state comptroller's office sent

6   me some letters saying you want your Lehman stuff, fine,

7   here sign a release.  Well, if you have to sign a release

8   that doesn't mean you're sending -- they're sending you a

9   check.  They have something there that is a little bit more

10  (indiscernible) like that, and I requested some information,

11  I have no response from them.  I went on their internet

12  page, my claim has been purged.

13         So I pretty much said well, here's any

14  constructive comment I think for the world, not this Court,

15  for the world to see the court seeking -- and it may be a

16  small delay, I can't imagine it being more than a month or

17  two, most of the work has already been done, you know.  And

18  as I said, I was prepared to offer a stipulation.  Take the

19  money, put it in the court's registry account then Your

20  Honor would control it.  Then they can have maybe a 10 or 15

21  minute hearing.  I don't know if the Court even has the

22  power to appoint successor examiner.

23         But in the big world that I see, especially with

24  the tumultuous political climate outside it behooves I

25  believe the bank and everybody else to say, you know, we not

1  only did the normal thing and offered a settlement, we

2  really did the -- we went the extra mile and brought in, and

3  I suggested former Governor Pataki, you know?  I don't know.

4  I don't know if this can be done, but I just know that if

5  this is just simply shoved through as a simple approved

6  settlement --

7            THE COURT:  Mr. Kuntz --

8            MR. KUNTZ:  Yeah.

9            THE COURT:  -- I have to stop you there.

10           Nothing was shoved through.  This was a settlement

11  that was negotiated over a very long period of time.  There

12  was significant contention in the case that I witnessed and

13  was party to.

14           A settlement has to be approved under Rule 9019.

15  There are standards.  This is case law that's set down by

16  the Second Circuit that I had to follow.  The debtors were

17  required to make a showing as to why the settlement passed

18  those tests.  The entire creditor body of Lehman had notice,

19  the world, as you say, had notice, because the financial

20  press continues to report on the Lehman case.

21           MR. KUNTZ:  That's correct, Your Honor.

22           THE COURT:  No one objected.  Parties who have

23  stakes in this case that are worth tens of millions of

24  dollars did not object, did not question the business

25  judgment of Lehman in settling the case, nor did I.

Page 45

1           I entered an order, I didn't shove anything

2      through, I had a hearing and I entered an order.

3           There's no role for a successor examiner, there's

4      no jurisdiction to appoint a successor examiner, there will

5      be no successor examiner.

6           This is an estate that is being liquidated in an

7      orderly fashion, it is achieving substantial good results

8      that's resulting in money into the hands of creditors that

9      frankly far exceeds anyone's expectations back in the dark

10     days of 2008.

11          There is no place here now for speculating as to

12     what the federal government might or might not have done.  I

13     didn't control it then and I have no control over it now.

14     The only thing I do have control over is to try to move the

15     cases along to get the trust in a position to make

16     distributions to creditors, and you are standing in the way

17     of that.

18          The Lehman docket alone would constitute a full-

19     time job for me.  Alone.  In addition to the Lehman docket I

20     have billions of dollars of other cases.  In addition to

21     those cases I have hundreds of cases involving individuals

22     who are threatened with losing their homes and have had all

23     other kinds of terrible things happen to them in their

24     lives.

25          One of the reasons that courts cannot countenance

Page 46

1   vexatious and frivolous litigation is because it takes our

2   time and distracts us from the important work of

3   administering justice.

4           So this isn't a game, I don't know you, you don't

5   know me, it's not about personal animus, it's not about

6   personnel animus by any of the gentlemen sitting here or at

7   Weil, Gotshal for that matter.  They're doing their job,

8   their attention of the professionals in these cases was

9   pursuant to court order with the oversight of the United

10  States Trustee, which is a department -- a part of the

11  Department of Justice.  It's all done in an open forum, it's

12  all done in a public way, and we have to keep that process

13  moving forward.

14          And you'll notice that Mr. Rossman gave me a very

15  surgically crafted narrow order that he's going to ask me to

16  sign, and I too was very respectful of the jurisdiction of

17  the District Court, because that's my job to apply the law,

18  play by the rules, and treat everyone fairly.

19          So if you have anything to say in opposition to

20  the relief that Lehman has requested I'd like to hear it,

21  otherwise I'm going to proceed to make a determination on

22  the motion.

23          MR. KUNTZ:  Well, I have several things, Your

24  Honor.  They mentioned a number of docket items I had.  One

25  hundred, 125.

1          THE COURT:  Yes.

2          MR. KUNTZ:  In this case alone there's over 1,000

3    pages -- 25,000 docket entries on just people treating

4    claims.  Now, I'm sorry, I've set in Your Honor's court

5    several days, I've heard some of the cases of lesser

6    financial significance, I've set in the other, I cannot

7    bring myself to be sympathetic to the financial needs of

8    Deutsche Bank for half a billion dollar claim when I'm

9    personally aware as reflected in the docket that 53,000

10   Chinese nationals in Hong Kong were stiffed, that the Court

11   gave preferential treatment to lawyers from Rome who sent

12   claims registered mail in the (indiscernible) post office

13   which took a month to get here, and Chinese nationals who

14   used a (indiscernible) to -- in the Hong Kong post office.

15   Now the Europeans were claim (indiscernible).  The Chinese,

16   we don't even want to understand what the --

17          THE COURT:  Are you suggesting that I exhibited

18   biased for Chinese --

19          MR. KUNTZ:  Not Your Honor --

20          THE COURT:  -- nationals?

21          MR. KUNTZ:  -- I said before.  Before Your Honor

22   came to this case.  I'm just talking about the claims

23   procedure.  And then of course -- any way --

24          THE COURT:  Mr. Kuntz, what does this have to do

25   with the matter before the Court now?

Page 48

1           MR. KUNTZ:  My view of how this case has been

2     administered.  And any way, I have two more things to say.

3           All this email stuff.  I disapprove of the use of

4     email in court papers.  They're not signed, and as far as

5     I'm concerned anything that's sent in email is in the nature

6     of a settlement that most of the ones that they are talking

7     about like the shark and the boat was sent to the newest guy

8     on their team in Los Angeles.

9           My comment about overnight mail I learned that in

10    General Motors where the documents were prepared here in New

11    York and printed in Seattle so they could get them three

12    hours time advantage and overnight.

13          And my last question to counsel, is there anybody

14    at this table who has read Judge Martini's letter?

15          MR. ROSSMAN:  I've read it, sir.

16          MR. KUNTZ:  Thank you.  That's all I need to say,

17    Your Honor.

18          THE COURT:  Thank you, Mr. Kuntz.

19          All right.  Based on the pleadings that are before

20    me in connection with the sanctions motion and based on the

21    entirety of the record, including the submission, Mr.

22    Rossman of your declaration and the attached exhibits, and

23    also incorporating into the record Sanction's Exhibit 1,

24    which was the form of stipulation, which you offered to

25    Mr. Kuntz for his signature in which he declined, I'm going

Page 49

1      to grant the motion for sanctions against Mr. Kuntz and will

2      entered the order that you tendered this afternoon.

3              Is there anything else?

4              MR. ROSSMAN:  No.  Thank you, Your Honor.

5              THE COURT:  All right.  Thank you.

6              MR. KUNTZ:  Thank you, Your Honor.

7              THE COURT:  Thank you, Mr. Kuntz.  Thank you

8      Kendra.

9          (Proceedings concluded at 4:03 PM)

10                          * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 50

1                           I N D E X

2

3                           RULINGS

4                                                   PAGE

5      Doc #52107 Motion for Sanctions Against William

6      Kuntz III                                     48

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T I O N

2

3      I, Dawn South, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Dawn South

         Digitally signed by Dawn South
         DN: cn=Dawn South, o, ou,
         email=digital1@veritext.com,
         c=US
6      _____
         Date: 2016.03.07 16:40:09 -05'00'

7      Dawn South

8      AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12     Date:   March 7, 2016

13

14

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY 11501