UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
: 
In re : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : Case No.: 08-13555 (SCC)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------------x

### DECLARATION OF KAREN B. GARZA IN SUPPORT OF (I) THE OBJECTION BY LEHMAN BROTHERS HOLDINGS INC. TO MOTION OF TRINITY INVESTMENTS LIMITED TO COMPEL OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS, AND (II) CROSS-MOTION TO ENFORCE THE LBHI PLAN AND OTHER ANCILLARY RELIEF

I, KAREN B. GARZA, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Director at Lehman Brothers Holdings Inc. ("**LBHI**"), and make this declaration ("**Declaration**") in support of the *Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims and Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief* ("**Objection/Cross-Motion**"). I am over the age of 21 and fully competent to testify to the matters set forth in this Declaration. I am fully familiar with the facts stated herein based upon my first-hand knowledge and my review of the records maintained by LBHI, as Plan Administrator under the LBHI Plan.[1]

**A.  LBHI, the LBHI Plan and the Treatment of Allowed Guarantee Claims**

2. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection/Cross-Motion.

Bankruptcy Code.  On December 6, 2011, the Court entered an Order confirming the LBHI Plan. *See* Dkt. No. 23023.[2]

3.      Pursuant to Section 8.3 of the LBHI Plan, LBHI made its initial distribution to holders of allowed general unsecured claims in April 2012, and has made subsequent distributions every six months thereafter, at or around March 30 and September 30 of each year. The LBHI Plan distributions are in U.S. dollars.

4.      Section 8.13(a) of the LBHI Plan provides that Allowed Guarantee Claims are deemed satisfied in full if the holder of such Allowed Guarantee Claims receives distributions from LBHI and distributions and/or other consideration (including taxes withheld) on account of the primary claims that equal the allowed amount of the Guarantee Claims.  In addition,

> [t]o the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof.

*Id.* Section 8.13(b) of the LBHI Plan makes clear that the holder of an Allowed Guarantee Claim cannot receive, from all sources, more than the allowed amount of the Guarantee Claim.

5.      Section 8.13(d) of the LBHI Plan provides as follows:

> For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date.

The applicable exchange rate on the Confirmation Date was 1.3402.  Since the Confirmation Date, the U.S. dollar has strengthened in comparison to the Euro.

---

[2]    A true and correct copy of the LBHI Plan is annexed hereto as **Exhibit "A."**

6.    If LBHI recovers any portion of distributions made on account of Allowed Guarantee Claims (either by way of subrogation, disgorgement or otherwise), the amount recovered is treated as Available Cash of LBHI, and distributed to creditors. *See* LBHI Plan, § 8.13(f).

B.    **LBB, Its German Insolvency Proceeding and the Harmonizing Resolution**

7.    LBB is an affiliate of LBHI. On November 12, 2008, the German banking regulator filed insolvency proceedings against LBB, and on November 13, 2008, the local court of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as the LBB Administrator to administer the LBB estate. As advised by the LBB Administrator, he commenced making distributions to holders of allowed claims in October 2010; pursuant to German law, distributions from LBB to its creditors are required to be made in Euros.

8.    LBHI is the largest creditor in the LBB insolvency proceeding. On November 19, 2014, LBHI and LBB entered into the LBHI/LBB Agreement that provided, among other things, for (i) Creditor Assembly Resolutions that resolved conflicting insolvency law issues, and (ii) the main content of Bilateral Agreements to be concluded between LBHI and LBB/LBHI Creditors (including Trinity) to resolve legal issues. The agreed-upon issues set forth in the Creditor Assembly Resolutions and Bilateral Agreements are collectively referred to as the "Harmonizing Resolution."

9.    The LBHI/LBB Agreement discusses, *inter alia*, the terms of distributions by LBHI and LBB on allowed claims, stating that LBB distributions will occur prior to the LBHI Plan distributions. Distributions made by LBB are to be made on a semiannual basis on or about February 28 and August 30 of each year. Under the LBHI Plan, distributions are made on a fixed schedule approximately one month later.

DMSLIBRARY01\28817576.v1

10. A stated goal of the Harmonizing Resolution was to ensure that no group of creditors or individual creditor is able to obtain an advantage (neither a procedural nor a tactical one).

11. The economic objective of the Harmonizing Resolution was that all creditors recover 100% of their claims. Direct claims against LBB are denominated in Euros; the recovery on such claims is relative to the Euro denominated amounts allowed by LBB.

C. **Trinity, Its Claims and Its Agreement with LBHI**

12. The Trinity Direct Claims are direct claims held by Trinity against LBB based on contractual obligations of LBB. Trinity also holds the Trinity Guarantee Claims against LBHI, which are based on guarantees of the Trinity Direct Claims.

13. Between October 2010 and July 2015, distributions on direct claims against LBB were made by the LBB Administrator. I have been advised that, as part of each distribution, the LBB Administrator, pursuant to German law, and after consultation with his tax advisers, withheld from the interest component of such claims a 25% withholding tax and an additional 5.5% surcharge in connection with the withholding tax. Through discussions with the LBB Administrator, it is my understanding that Trinity never objected to this procedure.

14. Upon information and belief, Trinity requested a tax refund from the German taxing authority, and LBB provided Trinity with the withholding information and forms requested by Trinity regarding previous distributions so that it could submit the refund request.

15. During negotiations between LBHI and Trinity in 2014 in connection with entering into a Bilateral Agreement, the parties discussed the resolution of various disputed claims against LBB. In order to reach a resolution, LBHI agreed to allow certain direct claims in

4

LBHI's bankruptcy case in lieu of LBB allowing certain corresponding denied claims in LBB's insolvency proceeding.

16.     On November 24, 2014, LBHI and Trinity entered into the Trinity Bilateral Agreement,[3] which, among other things, provided as follows:

- Trinity agreed to the Harmonizing Resolution and to vote in favor of the Creditor Assembly Resolutions;

- Once the Creditor Assembly Resolutions were approved by the requisite majority of LBB's creditors, the Trinity Guarantee Claims would be allowed in LBHI's bankruptcy case "and shall be entitled to receive distributions under the plan (in addition to distributions from LBB in respect of the [Trinity Direct] Claims);

- Trinity agreed that it would be liable to LBHI "for the disgorgement of any distributions or other consideration received by [Trinity] on account of any [Trinity Guaranteed Claim] . . . to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to [Trinity] or any previous holder on account of any portion of the related [Trinity Direct] Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such [Trinity] Guarantee Claim." (¶ 9);

- Trinity agreed to accept an amount ("**Quota Cap**") equal to the USD amount of each allowed Trinity Guarantee Claim (provided that any EUR distributions to it would be converted to USD applying an exchange rate of 1.3402 (¶ 10(a)); and

- Once Trinity receives payment of the Quota Caps in connection with the Trinity Direct Claims, all of its rights in the Trinity Direct Claims were deemed assigned to LBHI, and no further distributions would be made on the Trinity Guarantee Claims. (¶ 10).

17.     Around the time that Trinity and LBHI entered into the Trinity Bilateral Agreement, over 40 other LBB/LBHI Creditors entered into substantially similar Bilateral Agreements with LBHI.

18.     On November 19, 2014 ("**Effective Date**"), the Harmonizing Resolution was approved by the requisite number of LBB's voting creditors, *including Trinity*. On the Effective

---

[3]     A true and correct copy of the Trinity Bilateral Agreement is annexed hereto as **Exhibit "B."**

5

Date, the LBB/LBHI Agreement, the Trinity Bilateral Agreement and the other Bilateral Agreements went into effect.

19. Pursuant to the agreement reached between Trinity and LBHI in connection with the Trinity Bilateral Agreement, Trinity was to withdraw 19 denied claims against LBB totaling €34,595,584.10. However, due to an apparent "clerical" error, the Withdrawal Letter provided by Trinity to withdraw these claims against LBB only listed 18 claims; the Omitted Claim in the amount of €1,898,699.54 (LBB claim number § 38-562) was not set forth in the letter. The Withdrawal Letter was ultimately submitted to the German court clerk (who maintains the LBB claims register), and the 18 denied claims included therein were removed.[4] Trinity has also failed to submit assignment information to facilitate the withdrawal of the denied Unassigned Claim (LBB claim number § 38-707) totaling €1,811,541.00. Moreover, Trinity has failed to withdraw and provide an assignment form for the Omitted/Unassigned Claim (LBB claim number § 38-725) totaling €1,986,239.42. I have been informed that Trinity has not addressed the outstanding issues with the foregoing three Denied Claims, which total, in the aggregate, €5,696,479.96.

20. Moreover, once the Trinity Direct Claims are paid the Quota Caps, and the allowed guaranteed claims against LBB are assigned to LBHI, Trinity is obligated to assign the Additional Denied Claim (approximating €10.37 million; LBB claim number § 38-083) to LBHI.

---

[4] A true and correct copy of the Withdrawal Letter, listing 18 and not 19 claims, is annexed hereto as **Exhibit "C."**

6

### D.  The LBB Sixth Distribution and Trinity's Refusal to Accept Same

21.  Upon information and belief, until August 2015, Trinity received, accepted and did not raise any issues with respect to all distributions from LBB and LBHI on account of the Trinity Direct Claims and the Trinity Guarantee Claims.

22.  In August 2015, LBB determined that it had sufficient funds to make the LBB Sixth Distribution including to Trinity and other LBB/LBHI Creditors subject to the Harmonizing Resolution, in amounts that would satisfy the Quota Caps for those guarantee claims (including the Trinity Direct Claims) in full (and, accordingly, not require LBHI to make any further distributions on the Trinity Guarantee Claims).

23.  While Trinity raised a clarifying question regarding one Trinity Direct Claim (that was subsequently resolved), Trinity confirmed with LBB that the amounts set forth in the schedules distributed to claimants in connection with the LBB Sixth Distribution "tie in with our expectations."[5]  Trinity did not raise any issues or complain about the taxes previously withheld from prior distributions.

24.  On September 1, 2015, Trinity again confirmed with LBB the accuracy of the Quota Cap schedules, this time without qualification.[6]  Again, Trinity did not raise any issue with respect to taxes previous withheld from prior distributions.

25.  It was explained to me that in order to administer the LBB insolvency proceeding and to ensure that the LBB Sixth Distribution to Trinity would result in Trinity receiving the Quota Caps for the Trinity Direct Claims (and exiting the LBB insolvency proceeding), Trinity

---

[5]  *See* E-Mail correspondence from August 10, 2015 through August 11, 2015, a true and correct copy of which is annexed hereto as **Exhibit "D."**

[6]  *See* E-Mail correspondence from August 10, 2015 through September 13, 2015, a true and correct copy of which is annexed hereto as **Exhibit "E."**  The September 1, 2015 e-mail is contained in Exhibit "E."

DMSLIBRARY01\28817576.v1

was required to complete the following forms: (i) the one-page Confirmation, confirming that the amount Trinity was to receive in the LBB Sixth Distribution was sufficient to satisfy the Quota Caps;[7] (ii) a bank information form, requiring Trinity certify its wiring instructions; and (iii) a withholding tax form, requiring Trinity to certify its withholding tax status under German law.

26.     The Confirmation was a one-page form that set forth the remaining balance owed to Trinity on account of the Trinity Direct Claims, and asked that Trinity confirm the same (as it had done via e-mail twice before).

27.     Representatives of the LBB Administrator explained to me that the execution of the Confirmation was necessary for the administration of the LBB insolvency proceeding. Sufficient evidence of the satisfaction of the Trinity Direct Claims was needed (i) so the German court clerk could readily determine that the Quota Caps for the Trinity Direct Claims had been reached, and that Trinity would be exiting the insolvency proceeding, and (ii) to facilitate the assignment of the Trinity Direct Claims to LBHI in the official German claims register for LBB. I was advised that absent the Confirmation, it would have been difficult for the German court clerk to accurately maintain the LBB claims register.

28.     The LBB Sixth Distribution was initiated by LBB on September 4, 2015. In the fall of 2015, Trinity refused without explanation to execute the Confirmation. While not providing a reason for not executing the Confirmation in the Fall of 2015, I was informed that Trinity did request on September 7, 2015 that LBB make the LBB Sixth Distribution to it in U.S. dollars.[8] I was advised by representatives of the LBB Administrator that LBB informed Trinity

---

[7] A copy of the Confirmation, translated into English, is attached to the Bour Declaration as Exhibit "D."

[8] The September 7, 2015 e-mail correspondence from Emma Dibsdale to Charlotte Louise Schildt is contained in Exhibit "E" attached hereto.

8

at that time that it could not do so as all LBB distributions were required to be made in Euros under German insolvency law.[9]

29. Both LBB and LBHI attempted to contact Attestor (manager of the Trinity funds) in September 2015 to inquire if Trinity had any objections to the Confirmation, and ask why Trinity had not submitted the requisite three forms to enable receipt of the LBB Sixth Distribution. Attestor did not respond. LBHI sent an e-mail correspondence to Attestor on September 14, 2015, seeking confirmation that it agreed with the Quota Cap schedules and final distribution amount.[10] Thereafter, LBHI had two conversations with Attestor about the Confirmation in October 2015. While Attestor stated that the Confirmation was "onerous," not required and could be prejudicial to Trinity, the tax withholding issue was never mentioned.

30. Given Trinity's refusal to execute the Confirmation, LBB did not make the LBB Sixth Distribution to Trinity.

31. I have been informed that creditors similarly situated to Trinity who also had taxes withheld from their distributions were required to complete the three forms. All other LBB/LBHI Creditors holding allowed guaranteed claims that were subject to German tax withholdings (12 in number) executed the required forms, including the Confirmation, obtained their final distributions that reached their Quota Caps, and exited the LBB insolvency proceeding. In total, I was told that over 40 LBB/LBHI Creditors holding guaranteed claims

---

[9] The September 7, 2015 e-mail correspondence from Charlotte Louise Schildt to Emma Dibsdale is contained in Exhibit "E" attached hereto.

[10] *See* E-Mail correspondence from September 14, 2015, a true and correct copy of which is annexed hereto as **Exhibit "F."**

(totaling over €8.7 billion) signed the requisite forms, were paid in full, assigned their guaranteed claims to LBHI and have exited the LBB proceeding.[11]

32.    After refusing to execute the Confirmation and accept the LBB Sixth Distribution, in October 2015, Trinity, through Attestor, demanded that LBHI make a distribution to Trinity in U.S. dollars on account of the Trinity Guarantee Claims.  This would have required LBHI to convert the final amount LBB would have paid on the Trinity Direct Claims from Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan.  LBHI refused to do so, and has not made a distribution to Trinity on account of the Trinity Guarantee Claims since before the announcement of the LBB Sixth Distribution.

33.    Trinity did not explain its "tax withholding" objection to the Confirmation to LBHI until March 2016.  For the first time—and even though it previously confirmed with LBB, twice, that the amounts set forth in the Quota Cap schedules for the LBB Sixth Distribution were satisfactory—Trinity asserted that it could not confirm that the LBB Sixth Distribution would be the final payment because it was "unable to confirm that the Prior Withholdings will be, or that the Total Withholdings would be, properly refunded or credited to Trinity."  Bour Declaration, ¶ 26.

34.    Trinity's actions directly affect LBHI's other creditors in tangible ways.  As stated above, forty-three other guarantee creditors of LBB, including all of those holding guaranteed claims with taxes withheld by LBB, have executed their Confirmations, have received their LBB Six Distribution and have exited the LBB insolvency proceedings.  Such creditors have assigned their claims against LBB to LBHI, and LBHI has been receiving and will

---

[11]    The only other creditor that did not execute the required forms, including the Confirmation, was Deutsche Bank AG, London Branch ("**DB**").  LBHI and LBB are proceeding separately against DB to compel it to accept the LBB Sixth Distribution.

continue to receive future distributions from LBB on account of such assigned claims against LBB, which will inure to the benefit of LBHI's other creditors.

35. By withholding the Confirmation and not accepting the LBB Sixth Distribution, LBHI has not been assigned the Trinity Direct Claims (even though Trinity would have been paid in full thereon), and LBHI cannot obtain further distributions from LBB on account of such claims, the proceeds of which would be passed on to LBHI's creditors.

36. Trinity has also refused to address the issues associated with the three Denied Claims. This has further damaged the LBHI estate.

I hereby declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 18, 2016
      New York, New York

                                            /s/ Karen B. Garza
                                             KAREN B. GARZA

DMSLIBRARY01\28817576.v1