# **Exhibit B**

Execution Version

# SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of 24 November 2014 (the "Execution Date") by and between Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for and on behalf of the jointly-administered debtors in the chapter 11 cases described in the recitals below (the "Chapter 11 Estates"), on the one hand, and Trinity Investments Limited (the "Creditor"), on the other hand (each of the Plan Administrator and the Creditor, a "Party" and together, the "Parties").

## RECITALS:

A.    On September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "U.S. Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under Case No. 08-13555 (SCC).

B.    On November 12, 2008 (the "LBB Commencement Date"), the German banking regulator filed insolvency proceedings against LBHI's wholly owned subsidiary Lehman Brothers Bankhaus AG ("LBB") and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main (the "Insolvency Court") opened insolvency proceedings, file no. 810 IN 1120/08 L (the "LBB Proceeding") and appointed an insolvency administrator (the "Insolvency Administrator" or the "Insolvency Administration").

C.    The Creditor has filed the claims against LBB that are set forth on Schedule A hereto. Such claims have been allowed by LBB, and appear on LBB's insolvency table, in the amounts and with the claim numbers set forth on Schedule A under the headings "Allowed Amount" and "Claim Number" (the "Insolvency Claims"). In addition to the Insolvency Claims, the Creditor holds a disputed claim registered under serial number § 38 - 83 of LBB's Insolvency table which claim is preliminarily denied (*bestritten*) (the "Signal Iduna Claim").

D.    By order, dated July 2, 2009 [ECF No. 4271], the U.S. Court established September 22, 2009 as the deadline to file proofs of claim (each a "Proof of Claim") in the Chapter 11 Cases.

E.    The Creditor duly filed the Proofs of Claim against LBHI that are set forth on Schedule B hereto, asserting unsecured claims in the amounts set forth on Schedule B under the heading "Asserted Amount," on account of LBHI's guarantee of LBB's obligations (the "Creditor Guarantee Claims" and, together with the Insolvency Claims, the "Claims"). The Creditor Guarantee Claims were assigned claim numbers by the U.S. Court-approved claims and noticing agent (the "Claims Agent") as set forth on Schedule B under the heading "Claim

Number." In addition, this Settlement Agreement shall settle the allowance of certain other claims against LBHI (the "Direct Claims") as set forth on Schedule C.

The Insolvency Claims and the Creditor Guarantee Claims are claims that have been transferred and (sub-) participated after the opening of the LBB Proceeding to various investors. The Creditor is one of several investment funds that have sought the enforcement of these claims in the LBB Proceedings and against LBHI (the "Settling Creditors"). The Settling Creditors are

REDACTED

The Insolvency Claims asserted by the Settling Creditors are listed in Schedule D (the "Settling Creditors Insolvency Claims").

F.    On December 6, 2011, the U.S. Court entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order"). The Confirmation Order provides that the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) [ECF No. 7936] (the "First Settlement Procedures Order") shall continue to apply and be binding on all parties following the effective date of the Plan through the date upon which all of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan. On March 6, 2012, the Plan became effective.

G.    On July 18, 2012, the U.S. Court entered the Order Modifying Certain Existing Claims Orders, approving claims settlement procedures [ECF No. 29505] (the "Second Settlement Procedures Order"). The Second Settlement Procedures Order superseded the First Settlement Procedures Order. As of the date hereof, the Second Settlement Procedures Order has not been appealed, stayed or vacated, in whole or in part.

H.    On 19 November 2014 LBHI and LBB, acting through the Insolvency Administrator, entered into an agreement ("LBB Agreement") which provides inter alia for creditors assembly resolutions as set forth in the Insolvency Court's order dated 28 October 2014, attached hereto as Schedule E (as expressly set forth therein, without any substantive alteration, the "Creditors Assembly Resolutions") resolving conflicting insolvency law issues, in particular section 44a of the German Insolvency Code ("InsO"), for certain confirmations regarding the status of the LBB Proceeding and costs and fees occurred, etc. in the LBB Proceeding (as explained in further details in the document attached hereto as Schedule F sent to LBB's creditors by LBB's Insolvency Administrator), and for bilateral agreements (the "Bilateral Agreements") between LBHI and LBB creditors containing substantially similar terms to those in this Settlement Agreement to implement the resolution of these issues (such agreed issues collectively, the "Harmonizing Resolution").

I.    After good-faith, arms'-length negotiations, the Parties have agreed to resolve the conflicting insolvency law issues and other issues relevant for implementing the Harmonizing Resolution, including the allowance of the Creditor Guarantee Claims in the Chapter 11 Cases, pursuant to the terms and conditions set forth in this Settlement Agreement.

2

J.    Pursuant to the Plan and Second Settlement Procedures Order, the Plan Administrator is authorized to enter into this Settlement Agreement without approval of the U.S. Court or any other party in interest. *See* Second Settlement Procedures Order, ¶ 1.

## AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    The Recitals set forth above form an integral part of this Settlement Agreement and are incorporated fully herein.

2.    This Settlement Agreement shall become effective upon the Execution Date (the "Effective Date").

3.    The Parties agree that as part of the Harmonizing Resolution certain creditors that do not hold guarantee claims against LBHI as set out in Exhibit 1 hereto (the "Non-Guaranteed Creditors") will receive both the (flexible) quota from the LBB estate in accordance with sections 187, 196, 197 InsO, which includes all advance distributions (the "LBB Quota") and, before or at the time of the final distribution (*Schlussverteilung*) receive a payment equaling their outstanding insolvency claim in the rank of section 38 InsO from cash that will be provided by LBHI for the benefit of those creditors, by purchase of their remaining outstanding insolvency claims or otherwise.

4.    By this Settlement Agreement the Creditor agrees to the Harmonizing Resolution, including all Creditor Assembly Resolutions. The Creditor agrees to vote in favor of all of the Creditors Assembly Resolutions and hereby waives its right to object to or, if duly approved, to appeal the Creditors Assembly Resolutions; provided, however, that in the event the power of attorney entered into by the Creditor for purposes of voting on the Creditors Assembly Resolutions is not recognized by the Insolvency Court, but the Creditor otherwise fulfills its obligations under this paragraph 4, then the Creditor shall be deemed to have complied with this paragraph 4 in all respects and not to be in breach hereof. Furthermore the Creditor expressly agrees that it will not object to the Harmonizing Resolution by (i) filing any appeal or relief (including but not limited to the application pursuant to Sec. 78 InsO) to a German court, in or outside the creditor assembly against the Creditors Assembly Resolutions or any subsequent assembly resolutions or court decisions implementing the Harmonizing Resolution as set forth in the Creditor Assembly Resolutions including its underlying documentation (in particular the "*Beschlussvorlagen*" and explanations) and this Settlement Agreement, and waives any of its rights to object or appeal accordingly, (ii) objecting against or filing any appeal or relief against any distributions schedule ("*Verteilungsverzeichnis*") in the LBB proceeding implementing the Harmonizing Resolution as set out in the aforementioned resolutions and documentation, including any advance distributions, and waives any of its rights to object or appeal accordingly, (iii) orally or in writing communicating an objection to or dissent with the Harmonizing Resolution or its implementation by the Insolvency Administrator (in particular but not limited to the implementation by the treatment of the claims and the distribution as provided for in the Harmonizing Resolution) to the Insolvency Administrator or the Insolvency Court, (iv)

3

addressing the creditors or the Insolvency Court in the creditors' assembly in such a fashion or (v) doing the same on the record in the Chapter 11 Cases, for the avoidance of doubt all of the foregoing subject to the correct implementation of the Harmonizing Resolution by the Insolvency Administrator, the Insolvency Court and LBHI.

5.    By way of this Settlement Agreement, the Creditor agrees and consents to (1) the identification, safeguarding, assessment, management, administration, disposition and distribution of the insolvency estate of LBB AG and to the results achieved and decisions made in the LBB AG Insolvency Proceeding such as disposals, settlements, measures and acts (Handlungen), including allowance and treatment of filed claims of other LBB creditors, and all acts or actions in court proceedings as laid down in the reporting to the Creditors as per the Insolvency Administrators' reports up to, and including, the 16th report as of 22 September 2014 (the "Insolvency Administrators' Reports") and other documents available for inspection of LBB's creditors in the Insolvency Court files, (2) the fulfilment of administrative claims against LBB's insolvency estate pursuant to sections 53 – 55 InsO (Masseverbindlichkeiten) as specified in the Insolvency Administrators' Reports (including its exhibits) or admitted/determined in orders issued by the Insolvency Court, (3) the previous costs and fees of the Insolvency Administration amounting to EUR 312,180,375.00 (excluding statutory VAT) for administrative services rendered (erbrachte Verwalterleistungen) by December 31, 2012, as admitted (bewilligt) by order of the Insolvency Court on September 19, 2013, and, on that basis, the final remuneration (fees) of the Insolvency Administration in a range between EUR 400m and EUR 500m (plus statutory VAT) within the meaning of section 63 InsO, (4) the previous costs and fees of the LBB AG Creditors' Committee and its members amounting to EUR 2,947,945.52 (plus statutory VAT) for the services rendered by December 31, 2012 as admitted in the previous orders of the Court are appropriate (angemessen) and, on that basis, the future invoices (Abrechnung) in accordance with the methodology of section 73 para 1 InsO applied so far, (5) the proposal that no hearing will take place regarding the final accounting of the Insolvency Administrator (Schlussrechnung) and that no other auditing regarding the accounting of the Insolvency Administrator (Rechnungsprüfung) is necessary other than the auditing currently being undertaken by FRTG-Group as mandated by the Insolvency Court; and (6) the proposal not to raise or assert or enforce any liability claims against the (former) organs of LBB.

6.    Also, the Creditor agrees not to (except to enforce the terms of the Creditors Assembly Resolutions) make any claims or rights of whatsoever nature against the Insolvency Administrator, his firm and its partners, the members of LBB's Creditors Committee and LBB, as a result of, or in connection with, this Settlement Agreement, the implementation of the Creditors Assembly Resolutions as approved by a statutory majority at the creditors' assembly and related distributions provided for therein and the Creditor shall be barred from asserting any and all claims to receive additional distributions in the LBB Proceeding from LBB's estate on account of the Insolvency Claims not provided for and consistent with the Harmonizing Resolution.

7.    Conditioned upon

(a) LBB's creditors' assembly having voted with statutory majority in favor of the Creditors Assembly Resolutions, it being understood that solely the factual voting of

4.

the creditors with statutory majority shall be relevant and decisive and that it shall not be relevant whether the Creditors Assembly Resolutions are legally binding or have legal effect or whether a different creditor outside the Settling Creditors objects to the Creditors Assembly Resolutions;

(b) all Settling Creditors Insolvency Claims having voted in favor of the Creditor Assembly Resolutions in the creditors' assembly on November 25, 2014 subject to the proviso in paragraph 4 sentence 2 above; and

(c) neither the Creditor nor any other member of the Settling Creditors having objected (as set out under 4. above) to (i) the Creditor Assembly Resolutions or (ii) the Harmonizing Resolution until the closure of the creditors' assembly voting upon the Creditor Assembly Resolutions on November 25, 2014.

The date on which these conditions are met is referred to herein as the "Allowance Effective Date", which is anticipated to be November 25, 2014. On the Allowance Effective Date, the Creditor Guarantee Claims and the Direct Claims shall be Allowed Claims in the Chapter 11 Cases in the amounts and classes set forth on Schedule B and Schedule C under the headings "Allowed Amount" and "LBHI Class" (in such Allowed Amounts, the "Allowed Creditor Guarantee Claims" and the Allowed Direct Claims) and shall be entitled to receive distributions under the plan (in addition to distributions from LBB in respect of the Insolvency Claims) without any deductions or withholdings whatsoever (except for any tax withholding expressly required pursuant to the Plan); *provided that* the Plan Administrator will not make distributions in respect of the Allowed Creditor Guarantee Claim, including amounts retained pursuant to section 8.4 of the Plan, until the first Distribution Date that is at least 21 days after the Effective Date.

For the avoidance of doubt, for those Insolvency Claims which are held as a sub participation and the registered creditor in the LBB proceeding is not a member of the Settling Creditors or where a different creditor outside the Settling Creditors will exercise the voting rights pursuant to the underlying investment agreements, condition (b) above will be fulfilled and such fulfillment can be evidenced by a respective written voting instruction to the voting creditor and condition (c) can be fulfilled by a respective instruction not to object against the Creditor Assembly Resolutions or the Harmonizing Resolution. If the registered creditor in the LBB proceeding has voted in favor of the Creditor Assembly Resolutions and has not objected to the Creditor Assembly Resolutions or the Harmonizing Resolution as provided for in sect. 4, then the conditions set out in (b) and (c) above are deemed to be fulfilled. The Creditor agrees that it will not change the voting rights after execution of this Settlement Agreement in order to avoid or circumvent the obligations as set out in 4. above until the end of the creditor assembly voting on the Creditor Resolutions.

Should the creditors' assembly on November 25, 2014 not vote upon the Creditor Assembly Resolutions, e.g. because the vote is postponed or the creditor assembly is rescheduled, then the following shall apply:

WEIL:\95168247\2\58399.0011

(i) If the LBB creditors' assembly shall have voted with statutory majority in favor of the Creditor Assembly Resolutions within the year 2014, this agreement shall stay in effect and the provisions of this agreement shall apply accordingly;

(ii) If the LBB creditors' assembly shall not have voted with statutory majority in favor of the Creditor Assembly Resolutions within the year 2014, then this Settlement Agreement shall become null and void and of no further force and effect with retroactive effect and the parties will negotiate in good faith the further procedure to implement the Harmonizing Resolution based on the principles set out herein.

8.    Promptly after the Allowance Effective Date, the Plan Administrator shall deliver a joint instruction letter in the form annexed hereto as Exhibit 3, attaching a copy of this Settlement Agreement, to the Claims Agent with instructions to update the claims registry to reflect the Allowed Creditor Guarantee Claims and the Allowed Direct Claims. The Creditor agrees that the content of this Settlement Agreement or a copy of it may be made available to all other LBB Creditors and the Insolvency Court in the LBB Proceeding.

9.    The Creditor agrees to be liable to LBHI for the disgorgement of any distributions or other consideration received by the Creditor on account of any Allowed Creditor Guarantee Claim (excluding distributions contributed to the Plan Adjustment on account of such Allowed Creditor Guarantee Claim) to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to the Creditor or any previous holder on account of any portion of the related Insolvency Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such Allowed Creditor Guarantee Claim.

10.    The Creditor hereby assigns, transfers, and conveys all of its right, title and interest in and to (a) each Insolvency Claim together with (1) any distributions received on such Insolvency Claim (converted to USD in accordance with section 8.13(d) of the Plan) in excess of the allowed amount of the related Allowed Creditor Guarantee Claim and (2) any ancillary claims (*Nebenforderungen*) and any claims pursuant to section 39 para 1 No. 1 and 2 InsO and the Signal Iduna Claim together with any distributions and ancillary claims, as applicable (the "Assigned Claims"), free and clear of any and all liens and encumbrances, to LBHI (the "Assignment"), *provided that* the Assignment of each Insolvency Claim shall not be effective until (i) each of the Creditor Guarantee Claims has become an Allowed Claim in the Chapter 11 Cases in the amounts and classes set forth on Schedule B under the headings "Allowed Amount" and (ii) the Creditor has received distributions from LBHI and LBB on the respective Insolvency Claim (not taking into account the Signal Iduna Claim) and the related Allowed Creditor Guarantee Claim, that in combination are equal to the greater of the following amounts (such greater amount, the "Creditor's Quota Cap"):

(a.)    the USD amount of the Allowed Creditor Guarantee Claim, *provided that* any EUR distributions received by the Creditor from LBB in respect of a related Insolvency Claim (as specified in Schedule A) shall for purposes of this subparagraph (a) be converted into USD applying a EUR/USD exchange rate of 1.3402, and

WEIL:\95165247\2\58399.0011

(b.)    a USD amount equal to the amount of the related Insolvency Claim (as specified in Schedule A) converted into USD at a USD/EUR exchange rate of 1.41904, *provided that* any EUR distributions received by the Creditor from LBB in respect of such Insolvency Claim shall for purposes of this subparagraph (b) be converted into USD applying a EUR/USD exchange rate of 1.3402.

The Creditor agrees that upon the effectiveness of the Assignment, (i) the Creditor shall not further participate in the LBB Proceeding, except to the extent necessary to enforce its rights in connection with this Settlement Agreement, and (ii) all rights arising from the Assigned Claims will be exercisable by LBHI and not by the Creditor.

11.    The Creditor agrees that any creditor in the LBB Proceeding that holds an allowed claim for distribution in the LBB Proceeding and asserts a related guarantee claim against LBHI shall be treated as follows, and the Creditor further agrees that this treatment is part of the Creditors Assembly Resolutions:

(a.)    Each such guaranteed creditor that has (i) executed a bilateral settlement agreement or comparable binding agreement with LBHI containing substantially similar terms to those in this Settlement Agreement, including assignments of claims to LBHI, and (ii) voted in favor of and not objected to, or moved against, any of the terms of the Creditors Assembly Resolutions (such creditor, a "Settled Guarantee Creditor") shall receive distributions from LBHI and LBB on a given allowed creditor guarantee claim and related insolvency claim in the rank of section 38 InsO, respectively, until such distributions collectively reach the greater of the following amounts (such greater amount, except as expressly provided in subclause (iii) below, the "Quota Cap"):

(i)    the USD amount of the allowed creditor guarantee claim, *provided that* any EUR distributions received by the creditor from LBB in respect of the related insolvency claim in the rank of section 38 InsO shall for purposes of this subclause (i) be converted into USD applying a EUR/USD exchange rate of 1.3402, and

(ii)    a USD amount equal to the amount of the related insolvency claim in the rank of section 38 InsO converted into USD at a USD/EUR exchange rate of 1.41904, *provided that* any EUR distributions received by the creditor from LBB in respect of the related insolvency claim in the rank of section 38 InsO shall for purposes of this subclause (ii) be converted into USD applying a EUR/USD exchange rate of 1.3402; *and further provided that*,

(iii)    notwithstanding the foregoing, the Quota Cap for BdB is derived from its settlement agreement with LBHI dated 30 September 2011; the Quota Cap for Entschädigungseinrichtung deutscher Banken GmbH (EdB) is derived from its settlement agreement with LBHI dated 30 September 2011 ; the Quota Cap for Bundesbank is derived from its settlement agreement with LBHI dated 11 October 2011; and for each of LBIE and LB Asia a different Quota Cap applies, taking into account that their allowed guarantee claims are higher than their related insolvency claims in the rank of section 38 InsO.

7

(b.)    Each such guaranteed creditor that has (i) not executed a bilateral settlement agreement (or comparable binding agreement with LBHI, including assignment of claims to LBHI) and/or (ii) not voted in favor of or objected to, or moved against, any of the terms of the Creditors Assembly Resolutions (such creditor, a "Non Settled Guarantee Creditor") shall (A) receive distributions out of the LBB Proceeding equal to (x) 100% of the allowed claim amount in the rank of section 38 InsO, minus (y) projected recovery amounts from LBHI on account of the related guarantee claim, currently estimated at 29.7% for LBHI Class 5 and 27.98% for LBHI Class 9A (as defined in the Plan) (irrespective of exchange rates), as updated from time to time by the LBB Insolvency Administrator using information provided by LBHI and/or publicly available market quotations; and (B) have reserves retained in the amount equal to 100% of its claim plus post-petition interest and post-petition costs (if applicable) as determined by the LBB Insolvency Administrator based on statutory law, less distributions from LBB and LBHI (if applicable); it being understood that if the Non Settled Guarantee Creditor agrees to a bilateral settlement agreement (or comparable binding agreement with LBHI, including assignments of claims to LBHI), then distributions to the Non Settled Guarantee Creditor shall be governed by subparagraph 11 (a) above (and it shall be deemed thereafter to be a "Settled Guarantee Creditor").

(c.)    The insolvency claims in the LBB Proceeding shall only be regarded discharged (*erfüllt*) by distributions or other consideration out of the LBB Proceeding, without taking into account any distributions or other consideration received from LBHI in respect of guarantee claims.

12.    LBHI undertakes not to make use, not to enforce and not to accept benefits in respect of any Assigned Claims or other claims assigned to LBHI by any of LBB's creditors pursuant to comparable binding agreements with LBHI containing substantially similar terms to those of this Settlement Agreement, including assignments of claims to LBHI, until:

(a.)    administrative costs, including fees, and expenses (*Massekosten und Massekostenverbindlichkeiten*) pursuant to sections 53 to 55 InsO have been paid or reserved for in the LBB Proceeding (section 187 InsO);

(b.)    each Settled Guarantee Creditor has received its quota cap (not taking into account any non-guaranteed claims, if applicable and subject to the individual agreements with specific creditors having different agreements on their Quota Cap); and

(c.)    each Non Settled Guarantee Creditor has received the full amount of distributions or has had the full amount of reserves retained as provided for in subparagraph 12(b) above.

(d.)    all other disputed claims have been reserved for; and

(e.)    all non-guaranteed claims listed in Exhibit 1 have been satisfied in full, i.e., have received payments equaling 100% of their outstanding insolvency claim in the rank of Sec. 38 InsO (partly through distributions by LBHI upon acquisition) or have received an offer from LBHI to acquire their claim in order to increase their distributions to 100% of their

8

outstanding insolvency claim in the rank of section 38 InsO and LBHI has provided the funds to remit to the creditor upon acceptance of LBHI's offer.

(f.)    For the avoidance of doubt, distributions to LBHI shall not be held up by the mere fact that the claims listed in Exhibit 2 which shall include the BdB Cost Claim, LBIE Claims, and LB Asia Claims have not yet received the full LBB quota according to sections 187, 196 InsO.

(g.)    Notwithstanding the above, when making distributions, the LBB Insolvency Administrator will include in the claims denominator (amount of claims used to determine the distribution quota) all allowed LBB claims including the claims assigned to LBHI by guarantee creditors notwithstanding the fact that said claims have reached their respective Quota Caps. Until (i) each Settled Guarantee Creditor's claim has reached its Quota Cap, (ii) each Non-Guaranteed Creditor's claim (other than those creditors' claims listed in Exhibit 2) has been satisfied as set forth in subparagraph 12(e) above, and (iii) reserves have been established as provided for above (the foregoing subclauses (i), (ii) and (iii) collectively, the "Non-Satisfied Claims"), distribution amounts allocated to any of the claims assigned to LBHI shall be distributed or used for reserves for the Non Satisfied Claims in accordance with statutory law. This means, at each distribution date (and provided that reserves for administrative costs, including fees, and expenses pursuant to sections 53 to 55 InsO were established beforehand), distributions and reserves for Non Satisfied Claims, as applicable, shall be made on a pro rata basis. For the avoidance of doubt, distribution amounts allocated to any of the claims assigned to LBHI are reserved for based on the same principles that apply to all other claims that are reserved for. Once the Non Satisfied Claims have been satisfied through distributions or reserves as provided in the subparagraphs of paragraph 10 mentioned above, LBHI on account of the claims assigned to LBHI shall receive its pro rata share of distributions; *provided, that* should not all conditions in subparagraphs 12(a) through 12(e) hereof be satisfied, the LBB Insolvency Administrator shall reserve for the claims assigned to LBHI.

(h.)    For the avoidance of doubt, those claims listed in Exhibit 2 shall receive the full amount of the LBB quota according to sections 187, 196 InsO which shall factor in reserves or distributions to LBHI on account of the claims assigned to LBHI as set forth in this section, ensuring that they receive the same level of distributions they would have received outside of the Harmonizing Resolution.

13.    As requested by LBHI, the Creditor hereby agrees that all Insolvency Claims that are assigned to LBHI in accordance with the Creditors Assembly Resolutions and in the implementation of the Harmonizing Resolution shall remain in their current rank (Sect. 38 InsO or Section 39 para 1 no. 1 and 2 InsO) and that distributions in respect of such claims be made by LBB to LBHI on these claims in that rank, taking into account, however, the limitations set forth in paragraph 12 above, and the Creditor consents that other LBB creditors may be requested to agree, and may agree, on settlements in substance comparable to this Settlement Agreement.

9

14.    Should the distributions in the LBB proceedings not occur in accordance with the provisions set out in paragraph 11. and 12. and LBHI as a consequence receive distributions from LBB before the creditors of the Settling Creditors have reached their Quota Caps, LBHI will turn over those distributions that the creditors of the Settling Creditors would have received in case of a distribution schedule in accordance with paragraphs 11. and 12. (instead of LBHI) to the respective creditors of the Settling Creditors.

15.    [omitted]

16.    Upon the Allowance Effective Date, other than the right to receive distributions under the Plan and in accordance with this Settlement Agreement on account of the Allowed Creditor Guarantee Claims and the Allowed Direct Claims, the Creditor and its affiliates, successors and assigns, and their past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Releasing Parties"), shall have no further right to payment from LBHI, the Plan Administrator, the Chapter 11 Estates, the affiliates controlled by the Chapter 11 Estates, or their respective successors or assigns (collectively, the "Released Parties") in respect of the Creditor Guarantee Claims and the Direct Claims, and upon the Allowance Effective Date hereby irrevocably waives any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature arising out of or relating to the Creditor Guarantee Claims and the Direct Claims (collectively, the "Released Claims") against any of the Released Parties, and shall be barred from asserting against any of the Released Parties any and all Released Claims whatsoever, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Settlement Agreement; provided, however, that the releases granted in this Clause 16 shall not apply to obligations, rights, remedies or actions arising or accruing pursuant to the LBB Agreement or this Settlement Agreement.

17.    Subject to the exception set out at the end of this Clause, Clause 12 shall only become effective when LBB's Creditors Assembly has voted with statutory majority in favor of the Creditors Assembly Resolutions, it being understood that solely the factual voting of the creditors with statutory majority shall be relevant and decisive and that it shall not be relevant whether the Creditors Assembly Resolutions are legally binding or have legal effect or whether a different creditor outside the Settling Creditors objects to the Creditors Assembly Resolutions.

Subject to the Settling Creditors having reached the Creditor's Quota Caps for each and all of their Settling Creditors Insolvency Claims, the restrictions set out in Clause 12 shall fall away if a legally binding court order has ruled that either (i) any of LBHI's claims assigned by the guarantee creditors do not remain in the rank they had before the assignment or (ii) the Harmonizing Resolution cannot be implemented, in case such ruling has been issued within 24 months of LBB having distributed a quota of 90% to allowed LBB creditors' claims in the rank of section 38 InsO provided that such quota is achievable, if not, a lower quota applies as agreed between the LBB Insolvency Administrator and LBHI (so that the limitations set out in Clause

10

12 will not fall away as long as the Settling Creditors has not reached their Quota Caps in their entirety).

18.    The Parties agree and acknowledge that any breach of this Settlement Agreement may result in irreparable damage for which the non-breaching Parties will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that any non-breaching Party may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without any requirement to post a bond or other security.

19.    This Settlement Agreement contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto, including, but not limited to, any prior agreements between the Creditor and LBHI concerning the Creditor Guarantee Claims.

20.    This Settlement Agreement may not be modified other than by a writing signed by the Parties.

21.    Each person who executes this Settlement Agreement represents and warrants that he or she is duly authorized to do so on behalf of the respective Party and that each such Party has full knowledge of and has consented to this Settlement Agreement.

22.    The Creditor represents and warrants that on the Effective Date, it has been assigned all of the Claims, the Direct Claim and the Signal Iduna Claim by Attestor Capital Value Master Fund, L.P. ("Attestor"), and owns the Claims, the Direct Claim and the Signal Iduna Claim free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances, and has not transferred or assigned any of the Claims, the Direct Claims and the Signal Iduna Claim to any other person, in whole or in part. The Creditor shall procure that Attestor will not assert any claims against LBHI resulting from or in connection with, the Claims, the Direct Claims and the Signal Iduna Claim.

23.    Except for the assignment of claims to LBHI pursuant to paragraph 10 of this Settlement Agreement, the Creditor may not convey, transfer, assign, participate, or sub-participate the Claims, or any rights or interests arising thereunder, in whole or in part, to any party or parties (any such party, a "Transferee") after the Execution Date, unless such conveyance, transfer, assignment, participation or sub-participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Settlement Agreement, including, but not limited to, the obligation to assign claims pursuant to paragraph 8hereof, shall be binding in all respects upon the Transferee and any successor transferees

24.    LBHI may not convey, transfer, assign, participate, or sub-participate the Assigned Claims, or any rights or interests arising thereunder in whole or in part to any Transferee after the Execution Date, unless such conveyance, transfer, assignment, participation or sub-participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Settlement Agreement shall be binding upon the Transferee and any successor transferees in all respects.

11

25.    Each Party represents and warrants to the other Party that its own execution and delivery of, and performance of its obligations under, this Settlement Agreement are within its corporate powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on it, or any law, regulation, judgment, order or administrative action binding on it.

26.    The Plan Administrator represents and warrants that this Settlement Agreement is being entered into in accordance with and pursuant to the terms of the Second Settlement Procedures Order, that the Plan Administrator is authorized to enter into it, and that this Settlement Agreement is valid and binding in accordance with the terms of the Plan and without the approval of the U.S. Court or any other party in interest.

27.    This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns. The Parties acknowledge that the stipulations regarding the content of Creditors Assembly Resolutions and the obligation of the Creditor related thereto, which means confirmation of the measures undertaken, including allowance and treatment of other LBB creditors, costs and fees in the LBB Proceeding, waiver of rights and objections related thereto and the exclusion of liability of the Insolvency Administrator, his firm and its partners, the members of the LBB Creditors' Committee and the LBB (former) organs are for the benefit of each of these parties, including LBB, in accordance with Section 328 BGB.

28.    This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copy, copies, or facsimiles signed by the Parties hereto to be charged. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

29.    This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns.

30.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release in Paragraph 4. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

31.    This Settlement Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof.

WEIL:\95165247\2\58399.0011

32.     The U.S. Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Settlement Agreement. Should the U.S. Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Settlement Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York.

33.     The fees and expenses incurred by each Party in connection with this Settlement Agreement will be paid by such Party.

34.     Each Party acknowledges that this Settlement Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing or a waiver of any rights or claims except as expressly provided for herein.

35.     This Settlement Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Settlement Agreement.

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS SETTLEMENT AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE SETTLEMENT AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS SETTLEMENT AGREEMENT.**

LEHMAN BROTHERS HOLDINGS INC.

By:

Print Name:

Title:

Trinity Investments Limited
acting by Attestor Capital LLP

By:

Name: PIERRE BOUR

Title: MANAGING MEMBER

**Schedule A - Trinity**

| Claim No. according to LBB's creditor list | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) |
|---|---|
| § 38 - 101 | € 4,000,000.00 |
| § 38 - 137 | € 1,522,379.79 |
| § 38 - 244 | € 5,128,531.94 |
| § 38 - 247 | € 15,202,838.00 |
| § 38 - 256 | € 4,933,459.00 |
| § 38 - 261 | € 10,000,000.00 |
| § 38 - 262 | € 4,970,534.25 |
| § 38 - 268 | € 38,514,231.23 |
| § 38 - 484 | € 10,275,753.42 |
| § 38 - 530 | € 52,519.75 |
| § 38 - 710 | € 962,596.31 |

Subparticipations

| | |
|---|---|
| § 38 - 196 | € 2,046,333.33 |
| § 38 - 277 | € 2,347,190.21 |
| § 38 - 301 | € 6,655,125.80 |
| § 38 - 064 | € 1,054,295.28 |
| § 38 - 065 | € 484,080.38 |
| § 38 - 067 | € 862,569.44 |
| § 38 - 072 | € 1,703,407.41 |
| § 38 - 079 | € 2,128,056.71 |
| § 38 - 136 | € 870,421.99 |
| § 38 - 225 | € 1,909,020.60 |
| § 38 - 267 | € 4,722,692.50 |
| § 38 - 450 | € 5,000,000.00 |
| § 38 - 498 | € 102,816.44 |
| § 38 - 548 | € 10,193,450.68 |

**Schedule B - Trinity**

| Holder of Record | | |
| --- | --- | --- |
| LBHI Proof of Claim No. | Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
| 50504 | $    12,845,043.08 | 5 |
| 50505 | $    6,547,766.12 | 5 |
| 66027 | $    7,184,612.20 | 5 |

| Subparticipations* | | |
| --- | --- | --- |
| LBHI Proof of Claim No. | Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
| 59837 | $    2,227,869.67 | 5 |

| Holder of Record | | | |
| --- | --- | --- | --- |
| LBHI Proof of Claim No. | Asserted Guarantee Claim amount in LBHI Case (USD) | To Be Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
| 14416 | $    5,697,200.01 | [$5,676,160.00] | 9A |
| 17741 | $    7,284,655.11 | [$7,277,591.96] | 9A |
| 21444 | $    14,546,325.67 | [$14,581,705.13] | 5 |
| 21954 | $    23,297,177.06 | [$21,573,435.24] | 9A |
| 55570 | $    53,947,966.29 | [$56,019,197.35] | 9A |
| 67114 | $    2,157,973.35 | [$2,160,317.82] | 5 |
| TBD | N/A | [$1,925,505.35] | 5 |

| Subparticipations* | | | |
| --- | --- | --- | --- |
| LBHI Proof of Claim No. | Asserted Guarantee Claim amount in LBHI Case (USD) | To Be Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
| 5276 | $    1,218,038.71 | [$1,224,020.54] | 5 |
| 10117 | n/a | [$2,417,203.25] | 9A |
| 13477 | $    2,989,819.09 | [$3,019,797.59] | 5 |
| 15535 | $    680,424.41 | [$686,929.42] | 5 |
| 16022 | $    984,105.65 | [$1,235,163.62] | 5 |
| 17617 | $    7,332,315.70 | [$7,241,100.64] | 5 |
| 19963 | $    4,694,538.39 | [$3,330,756.80] | 9A |
| 19967 | $    4,694,538.39 | [$2,903,828.85] | 9A |
| 22049 | $    - | [$6,701,689.57] | 9A |
| 22217 | $    11,663,057.27 | [$14,464,914.25] | 5 |
| 28185 | $    1,195,076.93 | [$1,496,087.17] | 5 |
| 65918 | $    3,129,379.29 | [$9,443,889.72] | 9A |
| TBD | N/A | [$481,106.92] | 5 |

* Includes portion where LBHI claimant is listed in EPIQ under a different name

**Schedule C – Trinity**

| LBHI Proof of Claim No. | [To-be-allowed] Direct Claim amount in LBHI Case | LBHI Class | Comments |
|---|---|---|---|
| TBD | [$8,486,580.47] | 5 | Macron disputed (LBB claims §38-707 & §38-725) |
| TBD | [$41,119,315.76] | 5 | Diamond disputed (LBB claim §38-267) |
| TBD | [$202,335,932.12] | 5 | Neovara disputed (LBB Rank 38 Claims 552-562, 564-570 &706) |

**Schedule D**

**Settling Creditors**

| Claim No. according to LBB's creditor list | Economic holder | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) |
|---|---|---|
| § 38 - 002 | REDACTED | € 15.526.612,50 |
| § 38 - 048 | | € 6.285.065,24 |
| § 38 - 065 | | € 4.453.539,55 |
| § 38 - 072 | | € 6.813.629,63 |
| § 38 - 079 | | € 19.578.121,72 |
| § 38 - 101 | | € 28.272.009,05 |
| § 38 - 261 | | € 29.667.962,01 |
| § 38 - 262 | | € 9.941.068,01 |
| § 38 - 484 | | € 6.709.424,66 |
| § 38 - 485 | | € 8.734.390,41 |
| § 38 - 526 | | € 5.066.427,40 |
| § 38 - 527 | | € 10.000.000,00 |
| § 38 - 530 | | € 105.039,50 |
| § 38 - 546 | | € 10.322.526,64 |
| Total REDACTED | | € 161.475.816,32 |

| | | |
|---|---|---|
| § 38 - 064 | Trinity | € 1.054.295,28 |
| § 38 - 065 | Trinity | € 484.080,38 |
| § 38 - 067 | Trinity | € 862.569,44 |
| § 38 - 072 | Trinity | € 1.703.407,41 |
| § 38 - 079 | Trinity | € 2.128.056,71 |
| § 38 - 101 | Trinity | € 4.000.000,00 |
| § 38 - 136 | Trinity | € 870.421,99 |
| § 38 - 137 | Trinity | € 1.522.379,79 |
| § 38 - 196 | Trinity | € 2.046.333,33 |
| § 38 - 225 | Trinity | € 1.909.020,60 |
| § 38 - 244 | Trinity | € 5.128.531,94 |
| § 38 - 247 | Trinity | € 15.202.838,00 |
| § 38 - 256 | Trinity | € 4.933.459,00 |
| § 38 - 261 | Trinity | € 10.000.000,00 |
| § 38 - 262 | Trinity | € 4.970.534,25 |
| § 38 - 267 | Trinity | € 4.722.692,50 |
| § 38 - 268 | Trinity | € 38.514.231,23 |
| § 38 - 277 | Trinity | € 2.347.190,21 |
| § 38 - 301 | Trinity | € 6.655.125,80 |
| § 38 - 450 | Trinity | € 5.000.000,00 |
| § 38 - 484 | Trinity | € 10.275.753,42 |
| § 38 - 498 | Trinity | € 102.816,44 |
| § 38 - 530 | Trinity | € 52.519,75 |

**Settling Creditors**

| Claim No. according to LBB's creditor list | Economic holder | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) | |
|---|---|---|---|
| § 38 - 548 | Trinity | € | 10.193.450,68 |
| § 38 - 710 | Trinity | € | 962.596,31 |
| **Total Attestor** | | **€** | **135.642.304,46** |
| § 38 - 004 | REDACTED | € | 2.558.827,90 |
| § 38 - 034 | | € | 14.275.511,07 |
| § 38 - 072 | | € | 6.813.629,63 |
| § 38 - 073 | | € | 5.019.861,11 |
| § 38 - 074 | | € | 6.321.631,97 |
| § 38 - 080 | | € | 15.757.865,75 |
| § 38 - 101 | | € | 27.060.351,50 |
| § 38 - 191 | | € | 5.122.444,44 |
| § 38 - 257 | | € | 5.084.383,33 |
| § 38 - 258 | | € | 7.771.504,50 |
| § 38 - 259 | | € | 2.590.501,50 |
| § 38 - 451 | | € | 10.193.315,07 |
| § 38 - 512 | | € | 10.317.994,42 |
| **Total REDACTED** | | **€** | **118.887.822,19** |
| § 38 - 002 | REDACTED | € | 31.053.225,00 |
| § 38 - 004 | | € | 3.582.359,04 |
| § 38 - 009 | | € | 15.302.433,06 |
| § 38 - 037 | | € | 20.259.746,67 |
| § 38 - 131 | | € | 8.082.213,70 |
| § 38 - 244 | | € | 3.075.868,85 |
| § 38 - 503 | | € | 705.000,00 |
| § 38 - 504 | | € | 295.000,00 |
| § 38 - 541 | | € | 6.338.183,91 |
| **Total REDACTED** | | **€** | **88.694.030,23** |
| § 38 - 065 | REDACTED | € | 96.816,08 |
| § 38 - 079 | | € | 425.611,34 |
| § 38 - 093 | | € | 5.054.780,03 |
| § 38 - 196 | | € | 2.046.333,33 |
| § 38 - 223 | | € | 1.679.500,00 |
| § 38 - 247 | | € | 15.202.838,00 |
| § 38 - 268 | | € | 19.512.323,38 |
| § 38 - 269 | | € | 10.443.850,82 |
| § 38 - 277 | | € | 2.347.190,21 |
| § 38 - 484 | | € | 3.612.767,12 |

2

**Settling Creditors**

| Claim No. according to LBB's creditor list | Economic holder | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) |
|---|---|---|
| § 38 - 710 | REDACTED | € 487.676,63 |
| Total REDACTED | € | 60.909.686,94 |