**HEARING DATE AND TIME: May 10, 2016 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No.: 08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------------x

**AMENDED[1] OBJECTION BY LEHMAN BROTHERS HOLDINGS INC. TO MOTION OF TRINITY INVESTMENTS LIMITED TO COMPEL OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS**

**AND**

**CROSS-MOTION TO ENFORCE THE**
**LBHI PLAN AND OTHER ANCILLARY RELIEF**

Lehman Brothers Holdings Inc. ("**LBHI**"), as Plan Administrator under the *Modified*

*Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated*

*Debtors* ("**LBHI Plan**") for the entities in the above referenced chapter 11 cases, hereby submits

---

[1]    This Objection/Cross-Motion is being amended to correct the following two facts: (i) in paragraph 15, by adding to the definition of "Harmonizing Resolution" the LBHI/LBB Agreement, and (ii) in paragraph 25, by changing the date from November 19, 2014 to November 24, 2014, and deleting the phrase "the LBB/LBHI Agreement."

(A) this objection ("**Objection**") to the *Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims*, dated March 22, 2016 ("**Motion**"),[2] filed by Trinity Investments Limited ("**Trinity**"), and (B) this cross-motion ("**Cross-Motion**") to enforce the LBHI Plan and other ancillary relief.[3]    In support of the Objection and Cross-Motion, LBHI respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    Trinity has manufactured an excuse to not accept a distribution from Lehman Brothers Bankhaus AG ("**LBB**"),[4] the direct obligor of its debt, that would have paid it in full, so it could file the Motion and complain to this Court that LBHI, as guarantor, did not make a subsequent distribution on account of that same indebtedness.  It's motivation for this counter-intuitive behavior is to take advantage of the recently increased strength of the U.S. dollar by concocting a reason to refuse to accept a Euro distribution on its direct claims so that it can, instead, obtain a subsequent U.S. dollar distribution from LBHI on its related guarantee claim. The LBHI Plan has a U.S. dollar to Euro conversion rate (1.3402:1) which is materially higher than the currency conversion rate extant at the time of the September 2015 LBB distribution (and today).[5]  That currency exchange variance results in over a ***$1 million*** value differential.  Trinity seeks this amount as a windfall. LBHI believes the $1 million differential belongs to ***all*** of its creditors.

---

[2]    In support of the Objection, LBHI is also filing simultaneously herewith the Declaration of Karen B. Garza ("**Garza Declaration**").

[3]    The Trinity Motion was supported by the Declaration of Pierre Bour ("**Bour Declaration**"), the managing member of Attestor Capital LLP ("**Attestor**") (which serves as Trinity's investment manager).

[4]    LBB is an affiliate of LBHI that is involved in an insolvency proceeding in Germany.

[5]    By way of illustration, the U.S. dollar to Euro conversion rate as of April 13, 2016 was 1.1274:1.

DMSLIBRARY01\28824846.v1

2.    Trinity's actions stands in stark contrast to that of substantially all of the other similarly situated LBB creditors with LBHI guaranties ("**LBB/LBHI Creditors**"),[6] who accepted the earlier made LBB distribution that paid them in full.

3.    There was no "business reason" for Trinity's refusal to accept a Euro distribution from LBB.  The so-called "withholding tax" issue is an after-the-fact contrivance.  LBB had made many distributions prior to August 2015.  In each case, withholding tax had been deducted from the LBB distribution with respect to the claims held by Trinity.  *See* Garza Declaration, ¶ 13.  Not only did Trinity not object to the withholding deduction then, it does not object to it now.[7]  In fact, the withholding tax issue was not raised by Trinity until months ***after*** it wrongfully refused the LBB distribution in Euros.[8]  *See id.*, ¶ 33.  Most revealing was Trinity's "suggestion," at the time of the LBB distribution, that the controversy it had created could be resolved if Trinity was paid in U.S. dollars instead of Euros.  *See id.*, ¶ 28, and Exhibit "E" attached thereto.

4.    There was never any mystery as to how much was owed to Trinity.  Shortly before the LBB distribution was to be made, Trinity acknowledged the balance owed to it by LBB.  *See* Garza Declaration, ¶¶ 23-24.  Moreover, there had been prior distributions on the Trinity claims, and there never were any objections to the distribution amounts (including the withholdings made).

---

[6]    Over 40 LBB/LBHI Creditors (with claims totaling over € 8.7 billion) accepted the LBB distribution that Trinity refused to accept.

[7]    *See* Motion, at ¶ 27 (Trinity "is not seeking to have LBHI cover the Prior Withholdings").

[8]    There is no issue that LBB was authorized to deduct withholding taxes from Trinity's distributions.  Any dispute as to the amount withheld is one that Trinity must raise with the German taxing authority (not LBB).  Trinity has applied for, and received or will receive, any tax refund that is due to it.

DMSLIBRARY01\28824846.v1

5.      Tellingly, substantially all of the LBB/LBHI Creditors signed the simple, straight forward Confirmation that Trinity wrongfully refused to execute.  *See Garza Declaration*, ¶ 31. The "paid in full" Confirmation was necessary for two reasons: (1) by acknowledging the LBB direct claim was satisfied, it effectively eliminated the potential overpayment/disgorgement risk for LBB and LBHI, and (2) once the LBB direct claim was paid in full, LBHI, through its subrogation rights, would then become the claimant and entitled to the next distributions from LBB.  The German Court Clerk requested a clear "paid in full" Confirmation in order to effectuate the change in payee for future LBB distributions to LBHI.

6.      Precisely for these reasons, LBB distributions were structured to always precede the LBHI Plan distributions by approximately one month.  It was contemplated that LBB/LBHI Creditors would be paid in full by the combination of distributions made by LBB and LBHI.  At the cross-over "paid in full" point, the LBB/LBHI Creditor needed to acknowledge that its debt was repaid in order to avoid the potential overpayment/disgorgement scenario, and to receive the payment to trigger the subrogation rights of LBHI.

7.      LBHI is, by far, LBB's largest creditor.  Trinity's improper actions (a) has caused LBHI to unnecessarily incur expenses in responding to this Motion; (b) may ultimately affect the closing of the case and final distributions to LBHI because Trinity has not withdrawn three direct non-guaranteed claims it had against LBB, which it had agreed to withdraw; and (c) have delayed subrogation distributions to LBHI because Trinity's claims should have been paid in full over six months ago.

8.      Simply denying the Motion is not sufficient. In addition to such relief, LBHI asks the Court to enforce the LBHI Plan by deeming Trinity's guaranty claims against LBHI to be satisfied and effectively assigned to LBHI, and barring Trinity from pursuing any further

4

distributions from LBHI on account of such claims.  The Court should also suspend all LBHI payments to Trinity on account of their direct claims against LBHI until Trinity has tendered to LBB the necessary documentation with respect to the three Denied Claims and the Additional Denied Claims (each term as defined below).  Finally, damages should also be awarded to LBHI to compensate it for Trinity's improper actions.

## BACKGROUND

A.    **LBHI, the LBHI Plan and the Treatment of Allowed Guarantee Claims**

9.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the Bankruptcy Code.    *See* Garza Declaration, ¶ 2.  On December 6, 2011, the Court entered an Order confirming the LBHI Plan. *Id.*

10.    Pursuant to Section 8.3 of the LBHI Plan, LBHI made its initial distribution to holders of allowed general unsecured claims in April 2012, and has made subsequent distributions every six months thereafter, at or around March 30 and September 30 of each year. *See* Garza Declaration, ¶ 3, and Exhibit "A" attached thereto.  The LBHI Plan distributions are in U.S. dollars. *Id.*

11.    Section 8.13(a) of the LBHI Plan provides that Allowed Guarantee Claims are deemed satisfied in full if the holder of such Allowed Guarantee Claims receives distributions from LBHI and distributions and/or other consideration (including taxes withheld) on account of the primary claims that equal the allowed amount of the Guarantee Claims. *See id.*, ¶ 4.  In addition,

> [t]o the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan

5

to the extent of LBHI's Distribution on account of such Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof.

*Id.* Section 8.13(b) of the LBHI Plan makes clear that the holder of an Allowed Guarantee Claim cannot receive, from all sources, more than the allowed amount of the Guarantee Claim. *Id.*

12.    Section 8.13(d) of the LBHI Plan provides as follows:

For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date.

The applicable exchange rate on the Confirmation Date was 1.3402. Since the Confirmation Date, the U.S. dollar has strengthened in comparison to the Euro.

13.    If LBHI recovers any portion of distributions made on account of Allowed Guarantee Claims (either by way of subrogation, disgorgement or otherwise), the amount recovered is treated as Available Cash of LBHI, and distributed to creditors. *See* LBHI Plan, § 8.13(f).

B.    **LBB, Its German Insolvency Proceeding and the Harmonizing Resolution**

14.    On November 12, 2008, the German banking regulator filed insolvency proceedings against LBB, and on November 13, 2008, the local court of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as the LBB Insolvency Administrator ("**LBB Administrator**"). *See* Garza Declaration, ¶ 7. The LBB Administrator commenced making distributions (in Euros) to holders of allowed claims in October 2010. *Id.*

15.    On November 19, 2014, LBHI and LBB entered into an agreement ("**LBHI/LBB Agreement**") that provided, among other things, for (i) creditor assembly resolutions ("**Creditor Assembly Resolutions**") that resolved conflicting insolvency law issues, and (ii) the main

6

content of bilateral agreements ("**Bilateral Agreements**") to be concluded between LBHI and LBB/LBHI Creditors (including Trinity). The agreed-upon issues set forth in the Creditor Assembly Resolutions, Bilateral Agreements and the LBHI/LBB Agreement are collectively referred to as the "**Harmonizing Resolution**." *See* Garza Declaration, ¶ 8.

16.     The LBHI/LBB Agreement discusses, *inter alia*, the terms of distributions by LBHI and LBB on allowed claims, stating that LBB distributions will occur prior to the LBHI Plan distributions. *Id.*, ¶ 9. Distributions made by LBB are to be made on a semiannual basis on or about February 28 and August 30 of each year. *Id.* Under the LBHI Plan, distributions are made on a fixed schedule (*see* LBHI Plan, § 8.3), approximately one month later.

17.     A stated goal of the Harmonizing Resolution was to ensure that no group of creditors or individual creditor is able to obtain an advantage (neither a procedural nor a tactical one). *See* Garza Declaration, ¶ 10.

18.     The economic objective of the Harmonizing Resolution was that all creditors recover 100% of their claims. *Id.*, ¶ 11. The direct claims were against LBB and therefore were denominated in Euros; the recovery on such claims was tied to the Euro denominated amounts allowed by LBB.

**C.     Trinity, Its Claims and Its Agreement with LBHI**

19.     Trinity holds direct claims against LBB, denominated in Euros, based on contractual obligations of LBB ("**Trinity Direct Claims**"). Trinity also holds claims against LBHI based on guarantees of the obligations underlying the Trinity's Direct Claims ("**Trinity Guarantee Claims**"). *See* Garza Declaration, ¶ 12.

20.     Between October 2010 and July 2015, distributions on direct claims against LBB were made by the LBB Administrator. *See id.*, ¶¶ 13. As part of each distribution, the LBB

Administrator, pursuant to German law, and after consultation with his tax advisers, withheld from the interest component of such claims a 25% withholding tax and an additional 5.5% surcharge in connection with the withholding tax.  *Id.*

21.     Trinity never objected to this procedure, and affirmatively states in the Motion that it "is not seeking to have LBHI cover the Prior Withholdings."  Motion, ¶ 27; *see also* Bour Declaration, at ¶ 33 ("Trinity is not seeking to have LBHI cover the Prior Withholdings, which Trinity continues to pursue with the German tax authorities.").

22.     During negotiations between LBHI and Trinity in 2014 in connection with entering into a Bilateral Agreement, the parties discussed the resolution of various disputed claims against LBB.  *See* Garza Declaration, ¶ 15.  In order to reach a resolution, LBHI agreed to allow certain direct claims in LBHI's bankruptcy case in lieu of LBB allowing certain corresponding denied claims in LBB's insolvency proceeding.  *Id.*

23.     On November 24, 2014, LBHI and Trinity entered into a Bilateral Agreement ("**Trinity Bilateral Agreement**"), which, among other things, provided as follows:

- Trinity agreed to the Harmonizing Resolution and to vote in favor of the Creditor Assembly Resolutions;

- Once the Creditor Assembly Resolutions were approved by the requisite majority of LBB's creditors, the Trinity Guarantee Claims would be allowed in LBHI's bankruptcy case "and shall be entitled to receive distributions under the plan (in addition to distributions from LBB in respect of the [Trinity Direct] Claims);

- Trinity agreed that it would be liable to LBHI "for the disgorgement of any distributions or other consideration received by [Trinity] on account of any [Trinity Guaranteed Claim] . . . to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to [Trinity] or any previous holder on account of any portion of the related [Trinity Direct] Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such [Trinity] Guarantee Claim."  (¶ 9);

- Trinity agreed to accept an amount ("**Quota Cap**") equal to the USD amount of each allowed Trinity Guarantee Claim (provided that any EUR distributions to it would be converted to USD applying an exchange rate of 1.3402 (¶ 10(a)); and

- Once Trinity receives payment of the Quota Caps in connection with the Trinity Direct Claims, all of its rights in the Trinity Direct Claims were deemed assigned to LBHI, and no further distributions would be made on the Trinity Guarantee Claims. (¶ 10).

*See* Garza Declaration, ¶ 16, and Exhibit "B" attached thereto.

24.     Around the time that Trinity and LBHI entered into the Trinity Bilateral Agreement, over 40 other LBB/LBHI Creditors entered into similar Bilateral Agreements with LBHI. *See id.*, ¶ 17.

25.     On November 24, 2014, the Harmonizing Resolution was approved by the requisite number of LBB's voting creditors, *including Trinity*, and the Trinity Bilateral Agreement and the other Bilateral Agreements went into effect. *See id.*, ¶ 18.

26.     Pursuant to the agreement reached between Trinity and LBHI in connection with the Trinity Bilateral Agreement, Trinity was to withdraw 19 denied claims against LBB totaling €34,595,584.10. *See id.*, ¶ 19. However, due to an apparent "clerical" error, the letter ("**Withdrawal Letter**") provided by Trinity to withdraw these claims against LBB only listed 18 claims; one claim (LBB claim number § 38-562) in the amount of €1,898,699.54 ("**Omitted Claim**") was not set forth in the letter. *See* Garza Declaration, ¶ 19 and Exhibit "C" attached thereto. The Withdrawal Letter was ultimately submitted to the German court clerk (who maintains the LBB claims register), and the 18 denied claims included therein were removed. After submission of the Withdrawal Letter, Trinity has been asked several times to, but has not withdrawn the Omitted Claim despite its prior agreement to do so. *Id.* Trinity has also failed to submit assignment information to facilitate the withdrawal of a denied LBB claim (LBB claim

DMSLIBRARY01\28824846.v1

number § 38-707) totaling €1,811,541.00 ("**Unassigned Claim**").  *Id.*  Moreover, Trinity has also failed to withdraw and provide an assignment form for a third claim (LBB claim number § 38-725) totaling €1,986,239.42 ("**Omitted/Unassigned Claim**," and with the Omitted Claim and the Unassigned Claim, the "**Denied Claims**").  *Id.*  Trinity knows that its failure to deliver these documents for the three Denied Claims may frustrate and delay winding up LBB.  Trinity's actions have harmed the LBHI estate.

27.     Moreover, once the Trinity Direct Claims are paid the Quota Caps, and the allowed guaranteed claims against LBB are assigned to LBHI, Trinity is obligated to assign an additional denied claim (approximately €10.37 million; LBB claim number § 38-083) ("**Additional Denied Claim**") against LBB to LBHI.  *See* Garza Declaration, ¶ 20.  Since Trinity should have accepted the LBB Sixth Distribution, the Additional Denied Claim should be assigned to LBHI now.

### D.    The LBB Sixth Distribution and Trinity's Refusal to Accept Same

28.     Upon information and belief, until August 2015, Trinity received and did not raise any issues with respect to distributions from LBB and LBHI on account of the Trinity Direct Claims and the Trinity Guarantee Claims.  *See* Garza Declaration, ¶ 21.

29.     In August 2015, LBB determined that it had sufficient funds to make a distribution ("**LBB Sixth Distribution**") including to Trinity and other LBB/LBHI Creditors subject to the Harmonizing Resolution, in amounts that would satisfy the Quota Caps for all allowed guaranteed claims in full (including the Trinity Direct Claims).  *Id.*, ¶ 22.  In connection with the LBB Sixth Distribution, LBB sent Quota Cap schedules to these claimants, including Trinity, showing the exact amounts that they would receive in the LBB Sixth Distribution, and requested confirmation that such amounts would be sufficient to reach the Quota Caps.  While

DMSLIBRARY01\28824846.v1

Trinity raised a clarifying question regarding one Trinity Direct Claim (that was subsequently resolved), Trinity confirmed that the amounts set forth in the schedules distributed to claimants with the LBB Sixth Distribution "tie in with our expectations." *See* Garza Declaration, ¶ 23 and Exhibit "D" attached thereto.  Trinity did not raise any issues or complain about the taxes previously withheld from prior distributions.

30.    On September 1, 2015, Trinity reconfirmed the accuracy of the Quota Cap schedules. *See* Garza Declaration, ¶ 24 and Exhibit "E" attached thereto.  Again, Trinity did not raise any issue with respect to taxes previous withheld from prior distributions.

31.    In order to appropriately administer the LBB insolvency proceeding, and for LBB to ensure that the LBB Sixth Distribution to Trinity would have resulted in Trinity receiving the Quota Caps for the Trinity Direct Claims (and exiting the LBB insolvency proceeding), Trinity was required to complete the following three forms: (i) a one-page confirmation ("**Confirmation**"), confirming that the amount Trinity was to receive in the LBB Sixth Distribution was sufficient to satisfy the Quota Caps; (ii) a bank information form, which required that Trinity certify its wiring instructions; and (iii) a withholding tax form, which required Trinity certify its withholding tax status under German law.    *See* Garza Declaration, ¶ 25.

32.    Creditors similarly situated to Trinity who had taxes withheld from their distributions were also required to complete these three forms. *See id.*, ¶ 31.  All other LBB/LBHI Creditors holding allowed guaranteed claims that were also subject to German tax withholdings (12 in number) executed the required forms, including the Confirmation, obtained their final distributions that reached their Quota Caps, and exited the LBB insolvency proceeding. *Id.*  In total, over 40 LBB/LBHI Creditors holding guaranteed claims signed the

11

requisite forms, were paid in full, assigned their guaranteed claims to LBHI and have exited the LBB proceeding.[9] *Id.*

33.    The LBB Sixth Distribution was initiated on September 4, 2015 (and is continuing to this day). *See* Garza Declaration, ¶ 28. While Trinity stated that it had no objection to providing the bank information and tax withholding forms, it refused without explanation to execute the Confirmation. *See* Bour Declaration, ¶¶ 24-27. Given this refusal, LBB had no choice but to refrain from making the LBB Sixth Distribution to Trinity. *See* Garza Declaration, ¶ 30. Nonetheless, LBB stands ready to make the LBB Sixth Distribution to Trinity once the required forms are submitted.[10]

34.    While not providing a reason for not executing the Confirmation in the Fall of 2015, Trinity did request on September 7, 2015 that LBB make the LBB Sixth Distribution to it in U.S. dollars. *See* Garza Declaration, ¶ 28 and Exhibit "E" attached thereto. LBB informed Trinity at that time that it could not do so as all LBB distributions were required to be made in Euros under German insolvency law. *Id.*

35.    Both LBHI and LBB attempted to contact Attestor (the manager of the Trinity funds) in September 2015 to inquire if Trinity had any objections to the Confirmation, and ask why Trinity had not submitted the three required forms to facilitate the LBB Sixth Distribution. Attestor did not respond. *See id.,* ¶ 29. LBHI sent an e-mail correspondence to Attestor on September 14, 2015, seeking confirmation that it agreed with the Quota Cap schedules and final distribution amount. *See* Garza Declaration, ¶ 29 and Exhibit "F" attached thereto. Thereafter,

---

[9]    The only other creditor that did not execute the required forms, including the Confirmation, was Deutsche Bank AG, London Branch ("**DB**"). LBHI and LBB are proceeding separately against DB to compel it to accept the LBB Sixth Distribution.

[10]    LBB has reserved the amount due Trinity pursuant to the LBB Sixth Distribution.

DMSLIBRARY01\28824846.v1

LBHI had two conversations with Attestor about the Confirmation in October 2015.  *Id.*  Attestor claimed, without any explanation, that the Confirmation was "onerous."  *Id.*  The tax withholding issue was never mentioned.  *Id.*

36.    Trinity did not explain its "tax withholding" objection to the Confirmation to LBHI until March 2016.  *See* Garza Declaration, ¶ 33.  For the first time—and even though it previously confirmed, *twice*, that the amounts set forth in the Quota Cap schedules for the LBB Sixth Distribution were satisfactory—Trinity asserted that it could not confirm that the LBB Sixth Distribution would be the final payment because it was "unable to confirm that the Prior Withholdings will be, or that the Total Withholdings would be, properly refunded or credited to Trinity."  *See id.*, ¶ 33; *see also* Bour Declaration, ¶ 26.

37.    Trinity's belated concern regarding the withholding tax issue is a *non-sequitir*. Trinity acknowledges that it has already requested a tax refund.  *See* Motion, ¶ 20.  In this regard, LBB provided Trinity with the withholding information and forms requested by Trinity regarding previous distributions so that it could submit the refund request.  *See* Garza Declaration, ¶ 14. Whether a tax refund will be processed or not is a matter between Trinity and the German taxing authority.  It has nothing to do with LBB, which fulfilled its obligation to Trinity by making the distribution to it, remitting the withholding taxes to the appropriate taxing authority and providing the requested forms and information to facilitate Trinity's refund request.

38.    After refusing to execute the Confirmation and accept the LBB Sixth Distribution, in October 2015, Trinity, through Attestor, demanded that LBHI make a distribution to Trinity in U.S. dollars on account of the Trinity Guarantee Claims.  *See* Garza Declaration, ¶ 32.  This would have required LBHI to convert the final amount LBB would have paid on the Trinity

Direct Claims from Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan, which would have resulted in a windfall of over $1 million to Trinity at the expense of LBHI's other creditors. *Id.* LBHI refused to make the Trinity distribution, and has filed the Cross-Motion to have the Trinity guaranty claims be deemed satisfied and assigned to LBHI pursuant to the LBHI Plan.

## ARGUMENT

### TRINITY'S MOTION SHOULD BE DENIED BECAUSE TRINITY IS NOT ENTITLED TO ANY FURTHER DISTRIBUTIONS FROM LBHI

**A.    The Undisputed Facts Demonstrate that Trinity Wrongfully Manufactured An Excuse To Reject The LBB Sixth Distribution**

39.    LBHI agrees with Trinity in one respect:  the question before this Court is simple. Trinity, however, is asking the wrong question.  The dispositive question is whether a creditor can refuse to accept a valid distribution from its primary debtor by concocting a meritless excuse so that it can force a distribution from a secondarily liable debtor at an advantageous currency exchange rate.  The answer is clearly no.

40.    It is undisputed that Trinity approved the Harmonizing Resolution, which provided that distributions from LBB on account of the Trinity Direct Claims would be made approximately one month *before* distributions would be made by LBHI on account of the Trinity Guarantee Claims.  This was done to ensure that LBB, if feasible, would make the final payment to Trinity in order to reach the Quota Caps, and that LBHI would not be required to make a distribution which would ultimately have to be disgorged.

41.    Trinity has conceded that taxes withheld are part of the overall distribution received by it and counted towards the Quota Caps.  Any issue relating to whether withholding taxes should be refunded is between Trinity and the taxing authority.  LBB is not part of that

14

process. On information and belief, Trinity previously accepted all other distributions, net of the applicable taxes, without complaint or dispute. In fact, Trinity readily concedes in its Motion that it is ***not*** seeking to recapture the Prior Withholdings.

42.    Trinity's refusal to execute the Confirmation that simply acknowledged the accuracy of the final amount due was unreasonable. Contrary to Trinity's argument, the Confirmation was not onerous. It was a one-page form that set forth the remaining balance owed to Trinity, and asked Trinity to confirm the amount (as it had done via e-mail twice before). Over 40 other LBB/LBHI Creditors signed their Confirmation.[11]

43.    The execution of the Confirmation was necessary for the administration of the LBB insolvency proceeding. Sufficient evidence of the satisfaction of the Trinity Direct Claims was needed (i) so the German Court Clerk could easily determine that the Quota Caps for the Trinity Direct Claims had been reached, and that Trinity would be exiting the German insolvency proceedings, and (ii) to facilitate the payment to Trinity and the registration of the assignment of the Trinity Direct Claims to LBHI in the official German Court Clerk's claims register for LBB. Absent the Confirmation, it would have been difficult for the German court clerk to accurately maintain the LBB claims register.

44.    Essentially, LBB offered to tender to Trinity the agreed-upon remaining balance owed on the Trinity Direct Claims through the LBB Sixth Distribution, and Trinity unreasonably refused to accept such distribution. Under New York law, the tender of payment and the refusal to accept the payment constitutes performance. *See JPMorgan Chase Bank, N.A. v. Meritage Homes Corp.,* No. 2:11-CV-01364-PMP, 2012 WL 3809235, at *11 (D. Nev. Sept. 4,

---

[11]    If Trinity truly had an issue with the Quota Cap amounts, then it would have been unreasonable to require LBHI to make further distributions until the issue was resolved. In any event, Trinity has had eight months to confirm the amounts owed. It never provided to LBB or LBHI a different sum than what is in the Quota Caps.

DMSLIBRARY01\28824846.v1

2012)(quoting *Kortright v. Cady*, 7 E.P. Smith 343, 1860 WL 7852, at *1 (N.Y. 1860))(applying New York law). "Consequently, where the obligation is to pay money, if the obligee refuses tender of payment by the primary obligor, both the underlying obligation and the secondary guaranty obligation are discharged as if satisfied by payment." *Id.* (citing Restatement (Third) of Suretyship & Guaranty § 46); *see also* 23 WILLISTON ON CONTRACTS § 61.28 (4th ed. May 2015) (also citing to Section 46 of the Restatement (Third) of Suretyship and Guaranty). The LBB Sixth Distribution would have paid Trinity in full; Trinity's refusal to accept the distribution constitutes a discharge of any remaining guaranty obligation owed by LBHI. The Cross-Motion seeks such relief.

45.   Trinity's actions directly affect LBHI's other creditors in tangible ways. Forty-three other guarantee creditors of LBB (with claims totaling over €8.7 billion), including all of those with taxes withheld by LBB, have executed their Confirmations, have received their LBB Sixth Distribution and have exited the LBB insolvency proceedings. *See* Garza Declaration, ¶ 34. Such creditors have assigned their claims against LBB to LBHI, and LBHI has been receiving and will continue to receive future distributions from LBB on account of such assigned claims, which will inure to the benefit of LBHI's other creditors. *Id.* By withholding the Confirmation and not accepting the LBB Sixth Distribution, LBHI has not been assigned the Trinity Direct Claims (even though Trinity would have been paid in full thereon), and LBHI cannot obtain further distributions from LBB on account of such claims, the proceeds of which would be passed on to LBHI's creditors.

B.   **Trinity's Action Have Harmed LBHI**

46.   Trinity's conduct in refusing to execute the Confirmation so that LBB could make a final distribution to it is just one example of Trinity's improper actions. Trinity has also

16

refused to withdraw the Omitted Claim and Omitted/Unassigned Claim, and has not fully caused the assignment of the Unassigned Claim and Omitted/Unassigned Claim in an apparent effort to maintain leverage in these proceedings. *See* Garza Declaration, ¶ 19. These actions may ultimately delay the winding up of LBB and its final distributions, the majority of which will flow to LBHI. Trinity should be held accountable for its improper actions. At a minimum, LBHI should be relieved of making any further distributions to Trinity until Trinity has provided LBB the necessary documentation relating to the Denied Claims and the Additional Denied Claim. Moreover, Trinity should compensate LBHI for the damages incurred based on its improper actions, including responding to the Motion.

**C.    The Guarantees Are Moot in Light of the Terms of the LBHI Plan, The Trinity Bilateral Agreement and the Harmonizing Resolution**

47.    Trinity's argument regarding the guarantees is a red-herring. While the form guarantees attached to the Bour Declaration are guarantees of payment and not collection, the guarantees effectively were superseded when the LBHI Plan was confirmed, and Trinity authorized the Harmonizing Resolution and entered into the Trinity Bilateral Agreement. These agreements are now the operative documents and take the place of the terms of the guarantees. Paragraph 19 of the Trinity Bilateral Agreement expressly provides that such agreement supersedes the prior agreements regarding the Trinity Guarantee Claims.

**D.    The Cross-Motion Should Be Granted**

48.    Pursuant to Section 1142(b) of the Bankruptcy Code, the Court may enter any necessary order relating to the consummation of the LBHI Plan. The Cross-Motion seeks to implement the LBHI Plan by deeming the Trinity guaranty claims against LBHI satisfied and assigned to LBB. In addition, it seeks to enforce the Trinity Bilateral Agreement by requiring

17

Trinity to deliver such documents as necessary with respect to the three Denied Claims and the Additional Denied Claim.  Finally, the Cross-Motion seeks damages against Trinity for failing to comply with its agreements with LBHI, as substantially all other LBB/LBHI Creditors have done.

## CONCLUSION

49.    LBB stands ready, willing and able to transmit to Trinity the LBB Sixth Distribution (*i.e.*, €5,093,728.95, less any tax withholdings) on account of the Trinity Direct Claims upon execution of the Confirmation.  LBHI stands ready to buy the Trinity Claims for the Euro amount due. Trinity should execute the Confirmation, confirm that the amount listed therein (*i.e.*, €5,093,728.95) is sufficient to meet the Quota Caps for the Trinity Direct Claims, and accept the LBB Sixth Distribution.  If it continues to refuse to do so, the Court should enforce the LBHI Plan by deeming Trinity's guaranty claims against LBHI to be satisfied and effectively assigned to LBHI, and barring Trinity from pursuing any further distributions from LBHI on account of such claims.  In addition, the Court should suspend all LBHI payments to Trinity on account of their direct claims against LBHI until Trinity has tendered to LBB the necessary documentation with respect to the three Denied Claims and the Additional Denied Claim.  Finally, damages should also be awarded to LBHI to compensate it for Trinity's improper actions.

DMSLIBRARY01\28824846.v1

WHEREFORE, LBHI respectfully request that the Court enter the proposed order attached hereto as **Exhibit "1,"** (i) denying the relief requested in the Motion, (ii) granting the relief requested in the Cross-Motion, and (iii) granting such other and further relief to LBHI as it deems just and proper.

Dated: April 20, 2016
      New York, New York

                                      ___/s/ Arthur Steinberg_____
                                      Arthur Steinberg
                                      Scott Davidson
                                      KING & SPALDING LLP
                                      1185 Avenue of the Americas
                                      New York, New York 10036
                                      Telephone: (212) 556-2100
                                      Facsimile: (212) 556-2222

                                      *Counsel for Lehman Brothers Holdings Inc.*

DMSLIBRARY01\28824846.v1

# **Exhibit 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                      :
In re                                                 :        **Chapter 11**
                                                      :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,          :        **Case No.: 08-13555 (SCC)**
                                                      :
                          **Debtors.**                :        **(Jointly Administered)**
                                                      :
-------------------------------------------------------------------x

### ORDER (I) DENYING MOTION OF TRINITY INVESTMENTS LIMITED TO COMPEL OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS, AND (II) GRANTING CROSS-MOTION FILED BY LEHMAN BROTHERS HOLDINGS INC. TO ENFORCE THE LBHI PLAN AND OTHER ANCILLARY RELIEF

Upon the *Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims*, dated March 22, 2016 ("**Motion**"), filed by Trinity Investments Limited ("**Trinity**"); and upon the *Amended Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims And Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief*, dated April 20, 2016 ("**Objection/Cross-Motion**");[1] and a hearing (the "**Hearing**") having been held with respect to the Motion and Objection/Cross-Motion on May 10, 2016; and upon the record of the Hearing, the Court having found and determined that the legal and factual bases set forth in the Objection/Cross-Motion establish just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefore, it is therefore:

    1.     The Motion is DENIED in all respects.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection/Cross-Motion.

2.      The relief requested in the Objection/Cross-Motion is GRANTED as provided herein.

3.      Trinity is hereby directed to execute all documentation required by the LBB Administrator to receive the LBB Sixth Distribution and deliver same to the LBB Administrator, including without limitation, the Confirmation, within five (5) business days of the entry of this Order.  Among other things, the Confirmation will acknowledge that the amount listed therein (*i.e.*, €5,093,728.95) is sufficient to meet the Quota Caps for the Trinity Direct Claims.

4.      Trinity shall accept the LBB Sixth Distribution from LBB in Euros.  Trinity shall be deemed to have assigned to LBHI the Trinity guaranteed claims upon its receipt of the LBB Sixth Distribution.

5.      Trinity shall be barred and enjoined from pursuing any further distributions from LBHI on account of the Trinity Guarantee Claims.

6.      All distributions to Trinity on account of any of its direct claims against LBHI shall be suspended until Trinity has tendered to LBB all necessary documentation with respect to the three Denied Claims and the Additional Denied Claim.

7.      This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to this Order, including making a determination of the amount of costs and reasonable attorneys' fees to be awarded to LBHI on account of Trinity's improper actions as detailed in the Objection/Cross-Motion, at a hearing to be scheduled by the Court upon the filing of a separate application by LBHI.

Dated: May __, 2016
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE