Hearing Date/Time: May 5, 2016, 2:00 p.m. (Prevailing Eastern Time)

K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901
Lani A. Adler

COHNE KINGHORN, P.C.
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
George Hofmann

*Attorneys for iFreedom Direct Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |

**iFREEDOM DIRECT CORPORATION'S OBJECTION TO MOTION OF LEHMAN
BROTHERS HOLDINGS INC. TO ENFORCE THE AUTOMATIC STAY, THE PLAN,
AND THE CONFIRMATION ORDER AGAINST iFREEDOM DIRECT
CORPORATION AND SECURITYNATIONAL MORTGAGE COMPANY**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

iFreedom Direct Corporation ("iFreedom"), through its undersigned counsel, in response to the motion [ECF No. 52076] (the "Motion") filed by Lehman Brothers Holdings, Inc. ("LBHI") to enforce the automatic stay, the Plan, and the Confirmation Order against iFreedom, respectfully represents as follows:[1]

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

-1-

**PRELIMINARY STATEMENT**

This Court must deny the Motion because LBHI did not possess its purported right to "contractual indemnification" against iFreedom until the GSE settlements were consummated in 2014. This Court specifically found this in its Hometrust decision: "LBHI possessed no such right [to indemnification] until it paid Fannie Mae. Prior to that time, the right belonged only to Fannie Mae." Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co. (In re Lehman Brothers Holdings, Inc.), 530 B.R. 601, 612 (Bankr. S.D.N.Y. 2015) (emphasis supplied).

Accordingly, iFreedom could not have filed its Utah declaratory relief action against LBHI until 2014, more than five years after its bankruptcy filing, when it first received a ADR demand letter from LBHI. Thus Bankruptcy Code § 362(a)(1), which precludes the commencement of litigation that could have been filed pre-petition, has no application to this dispute.

Further, Bankruptcy Code § 362(a)(3) does not apply for three independent reasons. First, the purported causes of action at issue in this case were not acquired by LBHI until 2014, more than two years after plan confirmation. Accordingly, these purported causes of action are not property of the estate entitled to the protection of Bankruptcy Code § 362(a)(3). Second, the stay applicable under Bankruptcy Code § 362(a)(3) terminates upon plan confirmation. Third, the stay under Bankruptcy Code § 362(a)(3) is not intended as an offensive litigation weapon, usable by reorganized debtors to litigate post-confirmation disputes in LBHI's venue of choice. Case law has rejected efforts by reorganized entities to use the automatic stay as a means to prevent litigation against them in perpetuity.

# FACTS

**Summary timeline**

The timing of LBHI's acquisition of the purported "contractual indemnification" claims against iFreedom is dispositive of this matter. A table summarizing this timing is below; and the relevant facts demonstrating this timing follows the table. Importantly, "LBB" in this table refers to non-debtor Lehman Brothers Bank.

| | Time period | Event | Alleged Claim Holder |
|---|---|---|---|
| 1. | 2005-2006 | Loans brokered/ sold to LBB | LBB |
| 2. | Before 9/15/08 | Loans purportedly sold by LBB to LBHI | LBHI |
| 3. | Before 9/15/08 | Loans purportedly sold by LBHI to GSEs | GSEs |
| 4. | 9/22/09 | GSEs file proofs of claim in LBHI bankruptcy | GSEs |
| 5. | 12/6/11 | LBHI bankruptcy plan confirmed | GSEs |
| 6. | 3/6/12 | LBHI bankruptcy plan becomes effective | GSEs |
| 7. | 1/31/14 | Fannie Mac settlement approved | GSEs |
| 8. | 2/19/14 | Freddie Mac settlement approved | GSEs |
| 10. | After 2/19/14 | Fannie/Freddie settlements implemented and rights transferred from Fannie/Freddie to LBHI | LBHI |

**Background Concerning iFreedom's Pre-Bankruptcy Interactions with Non-Debtor LBB**

iFreedom has entered into two relevant contracts with LBB. The first contract is a Broker Agreement dated July 9, 2004 (the "Broker Agreement"), and pursuant to the Broker Agreement iFreedom sent four residential mortgage loan applications to LBB – which LBB subsequently processed, underwrote, closed, and funded. iFreedom never owned or held any beneficial interest in these four loans. A copy of the Broker Agreement is attached as Exhibit A to the Declaration of Kevin Gates in Support of this Objection (the "Gates Declaration").

The second relevant contract is with LBB is a Loan Purchase Agreement dated July 8, 2004 (the "LPA"), and pursuant to the LPA, iFreedom originated two residential mortgage loans in 2006 and sold those loans to LBB. A copy of the LPA is attached as Exhibit B to the Motion. Although the LPA recites in the first paragraph that the counterparty is "Lehman Brothers Bank FSB", it defines that entity as "ALS", the signature block for the LPA is for "Aurora Loan Services", and the heading at the top of the LPA says "AURORA LOAN SERVICES A Lehman Brothers Company."

There are substantial legal differences between the Broker Agreement and the LPA. For example, the LPA purports to incorporate by reference LBB's Seller's Guide, which contains pages of representations and warranties regarding the loans to be purchased. Such provisions have no application whatsoever to the Broker Agreement. Under the latter, the broker would take an application and send it to LBB. LBB would then process the application according to its guidelines. It might elect to make the loan or deny the application. iFreedom's role with respect to the four brokered loans at issue is that it simply obtained loan applications that met the criteria of loan categories that LBB specifically sought in those years—"stated income" loans. Again, LBB processed the applications for these brokered loans, and based upon LBB's own verification, investigation, due diligence and underwriting, LBB approved, closed and funded the

brokered loans. The Broker Agreement specifically provides in paragraph 8: "It is expressly agreed that loan approval shall be within LBB's sole discretion and that Broker shall not represent that LBB has approved or will approve any loan until Broker is so informed in writing by LBB." iFreedom has never owned or held a beneficial interest in any of the four brokered loans.

Significantly, LBHI, a Delaware corporation, is not the counter-party to either of the contracts with iFreedom at issue in this case. The counter party to the Broker Agreement is non-debtor LBB. The counter party to the LPA is either non-debtor LBB, or perhaps "Aurora Loan Services", which is also a non-debtor. It is unclear to iFreedom how LBHI has standing to enforce rights under contracts to which it is not a party. Even more significantly, although LBHI filed a Chapter 11 bankruptcy petition and is subject to a confirmed plan of reorganization, that is not true of LBB. Indeed, LBB, as a federally chartered bank, is not eligible to file a bankruptcy petition. See Bankruptcy Code § 109(b) and (d).

iFreedom is, and was at all times, a Utah corporation with its principal place of business located in Salt Lake City, Utah. The six mortgage loans at issue related to borrowers in Utah, Arizona, California and Texas; the loans were secured by real property located in Utah, Arizona, Texas and Florida; were originated in branch or broker's offices in Utah or Arizona; and were directed to LBB through iFreedom's headquarters in Utah. The loans were closed in late 2005 to mid-2006. The individuals involved in processing these loans and in overseeing the relationships with LBB are in Utah and Arizona. Many of these individuals are no longer employed by iFreedom, and therefore are not subject to compulsory process in New York. The dispute between LBHI and iFreedom has no nexus at all with this Court, other than the happenstance of LBHI's filing of a Chapter 11 petition in this Court in 2008. iFreedom did file a proof of claim

in this case (attached as Exhibit B to the Gates Declaration). That proof of claim had nothing whatsoever to do with the loans at issue in this case. Indeed, the proof of claim pertains to unrelated loans in a pool of loans sold by LBHI to iFreedom, and then by iFreedom to Wells Fargo, and iFreedom has received distributions from LBHI on account of this claim.

**LBHI's Post-Confirmation Acquisition of Alleged Indemnification Claims**

LBHI's position on the facts underlying this dispute appears to shift depending on what is in dispute. For purposes of its statute of limitations argument in the Hometrust case, LBHI contended that it did not possess, and could not assert, its "contractual indemnification" claims until it acquired them from the GSEs in 2014. But this is plainly inconsistent with its apparent position on this Motion that iFreedom could have filed its declaratory relief complaints (seeking a declaration that LBHI had no entitlement to indemnification for the loans at issue) against LBHI in 2008 (otherwise Bankruptcy Code § 362(a)(1) could not apply to this case). LBHI cannot have it both ways. Its position attempts to capitalize upon the somewhat confusing fact that LBHI acquired purported rights to the loans at issue in this litigation twice, once years before its bankruptcy filing, and the second time *after* confirmation of its bankruptcy plan, as illustrated by the time line above. In between, the loans, including the right to sue iFreedom for alleged breaches of representations and warranties, belonged to the GSEs.

LBHI alleges that that the GSEs filed proofs of claim in its bankruptcy case. Motion at p. 7, ¶ 14. Although LBHI describes the GSEs' claims as including "among other things, 'alleged indemnity/reimbursement obligations' and 'indemnity claims' arising from the sale of mortgage loans . . ." (Motion at p. 7, ¶ 14) in fact the claims related to a variety of interactions and contractual relations between LBHI and the GSEs, much of which had nothing at all to do with mortgage loans. Subsequently, LBHI alleges that it reached settlements with the GSEs, which

-6-

settlements were subsequently approved by this Court.  Id.  LBHI gave iFreedom no notice of the claims asserted by the GESs, no opportunity to purchase the six loans at issue in this case, or any opportunity to participate in defending or resolving the claims of the GSEs.

LBHI alleges that its settlement with the GSEs triggered its "contractual indemnification" rights against iFreedom.  Motion at p. 2, ¶ 15.  Indeed, this Court specifically found in the Hometrust case that before the GSE Settlements were approved, LBHI had no rights against iFreedom relative to the loans; all such rights belonged only to the GSEs.  See Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co. (In re Lehman Brothers Holdings, Inc.), 530 B.R. 601, 612 (Bankr. S.D.N.Y., 2015) ("a cause of action for indemnification accrues when a party possesses a legal right to demand payment; *here, LBHI possessed no such right until it paid Fannie Mae.  Prior to that time, the right belonged only to Fannie Mae.*") (emphasis added).

This state of affairs, where the purported claims at issue in this case were owned by Fannie Mae and Freddie Mac, persisted until 2014 when the GSE Settlements were consummated.  At that point, the purported claims were transferred back by the GSEs to LBHI.  LBHI previously represented to this Court:  "After meeting its obligations under the Plan to compensate Fannie Mae and Freddie Mac for the defective loans, LBHI then acquired the contractual right to pursue the Indemnifications Claims against the Sellers."[2]  In reliance on this representation, this Court approved the ADR Procedures Motion.  LBHI is now judicially estopped from taking an inconsistent position.

Indeed, the settlement agreements between LBHI and the GSEs, dated January 23, 2014 and February 12, 2014, made clear that LBHI acquired, through assignments contained within these settlements, claims and causes of action against iFreedom and similarly situated loan

---

[2] Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, dated May 29, 2014 (the "ADR Procedures Motion") [ECF No. 44450] at ¶ 12 (emphasis added).

brokers and originators. Paragraph 5 of LBHI's settlement agreement with Fannie Mae states in part:

> 5.  *Assignment of Rights/No Waiver of Defenses.* Fannie Mae hereby sells, assigns, and otherwise transfers to LBHI any claims related to the Rep and Warranty Default Loans listed on Exhibit B that Fannie Mae holds against any originating lenders, secondary mortgage market seller, borrowers, appraisers, brokers, title companies, escrow agents, insurers, and/or other third parties in connection with the Rep and Warranty Default Loans . . ."

Motion of Lehman Brothers Holdings Inc. Pursuant to Bankruptcy Rule 9019 for Approval of Settlement Agreement Regarding Claim of Federal National Mortgage Association [ECF No. 42153], Annex A (Settlement Agreement) at § 5; see also Motion of Lehman Brothers Holdings, Inc. Pursuant to Bankruptcy Rule 9019 for Approval of Settlement Agreement Regarding Claims of Federal Home Loan Mortgage Corporation [LBHI Bankruptcy ECF No. 42754], Annex A (Settlement Agreement) at § 2.2.

Thus, it is abundantly clear that LBHI acquired the alleged "contractual indemnification" claims which are at issue in this case sometime after February 2014. Importantly, LBHI's Chapter 11 plan of reorganization was confirmed in December 2011, and became effective in March 2012.

**Procedural History**

In late 2014, many years after the six loans at issue closed, iFreedom received ADR demand letters for payment of over a million dollars to LBHI related to these six loans. No actions were filed. Before receiving these demand letters in late 2014, iFreedom had no idea that LBHI would assert claims against iFreedom related to these six loans. Gates Declaration ¶ 6.

In an attempt to resolve their differences, the parties attempted mediation in September 2015 pursuant to this Court's ADR procedures. The mediation failed.

Three months later, in December 2015 iFreedom filed five separate complaints against LBHI in the United States Bankruptcy Court for the District of Utah (the "Utah District Court") to determine that LBHI's claims against iFreedom were precluded by applicable statutes of limitation, and also to determine that iFreedom had no contractual or other obligation to indemnify LBHI with respect to these six loans. Copies of the complaints in these cases are attached as Exhibits F-J to the Motion. Through the complaints iFreedom requests only declaratory relief; it does not seek a money judgment against LBHI.

Subsequently, those five cases were consolidated by the Utah District Court into a single dispute (the "Utah Case"). There is presently a pending motion by LBHI in the consolidated Utah Case to stay that case in favor of the later-filed New York case against iFreedom. That motion to stay is fully briefed and ready for decision by the Utah District Court.

About a week after iFreedom filed its complaints in the Utah District Court, LBHI filed its own complaint against iFreedom in this Court, commencing adversary proceeding number 15-51670. This complaint relies on a substantially different broker agreement than iFreedom has described above. This is the same broker agreement attached as Exhibit C to the Motion, dated September 27, 2005, which is unsigned (the "Unsigned Agreement"). LBB never signed the Unsigned Agreement, which explicitly provides on the last page: "the parties agree that this Agreement will only become effective on the date on which Lender executes the Agreement as set forth below. This Agreement shall not be effective until so executed by Lender." The Unsigned Agreement is of no force or effect by its own terms.

Without detailing all of the material differences between the Broker Agreement and the Unsigned Agreement, iFreedom highlights the following five differences that are particularly salient to the parties' dispute:

-9-

- The Unsigned Agreement incorporates by reference the "Lenders Guidelines" in paragraph 1; there is no comparable provision in the Broker Agreement.

- The Unsigned Agreement is subject to New York law and contains a non-exclusive New York venue provision (Unsigned Agreement ¶ 23); in contrast the Broker Agreement is subject to New Jersey law and contains a non-exclusive New Jersey venue provision (Broker Agreement ¶ 26(q)).

- The scope and nature of the representations and warranties are markedly different (*cf.* Unsigned Agreement ¶ 8 and Broker Agreement ¶ 14).

- The indemnification provisions are likewise markedly different (cf. Unsigned Agreement ¶ 9 and Broker Agreement ¶ 20); most notably the Unsigned Agreement's provision begins with: "In addition to Lender's rights and remedies under Applicable Law . .", while the Broker Agreement lacks comparable language.

- The indemnification provision of the Broker Agreement provides indemnification for losses incurred by LBB alone (Broker Agreement ¶ 20).

LBHI's complaint asserts a single cause of action, for "contractual indemnification" under New York state law. Significantly, the complaint lacks the requisite allegation under Fed. R. Bankr. P. 7008 as to whether the claims are "core" or "non-core" in nature.

In response to LBHI's complaint, iFreedom filed a motion to withdraw the reference to the United States District Court for the Southern District of New York (the "<u>New York District Court</u>"), based in part on this Court's lack of subject matter jurisdiction to adjudicate a "contractual indemnification" claim LBHI purportedly obtained by assignment more than two years after its bankruptcy plan was confirmed. iFreedom has also demanded a jury trial, moved

for the Court to dismiss, transfer, stay or abstain from the New York case in favor of the first-filed Utah case. The motion to withdraw the reference is currently fully briefed and pending decision in the New York District Court.

About a month after iFreedom filed the Utah Case, the Tenth Circuit Court of Appeals decided <u>Lehman Bros. Holdings, Inc. v. Universal American Mortgage Co.</u>, 2016 WL 325126 (10th Cir. Jan. 27, 2016), which found that claims asserted by LBHI, very similar to the "contractual indemnification" claims LBHI has asserted against iFreedom, were precluded by the applicable statute of limitations. That court ruled that "Lehman Holdings had to pay [the GSEs] only because Universal American breached its contract with Lehman Holdings." <u>Id.</u> at *13. As a result "Universal American's contract created a duty to Lehman Holdings rather than Freddie Mac or Fannie Mae" and thus LBHI's claims were for breach of contract rather than for indemnity, regardless of how LBHI characterized its claims in its complaint. <u>Id.</u> at *12-13. Although LBHI has asserted in the past that it would move for reconsideration of this decision, it has to this date not requested any relief of that nature in the Tenth Circuit Court of Appeals.

## **ARGUMENT**

Initially, it should be observed that although the Motion is styled as a motion to enforce the "automatic stay," the "plan" and the "confirmation order"; in truth only one of these three items could even conceivably be enforced—the confirmation order. And, as will be demonstrated below, the Utah Case is not precluded by the confirmation order for a variety of reasons.

It is black-letter law that the duration of the automatic stay contained in Bankruptcy Code § 362 is governed by Bankruptcy Code § 362(c). Under that provision, the automatic stay terminates in a Chapter 11 case upon plan confirmation. <u>See</u>, <u>e.g.</u>, <u>McKinney v. Waterman Steamship Corp.</u>, 925 F.2d 1, 4 (1st Cir. 1991) ("an automatic stay under 11 U.S.C. § 362(a) is

-11-

normally lifted when the confirmation order is issued"); Murphy v. Keller Indus., 201 F.R.D. 317, 321 (S.D.N.Y. 2001) ("Because defendant's reorganization plan was confirmed on August 25, 1998, the automatic stay was lifted by operation of law at that time"); In re Turning Point Lounge, Ltd., 111 B.R. 44, 46 (Bankr. W.D.N.Y. 1990) ("the automatic stay imposed by 11 U.S.C. § 362(a) terminated by operation of law pursuant to 11 U.S.C. § 362(c) upon entry of the Order of Confirmation"). Thus, the statutory automatic stay contained in Bankruptcy Code § 362(a) has not applied in LBHI's bankruptcy case since the effective date of its Plan more than four years ago.

As to the Plan, although it is arguably binding upon iFreedom as a contract, a contract cannot provide for an injunction; only a court order can do so. Accordingly the Confirmation Order is the pertinent document to analyze. LBHI in its Motion relies upon paragraph 54 of the Confirmation Order, which provides:

> Pursuant to Section 13.7 of the Plan, unless otherwise expressly provided herein or in the Plan or in a Final Order of the Court, all injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Closing Date.

Accordingly, the question for the Court, is whether the stay under section 362 of the Bankruptcy Code (made applicable by virtue of the Confirmation Order) precludes the Utah Case. LBHI relies upon Bankruptcy Code § 362(a)(1) and (a)(3). The plain language of these statutes show that they do not preclude the Utah Case.

**I.     Bankruptcy Code § 362(a)(1) Does Not Apply Because iFreedom Could Not Have Possibly Filed the Utah Case Before LBHI Filed its Bankruptcy Petition**

LBHI's first argument is that the Utah Case is precluded by Bankruptcy Code § 362(a)(1). Curiously, LBHI practically ignores the plain language of the statute it seeks to enforce. The statute provides that the filing of a bankruptcy petition automatically stays (with

-12-

emphasis supplied):

> (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor <u>that was or could have been commenced before the commencement of the case under this title</u>.

The obvious flaw in LBHI's argument is that the Utah Case could not conceivably have been commenced before LBHI's bankruptcy filing on September 15, 2008.

iFreedom will concede LBHI's point that the stay generally applies to all litigation, including to declaratory judgment actions. But it is basic that "'[t]he stay is limited to actions that could have been instituted before the petition was filed. It does not include actions arising post-petition.'" <u>Garrett v. Cook</u>, 652 F.3d 1249, 1255 (10th Cir. 2011) (quoting <u>Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc.</u>, 944 F.2d 199, 201 (4th Cir. 1991)); <u>accord</u> <u>Taylor v. First Federal Savings & Loan Ass'n</u>, 843 F.2d 153, 154 (3d Cir. 1988) ("the automatic stay is not intended to bar proceedings for post-petition claims that could not have been commenced before the petition was filed."); <u>In re Galgano</u>, 358 B.R. 90, 98 (Bankr. S.D.N.Y. 2007) ("the filing of a Chapter 7 petition does not operate as a stay as to any debt that arises post-petition").

In a case presenting a very similar claim advanced by LBHI, this Court specifically found that "LBHI possessed no such right [to indemnification] until it paid Fannie Mae. <u>Prior to that time, the right belonged only to Fannie Mae</u>." <u>Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co. (In re Lehman Brothers Holdings, Inc.)</u>, 530 B.R. 601, 612 (Bankr. S.D.N.Y. 2015) (emphasis supplied). And LBHI's own allegations and admissions in the Motion make it crystal clear that LBHI had no rights against iFreedom until the GSE settlements were implemented in 2014, more than five years after LBHI filed its voluntary bankruptcy petition. Motion at p. 7, ¶ 15 ("The GSE Settlement Agreements, which allowed the GSEs' claims, triggered LBHI's right to indemnification"); Motion at p. 8, ¶ 17 ("As a result of the GSE

Settlement Agreements, LBHI holds claims . . .").

iFreedom could not have commenced the Utah Case, seeking declaratory relief against LBHI, until LBHI acquired its alleged "contractual indemnification" rights against iFreedom through the GSE settlements. Until the point that LBHI purportedly acquired those rights, there was no "case or controversy" between LBHI and iFreedom, and iFreedom could not have commenced its declaratory relief action against LBHI. See Velvet Underground v. Andy Warhol Foundation, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (noting that declaratory relief action requires actual case or controversy between the parties); Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394 (S.D.N.Y. 2002) (same).

Because iFreedom could not have commenced its Utah Case against LBHI before it filed its bankruptcy petition in 2008, the Utah Case is not precluded by Bankruptcy Code § 362(a)(1).

II.  **Bankruptcy Code § 362(a)(3) Does Not Apply Because (a) LBHI's Alleged Claims Against iFreedom Are Not Property of the Estate, (b) the Stay Terminated Against Property of the Estate Upon Implementation of LBHI's Plan, and (c) iFreedom's Declaratory Relief Action Does Not Constitute an Act to "Exercise Control" Over Property of the Estate**

A.  **LBHI's Claims Against iFreedom are Not Property of the Estate**

Bankruptcy estates are not limitless in duration. It must be conceded that under Bankruptcy Code § 541(a)(7), property of the estate includes a cause of action acquired by a debtor post-petition. But property acquired by a debtor after confirmation of a Chapter 11 plan, like the purported "contractual indemnification" claims at issue here, is not property of the estate, because the estate ceases to exist upon plan confirmation. Accordingly, since the claims at issue are not property of the estate, Bankruptcy Code § 362(a)(3) does not apply to them.

Bankruptcy Code § 362(a)(3) prevents acts to "exercise control" over "property of the estate." "Property of the estate" is defined by Bankruptcy Code § 541(a) in expansive terms, and includes property acquired after the commencement of a bankruptcy case under Bankruptcy

-14-

Code § 541(a)(7).  Although the concept of property of the estate is broad, it is not unlimited, especially in the context of a confirmed Chapter 11 plan.  This Court recognized in the case of In re General Media, Inc. that "unless the plan says something different, confirmation vests the property of the estate in the reorganized debtor.  11 U.S.C. § 1141(b).  The estate comes to an end, and ceases to exist." 335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) (emphasis supplied); accord In re Rickel & Assocs., Inc., 272 B.R. 74, 97-98 (Bankr. S.D.N.Y. 2002).  The General Media decision relied upon long-standing Second Circuit precedent:

> We have had occasion before to deplore the tendency of the District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization.  [Citations omitted.]  Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly all leading strings which may limit and hamper its activities and throw doubt upon its responsibility.

Id. at 73 (quoting North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938, 940 (2d Cir. 1944)).  Indeed, Norton Bankruptcy Law and Practice recognizes the continued vitality of this pre-code Second Circuit decision and its reasoning.  1 Norton Bankr. L. & Prac. 3d § 4:123 (Rev. ed. 2016).

In this case, paragraph 39 of the Confirmation Order provides in relevant part that "all property of each of the Debtor's estates shall vest in that Debtor . . ."  Confirmation Order at ¶ 39.  This provision implemented Section 13.1 of the Debtor's plan, which provides in relevant part:  "Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate of a Debtor shall vest in that Debtor free and clear of all Claims . . ."  Plan at § 13.1.

These features of LBHI's reorganization are of course not uncommon, and represent a straightforward application of Bankruptcy Code § 1141(b).  After confirmation, there is no

-15-

"property of the estate" because that property revests in the reorganized debtor, here LBHI. As such, Bankruptcy Code § 541(a)(3), which protects "property of the estate," has no application whatsoever.

### B. Alternatively, Bankruptcy Code § 362(a)(3) Terminated Upon the Revesting of Property of the Estate in LBHI Upon Plan Confirmation

Even if iFreedom were incorrect in its argument above, and LBHI's purported "contractual indemnification" claims against iFreedom were property of the estate, the stay applicable to property of the estate terminated upon plan confirmation. For this separate and alternative ground, Bankruptcy Code § 362(a)(3) has no application to this dispute.

The stay under Bankruptcy Code § 362(a)(3) terminates upon plan confirmation. Biltmore Investments, Ltd. v. TD Bank, N.A., 626 Fed. Appx. 390, 392 (4th Cir. 2015); accord Carter v. Peoples Bank and Trust Co. (In re BNW, Inc.), 201 B.R. 838, 848-49 (S.D. Ala. 1996) (relying in part on pre-Code case of In re Morgan & Morgan, Inc., 24 B.R. 518 (Bankr. S.D.N.Y. 1982) to conclude that after confirmation, there is no automatic stay in effect). The Biltmore court reasoned: "Under the plain language of the Bankruptcy Code, the confirmation of Biltmore's Plan terminated the automatic stay. . . . Pursuant to § 362(c)(1), the re-vesting of the bankruptcy estate's assets in the debtor terminated the stay of 'acts against property of the estate.'" Id. (quoting McKinney v. Waterman S.S. Corp., 925 F.2d 1, 4 (1st Cir. 1991)).

Because the automatic stay under Bankruptcy Code § 362(a)(3) terminated by operation of law upon confirmation of LBHI's plan, it does not preclude the Utah Case.

### C. Filing the Utah Case Does Not Constitute an Act to Exercise Control Over Property of the Estate

In the alternative, even if the bankruptcy automatic stay were applicable to the Utah Case, LBHI should not be permitted to use the stay as an offensive litigation tool. Otherwise stated,

-16-

litigating the dispute between LBHI and iFreedom in Utah, as opposed to the New York forum favored by LBHI, does not violate the stay because it does not constitute an attempt to "exercise control" over LBHI's property.

LBHI equates "undermin[ing] LBHI's ability to litigate" with "exercising control" over property of the estate. Motion at p. 13 ¶ 30; see also id. at p. 3 ¶ 4 ("Such an attempt to subvert the prosecution of claims held by a debtor violate the automatic stay."). Taken to its logical conclusion, even defending litigation brought by LBHI would violate the automatic stay. Perhaps this illogical result is why LBHI cites exactly two cases in support of its argument under Bankruptcy Code § 362(a)(3): In re Pintlar Corp., 175 B.R. 379 (Bankr. D. Idaho 1994) and Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC), 460 B.R. 106 (Bankr. S.D.N.Y. 2011).

LBHI does not mention the detail that Pintlar was reversed on appeal. Pintlar Corp. v. Fidelity and Casualty Co. (In re Pintlar), 124 F.3d 1310, 1313 (9th Cir. 1997) (rejecting argument that declaratory relief action should be stayed).

The Madoff decision cited by LBHI is readily distinguishable for at least two reasons. First, in the Madoff case, the Madoff bankruptcy trustee had sued defendant Maxam to recover on avoidance actions, a quintessential attempt to recover property of the estate. 460 B.R. at 113-14; see Bankruptcy Code § 541(a)(3). In contrast, for the reasons detailed above in Section II(A) of this Objection, LBHI's claims against iFreedom are not property of the estate.

Second, in that case the Madoff trustee sued defendant Maxam first, filing its complaint in this Court. Maxam filed its declaratory relief case in the Cayman Islands seven months later. Id. at 113. The trustee in Madoff was using the automatic stay defensively, to protect a cause of action he had filed first in this Court. In the instant case, it is the other way around. LBHI is

attempting to use the automatic stay offensively, to attempt to defend against iFreedom's first-filed case in Utah.

This Court has recognized that the bankruptcy discharge injunction should not be permitted to be used "'as a sword that enables a debtor to undertake risk-free litigation at others' expense.'" In re Residential Capital, LLC, 541 B.R. 202, 217 (Bankr. S.D.N.Y. 2015); see also In re Levitz Furniture Inc., 267 B.R. 516, 522 (Bankr. S.D.N.Y. 2000) (declining to enjoin litigation under Bankruptcy Code § 362(a)(3); In re Continental Air Lines, Inc., 61 B.R. 758, 776-78 (declining to enjoin litigation claims under Bankruptcy Code § 362(a)(3) as to post-petition causes of action).

At the end of the day, the case law does not support LBHI's position that the litigation of claims in a forum disfavored by LBHI violates the automatic stay. To the contrary, LBHI clearly wishes to enter into the litigation fray; it has obviously sued iFreedom in this Court. Having done so, it cannot attempt to thwart lawsuits arising out of the very same contractual relationships using the automatic stay as a weapon. See In re Residential Capital, LLC, 541 B.R. at 216-17.

**CONCLUSION**

iFreedom respectfully requests this Court to deny the Motion, because iFreedom could not possibly have filed its Utah Case against LBHI until 2014, and because the purported claims LBHI asserts against iFreedom are not property of the estate.

Dated: April 21, 2016
          New York, NY

Respectfully submitted,

K&L GATES LLP

By    /s/ Lani A. Adler
Lani A. Adler
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

and

George Hofmann
COHNE KINGHORN, P.C.
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
*Attorneys for iFreedom Direct Corporation*