FENSTERSTOCK & PARTNERS LLP
100 Broadway 8th Floor
New York, New York 10005
Telephone: (212) 785-4100
Facsimile: (212) 785-4040
Blair C. Fensterstock

RICH MICHAELSON MAGALIFF MOSER, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Telephone: (646) 453-7851
Facsimile: (212) 913-9644
Howard P. Magaliff

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (SCC) |
| Debtors. |  |

**MEMORANDUM IN OPPOSITION TO MOTION TO ENFORCE AUTOMATIC STAY**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

SecurityNational Mortgage Company ("SecurityNational") opposes Lehman Brothers Holdings Inc.'s ("LBHI") "Motion to Enforce Automatic Stay, Plan and Confirmation Order" ("Motion") for the reasons that follow.

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 4

**BACKGROUND** ............................................................................................................ 4

    LBHI Non-Bankruptcy Court Litigation ....................................................................... 4

    LBHI Bankruptcy ........................................................................................................... 5

    Litigation ........................................................................................................................ 6

**ARGUMENT** .................................................................................................................. 6

**I.** The Indemnification Claims are not property of the former bankruptcy estate ............. 6

    A.  LBHI asserted that the Indemnification Claims arose or were received post Effective Date and thus has admitted that they were never bankruptcy estate Property ................................................................................................................ 8

**II.** The Delaware Action could not have been commenced as of the Petition Date ............. 10

**III.** Neither the Plan nor the Confirmation Order modified the Scope of the Automatic Stay ........................................................................................................... 12

**IV.** SecurityNational is Not bound by the Plan or Confirmation Order .............................. 13

    A.   LBHI has previously Acknowledged and thereby Admitted, that loan sellers may commence non-bankruptcy court actions.................................................. 14

**V.** The Delaware Action is Not a "subversion" of LBHI's ability to pursue the Indemnification Claims ................................................................................................. 15

**CONCLUSION** ................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

**A.I.C. v. Mapco Petroleum, Inc.,**
   711 F. Supp. 1230 (D. Del. 1989) .................................................................................. 10

**Bolen v. Parks,**
   308 P.2d 521 (Cal. App. 1957) ...................................................................................... 12

**Dana Corp. v. LTV Corp.,**
   668 A.2d 752 (Del. Ch.) ................................................................................................. 10

**Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.,**
   2004 U.S. Dist. LEXIS 9153, 43 Bankr. Ct. Dec. 25 (S.D.N.Y. May 20, 2004) ................... 13

**In re Pintlar Corp.,**
   175 B.R. 379 (Bankr. D. Idaho 1994) ............................................................................. 8

**In re Resorts Int'l, Inc.,**
   372 F.3d 154 (3d Cir. 2004) ............................................................................................ 9

**Pintlar Corp. v. Fidelity and Casualty Co. of New York (In re Pintlar Corp.),**
   124 F.3d 1310 (9th Cir. 1997) ........................................................................................ 8

**Weiner v. Selective Way Ins. Co.,**
   793 A.2d 434 (Del. Super. 2002) .................................................................................. 10

**XL Specialty Insurance Co. v. WMI Liquidating Trust,**
   93 A.3d 1208 (Del. 2014) .............................................................................................. 11

**Statutes**

11 U.S.C. § 1141(a) ............................................................................................................ 13

11 U.S.C. §1141(b) ........................................................................................................... 6-7

11 U.S.C. § 1141(c) .............................................................................................................. 7

11 U.S.C. § 1141(d)(3) ....................................................................................................... 12

**Other Authorities**

**The Impact of Confirmation and Postconfirmation Remedies: A Practical Guide,**
   3 J. Bankr. L. & Prac. 551 (1994) ................................................................................... 6

8-1141 **Collier on Bankruptcy,** 1141.03 (15th 2015) ........................................................... 7

**INTRODUCTION**

The Motion presents the sole question of whether the automatic stay bars SecurityNational's action filed against LBHI in the Delaware Superior Court (the "Delaware Action").[1] The automatic stay does not bar the Delaware Action because, inter alia, the Indemnification Claims[2] are not property of the former bankruptcy estate, the Delaware Action was not an action that could have been commenced as of the Petition Date, and the Delaware Action does not prevent LBHI from asserting any of its claims against SecurityNational.

**BACKGROUND**

SecurityNational, a Utah based corporation, was and is an originator of residential mortgage loans. LBHI is a Delaware corporation, which owned Lehman Brothers Bancorp, also a Delaware corporation, which in turn owned Lehman Brothers Bank LLC ("Lehman Bank"). Over a period of several years, SecurityNational sold hundreds of residential mortgage loans to Lehman Bank pursuant to a Loan Purchase Agreement dated April 15, 2005, which incorporated a "Seller's Guide." Most of those mortgage loans were in turn sold by Lehman Bank to LBHI so that Lehman Bank, an important funding source, could continue to purchase additional mortgage loans from loan originators around the country for the sale to, and the benefit of, LBHI. LBHI did not hold on to all of the mortgages either. Instead, it sold many of them to two federal entities, Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac").

**LBHI Non-Bankruptcy Court Litigation**

Some of the residential mortgage loans which LBHI had purchased from Lehman Bank allegedly developed repayment problems which led to losses for LBHI. Prior to LBHI's

---

[1] SecurityNational Mortgage Company, a Utah Corporation v. Lehman Brothers Holdings Inc., a Delaware Corporation, C.A. No. 16-C-01-221 (PRW) (filed January 26, 2016).
[2] Unless otherwise defined herein, defined terms have the meaning set forth in the Motion.

4

bankruptcy filing, LBHI commenced lawsuits in various courts against a number of loan originators relative to those alleged problem loans. After LBHI's bankruptcy filing, LBHI continued its practice of filing cases in non-bankruptcy courts around the country, including cases involving loans sold by LBHI to Fannie Mae and Freddie Mac. These cases pertained to residential mortgage loans LBHI had purchased from Lehman Bank.

### LBHI Bankruptcy

LBHI filed for bankruptcy in September 2008, and obtained confirmation of a plan which became effective in March 2012. Following the approval and effective date of its plan, LBHI continued to pursue claims against loan originators in non-bankruptcy courts. At the same time, it negotiated with Fannie Mae and Freddie Mac with respect to certain claims against LBHI for alleged problem loans that they had purchased from LBHI. Eventually, in January and February 2014, LBHI settled Fannie Mae's and Freddie Mac's claims relative to certain residential mortgage loans they purchased from LBHI.

At around the same time, the United States District Court for the District of Colorado ruled against LBHI on statute of limitations grounds in several lawsuits brought by LBHI relating to residential mortgage loans LBHI had purchased from Lehman Bank, and which loans LBHI had sold to Fannie Mae or Freddie Mac. Shortly thereafter, in May 2014, LBHI filed a motion with this Court to establish ADR procedures ("ADR Motion"), including mediation, with respect to potential claims against hundreds of loan originators, including SecurityNational. SecurityNational objected to the ADR Motion and the ADR procedures for various reasons, including lack of jurisdiction and, under a reservation of its objections and rights, the Court approved the ADR Motion. LBHI, however, then waited more than a year even to initiate the ADR process with SecurityNational, which SecurityNational agreed to follow under a full

5

reservation of its rights and defenses. The ADR effort proceeded with written submissions and a mediation in New York in early January 2016 without producing a resolution.

## Litigation

After SecurityNational determined that it would not be able to resolve the dispute with LBHI through the ADR process, it filed suit against LBHI in Delaware on January 26, 2016. On February 3, 2016 LBHI filed a self-styled "omnibus" suit in the Bankruptcy Court against approximately 150 defendants which included SecurityNational. This was not, and is not a "class action" filing as LBHI represented to the Court when it sought to establish ADR procedures.

Now, LBHI wants to stop SecurityNational's action in LBHI's home state of Delaware based on an alleged automatic stay violation. In its Motion, LBHI argues extraneous matters that do not pertain to the existence, and alleged violation, of the automatic stay.[3] Whatever else LBHI may want to argue, or attempt to present to this Court, there plainly and simply is no stay violation by SecurityNational.

## ARGUMENT

### I. The Indemnification Claims are not property of the former bankruptcy estate.

Unless the plan or confirmation order otherwise provides, the estate is terminated upon confirmation of a plan. Akerly & Ozburn, The Impact of Confirmation and Postconfirmation Remedies: A Practical Guide, 3 J. Bankr. L. & Prac. 551, 558 (1994) ("confirmation terminates the estate's existence"). Confirmation vests the terminated estate property back with the debtor. 11 U.S.C. §1141(b) ("[e]xcept as otherwise provided in the plan or in the order confirming the

---

[3] For example, LBHI makes alleged conclusory reference to matters such as improper "forum shopping," "co-extensive" agreements, and the meaning of certain mortgage loan related agreements such as the "Seller's Guide." These, however, do not play a role in the actual extant issue of this Motion - the existence and application of the automatic stay. Thus, in this memorandum, SecurityNational will not address the non-relevant matters; any such issue and related legal and/or factual argument of LBHI not addressed herein is not agreement with, or acquiescence in, LBHI's argument.

plan, the confirmation of a plan vests all of the property of the estate in the debtor.") This result applies to all estate property, including "any causes of action which the debtor could have asserted as of the commencement of the case." 8-1141 Collier on Bankruptcy, 1141.03 (15th 2015).

LBHI's plan was confirmed on December 6, 2011, and became effective on March 6, 2012. Unless the plan or confirmation order otherwise provided, the estate terminated on confirmation and all Indemnification Claims were vested in the particular debtor. Not only did the LBHI plan and confirmation order not provide for the continuance of the estate, both documents contained typical vesting paragraphs in which property of the estate is vested in the debtor on the Effective Date.[4] Paragraph 13.1 of the LBHI plan provides that:

> Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, **Property of the Estate of a Debtor shall vest in that Debtor** free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided herein. From and after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, **free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code**, except as explicitly provided herein.[5]

(Emphasis added). Paragraph 39 of the Confirmation Order contains substantially identical language:

> 39. <u>Vesting of Assets</u>. Pursuant to Section 13.1 of the Plan, except as otherwise provided in the Plan, all property of each of the Debtor's estates shall vest in that Debtor free and clear of all Claims, liens, encumbrances, charges and other interests. From and after the Effective Date, the Debtors, acting through the

---

[4] The Plan did provide that the equity in LBHI is held by a Plan Trust. <u>See</u>, Motion, at 8-9. The fact that the equity in the Debtor is held by a plan trust does not affect the analysis of whether Indemnification Claims are property of the estate.

[5] There is no provision in the plan that explicitly continues the bankruptcy estate after the Effective Date.

7

>Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether or not in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, <u>free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code</u> except as explicitly provided in the Plan. (Emphasis added.)

After the Effective Date, LBHI, not the former estate, held any Indemnification Claims. Clearly, LBHI cannot have it both ways – it cannot own the Indemnification Claims outside of the bankruptcy estate "free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending [bankruptcy] cases," yet enjoy the protection of the automatic stay as if such claims were property of the estate and subject to a pending bankruptcy case.

LBHI cites <u>In re Pintlar Corp.</u>, 175 B.R. 379 (Bankr. D. Idaho 1994) for the proposition that an insurer's declaratory judgment action affects property of the estate and is barred by the automatic stay. (Motion at 14). This decision, however, was <u>reversed</u> by the Ninth Circuit. <u>Pintlar Corp. v. Fidelity and Casualty Co. of New York (In re Pintlar Corp.)</u>, 124 F.3d 1310 (9th Cir. 1997). The Ninth Circuit's decision is instructive. There, the Ninth Circuit held that a Delaware declaratory judgment action was not barred by the automatic stay because the subject interest of the Debtor was not property of the estate. Similarly, the automatic stay does not bar the present Delaware Action because the Indemnification Claims are not property of the estate.

> **A.   LBHI has asserted that the Indemnifications Claims arose or were received post Effective Date and thus has admitted that they were never bankruptcy estate property.**

LBHI's claims against SecurityNational are based, in part, on loan sales occurring in 2005 through 2007. In an effort to avoid statute of limitations problems, LBHI asserts both that

8

it received claims in 2014 from Fannie Mae and Freddie Mac[6] and that its claims arose from those settlements.

Whether the Indemnification Claims were received by the 2014 GSE Settlements or arose at that time, according to LBHI, the Indemnification Claims came into effect in 2014 – three years <u>after</u> the Effective Date. SecurityNational disputes this assumption and believes that any claims LBHI might argue that it has arose between 2005 and 2007 and are barred by the applicable statute of limitations. Thus LBHI's underlying theory of its case contradicts its present position that the automatic stay applies to the Indemnification Claims. If the Indemnification Claims arose in 2014, as LBHI asserts, such claims were never property of the bankruptcy estate. LBHI "cannot have its cake and eat it too." <u>See</u>, <u>e.g.</u>, <u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154, 165 (3d Cir. 2004) (a post confirmation dispute cannot affect the estate, since the estate ceases to exist after confirmation). Since the Indemnification Claims are not property of the estate, this action is not barred by § 362(a)(3).

---

[6] LBHI represented in its Motion for Alternative Dispute Resolution Procedures, Docket No. 44450 (the "ADR Motion," p. 6), that LBHI "acquired the contractual right to pursue the Indemnification Claims against the Sellers" in the GSE Settlements. Paragraph 5 of LBHI's Settlement Agreement with Fannie Mae provides:

    5.    *Assignment of Rights/No Waiver of Defenses*. Fannie Mae hereby sells, assigns, and otherwise transfers to LBHI any claims related to the Rep and Warranty Default Loans listed on Exhibit B that Fannie Mae holds against any originating lenders, secondary mortgage market sellers, borrowers, appraisers, brokers, title companies, escrow agent, insurers, and/or other third parties in connection with the Rep and Warranty Default Loans . . . .

Similarly, in the Freddie Mac settlement, paragraph 2.2(b), LBHI was then assigned:

    all rights, including any and all claims or causes of action, and any proceeds derived therefrom, that Freddie Mac may have against any person or entity other than LBHI arising out of or relating to the Loan Claim and/or the Indemnity and Servicing Claims, including, without limitation, any and all rights, claims, and causes of action related to the Rep and Warranty Default Loans … that Freddie Mac holds against any originating lenders, secondary mortgage market sellers, borrowers, appraisers, brokers, title companies, escrow agents, insurers, and/or third parties in connection with the Rep and Warranty Default Loans, . . .

9

II.     **The Delaware Action could not have been commenced as of the Petition Date.**

LBHI also asserts that the automatic stay applies to the Delaware Action pursuant to § 362(a)(1) as an action "that was or could have been commenced before the commencement of the case under this title." (Motion at 11). However, since the Delaware Action is a declaratory judgment action, there was no justiciable dispute on the subject issues as of the Petition Date. Therefore, the Delaware Action could not have been validly filed as of that date.

In Delaware, four elements are required for a valid declaratory judgment action: (1) the controversy must involve a claim or other legal interest; (2) the claim or other legal interest must be asserted against one who has an interest in contesting the claim; (3) the conflicting interests must be real and adverse; and (4) the issue must be ripe for judicial determination. Weiner v. Selective Way Ins. Co., 793 A.2d 434, 439 (Del. Super. 2002). Simply stated, a valid declaratory judgment action requires the existence of a ripe dispute. Dana Corp. v. LTV Corp., 668 A.2d 752, 755 (Del. Ch.) *aff'd,* 670 A.2d 1337 (Del. 1995) (declaratory judgment only appropriate if there is an actual controversy between the parties). For contract related declaratory judgment claims, the issue must not be dependent on the occurrence of a future event. See, e.g., A.I.C. v. Mapco Petroleum, Inc., 711 F. Supp. 1230 (D. Del. 1989).

The declaratory judgment action relates to claims LBHI first identified to SecurityNational in August 2015. Pursuant to the ADR procedures, LBHI was required to serve on the loan sellers against which it asserted a claim an "Indemnification ADR Notice" containing sufficient information to make the loan seller aware of the nature of LBHI's claim. (Alternative Dispute Resolution Procedures Order, ¶ 8(a); Doc. 45702). On August 27, 2015, SecurityNational received an Indemnification ADR Notice. Before that date, there was no identified dispute that could have formed the basis of a legitimate declaratory judgment action.

10

The key here is that as of the Petition Date, LBHI had made no claim against SecurityNational. Rather, the claim was made almost <u>seven years after</u> the Petition Date. Consequently, a declaratory judgment action on the subject claims could not have been validly commenced as of the Petition Date.[7]

<u>XL Specialty Insurance Co. v. WMI Liquidating Trust</u>, 93 A.3d 1208 (Del. 2014) presents similar facts to those in this case. In <u>XL Specialty</u>, the debtor filed a chapter 11 bankruptcy case in September 2008. Eleven days before the petition date, certain of the debtor's officers and directors allegedly caused the debtor to downstream a $500 million capital contribution to a subsidiary bank. In the bankruptcy case, the debtor made a demand against the officers and directors for claims arising from the downstream payment. The officers and directors also filed proofs of claim against the debtor in the bankruptcy for defense costs. A bankruptcy trust was created pursuant to a February 2012 confirmed plan. In October 2012, the bankruptcy trust filed a declaratory judgment action seeking a determination that pre-petition insurance policies covered both the downstream payment and defense costs claims.

The Delaware Supreme Court dismissed the case as premature, reasoning that a declaratory judgment action as to asserted indemnification liability requires the prior resolution of the indemnified claim. When the case was filed, there was no determination of liability against the debtor, nor was there a settlement or judgment on the underlying claims. In addition, the debtor disputed the defense costs proofs of claim. Thus, the declaratory judgment action was dismissed as premature. For the same reasons, in this case, the Delaware Action could not have been commenced as of the LBHI Petition Date.

---

[7] Whether there is a ripe dispute sufficient to form the basis for a declaratory judgment action is a separate issue from the question of when a statute of limitation commences to run. Although a statute of limitation period may be running, if the party with the claim does not assert it, there is no dispute to support a declaratory judgment action.

11

III. **Neither the Plan nor the Confirmation Order modified the Scope of the Automatic Stay**.

LBHI cites to the Plan and Confirmation Order in support of its Motion. However, neither document changed the nature of the automatic stay nor the prohibited actions covered by the stay. For example, LBHI cites paragraph 13.7 of the Plan and paragraph 54 of the Confirmation Order, which state that all injunctions or stays in existence as of the Confirmation Date shall remain until the closing of the cases. Neither paragraph, however, modified the automatic stay itself. These provisions merely clarified the date that the automatic stay will terminate.

In the LBHI Plan, these provisions served the purpose of clarifying the automatic stay termination date as to actions not involving property of the estate. Under § 362(c)(2), the automatic stay applicable to actions not involving property of the estate continues until the earliest of the closing of the case or the time a discharge is granted or denied. Under § 1141(d)(3), a liquidating company is not discharged. Thus, in a liquidating company's plan, the automatic stay continues until the closing of the case. Even though the LBHI Plan is a liquidating plan, it provided for a discharge when the Plan distributions are made. (Plan, § 13.4). The Plan thus contained a potential conflict as to whether the automatic stay terminated on the distribution date (§ 13.4 of the Plan) or the closing date (§ 1141(d)(3) and 362(c)(2)). Section 13.7 of the Plan and ¶ 54 of the Confirmation Order resolved this ambiguity by providing that the stay continues until closing.[8]

LBHI also cites to section 13.8 of the Plan that "nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any right, defenses

---

[8] An interpretation of § 13.7 and ¶ 54 that causes them to modify § 362 would run counter to the interpretation principle that contractual provisions should not be interpreted to conflict with existing law. Bolen v. Parks, 308 P.2d 521, 527 (Cal. App. 1957).

12

or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates . . . ." This is a typical provision designed to prevent the waiver or loss of claims and defenses unresolved as of confirmation. Section 1123(b)(3) allows a plan to provide for the retention and non-waiver of such claims. Without such a plan provision, the debtor may be precluded from bringing such claims post-confirmation. See, e.g., Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp., 2004 U.S. Dist. LEXIS 9153, 43 Bankr. Ct. Dec. 25 (S.D.N.Y. May 20, 2004) ("a debtor is precluded from asserting any claims post-confirmation that are not preserved in its plan.")[9] This provision does not create or modify any claims LBHI had as of the Confirmation Date – it simply preserved whatever claims LBHI had under applicable law. It also did not modify the scope or application of the automatic stay.

### IV. SecurityNational is not bound by the Plan or Confirmation Order

LBHI argues that "[a]ll provisions of the Plan and Confirmation Order, including those that continue the automatic stay until the closing of the case, are binding and enforceable on all parties and must be honored." (Motion at 16). SecurityNational, however, was not a party in the bankruptcy case and is not bound by either the Plan or the Confirmation Order.

A plan of reorganization only binds "the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Both the plan and confirmation order are consistent with §1141(a). Paragraph 13.2 of the Plan provides:

---

[9] LBHI also cites section 8.14 of the Plan that preserves recoupment claims against Creditors receiving distributions under the Plan. Similarly, LBHI points out that the automatic stay bars attempts to assert prepetition claims. SecurityNational was not a creditor, received no distributions under the Plan, and is not attempting to assert a prepetition claim.

> 13.2 <u>Binding Effect</u>. On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

Paragraph 8 of the Confirmation Order similarly provides:

> 8. <u>Binding Effect.</u> The Plan and its provisions shall be binding on the Debtors, any entity acquiring or receiving property or a Distribution of the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder (a) is impaired under the Plan or (b) has accepted the Plan.

<u>SecurityNational was neither a creditor, equity holder, an entity receiving a distribution under the plan, nor a party in interest</u>. It did not file a claim or participate in the LBHI case. SecurityNational is simply an entity against whom LBHI asserts a claim years after the Effective Date of the Plan. Neither the Plan nor the Confirmation Order binds SecurityNational.

### A.  **LBHI has previously Acknowledged, and thereby Admitted, that loan sellers may commence non-bankruptcy court actions.**

LBHI's argument that the Delaware Action violates the automatic stay runs counter to its previous acknowledgement in this Court that loan sellers may commence non-bankruptcy court actions against LBHI. In the ADR Motion, LBHI acknowledged that loan sellers could file non-bankruptcy court actions. LBHI simply requested the preservation of whatever rights it might have to argue that such non-bankruptcy actions should be removed to this Court:

> 25.  If a Seller has commenced any action or proceeding <u>in any other court or forum, or commences any other action or proceeding in any other court or forum</u> following service upon it of an Indemnification ADR Package, LBHI reserves the right to remove to this Court any such lawsuit, proceeding, or claim <u>and to defend or take action in any such other court or proceeding</u> to protect LBHI's creditors, despite the incomplete status of the steps prescribed under the Indemnification ADR Procedures.

(ADR Motion at 12; emphasis added). SecurityNational responded that it did not agree that LBHI would have any valid removal rights and wanted all defenses to removal to be preserved.

14

The resulting Order, after stating the value of mediation as to claims pending both in bankruptcy adversary proceedings and "other litigation," preserved "all defenses related to removal." (Alternative Dispute Resolution Procedures Order, Dkt 45702, ¶¶ E, 14). Of course, if the automatic stay applied to actions commenced by loan sellers outside this Court, removal would never be an issue and the possibility of "other litigation" would be non-existent. Actions in violation of the automatic stay are void and, obviously, void lawsuits are not removed. LBHI's own prior statements demonstrate that it did not believe that the automatic stay bars the Delaware Action.

### V.     The Delaware Action is Not a "subversion" of LBHI's ability to pursue the Indemnification Claims.

LBHI argues that the Delaware Action was "intended to undermine LBHI's ability to litigate the Indemnification Claims." (Motion at 13). To the point of this Motion, the allegation that the first-filed Delaware Action was an attempted "subversion" of LBHI's claims has no relevance to the issue at hand – whether the automatic stay bars the Delaware Action. In any event, the Delaware Action does not preclude LBHI's ability to pursue the Indemnification Claims. LBHI has pursued similar claims across the country. There is absolutely no reason why LBHI cannot pursue its state law based claims in its own home state of Delaware.

## **CONCLUSION**

SecurityNational respectfully submits that LBHI's Motion to enforce the automatic stay be denied.

Dated this 25th day of April, 2016.

/s/ Blair C. Fensterstock
Blair C. Fensterstock

FENSTERSTOCK & PARTNERS LLP
100 Broadway 8th Floor
New York, New York 10005
Telephone: (212) 785-4100
Facsimile: (212) 785-4040

-and-

RICH MICHAELSON MAGALIFF MOSER, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017
Telephone: (646) 453-7851
Facsimile: (212) 913-9644
Howard P. Magaliff

*Counsel for SecurityNational Mortgage Company*

Of Counsel:

MACKEY PRICE & MECHAM
57 West 200 South, #350
Salt Lake City, Utah 84101
Telephone: (801) 575-5000
Facsimile: (801) 575-5006
Gifford W. Price

MILLER TOONE, P.C.
165 Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
Blake D. Miller