**Hearing Date: May 5, 2016, at 2:00 p.m. (Eastern Time)**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone:  (303) 945-7415
Facsimile:  (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————— x | | |
| | **:** | **Chapter 11** |
| **In re:** | **:** | |
| | **:** | **Case No. 08-13555 (SCC)** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | **:** | |
| | **:** | |
| **Debtors.** | **:** | |
| ———————————————————— x | | |

**REPLY TO iFREEDOM'S AND SECURITYNATIONAL'S OPPOSITIONS AND IN**
**FURTHER SUPPORT OF LEHMAN BROTHERS HOLDINGS INC.'S MOTION TO**
**ENFORCE THE AUTOMATIC STAY, THE PLAN, AND THE CONFIRMATION**
**ORDER AGAINST iFREEDOM DIRECT CORPORATION AND**
**SECURITYNATIONAL MORTGAGE COMPANY**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.......................................................................................................................3

I.      Bankruptcy Code 362(a) Applies Because SecurityNational and iFreedom Could
Have Filed Declaratory Actions Before LBHI Filed its Bankruptcy Petition ....................3

        A.      SecurityNational's and iFreedom's Delaware and Utah Actions
              Violate Bankruptcy Code Section 362(a)(1) as Actions Concerning
              Pre-Petition Contracts that Could Have Been Commenced on or
              Before LBHI's Petition Date ...................................................................................4

        B.      SecurityNational's and iFreedom's Delaware and Utah Actions Violate
              Bankruptcy Code Section 362(a)(3) Because Pursuant to LBHI's
              Plan and Confirmation Order, the Indemnification Claims Are Property
              of the Estate that Existed as of the Petition Date, Were Retained
              by LBHI for Post-Confirmation Prosecution, and Are Protected
              by the Automatic Stay.............................................................................................8

        C.      SecurityNational Had Constructive, if Not Actual, Notice of LBHI's
              Plan and Confirmation order, and Its Challenges to the Plan and
              Confirmation Order Are Improper Attempts to Effectively Appeal the
              Bankruptcy Court's Ruling on the Confirmation Order .......................................11

II.     SecurityNational's and iFreedom's Delaware and Utah Actions are Improper Collateral
Attacks on this Court's Jurisdiction and LBHI's Plan and Confirmation Order ...............13

CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

**Case**                                                                                                    **Page(s)**

*A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*,
    788 F.2d 994 (4th Cir. 1986) ......................................................................................................14

*Adams v. Suozzi*,
    433 F.3d 220 (2d Cir. 2005)........................................................................................................10

*Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*,
    161 B.R. 771 (E.D. Va. 1993)......................................................................................................4

*Borman v. Raymark Indus., Inc.*,
    946 F.2d 1031 (3d Cir. 1991)......................................................................................................4

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
    538 F.3d 116 (2d Cir. 2008).........................................................................................................8

*Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    31 B.R. 965 (S.D.N.Y. 1983).......................................................................................................4

*Continental Air Lines, Inc. v. Hillblom (In re Continental Airlines, Inc.)*,
    61 B.R. 758 (S.D. Tex. 1986) ....................................................................................................13

*Galli v. Metz*,
    973 F.2d 145 (2d Cir. 1992)........................................................................................................11

*Giuliano v. FDIC (In re Downy Fin. Corp.)*,
    499 B.R. 439 (Bankr. D. Del. 2013)
    *aff'd*, No. 14-1586, 2015 WL 307013 (3d Cir. Jan. 26, 2015) ...........................................8

*Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*,
    997 F.2d 581 (9th Cir. 1993) .......................................................................................................9

*In re Cendant Corp. Sec. Litig.*,
    454 F.3d 235 (3d Cir. 2006).......................................................................................................10

*Chartschlaa v. Nationwide Mut. Ins. Co.*,
    538 F.3d 116 (2d Cir. 2008).........................................................................................................8

*In re Gruntz*,
    202 F.3d 1074 (9th Cir. 2000) ...................................................................................................14

*In re Levitz Furniture Inc.*,
    267 B.R. 516 (Bankr. S.D.N.Y. 2000)................................................................12

*In re Minoco Group of Companies, Ltd.*,
    799 F.2d 517 (9th Cir. 1986)
    *rev'd on other grounds*, 124 F.3d 1310 (9th Cir. 1997) ................................11, 12

*In re Pintlar Corp.*,
    175 B.R. 379 (Bankr. D. Idaho 1994)..........................................................11, 12

*In Re Quigley Co., Inc.*,
    361 B.R. 670 (Bankr. S.D.N.Y. 2007) ...............................................................14

*In re Residential Capital, LLC*,
    541 B.R. 202 (Bankr. S.D.N.Y. 2015) ...............................................................12

*In re Shenango Group Inc.*,
    501 F.3d 338 (3d Cir. 2007)...............................................................................10

*In re South Side House, LLC*,
    474 B.R. 391 (Bankr. E.D.N.Y. 2012).................................................................8

*In re Yonikus*,
    966 F.3d 866 (7th Cir. 1993) ...............................................................................8

*JGR, Inc. v. Thomasville Furniture Indus., Inc.*,
    505 Fed. A'ppx 430 (6th Cir. 2012) ...................................................................14

*Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co.*
*(In re Lehman Brothers Holdings Inc.)*,
    530 B.R. 601 (Bankr. S.D.N.Y. 2015).........................................................5, 6, 7

*Paneccasio v. Unisource Worldwide, Inc.*,
    532 F.3d 101 (2d Cir. 2008)................................................................................10

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003)................................................................................14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011)...........................................................8, 12

*XL Specialty Ins. Co. v. WMI Liquidating Trust*,
    93 A.3d 1208, 1211, 1215 (Del. 2014) ................................................................4

## **OTHER AUTHORITIES**

11 U.S.C. § 362(a)(1)..............................................................................................................3

11 U.S.C. § 362(a)(3)...........................................................................2, 8, 9, 10, 12, 13

11 U.S.C. § 541(a)(1).........................................................................................................8, 9

11 U.S.C. § 1141(b) ...............................................................................................................9

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (in such capacity, the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), by its undersigned attorneys, hereby submits this Reply (the "Reply") to: (i) SecurityNational's Memorandum In Opposition To Motion To Enforce Automatic Stay [ECF No. 52585] ("the SN Opposition"), and (ii) iFreedom Direct Corporation's Objection to Motion of Lehman Brothers Holdings Inc. to enforce the Automatic Stay, Plan of Reorganization and Confirmation Order against iFreedom [ECF No. 52550] (the "iFreedom Objection" and together with the SN Opposition, the "Oppositions"), and in further support of said motion [ECF No. 52076] (the "Motion"), respectfully states as follows:

## PRELIMINARY STATEMENT

1.      SecurityNational and iFreedom initiated pre-emptive declaratory judgment actions in an effort to persuade other courts that this Court's statute of limitations decisions in *LHM*, *Hometrust*, and now *Standard Pacific* were incorrect. The Delaware and Utah Actions[1] are classic forum shopping, intended to interfere with, if not undermine, this Court's thoughtful and efficient administration of LBHI's Indemnification Claims. Permitting loan sellers—especially ones already subject to the Court's ADR Order—to maintain unwieldy defensive declaratory judgment actions around the country will only increase the cost of pursuing Indemnification Claims for the benefit of creditors and subvert the Plan Administrator's efforts to pursue the recoveries in an efficient and cost-effective manner.

---

[1] Unless otherwise defined herein, defined terms shall have the meanings ascribed to them in the Motion.

2.      The added burden and expense is already manifest in these proceedings, where the Plan Administrator has been required to seek the Court's assistance to enforce the automatic bankruptcy stay.  SecurityNational's and iFreedom's Delaware and Utah Actions violate the automatic bankruptcy stay because (1) they are actions concerning pre-petition contracts that could have been brought pre-petition, and (2) they seek to exercise control over the Indemnification Claims which are property of LBHI's estate.  Insistent upon litigating their already-rejected statute of limitations arguments in *other* courts, SecurityNational and iFreedom argue that there was no "case or controversy" until LBHI's Indemnification Claims accrued post-petition and that the Indemnification Claims are not property of the estate.

3.      SecurityNational's and iFreedom's first argument rests on a false corollary:  The fact that LBHI's indemnification claims did not accrue until LBHI's underlying liability to Fannie Mae and Freddie Mac was set does not mean, as SecurityNational and iFreedom posit, that they could not have initiated Delaware and Utah Actions seeking declaratory relief pre-petition.  As both SecurityNational and iFreedom concede, the loan purchase agreements are pre-petition contracts.  SecurityNational and iFreedom could have sought to have their rights with respect to the agreements adjudicated pre-petition.

4.      SecurityNational's and iFreedom's second argument, that the Indemnification Claims are not assets of the estate, is in contravention of the Bankruptcy Code and a misreading of the Plan and Confirmation Order. The Plan expressly identifies LBHI's Indemnification Claims as assets of the Estate, and although contingent and unmatured on the Petition Date, they are protected by Section 362(a)(3), the Plan, and the Confirmation Order.

5.      Furthermore, enforcement of the stay will not prejudice either iFreedom or SecurityNational because this Court is well-equipped to adjudicate any defenses they may raise.

2

Indeed, numerous District Courts have held that this Court is uniquely situated to preside over matters affecting the estate, including Indemnification Claims such as those LBHI holds against SecutiyNational and iFreedom.

6.      For those reasons, SecurityNational's and iFreedom's Delaware and Utah Actions violate the automatic bankruptcy stay, and the Court should enjoin them from maintaining those actions.

## ARGUMENT

### I.      Bankruptcy Code 362(a) Applies Because SecurityNational and iFreedom Could Have Filed Declaratory Actions Before LBHI Filed its Bankruptcy Petition

7.      Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay, applicable to all entities, of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).  The Code further stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Section 13.7 of LBHI's Plan and paragraph 54 of the Confirmation Order provide that "all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases." SecurityNational's and iFreedom's Delaware and Utah Actions violate both section 362(a)(1) and (a)(3).

**A.** **SecurityNational's and iFreedom's Delaware and Utah Actions Violate Bankruptcy Code Section 362(a)(1) as Actions Concerning Pre-Petition Contracts that Could Have Been Commenced Before LBHI's Petition Date**

8.      The automatic stay under section 362(a)(1) applies to the commencement or continuation of all legal proceedings, including declaratory judgment actions against a debtor, that were "or could have been commenced before the commencement of the case under this title," even if the proceeding does not involve property of the estate.  11 U.S.C. § 362(a)(1); *see Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1035 (3d Cir. 1991) ("§ 362(a)(1) would have no function as a separate provision if it also applied only to actions involving property of the estate"); *see also Commercial Union Ins. Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965, 970 (S.D.N.Y. 1983) (affirming bankruptcy court's conclusion that automatic stay applied to pending declaratory judgment action); *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 161 B.R. 771, 774-75 (E.D. Va. 1993).

9.      SecurityNational and iFreedom erroneously argue that their declaratory judgment actions do not violate the automatic stay under section 362(a)(1) because they could not have been commenced on or prior to the petition date.  SN Opp. at 10[2]; iFreedom Obj. at 12.  This argument, however, conflates the ripeness of their out-of-state declaratory judgment claims with the ripeness of LBHI's Indemnification Claims.

10.      If SecurityNational and iFreedom wished to adjudicate their *potential* liability under the pre-petition agreements earlier, they could have initiated declaratory judgments pre-

---

[2] SecurityNational primarily relies on a case involving a declaratory judgment action initiated by a post-confirmation bankruptcy trust—in other words, a case where the stay would, as a matter of law, *not* apply as the action was not brought by a non-debtor party.  *See XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1211, 1215 (Del. 2014).  In fact, the trust's action did not seek a determination of its contractual rights with the defendants, but rather, a determination as to the rights of *unnamed third parties* with the defendants.  *See id*. at 1220.  *XL Specialty* is entirely irrelevant here in that it is factually distinct and does not address the fundamental issue of whether a declaratory judgment action is barred by the bankruptcy stay.

petition.  The fact that they did not do so does not convert a pre-petition claim into a post-petition claim.

11.    SecurityNational's and iFreedom's argument that they could not have brought suit pre-petition because LBHI did not "acquire" the right to sue them for contractual indemnification until the GSE Settlements is factually incorrect.[3]  LBHI never "assigned" to the GSEs (or otherwise divested itself of) its contractual rights against loan originators under the LPAs when it sold specific loans to Fannie Mae and Freddie Mac.  Rather, such loan sales were pursuant to separate sales agreements between LBHI and the specific GSE (pursuant to which LBHI made representations and warranties that were "co-extensive" with the ones made by the loan originators to LBHI).  LBHI always retained its contractual right to bring indemnification claims against SecurityNational and iFreedom, if and when those claims accrued.[4]

12.    iFreedom distorts this Court's opinion in the *Hometrust* case when it misreads it to suggest that LBHI did not possess the indemnification right until the GSE settlements were

---

[3] *See, e.g.*, SN Opp. at 8-9 ("LBHI asserts both that it received claims in 2014 from Fannie Mae and Freddie Ma and that its claims arose from those settlements."); iFreedom Obj. at 2 ("First, the [Indemnification Claims] at issue in this case were not acquired by LBHI until 2014, more than two years after plan confirmation.").

[4] *See, e.g.*, *Lehman Brothers Holdings Inc. v. Hometrust Mortgage Co. (In re Lehman Brothers Holdings Inc.),* 530 B.R. 601, 605 (Bankr. S.D.N.Y. 2015) (LBHI's "Complaint alleges that it was Hometrust's breaches of the representations, warranties, and/or covenants made under the [Hometrust LPA] that caused LBHI to compensate Fannie Mae, pursuant to separate agreements between LBHI and Fannie Mae that were co-extensive with the representations, warranties, and/or covenants contained in the [LPA]").

executed.[5]  The Court clearly understood that the case involved two separate contracts,[6] that the

assignment of contractual rights was only from LBB to LBHI (whereas LBHI thereafter only

"sold" the underlying loans to the GSEs),[7] and that the Court was deciding whether the LPA

between LBHI and Hometrust (the loan originator) contained a right to contractual

indemnification.[8]  Therefore, when the Court mentioned that a certain "right belonged only to

Fannie Mae" prior to its settlement with LBHI, it was not (as iFreedom suggests) determining

that LBHI had previously assigned its right to contractual indemnification to Fannie Mae, which

Fannie Mae reconveyed upon settlement.  Rather, as the full citation makes clear, the Court was

explaining how the settlement triggered LBHI's own right to seek indemnification from

Hometrust:  "Indeed, under the 'consistent line' of New York authority cited by Hometrust, . . . a

---

[5] The fact that LBHI sought and received an assignment of any "additional" rights that the GSEs might have against the loan originators (under a "belt and suspenders" approach), does not change the fact that LBHI retained its contractual rights (such as indemnification) against loan originators pursuant to the LPAs.  LBHI's motions to approve the GSE Settlements clearly explain that the Indemnification Claims derive from its existing contracts with loan originators (such as SecurityNational and iFreedom) and the settlements only triggered LBHI's ability to enforce such rights. *See, e.g*., Motion to Approve Fannie Mae Settlement [ECF No. 42153] at ¶¶ 16-18 ("In connection with its acquisition of the Mortgage Loans, LBHI generally received representations and warranties from the Mortgage Originators regarding the character, quality and marketability of the Mortgage Loans.  At times, when LBHI transferred the Mortgage Loans to an upstream investor, particularly with respect to Fannie Mae, LBHI made similar representations and warranties regarding the Mortgage Loans for the benefit of such investor. . . .  To the extent that there are any breaches of LBHI's representations and warranties, such breaches are also likely to apply to the representations and warranties made by the Mortgage Originators to LBHI, meaning that LBHI has corresponding indemnification claims against the Mortgage Originators. . . .  Accordingly, while the Settlement Agreement will crystalize LBHI's representation and warranty liability to Fannie Mae, it will also enable the Plan Administrator to pursue LBHI's related indemnification claims against the Mortgage Originators.")

[6]  LBHI's "Complaint alleges that it was Hometrust's breaches of the representations, warranties, and/or covenants made under the [Hometrust LPA] that caused LBHI to compensate Fannie Mae, pursuant to separate agreements between LBHI and Fannie Mae that were co-extensive with the representations, warranties, and/or covenants contained in the [LPA]." *Hometrust*, 530 B.R. at 605.

[7] "LBB assigned to LBHI all of its rights and remedies under the [Hometrust LPA] pertaining to the Loans. . . . LBHI subsequently sold the Loans to Fannie Mae." *Id*. at 604-605.

[8] "The disposition of the Motion turns on an interpretation of the [Hometrust LPA] and, specifically, whether the [Hometrust LPA] gives LBHI, as assignee of LBB's rights under the [Hometrust LPA], a contractual indemnification claim against Hometrust, as seller of the Loans, that is separate from a time-barred claim for a breach of the [Hometrust LPA]'s representations and warranties." *Id*. at 607.

cause of action for indemnification accrues when a party possesses a legal right to demand payment; here, LBHI possessed no such right until it paid Fannie Mae." *Hometrust*, 530 B.R. at 612 (citation omitted). A full reading of the other documents cited by iFreedom provide the same explanatory context, namely that LBHI never assigned to the GSEs its right to contractual indemnification under the LPAs with the loan originators, and the only necessary "rights" LBHI received from the GSEs flowed from the settlement payments which triggered LBHI's own right to seek indemnification. *See, e.g.*, ADR Motion [ECF No. 44450] at ¶¶ 7-12 ("The Triggering of the Indemnification Claims").

13.    iFreedom's argument that "[u]ntil the point that LBHI purportedly acquired those rights [to contractual indemnification], there was no 'case or controversy' between LBHI and iFreedom" (iFreedom Obj. at 14) tacitly admits that both it and SecurityNational could have brought a declaratory action prepetition. In *Hometrust*, the Court concluded that the right to contractual indemnification was *acquired* at the time LBB entered into the governing loan purchase and broker agreements and assigned the rights under those agreements to LBHI. *See Hometrust*, 530 B.R. at 607, 613 (confirming that the "[Hometrust LPA] gives LBHI, as assignee of LBB's rights under the [Hometrust LPA]"). Those events occurred pre-petition.[9] Therefore, under iFreedom's logic, because LBHI acquired its rights to contractual indemnification pre-petition, there was a case or controversy. If SecurityNational and iFreedom wished to adjudicate their unmatured, contingent *potential* liability under the pre-petition agreements, they could have initiated declaratory judgments pre-petition.[10]

---

[9] As set forth more fully the *Opposition of LBHI to Motions seeking an Order Vacation the ADR Procedures Order for Indemnification Claims Against Mortgage Loan Sellers* [ECF No. 49254], LBB's indemnification and other rights under the LPAs between each Seller and LBB were transferred to LBHI at the time each loan was sold to LBHI.

[10] As demonstrated in its Delaware Complaint, SecurityNational was aware of its contingent, unmatured liability for the loans it sold to LBHI and its affiliates at least as early as 2007. Delaware Complaint at §17 ("After Lehman

**B.**     **SecurityNational's and iFreedom's Delaware and Utah Actions Violate Bankruptcy Code Section 362(a)(3) Because Pursuant to LBHI's Plan and Confirmation Order, the Indemnification Claims Are Property of the Estate that Existed as of the Petition Date, Were Retained by LBHI for Post-Confirmation Prosecution, and Are Protected by the Automatic Stay**

14.    Section 362(a)(3) bars an action that attempts to exercise control over "property of the estate," which is defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. §§ 362(a)(3), 541(a)(1).  Claims held by a debtor are property of the estate and where a party files an action for declaratory relief in order to control or subvert prosecution of those claims, it constitutes a violation of the automatic stay under Section 362(a)(3).  *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 460 B.R. 106, 115 (Bankr. S.D.N.Y. 2011).  SecurityNational's and iFreedom's argument that the Delaware and Utah Actions do not violate the automatic stay because the Indemnification Claims were never property of the estate rests on a fundamental misreading of the Plan.  SN Opp. at 6; iFreedom Obj. at 14.  The Indemnification Claims are assets of the estate and are therefore protected by Section 362(a)(3).

15.    Section 541(a)(1) of the Bankruptcy Code is extraordinarily broad and includes "'[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative'" constitute property of the estate.  *Giuliano v. FDIC (In re Downy Fin. Corp.)*, 499 B.R. 439, 453 (Bankr. D. Del. 2013) (quoting *In re Yonikus*, 966 F.3d 866, 869 (7th Cir. 1993)), *aff'd*, 2015 WL 307013 (3d Cir. Jan. 26, 2015); *In re South Side House, LLC*, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122

---

Bank/Aurora Loan Services raised some alleged issues with respect to certain loans purchased by Lehman Bank from SecurityNational, Lehman Bank and Aurora Loan Services entered into an Indemnification Agreement with SecurityNational dated December 17, 2007.").

(2d Cir. 2008)).  Although then contingent and not yet matured, the Indemnification Claims

arising from pre-petition agreements are property of LBHI's estate pursuant to section 541(a)(1).

16.    As a consequence, the Indemnification Claims were always protected by section

362(a)(3).  They did not accrue until after LBHI's liability to a third-party was fixed under

settlements with the GSEs, but they were nevertheless property of the estate.  *See* Motion at ¶16.

Following the effective date, those contingent, unmatured Indemnification Claims, along with all

other property of LBHI's estate, re-vested in LBHI for the benefit of creditors, pursuant to the

provisions of LBHI's Plan and Confirmation Order.  *See* Confirmation Order §39; Plan §13.1.

Indeed, LBHI's Plan and Confirmation Order expressly contemplate and provide for LBHI's

retention of contingent, unmatured Indemnification Claims for post-confirmation prosecution

and monetization for the benefit of creditors.[11]

17.    The fact that the Plan re-vested the Indemnification Claims in the Debtor does not

remove them from the protections of section 362(a)(3).  To the contrary, "[t]he reversion of

property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is

explicitly subject to the provisions of the plan," and thus the plan may provide for post-

confirmation continuation of the estate and the automatic stay protecting property of the estate.

*Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993).

18.    Here, LBHI's Plan and Confirmation Order provide for post-confirmation

continuation of the automatic stay to protect the property of LBHI's estate that re-vested in the

Debtors to be liquidated and distributed to all creditors in accordance with the Plan.  Section 13.1

---

[11] The Plan provides that LBHI will retain all its "Litigation Claims", which includes "any and all actions, causes of action . . . and demands whatsoever . . . liquidated or *unliquidated*, fixed or *contingent*, matured or *unmatured*, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or *hereafter arising*, in law, equity, or otherwise, *based in whole or in part upon any act or omission or other event occurring prior to the Effective Date*."  *See* Plan §§ 13.8, 1.102, 1.17 (emphasis added).  Moreover, Section 8.14 of the Plan and Section 79 of the Confirmation Order preserves LBHI's "rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right."

9

of the Plan provides for property of the estate to be re-vested in the Debtors "free of any

restrictions of the Bankruptcy Code … *except as explicitly provided herein*."  Plan § 13.1

(emphasis added).  Section 13.7 of the Plan provides that "all injunctions or stays arising under

or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code . . . in

existence on the Confirmation Date, shall remain in full force and effect until the closing of the

Chapter 11 Cases."  Plan § 13.7; *see also* Confirmation Order § 54.  Thus, the Plan expressly

provides that even if property of the estate, such as the contingent, unmatured Indemnification

Claims, re-vested in the Debtors, they remain protected by the automatic stay until the closing of

the Debtors' Chapter 11 cases.  Accordingly, SecurityNational's and iFreedom's Delaware and

Utah Actions seeking declarations as to the enforceability of the Indemnification Claims

constitute actions to control property of LBHI's estate, and are barred by section 362(a)(3).

19.     Moreover, even if the indemnification Claims were no longer property of the

estate, that fact does not make Section 13.7 unenforceable.  Rather, the Court must consider the

entirety of the Plan when interpreting its scope and applicability.  A confirmed plan of

reorganization is considered a contract and should be interpreted in accordance principles of

contract interpretation.  *See In re Shenango Group Inc.*, 501 F.3d 338, 344-45 (3d Cir. 2007).

"The rules of contract construction require [the Court] to adopt an interpretation which gives

meaning to every provision of the contract."  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d

101, 111 (2d Cir. 2008).  The Plan provision authorizing continuation of the stay against acts

affecting property of the estate must also be read in conjunction with the retention and pursuit by

LBHI of the Indemnification Claims.  *See Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) ("A

written contract will be read as a whole, and every part will be interpreted with reference to the

whole"); *see also In re Cendant Corp. Sec. Litig.,* 454 F.3d 235, 247 (3d Cir. 2006).  Accepting

10

SecurityNational's and iFreedom's argument would render Section 13.7 meaningless, in

contravention of doctrines of contract interpretation. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.

1992).

20.    The Plan and Confirmation Order provide that the Indemnification Claims, while

re-vesting in LBHI, would be preserved and administered for the benefit of creditors.  Such

claims retained the characteristics of and continue to functionally be property of the estate after

confirmation and, thus, the extension of the stay is necessary to protect them while they are

liquidated.  Therefore, Section 13.7's express continuation of the stay has a purpose consistent

with the purposes of the Plan—preventing the impairment or dissipation of valuable assets

through a hodge-podge of post-confirmation declaratory judgment and other actions brought by

potential defendants in various non-bankruptcy forums.  Reading Section 13.7 out of the Plan

would undermine the express provisions of the Plan that empower LBHI to liquidate such

claims.

### C.    iFreedom's Utah Actions Constitute an Act to Exercise Control Over Property of the Estate

21.    iFreedom's argument that the Utah Actions do not constitute an act to exercise

control over property of the estate is also meritless.  iFreedom Opp. at 16.  iFreedom knew of

this Court's statute of limitations rulings in the *LHM* and *Hometrust* cases and filed the Utah

Actions hoping that a non-bankruptcy judge unfamiliar with New York law would rule that it

was not liable for the Indemnification Claims because those claims are untimely.  Such a ruling

might impair LBHI's ability to recover the amounts sought on the Indemnification Claims,

including, but not limited to, erasing the amounts owed by iFreedom.

22.    iFreedom's attempts to distinguish LBHI's caselaw are unavailing.  For example,

LBHI cited *In re Pintlar Corp.*, 175 B.R. 379, 385 (Bankr. D. Idaho 1994) (*citing In re Minoco*

11

*Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986)), *rev'd on other grounds*, 124 F.3d

1310 (9th Cir. 1997), for the proposition that declaratory judgment actions can be acts of

potential control over an asset of the estate.  iFreedom does not dispute that proposition, or the

underlying authority of *In re Minoco*, or cite any authority to the contrary.  Instead, iFreedom

points out that the appellate court reversed the ruling not on the cited legal principle, but on

different grounds, *i.e.*, the declaratory judgment action did not actually involve estate assets – a

fact quite different from this case.[12]  *See In re Pintlar Corp.* 124 F.3d at 1313.  Likewise,

iFreedom's attempts to distinguish *Securities Inv. Prot. Corp.*, 460 B.R. at 114-16—because it

was an "avoidance action" and the trustee was using the stay "defensively"—are unpersuasive

because stays are not limited to avoidance actions.  LBHI is also relying on the stay defensively

to protect its right to choose the timing and forum of claims that it unquestionably holds as a

plaintiff.

     23.    iFreedom's remaining cited cases are also distinguishable.  For example, *In re*

*Residential Capital, LLC*, 541 B.R. 202, 204-205 (Bankr. S.D.N.Y. 2015), the trust sought to bar

defendants from asserting counterclaims in post-petition lawsuits brought by the Trust, claiming

that such counterclaims were discharged as pre-petition claims.  Not surprisingly, the court

denied the motion finding it inequitable for the trust to instigate litigation while simultaneously

shielding itself from counterattack.  *Id*. at 216-17.  Neither iFreedom nor SecurityNational will

be prevented from pleading defenses.  LBHI's motion only seeks to enforce the stay in order to

halt improper forum shopping by putative defendants.  *See also In re Levitz Furniture Inc*., 267

B.R. 516, 521 (Bankr. S.D.N.Y. 2000) (declining to enjoin litigation under section 362(a)(3)

---

[12] SecurityNational makes the same inapposite point.  See SN Opp. at 8 ("There, the Ninth Circuit held that a Delaware declaratory judgment was not barred by the automatic stay because the subject interest of the Debtor was not property of the estate.").

because [unlike here] defendants were not "seeking to terminate a valid contract which they have

with the Debtor."); *Continental Air Lines, Inc. v. Hillblom (In re Continental Airlines, Inc.)*, 61

B.R. 758, 778-79 (S.D. Tex. 1986) (declining to enjoin post-petition litigation claims under

section 362(a)(3)).

**II.    SecurityNational's and iFreedom's Delaware and Utah Actions are Improper Collateral Attacks on this Court's Jurisdiction and LBHI's Plan and Confirmation Order**

24.    SecurityNational and iFreedom were well aware of the Plan and Confirmation

Order before they filed their out-of-state actions to wrest control of the Indemnification Claims

from this Court.  On May 29, 2014, LBHI served SecurityNational and iFreedom with a motion

to institute alternative dispute resolution procedures with loan sellers, including SecurityNational

and iFreedom.  On June 24, 2014 the Bankruptcy Court entered the *Alternative Dispute*

*Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan*

*Sellers* [ECF No. 45277] in LBHI's Chapter 11 case ("ADR Order").  On August 12, 2014 the

Bankruptcy Court entered the *Alternative Dispute Resolution Procedures Order for*

*Indemnification Claims of the Debtors Against Mortgage Loan Seller SecurityNational Mortgage*

*Company* [ECF No. 44450] in LBHI's Chapter 11 case ("SN ADR Order").  On August 28,

2015, LBHI served on SecurityNational an "Indemnification ADR Package" in connection with

the SN ADR Order, and SecurityNational began to participate with LBHI in the court-ordered

mediation.  *See* Motion at ¶ 25.  On August 29, 2015, LBHI served on iFreedom an

"Indemnification ADR Package" in connection with the ADR Order, and iFreedom began to

participate with LBHI in the court-ordered mediation.  Consequently, beginning in at least June

2014, SecurityNational and iFreedom had notice of the Confirmation Order and the Plan,

followed by the ADR Order, which they knew provided for post-confirmation prosecution of the

13

Indemnification Claims.  And they know or should have known that the Plan and Confirmation

Order continued the automatic stay to protect such claims.

25.      Yet, on January 26, 2016, SecurityNational chose to file the Delaware Action in

violation of Section 13.7 of the Plan and Section 54 of the Confirmation Order.  Such injunctions

issued by the Bankruptcy Court can and do extend to non-parties.  *See In Re Quigley Co., Inc.*,

361 B.R. 670, 675 (Bankr. S.D.N.Y. 2007) (citing *A.H. Robins Co. v. Piccinin (In re A.H. Robins

Co.)*, 788 F.2d 994, 1001-02 (4th Cir. 1986) and *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287

(2d Cir. 2003)).

26.      Rather than seek relief from the stay in this Court as they must, SecurityNational

and iFreedom exercised self-help by filing actions in courts they view as more favorable.  Their

actions constitute an improper collateral attack on the Bankruptcy Court's order.[13]  *See, e.g.*, *In

re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000) ("The automatic stay is an injunction issuing

from the authority of the bankruptcy court, and bankruptcy court orders are not subject to

collateral attack in other courts"); *see also JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 505

Fed. A'ppx 430, 434 (6th Cir. 2012) (denying appellant permission to submit a claim for

consequential damages as such would amount to an impermissible attack on a prior judgment

that addressed the same issue).[14]

27.      Finally, SecurityNational's argument that its Delaware Action is not an attempt to

subvert LBHI's ability to pursue the Indemnification Claims rings hollow.  LBHI instituted the

ADR process, as well as specific litigations, involving the Indemnification Claims in this Court

---

[13] SN Opp. at 13 ("SecurityNational is not bound by the Plan or Confirmation Order").

[14] SecurityNational's last argument regarding the automatic bankruptcy stay supposes that LBHI did not believe the automatic stay applied because in its ADR Motion, LBHI requested to preserve the right to remove to the Bankruptcy Court any action filed elsewhere. SN Opp. at 14. SecurityNational's argument lacks merit.  LBHI was and is entitled to preserve all of its rights, irrespective of whether the need to assert such right is viable or comes to fruition.

14

well before the Delaware Action, and, as the plaintiff, is entitled to choice of forum.  It is also

eminently reasonable to utilize a court with a New York situs to interpret agreements primarily

governed by New York law.

## CONCLUSION

WHEREFORE the Plan Administrator respectfully requests that the Court order

iFreedom to dismiss the Utah Actions and order SecurityNational to dismiss the Delaware

Action as having been brought in violation of the Automatic Stay, the Plan and the Confirmation

Order and grant the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        April 28, 2016

                                             /s/William A. Maher
                                            William A. Maher
                                            Paul R. DeFilippo
                                            James N. Lawlor
                                            Adam M. Bialek

                                            WOLLMUTH MAHER & DEUTSCH LLP
                                            500 Fifth Avenue
                                            New York, New York 10110
                                            Telephone:  (212) 382-3300
                                            Facsimile:  (212) 382-0050

                                                    -and-

                                            Michael A. Rollin
                                            Maritza Dominguez Braswell (*pro hac vice*)

                                            ROLLIN BRASWELL FISHER LLC
                                            8350 E. Crescent Pkwy., Suite 100
                                            Greenwood Village, Colorado 80111
                                            Telephone:  (303) 945-7415
                                            Facsimile:  (303) 974-7468

                                            *Counsel for Lehman Brothers Holdings Inc.*