RESPONSE DEADLINE: April 29, 2016 at 4:00 PM (prevailing Eastern Time)

**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
Daniel J. Guyder
Jonathan Cho

*Counsel to Banca Monte dei Paschi di Siena SpA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.** *et al.* | : Case No. 08-13555 (SCC) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

----------------------------------------------------------------X

**RESPONSE OF BANCA MONTE DEI PASCHI DI SIENA SPA TO**
**PLAN ADMINSTRATOR'S OBJECTION TO CLAIM NUMBER 28176**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Banca Monte dei Paschi di Siena SpA ("**BMPS**"), through its undersigned counsel, hereby submits this response (this "**Response**") to the *Plan Administrator's Objection to Claim Number 28176*, [ECF No.52366] (the "**Objection**") filed by Lehman Brothers Holdings Inc. ("**LBHI**" and the "**Plan Administrator**") on March 30, 2016. In support of this Response, BMPS respectfully states as follows:

**BACKGROUND**

1. Anthracite Rated Investments (Jersey) Limited ("**Anthracite**") and Lehman Brothers Finance AG *a/k/*a Lehman Brothers Finance SA ("**LBF**," and together with Anthracite, the "**Parties**") were party to a *1992 ISDA Master Agreement* (the "**ISDA Master Agreement**")

0018282-0000063 NY:25186486.7

and *Schedule* (the "**Schedule**") dated as of March 29, 2006, and amended and restated as of December 11, 2006 (the ISDA Master Agreement and the Schedule, together, the "**ISDA Agreement**").

2. Pursuant to the ISDA Agreement, the Parties entered into a cash-settled put option transaction (the "**Put Option**") evidenced by a confirmation dated as of March 28, 2007, and amended and restated as of May 8, 2008 (the Put Option and the ISDA Agreement, together, the "**Put Option Agreement**"). LBHI served as Credit Support Provider under the Put Option Agreement and, further, guaranteed all obligations of LBF arising thereunder pursuant to (a) that certain *Guarantee of Lehman Brothers Holdings Inc.* dated on or about March 29, 2006 (the "**LBHI Express Guarantee**") and (b) that certain *Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc.* dated June 9, 2005 (the "**LBHI Board Guarantee**," and together with the Express Guarantee, the "**Guarantees**").

3. On September 15, 2008, LBHI filed a petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). This filing constituted an Event of Default under §5(a)(vii) of the ISDA Master Agreement and resulted in the Automatic Early Termination of the Put Option pursuant to §6(a) of the ISDA Master Agreement.

4. On December 22, 2008, upon the order of the Swiss Financial Market Supervisory Authority (f/k/a the Swiss Federal Banking Commission), LBF was placed into liquidation proceedings under Swiss law (the "**Swiss Proceeding**") and PricewaterhouseCoopers AG was appointed as liquidator (the "**Swiss Liquidator**").

**The Anthracite Claims and Transfer to BMPS**

5. On September 22, 2009, Anthracite timely filed proof of claim number 28176 against LBHI under the Guarantees (the "**Guarantee Claim**"), asserting therein a claim against LBHI (in an unliquidated amount) for all amounts due and payable by LBF to Anthracite pursuant to §6(e) of the ISDA Master Agreement and a claim in a liquidated amount of not less than USD 83,110.17 for certain liquidated fees, costs, expenses, and indemnities payable by LBF under the Put Option.  Anthracite reserved its right to amend the Guarantee Claim once it completed its calculation of the termination amount due from LBF under the Put Option Agreement (and LBHI on account of the Guarantees).  Subsequently, on October 21, 2009, Anthracite issued a calculation statement setting forth this calculation (the "**Calculation Statement**").

6. On May 5, 2010, Anthracite filed a claim against LBF (the "**Primary Claim**" and together with the Guarantee Claim, the "**Claims**") in the Swiss Proceeding, asserting a claim against LBF for:  (a) an Early Termination Amount of EUR 5,862,982 pursuant to section 6(e) of the ISDA Master Agreement; (b) certain expenses due to it under section 11 of the ISDA Master Agreement; and (c) interest accrued between September 15, 2008, and December 22, 2008.

7. On September 12, 2014, the Swiss Liquidator, HSBC Trustee (C.I.) Limited and Anthracite entered into a settlement agreement (the "**Settlement Agreement**") whereby the Primary Claim was initially admitted in the Swiss Proceeding in the amount of CHF 8,940,648.04.  This amount however was later reduced upon the expiration of a creditor objection period to CHF 5,000,000.00 (the "**Admitted Primary Claim**").

8.  BMPS was the sole and beneficial owner of certain *Series 54 €100,000,000 Bonds due 2020 linked to The Tarchon Fund of Funds SPC* issued by Anthracite (the "**Bonds**"). Pursuant to an *Unwind Deed*, dated March 31, 2015, between Anthracite as issuer, HSBC Trustee (C.I.) Limited as trustee, HSBC Bank PLC as issuing and paying agent and custodian, Anthracite Balanced Company (JR-54) Limited as balanced company and BMPS as bondholder (the "**Unwind Deed**"), BMPS caused the early redemption of the Bonds. In connection with such redemption, Anthracite transferred to BMPS the Put Option Agreement, the Claims, and all rights and proceeds associated therewith. Further, in accordance with the Unwind Deed, on April 21, 2015, Anthracite and BMPS notified the Court of the transfer of the Guarantee Claim (Proof of Claim 28176) by filing an *Evidence of Transfer of Claim Other Than for Security* [ECF No. 49273].

9.  To date, BMPS has received a total distribution of CHF 2,998,000 from LBF in respect of the Admitted Primary Claim. BMPS has received no distribution from LBHI's estates on account of the Guarantee Claim, which is the subject of this dispute.

**The Plan Administrators' Objections to the Guarantee Claim**

10. On June 15, 2015, the Plan Administrator filed the *Plan Administrator's Five Hundred Second Omnibus Objection to Claims (Insufficient Documentation of Claims)* [ECF No. 49999], seeking to expunge the Guarantee Claim on the basis that the Plan Administrator did not receive sufficient documentation in support thereof (the "**Initial Objection**").

11. In response to the Initial Objection, BMPS provided LBHI with, among other things, certain documents submitted in support of the Primary Claim in the Swiss Proceeding, certain letters exchanged between the Parties regarding the Primary Claim, an expert report

delivered to the LBF on the proper interpretation of the calculation provisions of the Put Option Agreement, various ancillary documents used to support the valuation of the Primary Claim, and the Settlement Agreement (together, the "**Claim Documents**").

12. On March 30, 2016, the Plan Administrator filed the Objection, which asserts that the Plan Administrator reviewed the Claim Documents, conducted its own valuation, and in accordance with its valuation, determined that "the proper value of [the Guarantee Claim] is, $453,000." The Objection states further that, "[u]pon information and belief" of the Plan Administrator BMPS has received "approximately $2.6 million on account of its primary claim." On this basis, the Objection seeks an order from this Court deeming the Guarantee Claim satisfied in full.

## ARGUMENT

### The Plan Administrator Does Not Provide Evidence to Rebut the Claim

13. The Plan Administrator has failed its burden of proof to rebut the validity of the Guarantee Claim. It is well settled that a properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Further, "because a properly filed proof of claim is deemed allowed until objected to, 'such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's prima facie case.'" *See In re Adelphia Communs. Corp.*, 2007 Bankr. LEXIS 660 at *16 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987). A claimant only bears the burden of establishing the validity of its claim "'once an objectant offers sufficient evidence to overcome the prima facie validity of the claim.'" *Id*. (quoting *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)). Such evidence must be "in

equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

14. The Objection expressly does not seek to challenge the validity of the Guarantees or to "asser[t] a defense to liability under [the Guarantees]." Instead, the Objection only challenges Anthracite's calculation of the Primary Claim through a single, bare, unsworn assertion that, based on "its own valuation . . . . the proper value of [the Guarantee Claim] is $453,000." and is insufficient to rebut the prima facie validity of the Guarantee Claim.

15. First, Anthracite and LBF selected the "Second Method and Loss" for the purposes of determining amounts payable upon the Early Termination of transactions under the ISDA Agreement. This metric provides that "an amount will be payable equal to the Non-defaulting Party's Loss," and "Loss" in turn means, in pertinent part, "with respect to . . . . a party, the Termination Currency Equivalent of an amount that party reasonable determines in good faith to be its total losses and costs[.]" Thus, as the Non-defaulting Party within the meaning of the ISDA Master Agreement, Anthracite is the only party with the contractual right to calculate the termination amount due under the Put Option Agreement. LBHI, a Credit Support Provider that is not even a party to the ISDA Agreement, has no such right. Further, the Plan Administrator concedes that Anthracite calculated the Primary Claim consistent with market practice, in good faith, in a commercially reasonable manner, and in accordance with its rights under the Put Option Agreement, as the Objection is devoid of any challenge on that basis and is limited to asserting that the Plan Administrator calculates a different (more favorable) amount. That the Plan Administrator can offer a differing amount is of no relevance to determining LBHI's liability under the Guarantees where Anthracite has fully complied with its

obligations under the ISDA framework. In short, Anthracite's calculation of the Primary Claim controls under the terms of the contract and LBHI's alternative amount provides no basis to conclude otherwise.

16. Moreover, even if the Plan Administrator's alternative amount were relevant – and it is not – the Objection contains no explanation or evidence to support the Plan Administrator's calculations. The dearth of evidence to support the Objection stands in sharp contrast to the extensive supporting evidence that Anthracite has provided to LBHI to support the Guarantee Claim, including the Claim Documents which include a supporting expert valuation report, and the extensive discussion and consideration of these very issues in the context of the Swiss Proceeding, culminating in the allowance of the Primary Claim in the Swiss Proceeding in the amount of CHF 5,000,000. Given the complete lack of support for the calculation that forms the basis for the Objection, the Objection must be overruled.

17. Simply put, the Plan Administrator has failed to provide any basis to deny Anthracite the right to calculate the termination amount due under the Put Option Agreement. Even if it LBHI could – and it cannot – its position is unsupported and fails the evidentiary burden necessary to support an objection to the Guarantee Claim. Accordingly, the Objection should be denied based on the Plan Administrator's failure to present any legal or factual basis for the Objection sufficient to negate the *prima facie* validity of the Guarantee Claim in the amount asserted by Anthracite. To the extent that this Court does not overrule the Objection on this basis, BMPS reserves the right to: (a) seek discovery from the LBHI as to their purported valuation of the Guarantee Claim; (b) supplement or otherwise amend this Response to the Objection based on such discovery; and (c) request, if necessary, a full evidentiary hearing pursuant to Rule 9014(e) of the Bankruptcy Rules and Rule 9014-2 of the Local Rules of

Bankruptcy Procedure to determine the proper amounts of the Guarantee Claim including through testimony of expert witnesses if needed.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, BMPS respectfully requests that this Court: (i) overrule the Objection and (ii) grant such further relief as this Court deems just and proper.

Dated: April 29, 2016
      New York, New York

                          ALLEN & OVERY LLP

                          By: /s/ Daniel J. Guyder
                          Daniel J. Guyder
                          Jonathan Cho
                          1221 Avenue of the Americas
                          New York, New York  10020
                          Telephone (212) 610-6300
                          Facsimile (212) 610-6399
                          daniel.guyder@allenovery.com
                          jonathan.cho@allenovery.com

                          *Counsel to Banca Monte dei Paschi di Siena SpA*