WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:  (212) 382-3300
Facsimile:  (212) 382-0050
William A. Maher
Paul R. DeFilippo
William F. Dahill
John D. Giampolo
Mara R. Lieber

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                    :
**In re**                                           :        **Chapter 11**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**   :        **Case No.: 08-13555 (SCC)**
                                                    :
                        **Debtors.**                :        **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

## AMENDED MOTION BY LEHMAN BROTHERS HOLDINGS INC. TO ENFORCE ITS PLAN AND CONFIRMATION ORDER AGAINST DEUTSCHE BANK AG, LONDON BRANCH AS THE HOLDER OF CERTAIN CLAIMS AND FOR OTHER ANCILLARY RELIEF

Lehman Brothers Holdings Inc. ("**LBHI**"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "**LBHI Plan**") and Order confirming the LBHI Plan [ECF No. 23023] (the "**Confirmation Order**"), for the entities in the above referenced chapter 11 cases, hereby submits this *Amended Motion by Lehman Brothers Holdings Inc. to Enforce Its Plan and Confirmation Order Against Deutsche Bank AG, London Branch as the Holder of Certain Claims and for Other Ancillary Relief* (the "**Motion**") together with the supporting Declaration

of Karen B. Garza ("**Garza Dec**"),[1] as a Director at LBHI, filed herewith.  In support of this

Motion, LBHI respectfully represents as follows.

## PRELIMINARY STATEMENT

LBHI brings this Motion to stop Deutsche Bank AG, London Branch ("**DB**" or

"**Deutsche Bank**") from wrongfully manipulating distributions from LBHI and Lehman Brothers

Bankhaus AG ("**LBB**")[2] in contravention of the provisions of the LBHI Plan, Confirmation

Order, DB's Bilateral Agreement with LBHI as Plan Administrator and other related agreements

that were made pursuant to the LBHI Plan and in furtherance of the LBHI Plan's terms for

distribution and satisfaction of guarantee claims against LBHI.  DB seeks to wrongfully profit

from the recently increased strength of the U.S. Dollar in currency exchange rates by refusing the

final Euro distribution tendered since September 2015 from LBB on certain direct claims DB

holds against LBB (each a "**DB Direct Claim**") as the direct obligor and, instead, demanding a

U.S. Dollar distribution from LBHI on claims DB holds against LBHI (each a "**DB Guarantee**

**Claim**") as the guarantor of the DB Direct Claims.  The currency exchange variance applicable

to DB's claims would result in an approximately *$3 million* value difference and thus DB's

efforts to pursue that final distribution in U.S. Dollars from guarantor LBHI, instead of the

---

[1] This Motion amends the *Motion by Lehman Brothers Holdings Inc. to Enforce Its Plan and Confirmation Order Against Deutsche Bank AG, London Branch as the Holder of Certain Claims and for Other Ancillary Relief* filed April 21, 2016 [ECF No. 52570] only to the extent of clarifying that the Bilateral Agreement at issue between LBHI and Deutsche Bank AG, London Branch is not expressly incorporated by reference in the LBHI Plan but was made pursuant to and in furtherance of the LBHI Plan's terms for distribution and satisfaction of guarantee claims against LBHI, as clarified on pages 2 through 4 and paragraphs 7, 13, 26, 31, 32, and 37 herein.  The original Motion [ECF No. 52570] was scheduled for hearing on May 10, 2016 with an objection deadline of May 3, 2016.  LBHI agreed to adjourn the hearing to June 2, 2016 at 10:00 a.m. and to extend the objection deadline for Deutsche Bank AG, London Branch to May 16, 2016.  No other party has asserted any objection to the original Motion.  There are no amendments or changes to the Garza Dec dated April 21, 2016 which was filed with the original Motion and is filed again herewith, and this amended version of the Motion contains no other amendments or changes other than the foregoing.

[2] LBB is an affiliate of LBHI that is involved in an insolvency proceeding in Germany.

appropriate Euro distribution offered by direct obligor LBB, would result in a windfall of approximately $3 million in favor of DB and at the expense of all other creditors of LBHI.[3]

The LBHI Plan and Confirmation Order provide terms for distribution and satisfaction of Guarantee Claims (as defined in the LBHI Plan) wherein the holder of a Guarantee Claim is deemed satisfied and can no longer pursue it against LBHI once the holder receives distributions from guarantor LBHI on account of the Guarantee Claim and from the direct obligor on account of the corresponding Primary Claim (as defined in the LBHI Plan) in a combined amount that equals the allowed amount of the Guarantee Claim.  Once that happens LBHI shall be entitled to receive all future distributions from the direct obligor on account of the corresponding Primary Claim as subrogee to the extent of recovering all amounts LBHI had distributed on account of the Guarantee Claim.  The LBHI Plan makes clear that the holder of a Guarantee Claim against LBHI cannot receive from all sources more than the allowed amount of that Guarantee Claim and gives the holder no right or option to refuse distribution tendered from the direct obligor on account of the Primary Claim to instead demand distribution from guarantor LBHI on account of the Guarantee Claim.  The DB Direct Claims are Primary Claims DB holds against direct obligor LBB and the DB Guarantee Claims are the corresponding Guarantee Claims DB holds against LBHI.

Following confirmation of the LBHI Plan, LBHI entered into certain agreements with LBB, with DB and with other holders of claims against LBB and LBHI, including a certain Bilateral Agreement with DB.  Those agreements were made pursuant to and in furtherance of

---

[3] The LBHI Plan has an applicable U.S. Dollar to Euro conversion rate of 1.3402:1 which is materially higher than the currency conversion rate extant at the time of the September 2015 LBB distribution (and today). By way of illustration, the U.S. dollar to Euro conversion rate as of April 13, 2016 was 1.1274:1.

the LBHI Plan's foregoing terms for distribution and satisfaction of Guarantee Claims against LBHI and incorporate the LBHI Plan's foregoing U.S. Dollar to Euro conversion rate (such agreements together with the LBHI Plan and Confirmation Order, collectively, the "**LBHI Plan Documents**").  Those LBHI Plan Documents together provide for claims such as the DB Direct Claims to be effectively satisfied through the final Euro distribution offered by direct obligor LBB and do not give holders of such claims the option or the right to instead demand satisfaction from guarantor LBHI in order to exploit a currency exchange rate differential to obtain a windfall at the expense of LBHI's other creditors. Those LBHI Plan Documents also provide that once the holders of such direct claims against LBB are paid in full pursuant to a "Quota Cap", the claims are assigned over to LBHI and LBHI, through its foregoing subrogation rights, then becomes the claimant and entitled to the next distributions from LBB.  Indeed, there is no basis for DB's refusal of the appropriate final Euro distribution which LBB continues to hold in reserve for it.  DB received previous Euro distributions from LBB on account of those claims without issue and it agreed in the fall of 2015 to the amount and method of calculation of the final Euro distribution offered from LBB to effectively satisfy and assign the DB Direct Claims to LBHI.  DB only refused to accept that final Euro distribution from LBB, and instead demanded distribution in U.S. Dollars from LBHI, because DB realized that if that final amount had to be converted from Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan it would result in a substantial currency exchange rate windfall in DB's favor.

DB also seeks to maintain improper leverage over the LBB insolvency proceeding by refusing to withdraw certain other claims against LBB which were denied (each a "**Denied LBB Claim**") and which DB agreed to withdraw in exchange for receiving certain direct claims against LBHI (each a "**Direct LBHI Claim**") in lieu of the Denied LBB Claims.  DB agreed to

4

this in connection with agreements encompassed in the LBHI Plan Documents but to date DB has failed to withdraw the Denied LBB Claims contrary to its agreement with LBHI.

DB's foregoing misconduct poses a substantial harm to LBHI and its other creditors and LBB. In addition to the harm that would be caused by giving DB the windfall U.S. Dollar distribution it demands at the expense of LBHI's creditors, DB's wrongful conduct has required LBHI to unnecessarily incur the expense of prosecuting this Motion. Additionally, LBHI is, by far, LBB's largest creditor and DB's refusal to accept final distribution from LBB and relinquish its claims against LBB risks frustrating and delaying the winding up of LBB's estate and delays assignment of DB's allowed claims against LBB over to LBHI who should now be receiving any future distributions on account of those claims. Accordingly, this Motion, in sum, seeks to enforce provisions of the foregoing LBHI Plan Documents against DB to (i) deem the DB Guarantee Claims against LBHI effectively satisfied and the DB Direct Claims assigned to LBHI by virtue of the final Euro distribution which LBB tendered and holds in reserve for DB, and (ii) bar DB from pursuing any further distributions from LBHI on account of the DB Guarantee Claims. This Motion also seeks award of damages to LBHI to compensate it for DB's foregoing misconduct. Furthermore, this Motion seeks to suspend future distributions from LBHI to DB on account of its Direct LBHI Claims against LBHI until DB withdraws the Denied LBB Claims it holds against LBB, as DB had agreed to do.

Forty-three other similarly situated LBB creditors with LBHI guaranties (each a "**LBB/LBHI Creditor**"), with claims totaling over €8.7 billion, all accepted their final distribution in Euros from direct obligor LBB and effectively satisfied and assigned their claims to LBHI in accordance with the applicable LBHI Plan Documents. The only two LBB/LBHI Creditors that did not are DB and Trinity Investments Limited ("**Trinity**"). Like DB, Trinity

also seeks to profit by refusing the appropriate final Euro distribution offered in September 2015 from direct obligor LBB and demanding the very same wrongful U.S. dollar distribution that DB is demanding for final satisfaction of Trinity's claims, which, in the case of Trinity, would result in a currency exchange rate windfall of over $1 million at the expense of LBHI's other creditors. In fact, Trinity recently brought this issue to the forefront by again making wrongful demand for U.S. Dollar distributions for its claims from guarantor LBHI in March 2016 and by filing its motion to compel that distribution from LBHI [ECF No. 52309] (the "**Motion to Compel**") on March 22, 2016 based on nothing more than a concocted meritless excuse regarding German tax withholdings. LBHI was required to respond to the Motion to Compel with its *Amended Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims and Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief* [ECF No. 52544] ("**Objection/Cross-Motion**"),[4] which seeks essentially the same relief against Trinity as this Motion seeks against DB on essentially the same grounds.

DB has not yet taken legal action to compel the wrongful U.S. Dollar distribution it demands from LBHI. This is likely because DB knew of Trinity's Motion to Compel and seeks to benefit from any favorable precedent if it is granted and because, unlike Trinity, DB has never advanced even a meritless excuse to use as the basis for such a motion. Instead, DB simply has made a shameless naked demand for the windfall U.S. Dollar distribution from LBHI and continues to refuse the appropriate and agreed upon Euro distribution from direct obligor LBB in satisfaction of DB's claims. Trinity acquired its claims from DB, and LBHI believes it is no

---

[4] By this Motion LBHI joins in and incorporates herein by reference the applicable facts, points and authorities advanced in the Objection/Cross-Motion and in the supporting declaration filed therewith [ECF No. 52544-1] ("**Garza Cross-Motion Dec**"), a copy of which is annexed to the Garza Dec as Exhibit A.

coincidence that the two are engaging in the same foregoing misconduct for their own profit at the expense of LBHI's other creditors.    Accordingly, Trinity's Motion to Compel, which necessitated LBHI's Objection/Cross-Motion, made the subject matter at hand ripe for this Motion against the only other remaining LBB/LBHI Creditor, DB.

## BACKGROUND

### A.    LBHI, the LBHI Plan and the Treatment of Allowed Guarantee Claims

1.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the Bankruptcy Code.  *See* Garza Cross-Motion Dec, ¶ 2.  On December 6, 2011, the Court entered the Confirmation Order confirming the LBHI Plan.  *Id.*

2.    Pursuant to Section 8.3 of the LBHI Plan, LBHI made its initial distribution to holders of allowed general unsecured claims in April 2012, and has made subsequent distributions every six months thereafter, at or around March 30 and September 30 of each year. *See* Garza Cross-Motion Dec, ¶ 3, and Exhibit "A" attached thereto.  The LBHI Plan distributions are in U.S. dollars.  *Id.*

3.    Section 8.13 of the LBHI Plan concerns, among other things, Allowed Guarantee Claims (as defined in the LBHI Plan).  Section 8.13(a) of the LBHI Plan provides that Allowed Guarantee Claims are deemed satisfied in full if the holder of such Allowed Guarantee Claims receives distributions from LBHI and distributions and/or other consideration (including taxes withheld) on account of the primary claims that equal the allowed amount of the Guarantee Claims.  In addition,

> [t]o the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan

7

to the extent of LBHI's Distribution on account of such Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof.

*Id.* Section 8.13(b) of the LBHI Plan makes clear that the holder of an Allowed Guarantee Claim cannot receive, from all sources, more than the allowed amount of the Guarantee Claim.

4.      Section 8.13(d) of the LBHI Plan provides as follows:

For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date.

The applicable U.S. Dollar to Euro exchange rate on the Confirmation Date was 1.3402:1. Since the Confirmation Date, the U.S. dollar has strengthened in comparison to the Euro. Indeed, the April 13, 2016 close price per Bloomberg was 1.1274:1 U.S. Dollar to Euro, reflecting that the Euro was approximately 16% 'lower' or 'weaker' vs. the U.S. dollar than it was on the Confirmation Date. *See* Garza Dec, ¶ 5.

5.      If LBHI recovers any portion of distributions made on account of Allowed Guarantee Claims (either by way of subrogation, disgorgement or otherwise), the amount recovered is treated as Available Cash of LBHI, and distributed to creditors. *See* LBHI Plan, § 8.13(f).

**B.      LBB, Its German Insolvency Proceeding and the Harmonizing Resolution**

6.      On November 12, 2008, the German banking regulator filed insolvency proceedings against LBB, and on November 13, 2008, the local court of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as the LBB Insolvency Administrator ("**LBB Administrator**"). *See* Garza Cross-Motion Dec, ¶ 7. The LBB

Administrator commenced making distributions (in Euros) to holders of allowed claims in October 2010. *Id.*

7.      On November 19, 2014, LBHI and LBB (through the LBB Administrator) entered into an agreement ("**LBHI/LBB Agreement**") that provided, among other things, for (i) creditor assembly resolutions ("**Creditor Assembly Resolutions**") that resolved conflicting insolvency law issues, and (ii) the main content of bilateral agreements (each a "**Bilateral Agreement**") to be concluded between LBHI and LBB/LBHI Creditors (including DB). The agreed-upon issues set forth in the Creditor Assembly Resolutions and Bilateral Agreements are collectively referred to as the "**Harmonizing Resolution**." *See* Garza Cross-Motion Dec, ¶ 8; *see* Garza Dec, ¶ 6.

8.      The LBHI/LBB Agreement discusses, *inter alia*, the terms of distributions by LBHI and LBB on allowed claims, stating that LBB distributions will occur prior to the LBHI Plan distributions. *See* Garza Cross-Motion Dec, ¶ 9. Distributions made by LBB are to be made on a semiannual basis on or about February 28 and August 30 of each year. *Id.* Under the LBHI Plan, distributions are made on a fixed schedule (*see* LBHI Plan, § 8.3), approximately one month later.

9.      A stated goal of the Harmonizing Resolution was to ensure that no group of creditors or individual creditor is able to obtain an advantage (neither a procedural nor a tactical one). *See* Garza Cross-Motion Dec, ¶ 10.

10.     The economic objective of the Harmonizing Resolution was that all creditors recover 100% of their claims. *See* Garza Cross-Motion Dec, ¶ 11. The direct claims were against LBB and therefore were denominated in Euros; the recovery on such claims was tied to the Euro denominated amounts allowed by LBB.

C.    **DB, Its Claims and Its Agreement with LBHI**

11.    Each of the DB Direct Claims which DB holds against LBB, denominated in Euros, is based on contractual obligations of LBB and include the claims identified in Schedule A of the Second Amendment to DB's Bilateral Agreement with LBHI which is annexed to the Garza Dec as Exhibit F.  Each of the DB Guarantee Claims which DB holds claims against LBHI is based on guarantees of the obligations underlying the DB Direct Claims and include the claims identified in Schedule B of the Second Amendment to DB's Bilateral Agreement with LBHI.

12.    During negotiations between LBHI and DB in 2014 in connection with entering into a Bilateral Agreement, the parties discussed the resolution of various claims DB held against LBB which LBB disputed and denied.  In order to reach a resolution, LBHI agreed to allow DB the Direct LBHI Claims, which are included in Schedule C of the DB Bilateral Agreement and includes LBHI claim number 200208 for $16,973,160.94 and LBHI claim number 200209 for $41,119,315.76.  LBHI agreed to allow DB those Direct LBHI Claims in lieu of the Denied LBB Claims against LBB, which include LBB claim number § 38-267 for €12,777,307.36 and LBB claim number § 38-707 for €2,514,061.65, and in exchange DB agreed to withdraw those Denied LBB Claims. *See* Garza Dec, ¶ 12.

13.    On November 24, 2014, LBHI entered into a Bilateral Agreement with DB along with two subsequent amendments to same (as amended, the "**DB Bilateral Agreement**"), in which DB agreed, among other things, as follows:

- DB agreed to the Harmonizing Resolution and agreed to vote in favor of the Creditor Assembly Resolutions;

- Once the Creditor Assembly Resolutions were approved by the requisite majority of LBB's creditors, DB Guarantee Claims would be allowed in LBHI's bankruptcy case and shall be entitled to receive distributions under the LBHI Plan (in addition to distributions from LBB in respect of DB Direct Claims);

- DB agreed that it would be liable to LBHI "for the disgorgement of any distributions or other consideration received by [DB] on account of any [DB Guarantee Claim] . . . to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to [DB] or any previous holder on account of any portion of the related [DB Direct] Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such [DB] Guarantee Claim."  (¶ 9);

- DB agreed to accept an amount ("**Quota Cap**") equal to the USD amount of each allowed DB Guarantee Claim held by DB (provided that any EUR distributions to it would be converted to USD applying an exchange rate of 1.3402 (¶ 10(a)); and

- Once DB receives payment of the Quota Cap in connection with the DB Direct Claims, it was to assign, transfer and convey all of its rights to the DB Direct Claims to LBHI, and no further distributions would be made on the DB Guarantee Claims.  (¶ 10).

*See* DB's Bilateral Agreement along with the first and second amendment thereto annexed to the Garza Dec as Exhibits D, E and F, respectively.  LBHI and DB entered into the DB Bilateral Agreement pursuant to the LBHI Plan, and the settlement procedures Order made effective by the Confirmation Order, and in furtherance of the foregoing terms under Section 8.13 of the LBHI Plan for distribution and satisfaction of Guarantee Claims against LBHI, as well as to bind DB to the Harmonizing Resolution.  *See* DB's Bilateral Agreement, ¶¶ G-K, ¶¶ 9-10.

14.    Around the time that DB and LBHI entered into DB's Bilateral Agreement, over 40 other LBB/LBHI Creditors entered into similar Bilateral Agreements with LBHI. *See* Garza Cross-Motion Dec, ¶ 17.

15.    On November 24, 2014, the Harmonizing Resolution was approved by the requisite number of LBB's voting creditors, ***including DB***, and DB's Bilateral Agreement and the other Bilateral Agreements went into effect.  *See* Garza Cross-Motion Dec, ¶ 18; *see also* Garza Dec, ¶ 13.

16.     Pursuant to the foregoing agreement reached between DB and LBHI in connection with the DB Bilateral Agreement, DB agreed to withdraw the Denied LBB Claims against LBB in exchange for receiving the Direct LBHI Claims.  DB has been asked several times to but has not withdrawn the Denied LBB Claims in LBB's proceeding despite its agreement to do so.  DB knows that its failure to withdraw the Denied LBB Claims may frustrate and delay winding up LBB and is contrary to DB's agreement with LBHI which already granted DB the Direct LBHI Claims in lieu of the Denied LBB Claims.  *See* Garza Dec, ¶ 14.

17.     Moreover, once the DB Direct Claims against LBB, and corresponding DB Guarantee Claims, are paid their applicable Quota Caps, DB is obligated to assign the DB Direct Claims over to LBHI and pursue no further distributions from LBHI on account of the DB Guarantee Claims.  *See* DB Bilateral Agreement, ¶ 10.  Since DB should have accepted the final distribution from LBB back in September 2015, DB's foregoing claims should now be assigned over to LBHI.

**D.     The LBB Sixth Distribution and DB's Refusal to Accept Same**

18.     Between October 2010 and July 2015, distributions on direct claims against LBB, including the DB Direct Claims, were made by the LBB Administrator in Euros and DB accepted same without demanding distribution in U.S. Dollars from LBHI.  Upon information and belief, until August 2015, DB received, accepted and did not raise any issues with respect to previous Euro distributions from LBB on account of DB's Direct Claims.  *See* Garza Dec, ¶ 15.

19.     In August 2015, LBB determined that it had sufficient funds to make a distribution ("**LBB Sixth Distribution**") to DB and other LBB/LBHI Creditors subject to the Harmonizing Resolution, which would satisfy the Quota Caps for their claims (including all DB Direct Claims) in full (and, accordingly, not require LBHI to make any further distributions on

account of their related guarantee claims).  In connection with the LBB Sixth Distribution, in August 2015 LBB sent Quota Cap schedules (each a "**Quota Cap Schedule**") to each of these claimants, including DB, showing the exact amounts that they would each receive in the LBB Sixth Distribution, and requested confirmation that such amounts would be sufficient to reach their respective Quota Caps.  *See* Garza Cross-Motion Dec, ¶¶ 22, 23; *see also* Garza Dec, ¶ 16.

20.    Throughout August and September 2015, Alexander Kraemer, as the Director of DB who signed the DB Bilateral Agreement on behalf of DB, spoke with Karen Garza of LBHI about DB's Quota Cap Schedules for the LBB Sixth Distribution.   Ultimately, during conference calls which took place in late August 2015, early September 2015 and, in particular on September 14, 2015, Mr. Kraemer, on behalf of DB, stated that DB agreed with the numbers in the final Quota Cap Schedules sent to DB and agreed that the aggregate distribution of €13,389,061.93 (the "**Final Payment**") provided therein was sufficient to reach DB's Quota Caps and thus satisfy all remaining amounts owed to DB under the DB Direct Claims and corresponding DB Guarantee Claims.

21.    Despite DB agreeing with the accuracy of the Final Payment amount, Mr. Kraemer mentioned that he had "other hesitations" about signing a one-page confirmation ("**Confirmation**") to confirm DB's agreement to accept the Final Payment in satisfaction of its Quota Caps.  At that time, DB was also asked to sign a brief declaration towards LBB prior to receiving the Final Payment, which DB had already signed in the recent past.   DB was only asked to sign that declaration again because DB had recently acquired an additional claim which was included among the DB Direct Claims and thus needed to be covered by that declaration in

order to receive a distribution along with the other DB Direct Claims.[5]  Yet, Mr. Kraemer expressed unexplained "hesitations" about DB signing that document as well saying such "additional declarations" were onerous.  In an effort to resolve DB's unexplained "hesitations", Ms. Garza informed Mr. Kraemer that, as an alternative to DB accepting Final Payment from the LBB Sixth Distribution, LBHI could purchase or "buy out" the DB Direct Claims and pay DB the Final Payment in Euros.  *See* Garza Dec, ¶ 18.

22.    While offering no clear explanation for DB's "hesitation" to sign simple forms and accept the Final Payment for the DB Direct Claims, DB's true motive for delaying and refusing final distribution in Euros became clear when Mr. Kraemer began requesting payment instead from LBHI in U.S. Dollars.  On September 17, 2015 Mr. Kraemer, on behalf of DB, stated that it was DB's "preference" to instead receive its final distribution toward the DB Guarantee Claims in U.S. Dollars from LBHI's eighth distribution (the "**LBHI Eighth Distribution**") simply for the sake of "efficien[cy]."  *See* Garza Dec, ¶ 19.

23.    But there was nothing reasonable, appropriate, efficient or feasible about DB's "preference".  The foregoing LBHI Plan Documents and related agreements provide DB with no right to refuse a Euro distribution from the direct obligor LBB on the DB Direct Claims and instead demand subsequent U.S. Dollar distributions from the guarantor on the DB Guarantee Claims.  DB advanced no reasonable basis, or even a concocted excuse, for what it wanted. Shamelessly, it was simply DB's "preference" to receive a $3 million windfall at the expense of LBHI's other creditors, which certainly would not have been "efficient" for administration of LBHI.   Moreover, while DB's "preference" is impermissible regardless of when it was

---

[5] Note, DB's acquisition of such additional DB Direct Claims was the reason why DB and LBHI had to execute the Second Amendment to DB's Bilateral Agreement to ensure that all DB Direct Claims are governed by the same documents and provisions.

requested, from an administrative perspective it was requested too late since on September 17,

2015 the administrative cut-off date for inclusion of claims in the LBHI Eighth Distribution had

already expired. *See* Garza Dec, ¶ 20.

24.    Since DB already confirmed the accuracy of the Final Payment, there was no

reasonable basis for refusing to sign simple Confirmation documents which are necessary for

release of the final distribution from LBB. In order to appropriately administer the LBB

insolvency proceeding, and for LBB to ensure that the LBB Sixth Distribution to DB would have

resulted in DB receiving the Quota Caps for the DB Direct Claims (and exiting the LBB

insolvency proceeding), DB, like all other LBB/LBHI Creditors, was required to complete the

following three forms: (i) a one-page Confirmation, confirming that the amount DB was to

receive in the LBB Sixth Distribution was sufficient to satisfy DB's Quota Caps; (ii) a bank

information form, which required that DB certify their respective wiring instructions; and (iii) a

withholding tax form.  This was in addition to DB resigning the foregoing updated declaration to

include its newly acquired claim. *See* Garza Cross-Motion Dec, ¶ 25.   The "paid in full"

Confirmation was necessary for two reasons: (1) by acknowledging the LBB direct claims were

satisfied, it effectively eliminated the potential overpayment/disgorgement risk for LBB and

LBHI, and (2) once the LBB direct claims were paid in full, LBHI, through its subrogation

rights, would then become the claimant and entitled to the next distributions from LBB. The

German Court Clerk requested a clear "paid in full" Confirmation in order to effectuate the

change in payee for future LBB distributions to LBHI. *See* Garza Cross-Motion Dec, ¶¶ 25-27.

25.    For those very reasons, LBB distributions were structured to always precede the

LBHI distributions by approximately one month because it was contemplated that LBB/LBHI

Creditors would be paid in full by the combination of distributions made by LBB and LBHI.  At

the cross-over "paid in full" point, the LBB/LBHI Creditor needed to acknowledge that its debt was repaid in order to avoid the potential overpayment/disgorgement scenario, and to receive the payment to trigger the subrogation rights of LBHI.  *See* Objection/Cross-Motion, ¶ 6.

26.    All LBB/LBHI Creditors were required to complete the three forms in order to receive the LBB Sixth Distribution.  In fact, all LBB/LBHI Creditors, except DB and Trinity, executed the required forms, including the Confirmation, obtained their final distributions that reached their Quota Caps, exited the LBB insolvency proceeding, and relinquished and assigned their claims over to LBHI, in accordance with their respective Bilateral Agreements and the rest of the LBHI Plan Documents.  *See* Garza Cross-Motion Dec, ¶¶ 25-27, 31.

27.    The LBB Sixth Distribution was initiated on September 4, 2015 (and is continuing to this day).  *See* Garza Cross-Motion Dec, ¶ 28.  Despite having agreed that its Final Payment amount from the LBB Sixth Distribution was accurate and sufficient to reach DB's Quota Caps, DB persisted in its refusal to execute the required forms to receive that distribution and stood by its September 17, 2015 request to receive its final distribution in U.S. Dollars from LBHI.  Given this refusal, LBB has had no choice but to refrain from making the LBB Sixth Distribution to DB.  LBB still holds DB's Final Payment from the Sixth Distribution in reserve and will release same to DB once the foregoing required forms are submitted to LBB.  *See* Garza Dec, ¶ 21.

28.    To date, DB has not communicated to LBB or LBHI that the Final Payment, which DB agreed to in September 2015, is inaccurate to reach DB's Quota Caps or requested a different Euro sum from LBB to satisfy remaining amounts owed to DB on the DB Direct Claims.  Tellingly, DB has instead requested final distribution from LBHI in the U.S. Dollar amount of $17,944,020.78, which by no coincidence is the U.S. Dollar equivalent of the

16

€13,389,061.93 Final Payment amount after applying the exchange rate from the Confirmation Date of LBHI's Plan (1.3402 USD/1 EURO), instead of a current exchange rate (1.1274 USD/1 EURO).  *See* Garza Dec, ¶ 22.  Thus, the motive behind DB's refusal to accept valid final distribution on the DB Direct Claims in Euros from the direct obligor is obvious.

29.     DB's foregoing request that its final distribution be made to it in U.S. Dollars, as opposed to Euros from LBB, would have required LBHI to convert DB's Final Payment from Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan which would have resulted in a windfall of approximately $3 million to DB, all at the expense of LBHI's other creditors. LBHI refused to make these improperly requested distributions.  *See* Garza Dec, ¶ 23.

30.     Thereafter in March 2016 Trinity, which also refused final payment from the LBB Sixth Distribution, demanded that its Quota Caps be satisfied via U.S. Dollar distribution from LBHI for the same transparent and profit-driven reasons as DB.  *See* Garza Dec, ¶ 24.  Trinity then filed the pending Motion to Compel seeking to compel said distribution based on nothing more than a concocted meritless excuse regarding tax withholdings. *See generally* Motion to Compel and Objection/Cross-Motion.   If granted, the relief Trinity seeks would result in a windfall of over $1 million to Trinity, in addition to the approximately $3 million windfall DB seeks, all at the expense of LBHI's other creditors.  *See* Objection/Cross-Motion, ¶¶1, 38.

31.     Trinity acquired (most if not all of) its claims from DB, and LBHI believes it is no coincidence that the two are engaging in the same foregoing misconduct for their own profit at the expense of LBHI's creditors.   *See* Garza Dec, ¶ 25.   Accordingly, LBHI filed its Objection/Cross-Motion and now files this Motion seeking essentially the same relief against Trinity and DB as both should have their respective direct claims against LBB deemed assigned over to LBHI, and their corresponding guarantee claims against LBHI deemed satisfied, by

17

virtue of the LBB Sixth Distribution tendered in accordance with the LBHI Plan, Confirmation

Order and their respective Bilateral Agreements made in furtherance of the LBHI Plan's terms

for distribution and satisfaction of guarantee claims against LBHI. *See generally*

Objection/Cross-Motion.

## ARGUMENT

**THE MOTION SHOULD BE GRANTED BECAUSE, PURSUANT TO LBHI'S PLAN, CONFIRMATION ORDER AND RELATED AGREEMENTS WITH DEUTSCHE BANK, VALID DISTRIBUTION WAS TENDERED BY PRIMARY OBLIGOR LBB TO SATISFY ALL REMAINING AMOUNTS OWED TO DEUTSCHE BANK WITH RESPECT TO ITS CLAIMS AND DEUTSCHE BANK HAS NO RIGHT TO ANY FURTHER DISTRIBUTION FROM GUARANTOR LBHI**

### A. The Undisputed Facts Demonstrate That The LBB Sixth Distribution Was Valid Payment Tendered By Primary Obligor LBB To Satisfy The Remaining Amounts Owed To Deutsche Bank And Deutsche Bank Has No Basis To Reject It And No Right To Any Further Payment From Guarantor LBHI

32.     It is undisputed that the LBHI Plan, Confirmation Order and DB's Bilateral

Agreement made pursuant to and in furtherance of the LBHI Plan's terms for distribution and

satisfaction of Guarantee Claims, provide that LBB is the primary obligor of the DB Direct

Claims and that the remaining amounts owed to DB on those claims, as well as LBHI's

guarantee of those claims, can be satisfied through final distribution from LBB in Euros reaching

DB's Quota Caps.  It is also undisputed that the Final Payment tendered to DB from the LBB

Sixth Distribution is sufficient to reach DB's Quota Caps and thereby effectively satisfy all

remaining amounts owed to DB on account of the DB Direct Claims and assign its claims to

LBHI pursuant to the LBHI Plan Documents.  Finally, it is undisputed that none of the foregoing

gave DB any right to opt for payment from the guarantor LBHI in place of a valid distribution

tendered by the primary obligor LBB.

33.    Moreover, the Harmonizing Resolution DB approved provided that distributions from LBB on account of the DB Direct Claims would be made approximately one month **before** distributions would be made by LBHI on account of the corresponding DB Guarantee Claims. This was done to ensure that the primary obligor LBB, if feasible, would make the final payment to DB in order to reach the Quota Caps, and that guarantor LBHI would not be required to make a distribution which would ultimately have to be disgorged.

34.    Thus, the primary obligor LBB offered to tender to DB the agreed-upon remaining balance owed on its claims through offer of the Final Payment under the LBB Sixth Distribution and DB refused to accept such distribution.  DB has no right to its shameless "preference" for an approximately $3 million windfall by distribution from the guarantor LBHI instead.  Under New York law, the tender of payment and the refusal to accept the payment constitutes performance. *See JPMorgan Chase Bank, N.A. v. Meritage Homes Corp.,* No. 2:11-CV-01364-PMP, 2012 WL 3809235, at \*11 (D. Nev. Sept. 4, 2012) (quoting *Kortright v. Cady*, 7 E.P. Smith 343, 1860 WL 7852, at \*1 (N.Y. 1860)) (applying New York law). "Consequently, where the obligation is to pay money, if the obligee refuses tender of payment by the primary obligor, both the underlying obligation and the secondary guaranty obligation are discharged as if satisfied by payment." *Id.* (citing Restatement (Third) of Suretyship & Guaranty § 46); *see also* 23 WILLISTON ON CONTRACTS § 61.28 (4th ed. May 2015) (also citing to Section 46 of the Restatement (Third) of Suretyship and Guaranty).  The LBB Sixth Distribution would have paid DB in full and DB's refusal to accept that distribution constitutes a discharge of any remaining guaranty obligation owed by LBHI.  This Motion seeks to compel that result.

**B. Deutsche Bank's Refusal To Accept Final Payment From The LBB Sixth Distribution And Its Refusal To Withdrawn Its Claims Against LBB, Contrary to the LBHI Plan Documents, Has And Continues To Harm LBB, LBHI and Its Other Creditors**

35.    DB's foregoing misconduct, in continuing to refuse the Final Payment from LBB to assign the DB Direct Claims to LBHI, directly impacts LBB, LBHI and its other creditors in tangible ways.   Forty-three other guarantee creditors of LBB (with claims totaling over €8.7 billion) have executed their Confirmations, have received their LBB Sixth Distribution and have exited the LBB insolvency proceedings.  *See* Garza Cross-Motion Dec, ¶ 34. Such creditors have assigned their direct claims against LBB to LBHI, and LBHI has been receiving and will continue to receive future distributions from LBB on account of such assigned claims, which will inure to the benefit of LBHI's other creditors. *Id.* Thus, by DB's continued refusal to sign appropriate Confirmation documents and accept Final Payment from the LBB Sixth Distribution, LBHI has not been assigned the DB Direct Claims and has not yet received further distributions from LBB on account of such claims, the proceeds of which would be passed on to LBHI's creditors.

36.    Additionally, DB continues to refuse to withdraw its Denied LBB Claims, contrary to its agreement to do so in connection with the DB Bilateral Agreement under the LBHI Plan Documents, and apparently to wrongfully maintain leverage in the LBB proceeding. These actions may ultimately delay the winding up of LBB and its final distributions, the majority of which will flow to LBHI, as the largest creditor of LBB.   DB should be held accountable for these wrongful actions. At a minimum, LBHI should be relieved of making any further distributions to DB on the Direct LBHI Claims until DB has provided LBB the necessary documentation to withdraw the Denied LBB Claims, since DB was only given the Direct LBHI

Claims in lieu of the Denied LBB Claims and based on DB's agreement to withdraw them.

Moreover, DB should compensate LBHI for the damages incurred based on its improper actions,

including costs incurred in having to prosecute this Motion to compel DB's compliance with the

LBHI Plan Documents.

### C.   An Order Should Be Entered Enforcing The LBHI Plan, Confirmation Order And Related Agreements With Deutsche Bank To Compel Deutsche Bank's Compliance With Same

37.     Pursuant to Section 1142(b) of the Bankruptcy Code, the Court may enter any

necessary order relating to the consummation of the LBHI Plan.   This Motion seeks to

implement and enforce the LBHI Plan and LBHI Plan Documents by deeming the DB Guarantee

Claims against LBHI satisfied and the DB Direct Claims assigned to LBHI by virtue of the Final

Payment tendered to DB by LBB.   Additionally, this Motion seeks to enforce DB's Bilateral

Agreement, made pursuant to and in furtherance of the LBHI Plan's terms for distribution and

satisfaction of Guarantee Claims, by requiring DB to deliver such documents as necessary for

withdrawal of its Denied LBB Claims.   Finally, this Motion seeks damages against DB for

failing to comply with its obligations and agreements with LBHI under the LBHI Plan

Documents, as substantially all other LBB/LBHI Creditors have done.

### CONCLUSION

38.     LBB stands ready, willing and able to transmit to DB its Final Payment from the

LBB Sixth Distribution (*i.e.*, €13,389,061.93) on account of the DB Direct Claims upon

execution of the Confirmation for same.   LBHI stands ready to buy those claims for the Euro

amount due. DB should execute the Confirmation confirming that the amount listed therein (*i.e.*,

€13,389,061.93) is sufficient to meet the Quota Caps for the DB Direct Claims, and accept the

Final Payment.   If it continues to refuse to do so, the Court should enforce the LBHI Plan

Documents against DB by deeming the DB Guarantee Claims against LBHI to be satisfied and the DB Direct Claims to be effectively assigned to LBHI, and barring DB from pursuing any further distributions from LBHI on account of such claims.  In addition, the Court should suspend all LBHI payments to DB on account of its Direct LBHI Claims against LBHI until DB has tendered to LBB the necessary documentation to withdraw the Denied LBB Claims.  Finally, damages should also be awarded to LBHI to compensate it for DB's improper actions.

WHEREFORE, LBHI respectfully request that the Court enter the proposed order attached hereto granting the relief requested in this Motion and granting such other and further relief to LBHI as the Court deems just and proper.

Dated: May 5, 2016
     New York, New York

By: _/s/  John D. Giampolo_____
William A. Maher
Paul R. DeFilippo
William F. Dahill
John D. Giampolo
Mara R. Lieber

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300

_Counsel for Lehman Brothers Holdings Inc._