**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                               :

| | |
|---|---|
| In re | :      **Chapter 11** |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | :      **Case No.: 08-13555 (SCC)** |
| | : |
| Debtors. | :      **(Jointly Administered)** |
| | : |

-------------------------------------------------------------------x

### DECLARATION OF KAREN B. GARZA IN SUPPORT OF MOTION BY LEHMAN BROTHERS HOLDINGS INC. TO ENFORCE ITS PLAN AND CONFIRMATION ORDER AGAINST DEUTSCHE BANK AG, LONDON BRANCH AS THE HOLDER OF CERTAIN CLAIMS AND FOR OTHER ANCILLARY RELIEF

I, KAREN B. GARZA, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Director at Lehman Brothers Holdings Inc. ("**LBHI**"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "**LBHI Plan**") and Order confirming the LBHI Plan [ECF No. 23023] (the "**Confirmation Order**"), for the entities in the above referenced chapter 11 cases. I make this declaration ("**Declaration**") in support of the *Motion by Lehman Brothers Holdings Inc. to Enforce Its Plan and Confirmation Order Against Deutsche Bank AG, London Branch as the Holder of Certain Claims and for Other Ancillary Relief* dated April 20, 2016 (the "**Motion**").[1] I am over the age of 21 and fully competent to testify to the matters set forth in this Declaration. Except as otherwise stated herein, I am fully familiar with the facts stated herein based upon my first-hand knowledge and my review of the documents referenced herein and records maintained by LBHI.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.    Annexed hereto as **Exhibit "A"** and incorporated herein by reference is a true and correct copy of the *Declaration of Karen B. Garza in Support of (I) Amended Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims, And (II) Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief* [ECF No. 52544-1] excluding the exhibits thereto.

3.    Annexed hereto as **Exhibit "B"** is a true and correct copy of the Confirmation Order excluding the exhibits thereto.

4.    Annexed hereto as **Exhibit "C"** is a true and correct copy of the LBHI Plan excluding the schedules and exhibits thereto.

5.    With respect to section 8.13(d) of the LBHI Plan, the applicable U.S. Dollar to Euro exchange rate on the Confirmation Date was 1.3402:1.  Since then the U.S. Dollar has strengthened in comparison to the Euro as evidenced by the April 13, 2016 close price per Bloomberg which was  1.1274:1 U.S. Dollar per Euro, reflecting that the Euro was approximately 16% 'lower' or 'weaker' vs. the U.S. Dollar than it was on the Confirmation Date.

6.    On November 19, 2014, LBHI and LBB (through the LBB Administrator) entered into the LBHI/LBB Agreement that provided, among other things, for (i) Creditor Assembly Resolutions that resolved conflicting insolvency law issues, and (ii) the main content of Bilateral Agreements to be concluded between LBHI and LBB/LBHI Creditors (including Deutsche Bank AG, London Branch).

7.    Annexed hereto as **Exhibit "D"** is a true and correct copy of the Bilateral Agreement executed between LBHI and Deutsche Bank, including all schedules thereto but excluding the exhibits thereto.

2

8.      Annexed hereto as **Exhibit "E"** is a true and correct copy of the First Amendment to DB's Bilateral Agreement dated February 20, 2015.

9.      Annexed hereto as **Exhibit "F"** is a true and correct copy of the Second Amendment to DB's Bilateral Agreement.

10.      DB holds the DB Direct Claims against LBB, denominated in Euros based on contractual obligations of LBB, which DB Direct Claims are listed on Schedule A of the Second Amendment to DB's Bilateral Agreement.

11.      DB also holds DB Guarantee Claims against LBHI based on guarantees of the obligations underlying the DB Direct Claims, which DB Guarantee Claims are listed on Schedule B of the Second Amendment to DB's Bilateral Agreement.

12.      During negotiations between LBHI and DB in 2014 in connection with entering into a Bilateral Agreement, the parties discussed the resolution of various claims DB held against LBB which LBB disputed and denied.  In order to reach a resolution, LBHI agreed to allow DB the Direct LBHI Claims against LBHI's bankruptcy case, which are included in Schedule C of the DB Bilateral Agreement and includes LBHI claim number 200208 for $16,973,160.94 and LBHI claim number 200209 for $41,119,315.76.  LBHI agreed to allow DB those Direct LBHI Claims in lieu of the Denied LBB Claims against LBB, which include LBB claim number § 38-267 for €12,777,307.36 and LBB claim number § 38-707 for €2,514,061.65, and in exchange DB agreed to withdraw those Denied LBB Claims.

13.      On November 24, 2014, the Harmonizing Resolution was approved by the requisite number of LBB's voting creditors, including DB, and DB's Bilateral Agreement and the other Bilateral Agreements went into effect.  Subsequently on February 20, 2015 and August

7, 2015 the First Amendment and Second Amendment to the DB Bilateral Agreement, respectively, went into effect.

14.     Pursuant to the foregoing agreement reached between DB and LBHI in connection with the DB Bilateral Agreement, DB agreed to withdraw the Denied LBB Claims against LBB in exchange for receiving the Direct LBHI Claims against LBHI.  DB has been asked several times to but has not withdrawn the Denied LBB Claims in LBB's proceeding despite its agreement to do so.  DB knows that its failure to withdraw the Denied LBB Claims may frustrate and delay winding up LBB and is contrary to DB's agreement with LBHI which already granted DB the Direct LBHI Claims against LBHI in lieu of the Denied LBB Claims.

15.     Between October 2010 and July 2015, distributions on direct claims against LBB, including DB's Direct Claims, were made by the LBB Administrator in Euros and DB accepted same without demanding distribution in U.S. Dollars from LBHI.   Upon information and belief, until August 2015, DB received, accepted and did not raise any issues with respect to previous Euro distributions from LBB on account of DB's Direct Claims.

16.     In August 2015, LBB determined that it had sufficient funds to make the LBB Sixth Distribution to DB and other LBB/LBHI Creditors subject to the Harmonizing Resolution, which would satisfy the Quota Caps for their claims (including the DB Direct Claims) in full (and, accordingly, not require LBHI to make any further distributions on account of their related guarantee claims).   In connection with the LBB Sixth Distribution, LBB sent Quota Cap Schedules to each of these claimants, including DB, showing the exact amounts that they would each receive in the LBB Sixth Distribution, and requested confirmation that such amounts would be sufficient to reach their respective Quota Caps.  LBB sent such Quota Cap Schedules to DB

4

on August 10, 2015, along with one amended Quota Cap Schedule sent on September 16, 2015,

sent via email transmissions on which I was copied.

17.    Throughout August and September 2015, Alexander Kraemer, as the Director of

DB who signed the DB Bilateral Agreement on behalf of DB, spoke with me on several

occasions about DB's Quota Cap Schedules for the LBB Sixth Distribution.    Ultimately, during

conference calls which took place in late August 2015 through mid-September 2015 and, in

particular on September 14, 2015, Mr. Kraemer, on behalf of DB, stated that DB agreed with the

numbers in the final Quota Cap Schedules sent to DB and agreed that the aggregate distribution

or Final Payment of Euro 13,389,061.93 provided therein was sufficient to reach DB's Quota

Caps and thus satisfy all remaining amounts owed to DB under the DB Direct Claims and

corresponding DB Guarantee Claims.

18.    Despite DB agreeing with the accuracy of the Final Payment amount, Mr.

Kraemer mentioned that he had "other hesitations" about signing a one-page Confirmation to

confirm DB's agreement to accept the Final Payment in satisfaction of its Quota Caps.    At that

time, DB was also asked to sign a brief declaration towards LBB prior to receiving the Final

Payment, which DB had already signed in the recent past.    DB was only asked to sign that

declaration again because DB had recently acquired an additional claim which was included

among the DB Direct Claims and thus needed to be covered by that declaration in order to

receive a distribution along with the other DB Direct Claims.[2]    Yet, Mr. Kraemer expressed

unexplained "hesitations" about DB signing that document as well saying such "additional

declarations" were onerous.    In an effort to resolve DB's unexplained "hesitations", I informed

---

[2] Note, DB's acquisition of such additional DB Direct Claims was the reason why DB and LBHI had to execute the
Second Amendment to DB's Bilateral Agreement to ensure that all DB Direct Claims are governed by the same
documents and provisions.

Mr. Kraemer that, as an alternative to DB accepting Final Payment from the LBB Sixth Distribution, LBHI could purchase or "buy out" the DB Direct Claims and pay DB the Final Payment in Euros.

19.     While offering no clear explanation for DB's "hesitation" to sign simple forms and accept the Final Payment for the DB Direct Claims, DB's true motive for delaying and refusing final distributions in Euros became clear when Mr. Kraemer began requesting payment instead from LBHI in U.S. Dollars.  On September 17, 2015 Mr. Kraemer, on behalf of DB, stated that it was DB's "preference" to instead receive its final distribution toward the DB Guarantee Claims in U.S. Dollars from the LBHI Eighth Distribution simply for the sake of "efficien[cy]."

20.     But there was nothing reasonable, appropriate, efficient or feasible about DB's "preference".  The foregoing LBHI Plan Documents and related agreements provide DB with no right to refuse a Euro distribution from the direct obligor LBB on the DB Direct Claims and instead demand a subsequent U.S. Dollar distribution from the guarantor on the DB Guarantee Claims.  DB advanced no reasonable basis, or even a concocted excuse, for what it wanted. Moreover, while DB's "preference" is impermissible regardless of when it was requested, from an administrative perspective it was requested too late since on September 17, 2015 the administrative cut-off date for inclusion of claims in the LBHI Eighth Distribution had already expired.

21.     The LBB Sixth Distribution was initiated on September 4, 2015 (and is continuing to this day) but DB persisted in its refusal to execute the required forms to receive that distribution and stood by its September 17, 2015 request to receive its final distribution in U.S. Dollars from LBHI.  Given this refusal, LBB has had no choice but to refrain from making

the LBB Sixth Distribution to DB.  LBB still holds DB's Final Payment from the Sixth

Distribution in reserve and will release same to DB once the foregoing required forms are

submitted to LBB.

22.    To date, DB has not communicated to LBB or LBHI that the Final Payment,

which DB agreed to in September 2015, is inaccurate to reach DB's Quota Caps or requested a

different Euro sum from LBB to satisfy remaining amounts owed to DB on its Direct Claims.

Tellingly, DB has instead requested final distribution from LBHI in the U.S. Dollar amount of

$17,944,020.78, which by no coincidence is the U.S. Dollar equivalent of the €13,389,061.93

Final Payment amount after applying the exchange rate from the Confirmation Date of LBHI's

Plan (1.3402 USD/1 EURO), instead of a current exchange rate (1.1274 USD/1 EURO).

23.    DB's foregoing request that its final distribution be made to it in U.S. Dollars, as

opposed to Euros from LBB, would have required LBHI to convert DB's Final Payment from

Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan which would have resulted

in a windfall of approximately $3 million to DB, all at the expense of LBHI's other creditors.

LBHI refused to make these improperly requested distributions.

24.    Thereafter in March 2016 Trinity, which also refused final payment from the LBB

Sixth Distribution, demanded that its Quota Caps be satisfied via a U.S. Dollar distribution from

LBHI for the same transparent and profit-driven reasons as DB.

25.    Trinity acquired (most if not all of) its claims from DB, and LBHI believes it is no

coincidence that the two are engaging in the same foregoing misconduct for their own profit at

the expense of LBHI's other creditors.

I hereby declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 21, 2016
     New York, New York

                              KAREN B. GARZA

*[Signature Page]*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | **Chapter 11** |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | **Case No.: 08-13555 (SCC)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------------x

**AMENDED[1] DECLARATION OF KAREN B. GARZA IN SUPPORT OF
(I) THE OBJECTION BY LEHMAN BROTHERS HOLDINGS INC.
TO MOTION OF TRINITY INVESTMENTS LIMITED TO COMPEL
OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED
GUARANTEE CLAIMS, AND (II) CROSS-MOTION TO
ENFORCE THE LBHI PLAN AND OTHER ANCILLARY RELIEF**

I, KAREN B. GARZA, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a Director at Lehman Brothers Holdings Inc. ("**LBHI**"), and make this declaration ("**Declaration**") in support of the *Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims and Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief* ("**Objection/Cross-Motion**").  I am over the age of 21 and fully competent to testify to the matters set forth in this Declaration.  I am fully familiar with the facts stated herein based upon my first-hand knowledge and my review of the records maintained by LBHI, as Plan Administrator under the LBHI Plan.[2]

---

[1]   This declaration is being amended to correct the following two facts: (i) in paragraph 8, by adding to the definition of "Harmonizing Resolution" the LBHI/LBB Agreement, and (ii) in paragraph 18 by changing the date from November 19, 2014 to November 24, 2014, and deleting the phrase "the LBB/LBHI Agreement."

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection/Cross-Motion.

DMSLIBRARY01\28824561.v1

08-13555-scc    Doc 52694-1    Filed 05/20/16    Entered 05/20/16 15:14:01    Amended
Declaration Of (a) The Objection By Lehman    Pg 2 of 11

## A.    LBHI, the LBHI Plan and the Treatment of Allowed Guarantee Claims

2.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the Bankruptcy Code.  On December 6, 2011, the Court entered an Order confirming the LBHI Plan. *See* Dkt. No. 23023.[3]

3.    Pursuant to Section 8.3 of the LBHI Plan, LBHI made its initial distribution to holders of allowed general unsecured claims in April 2012, and has made subsequent distributions every six months thereafter, at or around March 30 and September 30 of each year. The LBHI Plan distributions are in U.S. dollars.

4.    Section 8.13(a) of the LBHI Plan provides that Allowed Guarantee Claims are deemed satisfied in full if the holder of such Allowed Guarantee Claims receives distributions from LBHI and distributions and/or other consideration (including taxes withheld) on account of the primary claims that equal the allowed amount of the Guarantee Claims.  In addition,

> [t]o the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof.

*Id.*  Section 8.13(b) of the LBHI Plan makes clear that the holder of an Allowed Guarantee Claim cannot receive, from all sources, more than the allowed amount of the Guarantee Claim.

5.    Section 8.13(d) of the LBHI Plan provides as follows:

> For purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate

---

[3]    A true and correct copy of the LBHI Plan is annexed hereto as **Exhibit "A."**

DMSLIBRARY01\28824561.v1

derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date.

The applicable exchange rate on the Confirmation Date was 1.3402. Since the Confirmation Date, the U.S. dollar has strengthened in comparison to the Euro.

6.      If LBHI recovers any portion of distributions made on account of Allowed Guarantee Claims (either by way of subrogation, disgorgement or otherwise), the amount recovered is treated as Available Cash of LBHI, and distributed to creditors. *See* LBHI Plan, § 8.13(f).

**B.      LBB, Its German Insolvency Proceeding and the Harmonizing Resolution**

7.      LBB is an affiliate of LBHI. On November 12, 2008, the German banking regulator filed insolvency proceedings against LBB, and on November 13, 2008, the local court of Frankfurt am Main opened insolvency proceedings and appointed Dr. Michael C. Frege as the LBB Administrator to administer the LBB estate. As advised by the LBB Administrator, he commenced making distributions to holders of allowed claims in October 2010; pursuant to German law, distributions from LBB to its creditors are required to be made in Euros.

8.      LBHI is the largest creditor in the LBB insolvency proceeding. On November 19, 2014, LBHI and LBB entered into the LBHI/LBB Agreement that provided, among other things, for (i) Creditor Assembly Resolutions that resolved conflicting insolvency law issues, and (ii) the main content of Bilateral Agreements to be concluded between LBHI and LBB/LBHI Creditors (including Trinity) to resolve legal issues. The agreed-upon issues set forth in the Creditor Assembly Resolutions, Bilateral Agreements and the LBHI/LBB Agreement are collectively referred to as the "Harmonizing Resolution."

3

9.      The LBHI/LBB Agreement discusses, *inter alia*, the terms of distributions by
LBHI and LBB on allowed claims, stating that LBB distributions will occur prior to the LBHI
Plan distributions.  Distributions made by LBB are to be made on a semiannual basis on or about
February 28 and August 30 of each year.  Under the LBHI Plan, distributions are made on a
fixed schedule approximately one month later.

10.      A stated goal of the Harmonizing Resolution was to ensure that no group of
creditors or individual creditor is able to obtain an advantage (neither a procedural nor a tactical
one).

11.      The economic objective of the Harmonizing Resolution was that all creditors
recover 100% of their claims.  Direct claims against LBB are denominated in Euros; the recovery
on such claims is relative to the Euro denominated amounts allowed by LBB.

**C.    Trinity, Its Claims and Its Agreement with LBHI**

12.      The Trinity Direct Claims are direct claims held by Trinity against LBB based on
contractual obligations of LBB.  Trinity also holds the Trinity Guarantee Claims against LBHI,
which are based on guarantees of the Trinity Direct Claims.

13.      Between October 2010 and July 2015, distributions on direct claims against LBB
were made by the LBB Administrator.  I have been advised that, as part of each distribution, the
LBB Administrator, pursuant to German law, and after consultation with his tax advisers,
withheld from the interest component of such claims a 25% withholding tax and an additional
5.5% surcharge in connection with the withholding tax.  Through discussions with the LBB
Administrator, it is my understanding that Trinity never objected to this procedure.

4

14.     Upon information and belief, Trinity requested a tax refund from the German taxing authority, and LBB provided Trinity with the withholding information and forms requested by Trinity regarding previous distributions so that it could submit the refund request.

15.     During negotiations between LBHI and Trinity in 2014 in connection with entering into a Bilateral Agreement, the parties discussed the resolution of various disputed claims against LBB.  In order to reach a resolution, LBHI agreed to allow certain direct claims in LBHI's bankruptcy case in lieu of LBB allowing certain corresponding denied claims in LBB's insolvency proceeding.

16.     On November 24, 2014, LBHI and Trinity entered into the Trinity Bilateral Agreement,[4] which, among other things, provided as follows:

- Trinity agreed to the Harmonizing Resolution and to vote in favor of the Creditor Assembly Resolutions;

- Once the Creditor Assembly Resolutions were approved by the requisite majority of LBB's creditors, the Trinity Guarantee Claims would be allowed in LBHI's bankruptcy case "and shall be entitled to receive distributions under the plan (in addition to distributions from LBB in respect of the [Trinity Direct] Claims);

- Trinity agreed that it would be liable to LBHI "for the disgorgement of any distributions or other consideration received by [Trinity] on account of any [Trinity Guaranteed Claim] . . . to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to [Trinity] or any previous holder on account of any portion of the related [Trinity Direct] Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such [Trinity] Guarantee Claim." (¶ 9);

- Trinity agreed to accept an amount ("**Quota Cap**") equal to the USD amount of each allowed Trinity Guarantee Claim (provided that any EUR distributions to it would be converted to USD applying an exchange rate of 1.3402 (¶ 10(a)); and

- Once Trinity receives payment of the Quota Caps in connection with the Trinity Direct Claims, all of its rights in the Trinity Direct Claims were deemed assigned

---

[4]     A true and correct copy of the Trinity Bilateral Agreement is annexed hereto as **Exhibit "B."**

5

to LBHI, and no further distributions would be made on the Trinity Guarantee Claims. (¶ 10).

17.     Around the time that Trinity and LBHI entered into the Trinity Bilateral Agreement, over 40 other LBB/LBHI Creditors entered into substantially similar Bilateral Agreements with LBHI.

18.     On November 24, 2014 ("**Effective Date**"), the Harmonizing Resolution was approved by the requisite number of LBB's voting creditors, *including Trinity*. On the Effective Date, the Trinity Bilateral Agreement and the other Bilateral Agreements went into effect.

19.     Pursuant to the agreement reached between Trinity and LBHI in connection with the Trinity Bilateral Agreement, Trinity was to withdraw 19 denied claims against LBB totaling €34,595,584.10.  However, due to an apparent "clerical" error, the Withdrawal Letter provided by Trinity to withdraw these claims against LBB only listed 18 claims; the Omitted Claim in the amount of €1,898,699.54 (LBB claim number § 38-562) was not set forth in the letter.  The Withdrawal Letter was ultimately submitted to the German court clerk (who maintains the LBB claims register), and the 18 denied claims included therein were removed.[5]  Trinity has also failed to submit assignment information to facilitate the withdrawal of the denied Unassigned Claim (LBB claim number § 38-707) totaling €1,811,541.00.  Moreover, Trinity has failed to withdraw and provide an assignment form for the Omitted/Unassigned Claim (LBB claim number § 38-725) totaling €1,986,239.42. I have been informed that Trinity has not addressed the outstanding issues with the foregoing three Denied Claims, which total, in the aggregate, €5,696,479.96.

---

[5]     A true and correct copy of the Withdrawal Letter, listing 18 and not 19 claims, is annexed hereto as **Exhibit "C."**

20.     Moreover, once the Trinity Direct Claims are paid the Quota Caps, and the allowed guaranteed claims against LBB are assigned to LBHI, Trinity is obligated to assign the Additional Denied Claim (approximating €10.37 million; LBB claim number § 38-083) to LBHI.

**D.     The LBB Sixth Distribution and Trinity's Refusal to Accept Same**

21.     Upon information and belief, until August 2015, Trinity received, accepted and did not raise any issues with respect to all distributions from LBB and LBHI on account of the Trinity Direct Claims and the Trinity Guarantee Claims.

22.     In August 2015, LBB determined that it had sufficient funds to make the LBB Sixth Distribution including to Trinity and other LBB/LBHI Creditors subject to the Harmonizing Resolution, in amounts that would satisfy the Quota Caps for those guarantee claims (including the Trinity Direct Claims) in full (and, accordingly, not require LBHI to make any further distributions on the Trinity Guarantee Claims).

23.     While Trinity raised a clarifying question regarding one Trinity Direct Claim (that was subsequently resolved), Trinity confirmed with LBB that the amounts set forth in the schedules distributed to claimants in connection with the LBB Sixth Distribution "tie in with our expectations."[6] Trinity did not raise any issues or complain about the taxes previously withheld from prior distributions.

24.     On September 1, 2015, Trinity again confirmed with LBB the accuracy of the Quota Cap schedules, this time without qualification.[7] Again, Trinity did not raise any issue with respect to taxes previous withheld from prior distributions.

---

[6]     *See* E-Mail correspondence from August 10, 2015 through August 11, 2015, a true and correct copy of which is annexed hereto as **Exhibit "D."**

[7]     *See* E-Mail correspondence from August 10, 2015 through September 13, 2015, a true and correct copy of which is annexed hereto as **Exhibit "E."** The September 1, 2015 e-mail is contained in Exhibit "E."

08-13555-scc  Doc 52544-1  Filed 04/20/16  Entered 04/20/16 12:18:09  Amended
Declaration    Pg 17 of 229

25.     It was explained to me that in order to administer the LBB insolvency proceeding and to ensure that the LBB Sixth Distribution to Trinity would result in Trinity receiving the Quota Caps for the Trinity Direct Claims (and exiting the LBB insolvency proceeding), Trinity was required to complete the following forms: (i) the one-page Confirmation, confirming that the amount Trinity was to receive in the LBB Sixth Distribution was sufficient to satisfy the Quota Caps;[8] (ii) a bank information form, requiring Trinity certify its wiring instructions; and (iii) a withholding tax form, requiring Trinity to certify its withholding tax status under German law.

26.     The Confirmation was a one-page form that set forth the remaining balance owed to Trinity on account of the Trinity Direct Claims, and asked that Trinity confirm the same (as it had done via e-mail twice before).

27.     Representatives of the LBB Administrator explained to me that the execution of the Confirmation was necessary for the administration of the LBB insolvency proceeding. Sufficient evidence of the satisfaction of the Trinity Direct Claims was needed (i) so the German court clerk could readily determine that the Quota Caps for the Trinity Direct Claims had been reached, and that Trinity would be exiting the insolvency proceeding, and (ii) to facilitate the assignment of the Trinity Direct Claims to LBHI in the official German claims register for LBB. I was advised that absent the Confirmation, it would have been difficult for the German court clerk to accurately maintain the LBB claims register.

28.     The LBB Sixth Distribution was initiated by LBB on September 4, 2015.  In the fall of 2015, Trinity refused without explanation to execute the Confirmation.  While not providing a reason for not executing the Confirmation in the Fall of 2015, I was informed that Trinity did request on September 7, 2015 that LBB make the LBB Sixth Distribution to it in U.S.

---

[8]     A copy of the Confirmation, translated into English, is attached to the Bour Declaration as Exhibit "D."

08-13555-scc    Doc 52691-1    Filed 04/05/16    Entered 04/05/16 12:18:09    Amended
Declaration Of Karen B. Garza In Support Of (1) Pre    Pg 9 of 11

08-13555-scc    Doc 52691-1    Filed 04/05/16    Entered 04/05/16 15:34:41    Surpending
Declaration    Pg 18 of 229

dollars.[9]  I was advised by representatives of the LBB Administrator that LBB informed Trinity

at that time that it could not do so as all LBB distributions were required to be made in Euros

under German insolvency law.[10]

29.    Both LBB and LBHI attempted to contact Attestor (manager of the Trinity funds)

in September 2015 to inquire if Trinity had any objections to the Confirmation, and ask why

Trinity had not submitted the requisite three forms to enable receipt of the LBB Sixth

Distribution.  Attestor did not respond.  LBHI sent an e-mail correspondence to Attestor on

September 14, 2015, seeking confirmation that it agreed with the Quota Cap schedules and final

distribution amount.[11]    Thereafter, LBHI had two conversations with Attestor about the

Confirmation in October 2015.    While Attestor stated that the Confirmation was "onerous," not

required and could be prejudicial to Trinity, the tax withholding issue was never mentioned.

30.    Given Trinity's refusal to execute the Confirmation, LBB did not make the LBB

Sixth Distribution to Trinity.

31.    I have been informed that creditors similarly situated to Trinity who also had

taxes withheld from their distributions were required to complete the three forms.  All other

LBB/LBHI Creditors holding allowed guaranteed claims that were subject to German tax

withholdings (12 in number) executed the required forms, including the Confirmation, obtained

their final distributions that reached their Quota Caps, and exited the LBB insolvency

proceeding.  In total, I was told that over 40 LBB/LBHI Creditors holding guaranteed claims

---

[9]    The September 7, 2015 e-mail correspondence from Emma Dibsdale to Charlotte Louise Schildt is contained in Exhibit "E" attached hereto.

[10]    The September 7, 2015 e-mail correspondence from Charlotte Louise Schildt to Emma Dibsdale is contained in Exhibit "E" attached hereto.

[11]    *See* E-Mail correspondence from September 14, 2015, a true and correct copy of which is annexed hereto as **Exhibit "F."**

DMSLIBRARY01\28824561.v1

(totaling over €8.7 billion) signed the requisite forms, were paid in full, assigned their guaranteed claims to LBHI and have exited the LBB proceeding.[12]

32.     After refusing to execute the Confirmation and accept the LBB Sixth Distribution, in October 2015, Trinity, through Attestor, demanded that LBHI make a distribution to Trinity in U.S. dollars on account of the Trinity Guarantee Claims.  This would have required LBHI to convert the final amount LBB would have paid on the Trinity Direct Claims from Euros to U.S. Dollars at the exchange rate specified in the LBHI Plan.  LBHI refused to do so, and has not made a distribution to Trinity on account of the Trinity Guarantee Claims since before the announcement of the LBB Sixth Distribution.

33.     Trinity did not explain its "tax withholding" objection to the Confirmation to LBHI until March 2016.  For the first time—and even though it previously confirmed with LBB, twice, that the amounts set forth in the Quota Cap schedules for the LBB Sixth Distribution were satisfactory—Trinity asserted that it could not confirm that the LBB Sixth Distribution would be the final payment because it was "unable to confirm that the Prior Withholdings will be, or that the Total Withholdings would be, properly refunded or credited to Trinity."  Bour Declaration, ¶ 26.

34.     Trinity's actions directly affect LBHI's other creditors in tangible ways.  As stated above, forty-three other guarantee creditors of LBB, including all of those holding guaranteed claims with taxes withheld by LBB, have executed their Confirmations, have received their LBB Six Distribution and have exited the LBB insolvency proceedings.  Such creditors have assigned their claims against LBB to LBHI, and LBHI has been receiving and will

---

[12]   The only other creditor that did not execute the required forms, including the Confirmation, was Deutsche Bank AG, London Branch ("**DB**").  LBHI and LBB are proceeding separately against DB to compel it to accept the LBB Sixth Distribution.

DMSLIBRARY01\28824561.v1

continue to receive future distributions from LBB on account of such assigned claims against LBB, which will inure to the benefit of LBHI's other creditors.

35.    By withholding the Confirmation and not accepting the LBB Sixth Distribution, LBHI has not been assigned the Trinity Direct Claims (even though Trinity would have been paid in full thereon), and LBHI cannot obtain further distributions from LBB on account of such claims, the proceeds of which would be passed on to LBHI's creditors.

36.    Trinity has also refused to address the issues associated with the three Denied Claims.  This has further damaged the LBHI estate.

I hereby declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Dated: April 20, 2016
       New York, New York

_____/s/ Karen B. Garza_____
       KAREN B. GARZA

DMSLIBRARY01\28824561.v1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                           :

In re                                :      Chapter 11 Case No.
                                             :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :      08-13555 (JMP)
                                             :

                       Debtors.              :      **(Jointly Administered)**
                                           :

-------------------------------------------------------------------x

### ORDER CONFIRMING MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

Lehman Brothers Holdings Inc. and its affiliated debtors,[1] (collectively, the "Debtors"), each having proposed and filed the Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated August 31, 2011 (as subsequently supplemented, amended or modified, including by the Plan Supplement, the "Plan")[2] and the Disclosure Statement for the Plan, dated August 31, 2011 (as amended, the "Disclosure Statement"); and the Court having entered the *Amended Order (I) Approving the Proposed Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan*, dated September 1, 2011 [ECF No. 19631] (the "Disclosure Statement Order");

---

[1] The Debtors are: Lehman Brothers Holdings Inc., LB 745 LLC, PAMI Statler Arms LLC, Lehman Brothers Commodity Services Inc., Lehman Brothers Special Financing Inc., Lehman Brothers OTC Derivatives Inc., Lehman Brothers Derivatives Products Inc., Lehman Commercial Paper Inc., Lehman Brothers Commercial Corporation, Lehman Brothers Financial Products, Inc., Lehman Scottish Finance L.P., CES Aviation LLC, CES Aviation V LLC, CES Aviation IX LLC, East Dover Limited, Luxembourg Residential Properties Loan Finance S.a.r.l., BNC Mortgage LLC, Structured Asset Securities Corporation, LB Rose Ranch LLC, LB 2080 Kalakaua Owners LLC, Merit LLC, LB Somerset LLC, and LB Preferred Somerset LLC.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit A. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is defined in title 11 of the United States Code (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

08-13555-mg    Doc 23023    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 23 of 229

and the Disclosure Statement, the Plan and the Solicitation Packages (as defined below) having

been distributed to holders of Claims entitled to vote on the Plan as provided in the Disclosure

Statement Order; and due notice of (i) entry of the Disclosure Statement Order, (ii) the hearing

on confirmation of the Plan (the "Confirmation Hearing"), and (iii) the deadline for voting on,

and/or objecting to, the Plan having been provided to holders of Claims against and Equity

Interests in the Debtors and other parties in interest in accordance with the Disclosure Statement

Order, the Bankruptcy Code and the Bankruptcy Rules, as established by the affidavits of

service, mailing, and/or publication filed with the Court; and the following documents having

been filed in support of or in connection with the confirmation of the Plan:

(i)    Affidavit of Solicitation Mailing [ECF No. 20882] (the "Notice
Affidavit");

(ii)    Affidavits of Publication of Notice of (a) Approval of the Disclosure
Statement, (b) Establishing the Record Date, (c) Hearing on Confirmation of the Plan and
Procedures for Objecting to Confirmation of the Plan and (d) Procedures and Deadline for
Voting on Plan [ECF No. 21695] (the "Publication Affidavits");

(iii)    Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions,
LLC Regarding Voting and Tabulation of Ballots Cast on Debtors' Third Amended Joint
Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated as of
November 29, 2011 [ECF No. 22743] (as supplemented on December 5, 2011 [ECF No. 22972],
the "Voting Certification");

(iv)    the Plan Supplement, dated October 25, 2011 and amendments thereto (the
"Plan Supplement") [ECF Nos. 21254, 21665, 22156, 22590, 22742, 22876, 22975 and 22980];

(v)    the Debtors' Memorandum of Law Pursuant to Section 1123(b)(3)(A) of
the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, In Support

2

of Plan Settlements, dated November 29, 2011 (the "Debtors' Memorandum of Law In Support

of the Global Settlement") [ECF No. 22749];

       (vi)    the Debtors' Memorandum of Law in Support of Confirmation of Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors,

dated November 29, 2011 (the "Debtors' Memorandum of Law In Support of Confirmation")

[ECF No. 22747];

       (vii)   the Declaration of John K. Suckow in Support of Confirmation of Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors,

dated November 29, 2011 [ECF No. 22759] (the "Suckow Declaration");

       (vii)   the Declaration of Daniel J. Ehrmann in Support of Confirmation of Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors,

dated November 29, 2011 [ECF No. 22760] (the "Ehrmann Declaration");

       (ix)    the Declaration of Steven J. Cohn in Support of Confirmation of Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors,

dated November 29, 2011 [ECF No. 22761] (the "Cohn Declaration");

       (x)    the Debtors' Response to Objections to Confirmation, dated November 29,

2011 (the "Debtors' Response") [ECF No. 22751];

       (xi)    the Statement of Official Committee of Unsecured Creditors (I) In Support

of Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated

Debtors and (II) In Response to Objections to Such Plan, dated as of November 29, 2011 [ECF

No. 22773];

       (xii)   the statements of numerous other Creditors in support of confirmation of

the Plan; and

       (xiii)  objections to confirmation of the Plan by certain parties;

08-13555-mjp    Doc 23023-1    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 25 of 229

and each of the objections having been resolved, overruled, or withdrawn at or prior to the

Confirmation Hearing; and the Court having held the Confirmation Hearing commencing on

December 6, 2011; and after full consideration of the record of the Chapter 11 Cases, including,

without limitation, motions, applications and orders in the Chapter 11 Cases, the foregoing

documents, and the evidence admitted and arguments of counsel made at the Confirmation

Hearing; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

DETERMINED, FOUND, ADJUDGED, AND DECREED:

## **FINDINGS OF FACT**

A.    <u>Findings of Fact</u>.  The findings set forth herein and in the record of the

Confirmation Hearing constitute the Court's findings of fact pursuant to Rule 52 of the Federal

Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the

extent any of the following findings of fact constitute conclusions of law, they are adopted as

such.

B.    <u>Separate Chapter 11 Plans for Each Debtor</u>.  Unless otherwise expressly

contemplated herein, any statement regarding the Plan or the satisfaction of any requirements by

the Plan or the Debtors, or approval of Plan, shall be deemed to apply separately to the chapter

11 plan of each of the Debtors.  Unless otherwise expressly contemplated herein, any statements

included herein referring to actions taken by the Debtors shall be deemed to mean actions taken

by each Debtor in connection with its Plan.

C.    <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2),</u>

<u>1334(a))</u>.  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code
and should be confirmed.

        D.      <u>Commencement of Chapter 11 Cases</u>.  Commencing on September 15,
2008 and periodically thereafter (as applicable, the "<u>Commencement Date</u>"), LBHI and certain
of its Affiliates commenced with this Court voluntary cases under chapter 11 of the Bankruptcy
Code.  The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and
are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors
are authorized to operate their businesses and manage their properties as debtors in possession
pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

        E.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the
Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,
including, without limitation, all pleadings and other documents filed, all orders entered, and the
evidence and arguments made, proffered, or adduced at the hearings held before the Court during
the pendency of the Chapter 11 Cases, including, but not limited to, the hearing to consider the
adequacy of the Disclosure Statement.

        F.      <u>Burden of Proof</u>.  The Debtors have met their burden of proving the
elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

        G.      <u>Transmittal and Mailing of Materials; Notice</u>.  On, September 1, 2011, the
Court entered the Disclosure Statement Order, which, among others things, approved the
Disclosure Statement, finding the Disclosure Statement contained "adequate information" under
section 1125 of the Bankruptcy Code, established the procedures for the solicitation, voting, and
tabulation of votes on the Plan, and approved the form of ballots and master ballots (the
"<u>Ballots</u>").  The Disclosure Statement, the Plan, the Ballots, the Disclosure Statement Order, the
notice of the scheduling of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>"), and a

letter from the Creditors' Committee in support of the Plan (translated into five languages) (such

documents, collectively, the "Solicitation Package"), were transmitted and served in compliance

with the Disclosure Statement Order, the Bankruptcy Rules, and the Local Bankruptcy Rules for

the Southern District of New York (the "Local Rules"), and such transmittal and service, as

evidenced by the Notice Affidavit was adequate and sufficient.  The Debtors' publication of the

Confirmation Hearing Notice in *The New York Times, The Wall Street Journal, the Financial*

*Times, The Times of London, the Sydney Morning Herald, the Tribune De Geneve, the DE*

*Telegraaf, the Apple Daily, the Tages Anzeiger, the Luxemburger Wort, the Corriere Del Ticino,*

*the Frankfurter Allgemeine Zeitung,* and *Yomiuri Shimbun*, as set forth in the Publication

Affidavits (i) complied with the Disclosure Statement Order, (ii) was adequate and sufficient

under the circumstances of these Chapter 11 Cases, (iii) provided adequate notice of the deadline

for objecting to confirmation of the Plan, and the date, time and location of the Confirmation

Hearing, and (iv) provided due process to all parties in interest in these Chapter 11 Cases.  No

other or further notice is required.

        H.     Voting.  Votes on the Plan were solicited after disclosure of "adequate

information" as defined in section 1125 of the Bankruptcy Code.  As described in the Voting

Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good

faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the

Disclosure Statement Order.

        I.     Plan Supplement.  On October 25, 2011, the Debtors filed the Plan

Supplement, which included certain documents and agreements contemplated by the Plan,

including the forms of revised certificates of incorporation and by-laws, or similar documents,

for each Debtor other than Lehman Scottish Finance L.P. and East Dover Limited; the schedules

of executory contracts and unexpired leases to be assumed pursuant to the Plan; the Plan Trust

Agreement; the form of Debtor Allocation Agreement; copies of settlement agreements that are

incorporated into the Plan pursuant to sections 6.5(b)(viii) and (j) of the Plan; an amendment to

the Plan; an updated recovery and liquidation analysis for SASCO and LBCC; a schedule of

Claims by Debtor-Controlled Entities against the Debtors; a reconciliation of the ownership of

certain assets as between certain Debtors; and a list of Debtor-Controlled Entities that may be

dissolved or merged in accordance with the Plan.  The Plan Supplement was amended on

October 25, 2011, November 4, 2011, November 15, 2011, November 22, 2011, November 29,

2011, December 2, 2011 and December 5, 2011.  The Plan Supplement complies with the

provisions of section 15.5 of the Plan.

        J.     <u>Modifications to the Plan</u>.  The Plan, and documents, amendments or

supplements to the Plan included in the Plan Supplement and any amendments thereto, as

modified by the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings

Inc. and its Affiliated Debtors, filed on November 29, 2011 and December 5, 2011 (the "<u>Plan</u>

<u>Modifications</u>"), shall constitute the Plan.

        K.     <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan

complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section

1129(a)(1) of the Bankruptcy Code.

        L.     <u>Compliance with Bankruptcy Rule 3016(a)</u>.  The Plan is dated and

identifies the entities submitting the Plan as proponents, thereby satisfying Bankruptcy Rule

3016(a).

        M.     <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to

Administrative Expense Claims and Priority Tax Claims which need not be designated, the Plan

designates 16 Classes of Claims against LBHI, 8 Classes of Claims against each of LCPI and

LBSF, 7 Classes of Claims against each of LBCS, LBCC and LOTC and 5 Classes of Claims

against each of the other Debtors, and one Class of Equity Interests for each Debtor.  As required

by section 1122(a) of the Bankruptcy Code, the Claims and Equity Interests placed in each Class

are substantially similar to other Claims and Equity Interests, as the case may be, in each such

Class.

        (i)    <u>Justification for Separate Classification</u>.  Valid business, factual, and legal

reasons exist for separately classifying the various Classes of Claims and Equity Interests created

under the Plan.  The classification takes into account the nature of Claims and the differing legal

rights of the holders of such Claims.  The nature of Claims and legal rights of the holders differ

for (i) Claims asserted by Affiliates and third-party Creditors, (ii) direct Claims against a Debtor

and Guarantee Claims, (iii) Claims subject to contractual or statutory subordination, and (iv)

Claims entitled to be treated as senior obligations.  In addition, the classification of Claims

pursuant to the Plan takes into account the nature and risks of certain Claims in respect of the

Plan Issues.  These issues include: whether the equitable doctrine of substantive consolidation

may be applied to the Debtors and their Affiliates; the characterization of the intercompany

balances owed to LBHI by Subsidiary Debtors; the Allowed amounts of Affiliate Claims; the

ownership and rights of various Debtors and their Affiliates with respect to certain assets; the

allocation of costs and expenses of administration among the Debtors; and the post-effective date

governance of the Debtors (collectively, the "<u>Plan Issues</u>"). The relative risks and benefits of

potential litigation of the Plan Issues is a reasonable basis for the Plan to provide for separate

classification of such Claims.  If the Debtors and their Affiliates were substantively consolidated,

generally, all Claims based on LBHI's guarantees of the obligations of its Affiliates and all

Claims of Affiliates would be disregarded.  The different nature of Claims, the legal rights of the

holders of Claims and the recovery entitlements of Claims in the separate Classes, are a

reasonable basis for separately classifying Claims.

(ii)    <u>Contractual Subordination Agreements</u>.  The contractual terms of the

indentures pursuant to which LBHI issued Subordinated Notes provide that upon the bankruptcy

of LBHI, no payments will be made to holders of the Subordinated Notes until all obligations of

LBHI designated as "senior" in the indentures have been satisfied in full.  The Plan gives effect

to these provisions by separately classifying Claims based on their respective priority in relation

to the Subordinated Notes and the entitlement to receive amounts that would otherwise have

been distributed to holders of Claims based on the Subordinated Notes.

(iii)    <u>Convenience Claims and Convenience Guarantee Claims (11 U.S.C. §</u>

<u>1122(b))</u>.  The definition and classification of Convenience Claims and Convenience Guarantee

Claims are reasonable and necessary for administrative convenience.  The inclusion of

convenience Classes in the Plans of LBHI, LBCS, LBCC, LBSF, LCPI and LOTC will permit

those Debtors to make a single Distribution on account of Convenience Claims and Convenience

Guarantee Claims against such Debtors and avoid the administrative burden of tracking the

transfers of these Claims, repeating the calculations of the Distributions to holders of such

Claims, providing notices to holders of such Claims and preparing and mailing or wiring

Distributions to holders of such Claims on each Distribution Date.  The definitions of

Convenience Claims and Convenience Guarantee Claims, including the exclusions of Claims

based on public debt securities issued or guaranteed by LBHI or a Claim filed by a nominee on

behalf of one or more beneficial holders of Claims, is reasonable and necessary for

administrative convenience.

N.    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  The Plan does

not include any Classes of Claims that are unimpaired under the Plan.  The Plan satisfies section

1123(a)(2) of the Bankruptcy Code.

09-13555-mg   Doc 23023   Filed 12/06/11   Entered 12/06/11 16:57:20   Main Document
Pg 10 of 61

O.     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  All

Classes of Claims are impaired under the Plan.  Articles III, IV and V of the Plan specify the

treatment for each Class of Claims, thereby satisfying section 1123(a)(3) of the Bankruptcy

Code.

P.     <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the

same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless

the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of

such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

Q.     <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan, including the

various documents and agreements set forth in the Exhibits to the Plan and the Plan Supplement,

provide adequate and proper means for the Plan's implementation, including (i) the appointment

of a Plan Administrator with the duties and responsibilities set forth in Section 6.1(b) of the Plan

to administer and maximize the value of the Debtors' estates; (ii) the Global Settlement and

Bilateral Settlements incorporated into the Plan; (iii) the provisions governing Distributions

under the Plan; (iv) the procedures governing the allowance of Claims under the Plan; (v) the

dissolution or wind down of a Debtor or Debtor-Controlled Entity in accordance with applicable

law and consistent with the implementation of the Plan; and (vi) the liquidating trust vehicles

that may be created under the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy

Code. *See* Plan, Arts. VI-X.

R.     <u>Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  To the extent

applicable, each Debtor's certificate of incorporation, bylaws or limited liability company

agreement, as applicable, shall be amended as of the Effective Date to contain a provision that

prohibits the issuance of nonvoting equity securities prohibited by section 1123(a)(6), thereby

satisfying section 1123(a)(6) of the Bankruptcy Code.

S.      <u>Selection of Officers, Directors, or Trustees (11 U.S.C. § 1123(a)(7))</u>.

Sections 7.2, 7.3 and 7.4 of the Plan provide for the manner in which the boards of directors of

each of the Debtors will be appointed following the Effective Date.  Such provisions are

consistent with the interests of Creditors, equity security holders, and public policy, thereby

satisfying section 1123(a)(7) of the Bankruptcy Code.  Prior to the Confirmation Hearing, the

Debtors have filed with the Court a list of the persons selected to serve on the board of directors

of LBHI following the Effective Date [ECF No. 22931].

T.      <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The provisions of the

Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a

provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the

effectiveness of this Confirmation Order.

U.      <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article XI of the

Plan and the Plan Supplement (as amended) provide for the rejection of executory contracts and

unexpired leases of the Debtors as of the Effective Date, except for any executory contract or

unexpired lease (i) that has been assumed pursuant to an order of the Bankruptcy Court prior to

the Effective Date, (ii) as to which a motion for approval of the assumption of such executory

contract or unexpired lease has been filed and served prior to the Confirmation Date or (iii) that

is specifically designated as an executory contract or unexpired lease to be assumed in the Plan

Supplement, and any amendment thereto.  Pursuant to the notices sent out by the Debtors to each

party to a contract proposed to be assumed by the Debtors (each, a "<u>Cure Notice</u>"), the Debtors

provided notice of any defaults to be cured with respect to each contract to be assumed by the

Debtors.  Numerous parties filed objections to the assumption of their contracts; a hearing before

the Court on the assumption of such contracts has been scheduled for February 14, 2012 at 10:00

a.m.  In addition, the Debtors have agreed with certain other parties to defer without date

disputes regarding whether a particular contract is executory and, if executory, whether (i) the

obligations thereunder are severable and (ii) whether the contract will be assumed or rejected.

The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

      V.     <u>Settlement/Retention of Claims or Interests (11 U.S.C. § 1123(b)(3))</u>.  The

Plan includes a settlement and compromise of the Plan Issues that is designed to achieve a fair

and efficient resolution of the Chapter 11 Cases.  Pursuant to Section 1123(b)(3) of the

Bankruptcy Code and Bankruptcy Rule 9019, the Plan constitutes a settlement of potential

litigation of the Plan Issues.  The terms of the Plan reflect an integrated and comprehensive

settlement that resolves the various Plan Issues through (i) the Plan Adjustment; (ii) Distributions

to LBHI on only 80% of the portion of its Claims against the Subsidiary Debtors relating to

intercompany funding; (iii) the reallocation of the first $100 million distributed to LBHI on

account of its Claims against LBSF and LCPI to holders of General Unsecured Claims in LBSF

Class 4A and LCPI Class 4A; (iv) the Distribution to holders of General Unsecured Claims in

LBSF Class 4A and Affiliate Claims in LBSF Class 5C of the first $70 million recovered by

LBSF on account of its assets in excess of $14.156 billion; (v) the Allowed amount of Claims

asserted by Designated Entities; (vi) the allowance of LBT's intercompany Claim against LBHI

in the amount of $34.548 billion; (vii) the allocation of costs and expenses incurred in the

administration of the estates pursuant to the Debtor Allocation Agreement; and (viii) the

principles included in the Structured Securities Valuation Methodologies (the "<u>Global</u>

<u>Settlement</u>").  Each component of the Global Settlement is an integral part thereof.  The Plan was

accepted by Creditors holding 95.00% of voting Claims in the aggregate amount of

approximately $400 billion.  The Creditors supporting the Global Settlement include the

Creditors' Committee, the Ad Hoc Group,[3] certain of the Non-Con Plan Proponents[4] and certain

Foreign Affiliates (as defined below), each of which is a sophisticated party and represented by

counsel that is recognized as being knowledgeable and experienced in the field of complex

chapter 11 cases.  The Global Settlement is a result of good faith arms'-length negotiations.  The

Global Settlement is consistent with section 1123(b)(3) of the Bankruptcy Code.

       (i)      <u>Substantive Consolidation.</u>

       a.      The Debtors and the Creditors' Committee have conducted

a thorough factual and legal analysis to determine whether the substantive consolidation of the

Debtors and their Affiliates is appropriate.  The facts and analysis set forth in the Disclosure

Statement, the Debtors' Memorandum of Law In Support of the Global Settlement, and the

Suckow Declaration, reflect that there are facts that support and facts that militate against the

substantive consolidation of the Debtors and their Affiliates based upon the law in this

jurisdiction.  There is a possibility that if litigated to final judgment, a court may find that the

substantive consolidation of the Debtors and their affiliates, including their Foreign Affiliates, is

appropriate.

       b.      The Global Settlement gives due consideration to the

strengths and weaknesses of potential arguments that have been made for and against substantive

---

[3] The Ad Hoc Group consists of California Public Employees' Retirement System, Canyon Capital Advisors LLC, City of Costa Mesa, City of Fremont, County of San Mateo, Fiduciary Counselors Inc., Fir Tree, Inc., Gruss Asset Management, L.P., Owl Creek Asset Management, L.P., on behalf of the funds it manages or advises, Paulson & Co. Inc., Perry Capital LLC, on behalf of one or more investment funds for which it or an affiliate acts as investment advisor or general partner, Taconic Capital Advisors L.P. and Vallejo Sanitation and Flood Control District.

[4] The Non-Con Plan Proponents are Angelo, Gordon & Co., L.P., Contrarian Capital Management, LLC, Credit Agricole CIB, Credit Suisse International, Cyrus Capital Partners, LP, D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., Deutsche Bank AG, Goldentree Asset Management, LP, Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs International, Hayman Capital Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC, Morgan Stanley & Co. International plc., Morgan Stanley Capital Services Inc., Mount Kellett Capital Management, Oaktree Capital Management, L.P., The Royal Bank of Scotland plc, Serengeti Asset Management LP, Silver Point Capital, L.P., State Street Bank and Trust Company, and York Capital Management Global Advisors, LLC.

consolidation.  Litigation regarding substantive consolidation of the Debtors would require vast

amounts of discovery and investigation into the operations of Lehman prior to the

Commencement Date, would be extraordinarily complex and costly for all parties involved, and

would significantly delay Distributions to all Creditors.

        c.     The Plan Adjustment, which is a key element of the Global

Settlement, ensures that recoveries to all Creditors are within the range of possible litigated

outcomes and fall between the estimated Distributions to each Class if the Participating Debtors

and their affiliates were substantively consolidated or if the Participating Debtors had strict non-

consolidation plans.

      (ii)    <u>Characterization of Intercompany Claims</u>.

        a.     Prior to the Commencement Date, the Debtors and their

Affiliates entered into tens of thousands of transactions daily involving billions of dollars.  The

transactions were recorded on Lehman's general ledger.  The Debtors reviewed a sampling of the

transactions between Debtors and considered the relevant legal standards for the

recharacterization of indebtedness as equity interests.  Based on the facts and analysis set forth in

the Disclosure Statement, the Debtors' Memorandum of Law In Support of the Global

Settlement, and the Cohn Declaration, there is a risk that certain portions of the intercompany

balances owed to LBHI by the Subsidiary Debtors could be recharacterized as equity

contributions if such matter were litigated to final judgment.

        b.     The Global Settlement gives due consideration to the

strengths and weaknesses of potential arguments for and against the recharacterization of

intercompany balances.  Litigation regarding characterization of a vast number of intercompany

balances would be extremely time consuming and expensive, and would delay Distributions to

all Creditors.

08-13555-mjp    Doc 23023-1    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 15 of 81

c.    By providing that the Distribution that LBHI will receive is based only on a portion of its Claims against the Subsidiary Debtors, the Plan provides recoveries to all Creditors that are within the range of possible litigated outcomes.

(iii)    Amount of Intercompany Claims/ Ownership of Assets.

a.    As a result of the large number of intercompany transactions among the Debtors and their Affiliates prior to the Commencement Date, there are many intercompany receivables and payables between Debtors.  The Debtors and their advisors have reviewed some of the transactions and the transfer of assets among the Debtors and determined that it is in the best interests of all Debtors and their Creditors to agree to the intercompany Claims among the parties in the amounts set forth on the books and records, subject to certain adjustments, and not to pursue any avoidance actions.

b.    The Plan establishes the Allowed amount of Claims among the Debtors and Claims of the Debtor-Controlled Entities against the Debtors and provides that all other Claims or causes of action are irrevocably released and waived.  The terms of the Global Settlement give due consideration to the strengths and weaknesses of potential arguments regarding the Claims among such entities and the ownership of assets.  Litigation regarding the amount or validity of thousands of intercompany balances and ownership of the Debtors' assets would be extremely time consuming and expensive, and would delay Distributions to all Creditors.

c.    The settlement of all Claims among the Debtors in the amounts set forth on the books and records, subject to certain adjustments, is within the range of possible litigated outcomes.

(iv)    Settlements with Foreign Affiliates and Certain Third-Party Creditors
Incorporated in the Plan.

a.    Lehman was a worldwide enterprise prior to the

Commencement Date which included affiliates organized and doing business in many

international jurisdictions.  Following the Commencement Date, insolvency or liquidation

proceedings were commenced with respect to 80 of the Foreign Affiliates of the Debtors in 16

jurisdictions.  Due to the manner in which Lehman operated prior to the Commencement Date,

upon the fracturing of the Lehman enterprise, the Foreign Affiliates and the Debtors had

significant Claims against each other.

b.    The Debtors have entered into settlement agreements with

Lehman Brothers Bankhaus AG, Lehman Brothers Treasury Co. B.V., Lehman Brothers

Securities N.V., Lehman Brothers International (Europe) and the Lehman UK Entities, Lehman

Brothers (Luxembourg) Equity Finance S.A. (*en faillite*), Lehman Brothers (Luxembourg)

Equity Finance S.A. (in liquidation), the Hong Kong Lehman Entities In Liquidation, the

Lehman Singapore Entities, the Lehman Japan Entities (collectively, the "Foreign Affiliates"),

Deutsche Bundesbank ("Bundesbank"), Bundesverband deutscher Banken E.V. ("BdB"),

Entschädigungseinrichtung deutscher Banken GmbH ("EdB"), and Deutsche Bank and certain

holders of participations in Claim Nos. 59006 and 58233 (collectively, the "Bilateral

Settlements").  Each of the Bilateral Settlements with the Foreign Affiliates, BdB, EdB and

Bundesbank takes into account the various Plan Issues, specifically substantive consolidation,

and the validity and enforceability of asserted Guarantee Claims.  Many of the Foreign Affiliates

asserted Guarantee Claims against LBHI based upon certain corporate resolutions, pursuant to

which LBHI purportedly guaranteed the obligations of certain of its Affiliates.  LBHI has

reviewed such Claims and has challenged the enforceability of such Claims.

c.      The Bilateral Settlements, other than the agreement with

Deutsche Bank, take into account the fact that Claims of the affiliates and Guarantee Claims

would be disregarded if the Debtors and its affiliates were substantively consolidated and the risk

that certain Guarantee Claims may be unenforceable against LBHI, and, therefore, allow the

Claims of the Foreign Affiliates in amounts substantially less than the asserted amounts.

d.      The Bilateral Settlement with Deutsche Bank takes into

account the relative strengths of the arguments regarding the classification of certain Claims and

the interpretation of the applicable agreements in which such Claims were settled and Allowed.

e.      The Bilateral Settlements resulted in a reduction of Claims

asserted against the Debtors by more than $295 billion.

f.      Each of the Bilateral Settlements was negotiated in good

faith and at arm's length.

W.      Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as

otherwise provided or permitted by orders of the Court.  The Debtors have complied with the

applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy

Rules, and the Disclosure Statement Order in transmitting the Solicitation Packages and related

documents and notices and in soliciting and tabulating votes on the Plan.

X.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts

and record of these Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the

record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The

Plan was proposed with the legitimate and honest purpose of maximizing the value of the

08-13555-mg   Doc 23023-1   Filed 12/06/11   Entered 12/06/11 16:57:20   Main Document
Pg 39 of 229

Debtors' estates and effectuating an orderly liquidation of the Debtors. The Plan was negotiated at arm's length among representatives of the Debtors, the Creditors' Committee, the Ad Hoc Group, certain of the Non-Con Plan Proponents, certain holders of notes issued by LBT and guaranteed by LBHI, various Foreign Affiliates and other Creditors. More than 150 parties that asserted approximately $450 billion in Claims have entered into Plan Support Agreements in connection with the Plan.

Y.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. All payments made or to be made by any of the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Z.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. Sections 7.2 and 7.3 of the Plan provide for the manner in which the board of directors of each of the Debtors will be selected. The Debtors have filed with the Court a list of the directors selected by the Director Selection Committee to serve on the board of directors of LBHI following the Effective Date. The appointment to such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. The Plan, therefore, complies with section 1129(a)(5) of the Bankruptcy Code.

AA.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes by the Debtors, and, therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.     <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Disclosure Statement, the Plan Supplement, the

08-13555-mg   Doc 23023-1   Filed 12/06/11   Entered 12/06/11 16:57:20   Main Document
Pg 40 of 229

Cohn Declaration and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Equity Interest in each Debtor will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the applicable Debtor were hypothetically liquidated under chapter 7 of the Bankruptcy Code on such date.  The assumptions and estimates in the liquidation analysis that are set forth in Exhibit 5 to the Disclosure Statement are reasonable in the context of these Chapter 11 Cases, including the assumption that the compromises and settlements incorporated in the Plan would also be consummated in a hypothetical chapter 7 liquidation.  Conversion of the Chapter 11 Cases to chapter 7 would result in substantial additional delay and expense, as well as diminished asset value.

CC.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Other than classes of Claims identified in the Voting Certification for which no votes were cast (the "Non-Voting Classes"), at each Debtor, all Classes in which Creditors were entitled to vote have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  Under these circumstances and in light of the overwhelming support for the Plan, the Non-Voting Classes are deemed to have accepted the Plan.  Claims in LBHI Class 10A, 10B, 10C and 11 (the "Deemed Rejecting Classes of Claims"), and Equity Interests in each of the Debtors are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes of Claims and the Classes of Equity Interests in each Debtor, each Debtor's Plan is confirmable because each Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

08-13555-scc    Doc 23023-1    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 41 of 229

DD.    <u>Treatment of Administrative Expenses, Priority Non-Tax Claims, and
Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Expense Claims
and Priority Non-Tax Claims pursuant to Sections 2.1 of the Plan satisfies the requirements of
sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims
pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the
Bankruptcy Code.  Each Debtor has sufficient Cash to pay Allowed Administrative Expense
Claims, Allowed Priority Non-Tax Claims, and Allowed Priority Tax Claims.

EE.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>.  At least one
Class of Claims against each Debtor that is impaired under the Plan has accepted the Plan,
determined without including any acceptance of the Plan by any insider, thus satisfying the
requirements of section 1129(a)(10) of the Bankruptcy Code.

FF.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Debtors' Memorandum of Law
in Support of Confirmation, the Disclosure Statement and the Suckow Declaration are persuasive
and credible evidence that each Debtor will have sufficient funds to continue to manage its assets
and make all payments required under the Plan.  Accordingly, the Plan satisfies the requirements
of section 1129(a)(11) of the Bankruptcy Code.

GG.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees payable under
section 1930 of title 28, United States Code, as determined by the Court, have been paid or will
be paid pursuant to Section 15.7 of the Plan.  Thus, the Plan satisfies the requirements of section
1129(a)(12) of the Bankruptcy Code.

HH.    <u>Benefit Plans (11 U.S.C. § 1129(a)(13))</u>.  Section 1123(a)(13) is
inapplicable to the Debtors.

II.    <u>Inapplicable Sections of Section 1129 of the Bankruptcy Code</u>.  Sections

1129(a)(14), 1129(a)(15), 1129(a)(16) and 1129(e) are inapplicable in the Debtors' Chapter 11

Cases.

JJ.    <u>Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))</u>.

Based on the Disclosure Statement, the Debtors' Memorandum of Law In Support of the Global

Settlement, the Debtors' Memorandum of Law In Support of Confirmation of the Plan, the

Suckow Declaration, and the Debtors' Response, the Plan (i) does not discriminate unfairly, and

(ii) is fair and equitable as to LBHI Classes 10A, 10B, 10C and 11 and the Equity Interests in

each Debtor, which Classes were deemed to reject the Plan, as required by section 1129(b)(1) of

the Bankruptcy Code.

KK.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan being

prosecuted in these Chapter 11 Cases, thereby satisfying section 1129(c) of the Bankruptcy

Code.  The Ad Hoc Group and certain of the Non-Con Plan Proponents that signed plan support

agreements have agreed to support the Plan and hold their plans in abeyance and not prosecute or

seek confirmation of the Plan subject to certain termination rights set forth in the Stipulation and

Order, dated June 30, 2011 [ECF Nos. 18306 and 18686].  Neither the Ad Hoc Group nor the

Non-Con Plan Proponents have terminated the Stipulation and Order and both are supporting the

confirmation of the Plan.

LL.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal

purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5

of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

MM.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before

the Court in these Chapter 11 Cases, the Debtors and their directors, officers, employees,

members, agents, advisors, attorneys and professionals, the Released Parties and the PSA

Creditors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy

Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy

Rules in connection with all their respective activities relating to the solicitation of acceptance or

rejection of the Plan and their participation in the activities described in section 1125 of the

Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the exculpation provisions set forth in Section 13.3 of the Plan.

NN.    <u>Assumption and Rejection</u>.  Article XI of the Plan governing the

assumption and rejection of executory contracts and unexpired leases satisfies the requirements

of section 365(b) of the Bankruptcy Code.

OO.    <u>Releases, Injunction and Exculpation</u>.  In the context of these unique

Chapter 11 Cases, each of the releases, and the injunction and exculpation provisions set forth in

the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a),

1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section

1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated

into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their

estates, and their Creditors; (e) is important to the overall objectives of the Plan; and (f) is

consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the

Bankruptcy Code, and other applicable law.

PP.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the

requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

QQ.    <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all

issues raised in the objections (excluding any timely filed objections that relate solely to

assumption of any executory contract), or which might have been raised, and the objections

09-13555-jmp    Doc 23023-1    Filed 12/06/15    Entered 12/06/15 16:57:20    Main Document
Pg 23 of 61

(excluding any timely filed objections that relate solely to assumption of any executory contract) have been fully and fairly litigated.

        RR.    Retention of Jurisdiction.  The Court is authorized to retain jurisdiction over the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code, as well as any motions filed prior to the Effective Date requesting authorization to use, sell, or lease assets outside the ordinary course of business pursuant to section 363 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

        NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

        1.    Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, all Exhibits thereto, and the Plan Supplement are incorporated by reference into and are an integral part of the Plan and this Confirmation Order and are all approved.

        2.    Objections.  All objections (excluding any timely filed objections that relate solely to assumption of any executory contract) that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits for the reasons set forth in the Response, the Debtors' Memorandum of Law In Support of Confirmation and the Debtors' Memorandum of Law In Support of the Global Settlement.

        3.    Conclusions of Law.  The conclusions of law set forth herein and in the record of the Confirmation Hearing constitute the Court's conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052

and 9014.  To the extent any of the following conclusions of law constitute findings of fact, they
are adopted as such.

4.      <u>Modifications to the Plan</u>.  The Plan Modifications meet the requirements
of sections 1127(a) and (c) of the Bankruptcy Code and do not adversely change the treatment of
the Claim of any Creditor or the Equity Interest of any equity security holder within the meaning
of Bankruptcy Rule 3019, and, therefore, all holders of Claims against the Debtors who voted to
accept the Plan are hereby deemed to have accepted the Plan as amended by the Plan
Modifications, and no further solicitation or voting is required.  No holder of a Claim against the
Debtors who has voted to accept the Plan shall be permitted to change its acceptance or rejection
as a consequence of the Plan Modifications.

5.      <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied
with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon
the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions
of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation of votes on
the Plan complied with the solicitation procedures in the Disclosure Statement Order, was
appropriate and satisfactory under the circumstances of the Debtors' Chapter 11 Cases, and was
in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local
Rules.  Notice of the Plan Supplement and all related documents, was appropriate and
satisfactory under the circumstances of the Debtors' Chapter 11 Cases, and was in compliance
with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

6.      <u>Implementation</u>.  On and after the Effective Date, the Debtors, and the
Plan Administrator are authorized to (i) execute, deliver, file, or record such documents,
contracts, instruments, releases, and other agreements, including, without limitation, those
contained in the Plan Supplement, (ii) make any and all Distributions and transfers contemplated

pursuant to, and as provided for in, the Plan, and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

7.      Plan Classification Controlling.  The classification of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' Creditors in connection with voting on the Plan (a) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no way affect, the actual classification of such Claims and Equity Interests under the Plan for Distribution purposes, and (c) shall not be binding on the Debtors.

8.      Binding Effect.  The Plan and its provisions shall be binding on the Debtors, any entity acquiring or receiving property or a Distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder (a) is impaired under the Plan or (b) has accepted the Plan.

**The Global Settlement**

9.      Global Settlement Provisions.  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the Global Settlement set forth in section 6.5 of the Plan, and each component of the Global Settlement, are hereby approved pursuant to Bankruptcy Rule 9019 as fair and reasonable and in the best interests of each of the Debtors, their estates and Creditors. The settlement is within the range of reasonable results if the issues were litigated and falls above the lowest point in the range of reasonableness.

**The Bilateral Settlements**

10.     The Plan constitutes a motion for approval of each of the Bilateral

Settlements pursuant to Bankruptcy Rule 9019.  The settlement agreements were included in the

Plan or the Plan Supplement, which provided adequate and sufficient notice to all Creditors.

11.     Approval of Bankhaus Settlement.  Based on the Debtors' Memorandum

of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration,

and the Disclosure Statement, the settlement between the Debtors and Lehman Brothers

Bankhaus AG ("Bankhaus") described in the Disclosure Statement and incorporated into the

Plan pursuant to Section 6.5(b)(ii) of the Plan (the "Bankhaus Settlement Agreement") is fair and

reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved

pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents, and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Bankhaus

Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to

perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy

Code, Bankhaus shall have Allowed Claims against the Debtors in the amounts set forth in the

Bankhaus Settlement Agreement.

12.     Approval of LBT Settlement.  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and Lehman Brothers Treasury Co.

B.V. ("LBT") described in the Disclosure Statement and incorporated into the Plan pursuant to

Section 6.5(b)(iii) of the Plan (the "LBT Settlement Agreement") is fair and reasonable and is in

the best interests of the Debtors and their Creditors and is hereby approved pursuant to

Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully

perform any and all obligations, instruments, documents, and papers and to take any and all

actions reasonably necessary or appropriate to consummate the LBT Settlement Agreement,

including waiving any conditions precedent to its effectiveness, and to perform any and all

obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, LBT shall

have Allowed Claims against the Debtors in the amounts set forth in the LBT Settlement

Agreement.

             13.      <u>Approval of Hong Kong Settlement.</u>  Based on the Debtors' Memorandum

of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration,

and the Disclosure Statement, the settlement between the Debtors and the Hong Kong Lehman

Entities In Liquidation described in the Disclosure Statement and incorporated into the Plan

pursuant to Section 6.5(b)(v) of the Plan (the "<u>Hong Kong Settlement Agreement</u>") is fair and

reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved

pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents, and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Hong Kong

Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to

perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy

Code, the Hong Kong Lehman Entities shall have Allowed Claims against the Debtors in the

amounts set forth in the Hong Kong Settlement Agreement

             14.      <u>Approval of Singapore Settlement.</u>  Based on the Debtors' Memorandum

of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration,

and the Disclosure Statement, the settlement between the Debtors and the Lehman Singapore

Entities described in the Disclosure Statement and incorporated into the Plan pursuant to

6.5(b)(vi) of the Plan (the "<u>Singapore Settlement Agreement</u>") is fair and reasonable and is in the

best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy

Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform

any and all obligations, instruments, documents, and papers and to take any and all actions

reasonably necessary or appropriate to consummate the Singapore Settlement Agreement,

including waiving any conditions precedent to its effectiveness, and to perform any and all

obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, Lehman

Singapore shall have Allowed Claims against the Debtors in the amounts set forth in the

Singapore Settlement Agreement.

      15.    Approval of Lehman UK Entities Settlement.  Based on the Debtors'

Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the

Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and the

Lehman UK Entities set forth in the agreement, dated October 24, 2011 included in the Plan

Supplement (the "Lehman UK Entities Settlement Agreement") and incorporated into the Plan

pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best interests of the Debtors

and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019. The Debtors are

duly authorized to execute, deliver, implement and fully perform any and all obligations,

instruments, documents, and papers and to take any and all actions reasonably necessary or

appropriate to consummate the Lehman UK Entities Settlement Agreement, including waiving

any conditions precedent to its effectiveness, and to perform any and all obligations

contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, the Lehman UK Entities

shall have Allowed Claims against the Debtors in the amounts set forth in the Lehman UK

Entities Settlement Agreement.

      16.    Approval of LBJ Settlement.  Based on the Debtors' Memorandum of Law

In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the

Disclosure Statement, the settlement between the Debtors and the Lehman Japan Entities set forth in the agreement, dated as of October 24, 2011, included in the Plan Supplement (the "<u>LBJ Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the LBJ Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, the Lehman Japan Entities shall have Allowed Claims against the Debtors in the amounts set forth in the LBJ Settlement Agreement.

    17. <u>Approval of LBSN Settlement.</u>  Based on the Debtors' Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and the Lehman Brothers Securities N.V. ("<u>LBSN</u>") set forth in the agreement, dated as of October 19, 2011, included in the Plan Supplement (the "<u>LBSN Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate the LBSN Settlement Agreement, including waiving any conditions precedent to its effectiveness, and to perform any and all obligations contemplated therein. Pursuant to section 502 of the Bankruptcy Code, LBSN shall have Allowed Claims against the Debtors in the amounts set forth in the LBSN Settlement Agreement.

08-13555-scc    Doc 23023    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 30 of 51

18.    <u>Approval of LB Lux Settlement.</u>  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and Lehman Brothers

(Luxembourg) Equity Finance S.A. (*en faillite*) ("<u>LB Lux</u>") set forth in the agreement, dated as

of October 25, 2011, included in the Plan Supplement (the "<u>LB Lux Settlement Agreement</u>") and

incorporated into the Plan pursuant to Section 6.5(b)(vii), is fair and reasonable and is in the best

interests of the Debtors and their Creditors and is hereby approved pursuant to Bankruptcy Rule

9019.  The Debtors are duly authorized to execute, deliver, implement and fully perform any and

all obligations, instruments, documents, and papers and to take any and all actions reasonably

necessary or appropriate to consummate the LB Lux Settlement Agreement, including waiving

any conditions precedent to its effectiveness, and to perform any and all obligations

contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, LB Lux shall have

Allowed Claims against the Debtors in the amounts set forth in the LB Lux Settlement

Agreement.

19.    <u>Approval of BdB Settlement.</u>  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and BdB set forth in the

agreement, dated as of September 30, 2011, included in the Plan Supplement (the "<u>BdB</u>

<u>Settlement Agreement</u>") and incorporated into the Plan pursuant to Section 6.5(j), is fair and

reasonable and is in the best interests of the Debtors and their Creditors and is hereby approved

pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents, and papers and to

take any and all actions reasonably necessary or appropriate to consummate the BdB Settlement

Agreement, including waiving any conditions precedent to its effectiveness, and to perform any

and all obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, BdB

shall have Allowed Claims against the Debtors in the amounts set forth in the BdB Settlement

Agreement.

20.     Approval of EdB Settlement.  Based on the Debtors' Memorandum of

Law In Support of the Global Settlement, the Ehrmann Declaration, the Suckow Declaration, and

the Disclosure Statement, the settlement between the Debtors and EdB set forth in the agreement,

dated as of September 30, 2011, included in the Plan Supplement (the "EdB Settlement

Agreement") and incorporated into the Plan pursuant to Section 6.5(j), is fair and reasonable and

is in the best interests of the Debtors and their Creditors and is hereby approved pursuant to

Bankruptcy Rule 9019.  The Debtors are duly authorized to execute, deliver, implement and fully

perform any and all obligations, instruments, documents, and papers and to take any and all

actions reasonably necessary or appropriate to consummate the EdB Settlement Agreement,

including waiving any conditions precedent to its effectiveness, and to perform any and all

obligations contemplated therein.  Pursuant to section 502 of the Bankruptcy Code, EdB shall

have Allowed Claims against the Debtors in the amounts set forth in the EdB Settlement

Agreement.

21.     Approval of Bundesbank Settlement.  Based on the Debtors'

Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the

Suckow Declaration, and the Disclosure Statement, the settlement between the Debtors and

Bundesbank set forth in the agreement, dated as of October 11, 2011, included in the Plan

Supplement (the "Bundesbank Settlement Agreement") and incorporated into the Plan pursuant

to Section 6.5(j), is fair and reasonable and is in the best interests of the Debtors and their

Creditors and is hereby approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly

authorized to execute, deliver, implement and fully perform any and all obligations, instruments,

documents, and papers and to take any and all actions reasonably necessary or appropriate to

consummate the Bundesbank Settlement Agreement, including waiving any conditions precedent

to its effectiveness, and to perform any and all obligations contemplated therein.  Pursuant to

section 502 of the Bankruptcy Code, Bundesbank shall have Allowed Claims against the Debtors

in the amounts set forth in the Bundesbank Settlement Agreement.

22.     Approval of Deutsche Bank Settlement.  Based on the Debtors'

Memorandum of Law In Support of the Global Settlement, the Ehrmann Declaration, the

Suckow Declaration, and the Disclosure Statement, the settlement between the LBHI, LCPI,

Deutsche Bank AG, Monarch Alternative Capital LP, Stone Lion Portfolio L.P., Permal Stone

Lion Fund Ltd., Centerbridge Credit Advisors LLC, and Anchorage Capital Group, L.L.C. set

forth in the agreement, dated as of November 23, 2011, included in the Plan Supplement (the

"DB Claims Settlement Agreement") and incorporated into the Plan pursuant to Section 6.5(j), is

fair and reasonable and is in the best interests of the Debtors and their Creditors and is hereby

approved pursuant to Bankruptcy Rule 9019.  The Debtors are duly authorized to execute,

deliver, implement and fully perform any and all obligations, instruments, documents, and papers

and to take any and all actions reasonably necessary or appropriate to consummate the DB

Claims Settlement Agreement, including waiving any conditions precedent to its effectiveness,

and to perform any and all obligations contemplated therein.

23.     Implementation of the Bilateral Settlements.  The Debtors are authorized

to take all actions to implement the terms of each of the Bilateral Settlements.  The Debtors are

authorized to direct Epiq Bankruptcy Solutions, LLC, the court-appointed claims agent (the

"Claims Agent") to modify the official claims register (the "Claims Register") to reflect the

terms of the Bilateral Settlements.

24.    <u>Debtors' Claims Schedule</u>.  Pursuant to the Bar Date Order, the Debtors

were not required to file Claims against each other.  Pursuant to Section 6.5(b)(i) of the Plan,

Senior Affiliate Claims, Senior Affiliate Guarantee Claims and Affiliate Claims of a Debtor

against another Debtor are Allowed in the applicable Classes in the net amounts set forth on

pages 1 and 2 of the Debtors' Claims Schedule.  Other than any Claims that arise out of the

Debtor Allocation Agreement, the amounts included on the Debtors' Claims Schedule shall be

the only prepetition Claims of the Debtors against each other that are Allowed.  The Claims

Agent is authorized to take all actions to reflect the Claims set forth in the Debtor Claims

Schedule on the Claims Register.

25.    <u>Schedule of Claims of Debtor-Controlled Entities</u>.  Pursuant to the Bar

Date Order, the Debtor-Controlled Entities were not required to file proofs of Claim against the

Debtors prior to the Bar Date.  The Schedule of Claims of Debtor-Controlled Entities included in

the Plan Supplement sets forth the prepetition Claims of the Debtor-Controlled Entities against

each of the Debtors that will be Allowed pursuant to the Plan upon the occurrence of the

Effective Date.  The Claims will be Allowed as Senior Affiliate Claims (LBHI Class 4A), Senior

Affiliate Guarantee Claims (LBHI Class 4B) and Affiliate Claims (LBHI Class 8) against LBHI

as set forth in the Schedule of Claims of Debtor-Controlled Entities and against each of the

Subsidiary Debtors in the Class of Claims of Affiliates Other Than Participating Debtors.

Except for Claims that may arise between the Debtors and the Debtor-Controlled Entities in

accordance with the Debtor Allocation Agreement or Claims for which a proof of Claim was

timely filed, (i) the amounts included on the Schedule of Claims of Debtor-Controlled Entities

shall be the only prepetition Claims of the Debtor-Controlled Entities that are Allowed against

the Debtors and (ii) to the extent any Debtor-Controlled Entity is not included on the Schedule of

Claims of Debtor-Controlled Entities, such Debtor-Controlled Entity shall not have any Allowed

prepetition Claims against the Debtors.  Notwithstanding the foregoing, the Schedule of Claims

of Debtor-Controlled Entities provides that LB Re Financing No. 2 Limited shall have an

Allowed Claim against LBHI in LBHI Class 4A in the amount of $6,761,074,231, which amount

shall supersede in all respects the Claim filed by LB Re Financing No. 2 Limited against LBHI

(Claim No. 23568), which proof of Claim shall be disregarded for all purposes.  In addition, the

Debtor-Controlled Entities Claims Schedule provides that LB Offshore Partners Ltd. shall have

an Allowed Claim against LBSF in LBSF Class 5C in the amount of $144,992.  The Allowed

Claims set forth on this schedule shall supersede in all respects the claim filed by LB Offshore

Partners Ltd (Claim No. 27448).  However, this shall not have any effect on Claim Nos. 24609

and 24611, which LB Offshore Partners Ltd. acquired from a third party.  The Claims Agent is

authorized to take all actions to reflect the Claims set forth in the Debtor-Controlled Entities

Claims Schedule on the Claims Register.

       26.    <u>Debtor Allocation Agreement</u>.  The Debtor Allocation Agreement, which

provides for the manner in which (a) expenses of the administration of the assets and liabilities of

the Debtors and certain of their affiliates, (b) the costs and benefits of Jointly Owned Litigation

Claims, (c) tax liabilities, refunds or readjustments for periods prior to, during and after the

Effective Date, will be allocated among the Debtors, is approved.  Pursuant to the Debtor

Allocation Agreement, LBSF shall have an Allowed Administrative Expense Claim against

LBHI in the amount of $300 million to be satisfied in accordance with Section 6.3 of the Plan.

The Debtors and the Plan Administrator are authorized to take all actions necessary to allocate

such costs and expenses in accordance with the Debtor Allocation Agreement.

       27.    <u>Resolution of Inter-Debtor Issues</u>.  In order to "close" the various inter-

company repurchase transactions, remove encumbrances, and to simplify the accounting for the

estates, the Debtors are authorized to make the transfers set forth in the Exhibit 10 of the Plan

Supplement.  Except as set forth in the preceding sentence, all Claims and disputes among the

Debtors or a Debtor and any Debtor-Controlled Entity regarding the title or beneficial ownership

of assets are hereby resolved in favor of the Debtor or Debtor-Controlled Entity whom the

Debtors have determined have beneficial ownership of these assets.  All Avoidance Actions of

any Debtor against another Debtor or Debtor-Controlled Entity are fully and irrevocably

released.  All reservations of rights of any of the Debtors or affiliates of the Debtors or their

respective Creditors, to assert any arguments or challenge any transaction entered into by any

other Debtors contained in any order entered by this Court prior the date hereof or agreement

entered into by any Debtor or affiliate of any Debtor are fully and finally extinguished.

28.    Plan Trust Agreement.  The Plan Trust Agreement, which provides that

the Plan Trust will hold the Plan Trust Stock, is approved.  The members of the Director

Selection Committee who are serving in such capacity as of the Effective Date, or their

replacements designated in accordance with the Court's Order Pursuant to Sections 105(a),

363(b), and 1142(b) of the Bankruptcy Code, Appointing the Director Selection Committee,

Approving Retention of Korn/Ferry International, and Authorizing Certain Related Relief [ECF

No. 22871], shall serve as the Plan Trustees and shall have the rights and obligations set forth in

section 7.4 of the Plan and the Plan Trust Agreement.

**Executory Contracts and Unexpired Leases**

29.    Pursuant to Section 11.1 of the Plan, all prepetition executory contracts

and unexpired leases to which any of the Debtors are parties shall be deemed to be rejected

pursuant to section 365 of the Bankruptcy Code, except for any executory contract or unexpired

lease (a) that has been assumed pursuant to an order of the Court entered prior to the Effective

Date, (b) as to which a motion for approval of the assumption or rejection of such executory

contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is

specifically designated in the Plan Supplement as a contract or lease to be assumed by the

Debtor.

30.     Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the

assumption of each executory contract and unexpired lease designated in the Plan Supplement

other than any executory contracts set forth on Schedules 1 and 2 hereto, or that are the subject

of the objections listed on Schedules 1 and 2 hereto, is approved.  To the extent any provision of

an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan

limits such Debtor's ability to assign such executory contract or unexpired lease, the

effectiveness of such provision is hereby limited or unenforceable to the full extent provided in

section 365(f) of the Bankruptcy Code.  The hearing regarding the Debtors' ability to assume, or

assume and assign, any executory contract or unexpired lease set forth on Schedule 1 hereto or

that is the subject of the objections listed on Schedule 1 hereto (the "February 14 Contracts")

shall be held by the Court **on February 14, 2011 at 10:00 a.m.**  The inclusion on the Plan

Supplement of the executory contracts set forth on Schedule 2 hereto (the "Deferred Contracts")

constitutes a motion for assumption of the executory contract or unexpired lease, which has been

adjourned without date and shall be scheduled by the Debtors, with leave from the Court, on a

date to be determined with at least 30 days notice to the counterparty, or as otherwise agreed.

All of the Debtors' rights with respect to the February 14 Contracts and the Deferred Contracts

are reserved.

31.     If the Court determines either before or after the Effective Date that the

cure amount or requirements for adequate assurance for any Deferred Contract is in excess of the

amount asserted by the Debtors, or if the Debtors determine not to proceed to assume any

Deferred Contract, the Debtors' rights are fully preserved to amend Exhibit 2 to the Plan

Supplement to remove the applicable contract(s), and upon such removal the applicable

36

contract(s) shall be deemed rejected as of the Effective Date in accordance with Section 11.1 of

the Plan.

32.     The filing and service of the Plan and the Plan Supplement, the service of

a notice of the cure amount, and the publication of the Confirmation Order is adequate notice of

the assumption of executory contracts and unexpired leases that are assumed pursuant to this

Order and the Plan (the "Assumed Contracts").

33.     Except as may otherwise be agreed to by the parties to a particular

contract, within thirty (30) days after the Effective Date, the applicable Debtor shall cure any and

all payment defaults under its respective Assumed Contracts in accordance with section 365(b)

of the Bankruptcy Code, by payment of the amount specified by the applicable Debtor in the

Cure Notice sent by the Debtor with respect to such Assumed Contract.  With respect to

February 14 Contracts and Deferred Contracts, disputed defaults that are required to be cured

shall be cured either within thirty (30) days of the entry of a Final Order determining the amount,

if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the

parties.  Notwithstanding any requirement in the Bankruptcy Code that executory contracts be

assumed or rejected on or prior to the Confirmation Date, the Debtors shall (i) be entitled to

assume any executory contract that the Court determines the Debtors are entitled to assume, or

(ii) reject any executory contract that either the Court determines the Debtors are not entitled to

assume, or that the Debtors elect to reject at any time prior to the hearing on February 14, 2011,

in which case, such assumption or rejection shall be effective as of the Effective Date.

34.     All counterparties to Assumed Contracts have been provided with

adequate assurance of future performance pursuant to section 365(f) of the Bankruptcy Code.

35.     The assumption of a prepetition executory contract shall not enhance any

contractual rights of a counterparty that were otherwise unenforceable under the Bankruptcy

Code immediately prior to the assumption or rejection of such contract; *provided, however,* that

the rights of all counterparties to assert that a contractual right was enforceable under the

Bankruptcy Code immediately prior to assumption or rejection and the Debtors' rights to dispute

any such assertions are fully preserved.

36.    With respect to the Assumed Contracts, any defaults on the part of the

Debtors that may arise because of a condition of the kind specified in section 365(b)(2) of the

Bankruptcy Code ("<u>Ipso Facto Defaults</u>") are not subject to the requirements under section

365(b)(1) of the Bankruptcy Code and no party shall be permitted to declare a default, terminate,

cease payment, delivery or any other performance under any executory contract, or any

agreement relating thereto, or otherwise modify any such executory contract, assert any Claim or

right to termination payment, or impose any penalty or otherwise take action against a Debtor as

a result of an Ipso Facto Default.

37.    <u>Bar Date for Rejection Damage Claims</u>.  Pursuant to Section 11.4 of the

Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant

to Section 11.1 of the Plan results in damages to the other party or parties to such contract or

lease, if not evidenced by a previously filed proof of Claim, a Claim for such damages shall be

forever barred and shall not be enforceable against the Debtors, or any property to be distributed

under the Plan, unless a proof of Claim is filed with the Court and served upon the Debtors, on or

before the date that is forty-five (45) days after the later of (a) notice of entry of an order

approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the

Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the

Plan Supplement relating to such executory contract or unexpired lease.  All Claims filed against

the Debtors as a result of the rejection of an executory contract or unexpired lease must be filed

in accordance with the procedures for the filing of Claims set forth in the Bar Date Order,

including the requirements to complete the Derivatives Questionnaire and/or the Guarantee

Questionnaire, as applicable.  Service of the Confirmation Notice shall be sufficient notice to the

applicable counterparties to executory contracts and unexpired leases of the rejection of their

executory contracts and unexpired leases pursuant to the Plan and the deadlines and procedures

for filing and Claims against the Debtors resulting from such rejection.

> 38.    Insurance Contracts.  To the extent that any of the Debtors' insurance

policies and any agreements, documents or instruments with insurers relating thereto constitute

executory contracts, such contracts shall be deemed assumed under the Plan.

**Title to Assets**

> 39.    Vesting of Assets.  Pursuant to Section 13.1 of the Plan, except as

otherwise provided in the Plan, all property of each of the Debtor's estates shall vest in that

Debtor free and clear of all Claims, liens, encumbrances, charges and other interests.  From and

after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action,

including, without limitation, the operation of their businesses, the use, acquisition, sale, lease

and disposition of property, and the entry into transactions, agreements, understandings or

arrangements, whether or not in the ordinary course of business, and execute, deliver, implement,

and fully perform any and all obligations, instruments, documents and papers or otherwise in

connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the

Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or

provision of the Bankruptcy Code, except as explicitly provided in the Plan.

08-13555-mg    Doc 23023-1    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 40 of 56

**Distributions and Reserves**

40.    <u>Initial Distributions</u>.  If the Debtors make the initial Distribution after

January 31 but before March 30, 2012, then notwithstanding the provisions of Section 8.3 of the

Plan, the Debtors shall not be required to make a Distribution on March 30, 2012 and the second

Distribution will be made on September 30, 2012.  All subsequent Distributions shall be made on

the semi-annual dates set forth in Section 8.3 of the Plan.

41.    <u>Effective Date Payments and Transfers by the Debtors</u>.  Pursuant to

Section 2.1 of the Plan, and subject to Sections 8.3 and 8.4 of the Plan, on the Effective Date, or

as soon thereafter as is practicable, the Debtors shall remit to holders of Allowed Administrative

Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and, if

applicable, Allowed Secured Claims Cash in an amount equal to the Allowed amount of such

Claims.

42.    <u>Reserve Requirements</u>.  Pursuant to Section 8.4 of the Plan, the Debtors

shall reserve an aggregate amount equal to the Pro Rata Share of the Distributions that would

have been made to each holder of a Disputed Claim if such Disputed Claim were an Allowed

Claim against such Debtor in an amount equal to the least of (a) the filed amount of such

Disputed Claim as set forth on the Claims Register maintained by the Claims Agent, (b) the

amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by

the Court for purposes of fixing the amount to be retained for such Disputed Claim, and (c) such

other amount as may have been agreed upon by the holder of such Disputed Claim and the

Debtors or may be agreed upon by the holder of such Disputed Claim and the Plan

Administrator.

43.    <u>No Reserve for Disallowed or Expunged Claims</u>.  None of the Debtors

shall be required to establish reserves for Claims that have been disallowed or expunged by order

of the Court in the absence of an order of the Court expressly directing the Debtor to establish a
reserve.

44.    <u>Distributions to Holders of Allowed Convenience Claims and Allowed
Convenience Guarantee Claims</u>.  A single Distribution to holders of Convenience Claims and
Convenience Guarantee Claims in the amounts set forth in the Plan shall satisfy such Claims in
full.  Such Creditors shall not have any further right to a Distribution from any Debtor in respect
of their Convenience Claims or Convenience Guarantee Claims.  Holders of Convenience
Claims subject to the *Order Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and
Bankruptcy Rule 9019 Approving Procedures for the Determination of the Allowed Amount of
Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers
Holdings Inc.* [ECF No. 19120] (the "<u>Structured Securities Procedures Order</u>") shall be bound by
this paragraph even if the Debtors determine subsequent to the date hereof that the value of a
structured security is greater than the amount previously proposed by the Debtors pursuant to the
Structured Securities Valuation Methodologies and Structured Securities Procedures Order.

45.    <u>Setoffs and Recoupment</u>.  Except as otherwise agreed by a Debtor,
including in the Plan, any Debtor may, but shall not be required to, setoff against or recoup from
any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims
of any nature whatsoever that the Debtor may have against the claimant; *provided, however*, that
the claimant shall be served with written notice of the proposed setoff or recoupment at least
twenty-eight (28) days prior to exercising any asserted setoff or recoupment right, and, if such
claimant serves a written objection to such asserted setoff or recoupment on or before twenty-
eight (28) days of receipt of such written notice, (i) the objection shall be deemed to initiate a
contested matter governed by, *inter alia*, Bankruptcy Rule 9014 and Local Rules 9014-1 and
9014-2, (ii) nothing herein shall affect the respective burden of each party in connection with

such contested matter, and (iii) the Debtor shall not proceed with the asserted setoff or

recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such

objection but the Debtor may withhold such payment pending resolution of such objection;

*provided, further*, that neither the failure to setoff against or recoup from any Claim nor the

allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any

such Claim the Debtor may have against such claimant.

**<u>Post-Effective Date Management of the Debtors</u>**

      46.   <u>Boards of Directors</u>.  Following the Effective Date, the board of directors

of LBHI shall be: Frederick Arnold, Robert S. Gifford, Thomas A. Knott, Sean O. Mahoney,

David Pauker, Ronald K. Tanemura and Owen D. Thomas.

      47.   Following the Effective Date, the board of directors of LBSF and LCPI

shall each consist of three (3) individuals as follows: (i) an individual who is a concurrently

serving member of the LBHI board of directors who is selected by the LBHI board of directors;

(ii) an individual who is a concurrently serving member of the LBHI board of directors who is

selected by the LBHI board of directors and acceptable to the Opco Plan Proponents who are

PSA Creditors; and (iii) an individual who is selected by the individuals appointed pursuant to (i)

and (ii) of this section and who is independent from LBHI, the members of the Director

Selection Committee and, in the case of LBSF, LBSF, or in the case of LCPI, LCPI.  Pursuant to

the Plan, the boards of directors of each of the Subsidiary Debtors, other than LBSF and LCPI,

shall consist of one (1) director which shall be a member of the LBHI board of directors.  With

respect to a Subsidiary Debtor incorporated or formed under the laws of a jurisdiction outside of

the United States, if the laws of such foreign jurisdiction require the appointment of more than

one (1) director or manager to the board of directors or managers of such Subsidiary Debtor or of

a director or manager that is not an individual concurrently serving as a member of the LBHI

board of directors, such additional or alternative directors or managers shall be appointed by the
LBHI board of directors

48.   <u>Post Effective Date Role of Creditors' Committee</u>.  On the Effective Date,
the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the
Plan through the date of the initial Distribution in accordance with Section 8.3 of the Plan; (ii)
defending any appeals from this Confirmation Order until final disposition of such appeals; and
(iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11
Cases for the period prior to the Effective Date.  Following the Effective Date, the litigation and
derivatives subcommittees of the Creditors' Committee may continue functioning for the limited
purposes of (i) resolving pending litigation and (ii) subject to approval of the post-Effective Date
board of directors of LBHI, other litigation and derivatives matters as to which, currently, the
subcommittees are involved, and which shall be recommended by the applicable subcommittee
and the Plan Administrator.  Other than with respect to the foregoing, the members of the
Creditors' Committee shall be released and discharged of and from all further authority, duties,
responsibilities, and obligations related to and arising from and in connection with the Chapter
11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants,
and other agents shall terminate.  The Debtors shall pay the reasonable fees and expenses of the
professionals retained by and shall reimburse the members of the remaining subcommittees for
reasonable disbursements incurred, including the reasonable fees of counsel, in connection with
the foregoing from and after the Effective Date.  If a member of a subcommittee becomes unable
to serve on a subcommittee or resigns after the Effective Date, the remaining members may
replace such member, continue to discharge the subcommittee's roles, or dissolve by a majority
vote of the remaining members.  Each of the subcommittees shall be deemed dissolved upon the

08-13555-mg    Doc 23023-1    Filed 12/06/11    Entered 12/06/11 16:57:20    Main Document
Pg 45 of 229

earliest to occur of (i) voluntary agreement of the members of the subcommittee, (ii) the

completion of the subcommittee's responsibilities, and (iii) the Closing Date.

49.    <u>Post-Effective Date Role of Fee Committee</u>.  The fee committee appointed

in the Chapter 11 Cases shall continue to exist after the Effective Date to perform its duties under

the Amended Fee Protocol approved by the Court [ECF No. 15998] in connection with all

applications for approval of professional fees incurred prior to the Effective Date, and all related

proceedings, including hearings on final fee applications.  The Debtors shall pay the reasonable

fees and expenses of the independent member and counsel retained by the fee committee in

connection with the foregoing from and after the Effective Date.

50.    <u>Post Effective Date Reporting</u>.  Beginning the first month-end and first

quarter-end following the Effective Date and until the Closing Date, the Plan Administrator shall

file with the Court reports consistent with the obligations set forth in section 15.6 of the Plan.

51.    <u>General Authorizations</u>.  The Plan Administrator on behalf of the Debtors

is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other

agreements or documents and take such actions as may be necessary or appropriate to effectuate,

implement, and further evidence the terms and provisions of the Plan and any securities issued

pursuant to the Plan.  The  Debtors and their directors, officers, members, agents, and attorneys

are authorized and empowered to issue, execute, deliver, file, or record any agreement,

document, or security, including, without limitation, the documents contained in the Plan

Supplement and the Exhibits to the Plan, as modified, amended, and supplemented, in

substantially the form included therein, and to take any action necessary or appropriate to

implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all

corporate actions authorized to be taken pursuant to the Plan, including merger of any of the

Debtors and the dissolution of each of the Debtors, and any release, amendment, or restatement

of any bylaws, certificates of incorporation, or other organizational documents of the Debtors,

whether or not specifically referred to in the Plan or the Plan Supplement, without further order

of the Court, and any or all such documents shall be accepted by each of the respective state

filing offices and recorded in accordance with applicable state law and shall become effective in

accordance with their terms and the provisions of state law.

**Releases, Discharge and Injunction**

52.     _Releases, Exculpations, and Injunctions_.  The release, exculpation, and

injunction provisions contained in the Plan are fair and equitable, are given for valuable

consideration, and are in the best interests of the Debtors and their estates, and such provisions

shall be effective and binding on all persons and entities.

53.     _Release and Exculpation_.  On and after the Effective Date, the Debtors and

all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the

Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their

respective present or former employees, agents, officers, directors or principals, shall be deemed

to have released (a) the Released Parties from, and none of the Released Parties shall have or

incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any

act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out

of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation,

consummation or administration of the Plan, property to be distributed under the Plan or any

other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure

Statement, the Plan Support Agreements or any contract, instrument, document or other

agreement related thereto and (b) the PSA Creditors from, and none of the PSA Creditors shall

have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability

for any act taken or omitted to be taken in connection with, or arising out of, the negotiation,

formulation, dissemination or confirmation, consummation or administration of the Plan, or any

other act or omission in connection with the Plan, the Disclosure Statement, the Plan Support

Agreements, including the filing of any alternative chapter 11 plan and any determination to not

pursue solicitation or confirmation of such alternative plan, or any contract, instrument,

document or other agreement related thereto; *provided, however*, that (i) other than as may be

otherwise provided in any releases included in settlement agreements between the Debtors and

the Foreign Affiliates, BdB, EdB and Bundesbank that are incorporated into the Plan, in no event

shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any

Released Party or PSA Creditor for any act taken or omitted to be taken prior to the

Commencement Date be released by the Plan, (ii) nothing herein or in the Plan shall affect or

release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the

liability of any person that otherwise would result from any such act or omission to the extent

such act or omission is determined by a Final Order to have constituted willful misconduct or

gross negligence; *provided, further*, that nothing in this Plan shall limit the liability of the

professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective

clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

54.    Term of Injunctions and Automatic Stay.  Pursuant to Section 13.7 of the

Plan, unless otherwise expressly provided herein or in the Plan or in a Final Order of the Court,

all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105

or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall

remain in full force and effect until the Closing Date.

55.    Injunction.  Pursuant to Section 13.5 of the Plan, except as expressly

provided in the Plan, herein, or a separate order of the Court or as agreed to by a Creditor and the

Plan Administrator (on behalf of a Debtor), all entities who have held, hold or may hold Claims

against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity

Interests has been filed or not) and other parties in interest, along with their respective present or

former employees, agents, officers, directors or principals, are permanently enjoined, on and

after the Effective Date, solely with respect to any Claims and Causes of Action that will be or

are extinguished or released pursuant to the Plan from (i) commencing, conducting, or

continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind

(including, without limitation, any proceeding in a judicial, arbitral, administrative or other

forum) against or affecting the Released Parties or the property of any of the Released Parties;

(ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment),

collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any

judgment, award, decree, or order against the Released Parties or the property of any of the

Released Parties; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or

indirectly, any encumbrance of any kind against the Released Parties or the property of any of

the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any

obligation due the Released Parties or the property of any of the Released Parties, except as

contemplated or Allowed by the Plan; (v) acting or proceeding in any manner, in any place

whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking

any actions to interfere with the implementation or consummation of the Plan

     56.   <u>Discharge</u>.  Pursuant to Section 13.4 of the Plan, except as expressly

provided therein, upon the date that all Distributions under the Plan have been made, (a) each

holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity

Interest in a Debtor shall be deemed to have forever waived, released and discharged the

Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any

and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b)

all such holders shall be forever precluded and enjoined, pursuant to section 524 of the

Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated

Equity Interest in the Debtors.

57.    No Waiver of Rights and Defenses. Except as otherwise agreed, the

provisions of the Plan and this Confirmation Order shall not enjoin, impair, prejudice, have any

preclusive effect upon, or otherwise affect (A) the rights of any Creditor to (x) effectuate a

recoupment pursuant to common law or setoff pursuant to common law or otherwise in

accordance with (a) section 553 and (b) sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27),

555, 556, 559, 560 or 561 of the Bankruptcy Code (subject to the Debtors' rights to contest the

validity of such asserted right of setoff or recoupment or the applicability of any of the foregoing

sections of the Bankruptcy Code) or (y) continue to assert the validity of a setoff previously

taken by such Creditor or to seek authority from the Bankruptcy Court to exercise a right of

setoff or recoupment (subject in each case to the Debtors' right to contest the validity of any such

setoff or recoupment), or (B) any legal or equitable defense, including any defensive right of

setoff or recoupment, that has been, or may be, asserted by any entity in response to a Litigation

Claim, Avoidance Action of a Debtor or objections to Claims against a Debtor.

58.    Indemnification Obligations.  The obligations of each Debtor to

indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other

employee who is held responsible for obligations of the Debtor incurred after the

Commencement Date who are directors, officers or employees of such Debtor or a Debtor-

Controlled Entity on or after the Commencement Date and (b) Released Parties, respectively,

against any Claims or Causes of Action as provided in the Debtor's articles of organization,

certificates of incorporation, bylaws, other organizational documents or applicable law, shall be

assumed by such Debtor and will remain in effect after the Effective Date.  Any such assumed

48

obligations owed in connection with an event occurring after the Commencement Date shall be

paid as an Administrative Expense Claim under the Plan.  Any such obligations owed in

connection with an event occurring before the Commencement Date shall be treated as pre-

petition Claims under the Plan.  Nothing in the Plan shall in any way limit, modify, alter or

amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1

of the Restated Certificate of Incorporation of LBHI.

       59.    <u>Special Provisions for United States Government</u>.

       a.    As to the United States, its agencies, departments or agents,

nothing in the Plan or Confirmation Order shall: (i) discharge, release or otherwise preclude (A)

any liability of the Debtors arising on or after the Confirmation Date (defined for purposes of this

section as the date the Confirmation Order becomes final and non appealable), (B) with respect

to the Debtors, any liability that is not a Claim against a Debtor, (C) any valid right of setoff or

recoupment, or (D) any liability of the Debtors arising under environmental or criminal laws as

the owner or operator of property that such Debtor owns or operates after the Confirmation Date

(defined for purposes of this section as the date the Confirmation Order becomes final and non-

appealable); or (ii) limit or expand the scope of the discharge to which the Debtors are entitled

under the Bankruptcy Code. The discharge and injunction provisions contained in the Plan and

Confirmation Order are not intended and shall not be construed to bar the United States from,

subsequent to the Effective Date, pursuing any police or regulatory action.

       b.    Nothing in the Plan, Plan Trust Agreement, or this

Confirmation Order shall provide to any person or entity (other than a Debtor) any exculpation,

release, discharge, preclusion of, or injunction against (i) any liability or other obligation owed

by such person or entity to the United States, its agencies or departments, or (ii) or any Claim,

Cause of Action, or other right held by the United States, its agencies or departments.

c.      Nothing contained in the Plan or this Confirmation Order

shall be deemed to have determined, or to bind the United States with respect to the

determination of, the federal tax treatment of any item, distribution, person or entity, or the tax

liability of any person or entity, including but not limited to the Debtors and the Liquidating

Trust; *provided, however*, that the foregoing shall not affect the rights, claims, defenses and

obligations of the United States or the Debtors under the Plan or otherwise with respect to the

allowance, disallowance or treatment of Claims of the United States (including, without

limitation, under the Bar Date Order and any stipulations between the Internal Revenue Service

or United States and the Debtors), nor shall it affect any right of any Debtor or successor to a

Debtor to request a determination of tax liability pursuant to section 505(b) of the Bankruptcy

Code, or any defenses or objections of the United States with respect to a request for a

determination of taxes by any person or entity pursuant to section 505(b) of the Bankruptcy

Code.

**Miscellaneous**

60.      <u>Resolution of Potential Plan Objections</u>.  Each of the (i) Stipulation

Among Debtors and Fidelity National Title Insurance Company Resolving Disputes in

Connection with the Plan; and (ii) Stipulation and Agreement By and Among Fannie Mae,

Freddie Mac and the Debtors Regarding the Debtors' Third Amended Plan, are approved.

61.      <u>Agreement with LBF With Respect to Section 8.15</u>.  The Debtors and the

Plan Administrator shall not withhold pursuant to Section 8.15 of the Plan any Distribution to

any Non-Controlled Affiliate on the basis that the Non-Controlled Affiliate may use such

Distribution to satisfy a Claim of LBF against such Non-Controlled Affiliate.  The Debtors or the

Plan Administrator also shall not withhold pursuant to Section 8.15 of the Plan any Distributions

to LBF on account of any Allowed Claims of LBF on the basis that LBF may use such

Distribution to satisfy a claim of another Non-Controlled Affiliate against LBF.

> 62.    Certain Pending Securities Litigations.

> a.    Nothing in the Plan or this Confirmation Order shall affect

the rights and obligations of the Debtors and of any party in interest as set forth in the Order

Discharging Examiner And Granting Related Relief [ECF No. 10169].

> b.    Nothing in the Plan or in this Confirmation Order shall

preclude any of (i) the Alameda County Employees' Retirement Association, Government of

Guam Retirement Fund, Northern Ireland Local Government Officers' Superannuation

Committee, City of Edinburgh Council as Administering Authority of the Lothian Pension Fund

and Operating Engineers Local 3 Trust Fund, the court-appointed lead plaintiffs (collectively, the

"Securities Action Lead Plaintiffs") or (ii) The Local 302 and 612 of the International Union of

Operating Engineers–Employers Construction Industry Retirement Trust (the "MBS Action Lead

Plaintiffs," and together with the Securities Action Lead Plaintiffs, the "Lead Plaintiffs"), lead

plaintiffs in *In re Lehman Brothers Equity/Debt Securities Litigation*, Case No. 08-05523 (LAK),

and *In re Lehman Brothers Mortgage Backed Securities Litigation*, Case No. 08-6762 (LAK)

(the "Securities Litigation"), respectively, from seeking relief from the Court to pursue their

Claims against the Debtors solely to collect from any available insurance proceeds.  All rights of

the Debtors to object or respond to requests for such relief or assert any defenses are fully

preserved.

> c.    In the event that the pending settlements involving the Lead

Plaintiffs in the Securities Litigation are not approved by final order or judgment of the United

States District Court, Southern District of New York and do not become effective by their terms,

nothing in the Plan or this Confirmation Order shall preclude the Lead Plaintiffs from seeking

discovery from any of the Debtors, the Plan Administrator or the Liquidating Trustee in
accordance with the Federal Rules of Civil Procedure following the Effective Date. All rights of
the Debtors, the Plan Administrator or the Liquidating Trustee under the Federal Rules of Civil
Procedure to object or respond to requests or assert any defenses are fully preserved.

63.     Alternative Dispute Resolution Procedures.  The following Court Orders
shall continue to apply and be binding on all parties following the Effective Date through the
Closing Date: (a) *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014,
and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures
and Alternative Dispute Resolution Procedures for Claims Against Debtors* [ECF No. 8474]; (b)
*Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under
Derivatives Contracts* [ECF No. 5207]; (c) *Tier 2 Alternative Dispute Resolution Procedures
Order for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More
than $1 Million* [ECF No. 11649]; and (d) *Alternative Dispute Resolution Procedures Order for
Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle
Counterparties* [ECF No. 14789].

64.     Claims Settlement Procedures.  The following Court orders permitting the
Debtors to compromise and settle Claims against the Debtors shall continue to apply and be
binding on all parties following the Effective Date through the Closing Date:  (a) *Order Pursuant
to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or
Assumption and Assignment of Prepetition Derivative Contracts* [ECF No. 2257], and all
supplements to such order and (b) *Order Pursuant to Section 105(a) of the Bankruptcy Code and
Bankruptcy Rules 3007 and 9019(b) Approving Settlement Procedures* [ECF No. 7936].

65.     Debtors' Right Under Bankruptcy Rule 2004.  The Debtors' shall retain
following the Effective Date the same rights they had prior to the Effective Date under

Bankruptcy Rule 2004 and this Court's *Order Granting the Debtors Authority to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities* [ECF No. 5910], shall remain in full force and effect following the Effective Date until the Closing Date.

66. <u>Issuance of New Securities</u>. The Plan Administrator, each Debtor or Debtor Controlled-Entity is authorized to (a) form and transfer certain assets of the Debtors and/or Debtor Controlled Entities to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities and, (b) issue New Securities for Distribution under the Plan. In the event that the Plan Administrator issues New Securities, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan.

67. <u>Exemption from Securities Laws</u>. The offering, issuance, or distribution of the New Securities in accordance with the Plan is exempt from the provisions of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, or distribution of a security by reason of section 1145(a) of the Bankruptcy Code.

68. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition or acquisition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in

connection with any disposition or acquisition of assets contemplated by the Plan (including by a

Liquidating Trust) in each case whether as a result of sale, assignment, foreclosure or deed-in-

lieu of foreclosure, shall not be subject to any stamp, real estate transfer, mortgage recording, or

other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

69.    Governmental Approvals Not Required.  Except as otherwise expressly

provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and

consents required, if any, by the laws, rules, or regulations of any state or any other

governmental authority with respect to the implementation or consummation of the Plan and any

documents, instruments, or agreements, and any amendments or modifications thereto, and any

other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any

documents, instruments, or agreements, and any amendments or modifications thereto.

70.    Each federal, state, commonwealth, local, foreign, or other governmental

agency is directed and authorized to accept the validity of (a) any and all documents, trust

agreements, mortgages, and instruments and (b) all actions of the Plan Administrator and those

acting on its behalf, that are necessary or appropriate to effectuate, implement, or consummate

the transactions contemplated by the Plan, this Confirmation Order, and the agreements created

or contemplated by the Plan, without payment of any recording tax, stamp tax, transfer tax, or

similar tax imposed by state or local law.

71.    Structured Securities.  As provided in the Structured Securities Procedures

Order, the Debtors are determining the Allowed amount of each Claim based on a Structured

Security in accordance with the Structured Securities Valuation Methodologies.  In accordance

with the Structured Securities Procedures Order, the Debtors sent notices of a proposed Allowed

Claim amount ("Structured Securities Notices") to each holder of a Claim based on a Structured

Security.  To the extent that holders of such Claims agreed with the proposed amount or did not

respond by the established deadline (as such may have been extended by the Debtors), such

Claim will be Allowed in the amount set forth on the Structured Securities Notice, subject to the

Debtors' right to object to Claims based on Structured Securities on the grounds that such claims

do not include a blocking number or include an invalid blocking number, are duplicative of other

claims, have been amended and superseded, or otherwise do not comply with the provisions of

the Bar Date Order is fully preserved; *provided* that, the Allowed amount of such Claims may be

increased to the extent that in connection with the resolution of a disputed Structured Securities

Notice, the Debtors determine that the value of a structured security is greater than the amount

previously proposed by the Debtors. As indicated in paragraph 44 hereof, holders of

Convenience Claims or Convenience Guarantee Claims shall not be entitled to any increase in

the Allowed amount of their Claims.

72.    <u>Final Fee Applications</u>.  Pursuant to Section 2.2 of the Plan, all entities

seeking an award by the Court of compensation for services rendered or reimbursement of

expenses incurred through and including the Effective Date under sections 327, 328, 330, 331,

503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their

respective final applications for allowance of compensation for services rendered and

reimbursement of expenses incurred by the date that is one hundred twenty (120) days after the

Effective Date, and (ii) shall be paid in full in such amounts as are Allowed by the Court (A) on

the date on which the order relating to any such application is entered, or as soon thereafter as

practicable, or (B) upon such other terms as may be mutually agreed upon between the claimant

and the Debtors.

73.    The Debtors are authorized to pay, in the ordinary course of business and

without the need for Court approval, the reasonable fees and expenses, incurred after the

Effective Date, of the professional persons employed by the Debtors and the Creditors'
Committee.

74.   <u>Fees and Expenses of Indenture Trustees and Creditors' Committee
Members</u>.  The reasonable fees and expenses, including attorneys' fees, of (i) the indenture
trustees for the Senior Notes and the Subordinated Notes issued by LBHI and the (ii) individual
members of the Creditors' Committee shall be paid in accordance with Section 6.7 of the Plan
upon application to, and subject to approval of, the Bankruptcy Court, after reasonable notice to
and with opportunity to object for the United States Trustee and all parties in interest; *provided,*
that nothing in the Plan or this Confirmation Order shall affect any party in interest's right to
object to or defend any such application.  All objections to any such application are expressly
reserved, including, without limitation, any objections regarding the appropriate legal standard
for such applications, and any objections that payment of such fees is unauthorized under the
Bankruptcy Code and Bankruptcy Rules.

75.   <u>Definition of Equity Interests</u>.  The definition of Equity Interest included
in the Plan is without prejudice to the Debtors' rights to object to, or seek to subordinate, any
Claim, and any Creditor's rights to defend against such action.

76.   <u>Retention of Litigation Claims</u>.  Except as expressly provided in the Plan,
nothing contained in the Plan or herein shall be deemed to be a waiver or the relinquishment of
any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf
of their respective estates under any provision of the Bankruptcy Code or any applicable
nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation,
(a) any and all Claims against any person or entity, to the extent such person or entity asserts a
crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the
Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under

any tax sharing agreement among the Debtors and their Affiliates, (c) any and all Claims for

reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the

disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff

or other legal or equitable defense and remedies.  The Debtors shall have, retain, reserve, and

may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the

Chapter 11 Cases had not been commenced.

     77.   <u>Retention of Jurisdiction</u>. This Court may properly and, upon the Effective

Date shall, consistent with Article XIV of the Plan, retain exclusive jurisdiction over all matters

arising under or related to, the Chapter 11 Cases, including, without limitation, the matters set

forth in Article XIV of the Plan.

     78.   <u>Debtors' Rights of Subrogation</u>.

     a.   Except as otherwise agreed by the Debtors, to the extent

that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor,

including on account of any Distributions received by holders of Allowed Guarantee Claims that

are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall be

deemed to have consented to the subrogation of its right against any third-party, including,

without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the

Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and

power as subrogee of the Creditor against any such third-party, including, without limitation, a

Primary Obligor, to the fullest extent permitted by applicable law.

     b.   Except as otherwise agreed by the Debtors, the Debtors'

rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment

or any similar right, including, without limitation, any right to setoff with respect to any of the

foregoing, against any entity, including, without limitation, a Primary Obligor, on account of

Distribution made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

79.     The Debtors' rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, on account of Distributions made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

80.     <u>Trading Restrictions</u>.  The restrictions imposed by the *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto* [ECF No. 1386], as the same may be amended from time to time, shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

81.     <u>Equity Interests in LBHI</u>.  On the Effective Date, the LBHI Stock shall be canceled and one new share of LBHI common stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements; *provided, however*, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.

82.     <u>Equity Interests in Subsidiary Debtors</u>.  On the Effective Date, the Equity Interests in each of the Subsidiary Debtors shall be unaffected by the Plan, in which case the Debtor holding such Equity Interests shall continue to hold such Equity Interests.

83.     <u>Nonoccurrence of Effective Date</u>.  In the event that the Effective Date does not occur, then (a) the Plan, (b) the assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, (c) any document or agreement executed pursuant to the

Plan, and (d) any actions, releases, waivers, or injunctions authorized by this Confirmation Order

or any order in aid of consummation of the Plan shall be deemed null and void; *provided* that this

paragraph shall not have any affect on any provisions of the Bilateral Settlement agreements, if

any, that survive the termination of such agreements.  In such event, nothing contained in this

Confirmation Order, any order relating to consummation of the Plan, or the Plan, and no acts

taken in preparation for consummation of the Plan shall be (i) deemed to constitute a waiver or

release of any Claims or Equity Interests by or against the Debtors or any other person or

entities, to prejudice in any manner the rights of the Debtors or any person or entity in any

further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort

by the Debtors or any other persons or entities as to any issue, or (ii) construed as a finding of

fact or conclusion of law in respect thereof.

       84.  <u>Notice of Entry of Confirmation Order</u>.  On or before the thirtieth (30th)

Business Day following the date of entry of this Confirmation Order, the Debtors shall serve

notice of entry of this Confirmation Order (which, in the Debtors' discretion, may be combined

with the Notice of the Effective Date) pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and

3020(c) on all Creditors and interest holders, the United States Trustee, and other parties in

interest, by causing notice of entry of the Confirmation Order (the "<u>Notice of Confirmation</u>"), to

be delivered to such parties by first-class mail, postage prepaid.  The notice described herein is

adequate under the particular circumstances, and no other or further notice is necessary.  The

Debtors also shall cause the Notice of Confirmation to be published as promptly as practicable

after the entry of this Confirmation Order once in each of *the Financial Times*, *The Wall Street

Journal* (Global Edition – North America, Europe, and Asia), and *The New York Times*

(National).

85.   <u>Notice of Effective Date</u>.  Within five (5) Business Days following the occurrence of the Effective Date, the Plan Administrator shall file the notice of the occurrence of the Effective Date and shall serve a copy of same on the Master Service List, as defined in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* [ECF No. 9635].

86.   <u>No Amendments to Proofs of Claim</u>.  After the Effective Date, other than a proof of Claim relating to an executory contract or unexpired lease that is rejected pursuant to the Plan, a proof of Claim relating to a prepetition Claim may not be filed or amended without the authority of the Court.

87.   <u>Barclays Sale Order</u>.  Nothing contained in the Plan, the Disclosure Statement or the Confirmation Order constitutes or shall be construed as any modification or amendment to the Barclays Sale Order and the rights and defenses of each of the Debtors, the SIPA Trustee (on behalf of LBI), Barclays Bank PLC and Barclays Capital Inc., with respect to any litigation, adversary proceeding, contested matter, claims adjudication, appeal or other dispute against the other are fully preserved, including, without limitation, any rights, defenses, counterclaims and/or cross-claims asserted in connection with or related to the Sale Order.

88.   <u>Payment of Statutory Fees</u>.  On the Effective Date and thereafter, the Plan Administrator and any Liquidating Trustee thereafter appointed, shall pay all fees incurred pursuant to Section 1930 of title 28, United States Code, together with interest, if any, pursuant to Section 3717 of title 31, United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under Chapter 7 of the Bankruptcy Code or a Final Order dismissing such Debtor's case is entered.

89.     <u>Effectiveness of Plan Provisions</u>.  Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Code in accordance with section 15.13, is valid and enforceable pursuant to its terms.

90.     <u>Immediate Effectiveness</u>.  Any stay of this Order provided by any Bankruptcy Rule, including Bankruptcy Rule 3020(e) is hereby waived, and the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

91.     <u>Conflicts Between Order and Plan</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and provisions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of the Court.


Dated: New York, New York
           December 6, 2011


_s/ James M. Peck_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

Exhibit A


Modified Third Amended Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                  :
In re                               :        **Chapter 11 Case No.**
                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                    :
                **Debtors.**              :        **(Jointly Administered)**
                                    :
-------------------------------------------------------------------x

## MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF
## LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

Dated: New York, New York
        December 5, 2011

# TABLE OF CONTENTS

**Page**

ARTICLE I        DEFINITIONS AND CONSTRUCTION OF TERMS ...................... 1

ARTICLE II       TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
                 AND PRIORITY TAX CLAIMS ...................................... 17

2.1      Administrative Expense Claims ................................ 17

2.2      Professional Compensation and Reimbursement Claims ...................... 17

2.3      Priority Tax Claims .......................................... 18

ARTICLE III      CLASSIFICATION OF CLAIMS AND EQUITY
                 INTERESTS ...................................... 18

3.1      LBHI .................................................... 18

3.2      LCPI .................................................... 19

3.3      LBCS .................................................... 19

3.4      LBSF .................................................... 19

3.5      LOTC .................................................... 20

3.6      LBCC .................................................... 20

3.7      LBDP .................................................... 20

3.8      LBFP .................................................... 21

3.9      LB 745 .................................................. 21

3.10     PAMI Statler ............................................. 21

3.11     CES ..................................................... 21

3.12     CES V ................................................... 22

3.13     CES IX .................................................. 22

3.14     East Dover .............................................. 22

3.15     LS Finance .............................................. 22

3.16     LUXCO .................................................. 23

3.17     BNC ..................................................... 23

3.18     LB Rose Ranch .......................................... 23

3.19     SASCO .................................................. 23

3.20     LB 2080 ................................................. 24

3.21     Merit ................................................... 24

3.22     Preferred Somerset ...................................... 24

# TABLE OF CONTENTS
## (continued)

|  |  | Page |
|---|---|---|
| 3.23 | Somerset | 24 |
| **ARTICLE IV** | **TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LBHI** | 25 |
| 4.1 | LBHI Class 1 – Priority Non-Tax Claims against LBHI | 25 |
| 4.2 | LBHI Class 2 – Secured Claims against LBHI | 25 |
| 4.3 | LBHI Class 3 – Senior Unsecured Claims against LBHI | 25 |
| 4.4 | LBHI Class 4A – Senior Affiliate Claims against LBHI | 25 |
| 4.5 | LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI | 26 |
| 4.6 | LBHI Class 5 – Senior Third-Party Guarantee Claims against LBHI | 26 |
| 4.7 | LBHI Class 6A – Convenience Claims against LBHI | 26 |
| 4.8 | LBHI Class 6B – Convenience Guarantee Claims against LBHI | 26 |
| 4.9 | LBHI Class 7 – General Unsecured Claims against LBHI | 27 |
| 4.10 | LBHI Class 8 – Affiliate Claims against LBHI | 27 |
| 4.11 | LBHI Class 9A – Third-Party Guarantee Claims against LBHI | 27 |
| 4.12 | LBHI Class 9B – Third-Party Guarantee Claims of the Racers Trusts against LBHI | 27 |
| 4.13 | LBHI Class 10A – Subordinated Class 10A Claims against LBHI | 27 |
| 4.14 | LBHI Class 10B – Subordinated Class 10B Claims against LBHI | 28 |
| 4.15 | LBHI Class 10C – Subordinated Class 10C Claims against LBHI | 28 |
| 4.16 | LBHI Class 11 – Section 510(b) Claims against LBHI | 28 |
| 4.17 | LBHI Class 12 – Equity Interests in LBHI | 28 |
| **ARTICLE V** | **TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN SUBSIDIARY DEBTORS** | 29 |
| 5.1 | LCPI Class 1 – Priority Non-Tax Claims against LCPI | 29 |
| 5.2 | LCPI Class 2 – Secured Claims against LCPI | 29 |
| 5.3 | LCPI Class 3 – Convenience Claims against LCPI | 30 |
| 5.4 | LCPI Class 4A – General Unsecured Claims other than those of Designated Entities against LCPI | 30 |
| 5.5 | LCPI Class 4B – General Unsecured Claims of Designated Entities against LCPI | 30 |
| 5.6 | LCPI Class 5A – Affiliate Claims of LBHI against LCPI | 30 |

US_ACTIVE:¥43789737¥13¥58399.0003

# TABLE OF CONTENTS
## (continued)

5.7    LCPI Class 5B – Affiliate Claims of Participating Subsidiary
Debtors against LCPI ................................................................. 31

5.8    LCPI Class 5C – Affiliate Claims other than those of Participating
Debtors against LCPI ................................................................. 31

5.9    LCPI Class 6 – Equity Interests in LCPI ................................. 31

5.10   LBCS Class 1 – Priority Non-Tax Claims against LBCS ...................... 31

5.11   LBCS Class 2 – Secured Claims against LBCS ........................................ 32

5.12   LBCS Class 3 – Convenience Claims against LBCS ............................. 32

5.13   LBCS Class 4 – General Unsecured Claims against LBCS .................. 32

5.14   LBCS Class 5A – Affiliate Claims of LBHI against LBCS .................. 32

5.15   LBCS Class 5B – Affiliate Claims of Participating Subsidiary
Debtors against LBCS ................................................................. 33

5.16   LBCS Class 5C – Affiliate Claims other than those of Participating
Debtors against LBCS ................................................................. 33

5.17   LBCS Class 6 – Equity Interests in LBCS ................................. 33

5.18   LBSF Class 1 – Priority Non-Tax Claims against LBSF ...................... 33

5.19   LBSF Class 2 – Secured Claims against LBSF ........................................ 34

5.20   LBSF Class 3 – Convenience Claims against LBSF ............................. 34

5.21   LBSF Class 4A – General Unsecured Claims other than those of
the Racers Trusts against LBSF ................................................................. 34

5.22   LBSF Class 4B – General Unsecured Claims of the Racers Trusts
against LBSF ................................................................. 34

5.23   LBSF Class 5A – Affiliate Claims of LBHI against LBSF .................... 35

5.24   LBSF Class 5B – Affiliate Claims of Participating Subsidiary
Debtors against LBSF ................................................................. 35

5.25   LBSF Class 5C – Affiliate Claims other than those of Participating
Debtors against LBSF ................................................................. 35

5.26   LBSF Class 6 – Equity Interests in LBSF ................................. 35

5.27   LOTC Class 1 – Priority Non-Tax Claims against LOTC ...................... 36

5.28   LOTC Class 2 – Secured Claims against LOTC ........................................ 36

5.29   LOTC Class 3 – Convenience Claims against LOTC ............................. 36

5.30   LOTC Class 4 – General Unsecured Claims against LOTC .................. 36

# TABLE OF CONTENTS
## (continued)

Page

5.31    LOTC Class 5A – Affiliate Claims of LBHI against LOTC ................... 37

5.32    LOTC Class 5B – Affiliate Claims of Participating Subsidiary
        Debtors against LOTC ....................................................................... 37

5.33    LOTC Class 5C – Affiliate Claims other than those of Participating
        Debtors against LOTC ....................................................................... 37

5.34    LOTC Class 6 – Equity Interests in LOTC......................................... 37

5.35    LBCC Class 1 – Priority Non-Tax Claims against LBCC..................... 38

5.36    LBCC Class 2 – Secured Claims against LBCC .................................. 38

5.37    LBCC Class 3 – Convenience Claims against LBCC ........................... 38

5.38    LBCC Class 4 – General Unsecured Claims against LBCC.................. 38

5.39    LBCC Class 5A – Affiliate Claims of LBHI against LBCC ................. 39

5.40    LBCC Class 5B – Affiliate Claims of Participating Subsidiary
        Debtors against LBCC ....................................................................... 39

5.41    LBCC Class 5C – Affiliate Claims other than those of Participating
        Debtors against LBCC ....................................................................... 39

5.42    LBCC Class 6 – Equity Interests in LBCC.......................................... 39

5.43    LBDP Class 1 – Priority Non-Tax Claims against LBDP ..................... 40

5.44    LBDP Class 2 – Secured Claims against LBDP.................................... 40

5.45    LBDP Class 3 – General Unsecured Claims against LBDP.................. 40

5.46    LBDP Class 4A – Affiliate Claims of LBHI against LBDP.................. 40

5.47    LBDP Class 4B – Affiliate Claims other than those of LBHI
        against LBDP. ................................................................................... 41

5.48    LBDP Class 5 – Equity Interests in LBDP .......................................... 41

5.49    LBFP Class 1 – Priority Non-Tax Claims against LBFP ...................... 41

5.50    LBFP Class 2 – Secured Claims against LBFP .................................... 41

5.51    LBFP Class 3 – General Unsecured Claims against LBFP ................... 42

5.52    LBFP Class 4A – Affiliate Claims of LBHI against LBFP ................... 42

5.53    LBFP Class 4B – Affiliate Claims other than those of LBHI
        against LBFP..................................................................................... 42

5.54    LBFP Class 5 – Equity Interests in LBFP ........................................... 42

5.55    LB 745 Class 1 – Priority Non-Tax Claims against LB 745 ................. 42

5.56    LB 745 Class 2 – Secured Claims against LB 745 ............................... 43

# TABLE OF CONTENTS
## (continued)

Page

5.57    LB 745 Class 3 – General Unsecured Claims against LB 745 ............... 43

5.58    LB 745 Class 4A – Affiliate Claims of LBHI against LB 745 ............... 43

5.59    LB 745 Class 4B – Affiliate Claims other than those of LBHI
against LB 745 ...................................................................... 43

5.60    LB 745 Class 5 – Equity Interests in LB 745 ......................... 44

5.61    PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI
Statler ................................................................................ 44

5.62    PAMI Statler Class 2 – Secured Claims against PAMI Statler ............. 44

5.63    PAMI Statler Class 3 – General Unsecured Claims against PAMI
Statler ................................................................................ 45

5.64    PAMI Statler Class 4A – Affiliate Claims of LBHI against PAMI
Statler ................................................................................ 45

5.65    PAMI Statler Class 4B – Affiliate Claims other than those of LBHI
against PAMI Statler .............................................................. 45

5.66    PAMI Statler Class 5 – Equity Interests in PAMI Statler ...................... 45

5.67    CES Class 1 – Priority Non-Tax Claims against CES ........................... 45

5.68    CES Class 2 – Secured Claims against CES ................................... 46

5.69    CES Class 3 – General Unsecured Claims against CES ........................ 46

5.70    CES Class 4A – Affiliate Claims of LBHI against CES ...................... 46

5.71    CES Class 4B – Affiliate Claims other than those of LBHI against
CES .................................................................................... 46

5.72    CES Class 5 – Equity Interests in CES ..................................... 47

5.73    CES V Class 1 – Priority Non-Tax Claims against CES V .................... 47

5.74    CES V Class 2 – Secured Claims against CES V .............................. 47

5.75    CES V Class 3 – General Unsecured Claims against CES V ................. 47

5.76    CES V Class 4A – Affiliate Claims of LBHI against CES V ................. 48

5.77    CES V Class 4B – Affiliate Claims other than those of LBHI
against CES V ....................................................................... 48

5.78    CES V Class 5 – Equity Interests in CES V ................................ 48

5.79    CES IX Class 1 – Priority Non-Tax Claims against CES IX ................. 48

5.80    CES IX Class 2 – Secured Claims against CES IX ........................... 49

5.81    CES IX Class 3 – General Unsecured Claims against CES IX .............. 49

# TABLE OF CONTENTS
## (continued)

Page

5.82    CES IX Class 4A – Affiliate Claims of LBHI against CES IX ............... 49

5.83    CES IX Class 4B – Affiliate Claims other than those of LBHI
against CES IX ................................................................................... 49

5.84    CES IX Class 5 – Equity Interests in CES IX ......................................... 49

5.85    East Dover Class 1 – Priority Non-Tax Claims against East Dover ........ 50

5.86    East Dover Class 2 – Secured Claims against East Dover ...................... 50

5.87    East Dover Class 3 – General Unsecured Claims against East
Dover ................................................................................................ 50

5.88    East Dover Class 4A – Affiliate Claims of LBHI against East
Dover ................................................................................................ 51

5.89    East Dover Class 4B – Affiliate Claims other than those of LBHI
against East Dover ............................................................................. 51

5.90    East Dover Class 5 – Equity Interests in East Dover ............................. 51

5.91    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance ....... 51

5.92    LS Finance Class 2 – Secured Claims against LS Finance ..................... 52

5.93    LS Finance Class 3 – General Unsecured Claims against LS
Finance .............................................................................................. 52

5.94    LS Finance Class 4A – Affiliate Claims of LBHI against LS
Finance .............................................................................................. 52

5.95    LS Finance Class 4B – Affiliate Claims other than those of LBHI
against LS Finance ............................................................................. 52

5.96    LS Finance Class 5 – Equity Interests in LS Finance ............................ 53

5.97    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO ............... 53

5.98    LUXCO Class 2 – Secured Claims against LUXCO ............................. 53

5.99    LUXCO Class 3 – General Unsecured Claims against LUXCO ............. 53

5.100   LUXCO Class 4A – Affiliate Claims of LBHI against LUXCO ............. 54

5.101   LUXCO Class 4B – Affiliate Claims other than those of LBHI
against LUXCO ................................................................................. 54

5.102   LUXCO Class 5 – Equity Interests in LUXCO ..................................... 54

5.103   BNC Class 1 – Priority Non-Tax Claims against BNC ......................... 54

5.104   BNC Class 2 – Secured Claims against BNC ........................................ 55

5.105   BNC Class 3 – General Unsecured Claims against BNC ....................... 55

# TABLE OF CONTENTS
## (continued)

**Page**

5.106  BNC Class 4A – Affiliate Claims of LBHI against BNC ....................... 55

5.107  BNC Class 4B – Affiliate Claims other than those of LBHI against BNC ..................................................................................................... 55

5.108  BNC Class 5 – Equity Interests in BNC ......................................... 55

5.109  LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose Ranch ............................................................................................ 56

5.110  LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch ........ 56

5.111  LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose Ranch ............................................................................................ 56

5.112  LB Rose Ranch 4A – Affiliate Claims of LBHI against LB Rose Ranch .............................................................................................. 57

5.113  LB Rose Ranch Class 4B – Affiliate Claims other than those of LBHI against LB Rose Ranch .................................................... 57

5.114  LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch ............... 57

5.115  SASCO Class 1 – Priority Non-Tax Claims against SASCO ................. 57

5.116  SASCO Class 2 – Secured Claims against SASCO ............................... 58

5.117  SASCO Class 3 – General Unsecured Claims against SASCO .............. 58

5.118  SASCO Class 4A – Affiliate Claims of LBHI against SASCO ............. 58

5.119  SASCO Class 4B – Affiliate Claims other than those of LBHI against SASCO .............................................................................. 58

5.120  SASCO Class 5 – Equity Interests in SASCO ....................................... 58

5.121  LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080 ............... 59

5.122  LB 2080 Class 2 – Secured Claims against LB 2080 ............................. 59

5.123  LB 2080 Class 3 – General Unsecured Claims against LB 2080 ........... 59

5.124  LB 2080 Class 4A – Affiliate Claims of LBHI against LB 2080 ........... 59

5.125  LB 2080 Class 4B – Affiliate Claims other than those of LBHI against LB 2080 .............................................................................. 60

5.126  LB 2080 Class 5 – Equity Interests in LB 2080 .................................... 60

5.127  Merit Class 1 – Priority Non-Tax Claims against Merit ........................ 60

5.128  Merit Class 2 – Secured Claims against Merit ...................................... 60

5.129  Merit Class 3 – General Unsecured Claims against Merit ..................... 61

5.130  Merit Class 4A – Affiliate Claims of LBHI against Merit .................... 61

# TABLE OF CONTENTS
## (continued)

5.131  Merit Class 4B – Affiliate Claims other than those of LBHI against
Merit ................................................................................................. 61

5.132  Merit Class 5 – Equity Interests in Merit ................................................. 61

5.133  Preferred Somerset Class 1 – Priority Non-Tax Claims against
Preferred Somerset .............................................................................. 62

5.134  Preferred Somerset Class 2 – Secured Claims against Preferred
Somerset .............................................................................................. 62

5.135  Preferred Somerset Class 3 – General Unsecured Claims against
Preferred Somerset .............................................................................. 62

5.136  Preferred Somerset Class 4A – Affiliate Claims of LBHI against
Preferred Somerset .............................................................................. 62

5.137  Preferred Somerset Class 4B – Affiliate Claims other than those of
LBHI against Preferred Somerset ......................................................... 63

5.138  Preferred Somerset Class 5 – Equity Interests in Preferred
Somerset .............................................................................................. 63

5.139  Somerset Class 1 – Priority Non-Tax Claims against Somerset ............... 63

5.140  Somerset Class 2 – Secured Claims against Somerset ........................... 63

5.141  Somerset Class 3 – General Unsecured Claims against Somerset ........... 64

5.142  Somerset Class 4A – Affiliate Claims of LBHI against Somerset .......... 64

5.143  Somerset Class 4B – Affiliate Claims other than those of LBHI
against Somerset .................................................................................. 64

5.144  Somerset Class 5 – Equity Interests in Somerset ................................... 64

ARTICLE VI        IMPLEMENTATION OF THE PLAN ............................................ 65

6.1    Plan Administrator ...................................................................................... 65

6.2    LAMCO ...................................................................................................... 66

6.3    Debtor Allocation Agreement ...................................................................... 66

6.4    Redistribution of Subordinated Claims Recoveries ................................. 67

6.5    Plan Settlement .......................................................................................... 67

6.6    Closing of Chapter 11 Case ....................................................................... 70

6.7    Indenture Trustee and Creditors' Committee Members Fees ................... 70

ARTICLE VII       CORPORATE GOVERNANCE ..................................................... 70

7.1    Corporate Form .......................................................................................... 70

# TABLE OF CONTENTS
## (continued)

                                                                        **Page**

7.2    LBHI Board of Directors and Officers ..................................................... 70

7.3    Subsidiary Debtor Post-Effective Date Management .............................. 71

7.4    Plan Trust. ................................................................................................ 72

7.5    Corporate Existence .................................................................................. 73

7.6    Wind-Down................................................................................................ 73

7.7    Certificate of Incorporation and By-Laws ............................................... 73

7.8    Stock Trading Restrictions........................................................................ 73

ARTICLE VIII    PROVISIONS REGARDING VOTING AND
                DISTRIBUTIONS UNDER THE PLAN .......................... 74

8.1    Voting of Claims........................................................................................ 74

8.2    Nonconsensual Confirmation.................................................................... 74

8.3    Distributions of Available Cash ................................................................ 74

8.4    Disputed Claims Holdback. ...................................................................... 74

8.5    Minimum Distribution and Manner of Payment....................................... 75

8.6    Distributions Free and Clear ..................................................................... 76

8.7    Delivery of Distributions and Undeliverable Distributions ..................... 76

8.8    Withholding and Reporting Requirements ............................................... 76

8.9    Time Bar to Cash Payment Rights............................................................ 77

8.10   Setoffs and Recoupment ........................................................................... 77

8.11   Claims Register.......................................................................................... 77

8.12   Allocation of Distributions ....................................................................... 77

8.13   Maximum Distribution............................................................................... 77

8.14   Rights of Reimbursement .......................................................................... 79

8.15   Distributions to Non-Controlled Affiliates .............................................. 80

ARTICLE IX    PROCEDURES FOR TREATING DISPUTED CLAIMS .............. 80

9.1    Objections .................................................................................................. 80

9.2    No Distributions Pending Allowance ....................................................... 80

9.3    Estimation of Claims................................................................................. 80

9.4    Resolution of Disputed Claims ................................................................. 81

# TABLE OF CONTENTS
## (continued)

Page

ARTICLE X        LIQUIDATING TRUST .................................................... 81

10.1    Execution of Liquidating Trust Agreement ............................. 81

10.2    Purpose of the Liquidating Trust ........................................... 81

10.3    Liquidating Trust Assets ...................................................... 81

10.4    Administration of the Liquidating Trust .................................. 81

10.5    Liquidating Trustee's Tax Power for Debtors ......................... 82

10.6    Cash Investments ................................................................ 82

10.7    Distribution of Liquidating Trust Interests ............................. 82

10.8    Federal Income Tax Treatment of Liquidating Trust ............... 82

10.9    Tax Reporting ..................................................................... 82

10.10   Dissolution ......................................................................... 84

ARTICLE XI       TREATMENT OF EXECUTORY CONTRACTS AND
                 UNEXPIRED LEASES ......................................... 84

11.1    Executory Contracts and Unexpired Leases ........................... 84

11.2    Approval of Assumption and Rejection of Executory Contracts and
        Unexpired Leases ................................................................. 85

11.3    Cure of Defaults .................................................................. 85

11.4    Bar Date for Filing Proofs of Claim Relating to Executory
        Contracts and Unexpired Leases Rejected Pursuant to the Plan.............. 85

11.5    Insurance Policies ................................................................ 85

11.6    Indemnification Obligations .................................................. 86

ARTICLE XII      EFFECTIVENESS OF THE PLAN ................................. 86

12.1    Conditions Precedent to the Confirmation of the Plan ............. 86

12.2    Conditions Precedent to the Effective Date of the Plan............ 86

12.3    Waiver of Conditions ............................................................ 86

ARTICLE XIII     EFFECTS OF CONFIRMATION .................................. 87

13.1    Vesting of Assets ................................................................. 87

13.2    Binding Effect ..................................................................... 87

13.3    Release and Exculpation ....................................................... 87

13.4    Discharge ............................................................................ 88

13.5    Injunction ............................................................................ 88

# TABLE OF CONTENTS
## (continued)

|  |  | Page |
|---|---|---|
| 13.6 | United States Government | 89 |
| 13.7 | Terms of Injunctions or Stays | 89 |
| 13.8 | Retention of Litigation Claims and Reservation of Rights | 89 |
| 13.9 | Barclays Sale Order. | 90 |
| 13.10 | No Waiver of Rights and Defenses. | 90 |
| ARTICLE XIV | RETENTION OF JURISDICTION | 90 |
| 14.1 | Retention of Jurisdiction | 90 |
| ARTICLE XV | MISCELLANEOUS PROVISIONS | 92 |
| 15.1 | Post-Effective Date Role of Creditors' Committee and Fee Committee | 92 |
| 15.2 | Issuance of New Securities | 92 |
| 15.3 | Exemption from Securities Laws | 93 |
| 15.4 | Exemption from Transfer Taxes | 93 |
| 15.5 | Plan Supplement | 93 |
| 15.6 | Post-Effective Date Reporting. | 93 |
| 15.7 | Payment of Statutory Fees. | 95 |
| 15.8 | Amendment or Modification of Plan | 95 |
| 15.9 | Withdrawal or Revocation of the Plan | 95 |
| 15.10 | Courts of Competent Jurisdiction | 95 |
| 15.11 | Transactions on Business Days | 95 |
| 15.12 | Notices | 96 |
| 15.13 | Severability | 96 |
| 15.14 | Governing Law | 96 |
| 15.15 | Headings | 96 |
| 15.16 | Exhibits | 97 |
| 15.17 | Successors and Assigns | 97 |

**Schedules**

Plan Adjustment Percentages.................................................................Schedule 1

Debtors' Claims Schedule...................................................................Schedule 2

Bankhaus Settlement Agreement ........................................................Schedule 3

PSA Creditors .....................................................................................Schedule 4

Hong Kong Settlement Agreement .....................................................Schedule 5

LBT Settlement Agreement ................................................................Schedule 6

Singapore Settlement Agreement .......................................................Schedule 7

# ARTICLE I
## Definitions and Construction of Terms

Definitions.   As used in the Plan, the following terms shall have the respective meanings specified below:

1.1   Administrative Expense Claim means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code.

1.2   Affiliate shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code, excluding a Designated Entity.

1.3   Affiliate Claim means (a) in the case of LBHI, any Claim asserted by an Affiliate of LBHI, other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Affiliate Claim or a Senior Affiliate Guarantee Claim, or (b) in the case of a Subsidiary Debtor, any Claim asserted by an Affiliate of that Subsidiary Debtor, other than an Administrative Expense Claim, a Priority Non-Tax Claim or a Secured Claim.

1.4   Allowed means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court, including, without limitation, the Derivatives Procedures Order, or under Section 9.4 of the Plan, or (e) any Claim that, if Disputed, has been Allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.   Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.   For purposes of a Foreign Proceeding, an Allowed Claim includes a Claim that has been accepted or allowed in a Foreign Proceeding by settlement with a Foreign Administrator or Final Order of a court of competent jurisdiction.

1.5   Available Cash means (a) all Cash of a Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b) the amount of Cash (i) necessary to pay holders of Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims and Convenience Guarantee Claims against such Debtor in accordance with the Plan, and (ii) estimated and

reserved by such Debtor to (A) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date, (B) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code and (C) fund and maintain any postpetition reserve requirements in connection with any agreements or otherwise.  Available Cash shall include the applicable portions of (i) excess amounts retained for Disputed Claims that become available in accordance with <u>Section 8.4</u> of the Plan, (ii) amounts represented by undeliverable Distributions in accordance with <u>Section 8.7</u>, or (iii) amounts attributable to voided checks in accordance with <u>Section 8.9</u> of the Plan.

1.6     <u>Avoidance Actions</u> means any actions commenced or that may be commenced before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.7     <u>Ballot</u> means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan.

1.8     <u>Bankhaus Settlement Agreement</u> means that certain Amended and Restated Settlement Agreement, dated March 1, 2011, among the Debtors and certain Debtor-Controlled Entities and the LBB Administrator, as amended by that certain Amendment #1, dated March 18, 2011, to the Amended and Restated Settlement Agreement, which are annexed hereto as <u>Schedule 3</u>.

1.9     <u>Bankruptcy Code</u> means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.10    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.11    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.12    <u>Barclays Sale Order</u> means the *Order Under 11 U.S.C. § §  105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases*, entered by the Bankruptcy Court on September 20, 2008 in the Chapter 11 Cases [Docket No. 258] and the concurrent order entered in the LBI Proceeding on September 19, 2008 [Case No. 08-1420; Docket No. 3].

1.13    <u>Bar Date Order</u> means the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice thereof and Approving the Proof of Claim Form* approved and entered by the Bankruptcy Court on July 2, 2009 [Docket No. 4271], as the same may be amended from time to time.

1.14    <u>BNC</u> means BNC Mortgage LLC.

1.15    <u>Business Day</u> means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.16    <u>Cash</u> means legal tender of the United States of America.

1.17    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.

1.18    <u>CES</u> means CES Aviation LLC.

1.19    <u>CES V</u> means CES Aviation V LLC.

1.20    <u>CES IX</u> means CES Aviation IX LLC.

1.21    <u>Chapter 11 Cases</u> means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court, styled *In re Lehman Brothers Holdings Inc.*, *et al.*, Chapter 11 Case No. 08-13555 (JMP).

1.22    <u>Claim</u> shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

1.23    <u>Class</u> means a category of holders of Claims or Equity Interests as set forth in <u>Article III</u> of the Plan.

1.24    <u>Class 10A Subordinated Notes</u> means, collectively, (a) the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2035 issued pursuant to the Eighth Supplemental Indenture, dated as of August 19, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (b) the Fixed/Floating Rate Subordinated Notes due 2016 Series 5065, issued pursuant to a final term sheet dated as of September 26, 2006 under the Euro Medium-Term Note Program; (c) the Floating Rate Subordinated Notes due 2037 Series EB17, issued pursuant to a final term sheet dated as of January 23, 2007 under the Euro Medium-Term Note Program; (d) the Fixed/Floating Rate Subordinated Notes due 2019 Series 6222, issued pursuant to the final term sheet dated as of February 14, 2007 under the Euro Medium-Term Note Program; and (e) the Floating Rate Subordinated Notes due 2037 Series EB 18, issued pursuant to a final term sheet, dated as of May 30, 2007, under the Euro Medium-Term Note Program.

1.25    <u>Class 10B Subordinated Notes</u> means, collectively, (a) the 6.375% Subordinated Deferrable Interest Debentures due 2052, issued pursuant to the Fourth Supplemental Indenture, dated as of March 17, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (b) the 6.375% Subordinated Deferrable Interest Debentures due October 2052, issued pursuant to the Fifth Supplemental Indenture, dated as of October 31, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (c) the 6.00% Subordinated Deferrable Interest Debentures due 2053, issued

pursuant to the Sixth Supplemental Indenture, dated as of April 22, 2004, between LBHI and JPMorgan Chase Bank, as trustee; (d) the 6.24% Subordinated Deferrable Interest Debentures due 2054, issued pursuant to the Seventh Supplemental Indenture, dated as of January 18, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (e) the 5.75% Subordinated Notes due 2017, issued pursuant to the Ninth Supplemental Indenture, dated as of October 24, 2006, between LBHI and JPMorgan Chase Bank, as trustee; (f) the Fixed and Floating Rate Subordinated Notes Due 2032, issued pursuant to the Tenth Supplemental Indenture, dated as of May 1, 2007, between LBHI and JPMorgan Chase Bank, as trustee; (g) the 6.50% Subordinated Notes Due 2017, issued pursuant to the Thirteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (h) the 6.875% Subordinated Notes Due 2037, issued pursuant to the Fourteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (i) the 6.75% Subordinated Notes Due 2017, issued pursuant to the Fifteenth Supplemental Indenture, dated as of December 21, 2007, between LBHI and The Bank of New York, as trustee; and (j) the 7.50% Subordinated Notes Due 2038, issued pursuant to the Sixteenth Supplemental Indenture, dated as of May 9, 2008, between LBHI and The Bank of New York, as trustee.

1.26    Class 10C Subordinated Notes means, collectively, (a) the 5.707% Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Eleventh Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee; and (b) the Floating Rate Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Twelfth Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee.

1.27    Closing Date means the date upon which all of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan.

1.28    Collateral means any property or interest in Property of the Estates of the Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

1.29    Commencement Date means (a) September 15, 2008 with respect to LBHI, (b) September 16, 2008 with respect to LB 745, (c) September 23, 2008 with respect to PAMI Statler, (d) October 3, 2008 with respect to LBCS, LBSF and LOTC, (d) October 5, 2008 with respect to LBDP, LCPI, LBCC, LBFP, CES, CES V, CES IX, East Dover and LS Finance, (e) January 7, 2009 with respect to LUXCO, (f) January 9, 2009 with respect to BNC, (g) February 9, 2009 with respect to SASCO and LB Rose Ranch, (h) April 23, 2009 with respect to LB 2080, (i) December 14, 2009 with respect to Merit, and (j) December 22, 2009 with respect to Somerset and Preferred Somerset.

1.30    Confirmation Date means the date upon which the Bankruptcy Court enters a Confirmation Order on the docket of the Chapter 11 Cases as applicable to each Debtor.

1.31    Confirmation Hearing means the hearing held by the Bankruptcy Court, as the same may be continued from time to time, to consider confirmation of the Plan.

1.32  <u>Confirmation Order</u> means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code as applicable to each Debtor.

1.33  <u>Contributing Class</u> means each of LBHI Class 5, LBHI Class 9A, LCPI Class 4A, LCPI Class 4B, LCPI Class 5B, LCPI Class 5C, LBCS Class 4, LBCS Class 5B, LBCS Class 5C, LBSF Class 4A, LBSF Class 5B, LBSF Class 5C, LOTC Class 4, LOTC Class 5B, LOTC Class 5C, LBCC Class 4, LBCC Class 5B and LBCC Class 5C.

1.34  <u>Convenience Claim</u> means any Senior Unsecured Claim or General Unsecured Claim other than a Claim on account of a public debt security issued by LBHI, a Claim asserted by a nominee on behalf of one or more beneficial holders of such Claim or a Claim of a Designated Entity that is (a) Allowed in an amount of fifty thousand dollars ($50,000) or less or (b) Allowed in an amount greater than fifty thousand dollars ($50,000) but which is reduced to fifty thousand dollars ($50,000) (i) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot or (ii) pursuant to a settlement agreement between the applicable Debtor and holder of such Claim entered into after the Voting Deadline; *provided, however* that (1) any Claim that was Allowed in excess of fifty thousand dollars ($50,000) may not be subdivided into multiple Claims of fifty thousand dollars ($50,000) or less for purposes of receiving treatment as a Convenience Claim, (2) Claims in the same Class held by a Creditor shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims, (3) Claims acquired after the Commencement Date shall not be aggregated unless such Claims are in the same Classes, are held by a Creditor and were originally held by one Creditor, and (4) Claims held by a Creditor prior to the Commencement Date shall not be aggregated with Claims acquired by such Creditor after the Commencement Date.

1.35  <u>Convenience Guarantee Claim</u> means any Senior Third-Party Guarantee Claim or Third-Party Guarantee Claim other than a Claim on account of a public debt security issued by LBHI, a Claim asserted by a nominee on behalf of one or more beneficial holders of such Claim or a Claim of a Designated Entity that is (a) Allowed in an amount of fifty thousand dollars ($50,000) or less or (b) Allowed in an amount greater than fifty thousand dollars ($50,000) but which is reduced to fifty thousand dollars ($50,000) (i) by an irrevocable written election by the holder of such Allowed Claim made on a properly delivered Ballot or (ii) pursuant to a settlement agreement between the applicable Debtor and holder of such Claim entered into after the Voting Deadline; *provided, however* that (1) any Claim that was Allowed in excess of fifty thousand dollars ($50,000) may not be subdivided into multiple Claims of fifty thousand dollars ($50,000) or less for purposes of receiving treatment as a Convenience Guarantee Claim, (2) Claims in the same Class held by a Creditor shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Guarantee Claims, (3) Claims acquired after the Commencement Date shall not be aggregated unless such Claims are in the same Classes, are held by a Creditor and were originally held by one Creditor, and (4) Claims held by a Creditor prior to the Commencement Date shall not be aggregated with Claims acquired by such Creditor after the Commencement Date.

1.36  <u>Creditor</u> shall have the meaning assigned to such term in section 101(10) of the Bankruptcy Code.

1.37    Creditors' Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.38    Debtor means BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, Merit, PAMI Statler, Preferred Somerset, SASCO and Somerset, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

1.39    Debtor Allocation Agreement means the agreement contained in the Plan Supplement among two or more of the Debtors that identifies, allocates and sets forth other agreed rights and obligations with respect to (a) the costs and benefits of Jointly Owned Litigation Claims, (b) commonly held tax benefits and obligations, (c) expenses of administration of the Chapter 11 Cases, and (d) certain other inter-Debtor related issues.

1.40    Debtors' Claims Schedule means the schedule attached hereto as Schedule 2 setting forth the amounts of Senior Affiliate Claims, Senior Affiliate Guarantee Claims or Affiliate Claims, as applicable, of a Debtor against another Debtor.

1.41    Debtor-Controlled Entity means a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor as of the Effective Date.

1.42    Designated Entity means each of the Racers Trusts and the holder of the Fenway Claims.

1.43    Derivatives Procedures Order means the *Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption or Assignment of Prepetition Derivatives Contracts*, approved and entered by the Bankruptcy Court on December 16, 2008 [Docket No. 2257], as amended or may be amended from time to time.

1.44    Director Selection Committee means the committee established pursuant to Section 7.2(b) of the Plan, the members of which are identified in the Plan Supplement.

1.45    Disclosure Statement means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.46    Disputed means, with reference to any Claim, (a) any Claim proof of which was timely and properly filed that is (i) disputed in whole or in part under the Plan, including, without limitation, any Senior Affiliate Claim, Senior Affiliate Guarantee Claim or Affiliate Claim that is not Allowed in accordance with Section 6.5(b) of the Plan, or (ii) as to which a timely objection and/or request for estimation has been interposed, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, or (b) any Claim, proof of which was required to be filed by the Bar Date Order or another Final Order of the Bankruptcy Court in a form and manner proscribed in such order, but as to which a proof of Claim was not timely or properly filed.

1.47    <u>Distribution</u> means any initial or subsequent payment or transfer made under the Plan.

1.48    <u>Distribution Date</u> means any date on which a Distribution is made upon at least thirty (30) Business Days written notice filed on the docket of the Chapter 11 Cases or otherwise communicated to holders of Allowed Claims.

1.49    <u>East Dover</u> means East Dover Limited.

1.50    <u>Effective Date</u> means the first Business Day on which the conditions to effectiveness of the Plan set forth in <u>Article XII</u> have been satisfied or waived and on which the Plan shall become effective with respect to a Debtor.

1.51    <u>Equity Interest</u> means (a) shares of common stock, preferred stock, other forms of ownership interest, or any other equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor that was in existence immediately prior to or on the Commencement Date for such Debtor, and (b) Allowed Claims against LBHI arising out of, relating to, or in connection with any of the foregoing that are subject to section 510(b) of the Bankruptcy Code.

1.52    <u>Excess LBSF Settlement Amount</u> means the Distributions, if any, made in accordance with the last sentence of <u>Section 6.5(f)</u> of the Plan to holders of Allowed Claims in LBSF Class 5A in the event holders of Allowed Claims in LBSF Class 4A are satisfied in full.

1.53    <u>Excess LCPI Settlement Amount</u> means the Distributions, if any, made in accordance with the last sentence of <u>Section 6.5(e)</u> of the Plan to holders of Allowed Claims in LCPI Class 5A in the event holders of Allowed Claims in LCPI Class 4A are satisfied in full.

1.54    <u>Excess Plan Adjustment</u> means the Distributions (including the Plan Adjustment), if any, made in accordance with the last sentence of <u>Section 6.5(a)</u> of the Plan in the event that holders of Allowed Claims in an LBHI Class 3 or LBHI Class 7 are satisfied in full to Participating Debtors for the exclusive benefit of (i) holders of Allowed Claims in such Participating Debtors' Contributing Classes and, in addition to the foregoing, (ii) (A) in the case of LBHI, LBHI Class 9B or (B) in the case of LBSF, LBSF Class 4B.

1.55    <u>Excess Plan Adjustment Portion</u> means, with respect to each Contributing Class and LBHI Class 9B and LBSF Class 4B, (a) if the Excess Plan Adjustment is equal to the Plan Adjustment, the portion of the Plan Adjustment contributed by such Contributing Class, LBHI Class 9B or LBSF Class 4B and (b) if the Excess Plan Adjustment is less than the Plan Adjustment, the portion of the Excess Plan Adjustment that bears the same relationship to the Excess Plan Adjustment as the portion of the Plan Adjustment contributed by such Contributing Class, LBHI Class 9B or LBSF Class 4B bears to the Plan Adjustment, contributed by all Contributing Classes and LBHI Class 9B and LBSF Class 4B.

1.56    <u>Fenway Claim</u> means the Claim asserted by LBHI in connection with the Fenway transaction, which shall be Allowed in accordance with <u>Section 6.5(h)</u> of the Plan.

1.57    <u>Final Order</u> means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for

reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.58    Foreign Administrator means each of the persons or entities that is managing the affairs and representing the insolvency estate of a Non-Controlled Affiliate that is subject to a Foreign Proceeding.

1.59    Foreign Proceeding means an insolvency, administration, liquidation, rehabilitation, receivership or like proceeding commenced by or initiated against a Non-Controlled Affiliate in a jurisdiction outside of the United States.

1.60    General Unsecured Claim means, (a) in the case of LBHI, any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Senior Affiliate Claim, a Senior Affiliate Guarantee Claim, a Senior Third-Party Guarantee Claim, an Affiliate Claim, a Third-Party Guarantee Claim, a Subordinated Claim or a Section 510(b) Claim, or (b) in the case of each Subsidiary Debtor, any Claim other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim or an Affiliate Claim.

1.61    Governmental Unit shall have the meaning assigned to such term in section 101(27) of the Bankruptcy Code.

1.62    Guarantee Claim means a Claim asserted against LBHI on the basis of a guarantee, promise, pledge, indemnity or similar agreement by LBHI (a) to satisfy an obligation or liability of another entity or (b) with respect to asset values, collection or net worth of another entity.

1.63    Hong Kong Lehman Entities In Liquidation shall have the meaning assigned to such term in the Hong Kong Settlement Agreement.

1.64    Hong Kong Settlement Agreement means that certain Settlement and Plan Support Agreement, dated July 31, 2011, among the Debtors and the Hong Kong Lehman Entities In Liquidation, which is annexed hereto as Schedule 5.

1.65    Independent Directors means Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Jerry A. Grundhofer, Roland A. Hernandez, Henry Kaufman and John D. Macomber.

1.66    Intercompany Funding Balance means that portion of LBHI's Claim against a Subsidiary Debtor, in the amount reflected on page 3 of the Debtors' Claims Schedule, that relates to the funding of operations of such Subsidiary Debtor but does not relate to specific transactions, such as derivative contracts or repurchase agreements.

1.67    IRS means the Internal Revenue Service.

1.68    Jointly Owned Litigation Claims means any Litigation Claims that may be, are or are asserted to be owned, either jointly or individually, by one or more of the Debtors.

1.69    LAMCO means LAMCO Holdings LLC and its subsidiary Affiliates.

1.70    LB 745 means LB 745 LLC.

1.71    LB 2080 means LB 2080 Kalakaua Owners LLC.

1.72    LBB means Lehman Brothers Bankhaus AG (in Insolvenz).

1.73    LBB Administrator means Dr. Michael C. Frege in his capacity as insolvency administrator (Insolvenzverwalter) of LBB.

1.74    LBCC means Lehman Brothers Commercial Corporation.

1.75    LBCS means Lehman Brothers Commodities Services Inc.

1.76    LBDP means Lehman Brothers Derivative Products Inc.

1.77    LBFP means Lehman Brothers Financial Products Inc.

1.78    LBHI means Lehman Brothers Holdings Inc.

1.79    LBHI Stock means the common or preferred stock of LBHI outstanding on the Effective Date.

1.80    LBI means Lehman Brothers Inc.

1.81    LBI Proceeding means the proceeding commenced under the Securities Investor Protection Act of 1970, as amended, with respect to LBI.

1.82    LB Rose Ranch means LB Rose Ranch LLC.

1.83    LBSF means Lehman Brothers Special Financing Inc.

1.84    LBSF Additional Settlement Amount means the first $70 million that is recovered by LBSF in respect of "Total Assets" in excess of $14,156,000,000, the amount of "Total Assets" of LBSF estimated in Exhibit 4 to the Disclosure Statement, dated June 29, 2011, which shall be distributed to only holders of Allowed Claims in LBSF Class 4A and LBSF Class 5C in accordance with Section 6.5(d) of the Plan.

1.85    <u>LBSF Settlement Amount</u> means the first $100 million of Distributions made to LBHI on account of its Allowed Affiliate Claim against LBSF that shall be automatically redistributed in accordance with <u>Section 6.5(f)</u> of the Plan.

1.86    <u>LBSN</u> means Lehman Brothers Securities N.V.

1.87    <u>LBT</u> means Lehman Brothers Treasury Co. B.V.

1.88    <u>LBT Trustees</u> means Rutger J. Schimmelpenninck and Frédéric Verhoeven, in their capacity as bankruptcy trustees (*curatoren*) for LBT.

1.89    <u>LBT Settlement Agreement</u> that certain Settlement Agreement, dated August 30, 2011, among the Debtors and the LBT Trustees, which is annexed hereto as <u>Schedule 6</u>.

1.90    <u>LCPI</u> means Lehman Commercial Paper Inc.

1.91    <u>LCPI Settlement Amount</u> means the first $100 million of Distributions made to LBHI on account of its Allowed Affiliate Claim against LCPI that shall be automatically redistributed in accordance with <u>Section 6.5(e)</u> of the Plan.

1.92    <u>Lehman</u> means LBHI together with all of its direct and indirect Affiliates existing on or after the LBHI Commencement Date.

1.93    <u>Lehman ALI</u> means Lehman ALI Inc.

1.94    <u>Lehman Singapore Entities</u> means the Lehman Singapore Liquidation Companies and the Lehman Singapore Non-Liquidation Companies as such terms are defined in the Singapore Settlement Agreement.

1.95    <u>Lien</u> shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

1.96    <u>Liquidating Trust</u> means a trust that may be created after the Effective Date in accordance with the provisions of <u>Article X</u> of the Plan and a Liquidating Trust Agreement for the benefit of holders of Allowed Claims or Equity Interests and as determined by the Plan Administrator consistent with the purposes of any such Liquidating Trust pursuant to <u>Section 10.2</u> of the Plan.

1.97    <u>Liquidating Trust Agreement</u> means an agreement evidencing the terms and provisions governing a Liquidating Trust that shall be entered into prior to the establishment of such Liquidating Trust and pursuant to which a Liquidating Trustee shall manage and administer Liquidating Trust Assets.

1.98    <u>Liquidating Trust Assets</u> means the assets of a Debtor or Debtor-Controlled Entity to be transferred to a Liquidating Trust as may be determined by the Plan Administrator, which shall be described in a Liquidating Trust Agreement.

1.99    Liquidating Trust Beneficiaries means those holders of Allowed Claims against or Equity Interests in a Debtor to the extent such holders receive Liquidating Trust Interests.

1.100    Liquidating Trustee means the person or entity appointed by the Plan Administrator prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article X of the Plan and a Liquidating Trust Agreement; provided, however, that under no circumstance shall a Liquidating Trustee be a director or officer with respect to any entity over which the Liquidating Trust has control.

1.101    Liquidating Trust Interests means the non-certificated beneficial interests of a Liquidating Trust allocable to holders of Allowed Claims and/or Equity Interests in accordance with the terms and conditions of a Liquidating Trust Agreement, which may or may not be transferable.

1.102    Litigation Claims means any and all Causes of Action held by a Debtor.

1.103    LOTC means Lehman Brothers OTC Derivatives Inc.

1.104    LS Finance means Lehman Scottish Finance L.P.

1.105    LUXCO means Luxembourg Residential Properties Loan Finance S.a.r.l.

1.106    Merit means Merit, LLC.

1.107    New Securities means the securities that may be distributed by a Debtor or Debtor-Controlled Entity after the Effective Date to the holders of Allowed Claims against or Equity Interests in such Debtor representing an interest in an existing or newly formed entity of a Debtor or Debtor-Controlled Entity pursuant to and in a manner consistent with Section 15.2 of the Plan.

1.108    Non-Controlled Affiliate means an Affiliate of the Debtors that is not currently managed and controlled by a Debtor as of the Effective Date, including, without limitation, all Affiliates that are subject to a Foreign Proceeding and LBI.

1.109    Opco Plan Proponents means those entities that are "Non-Consolidation Plan Proponents," as identified in Schedule A to the Joint Chapter 11 Plan For Lehman Brothers Holdings Inc. and Its Affiliated Debtors Other Than Merit, LLC, LB Somerset, LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents, filed on April 25, 2011 [Docket No. 16229], that have Claims against LBSF and LCPI.

1.110    Ordinary Course Professional Order means the Amended Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, approved and entered by the Bankruptcy Court on March 25, 2010 [Docket No. 7822], as the same may be amended from time to time.

1.111    PAMI Statler means PAMI Statler Arms LLC.

1.112  <u>Participating Debtors</u> means LBHI together with each of the Participating Subsidiary Debtors.

1.113  <u>Participating Subsidiary Debtor</u> means LCPI, LBSF, LOTC, LBCC or LBCS.

1.114  <u>Plan</u> means, collectively, the chapter 11 plans of each of the Debtors, and (where specified herein) individually, the chapter 11 plan of each Debtor, including, without limitation, the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as each of the foregoing may be altered, amended or modified from time to time.

1.115  <u>Plan Administrator</u> means LBHI pursuant to the authority granted in <u>Section 6.1</u> of the Plan.

1.116  <u>Plan Adjustment</u> means the sum of (a) the Racers Adjustment and (b) the sum of (i) each of the Distributions (excluding Distributions on account of the LBSF Settlement Amount, the LBSF Additional Settlement Amount and the LCPI Settlement Amount) made to holders of Allowed Claims in each Contributing Class, multiplied by (ii) the Plan Adjustment Percentage applicable to each such Contributing Class, that shall be redistributed in accordance with <u>Section 6.5(a)</u> of the Plan.

1.117  <u>Plan Adjustment Percentage</u> means the percentage applicable to a Contributing Class of a Participating Debtor as set forth on <u>Schedule 1</u> hereto.

1.118  <u>Plan Supplement</u> means the document containing the forms of documents specified in <u>Section 15.5</u> of the Plan.

1.119  <u>Plan Support Agreement</u> means an agreement to support the Plan that has been or will be executed by a PSA Creditor.

1.120  <u>Plan Trust</u> means the trust established under New York law to hold the Plan Trust Stock on and after the Effective Date.

1.121  <u>Plan Trust Agreement</u> means the agreement contained in the Plan Supplement creating and setting forth the terms and conditions that shall govern the Plan Trust.

1.122  <u>Plan Trust Stock</u> means one new share of LBHI common stock to be issued to the Plan Trust upon cancellation of the LBHI Stock in accordance with <u>Section 4.17(b)</u> of the Plan.

1.123  <u>Plan Trustee</u> means any of the persons acting as trustee of the Plan Trust pursuant to <u>Section 7.4</u> of the Plan.

1.124  <u>Preferred Somerset</u> means LB Preferred Somerset LLC.

1.125  <u>Primary Claim</u> means a Claim against a Primary Obligor for which a corresponding Guarantee Claim has been asserted.

1.126  <u>Primary Obligor</u> means an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted.

1.127   <u>Priority Non-Tax Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code or 12 U.S.C. § 4617(b)(15).

1.128   <u>Priority Tax Claim</u> means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.129   <u>Property of the Estate</u> means all property of a Debtor pursuant to section 541 of the Bankruptcy Code.

1.130   <u>Pro Rata Share</u> means with respect to an Allowed Claim or Equity Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims; *provided*, *however*, that Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Convenience Claims, Convenience Guarantee Claims and Section 510(b) Claims shall not be considered for purposes of "Pro Rata Share" among all Classes; *provided*, *further*, *however*, that only the following Claims shall be considered in the determination of "Pro Rata Share" among all Classes with respect to the following Distributions:

(i)   Available Cash in the case of LBHI:  Senior Unsecured Claims, Senior Affiliate Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, General Unsecured Claims, Affiliate Claims, Third-Party Guarantee Claims and Subordinated Claims.

(ii)   Available Cash in the case of a Subsidiary Debtor:  General Unsecured Claims and Affiliate Claims.

(iii)   LBSF Settlement Amount: General Unsecured Claims against LBSF other than Claims of any of the Racers Trusts.

(iv)   LBSF Additional Settlement Amount: (1) General Unsecured Claims against LBSF other than Claims of any of the Racers Trusts, and (2) Affiliate Claims against LBSF other than Claims of any of the Participating Debtors.

(v)   LCPI Settlement Amount:  General Unsecured Claims against LCPI other than Claims of any Designated Entity.

(vi)   Plan Adjustment:  Senior Unsecured Claims against LBHI and General Unsecured Claims against LBHI.

(vii)   Subordinated Class 10A Distribution:  Senior Unsecured Claims and Senior Affiliate Claims.

(viii)   Subordinated Class 10B Distribution:  Senior Unsecured Claims, Senior Affiliate Claims, Senior Affiliate Guarantee Claims and Senior Third-Party Guarantee Claims.

(ix)   Subordinated Class 10C Distribution:  Senior Unsecured Claims, Senior Affiliate Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, Subordinated Class 10A Claims and Subordinated Class 10B Claims.

1.131   <u>PSA Creditor</u> means any Creditor identified on <u>Schedule 4</u> (as the same may be amended from time to time) that is a party to a Plan Support Agreement with the Debtors that has not been terminated, and the Ad Hoc Group of Lehman Brothers Creditors, and each former, current and future member thereof that executes a Plan Support Agreement prior to the hearing to consider approval of the Disclosure Statement, and each of its officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases).

1.132   <u>Racers 2007-A Trust</u> means the Restructured Assets with Enhanced Returns Series 2007-A Trust.

1.133   <u>Racers Adjustment</u> means the Distributions made to the Racers 2007-A Trust on account of (a) in the case of LBSF, $1 billion of its Allowed Claim against LBSF or (b) in the case of LBHI, $1 billion of its Allowed Guarantee Claim against LBHI.

1.134   <u>Racers MM Trust</u> means the Restructured Assets with Enhanced Returns 2007-7-MM Trust.

1.135   <u>Racers Trusts</u> means the Racers 2007-A Trust and the Racers MM Trust.

1.136   <u>Released Parties</u> means, collectively, and in each case, solely in such capacity, the Debtors, the Independent Directors, the Plan Administrator, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases).

1.137   <u>SASCO</u> means Structured Asset Securities Corporation.

1.138   <u>Schedules</u> means the schedules of assets and liabilities, schedules of current income and current expenditures and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

1.139   <u>Secured Claim</u> means any Claim (a) to the extent reflected in the Schedules or upon a proof of Claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the

Bankruptcy Code or (b) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.140    Section 510(b) Claim means any Claim against LBHI that is subject to section 510(b) of the Bankruptcy Code other than any Claim arising out of, relating to, or in connection with Equity Interests in LBHI.

1.141    Senior Affiliate Claim means any Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Affiliate Guarantee Claim.

1.142    Senior Affiliate Guarantee Claim means any Guarantee Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).

1.143    Senior Notes means, collectively, the various notes issued by LBHI as to which Wilmington Trust Co. serves as indenture trustee.

1.144    Senior Third-Party Guarantee Claim means any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).

1.145    Senior Unsecured Claim means any Claim against LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Affiliate Claim, Senior Affiliate Guarantee Claim and Senior Third-Party Guarantee Claim.

1.146    Singapore Settlement Agreement means that certain Settlement Agreement, dated August 24, 2011, among the Debtors, certain Debtor-Controlled Entities and the Lehman Singapore Entities, which is annexed hereto as Schedule 7.

1.147    SIPA Trustee means James W. Giddens as trustee appointed under the Securities Investor Protection Act of 1970 to administer LBI's estate.

1.148    Somerset means LB Somerset LLC.

1.149    Stock Trading Restrictions Order means the *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto* [Docket No. 1386], as the same may be amended from time to time.

1.150   <u>Structured Securities Claims</u> means the Claims against LBHI arising out of structured securities issued or guaranteed by LBHI, which Claims are listed in Exhibit A to the Structured Securities Motion.

1.151   <u>Structured Securities Motion</u> means the *Motion Pursuant to Sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Procedures for Determining the Allowed Amount of Claims Filed Based on Structured Securities Issued or Guaranteed by Lehman Brothers Holdings Inc.*, filed substantially contemporaneously with the Plan.

1.152   <u>Structured Securities Order</u> means an order of the Bankruptcy Court granting the Structured Securities Motion and approving the procedures for the allowance of Structured Securities Claims pursuant to the Structured Securities Valuation Methodologies.

1.153   <u>Structured Securities Valuation Methodologies</u> means the methodologies annexed as Exhibit 11 to the Disclosure Statement for the valuation of Structured Securities Claims.

1.154   <u>Subordinated Class 10A Distribution</u> means the total Distribution that would have been made to holders of Allowed Subordinated Class 10A Claims but for the reallocation of such Distribution pursuant to <u>Section 6.4</u> of the Plan.

1.155   <u>Subordinated Class 10B Distribution</u> means the total Distribution that would have been made to holders of Allowed Subordinated Class 10B Claims but for the reallocation of such Distribution pursuant to <u>Section 6.4</u> of the Plan.

1.156   <u>Subordinated Class 10C Distribution</u> means the total Distribution that would have been made to holders of Allowed Subordinated Class 10C Claims but for the reallocation of such Distribution pursuant to <u>Section 6.4</u> of the Plan.

1.157   <u>Subordinated Claim</u> means any Subordinated Class 10A Claim, Subordinated Class 10B Claim or Subordinated Class 10C Claim.

1.158   <u>Subordinated Class 10A Claim</u> means any Claim against LBHI arising under the Class 10A Subordinated Notes.

1.159   <u>Subordinated Class 10B Claim</u> means any Claim against LBHI arising under the Class 10B Subordinated Notes.

1.160   <u>Subordinated Class 10C Claim</u> means any Claim against LBHI arising under the Class 10C Subordinated Notes.

1.161   <u>Subordinated Notes</u> means, collectively, the Class 10A Subordinated Notes, Class 10B Subordinated Notes and Class 10C Subordinated Notes.

1.162   <u>Subsidiary Debtor</u> means each of the Debtors other than LBHI.

1.163   <u>Third-Party Guarantee Claim</u> means any Guarantee Claim asserted by an entity that is not an Affiliate of LBHI other than a Senior Third-Party Guarantee Claim.

1.164  Voting Deadline means the date fixed by the Bankruptcy Court as the last date upon which holders of Claims may vote to accept or reject the Plan

Rules of Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II
## Treatment of Administrative
## Expense Claims and Priority Tax Claims

2.1  Administrative Expense Claims.  Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2  Professional Compensation and Reimbursement Claims.  Other than a professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtors and the Creditors' Committee through and including the Effective Date under section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim.  The Debtors are authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtors and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.

17

2.3    <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtors obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and semi-annually thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate determined under applicable non-bankruptcy law, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; *provided*, *however*, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

## ARTICLE III
## Classification Of Claims And Equity Interests

Claims against the Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

3.1    <u>LBHI</u>

| <u>Class</u> | <u>Designation</u> | <u>Impairment</u> | <u>Entitlement to Vote</u> |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Senior Unsecured Claims | Impaired | Yes |
| 4A | Senior Affiliate Claims | Impaired | Yes |
| 4B | Senior Affiliate Guarantee Claims | Impaired | Yes |
| 5 | Senior Third-Party Guarantee Claims | Impaired | Yes |
| 6A | Convenience Claims | Impaired | Yes |
| 6B | Convenience Guarantee Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Affiliate Claims | Impaired | Yes |
| 9A | Third-Party Guarantee Claims other than of the Racers Trusts | Impaired | Yes |
| 9B | Third-Party Guarantee Claims of the Racers Trusts | Impaired | Yes |
| 10A | Subordinated Class 10A Claims | Impaired | No (deemed to reject) |
| 10B | Subordinated Class 10B Claims | Impaired | No (deemed to reject) |
| 10C | Subordinated Class 10C Claims | Impaired | No (deemed to reject) |
| 11 | Section 510(b) Claims | Impaired | No (deemed to reject) |
| 12 | Equity Interests | Impaired | No (deemed to reject) |

### 3.2    LCPI

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Convenience Claims | Impaired | Yes |
| 4A | General Unsecured Claims other than those of Designated Entities | Impaired | Yes |
| 4B | General Unsecured Claims of Designated Entities | Impaired | Yes |
| 5A | Affiliate Claims of LBHI | Impaired | Yes |
| 5B | Affiliate Claims of Participating Subsidiary Debtors | Impaired | Yes |
| 5C | Affiliate Claims other than those of Participating Subsidiary Debtors | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### 3.3    LBCS

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Convenience Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5A | Affiliate Claims of LBHI | Impaired | Yes |
| 5B | Affiliate Claims of Participating Subsidiary Debtors | Impaired | Yes |
| 5C | Affiliate Claims other than those of Participating Subsidiary Debtors | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### 3.4    LBSF

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Convenience Claims | Impaired | Yes |
| 4A | General Unsecured Claims other than those of the Racers Trusts | Impaired | Yes |
| 4B | General Unsecured Claims of the Racers Trusts | Impaired | Yes |
| 5A | Affiliate Claims of LBHI | Impaired | Yes |
| 5B | Affiliate Claims of Participating Subsidiary Debtors | Impaired | Yes |
| 5C | Affiliate Claims other than those of Participating Subsidiary Debtors | Impaired | Yes |

19

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### 3.5    LOTC

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Convenience Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5A | Affiliate Claims of LBHI | Impaired | Yes |
| 5B | Affiliate Claims of Participating Subsidiary Debtors | Impaired | Yes |
| 5C | Affiliate Claims other than those of Participating Debtors | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### 3.6    LBCC

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Convenience Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5A | Affiliate Claims of LBHI | Impaired | Yes |
| 5B | Affiliate Claims of Participating Subsidiary Debtors | Impaired | Yes |
| 5C | Affiliate Claims other than those of Participating Debtors | Impaired | Yes |
| 6 | Equity Interests | Impaired | No (deemed to reject) |

### 3.7    LBDP

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.8   LBFP

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.9   LB 745

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.10   PAMI Statler

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.11   CES

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.12    CES V

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.13    CES IX

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.14    East Dover

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.15    LS Finance

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.16   LUXCO

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.17   BNC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.18   LB Rose Ranch

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.19   SASCO

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | Impaired | Yes |
| 5 | Equity Interests | Impaired | No (deemed to reject) |

### 3.20    LB 2080

| Class | Designation | | Impairment | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | | Impaired | Yes |
| 2 | Secured Claims | | Impaired | Yes |
| 3 | General Unsecured Claims | | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | | Impaired | Yes |
| 5 | Equity Interests | | Impaired | No (deemed to reject) |

### 3.21    Merit

| Class | Designation | | Impairment | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | | Impaired | Yes |
| 2 | Secured Claims | | Impaired | Yes |
| 3 | General Unsecured Claims | | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | | Impaired | Yes |
| 5 | Equity Interests | | Impaired | No (deemed to reject) |

### 3.22    Preferred Somerset

| Class | Designation | | Impairment | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | | Impaired | Yes |
| 2 | Secured Claims | | Impaired | Yes |
| 3 | General Unsecured Claims | | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | | Impaired | Yes |
| 5 | Equity Interests | | Impaired | No (deemed to reject) |

### 3.23    Somerset

| Class | Designation | | Impairment | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | | Impaired | Yes |
| 2 | Secured Claims | | Impaired | Yes |
| 3 | General Unsecured Claims | | Impaired | Yes |
| 4A | Affiliate Claims of LBHI | | Impaired | Yes |
| 4B | Affiliate Claims other than those of LBHI | | Impaired | Yes |
| 5 | Equity Interests | | Impaired | No (deemed to reject) |

## ARTICLE IV
## Treatment of Claims Against and Equity Interests in LBHI

4.1      LBHI Class 1 – Priority Non-Tax Claims against LBHI.

(a)      _Impairment and Voting_.  LBHI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 1 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.

4.2      LBHI Class 2 – Secured Claims against LBHI.

(a)      _Impairment and Voting_.  LBHI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 2 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBHI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBHI Class 2 shall be satisfied by, at the option of LBHI:   (i) payment in Cash by LBHI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LBHI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

4.3      LBHI Class 3 – Senior Unsecured Claims against LBHI.

(a)      _Impairment and Voting_.  LBHI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 3 is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Each holder of an Allowed Claim in LBHI Class 3 shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution, (iv) Subordinated Class 10C Distribution and (v) the Plan Adjustment.

4.4      LBHI Class 4A – Senior Affiliate Claims against LBHI.

(a)      _Impairment and Voting_.  LBHI Class 4A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4A is entitled to vote to accept or reject the Plan.

(b)      _Distributions_.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LBHI Class 4A shall receive its Pro Rata Share of (i) Available Cash from

LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution.

4.5    LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LBHI Class 4B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.6    LBHI Class 5 – Senior Third-Party Guarantee Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBHI Class 5 shall receive its Pro Rata Share of (i) (A) Available Cash from LBHI, (B) Subordinated Class 10B Distribution and (C) Subordinated Class 10C Distribution; *provided*, *however*, that the applicable Plan Adjustment Percentage of the Distributions set forth in clauses (A), (B) and (C) above shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBHI Class 5.

4.7    LBHI Class 6A – Convenience Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 6A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 6A is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBHI Class 6A shall receive Cash from LBHI in an amount equal to .26 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

4.8    LBHI Class 6B – Convenience Guarantee Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 6B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 6B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBHI Class 6B shall receive Cash from LBHI in an amount equal to .17 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

4.9    <u>LBHI Class 7 – General Unsecured Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 7 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 7 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 7 shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) the Plan Adjustment.

4.10    <u>LBHI Class 8 – Affiliate Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 8 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8 shall receive its Pro Rata Share of Available Cash from LBHI.

4.11    <u>LBHI Class 9A – Third-Party Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 9A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 9A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 9A shall receive from LBHI its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBHI Class 9A.

4.12    <u>LBHI Class 9B – Third-Party Guarantee Claims of the Racers Trusts against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 9B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 9B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(g)</u> of the Plan, each holder of an Allowed Claim in LBHI Class 9B shall receive from LBHI its Pro Rata Share of (i) Available Cash; *provided, however*, that the Racers Adjustment shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBHI Class 9B.

4.13    <u>LBHI Class 10A – Subordinated Class 10A Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 10A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10A is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in LBHI Class 10A shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A are satisfied in full, in which case each holder of an

Allowed Claim in LBHI Class 10A shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.14    LBHI Class 10B – Subordinated Class 10B Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 10B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10B is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 10B shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B and LBHI Class 5 are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10B shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.15    LBHI Class 10C – Subordinated Class 10C Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 10C is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10C is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 10C shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 10A and LBHI Class 10B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10C shall receive its Pro Rata Share of Available Cash from LBHI.

4.16    LBHI Class 11 – Section 510(b) Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 11 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 11 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 11 shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims against LBHI other than Claims in LBHI Class 11 are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 11 shall receive its Pro Rata Share of Available Cash from LBHI.

4.17    LBHI Class 12 – Equity Interests in LBHI.

(a)    Impairment and Voting.  LBHI Class 12 is impaired by the Plan.  Each holder of an Equity Interest in LBHI Class 12 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Stock Exchange.  On the Effective Date, all LBHI Stock shall be cancelled and the Plan Trust Stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative

priority and economic entitlements; *provided*, *however*, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.  On or promptly after the Effective Date, the Plan Administrator shall file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of LBHI's publicly traded securities.

(c)    Distributions.  Each holder of an Equity Interest in LBHI (through their interest in the new share of LBHI common stock or otherwise) shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBHI on account of such Equity Interests; *provided*, *however*, that in the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its share of any remaining assets of LBHI consistent with such holder's rights of payment existing immediately prior to the Commencement Date.  Unless otherwise determined by the Plan Administrator, on the date that LBHI's Chapter 11 Case is closed in accordance with Section 6.6 of the Plan, the Plan Trust Stock issued pursuant to subsection (b) above shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' estates.

(d)    Non-Transferable.  The continuing rights of holders of Equity Interests (including through their interest in the Plan Trust Stock or otherwise) shall be nontransferable except by operation of law.

## ARTICLE V
## Treatment of Claims Against and Equity Interests in Subsidiary Debtors

5.1    LCPI Class 1 – Priority Non-Tax Claims against LCPI.

(a)    Impairment and Voting.  LCPI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LCPI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LCPI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LCPI Class 1 shall be paid by LCPI in Cash in full.

5.2    LCPI Class 2 – Secured Claims against LCPI.

(a)    Impairment and Voting.  LCPI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LCPI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LCPI Class 2 shall be satisfied by, at the option of LCPI:   (i) payment in Cash by LCPI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such

treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in LCPI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.3     LCPI Class 3 – Convenience Claims against LCPI.

(a)     Impairment and Voting. LCPI Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LCPI Class 3 is entitled to vote to accept or reject the Plan.

(b)     Distributions. Each holder of an Allowed Claim in LCPI Class 3 shall receive Cash from LCPI in an amount equal to .60 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.4     LCPI Class 4A – General Unsecured Claims other than those of Designated Entities against LCPI.

(a)     Impairment and Voting. LCPI Class 4A is impaired by the Plan. Each holder of an Allowed Claim in LCPI Class 4A is entitled to vote to accept or reject the Plan.

(b)     Distributions. Each holder of an Allowed Claim in LCPI Class 4A shall receive its Pro Rata Share (i) from LCPI of (A) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (B) the Excess Plan Adjustment Portion with respect to LCPI Class 4A, and (ii) the LCPI Settlement Amount.

5.5     LCPI Class 4B – General Unsecured Claims of Designated Entities against LCPI.

(a)     Impairment and Voting. LCPI Class 4B is impaired by the Plan. Each holder of an Allowed Claim in LCPI Class 4B is entitled to vote to accept or reject the Plan.

(b)     Distributions. Subject to Sections 6.5(g) or 6.5(h), each holder of an Allowed Claim in LCPI Class 4B shall receive from LCPI its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LCPI Class 4B.

5.6     LCPI Class 5A – Affiliate Claims of LBHI against LCPI.

(a)     Impairment and Voting. LCPI Class 5A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)     Distributions. Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive from LCPI (i) its Pro Rata Share of Available Cash; *provided, however*, that the LCPI Settlement Amount shall be automatically redistributed pursuant to Section 6.5(e) of the Plan, and (ii) the Excess LCPI Settlement Amount.

5.7    LCPI Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LCPI.

(a)    Impairment and Voting.  LCPI Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 5B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LCPI Class 5B shall receive from LCPI its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LCPI Class 5B.

5.8    LCPI Class 5C – Affiliate Claims other than those of Participating Debtors against LCPI.

(a)    Impairment and Voting.  LCPI Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 5C is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LCPI Class 5C shall receive from LCPI its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LCPI Class 5C.

5.9    LCPI Class 6 – Equity Interests in LCPI.

(a)    Impairment and Voting.  LCPI Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LCPI Class 6 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Equity Interests in LCPI shall be cancelled if and when LCPI is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LCPI shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LCPI on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against LCPI have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LCPI may receive its Pro Rata Share of any remaining assets in LCPI.

5.10    LBCS Class 1 – Priority Non-Tax Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBCS Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCS on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCS Class 1 shall be paid by LBCS in Cash in full.

5.11    <u>LBCS Class 2 – Secured Claims against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBCS Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCS Class 2 shall be satisfied by, at the option of LBCS:   (i) payment in Cash by LBCS in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCS Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.12    <u>LBCS Class 3 – Convenience Claims against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBCS Class 3 shall receive Cash from LBCS in an amount equal to .55 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.13    <u>LBCS Class 4 – General Unsecured Claims against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBCS Class 4 shall receive from LBCS its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCS Class 4.

5.14    <u>LBCS Class 5A – Affiliate Claims of LBHI against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 5A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LBCS.

5.15    <u>LBCS Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 5B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LBCS Class 5B shall receive from LBCS its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCS Class 5B.

5.16    <u>LBCS Class 5C – Affiliate Claims other than those of Participating Debtors against LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 5C is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LBCS Class 5C shall receive from LBCS its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCS Class 5C.

5.17    <u>LBCS Class 6 – Equity Interests in LBCS</u>.

(a)    <u>Impairment and Voting</u>.  LBCS Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCS Class 6 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Equity Interests in LBCS shall be cancelled if and when LBCS is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LBCS shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCS on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against LBCS have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCS may receive its Pro Rata Share of any remaining assets in LBCS.

5.18    <u>LBSF Class 1 – Priority Non-Tax Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBSF Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBSF on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBSF Class 1 shall be paid by LBSF in Cash in full.

5.19    LBSF Class 2 – Secured Claims against LBSF.

(a)    Impairment and Voting.  LBSF Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBSF Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBSF Class 2 shall be satisfied by, at the option of LBSF:  (i) payment in Cash by LBSF in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBSF Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.20    LBSF Class 3 – Convenience Claims against LBSF.

(a)    Impairment and Voting.  LBSF Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBSF Class 3 shall receive Cash from LBSF in an amount equal to .32 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.21    LBSF Class 4A – General Unsecured Claims other than those of the Racers Trusts against LBSF.

(a)    Impairment and Voting.  LBSF Class 4A is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 4A is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBSF Class 4A shall receive its Pro Rata Share (i) from LBSF of (A) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, (B) the Excess Plan Adjustment Portion with respect to LBSF Class 4A, and (C) the LBSF Additional Settlement Amount, and (ii) the LBSF Settlement Amount.

5.22    LBSF Class 4B – General Unsecured Claims of the Racers Trusts against LBSF.

(a)    Impairment and Voting.  LBSF Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Sections 6.5(d) and 6.5(g) of the Plan, each holder of an Allowed Claim in LBSF Class 4B shall receive from LBSF its Pro Rata Share of (i) Available Cash; *provided, however*, that the Racers Adjustment shall be automatically

redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBSF Class 4B.

5.23    <u>LBSF Class 5A – Affiliate Claims of LBHI against LBSF.</u>

(a)    <u>Impairment and Voting</u>.  LBSF Class 5A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u>, <u>6.5(c)</u> and <u>6.5(d)</u> of the Plan, LBHI shall receive from LBSF (i) its Pro Rata Share of Available Cash; *provided, however*, that the LBSF Settlement Amount shall be automatically redistributed pursuant to <u>Section 6.5(f)</u> of the Plan, and (ii) the Excess LBSF Settlement Amount.

5.24    <u>LBSF Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 5B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(d)</u> of the Plan, each holder of an Allowed Claim in LBSF Class 5B shall receive from LBSF its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBSF Class 5B.

5.25    <u>LBSF Class 5C – Affiliate Claims other than those of Participating Debtors against LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 5C is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LBSF Class 5C shall receive from LBSF its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to <u>Section 6.5(a)</u> of the Plan, (ii) the Excess Plan Adjustment Portion with respect to LBSF Class 5C and (iii) the LBSF Additional Settlement Amount.

5.26    <u>LBSF Class 6 – Equity Interests in LBSF</u>.

(a)    <u>Impairment and Voting</u>.  LBSF Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBSF Class 6 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Equity Interests in LBSF shall be cancelled if and when LBSF is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LBSF shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBSF on account of such Equity Interests thereafter; *provided*, *however*, that in

the event that all Allowed Claims against LBSF have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBSF may receive its Pro Rata Share of any remaining assets in LBSF.

5.27    <u>LOTC Class 1 – Priority Non-Tax Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>.  LOTC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LOTC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LOTC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LOTC Class 1 shall be paid by LOTC in Cash in full.

5.28    <u>LOTC Class 2 – Secured Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>.  LOTC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LOTC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LOTC Class 2 shall be satisfied by, at the option of LOTC:  (i) payment in Cash by LOTC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LOTC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.29    <u>LOTC Class 3 – Convenience Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>.  LOTC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LOTC Class 3 shall receive Cash from LOTC in an amount equal to .34 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.30    <u>LOTC Class 4 – General Unsecured Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>.  LOTC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LOTC Class 4 shall receive from LOTC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LOTC Class 4.

5.31    LOTC Class 5A – Affiliate Claims of LBHI against LOTC.

(a)    Impairment and Voting.  LOTC Class 5A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LOTC.

5.32    LOTC Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LOTC.

(a)    Impairment and Voting.  LOTC Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 5B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LOTC Class 5B shall receive from LOTC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LOTC Class 5B.

5.33    LOTC Class 5C – Affiliate Claims other than those of Participating Debtors against LOTC.

(a)    Impairment and Voting.  LOTC Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 5C is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LOTC Class 5C shall receive from LOTC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LOTC Class 5C.

5.34    LOTC Class 6 – Equity Interests in LOTC.

(a)    Impairment and Voting.  LOTC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LOTC Class 6 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Equity Interests in LOTC shall be cancelled if and when LOTC is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LOTC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LOTC on account of such Equity Interests thereafter; *provided*, *however*, that in

the event that all Allowed Claims against LOTC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LOTC may receive its Pro Rata Share of any remaining assets in LOTC.

5.35   LBCC Class 1 – Priority Non-Tax Claims against LBCC.

(a)   Impairment and Voting.   LBCC Class 1 is impaired by the Plan.   Each holder of an Allowed Claim in LBCC Class 1 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in LBCC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCC Class 1 shall be paid by LBCC in Cash in full.

5.36   LBCC Class 2 – Secured Claims against LBCC.

(a)   Impairment and Voting.   LBCC Class 2 is impaired by the Plan.   Each holder of an Allowed Claim in LBCC Class 2 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in LBCC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCC Class 2 shall be satisfied by, at the option of LBCC:   (i) payment in Cash by LBCC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LBCC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.37   LBCC Class 3 – Convenience Claims against LBCC.

(a)   Impairment and Voting.   LBCC Class 3 is impaired by the Plan.   Each holder of an Allowed Claim in LBCC Class 3 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Each holder of an Allowed Claim in LBCC Class 3 shall receive Cash from LBCC in an amount equal to .49 multiplied by the amount of such Claim, in full and complete satisfaction of such Allowed Claim, on the later of the Effective Date and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable.

5.38   LBCC Class 4 – General Unsecured Claims against LBCC.

(a)   Impairment and Voting.   LBCC Class 4 is impaired by the Plan.   Each holder of an Allowed Claim in LBCC Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBCC Class 4 shall receive from LBCC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCC Class 4.

5.39    LBCC Class 5A – Affiliate Claims of LBHI against LBCC.

(a)    Impairment and Voting.  LBCC Class 5A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LBCC.

5.40    LBCC Class 5B – Affiliate Claims of Participating Subsidiary Debtors against LBCC.

(a)    Impairment and Voting.  LBCC Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 5B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LBCC Class 5B shall receive from LBCC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCC Class 5B.

5.41    LBCC Class 5C – Affiliate Claims other than those of Participating Debtors against LBCC.

(a)    Impairment and Voting.  LBCC Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 5C is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LBCC Class 5C shall receive from LBCC its Pro Rata Share of (i) Available Cash; *provided*, *however*, that the applicable Plan Adjustment Percentage of such Distribution shall be automatically redistributed pursuant to Section 6.5(a) of the Plan, and (ii) the Excess Plan Adjustment Portion with respect to LBCC Class 5C.

5.42    LBCC Class 6 – Equity Interests in LBCC.

(a)    Impairment and Voting.  LBCC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCC Class 6 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.  Equity Interests in LBCC shall be cancelled if and when LBCC is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBCC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCC on account of such Equity Interests thereafter; *provided*, *however*, that in

the event that all Allowed Claims against LBCC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCC may receive its Pro Rata Share of any remaining assets in LBCC.

5.43    LBDP Class 1 – Priority Non-Tax Claims against LBDP.

(a)    Impairment and Voting.    LBDP Class 1 is impaired by the Plan.    Each holder of an Allowed Claim in LBDP Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in LBDP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBDP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBDP Class 1 shall be paid by LBDP in Cash in full.

5.44    LBDP Class 2 – Secured Claims against LBDP.

(a)    Impairment and Voting.    LBDP Class 2 is impaired by the Plan.    Each holder of an Allowed Claim in LBDP Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in LBDP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBDP Class 2 shall be satisfied by, at the option of LBDP:   (i) payment in Cash by LBDP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LBDP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.45    LBDP Class 3 – General Unsecured Claims against LBDP.

(a)    Impairment and Voting.    LBDP Class 3 is impaired by the Plan.    Each holder of an Allowed Claim in LBDP Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Each holder of an Allowed Claim in LBDP Class 3 shall receive its Pro Rata Share of Available Cash from LBDP.

5.46    LBDP Class 4A – Affiliate Claims of LBHI against LBDP.

(a)    Impairment and Voting.    LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LBDP.

5.47   LBDP Class 4B – Affiliate Claims other than those of LBHI against LBDP.

(a)   Impairment and Voting.   LBDP Class 4B is impaired by the Plan.   Each holder of an Allowed Claim in LBDP Class 4B is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in LBDP Class 4B shall receive its Pro Rata Share of Available Cash from LBDP.

5.48   LBDP Class 5 – Equity Interests in LBDP.

(a)   Impairment and Voting.   LBDP Class 5 is impaired by the Plan.   Each holder of an Equity Interest in LBDP Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)   Distributions.   Equity Interests in LBDP shall be cancelled if and when LBDP is dissolved in accordance with Section 7.4 of the Plan.   Each holder of an Equity Interest in LBDP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBDP on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against LBDP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBDP may receive its Pro Rata Share of any remaining assets in LBDP.

5.49   LBFP Class 1 – Priority Non-Tax Claims against LBFP.

(a)   Impairment and Voting.   LBFP Class 1 is impaired by the Plan.   Each holder of an Allowed Claim in LBFP Class 1 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in LBFP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBFP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBFP Class 1 shall be paid by LBFP in Cash in full.

5.50   LBFP Class 2 – Secured Claims against LBFP.

(a)   Impairment and Voting.   LBFP Class 2 is impaired by the Plan.   Each holder of an Allowed Claim in LBFP Class 2 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in LBFP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBFP Class 2 shall be satisfied by, at the option of LBFP:   (i) payment in Cash by LBFP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LBFP Class 2 is treated under

clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.51    <u>LBFP Class 3 – General Unsecured Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBFP Class 3 shall receive its Pro Rata Share of Available Cash from LBFP.

5.52    <u>LBFP Class 4A – Affiliate Claims of LBHI against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 4A is impaired by the Plan.   LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LBFP.

5.53    <u>LBFP Class 4B – Affiliate Claims other than those of LBHI against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LBFP Class 4B shall receive its Pro Rata Share of Available Cash from LBFP.

5.54    <u>LBFP Class 5 – Equity Interests in LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LBFP Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Equity Interests in LBFP shall be cancelled if and when LBFP is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LBFP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBFP on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against LBFP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBFP may receive its Pro Rata Share of any remaining assets in LBFP.

5.55    <u>LB 745 Class 1 – Priority Non-Tax Claims against LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LB 745 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 745 on

account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 745 Class 1 shall be paid by LB 745 in Cash in full.

5.56    <u>LB 745 Class 2 – Secured Claims against LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LB 745 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 745 Class 2 shall be satisfied by, at the option of LB 745:  (i) payment in Cash by LB 745 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 745 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.57    <u>LB 745 Class 3 – General Unsecured Claims against LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LB 745 Class 3 shall receive its Pro Rata Share of Available Cash from LB 745.

5.58    <u>LB 745 Class 4A – Affiliate Claims of LBHI against LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 4A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LB 745.

5.59    <u>LB 745 Class 4B – Affiliate Claims other than those of LBHI against LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in LB 745 Class 4B shall receive its Pro Rata Share of Available Cash from LB 745.

5.60    <u>LB 745 Class 5 – Equity Interests in LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LB 745 Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Equity Interests in LB 745 shall be cancelled if and when LB 745 is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LB 745 shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB 745 on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against LB 745 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 745 may receive its Pro Rata Share of any remaining assets in LB 745.

5.61    <u>PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 1 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 1 agrees to less favorable treatment or has been paid by or on behalf of PAMI Statler on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in PAMI Statler Class 1 shall be paid by PAMI Statler in Cash in full.

5.62    <u>PAMI Statler Class 2 – Secured Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 2 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in PAMI Statler Class 2 shall be satisfied by, at the option of PAMI Statler:  (i) payment in Cash by PAMI Statler in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in PAMI Statler Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.63    PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler.

(a)    Impairment and Voting.    PAMI Statler Class 3 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Each holder of an Allowed Claim in PAMI Statler Class 3 shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.64    PAMI Statler Class 4A – Affiliate Claims of LBHI against PAMI Statler.

(a)    Impairment and Voting.    PAMI Statler Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.65    PAMI Statler Class 4B – Affiliate Claims other than those of LBHI against PAMI Statler.

(a)    Impairment and Voting.    PAMI Statler Class 4B is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in PAMI Statler Class 4B shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.66    PAMI Statler Class 5 – Equity Interests in PAMI Statler.

(a)    Impairment and Voting.    PAMI Statler Class 5 is impaired by the Plan. Each holder of an Equity Interest in PAMI Statler Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.    Equity Interests in PAMI Statler shall be cancelled if and when PAMI Statler is dissolved in accordance with Section 7.4 of the Plan.    Each holder of an Equity Interest in PAMI Statler shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of PAMI Statler on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against PAMI Statler have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in PAMI Statler may receive its Pro Rata Share of any remaining assets in PAMI Statler.

5.67    CES Class 1 – Priority Non-Tax Claims against CES.

(a)    Impairment and Voting.    CES Class 1 is impaired by the Plan.    Each holder of an Allowed Claim in CES Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in
CES Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES on
account of such Claim prior to the Effective Date, on the later of the Effective Date and the date
such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed
Claim in CES Class 1 shall be paid by CES in Cash in full.

5.68    CES Class 2 – Secured Claims against CES.

(a)    Impairment and Voting.    CES Class 2 is impaired by the Plan.    Each
holder of an Allowed Claim in CES Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in
CES Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES Class 2
shall be satisfied by, at the option of CES:    (i) payment in Cash by CES in full on the later of the
Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable;
(ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent
of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such
Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves
unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is
entitled.    In the event an Allowed Claim in CES Class 2 is treated under clause (i) or (ii) above,
the Liens securing such Claim shall be deemed released and extinguished without further order
of the Bankruptcy Court.

5.69    CES Class 3 – General Unsecured Claims against CES.

(a)    Impairment and Voting.    CES Class 3 is impaired by the Plan.    Each
holder of an Allowed Claim in CES Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Each holder of an Allowed Claim in CES Class 3 shall
receive its Pro Rata Share of Available Cash from CES.

5.70    CES Class 4A – Affiliate Claims of LBHI against CES.

(a)    Impairment and Voting.    CES Class 4A is impaired by the Plan.    LBHI is
entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI
shall receive its Pro Rata Share of Available Cash from CES.

5.71    CES Class 4B – Affiliate Claims other than those of LBHI against CES.

(a)    Impairment and Voting.    CES Class 4B is impaired by the Plan.    Each
holder of an Allowed Claim in CES Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.5(b) of the Plan, each holder of an
Allowed Claim in CES Class 4B shall receive its Pro Rata Share of Available Cash from CES.

5.72    <u>CES Class 5 – Equity Interests in CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Equity Interests in CES shall be cancelled if and when CES is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in CES shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against CES have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES may receive its Pro Rata Share of any remaining assets in CES.

5.73    <u>CES V Class 1 – Priority Non-Tax Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES V Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES V on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES V Class 1 shall be paid by CES V in Cash in full.

5.74    <u>CES V Class 2 – Secured Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES V Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES V Class 2 shall be satisfied by, at the option of CES V:  (i) payment in Cash by CES V in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in CES V Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.75    <u>CES V Class 3 – General Unsecured Claims against CES V</u>.

(a)    <u>Impairment and Voting</u>.  CES V Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 3 is entitled to vote to accept or reject the Plan.

(b)    __Distributions__.  Each holder of an Allowed Claim in CES V Class 3 shall receive its Pro Rata Share of Available Cash from CES V.

5.76    __CES V Class 4A – Affiliate Claims of LBHI against CES V__.

(a)    __Impairment and Voting__.  CES V Class 4A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    __Distributions__.  Subject to __Sections 6.5(b)__ and __6.5(c)__ of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from CES V.

5.77    __CES V Class 4B – Affiliate Claims other than those of LBHI against CES V__.

(a)    __Impairment and Voting__.  CES V Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 4B is entitled to vote to accept or reject the Plan.

(b)    __Distributions__.  Subject to __Section 6.5(b)__ of the Plan, each holder of an Allowed Claim in CES V Class 4B shall receive its Pro Rata Share of Available Cash from CES V.

5.78    __CES V Class 5 – Equity Interests in CES V__.

(a)    __Impairment and Voting__.  CES V Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES V Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    __Distributions__.  Equity Interests in CES V shall be cancelled if and when CES V is dissolved in accordance with __Section 7.4__ of the Plan.  Each holder of an Equity Interest in CES V shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES V on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against CES V have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES V may receive its Pro Rata Share of any remaining assets in CES V.

5.79    __CES IX Class 1 – Priority Non-Tax Claims against CES IX__.

(a)    __Impairment and Voting__.  CES IX Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES IX Class 1 is entitled to vote to accept or reject the Plan.

(b)    __Distributions__.  Except to the extent that the holder of an Allowed Claim in CES IX Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES IX on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES IX Class 1 shall be paid by CES IX in Cash in full.

5.80    CES IX Class 2 – Secured Claims against CES IX.

(a)    Impairment and Voting.   CES IX Class 2 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Except to the extent that the holder of an Allowed Claim in CES IX Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES IX Class 2 shall be satisfied by, at the option of CES IX:   (i) payment in Cash by CES IX in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in CES IX Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.81    CES IX Class 3 – General Unsecured Claims against CES IX.

(a)    Impairment and Voting.   CES IX Class 3 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Each holder of an Allowed Claim in CES IX Class 3 shall receive its Pro Rata Share of Available Cash from CES IX.

5.82    CES IX Class 4A – Affiliate Claims of LBHI against CES IX.

(a)    Impairment and Voting.   CES IX Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from CES IX.

5.83    CES IX Class 4B – Affiliate Claims other than those of LBHI against CES IX.

(a)    Impairment and Voting.   CES IX Class 4B is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in CES IX Class 4B shall receive its Pro Rata Share of Available Cash from CES IX

5.84    CES IX Class 5 – Equity Interests in CES IX.

(a)    Impairment and Voting.   CES IX Class 5 is impaired by the Plan.   Each holder of an Equity Interest in CES IX Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.    Equity Interests in CES IX shall be cancelled if and when CES IX is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in CES IX shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES IX on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against CES IX have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES IX may receive its Pro Rata Share of any remaining assets in CES IX.

5.85    East Dover Class 1 – Priority Non-Tax Claims against East Dover.

(a)    Impairment and Voting.    East Dover Class 1 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in East Dover Class 1 agrees to less favorable treatment or has been paid by or on behalf of East Dover on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in East Dover Class 1 shall be paid by East Dover in Cash in full.

5.86    East Dover Class 2 – Secured Claims against East Dover.

(a)    Impairment and Voting.    East Dover Class 2 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in East Dover Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in East Dover Class 2 shall be satisfied by, at the option of East Dover:  (i) payment in Cash by East Dover in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in East Dover Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.87    East Dover Class 3 – General Unsecured Claims against East Dover.

(a)    Impairment and Voting.    East Dover Class 3 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Each holder of an Allowed Claim in East Dover Class 3 shall receive its Pro Rata Share of Available Cash from East Dover.

5.88   East Dover Class 4A – Affiliate Claims of LBHI against East Dover.

(a)   Impairment and Voting.  East Dover Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)   Distributions.  Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from East Dover.

5.89   East Dover Class 4B – Affiliate Claims other than those of LBHI against East Dover.

(a)   Impairment and Voting.  East Dover Class 4B is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 4B is entitled to vote to accept or reject the Plan.

(b)   Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in East Dover Class 4B shall receive its Pro Rata Share of Available Cash from East Dover.

5.90   East Dover Class 5 – Equity Interests in East Dover.

(a)   Impairment and Voting.  East Dover Class 5 is impaired by the Plan. Each holder of an Equity Interest in East Dover Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)   Distributions.  Equity Interests in East Dover shall be cancelled if and when East Dover is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in East Dover shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of East Dover on account of such Equity Interests thereafter; provided, however, that in the event that all Allowed Claims against East Dover have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in East Dover may receive its Pro Rata Share of any remaining assets in East Dover.

5.91   LS Finance Class 1 – Priority Non-Tax Claims against LS Finance.

(a)   Impairment and Voting.  LS Finance Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 1 is entitled to vote to accept or reject the Plan.

(b)   Distributions.  Except to the extent that the holder of an Allowed Claim in LS Finance Class 1 agrees to less favorable treatment or has been paid by or on behalf of LS Finance on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LS Finance Class 1 shall be paid by LS Finance in Cash in full.

5.92    <u>LS Finance Class 2 – Secured Claims against LS Finance</u>.

(a)    <u>Impairment and Voting</u>.    LS Finance Class 2 is impaired by the Plan.
Each holder of an Allowed Claim in LS Finance Class 2 is entitled to vote to accept or reject the
Plan.

(b)    <u>Distributions</u>.    Except to the extent that the holder of an Allowed Claim in
LS Finance Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LS
Finance Class 2 shall be satisfied by, at the option of LS Finance:    (i) payment in Cash by LS
Finance in full on the later of the Effective Date and the date such Claim becomes Allowed, or as
soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing
such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim;
(iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed
Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to
which the holder of the Allowed Claim is entitled.    In the event an Allowed Claim in LS
Finance Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be
deemed released and extinguished without further order of the Bankruptcy Court.

5.93    <u>LS Finance Class 3 – General Unsecured Claims against LS Finance</u>.

(a)    <u>Impairment and Voting</u>.    LS Finance Class 3 is impaired by the Plan.
Each holder of an Allowed Claim in LS Finance Class 3 is entitled to vote to accept or reject the
Plan.

(b)    <u>Distributions</u>.    Each holder of an Allowed Claim in LS Finance Class 3
shall receive its Pro Rata Share of Available Cash from LS Finance.

5.94    <u>LS Finance Class 4A – Affiliate Claims of LBHI against LS Finance</u>.

(a)    <u>Impairment and Voting</u>.    LS Finance Class 4A is impaired by the Plan.
LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.    Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI
shall receive its Pro Rata Share of Available Cash from LS Finance.

5.95    <u>LS Finance Class 4B – Affiliate Claims other than those of LBHI against LS
Finance</u>.

(a)    <u>Impairment and Voting</u>.    LS Finance Class 4B is impaired by the Plan.
Each holder of an Allowed Claim in LS Finance Class 4B is entitled to vote to accept or reject
the Plan.

(b)    <u>Distributions</u>.    Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an
Allowed Claim in LS Finance Class 4B shall receive its Pro Rata Share of Available Cash from
LS Finance.

5.96   <u>LS Finance Class 5 – Equity Interests in LS Finance</u>.

(a)   <u>Impairment and Voting</u>.  LS Finance Class 5 is impaired by the Plan.
Each holder of an Equity Interest in LS Finance Class 5 is not entitled to vote to accept or reject
the Plan and is conclusively deemed to have rejected the Plan.

(b)   <u>Distributions</u>.  Equity Interests in LS Finance shall be cancelled if and
when LS Finance is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an
Equity Interest in LS Finance shall neither receive nor retain any Property of the Estate or direct
interest in Property of the Estate of LS Finance on account of such Equity Interests thereafter;
*provided*, *however*, that in the event that all Allowed Claims against LS Finance have been
satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity
Interest in LS Finance may receive its Pro Rata Share of any remaining assets in LS Finance.

5.97   <u>LUXCO Class 1 – Priority Non-Tax Claims against LUXCO</u>.

(a)   <u>Impairment and Voting</u>.  LUXCO Class 1 is impaired by the Plan.  Each
holder of an Allowed Claim in LUXCO Class 1 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in
LUXCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of LUXCO
on account of such Claim prior to the Effective Date, on the later of the Effective Date and the
date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an
Allowed Claim in LUXCO Class 1 shall be paid by LUXCO in Cash in full.

5.98   <u>LUXCO Class 2 – Secured Claims against LUXCO</u>.

(a)   <u>Impairment and Voting</u>.  LUXCO Class 2 is impaired by the Plan.  Each
holder of an Allowed Claim in LUXCO Class 2 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in
LUXCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LUXCO
Class 2 shall be satisfied by, at the option of LUXCO:  (i) payment in Cash by LUXCO in full
on the later of the Effective Date and the date such Claim becomes Allowed, or as soon
thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such
Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii)
surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or
(iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the
holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LUXCO Class 2 is
treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and
extinguished without further order of the Bankruptcy Court.

5.99   <u>LUXCO Class 3 – General Unsecured Claims against LUXCO</u>.

(a)   <u>Impairment and Voting</u>.  LUXCO Class 3 is impaired by the Plan.  Each
holder of an Allowed Claim in LUXCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in LUXCO Class 3 shall receive its Pro Rata Share of Available Cash from LUXCO.

5.100   _LUXCO Class 4A – Affiliate Claims of LBHI against LUXCO_.

(a)    _Impairment and Voting_.  LUXCO Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Subject to _Sections 6.5(b)_ and _6.5(c)_ of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from LUXCO.

5.101   _LUXCO Class 4B – Affiliate Claims other than those of LBHI against LUXCO_.

(a)    _Impairment and Voting_.  LUXCO Class 4B is impaired by the Plan. Each holder of an Allowed Claim in LUXCO Class 4B is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Subject to _Section 6.5(b)_ of the Plan, each holder of an Allowed Claim in LUXCO Class 4B shall receive its Pro Rata Share of Available Cash from. LUXCO.

5.102   _LUXCO Class 5 – Equity Interests in LUXCO_.

(a)    _Impairment and Voting_.  LUXCO Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LUXCO Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    _Distributions_.  Equity Interests in LUXCO shall be cancelled if and when LUXCO is dissolved in accordance with _Section 7.4_ of the Plan.  Each holder of an Equity Interest in LUXCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LUXCO on account of such Equity Interests thereafter; _provided_, _however_, that in the event that all Allowed Claims against LUXCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LUXCO may receive its Pro Rata Share of any remaining assets in LUXCO.

5.103   _BNC Class 1 – Priority Non-Tax Claims against BNC_.

(a)    _Impairment and Voting_.  BNC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in BNC Class 1 agrees to less favorable treatment or has been paid by or on behalf of BNC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in BNC Class 1 shall be paid by BNC in Cash in full.

5.104    BNC Class 2 – Secured Claims against BNC.

(a)    <u>Impairment and Voting</u>.  BNC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in BNC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in BNC Class 2 shall be satisfied by, at the option of BNC:   (i) payment in Cash by BNC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in BNC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.105    BNC Class 3 – General Unsecured Claims against BNC.

(a)    <u>Impairment and Voting</u>.  BNC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in BNC Class 3 shall receive its Pro Rata Share of Available Cash from BNC.

5.106    BNC Class 4A – Affiliate Claims of LBHI against BNC.

(a)    <u>Impairment and Voting</u>.  BNC Class 4A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from BNC.

5.107    BNC Class 4B – Affiliate Claims other than those of LBHI against BNC.

(a)    <u>Impairment and Voting</u>.  BNC Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in BNC Class 4B shall receive its Pro Rata Share of Available Cash from BNC.

5.108    BNC Class 5 – Equity Interests in BNC.

(a)    <u>Impairment and Voting</u>.  BNC Class 5 is impaired by the Plan.  Each holder of an Equity Interest in BNC Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)   <u>Distributions</u>.   Equity Interests in BNC shall be cancelled if and when BNC is dissolved in accordance with <u>Section 7.4</u> of the Plan.   Each holder of an Equity Interest in BNC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of BNC on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against BNC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in BNC may receive its Pro Rata Share of any remaining assets in BNC.

5.109   <u>LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose Ranch</u>.

(a)   <u>Impairment and Voting</u>.   LB Rose Ranch Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 1 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB Rose Ranch on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB Rose Ranch Class 1 shall be paid by LB Rose Ranch in Cash in full.

5.110   <u>LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch</u>.

(a)   <u>Impairment and Voting</u>.   LB Rose Ranch Class 2 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 2 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB Rose Ranch Class 2 shall be satisfied by, at the option of LB Rose Ranch:   (i) payment in Cash by LB Rose Ranch in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in LB Rose Ranch Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.111   <u>LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose Ranch</u>.

(a)   <u>Impairment and Voting</u>.   LB Rose Ranch Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 3 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Each holder of an Allowed Claim in LB Rose Ranch Class 3 shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

5.112    LB Rose Ranch 4A – Affiliate Claims of LBHI against LB Rose Ranch.

        (a)    Impairment and Voting.  LB Rose Ranch Class 4A is impaired by the
Plan.   LBHI is entitled to vote to accept or reject the Plan.

        (b)    Distributions.  Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI
shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

5.113    LB Rose Ranch Class 4B – Affiliate Claims other than those of LBHI against LB
Rose Ranch.

        (a)    Impairment and Voting.  LB Rose Ranch Class 4B is impaired by the
Plan.   Each holder of an Allowed Claim in LB Rose Ranch Class 4B is entitled to vote to accept
or reject the Plan.

        (b)    Distributions.  Subject to Section 6.5(b) of the Plan, each holder of an
Allowed Claim in LB Rose Ranch Class 4B shall receive its Pro Rata Share of Available Cash
from LB Rose Ranch.

5.114    LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch.

        (a)    Impairment and Voting.  LB Rose Ranch Class 5 is impaired by the Plan.
Each holder of an Equity Interest in LB Rose Ranch Class 5 is not entitled to vote to accept or
reject the Plan and is conclusively deemed to have rejected the Plan.

        (b)    Distributions.  Equity Interests in LB Rose Ranch shall be cancelled if
and when LB Rose Ranch is dissolved in accordance with Section 7.4 of the Plan.   Each holder
of an Equity Interest in LB Rose Ranch shall neither receive nor retain any Property of the Estate
or direct interest in Property of the Estate of LB Rose Ranch on account of such Equity Interests
thereafter; *provided*, *however*, that in the event that all Allowed Claims against LB Rose Ranch
have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of
an Equity Interest in LB Rose Ranch may receive its Pro Rata Share of any remaining assets in
LB Rose Ranch.

5.115    SASCO Class 1 – Priority Non-Tax Claims against SASCO.

        (a)    Impairment and Voting.  SASCO Class 1 is impaired by the Plan.  Each
holder of an Allowed Claim in SASCO Class 1 is entitled to vote to accept or reject the Plan.

        (b)    Distributions.  Except to the extent that the holder of an Allowed Claim in
SASCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of SASCO on
account of such Claim prior to the Effective Date, on the later of the Effective Date and the date
such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed
Claim in SASCO Class 1 shall be paid by SASCO in Cash in full.

5.116    <u>SASCO Class 2 – Secured Claims against SASCO</u>.

(a)    <u>Impairment and Voting</u>.    SASCO Class 2 is impaired by the Plan.    Each holder of an Allowed Claim in SASCO Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.    Except to the extent that the holder of an Allowed Claim in SASCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in SASCO Class 2 shall be satisfied by, at the option of SASCO:   (i) payment in Cash by SASCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.    In the event an Allowed Claim in SASCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.117    <u>SASCO Class 3 – General Unsecured Claims against SASCO</u>.

(a)    <u>Impairment and Voting</u>.    SASCO Class 3 is impaired by the Plan.    Each holder of an Allowed Claim in SASCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.    Each holder of an Allowed Claim in SASCO Class 3 shall receive its Pro Rata Share of Available Cash from SASCO.

5.118    <u>SASCO Class 4A – Affiliate Claims of LBHI against SASCO</u>.

(a)    <u>Impairment and Voting</u>.    SASCO Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.    Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from SASCO.

5.119    <u>SASCO Class 4B – Affiliate Claims other than those of LBHI against SASCO</u>.

(a)    <u>Impairment and Voting</u>.    SASCO Class 4B is impaired by the Plan. Each holder of an Allowed Claim in SASCO Class 4B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.    Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in SASCO Class 4B shall receive its Pro Rata Share of Available Cash from SASCO.

5.120    <u>SASCO Class 5 – Equity Interests in SASCO</u>.

(a)    <u>Impairment and Voting</u>.    SASCO Class 5 is impaired by the Plan.    Each holder of an Equity Interest in SASCO Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    *Distributions*.    Equity Interests in SASCO shall be cancelled if and when SASCO is dissolved in accordance with Section 7.4 of the Plan.    Each holder of an Equity Interest in SASCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of SASCO on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against SASCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in SASCO may receive its Pro Rata Share of any remaining assets in SASCO.

5.121    LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080.

(a)    *Impairment and Voting*.    LB 2080 Class 1 is impaired by the Plan.    Each holder of an Allowed Claim in LB 2080 Class 1 is entitled to vote to accept or reject the Plan.

(b)    *Distributions*.    Except to the extent that the holder of an Allowed Claim in LB 2080 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 2080 on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 2080 Class 1 shall be paid by LB 2080 in Cash in full.

5.122    LB 2080 Class 2 – Secured Claims against LB 2080.

(a)    *Impairment and Voting*.    LB 2080 Class 2 is impaired by the Plan.    Each holder of an Allowed Claim in LB 2080 Class 2 is entitled to vote to accept or reject the Plan.

(b)    *Distributions*.    Except to the extent that the holder of an Allowed Claim in LB 2080 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 2080 Class 2 shall be satisfied by, at the option of LB 2080:    (i) payment in Cash by LB 2080 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.    In the event an Allowed Claim in LB 2080 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.123    LB 2080 Class 3 – General Unsecured Claims against LB 2080.

(a)    *Impairment and Voting*.    LB 2080 Class 3 is impaired by the Plan.    Each holder of an Allowed Claim in LB 2080 Class 3 is entitled to vote to accept or reject the Plan.

(b)    *Distributions*.    Each holder of an Allowed Claim in LB 2080 Class 3 shall receive its Pro Rata Share of Available Cash from LB 2080.

5.124    LB 2080 Class 4A – Affiliate Claims of LBHI against LB 2080.

(a)    *Impairment and Voting*.    LB 2080 Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI
shall receive its Pro Rata Share of Available Cash from LB 2080.

5.125   LB 2080 Class 4B – Affiliate Claims other than those of LBHI against LB 2080.

(a)   Impairment and Voting.   LB 2080 Class 4B is impaired by the Plan.
Each holder of an Allowed Claim in LB 2080 Class 4B is entitled to vote to accept or reject the
Plan.

(b)   Distributions.   Subject to Section 6.5(b) of the Plan, each holder of an
Allowed Claim in LB 2080 Class 4B shall receive its Pro Rata Share of Available Cash from LB
2080.

5.126   LB 2080 Class 5 – Equity Interests in LB 2080.

(a)   Impairment and Voting.   LB 2080 Class 5 is impaired by the Plan.   Each
holder of an Equity Interest in LB 2080 Class 5 is not entitled to vote to accept or reject the Plan
and is conclusively deemed to have rejected the Plan.

(b)   Distributions.   Equity Interests in LB 2080 shall be cancelled if and when
LB 2080 is dissolved in accordance with Section 7.4 of the Plan.   Each holder of an Equity
Interest in LB 2080 shall neither receive nor retain any Property of the Estate or direct interest in
Property of the Estate of LB 2080 on account of such Equity Interests thereafter; *provided*,
*however*, that in the event that all Allowed Claims against LB 2080 have been satisfied in full in
accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 2080
may receive its Pro Rata Share of any remaining assets in LB 2080.

5.127   Merit Class 1 – Priority Non-Tax Claims against Merit.

(a)   Impairment and Voting.   Merit Class 1 is impaired by the Plan.   Each
holder of an Allowed Claim in Merit Class 1 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in
Merit Class 1 agrees to less favorable treatment or has been paid by or on behalf of Merit on
account of such Claim prior to the Effective Date, on the later of the Effective Date and the date
such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed
Claim in Merit Class 1 shall be paid by Merit in Cash in full.

5.128   Merit Class 2 – Secured Claims against Merit.

(a)   Impairment and Voting.   Merit Class 2 is impaired by the Plan.   Each
holder of an Allowed Claim in Merit Class 2 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in
Merit Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Merit Class
2 shall be satisfied by, at the option of Merit:   (i) payment in Cash by Merit in full on the later of
the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is
practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to

the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in Merit Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.129   <u>Merit Class 3 – General Unsecured Claims against Merit</u>.

(a)   <u>Impairment and Voting</u>.   Merit Class 3 is impaired by the Plan.   Each holder of an Allowed Claim in Merit Class 3 is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Each holder of an Allowed Claim in Merit Class 3 shall receive its Pro Rata Share of Available Cash from Merit.

5.130   <u>Merit Class 4A – Affiliate Claims of LBHI against Merit</u>.

(a)   <u>Impairment and Voting</u>.   Merit Class 4A is impaired by the Plan.   LBHI is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from Merit.

5.131   <u>Merit Class 4B – Affiliate Claims other than those of LBHI against Merit</u>.

(a)   <u>Impairment and Voting</u>.   Merit Class 4B is impaired by the Plan.   Each holder of an Allowed Claim in Merit Class 4B is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.   Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in Merit Class 4B shall receive its Pro Rata Share of Available Cash from Merit.

5.132   <u>Merit Class 5 – Equity Interests in Merit</u>.

(a)   <u>Impairment and Voting</u>.   Merit Class 5 is impaired by the Plan.   Each holder of an Equity Interest in Merit Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)   <u>Distributions</u>.   Equity Interests in Merit shall be cancelled if and when Merit is dissolved in accordance with <u>Section 7.4</u> of the Plan.   Each holder of an Equity Interest in Merit shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of Merit on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against Merit have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in Merit may receive its Pro Rata Share of any remaining assets in Merit.

5.133    Preferred Somerset Class 1 – Priority Non-Tax Claims against Preferred Somerset.

(a)    Impairment and Voting.  Preferred Somerset Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in Preferred Somerset Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in Preferred Somerset Class 1 agrees to less favorable treatment or has been paid by or on behalf of Preferred Somerset on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in Preferred Somerset Class 1 shall be paid by Preferred Somerset in Cash in full.

5.134    Preferred Somerset Class 2 – Secured Claims against Preferred Somerset.

(a)    Impairment and Voting.  Preferred Somerset Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in Preferred Somerset Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in Preferred Somerset Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Preferred Somerset Class 2 shall be satisfied by, at the option of Preferred Somerset:  (i) payment in Cash by Preferred Somerset in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in Preferred Somerset Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.135    Preferred Somerset Class 3 – General Unsecured Claims against Preferred Somerset.

(a)    Impairment and Voting.  Preferred Somerset Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in Preferred Somerset Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in Preferred Somerset Class 3 shall receive its Pro Rata Share of Available Cash from Preferred Somerset.

5.136    Preferred Somerset Class 4A – Affiliate Claims of LBHI against Preferred Somerset.

(a)    Impairment and Voting.  Preferred Somerset Class 4A is impaired by the Plan.  LBHI is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Sections 6.5(b) and 6.5(c) of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from Preferred Somerset.

5.137    Preferred Somerset Class 4B – Affiliate Claims other than those of LBHI against Preferred Somerset.

(a)    Impairment and Voting.    Preferred Somerset Class 4B is impaired by the Plan.    Each holder of an Allowed Claim in Preferred Somerset Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.5(b) of the Plan, each holder of an Allowed Claim in Preferred Somerset Class 4B shall receive its Pro Rata Share of Available Cash from Preferred Somerset.

5.138    Preferred Somerset Class 5 – Equity Interests in Preferred Somerset.

(a)    Impairment and Voting.    Preferred Somerset Class 5 is impaired by the Plan.    Each holder of an Equity Interest in Preferred Somerset Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    Distributions.    Equity Interests in Preferred Somerset shall be cancelled if and when Preferred Somerset is dissolved in accordance with Section 7.4 of the Plan.    Each holder of an Equity Interest in Preferred Somerset shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of Preferred Somerset on account of such Equity Interests thereafter; provided, however, that in the event that all Allowed Claims against Preferred Somerset have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in Preferred Somerset may receive its Pro Rata Share of any remaining assets in Preferred Somerset.

5.139    Somerset Class 1 – Priority Non-Tax Claims against Somerset.

(a)    Impairment and Voting.    Somerset Class 1 is impaired by the Plan.    Each holder of an Allowed Claim in Somerset Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in Somerset Class 1 agrees to less favorable treatment or has been paid by or on behalf of Somerset on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in Somerset Class 1 shall be paid by Somerset in Cash in full.

5.140    Somerset Class 2 – Secured Claims against Somerset.

(a)    Impairment and Voting.    Somerset Class 2 is impaired by the Plan.    Each holder of an Allowed Claim in Somerset Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in Somerset Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Somerset Class 2 shall be satisfied by, at the option of Somerset:    (i) payment in Cash by

Somerset in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in Somerset Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

      5.141   <u>Somerset Class 3 – General Unsecured Claims against Somerset</u>.

      (a)    <u>Impairment and Voting</u>.  Somerset Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in Somerset Class 3 is entitled to vote to accept or reject the Plan.

      (b)    <u>Distributions</u>.  Each holder of an Allowed Claim in Somerset Class 3 shall receive its Pro Rata Share of Available Cash from Somerset.

      5.142   <u>Somerset Class 4A – Affiliate Claims of LBHI against Somerset</u>.

      (a)    <u>Impairment and Voting</u>.  Somerset Class 4A is impaired by the Plan. LBHI is entitled to vote to accept or reject the Plan.

      (b)    <u>Distributions</u>.  Subject to <u>Sections 6.5(b)</u> and <u>6.5(c)</u> of the Plan, LBHI shall receive its Pro Rata Share of Available Cash from Somerset.

      5.143   <u>Somerset Class 4B – Affiliate Claims other than those of LBHI against Somerset</u>.

      (a)    <u>Impairment and Voting</u>.  Somerset Class 4B is impaired by the Plan. Each holder of an Allowed Claim in Somerset Class 4B is entitled to vote to accept or reject the Plan.

      (b)    <u>Distributions</u>.  Subject to <u>Section 6.5(b)</u> of the Plan, each holder of an Allowed Claim in Somerset Class 4B shall receive its Pro Rata Share of Available Cash from Somerset.

      5.144   <u>Somerset Class 5 – Equity Interests in Somerset</u>.

      (a)    <u>Impairment and Voting</u>.  Somerset Class 5 is impaired by the Plan.  Each holder of an Equity Interest in Somerset Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

      (b)    <u>Distributions</u>.  Equity Interests in Somerset shall be cancelled if and when Somerset is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in Somerset shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of Somerset on account of such Equity Interests thereafter; *provided*, *however*, that in the event that all Allowed Claims against Somerset have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in Somerset may receive its Pro Rata Share of any remaining assets in Somerset.

## ARTICLE VI
## Implementation of the Plan

6.1     <u>Plan Administrator</u>.

(a)     <u>Appointment</u>.  LBHI shall serve as Plan Administrator for each of the
Debtors.

(b)     <u>Authority</u>.  Subject to <u>Section 7.2(c)</u> of the Plan, the Plan Administrator
shall have the authority and right on behalf of each of the Debtors, without the need for
Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all
provisions of the Plan, including, without limitation, to:

(i)     except to the extent Claims have been previously Allowed, control
and effectuate the Claims reconciliation process, including to object to, seek to
subordinate, compromise or settle any and all Claims against the Debtors subject
to Bankruptcy Court approval; *provided, however*, that where the Debtors have
authorization to compromise or settle any Claims against the Debtors under a
Final Order, including, without limitation, the Derivatives Procedures Order, the
Plan Administrator shall be authorized to compromise or settle such Claims after
the Effective Date in accordance with and subject to such Final Order;

(ii)     make Distributions to holders of Allowed Claims in accordance
with the Plan;

(iii)     exercise its reasonable business judgment to direct and control the
wind down, liquidation, sale and/or abandoning of the assets of the Debtors and/or
Debtor-Controlled Entities under the Plan and in accordance with applicable law
as necessary to maximize Distributions to holders of Allowed Claims;

(iv)     prosecute all Litigation Claims, including, without limitation,
Avoidance Actions, on behalf of the Debtors, and to elect not to pursue any
Litigation Claims and whether and when to compromise, settle, abandon, dismiss,
or otherwise dispose of any such Litigation Claims, as the Plan Administrator
may determine is in the best interests of the Debtors;

(v)     make payments to existing professionals who will continue to
perform in their current capacities;

(vi)     retain professionals to assist in performing its duties under the
Plan;

(vii)     maintain the books and records and accounts of the Debtors;

(viii)     invest Cash of the Debtors, including any Cash proceeds realized
from the liquidation of any assets of the Debtors, including any Litigation Claims,
and any income earned thereon;

(ix)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)    administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) represent the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required hereunder, by any Governmental Unit or applicable law;

(xii)    determine whether to create a Liquidating Trust for the assets of a Debtor or Debtor-Controlled Entity pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

(xiii)    pay statutory fees in accordance with Section 15.7 of the Plan; and

(xiv)    perform other duties and functions that are consistent with the implementation of the Plan.

(c)    Indemnification of Plan Administrator.    Each of the Debtors shall indemnify and hold harmless LBHI solely in its capacity as the Plan Administrator for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence, willful misconduct or criminal conduct.

6.2    LAMCO.    At the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan.  Ownership and ultimate decision making authority with respect to each of the Debtor's assets after the Effective Date will be vested in the applicable Debtor.

6.3    Debtor Allocation Agreement.    The Debtor Allocation Agreement shall become effective on the Effective Date.  The Debtor Allocation Agreement shall, among other things, provide for an Allowed Administrative Expense Claim of LBSF against LBHI in the amount of $300 million as an allocation of administrative costs.  Such Claim shall be satisfied by (a) first, setoff against LBHI's Allowed Administrative Expense Claim against LBSF as of the Effective Date, (b) second, setoff against LBHI's claims arising after the Effective Date for reimbursement by LBSF for post-Effective Date administration costs after reconciliation on a quarterly basis and, if necessary, (c) third, payment of the balance in Cash up to $300 million.

6.4    <u>Redistribution of Subordinated Claims Recoveries</u>.  To give effect to agreements
of holders of Subordinated Claims, all Distributions under the Plan made by LBHI shall be
calculated as if each holder of an Allowed Claim in LBHI Class 10A, LBHI Class 10B and LBHI
Class 10C were to receive its Pro Rata Share of Available Cash from LBHI, and, in the case of
each holder of an Allowed Claim in LBHI Class 10A and LBHI Class 10B, its Pro Rata Share of
the Subordinated Class 10C Distribution; *provided*, *however*, that:

(a)    the Subordinated Class 10A Distribution shall be automatically distributed
to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to <u>Sections 4.3(b)</u>
and <u>4.4(b)</u> of the Plan, respectively, until all such Claims are satisfied in full;

(b)    the Subordinated Class 10B Distribution shall be automatically distributed
to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B and LBHI Class
5 pursuant to <u>Sections 4.3(b)</u>, <u>4.4(b)</u>, <u>4.5(b)</u> and <u>4.6(b)</u> of the Plan, respectively, until all such
Claims are satisfied in full;

(c)    the Subordinated Class 10C Distribution shall be automatically distributed
to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5,
LBHI Class 10A and LBHI Class 10B pursuant to <u>Sections 4.3(b)</u>, <u>4.4(b)</u>, <u>4.5(b)</u>, <u>4.6(b)</u>, <u>4.13(b)</u>
and <u>4.14(b)</u> of the Plan, respectively, until all such Claims are satisfied in full; *provided*,
*however*, that any portion of the Subordinated Class 10C Distribution payable to holders of
Allowed Claims in LBHI Class 10A shall be automatically distributed to holders of Allowed
Claims in LBHI Class 3 and LBHI Class 4A pursuant to <u>Section 6.4(a)</u> of the Plan until all such
Claims are satisfied in full; *provided*, *further*, that any portion of the Subordinated Class 10C
Distribution payable to holders of Allowed Claims in LBHI Class 10B shall be automatically
distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, and
LBHI Class 5 pursuant to <u>Section 6.4(b)</u> of the Plan until all such Claims are satisfied in full.

6.5    <u>Plan Settlement</u>.  Pursuant to section 1123 of the Bankruptcy Code and
Bankruptcy Rule 9019, the Plan incorporates a proposed compromise and settlement of
numerous inter-Debtor, Debtor-Creditor and inter-Creditor claims designed to achieve an
economic settlement of Claims against all of the Debtors and an efficient resolution of the
Chapter 11 Cases.  The Plan constitutes a settlement of potential litigation of issues, including,
without limitation, the potential substantive consolidation of the Lehman enterprise, the validity
and enforceability of certain Affiliate Guarantee Claims, the allowance of certain Affiliate
Claims, including Intercompany Funding Balances owed to LBHI by Subsidiary Debtors, the
potential equitable, contractual or statutory subordination of certain Claims and the ownership
and rights of various Debtors and their Affiliates with respect to certain assets.  The Plan
settlement will be implemented as follows:

(a)    Each holder of an Allowed Claim in an LBHI Class 3 or LBHI Class 7
shall be entitled to receive its Pro Rata Share of the Plan Adjustment until such Allowed Claims
are satisfied in full in accordance with <u>Sections 4.3(b)</u> and <u>4.9(b)</u> of the Plan, as applicable.  In
the event that holders of Allowed Claims in LBHI Class 3 or LBHI Class 7 are satisfied in full,
Distributions (including the Plan Adjustment), if any, shall continue to be made on account of
such Claims as if they had not been satisfied in full, *provided* that such Distributions shall be
made to each Participating Debtor for the exclusive benefit of holders of Allowed Claims in such

Participating Debtor's Contributing Classes and, in the case of LBHI, LBHI Class 9A or, in the case of LBSF, LBSF Class 4B, in proportion to, and only to the extent of, its Plan Adjustment contribution.

(b)     Each holder of a Senior Affiliate Claim, Senior Affiliate Guarantee Claim or Affiliate Claim against a Debtor shall have an Allowed Claim, as applicable, against that Debtor in an amount that is agreed to by the applicable Debtor and an Affiliate or otherwise determined by the Bankruptcy Court.

(i)     The Debtors' Claims Schedule is incorporated in the Plan and shall become effective on the Effective Date.  Senior Affiliate Claims, Senior Affiliate Guarantee Claims and Affiliate Claims of a Debtor against another Debtor shall be allowed in the net amounts set forth on pages 1 and 2 of the Debtors' Claims Schedule.

(ii)     The Bankhaus Settlement Agreement is incorporated in the Plan and shall become effective on the Effective Date.  The Bankhaus Settlement Agreement provides for the allowance of certain Claims asserted by LBB against certain of the Debtors, the exchange of releases between the Debtors and certain Debtor-Controlled Entities that are parties to the Bankhaus Settlement Agreement and LBB and other material terms and conditions, all as more fully set forth and provided for in the Bankhaus Settlement Agreement.

(iii)     The LBT Settlement Agreement is incorporated in the Plan.   The LBT Settlement Agreement provides for the allowance of certain claims of LBT, including, without limitation, an Allowed Senior Affiliate Claim of LBT against LBHI in LBHI Class 4A in the amount of $34,548,000,000, the allowance of certain Claims asserted by certain Debtors against LBT, the exchange of mutual releases between the Debtors and LBT and other material terms and conditions, all as more fully set forth in the LBT Settlement Agreement. Additionally, pursuant to the LBT Settlement Agreement, Sections 8.10, 8.14, 8.15 and 13.8 of the Plan shall not apply to LBT or the Allowed Senior Affiliate Claim of LBT and holders of Allowed Guarantee Claims for which LBT is the Primary Obligor shall not be subject to Section 8.13(e) of the Plan.

(iv)     LBSN shall not be subject to Sections 8.10, 8.14 and 8.15 of the Plan.

(v)     The Hong Kong Settlement Agreement is incorporated in the Plan. The Hong Kong Settlement Agreement provides for the allowance of certain Claims asserted by certain Hong Kong Lehman Entities In Liquidation against certain of the Debtors, the allowance of certain Claims asserted by the Debtors against certain Hong Kong Lehman Entities In Liquidation, the exchange of mutual releases between the Debtors and the Hong Kong Lehman Entities In Liquidation and other material terms and conditions, all as more fully set forth and provided for in the Hong Kong Settlement Agreement.

(vi)     The Singapore Settlement Agreement is incorporated in the Plan. The Singapore Settlement Agreement provides for the allowance of certain Claims asserted by the Lehman Singapore Entities against certain of the Debtors and certain Debtor-Controlled Entities, the allowance of certain Claims asserted by the Debtors and the Debtor-Controlled

Entities against certain Lehman Singapore Entities, the exchange of mutual releases between the Debtors and the Debtor-Controlled Entities and the Lehman Singapore Entities and other material terms and conditions, all as more fully set forth and provided for in the Singapore Settlement Agreement.

(vii)    Any settlement agreement entered into among any of the Debtors and any Non-Controlled Affiliate that is contained in the Plan Supplement is incorporated in the Plan and shall become effective in accordance with its terms.

(c)    For purposes of the calculation of the Distributions to be made to LBHI from a Subsidiary Debtor, including with respect to setoff of a Subsidiary Debtor's Allowed Claim against LBHI, only 80% of the Intercompany Funding Balance due to LBHI from a Subsidiary Debtor shall be included in such calculation, as reflected of the Debtors' Claims Schedule, and LBHI shall participate in Distributions against a Subsidiary Debtor in the amounts and to the extent set forth on page 4 of the Debtors' Claims Schedule.

(d)    Only holders of Allowed Claims in LBSF Class 4A and LBSF Class 5C shall be entitled to receive the LBSF Additional Settlement Amount in accordance with Sections 5.21(b) and 5.25(b), respectively.   Each of the other Participating Debtors and each Racers Trust acknowledges and agrees that it is not a holder in LBSF Class 4A and LBSF Class 5C and it shall not receive a Distribution in respect of the LBSF Additional Settlement Amount.

(e)    The LCPI Settlement Amount shall be automatically distributed to holders of Allowed Claims in LCPI Class 4A until such Allowed Claims are satisfied in full in accordance with Section 5.4(b) of the Plan.   In the event holders of Allowed Claims in LCPI Class 4A are satisfied in full, Distributions, if any, shall continue to be made on account of such Claims as if they had not been satisfied in full, *provided* that such Distributions shall be made to LCPI Class 5A.

(f)    The LBSF Settlement Amount shall be automatically distributed to holders of Allowed Claims in LBSF Class 4A until such Allowed Claims are satisfied in full in accordance with Section 5.21(b) of the Plan.   In the event holders of Allowed Claims in LBSF Class 4A are satisfied in full, Distributions, if any, shall continue to be made on account of such Claims as if they had not been satisfied in full, *provided* that such Distributions shall be made to LBSF Class 5A.

(g)    The Racers 2007-A Trust shall have (A) an Allowed General Unsecured Claim against LCPI in LCPI Class 4B, subject to the Plan Adjustment, in the amount $5.0 billion, (B) an Allowed General Unsecured Claim against LBSF in LBSF Class 4B, subject to the Racers Adjustment, in the amount of $1,947,735,000 and (C) an Allowed Third-Party Guarantee Claim against LBHI in LBHI Class 9B, subject to the Racers Adjustment, in the amount of $1,947,735,000.   The Racers 2007-A Trust shall not receive aggregate Distributions on account of all such Allowed Claims in excess of the Allowed amount of its General Unsecured Claim against LCPI; *provided* that, to the extent the Allowed Claims of the Racers 2007-A Trust are satisfied in full in accordance with the foregoing and Section 8.13 of the Plan, LCPI or LBHI, as applicable, shall be subrogated to the Allowed Claim of the Racers 2007-A Trust against LBSF pursuant to Section 8.14 of the Plan.   All other Claims of the Racers 2007-A

Trust and all Claims of the Racers MM Trust against the Debtors shall be disallowed and subject to Sections 13.4 and 13.5 of the Plan.

(h)     The Fenway Claim shall be Allowed against LCPI as General Unsecured Claims in LCPI Class 4B, subject to the Plan Adjustment, in the aggregate net amount of $230 million.

(i)     The Debtors shall apply the Structured Securities Valuation Methodologies to all Structured Securities Claims held by any PSA Creditor in determining the Allowed amount of such Claims.

(j)     Any settlement agreement entered into among any of the Debtors and any Creditor that is contained in the Plan Supplement is incorporated in the Plan and shall become effective in accordance with its terms.

6.6     Closing of Chapter 11 Case.  After the Chapter 11 Case of a Debtor has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.7     Indenture Trustee and Creditors' Committee Members Fees.  Subject to entry of the Confirmation Order, the reasonable fees and expenses (including attorneys fees) of (a) the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent incurred and unpaid by a Debtor prior to the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement upon application to and subject to approval of the Bankruptcy Court, and (ii) to the extent incurred after the Effective Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

## ARTICLE VII
## Corporate Governance

7.1     Corporate Form.  On the Effective Date, each of the Debtors shall maintain its current corporate form.

7.2     LBHI Board of Directors and Officers.

(a)     Following the Effective Date, the board of directors of LBHI shall consist of seven (7) persons.  The initial board of directors of LBHI shall be selected by the Director Selection Committee.  Each of the initial directors of LBHI shall have initial and, if reelected, subsequent terms of one year.  A director of LBHI may be removed from office by the Plan Trust with cause.  Subject to death, incapacity, resignation or removal for cause and reelection by the Plan Trust in accordance with the Plan Trust Agreement, the initial directors shall serve as the board of directors of LBHI through the Closing Date.  Upon expiration of the term of a director of LBHI or his or her resignation, death or removal for cause, the election of such

director or a replacement director shall be determined by action of the Plan Trust as sole shareholder of LBHI.

    (b)  The Director Selection Committee shall be comprised of the following nine (9) members:

       (i)  Rutger Schimmelpenninck (in his capacity as co-bankruptcy trustee (curatoren) for LBT).

       (ii)  the LBB Administrator;

       (iii)  the Debtors;

       (iv)  each of the co-chairs of the Creditors' Committee (each of whom shall exercise his or her independent business judgment in the selection of directors and not act at the direction of the Creditors' Committee);

       (v)  an individual chosen by the Opco Plan Proponents who are PSA Creditors;

       (vi)  an individual chosen by the members of the group of creditors commonly referred to as the Ad Hoc Group of Lehman Brothers Creditors that are PSA Creditors; and

       (vii)  two individuals chosen collectively by the following PSA Creditors:  Carval Investors UK Limited, Davidson Kempner Capital Management LLC, Elliott Management Corporation, King Street Capital Management LP, Och-Ziff Capital Management Group LLC, The Baupost Group LLC and Varde Partners LP.

    (c)  Following the Effective Date, the board of directors of LBHI shall, in addition to its other duties, be responsible for (i) instructing and supervising the Debtors and the Plan Administrator with respect to their responsibilities under the Plan; (ii) reviewing and approving the prosecution of adversary and other proceedings, if any, including approving proposed settlements thereof; (iii) reviewing and approving objections to and proposed settlements of Disputed Claims; and (iv) performing such other duties that may be necessary and proper to assist the Debtors and the Plan Administrator and their retained professionals.  In its discretion, following the Effective Date, the board of directors of LBHI may also delegate any duties assigned to the Plan Administrator to any other committee, entity or individual.

    7.3  <u>Subsidiary Debtor Post-Effective Date Management</u>.

    (a)  Following the Effective Date, the board of directors of LBSF and LCPI shall each consist of three (3) individuals as follows:

       (i)  an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors;

(ii)     an individual who is a concurrently serving member of the LBHI board of directors that is selected by the LBHI board of directors and, in the case of LBSF or LCPI, acceptable to the Opco Plan Proponents who are PSA Creditors; and

(iii)     an individual who is selected by the individuals appointed pursuant to (i) and (ii) of this section and who is independent from LBHI, the members of the Director Selection Committee and, in the case of LBSF, LBSF, or in the case of LCPI, LCPI.

Each of the initial directors of LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  A director of LBSF and LCPI may be removed from office by Lehman ALI (as directed by LBHI) only for cause.  Upon the resignation, death, incapacity or removal for cause of a director of LBSF or LCPI, the election of a replacement director shall be determined by action of Lehman ALI (as directed by LBHI); *provided* that at all times the LBSF and LCPI boards of directors must be comprised of individuals that satisfy the requirements of <u>Section 7.3(a)</u> hereof.

(b)     Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF and LCPI shall consist of one (1) individual who shall be a concurrently serving member of the LBHI board of directors.  With respect to a Subsidiary Debtor incorporated or formed under the laws of a jurisdiction outside of the United States, if the laws of such foreign jurisdiction require the appointment of more than one (1) director or manager to the board of directors or managers of such Subsidiary Debtor or of a director or manager that is not an individual concurrently serving as a member of the LBHI board of directors, such additional or alternative directors or managers shall be appointed by the LBHI board of directors.  Each of the initial directors or managers of the Subsidiary Debtors other than LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals.  LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause.  Notwithstanding the foregoing, any Subsidiary Debtor that is a limited partnership shall continue to be managed by its general partner.

7.4     <u>Plan Trust</u>.

(a)     The Plan Trust shall be established on the Effective Date and shall continue in existence until the Closing Date.  The Plan Trustees shall be the members of the Director Selection Committee.  Each of the Plan Trustees shall continue in such capacity until he or she ceases to be a Plan Trustee in accordance with the terms and conditions set forth in the Plan Trust Agreement.  In the event of a vacancy in the office of Plan Trustee, the remaining Plan Trustees shall by majority vote of the remaining Plan Trustees fill the vacancy if in their discretion the circumstances of the Plan Trust warrant doing so.  The Plan Trust shall exercise voting rights associated with the Plan Trust Stock in furtherance of the liquidation of the Debtors and compliance with the provisions of the Plan.  The sole purpose of the Plan Trust shall be to hold the Plan Trust Stock as provided in <u>Section 4.17(b)</u>.  The Plan Trust shall be governed, in

accordance with the Plan Trust Agreement, by the Plan Trustees.  Any distribution from assets of LBHI that is made to the Plan Trust as holder of such share shall be for the benefit of the holders of Equity Interests in accordance with <u>Section 4.17(b)</u>.

(b)    The Plan Trust Agreement shall provide that (i) at such time as a vacancy on the board of directors of LBHI is to be filled or there is a vote on the election of a director upon the expiration of a director's term of office, the Plan Trust shall fill such vacancy by majority vote of the Plan Trustees and (ii) at all other times, the Plan Trust may act, by majority vote of the Plan Trustees, to remove and replace directors, with cause.

7.5    <u>Corporate Existence</u>.    After the Effective Date, the Plan Administrator may decide to (a) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (b) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor, dissolve such Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, the transfer of all or part of the assets of such Debtor to a Liquidating Trust in accordance with <u>Article X</u> of the Plan), or (c) dissolve any Debtor-Controlled Entity and complete the winding up of such Debtor-Controlled Entity in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Debtor-Controlled Entity.

7.6    <u>Wind-Down</u>.    After the Effective Date, pursuant to the Plan, the Plan Administrator shall wind-down, sell and otherwise liquidate assets of the Debtors and/or Debtor-Controlled Entities in accordance with <u>Section 6.1(b)(iii)</u> of the Plan.  The wind-down, sale and liquidation of each such Debtor's assets (as determined for federal income tax purposes) shall occur over a period of three years after the Effective Date (it being understood that such liquidation may include the transfer of all or part of the assets of such Debtor to one or more Liquidating Trusts within the meaning of Treas. Reg. § 301.7701-4); *provided*, *however*, that the wind-down and liquidation may extend over a longer period of time if the Debtors receive a private letter ruling or other equivalent guidance from the IRS from which the Plan Administrator reasonably concludes that the continued wind-down and liquidation should not result in a reduction or limitation of the Debtors' tax attributes for federal income tax purposes that materially impairs the expected actual use of such tax attributes.

7.7    <u>Certificate of Incorporation and By-Laws</u>.    As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended certificate and by-laws of such Debtor (if any) shall be contained in the Plan Supplement.

7.8    <u>Stock Trading Restrictions</u>.    The restrictions imposed by the Stock Trading Restrictions Order shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

# ARTICLE VIII
## Provisions Regarding Voting and Distributions Under the Plan

8.1    Voting of Claims.    Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III, Article IV and Article V of the Plan shall be entitled to vote separately to accept or reject the Plan as provided in an order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

8.2    Nonconsensual Confirmation.    If any impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 15.6 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.    With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Code confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

8.3    Distributions of Available Cash.    On the Effective Date, or as soon thereafter as practicable, after the satisfaction in full of (or the establishment of reserves sufficient for the satisfaction in full of) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Debtor determines to pay such Allowed Secured Claim in Cash) against a Debtor, each Debtor shall make a Distribution of its Available Cash in accordance with the provisions of the Plan to holders of Allowed Claims against such Debtor.    After the initial Distribution, each Debtor shall make Distributions of Available Cash in accordance with the Plan to holders of Allowed Claims against such Debtor semi-annually on March 30 and September 30 of each year, provided that each such Distribution in the aggregate is not less than $10,000,000 of such Debtor's Available Cash.    Notwithstanding the foregoing, the Plan Administrator may determine, in its sole discretion (a) to make a Distribution that is less than $10,000,000 in the aggregate of a Debtor's Available Cash, or (b) not to make a Distribution to the holder of an Allowed Claim (other than a Claim that has become Allowed pursuant to clauses (b), (d) and (e) of Section 1.4 of the Plan) on the basis that it has not yet determined whether to object to such Claim and such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator determines (i) not to object to such Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed by a Final Order.    To the extent that a Liquidating Trust is established for a Debtor in accordance with Article X of the Plan, any Distributions to be made to holders of Allowed Claims thereafter shall be made by the Liquidating Trustee to such holders as holders of Liquidating Trust Interests in accordance with the provisions of the Plan.    Distributions of Cash on account of such Liquidating Trust Interests shall be made in accordance with Section 10.7 of the Plan.

8.4    Disputed Claims Holdback.    From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Plan Administrator shall, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, retain from Available Cash an aggregate amount equal to the Pro Rata Share of the

Distributions that would have been made to each holder of a Disputed Claim if such Disputed Claim were an Allowed Claim against such Debtor in an amount equal to the least of (a) the filed amount of such Disputed Claim, (b) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claim, and (c) such other amount as may be agreed upon by the holder of such Disputed Claim and the Plan Administrator.  On the date of the first Distribution that is at least forty-five (45) days (or such fewer days as may be agreed between the applicable Debtor and the holder of the applicable Disputed Claim) after the date on which a Disputed Claim becomes an Allowed Claim against a Debtor, such Debtor shall remit to the holder of such Allowed Claim Available Cash equal to the amount that would have been distributed from the Effective Date through and including the date of such Distribution on account of such Allowed Claim had such Claim been Allowed as of the Effective Date, together with any interest earned on the lesser of (i) such amount and (ii) the amount retained with respect to such Claim pursuant to this provision, in each case, but only to the extent that such interest is attributable to the amount of the Allowed Claim; *provided*, that (x) such amount shall be paid first out of the Available Cash retained on account of such Allowed Claim and second out of Available Cash other than Available Cash retained on account of other Disputed Claims and (y) if the amount available for Distribution pursuant to the foregoing clause (x) is insufficient to remit all Distributions required to be made to such holder pursuant to this sentence, such holder shall receive the amount of such insufficiency on the next subsequent date(s) of Distribution before the holders of any other Claims against such Debtor receive any further Distributions out of Available Cash (other than Available Cash retained on account of other Disputed Claims) from such Debtor.  To the extent that a Disputed Claim against a Debtor is disallowed by Final Order or becomes an Allowed Claim in an amount less than the amount retained with respect to such Claim pursuant to this provision, the amount that would have been distributed on account of such Disputed Claim, or the excess of the amount of Available Cash that would have been distributed on account of such Disputed Claim over the amount of Available Cash actually distributed on account of such Disputed Claim, shall become Available Cash for Distributions to the holders of Allowed Claims.   Nothing in this <u>Section 8.4</u> of the Plan shall preclude any holder of a Disputed Claim from seeking, on notice to the Plan Administrator, an order of the Bankruptcy Court in respect of or relating to the amount retained with respect to such holder's Disputed Claim.  Unless otherwise ordered by the Bankruptcy Court, Available Cash retained on account of Disputed Claims shall not be used by, on behalf of or for the benefit of a Debtor for operating expenses, costs or any purpose other than as set forth in this section.  If the Plan Administrator determines, in its sole discretion, that the value of a Debtor's assets (other than such Debtor's Available Cash) exceeds the amount of Available Cash necessary to be retained pursuant to this section on account of Disputed Claims against such Debtor, the Plan Administrator may, subject to Bankruptcy Court approval, on proper notice to all holders of Disputed Claims against such Debtor, release such Available Cash for Distribution to holders of Allowed Claims and retain in, lieu thereof, such Debtor's non-Cash assets to satisfy its Disputed Claims if such Claims become Allowed Claims.

8.5    <u>Minimum Distribution and Manner of Payment</u>.  Other than with respect to a Convenience Claim or Convenience Guarantee Claim, no payment of Cash of less than $500 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor unless a request therefor is made in writing to the Plan Administrator.  Any payment of Cash made

pursuant to the Plan may be made at the option of the Plan Administrator either by check or by wire transfer.

8.6    <u>Distributions Free and Clear</u>.    Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

8.7    <u>Delivery of Distributions and Undeliverable Distributions</u>.    Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of Claim filed by a holder of an Allowed Claim, (b) in another writing notifying the Plan Administrator (at the addresses set forth in <u>Section 15.12</u>) or the Court appointed claims agent of a change of address or (c) in the notice filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3001(e) to the extent a Claim has been transferred.    If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.    All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.    Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the applicable Debtor as Available Cash for Distributions to the holders of Allowed Claims, and any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against such Debtor or its respective property.

8.8    <u>Withholding and Reporting Requirements</u>.    In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator or the Liquidating Trustee (as applicable) shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding or reporting requirements.    All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as distributed to such holders. Notwithstanding the above, each holder of an Allowed Claim or Liquidating Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.    The Plan Administrator or the Liquidating Trustee (as applicable), has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.    The Plan Administrator or the Liquidating Trustee (as applicable), may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim or Liquidating Trust Interest provide a completed Form W-8, W-9 and/or other tax information deemed necessary in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable to each such holder, provided that if the Plan Administrator or Liquidating Trustee (as applicable) makes such a request and the holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the applicable Debtor or Liquidating Trust and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor, Liquidating Trust, or its respective property.

8.9    <u>Time Bar to Cash Payment Rights</u>.    Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.    Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90 day period following the date of issuance of such check.    Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor and its property.

8.10    <u>Setoffs and Recoupment</u>.    Except as otherwise agreed by a Debtor, any Debtor may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtor may have against the claimant; *provided, however*, that the claimant shall be served with written notice of the proposed setoff or recoupment at least twenty-eight (28) days prior to exercising any asserted setoff or recoupment right, and, if such claimant serves a written objection to such asserted setoff or recoupment on or before twenty-eight (28) days of receipt of such written notice, (i) the objection shall be deemed to initiate a contested matter governed by, *inter alia*, Bankruptcy Rule 9014 and Local Rules 9014-1 and 9014-2, (ii) nothing herein shall affect the respective burden of each party in connection with such contested matter, and (iii) the Debtor shall not proceed with the asserted setoff or recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such objection but the Debtor may withhold such payment pending resolution of such objection; *provided, further,* that neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

8.11    <u>Claims Register</u>.    The register of Claims maintained by the Debtors shall remain open after the Effective Date and the Debtors and Plan Administrator shall recognize any transfer of Claims at any time thereafter, *provided* that for purposes of each Distribution, the Debtors and the Plan Administrator will not recognize any transfer during the period commencing thirty (30) calendar days prior to a Distribution Date.    Except as otherwise provided in the Plan, any transfer of a Claim, whether occurring prior to or after the Confirmation Date, shall not affect or alter the classification and treatment of such Claim under the Plan and any such transferred Claim shall be subject to classification and treatment under the Plan as if such Claim was held by the transferor who held such Claim on the Commencement Date.

8.12    <u>Allocation of Distributions</u>.    Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

8.13    <u>Maximum Distribution</u>.

(a)    An (i) Allowed Claim that receives Distributions (excluding Distributions contributed to the Plan Adjustment on account of such Allowed Claim) in the Allowed amount

of such Claim or (ii) Allowed Guarantee Claim that receives Distributions (excluding
Distributions contributed to the Plan Adjustment on account of such Allowed Guarantee Claim)
that combined with Distributions or other consideration provided on the corresponding Primary
Claim (excluding Distributions contributed to the Plan Adjustment on account of such Primary
Claim) equal the Allowed amount of such Guarantee Claim (or such amount as may be agreed to
by a holder and the Debtors) shall, in each case, be deemed satisfied in full as to such Allowed
Claim or Allowed Guarantee Claim against the applicable Debtor.  To the extent that an
Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future
Distributions or consideration on account of the corresponding Primary Claim as subrogee
pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such
Guarantee Claim less any amounts received by LBHI by way of disgorgement thereof.  Except
as specifically provided with respect to LBHI's rights of subrogation set forth above, nothing
contained herein shall in any way affect the rights of the holder of a Guarantee Claim with
respect to a corresponding Primary Claim against a Primary Obligor that is not a Debtor.

(b)    In no event shall (i) an Allowed Claim receive Distributions (excluding
Distributions contributed to the Plan Adjustment on account of such Allowed Claim) in excess of
the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim receive Distributions
(excluding Distributions contributed to the Plan Adjustment on account of such Allowed
Guarantee Claim) that combined with Distributions or other consideration provided on the
corresponding Primary Claim (excluding Distributions contributed to the Plan Adjustment on
account of such Primary Claim) are in excess of the Allowed amount of the Guarantee Claim (or
such amount as may be agreed to by a holder and the Debtors).

(c)    To the extent that any Debtor has Available Cash after all Allowed Claims
against that Debtor have been satisfied in full in accordance with Section 8.13(a) of the Plan,
each holder of each such Allowed Claim shall receive its Pro Rata Share of further Distributions,
if any, to the fullest extent permissible under the Bankruptcy Code in satisfaction of postpetition
interest on the Allowed amount of such Claims at the rate applicable in the contract or contracts
on which such Allowed Claim is based (or, absent such contractual rate, at the statutory rate)
until such time as all postpetition interest on all such Allowed Claims has been paid in full.

(d)    For purposes of determining whether an Allowed Claim has been satisfied
in full in accordance with Section 8.13(a) of the Plan, all Distributions or other consideration
provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the
U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately
3:00 p.m. GMT on the Confirmation Date.  Nothing contained in this provision shall affect the
applicable exchange rate for determining the Allowed amount of any Claim under section 502(b)
of the Bankruptcy Code.

(e)    The Plan Administrator may, in its sole discretion, request that a holder of
an Allowed Guarantee Claim, except holders of Allowed Guarantee Claims for which a
Subsidiary Debtor is the Primary Obligor, certify in writing and provide evidence reasonably
satisfactory to the Plan Administrator to confirm whether: (i) the Primary Claim has been
Allowed or disallowed against the Primary Obligor, and, if Allowed, the amount of such
Allowed Primary Claim, (ii) the Primary Claim is disputed or subject to objection by a Foreign
Administrator or other party, (iii) the consideration, if any, received to date on account of such

Allowed Primary Claim from the Primary Obligor, (iv) such holder has been notified by or on behalf of the Primary Obligor of any future distributions or payment anticipated or estimated to be made on account of such Primary Claim from the Primary Obligor; or (v) the holder (A) has sufficient assets to satisfy an order or judgment to disgorge any Distributions received with respect to such Allowed Guarantee Claim if it is ultimately determined that such holder is required to disgorge all or a portion of such Distributions and (B) will submit to the jurisdiction of the Bankruptcy Court for purposes of such order or judgment and will not contest the enforcement of such order or judgment in any foreign jurisdiction.  If the holder does not also certify, in addition to the foregoing, that the holder has sufficient assets in the United States of America to satisfy an order to disgorge any Distributions with respect to such Allowed Guarantee Claim, unless the Bankruptcy Court orders otherwise, the Plan Administrator may require that the holder post security for any obligation to disgorge Distributions made to such holder on account of such Allowed Guarantee Claim as a condition to the receipt of future Distributions on such Claim if the Plan Administrator reasonably determines that such security is necessary to ensure the recovery of any amount of Distributions made by LBHI to such holder that is ordered to be disgorged.   If (i) the Plan Administrator determines, based on the foregoing, that an Allowed Guarantee Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Guarantee Claim, or (ii) a holder of an Allowed Guarantee Claim does not comply with this section, then unless the Bankruptcy Court orders otherwise, the Plan Administrator shall not be required to make Distributions on account of such Allowed Guarantee Claim, *provided* that nothing herein shall preclude a holder of an Allowed Guarantee Claim from challenging the determination of the Plan Administrator in the Bankruptcy Court; *provided, further*, that the Plan Administrator shall reserve Distributions with respect to such Allowed Guarantee Claim and, unless such Allowed Guarantee Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, promptly after compliance with this section the Plan Administrator shall remit to the holder of such Allowed Guarantee Claim the lesser of (x) the amount reserved pursuant to this section on account of such Allowed Guarantee Claim or (y) the amount necessary to satisfy such Allowed Guarantee Claim in full in accordance with Section 8.13(a) of the Plan.

(f)    Any portion of any Distribution made by LBHI to the holder of an Allowed Guarantee Claim that is recovered pursuant to Section 8.13 or 8.14 of the Plan, whether by way of subrogation, disgorgement or otherwise, shall be treated as Available Cash of LBHI and distributed accordingly.

8.14    Rights of Reimbursement.

(a)    Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be subrogated to the rights of any Creditor, including on account of any Distributions received by holders of Allowed Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall be deemed to have consented to the subrogation of its right against any third-party, including, without limitation, a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

(b)  Except as otherwise agreed by the Debtors, the Debtors' rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right, including, without limitation, any right to setoff with respect to any of the foregoing, against any entity, including, without limitation, a Primary Obligor, on account of Distributions made to the holders of Allowed Claims or Allowed Guarantee Claims, shall be fully preserved to the fullest extent permitted by applicable law.

8.15  <u>Distributions to Non-Controlled Affiliates</u>.  Except as otherwise agreed by the Debtors and a Non-Controlled Affiliate or with respect to LBT or LBSN, the Plan Administrator may determine, in its sole discretion, to withhold all or a portion of a Distribution to a Non-Controlled Affiliate if such Distribution would be distributed by such Non-Controlled Affiliate to satisfy a Claim of a different Non-Controlled Affiliate against which a Debtor has a Claim but the latter Non-Controlled Affiliate has refused to honor such Claim of a Debtor without subordination, reduction or offset unless (a) otherwise agreed to by the Plan Administrator or (b) the priority and amount of a Debtor's Claim against the latter Non-Controlled Affiliate has been determined by Final Order.

## ARTICLE IX
## Procedures for Treating Disputed Claims

9.1  <u>Objections</u>.  The Debtors' rights to object to, oppose and defend against all Claims on any basis are fully preserved.  Notwithstanding that a Primary Claim is Allowed against a Primary Obligor, the Debtors reserve the right to object to, oppose and defend against all Guarantee Claims.  As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator, which shall consult with the applicable Debtor regarding the same.  Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is 2 years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

9.2  <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision hereof and unless otherwise agreed, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

9.3  <u>Estimation of Claims</u>.  The Plan Administrator may at any time request on behalf of any Debtor that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether such Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated may constitute (i) the Allowed amount of such Claim, (ii) a maximum limitation on such Claim, (iii) the amount to be reserved in respect of Claim, or (iv) the amount of such Claim for voting purposes, all as determined by the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules.  If the estimated amount constitutes a maximum

limitation on the amount of such Claim, such Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

9.4    <u>Resolution of Disputed Claims</u>.    On and after the Effective Date, the Plan Administrator shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims in accordance with <u>Section 6.1(b)(i)</u> of the Plan.

**ARTICLE X**
**Liquidating Trust**

10.1    <u>Execution of Liquidating Trust Agreement</u>.    After the Effective Date, and only if the Plan Administrator determines that one or more Liquidating Trusts are in the best interests of one or more Debtors and holders of Allowed Claims against and Equity Interests in such Debtors, the Plan Administrator and a Liquidating Trustee shall execute a Liquidating Trust Agreement, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries. In the event of any conflict between the terms of this <u>Section 10.1</u> and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this <u>Section 10.1</u> shall govern. A Liquidating Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of a Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

10.2    <u>Purpose of the Liquidating Trust</u>.    Each Liquidating Trust shall be established for the sole purpose of liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

10.3    <u>Liquidating Trust Assets</u>.    Each Liquidating Trust shall consist of Liquidating Trust Assets. After the creation of a Liquidating Trust pursuant to <u>Section 10.1</u> of the Plan, the Plan Administrator shall transfer all of the Liquidating Trust Assets to a Liquidating Trust. Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting or other similar tax to which the exemption under section 1146 of the Bankruptcy Code applies.

10.4    <u>Administration of the Liquidating Trust</u>.    Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

10.5   <u>Liquidating Trustee's Tax Power for Debtors</u>.   A Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtor.

10.6   <u>Cash Investments</u>.   A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

10.7   <u>Distribution of Liquidating Trust Interests</u>.   A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this <u>Section 10.7</u>), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this <u>Section 10.7</u> of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

10.8   <u>Federal Income Tax Treatment of Liquidating Trust</u>.   Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests.   Accordingly, except in the event of contrary definitive guidance, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims).   The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.   For the purpose of this Section 10.8, the terms "party" and "Liquidating Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

10.9   <u>Tax Reporting</u>.

(a)   A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this <u>Section 10.9(a)</u>.   A Liquidating Trustee also shall annually send to each holder of a

Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)      Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)      As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.   Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)      Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)      A Liquidating Trustee shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on a Liquidating Trust or its assets.

(f)      A Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax

returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust.

10.10 <u>Dissolution</u>.

(a) A Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) a Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to <u>Section 10.1</u> of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b) If at any time a Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust.

## ARTICLE XI
## Treatment of Executory Contracts and Unexpired Leases

11.1 <u>Executory Contracts and Unexpired Leases</u>. Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any prepetition executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided*, *however*, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any prepetition executory contract or unexpired lease therefrom or add any prepetition executory contract or unexpired lease thereto, in which event such executory

contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed. The Debtors shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby. The listing of or failure to list a document in the Plan Supplement shall not constitute an admission by the Debtors that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

11.2   Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases. Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan. To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

11.3   Cure of Defaults. Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

11.4   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the relevant Debtor no later than forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease. **Except as set forth in the preceding sentence, all such Claims must otherwise comply with the provisions of the Bar Date Order. All such Claims not filed in accordance with the foregoing will be forever barred from assertion against the Debtors and their estates.** Any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be classified as a General Unsecured Claim or Convenience Claim, as applicable, against the Debtor that is a party to such executory contract or unexpired lease.

11.5   Insurance Policies. To the extent that any of the Debtors' insurance policies and any agreements, documents or instruments with insurers relating thereto constitute executory contracts, such contracts shall be deemed assumed under the Plan. Nothing contained herein shall constitute or be deemed a waiver of any Litigation Claims that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

11.6    Indemnification Obligations.    Subject to the occurrence of the Effective Date, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other employee who is held responsible for obligations of the Debtor incurred after the Commencement Date who are directors, officers or employees of such Debtor or a Debtor-Controlled Entity on or after the Commencement Date and (b) Released Parties, respectively, against any Claims or Causes of Action as provided in the Debtor's articles of organization, certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, shall be assumed by such Debtor and will remain in effect after the Effective Date.    Any such assumed obligations owed in connection with an event occurring after the Commencement Date shall be paid as an Administrative Expense Claim under the Plan.    Any such obligations owed in connection with an event occurring before the Commencement Date shall be treated as pre-petition Claims under the Plan.    Nothing in the Plan shall in any way limit, modify, alter or amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1 of the Restated Certificate of Incorporation of LBHI.

## ARTICLE XII
## Effectiveness of the Plan

12.1    Conditions Precedent to the Confirmation of the Plan.    The following are conditions precedent to the confirmation of the Plan with respect to each Debtor:

(a)    The Bankruptcy Court shall have entered the Structured Securities Order in form and substance satisfactory to the Debtors and the Creditors' Committee; and

(b)    The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan for all of the Participating Debtors in form and substance satisfactory to the respective Debtor and the Creditors' Committee.

12.2    Conditions Precedent to the Effective Date of the Plan.    The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    The Confirmation Order, in form and substance acceptable to the Debtors and the Creditors' Committee, shall have been entered;

(b)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors;

(c)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked; and

(d)    The certificate of incorporation and by-laws of the Debtors shall have been amended to the extent necessary to effectuate the Plan.

12.3    Waiver of Conditions.    Notwithstanding the foregoing, each Debtor reserves its right, upon obtaining the consent of the Creditors' Committee, to waive the occurrence of the conditions precedent to the (a) Confirmation of its Plan set forth in Section 12.1 and (b) Effective

Date set forth in <u>Section 12.2</u> of the Plan other than <u>Section 12.2(a)</u> of the Plan.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If any of the Debtors decide, with the consent of the Creditors' Committee, that one of the conditions precedent to the Effective Date of its Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Debtor shall file a notice of the inability to satisfy such condition prior to the Effective Date with the Bankruptcy Court.

## ARTICLE XIII
### Effects of Confirmation

13.1    <u>Vesting of Assets</u>.    Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate of a Debtor shall vest in that Debtor free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided herein. From and after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

13.2    <u>Binding Effect</u>.    On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**13.3    <u>Release and Exculpation</u>.    On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released (a) the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the negotiation, formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement, the Plan Support Agreements or any contract, instrument, document or other agreement related thereto and (b) the PSA Creditors from, and none of the PSA Creditors shall have or incur any liability for, any Claim for, Cause of Action for or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the negotiation, formulation, dissemination or confirmation, consummation or administration of the Plan, or any other act or omission**

in connection with the Plan, the Disclosure Statement, the Plan Support Agreements, including the filing of any alternative chapter 11 plan and any determination to not pursue solicitation or confirmation of such alternative plan, or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party or PSA Creditor for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, (ii) nothing herein shall affect or release any obligation of the Debtors under the Plan, and (iii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors, the Creditors' Committee or the PSA Creditors to their respective clients pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.

13.4    <u>Discharge</u>.  Except as expressly provided in the Plan, upon the date that all Distributions under the Plan have been made, (a) each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date and (b) all such holders shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any discharged Claim against or terminated Equity Interest in the Debtors.

13.5    <u>Injunction</u>.  Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by a Creditor and the Plan Administrator (on behalf of a Debtor), all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not) and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action that will be or are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan.

13.6    <u>United States Government</u>.

(a)    As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall: (i) discharge, release or otherwise preclude (A) any liability of the Debtors arising on or after the Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non-appealable), (B) with respect to the Debtors, any liability that is not a Claim against a Debtor, (C) any valid right of setoff or recoupment, or (D) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns or operates after the Confirmation Date (defined for purposes of this section as the date the Confirmation Order becomes final and non-appealable); or (ii) limit or expand the scope of the discharge to which the Debtors are entitled under the Bankruptcy Code.    The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

(b)    Nothing in the Plan, Plan Trust Agreement, or Confirmation Order shall provide to any person or entity (other than a Debtor) any exculpation, release, discharge, preclusion of, or injunction against (i) any liability or other obligation owed by such person or entity to the United States, its agencies or departments (ii) or any Claim, Cause of Action, or other right held by the United States, its agencies or departments.

(c)    Nothing contained in the Plan or Confirmation Order shall be deemed to have determined, or to bind the United States with respect to the determination of, the federal tax treatment of any item, distribution, person or entity, or the tax liability of any person or entity, including but not limited to the Debtors and the Liquidating Trust; *provided, however*, that the foregoing shall not affect the rights, claims, defenses and obligations of the United States or the Debtors under the Plan or otherwise with respect to the allowance, disallowance or treatment of Claims of the United States (including, without limitation, under the Bar Date Order and any stipulations between the Internal Revenue Service or United States and the Debtors), nor shall it affect any right of any Debtor or successor to a Debtor to request a determination of tax liability pursuant to section 505(b) of the Bankruptcy Code, or any defenses or objections of the United States with respect to a request for a determination of taxes by any person or entity pursuant to section 505(b) of the Bankruptcy Code.

13.7    <u>Terms of Injunctions or Stays</u>.    Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

13.8    <u>Retention of Litigation Claims and Reservation of Rights</u>.    Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation, (a) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff

which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense and remedies. The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

13.9    Barclays Sale Order.    Nothing contained in the Plan, the Disclosure Statement or the Confirmation Order constitutes or shall be construed as any modification or amendment to the Barclays Sale Order and the rights and defenses of each of the Debtors, the SIPA Trustee (on behalf of LBI), Barclays Bank PLC and Barclays Capital Inc., with respect to any litigation, adversary proceeding, contested matter, claims adjudication, appeal or other dispute against the other are fully preserved, including, without limitation, any rights, defenses, counterclaims and/or cross-claims asserted in connection with or related to the Sale Order.

13.10    No Waiver of Rights and Defenses.    Except as otherwise agreed, the provisions of the Plan shall not enjoin, impair, prejudice, have any preclusive effect upon, or otherwise affect (A) the rights of any Creditor to (x) effectuate a recoupment pursuant to common law or setoff pursuant to common law or otherwise in accordance with (a) section 553 and (b) sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560 or 561 of the Bankruptcy Code (subject to the Debtors' rights to contest the validity of such asserted right of setoff or recoupment or the applicability of any of the foregoing sections of the Bankruptcy Code) or (y) continue to assert the validity of a setoff or recoupment previously taken by such Creditor or to seek authority from the Bankruptcy Court to exercise a right of setoff or recoupment (subject in each case to the Debtors' right to contest the validity of any such setoff or recoupment), or (B) any legal or equitable defense, including any defensive right of setoff or recoupment, that has been, or may be asserted, by any entity in response to a Litigation Claim, Avoidance Action of a Debtor or objections to Claims against a Debtor.

## ARTICLE XIV
## Retention of Jurisdiction

14.1    Retention of Jurisdiction.    The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases, in each case in accordance with applicable law;

(c)    To hear and determine any objection to or motion to estimate Claims;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any agreements or documents incorporated in or contemplated by the Plan, including, without limitation, Sections 6.4, 6.5, 13.3, 13.4 and 13.5 of the Plan;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)    To hear and determine any actions brought against the Plan Administrator in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan;

(k)    To hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located or to determine or declare entitlement to such assets and property, including through actions of interpleader or in the nature of interpleader involving the same; *provided*, *however*, that this provision shall not limit the jurisdiction of a foreign court or tribunal overseeing a Foreign Proceeding;

(l)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns of the Debtors and of any Liquidating Trusts for any and all taxable periods ending after the Commencement Date through the Closing Date;

(m)    To hear all matters relating to Article XIII of the Plan, including, without limitation, all matters relating to the releases, exculpation, and injunction granted thereunder.

(n)    To hear all matters relating to the Plan Trust;

(o)     To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(p)     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XV
## Miscellaneous Provisions

15.1    Post-Effective Date Role of Creditors' Committee and Fee Committee.

(a)     On the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the Plan through the date of the initial Distribution in accordance with Section 8.3 of the Plan, (ii) defending any appeals from the Confirmation Order to final disposition of such appeals, and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date. Following the Effective Date, the litigation and derivatives subcommittees of the Creditors' Committee may continue functioning for the limited purposes of (i) resolving pending litigation and (ii) subject to approval of the post-Effective Date board of directors of LBHI, other litigation and derivatives matters as to which, currently, the subcommittees are involved, and shall be recommended by the applicable subcommittee and the Plan Administrator. Other than with respect to the foregoing, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate. The Debtors shall pay the reasonable fees and expenses of the professionals retained by and shall reimburse the members of the remaining subcommittees for reasonable disbursements incurred, including the reasonable fees of counsel, in connection with the foregoing from and after the Effective Date. If a member of a subcommittee becomes unable to serve on a subcommittee or resigns after the Effective Date, the remaining members may replace such member, continue to discharge the subcommittee's roles, or dissolve by a majority vote of the remaining members. Each of the subcommittees shall be deemed dissolved upon the earliest to occur of (i) voluntary agreement of the members of the subcommittee, (ii) the completion of the subcommittee's responsibilities, and (iv) the Closing Date.

(b)     The fee committee appointed in the Chapter 11 Cases will continue to exist after the Effective Date to perform its duties under the amended fee protocol in connection with all applications for approval of professional fees incurred prior to the Effective Date, and all related proceedings, including hearings on final fee applications. The Debtors shall pay the reasonable fees and expenses of the independent member and counsel retained by the fee committee in connection with the foregoing from and after the Effective Date.

15.2    Issuance of New Securities. In the discretion of the Plan Administrator, each Debtor or Debtor Controlled-Entity (a) may form and transfer certain assets of the Debtors and/or Debtor Controlled Entities to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan. In the event

that the Plan Administrator determines to issue New Securities, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan. The New Securities shall be valued as of the date of the issuance and the holders of Allowed Claims or Equity Interests receiving such New Securities shall be deemed satisfied to the extent of the value of the New Securities.

15.3    <u>Exemption from Securities Laws</u>.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of any New Securities or Liquidating Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

15.4    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition or acquisition of assets contemplated by the Plan (including by a Liquidating Trust), in each case whether as a result of sale, assignment, foreclosure or deed in lieu of foreclosure, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax to which the exemption under Section 1146 of the Bankruptcy Code applies.

15.5    <u>Plan Supplement</u>.  The Debtor Allocation Agreement, the amended certificate and by-laws of the Debtors (if any) in accordance with <u>Section 7.7</u>, the Plan Trust Agreement, a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with <u>Section 11.1</u>, any settlement agreement among any of the Debtors and a Non-Controlled Affiliate in accordance with <u>Section 6.5(b)(vii)</u> and any settlement agreement among any of the Debtors and a Creditor in accordance with <u>Section 6.5(j)</u> shall be contained in the Plan Supplement that is filed with the Clerk of the Bankruptcy Court at least ten (10) days prior to the Voting Deadline.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at www.lehman-docket.com or by request to the Debtors in accordance with <u>Section 15.12</u> of the Plan.

15.6    <u>Post-Effective Date Reporting</u>.  Beginning the first month-end and first quarter-end following the Effective Date and until the Closing Date, the Plan Administrator shall file with the Bankruptcy Court:

(a)    within thirty (30) days after the end of each month, a monthly operating report for such month presented in a format and containing information similar to that used by the Debtors during the Chapter 11 Cases for the "Schedule of Cash Receipts and Disbursements" and "Schedule of Professional Fee and Expense Disbursements";

(b)    within one-hundred-twenty (120) days after the end of each quarter, a quarterly report for such quarter presented in a format and containing information similar to that

used by the Debtors during the Chapter 11 Cases for "Monthly Operating Report Balance Sheets" that (i) contains the following schedules in a format and containing information similar to that used by the Debtors during the Chapter 11 Cases: "Real Estate Owned and Unencumbered by Product Type" (such schedule to also include cost and unpaid principal balance information), "Commercial Real Estate Owned and Unencumbered by Property Type and Region," "Private Equity/Principal Investments Owned and Unencumbered by Legal Entity and Product Type" (such schedule to also include cost and unpaid principal information), "Derivatives Assets and Liabilities" (such schedule to also include special purpose vehicle receivable information), "Loan Portfolio Summary (Funded and Unencumbered)" (schedule to also include unpaid principal balance information), and "Unfunded Lending and Private Equity/Principal Investments Commitments"; and (ii) includes a section titled "Management's Discussion and Analysis" and supplemental data that will include:

(A)    a discussion of any known trends, events, material changes in market values or reserves, demands, commitments and uncertainties that have, or are reasonably likely to have, a material effect on the Debtors' financial condition or on the forecasted undiscounted cash flow principal amounts estimated as of a designated date;

(B)    a description (including asset name, type and material terms) of any new investments in any asset or permitted expenditures to preserve existing assets (in each case, in a single transaction or a series of related transactions on a cumulative basis after the Effective Date in excess of $25 million);

(C)    a description (including asset name, type and material terms) of any restructurings, settlements, sales (including disclosure of any gains or losses relative to the market value reported in the prior period balance sheet, and relative to forecasted undiscounted cash flow estimates as of a designated date for principal amounts), wind-downs or liquidations of the Debtors' existing assets, in each case, solely with respect to any asset that has a forecasted undiscounted cash flow principal amount estimate of greater than $50 million for derivatives, loan, or private equity or principal investments assets or $75 million for real estate assets;

(D)    an update of the claims reconciliation and resolution process, including a description of any claim settlements providing for the allowance in excess of $250 million of a Disputed Claim against the Debtors;

(E)    a description of the Debtors' affirmative litigation actions against third-parties that are pending, including the damages sought by the Debtors; and

(F)    a discussion of post-Effective Date material costs and expenses incurred by the Debtors; and

(c)    on an annual basis for two (2) years and thereafter on a semiannual basis within one-hundred twenty (120) days after the end of such period, a report reconciling cash flow estimates presented in a format and containing information similar to that used by the Debtors during the Chapter 11 Cases for "Reconciliation of Cash Flow Estimates" reports and also a description of collections by the Debtors and a comparison of performance relative to forecasted collections and estimates of future costs and expenses of administration.

Notwithstanding the foregoing, the Plan Administrator or the board of directors or manager for a Debtor may in its sole discretion modify or include less information in any of the foregoing reports than listed above if the Plan Administrator or the board of directors or manager for a Debtor determines in its reasonable discretion that disclosing any such information would be unduly burdensome, such information is or has become immaterial or no longer meaningful as the activities of the Debtor(s) evolve, such disclosure could place the Debtor(s) in a competitive or negotiation disadvantage, or such disclosure is precluded by confidentiality limitations.

15.7     Payment of Statutory Fees.     On the Effective Date and thereafter, the Plan Administrator and any Liquidating Trustee thereafter appointed, shall pay all fees incurred pursuant to Section 1930 of title 28, United States Code, together with interest, if any, pursuant to Section 3717 of title 31, United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under Chapter 7 of the Bankruptcy Code or a Final Order dismissing such Debtor's case is entered.

15.8     Amendment or Modification of Plan.     Subject to the terms and conditions of the Plan Support Agreements, the Debtors reserve the right to propose alterations, amendments, or modifications of or to the Plan in writing at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of section 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.     Subject to the terms and conditions of the Plan Support Agreements, the Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, modified or amended, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments of modifications.   A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, to the extent, and subject to the conditions, set forth in Bankruptcy Rule 3019.

15.9     Withdrawal or Revocation of the Plan.     Subject to the terms and conditions of the Plan Support Agreements, the Debtors reserve the right to withdraw or revoke the Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void.   In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

15.10     Courts of Competent Jurisdiction.     If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.11     Transactions on Business Days.     If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any

transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

15.12   <u>Notices</u>.   Any notices to or requests of the Debtors by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

> If to any Debtor:
>
> c/o Lehman Brothers Holdings Inc.
> 1271 Avenue of the Americas
> New York, New York 10020
> Attention: Bryan Marsal and John K. Suckow
>
> with a copy to:
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attention: Harvey R. Miller and Lori R. Fife
> Re:   Lehman Brothers

15.13   <u>Severability</u>.   In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.14   <u>Governing Law</u>.   Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

15.15   <u>Headings</u>.   Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.16  Exhibits.  All exhibits and schedules to the Plan as well as the Plan Supplement and any exhibits or schedules thereto are incorporated into and are a part of the Plan as if set forth in full herein.

15.17  Successors and Assigns.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

Dated:     New York, New York
           December 5, 2011

LEHMAN BROTHERS HOLDINGS INC.


By:  _____/s/ John Suckow_____
     Name:   John Suckow
     Title:  President and Chief Operating Officer


LB 745 LLC


By:  _____/s/ John Suckow_____
     Name:   John Suckow
     Title:  President and Chief Operating Officer


PAMI STATLER ARMS LLC


By:  _____/s/ John Suckow_____
     Name:   John Suckow
     Title:  Authorized Signatory


LEHMAN BROTHERS COMMODITY SERVICES INC.


By:  _____/s/ John Suckow_____
     Name:   John Suckow
     Title:  President and Chief Operating Officer

LEHMAN BROTHERS SPECIAL FINANCING INC.


By: _____/s/ John Suckow_____
     Name:   John Suckow
     Title:   President and Chief Operating Officer

LEHMAN BROTHERS OTC DERIVATIVES INC.


By: _____/s/ John Suckow_____
     Name:   John Suckow
     Title:   President and Chief Operating Officer


LEHMAN BROTHERS DERIVATIVE PRODUCTS INC.


By: _____/s/ Daniel Ehrmann_____
     Name:   Daniel Ehrmann
     Title:   Vice-President


LEHMAN COMMERCIAL PAPER INC.


By: _____/s/ John Suckow_____
     Name:   John Suckow
     Title:   President and Chief Operating Officer


LEHMAN BROTHERS COMMERCIAL CORP.


By: _____/s/ John Suckow_____
     Name:   John Suckow
     Title:   President and Chief Operating Officer


LEHMAN BROTHERS FINANCIAL PRODUCTS INC.


By: _____/s/ Daniel Ehrmann_____
     Name:   Daniel Ehrmann
     Title:   Vice-President

CES AVIATION LLC


By: _____/s/ John Suckow_____
      Name:   John Suckow
      Title:   President and Chief Operating Officer

CES AVIATION V LLC


By: _____/s/ John Suckow_____
      Name:   John Suckow
      Title:   President and Chief Operating Officer


CES AVIATION IX LLC


By: _____/s/ John Suckow_____
      Name:   John Suckow
      Title:   President and Chief Operating Officer


EAST DOVER LIMITED


By: _____/s/ Daniel Ehrmann_____
      Name:   Daniel Ehrmann
      Title:   Duly Authorized Officer


LEHMAN SCOTTISH FINANCE L.P., by its general
      partner Property Asset Management Inc.


By: _____/s/ John Suckow_____
      Name:   John Suckow
      Title:   President and Chief Operating Officer

LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE S.A.R.L.


By:      /s/ Daniel Ehrmann
    Name:    Daniel Ehrmann
    Title:    Manager


BNC MORTGAGE LLC


By:      /s/ John Suckow
    Name:    John Suckow
    Title:    Authorized Signatory


LB ROSE RANCH LLC


By:      /s/ John Suckow
    Name:    John Suckow
    Title:    Authorized Signatory


STRUCTURED ASSET SECURITIES CORPORATION


By:      /s/ John Suckow
    Name:    John Suckow
    Title:    President and Chief Operating Officer


LB 2080 KALAKAUA OWNERS LLC, by its managing member PAMI LLC


By:      /s/ John Suckow
    Name:    John Suckow
    Title:    President and Chief Operating Officer

MERIT, LLC, by its Manager
LEHMAN COMMERCIAL PAPER INC.


By:       /s/ John Suckow
     Name:   John Suckow
     Title:   President and Chief Operating Officer


LB SOMERSET LLC, by its managing member
PAMI LLC


By:       /s/ John Suckow
     Name:   John Suckow
     Title:   President and Chief Operating Officer


LB PREFERRED SOMERSET LLC, by its managing
member PAMI LLC


By:       /s/ John Suckow
     Name:   John Suckow
     Title:   President and Chief Operating Officer


Counsel:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

# EXHIBIT D

Execution Version

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of 24 November 2014 (the "Execution Date") by and between Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for and on behalf of the jointly-administered debtors in the chapter 11 cases described in the recitals below (the "Chapter 11 Estates"), on the one hand, and Deutsche Bank AG, London Branch (the "Creditor"), on the other hand (each of the Plan Administrator and the Creditor, a "Party" and together, the "Parties").

## RECITALS:

A.    On September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "U.S. Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under Case No. 08-13555 (SCC).

B.    On November 12, 2008 (the "LBB Commencement Date"), the German banking regulator filed insolvency proceedings against LBHI's wholly owned subsidiary Lehman Brothers Bankhaus AG ("LBB") and on November 13, 2008, the local court (*Amtsgericht*) of Frankfurt am Main (the "Insolvency Court") opened insolvency proceedings, file no. 810 IN 1120/08 L (the "LBB Proceeding") and appointed an insolvency administrator (the "Insolvency Administrator" or the "Insolvency Administration").

C.    The Creditor or its predecessor in interest has filed the claims against LBB that are set forth on Schedule A hereto. Such claims have been allowed by LBB, and appear on LBB's insolvency table, in the amounts and with the claim numbers set forth on Schedule A under the headings "Allowed Amount" and "Claim Number" (the "Insolvency Claims").

D.    By order, dated July 2, 2009 [ECF No. 4271], the U.S. Court established September 22, 2009 as the deadline to file proofs of claim (each a "Proof of Claim") in the Chapter 11 Cases.

E.    The Creditor is the holder of 50% of the outstanding notes issued by Diamond Finance PLC (series 2007-6 EUR 25,000,000 due 2014 (XS0309103892)) and Diamond Finance PLC has filed and holds partially allowed claims against LBB under LBB claim reference number 267 with corresponding guarantee claims filed against LBHI under Proof of Claim no. 22049 (together, the "Diamond Finance 2007-6 Claims").

F.    The Creditor or its predecessor in interest duly filed the Proofs of Claim against LBHI that are set forth on Schedule B hereto, asserting unsecured claims in the amounts set forth on Schedule B under the heading "Asserted Amount," on account of LBHI's guarantee

of LBB's obligations (the "Creditor Guarantee Claims" and, together with the Insolvency
Claims, the "Claims"). The Creditor Guarantee Claims were assigned claim numbers by the U.S.
Court-approved claims and noticing agent (the "Claims Agent") as set forth on Schedule B under
the heading "Claim Number." In addition, this Settlement Agreement shall settle the allowance
of certain other claims against LBHI (the "Direct Claims") as set forth on Schedule C

    G. On December 6, 2011, the U.S. Court entered an order confirming the
Plan [ECF No. 23023] (the "Confirmation Order"). The Confirmation Order provides that the
Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and
9019(b) [ECF No. 7936] (the "First Settlement Procedures Order") shall continue to apply and
be binding on all parties following the effective date of the Plan through the date upon which all
of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan. On March
6, 2012, the Plan became effective.

    H. On July 18, 2012, the U.S. Court entered the Order Modifying Certain
Existing Claims Orders, approving claims settlement procedures [ECF No. 29505] (the "Second
Settlement Procedures Order"). The Second Settlement Procedures Order superseded the First
Settlement Procedures Order. As of the date hereof, the Second Settlement Procedures Order has
not been appealed, stayed or vacated, in whole or in part.

    I. On 19 November 2014 LBHI and LBB, acting through the Insolvency
Administrator, entered into an agreement ("LBB Agreement") which provides inter alia for
creditors assembly resolutions as set forth in the Insolvency Court's order dated 28 October
2014, attached hereto as Schedule E (as expressly set forth therein, without any substantive
alteration, the "Creditors Assembly Resolutions") resolving conflicting insolvency law issues, in
particular section 44a of the German Insolvency Code ("InsO"), for certain confirmations
regarding the status of the LBB Proceeding and costs and fees occurred, etc. in the LBB
Proceeding (as explained in further details in the document attached hereto as Schedule F sent to
LBB's creditors by LBB's Insolvency Administrator), and for bilateral agreements (the
"Bilateral Agreements") between LBHI and LBB creditors containing substantially similar terms
to those in this Settlement Agreement to implement the resolution of these issues (such agreed
issues collectively, the "Harmonizing Resolution").

    J. After good-faith, arms'-length negotiations, the Parties have agreed to
resolve the conflicting insolvency law issues and other issues relevant for implementing the
Harmonizing Resolution, including the allowance of the Creditor Guarantee Claims in the
Chapter 11 Cases, pursuant to the terms and conditions set forth in this Settlement Agreement.

    K. Pursuant to the Plan and Second Settlement Procedures Order, the Plan
Administrator is authorized to enter into this Settlement Agreement without approval of the U.S.
Court or any other party in interest. *See* Second Settlement Procedures Order, ¶1.

WEIL:\95165209\2\58399.0003

**AGREEMENT:**

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    The Recitals set forth above form an integral part of this Settlement Agreement and are incorporated fully herein.

2.    This Settlement Agreement shall become effective upon the Execution Date (the "Effective Date").

3.    The Parties agree that as part of the Harmonizing Resolution certain creditors that do not hold guarantee claims against LBHI as set out in Exhibit 1 hereto (the "Non-Guaranteed Creditors") will receive both the (flexible) quota from the LBB estate in accordance with sections 187, 196, 197 InsO, which includes all advance distributions (the "LBB Quota") and, before or at the time of the final distribution (*Schlussverteilung*) receive a payment equaling their outstanding insolvency claim in the rank of section 38 InsO from cash that will be provided by LBHI for the benefit of those creditors, by purchase of their remaining outstanding insolvency claims or otherwise.

4.    By this Settlement Agreement the Creditor agrees to the Harmonizing Resolution, including all Creditor Assembly Resolutions. The Creditor agrees to vote in favor of all of the Creditors Assembly Resolutions and hereby waives its right to object to or, if duly approved, to appeal the Creditors Assembly Resolutions. Furthermore the Creditor expressly agrees that it will not object to the Harmonizing Resolution by (i) filing any appeal or relief (including but not limited to the application pursuant to Sec. 78 InsO) to a German court, in or outside the creditor assembly against the Creditors Assembly Resolutions or any subsequent assembly resolutions or court decisions implementing the Harmonizing Resolution as set forth in the Creditor Assembly Resolutions including its underlying documentation (in particular the "*Beschlussvorlagen*" and explanations) and this Settlement Agreement, and waives any of its rights to object or appeal accordingly, (ii) objecting against or filing any appeal or relief against any distributions schedule ("*Verteilungsverzeichnis*") in the LBB proceeding implementing the Harmonizing Resolution as set out in the aforementioned resolutions and documentation, including any advance distributions, and waives any of its rights to object or appeal accordingly, (iii) orally or in writing communicating an objection to or dissent with the Harmonizing Resolution or its implementation by the Insolvency Administrator (in particular but not limited to the implementation by the treatment of the claims and the distribution as provided for in the Harmonizing Resolution) to the Insolvency Administrator or the Insolvency Court, (iv) addressing the creditors or the Insolvency Court in the creditors' assembly in such a fashion or (v) doing the same on the record in the Chapter 11 Cases, *provided that* for the avoidance of doubt all of the foregoing is subject to the correct implementation of the Harmonizing Resolution by the Insolvency Administrator, the Insolvency Court and LBHI.

5.    By way of this Settlement Agreement, the Creditor agrees and consents to (1) the identification, safeguarding, assessment, management, administration, disposition and distribution of the insolvency estate of LBB AG and to the results achieved and decisions made

3

in the LBB AG Insolvency Proceeding such as disposals, settlements, measures and acts (*Handlungen*), including allowance and treatment of filed claims of other LBB creditors, and all acts or actions in court proceedings as laid down in the reporting to the Creditors as per the Insolvency Administrators' reports up to, and including, the 16th report as of 22 September 2014 (the "Insolvency Administrators' Reports") and other documents available for inspection of LBB's creditors in the Insolvency Court files, (2) the fulfilment of administrative claims against LBB's insolvency estate pursuant to sections 53 – 55 InsO (*Masseverbindlichkeiten*) as specified in the Insolvency Administrators' Reports (including its exhibits) or admitted/determined in orders issued by the Insolvency Court, (3) the previous costs and fees of the Insolvency Administration amounting to EUR 312,180,375.00 (excluding statutory VAT) for administrative services rendered (*erbrachte Verwalterleistungen*) by December 31, 2012, as admitted (*bewilligt*) by order of the Insolvency Court on September 19, 2013, and, on that basis, the final remuneration (fees) of the Insolvency Administration in a range between EUR 400m and EUR 500m (plus statutory VAT) within the meaning of section 63 InsO, (4) the previous costs and fees of the LBB AG Creditors' Committee and its members amounting to EUR 2,947,945.52 (plus statutory VAT) for the services rendered by December 31, 2012 as admitted in the previous orders of the Court are appropriate (*angemessen*) and, on that basis, the future invoices (*Abrechnung*) in accordance with the methodology of section 73 para 1 InsO applied so far, (5) the proposal that no hearing will take place regarding the final accounting of the Insolvency Administrator (*Schlussrechnung*) and that no other auditing regarding the accounting of the Insolvency Administrator (*Rechnungsprüfung*) is necessary other than the auditing currently being undertaken by FRTG-Group as mandated by the Insolvency Court; and (6) the proposal not to raise or assert or enforce any liability claims against the (former) organs of LBB.

6.    Also, the Creditor agrees not to (except to enforce the terms of the Creditors Assembly Resolutions) make any claims or rights of whatsoever nature against the Insolvency Administrator, his firm and its partners, the members of LBB's Creditors Committee and LBB, as a result of, or in connection with, this Settlement Agreement, the implementation of the Creditors Assembly Resolutions as approved by a statutory majority at the creditors' assembly and related distributions provided for therein and the Creditor shall be barred from asserting any and all claims to receive additional distributions in the LBB Proceeding from LBB's estate on account of the Insolvency Claims not provided for and consistent with the Harmonizing Resolution.

7.    Conditioned upon

(a) LBB's creditors' assembly having voted with statutory majority in favor of the Creditors Assembly Resolutions, it being understood that solely the factual voting of the creditors with statutory majority shall be relevant and decisive and that it shall not be relevant whether the Creditors Assembly Resolutions are legally binding or have legal effect or whether a different creditor objects to the Creditors Assembly Resolutions;

(b) the Creditor having voted in favor of the Creditor Assembly Resolutions in the creditors' assembly on November 25, 2014; and

4

(c) the Creditor not having objected (as set out under Clause 4. above) to (i) the Creditor Assembly Resolutions or (ii) the Harmonizing Resolution until the closure of the creditors' assembly voting upon the Creditor Assembly Resolutions on November 25, 2014.

The date on which these conditions are met is referred to herein as the "Allowance Effective Date", which is anticipated to be November 25, 2014. On the Allowance Effective Date, the Creditor Guarantee Claims and the Direct Claims shall be Allowed Claims in the Chapter 11 Cases in the amounts and classes set forth on Schedule B and Schedule C under the headings "Allowed Amount" and "LBHI Class" (in such Allowed Amounts, the "Allowed Creditor Guarantee Claims" and the Allowed Direct Claims) and shall be entitled to receive distributions under the plan (in addition to distributions from LBB in respect of the Insolvency Claims) without any deductions or withholdings whatsoever (except for any tax withholding expressly required pursuant to the Plan); *provided that* the Plan Administrator will not make distributions in respect of the Allowed Creditor Guarantee Claim, including amounts retained pursuant to section 8.4 of the Plan, until the first Distribution Date that is at least 21 days after the Effective Date.

For the avoidance of doubt, for the Diamond Finance 2007-6 Claims, the condition in Clause 4(ii) above will be fulfilled and such fulfillment can be evidenced by a respective written voting instruction by the Creditor to Diamond Finance PLC or the trustee acting on behalf of Diamond Finance PLC and the condition in Clause 4(iii) will be fulfilled by a respective instruction not to object against the Creditor Assembly Resolutions or the Harmonizing Resolution. The Creditor agrees that it will not change the voting rights after signing this Settlement Agreement in order to avoid or circumvent the obligations as set out in Clause 4 above until the end of the creditor assembly voting on the Creditor Resolutions.

Should the creditors' assembly on November 25, 2014 not vote upon the Creditor Assembly Resolutions, e.g. because the vote is postponed or the creditor assembly is rescheduled, then the following shall apply:

(i) If the LBB creditors' assembly shall have voted with statutory majority in favor of the Creditor Assembly Resolutions within the year 2014, this agreement shall stay in effect and the provisions of this agreement shall apply accordingly;

(ii) If the LBB creditors' assembly shall not have voted with statutory majority in favor of the Creditor Assembly Resolutions within the year 2014, then this Settlement Agreement shall become null and void and of no further force and effect with retroactive effect and the parties will negotiate in good faith the further procedure to implement the Harmonizing Resolution based on the principles set out herein.

8.    Promptly after the Allowance Effective Date, the Plan Administrator shall deliver a joint instruction letter in the form annexed hereto as Exhibit 3, attaching a copy of this Settlement Agreement, to the Claims Agent with instructions to update the claims registry to reflect the Allowed Creditor Guarantee Claims and the Allowed Direct Claims. The Creditor agrees that the content of this Settlement Agreement or a copy of it may be made available to all other LBB Creditors and the Insolvency Court in the LBB Proceeding.

WEIL:\95165209\2\58399.0003

9.    The Creditor agrees to be liable to LBHI for the disgorgement of any distributions or other consideration received by the Creditor on account of any Allowed Creditor Guarantee Claim (excluding distributions contributed to the Plan Adjustment on account of such Allowed Creditor Guarantee Claim) to the extent that such distributions or other consideration, combined with distributions or other consideration made or paid by, or on behalf of, LBB in the LBB Proceeding to the Creditor or any previous holder on account of any portion of the related Insolvency Claim (converted to USD in accordance with section 8.13(d) of the Plan), in the aggregate exceed the allowed amount of such Allowed Creditor Guarantee Claim.

10.    The Creditor hereby assigns, transfers, and conveys all of its right, title and interest in and to each Insolvency Claim together with (1) any distributions received on such Insolvency Claim (converted to USD in accordance with section 8.13(d) of the Plan) in excess of the allowed amount of the related Allowed Creditor Guarantee Claim and (2) any ancillary claims (*Nebenforderungen*) and any claims pursuant to section 39 para 1 No. 1 and 2 InsO (the "Assigned Claims"), free and clear of any and all liens and encumbrances, to LBHI (the "Assignment"), *provided that* the Assignment of each Insolvency Claim shall not be effective until (i) each of the Creditor Guarantee Claims has become an Allowed Claim in the Chapter 11 Cases in the amounts and classes set forth on Schedule B under the headings "Allowed Amount" and (ii) the Creditor has received distributions from LBHI and LBB on the respective Insolvency Claim and the related Allowed Creditor Guarantee Claim, that in combination are equal to the greater of the following amounts (such greater amount, the "Creditor's Quota Cap"):

(a.)    the USD amount of the Allowed Creditor Guarantee Claim, *provided that* any EUR distributions received by the Creditor from LBB in respect of a related Insolvency Claim (as specified in Schedule A) shall for purposes of this subclause (a) be converted into USD applying a EUR/USD exchange rate of 1.3402, and

(b.)    a USD amount equal to the amount of the related Insolvency Claim (as specified in Schedule A) converted into USD at a USD/EUR exchange rate of 1.41904, *provided that* any EUR distributions received by the Creditor from LBB in respect of such Insolvency Claim shall for purposes of this subclause (b) be converted into USD applying a EUR/USD exchange rate of 1.3402.

The Creditor agrees that upon the effectiveness of the Assignment, (i) the Creditor shall not further participate in the LBB Proceeding, except to the extent necessary to enforce its rights in connection with this Settlement Agreement, and (ii) all rights arising from the Assigned Claims will be exercisable by LBHI and not by the Creditor.

11.    The Creditor agrees that any creditor in the LBB Proceeding that holds an allowed claim for distribution in the LBB Proceeding and asserts a related guarantee claim against LBHI shall be treated as follows, and the Creditor further agrees that this treatment is part of the Creditors Assembly Resolutions:

(a.)    Each such guaranteed creditor that has (i) executed a bilateral settlement agreement or comparable binding agreement with LBHI containing substantially similar terms to those in this Settlement Agreement, including assignments of claims to LBHI,

6

and (ii) voted in favor of and not objected to, or moved against, any of the terms of the Creditors Assembly Resolutions (such creditor, a "Settled Guarantee Creditor") shall receive distributions from LBHI and LBB on a given allowed creditor guarantee claim and related insolvency claim in the rank of section 38 InsO, respectively, until such distributions collectively reach the greater of the following amounts (such greater amount, except as expressly provided in subclause (iii) below, the "Quota Cap"):

(i) the USD amount of the allowed creditor guarantee claim, *provided that* any EUR distributions received by the creditor from LBB in respect of the related insolvency claim in the rank of section 38 InsO shall for purposes of this subclause (i) be converted into USD applying a EUR/USD exchange rate of 1.3402, and

(ii) a USD amount equal to the amount of the related insolvency claim in the rank of section 38 InsO converted into USD at a USD/EUR exchange rate of 1.41904, *provided that* any EUR distributions received by the creditor from LBB in respect of the related insolvency claim in the rank of section 38 InsO shall for purposes of this subclause (ii) be converted into USD applying a EUR/USD exchange rate of 1.3402; *and further provided that*,

(iii) notwithstanding the foregoing, the Quota Cap for BdB is derived from its settlement agreement with LBHI dated 30 September 2011; the Quota Cap for Entschädigungseinrichtung deutscher Banken GmbH (EdB) is derived from its settlement agreement with LBHI dated 30 September 2011 ; the Quota Cap for Bundesbank is derived from its settlement agreement with LBHI dated 11 October 2011; and for each of LBIE and LB Asia a different Quota Cap applies, taking into account that their allowed guarantee claims are higher than their related insolvency claims in the rank of section 38 InsO.

(b.)    Each such guaranteed creditor that has (i) not executed a bilateral settlement agreement (or comparable binding agreement with LBHI, including assignment of claims to LBHI) and/or (ii) not voted in favor of or objected to, or moved against, any of the terms of the Creditors Assembly Resolutions (such creditor, a "Non Settled Guarantee Creditor") shall (A) receive distributions out of the LBB Proceeding equal to (x) 100% of the allowed claim amount in the rank of section 38 InsO, minus (y) projected recovery amounts from LBHI on account of the related guarantee claim, currently estimated at 29.7% for LBHI Class 5 and 27.98% for LBHI Class 9A (as defined in the Plan) (irrespective of exchange rates), as updated from time to time by the LBB Insolvency Administrator using information provided by LBHI and/or publicly available market quotations, and (B) have reserves retained in the amount equal to 100% of its claim plus post-petition interest and post-petition costs (if applicable) as determined by the LBB Insolvency Administrator based on statutory law, less distributions from LBB and LBHI (if applicable); it being understood that if the Non Settled Guarantee Creditor agrees to a bilateral settlement agreement (or comparable binding agreement with LBHI, including assignments of claims to LBHI), then distributions to the Non Settled Guarantee Creditor shall be governed by subclause 11 (a) above (and it shall be deemed thereafter to be a "Settled Guarantee Creditor").

7

(c.)     The insolvency claims in the LBB Proceeding shall only be regarded discharged (*erfüllt*) by distributions or other consideration out of the LBB Proceeding, without taking into account any distributions or other consideration received from LBHI in respect of guarantee claims.

12.     LBHI undertakes not to make use, not to enforce and not to accept benefits in respect of any Assigned Claims or other claims assigned to LBHI by any of LBB's creditors pursuant to comparable binding agreements with LBHI containing substantially similar terms to those of this Settlement Agreement, including assignments of claims to LBHI, until:

(a.)     administrative costs, including fees, and expenses (*Massekosten und Massekostenverbindlichkeiten*) pursuant to sections 53 to 55 InsO have been paid or reserved for in the LBB Proceeding (section 187 InsO);

(b.)     each Settled Guarantee Creditor has received its quota cap (not taking into account any non-guaranteed claims, if applicable and subject to the individual agreements with specific creditors having different agreements on their Quota Cap); and

(c.)     each Non Settled Guarantee Creditor has received the full amount of distributions or has had the full amount of reserves retained as provided for in subclause 12(b) above, and

(d.)     all other disputed claims have been reserved for; and

(e.)     all non-guaranteed claims listed in Exhibit 1 have been satisfied in full, i.e., have received payments equaling 100% of their outstanding insolvency claim in the rank of Sec. 38 InsO (partly through distributions by LBHI upon acquisition) or have received an offer from LBHI to acquire their claim in order to increase their distributions to 100% of their outstanding insolvency claim in the rank of section 38 InsO and LBHI has provided the funds to remit to the creditor upon acceptance of LBHI's offer.

(f.)     For the avoidance of doubt, distributions to LBHI shall not be held up by the mere fact that the claims listed in Exhibit 2 which shall include the BdB Cost Claim, LBIE Claims, and LB Asia Claims have not yet received the full LBB quota according to sections 187, 196 InsO.

(g.)     Notwithstanding the above, when making distributions, the LBB Insolvency Administrator will include in the claims denominator (amount of claims used to determine the distribution quota) all allowed LBB claims including the claims assigned to LBHI by guarantee creditors notwithstanding the fact that said claims have reached their respective Quota Caps. Until (i) each Settled Guarantee Creditor's claim has reached its Quota Cap, (ii) each Non-Guaranteed Creditor's claim (other than those creditors' claims listed in Exhibit 2) has been satisfied as set forth in subclause 12(e) above, and (iii) reserves have been established as provided for above (the foregoing subclauses (i), (ii) and (iii) collectively, the "Non Satisfied Claims"), distribution amounts allocated to any of the claims assigned to LBHI shall be distributed or used for reserves for the Non Satisfied Claims in accordance with statutory law.

8

This means, at each distribution date (and provided that reserves for administrative costs, including fees, and expenses pursuant to sections 53 to 55 InsO were established beforehand), distributions and reserves for Non Satisfied Claims, as applicable, shall be made on a pro rata basis. For the avoidance of doubt, distribution amounts allocated to any of the claims assigned to LBHI are reserved for based on the same principles that apply to all other claims that are reserved for. Once the Non Satisfied Claims have been satisfied through distributions or reserves as provided in the subclauses of Clause 10 mentioned above, LBHI on account of the claims assigned to LBHI shall receive its pro rata share of distributions; *provided, that* should not all conditions in subclauses 12(a) through 12(e) hereof be satisfied, the LBB Insolvency Administrator shall reserve for the claims assigned to LBHI.

(h.)    For the avoidance of doubt, those claims listed in Exhibit 2 shall receive the full amount of the LBB quota according to sections 187, 196 InsO which shall factor in reserves or distributions to LBHI on account of the claims assigned to LBHI as set forth in this section, ensuring that they receive the same level of distributions they would have received outside of the Harmonizing Resolution.

13.    As requested by LBHI, the Creditor hereby agrees that all Insolvency Claims that are assigned to LBHI in accordance with the Creditors Assembly Resolutions and in the implementation of the Harmonizing Resolution shall remain in their current rank (Sect. 38 InsO or Section 39 para 1 no. 1 and 2 InsO) and that distributions in respect of such claims be made by LBB to LBHI on these claims in that rank, taking into account, however, the limitations set forth in Clause 12 above, and the Creditor consents that other LBB creditors may be requested to agree, and may agree, on settlements in substance comparable to this Settlement Agreement.

14.    Should the distributions in the LBB proceedings not occur in accordance with the provisions set out in paragraph 11. and 12. and LBHI as a consequence receive distributions from LBB before the Creditor has reached its Quota Caps, LBHI will turn over those distributions that the Creditor would have received in case of a distribution schedule in accordance with paragraphs 11. and 12. (instead of LBHI) to the Creditor.

15.    [*omitted*]

16.    Upon the Allowance Effective Date, other than the right to receive distributions under the Plan and in accordance with this Settlement Agreement on account of the Allowed Creditor Guarantee Claims and the Allowed Direct Claims, the Creditor and its affiliates, successors and assigns, and their past, present and future members, officers, directors, shareholders, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Releasing Parties"), shall have no further right to payment from LBHI, the Plan Administrator, the Chapter 11 Estates, the affiliates controlled by the Chapter 11 Estates, or their respective successors or assigns (collectively, the "Released Parties") in respect of the Creditor Guarantee Claims and the Direct Claims, and upon the Allowance Effective Date hereby irrevocably waives any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff and

9

recoupment, debt, liens, losses, demands, damages, costs and causes of action of whatever nature arising out of or relating to the Creditor Guarantee Claims and the Direct Claims (collectively, the "Released Claims") against any of the Released Parties, and shall be barred from asserting against any of the Released Parties any and all Released Claims whatsoever, whether known or unknown, whether accrued or unaccrued, matured or unmatured, liquidated or unliquidated, certain or contingent, asserted or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Settlement Agreement; provided, however, that the releases granted in this Clause 16 shall not apply to obligations, rights, remedies or actions arising or accruing pursuant to the LBB Agreement or this Settlement Agreement.

17.    Subject to the exception set out at the end of this Clause, Clause 12 shall only become effective when LBB's Creditors Assembly has voted with statutory majority in favor of the Creditors Assembly Resolutions, it being understood that solely the factual voting of the creditors with statutory majority shall be relevant and decisive and that it shall not be relevant whether the Creditors Assembly Resolutions are legally binding or have legal effect or whether a different creditor objects to the Creditors Assembly Resolutions.

Subject to the Creditor having reached its Creditor's Quota Caps for each and all of its Insolvency Claims, the restrictions set out in Clause 12 shall fall away if a legally binding court order has ruled that either (i) any of LBHI's claims assigned by the guarantee creditors do not remain in the rank they had before the assignment or (ii) the Harmonizing Resolution cannot be implemented, in case such ruling has been issued within 24 months of LBB having distributed a quota of 90% to allowed LBB creditors' claims in the rank of section 38 InsO provided that such quota is achievable, if not, a lower quota applies as agreed between the LBB Insolvency Administrator and LBHI (so that the limitations set out in Clause 12 will not fall away as long as the Creditor has not reached the Quota Caps in its entirety).

18.    The Parties agree and acknowledge that any breach of this Settlement Agreement may result in irreparable damage for which the non-breaching Parties will not have an adequate remedy at law. Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that any non-breaching Party may immediately seek enforcement of this Settlement Agreement by means of specific performance or injunction, without any requirement to post a bond or other security.

19.    This Settlement Agreement contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto, including, but not limited to, any prior agreements between the Creditor and LBHI concerning the Creditor Guarantee Claims.

20.    This Settlement Agreement may not be modified other than by a writing signed by the Parties.

21.    Each person who executes this Settlement Agreement represents and warrants that he or she is duly authorized to do so on behalf of the respective Party and that each such Party has full knowledge of and has consented to this Settlement Agreement.

10

22.    The Creditor represents and warrants that on the Effective Date, it owns the Creditor Guarantee Claims and the Direct Claims free and clear of any and all liens, claims, setoff rights, security interests, participations, or encumbrances, and has not transferred or assigned any of the Creditor Guarantee Claims and the Direct Claims to any other person, in whole or in part.

23.    Except for the assignment of claims to LBHI pursuant Clause 10 of this Settlement Agreement, the Creditor may not convey, transfer, assign, participate, or sub-participate the Claims, or any rights or interests arising thereunder, in whole or in part, to any party or parties (any such party, a "Transferee") after the Execution Date, unless such conveyance, transfer, assignment, participation or sub-participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Settlement Agreement, including, but not limited to, the obligation to assign claims pursuant to Clause 10 hereof, shall be binding in all respects upon the Transferee and any successor transferees

24.    LBHI may not convey, transfer, assign, participate, or sub-participate the Assigned Claims, or any rights or interests arising thereunder in whole or in part to any Transferee after the Execution Date, unless such conveyance, transfer, assignment, participation or sub-participation is consummated pursuant to a written agreement that provides that the terms and provisions of this Settlement Agreement shall be binding upon the Transferee and any successor transferees in all respects.

25.    Each Party represents and warrants to the other Party that its own execution and delivery of, and performance of its obligations under, this Settlement Agreement are within its corporate powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on it, or any law, regulation, judgment, order or administrative action binding on it.

26.    The Plan Administrator represents and warrants that this Settlement Agreement is being entered into in accordance with and pursuant to the terms of the Second Settlement Procedures Order, that the Plan Administrator is authorized to enter into it, and that this Settlement Agreement is valid and binding in accordance with the terms of the Plan and without the approval of the U.S. Court or any other party in interest.

27.    This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns. The Parties acknowledge that the stipulations regarding the content of Creditors Assembly Resolutions and the obligation of the Creditor related thereto, which means confirmation of the measures undertaken, including allowance and treatment of other LBB creditors, costs and fees in the LBB Proceeding, waiver of rights and objections related thereto and the exclusion of liability of the Insolvency Administrator, his firm and its partners, the members of the LBB Creditors' Committee and the LBB (former) organs are for the benefit of each of these parties, including LBB, in accordance with Section 328 BGB.

28.    This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same

11

instrument, and it shall constitute sufficient proof of this Settlement Agreement to present any copy, copies, or facsimiles signed by the Parties hereto to be charged. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

29.    This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns.

30.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the release in Clause 4 hereof. Section 1542 of the California Civil Code reads as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

31.    This Settlement Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof.

32.    The U.S. Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Settlement Agreement. Should the U.S. Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Settlement Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York.

33.    The fees and expenses incurred by each Party in connection with this Settlement Agreement will be paid by such Party.

34.    Each Party acknowledges that this Settlement Agreement effects a settlement of potential claims and counterclaims that are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing or a waiver of any rights or claims except as expressly provided for herein.

35.    This Settlement Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Settlement Agreement.

12

THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS
SETTLEMENT AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE
OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING,
UNDERSTANDING AND EXECUTING THE SETTLEMENT AGREEMENT, AND
HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF
THIS SETTLEMENT AGREEMENT.

WEIL:\95165209\2\58399.0003

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Print Name: Daniel J. Ehrmann
Title: Senior Vice President

DEUTSCHE BANK AG, LONDON
BRANCH

By: _____          By: _____
Print Name:                          Print Name:_____
Title:                               Title:_____

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Print Name: Daniel J. Ehrmann
Title: Senior Vice President

DEUTSCHE BANK AG, LONDON
BRANCH

By: _____
Print Name:
Title:        Michael Sutton
              Managing Director

By: _____
Print Name:
Title:        Alexander Kraemer
                    Director

**Schedule A - Deutsche Bank AG, London Branch (UK)**

| Claim No. according to LBB's creditor list | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) | |
|---|---|---|
| § 38 - 002 | € | 15,518,884.72 |
| § 38 - 064 | € | 2,108,590.56 |
| § 38 - 065 | € | 5,034,436.01 |
| § 38 - 067 | € | 1,725,138.89 |
| § 38 - 072 | € | 3,917,837.04 |
| § 38 - 079 | € | 22,131,789.76 |
| § 38 - 093 | € | 5,054,780.01 |
| § 38 - 101 | € | 24,272,009.08 |
| § 38 - 131 | € | 13,133,597.26 |
| § 38 - 136 | € | 1,740,843.98 |
| § 38 - 137 | € | 27,910,296.18 |
| § 38 - 196 | € | 2,046,333.34 |
| § 38 - 223 | € | 1,679,500.00 |
| § 38 - 225 | € | 3,818,041.20 |
| § 38 - 232 | € | 14,429,235.22 |
| § 38 - 247 | € | 15,202,838.00 |
| § 38 - 261 | € | 19,667,961.99 |
| § 38 - 262 | € | 4,970,533.74 |
| § 38 - 267 | € | 4,722,692.50 |
| § 38 - 268 | € | 70,354,216.13 |
| § 38 - 277 | € | 2,347,190.21 |
| § 38 - 301 | € | 13,310,251.60 |
| § 38 - 304 | € | 10,312,986.30 |
| § 38 - 450 | € | 10,000,000.00 |
| § 38 - 452 | € | 2,400,000.00 |
| § 38 - 454 | € | 866,277.69 |
| § 38 - 455 | € | 1,732,555.38 |
| § 38 - 464 | € | 4,981,282.23 |
| § 38 - 465 | € | 2,850,000.00 |
| § 38 - 475 | € | 36,487,385.94 |
| § 38 - 498 | € | 205,632.88 |
| § 38 - 523 | € | 4,800,000.00 |
| § 38 - 524 | € | 1,673,122.83 |
| § 38 - 530 | € | 52,519.75 |
| § 38 - 548 | € | 50,613,954.59 |
| § 38 - 708 | € | 6,836,525.90 |
| § 38 - 710 | € | 1,758,381.43 |

\* Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK)

1

Schedule B - Deutsche Bank AG, London Branch (UK)

| LBHI Proof of Claim No. | Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|
| 44149 | $ 6,682,737.60 | 5 |
| 44151 | $ 3,967,875.45 | 5 |
| 50504 | $ 25,263,581.90 | 5 |
| 50505 | $ 6,547,766.12 | 5 |
| 59719 | $ 6,265,066.50 | 5 |
| 59720 | $ 13,922,370.00 | 5 |
| 59721 | $ 13,985,845.20 | 5 |
| 59780 | $ 20,978,767.80 | 5 |
| 59837* | $ 4,455,739.35 | 5 |
| 67114 | $ 38,599,378.72 | 5 |

| LBHI Proof of Claim No. | Asserted Guarantee Claim amount in LBHI Case (USD) | To Be Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|---|
| 5276** | $ 2,436,442.88 | [$2,448,041.09] | 5 |
| 9834 | $ 2,376,660.00 | [$2,383,277.68] | 9A |
| 10117** | n/a | [$5,559,567.47] | 9A |
| 11386 | $ 13,203,282.73 | [$14,677,623.44] | 9A |
| 11387 | $ 6,606,573.62 | [$7,344,294.73] | 9A |
| 13477** | $ 22,127,172.99 | [$31,405,894.94] | 5 |
| 14416 | $ 34,570,622.51 | [$34,442,951.76] | 9A |
| 15317 | $ 8,990,712.07 | [$7,172,935.03] | 9A |
| 15535** | $ 7,077,189.65 | [$7,144,066.08] | 5 |
| 16022** | $ 1,968,506.56 | [$2,470,327.24] | 5 |
| 17219 | $ 12,953,050.81 | [$14,634,540.08] | 5 |
| 17617** | $ 34,992,671.07 | [$21,723,301.92] | 5 |
| 17742 | $ 2,130,150.00 | [$2,128,565.35]*** | 5 |
| 17743 | $ 5,789,987.49 | [$5,813,417.14] | 5 |
| 17745 | $ 7,421,703.15 | [$7,415,996.09] | 5 |
| 17746 | $ 14,201,000.00 | [$14,190,435.65]*** | 5 |
| 19923 | $ 18,318,186.14 | [$20,475,661.95] | 9A |
| 19963** | $ 3,761,711.84 | [$3,330,756.79] | 9A |
| 19967** | $ 4,694,538.38 | [$2,903,828.86] | 9A |
| 21444 | $ 10,532.19 | [$0.00] | 5 |
| 21895 | $ 7,049,012.48 | [$7,068,638.74] | 9A |
| 21954 | $ 23,297,177.04 | [$21,573,435.24] | 9A |
| 22049** | $ - | [$6,701,689.57] | 9A |
| 22217** | $ 64,903,480.85 | [$58,593812.9] | 5 |
| 22648 | $ 18,571,734.98 | [$18,637,099.86] | 5 |
| 28185** | $ 2,390,512.43 | [$2,992,174.35] | 5 |
| 30122** | $ 40,092.21 | [$1,229,282.69] | 9A |
| 30129** | $ 80,184.44 | [$2,458,565.39] | 9A |
| 55570 | $ 125,878,587.99 | [$102,330,660.44] | 9A |
| 65918** | $ 37,499,905.48 | [$18,887,779.43] | 9A |
| TBD | n/a | [$12,070,392.65] | 5 |

\* LBHI claimant is listed in EPIQ under a different name.

\*\* Asserted amount includes portion where LBHI claimant is listed in EPIQ under a different name. Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK)

\*\*\* To be allowed as LBHI Direct claim only

2

*A̸U̸*

**Schedule C - Deutsche Bank AG, London Branch (UK)**

| LBHI Proof of Claim No. | [To-be-allowed] Direct Claim amount in LBHI Case | LBHI Class | Comments |
|---|---|---|---|
| TBD | [$16,973,160.94] | 5 | Macron disputed (LBB claims §38-707 & §38-725) |
| TBD | [$41,119,315.76] | 5 | Diamond disputed (LBB claim §38-267) |
| TBD | [$11,886,563.79] | 5 | Landesbank disputed (LBB claim §38-137) |

3

**Schedule D**

**[OMITTED]**

A/76548870.1

**Schedule E**

# EXHIBIT E

## FIRST AMENDMENT SETTLEMENT AGREEMENT

This first amendment to the Settlement Agreement (defined below) is entered into as of February 20, 2015 (the "Execution Date") by and between Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for and on behalf of the jointly-administered debtors in the chapter 11 cases described in the recitals below (the "Chapter 11 Estates"), on the one hand, and Deutsche Bank AG, London Branch (the "Creditor"), on the other hand (each of the Plan Administrator and the Creditor, a "Party" and together, the "Parties").

## RECITALS:

A.    On September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "U.S. Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under Case No. 08-13555 (SCC).

B.    On November 24, 2014, the Parties entered into that certain Settlement Agreement to resolve the conflicting insolvency law issues and other issues relevant for implementing the Harmonizing Resolution, including the allowance of the Creditor Guarantee Claims in the Chapter 11 Cases, pursuant to the terms and conditions set forth therein.

C.    The Creditor subsequently acquired additional claims and the Parties have concluded that such newly acquired claims should be subject to the terms and conditions of the Settlement Agreement.

## AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    **Definitions.** Initially capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.    **Amendment to Settlement Agreement.** Schedule A and Schedule B of the Settlement Agreement are deleted in its entirety and the attached Schedule A and Schedule B are substituted therefor.

3.    **Further Amendments.** Any waiver, alteration, supplement, amendment or modification of this Amendment shall be valid only if made in writing and signed by each of the Parties hereto.

4.    **Choice of Law.** This Amendment shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to

conflicts of law principles thereof. The U.S. Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Amendment. Should the U.S. Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Settlement Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York.

> 5.    *Counterparts*. This Amendment may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties hereto need not appear on the same counterpart.

> 6.    *Execution*. Signatures to this Amendment may be exchanged by facsimile transmission and/or electronic mail and shall constitute originals for all purposes.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Print Name: Ron Geraghty
Title: Senior Authorized Signatory

DEUTSCHE BANK AG, LONDON
BRANCH

By: _____
Print Name:
Title:        Alexander Kraemer
                  Director

By: _____
Print Name: _____
Title: _____
              Philipp Roever
              Director

**Schedule A - Deutsche Bank AG, London Branch (UK)**

| Claim No. according to LBB's creditor list | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) | |
|---|---|---|
| § 38 - 002 | € | 15,518,884.72 |
| § 38 - 064 | € | 2,108,590.56 |
| § 38 - 065 | € | 5,034,436.01 |
| § 38 - 067 | € | 1,725,138.89 |
| § 38 - 072 | € | 3,917,837.04 |
| § 38 - 079 | € | 22,131,789.76 |
| § 38 - 093 | € | 5,054,780.01 |
| § 38 - 101 | € | 24,272,009.08 |
| § 38 - 131 | € | 13,133,597.26 |
| § 38 - 136 | € | 1,740,843.98 |
| § 38 - 137 | € | 27,910,296.18 |
| § 38 - 196 | € | 2,046,333.34 |
| § 38 - 223 | € | 1,679,500.00 |
| § 38 - 225 | € | 3,818,041.20 |
| § 38 - 232 | € | 14,429,235.22 |
| § 38 - 247 | € | 15,202,838.00 |
| § 38 - 261 | € | 19,667,961.99 |
| § 38 - 262 | € | 4,970,533.74 |
| § 38 - 267 | € | 4,722,692.50 |
| § 38 - 268 | € | 70,354,216.13 |
| § 38 - 277 | € | 2,347,190.21 |
| § 38 - 301 | € | 13,310,251.60 |
| § 38 - 304 | € | 10,312,986.30 |
| § 38 - 450 | € | 10,000,000.00 |
| § 38 - 452 | € | 2,400,000.00 |
| § 38 - 454 | € | 866,277.69 |
| § 38 - 455 | € | 1,732,555.38 |
| § 38 - 464 | € | 4,981,282.23 |
| § 38 - 465 | € | 2,850,000.00 |
| § 38 - 475 | € | 36,487,385.94 |
| § 38 - 485 | € | 513,787.67 |
| § 38 - 498 | € | 205,632.88 |
| § 38 - 523 | € | 4,800,000.00 |
| § 38 - 524 | € | 1,673,122.83 |
| § 38 - 530 | € | 52,519.75 |
| § 38 - 543 | € | 217,508.96 |
| § 38 - 548 | € | 50,613,954.59 |
| § 38 - 708 | € | 6,836,525.90 |
| § 38 - 710 | € | 1,758,381.43 |

\* Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK)

Schedule B - Deutsche Bank AG, London Branch (UK)

| LBHI Proof of Claim No. | Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|
| 44149 | $ 6,682,737.60 | 5 |
| 44151 | $ 3,967,875.45 | 5 |
| 50504 | $ 25,263,581.90 | 5 |
| 50505 | $ 6,547,766.12 | 5 |
| 59719 | $ 6,265,066.50 | 5 |
| 59720 | $ 13,922,370.00 | 5 |
| 59721 | $ 13,985,845.20 | 5 |
| 59780 | $ 20,978,767.80 | 5 |
| 59837* | $ 4,455,739.35 | 5 |
| 67114 | $ 38,599,378.72 | 5 |

| LBHI Proof of Claim No. | Asserted Guarantee Claim amount in LBHI Case (USD) | To Be Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|---|
| 5276** | $ 2,436,321.06 | [$2,448,041.09] | 5 |
| 9834 | $ 2,376,660.00 | [$2,383,277.68] | 9A |
| 10117** | n/a | [$5,559,567.47] | 9A |
| 11386 | $ 13,203,282.73 | [$14,677,623.44] | 9A |
| 11387 | $ 6,606,573.62 | [$7,344,294.73] | 9A |
| 13477** | $ 22,127,172.99 | [$31,405,894.94] | 5 |
| 14416 | $ 34,570,622.51 | [$34,442,951.76] | 9A |
| 15317 | $ 8,990,712.07 | [$7,172,935.03] | 9A |
| 15535** | $ 7,077,189.65 | [$7,144,066.08] | 5 |
| 16072** | $ 1,968,506.56 | [$2,470,327.24] | 5 |
| 17219 | $ 12,953,050.81 | [$14,634,540.08] | 5 |
| 17617** | $ 34,992,671.07 | [$14,482,201.28] | 5 |
| 17742 | $ 2,130,150.00 | [$2,128,565.35]*** | 5 |
| 17743 | $ 5,789,987.49 | [$5,813,417.14] | 5 |
| 17745 | $ 7,421,703.15 | [$7,415,996.09] | 5 |
| 17746 | $ 14,201,000.00 | [$14,190,435.65]*** | 5 |
| 19923 | $ 18,318,186.14 | [$20,475,661.95] | 9A |
| 19963** | $ 3,761,711.84 | [$3,330,756.79] | 9A |
| 19967** | $ 4,694,538.38 | [$2,903,828.86] | 9A |
| 21443 | $ 727,241.52 | [$739,085.26] | 5 |
| 21444 | $ 10,532.19 | [$0.00] | 5 |
| 21895 | $ 7,049,012.48 | [$7,068,638.74] | 9A |
| 21954 | $ 23,297,177.04 | [$21,573,435.24] | 9A |
| 22049** | $ - | [$6,701,689.57] | 9A |
| 22217** | $ 64,903,480.85 | [$58,593812.89] | 5 |
| 22648 | $ 18,571,734.98 | [$18,637,099.86] | 5 |
| 28185** | $ 2,390,512.43 | [$2,590,174.35] | 5 |
| 30122** | $ 40,092.21 | [$1,229,282.69] | 9A |
| 30129** | $ 80,184.44 | [$2,458,565.39] | 9A |
| 55570 | $ 125,878,587.99 | [$102,330,660.44] | 9A |
| 65918** | $ 37,499,905.48 | [$18,887,779.43] | 9A |
| 7BD | n/a | [$12,070,392.65] | 5 |

\* LBHI claimant is listed in EPIQ under a different name

\** Asserted amount includes portion where LBHI claimant is listed in EPIQ under a different name. Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK)

\*** To be allowed as LBHI Direct claim only

# EXHIBIT F

## SECOND AMENDMENT SETTLEMENT AGREEMENT

This second amendment to the Settlement Agreement (defined below) is entered into as of _____ 2015 (the "Execution Date") by and between Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator (the "Plan Administrator") pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for and on behalf of the jointly-administered debtors in the chapter 11 cases described in the recitals below (the "Chapter 11 Estates"), on the one hand, and Deutsche Bank AG, London Branch (the "Creditor"), on the other hand (each of the Plan Administrator and the Creditor, a "Party" and together, the "Parties").

### RECITALS:

A.    On September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "U.S. Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under Case No. 08-13555 (SCC).

B.    On November 24, 2014, the Parties entered into that certain settlement agreement (the "Settlement Agreement") to resolve the conflicting insolvency law issues and other issues relevant for implementing the Harmonizing Resolution, including the allowance of the Creditor Guarantee Claims in the Chapter 11 Cases, pursuant to the terms and conditions set forth therein.

C.    On February 20, 2015, the Parties entered into that certain first amendment settlement agreement ("First Amendment Settlement Agreement") by means of which that certain Schedule A and Schedule B initially attached to the Settlement Agreement were deleted and replaced in accordance with the First Amendment Settlement Agreement.

The Creditor subsequently to the First Amendment Settlement Agreement acquired further claims and the Parties have concluded that such newly acquired claims should be subject to the terms and conditions of the Settlement Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    *Definitions.* Initially capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Settlement Agreement.

2.    *Amendment to First Amendment Settlement Agreement.* Schedule A and Schedule B of the First Amendment Settlement Agreement are deleted in its entirety and the attached Schedule A and Schedule B are substituted therefor.

3.     *Further Amendments.* Any waiver, alteration, supplement, amendment or modification of this Amendment shall be valid only if made in writing and signed by each of the Parties hereto.

4.     *Choice of Law.* This Amendment shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof. The U.S. Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Amendment. Should the U.S. Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Settlement Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York.

5.     *Counterparts.* This Amendment may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties hereto need not appear on the same counterpart.

6.     *Execution.* Signatures to this Amendment may be exchanged by facsimile transmission and/or electronic mail and shall constitute originals for all purposes.


LEHMAN BROTHERS HOLDINGS INC.

By: _____
Print Name: Ron Geraghty
Title: Senior Authorized Signatory


DEUTSCHE BANK AG, LONDON
BRANCH

By: _____        By: _____
Print Name:                        Print Name: MICHAEL JURTON
Title:                             Title: MANAGING DIRECTOR
        Alexander Kraemer
        Director

**Schedule A - Deutsche Bank AG, London Branch (UK)**

| Claim No. according to LBB's creditor list | Allowed Insolvency Claim amount in LBB's insolvency proceedings (Euro) |
|---|---|
| § 38 - 002 | € 15,518,884.72 |
| § 38 - 064 | € 2,108,590.56 |
| § 38 - 065 | € 5,034,436.01 |
| § 38 - 067 | € 1,725,138.89 |
| § 38 - 072 | € 4,479,961.48 |
| § 38 - 079 | € 22,131,789.76 |
| § 38 - 093 | € 5,054,780.01 |
| § 38 - 101 | € 24,272,009.08 |
| § 38 - 131 | € 13,133,597.26 |
| § 38 - 136 | € 1,740,843.98 |
| § 38 - 137 | € 27,910,296.18 |
| § 38 - 196 | € 2,046,333.34 |
| § 38 - 223 | € 1,679,500.00 |
| § 38 - 225 | € 3,818,041.20 |
| § 38 - 232 | € 14,429,235.22 |
| § 38 - 247 | € 15,202,838.00 |
| § 38 - 261 | € 19,667,961.99 |
| § 38 - 262 | € 4,970,533.74 |
| § 38 - 267 | € 4,722,692.50 |
| § 38 - 268 | € 70,354,216.13 |
| § 38 - 277 | € 2,347,190.21 |
| § 38 - 301 | € 13,310,251.60 |
| § 38 - 304 | € 10,312,986.30 |
| § 38 - 450 | € 10,000,000.00 |
| § 38 - 452 | € 2,400,000.00 |
| § 38 - 454 | € 866,277.69 |
| § 38 - 455 | € 1,732,555.38 |
| § 38 - 464 | € 4,981,282.23 |
| § 38 - 465 | € 2,850,000.00 |
| § 38 - 475 | € 36,487,385.94 |
| § 38 - 485 | € 513,787.67 |
| § 38 - 498 | € 205,632.88 |
| § 38 - 523 | € 4,800,000.00 |
| § 38 - 524 | € 1,673,122.83 |
| § 38 - 530 | € 52,519.75 |
| § 38 - 543 | € 217,508.96 |
| § 38 - 548 | € 50,613,954.59 |
| § 38 - 708 | € 6,836,525.90 |
| § 38 - 710 | € 1,758,381.43 |

* Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK)

**Schedule B - Deutsche Bank AG, London Branch (UK)**

| LBHI Proof of Claim No. | Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|
| 44149 | $ 6,682,737.60 | 5 |
| 44151 | $ 5,967,875.45 | 5 |
| 50504 | $ 25,263,581.90 | 5 |
| 50505 | $ 6,547,766.12 | 5 |
| 59719 | $ 6,265,066.50 | 5 |
| 59720 | $ 13,922,370.00 | 5 |
| 59721 | $ 13,985,845.20 | 5 |
| 59780 | $ 20,978,767.80 | 5 |
| 59837* | $ 4,455,739.35 | 5 |
| 67114 | $ 38,599,378.72 | 5 |

| LBHI Proof of Claim No. | Asserted Guarantee Claim amount in LBHI Case (USD) | To Be Allowed Guarantee Claim amount in LBHI Case (USD) | LBHI Class |
|---|---|---|---|
| 5276** | $ 2,436,321.06 | [$2,448,041.09] | 5 |
| 9834 | $ 2,376,660.00 | [$2,383,277.68] | 9A |
| 10117** | n/a | [$5,559,567.47] | 9A |
| 10117** | $ 800,423.92 | [$797,677.07] | 9A |
| 11386 | $ 13,203,282.73 | [$14,677,623.44] | 9A |
| 11387 | $ 6,606,573.62 | [$7,344,294.73] | 9A |
| 13477** | $ 22,127,172.99 | [$31,405,894.94] | 5 |
| 14416 | $ 34,570,622.51 | [$34,442,951.76] | 9A |
| 15317 | $ 8,990,712.07 | [$7,172,935.03] | 9A |
| 15535** | $ 7,077,189.65 | [$7,144,066.08] | 5 |
| 16022** | $ 1,968,506.56 | [$2,470,327.24] | 5 |
| 17219 | $ 12,953,050.81 | [$14,634,540.08] | 5 |
| 17617** | $ 34,992,671.07 | [$14,482,201.28] | 5 |
| 17742 | $ 2,130,150.00 | [$2,128,565.35]*** | 5 |
| 17743 | $ 5,789,987.49 | [$5,813,417.14] | 5 |
| 17745 | $ 7,421,703.15 | [$7,415,996.09] | 5 |
| 17746 | $ 14,201,000.00 | [$14,190,435.65]*** | 5 |
| 19923 | $ 18,318,186.14 | [$20,475,661.95] | 9A |
| 19963** | $ 3,761,711.84 | [$3,330,756.79] | 9A |
| 19967** | $ 4,694,538.38 | [$2,903,828.86] | 9A |
| 21443 | $ 727,241.52 | [$729,085.26] | 5 |
| 21444 | $ 10,532.19 | [$0.00] | 5 |
| 21895 | $ 7,049,012.48 | [$7,068,638.74] | 9A |
| 21954 | $ 23,297,177.04 | [$21,573,435.24] | 9A |
| 22049** | $ - | [$6,701,689.57] | 9A |
| 22217** | $ 64,903,480.85 | [$58,593,812.89] | 5 |
| 22648 | $ 18,571,734.98 | [$18,637,099.86] | 5 |
| 28185** | $ 2,390,512.43 | [$2,992,174.35] | 5 |
| 30122** | $ 40,092.21 | [$1,229,282.69] | 9A |
| 30129** | $ 80,184.44 | [$2,458,565.39] | 9A |
| 55570 | $ 125,878,587.99 | [$102,330,660.44] | 9A |
| 65918** | $ 37,499,905.48 | [$18,887,779.43] | 9A |
| TBD | n/a | [$12,070,392.65] | 5 |

\* LBHI claimaint is listed in EPIQ under a different name.

\*\* Asserted amount includes portion where LBHI claimant is listed in EPIQ under a different name. Excludes subparticipations where economic beneficiary is not Deutsche Bank AG, London (UK).

\*\*\* To be allowed as LBHI Direct claim only