Hearing Date: June 2, 2016 at 10:00 A.M. EST

Objection Deadline: May 26, 2016 at 4:00 PM EST

Duncan E. Barber (*Pro Hac Vice Motion Pending*) (Colo. Bar No. 16768)
4582 S. Ulster St. Pkwy., Suite 1650
Denver, CO 80237
Phone:  720-488-0220
Fax:  720-488-7711
Email:  dbarber@sbbolaw.com
*Attorneys for Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC and Ironbridge Aspen Collection, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
In re                                                             :   Chapter 11 Case No.:
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                          :   08-13555 (SCC)
                                                                  :
            Debtors.                                              :   (Jointly Administered)
------------------------------------------------------------------x

**MOTION TO ABSTAIN FROM CONSIDERATION OF PLAN ADMINISTRATOR'S
FIVE HUNDRED NINTH OMINBUS OBJECTION TO CLAIMS**

Creditors, Ironbridge Homes, LLC ("IBH"), Ironbridge Mountain Cottages, LLC ("IMC") and Ironbridge Aspen Collection, LLC ("IAC" and collectively with IBH and IMC the "Movants") hereby file their Motion to Abstain (the "Motion") from consideration of the Five Hundred Ninth Omnibus Objection to Claims (the "Claim Objection"), filed by the Plan Administrator and in support thereof respectfully represents as follows:

**INTRODUCTION**

1.      The Claim Objection is nothing more than a partial re-hashing of post-petition litigation (the "State Court Litigation") LB Rose Ranch, LLC (the "Debtor" or "LBRR") commenced against Movants and multiple other defendants in the District Court for Garfield

County, Colorado (the "State Court"). This Court should abstain from considering the Claim Objection primarily because it will not afford complete relief to the parties and simply will result in piecemeal litigation between this Court and the State Court with the possibility of conflicting results. Additionally, the Court should abstain from hearing the Claim Objection because the claims at issue in the State Court and at issue in the Claim Objection are based solely on state law, arise out of the same facts and circumstances and completely overlap. Moreover, there are other defendants in State Court Litigation over whom this Court does not have jurisdiction and who are not parties to the Claim Objection.

## BACKGROUND

2.  In June 2004, LBRR entered into a Purchase and Sale Agreement (the "PSA") with Hansen Construction, Inc. ("HCI"). The PSA related to LBRR's development of certain real property located in Garfield County, Colorado, the sale of lots to third-parties once developed by LBRR, and the construction of homes on lots that were sold (the "Ironbridge Development"). As part of obtaining local government approval for the Ironbridge Development, LBRR agreed with Garfield County to build thirty (30) "affordable homes" within the Ironbridge Development.

3.  On October 1, 2004, HCI assigned the PSA to IBH pursuant to Section 22(b) of the PSA.

4.  The PSA in so far as it related to lots designated for affordable homes was assigned to either IMC or IAC.

5.  Initially things went well under the PSA. All available lots (approximately 150) in Phase I of the Ironbridge Development were sold and homes were constructed. Additionally, IBH built a recreation center in Phase I.

6. Notwithstanding the overall downturn the United States residential real estate market was experiencing at the time, sales in the Ironbridge Development remained brisk and the majority of the seventy-four (74) available lots in Phase II were sold prior to LBRR filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7. Despite the continued lot sales, in the months leading up to its seeking relief under the Bankruptcy Code, LBRR ceased to honor its obligations under the PSA. As a result of LBRR's inaction, sales were lost, contracts were cancelled, lenders refused to convert construction financing into permanent financing, leading to foreclosures in the Ironbridge Development, the golf amenity (a key marketing and sales attraction) became essentially valueless, and uncertainty arose regarding the buildout of Phase III, which in turn concerned potential buyers due to the concomitant increase in HOA dues if Phase III was not built.

8. On February 9, 2009, LBRR filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9. IBH, IMC and IAC each timely filed a proof of claim (the "Claims") in the Debtor's bankruptcy case asserting amounts due under the PSA and related contracts.

10. On November 30, 2011, the Debtor commenced the State Court Litigation by filing a complaint (the "Complaint") in the State Court. A copy of the Complaint is attached as **Exhibit 1** to the accompanying declaration of Duncan E. Barber, dated May 5, 2016 (the "Barber Declaration").

11. The Complaint names eight (8) defendants (the "Defendants"), including the Movants, and asserts eight (8) state law based causes of action including: (i) breach of contract; (ii) a request for declaratory judgment; (iii) breach of fiduciary duty; (iv) civil theft; and (v) fraud

3

(collectively the "Causes of Action"). Movants, as well as the other Defendants, deny the allegations in the Complaint.

12. To Movants' knowledge, Debtor has not served the Complaint on any of the Defendants. Rather, Debtor has held the State Court Litigation in abatement since it was filed in November 2011, filing periodic status reports with the State Court. A copy of Debtor's most recent Status Report filed in the State Court Litigation is attached to the Barber Declaration as **Exhibit 2**.

13. To proceed with the State Court Litigation and/or the Claim Objection, Debtor must first terminate the parties' Tolling and Forbearance Agreement (the "Tolling Agreement"), which remains in full force and effect, a copy of which is attached to the Barber Declaration as **Exhibit 3**. To date, Debtor has not done so.

14. On September 28, 2015, Debtor filed the Claim Objection without terminating the Tolling Agreement. The Claim Objection essentially restates in summary fashion some of the claims from the Complaint and seeks disallowance of the Claims based on Movants' alleged breaches of the PSA and other agreements with Debtor, which is the same basis of the Complaint, and the very same allegations which will be contested by Movants and the other Defendants in defending the Complaint in the State Court.

### RELIEF REQUESTED

15. Movants respectfully request the Court abstain from considering the Claim Objection in favor of allowing the parties to pursue the State Court Litigation.

16. Pursuant to 28 U.S.C. § 1334(c)(1), this Court may abstain from hearing the Claim Objection if doing so is "in the interest of justice or in comity with state courts or respect for State law." 28 U.S.C. § 1334(c)(1).

17. Bankruptcy Courts in the Southern District of New York typically turn to a twelve-factor test to analyze permissive abstention: **(1)** the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, **(2)** the extent to which state law issues predominate over bankruptcy issues, **(3)** the difficulty or unsettled nature of the applicable state law, **(4)** the presence of a related proceeding commenced in state court or other non-bankruptcy court, **(5)** the jurisdictional basis, if any, other than 28 U.S.C. § 1334, **(6)** the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, **(7)** the substance rather than form of an asserted `core' proceeding, **(8)** the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, **(9)** the burden of [the court's] docket, **(10)** the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, **(11)** the existence of a right to a jury trial, and **(12)** the presence in the proceeding of non-debtor parties. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003); *Fried v. Lehman Brothers Real Estate Associates III, L.P.*, 496 B.R. 706, 712-13 (S.D.N.Y. 2013).

18. "In determining whether to exercise permissive abstention under § 1334(c) courts have considered *one or more* (not necessarily all) of the twelve factors." *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002) (emphasis in the original). "The factors largely ask the Court to balance the federal interest in the efficient bankruptcy administration against the interest of comity between state and federal courts." *Fried*, 496 B.R. at 713.

19. In this case, the relevant and applicable factors weigh in favor of the Court abstaining in favor of the state forum initially selected by the Debtor for the resolution of the Causes of Action.

20. The **first** factor supports abstention. Debtor's plan was confirmed in December 2011. Since confirmation, the Plan Administrator has been in the years-long process of liquidating and closing out Debtor's estate. As recognized by the District Court in *Fried*, allowing the parties to litigate issues in an appropriate state court would have little to no impact on the administration of the Lehman estate. *Fried*, 496 B.R. at 711. This is especially true here where Debtor commenced the State Court Litigation in November 2011, yet has not pursued it for almost five and a half years and still the State Court Litigation remains on abatement by Debtor's express choice. Even if the Court proceeded with consideration of the Claim Objection, which it should not, the State Court Litigation will still have to be litigated to conlusion to fully resolve the Claims.

21. The **second** factor supports abstention. Neither the Complaint nor the Claim Objection and related responses involve bankruptcy law. There are only state law issues at play in both the Claim Objection and the State Court Litigation. The PSA and related agreements are governed by Colorado law[1], thus any decisions regarding whether those agreements were breached and by whom will be decided by application of Colorado law.

22. As to the **third** factor, until further pleading in the State Court Litigation, it is difficult to determine the third factor. But to be sure, only Colorado law is at issue in both the Claim Objection and State Court Litigation.

23. As to the **fourth** factor, Debtor commenced the State Court Litigation in November 2011 which involves the same facts and transactions as at issue in the Claim Objection. The fourth factor clearly favors abstention.

24. As to the **fifth** and **seventh** factors, while, the Claim Objection is a "core" proceeding, the Claim Objection duplicates the claims asserted in the Complaint against not just

---

[1] *See* PSA at Section 22(f).

6

Movants but also other Defendants not before this Court. Movants believe the Plan Administrator only raised the objections he was certain would not raise *Stern* issues. Moreover, while objecting to Movants' Claims may be a core proceeding, the real substance of the Claim Objection is a variety of state law causes of action which are also at issue in the State Court Litigation against Movants and other Defendants. This has the appearance of gamesmanship. These factors favor abstention.

25. As to the **sixth** factor, the Claim Objection has zero bearing on the main case.

26. As to the **eighth** factor, Movants do not believe that it would be feasible to sever the purely state law claims from the core matters, which is what the Plan Administrator has attempted to do by pursuing only a portion of the theories asserted in the Complaint in the Claim Objection. The issues are too intertwined to be separated and forcing the Movants to try these issues in two different forms could lead to inconsistent results. Finally, Garfield County, Colorado, the County in which the State Court Action is pending, is the sole and exclusive venue for actions involving the PSA. PSA Section 22(f). Therefore, the eighth factor supports abstention.

27. As to the **ninth** factor, while the Court knows it docket, the State Court Litigation is pending in Colorado. Therefore, this Court need not duplicate what will also take place in Colorado.

28. The **tenth** factor also favors abstention. It is difficult to conclude that the Claim Objection is anything other than forum shopping. Debtor commenced the State Court Litigation over five (5) years ago and several of the Causes of Action there are duplicated by the Claim Objection. Yet, Debtor has voluntarily kept that the State Court Litigation on abatement and now the Plan Administrator has filed the Claim Objection in this Court, thus bifurcating

Movants' defense of its Claims in this Court and its defense in the State Court Litigation with the other defendants. Certainly Movants' defense of the State Court Litigation will consist of the same facts and law as Movants would use to defend against the Claim Objection. Thus, considering that the Claim Objection will force Movants to prosecute and defend against the same claims in two (2) different forums, the Claim Objection appears to be forum shopping.

29. As to the **eleventh** factor, while the PSA contains a jury waiver (PSA at Section 22(f)), that waiver only applies to Movants.

30. As to the **twelfth** factor, the Claim Objection involves only Debtor and Movants. But the State Court Litigation involves other Defendants not before this Court. The existence of the other Defendants favors resolving all claims and defenses in one forum, the State Court.

31. The bulk of these factors favor abstention.

WHEREFORE, Movants respectfully request the Court enter an order abstaining from consideration of the Claim Objection and granting such other and further relief as the Court deems just and proper.

Dated: May 4, 2016
Denver, Colorado

SHAPIRO BIEGING BARBER OTTESON LLP

By: */s/ Duncan E. Barber*
Duncan E. Barber, Colorado Bar #16768

4582 South Ulster St. Parkway, Suite 1650
Denver, CO  80237
Tel:  (720) 488-0220
Fax:  (720) 488-7711
E-mail dbarber@sbbolaw.com

*Attorneys for Ironbridge Homes, LLC, Ironbridge Mountain Cottages, LLC and Ironbridge Aspen Collection, LLC*