| | |
|---|---|
| DISTRICT COURT, GARFIELD COUNTY, COLORADO<br>109 8th St., Suite 104<br>Glenwood Springs, CO 81601<br><br>**Plaintiff:** LB ROSE RANCH, LLC,<br><br>v.<br><br>**Defendants:** IRONBRIDGE HOMES, LLC, IRONBRIDGE MOUNTAIN COTTAGES, LLC, IRONBRIDGE ASPEN COLLECTION, LLC, IRONBRIDGE MANAGEMENT LLC, SUNRISE COMPANY, DIRK GOSDA, individually, HANSEN CONSTRUCTION, INC., and STEVEN A. HANSEN, individually. | EFILED Document<br>CO Garfield County District Court 9th JD<br>Filing Date: Nov 30 2011 10:31AM MST<br>Filing ID: 41142340<br>Review Clerk: Nola Buchanan<br><br><br>Δ COURT USE ONLY Δ<br><br>Case Number:<br><br>Div.: |
| **Attorneys:**<br>THE MADDEN LAW FIRM<br>John W. Madden, III, No. 5125<br>370 17th Street, Suite 3500<br>Denver, CO 80202<br>(303) 436-1111<br>Counsel for LB ROSE RANCH, LLC | |
| **COMPLAINT** | |

Plaintiff, LB Rose Ranch, LLC ("LB Rose Ranch" or "Plaintiff"), by and through its attorneys, The Madden Law Firm, for its Complaint against the Defendants, states and alleges as follows:

<u>General Allegations</u>

1. Plaintiff LB Rose Ranch, a Delaware limited liability company qualified to do business in the state of Colorado, with its principal place of business located in Glenwood Springs, Colorado, was at all times material hereto the owner of certain real estate located in Garfield County, Colorado, (the "Ironbridge Property").

2. The Defendant Hansen Construction, Inc., ("Hansen Construction"), a Colorado Corporation with its principal place of business located at 310 Aspen Airport Business Center in Aspen, Colorado, was at all times material hereto in the business of buying real property and developing, building, marketing, and selling residential homes.

EXHIBIT 5

3. The Defendant Ironbridge Homes, LLC, ("Ironbridge Homes"), a Colorado limited liability company with its principal place of business located at 310 Aspen Airport Business Center in Aspen, Colorado, and with offices located at 410 Ironbridge Dr., Glenwood Springs, Colorado, was at all times material hereto in the business of buying real property and developing, building, marketing and selling residential homes.

4. The Defendant Ironbridge Mountain Cottages, LLC, ("Ironbridge Cottages"), a Colorado limited liability company with its principal place of business located at 310 Aspen Airport Business Center in Aspen, Colorado, and with offices located at 410 Ironbridge Dr., Glenwood Springs, Colorado, was at all times material hereto in the business of buying real property and developing, building, marketing and selling residential homes.

5. The Defendant Ironbridge Aspen Collection, LLC, ("Ironbridge Aspen Collection"), a Colorado limited liability company with its principal place of business located at 310 Aspen Airport Business Center in Aspen, Colorado, and with offices located at 410 Ironbridge Dr., Glenwood Springs, Colorado, was at all times material hereto in the business of buying real property and developing, building, marketing and selling residential homes.

6. The Defendant Ironbridge Management LLC, ("Ironbridge Management"), a Colorado limited liability company with its principal place of business located at 310 Aspen Airport Business Center in Aspen, Colorado, and with offices located at 410 Ironbridge Dr., Glenwood Springs, Colorado, was at all times material hereto in a business related to the buying of real property and the developing, building, marketing and selling of residential homes and participated with the other Defendants in all aspects of the Defendants' actions regarding the Ironbridge Property, including preparation of financial and other documents and records.

7. The Defendant Sunrise Company, ("Sunrise"), a California corporation who at all times material hereto conducted business in Colorado and was at such times in the business of buying real property and developing, building, marketing and selling residential homes.

8. The Defendant Dirk Gosda ("Gosda"), was at all times material hereto a resident of Aspen/Snowmass, Colorado, was experienced in the business of residential construction and development and was an employee, managing member, manager and member of Ironbridge Homes, Ironbridge Cottages, Ironbridge Aspen Collection and Ironbridge Management. In such capacities, Gosda unilaterally controlled all actions and inactions of Ironbridge Homes, Ironbridge Cottages, Ironbridge Aspen Collection and Ironbridge Management. In addition, Gosda at all times material hereto was the President of the Colorado Division of Sunrise.

9. The Defendant Steven A. Hansen, ("Hansen"), was at all times material hereto a resident of Aspen, Colorado, was experienced in the business of residential construction and development and was an employee, officer, director and controlling shareholder of Hansen Construction. In such capacities Hansen unilaterally controlled all actions and inactions of Hansen Construction. He also acted as a manager of Ironbridge Homes and of Ironbridge Cottages.

EXHIBIT 5

10. This Court has personal jurisdiction over the Defendants as they have purposely availed themselves to the jurisdiction of Colorado and have minimum contacts sufficient to establish jurisdiction through their ongoing business relationships with the Plaintiff LB Rose Ranch in Colorado and in connection with their ownership, development, marketing and selling of portions of the Ironbridge Property.

11. Venue is proper in Garfield County, Colorado because the Ironbridge Property which is the subject of this action is located in Garfield County, Colorado, the Agreements which are also the subject of this action were to be performed in Garfield County, Colorado, and the related ongoing business relationships of the Defendants with the Plaintiff were conducted in Garfield County, Colorado.

## LB Rose Ranch Agreements

12. On or about June 1, 2004, Hansen Construction entered into a Purchase and Sale Agreement, (the "Agreement"), with LB Rose Ranch wherein LB Rose Ranch as the "Seller" agreed to sell and Hansen Construction as the "Purchaser" agreed to buy approximately 243 lots located on portions of the Ironbridge Property, referred herein individually as a "Lot" and collectively as the "Lots." Thereafter, Ironbridge Homes, Ironbridge Cottages and Ironbridge Aspen Collection, (the "Ironbridge Entities'), through an assignment from Hansen Construction, dated June 21, 2005, and under a First Amendment to the Agreement, dated September 5, 2006, agreed with LB Rose Ranch that the Ironbridge Entities would be held jointly and severely liable under the Agreement for all obligations of the Purchaser Hansen Construction. The Agreement and the First Amendment were further amended under a Second Amendment to Purchase and Sale Agreement, dated November 15, 2006, (all together, the "Agreement as Amended"). The Second Amendment provided for the purchase of two additional lots located in the Ironbridge Property, (the "Riverfront Lots.").

13. Sunrise and Gosda caused the formation as Colorado limited liability companies of Ironbridge Homes on or about October 1, 2004, of Ironbridge Cottages on or about June 21, 2005, and of Ironbridge Aspen Collection and Ironbridge Management on July 5, 2005, all for Sunrise's purposes regarding the Ironbridge Property, including Sunrise's development and redevelopment of the portions of the Ironbridge Property to be acquired under the Agreement as Amended.

14. On or about November 12, 2007, LB Rose Ranch entered into an additional agreement with Ironbridge Homes by LB Rose Ranch's acceptance of a written proposal of such date from Gosda, on behalf of Ironbridge Homes, to construct twenty-four "Affordable Homes" on still other lots located in the Ironbridge Property, which Affordable Homes would then be sold to qualified members of the public by LB Rose Ranch, (the "Affordable Housing Agreement").

15. Attached to the Agreement as Amended was an exhibit which presented an overall budget of costs and expenses anticipated to be incurred by the Purchaser regarding the related Lots and development of the homes thereon, (the "Approved Budget"). It also provided that an

3

EXHIBIT 5

approved budget would be developed for each Lot with a "Home" built thereon, (an "Individual Budget"), to be agreed to by the Seller and the Purchaser generally on the basis of the overall budget presented in the above exhibit. The Agreement as Amended also provided that an Individual Budget for a Home may not be modified except by consent in writing of LB Rose Ranch or to accommodate "Permitted Deviations" and homeowner upgrades which upgrades were covered by increases in the related sales price. Permitted Deviations were limited by definition to items of expense on the Approved Budget related to hard construction costs of a Home, "in an amount equal to five (5%) percent of the aggregate amount set forth for particular items of expense on the Approved Budget on a Home by Home basis." Deviations were specifically not permitted for items of expenses related to soft costs or land costs with respect to a Home. Subsequently, the Ironbridge Entities presented a separate Individual Budget for each of the home models to be built by them which were approved by LB Rose Ranch and the Defendants proceeded to develop, construct and sell Homes on the Lots purchased from LB Rose Ranch, with Hansen and Hansen Construction acting as the signatory under the related Building Permits.

16. The Agreement as Amended also provided that the Purchaser shall, once a quarter, provide a proposed revised budget, which, if the Seller does not approve within ten days of receipt, will be deemed to not have the Seller's consent, and the previous Approved Budget shall remain in effect. In August, 2005, the Ironbridge Entities presented a proposed revised budget for the overall project and proposed revised Individual Budgets for each of the home models, all of which budgets were approved by LB Rose Ranch. In October, 2006, the Ironbridge Entities presented a revised proposed budget for the overall project and proposed revised Individual Budgets for each of the home models, all of which budgets were again approved by LB Rose Ranch, (the "2006 Approved Budgets"). The 2006 Approved Budgets were approved by LB Rose with the understanding, based on discussions with the Defendants, that the increased costs included therein would apply to future costs incurred pursuant to the Agreement as Amended.

17. No proposed revised budgets were submitted to LB Rose during 2007 or the first nine months of 2008. The next proposed revised budget for the overall project and proposed revised Individual Budgets for each of the home models which were presented by the Ironbridge Entities were presented in October, 2008. Notwithstanding the national collapse of the real estate market and a related lowering of real estate values and building costs, the presented budgets contained substantial, but unjustified increases. These included, among others, $5,265,702 in proposed increases in "overhead" and "supervision" costs over the 2006 Approved Budgets, which were in addition to previously approved increases of $2,583,169 for such costs from the initial budget. None of the October, 2008 proposed revised budgets were approved by LB Rose Ranch. Accordingly, the 2006 Approved Budgets remained in effect.

18. The Agreement as Amended provided that the Purchaser shall pay the Seller a Base Land Price for each Lot as determined therein at the time such lot was conveyed to the Purchaser, by the delivery of the Note of the Purchaser in the amount of the Base Land Price together with a projected amount to cover an additional Deferred Land Payment, which Note was fully payable at the time of closing of the sale of the Lot and related Home to a third party purchaser. The

4

EXHIBIT 5

Purchaser's Note was required to be secured by a deed of trust covering such Lot, although it was subrogated to a related construction loan to be obtained by the Purchaser. The Ironbridge Entities purchased twenty-nine Lots under this procedure and LB Rose Ranch received all payments due regarding such Lots.

19. After the First Amendment of the Purchase and Sale Agreement, however, the Purchaser was allowed at the time of its purchase of a Lot to convey title to a third party purchaser, who at such time obtained a purchase/construction loan for payment of the third party's purchase price and for the anticipated construction cost draws for construction of the related Home by the Defendants. Although LB Rose Ranch, at such time, received payment of its Base Land Price, one-half of any Lot premium and an amenity charge, payment to LB Rose Ranch of its Deferred Land Payment was not payable until ten days after completion of the construction of the Home, and was not secured under the related deed of trust on the Lot. The Agreement as Amended provided that the construction of a Home on a Lot should be completed within eleven months of conveyance of the Lot to Purchaser.

20. The Agreement as Amended provided that the Purchaser shall notify the Seller on a monthly basis regarding any and all pending sales of Homes, defined as the residences to be constructed on the Lots, and that the Purchaser shall provide the Seller with copies on a monthly basis of all construction documents, schedule of draws, outstanding loan balances and reports and records applicable to Purchaser's calculation of the Deferred Land Price, including supporting documentation of the Purchaser's costs, copies of the HUD-1 with third party purchasers, invoices, accounting records and all other information reasonably requested by the Seller. The Defendants have consciously failed to comply fully with these requirements.

21. The Deferred Land Price was defined under the Agreement as Amended as an amount equal to fifty percent (50%) of Net Purchaser Profit for each Building Lot. The amount of the Net Purchaser Profit for each Building Lot was defined therein as the Gross Sales Revenue received by the Purchaser in connection with a Home sold to a third party purchaser less certain deducted amounts.

22. The Agreement as Amended provides for "Distribution on the Closing of the Sale of a Home to a Third Party Purchaser." In such respect, it states in pertinent part, that the parties to the agreement shall be reimbursed their actual out-of pocket costs from the Gross Sales Revenue in each instance "not exceeding the Approved Budget" and then provides for a priority payment of various remaining matters. First of which stated:

> The first proceeds shall be used to pay the costs for construction of the Home up to the amount of the Approved Budget, as described in Paragraph 1, including any warranty reserves, which shall be paid first to the construction loan lender until the construction loan applicable solely to the Home has been paid in full (though not exceeding the Approved budget). The remainder up to the amount of the Approved Budget will be paid to Purchaser in trust to pay costs per Approved Budget, then distributed as part of Net Purchaser Profit (if such costs are less than the Approved Budget.) The Purchaser shall

5

EXHIBIT 5

place the budgeted warranty reserves into a joint account to be used to satisfy any warranty claims. (emphasis added)

The related section concludes by stating that Net Purchaser Profit shall be distributed "at Closing" 50% to Seller and 50% to Purchaser. As more fully discussed below, since April 19, 2007, no such payments have been made. Neither have the Defendants placed any of the above funds "in trust" as required, nor have they placed any budgeted warranty reserves into a joint account as required.

23. Beginning on or about November 16, 2004, and continuing up to on or about September 29, 2008, the Ironbridge Entities purchased 150 of the 243 Lots under the Agreement as Amended. No additional Lots were purchased thereafter by the Defendants.

24. On or about March 7, 2007, Ironbridge Homes purchased the two Riverfront Lots from LB Rose Ranch pursuant to the Second Amendment, agreeing to pay $340,000.00 and $350,000.00 for the lots respectively. The purchase price was payable under Promissory Notes of Ironbridge Homes, dated as of March 7, 2007, and payable to the order of LB Rose Ranch in such amounts with interest. The Notes were due and payable, in any event, on or before March 7, 2010.

25. By January, 2010, Ironbridge Homes had completed construction of four of the Affordable Homes. At such time, its construction of twelve of the remaining twenty Affordable Homes was approximately 90% complete and the construction of the last eight of the Affordable Homes was approximately 60% complete. Thereafter, LB Rose Ranch made the decision to have the construction of the Affordable Homes completed by others than the Defendants.

26. In January, 2010, LB Rose Ranch and Land Title Guaranty Company, Glenwood Springs, Colorado, entered into an Escrow Agreement, under which portions of the net proceeds from sales by LB Rose Ranch of the Affordable Homes in the amount of $509,817.00 were placed in escrow pending resolution of claims of the Ironbridge Entities to amounts due them regarding the construction of homes pursuant to the Affordable Housing Agreement. LB Rose Ranch has and does dispute and deny any and all of such claims.

27. No payments were made by Ironbridge Homes on the two Riverfront Lot Notes as required thereunder and, accordingly, they have been in default since March 7, 2010.

28. On information and belief, the Defendants continued developing, building, marketing and selling residential Homes on Lots which they had purchased from LB Rose Ranch under the Agreement as Amended until approximately May 14, 2010, when the Ironbridge Entities filed Statements of Dissolution with the Colorado Secretary of State.

FIRST CLAIMS FOR RELIEF
(Breach of Contract)
Hansen Construction and the Ironbridge Entities

EXHIBIT 5

29. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 28, above.

30. Beginning in April, 2004, until on or about April 19, 2007, the Defendants made periodic payments to LB Rose Ranch of sums designated as payments of LB Rose Ranch's Base Land Prices, its share of lot premiums and amenity payments, as well as its Deferred Land Price for certain Lots. As stated, the Defendants, however, did not provide copies on a monthly basis of all construction documents, schedule of draws, outstanding loan balances and reports and records applicable to Purchaser's calculation of the Deferred Land Price, including supporting documentation of Purchaser's costs, copies of the HUD-1 with third party purchasers and invoices, accounting records and other documents, as required under the Agreement as Amended.

31. The periodic payments discussed in Paragraph 30 were claimed by the Defendants to include payment of the Deferred Land Prices regarding 58 of their purchased Lots. The last such payment was by check dated April 19, 2007, in the amount of $273,975, stated to be for LB Rose Ranch's Deferred Land Price for 8 Lots and Homes. As stated in the First Amendment, payment of the Deferred Land Price was then to be made to LB Rose Ranch, within ten days of the completion of the construction of the third party purchaser's Home and was to be 50% of the Net Purchaser Profit, with the balance thereof payable to Ironbridge Homes.

32. After April 19, 2007, the Defendants continued to construct, market and sell Homes on Lots purchased from LB Rose Ranch as of such date, other than the 58 Lots discussed in Paragraph 31, above. In addition, they continued to purchase additional Lots from LB Rose Ranch up to and including September 29, 2008, and after such date continued to construct, market and sell Homes on Lots purchased from LB Rose Ranch until sometime in the first part of 2010. No payments have been made to LB Rose Ranch for its Deferred Land Prices by any of the Defendants for the 92 Lots purchased by them beyond the 58 Lots discussed in Paragraph 31.

33. LB Rose Ranch continually made demands upon the Defendants to provide the documentation discussed under Paragraph 30 up through April 19, 2007, and continued to make such demands thereafter. In response, the Defendants provided limited summary sheets and other similar documents at various times up through early 2009. Related discussions were also held regarding requested documentation between accountants for LB Rose Ranch and the in-house accountant for the Ironbridge Entities. These continued up to the end of March, 2009, when the Defendants' counsel became involved in discussions thereafter. No additional documents were, however, provided.

34. Eventually in 2009, LB Rose Ranch discovered that after the last Deferred Land Prices were paid to LB Rose Ranch on or about April 19, 2007, Net Purchaser Profits in the amount of at least $530,000 were disbursed to Hansen, Gosda and Hansen Construction during the remainder of 2007, and to Ironbridge Cottages in the amount of at least $645,000 during the remainder of 2007, as well as an additional $584,000 for unsupported fees paid to the Ironbridge

EXHIBIT 5

Entities after April 29, 2007. On information and belief, portions of such distributions were further disbursed to Sunrise. If the average $34,246.88 Deferred Land Price paid LB Rose Ranch for each of the last 8 Lots, discussed under Paragraph 31, was properly computed under the 2006 Approved Budgets and was applied to the 92 homes for which Deferred Land Prices have not been paid, $3,150,712.90 would be payable to LB Rose Ranch as Deferred Land Prices, for which the Defendants have breached the Agreement as Amended in withholding, together with interest at the rate of 15% per annum from the date such payment should have been made and reasonable attorney fees and costs.

35. On information and belief, the Defendants have received Gross Sales Revenue from the sale of the 150 Lots and the Homes constructed thereon, which after deductions allowed under the Agreement as Amended and as limited under the 2006 Approved Budgets has resulted in substantial Deferred Land Prices payable to LB Rose Ranch, which were improperly withheld and have not been paid, but, rather, were paid to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property. Even from the limited information provided to LB Rose Ranch by the Defendant, such amounts total $1,034,651.00 or more.

36. The Defendants have improperly withheld and have not paid all of the Lot Premiums to LB Rose Ranch which were required to be paid under the Agreement as Amended. Rather, such funds were paid to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property. From the limited information provided to LB Rose Ranch by the Defendant, such amounts total $6,000.00 or more.

37. On information and belief, the Defendants have received Gross Sales Revenue from the sale of the 150 Lots, which after deductions allowed under the Agreement as Amended and as limited under the 2006 Approved Budgets resulted in substantial Amenity Contributions and Resident Membership Activation Fees payable to LB Rose Ranch, which were improperly withheld and have not been paid, but, rather, were paid to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property. From the limited information provided to LB Rose Ranch by the Defendant, such amounts total $204,257.00 or more.

38. Defendants have received Gross Sales Revenue from the sale of the 150 Lots and the Homes constructed thereon, from which they were required under the Agreement as Amended to place in a joint account, under Purchaser's and LB Rose Ranch's names, adequate funds for warranty reserves to satisfy warranty claims and to, on a monthly basis thereafter, by agreement with LB Rose Ranch decide how much of such funds should be held with the remainder thereof being distributed 50% to the Purchaser and 50% to LB Rose Ranch. On information and belief, the Defendants budgeted $3,694,972.00 in such funds to be placed in a Risk Management Reserve Account, but that such funds were never placed in a joint account with LB Rose Ranch. Neither were any of such funds paid LB Rose Ranch, but, on information and belief, rather, a portion of such funds were paid to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property. From the limited

EXHIBIT 5

information provided to LB Rose Ranch by the Defendants, such amounts which should have been paid to LB Rose Ranch total $499,746.30 or more.

39. The Defendants failed to provide information and documentation of the Gross Sales Revenues as required under the Agreement as Amended for each Lot and Home and they failed and have continued to fail to review with LB Rose Ranch on a monthly basis supporting financial documentation for all Homes that had been closed for sixty days and the documentation of other costs incurred, such as soft costs, Amenity and Facility Costs, Future Phase Infrastructure Costs, and the status of any amounts held to cover un-expired warranties, all of which obligations are provided under and survive the termination of the Agreement as Amended.

40. As a result of the Defendants' actions and inactions, Hansen Construction and the Ironbridge Entities have breached their obligations under the Agreement as Amended and LB Rose Ranch is entitled to damages in an amount to be proven at trial and pre-judgment and post-judgment interest and attorney fees, as provided in the Agreement as Amended.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)
Ironbridge Homes

41. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 40, above.

42. No amounts have been paid to LB Rose Ranch under Ironbridge Homes' Notes regarding its purchase of the two River Front Lots pursuant to the Second Amendment of the Agreement as Amended. Accordingly, Ironbridge Homes has breached its obligations under these Notes and LB Rose Ranch has been damaged in the amount of $690,000 in principal amount with interest at the rate of 15% per annum from March 7, 2010, together with reasonable attorney fees and costs regarding collection, as provided under the Ironbridge Homes' Notes, for all of which Ironbridge Homes is liable.

## THIRD CLAIM FOR RELIEF
(Declaratory Judgment)
Ironbridge Entities

43. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 42, above.

44. A present uncertainty and controversy exist regarding the matters discussed in Paragraphs 12, 23 and 24, above.

45. LB Rose Ranch seeks declaratory relief, pursuant to the Colorado Declaratory Judgments Law, C.R.S. §§ 13-51-101 et seq., and pursuant to C.R.C.P. 57 on the following matters:

EXHIBIT 5

a. Whether there are any amounts required to be paid by LB Rose Ranch for sums owned under the Affordable Housing Agreement;

b. If there are any such amounts payable under the Affordable Housing Agreement, are they payable by LB Rose Ranch to Ironbridge Homes;

c. If there are any such amounts payable under the Affordable Housing Agreement to any of the Ironbridge Entities, are they off-set by damages or other amounts payable by the Ironbridge Entities under LB Rose Ranch's claims herein.

46. In requesting this declaratory relief, LB Rose Ranch is requesting an interpretation of the meaning of the language of the Affordable Housing Agreement and of the rights, legal status and relationship of LB Rose Ranch and the Ironbridge Entities under Colorado law and the above recited facts.

## FOURTH CLAIM FOR RELIEF
(Joint and Several Liability)
All Defendants

47. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 46, above.

48. The Defendants Hansen, Gosda and Sunrise are individually liable and responsible jointly and severally with all of the Defendants for the damages sought by LB Rose Ranch under the allegations herein, as a result of their own individual actions and pursuant to the doctrine of alter ego regarding their use of the other Defendants as mere instrumentalities for transacting their own affairs without regard to each entity's supposed separate and independent existence, all for the purpose of evading important legislative policies and to perpetuate continued wrongs against LB Rose Ranch. Such liability is further supported by the alleged facts herein for the reasons stated and under the doctrines of piercing a corporate/entity veil, fraudulent transfer, liability flowing from improper disposition of a dissolved entity's assets, equitable (constructive) fraud and joint venture liability.

49. As a result of the actions and inactions of the Defendants, including the actions of Hansen, Gosda and Sunrise, Hansen, Gosda and Sunrise are jointly and severally liable with the rest of the Defendants for the damages of LB Rose Ranch alleged herein, together with pre-judgment and post-judgment interest, costs and attorneys fees.

## FIFTH CLAIM FOR RELIEF
(Liability under Common Plan and Design)
All Defendants

50. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 49 above.

EXHIBIT 5

51. All of the Defendants, including Hansen, Gosda and Sunrise, individually and through their control of the actions and inactions of the other Defendants, consciously conspired and deliberately pursued a common plan and design with all of the Defendants which resulted in the damages claimed herein by the Plaintiff LB Rose Ranch. All of the Defendants reached a meeting of the minds to improperly withhold funds payable to LB Rose Ranch under the agreements with LB Rose Ranch discussed herein, and to divert such funds to Hansen, Gosda and Sunrise directly, and indirectly through the other Defendants for matters unrelated to such agreements. In pursuit of the common plan and design, the Defendants performed the overt acts as described above in contravention of the terms of the described agreements and as a result thereof, LB Rose Ranch suffered damages in an amount to be proven at trial for which all of the Defendants are jointly and severally liable, together with pre-judgment and post-judgment interest, costs and attorney fees.

## FIFTH CLAIM FOR RELIEF
(Breach of Fiduciary Duty)
All Defendants

52. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 51, above.

53. Under the Agreement as Amended, all Gross Sales Revenues were payable to the Purchaser to be held in trust and to be distributed as directed therein. By their actions and inactions in improperly withholding payment of portions of the Gross Sales Revenue to LB Rose Ranch, due and payable under the Agreement as Amended, but, rather, directing payment of such amounts to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property, the Defendants breached the fiduciary duties and as a result LB Rose Ranch suffered damages in amounts, as previously stated, and for which all of the Defendants are jointly and severally liable, together with pre-judgment and post-judgment interest, costs and attorney fees.

## SIXTH CLAIM FOR RELIEF
(Civil Theft)
All Defendants

54. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 53, above.

55. By their actions and inactions in improperly withholding payment of portions of the Gross Sales Revenues from LB Rose Ranch which were due and payable to it under the Agreement as Amended, but, rather, directing payment of such amounts to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property, the Defendants committed civil theft from LB Rose Ranch of such amounts, and pursuant to C.R.S. § 18-4-405 LB Rose Ranch is entitled to payment of damages from the

EXHIBIT 5

Defendants for three times such amounts, as well as for related costs and reasonable attorney fees and for pre-judgment and post-judgment interest.

### SEVENTH CLAIM FOR RELIEF
### (Fraud)
### All Defendants

56. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 55, above.

57. By their actions and inactions in improperly withholding payment of portions of the Gross Sales Revenues from LB Rose Ranch which were due and payable to it under the Agreement as Amended, but, rather, directing payment of such amounts to Hansen, Gosda and Sunrise either directly, or indirectly through the other Defendants for matters unrelated to the Ironbridge Property, the Defendants obtained such amounts from LB Rose Ranch by fraud and are jointly and severally liable to LB Rose Ranch in such amounts and for all other amounts so recoverable thereby, together with pre-judgment and post-judgment interest, costs and attorney fees.

### EIGHTH CLAIM FOR RELIEF
### (Receipt of Funds of an Insolvent Entity)
### Hansen, Gosda and Sunrise

58. LB Rose Ranch incorporates by reference the allegations contained in Paragraphs 1 through 57, above.

59. By their receipt of Gross Sales Revenues, knowing that by the payment of such funds to them, the Ironbridge Entities, Hansen Construction and Ironbridge Management would be insolvent and unable to pay LB Rose Ranch the amounts due it under the Agreement as Amended, Hansen, Gosda and Sunrise knowingly received funds of insolvent entities and, accordingly, they are liable in damages to LB Rose Ranch in such amounts, together with pre-judgment and post-judgment interest, costs and attorney fees.

WHEREFORE, Plaintiff LB Rose Ranch seeks judgment in its favor and against Defendants, awarding:

a. A Declaratory Judgment that no amounts are required to be paid by LB Rose Ranch for any sums owned under the Affordable Housing Agreement; that if any such amounts are payable under the Affordable Housing Agreement they are payable by LB Rose Ranch to Ironbridge Homes, and that if any amounts are payable to any of the Ironbridge Entities they are off-set by damages or other amounts payable by the Ironbridge Entities to LB Rose Ranch under its claims herein;

EXHIBIT 5

b.  Judgment against the Defendants for all damages suffered by Plaintiff as a result of Defendants' wrongful acts and breaches, in amounts to be proven at trial, including treble damages as alleged and any exemplary damages which may be allowed to be pleaded;

c.  Attorneys' fees and costs as provided in the Agreement as Amended and in the Riverfront Notes and otherwise provided by statute or rule;

d.  Pre-judgment and post-judgment interest; and

e.  Such further relief as the Court deems proper.

Respectfully submitted this 30th day of November, 2011.

THE MADDEN LAW FIRM

_____
John W. Madden, III, No. 5125

ATTORNEYS FOR PLAINTIFF

Plaintiff's address:
1271 Avenue of the Americas
38th Floor
New York, NY  10020

EXHIBIT 5