Presentment Date and Time: May 25, 2016 at 10: 00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  May 24, 2016 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): May 31, 2016 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Garrett A. Fail

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- x
In re                                   :   Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :   08-13555 (SCC)
                                        :
                Debtors.                :   (Jointly Administered)
------------------------------------------------------------- x
```

### NOTICE OF PRESENTMENT OF MOTION OF PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that Lehman Brothers Holdings Inc. (the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors*, will present the annexed Motion of Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors (the "Motion") and proposed order (the "Proposed Order") to the Honorable Shelley C. Chapman, United States Bankruptcy Judge, for signature on **May 25, 2016 at 10:00 a.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that unless a written objection to the Motion and the Proposed Order, with proof of service, is served and filed with the Clerk of the

Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers and the undersigned so as to be received by **May 24, 2016 at 4:00 p.m. (Prevailing Eastern Time)**, there will not be a hearing and the Proposed Order may be signed.  If a written objection is timely served and filed, a hearing (the "Hearing") will be held to consider the Motion and the Proposed Order on **May 31, 2016 at 10:00 a.m. (Prevailing Eastern Time)** before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Courtroom 623, One Bowling Green, New York, New York 10004.  Objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: May 11, 2016
      New York, New York

                                    /s/ Garrett A. Fail
                                    Garrett A. Fail, Esq.
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007

                                    *Attorneys for Lehman Brothers Holdings Inc.,*
                                    *and Certain of Its Affiliates*

Presentment Date and Time: May 25, 2016 at 10: 00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  May 24, 2016 at 4:00 p.m. (Prevailing Eastern Time)
Hearing Date and Time (Only if Objection Filed): May 31, 2016 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
:
**In re**                                                       :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (SCC)**
:
**Debtors.**                                :        **(Jointly Administered)**
:
------------------------------------------------------------------x

**MOTION OF PLAN ADMINISTRATOR FOR AN ORDER IN AID OF**
**EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan")[1] for the entities in the above referenced

chapter 11 cases (collectively, the "Chapter 11 Estates"), files this motion and respectfully

represents:

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## Relief Requested

1.      To maximize the time value of Distributions to holders of Allowed Claims under unique circumstances, and in an exercise of its reasonable business judgment, the Plan Administrator requests authority to **establish June 16, 2016, as a Distribution Date** to distribute more than $1.6 billion to the Debtors' creditors, approximately four months in advance of the next-scheduled, semi-annual Plan Distribution Date.  The Plan Administrator further requests authority to **establish May 18, 2016 as the Record Date** for such distribution.

## Background

2.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.      On December 6, 2011, the Court approved and entered an order confirming the Plan (the "Confirmation Order") (ECF No. 23023).  The Plan became effective on March 6, 2012.

4.      The Plan Administrator is authorized to make Plan Distributions semi-annually within five business days of March 30 and September 30.  Plan §8.3; ECF No. 34348. The Plan Administrator is further authorized to establish a Record Date in advance of each Distribution Date to ensure that the Plan Administrator can process claim transfers, make calculations, and arrange transactions to ensure accurate Distributions are made only to the

proper holders of Allowed Claims.  Plan §8.11; ECF No. 34348.  The Plan Administrator has

provided creditors seven days' notice of each Record Date.  *See* ECF. No. 33676.

### Jurisdiction

5.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b).

6.      Pursuant to the Confirmation Order, the Court retained exclusive

jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without

limitation, those set forth in Article XIV of the Plan.  *Id.* at ¶ 77.  Section 14.1 of the Plan, in

turn, provides for the retention by the Court of exclusive jurisdiction to, among other things,

"issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the

Bankruptcy Code," and "enter and implement other orders, and take such other actions as may be

necessary or appropriate to enforce … the Plan, the Confirmation Order or any other order of the

Bankruptcy Court."  Plan §14.1(e), (i).

### The Proposed Tenth Distribution Date

7.      The Plan Administrator is authorized to exercise its reasonable business

judgment to direct and control the wind down and liquidation of the assets of the Chapter 11

Estates as necessary to maximize Distributions to holders of Allowed Claims and to take such

actions as are consistent with implementation of the Plan.  Plan §6.1(b).  The Plan Administrator

has done so, distributing through nine Distributions approximately $106.9 billion to unsecured

creditors of the Chapter 11 Estates to date.[2]

---

[2] This includes approximately $78.5 billion of payments on account of third-party claims, which includes non-controlled affiliate claims, and approximately $28.5 billion of payments among the Chapter 11 Estates and their controlled affiliates.

8.      The Court has approved LBHI's and the Plan Administrator's business judgment related to numerous issues that directly facilitated success in maximizing the size and speed of Distributions.  Specifically, and in addition to countless rulings on claim objections and estimation motions and in adversary proceedings, Court orders in aid of execution of the Plan:

a.  authorized the use of the Chapter 11 Estates' non-cash assets in lieu of cash as reserves for billions of dollars of Disputed Claims (ECF No. 25641);

b.  authorized investments of large Disputed Claims reserves by Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Commercial Corporation in secured notes issued by LBHI (ECF No. 46276) and investments of another large Disputed Claim reserves by LBSF in a separate secured note issued by LBHI (ECF No. 50558);

c.  authorized the Plan Administrator to delay by up to thirty (30) days the third Distribution Date to enable the collection and distribution of proceeds from the Chapter 11 Estates' then-largest asset, so that distribution of such amounts would not be further delayed for months until the next Distribution Date (ECF No. 34348);

d.  provided flexibility for the Plan Administrator to determine Distribution Dates around the semi-annual dates set forth in the Plan if, for example, the Plan Administrator expected that a significant amount of cash would become available on or shortly thereafter, *id.*; and

e.  permitted Distributions on account of Affiliate Claims in advance of Distribution Dates to allow funds to be cycled through the intercompany claims matrix and be immediately included, in whole or in part, in the Distributions of the relevant Chapter 11 Estates, *id.*

9.      Prior to the most recent, ninth Distribution Date, the Plan Administrator negotiated, and the Court approved, a settlement (the "Settlement") among certain of the Chapter 11 Estates (the "Settlement Estates") and JPMorgan Chase Bank, N.A and certain of its affiliates ("JP Morgan") of some of the Chapter 11 Estates' largest unresolved claims.  *See* ECF Nos. 51904, 52002.  The Settlement was timed to provide the Chapter 11 Estates with a cash payment of $1.42 billion prior to the ninth Distribution Date and enable Plan Distributions of approximately $1.496 billion upon the ninth Distribution Date.  Accordingly, holders of Allowed

Claims anticipated the proceeds of the Settlement would be included in the ninth Plan Distribution. Unfortunately, and despite every best effort of the Plan Administrator, the effective date of the Settlement was delayed, as an individual first appealed this Court's order to the United States District Court for the Southern District of New York (Case No. 16 Civ. 1379 (RJS) (S.D.N.Y.)), and then appealed the District Court's order dismissing the appeal to the United States Court of Appeals for the Second Circuit (Case No. 16-826-cv (2d Cir.)).

10.    The Plan Administrator did not seek to delay the ninth Distribution Date beyond March 31, 2016, because no party could predict with certainty the timing of the appeals process. Delaying the distribution of approximately $1.6 billion of Available Cash to holders of Allowed Claims under such circumstances would have been imprudent.

11.    On April 27, 2016, the United States Court of Appeals for the Second Circuit affirmed the District Court's order dismissing the appeal[3], but JP Morgan took the position that the possibility of further filings or proceedings, such as a petition for writ of certiorari to the Supreme Court of the United States, meant the Settlement was not yet effective in accordance with its terms.

12.    In anticipation of this outcome, the Plan Administrator and JP Morgan had, for months, engaged in discussions and negotiations. As a result of this planning, on May 11, 2016, the parties were able to enter into the agreement attached hereto as Exhibit A (the "Closing Agreement"), and agree that the Settlement would become effective upon transfer of the settlement funds by JP Morgan, to take place within five business days of the execution of the Closing Agreement. As a result of the Settlement, the Closing Agreement, and other claims and asset activities, the Settlement Estates will soon hold more than $1.6 billion of Available

---

[3] Order on Motion for Summary Affirmance, ECF No. 40, Case No. 16-826-cv (2d Cir. Apr. 27, 2016) (hereinafter the "Second Circuit Order").

Cash more than four months in advance of the tenth Distribution Date – almost as much as was distributed on the ninth Distribution Date.

13.     In these unique circumstances, the Plan Administrator requests authority to establish the tenth Distribution Date in advance of the next-scheduled Plan Distribution Date, which will not be until within 5 business days of September 30, 2016.

## The Court May Authorize the Proposed Tenth Distribution Date

14.     The Court has broad authority, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, over the property administered under the Plan and to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code. *See* 11 U.S.C. §1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the consummation of the plan"); 11 U.S.C. §105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. §1142(b) … and it has 'continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.'") (internal citations omitted).

15.     In addition, as discussed above, both the Plan and the Confirmation Order provided for the Court's retention of jurisdiction over all matters arising under or related to, the Chapter 11 Cases. Further, this Court has already authorized Distribution Dates other than those

explicitly provided for in the Plan, including on a one-off basis for the third Distribution Date and on a going-forward basis for all subsequent Distribution Dates.  *See* ECF No. 34348.  For the same reasons that the Court granted such prior relief, the relief requested herein falls squarely within the jurisdiction retained by the Court in the Plan and the Confirmation Order.  Accordingly, Section 14.1(f) of the Plan, which expressly provides that the Bankruptcy Court shall retain exclusive jurisdiction to, among other things, "consider any modifications of the Plan," is not implicated.  Plan §14.1(f).  The relief requested herein does not materially alter the substantive rights of any party but, instead, merely accelerates the administration of the Chapter 11 Cases.[4]

### The Proposed Tenth Distribution Date
### Is In the Best Interests of the Chapter 11 Estates

16.    All holders of Allowed Claims should benefit from the relief requested herein, and the relief requested should not prejudice any party in interest.  A Distribution Date on June 16, 2016 will enable the Plan Administrator to distribute more than $1.6 billion to creditors of the Chapter 11 Estates approximately four months in advance of the next-scheduled Distribution Date, mitigating the consequences of the frivolous appeals filed by one pro se litigant.

---

[4] While section 1127(b) of the Bankruptcy Code governs modifications to a confirmed plan, *see, e.g. Indu Craft, Inc. v. Bank of Baroda (In re Indu Craft Inc.)*, 2012 WL 3070387 *9 (S.D.N.Y. 2012), the changes proposed by the Plan Administrator do not rise to the level of "modifications," as that term is used in Section 1127(b) of the Bankruptcy Code.  In this District, courts have "found that a 'modification' occurred when there was an alteration of 'the legal relationships among the debtor and its creditors and other parties in interest' or when the change to the plan affected the legal relationship among them."  *Id.* (quoting *Doral Ctr., Inc. v. Ionoshpere Clubs, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 816 (S.D.N.Y.).  *Compare with State Gov't. Creditors' Comm. for Prop. Damage Claims v. McKay (In re Johns-Manville Corp.)*, 920 F.2d 121, 122 (2d Cir. 1990) (affirming alteration of a confirmed plan to allow the temporary suspension of a claims resolution facility to prevent the needless accumulation of administrative expenses where the trust was not expected to have sufficient assets to make distributions for many years).

17.    All parties in interest will have the same seven-day notice of the establishment of the Record Date by virtue of notice of this motion.  Although the Plan Administrator is providing less than 47 days' notice of the Distribution Date, the Plan Administrator is providing more than the 30 days' notice originally called for by Section 1.48 of the Plan.  *See* Plan §1.48.  (The period was only extended at the Plan Administrator's request to accommodate a level of claims transfers that has subsequently subsided.)

18.    The Closing Agreement provides for the establishment of a reserve from cash and assets of the Chapter 11 Estates, but only in the event that the Second Circuit grants a motion for rehearing or reconsideration or the Supreme Court grants certiorari based on a petition by the pro se litigant.  Should such a reserve become necessary,[5] it could impact the timing and amount, if any, of subsequent Distributions from the Chapter 11 Estates; however, the Closing Agreement does not impair or otherwise affect the Chapter 11 Estates' ability to make catch-up Distributions (in respect of prior Distributions) to holders of Disputed Claims to the extent they become Allowed Claims in accordance with the Plan and subsequent order of the Court.  *See* ECF No. 25641 (authorizing use of non-cash assets in lieu of Available Cash as reserves for Disputed Claims).

19.    If the motion is granted, the tenth Distribution Date will occur on June 16, 2016.  Subject to the terms of the Plan and subsequent orders of the Court, the eleventh Distribution Date will occur on or about September 30, 2016.

---

[5] The Plan Administrator views the possibility of this occurring as extremely unlikely.  The Second Circuit affirmed the District Court's dismissal of the appeal because "the 'appeal lacks an arguable basis in either law or in fact.'" Second Circuit Order, p.2 (citing *Neitzke v. Williams*, 290 U.S. 319, 325 (1989)).  The pro se litigant in question has been sanctioned by this Court, based in part on the appeal, and the District Court stated in its order dismissing the appeal that (i) "Appellant has made no showing that he has standing to pursue this appeal, nor does his response to Appellees' motion to dismiss even attempt to argue that he does" and (ii) the District Court "is inclined to impose monetary sanctions on Appellant and to require that he seek permission from the Court before making any future filings." [ECF No. 20, pp. 4-6, Case No. 16 Civ. 1379 (RJS) (S.D.N.Y. Mar. 11, 2016).

## Conclusion

20.     For the reasons set forth above, the Plan Administrator requests that the Court enter an order in the form attached hereto as Exhibit B to ensure implementation of the Plan in a manner that maximizes returns to holders of Allowed Claims. The relief requested is consistent with the Plan Administrator's duties to maximize Distributions to creditors and with relief granted by the Court in these cases.

## Notice

21.     No trustee has been appointed in the Chapter 11 Cases. The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635), has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) all parties who have requested notice in these chapter 11 cases. The Plan Administrator submits that no other or further notice need be provided.

22.     No previous request for the relief sought herein has been made by the Plan Administrator to this or any other court.

WHEREFORE the Plan Administrator respectfully requests that the Court grant

the relief requested herein and such other and further relief as is just.


Dated:  May 11, 2016
         New York, New York

                                    /s/ Garrett A. Fail
                                    Garrett A. Fail

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Lehman Brothers Holdings Inc.
                                    and Certain of Its Affiliates

## Exhibit A

**Closing Agreement With Respect to January 25, 2016 Settlement Agreement**

## CLOSING AGREEMENT WITH RESPECT TO JANUARY 25, 2016
## SETTLEMENT AGREEMENT

THIS CLOSING AGREEMENT (the "Agreement") dated as of May 10, 2016 among JPMorgan Chase Bank, N.A. ("JPMCB"), Lehman Brothers Holdings Inc., in its individual capacity and as Plan Administrator ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commodity Services Inc. ("LBCS"), Lehman Brothers Commercial Corp. ("LBCC" and collectively with LBHI, LBSF and LBCS, "Lehman") and the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. (the "Committee") (each a "Party" and collectively the "Parties"). Capitalized terms used herein without definition have the meanings ascribed thereto in the Settlement Agreement referred to below.

### Background

A.     The Parties are parties to a Settlement Agreement dated as of January 25, 2016 (the "Settlement Agreement"), which resolved certain disputes among the parties as set forth therein, Case No. 08-13555 (Bankr. S.D.N.Y.) (the "Chapter 11 Cases") at Dkt. 51904.

B.     The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") conducted a hearing on February 8, 2016 and approved the Settlement Agreement. The Bankruptcy Court signed the Approval Order, and on February 8, 2016, the Bankruptcy Court entered the Approval Order on the docket in the Derivatives Action, Case No. 12-01874 at Dkt. 39. On February 11, 2016, the Bankruptcy Court also entered the Approval Order on the docket in the Chapter 11 Cases at Dkt. 52002.

C.     William Kuntz III, a *pro se* litigant, filed a purported notice of appeal with the Bankruptcy Court. An Order dismissing Mr. Kuntz's purported appeal was entered by the District Court on March 11, 2016, Case No. 16-cv-01379 at Dkt. 20.

D.     Mr. Kuntz filed a purported notice of appeal to the Second Circuit, which was docketed on March 17, 2016, Case No. 16-cv-01379 at Dkt. 22. The Second Circuit dismissed Mr. Kuntz's appeal on April 27, 2016, Case No. 16-cv-01379 at Dkt. 40.

E.     The Effective Date of the Settlement Agreement is defined therein as "the date on which the Approval Order shall have become final and no longer subject to appeal." Settlement Agreement § 1. Under the Settlement Agreement, JPMCB is not required to transfer and deliver to LBHI $1,420,000,000 (the "Settlement Funds") until 5 business days *after* the Effective Date shall have occurred. Settlement Agreement § 2. As a result of the possibility that Mr. Kuntz may move for rehearing or reconsideration of the Second Circuit's dismissal of his appeal or seek a writ of certiorari from the Supreme Court of the United States, it is JPMCB's position that the Effective Date has not yet occurred.

F.     LBHI has requested that JPMCB agree to consummate the Settlement Agreement notwithstanding JPMCB's position that the Effective Date has not yet occurred. JPMCB is willing to do so provided that LBHI and the Committee enter into this Closing Agreement.

**THEREFORE, IT IS AGREED**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged:

1

## Terms and Conditions

1.     <u>Settlement Funds</u>.  Notwithstanding JPMCB's position that the Effective Date has not yet occurred, within 5 business days after the execution of this Closing Agreement, JPMCB will transfer the Settlement Funds as contemplated by Section 2 of the Settlement Agreement.  The transfer of the Settlement Funds will result in the occurrence of the Effective Date and the Consummation Date for all purposes under this Agreement and the Settlement Agreement (notwithstanding any contrary provisions in the Settlement Agreement).  The occurrence of the Consummation Date will have the same force and effect as set forth in the Settlement Agreement, including without limitation, triggering the effectiveness of the releases and modification of rights and obligations described in Sections 3 and 4 of the Settlement Agreement; *provided, however*, that such effectiveness shall terminate if, and only if, all of the following events occur:  a Repayment Event; the payment in full by Lehman to JPMCB of an amount equal to the Repayment Reserve Amount; and the reinstatement of the Debtor Deposit in the amount released as of the Consummation Date.  Lehman agrees that transfer of the Settlement Funds by JPMCB in accordance with the provisions of this Section 1 shall be deemed full and timely compliance with the provisions of the Settlement Agreement in respect of the transfer of the Settlement Funds.

2.     <u>Appeal</u>.   Upon the execution of this Closing Agreement, LBHI will continue to vigorously defend, in consultation with JPMCB, any further appellate review of the Approval Order (including any petition for a writ of certiorari, "<u>Further Appellate Review</u>") and take all other actions necessary for the Approval Order to become final and no longer subject to Further Appellate Review.  As set forth in Section 5 of the Settlement Agreement, JPMCB will continue to cooperate in good faith with LBHI's efforts to obtain finality of the Approval Order.  If requested by JPMCB, LBHI and the Committee shall authorize JPMCB to take over, at JPMCB's expense, in the name of LBHI and the Committee, the defense of any further proceedings and all other actions required to render the Approval Order final and no longer subject to Further Appellate Review, and LBHI and the Committee will cooperate with JPMCB should JPMCB elect to take over the defense of any further proceedings or any other actions required to render the Approval Order final and no longer subject to Further Appellate Review; <u>provided</u> that JPMCB shall consult with LBHI and the Committee with respect to such defense or actions.

3.     <u>Repayment Reserve Fund</u>.  In the event that the Second Circuit grants a motion for rehearing or reconsideration or in the event that the Supreme Court of the United States grants certiorari (any of the foregoing, a "<u>Further Event</u>"), LBHI shall deposit all Lehman cash and cash equivalents not held in previously created reserves or required for operations in a segregated cash or cash equivalent reserve for potential repayment of the Settlement Funds (the "<u>Repayment Reserve</u>") unless and until there is on deposit in the Repayment Reserve an amount (the "<u>Repayment Reserve Amount</u>") equal to the aggregate amount of the Settlement Funds plus interest thereon at the effective federal funds rate accruing from the Consummation Date to the then current date.  LBHI shall maintain such Repayment Reserve until the Approval Order has become final and no longer subject to Further Appellate Review (at which time the Repayment Reserve may be released into general Lehman funds), or such Repayment Reserve is paid to JPMCB as provided below.  Following a Further Event, LBHI shall not make any further distributions to any Lehman creditors after such an event occurs (other than catch up payments to

2

holders of newly allowed claims in respect of prior distributions) unless and until an amount at least equal to the Repayment Reserve Amount is then held on deposit in the Repayment Reserve or LBHI is no longer required to maintain the Repayment Reserve. LBHI may seek contribution from other Lehman Parties for the Repayment Reserve, and no other Lehman Party that has received any of the Settlement Funds shall be permitted to make any further distributions to its respective creditors until the Repayment Reserve is fully funded or it shall have contributed to the Repayment Reserve an amount equivalent to the amount that it received from the Settlement Funds plus interest at the effective federal funds rate accrued from the Consummation Date. In the event that the Tassimo Action, the LBSF Action and/or the Other Objections are resolved before the Approval Order becomes final and no longer subject to Further Appellate Review following a Further Event and JPMCB is determined to owe or agrees to pay an amount (the "Tassimo Amount") to LBHI, then (a) JPMCB may hold the Tassimo Amount in a reserve until the Approval Order becomes final and no longer subject to Further Appellate Review, (b) the Repayment Reserve Amount shall be reduced by the Tassimo Amount, and (c) LBHI may distribute funds in an amount equal to the Tassimo Amount to Lehman creditors.

4.    Replacement Settlement Agreement.  In the event that a court enters a final order, not subject to Further Appellate Review, that makes it impossible for the Approval Order to become final (a "Replacement Event"), then the Parties shall use their best efforts in good faith to enter into and obtain any required approval for a new settlement agreement on the same economic and legal terms as the Settlement Agreement (a "Replacement Settlement Agreement"), except for such changes as may be required to accommodate any issues raised by the court order that gave rise to the Replacement Event.

5.    Repayment.  If a Replacement Event occurs and a Replacement Settlement Agreement is not feasible (a "Repayment Event"), LBHI shall be obligated to immediately repay an amount equal to the Repayment Reserve Amount to JPMCB. LBHI shall first satisfy this repayment obligation by immediately transferring to JPMCB all funds in the Repayment Reserve, and JPMCB shall apply the Tassimo Amount (if any) to such repayment obligation. In the event that the Repayment Reserve and the Tassimo Amount are inadequate to satisfy the full amount of the Repayment Reserve Amount, JPMCB and any other JPMorgan Parties shall have the right to setoff any shortfall in the Repayment Reserve Amount against any obligations of JPMCB and the other JPMorgan Parties in respect of any Actions that a Lehman Party may have against a JPMorgan Party, including without limitation the Tassimo Action, the LBSF Action and the Other Objections. If a Replacement Event occurs, LBHI shall be prohibited from making any further distributions to its creditors until a Replacement Settlement Agreement has been consummated or JPMCB has been fully repaid an amount equal to the Replacement Reserve Amount through payment and/or setoff.

6.    Reinstatement as of Date First Filed.  Upon the occurrence of a Repayment Event and the full repayment by Lehman to JPMCB of an amount equal to the Repayment Reserve Amount, the dismissals and releases granted pursuant to, or in connection with the Settlement Agreement or this Agreement shall be void ab initio. All claims and objections asserted in connection therewith shall be (a) reinstated and (b) deemed to have been filed as of the date that such claims and objections were first filed.

7.    Operating Expenses; Catch-Up Distributions.  Notwithstanding anything to the contrary in this Agreement, nothing herein shall impair or otherwise affect Lehman's ability, in its discretion, to pay reasonable operating expenses, to reasonably fund the administration of the estates, or to make catch up distributions in accordance with the Plan.

8.    Counterparts; Signatures.  This Closing Agreement may be executed in one or more counterparts, all of which taken together shall constitute one instrument.  This Closing Agreement may be executed and delivered manually, by facsimile transmission or by email transmission.

9.    Governing Law; Jurisdiction.    THIS CLOSING AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, and any court with appellate jurisdiction over the Bankruptcy Court, in any proceeding arising out of or relating to this Closing Agreement, or for recognition or enforcement of any judgment resulting from any such proceeding, and each Party hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in the Bankruptcy Court.  Each Party hereby knowingly, voluntarily, intentionally, irrevocably and unconditionally waives, to the full extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any proceeding arising out of or relating to the Closing Agreement in the Bankruptcy Court, as applicable, specified above, (ii) the defense of an inconvenient forum to the maintenance of such proceeding in any such court, (iii) the right to object, with respect to such proceeding, that such court does not have jurisdiction over such Party and (iv) any right to a trial by jury with respect to any such proceeding.

10.    Full Power and Authority.  LBHI hereby represents and warrants that it has full power and authority, in its capacity as Plan Administrator, to execute, deliver and perform this Closing Agreement on behalf of each Lehman Party.  JPMCB hereby represents and warrants that it has full power and authority to execute, deliver and perform this Closing Agreement.  Pursuant to the Plan, the Subcommittee has full power and authority, in its capacity as the litigation subcommittee of the Committee, to execute, deliver and perform this Closing Agreement on behalf of the Committee.

IN WITNESS WHEREOF the Parties have executed this Closing Agreement as of the date first set forth above.

[Remainder of page intentionally left blank]

*Signature Page to May 2016 Closing Agreement*

JPMORGAN CHASE BANK, N.A.

By _Laurence N. Chanen_

    Name: LAWRENCE N. CHANEN

    Title: Managing Director and
        Associate General Counsel

LEHMAN BROTHERS HOLDINGS INC.

By_____

    Name:

    Title:

LEHMAN BROTHERS SPECIAL FINANCING INC.

By_____

    Name:

    Title:

LEHMAN BROTHERS COMMODITY SERVICES INC.

By_____

    Name:

    Title:

*Signature Page to May 2016 Closing Agreement*

JPMORGAN CHASE BANK, N.A.


By_____

    Name:

    Title:


LEHMAN BROTHERS HOLDINGS INC.

By_____

    Name:

    Title:


LEHMAN BROTHERS SPECIAL FINANCING INC.

By_____

    Name:

    Title:


LEHMAN BROTHERS COMMODITY SERVICES INC.

By_____

    Name:

    Title:

*Signature Page to May 2016 Closing Agreement*

LEHMAN BROTHERS COMMERCIAL CORP.

By _/s/ McCann_

    Name:

    Title:


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name:

    Title:


WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name:

    Title:


MIZUHO CORPORATE BANK, LTD., AS AGENT
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name:

    Title:

*Signature Page to May 2016 Closing Agreement*

LEHMAN BROTHERS COMMERCIAL CORP.


By_____

    Name:

    Title:


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS
HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By *James H. Byrnes*_____

    Name: James H. Byrnes

    Title: Vice President


WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE


By_____

    Name:

    Title:


MIZUHO CORPORATE BANK, LTD., AS AGENT
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE


By_____

    Name:

    Title:

*Signature Page to May 2016 Closing Agreement*

LEHMAN BROTHERS COMMERCIAL CORP.


By_____

    Name:

    Title:



OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS
HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name:

    Title:



WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name: *Peter Finkel*

    Title: *Vice President*


MIZUHO CORPORATE BANK, LTD., AS AGENT
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name:

    Title:

*Signature Page to May 2016 Closing Agreement*

LEHMAN BROTHERS COMMERCIAL CORP.


By_____

    Name:

    Title:


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS
HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE


By_____

    Name:

    Title:


WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE


By_____

    Name:

    Title:


MIZUHO CORPORATE BANK, LTD., AS AGENT
AS A MEMBER OF THE LITIGATION SUBCOMMITTEE

By_____

    Name: NOEL P. Purcell

    Title: Co-chair Unsecured Creditors Comm'ttee

## Exhibit B

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                      :

In re                            :     **Chapter 11 Case No.**
                                        :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :     **08-13555 (SCC)**
                                        :

                    **Debtors.**     :     **(Jointly Administered)**
                                        :
-------------------------------------------------------------------x

**ORDER IN AID OF EXECUTION OF**
**THE MODIFIED THIRD AMENDED CHAPTER 11 PLAN OF**
**LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

WHEREAS by order, dated March 6, 2012 (ECF No. 23023) (the "Confirmation Order"), this Court approved and confirmed the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above referenced chapter 11 cases (the "Debtors"); and

WHEREAS on March 6, 2012, the Debtors filed a notice of the occurrence of the Effective Date of the Plan (ECF No. 26039) with the Court; and

WHEREAS, pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, to "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce … the Plan, the Confirmation Order or any other order of the Bankruptcy Court"; and

WHEREAS, on May 11, 2016, the Plan Administrator filed a motion for an order in aid of execution of the Plan (ECF No. __) (the "Motion"), and provided due and proper notice thereof; and

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

WHEREAS the Court has found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted.

2.      Notwithstanding anything contained in the Plan or prior order of the Court, (A) the Plan Administrator is authorized to schedule the tenth Distribution Date on June 16, 2016; (B) for the purposes of any such tenth Distribution Date, the Plan Administrator shall not be required to recognize any Claim transfer occurring during the period commencing after May 18, 2016, and any such Claim transfers shall, for Distribution purposes only, be deemed to have occurred immediately after such Distribution Date.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2016
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE