Joshua Dorchak
Matthew C. Ziegler
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York  10178
212.309.6000

*Attorneys for Trinity Investments Limited*

Hearing Date:  June 2, 2016 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>Jointly Administered |

**REPLY OF TRINITY INVESTMENTS LIMITED IN SUPPORT OF MOTION TO COMPEL OUTSTANDING DISTRIBUTIONS ON ALLOWED, UNSATISFIED GUARANTEE CLAIMS AND IN OPPOSITION TO CROSS-MOTION**

Trinity Investments Limited ("Trinity"), through its undersigned attorneys, files this reply in support of its motion to compel outstanding distributions [Docket No. 52309] (the "Motion") and in opposition to LBHI's amended Cross-Motion in response thereto [Docket No. 52537].

**PRELIMINARY STATEMENT**

1.    As noted in the Motion, the question before this Court is whether LBHI has the right under the Plan or the Trinity-LBHI Agreement to force Trinity, against its will and business judgment, to accept distributions on its Allowed Direct Claims from LBB, in order to relieve LBHI of its obligation on Trinity's Allowed Guarantee Claims.  LBHI evaded this question, effectively conceding that the answer is No.  Certainly LBHI did not cite any provision of any document that gives LBHI such a right or otherwise compels Trinity to accept distributions from LBB rather than LBHI.  Instead, LBHI attacks Trinity for "concocting a meritless excuse" in order to gain a "windfall."  This attack is misleading and meritless, as demonstrated below.

DB1/ 87660917.1

2. Further following the strategy that the best defense is a good offense, LBHI has made the Cross-Motion, asking this Court essentially to agree that LBHI's self-serving speculation trumps the testimony of the Trinity Declaration and the plain terms of the Plan, and on that basis to free LBHI from its obligations on the Allowed Guarantee Claims, to deprive Trinity of further distributions on entirely unrelated allowed claims, to affirmatively compel Trinity to execute and submit whatever documents LBB demands in the LBB Proceeding, and then to award LBHI damages and litigation expenses. The Cross-Motion overreaches as much as the Objection overreacts.

3. The Motion should be granted and the Cross-Motion should be denied.

## **ARGUMENT**

4. Trinity has testified as to its reasons for declining to execute the Confirmation that LBB made a precondition to receipt of LBB D6. *See* Trinity Decl., *passim*. LBHI's attack on Trinity's testimony is an exercise in misdirection, name-calling and second-guessing, whereby LBHI tries but fails to undo the governing documents and Trinity's testimony. The Objection and Cross-Motion are based on:

- quotes of provisions in the Plan and in the Harmonizing Resolution providing that creditors of LBB and LBHI should not receive more than payment in full or their Quota Cap, respectively -- none of which Trinity disagrees with, as Trinity is not seeking more than full payment under either regime;

- a paraphrase of a provision in the Harmonizing Resolution "contemplat[ing]" (but not *compelling*) that creditors would typically recover from LBB prior to recovering from LBHI -- which Trinity does not disagree with, as Trinity itself originally contemplated recovering its final payment from LBB;

- a single legal argument: that Trinity should be deemed to have accepted LBB's "tender" of LBB D6 -- which fails as a matter of law, as LBB's "tender" was subject to conditions;

- the aforementioned name-calling and second-guessing as to Trinity's grounds for declining to execute the Confirmation -- which fail on the evidentiary and

substantive levels, as Trinity has testified why it found the Confirmation potentially prejudicial in the context of the Proposed Final LBB Distribution;

- allegations that Trinity's conduct has prejudiced LBHI (and thus its creditors) -- which are simply incorrect, as LBHI remains barred by the Bilateral Agreements from exercising any of its rights as successor to claims against LBB; and

- accusations that Trinity has failed to formally withdraw certain denied claims in the LBB Proceeding -- which are moot, because Trinity has now submitted all withdrawals requested by LBB, despite LBB's failure to perform its obligations.

These points are addressed in detail below.

### A. Trinity Seeks Only to Enforce the Governing Documents.

5. LBHI cites several passages in the Plan and the Harmonizing Resolution that provide for equal treatment of creditors and provide against overpayment of creditors. Trinity has no dispute with any of the terms in any of the governing documents -- on the contrary, Trinity has been attempting to enforce them. These provisions do not prove LBHI right or Trinity wrong. LBHI apparently cites them in order to obscure the fact that LBHI *cannot* cite any provision that would actually compel Trinity to accept LBB D6 at all, much less with strings attached. The Plan, the Harmonizing Resolution, and/or the Trinity-LBHI Agreement might conceivably have required creditors to exhaust remedies against a Primary Obligor before recovering from LBHI, or to recover the least amount from both debtors that any combination of distributions would provide, or the like. But they don't. On the contrary, the Trinity-LBHI Agreement defines Trinity's Quota Cap as the *greater* of the USD equivalents of recoveries on the Allowed Guarantee Claims and the Allowed Direct Claims, respectively. Trinity Decl. Ex. A, ¶ 10. The Motion seeks payment in full of the Allowed Guarantee Claims under the Plan, nothing more. That cannot be a "windfall."

6. LBHI also makes much of the fact that Trinity voted in favor of the Harmonizing Resolution, Obj. ¶ 25, and agreed that the Proposed Final LBB Distribution was in the correct

amount, *id.* ¶ 21, and acknowledged that LBB is entitled to make tax withholdings, *id.* ¶ 30. But none of these facts somehow silences Trinity's objection to the Confirmation, as being outside the Harmonizing Resolution and prejudicial in the context of the Proposed Final LBB Payment, even though the numbers were correct.

B. **The Governing Documents Do Not Compel Trinity to be Paid by LBB First.**

7. As noted, the Plan and Confirmation Order do not require holders of Allowed Guarantee Claims to pursue corresponding Primary Claims on a priority basis, or indeed at all. LBHI does not deny that LBHI's obligation to make Distributions on Allowed Guarantee Claims under the Plan is based on Distributions "receive[d]" from LBHI and "provided" by LBB. Plan, § 8.13(a). LBHI does not deny that, setting the plain facts against this plain language, the Plan gave Trinity the right to distributions in LBHI D8 (and LBHI D9).[1]

8. Instead, LBHI attempts to transmute LBB's *proposed* LBB D6 distribution to Trinity into a distribution *provided* to Trinity by invoking the rule that "the tender of payment and the refusal to accept the payment constitutes performance." Obj. ¶ 44 (quoting, among other things, Restat. (3d) of Suretyship & Guaranty § 46). This attempt fails because there is a restriction on this rule, consistent with equity and common sense: "A tender, by definition, is an *unconditional* offer of payment …." *4 B's Realty 1530 CR39, LLC v. Toscano*, No. 08-cv-2694, 2009 U.S. Dist. LEXIS 20316 at *6-7 (E.D.N.Y. Mar. 12, 2009) (emphasis in original) (internal citation and quotations omitted); *see* Restat. (3d) of Suretyship & Guaranty, § 46, cmt. a ("To be valid and sufficient, the offer of performance must be to the proper person and the proper time and *must be unconditional*.") (emphasis added); *see also Koch v. Greenberg*, 14 F. Supp. 3d 247, 285 (S.D.N.Y. 2014) ("a tender must be shown to be absolute and *free from all conditions*")

---

[1] On March 31, 2016, after the Motion was filed, LBHI made its ninth distribution to creditors, and again made no distribution to Trinity in respect of the Allowed Guarantee Claims.

(emphasis added). As it is undisputed that LBB's "tender" of LBB D6 to Trinity was conditioned upon Trinity executing the Confirmation, Trinity cannot be deemed to have accepted LBB D6. *See id.*

9. LBHI might argue that the condition here was immaterial, but that is not for LBHI to decide. The argument is supported only by LBHI's cynical speculation as to Trinity's motives, much of which is likely inadmissible and all of which is contradicted by Trinity's detailed testimony on the subject. *See* Trinity Decl. ¶¶ 24-26, 32.[2] Trinity had executed similar documents in the past, but that was before the intensely negotiated Harmonizing Resolution and Trinity-LBHI Agreement, which were (as LBHI agrees) designed to resolve the subject claims with finality. When LBB later demanded the Confirmation, which was neither agreed nor necessary nor innocuous in the context of a final distribution, Trinity reasonably refused to provide it. *See id.*

10. LBHI does not deny that the Trinity-LBHI Agreement mirrors the operative language in the Plan, basing Trinity's maximum recovery on consideration "received" from LBHI and distributions "made or paid" by LBB. Trinity Decl. Ex. A, ¶ 9. Again, LBHI cannot cite any provision of this agreement that compels Trinity to recover from LBB prior to recovering from LBHI.

11. Instead, LBHI can only invoke the distribution schedule in the Harmonizing Resolution, as if it imposed obligations on creditors. LBHI argues that LBB distributions preceded LBHI distributions by about a month to "ensure …, if feasible," that Trinity would be paid in full by LBB, sparing LBHI the necessity of making distributions that would later have to

---

[2] Trinity believes that the Motion may and should be granted without a digression into the admissibility or not of the statements and opinions in the Garza Declaration that supports the Objection and Cross-Motion. But in the event that this Court requires a fuller evidentiary record, Trinity reserves its rights to object these representations as settlement negotiations, speculation, hearsay, incompetent testimony as to foreign law, and otherwise.

be disgorged. *See* Obj. ¶ 40. Even leaving aside that the Harmonizing Resolution and the Trinity-LBHI Agreement expressly protect LBHI from overpayments in other ways (*see, e.g.,* Trinity Decl., Ex. A, ¶ 9), any such prior recovery from LBB is aspirational, not obligatory. Trinity itself originally expected to be paid in full in LBB D6 -- and then, due to LBB's additional demands, that turned out not to be "feasible" after all. The mere scheduling of LBB distributions in August and February each year in the Harmonizing Resolution cannot somehow equate to a binding agreement by creditors of LBB and LBHI to be paid in full by LBB, no matter the circumstances, or to waive distributions from LBHI even if they have not previously recovered from LBB.

### C.   Trinity's Conduct Has Not Prejudiced LBHI or Its Creditors.

12.   Trinity has every right to seek the recoveries that it is entitled to under the Plan and to protest LBHI's attempt to dictate that Trinity, like it or not, recover from LBB. If the Motion is granted, and Trinity eventually recovers payment in full under the Plan, LBHI will duly succeed to the Allowed Direct Claims and related benefits under the Trinity-LBHI Agreement, thereby recouping against its distributions on the Allowed Guarantee Claims, all consistent with the Plan. *See* Plan § 8.14; Trinity Decl. ¶ 13, Ex. A, ¶ 10. But even if this Court were to deny the Motion, Trinity's efforts since August 2015 have not economically injured LBHI or anyone else.

13.   LBHI's assertion that Trinity's conduct "delays assignment of Trinity's allowed claims against LBB over to LBHI who should *now* be receiving any future distributions on account of those claims" (emphasis added) is incorrect, because LBHI is bound by the Trinity-LBHI Agreement and (apparently) the other Bilateral Agreements "not to enforce and not to accept benefits in respect of any Assigned Claims or other claims assigned to LBHI by any of

LBB's creditors" until a series of events has occurred, including virtually all LBB creditors receiving full recoveries, which to Trinity's knowledge has not yet occurred.

14.  LBHI also argues that the Confirmation was "necessary" to "eliminate[] the potential overpayment/disgorgement risk for LBB and LBHI." *See* Obj. ¶ 5. This is absolutely incorrect: the Harmonizing Resolution and the Plan and the Trinity-LBHI Agreement already expressly and extensively protect LBB and LBHI from disgorgement risk. *See* Plan § 8.13(a), (b), (e); Trinity Decl., Ex. A, ¶ 9. Given these provisions and the close collaboration between LBB and "by far, [its] biggest creditor," LBHI, that this Court can observe from the Garza Declaration, it is inconceivable that any creditor would succeed in being overpaid without being detected and forced to disgorge any excess.[3]

15.  As for Trinity's alleged failure to formally withdraw or assign certain claims against LBB -- in one case by a clerical error that LBHI seems to find highly suspicious -- Trinity has cured this purported problem by formally withdrawing all claims that LBB recently flagged as in need of follow-up, even though Trinity was not bound to do so, given that LBB wrongfully withheld LBB D6. *See* Obj. ¶ 26. To be clear, however, since these claims were undisputedly denied and (to Trinity's knowledge) were not being reserved for, the absence of their formal withdrawal never prejudiced LBHI or LBB's other creditors.

### D. The Cross-Motion Grossly Overreaches and Should Be Denied.

16.  To the extent the Cross-Motion seeks to relieve LBHI of its obligations to make distributions on the Allowed Guarantee Claims at issue here, it is unfounded but understandable. Beyond that, the Cross-Motion is preposterous.

---

[3] The Plan even gives LBHI the right to demand a certification, and potentially, security, from a holder of an Allowed Guarantee Claim, to protect against potential future excess recoveries. *See* Plan § 8.13(e). LBHI did not demand any such certification or security from Trinity, but in any event, there was never a threat that Trinity would recover both LBB D6 and any subsequent distributions from LBHI.

17. Although the Cross-Motion purportedly "seeks to implement the Plan," Obj. ¶ 48, it also seeks to halt distributions on Trinity's Allowed Claims that are *entirely unrelated* to the claims in dispute here, Proposed Order ¶ 6, without citing any support in the Plan (which does not contemplate such a penalty in any circumstances) or under the law.

18. Although the Cross-Motion purportedly "seeks to enforce the [Trinity-LBHI Agreement]," *id.*, LBHI does not cite any provision of that agreement that Trinity has breached. And LBHI asks this Court to compel Trinity, not only to accept the Proposed Final LBB Distribution, Proposed Order ¶ 4, but also to execute *whatever* documents LBB requires, Proposed Order ¶ 3, without citing any provision of the Harmonizing Resolution or German insolvency law that requires Trinity to do any such thing, and moreover without citing any support for such an extraordinary intervention by this Court in the LBB Proceeding.

19. Although the Cross-Motion purportedly seeks "damages" for Trinity's conduct, Obj. ¶ 48, Trinity's conduct has not caused LBHI any economic loss whatsoever, as demonstrated above (¶¶ 12-15).

20. Although the Cross-Motion purportedly seeks an award of "costs and reasonable attorneys' fees … on account of Trinity's improper actions," Proposed Order ¶ 7, LBHI cites no support for merely improper actions serving as grounds for an award of litigation expenses.

21. Finally, LBHI requests all of these extraordinary remedies based only on a series of cynical suspicions as to Trinity's motives, without even alleging a concrete breach of any governing document.

22. The Cross-Motion should be denied in its entirety on the merits and, to the extent it attempts to reach beyond the treatment under the Plan of the Allowed Guarantee Claims in dispute here, as unsupported and unjust.

**CONCLUSION**

For the reasons set forth above, Trinity respectfully requests that this Court (1) grant the Motion, (2) deny the Cross-Motion, and (3) enter an order that compels LBHI (a) promptly to pay Trinity the amounts that should have been paid to Trinity in LBHI D8 and LBHI D9 on the Allowed Guarantee Claims, and (b) to include the Allowed Guarantee Claims in any subsequent distributions, not to exceed the maximum recovery thereon provided for in the Plan, with such other and further relief as this Court deems just and proper.

Dated:   May 16, 2016
         New York, New York

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Joshua Dorchak
    Joshua Dorchak
    Matthew C. Ziegler
    101 Park Avenue
    New York, New York 10178
    Telephone: 212.309.6000
    Email: joshua.dorchak@morganlewis.com
           matthew.ziegler@morganlewis.com

*Attorneys for Trinity Investments Limited*