**Hearing Date: June 2, 2016 at 10:00 am (ET)**
**Objection Deadline: May 26, 2016 at 4:00 pm (ET)**

Franklin H. Top III (admitted *pro hac vice*)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
Telephone: (312) 845-3000

*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts*

M. William Munno
Daniel E. Guzmán
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 574-1587

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309
Telephone: (404) 881-7000

*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

Richard C. Pedone (admitted *pro hac vice*)
NIXON PEABODY LLP
437 Madison Avenue
New York, New York  10022
Telephone: (212) 940-3085

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Case No. 08-13555 (SCC) |

**RMBS TRUSTEES' OBJECTION TO DEBTORS' MOTION
TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS,
AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES**

3995904.01.07.B.docx

                                  Pg 2 of 9

The RMBS Trustees[1] object to Lehman's motion to (a) disallow and expunge certain RMBS Claims, and (b) release certain related claims reserves (ECF No. 52640) (the "Expungement Motion").[2]

**Preliminary Statement**

Lehman's Expungement Motion arises from the Protocol Order (ECF 47569) entered by the Court in December 2014. Prior to entry of the Protocol Order, the RMBS Trustees moved to estimate and allow certain claims arising from Covered Loans[3] (ECF 46078) (the "Motion to Estimate Claims"). Lehman objected and cross-moved to establish a protocol to resolve them (ECF 46526) (the "Cross-Motion to Establish a Protocol"). Over the RMBS Trustees' objection (ECF 46960), the Court entered the Protocol Order, requiring a loan-by-loan review of approximately 209,000 Covered Loans in 255 Covered Trusts[4] (the "Protocol"). The Court, however, did not rule out statistical sampling or other proofs ("Alternative Methods") to estimate and allow claims in the bankruptcy proceeding.[5]

---

[1] The RMBS Trustees are U.S. Bank National Association, Wilmington Trust Company, Wilmington Trust, National Association, Law Debenture Trust Company of New York, and Deutsche Bank National Trust, solely in their capacity as trustee or separate trustee for certain trusts that issue residential mortgage-backed securities.

[2] Terms not defined herein shall have the meaning ascribed to them in the Protocol Order.

[3] "Covered Loans" mean loans included in the 255 Covered Trusts for which Lehman is responsible for representations and warranties. *See* Motion to Estimate Claims, ¶¶ 2-3.

[4] "Covered Trusts" mean 255 of the 405 RMBS Trusts listed on attachment III to the Declaration of Charles A Parekh, PhD. *See* Motion to Estimate Claims, ¶ 3. "RMBS Trusts" mean the 405 trusts that issued residential mortgage backed securities, for which the RMBS Trustees serve as trustee or separate trustee that held over 1 million mortgage loans. *See id*.

[5] For the reasons set forth in the Motion to Estimate Claims, estimating a claim may be appropriate in a bankruptcy context to avoid delay in the administration of the estate, where the claims have not been liquidated, and where, as here, the claimants will receive distributions considerably less than the full amount of their claims. While an alternative method of review may be appropriate in the context of a bankruptcy case, the RMBS Trustees do not address here the appropriateness of alternative means of resolving claims (such as statistical sampling) in other contexts, as that issue is not before the Court.

Specifically, the Court did not rule on the RMBS Trustees' request to utilize Alternative Methods to estimate and allow its claims and the Protocol Order reserves any such rights. Further, by letter from J. Weitnauer to T. Consenza, dated March 31, 2016, attached as Exhibit C to the Expungement Motion (the "March 31 Letter"), the RMBS Trustees expressly reserved their rights to use such methods to support 12,000 specific RMBS Claims (as defined below) arising from Covered Loans that are subject to the Protocol.

The Protocol Order established a claims submission deadline of March 31, 2016, which deadline was extended by the Protocol Extension Order (ECF 52367) to May 31, 2016 for approximately 3,900 specifically-listed loans not at issue here (as further defined in the Protocol Extension Motion (ECF 52342), the "Remaining Covered Loans"). Notwithstanding the clear reservation of the RMBS Trustees' right to use Alternative Methods in the Protocol Order, and the RMBS Trustees' assertion of that right in the March 31 Letter, Lehman now seeks to expunge *all* claims not submitted pursuant to the Protocol. The Expungement Motion ignores the Protocol Order's preservation of the use of Alternative Methods and seeks to expunge not only the 12,000 RMBS Claims identified in the March 31 Letter, but also claims with respect to Transferor Loans[6] and Transferor Trusts that were not subject to the Protocol in the first instance. The Expungement Motion further seeks the reduction and release of the RMBS Reserve against SASCO, which would be premature until such claims have been resolved on a final basis.

The RMBS Trustees object to the Expungement Motion for the following reasons:

    (a)    the Protocol Order applies only to claims arising from Covered Loans; and

---

[6] "Transferor Loans" mean loans in the RMBS Trusts that are not Covered Loans. "Transferor Trusts" mean the 150 of the 405 RMBS Trusts that are not Covered Trusts. There are approximately 600,000 Transferor Loans in the RMBS Trusts.

3

(b) the Court has not ruled on the RMBS Trustees' Motion to Estimate Claims through Alternative Methods, as evidenced by the Protocol Order's express reservation of the RMBS Trustees' right to seek to prove the RMBS Claims through Alternative Methods;[7] and

(c) any reduction or release of the RMBS Reserve would be premature.

## I. The Protocol Applies Only To Claims Arising From Covered Loans.

The Protocol addresses Covered Loans in Covered Trusts and, therefore, any deadlines or requirements set forth therein are inapplicable to claims arising from Transferor Loans. The RMBS Trustees' Motion to Estimate Claims, which prompted Lehman's Cross Motion ultimately resulting in the Protocol, addressed only Covered Loan claims. *See* Motion to Estimate Claims, ¶ 3. Neither the Protocol Order nor the Protocol, which was drafted by Lehman,[8] mention Transferor Loans. The first paragraph of the Protocol refers only to Covered Loans:

> I. Receipt of Claims Files From Servicers ("Step 0")
>
> a. [The RMBS Trustees] sent, on December 12, 2014, (i) a direction letter to Nationstar Mortgage LLC ("Nationstar") as master servicer on certain of the *Covered Loans*, and (ii) a direction letter to Wells Fargo Bank, National Association ("Wells Fargo") as master servicer on certain of the *Covered Loans*, copies of which are annexed hereto (collectively, the "Direction Letters").

Protocol, § I.a. (Emphasis added). There is no similar provision in the Protocol governing the manner in which the RMBS Trustees were to retrieve Transferor Loans. The Protocol continues in this manner, specifically outlining the process for obtaining and reviewing Covered Loan files. *See, e.g.*, Protocol, §§ II.b.ii., III.a.i.; *see also* Protocol Order, p. 5.

---

[7] *See also* Transcript, Dec. 10, 2014 Hearing, at 109:1-25; 110:1-16. (ECF 49007).

[8] The RMBS Trustees did not consent to entry of the Protocol Order or the Protocol.

While the Protocol Order does, at times, reference "RMBS Claims," which is defined in the relevant pleadings as all of the claims the RMBS Trustees have asserted in these cases and of which the Covered Loan claims are a subset, the Protocol itself specifically defines RMBS Claims as those claims that "[e]ach RMBS Trustee may submit to the Plan Administrator [arising from] alleged breaches of representations and warranties and document deficiencies … *as described below*." Protocol, § III.e.i. (Emphasis added). So while the parties and the Court have generally defined "RMBS Claims" as being all claims asserted by the RMBS Trustees in these cases, the Protocol uses the term "RMBS Claims" more narrowly as being those claims asserted by the RMBS Trustees that are to be submitted for review pursuant to the Protocol.[9] Because the Protocol only contemplates the submission of claims arising from Covered Loans, the term "RMBS Claims" as utilized in the Protocol cannot be construed to include any other claims.

Further, the Protocol established metrics tied solely to the review of Covered Loans. The Protocol required the RMBS Trustees to review the first 50,000 loans not later than June 30, 2015. *See* Protocol, at § III.c.i-ii. Thereafter, the RMBS Trustees were required to review no fewer than 17,000 loans per month, commencing on July 1, 2015, until the Overall Claim File Cut-Off Date of March 31, 2016. *Id.* at § III.d.i, iii. In sum, the Protocol provided that the RMBS Trustees would review approximately 209,000 loans, which amount is equal to the amount of Covered Loans at issue. No mechanisms or metrics are included in the Protocol to address claims arising from any loans other than the Covered Loans.

Lehman erroneously asserts that the Protocol Extension Order precludes any method of proving any claims other than that set forth in the Protocol, citing to a provision in the Protocol Extension Order that provides that to the extent claims subject to the Protocol are not submitted

---

[9] The RMBS Trustees reserved their rights to prove their claims with respect to Transferor Loans. *See* Motion to Estimate Claims, ¶ 3, n.4.

5

by the extended May 31, 2016 deadline, "any such RMBS Claims shall be deemed waived and released by the RMBS Trustees and disallowed and expunged upon entry of this Order." Protocol Extension Order, p. 2. However, as set forth above, "RMBS Claims" as utilized in the Protocol can only refer to claims arising from Covered Loans and the Protocol Extension Order does not alter that definition.[10] The Protocol Extension Order expressly states that "ex[cep]t as expressly amended hereby, the Protocol Order, as entered, remains in full force and effect[.]" Protocol Extension Order, p. 3. The Protocol Extension Order extends the deadline by which certain claims already subject to the Protocol must be filed and nothing more.[11]

As set forth above, the Protocol was created by Lehman in response to the Motion to Estimate Claims, which addressed only Covered Loan claims, and the Protocol provides mechanisms and metrics only for the collection and review of Covered Loan claims. Accordingly, the Protocol's definition of "RMBS Claims" set forth in Section III of the Protocol can include only claims arising from Covered Loans. To interpret the Protocol as Lehman now requests would retroactively and without due process grant Lehman relief beyond what was sought in the underlying Motion to Estimate Claims and Cross-Motion.

---

[10] In fact, the Protocol Extension Order and Protocol Extension Motion incorporate the definition of "RMBS Claims" from the Protocol. *See* Protocol Extension Order, p. 1 n.1; Protocol Extension Motion, p. 1 n. 2-3.

[11] Certain of the Remaining Covered Loans listed on Exhibit A to the Protocol Extension Motion were in Transferor Trusts and therefore may not have been Covered Loans under the express provisions of the Protocol. The RMBS Trustees further acknowledged that some of these loans may not be Covered Loans. *See* Protocol Extension Motion, at ¶ 1. The phrase "Covered Loans *or otherwise*" in the Extension Order addresses the Remaining Covered Loans, which are included under the Protocol thereby.

6

**II.     The Court Has Not Ruled On The RMBS Trustees' Motion to Estimate Claims Through Alternative Methods And Such Right Is Expressly Reserved by the Protocol Order.**

Even if the Protocol were applicable to all RMBS Claims, including claims arising from Transferor Loans and the 12,000 claims identified in the March 31 Letter (the "Reserved Claims"), the Court has not yet ruled on the RMBS Trustees' request in the Motion to Estimate Claims to prove RMBS Claims through Alternative Methods. The Court expressly stated in the Protocol Order that, notwithstanding the Protocol, "each of (i) the RMBS Trustees' right, if any, to seek to provide proof in support of the allowance of the RMBS Claims through the use of statistical sampling, and (ii) the Plan Administrator's right to object to the use of statistical sampling by the RMBS Trustees, is reserved."[12] Protocol Order, p. 5.

While the Protocol establishes a timeline according to which the RMBS Trustees may prove their Covered Loan claims on a loan-by-loan basis, it cannot alone foreclose the RMBS Trustees from submitting evidence to prove their claims through another method when the Protocol Order specifically reserved a decision on that point. Lehman's objections to the timely filed RMBS Claims created contested matters subject to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[13] *See* Fed. R. Bankr. P. 3007, 1983 Notes of Advisory Committee. Bankruptcy Rule 9014 incorporates the Federal Rules of Evidence, with some exceptions, and the RMBS Trustees are entitled to due process under Bankruptcy Rule

---

[12] *See also id.*, p. 4 ("ORDERED, that the parties' participation in the RMBS Protocol set forth herein shall not cause … any individual RMBS Trustee to waive or release any claims, defenses, or remedies that the individual parties would otherwise hold, except … as expressly provided herein or in the RMBS Protocol …")

[13] The RMBS Trustees further reserved their rights to asserts claims related to low-loss loans after Lehman indicated to the Court that it was burdensome to review such claims under the Protocol. *See* Supplemental Status Report of the RMBS Trustees in Connection with the RMBS Protocol, at ¶¶ 15-18, n.10. (ECF 51004); Transcript, Sept. 17, 2015 Hearing, 11:11-19. (ECF 51004-1). Lehman appears to assert pursuant to the Expungement Motion that the RMBS Trustees should have no means available to prove such claims.

9014 through evidentiary hearings during which they may attempt to prove the RMBS Claims using any admissible evidence available. *See* Fed. R. Bankr. P. 9014. Whether evidence based on Alternative Methods is appropriate here is a question this Court has not decided and has specifically reserved for another day.

### III.   Any Reduction or Release of the RMBS Reserve Prior Would be Premature.

Lehman also seeks the reduction and release of that portion of the RMBS Reserve that relates to claims against SASCO. This request is premature until such time that *all* RMBS Claims have been resolved, or the Court has issued a final, non-appealable order denying the RMBS Trustees' ability to prove the RMBS Claims outside of the Protocol, it would be premature to reduce any portion of the RMBS Reserve.

**WHEREFORE**, for the reasons set forth above, the RMBS Trustees respectfully request the entry of an order denying the Expungement Motion and for further and other relief as may be just or proper.

Dated:  May 26, 2016

          Respectfully Submitted,

          **U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

          **BY:**  /s/ Franklin H. Top III

          **LAW DEBENTURE TRUST COMPANY OF NEW YORK, SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

          **BY:**  /s/  M. William Munno

          **WILMINGTON TRUST COMPANY AND WILMINGTON TRUST, NATIONAL ASSOCIATION, EACH SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

          **BY:** /s/ John C. Weitnauer

          **DEUTSCHE BANK NATIONAL TRUST COMPANY, SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

          **BY:**  Richard C. Pedone