**Hearing Date: June 2, 2016 at 10:00 a.m. (ET)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                           )
In re                                                      )    Case No. 08-13555 (SCC)
                                                           )
Lehman Brothers Holdings Inc., *et al.*,                   )    Chapter 11
                                                           )
             Debtors.                                      )    Jointly Administered
                                                           )
-----------------------------------------------------------x

## DEBTORS' REPLY IN SUPPORT OF THEIR MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS, AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................3

I.    All RMBS Claims Not Submitted Under the Protocol By March 31, 2016 Have Been
Disallowed and Expunged. ...........................................................................................3

    A.    The Protocol Clearly Governs All Loans, Including Transferor Loans................. 4

    B.    The Protocol Order and Protocol Extension Order Disallowed and Expunged All
RMBS Claims Not Submitted to the Protocol by March 31, 2016........................ 5

    C.    Lehman's Motion Seeks an Administrative Order to Reflect the Prior
Expungement of the Scheduled Proofs of Claim and a Corresponding Reduction
and Release of the RMBS Reserve. ..................................................................... 6

II.   The RMBS Trustees' Objection Is Entirely Meritless .....................................................6

    A.    The Court Should Reject the RMBS Trustees' Attempt to Rewrite the Protocol so
as to Apply to Only Covered Loans..................................................................... 7

    B.    The Protocol Order's Reservation of Rights Concerning Sampling Did Not
Exempt the RMBS Trustees' From Submitting Their Claims to The Protocol...... 9

    C.    The Court Should Reduce the RMBS Reserve. .................................................. 11

CONCLUSION....................................................................................................................11

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured

Assets Securities Corporation ("SASCO") (together, and collectively with their affiliated debtors

in the above-captioned cases, "Lehman" or the "Debtors"), respectfully submit this reply brief in

support of their Motion to (A) disallow and expunge certain RMBS Claims, and (B) release

certain related claims reserves.  In support of thereof, Lehman respectfully states as follows:

**PRELIMINARY STATEMENT**

On March 31, 2016, all RMBS Claims not submitted through the Protocol or for which

the Protocol was extended were expunged and disallowed by court order.  (Protocol Extension

Order[1] at 2).  That order, issued on the *RMBS Trustees'* own motion, confirmed the prior

disallowance provided in the Protocol Order and expressly provided that unless otherwise

ordered therein, "the RMBS Trustees shall not be entitled to assert any RMBS Claims (for

Covered Loans *or otherwise*) under the Protocol Order not already submitted pursuant to the

Protocol Order by March 31, 2016 [and that] any such RMBS Claims shall be deemed waived

and released by the RMBS Trustees and disallowed and expunged upon entry of this Order."  *Id.*

(emphasis added).  This is the law of the case, and the RMBS Trustees' Objection to Lehman's

Motion—which was filed simply to clean up the claims registry insofar as it related to

disallowing and expunging specific proofs of claim—amounts to a motion for relief from a final

order that the RMBS Trustees themselves sought, as well as from the disallowance resulting

from the Protocol Order itself.

The RMBS Trustees have no good cause to seek, nor should the Court seriously entertain

their effort to unwind, the Court's prior orders.  The RMBS Trustees' Objection (the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

"Objection") rests on a fundamental misreading of the Protocol Order, which applies to *all* RMBS Claims, and the Protocol Extension Order, which extinguishes all RMBS Claims not submitted through the Protocol. The Objection is also contrary to the RMBS Trustees' own prior representations to the Court and to Lehman acknowledging that the Protocol applies to Transferor Loans.

The Protocol plainly defines "RMBS Claims" as all "claims for alleged breaches of representations and warranties and document deficiencies" (Protocol § III.e.i), but the RMBS Trustees attempt to narrow its scope by reference to their own prior motion to estimate and allow claims arising from Covered Loans (the "Estimation Motion") (ECF 46078). In doing so, the RMBS Trustees ignore the broad definitions given to the term "RMBS Claims" in the plain text of the Protocol and Lehman's Cross-Motion,[2] which the Court granted and which, in turn, defines the scope of the Protocol. Indeed, one of the many flaws Lehman identified with the RMBS Trustees' Estimation Motion was the fact that it failed to address all RMBS Claims, including those filed in connection with Transferor Loans. The Protocol remedied this and the other defects by providing a process for the full and final resolution of ***all*** RMBS Claims.

The Protocol also gave effect to the parties' contractual rights and responsibilities. In the Estimation Motion, as in their Objection, the RMBS Trustees ignored the contractual requirement that each loan be evaluated individually, as described more thoroughly in Lehman's opposition to the Estimation Motion and in the Cross-Motion. That process begins with the RMBS Trustees making loan-level claims on those loans that they view as giving rise to a claim.

---

[2] Lehman's Cross-Motion defined "RMBS Claims" as the "approximately $37 billion in repurchase claims" asserted in the RMBS Trustees' proofs of claim "against LBHI and SASCO for damages allegedly incurred by the trusts that issued residential mortgage-backed securities." (Cross-Motion ¶ 1). And the Protocol Order expressly provides in footnote 1 that "Capitalized terms not defined herein have the same meaning ascribed to them in the Cross-Motion." (Protocol Order at 1 n.1). In the Cross-Motion RMBS Claims included all claims for damages allegedly incurred by the RMBS Trusts.

The RMBS Trustees *chose* not to submit certain loans (Transferor or otherwise) through the

Protocol because the chance or quantum of recovery did not justify the expense.  This is arguably

within their discretion, but their current attempt to describe the Protocol as providing only a

partial resolution of the RMBS Claims is revisionist history.  The purpose of the Protocol was to

bring finality to all RMBS Claims.

       The Objection is shocking.  It brazenly contradicts two prior court orders and the RMBS

Trustees' acknowledgments to this Court, most recently offered in the Protocol Extension

Motion, that Transferor Loans are governed by the Protocol Order.  And it misquotes the

Protocol in an attempt to revive claims that were previously expunged.  For these reasons and

others discussed below, Lehman respectfully requests the Court to overrule the RMBS Trustees'

Objection, grant the Motion, and enter an order disallowing and expunging the proofs of claim

listed on Exhibit B attached to the Motion and authorizing the release of the RMBS Reserve

related to RMBS Claims against SASCO.

## ARGUMENT

### I.      All RMBS Claims Not Submitted Under the Protocol By March 31, 2016 Have Been Disallowed and Expunged.

       Although the RMBS Trustees attempt to argue otherwise, as demonstrated by the record

of these cases, the plain language of the Protocol itself, the Protocol Order, and the Protocol

Extension Order, **_all_** RMBS Claims must comply with the Protocol, including those arising from

Transferor Loans and the low-value Covered Loans that the RMBS Trustees now seek to exclude

from it.  Therefore, except for claims arising from the Remaining Covered Loans, all RMBS

Claims not submitted under the Protocol by March 31, 2016 were disallowed and expunged by

the Protocol Order and the Protocol Extension Order.

3

### A.    The Protocol Clearly Governs All Loans, Including Transferor Loans.

In August 2014, the RMBS Trustees filed their Estimation Motion seeking to increase the

RMBS Reserve and estimate and allow certain claims arising from Covered Loans.  Lehman

filed an objection to the Estimation Motion and a Cross-Motion to establish a protocol to resolve

all of the claims filed by the RMBS Trustees (the "Cross-Motion") (ECF 46526).  Lehman's

Proposed RMBS Protocol was designed to resolve all of the RMBS Trustees' "claims for alleged

breaches of Representations and Warranties and Document Deficiencies" via a claims resolution

process wherein the RMBS Trustees would submit to Lehman "any and all loan files that [they]

believe may be put back to Lehman under the Governing Agreements," regardless of whether

such loan files related to Covered Loans or Transferor Loans.  (Cross-Motion, Exhibit C at 1;

Cross-Motion ¶ 21).  Lehman presented numerous arguments in favor of its proposed Protocol,

key among which was that, unlike the RMBS Trustees' Estimation Motion which applied "to

only 255 of the 405 trusts at issue," the Protocol promised "final adjudication of *all* of the RMBS

Claims."  (Cross-Motion ¶ 38 (emphasis added); *see also* Cross-Motion Reply ¶ 6 (ECF 47185)

(arguing that "the Protocol . . . provides a mechanism for resolution of *all (rather than a subset)*

of the RMBS Claims" (emphasis added))).

On December 29, 2014, this Court granted Lehman's Cross-Motion and ordered that the

Protocol be "implemented to reconcile and determine" each and every one of "the RMBS Claims

filed by the RMBS Trustees," whether those claims were associated with Covered Loans or

Transferor Loans.  (Protocol Order at 2).  The Protocol Order adopts the expansive definition of

the term "RMBS Claims" provided for in the Cross-Motion.  *See id.* at 2 n.1 (providing that

"[c]apitalized terms not defined" in the order, such as the "RMBS Claims," "shall have the same

meaning ascribed to them in the Cross-Motion").  The Cross-Motion defined the term "RMBS

Claims" as the "approximately $37 billion in repurchase claims" asserted in the RMBS Trustees'

proofs of claim "against LBHI and SASCO for damages allegedly incurred by the trusts that issued residential mortgage-backed securities." (Cross-Motion ¶ 1). Moreover, the Protocol itself defines "RMBS Claims" broadly as any "claims for alleged breaches of representations and warranties and document deficiencies." (Protocol § III.e.i). Accordingly, the plain text of the Protocol and the Protocol Order, along with the above-outlined history relating to the implementation of the Protocol, demonstrate that all RMBS Claims held by the RMBS Trustees must comply with the Protocol.

### B.    The Protocol Order and Protocol Extension Order Disallowed and Expunged All RMBS Claims Not Submitted to the Protocol by March 31, 2016.

After operating under the Protocol for 14 months without objection and desperate for more time to submit claims arising from the Remaining Covered Loans, in mid-March 2016 the RMBS Trustees approached Lehman about a limited extension of the Overall Claim File Cut-Off Date for those loans (and only those loans). As noted in the Motion, Lehman agreed not to oppose the Protocol Extension Motion *if, and only if,* the RMBS Trustees agreed to entry of an order confirming the disallowance and expungement of all un-submitted claims other than those arising from the Remaining Covered Loans. (*See* Motion at 4-5). The RMBS Trustees accepted this quid pro quo when they filed the Protocol Extension Motion and it was confirmed by the parties in open court. This Court adopted the form of order submitted by the RMBS Trustees' with their motion and, on March 30, 2016, entered the Protocol Extension Order, thereby disallowing and expunging all RMBS Claims not submitted by the Overall Claim File Cut-Off Date, with the exception of claims arising from the Remaining Covered Loans.

**C.    Lehman's Motion Seeks an Administrative Order to Reflect the Prior Expungement of the Scheduled Proofs of Claim and a Corresponding Reduction and Release of the RMBS Reserve.**

On April 28, 2016 Lehman filed the Motion to disallow proofs of claim for which no RMBS claims were submitted by the RMBS Trustees prior to the Protocol's March 31, 2016 Overall Claim File Cut-Off Date.  Based on the RMBS Trustees' representations to the Court in their Protocol Extension Motion, the terms of the Protocol Order, and the plain text of the Protocol Extension Order, Lehman seeks entry of an order: (a) disallowing and expunging the specific proofs of claim filed by the RMBS Trustees which (i) do not include any claims submitted prior to the Overall Claim File Cut-Off Date, and (ii) do not relate to a Remaining Covered Loan for which an RMBS Claim may be asserted pursuant to the Protocol Extension Order; and (b) authorizing the reduction and release of the RMBS Reserve with respect to RMBS Claims against SASCO.  Notwithstanding the RMBS Trustees' Objection, the Motion seeks nothing more than a straight-forward application of the Protocol Order and the Protocol Extension Order to the proofs of claim scheduled on Exhibit B to the Motion and a corresponding reduction and release of the RMBS Reserve to reflect the prior expungement of all RMBS Claims asserted against SASCO.  Lehman respectfully requests the Court to grant the Motion.

**II.    The RMBS Trustees' Objection Is Entirely Meritless.**

Despite both the history outlined above and the plain text of the Protocol, the Protocol Order, and the Protocol Extension Order, the RMBS Trustees contend that Lehman's Motion to disallow requests this Court to "retroactively and without due process grant Lehman relief" to which it is not entitled because the Protocol applies to only Covered Loans.  (Objection at 6).  Further, they argue that "[e]ven if the Protocol were applicable to . . . claims arising from Transferor Loans and the 12,000 claims identified in [their] March 31 Letter," such claims

6

cannot be barred by the Protocol Order and the Protocol Extension Order because the Protocol

Order reserved their "right, if any, to seek to provide proof in support of . . . allowance . . .

through the use of statistical sampling" or other "Alternative Methods." (Objection at 7). They

are wrong.

> A.    **The Court Should Reject the RMBS Trustees' Attempt to Rewrite the Protocol so as to Apply to Only Covered Loans.**

The RMBS Trustees' Objection makes a belated attempt to rewrite the Protocol so as to

apply to only Covered Loans and thereby revive claims that were disallowed and expunged by

the Protocol Order and the Protocol Extension Order. The Court should reject it.

The RMBS Trustees argue that, because Lehman's Cross-Motion was "prompted" by

their Estimation Motion and *their* motion dealt with only Covered Loans, the Protocol applies to

only Covered Loans as well. (Objection at 4). That is nonsense. The Court did not grant the

Estimation Motion—it granted Lehman's Cross-Motion. Therefore, as described above, the

scope of the Protocol is defined not by the Estimation Motion, but by the relief sought by

Lehman and granted by the Court.

The RMBS Trustees further attempt to avoid the plain language of the Protocol by

misquoting it. They aver that the Protocol defines "RMBS Claims" as "those claims that '[e]ach

RMBS Trustee may submit to the Plan Administrator [arising from] alleged breaches of

representations and warranties and documents deficiencies . . . *as described below*.'" (Objection

at 5 (quoting Protocol § III.e.i) (alterations and emphasis in the Objection)). In other words, the

RMBS Trustees would have the phrase, "as described below," define the RMBS Claims. But

"RMBS Claims" is defined by the immediately preceding phrase as any "claims for breaches of

representations and warranties and document deficiencies." (Protocol § III.e.i).[3] This meaning

---

[3] As described above, RMBS Claims is similarly defined more broadly in the Protocol Order itself.

is confirmed by the fact every other term defined in the Protocol *immediately follows* its

definition.  The phrase "as described below," therefore, does not define the RMBS Claims, but

the RMBS Claim submission process.

Neither can the benchmarks and deadlines for the retrieval, review, and submission of

RMBS Claims redefine the term RMBS Claims, as the Trustees contend.  (Objection at 4-5).

The benchmarks and deadlines reflect the reality—acknowledged by the RMBS Trustees—that

Lehman has little or no liability on Transferor Loans.  It would be entirely rational for the RMBS

Trustees to choose not to expend Trust assets to pursue claims on no-value and low-value loans.

Therefore, the Protocol lays out benchmarks and milestones for the timely and efficient review

of Covered Loans.  Regardless, the absence of benchmarks for Transferor Loans does not exempt

them from the Protocol and nothing in the Protocol Order prevented the RMBS Trustees from

submitting Transferor Loans through the Protocol.  That was their choice alone.

Furthermore, the proposed form of order attached to the RMBS Trustees' Protocol

Extension Motion and ultimately entered by the Court also confirms that claims arising from

Transferor Loans are subject to the Protocol and were disallowed and expunged by Protocol

Extension Order.  The order entered reserved rights as to a single claim based on Transferor

Loans—the one that is the subject of the GreenPoint adversary proceeding.  (*See* Protocol

Extension Motion Exhibit C at 2; Protocol Extension Order at 2).  If the Protocol did not apply to

Transferor Loans, there would have been no reason to reserve rights for the GreenPoint trust.

Finally, the RMBS Trustees cannot seriously contend that they lacked notice that claims

arising from Transferor Loans would be barred and expunged if they failed to submit those loans

pursuant to the Protocol Order.  As outlined above, both the Protocol Order and the Protocol

Extension Order plainly apply to all claims.  What's more, even this Court previously has

8

indicated, most recently *on the record* with counsel for U.S. Bank present that Transferor Loans

are subject to the Protocol and the Overall Claim File Cut-Off Date.  (*See* 3/10/16 Hearing

Transcript in *Lehman Brothers Holdings Inc. et al. v. U.S. Bank Nat'l Ass'n, et al.*, attached

hereto as <u>Exhibit A</u>, at 26 ("THE COURT:  What Mr. Cosenza is confirming is that this

[GP2006-HE1 Transferor Trust], these loans are already subject to [the Protocol].")).  Likewise,

the RMBS Trustees have repeatedly represented to Lehman that they were not pursuing claims

arising from Transferor Loans and that such claims would be barred by operation of the Protocol

and the Overall Claim File Cut-Off Date.[4]

Accordingly, each and every RMBS Claim held by the RMBS Trustees must comply

with the Protocol and all RMBS Claims which were not submitted by the Overall Claim File

Cut-Off Date have been disallowed and expunged, including claims arising from the nearly

12,000 loans identified in the RMBS Trustees' March 31 Letter.

**B.    The Protocol Order's Reservation of Rights Concerning Sampling Did Not
Exempt the RMBS Trustees' From Submitting Their Claims to The Protocol.**

As a fallback position, the RMBS Trustees argue that the Protocol Order's narrow

reservation of rights on the issue of sampling entitles them to seek allowance of RMBS Claims

that they failed to submit to the Protocol via statistical sampling or other "Alternative Methods."

(Objection at 7).  They have no such right.

The notion that the Protocol Order somehow exempted the RMBS Trustees from the

requirement of submitting loan-level proof of their claims by reserving their rights as to

statistical sampling[5] is not credible.  In December 2014, this Court received expert testimony,

---

[4] If the Court is in any way inclined to consider the RMBS Trustees' argument on this point, Lehman requests
discovery from the RMBS Trustees, including their counsel, experts, and consultants concerning their statements
and intentions not to pursue Transferor Loans and low-value Covered Loans.

[5] At the December 10, 2014 hearing the Court noted that its rejection of the RMBS Trustees' approach to statistical
sampling of the RMBS Claims did not foreclose the possibility that sampling might be used after the Protocol had
narrowed the population of disputed loans, provided that the parties could agree on an acceptable sampling method.

reviewed extensive briefing, and conducted a hearing on the Estimation Motion and the Cross-Motion.  It rejected the RMBS Trustees' sampling approach in favor of the Protocol, which explicitly required the RMBS Trustees to submit loan-level proof of all of their claims by the Overall Claim File Cut-Off Date—failure to do so as to any individual RMBS Claim resulted in expungement of the claim.  (*See* Protocol § III.d.iii; Protocol Order at 2).  Yet, under the RMBS Trustees' latest interpretation of the Protocol Order, they were free to sit on their hands for the last 16 months, run out the clock on the Protocol, and then move to allow their claims using "Alternative Methods."  That cannot be right.

For the same reason, any RMBS Claims arising from the nearly 12,000 loans referenced in the RMBS Trustees' March 31 Letter also are barred by the Protocol Order and the Protocol Extension Order.  As a threshold matter, the letter was sent on the Overall Claim File Cut-Off Date and after this Court entered the Protocol Extension Order.  If the RMBS Trustees required relief as to those loans, it was incumbent upon them to raise the issue with the Court prior to March 31, 2016.  Further, the letter indicates that the loans were not submitted pursuant to the Protocol Order because "the expense imposed by Step 1 [of the Protocol] exceeds the expected recovery."  (*See* Motion at Exhibit C, 3/31/16 Letter from J. Weitnauer to T. Cosenza).  As the Court is aware, the Protocol was designed to effect the put-back process contemplated by the agreements governing the RMBS Trusts (the "Governing Agreements").  If the expense imposed by Step 1 of the Protocol exceeds the RMBS Trustees' expected recovery on certain loans, then the RMBS Trustees were entitled not to pursue such claims, but there is no exception in the Protocol that permits them to omit whole categories of loans from the Protocol and then claim, after the fact, that they were entitled all along to do so and request sampling.  If anything, the

---

(*See* 12/10/14 Hearing Tr. at 109-111, 356) (ECF 49007).  Lehman submits that the Protocol Order's reservation on the issue of sampling is limited in scope, accordingly.

reservation of rights in the Protocol Order applies to RMBS Claims that were timely submitted, and cannot reasonably be read as the RMBS Trustees argue.[6]

### C.      The Court Should Reduce the RMBS Reserve.

Lastly, since all of the claims subject to the Motion are properly disallowed, the related reserve for SASCO should be released.  There is no reason to maintain reserves on behalf of claims against SASCO because no such claims survive.  The RMBS Trustees' argument that such reserves should be maintained is simply further evidence that their true goal is to minimize *their* exposure for *their* decision-making.  The Court should not countenance such gamesmanship.

In sum, the Protocol applies to all RMBS claims, including claims arising from Transferor Loans, the Protocol Order's reservation as to statistical sampling did not relieve the RMBS Trustees from their obligation to comply with the Protocol, and accordingly, Lehman respectfully requests the Court to overrule the RMBS Trustees' Objection, grant the Motion, and enter an order disallowing and expunging the proofs of claim listed on Exhibit B attached to the Motion and authorizing the release of the RMBS Reserve related to RMBS Claims against SASCO.

### CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form of annexed to the Motion as Exhibit D, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

---

[6] Lehman reserves all rights to request estimation of all RMBS Claims timely submitted pursuant the Protocol Order.

Dated:  New York, New York
May 31, 2016

/s/_Paul V. Shalhoub
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111

Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Debtors Lehman Brothers Holdings Inc. and certain of its affiliates*

# EXHIBIT A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 08-13555-scc

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6   LEHMAN BROTHERS HOLDINGS INC.,

7            Debtor.

8   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9   ADV. PROC. NO.: 15-01112-scc

10  LEHMAN BROTHERS HOLDINGS INC., ET AL.,

11            Plaintiff,

12  v

13  U.S. BANK NATIONAL ASSOCIATION, ET AL.,

14            Defendant.

15  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16                U.S. Bankruptcy Court

17                One Bowling Green

18                New York, New York

19

20                March 10, 2016

21                2:01 PM

22

23  B E F O R E :

24  HON SHELLEY C. CHAPMAN

25  U.S. BANKRUPTCY JUDGE

Page 2

1    Adversary proceeding: 15-01112-scc Lehman Brothers Holdings

2    Inc. et al. v U.S. Bank National Association et al.

3    Status Conference

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach

Page 3

```
 1    A P P E A R A N C E S :

 2    WILLKIE, FARR & GALLAGHER, LLP

 3         Attorneys for Debtors

 4         787 Seventh Avenue

 5         New York, New York 10019

 6

 7    BY:   TODD G. COSENZA, ESQ.

 8

 9    NIXON PEABODY, LLP

10         Attorneys for U.S. Bank as Trustee

11         437 Madison Avenue

12         New York, New York 10022

13

14    BY:   CONSTANCE M. BOLAND, ESQ.

15         ANNICA BIANCO, ESQ.

16

17    CAHILL GORDON & REINDEL, LLP

18         Attorneys for GreenPoint Mortgage Funding

19         80 Pine Street

20         New York, New York 10005

21

22    BY:   KEVIN J. BURKE, ESQ.

23

24

25
```

**Page 4**

1   MURPHY & MCGONIGLE, P.C.

2        Attorneys for GreenPoint Mortgage Funding

3        4870 Sadler Road, Suite 301

4        Glen Allen, Virginia 23060

5

6   BY:  CAMERON S. MATHESON, ESQ.

7

8   KLEHR, HARRISON, HARVEY, BRANZBURG, LLP

9        Attorneys for Syncora Guarantee Inc.

10       1835 Market Street

11       Philadelphia, Pennsylvania 19103

12

13  BY:  PAIGE M. WILLAN, ESQ.

14       FRANK M. CORRELL, JR., ESQ.

15       WILLIAM R. HINCHMAN, ESQ.

16

17

18

19

20

21

22

23

24

25

Page 21

1    anything further than that, Your Honor.

2             But one thing that might help as well is that the

3    sixth cause of action in the adversary complaint, Lehman is

4    -- seeks an order providing that the trustee should be bound

5    by the RMBS protocol.  And we think that if that's

6    determined early and we could tee it up for early

7    determination, that could inform how the rest of the

8    briefing goes and a scheduling order because we -- it would

9    be helpful if the trustee knew whether it needed to prove

10   damages on a loan by loan basis or through some other --

11            THE COURT:  Well, when you say bound by the

12   protocol, you mean follow the protocol?

13            MS. BOLAND:  Follow --

14            THE COURT:  I'm sorry --

15            MS. BOLAND:  Yes, Your Honor.

16            THE COURT:  Follow the --

17            MS. BOLAND:  Follow the protocol.

18            THE COURT:  -- procedures that were established in

19   the protocol because --

20            MS. BOLAND:  Exactly, Your Honor.

21            THE COURT:  -- there's a group of trusts that are

22   subject to that protocol.

23            MS. BOLAND:  Pursuant to the RMBS protocol is the

24   word --

25            THE COURT:  Okay.

Page 22

1           MS. BOLAND:  -- those are the words --

2           THE COURT:  Okay.

3           MS. BOLAND:  -- if I misspoke, I'm sorry.

4           THE COURT:  No.  That's fine.  I'm just trying to

5   make sure I -- you know, I try to keep things

6   compartmentalized a little bit and you brought in a whole

7   other big thing.

8           MS. BOLAND:  Okay.

9           THE COURT:  So -- okay.  All right.  So let me --

10  if I could ask you to stop and give Mr. Cosenza a chance to

11  respond to that.

12          MS. BOLAND:  Thank you.

13          THE COURT:  Thank you very much.

14          MR. COSENZA:  So I'll try to find areas of

15  agreement, Your Honor.

16          THE COURT:  Right.

17          MR. COSENZA:  So I think three areas of agreement.

18  One is I guess I do agree that the summary judgment motion

19  needs to be decided.  Collateral estoppel is obviously

20  helpful, but on the merits we can be more helpful to Lehman

21  in case there's some sudden change in the next six months by

22  the first department.  So I think deciding that issue first,

23  that would significantly impact whatever is left of the U.S.

24  Bank claim.

25          Second, giving U.S. Bank and Syncora, based on

Page 23

1    what the proof of claims that they've already put forward to

2    give an articulation as to what they believe is left so that

3    we can sort of assess that and then either move --

4            THE COURT:  What would be the characteristics of

5    that articulation?  What would it look like?

6            MR. COSENZA:  I think --

7            THE COURT:  Would it be like number of loans,

8    amounts, you know, you would have to --

9            MR. COSENZA:  I think it would be -- because I'll

10   get to the -- I think it would be these are the governing

11   documents.  These are the things that we believe were mis --

12   you know, misrepresentations that we can only proceed

13   against Lehman against.  There's some here that were

14   mentioned by Ms. Boland that it's the first I'm hearing is

15   that there are GreenPoint ones and then there could be some

16   residual value against Lehman.

17           I would sort of like to understand, put those in.

18   It could be, you know, something like a five or six page

19   document just sort of explaining and attaching the relevant

20   --

21           THE COURT:  Okay.

22           MR. COSENZA:  -- governing documents.  So that in

23   the next week or two --

24           THE COURT:  Ms. Boland, does that sound acceptable

25   to you?

Page 24

```
 1              MS. BOLAND:  Yes, Your Honor.

 2              THE COURT:  Okay.

 3              MR. COSENZA:  And then --

 4              THE COURT:  Okay.

 5              MR. COSENZA:  And then the third issue, Your

 6   Honor, is this is one of the trusts and it's part of the

 7   RMBS settlement --

 8              THE COURT:  Protocol.

 9              MR. COSENZA:  Sorry.  RMBS protocol.

10              THE COURT:  So it already is part of the protocol

11              MR. COSENZA:  It is already part of the protocol.

12              THE COURT:  So then why would I have to make any

13   determination on that?

14              MR. COSENZA:  I don't -- I don't --

15              THE COURT:  So --

16              MS. BOLAND:  I'm sorry.  I just --

17              THE COURT:  That's why I was confused.

18              MS. BOLAND:  Okay.

19              THE COURT:  When you said that you would need to

20   have a determination that --

21              MS. BOLAND:  I would need to have --

22              THE COURT:  -- a determination that this was

23   subject to the RMBS protocol, I confused it further by

24   thinking that it wasn't, but it already is --

25              MR. COSENZA:  Yes.
```

1            THE COURT:  -- one of the trusts that's part of

2      the protocol.

3            MS. BOLAND:  I don't believe so, Your Honor.

4            MR. COSENZA:  Yes, it --

5            MS. BOLAND:  Why would Lehman seek an order in its

6      adversary complaint last May if we were part of -- if this

7      trust, the GreenPoint trust, which is a transferor trust,

8      why would it be part of the RMBS protocol?

9            THE COURT:  That --

10           MS. BOLAND:  Why would Lehman have sought an order

11     if that were (indiscernible).

12           MR. COSENZA:  Your Honor, the request was to have

13     them as a way of keening -- understanding that the value of

14     those claims that forced them to put the loans through the

15     protocol.  But they're already governing --

16           THE COURT:  So --

17           MR. COSENZA:  -- they're already governed by the

18     protocol.

19           THE COURT:  -- let me try to explain.

20           So when the -- was it five trustees?

21           MR. COSENZA:  Four.

22           THE COURT:  Four trustees collectively, 210 --

23           MR. COSENZA:  Four-hundred.

24           THE COURT:  I'm stumbling now.

25           MR. COSENZA:  Four-hundred --

Page 26

1            THE COURT:  Four-hundred trusts --

2            MR. COSENZA:  Four-hundred and some-odd --

3            THE COURT:  -- 210 loan files aggregated together

4    and sought to reduce the reserves.  What grew out of that

5    was the protocol.  They -- there was an entire proceeding

6    that -- in which the trustees sought to proceed on the basis

7    of sampling.  I declined to allow that.  We had the protocol

8    which required a loan by loan review.

9            What Mr. Cosenza is confirming is that this trust,

10   these loans, are already subject to that protocol.  The

11   clarification that he just made is that the allegation in

12   the papers more recently was simply that you push ahead in

13   the line so to speak and put the files through the protocol

14   so that they -- so that the -- in fact, the universe could

15   be narrowed.

16           One of the purposes of the protocol is to narrow

17   the universe of problem files.  So if you were to put these

18   files through the protocol and there was a 20 percent hit

19   rate, that would assist and inform the narrowing of the

20   issues and, frankly, also inform the reduction of the

21   reserves.

22           So I think -- did I get --

23           MR. COSENZA:  That's correct.

24           THE COURT:  -- that right?

25           MR. COSENZA:  That's absolutely correct, Your

Page 27

1   Honor.

2           THE COURT:  Okay.

3           MS. BOLAND:  Your Honor, I thought that the

4   covered trusts are part of the RMBS protocol and the -- I

5   don't know whether that's -- that's what my understanding

6   was.

7           THE COURT:  The --

8           MR. COSENZA:  We've had -- not to step --

9           THE COURT:  Go ahead.

10          MR. COSENZA:  We've had --

11          THE COURT:  Go ahead.

12          MR. COSENZA:  -- numerous discussions with U.S.

13  Bank and their counsel as to what the scope of the protocol

14  is, and I think there's no --

15          THE COURT:  There's no -- U.S. Bank knows --

16          MR. COSENZA:  -- confusion.

17          THE COURT:  -- that it's in the protocol.

18          MR. COSENZA:  Yes.

19          MS. BOLAND:  Your Honor --

20          THE COURT:  So --

21          MS. BOLAND:  -- what about -- there's a deadline

22  on protocol of a couple of weeks from now.

23          MR. COSENZA:  Correct.

24          MS. BOLAND:  Can that deadline extended?

25          MR. COSENZA:  Your Honor, the deadline is March

Page 28

```
 1    31st.  This has been pending for, you know --

 2              THE COURT:  Well, where is -- you know, we're

 3    getting far afield here.  I don't have it -- you know, I

 4    don't have visibility into the operation of protocol other

 5    than when you -- otherwise -- other than when you come every

 6    couple of weeks to give a status report.  So I don't know

 7    where your loans are in the queue.  I just have no

 8    visibility as to that.

 9              MR. COSENZA:  My understanding is U.S. Bank is,

10    you know, putting all the loans that they believe are moving

11    forward and they're going to meet the deadline by March 31st

12    for whatever they put into the protocol.  That's my

13    understanding.

14              MS. BOLAND:  Well, Your Honor, with the standing

15    issue and assignment -- excuse me -- with the assignment

16    issue pending, I don't know where we stand on the protocol,

17    but --

18              THE COURT:  There --

19              MS. BOLAND:  -- I would like to brief --

20              THE COURT:  There --

21              MS. BOLAND:  -- this issue at least.

22              THE COURT:  Well, but there's nothing to -- you

23    know, there's nothing to brief.  There was a whole

24    proceeding that we had that led to the enactment if you will

25    of the protocol and we've been operating under it for some
```

Page 29

1    time now.  So I'm not going to entertain briefing on whether

2    or not you're subject to the protocol.  It is what it is.

3    And if there was some miscommunication we could talk about

4    it.  But I'm not going to renegotiate the terms of the

5    protocol.  So I'm certainly not going to do that right now.

6              So I think that on this narrow issue, you ought to

7    talk to others who perhaps were closer to the protocol and

8    kind of get some clarity, and then maybe you could have

9    another conversation with Mr. Cosenza.

10              MS. BOLAND:  I most assuredly will.

11              THE COURT:  Okay.

12              MS. BOLAND:  Thank you.

13              THE COURT:  All right.  So I don't want -- you

14    know, I don't want to ambush you, one, on the issue that you

15    really -- you know, that others might be more familiar with.

16              So let's get back to --

17              MR. COSENZA:  Yes.

18              THE COURT:  -- the main issues.

19              So ruling on the merits, bill of particulars --

20              MR. COSENZA:  Yes.

21              THE COURT:  -- and what was the third one?

22              MR. COSENZA:  So the third is once we get the bill

23    of particulars we would like to assess them and have the

24    opportunity to potentially move on them based on either your

25    ruling on the summary judgment or, you know, because we have