**HEARING DATE AND TIME: June 2, 2016 at 10:00 a.m.**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : | Case No.: 08-13555 (SCC) |
| : | |
| Debtors. : | (Jointly Administered) |

------------------------------------------------------------------x

**REPLY BY LEHMAN BROTHERS HOLDINGS INC. TO
TRINITY INVESTMENTS LIMITED'S OPPOSITION
TO CROSS-MOTION TO ENFORCE THE LBHI PLAN**

Lehman Brothers Holdings Inc. ("**LBHI**"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* ("**LBHI Plan**"), hereby submits this reply ("**Reply**") to the opposition ("**Opposition**") [Dkt. No. 52792] filed by Trinity Investments Limited ("**Trinity**") to LBHI's cross-motion ("**Cross-Motion**") to enforce the LBHI Plan. In support of this Reply, LBHI represents as follows:[1]

1.  Trinity's Opposition accuses LBHI of speculation and name calling. But, as will be demonstrated below, LBHI's assertions as to Trinity's motives are all true. LBHI claimed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Amended Objection By Lehman Brothers Holdings Inc. To Motion Of Trinity Investments Limited To Compel Outstanding Distributions On Allowed, Unsatisfied Guarantee Claims and Cross-Motion To Enforce The LBHI Plan And Other Ancillary Relief* ("**Objection/Cross-Motion**"), filed by LBHI on April 20, 2016 [Dkt. No. 52544].

1

DMSLIBRARY01\28975522.v2

that Trinity failed to timely execute simple forms to formally withdraw claims in the LBB proceeding that it had agreed to withdraw, in order to exert leverage against LBHI (who is, by far, LBB's largest creditor). This dilatory conduct necessitated the filing of the Cross-Motion. When confronted with its improper actions in the Objection/Cross-Motion, Trinity finally withdrew claims that it had agreed to withdraw.[2] Trinity provided no reason for the untimely performance of its obligations.

2.   LBHI also claimed that Trinity wrongfully refused to accept the LBB Sixth Distribution which would have fully paid the Trinity claims, and negated the basis for the Trinity Motion. LBHI asserted that Trinity's issue relating to executing the Confirmation was meritless, and it has needlessly incurred expenses relating to Trinity's attempt to obtain a windfall to the detriment of LBHI's other creditors.

3.   In particular, Trinity had previously delivered confirmations in connection with LBB distributions, the Confirmation only asked Trinity to confirm the balance due to it, and Trinity already had confirmed that amount by email. Indeed, Trinity's Opposition states there is no dispute as to the amount owed to it. LBHI claimed that Trinity was trying to achieve a currency exchange windfall that it was not entitled to receive, and other similarly situated LBHI creditors did not get. Trinity does not explicitly reject LBHI's contention as to its motive. And, it does not deny that it previously stated that it would have signed the Confirmation if it was paid in the LBB proceeding in U.S. dollars and not Euros.[3] Trinity claims that it had an unspecified "business reason" for refusing the LBB Sixth Distribution, and claims that it did not need a

---

[2]   As shown herein, there still may be a few open issues relating to Trinity's withdrawal of claims in the LBB proceeding. Those claims are in the name of another party, and it appears that Trinity may still need to file assignment documents to effectuate the withdrawal of its' claims.

[3]   *See* Amended Garza Declaration, ¶ 28, and Exhibit "E" attached thereto. While Trinity asserts that "[it] is not seeking more than full payment under either regime" (Opposition, ¶ 4), that is what it is doing when it improperly refused a Euro distribution from the LBB Administrator and instead, sought a US dollar distribution calculated in accordance with the exchange rate in the LBHI Plan (which is more favorable to Trinity).

2

reason to reject it. Tellingly, the Trinity Opposition has a number of critical admissions that demonstrate the lack of merit for Trinity's position.

**A.     Trinity's Admissions In The Opposition**

  **(i)     The Timing Of When LBB/LBHI Distributions Are Made Is Significant**

4.      While Trinity suggests that it could simply refuse to accept the LBB distribution if it chose to, the following two admissions made in the Opposition negate that suggestion: *First*, Trinity acknowledges that the Harmonizing Resolution (which it approved and Trinity concedes, was "intensely negotiated" (Opposition, ¶ 9)) "contemplated" that creditors would typically recover from LBB prior to recovering from LBHI, and that "Trinity itself originally contemplated recovering its final payment from LBB" (Opposition, ¶ 4). What Trinity labels as "contemplation" is much more than that. At the time the Harmonizing Resolutions were negotiated, the LBHI Plan was in place, and the timing of distributions thereunder was fixed. Causing LBB to make distributions a month before LBHI was intentional, and it was done for precisely the reason why Trinity "contemplated recovering its final payment from LBB." *Second*, Trinity ultimately concedes that it could not arbitrarily refuse to accept a LBB distribution; it needed to be "reasonable" (which it was not). *See* Opposition, ¶ 9.

  **(ii)     There is No Dispute As To What Was Owed to Trinity**

5.      Trinity claims that there might be an issue as to how much was owed to it but, in the end, it cannot deny that it had agreed with LBB (prior to the LBB Sixth Distribution) as to the amount owed to it.[4] Furthermore, Trinity has conceded that the Quota Cap schedules "were correct." Opposition, ¶ 6.[5]

---

[4]  *See* Garza Declaration, ¶¶ 23-24.

[5]  Trinity's statement about the definition of the Quota Cap (*see* Opposition, ¶ 5) is not correct. That provision fixes the Quota Cap amount for applicable claims. It has nothing to do with how distributions are made by LBB and/or LBHI, and does not give Trinity the option to select which currency it can receive distributions in.

3

**(iii)    It Is Undisputed That LBB Can
Withhold Taxes From Trinity's Distributions**

6.    Trinity already conceded in the Motion that LBB made several distributions prior to August 2015 and, in each case, withholding tax had been deducted from such distributions with respect to their claims. *See* Amended Garza Declaration, ¶ 13. Trinity never objected to the withholding deduction previously, and it admits in the Opposition that LBB is entitled to withhold taxes from distributions to it. *See* Opposition, ¶ 6. Moreover, Trinity has conceded that it was prepared to sign the requisite tax status form in connection with the LBB Sixth Distribution. *See* Bour Declaration, ¶ 24.

**(iv)    Trinity Had No Legitimate Business
Reason Not to Execute the Confirmation**

7.    Trinity conceded that it executed documents similar to the Confirmation in the past without objection. *See* Opposition, ¶ 9. The Confirmation is a one page form that states the remaining balance of the claim. Trinity has not identified any errors in the Confirmation and, in fact, has admitted that the amount set forth therein "is correct." Opposition, ¶ 6. Substantially all of the other LBB creditors with an LBHI guaranty (over 40), agreed to, and did timely execute the Confirmation. Trinity acknowledges that, pursuant to Section 8.13(e) of the LBHI Plan, LBHI could ask for the same Confirmation that it has now refused to sign. *See* Opposition, at p. 7 n. 3. The reality for Trinity is that it had no legitimate business reason to not sign the Confirmation.

8.    While Trinity asserts that the Confirmation is outside the contemplation of the Harmonizing Resolution which it approved (*see* Opposition, ¶ 6), that is incorrect. The Harmonizing Resolution states that the LBB Administrator can make distributions to creditors (such as Trinity) only up to the Maximum Amount (as defined therein). In other words, the LBB

4

Administrator cannot make distributions to creditors (such as Trinity) for an amount that would exceed their Quota Caps. Moreover, under the Harmonizing Resolution, LBB creditors with an LBHI guaranty (like Trinity) conditionally assigned their LBB claims to LBHI, which assignment became effective when the guaranty creditors received their Quota Caps. Thus, the Harmonizing Resolution clearly envisioned that creditors would have to confirm the amount needed to reach their Quota Caps in order to effectuate material provisions of the Harmonizing Resolution. That was the purpose of the Confirmation.

9. It is significant that Trinity, on other occasions, pursuant to its obligations under the Harmonizing Resolution, confirmed the amount needed to reach the Quota Caps. And, it is also significant that over 40 similarly-situated LBB creditors signed the Confirmation, which confirmed the amount needed to reach their Quota Caps. The aim of the Harmonizing Resolution was to ensure that no creditor or group of creditors is favored in an unjustified manner. What Trinity is attempting to do by its' Motion goes against the intent and the provisions of the Harmonizing Resolution.

10. Based on the above admissions, it is clear that Trinity should have executed the simple, one-page Confirmation (and the other routine forms), and accepted the LBB Sixth Distribution in the Fall of 2015.

**B.    Trinity's Ability To Receive The LBB Sixth Distribution Was A Valid Tender, Relieving LBHI Of Any Further Performance On The Trinity Guarantee Claims**

11. Based on the undisputed facts, LBB's offer to tender to Trinity the agreed-upon remaining balance owed on the Trinity Direct Claims through the LBB Sixth Distribution should be considered performance by LBB, relieving LBHI of any further obligation on the Trinity Guarantee Claims. *See JPMorgan Chase Bank, N.A. v. Meritage Homes Corp.,* No. 2:11-CV-01364-PMP, 2012 WL 3809235, at *11 (D. Nev. Sept. 4, 2012)(quoting *Kortright v. Cady*, 7

5

E.P. Smith 343, 1860 WL 7852, at *1 (N.Y. 1860))(applying New York law) ("Under New York law, '[t]ender and refusal are equivalent to performance.' Consequently, where the obligation is to pay money, if the obligee refuses tender of payment by the primary obligor, both the underlying obligation and the secondary guaranty obligation are discharged as if satisfied by payment.").

12. Trinity's argument that there was no valid tender is meritless. To begin with, the cases that Trinity relies on did not concern a guarantee, and are distinguishable on that basis alone. Moreover, *4 B's Realty 1530 v. Toscano*, No. 08-CV-2694, 2009 WL 702011 (E.D.N.Y. March 12, 2009) is further distinguishable because in that case, the party attempting to make the tender contested "the validity of the amount claimed . . . and expressly reserve[d] his right to contest Plaintiff's claims . . . ." *Id.* at *1. The opposite is present here: LBB set forth the correct amount due without qualification, and Trinity agreed with such amount.

13. *Koch v. Greenberg*, 14 F.Supp.3d 247 (S.D.N.Y. 2014), a case cited by Trinity in the Opposition, actually supports LBHI. In *Koch*, a dispute arose concerning the authenticity of certain wine bottles and after a lawsuit was commenced, the defendant offered to provide the plaintiff with a refund (*i.e.*, the tender), on the **condition** that the bottles be returned. *Id.* at 264 ("'I am perfectly happy to repay your money and take all the bottles back.'"). While the court focused on the lack of a release in connection with the tender, it did not find (or mention) that the return of the bottles was a condition that defeated the tender. To the contrary, it found that the refund offer was not conditional. *Id.* at 286.

14. Here, Trinity argues that the requirement of the Confirmation made the tender "conditional." But Trinity acknowledges that the amount of the remaining balance owed on the Trinity Direct Claims was correct, so the Confirmation was merely a form to fill out. Like in

6

*Koch* and the return of the bottles, the execution of the straightforward Confirmation should not be considered a condition that would defeat the proper tender to Trinity of the LBB Sixth Distribution.

### C.     LBHI's Action Are Consistent With The LBHI Plan

15.    Trinity essentially argues that once it refused the LBB Sixth Distribution, LBHI nevertheless was required pursuant to the LBHI Plan to make a distribution to Trinity on account of the Trinity Guarantee Claims.  This is contradicted by the express terms of the Plan. Specifically, Section 8.13(e) of the LBHI Plan provides, in relevant part, that "[i]f . . . the Plan Administrator determines, based on the foregoing, that an Allowed Guarantee Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Guarantee Claim . . . ." LBHI determined, based on the ability of Trinity to obtain the LBB Sixth Distribution, that the Trinity Guarantee Claims had been satisfied in full, thus relieving LBHI of making any further distributions on account of the Trinity Guarantee Claims.[6]

### D.     Trinity Should Be Held Accountable For Its Actions

16.    It is true that as a result of LBHI's response to the Motion, Trinity finally took action that it should have taken months ago to withdraw certain claims made in the LBB case. Specifically, Trinity withdrew LBB claim § 38-562 and LBB claim § 38-083.  But it appears that Trinity may still not have taken all requisite action to facilitate the withdrawal of LBB claims §§ 38-707 and 38-725.  In this regard, Trinity may not have recorded the assignment of claims to

---

[6]    While Trinity asserts that the Harmonizing Resolution and the LBHI Plan protect LBHI from disgorgement risk if there is an overpayment (*see* Opposition, ¶ 14), LBHI would still need to endure the administrative burden (and all of its attendant expense, risk and delay), in seeking to recoup any overpayment. This layer of protection for LBHI does not excuse Trinity for its wrongful refusal to accept the LBB Sixth Distribution.

Trinity in the LBB proceeding, and thereby completed the documentation necessary to withdraw the claims assigned to it.

17. Trinity's Motion seeking to compel a payment from LBHI that it should have taken from LBB is meritless. It was brought for an improper purpose and such conduct warrants the imposition of sanctions.[7]

WHEREFORE, LBHI respectfully request that the Court enter the proposed order attached to the Objection/Cross-Motion as **Exhibit "1,"** (i) denying the relief requested in the Motion, (ii) granting the relief requested in the Cross-Motion, and (iii) granting such other and further relief to LBHI as it deems just and proper.

Dated: May 31, 2016
    New York, New York

                                    /s/ Arthur Steinberg
                                   Arthur Steinberg
                                   Scott Davidson
                                   KING & SPALDING LLP
                                   1185 Avenue of the Americas
                                   New York, New York 10036
                                   Telephone: (212) 556-2100
                                   Facsimile: (212) 556-2222

                                   *Counsel for Lehman Brothers Holdings Inc.*

---

[7] As set forth in the proposed order attached as Exhibit 1 to the Objection/Cross-Motion, LBHI does not seek an award of sanctions at this time; instead, it requests that a determination of the amount of costs and reasonable attorneys' fees to be awarded to LBHI on account of Trinity's improper actions be made at a hearing to be scheduled by the Court upon the filing of a separate application by LBHI.

DMSLIBRARY01\28975522.v2