HEARING DATE AND TIME: July 12, 2016 at 10:00 a.m. (Eastern Time)
**RESPONSE DEADLINE**: June 24, 2016 at 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :    08-13555 (SCC)
                                                    :
                                    Debtors.        :    (Jointly Administered)
------------------------------------------------------------x
```

**NOTICE OF HEARING ON THE PLAN ADMINISTRATOR'S OBJECTION TO**
**DEMANDS FOR POSTPETITION INTEREST RELATED TO CLAIM NO. 28308**

**PLEASE TAKE NOTICE** that on June 9, 2016 Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-referenced chapter 11 cases, filed the attached objection to demands for postpetition interest related to claim number 28308 (the "Objection"), and that a hearing (the "Hearing") to consider the Objection will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **July 12, 2016 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI and certain of its affiliates, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Garrett Fail, Esq.); and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be filed and received by no later than **June 24, 2016 at 4:00 p.m. (Eastern Time**) (the "Response Deadline").

        **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection or any claim set forth therein, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the

form of the proposed order annexed to the Objection, which order may be entered with no further

notice or opportunity to be heard offered to any party.

Dated: June 9, 2016
      New York, New York

                                           /s/ Garrett A. Fail
                                           WEIL, GOTSHAL & MANGES LLP
                                           Garrett A. Fail
                                           767 Fifth Avenue
                                           New York, New York 10153
                                           Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007

                                           Attorneys for Lehman Brothers Holdings Inc.
                                           and Certain of Its Affiliates

HEARING DATE AND TIME: July 12, 2016 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: June 24, 2016 at 4:00 p.m. (Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
| In re | : | Chapter 11 Case No. |
|---|---|---|
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | 08-13555 (SCC) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION TO DEMANDS**
**FOR POSTPETITION INTEREST RELATED TO CLAIM NO. 28308**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Estates"), respectfully represents as follows:

**I.**

**RELIEF REQUESTED**

1.     The Court should reduce and allow the demands for postpetition interest ("PPI") made by the current and former holders of claim number 28308 (the "Holders"). The underlying proof of claim (the "Lehman Re Claim") is an Affiliate Claim filed by Lehman Re

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

Ltd. ("Lehman Re"), a Non-Controlled Affiliate, against Lehman Brothers Commercial Corporation ("LBCC"). The Lehman Re Claim was subsequently transferred by Lehman Re to the other Holders. Each Holder has demanded almost four times the PPI to which it is entitled.

2. Pursuant to the Plan, PPI on the Lehman Re Claim accrued at the federal judgment rate until the claim was satisfied in full on October 2, 2014.

3. As the Court is aware, there is no prepetition contract between LBCC and Lehman Re on which the Lehman Re Claim is based. (*See* ECF No. 25864 (Chapter 11 Estates' motion to approve settlement with Lehman Re) ("Prior to the commencement of LBCC's chapter 11 case, Lehman Re and LBCC entered into certain undocumented foreign exchange transactions.").) Even if there had been a relevant prepetition contract, the Court approved a postpetition settlement that explicitly precluded such contract from having any force or effect and released any and all prepetition contractual rights against LBCC. The Lehman Re Claim arises out of the postpetition settlement between LBCC and Lehman Re with no contractual provision for interest.

## II.

## JURISDICTION

4. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III.

## BACKGROUND

A. **The Bar Date Order and Confirmation Order**

5. On September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. LBCC commenced its chapter 11 case on October 5, 2008. The chapter 11 cases have

2

been consolidated for procedural purposes and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6. On December 6, 2011, the Court entered an order confirming the Plan (ECF No. 23023) (the "Confirmation Order"). The Plan became effective on March 6, 2012.

7. Pursuant to section 6.1 of the Plan, the Plan Administrator is authorized, among other things, "to carry out and implement all provisions of the Plan." Through its first six Plan Distributions, LBCC distributed an aggregate 100% recovery to holders of Allowed Claims, satisfying such claims in full in accordance with the Plan. (*See* Plan § 8.13(a).) Pursuant to section 8.13(c) of the Plan:

> each holder of each such Allowed Claim shall receive its Pro Rata Share of further Distributions, if any, to the fullest extent permissible under the Bankruptcy Code in satisfaction of postpetition interest on the Allowed amount of such Claims at the rate applicable in the contract or contracts on which such Allowed Claim is based (or, absent such contractual rate, at the statutory rate).

**B.    The Lehman Re Claim**

8. Lehman Re filed the Lehman Re Claim on September 22, 2009. The claim identifies no prepetition contract between Lehman Re and LBCC but sought $89,912,687.14 for "monies belonging to Lehman Re [that] were deposited in an account with LBCC in Lehman Re's name." (Lehman Re Claim ¶ 6.)

9. On February 16, 2012, Lehman Re and LBCC, among others, entered into a settlement agreement resolving, among other things, the Lehman Re Claim (ECF No. 25864) (the "Settlement"). The Settlement identifies no prepetition contract between Lehman Re and LBCC. Consistent with the foregoing, the motion seeking approval of the Settlement described only "undocumented foreign exchange transactions" between the parties. (*See* ECF No. 25864 at ¶ 33.)

3

10. On March 22, 2012, the Court entered an order approving the Settlement. (ECF No. 27085.) The Settlement provided for allowance of the Lehman Re Claim in the reduced amount of $87,621,000.00. It also expressly released all of Lehman Re's rights "*arising under, in connection with or relating in any manner to* . . . [claim number 28308] *or any of the documents, instruments[,] agreements or transactions described in or contemplated thereby*." (Settlement § 15.1 (emphasis added).) It provided that "this Agreement . . . embod[ies] the entire agreement and understanding of the Parties with respect to the transactions contemplated hereby and supersedes all prior written or oral commitments, arrangements or understandings with respect thereto. . . ." (*Id.* § 18.8.) It contained a further, unambiguous statement that no other related documents survived its execution. (*Id.* art. VII.)

11. On several dates thereafter, the Lehman Re Claim was transferred to unaffiliated third parties.

C. **The Demands for PPI**

12. On March 24, 2015, the Court entered an order establishing, among other things, a bar date for demands for postpetition interest (each as defined therein, a "Demand") against LBCC (ECF No. 48966) (the "PPI Bar Date Order"). The PPI Bar Date Order requires, among other things, that "each holder of a Claim against LOTC or LBCC asserting a Demand . . . provide the . . . source for any rate used in the calculation [and] upload any documentation in support of [its Demand.]" (PPI Bar Date Order 2–3.) Any party that failed to comply was barred and enjoined from a right to assert PPI against LBCC. (*Id.* at 3.) The Holders each submitted a Demand for PPI. (*See* Declaration of Angharad Bowdler in Support of the Plan Administrator's Objection to Demands for Postposition Interest Related to Claim No. 28308 (the "Bowdler Declaration") Exs. A–D.)

4

13. In its Demand, each Holder fails to identify a "contract . . . on which [Lehman Re's Allowed] Claim is based" (Plan § 8.13(c)) and affirmatively admits it "is not aware of an express written agreement . . . governing . . . [the] transfer of the Funds to LBCC and the management thereof." (*See* Bowdler Decl. Ex. A at ¶ 11, Ex. B. at ¶ 11, Ex. C at 1, Ex. D at ¶ 11.) The Demands reference a "Custody Agreement" (as defined in the Demands, a "Custody Agreement") but do not allege or even suggest that the Allowed Lehman Re Claim "is based" on any such agreement or that LBCC was even a party to such agreement.[2] And they do not allege that the rate the Holders use to calculate PPI comes from the Custody Agreement. The Demands allege that "the Lehman group did have express written policies dictating the appropriate interest rate for intercompany claims" but did not allege, as they must for the Holders to be entitled to PPI at an interest rate referred to in any such policy, that the Allowed Lehman Re Claim itself "is based" on such policy.

14. The Holders imply that one undated and unverified document (the "Draft") they submitted dictates an interest rate here. The Draft is not the "contract . . . on which [the Allowed Lehman Re] Claim is based." (Plan § 8.13(c).)[3]

15. But assuming, nonetheless, that they can rely on the Draft, the Holders miscalculate PPI based on the Draft, inflating the amount demanded by over 20 times. The Holders rely on section 5.3.2.3 of the Draft, which provides for interest on certain intercompany transfers at "1 week LIBOR flat; reset daily," but assert Demands based on a pounds sterling

---

[2] The Custody Agreement (allegedly between Lehman Re and LBIE) was not submitted and the Plan Administrator reserves all of its rights with respect thereto.

[3] Moreover, the Draft appears to be an early-planning-stage manual relating to one of the several prepetition cash-management systems previously described to the Court as the "GCCM". The Draft plainly is not (and does not purport to be) the GCCM, nor does it describe the entirety of the GCCM or the complete prepetition cash-management systems. There is no reference in the Draft to a particular amount owed by LBCC to Lehman Re or to any transactions that may have given rise to the amount being owed.

5

LIBOR rate fixed as of the Commencement Date and continuing at such rate for over six years despite the fact that daily resets would have reduced interest accrual to less than one-twentieth of the amount demanded.

## IV.

## **OBJECTION**

16. PPI on the Lehman Re Claim accrued at the federal judgment rate. As discussed below, there is no basis to consider any document other than the Settlement. But even if the Draft was somehow the contract on which the Lehman Re Claim is "based," PPI would have accrued at a floating rate of LIBOR expressed in U.S. dollars.

### A. **The Settlement Is the Only Contract Giving Rise to the Lehman Re Claim and the Only Basis for PPI**

17. The Plan provides that if the contract on which an Allowed Claim is based does not have an interest rate, postpetition interest on that Claim accrues at the statutory rate. (*See* Plan § 8.13(c).)

18. The Settlement is the sole basis for the Lehman Re Claim and therefore the Holders' entitlement to PPI. The Settlement provides that only certain contracts between the Debtors and Lehman Re "shall survive the execution, consummation, or termination of [the Settlement]. *All other contracts . . . shall be . . . of no force and effect* as of the date [of the Settlement's effectiveness]." (Settlement art. VII (emphasis added).) The only contracts that survived the Settlement are an unrelated postpetition settlement agreement and documents related thereto. (*Id.* Ex. H.) Pursuant to this express and unambiguous wording, none of the Custody Agreement, the Draft, or the GCCM (to the extent any may be considered a contract) has any force or effect for any purpose related to the Demands. None can be the basis for a Demand.

6

19. The Settlement also expressly released all of Lehman Re's rights "arising under, in connection with or relating in any manner to . . . any of the documents, instruments[,] agreements or transactions described in or contemplated" by Lehman Re's proof of claim. (Settlement § 15.1.) The Settlement unambiguously "supersedes all prior written or oral commitments, arrangements or understandings with respect thereto. . . ." (*Id.* § 18.8.) "Under contract law, a signed release that is clear and unambiguous and knowingly and voluntarily entered into is binding on the parties . . . ." *Nelson v. Lattner Enters.*, 969 N.Y.S.2d 614, 616 (3d Dep't 2013); *accord Booth v. 3669 Delaware, Inc.*, 703 N.E.2d 757, 758 (N.Y. 1998).

20. Accordingly, the only rights the Holders have are those set forth in the Settlement. The Settlement does not provide for a rate of interest on the Lehman Re Claim. Accordingly, the statutory rate applies to the Lehman Re Claim.

### B. The Statutory Rate Is the Federal Judgment Rate

21. The statutory rate is the federal judgment rate set forth in title 28 U.S.C. § 1961(a) that was in effect on LBCC's Commencement Date: 1.59%. The total PPI owed the Holders is $6,380,711, or approximately 27% of the $23,750,989 the Holders demanded. The Holders' attempt to apply the even higher "English statutory interest rate of 8%" (the "English Law Rate")—more than *five times* higher than the federal judgment rate—is wholly unjustified.

22. The Holders' sole basis for asserting that the statutory rate, if applicable, is the English Law Rate is that "the Custody Agreement between Lehman Re and LBIE is governed by the laws of England." (Bowdler Decl. Ex. A at ¶ 13 n.1, Ex. B at ¶ 13 n.1, Ex. C at 1, Ex. D at ¶ 13 n.1.) This argument does not withstand scrutiny.

23. First, section 8.13(c) of the Plan provides that the statutory rate applies only where there is no "rate applicable in the contract or contracts on which such Allowed Claim

7

is based." The Holders' attempt to base a statutory rate in any respect on a contract contravenes the plain language of the Plan.

24. Second, even if a contract could be looked to as a source of a statutory rate, as set forth above, the Holders do not assert that the Allowed Lehman Re Claim is based on the Custody Agreement. They cannot rely on the Custody Agreement as governing for PPI.[4]

25. Finally, the weight of authority under U.S. bankruptcy law holds that the statutory rate applicable to unsecured claims against a solvent debtor is the federal judgment rate. The Holders' Demands for an English Law Rate are inconsistent with this precedent. *E.g.*, *In re Cardelucci*, 285 F.3d 1231, 1236 (9th Cir. 2002) (holding that a judgment creditor of a solvent chapter 11 debtor was entitled to postpetition interest at the federal judgment rate rather than the rate applicable under nonbankruptcy law); *In re Beguelin*, 220 B.R. 94, 101 (9th Cir. BAP 1998); *In re Kravitz*, Nos. MW 00-070, MW 00-071, 2001 WL 36381905, at 3 (1st Cir. BAP Feb. 16, 2001) (*per curiam*); *In re Wash. Mut., Inc.*, 442 B.R. 314, 358, 359 (Bankr. D. Del. 2011); *In re Energy Future Holdings Corp.*, 540 B.R. 109, 113–14 (Bankr. D. Del. 2015); *In re Dow Corning Corp.*, 237 B.R. 380, 412 (Bankr. E.D. Mich. 1999) (containing extensive discussion of the reasoning underlying the use of the federal judgment rate); *In re Godsey*, 134 B.R. 865, 867, 868 (Bankr. M.D. Tenn. 1991); *In re Gaines*, 178 B.R. 101, 106 (Bankr. W.D. Va. 1995) (solvent debtor liquidating under chapter 11); *In re David Green Prop. Mgmt.*, 164 B.R. 92, 99 (Bankr. W.D. Mo. 1994); *In re Chiapetta*, 159 B.R. 152, 160, 161 (Bankr. E.D. Penn. 1993); *see also* Isaac M. Pachulski & Kathryn F. Evans, *Post-Petition Interest on Unsecured Claims*, 120408 ABI-CLE 861 at § II.B (Dec. 4, 2008) (the "Pachulski Article") (characterizing the federal judgment rate approach as the "majority view" and collecting cases).

---

[4] Further, each of the Holders failed to submit the Custody Agreement as part of its Demand, in violation of the PPI Bar Date Order. They may not now rely on it. (*See* PPI Bar Date Order 3.)

26.     "From and after the petition date, then, creditors hold the equivalent of a federal judgment against estate assets, enforceable only in federal court." *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992); *accord Chiappetta*, 159 B.R. at 161 (same, following *Melenyzer*). Application of the federal judgment rate is consistent with Second Circuit precedent. "[A]llowed claims in [a liquidating] bankruptcy [case] are . . . entitled to be treated as judgments." *In re John Osborn's Sons & Co.*, 177 F. 184 (2d Cir. 1910) (applying statutory predecessor of 28 U.S.C. § 1961 to calculate postpetition interest on claim under the Bankruptcy Act of 1898). The Court of Appeals for the Second Circuit has held that the federal judgment rate applies even where a plaintiff obtains a judgment in federal court on a contract as the result of defendant's removal of the action from New York State court to federal court. *See Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112–13 (2d Cir. 2013).

27.     In the wake of such cross-jurisdictional authority, the Court held in 2011 that the Plan was "fair and equitable . . . as to the Equity Interests in each Debtor"—including LBHI as the holder of Equity Interests in LBCC. (Confirmation Order ¶ JJ.) Unsecured creditors without contract rates of interest, therefore, cannot obtain Distributions in excess of their Allowed Claims plus interest at "the statutory rate," i.e., the federal judgment rate. *See, e.g.*, *In re Granite Broad. Corp.*, 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007) ("There is no dispute that a class of creditors cannot receive more than full consideration for its claims, and that excess value must be allocated to junior classes of debt or equity, as the case may be.") (citing *New England Coal & Coke Co. v. Rutland Co.*, 143 F.2d 179, 186 (2d Cir. 1944)); *In re Brewery Park Assocs., L.P.*, Ch. 11 Case No. 10-11555, 2011 WL 1980289, at *13 (Bankr. E.D. Pa. Apr. 29, 2011) (holding that the overpayment of claims of a senior class, to the detriment of a junior class, violates the "fair and equitable" requirement of cramdown); *In re Exide Techs.*, 303

9

B.R. 48, 61 (Bankr. D. Del. 2003) (noting that "a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims"); *In re MCorp. Financial, Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992) (noting that "creditors must not be provided for more than in full").

28. The minority of courts that have not yet adopted the federal judgment rate relied on *In re Shaffer Furniture Co.*, 68 B.R. 827 (Bankr. E.D. Pa. 1987) and its progeny. As the *Shaffer Furniture* judge himself subsequently announced in *Chiapetta*, *Schaffer Furniture* was decided incorrectly. *Chiapetta*, 159 B.R. at 160, 161 ("This court concurs with the decisions in *Godsey* and *Melenyzer* that the 'legal rate of interest' is the federal judgment rate, an alternative which was not proposed by any of the parties and, frankly, did not occur to us in deciding *Shaffer Furniture*."); *see also* Pachulski Article §§ II.A, B (explaining the "inherent flaws" in the use of other rates). Courts subsequently adopted the federal judgment rate. *See In re Carter*, 220 B.R. 411, 416 (Bankr. D.N.M. 1998) ("Recently, [as of 1998,] the federal judgment rate approach has gained momentum."). Today, courts hold that unsecured claims against solvent debtors accrue interest at the federal judgment rate. *E.g.*, *Wash. Mut., Inc.*, 442 B.R. at 358, 359; *Energy Future Holdings Corp.*, 540 B.R. at 113–14; *Dow Corning Corp.*, 237 B.R. at 412. Accordingly, the Court should reduce the allowed amounts Holders' Demands to those supported by the federal judgment rate.

29. The Court may further find, based on equitable considerations in light of the Chapter 11 Estates' capital structure, that it would be inequitable to require payment of PPI at greater than the federal judgment rate. *See Energy Futures Holdings Corp.*, 540 B.R. at 117–18 (holding that a court may limit PPI payable to creditors of one debtor where creditors of a parent

10

debtor are not paid in full). Here, equitable principles dictate that the statutory rate under section 8.13(c) of the Plan should be, uniformly, the federal judgment rate.

### C. The Demands Incorrectly Calculate the Draft Rate

30. Even if the Court were to assume that the rate set forth in the Draft—LIBOR—applied to the Lehman Re Claim, the Holders' Demands must be reduced. The Draft expressly provides for a floating rate of interest, not the fixed rate asserted by the Holders. The provision of the Draft on which the Holders rely states:

> "The cost of funding the Firm's payment activity is claimed from business by charging debit interest to entities borrowing from Treasury, that is where the intercompany position is the Treasury entity's books is a debit. [*sic*] In turn credit interest is paid to entities by Treasury as an incentive to have entities return funds to the holding company.
>
> The rates at which credit and debit interest is paid are set within ALM and the default rate is the Treasury Index rate. Currently the Index rate is 1 week LIBOR flat; reset daily and there is no difference between credit and debit rates . . . .
>
> Interest is generally charged daily so that the standard period to be used in the interest calculation will be a single day or three days at the weekend.

(Draft at 144.) The Draft further provides that "intercompany interest" is calculated "on a daily basis." (*Id.*)

31. Despite these clear provisions, the Holders assert that they are entitled to postpetition interest at a fixed rate—one significantly higher than the floating rate. (*See* Bowdler Decl. Ex. A at ¶ 12, Ex. B at ¶ 12, Ex. C at 1, Ex. D at ¶ 12.) The Holders cite no provision of the Draft that dictates a fixed rate. No fact or principle of bankruptcy law requires or permits cherry-picking provisions of a contract in this context.

32. A party "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while [seeking to enforce] the rest. A contract 'should be read to give effect to all its provisions.'" *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele*

11

*Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).

> [A party] cannot accept the whole contract, except for a part it later chooses not to accept, and should not be able to slip out of the deal after it eventually found [that a contractual] mechanism did not result in decisions favorable to it. That is part of the calculated business risk it undertook. . . . The law of contracts does not allow [a party] to pick and choose among the provisions of its contract in this fashion.

*Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 623 N.E.2d 531, 535 (N.Y. 1993) (emphasis added); *Seifert, Hirshorn & Packman, Inc. v. Ins. Co. of N. Am.*, 321 N.Y.S.2d 815, 817 (1st Dep't 1971) ("If the parties to a contract adopt a provision which contravenes no principle of public policy and is not ambiguous, the courts have no right to relieve one of them from disadvantageous terms by a process of interpretation.").

33. Here, the Draft would only provide for a floating rate of "1 week LIBOR flat; reset daily." The Holders have no basis to demand a different, higher rate.

34. Further, the applicable LIBOR index currency is U.S. dollars, not pounds sterling. LBCC is a debtor in a U.S. chapter 11 case. Under section 502(b) of the Bankruptcy Code, the allowed amount of a claim is determined "in lawful currency of the United States as of the date of the filing of the petition[.]" *Accord In re Global Power Equipment Group, Inc.*, 400 B.R. 17, 20 (D. Del. 2009) (holding that claims stated in foreign currencies are determined in U.S. dollars using the exchange rate in effect on the petition date). Although LIBOR is generally expressed in relation to different index currencies, each LIBOR rate is designed to compensate for the differences in index currency exchange rates. It makes no sense to apply LIBOR expressed in pounds sterling to a claim stated in U.S. dollars because it would yield an actual rate other than LIBOR. Further, nothing in the text of the Draft requires the expression of LIBOR in

12

pounds sterling.  Accordingly, PPI based on the Draft would be no greater than "1 week [U.S. dollar] LIBOR flat; reset daily."

## V.

## NOTICE

35.     No trustee has been appointed in these Chapter 11 Cases.  The Plan Administrator has served notice of this Objection on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the Holders; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635).  The Plan Administrator believes that no other or further notice need be provided.

13

## VI.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, the Plan Administrator requests that the Court determine that the interest rate applicable to the Holders' Demands is the federal judgment rate set forth in 28 U.S.C. § 1961(a) that was in effect on the date LBCC commenced its chapter 11 case, 1.59%; that no more than an aggregate amount of $6,380,711 of PPI is owed on account of the Lehman Re Claim; and grant such other and further relief as is just.

Dated: June 9, 2016
      New York, New York

                                /s/ Garrett A. Fail
                                WEIL, GOTSHAL & MANGES LLP
                                Garrett A. Fail
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Lehman Brothers Holdings Inc.
                                and Certain of Its Affiliates

WEIL:\95729792\9\58399.0011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                         :     Chapter 11 Case No.
                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                      :     08-13555 (SCC)
                                                              :
                                    Debtors.                  :     (Jointly Administered)
------------------------------------------------------------x

### ORDER GRANTING THE PLAN ADMINISTRATOR'S OBJECTION TO DEMANDS FOR POSTPETITION INTEREST RELATED TO CLAIM NO. 28308

Upon the objection to demands for postpetition interest related to claim number 28308, dated June 9, 2016 (the "<u>Objection</u>"),[5] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to reduce and allow the Lehman Re Claim pursuant to section 502(b) the Bankruptcy Code and Rule 3007(d) of the Bankruptcy Rules, all as more fully described in the Objection; and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Objection is sustained and the relief requested therein is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code and section 8.13(c) of the Plan, the rate of postpetition interest applicable to the Lehman Re Claim is the rate

---

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

set forth in 28 U.S.C. § 1961(a) on the date on which LBCC commenced its chapter 11 case; and it is further

ORDERED that the Demands shall be allowed in the following reduced amounts and disallowed in excess of such amounts:

    A.    <u>Demand submitted by Centerbridge Special Credit Partners II, L.P.</u>: $1,019,797.98,

    B.    <u>Demand submitted by CCP Credit Acquisition Holdings, L.L.C.</u>: $1,888,094.75,

    C.    <u>Demand submitted by Chase Lincoln First Commercial Corporation</u>: $640,994.86, and

    C.    <u>Demand submitted by Lehman Re Ltd.</u>: $2,831,823.41;

and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2016
       New York, New York

                                                       _____
                                                       UNITED STATES BANKRUPTCY JUDGE