# ALSTON & BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-253-8561
www.alston.com

Sage M. Sigler                    Direct Dial: 404-881-4531                    Email: sage.sigler@alston.com

June 15, 2016

**FILED AND VIA E-MAIL**

The Honorable Shelley C. Chapman
United States Bankruptcy Judge for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:    In re Lehman Brothers Holdings Inc., et al. Case No. 08-13555 (SCC)

Dear Judge Chapman:

Wilmington Trust Company ("Wilmington") respectfully requests that the Court enter the RMBS Trustees' proposed order, attached as Exhibit A, regarding the Motion to (A) Disallow and Expunge Certain RMBS Claims, and (B) Release Certain Related Claims Reserves (ECF 52640) (the "Motion to Disallow") filed by Lehman Brothers Holdings Inc. ("Lehman"). As noted in the June 14, 2016 letter from Todd Cosenza (the "June 14 Letter"), Wilmington takes issue with the form of Lehman's overly broad proposed order. For the Court's convenience, a redline showing the RMBS Trustees' proposed changes to Lehman's proposed form of order is attached as Exhibit B.

As to paragraph 1 of Lehman's proposed order, the RMBS Trustees have no objection to Lehman's proposed language and have revised their proposed order accordingly.

As to paragraph 2, Wilmington submits that the RMBS Trustees' form of order is consistent with the relief originally sought by Lehman in the Motion to Disallow and the Court's rulings at the June 9, 2016 hearing. Proof of claim 21135, a copy of which is attached as Exhibit C, encompasses Wilmington's claims against Lehman arising out of representations and warranty breaches (the "R&W Claims"), *as well as any and all other claims Wilmington has against Lehman*. The Protocol was limited to evaluating R&W Claims and the Motion to Disallow, in turn, was specific in disallowing and expunging certain R&W claims that were subject to the Protocol. However, Lehman's proposed order seeks to impermissibly expand the universe of claims to be disallowed and expunged. Specifically, Lehman's proposed order seeks to expunge proof of claim 21135 in its entirety, including Wilmington's non-R&W claims that were never subject to the Protocol.

Lehman argues that Wilmington is only now raising its objection regarding proof of claim 21135 being expunged, but Wilmington, and the other RMBS Trustees, objected to the Motion to

June 15, 2016
Page 2

Disallow in its entirety, clearly objecting to the disallowance and expungement of proof of claim 21135, and all other claims listed on Exhibit B. Further, as discussed above, the universe of claims addressed in the Motion to Disallow, and at the June 9 hearing, was limited to R&W claims subject to the Protocol. At the June 9 hearing, Mr. Cosenza specifically stated that "we thought the motion was basically a motion to seek administrative relief to clean up the claims registry, in light of prior orders that have been entered by the Court." June 9 Transcript, 5:10-13, attached as <u>Exhibit D</u>. The Motion to Disallow sets forth no substantive basis, consistent with Bankruptcy Rule 3007, to disallow or expunge any non-R&W claims contained within proof of claim 21135. The Motion to Disallow was clearly limited to seeking the disallowance and expungement of R&W Claims subject to the Protocol and, through its proposed order, Wilmington simply seeks to preserve non-R&W claims included within proof of claim 21135.

It is unclear to Wilmington what Lehman's dispute is with respect to the language that the RMBS Trustees seek to add in paragraph 3 and the RMBS Trustees were unaware of any dispute regarding this language prior to their receipt of the June 14 Letter. In their objection to the Motion to Disallow and at the June 9 hearing, the RMBS Trustees argued that they should be entitled to seek to prove certain R&W Claims not submitted under the Protocol through the use of statistical sampling or through other alternative means. The Court denied that request and ruled that the RMBS Trustees' interpretation of the reservation of rights regarding statistical sampling in the Protocol Order "would operate as an opt-out provision, and that's just not the way the protocol wor[k]s. So as to that, that argument is rejected." June 9 Transcript, 36:15-17. For the sake of clarity, the RMBS Trustees crafted paragraph 3 to memorialize this ruling and make clear that the RMBS Trustees are prohibited from seeking to prove any claims *listed on Exhibit B to the Motion to Disallow*, which claims were subject to the Protocol, through the use of statistical sampling or other alternative means. If, as Lehman argues, the Court instead intended to reserve the parties' rights as to sampling for all RMBS Claims, including those listed on Exhibit B to the Motion to Disallow, then there would be no basis to disallow or expunge any of the claims listed on Exhibit B to the Motion to Disallow at this time.

Sincerely,

Sage M. Sigler

Attachments

cc:   Todd G. Cosenza (via e-mail to tcosenza@willkie.com)

# **Exhibit A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | ) | Case No. 08-13555 (SCC) |
|  | ) |  |
| Lehman Brothers Holdings Inc., et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---------------------------------------------------------- x

### ORDER GRANTING DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES

Upon consideration of: (1) the motion (the "Motion")[1] of the above-captioned debtors (collectively, the "Debtors") for entry of an order granting Debtors' Motion to (a) Disallow and Expunge Certain RMBS Claims and (b) Release Certain Related Claims Reserves (ECF 52640); the Declaration of Zachary Trumpp; (2) the RMBS Trustees' Objection to the Motion (ECF 52951); and (3) the Debtors' Reply in support of the Motion (ECF 52960); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and a hearing on the Motion having been held on June 9, 2016 (the "Hearing"); and sufficient notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefore, it is hereby:

### ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted for the reasons set forth on the record of the Hearing.

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The claims listed on <u>Exhibit B</u> annexed to the Motion are disallowed and expunged in their entirety, except that Wilmington Trust Company, as Trustee's proof of claim number 21135, filed against Lehman Brothers Holdings Inc., shall not be expunged and shall be disallowed only to the extent such claim relates to claims subject to the Protocol that were not submitted pursuant to the Protocol; all other claims asserted pursuant to proof of claim number 21135 shall remain pending claims.

3.      Notwithstanding the Protocol Order's decretal paragraph that stated "ORDERED, that each of (i) the RMBS Trustee's right, if any, to seek to provide proof in support of the allowance of the RMBS Claims through the use of statistical sampling, and (ii) the Plan Administrator's right to object to the use of statistical sampling by the RMBS Trustees, is reserved," the RMBS Trustees are prohibited from further pursuing the claims listed on Exhibit B (except for the limited exceptions specifically stated above) through any means available, including, but not limited to, the use of statistical sampling or other alternative methods.

4.      The Debtors are authorized to reduce and release the amounts in the RMBS Reserve that relates to claims against SASCO.  Consistent with the *Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code Estimating the Amounts of Claims filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* (the "<u>Reserve Order</u>") (ECF No. 25643), this shall consist of 5% of the Reserve ($250,000,000). This Order shall have no force or effect with respect to the remaining $4,750,000,000 in the RMBS Reserve.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

6.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2016
          New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————x
                                      )
In re                           )     Case No. 08-13555 (SCC)
                                        )
Lehman Brothers Holdings Inc., et al.,   )     Chapter 11
                                        )
       Debtors.                 )     Jointly Administered
                                          )
———————————————————x

### ORDER GRANTING DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES

Upon consideration of:  (1) the motion (the "Motion")[1] of the above-captioned debtors (collectively, the "Debtors") for entry of an order granting Debtors' Motion to (a) Disallow and Expunge Certain RMBS Claims and (b) Release Certain Related Claims Reserves (ECF 52640); the Declaration of Zachary Trumpp; (2) the RMBS Trustees' Objection to the Motion (ECF 52951); and (3) the Debtors' Reply in support of the Motion (ECF 52960); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and a hearing on the Motion having been held on June 9, 2016 (the "Hearing"); and sufficient notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefore, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

———————————

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1.      The Motion is granted for the reasons set forth on the record of the Hearing.

2.      The claims listed on Exhibit B annexed to the Motion are disallowed and expunged in their entirety., except that Wilmington Trust Company, as Trustee's proof of claim number 21135, filed against Lehman Brothers Holdings Inc., shall not be expunged and shall be disallowed only to the extent such claim relates to claims subject to the Protocol that were not submitted pursuant to the Protocol; all other claims asserted pursuant to proof of claim number 21135 shall remain pending claims.

3.      Notwithstanding the Protocol Order's decretal paragraph that stated "ORDERED, that each of (i) the RMBS Trustee's right, if any, to seek to provide proof in support of the allowance of the RMBS Claims through the use of statistical sampling, and (ii) the Plan Administrator's right to object to the use of statistical sampling by the RMBS Trustees, is reserved," the RMBS Trustees are prohibited from further pursuing the claims listed on Exhibit B (except for the limited exceptions specifically stated above) through any means available, including, but not limited to, the use of statistical sampling or other alternative methods.

4.      3. The Debtors are authorized to reduce and release the amounts in the RMBS Reserve that relates to claims against SASCO.  Consistent with the *Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code Estimating the Amounts of Claims filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* (the "Reserve Order") (ECF No. 25643), this shall consist of 5% of the Reserve ($250,000,000). This Order

- 2 -

shall have no force or effect with respect to the remaining $4,750,000,000 in the RMBS Reserve.

5.    4. The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

6.    5. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

7.    6. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2016
        New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

| Summary report: Litéra® Change-Pro TDC 7.5.0.155 Document comparison done on 6/15/2016 11:22:33 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Lehman Order Expunging Claims and Releasing Certain Reserves.DOCX | |
| **Modified DMS:** iw://IWDMSATL/LEGAL02/36469705/4 | |
| **Description:** WT - Lehman - Order Expunging Claims and Releasing Certain Reserves | |
| **Changes:** | |
| Add | 11 |
| Delete | 5 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 16 |

**<u>Exhibit C</u>**

| **United States Bankruptcy Court/Southern District of New York** | | **PROOF OF CLAIM** |
|---|---|---|

*United States Bankruptcy Court/Southern District of New York*
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13 555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                    0000021135

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Wilmington Trust Company, as Trustee
c/o Dorri Costello
Rodney Square North, Mail Code 1605
1100 North Market Street
Wilmington, Delaware 19801
Telephone number: 302-636-6194
Email: DCostello@wilmingtontrust.com

Send Notices to:
Alston & Bird LLP
Attn: J. William Boone, Esq.
c/o Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone number: 404-881-7282
Email: bill.boone@alston.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)

Dorri Costello, Financial Services Officer
Wilmington Trust Company, as Trustee
1100 North Market Street, Mail Code 1605
Wilmington, Delaware 19801
Telephone number: 302-636-6194        Email: DCostello@wilmingtontrust.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed: $ _____ See Attached Exhibit A _____**
If all or part of your claim is secured, complete Item 4 above; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO** http://www.lehman-claims.com **AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** See attached Exhibit A.
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor: _____** N/A
**3a. Debtor may have scheduled account as: _____**
(See instruction #3a on reverse side.)

**4.    Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $ _____ Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____

Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____**
(See instruction #6 on reverse side.)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_____

**Amount entitled to priority:**

$ _____

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 21 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: September 18, 2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Signature*

Name and Title:    Dorri Costello, Financial Services Officer, Wilmington Trust Company, as Trustee

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**Exhibit A**

**ATTACHMENT TO PROOF OF CLAIM OF WILMINGTON TRUST
COMPANY, AS TRUSTEE, AGAINST LEHMAN BROTHERS HOLDINGS INC
IN CONNECTION WITH CERTAIN MORTGAGE-BACKED
SECURITIZATIONS WITH MORTGAGE LOANS SOLD BY LEHMAN
BROTHERS HOLDINGS INC.**

Wilmington Trust Company ("WTC") submits this Attachment to its proof of claim

(the "Proof of Claim") against Lehman Brothers Holdings Inc. ("LBHI" or the "Debtor") in

connection with each mortgage-backed securitization transaction (i) for which WTC

serves as trustee (in such capacity for each such transaction, the "Trustee") of the

securitization trust (the "Trust") formed in connection with each such transaction, (ii)

for which the Trust is currently comprised in whole or in part of mortgage loans sold

by LBHI ("LBHI Loans"), (iii) for which the Debtor made mortgage loan

representations and warranties or incurred certain cure, repurchase or substitution

obligations with respect to the LBHI Loans (the "LBHI Obligations"), (iv) for which

the LBHI Obligations were assigned to the Trust such that WTC as Trustee currently

possesses the right to pursue remedies (in accordance with the securitization

documents) against the Debtor for breaches of the LBHI Obligations, (v) for which

mortgage-backed securities of any class issued by the Trust (the "Securities") are still

outstanding, (vi) for which WTC may have certain contractual rights against the Debtor

for the payment of its fees, expenses or indemnities or for the Debtor to perform certain

obligations on behalf of the Trust or with respect to WTC (the "Debtor's Undertakings")

and (vi) for which WTC has not separately filed a proof of claim with this Court against

the Debtor (each mortgage-backed securitization transaction referred to individually as

a "WTC/LBHI Transaction", and collectively as the "WTC/LBHI Transactions").

### Securitization Generally

1.      "Securitization" is a process in which income-producing assets such as mortgage loans or accounts receivable are pooled and then sold to a trust or other "bankruptcy remote" special purpose entity that issues non-recourse securities collateralized or otherwise "backed" by the pool of income-producing assets. Payments on the securities are made with income collected on the pooled assets and the purchase price for the assets is funded with the proceeds from the issuance of such securities.

2.      The entity that actually makes the mortgage loans to individual consumers allowing them to purchase real estate is normally referred to as an originator. The originator of income-producing assets sells the assets to a seller. After a seller aggregates sufficient assets to effect a securitization of such assets, the seller sells such assets in a transaction that constitutes a "true sale," and does not retain an equitable ownership interest in the assets. Securitization thus isolates the creditworthiness of the income-producing assets from the bankruptcy risk of the seller, enabling nationally recognized statistical credit rating agencies such as Standard & Poor's Ratings Group, Moody's Investor Services, Inc. and Fitch, Inc. to assign credit ratings to the securities backed by the income-producing assets based exclusively on the credit quality of the assets themselves without reference to the seller's creditworthiness. Securitization promotes access to the capital markets at a low cost of funds.

### The Role of Sellers in Securitizations

3.      Originators of mortgage loans who do not want to hold their originated loans on their books sell those loans. Often the loans are purchased by entities that in

turn sell the loans to other entities that sponsor securitizations of mortgage loans.

4.        Originators who sell loans to a seller who then sells them to a securitizer would, subsequent to such origination, enter into a mortgage loan purchase and sale agreement between a purchaser and the originator, as seller, whereby the originator, from time to time, would sell mortgage loans to the purchaser and would in connection with such sale usually make certain representations and warranties regarding those mortgage loans. After aggregating enough mortgage loans to conduct a securitization transaction, the purchaser would then in turn sell the mortgage loans to a securitizer who would then securitize the mortgage loans by selling them to a bankruptcy-remote depositor who would in turn sell the mortgage loans to a trustee on behalf of a trust. As consideration for such sale, the trust would issue a series of mortgage-backed securities in various classes which would represent interests in the assets of the trust and which would be sold to investors (the "Securityholders"). Principal and/or interest due on such securities would be paid from principal, interest and other moneys collected from obligors on the mortgage loans comprising the assets of the trust.

5. The seller that sells the mortgage loans to the securitizer typically owes certain ongoing obligations directly to the trust regarding those mortgage loans sold. The seller is often the party responsible for curing any material document defects identified in the mortgage loan file, as well as ensuring mortgage loans are properly recorded or assigned to the trust. In the event the seller of the mortgage loans is unable to cure any defect or fails to properly record or assign any of the mortgage loans to the trust, the seller is normally the party responsible for repurchasing any affected mortgage loan.

6.      The originator of the mortgage loans sometimes would in respect of the mortgage loans, make representations and warranties to the purchaser/securitizer under the mortgage loan purchase and sale agreement.  Sometimes those representations and warranties are then either restated by the seller giving rise to contractual repurchase or cure rights against the seller itself or transferred and assigned with the mortgage loans into the trust formed in connection with the securitization and sometimes they are not transferred and assigned to the trust.  Whether or not the representations and warranties are transferred and assigned is a structural decision made by the sponsor of the securitization.  On the one hand, if the representations and warranties are transferred and assigned to the trust, the originator would often be liable to the securitization transaction parties for breaches of its mortgage loan representations and warranties and such parties (especially the trustee) would usually have the right to pursue remedies against the originator for such breaches.  On the other hand, the seller may make certain representations and warranties regarding the mortgage loans directly to the depositor, such representations and warranties may carry with them a duty to cure and/or repurchase the mortgage loans upon the discovery of a breach of any of the representations and warranties by certain parties to the securitization.  In such latter situation, the trustee would pursue any remedies for cure or repurchase directly against the seller of the mortgage loans rather than against the originator.

7.  It is important for trustees, master servicers and servicers to identify the securitization transactions in their portfolios that contain loans sold by a seller in bankruptcy so they can determine if proofs of claim need to be filed in the bankruptcy court.  The most active trustees in the mortgage loan securitization business have

substantial portfolios, which compounds the challenge of identifying specific sellers who contributed loans to a specific securitization transaction.

8. WTC serves as trustee on a number of securitization trusts comprised in part or in whole of mortgage loans sold by the Debtor. Similar to the general discussion in paragraphs 5 and 6 above, some of the trusts in WTC's portfolio have the right, typically exercised by the trustee, to pursue remedies against the seller for breaches of mortgage loan representations and warranties made by the seller, as well as for other cure and/or repurchase obligations owed by the seller. Other securitization trusts in WTC's portfolio may not have any such right that can be directly asserted by the trustee on behalf of the Trust against the seller.

9. On September 15, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court, thus commencing the instant Chapter 11 case.

### WTC's Claims

10. WTC has identified a number of Trusts which contain LBHI Loans and has filed in its capacity as Trustee separate proofs of claims related thereto. However, because of the difficulty described above in identifying all the sellers who contributed loans to a particular securitization trust, WTC is currently uncertain whether it has identified all the securitization trusts with LBHI Loans in them in which WTC acts as trustee. Thus, WTC submits this claim out of an abundance of caution and in order to preserve all its rights. To the extent additional securitizations are identified which contain LBHI Loans, WTC, acting individually or in its capacity as trustee, anticipates amending this proof of claim to reflect such additional information.

11.    With respect to any WTC/LBHI Transaction, WTC has contingent

claims against the Debtor based on, *inter alia,* (a) breaches of the LBHI Obligations; (b) if applicable, the failure of the Debtor to perform its obligations to deliver required documents evidencing the LBHI Loans that conform to the requisite delivery requirements set forth in the relevant securitization documents; (c) if applicable, the failure to cause certain documents evidencing the LBHI Loans to be recorded; (d) if applicable, indemnification for costs associated with any such aforementioned breaches; and (e) the failure of the Debtor to perform the Debtor's Undertakings.

### Other Claims

12.     With respect to any WTC/LBHI Transactions, WTC may have other claims against the Debtor that are contingent, unliquidated or have not otherwise been discovered on the date hereof arising under the relevant agreements to any such securitizations.

13.     With respect to any WTC/LBHI Transactions, further amounts may be owed by the Debtor, which amounts are currently undetermined as the Debtor has not elected to assume or reject its obligations under the relevant agreements to any such securitizations.  If the Debtor were to elect to assume or reject such agreements, further claims and amounts will be determined.

14.     WTC hereby includes in this Proof of Claim such additional claim amounts and reserves the right to amend or supplement this Proof of Claim for any purpose, including but not limited to fixing or liquidating any such additional claim amounts, identifying additional LBHI Loans held by any Trust for which WTC is the Trustee and for which the Debtor has a repurchase obligation under the Agreements, specifying claims relating to the Debtor's Undertakings, specifying claims for ongoing

obligations of the Debtor that are not expressly described herein, or asserting any claim for secured status or priority.

### Miscellaneous

15.    The claims set forth herein may have grown and continue to grow after the Petition Date, to the extent permitted by law.

16.    With respect to any WTC/LBHI Transaction, WTC also asserts setoff and recoupment rights with respect to any and all funds held by it that constitute property of the Debtor (if any), and any and all other setoff and recoupment rights, all of which WTC expressly reserves, and asserts a secured claim on account thereof.  The claims asserted in this Proof of Claim are secured to the extent of the value of any security and setoff rights and unsecured for any deficiency.

17.    The filing of this Proof of Claim is not intended to and does not submit WTC or the Trustee to the jurisdiction of the Bankruptcy Court for any purpose. WTC and the Trustee hereby demand a trial by jury on all issues so triable.

18.    WTC may have post-petition administrative expense claims against the Debtor.  WTC is not asserting these claims herein, as the sole purpose of this Proof of Claim is to assert its pre-petition claims against the Debtor.  By filing this Proof of Claim, WTC does not waive any of its post-petition claims against the Debtor, and expressly reserves all of its rights in connection with such claims.

19.    To the best of WTC's knowledge, no judgment has been rendered on the claims set forth herein.

20.    To the best of WTC's knowledge, all payments made by the Debtor in connection with the claims asserted herein have been credited and deducted for the

purposes of making this Proof of Claim.

21.      WTC also files this claim for any other losses, expenses or fees which are unknown at this time but which may be suffered or incurred by any Trust, and which, under the relevant agreements to any WTC/LBHI Transaction, law or equity, are to be borne by the Debtor.

22.      It is expected that the agreements supporting this Proof of Claim and related documents and agreements, are confidential, voluminous in nature and, upon information and belief, are already in possession of the Debtor and/or are publicly filed documents with the Securities and Exchange Commission.   WTC, once the specific documents are identified, will make any and all such documents in its possession available upon request by a party in interest with the appropriate confidentiality protections put in place and the agreement of the requesting party to reimburse WTC for costs related to the request.

23.      By executing and filing this Proof of Claim, WTC does not waive any right to any security or any other right or rights with respect to any claim it has or may have against the Debtor or any other person or persons. The filing of this Proof of Claim is not intended and should not be construed to be an election of remedies or waiver of any past, present or future defaults or events of default under the relevant agreements to any WTC/LBHI Transaction.

24.      WTC hereby asserts a contingent and unliquidated claim against the Debtor in an amount equal to the aggregate of the repurchase obligations (calculated in accordance with the respective agreements to the WTC/LBHI Transactions) associated with any LBHI Loans that may be subject to repurchase due to existing breaches of the

Debtor's representations and warranties. The amount of this claim is subject to change, and WTC reserves the right to amend this Proof of Claim in the future to assert any claims when discovered.

25.    To the best of WTC's knowledge, the claims set forth in this Proof of Claim are not subject to any valid setoff or counterclaim by the Debtor and no judgment has been rendered on the claims; *provided, however,* that WTC expressly reserves and does not waive any setoff or recoupment rights that it may possess.  The amount of all payments made prior to the Petition Date, if any, have been credited and deducted.

26.    This Proof of Claim is a general unsecured claim, except as it may be determined to be subject to setoff or recoupment, or otherwise determined to be an administrative, priority or secured claim.

27.    This Proof of Claim is filed without prejudice to the filing by WTC of additional proofs of claim with respect to any other liability or indebtedness of the Debtor. WTC specifically preserves all of its procedural and substantive defenses and rights with respect to any claim that may be asserted against WTC by the Debtor or any other party in interest in these bankruptcy cases, or any other person or entity whatsoever.

28.    All notices and communications concerning this Proof of Claim should be sent to the following addresses:

J. William Boone
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: 404-881-7000

and

Dorri Costello
Wilmington Trust Company
Rodney Square North
Mail Drop Code 1605
1100 North Market Street
Wilmington, Delaware 19801
Telephone: 302-636-6194

29.     Nothing contained in this Proof of Claim shall be deemed or construed as: (a) a waiver of, or other limitation on, any rights or remedies of WTC, or any predecessor in interest to WTC, under the relevant agreements to any WTC/LBHI Transaction, at law, or in equity (including any setoff rights, lien rights, rights of recoupment, or any other rights that WTC, or any predecessor in interest to WTC, has or may have against the Debtor or any other entity), all of which rights are expressly reserved; (b) a consent by WTC, or any predecessor in interest to WTC, to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against, or otherwise involving WTC, or any predecessor in interest to WTC; (c) a waiver or release of, or any limitation on WTC's, or any predecessor in interest to WTC's, right to trial by jury in the Court or any other court in any proceeding; (d) a waiver or release of, or any other limitation on, WTC's, or any predecessor in interest to WTC's, rights to have any orders entered only after *de novo* review by the United States District Court; (e) a waiver of, or any other limitation on, WTC's, or any predecessor in interest to WTC's, right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim; or (f) a waiver or release of, or any other limitation on, WTC's, or any predecessor in interest to WTC's, right to assert that any portion of the claims asserted herein are entitled to treatment as priority claims, including under sections 503(b) and 507(a)(1) of the Bankruptcy Code.

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

_____          _____          _____
RECEIVED BY:                              DATE                                         TIME

# Exhibit D

1                    P R O C E E D I N G S

2            THE COURT:  How's everyone?

3            MR. COSENZA:  Good afternoon, Your Honor.

4            THE COURT:  I'm just looking at the list.  Got a

5    couple folks on the phone, listen-only mode.

6            MR. COSENZA:  Sure.  Good afternoon, Your Honor,

7    Todd Cosenza from Willkie, Farr & Gallagher, for Lehman

8    Brothers Holdings, Inc., the plan administrator.  Your

9    Honor, we made a motion a little over six weeks ago to

10   expunge a number of claims, and we thought the motion was

11   basically a motion to seek administrative relief to clean up

12   the claims registry, in light of prior orders that have been

13   answered by the Court.  So we ask for a simple order

14   directing the expungement of the proofs of claims that were

15   attached to Exhibit B to our motion, basically to clean up

16   the claims registry.

17           The claims on Exhibit B previously were expunged

18   by a fact of the protocol order, and the protocol extension

19   order.  The trustees have not submitted any loans due

20   protocol for those claims.  I don't think that's disputed in

21   the motions.  So after 16 months of operating under the

22   protocol, the trustees now argue that the protocol -- and

23   this, I'm trying to understand their argument -- that the

24   protocol only applies to cover loans, not to all the RMBS

25   trust, and the trustees basically seek to revise, in some

1    you know what I'd like to do, all right?

2            (Recess)

3            THE COURT:  Okay.  Thank you very much.  I

4    appreciate your answering all the questions I had coming

5    into this.  I think, as I indicated to Mr. Top, once the

6    clarification was made, with respect to which loans we're

7    talking about, the two buckets being covered loans and

8    transferor loans.  I think what I said to Mr. Top, with

9    respect to the operation of the reservation of rights to use

10   sampling or alternate means, is in fact my ruling.  As it

11   emerged, there's no dispute that the loans that were the

12   subject of the letter as to which the trustee's asserted

13   their reservation of rights to seek to prove them up by

14   alternate means, that's not how the protocol operates, but

15   by its terms.  That in effect, would operate as an opt-out

16   provision, and that's just not the way the protocol words.

17   So as to that, that argument is rejected.

18            As to the transferor loans, the argument as to

19   that centered around the use of the term covered loans in

20   various portions of the protocol, but given the history and

21   the genesis of the protocol, which began with the estimation

22   motion, was responded to with the cross-motion, which fully

23   embraced all of the loans, to use the terminology that was

24   used initially, the covered loans and the transferor loans.

25   Notwithstanding the fact that the number of loan fields,