# WILLKIE FARR & GALLAGHER LLP

TODD G. COSENZA
212 728 8677
tcosenza@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel:  212 728 8000
Fax:  212 728 8111

June 14, 2016

**VIA EMAIL AND FIRST CLASS MAIL**

The Honorable Shelley C. Chapman
United States Bankruptcy Judge for the Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:    In re Lehman Brothers Holdings Inc., et al, Case No. 08-13555 (SCC)

Dear Judge Chapman:

Per your request, enclosed is a proposed order (the "Proposed Order," attached as Exhibit A) which Lehman Brothers Holdings Inc. ("Lehman") believes confirms the rulings Your Honor made on the record of the June 9, 2016 hearing (the "Hearing") on Lehman's Motion to (A) Disallow and Expunge Certain RMBS Claims, and (B) Release Certain Related Claims Reserves (ECF 52640) (the "Motion to Disallow and Expunge"). Unfortunately, the parties have been unable to agree on an acceptable form of order. A redline showing changes between the Proposed Order and the form of order preferred by the RMBS Trustees is attached as Exhibit B. Lehman respectfully requests that Your Honor enter the Proposed Order for the following reasons:

First, as to paragraph 1 of the redline, the RMBS Trustees object to the Proposed Order's inclusion of the clause "for the reasons set forth on the record at the Hearing." As Your Honor is aware, findings and rulings were made on the record at the Hearing concerning the Protocol and Your Honor's prior orders in these cases. Lehman respectfully submits that paragraph 1 of the Proposed Order appropriately incorporates those findings and rulings by reference.

Second, as to paragraph 2 of the redline, there is a dispute between Lehman and Wilmington Trust Company ("Wilmington"), one of the RMBS Trustees. Wilmington seeks to exclude certain claims allegedly included in proof of claim 21135 ("POC 21135") from the Proposed Order. As background, Lehman's Motion to Disallow and Expunge included (on Exhibit B to that Motion) all proofs of claim for which Lehman sought disallowance and expungement. POC 21135 — which is purportedly an "omnibus" claim covering all of Lehman's RMBS-related liability to Wilmington — was specifically included on Exhibit B to that Motion. Despite having ample notice and a full opportunity to do so,

The Honorable Shelley C. Chapman
June 14, 2016
Page 2

Wilmington raised no specific objection to the disallowance and expungement of POC 21135 either in its filings with the Court or at last week's Hearing. Hence, any such objections were waived and, in accordance with Your Honor's ruling, POC 21135 should be disallowed and expunged. Indeed, the first time Wilmington raised any issue concerning POC 21135 was yesterday afternoon. In an attempt to avoid burdening the Court with this issue, we have asked Wilmington several times to explain which specific claims remain from POC 21135 in light of Lehman's Motion to Disallow and Expunge and the Court's rulings on Thursday. Wilmington has not provided Lehman with any explanation. (*See* Email exchange attached as Exhibit C.) Furthermore, no trust is prejudiced by the expungement of POC 21135. Wilmington filed separate proofs of claim for each Wilmington trust for the claims Wilmington is pursuing against Lehman.

Finally, as to paragraph 3 of the redline, the RMBS Trustees seek to include language in the Proposed Order that states that the RMBS Trustees have been denied the "right, if any, to seek to provide proof in support of the allowance of RMBS Claims through the use of statistical sampling" and "alternative methods." Lehman respectfully submits that Your Honor has **reserved** the parties' respective rights as to sampling and left open (as was set forth in the Protocol Order) the possibility of using an appropriate statistical sample to determine those RMBS Claims which the RMBS Trustees, in their discretion, timely submitted under the Protocol Order. (*See* Hearing Tr. at 21, attached as Exhibit D (Your Honor noting that "we were going to have this comprehensive process in order to winnow down the number of hits . . . and then at the end we would see where we were, and if at that point, once we had a smaller and more robust and more reliable sample, if it still made sense to do sampling in that context, we would revisit it. But it was never -- there was never an opt-out."). However, Your Honor also has ruled that such a reservation of rights did not exempt the RMBS Trustees from submitting any and all loans through the Protocol that the RMBS Trustees believe should be put back to Lehman. (*See id.* at 36 ("[T]here's no dispute that the loans that were the subject of the letter as to which the trustee's asserted their reservation of rights to seek to prove them up by alternate means, that's not how the protocol operates, by its terms. That in effect, would operate as an opt-out provision, and that's just not the way the protocol works. So as to that, that argument is rejected.")). Accordingly, the RMBS Trustees proposed language concerning the Court's "rejection" of sampling is both inaccurate and unnecessary.

For these reasons, Lehman respectfully requests that Your Honor enter the Proposed Order. We are available to discuss this matter at the Court's convenience.

Respectfully submitted,

*Todd G. Cosenza* (signature)

Todd G. Cosenza

Enclosures

cc:    Counsel to the RMBS Trustees

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
                                                         )
In re                                                    )    Case No. 08-13555 (SCC)
                                                         )
Lehman Brothers Holdings Inc., et al.,                   )    Chapter 11
                                                         )
            Debtors.                                     )    Jointly Administered
                                                         )
-------------------------------------------------------- x
```

### ORDER GRANTING DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES

Upon consideration of: (1) the motion (the "Motion")[1] of the above-captioned debtors (collectively, the "Debtors") for entry of an order granting Debtors' Motion to (a) Disallow and Expunge Certain RMBS Claims and (b) Release Certain Related Claims Reserves (ECF 52640); the Declaration of Zachary Trumpp; (2) the RMBS Trustees' Objection to the Motion (ECF 52951); and (3) the Debtors' Reply in support of the Motion (ECF 52960); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and a hearing on the Motion having been held on June 9, 2016 (the "Hearing"); and sufficient notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefore, it is hereby:

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is granted for the reasons set forth on the record of the Hearing.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The claims listed on Exhibit B annexed to the Motion are disallowed and expunged in their entirety.

3.      The Debtors are authorized to reduce and release the amounts in the RMBS Reserve that relates to claims against SASCO.  Consistent with the *Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code Estimating the Amounts of Claims filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* (the "Reserve Order") (ECF 25643), this shall consist of 5% of the Reserve ($250,000,000). This Order shall have no force or effect with respect to the remaining $4,750,000,000 in the RMBS Reserve.

4.      The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

5.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2016
       New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

# <u>EXHIBIT B</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ——————————————————x | |
|  ) | |
| In re  ) | Case No. 08-13555 (SCC) |
|  ) | |
| Lehman Brothers Holdings Inc., et al.,  ) | Chapter 11 |
|  ) | |
| Debtors.  ) | Jointly Administered |
|  ) | |
| ——————————————————x | |

### ORDER GRANTING DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN RMBS CLAIMS AND (B) RELEASE CERTAIN RELATED CLAIMS RESERVES

Upon consideration of: (1) the motion (the "Motion")[1] of the above-captioned debtors (collectively, the "Debtors") for entry of an order granting Debtors' Motion to (a) Disallow and Expunge Certain RMBS Claims and (b) Release Certain Related Claims Reserves (ECF 52640); the Declaration of Zachary Trumpp; (2) the RMBS Trustees' Objection to the Motion (ECF 52951); and (3) the Debtors' Reply in support of the Motion (ECF 52960); and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan; and it appearing that venue of these Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and a hearing on the Motion having been held on June 9, 2016 (the "Hearing"); and sufficient notice of the Motion having been given; and after due deliberation and sufficient cause appearing therefore, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1.      The Motion is granted ~~for the reasons set forth on the record of the Hearing~~.

2.      The claims listed on Exhibit B annexed to the Motion are disallowed and expunged in their entirety~~,~~**, except that Wilmington Trust Company, as Trustee's proof of claim number 21135, filed against Lehman Brothers Holdings Inc., shall not be expunged and shall be disallowed only to the extent such claim relates to claims subject to the Protocol that were not submitted pursuant to the Protocol; all other claims asserted pursuant to proof of claim number 21135 shall remain pending claims.**

**3.      Notwithstanding the Protocol Order's decretal paragraph that stated "ORDERED, that each of (i) the RMBS Trustee's right, if any, to seek to provide proof in support of the allowance of the RMBS Claims through the use of statistical sampling, and (ii) the Plan Administrator's right to object to the use of statistical sampling by the RMBS Trustees, is reserved," the RMBS Trustees are prohibited from further pursuing the claims listed on Exhibit B (except for the limited exceptions specifically stated above) through any means available, including, but not limited to, the use of statistical sampling or other alternative methods.**

**4.**      ~~3.~~ The Debtors are authorized to reduce and release the amounts in the RMBS Reserve that relates to claims against SASCO.  Consistent with the *Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code Estimating the Amounts of Claims filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* (the "Reserve Order") (ECF **No.** 25643), this shall consist of 5% of the Reserve ($250,000,000). This Order

shall have no force or effect with respect to the remaining $4,750,000,000 in the RMBS Reserve.

**5.** ~~4.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

**6.** ~~5.~~ All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

**7.** ~~6.~~ This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: June __, 2016
    New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

| Summary report: Litéra® Change-Pro TDC 7.5.0.179 Document comparison done on 6/14/2016 11:43:11 AM | |
|---|---|
| **Style name:** Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://NYCDMS/NewYork/17460132/3 | |
| **Modified DMS:** iw://NYCDMS/NewYork/17483626/1 | |
| **Changes:** | |
| **Add** | 9 |
| **Delete** | 6 |
| Move From | 0 |
| Move To | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 15 |

# **EXHIBIT C**

| | |
|---|---|
| **From:** | Cosenza, Todd |
| **Sent:** | Tuesday, June 14, 2016 2:06 PM |
| **To:** | 'Sigler, Sage' |
| **Cc:** | Scott Lewis; Sorensen, Matthew; Franklin Top; .JPM.Munno, MWilliam; Weitnauer, Kit; Pedone, Richard; Solomon, Jason; Guzman, Daniel; Shalhoub, Paul |
| **Subject:** | RE: Lehman RMBS Proposed Order |

Sage,

I am not trying to be difficult. Before burdening the Court with this issue, I just want to understand which specific claims you believe remain as to POC 21135. As you know, POC 21135 was included expressly in our motion.  The first time we learned that you had an objection to expunging and disallowing that POC was yesterday afternoon -- six weeks after we filed our motion and after the hearing.  We simply want you to explain which claims you believe remain.

Best,
Todd

---

**From:** Sigler, Sage [mailto:Sage.Sigler@alston.com]
**Sent:** Tuesday, June 14, 2016 9:40 AM
**To:** Cosenza, Todd <TCosenza@willkie.com>
**Cc:** Scott Lewis <slewis@chapman.com>; Sorensen, Matthew <MSorensen@willkie.com>; Franklin Top <top@chapman.com>; .JPM.Munno, MWilliam <munno@sewkis.com>; Weitnauer, Kit <Kit.Weitnauer@alston.com>; Pedone, Richard <rpedone@nixonpeabody.com>; Solomon, Jason <Jason.Solomon@alston.com>; Guzman, Daniel <guzman@sewkis.com>; Shalhoub, Paul <pshalhoub@willkie.com>
**Subject:** RE: Lehman RMBS Proposed Order

Any claims not subject to the Protocol.  You were very specific in your motion and your presentation at the hearing that your motion was administrative in nature and that the claims you sought to disallow and expunge had already been disallowed and expunged per the language of the Protocol.  Are you taking a different position now?

---

**From:** Cosenza, Todd [mailto:TCosenza@willkie.com]
**Sent:** Monday, June 13, 2016 11:38 PM
**To:** Sigler, Sage <Sage.Sigler@alston.com>
**Cc:** Scott Lewis <slewis@chapman.com>; Sorensen, Matthew <MSorensen@willkie.com>; Franklin Top <top@chapman.com>; .JPM.Munno, MWilliam <munno@sewkis.com>; Weitnauer, Kit <Kit.Weitnauer@alston.com>; Pedone, Richard <rpedone@nixonpeabody.com>; Solomon, Jason <Jason.Solomon@alston.com>; Guzman, Daniel <guzman@sewkis.com>; Shalhoub, Paul <pshalhoub@willkie.com>
**Subject:** Re: Lehman RMBS Proposed Order

Sage,

We requested that all claims included in POC 21135 be expunged. That POC was included expressly in our motion. The Court granted our motion. What specific claims do you believe remain from POC 21135 after the Court's ruling?

Thanks,
Todd

> On Jun 13, 2016, at 11:21 PM, Sigler, Sage <Sage.Sigler@alston.com> wrote:
>
> Maybe I don't understand your question. What claims did Lehman ask the court to expunge that were not subject to the Protocol (per Lehman's interpretation)?
>
> On Jun 13, 2016, at 8:38 PM, Cosenza, Todd <TCosenza@willkie.com<mailto:TCosenza@willkie.com>> wrote:
>
> Sage,
>
> I am not understanding your point. I just want to understand which specific claims against LBHI (included in POC 21135) that you maintain are not subject to the Protocol.
>
> Thanks,
> Todd
>
> On Jun 13, 2016, at 7:47 PM, Sigler, Sage <Sage.Sigler@alston.com<mailto:Sage.Sigler@alston.com>> wrote:
>
> Todd,
>
> The Protocol deals with R&W claims. POC 21135 encompasses R&W claims subject to the Protocol, as well as any other claims Wilmington Trust may have against LBHI. The expungement motion and the court's ruling were specific in disallowing and expunging specific claims subject to the Protocol. POC 21135 should therefore be preserved to the extent it asserts claims other than the R&W claims subject to the Protocol.
>
> Thanks,
>
> Sage
>
>
> From: Cosenza, Todd [mailto:TCosenza@willkie.com]
> Sent: Monday, June 13, 2016 6:22 PM
> To: Sigler, Sage <Sage.Sigler@alston.com<mailto:Sage.Sigler@alston.com>>; 'Scott Lewis' <slewis@chapman.com<mailto:slewis@chapman.com>>
> Cc: Sorensen, Matthew <MSorensen@willkie.com<mailto:MSorensen@willkie.com>>; Franklin Top <top@chapman.com<mailto:top@chapman.com>>; .JPM.Munno, MWilliam <munno@sewkis.com<mailto:munno@sewkis.com>>; Weitnauer, Kit <Kit.Weitnauer@alston.com<mailto:Kit.Weitnauer@alston.com>>; Pedone, Richard <rpedone@nixonpeabody.com<mailto:rpedone@nixonpeabody.com>>; Solomon, Jason <Jason.Solomon@alston.com<mailto:Jason.Solomon@alston.com>>; Guzman, Daniel <guzman@sewkis.com<mailto:guzman@sewkis.com>>; Shalhoub, Paul <pshalhoub@willkie.com<mailto:pshalhoub@willkie.com>>
> Subject: RE: Lehman RMBS Proposed Order
>
> Sage,
>
> I still do not understand the comment. Can you please explain specifically which claims Wilmington has against LBHI that are not subject to the Protocol?
>

> Todd
>
>
> From: Sigler, Sage [mailto:Sage.Sigler@alston.com]
> Sent: Monday, June 13, 2016 5:50 PM
> To: Cosenza, Todd <TCosenza@willkie.com<mailto:TCosenza@willkie.com>>; 'Scott Lewis'
<slewis@chapman.com<mailto:slewis@chapman.com>>
> Cc: Sorensen, Matthew <MSorensen@willkie.com<mailto:MSorensen@willkie.com>>; Franklin Top
<top@chapman.com<mailto:top@chapman.com>>; .JPM.Munno, MWilliam
<munno@sewkis.com<mailto:munno@sewkis.com>>; Weitnauer, Kit
<Kit.Weitnauer@alston.com<mailto:Kit.Weitnauer@alston.com>>; Pedone, Richard
<rpedone@nixonpeabody.com<mailto:rpedone@nixonpeabody.com>>; Solomon, Jason
<Jason.Solomon@alston.com<mailto:Jason.Solomon@alston.com>>; Guzman, Daniel
<guzman@sewkis.com<mailto:guzman@sewkis.com>>; Shalhoub, Paul
<pshalhoub@willkie.com<mailto:pshalhoub@willkie.com>>
> Subject: RE: Lehman RMBS Proposed Order
>
> Todd,
>
> Claim No. 21135 is a master claim that covers any and all claims Wilmington Trust has against LBHI. To the
extent that includes claims not subject to the protocol and therefore not subject to the court's ruling on
Thursday, Wilmington Trust wants to preserve those claims.
>
> Thanks,
>
> Sage
>
> Sage M. Sigler
> Alston & Bird LLP
> 1201 W. Peachtree Street
> Atlanta, GA 30309
> (404) 881-4531
> sage.sigler@alston.com<mailto:sage.sigler@alston.com>
>
> From: Cosenza, Todd [mailto:TCosenza@willkie.com]
> Sent: Monday, June 13, 2016 4:51 PM
> To: 'Scott Lewis' <slewis@chapman.com<mailto:slewis@chapman.com>>
> Cc: Sorensen, Matthew <MSorensen@willkie.com<mailto:MSorensen@willkie.com>>; Franklin Top
<top@chapman.com<mailto:top@chapman.com>>; .JPM.Munno, MWilliam
<munno@sewkis.com<mailto:munno@sewkis.com>>; Weitnauer, Kit
<Kit.Weitnauer@alston.com<mailto:Kit.Weitnauer@alston.com>>; Pedone, Richard
<rpedone@nixonpeabody.com<mailto:rpedone@nixonpeabody.com>>; Sigler, Sage
<Sage.Sigler@alston.com<mailto:Sage.Sigler@alston.com>>; Solomon, Jason
<Jason.Solomon@alston.com<mailto:Jason.Solomon@alston.com>>; Guzman, Daniel
<guzman@sewkis.com<mailto:guzman@sewkis.com>>; Shalhoub, Paul
<pshalhoub@willkie.com<mailto:pshalhoub@willkie.com>>
> Subject: RE: Lehman RMBS Proposed Order
>
> Scott,
>
> I do not understand your comment to carve out proof of claim number 21135. What do you believe remains

from that proof claim that is not covered by the other proof of claims filed by Wilmington? We will have other comments to your changes to what we had thought would be a straightforward order.

>

> Todd

>

> From: Scott Lewis [mailto:slewis@chapman.com]

> Sent: Monday, June 13, 2016 12:30 PM

> To: Cosenza, Todd <TCosenza@willkie.com<mailto:TCosenza@willkie.com>>

> Cc: Sorensen, Matthew <MSorensen@willkie.com<mailto:MSorensen@willkie.com>>; Franklin Top <top@chapman.com<mailto:top@chapman.com>>; Munno, M. William <munno@sewkis.com<mailto:munno@sewkis.com>>; Kit Weitnauer <Kit.Weitnauer@alston.com<mailto:Kit.Weitnauer@alston.com>>; Pedone, Richard <rpedone@nixonpeabody.com<mailto:rpedone@nixonpeabody.com>>; Sigler, Sage <Sage.Sigler@alston.com<mailto:Sage.Sigler@alston.com>>; Solomon, Jason <Jason.Solomon@alston.com<mailto:Jason.Solomon@alston.com>>; Guzman, Daniel <guzman@sewkis.com<mailto:guzman@sewkis.com>>; Shalhoub, Paul <pshalhoub@willkie.com<mailto:pshalhoub@willkie.com>>

> Subject: Lehman RMBS Proposed Order

>

> Todd,

>

> Attached, please find the RMBS Trustees' comments.

>

> Comments

>

>

> Please consider the Environment before printing this email.

>

> Chapman and Cutler LLP is an Illinois limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

>

> NOTICE OF CONFIDENTIALITY: The information contained in this email transmission is confidential information which may contain information that is legally privileged and exempt from disclosure under applicable law. The information is intended solely for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this email transmission is strictly prohibited. If you have received this email transmission in error, please notify us immediately by telephone to arrange for the return of the original transmission to us.

> _____

> This email has been scanned for email related threats and delivered safely by Mimecast.

> For more information please visit https://urldefense.proofpoint.com/v2/url?u=http-3A__www.mimecast.com&d=CwIF-g&c=PMBNytmjBbkRgFcdMTUT4Q&r=NyihkIXI15PaZEZy6W_ByPH4pN49hW4QmhPbAJSQV-0&m=InH8N-n2cVqryCPdjW392Cd09qTA8gGBG7grGFJ025M&s=3St_IxAcAgAlRf97iGOxhx320ayhbYUC-skSixUnsPQ&e= <https://urldefense.proofpoint.com/v2/url?u=http-3A__www.mimecast.com&d=CwMGaQ&c=PMBNytmjBbkRgFcdMTUT4Q&r=NyihkIXI15PaZEZy6W_ByPH4pN49hW4QmhPbAJSQV-0&m=SadbyTuhF-4B8LEid47sNJ7PTk1GrCU60F4wTK47YAU&s=jmY6cmR8aFdGEgO8sgFFSejiGRfQv-_NTwpBMOXTWoM&e=>

> _____

> 
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 
> IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 
> 
> 
> _____
> NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.
> 
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 
> IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 
> IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
> 

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IMPORTANT NOTICE: This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it

back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

*********************************************************************

## **<u>EXHIBIT D</u>**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No.  08-13555-scc

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS INC.,

8

9        Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                  U.S.  Bankruptcy Court

12                  One Bowling Green

13                  New York, NY 10004

14

15                  June 9, 2016

16                  2:01 PM

17

18

19

20

21

22

23  B E F O R E :

24  HON SHELLY C. CHAPMAN

25  U.S.  BANKRUPTCY JUDGE

Page 2

1    Hearing re:  Doc #52640 Debtors Motion to (A) Disallow and

2    Expunge Certain RMBS Claims, and (B) Release Certain Related

3    Claims Reserves/

4

5    Hearing re:  Discovery Conference (Claim of JPMorgan)/

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    SEWARD & KISSELL LLP

4        Attorney for

5        One Battery Park Plaza

6        New York, NY 10004

7

8    BY:  DANIEL GUZMAN

9

10    ROLLIN BRASWELL FISHER LLC

11        Attorney for

12        8350 E Crescent Parkway, Suite 100

13        Greenwood Village, CO 80111

14

15    BY:   MICHAEL ROLLIN

16

17    CHAPMAN & CUTLER LLP

18        Attorney for U.S. Bank National Association, as Trustee

19        111 west Monroe Street

20        Chicago, IL 60603

21

22    BY:  FRANKLIN H. TOP III

23

24

25

Page 4

```
 1   ALSTON & BIRD LLP

 2        Attorney for

 3        One Atlantic Center

 4        1201 West Peachtree Street

 5        Atlanta, GA 30309

 6

 7   BY:  SAGE M. SIGLER

 8

 9   WILLKIE FARR & GALLAGHER LLP

10        Attorney for

11        787 Seventh Avenue

12        New York, NY 10019

13

14   BY:  PAUL V. SHALHOUB

15        TODD COSENZA

16        THOMAS H. FRENCH

17

18   ALSO PRESENT TELEPHONICALLY:

19

20   PATRICK MOHAN

21   CELINE BUEHL

22   CINDY DELANO

23

24

25
```

1     loan file, and then to process the data that we get from

2     reviewing the loan file, and then submitting it to Lehman,

3     and then there's obviously going to be costs after that.

4     And there was --

5              THE COURT:  Okay, I need to clarify this, because

6     I'm not thinking about it in the right way.

7              MR. TOP:  Sure.

8              THE COURT:  So there's a term, covered loans.

9              MR. TOP:  Correct.

10             THE COURT:  It comes from the estimation motion.

11    That's where it was born.  It's not in the protocol anywhere

12    else.

13             MR. TOP:  It was included -- it's in the protocol.

14             THE COURT:  It's in the protocol.

15             MR. TOP:  We did include it in the estimation

16    motion.  It has its genesis even prior to the estimation

17    motion.  We previewed -- before filing the estimation

18    motion, we had discussions with Lehman about how the heck

19    are we going to try to resolve these claims?

20             THE COURT:  All right, so let's just take -- the

21    listed loans are all covered loans?

22             MR. TOP:  That's correct.

23             THE COURT:  Okay.  So the covered loans are

24    clearly subject to the protocol.

25             MR. TOP:  That is correct.

1           THE COURT:  Okay.  So with respect to those, your

2     argument is very simply that you had the right to make a

3     determination to not submit certain covered loans, and seek

4     to do sampling on them.

5           MR. TOP:  Right, I guess I would say it a little

6     bit differently.  I would say it that because of the losses

7     on those particular loans, the cost of reviewing them on a

8     loan-by-loan basis and submitting them through the protocol

9     was probably cost-prohibitive, in our view, and such that

10    while we weren't going to submit them through the protocol,

11    we wanted to reserve our right to somehow quantify the

12    damages with respect to those particular loans using an

13    alternative method, whether that be sampling or something

14    else.

15          THE COURT:  But you see, that's different than

16    what I thought until moments ago, which is I thought what

17    you were saying was that the loans that you were objecting

18    to the expungement of were all transferor loans, and not

19    covered loans.

20          MR. TOP:  That is true, too.  So we have two

21    buckets of loans we're objecting to.

22          THE COURT:  Okay, but to the extent that the loans

23    you are objecting to are covered loans, your argument, then,

24    on the definitions and the protocol, your argument is not

25    that it's not covered, that they're not subject to the

Page 21

1    protocol, you're just saying that the reservation of rights

2    means that you didn't have to submit them, because you

3    determined that it's not economic, and that after the

4    protocol otherwise runs, and we are at the stage of looking

5    at those claims for allowance or disallowance, you would get

6    to renew your motion to do sampling.

7            MR. TOP:  Or some other alternative means of

8    resolution, but that's right.

9            THE COURT:  But that's just not what the protocol

10   says or how it was intended to operate.  The bid and ask

11   leading to the protocol, one of the issues that we were

12   dealing with was that not all the loans were covered.  So

13   specifically, what everyone negotiated around when I

14   indicated that I was not going to go down the sampling road

15   at that juncture, was that we were going to have this

16   comprehensive process in order to winnow down the number of

17   hits, if you will, and then at the end we would see where we

18   were, and if at that point, once we had a smaller and more

19   robust and more reliable sample, if it still made sense to

20   do sampling in that context, we would revisit it.

21           But it was never -- there was never an opt-out.  I

22   mean, there was never an opt-out, or to take you up on the

23   common sense point that it doesn't make economic sense to

24   put them through the protocol, there wasn't a provision that

25   said, upon the certification of the trustees hat it's non-

Page 22

1    economic, et cetera, et cetera, they're going to do

2    something else.  It's just inconsistent with the structure,

3    and the clear words of the protocol -- I believe entirely,

4    and without question, with respect to everything that you

5    concede is a covered loan.  Because either under your

6    formulation of what claims are subject to the protocol,

7    these are claims that are subject to the protocol.

8            MR. TOP:  That's correct.  And Your Honor has

9    identified our argument with respect to that, right?  Our

10   argument is that with respect to that group of loans, we did

11   not put them through the protocol.  We admit that.  And our

12   argument is, because of the reservation of rights language,

13   we would like to have, and reserve the right to quantify

14   those using an alternative method of determination, be that

15   sampling or something else, at least reserve that right, and

16   that's our argument, and you put your finger on it, and

17   you're either going to agree with that argument or you're

18   not going to agree with that argument.

19           THE COURT:  Well, I think I don't agree with the

20   argument, but also belt and suspenders I don't agree with

21   the argument because of the extension order.  Because that

22   very clearly says there's going to be an extension on the

23   deadlines for which you're being extended, and everything

24   else gets expunged.  So I think if there were any ambiguity

25   whatsoever -- and right now I just talking about the covered

Page 23

1   loans, right -- that it just doesn't stand up.  And I

2   appreciate that the trustees are -- that there's a cost

3   element here.  And I heard you loud and clear on that point

4   when we went through the process of coming up with the

5   protocol.

6           So I think with respect to the covered loans, my

7   ruling is that the protocol did not provide for this kind of

8   an opt-out, and had the reservation of rights kick in, so

9   that without having going through the protocol, there would

10  be an opportunity to seek to have those claims allowed by

11  sampling or otherwise.  And that, in combination with the

12  language in the extension order, means that those claims are

13  properly expunged.  So now I think we need to pivot, which

14  has become a very significant word, I guess, so lately.  We

15  need to turn to anything else -- loans that are not, in your

16  terminology, covered loans, right?

17          MR. TOP:  Right.

18          THE COURT:  Okay.  And there the argument's a

19  little bit different, right?

20          MR. TOP:  Little bit different.  So taking a look

21  at the protocol order itself --

22          THE COURT:  Right.

23          MR. TOP:  It of course has, it references RMBS

24  claims, and there is a notation in there that says

25  capitalized terms not defined herein have the meaning set

Page 24

1    forth in the cross-motion.  The problem is, there was a

2    defined term, RMBS claims in the protocol itself.  And

3    that's down in Section 3 of the protocol.  I'll give you the

4    exact citation here.  It's Section 3(e)(i) on Page 4.  And

5    so before we even -- and so this definition comes in the

6    context of this RMBS claim protocol, and so just jumping

7    back to the beginning of this claim protocol, we talk about

8    gathering the claim files, and the protocol provides that we

9    are to provide letters of direction to two master servicers

10   on certain of the covered loans, and so we went out and

11   gathered the loan files, with respect to all these covered

12   loans.  And secondly, Lehman was supposed to provide us some

13   information from Aurora, there was like, 51,000 covered

14   loans that were --

15               THE COURT:  That's in Roman 2, right.

16               MR. TOP:  That's in Roman 2, and the hard drive

17   was to contain all of the images, electronic images Aurora

18   had in its system for the covered loans.  This is on Page 2.

19               THE COURT:  Mm-hmm.  Where does it say covered

20   loans in Roman 2?

21               MR. TOP:  It says It's Roman Numeral II,

22   Subsection B, two little Is, 1, and 3.

23               THE COURT:  Okay.

24               MR. TOP:  Okay, and so there's two reference to

25   covered loans there, and they were to provide us with

Page 34

1    they're of little or no value.  That makes sense, from our

2    perspective.

3            To have 16 months go along, agree to the

4    expungement motion, not to come with us for an extension on

5    any issues, make various representations to us throughout

6    the entire process, to us, to the Court that they're not

7    pursuing them, and now to come forward with this objection

8    to our motion, which is simply an administrative motion, is

9    a little bit astounding, frankly, from our perspective.

10   This is something, that really, if there was some confusion,

11   it could have been corrected really early in the protocol,

12   and frankly, the representations that they made to us and to

13   the Court during this process, they are now being directly

14   contradicted by the counsel, for the trustees.

15           So this is -- I really don't know what to make of

16   why we're here today.  That order was simply an

17   administrative order to simply clean up the claims registry,

18   because we're told by our client that the claims registry is

19   massive in this case, and simply way or sort of cleaning it

20   up.  And now that we're at this position, in response to

21   that motion I would have thought we would have been here, if

22   this really was an issue, back in January, when we talked

23   about this with Your Honor with various counsel present,

24   where there was a representation made that they weren't

25   pursuing the transfer loans.  I thought maybe they'd

Page 35

1    reconsider that in March when they sought the extension,

2    they would have raised this issue with us.  Instead, we gave

3    them the extension, because frankly, for the number of loans

4    that were left, there were obviously always administrative

5    issues.  Given the extra two months, makes total sense.  But

6    not to raise this as an issue, but then to raise it after

7    they get the extension is really -- we're sort of shocked by

8    why we're here today.

9              Your Honor, just one last point, because there

10   seems to be all sorts of definitional -- it was clear that

11   the protocol motion, our cross-motion, was the motion that

12   was granted by the Court.  The definitions in there were

13   intended -- and we had the hearing, it was intended to cover

14   everything, that was everyone's intention.  We included a

15   footnote in the protocol order, to make sure there was

16   little confusion about this, that it was intended to cover

17   all the loans.  It incorporates our definition.  We agree

18   with Your Honor's views as described therein, was really

19   just described the claims process, not to modify prior

20   definitions, and not to somehow limit the universe of loans.

21   So we think for all those reasons, Your Honor, we think our

22   motion should be granted, and all these claims should be

23   expunged.  Thank you.

24             THE COURT:  All right, if you would give me about

25   five minutes or so, and then I'm going to come back and let

Page 36

1    you know what I'd like to do, all right?

2         (Recess)

3         THE COURT:  Okay.  Thank you very much.  I

4    appreciate your answering all the questions I had coming

5    into this.  I think, as I indicated to Mr. Top, once the

6    clarification was made, with respect to which loans we're

7    talking about, the two buckets being covered loans and

8    transferor loans.  I think what I said to Mr. Top, with

9    respect to the operation of the reservation of rights to use

10   sampling or alternate means, is in fact my ruling.  As it

11   emerged, there's no dispute that the loans that were the

12   subject of the letter as to which the trustee's asserted

13   their reservation of rights to seek to prove them up by

14   alternate means, that's not how the protocol operates, but

15   by its terms.  That in effect, would operate as an opt-out

16   provision, and that's just not the way the protocol words.

17   So as to that, that argument is rejected.

18         As to the transferor loans, the argument as to

19   that centered around the use of the term covered loans in

20   various portions of the protocol, but given the history and

21   the genesis of the protocol, which began with the estimation

22   motion, was responded to with the cross-motion, which fully

23   embraced all of the loans, to use the terminology that was

24   used initially, the covered loans and the transferor loans.

25   Notwithstanding the fact that the number of loan fields,

Page 37

1    when you add them up under the protocols, the protocols

2    contemplated the progression towards the finish line, it

3    adds up to roughly the number of covered loans.  My ruling

4    is that the protocol, in fact, covered everything, and that

5    to the extent that -- and the numbers are not inconsistent

6    with that, because as the way this has developed, it has

7    certainly been -- has certainly seemed clear that the

8    transferor loans were not viewed as having much, if any,

9    value, and therefore it's appropriate that the march toward

10   the finish line, and submitting all these loan files,

11   properly focused on loans that were not transferor loans.

12            Moreover, the facts and circumstances, and the

13   language of the extension order, created another occasion

14   and reinforce my view that these claims should be expunged.

15   The inclusion of the words, or otherwise, in addition, the

16   language that Mr. Cosenza pointed out with respect to that

17   subset of loans just add up to a picture in which it's clear

18   to me that this process was intended to, and did, and

19   everybody was operating under the impression that it related

20   to all the loans.  So for all those reasons, and including,

21   with respect to the reduction of the reserves, I'm going to

22   enter an order granting Lehman's motion.

23            All right?  All right, will you share an order

24   with each other and send it to us, once you have everyone's

25   sign-off?  Thank you very much, and let me also say that I

Page 38

1  know that there was a lot of back and forth on the

2  scheduling of this, and I very much appreciate your

3  flexibility.  I'm about to start three weeks of trial,

4  travel, trial, travel, and I just, I wanted to see you

5  sooner rather than later.  So I appreciate that some of your

6  colleagues aren't here today, and I appreciate that you were

7  still willing to come in.  All right?  Okay, thank you.

8  Thank you.

9           (Whereupon these proceedings were concluded at

10  3:04 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 39

1                    C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6

7

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  June 13, 2016