HEARING DATE AND TIME: August 16, 2016 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: July 22, 2016 at 4:00 p.m. (Eastern Time)

> **THE FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION TO CLAIMS SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LISTED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : **08-13555 (SCC)** |
| | : |
| Debtors. | : (Jointly Administered) |

-----------------------------------------------------------------x

**NOTICE OF HEARING ON**
**THE PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH**
**OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)**

PLEASE TAKE NOTICE that, on June 22, 2016, Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for the entities in the above-referenced chapter 11 cases, filed the five hundred nineteenth omnibus objection to claims (the "Five Hundred Nineteenth Omnibus Objection to Claims"), and that a hearing (the "Hearing") to consider the Five Hundred Nineteenth Omnibus Objection to Claims will be held before the

Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **August 16, 2016 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

      **PLEASE TAKE FURTHER NOTICE** that any responses to the Five Hundred Nineteenth Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182 (which can be found at www.nysb.uscourts.gov), and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard L. Levine, Esq. and Garrett A. Fail, Esq.) and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **July 22, 2016 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Five Hundred Nineteenth Omnibus Objection to Claims or any claim set forth thereon, the Plan Administrator may, on or after the Response Deadline, submit to the

2

Bankruptcy Court an order substantially in the form of the proposed order annexed to the Five

Hundred Nineteenth Omnibus Objection to Claims, which order may be entered with no further

notice or opportunity to be heard offered to any party.

Dated: June 22, 2016
        New York, New York

                                    /s/ Richard L. Levine
                                    Richard L. Levine
                                    Garrett A. Fail

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Lehman Brothers Holdings Inc.
                                    and Certain of Its Affiliates

HEARING DATE AND TIME: August 16, 2016 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: July 22, 2016 at 4:00 p.m. (Eastern Time)

> **THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION TO CLAIMS SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LISTED IN THE OBJECTION AND/OR THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS THEIR CLAIM(S).**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard L. Levine
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                          :    Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :    08-13555 (SCC)
                                               :
                      Debtors.                 :    (Jointly Administered)
-------------------------------------------------------------------x
```

**THE PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH**
**<u>OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)</u>**

# TABLE OF CONTENTS

**Page(s)**

Relief Requested ....................................................................................................1

Jurisdiction ............................................................................................................1

Background ............................................................................................................2

     A.    These Chapter 11 Cases ...............................................................2

     B.    LBIE's Administration and LBI's SIPA Proceeding ..................3

     C.    The Maverick Claims ...................................................................3

     D.    The Plan Administrator's Estimation Motion .............................4

     E.    The Estimation Objection ...........................................................5

Standard of Review ...............................................................................................6

Objection ...............................................................................................................8

     I.    The Maverick Claims Should Be Disallowed And Expunged ...............8

     A.    Any Guarantee Claim Has Been Satisfied In Full......................8

     B.    As A Result Of Netting, Maverick Cannot Establish An Underlying Claim Against LBIE, And LBHI Therefore Has No Liability As A Guarantor ..................................................................10

     C.    It Is Law Of The Case That Maverick Exculpated LBIE And  LBHI From Losses Arising From The Diminution In Value Of Its Securities ...13

     II.    Nothing Raised In the Estimation Objection Gives Rise To A Valid Claim ........16

     A.    The Alleged Direct Claims Fail As a Matter Of Law ...............17

     B.    The UCC Claims Fail As A Matter Of Law ............................18

Reservation of Rights ..........................................................................................19

Notice ..................................................................................................................19

WEIL:\95756753\7\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
No. 02-41729, 2007 WL 601452 (Bankr. S.D.N.Y. Feb. 20, 2007) ........................................7

*In re Allegheny Int'l Inc.*,
954 F.2d 167 (3d Cir. 1992) .................................................................................................7

*Aramony v. United Way of Am.*,
254 F.3d 403 (2d Cir. 2001) ...............................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................7

*CN Funding LLC v. Ensig Grp. Ltd.*,
18 Misc. 3d 214 (N.Y. Sup. Ct. 2007).................................................................................11

*Credit Agricole Corp. and Inv. Bank N.Y. Branch v. Am. Home Mortgage Holdings, Inc.* (*In re Am. Home Mortgage Holdings, Inc.*),
637 F.3d 246 (3d Cir. 2011) ...............................................................................................10

*Granite Computer Leasing Corp. v. Travelers Indem. Co.*,
894 F.2d 547 (2d Cir. 1990) ...............................................................................................11

*In re Lehman Bros. Holdings Inc.*,
515 B.R. 171 (Bankr. S.D.N.Y. 2014) ..................................................................................7

*In re Lehman Bros. Holdings, Inc.*,
(Feb. 11, 2015) ...................................................................................................... 13, 14, 15

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Bros. Holdings Inc.*),
469 B.R. 415 (Bankr. S.D.N.Y. 2012) ..................................................................................9

*Mathias v. Jacobs*,
238 F. Supp. 2d 556 (S.D.N.Y. 2002) .................................................................................13

*In re MF Global Inc.*,
Case No. 11-2790 (MG), 2014 WL 4361552 (Bankr. S.D.N.Y. Sept. 4, 2014).............. 15, 16

*Michaels v. Chem. Bank*,
110 Misc. 2d 74, 441 N.Y.S.2d 638 (Sup. Ct. 1981) ...........................................................18

*In re Montagne*,
   2010 WL 271347 (Bankr. D. Vt. Jan. 22, 2010) .................................................................15

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*,
   2016 WL 1092673 (S.D.N.Y. Mar. 21, 2016) ....................................................................11

*National Enters v. New York Tax Comm'n*,
   2000 U.S. App. LEXIS 4641 (2d Cir. 2000) ......................................................................15

*O&Y (U.S.) Fin. Co. v. Chase Family Ltd. P'ship No. 3*,
   1994 WL 250310 (S.D.N.Y. May 31, 1994) ......................................................................13

*In re Oneida Ltd.*,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009) .................................................................................7

*In re Residential Capital, LLC*,
   2014 WL 3397779 (Bankr. S.D.N.Y. July 11, 2014)...........................................................8

*In re Rockefeller Ctr. Props.*,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000) .................................................................................7

*S.E.C. v. Credit Bancorp, Ltd.*,
   290 F.3d 80 (2d Cir. 2002) ................................................................................................18

*Securities Investor Protection Corporation v. Lehman Brothers Inc.*,
   (Case No. 08-01420) .......................................................................................................4, 5

*SIPC v. Bernard L. Madoff Inv. Secs. LLC*,
   476 B.R. 715 (S.D.N.Y. 2012)............................................................................................9

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir.2008) ................................................................................................8

*Weissman v. Sinorm Deli, Inc.*,
   88 N.Y.2d 437 (1996)........................................................................................................18

*Wright v. Holm (In re Holm)*,
   931 F.2d 620 (9th Cir. 1991) ..............................................................................................7

## Statutes

11 U.S.C. §§ 101(38)(a), 741(7) .................................................................................................9

11 U.S.C. § 502(b)(1)............................................................................................................ 1, 2, 7, 8

11 U.S.C. § 562(a) ........................................................................................................... 8, 9, 10, 13

28 U.S.C. §§ 157 and 1334......................................................................................................2

N.Y. U.C.C. §§ 8-503, 8-506, 8-508, 8-509 ................................................................................. 18

**Other Authorities**

Bankruptcy Rule 1015(b) ............................................................................................................ 2

Bankruptcy Rule 2004 ................................................................................................................ 5

Bankruptcy Rule 3001(f) ............................................................................................................ 7

Bankruptcy Rule 3007(d) ...................................................................................................... 2, 1

Bankruptcy Rule 7012 ................................................................................................................ 7

Federal Rule of Civil Procedure 12(b)(6) .................................................................................. 7

WEIL:\95756753\7\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the
Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its
Affiliated Debtors (the "Plan") for the entities in the above-referenced chapter 11 cases,
respectfully represents as follows:

## RELIEF REQUESTED

1.      Proofs of claim were filed by six funds managed by Maverick Capital,
Ltd. (collectively, "Maverick") as listed on Exhibit A attached hereto (each, a "Maverick Claim"
and collectively, the "Maverick Claims") asserting guarantee liability against LBHI based on
underlying obligations allegedly owed by Lehman Brothers International (Europe) ("LBIE").[1]
For each or any of the independent reasons set forth below, the Maverick Claims fail as a matter
of law and should be dismissed at a "sufficiency hearing".  Accordingly, the Plan Administrator
seeks an order, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy
Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), disallowing and expunging the Maverick Claims in their entirety.

## JURISDICTION

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.
§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] A sample Maverick Claim is attached hereto as Exhibit B.

## BACKGROUND

### A.    These Chapter 11 Cases

3.    Commencing on September 15, 2008 (the "Commencement Date") and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Chapter 11 Estates") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.    On July 2, 2009, this Court entered an order (the "Bar Date Order") [ECF No. 4271] setting forth the procedures and establishing September 22, 2009 (the "Bar Date") as the deadline for filing proofs of claim in the Chapter 11 Cases.  The Bar Date Order ordered that "any holder of a claim against the [Chapter 11 Estates] who is required, but fails to file a proof of such claim in accordance with the Bar Date Order . . . shall forever be barred, estopped, and enjoined from asserting such claim against the [Chapter 11 Estates] . . . ."  (Bar Date Order at 6, 9-10.)  Also pursuant to the Bar Date Order, a party asserting a guarantee claim "must . . . (c) on or before the Questionnaire Deadline (October 22, 2009 at 5:00 pm (prevailing Eastern Time)). . . complete the electronic Guarantee Questionnaire . . . ."  (Bar Date Ord. at 7.)

5.    Separately, on December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023] (the "Confirmation Order"), and the Plan became effective on March 6, 2012.  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against LBHI.  Under the Plan, guarantee claims against LBHI are classified separately from direct claims against LBHI and each class receives distinct treatment.  (Plan Art. IV.)

6.    Pursuant to the Confirmation Order, claimants cannot amend their claims without Court approval.  (Confirmation Order ¶ 86.)

2

### B.    LBIE's Administration and LBI's SIPA Proceeding

7.    LBIE is a subsidiary of LBHI that is not a debtor in the Chapter 11 Cases. Rather, on September 15, 2008, LBIE entered English administration proceedings pursuant to the United Kingdom Insolvency Act 1986 (the "LBIE Administration").  LBIE's estate is currently being wound-up by certain joint administrators who are not controlled by the Plan Administrator.

8.    On September 19, 2008, the United States District Court for the Southern District of New York entered an order (i) determining that customers of Lehman Brothers Inc. ("LBI"), another subsidiary of LBHI that is not a debtor in the Chapter 11 Cases, were in need of protection under the Securities Investor Protection Act of 1970, as amended ("SIPA"), and (ii) appointing a trustee to oversee LBI's liquidation.  LBI remains the subject of a liquidation proceeding administered by this Court under SIPA denominated *Securities Investor Protection Corporation v. Lehman Brothers Inc.* (Case No. 08-01420) (SCC) (SIPA).

### C.    The Maverick Claims

9.    The Maverick Claims assert guarantee liability against LBHI.[2]  Such claims are based on alleged primary obligations of LBIE purportedly arising under certain "Prime Brokerage Documents": a Customer Account Agreement Prime Brokerage (the "PB Agreement"); a Global Master Securities Lending Agreement (the "GMSLA"); and a Margin

---

[2] Maverick checked the relevant box on the front of each Maverick Claim to indicate that each was based on a guarantee, and the Exhibit to each Maverick Claim described each claim as a Guarantee Claim.  (*See generally* Maverick Claims.)  In addition, Maverick submitted a Guarantee Questionnaire for each Maverick Claim.

Each Maverick Claim relies on: one of two specific transactional guarantees of LBIE, each dated April 4, 2002; a resolution from the Board of Directors of LBHI, dated June 9, 2005 (the "Corporate Resolution"); and/or a purported guarantee of the obligations of LBIE addressed to "Standard & Poor's Rating Services," dated January 4, 2008 and attached hereto as Exhibit C (the "S&P Letter").  (*See generally* Maverick Claims.)  In the Estimation Objection (defined below), Maverick asserted it was the beneficiary of an additional, specific transactional guarantee, dated April 20 2006 (the "Prime Brokerage Guarantee").  (Estimation Obj. ¶ 5.)

WEIL:\95756753\7\58399.0011

Lending Agreement (the "MLA"). (*See, e.g.*, Ex. B (Claim 27701) ¶ 3.) Collectively, the Maverick Claims allege that, in the aggregate, as of the Commencement Date, "the Lehman Entities had custody of Maverick's assets or property pursuant to the Prime Brokerage Documents" totaling more than $187.3 million. (*See* Maverick Claims ¶ 3.)

10.    Each of the Maverick Claims further allege, with substantially identical language, that Maverick's assets were collateral for Maverick's obligations to LBIE or to LBIE's affiliates:

> Under the terms of [certain] Prime Brokerage Documents, LBIE has a lien and first priority security interest in certain assets held or controlled by LBIE. Such assets are held as collateral by LBIE as agent and bailee for itself and all other affiliates of LBIE in connection with Maverick's obligations under the Prime Brokerage Documents.

(*E.g.,* Ex. B. (Claim 27701) at ¶ 3.) Accordingly, the Maverick Claims seek $187.3 million "less any amounts owed by Maverick in connection with the Prime Brokerage Agreements." (*See id.* ¶ 4.) Each Maverick Claim reiterated that "[f]or the avoidance of doubt, [the amount set forth in the claim] is a gross claim and does not take into account any amounts or obligations that Maverick may owe to the Lehman Entities under the terms of the Prime Brokerage Documentation." (*See id.* at n.3.)

11.    The Maverick Claims thus concede (apparently contrary to Maverick's current position) that, as a result of contractual netting, its gross claims against LBHI must be reduced by any amounts it owed to LBIE.

**D.    The Plan Administrator's Estimation Motion**

12.    On June 10, 2015, the Plan Administrator filed a motion [ECF No. 49954] (the "Estimation Motion") to estimate, at zero dollars, claims filed against LBHI that assert guarantee liability against LBHI based on an alleged primary obligation of LBIE. The basis for the Estimation Motion was that such claims had been, or were expected to be, satisfied in full as

4

a result of distributions from LBIE alone.  As a result of the Estimation Motion, over 900 claims asserting an aggregate amount of more than $3 billion were estimated at zero dollars for reserve and distribution purposes.  The Maverick Claims were subject to the Estimation Motion.

E.      **The Estimation Objection**

13.     On August 21, 2015, Maverick filed an objection to the Estimation Motion [ECF No. 50761] (the "Estimation Objection").  In the Estimation Objection, Maverick admitted that the value of Maverick's assets and property custodied at LBIE as of the Commencement Date was only approximately $118.1 million, not the $187.3 million alleged in the Maverick Claims.  (Estimation Obj. ¶ 1.)  Maverick then asserted it has an aggregate guaranty claim amount of $118.1 million against LBHI because, in a change of position, this Court cannot take into account amounts or obligations that Maverick owed to LBIE.  (*Id.* ¶¶ 16-20.)  Maverick nevertheless concedes that, on the Commencement Date, the value of its obligations to LBIE were at least approximately $114 million.  (*Id.* ¶ 13, n. 5.)  As a result, on that date, Maverick was a net creditor of LBIE for no more than approximately $4 million.  (*Id.*)

14.     Moreover, Maverick disclosed in the Estimation Objection that, on or about March 30, 2012 (the "Settlement Date"), Maverick and LBIE executed a settlement agreement (the "Settlement Agreement") pursuant to which Maverick's long positions and short positions under the Prime Brokerage Documents were – consistent with the Prime Brokerage Documents and standard practice – setoff and closed-out as of that date.  (*Id.* ¶¶ 13-14.)  The consequence was that *Maverick was a net debtor to LBIE on the Settlement Date.*  (*Id.*)  Specifically, LBIE setoff the value of Maverick's long positions ($101.9 million on the Settlement Date) against what Maverick owed to LBIE and Maverick still was required to pay $30 million in cash to LBIE to cover Maverick's obligations to LBIE as of the Settlement Date.  (*Id.* ¶ 23.)

WEIL:\95756753\7\58399.0011

15.     Maverick separately alleges that the value of its long positions diminished by $16.2 million between the Commencement Date and the Settlement Date and now seeks to recover such market loss from LBHI, notwithstanding the terms of its settlement with LBIE.  (*Id.* ¶ 14, n. 5.)[3]

16.     In addition, contrary to the Maverick Claims, the Estimation Objection suggests that LBHI may be liable to Maverick directly under the PB Agreements because LBI signed the PB Agreements on behalf of itself and its affiliates, including LBHI (the "Alleged Direct Claims").  (*Id.* ¶ 17-18.)  Maverick also suggests that LBHI may be liable for a breach of the New York Uniform Commercial Code (the "UCC Claims" and, together with the Alleged Direct Claims, the "Additional Claims").  (*Id.* ¶ 16.)

17.     The Plan Administrator withdrew, without prejudice, the Estimation Motion as to the Maverick Claims after Maverick filed the Estimation Objection, and, thereafter, the Plan Administrator sought discovery of Maverick pursuant to Bankruptcy Rule 2004.

## STANDARD OF REVIEW

18.     A claim should not be allowed to the extent that it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).

19.     To be entitled to *prima facie* validity under Bankruptcy Rule 3001(f), a proof of claim must allege "facts sufficient to support a legal liability to the claimant."  *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).  An objection refuting – on either a factual or a legal basis – one of a

---

[3] Although Maverick seeks allowed claims in the aggregate amount of $118.1 million, it concedes that the maximum it may recover from LBHI is $16.2 million ($118.1 million minus $101.9 million), assuming, *arguendo*, its claims are allowed in full.  (Maverick Obj. ¶ 14.)

claim's essential allegations shifts to the claimant the burden of proof. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

20.    As set forth in an Order of the Court, dated April 19, 2010 [ECF No. 8474], all hearings to address the legal sufficiency of a particular contested claim and whether the contested claim states a claim against the asserted debtor under Bankruptcy Rule 7012 are considered "sufficiency hearings."   The standard of review at a "sufficiency hearing" is equivalent to the standard applied on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  ECF No. 8474; *see In re Lehman Bros. Holdings Inc.*, 515 B.R. 171, 174 (Bankr. S.D.N.Y. 2014) ("Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted.").

21.    In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must assume that well-pleaded factual allegations in the complaint are true, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but a court need not accept legal conclusions, naked assertions, conclusory statements unsupported by facts, or implausible inferences. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 555).  Thus, a creditor "must allege 'enough facts to state a claim for relief that is plausible on its face.'" *In re Residential Capital, LLC*, 2014 WL 3397779, at *3 (Bankr. S.D.N.Y. July 11, 2014) (citing *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir.2010)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

WEIL:\95756753\7\58399.0011

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Thus, "[t]he pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.2008) (citation omitted).

## OBJECTION

### I.    The Maverick Claims Should Be Disallowed And Expunged

####     A.    Any Guarantee Claim Has Been Satisfied In Full

22.    Even if Maverick could assert valid guarantee claims against LBHI, which it cannot do for the reasons set forth in Sections I.B. and I.C. below, such claims have been satisfied in full.

23.    Although claims are typically valued under the Bankruptcy Code as of "the date of the filing of the petition" pursuant to section 502(b), the Bankruptcy Code provides an alternative date for valuing certain claims that arise from the rejection, liquidation, termination, or acceleration of certain specified contracts, including "master netting agreements" and "securities contracts."    11 U.S.C. § 562(a).    Specifically, section 562(a) provides, in pertinent part, as follows:

> [I]f a financial institution . . . financial participant, [or] master netting agreement participant . . . liquidates, terminates, or accelerates [a master netting agreement or securities contract], damages shall be measured as of the earlier of –
>
> > (2) the date or dates of such liquidation, termination, or acceleration.

*Id*.

24.    There can be no question that the Prime Brokerage Documents Maverick relies upon are both "securities contracts" and "master netting agreements" for purposes of section 562. *See* 11 U.S.C. §§ 101(38)(a), 741(7); *see also SIPC v. Bernard L. Madoff Inv. Secs.*

*LLC*, 476 B.R. 715, 720 (S.D.N.Y. 2012) (customer account agreement pursuant to which the debtor purportedly made securities investments on behalf of clients constituted a "securities contract" under section 741). Indeed, in the PB Agreement, Maverick expressly "acknowledge[d] and agree[d] that any position in [its] account(s) shall be deemed "securities contracts" within the meaning of [the Bankruptcy Code]." (Estimation Obj. at Ex. B (PB Agreement) ¶ 18.) Further, the PB Agreement allows "Lehman Brothers" to net and set-off any amounts owed between Lehman Brothers and Maverick and expressly provide that "[Maverick] and Lehman Brothers intend this Agreement to be a master netting agreement." (*Id.*). As this Court previously has held in these cases, a guarantee of a "securities contract" can likewise constitute a securities contract under section 741(7)(A)(xi) of the Bankruptcy Code. *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415, 438 (Bankr. S.D.N.Y. 2012).

25.    Under section 562(a) of the Bankruptcy Code, given the nature of the underlying contracts, the proper date to value the Maverick Claims is March 30, 2012 – *i.e.*, the Settlement Date. On that date, each of the Prime Brokerage Documents, including the PB Agreement, was terminated. (Estimation Obj. at Ex. E, § 2.1(vii), Schedule 2.) Thus, the Settlement Date constitutes the date of "termination" for each of the PB Agreement, the GMSLA, and the MLA under section 562(a) of the Bankruptcy Code. Indeed, there is no allegation by Maverick that a liquidation, termination, or acceleration occurred prior to the Settlement Date, and Maverick failed to produce in discovery – notwithstanding specific requests therefor – any documents to support the existence of a prior liquidation, termination, or acceleration.

WEIL:\95756753\7\58399.0011

26.     If one applies a valuation date of March 30, 2012, as required by section

562(a), the Maverick Claims, as alleged, have been satisfied in full.  *See Credit Agricole Corp.*

*and Inv. Bank N.Y. Branch v. Am. Home Mortgage Holdings, Inc.* (*In re Am. Home Mortgage*

*Holdings, Inc.*), 637 F.3d 246, 258 (3d Cir. 2011) (affirming disallowance of claim where

claimant had not proven damages as of the date specified in section 562(a) of the Bankruptcy

Code).  Specifically, Maverick alleges that the value of its long positions on the Settlement Date

was approximately $101.9 million.  (Estimation Obj. ¶¶ 14, 23.)  Maverick then admits that it has

fully recovered this value:

> Maverick concedes that it already has effectively received
> approximately $101.9 million of value from LBIE in connection
> with the LBIE Settlement Agreement (reflecting an offset of the
> approximate value of the securities and cash that LBIE may have
> been obligated to return to Maverick under English law).

(*Id.* ¶ 23.)

27.     To avoid this application of simple arithmetic, Maverick ignores section

562(a), but, as established above, Maverick's reliance on the Commencement Date as the

valuation date for the Maverick Claims is incorrect as a matter of law.  The Maverick Claims

must therefore be dismissed.[4]

**B.     As A Result Of Netting, Maverick Cannot Establish An Underlying Claim
Against LBIE, And LBHI Therefore Has No Liability As A Guarantor**

28.     Maverick cannot state a guarantee claim against LBHI because it cannot

establish an unsatisfied claim against LBIE.  "A *prima facie* case for breach of a written

guarantee in New York requires a plaintiff to establish (1) an absolute and unconditional

---

[4] Even assuming, *arguendo*, that the Maverick Claims should be valued as of the Commencement Date,
as shown above, Maverick concedes that, as of such date, it was owed an aggregate of only $4.3 million
on a net basis and that one of the Maverick funds – Maverick Fund II, Ltd.—was a net debtor of LBIE.
(Estimation Obj. n. 5.)  As set forth below, netting is required and Maverick's theory that LBHI as
guarantor owed more than LBIE, the primary obligor, is contrary to settled law.

10

guarantee, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt." *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 2016 WL 1092673, at \*10 (S.D.N.Y. Mar. 21, 2016) (citation omitted).  It is axiomatic that a party cannot be liable as a guarantor absent the existence of an unsatisfied underlying obligation by the primary obligor.  *See Granite Computer Leasing Corp. v. Travelers Indem. Co.*, 894 F.2d 547, 551 (2d Cir. 1990) ("Under basic suretyship law, a surety's obligations cannot be more burdensome than those of its principal, and where the principal is not liable on the obligation, neither is the guarantor") (internal quotation marks omitted); *CN Funding LLC v. Ensig Grp. Ltd.*, 18 Misc. 3d 214, 220 (N.Y. Sup. Ct. 2007) ("As plaintiff is unable as a matter of law to prove the underlying debt, its enforcement of the guarantee claim must also be dismissed").

29.     Here, Maverick asserts a guarantee claim against LBHI for $118.1 million based on the alleged aggregate value of Maverick's cash and long securities positions as of the Commencement Date.  (Estimation Obj. ¶ 1.)  That $118.1 million figure, however, fails to account for the offset of obligations Maverick owed to LBIE, including short positions; when net, Maverick was a net debtor of LBIE.  *See supra* ¶ 15.

30.     Amazingly, Maverick seeks this un-netted $118.1 million from LBHI, according to the Estimation Objection, even though it conceded in the Maverick Claims that the value of its claims are actually the value of its long positions "less any amounts owed by Maverick in connection with the Prime Brokerage Agreements."  (*See, e.g.*, Ex. B (Claim 27701) ¶ 4.)  Maverick has further conceded that, as part of a postpetition setoff and closeout executed by LBIE and Maverick in connection with their settlement, Maverick owed and paid LBIE the net amount of $30 million.  (Estimation Obj. ¶ 13.)

11

31.    Maverick, of course, has the burden of establishing a *prima facie* guarantee claim, which requires proving an underlying debt owed by LBIE to Maverick that remains unsatisfied.  The setoff and contractual netting between Maverick and LBIE is, by definition, a determination of the underlying debt.

32.    Moreover, while irrelevant given the nature of a guaranty, as discussed above, LBHI was contractually entitled to the benefit of netting.  For example, to the extent that the Maverick Claims rely on the S&P Letter (Estimation Obj. ¶ 5), the S&P Letter expressly entitles LBHI to "setoff, counterclaim, or withhold payment" to LBIE's counterparties "to the extent such right is provided to [LBIE] under the Borrower Agreement."  (Ex. C (S&P Letter) at 1.)  The PB Agreement similarly gives LBIE the right to offset,

> [E]ach Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor.  . . .  You and Lehman Brothers intend this Agreement to be a master netting agreement.

(Estimation Obj. at Ex. B (PB Agreement) ¶ 4) (emphasis supplied).

33.    That LBHI was not a party to the GMSLA and MLA is irrelevant to the setoff analysis, contrary to Maverick's assertion to the contrary.  (*See* Estimation Obj. ¶ 30.) LBHI did not need to be a party to each of the GMSLA and MLA to benefit from any netting thereunder:  LBIE was a party to those agreements and was entitled to net obligations owing between the parties to determine its liability.  Because LBIE ultimately had no liability to Maverick under the agreements, LBHI can have no guarantor liability as discussed above.

34.    Finally, any assertion by Maverick that it has not received full satisfaction from LBIE as primary obligor is facially implausible under *Iqbal* given that Maverick admits that

12

it made the $30 million cash payment to LBIE to settle their net obligations.  *See, e.g., Mathias v. Jacobs*, 238 F. Supp. 2d 556, 569 (S.D.N.Y. 2002) ("Any ordinary person of reasonable prudence and intelligence would find such a notion implausible if not irrational. Simply stated, the theory makes no economic sense . . . . Given its apparent absence of a rational grounding, [plaintiff's] hypothesis calls for more compelling proof, and Mathias failed to muster it"); *O&Y (U.S.) Fin. Co. v. Chase Family Ltd. P'ship No. 3*, 1994 WL 250310, at *6 (S.D.N.Y. May 31, 1994) ("the Court finds it inherently unlikely that O & Y would have waived its rights to recover millions of dollars from the individual defendants without any memorialization in writing").

### C.    It Is Law Of The Case That Maverick Exculpated LBIE And LBHI From Losses Arising From The Diminution In Value Of Its Securities

35.    Maverick argues that, notwithstanding its status as a net debtor of LBIE and the application of section 562(a), it is entitled to collect approximately $16.2 million from LBHI for the diminution in market value of its long positions between the Commencement Date and the Settlement Date (the "Diminution Damages").  This argument is not only contrary to the terms of Section 562(a) as discussed above, it is contrary to the terms of the PB Agreement.

36.    As this Court has previously held in another prime-brokerage-claim litigation in these Chapter 11 Cases, Diminution Damages are not recoverable under the terms of the PB Agreements.  *Hr'g Tr.* at 95:18-96:19, *In re Lehman Bros. Holdings, Inc.* (Feb. 11, 2015). The PB Agreements contain two broad and directly applicable exculpatory provisions. Paragraph 28 releases "Lehman Brothers," which is defined to include LBIE and LBHI, from all liability arising from the occurrence of certain events, including "any loss caused, directly or indirectly, by government restrictions . . . suspension of trading . . . or other conditions beyond Lehman Brothers' control."  (Estimation Obj. at Ex. B (PB Agreement) ¶ 28.)  Paragraph 29 releases "Lehman Brothers" from all liability "in connection with the execution, clearing,

13

handling, purchasing, or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part." (*Id.* ¶ 29.)[5]

37.    This Court has previously held that such exculpatory provisions bar certain contract-based claims arising under prime brokerage agreements, including claims for Diminution Damages. *Hr'g Tr.* at 95:18-96:19, *In re Lehman Bros. Holdings, Inc.* (Feb. 11, 2015).    There, Stonehill Offshore Partners Limited and Stonehill Institutional Partners, L.P. (together, "Stonehill") filed 40 contract-based claims (the "Stonehill Claims") seeking an aggregate of over $153 million in damages from LBHI and its chapter 11 affiliates.    Among other things, the Stonehill Claims sought recovery of the postpetition diminution in value of securities that had been custodied with LBI, Stonehill's broker-dealer.    The Court dismissed the Stonehill Claims with prejudice, holding that Diminution Damages were unrecoverable as a result of the exculpatory provisions in the PB Agreements.

38.    Similarly, in the "Newport" and "Providence" matters, the Court dismissed with prejudice over 100 contract-based claims (the "Newport and Providence Claims") filed by six funds (the "Newport and Providence Claimants").    *Hr'g Tr.* at 154:4-155:11, *In re Lehman Bros. Holdings, Inc.* (Feb. 11, 2015).    The Newport and Providence Claims were filed in unliquidated amounts and sought various damages arising from the failure to return securities that were custodied at either LBI or LBIE.    Like Maverick, each of the Newport and Providence Claimants was a party to a PB Agreement, a GMSLA, and an MLA. The Court ruled that the Newport and Providence Claims were barred by the exculpatory provisions of the applicable prime brokerage agreements.    *Id.*

---

[5] Maverick does not assert claims of gross negligence or willful misconduct.    The PB Agreement further provides: "In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement."    To the extent that the Diminution Damages are damages of these types, they have been waived.

08-13555-mg    Doc 53107    Filed 06/22/16    Entered 06/22/16 20:01:37    Main Document
Pg 23 of 43

39.    The holdings in the Stonehill, Newport, and Providence matters are law of the case and they compel disallowance of Maverick's claims for Diminution Damages, even assuming such claims were otherwise valid (but see Section I.A and I.B. above).  *See National Enters v. New York Tax Comm'n*, 2000 U.S. App. LEXIS 4641 (2d Cir. 2000) (law of the case can apply to unpublished decisions); *In re Montagne*, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case") (citing *Cohen v. Bucci,* 905 F.2d 1111, 1112 (7th Cir. 1990)); *cf. Aramony v. United Way of Am.,* 254 F.3d 403, 410 (2d Cir. 2001) ("The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case. Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication").

40.    As noted by this Court, the Court's holdings in the Stonehill, Newport, and Providence matters were consistent with *In re MF Global Inc.*, Case No. 11-2790 (MG), 2014 WL 4361552, at *5 (Bankr. S.D.N.Y. Sept. 4, 2014).  In *MF Global*, as in the present case, customers of a failed broker-dealer asserted claims for Diminution Damages, separate and apart from their customer claims in the applicable broker-dealer's insolvency proceeding.  *Id.* at *4; Trustee's Reply ¶ 6, *In re MF Global Inc.*, SIPA Case No. 11-2790 (Bankr. S.D.N.Y. Aug. 14, 2014) [ECF No. 8175].  The *MF Global* court held that the customers were barred from asserting Diminution Damages as a result of an exculpatory provision in their customer agreements that "clearly and unambiguously limit[ed] [the debtor's] liability to its customers and [did] not create a cause of action based on the [losses] like those sought" by the customers.  *Id.*

WEIL:\95756753\7\58399.0011

41.     Here, Maverick is barred from asserting its contract-based claims, including for Diminution Damages, by the express language of the PB Agreements, just as Stonehill, the Newport and Providence Claimants, and the brokerage creditors in *MF Global* were barred from asserting such claims against their contract counterparties. Any alleged contract damages caused by the alleged delay by LBIE in returning Maverick's assets or providing the economic equivalent, including any damage tied to the diminution in market value of Maverick's assets, falls squarely within the exculpation provisions contained in Paragraphs 28 and 29 of the PB Agreement. Such damages are either "loss[es] caused, directly or indirectly, by government restrictions . . . suspension of trading . . . or other conditions beyond Lehman Brothers' control," PB Agreement ¶ 28, or damages "in connection with the execution, clearing, handling, purchasing, or selling of securities, commodities or other property, or other action," *id.* ¶ 29. Maverick concedes this point when arguing that its damages arise from LBIE's breaches of its contractual commitments "when LBIE entered U.K. administration proceedings and could no longer execute trades or return property to the Maverick Entities." (Estimation Obj. ¶ 16.)[6]

42.     Maverick, a sophisticated party entering into arm's-length transactions, expressly agreed to exculpate Lehman from all contractual liability. Maverick therefore is barred as a matter of law from stating a claim for Diminution Damages.

## II.     <u>Nothing Newly Raised In the Estimation Objection Gives Rise To A Valid Claim</u>

43.     Maverick not only, as discussed above, made assertions in the Estimation Objection at odds with the allegations made in the Maverick Claims, but it also raised the specter

---

[6] Like Stonehill, the Newport and Providence Claimants, and the brokerage creditors in MF Global, Maverick is not left without a remedy. Maverick had statutory rights against LBIE that it pursued in the LBIE Administration and concedes that it already effectively recovered $101.9 million in value from LBIE. Maverick simply waived any right to collect Diminution Damages under a theory of breach of contract.

WEIL:\95756753\7\58399.0011

of the Additional Claims for the first time.  (*See* Estimation Obj. ¶¶ 16-18.)  Pursuant to the Confirmation Order, however, "[a]fter the Effective Date, . . . a proof of Claim relating to a prepetition Claim may not be filed or amended without authority from the Court." (Confirmation Order ¶ 86.)  Maverick has not sought authority of the Court to amend the Maverick Claims to include the Additional Claims and the Plan Administrator submits it is now far too late.

44.    Nevertheless, even if Maverick were to seek permission to amend the Maverick Claims to include the Additional Claims, such efforts would be futile, as the Additional Claims are wholly without merit.

## A.    The Alleged Direct Claims Fail As A Matter Of Law

45.    The Alleged Direct Claims suggest that LBHI is directly liable to Maverick under the PB Agreements because LBI signed the agreement on behalf of itself and all of its affiliates, including LBHI.  (Maverick Obj. ¶¶ 4, 17.)  Any such Alleged Direct Claims, however, fail for some of the same reasons that Maverick's guarantee claims fail.

46.    As set forth in Section I.A. above, damages arising under the PB Agreement are measured as of the Settlement Date of March 30, 2012.  On such date, the Alleged Direct Claims against LBHI were valued at $101.9 million and Maverick already effectively recovered this amount from LBIE; therefore, the Alleged Direct Claims have been satisfied in full.

47.    As set forth in Section I.C. above, Maverick exculpated "Lehman Brothers," a term defined to include LBHI, for losses such as the Alleged Direct Claims, under the express terms of the PB Agreement.  Therefore, under law of the case, the Alleged Direct Claims must be dismissed for this additional reason.

48.    In addition, the Prime Brokerage Guarantee establishes *by its very existence* that the parties to the PB Agreements did not intend for LBHI to be jointly and severally liable for the prime brokerage obligations arising thereunder.  Had the parties intended for LBHI to be so liable, there would have been no reason for a purported guarantee from LBHI. Indeed, it is black-letter law that a party cannot guarantee its own debt.  *See e.g.*, *Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 446 (1996) ("A guaranty . . . is a contract of secondary liability"); *Michaels v. Chem. Bank*, 110 Misc. 2d 74, 76, 441 N.Y.S.2d 638, 640 (Sup. Ct. 1981) ("A guaranty of payment is an obligation to answer for the debtor of another").

### B.    The UCC Claims Fail As A Matter Of Law

49.    Maverick suggests that LBHI is liable for a breach of statutory obligations under Sections 8-503, 8-506, and 8-508 of the New York Uniform Commercial Code (the "NY UCC") when LBIE entered administration and could no longer execute trades or return property to Maverick.  (Maverick Obj. ¶ 16.)  These UCC Claims also fail as a matter of law, for two reasons.

50.    First, Official Comment 1 to Section 8-503 states that "[i]f the [securities] intermediary fails and its affairs are being administered in an insolvency proceeding, the applicable insolvency law governs how the various parties having claims against the firm are treated."  N.Y. U.C.C. § 8-503, cmt 1.  *See also S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 90 (2d Cir. 2002) (affirming rejection of a claim under the Uniform Commercial Code on the basis that the law of federal equity receiverships applied).

51.    Second, Section 8-509(a) states that, "[i]f the substance of a duty imposed upon a securities intermediary by Sections 8-504 through 8-508 is the subject of other statute, regulation, or rule, compliance with that statute, regulation, or rule satisfies the duty."  Here, the substance of the duties imposed by sections 8-506 and 8-508 are governed by the Bankruptcy

18

Code and the United Kingdom Insolvency Act 1986.  There is no allegation that LBHI or LBIE has failed to comply with such statutes.  Because compliance with the Bankruptcy Code and the United Kingdom Insolvency Act 1986 satisfies the duties imposed by Sections 8-506 and 8-508, Maverick's claims under these sections of the UCC also fail as a matter of law.

## RESERVATION OF RIGHTS

52.    The Plan Administrator reserves all rights to object on any other bases to the Maverick Claims as to which the Court does not grant the relief requested herein.  The Plan Administrator reserves the right to conduct further discovery as to the Maverick Claims and any matters raised by Maverick and to supplement this and other filings as a result thereof.

## NOTICE

53.    No trustee has been appointed in these chapter 11 cases.  Notice of this objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Maverick; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

54.    No previous request for the relief sought herein has been made by the Plan Administrator or the Chapter 11 Estates to this or any other Court.

WEIL:\95756753\7\58399.0011

WHEREFORE the Plan Administrator respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 22, 2016
      New York, New York

/s/ Richard L. Levine
Richard L. Levine
Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

20

## EXHIBIT A

The Maverick Claims

**IN RE: LEHMAN BROTHERS HOLDINGS INC., ET AL., CASE NO: 08-13555 (SCC)**

**OMNIBUS OBJECTION 519: EXHIBIT A - NO LIABILITY CLAIMS**

| | NAME | CASE NUMBER | DEBTOR NAME | FILED DATE | CLAIM # | ASSERTED GROSS CLAIM DOLLARS | AMOUNTS TO BE DISALLOWED | REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|---|---|---|
| 1 | MAVERICK FUND II, LTD. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27703 | $91,462,404.00 * | $91,462,404.00* | No Liability |
| 2 | MAVERICK FUND USA, LTD. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27702 | $25,848,831.00 * | $25,848,831.00* | No Liability |
| 3 | MAVERICK FUND, L.D.C. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27704 | $61,661,408.00 * | $61,661,408.00* | No Liability |
| 4 | MAVERICK LONG ENHANCED FUND, LTD. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27695 | $1,286,573.00 * | $1,286,573.00* | No Liability |
| 5 | MAVERICK NEUTRAL FUND, LTD. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27701 | $2,262,956.00 * | $2,262,956.00* | No Liability |
| 6 | MAVERICK NEUTRAL LEVERED FUND, LTD. | 08-13555 (SCC) | Lehman Brothers Holdings Inc. | 09/22/2009 | 27696 | $5,116,894.00 * | $5,116,894.00* | No Liability |

* - Indicates claim contains unliquidated and/or undetermined amounts

# **EXHIBIT B**

Sample Maverick Claim

| | |
|---|---|
| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000027701

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>Case No. 08-13555 (JMP) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Maverick Neutral Fund, Ltd.
c/o Maverick Capital, Ltd.
300 Crescent Court
18th Floor
Dallas, TX 75201
Attn: John T. McCafferty, General Counsel

Telephone number:   214-880-4000
Email address:   John.McCafferty@maverickcap.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
   (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above)




Telephone number:
Email address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1.   **Amount of Claim as of Date Case Filed: $** See attached.
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if all or part of your claim is based on a Derivative Contract.*
   ☑ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
   ☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2.   **Basis for Claim:** See attached.
   (See instruction #2 on reverse side.)
3.   **Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
      (See instruction #3a on reverse side.)
4.   **Secured Claim (See instruction #4 on reverse side.)**
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____ Annual Interest Rate_____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection: _____
   **Amount of Secured Claim: $_____ Amount Unsecured: $_____**

6.   **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
   (See instruction #6 on reverse side.)
7.   **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8.   **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

5.   **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 2 2 20

EPIQ BANKRUPTCY SOL

| Date:<br><br>9/21/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>_John T. McCafferty_ |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## EXHIBIT A

I.    **Introduction**

1.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings

Inc. ("Debtor") commenced a voluntary case under chapter 11 of title 11 of the United States

Code in the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court").

2.      This proof of claim (this "Proof of Claim")[1] is filed in Debtor's

bankruptcy case by Maverick Neutral Fund, Ltd. ("Maverick").  Maverick has a claim (the

"Claim") against the Debtor on account of the Debtor's full guarantee, pursuant to the

Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman

Brothers Holdings Inc., dated as of June 9, 2005 (the "Guarantee"), of the payment of all

liabilities, obligations and commitments of Lehman Brothers International (Europe) ("LBIE"), an

affiliate of Debtor and certain other affiliates of Debtor (the "Guaranteed Affiliates").

3.      Pursuant to the terms of each of (i) the Customer Account Agreement

Prime Brokerage dated as of December 28, 2004  by and among Lehman Brothers Inc. ("LBI"),

LBIE and each other of LBI's affiliates (each of LBI, LBIE and LBI's affiliates, the "Lehman

Entities") and Maverick (the "Customer Account Agreement"), (ii) the Global Master Securities

Lending Agreement dated as of December 28, 2004 by and between LBIE and Maverick  (the

"Lending Agreement"), and (iii) the Margin Lending Agreement dated as of December 28, 2004

by and between LBIE and Maverick  (the "Margin Lending Agreement"), the Lehman Entities

---

[1]      Capitalized terms used but not otherwise defined herein have the meanings assigned to such terms in that certain Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, dated as of July 2, 2009 (Docket No. 4271) (the "Bar Date Order").

agreed to provide certain prime brokerage services to Maverick (each of the Customer Account

Agreement, the Lending Agreement and the Margin Lending Agreement, as amended, restated,

supplemented or otherwise modified from time to time, and the services and transactions

contemplated thereunder, the "Prime Brokerage Documents"). Under the terms of the Prime

Brokerage Documents, LBIE has a lien and first priority security interest in certain assets held or

controlled by LBIE. Such assets are held as collateral by LBIE as agent and bailee for itself and

all other affiliates of LBIE in connection with Maverick's obligations under the Prime Brokerage

Documents. As such, Maverick believes that LBIE or another Guaranteed Affiliate may have

custody of all or some of Maverick's assets or property transferred to the Lehman Entities in

connection with the Prime Brokerage Documents. As of the Petition Date, the Lehman Entities

had custody of Maverick's assets pursuant to the Prime Brokerage Documents in the amount of

$ 2,262,956. This Proof of Claim constitutes a demand for payment under the Guarantee.

## II.    The Claim

4.    Maverick hereby asserts the Claim in the initial amount of $ 2,262,956[2]

less any amounts owed by Maverick in connection with the Prime Brokerage Documents (the

"Initial Claim Amount"[3] ). The Initial Claim Amount may change depending on the current

value of the assets in custody until such time as Maverick exercises any remedies it may have to

liquidate its claim.

5.    In addition, the Claim includes (i) fees and expenses incurred by Maverick

in connection with enforcement of its rights under the Prime Brokerage Documents (the

---

[2]    The amount will be revised on account of the Additional Claim Amounts.

[3]    For the avoidance of doubt, the Initial Claim Amount is a gross claim and does not take into account any
amounts or obligations that Maverick may owe to the Lehman Entities under the terms of the Prime
Brokerage Documentation.

"Enforcement Amount") and (ii) interest that has accrued on the amount of the Claim (the

"Interest Amount" together with the Enforcement Amount, the "Additional Claim Amounts").

Such Additional Claim Amounts cannot be estimated or calculated reasonably at this time.

Additional Claim Amounts will continue to accrue through the date on which the amount of the

Claim is paid in full.  Maverick does not waive its rights to any of the Additional Claim Amounts

or to any future distributions under the Prime Brokerage Documents by not stating a specific

figure therefor at this time, and, further, hereby reserves its right to amend and supplement this

Proof of Claim to include any such Additional Claim Amounts.

6.      Pursuant to the terms of the Bar Date Order, Maverick will file

documentation supporting this Proof of Claim with the Guarantee Questionnaire, which will be

filed on or before the Questionnaire Deadline.

## III.    General

7.      Maverick does not waive any right or rights of action that it has or may

have against Debtor, LBIE or any other person or persons.  Maverick reserves the right to amend

or supplement this Proof of Claim in any manner.

8.      By filing this Proof of Claim, Maverick does not submit itself to the

jurisdiction of the Bankruptcy Court for any purpose other than with respect to this Proof of

Claim.

9.      This Proof of Claim is not intended to be, and shall not be construed as:

(i) an election of remedies; (ii) a waiver of any defaults; (iii) a waiver or limitation of any of

Maverick's rights, remedies, claims or interests under applicable law against Debtor, LBIE or

any other person or entity; (iv) a waiver of any setoff or recoupment rights under applicable law;

(v) a waiver of any netting rights under applicable law; (vi) a waiver of any rights to assert that

all or any portion of the amounts claimed for are being held by Debtor, as bailee, or in

constructive trust; (vii) a waiver of Maverick's property or ownership rights (legal or equitable);

or (viii) a waiver of Maverick's legal, equitable or beneficial interests.

          10.    All notices and communications concerning this Proof of Claim should be

addressed as follows:

> Maverick Neutral Fund, Ltd.
> c/o Maverick Capital, Ltd.
> 300 Crescent Court
> 18th Floor
> Dallas, TX 75201
> Attn:  John T. McCafferty, General Counsel
> John.McCafferty@maverickcap.com
>
> and to:
>
> Donna Parisi Esq.
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, New York 10022
> 212-848-4000
> dparisi@shearman.com

Dated as of September 21, 2009

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP **2 2** 2009

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

RECEIVED BY:

DATE

2:35

TIME

# **EXHIBIT C**

S&P Letter

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

To:    **Standard & Poor's Rating Services**
       **55 Water Street**
       **New York, NY 10041**

We, Lehman Brothers Holdings Inc., do hereby absolutely and unconditionally guarantee the payment by Lehman Brothers International (Europe) ("Affiliate") of all of Affiliate's liabilities, obligations and commitments (the "Guaranteed Obligations") to any counterparty of Affiliate and such counterparty's successors, endorsees and assigns (collectively, the "Beneficiaries"), as the same shall respectively become due, together with accrued interest and charges, if any, and we agree to reimburse each Beneficiary for all expenses including reasonable attorneys' fees of enforcing or obtaining or endeavoring to enforce or obtain payment thereof.

This Guarantee is absolute and unconditional without limitation as to monetary amount or duration, irrespective of the validity, regularity or enforceability of any agreement or document setting forth a Guaranteed Obligation (each a "Borrower Agreement") against Affiliate (other than as a result of the unenforceability of the applicable Borrower Agreement against the Beneficiary), any waiver or consent by any Beneficiary with respect to any provisions thereof or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor (excluding the defenses of payment and statute of limitations, neither of which is waived); provided, however, that we shall be entitled to exercise any right that Affiliate could have exercised under the applicable Borrower Agreement to cure any default in respect of its obligations under the Borrower Agreement or to setoff, counterclaim or withhold payment in respect of any event of default or similar event in respect of a Beneficiary, but only to the extent such right is provided to Affiliate under the Borrower Agreement. We shall have no right of subrogation with respect to any payments we make under this Guarantee in connection with a Borrower Agreement until all Guaranteed Obligations of Affiliate under that Borrower Agreement are paid in full.

This Guarantee is a guarantee of payment, and not of collection, and each Beneficiary may exercise its rights hereunder against us without first having to take any action against Affiliate, or any other guarantor. We hereby waive diligence, presentment, protest, demand of any kind in connection with the delivery, acceptance, performance, default or enforcement of this Guarantee.

This Guarantee shall be binding upon us, our successors and assigns.

We further agree that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Guaranteed Obligation or interest thereon is rescinded or must otherwise be restored by or is recovered from a Beneficiary as a preference or fraudulent transfer under the federal Bankruptcy Code or any similar applicable state or foreign law.

hereunder to us shall be to Lehman Brothers Holdings Inc., Attention: Treasurer, at 745 Seventh Avenue, New York, New York (Facsimile No. 646-758-3334).

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflicts of laws principles thereof.

**IN WITNESS WHEREOF**, I have hereunto set my hand on January 4, 2008.

LEHMAN BROTHERS HOLDINGS INC.

By:

Name: James J. Killerlane III
Title:   Vice President

2

**EXHIBIT D**

Proposed Order

WEIL:\95756753\7\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                          :        Chapter 11 Case No.
                                               :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        08-13555 (SCC)
                                               :
                            **Debtors.**       :        **(Jointly Administered)**
-------------------------------------------------------------------x

### ORDER GRANTING PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY MAVERICK CLAIMS)

Upon the objection, dated June 17, 2016 (the "Objection"),[7] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, seeking to disallow and expunge the Claim pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, all as more fully described in the Objection; and due and proper notice of the Objection having been provided as stated therein, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of LBHI, its creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Maverick Claims are disallowed and expunged in their entirety with prejudice; and it is further

---

[7] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2016
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

2