Hearing Date and Time:  July 12, 2016 at 10:00 a.m.
Objection Deadline:  June 28, 2016, 2016 at 4:00 p.m.

**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th floor
New York, NY 10019-6079
(212) 752-8000
Michael D. Warner, Esq.
Ilana Volkov, Esq.
Adam J. Sklar, Esq.
Mark Tsukerman, Esq.

*Attorneys for Creditor Highland CDO Opportunity*
*Master Fund, L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

### HIGHLAND CDO OPPORTUNITY MASTER FUND, L.P.'S RESPONSE TO PLAN ADMINISTRATOR'S OBJECTION TO PROOF OF CLAIM NUMBER 16838

Highland CDO Opportunity Master Fund, L.P. ("**Highland**"), by and through its counsel,

Cole Schotz P.C., hereby files this response (the "**Response**") to the objection (the "**Motion**")

filed by Lehman Brothers Holdings Inc. ("**LBHI**" or "**Plan Administrator,**" as applicable), as

Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman*

*Brothers Holdings Inc. and Its Affiliated Debtors* (the "**Plan**"), to proof of claim number 16838

(the "**Claim**"), and respectfully states as follows:

### I.    INTRODUCTION

1.      The Claim states a claim upon which relief can be granted.  It is based on LBHI's

clear and unambiguous obligation to indemnify the creditors of LBHI's wholly-owned

subsidiary, Lehman Brothers International (Europe) ("**LBIE**"), from losses they suffered as a

result of LBIE's defaults.   Specifically, LBHI executed, and publicly disclosed, broad and unqualified corporate resolutions to guarantee and assume payment of all <u>present</u> <u>and</u> <u>future</u> obligations of certain subsidiaries, including specifically LBIE.   Utilizing a strategy that unfairly leaves the Plan Administrator with the upper hand, the Plan Administrator now wants to nullify the very financial backstop LBHI delivered to credit agencies and publicly disclosed to market participants.   The Court should reject the Plan Administrator's efforts, and the tactics deployed, to expunge the Claim under Rule 12(b)(6) of the Federal Rules of Civil Procedures (the "**Civil Rules**").

2.       The Plan Administrator repudiates LBHI's unconditional backstop of any losses LBIE's contract counterparties might have incurred as a result of the highly complex and risky transactions in which the parties engaged.   In so doing, the Plan Administrator attempts to impugn the properly plead legal bases for the Claim by arguing the corporate resolution at issue is a "general guarantee."   The Plan Administrator is wrong.   First, Highland is an intended third party beneficiary of the Resolutions (as defined below) and, therefore, does not need actual knowledge or reliance to enforce them.   Second, even if reliance is a prerequisite to enforcement, the Resolutions had an intended market effect upon which Highland may rely.   The issuance of the Resolutions enhanced LBIE's credit ratings and was reflected in the market data that would have been relied upon by counterparties of LBIE, such as Highland.   Thus, even giving the Plan Administrator's reliance argument the benefit of the doubt, any such reliance requirement is satisfied here and the Motion should be denied.

3.       Assuming, *arguendo*, the Court does not reject the Plan Administrator's arguments outright, it should schedule an evidentiary hearing on the Motion and allow Highland to take discovery.   Back in January 2013, the Plan Administrator took fulsome (albeit

unnecessary) discovery, including document requests and depositions, from Highland with respect to the Claim – all without filing an objection to the Claim.[1]  After arming itself with fact discovery to support its yet unfiled claim objection, about three and half years later (and after an aborted effort to improperly estimate the Claim at $0.00), the Plan Administrator filed the Motion and commenced a contested matter relying on that discovery.  Critically, however, Highland is now enjoined from taking its own discovery the issues raised to defeat Highland's Claim.  With this distinct tactical advantage, the Plan Administrator seeks a non-evidentiary hearing to test the legal sufficiency of the Claim.  At the same time, however, the Plan Administrator's heavy reliance on the discovery it took from Highland essentially converts the Motion into one for summary judgment.  To level the playing field, Highland must be given the opportunity to take discovery from the Plan Administrator in advance of any evidentiary hearing.

4.       In sum, the Claim is not one that can be dismissed under Civil Rule 12(b)(6).  Therefore, the Motion should be denied as a matter of law.  If the Motion is not denied outright, then, at a minimum, the Court should schedule an evidentiary hearing on the Motion and allow Highland to take discovery to fully and fairly prepare for the litigation the Plan Administration has launched to disallow the Claim.

## II.       BACKGROUND

### A.       The Lehman Enterprise, the Resolutions and the Significant Benefits to LBHI and LBIE Resulting Therefrom

5.       LBHI and its subsidiaries touted themselves as "one of the leading global investment banks serving institutional, corporate, government and high-net-worth individual

---

[1] It is ironic that the Plan Administrator's entire case is based on its argument that Highland did not know about the 2005 Resolution (defined below) when, in fact Highland offered to stipulate to such fact in lieu of discovery.  (*See* Motion, Ex. C).  The fact of Highland's lack of knowledge has no relevance to the legal underpinnings of Highland's Claim.

clients." (LBHI's 2005 Form 10-K filing, p. 77).[2]  LBIE was LBHI's principal European subsidiary. (*Id.*)  Its activities included trading and brokering fixed income financial instruments and syndicating and underwriting new security issues. (*Id.*)  One of LBIE's principal sources of funding included repurchase agreements, such as the agreement LBIE entered into with Highland. (*Id.*)

6.      Highland alleges that maintaining strong credit ratings was critical to the Lehman enterprise's success.  In LBHI's 2005 Form 10-K filing, for instance, LBHI stressed that its businesses depended on "continuous access to secured financing in the repurchase and securities lending markets." (*Id.* at p.13).  LBHI extended its full financial backing and support to its subsidiary investment firms to incentivize potential counterparties to engage in and continue significant and complex financial transactions with those subsidiaries.

7.      Presumably to that end, on June 9, 2005, by Unanimous Written Consent of the Executive Committee (the "**Executive Committee**") of the Board of Directors of LBHI (the "**Board**"), LBHI established LBIE as a "Guaranteed Subsidiary" and committed itself to a "[f]ull guarantee of all obligations" of LBIE (the "**2005 Resolution**").[3]  The 2005 Resolution expressly provides that LBHI "fully guarantees the payment of ***all liabilities, obligations and commitments of the subsidiaries*** set forth on Schedule A…each of which shall be a Guaranteed Subsidiary." (*See* 2005 Resolution, first "Resolved" paragraph (emphasis added)).  Importantly,

---

[2] Selected pages from LBHI's 2005 Form 10-K filing are attached hereto as **Exhibit A**.

[3] A copy of the 2005 Resolution is attached hereto as **Exhibit B**.  The 2005 Resolution refers to and incorporates by reference LBHI's Code of Authorities with respect to the use of the term "Guaranteed Subsidiary." Based on its preliminary review of publicly available documents, and subject in all respect to further investigation and formal discovery, Highland located a copy of LBHI's Amended and Restated Code of Authorities (the "**Authorities**"), adopted by resolution of the Executive Committee as amended through July 1, 2004, and presumably in effect at the time of the execution of the 2005 Resolution.  A copy of the Authorities is attached hereto as **Exhibit C**.  According to the Authorities, a subsidiary's Guaranteed Subsidiary status meant that LBHI committed to a "[f]ull guarantee of all obligations of [the] [s]ubsidiary." (*See* Authorities, Exhibit 3, No. 4).

the resolution contains no temporal limitation and further provides that, as to any given transaction, a separate, signed document is <u>not</u> necessary to effectuate LBHI's commitment under the 2005 Resolution.  (*See* 2005 Resolution, fourth Whereas clause).

8.    In its public Securities and Exchange Commission (the "**SEC**") filings, LBHI disclosed that it had fully guaranteed all the liabilities, obligations and commitments of certain subsidiaries.  (*See e.g.* LBHI's Form 10-K filings for years ending 11/30/05 at F-7, and 11/30/07 at p. 134).  An internet search reveals a company overview analysis prepared by LBHI for its Third Quarter-2007 confirming the identity of all the Guaranteed Subsidiaries, including LBIE (the "**2007 Company Overview**").[4]  The 2007 Company Overview also specified that LBIE "benefits from a full guarantee of LBHI" and notes the main source of funding for LBIE includes, among other items, repurchase agreements (such as the agreement executed with Highland that is the subject of the Claim).  (*See* 2007 Company Overview, p. 5).  The overview concludes with a chart showing the ratings upgrades for LBHI by Moody's Investor Services, Fitch Ratings, Standard & Poor's Ratings Services and Dominion Bond Rating Service.

9.    On January 4, 2008, LBHI issued another absolute, unconditional and continuing guarantee of LBIE's obligations (the "**2008 Resolution**" and, together with the 2005 Resolution, the "**Resolutions**"),[5] this time expressly addressed to Standard & Poor's Rating Services ("**S&P**").  The 2008 Resolution provided, and reported to Standard & Poors, that (a) LBHI "absolutely and unconditionally guaranteed" "the payment by Lehman Brothers International (Europe) ('Affiliate') of ***all*** ***Affiliate's liabilities, obligations, and commitments*** (the 'Guaranteed Obligations') ***to any counterparty of Affiliate*** and such counterparty's successors,

---

[4] A copy of the 2007 Company Overview is attached as **Exhibit D**.

[5] A copy of the 2008 Resolution is attached hereto as **Exhibit E**.

endorsees and assigns (collectively, the "Beneficiaries"), ___*as the same shall respectively become*___

___*due*___, together with accrued interest and charges . . . ."  (*See* 2008 Resolution, first paragraph)

(emphasis added).    Furthermore, LBHI clearly and unequivocally "___*waive[d]*___  ___*diligence*___,

___*presentment*___, ___*protest*___, demand of any kind in connection with the ___*delivery*___, ___*acceptance*___,

___*performance*___, default or ___*enforcement*___ of [the] [g]uarantee."  (2008 Resolution, third paragraph)

(emphasis added).

10.    Due to the Temporary Litigation Injunction (defined below), Highland has not

had an opportunity to seek discovery from LBHI regarding the Resolutions or any other matter

relating thereto.    However, Highland asserts the Resolutions were issued for LBHI and its

Guaranteed Subsidiaries (including LBIE) to enjoy, among other things, significant financial,

tax, regulatory, and reporting-related benefits.[6]

## B.    The Bankruptcy Proceedings, Highland's Claim and the Plan Administrator's Motion

11.    On May 31, 2007, Highland and LBIE entered into a Global Master Repurchase

Agreement (2000 version), as amended and supplemented from time to time (the "**GMRA**"),

pursuant to which LBIE sold certain securities to Highland and simultaneously agreed to

repurchase those securities at a later date at an agreed price.    As noted in the 2007 Company

Overview, repurchase agreements such as the GMRA represented LBIE's principal source of

funding.

---

[6] For example, the Resolutions may have allowed LBHI to avail itself of regulations that authorize filing consolidated financial statements, which lessen or eliminate the need to file periodic reports for its subsidiaries. Highland asserts that such consolidated reporting improved the overall appearance and robustness of LBHI's entire enterprise, including its balance sheet.  Additionally, the Resolutions provided LBIE with the full financial strength and backing of LBHI, thereby enhancing LBIE's credit ratings.  Indeed, the 2008 Resolution was directed to S&P, presumably for that very purpose.  Highland asserts that by virtue of the improved ratings, LBIE would have enjoyed easier access to capital for borrowing/financing, more favorable pricing terms and cost of capital (e.g. lower interest rates), and less restrictive covenants and other obligations.  It also would have incentivized market participants, such as Highland, that relied on LBIE's ratings and balance sheet to accurately underwrite and execute transactions with LBIE.

12.     On September 15, 2008, LBHI and certain of its subsidiaries commenced these chapter 11 cases, and on that same date, LBIE was placed into administration in the United Kingdom (the "**LBIE Administration**"), thereby defaulting under the GMRA.  On or about December 11, 2008, Highland submitted a claim in the LBIE Administration in the amount of $10,026,061 based on LBIE's default under the GMRA (the "**Highland/LBIE Claim**").

13.     On or about September 10, 2009, Highland became aware of the 2005 Resolution. Accordingly, on September 18, 2009, Highland filed a proof of claim in this bankruptcy case [Claim No. 16838] based upon the 2005 Resolution in the amount of $10,026,061 (the "**Claim**").[7]

14.     On April 19, 2010, this Court entered an order [Docket No. 8474] (the "**Claims Procedures Order**"), which, *inter alia*, enjoins all parties from commencing or engaging in any discovery upon the filing of an objection to a claim by the Plan Administrator (the "**Temporary Litigation Injunction**").  (Claims Procedures Order, third Ordered paragraph).

15.     Starting in January 2013 (over 3.5 years prior to filing the Motion), the Plan Administrator commenced discovery proceedings against Highland in connection with the Claim, including the issuance of subpoenas to produce documents and for the examination of witnesses pursuant Rule 2004 of the Federal Rules of Bankruptcy Procedure.  To obviate the need for a deposition and the associated the costs to Highland and the LBHI estate, Highland offered to provide the Plan Administrator with an affidavit attesting to the facts it sought to

---

[7] A copy of the Claim (without exhibits) is attached hereto as **Exhibit F**.  The Claim currently does not refer to the 2008 Resolution because Highland discovered the 2008 Resolution after filing thereof.  However, the 2008 Resolution may represent an additional legal basis upon which Highland can seek recovery in this case.  To the extent necessary, Highland will amend the Claim to include the 2008 Resolution and any additional facts it may uncover in discovery.  LBHI cannot be said to be prejudiced by such claim amendment because (i) LBHI knows of the 2008 Resolution and (ii) the amendment would not be to increase the amount of the claim, but simply to add a similar legal theory for recovery.

establish.  Highland even provided the Plan Administrator with an initial draft of an Affidavit in

Lieu of Rule 2004 Exam for its consideration; a copy of that draft is attached as Exhibit C to the

Motion.  Notably, Highland offered to stipulate, *inter alia*, that "[p]rior to entering into the

GMRA, [it] had not seen and otherwise had no direct knowledge of the [2005 Resolution]."

(Motion, Ex. C, ¶ 4.)  However, without explanation or negotiation of the facts to be stipulated,

the Plan Administrator rejected Highland's proposal and insisted on deposing Highland's

representative on August 20, 2013.[8]  The Plan Administrator's refusal to accept Highland's

admission that it did not know about the 2005 Resolution is quite ironic given that the Motion is

premised on that very fact – a fact that has no bearing on the validity and enforceability of

Highland's Claim.

16.    On or about July 30, 2014, Highland and LBIE entered into a Claims

Determination Deed (the "**Claims Determination Deed**"), effectuating a commercial settlement

of the Highland/LBIE Claim.  In the fall of 2014, Highland advised LBHI of the resolution of the

Highland/LBIE Claim pursuant to the Claims Determination Deed and the concomitant reduction

of the Claim.  As a result, the official claims register in this case now reflects the amount of the

Highland/LBHI Claim as $5,011,075.10.

### III.    LEGAL STANDARD FOR REVIEW

17.    Pursuant to the Claim Procedures Order, all hearings "'to address the legal

sufficiency of [a] particular Contested Claim and whether the Contested Claim states a claim

---

[8] About two and half years after the Plan Administrator commenced discovery against Highland, and after
having obtained several extensions of its deadline to file an objection or seek to estimate claims, on June 25, 2015,
the Plan Administrator filed a motion, seeking to estimate certain LBIE-based guarantee claims in the maximum
amount of zero dollars for reserve and distribution purposes [Docket No. 49954] (the "**Estimation Motion**").
Highland opposed the Estimation Motion [Docket No. 50244].  The Plan Administrator unilaterally adjourned the
Estimation Motion numerous times and ultimately decided to adjourn it *sine die*.  Now, almost one year later, the
Plan Administrator revived its prolonged attack on Highland's Claim.

against the asserted Debtor under Bankruptcy Rule 7012' shall be 'Sufficiency Hearings,' unless

the Plan Administrator serves the holder of a contested claim with a Notice of ADR Procedure or

Notice of Merits Hearing.'"  *In re Lehman Brothers Holdings Inc.*, 515 B.R. 171, 174 (Bankr.

S.D.N.Y. 2014) (quoting the Claim Procedures Order).  Because Highland was never served with

a Notice of ADR Procedure or a Notice of Merits Hearing, the hearing on the Motion must be

treated as a Sufficiency Hearing.[9]

18.    The applicable standard of review at a non-evidentiary Sufficiency Hearing "will

be the equivalent to the standard applied by the Court upon a motion to dismiss for failure to

state a claim."  (Claim Procedures Order, Ex. A at ¶ 4(a)(i)).  A motion to dismiss under Civil

Rule 12(b)(6), made applicable here by Bankruptcy Rule 7012(b), is "designed to test the legal

sufficiency of the complaint, and thus does not require the Court to examine the evidence at

issue."  *DeJesus v. Sears, Roebuck Co.,* 87 F.3d 65, 69 (2d Cir.1996), *cert. denied,* 519 U.S.

1007 (1996).  "[A] court must accept as true all of the factual allegations set out in plaintiff's

complaint, draw inferences from those allegations in the light most favorable to plaintiff, and

construe the complaint liberally." *Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2d Cir.

2009).

19.    To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the

allegations must be sufficient "to raise a right to relief above the speculative level" and to

provide more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic*

*Corp. v Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679

---

[9] It is unclear why the Motion contains a reservation of rights to adjudicate the relief requested at a
Sufficiency Hearing.

(2009).  Therefore, the appropriate inquiry "is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citations omitted).

20.    Furthermore, when deciding a motion to dismiss under Rule 12(b)(6), the court may consider "all papers and exhibits appended to the complaint, as well as any matters on which judicial notice may be taken."  *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  However, [w]hen material outside the complaint is presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  In *Chambers*, the Second Circuit cogently explained that "[t]his conversion requirement is 'strictly enforced' whenever a district court considers extra-pleading material in ruling on a motion to dismiss."  *Id.* at 154.  "[W]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record.  In contrast, on summary judgment the court is required to consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Id.* at 155 (quoting Fed. R. Civ. P. 56(c)).

10

# IV.    LEGAL ARGUMENT

**A.    The Motion to Dismiss Should be Denied Because Highland Has Properly Stated a Claim Against LBHI Based On the Resolutions' Clear and Unambiguous Terms and LBHI's Public Disclosures Confirming Them**

21.    Highland has properly stated a claim against LBHI based on the plain and unambiguous language of the Resolutions.[10]    In the Motion, the Plan Administrator asks the Court to re-write the Resolutions to impose material limitations that were never expressed or presumably intended by LBHI.    Specifically, the Plan Administrator requests the Court to find that actual knowledge of, and reliance on, the Resolutions is an unwritten condition precedent to their validity and enforcement.    In addition, although not overtly expressed in the Motion, the inescapable corollary to such a finding is that the Resolutions may apply only to obligations of LBIE that arose subsequent to their issuance.

22.    However, the Resolutions unequivocally commit LBHI to fully guarantee **_all_** of LBIE's liabilities, obligations, and commitments; they are devoid of any limitations or conditions whatsoever.    Likewise, in its public disclosures and SEC filings, LBHI represented, among other things, that LBIE's obligations would be satisfied no matter the circumstances, and regardless of whether there was a separate agreement between any particular creditor and LBHI as guarantor. LBHI would not have sought and obtained the above-referenced benefits, and others, had it not drafted the Resolutions with the precise language they contained and ultimately disclosed those Resolutions to market participants and credit agencies.

---

[10] Technically, the Motion only addresses the 2005 Resolution.    However, the Plan Administrator's contention that the 2005 Resolution is a general guarantee (and requires knowledge and reliance and as condition precedent to enforcement) must apply equally to the 2008 Resolution.

23.     Thus, the Plan Administrator's position is irreconcilably at odds with the plain and unequivocal language of the Resolutions and with LBHI's supporting public disclosures and representations.

**B.      As a Third-Party Beneficiary of the 2005 Resolution, There is No Legal Requirement that Highland Have Been Aware of the Resolution to Enforce It**

24.     The Plan Administrator's entire argument is premised on its unsupported characterization of the 2005 Resolution as a "general guarantee," which requires the beneficiary to be privy to the contract—unlike third-party beneficiary standing available under typical surety or indemnification arrangements.    At the same time, however, the Plan Administrator acknowledges the 2005 Resolution may not even be a guarantee at all.  (*See* Motion at ¶ 17 ("To the extent that the Resolution is found to be a guarantee, it could be, at best, a general guarantee"); ¶ 13 n.3 ("Plan Administrator does not concede, and reserves all of its rights to argue that the Resolution is not a guaranty contract . . . .").[11]  Thus, the Plan Administrator seeks to expunge Highland's claim based on an unsupported assumption about LBHI's intent in issuing the 2005 Resolution—*i.e.*, LBHI intended to issue a "general guaranty" as opposed to an indemnification of its subsidiary's obligations.

25.     Highland asserts the 2005 Resolution is not a general guarantee:  it is a duly authorized resolution of the Executive Committee of LBHI to indemnify LBIE's creditors with respect to the non-payment of LBIE's debts.  As such, the 2005 Resolution is analogous to a company's certificate of incorporation or other enabling documents, which often include provisions for the indemnification of third parties, such as its directors or officers.

---

[11] In the same footnote, the Plan Administrator suggests the 2005 Resolution, to the extent construed as a "general guarantee" may violate the Statute of Frauds.  Such contention is beyond credulity as the Resolution is in writing and was duly authorized by the Board.

26.     LBHI is a Delaware holding company.  In Delaware, a company's certificate of incorporation "is both a contract between the State and the corporation, and the corporation and its shareholders."  *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130, 1136 (Del. 1991) (citing *Lawson v. Household Finance Corp.*, Del. Supr., 152 A. 723, 727 (1930)).  In *In re Mid-American Waste Systems, Inc.*, 228 B.R. 816 (Bankr. Del. 1999), the bankruptcy court reasoned that a company's officers and directors' indemnification rights "are akin to a surety relationship created by [the company's] certificate of incorporation."  *Id.* at 822.  The court explained that the absence of a separate signed indemnification agreement "is a technical nicety that makes no substantive difference" between a traditional surety agreement and the company's indemnity commitment in its certificate of incorporation.  *Id.*  It concluded that "[a]t a minimum, the [directors and officers] are third-party beneficiaries of that contract."  *Id.* at 822-23.

27.     Similarly, here, the 2005 Resolution reflects LBHI's duly authorized agreement to indemnify LBIE's creditors for LBIE's inability to satisfy their claims against LBIE.  As such, LBIE's creditors are the express and intended third-party beneficiaries of that agreement.

28.     It is long settled that a third party may enforce and recover on a promise made for his or her benefit without knowledge of that promise.  *See, e.g.*, 22 N.Y. Jur. 2d Contracts § 317 ("In order for a third person to recover on a contract made for his or her benefit, it is not essential that he or she knew of the contract at the time it was made"); *Lawrence v. Fox*, 20 N.Y. 268 (1859) (a plaintiff-beneficiary could maintain an action on a promise defendant made for defendant's benefit even though plaintiff was neither a party to nor aware of the promise at the time it was made); *see also Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989).

29.     A party is an intended (as opposed to an incidental) beneficiary of a contract if "'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and* . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'"  *LaSalle Nat'l Bank v. Ernst & Young, L.L.P.,* 729 N.Y.S.2d 671, 676 (1st Dep't. 2001) (quoting Restatement [Second] of Contracts § 302).  In determining whether a third party is an intended versus an incidental beneficiary, the focus is on the promisor's intent to become obligated to the third-party, regardless of whether the promisor was motivated by self-interest.  *See Ogden Techn.,* 406 F.Supp. 1090, 1092 (E.D.N.Y. 1973) (citing *U.S. v. Jacobs*, 304 F.Supp. 613 (S.D.N.Y. 1969)).

30.     Here, Highland was a clear, intended beneficiary of the Resolutions.  LBHI understood LBIE's business and the types of debts LBIE incurred in the ordinary course of business.  Indeed, the 2007 Company Overview indicated that LBIE's main source of funding was derived from repurchase agreements such as the GMRA it executed with Highland.  The Resolutions fully and unconditionally guaranteed payment of LBIE's obligations and commitments which, as the companies publicly disclosed, are primarily comprised of repurchase agreements such as the GMRA.  And the 2008 Resolution even expressly refers to LBIE's counterparties as "Beneficiaries."

31.     The case of *Homewood Inv. Co., Inc. v. Wilt*, 632 P.2d 1140 (Nev. 1981) is instructive.  There, a Nevada contracting company needed to show "substantial financial responsibility" to the State in order to obtain an unlimited contractor's license.  *Id.* at 1142.  At the State's suggestion, the company's indirect sole shareholder and officer agreed to indemnify the company's creditors, as follows:

> We, Richard Osmundsen, President, and Tom Gentry, Director, officers and Stockholders of Homewood Investment Co., do hereby personally indemnify the

14

creditors of Homewood Investment Co. for **any and all liabilities** of the said Homewood Investment Co., wherein such liabilities are incurred in the ordinary course of the construction business within the State of Nevada.

*Id.* at 1142 n.3 (emphasis added).  Ultimately, the State issued the license and certain creditors obtained judgment against one of the shareholders, Tom Gentry, based on the indemnification.  *Id.* at 1142.

32.     On appeal to the Nevada Supreme Court, Gentry contended, among other things, that "the district court erred in allowing respondents to recover under the indemnification agreement despite respondents' lack of knowledge of the agreement at the time they extended credit to Homewood."  *Id.* at 1142.  In support, Gentry relied on *Farmers' State Bank of York v. Brock*, 234 N.W. 92 (Neb. 1931), a general guaranty case on which the Plan Administrator also relies.[12]  Notably, for similar reasons applicable to this case, the court reasoned that Gentry's reliance on *Farmers'* was misplaced because "[t]he contract was between the [State] and [the shareholder] for the benefit of any entity extending credit to [the company]."  *Id.* at 1142-43. The court concluded that "[t]he liability [the creditors] sought to impose upon Gentry was clearly within the express terms of the indemnification agreement[;] [t]he [State's] purpose in requiring the indemnification agreement was to protect persons dealing with [the company], an undercapitalized corporation[;] [and,] [t]o require creditors to have knowledge of the agreement when extending credit to appellant would not further the [State's] legitimate purpose in requiring it."  *Id.* at 1143.

33.     Similarly, here, the 2005 Resolution was issued by LBIE's sole shareholder (its corporate parent) and represents LBHI's agreement to indemnify LBIE's creditors from losses suffered as a result of their transactions with LBIE.  The Executive Committee, acting as

---

[12] *Farmers'* is addressed in more detail in Point C of this Response.

fiduciary to the company and all of its stakeholders, promulgated the resolution to establish LBIE as a Guaranteed Subsidiary.  As in *Homewood*, it appears that the SEC, the ratings agencies, and other regulatory bodies required the Resolutions for LBHI and its subsidiaries to conduct business.  Additionally, Highland believes the Resolutions benefitted the Lehman enterprise in numerous ways – from administrative efficiencies to higher credit ratings – all of which the Plan Administrator not attempts to deny.

34.    The resolution clearly and expressly covered LBIE's liability to Highland under the GMRA and was designed, at least to some extent, to incentivize counterparties to execute and remain in repurchase agreements (as well as other significant financial dealings with the company). Thus, LBHI's decision to hold itself responsible for LBIE's obligations—a concerted action it took through a duly executed resolution, the propriety of which is not in dispute— should be enforced according to its terms by Highland, an intended third party beneficiary.

## C.    Even if Reliance is a Requirement, Actual Knowledge of the 2005 Resolution Was Not Necessary Because It Was Disclosed to the Market and Reported to Credit Rating Agencies

35.    Even assuming, *arguendo*, that reliance is a prerequisite to enforcement of the 2005 Resolution (*i.e.*, the 2005 Resolution is a "general guaranty"), that requirement is satisfied here because of the public disclosures made by LBHI.  LBHI and LBIE publicly disclosed and reported the issuance of the 2005 Resolution, and the financial market participants and credit agencies reacted accordingly.  Although the full extent of the facts, disclosures, market impact, and benefits surrounding LBHI's issuance of the 2005 Resolution, as well as any other resolutions that LBHI may have issued, would have to be explored in discovery if necessary, it is beyond legitimate dispute that issuance of the Resolutions positively impacted LBIE's credit rating (*see, e.g.*, 2007 Company Overview) and, as a result, any counterparty's willingness to deal with LBIE.

16

36.     While Highland may not have been specifically aware of the 2005 Resolution when it executed the GMRA with LBIE, Highland, like any other counterparty, would have relied on the enhanced credit ratings, market data and statistics that reflected the issuance of the 2005 Resolution when it underwrote and entered into the GMRA with LBIE.  Accordingly, Highland had constructive knowledge of the 2005 Resolution and, directly or indirectly, relied on it when entering into the GMRA with LBIE.

37.     The Plan Administrator implores this Court to blindly apply common law doctrine concerning general guarantees (while at the same time reserving its right to argue the 2005 Resolution was not a guarantee at all).  The Plan Administrator's argument, however, is woefully misplaced and not a single case identified is remotely similar to the facts here.  In fact, all but one case the Plan Administrator cites arose out of disputes over so-called specific or special guarantees, that is, a guarantee issued in connection with a specific transaction or that names a specific obligee.[13]  *See Cavendish Traders, Ltd. v. Nice Skate Shores, Ltd.*, 117 F. Supp. 2d 394, 400 (S.D.N.Y. 2000) (principals of company provided lender with guarantee in connection with issuance of loan); *Fed. Dep. Ins. Corp. v. Schuhmacher*, 660 F. Supp. 6 (E.D.N.Y. 1984) (employees of company gave guaranty to bank in connection with secured loan to company); *Evansville Nat'l Bank v. Kaufmann*, 93 N.Y. 273 (1883) (general letter of credit (not even guarantee) was delivered to and for use by two specific obligees); *Philip Carey Co v. Duffy*, 10 N.Y.S.2d 876 (N.Y. App. Div. 1939) (general letter of credit (not even a guarantee) delivered for use by two specific obligees); *J.C. Wattenbarger & Sons v. Sanders*, 30 Cal. Rptr. 910 (Cal. Ct. App. 1963) (partnership agreement language was so conditional that it was not a guarantee at

---

[13] It is unclear why the Plan Administrator leads the Court to believe that these specific guarantee cases are cases that address general guarantees (*see* Motion at ¶ 15-16).

all); *Union Carbide Corp. v. Katz*, 489 F.2d 1374 (7th Cir. 1973) (individual shareholder and president of company delivered guarantee of company's obligations to vendor); *Joe Balestieri & Co v. Comm'r of Internal Revenue*, 177 F.2d 867 (9th Cir. 1949) (company's individual owners executed personal guaranty for benefit of specific investor in contemplated joint venture); *Calcot Assoc., Ltd. v. Coast Cotton Mills*, 295 P.2d 1 (Cal. App. Div. 1956) (individual owners of cooperative association delivered guaranty of company's obligations to vendor).

38.    The only case cited by the Plan Administrator (towards the end of a string cite) that warrants any discussion is a 1931 case issued by the Nebraska Supreme Court in *Farmers' State Bank of York v. Brock*, 234 N.W. 92, 94 (Neb. 1931).[14]    There, a cooperative merchandising company, owned by 160 individual stockholders who were largely farmers, was insufficiently financed and unable to meet its financial obligations "at the bank and elsewhere as they became due."    *Id.* at 93-94.    Management and many stockholders believed that the cooperative "could not continue as a going concern unless by some means or other it could be refinanced, or arrangements made by which further extension of credit could be obtained from the banks and others."    *Id.* at 94.    To induce creditors to continue extending credit to the company, thirty-six of the company's stockholders (and later some others) signed a guaranty of payment of the company's indebtedness up to a specified amount, and delivered the document to the company's bank.    *Id.*    After several of the company's creditors sought to enforce the guarantee, the stockholders objected on various grounds, one of which was for lack of consideration.    *See id.*    On those facts, the court reasoned that the agreement was a general guarantee and "was valid as to those creditors who had knowledge of it and extended credit to

---

[14] Notably, the Plan Administrator failed to cite *Homewood Inv. Co., Inc. v. Wilt*, 632 P.2d 1140 (Nev. 1981) (discussed above), a more analogous case which disagreed with and expressly declined to follow *Farmers'*.

the association on the faith and credit of it." *Id.* at 95.  However, for those "who did not have knowledge of the guaranty, and consequently could not have relied upon it, there is no consideration." *Id.*

39.     *Farmers'* is distinguishable from this case in several key respects.  In stark contrast to LBHI, the <u>limited</u> guarantee was given by a group of farmers to the bank for the sole purpose of avoiding losses to them while the cooperative continued to operate.  *Id.* at 94.  Significantly, that case was decided long before the Securities and Exchange Act of 1934 was even enacted, and did not deal with a modern mega-investment bank such as Lehman, subject to strict reporting, accounting, and disclosure laws, among other things.  The *Farmers'* court never had occasion to consider the market impact of a global investment bank's public issuance of a "general guaranty."   Nor did the court have occasion to consider any third party beneficiary arguments, such as those applicable here.

40.     Moreover, while the creditors in *Farmers'* may have needed actual knowledge of the guarantee in order to rely on it, that certainly is not the case when a public and highly complex concern like LBHI resolves to indemnify its subsidiary's creditors and reports that assumption of debt/hold harmless agreement to the financial markets and regulators.  It simply cannot be denied that the very purpose in issuing the Resolutions to unconditionally guarantee the debts of the "Guaranteed Subsidiaries" was to induce market participants to rely on LBHI's financial backstop of those subsidiaries.

41.     Moreover, the guarantee in *Farmers'* was given for the stated, sole purpose of inducing creditors to extend credit to the company.  It is arguably reasonable to require creditor reliance in order to enforce it.  Here, to the contrary, the 2005 Resolution formed the essence of LBIE's ability to engage in highly sophisticated and risky transactions with market participants

and provided significant tax, accounting and disclosure related benefits to the entire Lehman enterprise. Thus, the Plan Administrator's reliance on the *Farmers'* case is utterly flawed and cannot sustain its veiled attempt to impose actual knowledge and reliance on the Resolutions as a condition to their enforcement.

**D.    In the Event the Court Determines that the Motion Should be Scheduled for an Evidentiary Hearing, Discovery is Necessary to Provide Highland with Information Necessary to Respond to the Motion More Adequately and Fully**

42.    Highland's Claim states a claim for relief warranting denial of the Plan Administrator's request to expunge it under Rule 12(b)(6) of the Civil Rules. However, in the event the Court does not deny the Motion outright for the cogent reasons set forth herein, the Court should schedule an evidentiary hearing on the Motion and grant Highland relief from the Temporary Litigation Injunction in order to respond to the Motion in a more complete manner.[15]

43.    To put matters in perspective, LBHI commenced this contested matter after having already obtained discovery against Highland on the issues raised in the Motion (albeit not relevant thereto), all the while knowing that upon filing the Motion, Highland would be enjoined from taking its own discovery from LBHI on those issues as a result of the Claims Procedure Order. Further, instead of electing to notice the Motion for an evidentiary Merits Hearing which would require the parties to implement an appropriate discovery schedule, the Plan Administrator purports to seek a non-evidentiary Sufficiency Hearing. The Plan Administrator

---

[15] Preliminary examples of the discovery Highland believes is fair and reasonable are depositions of, *inter alia*, the 2005 Resolution's signatories, Messrs. Fuld and Macomber, potentially the other members of the Board, and the 2008 Resolution's signatory, James J. Killerlane III. Additionally, Highland would request documentary discovery from LBHI that includes, but is not limited to: (i) minutes, agendas, resolutions and consents of the full Board's meetings relating to the Resolutions or any other similar guarantee; (ii) minutes, agendas, resolutions and consents of the Executive Committee, or any other Committee of the Board, relating to the 2005 Resolution, the 2008 Resolution or any similar guarantee; (iii) any other documentation, reports or memoranda or correspondence relating to the Resolutions or other similar guarantees or resolutions issued by LBHI for the benefit of LBIE (or any other subsidiaries) and its creditors, as well as the impetus, justification or reasons therefor, and the benefits received by the companies resulting therefrom.

relies, however, on the discovery it took from Highland, essentially converting the Motion into one for summary judgment under Rule 56 of the Civil Rules, all the while depriving Highland of the benefit of discovery to defend itself properly.

44.     It is beyond cavil that litigants should not be unfairly prejudiced in the litigation of their claims.   See, *e.g.*, *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("prevent[ing] surprise or unfair prejudice" is one of the core purposes of pleading affirmative defenses under Civil Rule 8(c)"); *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981) (consideration of unfair prejudice to opposing party is paramount in determining motion to amend pleading); *Gervis v. Berg, No.*, 00-CV-3362 (JS)(ETB), 2005 WL 3299436, at *3 (E.D.N.Y. Oct. 20, 2005) (preventing undue prejudice is exception to automatic stay of discovery applicable to securities litigation under Private Securities Litigation Reform Act of 1995 and that "[d]istrict courts have defined undue prejudice as improper or unfair treatment amounting to something less than irreparable harm" (citing cases) (internal quotation marks omitted)); *In re Enron Corp.*, No. 01-16034 AJG, 2006 WL 2400411, at *2 (Bankr. S.D.N.Y. May 10, 2006) ("risk of unfair prejudice to party opposing the stay" is recognized factor in determining whether temporary stay of discovery should be granted under Civil Rule 26(c)).   Therefore, the Court should level the playing field by ensuring that the Plan Administrator's converted motion for summary judgment is not decided without giving Highland the opportunity to take discovery.   *See Chambers*, 282 F.3d 147, 149 ("when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record").

## V.     <u>RESERVATION OF RIGHTS</u>

45.     Given the Plan Administrator noticed the Motion for a non-evidentiary Sufficiency Hearing, Highland has prepared this Response under the assumption that the Court

will not apply the evidentiary burden shifting regime traditionally applicable to contested claim objections at this time. *See In re Lehman Bros. Holding, Inc.*, 519 B.R. 47, 53 (Bankr. S.D.N.Y. 2014) (setting forth evidentiary burdens and standards for the reconciliation of contested claims). Highland expressly reserves the right to (a) supplement this Response with the information learned during any discovery, (b) argue at any evidentiary hearing that the Plan Administrator has failed to satisfy its initial evidentiary burden to rebut the *prima facie* validity of the Claim, and (c) proffer evidence with respect to the allowance of the Claim.

## VI.    <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, Highland respectfully requests that the Court (a) enter an Order (i) denying the Motion or, alternatively, (ii) scheduling an evidentiary hearing on the Motion and permitting Highland to take discovery with respect thereto and (b) grant Highland such other relief as the Courts deems just and appropriate under the circumstances.

Respectfully submitted,

DATED:      June 28, 2016

**COLE SCHOTZ P.C**.
*Attorneys for Creditor Highland CDO Master Fund, L.P.*

By:  ___/s/ Ilana Volkov_____
        Michael D. Warner, Esq.
        Ilana Volkov, Esq.
        Adam J. Sklar, Esq.
        Mark Tsukerman, Esq.
        1325 Avenue of the Americas
        19th floor
        New York, NY 10019
        (212) 752-8000
        (212) 752-8393 Facsimile