**Hearing Date:  August 16, 2016 at 10:00 a.m. (ET)**
**Objection Deadline:  July 29, 2016 at 4:00 p.m. (ET)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------- x
                                         )
In re                                    ) Chapter 11 Case No.
                                         )
Lehman Brothers Holdings Inc., et al.,   ) 08-13555 (SCC)
                                         )
        Debtors.                         ) Jointly Administered
                                         )
                                         )
------------------------------------------------------------- x
```

### NOTICE OF HEARING ON DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN CLAIMS FILED BY CITIBANK, N.A. AND WELLS FARGO, N.A. AND (B) REDUCE RELATED CLAIMS RESERVE

**PLEASE TAKE NOTICE** that, on June 29, 2016, Lehman Brothers Holdings Inc.

("LBHI" or the "Plan Administrator") and Structured Assets Securities Corporation ("SASCO")

(together, "Lehman," and collectively with their affiliated debtors in the above-captioned cases,

the "Debtors"), filed that certain Motion to (a) Disallow and Expunge Certain Claims Filed by

Citibank, N.A. and Wells Fargo, N.A. and (b) reduce related claims reserve (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on the Motion before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court") on **August 16, 2016 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, state with particularity the grounds therefor, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, be filed electronically in text searchable portable document format (PDF) with the Court in accordance with General Order M-399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the Court), by registered users of the Court's case filing system and by all other parties in interest (with a hard-copy delivered directly to the Judge's Chambers), and be served in accordance with General Order M-399, and upon the following:  (a) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 23; (b) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz,, Esq.); (c) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., Dennis C. O'Donnell, Esq., and Evan R. Fleck, Esq.), attorneys for the official committee of unsecured creditors; (d) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Paul V. Shalhoub, Esq. and Todd G. Cosenza, Esq.), attorneys for LBHI and certain of its affiliates; and (e) Rollin Braswell Fisher LLC, 8350 East Crescent Parkway, Suite

100, Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq. and Maritza

Dominguez Braswell, Esq.), attorneys for LBHI and certain of its affiliates, **so as to be actually**

**filed and received no later than July 29, 2016 at 4:00 p.m. (EST)** (the "Objection Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served

with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form of proposed order annexed to the Motion,

which order may be entered with no further notice or opportunity to be heard offered to any

party.

*[Remainder of Page Intentionally Left Blank]*

Dated: June 29, 2016
       New York, New York                      Respectfully Submitted,

By: /s/ Paul V. Shalhoub
       Paul V. Shalhoub
       Todd G. Cosenza
       WILLKIE FARR & GALLAGHER LLP
       787 Seventh Avenue
       New York, New York 10019
       Telephone:  (212) 728-8000
       Facsimile:  (212) 728-8111

       Michael A. Rollin
       ROLLIN BRASWELL FISHER LLC
       8350 East Crescent Parkway, Suite 100
       Greenwood Village, Colorado 80111
       Telephone: (303) 945-7415
       Facsimile: (303) 974-7468

       *Attorneys for Debtors Lehman Brothers*
       *Holdings Inc. and Certain of its Affiliates*

**Hearing Date: August 16, 2016 at 10:00 a.m. (ET)**
**Objection Deadline: July 29, 2016 at 4:00 p.m. (ET)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------- x
                                        )
In re                                   ) Chapter 11 Case No.
                                        )
Lehman Brothers Holdings Inc., et al.,  ) 08-13555 (SCC)
                                        )
        Debtors.                        ) Jointly Administered
                                        )
                                        )
---------------------------------------------------------- x
```

**DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN CLAIMS**
**FILED BY CITIBANK, N.A. AND WELLS FARGO, N.A. AND**
**(B) REDUCE RELATED CLAIMS RESERVE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

JURISDICTION ........................................................................................................4

BACKGROUND ......................................................................................................4

OVERVIEW OF THE CLAIMS ................................................................................7

      A.     The Citibank Claims ....................................................................7

      B.     The CDO Claims...........................................................................10

      C.     POC 32168 ....................................................................................12

RELIEF REQUESTED..............................................................................................12

BASIS FOR RELIEF REQUESTED.........................................................................12

      A.     Generally.......................................................................................12

      B.     Citibank and Wells Fargo Have Not Met Their Obligations Under Their
            Contractual Agreements...............................................................14

      C.     Citibank and Wells Fargo Bear the Burden of Proving the Claims.......................16

      D.     POC 32168 Previously Was Disallowed and Expunged ......................................18

      E.     The SASCO Reserve Should Be Reduced and Released.....................................19

NOTICE....................................................................................................................19

CONCLUSION..........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG),
    2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ................................................16

*In re Chateaugay Corp.*, 53 F.3d 478 (2d Cir. 1995) ....................................................................12

*In re Chateaugay*, No. 89 Civ. 5994 (CSH), 1991 WL 60527 (S.D.N.Y. Apr. 8, 1991) ..............18

*In re DePugh*, 409 B.R. 125 (Bankr. S.D. Tex. 2009) ....................................................................18

*In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y. 2010) ...........................................................17

*In re Oneida Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009) ..............................................................16

*In re Porter*, 374 B.R. 471 (Bankr. D. Conn. 2007) ......................................................................17

*In re Rockefeller Ctr. Props.*, 272 B.R. 524 (Bankr. S.D.N.Y. 2000) ...........................................17


<u>Statutes</u>

11 U.S.C. § 502(b)(1) ......................................................................................................................12

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured

Assets Securities Corporation ("SASCO") (together, "Lehman," and collectively with their

affiliated debtors in the above-captioned cases, the "Debtors"), submit this motion (the

"Motion"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") to:  (a) disallow and expunge (i) Proof of Claim Numbers 22639 and 22775 (collectively,

the "Citibank Claims") filed by Citibank, N.A. ("Citibank") and (ii) Proof of Claim Numbers

32164 and 32166 (collectively, the "CDO Claims") filed by Wells Fargo, N.A. ("Wells Fargo");

(b) confirm the prior disallowance and expungement of Proof of Claim Number 32168 ("POC

32168," and collectively with the Citibank Claims and CDO Claims, the "Claims") filed by

Wells Fargo; and (c) authorize the reduction and release of the related claims reserve.  In support

of this Motion, the Plan Administrator has filed the Declaration of Zachary Trumpp, annexed

hereto as Exhibit A, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Citibank Claims were filed nearly seven years ago by Citibank, as trustee on

behalf of two trusts, SASCO 2006-RM1 and SASCO 2007-RM1, that issued securities backed

by pools of reverse mortgage loans (together the "Citi Reverse Mortgage Trusts").  (*See*

Declaration of Paul V. Shalhoub in Support of Debtors Motion to (A) Disallow and Expunge

Certain Claims Filed by Citibank, N.A. and Wells Fargo, N.A. and (B) Reduce Related Claims

Reserve, dated June 29, 2016 ("Shalhoub Decl.") at Ex. A).  The Citibank Claims assert "no less

than" approximately $930 million in claims for alleged breaches of representations and

warranties and document deficiencies (the "RMBS Claims") and other claims against LBHI and

1

SASCO for damages allegedly incurred by the Citi Reverse Mortgage Trusts and Citibank as trustee (the "Miscellaneous Claims").

2.    The Citibank Claims were filed as a prophylactic measure, as evidenced by the fact that they assert damages in excess of the entire unpaid principal balance of the mortgage loans in the trusts as of June 30, 2009, and that Citibank has done nothing to prosecute them in the four years since the Debtors first objected to them or the nearly seven years since they were filed.  Indeed, Citibank (a) to Lehman's knowledge, has failed to review the mortgage loans in the Citi Reverse Mortgage Trusts to determine if cognizable breaches or document exceptions exist for which liability arises, (b) has ignored Lehman's requests for detail and support for the RMBS Claims and Miscellaneous Claims, and (c) has failed to satisfy its obligations under the various agreements governing the relevant trusts ("Governing Agreements"), bankruptcy law, and the Court's Bar Date Order, all of which require Citibank to assert specific claims accompanied by supporting documentation.

3.    The CDO Claims also were filed nearly seven years ago, but by Wells Fargo, as trustee on behalf two trusts, LMT 2008-3 and LMT 2008-4 (the "CDO Trusts"), which issued notes that are secured by securities ("Underlying Securities") issued by certain Lehman-sponsored residential mortgage-backed securitization trusts.  (*See* Shalhoub Decl., Ex. B).  The CDO Claims do not allege any specific or minimum amount of damages and assert that SASCO may be liable for "certain reimbursement and other obligations" and "breaches of representations and warranties relating to" the Underlying Securities.  (*See* Shalhoub Decl., Ex. B at addendum).

4.    The CDO Claims are even more equivocal than the Citibank Claims, indicating merely that Wells Fargo will amend them "*if* it discovers any breaches of representations and warranties by SASCO, *if* SASCO becomes liable on account of any reimbursement or other

2

obligations, or *if* [Wells Fargo] discovers any other breaches of SASCO's duties, . . . and the amount of SASCO's liability can be determined" under the agreements governing the CDOs (the "CDO Agreements"). (*Id.* at addendum (emphases added)). And like Citibank, Wells Fargo has done nothing to prosecute the CDO Claims in the nearly seven years since they were filed. Nor has it amended them to identify any SASCO liability.

5.      POC 32168 asserts RMBS Claims against SASCO on behalf of the SARM 2004-18 trust. [1] (*See* Shalhoub Decl., Ex. C) That trust is subject to the RMBS protocol (the "Protocol") that was established by the Court's December 29, 2014 order (the "Protocol Order" ECF 47569) and POC 32168 previously was disallowed and expunged by the Protocol Order because Law Debenture Trust Company of New York ("Law Debenture"), as successor trustee to Wells Fargo, failed to submit any RMBS Claims against SASCO for the trust by the Protocol's March 31, 2016 bar date (the "Overall Claim File Cut-Off Date"). Thus, this Motion seeks to confirm POC 32168's prior disallowance and expungement.

6.      Lehman and creditors holding valid claims are prejudiced by Citibank's and Wells Fargo's failure to properly assert and establish the validity of their claims. The Plan Administrator has made substantial progress in liquidating the Debtors' estates, but actions and inactions like those of Citibank and Wells Fargo in respect of the Citibank Claims and CDO Claims impede further progress. As the Court is aware, the Debtors presently maintain a reserve sufficient for $250 million worth of allowed claims similar to those asserted by Citibank and Wells Fargo in the Claims ("SASCO Reserve"). And although the Court recently has disallowed and expunged nearly all such claims against SASCO on account of which the SASCO Reserve is

---

[1] Though POC 32168 states on in face that it was filed on behalf of the SARM 2004-20 trust (*see* Shalhoub Decl, Ex. C at 1), Exhibit A of the claim indicates that it asserts claims on behalf of SARM 2004-18.

3

being maintained,[2] the Plan Administrator cannot release the SASCO Reserve because Citibank's and Wells Fargo's vague, unsupported, and (as to the Citibank Claims) grossly overstated claims are still pending.  For the reasons explained below, the Claims should be disallowed and expunged and the SASCO Reserve should be reduced and released to rightful claimants.

## JURISDICTION

7.      This Court has subject matter jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Debtors' confirmed plan (the "Plan"), and paragraph 77 of the order confirming the Plan.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8.      By order dated July 2, 2009 (the "Bar Date Order," ECF 4271), this Court established September 22, 2009 (the "Bar Date") as the deadline to file proofs of claim against the Debtors.  On or around the Bar Date, Citibank and Wells Fargo filed the Claims.  The Citibank Claims against LBHI and SASCO are nearly identical, asserting approximately $930 million in RMBS Claims and other claims premised on allegations that, among other things, LBHI and SASCO (i) breached various representations and warranties regarding the quality and characteristics of approximately 3,333 mortgage loans, and (ii) provided deficient mortgage loan files to the Citi Reverse Mortgage Trusts, when they sold loans to those trusts.

---

[2]  As discussed below, by order dated June 27, 2016 (the "Protocol Expungement Order") (ECF 53163), other than the Claims, the Court disallowed and expunged all proofs of claim that related to the SASCO Reserve.  The Claims subject to this Motion were not expunged by the Protocol Expungement Order for various reasons.  First, the Citibank Claims fell outside the scope of the Protocol, which was established pursuant to a cross-motion filed by Lehman in response to a motion to estimate and allow claims brought by certain RMBS trustees, but not Citibank. Second, the CDO Claims also fell outside the Protocol because it only applied to RMBS Claims.  Lastly, the Debtors inadvertently omitted POC 32168 from their motion to expunge claims not timely submitted under the Protocol (the "Protocol Expungement Motion") (ECF 52640).

4

9.      The Citibank Claims include broad allegations regarding the obligations of LBHI

and SASCO under the Governing Agreements, but identify no specific deficient mortgage loan

files, breaches of representations and warranties, or other grounds for liability.  Likewise, the

CDO Claims allege that SASCO may be liable under the CDO Agreements, but make no attempt

to specify SASCO's reimbursement obligations, breaches of representations and warranties, or

other grounds for liability, if any.  Citibank and Wells Fargo also have failed to provide any

documentation supporting liability, as required by the Bar Date Order,[3] nor have they amended

the Citibank and CDO Claims in the nearly seven years since those claims were filed to provide

more current and accurate information.

10.      In an effort to assess the validity of the Claims, the Plan Administrator began

contacting Citibank and Wells Fargo in the summer of 2010 and requested that mortgage loan-

level evidentiary support be delivered no later than December 31st of that year.  In response to

Lehman's requests, Citibank and Wells Fargo supplied no mortgage loan data and admitted that

they had not identified any specific breaches and would not expend any further effort to identify

breaches.

11.      Due to the dearth of specific assertions and support included with the Citibank

Claims, CDO Claims, and claims submitted on behalf of other RMBS trusts, the Debtors were

unable to evaluate their merit.  Accordingly, on March 14, 2011, the Plan Administrator filed the

One Hundred and Ninth Omnibus Objection to the Claims ("Insufficient Documentation

Objection") (ECF 15008) seeking to disallow such claims, on the basis that they violated the Bar

Date Order by not providing sufficient supporting documentation.

---

[3] A more detailed description of the Claims is set forth below.

5

12.     In response to the Plan Administrator's objection, certain securitization trustees allowed their claims to be expunged, and others, including Citibank, transferred nearly all of their claims to other entities as successor trustees.  Citibank, however, chose to remain as trustee for the Citi Reverse Mortgage Trusts and Wells Fargo remained as trustee for the CDO Trusts. After argument, the Court reserved decision on the Insufficient Document Objection, but noted on the record that "if there are claims, the *trustees would be put to their proof*, and whether they can actually succeed in carrying a burden of proof establishing residential and mortgage loan breaches . . . would be extraordinarily difficult."  (*See* 6/30/2011 Hearing Tr. at 71 (ECF 18251) (emphasis added)).

13.     In connection with consummation of the Plan, on February 22, 2012, the Debtors agreed with Citibank, Wells Fargo, and other trustees to establish a reserve in an aggregate amount sufficient for a $5 billion Class 7 (general unsecured) claim against LBHI and SASCO, comprised of a $4.75 billion reserve for the claims filed by the trustees against LBHI and a $250 million reserve for the claims filed by the trustees against SASCO. (*See* Order Pursuant To Section 8.4 Of The Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors And Sections 105(A), 502(C) And 1142(B) Of The Bankruptcy Code Estimating The Amounts Of Claims Filed By Indenture Trustees On Behalf Of Issuers Of Residential Mortgage-Backed Securities For Purposes Of Establishing Reserves, "RMBS Reserve Order" (ECF 25643)).

14.     In October 2014, the Plan Administrator moved to establish the Protocol, but the Citibank and CDO Claims were not included within the scope of the Protocol as explained above.  (*See* fn. 2, above).

6

15.     On December 29, 2014, the Court approved the Protocol and established deadlines for the completion of various tasks related to reconciling and determining RMBS claims relating to the 405 RMBS trusts (which did not include the two Citi Reverse Mortgage Trusts) subject to the Protocol.  Specifically, the Protocol required the RMBS trustees for those trusts subject to the Protocol to review the related population of loan files and assert claims by March 31, 2016.  The Protocol Order also expressly provided that any claims not asserted by that date would be deemed waived and released by the relevant RMBS trustees and disallowed and expunged in the bankruptcy case.  (*See* Exhibit A of the Protocol Order, § III(d)(iii)).  The relevant RMBS trustees (which, again, did not include Citibank) asserted thousands of RMBS claims under the Protocol Order, but no claims were asserted against SASCO.  Accordingly, on June 27, 2016, this Court entered an order disallowing and expunging all proofs of claim filed against SASCO for which the SASCO Reserve is being maintained, other than the Citibank Claims, CDO Claims, and POC 32168, which the Debtors inadvertently omitted from the Protocol Expungement Motion.

16.     Since the filing of the Citibank and CDO Claims, Citibank and Wells Fargo have failed to take any steps to pursue them.  Lehman again recently attempted to contact Citibank's counsel in an effort to determine whether Citibank is pursuing the Citibank Claims, but received no response.  Prior attempts to obtain information from Wells Fargo in respect of the CDO Claims similarly were unsuccessful.  As a result, Lehman is compelled to press this objection.

## OVERVIEW OF THE CLAIMS

### A.    The Citibank Claims

17.     The Citibank Claims assert: (a) RMBS Claims, that is, claims for alleged breaches of representations and warranties and document deficiencies asserted by Citibank in its capacity as trustee for the Citi Reverse Mortgage Trusts; and (2) Miscellaneous Claims, including (a)

7

unspecified claims relating to Lehman's alleged failure to satisfy other obligations under the

Governing Agreements and unspecified and unliquidated claims asserted in the event that "it is

determined that [Lehman] had engaged in any fraud or other improper acts . . . that placed

[Lehman] in economic distress or otherwise directly or indirectly damaged" the Citi Reverse

Mortgage Trusts; and (b) claims asserted by Citibank on its own behalf for custodial fees that

LBHI and SASCO allegedly are obligated to pay under the Governing Agreements. (*See*

Shalhoub Decl., Ex. A, Proofs of Claim 22639 and 22775 at 4-5)

18.     The residential mortgage-backed securities covered by the Citibank Claims were

or are secured by a pool of reverse mortgage loans aggregated by Lehman and sold into the Citi

Reverse Mortgage Trusts.  Payments on the underlying reverse mortgage loans are utilized to

make payments on the RMBS.  In connection with the sale of mortgage loans into the trusts,

limited representations and warranties were made by the selling entities to the trust relating to the

quality and nature of the mortgage loans, the borrowers, and the properties.  The Governing

Agreements for these transactions (Mortgage Loan Sale and Assignment Agreements, Transfer

and Servicing Agreements, Trust Agreements, and Indentures) set forth the respective rights and

obligations of the parties to the agreements, such as providing for repurchase obligations and

establishing the requirements that trigger such obligations.  Copies of these agreements as they

relate to SASCO 2006-RM1 are attached to the Shalhoub Decl. as Exhibits D, E, F, and G,

respectively.[4]

19.     The gravamen of Citibank's representation and warranty claims is that Lehman

breached mortgage loan-level representations and warranties in the Governing Agreements.  To

trigger Lehman's obligation to compensate the Citi Reverse Mortgage Trusts for losses, if any,

---

[4]  The SASCO 2007-RM1 Governing Agreements are identical in all material respects.

8

the Governing Agreements specifically require Citibank, as trustee, to prove each of the

following elements for ***each mortgage loan***: (a) a breach of a representation and warranty

("<u>Breach</u>"); (b) the breach materially and adversely affected the value of the mortgage loan

("<u>Material & Adverse Effect</u>"); and (c) prompt notice of the Breach was provided to Lehman

("<u>Notice</u>" and collectively the "<u>Rep and Warranty Required Elements</u>").  ) (Shalhoub Decl., Ex.

D § 1.04(c); Ex. E § 3.02(c)).  The Governing Agreements unambiguously provide that these

Required Elements must be satisfied for ***each mortgage loan***.

> 20.     The gravamen of Citibank's document deficiency claims is that SASCO failed to
deliver complete mortgage files for each mortgage loan.  In order to require SASCO to
compensate the Citi Reverse Mortgage Trusts for their losses, if any, arising out of document
deficiencies, the Governing Agreements require Citibank to prove each of the following for ***each
mortgage loan***: (a) a document or documents constituting part of a mortgage file is missing, does
not appear regular on its face, or appears to be unrelated to the mortgage loans (a "<u>Material
Defect</u>"); (b) the Material Defect has not been cured; and (c) a loss has been incurred with
respect to such mortgage loan, which loss is attributable to the failure of SASCO to cure such
Material Defect (the "<u>Document Defect Required Elements</u>").  (Shalhoub Decl., Ex. E § 2.02(c)).
The Governing Agreements unambiguously provide that the Document Defect Required
Elements must be satisfied for ***each mortgage loan***.

> 21.     In addition to the RMBS Claims, Citibank has asserted other Miscellaneous
Claims, both on behalf of the Citi Reverse Mortgage Trusts and on its own behalf as trustee, e.g.,
claims for custodial fees that LBHI or SASCO allegedly owe Citibank under the Governing
Agreements.  To the extent any of these claims arise out of the Governing Agreements, Citibank
must articulate a basis for the claims with reference to the specific agreement and provision, and

9

provide sufficient evidence giving rise to liability.  To the extent the Miscellaneous Claims arise

under other theories of liability, the Bar Date Order requires that they be articulated specifically

and cite supporting documentation.

22.    As of the filing of this Motion and nearly seven years after the claims were filed,

Citibank still has not adequately pled the Citibank Claims under the Governing Agreements,

bankruptcy law, or the Bar Date Order, nor has it provided the required loan-level (or other)

evidence necessary to support the claims.  Indeed, Citibank has not articulated a single Breach or

Material Defect as to any mortgage loan for which it contends that LBHI and SASCO bear

liability.  Instead, Citibank asserts aggregate claim amounts approximating $930 million

(representing the unpaid principal amount of the mortgage loans in the related trusts as of June

30, 2009).

**B.    The CDO Claims**

23.    The CDO Claims indicate that SASCO may have "various liabilities" to the CDO

Trusts under the CDO Agreements including for (1) repurchase obligations arising from breaches

of the CDO Agreements ("CDO Repurchase Claims"); (2) reimbursement obligations with

respect to the same agreements ("CDO Reimbursement Claims"); and (3) other unspecified other

obligations ("Unspecified CDO Claims").  (*See generally* Shalhoub Decl., Ex. B).

24.    The certificates sold by the CDO Trusts ("CDO Certificates") covered by the

CDO Claims were or are secured by a pool of Lehman-sponsored Underlying Securities

purchased from Lehman by SASCO and sold to the CDO Trusts.  Payments on the Underlying

Securities are utilized to make payments on the CDO Certificates.  In connection with the sale of

the Underlying Securities, limited covenants, representations, and warranties were made by the

selling entities to the CDO Trusts relating to the sellers and the Underlying Securities.  The CDO

Agreements for these transactions (Trust Agreements and Securities Purchase Agreements) set

10

forth the respective rights and obligations of the parties to the agreements.  Copies of these

agreements as they relate to LMT 2008-3 are attached to the Shalhoub Decl. as Exhibits H and I,

respectively.[5]

25.      Though Well Fargo asserts CDO Repurchase Claims,[6] the CDO Agreements

provide that SASCO is obligated to repurchase a given Underlying Security only if such security

"has not been delivered or transferred to the Trustee, together . . . with any documentation

necessary to effect the assignment thereof to the Trustee" by the closing date (a "Defective

Delivery").  (*See* Shalhoub Decl., Ex. H § 2.01(a)).  The CDO Agreements require Wells Fargo

to prove a Defective Delivery as to each Underlying Security it alleges SASCO is obligated to

repurchase.  (*See id.*).

26.      In addition to the CDO Repurchase Claims, Wells Fargo has asserted CDO

Reimbursement Claims and other Unspecified CDO Claims on behalf of the CDO Trusts.  To the

extent any of these claims arise out of the CDO Agreements, Wells Fargo must articulate a basis

for the claims with reference to the specific agreement and provision, and provide sufficient

evidence giving rise to liability.  To the extent that such claims arise under other theories of

liability, the Bar Date Order requires that they be articulated specifically and cite supporting

documentation.

27.      As of the filing of this Motion and nearly seven years after the CDO Claims were

filed, Wells Fargo still has not adequately pled the CDO Claims under the CDO Agreements,

bankruptcy law, or the Bar Date Order.  In fact, Wells Fargo has not even amended the CDO

---

[5] Copies of the LMT 2008-4 CDO Agreements are identical in all material respects.

[6] The RMBS trusts that issued the Underlying Securities have the right to make repurchase demands to enforce loan-level representations and warranties of the Seller and Depositor as to the mortgage loans transferred to those trusts, but the CDO Trusts have no such rights.  Instead, the CDO Trusts receive the proceeds of any mortgage loan repurchases derivatively, as distributions on the Underlying Securities.

Claims to indicate whether it believes SASCO has any liability to the CDO Trusts.  Further, the

RMBS trusts that issued the Underlying Securities securing the CDO Trusts did not themselves

make any claims against SASCO under the Protocol and the proofs of claim related to those

RMBS trusts previously were disallowed and expunged.

**C.    POC 32168**

28.    As explained above, POC 32168 asserts only RMBS Claims against SASCO on

behalf of the SARM 2004-18 trust.  The trust's claims against SASCO previously were

disallowed and expunged by the Protocol Order because the trustee, Law Debenture, submitted

no RMBS Claims against SASCO for the trust by the Protocol's March 31, 2016 Overall Claim

File Cut-Off Date.

**RELIEF REQUESTED**

29.    The Plan Administrator also respectfully requests that the Court enter an order,

substantially in the form attached hereto as Exhibit B and pursuant to section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007(d), disallowing and expunging the Claims and

authorizing the reduction of the SASCO Reserve to zero and its release to valid claimants.

**BASIS FOR RELIEF REQUESTED**

**A.    Generally**

30.    Section 502(b)(1) of the Bankruptcy Code provides that a claim should be

disallowed to the extent that it "is unenforceable against the debtor and property of the debtor,

under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  A valid bankruptcy claim exists

only if the claimant can establish "all of the elements necessary to give rise to a legal

obligation—'a right to payment'—under the relevant non-bankruptcy law." *In re Chateaugay

Corp.*, 53 F.3d 478, 497 (2d Cir. 1995) (citation omitted).  Thus, for the Citibank Claims to be

allowed, the Governing Agreements and section 502(b)(1) of the Bankruptcy Code require that

12

Citibank prove each Rep and Warranty Required Element and each Document Deficiency

Required Element for each mortgage loan for which it asserts damages.

31.      For the past seven years, Citibank has failed to articulate or provide any evidence

for any one of these elements for any of the approximately 3,333 mortgage loans underlying the

Citibank Claims.  Consequently, those claims are unenforceable against LBHI and SASCO under

any agreement or applicable law.

32.      The Citibank Claims consist only of broad allegations and identify sections of the

Governing Agreements under which LBHI and SASCO could potentially have liability.  For

each proof of claim, Citibank by its own admission provided only "(a) the names of the trusts

involved in the transactions . . . ; (b) the number of underlying residential mortgage loans

included in each trust; (c) the aggregate unpaid principal balance for the mortgage loans in each

transaction as of June 30, 2009; and (d) certain fees and expenses incurred as of June 30, 2009."

(*See* Citibank's Response to the Insufficient Documentation Objection at 4 (ECF 17883)).

33.      The Citibank Claims purport to assert damages in the aggregate principal amount

of mortgage loans held by the Citi Reverse Mortgage Trusts as of June 30, 2009.  Such amount

bears no relation to damages, if any, that may have been incurred by the Citi Reverse Mortgage

Trusts.  In fact, for the claimed amount to reflect actual damages, (a) each and every mortgage

loan in the trusts would have to sustain a breach of a representation and warranty or each

mortgage file must have had a Material Defect, (b) such breach would have to be found to have

had a material and adverse effect on the value of each and every mortgage loan, or such Material

Defect must have resulted in a realized loss on each and every mortgage loan, and (c) each

mortgage loan would have to liquidate with zero recovery (*i.e.*, the underlying collateral is

worthless).  Indeed, Citibank has acknowledged in open court that the Citibank Claims are

13

grossly overstated. (*See* 6/30/2011 Hearing Tr. at 43 (ECF 18251) ("[W]e don't stand before this Court and suggest that the claims should be allowed in the total aggregate unpaid principal balance of the mortgage loans in each trust. That would not be an accurate presentation of what we think the amount would be.")). The claimed amount simply is not supportable and Citibank has made no effort to determine which reverse mortgage loans and representations LBHI or SASCO may have breached to create liability to the Citi Reverse Mortgage Trusts. The Citibank Claims should be disallowed and expunged.

34.     Likewise, Wells Fargo has failed to articulate breaches or other events giving rise to liability of SASCO, nor has it provided any evidence to support the CDO Claims as required by the CDO Agreements. As noted above, the CDO Claims fail to assert even a minimum amount of damages for which SASCO is liable. Consequently, the CDO Claims are unenforceable under the CDO Agreements and applicable law and should be disallowed and expunged.

### B.    Citibank and Wells Fargo Have Not Met Their Obligations Under Their Contractual Agreements

35.     The RMBS Claims asserted by Citibank against SASCO involve alleged document deficiency claims for incomplete mortgage loan files. Pursuant to Section 2.01(b) of the Transfer and Servicing Agreements, SASCO, as depositor, was obligated to deliver the mortgage file related to each mortgage loan. (*See* Shalhoub Decl, Ex. E § 2.01(b)). The custodian, Wells Fargo, was then required to review each mortgage file within 45 days of the applicable closing date to confirm that all documents required to be included in such mortgage file were so included and deliver a certification stating as such. (*See id.* § 2.02(b)). If documents were missing from the mortgage file, the custodian was required to provide an exception report detailing the Material Defects and demand the cure of such defect. (*See id.* § 2.02(c)). The

depositor then had an opportunity to cure such document defect within 90 days of the issuance of

the exception report. (*Id*.).  Additionally, under Section 2.02(d) of the Transfer and Servicing

Agreements, within 180 days following the closing date, the custodian was required to deliver a

final certification evidencing the completeness of the mortgage files in its possession or control,

with any exceptions noted thereto.

36.     SASCO has no record of having received any notice from the custodian of any

Material Defect in the mortgage files within the required time frames or subsequently.  And other

than filing the Citibank Claims, Citibank has taken no action to pursue the repurchase of loans, if

any, whose mortgage files contain Material Defects even though such action is required by the

Governing Agreements.  (*See id.* (providing that to "the extent that [the custodian] identifies any

. . . Material Defects, the Indenture Trustee shall proceed to enforce its rights [against the

depositor].")).  Therefore, it is reasonable to presume from Citibank's inaction that the custodian

received the all of the mortgage files and SASCO should have no liability.

37.     The RMBS Claims against LBHI are generally for alleged breaches of

representations and warranties set out in the Governing Agreements.  Absent the Debtors'

bankruptcy, Citibank would have had the right to cause a repurchase of a mortgage loan by the

Depositor, the Seller or the Transferor, as applicable, for which Citibank could demonstrate that

such breach caused a "material and adverse" effect on the value of the mortgage loan.  (*See*

Shalhoub Decl, Ex. E § 2.03; Ex. D § 1.04(c)).  Despite these contractual requirements, Citibank

has failed to demonstrate the existence of any breach, much less one that has resulted in a

"material and adverse" effect on the value of any mortgage loan.  The Citibank Claims should be

disallowed.

38.     The CDO Claims against SASCO are generally for breaches of certain obligations under the CDO Agreements.  As to the CDO Repurchase Claims, Wells Fargo has not alleged a single Defective Delivery as required by the CDO Agreements.  Nor has Wells Fargo alleged any other facts which would give rise to liability under such agreements.  In fact, even though the CDO Claims themselves indicate that Wells Fargo would amend them in the event that it discovered events triggering any SASCO liability, it has not once done so in the past seven years.  The fair implication of Wells Fargo's failure to so amend the proofs of claim is that it has no viable claims.

39.     Furthermore, as noted above, the RMBS trusts that issued the Underlying Securities which serve as collateral for the CDO Trusts failed to submit any RMBS claims under the Protocol against SASCO and thus any SASCO liability on such claims previously was expunged by the Protocol Order and the Protocol Expungement Order.  Accordingly, the CDO Claims should be disallowed and expunged in their entirety.

C.      **Citibank and Wells Fargo Bear the Burden of Proving the Claims**

40.     Under section 502 of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 of the title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502.  Once such an objection is made, as here, the burden shifts to Citibank to prove by a preponderance of the evidence that under applicable law the Claims should be allowed.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden . . . shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citation omitted); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007) ("If the objecting party rebuts the claimant's prima facie case, 'it is for the claimant to prove his claim, not for the

16

objector to disprove it.'") (citation omitted); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539

(Bankr. S.D.N.Y. 2000) ("Once an object[or] offers sufficient evidence to overcome the prima

facie validity of the claim, the claimant is required to meet the usual burden of proof to establish

the validity of the claim.").

41.     Moreover, the Bar Date Order requires, among other things, that "each Proof of

Claim must: . . . (vi) include supporting documentation or an explanation as to why

documentation is not available." (Bar Date Order at 6).  The Bar Date Order further provides

that "any holder of a claim against the Debtors who is required, but fails to file a proof of such

claim in accordance with the Bar Date Order on or before the Bar Date . . . specifying the

applicable Debtor and other requirements set forth herein, shall be forever barred, estopped, and

enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect

thereto) . . . ." (*Id.* at 9-10).  Citibank and Wells Fargo have not complied with these

requirements, either by the Bar Date (September 22, 2009) or in the nearly seven years since.

42.     Furthermore, it is their obligation to provide supporting documentation for the

Citibank and CDO Claims or they are not entitled to a presumption of validity.  Courts in the

Second Circuit and elsewhere recognize that failure to support a claim with the documentation

mandated by Bankruptcy Rule 3001(c) deprives the claim of the presumption of validity.  *See In

re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) ("Failure to attach the

documentation required by Rule 3001 will result in the loss of the prima facie validity of the

claim."); *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("If . . . the claimant fails to

allege facts in the proof of claim that are sufficient to support the claim, e.g., by failing to attach

sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), . . . [the claim] is . . .

deprived of any *prima facie* validity which it could otherwise have obtained." (quotations

17

omitted)); *see also In re DePugh*, 409 B.R. 125, 135 (Bankr. S.D. Tex. 2009) ("If . . . an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome . . ."). Citibank and Wells Fargo have failed to satisfy their burden and have demonstrated no intention of doing so.

43.    Courts have held that where a claimant refuses to support its claim after a debtor's request for more information, the claim should be disallowed and expunged. *See In re Chateaugay*, No. 89 Civ. 5994 CSH), 1991 WL 60527 (S.D.N.Y. Apr. 8, 1991). For example, in *In re Chateaugay* the District Court affirmed the bankruptcy court's decision to expunge 149 claims on the grounds that they were insufficiently specific and that the claimant had failed to comply with the debtor's request, lodged "over a year earlier," for more information about the claims. *See In re Chateaugay* 1991 WL 60527 at *2-5. Here, Lehman first requested more information about the Claims from Citibank and Wells Fargo approximately *six years ago*, but additional information was not provided. More recent requests also have not been successful. Accordingly, expungement of the Citibank and CDO Claims is appropriate.

**D.      POC 32168 Previously Was Disallowed and Expunged**

44.    As described above, the trust covered by POC 32168, SARM 2004-18, was subject to the Protocol Order, including the requirement that Law Debenture submit all of the trust's RMBS claims to the Protocol by the Overall Claim File Cut-Off Date and that any un-submitted claims would be automatically disallowed and expunged. Law Debenture submitted no such RMBS claims against SASCO on behalf of SARM 2004-18 and thus, all such claims were disallowed and expunged by the Protocol Order. Although the Debtors inadvertently omitted POC 32168 from the schedule of proofs of claim to be expunged pursuant to the Protocol Expungement Motion, Lehman respectfully requests (for the same reasons that the Court granted the Protocol Expungement Motion) that the Court enter an order specifically

18

identifying POC 32168 so that the official claims register in these cases can be appropriately adjusted to reflect its prior disallowance.

### E.   The SASCO Reserve Should Be Reduced and Released

45.     As the Court is aware, the Debtors' Protocol Expungement Motion sought not only the disallowance and expungement all proofs of claim barred by the Protocol Order, but also the reduction and release of the SASCO Reserve.  At the June 9, 2016 hearing on the Protocol Expungement Motion, this Court ruled that it would grant the motion, including the request to release the SASCO Reserve.

46.     After the hearing and as they were preparing for its release, the Debtors realized that the SASCO Reserve also was held on behalf the Claims that are the subject of this Motion. Thus, although the Court previously has ordered that the SASCO Reserve may be released, the Debtors cannot do so until the Claims are resolved.  Accordingly, for the same reasons that the Claims should be disallowed and expunged, Lehman respectfully submits that the SASCO Reserve should be reduced and released to valid claimants.

### NOTICE

47.     Lehman will provide notice of this Motion to:  (a) the U.S. Trustee for Region 2; (b) the attorneys for the Creditors' Committee; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney for the Southern District of New York; (f) counsel for Citibank; (g) counsel for Wells Fargo; and (h) all other parties entitled to notice in accordance with the procedures set forth in the Second Amended Order, entered on June 17, 2010, governing case management and administrative procedures for these cases (ECF 9635), as may be modified by the Confirmation Order.  The Plan Administrator submits that no other or further notice is necessary or required.

48.     Except as set forth herein, no previous request for the relief sought herein has been made to this or any other Court.

49.     The Plan Administrator has cited to the authorities upon which it relies within the body of this Motion.  Accordingly, the Plan Administrator respectfully submits that this Motion satisfies the requirement of Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted herewith.

## **CONCLUSION**

WHEREFORE, the Plan Administrator respectfully requests entry of an order, substantially in the form of annexed hereto as Exhibit B, granting the relief requested herein and such other and such other and further relief as the Court may deem just or proper.

Dated: June 29, 2016
       New York, New York                          Respectfully Submitted,

                                        By: /s/ Paul V. Shalhoub
                                            Paul V. Shalhoub
                                            Todd G. Cosenza
                                            WILLKIE FARR & GALLAGHER LLP
                                            787 Seventh Avenue
                                            New York, New York 10019
                                            Telephone:  (212) 728-8000
                                            Facsimile:  (212) 728-8111

                                            Michael A. Rollin
                                            ROLLIN BRASWELL FISHER LLC
                                            8350 East Crescent Parkway, Suite 100
                                            Greenwood Village, Colorado 80111
                                            Telephone: (303) 945-7415
                                            Facsimile: (303) 974-7468

                                            *Attorneys for Debtors Lehman Brothers Holdings
                                            Inc. and Certain of its Affiliates*

# <u>EXHIBIT A</u>

## Declaration of Zachary Trumpp

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

| | ) | |
|---|---|---|
| In re | ) | Chapter 11 Case No. |
| | ) | |
| Lehman Brothers Holdings Inc., <u>et al.</u>, | ) | 08-13555 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

--------------------------------------------------------- x

### DECLARATION OF ZACHARY TRUMPP IN SUPPORT OF DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE CERTAIN CLAIMS FILED BY CITIBANK, N.A. AND WELLS FARGO, N.A. AND (B) REDUCE RELATED CLAIMS RESERVE

I, Zachary Trumpp, hereby certify and declare as follows based upon my own personal information and knowledge:

1.      I am an employee in Claims Management at Lehman Brothers Holdings Inc. ("<u>LBHI</u>").  I am of sound mind and in all respects qualified to make this Declaration.

2.      I submit this Declaration in support of the Debtors' Motion to (a) Disallow and Expunge Certain Claims Filed by Citibank, N.A. and Wells Fargo, N.A. and (b) Reduce Related Claims Reserve (the "<u>Motion</u>").

3.      I have reviewed the Motion and the statements and assertions therein are true and correct, to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct to the best of my knowledge.

Dated:  June 29, 2016

/s/ Zachary Trumpp
_____

Zachary Trumpp

# EXHIBIT B

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         )
In re                                                    )    Case No. 08-13555 (SCC)
                                                         )
Lehman Brothers Holdings Inc., et al.,                   )    Chapter 11
                                                         )
            Debtors.                                     )    Jointly Administered
                                                         )
-------------------------------------------------------- x

**ORDER GRANTING DEBTORS' MOTION TO (A) DISALLOW AND EXPUNGE
CERTAIN CLAIMS FILED BY CITIBANK, N.A. AND WELLS FARGO, NA. AND (B)
REDUCE RELATED CLAIMS RESERVE**

Upon consideration of the motion (the "Motion")[1] of the above-captioned debtors

(collectively, the "Debtors") for entry of an order granting Debtors' Motion to (a) Disallow and

Expunge Certain Claims filed by Citibank, N.A. and Wells Fargo, N.A. and (b) Release Related

Claims Reserve; and upon the Declaration of Zachary Trumpp; and it appearing that this Court

has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of

the Plan and paragraph 77 of the order confirming the Plan; and it appearing that venue of these

Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28

U.S.C. §157(b); and sufficient notice of the Motion having been given; and after due deliberation

and sufficient cause appearing therefore, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted.

---

[1] Capitalized terms not defined herein shall have the same meanings ascribed to them in the Motion.

2.        Proof of Claim Numbers 22639, 22775, 32164, 32166, and 32168 are disallowed and expunged in their entirety.

3.        The Debtors are authorized to reduce and release the SASCO Reserve.

4.        The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

5.        All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

6.        This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2016
        New York, New York


                              _____
                              THE HONORABLE SHELLEY C. CHAPMAN
                              UNITED STATES BANKRUPTCY JUDGE