# **EXHIBIT D**

*EXECUTION*

LEHMAN BROTHERS HOLDINGS INC.

SELLER

and

STRUCTURED ASSET SECURITIES CORPORATION,

PURCHASER

MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT

Dated as of August 1, 2006

Structured Asset Securities Corporation
Reverse Mortgage Loan Trust 2006-RM1
Mortgage Backed Securities

## TABLE OF CONTENTS

Page

ARTICLE I. CONVEYANCE OF MORTGAGE LOANS ................................................................. 2

    Section 1.01.    Sale of Mortgage Loans ................................................................. 2
    Section 1.02.    Delivery of Documents ................................................................. 3
    Section 1.03.    Review of Documentation ................................................................. 3
    Section 1.04.    Representations and Warranties of the Seller ................................................................. 3
    Section 1.05.    Grant Clause ................................................................. 7
    Section 1.06.    Assignment and Delegation by Depositor ................................................................. 8
    Section 1.07.    Termination; Limitations on Depositor's Obligation to Purchase Additional Amounts ................................................................. 8

ARTICLE II MISCELLANEOUS PROVISIONS ................................................................. 8

    Section 2.01.    Binding Nature of Agreement; Assignment ................................................................. 8
    Section 2.02.    Entire Agreement ................................................................. 8
    Section 2.03.    Amendment ................................................................. 8
    Section 2.04.    Governing Law ................................................................. 9
    Section 2.05.    Severability of Provisions ................................................................. 9
    Section 2.06.    Execution. Successors and Assigns ................................................................. 9
    Section 2.07.    Indulgences: No Waivers ................................................................. 10
    Section 2.08.    Headings Not to Affect Interpretation ................................................................. 10

SCHEDULE A    Mortgage Loan Schedule

This MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, dated as of August 1, 2006 (this "Agreement"), is executed by and between Lehman Brothers Holdings Inc. (the "Seller") and Structured Asset Securities Corporation (the "Depositor").

All capitalized terms not defined herein shall have the same meanings assigned to such terms in that certain transfer and servicing agreement (the "Transfer and Servicing Agreement") dated as of August 1, 2006, among Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as issuer (the "Issuer"), the Depositor, Aurora Loan Services LLC, as master servicer (the "Master Servicer") and Citibank, N.A., as Indenture Trustee (the "Indenture Trustee").

<u>W I T N E S S E T H</u>:

WHEREAS, Lehman Brothers Bank ("Lehman Bank") is a party to the Flow Purchase, Warranties and Servicing Agreement dated as of July 16, 2004, between Lehman Bank and Financial Freedom. (the "Transfer Agreement", pursuant to which Lehman Bank has purchased from Financial Freedom Senior Funding Corporation ("Financial Freedom" or the "Transferor") certain mortgage loans identified on the Mortgage Loan Schedule attached hereto as Schedule A, and has succeeded to certain other rights and interests as described in the Transfer Agreement:

WHEREAS, the Seller is a party to the Servicing Agreement (the "Servicing Agreement") dated as of August 1, 2006, among the Seller, Lehman Bank, Financial Freedom, as servicer, and the Master Servicer, pursuant to which the Mortgage Loans will be serviced by the Servicer;

WHEREAS, the Servicing Agreement permits the Seller to assign its rights and interests in such agreement and to delegate its obligations thereunder;

WHEREAS, pursuant to an Assignment and Assumption Agreement (the "Assignment and Assumption Agreement"), dated as of August 1, 2006, between Lehman Bank, as assignor, and the Seller, as assignee, Lehman Bank has transferred all of its right, title and interest in and to the foregoing Transfer Agreement and Servicing Agreement and the Mortgage Loans;

WHEREAS, the Seller desires to sell to the Depositor, without recourse, all of its right, title and interest in and to the Mortgage Loans and all Additional Amounts created on or after the Cut-off Date, and to assign certain of its rights and interests under the Servicing Agreement, and to delegate certain of its obligations thereunder, to the Depositor; and

WHEREAS, the Seller and the Depositor acknowledge and agree that the Depositor will convey the Mortgage Loans and assign all of its rights and delegate all of its obligations hereunder, including, without limitation, the obligation to purchase Additional Amounts, to the Issuer, which will in turn pledge the Mortgage Loans and such rights to the Indenture Trustee, and that each reference herein to the Depositor is intended, unless otherwise specified, to mean the Depositor or the Issuer, subject to the lien of the Indenture Trustee, whichever is the owner of the Mortgage Loans from time to time.

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Seller and the Depositor agree as follows:

## ARTICLE I
## CONVEYANCE OF MORTGAGE LOANS

Section 1.01    Sale of Mortgage Loans.  Concurrently with the execution and delivery of this Agreement, the Seller does hereby transfer, assign, set over, deposit with and otherwise convey to the Depositor, without recourse, subject to Sections 1.03 and 1.04, all the right, title and interest, other than the related servicing rights, of the Seller in and to the Mortgage Loans identified on Schedule A hereto, having an aggregate Outstanding Amount as of the Cut-off Date of $522,347,535 including (i) the Cut-off Date Outstanding Amount of the Mortgage Loans and (ii) all Additional Amounts created on or after the Cut-off Date; *provided, however,* that the Depositor does not assume the obligation under any Mortgage Loan to fund any future advances required to be made to the related Mortgagor(s) thereunder, and the Depositor shall not be obligated or permitted to fund any such advances, it being understood that the Seller shall cause the Servicer to fund future advances with respect to the Mortgage Loans.  Such conveyance shall be deemed to be made:  (1) with respect to the Cut-off Date Outstanding Amount of the Mortgage Loans as of the Closing Date; and (2) with respect to each Additional Amount created on or after the Cut-off Date, as of the date made.  Such conveyance shall include all of the Seller's right, title and interest in and to any REO Property and the proceeds thereof, rights under any insurance policies related to the Mortgage Loans, security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, all Mortgage Files and other documents and records of the Seller relating to the Mortgage Loans, and any proceeds of the foregoing.

Concurrently with the execution and delivery of this Agreement, the Seller hereby assigns to the Depositor all of its rights and interest under the Transfer Agreement and the Servicing Agreement, other than any servicing rights retained thereunder, and delegates to the Depositor all of its obligations thereunder, to the extent relating to the Mortgage Loans.  The Seller and the Depositor further agree that this Agreement incorporates the terms and conditions of any assignment and assumption agreement or other assignment document required to be entered into under any of the Transfer Agreement (any such document, an "Assignment Agreement") and that this Agreement constitutes an Assignment Agreement under the Transfer Agreement, and the Depositor hereby assumes the obligations of the assignee under each such Assignment Agreement.  Concurrently with the execution hereof, as consideration for the assignment of such rights and the transfer of the Mortgage Loans, the Depositor tenders the purchase price of $522,347,535.05.  In addition, subject to Section 1.07, the Depositor shall tender to the Seller the Purchase Price for each Additional Amount created pursuant to the Transfer Agreement.

Concurrently with the execution and delivery of this Agreement, the Seller delegates to the Depositor all of its obligations, to the extent relating to the Mortgage Loans, under the Servicing Agreement.

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

The Depositor hereby accepts such assignment and delegation, and shall be entitled to exercise all the rights of the Seller under the Transfer Agreement and the Servicing Agreement, other than any servicing rights thereunder, as if the Depositor had been a party to each such agreement.

Section 1.02  Delivery of Documents. (a) In connection with such transfer and assignment of the Mortgage Loans hereunder, the Seller does hereby deliver, or cause to be delivered, to the Depositor (or its designee) the documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned, as specified in the Transfer Agreement.

(b) For Mortgage Loans (if any) that have been prepaid in full on or after the Cut-off Date and prior to the Closing Date, the Seller, in lieu of delivering the related Mortgage Files, herewith delivers to the Depositor an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the account maintained by the Servicer for such purpose have been so deposited.

Section 1.03  Review of Documentation. The Depositor, by execution and delivery hereof, acknowledges receipt of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by the Indenture Trustee (or its custodian). The Indenture Trustee (or its custodian) is required to review, within 45 days following the Closing Date, each applicable Mortgage File. If in the course of such review the Indenture Trustee (or its custodian) identifies any Material Defect, the Seller shall be obligated, if Financial Freedom does not do so, to cure such defect or to repurchase the related Mortgage Loan from the Depositor (or, at the direction of and on behalf of the Depositor, from the Trust) to the same extent and in the same manner as the Depositor is so obligated to the Indenture Trustee and the Trust under the Transfer and Servicing Agreement.

Section 1.04  Representations and Warranties of the Seller. (a) The Seller hereby represents and warrants to the Depositor that as of the date hereof that:

(i)  the Seller is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, carry on its business as presently conducted and enter into and perform its obligations under the Assignment and Assumption Agreement and this Agreement;

(ii)  the execution and delivery by the Seller of the Assignment and Assumption Agreement and this Agreement have been duly authorized by all necessary corporate action on the part of the Seller; neither the execution and delivery of the Assignment and Assumption Agreement or this Agreement, nor the consummation of the transactions therein or herein contemplated, nor compliance with the provisions thereof or hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Seller or its properties or the certificate of incorporation or bylaws of the Seller;

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

(iii) the execution, delivery and performance by the Seller of the Assignment and Assumption Agreement and this Agreement and the consummation of the transactions contemplated thereby and hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv) each of the Assignment and Assumption Agreement and this Agreement has been duly executed and delivered by the Seller and, assuming due authorization, execution and delivery by the Bank, in the case of the Assignment and Assumption Agreement, and the Depositor, in the case of this Agreement, constitutes a valid and binding obligation of the Seller enforceable against it in accordance with its respective terms, except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law; and

(v) there are no actions, suits or proceedings pending or, to the knowledge of the Seller, threatened or likely to be asserted against or affecting the Seller, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by the Assignment and Assumption Agreement or this Agreement or (B) with respect to any other matter which in the judgment of the Seller will be determined adversely to the Seller and will if determined adversely to the Seller materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under the Assignment and Assumption Agreement or this Agreement.

(b) The representations and warranties of the Transferor with respect to the Mortgage Loans in the Transfer Agreement were made as of the date of the Transfer Agreement. To the extent that any fact, condition or event with respect to a Mortgage Loan constitutes a breach of a representation or warranty of the Transferor under the Transfer Agreement, the Seller shall enforce the obligations of the Transferor under any applicable representation or warranty made by it.

Subject to the foregoing, the Seller represents and warrants upon delivery of the Mortgage Loans to the Depositor hereunder, as to each, that:

(i) The information set forth with respect to the Mortgage Loans on the Mortgage Loan Schedule provides an accurate listing of the Mortgage Loans, and the information with respect to each Mortgage Loan on the Mortgage Loan Schedule is true and correct in all material respects at the date or dates respecting which such information is given;

(ii) There are no defaults in complying with the terms of any Mortgage, and the Seller has no notice as to any taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing but which have not been paid;

(iii) Except in the case of Cooperative Loans, if any, each Mortgage requires all buildings or other improvements on the related Mortgaged Property to be insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the related Mortgaged Property is located pursuant to insurance policies conforming to the requirements of the guidelines of Fannie Mae or Freddie Mac. If upon origination of the Mortgage Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Flood Insurance Administration is in effect, which policy conforms to the requirements of the current guidelines of the Federal Flood Insurance Administration. Each Mortgage obligates the related Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. Where required by state law or regulation, each Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement;

(iv) Each Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(v) With respect to each Mortgage Loan, the related Mortgage evidences a valid, subsisting, enforceable and perfected first lien on the related Mortgaged Property (including all improvements on the Mortgaged Property). The lien of the Mortgage is subject only to: (1) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's Title Insurance Policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (3) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage. With respect to each Mortgage Loan, any security agreement, chattel mortgage or equivalent document related to, and delivered to the Indenture Trustee in connection with, a Mortgage Loan establishes a valid, subsisting and enforceable first lien on the property described therein and the Depositor has full right to sell and assign the same to the Indenture Trustee;

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

5

(vi)     Immediately prior to the transfer and assignment of the Mortgage Loans to the Depositor, the Seller was the sole owner of record and holder of each Mortgage Loan, and the Seller had good and marketable title thereto, and has full right to transfer and sell each Mortgage Loan to the Depositor free and clear, except as described in paragraph (v) above, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(vii)    Each Mortgage Loan other than any Cooperative Loan is covered by either (i) an attorney's opinion of title and abstract of title the form and substance of which is generally acceptable to mortgage lending institutions originating mortgage loans in the locality where the related Mortgaged Property is located or (ii) an ALTA Mortgagee Title Insurance Policy or other generally acceptable form of policy of insurance, issued by a title insurer qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring the originator of the Mortgage Loan, and its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan (subject only to the exceptions described in paragraph (v) above). If the Mortgaged Property is a condominium unit located in a state in which a title insurer will generally issue an endorsement, then the related Title Insurance Policy contains an endorsement insuring the validity of the creation of the condominium form of ownership with respect to the project in which such unit is located. With respect to any Title Insurance Policy, the originator is the sole insured of such mortgagee Title Insurance Policy, such mortgagee Title Insurance Policy is in full force and effect and will inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement, no claims have been made under such mortgagee Title Insurance Policy and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything that would impair the coverage of such mortgagee Title Insurance Policy;

(viii)   To the best of the Seller's knowledge, no foreclosure action is being threatened or commenced with respect to any Mortgage Loan. There is no proceeding pending for the total or partial condemnation of any Mortgaged Property (or, in the case of any Cooperative Loan, the related cooperative unit) and each such property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to have a material adverse effect on the value of the related Mortgaged Property as security for the related Mortgage Loan or the use for which the premises were intended;

(ix)     There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(x)      Each Mortgage Loan is a "qualified mortgage" within the meaning of Section 860G of the Code and Treas. Reg. §1.860G-2;

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

(xi)  Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state and federal laws, including, but not limited to, all applicable predatory and abusive lending laws;

(xii)  No Mortgage Loan is a "High Cost Loan" or "Covered Loan," as applicable, as such terms are defined in the then current Standard & Poor's LEVELS® Glossary, which is now Version 5.7, Appendix E. In addition, no Mortgage Loan is a "high-cost," "high-cost home," "covered," "high-risk home," or "predatory" loan under any applicable federal, state or local predatory or abusive lending law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees);

(xiii)  No Mortgage Loan was at the time of origination subject to the Home Ownership and Equity Protection Act of 1994 (15 U.S.C. § 1602(c)), Regulation Z (12 CFR 226.32) or any comparable state law;

(xiv)  No Mortgage Loan was originated (or modified) on or after October 1, 2002 through March 6, 2003 which is secured by a mortgaged property located in Georgia;

(c)  With respect to any of the foregoing representations and warranties made in subparagraphs (viii), (xi), (xii), (xiii) and (xiv) of Section 1.04(b), a breach of any such representations or warranties shall be deemed to materially and adversely affect the value of the affected Mortgage Loan and the interests of Securityholders therein, irrespective of the Seller's knowledge of such breach.

It is understood and agreed that the representations and warranties set forth in the Transfer Agreement and in Section 1.04(b) herein shall survive the Closing Date. Upon discovery by either the Seller or the Depositor of a breach of any of the foregoing representations and warranties that adversely and materially affects the value of or interest of the Depositor in any Mortgage Loan, the party discovering such breach shall give prompt written notice to the other party. Within 60 days of the discovery of any such breach, the Seller shall either (a) cure such breach in all material respects, (b) cause the Transferor to cure any such breach to the extent that related representation or warranty was made by the Transferor under the Transfer Agreement or (c) repurchase such Mortgage Loan or any property acquired in respect thereof from the Depositor at the Purchase Price.

With respect to the Mortgage Loans, the "Purchase Price" shall be as defined in the Transfer and Servicing Agreement.

Section 1.05  Grant Clause. It is intended that the conveyance of the Seller's right, title and interest in and to the Mortgage Loans and other property conveyed pursuant to this Agreement on the Closing Date shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan. However, if such conveyance is deemed to be in respect of a loan, it is intended that this Agreement create a security interest to secure repayment of an obligation, and such obligation is the sum of the purchase price of

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

7

$522,347,535.05 paid on the Closing Date and the aggregate Purchase Price of each Additional Amount paid from time to time pursuant to Section 1.01.

Section 1.06   Assignment and Delegation by Depositor. The Depositor shall have the right, upon notice to but without the consent of the Seller, to assign its interest, and delegate its obligations (including, without limitation, the obligation to purchase Additional Amounts), under this Agreement with respect to the Mortgage Loans, whether in whole or in part, to the Issuer, and the Issuer, subject to the lien of the Indenture Trustee, then shall succeed to all rights of the Depositor under this Agreement. All references to the Depositor in this Agreement shall be deemed to include its assignee or designee, specifically including the Issuer, subject to the lien of the Indenture Trustee.

Section 1.07   Termination; Limitations on Depositor's Obligation to Purchase Additional Amounts. This Agreement shall terminate upon termination of the Transfer and Servicing Agreement. Notwithstanding anything to the contrary herein, the Depositor's obligation to purchase Additional Amounts pursuant to the terms hereof shall terminate (a) if the Trust is terminated in accordance with the terms of the Trust Agreement or (b) if Financial Freedom ceases to be the Servicer of the Mortgage Loans. In addition, the Depositor's obligation to purchase Additional Amounts pursuant to the terms hereof shall be subject to the Depositor's receipt of the Purchase Price for such Additional Amounts from the Trust.

## ARTICLE II
## MISCELLANEOUS PROVISIONS

Section 2.01   Binding Nature of Agreement; Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 2.02   Entire Agreement. This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

Section 2.03   Amendment. (a) This Agreement may be amended from time to time by the Seller and the Depositor, without notice to or the consent of any of the Securityholders (i) to cure any ambiguity or mistake, (ii) to cause the provisions herein to conform to or be consistent with or in furtherance of the statements made with respect to the Securities, the Trust, the Transfer and Servicing Agreement or this Agreement in any Offering Document, or to correct or supplement any provision herein which may be inconsistent with any other provisions herein, (iii) to make any other provisions with respect to matters or questions arising under this Agreement, or (iv) to add, delete, or amend any provisions to the extent necessary or desirable to comply with any requirements imposed by the Code. No such amendment effected pursuant to clause (iii) of the preceding sentence shall adversely affect in any material respect the interests of any Holder of any Securities. Prior to entering into any amendment pursuant to this paragraph, the Depositor may require an Opinion of Counsel (at the expense of the party requesting such

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

amendment) to the effect that such amendment is permitted under this paragraph. Any such amendment shall be deemed not to adversely affect in any material respect any Holder of Securities, if the Depositor receives written confirmation from each Rating Agency that such amendment will not cause such Rating Agency to reduce the then current ratings assigned to the Securities (and any such Opinion of Counsel may rely expressly on such confirmation as the basis therefor).

(b) This Agreement may also be amended from time to time by the Seller and the Depositor with the consent of the Holders of not less than 66-2/3% of the Class Principal Amount (or Percentage Interest) of each Class of Securities affected thereby for the purpose of adding any provisions to or changing in any manner or deleting any of the provisions of this Agreement or of modifying in any manner the rights of the Holders (except as such additions, changes, deletions or modifications may be permitted under Section 2.03(a) above); *provided, however,* that no such amendment may (i) reduce in any manner the amount of, or delay the timing of, payments received on Mortgage Loans which are required to be distributed on any Security without the consent of the Holder of such Security or (ii) reduce the aforesaid percentages of Class Principal Amount (or Percentage Interest) of Securities of each Class, the Holders of which are required to consent to any such amendment without the consent of the Holders of 100% of the Class Principal Amount (or Percentage Interest) of each Class of Securities affected thereby. For purposes of this paragraph, references to "Holder" or "Holders" shall be deemed to include, in the case of any Class of Book-Entry Notes, the related Note Owners.

(c) It shall not be necessary for the consent of Securityholders under this Section 2.03 to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Securityholders shall be subject to such reasonable regulations as the Issuer and the Indenture Trustee may prescribe.

Section 2.04    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 2.05    Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

Section 2.06    Execution; Successors and Assigns. This Agreement may be executed in one or more counterparts and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement. This Agreement shall inure to the benefit of and be binding upon the Seller and the Depositor and their respective successors and assigns.

Section 2.07    Indulgences: No Waivers.  Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 2.08    Headings Not to Affect Interpretation.  The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

      IN WITNESS WHEREOF, the Seller, the Depositor, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
     Name: Joseph Kelly
     Title: Authorized Signatory


STRUCTURED ASSET SECURITIES
   CORPORATION

By: _____
     Name: Joseph Kelly
     Title: Authorized Signatory

ACKNOWLEDGED AND AGREED:

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1, as Issuer

    By: WILMINGTON TRUST COMPANY,
        not in its individual capacity but solely
        as Owner Trustee

By: _____
     Name:
     Title:


CITIBANK, N.A., as Indenture Trustee

By: _____
     Name:
     Title:

IN WITNESS WHEREOF, the Seller, the Depositor, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By:_____
    Name: Joseph Kelly
    Title: Authorized Signatory

STRUCTURED ASSET SECURITIES
  CORPORATION

By:_____
    Name: Joseph Kelly
    Title: Authorized Signatory


ACKNOWLEDGED AND AGREED:

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1, as Issuer

    By: WILMINGTON TRUST COMPANY,
       not in its individual capacity but solely
       as Owner Trustee

By: _____
    Name:
    Title: Michele C. Harra
       Financial Services Officer

CITIBANK, N.A., as Indenture Trustee

By: _____
    Name:
    Title:

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

IN WITNESS WHEREOF, the Seller, the Depositor, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.

By: _____
    Name: Joseph Kelly
    Title: Authorized Signatory

STRUCTURED ASSET SECURITIES
    CORPORATION

By: _____
    Name: Joseph Kelly
    Title: Authorized Signatory

ACKNOWLEDGED AND AGREED:

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1, as Issuer

    By: WILMINGTON TRUST COMPANY,
        not in its individual capacity but solely
        as Owner Trustee

By: _____
    Name:
    Title:

CITIBANK, N.A., as Indenture Trustee

By: _____/s/ Karen Schluter_____
    Name: **KAREN SCHLUTER**
    Title: **Vice President**

192598 SASCO 2006-RM1
Mortgage Loan Sale Agreement

## SCHEDULE A

MORTGAGE LOAN SCHEDULE

[On file at McKee Nelson LLP]