# **<u>EXHIBIT E</u>**

*EXECUTION*

TRANSFER AND SERVICING AGREEMENT
among


STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1,
as Issuer


AURORA LOAN SERVICES LLC,
as Master Servicer


STRUCTURED ASSET SECURITIES CORPORATION,
as Depositor


and


CITIBANK, N.A,
as Indenture Trustee


STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1
MORTGAGE BACKED SECURITIES


Dated as of August 1, 2006

**CONFIDENTIAL**

## TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ..................................................................................... 1

    Section 1.01. Certain Defined Terms. ................................................................ 1
    Section 1.02. Provisions of General Application. ........................................... 21

ARTICLE II TRANSFER OF TRUST ASSETS ................................................... 21

    Section 2.01. Conveyance of Mortgage Loans. .............................................. 21
    Section 2.02. Acceptance by Issuer and Acknowledgement by Indenture Trustee. ......... 23
    Section 2.03. Repurchase of Mortgage Loans by the Seller, the Originator or the
                Depositor. ......................................................................... 24
    Section 2.04. Grant of Security Interest; Intended Characterization. ............... 25
    Section 2.05. Transmission of Mortgage Files. .............................................. 26

ARTICLE III REPRESENTATIONS, WARRANTIES AND COVENANTS ........... 27

    Section 3.01. Representations and Warranties of the Master Servicer. ........... 27
    Section 3.02. Representations and Warranties of the Depositor. ..................... 29
    Section 3.03. Representations and Warranties of the Depositor with respect to the
                Mortgage Notes. ............................................................... 31
    Section 3.04. Representations and Warranties of the Depositor with respect to the
                Funding Account. ............................................................. 31

ARTICLE IV ADMINISTRATION AND SERVICING OF MORTGAGE LOANS ......... 32

    Section 4.01. Duties of the Master Servicer. .................................................. 32
    Section 4.02. Monitoring of Servicers' Performance. ..................................... 33
    Section 4.03. Master Servicer Fidelity Bond and Master Servicer Errors and
                Omissions Insurance Policy. ............................................. 33
    Section 4.04. Master Servicer's Financial Statements and Related Information. ............ 33
    Section 4.05. Power to Act; Procedures. ......................................................... 34
    Section 4.06. Servicing Agreements; Enforcement of Servicers' Obligations. ............ 34
    Section 4.07. Collection Account. .................................................................. 35
    Section 4.08. Application of Funds in the Collection Account. ...................... 36
    Section 4.09. [Reserved] ................................................................................. 37
    Section 4.10. Termination of Servicing Agreements; Successor Servicers. .................... 37
    Section 4.11. Master Servicer Liable for Enforcement. .................................. 37
    Section 4.12. No Contractual Relationships. .................................................. 37
    Section 4.13. [Reserved] ................................................................................. 38
    Section 4.14. [Reserved] ................................................................................. 38
    Section 4.15. Release of Mortgage Files. ....................................................... 38
    Section 4.16. Documents, Records and Funds in Possession of Master Servicer To
                Be Held for Indenture Trustee. ........................................ 39
    Section 4.17. Removal of Master Servicer; Resignation of Master Servicer; Term
                of Servicing. ...................................................................... 40

CONFIDENTIAL

Section 4.18. Appointment of Successor Master Servicer..................................................... 43
Section 4.19. Indenture Trustee To Retain Possession of Certain Insurance
            Policies and Documents........................................................................ 43
Section 4.20. Compensation to the Master Servicer. ............................................................ 44
Section 4.21. Servicing Advances. ......................................................................................... 44
Section 4.22. Master Servicer Reports.................................................................................. 44
Section 4.23. Annual Officer's Certificate as to Compliance.............................................. 45
Section 4.24. Annual Independent Accountants' Servicing Report. ................................... 45
Section 4.25. Merger or Consolidation. ................................................................................ 46
Section 4.26. [Reserved]......................................................................................................... 46
Section 4.27. Assignment or Delegation of Duties by the Master Servicer. .................... 46
Section 4.28. Limitation on Liability of the Master Servicer and Others........................... 47
Section 4.29. Transfer of Servicing. ...................................................................................... 47

ARTICLE V [RESERVED] ...................................................................................................... 48

ARTICLE VI DEPOSITS AND DISTRIBUTIONS ................................................................ 48

Section 6.01. Rights of the Holders. ...................................................................................... 48
Section 6.02. Establishment of Trust Accounts and Certificate Distribution
            Account. ................................................................................................. 48
Section 6.03. Allocation of Losses. ........................................................................................ 54
Section 6.04. Collections. ........................................................................................................ 54
Section 6.05. Flow of Funds. ................................................................................................... 54
Section 6.06. Disbursement of Funds. ................................................................................... 56
Section 6.07. Determination of LIBOR. ................................................................................ 56
Section 6.08. Reports to Securityholders............................................................................... 57
Section 6.09. Presentation of Securities................................................................................ 59
Section 6.10. The Funding Account. ...................................................................................... 60
Section 6.11. Special Limitations on Investment................................................................... 60

ARTICLE VII REMEDIES ....................................................................................................... 61

Section 7.01. Limitation on Suits........................................................................................... 61
Section 7.02. Restoration of Rights and Remedies............................................................... 61
Section 7.03. Rights and Remedies Cumulative.................................................................... 62
Section 7.04. Delay or Omission Not Waiver........................................................................ 62
Section 7.05. Control by Securityholders............................................................................... 62
Section 7.06. Waiver of Past Defaults. .................................................................................. 63
Section 7.07. Undertaking for Costs. ..................................................................................... 63
Section 7.08. Waiver of Stay or Extension Laws. ................................................................. 63

ARTICLE VIII LIMITATION ON LIABILITY; INDEMNITIES ............................................ 63

Section 8.01. Liabilities of Mortgagors. ................................................................................ 63
Section 8.02. Liability of the Depositor................................................................................. 64
Section 8.03. Relationship of Master Servicer...................................................................... 64

CONFIDENTIAL

Section 8.04. Indemnities of the Master Servicer. ............................................................ 64
Section 8.05. Liability of Owner Trustee.......................................................................... 65

ARTICLE IX [RESERVED] .................................................................................................. 65

ARTICLE X MISCELLANEOUS .......................................................................................... 65

Section 10.01. Termination of Agreement......................................................................... 65
Section 10.02. Termination Prior to Maturity Date. ......................................................... 66
Section 10.03. Certain Notices upon Final Payment. ....................................................... 66
Section 10.04. Binding Nature of Agreement; Assignment. ............................................. 66
Section 10.05. Amendment................................................................................................ 67
Section 10.06. Notices. ..................................................................................................... 68
Section 10.07. Entire Agreement. ..................................................................................... 70
Section 10.08. Headings. .................................................................................................. 70
Section 10.09. Provision of Information. .......................................................................... 70
Section 10.10. Severability of Provisions. ........................................................................ 71
Section 10.11. No Proceedings. ........................................................................................ 71
Section 10.12. Governing Law. ........................................................................................ 71
Section 10.13. Counterparts.............................................................................................. 71
Section 10.14. Additional Limitation on Action and Imposition of Tax. .......................... 71
Section 10.15. Benefits of Agreement. .............................................................................. 72
Section 10.16. Special Notices to the Rating Agencies. .................................................... 72

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

EXHIBITS

| | |
|---|---|
| Exhibit A | Form of Master Servicer's Monthly Report |
| Exhibit B | Form of Initial Certification |
| Exhibit C | Form of Interim Certification |
| Exhibit D | Form of Final Certification |
| Exhibit E | Form of Request for Release of Documents |
| Exhibit F | Form of Confirmation and Confidentiality Agreement |
| Exhibit G | Contents of each Mortgage File |

SCHEDULES

| | |
|---|---|
| Schedule I | Mortgage Loan Schedule |
| Schedule II | Class A1, Class A-IO, Class M1 and Class M2 Scheduled Principal Amounts |
| Schedule III | Class A-IO Scheduled Notional Amounts |
| Schedule IV | Class R Certificate Schedule |

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

iv

**CONFIDENTIAL**

TRANSFER AND SERVICING AGREEMENT, dated as of August 1, 2006 (this "Agreement" or "Transfer and Servicing Agreement"), among Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as Issuer (the "Issuer"), Aurora Loan Services LLC, a Delaware limited liability company, its successors and permitted assigns, as Master Servicer (the "Master Servicer"), Structured Asset Securities Corporation, a Delaware corporation, as Depositor (the "Depositor"), and Citibank, N.A., a national banking association, its successors and permitted assigns, as Indenture Trustee (the "Indenture Trustee").

## WITNESSETH:

WHEREAS, Lehman Brothers Holdings Inc. (the "Seller") has conveyed the Mortgage Loans to the Depositor pursuant to the Mortgage Loan Sale Agreement, and the Depositor will transfer such Mortgage Loans to the Issuer on the Closing Date pursuant to this Agreement;

WHEREAS, the Depositor will cause the Funding Account Deposit to be deposited in the Funding Account on the Closing Date as provided herein;

WHEREAS, pursuant to the Indenture the Issuer will pledge the Mortgage Loans, the Trust Accounts and other property held therein, and the other assets constituting the Trust Estate to the Indenture Trustee as security for the Notes; and

WHEREAS, the Master Servicer is willing to act as the Master Servicer hereunder to supervise the servicing of the Mortgage Loans, as provided herein, on behalf of the Issuer and the Indenture Trustee.

NOW, THEREFORE, the parties agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01. <u>Certain Defined Terms</u>.

As used herein, the following terms shall have the following meanings:

<u>Accrual Period</u>: With respect to the Notes other than the Class A-IO Notes and any Payment Date, the period commencing on the immediately preceding Payment Date (or the Closing Date in the case of the first Accrual Period) and ending on the day immediately preceding the Payment Date. With respect to the Class A-IO Notes and any Payment Date, the calendar month immediately preceding the month in which the related Payment Date occurs. All calculations of interest on the Notes other than the Class A-IO Notes will be made on the basis of a 360-day year and the actual number of days elapsed in such Accrual Period. Interest will accrue on the Class A-IO Notes on the basis of a 360-day year and 30 days in each Accrual Period.

CONFIDENTIAL

Additional Amounts:  With respect to each Mortgage Loan, all amounts added to the Outstanding Amount of any Mortgage Loan on or after the Cut-off Date in respect of advances that are actually made, to or for the benefit of Mortgagor(s) on or after such date, including accrued interest thereon.

Additional Amounts Draw:  With respect to each Additional Amounts Draw Date, an amount equal to the lesser of (i) the aggregate dollar amount of all Additional Amounts created during the immediately preceding calendar month and (ii) the amount remaining on deposit in the Funding Account.

Additional Amounts Draw Date:  With respect to Additional Amounts on any Mortgage Loan, the tenth day (or, if such tenth day is not a Business Day, the next succeeding Business Day) of the calendar month immediately following the calendar month in which such Additional Amounts were created.

Additional Master Servicing Fee:  As defined in Section 4.27.

Administration Agreement:  The administration agreement dated as of August 1, 2006 among the Issuer, the Administrator, the Owner Trustee and the Depositor, as such may be amended or supplemented from time to time.

Administrator:  Citibank, N.A, a national banking association, in its capacity as administrator under the Administration Agreement.

Affiliate:  With respect to any Person, any other Person directly or indirectly controlling, controlled by, or under direct or indirect common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement:  This Transfer and Servicing Agreement, as amended from time to time, including all exhibits and schedules hereto.

Anniversary Year:  The one-year period beginning on the Closing Date and ending on the first anniversary thereof, and each subsequent one-year period beginning on the day after the end of the preceding Anniversary Year and ending on next succeeding anniversary of the Closing Date.

Applied Loss Amount: With respect to any Payment Date on or after the Payment Date in September 2007 and the Class M1 and Class M2 Notes, after giving effect to all Realized Losses incurred with respect to Mortgage Loans during the related Collection Period and payments to Noteholders on such Payment Date, the excess, if any, of (x) the aggregate Class Principal Amount of the Notes over (y) the sum of the Outstanding Amount of the Mortgage Loans and the amounts on deposit in the Funding Account.

CONFIDENTIAL

Assignment:  With respect to each Mortgage Loan, an assignment of the Mortgage, notice of transfer or equivalent instrument sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the transfer of the Mortgage.

Authorized Officer:  With respect to any corporation or limited liability company, the Chairman of the Board, the President, any Vice President, the Secretary, the Treasurer, any Assistant Secretary, any Assistant Treasurer and each other officer of such corporation or the members and manager of such limited liability company specifically authorized in resolutions of the Board of Directors of such corporation or limited liability company to sign agreements, instruments or other documents in connection with this Agreement on behalf of such corporation or limited liability company, as the case may be.  With respect to any trust, any Authorized Officer of the corporate trustee or any individual co-trustee.

Available Payment Amount:  With respect to each Payment Date, (a) the sum of (i) all payments and recoveries in respect of the Mortgage Loans received during the related Collection Period, *less* the Servicing Fees and any Additional Master Servicing Fees, if applicable, (ii) the Purchase Price of any Mortgage Loan that was repurchased from the Trust during the related Collection Period, (iii) any Excess Funding Amount for such date withdrawn from the Funding Account pursuant to Section 6.10(c) and (iv) with respect to the final Payment Date, the Redemption Price, as reduced by (b) any amounts payable or reimbursable to the Indenture Trustee, the Owner Trustee (other than the Owner Trustee Fee), the Administrator, the Master Servicer and the Servicer including, without limitation, any amounts in respect of indemnification payable pursuant to Section 4.08(iv); *provided, however*, that in the case of the Indenture Trustee, such reimbursable amounts from Available Funds may not exceed $200,000 during any Anniversary Year and, in the case of the Owner Trustee, the Administrator, the Master Servicer and the Servicer,  such reimbursable amounts from Available Funds may not exceed $100,000 in the aggregate during any Anniversary Year.  In the event that the Indenture Trustee incurs reimbursable amounts in excess of $200,000 or any of the Owner Trustee, the Administrator, the Master Servicer or the Servicer incurs reimbursable amounts in excess of $100,000 in the aggregate, such party may seek reimbursement for such amounts in subsequent Anniversary Years, but in no event shall more than $200,000 be reimbursed to the Indenture Trustee  or $100,000 in the aggregate be reimbursed to the Owner Trustee, the Administrator, the Master Servicer and the Servicer per Anniversary Year.  The Available Payment Amount shall not include any Interest Shortfall Draw or any Additional Amounts Draw.

Basic Documents:  This Agreement, the Indenture, the Trust Agreement, the Mortgage Loan Sale Agreement, the Servicing Agreement and any other agreements relating to the servicing of the Mortgage Loans, the Administration Agreement and any amendment or supplement to any such document.

Book-Entry Note:  Any Note registered in the name of the Depository or its nominee.

Business Day:  Any day other than a Saturday or a Sunday, or another day on which banks in the States of California, Colorado or New York (or such other states in which the applicable Corporate Trust Offices of the Indenture Trustee or the principal offices of the Master Servicer or the Servicer are subsequently located, as specified in writing by such party to the other parties hereto) are required, or authorized by law, to close.

CONFIDENTIAL

Certificate:  The Class R Certificate issued pursuant to the Trust Agreement.

Certificate Distribution Account:  The separate Eligible Account established and maintained by the Indenture Trustee pursuant to Section 6.02(a)(iv).

Certificate Register:  As defined in the Trust Agreement.

Certificateholder:  As defined in the Trust Agreement.

Class:  Any Securities having the same class designation.

Class A-IO Redemption Price:  An amount equal to the present value, determined as of the final Payment Date, of the remaining payments scheduled to be made on the Class A-IO Notes on subsequent Payment Dates based on the Class Notional Amount in effect for such subsequent Payment Dates and the Interest Rate for the Class A-IO Notes.  The discount rate to be used in determining the present value of the remaining payments shall approximate the expected yield to maturity used in pricing the Class A-IO Notes.  Upon request, the Issuer shall provide such discount rate to the Indenture Trustee.

Class M1 Interest Shortfall Draw Limit:  With respect to each Payment Date, an amount equal to $1,000,000 *minus* the aggregate amount of Interest Shortfall Draws with respect to the Class M1 Notes for all prior Payment Dates.

Class M2 Interest Shortfall Draw Limit:  With respect to each Payment Date, an amount equal to $1,000,000 *minus* the aggregate amount of Interest Shortfall Draws with respect to the Class M2 Notes for all prior Payment Dates.

Class Notional Amount: With respect to the Class A-IO Notes and any Payment Date, the amount set forth for such Payment Date on the schedule of Class A-IO Scheduled Notional Amounts attached hereto as Schedule III.  The initial Class Notional Amount of the Class A-IO Notes will be equal to the aggregate Cut-off Date Outstanding Amount.

Class R Certificate:  A residual interest certificate representing an undivided beneficial interest in the Trust, substantially in the form attached as part of Exhibit A of the Trust Agreement.

Class Principal Amount:  With respect to any Class of Notes other than the Class A-IO Notes and any date, the initial aggregate principal amount of the Notes of such Class, *less* the sum of (i) the amount of all principal payments previously made with respect to such Class of Notes and (ii) all Applied Loss Amounts previously allocated to such Class pursuant to Section 6.03; *provided, however,* that on each Payment Date on which a Subsequent Recovery is distributed, the Class Principal Amounts of the Class M1 and Class M2 Notes previously reduced by an Applied Loss Amount will be increased, in order of seniority, by an amount equal to the lesser of (i) any Deferred Amount for such Class immediately prior to such Payment Date and (ii) the total amount of any Subsequent Recovery distributed to Holders of the Class M1 and Class M2 Notes on such Payment Date pursuant to this Agreement, after application to  more senior Classes of Notes, *plus* all accrued but unpaid Current Interest with respect to such Class of

CONFIDENTIAL

Notes, determined as of the close of business of the immediately preceding Payment Date, after giving effect to all payments made on such date.

Closing Date:  September 15, 2006

Code:  The Internal Revenue Code of 1986, as amended.

Collection Account:  The separate Eligible Account established and maintained by the Master Servicer, on behalf of the Indenture Trustee, pursuant to Section 4.07.

Collection Period:  With respect to any Payment Date, the calendar month immediately preceding the month in which such Payment Date occurs.

Condemnation Proceeds:  All awards or settlements in respect of a Mortgaged Property, whether permanent or temporary, partial or entire, by exercise of the power of eminent domain or condemnation, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage or Mortgage Note.

Control:  The meaning specified in Section 8-106 of the New York UCC.

Cooperative Corporation:  The entity that holds title (fee or an acceptable leasehold estate) to the real property and improvements constituting the Cooperative Property and which governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

Cooperative Loan:  Any Mortgage Loan secured by Cooperative Shares and a Proprietary Lease.

Cooperative Property:  The real property and improvements owned by the Cooperative Corporation, that includes the allocation of individual dwelling units to the holders of the shares of the Cooperative Corporation.

Cooperative Shares:  Shares issued by a Cooperative Corporation.

Corporate Trust Office:  (a) for Note transfer purposes and for purposes of presentment and surrender of the Notes for the final distributions thereon, Citibank, N.A., 111 Wall Street, 15th Floor, New York, NY 10005, Attention: 15th Floor Window and (b) for all other purposes, Citibank, N.A., 388 Greenwich Street, 14th Floor, New York, NY 10013, Attention: Agency and Trust SASCO 2006-RM1, or any other address that the Indenture Trustee may designate from time to time by notice to the Noteholders.

Current Interest: With respect to each Class of Notes other than the Class A-IO Notes and any Payment Date, the aggregate amount of interest accrued during the applicable Accrual Period at the applicable Interest Rate on the Class Principal Amount, of such Class immediately prior to such Payment Date; with respect to the Class A-IO Notes and any Payment Date, the sum of (i) the aggregate amount of interest accrued at the Interest Rate for the Class A-IO Notes during the related Accrual Period on the Class Notional Amount in effect for such Accrual Period, and (ii) all amounts described in clause (i) above for prior Payment Dates that were not

CONFIDENTIAL

paid on such prior Payment Dates, together with interest thereon at a rate equal to the yield to maturity used in pricing the Class A-IO Notes.

Custodial Account:  The custodial account maintained by the Servicer pursuant to the Servicing Agreement.

Cut-off Date:  August 1, 2006.

Cut-off Date Outstanding Amount:  With respect to the Mortgage Loans, the aggregate of all advances made in respect of the Mortgage Loans prior to the Cut-off Date, to the extent not previously repaid, together with any accrued but unpaid interest thereon and any accrued but unpaid interest on such interest.

Debt:  For any Person, (a) indebtedness of such Person for borrowed money, (b) obligations of such Person evidenced by bonds, debentures, notes or other similar instruments, (c) obligations of such Person to pay the deferred purchase price of property or services, (d) obligations of such Person as lessee under leases which have been or should be, in accordance with GAAP, recorded as capital leases, (e) obligations secured by any lien or other charge upon property or assets owned by such Person, even though such Person has not assumed or become liable for the payment of such obligations, (f) obligations of such Person under direct or indirect guaranties in respect of, and obligations (contingent or otherwise) to purchase or otherwise acquire, or otherwise to assure a creditor against loss in respect of, indebtedness or obligations of others of the kinds referred to in clauses (a) through (e) above, and (g) liabilities in respect of unfunded vested benefits under plans covered by ERISA.

Deferred Amount:  With respect to each of the Class M1 and Class M2 Notes and each Payment Date on or after August 2007, the amount by which (i) the aggregate of the Applied Loss Amounts previously applied in reduction of the Class Principal Amount thereof exceeds (ii) the sum of (a) the aggregate of amounts previously distributed on such Class in reimbursement of such amounts and (b) the amount by which the Class Principal Amount of such Class has been increased due to Subsequent Recoveries.

Deleted Mortgage Loan:  A Mortgage Loan that is repurchased from the Trust pursuant to the terms hereof.

Depositor:  Structured Asset Securities Corporation, a Delaware corporation, and its successors and assigns.

Depository:  The Depository Trust Company, 7 Hanover Square, New York, New York 10004 and any successor Depository hereafter named.

Direct Participant:  Any broker-dealer, bank or other financial institution for which the Depository holds the Book-Entry Note from time to time as a securities depository.

Dollar and $:  Lawful currency of the United States of America.

Eligible Account:  Either (i) an account or accounts maintained with a federal or state chartered depository institution or trust company acceptable to the Rating Agencies or (ii) an

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

6

CONFIDENTIAL

account or accounts the deposits in which are insured by the FDIC to the limits established by such corporation, provided that any such deposits not so insured shall be maintained in an account at a depository institution or trust company whose commercial paper or other short term debt obligations (or, in the case of a depository institution or trust company which is the principal subsidiary of a holding company, the commercial paper or other short term debt or deposit obligations of such holding company or depository institution, as the case may be) have been rated by each Rating Agency in its highest short-term rating category, or (iii) a segregated trust account or accounts (which shall be a "special deposit account") maintained with the Indenture Trustee or any other federal or state chartered depository institution or trust company, acting in its fiduciary capacity, in a manner acceptable to the Indenture Trustee and the Rating Agencies. Eligible Accounts may bear interest.

> Eligible Investments: Any one or more of the following obligations or securities:

> (i)     direct obligations of, and obligations fully guaranteed as to timely payment of principal and interest by, the United States of America or any agency or instrumentality of the United States of America the obligations of which are backed by the full faith and credit of the United States of America ("Direct Obligations");

> (ii)     federal funds, or demand and time deposits in, or certificates of deposits of, any depository institution or trust company (including U.S. subsidiaries of foreign depositories and the Indenture Trustee or any agent of the Indenture Trustee, acting in its respective commercial capacity) incorporated or organized under the laws of the United States of America or any state thereof and subject to supervision and examination by federal or state banking authorities, so long as at the time of investment or the contractual commitment providing for such investment the commercial paper or other short-term debt obligations of such depository institution or trust company (or, in the case of a depository institution or trust company which is the principal subsidiary of a holding company, the commercial paper or other short-term debt or deposit obligations of such holding company or deposit institution, as the case may be) have been rated by each Rating Agency in its highest short-term rating category or one of its two highest long-term rating categories;

> (iii)     repurchase agreements collateralized by Direct Obligations or securities guaranteed by Ginnie Mae, Fannie Mae or Freddie Mac with any registered broker/dealer subject to Securities Investors' Protection Corporation jurisdiction or any commercial bank insured by the FDIC, if such broker/dealer or bank has an uninsured, unsecured and unguaranteed obligation rated by each Rating Agency in its highest short-term rating category;

> (iv)     securities bearing interest or sold at a discount issued by any corporation incorporated under the laws of the United States of America or any state thereof which have a credit rating from each Rating Agency, at the time of investment or the contractual commitment providing for such investment, at least equal to (a) one of the two highest short-term credit rating categories of S&P and Fitch and (b) the highest long-term rating category of Moody's; *provided, however,* that securities issued by any particular corporation will not be Eligible Investments to the extent that investment therein will

CONFIDENTIAL

cause the then outstanding principal amount of securities issued by such corporation and held as part of the Trust Estate to exceed 20% of the aggregate principal amount of all Eligible Investments in the Trust Accounts; provided, further, that such securities will not be Eligible Investments if they are published as being under review with negative implications from any Rating Agency;

(v)    commercial paper (including both noninterest-bearing discount obligations and interest-bearing obligations payable on demand or on a specified date not more than 180 days after the date of issuance thereof) rated by each Rating Agency in its highest short-term rating category;

(vi)    a Qualified GIC;

(vii)    certificates or receipts representing direct ownership interests in future interest or principal payments on obligations of the United States of America or its agencies or instrumentalities (which obligations are backed by the full faith and credit of the United States of America) held by a custodian in safekeeping on behalf of the holders of such receipts; and

(viii)    any other demand, money market, common trust fund or time deposit or obligation, or interest-bearing or other security or investment (including those managed or advised by the Securities Administrator or any Affiliate thereof), (A) rated in the highest rating category by each Rating Agency rating such investment or (B) that would not adversely affect the then current rating assigned by each Rating Agency of any of the Certificates and has a short term rating of at least "A-1" or its equivalent by each Rating Agency.  Such investments in this subsection (viii) may include money market mutual funds or common trust funds, including any fund for which Citibank, N.A. (the "Bank") in its capacity other than as Indenture Trustee, the Indenture Trustee, the Master Servicer or an affiliate thereof serves as an investment advisor, administrator, shareholder servicing agent, and/or custodian or subcustodian, notwithstanding that (x) the Bank, the Indenture Trustee, the Master Servicer or any affiliate thereof charges and collects fees and expenses from such funds for services rendered, (y) the Bank, the Indenture Trustee, the Master Servicer or any affiliate thereof charges and collects fees and expenses for services rendered pursuant to this Agreement, and (z) services performed for such funds and pursuant to this Agreement may converge at any time.  The Indenture Trustee specifically authorizes the Bank or an affiliate thereof to charge and collect from the Indenture Trustee such fees as are collected from all investors in such funds for services rendered to such funds (but not to exceed investment earnings thereon);

*provided, however,* that (a) no such instrument shall be an Eligible Investment if such instrument evidences either (i) a right to receive only interest payments with respect to the obligations underlying such instrument, or (ii) both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity of greater than 120% of the yield to maturity at par of such underlying obligations, and (b) the investment of funds in the Funding Account shall at all times be subject to the provisions of Sections 6.10 and 6.11 hereof and the applicable provisions of the Trust Agreement.

CONFIDENTIAL

Entitlement Order:  The meaning specified in Section 8-102(a)(8) of the New York UCC (*i.e.*, generally, orders directing the transfer or redemption of any Financial Asset).

ERISA:  The Employee Retirement Income Security Act of 1974, as amended.

Event of Master Servicer Default:  As defined in Section 4.17.

Excess Funding Amount:  With respect to each Payment Date, the amount equal to the excess, if any, of the amount then on deposit in the Funding Account, after giving effect to any Additional Amounts Draw, over the Maximum Funding Amount for such date, in each case without giving effect to distributions on such Payment Date.

FDIC:  The Federal Deposit Insurance Corporation.

Fee Letter Agreement:  The fee letter agreement between the Owner Trustee and the Seller attached as Exhibit F to the Trust Agreement.

Financial Asset:  The meaning specified in Section 8-102(a)(9) of the New York UCC.

Financial Freedom:  Financial Freedom Senior Funding Corporation, or any successor in interest.

Fitch:  Fitch, Inc. or any successor thereto.

Funded Amount:  With respect to any Payment Date, the amount then on deposit in the Funding Account, including all income and gain realized from investment of funds held in the Funding Account.

Funding Account:  The account established and maintained by the Indenture Trustee pursuant to Section 6.02(a)(iii).

Funding Account Collateral:  As defined in Section 3.04(a)(i).

Funding Account Deposit:  As defined in Section 6.10(a).

Future Loan Commitment:  With respect to any Payment Date will be equal to the aggregate of available credit under each Mortgage Loan.

GAAP:  Generally accepted accounting principles as in effect in the United States, consistently applied, as of the date of such application.

Governmental Authority:  The United States of America, any state, local or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions thereof or pertaining thereto.

Holder or Securityholder:  A Person in whose name a Note is registered on the Note Register or a Certificate is registered on the Certificate Register.

CONFIDENTIAL

Indenture:  The indenture dated as of August 1, 2006, between the Issuer and the Indenture Trustee, as such may be amended or supplemented from time to time.

Indenture Trustee:  Citibank, N.A., and any successor in interest, in its capacity as indenture trustee under the Indenture.

Independent:  When used with respect to any Person, a Person who (a) is in fact independent of another specified Person and any Affiliate of such other Person, (b) does not have any material direct financial interest in such other Person or any Affiliate of such other Person, and (c) is not connected with such other Person or any Affiliate of such other Person as an officer, employee, promoter, underwriter, trustee, partner, director or Person performing similar functions.

Independent Public Accountant:  Any of (a) Deloitte & Touche LLP, (b) PricewaterhouseCoopers, (c) Ernst & Young LLP and (d) KPMG LLP (and any successors of the foregoing); provided, that such firm must be independent with respect to the Master Servicer or the Servicer, as the case may be, within the meaning of the Securities Act.

Indirect Participant:  Any financial institution for whom any Direct Participant holds an interest in a Book-Entry Note.

Initial Call Date:  As defined in Section 10.02(b).

Initial LIBOR Rate: 5.33%.

Insurance Policy:  Any standard hazard insurance policy, earthquake insurance policy or Title Insurance Policy relating to the Mortgage Loans or the Mortgaged Properties, to be in effect as of the Closing Date or thereafter during the term of this Agreement.

Insurance Proceeds:  Amounts paid by the insurer under any Insurance Policy, other than amounts (i) to cover expenses incurred by or on behalf of the Master Servicer or the Servicer in connection with procuring such proceeds, (ii) to be applied to restoration or repair of the related Mortgaged Property or (iii) required to be paid over to the Mortgagor pursuant to law or the related Mortgage Note.

Interest Rate:  With respect to each Class of Notes, the per annum rate of interest applicable to Notes of such Class, as specified below:

| Class | Interest Rate |
|---|---|
| A1 | LIBOR for the related Accrual Period plus 0.25%; provided, that if the Master Servicer does not exercise its option to purchase all of the property remaining in the Trust pursuant to Section 10.02(b) on the Initial Call Date, then with respect to each subsequent Payment Date, the Interest Rate shall be LIBOR for the related Accrual Period plus 0.75%. |
| A-IO | 5.00% |

CONFIDENTIAL

M1    LIBOR for the related Accrual Period plus 0.50%; provided, that if the Master Servicer does not exercise its option to purchase all of the property remaining in the Trust pursuant to Section 10.02(b) on the Initial Call Date, then with respect to each subsequent Payment Date, the Interest Rate shall be LIBOR for the related Accrual Period plus 1.00%.

M2    LIBOR for the related Accrual Period plus 0.80%; provided, that if the Master Servicer does not exercise its option to purchase all of the property remaining in the Trust pursuant to Section 10.02(b) on the Initial Call Date, then with respect to each subsequent Payment Date, the Interest Rate shall be LIBOR for the related Accrual Period plus 1.30%.

Interest Shortfall Draw:  With respect to each Payment Date, an amount equal the least of (1) the total of any amounts payable under Section 6.05(a), clauses *third, fifth* and *seventh* for such date that remain unpaid after application of the Available Payment Amount, (2) the amount remaining on deposit in the Funding Account on such date and (3) the sum of (a) any amount payable under Section 6.05(a) clause *third* for such date that remains unpaid after application of the Available Payment Amount and (b) the sum of the Class M1 Interest Shortfall Draw Limit and the Class M2 Interest Shortfall Draw Limit for such date.

Issuer:  Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, a Delaware statutory trust.

Lehman Bank:  Lehman Brothers Bank, FSB, or any successor in interest.

LIBOR:  (a) With respect to the first Accrual Period, the Initial LIBOR Rate.  With respect to each subsequent Accrual Period, a per annum rate determined on the LIBOR Rate Adjustment Date in the following manner by the Indenture Trustee on the basis of the "Interest Settlement Rate" set by the British Bankers' Association (the "BBA") for one-month United States dollar deposits, as such rates appear on the Telerate Page 3750, as of 11:00 a.m. (London time) on such LIBOR Rate Adjustment Date.

(b)    If on such a LIBOR Rate Adjustment Date, the BBA's Interest Settlement Rate does not appear on the Telerate Page 3750 as of 11:00 a.m. (London time), or if the Telerate Page 3750 is not available on such date, the Indenture Trustee will obtain such rate *first* from Reuters' "page LIBOR 01," or if such page is not available, then from Bloomberg's page "BBAM." If any such rate is not published for such LIBOR Rate Adjustment Date, LIBOR for such date will be the most recently published Interest Settlement Rate.  In the event that the BBA no longer sets an Interest Settlement Rate, the Indenture Trustee will designate an alternative index that has performed, or that the Indenture Trustee expects to perform, in a manner substantially similar to the BBA's Interest Settlement Rate. The Indenture Trustee will select a particular index as the alternative index only if it receives an Opinion of Counsel, which opinion shall be an expense reimbursed from the Certificate Account pursuant to Section 4.02, that the selection of such index will not cause any of the REMICs to lose their classification as REMICs for federal income tax purposes.

CONFIDENTIAL

LIBOR Business Day:  Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the city of London, England or in the city of New York, New York are required or authorized by law to be closed.

LIBOR Rate Adjustment Date:  With respect to any Accrual Period, the second LIBOR Business Day immediately prior to the commencement of such Accrual Period.

Liquidated Mortgage Loan:  As to any Payment Date, any Mortgage Loan in respect of which the related Servicer or the Master Servicer, as applicable, has determined, in accordance with the servicing procedures specified herein and in the applicable Servicing Agreement, as of the end of the related Collection Period, that all Liquidation Proceeds which it expects to recover with respect to the liquidation of the Mortgage Loan or disposition of the related REO Property have been recovered.

Liquidation Proceeds:  With respect to a Liquidated Mortgage Loan, cash received in connection with the ultimate repayment at maturity or other liquidation of a defaulted Mortgage Loan, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise, or the sale of the related Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage Loan.

Loan Collateral:  With respect to any Mortgage Loan, the related Mortgaged Property and any personal property securing the related Mortgage Loan, including any lessor's interest in such property, whether characterized or recharacterized as an ownership or security interest, and including any accounts or deposits pledged to secure such Mortgage Loan.

Master Servicer:  Aurora Loan Services LLC or any successor or permitted assign under the terms of this Agreement.

Master Servicer Remittance Date:  With respect to each Payment Date, two Business Days immediately preceding such Payment Date.

Master Servicer's Monthly Report:  The report containing the information described in Section 4.22 hereof, in substantially the form of Exhibit A hereto.

Master Servicing Fee:  As to any Payment Date, all income and gain realized from the investment of funds in the Collection Account during the period from and including the Servicer Remittance Date in the calendar month immediately preceding the month in which such Payment Date occurs, to but excluding the Servicer Remittance Date relating to such Payment Date.  The fee, if any, payable to a Successor Master Servicer shall be determined in accordance with Section 4.27.

Material Defect:  As defined in Section 2.02(c) hereof.

Maturity Date:  With respect to the Notes, the earlier of (i) the Payment Date in August 2046 and (ii) the Payment Date in the month following the Collection Period in which the proceeds of the last maturing Mortgage Loan are received.

CONFIDENTIAL

**Maximum Funding Amount**:  With respect to each Payment Date, an amount equal to the sum of, for each Mortgage Loan, the available credit as of the end of the immediately preceding calendar month.

**Moody's**:  Moody's Investors Service, Inc., or any successor thereto.

**Mortgage**:  The written instrument creating a valid lien on real property, which instrument may be in the form of a mortgage, deed of trust, deed to secure debt or security deed, certificate of title or other instrument creating a lien on or interest in the Loan Collateral; or in the case of a Cooperative Loan, the Security Agreement.

**Mortgage File**:  The items pertaining to a particular Mortgage Loan referred to in Exhibit G attached hereto, and any additional documents required to be added to the Mortgage File pursuant to this Agreement.

**Mortgage Loan**:  A Mortgage and the related notes or other evidences of indebtedness secured by each such Mortgage conveyed, transferred, sold, assigned to or deposited with the Trust pursuant to Section 2.01, including without limitation each Mortgage Loan listed on the Mortgage Loan Schedule, as amended from time to time.

**Mortgage Loan Purchase Agreement**:  The Flow Purchase, Warranties and Servicing Agreement dated as of July 16, 2004, between Lehman Bank, as purchaser, and Financial Freedom, as seller and servicer.

**Mortgage Loan Sale Agreement**:  The Mortgage Loan Sale Agreement dated as of August 1, 2006, by and between the Seller and the Depositor, providing for the transfer of the Mortgage Loans by the Seller to the Depositor.

**Mortgage Loan Schedule**:  The schedule attached hereto as Schedule I, which shall identify each Mortgage Loan, as such schedule may be amended from time to time.  The Mortgage Loan Schedule shall be prepared by or on behalf of the Depositor and shall set forth the following information with respect to each Mortgage Loan: (i) the Mortgage Loan identifying number; (ii) each Mortgagor's name; (iii) the street address of the Mortgaged Property including the state code; (iv) a code indicating whether the Mortgaged Property is a single family residence, 2–4 family residence, condominium unit or planned unit development; (v) the Mortgage Rate as of the Cut–off Date; (vi) the original outstanding amount of the Mortgage Loan; (vii) the Outstanding Amount of the Mortgage Loan as of the close of business on the Cut–off Date; (viii) the appraised value of the Mortgaged Property at origination; (ix) the birth date of each Mortgagor; (x) the monthly servicing fee, if any, provided for in the related Mortgage Note; (xi) the Additional Interest or Premium (each as defined in the related Mortgage Note); (xii) the date on which interest began to accrue on such Mortgage Loan; (xiii) the annual rate at which the applicable available reserve balance increases; (xiv) total unscheduled advances; (xv) zip code; (xvi) scheduled advances and original terms of payments under the Mortgage Loans; and (xvii) the age of the related Mortgagor.  In addition, such schedule shall set forth the following information with respect to each adjustable rate Mortgage Loan:  (a) the next Mortgage Rate adjustment date; (b) the gross margin; and (c) the maximum Mortgage Rate under the terms of the Mortgage Note.  With respect to the Mortgage Loans in the aggregate, the

CONFIDENTIAL

Mortgage Loan Schedule shall set forth the following information, as of the Cut–off Date: (I) the number of Mortgage Loans and (II) the Cut-off Date Outstanding Amount of the Mortgage Loans.

Mortgage Note: The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage under a Mortgage Loan.

Mortgage Rate: With respect to any Mortgage Loan, the per annum rate at which interest accrues on such Mortgage Loan.

Mortgaged Property: Either of (i) the fee simple interest in real property, together with improvements thereto including any exterior improvements to be completed within 120 days of disbursement of the related Mortgage Loan proceeds or (ii) in the case of a Cooperative Loan, the related Cooperative Shares and Proprietary Lease securing indebtedness of the Mortgagor under the related Mortgage Loan.

Mortgagor: The obligor on a Mortgage Note.

Net Liquidation Proceeds: All amounts, net of (1) expenses and (2) Servicing Advances received and retained in connection with the liquidation of Mortgage Loans, through Insurance Proceeds or condemnation proceeds, by foreclosure or otherwise, together with any net proceeds received on a monthly basis with respect to any properties acquired on behalf of the Securityholders by foreclosure or deed in lieu of foreclosure.

New York UCC: The Uniform Commercial Code as in effect in the State of New York.

Note: Any of the Class A1, Class A-IO, Class M1 or Class M2 Notes issued pursuant to the Indenture.

Note Owner: As defined in the Indenture.

Note Payment Account: The separate Eligible Account established and maintained by the Indenture Trustee pursuant to Section 6.02(a)(ii).

Note Register: As defined in the Indenture.

Noteholder: As defined in the Indenture.

Notional Amount: With respect to any Notional Note and any Payment Date, such Note's Percentage Interest of the Class Notional Amount of such Class of Notes for such Payment Date.

Notional Note: The Class A-IO Notes.

Offering Document: The private placement memorandum dated September 13, 2006 relating to the Notes.

CONFIDENTIAL

Officer's Certificate:  With respect to any Person, a certificate signed by an Authorized Officer of such Person or, in the case of the Master Servicer or a Servicer, by a Servicing Officer.

Opinion of Counsel:  A written opinion of counsel (who may be counsel to the Seller, the Depositor, the Master Servicer or the Servicer), which opinion is reasonably acceptable to the Indenture Trustee or the Issuer, as applicable.  With respect to any opinion dealing with federal income tax matters, such counsel must (i) in fact be Independent of the Seller, the Depositor, the Master Servicer, the Indenture Trustee, the Owner Trustee and the Servicer, (ii) not have any direct financial interest in the Seller, the Depositor, the Master Servicer, the Indenture Trustee, the Owner Trustee or the Servicer or in any Affiliate of any of them and (iii) not be connected with the Seller, the Depositor, the Master Servicer, the Indenture Trustee, the Owner Trustee or the Servicer as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Originator:  Financial Freedom, in its capacity as seller of the Mortgage Loans under the Mortgage Loan Purchase Agreement.

Outstanding Amount:  As to each Mortgage Loan and any date of determination, (i) the aggregate of Advances made in respect of such Mortgage Loan prior to the Cut-off Date, together with any interest accrued on such amounts and any interest accrued on such interest, *plus* (ii) all Additional Amounts acquired by the Trust with respect to such Mortgage Loan, together with any interest accrued thereon and any interest accrued on such interest, *plus* (iii) any applicable annual fee payable under such Mortgage Loan or any other amount added to the principal balance of such Mortgage Loan in accordance with its terms, each as described herein, together with any interest accrued on such amounts and any interest accrued on such interest, *minus* (iv) all amounts paid or recovered in respect of such Mortgage Loan prior to such date.

Overcollateralization Percentage:  A fraction, expressed as a percentage, the numerator of which is equal to the amount, if any, by which the sum of the aggregate Outstanding Amount of the Mortgage Loans as of the beginning of the related Collection Period and the balance on deposit in the Funding Account exceeds the aggregate Class Principal Amount of the Notes immediately prior to such Payment Date, and the denominator of which is equal to the aggregate Class Principal Amount of the Notes immediately prior to such Payment Date.

Owner Trustee:  Wilmington Trust Company, a Delaware banking corporation, and any successor in interest, not in its individual capacity, but solely as owner trustee under the Trust Agreement.

Owner Trustee Fee:  The annual fee of $3,000 payable to the Owner Trustee on each September Payment Date commencing in September 2006, pursuant to the Fee Letter Agreement attached as Exhibit G to the Trust Agreement, on each Payment Date.

Payment Date:  The 25th calendar day of each month (or the immediately succeeding Business Day if such day is not a Business Day), commencing in September, 2006.

CONFIDENTIAL

Percentage Interest:  With respect to any Note, the initial Principal Amount or initial Notional Amount thereof divided by the initial Class Principal Amount or initial Class Notional Amount, as applicable, of all Notes of the same Class.

Person:  An individual, partnership, corporation (including a statutory trust), joint stock company, limited liability company, trust, association, joint venture, Governmental Authority or any other entity of whatever nature.

Prepayment:  Any Mortgagor payment or other recovery on a Mortgage Loan that is received or recovered in advance of the maturity date of such Mortgage Loan and applied to reduce the outstanding amount of the Mortgage Loan in accordance with the terms of the Mortgage Note.

Preservation Expenses:  Reasonable and customary expenditures made by the Master Servicer or the Servicer in connection with a foreclosed Mortgage Loan prior to the liquidation thereof, including, without limitation, expenditures for real estate property taxes and assessments, payments to senior lienholders or holders of any ground lease, hazard insurance premiums, property restoration or preservation.

Primary Mortgage Insurance Policy:  Any policy of primary mortgage guaranty insurance issued by an insurance company with respect to any Mortgage Loan.

Principal Amount:  With respect to any Note, at the time of determination, the maximum specified dollar amount of principal to which the Holder thereof is then entitled hereunder, such amount being equal to the initial principal amount set forth on the face of such Note, *less* the amount of all principal payments previously made with respect to such Note, *plus* all accrued but unpaid Current Interest with respect to such Note. For purposes of Article VI hereof, unless specifically provided to the contrary, Principal Amounts shall be determined as of the close of business of the immediately preceding Payment Date, after giving effect to all payments made on such date.

Proprietary Lease:  With respect to any Cooperative Property, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Cooperative Shares.

Purchase Price:  With respect to each Mortgage Loan, the sum of (x) the Outstanding Amount of such Mortgage Loan as of the date of repurchase, plus any interest accrued thereon at the related Mortgage Rate and not previously added to such Outstanding Amount, and (y) any costs and damages incurred by the Trust in connection with any violation of any anti-predatory or anti-abusive lending laws with respect to such Mortgage Loan.

Qualified GIC:  A guaranteed investment contract or surety bond providing for the investment of funds in the Trust Accounts and insuring a minimum, fixed or floating rate of return on investments of such funds, which contract or surety bond shall:

(a)    be an obligation of an insurance company or other corporation whose long-term debt is rated by each Rating Agency in one of its two highest rating categories or, if such insurance company has no long-term debt, whose claims paying ability is rated

CONFIDENTIAL

by each Rating Agency in one of its two highest rating categories, and whose short-term debt is rated by each Rating Agency in its highest rating category;

(b)     provide that the Indenture Trustee may exercise all of the rights under such contract or surety bond without the necessity of taking any action by any other Person;

(c)     provide that if at any time the then current credit standing of the obligor under such guaranteed investment contract is such that continued investment pursuant to such contract of funds would result in a downgrading of any rating of the Securities, the Indenture Trustee shall terminate such contract without penalty and be entitled to the return of all funds previously invested thereunder, together with accrued interest thereon at the interest rate provided under such contract to the date of delivery of such funds to the Indenture Trustee;

(d)     provide that the Indenture Trustee's interest therein shall be transferable to any successor trustee hereunder: and

(e)     provide that the funds reinvested thereunder and accrued interest thereon be returnable to the Trust Account, as applicable, not later than the Business Day prior to any Payment Date.

Rating Agency:  Each of S&P, Moody's and Fitch.

Realized Loss:  With respect to each Liquidated Mortgage Loan, an amount equal to (i) the unpaid principal balance of such Mortgage Loan as of the date of liquidation, *minus* (ii) Liquidation Proceeds received, to the extent allocable to principal, net of amounts that are reimbursable therefrom to the Master Servicer or the Servicer with respect to such Mortgage Loan including expenses of liquidation.  In determining whether a Realized Loss is a Realized Loss of principal, Liquidation Proceeds shall be allocated, first, to payment of expenses related to such Liquidated Mortgage Loan, then to accrued unpaid interest and finally to reduce the principal balance of the Mortgage Loan.

Recognition Agreement:  With respect to any Cooperative Loan, an agreement between the related Cooperative Corporation and the originator of such Mortgage Loan to establish the rights of such originator in the related Cooperative Property.

Record Date:  With respect to any Payment Date, the close of business on the last Business Day of the month immediately preceding the month in which such Payment Date occurs.

Redemption Date:  As defined in the Indenture.

Redemption Price:  As defined in the Indenture.

Reference Banks:  As defined in Section 6.07(c).

Relevant UCC:  The Uniform Commercial Code as in effect in the applicable jurisdiction.

CONFIDENTIAL

REO Property:  A Mortgaged Property acquired by the Master Servicer or the Servicer on behalf of the Trust through foreclosure or deed-in-lieu of foreclosure or otherwise in connection with a defaulted Mortgage Loan.

Request For Release:  The form set forth as Exhibit E hereto.

Responsible Officer:  When used with respect to the Indenture Trustee, any Vice President, Assistant Vice President, the Secretary, any assistant Secretary, the Treasurer or any assistant Treasurer, working in its corporate trust department and having direct responsibility for the administration of any Basic Document and any other officer to whom a matter arising under this Agreement may be referred.

S&P:  Standard and Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., or any successor thereto.

Scheduled Notional Amount:  With respect to the Class A-IO Notes and any Payment Date, the Scheduled Notional Amount of such Notes attached as Schedule III hereto.

Scheduled Principal Amount:  With respect to the Class A1, Class M1 and Class M2 Notes and any Payment Date, the Scheduled Principal Amount of such Notes as set forth on the schedule of Class A1, Class M1 and Class M2 Scheduled Principal Amounts attached as Schedule II hereto.

Securities Act:  The Securities Act of 1933, as amended.

Securities Intermediary:  The Person acting as Securities Intermediary under this Agreement (which is Citibank, N.A.), its successor in interest, and any successor Securities Intermediary.

Security:  Any Note or Certificate.

Security Agreement:  With respect to any Cooperative Loan, the agreement between the owner of the related Cooperative Shares and the originator of the related Mortgage Loan that defines the terms of the security interest in such Cooperative Shares and the related Proprietary Lease.

Security Entitlement:  The meaning specified in Section 8-102(a)(17) of the New York UCC.

Securityholder or Holder:  The Person in whose name a Security is registered in the Note Register or the Certificate Register, as applicable.

Seller:  Lehman Brothers Holdings Inc., as seller under the Mortgage Loan Sale Agreement.

Servicer:  Financial Freedom or any successor in interest.

Servicer Remittance Date:  As defined in the Servicing Agreement.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

Servicing Advance:  As defined in the Servicing Agreement.

Servicing Agreement:  The Servicing Agreement dated as of August 1, 2006, among Financial Freedom, as Servicer, the Seller, Lehman Bank and the Master Servicer.

Servicing Fee:  As specified in the Servicing Agreement.

Servicing Officer:  Any officer or employee of a Servicer or Master Servicer involved in, or responsible for, the administration and servicing or master servicing, respectively, of Mortgage Loans whose name appears on a list of servicing officers attached to Officer's Certificates furnished to the Master Servicer and the Indenture Trustee, respectively, as such lists may be amended from time to time.

Servicing Standard:  The servicing standard described in Section 3.01 of the Servicing Agreement.

Subordinate Notes:  The Class M1 and M2 Notes.

Subsequent Recovery:  Any amount recovered by the Servicer or the Master Servicer with respect to a Liquidated Mortgage Loan as to which a Realized Loss was incurred after the liquidation or disposition of such Mortgage Loan.

Successor Master Servicer:  Any successor to the Master Servicer.

Tax or Taxes:  All taxes, charges, fees, levies or other assessments, including, without limitation, income, gross receipts, profits, withholding, excise, property, sales, use, occupation and franchise taxes (including, in each such case, any interest, penalties or additions attributable to or imposed on or with respect to any such taxes, charges, fees or other assessments) imposed by the United States, any state or political subdivision thereof, any foreign government or any other jurisdiction or taxing authority.

Termination Date:  As defined in Section 10.01.

Termination Price:  The sum of (1) the aggregate outstanding principal amount of the Notes, plus interest accrued and unpaid thereon, (2) the amount necessary to pay (a) all unpaid compensation, unreimbursed expenses and indemnity amounts of the Indenture Trustee, the Administrator, the Owner Trustee, the Master Servicer and the Servicer and any other fees and expenses of the Trust and (b) all amounts due Lehman Bank in respect of Additional Amounts, (3) the aggregate Future Loan Commitment, (4) any costs and damages incurred by the Trust as a result of violation of any applicable federal, state or local predatory or abusive lending law in connection with the origination of any Mortgage Loan and (5) if the Class A-IO Notes are outstanding, the Class A-IO Redemption Price.

Title Insurance Policy:  A title insurance policy maintained with respect to a Mortgage Loan.

Trust:  The Issuer.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

19

CONFIDENTIAL

Trust Account:  Each of the Collection Account, the Funding Account and the Note Payment Account.

Trust Account Property:  The Trust Accounts, the Certificate Distribution Account, all amounts and investments held from time to time in the Trust Accounts and the Certificate Distribution Account (whether in the form of deposit accounts, physical property, book-entry securities, uncertificated securities, securities entitlements, investment property or otherwise) and all proceeds of the foregoing.

Trust Agreement:  The trust agreement dated as of August 1, 2006 among the Issuer, the Depositor, the Owner Trustee and the Administrator, as such may be amended or supplemented from time to time.

Trust Estate:  The assets subject to this Agreement and the Indenture, transferred by the Depositor to the Issuer and pledged by the Issuer to the Indenture Trustee, which assets consist of all accounts, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, notes, drafts, letters of credit, advices of credit, investment property, uncertificated securities and rights to payment of any and every kind consisting of, arising from or relating to any of the following: (a) the Mortgage Loans, other than the related servicing rights, listed in the Mortgage Loan Schedule attached hereto as Schedule I, including all interest and principal due and payable after the Cut-off Date, but not including interest and principal due and payable on any Mortgage Loans on or before the Cut-off Date, together with the Mortgage Files relating to such Mortgage Loans and all rights of the Issuer in the Loan Collateral; *provided, however,* that the Trust shall not assume the obligation under any Mortgage Loan to fund any Additional Amounts thereunder, it being understood that Financial Freedom shall retain the obligation to fund such Additional Amounts, (b) the Funding Account, the Collection Account, the Note Payment Account and all amounts deposited and all securities held therein pursuant to the applicable provisions of the Indenture and this Agreement, (c) any Insurance Proceeds, REO Property, Liquidation Proceeds and other recoveries (in each case, subject to clause (a) above), (d) any Insurance Policies, (e) any Eligible Investments held or amounts on deposit in any Trust Account, (f) the rights of the Depositor under the Mortgage Loan Purchase Agreement, the Mortgage Loan Sale Agreement and the Servicing Agreement, and (g) all income, revenues, issues, products, revisions, substitutions, replacements, profits, rents and all cash and non-cash proceeds of the foregoing.

Voting Rights:  The portion of such voting rights allocated to the Notes shall be based on the fraction, expressed as a percentage, the numerator of which is the aggregate Class Principal Amount then outstanding and the denominator of which is the sum of (i) the Outstanding Amount of the Mortgage Loans and the amount on deposit in the Funding Account. The remainder of such percentage portion of voting rights shall be allocated to the Class R Certificates. The voting rights allocation to any Class of Securities will be allocated among all holders of each such class in proportion to the outstanding Class Principal Amount or Percentage Interest of such Securities.

CONFIDENTIAL

Section 1.02. Provisions of General Application.

For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)    All accounting terms not specifically defined herein shall be construed in accordance with GAAP.

(b)    All terms used in Article 8 and Article 9 of the New York UCC, and not specifically defined herein, are used herein as defined in such Article.

(c)    The terms defined in this Article include the plural as well as the singular.

(d)    The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole.  All references to Articles and Sections shall be deemed to refer to Articles and Sections of this Agreement.

(e)    References to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute to which reference is made and all regulations (including, when consistent with market practice, proposed regulations) promulgated pursuant to such statutes.

(f)    Calculations required to be made pursuant to this Agreement with respect to any Mortgage Loan in the Trust shall be made based upon current information as to the terms of the Mortgage Loans and reports of payments received from the Mortgagor on such Mortgage Loans and payments to be made to the Indenture Trustee, as supplied to the Indenture Trustee by the Master Servicer.  The Indenture Trustee shall not be required to recompute, verify or recalculate the information supplied to it by the Master Servicer.

ARTICLE II

TRANSFER OF TRUST ASSETS

Section 2.01. Conveyance of Mortgage Loans.

(a)    Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Issuer, without recourse, in trust, all the right, title and interest of the Depositor in and to:  (i) the Mortgage Loans, including (A) the Cut-off Date Outstanding Amount of the Mortgage Loans, and (B) all Additional Amounts created on or after the Cut-off Date, *provided, however*, that the Issuer does not assume the obligation under any Mortgage Loan to fund any future advances required to be made to the related Mortgagor(s) under the Mortgage Loans, and the Issuer shall not be obligated or permitted to fund any such advances, it being understood that the Depositor shall cause Financial Freedom to retain the obligation to fund future advances; (ii) all amounts deposited in the Funding Account; and (iii) all other property constituting the Trust Estate.  Such conveyance includes, without limitation, the right to all distributions of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date, together with all of the

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

21

CONFIDENTIAL

Depositor's right, title and interest in and to the Collection Account and all amounts from time to time credited to and the proceeds of the Trust Accounts and all amounts from time to time credited to and the proceeds of the Trust Accounts and all amounts from time to time credited to and the proceeds of the Funding Account, any REO Property and the proceeds thereof, the Depositor's rights under any Insurance Policies related to the Mortgage Loans, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, and any proceeds of the foregoing.

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Issuer all of its rights and interest under the Mortgage Loan Sale Agreement, which include all of the Depositor's rights and interests under the Mortgage Loan Purchase Agreement and the Servicing Agreement, and delegates its obligations under the Mortgage Loan Sale Agreement. The Issuer hereby accepts such assignment and delegation, and shall be entitled to exercise all such rights of the Depositor under the Mortgage Loan Sale Agreement, the Mortgage Loan Purchase Agreement and the Servicing Agreement as if, for such purpose, it were the Depositor.

It is agreed and understood by the Depositor and the Indenture Trustee (and the Depositor has so represented and recognized in the Mortgage Loan Sale Agreement) that it is not intended that any Mortgage Loan to be included in the Trust be (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 or (iv) a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act effective January 1, 2005.

(b)     In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Indenture Trustee (or its custodian, if applicable), as pledgee of the Issuer, the Mortgage File with respect to each Mortgage Loan, which Mortgage File shall include the documents and instruments set forth in Exhibit G attached hereto.

(c)     Assignments shall be recorded; *provided, however,* that such Assignments need not be recorded if, in the Opinion of Counsel (which must be Independent counsel) delivered on the Closing Date, recording in such states is not required to protect the Indenture Trustee's interest in the related Mortgage Loans. Subject to the preceding sentence, as soon as practicable after the Closing Date, the Depositor shall cause the Servicer (pursuant to the terms of the Servicing Agreement), at the expense of such Servicer, to cause to be properly recorded in each public recording office where the Mortgages are recorded each Assignment.

(d)     In instances where a Title Insurance Policy is required to be delivered to the Custodian, and is not so delivered, the Depositor will provide a copy of such Title Insurance Policy to the Custodian as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(e)     For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the Mortgage Files therefor,

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

22

CONFIDENTIAL

herewith delivers or causes to be delivered to the Indenture Trustee an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such Prepayment that are required to be deposited in the Collection Account have been so deposited. All original documents that are not delivered to Indenture Trustee or its custodian, shall be held by the Servicer in trust for the benefit of the Indenture Trustee and the Securityholders.

Section 2.02.    Acceptance by Issuer and Acknowledgement by Indenture Trustee.

(a)    Subject to the provisions of Section 2.01, the Issuer acknowledges receipt of the assets transferred by the Depositor included in the Trust Estate and has directed that the documents referred to in Section 2.01 and all other assets included in the definition of "Trust Estate" be delivered to the Custodian.

Subject to the provisions of Section 2.01 and subject to the review described below and any exceptions noted on the exception report described in the next paragraph below, the Indenture Trustee acknowledges receipt (by it or by its custodian) of the documents referred to in Section 2.01 on the Closing Date, and as and when received, all other assets included in the definition of "Trust Estate" (other than the Collection Account), and declares that it holds and will hold such documents and the other documents delivered to it constituting a Mortgage File, and that it holds or will hold all such assets and such other assets included in the definition of "Trust Estate" from time to time for the benefit of all present and future Securityholders.

At or prior to the Closing Date, the Custodian shall certify in substantially the form attached hereto as Exhibit B that with respect to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan specifically identified in the exception report annexed thereto as not being covered by such certification) the related Mortgage File contains the documents specified in Exhibit B.

(b)    The Custodian shall, for the benefit of the Securityholders, review each Mortgage File within 45 days after the Closing Date (or, with respect to any document delivered after the Closing Date, within 45 days of receipt) and certify, in substantially the form attached hereto as Exhibit C that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in the exception report annexed thereto as not being covered by such certification), (i) all documents required to be delivered to it pursuant Section 2.01 of this Agreement are in its possession, (ii) such documents have been reviewed by it and have not been mutilated, damaged or torn and relate to such Mortgage Loan based upon a review of the following fields on the Mortgage Loan Schedule:  (i) for fixed rate Mortgage Loans:  loan number, Mortgagor name, address, city, state, zip code, type of loan (fixed or adjustable), monthly advance payable to the Mortgagor, start date, interest rate, (ii) for adjustable rate Mortgage Loans, loan number, Mortgagor name, address, city, state, zip code, type of loan (fixed or adjustable), start date, margin, maximum interest rate and first rate adjustment date.  The Custodian shall verify whether the documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face.  Neither the Indenture Trustee nor its custodian have any

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser. The Indenture Trustee shall not have any responsibility with respect to the custody or review of the Mortgage Files held by a custodian pursuant to a custodial agreement (except to the extent that the Indenture Trustee or an Affiliate thereof is servicing as custodian) and shall not have any liability for the failure of any such custodian to perform its obligations thereunder. As of the Closing Date, the custodian will be Wells Fargo Bank, N.A.

(c)     If in the course of the review described in paragraph (b) above the Custodian discovers any document or documents constituting a part of a Mortgage File that is missing, does not appear regular on its face (*i.e.*, is mutilated, damaged, defaced, torn or otherwise physically altered) or appears to be unrelated to the Mortgage Loans identified in the Mortgage Loan Schedule (each, a "Material Defect"), the Custodian, shall identify the Mortgage Loan to which such Material Defect relates in the Interim Certification delivered to the Depositor (and to the Originator). Within 90 days of its receipt of such notice, the Depositor shall, if the Originator does not do so, be required to cure such Material Defect (and, in such event, the Depositor shall provide the Indenture Trustee with an Officer's Certificate confirming that such cure has been effected). If neither the Originator nor the Depositor cures such Material Defect, the Depositor, if the Originator does not do so, shall repurchase the related Mortgage Loan from the Issuer at the Purchase Price. The Purchase Price shall be remitted to the Master Servicer for deposit in the Collection Account. The failure of the Custodian to give the notice contemplated herein within 45 days after the Closing Date shall not affect or relieve the Depositor of its obligation to repurchase any Mortgage Loan pursuant to this Section or any other Section of this Agreement requiring the repurchase of Mortgage Loans from the Issuer.

(d)     Within 180 days following the Closing Date, the Custodian shall deliver to the Depositor a Final Certification substantially in the form annexed hereto as Exhibit D evidencing the completeness of the Mortgage Files in its possession or control (or identifying any remaining Material Defects). To the extent that such Final Certification identifies any remaining Material Defects, the Indenture Trustee shall proceed to enforce its rights pursuant to paragraph (c) above.

(e)     Nothing in this Agreement shall be construed to constitute an assumption by the Issuer, the Indenture Trustee or the Securityholders of any unsatisfied duty, claim or other liability on any Mortgage Loan or to any Mortgagor.

Section 2.03.   Repurchase of Mortgage Loans by the Seller, the Originator or the Depositor.

With respect to any Mortgage Loan repurchased by the Depositor pursuant to this Agreement, by the Originator pursuant to the Mortgage Loan Purchase Agreement or by the Seller pursuant to the Mortgage Loan Sale Agreement, the principal portion of the funds received by the Master Servicer in respect of such repurchase of a Mortgage Loan shall be considered a Prepayment by the Master Servicer and shall be deposited in the Collection Account. The Custodian, upon receipt of a Request for Release for a Deleted Mortgage Loan shall release or cause to be released and reassign to the Depositor, the Originator or the Seller, as applicable, the related Mortgage File for the Deleted Mortgage Loan and the Indenture Trustee shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation

CONFIDENTIAL

or warranty, as shall be necessary to vest in such party or its designee or assignee title to any Deleted Mortgage Loan released pursuant hereto, free and clear of all security interests, liens and other encumbrances created by the Indenture, which instruments shall be furnished to the Indenture Trustee (or its custodian) at the Depositor's expense, and the Indenture Trustee and the Custodian shall have no further responsibility with respect to the Mortgage File relating to such Deleted Mortgage Loan.

Section 2.04.  Grant of Security Interest; Intended Characterization.

(a)    It is intended that the conveyance by the Depositor to the Issuer of the Mortgage Loans, as provided for in Section 2.01 be construed as a sale by the Depositor to the Issuer of the Mortgage Loans and other assets in the Trust Estate for the benefit of the Securityholders. Further, it is not intended that any such conveyance be deemed to be a pledge of the Mortgage Loans by the Depositor to the Issuer to secure a debt or other obligation of the Depositor. However, in the event that the Mortgage Loans are held to be property of the Depositor or if for any reason this Agreement is held or deemed to create a security interest in the Mortgage Loans and other assets in the Trust Estate, then it is intended that (a) this Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the New York UCC (or the Relevant UCC if not the New York UCC); (b) the conveyances provided for in Section 2.01 shall be deemed to be (i) a grant by the Depositor to the Issuer of a security interest in all of the Depositor's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to (A) the Mortgage Loans, including with respect to each Mortgage Loan, the Mortgage Notes, the Mortgages, any related insurance policies and all other documents in the related Mortgage Files, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the terms thereof, (C) any Eligible Investments held in any Trust Account and (D) any and all general intangibles consisting of, arising from or relating to any of the foregoing, and all proceeds of the conversion, voluntary or involuntary, of the foregoing into cash, instruments, securities or other property, including without limitation all amounts from time to time held or invested in the Trust Accounts or the Certificate Deposit Account, whether in the form of cash, instruments, securities or other property and (ii) an assignment by the Depositor to the Issuer of any security interest in any and all of the Depositor's right (including the power to convey title thereto), title and interest, whether now owned or hereafter acquired, in and to the property described in the foregoing clauses (i)(A), (B), (C) and (D); (c) the possession by the Indenture Trustee, the Custodian or any other agent of the Issuer of Mortgage Notes or such other items of property as constitute instruments, money, negotiable documents or chattel paper shall be deemed to be "possession by the secured party," or possession by a purchaser or a person designated by such secured party, for purposes of perfecting the security interest pursuant to the New York UCC and any other Relevant UCC (including, without limitation, Section 9-313, 8-313 or 8-321 thereof); and (d) notifications to persons holding such property, and acknowledgments, receipts or confirmations from persons holding such property, shall be deemed notifications to, or acknowledgments, receipts or confirmations from, financial intermediaries, bailees or agents (as applicable) of the Issuer for the purpose of perfecting such security interest under applicable law.

(b)    The Depositor and, at the Depositor's direction, the Issuer shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the other

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

property described above, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement. Without limiting the generality of the foregoing, the Depositor shall prepare and deliver to the Issuer, and the Issuer shall forward for filing, or shall cause to be forwarded for filing, at the expense of the Depositor, all filings necessary to maintain the effectiveness of any original filings necessary under the Relevant UCC to perfect the Issuer's security interest in or lien on the Mortgage Loans as evidenced by an Officer's Certificate of the Depositor, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (i) any change of name of the Seller, the Depositor or the Issuer, (ii) any change of location of the place of business or the chief executive office of the Seller or the Depositor or (iii) any transfer of any interest of the Seller or the Depositor in any Mortgage Loan.

Neither the Depositor nor the Issuer shall organize under the law of any jurisdiction other than the State under which each is organized as of the Closing Date (whether changing its jurisdiction of organization or organizing under an additional jurisdiction) without giving 30 days prior written notice of such action to its immediate and intermediate transferee, including the Indenture Trustee. Before effecting such change, each of the Depositor or the Issuer proposing to change its jurisdiction of organization shall prepare and file in the appropriate filing office any financing statements or other statements necessary to continue the perfection of the interests of its immediate and intermediate transferees, including the Indenture Trustee, in the Mortgage Loans. In connection with the transactions contemplated by the Basic Documents, each of the Depositor and the Issuer authorizes its immediate or intermediate transferee, including the Indenture Trustee, to file in any filing office any initial financing statements, any amendments to financing statements, any continuation statements, or any other statements or filings described in this Section 2.04(b) (provided that such authorization shall not be construed as an obligation of the Indenture Trustee).

(c)   The Depositor shall not take any action inconsistent with the sale by the Depositor of all of its right, title and interest in and to the Trust Estate and shall indicate or shall cause to be indicated in its records and records held on its behalf that ownership of each Mortgage Loan and the other property of the Issuer is held by the Issuer. In addition, the Depositor shall respond to any inquiries from third parties with respect to ownership of a Mortgage Loan or any other property of the Trust Estate by stating that it is not the owner of such Mortgage Loan and that ownership of such Mortgage Loan or other property of the Trust Estate is held by the Issuer on behalf of the Securityholders.

Section 2.05.  Transmission of Mortgage Files.

Written instructions as to the method of shipment and shipper(s) the Indenture Trustee or its custodian is directed to utilize in connection with transmission of files and loan documents in the performance of the Indenture Trustee's duties hereunder shall be delivered by the applicable Servicer (or if the related Mortgage Loan is being serviced directly by the Master Servicer, the Master Servicer) to the Indenture Trustee or its custodian prior to any shipment of any Mortgage Files and loan documents hereunder. In the event that the Servicer (or if the related Mortgage Loan is being serviced directly by the Master Servicer, the Master Servicer) fails to provide such written instructions, the Indenture Trustee is hereby authorized to use a nationally recognized courier service. The Servicer (or if the related Mortgage Loan is being serviced directly by the

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

26

CONFIDENTIAL

Master Servicer, the Master Servicer) will arrange for the provision of such services at its sole cost and expense (or, at the Indenture Trustee's option, reimburse the Indenture Trustee or its custodian for all costs and expenses incurred by the Indenture Trustee, or its custodian, consistent with such instructions or for having used an overnight courier service) and will maintain such insurance in connection with shipment of the Mortgage Files against loss or damage to files and loan documents as the Servicer (or if the related Mortgage Loan is being serviced directly by the Master Servicer, the Master Servicer) deems appropriate. Without limiting the generality of the provisions of Section 8.04(a) hereof, it is expressly agreed that in no event shall the Indenture Trustee or its custodian have any liability for any losses or damages to any Person with respect to the Mortgage Files arising out of actions of the Indenture Trustee, or its custodian, consistent with instructions of the Servicer (or if the related Mortgage Loan is being serviced directly by the Master Servicer, the Master Servicer).

ARTICLE III

REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 3.01.  <u>Representations and Warranties of the Master Servicer</u>.

The Master Servicer hereby represents, warrants and covenants to the Depositor, the Issuer and the Indenture Trustee for their own benefit and for the benefit of the Holders of the Securities that, as of the Closing Date:

(i)    The Master Servicer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware, and is duly qualified to do business, and is in good standing in each jurisdiction in which the nature of its business requires it to be so qualified;

(ii)    The execution and delivery of this Agreement by the Master Servicer and its performance and compliance with the terms of this Agreement have been duly authorized by all necessary corporate action on the part of the Master Servicer;

(iii)    This Agreement, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid, legal and binding obligation of the Master Servicer, enforceable against it in accordance with the terms hereof, except as the enforcement hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and by general principles of equity (whether considered in a proceeding or action in equity or at law);

(iv)    The Master Servicer is not in violation of, and the execution, delivery and performance of this Agreement by the Master Servicer and its compliance with the terms hereof will not constitute a violation with respect to, any existing law or regulation or any order or decree of any court or any order, regulation or demand of any federal, state, municipal or governmental agency, which violation would materially and adversely affect the condition (financial or other) or operations of the Master Servicer or its properties or the Mortgage Loans or would materially and adversely affect its performance hereunder.  The execution, delivery and performance of this Agreement by

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

27

CONFIDENTIAL

the Master Servicer and its compliance with the terms hereof will not in any material respect conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice, lapse of time or both) a default under, the charter documents or by-laws of the Master Servicer, or any material indenture, agreement, mortgage, deed of trust or other instrument to which the Master Servicer is a party or by which it is bound, or result in the creation or imposition of any lien or encumbrance upon any of its material properties pursuant to the terms of any such indenture, agreement, mortgage, deed of trust or other instrument;

(v)    No litigation, actions, proceedings or investigations are pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would have consequences that would prohibit its entering into this Agreement or that would materially and adversely affect the condition (financial or otherwise) or operations of the Master Servicer or its properties or would materially and adversely affect its performance hereunder, or the validity or enforceability of this Agreement, or prevent the consummation of any of the transactions contemplated by this Agreement;

(vi)    No certificate of an officer, statement furnished in writing or report delivered or to be delivered pursuant to the terms hereof by the Master Servicer contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the certificate, statement or report, in light of the circumstances under which it was or will be made, not misleading;

(vii)    No consent, approval, authorization, license or order of any court or governmental agency or body is required for the execution, delivery and performance by the Master Servicer of or compliance by the Master Servicer with this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations and orders (if any) as have been obtained;

(viii)    The Master Servicer, or an Affiliate thereof the primary business of which is the servicing of conventional residential mortgage loans, is a Fannie Mae and Freddie Mac approved seller/servicer, and no event has occurred, including, but not limited to, a change in insurance coverage, which would make the Master Servicer unable to comply with Fannie Mae or Freddie Mac eligibility requirements or which would require notification to Fannie Mae or Freddie Mac; and

(ix)    The Master Servicer has obtained an errors and omissions insurance policy and a fidelity bond, each of which is in full force and effect, and each of which provides at least such coverage as is required hereunder.

Within 90 days of the earlier of discovery by the Master Servicer or receipt of notice by the Master Servicer of the breach of any representation, warranty or covenant of the Master Servicer set forth in this Section which materially and adversely affects the interests of the Securityholders in any Mortgage Loan, the Master Servicer shall cure such breach in all material respects.

CONFIDENTIAL

Section 3.02.    Representations and Warranties of the Depositor.

(a)      The Depositor hereby represents and warrants to the Master Servicer, the Issuer and the Indenture Trustee, for their own benefit and for the benefit of Holders of Securities, that as of the Closing Date:

(i)      the Depositor is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, to carry on its business as presently conducted, to enter into and perform its obligations under this Agreement, and to create the trust pursuant hereto;

(ii)      the execution and delivery by the Depositor of this Agreement have been duly authorized by all necessary corporate action on the part of the Depositor; neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Depositor or its properties or the certificate of incorporation or bylaws of the Depositor;

(iii)      the execution, delivery and performance by the Depositor of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other Governmental Authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv)      this Agreement has been duly executed and delivered by the Depositor and, assuming due authorization, execution and delivery by the other parties hereto, constitutes a valid and binding obligation of the Depositor enforceable against it in accordance with its terms except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law;

(v)      there are no actions, suits or proceedings pending or, to the knowledge of the Depositor, threatened or likely to be asserted against or affecting the Depositor, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by this Agreement or (B) with respect to any other matter which in the judgment of the Depositor will be determined adversely to the Depositor and will if determined adversely to the Depositor materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under this Agreement; and

(vi)      immediately prior to the transfer and assignment of the Mortgage Loans to the Issuer, the Depositor was the sole owner of record and holder of each Mortgage Loan, and the Depositor had good and marketable title thereto, and had full right to transfer and

CONFIDENTIAL

sell each Mortgage Loan to the Issuer free and clear, subject only to (i) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (ii) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's Title Insurance Policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (iii) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement.

(b)    The representations and warranties of the Originator with respect to the related Mortgage Loans in the Mortgage Loan Purchase Agreement have been assigned to the Issuer hereunder.  To the extent that any fact, condition or event with respect to a Mortgage Loan constitutes a breach of both (i) a representation or warranty of the Originator under the Mortgage Loan Purchase Agreement and (ii) a representation or warranty of the Seller under the Mortgage Loan Sale Agreement, the only right or remedy of the Issuer, the Indenture Trustee or of any Securityholder shall be the Issuer's right to enforce the obligations of such Originator under any applicable representation or warranty made by it.  The Issuer and the Indenture Trustee further acknowledge that the Depositor shall have no obligation or liability with respect to any breach of any representation or warranty with respect to the Mortgage Loans (except as set forth in clause (vi) above) under any circumstances.

(c)    It is understood and agreed that the representations, warranties and covenants set forth in this Section and the representations and warranties of the Originator and the Seller and assigned to the Issuer hereunder survive delivery of the Mortgage Files and the assignment of each Mortgage Loan to the Issuer and shall continue throughout the term of this Agreement.  Upon discovery by the Depositor, the Issuer or the Indenture Trustee of a breach of any of the representations and warranties set forth in this Section that adversely and materially affects the value of the related Mortgage Loan, the party discovering such breach shall give prompt written notice to the other party.  Within 60 days of the discovery of such breach with respect to the representations and warranties given to the Issuer by the Depositor or given by the Seller and assigned to the Issuer, the Depositor or the Seller, as applicable, shall either (a) cure such breach in all material respects or (b) repurchase such Mortgage Loan or any property acquired in respect thereof from the Issuer at the Purchase Price.  In the event of discovery of a breach of any representation and warranty of the Originator assigned to the Issuer, the Issuer shall enforce its rights under the Mortgage Loan Purchase Agreement for the benefit of Securityholders.

CONFIDENTIAL

Section 3.03.   Representations and Warranties of the Depositor with respect to the Mortgage Notes.

With respect to the Mortgage Notes, the Depositor hereby represents and warrants to the Master Servicer, the Issuer and the Indenture Trustee for their own benefit and for the benefit of the Holders of the Securities that as of the Closing Date:

(i)    The Mortgage Notes constitute "instruments" within the meaning of the Relevant UCC;

(ii)    The Depositor owns and has good title to the Mortgage Notes free and clear of any lien, claim or encumbrance of any Person;

(iii)    The Depositor has received all consents and approvals required by the terms of the Mortgage Notes to the transfer of the Mortgage Notes hereunder to the Issuer;

(iv)    All original executed copies of each Mortgage Note have been or will be delivered to the Indenture Trustee, or its custodian, as set forth in this Agreement;

(v)    The Depositor has received a written acknowledgement from the Custodian, that it is holding the Mortgage Notes (solely on behalf and for the benefit of the Indenture Trustee), as pledge of the Issuer under the Indenture;

(vi)    Other than the transfer to the Issuer pursuant to this Agreement, the Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Notes.  The Depositor has not authorized the filing of and is not aware of any financing statements against the Depositor that include a description of the collateral covering the Mortgage Notes other than a financing statement relating to the transfer to the Issuer hereunder or that has been terminated.  The Depositor is not aware of any judgment or tax lien filings against the Depositor; and

(vii)    None of the Mortgage Notes has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee, as pledgee of the Issuer under the Indenture.

The representations and warranties set forth in this Section shall survive the Closing Date and shall not be waived.

Section 3.04.   Representations and Warranties of the Depositor with respect to the Funding Account.

With respect to the Funding Account, the Depositor represents and warrants that:

(i)    This Agreement creates a valid and continuing security interest (as defined in the Relevant UCC) in the Financial Assets credited to the Funding Account (together, the "Funding Account Collateral") in favor of the Issuer, which security interest is prior

CONFIDENTIAL

to all other liens, and is enforceable as such against creditors of and purchasers from the
Depositor;

(ii)    All of the Funding Account Collateral has been credited to the Funding
Account.  The Securities Intermediary for the Funding Account has agreed to treat all
assets credited to the Funding Account as "financial assets" within the meaning of the
applicable UCC;

(iii)    The Depositor owns and has good title to the Funding Account Collateral,
free and clear of any lien, claim or encumbrance of any Person;

(iv)    The Depositor has received all consents and approvals required by the
terms of the Funding Account Collateral to the transfer to the Issuer of its interest and
rights in the Funding Account Collateral hereunder;

(v)    The Depositor has delivered to the Issuer a fully executed agreement
pursuant to which the Securities Intermediary has agreed to comply with all instructions
originated by the Issuer relating to the Funding Account without further consent by the
Depositor;

(vi)    Other than the transfer to the Issuer pursuant to this Agreement, the
Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise
conveyed any of the Funding Account Collateral.  The Depositor has not authorized the
filing of and is not aware of any financing statements against the Depositor that include a
description of collateral covering the Funding Account Collateral other than any
financing statement relating to the transfer to the Issuer hereunder or that has been
terminated.  The Depositor is not aware of any judgment or tax lien filings against the
Depositor; and

(vii)    The Funding Account is not in the name of any Person other than the
Issuer or the Indenture Trustee, in its capacity as Securities Intermediary.  The Depositor
has not consented to the Securities Intermediary of the Funding Account to comply with
Entitlement Orders of any Person other than the Issuer or the Indenture Trustee.

The representations and warranties set forth in this Section shall survive the Closing Date
and shall not be waived.

ARTICLE IV

ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 4.01.  Duties of the Master Servicer.

Subject to the terms of this Agreement, the Master Servicer shall master service the
Mortgage Loans in accordance with the terms of this Agreement, and shall have full power and
authority to do any and all things which it may deem necessary or desirable in connection with
such master servicing and administration.  Furthermore, the Master Servicer shall oversee and

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

32

CONFIDENTIAL

consult with the Servicer as necessary from time-to-time to carry out the Master Servicer's obligations hereunder, shall, from time to time, receive, review and evaluate all reports, information and other data provided to the Master Servicer by the Servicer. The Master Servicer shall monitor the Servicer's reports of its servicing activities with respect to each related Mortgage Loan, reconcile the results of such monitoring with information provided by the Servicer on a monthly basis and coordinate corrective adjustments to the Servicer's and Master Servicer's records, and based on such reconciled and corrected information, prepare the report specified in Section 4.22 and any other information, statements and reports required hereunder. The Master Servicer shall reconcile the results of its Mortgage Loan monitoring with the actual remittances of the Servicer to the Collection Account pursuant to the Servicing Agreement.

Section 4.02.  <u>Monitoring of Servicers' Performance</u>.

The Master Servicer shall be responsible for reporting to the Issuer, the Indenture Trustee and the Depositor the compliance by the Servicer with its duties under the Servicing Agreement. In the review of the Servicer's activities, the Master Servicer may conclusively rely upon an Officer's Certificate of the Servicer with regard to the Servicer's compliance with terms of the Servicing Agreement. In the event that the Master Servicer, in its reasonable judgment, determines that it requires reports from the Servicer in addition to the reports the Servicer is required to deliver to the Master Servicer pursuant to the Servicing Agreement and the Master Servicer is obligated to reimburse the Servicer for the cost of such additional reports, the Master Servicer shall be reimbursed for such amounts from the Collection Account. In the event that the Master Servicer, in its judgment, determines that the Servicer should be terminated in accordance with the Servicing Agreement, or that a notice should be sent pursuant to the Servicing Agreement with respect to the occurrence of an event that, unless cured, would constitute grounds for such termination, the Master Servicer shall notify the Depositor and the Issuer thereof and the Master Servicer shall issue such notice or take such other action as it deems appropriate.

The Master Servicer shall require the Servicer to comply with the remittance requirements and other obligations set forth in the Servicing Agreement.

Section 4.03.  <u>Master Servicer Fidelity Bond and Master Servicer Errors and Omissions Insurance Policy</u>.

The Master Servicer, at its expense, shall maintain in effect a blanket fidelity bond and an errors and omissions insurance policy, affording coverage with respect to all directors, officers, employees and other Persons acting on such Master Servicer's behalf, and covering errors and omissions in the performance of the Master Servicer's obligations hereunder. The errors and omissions insurance policy and the fidelity bond shall be in such form and amount generally acceptable for entities serving as master servicers or trustees.

Section 4.04.  <u>Master Servicer's Financial Statements and Related Information</u>.

For each year this Agreement is in effect, the Master Servicer shall submit to the Indenture Trustee, each Rating Agency and the Depositor a copy of the Master Servicer's annual unaudited financial statements on or prior to May 31 of each year, which may be in the form of

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

33

CONFIDENTIAL

the consolidated financial statements of the Master Servicer's corporate parent. Such financial statements shall include a balance sheet, income statement and statement of retained earnings.

Section 4.05.  Power to Act; Procedures.

The Master Servicer shall master service the Mortgage Loans as provided in this Agreement and shall have full power and authority to do any and all things that it may deem necessary or desirable in connection with the master servicing and administration of the Mortgage Loans, including but not limited to the power and authority (i) to execute and deliver, on behalf of the Securityholders and the Indenture Trustee, customary consents or waivers and other instruments and documents, (ii) to collect any Insurance Proceeds and Liquidation Proceeds, and (iii) to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan, in each case, in accordance with the provisions of this Agreement and the Servicing Agreement, as applicable. The Indenture Trustee shall execute, upon request, any powers of attorney furnished to it empowering the Master Servicer or the Servicer to execute and deliver instruments of satisfaction or cancellation, or of partial or full release or discharge, and to foreclose upon or otherwise liquidate Mortgaged Property, and to appeal, prosecute or defend in any court action relating to the Mortgage Loans or the Mortgaged Property, in accordance with the Servicing Agreement and this Agreement, and the Indenture Trustee shall execute and deliver such other documents furnished to it, as the Master Servicer may request, necessary or appropriate to enable the Master Servicer to master service the Mortgage Loans and carry out its duties hereunder, in each case in accordance with the terms of this Agreement (and the Indenture Trustee shall have no liability for misuse of any such powers of attorney or other such documents by the Master Servicer or the Servicer). Notwithstanding anything to the contrary, the Master Servicer shall not without the Indenture Trustee's consent: (i) initiate any action, suit or proceeding under the Indenture Trustee's name without indicating the Master Servicer's representative capacity or (ii) take any action with the intent to cause, and which actually does cause, the Indenture Trustee to be registered to do business in any state. If the Master Servicer or the Indenture Trustee has been advised that it is likely that the laws of the state in which action is to be taken prohibit such action if taken in the name of the Indenture Trustee or that the Indenture Trustee would be adversely affected under the "doing business" or tax laws of such state if such action is taken in its name, then upon request of the Indenture Trustee, the Master Servicer shall join with the Indenture Trustee in the appointment of a co-trustee pursuant to Section 6.10 of the Indenture. In the performance of its duties hereunder, the Master Servicer shall be an independent contractor and shall not, except in those instances where it is taking action in the name of the Indenture Trustee, be deemed to be the agent of the Indenture Trustee.

Section 4.06.  Servicing Agreements; Enforcement of Servicers' Obligations.

The Master Servicer, for the benefit of the Indenture Trustee and the Securityholders, shall enforce the obligations of the Servicer under the Servicing Agreement, and shall, in the event that the Master Servicer obtains actual knowledge that the Servicer has failed to perform its obligations in accordance with the Servicing Agreement, subject to Section 4.02, terminate the rights and obligations of the Servicer thereunder and, at the Master Servicer's election, either service the related Mortgage Loans in accordance with the terms and provisions of the Servicing Agreement or enter into a Servicing Agreement with a successor servicer. Such enforcement,

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

34

CONFIDENTIAL

including, without limitation, the legal prosecution of claims, termination of Servicing Agreements and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer, in its good faith business judgment, would require were it the owner of the related Mortgage Loans.  The Master Servicer shall pay the costs of such enforcement at its own expense, provided that the Master Servicer shall not be required to prosecute or defend any legal action except to the extent that the Master Servicer shall have received reasonable indemnity for its costs and expenses in pursuing such action or such amounts are permitted to be withdrawn from the Collection Account.

In the event that the Seller receives any amounts from the Servicer relating to a Mortgage Loan and such amounts constitute part of the Trust Estate, the Seller shall immediately notify the Master Servicer and transfer such amounts to the Collection Account by wire transfer of immediately available funds.

Section 4.07.  Collection Account.

(a)     On the Closing Date, the Master Servicer shall open and shall thereafter maintain an account held in trust (the "Collection Account"), entitled "Citibank, N.A., as trustee, in trust for the benefit of the Holders of Structured Asset Securities Corporation Reverse Mortgage Loan Trust Securities, Series 2006-RM1."  The Collection Account shall relate solely to the Securities issued by the Trust, and funds in such Collection Account shall not be commingled with any other monies.

(b)     The Collection Account shall be an Eligible Account.  If an existing Collection Account ceases to be an Eligible Account, the Master Servicer shall establish a new Collection Account that is an Eligible Account within 30 days and transfer all funds on deposit in such existing Collection Account into such new Collection Account.

(c)     The Master Servicer will give to the Indenture Trustee prior written notice of the name and address of the depository institution at which the Collection Account is maintained and the account number of such Collection Account. The Master Servicer shall take such actions as are necessary to cause the depository institution holding the Collection Account to hold such account in the name of the Indenture Trustee (subject to such Master Servicer's right to direct payments and investments and its rights of withdrawal) under this Agreement. The Master Servicer, at its option, may choose to make daily remittances from the Collection Account to the Indenture Trustee for deposit into the Note Payment Account.

(d)     The Master Servicer shall deposit or cause to be deposited into the Collection Account, no later than the Business Day following the Closing Date, any amounts representing payments in full, Prepayments, Liquidation Proceeds and Insurance Proceeds on the Mortgage Loans received by the Master Servicer after the Cut-off Date but on or before the Closing Date. Thereafter, the Master Servicer shall deposit or cause to be deposited into the Collection Account on the applicable Master Servicer Remittance Date all amounts remitted to it by the Servicer in respect of the Mortgage Loans, including the following:

(i)     all payments on or with respect to a Mortgage Loan;

CONFIDENTIAL

(ii)    all Prepayments, Liquidation Proceeds, Insurance Proceeds and Condemnation Proceeds;

(iii)    any other recovery with respect to a Mortgage Loan not otherwise specified in this paragraph (d), including all Liquidation Proceeds with respect to the Mortgage Loans and REO Property and all amounts received in connection with the operation of any REO Property, net of any unpaid Servicing Fees with respect to such Mortgage Loans; and

(iv)    all proceeds of any Mortgage Loan repurchased by the Depositor, the Seller, the Originator or any other Person.

(e)    Funds in the Collection Account shall be invested in Eligible Investments (selected by and at the direction of the Master Servicer) which shall mature not later than the Master Servicer Remittance Date and any such Eligible Investment shall not be sold or disposed of prior to its maturity. In the absence of direction by the Master Servicer, all funds in the Collection Account shall remain uninvested. All such Eligible Investments shall be made in the name of the Indenture Trustee (in its capacity as such) or its nominee. All income and gain realized from any such investment shall be for the benefit of the Master Servicer and shall be subject to its withdrawal or order from time to time and shall not be part of the Trust Estate. The amount of any losses incurred in respect of any such investments shall be deposited in the Collection Account by the Master Servicer out of its own funds, without any right of reimbursement therefor, immediately as realized. The Indenture Trustee has no duty with respect to and shall not be held liable by reason of any insufficiency in the Collection Account resulting from any investment loss on any investment included therein (except to the extent that the Indenture Trustee is the obligor and has defaulted thereon. The foregoing requirements for deposit in the Collection Account are exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments of interest on funds in the Collection Account need not be deposited by the Master Servicer in the Collection Account and may be retained by the Master Servicer as the Master Servicing Fee, together with any Additional Master Servicing Fee, if applicable. If the Master Servicer deposits in the Collection Account any amount not required to be deposited therein, it may at any time withdraw such amount from the Collection Account.

Section 4.08. <u>Application of Funds in the Collection Account</u>.

The Master Servicer may, from time to time, make or cause to be made withdrawals from the Collection Account for the following purposes:

(i)    to pay to the Depositor, the Seller or the Originator, as applicable, with respect to each Mortgage Loan or REO Property acquired in respect thereof that has been purchased pursuant to this Agreement, all amounts received thereon and not distributed on the date on which the related repurchase was effected;

(ii)    to pay to itself, as the Master Servicing Fee, income earned on the investment of funds deposited in the Collection Account and any Additional Master Servicing Fee, if applicable;

CONFIDENTIAL

(iii)     to make deposits into the Note Payment Account in the amounts and in the manner provided for in Section 6.04(b);

(iv)     to make payment to itself and others pursuant to any provision of this Agreement and the other Basic Documents;

(v)     to withdraw funds deposited in error in the Collection Account; and

(vi)     to clear and terminate the Collection Account.

Section 4.09.   [Reserved]

Section 4.10.   <u>Termination of Servicing Agreements; Successor Servicers.</u>

(a)     The Master Servicer shall be entitled to terminate the rights and obligations of the Servicer under the Servicing Agreement in accordance with the terms and conditions of the Servicing Agreement and this Agreement.  In such event, within 90 days of such termination, the Master Servicer shall appoint a successor Servicer or shall itself (or through an Affiliate) act as servicer of the related Mortgage Loans.  If the Master Servicer assumes the role of successor Servicer, or until a successor Servicer is appointed, the Master Servicer shall (i) immediately make Servicing Advances and advances to Mortgagors as required under the terms of the related Servicing Agreement and (ii) perform all responsibilities, duties and liabilities of the terminated Servicer, including the obligation to sell Additional Amounts to Lehman Bank pursuant to the Mortgage Loan Purchase Agreement.

(b)     If the Master Servicer acts as Servicer, it will not assume liability for the representations and warranties of the Servicer, if any, that it replaces.  The Master Servicer shall, however, be deemed to have made the representations contained in Section 3.01 hereof as of the assumption by the Master Servicer of the duties of the Servicer.  The Master Servicer shall use reasonable efforts to have the successor Servicer assume liability for the representations and warranties made by the terminated Servicer in respect of the related Mortgage Loans.

(c)     In no event shall the Master Servicer be responsible for monitoring, supervising or overseeing the obligations of any subservicer under any subservicing agreement.

Section 4.11.   <u>Master Servicer Liable for Enforcement.</u>

The Master Servicer shall, subject to the provisions hereof, enforce the provisions of the Servicing Agreement for the benefit of the Securityholders to the extent and only to the extent, that the Master Servicer obtains actual knowledge that the Servicer has failed to perform its obligations in accordance with the terms of the Servicing Agreement.  As set forth in Section 4.02, the Master Servicer may conclusively rely upon an Officer's Certificate of the Servicer with regard to the Servicer's compliance with the terms of the Servicing Agreement.

Section 4.12.   <u>No Contractual Relationships.</u>

The Servicing Agreement that may be entered into and any other transactions or services relating to the Mortgage Loans involving the Servicer shall be deemed to be between such

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

37

CONFIDENTIAL

Servicer and the other parties thereto (and to the extent the Issuer and the Indenture Trustee are assigned rights thereunder or made third-party beneficiaries thereof, the Issuer and the Indenture Trustee) and the Depositor shall not be deemed parties thereto and shall have no claims, rights, obligations, duties or liabilities with respect to such Servicing Agreement except as set forth in this Agreement.

Section 4.13.  [Reserved]

Section 4.14.  [Reserved]

Section 4.15.  <u>Release of Mortgage Files</u>.

(a)      Until all amounts distributable in respect of the Securities have been distributed in full, the Custodian shall retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions of this Agreement.

(b)      Upon becoming aware of the payment in full of any Mortgage Loan, or the receipt by the Servicer of a notification that payment in full has been escrowed in a manner customary for such purposes for payment to Securityholders on the next Payment Date, the Servicer will, if required under the Servicing Agreement, promptly notify the Custodian) by a certification substantially in the form of Exhibit E hereto (which certification shall include a statement to the effect that all amounts received in connection with such payment that are required to be deposited in the Collection Account maintained by the Master Servicer pursuant to Section 4.07 have been or will be so deposited) of a Servicing Officer and shall request the Custodian to deliver to the Servicer the related Mortgage File.  Upon receipt of such certification and request, the Custodian shall promptly release the related Mortgage File to the Servicer and shall have no further responsibility with regard to such Mortgage File.  Upon any such payment in full, the Servicer is authorized to give, on behalf of the Indenture Trustee, as the mortgagee under the Mortgage that secured the Mortgage Loan, an instrument of satisfaction (or assignment of mortgage without recourse) regarding the Mortgaged Property subject to the Mortgage, which instrument of satisfaction or assignment, as the case may be, shall be delivered to the Person or Persons entitled thereto against receipt therefor of such payment, it being understood and agreed that (unless otherwise expressly provided in the Servicing Agreement) no expenses incurred in connection with such instrument of satisfaction or assignment, as the case may be, shall be chargeable to the Collection Account or any Custodial Account.

(c)      From time to time and as appropriate for the servicing or foreclosure of any Mortgage Loan and in accordance with the Servicing Standard and the Servicing Agreement, the Indenture Trustee shall execute such documents as shall be prepared and furnished to the Indenture Trustee by the Servicer (in form reasonably acceptable to the Indenture Trustee) and as are necessary to the prosecution of any such proceedings.  The Custodian, upon the request of the Servicer, and delivery to the Custodian of two copies of a Request for Release signed by a Servicing Officer substantially in the form of Exhibit E, release the related Mortgage File held in its possession or control to the Servicer.  Such Request for Release shall obligate the Servicer to return the Mortgage File to the Custodian, when the need therefor by the Servicer no longer exists unless the Mortgage Loan shall be liquidated, in which case, upon receipt of a certificate

CONFIDENTIAL

of a Servicing Officer similar to that hereinabove specified, the Request for Release shall be delivered by the Custodian to the Servicer.

(d)     The Custodian covenants and agrees that it will comply with all relevant laws and regulations governing the custody, release and delivery of the Mortgage Loan documents within its possession or control.

Section 4.16.  Documents, Records and Funds in Possession of Master Servicer To Be Held for Indenture Trustee.

(a)     The Master Servicer shall transmit and the Servicer (to the extent required by the Servicing Agreement) shall transmit to the Custodian such documents and instruments coming into the possession of the Master Servicer or the Servicer from time to time as are required by the terms hereof, or in the case of the Servicer, the Servicing Agreement, to be delivered to the Custodian. Any funds received by the Master Servicer or by a Servicer in respect of any Mortgage Loan or which otherwise are collected by the Master Servicer or by the Servicer as Liquidation Proceeds or Insurance Proceeds in respect of any Mortgage Loan shall be held for the benefit of the Indenture Trustee and the Securityholders subject to the Master Servicer's right to retain or withdraw from the Collection Account the Master Servicing Fee, any Additional Master Servicing Fee, if applicable, and other amounts provided in this Agreement, and to the right of the Servicer to retain its Servicing Fee and other amounts as provided in the Servicing Agreement. The Master Servicer shall, and shall (to the extent provided in the Servicing Agreement) cause the Servicer to, provide access to information and documentation in its possession regarding the Mortgage Loans to the Indenture Trustee and the Depositor, their agents and accountants at any time upon reasonable request and during normal business hours, and to Securityholders that are savings and loan associations, banks or insurance companies, the Office of Thrift Supervision, the FDIC and the supervisory agents and examiners of such Office and Corporation or examiners of any other federal or state banking or insurance regulatory authority if so required by applicable regulations of the Office of Thrift Supervision or other regulatory authority. Such access shall be afforded without charge but only upon reasonable request in writing and during normal business hours at the offices of the Master Servicer designated by it. In fulfilling such a request the Master Servicer shall not be responsible for determining the sufficiency of such information.

(b)     All Mortgage Files and funds collected or held by, or under the control of, the Master Servicer, in respect of any Mortgage Loans, whether from the collection of principal and interest payments or from Liquidation Proceeds or Insurance Proceeds, shall be held by the Master Servicer for and on behalf of the Issuer, the Indenture Trustee and the Securityholders and shall be and remain the sole and exclusive property of the Issuer, subject to the lien of the Indenture in favor of the Indenture Trustee; *provided, however,* that the Master Servicer and the Servicer shall be entitled to deduct from any such funds any amounts that are permitted to be withdrawn by the Master Servicer pursuant to Section 4.08 hereof or by the Servicer under the Servicing Agreement.

(c)     The Master Servicer hereby acknowledges that concurrently with the execution of this Agreement, the Indenture Trustee shall have a security interest in the Mortgage Loans and in all Mortgage Files representing such Mortgage Loans and in all funds now or hereafter held by,

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

39

CONFIDENTIAL

or under the control of, the Master Servicer that are collected by the Master Servicer in connection with the Mortgage Loans, whether as installments of principal and interest or as full or partial prepayments of principal or interest or as Liquidation Proceeds or Insurance Proceeds or otherwise, and in all proceeds of the foregoing and proceeds of proceeds (but excluding any fee or other amounts to which the Servicer is entitled under the Servicing Agreement, or the Master Servicer or the Depositor is entitled to hereunder); and the Master Servicer agrees that so long as the Mortgage Loans are assigned to and held by or on behalf of the Indenture Trustee, all documents or instruments constituting part of the Mortgage Files, and such funds relating to the Mortgage Loans which come into the possession or custody of, or which are subject to the control of, the Master Servicer shall be held by the Master Servicer for and on behalf of the Indenture Trustee as the Indenture Trustee's agent and bailee for purposes of perfecting the Indenture Trustee's security interest therein as provided by relevant Uniform Commercial Code or other laws.

(d)    The Master Servicer agrees that it shall not create, incur or subject any Mortgage Loans, or any funds that are deposited in any Custodial Account or the Collection Account, or any funds that otherwise are or may become due or payable to the Indenture Trustee, to any claim, lien, security interest, judgment, levy, writ of attachment or other encumbrance, nor assert by legal action or otherwise any claim or right of setoff against any Mortgage Loan or any funds collected on, or in connection with, a Mortgage Loan, except as otherwise expressly provided herein.

Section 4.17.  Removal of Master Servicer; Resignation of Master Servicer; Term of Servicing.

(a)    If any of the following events (each, an "Event of Master Servicer Default") shall occur and be continuing:

(i)    Any failure by the Master Servicer (x) to deposit to the Collection Account all collections received by the Master Servicer directly within two Business Days following the Business Day on which such amounts are deposited by the Master Servicer to its general account (which shall be within one Business Day following receipt of such amount) and are determined by the Master Servicer to relate to the Mortgage Loans or (y) to remit to the Indenture Trustee for deposit in the Note Payment Account any amount required to be deposited therein pursuant to Section 6.04(b) hereof within one Business Day after notice of failure to remit such amount by the Master Servicer Remittance Date has been given by the Indenture Trustee to the Master Servicer; or

(ii)    Failure on the part of the Master Servicer to observe or perform any term, covenant or agreement in this Agreement (other than those covered by clause (i) above), which failure materially and adversely affects the rights of the Holders of the Securities and which continues unremedied for 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by the Depositor, the Indenture Trustee or the Securityholders who, in the aggregate, hold Securities evidencing Voting Rights of 10% or more; or

CONFIDENTIAL

(iii)    Any proceeding shall be instituted against the Master Servicer seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or any of its Debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, custodian or other similar official for it or for any substantial part of its property, or any of the actions sought in such proceeding (including, without limitation, the entry of an order for relief against, or the appointment of a receiver, trustee, custodian or other similar official for, it or for any substantial part of its property) shall occur; or

(iv)    The commencement by the Master Servicer of a voluntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated bankrupt or insolvent, or the consent by it to the entry of a decree or order for relief in respect of the Master Servicer in an involuntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable Federal or state law, or the consent by it to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or similar official of the Master Servicer or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its Debts generally as they become due, or the taking of corporate action by the Master Servicer in furtherance of any such action; or

(v)    The Master Servicer shall fail to deliver a report expressly required by this Agreement, and the continuance of such failure for a period of three Business Days after the date upon which written notice of such failure shall have been given to the Master Servicer by the Depositor or the Indenture Trustee (except that such three Business Day period shall be deemed not to run as to any portion of such report during such time as the Master Servicer's failure to provide such information is for cause or inability beyond its control and the Master Servicer provides the Indenture Trustee and the Depositor with an Officer's Certificate of the Master Servicer to such effect);

then the Indenture Trustee may, and at the direction of Securityholders of not less than 51% of the aggregate Voting Rights of the Securities shall, in each case by delivery to the Master Servicer and the Depositor of a written notice specifying the occurrence of any of the foregoing events terminate the responsibilities of the Master Servicer hereunder, without demand, protest or further notice of any kind, all of which are hereby waived by the Master Servicer; provided, that, in the event any of the events described in subsections (iii) or (iv) shall have occurred, termination of the duties and responsibilities of the Master Servicer shall automatically occur, without, demand, protest, or further notice of any kind, all of which are expressly waived by the Master Servicer; provided that in the case of a proceeding described in subsection (iii) brought by a third party and not consented to by the Master Servicer, an Event of Master Servicer Default shall not be deemed to have occurred until the earliest to occur of (A) the failure of the relevant court to grant the Master Servicer's motion to dismiss such proceeding within 90 days of the

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

41

CONFIDENTIAL

filing of such motion, (B) the denial of the Master Servicer's motion to dismiss such proceeding by the relevant court, (C) the failure of the Master Servicer to file such a motion within 30 days of the notice of the proceeding and (D) the subsequent withdrawal by the Master Servicer of its motion to dismiss such proceeding.

If an Event of Master Servicer Default occurs and is continuing and if a Responsible Officer of the Indenture Trustee has actual knowledge or has received written notice thereof, the Indenture Trustee shall give prompt written notice of thereof to the Issuer, the Depositor, the Master Servicer, the Rating Agencies and each Securityholder.

(b)    The Master Servicer shall not resign from the obligations and duties hereby imposed on it, except with the consent of the Depositor and the Indenture Trustee or upon determination that its duties hereunder are no longer permissible under applicable law or are in material conflict by reason of applicable law with any other activities carried on by it, the other activities of the Master Servicer so causing such a conflict being of a type and nature carried on by the Master Servicer at the date of this Agreement. Any such determination permitting the resignation of the Master Servicer shall be evidenced by an Opinion of Counsel to the effect that such duties are not so permissible (the cost of which shall be borne by the Master Servicer) to such effect which shall be delivered to the Indenture Trustee, the Depositor, the Rating Agencies and the Securityholders.

(c)    Except as may be required by law, no resignation of the Master Servicer shall become effective until a Successor Master Servicer shall have assumed all of the Master Servicer's responsibilities and obligations hereunder.

(d)    [Reserved]

(e)    Any collections received by the Master Servicer after removal or resignation shall be endorsed by it and remitted directly and immediately to the Successor Master Servicer. The Master Servicer shall be entitled to receive the Master Servicing Fee and any Additional Master Servicing Fee, if applicable, through the day on which it is terminated as Master Servicer (which may be pro rated for a partial month).

To the extent that the Master Servicer, at the time of its removal or resignation, has theretofore expended any amounts as Servicing Advances or advances to Mortgagors with respect to any Mortgage Loan as of such date, the Master Servicer shall thereafter be entitled to receive from the Successor Master Servicer, monthly, such information as may be generated by the Successor Master Servicer as may be reasonably necessary to enable the Master Servicer to monitor the recovery of, and collection efforts undertaken with respect to, Servicing Advances and advances to Mortgagors, which information will include details of collection activities, payment records and trial balances.

(f)    The Master Servicer agrees to cooperate reasonably with the Successor Master Servicer in effecting the termination of the Master Servicer's servicing responsibilities and rights hereunder and shall promptly provide to the Successor Master Servicer all documents and records reasonably requested by it to enable it to assume the Master Servicer's functions hereunder and shall promptly also transfer to the Successor Master Servicer all amounts which

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

then have been or should have been deposited in the Collection Account, or which are thereafter received with respect to the Mortgage Loans. The Successor Master Servicer shall not be held liable for any acts or omissions of the prior Master Servicer or by reason of any failure to make, or any delay in making, any distribution hereunder or any portion thereof caused by (i) the failure of the Master Servicer to deliver, or any delay in delivering, cash, documents or records to it, or (ii) restrictions imposed by any regulatory authority having jurisdiction over the Master Servicer. The Master Servicer (or the Issuer if the Master Servicer shall fail to do so) shall reimburse the Successor Master Servicer for its reasonable costs and expenses associated with the transfer of the master servicing following resignation of the Master Servicer or termination of the Master Servicer pursuant to this Section.

Section 4.18.  Appointment of Successor Master Servicer.

(a)     In the event the Master Servicer shall for any reason no longer be the Master Servicer (including by reason of any Event of Master Servicer Default under this Agreement), the Indenture Trustee shall appoint, or petition to a court of competent jurisdiction for the appointment of, a Fannie Mae- or Freddie Mac- approved mortgage servicing institution with a net worth of at least $15,000,000 to act as successor to the Master Servicer, who shall assume all of the Master Servicer's rights, duties and obligations hereunder. The Indenture Trustee shall not be required to become Successor Master Servicer.

(b)     In the event the Master Servicer is terminated, the Master Servicer shall upon request of the Indenture Trustee but at the expense of such Master Servicer, timely deliver to the assuming party all documents and records (including, without limitation, computer tapes, disks and other electronic or magnetic media, in each case in readable format) in its possession relating to the Servicing Agreement and the related Mortgage Loans and an accounting of amounts collected and held by it and otherwise use its best efforts to effect the orderly and efficient assumption of its duties as Master Servicer to the assuming party.

Section 4.19.  Indenture Trustee To Retain Possession of Certain Insurance Policies and Documents.

The Servicer on behalf of the Indenture Trustee shall retain possession and custody of the originals of the Primary Mortgage Insurance Policies or certificate of insurance, if applicable, and any certificates of renewal as to the foregoing as may be issued from time to time as contemplated by this Agreement. Until all amounts distributable in respect of the Mortgage Notes have been distributed in full and the Master Servicer otherwise has fulfilled its obligations under this Agreement, the Indenture Trustee (or its custodian) shall also retain possession and custody of each Mortgage File in accordance with and subject to the terms and conditions of this Agreement. In accordance with the terms of the Servicing Agreement, the Servicer is required to promptly deliver or cause to be delivered to the Custodian upon the execution or receipt thereof the originals of the Primary Mortgage Insurance Policies and any certificates of renewal thereof, and such other documents or instruments that constitute portions of the Mortgage File that come into the possession of the Servicer from time to time.

CONFIDENTIAL

Section 4.20.   Compensation to the Master Servicer.

The Master Servicer shall be entitled either (a) to pay itself the Master Servicing Fee and any Additional Master Servicing Fee, if applicable, in respect of remittances from the Servicer prior to the deposit of such payment in the Collection Account or (b) to withdraw from the Collection Account, subject to Section 4.08, the Master Servicing Fee and any Additional Master Servicing Fee, if applicable.  If the Master Servicer does not retain or withdraw the Master Servicing Fee or any Additional Master Servicing Fee, if applicable, from the Collection Account as provided herein, the Master Servicer shall be entitled to direct the Indenture Trustee to pay the Master Servicer such fees by withdrawal from the Note Payment Account to the extent that payments have been received with respect to the applicable Mortgage Loan.  The Master Servicer shall be required to pay all expenses incurred by it in connection with its activities hereunder and shall not be entitled to reimbursement therefor except as provided in this Agreement.  Pursuant to Section 4.07, all income and gain realized from any investment of funds in the Collection Account shall be for the benefit of the Master Servicer as the Master Servicing Fee.

Section 4.21.   Servicing Advances.

The Master Servicer, to the extent the Master Servicer becomes the successor to the Servicer pursuant to Section 4.10 and to the extent required by the related Servicing Agreement, will advance all "out-of-pocket" costs and expenses incurred in the performance of its servicing obligations with respect to defaulted Mortgage Loans, including, but not limited to, the cost of (i) Preservation Expenses, (ii) any enforcement or judicial proceedings, including foreclosures, and any reasonable legal expenses in connection with the assertion by a Mortgagor of any claim or defense that the Mortgagor may have had against the originator in connection with the sale, financing or construction of such Mortgagor's home and which the Mortgagor asserts against the Master Servicer and (iii) the management and liquidation of REO Property, but shall only pay such costs and expenses to the extent the Master Servicer reasonably believes such costs and expenses will increase net Liquidation Proceeds on the related Mortgage Loan.  Each such expenditure, if customary and reasonable, and exclusive of overhead, will constitute a "Servicing Advance."

Section 4.22.   Master Servicer Reports.

To the extent the Master Servicer receives timely information from the Servicer, not later than 2:00 p.m. New York time (a) two Business Days prior to each Additional Amounts Draw Date, the Master Servicer shall report to the Indenture Trustee the amount of the Additional Amounts with respect to the Mortgage Loans for the related Collection Period and (b) five Business Days prior to each Payment Date, the Master Servicer shall deliver or cause to be delivered to the Indenture Trustee the related Master Servicer's Monthly Report which shall contain (i) a summary report of Mortgage Loan payment activity for such month, (ii) delinquency summary reports for Mortgage Loans that have matured but have not been repaid in such month, (iii) an itemization by category of all amounts to be paid on the Payment Date and (iv) such other information as is necessary for the Indenture Trustee to prepare the monthly

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

report described in Section 6.08 and to make withdrawals from and deposits to the Funding Account in Accordance with Sections 6.10 and 6.05.  In the event the Master Servicer does not receive timely information from the Servicer, the Master Servicer shall deliver or cause to be delivered such reports to the Indenture Trustee within one Business Day following the Master Servicer's receipt of the necessary information.  The Indenture Trustee shall not be liable for any failure or delay in performing its duties due to a delay or failure in receiving the reporting information described above.

Section 4.23.  Annual Officer's Certificate as to Compliance.

(a)      The Master Servicer shall deliver to the Indenture Trustee, the Depositor and the Rating Agencies on or before May 31 of each year, commencing on May 31, 2007, an Officer's Certificate, certifying that with respect to the period ending December 31: (i) such Servicing Officer has reviewed the activities of such Master Servicer during the preceding calendar year or portion thereof and its performance under this Agreement, (ii) to the best of such Servicing Officer's knowledge, based on such review, such Master Servicer has performed and fulfilled its duties, responsibilities and obligations under this Agreement in all material respects throughout such year, or, if there has been a default in the fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof, (iii) nothing has come to the attention of such Servicing Officer to lead such Servicing Officer to believe that the Servicer has failed to perform any of its duties, responsibilities and obligations under the Servicing Agreement in all material respects throughout such year, or, if there has been a material default in the performance or fulfillment of any such duties, responsibilities or obligations, specifying each such default known to such Servicing Officer and the nature and status thereof.

(b)      Copies of such statements shall be provided to any Securityholder upon request, by the Master Servicer or by the Indenture Trustee at the Master Servicer's expense if the Master Servicer failed to provide such copies (unless (i) the Master Servicer shall have failed to provide the Indenture Trustee with such statement or (ii) the Indenture Trustee shall be unaware of the Master Servicer's failure to provide such statement).

Section 4.24.  Annual Independent Accountants' Servicing Report.

If the Master Servicer has, during the course of any fiscal year, directly serviced any of the Mortgage Loans, then the Master Servicer at its expense shall cause a nationally recognized firm of Independent Public Accountants to furnish a statement to the Indenture Trustee, the Rating Agencies and the Depositor on or before May 31 of each year, commencing on May 31, 2007 to the effect that, with respect to the most recently ended fiscal year, such firm has examined certain records and documents relating to the Master Servicer's performance of its servicing obligations under this Agreement and transfer and servicing and trust agreements in material respects similar to this Agreement and to each other and that, on the basis of such examination conducted substantially in compliance with the audit program for reverse mortgages serviced for Fannie Mae or the Uniform Single Attestation Program for Mortgage Bankers, such firm is of the opinion that the Master Servicer's activities have been conducted in compliance with this Agreement, or that such examination has disclosed no material items of noncompliance except for (i) such exceptions as such firm believes to be immaterial, (ii) such other exceptions

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

45

CONFIDENTIAL

as are set forth in such statement and (iii) such exceptions that the Uniform Single Attestation Program for Mortgage Bankers or the Audit Program for Mortgages Serviced by Fannie Mae requires it to report. Copies of such statements shall be provided to any Securityholder upon request by the Master Servicer, or by the Indenture Trustee at the expense of the Master Servicer if the Master Servicer shall fail to provide such copies (unless (i) the Master Servicer shall have failed to provide the Indenture Trustee with such statement or (ii) the Indenture Trustee shall be unaware of the Master Servicer's failure to provide such statement). If such report discloses exceptions that are material, the Master Servicer shall advise the Indenture Trustee whether such exceptions have been or are susceptible of cure, and will take prompt action to do so.

Section 4.25.  Merger or Consolidation.

Any Person into which the Master Servicer may be merged or consolidated, or any Person resulting from any merger, conversion, other change in form or consolidation to which the Master Servicer shall be a party, or any Person succeeding to the business of the Master Servicer, shall be the successor to the Master Servicer hereunder, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding; *provided, however,* that the successor to the Master Servicer shall be a Person that shall be qualified and approved to service mortgage loans for Fannie Mae and Freddie Mac and shall have a net worth of not less than $15,000,000.

Section 4.26.  [Reserved]

Section 4.27.  Assignment or Delegation of Duties by the Master Servicer.

Except as expressly provided herein, the Master Servicer shall not assign or transfer any of its rights, benefits or privileges hereunder to any other Person, or delegate to or subcontract with, or authorize or appoint any other Person to perform any of the duties, covenants or obligations to be performed by the Master Servicer hereunder; *provided, however,* that the Master Servicer shall have the right without the prior written consent of the Indenture Trustee, the Depositor or the Rating Agencies to delegate or assign to or subcontract with or authorize or appoint an Affiliate of the Master Servicer to perform and carry out any duties, covenants or obligations to be performed and carried out by the Master Servicer hereunder. In no case, however, shall any such delegation, subcontracting or assignment to an Affiliate of the Master Servicer relieve the Master Servicer of any liability hereunder. Notice of such permitted assignment shall be given promptly by the Master Servicer to the Depositor. If, pursuant to any provision hereof, the duties of the Master Servicer are transferred to a Successor Master Servicer, the entire amount of the Master Servicing Fee payable to the Master Servicer pursuant hereto after the date of such transfer, including amounts payable to or permitted to be retained or withdrawn by the Master Servicer pursuant to Section 4.20 hereof, shall thereafter be payable to such Successor Master Servicer. The Indenture Trustee and the Successor Master Servicer may agree upon an additional monthly fee (the "Additional Master Servicing Fee") to be paid to the Successor Master Servicer, in an amount not to exceed the product of $10 and the number of Mortgage Loans outstanding at the start of the related Collection Period.

CONFIDENTIAL

Section 4.28.  Limitation on Liability of the Master Servicer and Others.

Neither the Master Servicer nor any of the directors, officers, employees or agents of the Master Servicer shall be under any liability to the Indenture Trustee, the Depositor or the Securityholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment; *provided, however,* that this provision shall not protect the Master Servicer or any such person against any liability that would otherwise be imposed by reason of willful misfeasance, bad faith or negligence in its performance of its duties or by reason of reckless disregard for its obligations and duties under this Agreement. The Master Servicer and any director, officer, employee or agent of the Master Servicer may rely in good faith on any document of any kind prima facie properly executed and submitted by any Person respecting any matters arising hereunder. The Master Servicer shall be under no obligation to appear in, prosecute or defend any legal action that is not incidental to its duties to master service the Mortgage Loans in accordance with this Agreement and that in its opinion may involve it in any expense or liability; *provided, however,* that the Master Servicer may in its sole discretion undertake any such action that it may deem necessary or desirable in respect to this Agreement and the rights and duties of the parties hereto and the interests of the Securityholders hereunder. In such event, the legal expenses and costs of such action and any liability resulting therefrom shall be expenses, costs and liabilities of the Trust and the Master Servicer shall be entitled to be reimbursed therefor out of the Collection Account as provided in Section 4.08.

The Master Servicer shall not be liable for any acts or omissions of the Servicer except to the extent the Trust incurs damages or expenses as a result of such act or omissions and such damages and expenses would not have been incurred but for the gross negligence and willful misconduct of the Master Servicer in performing the Master Servicer's obligations set forth in this Agreement.

Section 4.29.  Transfer of Servicing.

In addition, the transfer or assignment of rights and delegation of duties under the Servicing Agreement or the transfer of the servicing thereunder to a successor servicer shall be subject to the following conditions:

(a)    Such successor servicer must satisfy the seller/servicer eligibility standards in the Servicing Agreement and must be reasonably acceptable to the Master Servicer, whose approval shall not be unreasonably withheld;

(b)    Such successor servicer must execute and deliver to the Master Servicer an agreement, in form and substance reasonably satisfactory to the Master Servicer, that contains an assumption by such successor servicer of the due and punctual performance and observance of each covenant and condition to be performed and observed by the Servicer under the Servicing Agreement; and

(c)    There must be delivered to the Indenture Trustee and the Master Servicer a letter from each Rating Agency to the effect that such transfer of servicing will not result in a qualification, withdrawal or downgrade of the then-current rating of any of the Notes; *provided,*

CONFIDENTIAL

*however*, that this requirement shall not apply to any transfer of servicing to a successor servicer that is, prior to the date of such transfer, a Servicer of Mortgage Loans.

ARTICLE V

[RESERVED]

ARTICLE VI

DEPOSITS AND DISTRIBUTIONS

Section 6.01.  Rights of the Holders.

Amounts held by the Master Servicer and the Indenture Trustee for future distribution to the Securityholders, including, without limitation, amounts in the Trust Accounts and Certificate Distribution Account, shall not be distributed except in accordance with the terms of this Agreement.

Section 6.02.  Establishment of Trust Accounts and Certificate Distribution Account.

(a)    (i)    The Master Servicer shall establish and maintain in the name of the Securities Intermediary the Collection Account as provided in Section 4.07, which account shall be pledged to the Indenture Trustee for the benefit of the Noteholders.

(ii)    The Indenture Trustee, for the benefit of the Noteholders, shall establish and maintain in the name of the Securities Intermediary an Eligible Account (the "Note Payment Account"), which account shall be pledged to the Indenture Trustee and shall bear a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders.

(iii)    The Indenture Trustee, for the benefit of the Securityholders, shall establish and maintain in the name of the Securities Intermediary an Eligible Account (the "Funding Account"), which account shall be pledged to the Indenture Trustee and shall bear a designation clearly indicating that the funds deposited therein are held for the benefit of the Securityholders.

(iv)    The Indenture Trustee, for the benefit of the Certificateholders, shall establish and maintain in the name of the Owner Trustee an Eligible Account (the "Certificate Distribution Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Certificateholders.

(b)    Funds on deposit in the Collection Account shall be invested in accordance with Section 4.07(e). Funds on deposit in the Collection Account shall be withdrawn therefrom by the Master Servicer on the Master Servicer Remittance Date immediately preceding each Payment Date to make deposits and distributions on each such date for the purposes set forth in

CONFIDENTIAL

Section 4.08. Funds in the Note Payment Account and Certificate Distribution Account shall remain uninvested.

(c)    The Indenture Trustee shall cause to be deposited into the Note Payment Account on each Master Servicer Remittance Date any monies received by it from the Master Servicer. The Indenture Trustee shall make withdrawals from the Note Payment Account and the Certificate Distribution Account only for the following purposes:

(i)    to withdraw amounts deposited in such account in error;

(ii)    to pay itself any investment income earned with respect to funds in such account invested in Eligible Investments as set forth in subsection (d) below, and to make payments to itself and others pursuant to any provision of this Agreement or the other Basic Documents;

(iii)    to make payments pursuant to Article VI; and

(iv)    to clear and terminate such account upon termination of the Trust pursuant to Sections 11.01 or 11.02.

(d)    [Reserved].

(e)    The Indenture Trustee shall possess all right, title and interest in all funds on deposit from time to time in the Trust Accounts and in all proceeds thereof (including income thereon, except as otherwise provided herein) and all such funds, investments, proceeds and income shall be part of the Trust Estate.  The Trust Accounts shall be under the sole dominion and control of the Indenture Trustee for the benefit of the Noteholders or the Noteholders and the Certificateholders, as the case may be.  If, at any time, any of the Trust Accounts or the Certificate Distribution Account ceases to be an Eligible Account, the Indenture Trustee (or the Master Servicer on its behalf) shall within 30 Business Days establish a new Trust Account or a new Certificate Distribution Account, as applicable, as an Eligible Account and shall transfer any cash and/or any investments to such new account.

The Depositor, the Issuer and the Indenture Trustee hereby appoint Citibank, N.A. as Securities Intermediary with respect to the Trust Accounts and the Certificate Distribution Account, and the Issuer has, pursuant to the Indenture, granted to the Indenture Trustee, for the benefit of the Securityholders, a security interest to secure all amounts due Noteholders hereunder in and to the Trust Accounts and the Security Entitlements to all Financial Assets credited to the Trust Accounts, including without limitation all amounts, securities, investments, Financial Assets, investment property and other property from time to time deposited in or credited to the Trust Accounts and all proceeds thereof, and the Depositor hereby grants to the Issuer, as collateral agent for the benefit of Certificateholders, a security interest to secure all amounts due to Certificateholders hereunder in and to the Certificate Distribution Account and the Security Entitlements and all Financial Assets credited to the Certificate Distribution Account, including without limitation all amounts, securities, investments, Financial Assets, investment property and other property from time to time deposited in or credited to such account and all proceeds thereof.  Amounts held from time to time in the Trust Accounts will continue to be held by the Securities Intermediary for the benefit of the Indenture Trustee, as

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

49

CONFIDENTIAL

collateral agent, for the benefit of the Securityholders, and amounts held from time to time in the Certificate Distribution Account will continue to be held by the Securities Intermediary for the benefit of the Issuer, as collateral agent, for the benefit of the Certificateholders. Upon the termination of the Trust or the discharge of the Indenture, the Indenture Trustee shall inform the Securities Intermediary of such termination. By acceptance of their Securities or interests therein, the Securityholders shall be deemed to have appointed Citibank, N.A. as Securities Intermediary. Citibank, N.A. hereby accepts such appointment as Securities Intermediary.

(i)    With respect to the Trust Account Property credited to the Trust Accounts, or the Certificate Distribution Account, the Securities Intermediary agrees that:

(A)    with respect to any Trust Account Property that is held in deposit accounts, each such deposit account shall be subject to the exclusive custody and control of the Securities Intermediary, and the Securities Intermediary shall have sole signature authority with respect thereto;

(B)    the sole assets permitted in the Trust Accounts and the Certificate Distribution Account shall be those as the Securities Intermediary agrees to treat as Financial Assets; and

(C)    any such Trust Account Property that is, or is treated as, a Financial Asset shall be physically delivered (accompanied by any required endorsements) to, or credited to an account in the name of, the Securities Intermediary or other eligible institution maintaining any Trust Account or the Certificate Distribution Account in accordance with the Securities Intermediary's customary procedures such that the Securities Intermediary or such other institution establishes a Security Entitlement in favor of the Indenture Trustee (or the issuer, in the case of the Certificate Distribution Account) with respect thereto over which the Securities Intermediary or such other institution has Control;

(ii)    The Securities Intermediary hereby confirms that (A) each Trust Account and the Certificate Distribution Account is an account to which Financial Assets are or may be credited, and the Securities Intermediary shall, subject to the terms of this Agreement, treat the Indenture Trustee, as collateral agent, as entitled to exercise the rights that comprise any Financial Asset credited to any Trust Account, and the Issuer, as collateral agent, as entitled to exercise the rights that comprise any Financial Asset credited to the Certificate Distribution Account, (B) all Trust Account Property in respect of any Trust Account or the Certificate Distribution Account will be promptly credited by the Securities Intermediary to such account, and (C) all securities or other property underlying any Financial Assets credited to any Trust Account or the Certificate Distribution Account shall be registered in the name of the Securities Intermediary, endorsed to the Securities Intermediary or in blank or credited to another securities account maintained in the name of the Securities Intermediary and in no case (x) will any Financial Asset credited to any Trust Account be registered in the name of the Seller or the Issuer, payable to the order of the Seller or the Issuer or specially endorsed to the Seller or the Issuer, or (y) will any Financial Asset credited to the Certificate Distribution Account be registered in the name of the Seller, payable to the order of the Seller or

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

50

CONFIDENTIAL

specially endorsed to the Seller, except to the extent the foregoing have been specially endorsed to the Securities Intermediary or in blank;

(iii)    The Securities Intermediary hereby agrees that each item of property (whether investment property, Financial Asset, security, instrument or cash) credited to any Trust Account or the Certificate Distribution Account shall be treated as a Financial Asset;

(iv)    If at any time the Securities Intermediary shall receive an Entitlement Order from the Indenture Trustee directing transfer or redemption of any Financial Asset relating to any Trust Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Seller, the Issuer or any other Person.  If at any time the Indenture Trustee notifies the Securities Intermediary in writing that the Trust has been terminated or the Indenture discharged in accordance herewith and with the Trust Agreement or the Indenture, as applicable, and the security interest granted pursuant to the Indenture has been released, then thereafter if the Securities Intermediary shall receive any order from the Seller or the Issuer directing transfer or redemption of any Financial Asset relating to any Trust Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Indenture Trustee or any other Person;

If at any time the Securities Intermediary shall receive an Entitlement Order from the Issuer directing transfer or redemption of any Financial Asset relating to the Certificate Distribution Account, the Securities Intermediary shall comply with such Entitlement Order without further consent by the Seller or any other Person.  If at any time the Issuer notifies the Securities Intermediary in writing that the Trust has been terminated in accordance herewith and with the Trust Agreement and the security interest granted above has been released, then thereafter if the Securities Intermediary shall receive any order from the Seller directing transfer or redemption of any Financial Asset relating to the Certificate Distribution Account, the Securities Intermediary shall comply with such entitlement order without further consent by the Issuer or any other Person;

(v)    In the event that the Securities Intermediary has or subsequently obtains by agreement, operation of law or otherwise a security interest in any Trust Account or the Certificate Distribution Account or any Financial Asset credited thereto, the Securities Intermediary hereby agrees that such security interest shall be subordinate to the security interest of the Indenture Trustee, in the case of the Trust Accounts, or of the Issuer, in the case of the Certificate Distribution Account.  The Financial Assets credited to the Trust Accounts, or the Certificate Distribution Account will not be subject to deduction, set-off, banker's lien, or any other right in favor of any Person other than the Indenture Trustee  in the case of the Trust Accounts, or of the Issuer, in the case of the Certificate Distribution Account (except that the Securities Intermediary may set-off (i) all amounts due to it in respect of its customary fees and expenses for the routine maintenance and operation of the Trust Accounts, and the Certificate Distribution Account, and (ii) the face amount of any checks which have been credited to any Trust Account or the Certificate Distribution Account but are subsequently returned unpaid because of uncollected or insufficient funds);

CONFIDENTIAL

(vi)    There are no other agreements entered into between the Securities Intermediary in such capacity and the Depositor or the Issuer with respect to any Trust Account, or the Depositor with respect to the Certificate Distribution Account. In the event of any conflict between this Agreement (or any provision of this Agreement) and any other agreement now existing or hereafter entered into, the terms of this Agreement shall prevail;

(vii)    The rights and powers granted under the Indenture and herein to (x) the Indenture Trustee have been granted in order to perfect its security interest in the Trust Accounts and the Security Entitlements to the Financial Assets credited thereto, and (y) the Issuer have been granted in order to perfect its security interest in the Certificate Distribution Account and the Security Entitlements to the Financial Assets credited thereto, and are powers coupled with an interest and will neither be affected by the bankruptcy of the Depositor or the Issuer nor by the lapse of time. The obligations of the Securities Intermediary hereunder shall continue in effect until the security interest of the Indenture Trustee in the Trust Accounts or of the Issuer in the Certificate Distribution Account, and in such Security Entitlements, has been terminated pursuant to the terms of this Agreement and the Indenture Trustee or the Issuer, as applicable, has notified the Securities Intermediary of such termination in writing; and

(viii)    Notwithstanding anything else contained herein, the Depositor and the Issuer agree that the Trust Accounts and the Certificate Distribution Account will be established only with the Securities Intermediary or another institution meeting the requirements of this Section, which by acceptance of its appointment as Securities Intermediary agrees substantially as follows:  (i) it will comply with Entitlement Orders related to the Trust Accounts issued by the Indenture Trustee, as collateral agent, without further consent by the Depositor or the Issuer, and with Entitlement Orders related to the Certificate Distribution Account issued by the Issuer, as collateral agent, without further consent by the Depositor; (ii) until termination of the Trust or discharge of the Indenture, it will not enter into any other agreement related to such accounts pursuant to which it agrees to comply with Entitlement Orders of any Person other than the Indenture Trustee, as collateral agent with respect to the Trust Accounts or the Issuer, as collateral agent with respect to the Certificate Distribution Account; and (iii) all assets delivered or credited to it in connection with such accounts and all investments thereof will be promptly credited to the applicable account.

(f)    Notwithstanding the foregoing, the Issuer shall have the power, revocable by the Indenture Trustee or by the Owner Trustee with the consent of the Indenture Trustee, to instruct the Indenture Trustee and the Master Servicer to make withdrawals and distributions from the Trust Accounts for the purpose of permitting the Master Servicer or the Issuer to carry out its respective duties hereunder or permitting the Indenture Trustee to carry out its duties under the Indenture.

(g)    Each of the Depositor and the Issuer agrees to take or cause to be taken such further actions, to execute, deliver and file or cause to be executed, delivered and filed such further documents and instruments (including, without limitation, any financing statements under the Relevant UCC or this Agreement) as may be necessary to perfect the interests created by this

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

52

CONFIDENTIAL

Section in favor of the Issuer and the Indenture Trustee and otherwise fully to effectuate the purposes, terms and conditions of this Section. The Depositor shall:

> (i)    promptly execute, deliver and file any financing statements, amendments, continuation statements, assignments, certificates and other documents with respect to such interests and perform all such other acts as may be necessary in order to perfect or to maintain the perfection of the Issuer's and the Indenture Trustee's security interest in the Trust Account Property; and

> (ii)    make the necessary filings of financing statements or amendments thereto within five days after the occurrence of any of the following: (i) any change in its corporate name or any trade name or its jurisdiction of organization; (ii) any change in the location of its chief executive office or principal place of business; and (iii) any merger or consolidation or other change in its identity or corporate structure and promptly notify the Issuer and the Indenture Trustee of any such filings.

Neither the Depositor nor the Issuer shall organize under the law of any jurisdiction other than the State under which each is organized as of the Closing Date (whether changing its jurisdiction of organization or organizing under an additional jurisdiction) without giving 30 days prior written notice of such action to its immediate and mediate transferee, including the Indenture Trustee. Before effecting such change, each of the Depositor or the Issuer proposing to change its jurisdiction of organization shall prepare and file in the appropriate filing office any financing statements or other statements necessary to continue the perfection of the interests of its immediate and mediate transferees, including the Indenture Trustee, in the Trust Account Property. In connection with the transactions contemplated by the Basic Documents relating to the Trust Account Property, each of the Depositor and the Issuer authorizes its immediate or mediate transferee, including the Indenture Trustee, to file in any filing office any initial financing statements, any amendments to financing statements, any continuation statements, or any other statements or filings described in this Section.

None of the Securities Intermediary or any director, officer, employee or agent of the Securities Intermediary shall be under any liability to the Indenture Trustee or the Securityholders for any action taken, or not taken, in good faith pursuant to this Agreement, or for errors in judgment; *provided, however,* that this provision shall not protect the Securities Intermediary against any liability to the Indenture Trustee or the Securityholders which would otherwise be imposed by reason of the Securities Intermediary's willful misconduct, bad faith or negligence in the performance of its obligations or duties hereunder. The Securities Intermediary and any director, officer, employee or agent of the Securities Intermediary may rely in good faith on any document of any kind which, prima facie, is properly executed and submitted by any Person respecting any matters arising hereunder. The Securities Intermediary shall be under no duty to inquire into or investigate the validity, accuracy or content of such document. The Issuer shall indemnify the Securities Intermediary for and hold it harmless against any loss, liability or expense arising out of or in connection with this Agreement and carrying out its duties hereunder, including the costs and expenses of defending itself against any claim of liability, except in those cases where the Securities Intermediary has been guilty of bad faith, negligence or willful misconduct. The foregoing indemnification shall survive any termination of this Agreement or the resignation or removal of the Securities Intermediary.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

Section 6.03.    Allocation of Losses.

(a)    On each Payment Date after the Payment Date in September 2007, the Class Principal Amount of the Class M1 and Class M2 Notes shall be reduced by the amount of any Applied Loss Amount for such date.

(b)    Any Applied Loss Amount so allocated to the Class M1 and Class M2 Notes shall be allocated among the Notes of such Class in proportion to their respective principal amounts. Any allocation of an Applied Loss Amount pursuant to this Section shall be accomplished by reducing the Class Principal Amounts of the Class M1 and Class M2 Notes and the principal amount of each related Note on the applicable Payment Date.

Section 6.04.    Collections.

(a)    The Master Servicer shall provide the Servicer with such instructions as are necessary to permit the transfer by wire transfer in immediately available funds of all amounts on deposit in the Custodial Accounts which constitute collections to the Collection Account on the Servicer Remittance Date specified in the Servicing Agreement.

(b)    On or prior to each Master Servicer Remittance Date, the Master Servicer shall determine the Available Payment Amount for the related Payment Date, and on each Master Servicer Remittance Date, the Master Servicer shall remit the Available Payment Amount for the related Payment Date to the Note Payment Account.  In the event that the Master Servicer fails on any Master Servicer Remittance Date to remit to the Indenture Trustee any amounts required to be so remitted to the Indenture Trustee by such date, the Master Servicer shall pay the Indenture Trustee, for the account of the Indenture Trustee, interest calculated at the "prime rate" (as published in the "Money Rates" section of *The Wall Street Journal*) on such amounts not timely remitted for the period from and including that Master Servicer Remittance Date to but not including the related Payment Date.  The Master Servicer shall only be required to pay the Indenture Trustee interest for the actual number of days such amounts are not timely remitted (*e.g.*, one day's interest, if such amounts are remitted one day after the Master Servicer Remittance Date).

(c)    Prior to disbursing the Available Payment Amount, the Indenture Trustee shall withdraw from the Note Payment Account on each Payment Date and pay to itself any other amounts payable or reimbursable to the Indenture Trustee (or any co-trustee) pursuant to Section 6.07 of the Indenture, any amounts payable or reimbursable to the Indenture Trustee pursuant to Section 6.02 of this Agreement or (for so long as the Indenture Trustee is the Administrator under the Administration Agreement) any amounts payable to the Administrator under the Administration Agreement or any amounts payable to the Custodian under the Custodial Agreement.

Section 6.05.    Flow of Funds.

(a)    On each Payment Date, the Indenture Trustee shall withdraw from the Note Payment Account the Available Payment Amount and shall pay (or transfer) such amount in the following order of priority:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

54

CONFIDENTIAL

*first,* beginning on the Payment Date in September 2007, and on each Payment Date thereafter, to the Owner Trustee, the Owner Trustee Fee;

*second,* after the amount on deposit in the Funding Account has been reduced to zero, to Lehman Bank or its designee, in an amount equal to the aggregate dollar amount of all Additional Amounts created during the immediately preceding calendar month and not yet purchased;

*third,* concurrently, in proportion to the amount of Current Interest for each such Class, to the Class A1 and Class A-IO Notes, Current Interest for each such Class and, in the case of the Class A-IO Notes and the final Payment Date only, any Class A-IO Redemption Price;

*fourth,* to the Class A1 Notes, the amount necessary to reduce the Class Principal Amount thereof to their Scheduled Principal Amount for such Payment Date;

*fifth,* to the Class M1 Notes, Current Interest for such Class;

*sixth,* to the Class M1 Notes, the amount necessary to reduce the Class Principal Amount thereof to their Scheduled Principal Amount for such Payment Date;

*seventh,* to the Class M2 Notes, Current Interest for such Class;

*eighth,* to the Class M2 Notes, the amount necessary to reduce the Class Principal Amount thereof to their Scheduled Principal Amount for such Payment Date;

*ninth,* on or after the Payment Date in September 2008 until and including the Payment Date in August 2011, if (1) the Total Deferred Amount for all Classes of Notes is equal to zero and (2) the Overcollateralization Percentage for the most recent Trigger Test Date specified in the schedule attached as Schedule III hereto (the "Class R Certificate Schedule") exceeds the OC Trigger Level specified in the Class R Certificate Schedule for such Trigger Test Date, to the Class R Certificates, the lesser of (i) 50% of the Available Payment Amount remaining for such Payment Date and (ii) the Monthly Payment Amount shown in the Class R Certificate Schedule for such Payment Date;

*tenth,* sequentially, to the Class A1, Class M1 and Class M2 Notes, in that order, without regard to their Scheduled Principal Amounts, in reduction of their Class Principal Amounts, until the Class Principal Amount of each such Class has been reduced to zero;

*eleventh,* to the Class M1 Notes, any Deferred Amount for such Class and such date;

*twelfth,* to the Class M2 Notes, any Deferred Amount for such Class and such date;

*thirteenth,* for payment of any reimbursement amounts payable to the Indenture Trustee, the Owner Trustee, the Administrator, the Master Servicer and the Servicer

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

without regard to the limitations described in the definition of "Available Payment Amount;" and

fourteenth, to the Class R Certificates, any remaining amount.

(b)    On each Additional Amounts Draw Date, the Indenture Trustee shall withdraw from the Funding Account and remit to Lehman Bank or its designee the Additional Amounts Draw for such date.

(c)    On each Payment Date, after application of the Available Payment Amount pursuant to Section 6.05(a), the Indenture Trustee shall withdraw from the Funding Account the Interest Shortfall Draw for such date and pay such amount in accordance with clauses *third, sixth, eighth and tenth* of Section 6.05(a), to the extent that such amounts have not been paid on such date from the Available Payment Amount; *provided* that amounts payable to the Class M1 and Class M2 Notes shall not be in excess of the Class M1 Interest Shortfall Draw Limit and the Class M2 Interest Shortfall Draw Limit, respectively.

(d)    In the case of a redemption pursuant to Section 10.02(b) hereof, on the Redemption Date, the Indenture Trustee shall distribute the Redemption Price in accordance with Section 6.05(a) above.

(e)    On the Maturity Date, the Indenture Trustee shall withdraw all remaining funds from the Funding Account and shall apply such funds in the following order of priority: (i) for deposit into the Note Payment Account for payment in accordance with Section 6.05(a) clauses *first* through *sixteenth*, (ii) for payment of the Future Loan Commitment to Lehman Bank and (iii) for deposit into the Certificate Distribution Account for distribution in accordance with Section 6.05(a) clause *seventeenth*.

Section 6.06.   Disbursement of Funds.

All payments on the Notes made pursuant to Section 6.05 shall be made by wire transfer of immediately available funds to the account of the Person entitled thereto at a bank or other entity having appropriate facilities therefor if such Person shall have so notified the Indenture Trustee in writing at least five Business Days prior to the Record Date immediately prior to such Payment Date, and otherwise by check mailed to each such Noteholder at such Holder's address appearing in the Note Register.   Distributions to each Certificateholder shall be made by wire transfer or check mailed to such Certificateholder at such Holder's address appearing in the Certificate Register.

Section 6.07.   Determination of LIBOR.

(a)    On each LIBOR Rate Adjustment Date the Indenture Trustee shall determine LIBOR on the basis of the provisions of the definition of "LIBOR."

(b)    The establishment of LIBOR by the Indenture Trustee and the Indenture Trustee's subsequent calculation of the Interest Rate or Rates applicable to the Notes for the relevant Accrual Period, in the absence of manifest error, will be final and binding.

CONFIDENTIAL

Section 6.08.    <u>Reports to Securityholders.</u>

On each Payment Date, concurrently with the distribution to the Securityholders, the Indenture Trustee shall make available to the Securityholders, the Depositor, the Issuer, the Servicers, the Administrator and each Rating Agency, a report, based solely on information provided to the Indenture Trustee by the Master Servicer and in the Master Servicer's Monthly Report, containing the following information:

(i)    the amount paid on such Payment Date to holders of each Class of Notes in respect of interest;

(ii)    the amount paid on such Payment Date to holders of each Class of Notes (other than the Class A-IO Notes) in respect of principal;

(iii)    the Interest Rate applicable to each Class of Notes with respect to such Payment Date;

(iv)    the Class Principal Amount of each Class of Notes (other than the Class A-IO Notes) after giving effect to payments on such Payment Date;

(v)    the Class Notional Amount of the Class A-IO Notes on such Payment Date;

(vi)    the amount distributed on such Payment Date to holders of the Class R Certificates;

(vii)    the Outstanding Amount of Mortgage Loans that have not matured as of the close of the related Collection Period;

(viii)    the aggregate Outstanding Amount of Mortgage Loans that have matured but have not been repaid within 0 to 29 days, 30 to 59 days, 60 to 89 days and 90 days or more or which have been foreclosed upon or as to which the related Mortgaged Property has been acquired on behalf of the Trust as of the close of the related Collection Period;

(ix)    the aggregate of Additional Amounts purchased by the Trust as of the close of the related Collection Period;

(x)    [reserved]

(xi)    the amount of the Servicing Fees paid to the Servicer during the related Collection Period;

(xii)    the number and aggregate Outstanding Amount of Mortgage Loans, as reported to the Indenture Trustee by the Master Servicer, as to which foreclosure proceedings have been commenced as of the close of business on the last Business Day of the related Collection Period;

CONFIDENTIAL

(xiii)    the Maximum Funding Amount as of the close of the related Collection Period;

(xiv)    the amount on deposit in the Funding Account on such Payment Date;

(xv)    the amount of the investment income on amounts on deposit in the Funding Account as of the close of the related Collection Period and, for such period;

(xvi)    The aggregate amount of available credit remaining under the Mortgage Loans as of the close of the related Collection Period;

(xvii)    the amount withdrawn from the Funding Account and included in the Available Payment Amount for such Payment Date;

(xviii)    the deemed aggregate Outstanding Amount of all REO Properties as of the close of business on the last Business Day of the calendar month immediately preceding the month in which such Payment Date occurs;

(xix)    with respect to any Mortgage Loan that became an REO Property during the related Collection Period, the Outstanding Amount of such Mortgage Loan and the number of such Mortgage Loans as of the close of business on the Payment Date in such preceding month;

(xx)    the Interest Shortfall Draw and the components thereof, the Class M1 Interest Shortfall Draw Limit and the Class M2 Interest Shortfall Draw Limit for such Payment Date;

(xxi)    the Additional Amounts Draw for such Payment Date; and

(xxii)    the amount of any Applied Loss Amount applied to any Class of Notes on such Payment Date and the amount of any outstanding Deferred Amounts for any Class of Notes;

(xxiii)    the Overcollateralization Percentage for such Payment Date.

In the case of information furnished pursuant to subclauses (i) and (ii) above, the amounts shall also be expressed as a dollar amount per $1,000 of original Class Principal Amount of Notes.

Notwithstanding the foregoing, the report for the first Payment Date shall be prepared by Lehman Brothers Inc. and furnished to the Indenture Trustee no later than the first Payment Date.

The Indenture Trustee shall make the information set forth above (and, at its option, any additional files containing the same information in an alternative format) available each month to Noteholders, the holders of the Certificates, the Servicers, the Issuer, each Rating Agency, the Administrator and the Depositor via the Indenture Trustee's internet website. The Indenture Trustee's internet website will initially be located at www.sf.citidirect.com. Assistance in using

CONFIDENTIAL

the website may be obtained by calling the Indenture Trustee's customer service desk at (800) 422-2066.

In preparing or furnishing the foregoing information the Indenture Trustee shall be entitled to rely conclusively on the accuracy of the information or data regarding the Mortgage Loans and the related REO Property that has been provided to it by the Master Servicer, and the Indenture Trustee shall not be obligated to verify, recompute, reconcile or recalculate any such information or data.  Similarly, in providing information and data to the Indenture Trustee, the Master Servicer shall be entitled to rely conclusively on the accuracy of the information or data regarding the Mortgage Loans and the related REO Property that has been provided to it by the Servicer, and, except as specifically set forth in Article IV of this Agreement, the Master Servicer shall not be obligated to verify any such information or data.

Upon the reasonable advance written request of any Securityholder that is a savings and loan, bank or insurance company, the Indenture Trustee shall, to the extent that such information has been provided to the Indenture Trustee by the Servicer, provide, or cause to be provided, (or, to the extent that such information or documentation is not required to be provided by the Servicer under the Servicing Agreement, shall use reasonable efforts to obtain such information and documentation from the Servicer, and provide) to such Securityholder such reports and access to information and documentation regarding the Mortgage Loans as such Securityholder may reasonably deem necessary to comply with applicable regulations of the Office of Thrift Supervision or its successor or other regulatory authorities with respect to investment in the Securities; *provided, however,* that the Indenture Trustee shall be entitled to be reimbursed by such Securityholder for such Indenture Trustee's actual expenses incurred in providing such reports and access.

Within 90 days, or such shorter period as may be required by statute or regulation, after the end of each calendar year, the Indenture Trustee upon written request shall make available to each Person who at any time during the calendar year was a Securityholder of record and to Note Owners (identified as such by the Depository) in accordance with applicable regulations, a report summarizing the items provided to Securityholders pursuant to this Section relating to the amount of principal and interest payments made to Securityholders on an annual basis as may be required to enable such Holders to prepare their federal income tax returns.  Such information shall include the amount of original issue discount accrued on each Class of Notes and information regarding the expenses of the Trust.

Section 6.09.  Presentation of Securities.

Upon receipt of notice of the final Payment Date with respect to any Class given to the Indenture Trustee in accordance with Section 10.03, the Indenture Trustee will notify each affected Securityholder that the next Payment Date will be the final Payment Date.  In the event that a Securityholder fails to deliver its Security(ies) for cancellation on the final Payment Date, by its purchase of a Security it agrees to indemnify the Depositor, the Master Servicer, the Indenture Trustee and the Issuer against all claims with respect to such Security arising following such Payment Date.  Claims against the Trust for payment on such Security shall be void unless made within three years from the Termination Date.

CONFIDENTIAL

Section 6.10.   The Funding Account.

(a)     On the Closing Date, the Depositor shall cause to be deposited in the Funding Account an amount equal to $75,982,756 (the "Funding Account Deposit"). At all times, the Indenture Trustee shall invest or cause to be invested substantially all of the amounts in the Funding Account, subject to the provisions of Section 6.11, in assets described in clauses (ii), (iv), (v) or (vii) of the definition of Eligible Investments having fixed maturities of no more than 30 days. All such investments shall be made in the name of the Indenture Trustee (in its capacity as such) or its nominee. In the absence of such written direction, amounts held in the Funding Account shall remain uninvested. All income and gain realized from any such investment shall be retained in the Funding Account until withdrawn as provided herein. Funds held in the Funding Account that are not invested shall be held in cash.

(b)     With respect to each calendar month (commencing on the Cut-off Date) in which any Additional Amounts are created, the Indenture Trustee shall withdraw from the Funding Account, to the extent of amounts on deposit therein, and remit to the order of Lehman Bank or its designee by wire transfer in immediately available funds, an amount equal to the dollar amount of such Additional Amounts, as reported by the Master Servicer to the Indenture Trustee for such calendar month. Such withdrawal and payment shall be effected by the Indenture Trustee on the Additional Amounts Draw Date applicable to such Additional Amounts.

(c)     On the Business Day immediately preceding each Payment Date, the Indenture Trustee shall determine the Interest Shortfall Draw for such date and withdraw such amount from the Funding Account for application as provided in Section 6.05. In addition, on the Business Day immediately preceding each Payment Date the Indenture Trustee shall determine the Excess Funding Amount for such date and withdraw such amount for deposit into the Note Payment Account as part of the Available Payment Amount.

(d)     The Indenture Trustee shall make withdrawals from the Funding Account only for the following purposes:

(i)     to make payment of any Additional Draw Amount as provided herein;

(ii)     to make payment of any Interest Shortfall Draw as provided herein;

(iii)     to deposit into the Note Payment Account any Excess Funding Amount for any Payment Date as provided herein; and

(iv)     to clear and terminate such account upon termination of the Trust pursuant to Sections 11.01 or 11.02.

Section 6.11.   Special Limitations on Investment.

Notwithstanding any other provision contained herein, funds held in the Funding Account shall be invested solely in investments having fixed maturities. Financial assets purchased with funds on deposit in the Funding Account may be sold from time to time as necessary in order to fund withdrawals from the Funding Account in accordance with Section 6.10, but shall not be sold for the primary purpose of recognizing gains or decreasing losses resulting from market

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

60

CONFIDENTIAL

value changes. In no event shall the Indenture Trustee be liable to the Depositor, any Securityholder or any other Person for any losses resulting from an investment of funds in the Funding Account made in accordance with this Agreement.

ARTICLE VII

REMEDIES

Section 7.01. <u>Limitation on Suits</u>.

No Securityholder shall have any right to institute any proceeding, judicial or otherwise, with respect to this Agreement, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

(a)    there is a continuing Event of Master Servicer Default and such Securityholder has previously given written notice to the Indenture Trustee of a continuing Event of Master Servicer Default;

(b)    the Holders of not less than 51% of the aggregate Voting Rights of the Securities shall have made written request to the Indenture Trustee to institute proceedings in respect of such Event of Master Servicer Default in its own name as Indenture Trustee hereunder;

(c)    such Securityholders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

(d)    the Indenture Trustee, for 30 days after its receipt of such notice, request and offer of indemnity, has failed to institute any such proceeding; and

(e)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 30-day period by the Holders of not less than 51% of the aggregate Voting Rights of the Securities;

it being understood and intended that no one or more Securityholders shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Agreement to affect, disturb or prejudice the rights of any other Securityholders, or to obtain or to seek to obtain priority or preference over any other Securityholders or to enforce any right under this Agreement, except in the manner herein provided and for the ratable benefit of all the Securityholders as provided herein.

Section 7.02. <u>Restoration of Rights and Remedies</u>.

If the Indenture Trustee or any Securityholder has instituted any proceeding to enforce any right or remedy under this Agreement and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Indenture Trustee or to such Securityholder, then and in every such case, subject to any determination in such proceeding, the Seller, the Indenture Trustee and the Securityholders shall be restored severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Indenture Trustee and the Securityholders shall continue as though no such proceeding had been instituted.

CONFIDENTIAL

Section 7.03.  <u>Rights and Remedies Cumulative</u>.

No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Securityholders is intended to be exclusive of any other right or remedy and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.  The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 7.04.  <u>Delay or Omission Not Waiver</u>.

No delay or omission of the Indenture Trustee or of any Securityholder to exercise any right or remedy accruing upon any Event of Master Servicer Default shall impair any such right or remedy or constitute a waiver of any such Event of Master Servicer Default or an acquiescence therein.  Every right and remedy given by this Article or by law to the Indenture Trustee or to the Securityholders may be exercised from time to time, and as often as may be deemed expedient, as permitted under the terms hereof, by the Indenture Trustee or by the Securityholders, as the case may be.

Section 7.05.  <u>Control by Securityholders</u>.

(a)     Subject to Section 7.06 hereof, the Holders of not less than 51% of the aggregate Voting Rights of the Securities shall have the right to direct in writing the time, method and place of conducting any proceeding for any remedy available to the Indenture Trustee or exercising any trust or power conferred on the Indenture Trustee hereunder; provided, that (i) such written direction shall not be in conflict with any rule of law or with this Agreement, (ii) such written direction shall not involve any action for which the Indenture Trustee reasonably believes it may not obtain compensation or reimbursement for hereunder or, if the Indenture Trustee determines that such compensation or reimbursement is not available, such Securityholders have not offered the Indenture Trustee reasonable indemnity for the cost of such actions, and (iii) the Indenture Trustee may take any other action deemed proper by the Indenture Trustee which is not inconsistent with such direction.

(b)     Prior to the occurrence of an Event of Master Servicer Default hereunder and after the curing or waiver of all Events of Master Servicer Default which may have occurred, the Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Holders of not less than 51% of the aggregate Voting Rights of the Securities; *provided, however,* that if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Agreement, the Indenture Trustee may require reasonable indemnity against such expense or liability as a condition to taking any such action.  The reasonable expense of every such examination relating to an Event of Master Servicer Default shall be paid by the Master Servicer if an Event of Master Servicer Default shall have occurred and be continuing, and otherwise by the Securityholders requesting the investigation.

CONFIDENTIAL

Section 7.06.  <u>Waiver of Past Defaults</u>.

The Holders of not less than 51% of the aggregate Voting Rights of the Securities may on behalf of the Securityholders of all the Securities waive any past default hereunder and its consequences.

Upon any such waiver, such default shall cease to exist, and any Event of Master Servicer Default arising therefrom shall be deemed to have been cured, for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

Section 7.07.  <u>Undertaking for Costs</u>.

All parties to this Agreement agree, and each Securityholder by the acceptance of a Security shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees and disbursements, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section (other than this clause) shall not apply to any suit instituted by the Depositor, by the Indenture Trustee, by the Owner Trustee, by the Master Servicer, by any Securityholder or group of Securityholders holding in the aggregate more than 10% of the Voting Rights of the outstanding Securities, or to any suit instituted by any Securityholder for the enforcement of the payment of any principal of or interest on any Security.

Section 7.08.  <u>Waiver of Stay or Extension Laws</u>.

The Depositor covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Agreement; and the Depositor (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

ARTICLE VIII

LIMITATION ON LIABILITY; INDEMNITIES

Section 8.01.  <u>Liabilities of Mortgagors</u>.

No obligation or liability of any Mortgagor under any of the Mortgage Loans is intended to be assumed by the Depositor, the Master Servicer, the Issuer, the Indenture Trustee, the Holder of any Security under or as a result of this Agreement and the transactions contemplated

CONFIDENTIAL

hereby and, to the maximum extent permitted and valid under mandatory provisions of law, the Master Servicer, the Indenture Trustee, the Issuer and the Holders of each Security expressly disclaim such assumption.

Section 8.02.    Liability of the Depositor.

(a)    The Depositor shall be liable in accordance herewith only to the extent of the obligations specifically imposed by this Agreement.

(b)    Neither the Depositor, nor any of the directors, officers, employees or agents of the Depositor, shall be under any liability to the Issuer, the Master Servicer, the Indenture Trustee or any Securityholder for any action taken, or for refraining from the taking of any action, in good faith pursuant to this Agreement, or for errors in judgment; *provided, however,* that this provision shall not protect the Depositor or any such Person against any breach of warranties or representations made herein, or against any specific liability imposed on each such party pursuant to this Agreement or against any liability which would otherwise be imposed by reason of willful misfeasance, bad faith or negligence in the performance of duties or by reason of reckless disregard of obligations or duties hereunder.  The Master Servicer, the Indenture Trustee, and any director, officer, employee or agent of the Master Servicer or the Indenture Trustee may rely in good faith on any document of any kind which, prima facie, is properly executed and submitted by any appropriate Person respecting any matters arising hereunder.

Section 8.03.    Relationship of Master Servicer.

The relationship of the Master Servicer (and of any Successor Master Servicer under this Agreement) to the Indenture Trustee, the Issuer and the Depositor under this Agreement is intended by the parties hereto to be that of an independent contractor and not of a joint venturer, partner or agent of the Indenture Trustee, the Issuer or the Depositor, except as otherwise stated herein.

Section 8.04.    Indemnities of the Master Servicer.

(a)    Subject to Section 4.28 hereof, the Master Servicer agrees to indemnify the Issuer, the Indenture Trustee and the Depositor and their respective directors, officers, employers and agents (the "Indemnified Parties") from, and hold them harmless against, any and all costs, expenses (including reasonable attorney fees and disbursements), losses, claims, damages and liabilities that the Indemnified Parties may sustain to the extent attributable to the failure of the Master Servicer to perform its duties under this Agreement in compliance with its obligations hereunder, including, without limitation, its obligation to master service the Mortgage Loans in compliance with the terms of this Agreement.  Each Indemnified Party shall notify the Master Servicer promptly of any claim for which it may seek indemnity.  Failure by an Indemnified Party to so notify the Master Servicer shall not relieve the Master Servicer of its obligations hereunder.  The Master Servicer shall defend any such claim, and an Indemnified Party may have separate counsel and the Master Servicer shall to pay the fees and expenses of such counsel.  Each Indemnified Party shall immediately notify the Master Servicer if a claim is made by a third party with respect to this Agreement or the Mortgage Loans entitling the Issuer, the Depositor or the Indenture Trustee to indemnification hereunder, whereupon the Master Servicer

CONFIDENTIAL

shall assume the defense of any such claim and pay all expenses in connection therewith, including reasonable counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or them in respect of such claim.  This indemnification shall survive the termination of this Agreement and the resignation or removal of the Master Servicer.

(b)    This Section shall survive the termination of this Agreement, the resignation or removal of the Master Servicer, and the resignation or removal of the Indenture Trustee, with respect to the acts or omissions of the Master Servicer while it acted as Master Servicer.

Section 8.05.  <u>Liability of Owner Trustee.</u>

It is expressly understood and agreed by the parties hereto that:

(a)    this Agreement is executed and delivered by Wilmington Trust Company, not individually or personally, but solely as trustee of the Issuer, in the exercise of the powers and authority conferred and vested in it,

(b)    each of the representations, undertakings and agreements herein made on the part of the Issuer is made and intended not as a personal representation, undertaking or agreement by Wilmington Trust Company but is made and intended for the purpose for binding only the Issuer,

(c)    nothing herein contained shall be construed as creating any liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto, and

(d)    under no circumstances shall Wilmington Trust Company be personally liable for the payment of any indebtedness or expenses of the Issuer or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Issuer under this Agreement.

# ARTICLE IX

# [RESERVED]

# ARTICLE X

# MISCELLANEOUS

Section 10.01.  <u>Termination of Agreement.</u>

The respective obligations and responsibilities of the Master Servicer, the Depositor, the Issuer and the Indenture Trustee created hereby (other than obligations expressly stated to survive the termination of the Trust) shall terminate on the date (the "Termination Date") which is the earlier to occur of:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

65

CONFIDENTIAL

(i)      the day after the day on which the Securities are paid in full (including payment pursuant to Section 10.02 below); and

(ii)      the date that is 21 years from the death of the last survivor of the descendants of Joseph P. Kennedy, the late ambassador of the United States to the Court of St. James's, living on the date hereof.

Section 10.02.  Termination Prior to Maturity Date.

(a)      The obligations and responsibilities of the Indenture Trustee created hereby (other than the obligation of the Indenture Trustee to make payments to Securityholders as set forth in Section 6.05), shall terminate on the earlier of (i) the final payment or other liquidation of the last Mortgage Loan remaining in the Trust and the disposition of all REO Property and (ii) the sale of the property held by the Trust in accordance with Section 10.02(b).

(b)      On the first Payment Date on or after the date on which the aggregate Class Principal Amount of the Notes after giving effect to payments on such Payment Date is less than 10% of the initial aggregate Class Principal Amount of the Notes (the "Initial Call Date"), the Master Servicer may, upon written direction to the Indenture Trustee (delivered no later than 30 days prior to the anticipated sale date) exercise an option to purchase the Mortgage Loans and other property remaining in the Trust for a price equal to the Termination Price.

(c)      Promptly following any such sale pursuant to paragraph (b) of this Section, the Custodian shall release the Mortgage Files to the purchaser of such Mortgage Loans pursuant to this Section, or otherwise upon its order.

Section 10.03.  Certain Notices upon Final Payment.

The Indenture Trustee shall give the Issuer, the Master Servicer, each Rating Agency, each Securityholder and the Depositor at least 30 days' prior written notice of the date on which the Trust is expected to terminate in accordance with Section 10.01 or 10.02 (or, to the extent the Indenture Trustee has not received notice of such event by such time, such notice shall be sent promptly following receipt).  Not later than the fifth Business Day in the Collection Period in which the final distribution in respect to the Securities is payable to the Securityholders (or, in the case of the Noteholders, such other date specified in Section 10.02 of the Indenture), the Indenture Trustee shall mail to the Holders of the Securities a notice specifying the procedures with respect to such final distribution (or, to the extent the Indenture Trustee has not received notice of such event by such time, such notice shall be sent promptly following receipt).  The Indenture Trustee shall give a copy of such notice to each Rating Agency at the time such notice is given to Securityholders.  Following the final distribution thereon, such Securities shall become void, no longer outstanding and no longer evidence any right or interest in the Mortgage Loans, the Mortgage Files or any proceeds of the foregoing.

Section 10.04.  Binding Nature of Agreement; Assignment.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

CONFIDENTIAL

Section 10.05.  <u>Amendment</u>.

(a)     This Agreement may be amended from time to time by the Issuer, the Depositor, the Master Servicer and the Indenture Trustee, without the consent of any of the Holders of the Securities, (i) to cure any ambiguity, (ii) to cause the provisions herein to conform to or be consistent with or in furtherance of the statements made with respect to the Securities, the Trust or this Agreement in any Offering Document; or to correct or supplement any provision herein which may be inconsistent with any other provisions herein, (iii) to make any other provisions with respect to matters or questions arising under this Agreement or (iv) to add, delete, or amend any provisions to the extent necessary or desirable to comply with any requirements imposed by the Code and applicable regulations.  No such amendment effected pursuant to the preceding sentence shall, as evidenced by an Opinion of Counsel (which shall be an expense of the party requesting such amendment and shall not be an expense of the Trust), adversely affect the tax status of the REMIC created by the Trust Agreement, nor shall such amendment adversely affect the status of the Notes as debt for federal income tax purposes, nor shall such amendment effected pursuant to clause (iii) of such sentence adversely affect in any material respect the interests of any Holder.  Prior to entering into any amendment without the consent of Holders pursuant to this paragraph, the Indenture Trustee may require an Opinion of Counsel (at the expense of the party requesting such amendment) to the effect that such amendment is permitted under this paragraph.  Any such amendment shall be deemed not to adversely affect in any material respect any Holder, if the Indenture Trustee receives written confirmation from each Rating Agency that such amendment will not cause such Rating Agency to reduce the then current rating assigned to the Notes.

(b)     This Agreement may also be amended from time to time by Issuer, the Depositor, the Master Servicer and the Indenture Trustee with the consent of the Holders of not less than 66-2/3% of the aggregate Voting Rights of each Class of Securities affected thereby for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Holders; provided, however, that no such amendment shall be made unless the Indenture Trustee receives an Opinion of Counsel (which shall be an expense of the party requesting such amendment and shall not be an expense of the Trust unless such amendment is requested by the Indenture Trustee on behalf of the Trust), to the effect that such amendment will not adversely affect the tax status of the REMIC created by the Trust Agreement; provided, further, that no such amendment may (i) reduce in any manner the amount of, or delay the timing of, payments received on Mortgage Loans which are required to be distributed on any Note or Class R Certificate without the consent of the Holder of such Security or (ii) reduce the aforesaid percentages of Class Principal Amount (or Percentage Interest) of Securities of each Class, the Holders of which are required to consent to any such amendment without the consent of the Holders of 100% of the aggregate Voting Rights of each Class of Securities affected thereby.  For purposes of this paragraph, references to "Holder" or "Holders" shall be deemed to include, in the case of any Class of Book-Entry Notes, the related Note Owners.  Prior to entering into any amendment pursuant to this paragraph, the Indenture Trustee may require an Opinion of Counsel (at the expense of the party requesting such amendment) to the effect that such amendment is permitted under this paragraph.

CONFIDENTIAL

(c)     Promptly after the execution of any such amendment, the Indenture Trustee shall furnish written notification of the substance of such amendment to each Holder, the Depositor and to the Rating Agencies.

(d)     It shall not be necessary for the consent of Holders under this Section to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof.  The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Holders shall be subject to such reasonable regulations as the Indenture Trustee may prescribe.

(e)     Notwithstanding anything to the contrary in the Servicing Agreement, the Master Servicer shall not consent to any amendment of the Servicing Agreement except pursuant to the standards provided in this Section with respect to amendment of this Agreement.

Section 10.06.  Notices.

(a)     All communications and notices to the parties hereto shall be in writing and delivered as follows:

If to the Issuer, to:

Structured Asset Securities Corporation
Reverse Mortgage Loan Trust 2006-RM1
c/o Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware 19890
Attention:  Corporate Trust Administration
Telecopier:  (302) 636-4140

If to the Master Servicer, to:

Aurora Loan Services LLC
10350 Park Meadows Drive
Littleton, Colorado 8012412
Attention:  E. Todd Whittemore
Telephone:  (720) 945-3422
Telecopier:  (720) 945-3123

CONFIDENTIAL

If to the Indenture Trustee, to:

Citibank, N.A.
388 Greenwich Street, 14th Floor
New York, New York 10013
Attention: Agency and Trust SASCO 2006-RM1
Telephone: (212) 816-5827
Telecopier:  (212) 816-5527

If to the Depositor, to:

Structured Asset Securities Corporation
745 Seventh Avenue, 7th Floor
New York, New York 10019
Attention: Mortgage Backed Finance (SASCO 2006-RM1)

If to the Rating Agencies, to:

Standard & Poor's Ratings Services
55 Water Street, 41st Floor
New York, NY  10004
Attn:  SASCO 2006-RM1
Telephone:  (212) 438-2000
Telecopier:  (212) 438-2661

Moody's Investors Service, Inc.
99 Church Street
New York, New York  10007
Attn:  SASCO 2006-RM1
Telephone:  (212) 553-3884
Telecopier:  (212) 553-4392

Fitch, Inc.
1 State Street Plaza, 30th Floor
New York, NY  10004
Attn:  SASCO 2006-RM1
Telephone:  (212) 908-0500
Telecopier:  (212) 480-4435

or at such other address as the party may designate by notice to the other parties hereto, which
shall be effective when received.

(b)      The Indenture Trustee shall, at the expense of the Trust Estate, make available to
each Rating Agency such information as such Rating Agency may reasonably request regarding
the Notes or the Trust Estate, to the extent that such information is reasonably available to the
Indenture Trustee.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

(c)    All communications and notices to Securityholders given pursuant hereto shall be in writing and mailed first class mail, postage prepaid at the address shown above, or, in the case of the Securityholders, at the address shown in the Note Register or Certificate Register, as applicable.  Such notices shall be deemed given when mailed.

Section 10.07.  Entire Agreement.

This Agreement and the other Basic Documents contain the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

Section 10.08.  Headings.

The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 10.09.  Provision of Information.

For so long as any of the Securities are "restricted securities" within the meaning of Rule 144A under the Act, the Indenture Trustee agrees to provide to any Securityholder and to any prospective purchaser of Securities designated by such a Securityholder, upon the written request of such Securityholder or prospective purchaser, the information specified below, which is intended to satisfy the condition set forth in Rule 144A(d)(4) under the Act; *provided* that this Section shall require, as to the Issuer, the Indenture Trustee or the Master Servicer, only that the Indenture Trustee provide publicly available information regarding it, the Issuer or the Master Servicer in response to any such request:

(i)    the Private Placement Memorandum and any amendments and supplements thereto;

(ii)    the Basic Documents and any amendments thereto;

(iii)    the Master Servicer's and the Servicer's certificates required pursuant to Section 4.23 of this Agreement and Section 5.03 of the Servicing Agreement;

(iv)    copies of each statement or report sent to Securityholders pursuant to Section 6.08 during the 12 months immediately prior to such request; and

(v)    such other information as is reasonably available to the Indenture Trustee and is directly related to the distributions on the Securities and the servicing and performance of the Mortgage Loans.

Such information will be provided only to parties that have submitted to the Indenture Trustee a letter substantially in the form of Exhibit F attached hereto.  Any recipient of information provided pursuant to this Section shall agree that such information shall not be

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

disclosed or used for any purpose other than the evaluation of the Securities by the prospective purchaser. Neither the Issuer nor the Indenture Trustee shall have any responsibility for the sufficiency under Rule 144A of any information so provided by the Indenture Trustee to any Securityholder or prospective purchaser of Securities. Any reasonable, out-of-pocket expenses incurred by the Indenture Trustee in providing such information shall be reimbursed by the Depositor.

Section 10.10.  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Securities or the rights of the Holders thereof.

Section 10.11.  No Proceedings.

Notwithstanding any prior termination of this Agreement, the Indenture Trustee, the Master Servicer and the Depositor shall not, prior to the date which is one year and one day after the termination of this Agreement, acquiesce, petition or otherwise invoke or cause any Person to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the Depositor or the Issuer under any federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Depositor or the Issuer or any substantial part of their respective property, or ordering the winding up or liquidation of the affairs of the Depositor or the Issuer.

Section 10.12.  Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.13.  Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

Section 10.14.  Additional Limitation on Action and Imposition of Tax.

Except as otherwise provided in this Agreement or in any other Basic Agreement, neither the Indenture Trustee nor the Issuer shall, without having obtained an Opinion of Counsel experienced in federal income tax matters to the effect that such transaction does not adversely affect the characterization of the Trust or the Notes for federal income tax purposes or cause the

CONFIDENTIAL

Trust to be subject to tax, (i) sell any assets of the Trust, (ii) accept any contribution of assets after the Closing Date or (iii) agree to any modification of this Agreement.

Section 10.15.  Benefits of Agreement.

Nothing in this Agreement or in the Securities, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder, the Owner Trustee and the Holders of the Securities, any benefit or any legal or equitable right, power, remedy or claim under this Agreement, except to the extent specified in the immediately succeeding paragraph.

Section 10.16.  Special Notices to the Rating Agencies.

The Depositor shall give prompt notice to the Rating Agencies of the occurrence of any of the following events of which it has notice:

(i)    any amendment or supplement to this Agreement pursuant to Section 10.05;

(ii)    any Event of Master Servicer Default under this Agreement or any Event of Default under the Servicing Agreement.

(iii)    the appointment of any Successor Master Servicer pursuant to Section 4.18 or the appointment of any successor to a Servicer; and

(iv)    resignation of the Master Servicer or the Indenture Trustee.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Transfer and Servicing Agreement to be executed by their respective officers thereunto duly authorized on the day and year first above written.

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor

By: _____
    Name: Joseph Kelly
    Title: Authorized Signatory


AURORA LOAN SERVICES LLC, as Master Servicer

By: _____
    Name: Jerald W. Dreyer
    Title: Vice President


STRUCTURED ASSET SECURITIES CORPORATION REVERSE MORTGAGE LOAN TRUST 2006-RM1, as Issuer

By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:


CITIBANK, N.A., as Indenture Trustee

By: _____
    Name:
    Title:


192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Transfer and Servicing Agreement to be executed by their respective officers thereunto duly authorized on the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
Name: Joseph Kelly
Title:  Authorized Signatory

AURORA LOAN SERVICES LLC, as Master
Servicer

By: _____
Name: Jerald W. Dreyer
Title:  Vice President

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE
LOAN TRUST 2006-RM1, as Issuer

By:  WILMINGTON TRUST COMPANY,
not in its individual capacity but solely
as Owner Trustee

By: _____
Name:
Title:

CITIBANK, N.A., as Indenture Trustee

By: _____
Name:
Title:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Transfer and Servicing Agreement to be executed by their respective officers thereunto duly authorized on the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
Name: Joseph Kelly
Title:  Authorized Signatory

AURORA LOAN SERVICES LLC, as Master
Servicer

By: _____
Name: Jerald W. Dreyer
Title:  Vice President

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE
LOAN TRUST 2006-RM1, as Issuer

By:  WILMINGTON TRUST COMPANY,
not in its individual capacity but solely
as Owner Trustee

By: _____
Name:
Title:    Michele C. Harra
Financial Services Officer

CITIBANK, N.A., as Indenture Trustee

By: _____
Name:
Title:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Transfer and Servicing Agreement to be executed by their respective officers thereunto duly authorized on the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
Name: Joseph Kelly
Title:  Authorized Signatory

AURORA LOAN SERVICES LLC, as Master
Servicer

By: _____
Name: Jerald W. Dreyer
Title:  Vice President

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE
LOAN TRUST 2006-RM1, as Issuer

By:  WILMINGTON TRUST COMPANY,
not in its individual capacity but solely
as Owner Trustee

By: _____
Name:
Title:

CITIBANK, N.A., as Indenture Trustee

By: _____
Name:     KAREN SCHLUTER
Title:      Vice President

CONFIDENTIAL

EXHIBIT A


FORM OF MASTER SERVICER'S MONTHLY REPORT

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

A-1

**CONFIDENTIAL**

EXHIBIT B

FORM OF INITIAL CERTIFICATION

[Date]

Structured Asset Securities Corporation
745 Seventh Avenue, 7th Floor
New York, New York 10019
Attention: Mortgage Backed Finance

Structured Asset Securities Corporation
 Reverse Mortgage Loan Trust 2006-RM1
c/o Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware  19890

> Re:   Transfer and Servicing Agreement dated as of August 1, 2006,
>       among Structured Asset Securities Corporation Reverse Mortgage Loan
>       Trust 2006-RM1, as issuer, Structured Asset Securities Corporation, as
>       depositor, Aurora Loan Services LLC, as master servicer and Citibank N.A.,
>       as indenture trustee (the "Transfer and Servicing Agreement")

Ladies and Gentlemen:

        In accordance with the provisions of the Transfer and Servicing Agreement, the
undersigned, as Custodian, hereby certifies that as to any Mortgage Loan listed in the Mortgage
Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan listed on the
exceptions report attachment hereto), it has reviewed the documents delivered to it pursuant to
the Transfer and Servicing Agreement and has determined that (i) all Mortgages Notes and
Assignments required to be delivered to it pursuant to the Transfer and Servicing Agreement are
in its possession and (ii) each such Mortgage Note and Assignment, has been reviewed by it and
appears regular on its face, appears to bear original signatures, and has not been mutilated,
damaged, torn or otherwise physically altered and relates to such Mortgage Loan. The
undersigned has made no independent examination of such documents beyond the review
specifically required in the Transfer and Servicing Agreement.  The undersigned makes no
representations or warranties as to: (i) the validity, legality, enforceability or genuineness of any
such documents contained in each or any of the Mortgage Loans identified in the Mortgage Loan
Schedule, or (ii) the collectibility, insurability, effectiveness or suitability of any such Mortgage
Loan.

        This Certificate is subject in all respects to the Transfer and Servicing Agreement
including, but not limited to, Section 2.02.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

B-1

CONFIDENTIAL

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement.

[[Custodian], on behalf of ]
CITIBANK, N.A., as Indenture Trustee

By:_____
Name:
Title:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

B-2

**CONFIDENTIAL**

EXHIBIT C

FORM OF INTERIM CERTIFICATION

[Date]

Structured Asset Securities Corporation
745 Seventh Avenue, 7th Floor
New York, New York 10019
Attention: Mortgage Backed Finance

Structured Asset Securities Corporation
  Reverse Mortgage Loan Trust 2006-RM1
c/o Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware  19890

      Re:    Transfer and Servicing Agreement dated as of August 1, 2006,
              among Structured Asset Securities Corporation Reverse Mortgage Loan
              Trust 2006-RM1, as issuer, Structured Asset Securities Corporation, as
              depositor, Aurora Loan Services LLC, as master servicer and Citibank, N.A.,
              as indenture trustee (the "Transfer and Servicing Agreement")

Ladies and Gentlemen:

      In accordance with the provisions of the Transfer and Servicing Agreement, the
undersigned, as Custodian, hereby certifies that as to each Mortgage Loan listed in the Mortgage
Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan listed on the
exceptions report attached hereto), it (or its custodian) has received the applicable documents
listed in items (1)-(7) of Exhibit G to the Transfer and Servicing Agreement.

      The undersigned hereby certifies as to each Mortgage Loan identified on the Mortgage
Loan Schedule, other than any Mortgage Loan listed on Schedule I hereto, it has reviewed the
documents identified above and has determined that (a) each such document has not been
mutilated, damaged or torn and relates to the Mortgage Loan identified in such document and (b)
the information set forth in the Mortgage Loan Schedule that corresponds to items (i) through
(iii) of the definition of Mortgage Loan Schedule contained in the Transfer and Servicing
Agreement accurately reflects information set forth in the Mortgage File.

      This Certificate is qualified in all respects by the terms of the Transfer and Servicing
Agreement including, but not limited to, Section 2.02.

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

C-1

CONFIDENTIAL

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement.

[[Custodian], on behalf of ]
CITIBANK, N.A., as Indenture Trustee

By:_____
Name:
Title:

CONFIDENTIAL

EXHIBIT D

FORM OF FINAL CERTIFICATION

[Date]

Structured Asset Securities Corporation
745 Seventh Avenue, 7th Floor
New York, New York 10019
Attention: Mortgage Backed Finance

Structured Asset Securities Corporation
  Reverse Mortgage Loan Trust 2006-RM1
c/o Wilmington Trust Company
1100 North Market Street
Wilmington, Delaware  19890

Re:    Transfer and Servicing Agreement dated as of August 1, 2006,
       among Structured Asset Securities Corporation Reverse Mortgage Loan
       Trust 2006-RM1, as issuer, Structured Asset Securities Corporation, as
       depositor, Aurora Loan Services LLC, as master servicer and Citibank, N.A.,
       as indenture trustee (the "Transfer and Servicing Agreement")

Ladies and Gentlemen:

      In accordance with the provisions of the Transfer and Servicing Agreement, the
undersigned, as Custodian, hereby certifies that as to each Mortgage Loan listed in the Mortgage
Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan listed on the
exceptions report attached hereto), it (or its custodian) has received the applicable documents
listed in items (1)-(7) of Exhibit G to the Transfer and Servicing Agreement.

      The undersigned hereby certifies that as to each Mortgage Loan identified in the
Mortgage Loan Schedule, other than any Mortgage Loan listed on Schedule I hereto, it has
reviewed the documents listed above and has determined that each such document appears to be
complete and, based on an examination of such documents, the information set forth in items (i)
through (iii) of the Mortgage Loan Schedule is correct.

      This Certificate is qualified in all respects by the terms of the Transfer and Servicing
Agreement including, but not limited to, Section 2.02.

CONFIDENTIAL

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the Transfer and Servicing Agreement.

[[Custodian], on behalf of ]
CITIBANK, N.A., as Indenture Trustee

By:_____
Name:
Title:

CONFIDENTIAL

EXHIBIT E

FORM OF REQUEST FOR RELEASE OF DOCUMENTS

To:   Citibank, N.A.
      388 Greenwich Street, 14th Floor
      New York, New York 10013

Re:   Transfer and Servicing Agreement dated as of August 1, 2006, among Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as issuer, Structured Asset Securities Corporation, as depositor, Aurora Loan Services LLC, as master servicer and Citibank, N.A., as indenture trustee (the "Transfer and Servicing Agreement")

In connection with the administration of the Mortgage Loans held by you as Custodian pursuant to the above-captioned Transfer and Servicing Agreement and the Indenture, we request the release, and hereby acknowledge receipt, of the Mortgage File for the Mortgage Loan described below, for the reason indicated.

Mortgage Loan Number:

Obligor Name, Address & Zip Code:

Reason for Requesting Documents (check one):

_____  1.   Mortgage Loan Paid in Full

_____  2.   Foreclosure

_____  3.   Substitution

_____  4.   Other Liquidation (Repurchases, etc.)

_____  5.   Nonliquidation   Reason:_____

Address to which Servicer should
Deliver the Mortgage File:

_____

_____

_____

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

E-1

CONFIDENTIAL

By: _____
(authorized signer)

Issuer: _____

Address: _____

_____

Date: _____

<u>Indenture Trustee</u>
Citibank, N.A.

Please acknowledge the execution of the above request by your signature and date below:

_____          _____

Signature                                            Date

Documents returned to Custodian:

_____          _____

Custodian                                          Date

CONFIDENTIAL

EXHIBIT F

### FORM OF CONFIRMATION AND CONFIDENTIALITY AGREEMENT

Citibank, N.A.,
388 Greenwich Street, 14th Floor
New York, New York 10013
Attention: SASCO 2006-RM1

Re: <u>Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1</u>

Ladies and Gentlemen:

      This letter is delivered to you in connection with a request for information by the undersigned beneficial holder (the "Holder") or the undersigned prospective transferee (the "Transferee") of [Class R Notes (the "Notes")][Class R Certificates (the "Certificates")]. [The Notes were issued pursuant to the Indenture dated as of August 1, 2006 (the "Indenture"), by and between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as issuer and Citibank, N.A., as indenture trustee][The Class R Certificates were issued pursuant to the Trust Agreement dated as of August 1, 2006 (the "Trust Agreement") by and among Wilmington Trust Company, as owner trustee, Structured Asset Securities Corporation, as depositor, Citibank, N.A., as administrator and indenture trustee]. All terms used herein and not otherwise defined shall have the meanings set forth in the [Indenture][Trust Agreement]. The undersigned hereby certifies, represents and warrants to you, that:

### INITIAL BOX AS APPLICABLE

1. \_\_\_\_\_       In the case of a request for information by a direct or beneficial holder of [Notes][Certificates]: the undersigned is a direct or beneficial holder of [Notes][Certificates] and is requesting the information solely for use in evaluating such party's investment in the [Notes][Certificates] and will otherwise keep such information confidential.

2. \_\_\_\_\_       In the case of a request for information by a prospective transferee: (i) the undersigned holder is a direct or beneficial holder of [Notes][Certificates] and the undersigned requesting party is a prospective transferee of the undersigned holder's [Notes][Certificates] and (ii) the undersigned requesting party is a prospective transferee of [Notes][Certificates], is requesting the information solely for use in evaluating a possible investment in [Notes][Certificates] and will otherwise keep such information confidential.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Confirmation and Confidentiality Agreement to be executed this ___ day of _____, 200__.

[_____],
HOLDER

By: _____
Name:
Title:

[_____],
TRANSFEREE

By: _____
Name:
Title:

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

F-2

**CONFIDENTIAL**

EXHIBIT G

CONTENTS OF EACH MORTGAGE FILE

With respect to each Mortgage Loan, the Mortgage File shall include each of the following items, which shall be available for inspection by the Indenture Trustee, or its custodian:

1.  The original Mortgage Note endorsed without recourse to the Indenture Trustee or in blank (in each case, with all necessary intervening endorsements as applicable).

2.  In the case of each Mortgage Loan, the original recorded Mortgage with evidence of recording indicated thereon. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage has been lost, the Depositor shall deliver or cause to be delivered to the Indenture Trustee, or its custodian, in the case of a delay due to recording, a true copy of such Mortgage, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage delivered to the Indenture Trustee, or its custodian, is a true copy and that the original of such Mortgage has been forwarded to the public recording office, or, in the case of a Mortgage that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and such other documents as are required to enforce the Indenture Trustee's interest in the Mortgage Loan

3.  The original of each modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such modification or substitution agreement has been delivered for recordation, a photocopy of such modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such modification or substitution agreement delivered to the Indenture Trustee, or its custodian, is a true copy and that the original of such agreement has been forwarded to the public recording office.

4.  The original Assignment for each Mortgage Loan, in form and substance acceptable for recording delivered in blank, or, in the case of a Cooperative Loan, an original Assignment of the Security Agreement. If the Mortgage Loan was acquired by the Depositor in a merger, the Assignment must be made by "[    ], successor by merger to [name of predecessor]." If the Mortgage Loan was acquired or originated by the Depositor while doing business under another name, the Assignment must be by "[          ], formerly known as [previous name]." Subject to the foregoing, and where permitted under the applicable laws of the jurisdiction wherein the Mortgaged Property is located, such assignments of

CONFIDENTIAL

Mortgage may be made by blanket assignments for Mortgage Loans secured by the Mortgaged Properties located in the same county.

5.    In the case of each Mortgage Loan, the original or duplicate original mortgagee policy of title insurance or attorney's opinion of title and abstract of title.

6.    In the case of a Cooperative Loan, the following documents:  the Security Agreement, a stock certificate evidencing the Cooperative Shares and related stock power; Proprietary Lease; and Recognition Agreement.

CONFIDENTIAL

SCHEDULE I

MORTGAGE LOAN SCHEDULE

[To be retained in a separate closing binder entitled "SASCO Mortgage Loan Trust 2006-RM1
Mortgage Loan Schedules" at McKee Nelson LLP]

**CONFIDENTIAL**

## SCHEDULE II

## CLASS A1, CLASS M1 AND CLASS M2 SCHEDULED PRINCIPAL AMOUNTS

| Payment Date Occurring in | Class A1 Notes ($) | Class M1 Notes ($) | Class M2 Notes ($) |
|---|---|---|---|
| Initial Amount | 490,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| September 25, 2006 | 489,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| October 25, 2006 | 488,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| November 25, 2006 | 487,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| December 25, 2006 | 486,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| January 25, 2007 | 485,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| February 25, 2007 | 484,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| March 25, 2007 | 483,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| April 25, 2007 | 482,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| May 25, 2007 | 481,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| June 25, 2007 | 480,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| July 25, 2007 | 479,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| August 25, 2007 | 478,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| September 25, 2007 | 475,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| October 25, 2007 | 472,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| November 25, 2007 | 469,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| December 25, 2007 | 466,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| January 25, 2008 | 463,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| February 25, 2008 | 460,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| March 25, 2008 | 457,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| April 25, 2008 | 454,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| May 25, 2008 | 451,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| June 25, 2008 | 448,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| July 25, 2008 | 445,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| August 25, 2008 | 442,000,000.00 | 83,300,000.00 | 25,030,291.00 |
| September 25, 2008 | 439,000,000.00 | 81,300,000.00 | 23,030,291.00 |
| October 25, 2008 | 436,000,000.00 | 79,300,000.00 | 21,030,291.00 |
| November 25, 2008 | 433,000,000.00 | 77,300,000.00 | 19,030,291.00 |
| December 25, 2008 | 430,000,000.00 | 75,300,000.00 | 17,030,291.00 |
| January 25, 2009 | 427,000,000.00 | 73,300,000.00 | 15,030,291.00 |
| February 25, 2009 | 424,000,000.00 | 71,300,000.00 | 13,030,291.00 |
| March 25, 2009 | 421,000,000.00 | 69,300,000.00 | 11,030,291.00 |
| April 25, 2009 | 418,000,000.00 | 67,300,000.00 | 9,030,291.00 |
| May 25, 2009 | 415,000,000.00 | 65,300,000.00 | 7,030,291.00 |
| June 25, 2009 | 412,000,000.00 | 63,300,000.00 | 5,030,291.00 |
| July 25, 2009 | 409,000,000.00 | 61,300,000.00 | 3,030,291.00 |
| August 25, 2009 | 406,000,000.00 | 59,300,000.00 | 1,030,291.00 |
| September 25, 2009 | 402,500,000.00 | 57,300,000.00 | 0.00 |
| October 25, 2009 | 399,000,000.00 | 55,300,000.00 | 0.00 |

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

**CONFIDENTIAL**

| Payment Date Occurring in | Class A1 Notes ($) | Class M1 Notes ($) | Class M2 Notes ($) |
|---|---|---|---|
| November 25, 2009 | 395,500,000.00 | 53,300,000.00 | 0.00 |
| December 25, 2009 | 392,000,000.00 | 51,300,000.00 | 0.00 |
| January 25, 2010 | 388,500,000.00 | 49,300,000.00 | 0.00 |
| February 25, 2010 | 385,000,000.00 | 47,300,000.00 | 0.00 |
| March 25, 2010 | 381,500,000.00 | 45,300,000.00 | 0.00 |
| April 25, 2010 | 378,000,000.00 | 43,300,000.00 | 0.00 |
| May 25, 2010 | 374,500,000.00 | 41,300,000.00 | 0.00 |
| June 25, 2010 | 371,000,000.00 | 39,300,000.00 | 0.00 |
| July 25, 2010 | 367,500,000.00 | 37,300,000.00 | 0.00 |
| August 25, 2010 | 364,000,000.00 | 35,300,000.00 | 0.00 |
| September 25, 2010 | 358,500,000.00 | 33,300,000.00 | 0.00 |
| October 25, 2010 | 353,000,000.00 | 31,300,000.00 | 0.00 |
| November 25, 2010 | 347,500,000.00 | 29,300,000.00 | 0.00 |
| December 25, 2010 | 342,000,000.00 | 27,300,000.00 | 0.00 |
| January 25, 2011 | 336,500,000.00 | 25,300,000.00 | 0.00 |
| February 25, 2011 | 331,000,000.00 | 23,300,000.00 | 0.00 |
| March 25, 2011 | 325,500,000.00 | 21,300,000.00 | 0.00 |
| April 25, 2011 | 320,000,000.00 | 19,300,000.00 | 0.00 |
| May 25, 2011 | 314,500,000.00 | 17,300,000.00 | 0.00 |
| June 25, 2011 | 309,000,000.00 | 15,300,000.00 | 0.00 |
| July 25, 2011 | 303,500,000.00 | 13,300,000.00 | 0.00 |
| August 25, 2011 | 298,000,000.00 | 11,300,000.00 | 0.00 |
| September 25, 2011 | 292,500,000.00 | 9,300,000.00 | 0.00 |
| October 25, 2011 | 287,000,000.00 | 7,300,000.00 | 0.00 |
| November 25, 2011 | 281,500,000.00 | 5,300,000.00 | 0.00 |
| December 25, 2011 | 276,000,000.00 | 3,300,000.00 | 0.00 |
| January 25, 2012 | 270,500,000.00 | 1,300,000.00 | 0.00 |
| February 25, 2012 | 265,000,000.00 | 0.00 | 0.00 |
| March 25, 2012 | 259,500,000.00 | 0.00 | 0.00 |
| April 25, 2012 | 254,000,000.00 | 0.00 | 0.00 |
| May 25, 2012 | 248,500,000.00 | 0.00 | 0.00 |
| June 25, 2012 | 243,000,000.00 | 0.00 | 0.00 |
| July 25, 2012 | 237,500,000.00 | 0.00 | 0.00 |
| August 25, 2012 | 232,000,000.00 | 0.00 | 0.00 |
| September 25, 2012 | 226,500,000.00 | 0.00 | 0.00 |
| October 25, 2012 | 221,000,000.00 | 0.00 | 0.00 |
| November 25, 2012 | 215,500,000.00 | 0.00 | 0.00 |
| December 25, 2012 | 210,000,000.00 | 0.00 | 0.00 |
| January 25, 2013 | 204,500,000.00 | 0.00 | 0.00 |
| February 25, 2013 | 199,000,000.00 | 0.00 | 0.00 |
| March 25, 2013 | 193,500,000.00 | 0.00 | 0.00 |
| April 25, 2013 | 188,000,000.00 | 0.00 | 0.00 |

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

**CONFIDENTIAL**

| Payment Date Occurring in | Class A1 Notes ($) | Class M1 Notes ($) | Class M2 Notes ($) |
| --- | --- | --- | --- |
| May 25, 2013 | 182,500,000.00 | 0.00 | 0.00 |
| June 25, 2013 | 177,000,000.00 | 0.00 | 0.00 |
| July 25, 2013 | 171,500,000.00 | 0.00 | 0.00 |
| August 25, 2013 | 166,000,000.00 | 0.00 | 0.00 |
| September 25, 2013 | 160,500,000.00 | 0.00 | 0.00 |
| October 25, 2013 | 155,000,000.00 | 0.00 | 0.00 |
| November 25, 2013 | 149,500,000.00 | 0.00 | 0.00 |
| December 25, 2013 | 144,000,000.00 | 0.00 | 0.00 |
| January 25, 2014 | 138,500,000.00 | 0.00 | 0.00 |
| February 25, 2014 | 133,000,000.00 | 0.00 | 0.00 |
| March 25, 2014 | 127,500,000.00 | 0.00 | 0.00 |
| April 25, 2014 | 122,000,000.00 | 0.00 | 0.00 |
| May 25, 2014 | 116,500,000.00 | 0.00 | 0.00 |
| June 25, 2014 | 111,000,000.00 | 0.00 | 0.00 |
| July 25, 2014 | 105,500,000.00 | 0.00 | 0.00 |
| August 25, 2014 | 100,000,000.00 | 0.00 | 0.00 |
| September 25, 2014 | 94,500,000.00 | 0.00 | 0.00 |
| October 25, 2014 | 89,000,000.00 | 0.00 | 0.00 |
| November 25, 2014 | 83,500,000.00 | 0.00 | 0.00 |
| December 25, 2014 | 78,000,000.00 | 0.00 | 0.00 |
| January 25, 2015 | 72,500,000.00 | 0.00 | 0.00 |
| February 25, 2015 | 67,000,000.00 | 0.00 | 0.00 |
| March 25, 2015 | 61,500,000.00 | 0.00 | 0.00 |
| April 25, 2015 | 56,000,000.00 | 0.00 | 0.00 |
| May 25, 2015 | 50,500,000.00 | 0.00 | 0.00 |
| June 25, 2015 | 45,000,000.00 | 0.00 | 0.00 |
| July 25, 2015 | 39,500,000.00 | 0.00 | 0.00 |
| August 25, 2015 | 34,000,000.00 | 0.00 | 0.00 |
| September 25, 2015 | 28,500,000.00 | 0.00 | 0.00 |
| October 25, 2015 | 23,000,000.00 | 0.00 | 0.00 |
| November 25, 2015 | 17,500,000.00 | 0.00 | 0.00 |
| December 25, 2015 | 12,000,000.00 | 0.00 | 0.00 |
| January 25, 2016 | 6,500,000.00 | 0.00 | 0.00 |
| February 25, 2016 | 1,000,000.00 | 0.00 | 0.00 |
| March 25, 2016 and thereafter | 0.00 | 0.00 | 0.00 |

CONFIDENTIAL

## SCHEDULE III

## CLASS A-IO SCHEDULED NOTIONAL AMOUNTS

| Payment Date Occurring in | Class A-IO Notes ($) |
|---|---|
| Initial Amount | 182,821,637.27 |
| September 25, 2006 | 182,821,637.27 |
| October 25, 2006 | 180,962,803.82 |
| November 25, 2006 | 179,151,727.37 |
| December 25, 2006 | 177,385,048.96 |
| January 25, 2007 | 175,657,400.32 |
| February 25, 2007 | 173,965,826.60 |
| March 25, 2007 | 172,300,252.87 |
| April 25, 2007 | 170,686,481.34 |
| May 25, 2007 | 169,097,902.91 |
| June 25, 2007 | 167,533,943.37 |
| July 25, 2007 | 165,994,066.43 |
| August 25, 2007 | 164,477,769.31 |
| September 25, 2007 | 162,984,578.73 |
| October 25, 2007 | 161,312,409.93 |
| November 25, 2007 | 159,668,439.65 |
| December 25, 2007 | 158,051,966.18 |
| January 25, 2008 | 156,462,331.94 |
| February 25, 2008 | 154,898,918.57 |
| March 25, 2008 | 153,361,142.66 |
| April 25, 2008 | 151,848,451.97 |
| May 25, 2008 | 150,360,322.07 |
| June 25, 2008 | 148,896,253.48 |
| July 25, 2008 | 147,455,769.03 |
| August 25, 2008 | 146,038,411.67 |
| September 25, 2008 | 144,643,742.42 |
| October 25, 2008 | 143,065,984.53 |
| November 25, 2008 | 141,519,177.33 |
| December 25, 2008 | 140,002,202.91 |
| January 25, 2009 | 138,514,032.38 |
| February 25, 2009 | 137,053,716.15 |
| March 25, 2009 | 135,620,375.14 |
| April 25, 2009 | 134,213,193.20 |
| May 25, 2009 | 132,831,410.31 |
| June 25, 2009 | 131,474,316.59 |
| July 25, 2009 | 130,141,246.98 |
| August 25, 2009 | 128,831,576.63 |
| September 25, 2009 | 127,544,716.71 |
| October 25, 2009 | 126,089,631.21 |

CONFIDENTIAL

| Payment Date Occurring in | Class A-IO Notes ($) |
|---|---|
| November 25, 2009 | 124,665,599.25 |
| December 25, 2009 | 123,271,330.83 |
| January 25, 2010 | 121,905,644.81 |
| February 25, 2010 | 120,567,456.88 |
| March 25, 2010 | 119,255,769.00 |
| April 25, 2010 | 117,969,659.95 |
| May 25, 2010 | 116,708,277.12 |
| June 25, 2010 | 115,470,829.09 |
| July 25, 2010 | 114,256,579.24 |
| August 25, 2010 | 113,064,839.91 |
| September 25, 2010 | 111,894,967.40 |
| October 25, 2010 | 110,590,482.40 |
| November 25, 2010 | 109,312,823.59 |
| December 25, 2010 | 108,061,023.04 |
| January 25, 2011 | 106,834,185.00 |
| February 25, 2011 | 105,631,478.21 |
| March 25, 2011 | 104,452,129.14 |
| April 25, 2011 | 103,295,416.00 |
| May 25, 2011 | 102,160,663.43 |
| June 25, 2011 | 101,047,237.76 |
| July 25, 2011 | 99,954,542.91 |
| August 25, 2011 | 98,882,016.64 |
| September 25, 2011 | 97,829,127.34 |
| October 25, 2011 | 96,628,926.63 |
| November 25, 2011 | 95,457,153.42 |
| December 25, 2011 | 94,312,431.31 |
| January 25, 2012 | 93,193,507.28 |
| February 25, 2012 | 92,099,238.05 |
| March 25, 2012 | 91,028,577.84 |
| April 25, 2012 | 89,980,567.78 |
| May 25, 2012 | 88,954,326.35 |
| June 25, 2012 | 87,949,041.02 |
| July 25, 2012 | 86,963,960.90 |
| August 25, 2012 | 85,998,390.10 |
| September 25, 2012 | 85,051,682.04 |
| October 25, 2012 | 83,996,781.69 |
| November 25, 2012 | 82,965,117.43 |
| December 25, 2012 | 81,955,741.53 |
| January 25, 2013 | 80,967,781.29 |
| February 25, 2013 | 80,000,431.01 |
| March 25, 2013 | 79,052,944.96 |
| April 25, 2013 | 78,124,631.12 |
| May 25, 2013 | 77,214,845.65 |

CONFIDENTIAL

| Payment Date Occurring in | Class A-IO Notes ($) |
|---|---|
| June 25, 2013 | 76,322,987.96 |
| July 25, 2013 | 75,448,496.35 |
| August 25, 2013 | 74,590,844.17 |
| September 25, 2013 | 73,749,536.36 |
| October 25, 2013 | 72,818,503.93 |
| November 25, 2013 | 71,906,916.16 |
| December 25, 2013 | 71,014,093.09 |
| January 25, 2014 | 70,139,401.39 |
| February 25, 2014 | 69,282,249.63 |
| March 25, 2014 | 68,442,084.12 |
| April 25, 2014 | 67,618,385.18 |
| May 25, 2014 | 66,810,663.86 |
| June 25, 2014 | 66,018,459.03 |
| July 25, 2014 | 65,241,334.75 |
| August 25, 2014 | 64,478,877.98 |
| September 25, 2014 | 63,730,696.55 |
| October 25, 2014 | 62,901,800.34 |
| November 25, 2014 | 62,090,261.74 |
| December 25, 2014 | 61,295,475.34 |
| January 25, 2015 | 60,516,876.68 |
| February 25, 2015 | 59,753,938.21 |
| March 25, 2015 | 59,006,165.56 |
| April 25, 2015 | 58,273,094.37 |
| May 25, 2015 | 57,554,287.35 |
| June 25, 2015 | 56,849,331.81 |
| July 25, 2015 | 56,157,837.31 |
| August 25, 2015 | 55,479,433.69 |
| September 25, 2015 | 54,813,769.24 |
| October 25, 2015 | 54,080,937.20 |
| November 25, 2015 | 53,363,212.89 |
| December 25, 2015 | 52,660,098.28 |
| January 25, 2016 | 51,971,126.73 |
| February 25, 2016 | 51,295,859.94 |
| March 25, 2016 | 50,633,885.25 |
| April 25, 2016 | 49,984,813.22 |
| May 25, 2016 | 49,348,275.52 |
| June 25, 2016 | 48,723,922.96 |
| July 25, 2016 | 48,111,423.90 |
| August 25, 2016 | 47,510,462.62 |
| September 25, 2016 and thereafter | 0.00 |

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

CONFIDENTIAL

SCHEDULE IV

CLASS R CERTIFICATE SCHEDULE

| Trigger Test Date | Applies to Payment Dates | OC Trigger Level | Monthly Payment Amount |
|---|---|---|---|
| 9/25/2008 | 9/25/2008 - 8/25/2009 | 2.00% | $    900,000.00 |
| 9/25/2009 | 9/25/2009 - 8/25/2010 | 3.00% | $    850,000.00 |
| 9/25/2010 | 9/25/2010 - 8/25/2011 | 10.00% | $    600,000.00 |

192653 SASCO 2006-RM1
Transfer and Servicing Agmt.

**CONFIDENTIAL**