# **EXHIBIT F**

*EXECUTION*

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1

TRUST AGREEMENT

among

STRUCTURED ASSET
SECURITIES CORPORATION,
as Depositor,

WILMINGTON TRUST COMPANY,
as Owner Trustee

and

CITIBANK, N.A.
as Administrator

Dated as of August 1, 2006

CONFIDENTIAL

## TABLE OF CONTENTS

Page

## ARTICLE I
## DEFINITIONS

Section 1.01. Definitions..................................................................................................1
Section 1.02. Other Definitional Provisions. ....................................................................4

## ARTICLE II
## ORGANIZATION

Section 2.01. Name. ...........................................................................................................5
Section 2.02. Office. ...........................................................................................................5
Section 2.03. Purpose and Powers. ....................................................................................5
Section 2.04. Appointment of the Owner Trustee. ............................................................6
Section 2.05. Initial Capital Contribution; Declaration of Trust. .....................................6
Section 2.06. Issuance of Initial Class R Certificates. ......................................................7
Section 2.07. Liability of the Holder of the Class R Certificates. .....................................7
Section 2.08. Situs of Trust. ...............................................................................................7
Section 2.09. Title to Trust Property...................................................................................7
Section 2.10. Representations and Warranties of the Depositor.........................................8
Section 2.11. Investment Company. ...................................................................................9
Section 2.12. Designation of REMIC and Interests Therein. ............................................9
Section 2.13. Designation of Start-up Day.. ......................................................................9
Section 2.14. REMIC Notes Maturity Date.. .....................................................................9

## ARTICLE III
## THE CLASS R CERTIFICATES AND TRANSFERS OF INTERESTS

Section 3.01. The Class R Certificates...............................................................................9
Section 3.02. Execution, Authentication and Delivery of Class R Certificates..................9
Section 3.03. Registration of and Limitations on Transfers and Exchanges of
            Class R Certificates..............................................................................10
Section 3.04. Lost, Stolen, Mutilated or Destroyed Class R Certificates. ........................13
Section 3.05. Persons Deemed Certificateholders. ............................................................13
Section 3.06. Access to List of Certificateholders' Names and Addresses. ......................13
Section 3.07. [Reserved]....................................................................................................13
Section 3.08. Maintenance of Office or Agency.................................................................13
Section 3.09. Certificate Paying Agent...............................................................................14
Section 3.10. Initial Certificate Ownership.........................................................................15

## ARTICLE IV
## APPLICATION OF TRUST ESTATES; CERTAIN DUTIES

CONFIDENTIAL

Section 4.01. Certificate Distribution Account. ................................................................15
Section 4.02. Application of Trust Estate. ........................................................................16
Section 4.03. Method of Payment. .....................................................................................17
Section 4.04. Tax Returns. ..................................................................................................17
Section 4.05. REMIC Related Covenants. ........................................................................18
Section 4.06. Segregation of Moneys; No Interest. ..........................................................19

## ARTICLE V
### AUTHORITY AND DUTIES OF THE OWNER TRUSTEE; ACTION BY CERTIFICATEHOLDERS

Section 5.01. General Authority. .......................................................................................19
Section 5.02. General Duties. .............................................................................................19
Section 5.03. Action Upon Instruction. .............................................................................20
Section 5.04. No Duties Except as Specified under Specified Documents or in
            Instructions. ...............................................................................................20
Section 5.05. Restrictions. ..................................................................................................21
Section 5.06. Prior Notice to Certificateholders with Respect to Certain Matters. ..........21
Section 5.07. Action by Certificateholders with Respect to Certain Matters. ..................23
Section 5.08. Action by Certificateholders with Respect to Bankruptcy. .........................24
Section 5.09. Restrictions on Certificateholders' Power. ..................................................24
Section 5.10. Majority Control. ..........................................................................................24

## ARTICLE VI
### CONCERNING THE OWNER TRUSTEE

Section 6.01. Acceptance of Trusts and Duties. ................................................................24
Section 6.02. Furnishing of Documents. ............................................................................25
Section 6.03. Books and Records. ......................................................................................25
Section 6.04. Representations and Warranties. ..................................................................25
Section 6.05. Reliance; Advice of Counsel. ......................................................................27
Section 6.06. Not Acting in Individual Capacity. ..............................................................28
Section 6.07. Owner Trustee Not Liable for Class R Certificates or Mortgage
            Loans. .........................................................................................................28
Section 6.08. Owner Trustee May Own Class R Certificates and Notes. ..........................28
Section 6.09. Licenses. .......................................................................................................28
Section 6.10. Doing Business in Other Jurisdictions. ........................................................28
Section 6.11.

## ARTICLE VII
### INDEMNIFICATION AND COMPENSATION

Section 7.01. Trust Expenses. ............................................................................................29
Section 7.02. Indemnification. ...........................................................................................29
Section 7.03. Compensation. ..............................................................................................30

CONFIDENTIAL

Section 7.04. Lien on Trust Estate. ................................................................30

ARTICLE VIII
TERMINATION OF AGREEMENT

Section 8.01. Termination of Agreement. ..........................................................30
Section 8.02. Additional Termination Requirements. .........................................31

ARTICLE IX
SUCCESSOR OWNER TRUSTEES AND ADDITIONAL OWNER TRUSTEES

Section 9.01. Eligibility Requirements for Owner Trustee. ................................32
Section 9.02. Resignation or Removal of Owner Trustee. ..................................32
Section 9.03. Successor Owner Trustee. ............................................................33
Section 9.04. Merger or Consolidation of Owner Trustee. ................................33
Section 9.05. Appointment of Co-Trustee or Separate Trustee. ........................34

ARTICLE X
MISCELLANEOUS

Section 10.01. Supplements and Amendments. ..................................................35
Section 10.02. No Legal Title to Trust Estate in Certificateholders. .................36
Section 10.03. Pledge of Primary Trust Assets by Owner Trustee is Binding. ..36
Section 10.04. Limitations on Rights of Others. ................................................36
Section 10.05. Notices. .....................................................................................37
Section 10.06. Severability. ..............................................................................37
Section 10.07. Separate Counterparts. ..............................................................37
Section 10.08. Successors and Assigns. ............................................................37
Section 10.09. Headings. ..................................................................................37
Section 10.10. Governing Law. .........................................................................37
Section 10.11. No Petition. ...............................................................................38
Section 10.12. Limitations on Liability. ............................................................38
Section 10.13. No Recourse. .............................................................................38

ARTICLE XI
OFFICERS

Section 11.01. Appointment of Officers. ...........................................................38
Section 11.02. Officers to Provide Information to the Owner Trustee. ..............38

Exhibit A   –  Form of Class R Certificate
Exhibit B   –  [Reserved]
Exhibit C   –  Form of Certificate of Trust of Structured Asset Securities Corporation Reverse
              Mortgage Loan Trust 2006-RM1
Exhibit D   –  Form of Rule 144A Investment Letter
Exhibit E-1 –  Form of Class R Certificate Transferor Letter

192708 SASCO 2006-RM1
Trust Agreement

iii

CONFIDENTIAL

Exhibit E-2 –  Form of Class R Certificate Transferee Letter
Exhibit F    –  Form of Certificate of Non-Foreign Status
Exhibit G   –  Owner Trustee Fee Letter Agreement

192708 SASCO 2006-RM1
Trust Agreement

**CONFIDENTIAL**

This TRUST AGREEMENT, dated as of August 1, 2006, is by and among STRUCTURED ASSET SECURITIES CORPORATION, a Delaware corporation (the "Depositor"), WILMINGTON TRUST COMPANY, a Delaware banking corporation, as Owner Trustee (the "Owner Trustee"), and CITIBANK, N.A., as Administrator (the "Administrator").

WHEREAS, pursuant to the Transfer and Servicing Agreement entered into simultaneously with this Trust Agreement, the Depositor intends to sell, transfer and assign to a Delaware statutory trust created hereunder certain mortgage loans and related assets (the "Mortgage Loans," and together with amounts on deposit in the Funding Account, the "Primary Trust Assets"), which trust would then pledge such Primary Trust Assets under an indenture in order to secure the issuance of securities, the net proceeds of which would be applied toward the purchase of the Primary Trust Assets.

WHEREAS, the Depositor, the Owner Trustee and the Administrator desire to enter into this Agreement in order to effect the foregoing.

NOW THEREFORE, in consideration of the mutual premises and mutual agreements herein contained, the parties hereto hereby agree as follows:

ARTICLE I
DEFINITIONS

Section 1.01.  Definitions.  For all purposes of this Agreement, the following terms shall have the meanings set forth below.

Actual Knowledge:  With respect to the Owner Trustee, any officer within the Corporate Trust Office of the Owner Trustee responsible for administering the Trust hereunder, or under the Operative Agreements, who has actual knowledge of an action taken or an action not taken with regard to the Trust. Actions taken or actions not taken of which the Owner Trustee should have had knowledge, or has constructive knowledge, do not meet the definition of Actual Knowledge hereunder.  With respect to the Administrator, any Responsible Officer of the Administrator who has actual knowledge of an action taken or an action not taken with regard to the Trust.  Actions taken or actions not taken of which the Administrator should have had knowledge, or has constructive knowledge, do not meet the definition of Actual Knowledge hereunder.

Agreement or Trust Agreement:  This Trust Agreement and any amendments or modifications hereof.

Authorized Officer:  With respect to the Trust, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Trust and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter) and, so long as the Administration Agreement is in effect, any Responsible Officer of the Administrator.

Bank:  Wilmington Trust Company in its individual capacity and not as Owner Trustee under this Agreement.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

Benefit Plan:  An employee benefit plan or other retirement arrangement that is subject to Section 406 of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, or any substantially similar applicable law, or any entity deemed to hold the plan assets of the foregoing.

Certificate of Non-Foreign Status:  The certificate delivered pursuant to Section 3.03 hereof in the form of Exhibit F.

Certificate of Trust:  The Certificate of Trust to be filed by the Owner Trustee for the Trust pursuant to Section 3810(a) of the Delaware Trust Statute in the form of Exhibit C hereto.

Certificate Paying Agent:  The Certificate Paying Agent appointed pursuant to Section 3.09 hereof.

Certificate Register:  The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of the Class R Certificates and of transfers and exchanges of such Class R Certificates.

Certificate Registrar:  Initially, the Administrator, in its capacity as Certificate Registrar, or any successor to the Administrator in such capacity.

Certificateholder or Holder:  The Person in whose name a Class R Certificate is registered in the Certificate Register except that, any Class R Certificate registered in the name of the Issuer, the Owner Trustee, or any Affiliate of any of the foregoing shall be deemed not to be outstanding and the registered Holders will not be considered a Certificateholder or a Holder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or this Agreement.

Class R Certificate:  An equity certificate representing an undivided beneficial interest in the Trust in substantially the form annexed hereto as Exhibit A.

Code:  The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Corporate Trust Office:  With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee located at 1100 North Market Street, Wilmington, Delaware 19890-1600; or at such other address in the State of Delaware as the Owner Trustee may designate by notice to the Certificateholders, or the principal corporate trust office of any successor Owner Trustee (the address (which shall be in the State of Delaware) of which the successor owner trustee will notify the Certificateholders) and with respect to the Certificate Registrar, the principal office of the Certificate Registrar at which at any particular time its corporate trust business shall be administered, which office is located at 111 Wall Street, 15th Floor, New York, New York 10005, Attention: 15th Floor Window, or at such other address as the Certificate Registrar may designate from time to time by notice to the Noteholders and the Issuer, or the principal corporate trust office of any successor Certificate Registrar at the address designated by such successor Certificate Registrar by notice to the Noteholders and the Issuer.

192708 SASCO 2006-RM1
Trust Agreement

2

CONFIDENTIAL

Delaware Trust Statute:  Chapter 38 of Title 12 of the Delaware Code, 12 Del.C. Section 3801 *et seq.*, as the same may be amended from time to time.

Depositor:  Structured Asset Securities Corporation, a Delaware corporation.

Distribution Date:  The 25th calendar day of each month (or the immediately succeeding Business Day if such day is not a Business Day), commencing in September, 2006.

ERISA:  The Employee Retirement Income Security Act of 1974, as amended.

Expenses:  The meaning specified in Section 7.02.

Indenture:  The Indenture dated as of August 1, 2006, between the Issuer and the Indenture Trustee.

Initial Holder:  Lehman Pass-Through Securities, Inc.

Lehman:  Lehman Brothers Inc., or any successor in interest.

Master Servicer:  Aurora Loan Services LLC, or any successor in interest, as servicer under the Transfer and Servicing Agreement, or any successor servicer appointed thereunder.

Net Proceeds from the Notes:  The proceeds received by the Trust from time to time from the issuance and sale of its Notes, less the costs and expenses incurred in connection with the issuance and sale of such Notes.

Noteholders:  The holders from time to time of the Notes.

Officer:  Those officers of the Trust referred to in Article XI.

Operative Agreements:  The Trust Agreement, the Certificate of Trust of the Issuer, the Transfer and Servicing Agreement, the Indenture, the Administration Agreement, the Class R Certificate, the Notes, and each other document contemplated by any of the foregoing to which the Seller, the Owner Trustee, the Administrator, the Indenture Trustee or the Issuer is a party.

Opinion of Counsel:  One or more written opinions of counsel who may, except as otherwise expressly provided in this Agreement, be employees of or counsel to the Depositor and who shall be satisfactory to the Owner Trustee and the Administrator, which opinion shall be addressed to the Owner Trustee and the Administrator.

Ownership Interest:  As to any Class R Certificate, any ownership or security interest in such Class R Certificate, including any interest in such Class R Certificate as the Holder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

Owner Trustee:  Wilmington Trust Company, not in its individual capacity but solely as trustee under this Agreement, and any successor trustee hereunder.

CONFIDENTIAL

Percentage Interest:  With respect to any Class R Certificate, the percentage set forth on the face thereof.

Permitted Transferee:  Any Person other than (i) a "disqualified organization," within the meaning of section 860E(e)(5) of the Code, or (ii) a Non-U.S. Person, other than a Non-U.S. Person that holds a Residual Certificate in connection with the Conduct of a trade or business within the United States and has furnished to the Administrator an Internal Revenue Service Form W8-ECI (or successor form) at the time and in the manner specified in the Code.

Primary Trust Assets:  The Mortgage Loans and the amounts on deposit in the Funding Account.

Proposer:  The Certificateholder making a written request pursuant to Section 5.07.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Provisions:  Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Section 860A through 860G of the Code, and related provisions, and regulations promulgated thereunder, as the foregoing may be in effect from time to time, as well as provisions of applicable state laws.

Responsible Officer:  With respect to the Owner Trustee, any officer within the Corporate Trust Office of the Owner Trustee with direct responsibility for the administration of the Trust and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of, and familiarity with, the particular subject; and with respect to the Administrator, any officer with direct responsibility for the administration of the Trust and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of, and familiarity with, the particular subject.

Secretary of State:  The Secretary of State of the State of Delaware.

Seller:  Lehman Brothers Holdings Inc.

Transfer and Servicing Agreement:  The Transfer and Servicing Agreement dated as of August 1, 2006, by and among the Trust, as Issuer, the Master Servicer, the Depositor and Citibank, N.A., as Indenture Trustee and Administrator, as such may be amended or supplemented from time to time.

Trust:  The trust established pursuant to this Agreement which shall carry on its business operations under the name of "Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1."

Section 1.02.  Other Definitional Provisions.

(a) Capitalized terms used herein and not defined herein shall have the same meanings assigned to them in the Transfer and Servicing Agreement or in the Indenture, as applicable.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

(b) All terms defined in this Agreement shall have the defined meanings when used in any certificate or other document made or delivered pursuant hereto unless otherwise defined therein.

(c) As used in this Agreement and in any certificate or other document made or delivered pursuant hereto or thereto, accounting terms not defined in this Agreement or in any such certificate or other document, and accounting terms partly defined in this Agreement or in any such certificate or other document to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles. To the extent that the definitions of accounting terms in this Agreement or in any such certificate or other document are inconsistent with the meanings of such terms under generally accepted accounting principles, the definitions contained in this Agreement or in any such certificate or other document shall control.

(d) The words "hereof," "herein," "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement; Section and Exhibit references contained in this Agreement are references to Sections and Exhibits in or to this Agreement unless otherwise specified; and the term "including" shall mean "including without limitation."

(e) The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms and to the masculine as well as the feminine and neuter genders of such terms.

(f) Any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

ARTICLE II
ORGANIZATION

Section 2.01.  <u>Name</u>.  The trust established under this Agreement shall be referred to as "Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1" in which name the Owner Trustee and the Officers may conduct the activities contemplated hereby, including the making and executing of contracts and other instruments on behalf of the Trust and sue and be sued.

Section 2.02.  <u>Office</u>.  The principal office of the Trust shall be in care of the Owner Trustee, at its Corporate Trust Office.

Section 2.03.  <u>Purpose and Powers</u>.  The Trust shall have the power and authority to engage in any of the following activities:

(a) to issue one or more Classes of Notes from time to time pursuant to the Indenture and to issue the Class R Certificates pursuant to this Agreement and to sell, transfer and exchange such Notes and such Class R Certificates;

192708 SASCO 2006-RM1
Trust Agreement

5

CONFIDENTIAL

(b) with the proceeds of the sale of the Notes and the Class R Certificates, to pay the organizational, start-up and transactional expenses of the Trust and to pay the balance of the Net Proceeds from the Notes to the Depositor in consideration of the transfer to the Trust of the Primary Trust Assets;

(c) from time to time, to use amounts on deposit in the Funding Account to purchase Additional Loan Amounts from the Depositor, and, pursuant to the Indenture, to pledge such Additional Loan Amounts to the Indenture Trustee as security for the Trust's obligations under the Notes;

(d) to invest, or authorize one or more agents to invest, amounts in the Funding Account and other accounts

(e) to assign, grant, transfer, pledge, mortgage and convey the Trust Estate pursuant to the Indenture and to hold, manage and distribute to the Certificateholders pursuant to the terms of the Transfer and Servicing Agreement any portion of the Primary Trust Assets released from the lien of, and remitted to the Trust pursuant to, the Indenture;

(f) to enter into and perform its obligations under the Operative Agreements to which it is to be a party;

(g) to engage in those activities, including entering into agreements, that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(h) subject to compliance with the Operative Agreements, to engage in such other activities as may be required in connection with conservation of the Trust Estate and the making of distributions and payments to the Certificateholders and the Noteholders.

The Trust is hereby authorized to engage in the foregoing activities. The Trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement or the Operative Agreements.

Section 2.04. Appointment of the Owner Trustee. The Depositor hereby appoints the Bank to act as owner trustee (the "Owner Trustee") of the Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein with respect to accomplishing the purposes of the Trust.

The Owner Trustee is hereby authorized to execute this Agreement, the Indenture, the Administration Agreement, the Transfer and Servicing Agreement and any other Operative Agreement to which it or the Trust is or may be a party. The Owner Trustee is hereby authorized to take all actions required or permitted to be taken by it in accordance with the terms of this Agreement.

Section 2.05. Initial Capital Contribution; Declaration of Trust.

(a) The Depositor hereby sells, assigns, transfers, conveys and sets over to the Trust, as of the date hereof, the sum of $1. The Owner Trustee hereby acknowledges receipt in trust from

192708 SASCO 2006-RM1
Trust Agreement

6

CONFIDENTIAL

the Depositor, as of the Closing Date, of the foregoing contribution which shall constitute the initial corpus of the Trust Estate and shall be deposited in the Certificate Distribution Account. The Depositor shall pay organizational expenses of the Trust as they may arise or shall, upon the request of the Owner Trustee, promptly reimburse the Owner Trustee for any such expenses paid by the Owner Trustee.

(b) The Owner Trustee hereby declares that it will hold the Trust Estate in trust upon and subject to the conditions set forth herein for the use and benefit of the Certificateholders, subject to the obligations of the Trust under the Operative Agreements. It is the intention of the parties hereto that the Trust constitute a statutory trust under the Delaware Trust Statute and that this Agreement constitute the governing instrument of such statutory trust.  No later than the Closing Date, the Owner Trustee shall cause the filing of the Certificate of Trust with the Secretary of State. Except as otherwise provided in this Agreement, the rights of the Certificateholders will be those of beneficial owners of the Trust.

Section 2.06.  <u>Issuance of Initial Class R Certificates</u>.  Upon the formation of the Trust by the initial contribution by the Depositor pursuant to Section 2.05, the Owner Trustee will issue the Class R Certificates to the Initial Holder.

Section 2.07.  <u>Liability of the Holder of the Class R Certificates</u>.  Each Certificateholder shall be entitled to the same limitation of personal liability extended to stockholders of private corporations for profit organized under the General Corporation Law of Delaware.

Section 2.08.  <u>Situs of Trust</u>.  The Trust will be located and administered in the State of Delaware. All bank accounts maintained by the Owner Trustee on behalf of the Trust shall be located in the States of Delaware, New York or the jurisdiction where the Indenture Trustee maintains bank accounts with respect to collections on the Mortgage Loans. The only office of the Trust will be as described in Section 2.02 hereof. The Trust shall not have any employees; *provided, however*, that nothing herein shall restrict or prohibit the Owner Trustee from having employees within or without the State of Delaware. Payments will be received by the Trust only in Delaware or New York, or such other jurisdiction designated by the Depositor, and payments will be made by the Trust only from Delaware, New York, the jurisdiction in which the Indenture Trustee maintains the Certificate Distribution Account or such other jurisdiction designated by the Depositor.

Section 2.09.  <u>Title to Trust Property</u>.  Subject to the Indenture, title to all of the Trust Estate shall be vested at all times in the Trust as a separate legal entity until this Agreement terminates pursuant to Article VIII hereof; *provided, however*, that if the laws of any jurisdiction require that title to any part of the Trust Estate be vested in the trustee of the Trust, then title to that part of the Trust Estate shall be deemed to be vested in the Owner Trustee or any co-trustee or separate trustee, as the case may be, appointed pursuant to Article IX of this Agreement.

(b) The Certificateholders shall have a beneficial interest in the Trust only and shall have neither a beneficial interest in nor legal title to any part of the Trust Estate. No transfer by operation of law or otherwise of any interest of the Certificateholders shall operate to terminate this Agreement or the trusts created hereunder or entitle any transferee to an accounting or to the transfer to it of any part of the Trust Estate.

192708 SASCO 2006-RM1
Trust Agreement

7

CONFIDENTIAL

Section 2.10.  <u>Representations and Warranties of the Depositor</u>.  The Depositor hereby represents and warrants to the Owner Trustee and the Administrator as of the Closing Date, as follows:

(a) The Depositor is duly organized and validly existing as a corporation in good standing under the laws of the State of Delaware, with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted and had at all relevant times, and now has, power, authority and the legal right to acquire and own the Primary Trust Assets.

(b) The Depositor is duly qualified to do business as a foreign corporation in good standing and has obtained all necessary licenses and approvals in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c) The Depositor has the power and authority to execute and deliver any Operative Agreement to which it is a party and to carry out its terms; the Depositor has full power and authority to sell and assign the Primary Trust Assets to be sold and assigned to and deposited with the Trust and the Depositor has duly authorized such assignment and deposit to the Trust by all necessary corporate action; and the execution, delivery and performance of this Agreement or any other Operative Agreement to which it is a party has been duly authorized by the Depositor by all necessary corporate action and, assuming the due authorization, execution and delivery of each such agreement by the other parties thereto, each such agreement constitutes a valid and binding obligation of the Depositor, enforceable against the Depositor in accordance with its terms, except as enforcement thereof may be subject to or limited by bankruptcy, insolvency, moratorium, reorganization or other similar laws relating to or affecting creditors' rights generally and by general equitable principles.

(d) The consummation of the transactions contemplated by this Agreement and the fulfillment of the terms hereof and thereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the certificate of incorporation or by-laws of the Depositor, or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; nor result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument (other than pursuant to the Operative Agreements); nor violate any law or, to the best of the Depositor's knowledge, any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(e) There are no proceedings or investigations, pending or, to the best knowledge of the Depositor, threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (i) asserting the invalidity of this Agreement or any other Operative Agreement to which the Depositor is a party, (ii) seeking to prevent the consummation of any of the transactions contemplated by this Agreement or any other Operative Agreement to which the Depositor is a party or (iii) seeking any determination or ruling that might materially and adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of, this Agreement or any other Operative Agreement to which the Depositor is a party.

192708 SASCO 2006-RM1
Trust Agreement

8

CONFIDENTIAL

(f)  This Agreement is not required to be qualified under the Trust Indenture Act of 1939, as amended, and the Trust is not required to be registered as an "investment company" under the Investment Company Act of 1940, as amended.

(g)  The representations and warranties of the Depositor made pursuant to the Transfer and Servicing Agreement are true and correct.

Section 2.11.  Investment Company.  Neither the Depositor nor any holder of a Class R Certificate shall take any action which would cause the Trust to become an "investment company" which would be required to register under the Investment Company Act of 1940, as amended.

Section 2.12.  Designation of REMIC and Interests Therein.

(a)  For purposes of the REMIC provisions, the Trust shall comprise a REMIC.

(b)  The REMIC shall hold as its assets the Trust Estate.  The Notes shall represent ownership of the sole class of regular interests in the REMIC  and the Class R Certificate shall represent ownership of the sole class of residual interest in the REMIC.

Section 2.13.  Designation of Start-up Day.  The Closing Date is hereby designated as the "start-up day" of each REMIC within the meaning of Section 860G(a)(9) of the Code.

Section 2.14.  REMIC Notes Maturity Date.  Solely for purposes of satisfying Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the "latest possible maturity date" of the Regular Certificates is the Distribution Date in April 2044.

ARTICLE III
THE CLASS R CERTIFICATES AND TRANSFERS OF INTERESTS

Section 3.01.  The Class R Certificates.  The Class R Certificates shall initially be issued as a single Certificate in definitive, fully registered form and shall initially be registered in the name of the Initial Holder. The Class R Certificates shall be executed on behalf of the Trust by manual or facsimile signature of an Authorized Officer of the Owner Trustee and authenticated in the manner provided in Section 3.02. A Class R Certificate bearing the manual signatures of individuals who were, at the time when such signatures shall have been affixed, authorized to sign on behalf of the Trust, shall be validly issued and entitled to the benefit of this Agreement, notwithstanding that such individuals or any of them shall have ceased to be so authorized prior to the authentication and delivery of such Class R Certificate or did not hold such offices at the date of authentication and delivery of such Class R Certificate. A Person shall become a Certificateholder and shall be entitled to the rights and subject to the obligations of a Certificateholder hereunder upon such Person's acceptance of a Class R Certificate duly registered in such Person's name pursuant to Section 3.03.

Section 3.02.  Execution, Authentication and Delivery of Class R Certificates. Concurrently with the sale of the Primary Trust Assets to the Trust pursuant to the Transfer and Servicing Agreement, the Owner Trustee shall cause any Class R Certificate issued hereunder to be executed and authenticated on behalf of the Trust and authenticated and delivered to or upon

CONFIDENTIAL

the written order of the Depositor, signed by its chairman of the board, its president or any vice president, without further corporate action by the Depositor, in authorized denominations. No Class R Certificate shall entitle its Holder to any benefits under this Agreement or be valid for any purpose unless there shall appear on such Class R Certificate a certificate of authentication substantially in the form set forth in Exhibit A hereto, executed by the Owner Trustee or the Administrator, as the Owner Trustee's authenticating agent, by manual signature; such authentication shall constitute conclusive evidence that such Class R Certificate shall have been duly authenticated and delivered hereunder. All Class R Certificates shall be dated the date of their authentication.

Section 3.03.   Registration of and Limitations on Transfers and Exchanges of Class R Certificates.

(a)  The Certificate Registrar shall keep or cause to be kept, at the office or agency maintained pursuant to Section 3.08, a Certificate Register in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Class R Certificates and of transfers and exchanges of Class R Certificates as herein provided; *provided, however*, that no Class R Certificates shall be issued in any such transfer and exchange representing less than a 25% Percentage Interest in such Certificates. The Administrator shall be the initial Certificate Registrar. If the Certificate Registrar resigns or is removed, the Owner Trustee, with the consent of the Depositor, shall appoint a successor Certificate Registrar.

Subject to satisfaction of the conditions set forth below, upon surrender for registration of transfer of any Class R Certificate at the office or agency maintained pursuant to Section 3.08, the Owner Trustee shall execute, authenticate and deliver (or cause the Administrator as its authenticating agent to authenticate and deliver), in the name of the designated transferee or transferees, one or more new Class R Certificates evidencing in aggregate the Percentage Interest of the Class R Certificates so surrendered and dated the date of authentication by the Owner Trustee or the Certificate Registrar. At the option of the Holder, Class R Certificates may be exchanged for other Class R Certificates evidencing in aggregate the Percentage Interest of the Class R Certificates to be surrendered in such exchange at the office or agency maintained pursuant to Section 3.08.

Every Class R Certificate presented or surrendered for registration of transfer or exchange shall be accompanied by a written instrument of transfer in form satisfactory to the Owner Trustee and the Certificate Registrar duly executed by the Holder or such Holder's attorney duly authorized in writing. Each Class R Certificate surrendered for registration of transfer or exchange shall be cancelled and subsequently disposed of by the Certificate Registrar in accordance with its customary practice.

No service charge shall be made for any registration of transfer or exchange of Class R Certificates, but the Owner Trustee or the Certificate Registrar may require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Class R Certificates or any other expense arising as a result of any registration of transfer or exchange.

192708 SASCO 2006-RM1
Trust Agreement

10

CONFIDENTIAL

Except for the initial issuance of the Class R Certificates on the Closing Date, no Person shall become a Certificateholder until it shall establish its non-foreign status by submitting to the Certificate Paying Agent an IRS Form W-9 and the Certificate of Non-Foreign Status set forth in Exhibit F hereto.

(b) No transfer of a Class R Certificate shall be made unless such transfer is exempt from the registration requirements of the Securities Act and any applicable state securities laws or is made in accordance with said Act and laws. Except in the case of the initial transfer of the Class R Certificates on the Closing Date, in the event of any such transfer, the Certificate Registrar or the Depositor shall prior to such transfer require the transferee to execute (i) an investment letter (in the form attached hereto as Exhibit D) certifying to the Trust, the Owner Trustee, the Administrator, the Certificate Registrar and the Depositor that such transferee is a "qualified institutional buyer" under Rule 144A under the Securities Act and (ii) the Certificate of Non-Foreign Status (in the form attached hereto as Exhibit F) which certificate shall not be an expense of the Trust, the Owner Trustee, the Administrator, the Certificate Registrar or the Depositor. The Holder of a Class R Certificate desiring to effect such transfer shall, and does hereby agree to, indemnify the Trust, the Owner Trustee, the Administrator, the Certificate Registrar and the Depositor against any and all liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

Each Person that has or that acquires any Ownership Interest in any Class R Certificate shall be deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound by the following provisions and to have irrevocably appointed the Certificate Registrar or its designee as its attorney-in-fact to negotiate the terms of any mandatory sale under clause (v) below and to execute all instruments of transfer and to do all other things necessary in connection with any such sale, and the rights of each Person acquiring any Ownership Interest in the Class R Certificates are expressly subject to the following provisions:

(i)      Each Person holding or acquiring any Ownership Interest in a Class R Certificate shall be a Permitted Transferee and shall promptly notify the Certificate Registrar of any change or impending change in its status as a Permitted Transferee.

(ii)      No Person shall acquire an Ownership Interest in a Class R Certificate unless such Ownership Interest is a *pro rata* undivided interest.

(iii)      No Ownership Interest in a Class R Certificate may be transferred without the express written consent of the Depositor and the Certificate Registrar.  In connection with any proposed transfer of any Ownership Interest in a Class R Certificate, the Depositor and the Certificate Registrar shall as a condition to such consent, require delivery to it, in form and substance satisfactory to it, of each of the following:

A.  an affidavit in the form of Exhibit E-1 hereto from the proposed transferor, and an affidavit in the form of Exhibit E-2 hereto from the proposed transferee to the effect that such transferee is a Permitted Transferee and that it is not acquiring its Ownership Interest in the Class R Certificate that is (i) the subject of the proposed transfer as a nominee, trustee or agent for any Person who is not a Permitted Transferee and (ii) is not a Benefit Plan; and

192708 SASCO 2006-RM1
Trust Agreement

11

CONFIDENTIAL

B.  a covenant of the proposed transferee to the effect that the proposed transferee agrees to be bound by and to abide by the transfer restrictions applicable to the Class R Certificate.

(iv)    Any attempted or purported transfer of any Ownership Interest in a Class R Certificate in violation of the provisions of this Section 3.03 shall be absolutely null and void and shall vest no rights in the purported transferee.  If any purported transferee shall, in violation of the provisions of this Section 3.03, become a Holder of a Class R Certificate, then the prior Holder of such Class R Certificate that is a Permitted Transferee shall, upon discovery that the registration of transfer of such Class R Certificate was not in fact permitted by this Section 3.03, be restored to all rights as Holder thereof retroactive to the date of registration of transfer of such Class R Certificate.  The Owner Trustee and the Certificate Registrar shall be under no liability to any Person for any registration of transfer of the Class R Certificate that is in fact not permitted by this Section 3.03 or for making any distributions due on such Class R Certificate to the Holder thereof or taking any other action with respect to such Holder under the provisions of this Agreement so long as the Depositor and the Certificate Registrar received all affidavits and covenants with respect to such transfer provided for under this Section 3.03.  The Certificate Paying Agent, on behalf of the Trust, shall be entitled to recover from any Holder of a Class R Certificate that was in fact not a Permitted Transferee at the time such distributions were made all distributions made on such Class R Certificate.  Any such distributions so recovered by the Certificate Paying Agent shall be distributed and delivered by the Certificate Paying Agent to the prior Holder of such Residual Certificate that is a Permitted Transferee.

(v)    If any Person other than a Permitted Transferee acquires any Ownership Interest in a Class R Certificate in violation of the restrictions in this Section 3.03, then the Certificate Registrar shall have the right but not the obligation, without notice to the Holder of such Class R Certificate or any other Person having an Ownership Interest therein, to notify the underwriter to arrange for the sale of such Class R Certificate.  The proceeds of such sale, net of commissions (which may include commissions payable to the Certificate Registrar or its affiliates), expenses and taxes due, if any, will be remitted by the Certificate Paying Agent to the previous Holder of such Class R Certificate that is a Permitted Transferee, except that in the event that the  Certificate Paying Agent determines that the Holder of such Class R Certificate may be liable for any amount due under this Section 3.03 or any other provisions of this Agreement, the Certificate Paying Agent may withhold a corresponding amount from such remittance as security for such claim.  The terms and conditions of any sale under this clause (v) shall be determined in the sole discretion of the Certificate Registrar and the Certificate Paying Agent, and neither such Person shall be liable to any Person having an Ownership Interest in a Class R Certificate as a result of its exercise of such discretion.

(vi)    If any Person other than a Permitted Transferee acquires any Ownership Interest in a Class R Certificate in violation of the restrictions in this Section 3.03, then the Administrator will, upon receipt of written notice of such event, provide to the Internal Revenue Service, and to the persons specified in Section 860E(e)(3) of the Code,

CONFIDENTIAL

information needed to compute the tax imposed under Section 860E(e)(1) of the Code on transfers of residual interests to disqualified organizations.

Section 3.04.  Lost, Stolen, Mutilated or Destroyed Class R Certificates.  If (a) a mutilated Class R Certificate is surrendered to the Certificate Registrar, or (b) the Certificate Registrar receives evidence to its satisfaction that a Class R Certificate has been destroyed, lost or stolen, and there is delivered to the Certificate Registrar proof of ownership satisfactory to the Certificate Registrar, together with such security or indemnity as required by the Certificate Registrar and the Owner Trustee to save each of them harmless, then in the absence of notice to the Certificate Registrar or the Owner Trustee that such Class R Certificate has been acquired by a protected purchaser, the Owner Trustee shall execute on behalf of the Trust, and the Owner Trustee or the Certificate Registrar shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Class R Certificate, a new Class R Certificate of like tenor and Percentage Interest. In connection with the issuance of any new Class R Certificate under this Section 3.04, the Owner Trustee or the Certificate Registrar may require the payment of a sum sufficient to cover any expenses of the Owner Trustee or the Certificate Registrar (including any fees and expenses of counsel) and any tax or other governmental charge that may be imposed in connection therewith. Any duplicate Class R Certificate issued pursuant to this Section 3.04 shall constitute conclusive evidence of ownership in the Trust, as if originally issued, whether or not the lost, stolen or destroyed Class R Certificate shall be found at any time.

Section 3.05.  Persons Deemed Certificateholders.  Prior to due presentation of a Certificate for registration of transfer, the Owner Trustee, the Certificate Registrar or any Certificate Paying Agent may treat the Person in whose name any Class R Certificate is registered in the Certificate Register as the owner of such Class R Certificate for the purpose of receiving distributions pursuant to Section 4.02 and for all other purposes whatsoever, and none of the Trust, the Owner Trustee, the Certificate Registrar or any Certificate Paying Agent shall be bound by any notice to the contrary.

Section 3.06.  Access to List of Certificateholders' Names and Addresses.  The Certificate Registrar shall furnish or cause to be furnished to the Depositor, the Owner Trustee and any Certificateholder, within 15 days after receipt by the Certificate Registrar of a written request therefor from any such Person, a list, in such form as such Person may reasonably require, of the names and addresses of the Certificateholders as of the most recent Record Date. Each Holder, by receiving and holding a Class R Certificate, shall be deemed to have agreed not to hold any of the Trust, the Depositor, the Certificate Registrar, the Owner Trustee accountable or liable for damages by reason of the disclosure of its name and address, regardless of the source from which such information was derived.

Section 3.07.  [Reserved]

Section 3.08.  Maintenance of Office or Agency.  The Certificate Registrar on behalf of the Trust, shall maintain an office or offices or agency or agencies where Class R Certificates may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Owner Trustee in respect of the Class R Certificates and the Operative Agreements may be served.  The Certificate Registrar shall give the Owner Trustee prompt notice, in writing, of any such notice or demand. The Certificate Registrar initially designates the Corporate Trust

192708 SASCO 2006-RM1
Trust Agreement

13

CONFIDENTIAL

Office of the Administrator as its office for such purposes. The Certificate Registrar shall give prompt written notice to the Depositor, the Owner Trustee and the Certificateholders of any change in the location of the Certificate Register or any such office or agency.

Section 3.09.  Certificate Paying Agent.

(a)  The Owner Trustee may appoint, and hereby appoints the Administrator as Certificate Paying Agent under this Agreement. The Certificate Paying Agent shall make distributions to Certificateholders from the Certificate Distribution Account pursuant to Section 4.02 hereof and Section 6.05 of the Transfer and Servicing Agreement and, upon request, shall report the amounts of such distributions to the Owner Trustee. The Certificate Paying Agent shall have the revocable power to withdraw funds from the Certificate Distribution Account for the purpose of making the distributions referred to above. The Administrator hereby accepts such appointment and further agrees that it will be bound by the provisions of this Agreement and the Transfer and Servicing Agreement relating to the Certificate Paying Agent and shall:

(i)  hold all sums held by it for the payment of amounts due with respect to the Class R Certificates in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided;

(ii)  give the Owner Trustee notice of any default by the Trust of which a Responsible Officer of the Administrator has actual knowledge in the making of any payment required to be made with respect to the Class R Certificates;

(iii)  at any time during the continuance of any such default, upon the written request of the Owner Trustee forthwith pay to the Owner Trustee on behalf of the Trust all sums so held in Trust by such Certificate Paying Agent;

(iv)  immediately resign as Certificate Paying Agent and forthwith pay to the Owner Trustee on behalf of the Trust all sums held by the Certificate Paying Agent in trust for the payment of Class R Certificates if at any time it ceases to meet the standards under this Section 3.09 required to be met by the Certificate Paying Agent at the time of its appointment;

(v)  comply with all requirements of the Code with respect to the withholding from any payments made by it on any Class R Certificates of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; and

(vi)  not institute bankruptcy proceedings against the Issuer in connection with this Agreement.

(b)  In the event that the Administrator shall no longer be the Certificate Paying Agent hereunder, the Owner Trustee, with the consent of the Depositor, shall appoint a successor to act as Certificate Paying Agent (which shall be a bank or trust company). The Owner Trustee shall cause such successor Certificate Paying Agent or any additional Certificate Paying Agent appointed by the Owner Trustee to execute and deliver to the Owner Trustee an instrument in which such successor Certificate Paying Agent or additional Certificate Paying Agent shall agree

CONFIDENTIAL

with the Owner Trustee that as Certificate Paying Agent, such successor Certificate Paying Agent or additional Certificate Paying Agent will hold all sums, if any, held by it for payment in trust for the benefit of the Certificateholders entitled thereto until such sums shall be paid to such Certificateholders. The Certificate Paying Agent shall return all unclaimed funds to the Owner Trustee, and upon removal of a Certificate Paying Agent, such Certificate Paying Agent shall also return all funds in its possession to the Owner Trustee. The provisions of Article VI of the Indenture and Sections 5.03, 5.04, 6.01, 6.05, 6.06, 6.07, 6.08, 7.01 and 7.02 shall apply to the Administrator (not only in its capacity as Administrator, but also in its capacity as Certificate Registrar and Certificate Paying Agent) to the same extent and as though each of such parties had been named in each such Section for so long as the Administrator shall act as Certificate Registrar and Certificate Paying Agent and, to the extent applicable, to any other Certificate Registrar or Certificate Paying Agent appointed hereunder. Any reference in this Agreement to the Certificate Paying Agent shall include any co-paying agent unless the context requires otherwise. Notwithstanding anything herein to the contrary, the Administrator, the Certificate Registrar and the Certificate Paying Agent shall be the same entity as the Indenture Trustee under the Indenture and the Transfer and Servicing Agreement unless (i) the Indenture Trustee resigns or is removed as Indenture Trustee, or (ii) an Event of Default under the Indenture or the Transfer and Servicing Agreement has occurred and is continuing and the Indenture Trustee determines that a conflict of interest exists or will exist if the Indenture Trustee continues to act as Administrator, Certificate Registrar and Certificate Paying Agent. In such event, the Administrator, the Certificate Registrar and the Certificate Paying Agent shall resign and the Owner Trustee, with the consent of the Depositor, shall appoint a successor Administrator, Certificate Registrar and Certificate Paying Agent in accordance with the Administration Agreement and this Trust Agreement.

Section 3.10.  Initial Certificate Ownership.  Upon the formation of the Trust by the contribution by the Depositor pursuant to Section 2.05 and until the issuance of the Class R Certificate, the Depositor shall be the sole beneficiary of the Trust.

ARTICLE IV
APPLICATION OF TRUST ESTATES; CERTAIN DUTIES

Section 4.01.  Certificate Distribution Account.  All of the right, title and interest of the Trust in all funds on deposit from time to time in the Certificate Distribution Account and in all proceeds thereof shall be held for the benefit of the Certificateholders and such other persons entitled to distributions therefrom. Except as otherwise expressly provided herein or in the Transfer and Servicing Agreement, the Certificate Distribution Account shall be under the sole dominion and control of the Administrator on behalf of the Owner Trustee for the benefit of the Certificateholders.

The Certificate Distribution Account shall be subject to and established and maintained in accordance with the applicable provisions of the Transfer and Servicing Agreement and the Indenture, including, without limitation, the provisions of Section 6.05 of the Transfer and Servicing Agreement regarding distributions from the Certificate Distribution Account.

The Owner Trustee hereby directs the Administrator to establish and maintain the Certificate Distribution Account and make the distributions therefrom to the Persons entitled

192708 SASCO 2006-RM1
Trust Agreement

15

CONFIDENTIAL

thereto pursuant to Section 6.05 of the Transfer and Servicing Agreement. The Owner Trustee and the Administrator each agree that upon the (i) resignation or removal of the Indenture Trustee or (ii) occurrence and continuation of an Event of Default under the Indenture or the Transfer and Servicing Agreement and a determination by the Indenture Trustee that a conflict of interest exists or will exist if the Indenture Trustee continues to act as the Administrator, the Administrator shall resign and the Owner Trustee shall appoint a successor Administrator in accordance with the Administration Agreement.

Section 4.02.  Application of Trust Estate.

(a) On each Distribution Date, the Certificate Paying Agent to distribute to the Holders of the Class R Certificates, from amounts on deposit in the Certificate Distribution Account, the distributions as provided in Section 6.05 of the Transfer and Servicing Agreement with respect to such Distribution Date. All distributions of amounts due on or in respect of the Class R Certificates shall be made *pro rata* to the Certificateholders. The Owner Trustee hereby directs the Certificate Paying Agent to distribute on each Distribution Date to the Holder of the Class R Certificate amounts on deposit in the Certificate Distribution Account in accordance with Section 6.05 of the Transfer and Servicing Agreement and the Certificate Paying Agent hereby acknowledges such direction.

(b) All payments to be made under this Agreement by the Certificate Paying Agent shall be made only from the income and proceeds, including Net Proceeds from the Notes, of the Trust Estate and only to the extent that the Certificate Paying Agent has received such income or proceeds. None of the Administrator, the Certificate Paying Agent, the Indenture Trustee or the Bank shall be liable to the Certificateholders, for any amounts payable pursuant to this Section 4.02 except to the extent that non-payment is due to the Owner Trustee's acts or omissions amounting to willful misconduct or gross negligence.

(c) In the event that any withholding tax is imposed on the distributions (or allocations of income) to the Certificateholders, such tax shall reduce the amount otherwise distributable to the Certificateholders in accordance with this Section 4.02. The Certificate Paying Agent is hereby authorized and directed to retain or cause to be retained from amounts otherwise distributable to the Certificateholders sufficient funds for the payment of any tax that is legally owed by the Trust (but such authorization shall not prevent the Owner Trustee from contesting any such tax in appropriate proceedings, and withholding payment of such tax, if permitted by law, pending the outcome of such proceedings). The amount of any withholding tax imposed with respect to a Certificateholder shall be treated as cash distributed to such Certificateholder at the time it is withheld by the Certificate Paying Agent and remitted to the appropriate taxing authority. If there is a possibility that withholding tax is payable with respect to a distribution (such as a distribution to a non-U.S. Certificateholder), the Certificate Paying Agent shall withhold such amounts in accordance with this paragraph (c). In the event that the Certificateholder wishes to apply for a refund of any such withholding tax, the Owner Trustee shall reasonably cooperate with such Certificateholder in making such a claim so long as such Certificateholder agrees to reimburse the Owner Trustee for any out-of-pocket expenses incurred.

(d) Distributions to Certificateholders shall be subordinated to the creditors of the Trust, including, without limitation, the Noteholders.

192708 SASCO 2006-RM1
Trust Agreement

16

CONFIDENTIAL

Section 4.03.  Method of Payment.  Subject to Section 8.01(c), distributions required to be made to the Certificateholders on any Distribution Date as provided in Section 4.02 shall be made to the Certificateholders of record on the preceding Record Date either by wire transfer in immediately available funds if a Certificateholder has provided to the  Certificate Paying Agent wire instructions at least five business days prior to the applicable Payment Date or by check mailed to the address of that Certificateholder as it appears on the books of the Certificate Registrar if that Certificateholder has not provided wire instructions; provided that the final distribution in respect of any Certificate will be made only upon presentation and surrender of such certificated debenture at the applicable Corporate Trust Office of the Administrator.

Section 4.04.  Tax Returns.For federal income tax purposes, the REMIC created hereunder shall have a calendar year taxable year and shall maintain its books on the accrual method of accounting.

(b) The Administrator shall prepare or cause to be prepared and shall file or cause to be filed with the Internal Revenue Service and applicable state or local tax authorities income tax information returns for each taxable year with respect to the REMIC containing such information at the times and in the manner as may be required by the Code or state or local tax laws, regulations, or rules, and shall furnish or cause to be furnished to the REMIC and the Certificateholders the schedules, statements or information at such times and in such manner as may be required thereby.  Within thirty (30) days of the Closing Date, the Administrator shall furnish or cause to be furnished to the Internal Revenue Service, on Form 8811 or as otherwise required by the Code, the name, title, address and telephone number of the person that Holders of the Securities may contact for tax information relating thereto, together with such additional information at the time or times and in the manner required by the Code.  Such federal, state, or local income tax or information returns shall be signed by the Administrator, or such other Person as may be required to sign such returns by the Code or state or local tax laws, regulations, or rules.

(c) In the first federal income tax return of the REMIC for its short taxable year ending December 31, 2006, REMIC status shall be elected for such taxable year and all succeeding taxable years.

(d) The Administrator shall maintain or cause to be maintained such records relating to the REMIC, including but not limited to the income, expenses, assets and liabilities of the Trust, and the fair market value and adjusted basis of the Trust Estate and assets determined at such intervals as may be required by the Code, as may be necessary to prepare the foregoing returns, schedules, statements or information.

(e) If any tax is imposed on "prohibited transactions" (as defined in Section 860F(a)(2) of the Code) of the REMIC created hereunder, on any contribution to the REMIC created hereunder after the Closing Date pursuant to Section 860G(d) of the Code, or any other tax is imposed, if not paid as otherwise provided for herein, the tax shall be paid by (i) the Administrator, if any such other tax arises out of or results from gross negligence of the Administrator in the performance of any of its obligations under this Agreement, (ii) the Depositor, in the case of any such minimum tax, if such tax arises out of or results from a breach by the Depositor of any of its obligations under this Agreement, or (iii) in all other cases, or if

CONFIDENTIAL

the Administrator or the Depositor fails to honor its obligations under the preceding clauses (i) or (ii), any such tax will be paid with amounts otherwise to be distributed to the Class R Certificateholders pursuant to Section 6.05 of the Transfer and Servicing Agreement.

Section 4.05. <u>REMIC Related Covenants</u>. For as long as the Trust shall exist, the Depositor, the Owner Trustee and the Administrator, as applicable, in connection with any actions taken by any such Person on behalf of the Trust, shall act in accordance herewith for the purpose of continuing treatment of the REMIC as a REMIC and avoid the imposition of tax on the REMIC. In particular:

(vii)    The Trust shall not create, or permit the creation of, any "interests" in either REMIC within the meaning of Code Section 860D(a)(2) other than the interests described in Section 2.03 hereof.

(viii)    Except as otherwise provided in the Code, the Depositor shall not grant and the Trust shall not accept property unless (i) substantially all of the property held in the REMIC constitutes either "qualified mortgages" or "permitted investments" as defined in Code Sections 860G(a)(3) and (5), respectively, and (ii) no property shall be contributed to the REMIC after the start-up day unless such grant would not subject the Trust to the 100% tax on contributions to a REMIC after the start-up day of the REMIC imposed by Code Section 860G(d); provided, however, that nothing in this Section 4.05 shall be construed as prohibiting the Trust from acquiring Additional Amounts on any Additional Amounts Draw Date pursuant to the Transfer and Servicing Agreement.

(ix)    The Trust shall not accept on behalf of the REMIC any fee or other compensation for services and the Owner Trustee and the Administrator shall not knowingly accept on behalf of the Trust any income from assets other than those permitted to be held by the REMIC.

(x)    The Trust shall not sell or permit the sale of all or any portion of the Primary Trust Assets unless such sale is pursuant to a "qualified liquidation" as defined in Code Section 860F(a)(4)(A) of the REMIC; provided, however, that nothing in this Section 4.05 shall be construed as prohibiting the sale of any asset in the Funding Account to the extent such sale is required under the terms of the Transfer and Servicing Agreement.

(xi)    The Administrator shall maintain books with respect to the Trust Fund on a calendar year taxable year and on an accrual basis.

(xii)    For purposes of the REMIC Provisions, the Administrator shall treat the Funding Account as a qualified reserve fund within the meaning of Section 860G(a)(7)(B) of the Code and shall treat each asset held as part of the Funding Account as a qualified reserve asset within the meaning of section 860G(a)(7)(A).

The Trust shall not engage in a "prohibited transaction" (as defined in Code Section 860F(a)(2)), except that, with the prior written consent of the Depositor, the Trust may engage in the activities otherwise prohibited by the foregoing clauses (ii), (iii) and (iv), *provided* that the Depositor shall have delivered to the Owner Trustee, the Administrator and the Indenture Trustee

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

an Opinion of Counsel to the effect that such transaction will not result in the imposition of a tax on the REMIC and will not disqualify the REMIC from treatment as a REMIC; and *provided*, that such action will not adversely affect the rights of the Holders of the Securities and will not adversely impact the ratings of the Notes.

The Class R Certificateholder shall be the "tax matters person."

Section 4.06. <u>Segregation of Moneys; No Interest</u>. Moneys received by or on behalf of the Owner Trustee hereunder and deposited into the Certificate Distribution Account will be segregated except to the extent required otherwise by law or the provisions of the Transfer and Servicing Agreement. The Owner Trustee shall not be liable for payment of any interest in respect of such moneys.

ARTICLE V
AUTHORITY AND DUTIES OF THE OWNER TRUSTEE;
ACTION BY CERTIFICATEHOLDERS

Section 5.01. <u>General Authority</u>. The Owner Trustee is authorized and directed to execute and deliver the Notes, the Class R Certificates, and the other Operative Agreements to which the Trust is to be a party and each certificate or other document attached as an exhibit to or contemplated by the Operative Agreements to which the Trust is to be a party and any amendment or other agreement or instrument described herein, as evidenced conclusively by the Owner Trustee's execution thereof, and, on behalf of the Trust, to direct the Indenture Trustee to authenticate the Notes. In addition to the foregoing, the Owner Trustee is authorized, but shall not be obligated, to take all actions required of the Trust pursuant to the Operative Agreements.

Section 5.02. <u>General Duties</u>.

(a) It shall be the duty of the Owner Trustee to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Agreement and the other Operative Agreements to which the Trust is a party and to administer the Trust in the interest of the Certificateholders, subject to the Operative Agreements and in accordance with the provisions of this Agreement. Notwithstanding the foregoing, the Owner Trustee shall be deemed to have discharged its duties and responsibilities hereunder and under the Operative Agreements to the extent the Administrator or the Depositor has agreed in the Administration Agreement, the Transfer and Servicing Agreement or this Agreement, respectively, to perform any act or to discharge any duty of the Owner Trustee or the Trust hereunder or under any Operative Agreement, and the Owner Trustee shall not be held liable for the default or failure of the Administrator or the Depositor to carry out its obligations under the Administration Agreement, this Agreement or the Transfer and Servicing Agreement, respectively; and

(b) It shall be the duty of the Depositor under the Administration Agreement to obtain and preserve the Issuer's qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of the Indenture, the Notes, the Primary Trust Assets and each other instrument and agreement included in the Trust Estate. It shall be the duty of the Owner Trustee to cooperate with the Depositor with respect to such matters.

CONFIDENTIAL

Section 5.03.  Action Upon Instruction.

(a)  Subject to Article V and in accordance with the terms of the Operative Agreements, the Certificateholders may by written instruction direct the Owner Trustee in the management of the Trust, but only to the extent consistent with the limited purpose of the Trust. Such direction may be exercised at any time by written instruction of the Certificateholders pursuant to this Article V.

(b)  Notwithstanding the foregoing, the Owner Trustee shall not be required to take any action hereunder or under any Operative Agreement if the Owner Trustee shall have reasonably determined, or shall have been advised by counsel, that such action is likely to result in liability on the part of the Owner Trustee or is contrary to the terms hereof or of any Operative Agreement or is otherwise contrary to law.

(c)  Whenever the Owner Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Agreement or under any other Operative Agreement, or in the event that the Owner Trustee is unsure as to the application of any provision of this Agreement or any other Operative Agreement or any such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement permits any determination by the Owner Trustee or is silent or is incomplete as to the course of action that the Owner Trustee is required to take with respect to a particular set of facts, the Owner Trustee may promptly give notice (in such form as shall be appropriate under the circumstances) to the Certificateholders requesting instruction as to the course of action to be adopted, and to the extent the Owner Trustee acts in good faith in accordance with any written instruction of a majority of Percentage Interest of the Holders of the Class R Certificates, the Owner Trustee shall not be liable on account of such action to any Person. If the Owner Trustee shall not have received appropriate instruction within 10 days of such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances) it may, but shall be under no duty to, take or refrain from taking such action not inconsistent with this Agreement or any other Operative Agreement, as it shall deem to be in the best interests of the Certificateholders, and the Owner Trustee shall have no liability to any Person for such action or inaction.

Section 5.04.  No Duties Except as Specified under Specified Documents or in Instructions.  The Owner Trustee shall not have any duty or obligation to manage, make any payment with respect to, register, record, sell, dispose of, or otherwise deal with the Trust Estate, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Owner Trustee is a party, except as expressly provided (i) in accordance with the powers granted to and the authority conferred upon the Owner Trustee pursuant to this Agreement, and (ii) in accordance with any document or instruction delivered to the Owner Trustee pursuant to Section 5.03; and no implied duties or obligations shall be read into this Agreement or any Operative Agreement against the Owner Trustee. The Owner Trustee shall have no responsibility for filing any financing or continuation statement in any public office at any time or to otherwise perfect or maintain the perfection of any security interest or lien granted to the Trust or to prepare or file any Securities and Exchange Commission filing for the Trust or to record this Agreement or any Operative Agreement or to prepare or file any tax return for the Trust. The Owner Trustee nevertheless agrees that it will, at its own cost and expense,

192708 SASCO 2006-RM1
Trust Agreement

20

CONFIDENTIAL

promptly take all action as may be necessary to discharge any liens on any part of the Trust Estate that result from actions by, or claims against the Bank that are not related to the ownership or the administration of the Trust Estate.

Section 5.05.  Restrictions.

(a) Neither the Owner Trustee nor the Administrator shall knowingly take any action (x) that is inconsistent with the purposes of the Trust set forth in Section 2.03 or (y) that, to the Actual Knowledge of such Person, would result in the Trust becoming taxable as a corporation for federal income tax purposes. The Certificateholders shall not direct the Owner Trustee or the Administrator to take action that would violate the provisions of this Section 5.05 or Section 5.06.

(b) The Owner Trustee shall not, except as provided herein, convey or transfer any of the Trust's properties or assets, including those included in the Trust Estate, to any person unless it shall have received an Opinion of Counsel to the effect that (a) such transaction will not have any material adverse tax consequence to the Trust or any Certificateholder and (b) such conveyance or transfer shall not violate the provisions of the Indenture.

Section 5.06.  Prior Notice to Certificateholders with Respect to Certain Matters.  With respect to the following matters, the Owner Trustee shall not take action unless at least 30 days before the taking of such action, the Owner Trustee shall have notified the Certificateholders in writing of the proposed action and Holders holding in aggregate a 100% Percentage Interest in the Class R Certificates shall have notified the Owner Trustee in writing prior to the 30th day after such notice is given that such Certificateholders have consented to such action or provided alternative direction:

(a) The initiation of any claim or lawsuit by the Trust (except claims or lawsuits brought in connection with the collection of cash distributions due and owing under the Mortgage Loans) and the compromise of any action, claim or lawsuit brought by or against the Trust (except with respect to the aforementioned claims or lawsuits for collection of cash distributions due and owing under the Mortgage Loans);

(b) the election by the Trust to file an amendment to the Certificate of Trust (unless such amendment is required to be filed under the Delaware Trust Statute);

(c) the amendment of the Indenture by a supplemental indenture or of this Agreement or any other Operative Agreement in circumstances where the consent of any Noteholder is required;

(d) the amendment or other change of the Indenture by a supplemental indenture or of this Agreement or any other Operative Agreement in circumstances where the consent of any Noteholder is not required and such amendment materially adversely affects the interests of the Certificateholders;

(e) the amendment of the Transfer and Servicing Agreement in circumstances where the consent of any Securityholder is required;

192708 SASCO 2006-RM1
Trust Agreement

21

CONFIDENTIAL

(f)  the amendment, change or modification of the Administration Agreement, except to cure any ambiguity or to amend or supplement any provision in a manner or add any provision that would not materially and adversely affect the interests of the Certificateholders;

(g)  the appointment pursuant to the Indenture of a successor Note Registrar, Paying Agent or Indenture Trustee or pursuant to this Agreement of a successor Certificate Registrar or Certificate Paying Agent or the consent to the assignment by the Note Registrar, Paying Agent, Indenture Trustee, Certificate Registrar or Certificate Paying Agent of its obligations under the Indenture or this Agreement, as applicable;

(h)  the consent to the calling or waiver of any default of any Operative Agreement;

(i)  the consent to the assignment by the Indenture Trustee of its obligations under any Operative Agreement;

(j)  except as provided in Article VIII hereof, dissolve, terminate or liquidate the Trust in whole or in part;

(k)  the merger, conversion or consolidation of the Trust with or into any other entity, or conveyance or transfer of all or substantially all of the Trust's assets to any other entity;

(l)  the incurrence, assumption or guaranty by the Trust of any indebtedness other than as set forth in this Agreement;

(m)  the taking of any action which conflicts with any Operative Agreement or would make it impossible to carry on the ordinary business of the Trust or change the Trust's purpose and powers set forth in this Agreement;

(n)  the confession of a judgment against the Trust;

(o)  the possession of the Trust assets, or assignment of the Trust's right to property, for other than a Trust purpose; or

(p)  the lending of funds by the Trust to any entity.

In addition, the Trust shall not commingle its assets with those of any other entity. The Trust shall maintain its financial and accounting books and records separate from those of any other entity. Except as expressly set forth herein, the Trust shall pay its indebtedness, operating expenses and liabilities from its own funds, and the Trust shall neither incur any indebtedness nor pay the indebtedness, operating expenses and liabilities of any other entity. Except as expressly set forth herein, the Trust shall not engage in any dissolution, liquidation, consolidation, merger or sale of assets. The Trust shall maintain appropriate minutes or other records of all appropriate actions and shall maintain its office separate from the offices of the Depositor or any of its Affiliates. The Trust shall not engage in any business activity in which it is not currently engaged other than as contemplated by the Operative Agreements and related documentation. The Trust shall not form, or cause to be formed, any subsidiaries and shall not own or acquire any asset other than as contemplated by the Operative Agreements and related documentation. Other than as contemplated by the Operative Agreements and related

192708 SASCO 2006-RM1
Trust Agreement

22

CONFIDENTIAL

documentation, the Trust shall not follow the directions or instructions of the Depositor. The Trust shall conduct its own business in its own name. The Trust shall observe all formalities required under the Delaware Trust Statute. The Trust shall not hold out its credit as being available to satisfy the obligations of any other person or entity. The Trust shall not acquire the obligations or securities of its Affiliates or the Seller. Other than as contemplated by the Operative Agreements and related documentation, the Trust shall not pledge its assets for the benefit of any other person or entity. The Trust shall correct any known misunderstanding regarding its separate identity. The Trust shall not identify itself as a division of any other person or entity.  Except as required or specifically provided in the Trust Agreement, the Trust will conduct business with the Certificateholders or any Affiliate thereof on an arm's-length basis.

For accounting purposes, the Trust shall be treated as an entity separate and distinct from any Certificateholder. The pricing and other material terms of all transactions and agreements to which the Trust is a party shall be intrinsically fair to all parties thereto. This Agreement is and shall be the only agreement among the parties thereto with respect to the creation, operation and termination of the Trust.

The Owner Trustee shall not have the power, except upon the written direction of the 100% Percentage Interest of Holders of Class R Certificates, and to the extent otherwise consistent with the Operative Agreements, to (i) remove or replace the Indenture Trustee, or (ii) institute a bankruptcy against the Trust. So long as the Indenture remains in effect, to the extent permitted by applicable law, no Certificateholder shall have the power to commence, and shall not commence, any bankruptcy with respect to the Trust or direct the Owner Trustee to commence any bankruptcy with respect to the Trust.

Section 5.07.  <u>Action by Certificateholders with Respect to Certain Matters</u>.

(a)  The Owner Trustee shall not have the power, except upon the written direction of 100% Percentage Interest of Holders of the Class R Certificates, to (i) remove the Administrator under the Administration Agreement pursuant to Section 9 thereof, (ii) appoint a successor Administrator pursuant to Section 9 of the Administration Agreement, or (iii) except as expressly provided in the Indenture, to sell the Mortgage Loans after the termination of the Indenture. The Owner Trustee shall take the actions referred to in the preceding sentence only upon written instructions signed and authorized by 100% Percentage Interest of the Holders of Class R Certificates.

(b)  Upon the written request of any Certificateholder (a "Proposer"), the Owner Trustee shall distribute promptly to all Certificateholders any request for action or consent of Certificateholders submitted by such Proposer, with a copy to the Administrator. The Owner Trustee shall provide a reasonable method for collecting responses to such request and shall tabulate and report the results thereof to the Certificateholders and the Administrator. The Owner Trustee shall have no responsibility or duty to determine if any such proposed action or consent is permitted under the terms of this Agreement or applicable law. The Proposer shall pay all reasonable expenses incurred by the Owner Trustee under this Section 5.07, including the fees and expenses of its counsel.

192708 SASCO 2006-RM1
Trust Agreement

23

CONFIDENTIAL

Section 5.08.  Action by Certificateholders with Respect to Bankruptcy.  The Owner Trustee shall not have the power to commence or consent to a bankruptcy relating to the Trust without the unanimous prior approval of the Certificateholders and the delivery to the Owner Trustee by each such Certificateholder of a certificate certifying that such Certificateholder reasonably believes that the Trust is insolvent. This paragraph shall survive for one year and one day following termination of this Agreement. So long as the Indenture remains in effect, no Certificateholder shall have the power to take, and shall not take, any bankruptcy with respect to the Trust or direct the Owner Trustee to take such action.

Section 5.09.  Restrictions on Certificateholders' Power.  The Certificateholders shall not direct the Owner Trustee to take or to refrain from taking any action if such action or inaction would be contrary to any obligation of the Trust or the Owner Trustee under this Agreement or any of the Operative Agreements or would be contrary to Section 2.03 nor shall the Owner Trustee be obligated to follow any such direction, if given.

Section 5.10.  Majority Control.  Except as expressly provided herein, any action that may be taken by the Certificateholders under this Agreement may be taken by the Holders of Class R Certificates evidencing not less than a majority of the outstanding Percentage Interests of the Class R Certificates. Except as expressly provided herein, any written notice of the Certificateholders delivered pursuant to this Agreement shall be effective if signed by Holders of Class R Certificates evidencing not less than a majority of the outstanding Percentage Interests of the Class R Certificates at the time of the delivery of such notice.

ARTICLE VI
CONCERNING THE OWNER TRUSTEE

Section 6.01.  Acceptance of Trusts and Duties.  The Owner Trustee accepts the trusts hereby created and agrees to perform the same but only upon the terms of this Agreement. The Owner Trustee also agrees to disburse all moneys actually received by it constituting part of the Trust Estate upon the terms of this Agreement. The Bank shall not be answerable or accountable hereunder or under any other Operative Agreements under any circumstances, except (i) for its own willful misconduct or gross negligence, (ii) in the case of the inaccuracy of any representation or warranty contained in Section 6.04, (iii) for liabilities arising from the failure by the Bank to perform obligations expressly undertaken by it in the last sentence of Section 5.04, or (iv) for taxes, fees or other charges based on or measured by any fees, commissions or compensation received by the Bank in connection with any of the transactions contemplated by this Agreement, any other Operative Agreements or the Notes. In particular, but not by way of limitation:

(a) The Bank shall not be liable for any error of judgment, not constituting gross negligence, made in good faith by a Responsible Officer of the Owner Trustee;

(b) The Bank shall not be liable with respect to any action taken or omitted to be taken by the Owner Trustee in good faith in accordance with the instructions of the Certificateholders;

(c) No provision of this Agreement shall require the Bank to expend or risk funds or otherwise incur any financial liability in the performance of any of the Owner Trustee's rights or

192708 SASCO 2006-RM1
Trust Agreement

24

CONFIDENTIAL

powers hereunder or under any other Operative Agreements if the Bank shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(d) Under no circumstance shall the Bank be liable for indebtedness evidenced by or arising under any of the Operative Agreements, including the principal of and interest on the Notes;

(e) The Bank shall not be liable with respect to any action taken or omitted to be taken by the Depositor, the Administrator, the Indenture Trustee, any Officer, the Certificate Registrar or the Certificate Paying Agent under this Agreement or any other Operative Agreement or otherwise and the Bank shall not be obligated to perform or monitor the performance of any obligations or duties under this Agreement or the other Operative Agreements which are to be performed by the Certificate Paying Agent or the Certificate Registrar under this Agreement, the Administrator under this Agreement or the Administration Agreement, the Indenture Trustee under the Indenture or by any other Person under any of the Operative Agreements; and

(f) The Bank shall not be responsible for or in respect of the recitals herein, the validity or sufficiency of this Agreement or for the due execution hereof by the Depositor or for the form, character, genuineness, sufficiency, value or validity of any of the Trust Estate or for or in respect of the validity or sufficiency of the Operative Agreements, other than the certificate of authentication on the Class R Certificates, and the Bank shall in no event assume or incur any liability, duty or obligation to any Noteholder, the Depositor or to the Certificateholders, other than as expressly provided for herein.

Section 6.02.  Furnishing of Documents.  The Owner Trustee will furnish to the Administrator (for distribution to the Certificateholders), promptly upon receipt of a written request therefor, duplicates or copies of all reports, notices, requests, demands, certificates, financial statements and any other instruments furnished to the Owner Trustee hereunder or under the Operative Agreements unless the Administrator shall have already received the same.

Section 6.03.  Books and Records.  The Owner Trustee shall keep or cause to be kept proper books of record and account of all the transactions under this Agreement, including a record of the name and address of the Holders of the Class R Certificates. The Owner Trustee shall be deemed to have complied with this Section 6.03 by the appointment of the Administrator to perform the duties hereunder (including its duties as Certificate Registrar and Certificate Paying Agent).

Section 6.04.  Representations and Warranties.

(a) The Bank represents and warrants to the Depositor, for the benefit of the Certificateholders, as follows:

(i)      the Bank is a banking corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has the power and authority to execute, deliver and perform its obligations under this Agreement and, assuming due authorization, execution and delivery of this Agreement by the Depositor and Administrator, has the power and authority as Owner Trustee to execute and deliver the

192708 SASCO 2006-RM1
Trust Agreement

25

CONFIDENTIAL

Operative Agreements and to perform its obligations thereunder and, assuming the due authorization, execution and delivery hereof by the other parties hereto, this Agreement constitutes a legal, valid and binding obligation of the Bank or the Owner Trustee, as the case may be, enforceable against the Bank or the Owner Trustee, as the case may be, in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought;

(ii)    to the Bank's Actual Knowledge, no one authorized to act on its behalf has offered any interest in and to the Trust for sale to, or solicited any offer to acquire any of the same from, anyone;

(iii)    the execution, delivery and performance by the Bank, either in its individual capacity or as Owner Trustee, as the case may be, of the Operative Agreements will not result in any violation of, or be in any conflict with, or constitute a default under any of the provisions of any indenture, mortgage, chattel mortgage, deed of trust, conditional sales contract, lease, note or bond purchase agreement, license, judgment, order or other agreement to which the Bank is a party or by which it or any of its properties is bound;

(iv)    the execution and delivery by the Bank of this Agreement, and the performance of its duties as Owner Trustee hereunder, do not require the consent or approval of, the giving of notice to, or the registration with, or the taking of any other action with respect to, any governmental authority or agency of the State of Delaware (except as may be required by the Delaware Trust Statute); and

(v)    there are no pending or, to the best of its knowledge, threatened actions or proceedings against the Bank before any court, administrative agency or tribunal which, if determined adversely to it, would materially and adversely affect its ability, either in its individual capacity or as Owner Trustee, as the case may be, to perform its obligations under this Agreement or the Operative Agreements.

(b) Citibank, N.A., as Administrator, hereby represents and warrants to the Depositor, for the benefit of the Certificateholders, that:

(i)    it is a national banking association duly organized and validly existing in good standing under the laws of the United States, and has the power and authority to execute, deliver and perform its obligations under this Agreement and, assuming the due authorization, execution and delivery hereof by the other parties hereto, this Agreement constitutes a legal, valid and binding obligation of the Administrator, enforceable against the Administrator in accordance with its terms, except that (a) the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses and to the discretion of the court before which any proceeding therefor may be brought;

192708 SASCO 2006-RM1
Trust Agreement

26

CONFIDENTIAL

(ii)    it has taken all action necessary to authorize the execution and delivery by it of this Agreement, and this Agreement will be executed and delivered by one of its officers who is duly authorized to execute and deliver this Agreement on its behalf; and

(iii)    neither the execution nor the delivery by it of this Agreement nor the consummation by it of the transactions contemplated hereby nor compliance by it with any of the terms or provisions hereof will contravene any federal, governmental rule or regulation governing the banking or trust powers of the Administrator or any judgment or order binding on it, or constitute any default under its charter documents or by-laws or any indenture, mortgage, contract, agreement or instrument to which it is a party or by which any of its properties may be bound.

Section 6.05.   Reliance; Advice of Counsel.

(a) Except as provided in Section 6.01, the Owner Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine and believed by it to be signed by the proper party or parties. The Owner Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate or partnership entity as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Owner Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president (or the general partner, in the case of a partnership) and by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Owner Trustee for any action taken or omitted to be taken by it in reliance thereon.

(b) In its exercise or administration of the trusts and powers hereunder, including its obligations under Section 5.02(b), and in the performance of its duties and obligations under this Agreement or the other Operative Agreements, the Owner Trustee may employ agents and attorneys and enter into agreements (including the Administration Agreement) with any of them, and the Owner Trustee shall not be answerable for the default or misconduct of any such agents or attorneys if such agents or attorneys shall have been selected by the Owner Trustee with reasonable care. If, and to the extent, the Depositor shall have failed to reimburse the Owner Trustee for all reasonable expenses incurred pursuant to this Section 6.05(b), as provided in Section 7.01, the Owner Trustee may seek reimbursement therefor from the Trust Estate.

(c) In the administration of the trusts and performance of its duties hereunder, the Owner Trustee may consult with counsel, accountants and other skilled Persons to be selected and employed by it, and the Owner Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the reasonable advice or opinion of any such counsel, accountants or other skilled Persons. If, and to the extent, the Depositor shall have failed to reimburse the Owner Trustee for all reasonable expenses incurred pursuant to this Section 6.05(c), as provided in Section 7.01, the Owner Trustee may seek reimbursement therefor from the Trust Estate.

CONFIDENTIAL

Section 6.06.  Not Acting in Individual Capacity.  Except as provided in this Article VI, in accepting the trusts hereby created the Owner Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Owner Trustee by reason of the transactions contemplated by the Operative Agreements shall look only to the Trust Estate for payment or satisfaction thereof.

Section 6.07.  Owner Trustee Not Liable for Class R Certificates or Mortgage Loans. The recitals contained herein and in the Class R Certificates (other than the signature and countersignature of the Owner Trustee on the Class R Certificates) shall be taken as the statements of the Depositor, and the Owner Trustee assumes no responsibility for the correctness thereof. The Owner Trustee makes no representations as to the validity or sufficiency of this Agreement, of any Operative Agreement or of the Class R Certificates (other than the signature and countersignature of the Owner Trustee on the Class R Certificates) or the Notes, or of any Mortgage Loans or related documents. The Owner Trustee shall at no time have any responsibility or liability for or with respect to the legality, validity and enforceability of any Mortgage Loans, or the perfection and priority of any security interest created by the Mortgage Loans or the maintenance of any such perfection and priority, or for or with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to Certificateholders under this Agreement or the Noteholders under the Indenture, including, without limitation: the existence, condition and ownership of the Mortgage Loans; the existence and enforceability of any insurance thereon; the existence and contents of the Mortgage Loans on any computer or other record thereof; the validity of the assignment of the Mortgage Loans to the Trust or of any intervening assignment; the completeness of the Mortgage Loans; the performance or enforcement of the Mortgage Loans; the compliance by the Depositor with any warranty or representation made under any Operative Agreements or in any related document or the accuracy of any such warranty or representation or any action of the Administrator or the Indenture Trustee taken in the name of the Owner Trustee.

Section 6.08.  Owner Trustee May Own Class R Certificates and Notes.  The Owner Trustee, the Administrator, the Certificate Paying Agent and the Certificate Registrar each in its individual or any other capacity may become the owner or pledgee of Class R Certificates or Notes and may deal with the Depositor, the Administrator and the Indenture Trustee in banking transactions with the same rights as it would have if it were not Owner Trustee, the Administrator, the Certificate Paying Agent or the Certificate Registrar, as the case may be.

Section 6.09.  Licenses.  The Depositor shall cause the Trust to use its commercially reasonable efforts to obtain and maintain the effectiveness of any licenses required in connection with this Agreement and the other Operative Agreements and the transactions contemplated hereby and thereby until such time as the Trust shall terminate in accordance with the terms hereof. It shall be the duty of the Owner Trustee to cooperate with the Depositor with respect to such matters.

Section 6.10.  Doing Business in Other Jurisdictions.  Notwithstanding anything contained herein to the contrary, neither the Bank nor the Owner Trustee shall be required to take any action in any jurisdiction other than in the State of Delaware if the taking of such action will (i) require the consent or approval or authorization or order of or the giving of notice to, or the registration with or the taking of any other action in respect of, any state or other governmental

CONFIDENTIAL

authority or agency of any jurisdiction other than the State of Delaware; (ii) result in any fee, tax or other governmental charge under the laws of any jurisdiction or any political subdivisions thereof in existence on the date hereof other than the State of Delaware becoming payable by the Bank; or (iii) subject the Bank to personal jurisdiction in any jurisdiction other than the State of Delaware for causes of action arising from acts unrelated to the consummation of the transactions by the Bank or the Owner Trustee, as the case may be, contemplated hereby.  The Owner Trustee shall be entitled to obtain advice of counsel (which advice shall be an expense of the Trust) to determine whether any action required to be taken pursuant to this Agreement results in the consequences described in clauses (i), (ii) and (iii) of the preceding sentence.  In the event that such counsel advises the Owner Trustee that such action will result in such consequences, the Owner Trustee will appoint a co-trustee pursuant to Section 9.05 hereof to proceed with such action.

ARTICLE VII
INDEMNIFICATION AND COMPENSATION

Section 7.01.  Trust Expenses.  The Depositor shall pay the organizational expenses of the Trust as they may arise or shall, upon the request of the Owner Trustee, promptly reimburse the Owner Trustee for any such expenses paid by the Owner Trustee. The Owner Trustee shall be paid (or the Bank shall be reimbursed for) all reasonable expenses of the Owner Trustee hereunder, including, without limitation, the reasonable compensation, expenses and disbursements of such agents, representatives, experts and counsel as the Owner Trustee may employ in connection with the exercise and performance of its rights and duties under the Operative Agreements as provided in Section 7.02(b).

Section 7.02.  Indemnification.

(a)  The Bank shall be entitled to be indemnified and held harmless from and against any and all liabilities, obligations, indemnity obligations, losses (excluding loss of anticipated profits), damages, claims, actions, suits, judgments, out-of-pocket costs, expenses and disbursements (including legal and consultants' fees and expenses) and taxes of any kind and nature whatsoever (collectively, the "Liabilities") that may be imposed on, incurred by or asserted at any time against the Bank or the Owner Trustee in any way relating to or arising out of the Trust Estate, any of the properties included therein, the administration of the Trust Estate or any action or inaction of the Owner Trustee hereunder or under the Operative Agreements, except to the extent that such Liabilities arise out of or result from (i) the Owner Trustee's own willful misconduct, fraud or gross negligence, (ii) the inaccuracy of any of the Owner Trustee's representations or warranties contained in Section 6.04 of this Agreement, (iii) the Owner Trustee's failure to perform obligations expressly undertaken by it in this Agreement; (iv) taxes based on or measured by any fees, commissions or compensation received by the Owner Trustee for acting as such in connection with any of the transactions contemplated by this Agreement or any other Operative Agreement and (v) the Owner Trustee's failure to use due care to receive, manage and disburse moneys actually received by it in accordance with the terms hereof. The indemnities contained in this Section 7.02(a) shall survive the termination of this Agreement and the removal or resignation of the Owner Trustee hereunder.

CONFIDENTIAL

(b) Any fees, reimbursements and indemnities to the Bank or the Owner Trustee pursuant to this Section 7.02 and Sections 7.01 and Section 7.03 shall be payable: *first,* out of amounts on deposit in the Certificate Distribution Account prior to payments on the Class R Certificates; *second,* to the extent not paid pursuant to clause first within 60 days of first being incurred, by the Certificateholder; and *third,* to the extent not paid pursuant to clause first and second within 60 days of first being incurred, by Lehman Brothers Inc. If any amounts shall be on deposit in the Certificate Distribution Account subsequent to the payment of any reimbursement or indemnification amounts pursuant to clauses second or third of the preceding sentence, then reimbursement for such payment shall be payable out of amounts on deposit in the Certificate Distribution Account prior to payments on the Class R Certificates on any Payment Date first to Lehman Brothers Inc. and second to the Certificateholder who made payment pursuant to clause second of the preceding sentence, in each case to the extent of the payment made by it to the Owner Trustee pursuant to the preceding sentence..

Section 7.03.   Compensation.   The Bank shall receive as compensation for its services hereunder such fees as are set forth in the Fee Letter Agreement between the Bank and the Depositor attached hereto as Exhibit G.

Section 7.04.   Lien on Trust Estate.   The Bank shall have a lien on the Trust Estate for any compensation or indemnity due hereunder, such lien to be subject only to prior liens of the Indenture. The Bank shall not bring any proceedings to foreclose on such lien if and to the extent the Trust Estate is subject to the lien of the Indenture. Any amount paid to the Owner Trustee pursuant to this Article VII shall be deemed not to be part of the Trust Estate immediately after such payment.

ARTICLE VIII
TERMINATION OF AGREEMENT

Section 8.01.   Termination of Agreement.

(a) This Agreement (other than Article VII) shall terminate and the trusts created hereby shall dissolve and terminate and the Trust Estate shall, subject to the Indenture and Sections 4.01 and 7.04, be distributed to the Certificateholders, and this Agreement shall be of no further force or effect, upon the earlier of (i) the full payment of principal and interest due on all Classes of the Notes; and (ii) the sale or other final disposition by the Indenture Trustee or the Owner Trustee, as the case may be, of all the Trust Estate and the final distribution by the Indenture Trustee or the Owner Trustee, as the case may be, of all moneys or other property or proceeds of the Trust Estate in accordance with the terms of the Indenture, the Transfer and Servicing Agreement and Section 4.02. The bankruptcy, liquidation, dissolution, death or incapacity of any Certificateholder shall not operate to terminate this Agreement, nor entitle such Certificateholder's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Trust Estate, nor otherwise affect the rights, obligations and liabilities of the parties hereto.

(b) Except as provided in Section 8.01(a), neither the Depositor nor the Certificateholders shall be entitled to revoke or terminate the Trust established hereunder.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

(c) Notice of any termination of the Trust, specifying the Distribution Date upon which Certificateholders shall surrender their Class R Certificates to the Certificate Paying Agent for payment of the final distribution and cancellation, shall be given by the Certificate Paying Agent by letter to Certificateholders mailed within five Business Days of receipt of notice of the final payment on the Notes from the Indenture Trustee, stating (i) the Distribution Date upon or with respect to which final payment of the Class R Certificates shall be made upon presentation and surrender of the Class R Certificates at the office of the Certificate Paying Agent therein designated, (ii) the amount of any such final payment and (iii) that the Record Date otherwise applicable to such Distribution Date is not applicable, payments being made only upon presentation and surrender of the Class R Certificates at the Corporate Trust Office of the Certificate Registrar. The Certificate Paying Agent shall give such notice to the Owner Trustee and the Certificate Registrar at the time such notice is given to Certificateholders. Upon presentation and surrender of the Class R Certificates, the Certificate Paying Agent shall cause to be distributed to Certificateholders amounts distributable on such Distribution Date pursuant to Sections 6.05 and 6.09 of the Transfer and Servicing Agreement.

In the event that all of the Certificateholders shall not surrender their Class R Certificates for cancellation within six months after the date specified in the above-mentioned written notice, the Certificate Paying Agent shall give a second written notice to the remaining Certificateholders to surrender their Class R Certificates for cancellation and receive the final distribution with respect thereto. Subject to applicable laws with respect to escheat of funds, if within one year following the Distribution Date on which final payment of the Class R Certificates was to have been made pursuant to Section 6.05 of the Transfer and Servicing Agreement, all the Class R Certificates shall not have been surrendered for cancellation, the Certificate Paying Agent may take appropriate steps, or may appoint an agent to take appropriate steps, to contact the remaining Certificateholders concerning surrender of their Class R Certificates, and the cost thereof shall be paid out of the funds and other assets that shall remain subject to this Agreement. Any funds remaining in the Certificate Distribution Account after exhaustion of such remedies shall be distributed by the Certificate Paying Agent to the Holders of the Class R Certificates on a *pro rata* basis.

(d) Upon the winding up of the Trust and its termination (including the provision for the payment of creditors in accordance with Section 3808 of the Delaware Trust Statute), the Owner Trustee shall cause the Certificate of Trust to be cancelled by filing a certificate of cancellation with the Secretary of State in accordance with the provisions of Section 3810 of the Delaware Trust Statute.

Section 8.02.  Additional Termination Requirements.

(a) In the event that the Master Servicer exercises the option to purchase all of the property of the Trust in accordance with Section 10.02 of the Transfer and Servicing Agreement, the Trust shall be terminated in accordance with the following additional requirements, unless the Owner Trustee has received an Opinion of Counsel to the effect that the failure of the Trust to comply with the requirements of this Section 8.02 will not (i) result in the imposition of taxes on "prohibited transactions" of the Trust as defined in Section 860F of the Code, or (ii) cause the REMIC created hereunder to fail to qualify as a REMIC at any time that any Securities are outstanding:

CONFIDENTIAL

(A) The Trust shall sell or cause to be sold all of the assets of the Trust Estate for cash in accordance with Section 10.02 of the Transfer and Servicing Agreement;

(B) Within 90 days of such sale, the Indenture Trustee shall distribute the proceeds of such sale to the Securityholders in complete liquidation of the Trust Estate and the REMIC then in existence; and

(C) The Administrator shall attach a statement to the final Federal income tax return for the REMIC then in existence stating that pursuant to Treasury Regulation § 1.860F-1, the first day of the 90-day liquidation period for the REMIC was the date on which the Trust sold the assets of the Trust Estate.

(b) By its acceptance of the Class R Certificates, the Holders thereof hereby agree to the adoption of such a plan of complete liquidation if required under paragraph (a) above and to take such action in connection therewith as may be reasonably requested by the Owner Trustee or the Administrator.

ARTICLE IX
SUCCESSOR OWNER TRUSTEES AND ADDITIONAL OWNER TRUSTEES

Section 9.01.  Eligibility Requirements for Owner Trustee.  The Owner Trustee shall at all times be a corporation satisfying the provisions of Section 3807(a) of the Delaware Trust Statute; authorized to exercise corporate powers; having a combined capital and surplus of at least $50,000,000 and subject to supervision or examination by Federal or state authorities; and having (or having a parent which has) a short-term debt rating of at least "A-1" or the equivalent by, or which is otherwise acceptable to, each Rating Agency. If such corporation shall publish reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purpose of this Section, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Owner Trustee shall cease to be eligible in accordance with the provisions of this Section, the Owner Trustee shall resign immediately in the manner and with the effect specified in Section 9.02.

Section 9.02.  Resignation or Removal of Owner Trustee.  The Owner Trustee may at any time resign and be discharged from the trusts hereby created by giving 30 days' prior written notice thereof to the Depositor and the Indenture Trustee. Upon receiving such notice of resignation, the Depositor shall promptly appoint a successor Owner Trustee by written instrument, in duplicate, one copy of which instrument shall be delivered to the resigning Owner Trustee and one copy to the successor Owner Trustee. If no successor Owner Trustee shall have been so appointed and have accepted appointment within 30 days after the giving of such notice of resignation, the resigning Owner Trustee may petition any court of competent jurisdiction for the appointment of a successor Owner Trustee.

If at any time the Owner Trustee shall cease to be eligible in accordance with the provisions of Section 9.01 and shall fail to resign after written request therefor by the Depositor, or if at any time the Owner Trustee shall be legally unable to act, or shall be adjudged bankrupt or insolvent, or a receiver of the Owner Trustee or of its property shall be appointed, or any

192708 SASCO 2006-RM1
Trust Agreement

32

CONFIDENTIAL

public officer shall take charge or control of the Owner Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then the Depositor may remove the Owner Trustee. If the Depositor shall remove the Owner Trustee under the authority of the immediately preceding sentence, the Depositor shall promptly appoint a successor Owner Trustee by written instrument in duplicate, one copy of which instrument shall be delivered to the outgoing Owner Trustee so removed and one copy to the successor Owner Trustee and payment of all fees owed to the outgoing Owner Trustee.

Any resignation or removal of the Owner Trustee and appointment of a successor Owner Trustee pursuant to any of the provisions of this Section shall not become effective until acceptance of appointment by the successor Owner Trustee pursuant to Section 9.03 and payment of all fees and expenses owed to the outgoing Owner Trustee. The Depositor shall provide notice of such resignation or removal of the Owner Trustee to each Rating Agency.

Section 9.03. Successor Owner Trustee. Any successor Owner Trustee appointed pursuant to Section 9.02 shall execute, acknowledge and deliver to the Administrator and to its predecessor Owner Trustee an instrument accepting such appointment under this Agreement, and thereupon the resignation or removal of the predecessor Owner Trustee shall become effective and such successor Owner Trustee without any further act, deed or conveyance, shall become fully vested with all the rights, powers, duties, and obligations of its predecessor under this Agreement, with like effect as if originally named as Owner Trustee; *provided, however*, such successor Owner Trustee shall file an amendment to the Certificate of Trust as required by the Delaware Statutes Trust Act. The predecessor Owner Trustee shall upon payment of its fees and expenses deliver to the successor Owner Trustee all documents and statements and monies held by it under this Agreement; and the Depositor and the predecessor Owner Trustee shall execute and deliver such instruments and do such other things as may reasonably be required for fully and certainly vesting and confirming in the successor Owner Trustee all such rights, powers, duties, and obligations.

No successor Owner Trustee shall accept appointment as provided in this Section unless at the time of such acceptance such successor Owner Trustee shall be eligible pursuant to Section 9.01.

Upon acceptance of appointment by a successor Owner Trustee pursuant to this Section, the successor Owner Trustee shall mail notice of the successor of such Owner Trustee to all Certificateholders, the Indenture Trustee, the Noteholders and each Rating Agency. If the successor Owner Trustee fails to mail such notice within 10 days after acceptance of appointment by the Administrator, the Administrator shall cause such notice to be mailed at the expense of the successor Owner Trustee.

Section 9.04. Merger or Consolidation of Owner Trustee. Any Person into which the Owner Trustee may be merged or converted or with which it may be consolidated or any Person resulting from any merger, conversion or consolidation to which the Owner Trustee shall be a party, or any Person succeeding to all or substantially all of the corporate trust business of the Owner Trustee, shall be the successor of the Owner Trustee hereunder, *provided* such Person shall be eligible pursuant to Section 9.01, without the execution or filing of any instrument or any further act on the part of any of the parties hereto, anything herein to the contrary

192708 SASCO 2006-RM1
Trust Agreement

33

CONFIDENTIAL

notwithstanding; *provided, however*, such successor Owner Trustee shall file an amendment to the Certificate of Trust as required by the Delaware Statutes Trust Act.

Section 9.05.    Appointment of Co-Trustee or Separate Trustee.    Notwithstanding any other provisions of this Agreement, at any time, for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Estate or any Mortgage Loans may at the time be located, and for the purpose of performing certain duties and obligations of the Owner Trustee with respect to the Trust and the Certificates under the Transfer and Servicing Agreement, the Owner Trustee shall have the power and shall execute and deliver all instruments to appoint one or more Persons approved by the Owner Trustee to act as co-trustee, jointly with the Owner Trustee, or separate trustee or separate trustees, of all or any part of the Trust Estate, and to vest in such Person, in such capacity, such title to the Trust, or any part thereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Owner Trustee may consider necessary or desirable. No co-trustee or separate trustee under this Agreement shall be required to meet the terms of eligibility as a successor trustee pursuant to Section 9.01 and no notice of the appointment of any co-trustee or separate trustee shall be required pursuant to Section 9.03.

Each separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provision and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Owner Trustee shall be conferred upon and exercised or performed by the Owner Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Owner Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed, the Owner Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties, and obligations (including the holding of title to the Trust or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Owner Trustee;

(ii)    no trustee under this Agreement shall be personally liable by reason of any act or omission of any other trustee under this Agreement; and

(iii)    the Administrator and the Owner Trustee acting jointly may at any time accept the resignation of or remove any separate trustee or co-trustee.

Any notice, request or other writing given to the Owner Trustee shall be deemed to have been given to the separate trustees and co-trustees, as if given to each of them.  Every instrument appointing any separate trustee or co-trustee, other than this Agreement, shall refer to this Agreement and to the conditions of this Article. Each separate trustee and co-trustee, upon its acceptance of appointment, shall be vested with the estates specified in its instrument of appointment, either jointly with the Owner Trustee or separately, as may be provided therein, subject to all the provisions of this Agreement, specifically including every provision of this Agreement relating to the conduct of, affecting the liability of, or affording protection to, the

CONFIDENTIAL

Owner Trustee. Each such instrument shall be filed with the Owner Trustee and a copy thereof given to the Administrator.

Any separate trustee or co-trustee may at any time appoint the Owner Trustee as its Agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Agreement on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Owner Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

ARTICLE X
MISCELLANEOUS

Section 10.01.  <u>Supplements and Amendments</u>.  This Agreement may be amended by the Depositor, the Administrator and the Owner Trustee with the consent of the Certificateholders and with prior written notice to each Rating Agency, but without the consent of any of the Noteholders, the Certificateholders or the Indenture Trustee, to cure any ambiguity, to correct or supplement any provisions in this Agreement, to correct any error or for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions in this Agreement, to correct any error or of modifying in any manner the rights of the Noteholders or the Certificateholders or to add, delete, or amend any provisions to the extent necessary or desirable to comply with any requirements imposed by the Code and the REMIC Provisions; *provided, however*, that such action as evidenced by an Opinion of Counsel, shall not adversely affect in any material respect the interests of any Noteholder or Certificateholder or adversely affect the tax status of the REMIC created by this Agreement.  An amendment shall be deemed not to adversely affect in any material respect the interests of any Noteholder or Certificateholder and no opinion referred to in the preceding proviso shall be required to be delivered if the Person requesting the amendment obtains a letter from each Rating Agency stating that the amendment would not result in the downgrading or withdrawal of the respective ratings then assigned to each Class of Notes. Notwithstanding the preceding sentence, an opinion shall be required with respect to tax matters as set forth in this paragraph.

This Agreement may also be amended from time to time by the Depositor, the Administrator and the Owner Trustee, with the prior written consent of each Rating Agency and with the prior written consent of the Indenture Trustee, the Holders (as defined in the Indenture) of Notes evidencing more than $66^2/3\%$ of the Outstanding Amount of the Notes, and the unanimous consent of the Holders of the Certificates, for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Certificateholders; *provided, however*, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the timing of, collections of payments on the Collateral or distributions that shall be required to be made for the benefit of the Noteholders or the Certificateholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes and the principal balance of the Certificates or the Percentage Interests of Holders of Class R Certificates required to consent to any such amendment, in either case of clause (a) or (b) without the consent of the holders of all the outstanding Notes and Certificates.

192708 SASCO 2006-RM1
Trust Agreement

**CONFIDENTIAL**

Notwithstanding the foregoing, no provision of Sections 2.03 or 5.06 hereof may be amended in any manner unless (i) 100% of the Outstanding Amount of the Noteholders have consented in writing thereto, (ii) each Rating Agency has consented in writing thereto or (iii) the Notes have been paid in full and the Indenture has been discharged.

Promptly after the execution of any such amendment or consent, the Administrator shall furnish written notification of the substance of such amendment or consent to each Certificateholder, the Indenture Trustee and each Rating Agency.

It shall not be necessary for the consent of Certificateholders, the Noteholders or the Indenture Trustee pursuant to this Section 10.01 to approve the particular form of any proposed amendment or consent, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents (and any other consents of Certificateholders provided for in this Agreement or in any other Operative Agreement) and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable requirements as the Owner Trustee may prescribe.

Promptly after the execution of any amendment to the Certificate of Trust, the Owner Trustee shall cause the filing of such amendment with the Secretary of State.

Prior to the execution of any amendment to this Agreement or the Certificate of Trust, the Owner Trustee and the Administrator shall be entitled to receive and rely upon an Opinion of Counsel, at the expense of the Trust, stating that the execution of such amendment is authorized or permitted by this Agreement and that all conditions precedent have been satisfied. Neither the Owner Trustee nor the Administrator shall be obligated to enter into any such amendment which affects the Owner Trustee's or Administrator's own rights, duties or immunities under this Agreement or otherwise.

Section 10.02.  <u>No Legal Title to Trust Estate in Certificateholders</u>.  The Certificateholders shall not have legal title to any part of the Trust Estate and shall only be entitled to receive distributions with respect to their undivided beneficial interest therein pursuant to Section 4.02 hereof once all amounts then owing with respect to the Notes have been paid in accordance with the Indenture. No transfer, by operation of law of any right, title and interest of the Certificateholders in and to its undivided beneficial interest in the Trust Estate or hereunder shall operate to terminate this Agreement or the trusts hereunder or entitle any successor transferee to an accounting or to the transfer to it of legal title to any part of the Trust Estate.

Section 10.03.  <u>Pledge of Primary Trust Assets by Owner Trustee is Binding</u>.  The pledge of the Primary Trust Assets to the Indenture Trustee by the Trust made under the Indenture and pursuant to the terms of this Agreement shall bind the Certificateholders and shall be effective to transfer or convey the rights of the Trust and the Certificateholders in and to such Primary Trust Assets to the extent set forth in the Indenture. No purchaser or other grantee shall be required to inquire as to the authorization, necessity, expediency or regularity of such pledge or as to the application of any proceeds with respect thereto by the Owner Trustee.

Section 10.04.  <u>Limitations on Rights of Others</u>.  Nothing in this Agreement, whether express or implied (except for Section 7.04), shall be construed to give to any Person other than

192708 SASCO 2006-RM1
Trust Agreement

36

CONFIDENTIAL

the Owner Trustee and the Certificateholders any legal or equitable right in the Trust Estate or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

Section 10.05.  Notices.  Unless otherwise expressly specified or permitted by the terms hereof, all notices shall be in writing and delivered by hand, by courier or mailed by certified mail, postage prepaid, (a) if to the Owner Trustee or the Trust, addressed to it at c/o Wilmington Trust Company, 1100 North Market Street, Wilmington, Delaware  19890-1600, Attention: Corporate Trust Administration or to such other address as the Owner Trustee may have set forth in a written notice to the Certificateholders and the Depositor addressed to it at the address set forth for such Certificateholders in the Certificate Register; (b) if to the Administrator, Citibank, N.A., 388 Greenwich Street, 14th Floor, New York, New York 10013, Attention:  Agency and Trust SASCO 2006-RM1; and (c) if to the Depositor, Structured Asset Securities Corporation, 745 Seventh Avenue, 7th Floor, New York, New York 10019, Attention: Mortgage Backed Finance (SASCO 2006-RM1). Whenever any notice in writing is required to be given by the Owner Trustee or the Administrator, such notice shall be deemed given and such requirement satisfied if such notice is mailed by certified mail, postage prepaid, addressed as provided above.

Section 10.06.  Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

Section 10.07.  Separate Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.08.  Successors and Assigns.  All representations, warranties, covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Owner Trustee and its successors and assigns and the Depositor and each Certificateholder and its respective successors, all as herein provided. Any request, notice, direction, consent, waiver or other instrument or action by any Certificateholder shall bind the successors of such Certificateholder.

Section 10.09.  Headings.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

Section 10.10.  Governing Law.  THIS AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE WITHOUT REFERENCE TO THE CONFLICT OF LAWS PROVISIONS THEREOF, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

Section 10.11.  No Petition.  The Owner Trustee and the Administrator, by entering into this Agreement, the Certificateholders, by accepting the Class R Certificates, and the Indenture Trustee and each Noteholder, by accepting the benefits of this Agreement, hereby covenant and agree that they will not at any time institute against the Depositor or the Trust, or join in any institution against the Depositor or the Trust of, any bankruptcy under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Class R Certificates, the Notes, this Agreement or any of the other Operative Agreements.

Section 10.12.  Limitations on Liability.  The Depositor shall not be liable for the default or misconduct of the Administrator, the Owner Trustee, the Indenture Trustee, the Certificate Paying Agent or the Servicer under any of the Operative Agreements or otherwise and the Depositor shall have no obligation or liability to perform the obligations of the Trust under this Agreement or the Operative Agreements that are required to be performed by the Administrator under the Administration Agreement or the Indenture Trustee under the Indenture or the Servicer under the Servicing Agreement.

Section 10.13.  No Recourse.  Each Certificateholder by accepting a Class R Certificate acknowledges that such Certificate represents a beneficial interest in the Trust only and does not represent an interest in or an obligation of the Depositor, the Administrator, the Owner Trustee, any co-trustee, the Bank or any Affiliate thereof (other than the Trust) and no recourse may be had against such parties or their assets, except as may be expressly set forth or contemplated in this Agreement, the Class R Certificates or the other Operative Agreements.

ARTICLE XI
OFFICERS

Section 11.01.  Appointment of Officers.  The Trust may have one or more Officers who are hereby empowered to take and are responsible for performing all ministerial duties on behalf of the Trust pursuant to this Agreement and the other Operative Agreements, including, without limitation, the execution of the Officers' Certificate (as defined in the Indenture), the Issuer Order (as defined in the Indenture), the Issuer Request (as defined in the Indenture) and the annual compliance report required under Section 3.09 of the Indenture. Each of the Chairman of the Board, the Chief Executive Officer, the President, each Senior Vice President and each Vice President of the Depositor is hereby appointed as an Officer of the Trust. The Depositor shall promptly deliver to the Owner Trustee and the Indenture Trustee a list of its officers who shall become the Officers of the Trust pursuant to this Section 11.01.

Section 11.02.  Officers to Provide Information to the Owner Trustee.  It shall be the duty of each Officer to keep the Owner Trustee and the Administrator reasonably and promptly informed as to material events relating to the Trust, including, without limitation, all claims pending or threatened against the Trust, the purchase and sale of any material portion of the Trust Estate and the execution by such Officer on behalf of the Trust of any material agreements or instruments.

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
    Name:  Joseph Kelly
    Title:   Authorized Signatory


WILMINGTON TRUST COMPANY,
as Owner Trustee


By: _____
    Name:
    Title:


CITIBANK, N.A.,
not in its individual capacity but solely as
Administrator


By: _____
    Name:
    Title:


Acknowledged and Agreed, solely
for purposes of Section 7.02:

LEHMAN BROTHERS INC.


By: _____
    Name: Michael Hitzmann
    Title:  Senior Vice President


192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By:_____
     Name:  Joseph Kelly
     Title:   Authorized Signatory

WILMINGTON TRUST COMPANY,
as Owner Trustee

By:_____
     Name:
     Title:   Michele C. Harra
     Financial Services Officer

CITIBANK, N.A.,
not in its individual capacity but solely as
Administrator

By:_____
     Name:
     Title:

Acknowledged and Agreed, solely
for purposes of Section 7.02:

LEHMAN BROTHERS INC.

By: _____
     Name:  Michael Hitzmann
     Title:   Senior Vice President

192708 SASCO 2006-RM1
Trust Agreement

**CONFIDENTIAL**

IN WITNESS WHEREOF, the parties hereto have caused this Trust Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION, as Depositor

By: _____
    Name:  Joseph Kelly
    Title:   Authorized Signatory

WILMINGTON TRUST COMPANY,
as Owner Trustee

By: _____
    Name:
    Title:

CITIBANK, N.A.,
not in its individual capacity but solely as
Administrator

By: _____
    Name:  KAREN SCHLUTER
    Title:  Vice President

Acknowledged and Agreed, solely
for purposes of Section 7.02:

LEHMAN BROTHERS INC.

By: _____
    Name: Michael Hitzmann
    Title:  Senior Vice President

192708 S.\SCO 2006-RM1
Trust Agreement

CONFIDENTIAL

EXHIBIT A

[Form of Class R Certificate]
[Face]

THIS CERTIFICATE IS A REMIC RESIDUAL INTEREST CERTIFICATE. THIS CERTIFICATE DOES NOT EVIDENCE AN OBLIGATION OF, OR AN INTEREST IN, AND IS NOT GUARANTEED BY, THE DEPOSITOR, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE, THE BANK, THE ADMINISTRATOR OR ANY OF THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE TRUST AGREEMENT OR THE OTHER OPERATIVE AGREEMENTS.

THIS CERTIFICATE IS NOT ENTITLED TO DISTRIBUTIONS OF PRINCIPAL AND WILL NOT ACCRUE INTEREST. THE HOLDER OF THIS CERTIFICATE WILL BE ENTITLED ONLY TO CERTAIN LIMITED DISTRIBUTIONS AS PROVIDED IN THE TRANSFER AND SERVICING AGREEMENT.

THIS CERTIFICATE IS SUBORDINATE IN RIGHT OF PAYMENT AS DESCRIBED IN THE TRANSFER AND SERVICING AGREEMENT REFERRED TO HEREIN.

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE. THIS CERTIFICATE MAY BE DIRECTLY OR INDIRECTLY OFFERED OR SOLD OR OTHERWISE DISPOSED OF (INCLUDING PLEDGED) BY THE HOLDER HEREOF ONLY TO (A) A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE ACT, IN A TRANSACTION THAT IS REGISTERED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS OR THAT IS EXEMPT FROM THE REGISTRATION REQUIREMENTS OF THE ACT PURSUANT TO RULE 144A OR (B) AN "ACCREDITED INVESTOR" WITHIN THE MEANING OF SUBPARAGRAPH (A)(1), (2), (3) OR (7) OF RULE 501 UNDER THE ACT THAT IS ACQUIRING THE CERTIFICATE FOR ITS OWN ACCOUNT, OR FOR THE ACCOUNT OF SUCH AN INSTITUTIONAL "ACCREDITED INVESTOR," FOR INVESTMENT PURPOSES AND NOT WITH A VIEW TO, OR FOR OFFER OR SALE IN CONNECTION WITH, ANY DISTRIBUTION IN VIOLATION OF THE ACT. NO PERSON IS OBLIGATED TO REGISTER THIS CERTIFICATE UNDER THE ACT OR ANY STATE SECURITIES LAWS.

NEITHER THIS CERTIFICATE, NOR ANY BENEFICIAL INTEREST IN THIS CERTIFICATE, MAY BE TRANSFERRED, SOLD, PLEDGED, OR OTHERWISE DISPOSED OF UNLESS PRIOR TO SUCH DISPOSITION, THE PROPOSED TRANSFEREE DELIVERS TO THE INDENTURE TRUSTEE AN AFFIDAVIT STATING (A) THAT THE PROPOSED TRANSFEREE IS NOT A "DISQUALIFIED ORGANIZATION" WITHIN THE MEANING OF SECTION 860E(E)(5) OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE") AND IS NOT PURCHASING THE CERTIFICATE ON BEHALF OF A DISQUALIFIED ORGANIZATION AND (B) THAT NO PURPOSE OF SUCH TRANSFER IS TO AVOID OR IMPEDE THE ASSESSMENT OR COLLECTION OF TAX.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

THESE CERTIFICATES MAY NOT BE ACQUIRED BY A TRANSFEREE FOR, OR ON BEHALF OF, AN EMPLOYEE BENEFIT PLAN OR OTHER RETIREMENT ARRANGEMENT SUBJECT TO SECTION 406 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, OR SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR ANY SUBSTANTIALLY SIMILAR APPLICABLE LAW OR BY ANY ENTITY DEEMED TO HOLD THE PLAN ASSETS OF THE FOREGOING.  EACH INVESTOR IN THESE CERTIFICATES SHALL PROVIDE THE TRUSTEE WITH CERTIFICATION THAT IT IS IN COMPLIANCE WITH THE FOREGOING AND WILL REPRESENT, WARRANT AND COVENANT THAT IT WILL NOT SELL, PLEDGE OR OTHERWISE TRANSFER SUCH CERTIFICATES IN VIOLATION OF THE FOREGOING.

NO TRANSFER OF THIS CERTIFICATE SHALL BE MADE UNLESS THE CERTIFICATE REGISTRAR SHALL HAVE RECEIVED A CERTIFICATE OF NON-FOREIGN STATUS CERTIFYING AS TO THE TRANSFEREE'S STATUS AS A U.S. PERSON OR CORPORATION UNDER U.S. LAW AND THE OTHER OPINIONS AND CERTIFICATES SPECIFIED IN SECTION 3.03 OF THE AGREEMENT REFERRED TO HEREIN.

192708 SASCO 2006-RM1
Trust Agreement

A-2

CONFIDENTIAL

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1

CLASS R CERTIFICATE

Certificate No. _____                    Percentage Interest: ____%

First Distribution Date:  August 25, 2006

      Evidencing a fractional undivided beneficial equity interest in the Trust Estate, the property of which consists primarily of the Collateral in Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1 (the "Trust"), a Delaware statutory trust formed by Structured Asset Securities Corporation, a Delaware corporation, as depositor (the "Depositor"), pursuant to the Agreement referred to below.

      This certifies that [insert name of Holder] is the registered owner of the Percentage Interest referred to above.

      The Trust was created pursuant to a Trust Agreement dated as of August 1, 2006 (as amended and supplemented from time to time, the "Agreement" or "Trust Agreement"), among the Depositor, Wilmington Trust Company, as owner trustee (the "Owner Trustee," which term includes any successor entity under the Agreement) and Citibank, N.A., as administrator (the "Administrator"), a summary of certain of the pertinent provisions of which is set forth hereinafter.  This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound, as described in the Transfer and Servicing Agreement dated as of August 1, 2006 (as amended and supplemented from time to time, the "Transfer and Servicing Agreement"), by and among the Trust, the Depositor, Aurora Loan Services LLC, as master servicer (the "Master Servicer") and Citibank, N.A., as indenture trustee (the "Indenture Trustee") and as Administrator.  Distributions on this Certificate shall be made by Citibank, N.A., in its capacity as Certificate Paying Agent under the Agreement and as Administrator under the Transfer and Servicing Agreement.

      This Certificate is one of a duly authorized issue of Certificates (herein called the "Class R Certificates") issued under the Agreement to which reference is hereby made for a statement of the respective rights thereunder of the Depositor, the Owner Trustee and the Holders of the Class R Certificates and the terms upon which the Class R Certificates are executed and delivered.  The rights of the Holders of the Class R Certificates are subordinated to the rights of the Holders of the Notes, as set forth in the Indenture dated as of August 1, 2006 (the "Indenture"), between the Trust and the Indenture Trustee.  All capitalized terms used in this Class R Certificate and not defined herein shall have the meanings assigned to them in the Agreement, the Indenture and the Transfer and Servicing Agreement.

      There will be distributed on the 25th day of each month or, if such 25th day is not a Business Day, the next Business Day (each, a "Distribution Date"), commencing in August 2006, to the Person in whose name this Class R Certificate is registered at the close of business

192708 SASCO 2006-RM1
Trust Agreement

A-3

CONFIDENTIAL

on the last Business Day of the month preceding the month of such Distribution Date (the "Record Date"), such Certificateholder's Percentage Interest (as shown in the face of this Certificate) in the amount to be distributed to Certificateholders on such Distribution Date, all as described in the Transfer and Servicing Agreement.

The Certificateholder, by its acceptance of this Class R Certificate, agrees that it will look solely to the funds on deposit in the Certificate Distribution Account that have been released from the lien of the Indenture Trustee for payment hereunder and that none of the Owner Trustee, the Administrator or the Certificate Paying Agent in their individual capacities or the Depositor is personally liable to the Certificateholders for any amount payable under this Class R Certificate or the Agreement or, except as expressly provided in the Agreement, subject to any liability under the Agreement.

The Holder of this Class R Certificate acknowledges and agrees that its rights to receive distributions in respect of this Class R Certificate are subordinated to the rights of the Noteholders as described in the Indenture.

The Depositor and each Certificateholder, by acceptance of a Class R Certificate, agree to treat, and to take no action inconsistent with the treatment of, the Class R Certificates for federal, state and local income tax purposes as an equity interest in the Trust.

Each Certificateholder, by its acceptance of a Class R Certificate, covenants and agrees that such Certificateholder will not at any time institute against the Depositor or the Trust, or join in any institution against the Depositor or the Trust of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Class R Certificates, the Notes, the Agreement or any other of the Operative Agreements.

Distributions on this Class R Certificate will be made as provided in the Agreement by the Certificate Paying Agent by wire transfer in immediately available funds if a Certificateholder has provided to the Certificate Paying Agent wire instructions at least five business days prior to the applicable Payment Date or by check mailed to the address of that Certificateholder as it appears on the books of the Certificate Registrar if that Certificateholder has not provided wire instructions; provided that the final distribution in respect of any Certificate will be made only upon presentation and surrender of such certificated debenture at the applicable Corporate Trust Office of the Administrator.

Reference is hereby made to the further provisions of this Class R Certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon shall have been executed by an authorized officer of the Owner Trustee, or an authenticating agent by manual signature, this Class R Certificate shall not entitle the Holder hereof to any benefit under the Agreement or be valid for any purpose.

THIS CLASS R CERTIFICATE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS

192708 SASCO 2006-RM1
Trust Agreement

A-4

CONFIDENTIAL

CONFLICT OF LAWS PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

192708 SASCO 2006-RM1
Trust Agreement

A-5

CONFIDENTIAL

IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Trust and not in its individual capacity, has caused this Class R Certificate to be duly executed.

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE LOAN
TRUST 2006-RM1

By:   WILMINGTON TRUST COMPANY, not in
its individual capacity but solely as Owner Trustee

By:_____
     Authorized Signatory

Dated:  _____

## CERTIFICATE OF AUTHENTICATION

This is the Class R Certificate referred to in the within-mentioned Trust Agreement.

By:   WILMINGTON TRUST COMPANY, not in
its individual capacity but solely as Owner Trustee

By:_____
     Authorized Signatory

Dated:  _____

CONFIDENTIAL

## [REVERSE OF CLASS R CERTIFICATE]

The Class R Certificates do not represent an obligation of, or an interest in, the Depositor, the Indenture Trustee, the Owner Trustee, the Administrator, the Bank or any Affiliates of any of them and no recourse may be had against any such parties or their assets, except as expressly set forth or contemplated herein or in the Agreement or the other Operative Agreements. In addition, this Class R Certificate is not guaranteed by any governmental agency or instrumentality and is limited in right of payment to certain collections and recoveries with respect to the Mortgage Assets, all as more specifically set forth herein. A copy of the Agreement may be examined by any Certificateholder upon written request during normal business hours at the principal office of the Depositor and at such other places, if any, designated by the Depositor.

The Agreement permits the amendment thereof as specified below, provided that any amendment be accompanied by an Opinion of Counsel to the effect that such amendment complies with the provisions of the Agreement and would not cause the Trust to be subject to an entity level tax. If the purpose of the amendment is to correct any mistake, eliminate any inconsistency, cure any ambiguity or deal with any matter not covered, it shall not be necessary to obtain the consent of any Noteholder or the Indenture Trustee. If the purpose of the amendment is to add or eliminate or change any provision of the Agreement, other than as specified in the preceding sentence, the amendment shall require the unanimous consent of the Holders of the Class R Certificates, the consent of Noteholders evidencing more than 66 2/3% at the Outstanding Amount of the Notes and the Indenture Trustee; *provided, however*, that no such amendment shall (a) increase or reduce in any manner the amount of, or accelerate or delay the timing of, collections of payments on the Collateral or distributions that shall be required to be made for the benefit of the Noteholders or the Certificateholders or (b) reduce the aforesaid percentage of the Outstanding Amount of the Notes and the principal balance of the Certificates or the Percentage Interests of Holders of Class R Certificates required to consent to any such amendment.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Class R Certificate is registerable in the Certificate Register upon surrender of this Class R Certificate for registration of transfer at the offices or agencies of the Certificate Registrar maintained by the Trust in the State of New York, accompanied by a written instrument of transfer in form satisfactory to the Certificate Registrar duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Class R Certificates of authorized denominations evidencing the same aggregate interest in the Trust will be issued to the designated transferee. The initial Certificate Registrar appointed under the Agreement is the Administrator.

Except as provided in the Agreement, the Class R Certificates are issuable only in a minimum Percentage Interest of 25%. As provided in the Agreement and subject to certain limitations therein set forth, Class R Certificates are exchangeable for new Class R Certificates evidencing in the aggregate the Percentage Interest of the Class R Certificate surrendered in the exchange, as requested by the Holder surrendering the same. No service charge will be made for any such registration of transfer or exchange, but the Owner Trustee or the Certificate Registrar

192708 SASCO 2006-RM1
Trust Agreement

A-7

**CONFIDENTIAL**

may require payment of a sum sufficient to cover any tax or governmental charge payable in connection therewith or any expense incurred thereby.

The Owner Trustee, the Certificate Paying Agent, the Administrator and the Certificate Registrar and any agent of the Owner Trustee, the Certificate Paying Agent, the Administrator and the Certificate Registrar may treat the Person in whose name this Class R Certificate is registered as the owner hereof for all purposes, and none of the Owner Trustee, the Certificate Paying Agent, the Administrator, the Certificate Registrar or any such agent shall be affected by any notice to the contrary.

The obligations and responsibilities created by the Agreement and the Trust created thereby shall terminate upon the satisfaction and discharge of the Indenture pursuant to Section 4.01 thereof and the termination of the Transfer and Servicing Agreement.

CONFIDENTIAL

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto
PLEASE INSERT SOCIAL SECURITY OR
OTHER IDENTIFYING NUMBER OF ASSIGNEE

_____

(Please print or type name and address, including postal zip code, of assignee)
_____

the within Class R Certificate, and all rights thereunder, hereby irrevocably constituting and appointing

_____

to transfer said Class R Certificate on the books of the Certificate Registrar, with full power of substitution in the premises.

Dated:

_____ */

Signature Guaranteed:

_____ */


  */ NOTICE: The signature to this assignment must correspond with the name as it appears upon the face of the within Class R Certificate in every particular, without alteration, enlargement or any change whatever. Such signature must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or trust company.

192708 SASCO 2006-RM1
Trust Agreement

A-9

**CONFIDENTIAL**

DISTRIBUTION INSTRUCTIONS

The assignee should include the following for the information of the Certificate Paying Agent:

Distribution shall be made by wire transfer in immediately available funds _____ to for the account of _____, account number _____, or, if mailed by check, to _____.

Applicable statements should be mailed to _____.


_____
Signature of assignee or agent
(for authorization of wire transfer only)

192708 SASCO 2006-RM1
Trust Agreement

A-10

**CONFIDENTIAL**

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for the information of the Certificate Paying Agent:

Distribution shall be made by wire transfer in immediately available funds _____ to for the account of _____, account number _____, or, if mailed by check, to _____.

Applicable statements should be mailed to _____.

_____
Signature of assignee or agent
(for authorization of wire transfer only)

192708 SASCO 2006-RM1
Trust Agreement

A-11

**CONFIDENTIAL**

EXHIBIT B

[RESERVED]

**CONFIDENTIAL**

EXHIBIT C

FORM OF CERTIFICATE OF TRUST OF
STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1

THIS Certificate of Trust of Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1 (the "Trust"), is being duly executed and filed by the Undersigned, a Delaware banking corporation, as trustee, to form a statutory trust under the Delaware Trust Statute (12 DEL. CODE, Sections 3801 et seq.) (the "Act").

1.      NAME.  The name of the statutory trust formed hereby is "Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1."

2.      DELAWARE TRUSTEE.  The name and business address of the trustee of the Trust in the State of Delaware is Wilmington Trust Company, 1100 North Market Street, Wilmington, Delaware 19890-0001, Attention: Corporate Trust Administration.

3.      EFFECTIVE DATE.  This Certificate of Trust shall be effective on September ____, 2006.

IN WITNESS WHEREOF, the undersigned, being the owner trustee of the Trust, has executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

WILMINGTON TRUST COMPANY,
as Owner Trustee

By:_____
      Name:
      Title:

192708 SASCO 2006-RM1
Trust Agreement

C- 1

CONFIDENTIAL

EXHIBIT D

FORM OF RULE 144A INVESTMENT LETTER

_____

Date

CITIBANK, N.A.,
  as Certificate Registrar
111 Wall Street, 15th Floor,
New York, New York 10005
Attention:  15th Floor Window

     Re:     Structured Asset Securities Corporation Reverse Mortgage
              Loan Trust 2006-RM1, Residual Interest Certificate

Ladies and Gentlemen:

       In connection with our acquisition of the above-referenced securities (the "Securities"), we certify that (a) we understand that the Securities have not been registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we are a "qualified institutional buyer" as that term is defined in Rule 144A under the Act (a "QIB") and have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Securities and we are able to bear the economic risk of such an investment, (c) we understand that each proposed purchaser of the Securities is responsible for making its own independent review of such information as it deems relevant to its investment decision and we have had the opportunity to ask questions of and receive answers from the transferor concerning the purchase of the Securities and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Securities and we have been furnished with, and have had an opportunity to review, (i) a copy of the Trust Agreement dated as of August 1, 2006 (the "Trust Agreement"), among Structured Asset Securities Corporation, as depositor (the "Depositor"), Wilmington Trust Company, as owner trustee, and Citibank, N.A., as administrator, and (ii) a copy of the Transfer and Servicing Agreement dated as of August 1, 2006, among Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as issuer, Aurora Loan Services LLC, as master servicer, the Depositor and Citibank, N.A., as administrator and indenture trustee, (d) we are acquiring the Securities for investment for our own account and not with a view to any distribution of such Securities (but without prejudice to our right at all times to sell or otherwise dispose of the Securities in accordance with clause (g) below), (e) we understand that the certificates evidencing the Securities purchased by us will bear one or more legends in substantially the form set forth in Exhibit A of the Trust Agreement, (f) we have not, nor has anyone acting on our behalf, offered, transferred, pledged, sold or otherwise disposed of the Securities or any interest in the Securities, or solicited any offer to buy, transfer, pledge or otherwise dispose of the Securities or any interest in the Securities from any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action that would constitute a distribution of the Securities under the Act or that would render the disposition of the Securities a violation of Section 5 of the Act or any state securities laws or

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

require registration pursuant thereto, and we will not act, or authorize any person to act, in such manner with respect to the Securities, and (g) we will not sell, transfer or otherwise dispose of any Securities unless (1) such sale, transfer or other disposition is made pursuant to an effective registration statement under the Act and in compliance with any relevant state securities laws or is exempt from such registration requirements and, if requested, we will at our expense provide an opinion of counsel satisfactory to the addressees of this certificate that such sale, transfer or other disposition may be made pursuant to an exemption from the Act, (2) we have informed the purchaser or transferee of such Security of the transfer restrictions applicable to such Security, (3) the purchaser or transferee of such Security has executed and delivered to you a certificate to substantially the same effect as this certificate and (4) the purchaser or transferee has otherwise complied with any conditions for transfer set forth in the Trust Agreement.

The transferee is duly authorized to purchase the Securities and its purchase of investments having the characteristics of the Securities is authorized under, and not directly or indirectly in contravention of, any law, charter, trust instrument or other operative document, investment guidelines or list of permissible or impermissible investments that is applicable to the Investor.

The transferee understands that each holder of a Security, by virtue of its acceptance thereof, assents to the terms, provisions and conditions of the Trust Agreement.

Very truly yours,

_____
[Name of Transferee]

By:_____
    Name:
    Title:

192708 SASCO 2006-RM1
Trust Agreement

D-2

CONFIDENTIAL

EXHIBIT E-1

FORM OF CLASS R CERTIFICATE TRANSFER AFFIDAVIT (TRANSFEROR)

_____
Date

Re:     Structured Asset Securities Corporation Reverse Mortgage
        Loan Trust 2006-RM1, Class R Certificate _____

_____ (the "Transferor") has reviewed the attached affidavit of
_____ (the "Transferee"), and has no actual knowledge that such
affidavit is not true and has no reason to believe that the information contained in paragraph 7
thereof is not true, and has no reason to believe that the Transferee has the intention to impede
the assessment or collection of any federal, state or local taxes legally required to be paid with
respect to the Class R Certificate.  In addition, the Transferor has conducted a reasonable
investigation at the time of the transfer and found that the Transferee had historically paid its
debts as they came due and found no significant evidence to indicate that the Transferee will not
continue to pay its debts as they become due.

Very truly yours,

_____
Name:
Title:

192708 SASCO 2006-RM1
Trust Agreement

E-1-1

CONFIDENTIAL

EXHIBIT E-2

## FORM OF CLASS R CERTIFICATE TRANSFER AFFIDAVIT (TRANSFEREE)

STATE OF                              )

                                     )ss:

COUNTY OF                            )

         [NAME OF OFFICER], _____ being first duly sworn, deposes and says:

    1.  That he [she] is [title of officer] _____ of [name of Purchaser] _____ (the "Purchaser"), a _____ [description of type of entity] duly organized and existing under the laws of the [State of _____] [United States], on behalf of which he [she] makes this affidavit.

    2.  That the Purchaser's Taxpayer Identification Number is _____.

    3.  That the Purchaser is not a "disqualified organization" within the meaning of Section 860E(e)(5) of the Internal Revenue Code of 1986, as amended (the "Code") and will not be a "disqualified organization" as of _____ [date of transfer], and that the Purchaser is not acquiring a Class R Certificate (as defined in the Agreement) for the account of, or as agent (including a broker, nominee, or other middleman) for, any person or entity from which it has not received an affidavit substantially in the form of this affidavit.

    4.  That the Purchaser is not an employee benefit plan or other retirement arrangement that is subject to Section 406 of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, or any substantially similar applicable law, or any entity deemed to hold the plan assets of the foregoing.

    5.  That the Purchaser hereby acknowledges that under the terms of the Trust Agreement dated as of August 1, 2006, among Structured Asset Securities Corporation, as Depositor, Citibank, N.A., as Administrator, and Wilmington Trust Company, as Owner Trustee, no transfer of a Class R Certificate shall be permitted to be made to any person unless the Depositor and the Trustee have received a certificate from such transferee containing the representations in paragraphs 3, 4 and 5 hereof.

    6.  That the Purchaser does not hold REMIC residual securities as nominee to facilitate the clearance and settlement of such securities through electronic book-entry changes in accounts of participating organizations (such entity, a "Book-Entry Nominee").

192708 SASCO 2006-RM1
Trust Agreement

E-2-1

CONFIDENTIAL

7.   That the Purchaser does not have the intention to impede the assessment or collection of any federal, state or local taxes legally required to be paid with respect to such Class R Certificate, and that the Purchaser has provided financial statements or other financial information requested by the transferor in connection with the transfer of the Class R Certificate in order to permit the transferor to assess the financial capability of the Purchaser to pay such taxes.

8.   That the Purchaser will not transfer a Class R Certificate to any person or entity (i) as to which the Purchaser has actual knowledge that the requirements set forth in paragraph 3, paragraph 6 or paragraph 10 hereof are not satisfied or that the Purchaser has reason to believe does not satisfy the requirements set forth in paragraph 7 hereof, and (ii) without obtaining from the prospective Purchaser an affidavit substantially in this form and providing to the Indenture Trustee a written statement substantially in the form of Exhibit E-1 to the Trust Agreement.

9.   That the Purchaser understands that, as the holder of a Class R Certificate, the Purchaser may incur tax liabilities in excess of any cash flows generated by the Class R Certificate and that it intends to pay taxes associated with holding such Class R Certificate as they become due.

10.  That the Purchaser (i) is a U.S. Person or (ii) is a Non-U.S. Person that holds a Class R Certificate in connection with the conduct of a trade or business within the United States and has furnished the transferor and the Certificate Registrar with an effective Internal Revenue Service Form W-8 ECI (Certificate of Foreign Person's Claim for exception From Withholding on Income Effectively Connected with the Conduct of a Trade or Business in the United States) or successor form at the time and in the manner required by the Code.  "Non-U.S. Person" means any person other than (i) a citizen or resident of the United States; (ii) a corporation (or entity treated as a corporation for tax purposes) created or organized in the United States or under the laws of the United States or of any state thereof, including, for this purpose, the District of Columbia; (iii) a partnership (or entity treated as a partnership for tax purposes) organized in the United States or under the laws of the United States or of any state thereof, including, for this purpose, the District of Columbia (unless provided otherwise by future Treasury regulations); (iv) an estate whose income is includible in gross income for United States income tax purposes regardless of its source; (v) a trust, if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more U.S. Persons have authority to control all substantial decisions of the trust; (vi) and, to the extent provided in Treasury regulations, certain trusts in existence prior to August 20, 1996 that are treated as United States persons prior to such date and elect to continue to be treated as United States persons.

CONFIDENTIAL

11. That the Purchaser agrees to such amendments of the Trust Agreement as may be required to further effectuate the restrictions on transfer of any Class R Certificate to such a "disqualified organization," an agent thereof, a Book-Entry Nominee, or a person that does not satisfy the requirements of paragraph 7 and paragraph 10 hereof.

12. That the Purchaser consents to the designation of the holder of the largest Percentage Interest of the Class R Certificates as its agent to act as "tax matters person" of the Trust pursuant to the Trust Agreement.

192708 SASCO 2006-RM1
Trust Agreement

CONFIDENTIAL

IN WITNESS WHEREOF, the Purchaser has caused this instrument to be executed on its behalf, pursuant to authority of its Board of Directors, by its [title of officer] this _____ day of _____ 20__.

_____
[name of Purchaser]

By:_____
    Name:
    Title:

Personally appeared before me the above-named [name of officer] _____, known or proved to me to be the same person who executed the foregoing instrument and to be the [title of officer] _____ of the Purchaser, and acknowledged to me that he [she] executed the same as his [her] free act and deed and the free act and deed of the Purchaser.

Subscribed and sworn before me this _____ day of _____ 20__.

NOTARY PUBLIC

_____

COUNTY OF_____

STATE OF_____

My commission expires the _____ day of _____ 20__.

192708 SASCO 2006-RM1
Trust Agreement

E-2-4

**CONFIDENTIAL**

EXHIBIT F

FORM OF CERTIFICATE OF NON-FOREIGN STATUS

This certificate of Non-Foreign status ("certificate") is delivered pursuant to Section 3.03 of the Trust Agreement dated as of August 1, 2006 (the "Agreement"), among Structured Asset Securities Corporation, as Depositor, Wilmington Trust Company, as Owner Trustee, and Citibank, N.A., as Administrator, in connection with the acquisition of, transfer to or possession by the undersigned, whether as beneficial owner (the "Beneficial Owner"), or nominee on behalf of the Beneficial Owner of the Class R Certificates, (the "Class R Certificate"). Capitalized terms used but not defined in this certificate have the respective meanings given them in the Agreement.

Each holder must complete Part I, Part II (if the holder is a nominee), and in all cases sign and otherwise complete Part III. In addition, each holder shall submit with the certificate an IRS Form W-9 relating to such holder.

To confirm to the Trust that the provisions of Sections 871, 881 or 1446 of the Internal Revenue Code (relating to withholding tax on foreign partners) do not apply in respect of the Class R Certificate held by the undersigned, the undersigned hereby certifies:

PART I - COMPLETE EITHER A OR B

    A.    Individual as Beneficial Owner

        1.    I am (The Beneficial Owner is) not a Non-resident alien for purposes of U.S. Income Taxation;

        2.    My (The Beneficial Owner's) name and home address are:

_____
_____
_____; and

        3.    My (The Beneficial Owner's) U.S. Taxpayer Identification Number (Social Security Number) is _____.

    B.    Corporate, Partnership or other entity as Beneficial Owner

        1.    (Name of the Beneficial Owner) is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Code and Treasury Regulations);

        2.    The Beneficial Owner's office address and place of incorporation (if applicable) is _____; and

        3.    The Beneficial Owner's U.S. employer identification number is _____.

CONFIDENTIAL

PART II - NOMINEES

If the undersigned is the nominee for the Beneficial Owner, the undersigned certifies that this certificate has been made in reliance upon information contained in:

\_\_\_\_\_ an IRS Form W-9

\_\_\_\_\_ a form such as this or substantially similar

provided to the undersigned by an appropriate person and (i) the undersigned agrees to notify the Trust at least thirty (30) days prior to the date that the form relied upon becomes obsolete, and (ii) in connection with change in Beneficial Owners, the undersigned agrees to submit a new Certificate of Non-Foreign Status to the Trust promptly after such change.

PART III - DECLARATION

The undersigned, as the Beneficial Owner or a nominee thereof, agrees to notify the Trust within sixty (60) days of the date that the Beneficial Owner becomes a foreign person. The undersigned understands that this certificate may be disclosed to the Internal Revenue Service by the Trust and any false statement contained therein could be punishable by fines, imprisonment or both.

Under penalties of perjury, I declare that I have examined this certificate and to the best of my knowledge and belief it is true, correct and complete and will further declare that I will inform the Trust of any change in the information provided above, and, if applicable, I further declare that I have the authority* to sign this document.

_____
Name

_____
Title (if applicable)

_____
Signature and Date

*NOTE: If signed pursuant to a power of attorney, the power of attorney must accompany this certificate.

192708 SASCO 2006-RM1
Trust Agreement

F-2

CONFIDENTIAL

EXHIBIT G

OWNER TRUSTEE FEE LETTER AGREEMENT

[On file with Wilmington Trust Company]

192708 SASCO 2006-RM1
Trust Agreement

**CONFIDENTIAL**