# <u>EXHIBIT G</u>

*EXECUTION*

INDENTURE

between

STRUCTURED ASSET SECURITIES CORPORATION
REVERSE MORTGAGE LOAN TRUST 2006-RM1,
Issuer

and

CITIBANK, N.A.,
Indenture Trustee

Dated as of August 1, 2006

**CONFIDENTIAL**

TABLE OF CONTENTS

Page

### ARTICLE I
### DEFINITIONS AND INCORPORATION BY REFERENCE

Section 1.01   Definitions ................................................................................................2
Section 1.02   Rules of Construction ...............................................................................6

### ARTICLE II
### THE NOTES

Section 2.01   Form ..........................................................................................................6
Section 2.02   Execution, Authentication and Delivery ..................................................7
Section 2.03   Limitations on Transfer of the Notes .......................................................8
Section 2.04   Registration; Registration of Transfer and Exchange ...........................12
Section 2.05   Mutilated, Destroyed, Lost or Stolen Notes...........................................13
Section 2.06   Persons Deemed Owners........................................................................14
Section 2.07   Payment of Principal and Interest ..........................................................14
Section 2.08   Cancellation............................................................................................15
Section 2.09   Release of Collateral ..............................................................................15
Section 2.10   Book-Entry Notes ..................................................................................16
Section 2.11   Notices to Clearing Agency ...................................................................17
Section 2.12   Definitive Notes .....................................................................................17
Section 2.13   Tax Treatment ........................................................................................17

### ARTICLE III
### COVENANTS

Section 3.01   Payment of Principal and Interest ..........................................................17
Section 3.02   Maintenance of Office or Agency...........................................................18
Section 3.03   Money for Payments to be Held in Trust................................................18
Section 3.04   Existence .................................................................................................20
Section 3.05   Protection of Collateral ..........................................................................20
Section 3.06   Opinions as to Collateral ........................................................................21
Section 3.07   Performance of Obligations; Servicing of the Mortgage Loans .....................21
Section 3.08   Negative Covenants ................................................................................22
Section 3.09   Annual Statement as to Compliance .......................................................23
Section 3.10   [Reserved] ..............................................................................................23
Section 3.11   [Reserved] ..............................................................................................23
Section 3.12   No Other Business ..................................................................................23
Section 3.13   No Borrowing .........................................................................................23
Section 3.14   Master Servicer's Obligations.................................................................24
Section 3.15   Guarantees, Loans, Advances and Other Liabilities...............................24
Section 3.16   Capital Expenditures ..............................................................................24
Section 3.17   Removal of Administrator.......................................................................24
Section 3.18   Restricted Payments................................................................................24
Section 3.19   Notice of Events of Default ....................................................................24

CONFIDENTIAL

Section 3.20   Further Instruments and Acts ..................................................24
Section 3.21   Covenants of the Issuer .......................................................24
Section 3.22   Representations and Warranties of the Issuer ...............................25

## ARTICLE IV
## SATISFACTION AND DISCHARGE

Section 4.01   Satisfaction and Discharge of Indenture .................................26
Section 4.02   Application of Trust Money...............................................27
Section 4.03   Repayment of Moneys Held by Paying Agent................................28

## ARTICLE V
## REMEDIES

Section 5.01   Events of Default...........................................................28
Section 5.02   Acceleration of Maturity; Rescission and Annulment ......................29
Section 5.03   Collection of Indebtedness and Suits for Enforcement by Indenture Trustee ..30
Section 5.04   Remedies; Priorities .......................................................32
Section 5.05   Optional Preservation of the Collateral ..................................33
Section 5.06   Limitation of Suits ........................................................34
Section 5.07   Unconditional Rights of Noteholders To Receive Principal and Interest .......34
Section 5.08   Restoration of Rights and Remedies .......................................35
Section 5.09   Rights and Remedies Cumulative ...........................................35
Section 5.10   Delay or Omission Not a Waiver ...........................................35
Section 5.11   Control by Noteholders.....................................................35
Section 5.12   Waiver of Past Defaults ...................................................36
Section 5.13   Undertaking for Costs .....................................................36
Section 5.14   Waiver of Stay or Extension Laws..........................................36
Section 5.15   Action on Notes ...........................................................36
Section 5.16   Performance and Enforcement of Certain Obligations .......................37

## ARTICLE VI
## THE INDENTURE TRUSTEE

Section 6.01   Duties of Indenture Trustee................................................37
Section 6.02   Rights of Indenture Trustee................................................39
Section 6.03   Individual Rights of Indenture Trustee ....................................40
Section 6.04   Indenture Trustee's Disclaimer ............................................40
Section 6.05   Notice of Defaults .........................................................41
Section 6.06   Reports by Indenture Trustee to Holders ..................................41
Section 6.07   Compensation and Indemnity ...............................................42
Section 6.08   Replacement of Indenture Trustee .........................................42
Section 6.09   Successor Indenture Trustee by Merger.....................................43
Section 6.10   Appointment of Co-Indenture Trustee or Separate Indenture Trustee...........44
Section 6.11   Eligibility; Disqualification...............................................45
Section 6.12   [Reserved] ................................................................45
Section 6.13   Representations and Warranties............................................45

**CONFIDENTIAL**

## ARTICLE VII
### NOTEHOLDERS' LISTS AND REPORTS

Section 7.01   Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders....45
Section 7.02   Preservation of Information; Communications to Noteholders ......................46

## ARTICLE VIII
### ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01   Collection of Money ...............................................................................46
Section 8.02   Trust Accounts and Certificate Distribution Account.............................46
Section 8.03   General Provisions Regarding Accounts ................................................47
Section 8.04   Release of Collateral .............................................................................47

## ARTICLE IX
### SUPPLEMENTAL INDENTURES

Section 9.01   Supplemental Indentures Without Consent of Noteholders.....................48
Section 9.02   Supplemental Indentures with Consent of Noteholders..........................49
Section 9.03   Execution of Supplemental Indentures ..................................................50
Section 9.04   Effect of Supplemental Indenture ..........................................................50
Section 9.05   Reference in Notes to Supplemental Indentures ....................................50
Section 9.06   Opinion of Counsel ...............................................................................50

## ARTICLE X
### REDEMPTION OF NOTES

Section 10.01  Redemption ............................................................................................50
Section 10.02  Form of Redemption Notice ..................................................................51
Section 10.03  Notes Payable on Redemption Date.......................................................51

## ARTICLE XI
### MISCELLANEOUS

Section 11.01  Compliance Certificates and Opinions, etc............................................51
Section 11.02  Form of Documents Delivered to Indenture Trustee ..............................52
Section 11.03  Acts of Noteholders...............................................................................53
Section 11.04  Notices, etc., to Indenture Trustee, Issuer and Rating Agencies...........53
Section 11.05  Notices to Noteholders; Waiver.............................................................54
Section 11.06  [Reserved] ..............................................................................................54
Section 11.07  Effect of Headings and Table of Contents .............................................54
Section 11.08  Successors and Assigns...........................................................................54
Section 11.09  Severability .............................................................................................54
Section 11.10  Benefits of Indenture and Consents of Noteholders ...............................55
Section 11.11  Legal Holidays ........................................................................................55
Section 11.12  Governing Law........................................................................................55
Section 11.13  Counterparts............................................................................................55
Section 11.14  Recording of Indenture ...........................................................................55
Section 11.15  Trust Obligations.....................................................................................55

192709 SASCO 2006-RM1
Indenture

**CONFIDENTIAL**

Section 11.16  No Petition ..................................................................................56
Section 11.17  Inspection ....................................................................................56
Section 11.18  Agreements of Noteholders ..........................................................56

## EXHIBITS

EXHIBIT A        Forms of Notes
EXHIBIT B-1      Form of Rule 144A Investment Letter
EXHIBIT B-2      Form of Non-Rule 144A Investment Letter
EXHIBIT C-1      Form of Transfer Certificate for Transfer from Restricted Global Security to
                 Regulation S Global Security
EXHIBIT C-2      Form of Transfer Certificate for Transfer from Regulation S Global Security
                 to Restricted Global Security

**CONFIDENTIAL**

INDENTURE dated as of August 1, 2006, between STRUCTURED ASSET SECURITIES CORPORATION REVERSE MORTGAGE LOAN TRUST 2006-RM1, a Delaware statutory trust (the "Issuer"), and CITIBANK, N.A., a national banking association, as indenture trustee and not in its individual capacity (the "Indenture Trustee").

Each party agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Issuer's variable rate Notes in the Classes specified herein (the "Notes"):

## GRANTING CLAUSE

The Issuer hereby Grants to the Indenture Trustee at the Closing Date, as Indenture Trustee for the benefit of the Indenture Trustee and Holders of the Notes, all of the Issuer's right, title and interest, whether now owned or hereafter acquired, in and to all accounts, accounts receivable, contract rights, general intangibles, chattel paper, instruments, documents, money, deposit accounts, certificates of deposit, goods, notes, drafts, letters of credit, advices of credit, investment property, uncertificated securities and rights to payment of any and every kind consisting of, arising from or relating to any of the following:  (a) the Mortgage Loans, other than the related servicing rights, listed in the Mortgage Loan Schedule attached to the Transfer and Servicing Agreement as Schedule I, including all Contingent Payments and interest and principal due and payable after the Cut-off Date, but not including interest and principal due and payable on any Mortgage Loans on or before the Cut-off Date, together with the Mortgage Files relating to such Mortgage Loans and all rights of the Issuer in the Loan Collateral; *provided, however*, that the Indenture Trustee shall not assume the obligations of the Depositor or the Issuer under any Mortgage Loan, including, without limitation, any obligation to fund any Additional Amounts thereunder, it being understood that Financial Freedom shall retain the obligation to fund such Additional Amounts, (b) the Funding Account, the Collection Account, the Note Payment Account and all amounts deposited and securities held therein pursuant to the applicable provisions of this Indenture and the Transfer and Servicing Agreement, (c) any Insurance Proceeds, REO Property, Liquidation Proceeds and other recoveries (in each case, subject to clause (a) above), (d) any Insurance Policies, (e) any Eligible Investments held or amounts on deposit in any Trust Account, (f) the rights of the Depositor under the Mortgage Loan Purchase Agreements and the Mortgage Loan Sale Agreement, (g) the rights of the Issuer under the Servicing Agreement, and (h) all income, revenues, issues, products, revisions, substitutions, replacements, profits, rents and all cash and non-cash proceeds of the foregoing (collectively, the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, equally and ratably in each case without prejudice, priority or distinction, and to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The Indenture Trustee, as Indenture Trustee on behalf of the Holders of the Notes, acknowledges such Grant, accepts the trusts under this Indenture in accordance with the provisions of this Indenture and agrees to perform its duties required in this Indenture to the best of its ability to the end that the interests of the Holders of the Notes may be adequately and effectively protected.

CONFIDENTIAL

## ARTICLE I

## DEFINITIONS AND INCORPORATION BY REFERENCE

Section 1.01.   Definitions.  (a) Except as otherwise specified herein or as the context may otherwise require, the following terms have the respective meanings set forth below for all purposes of this Indenture.

Act:  The meaning specified in Section 11.03(a).

Authorized Officer:  With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter) and, so long as the Administration Agreement is in effect, any Vice President, Assistant Vice President, Trust Officer or more senior officer of the Administrator who is authorized to act for the Administrator in matters relating to the Issuer and to be acted upon by the Administrator pursuant to the Administration Agreement and who is identified on the list of Authorized Officers delivered by the Administrator to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Book-Entry Notes:  Beneficial interests in Notes designated as "Book-Entry Notes" in this Indenture, ownership and transfers of which shall be evidenced or made through book entries by a Clearing Agency as described in Section 2.10; provided, that after the occurrence of a condition whereupon Definitive Notes are to be issued to Note Owners, such Book-Entry Notes shall no longer be "Book-Entry Notes."

Certificate of Trust:  The certificate of trust of the Issuer substantially in the form of Exhibit C to the Trust Agreement.

Clearing Agency:  An organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act.  As of the Closing Date, the Clearing Agency shall be The Depository Trust Company.

Clearing Agency Participant:  A broker, dealer, bank, other financial institution or other Person for whom from time to time a Clearing Agency effects book-entry transfers and pledges of securities deposited with the Clearing Agency.

Collateral:  The meaning specified in the Granting Clause of this Indenture.

Default:  Any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default.

Definitive Notes:  The meaning specified in Section 2.10.

Depository:  DTC or any other Person designated by the Issuer as Depository in the case of Book-Entry Notes.

CONFIDENTIAL

Depository Institution:  Any depository institution or trust company, including the Indenture Trustee, that (a) is incorporated under the laws of the United States of America or any State thereof, (b) is subject to supervision and examination by federal or state banking authorities and (c) has outstanding unsecured commercial paper or other short-term unsecured debt obligations that are rated in the highest rating category by each Rating Agency, or is otherwise acceptable to each Rating Agency.

Event of Default:  The meaning specified in Section 5.01.

Exchange Act: The Securities Exchange Act of 1934, as amended.

Executive Officer:  With respect to any corporation or limited liability company, the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, Manager, Executive Vice President, any Vice President, the Secretary or the Treasurer of such entity; and with respect to any partnership, any general partner thereof.

Grant:  Mortgage, pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and a right of set-off against, deposit, set over and confirm pursuant to this Indenture.  A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of the Collateral and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring Proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

Holder or Noteholder: A Person in whose name a Note is registered on the Note Register.

Issuer Order or Issuer Request:  A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee.

Non-Priority Class Note:  As of any date of determination, any Outstanding Note other than the related Priority Class Notes.

Note:  Any of the Class A1, Class A-IO, Class M1 and Class M2 Notes issued pursuant to this Indenture, substantially in the forms attached hereto as Exhibit A.

Note Depository Agreement:  The agreement dated September 19, 2006, between the Issuer and The Depository Trust Company, as the initial Clearing Agency, relating to the Notes.

Note Owner:  With respect to a Book-Entry Note, the Person that is the beneficial owner of such Book-Entry Note, as reflected on the books of the Clearing Agency or on the books of a Person maintaining an account with such Clearing Agency (directly as a Clearing Agency Participant or as an indirect participant, in each case in accordance with the rules of such Clearing Agency), and with respect to a Definitive Note, the Person that is the registered owner of such Note as reflected in the Note Register.

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

Note Register and Note Registrar: The respective meanings specified in Section 2.04.

Officer's Certificate: A certificate signed by any Authorized Officer of the Issuer, under the circumstances described in, and otherwise complying with, the applicable requirements of Section 11.01, and delivered to the Indenture Trustee. Unless otherwise specified, any reference in this Indenture to an Officer's Certificate shall be to an Officer's Certificate of any Authorized Officer of the Issuer.

Outstanding: As of the date of determination, all Notes theretofore authenticated and delivered under this Indenture except:

      (i)     Notes theretofore cancelled by the Note Registrar or delivered to the Note Registrar for cancellation;

      (ii)    Notes the payment for which money in the necessary amount has been theretofore deposited with the Indenture Trustee or any Paying Agent in trust for the Holders of such Notes (*provided, however,* that if such Notes are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision for such notice has been made, satisfactory to the Indenture Trustee); and

      (iii)   Notes in exchange for or in lieu of which other Notes have been authenticated and delivered pursuant to this Indenture unless proof satisfactory to the Indenture Trustee is presented that any such Notes are held by a bona fide purchaser;

provided, that in determining whether the Holders of the requisite Outstanding Balance of the Notes have given any request, demand, authorization, direction, notice, consent or waiver hereunder or under any Basic Document, Notes owned by the Issuer, the Depositor, the Owner Trustee, the Master Servicer, the Servicer or any Affiliate of any of the foregoing Persons shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Indenture Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes that a Responsible Officer of the Indenture Trustee actually knows to be so owned shall be so disregarded (unless such action requires the consent, waiver, request or demand of 100% of the Outstanding Balance represented by a particular Class and 100% of the Outstanding Balance represented by such Class is registered in the name of one or more of the foregoing entities). Notes so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Indenture Trustee the pledgee's right so to act with respect to such Notes and that the pledgee is not the Issuer, any other obligor upon the Notes, the Depositor, the Owner Trustee, the Master Servicer, the Servicer or any Affiliate of any of the foregoing Persons. The Indenture Trustee may request and conclusively rely on certification by the Depositor, the Owner Trustee, the Master Servicer and the Servicer in determining whether any Notes are registered to an affiliate thereof.

Outstanding Balance: The aggregate principal or notional amount of the Notes Outstanding as of the date of determination.

Paying Agent: The Indenture Trustee or any other Person that meets the eligibility standards for the Indenture Trustee specified in Section 6.11 and is authorized by the Issuer to

192709 SASCO 2006-RM1
Indenture

4

CONFIDENTIAL

make payments to and distributions from the Trust Accounts, including payments of principal of or interest on the Notes on behalf of the Issuer.

Predecessor Note:  With respect to any particular Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such particular Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 2.05 in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as the mutilated, lost, destroyed or stolen Note.

Priority Class Note:  As of any date of determination, any Note of the Class of Notes then Outstanding that has the highest priority of payment of interest.

Proceeding:  Any suit in equity, action at law or other judicial or administrative proceeding.

Prospective Owner:  Each prospective purchaser and any subsequent transferee of a Note.

Rating Agency Condition:  With respect to any action to which the Rating Agency Condition applies, that each Rating Agency shall have been given 10 days (or such shorter period as is acceptable to each Rating Agency) prior notice thereof and that each Rating Agency shall have notified the Depositor, the Master Servicer, the Issuer and the Indenture Trustee in writing that such action will not result in a reduction or withdrawal of the then current rating of the rated Notes.

Redemption Date:  In the case of a redemption of the Notes pursuant to Section 10.01, the Payment Date specified by the Indenture Trustee in the notice delivered pursuant to Section 10.02.

Redemption Price:  With respect to each Class of Notes, other than the Class A-IO Notes, and a redemption of the Notes pursuant to Section 10.01 hereof and Section 10.02 of the Transfer and Servicing Agreement, an amount equal to the aggregate unpaid principal amount of the Notes redeemed, plus accrued and unpaid interest thereon at the applicable Interest Rate for the Notes being so redeemed through the last day of the related Accrual Period, and in the case of the Class A-IO Notes, the Class A-IO Redemption Price.

Registered Holder:  The Person in whose name a Note is registered on the Note Register on the applicable Record Date.

Regulation S:  Regulation S promulgated under the Securities Act or any successor provision thereto, in each case as the same may be amended from time to time; and all references to any rule, section or subsection of, or definition or term contained in, Regulation S means such rule, section, subsection, definition or term, as the case may be, or any successor thereto, in each case as the same may be amended from time to time.

Regulation S Global Security:  The meaning specified in Section 2.01(b).

Restricted Global Security:  The meaning specified in Section 2.01(b).

CONFIDENTIAL

State:  Any one of the 50 States of the United States of America or the District of Columbia.

Transfer and Servicing Agreement:  The Transfer and Servicing Agreement dated as of August 1, 2006, among the Issuer, Structured Asset Securities Corporation, as Depositor, Aurora Loan Services LLC, as Master Servicer, and Citibank, N.A., as the Indenture Trustee, as such may be amended or supplemented from time to time.

(b)  Except as otherwise specified herein or as the context may otherwise require, capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the Transfer and Servicing Agreement.

Section 1.02.   Rules of Construction.  Unless the context otherwise requires:

(i)   a term has the meaning assigned to it;

(ii)   an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii)   "or" is not exclusive;

(iv)   "including" means including without limitation;

(v)   words in the singular include the plural and words in the plural include the singular; and

(vi)   any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns.

## ARTICLE II

## THE NOTES

Section 2.01.   Form.  (a) The Notes, together with the Indenture Trustee's certificate of authentication, shall be in substantially the forms set forth in Exhibit A with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officers executing such Notes, as evidenced by their execution of the Notes.  Any portion of the text of any Note may be set forth on the reverse thereof, with an appropriate reference thereto on the face of the Note.

The Definitive Notes and the global certificates representing the Book-Entry Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these

192709 SASCO 2006-RM1
Indenture

6

CONFIDENTIAL

methods (with or without steel engraved borders), all as determined by the officers executing such Notes, as evidenced by their execution of such Notes.

Each Note shall be dated the date of its authentication. The terms of the Notes set forth in Exhibit A are part of the terms of this Indenture.

(b) The Notes offered and sold in reliance on the exemption from registration under Rule 144A shall be issued initially in the form of one or more permanent global certificates in definitive, fully registered form without interest coupons with the applicable legends set forth in Exhibit A added to the forms of such Notes (each, a "Restricted Global Security"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Indenture Trustee as custodian for the Depository and registered in the name of a nominee of the Depository, duly executed by the Issuer and authenticated by the Indenture Trustee as hereinafter provided. The aggregate principal amounts of the Restricted Global Securities may from time to time be increased or decreased by adjustments made on the records of the Indenture Trustee or the Depository or its nominee, as the case may be, as hereinafter provided.

The Notes sold in offshore transactions in reliance on Regulation S shall be issued initially in the form of one or more permanent global certificates in definitive, fully registered form without interest coupons with the applicable legends set forth in Exhibit A hereto added to the forms of such Notes (each, a "Regulation S Global Security"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Indenture Trustee as custodian for the Depository and registered in the name of a nominee of the Depository, duly executed by the Issuer and authenticated by the Indenture Trustee as hereinafter provided. The aggregate principal amounts of the Regulation S Global Securities may from time to time be increased or decreased by adjustments made on the records of the Indenture Trustee or the Depository or its nominee, as the case may be, as hereinafter provided.

Section 2.02. <u>Execution, Authentication and Delivery</u>. The Notes shall be executed on behalf of the Issuer by any Authorized Officer of the Owner Trustee. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall, upon Issuer Order, authenticate and deliver the Notes for original issue in the aggregate principal or notional amounts with respect to each Class as specified below:

| Class | Class Principal or Notional Amount |
|-------|-----------------------------------|
| A1 | $490,000,000 |
| A-IO | $182,821,637 |

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

| M1 | $83,300,000 |
| M2 | $25,030,291 |

The aggregate principal and notional amounts of such Classes of Notes outstanding at any time may not exceed such respective amounts.

The Notes other than the Class A-IO Notes shall be issued in the minimum denomination of $250,000 in principal amount and in integral multiples of $1 in excess thereof, and the Class A-IO Notes shall be issued in the minimum denomination of $1,000,000 in notional amount and in integral multiples of $1 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Indenture Trustee by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

Section 2.03.   Limitations on Transfer of the Notes.   (a) Each Prospective Owner of a Book-Entry Note shall be deemed to have represented and warranted, and each Prospective Owner of a Definitive Note upon initial issuance shall represent and warrant in writing in substantially the form set forth in Exhibit B-1 or Exhibit B-2 hereto, as applicable, to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)      Such Person is duly authorized to purchase the Notes and its purchase of investments having the characteristics of the Notes is authorized under, and not directly or indirectly in contravention of, any law, charter, trust instrument or other operative document, investment guidelines or list of permissible or impermissible investments that is applicable to the investor; and

(ii)     Such Person understands that each holder of a Note, by virtue of its acceptance thereof, assents to the terms, provisions and conditions of this Indenture.

(b) Each Prospective Owner of a Book-Entry Note shall be deemed to have represented and warranted to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)      Such Person is either (A) a qualified institutional buyer (a "QIB") as defined in Rule 144A under the Securities Act ("Rule 144A") and is aware that the seller of such Note may be relying on the exemption from the registration requirements of the Securities Act provided by Rule 144A and is acquiring such Note for its own account or for the account of one or more qualified institutional buyers for whom it is authorized to act or (B) an institutional investor that is an "accredited investor" as defined in Rule 501(a)(1), (2), (3) or (7) under the Securities Act;

(ii)     Such Person understands that such Notes have not been registered under the Securities Act, and that, if in the future it decides to offer, resell, pledge or otherwise

192709 SASCO 2006-RM1
Indenture

8

CONFIDENTIAL

transfer such Notes, such Notes may be offered, resold, pledged or otherwise transferred only (A) pursuant to a registration statement which has been declared effective under the Securities Act, (B) for so long as such Notes are eligible for resale pursuant to Rule 144A under the Securities Act, to a person whom the seller reasonably believes is a QIB that is purchasing such Notes for its own account or for the account of a qualified institutional buyer to whom notice is given that the transfer is being made in reliance on Rule 144A, or (C) to an institutional "accredited investor" within the meaning of subparagraph (a)(1), (2), (3) or (7) of Rule 501 under the Securities Act that is acquiring such Notes for its own account or for the account of such an institutional "accredited investor," for investment purposes and not with a view to, or for offer or sale in connection with, any distribution in violation of the Securities Act, in each case in compliance with the requirements of this Indenture; and

(iii)    Such Person either (i) is not acquiring the Notes for, or on behalf of, an employee benefit plan or other retirement arrangement subject to Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), or any substantially similar applicable law ("Similar Law") or any entity deemed to hold the plan assets of the foregoing (a "Benefit Plan"), or (ii) is acquiring the Notes for, or on behalf of, a Benefit Plan and its acquisition and holding of such Notes (x) will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, which is not covered by Prohibited Transaction Class Exemption ("PTCE") 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable exemption and (y) will not cause a non-exempt violation of any substantially similar applicable law.

(c) Each Prospective Owner of a Note sold in an offshore transaction in reliance on Regulation S shall be deemed to have represented and warranted to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)    Such Person is not a U.S. person within the meaning of Regulation S and was, at the time the buy order was originated, outside the United States;

(ii)    Such Person understands that such Notes have not been registered under the Securities Act, and that (x) until the expiration of the 40-day distribution compliance period (within the meaning of Regulation S), no offer, sale, pledge or other transfer of such Notes or any interest therein shall be made in the United States or to or for the account or benefit of a U.S. person (each as defined in Regulation S), (y) if in the future it decides to offer, resell, pledge or otherwise transfer such Notes, such Notes may be offered, resold, pledged or otherwise transferred only (A) to a person which the seller reasonably believes is a QIB that is purchasing such Notes for its own account or for the account of a qualified institutional buyer to which notice is given that the transfer is being made in reliance on Rule 144A, or (B) in an offshore transaction (as defined in Regulation S) in compliance with the provisions of Regulation S, in each case in compliance with the requirements of this Indenture; and it will notify such transferee of the transfer restrictions specified in this Section 2.03; and

192709 SASCO 2006-RM1
Indenture

9

CONFIDENTIAL

(iii) Such Person either (i) is not acquiring the Notes for, or on behalf of, a Benefit Plan, or (ii) is acquiring the Notes for, or on behalf of, a Benefit Plan and its acquisition and holding of such Notes (x) will not result in a non-exempt prohibited transaction under Section 406 of ERISA, or Section 4975 of the Code, which is not covered by PTCE 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable exemption and (y) will not cause a non-exempt violation of any substantially similar applicable law.

In the event that a transfer of a Definitive Note is to be made, in order to assure compliance with the Securities Act and state securities laws, the prospective transferee shall certify to the Indenture Trustee in writing the facts surrounding the transfer in substantially the form set forth in Exhibit B-1, Exhibit B-2, Exhibit C-1 or Exhibit C-2, as applicable, attached hereto. As a condition to any transfer pursuant to clause (b)(ii)(C) above, the Indenture Trustee may require that the prospective transferee (x) certify in writing that such transfer is to be made in accordance with Rule 144A under the Securities Act or (y) deliver an Opinion of Counsel satisfactory to the Indenture Trustee to the effect that such transfer will be exempt from registration under the Securities Act.

In the event that a Note is transferred to a Person that does not meet the requirements of this Section 2.03, such transfer shall be of no force and effect, shall be void *ab initio*, and shall not operate to transfer any rights to such Person, notwithstanding any instructions to the contrary to the Issuer, the Indenture Trustee or any intermediary; and the Indenture Trustee shall not make any distributions on such Note for as long as such Person is the Holder of such Note.

The Indenture Trustee on behalf of the Depositor shall provide to any Holder of a Note (or Note Owner) and any prospective transferee designated by any such Holder (or Note Owner), information regarding the Notes and the Mortgage Loans and such other information as shall be necessary to satisfy the condition to eligibility set forth in Rule 144A(d)(4) for transfer of any such Note without registration thereof under the Securities Act pursuant to the registration exemption provided by Rule 144A. Each Holder of a Note (or Note Owner) desiring to effect such a transfer shall, and does hereby agree to, indemnify the Issuer, the Owner Trustee, the Master Servicer, the Indenture Trustee, the Administrator and the Depositor against any liability that may result if the transfer is not so exempt or is not made in accordance with federal and state securities laws and any other restrictions specified in this Section 2.03. Each holder of a Book-Entry Note shall be deemed to have consented to such transfer restrictions.

The Issuer shall cause each Note to contain a legend substantially similar to the applicable legend provided in Exhibit A hereto stating that transfer of such Notes is subject to certain restrictions as set forth herein.

(d)    Notwithstanding any provision to the contrary herein, so long as a Global Security representing the Notes remains outstanding and is held by or on behalf of the Depository, transfers of a Global Security representing the Notes, in whole or in part, shall only be made in accordance with this Section 2.03.

(i)  Subject to clauses (ii) and (iii) of this Section 2.03(d), transfers of a Global Security representing the Notes shall be limited to transfers of such Global Security in

192709 SASCO 2006-RM1
Indenture

10

**CONFIDENTIAL**

whole, but not in part, to nominees of the Depository or to a successor of the Depository or such successor's nominee.

(ii)     <u>Restricted Global Security to Regulation S Global Security</u>. If a holder of a beneficial interest in a Restricted Global Security deposited with or on behalf of the Depository wishes at any time to exchange its interest in such Restricted Global Security for an interest in a Regulation S Global Security, or to transfer its interest in such Restricted Global Security to a Person who wishes to take delivery thereof in the form of an interest in a Regulation S Global Security, such holder, provided such holder is not a U.S. Person, may, subject to the rules and procedures of the Depository, exchange or cause the exchange of such interest for an equivalent beneficial interest in the Regulation S Global Security. Upon receipt by the Indenture Trustee, as Note Registrar, of (A) instructions from the Depository directing the Indenture Trustee, as Note Registrar, to cause to be credited a beneficial interest in a Regulation S Global Security in an amount equal to the beneficial interest in such Restricted Global Security to be exchanged but not less than the minimum denomination applicable to such holder's Notes held through a Regulation S Global Security, (B) a written order given in accordance with the Depository's procedures containing information regarding the participant account of the Depository and, in the case of a transfer pursuant to and in accordance with Regulation S, the Euroclear or Clearstream account to be credited with such increase and (C) a certificate in the form of Exhibit C-1 hereto given by the holder of such beneficial interest stating that the exchange or transfer of such interest has been made in compliance with the transfer restrictions applicable to the Global Securities and pursuant to and in accordance with Regulation S, the Indenture Trustee, as Note Registrar, shall reduce the principal amount of the Restricted Global Security and increase the principal amount of the Regulation S Global Security by the aggregate principal amount of the beneficial interest in the Restricted Global Security to be exchanged, and shall instruct Euroclear or Clearstream, as applicable, concurrently with such reduction, to credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Regulation S Global Security equal to the reduction in the principal amount of the Restricted Global Security.

(iii)     <u>Regulation S Global Security to Restricted Global Security</u>. If a holder of a beneficial interest in a Regulation S Global Security deposited with or on behalf of the Depository wishes at any time to transfer its interest in such Regulation S Global Security to a Person who wishes to take delivery thereof in the form of an interest in a Restricted Global Security, such holder may, subject to the rules and procedures the Depository, exchange or cause the exchange of such interest for an equivalent beneficial interest in a Restricted Global Security. Upon receipt by the Indenture Trustee, as Note Registrar, of (A) instructions from the Depository directing the Indenture Trustee, as Note Registrar, to cause to be credited a beneficial interest in a Restricted Global Security in an amount equal to the beneficial interest in such Regulation S Global Security to be exchanged but not less than the minimum denomination applicable to such Holder's Notes held through a Restricted Global Security, to be exchanged, such instructions to contain information regarding the participant account with the Depository to be credited with such increase, and (B) a certificate in the form of Exhibit C-2 hereto given by the holder of such beneficial interest and stating, among other things, that the Person transferring such

CONFIDENTIAL

interest in such Regulation S Global Security reasonably believes that the Person acquiring such interest in a Restricted Global Security is a qualified institutional buyer within the meaning of Rule 144A, is obtaining such beneficial interest in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any State of the United States or any other jurisdiction, then the Indenture Trustee, as Note Registrar, will reduce the principal amount of the Regulation S Global Security and increase the principal amount of the Restricted Global Security by the aggregate principal amount of the beneficial interest in the Regulation S Global Security to be transferred and the Indenture Trustee, as Note Registrar, shall instruct the Depository, concurrently with such reduction, to credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Restricted Global Security equal to the reduction in the principal amount of the Regulation S Global Security.

(iv)    Other Exchanges. In the event that a Global Security is exchanged for Notes in definitive registered form without interest coupons, pursuant to Section 2.12 hereof, such Notes may be exchanged for one another only in accordance with such procedures as are substantially consistent with the provisions above (including certification requirements intended to insure that such transfers comply with Rule 144A or are to non-U.S. Persons, or otherwise comply with Regulation S under the Securities Act, as the case may be) and as may be from time to time adopted by the Issuer and the Indenture Trustee.

(v)    Restrictions on U.S. Transfers. Transfers of interests in the Regulation S Global Security to U.S. persons (as defined in Regulation S) shall be limited to transfers made pursuant to the provisions of Section 2.03(d)(iii).

Section 2.04.   Registration; Registration of Transfer and Exchange. The Issuer shall cause the Note Registrar to keep a register (the "Note Register") in which, subject to such reasonable regulations as it may prescribe and the restrictions on transfers of the Notes set forth herein, the Issuer shall provide for the registration of Notes and the registration of transfers of Notes. The Indenture Trustee initially shall be the "Note Registrar" for the purpose of registering Notes and transfers of Notes as herein provided. Upon any resignation of any Note Registrar, the Issuer shall promptly appoint a successor or, if it elects not to make such an appointment, assume the duties of Note Registrar.

If a Person other than the Indenture Trustee is appointed by the Issuer as Note Registrar, the Issuer will give the Indenture Trustee prompt written notice of the appointment of such Note Registrar and of the location, and any change in the location, of the Note Register, and the Indenture Trustee shall have the right to inspect the Note Register at all reasonable times and to obtain copies thereof, and the Indenture Trustee shall have the right to rely upon a certificate executed on behalf of the Note Registrar by an Executive Officer thereof as to the names and addresses of the Holders of the Notes and the principal amounts (or, in the case of the Class A-IO Notes, the notional amount) and number of such Notes.

Subject to Section 2.03, upon surrender for registration of transfer of any Note at the office or agency of the Issuer to be maintained as provided in Section 3.02, the Issuer shall

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

execute, and the Indenture Trustee upon receipt of an Issuer Order shall authenticate and the Noteholder shall be entitled to obtain from the Indenture Trustee, in the name of the designated transferee or transferees, one or more new Notes of the same Class in any authorized denominations, of a like aggregate principal or notional amount.

At the option of the Holder, Notes may be exchanged for other Notes of the same Class in any authorized denominations, of a like aggregate principal or notional amount, upon surrender of the Notes to be exchanged at such office or agency. Whenever any Notes are so surrendered for exchange, the Issuer shall execute, and the Indenture Trustee upon receipt of an Issuer Order shall authenticate and the Noteholder shall be entitled to obtain from the Indenture Trustee, the Notes which the Noteholder making the exchange is entitled to receive.

All Notes issued upon any registration of transfer or exchange of Notes shall be the valid obligations of the Issuer, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Notes surrendered upon such registration of transfer or exchange.

Every Note presented or surrendered for registration of transfer or exchange shall be duly endorsed by, or be accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly executed by, the Holder thereof or such Holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible guarantor institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Registrar in addition to, or in substitution for, STAMP.

No service charge shall be made to a Holder for any registration of transfer or exchange of Notes, but the Issuer or the Note Registrar may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes, other than exchanges pursuant to Section 2.05 or 9.05 not involving any transfer.

The preceding provisions of this Section notwithstanding, the Issuer shall not be required to make and the Note Registrar need not register transfers or exchanges of Notes selected for redemption or of any Note for a period of 15 days preceding the due date for any payment with respect to such Note.

Section 2.05.  Mutilated, Destroyed, Lost or Stolen Notes.  If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it to hold the Issuer and the Indenture Trustee harmless, then, in the absence of actual notice to the Issuer, the Note Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, and upon certification provided by the Holder of such Note that the requirements of Section 8-405 of the Relevant UCC are met, the Issuer shall execute, and upon receipt of an Issuer Request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; *provided, however*, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days

CONFIDENTIAL

shall be due and payable, or shall have been called for redemption, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable or upon the Redemption Date without surrender thereof. If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuer and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section, the Issuer, the Indenture Trustee or the Note Registrar may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 2.06.   Persons Deemed Owners. Prior to due presentment for registration of transfer of any Note, the Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuer, the Indenture Trustee or any agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 2.07.   Payment of Principal and Interest. (a) The Notes shall accrue interest at the applicable Interest Rate and such interest shall be payable on each Payment Date as specified in each Note, subject to Section 3.01. All interest payments on each Class of Notes shall be made *pro rata* to the Noteholders of such Class entitled thereto. Any installment of interest or principal payable on a Note that is punctually paid or duly provided for by the Issuer on the applicable Payment Date shall be paid to the Person in whose name such Note is registered on the related Record Date by wire transfer in immediately available funds to an account specified in the request and at the expense of such Noteholder, except that, unless Definitive Notes have been issued pursuant to Section 2.12, with respect to Notes registered on the Record Date in the name of the nominee of the Clearing Agency (initially, such nominee to be Cede & Co.),

CONFIDENTIAL

payment will be made by wire transfer in immediately available funds to the account designated by such nominee, except for the final installment of principal payable with respect to such Note on the Maturity Date, which shall be payable as provided below.

(b) The principal of the Notes (other than the Class A-IO Notes) shall be payable in installments on each Payment Date as provided herein and in the Notes, subject to Section 3.01. Notwithstanding the foregoing, the entire unpaid principal amount of the Notes (other than the Class A-IO Notes) shall be due and payable, if not previously paid, on the date on which an Event of Default shall have occurred and be continuing, if the Indenture Trustee or Holders of the Notes representing not less than a majority of the Outstanding Balance of the Priority Class Notes, have declared the Notes to be immediately due and payable in the manner provided in Section 5.02. All principal payments on a Class of Notes (other than the Class A-IO Notes) shall be made *pro rata* to the Noteholders of such Class entitled thereto. The Indenture Trustee shall notify the Person in whose name a Note is registered at the close of business on the Record Date preceding the Payment Date on which the Issuer expects that the final installment of principal of and interest on such Note will be paid. Such notice shall be mailed or transmitted by facsimile as soon as practicable prior to such final Payment Date and shall specify that such final installment will be payable only upon presentation and surrender of such Note at the applicable Corporate Trust Office. Notices in connection with redemptions of Notes shall be mailed to Noteholders as provided in Section 10.02.

Section 2.08. <u>Cancellation</u>. All Notes surrendered for payment, registration of transfer, exchange or redemption shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the applicable Corporate Trust Office of the Indenture Trustee and shall be promptly cancelled by the applicable Corporate Trust Office of the Indenture Trustee. The Issuer may at any time deliver to the Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Notes may be held or disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the time unless the Issuer shall direct by an Issuer Order that they be destroyed or returned to it; provided, that such Issuer Order is timely and the Notes have not been previously disposed of by the Indenture Trustee.

Section 2.09. <u>Release of Collateral</u>. (a) The Issuer, the Master Servicer or the Servicer, on behalf of the Issuer, shall be entitled to obtain a release from the lien of this Indenture for any Collateral at any time (i) after a payment of the Purchase Price of any Mortgage Loan, (ii) after liquidation of any Mortgage Loan in accordance with Section 4.23 of the Transfer and Servicing Agreement and the deposit of all Liquidation Proceeds and Insurance Proceeds in the Collection Account, (iii) upon the payment in full of any Mortgage Loan or the sale or other disposition of the related Mortgaged Property or REO Property, or (iv) as contemplated by Section 10.02 of the Transfer and Servicing Agreement.

(b) The Custodian shall, if requested by the Master Servicer or the Servicer, release to such party the Mortgage File relating to any Mortgage Loan pursuant to the provisions of Section 4.15 of the Transfer and Servicing Agreement.

192709 SASCO 2006-RM1
Indenture

15

CONFIDENTIAL

Section 2.10.  <u>Book-Entry Notes</u>.  On the Closing Date, the Notes initially acquired by Qualified Institutional Buyers (as defined in Rule 144A of the Securities Act) or by certain persons in offshore transactions in reliance on Regulation S, upon original issuance, will be issued in the form of typewritten Notes or Global Securities representing the Book-Entry Notes, to be delivered to, or to the Indenture Trustee as custodian for, DTC, the initial Clearing Agency, by, or on behalf of, the Issuer.  The Book-Entry Notes shall be registered initially on the Note Register in the name of Cede & Co., the nominee of the initial Clearing Agency, and no Owner thereof will receive a Definitive Note representing such Note Owner's interest in such Note, except as provided in Section 2.12.  Unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to such Note Owners pursuant to Section 2.12:

(i)      the provisions of this Section shall be in full force and effect;

(ii)      the Note Registrar and the Indenture Trustee shall be entitled to deal with the Clearing Agency for all purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the Note Owners;

(iii)      to the extent that the provisions of this Section conflict with any other provisions of this Indenture, the provisions of this Section shall control;

(iv)      the rights of Note Owners shall be exercised only through the Clearing Agency and shall be limited to those established by law and agreements between such Note Owners and the Clearing Agency and/or the Clearing Agency Participants pursuant to the Note Depository Agreement.  Unless and until Definitive Notes are issued pursuant to Section 2.12, neither the Indenture Trustee nor the Note Registrar shall register any transfer of a beneficial interest in a Book-Entry Note; and the initial Clearing Agency will make book-entry transfers among the Clearing Agency Participants and receive and transmit payments of principal of and interest on the Notes to such Clearing Agency Participants;

(v)      neither the Indenture Trustee nor the Note Registrar shall have any duty or obligation to monitor transfers of beneficial ownership interests in Book-Entry Notes, and neither the Indenture Trustee nor the Note Registrar shall be liable for any transfer of any beneficial ownership interest in any such Book-Entry Note made in violation of the restrictions on transfer set forth in this Indenture.  The Indenture Trustee shall have no liability or duty to monitor compliance with any transfer restriction imposed herein with respect thereto; and

(vi)      whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the Outstanding Balance of the Notes (or the Priority Class Notes), the Clearing Agency shall be deemed to represent such percentage only to the extent that it has received instructions to such effect from Note Owners and/or Clearing Agency Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

CONFIDENTIAL

Section 2.11.  <u>Notices to Clearing Agency</u>.  Whenever a notice or other communication to the Noteholders is required under this Indenture, unless and until Definitive Notes shall have been issued to such Note Owners pursuant to Section 2.12, the Indenture Trustee shall give all such notices and communications specified herein to be given to Holders of the Notes to the Clearing Agency, and shall have no obligation to such Note Owners.

Section 2.12.  <u>Definitive Notes</u>.  Notes initially acquired by institutional investors that are "accredited investors" within the meaning of Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act, upon initial issuance, will be issued in the form of Definitive Notes.  If (i) the Issuer advises the Indenture Trustee that the Clearing Agency is no longer willing or able to properly discharge its responsibilities with respect to the Book-Entry Notes and the Issuer is unable to locate a qualified successor or (ii) after the occurrence of an Event of Default hereunder, Note Owners of the Book-Entry Notes representing beneficial interests aggregating at least a majority of the Outstanding Balance of the Book-Entry Notes advise the Clearing Agency in writing that the continuation of a book-entry system through the Clearing Agency is no longer in the best interests of such Note Owners, then the Clearing Agency shall notify all Note Owners and the Indenture Trustee of the occurrence of any such event and of the availability of Definitive Notes to Note Owners requesting the same.  Upon surrender to the Indenture Trustee of the typewritten Notes representing the Book-Entry Notes by the Clearing Agency, accompanied by registration instructions, the Issuer shall execute and the Indenture Trustee shall authenticate the Definitive Notes in accordance with the instructions of the Clearing Agency. None of the Issuer, the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions.  Upon the issuance of Definitive Notes, the Indenture Trustee shall recognize the Holders of the Definitive Notes as Noteholders.

Section 2.13.  <u>Tax Treatment</u>.  The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes will qualify as indebtedness of the Issuer secured by the Collateral.  The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of a Note (and each Note Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes for federal, state and local income, single business and franchise tax purposes as indebtedness of the Issuer.

ARTICLE III

COVENANTS

Section 3.01.  <u>Payment of Principal and Interest</u>.  The Issuer will duly and punctually pay (or will cause to be duly and punctually paid) the principal of and interest on the Notes in accordance with the terms of the Notes and this Indenture.  Without limiting the foregoing, in accordance with Section 8.02(c), the Issuer will cause to be distributed all amounts on deposit in the Note Payment Account on a Payment Date and deposited therein pursuant to the Transfer and Servicing Agreement for the benefit of the Notes, to the Noteholders.  Amounts properly withheld under the Code by any Person from a payment to any Noteholder of interest and/or

192709 SASCO 2006-RM1
Indenture

17

CONFIDENTIAL

principal shall be considered as having been paid by the Issuer to such Noteholder for all purposes of this Indenture.

The Notes shall be non-recourse obligations of the Issuer and shall be limited in right of payment to amounts available from the Collateral as provided in this Indenture. The Issuer shall not otherwise be liable for payments of the Notes, and none of the owners, agents, officers, directors, employees, or successors or assigns of the Issuer shall be personally liable for any amounts payable, or performance due, under the Notes or this Indenture. If any other provision of this Indenture shall be deemed to conflict with the provisions of this Section 3.01, the provisions of this Section 3.01 shall control.

Section 3.02.   <u>Maintenance of Office or Agency</u>.  The Note Registrar on behalf of the Issuer will maintain an office or agency where Notes may be surrendered for registration of transfer or exchange, and where notices and demands to or upon the Issuer in respect of the Notes and this Indenture may be delivered to the Indenture Trustee, which initially shall be the applicable Corporate Trust Office. The Issuer hereby initially appoints the Indenture Trustee to serve as its agent for the foregoing purposes and to serve as Paying Agent with respect to the Notes. The Issuer will give prompt written notice to the Indenture Trustee of the appointment of new or additional paying agents for the Notes, the location, and of any change in the location, of any such office or agency. If at any time the Issuer shall fail to maintain any such office or agency or shall fail to furnish the Indenture Trustee with the address thereof, such surrenders, notices and demands may be made or delivered at the applicable Corporate Trust Office, and the Issuer hereby appoints the Indenture Trustee as its agent to receive all such surrenders, notices and demands.

Section 3.03.   <u>Money for Payments to be Held in Trust</u>.  As provided in Section 8.02, all payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Trust Accounts shall be made on behalf of the Issuer by the Indenture Trustee or by another Paying Agent, and no amounts so withdrawn from the Trust Accounts for payments of Notes shall be paid over to the Issuer except as provided in this Section.

On or before the Master Servicer Remittance Date, the Issuer shall deposit or cause to be deposited in the Note Payment Account an aggregate sum sufficient to pay the amounts then becoming due under the Notes, such sum to be held in trust for the benefit of the Persons entitled thereto, and (unless the Paying Agent is the Indenture Trustee) shall promptly notify the Indenture Trustee of its action or failure so to act.

Any Paying Agent shall be appointed by Issuer Order with written notice thereof to the Indenture Trustee. Any Paying Agent appointed by the Issuer shall be a Person that would be eligible to be Indenture Trustee hereunder as provided in Section 6.11. The Issuer shall not appoint any Paying Agent (other than the Indenture Trustee) which is not, at the time of such appointment, a Depository Institution.

The Issuer shall cause each Paying Agent other than the Indenture Trustee to execute and deliver to the Indenture Trustee an instrument in which such Paying Agent shall agree with the

CONFIDENTIAL

Indenture Trustee (and if the Indenture Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section, that such Paying Agent will:

(i)     hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(ii)     give the Indenture Trustee notice of any default by the Issuer of which the Paying Agent has actual knowledge in the making of any payment required to be made with respect to the Notes;

(iii)     at any time during the continuance of any such default, upon the written request of the Indenture Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

(iv)     immediately resign as a Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in trust for the payment of Notes if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment; and

(v)     comply with all requirements of the Code with respect to the withholding from any payments made by it on any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; *provided, however*, that with respect to reporting requirements applicable to original issue discount, the accrual of market discount or the amortization of premium on the Notes, the Issuer shall have first provided the calculations pertaining thereto and the amount of any resulting withholding taxes to the Indenture Trustee.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by Issuer Order direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for two years after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer on Issuer Request; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; *provided, however*, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in a newspaper published in the English language, customarily published on each Business Day and of general circulation in The City of New York (including, but not

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

limited to, *The Bond Buyer*), notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer. The Indenture Trustee shall also adopt and employ, at the expense and direction of the Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to Holders whose Notes have been called but have not been surrendered for redemption or whose right to or interest in moneys due and payable but not claimed is determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for each such Holder).

Section 3.04.  Existence.  (a) The Issuer will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuer hereunder is or becomes, organized under the laws of any other State or of the United States of America, in which case the Issuer will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction) and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Collateral and each other instrument or agreement included in the Collateral.

(b) Any successor to the Owner Trustee appointed pursuant to Section 9.03 of the Trust Agreement shall be the successor Owner Trustee under this Indenture without the execution or filing of any paper, instrument or further act to be done on the part of the parties hereto.

(c) Upon any consolidation or merger of or other succession to the Owner Trustee, the Person succeeding to the Owner Trustee under the Trust Agreement may exercise every right and power of the Owner Trustee under this Indenture with the same effect as if such Person had been named as the Owner Trustee herein.

Section 3.05.  Protection of Collateral.  The Issuer will from time to time execute, deliver and file all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)     maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof,

(ii)    perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii)   enforce any rights with respect to the Collateral; or

(iv)    preserve and defend title to the Collateral and the rights of the Indenture Trustee and the Noteholders in such Collateral against the claims of all persons and parties.

The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact to execute any financing statement, continuation statement or other instrument required to be executed pursuant to this Section 3.05 and hereby authorizes the Indenture Trustee to file in any

192709 SASCO 2006-RM1
Indenture

20

CONFIDENTIAL

filing office any financing statement, amendment to financing statement, or continuation statement required to be executed pursuant to this Section 3.05.

Section 3.06.    Opinions as to Collateral.    On the Closing Date, the Issuer shall furnish to the Administrator and the Indenture Trustee an Opinion of Counsel to the effect that either, in the opinion of such counsel, such action has been taken with respect to the recording and filing of this Indenture, any indentures supplemental hereto, and any other requisite documents, and with respect to the execution and filing of any financing statements and continuation statements, as are necessary to make effective the lien and security interest of this Indenture, or stating that, in the opinion of such counsel, no such action is necessary to make such lien and security interest effective.

Section 3.07.    Performance of Obligations; Servicing of the Mortgage Loans.    (a) The Issuer will not take any action and will use its best efforts not to permit any action to be taken by others that would release any Person from any of such Person's material covenants or obligations under any instrument or agreement included in the Collateral or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except as expressly provided in this Indenture, the Transfer and Servicing Agreement or such other instrument or agreement.

(b) The Issuer may contract with other Persons to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuer shall be deemed to be action taken by the Issuer.  Initially, the Issuer has contracted with the Depositor and the Administrator to assist the Issuer in performing its duties under this Indenture.

(c) The Issuer will punctually perform and observe all of its obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included in the Collateral, including but not limited to filing or causing to be filed all financing statements and continuation statements required to be filed by the terms of this Indenture and the Transfer and Servicing Agreement in accordance with and within the time periods provided for herein and therein.

(d) If a responsible officer of the Owner Trustee shall have written notice or actual knowledge of the occurrence of an Event of Master Servicer Default under Section 4.17 of the Transfer and Servicing Agreement, the Issuer shall promptly notify the Indenture Trustee and each Rating Agency thereof.

(e) As promptly as possible after the giving of notice of termination to the Master Servicer of the Master Servicer's rights and powers pursuant to Section 4.17 of the Transfer and Servicing Agreement, the Indenture Trustee shall appoint a successor to the master servicer (the "Successor Master Servicer") subject to the provisions of Section 4.17 of the Transfer and Servicing Agreement, and such Successor Master Servicer shall accept its appointment in accordance with the provisions of Section 4.17 of the Transfer and Servicing Agreement.

192709 SASCO 2006-RM1
Indenture

21

CONFIDENTIAL

(f) Upon any termination of the Master Servicer's rights and powers pursuant to the Transfer and Servicing Agreement, the Indenture Trustee shall promptly notify the Owner Trustee, each Rating Agency and the Securityholders in accordance with Section 4.17 of the Transfer and Servicing Agreement. As soon as a Successor Master Servicer is appointed, the Indenture Trustee shall notify the Owner Trustee, each Rating Agency and the Securityholders of such appointment, specifying in such notice the name and address of such Successor Master Servicer.

(g) Without derogating from the absolute nature of the assignment granted to the Indenture Trustee under this Indenture or the rights of the Indenture Trustee hereunder, the Issuer agrees (i) that it will not, without the prior written consent of the Indenture Trustee or the Holders of at least a majority in Outstanding Balance of the Notes affected thereby, amend, modify, waive, supplement, terminate or surrender, or agree to any amendment, modification, supplement, termination, waiver or surrender of, the terms of any Collateral or the Basic Documents (except to the extent otherwise provided in any such Basic Document), or waive timely performance or observance by the Master Servicer or the Depositor of its respective duties under the Transfer and Servicing Agreement; and (ii) that any such amendment shall not (A) increase or reduce in any manner the amount of, or accelerate or delay the timing of, distributions that are required to be made for the benefit of the Noteholders or (B) reduce the aforesaid percentage of the Notes that is required to consent to any such amendment, without the consent of the Holders of all the Outstanding Notes affected thereby. If any such amendment, modification, supplement or waiver shall be so consented to by the Indenture Trustee or such Holders, the Issuer agrees, promptly following a request by the Indenture Trustee to do so, to execute and deliver, in its own name and at its own expense, such agreements, instruments, consents and other documents as the Indenture Trustee may deem necessary or appropriate in the circumstances.

Section 3.08.   <u>Negative Covenants</u>.  So long as any Notes are Outstanding, the Issuer shall not:

(i)     except as expressly permitted by this Indenture or the Transfer and Servicing Agreement, sell, transfer, exchange or otherwise dispose of any of the properties or assets of the Issuer, including those included in the Collateral, unless directed to do so by the Indenture Trustee;

(ii)    claim any credit on, or make any deduction from the principal or interest payable in respect of, the Notes (other than amounts properly withheld from such payments under the Code) or assert any claim against any present or former Noteholder by reason of the payment of the taxes levied or assessed upon any part of the Collateral;

(iii)   (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof or any interest therein or

CONFIDENTIAL

the proceeds thereof (other than tax liens, mechanics' liens and other liens that arise by operation of law, in each case with respect to any Collateral and arising solely as a result of an action or omission of a Mortgagor or as otherwise permitted in the Transfer and Servicing Agreement) or (C) permit the lien of this Indenture not to constitute a valid first priority (other than with respect to any such tax, mechanics' or other lien) or as otherwise permitted in the Transfer and Servicing Agreement) security interest in the Collateral;

      (iv)     dissolve or liquidate in whole or in part or merge or consolidate with any other Person;

      (v)     remove the Administrator without cause unless the Rating Agency Condition shall have been satisfied in connection with such removal;

      (vi)     take any other action or fail to take any action which may cause the Issuer to be taxable as (a) an association pursuant to Section 7701 of the Code and the corresponding regulations, (b) a publicly traded partnership taxable as a corporation pursuant to Section 7704 of the Code and the corresponding regulations or (c) as a taxable mortgage pool pursuant to Section 7701(i) of the Code and the corresponding regulations; or

      (vii)     except with the prior written consent of the Noteholders, take any action described in Section 5.06 of the Trust Agreement.

Section 3.09.  <u>Annual Statement as to Compliance</u>.  The Issuer will deliver to the Indenture Trustee, within 120 days after the end of each fiscal year of the Issuer (commencing with the fiscal year 2006), an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

      (i)     a review of the activities of the Issuer during such year and of its performance under this Indenture has been made under such Authorized Officer's supervision; and

      (ii)     to the best of such Authorized Officer's knowledge, based on such review, the Issuer has complied with all conditions and covenants under this Indenture throughout such year or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

Section 3.10.  [Reserved]

Section 3.11.  [Reserved]

Section 3.12.  <u>No Other Business</u>.  The Issuer shall not engage in any business other than financing, purchasing, owning, selling and managing the Collateral in the manner contemplated by this Indenture and the Basic Documents and activities incidental thereto.

Section 3.13.  <u>No Borrowing</u>.  The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness other than the Notes.

CONFIDENTIAL

Section 3.14. <u>Master Servicer's Obligations</u>. The Issuer shall cause the Master Servicer to comply with Sections 6.02, 6.04 and 8.04 of the Transfer and Servicing Agreement.

Section 3.15. <u>Guarantees, Loans, Advances and Other Liabilities</u>. Except as contemplated by the Transfer and Servicing Agreement or this Indenture, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.16. <u>Capital Expenditures</u>. The Issuer shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.17. <u>Removal of Administrator</u> . So long as any Notes are Outstanding, the Issuer shall not remove the Administrator without cause unless the Issuer has received a letter from each Rating Agency to the effect that such removal will not cause the then-current ratings on the Notes and the Certificates to be qualified, reduced or withdrawn.

Section 3.18. <u>Restricted Payments</u>. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer or to the Master Servicer, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; *provided, however*, the Issuer may make, or cause to be made, (x) payments and distributions as contemplated by, and to the extent funds are available for such purpose under, the Transfer and Servicing Agreement, this Indenture or the Trust Agreement and (y) payments to the Administrator pursuant to the Administration Agreement. The Issuer will not, directly or indirectly, make payments to or distributions from the Collection Account except in accordance with this Indenture and the Basic Documents.

Section 3.19. <u>Notice of Events of Default</u>. The Issuer shall promptly, and in no event more than three Business Days following such event, give the Indenture Trustee and each Rating Agency written notice of each Event of Default hereunder, and each default on the part of the Master Servicer or the Depositor of its obligations under the Transfer and Servicing Agreement, to the extent a responsible officer of the Owner Trustee shall have written notice or actual knowledge thereof.

Section 3.20. <u>Further Instruments and Acts</u>. Upon the request of the Indenture Trustee, the Issuer will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.21. <u>Covenants of the Issuer</u>. All covenants of the Issuer in this Indenture are covenants of the Issuer and are not covenants of the Owner Trustee in its individual capacity. The Owner Trustee is, and any successor Owner Trustee under the Trust Agreement will be,

192709 SASCO 2006-RM1
Indenture

24

CONFIDENTIAL

entering into this Indenture on behalf of the Issuer solely as Owner Trustee under the Trust Agreement and not in its respective individual capacity, and in no case whatsoever shall the Owner Trustee or any such successor Owner Trustee be personally liable on, or for any loss in respect of, any of the statements, representations, warranties or obligations of the Issuer hereunder, as to all of which the parties hereto agree to look solely to the property of the Issuer.

Section 3.22.   <u>Representations and Warranties of the Issuer</u>.   (a) With respect to the Mortgage Notes, the Issuer represents and warrants that:

(i)      This Indenture creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code (the "UCC") in the Mortgage Notes in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such against creditors of and purchasers from the Issuer;

(ii)     The Mortgage Notes constitute "instruments" within the meaning of the applicable UCC;

(iii)    The Issuer owns and has good title to the Mortgage Notes free and clear of any lien, claim or encumbrance of any Person;

(iv)     The Issuer has received all consents and approvals required by the terms of the Mortgage Notes to the pledge of the Mortgage Notes hereunder to the Indenture Trustee;

(v)      All original executed copies of each Mortgage Note have been or will be delivered to the Custodian, as set forth in the Transfer and Servicing Agreement;

(vi)     The Issuer has received a written acknowledgement from the Custodian that it is holding the Mortgage Notes solely on behalf and for the benefit of the Indenture Trustee;

(vii)    Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Notes.  The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of the collateral covering the Mortgage Notes other than a financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated.  The Issuer is not aware of any judgment or tax lien filings against the Issuer; and

(viii)   None of the Mortgage Notes has any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee; and

(b) With respect to the Funding Account, the Issuer represents and warrants that:

(i)      This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in the Financial Assets credited to the Funding Account (together,

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

the "Funding Account Collateral") in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such against creditors of and purchasers from the Issuer;

(ii)    All of the Funding Account Collateral has been credited to the Funding Account. The Securities Intermediary for the Funding Account has agreed to treat all assets credited to the Funding Account as Financial Assets;

(iii)    The Issuer owns and has good title to the Funding Account Collateral, free and clear of any lien, claim or encumbrance of any Person;

(iv)    The Issuer has received all consents and approvals required by the terms of the Funding Account Collateral to the transfer to the Indenture Trustee of its interest and rights in the Funding Account Collateral hereunder;

(v)    The Issuer has delivered to the Indenture Trustee a fully executed agreement pursuant to which the Securities Intermediary has agreed to comply with all instructions originated by the Indenture Trustee relating to the Funding Account without further consent by the Issuer;

(vi)    Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Funding Account Collateral. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Funding Account Collateral other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer; and

(vii)    The Funding Account is not in the name of any Person other than the Issuer or the Indenture Trustee, in its capacity as Securities Intermediary. The Issuer has not consented to the Securities Intermediary of the Funding Account to comply with Entitlement Orders of any Person other than the Indenture Trustee.

(c) The representations and warranties set forth in this Section 3.22 shall survive the Closing Date and shall not be waived.

ARTICLE IV

SATISFACTION AND DISCHARGE

Section 4.01.  Satisfaction and Discharge of Indenture.  This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Sections 3.03 and 4.02) and (v) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when either (I) the Transfer and Servicing Agreement has been terminated pursuant to Section 10.01 thereof or (II)

(A) either

(1) all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 2.05 and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation; or

(2) all Notes not theretofore delivered to the Indenture Trustee for cancellation

a.      have become due and payable,

b.      will become due and payable at the applicable Maturity Date within one year, or

c.      are to be called for redemption within one year under arrangements satisfactory to the Indenture Trustee for the giving of notice of redemption by the Indenture Trustee in the name, and at the expense, of the Issuer,

and the Issuer, in the case of a., b. or c. above, has irrevocably deposited or caused to be irrevocably deposited with the Indenture Trustee cash or direct obligations of or obligations guaranteed by the United States of America (which will mature prior to the date such amounts are payable), in trust for such purpose, in an amount sufficient to pay and discharge the entire indebtedness on such Notes not theretofore delivered to the Indenture Trustee for cancellation when due to the Maturity Date or Redemption Date, as the case may be;

(B) the Issuer has paid or caused to be paid all other sums payable hereunder and under the other Basic Documents by the Issuer;

(C) the Issuer has delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel meeting the applicable requirements of Section 11.01 and, subject to Section 11.02, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with; and

(D) the Issuer has delivered to each Rating Agency notice of such satisfaction and discharge.

Section 4.02.   <u>Application of Trust Money</u>.  All moneys deposited with the Indenture Trustee pursuant to Sections 3.03 and 4.01 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent, as the Indenture Trustee may determine, to the Holders of the particular Notes for the payment or redemption of which such moneys have been deposited with

CONFIDENTIAL

the Indenture Trustee, of all sums due and to become due thereon for principal and interest; but such moneys need not be segregated from other funds except to the extent required herein or in the Transfer and Servicing Agreement or required by law.

Section 4.03.  <u>Repayment of Moneys Held by Paying Agent</u>.  In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all moneys then held by any Paying Agent other than the Indenture Trustee under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuer, be paid to the Indenture Trustee to be held and applied according to Section 3.03 and thereupon such Paying Agent shall be released from all further liability with respect to such moneys.

ARTICLE V

REMEDIES

Section 5.01.  <u>Events of Default</u>.  (a) "Event of Default", wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

> (i)    subject to Section 5.01(b), default in the payment of any Current Interest on any Note when the same becomes due and payable under Section 6.05 of the Transfer and Servicing Agreement, and such default shall continue for a period of five days;

> (ii)    failure to pay the entire principal of any Note when the same becomes due and payable under the Transfer and Servicing Agreement or on the applicable Maturity Date;

> (iii)    failure to observe or perform any covenant or agreement of the Issuer made in this Indenture (other than a covenant or agreement, a default in the observance or performance of which is elsewhere in this Section specifically dealt with), or any representation or warranty of the Issuer made in this Indenture or in any certificate or other writing delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Holders of at least 25% of the Outstanding Balance of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of Default hereunder;

> (iv)    the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Collateral in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee,

**CONFIDENTIAL**

custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Collateral, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(v)    the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Collateral, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

The Issuer shall deliver to the Indenture Trustee, within five days after the occurrence thereof, written notice in the form of an Officer's Certificate of any event which with the giving of notice and the lapse of time would become an Event of Default under clause (iii), its status and what action the Issuer is taking or proposes to take with respect thereto.

(b) The failure to pay the full amount of interest payable pursuant to Section 6.05 of the Transfer and Servicing Agreement to the Holders of any Non-Priority Class Note shall not constitute an Event of Default under Section 5.01(a).

Section 5.02.    Acceleration of Maturity; Rescission and Annulment.  If an Event of Default should occur and be continuing, then, in the case of a default specified in Section 5.01(a) (ii) through (v) the Indenture Trustee may, and in the case of any Event of Default the Indenture Trustee shall, at the written direction of the Holders of Notes representing not less than a majority of the Outstanding Balance of the Priority Class Notes, declare all the Notes to be immediately due and payable, by a notice in writing to the Issuer (and to the Indenture Trustee if given by Noteholders), and upon any such declaration the unpaid principal amount of such Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

At any time after such declaration of acceleration of maturity has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter in this Article Five provided, the Holders of Notes representing a majority of the Outstanding Balance of the Priority Class Notes, by written notice to the Issuer and the Indenture Trustee, may rescind and annul such declaration and its consequences if:

(i)    the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

(A)    all payments of principal of and interest on all affected Priority Class Notes and all other amounts that would then be due hereunder or upon such Notes if the Event of Default giving rise to such acceleration had not occurred; and

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

(B)     all sums paid by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and indemnity amounts of the Indenture Trustee and its agents and counsel; and

(ii)     all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

The Holders of Non-Priority Class Notes shall have no right to exercise any Noteholders' rights referred to in this Article Five, except to the extent expressly provided herein.

Section 5.03.   Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.  (a) The Issuer covenants that if (i) default is made in the payment of any Current Interest on any Priority Class Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) default is made in the payment of the principal of any Note when the same becomes due and payable on the applicable Maturity Date, the Issuer will, upon demand of the Indenture Trustee, pay to it, for the benefit of the Holders of the Notes, the whole amount then due and payable on such Notes for principal and interest, with interest on the overdue principal and, to the extent payment at such rate of interest shall be legally enforceable, on overdue installments of interest at the rate borne by the Notes and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and indemnity amounts of the Indenture Trustee and its agents and counsel.

(b) In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuer upon such Notes and collect in the manner provided by law out of the property of the Issuer upon such Notes, wherever situated, the moneys adjudged or decreed to be payable.

(c) If an Event of Default occurs and is continuing, the Indenture Trustee may, and at the direction of the Holders of Priority Class Notes representing not less than a majority of the Outstanding Balance thereof, as more particularly provided in Section 5.04, shall proceed to protect and enforce its rights and the rights of the Noteholders, by such appropriate Proceedings as the Indenture Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d) In case there shall be pending, relative to the Issuer or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Collateral, Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, or liquidator, sequestrator or similar official shall have been appointed for or

CONFIDENTIAL

taken possession of the Issuer or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuer or other obligor upon the Notes, or to the creditors or property of the Issuer or such other obligor, the Indenture Trustee, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings or otherwise:

(i)     to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence or bad faith) and of the Noteholders allowed in such Proceedings;

(ii)    unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)   to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders and of the Indenture Trustee on their behalf; and

(iv)    to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the Holders of Notes allowed in any Proceedings relative to the Issuer, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Indenture Trustee and, in the event that the Indenture Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred by it or its agents, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee except as a result of negligence or bad faith.

(e)  Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)  All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or

CONFIDENTIAL

the production thereof in any trial or other Proceedings relative thereto, and any such action or Proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes.

(g) In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the Holders of the Notes, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04.    Remedies; Priorities.  (a) If an Event of Default shall have occurred and be continuing, the Indenture Trustee may, and at the written direction of Holders of Priority Class Notes representing a majority of the Outstanding Balance thereof shall, do one or more of the following (subject to Section 5.05):

(i)    institute Proceedings in its own name and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, enforce any judgment obtained and collect from the Issuer and any other obligor upon such Notes moneys adjudged due;

(ii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Collateral;

(iii)    exercise any remedies of a secured party under the Relevant UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and the Holders of the Notes; and

(iv)    sell the Collateral or any portion thereof or rights or interest therein, at one or more public or private sales called and conducted in any manner permitted by law;

*provided, however,* that the Indenture Trustee may not sell or otherwise liquidate any Collateral following an Event of Default, other than an Event of Default described in Section 5.01(i) or (ii), unless (A) the Holders of 100% of the Outstanding Balance of the Notes consent thereto, (B) the proceeds of such sale or liquidation distributable to the Noteholders are sufficient to discharge in full all amounts then due and unpaid upon such Notes for principal and interest or (C) the Indenture Trustee determines that the Collateral will not continue to provide sufficient funds for the payment of principal of and interest on the Notes as they would have become due if the Notes had not been declared due and payable, and the Indenture Trustee obtains the consent of Holders of 66-2/3% of the Outstanding Balance of the Notes.  In determining such sufficiency or insufficiency with respect to clauses (B) and (C), the Indenture Trustee may, but need not, obtain at the expense of the Issuer reimburseable pursuant to Section 6.07 hereof and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Collateral for such purpose.

CONFIDENTIAL

(b) If the Indenture Trustee collects any money or property pursuant to this Article Five, it shall pay out the money or property in the following order:

*first*: to the Indenture Trustee, for any costs or expenses incurred by it in connection with the enforcement of the remedies provided for in this Article V and for any other unpaid amounts due to the Indenture Trustee hereunder, to the Owner Trustee, to the extent of any fees and expenses due and owing to it (including pursuant to Section 7.03 of the Trust Agreement) and for any other unpaid amounts due to the Owner Trustee hereunder or to the Administrator under the Administration Agreement;

*second*: to the Holders of Class A1 Notes and the Class A-IO Notes, concurrently, in proportion to the amount of interest otherwise distributable thereon, amounts due and unpaid thereon for interest;

*third*: to the Holders of Class A1 Notes and the Class A-IO Notes concurrently, amounts due and unpaid thereon for principal on the Class A1 Notes, until the Outstanding Balance of such respective Class of Notes has been reduced to zero and to the Class A-IO Notes, the Class A-IO Redemption Price;

*fourth*: to Holders of each Class M1 Notes, amounts due and unpaid thereon for interest;

*fifth*: to Holders of the Class M1 Notes, amounts due and unpaid thereon for principal, until the Outstanding Balance of such Class of Notes has been reduced to zero;

*sixth*: to Holders of each Class M2 Notes, amounts due and unpaid thereon for interest;

*seventh*: to Holders of the Class M2 Notes, amounts due and unpaid thereon for principal, until the Outstanding Balance of such Class of Notes has been reduced to zero;

*eighth*: to Lehman Bank, the related Future Loan Commitment; and

*ninth*: to the Owner Trustee or its Paying Agent for any amounts to be distributed to the holders of the Certificates.

The Indenture Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section. At least 15 days before such record date, the Issuer shall mail to each Noteholder and the Indenture Trustee a notice that states the record date, the payment date and the amount to be paid.

Section 5.05. Optional Preservation of the Collateral. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, but need not, elect to maintain possession of the Collateral. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes, and the Indenture Trustee shall take such desire into account when determining

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

whether or not to maintain possession of the Collateral. In determining whether to maintain possession of the Collateral, the Indenture Trustee may, but need not, obtain at the expense of the Issuer reimburseable pursuant to Section 6.07 hereof and rely upon an opinion of an independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Collateral for such purpose.

Section 5.06.   Limitation of Suits.  Other than as otherwise expressly provided herein in the case of an Event of Default, no Holder of any Note shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

   (i)    such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

   (ii)    the Holders of not less than 25% of the Outstanding Balance of the Notes have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

   (iii)    such Holder or Holders have offered to the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in complying with such request;

   (iv)    the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such Proceedings; and

   (v)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Holders of a majority of the Outstanding Balance of the Notes.

It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

In the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Holders of Notes, each representing less than a majority of the Outstanding Balance of the Notes, the Indenture Trustee shall act at the direction of the group representing a greater percentage of the Notes.

Section 5.07.   Unconditional Rights of Noteholders To Receive Principal and Interest. Notwithstanding any other provisions in this Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof expressed in such Note or in this Indenture (or, in the case of redemption, on or after the Redemption Date) and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

Section 5.08.   Restoration of Rights and Remedies.  If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then and in every such case the Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.09.   Rights and Remedies Cumulative.  No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise.  The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10.   Delay or Omission Not a Waiver.  No delay or omission of the Indenture Trustee or any Holder of any Note to exercise any right or remedy accruing upon any Default or Event of Default shall impair any such right or remedy or constitute a waiver of any such Default or Event of Default or an acquiescence therein.  Every right and remedy given by this Article Five or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11.   Control by Noteholders.  Except as otherwise provided in Section 5.02, the Holders of a majority of the Outstanding Balance of the Notes shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or  exercising any trust or power conferred on the Indenture Trustee; provided that:

(i)      such direction shall not be in conflict with any rule of law or with this Indenture;

(ii)      subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or liquidate the Collateral shall be by Holders of Notes representing not less than 100% of the Outstanding Balance of the Notes;

(iii)      if the conditions set forth in Section 5.05 have been satisfied and the Indenture Trustee elects to retain the Collateral pursuant to such Section, then any direction to the Indenture Trustee by Holders of Notes representing less than 100% of the Outstanding Balance of the Notes to sell or liquidate the Collateral shall be of no force and effect; and

(iv)      the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction.

CONFIDENTIAL

Notwithstanding the rights of the Noteholders set forth in this Section, subject to Section 6.01(g), the Indenture Trustee need not take any action that it determines might involve it in liability or might materially adversely affect the rights of any Noteholders not consenting to such action.

Section 5.12.   <u>Waiver of Past Defaults</u>.  Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02, the Holders of Notes of not less than a majority of the Outstanding Balance of the Notes may waive, in writing, any past Default or Event of Default and its consequences except a Default (a) in payment of principal of or interest on any of the Notes or (b) in respect of a covenant or provision hereof which cannot be modified or amended without the consent of the Holder of each Note.  In the case of any such waiver, the Issuer, the Indenture Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

Upon any such waiver, such Default shall cease to exist and be deemed to have been cured and not to have occurred, and any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereto.

Section 5.13.   <u>Undertaking for Costs</u>.  All parties to this Indenture agree, and each Holder of a Note by such Holder's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the Outstanding Balance of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture (or, in the case of redemption, on or after the Redemption Date).

Section 5.14.   <u>Waiver of Stay or Extension Laws</u>.  The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.15.   <u>Action on Notes</u>.  The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or

192709 SASCO 2006-RM1
Indenture

36

CONFIDENTIAL

application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Collateral or upon any of the assets of the Issuer. Any money or property collected by the Indenture Trustee shall be applied in accordance with Section 5.04(b).

Section 5.16.  _Performance and Enforcement of Certain Obligations._ (a) Promptly following a request from the Indenture Trustee to do so and at the Issuer's expense, the Issuer shall take all such lawful action as the Indenture Trustee may request to compel or secure the performance and observance by the Depositor or the Master Servicer, as applicable, of each of their obligations to the Issuer under or in connection with the Transfer and Servicing Agreement, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuer under or in connection with the Transfer and Servicing Agreement to the extent and in the manner directed by the Indenture Trustee, including the transmission of notices of default on the part of the Depositor or the Master Servicer under the Transfer and Servicing Agreement and the institution of legal or administrative actions or proceedings to compel or secure performance by the Depositor or the Master Servicer of each of their obligations under the Transfer and Servicing Agreement.

(b) If an Event of Default has occurred and is continuing, the Indenture Trustee may, and at the direction (which direction shall be in writing or by telephone (confirmed in writing promptly thereafter)) of the Holders of 51% of the Outstanding Balance of the Priority Class Notes shall, exercise all rights, remedies, powers, privileges and claims of the Issuer against the Depositor or the Master Servicer under or in connection with the Transfer and Servicing Agreement, including the right or power to take any action to compel or secure performance or observance by the Depositor or the Master Servicer, of each of their obligations to the Issuer thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the Transfer and Servicing Agreement, and any right of the Issuer to take such action shall be suspended.

ARTICLE VI

THE INDENTURE TRUSTEE

Section 6.01.  _Duties of Indenture Trustee._ (a) If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b) Except during the continuance of an Event of Default:

(i)     the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

(ii)    in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Indenture Trustee and on their face conforming to the requirements of this Indenture; however, the Indenture Trustee shall examine the certificates and opinions to determine whether or not they conform on their face to the requirements of this Indenture.

(c) The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, its own willful misconduct or its own bad faith, except that:

(i)    this paragraph does not limit the effect of paragraph (b) of this Section;

(ii)    the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts;

(iii)    the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with this Indenture or upon a direction received by it from the requisite Noteholders pursuant to Article V; and

(iv)    the Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of (a) any failure by the Issuer to comply with its obligations hereunder or in the Basic Documents or (b) any Default or Event of Default, unless a Responsible Officer of the Indenture Trustee obtains actual knowledge of such Default or Event of Default or shall have received written notice thereof. In the absence of such actual knowledge or written notice, the Indenture Trustee may conclusively assume that there is no Default or Event of Default or any failure by the Issuer to comply with the provisions hereof or under any other Basic Document.

(d) Every provision of this Indenture that in any way relates to the Indenture Trustee is subject to the provisions of this Section and Section 6.02.

(e) The Indenture Trustee shall not be liable for indebtedness evidenced by or arising under any of the Basic Documents, including principal of or interest on the Notes, or interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer.

(f) Money held in trust by the Indenture Trustee need not be segregated from other funds except to the extent required by law or the terms of this Indenture or the Transfer and Servicing Agreement.

(g) No provision of this Indenture shall require the Indenture Trustee to expend, advance or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it *provided, however,* that the Indenture Trustee shall not

192709 SASCO 2006-RM1
Indenture

38

**CONFIDENTIAL**

refuse or fail to perform any of its duties hereunder solely as a result of nonpayment of its normal fees and expenses.

(h) Every provision of this Indenture or any Basic Document relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section and Section 6.02.

(i) The Indenture Trustee shall execute and deliver the Transfer and Servicing Agreement and such other documents and instruments as shall be necessary or appropriate in accordance with its duties and obligations under this Indenture.

(j) The Indenture Trustee shall not have any duty or obligation to manage, make any payment with respect to, register, record, sell, dispose of, or otherwise deal with the Collateral, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Indenture Trustee is a party, except as expressly provided (i) in accordance with the powers granted to and the authority conferred upon the Indenture Trustee pursuant to this Indenture or any other Basic Document, and (ii) in accordance with any document or instruction delivered to the Indenture Trustee pursuant the terms of this Indenture; and no implied duties or obligations shall be read into this Indenture or any Basic Document against the Indenture Trustee. The Indenture Trustee shall have no responsibility to prepare or file any Commission filing for the Trust or to record this Indenture or any Basic Document or to prepare or file any tax return for the Issuer. The Indenture Trustee nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any liens on any part of the Collateral that result from actions by, or claims against, itself that are not related to the administration of the Collateral.

Section 6.02.  <u>Rights of Indenture Trustee</u>.  (a) The Indenture Trustee may rely on any document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or matter stated in the document.

(b) Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel, which shall not be at the expense of the Indenture Trustee. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on an Officer's Certificate or Opinion of Counsel. The right of the Indenture Trustee to perform any discretionary act enumerated in this Indenture or in any Basic Document shall not be construed as a duty and the Indenture Trustee shall not be answerable for other than its negligence or willful misconduct in the performance of such act.

(c) The Indenture Trustee may, at the expense of the Issuer execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee and the Indenture Trustee shall not be responsible for any misconduct or negligence on the part of such agent, attorney, custodian or nominee appointed by the Indenture Trustee with due care.

(d) The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; provided, that the Indenture Trustee's conduct does not constitute willful misconduct, negligence or bad faith.

CONFIDENTIAL

(e) The Indenture Trustee may consult with counsel, and any Opinion of Counsel with respect to legal matters relating to this Indenture, any Basic Document and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with any Opinion of Counsel of such counsel.

(f) In the event that the Indenture Trustee is also acting as Paying Agent, Note Registrar, Certificate Paying Agent, Certificate Registrar or Administrator hereunder or under any Basic Document, the rights and protections afforded to the Indenture Trustee pursuant to this Article Six shall be afforded to such Paying Agent, Note Registrar and Administrator.

(g) The Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Majority Noteholders; provided, however, that if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee may require reasonable indemnity against such cost, expense or liability as a condition to taking any such action. The reasonable expense of every such investigation shall be paid by the Issuer or, if paid by the Indenture Trustee, shall be repaid by the Issuer upon demand.

(h) The right of the Indenture Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, and the Indenture Trustee shall not be answerable for other than its negligence or willful misconduct in the performance of such act.

(i) The Indenture Trustee shall not be required to give any bond or surety in respect of the execution of the powers granted hereunder.

Section 6.03. Individual Rights of Indenture Trustee. The Indenture Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not Indenture Trustee. Any Paying Agent, Note Registrar, co-registrar or co-paying agent may do the same with like rights. However, the Indenture Trustee must comply with Section 6.11.

Section 6.04. Indenture Trustee's Disclaimer. The Indenture Trustee shall not be responsible for and makes no representation as to the validity or adequacy of any of the Basic Documents or the Notes or the sufficiency of the Collateral; it shall not be accountable for the Issuer's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Issuer, the Master Servicer or the Servicer in this Indenture, any Basic Document or in any other document issued in connection with the sale of the Notes or in the Notes other than the Indenture Trustee's certificate of authentication.

The Indenture Trustee shall not have any responsibility for establishing or maintaining the tax treatment of the Notes or for preparing, executing or filing any tax returns or reports of any kind or nature under the laws of any jurisdiction with respect to the Issuer or the Notes.

192709 SASCO 2006-RM1
Indenture

40

CONFIDENTIAL

Section 6.05.  <u>Notice of Defaults</u>.  If a Default occurs and is continuing and if a Responsible Officer of the Indenture Trustee has actual knowledge thereof, the Indenture Trustee shall give prompt written notice thereof to each Noteholder.

Section 6.06.  <u>Reports by Indenture Trustee to Holders</u>.  The Indenture Trustee shall deliver to each Noteholder such information with respect to the Notes as may be required to enable such holder to prepare its federal and state income tax returns and shall file such information returns with the Internal Revenue Service with respect to payments or accruals of interest on the Notes as are required to be filed under the Code or applicable Treasury Regulations.

**CONFIDENTIAL**

Section 6.07.    <u>Compensation and Indemnity</u>.  The Indenture Trustee shall be entitled, as compensation for its services, to the Indenture Trustee Fee, as provided in the Transfer and Servicing Agreement.  The Indenture Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust.  The Indenture Trustee and any co-trustee shall be reimbursed by the Issuer, for all reasonable ordinary out-of-pocket expenses incurred or made by it, including costs of collection, in addition to the compensation for its services (as provided in the Transfer and Servicing Agreement).  In addition, the Indenture Trustee shall be reimbursed by Lehman Brothers Inc. for any other reasonable expenses (documented to the satisfaction of Lehman Brothers Inc., in its reasonable discretion) that are not reimbursed by the Issuer pursuant to the immediately preceding sentence.  Reimburseable expenses under this Section shall include the reasonable compensation and expenses, disbursements and advances of the Indenture Trustee's agents, counsel, accountants and experts.  The Issuer shall indemnify the Indenture Trustee, any co-trustee and their respective employees, directors and agents against any and all claim, loss, liability or expense (including attorneys' fees) incurred by it in connection with the administration of this trust and the performance of its duties hereunder or under any Basic Document, including, without limitation, the execution and filing of any information returns and being the mortgagee of record with respect to the Mortgage Loans.  The Indenture Trustee or co-trustee, as applicable, shall notify the Issuer and the Administrator promptly of any claim for which it may seek indemnity.  Failure by the Indenture Trustee or the co-trustee, as applicable, to so notify the Issuer and the Administrator shall not relieve the Issuer or the Administrator of its obligations hereunder.  The Issuer shall defend any such claim, and the Indenture Trustee and any co-trustee may have separate counsel and the Issuer shall pay the fees and expenses of such counsel.  The Issuer shall not be required to reimburse any expense or indemnify against any loss, liability or expense incurred by the Indenture Trustee or any co-trustee through the Indenture Trustee's or co-trustee's, as the case may be, own willful misconduct, negligence or bad faith.

The Issuer's obligations to the Indenture Trustee and any co-trustee pursuant to this Section shall survive the resignation or removal of the Indenture Trustee and the discharge of this Indenture.  When the Indenture Trustee or any co-trustee incurs expenses after the occurrence of a Default specified in Section 5.01(a)(iv) or (v) with respect to the Issuer, the expenses are intended to constitute expenses of administration under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or similar law.

Section 6.08.    <u>Replacement of Indenture Trustee</u>.  No resignation or removal of the Indenture Trustee and no appointment of a successor Indenture Trustee shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section. The Indenture Trustee may resign at any time by giving 90 days' written notice thereof to the Master Servicer, the Depositor, the Issuer, each Noteholder and each Rating Agency.  The Issuer shall remove the Indenture Trustee if:

> (i)      the Indenture Trustee fails to comply with Section 6.11;

> (ii)     the Indenture Trustee is adjudged bankrupt or insolvent;

> (iii)    a receiver or other public officer takes charge of the Indenture Trustee or its property; or

CONFIDENTIAL

(iv)    the Indenture Trustee otherwise becomes incapable of acting.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the office of the Indenture Trustee for any reason (the Indenture Trustee in such event being referred to herein as the retiring Indenture Trustee), the Issuer shall promptly appoint a successor Indenture Trustee that satisfies the eligibility requirements of Section 6.11.

The resigning or removed Indenture Trustee agrees to cooperate with the Master Servicer and any successor Indenture Trustee in effecting the termination of the resigning or removed Indenture Trustee's responsibilities and rights hereunder and shall promptly provide such successor Indenture Trustee all documents and records reasonably requested by it to enable it to assume the Indenture Trustee's functions hereunder.

A successor Indenture Trustee shall deliver a written acceptance of its appointment to the retiring Indenture Trustee and to the Issuer.  Thereupon the resignation or removal of the retiring Indenture Trustee shall become effective, and the successor Indenture Trustee shall have all the rights, powers and duties of the Indenture Trustee under this Indenture.  The successor Indenture Trustee shall mail a notice of its succession to Noteholders.  The resigning Indenture Trustee shall promptly transfer all property held by it as Indenture Trustee to the successor Indenture Trustee.

If a successor Indenture Trustee does not take office within 30 days after the retiring Indenture Trustee resigns or is removed, the retiring Indenture Trustee, the Issuer or the Holders of a majority in Outstanding Balance of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee.

If the Indenture Trustee fails to comply with Section 6.11, any Noteholder may petition any court of competent jurisdiction for the removal of the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section, the Issuer's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee.

Section 6.09.    Successor Indenture Trustee by Merger.  If the Indenture Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, the resulting, surviving or transferee corporation without any further act shall be the successor Indenture Trustee; provided, that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11.  The Indenture Trustee shall provide each Rating Agency written notice of any such transaction.

In case at the time such successor or successors by merger, conversion or consolidation to the Indenture Trustee shall succeed to the trusts created by this Indenture any of the Notes shall have been authenticated but not delivered, any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee and deliver such Notes so authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any

192709 SASCO 2006-RM1
Indenture

43

CONFIDENTIAL

predecessor hereunder or in the name of the successor to the Indenture Trustee; and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture provided that the certificate of the Indenture Trustee shall have.

Section 6.10.    Appointment of Co-Indenture Trustee or Separate Indenture Trustee. (a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Collateral may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders, such title to the Collateral, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable.  No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 and no notice to Noteholders of the appointment of any co-trustee or separate trustee shall be required under Section 6.08 hereof.

(b) Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)      all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Collateral or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)      no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)      the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c) Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them.  Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article Six.  Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Indenture Trustee.  Every such instrument shall be filed with the Indenture Trustee.

192709 SASCO 2006-RM1
Indenture

44

CONFIDENTIAL

(d) Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 6.11.  Eligibility; Disqualification.  The Indenture Trustee shall at all times (i) have a combined capital and surplus of at least $100,000,000 as set forth in its most recent published annual report of condition, (ii) have a long term deposit rating of at least A or the equivalent by each Rating Agency (or such other rating as permitted by such Rating Agency) and (iii) not be an Affiliate of the Issuer, the Owner Trustee or the Master Servicer.

Section 6.12.  [Reserved]

Section 6.13.  Representations and Warranties.  The Indenture Trustee hereby represents that:

(a) the Indenture Trustee is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(b) the Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action;

(c) the consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without  notice or lapse of time) a default under the articles of organization or bylaws of the Indenture Trustee or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound; and

(d) to the Indenture Trustee's best knowledge, there are no proceedings or investigations pending or threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee or its properties:  (i) asserting the invalidity of this Indenture, (ii) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (iii) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

ARTICLE VII

NOTEHOLDERS' LISTS AND REPORTS

Section 7.01.  Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer will furnish or cause to be furnished to the Indenture Trustee (a) not more than five

192709 SASCO 2006-RM1
Indenture

45

CONFIDENTIAL

days after each Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the Holders of Notes as of such Record Date, and (b) at such other times as the Indenture Trustee may request in writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; *provided, however,* that so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

Section 7.02.    Preservation of Information; Communications to Noteholders.    The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Notes contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of Holders of Notes received by the Indenture Trustee in its capacity as Note Registrar.    The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.    In the case of Definitive Notes, if three or more Noteholders, or one or more Holders of a Class of Notes evidencing not less than 25% of the Outstanding Balance thereof (hereinafter referred to as "Applicants"), apply in writing to the Indenture Trustee, and such application states that the Applicants desire to communicate with other holders with respect to their rights under this Indenture or under the Notes, then the Indenture Trustee shall, within five Business Days after the receipt of such application, afford such Applicants access, during normal business hours, to the current list of Holders.    Every Holder, by receiving and holding a Note, agrees with the Issuer and the Indenture Trustee that neither the Issuer nor the Indenture Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders under this Indenture, regardless of the source from which such information was derived.

## ARTICLE VIII

## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01.    Collection of Money.    Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture.    The Indenture Trustee shall apply all such money received by it as provided in this Indenture.    Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Collateral, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings.    Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article Five.

Section 8.02.    Trust Accounts and Certificate Distribution Account.    (a) On or prior to the Closing Date, the Master Servicer shall establish and maintain, for the benefit of the Noteholders and the Certificateholders, the Collection Account, and the Indenture Trustee shall establish and maintain in its name the Funding Account, the Note Payment Account and the Certificate Distribution Account, each as provided in Section 6.02 of the Transfer and Servicing

192709 SASCO 2006-RM1
Indenture

46

CONFIDENTIAL

Agreement.

(b) On or before each Master Servicer Remittance Date, all amounts required to be deposited in the Note Payment Account with respect to the preceding Collection Period pursuant to Section 6.02 and Section 6.04 of the Transfer and Servicing Agreement will be transferred by the Master Servicer from the Collection Account to the Note Payment Account.

(c) On each Payment Date and Redemption Date, the Paying Agent (or, if the Indenture Trustee acts as Paying Agent, the Indenture Trustee) shall distribute (i) all amounts on deposit in the Note Payment Account as provided in Section 6.05 of the Transfer and Servicing Agreement and (ii) such amounts as are distributable from the Funding Account as provided in Sections 6.05 and 6.10 of the Transfer and Servicing Agreement (except as otherwise provided in Section 5.04(b) hereof).

Section 8.03. <u>General Provisions Regarding Accounts</u>. (a) Funds in the Trust Accounts maintained by the Indenture Trustee shall be invested as provided in the Transfer and Servicing Agreement. In the absence of written investment directions, funds in the Trust Accounts shall remain uninvested.

(b) Subject to Section 6.01(c), the Indenture Trustee shall not in any way be held liable by reason of any insufficiency in any of the Trust Accounts resulting from any loss on any Eligible Investment included therein except for losses attributable to the Indenture Trustee's failure to make payments on such Eligible Investments issued by the Indenture Trustee, in its commercial capacity as principal obligor and not as trustee, in accordance with their terms.

Section 8.04. <u>Release of Collateral</u>. (a) Subject to the payment of its fees and expenses pursuant to Section 6.07, the Indenture Trustee may, and when required by the provisions of this Indenture and the Transfer and Servicing Agreement shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture. No party relying upon an instrument executed by the Indenture Trustee as provided in this Article Eight shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any moneys.

(b) The Indenture Trustee (or its custodian) shall, at such time as there are no Notes Outstanding and all sums due the Indenture Trustee pursuant to Section 6.07 have been paid, release any remaining portion of the Collateral that secured the Notes from the lien of this Indenture and release to the Issuer or any other Person entitled thereto any funds then on deposit in the Trust Accounts maintained by it. The Indenture Trustee shall release property from the lien of this Indenture pursuant to this Section 8.04(b) only upon receipt of an Issuer Request accompanied by an Officer's Certificate and an Opinion of Counsel meeting the applicable requirements of Section 11.01.

CONFIDENTIAL

ARTICLE IX

SUPPLEMENTAL INDENTURES

Section 9.01.  Supplemental Indentures Without Consent of Noteholders. (a) Without the consent of the Holders of any Notes but with prior notice to each Rating Agency, the Issuer and the Indenture Trustee, when authorized by an Issuer Order, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)      to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)      to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuer, and the assumption by any such successor of the covenants of the Issuer herein and in the Notes contained;

(iii)      to add to the covenants of the Issuer, for the benefit of the Holders of the Notes, or to surrender any right or power herein conferred upon the Issuer;

(iv)      to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v)      (A) to cure any ambiguity, (B) to correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provisions herein or in any supplemental indenture or to conform the provisions hereof to those of the Offering Document, (C) to obtain or maintain a rating for a Class of Notes from a nationally recognized statistical rating organization, (D) to make any other provisions with respect to matters or questions arising under this Indenture; *provided, however,* that no such supplemental indenture entered into pursuant to clause (D) of this subparagraph (v) shall adversely affect in any material respect the interests of any Holder not consenting thereto; or

(vi)      to evidence and provide for the acceptance of the appointment hereunder by a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article Six;

*provided, however,* that no such supplemental indenture shall be entered into unless the Indenture Trustee shall have received an Opinion of Counsel stating that entering into such supplemental indenture will not (A) result in a "substantial modification" of the Notes under Treasury Regulation Section 1.1001-3 or adversely affect the status of the Notes as indebtedness for federal income tax purposes or (B) as evidenced by an Opinion of Counsel (which shall be an expense of the party requesting such amendment and shall not be an expense of the Trust) because the Trust to be subject to an entity level tax as a corporation or as a taxable mortgage pool for federal income tax purposes.

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b) A letter from each Rating Agency to the effect that any supplemental indenture entered into pursuant to this Section 9.01 will not cause the then-current ratings on the Notes to be qualified, reduced or withdrawn shall constitute conclusive evidence that such amendment does not adversely affect in any material respect the interests of the Noteholders.

Section 9.02.   Supplemental Indentures with Consent of Noteholders.   The Issuer and the Indenture Trustee, when authorized by an Issuer Order, also may, with prior notice to each Rating Agency and with the consent of the Holders of not less than 66-2/3% of the Outstanding Balance of the Notes, by Act of such Holders delivered to the Issuer and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; *provided, however,* that no such supplemental indenture shall, adversely affect the interests of the Noteholders without the consent of the Holder of each Outstanding Note affected thereby (i) reduce in any manner the amount of, or delay the timing of, distributions in respect of any Note, (ii) alter the obligations of the Master Servicer or the Indenture Trustee to make an Advance or alter the servicing standards set forth in the Transfer and Servicing Agreement, (iii) reduce the aforesaid percentages of Notes the Holders of which are required to consent to any such supplemental indenture, without the consent of the Holders of all Notes affected thereby, or (iv) permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Collateral or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture and *provided, further,* that such action shall not, as evidenced by an Opinion of Counsel, cause the Issuer to be subject to an entity level tax as a corporation or as a taxable mortgage pool for federal income tax purposes.

The Indenture Trustee may, based upon an Opinion of Counsel provided to it, determine whether or not any Notes would be affected by any supplemental indenture and any such determination shall be conclusive upon the Holders of all Notes, whether theretofore or thereafter authenticated and delivered hereunder.  The Indenture Trustee shall not be liable for any such determination made in good faith.

It shall not be necessary for any Act of Noteholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture pursuant to this Section, the Indenture Trustee shall mail to the Holders of the Notes to which such amendment or supplemental indenture relates and each Rating Agency a notice setting forth in general terms the substance of such supplemental indenture.  Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

Section 9.03.  Execution of Supplemental Indentures.  In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article Nine or the modification thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive, and subject to Section 6.02, shall be fully protected in relying upon, an Opinion of Counsel to the effect provided in Section 9.06.  The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04.  Effect of Supplemental Indenture.  Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer and the Holders of the Notes shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05.  Reference in Notes to Supplemental Indentures.  Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article Nine may, and if required by the Indenture Trustee shall, bear a notation in a form approved by the Indenture Trustee as to any matter provided for in such supplemental indenture.  If the Issuer or the Indenture Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Indenture Trustee in exchange for Outstanding Notes.

Section 9.06.  Opinion of Counsel.  In connection with any supplemental indenture pursuant to this Article Nine, the Indenture Trustee shall be entitled to receive an Opinion of Counsel to the effect that such supplemental indenture is authorized or permitted by this Indenture and that all conditions precedent to the execution of such supplemental indenture in accordance with the relevant provisions of this Article Nine have been met.

Nothing in this Section shall be construed to require that any Person obtain the consent of the Indenture Trustee to any amendment or waiver or any provision of any document where the making of such amendment or the giving of such waiver without obtaining the consent of the Indenture Trustee is not prohibited by this Indenture or by the terms of the document that is the subject of the proposed amendment or waiver.

ARTICLE X

REDEMPTION OF NOTES

Section 10.01. Redemption.  The Notes are subject to redemption pursuant to Section 10.02 of the Transfer and Servicing Agreement.  The Issuer shall furnish each Rating Agency notice of such redemption.  If any Notes are to be redeemed pursuant to Section 10.02 of the Transfer and Servicing Agreement, the Master Servicer shall furnish notice of its exercise of its

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

option to redeem the Notes to the Indenture Trustee not later than 10 days prior to the Redemption Date and the party exercising its option to redeem such Notes shall deposit by the Master Servicer Remittance Date immediately prior to the Redemption Date with the Indenture Trustee in the Note Payment Account the Redemption Price of the Notes to be redeemed, whereupon all such Notes shall be due and payable on the Redemption Date upon the furnishing of a notice complying with Section 10.02 to each Holder of the Notes.

Section 10.02. Form of Redemption Notice. Notice of redemption under Section 10.01 shall be given by the Indenture Trustee by first-class mail, postage prepaid, or by facsimile mailed or transmitted not later than 10 days prior to the applicable Redemption Date to each Holder of Notes, as of the close of business on the Record Date preceding the applicable Redemption Date, at such Holder's address or facsimile number appearing in the Note Register.

All notices of redemption shall state:

(i)    the Redemption Date;

(ii)    the Redemption Price; and

(iii)    the place where such Notes are to be surrendered for payment of the Redemption Price (which shall be the office or agency of the Issuer to be maintained as provided in Section 3.02).

Notice of redemption of the Notes shall be given by the Indenture Trustee in the name and at the expense of the Issuer.  Failure to give notice of redemption, or any defect therein, to any Holder of any Note shall not impair or affect the validity of the redemption of any other Note.

Section 10.03. Notes Payable on Redemption Date.  The Notes or portions thereof to be redeemed shall, following notice of redemption as required under Section 10.02 (in the case of redemption pursuant to Section 10.01) and remittance to the Indenture Trustee of the Redemption Price as required under Section 10.01, on the Redemption Date become due and payable at the Redemption Price and (unless the Issuer shall default in the payment of the Redemption Price) no interest shall accrue on the Redemption Price for any period after the date to which accrued interest is calculated for purposes of calculating the Redemption Price.

ARTICLE XI

MISCELLANEOUS

Section 11.01. Compliance Certificates and Opinions, etc.  Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee: (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically

192709 SASCO 2006-RM1
Indenture

51

CONFIDENTIAL

required by any provision of this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

      (i)    a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or condition and the definitions herein relating thereto;

      (ii)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

      (iii)    a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with; and

      (iv)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with.

Section 11.02. <u>Form of Documents Delivered to Indenture Trustee</u>. In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such officer's certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Master Servicer, the Depositor, the Issuer or the Administrator, stating that the information with respect to such factual matters is in the possession of the Master Servicer, the Depositor, the Issuer or the Administrator, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuer shall deliver any document as a condition of

192709 SASCO 2006-RM1
Indenture

CONFIDENTIAL

the granting of such application, or as evidence of the Issuer's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuer to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article Six.

Section 11.03. Acts of Noteholders. (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner provided in this Section.

(b) The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c) The ownership of Notes shall be proved by the Note Register.

(d) Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 11.04. Notices, etc., to Indenture Trustee, Issuer and Rating Agencies. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or act of Noteholders is to be made upon, given or furnished to or filed with:

(i)    the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at its applicable Corporate Trust Office, or

(ii)    the Issuer by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Issuer addressed to the address provided in the Transfer and Servicing Agreement, or at any other address previously furnished in writing to the Indenture Trustee by the

CONFIDENTIAL

Issuer or the Administrator.  The Issuer shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee.

Notices required to be given to the Rating Agencies by the Issuer, the Indenture Trustee or the Owner Trustee shall be in writing, personally delivered, delivered by overnight courier or mailed by certified mail, return receipt requested, to the address provided in the Transfer and Servicing Agreement or such other address as shall be designated by written notice to the other parties.

Section 11.05.  Notices to Noteholders; Waiver.  Where this Indenture provides for notice to Noteholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class, postage prepaid to each Noteholder affected by such event, at such Holder's address as it appears on the Note Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.  In any case where notice to Noteholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute a Default or Event of Default.

Section 11.06. [Reserved]

Section 11.07.  Effect of Headings and Table of Contents.  The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

Section 11.08.  Successors and Assigns.  All covenants and agreements in this Indenture and the Notes by the Issuer shall bind its successors and assigns, whether so expressed or not.  All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 11.09.  Severability.  In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining

192709 SASCO 2006-RM1
Indenture

54

CONFIDENTIAL

provisions shall not in any way be affected or impaired thereby.

Section 11.10. Benefits of Indenture and Consents of Noteholders. Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, the Owner Trustee and the Noteholders, any benefit or any legal or equitable right, remedy or claim under this Indenture. Each Noteholder and Note Owner, by acceptance of a Note or, in the case of a Note Owner, a beneficial interest in a Note, consents to and agrees to be bound by the terms and conditions of this Indenture.

Section 11.11. Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 11.12. Governing Law. THIS INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 11.13. Counterparts. This Indenture may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 11.14. Recording of Indenture. If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 11.15. Trust Obligations. No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in their respective individual capacities, (ii) any owner of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee or the Owner Trustee in its respective individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their respective individual capacities) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call

CONFIDENTIAL

owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles Six, Seven and Eight of the Trust Agreement.

In addition, (i) this Indenture is executed and delivered by Wilmington Trust Company, not individually or personally but solely as Owner Trustee, in the exercise of the powers and authority conferred and vested in it, (ii) each of the representations, undertakings and agreements herein made on the part of the Issuer or the Owner Trustee is made and intended not as personal representations, undertakings and agreements by Wilmington Trust Company but is made and intended for the purpose for binding only the Trust, (iii) nothing herein contained shall be construed as creating any liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the Indenture Trustee and by any Person claiming by, through or under the Indenture Trustee, and (iv) under no circumstances shall Wilmington Trust Company be personally liable for the payment of any indebtedness or expenses of the Issuer or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Issuer under this Indenture or the Basic Documents.

Section 11.16. No Petition. The Indenture Trustee, by entering into this Indenture, and each Noteholder, by accepting a Note, hereby covenant and agree that they will not at any time institute against the Depositor or the Issuer, or join in any institution against the Depositor or the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the Basic Documents.

Section 11.17. Inspection. The Issuer agrees that, on reasonable prior notice, it will permit any representative of the Indenture Trustee, during the Issuer's normal business hours, to examine all the books of account, records, reports and other papers of the Issuer, to make copies and extracts therefrom, to cause such books to be audited by Independent Public Accountants, and to discuss the Issuer's affairs, finances and accounts with the Issuer's officers, employees and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested. The Indenture Trustee shall, and shall cause its representatives to, hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee may reasonably determine that such disclosure is consistent with its obligations hereunder.

Section 11.18. Agreements of Noteholders. Each Noteholder, by accepting a Note, hereby acknowledges and agrees that, to the extent that the Noteholders are deemed to have any interest in any assets of the Depositor that constitute the assets of the trust for any other series of securities with respect to which the Depositor acts as depositor:

(a) the interest of the Noteholders in such assets is subordinate to claims or rights of the holders of such other series of securities to such assets; and

CONFIDENTIAL

     (b) this Indenture constitutes a subordination agreement for purposes of Section 510(a) of the Bankruptcy Code.

**CONFIDENTIAL**

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused this Indenture to be duly executed by their respective officers, thereunto duly authorized and duly attested, all as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE
LOAN TRUST 2006-RM1, as Issuer

By:  WILMINGTON TRUST COMPANY,
     not in its individual capacity but solely as
     Owner Trustee

By: _____
    Name:        Michele C. Harra
    Title:       Financial Services Officer

CITIBANK, N.A., not in its individual capacity but
solely as Indenture Trustee

By: _____
    Name:
    Title:

128978 SASCO 2005-RM1
Indenture

**CONFIDENTIAL**

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused this Indenture to be duly executed by their respective officers, thereunto duly authorized and duly attested, all as of the day and year first above written.

STRUCTURED ASSET SECURITIES
CORPORATION REVERSE MORTGAGE
LOAN TRUST 2006-RM1, as Issuer

By: WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as
Owner Trustee

By: _____

   Name:
   Title:

CITIBANK, N.A., not in its individual capacity but
solely as Indenture Trustee

By: _____

   Name:
   Title:    KAREN SCHLUTER
             Vice President

192709 SASCO 2006-RM1
Indenture

**CONFIDENTIAL**

Acknowledged and Agreed, solely
for purposes of Section 6.07:

LEHMAN BROTHERS INC.

By: _____
    Name: Michael Hitzmann
    Title:  Senior Vice President

192709  SASCO 2006-RM1
Indenture

**CONFIDENTIAL**

EXHIBIT A

FORMS OF NOTES

[See Tab 11]

128978 SASCO 2005-RM1
Indenture

A-1

**CONFIDENTIAL**

EXHIBIT B-1

FORM OF RULE 144A INVESTMENT LETTER

_____

date

Citibank, N.A.
    as Indenture Trustee
111 Wall Street, 15th Floor,
New York, NY 10005
Attention: 15th Floor Window

Re:    Structured Asset Securities Corporation
        Reverse Mortgage Notes, Series 2006-RM1

Ladies and Gentlemen:

In connection with our acquisition of the above-referenced Reverse Mortgage Notes (the "Notes") we certify that (a) we understand that the Notes have not been registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Notes, (c) we have had the opportunity to ask questions of and receive answers from Structured Asset Securities Corporation (the "Depositor") concerning the purchase of the Notes and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Notes, (d) we have not, nor has anyone acting on our behalf, offered, transferred, pledged, sold or otherwise disposed of the Notes or any interest in the Notes, or solicited any offer to buy, transfer, pledge or otherwise dispose of the Notes or any interest in the Notes from any person in any manner, or made any general solicitation by means of general advertising or in any other manner, or taken any other action that would constitute a distribution of the Notes under the Act or that would render the disposition of the Notes a violation of Section 5 of the Act or any state securities laws or require registration pursuant thereto, and we will not act, or authorize any person to act, in such manner with respect to the Notes, (e) we are a "qualified institutional buyer" as that term is defined in Rule 144A under the Act ("Rule 144A"). We are aware that the sale to us is being made in reliance on Rule 144A.

We are acquiring the Notes for our own account or for resale pursuant to Rule 144A and understand that such Notes may be resold, pledged or transferred only (1) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A or (2) pursuant to another exemption from registration under the Act.

In addition, we certify that (i) we are not acquiring the Notes for, or on behalf of, an employee benefit plan or other retirement arrangement, or any entity deemed to hold the plan

128978 SASCO 2005-RM1
Indenture

B-1-1

CONFIDENTIAL

assets of the foregoing (a "Benefit Plan"), or (ii) we are acquiring the Notes for, or on behalf of, a Benefit Plan and our acquisition and holding of the Notes (x) will not result in a non-exempt prohibited transaction under Section 406 of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, which is not covered by Prohibited Transaction Class Exemption ("PTCE") 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable exemption and (y) will not cause a non-exempt violation of any substantially similar applicable law.

We hereby acknowledge that under the terms of the Indenture between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as Issuer, and Citibank, N.A., as Indenture Trustee, dated as of August 1, 2006, no transfer of the Notes shall be permitted to be made to any person unless the Indenture Trustee and the Note Registrar have received a certificate from such transferee in the form hereof.

We hereby indemnify the Depositor, Indenture Trustee, the Trust and the Note Registrar against any liability that may result to either of them if our transfer or other disposition of any Notes (or any interest therein) is not exempt from the registration requirements of the Act and any applicable state securities laws or is not made in accordance with such federal and state laws, the provisions of this certificate or the applicable provisions of the Indenture.

Very truly yours,

_____
Print Name of Purchaser

By:_____
    Name:
    Title:

128978 SASCO 2005-RM1
Indenture

B-1-2

CONFIDENTIAL

EXHIBIT B-2

## FORM OF NON-RULE 144A INVESTMENT LETTER

_____

date

Citibank, N.A.
    as Indenture Trustee
111 Wall Street, 15th Floor,
New York, NY 10005
Attention: 15th Floor Window

    Re:    Structured Asset Securities Corporation
           Reverse Mortgage Notes, Series 2006-RM1

Ladies and Gentlemen:

      In connection with our acquisition of the above-referenced Reverse Mortgage Notes (the "Notes") we certify that (a) we understand that the Notes have not been registered under the Securities Act of 1933, as amended (the "Act"), or any state securities laws and are being transferred to us in a transaction that is exempt from the registration requirements of the Act and any such laws, (b) we are an "accredited investor," as defined in Rule 501(a)(1), (2), (3) or (7) under the Act, and have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of investments in the Notes, (c) we have had the opportunity to ask questions of and receive answers from the Depositor concerning the purchase of the Notes and all matters relating thereto or any additional information deemed necessary to our decision to purchase the Notes, (d) we are acquiring the Notes for investment for our own account and not with a view to any distribution of such Notes (but without prejudice to our right at all times to sell or otherwise dispose of the Notes in accordance with clause (f) below), (e) we have not offered or sold any Notes to, or solicited offers to buy any Notes from, any person, or otherwise approached or negotiated with any person with respect thereto, or taken any other action that would result in a violation of Section 5 of the Act or any state securities laws and (f) we will not sell, transfer or otherwise dispose of any Notes unless (1) such sale, transfer or other disposition is made pursuant to an effective registration statement under the Act and in compliance with any relevant state securities laws or is exempt from such registration requirements and, if requested, we will at our expense provide an opinion of counsel satisfactory to the addressees of this certificate that such sale, transfer or other disposition may be made

CONFIDENTIAL

pursuant to an exemption from the Act, (2) the purchaser or transferee of such Note has executed and delivered to you a certificate to substantially the same effect as this certificate and (3) the purchaser or transferee has otherwise complied with any conditions for transfer set forth in the Indenture dated as of August 1, 2006, between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as issuer, and Citibank, N.A., as indenture trustee.

In addition, we certify that (i) we are not acquiring the Notes for, or on behalf of, an employee benefit plan or other retirement arrangement, or any entity deemed to hold the plan assets of the foregoing (a "Benefit Plan"), or (ii) we are acquiring the Notes for, or on behalf of, a Benefit Plan and our acquisition and holding of the Notes (x) will not result in a non-exempt prohibited transaction under Section 406 of the Employee Retirement Income Security Act of 1974, as amended, or Section 4975 of the Internal Revenue Code of 1986, as amended, which is not covered by Prohibited Transaction Class Exemption ("PTCE") 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable exemption and (y) will not cause a non-exempt violation of any substantially similar applicable law.

We hereby acknowledge that under the terms of the Indenture between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as Issuer, and Citibank, N.A., as Indenture Trustee, dated as of August 1, 2006, no transfer of the Notes shall be permitted to be made to any person unless the Indenture Trustee and the Note Registrar have received a certificate from such transferee in the form hereof.

We hereby indemnify the Depositor, Indenture Trustee, the Trust and the Note Registrar against any liability that may result to either of them if our transfer or other disposition of any Notes (or any interest therein) is not exempt from the registration requirements of the Act and any applicable state securities laws or is not made in accordance with such federal and state laws, the provisions of this certificate or the applicable provisions of the Indenture.

Very truly yours,

_____

Print Name of Purchaser

By:_____

Name:
Title:

128978 SASCO 2005-RM1
Indenture

B-2-2

CONFIDENTIAL

EXHIBIT C-1

FORM OF TRANSFER CERTIFICATE
FOR TRANSFER FROM RESTRICTED GLOBAL SECURITY
TO REGULATION S GLOBAL SECURITY
(Transfers pursuant to § 2.03(d)(ii)
_____ of the Indenture) _____

Citibank, N.A.
    as Indenture Trustee
111 Wall Street, 15th Floor,
New York, NY 10005
Attention: 15th Floor Window

Re:    Structured Asset Securities Corporation
       Reverse Mortgage Notes, Series 2006-RM1

        Reference is hereby made to the Indenture dated as of August 1, 2006 (the "Indenture"), between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as Issuer, and Citibank, N.A., as Indenture Trustee.  Capitalized terms used but not defined herein shall have the meanings given them in the Indenture.

        This letter relates to U.S. $_____ aggregate principal amount of Securities which are held in the form of a Restricted Global Security with the Depository in the name of [name of transferor] _____ (the "Transferor") to effect the transfer of the Securities in exchange for an equivalent beneficial interest in a Regulation S Global Security.

        In connection with such request, the Transferor does hereby certify that such transfer has been effected in accordance with the transfer restrictions set forth in the Indenture and the private placement memorandum dated September 15, 2006, as amended or supplemented from time to time, relating to the Securities and in accordance with Rule 904 of Regulation S, and that:

        a.    the offer of the Securities was not made to a person in the United States;

        b.    at the time the buy order was originated, the transferee was outside the United States or the Transferor and any person acting on its behalf reasonably believed that the transferee was outside the United States;

        c.    no directed selling efforts have been made in contravention of the requirements of Rule 903 or 904 of Regulation S, as applicable;

128978 SASCO 2005-RM1
Indenture

C-1-1

CONFIDENTIAL

    d.    the transaction is not part of a plan or scheme to evade the registration requirements of the United States Securities Act of 1933, as amended (the "Securities Act"); and

    e.    the transferee is not a U.S. Person.

You and the Issuer are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby. Terms used in this certificate have the meanings set forth in Regulation S.


_____

[Name of Transferor]


By: _____

    Name:

    Title:


Date:_____, ____

CONFIDENTIAL

EXHIBIT C-2

## FORM OF TRANSFER CERTIFICATE FOR TRANSFER
## FROM REGULATION S GLOBAL SECURITY
## TO RESTRICTED GLOBAL SECURITY
(Transfers pursuant to § 2.03(d)(iii)
of the Indenture)

Citibank, N.A.
    as Indenture Trustee
111 Wall Street, 15th Floor,
New York, NY 10005
Attention: 15th Floor Window

Re:    Structured Asset Securities Corporation
       Reverse Mortgage Notes, Series 2006-RM1

    Reference is hereby made to the Indenture dated as of August 1, 2006 (the "Indenture"), between Structured Asset Securities Corporation Reverse Mortgage Loan Trust 2006-RM1, as Issuer, and Citibank, N.A., as Indenture Trustee. Capitalized terms used but not defined herein shall have the meanings given them in the Indenture.

    This letter relates to U.S. $_____ aggregate principal amount of Securities which are held in the form of a Regulations S Global Security in the name of [name of transferor] _____ (the "Transferor") to effect the transfer of the Securities in exchange for an equivalent beneficial interest in a Restricted Global Security.

    In connection with such request, and in respect of such Securities, the Transferor does hereby certify that such Securities are being transferred in accordance with (i) the transfer restrictions set forth in the Indenture and the private placement memorandum dated September 15, 2006, as amended or supplemented from time to time, relating to the Securities and (ii) Rule 144A under the United States Securities Act of 1933, as amended, to a transferee that the Transferor reasonably believes is purchasing the Securities for its own account or an account with respect to which the transferee exercises sole investment discretion, the transferee and any such account is a qualified institutional buyer within the meaning of Rule 144A, in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any state of the United States or any other jurisdiction.

_____
[Name of Transferor]

By:_____
    Name:
    Title:

128978 SASCO 2005-RM1
Indenture

C-2-1

CONFIDENTIAL