# Exhibit 10

Ch.

A                                [COURT OF APPEAL]

ARMITAGE v. NURSE and Others

1997   Feb. 18, 19, 20;                    Hirst, Millett and Hutchison L.JJ.
       March 19

B   *Trusts—Trustee—Breach of trust—Exclusion of liability—Clause
    exempting trustee from liability for loss from any cause apart from
    own actual fraud—Whether excluding liability in absence of
    dishonesty—Whether repugnant to trust—Whether void on grounds
    of public policy—Whether trustees entitled to costs in absence of
    inquiry into their conduct*

C       By a settlement made on 11 October 1984 the plaintiff, who
    was then aged 17, became entitled in remainder to settled
    agricultural land of which her mother was tenant for life. Her
    portion was to be held on certain trusts until she reached the age
    of 40. Clause 15 of the settlement provided that no trustee should
    be liable for any loss or damage to the plaintiff's fund or the
    income thereof at any time or from any cause unless it was caused
    by his own actual fraud. On the trial of preliminary issues in an
D   action for breach of trust brought by the plaintiff against the
    trustees, the judge held that clause 15 of the settlement could
    operate to absolve the trustees from liability for breaches which
    were not the result of dishonesty on their part and that the
    plaintiff's claims in respect of breaches of trust allegedly
    committed before 15 June 1987 were not barred by section 21 of
    the Limitation Act 1980.[1] He awarded the trustees 80 per cent. of
    their costs, but directed that, since the trustees were defending
E   themselves and had taken points which cost money and in respect
    of which they were unsuccessful, they should not be at liberty to
    reimburse themselves from the trust fund for the remaining
    20 per cent.
        On appeal by the plaintiff from the judge's decision that the
    trustees were absolved from liability by clause 15 and cross-appeal
    by the trustees from his order for costs:—
F       *Held,* dismissing the appeal, (1) that, since it was open to
    contracting parties to exclude liability for ordinary or even gross
    negligence, such an exclusion was also open to the parties to a
    settlement; that, by referring to "actual" fraud, clause 15 of the
    settlement excluded constructive fraud or equitable fraud and was
    apt to exclude liability for breach of trust in the absence of a
    dishonest intention; that, although trustees might deliberately
    commit a breach of trust by consciously acting beyond their
G   powers, their conduct was not fraudulent if they did so in good
    faith and in the honest belief that they were acting in the interest
    of the beneficiaries; that a clause excluding the liability of a trustee
    for equitable fraud or unconscionable behaviour was not so
    repugnant to the trust or contrary to public policy as to be liable
    to be set aside at the suit of a beneficiary; and that, accordingly,
    since without amendment the pleadings could not support a plea
H   of fraud, clause 15 of the settlement operated to absolve the
    trustees from liability for the alleged breaches so long as they had
    not acted dishonestly; but that the plaintiff would be allowed to

[1] Limitation Act 1980, s. 21: see post, p. 260D-E.

242

examine the trust documents and investigate the trustees'     A
management in order to re-amend her statement of claim (see
post, pp. 250G, 251B–C, D–F, 253D–F, 254A–E, 259G, 263G–264B).

*Wilkins v. Hogg* (1861) 31 L.J.Ch. 41 applied.

(2) That section 21(1)(*a*) of the Limitation Act 1980 was
limited to cases of fraud or fraudulent breach of trust properly so
called and therefore to cases involving dishonesty; that liability for
a dishonest breach of trust endured without limitation of time,
but that in the absence of deliberate concealment liability for an     B
honest breach of trust was statute-barred after six years; that,
since the plaintiff had no present right to capital or income but
only the right to require the trustees to consider from time to
time whether to accumulate the income or to exercise their power
to pay or apply it for her benefit, she had merely a future interest
and not an interest in possession; and that, accordingly, her claim
was not barred by section 21(3) (post, pp. 260F–261A, H, 264A–B).     C

(3) Allowing the trustees' cross-appeal, that trustees were
entitled to a lien on the trust fund for the costs of successfully
defending themselves against an action for breach of trust, but
there was no such entitlement where their defence failed; that,
since the action against the trustees would be dismissed without
any inquiry into their conduct unless the pleadings were amended,
they were entitled to recoup themselves out of the trust fund if
and when the action against them was dismissed; and that,     D
accordingly, there had been no basis for the judge's order depriving
them of their right of recoupment (post, pp. 262D–E, 263A–C, F–G,
264A–B).

*In re Spurling's Will Trusts; Philpot v. Philpot* [1966] 1 W.L.R.
920 applied.

*Turner v. Hancock* (1882) 20 Ch.D. 303, C.A. distinguished.

*Per curiam.* The view is widely held that trustee exemption     E
clauses have gone too far, and that trustees who charge for their
services and who, as professional men, would not dream of
excluding liability for ordinary professional negligence should not
be able to rely on an exemption clause excluding liability for gross
negligence. If such clauses are to be denied effect, however, it
should be done by Parliament (post, pp. 256B–D, 264B).

Decision of Jacob J. affirmed.

The following cases are referred in the judgment of Millett L.J.:     F

*Attorney-General v. Heywood* (1887) 19 Q.B.D. 326, D.C.
*Aylesford (Earl of) v. Morris* (1873) L.R. 8 Ch.App. 484
*Beaman v. A.R.T.S. Ltd.* [1949] 1 K.B. 550; [1949] 1 All E.R. 465, C.A.
*Belmont Finance Corporation Ltd. v. Williams Furniture Ltd.* [1979] Ch. 250;
   [1978] 3 W.L.R. 712; [1979] 1 All E.R. 118, C.A.
*Carruthers v. Carruthers* [1896] A.C. 659, H.L.(Sc.)
*Chapman, In re; Cocks v. Chapman* [1896] 2 Ch. 763, C.A.     G
*City Equitable Fire Insurance Co. Ltd., In re* [1925] Ch. 407, C.A.
*Clarke v. Clarke's Trustees*, 1925 S.C. 693
*Davy v. Garrett* (1878) 7 Ch.D. 473, C.A.
*Derry v. Peek* (1889) 14 App.Cas. 337, H.L.(E.)
*Gartside v. Inland Revenue Commissioners* [1968] A.C. 553; [1968] 2 W.L.R.
   277; [1968] 1 All E.R. 121, H.L.(E.)
*Goodman v. Harvey* (1836) 4 A. & E. 870     H
*Grill v. General Iron Screw Collier Co.* (1866) L.R. 1 C.P. 600
*Hinton v. Dibbin* (1842) 2 Q.B. 646
*Knox v. Mackinnon* (1888) 13 App.Cas. 753, H.L.(Sc.)
*Leedale v. Lewis* [1982] 1 W.L.R. 1319; [1982] 3 All E.R. 808, H.L.(E.)

Ch.                                    Armitage v. Nurse (C.A.)

A    Lewis v. Great Western Railway Co. (1877) 3 Q.B.D. 195, C.A.
     Londonderry's Settlement, In re; Peat v. Walsh [1964] Ch. 594; [1964] 3 W.L.R.
         246; [1964] 2 All E.R. 732
     Midland Bank Trustee (Jersey) Ltd. v. Federated Pension Services Ltd. [1996]
         P.L.R. 179
     Nocton v. Lord Ashburton [1914] A.C. 932, H.L.(E.)
     Pass v. Dundas (1880) 43 L.T. 665
B    Perrins v. Bellamy [1899] 1 Ch. 797, C.A.
     Rae v. Meek (1889) 14 App.Cas. 558, H.L.(Sc.)
     Seton v. Dawson (1841) 4 D. 310
     Spurling's Will Trusts, In re; Philpot v. Philpot [1966] 1 W.L.R. 920; [1966]
         1 All E.R. 745
     Trusts of Leeds City Brewery Ltd.'s Debenture Stock Trust Deed, In re; Leeds
         City Brewery Ltd. v. Platts (Note) [1925] Ch. 532, C.A.
C    Turner v. Hancock (1882) 20 Ch.D. 303, C.A.
     Vickery, In re; Vickery v. Stephens [1931] 1 Ch. 572
     Walters v. Woodbridge (1878) 7 Ch.D. 504, C.A.
     Wilkins v. Hogg (1861) 31 L.J.Ch. 41
     Wynan v. Paterson [1900] A.C. 271, H.L.(Sc.)

     The following additional cases were cited in argument:
D    Applegate v. Moss [1971] 1 Q.B. 406; [1971] 2 W.L.R. 541; [1971] 1 All E.R.
         747, C.A.
     Attorney-General v. Power [1906] 2 I.R. 272
     Baden v. Société Générale pour Favoriser le Développement du Commerce et de
         l'Industrie en France S.A. (Note) [1993] 1 W.L.R. 509; [1992] 4 All E.R.
         161
     Banister, In re; Broad v. Munton (1879) 12 Ch.D. 131, C.A.
E    Bartlett v. Barclays Bank Trust Co. Ltd. (Nos. 1 and 2) [1980] Ch. 515; [1980]
         2 W.L.R. 430; [1980] 2 All E.R. 92
     Beckett's Settlement, In re [1940] Ch. 279
     Beddoe, In re; Downes v. Cottam [1893] 1 Ch. 547, C.A.
     Buckton, In re; Buckton v. Buckton [1907] 2 Ch. 406
     Chaine-Nickson v. Bank of Ireland [1976] I.R. 393
     Clark v. Woor [1965] 1 W.L.R. 650; [1965] 2 All E.R. 353
     Figg v. Clarke [1997] 1 W.L.R. 603
F    Gladstone v. Padwick (1871) L.R. 6 Ex. 203
     Green v. Russell, McCarthy (Third Party) [1959] 2 Q.B. 226; [1959] 3 W.L.R.
         17; [1959] 2 All E.R. 525, C.A.
     Grosvenor Hotel, London (No. 2), In re [1965] Ch. 1210; [1964] 3 W.L.R. 992;
         [1964] 3 All E.R. 354, C.A.
     Hallows v. Lloyd (1888) 39 Ch.D. 686
     Harrison v. Randall (1851) 9 Hare 397
G    Holding and Management Ltd. v. Property Holding and Investment Trust Plc.
         [1989] 1 W.L.R. 1313; [1990] 1 All E.R. 938, C.A.
     Kitchen v. Royal Air Force Association [1958] 1 W.L.R. 563; [1958] 2 All E.R.
         241, C.A.
     Lloyd v. McMahon [1987] A.C. 625; [1987] 2 W.L.R. 821; [1987] 1 All E.R.
         1118, C.A. and H.L.(E.)
     McDonald v. Horn [1995] I.C.R. 685; [1995] 1 All E.R. 961, C.A.
H    National Oilwell (U.K.) Ltd. v. Davy Offshore Ltd. [1993] 2 Lloyd's Rep. 582
     Nestle v. National Westminster Bank Plc. [1993] 1 W.L.R. 1260; [1994] 1 All
         E.R. 118, C.A.
     Palamisto General Enterprises S.A. v. Ocean Marine Insurance Co. Ltd. [1972]
         2 Q.B. 625; [1972] 2 W.L.R. 1425; [1972] 2 All E.R. 1112, C.A.

244

*Pauling's Settlement Trusts, In re* [1962] 1 W.L.R. 86; [1961] 3 All E.R. 713    A

*Pearson v. Inland Revenue Commissioners* [1980] Ch. 1; [1979] 3 W.L.R. 112; [1979] 3 All E.R. 7, C.A.; [1981] A.C. 753; [1980] 2 W.L.R. 872; [1980] 2 All E.R. 479, H.L.(E.)

*Pearson (S.) & Son Ltd. v. Dublin Corporation* [1907] A.C. 351, H.L.(I.)

*Raineri v. Miles* [1981] A.C. 1050; [1980] 2 W.L.R. 847; [1980] 2 All E.R. 145, H.L.(E.)

*Royal Brunei Airlines Sdn. Bhd. v. Tan* [1995] 2 A.C. 378; [1995] 3 W.L.R. 64; [1995] 3 All E.R. 97, P.C.    B

*Smith, In re; Smith v. Thompson* [1896] 1 Ch. 71

*Speight v. Gaunt* (1883) 9 App.Cas. 1, H.L.(E.)

*Suisse Atlantique Société d'Armement Maritime S.A. v. N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 361; [1966] 2 W.L.R. 944; [1966] 2 All E.R. 61, H.L.(E.)

*Thomas Witter Ltd. v. T.B.P. Industries Ltd.* [1996] 2 All E.R. 573

*Tito v. Waddell (No. 2)* [1977] Ch. 106; [1977] 2 W.L.R. 496; [1977] 3 All E.R. 129    C

*Torrance v. Bolton* (1872) L.R. 8 Ch.App. 118

*Waterman's Will Trusts, In re; Lloyds Bank Ltd. v. Sutton* [1952] 2 All E.R. 1054

*Whiteley, In re; Whiteley v. Learoyd* (1886) 33 Ch.D. 347, C.A.

*Young and Harston's Contract, In re* (1885) 31 Ch.D. 168, C.A.

    D

APPEAL and CROSS-APPEAL from Jacob J.

By an amended statement of claim dated 20 December 1993 Paula Rachel Armitage, as beneficiary of a trust contained in a settlement of 11 October 1984, claimed against the trustees, (1) Richard Nurse, (2) Dudley Thomas Bowman Stammers and Brian Arthur Stammers, as personal representatives of Arthur George Stammers, deceased, (3) Keith    E Flatman and (4) Jeffrey Reginald Wright, for various alleged breaches of trust.

On 28 June 1995 Jacob J. determined agreed preliminary points in the action and declared that (a) all the defendants were absolved by clause 15 of the settlement from liability for certain of the breaches of trust alleged in the statement of claim, (b) none of the defendants were absolved by clause 9 of the settlement from liability for breaches of trust alleged in the    F statement of claim and (c) none of the claims of breach of trust was barred by the Limitation Act 1980. The judge deprived the trustees of 20 per cent. of their costs and on 28 July 1995 barred the trustees from recovering that part of their costs from the trust fund.

By a notice of appeal dated 23 August 1995 the plaintiff appealed to set aside the judge's declaration that clause 15 absolved the defendants    G from liability for breaches of trust on the grounds, inter alia, that the judge had wrongly construed the clause to relieve the defendants of all liability which was not the result of dishonesty on their part; that the judge was wrong in law in construing actual fraud as equating to actual dishonesty; that actual fraud should have been construed as embracing conduct short of dishonesty amounting to wilful or deliberate or reckless breaches of    H trust; that the judge ought to have held that if clause 15 was to be construed as excluding liability on the part of the trustees for all breaches of trust other than those committed dishonestly, then the clause was so inimical to the concept of trust as to be repugnant, and that as a matter

Ch.                                  Armitage v. Nurse (C.A.)

A    of law or policy the trustees could not rely on it either at all or to exclude
liability for loss resulting from reckless or deliberate breaches of duty
committed by them; and that the judge ought in all the circumstances to
have declared that none of the trustees were absolved by clause 15 from
liability for the alleged breaches of trust.

By notices of cross-appeal dated 8 September and 4 October 1995 the
defendants appealed against the judge's declarations on issues (b) and (c)
B    and on the issue of costs. The grounds of appeal on the issue of costs
were, inter alia, that the judge was wrong in law in holding that for the
purposes of R.S.C., Ord. 62, r. 6(2) a trustee who defended himself against
allegations of breach of trust had in substance acted for his own benefit
rather than for the benefit of the fund and that he ought to have held that
a trustee so defending himself was acting in his capacity of trustee and
C    was entitled to a lien on the fund for all his costs except only any incurred
through acts amounting to misconduct.

The facts are stated in the judgment of Millett L.J.

_Bernard Weatherill Q.C._ for the plaintiff. The irreducible core duties of
a trustee include (1) a duty to inquire as to the extent and nature the
D    property and the trusts (see _Hallows v. Lloyd_ (1888) 39 Ch.D. 686, 691;
_Nestlé v. National Westminster Bank Plc._ [1993] 1 W.L.R. 1260, 1265E,
1266H, 1275E–G and _Wyman v. Paterson_ [1900] A.C. 271); (2) a duty to
obey directions in the settlement unless the deviation is sanctioned by the
court (see _Harrison v. Randall_ (1851) 9 Hare 397, 407 and _Royal Brunei
Airlines Sdn. Bhd. v. Tan_ [1995] 2 A.C. 378, 390A–B); (3) a duty to account
for his stewardship of the assets under his control; (4) a duty to carry on
E    the business of the trust with the degree of prudence to be expected of a
hypothetically reasonably prudent man of business (see _Speight v. Gaunt_
(1883) 9 App.Cas. 1, 19 and _In re Whiteley; Whiteley v. Learoyd_ (1886)
33 Ch.D. 347, 355).

The court will insist that the trustee discharges his duties with honesty
and in good faith: see _In re Smith; Smith v. Thompson_ [1896] 1 Ch. 71, 76.
F    Any act or neglect on his part which is not authorised or excused by the
terms of the trust instrument is a breach of trust: see _Green v. Russell,
McCarthy (Third Party)_ [1959] 2 Q.B. 226, 241 and _Tito v. Waddell
(No. 2)_ [1977] Ch. 106, 247B–248E.

The technical meaning of wilful default includes want of ordinary
prudence in the trustee: see _In re Chapman; Cocks v. Chapman_ [1896]
2 Ch. 763, 776 and _Bartlett v. Barclays Bank Trust Co. Ltd.
G    (No. 2)_ [1980] Ch. 515, 546A–F. For a more common sense meaning in a
contractual context, see _In re Young and Harston's Contract_ (1885)
31 Ch.D. 168, 174–175, 176. Wilful default is to be distinguished from
mere negligence and involves conscious breach of duty or recklessness: see
_In re Trusts of Leeds City Brewery Ltd.'s Debenture Stock Trust Deed_ [1925]
Ch. 532, 533–534, 537–538, 544; _In re City Equitable Fire Insurance Co.
Ltd._ [1925] 1 Ch. 407, 434–438, 522–524; _Lloyd v. McMahon_ [1987] A.C.
H    625, 646H–647A, 647E, 702, 717; _Raineri v. Miles_ [1981] A.C. 1050,
1068G–H, 1094H–1095A; _Palamisto General Enterprises S.A. v. Ocean Marine
Insurance Co. Ltd._ [1972] 2 Q.B. 625, 646C–E; _National Oilwell (U.K.) Ltd.
v. Davy Offshore Ltd._ [1993] 2 Lloyd's Rep. 582, 621 and _In re Vickery;_

A

*Vickery v. Stephens* [1931] 1 Ch. 572. The latter case has often been criticised, but is supportable when understood to be an authority on the scope of the exemption in section 30(1) of the Trustee Act 1925; it was not a case on the liability of trustees to account as the basis of wilful default.

There is a distinction between common law fraud and equitable fraud. Dishonesty, usually at the heart of common law fraud, is not the only badge of fraud: see *Derry v. Peek* (1889) 14 App.Cas. 337, 350, 358–359, 374. The essence of common law fraud is an absence of bona fides. As to equitable fraud, the court has a discretion not to enforce or set aside contract, instruments or transactions where there has been unconscionable conduct: see *Torrance v. Bolton* (1873) L.R. 8 Ch. App.Cas. 118, 124–125. In relation to section 26(*b*) of the Limitation Act 1939, fraud has been construed to include equitable fraud: see *Applegate v. Moss* [1971] 1 Q.B. 406, 413B–C, 414F–H, 417A–C; *Beaman v. A.R.T.S. Ltd.* [1949] 1 K.B. 550; *Kitchen v. Royal Air Force Association* [1958] 1 W.L.R. 563 and *Clark v. Woor* [1965] 1 W.L.R. 650.

B

C

A breach of trust which is committed recklessly or wilfully is fraudulent in equity see *Royal Brunei Airlines Sdn. Bhd. v. Tan* [1995] 2 A.C. 378, 387C–391D. It is not necessary to plead positive dishonesty by the trustees: see *Davy v. Garrett* (1878) 7 Ch.D. 473, 489. Any breach of trust apt to cause loss which is committed wilfully or recklessly satisfies the test: see *Baden v. Société Générale pour Favoriser le Développement du Commerce et de l'Industrie en France S.A. (Note)* [1993] 1 W.L.R. 509, 574G–H. [Reference was also made to *Thomas Witter Ltd. v. T.P.B. Industries Ltd.* [1996] 2 All E.R. 573.]

D

Clause 15 of the trust deed must be interpreted as if the expression "actual fraud" embraces wilful default and recklessness: see *Midland Bank Trustee (Jersey) Ltd. v. Federated Pension Services Ltd.* [1996] P.L.R. 179. The word "actual" adds nothing to fraud: see *Gladstone v. Padwick* (1871) L.R. 6 Ex. 203. In contract parties cannot exclude liability for their own fraud: see *S. Pearson & Son Ltd. v. Dublin Corporation* [1907] A.C. 351, 353–354, 362 and *In re Banister* (1879) 12 Ch.D. 131, 136, 142–143, 149. Similarly, trustees cannot be exempted from liability for breach of trust arising from gross negligence or bad faith: see *Wilkins v. Hogg* (1861) 31 L.J.Ch. 41, 43; *Pass v. Dundas* (1880) 43 L.T. 665, 666, 667; *Knox v. Mackinnon* (1888) 13 App.Cas. 753, 762–763, 765–766, 768; *Rae v. Meek* (1889) 14 App.Cas. 558, 572–573; *Wyman v. Paterson* [1900] A.C. 271, 278–279, 281, 287, 291 and *Clarke v. Clarke's Trustees* [1925] S.C. 693, 707, 712. Exemption clauses must be construed in their context so as not to defeat the main purpose of the parties: see *Suisse Atlantique Société d'Armement Maritime S.A. v. N.V. Rotterdamsche Kolen Centrale* [1967] 1 A.C. 361, 398F–G. [Reference was also made to *In re Waterman's Will Trusts; Lloyds Bank Ltd. v. Sutton* [1952] 2 All E.R. 1054, 1055C–D and *Bartlett v. Barclays Bank Trust Co. Ltd. (No. 1)* [1980] Ch. 515, 534B–F.]

E

F

G

The judge was right to hold that the plaintiff did not enjoy an interest in possession and that time had not begun to run under section 21(3) of the Limitation Act: see *Gartside v. Inland Revenue Commissioners* [1968] A.C. 553, 566D–568D, 602B–603B, 607C–G, 614E, 615A–G, 621E–622C; *Pearson v. Inland Revenue Commissioners* [1980] Ch. 1, 8H–9D, 18F–19C; [1981] A.C. 753; *In re Pauling's Settlement Trusts* [1962] 1 W.L.R. 86, 115;

H

A  [1994] 1 Ch. 303, 353; *Attorney-General v. Power* [1906] 2 I.R. 272, 280 and *Figg v. Clarke* [1997] 1 W.L.R. 603.

As to costs, the defendants in bringing forward the preliminary points were acting in their own interest, not for the protection of the trust fund: contrast *In re Spurling's Will Trusts; Philpot v. Philpot* [1966] 1 W.L.R. 920. In the normal course of events trustees who lose in adversarial litigation have no right to be indemnified from, and have no lien for their
B  costs, on, the trust fund: see *McDonald v. Horn* [1995] I.C.R. 685, 694c–696d; *In re Buckton; Buckton v. Buckton* [1907] 2 Ch. 406, 413–415. [Reference was also made to *Holding and Management Ltd. v. Property Holding and Investment Trust Plc.* [1989] 1 W.L.R. 1313, 1324c–h.]

*Gregory Hill* for the trustees. Trustee exemption clauses are strictly construed but liability for anything short of fraud may be excluded by sufficiently clear words: see *Midland Bank Trustee (Jersey) Ltd. v. Federated*
C  *Pension Services Ltd.* [1996] P.L.R. 179, 192–197. An allegation of deliberate breach of trust is not, without more, an allegation of fraud within clause 15. Fraudulent conduct must be distinctly alleged: see *Belmont Finance Corporation Ltd. v. Williams Furniture Ltd.* [1979] Ch. 250, 268h and *Davy v. Garrett,* 7 Ch.D. 473, 489.

At common law, recklessness is a way of being dishonest, not an
D  alternative "badge of fraud:" see *Thomas Witter Ltd. v. T.B.P. Industries Ltd.* [1996] 2 All E.R. 573, 586j–587h, 588d–e. "Equitable fraud" cannot be exhaustively defined. But the established uses of the term do not apply to the instant case. Not every conscious breach of trust is ipso facto fraudulent. Actual fraud does not include constructive fraud: *Gladstone v. Padwick,* L.R. 6 Ex. 203, 211.

*Royal Brunei Airlines Sdn. Bhd. v. Tan* [1995] 2 A.C. 378 and *Baden v.*
E  *Société Générale pour Favoriser le Développement du Commerce et de l'Industrie en France S.A. (Note)* [1993] 1 W.L.R. 509 must be understood as cases on accessory liability in constructive trusteeship. [Reference was also made to *S. Pearson & Son Ltd. v. Dublin Corporation* [1907] A.C. 351; *In re Banister,* 12 Ch.D. 131; *Wilkins v. Hogg,* 31 L.J.Ch. 41, 43; *Pass v. Dundas,* 43 L.T. 665, 666; *Knox v. Mackinnon,* 13 App.Cas. 753; *Rae v.*
F  *Meek,* 14 App.Cas. 558; *Wyman v. Paterson* [1900] A.C. 271 and *Clarke v. Clarke's Trustees,* 1925 S.C. 693.]

The limitation period began to run against the plaintiff when she turned 18. The right to require the trustees to consider exercising discretions in her favour was sufficient to give her an interest in possession for this purpose: see *Leedale v. Lewis* [1982] 1 W.L.R. 1319. The decisions
G  on "interest in possession" for tax purposes are not conclusive for limitation. [Reference was also made to *Gartside v. Inland Revenue Commissioners* [1968] A.C. 553, 617–620; *Attorney-General v. Heywood* (1887) 19 Q.B.D. 326 and *In re Beckett's Settlement* [1940] Ch. 279, 285.] The proviso to section 21(3) of the Limitation Act 1980 is satisfied as soon as the beneficiary has an immediate right to receive or an immediate right to be considered for the immediate distribution of the fund and to receive
H  trust accounts: see *Chaine-Nickson v. Bank of Ireland* [1976] I.R. 393.

The trustees' lien over the trust fund extends to the costs of defending charges of breach of trust and can only be lost through misconduct: see *In re Spurling's Will Trusts; Philpot v. Philpot* [1966] 1 W.L.R. 920, 922c,

248

930G, 931D–932A, 933B–C, 935B–G, 936C–G and *Turner v. Hancock* (1882)    A
20 Ch.D. 303. R.S.C., Ord. 62, r. 6(2) is concerned with the regulation of
costs inter partes which are in the discretion of the court: see section 51(1)
of the Supreme Court Act 1981. If Ord. 62, r. 6(2) purports to alter
the substantive law as to the trustees' lien, it is ultra vires: cf. *In re
Grosvenor Hotel, London (No. 2)* [1965] Ch. 1210, 1243B–C, 1249F, 1262D.

*Cur. adv. vult.*    B

19 March.   The following judgments were handed down.

MILLETT L.J.   The main questions which arise in this appeal are
concerned with the true construction of a trustee exemption clause in a
settlement and the legitimate scope of such clauses in English law.    C
The appellant, Paula Rachel Armitage, has brought an action for
breach of trust against the respondents, who are the trustees and the
personal representatives of deceased trustees of a settlement of which she
is the principal beneficiary. The settlement contains a trustee exemption
clause (clause 15) in very wide and general terms as well as a special and
more limited exemption clause (clause 9). Jacob J. was asked to decide
three preliminary questions in the action. They may be summarised as    D
follows: (1) whether clause 15 of the settlement operates to absolve the
respondents from liability for all or any of the breaches alleged in the
amended statement of claim; (2) whether clause 9(a) of the settlement
operates to similar effect; and (3) whether any of Paula's claims in respect
of breaches of trust alleged to have been committed before 15 June 1987
are statute-barred.    E
The judge decided question (1) in the affirmative and questions (2) and
(3) in the negative. He awarded the respondents 80 per cent. of their costs
but deprived them of the right to reimburse themselves out of the trust
fund to the extent of the remaining 20 per cent.
Both parties appeal to this court. Paula appeals against the judge's
answer to question (1). The respondents appeal against his answers to
questions (2) and (3) and against his order depriving them of their right to    F
reimburse themselves for their costs out of the trust fund. We have given
leave to Paula to raise a further question which was not considered by the
judge. This is whether if, as the judge ruled, clause 15 on its true
construction exempts each of the respondents from all liability for breach
of trust other than liability for his own dishonesty, the clause is void for
repugnancy or on grounds of public policy.    G

*The facts*

The settlement was made on 11 October 1984. It was the result of an
application to the court by the trustees of a marriage settlement made by
Paula's grandfather for the variation of the trusts of the settlement under
the Variation of Trusts Act 1958. Paula's mother was life tenant under the
marriage settlement and Paula, who was then aged 17, was entitled in    H
remainder. The settled property consisted largely of land which was farmed
by a family company called G. W. Nurse & Co. Ltd. The company had
farmed the land for many years and, until March 1984, it had held a

Ch.                    Armitage v. Nurse (C.A.)              Millett L.J.

A   tenancy of the land. Paula's mother and grandmother were the sole
directors and shareholders of the company.

Under the terms of the variation the property subject to the trusts of
the marriage settlement was partitioned between Paula and her mother.
Part of the land together with a sum of £230,000 was transferred to Paula's
mother absolutely free and discharged from the trusts of the marriage
settlement. The remainder of the land ("Paula's land") together with a sum
B   of £30,000 was allocated to Paula. Since she was under age, her share was
directed to be held on the trusts of a settlement prepared for her benefit.
So the settlement came into being.

Under the trusts of the settlement the trustees held the income upon
trust to accumulate it until Paula attained 25 with power to pay it to her
or to apply it for her benefit. Thereafter, and until Paula attained 40, they
C   held the income upon trust to pay it to her. The capital was held in trust
for Paula at 40 with trusts over in the event of her death under that age,
and with provision for transferring the capital to Paula in instalments after
she had attained 25 but not 40.

The settlement, which must be taken to have been made by Paula as
well as by her mother, appears to have been drawn by counsel for the
marriage settlement trustees (Mr. P. W. E. Taylor Q.C. and Mr. Geoffrey
D   Jaques) and approved on Paula's behalf by junior counsel who appeared
for her guardian ad litem. It was approved on her behalf by the High
Court (Judge Fitz-Hugh Q.C. sitting as a judge of the Chancery Division).

*The pleadings*

The amended statement of claim pleads a number of breaches of trust
E   in detail. The judge summarised them under four heads. First, Paula
complains that in breach of trust the trustees appointed the company to
farm Paula's land as well as the land which had been transferred to her
mother. It is alleged that this was not merely grossly imprudent but was
expressly forbidden by clause 12 of the settlement, inserted for fiscal
reasons, which provides that no capital or income subject to the trusts of
the settlement shall in any circumstances whatsoever be paid or applied
F   beneficially (save for full consideration) or be applied for the benefit
whether directly or indirectly of Paula's mother or grandmother. (The
respondents, of course, plead that the company's obligation to manage the
farm constituted full consideration for the £500 a quarter which it was
paid for doing so. It is not alleged that the company's appointment had
any adverse fiscal consequences.) Secondly, it is alleged that in breach of
G   trust the trustees failed thereafter properly to supervise the company's
management of Paula's land. Thirdly, it is alleged that the trustees failed
to make proper inquiry into the reasons why the value of Paula's land
apparently fell dramatically between the date on which it was valued for
the purposes of the partition in 1984 and the date when it was sold in
1987. Finally, it is alleged that the trustees failed to obtain proper payment
of interest in respect of a loan made to Paula's mother.

H   Before us counsel for Paula has summarised the pleadings more
generally. They allege, he says, not merely a failure to distinguish between
Paula's interests and those of her family but a deliberate course of conduct
on the part of the trustees to disregard the interests of Paula and

250
Millett L.J.                     Armitage v. Nurse (C.A.)                     [1998]

A

subordinate them to the interests of her mother or other members of the family who were not objects of the trust, or at the very least a conscious indifference to Paula's interests.

Before analysing the pleadings in more detail, it is convenient to consider the scope of clause 15 of the settlement.

*Clause 15 of the settlement.*

B

Clause 15 of the settlement is in the following terms:

"No trustee shall be liable for any loss or damage which may happen to Paula's fund or any part thereof or the income thereof at any time or from any cause whatsoever *unless such loss or damage shall be caused by his own actual fraud...*." (My emphasis.)

C

The clause was taken from *Hallett's Conveyancing Precedents* (1965). A more prolix clause to the same effect may be found in *Key and Elphinstone's Precedents in Conveyancing*, 15th ed. (1953). In my judgment, the meaning of the clause is plain and unambiguous. No trustee can be made liable for loss or damage to the capital or income of the trust property caused otherwise than by his own actual fraud. "Actual fraud" means what it says. It does not mean "constructive fraud" or "equitable fraud." The word "actual" is deliberately chosen to exclude them.

D

Counsel for Paula submits that in a settlement the context requires the word "fraud" to be given the extended meaning which the courts of equity came to give it. The distinction between fraud properly so-called and other cases to which the Court of Chancery, in his own words, "undoubtedly did apply the term 'fraud,' although I think unfortunately" is expounded in the speech of Viscount Haldane L.C. in *Nocton v. Lord Ashburton* [1914] A.C. 932, 953. As he explained: "In Chancery the term 'fraud' thus came to be used to describe what fell short of deceit, but imported breach of a duty to which equity had attached its sanction." It is worthy of note that he himself used the expression "actual fraud" throughout his speech to distinguish cases of common law fraud or deceit from these other cases. Lord Dunedin did the same when he said, at p. 963: "if based on fraud, then, in accordance with the decision in *Derry v. Peek* (1889) 14 App.Cas. 337, the fraud proved must be actual fraud, a mens rea, an intention to deceive." *Derry v. Peek* established that nothing short of a fraudulent intention in the strict sense will suffice for a case of deceit or fraud properly so-called. It requires proof of dishonesty. Nothing less will do. Gross and culpable negligence is not enough. This was confirmed in *Nocton v. Lord Ashburton*, which also established that dishonesty is not a necessary factor in cases of so-called equitable fraud.

E

F

G

In my judgment, therefore, clause 15 is apt to exclude liability for breach of trust in the absence of a dishonest intention on the part of the trustee whose conduct is impugned. I would have added nothing further but for the confusion which appears to have been engendered in the attempt to apply the concept of actual fraud to an allegation of breach of trust.

H

The common law knows no generalised tort of fraud. *Derry v. Peek*, 14 App.Cas. 337 was an action for damages for deceit, that is to say, for fraudulent misrepresentation. In such a case fraud must be proved by

A    showing that the false representation was made knowingly, that is to say, without an honest belief in its truth, or recklessly, that is to say, not caring whether it was true or false. Care needs to be taken when these concepts are applied not to a representation but to a breach of trust. Breaches of trust are of many different kinds. A breach of trust may be deliberate or inadvertent; it may consist of an actual misappropriation or misapplication of the trust property or merely of an investment or other dealing which is outside the trustees' powers; it may consist of a failure to carry out a positive obligation of the trustees or merely of a want of skill and care on their part in the management of the trust property; it may be injurious to the interests of the beneficiaries or be actually to their benefit. By consciously acting beyond their powers (as, for example, by making an investment which they know to be unauthorised) the trustees may deliberately commit a breach of trust; but if they do so in good faith and in the honest belief that they are acting in the interest of the beneficiaries their conduct is not fraudulent. So a deliberate breach of trust is not necessarily fraudulent. Hence the remark famously attributed to Selwyn L.J. by Sir Nathaniel Lindley M.R. in the course of argument in *Perrins v. Bellamy* [1899] 1 Ch. 797, 798: "My old master, the late Selwyn L.J., used to say, 'The main duty of a trustee is to commit *judicious* breaches of trust.'" The expression "actual fraud" in clause 15 is not used to describe the common law tort of deceit. As the judge appreciated it simply means dishonesty. I accept the formulation put forward by Mr. Hill on behalf of the respondents which (as I have slightly modified it) is that it

E    "connotes at the minimum an intention on the part of the trustee to pursue a particular course of action, either knowing that it is contrary to the interests of the beneficiaries or being recklessly indifferent whether it is contrary to their interests or not."

It is the duty of a trustee to manage the trust property and deal with it in the interests of the beneficiaries. If he acts in a way which he does not honestly believe is in their interests then he is acting dishonestly. It does not matter whether he stands or thinks he stands to gain personally from his actions. A trustee who acts with the intention of benefiting persons who are not the objects of the trust is not the less dishonest because he does not intend to benefit himself.

In my judgment clause 15 exempts the trustee from liability for loss or damage to the trust property no matter how indolent, imprudent, lacking in diligence, negligent or wilful he may have been, so long as he has not acted dishonestly.

*The permitted scope of trustee exemption clauses*

It is submitted on behalf of Paula that a trustee exemption clause which purports to exclude all liability except for actual fraud is void, either for repugnancy or as contrary to public policy. There is some academic support for the submission (notably an article by Professor Matthews, "The Efficacy of Trustee Exemption Clauses in English Law" [1989] Conv. 42 and *Hanbury & Martin's Modern Equity*, 14th ed. (1993), pp. 473–474) that liability for gross negligence cannot be excluded, but this is not the view taken in *Underhill and Hayton's Law of Trusts and Trustees*, 15th ed.

(1995), pp. 560–561 (where it appears to be taken only because the editor   A
confusingly uses the term "gross negligence" to mean reckless indifference
to the interests of the beneficiaries). In its consultation paper Fiduciary
Duties and Regulatory Rules, A Summary (1992) (Law Com. No. 124),
para. 3.3.41 the Law Commission states:

> "Beyond this, trustees and fiduciaries cannot exempt themselves
> from liability for fraud, bad faith and wilful default. It is not, however,   B
> clear whether the prohibition on exclusion of liability for 'fraud' in
> this context only prohibits the exclusion of common law fraud or
> extends to the much broader doctrine of equitable fraud. It is also not
> altogether clear whether the prohibition on the exclusion of liability
> for 'wilful default' also prohibits exclusion of liability for gross
> negligence although we incline to the view that it does."

C

This passage calls for two comments. First, the expression "wilful
default" is used in the cases in two senses. A trustee is said to be
accountable on the footing of wilful default when he is accountable not
only for money which he has in fact received but also for money which he
could with reasonable diligence have received. It is sufficient that the
trustee has been guilty of a want of ordinary prudence: see e.g. In re   D
Chapman; Cocks v. Chapman [1896] 2 Ch. 763. In the context of a trustee
exclusion clause, however, such as section 30 of the Trustee Act 1925, it
means a deliberate breach of trust: In re Vickery; Vickery v. Stephens [1931]
1 Ch. 572. The decision has been criticised, but it is in line with earlier
authority: see Lewis v. Great Western Railway Co. (1877) 3 Q.B.D. 195; In
re Trusts of Leeds City Brewery Ltd.'s Debenture Stock Trust Deed; Leeds
City Brewery Ltd. v. Platts (Note) [1925] Ch. 532 and In re City Equitable   E
Fire Insurance Co. Ltd. [1925] Ch. 407. Nothing less than conscious and
wilful misconduct is sufficient. The trustee must be

> "conscious that, in doing the act which is complained of or in
> omitting to do the act which it said he ought to have done, he is
> committing a breach of his duty, or is recklessly careless whether it is
> a breach of his duty or not:" see In re Vickery [1931] 1 Ch. 572, 583,   F
> per Maugham J.

A trustee who is guilty of such conduct either consciously takes a risk that
loss will result, or is recklessly indifferent whether it will or not. If the risk
eventuates he is personally liable. But if he consciously takes the risk in
good faith and with the best intentions, honestly believing that the risk is
one which ought to be taken in the interests of the beneficiaries, there is   G
no reason why he should not be protected by an exemption clause which
excludes liability for wilful default.

Secondly, the Law Commission was considering the position of
fiduciaries as well as trustees, and in such a context it is sensible to
consider the exclusion of liability for so-called equitable fraud. But it
makes no sense in the present context. The nature of equitable fraud may
be collected from the speech of Viscount Haldane L.C. in Nocton v. Lord   H
Ashburton [1914] A.C. 932, 953 and Snell's Equity, 29th ed. (1990),
pp. 550–551. It covers breach of fiduciary duty, undue influence, abuse of
confidence, unconscionable bargains and frauds on powers. With the sole

253

A    exception of the last, which is a technical doctrine in which the word
"fraud" merely connotes excess of vires, it involves some dealing by the
fiduciary with his principal and the risk that the fiduciary may have
exploited his position to his own advantage. In *Earl of Aylesford v. Morris*
(1873) L.R. 8 Ch.App. 484, 490–491 Lord Selborne L.C. said: "Fraud does
not here mean deceit or circumvention; it means an unconscientious use
of the power arising out of these circumstances and conditions; ..." A
B    trustee exemption clause such as clause 15 of the settlement does not
purport to exclude the liability of the fiduciary in such cases. Suppose, for
example, that one of the respondents had purchased Paula's land at a
proper price from his fellow trustees. The sale would be liable to be set
aside. Clause 15 would not prevent this. This is not because the purchasing
trustee would have been guilty of equitable fraud, but because by claiming
C    to recover the trust property (or even equitable compensation) Paula would
not be suing in respect of any "loss or damage" to the trust. Her right to
recover the land would not depend on proof of loss or damage. Her claim
would succeed even if the sale was at an overvalue; the purchasing trustee
could never obtain more than a defeasible title from such a transaction.
But clause 15 would be effective to exempt his fellow trustees from liability
for making good any loss which the sale had occasioned to the trust estate
D    so long as they had acted in good faith and in what they honestly believed
was Paula's interests.

Accordingly, much of the argument before us which disputes the ability
of a trustee exemption clause to exclude liability for equitable fraud or
unconscionable behaviour is misplaced. But it is unnecessary to explore
this further, for no such conduct is pleaded. What is pleaded is, at the very
E    lowest, culpable and probably gross negligence. So, the question reduces
itself to this: can a trustee exemption clause validly exclude liability for
gross negligence?

It is a bold submission that a clause taken from one standard precedent
book and to the same effect as a clause found in another, included in a
settlement drawn by Chancery counsel and approved by counsel acting for
an infant settlor and by the court on her behalf, should be so repugnant
F    to the trusts or contrary to public policy that it is liable to be set aside at
her suit. But the submission has been made and we must consider it. In
my judgment it is without foundation.

There can be no question of the clause being repugnant to the trust.
In *Wilkins v. Hogg* (1861) 31 L.J.Ch. 41, 42 Lord Westbury L.C. challenged
counsel to cite a case where an indemnity clause protecting the trustee
G    from his ordinary duty had been held so repugnant as to be rejected.
Counsel was unable to do so. No such case has occurred in England or
Scotland since.

I accept the submission made on behalf of Paula that there is an
irreducible core of obligations owed by the trustees to the beneficiaries and
enforceable by them which is fundamental to the concept of a trust. If the
beneficiaries have no rights enforceable against the trustees there are no
H    trusts. But I do not accept the further submission that these core
obligations include the duties of skill and care, prudence and diligence.
The duty of the trustees to perform the trusts honestly and in good faith
for the benefit of the beneficiaries is the minimum necessary to give

substance to the trusts, but in my opinion it is sufficient. As Mr. Hill    A
pertinently pointed out in his able argument, a trustee who relied on the
presence of a trustee exemption clause to justify what he proposed to do
would thereby lose its protection: he would be acting recklessly in the
proper sense of the term.

It is, of course, far too late to suggest that the exclusion in a contract
of liability for ordinary negligence or want of care is contrary to public    B
policy. What is true of a contract must be equally true of a settlement. It
would be very surprising if our law drew the line between liability for
ordinary negligence and liability for gross negligence. In this respect
English law differs from civil law systems, for it has always drawn a sharp
distinction between negligence, however gross, on the one hand and fraud,
bad faith and wilful misconduct on the other. The doctrine of the common
law is that: "Gross negligence may be evidence of mala fides, but is not    C
the same thing:" see *Goodman v. Harvey* (1836) 4 A. & E. 870, 876, *per*
Lord Denman C.J. But while we regard the difference between fraud on
the one hand and mere negligence, however gross, on the other as a
difference in kind, we regard the difference between negligence and gross
negligence as merely one of degree. English lawyers have always had a
healthy disrespect for the latter distinction. In *Hinton v. Dibbin* (1842)    D
2 Q.B. 646 Lord Denman C.J. doubted whether any intelligible distinction
exists; while in *Grill v. General Iron Screw Collier Co.* (1866) L.R. 1 C.P.
600, 612 Willes J. famously observed that gross negligence is ordinary
negligence with a vituperative epithet. But civilian systems draw the line in
a different place. The doctrine is culpa lata dolo aequiparatur; and
although the maxim itself is not Roman the principle is classical. There is
no room for the maxim in the common law; it is not mentioned in *Broom's*    E
*Legal Maxims*, 10th ed. (1939).

The submission that it is contrary to public policy to exclude the
liability of a trustee for gross negligence is not supported by any English
or Scottish authority. The cases relied on are the English cases of *Wilkins*
*v. Hogg*, 31 L.J.Ch. 41 and *Pass v. Dundas* (1880) 43 L.T. 665; and the
Scottish cases of *Knox v. Mackinnon* (1888) 13 App.Cas. 753, *Rae v. Meek*    F
(1889) 14 App.Cas. 558, *Wyman v. Paterson* [1900] A.C. 271 and *Clarke v.*
*Clarke's Trustees*, 1925 S.C. 693. These cases, together with two other
Scottish cases, *Seton v. Dawson* (1841) 4 D. 310 and *Carruthers v.*
*Carruthers* [1896] A.C. 659, and cases from the Commonwealth and
America, were reviewed by the Jersey Court of Appeal in *Midland Bank*
*Trustee (Jersey) Ltd. v. Federated Pension Services Ltd.* [1996] P.L.R. 179
in a masterly judgment delivered by Sir Godfray Le Quesne Q.C.    G

In *Wilkins v. Hogg*, 31 L.J.Ch. 41 Lord Westbury L.C. accepted that
no exemption clause could absolve a trustee from liability for knowingly
participating in a fraudulent breach of trust by his co-trustee. But, subject
thereto, he was clearly of opinion that a settlor could, by appropriate
words, limit the scope of the trustee's liability in any way he chose. The
decision was followed in *Pass v. Dundas*, 43 L.T. 665, where the relevant    H
clause was held to absolve the trustee from liability. In the course of his
judgment Sir James Bacon V.-C. stated the law in the terms in which
counsel for the unsuccessful beneficiaries had stated it, viz. that the clause

255

Ch.                    Armitage v. Nurse (C.A.)                    Millett L.J.

A    protected the trustee from liability unless gross negligence was established;
but this was plainly obiter.

Each of the Scottish cases contains dicta, especially in the speeches of
the Scottish members of the House of Lords, which have been taken by
academic writers to indicate that no trustee exemption clause in a Scottish
settlement could exonerate a trustee from his own culpa lata. But in fact
all the cases were merely decisions on the true construction of the
B    particular clauses under consideration, which were in common form at the
time. In *Knox v. Mackinnon*, 13 App.Cas. 753, for example, it was
unnecessary to consider the exemption clause since the transaction in
question was outside its scope. Lord Watson, nevertheless, speaking of
"a clause conceived *in these or similar terms*," said, at pp. 765–766, that it
was the settled law of Scotland that "such a clause is ineffectual to protect
C    a trustee against the consequences of culpa lata, or gross negligence on his
part," and added, quoting Lords Ivory, Gillies and Murray in *Seton v.
Dawson*, 4 D. 310, 318, that "*clauses of this kind* do not protect against
positive breach of duty" (my emphasis). In *Seton v. Dawson* the judges
who were in the majority spoke to the same effect both of "the protecting
clause which occurs in this particular deed" and of "the usual clauses
framed for the same object." In *Rae v. Meek*, 14 App.Cas. 558, 572–573
D    Lord Herschell pointed out that the clause in question was a common one
found in many trust deeds and did not come before the court for
construction for the first time. He said that its effect had been considered
in *Seton v. Dawson* and adopted the passage in Lord Watson's speech in
*Knox v. Mackinnon* to which I have already referred. In *Carruthers v.
Carruthers* [1896] A.C. 659 the House was concerned with a standard
E    trustee exemption clause which was to be treated as inserted into the trust
deed. Their Lordships held that the terms of such a clause would not
exempt trustees from liability for culpa lata. *Wyman v. Paterson* [1900]
A.C. 271 was not a case of negligence at all, but of a plain failure to
perform a positive obligation. It turned on the true construction of the
particular clause under consideration. In *Clarke v. Clarke's Trustees*, 1925
S.C. 693 the Lord President, Lord Clyde, held that the clause in question
F    did not protect the trustees from the consequence of their negligence. He
added, at p. 707:

"It is difficult to imagine that any clause of indemnity in a trust
settlement could be capable of being construed to mean that the
trustees might with impunity neglect to execute their duty as trustees,
in other words, that they were licensed to perform their duty carelessly.
G    There is at any rate no such clause in this settlement."

It is not easy to know what to make of this (save that it was obiter).
In *Midland Bank Trustee (Jersey) Ltd. v. Federated Pension Services Ltd.*
[1996] P.L.R. 179, Sir Godfray Le Quesne Q.C. read the passage as directed
to the construction of the indemnity clauses common in Scottish
settlements at the time. I do not so read it. I tend to think that the Lord
H    President was saying that it was difficult to conceive of a settlor permitting
the inclusion of a clause which would have the effect stated. But I agree
with Sir Godfray that the Lord President was emphasising the need to
exclude liability for negligence by clear and unambiguous words, and was

256
Millett L.J.                    Armitage v. Nurse (C.A.)                    [1998]

not purporting to exclude the possibility of such a clause on the grounds    A
of public policy.

I agree with the conclusion of the Jersey Court of Appeal that all these cases are concerned with the true construction of the particular clauses under consideration or of similar clauses in standard form in the 19th century. None of them deal with the much wider form of clause which has become common in the present century, and none of them are authority for the proposition that it is contrary to public policy to exclude liability    B
for gross negligence by an appropriate clause clearly worded to have that effect.

At the same time, it must be acknowledged that the view is widely held that these clauses have gone too far, and that trustees who charge for their services and who, as professional men, would not dream of excluding liability for ordinary professional negligence should not be able to rely on    C
a trustee exemption clause excluding liability for gross negligence. Jersey introduced a law in 1989 which denies effect to a trustee exemption clause which purports to absolve a trustee from liability for his own "fraud, wilful misconduct or gross negligence." The subject is presently under consideration in this country by the Trust Law Committee under the chairmanship of Sir John Vinelott. If clauses such as clause 15 of the settlement are to be denied effect, then in my opinion this should be done    D
by Parliament, which will have the advantage of wide consultation with interested bodies and the advice of the Trust Law Committee.

*Do the pleadings allege fraud?*

The position which I have reached so far, therefore, is that the respondents are absolved by clause 15 of the settlement from liability for    E
all loss or damage to the trust estate except loss or damage caused by their own dishonesty or the dishonesty of their deceased. The question which then arises is: does the amended statement of claim allege dishonesty?

In opening the appeal counsel for Paula expressly disclaimed any intention to allege dishonesty. He did the same before the judge. I would not, myself, hold him to this concession, from which he later resiled,    F
because I think that he may have understood the word "dishonesty" more narrowly than is justified. I take his concession to mean only that it is not intended to allege that any of the trustees acted for their own personal benefit.

The general principle is well known. Fraud must be distinctly alleged and as distinctly proved: *Davy v. Garrett* (1878) 7 Ch.D. 473, 489, *per* Thesiger L.J. It is not necessary to use the word "fraud" or "dishonesty"    G
if the facts which make the conduct complained of fraudulent are pleaded; but, if the facts pleaded are consistent with innocence, then it is not open to the court to find fraud. As Buckley L.J. said in *Belmont Finance Corporation Ltd. v. Williams Furniture Ltd.* [1979] Ch. 250, 268:

"An allegation of dishonesty must be pleaded clearly and with particularity. That is laid down by the rules and it is a well-recognised    H
rule of practice. This does not import that the word 'fraud' or the word 'dishonesty' must be necessarily used ... The facts alleged may sufficiently demonstrate that dishonesty is allegedly involved, but where the facts are complicated this may not be so clear, and in such

257

Ch.                          Armitage v. Nurse (C.A.)                     Millett L.J.

A   a case it is incumbent upon the pleader to make it clear when
dishonesty is alleged. If he uses language which is equivocal, rendering
it doubtful whether he is in fact relying on the alleged dishonesty of
the transaction, this will be fatal; the allegation of its dishonest nature
will not have been pleaded with sufficient clarity."

B   That case is authority for the proposition that an allegation that the
defendant "knew or ought to have known" is not a clear and unequivocal
allegation of actual knowledge and will not support a finding of fraud. It
is not treated as making two alternative allegations, i.e. an allegation
(i) that the defendant actually knew with an alternative allegation (ii) that
he ought to have known; but rather a single allegation that he ought to
have known (and may even have known—though it is not necessary to
C   allege this).

Before turning to the pleadings I would add one thing more. In order
to allege fraud it is not sufficient to sprinkle a pleading with words like
"wilfully" and "recklessly" (but not "fraudulently" or "dishonestly"). This
may still leave it in doubt whether the words are being used in a technical
sense or merely to give colour by way of pejorative emphasis to the
complaint.

D   I shall now consider the detailed allegations in the amended statement
of claim.

(1) The appointment of the company. This is dealt with in paragraphs
7 and 8. The substance of the complaint is that the appointment was ill-
advised and that the trustees ought to have known this. It is not alleged
that they had any improper object in making the appointment. Despite the
E   repeated use of the words "in reckless and wilful breach of trust" the
complaints to which they relate are complaints of omission. They are
consistent with honest incompetence. If proved, they support a finding of
negligence, even of gross negligence; but not of fraud.

(2) The failure to supervise the company. This is dealt with in
paragraph 9 of the amended statement of claim. The substance of the
allegations in paragraph 9.1(1) to (5) and (8) to (11) is neglect of duty.
F   The complaints are complaints of omission. They are consistent with
honest incompetence. At best the charge is one of indolence, at worst of
negligence.

Paragraph 9.1(6) stands on a different footing. It alleges that the
trustees "consciously determined" to limit the income of Paula's fund to
£15,000 "and/or to allow [the company] to buy equipment or to build up
G   its capital." This is supported by particulars which refer to a note by one
of the trustees (unfortunately now dead) which appears to show that the
trustees considered that it was undesirable that Paula's fund should have
too much income. I am satisfied that, considered by itself, the sub-
paragraph does not sufficiently allege fraud. It is equivocal. It is unclear
whether it is alleged that the trustees had an improper purpose or what
that purpose was. In particular, it does not distinctly allege (though it may
H   hint) that the trustees deliberately decided to limit the income of Paula's
fund in order to benefit the company or its shareholders (who were not
objects of the trust); nor do I understand how the one was capable of
achieving the other, given the nature of the contractual arrangements with

258
Millett L.J.                    Armitage v. Nurse (C.A.)                    [1998]

the company. The note referred to in the particulars plainly calls for an    A
explanation, but it is not inconsistent with honesty. I can think of several
possible explanations, all innocent and plausible.

In any case, paragraph 9.1(6) cannot support an independent allegation
of breach of trust, since the note was apparently never acted on. It was
written in connection with a contemplated transaction which in the event
did not proceed, and in respect of which it is not alleged that failure to
carry the transaction into effect was the fault of the trustees let alone    B
amounted to a breach of trust on their part. At the most, therefore, the
sub-paragraph could provide particulars of the matters relied on in support
of an allegation of improper purpose made elsewhere.

Paragraph 9.1(7) complains that the trustees wrongly delegated certain
of their powers to the company. If such delegation was not authorised it
constituted a breach of trust. But, in the absence of an averment that the    C
trustees delegated their powers in the knowledge that this would result in
a misapplication of trust money and that it did so, this is not a charge of
fraud.

The several complaints in paragraph 9.1 (including paragraph 9.1(6))
are summarised in paragraph 9.11(A) in terms which confirm that they are
allegations of neglect of duty only, not allegations of fraud. Paragraphs 9.2
contains the allegation that the trustees were guilty of "reckless and wilful    D
breach of trust" but in its context this is a meaningless incantation. The
purpose of paragraphs 9.2 and 9.2A is to allege that the trustees' failure
to supervise the company or to manage Paula's land properly caused loss
to the trust fund.

(3) The value of Paula's land. This is dealt with by paragraph 11.
Paula's land was sold in 1987 for £299,000, i.e. £175,000 less than the    E
value assigned to it at the time of the partition. It was sold on the basis
of professional advice and to a purchaser at arm's length, and it is not
alleged that the sale was at an undervalue. The complaint is only that the
trustees failed to inquire into the reasons for the apparent decline in
the value of Paula's land, said to be all the more surprising given that the
land appropriated to Paula's mother (which was sold at the same time)
had appreciated in value; and failed to investigate the possibility that they    F
might have a cause of action against the valuers who had valued Paula's
land at the time of the partition, or against the company for the negligent
management of Paula's land. These are charges of negligence, not fraud;
and this is confirmed by the terms in which the complaints are summarised
in paragraph 11.6.

(4) Payment of interest. This is dealt with in paragraphs 12 and 13. In    G
order to assist Paula's mother, the trustees agreed to purchase from her
the house where Paula lived with her. The agreement was, it appears,
subject to contract, and in the event Paula's mother did not proceed. In
the meantime, however, the trustees raised £200,000 from the capital of the
settlement and used it to pay off a legal charge which the bank had over
the house, taking a deposit of the title deeds by way of security. In due
course the house was sold, and the trustees were paid the sum of £200,000    H
with simple interest at 8 per cent. during the 16-month period of the loan.
It is alleged that the transaction constituted a breach of trust, but the only
relief claimed in respect of it is in respect of an alleged deficiency of

A    interest. It is not alleged that 8 per cent. was below the commercial rate of interest properly chargeable in respect of the loan.

In the absence of clause 15 the trustees would, I apprehend, be liable to account on the footing of wilful default (which in this context, it will be remembered, means lack of due diligence) for the difference between simple interest at 8 per cent. and compound interest at a commercial rate (if higher). Clause 15 exonerates the trustees from any liability to account

B    on the footing of wilful default unless they have been dishonest. It is not alleged that the trustees deliberately undercharged or acted dishonestly in not obtaining a higher rate or compound interest. The pleading is consistent with innocence. It does not amount to a charge of fraud.

(5) The subordination of Paula's interests to those of her mother. This appears only in paragraph 9.3. So far as material it reads:

C       "It is averred that *in the premises* [the trustees] pursued a policy ... which failed and neglected to give paramount consideration to the best interests of Paula and instead ... pursued a policy designed to benefit [Paula's mother and grandmother] who were not objects of the trust." (My emphasis.)

D    In my judgment, this pleading is embarrassing. It is difficult to know whether it alleges fraud or not. If the word "designed" means "intended" then it does. But the word may mean merely "calculated" (in the sense of "likely"). If it were merely a matter of construing the paragraph, I would be inclined to think that the word should be taken in its latter signification, so as not to involve a charge of fraud. I would say this for two reasons. First, the words "in the premises" show that paragraph 9.3 does not contain a new allegation but rather a summary of the effect of the

E    allegations previously made in paragraph 9; and nothing in the earlier parts of the paragraph (not even paragraph 9.6) amounts to a charge of fraud. Second, the first part of paragraph 9.3 alleges only that the trustees pursued a policy which was objectionable because it failed in fact to give paramount consideration to Paula's interests, not that it was their chosen policy not to do so. That is not a charge of fraud. Given the ambiguity in

F    the word "designed," I would give it the meaning which makes the second part of the paragraph mirror the first. Accordingly, I read the paragraph as alleging nothing more than a failure on the part of the trustees to distinguish properly between Paula's interests and those of her mother and grandmother. That is not a charge of fraud.

But it is not just a question of construction. The pleading is clearly equivocal. Without amendment, it cannot support a finding of fraud.

G    *Question (1)*

I am of opinion that, as at present drawn, the amended statement of claim does not allege dishonesty or any breach of trust for which the trustees are not absolved from liability by clause 15. Accordingly, I would answer question (1) in the affirmative as the judge answered it.

H    *Clause 9(a) of the settlement*

Clause 9(a) of the settlement reads:

"the trustees ... shall have power to carry on or join or assist in carrying on or directing any business of farming ... with power for

260
Millett L.J.                    Armitage v. Nurse (C.A.)                    [1998]

that purpose ... to employ or engage ... any managers or agents ...    A
and to delegate all or any of the powers vested in them in relation to
the business ... *And the trustees shall be free from all responsibility and
be fully indemnified out of Paula's fund in respect of any loss arising in
relation to the business.*" (My emphasis.)

In the absence of the clause, the trustees would have no power to carry
on a farming business, whether themselves or through an agent. If they    B
did so, however prudently, they would commit a breach of trust. The
clause confers the necessary powers. The judge rightly held that the
concluding words of the clause confer upon the trustees a consequential
exemption from liability for trading losses incurred in the carrying on of
the farming business. It does not exonerate them from liability for
imprudently investing in a farming business yielding poor returns or from    C
failing to ensure that the business is properly managed.

*Question (2)*

Accordingly, I would answer question (2) in the negative as the judge
answered it.

                                                                            D

*Limitation*

Section 21 of the Limitation Act 1980 provides:

"(1) No period of limitation prescribed by this Act shall apply to
an action by a beneficiary under a trust, being an action—(*a*) in
respect of any fraud or fraudulent breach of trust to which the trustee
was a party or privy; ... (3) Subject to the preceding provisions of    E
this section, an action by a beneficiary ... in respect of any breach of
trust ... shall not be brought after the expiration of six years from
the date on which the right of action accrued. For the purposes of
this subsection, the right of action shall not be treated as having
accrued to any beneficiary entitled to a future interest in the trust
property until the interest fell into possession."                      F

Two questions have been argued. The first is whether section 21(1)(*a*)
is limited to cases of fraud or fraudulent breach of trust properly so called,
that is to say to cases involving dishonesty. The judge held that it is. In my
judgment, he was plainly right for the reasons which he gave.
I have explained the meaning of the word "fraud" in a trustee exemption
clause, and there is no reason to ascribe a different meaning to the word    G
where it appears in section 21(1)(*a*) of the Limitation Act 1980. Moreover,
the meaning of the subsection is not free from authority. Its predecessor,
section 26 of the Limitation Act 1939, was held to "mean what it says"
and to be limited to cases where fraud was an ingredient of the wrong; see
*Beaman v. A.R.T.S. Ltd.* [1949] 1 K.B. 550, 558, *per* Lord Greene M.R.
The meaning of the words "fraud" and "fraudulent" in section 21(1)(*a*) is
not distorted by the meaning of the expression "concealed fraud" formerly    H
used in section 26 of the Act of 1939 and which was given a very special
meaning but has been replaced in the Act of 1980 by the more accurate
expression "deliberate concealment." The result is that in the absence of

261

Ch.                          Armitage v. Nurse (C.A.)                          Millett L.J.

A   deliberate concealment liability for an honest breach of trust is statute-
barred after six years, but liability for a dishonest breach of trust endures
without limitation of time.

The second question is whether Paula had a present interest while she
was under the age of 25 or whether she had only a future interest which
fell into possession when she attained that age. The judge held that she
had merely a future interest. In my judgment, he was right. Until Paula
B   attained 25 the trustees held the trust fund upon trust to accumulate the
income with power instead to pay it to Paula or to apply it for her benefit.
She had no present right to capital or income but only the right to require
the trustees to consider from time to time whether to accumulate the
income or to exercise their power to pay or apply it for her benefit. That,
in my judgment, is not an interest in possession. Paula was, of course, a
beneficiary and as such was entitled to see the trust documents. The
C   respondents submit that this was sufficient to give her an interest in
possession within the meaning of the section, and cite *Leedale v. Lewis*
[1982] 1 W.L.R. 1319 in support. In my judgment, that case does not assist
the respondents. As Lord Wilberforce pointed out, at p. 1329: "The word
'interest' is one of uncertain meaning and it remains to be decided on the
terms of the applicable statute which, or possibly what other, meaning the
D   word may bear."

The statutory language and context in that case compelled the
conclusion that an object of a discretionary trust of capital and income
had an interest in settled property. *Attorney-General v. Heywood* (1887)
19 Q.B.D. 326 was to similar effect. That decision was approved in *Gartside
v. Inland Revenue Commissioners* [1968] A.C. 553, where, however, a
different conclusion was reached because of the different context in which
E   the word "interest" was used.

The meaning of the word must, therefore, be ascertained from the
context in which it appears. As the tax cases show, the evident policy of a
taxing Act may sometimes make it necessary that an object of a
discretionary trust or power should be treated as having an interest and
sometimes it may show the contrary. The question thus depends upon
identifying the legislative purpose which section 21(3) of the Act of 1980
F   is intended to achieve.

The respondents submit that the policy to which section 21(3) of the
Act of 1980 gives effect is that it would be unfair to bar a plaintiff from
bringing a claim unless and until he is of full age and entitled to see the
trust documents and so has the means of discovering the injury to his
beneficial interest. The difficulty with this argument, in my judgment, is
that it proves too much. Every beneficiary is entitled to see the trust
G   accounts, whether his interest is in possession or not. The rationale of
section 21(3) appears to me to be different. It is not that a beneficiary
with a future interest has not the means of discovery, but that he should
not be compelled to litigate (at considerable personal expense) in respect
of an injury to an interest which he may never live to enjoy. Similar
reasoning would apply to exclude a person who is merely the object of a
H   discretionary trust or power which may never be exercised in his favour.

*Question (3)*

Accordingly, I would answer question (3) also in the negative, as did
the judge.

262

Millett L.J.                    Armitage v. Nurse (C.A.)                    [1998]

*Costs*                                                                        A

The judge awarded the respondents 80 per cent. of their costs, depriving them of the remaining 20 per cent. because they were unsuccessful on two of the points which had been argued. After hearing further argument, he directed that the respondents should not be at liberty to reimburse themselves out of the trust fund to the extent of that 20 per cent. He considered that the respondents were defending themselves and, having taken points which cost money and in respect of which they were unsuccessful, ought to bear those costs themselves.                  B

The judge recognised that there was long-standing authority to the contrary, but held that it was displaced by the terms of R.S.C., Ord. 62, r. 6(2). That rule entitles a trustee to recoup his costs out of the trust fund and authorises the court to order otherwise "only on the ground that he has acted unreasonably or, in the case of a trustee or personal representative, has in substance acted for his own benefit rather than for the benefit of the fund."                                           C

The respondents cross-appeal from the judge's ruling, which, they claim, deprives them of their legal rights. They submit that trustees are entitled to a lien over the trust fund for their costs, and that this lien extends to the costs of litigation, including the costs of defending themselves against a charge of breach of trust: see *Turner v. Hancock* (1882) 20 Ch.D. 303 and *In re Spurling's Will Trusts; Philpot v. Philpot* [1966] 1 W.L.R. 920. The lien is only lost by misconduct.        D

But the principle is in my opinion overstated. Trustees are entitled to a lien on the trust fund for the costs of successfully defending themselves against an action for breach of trust. That was the position in *In re Spurling's Will Trusts* as it was in *Walters v. Woodbridge* (1878) 7 Ch.D. 504, which it followed. But on what principle can one justify their right to recoup themselves out of the trust fund for the costs of unsuccessfully defending themselves against such an action? It offends all sense of justice. The respondents rely on *Turner v. Hancock*, 20 Ch.D. 303 and submit that that was just such a case; but I do not think that it was. The action was an action for an account. On taking the accounts it was found that a sum was due from the trustee and not to him as he contended. It was therefore a case in which the trustee was unsuccessful; but it was not a case in which he was found to be guilty of misconduct or breach of trust. In the course of his judgment Sir George Jessel M.R. said, at p. 305:                 E

F

"These rights ... can only be lost or curtailed by such inequitable conduct on the part of a mortgagee or trustee as may amount to a violation or culpable neglect of his duty under the contract.... It is not the course of the court in modern times to discourage persons from becoming trustees by inflicting costs upon them if they have done their duty, or even if they have committed an innocent breach of trust."                                                    G

As Ungoed-Thomas J. pointed out in *In re Spurling's Will Trusts* [1966] 1 W.L.R. 920, 935–936, it is not enough to deprive trustees of their right to recoup their costs out of the trust fund that the claim is a claim to recover money from them for the benefit of the trust. If the trustees succeed, then the claim was not well founded, and they cannot be denied          H

A    their right of recoupment. I would add that, even if the claim succeeds, yet
they may not have so conducted themselves as to lose their right of
recoupment.

In the present case, the judge deprived the respondents of 20 per cent.
of their costs because they had put forward arguments on which they had
been unsuccessful. That was a proper exercise of his discretion. But he also
deprived them of their right to recoup themselves out of the trust fund to
B    the extent of that 20 per cent. on the ground that the claim was a hostile
claim against them personally for breach of trust. In my opinion, that was
not a sufficient ground for denying them their contractual rights. As things
stood at the conclusion of the judge's judgment, he had held that the
respondents were absolved by clause 15 from liability in respect of all
the claims for breach of trust pleaded against them, with the result that the
C    greater part of the action was bound to fail (there is a claim to an account
in respect of a separate matter which is not particularly contentious and
which would survive). Accordingly, unless the pleadings were amended, the
action would be dismissed without any inquiry into the trustees' conduct.
This would not provide any basis for depriving the respondents of their
rights.

Accordingly, I would set aside this part of the judge's order.

D

*Amendment of the pleadings*

At the conclusion of *Belmont Finance Corporation Ltd. v. Williams
Furniture Ltd.* [1979] Ch. 250 this court granted the unsuccessful respondent
leave to amend the pleadings. No such application is before us. Nevertheless
I think that Paula should be given the opportunity to re-amend the
E    amended statement of claim if so advised. I express no view on whether
there is material which would justify counsel in advising such a course;
and I would not wish to encourage it. They will no doubt bear in mind
that at the material time the trustees of the settlement consisted of one
professional man and two distant relatives, and that a charge of fraud
against independent professional trustees is, in the absence of some
F    financial or other incentive, inherently implausible.

The possibility of amendment affects the order for costs which ought
to be substituted for the order which the judge made. In my judgment, the
respondents should have the right to recoup themselves out of the trust
fund but only if and when the action against them is discontinued or
dismissed. If the action is repleaded and succeeds against any of them,
then the unsuccessful respondents should not recoup themselves out of the
G    trust fund without the leave of the court given after trial of the action.

*Conclusion*

It is our view that Paula should be given the maximum opportunity to
see the trust documents and to investigate the manner in which the trustees
managed the affairs of the trust. We would wish to hear counsel as to the
H    terms of any order which we should make in this respect, in particular as
to the appropriate tribunal to entertain such an application (whether the
master or the judge in chambers), the imposition of any time limits, and
whether, prior to such application, Paula should have the right to have the

264
Millett L.J.                    Armitage v. Nurse (C.A.)                    [1998]

trust documents produced to her: see *In re Londonderry's Settlement; Peat*    A
*v. Walsh* [1964] Ch. 594.

    Subject thereto, the appeal and cross-appeal will be dismissed. The
order of the judge refusing the respondents liberty to recoup their costs
out of the trust fund will be set aside, and an order in the terms indicated
above substituted.

HUTCHISON L.J.    I agree.                                                   B

HIRST L.J.    I also agree.

                            *Appeal and cross-appeal dismissed.*
                            *Order for costs set aside. Respondents*
                            *not to recoup costs out of trust funds*      C
                            *without leave of court given after*
                            *trial of action.*

    18 December.    The Appeal Committee of the House of Lords (Lord
Goff of Chieveley, Lord Nolan and Lord Hutton) dismissed a petition by
the plaintiff for leave to appeal.                                          D

    *Solicitors: Royds Treadwell; Hood Vores & Allwood, Dereham; Greenland
Houchen, Attleborough; Mills & Reeve, Norwich.*

            [Reported by JOHN SPENCER ESQ., Barrister]

                                                                            E

—————

                                                                            F

                                                                            G

                                                                            H