Page 1

1     UNITED STATES BANKRUPTCY COURT

2     SOUTHERN DISTRICT OF NEW YORK

3     Case No. 08-13555-scc

4     - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5     In the Matter of:

6

7     LEHMAN BROTHERS HOLDINGS INC.,

8

9            Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    U.S. Bankruptcy Court

13                    One Bowling Green

14                    New York, NY   10004

15

16                    July 12, 2016

17                    10:05 AM

18

19

20

21

22

23    B E F O R E :

24    HON SHELLEY C. CHAPMAN

25    U.S. BANKRUPTCY JUDGE

1   Hearing re:  Doc# 52697 Motion to Abstain from Consideration

2   of Plan Administrators Five Hundred Ninth Omnibus Objection

3   to Claims.

4

5   Hearing re:  Doc# 23551 Amended Motion for Relief from Stay

6   filed by Duncan E. Barber on behalf of

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    WEIL, GOTSHAL & MANGES LLP

4        Attorney for the Debtors

5        767 Fifth Avenue

6        New York, NY 10153

7

8    BY:  CANDACE M. ARTHUR

9        JACQUELINE MARCUS

10

11   KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

12       Attorney for Ironbridge

13       200 West 41st Street, 17th Floor

14       New York, NY 10036

15

16   BY:  TRACY L. KLESTADT

17

18   SHAPIRO BIEGING BARBER OTTESON LLP

19       Attorney for

20       4582 South Ulster Street Parkway, Suite 1650

21       Denver, CO 80237

22

23   BY:  DUNCAN BARBER (TELEPHONICALLY)

24

25

1    ALSO PRESENT TELEPHONICALLY:

2

3    PATRICK MOHAN

4    CELINE BUEHL

5    ERIC KILEY

6    GABRIEL GLAZER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                P R O C E E D I N G S

2            THE COURT:  Good morning.  How are you, Ms.

3    Marcus?  Good morning.

4            MS. MARCUS:  Good morning, Your Honor.  Jacqueline

5    Marcus, Weil, Gotshal & Manges, on behalf of Lehman Brothers

6    Holdings, Inc. as Plan Administrator and the other Debtors.

7            Your Honor, I'm here for the 99th Omnibus hearing.

8    It's going to be, I believe, a very short one.  There's only

9    two matters, really, one matter on the calendar today, and

10   it's a status conference.  I think I'm talking too loud.

11   So, we're here with respect to the plan administrator's

12   509th Omnibus Objection to Claims, the weighted Motion to

13   Abstain --

14           THE COURT:  Right.

15           MS. MARCUS:  -- filed by certain of the defendants

16   in the Colorado litigation, as they call it, and the Amended

17   Motion for Relief on the stay filed by the same Colorado

18   defendants.

19           THE COURT:  Right.

20           MS. MARCUS:  Your Honor, as you recall the 509th

21   objection involved three parties filed by Ironbridge

22   Mountain Cottages, Ironbridge Aspen Collection and

23   Ironbridge Homes.  The last time we were before you on May

24   10th, we were addressing Ironbridge's claim that the

25   prosecution of the claim objection was a tolling agreement.

Page 6

1          And despite the Court's urging for the parties to

2   be practical, the Ironbridge entities were not prepared to

3   agree or move forward without the 30 days' notice provided

4   in the tolling agreement.  So, on May 19th, the plan

5   administrator provided notice of the termination of the

6   tolling agreement, and the tolling agreement expired by its

7   terms on June 18th.

8          Shortly after that, on June 22nd, the plan

9   administrator did what we promised, which was to file the

10  Notice of Dismissal of the three Ironbridge (indiscernible)

11  claimants --

12          THE COURT:  Right.

13          MS. MARCUS:  -- from the Garfield County action.

14  We also made inquiries regarding possible dates for the

15  mediation that had been suggested by the Court, and on just

16  this last Friday, we heard back from Ironbridge's counsel

17  regarding possible mediation dates either in the third week

18  of July or the 2nd week of August.

19          Also on July 8th, a conference took place in the

20  homeowner's litigation -- that other litigation in Colorado.

21  And that was the one alluded to by Mr. Barber on the 10th,

22  when he said that there was this conference --

23          THE COURT:  Right.

24          MS. MARCUS:  -- that might help narrow the issues.

25  On that date, the Colorado court entered judgment on the

1    jury verdict, and I have copies for the Court, if you'd like

2    them.

3            THE COURT:  Okay.

4            MS. MARCUS:  Although the judge denied LB Rose

5    Ranch's motion with regard to the collateral source rule, he

6    felt that the plaintiffs could not recover more than a

7    hundred percent of their damages.  Accordingly, at the end

8    of the judgment, he lists out the outstanding amounts owed

9    to each of the plaintiffs, which add up to approximately

10   $700,000.  That's the good news.

11           Unfortunately, the judgment left open a couple of

12   other items.  One is that the judgment may be further

13   reduced by a settlement paid by another defendant, which we

14   think was in the amount of $600,000.  And then, it may be

15   increased by fees and costs sought by plaintiffs.  So, the

16   Court has scheduled yet another hearing on September 8th at

17   which these matters will be considered.

18           So in sum, where does that leave us?

19           THE COURT:  Right.

20           MS. MARCUS:  With respect to the claims from the

21   perspective of LB Rose Ranch, we are still willing to

22   proceed with the mediation that the Court has suggested.  In

23   order to arrive at global resolution, we believe it is

24   important to have the insurance companies participate.

25           Since the judgment was just entered on Friday,

Page 8

1    we're still analyzing it, and we believe that the insurance

2    companies are doing that, as well.  We don't yet know

3    whether they will participate in the litigation the Court

4    has suggested.  We're prepared to spend the time to try to

5    get them to agree to participate, and we may need a little

6    bit of help from the Court in that regard, but I don't think

7    that the July -- I think it was July 21st, that week, is

8    going to be practical.  We're trying to get --

9          THE COURT:  Right.

10          MS. MARCUS:  -- all parties to attend.  With

11    respect to the Stay Relief Motion that was re-noticed for a

12    hearing today and then adjourned on our request, we still

13    believe that we have valid grounds to oppose the motion, but

14    we believe there's a better way for dealing with that, and

15    we have a couple of suggestions.

16          THE COURT:  Okay.

17          MS. MARCUS:  The first choice is to re-enter into

18    a tolling agreement with respect to the Garfield County

19    action only.  That will ensure that the defendant's don't

20    have to worry about us moving forward with the litigation

21    while they're automatically stayed from doing that.

22    Alternatively, we could agree to provide those defendants

23    with a certain number of days' notice before we move forward

24    in Colorado, giving them the opportunity to get their to

25    stay to leave motion back on the calendar.

Page 9

1              And in short, Your Honor, if I could get these

2      matters resolved -- but from our point of view, it's not

3      pressing that we do that right now.  We have another

4      distribution coming up at the end of -- I think it's the end

5      of September, early October.  Unfortunately, it doesn't look

6      like we're going to get there by then.  I'm sure you'd like

7      to hear from Mr. Klestadt or Mr. Barber, who I believe is on

8      the phone.

9              THE COURT:  Okay.  Thank you, Mr. Marcus.  Mr.

10     Klestadt?

11             MR. KLESTADT:  Mr. Barber should be on the line.

12             MR. BARBER:  Good morning, Your Honor.  Duncan

13     Barber on behalf of Ironbridge Homes, Ironbridge Mountain

14     Cottage, Ironbridge Aspen Collection, Ironbridge Management,

15     Dirk Gosda, Hanson Construction and Steve Hanson, and of

16     course, Tracy Klestadt is in the courtroom with us today.

17             THE COURT:  I'm listening.

18             MR. BARBER:  May I make some comments?

19             THE COURT:  Yes.

20             MR. BARBER:  Okay, thank you.  I think that

21     there's been a relatively accurate recitation of where

22     things currently sit today.  We agree with the plan

23     administrator and the estate that in connection with the

24     mediation, we would like to see the insurance company also

25     participate.

Page 10

1           The agenda inaccurately states some matters with

2    respect to the Stay Relief Motion.  It recites that the Stay

3    Relief Motion is filed by the three -- or three of the

4    Ironbridge entities that are also the subject matter of the

5    claims objection aspect in this.  But the Stay Relief Motion

6    was also filed on behalf of other defendants in both the

7    instruction defect litigation, which Ms. Marcus talked

8    about; events that happened last Friday, as well as

9    defendant -- in what I think the Debtor was referring to as

10   the Colorado litigation.

11          The Stay Relief Motion seeks relief with respect

12   to both of those proceedings, and other than my clients are

13   directly involved in both of those matters.  It is true that

14   the judge in the construction defect litigation did make

15   some rulings on Friday that I think will help bring some

16   clarity to where things sit among us, and will help lead us

17   to a more productive mediation when we get to it.

18          That said, one aspect of the claims, as well as

19   the underlying state court litigation is a relative

20   determination between the parties, i.e., the Debtor and

21   Ironbridge, et al, of my clients as to the allocation of

22   responsibility with respect to the construction defect

23   claim.

24          We did not jump on the bandwagon in terms of

25   adjournment of the hearing today for the simple reason that

Page 11

1    the one aspect of the Stay Relief Motion seeks to have the

2    responsibility allocated among the parties, and the

3    proceeding here in Colorado is completely now poised to do

4    that with the relevant findings.

5         The arbitration award is pending in that case.

6    The jury verdicts are now pending, and the judge here can

7    make a determination -- if you will, liquidation of that

8    liability as between our side of the parties.  And we think

9    that ought to happen -- as I understand, the procedure under

10   Colorado law, it's a fairly straightforward motion, and with

11   what the Court has done here, you can make those relative

12   determinations so at least we have that liquidated.  And we

13   still think that should happen.

14        We are completely supportive of a mediation.  We

15   completely the notion that we get the insurance carriers

16   involved.  I reached out yesterday to one of the counsel

17   that represents the construction defect litigants to do --

18   see where they're at now that the rulings have happened.

19        And in terms of a total lien versus a time period,

20   one of the concerns we have on our side is the triggering of

21   limitations period with respect to the allocation of

22   liabilities between the parties.  Not surprisingly, the

23   underlying rules can be read a couple of different ways.

24   I'm not really sure how the Debtor will ultimately read

25   those.  One way that we --

Page 12

1          THE COURT:  I need to interrupt you, Mr. Barber.

2    I've lost you at several points.  And just for future

3    reference, and maybe this was not made clear to you by

4    anyone in my chambers, but typically, I don't listen to

5    folks on the phone make extensive arguments.  The purpose of

6    telephonic appearances is so that if you are -- you know,

7    want to listen and have some limited participation, that's

8    fine.

9          But this goes well beyond that.  So future

10   reference, I'm looking right at Mr. Klestadt, who I assume

11   will be making the argument.  I find it very difficult, and

12   therefore, do not allow extensive argument on the phone.

13   So, that's just for future reference.

14          MR. KLESTADT:  Your Honor, I'm (indiscernible) on

15   this one, but it wasn't clear today as to what was going to

16   be happening.  You know, the stay motion was adjourned and -

17   -

18          THE COURT:  Right.  But I now have it -- but I'm

19   having extensive argument, if you will, suggesting various

20   courses of action.  I don't want to linger too long on this.

21   We are where we are.  Let's try to move forward.

22          I don't understand the last comment about the

23   issue about a statute of limitations.  If the parties among

24   themselves agree to a suitable tolling arrangement, why is

25   there an issue about the statute of limitations?

Page 13

1           MR. BARBER:  Well Your Honor, first of all, I

2     apologize for just not having the clarity (indiscernible),

3     but Mr. Klestadt is accurate.  That said, I agree with Ms.

4     Marcus that in light of the ruling last Friday, and the need

5     to go -- and the desire, and I think the advisability to go

6     forward with the mediation, that a straightforward tolling

7     agreement to deal with some of these issues makes great

8     sense, and I'd be more than happy to have that conversation

9     with her, get that in place, so that we could proceed with a

10    control -- in a controlled fashion to have the mediation.

11          THE COURT:  Okay.  That's good.  So then, she

12    suggested one of two ways to do that.  So, is there --

13          MR. BARBER:  I think it has -- I'm sorry.

14          THE COURT:  Is one or the other preferable to you?

15          MR. BARBER:  Absolutely.  I'm totally in

16    agreement.

17          THE COURT:  Okay.  Ms. Marcus is nodding.

18          MS. MARCUS:  Yes.  I actually want a chance to

19    respond to one thing --

20          THE COURT:  Sure.

21          MS. MARCUS:  -- at the appropriate time.

22          THE COURT:  Okay.  All right, so --

23          MS. MARCUS:  (indiscernible) it's fine.

24          THE COURT:  Okay, so then, you made some

25    clarifications, if you will, regarding the stay relief

Page 14

```
 1   motion, and I hear you, but I don't understand why we would

 2   do that, if we're going to go to mediation.

 3               MR. BARBER:  Absolutely.  I agree that if we

 4   haven't -- with the idea of the tolling agreement and

 5   getting a tolling agreement in place, you're right.  We can

 6   back off of the stay relief motion and focus on settlement

 7   and not worry about, you know, various deadlines, statute

 8   limitations, et cetera.  And I completely would take up Ms.

 9   Marcus on that concept and get that in place as a

10   substantive and procedural matter, so that we can, like I

11   said, proceed with the mediation in a controlled fashion and

12   focus on settlement.

13               THE COURT:  Okay.  So then, I think we're in

14   agreement.

15               (Laughter)

16               MS. MARCUS:  Violent agreement, yes.

17               THE COURT:  We're in violent agreement (Laughter).

18   I mean, unless I'm missing something.  Then, I think what we

19   do is that we enter into -- we -- you folks enter a

20   comprehensive tolling agreement.  The additional status

21   conference happens in Colorado with the plus and the minus

22   that Ms. Marcus alluded to, or not -- that something more

23   happens there.

24               And then, once the dust settles, if you will, we

25   tee you up for a mediation, and hopefully, the two of you
```

Page 15

1    working together can prevail upon the insurance company to

2    participate.  It doesn't sound as if they -- well, just

3    making an observation, it doesn't sound as if this is a

4    situation where they would be in a position to disclaim

5    coverage entirely, so it's -- you know, it seems to me it's

6    in their interest to participate at some level.  But that's

7    for others to decide.

8              MS. MARCUS:  We share that view, Your Honor.

9    Unfortunately we haven't gotten to acknowledge coverage,

10   which I understand is very common.  The only comment that I

11   wanted to make, Your Honor, and this is a (indiscernible)

12   plan as far as we're concerned.

13             I'm a little bit confused about Mr. Barber's

14   statement about there's still the issue in the construction

15   defect --

16             THE COURT:  Yes.

17             MS. MARCUS:  -- litigation about allegation of

18   responsibility.  Because in -- may I hand this to you, Your

19   Honor?

20             THE COURT:  Yes.  For Mr. Barber's benefit, Ms.

21   Marcus has handed me up the judgments on jury verdicts.

22   It's dated July 8th, 2016.

23             MS. MARCUS:  If you turn, Your Honor, to page 16 -

24   -

25             THE COURT:  Right.

Page 16

1          MS. MARCUS:  And I'm quoting -- "The Court now

2    also confirms the jury's allocation of fault."  And then, of

3    course, allocates 30 percent to LB Rose Ranch for the

4    different -- for at least the first two categories.  With

5    respect to the third category, I guess perhaps, there's a

6    question.

7          But it seems that the Court has already reached a

8    determination on the outpatient responsibility.  I don't

9    think it matters to what we're talking about now.  I just

10   wanted to clarify the record in that regard.

11         THE COURT:  Well, I think it's an important

12   clarification, because the suggestion was made that the stay

13   should be lifted in order to enable that allocation to be

14   made, and you just handed this to me.  But the words on the

15   page do appear to accomplish that allocation.

16         MS. MARCUS:  Right.

17         THE COURT:  So, Mr. Barber, can you clarify that?

18         MR. BARBER:  Absolutely.  I apologize for using

19   the word "allocation."  I'm not talking -- I'm talking about

20   the contribution claim between the Debtor and my client,

21   because there has been now, a substantial payment made by my

22   client that will in the (indiscernible) be adjusted to bring

23   those -- to take the judge's allocations, but yet, to

24   liquidate an amount owing between the parties, i.e., the

25   collective the defendant parties.  So, I'm really talking

Page 17

1   about the contribution claim that is liquidated.

2           MS. MARCUS:  (indiscernible)

3           MR. BARBER:  The allocation was awkward.

4           THE COURT:  Okay, well --

5           MR. BARBER:  The allocation was awkward.

6           MS. MARCUS:  (indiscernible) percent

7           THE COURT:  Okay, hold -- okay, it might clarify

8   it for you, but it doesn't clarify it for me.  So could you

9   --

10          MR. BARBER:  Okay, here, let me say this. Let me

11  ask you this, Your Honor...

12          THE COURT:  Well, maybe Ms. Marcus can explain it

13  to me, if she understands it.

14          MS. MARCUS:  I think I can try, and please correct

15  me if I'm wrong.  The reason that the judgment is reduced to

16  essentially now, $700,000, as to LB Rose Ranch is because

17  certain of Mr. Barber's clients in the arbitration, which is

18  yet the third claim, paid a certain amount to these

19  claimants.

20          THE COURT:  Right.

21          MS. MARCUS:  So, I believe, without prejudice to

22  my client's position, that they did take the position that

23  if they paid a disproportionate amount of the settlement,

24  that they have claims back against LB Rose Ranch for that

25  amount -- for the insurance claims.

1          THE COURT:  All right.  Okay.  All right.

2          MS. MARCUS:  Did I get that right, Mr. Barber?

3          MR. BARBER:  We're on the same page.

4          THE COURT:  I'm sorry?

5          MR. BARBER:  We are on the same page.

6          THE COURT:  Okay, great.  All right.  So, it still

7    comes back to impressionistically -- we need to do things

8    the easy way, not the hard way.  Okay?  It's a not

9    insignificant amount of money, but all of these moving parts

10   are, I think, making this way more complicated than it needs

11   to be.

12          So, it seems that we have agreement in entering

13   the tolling agreement, which will maintain the status quo.

14   There will continue to be some activity by the Court with

15   respect to adjustments to this judgment.  And then, there

16   will be approaches made to the insurance company.  And then,

17   you'll be set up to engage in mediation.

18          Did we discuss how it was that a mediator would be

19   selected, Ms. Marcus?

20          MS. MARCUS:  You had suggested, perhaps, a sitting

21   judge --

22          THE COURT:  Yes.

23          MS. MARCUS:  And that's as far as we got.

24          THE COURT:  Mr. Barber, are you amenable to a

25   sitting judge?

1            MR. BARBER:  Absolutely.

2            THE COURT:  All right, because there are a few of

3    my -- well, I will try to identify one or more of my

4    colleagues who has the time to do this, and I have one or

5    two good ideas.  So, I'm optimistic that that would be a

6    good thing to do.

7            So, we're going to adjourn either without date or

8    to a date certain, anything that's still pending.

9            MS. MARCUS:  Yes, Your Honor.

10           THE COURT:  All right?  And I'm indifferent.  We

11   can adjourn it to an Omnibus date sometime in the fall, if

12   you like, just for control purposes.  Does that work for

13   you, Mr. Barber?

14           MR. BARBER:  Well, the Court -- it wraps around

15   the tolling agreement, but I'm confident we can do that.

16   We've done one before.

17           THE COURT:  Okay.  So, I'll leave it to you to do

18   that.  And then, should I move forward to try to identify a

19   judicial mediator?  And then, the procedure that I've used

20   in the past is to have my law clerk identify the judge to

21   you folks, and then, give you some period of time.  And

22   then, I would designate Ms. Marcus to report back on an

23   anonymous basis whether it's acceptable or not acceptable.

24           So in other words, if it's acceptable, it's a go.

25   If it's not acceptable, I would ask that Ms. Marcus not

1    identify the party or parties to whom it's not acceptable,

2    and that way -- Mr. Klestadt is knitting his brow at me.  I

3    want to protect the party from feeling that I would have any

4    negative view of them, in the event that they did not agree

5    to go forward with the mediator that I recommended.

6            It's spelled in suspenders, but particularly you

7    know, in larger cases, there's a level of discomfort about

8    being the person who says no to a mediator --

9            MR. KLESTADT:  I can't imagine we'd have any issue

10   with any of your colleagues.

11           (Laughter)

12           THE COURT:  That's lovely to say, but sometimes,

13   people who you know, have a history in the Court, you know,

14   may have had a less than satisfactory experience.  It's just

15   to make it anonymous so that everybody feels comfortable.

16           Mr. Barber, did I explain myself okay on that?

17           MR. BARBER:  I completely understand and I'm

18   completely fine with that procedure.

19           THE COURT:  Okay.  And what period --

20           MS. MARCUS:  I believe the Omnibus hearing I have

21   is September 20th?

22           THE COURT:  I have a September omnibus --

23   September 20th Omnibus hearing.

24           MS. MARCUS:  So, if September 8 (indiscernible)

25   date for the next hearing in the home owner's litigation --

1           THE COURT:  Then that would work.

2           MS. MARCUS:  -- (indiscernible) makes sense.

3           THE COURT:  Right.  So, I think at this point, I

4     could move forward with identifying the mediator, but it

5     would be premature to have him or her block out any dates.

6           MS. MARCUS:  I agree.

7           THE COURT:  Okay?  That sounds great.

8           MS. MARCUS:  That's great.  Thank you, Your Honor.

9     That's where we'll end it today.

10          THE COURT:  Okay, thank you.  Thank you, Mr.

11    Barber, Mr. Klestadt.

12          MR. KLESTADT:  Thank you.

13          THE COURT:  Ms. Marcus, before you --

14          MR. KLESTADT:  I'll sign out.

15          THE COURT:  Okay, very good.

16          So, when next we meet, it will be the one

17    hundredth.

18          MS. MARCUS:  Yes.

19          THE COURT:  And I think that both LBHI and LBI

20    will be delivering stay to the estate --

21          MS. MARCUS:  That's correct.

22          THE COURT:  -- presentations on that day.  It's a

23    pretty significant day.

24          MS. MARCUS:  We were talking about cupcakes too,

25    possibly.

1            THE COURT:  Cupcakes, possibly (Laughter).  I was

2    speaking to Judge Pack about possibly joining us, although -

3    -

4            (Discussion off the record)

5                       *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 23

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

Sonya                    Digitally signed by Sonya Ledanski
                         Hyde
6                        DN: cn=Sonya Ledanski Hyde,
Ledanski Hyde            o=Veritext, ou,
                         email=digital@veritext.com, c=US
7                        Date: 2016.07.13 14:07:04 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date: July 13, 2016