# Exhibit A

# LEHMAN BROTHERS

## EXECUTIVE ADVISORY SERVICES AGREEMENT

THIS AGREEMENT is made the 21st day of March 2001

BETWEEN

(1) LEHMAN BROTHERS EUROPE LIMITED ("Lehman Brothers")

(2) THOMAS MARSONER of Andreas-Hofer-Strasse 43, A-6020 Innsbruck, Austria (herein afterwards called the "Advisor").

**RECITALS**

A. The Advisor is experienced in financial markets in European countries and particularly in Germany and Austria, and Lehman Brothers wishes to avail itself of the experience of the Advisor, who has confirmed that he is able to provide advice on a part-time basis and (without limitation) Lehman Brothers wishes to be able to use the services of the Advisor and to provide those services to other Group Companies for the purposes of their businesses. The Advisor will provide these services in response to specific requests from (without limitation) Bertil Rydevik, and /or Benoit d'Angelin, and will keep them fully and regularly apprised of his activities and of any potential business opportunity he would like to pursue on behalf of Lehman Brothers. The services provided will include, but will not be limited to, providing early advice on Lehman Brothers' involvement; maintaining close and regular contact with relevant desks of Group Companies as appropriate; assisting in developing strategies and tactics to approach corporations and governments in Europe; participating in team meetings with Lehman Brothers' relevant investment banking teams.

B. The Advisor has agreed with Lehman Brothers that the Services shall be provided on a non-executive basis, and on the terms and conditions hereinafter contained and in particular (without limitation) the General Terms and Conditions.

NOW IT IS AGREED as follows:

1. **INTERPRETATION**

    In this Agreement and the General Terms and Conditions annexed, the following expressions have the following respective meanings:-

    1.1 "Clients" means clients of Lehman Brothers or any other Group Company.

    1.2 "Commencement Date" is 1 March 2001.

1.3   "General Terms and Conditions" means the terms and conditions annexed to this Agreement.

1.4   "Group Company" means any legal person or body incorporated or unincorporated presently or in the future directly or indirectly controlling, controlled by, or in common control with Lehman Brothers, and "Group" shall have a corresponding meaning.

1.5   "Lehman Brothers" means the investment banking or related financial services businesses carried on by the Group.

1.6   "Payments" means the amounts (exclusive of Value Added Tax) referred to in Clause 3 of this agreement.

1.7   "Services" means the services set out in the General Terms and Conditions.

1.8   In this Agreement any reference to the singular shall include the plural and vice versa and any reference to the masculine gender shall include a reference to the female and vice versa.

2.  **SERVICES**

In consideration of the Payments the Advisor undertakes to provide the Services on a non-exclusive basis to Lehman Brothers or as indicated by Lehman Brothers to any other Group Company throughout the term of this Agreement on and subject to the General Terms and Conditions.

3.  **PAYMENTS**

3.1   The Advisor's fee will be US Dollars One Hundred and Seventy Five Thousand (US$175,000) per annum, exclusive of VAT. The Advisor shall submit an invoice to the Company quarterly in arrears, with the first invoice payment due on 31 May 2001. This fee will only be paid as long as the Advisor does not take up permanent employment with any other person.

3.2   In addition, Lehman Brothers may, at its sole and unrestricted discretion, determine whether to make an additional payment to the Advisor. Such additional payment, if any, will be based upon the Advisor's contribution, measured in terms of the fee-income generated to Lehman Brothers resulting from the Advisor's services. If Lehman Brothers decided to make such additional payment, it would be made in the first quarter of 2002 for deals closed before November 30th, 2001.

In the event that this Agreement is terminated as provided in Clause 10, and where Lehman Brothers has decided to make any additional payment, this payment will be made at the time contemplated in this Agreement, or before if agreed by both parties.

The amount of this additional payment will be determined by Lehman Brothers, based on its sole judgement as to the contribution made in connection with each transaction, and will be decided on a case-by-case basis, provided that such contribution will be substantial. This payment could reflect a percentage range up to a maximum of 10% of the Investment Banking Revenues (as defined below), after deduction of unreimbursed out-of-pocket expenses, if any, actually received by Lehman Brothers in connection with each transaction, provided that in no event shall the amount exceed $200,000 per transaction. The payment will be made after the transaction is completed, and all monies are received by Lehman Brothers. Investment Banking Revenues will be defined as follows: for the purposes of a financing, Investment Banking Revenues will mean the share that Investment Banking receives (this is currently 50% for most, not all, financing products) of the sum of the Lehman Brothers management fees, sales credits, net underwriting, and/or of the amount of any market gains incurred by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out-of-pocket expenses, if any. For the purposes of advisory transactions, Investment Banking Revenues will mean the share that Investment Banking receives (this is currently 100%) of any retainer and success fees, less the amount of any unreimbursed out-of-pocket expenses, if any.

4. **CONFIDENTIALITY**

The Advisor shall not during or at any time after the expiry or termination of this Agreement, divulge or allow to be divulged to any person any confidential information relating to the business or affairs or clients or customers of Lehman Brothers or any Group Company other than to persons who have signed a secrecy undertaking in a form previously approved by Lehman Brothers and the Advisor shall not permit any person to assist in the provision of the Services unless such person has signed such an undertaking.

5. **DELEGATION**

The Advisor shall not delegate any duties or obligations arising under this Agreement otherwise than as may be expressly agreed in writing by Lehman Brothers or any Group Company to which Lehman Brothers may commit to provide the Services, and which Lehman Brothers has notified to the Advisor.

6. **WHOLE AGREEMENT**

Each party acknowledges that this Agreement and the General Terms and Conditions attached to it contain the whole agreement between the parties and that it has not relied upon any oral or written representation made to it by the other or its employees or agents and has made its own independent investigations into all matters relevant to it.

Marsoner00000729

7. WAIVER

The failure by either party to enforce at any time or for any period any one or more of the terms or conditions of this Agreement shall not be a waiver of them or of the right at any time subsequently to enforce all the terms and conditions of this Agreement.

8. STATUS OF THE ADVISOR

During the term of this Agreement the Advisor shall be an independent contractor and this Agreement shall not operate or be interpreted to constitute the Advisor as an employee of Lehman Brothers or of any other Group Company. Lehman Brothers does not object to the Advisor entering into other consultancy arrangements during the term of this Agreement, provided that the Advisor shall provide Lehman Brothers with the name of the entity and position held, and a copy of the signed final version of any consultancy agreement. The Advisor shall also obtain Lehman Brothers' written consent to any agreement to provide services of any nature to any other company, organisation, or other entity, prior to the Advisor providing any services under such an arrangement (whether as an independent contractor or otherwise).

9. COSTS

Each of the parties shall pay their own costs and expenses incurred by it in connection with the preparation and execution of this Agreement.

10. TERMINATION

10.1 This Agreement shall expire automatically on the first anniversary of the Commencement Date, unless otherwise agreed between the Advisor and Lehman Brothers on or before that first anniversary date or as provided in this clause 10.

10.2 Notwithstanding sections 10.1 of this Agreement, Lehman Brothers may terminate this Agreement at any time if:-
    10.2.1    the Advisor dies; or
    10.2.2    the Advisor shall wilfully and persistently fail to provide the Services, or commit any material breach of this Agreement, or be guilty of serious neglect or default hereunder; or
    10.2.3    the Advisor is either found to have, or Lehman Brothers reasonably believes that the Advisor has, either breached any laws or regulatory rules or duties or has caused Lehman Brothers to have breached any such laws, duties or rules; or
    10.2.4    the Advisor:-
        10.2.4.1    is adjudged bankrupt; or
        10.2.4.2    compounds with his creditors; or
        10.2.4.3    has a Receiver or Manager appointed in respect of all or any part of all or any part of his assets; or
        10.2.4.4    is the subject of an application for an administration order, or is subject to any similar bankruptcy or personal insolvency

                  proceedings in the territory in which the Advisor is personally resident; or

      10.2.4.5    the Advisor and Lehman Brothers agree to terminate it by mutual agreement, and in any event where there is a "conflict" situation arising from the Advisor's other advisory arrangements or other duties and employments.

    10.2.5    Either party may terminate this Agreement by giving four weeks' notice in writing.

10.3    The Advisor shall deliver up to Lehman Brothers on the termination of this Agreement any property of Lehman Brothers or any other Group Company in his possession custody or under his control including (without limitation) any documents (and copies) papers, keys, credit cards, or any other property of any description belonging to Lehman Brothers or any other Group Company.

## 11. WARRANTY

The Advisor warrants and undertakes that he has and shall maintain all necessary consents and authorisations and is and will be in compliance with any and all applicable statutes and/or regulations in order for him to be able to fully perform the Services. The Advisor undertakes to promptly notify Lehman Brothers if any of these warranties are or become incorrect or any of these undertakings become impossible to perform for any reason."

## 12. VARIATION

No variation or amendment to this Agreement or to the General Terms and Conditions shall be made except with the authority of Lehman Brothers and this Agreement and the General Terms and Conditions shall be deemed to take effect unamended and unvaried unless any amendments or variations have been duly initialled by an authorised signatory on behalf of Lehman Brothers.

## 13. GOVERNING LAW

This Agreement and the General Terms and Conditions shall be solely governed by and interpreted according to the laws of the England and Wales.

## 14. SUBMISSION TO JURISDICTION

The parties agree that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute which may arise out of or in connection this Agreement.

## 15. NOTICES

Any notice shall be duly served hereunder if (in the case of Lehman Brothers) it is sent by recorded or first class post to its office address as set out above in this Agreement marked for the attention of the Head of Investment Banking Division, Europe, and (in the case of the Advisor) it is sent by recorded or first class post to

Marsoner00000731

him at his address specified in this Agreement or (in the case of either Lehman Brothers or the Advisor) such other address as either may notify in writing to the other and any such notice sent by post shall be conclusively deemed for all the purposes of this agreement to have been received 72 hours after the time of posting, and any such notice sent by telefax or telex, shall be conclusively deemed to have been received on the date of sending.

SIGNED for and on
behalf of LEHMAN
BROTHERS
EUROPE LIMITED           _____

                                             Bertil Rydevik
                                             Managing Director


SIGNED by
THOMAS MARSONER         _____

Marsoner00000732

## GENERAL TERMS AND CONDITIONS

1. **COMMENCEMENT**

   The Agreement and these General Terms and Conditions supersede all previous agreements and arrangements (if any) between Lehman Brothers and the Advisor relating to the provision of the Services and are effective from the Commencement Date.

2. **RESPONSIBILITIES OF THE ADVISOR**

   2.1 The Advisor shall provide the Services to Lehman Brothers and/or such of the Group Companies as Lehman Brothers may from time to time agree with the Advisor, and in response to specific requests from Lehman Brothers.

   2.2 The Advisor shall during the Appointment observe the terms and conditions of this Agreement.

   2.3 The Advisor shall use his best endeavours to promote and protect during the operation of the Agreement the interests of Lehman Brothers and to all other Group Companies.

   2.4 The Advisor shall comply with any internal compliance rules in force from time to time which may be applicable to the Advisor and so far as required shall have and maintain any required registration by or with the regulatory authorities governing the financial services businesses of Lehman Brothers.

3. **THE SERVICES**

   The Services shall comprise:

   3.1 Acting as an Advisor for discussing confidential issues relating to Lehman Brothers;

   3.2 In response to specific requests, assisting with and advising upon the development of the investment banking and corporate finance businesses of Lehman Brothers in the European market (with a focus on Germany and Austria), but excluding the United Kingdom, by all means agreed between the Advisor and Lehman Brothers including the provision of business advice to the board of Lehman Brothers concerning the business opportunities for Lehman Brothers in this market;

   3.3 Liaising with and informing the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

   3.4 Maintaining regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

3.5 Such other activities as may from time to time be agreed between the Advisor and Lehman Brothers or any Group Company to which Lehman Brothers may have agreed to provide the Services, and which Lehman Brothers has specifically notified to the Advisor.

4. **EXPENSES**

Lehman Brothers shall reimburse (in accordance with the Lehman Brothers Travel and Expenditure Policy as in force from time to time) the Advisor for all travelling, hotel, entertaining and other expenses which he may properly incur in the performance of the Services and the Advisor shall provide to Lehman Brothers full invoices and other documentation relating to such expenses.

5. **PAYMENTS**

The Advisor shall be paid a quarterly retainer in respect of provision of the Services to Lehman Brothers or any other Group Company. In addition the consultant shall submit details of the expenses referred to in Section 4 of the General Terms and Conditions and shall (if relevant) specify all value added or equivalent taxes in addition to the principal amount of such invoices and be in a form satisfying the requirements of any applicable Value Added Tax ("VAT") or equivalent tax rules for a valid VAT or tax invoice.