# Exhibit B

## EXECUTIVE ADVISORY SERVICES AGREEMENT

THIS AGREEMENT is made the 24th day of July 2002

BETWEEN

(1)　　LEHMAN BROTHERS EUROPE LIMITED ("Lehman Brothers"); and

(2)　　THOMAS MARSONER of 55 Avenue Foch, 75016 Paris, France (herein afterwards called the "Advisor").

RECITALS

    A. The Advisor is experienced in financial markets in European countries and particularly Germany, Switzerland and Austria, and Lehman Brothers wishes to avail itself of the experience of the Advisor, who has confirmed that he is able to provide advice on a part-time basis and (without limitation) Lehman Brothers wishes to be able to use the services of the Advisor and to provide those services to other Group Companies (as defined below) for the purposes of their businesses. The Advisor will provide these services in response to specific requests from Vittorio Pignatti, and will keep him fully and regularly apprised of his activities and of any potential business opportunity he would like to pursue on behalf of Lehman Brothers.

    B. The Advisor agrees with Lehman Brothers that the Services (as defined below) shall be provided on a non-executive basis, and on the terms and conditions hereinafter contained and in particular (without limitation) the General Terms and Conditions.

NOW IT IS AGREED as follows:

1.　　INTERPRETATION

    In this Agreement and the General Terms and Conditions annexed, the following expressions have the following respective meanings:-

1.1 "BWBG Transaction" means the proposed sale by the Austrian government (the "Government") of five of its housing corporations and/or the assets of such housing corporations.

1.2 "Clients" means clients of Lehman Brothers or any other Group Company.

1.3 "Commencement Date" is 01 March 2002.

1.4 "General Terms and Conditions" means the terms and conditions annexed to this Agreement.

1.5 "Group Company" means any legal person or body incorporated or unincorporated presently or in the future directly or indirectly controlling, controlled by, or in common control with Lehman Brothers, and "Group" shall have a corresponding meaning.

1.6 "Lehman Brothers Investment Banking Business" means the investment banking or related financial services businesses carried on by the Group.

1.7 "Net Investment Banking Fees" means the net transaction fees paid and attributable to Lehman Brothers' investment banking division in its capacity as adviser to any Client in connection with the relevant transaction, provided that "Net Investment Banking Fees" shall:

   1.7.1 not include any retainers (except for any retainers paid to Lehman Brothers by the Government in relation to the BWBG Transaction which shall be included in the calculation of the Net Investment Banking Fees for the purposes of paragraph 3.1.3 below) or expenses paid in connection therewith or any fees, commissions or other compensation received by Lehman Brothers in connection with any financing or other services related to such transaction; and

   1.7.2 be deemed decreased by the amount of any out-of-pocket expenses incurred by Lehman Brothers but not reimbursed to Lehman Brothers by the relevant Client.

1.8 "Payments" means the amounts (exclusive of Value Added Tax) referred to in Clause 3 of this Agreement.

1.9   "Payment Period" means the period starting on the Commencement Date and ending on the date that is 12 months after the date of expiration or termination of this Agreement unless this Agreement is terminated by Lehman Brothers pursuant to Clause 10.2.2 or 10.2.3 below, in which case the Payment Period shall end on the date of such termination.

1.10   "Services" means the services set out in the General Terms and Conditions.

1.11   "Strategic Transaction" means any strategic corporate transaction (other than any offering of new or existing Telekom Austria securities) which Telekom Austria enters into in the future and which transaction is further described in the general financial advisory agreement entered into by Lehman Brothers and Telekom Austria on 20th March 2002 (the "Strategic Agreement").

1.12   In this Agreement any reference to the singular shall include the plural and vice versa and any reference to the masculine gender shall include a reference to the female and vice versa.

2.   SERVICES

In consideration of the Payments, with effect from the Commencement Date the Advisor undertakes to provide the Services on a non-exclusive basis to Lehman Brothers or as indicated by Lehman Brothers to any other Group Company throughout the term of this Agreement on and subject to the General Terms and Conditions.

3.   PAYMENTS

3.1   As compensation for the services to be rendered by the Advisor hereunder, Lehman Brothers shall pay the Advisor as follows:

   3.1.1   a retainer fee of US Dollars Two Hundred Thousand (US$200,000) per annum (the "Retainer Fee"), exclusive of VAT, which fee shall (a) be paid quarterly in arrears on submission of an appropriate invoice by the Advisor, with the first invoice payment due on 31 May 2002 and (b) be paid in full notwithstanding any termination of this Agreement unless this

Agreement is terminated by Lehman Brothers pursuant to Clause 10.2.2 or 10.2.3, in which case no further payments of the Retainer Fee shall be paid following the date of such termination;

3.1.2   in the event that Lehman Brothers is mandated to provide financial advisory services to Telekom Austria in relation to any Strategic Transaction (other than any direct or indirect acquisition of up to 25% of the issued share capital of Mobilkom AG by Telekom Austria) pursuant to the Strategic Agreement and such transaction completes at any time during the Payment Period, then the Advisor will be paid a fee equal to 10 % of the Net Investment Banking Fees actually received by Lehman Brothers in connection with such transaction, which fee shall be paid to the Advisor within 30 business days of the date on which such transaction completes provided that the Advisor has submitted an appropriate invoice; and

3.1.3   in the event that (a) Lehman Brothers is mandated to provide financial advisory services to the Government in relation to the BWBG Transaction and (b) such transaction completes at any time during the Payment Period, then the Advisor will be paid a fee equal to 10% of the Net Investment Banking Fees actually received by Lehman Brothers in connection with such transaction, which fee shall be paid to the Advisor within 30 business days of the date on which such transaction completes provided that the Advisor has submitted an appropriate invoice.

3.2   In addition to the fees described in Clause 3.1 above:

3.2.1   in the event that Lehman Brothers requires the Advisor to provide the Services pursuant to this Agreement in relation to specific transactions other than those referred to in Clauses 3.1.2 and 3.1.3 above, then Lehman Brothers and the Advisor shall agree in writing the amount and terms of any payments to be made to the Advisor for such Services, provided that any such additional payment will be based upon the Advisor's contribution, measured in terms of the fee-income generated to Lehman Brothers resulting from the Advisor's services; and

Marsoner00000718

    3.2.2    in the event that this Agreement is terminated as provided in Clause 10, and where Lehman Brothers has agreed in writing to make any additional payment pursuant to this Clause 3.2, such payment will be made at the time agreed by both parties.

## 4. CONFIDENTIALITY

The Advisor shall not during or at any time after the expiry or termination of this Agreement, divulge or allow to be divulged to any person any confidential information relating to the business or affairs of Lehman Brothers, any Group Company or any Client other than to persons who have signed a secrecy undertaking in a form previously approved by Lehman Brothers and the Advisor shall not permit any person to assist in the provision of the Services unless such person has signed such an undertaking.

## 5. DELEGATION

The Advisor shall not delegate any duties or obligations arising under this Agreement otherwise than as may be expressly agreed in writing by Lehman Brothers or any Group Company to which Lehman Brothers may commit to provide the Services, and which Lehman Brothers has notified to the Advisor.

## 6. WHOLE AGREEMENT

Each party acknowledges that this Agreement and the General Terms and Conditions attached to it contain the whole agreement between the parties, this Agreement and the General Terms and Conditions supersede all previous agreements and understandings between them in such specific connection and that each party has not relied up on any oral or written representation made to it by the other or its employees or agents and has made its own independent investigations into all matters relevant to it.

## 7. WAIVER

The failure by either party to enforce at any time or for any period any one or more of the terms or conditions of this Agreement shall not be a waiver of them or of the right at any time subsequently to enforce all the terms and conditions of this Agreement.

Marsoner00000719

8.    STATUS AND FACILITIES OF THE ADVISOR

    8.1   During the term of this Agreement, the Advisor shall be an independent contractor and this Agreement shall not operate or be interpreted to constitute the Advisor as an employee of Lehman Brothers or of any Group Company. The Advisor agrees that during the term of this Agreement he shall not provide services which are the same as or similar to the Services to any other investment bank or financial advisor without Lehman Brothers' prior written consent.

    8.2   Lehman Brothers agrees that the Advisor, during the term of this Agreement only, shall have the use of a Lehman Brothers' secretary based in Lehman Brothers' London office and be entitled to to send and receive non-electronic mail (which must not be on Lehman Brothers' headed notepaper) from and at Lehman Brothers' London office.

    8.3   For a period of three calendar months from the date hereof only, any electronic mail intended for the Advisor and received at the email address "marsoner@lehman.com", will be forwarded to the Advisor's personal email address "thomas@marsoner.com" by Lehman Brothers. After the end of the period referred to above, any such electronic mail received at "marsoner@lehman.com" will not be so forwarded and for a period starting on the date that is three months after the date hereof and ending on the date that is twelve months after the date hereof only, the sender of any electronic mail to "marsoner@lehman.com" will receive an auto-reply providing the Advisor's personal e-mail address to which such mail can be sent. At no time whatsoever may the Advisor hold himself as being able to receive electronic mail at the e-mail address "marsoner@lehman.com" or encourage or request any person to send e-mail to such address.

9.    COSTS

Each of the parties shall pay their own costs and expenses incurred by it in connection with the preparation and execution of this Agreement.

## 10. TERMINATION

10.1  This Agreement shall expire automatically on the first anniversary of the Commencement Date, unless otherwise agreed between the Advisor and Lehman Brothers on or before that first anniversary date, or as provided in this Clause 10.

10.2  Notwithstanding Clause 10.1 of this Agreement, Lehman Brothers may terminate this Agreement at any time if:-

   10.2.1 the Advisor dies; or
   10.2.2 the Advisor shall willfully and persistently fail to provide the Services, or commit any material breach of this Agreement, or be guilty of serious neglect or default hereunder; or
   10.2.3 the Advisor is either found to have, or Lehman Brothers reasonably believes that the Advisor has, either breached any laws or regulatory rules or duties or has caused Lehman Brothers to have breached any such laws, duties or rules; or
   10.2.4 the Advisor:-
      10.2.4.1  is adjudged bankrupt; or
      10.2.4.2  compounds with his creditors; or
      10.2.4.3  is subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Advisor is personally resident; or
   10.2.5 the Advisor and Lehman Brothers agree to terminate it by mutual agreement, and in any event where there is a "conflict" situation arising from the Advisor's other advisory arrangements or duties and employments; or
   10.2.6 the Advisor accepts an offer of full-time employment from any person or legal entity.

10.3  Notwithstanding Clause 10.1 of this Agreement, either party may terminate this Agreement by giving four weeks' notice in writing.

10.4  Notwithstanding any termination or expiration of this Agreement, the provisions of Clause 4 above and Clause 10.5 below shall continue in full force and effect.

10.5  The Advisor shall deliver up to Lehman Brothers on the termination or expiration of this Agreement any property of Lehman Brothers, any



Marsoner00000721

Group Company or any Client in his possession custody or under his control including (without limitation) any documents (and copies) papers, keys, credit cards, or any other property of any description belonging to Lehman Brothers or any Group Company.

11. **WARRANTY**

The Advisor warrants and undertakes that he has and shall maintain all necessary consents and authorizations and is and will be in compliance with any and all applicable statutes and/or regulations in order for him to be able to fully perform the Services. The Advisor undertakes to promptly notify Lehman Brothers if any of these warranties are or become incorrect or any of these undertakings become impossible to perform for any reason.

12. **VARIATION**

No variation or amendment to this Agreement or to the General Terms and Conditions shall be made except with the authority of Lehman Brothers and this Agreement and the General Terms and Conditions shall be deemed to take effect unamended and unvaried unless any amendments or variations have been duly initialed by an authorized signatory on behalf of Lehman Brothers.

13. **GOVERNING LAW**

This Agreement and the General Terms and Conditions shall be solely governed by and interpreted according to the laws of England and Wales.

Marsoner00000722

14. **SUBMISSION TO JURISDICTION**

The parties agree that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute which may arise out of or in connection to this Agreement.

15. **NOTICES**

Any notice shall be duly served hereunder if (in the case of Lehman Brothers) it is sent by recorded or first class post to its office address as set out above in this Agreement marked for the attention of Vittorio Pignatti, and (in the case of the Advisor) it is sent by recorded or first class post to him at his address specified in this Agreement or (in the case of either Lehman Brothers or the Advisor) such other address as either may notify in writing to the other and any such notice sent by post shall be conclusively deemed for all the purposes of this Agreement to have been received 48 hours after the time of posting.

SIGNED for and on
behalf of LEHMAN
BROTHERS
EUROPE LIMITED   _____
                 Vittorio Pignatti
                 Managing Director


SIGNED by
THOMAS MARSONER  _____

Marsoner00000723

## GENERAL TERMS AND CONDITIONS

1. **COMMENCEMENT**

   The Agreement and these General Terms and Conditions supersede all previous agreements and arrangements (if any) between Lehman Brothers and the Advisor relating to the provision of the Services and are effective from the Commencement Date.

2. **RESPONSIBILITIES OF THE ADVISOR**

   2.1  The Advisor shall provide the Services to Lehman Brothers and/or such of the Group Companies as Lehman Brothers may from time to time agree with the Advisor, and in response to specific requests from Lehman Brothers.

   2.2  The Advisor shall during the Appointment observe the terms and conditions of this Agreement.

   2.3  The Advisor shall use his best endeavours to promote and protect, during the term of the Agreement, the interests of Lehman Brothers and all Group Companies.

   2.4  The Advisor shall comply with any internal compliance rules in force from time to time which may be applicable to the Advisor and so far as required shall have and maintain any required registration by or with the regulatory authorities governing the financial services businesses of Lehman Brothers.

   2.5  The contact point at Lehman Brothers with whom the Advisor shall co-ordinate shall be Vittorio Pignatti, a managing director of Lehman Brothers, or his designee. All activities of the Advisor, insofar as they relate to the Services or any transaction, must be co-ordinated with Vittorio Pignatti or such designee.

2.6 The Advisor acknowledges that he has no power or authority to bind or commit Lehman Brothers or any Group Company to any contract or agreement or to make any representations on behalf of Lehman Brothers or any Group Company, and hereby agrees that, unless he shall receive specific written authorisation from Lehman Brothers to do so, he shall neither (a) hold himself out as being a Lehman Brothers' employee or as having power or authority to enter into any contract or agreement on Lehman Brothers' or any Group Company's behalf or to otherwise bind or commit Lehman Brothers or any Group Company to any contract or agreement, nor (b) take any action, directly or indirectly, which would cause Lehman Brothers or any Group Company to become a party to any contract or agreement or otherwise obligate Lehman Brothers or any Group Company in any manner whatsoever. The Advisor agrees to comply with and conform his conduct to applicable laws, rules and regulations.

3. THE SERVICES

The Services shall comprise:

3.1 acting as an advisor on potential transactions which may involve Lehman Brothers Investment Banking Business;

3.2 in response to specific requests from Vittorio Pignatti or his designee, assisting with and advising upon the development of the investment banking and corporate finance businesses of Lehman Brothers in the European market (with a focus on Germany, Switzerland and Austria), but excluding the United Kingdom, by all means agreed between the Advisor and Lehman Brothers including the provision of business advice to the board of Lehman Brothers concerning the business opportunities for Lehman Brothers in this market;

3.3 liaising with and informing the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

3.4 subject to section 2.5 of these General Terms and Conditions, maintaining regular contacts with the relevant investment banking teams in the

Marsoner00000725

European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

3.5 assisting in developing strategies and tactics to approach corporations and governments in Europe; and

3.6 such other activities as may from time to time be agreed between the Advisor and Lehman Brothers or any Group Company to which Lehman Brothers may have agreed that the Advisor should provide the Services, and which Lehman Brothers has specifically notified to the Advisor.

4.  **EXPENSES**

Lehman Brothers shall reimburse (in accordance with the Lehman Brothers Travel and Expenditure Policy as in force from time to time) the Advisor for all traveling, hotel, entertaining and other expenses which he may properly incur in the performance of the Services and the Advisor shall provide to Lehman Brothers full invoices and other documentation as reasonably required by Lehman Brothers relating to such expenses.

The Advisor shall also submit details of all value added or equivalent taxes in addition to the principal amount of such invoices and the invoices shall be in a form satisfying the requirements of any applicable Value Added Tax ("VAT") or equivalent tax rules for a valid VAT or tax invoice.

Marsoner00000726