# Exhibit C

# LEHMAN BROTHERS

13th February 2004

Thomas Marsoner
Casa Andreas
16 Triq Sant' Andrija
Lija, BLZ 10
Malta

Dear Thomas,

This letter agreement (the "Agreement") confirms the understanding and agreement between Lehman Brothers Europe Limited ("Lehman Brothers") and Thomas Marsoner (the "Consultant" or the "Senior Advisor") pursuant to which the Consultant will provide advice and assistance to Lehman Brothers and other members of the Lehman Brothers' group (the "Lehman Group") in connection with the identification and execution of certain transactions in the German, Austrian and Swiss markets.

By executing this Agreement the Consultant acknowledges that he will not be entitled to any payments or other rights under the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 24 July 2002.

1. **Services to be Rendered by the Consultant**

    Subject to the terms and conditions hereof, including, without limitation, paragraph 5 hereof, Lehman Brothers hereby engages the Consultant to, and the Consultant hereby agrees to, assist Lehman Brothers and the Lehman Group, in such a manner as Lehman Brothers may reasonably direct, for the purposes of identifying and assisting in the execution of certain transactions, outside the UK, particularly in the German, Austrian and Swiss markets. In connection therewith the Consultant will, in particular:

    (a) liaise with and inform the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

    (b) maintain regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

    (c) assist in developing strategies and tactics to approach corporations and governments in Europe; and

    (d) engage in such other activities as may from time to time be agreed between the Consultant and Lehman Brothers or any company in the Lehman Group to which Lehman Brothers may have agreed that the Consultant should provide services, and which Lehman Brothers has notified to the Consultant.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE +44 (0)20 7102 1000
REGULATED BY THE FINANCIAL SERVICES AUTHORITY.
REGISTERED IN ENGLAND NO 3950078 AT THE ABOVE ADDRESS.

Marsoner00000708

2. **Term**

This Agreement shall be effective as of the date hereof and shall terminate on the earlier of (i) unless renewed, 2 December 2004 (ii) either party, with or without cause, giving the other party 30 calender days prior written notice of termination; (iii) either party, with cause, giving the other party written notice of termination; or (iv) the occurance of one or more of the following events (A) the death of the Consultant; or (B) the Consultant being adjudged bankrupt, compounded with his creditors or subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Consultant is personally resident; or (C) the Consultant accepting an offer of full-time employment from any person or legal entity that may be deemed by Lehman Brothers at its sole discretion to be incompatible with the Agreement.

Notwithstanding any termination of this Agreement, paragraphs 5 to 16 shall remain in full force and effect.

3. **Compensation Payable to the Consultant**

In consideration of the services to be performed hereunder, the Consultant shall be paid as follows:

(i)  A fee of €150,000, payable within 7 days of the execution of this Agreement; plus

(ii) A quarterly fee of €50,000, payable in equal instalments every 3 months, with each payment being due on March 1 2004, June 1 2004, September 1 2004 and December 1 2004, respectively. The first fee payable to the Consultant pursuant to sub-paragraphs (iii), (vii), or (ix) below, shall be reduced by €200,000 (being the total annual amount payable to the Consultant pursuant to this sub-paragraph (ii)). Alternatively, the fees payable to the Consultant pursuant to sub-paragraphs (iv),(v), (vi) and (vii) shall be reduced by 50% of the first €400,000 so payable upto the €200,000 retainer being covered; plus

(iii) In relation to the advisory project involving Hypo Real Estate Holding AG known as Project Olympia, provided that such transaction completes during the Payment Period, Lehman Brothers shall pay the Consultant a fee equal to 10% of the Total Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such transaction; plus

(iv) In relation to a strategic transaction involving Telekom Austria pursuant to which there is a change of control of Telekom Austria or of its subsidiary wireless Mobilkom or demerger of the latter, provided that (A) such transaction completes during the Payment Period and (B) the Consultant has provided services in relation to such transaction (which will be determined in good faith and on a reasonable basis), Lehman Brothers shall pay the Consultant a fee equal to 20% of the Net Investment Banking Revenues which are both earned and received by



Lehman Brothers Investment Banking Division after the date of this Agreement in connection with such transaction. For the avoidance of doubt, the foregoing shall not apply to any transaction involving a market offering of new or existing shares or other securities in or related to Telekom Austria.

(v)   In relation to a market offering of shares in Telekom Austria by the company itself or by ÖIAG provided that (A) such transaction completes during the Payment Period and (B) the Consultant has provided services in relation to such transaction (which will be determined in good faith and on a reasonable basis), Lehman Brothers shall pay the Consultant a fee equal to 20% of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers Investment Banking Division after the date of this Agreement in connection with such transaction.

(vi)  In relation to the existing transaction involving public housing corporations owned by the Republic of Austria known as Project BWBG, provided that such transaction completes during the Payment Period, Lehman Brothers shall pay the Consultant a fee equal to 10% of the Net Investment Banking Revenues upto €8.225 million plus 20% of the amount by which such Net Investment Banking Revenues exceed €8.225 million, which, in each case, are both earned and received by Lehman Brothers Investment Banking Division after the date of this Agreement in connection with such transaction.

(vii) In relation to a future securitisation of the assets of BWBG provided that (A) such transaction completes during the Payment Period and (B) the Consultant has provided services in relation to such transaction (which will be determined in good faith and on a reasonable basis), Lehman Brothers shall pay the Consultant a fee equal to 20% of the Total Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such securitisation.

(viii) In relation to the advisory assignment relating to the possible sale of certain real estate assets of Donauzentrum AG provided that such transaction completes during the Payment Period, Lehman Brothers shall pay the Consultant a fee equal to 20% of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers Investment Banking Division after the date of this Agreement in connection with such transaction.

(ix)  In relation to any other Agreed Transaction provided that (A) such transaction completes during the Payment Period and (B) the Consultant provides substantial services to Lehman Brothers in relation to such Agreed Transaction, Lehman Brothers shall pay the Consultant a fee based on a to be agreed upon percentage of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers' Investment Banking Division after the date of this Agreement in connection with such Agreed Transaction.

(x) In addition, upon presentation of an invoice Lehman Brothers will re-imburse the Consultant for its reasonable travel and out-of-pocket expenses incurred in connection with providing services hereunder provided that (i) such expenses are authorized by Lehman Brothers and are in accordance with Lehman Brothers' travel and expense policy in force from time to time and (ii) Lehman Brothers shall not be obligated to re-imburse any expenses which are not invoiced prior to the date that is 7 days of the closing of the particular transaction to which such expenses relate. This reimbursement obligation specifically includes €49,951.09 - in unreimbursed expenses so incurred by the Consultant from December 2002 through December 2, 2003.

For the avoidance of doubt, the foregoing sets forth the total fees that may be payable to the Consultant in relation to the transactions referred to above. The Consultant shall not be entitled to any other fees or payments pursuant to the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 24 July 2002 or otherwise.

For purposes of this Agreement:

"Net Investment Banking Revenues" means (i) for financing products, the share that the Lehman Brothers' Investment Banking Division receives (this is currently 50% for most financing transactions) of (A) the sum of Lehman Brothers' management fees, sales credits, net underwriting fees, and/or (B) the amount of any market gains made by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unre-imbursed out of pocket and other expenses; and (ii) for advisory transactions, the share that the Lehman Brothers' Investment Banking Division receives (this is currently 100%) of any retainer and success fees, less the amount of any unre-imbursed out of pocket or other expenses.

"Total Revenues" means (i) for financing products, (A) the sum of Lehman Brothers' management fees, sales credits, net underwriting fees, and/or (B) the amount of any market gains made by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unre-imbursed out of pocket and other expenses; and (ii) for advisory transactions any retainer and success fees, less the amount of any unre-imbursed out of pocket or other expenses.

"Agreed Transaction" means any transaction which Lehman Brothers has specifically designated in writing to the Consultant as falling within the ambit of this Agreement.

"Payment Period" shall mean the period commencing on the date of this Agreement and ending 12 months following the termination of this Agreement unless the termination of this Agreement was (A) by the Consultant for any reason; (B) by Lehman Brothers in accordance with paragraph 2(iii); or (C) by virtue of the operation of paragraph 2(iv); in which case the period shall end on the date of such termination.

4. **Contact Person**

The contact point at Lehman Brothers with whom the Consultant shall co-ordinate shall be Vittorio Pignatti, a Managing Director of Lehman Brothers, or his designee. All activities of the Consultant, insofar as they relate to Lehman Brothers or a Proposed Transaction, must be co-ordinated with Vittorio Pignatti or such designee.

5. **Exclusivity**

During the Exclusivity Period, the Consultant agrees it shall not directly or indirectly, assist or advise any third party in connection with the operation of any transaction referred to in this Agreement or otherwise engage in any activity which may be detrimental to Lehman Brothers involvement in such transactions.

The "Exclusivity Period" shall mean the period commencing the date of this Agreement and ending 6 months following the termination of this Agreement or, if longer, the end of the Payment Period.

The Consultant acknowledges that Lehman Brothers will incur expense in reliance of the foregoing representations and agreements.

6. **Independent Contractor**

In its capacity as an independent contractor, the Consultant acknowledges that it is not an agent or employee of Lehman Brothers. The Consultant further acknowledges that it has no power or authority to bind or commit Lehman Brothers to any contract or agreement or to make any representations on behalf of Lehman Brothers, and hereby agrees that, unless it shall receive specific written authorisation from Lehman Brothers to do so, it shall neither (a) hold itself out as having power or authority to enter into any contract or agreement on Lehman Brothers' behalf or to otherwise bind or commit Lehman Brothers to any contract or agreement, nor (b) take any actions, directly or indirectly, which would cause Lehman Brothers to become a party to any contract or agreement or otherwise obligate Lehman Brothers in any manner whatsoever.

7. **Compliance with Laws and Policies**

In entering into this Agreement and performing the services hereunder, the Consultant will comply with all applicable laws, rules and regulations of all applicable jurisdictions, will obtain and maintain all applicable licences and registrations and will abide by such policies of Lehman Brothers and its affiliates as Lehman Brothers may reasonably request in connection with the provision of services hereunder.

The Consultant confirms that the entering into of this Agreement and the provision of services hereunder does not conflict with any duties or obligations owed by the Consultant to any other person or persons. The Consultant also agrees that it will provide services hereunder, including the referral of business,

Marsoner00000712

only in circumstances that do not give conflict with duties or obligations owed to any other person or persons.

The Consultant confirms that it has and agrees that it will maintain any and all licences and approvals necessary to enable it to provide the services required hereunder.

8. **Confidential Information**

The Consultant and Lehman Brothers agree to keep confidential all non-public information relating to the transactions referred to herein ("Confidential Information"). In particular each party agrees not to disclose to any third party (other than, in the case of Lehman Brothers, its affiliates and each of its and their officers, directors and employees), for a period of two years from the date hereof, any Confidential Information, without the other parties prior written consent. Notwithstanding the above, neither party shall be prohibited from disclosing confidential information which (i) is or becomes generally available to the public other than as a result of disclosure by that party in breach of this agreement, (ii) was within such party's possession prior to its disclosure, (iii) becomes available to such party after the date hereof from any third party which is not known to be bound by a confidentiality agreement with respect to such information or (iv) is required to disclose by law, judicial order, the Panel on Takeovers and Mergers or any self-regulating or similar organisation.

9. **Liability**

The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and its affiliates for any and all liabilities (including costs and expenses) incurred by any such entity as the result of the provision by the Consultant of services hereunder, PROVIDED THAT, such liabilities is or shall have been caused by the Consultants negligence, bad faith or wilful misconduct.

In no event shall the Consultant or Lehman Brothers be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

10. **No Assignment**

This Agreement shall be binding upon and shall inure to the benefit of any successor, heir, legal representative or assign of Lehman Brothers. The performance obligations of the Consultant under this Agreement shall not be assignable or assigned by the Consultant without the prior written approval of Lehman Brothers.

11. **Notices**

Any notice which is required to be given under this Agreement shall (without prejudice to any other effective mode of making the same) be duly served if sent by pre-paid first class letter addressed to the party to whom it shall be sent to its registered office or sent by facsimile.

Marsoner00000713

Any such notice shall if sent by first class post be deemed to be served two working days after posting exclusive of the day of posting. If such notice is sent by facsimile it shall be deemed served at the time of transmission (or if transmitted outside normal business hours (i.e. 09:00 – 18:00 hrs) at the first commencement of business thereafter).

In proving service by post it shall only be necessary to prove that the notice was contained in an envelope which was duly addressed and posted in accordance with this paragraph 11 and in proving service by facsimile it shall only be necessary to produce the sender's copy and transmission slip bearing the addressee's facsimile number.

12. <u>Governing law</u>

This Agreement is the entire agreement between the parties with respect to the subject matter hereof and may not be amended except in writing signed by both parties. The interpretation and enforcement of this Agreement will be governed by the laws of England. The parties submit to the jurisdiction of the English courts, provided that prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the President of Centre for European Dispute Resolution.

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between Lehman Brothers and the Consultant.

Yours faithfully,

LEHMAN BROTHERS EUROPE LIMITED

By: _____    By: _____
Name:                            Name:
Title: Managing Director         Title: Managing Director

We hereby acknowledge receipt of the above letter and sign below signifying our full acceptance to the terms and conditions thereof.

THOMAS MARSONER

BY: _____

Title: Senior Advisor

Marsoner00000714