# Exhibit O

DATED: 19 JUN 2014

IN THE HIGH COURT OF JUSTICE                         CLAIM NO: 1434 OF 2014

CHANCERY DIVISION

COMPANIES COURT

MR JUSTICE SALES

IN THE MATTER OF LEHMAN BROTHERS EUROPE LIMITED (IN ADMINISTRATION)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

BETWEEN:

DR THOMAS MARSONER

Applicant

- and -

(1) DAN YORAM SCHWARZMANN
(2) ANTHONY VICTOR LOMAS
(3) STEVEN ANTHONY PEARSON
(4) JULIAN GUY PARR
(as Joint Administrators of Lehman Brothers Europe Limited)

Respondents

## CONSENT ORDER

UPON the Applicant and the Respondents having agreed to the terms set out in the Confidential schedule

BY CONSENT

IT IS ORDERED THAT

1   **Stay of Proceedings**

    All further proceedings in the claim be stayed except for the purpose of carrying such terms into effect.

2   **Liberty to apply**

    AND for that purpose the parties have permission to apply.

Marsoner00000218

EXECUTION COPY

Dated 5 June 2014

DR THOMAS MARSONER

and

LEHMAN BROTHERS EUROPE LIMITED (IN ADMINISTRATION)

and

THE JOINT ADMINISTRATORS OF LEHMAN BROTHERS EUROPE LIMITED

# SETTLEMENT AGREEMENT

Linklaters

One Silk Street
London EC2Y 8HQ

Telephone (44-20) 7456 2000
Facsimile (44-20) 7456 2222

Ref: Nick Porter/Jared Oyston

Marsoner00000219

THIS AGREEMENT (this "**Agreement**") is made the 5th day of June 2014 between:

(1) **DR THOMAS MARSONER** of Andreas Hofer Strasse 43, 6020 Innsbruck, Austria ("**Dr Marsoner**");

(2) **LEHMAN BROTHERS EUROPE LIMITED (IN ADMINISTRATION)**, a company incorporated in England and Wales with registered number 03950078 whose registered address is Level 23, 25 Canada Square, London E14 5LQ ("**LBEL**") acting by its joint administrators, Dan Yoram Schwarzmann, Anthony Victor Lomas, Steven Anthony Pearson and Julian Guy Parr, each a partner of PricewaterhouseCoopers LLP, 7 More London Riverside, London SE1 2RT (the "**Joint Administrators**"); and

(3) **THE JOINT ADMINISTRATORS** of LBEL, each a partner of PricewaterhouseCoopers LLP, 7 More London Riverside, London SE1 2RT (together the "**Joint Administrators**"),

each a "**Party**" and together the "**Parties**".

**WHEREAS**

(A) On 23 September 2008 (the "**Administration Date**") LBEL entered into administration (the "**Administration**") by order of the High Court Chancery Division of England and Wales (the "**Court**"). On the Administration Date, Dan Yoram Schwarzmann, Anthony Victor Lomas and Steven Anthony Pearson and, on 22 March 2013, Julian Guy Parr, were appointed as Joint Administrators of LBEL;

(B) Dr Marsoner has lodged in the Administration a proof of debt dated 12 November 2013 in the amount of £264,150,843 (the "**Proof of Debt**");

(C) The Joint Administrators have rejected the Proof of Debt in its entirety pursuant to Rule 2.77(2) of the Insolvency Rules 1986 (the "**Rules**");

(D) Dr Marsoner has made an application to the Court pursuant to Rule 2.78(1) of the Rules for an order to vary or set aside the Joint Administrators' rejection of the Proof of Debt (the "**Application**"); and

(E) The Parties have agreed to a full and final settlement of all matters between them on the terms set out in this Agreement.

IT IS HEREBY AGREED AS FOLLOWS:

1     Definitions and Interpretation

1.1   Definitions

      In this Agreement:

      "**Act**" means the Insolvency Act 1986;

      "**Admitted Claim**" has the meaning given to it in Clause 3.1;

      "**Claim**" means a claim in law, in equity or otherwise and of whatsoever nature:

      (i)   including any and all claims, actions, liabilities, rights and obligations for breach of contract, tort, statute, restitutionary claims and breach of trust;

      (ii)  whether arising by reason of, amongst other things, insolvency or the termination, whether voluntary or for cause, of any contractual obligation or for any failure of a person to perform any contractual, legal or regulatory obligation or otherwise; and/or

A13211429

- 1 -

Marsoner00000220

(iii) for, amongst other things, the enforcement of any right to, or any liability in respect of a right to:

(a) seek or enforce judgment;

(b) exercise any remedy (for damages or otherwise), indemnity and contribution, whether for losses (including consequential loss, economic loss, loss of bargain, loss of value, or other losses computed by reference to value which may have been available had an obligation been duly performed in a timely manner, or otherwise), costs and expenses of any nature; or

(c) apply any set-off, netting, withholding, combination of accounts or retention or similar rights in respect of any claim or liability whatsoever;

"**Consent Order**" means the consent order contained in Schedule 1 to this Agreement;

"**Effective Date**" means the date on which Dr Marsoner provides LBEL with an executed copy of the Consent Order;

"**Liquidation Event**" means either an order by the Court to compulsorily wind up LBEL or the commencement of a creditors' voluntary winding-up in respect of LBEL (both pursuant to the Act and the Rules and including, but not limited to, under paragraph 83 of Schedule B1 to the Act);

"**Long Stop Date**" means 5.00pm on 6 June 2014 or such later date as LBEL and Dr Marsoner may agree in writing;

"**Released Claims**" has the meaning set out in Clause 4.1 below;

"**Statutory Interest**" means interest payable pursuant to Rules 2.88(7) to 2.88(9) (inclusive) of the Rules or section 189 of the Act; and

"**Varied Proof of Debt**" has the meaning given to it in Clause 2.

1.2 Construction

Unless a contrary indication appears, any reference in this Agreement to:

(i) the singular shall include the plural and vice-versa;

(ii) the Joint Administrators shall be construed as being to the Joint Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Joint Administrators;

(iii) a provision of law is a reference to that provision as amended or re-enacted; and

(iv) "£" and "**pounds sterling**" are to the lawful currency for the time being of the United Kingdom of Great Britain and Northern Ireland;

(v) a time of day is a reference to London time.

1.3 Third Parties

Any person who is not a party to this Agreement shall have no right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any term of this Agreement provided that the Joint Administrators' firm, its members, partners, directors, officers, employees and each of their respective agents, advisers and

- 2 -

Marsoner00000221

representatives shall be entitled to rely on Clause 12 (*Joint Administrators' Liability*) of this Agreement as if they were a party to it.

2  **Variation of Proof of Debt**

The Joint Administrators and Dr Marsoner agree that pursuant to Rule 2.79 of the Rules, the Proof of Debt shall, on the Effective Date, be varied so as to be submitted in the lower amount of £2,500,000.00 (two million five hundred thousand pounds) only as a general, unsecured claim of Dr Marsoner against LBEL pursuant to the Rules and the Act (and, for the avoidance of doubt, shall not rank as an expense in the Administration) (the "**Varied Proof of Debt**").

3  **Admission of Varied Proof of Debt**

3.1  The Varied Proof of Debt shall, on the Effective Date, be admitted in full as qualifying for a dividend from the estate of LBEL available to its unsecured creditors pursuant to the Rules and the Act (the "**Admitted Claim**").

3.2  In respect of the Admitted Claim, Dr Marsoner shall become eligible to receive a catch-up dividend in the Administration in the amount of 50 pence in the pound on 10 June 2014 and to participate as an ordinary unsecured creditor in such further dividends as the Joint Administrators may declare.

4  **Release**

4.1  With effect from the Effective Date, save solely as set out in Clause 4.3, Dr Marsoner unconditionally and irrevocably releases and discharges the other Parties from any and all Claims whatsoever (whether present or future, whether actual, prospective or contingent and whether as creditor or by way of proprietary claim, by statute, at common law or in equity, howsoever arising and whether presently known or unknown) and relinquishes all rights with respect to the other Parties (the "**Released Claims**").

4.2  Save solely as set out in Clause 4.3, Dr Marsoner agrees that this Agreement is intended to be, and shall be, a complete defence to any Claim by Dr Marsoner against any other Party, and Dr Marsoner undertakes not to assert or pursue any such Claim, whether in the context of the Varied Proof of Debt or otherwise in any jurisdiction or forum whatsoever.

4.3  The release, discharge, relinquishment, agreement and undertaking contained in Clauses 4.1 and 4.2 shall not apply to:

4.3.1  the Claim or Claims in respect of which Dr Marsoner submitted a proof of debt dated 14 December 2008 for the amounts of £14,199.51 and €1,821,840.40, and which was admitted by the Joint Administrators on 8 November 2012 in the amount of €1,830,522.47; and

4.3.2  any right to receive Statutory Interest in respect of the Admitted Claim, which Dr Marsoner agrees is, in the case of the Admitted Claim, limited to the rate of eight per cent simple per annum, as provided for by section 17 of the Judgments Act 1838.

5  **Stay of Application**

5.1  Dr Marsoner hereby agrees to the Application being stayed on the terms of the Consent Order and shall execute and return the Consent Order to LBEL no later than the Long Stop Date.

Marsoner00000222

5.2 Dr Marsoner shall bear his own costs of, and associated with, and incidental to:

5.2.1 preparing and lodging the Proof of Debt and the Varied Proof of Debt in the Administration; and

5.2.2 preparing, filing and serving the Application.

6 **Confidentiality**

6.1 Subject to Clause 6.2 below, the Parties shall treat as strictly confidential and not disclose or use any information received or obtained as a result of entering into or performing this Agreement which relates to:

6.1.1 the existence and the provisions of this Agreement; or

6.1.2 the negotiations relating to this Agreement.

6.2 Clause 6.1 above shall not prohibit disclosure or use of any information if and to the extent:

6.2.1 the disclosure or use is required by law, by any regulatory body or by any recognised stock exchange;

6.2.2 the disclosure or use is required for the purpose of any judicial proceedings (including judicially ordered mediation) or reasonably considered necessary by a Party to protect its rights in any judicial proceedings (including judicially ordered mediation);

6.2.3 the disclosure is to the Court in connection with the submission of the Consent Order;

6.2.4 the disclosure or use is required for the purpose of any enquiry or investigation by any governmental, official or regulatory body which is lawfully entitled to require such disclosure or use;

6.2.5 the disclosure is made to professional advisers or auditors who need to know such information to discharge their duties, on terms that such professional advisers or auditors either: (i) undertake to comply with the provisions of this Clause 6 in respect of such information as if they were a party to this Agreement; or (ii) are otherwise bound by a professional duty of confidentiality;

6.2.6 the information is or becomes publicly available (other than by breach of this Agreement);

6.2.7 in the case of the Joint Administrators:

(i) the disclosure is to any subsequent administrator, supervisor, liquidator or other officeholder of LBEL;

(ii) the disclosure or use is required in the exercise of the statutory duties of the Joint Administrators or to the extent required by current insolvency practice or considered by the Joint Administrators to be necessary to enable the Joint Administrators properly to carry out the duties of their office; and/or

(iii) the disclosure is to a third party storage provider that provides disaster recovery or data back-up services to LBEL and/or the Joint Administrators or their firm,

Marsoner00000223

provided that prior to disclosure or use of any information pursuant to sub-Clause 6.2.1, 6.2.2 or 6.2.4 above, notice is given (to the extent legally possible) by the Party disclosing the information to the other Parties of the disclosure, and the nature and extent of the disclosure.

## 7 Termination

7.1 This Agreement shall automatically terminate if the Effective Date has not occurred on or before the Long Stop Date.

7.2 In the event that this Agreement terminates in accordance with this Clause 7, each of the interests, rights, remedies and defences of LBEL and Dr Marsoner shall be restored as if this Agreement had never been executed.

## 8 Costs

Each of the Parties shall bear its own costs incurred by it in connection with the preparation, negotiation, entry into and compliance with this Agreement.

## 9 Tax

The Parties agree that Dr Marsoner (and not LBEL or the Joint Administrators) will meet any tax liability incurred by Dr Marsoner or LBEL in respect of the Admitted Claim.

## 10 Invalidity

If any part of this Agreement should be held or deemed to be void, illegal, invalid or unenforceable under any applicable enactment or rule of law, such provision or part shall to that extent be deemed not to form part of this Agreement and the validity, legality and enforceability of the remainder of this Agreement shall not in any way be affected or impaired and shall remain in full force and effect.

## 11 Variation

No variation of this Agreement shall be effective unless in writing and signed by or on behalf of each of the Parties.

## 12 Joint Administrators' Liability

12.1 The Joint Administrators have signed this Agreement as agents for and on behalf of LBEL and neither they, their firm, its members, partners, directors, officers, employees, nor any of their agents, advisers or representatives shall incur any personal liability whatsoever in respect of: any of the obligations undertaken by LBEL or in respect of any failure by LBEL to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or under any document or assurance made pursuant to this Agreement.

12.2 The exclusion of liability set out in Clause 12.1 above shall arise and continue notwithstanding the termination of the agency of the Joint Administrators and shall operate as a waiver of any and all claims including, but not limited to, claims in tort, equity and common law as well as under the laws of contract.

## 13 No Expense Claim

For the avoidance of doubt, no amount, liability or obligation in relation to this Agreement shall be payable out of or charged on the property of LBEL under paragraph 99(3) or 99(4) of Schedule B1 to the Act and, if LBEL becomes subject to a Liquidation Event, any and all

Marsoner00000224

such amounts, liabilities and obligations shall not rank as an expense of LBEL's liquidation under Rule 4.218 of the Rules.

14  **Whole Agreement**

This Agreement supersedes any previous written or oral agreement between the Parties in relation to the matters dealt with in this Agreement and contains the whole agreement between the Parties relating to the subject matter of this Agreement at the date hereof to the exclusion of any terms implied by law which may be excluded by contract. Each Party acknowledges that it has not been induced to enter into this Agreement by any representation, warranty or undertaking not expressly incorporated into it. So far as permitted by law and except in the case of fraud or deliberate misrepresentation, each of the Parties agrees and acknowledges that its only rights and remedies in relation to any representation, warranty or undertaking made or given in connection with this Agreement shall be for breach of the terms of the Agreement, to the exclusion of all other rights and remedies (including those in tort or arising under statute).

15  **Counterparts**

This Agreement may be entered into in any number of counterparts, all of which taken together shall constitute one and the same instrument. Any Party may enter into this Agreement by executing any such counterpart.

16  **Governing Law and Dispute Resolution**

16.1  This Agreement and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with English law.

16.2  All the Parties irrevocably agree that the courts of England are to have exclusive jurisdiction to settle any disputes which may arise out of or in connection with this Agreement and that accordingly any proceedings arising out of or in connection with this Agreement shall be brought in such courts.

16.3  Dr Marsoner irrevocably appoints Goldwyns of 13 David Mews, Porter Street, London W1U 6EQ to receive, for him and on his behalf, service of process in any proceedings in England & Wales. Such service shall be deemed completed on delivery to such process agent (whether or not it is forwarded to and received by Dr Marsoner). If for any reason such process agent ceases to be able to act as such or no longer has an address in England & Wales, Dr Marsoner irrevocably agrees to appoint a substitute process agent acceptable to LBEL and shall immediately notify LBEL of such appointment. Nothing in this Clause 16.3 shall affect the right to serve process in any manner permitted by law.

Marsoner00000225

This Agreement has been entered into on the date stated at the beginning of this Agreement.

Signed by Dr Thomas Marsoner

*[signature]*

Signed by Dan Yoram Schwarzmann, a Joint Administrator, as agent for **Lehman Brothers Europe Limited (in administration)**, without personal liability

*[signature]*
Joint Administrator

Signed by Dan Yoram Schwarzmann, a Joint Administrator, for and on behalf of the Joint Administrators of **Lehman Brothers Europe Limited (in administration)**, without personal liability

*[signature]*
Joint Administrator

Marsoner00000226

IN THE HIGH COURT OF JUSTICE                                    1434 OF 2014

CHANCERY DIVISION

MR JUSTICE SALES

19 JUNE 2014

IN THE MATTER OF LEHMAN BROTHERS EUROPE LTD (IN ADMINISTRATION)
AND IN THE MATTER OF THE INSOLVENCY ACT 1986

DR THOMAS MARSONER -v- DAN YORAM SCHWARZMANN & OTHERS

# ORDER

The Court has sent sealed copies of this Order to:

**Applicant's Solicitor**

Hogan Lovells International LLP
Collection Tray


**Respondent's Solicitor**

Linklaters LLP
Collection Tray
Ref: Nick Porter/Jared Oyston


CLEAN COPIES OF ORDERS FOR SEALING

Whenever possible, where you submit a draft order requested by the court you should provide, in addition to the signed minute of order, clean copies ready for sealing, one for the court and one for each party. The clean copies should include backsheets and should indicate in the preamble if the order is by consent but should not include the heading "minute of order" or "draft order".


This Order was sealed by Associate Vevet N Deer (email: Vevet.Deer@hmcts.gsi.gov.uk., Associate Tel: 020 7947 6733) to whom all enquiries regarding this Order should be made. Please note that telephone enquiries should only be made between 9.00 am - 10.15 am and after 4.15 pm. When corresponding with the Court please address forms or letters to the Operations Delivery Manager, Chancery Chambers, The Rolls Building, 7 Rolls Buildings, Fetter Lane, London, EC4A 1NL (DX: 160040 Strand 4) and quote the case number.