# Exhibit 15

| | |
|---|---|
| **From:** | Johari, Aaron O <ajohari@lehman.com> |
| **Sent:** | Friday, September 19, 2008 2:30 PM |
| **To:** | Reynolds, Guy <guy.reynolds@Linklaters.com>; clodagh hayes <clodagh.hayes@Linklaters.com>; Shelly, Jason L <jason.shelly@lehman.com>; Wagstaff, Iain <iain.wagstaff@Linklaters.com>; Johari, Aaron O <ajohari@lehman.com>; Railton, Bruce <bruce.railton@lehman.com> |
| **Cc:** | Pierettori, Marco <marco.pierettori@lehman.com> |
| **Subject:** | FW: |
| **Attach:** | AR-M450_20080919_182640.pdf; AR-M450_20080919_182738.pdf; AR-M450_20080919_182812.pdf; AR-M450_20080919_182852.pdf; AR-M450_20080919_182941.pdf; AR-M450_20080919_183010.pdf; AR-M450_20080919_183039.pdf; AR-M450_20080919_183123.pdf; AR-M450_20080919_183155.pdf; AR-M450_20080919_183448.pdf; AR-M450_20080919_183508.pdf; AR-M450_20080919_183605.pdf; AR-M450_20080919_183640.pdf |

Guy

These are all the documents that are in the files. It includes a couple
that were not on the list for political reasons. There are also a
couple that were on the list but are not included- we are checking out
Aeris and Fabio Corsico which people think was not actually signed up.
Marco, are you aware of a consultancy agreement with Fabio in Milan?

This does not include the European Advisory Board consultants which are
not really banking.

Over the weekend I will either be in the office (+44 20 7102 2204) or
available on my mobile (+44 7764 975 517). I will be of course checking
my e-mail.

Regards

> _____
> From:     Doyle-Eva, Ann
> Sent: 19 September 2008 18:54
> To:   Johari, Aaron O
> Subject:
>
> <<AR-M450_20080919_182640.pdf>> <<AR-M450_20080919_182738.pdf>>
> <<AR-M450_20080919_182812.pdf>> <<AR-M450_20080919_182852.pdf>>
> <<AR-M450_20080919_182941.pdf>> <<AR-M450_20080919_183010.pdf>>
> <<AR-M450_20080919_183039.pdf>> <<AR-M450_20080919_183123.pdf>>
> <<AR-M450_20080919_183155.pdf>> <<AR-M450_20080919_183448.pdf>>
> <<AR-M450_20080919_183508.pdf>> <<AR-M450_20080919_183605.pdf>>
> <<AR-M450_20080919_183640.pdf>>
>
> Ann Doyle-Eva
> Investment Banking Legal Department
> Tel:  (207) 102 2917
> Fax:  (207) 102 4034
>
>
-------------------------------------------

This message is intended only for the personal and confidential use of the designated recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only and should not be regarded as an offer to sell or as a solicitation of an offer to buy any financial product, an official confirmation of any transaction, or as an official statement of Lehman Brothers. Email transmission cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this information is complete or accurate and it should not be relied upon as such. All information is subject to change without notice.

# LEHMAN BROTHERS

October 5th 2007

Dr. Thomas Marsoner
Andreas Hofer Strasse 43
6020 Innsbruck
Austria

Dear Thomas,

This letter agreement (the "Agreement") confirms, with effect from 1st February 2007 (the "Effective Date"), the understanding and agreement between Lehman Brothers Europe Limited ("Lehman Brothers") and Thomas Marsoner (the "Consultant") pursuant to which the Consultant will provide advice and assistance to Lehman Brothers and other members of the Lehman Brothers' group (the "Lehman Group") in connection with the identification and execution of certain transactions in the German, Austrian and Swiss markets.

By executing this Agreement the Consultant acknowledges that he will not be entitled to any payments or other rights under the Executive Advisory Services Agreement between the Consultant and Lehman Brothers dated 13 February 2004 or the Consultancy Agreement between the Consultant and Lehman Brothers effective 1st February 2006 (together the "Prior Agreements").

1. **Services to be rendered by the Consultant**

    Subject to the terms and conditions hereof, including, without limitation, paragraph 5 hereof, Lehman Brothers hereby engages the Consultant to, and the Consultant hereby agrees to, assist Lehman Brothers and the Lehman Group, in such a manner as Lehman Brothers may reasonably direct, for the purposes of identifying and assisting in the execution of certain transactions, outside the UK, particularly in the German, Austrian and Swiss markets. In connection therewith the Consultant will, in particular:

    (a) liaise with and inform the management of Lehman Brothers as necessary or appropriate in relation to the matters set out above;

    (b) maintain regular contacts with the relevant investment banking teams in the European Investment Banking Division of Lehman Brothers, and attending meetings with such teams if required;

    (c) assist in developing strategies and tactics to approach corporations and governments in Europe; and

    (d) engage in such other activities as may from time to time be agreed between the Consultant and Lehman Brothers or any company in the Lehman Group to which Lehman Brothers may have agreed that the Consultant should provide services, and which Lehman Brothers has notified to the Consultant.

1

# LEHMAN BROTHERS

2. **Term**

This Agreement shall be effective as of the date hereof and shall terminate on the earlier of (i) unless renewed, 31st August 2008 (ii) either party, with or without cause, giving the other party 30 calendar days prior written notice of termination; (iii) either party, with cause, giving the other party written notice of termination; or (iv) the occurrence of one or more of the following events (A) the death of the Consultant; or (B) the Consultant being adjudged bankrupt, compounded with his creditors or subject to any similar bankruptcy or personal insolvency proceedings in the territory in which the Consultant is personally resident; or (C) the Consultant accepting an offer of full-time employment from any person or legal entity that may be deemed by Lehman Brothers at its sole discretion to be incompatible with the Agreement.

Notwithstanding any termination of this Agreement, paragraphs 5 to 12 shall remain in full force and effect.

3. **Compensation Payable to the Consultant**

In consideration of the services to be performed hereunder, the Consultant shall be paid as follows (inclusive of value added or equivalent tax that may be payable thereon):

(i) A fee of €16,667 for the month of February 2007 and then a quarterly fee of €50,000, payable in arrears in equal installments every 3 months, with each payment being due on the last business day of May 2007, August 2007, November 2007, February 2008, May 2008 and August 2008 respectively. The February 2007 fee and the quarterly fees shall be deductible from any success fees payable as defined below.

(ii) In relation to any Agreed Transaction provided that (A) such Agreed Transaction completes during the payment period and (B) the Consultant provides services to Lehman Brothers in relation to such Agreed Transaction, Lehman Brothers shall pay the Consultant a fee of up to 20% of the Net Investment Banking Revenues which are both earned and received by Lehman Brothers after the date of this Agreement in connection with such Agreed Transaction. Without prejudice to the requirement that Lehman Brothers and the Consultant agree thereon, it is understood that, except in the case of an Uncapped Transaction, in any event the amount of such fee shall not exceed €2,500,000 for each Agreed Transaction. For the avoidance of doubt the €2,500,000 cap shall be the maximum amount payable in respect of each such Agreed Transaction whether Lehman Brothers earns fees in respect of advisory services, related financing services or both in connection with such Agreed Transaction.

(iii) Lehman Brothers may award to the Consultant a discretionary performance fee (the "Discretionary Performance Fee"), to be determined, calculated and paid by Lehman Brothers, in its sole and absolute discretion. The Consultant is aware and agrees that under this Agreement he is not entitled to, and

2

Confidential

LEH_0000390

therefore cannot claim the payment of, any Discretionary Performance Fee, unless otherwise agreed in writing with Lehman Brothers.

(iv) In addition, upon presentation of an invoice Lehman Brothers will reimburse the Consultant for its reasonable travel and out-of-pocket expenses incurred in connection with providing services hereunder provided that (i) such expenses are authorized by Lehman Brothers and are in accordance with Lehman Brothers' travel and expense policy in force from time to time and (ii) Lehman Brothers shall not be obligated to reimburse any expenses which are not invoiced prior to the date that is 7 days of the closing of the particular transaction to which such expenses relate.

For the avoidance of doubt, the foregoing sets forth the total fees that may be payable to the Consultant in relation to the transactions referred to above. The Consultant shall not be entitled to any other fees or payments pursuant to the Prior Agreements or otherwise.

For purposes of this Agreement:

"Net Investment Banking Revenues" shall mean (i) for the purposes of a financing, currently 50% of the share that Lehman Brothers Investment Banking Division receives from the sum of the Lehman Brothers management fees, sales credits and net underwriting fees, and the amount of any market gains made by Lehman Brothers for its own account, less the value of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out of pocket and other expenses, if any and (ii) for the purposes of advisory transactions the share that Lehman Brothers Investment Banking Division receives of any retainer and success fees, less the amount of any losses incurred by a related financing and less the amount of any unreimbursed out of pocket or other expenses. For the avoidance of doubt, Net Investment Banking Revenues shall include any fees received by Lehman Brother Investment Banking Division from the client in question in connection with derivative and related transactions (including pension and foreign exchange).

If, following the payment to you of any fee, Lehman Brothers incurs any loss, cost or expense which would have reduced the amount of Net Investment Banking Revenues had such a loss, cost or expense occurred prior to the payment of such fee, then you agree to repay Lehman Brothers (within 14 days of the request for repayment) the portion of such fee that would have been paid to you had such loss, cost or expense occurred to prior to the payment of such fee; provided that this paragraph shall not apply in respect of any loss, cost or expense that is incurred 6 months following the payment to you of the relevant fee,

3

"Agreed Transaction" means:

(i) advising BAWAG on the sale of its lottery stake (known as "Project Random")

(ii) a Hybrid or Tier II issuance by BAWAG;

(iii) advising IV Capital on the acquisition of a stake in S-Versicherung and asset management agreement

(iv) advising IV Capital on a joint venture on "Zukunftsvorsorge" with BAWAG;

(v) advising CVC on the acquisition of B&C Holding (known as Project Mountain);

(vi) advising CVC on the acquisition of 3 Banken (known as Project Independence);

(vii) advising EVN and/or Verbund in relation to a potential strategic transaction (known as Project Mozart II);

(viii) advising Telekom Austria on a split with Mobilkom;

(ix) acting as underwriter in any marketed public offering of Telekom Austria shares;

(x) BAWAG earning asset creation program

(xi) Advising on acquiring a 24% stake in the Austrian utility ESTAG and follow on IPO

(xii) Advising BAWAG on the sale of its Eastern European (Slovak, Czech, Hungarian and Slovenian) Bank Stakes – Project Paradise

(xiii) any other transaction which Lehman Brothers has specifically designated in writing to the Consultant as falling within the ambit of this Agreement.

An "Uncapped Transaction" shall mean the Agreed Transactions referred to in (iii), (iv), (vi), (vii) and (viii) of the definition of Agreed Transaction, provided that the Consultant has and continues until closing to provide substantial services in connection with such Agreed Transaction.

"Payment Period" shall mean the period commencing on the Effective Date of this Agreement and ending 12 months following the termination of this Agreement unless the termination of this Agreement was (A) by the Consultant for any reason; (B) by Lehman Brothers in accordance with paragraph 2(iii); or (C) by virtue of the operation of paragraph 2(iv); in which case the period shall end on the date of such termination.

4

Confidential
LEH_0000392

4. **Contact Person**

   The contact point at Lehman Brothers with whom the Consultant shall coordinate shall be Christian Meissner, a Managing Director of Lehman Brothers, or his designee. All activities of the Consultant, insofar as they relate to Lehman Brothers or a Proposed Transaction, must be coordinated with Christian Meissner or such designee.

5. **Exclusivity**

   During the Exclusivity Period, the Consultant agrees it shall not directly or indirectly, assist or advise any third party in connection with the operation of any transaction referred to in this Agreement or otherwise engage in any activity which may be detrimental to Lehman Brothers involvement in such transactions.

   The "Exclusivity Period" shall mean the period commencing the date of this Agreement and ending 6 months following the termination of this Agreement or, if longer, the end of the Payment Period.

   The Consultant acknowledges that Lehman Brothers will incur expense in reliance of the foregoing representations and agreements.

6. **Independent Contractor**

   In its capacity as an independent contractor, the Consultant acknowledges that it is not an agent or employee of Lehman Brothers. The Consultant further acknowledges that it has no power or authority to bind or commit Lehman Brothers to any contract or agreement or to make any representations on behalf of Lehman Brothers, and hereby agrees that, unless it shall receive specific written authorisation from Lehman Brothers to do so, it shall neither (a) hold itself out as having power or authority to enter into any contract or agreement on Lehman Brothers' behalf or to otherwise bind or commit Lehman Brothers to any contract or agreement, nor (b) take any actions, directly or indirectly, which would cause Lehman Brothers to become a party to any contract or agreement or otherwise obligate Lehman Brothers in any manner whatsoever.

7. **Compliance with Laws and Policies**

   In entering into this Agreement and performing the services hereunder, the Consultant will comply with all applicable laws, rules and regulations of all applicable jurisdictions, will obtain and maintain all applicable licences and registrations and will abide by such policies of Lehman Brothers and its affiliates as Lehman Brothers may reasonably request in connection with the provision of services hereunder.

   The Consultant confirms that the entering into of this Agreement and the provision of services hereunder does not conflict with any duties or obligations owed by the Consultant to any other person or persons. The Consultant also agrees that it will provide services hereunder, including the referral of business, only in circumstances

5

Confidential

LEH_0000393

that do not give conflict with duties or obligations owed to any other person or persons.

The Consultant confirms that it has and agrees that it will maintain any and all licences and approvals necessary to enable it to provide the services required hereunder.

8. **Confidential Information**

The Consultant and Lehman Brothers agree to keep confidential all non-public information relating to the transactions referred to herein ("Confidential Information"). In particular each party agrees not to disclose to any third party (other than, in the case of Lehman Brothers, its affiliates and each of its and their officers, directors and employees), for a period of two years from the date hereof, any Confidential Information, without the other parties prior written consent. Notwithstanding the above, neither party shall be prohibited from disclosing confidential information which (i) is or becomes generally available to the public other than as a result of disclosure by that party in breach of this agreement, (ii) was within such party's possession prior to its disclosure, (iii) becomes available to such party after the date hereof from any third party which is not known to be bound by a confidentiality agreement with respect to such information or (iv) is required to disclose by law, judicial order, the Panel on Takeovers and Mergers or any self-regulating or similar organisation.

9. **Liability**

The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and its affiliates for any and all liabilities (including costs and expenses) incurred by any such entity as the result of the provision by the Consultant of services hereunder, PROVIDED THAT, such liabilities is or shall have been caused by the Consultants negligence, bad faith or willful misconduct.

In no event shall the Consultant or Lehman Brothers be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

10. **No Assignment**

This Agreement shall be binding upon and shall ensure to the benefit of any successor, heir, legal representative or assign of Lehman Brothers. The performance obligations of the Consultant under this Agreement shall not be assignable or assigned by the Consultant without the prior written approval of Lehman Brothers.

11. **Notices**

Any notice which is required to be given under this Agreement shall (without prejudice to any other effective mode of making the same) be duly served if sent by pre-paid first class letter addressed to the party to whom it shall be sent to its registered office or sent by facsimile.

Confidential                                                                                                              LEH_0000394

**LEHMAN BROTHERS**

Any such notice shall if sent by first class post be deemed to be served two working days after posting exclusive of the day of posting. If such notice is sent by facsimile it shall be deemed served at the time of transmission (or if transmitted outside normal business hours (i.e. 09:00 – 18:00 hrs) at the first commencement of business thereafter).

In proving service by post it shall only be necessary to prove that the notice was contained in an envelope which was duly addressed and posted in accordance with this paragraph 11 and in proving service by facsimile it shall only be necessary to produce the sender's copy and transmission slip bearing the addressee's facsimile number.

12. **Governing law**

This Agreement is the entire agreement between the parties with respect to the subject matter hereof and may not be amended except in writing signed by both parties. The interpretation and enforcement of this Agreement will be governed by the laws of England. The parties submit to the jurisdiction of the English courts, provided that prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the President of Centre for European Dispute Resolution.

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between Lehman Brothers and the Consultant.

Yours faithfully,

LEHMAN BROTHERS EUROPE LIMITED

BY: _____
Christian Meissner
Managing Director
Co-Head European Investment Banking

We hereby acknowledge receipt of the above letter and sign below signifying our full acceptance to the terms and conditions thereof.

THOMAS MARSONER

BY: _____
Consultant

7

Confidential

LEH_0000395