# Exhibit 17

| United States Bankruptcy Court/Southern District of New York | | **PROOF OF CLAIM** |
|---|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 1000020630 |
|---|---|---|
| Name of Debtor Against Which Claim is Held **LB Holdings Inc** | Case No. of Debtor **08-13555** | Filed: USBC - Southern District of New York Lehman Brothers Holdings Inc., Et Al. 08-13555 (JMP)    0000009058 |

NOTE: This form should not be used to make a claim for an administrative expense arising <u>after</u> the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor:

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000020630******
COYM,PETER
OBERER REISBERG 34
BAD HOMBURG, BE 61350
GERMANY

Telephone number: **0049-6172-32604**    Email Address: **pcoym@t-on Line.de**

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)
Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ **63,881.25  (= € 45,629.47)**

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** **Advisory Service Contract with LB Bankhaus AG, Frankfurt**
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** **3555**
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____ Annual Interest Rate _____%
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____ Basis for perfection: _____
   Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
   (See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
AUG 2 4 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: **8/12/09** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. **(Peter Coym)** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# LEHMAN BROTHERS

# **Lehman Brothers Bankhaus AG**

## CONFIDENTIAL

8. Juni 2005

Dr. Peter Coym

Bad Homburg

## Advisory Agreement

Dear Dr. Coym,

This letter will confirm the terms of the consulting agreement (the "Agreement") between you and Lehman Brothers Bankhaus AG ("LBB"), as follows:

1. Services   You will provide advice and assistance to LBB and/or other members of the Lehman Brothers' group (together referred to as "Lehman Brothers") as a Senior Advisor in connection with the development of Lehman Brothers' investment banking business in the German and European markets as requested by the head or co-heads of the European Investment Banking Division of Lehman Brothers or such other individual as may be designated by LBB. In connection with the foregoing, you will also act as a senior member of the Lehman Brothers' German Advisory Board. The provision of advice and assistance and acting as a Senior Advisory Board member are together referred to as the "Services".

2. Term of Agreement   The Agreement will commence on July 1, 2005 and will continue for a period of twelve months and will be automatically renewed, unless terminated in accordance with Paragraph 10 below. The period during which this Agreement is in force is referred to as the "Term".

3. Consulting Fees   LBB will pay you annual consulting fees of Euro 100,000. The consulting fees will be paid on a quarterly basis, with a quarterly payment of consulting fees to be made on the date falling at the end of each successive three month period occurring during the Term (the first period to commence on July 1, 2005). All fees will be paid on submission of invoices by you for consulting fees plus VAT. The annual consulting fee will be paid by Lehman Brothers independent of other payments by Lehman Brothers to Dr. Coym not connected with this Agreeemnt such as for example dividends, pension or royalties.

4. Special Payments   At each close of a Lehman Brothers' fiscal year occurring during the Term and at the close of the fiscal year immediately following the first and the last Term of Dr. Coym, senior management of Lehman Brothers' Investment Banking Division will make an assessment of the overall contributions to Lehman Brothers made by you during such fiscal year and may, in their reasonable discretion, determine that LBB will pay you an additional Special Payment in recognition of significant contributions made to Lehman Brothers by you in such fiscal year, as determined by Lehman Brothers in accordance with its customary practices. The amount of any such Special Payment will be based on the Net Investment Banking Revenues actually received by Lehman Brothers in such fiscal year in connection with those transactions closed during such fiscal year with respect to which you are determined by Lehman Brothers to have made a significant contribution. In determining the amount of any such Special Payment, Lehman Brothers will consider a percentage range up to a maximum of 7.5% of the Net Investment Banking Revenues (as defined below) actually received by Lehman Brothers with respect to such transaction you are determined by Lehman

LEHMAN BROTHERS BANKHAUS AKTIENGESELLSCHAFT

LEHMAN BROTHERS

Brothers to have made a significant contribution, provided that any amounts per such transaction in excess of Euro 200,000 will require the approval of the head or co-heads of the European Investment Banking Division. The payment will be made after the transaction is completed and all monies are received by Lehman Brothers. Net Investment Banking Revenues are defined as follows. For the purposes of a financing, Net Investment Banking Revenues will mean the share that the Lehman Brothers' Investment Banking Division receives (this is currently 50% for most, but not all, financing products) of the sum of the Lehman Brothers' management fees, sales credits, net underwriting, and/or of the amount of any market gains made by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out-of-pocket expenses, if any. For the purposes of advisory transactions, Net Investment Banking Revenues will mean the share that the Lehman Brothers' Investment Banking Division receives (this is currently 100%) of any retainer and success fees, less the amount of any unreimbursed out-of-pocket expenses, if any.

5. <u>Expenses</u>  You will be reimbursed for travel and out-of-pocket expenses incurred exclusively in connection with the Services, provided such expenses are incurred in accordance with Lehman Brothers' travel and expense policies.

6. <u>Confidentiality</u>  You will maintain in strictest confidence and not disclose to any third party without Lehman Brothers' prior written consent both the terms of this Agreement and any and all information of Lehman Brothers, its affiliates and their respective clients and suppliers that may be disclosed to or obtained by you in connection with the Services (the "Confidential Information"). At the end of the Term and at any other time upon Lehman Brothers' request, you will promptly deliver to Lehman Brothers all items in your possession (other than your copy of this Agreement) which may contain Confidential Information as well as all information, materials and deliverables created pursuant to this Agreement. The terms of this Paragraph 6 will survive the termination or expiration of this Agreement.

7. <u>Independent Contractor</u>  You will perform the Services as an independent contractor and will not be an employee of Lehman Brothers for any purpose whatsoever. Accordingly, you will not be eligible for any coverage or participation in any Lehman Brothers' employee benefits plans or programs. You will be solely responsible for all applicable taxes which arise in connection with this Agreement.

8. <u>Compliance with Laws and Policies</u>  In entering into this Agreement and performing the Services, you will comply with all applicable laws, rules and regulations of all applicable jurisdictions, will obtain and maintain all applicable licences and registrations and, although not an employee, will abide by such policies of Lehman Brothers and its affiliates as may be provided to you.

9. <u>Competition and Conflicts of Interest</u>  During the Term of this Agreement you will not engage, directly or indirectly, in any part of Europe, in any manner whatsoever, in the operation of any business in which Lehman Brothers' Investment Banking Division (including ECM & DCM) is engaged; nor assist third parties in any way whatsoever, even if only in an advisory capacity, in the operation of such business; nor participate in any way whatsoever in such business. You will notify Lehman Brothers and the Chairman of the Advisory Board of any potential conflict of interest which may result from your other activities.

10. <u>Termination</u>  This Agreement may be terminated by LBB or you for any reason, following the initial Term with a three months notice period prior to the end of each respective Term by written notice of termination delivered to the other party at the address shown on the first page of this letter, provided however, that LBB or you may terminate this Agreement with immediate effect for good cause.

LEHMAN BROTHERS

11.  Entire Agreement; Governing Law    This Agreement is the entire agreement between the parties with respect to the subject matter hereof and may not be amended except in writing signed by both parties. The interpretation and enforcement of this Agreement will be governed by the laws of the Federal Republic of Germany without regard to principles of conflicts of laws.  The parties submit to the jurisdiction of the Frankfurt courts, provided that, prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the President of the German Banking Federation.

If this letter accurately reflects our understanding, please sign and date the two original letters provided, in the space indicated, and return one of them to me.

Yours sincerely,

Lehman Brothers Bankhaus AG

By: _____          _____

Karl Dannenbaum                  Helmut Olivier
Vorstand                         Vorstand

Accepted and Agreed:

By: _____

Dr. Peter Coym

Date: _____June 9, 2005_____

3

*Dr. Peter Coym*

Oberer Reisberg 34
61350 Bad Homburg v. d. H.
Telefon (06172) 3 26 04

CMS Hasche Sigle
Insolvenzberatung und –verwaltung GbR
z. Hd. Herrn Dr. Michael C. Frege

Barckhausstraße 12-16
60325 Frankfurt

30. Dezember 2008

Insolvenzverfahren der Lehman Brothers Bankhaus AG
AG Frankfurt, gerichtliches Aktenzeichen: 810 IN 1120/08 L

Sehr geehrter Herr Dr. Frege,

ich beziehe mich auf Ihr Schreiben vom 18. Dezember 2008.
Anbei überreiche ich Ihnen 2 Rechnungen vom 22. September 2008 für die
Consulting Fee für das 3.Quartal 2008 sowie für angefallene Kosten in Höhe
von insgesamt Euro 31.005,41.
Bis zu dem von Ihnen genannten Termin, dem 13. November 2008, sind an
Consulting Fee weitere Euro 14.213,88 sowie Kosten in Höhe von Euro 410,18
angefallen.
Die Gesamtforderung zum Stichtag 13. November 2008 beläuft sich somit auf
Euro 45.629,47.
Wie Ihnen sicher bekannt ist, hat der Vorstand der Lehman Brothers Bankhaus AG
den Beratungsmandatsvertrag mit Schreiben vom 26.September 2008 fristgemäß
zum 30. Juni 2009 gekündigt.

Mit freundlichen Grüßen

Anlagen

*Dr. Peter Coym*

*Oberer Reisberg 34*
*61350 Bad Homburg v. d. H.*
*Telefon (06172) 32604*

Lehman Brothers Bankhaus AG
Accounts Payable
Rathenauplatz 1
60313 Frankfurt

22. September 2008

Sehr geehrte Damen und Herren,

unter Bezugnahme auf das Advisory Agreement vom 9. Juni 2005 stelle ich Ihnen
nachfolgend die Consulting Fee für das 3. Quartal 2008 wie folgt in Rechnung:

| | |
|---|---|
| Consulting Fee | Euro 25.000,-- |
| MwSt. 19% | Euro  4.740.-- |
| Gesamt | Euro 29.740,-- |

Ich bitte Sie, diesen Betrag auf mein Konto ███████████████ bei der
Deutschen Bank AG, Frankfurt, zu überweisen.

Mit freundlichen Grüßen

*Peter Coym*

*Dr. Peter Coym*

*Oberer Reisberg 34*
*61350 Bad Homburg v. d. H.*
*Telefon (06172) 32604*

Lehman Brothers Bankhaus AG
Accounts Payable
Rathenauplatz 1
60313 Frankfurt

22. September 2008

Sehr geehrte Damen und Herren,

unter Bezugnahme auf das Advisory Agreement vom 9. Juni 2005 stelle ich Ihnen anbei
die bei mir angefallenen Kosten in Höhe von insgesamt € 1.265,41 für das 2. und 3.
Quartal in Rechnung:

Blackberry          € 573,50

1 Reise nach Bremen (Bremer Landesbank)

            € 562,91     Flugticket
            € 129.--     Taxen
            € 691,91

Ich bitte Sie, diesen Betrag auf mein Konto Nr ███████████████ bei der
Deutschen Bank AG, Frankfurt, zu überweisen.

Mit freundlichen Grüßen



**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

UNIQUE IDENTIFICATION NUMBER: 1000163301

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000010984

LY

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)
LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000163301******
KINKEL, KLAUS DR. RECHTSANWALT
SONNENRAIN 46
ST. AUGUSTIN 53757
GERMANY

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Telephone number: *00 49 (0)2241-342600* Email Address: *kinkel.st.augustin @t-online.de*

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above)

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: _____    Email Address: _____

1. Amount of Claim as of Date Case Filed: $ *51.710.682  (Kurs 14.07.09)*
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: *Services performed as member of the German/European advisory council*
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: *Jul. ref. ... 1715*
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$ *10.950,—*

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: *20 Anlagen*

FOR COURT USE ONLY

FILED / RECEIVED
SEP 09 2009
EPIQ BANKRUPTCY SOLUTIONS LLC

| Date: *17.7.2009* | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# LEHMAN BROTHERS



Einschreiben Rückschein

Herrn Rechtsanwalt
Dr. Klaus Kinkel, MdB
Sonnenrain 46

53757 St. Augustin

26. September 2008

Sehr geehrter Herr Dr. Kinkel,

bedingt durch die derzeitige Unternehmenssituation bestätigen wir Ihnen, dass wir eine
Verlängerung Ihres Beratungsmandatsvertrages vom 10. September 2001 nicht
vornehmen werden.

Wir danken Ihnen für die gute Zusammenarbeit und verbleiben

mit freundlichen Grüßen

Michael Bonacker                                      Dr. Patrick Schmitz-Morkramer

# LEHMAN BROTHERS



10 September, 2001

Rechtsanwalt
Dr. Klaus Kinkel, MdB
Sonnenrain 46
53757 St. Augustin

## Advisory Agreement
## (Beratungsmandatsvertrag)

Dear Dr. Kinkel,

This letter will confirm the terms of a consulting agreement (the "Agreement") between you and Lehman Brothers Bankhaus AG ("LBB"), as follows:

1. <u>Services</u>   You will act as a member of the Lehman Brothers' German Advisory Board and in this function will provide advice and assistance to LBB and/or other members of the Lehman Brothers' group (together referred to as "Lehman Brothers") in connection with the development of Lehman Brothers' investment banking business in the German and European markets as requested by the head or co-heads of the European Investment Banking Division of Lehman Brothers or such other individual as may be designated by LBB. The provision of advice and assistance and acting as an Advisory Board member are together referred to as the "Services".

2. <u>Term of Agreement</u>   The Agreement will commence on the date of your acceptance of this letter and, subject to Paragraph 10 below, will continue in force for a period of twelve months, unless renewed. The period during which this Agreement is in force is referred to as the "Term".

3. <u>Consulting Fees</u>   LBB will pay you annual consulting fees of USD50,000 plus VAT. The consulting fees will be paid on a quarterly basis, with a quarterly payment of consulting fees to be made on the date falling at the end of each successive three month period occurring during the Term (the first period to commence on the date of your acceptance of this letter), provided that the first quarterly payment of consulting fees will be advanced and made as soon as practicable following your acceptance of this letter. All fees will be paid on submission of invoices by you for consulting fees plus VAT.

4. <u>Special Payments</u>   At each close of a Lehman Brothers' fiscal year occurring during the Term and at the close of the fiscal year immediately following the end of the Term, senior management of Lehman Brothers' Investment Banking Division will make an assessment of the contributions to Lehman Brothers made by you during such fiscal year and may, in their reasonable discretion, determine that LBB will pay you an additional special payment (plus VAT) in recognition of significant contributions made to Lehman Brothers by you in such fiscal year, as determined by Lehman Brothers in accordance with its customary practices. The amount of any such payment will be based on the Net Investment Banking Revenues actually received by Lehman Brothers in such fiscal year in connection with transactions closed during such fiscal year with respect to which you are determined by Lehman Brothers to have made a significant contribution. In determining the amount of any such payment, Lehman Brothers will consider a percentage range up to a maximum of 5% of the Net Investment Banking Revenues (as defined below) actually received by Lehman Brothers with respect to each such transaction, provided that amounts in excess of $200,000 per transaction will require the approval of the head or co-heads of the European Investment Banking Division. The payment will be made after the transaction is completed and all monies are received by Lehman Brothers. Net Investment Banking

LEHMAN BROTHERS



Revenues are defined as follows. For the purposes of a financing, Net Investment Banking Revenues will mean the share that the Lehman Brothers' Investment Banking Division receives (this is currently 50% for most, but not all, financing products) of the sum of the Lehman Brothers' management fees, sales credits, net underwriting, and/or of the amount of any market gains made by Lehman Brothers for its own account, less the amount of any market losses incurred by Lehman Brothers for its own account and less the amount of any unreimbursed out-of-pocket expenses, if any. For the purposes of advisory transactions, Net Investment Banking Revenues will mean the share that the Lehman Brothers' Investment Banking Division receives (this is currently 100%) of any retainer and success fees, less the amount of any unreimbursed out-of-pocket expenses, if any.

5. Expenses    You will be reimbursed for travel and out-of-pocket expenses incurred exclusively in connection with the Services, provided such expenses are incurred in accordance with Lehman Brothers' travel and expense policies.

6. Confidentiality    You will maintain in strictest confidence and not disclose to any third party without Lehman Brothers' prior written consent both the terms of this Agreement and any and all information of Lehman Brothers, its affiliates and their respective clients and suppliers that may be disclosed to or obtained by you in connection with the Services (the "Confidential Information"). At the end of the Term and at any other time upon Lehman Brothers' request, you will promptly deliver to Lehman Brothers all items in your possession (other than your copy of this Agreement) which may contain Confidential Information as well as all information, materials and deliverables created pursuant to this Agreement. The terms of this Paragraph 6 will survive the termination or expiration of this Agreement.

7. Independent Contractor    You will perform the Services as an independent contractor and will not be an employee of Lehman Brothers for any purpose whatsoever. Accordingly, you will not be eligible for any coverage or participation in any Lehman Brothers' employee benefits plans or programs. You will be solely responsible for all applicable taxes which arise in connection with this Agreement.

8. Compliance with Laws and Policies    In entering into this Agreement and performing the Services, you will comply with all applicable laws, rules and regulations of all applicable jurisdictions, will obtain and maintain all applicable licences and registrations and, although not an employee, will abide by such policies of Lehman Brothers and its affiliates as may be provided to you.

9. Competition and Conflicts of Interest    During the Term and for a period of six months following termination or expiration of this Agreement, you will not engage, directly or indirectly, in any part of Europe, in any manner whatsoever, in the operation of any business in which Lehman Brothers is engaged; nor assist third parties in any way whatsoever, even if only in an advisory capacity, in the operation of such business; nor participate in any way whatsoever in such business. You will notify Lehman Brothers and the Chairman of the Advisory Board of any potential conflict of interest which may result from your other activities and will commence such other activities only after written approval of Lehman Brothers, which may not be unreasonably withheld.

10. Termination    This Agreement may be terminated by LBB or you for any reason, effective as of thirty days from the date written notice of termination is delivered to the other party at the address shown on the first page of this letter, provided however, that LBB or you may terminate this Agreement with immediate effect for good cause.

11. Entire Agreement; Governing Law    This Agreement is the entire agreement between the parties with respect to the subject matter hereof and may not be amended except in writing signed by both parties. The interpretation and enforcement of this Agreement will be governed by the laws of the Federal Republic of Germany without regard to principles of conflicts of laws. The parties submit to the jurisdiction of the

LEHMAN BROTHERS



German courts, provided that, prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the President of the German Banking Federation.

If this letter accurately reflects our understanding, please sign and date the two original letters provided, in the space indicated, and return one of them to me.

Yours sincerely,

Lehman Brothers Bankhaus AG

By: _____

Accepted and Agreed:

By: _____

_____

Date: _____

3

**Dr. Klaus Kinkel**

Rechtsanwalt

Sonnenrain 46

D  53757 Sankt Augustin

Tel. +49-(0)2241-342600
Fax                336376
email: kinkel.st.augustin@t-online.de

18. August 2008

Lehman Brothers Bankhaus AG
z.Hd. Frau Sandra Hass
Rathenauplatz 1
60313 Frankfurt am Main

**Lehman Brothers Internal ref.: 21715 / ER 580912**
**Re.-Nr.   003-080818- LBQA  2008/III**

Sehr geehrte Damen und Herren,

für meine Tätigkeit als Beiratsmitglied erlaube ich mir, für das Quartal III/2008 das
vereinbarte Honorar in Höhe von

|  |  |  |
|---|---:|---|
|  | 30.000,00 | € |
| zuzüglich 19 % Umsatzsteuer | 5.700,00 | € |
|  | 35.700,00 | € |

in Rechnung zu stellen und bitte um Überweisung auf das u.g. Konto.

Mit Dank und freundlichen Grüßen

Dr. Klaus Kinkel

Bankverbindung. Konto-Nr. ███████ Kreissparkasse Köln BLZ ███████
IBAN: DE59 3705 0299 0132 0010 25 ∗ SWIFT-BIC: COKSDE33

## Übersicht Honorarzahlungen LB

(6)

| Rechn-Nummer | Re.-Datum | Quartal | Abger. Zeitraum | Betrag | Datum Eingang | Datum Vertrag |
|---|---|---|---|---|---|---|
| | 18.12.01 | | 01.10. - 31.12.2001 | 14.500 -- $ | | 30.09.01 |
| | 13.02.02 | | 01.01. - 31.03.2002 | 14.500,-- $ | | |
| | 29.04.02 | | 01.04. - 30.06.2002 | 14.500,-- $ | | |
| | 14.07.02 | | 01.07. - 30.09.2002 | 14.500,-- $ | | |
| | 20.12.02 | | 01.10. – 31.12.2002 | 30.000,-- € | 11.02.03 | 18.11.02 |
| | 27.03.03 | | 01.01. – 31.03.2003 | 30.000,-- € | 29.04.03 | |
| 3-030704 | 04.07.03 | | 01.04. – 30.06.2003 | 30.000,-- € | 08.08.03 | |
| 05-031012 | 12.10.03 | | 01.07. – 30.09.2003 | 30.000,-- € | 17.11.03 | |
| 07-040125 | 25.01.04 | | Sonderzahlung 2003 | 100.000,-- € | 06.02.04 | |
| 010-040425 | 25.04.04 | | 01.10. – 31.12.2003 | 30.000,-- € | 28.05.04 | 2003 |
| 011-040704 | 04.07.04 | 2004 / I | 01.01. – 31.03.2004 | 30.000,-- € | 27.07.04 | |
| 012-040827 | 27.08.04 | 2004 / II | 01.04. – 30.06.2004 | 30.000,-- € | 01.10.04 | |
| 014-041002 | 02.10.04 | 2004 / III | 01.07. – 30.09.2004 | 30.000,-- € | 05.11.04 | |
| 015-041211 | 11.12.04 | 2004 / IV | 01.10. – 31.12.2004 | 30.000,-- € | 14.01.05 | 2004 |
| 016-041223 | 23.12.04 | | Sonderzahlung 2004 | 25.000,-- € | 12.04.05 | |
| 001-050218 | 18.02.05 | 2005 / I | 01.01. – 31.03.2005 | 30.000,-- € | 11.03.05 | 2005 |
| 003-050426 | 24.04.05 | 2005 / II | 01.04. – 30.06.2005 | 30.000,-- € | 03.05.05 | |
| 006 -050907 | 09.07.05 | 2005 / III | 01.07. – 30.09.2005 | 30.000,-- € | 15.07.05 | |
| 010 -051017 | 17.10.05 | 2005 / IV | 01.10. – 31.12.2005 | 30.000,-- € | 07.12.05 | |
| 002-060108 | 08.01.06 | | Sonderzahlung 2005 | 28.000,-- € | 23.01.06 | |
| 001-060108 | 08.01.06 | 2006 / I | 01.01. – 31.03.2006 | 30.000,-- € | 23.01.06 | 2006 |
| 004-060404 | 04.04.06 | 2006 / II | 01.04. - 30.06.2006 | 30.000,-- € | 25.04.06 | |
| 006-060706 | 06.07.06 | 2006 / III | 01.07, - 30.09.2006 | 30.000,-- € | 20.07.06 | |
| 008-061108 | 08.11.06 | 2006 / IV | 01.10 .- 31.12.2006 | 34.800,-- € | 08.12.06 | |
| 001-070214 | 14.02.07 | 2007 / I | 01.01. – 31.03.2007 | 35.700,-- € | 08.05.07 | 2007 |
| 003-070417 | 17.04.07 | 2007 / II | 01.04. – 30.06.2007 | 35.700,-- € | 24.04.07 | |
| 004-070820 | 20.08.07 | 2007 / III | 01.07. – 30.09.2007 | 35.700,-- € | 28.09.07 | |
| 005-071109 | 09.11.07 | 2007 / IV | 01.10. – 31.12.2007 | 35.700,-- € | 29.11.07 | |
| 001-080208 | 08.02.08 | 2008 / I | 01.01. – 31.03.2008 | 35.700,-- € | 26.02.08 | 2008 |
| 002-080419 | 19.04.08 | 2008 / II | 01.04. – 30.06.2008 | 35.700,-- € | 03.05.08 | |
| 003-080818 | 18.08.08 | 2008/III | 01.07 – 30.09.2008 | 35.700,- | | |
| | | | | | | |
| | | | | | | |

*Betrag offen*

*Dr. Klaus Kinkel*
Rechtsanwalt

Sonnenrain 46
53757 Sankt Augustin

Tel.   02241 – 342600
Fax          336376

14. Januar 2009



CMS Hasche Sigle
Insolvenzberatung
und –verwaltung GbR
Herrn
Dr. Michael C. Frege
Barckhausstraße 12 – 16
60325 Frankfurt / Main

**Insolvenzverfahren Lehman Brothers Bankhaus AG  / Forderungsanmeldung**
**Ihr Z.:     MF-ani-2008-19917**
**Akt.-Z.   810 IN 1120/08 L**
**Mein Z.:  003-080818-LBQA 2008/III**

Sehr geehrter Herr Dr. Frege,

mit diesem Schreiben erhalten Sie meine Forderungsanmeldung einschließlich der
erforderlichen Dokumente.

Mit freundlichen Grüßen

Dr. Klaus Kinkel

*Kopie*

CMS Hasche Sigle
Insolvenzberatung und –verwaltung GbR
Barckhausstraße 12 – 16
60325 Frankfurt am Main

**FAX: 0049/69 71701 41600**

CMS Hasche Sigle
Insolvenzberatung
und –verwaltung GbR

Barckhausstraße 12-16
60325 Frankfurt

Tel.: +49 (0)69/71701-300
Fax: +49 (0)69/71701-40600
www.cms-hs.com
lehman.insolvenz@cms-hs.com

Deutsche Bank
Privat- und Geschäftskunden AG
BLZ  860 700 24
Kto.  1 444 488

**Dr. Michael C. Frege**
**Unser Zeichen:** MF/se-2008-19917
Sekretariat: Kerstin Sebastian

**Insolvenzverfahren der Lehman Brothers Bankhaus AG**
**Amtsgericht Frankfurt, gerichtliches AZ: 810 IN 1120/08 L**

3. Dezember 2008

## Anmeldeformular

An der ersten Gläubigerversammlung am
**Dienstag, dem 17. März 2009, 9:30 Uhr,**
beim

**Amtsgericht Frankfurt am Main, -Insolvenzgericht-**
**Klingerstr. 20, 60313 Frankfurt am Main, Saal 1, Gebäude F.**

nehme ich nicht teil:  ☒          nehme ich teil:  ☐

Teilnehmende Personen (Anzahl):

Name des Gläubigers:  _Dr. Klaus Kinkel_

Name des/r Teilnehmer/s:  _____

_____

_____

Unterschrift

Kontaktdaten für den Fall der Ortsverlegung
der Gläubigerversammlung: _____

# Forderungsanmeldung

*Kopie*

In dem Insolvenzverfahren über das Vermögen der

## Lehman Brothers Bankhaus AG
## Rathenauplatz 1
## 60313 Frankfurt am Main

## Amtsgericht Frankfurt am Main AZ: 810 IN 1120/08 L

Ablauf der Anmeldefrist:          3. Februar 2009
1. Prüfungstermin:                17. März 2009

<u>Gläubiger:</u>                                          <u>Gläubigervertreter:</u>
*(Name, Vorname, bzw. Firmenbezeichnung gem*              *(Die Beauftragung eines Rechtsanwaltes ist freigestellt. Die*
*Eintragung im Handelsregister, Anschrift, Ruf-*          *Vollmacht muß sich auf das Inso- bzw. Vergleichsverfahren*
*nummer und Aktenzeichen)*                                 *erstrecken)*

Dr. Klaus Kinkel                                ,         _____,
Rechtsanwalt                                    ,         _____,
Sonnenaia 46                                    ,         _____,
D 53757 St. Augustin                            ,         _____,
Tel. 02241 342600                               ,         _____,
Akt.-Z.: 810 JN 1120/08 L

<u>Bankverbindung:</u>                                       <u>Bankverbindung:</u>
<u>Bank:</u>  KSK Siegburg                                   <u>Bank:</u> _____
<u>BLZ:</u>  █████████                                       <u>BLZ:</u> _____
<u>Kto-Nr.</u> █████████                                     <u>Kto-Nr:</u> _____

## I. Forderungen nach § 38 InsO

### 1. HINWEISE:

*Soweit sich die Hauptforderung aus verschiedenen einzelnen Rechnungen zusammensetzt, fügen Sie
bitte eine detaillierte Aufgliederung als Anlage bei. Es sind nur EUR-Beträge anzugeben. Forderungen in
ausländischer Währung sind in den Kurswert bei Verfahrenseröffnung umzurechnen, notfalls sind
Schätzwerte anzugeben.*

*Zinsen dürfen nur bis zum Zeitpunkt der Verfahrenseröffnung - Datum des Eröffnungsbeschlusses -
berechnet werden. Bei verschiedenen Zinsansprüchen bitte eine Zinsstaffel beifügen.
Kosten können geltend gemacht werden, soweit sie vor Verfahrenseröffnung entstanden sind.*

Hauptforderung:                        Summe =      35.700,— EUR
Zinsen: *(3 Monate)* 6 %               Summe =       535,50 EUR
Kosten:                                Summe =              EUR

**Summe der Forderungen gem. § 38 InsO insgesamt:**    36.235,50 EUR

*Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

*Honorarforderung*                                                                *Beleg Nr.*
*Vertrag vom 10. Sept 2001*                                                        *1*
*Erweiterter Vertrag vom 10. Nov. 2003 (Einb. in intern. Beirat)*                  *2*
*münll. verlängert um jeweils 1 Jahr*
*Letzter Zahlungseingang 9.5.08 für Quartal II/2008*                               *3*
*Kündigungsschreiben v. 26.09.2008*                                                *4*
*Rechnung v. 18.08.08 für 3. Quartal 2008 noch offen*                              *5*   *(10)*

## II. Masseforderungen im Sinne des § 55 Abs. 1 Nr. 1 bis 3 InsO

### 1. Forderungen:

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ____ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 1 InsO:**          _____ **EUR**

### 2. Rechtsgrund der Forderungen:

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

## III. Masseforderungen im Sinne des § 55 Abs. 2 InsO

### 1. Forderungen:

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ____ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 2 InsO:**          _____ **EUR**

### 2. Rechtsgrund der Forderungen:

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

## IV. Aussonderungsrecht gem. §§ 47, 48 InsO

*(Eigentum, Eigentumsvorbehalt)*

### 1. Sicherungsgegenstand:



### 2. Entstehungsgrund des Sicherungsrechtes:

### 3. Höhe des Anspruchs auf Ersatzaussonderung gem. § 48 Inso

## V. Absonderungsrechte gem. § 49 ff InsO

*(z. b. Sicherungseigentum, Hypotheken, Grundschulden, Pfandrechte)*

### 1. Sicherungsgegenstand:

### 2. Entstehungsgrund des Sicherungsrechtes:

### 3. Abgesonderte Befriedigung unter gleichzeitiger          ( ) ja
    Anmeldung für den Ausfall wird beansprucht:          ( ) nein.

## VI. Zum Beweis der Forderungen werden beigefügt:

*(z. B. Urteil, Vollstreckungsbescheid, Wechsel, Scheck, Rechnung, Vertrag, Schuldanerkenntnis, Selbstschuldnerische Bürgschaft)*

_D. Augustin_,          den _14.01.2009_          _/M_

Ort                              Datum                    Stempel / Unterschrift

# Suchergebnisse



**T··Online···**

**Banking**

| | |
|---|---|
| Ausdruck vom: | 14.01.2009 |
| Suchbegriff: | Lehman Brothers |
| Zeitraum von: | 01.01.2008    bis:    14.01.2009 |

| Ergebnis in | Datum | Betrag | Informationen |
|---|---|---|---|
| Umsätze | 26.02.2008 | +35.700,00 EUR | INVOICE NUMBER /001-080208- LBQA2008/GEB SHA/REF FTT448 2788 01/ORG 35700,00EUR/ADR  S LEHMAN BROTHERS HOLDINGS INC 25 BANK STREET        LONDON GB              / KTO6111600729/LEHMAN BROTHE UEBERWEISUNGSGUTSCHRIFT |
| Umsätze | 09.05.2008 | +35.700,00 EUR | INVOICE NUMBER /002-080419- LBQA 200/GEB SHA/REF FTT943 1542 01/ORG 35700,00EUR/ADR  S LEHMAN BROTHERS HOLDINGS INC 25 BANK STREET        LONDON GB              / KTO6111600729/LEHMAN BROTHE UEBERWEISUNGSGUTSCHRIFT |

# LEHMAN BROTHERS

LORD TUGENDHAT
CHAIRMAN - EUROPE

4 November 2005

Dr Klaus Kinkel
Sonnenrain 46
53757  Sankt Augustin
GERMANY



Dear Dr Kinkel,

I refer to the European Advisory Council Agreement of 10 November 2003 between you and Lehman Brothers Europe Limited.  I am pleased to confirm that the Agreement has been renewed and will continue in force for another twelve months from 10 November 2005.

All other terms of the agreement remained unchanged.

Please sign and return the enclosed copy of this letter as confirmation of your acceptance.

I would like to take this opportunity to thank you for your contribution to date and to wish you continued success with the Firm.

Yours sincerely,

Lord Tugendhat
Chairman, Europe
On behalf of [Lehman Brothers Europe Limited]

Accepted and Agreed:

By: _____

Date: _____

# LEHMAN BROTHERS



LORD TUGENDHAT
CHAIRMAN - EUROPE

1 December 2004

Dr Klaus Kinkel
Deutsche Telekom Stiftung
Graurheindorfer Strasse 153
53117  Bonn
GERMANY

Dear Klaus,

I refer to the European Advisory Council Agreement of 10 November 2004 between you and Lehman Brothers Europe Limited. I am pleased to confirm that the agreement has been renewed and will continue in force for another twelve months from the date on which it would otherwise have expired.

All other terms of the agreement remained unchanged.

Please sign and return the enclosed copy of this letter as confirmation of your acceptance.

I would like to take this opportunity to thank you for your contribution to date and to wish you continued success with the Firm.

Yours sincerely,

Lord Tugendhat
Chairman, Europe
On behalf of [Lehman Brothers Europe Limited]

Accepted and Agreed:

By:  _____

Date:  _____

LEHMAN BROTHERS EUROPE LIMITED

# LEHMAN BROTHERS

14 November 2002

LORD TUGENDHAT
CHAIRMAN - EUROPE

Dr Klaus Kinkel
Sonnenrain 46
53757  St Augustin
Germany

## European Advisory Council Agreement

*Dear Dr Kinkel*

As you are aware, Lehman Brothers Europe Limited ("LBEL") wishes further to develop the business activities in Europe of LBEL and other members of the Lehman Brothers' group (together "Lehman Brothers") and for that purpose intends to obtain the advice and assistance of certain individuals having particular knowledge of the European markets.  In addition, LBEL intends to set up a European Advisory Council as a suitable forum for such individuals to discuss those business activities under the chairmanship of a Chairman appointed by LBEL.

Accordingly, this letter confirms the provisions of an agreement (the "Agreement") between you and LBEL, on the terms set out below.

1.  <u>Services</u> · You will provide advice and assistance to Lehman Brothers in connection with the development of its business activities as mentioned above, with particular emphasis on its investment banking business.  The advice and assistance will relate to such matters as may be requested by the head in Europe of the Investment Banking Division of Lehman Brothers ("IBD") or any other individual designated by LBEL and will be provided in the manner and form specified by any such person.

You will also act as a member of the European Advisory Council, which is intended to meet several times per year.  The Chairman will call such meetings and will give reasonable notice to the members.  You will participate in at least two such meetings per year and will also participate in such other meetings as you agree with the Chairman or other senior personnel of Lehman Brothers.

The provision of advice and assistance and acting as a European Advisory Council member and participating in the meetings mentioned above are together referred to as the "Services".

2.  <u>Term of Agreement</u>  The Agreement will commence on the date of your acceptance of this letter and, subject to Paragraph 10 below, will continue in force for twelve months, unless renewed.  The period during which this Agreement is in force is referred to as the "Term".

3. <u>Advisory Fees</u>   LBEL will pay you annual advisory fees of Euro 120,000 excluding VAT. Subject to the other provisions of this Agreement, the fees will be paid in equal portions on a quarterly basis during the Term on or about 31st March, 30th June, 30th September and 31st December of each year, provided that the first payment will be advanced and made as soon as reasonably possible after your acceptance of this letter and the last payment will be made as soon as reasonably possible after the end of the Term. The amount of the first and last payments of quarterly fees will be adjusted pro rata as required. Fees will be paid on submission by you of a suitable invoice for advisory fees.

4. <u>Special Payments</u>   As soon as reasonably possible after the end of (i) each Lehman Brothers' accounting period falling during the Term and (ii) the first Lehman Brothers' accounting period to fall after the end of the Term, LBEL will assess the contribution to Lehman Brothers made by you during such period and may, in its reasonable discretion, decide that LBEL will pay you an additional special advisory fee in recognition of that contribution. The amount of any such special advisory fee will be determined by LBEL in accordance with Lehman Brothers' customary practices and will be paid on submission by you of a suitable invoice for advisory fees.

5. <u>Expenses</u>   You will be reimbursed for travel and out-of-pocket expenses incurred exclusively in connection with the Services, provided such expenses are incurred in accordance with Lehman Brothers' travel and expense policies.

6. <u>Confidentiality</u>   You will maintain in strictest confidence and not disclose to any third party without LBEL's prior written consent both the terms of this Agreement and any and all information of Lehman Brothers, its affiliates and their respective clients and suppliers that may be disclosed to or obtained by you in connection with the Services (the "Confidential Information"). At the end of the Term and at any other time upon LBEL's request, you will promptly deliver to LBEL all items in your possession (other than your copy of this Agreement) which may contain Confidential Information as well as all information, materials and deliverables created pursuant to this Agreement. The terms of this Paragraph 6 will survive the termination or expiration of this Agreement.

7. <u>Independent Contractor</u>   You will perform the Services as an independent contractor and will not be an employee of LBEL for any purpose whatsoever. Accordingly, you will not be eligible for any coverage or participation in any Lehman Brothers' employee benefits plans or programmes. All amounts herein are inclusive of all taxes (including VAT, save as mentioned in clause 3) and you will be solely responsible for all relevant taxes which arise in connection with this Agreement.

8. <u>Compliance with Laws and Policies</u>   In connection with this Agreement and your performance of the Services, you will comply with all applicable laws, rules and regulations and will ensure you obtain and maintain any licences and registrations that may be required. Although you will not be an employee of LBEL or any other member of the Lehman Brothers group, you will abide by such policies of Lehman Brothers as may be provided to you.

9. <u>Competition and Conflicts of Interest</u>   During the Term and for a period of twelve months following termination or expiration of this Agreement, you will not, in any part of Europe, in any manner whatsoever, participate or engage (directly or indirectly) in any business in which Lehman Brothers participates or is engaged, nor assist any other person in any way whatsoever, even if only in an advisory capacity, in the operation of any such business. You will notify LBEL and the Chairman of the European Advisory Council of any potential conflict of interest which may result from your other activities and will commence such other activities only after written approval of LBEL, which will not be unreasonably withheld.

10. <u>Termination</u>   This Agreement may be terminated by either party for any reason by written notice of termination delivered to the other party at the address shown on the first page of this letter. Any such termination will take effect on the date falling thirty days after the delivery of such notice unless

the relevant party states in such notice that it is terminating the Agreement for a reason (specified in the notice if possible) which in its reasonable opinion requires immediate termination, in which case this Agreement will terminate with immediate effect.

11. <u>Entire Agreement</u>   This Agreement is the entire agreement between the parties with respect to the subject matter hereof.

12. <u>Governing Law, Courts and Mediation</u>   This Agreement will be governed by the laws of England and the parties submit to the jurisdiction of the English courts, provided that, prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the Chairman for the time being of the London Investment Banking Association.

If this letter accurately reflects our understanding, please sign and date the two original letters provided, in the space indicated, and return one of them to me.

_Yours Sincerely_

_Christopher Tugendhat_

Lord Tugendhat
Chairman, Europe
on behalf of Lehman Brothers Europe Limited

Accepted and Agreed:

By:

Date:    18.11.2002

# LEHMAN BROTHERS

LORD TUGENDHAT
CHAIRMAN - EUROPE

London – November 10, 2003

Dr. Klaus Kinkel
Sonnenrain 46
53757  Sankt Augustin
GERMANY



## European Advisory Council Agreement

Dear Dr. Kinkel

As you are aware, Lehman Brothers Europe Limited ("LBEL") wishes further to develop the business activities in Europe of LBEL and other members of the Lehman Brothers' group (together "Lehman Brothers") and for that purpose intends to obtain the advice and assistance of certain individuals having particular knowledge of the European markets. In addition, LBEL intends to set up a European Advisory Council as a suitable forum for such individuals to discuss those business activities under the chairmanship of a Chairman appointed by LBEL.

Accordingly, this letter confirms the provisions of an agreement (the "Agreement") between you and LBEL, on the terms set out below.

1. <u>Services</u>    You will provide advice and assistance to Lehman Brothers in connection with the development of its business activities as mentioned above, with particular emphasis on its investment banking business. The advice and assistance will relate to such matters as may be requested by the head in Europe of the Investment Banking Division of Lehman Brothers ("IBD") or any other individual designated by LBEL and will be provided in the manner and form specified by any such person.

You will also act as a member of the European Advisory Council, which is intended to meet several times per year. The Chairman will call such meetings and will give reasonable notice to the members. You will participate in at least two such meetings per year and will also participate in such other meetings as you agree with the Chairman or other senior personnel of Lehman Brothers.

The provision of advice and assistance and acting as a European Advisory Council member and participating in the meetings mentioned above are together referred to as the "Services".

2. <u>Term of Agreement</u>    The Agreement will commence on the date of your acceptance of this letter and, subject to Paragraph 10 below, will continue in force for twelve months, unless renewed. The period during which this Agreement is in force is referred to as the "Term".

3. <u>Advisory Fees</u>    LBEL will pay you annual advisory fees of Euro 120,000 excluding VAT. Subject to the other provisions of this Agreement, the fees will be paid in equal portions on a quarterly basis during the Term on or about 31st March, 30th June, 30th September and 31st December of each year, provided that the first payment will be advanced and made as soon as reasonably possible after your acceptance of this letter and the last payment will be made as soon as reasonably possible after the end of the Term. The amount of the first and last payments of quarterly fees will be adjusted pro rata as required. Fees will be paid on submission by you of a suitable invoice for advisory fees.

LEHMAN BROTHERS EUROPE LIMITED
25 BANK STREET LONDON E14 5LE TELEPHONE +44 (0)20 7102 1214  FAX: +44 (0)20 7102 1357

- 2 -



4.  Special Payments   As soon as reasonably possible after the end of (i) each Lehman Brothers' accounting period falling during the Term and (ii) the first Lehman Brothers' accounting period to fall after the end of the Term, LBEL will assess the contribution to Lehman Brothers made by you during such period and may, in its reasonable discretion, decide that LBEL will pay you an additional special advisory fee in recognition of that contribution. The amount of any such special advisory fee will be determined by LBEL in accordance with Lehman Brothers' customary practices and will be paid on submission by you of a suitable invoice for advisory fees.

5.  Expenses   You will be reimbursed for travel and out-of-pocket expenses incurred exclusively in connection with the Services, provided such expenses are incurred in accordance with Lehman Brothers' travel and expense policies.

6.  Confidentiality   You will maintain in strictest confidence and not disclose to any third party without LBEL's prior written consent both the terms of this Agreement and any and all information of Lehman Brothers, its affiliates and their respective clients and suppliers that may be disclosed to or obtained by you in connection with the Services (the "Confidential Information"). At the end of the Term and at any other time upon LBEL's request, you will promptly deliver to LBEL all items in your possession (other than your copy of this Agreement) which may contain Confidential Information as well as all information, materials and deliverables created pursuant to this Agreement. The terms of this Paragraph 6 will survive the termination or expiration of this Agreement.

7.  Independent Contractor   You will perform the Services as an independent contractor and will not be an employee of LBEL for any purpose whatsoever. Accordingly, you will not be eligible for any coverage or participation in any Lehman Brothers' employee benefits plans or programmes. All amounts herein are inclusive of all taxes (including VAT, save as mentioned in clause 3) and you will be solely responsible for all relevant taxes which arise in connection with this Agreement.

8.  Compliance with Laws and Policies   In connection with this Agreement and your performance of the Services, you will comply with all applicable laws, rules and regulations and will ensure you obtain and maintain any licences and registrations that may be required. Although you will not be an employee of LBEL or any other member of the Lehman Brothers group, you will abide by such policies of Lehman Brothers as may be provided to you.

9.  Competition and Conflicts of Interest   During the Term and for a period of twelve months following termination or expiration of this Agreement, you will not, in any part of Europe, in any manner whatsoever, participate or engage (directly or indirectly) in any business in which Lehman Brothers participates or is engaged, nor assist any other person in any way whatsoever, even if only in an advisory capacity, in the operation of any such business. You will notify LBEL and the Chairman of the European Advisory Council of any potential conflict of interest which may result from your other activities and will commence such other activities only after written approval of LBEL, which will not be unreasonably withheld.

10.  Termination   This Agreement may be terminated by either party for any reason by written notice of termination delivered to the other party at the address shown on the first page of this letter. Any such termination will take effect on the date falling thirty days after the delivery of such notice unless the relevant party states in such notice that it is terminating the Agreement for a reason (specified in the notice if possible) which in its reasonable opinion requires immediate termination, in which case this Agreement will terminate with immediate effect.

11.  Entire Agreement   This Agreement is the entire agreement between the parties with respect to the subject matter hereof.

- 3 -

12. <u>Governing Law, Courts and Mediation</u>    This Agreement will be governed by the laws of England and the parties submit to the jurisdiction of the English courts, provided that, prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the Chairman for the time being of the London Investment Banking Association.

If this letter accurately reflects our understanding, please sign and date the two original letters provided, in the space indicated, and return one of them to me.

Yours sincerely,

Lord Tugendhat
Chairman, Europe
on behalf of Lehman Brothers Europe Limited


Accepted and Agreed:

By: _____

_____

Date: _____

Dr. Klaus Kinkel
Rechtsanwalt
Sonnenrain 46
D 53757 St. Augustin



RECEIVED
SEP 09 2009

Einschreiben

United States Bankrupty Court /
                    Southern District of New York
Lehman Brothers Holdings Claims Processing Cente.
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150 - 5076

USA

Deutsche Post
SB-EINSCHREIBEN
EINSCHREIBEN
RECOMMANDÉ
RM 01 862 649 2DE
R

# LEHMAN BROTHERS

## CONSULTING AGREEMENT

This consulting agreement (the "**Agreement**") is made on   10 | 12 |   2007 between (1) **Lehman Brothers Europe Limited**, a company incorporated in England and having its registered office at 25 Bank Street, London E14 5LE (together with its affiliates "**Lehman**"), (2) **Alderton LLC**, a company incorporated in New Jersey, U.S.A. under registration number 0600309052 and having its registered office at 177 Madison Avenue, Box 1982, Morristown, New Jersey, 07962-1982, U.S.A and a correspondence address at 38 Wigmore Street, London W1U 2HA, UK (the "**Company**"), and (3) **Patrizia Micucci** of Via dei Grassi 3, 20121 Milan, Italy (the "**Consultant**").

WHEREAS, Lehman and the Company wish to enter into a consulting relationship, whereby the Company would assist Lehman as an independent contractor, using the specialized knowledge and skills of the Consultant, an advisor to the Company.

NOW, THEREFORE, in consideration of the mutual promises and benefits herein contained, the parties agree as follows:

1.   **Term of Agreement**   This Agreement shall be effective from 2 January 2008   (the "**Effective Date**")   or, if later, the date that MB IV (as defined below) has its first closing and, subject to earlier termination by either Lehman or the Company as provided herein, shall continue in force until the date falling 24 months after the Effective Date.   The period during which this Agreement is in force is referred to as the "**Term**".

2.   **Services**   Subject to the terms and conditions of the Agreement, during the Term the Company agrees to provide the services described in Appendix A hereto to Lehman, as well as such other and related services that may be agreed between the Company and Lehman from time to time (collectively, the "**Services**"). The Company undertakes to make the Consultant available for the purpose of providing the Services in accordance with the terms and conditions of the Agreement. The Company will ensure that the Consultant delivers such Services diligently and professionally, and in a manner consistent with the best interests and good public image of Lehman. During the Term, the Company will ensure that the Consultant works on an exclusive basis in providing the Services.



3.   Consulting Fee        Redacted

**Redacted**

4.   Additional Consulting Fees and Origination/Contributor's Fees        Redacted

**Redacted**



# Redacted

5.    <u>**Expenses**</u>  Lehman will reimburse the Company for pre-approved travel and out-of-pocket expenses incurred by the Consultant exclusively in connection with the Services, provided such expenses are incurred in accordance with Lehman Brothers' travel and expense policies in force from time to time.  This pre-approval will need to be confirmed by [*name tbc*].

Confidential

6.    **Exclusivity; Conflicts** During the Term of this Agreement and for a period of 12 months following termination or expiration of this Agreement (provided that such period of 12 months shall only apply if the Agreement has been terminated by Lehman with cause), the Company and/or the Consultant shall not, in any part of Europe, participate or engage (directly or indirectly) in any business, product or service in which the private equity or merchant banking businesses of Lehman participates or are engaged, nor assist any other person in any way whatsoever, even if only in an advisory capacity, in the operation of any such business, product or service or which would create, or would appear to create, a conflict of interest under applicable Lehman policy. You shall notify the Head of Private Equity of Lehman of any actual or potential conflict of interest which may result from your other activities and shall commence such activities only after obtaining Lehman's advance written approval (not to be unreasonably withheld) which decision shall be deemed final and controlling for all purposes hereunder.

7.    **Termination**

7.1    This Agreement may be terminated at any time during the Term by either Lehman or the Company giving not less than 90 days prior written notice to the other.

7.2    Lehman shall be entitled to terminate this Agreement with immediate effect and without any liability on the part of Lehman to either the Company or the Consultant if:

    (i)    either the Consultant or the Company shall have committed a serious or persistent breach of a term or terms of this Agreement and (if such breach shall be capable of remedy) shall have failed to remedy the same within 14 days of receipt by the Company or the Consultant (as the case may be) of written notice specifying details of such breach and requesting remedy thereof;

    (ii)    the Consultant or the Company becomes unable to pay its debts as they fall due or makes any special arrangements or composition with its creditors; or

    (iii)    the Consultant or the Company is guilty of dishonesty or substantially fails to perform the Services in Appendix A of this Agreement or fails to observe any applicable compliance regulation of Lehman Brothers.

7.3    The date of termination as described in either paragraphs 7.1 or 7.2 above shall be a "Termination Date".



LEH_0000398_003

7.4    In the event of Lehman terminating this Agreement pursuant to paragraph 7.1, Lehman shall within 30 days after the Termination Date, pay to the Company an amount equal to the balance of the Consulting Fee outstanding up to the date falling 24 months after the Effective Date.

7.5    In the event of the Company terminating the Agreement pursuant to paragraph 7.1 or Lehman terminating pursuant to paragraph 7.2, within 30 days after the Termination Date, Lehman shall pay to the Company an amount equal to the pro rata share of the Consulting Fee for the month in which the Termination Date occurs.

7.6    The termination of this Agreement, other than pursuant to paragraph 7.2 above, will in no way affect or impair the Company's right to any of the fees payable pursuant to paragraph 4 hereof in respect of any Portfolio Investments made during the Term of this Agreement. Lehman shall not liable to pay any of the fees payable pursuant to paragraph 4 hereof if this Agreement is terminated under paragraph 7.2 above.

8.    **Nature of Relationship**  The Company and the Consultant each understand that they have no approval or power to enter into any binding agreement with any third party or make any representations on behalf of Lehman or any of its members or affiliates. The Consultant, as independent consultant to the Company, will perform the Services as an independent contractor and will not be deemed to be an employee of Lehman or any of its members or affiliates for any purpose whatsoever. Accordingly, the Consultant will not be eligible for any coverage or participation in any employee benefits plans or programs of Lehman or any of its members or affiliates. The Consultant agrees and acknowledges that she is an independent contractor to the Company, and that the Company will be solely responsible for any payments to be paid to the Consultant for the Services under this Agreement. The Company will be solely responsible for the payment or withholding of any payroll or income taxes on payments to the Consultant, if applicable, and will protect, defend, indemnify and hold harmless Lehman from any loss, liability, costs and expenses (including attorneys' fees) relating to or arising out of any assertion that Lehman, its members, or affiliates should be deemed the "employer" or "joint employer" of the Consultant, including, but not limited to any and all taxes, assessments, fees or other charges imposed by any governmental taxing authority and any interest, penalty or addition thereto, imposed on Lehman, its members, or affiliates in the event that any such amounts paid hereunder by Lehman to the Company are reclassified as anything other than non-wage compensation. The Consultant agrees that Lehman may look to the Consultant for such indemnification if the Company fails to meet its obligations hereunder. In the event of an audit by any taxing authority concerning payment of the Consulting Fee and/or the Contributor's Fee under this Agreement, the Company (and/or the Consultant, as appropriate) further agrees to provide Lehman adequate



tax documentation (as determined by the taxing authorities) to establish that income and other applicable taxes were paid on such fees.

9.    **Confidentiality**  The Company and the Consultant will maintain in strictest confidence both the terms of this Agreement and any and all confidential information of Lehman, or any of its members, affiliates, or clients, that may be disclosed to or obtained by the Consultant or the Company in connection with the Services (the "**Confidential Information**") unless disclosure is required for compliance with law or requested by a court of competent jurisdiction, in which case the Company and/or the Consultant will inform Lehman regarding its intention to disclose information, and will afford Lehman a reasonable opportunity to oppose the requested disclosure. The Company and the Consultant will not, without Lehman's prior consent, disclose or use such Confidential Information for the benefit of any person or entity other than Lehman and its affiliates.  Upon termination or expiration of this Agreement, the Company and the Consultant will promptly deliver to Lehman all items in their possession which may contain or constitute Confidential Information.  The Company agrees to take any other steps reasonably required and/or appropriate to ensure compliance by the Consultant with the confidentiality obligations set forth in this Agreement. The terms of this paragraph will survive the termination of this Agreement.

10.    **Intellectual Property**  Each of the Company and the Consultant acknowledges that Lehman shall have exclusive, unlimited ownership rights to all works, materials, information and deliverables developed or prepared for Lehman in connection with the Services.  All of the foregoing shall be deemed to be work made for hire and made in the course of the Services and shall belong exclusively to Lehman, with Lehman having the sole right to obtain, hold and renew, in its own name and/or for its own benefit, patents, copyright, registrations and/or appropriate protection, to the maximum extent permitted by law.  To the extent that exclusive title and/or ownership rights may not originally vest in Lehman as contemplated by this Agreement, the Company and the Consultant hereby irrevocably assign, transfer and convey and agree to assign, transfer and convey to Lehman all right, title and interest therein. The Company and the Consultant shall give Lehman all reasonable assistance and execute all documents necessary to assist and/or enable Lehman to perfect, preserve, register and/or record its rights in any such work, materials, information and/or deliverables.

11.    **Compliance with Laws**  In entering into this Agreement and performing the Services, the Company and the Consultant will comply with all applicable laws, rules and regulations of all applicable jurisdictions and maintain any licences and registrations that may be required. Although you will not be an employee of Lehman or any of its affiliates or any other member of the Lehman Brothers group, you will abide by such policies of Lehman Brothers as may be provided to you.



LEH_0000398_005

12. **Disqualification Based on Criminal or Disciplinary History**   The Consultant represents, warrants and affirms to Lehman that (1) within the past 10 years, she has not been convicted of a felony or substantially equivalent foreign crime, (2) within the past 10 years, she has not been convicted of any offense involving the purchase of a security, financial misconduct, fraud, bribery or perjury; and (3) she has never been subject to any suspension, bar, order or other sanction by any domestic or foreign securities, commodities, futures or financial authority, exchange or regulatory or self-regulatory organization. The Consultant will immediately advise Lehman if she becomes unable to make any such representation, warranty or affirmation. In its sole discretion, Lehman or its affiliates may report to the New York Stock Exchange the nature of this Agreement and the facts or circumstances that make the Consultant unable to make such representation, warranty or affirmation.

13. **Indemnification**   To the extent permitted by law, Lehman will indemnify the Company for any cost, loss, claim, suit, or expense (including reasonably attorneys' fees) ("Claims") to which the Company and/or the Consultant may be subject as a result of Services undertaken in compliance with this Agreement; provided, however, that the Company and/or the Consultant must look first to Portfolio Companies for indemnification for any Claims relating to board service on Portfolio Companies. In providing indemnification, Lehman may provide counsel of its choice and settle any claims on its terms (at no cost to the Company and/or the Consultant).

14. **Insurance**   The Company agrees to obtain and maintain in full force and effect, at the Company's expense, required workers' compensation, disability, unemployment insurance and the like for the Consultant.

15. **Miscellaneous**

   (a)   *Complete Agreement; Modifications.*  This Agreement represents the entire Agreement between the parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings, whether oral or written, of the parties. This Agreement cannot be modified in any way except in writing signed by the parties.

   (b)   *Governing law; Courts; Mediation.*  The interpretation and enforcement of this Agreement will be governed by the laws of England and the parties submit to the jurisdiction of the English courts provided that, prior to the commencement of any legal proceedings, the parties will make all reasonable efforts to resolve any dispute with respect to this Agreement by referring the matter for mediation by a mediator agreed by the parties or, failing such agreement, nominated by the Chairman for the time being of the London Investment Banking Association.



(c)   *Additional On Site Requirements.*  To the extent the Consultant may be required to perform Services on site at Lehman, the Consultant may be required to undergo a screening process, including but not limited to a background investigation, and to undertake additional obligations with respect to the protection of Lehman property and confidential information and with respect to any and all applicable laws or regulatory requirements. Lehman agrees that to the extent the Consultant performs the Services on site at Lehman, it shall provide the use of office space to the Company and/or the Consultant to carry out such Services.

(d)   *Notices.*  Any notice which is required to be given under this Agreement shall (without prejudice to any other effective mode of making the same) be duly served if sent by pre-paid first class letter addressed to the party to whom it shall be sent to its registered office or sent by facsimile. Any such notice shall if sent by first class post be deemed to be served two working days after posting exclusive of the day of posting. If such notice is sent by facsimile it shall be deemed served at the time of transmission (or if transmitted outside normal business hours (i.e. 09:00 – 18:00 hrs) at the first commencement of business thereafter). In proving service by post it shall only be necessary to prove that the notice was contained in an envelope which was duly addressed and posted in accordance with this paragraph (f) and in proving service by facsimile it shall only be necessary to produce the sender's copy and transmission slip bearing the addressee's facsimile number.

(e)   *Signatures.*  This Agreement may be signed in one or more counterparts, all of which will comprise one and the same document.

(f)   *No Assignment.*  The Company may not assign, transfer or subcontract the performance of the Services without Lehman's prior written consent.

LEHMAN BROTHERS EUROPE LIMITED

By: _____

ALDERTON LLC

By: _____
Title:

PATRIZIA MICUCCI

Patrizia Micucci



Confidential

## APPENDIX A - SERVICES

The Company will, upon request, make the Consultant available to provide the following services:

(a)     work closely with Lehman's investment partners to review the financial aspects of any investment opportunity being considered by MB IV;

(b)     provide investment ideas and/or generation to Lehman, although the parties acknowledge that this is not intended to impact adversely on the Consultant's operating role and responsibilities as set out in this Appendix A.

(c)     assist Lehman in the due diligence process in evaluating investment opportunities for MB IV;

(d)     evaluate the key operating risks of any investment opportunity being considered by MB IV;

(e)     provide input into any key changes to, and evaluation of, the "100 day" operating plan applicable to any Portfolio Company;

(f)     work alongside management in any Portfolio Company to ensure the alignment and achievement of key objective milestones;

(g)     subject to the requirements of applicable law and the governing corporate documents, the Consultant will serve at the request and continuing discretion of Lehman as a manager or a director on the boards of directors of the Portfolio Companies, will inform and advise Lehman on matters relating to such service, and will provide related services as may be reasonably requested by Lehman from time to time;

(h)     provide a periodic assessment of the key corporate issues in relation to the Portfolio Companies;

(i)     review potential add on acquisitions for Portfolio Companies and provide support and assistance to Lehman and the management in relation thereto;



Confidential

MR. MARCO FIGUS


AND


LEHMAN BROTHERS EUROPE LIMITED


CONSULTANCY AGREEMENT

Confidential

# CONTENTS

Clause                                                                 Page

1.   Consultancy.................................................................................1
2.   Services ...................................................................................1
3.   Fee ..........................................................................................4
4.   Status ......................................................................................5
5.   Confidentiality ...........................................................................5
6.   Liability Provisions .....................................................................6
7.   Intellectual Property ...................................................................6
8.   Termination................................................................................7
9.   Other Activities .........................................................................8
10.  Restrictions ..............................................................................9
11.  Miscellaneous ........................................................................10
12.  Definitions and Interpretations.................................................11

Schedule:    . Additional Discretionary Fees .....................................

Confidential

THIS AGREEMENT is made the first day of August 2008.

BETWEEN:

(1)   MARCO FIGUS whose registered address is Via di S. Valentino 11, Rome 00197, Italy          (the "Consultant"); and

(2)   LEHMAN BROTHERS EUROPE LIMITED whose registered office is at 25 Bank Street, London E14 5LE, England ("Lehman Brothers").

WHEREAS the Consultant has agreed with Lehman Brothers to provide the Services which shall be provided to Lehman Brothers and other Group Companies on the terms hereinafter appearing.

NOW IT IS AGREED as follows:

1.   CONSULTANCY

1.1   The Consultant undertakes to provide the Services to Lehman Brothers (or any Group Company) subject to the terms and conditions contained in this Agreement.

1.2   This Agreement shall (subject to the provisions of Clause 8) take effect from 1 August 2008 and shall be for a period of Twelve (12) months expiring on 31 July 2009 ("the Term") and, if not terminated as provided in this Agreement, shall renew on a 12 month rolling basis, subject always to the provisions of Clause 8.

2.   SERVICES

2.1   Subject to the terms and conditions hereof, the Consultant shall provide the following Services:-

    2.1.1   in respect of the Designated Clients:

        (a)   undertake such client management, maintenance, development, communication, presentations and other activities as reasonably requested by Lehman Brothers from time to time and which are consistent with the Consultant's responsibility for building and/or developing commercial relationships between Lehman Brothers and the Designated Clients;

        (b)   identify opportunities:

            (i)   to build or develop commercial relationships between Lehman Brothers and the Designated Clients;

            (ii)   to build or develop relationships for the purpose of Lehman Brothers being retained by Designated Clients as financial adviser in connection with Transactions that Designated Clients may contemplate in the future; and/or



1

(iii) where Lehman Brothers could be retained as financial advisor in connection with Transactions that Designated Clients may be contemplating;

(c) if requested by Lehman Brothers, arrange introductions of Lehman Brothers to contacts within Designated Clients or their advisors as appropriate with a view to Lehman Brothers pursuing opportunities identified by the Consultant pursuant to 2.1.1(a) and 2.1.1(b) and, where appropriate, provide Lehman Brothers with information relating to such introductions and strategic guidance as to the general business needs to facilitate or maximise the introduction opportunity;

(d) if requested by Lehman Brothers, assist Lehman Brothers as reasonably requested in obtaining approval of the Lehman Brothers Commitments Committee in respect of a Transaction identified by the Consultant pursuant to this Clause 2.1.1 and if appropriate, assist with the preparation and delivery of any offering, presentation, servicing, packaging, pitching, marketing to the Designated Client and / or its advisors with a view to Lehman Brothers securing a mandate in respect of such Transactions;

(e) if Lehman Brothers is retained as financial adviser in connection with a Transaction pursuant to Clause 2.1.1, assist Lehman Brothers, to the extent reasonably requested, in the provision by Lehman Brothers of the following services:

(i) providing a general business and financial analysis of the relevant entities or businesses involved in the Transaction including transaction feasibility analysis and a valuation of each such entity or business; and

(ii) advising on opportunities for each Transaction and assisting in negotiations and related strategy concerning such Transaction];

2.1.2 in respect of the Non Designated Clients:

(f) identify opportunities:

(i) to establish, build or develop relationships for the purpose of Lehman Brothers being retained by such Non Designated Clients as financial adviser in connection with Transactions that such Non Designated Clients may contemplate in the future; and/or

(ii) where Lehman Brothers could be retained as financial advisor in connection with Transactions that Non Designated Clients may be contemplating;



-2-

Confidential

(g)   if requested by Lehman Brothers, arrange introductions of Lehman Brothers to contacts within Non Designated Clients or their advisors as appropriate with a view to Lehman Brothers pursuing opportunities identified by the Consultant pursuant to 2.1.2(a) and 2.1.2(b) and, where appropriate, provide Lehman Brothers with information relating to such introductions and strategic guidance as to the general business needs to facilitate or maximise the introduction opportunity;

(h)   if requested by Lehman Brothers, assist Lehman Brothers as reasonably requested in obtaining approval of the Lehman Brothers Commitments Committee in respect of a Transaction identified by the Consultant pursuant to this Clause 2.1.2 and if appropriate, assist with the preparation and delivery of any offering, presentation, servicing, packaging, pitching, marketing to the Non Designated Client and / or its advisors with a view to Lehman Brothers securing a mandate in respect of such Transactions;

(i)   if Lehman Brothers is retained as financial adviser in connection with a Transaction pursuant to Clause 2.1.2, assist Lehman Brothers, to the extent reasonably requested, in the provision by Lehman Brothers of the following services:

(i)   providing a general business and financial analysis of the relevant entities or businesses involved in the transaction including transaction feasibility analysis and a valuation of each such entity or business; and

(ii)   advising on opportunities for each transaction and assisting in negotiations and related strategy concerning such transaction;

2.1.3   if requested, providing such other advice or assistance to Lehman Brothers and its affiliates as may be appropriate for the furtherance and development of Lehman Brothers' franchise in general; and

2.1.4   Liaising with and reporting to the Senior Executive or such other individual as may be designated by Lehman Brothers as necessary or appropriate in relation to the matters set out above in this clause 2.1.

2.2   The Consultant shall provide the Services either in the offices of Lehman Brothers (or any Group Company) or elsewhere outside the United Kingdom as Lehman Brothers shall agree with Consultant.

2.3   Consultant warrants, represents and agrees that:-

2.3.1   he has and will maintain any and all licences, authorizations and approvals necessary to enable him to provide the Services;

-3-

Confidential

2.3.2    he shall carry out all directions as are appropriate that Lehman Brothers may impose and use his best endeavours to promote the interest of Lehman Brothers and its Group Companies;

2.3.3    he shall use reasonable skill care diligence and expedition in the provision of the Services under this Agreement;

2.3.4    he shall travel to such places and in such a manner and on such occasions as the Senior Executive may from time to time require for the performance of the Services;

2.3.5    he shall at all times give to the Senior Executive such information and advice regarding the affairs of Lehman Brothers as Lehman Brothers may reasonably require in connection with the provision of the Services to Lehman Brothers and/or with the business of Lehman Brothers or any Group Company; and

2.3.6    he shall comply with all applicable laws, rules and regulations of all applicable jurisdictions, and will abide by such Lehman Brothers Global Policies as are appropriate and are notified to him, including without limitation, the Chinese Wall and Restricted List Policy.

Lehman Brothers shall provide the Consultant with such technical support as it may reasonably require for the performance of the Services.

3.    **FEE**

# Redacted

3.5    Lehman Brothers shall reimburse the Consultant all travel, accommodation and other out-of-pocket expenses which the Consultant may from time to time reasonably and properly incur in connection with the provision of the Services in accordance with Lehman Brothers' policies from time to time in force which shall be notified to Consultant.

-4-

3.6    All such expenses shall be set out in reasonably complete detail in written statements to be submitted by the Consultant to Lehman Brothers as soon as practicable following the last working day of each calendar quarter in which such expenses are incurred and the Consultant shall, if so requested by Lehman Brothers, provide Lehman Brothers with such receipts or other evidence of such expenses as Lehman Brothers may reasonably require. Lehman Brothers shall reimburse the Consultant for such expenses within 30 days of receipt of the written statement of expenses and supporting receipts or other evidence as aforesaid.

# Redacted

4.    STATUS

4.1    This Agreement constitutes a contract for the provision of services and not a contract of employment and accordingly nothing in this Agreement shall:-

    4.1.1    save in regard to Clause 9.1 hereof, entitle either party to exclusivity in respect of any matter; or

    4.1.2    be deemed to create a partnership, joint venture or employment relationship between the parties.

4.2    The Consultant shall be fully responsible for and shall indemnify Lehman Brothers and each and every Group Company in respect of the Consultant's own income tax, National Insurance contributions, value added tax and any other liability assessment or claim arising from or made in connection with the performance of this Agreement and shall further indemnify Lehman Brothers and any Group Company against all reasonable costs and expenses and any penalty, fine or interest incurred or payable by Lehman Brothers or any Group Company in connection with any such liability, assessment or claim made against Lehman Brothers or any Group Company in such respects. Lehman Brothers may at its option satisfy such indemnity (in whole or in part) by way of deduction from payments to be made by Lehman Brothers under this Agreement.

4.3    For all purposes relating to this Agreement, including for the avoidance of doubt any Designated Clients, Non Designated Clients, their respective advisors, the media or any regulatory bodies, the Consultant shall hold himself out as a consultant to Lehman Brothers.

5.    CONFIDENTIALITY

5.1    The Consultant shall not disclose, in any way or form and at any time (whether before or after termination of this Agreement) to any person, firm or company any of the Confidential Information save to employees of Lehman Brothers or any Group

-5-

LEH_0000399_006

Company who need to know such information in order for the Consultant to properly perform the Services and the Consultant shall not use for his own purposes nor for any purpose other than those of Lehman Brothers or any Group Company any such Confidential Information PROVIDED THAT Consultant may disclose Confidential Information to the extent specifically authorised by the Senior Executive.

5.2 The Consultant shall not make or keep possession of copies of any documents memoranda or other media on which any Confidential Information is recorded or stored other than to the extent as is reasonably required in the performance of the Services.

5.3 The restrictions contained in this clause shall cease to apply to any Confidential Information which is in or may come into the public domain otherwise than by way of breach of this clause 5.

5.4 In the event that Lehman Brothers or any Group Company shall have obtained any Confidential Information from any third party under an agreement or obligation that includes any restriction on disclosure, which restriction shall be known to the Consultant, then the Consultant shall not, without the prior written consent of Lehman Brothers, at any time infringe such restriction.

6. **LIABILITY PROVISIONS**

6.1 The Consultant shall be liable for and shall indemnify and hold harmless Lehman Brothers and any Group Company in respect of all or any liabilities (including costs) incurred by any such company as a result, directly or indirectly, of the provision by the Consultant of the Services provided always that such liability is or shall have been caused in whole or in part by the negligence or wilful act or omission of the Consultant.

6.2 Save as otherwise provided in this agreement, in no event shall Lehman Brothers or the Consultant be liable, one to the other, for indirect, special, unforeseeable or consequential damages in connection with or otherwise arising out of this Agreement.

7. **INTELLECTUAL PROPERTY**

7.1 If at any time during the Term, the Consultant either alone or jointly and arising from the provision of Services under this Agreement discovers, makes, acquires or participates in the discovery, making or acquisition of any Intellectual Property whatsoever or any interest therein which shall relate to or concern the activities of Lehman Brothers or any Group Company in any way whatsoever, then:

7.1.1 the Consultant shall forthwith communicate full details thereof in writing including all necessary plans and models to Lehman Brothers or as Lehman Brothers may direct; and

7.1.2 any Intellectual Property made or discovered as aforesaid shall belong to and be the absolute property of Lehman Brothers or any Group Company as the



-6-

LEH_0000399_007

case may be and the Consultant shall accordingly waive his claims or rights if any in respect of any such Intellectual Property.

7.2  The Consultant shall execute all documents and do all things which may be necessary or desirable for obtaining patents or other protection for the Intellectual Property in such part of the world as may be specified by Lehman Brothers and for vesting the same in Lehman Brothers or as it may direct including but not limited to assigning or causing to be assigned to Lehman Brothers all rights of copyright and all material made developed written granted or otherwise created by the Consultant in the course of providing the Services and to hold the same to Lehman Brothers absolutely throughout the world.

8.    **TERMINATION**

8.1   Either party may terminate this Agreement at any time by giving to the other not less than 30 days prior written notice.

8.2   Without prejudice to any remedy it may have against the Consultant for breach or non-performance of any provisions of this Agreement, Lehman Brothers shall be entitled to terminate this Agreement with immediate effect and without payment of compensation to the Consultant if:

8.2.1   the Consultant shall have been prevented from rendering the Services for any reason for an aggregate period of Seven (7)  working days provided that if the Consultant is incapacitated by reason of ill-health or injury Lehman Brothers shall not terminate this Agreement until the Consultant has been so incapacitated for a continuous period of 2 weeks;

8.2.2   the Consultant shall have committed a serious or persistent breach of a term or terms of this Agreement and (if such breach shall be capable of remedy) shall have failed to remedy the same within 14 days of receipt by the Consultant of written notice specifying details of such breach and requesting remedy thereof;

8.2.3   the Consultant ceases to be authorised by the Financial Services Authority or other relevant regulatory body (or any replacement or substitute regulatory body) to perform a controlled function (or any replacement or substitute authorisation) in circumstances where Lehman Brothers reasonably considers such authorisation to be necessary for the Consultant to perform the Services;

8.2.4   the Consultant falls to be investigated in respect of any matter under the Financial Services Act 1996, the Financial Services and Markets Act 2000 or in connection with any other enactment or regulatory matter that Lehman Brothers reasonably considers its or their continued engagement incompatible with Lehman Brothers' n eed to maintain its market reputation;

8.2.5   the Consultant becomes unable to pay his debts as they fall due or makes any special arrangements or composition with his creditors; or



-7-

Confidential

LEH_0000399_008

8.2.6   the Consultant is guilty of incompetence or dishonesty or fails to perform the Services in a manner satisfactory to Lehman Brothers (or any Group Company) or fails to observe any regulation of Lehman Brothers (or any Group Company) applicable to him.

8.3   Upon termination of this Agreement howsoever caused the Consultant shall deliver to Lehman Brothers all items in his possession including but not limited to letters books of account drawings designs plans documents memoranda and other media (whether or not containing Confidential Information) which may have been prepared by the Consultant or come into his possession or is subject to his control solely under or solely by virtue of his engagement under this Agreement and shall not be entitled to and shall not retain any copies thereof.

8.4   Any termination of this Agreement (however occasioned) shall not affect any accrued rights or liabilities of either party nor shall it affect the coming into force or the continuance in force of any provision hereof which is expressly or by implication intended to come into force on or after such termination..

## 9.   OTHER ACTIVITIES

9.1   During the Term, the Consultant is not required to provide the Services exclusively to Lehman Brothers provided that the Consultant shall not, without the prior written consent of Lehman Brothers:

9.1.1   undertake any engagement or activity which is liable to prevent the proper provision of the Services hereunder or which would conflict with or be detrimental to the interests and operation of Lehman Brothers or any Group Company;

9.1.2   undertake any engagement or activity which is in competition with or detrimental to (i) any Transaction with which Lehman Brothers is involved, or is seeking to be involved, or (ii) the interests of any client of Lehman Brothers involved in any Transaction;

9.1.3   undertake any engagement or activity or accept any fee or other remuneration or payment whatsoever on behalf of any person other than Lehman Brothers or a Group Company in respect of any Transaction: -

(j)   contemplated or entered into by any Designated Client;

(k)   contemplated or entered into by any Non Designated Client unless and until each of the following two conditions have been satisfied:-

(i)   the Consultant has complied in good faith with his obligations pursuant to Clause 2.1.2 in connection with the Transaction; and

(ii)   in respect of which Lehman Brothers has provided written authority to the Supplier or the Consultant that the Transaction may be offered by it or them to third parties;

-8-

9.1.4    subject to Clause 9.2, provide services that would constitute a Competitive Service, where such Competitive Service is (i) provided with respect to any location within Europe for the benefit of any person or entity other than Lehman Brothers or any Group Company; or (ii) provided with respect to any location in the world outside of Europe for the benefit of any Competitive Enterprise. For any Competitive Service provided anywhere in the world outside of Europe for the benefit of any person or entity other than Lehman Brothers (or a Group Company) or a Competitive Enterprise, the Consultant agrees to notify Lehman Brothers of the details of such Competitive Service within 30 days of first providing such Competitive Service.

9.2    Subject to the Consultant's due compliance with the terms of this Agreement, Clause 9.1.4 shall not prevent the Consultant from providing services to third parties in respect of Transactions which the Consultant has identified to Lehman Brothers pursuant to Clause 2.1.2(a) above and where (i) the Consultant has complied in good faith with his obligations pursuant to Clause 2.1.2 in connection with the Transaction and (ii) in respect of which Lehman Brothers has subsequently provided written authority to the Consultant that the Transaction may be offered by him to third parties.

9.3    In the event that the Consultant acts in breach of any of the provisions of Clause 9.1.2 to 9.1.4 above, the Consultant (or any third party receiving it on his behalf) shall be deemed to hold on trust on behalf of Lehman Brothers any fee, remuneration or other payment received from any third party in respect of the Transaction which is the subject matter of the breach.

10.    **RESTRICTIONS**

10.1    The Consultant will not after the termination of this Agreement for whatsoever reason represent himself as being in any way connected with the business of Lehman Brothers or that of any Group Company.

10.2    The Consultant hereby agrees that he shall not for a period of 6 months immediately following the termination of this Agreement whether on his own behalf or in conjunction with any person, company business entity or other organisation whatsoever directly or indirectly solicit or assist in soliciting the custom or business of any of the Designated Clients in respect of investment banking services of the type which the Consultant was involved with each Designated Client during the final 12 month period of this Agreement.

10.3    The Consultant will not assume or create any obligation or liability express or implied on behalf of Lehman Brothers (or any Group Company) in any manner or form whatsoever and neither shall have any authority to bind Lehman Brothers (or any Group Company).

10.4    The Supplier will not, and will procure that the Consultant will not, at any time during the Term contravene the Copyright Designs & Patents Act 1988, as amended, which prohibits, inter alia, illegal copying of computer software.

-9-

10.5    The Consultant shall not, without the prior written consent of the Senior Executive either directly or indirectly publish any opinion fact or material or deliver any lecture or address or participate in the making of any film radio broadcast or television transmission or communicate with any representative of the media or any third party relating to the business or affairs of Lehman Brothers or any Group Company or to any of its or their officers employees customers/clients suppliers distributors agents or shareholders or to the development or exploitation of Intellectual Property.  For the purpose of this Clause "media" shall include television (terrestrial satellite and cable) internet postings (including 'blogging')  radio newspapers and other journalistic publications.

11.    MISCELLANEOUS

11.1    Any notice or other document which may be given or served by either the Consultant or Lehman Brothers hereunder shall be deemed to have been duly given or served on the other party if delivered by hand, sent by first class post or, if from overseas, international courier or faxed to the address of the other party given in this Agreement or such address as may be duly notified to the other party in accordance herewith.  In the case of sending by post or international courier as aforesaid any such notice shall be deemed to have been received 48 hours after sending.  In the case of sending by fax as aforesaid any such notice shall be deemed to have been received upon transmission.  In the case of delivery by hand as aforesaid any such notice shall have been received on delivery.

11.2    The parties to this Agreement shall pay their own legal professional and other costs in connection with the preparation and completion of this Agreement.

11.3    This Agreement constitutes the entire agreement between the parties to it with respect to its subject matter and shall have effect to the exclusion of any other memorandum, agreement or understanding of any kind between the parties hereto preceding the date of this Agreement and concerning the subject matter hereof.

11.4    The various provisions of this Agreement are severable and if any provision is held to be invalid or unenforceable by any court of competent jurisdiction then such invalidity or unenforceability shall not affect the remaining provisions of this Agreement.

11.5    No amendment, modification or waiver of this Agreement or any of its provisions shall be binding upon parties hereto unless made in writing and duly signed by both parties. A failure of either party to this Agreement to enforce at any time any of the provisions of this Agreement, or to exercise any option which is herein provided, or to require at any time performance by either party to this Agreement of any of the provisions hereof, shall in no way be construed to be a waiver of such provisions of this Agreement.

11.6    A person who is not a party to this Agreement (other than any Group Company) may not enforce any of its terms under the Contract (Rights of Third Parties) Act 1999.



_10_

Confidential

11.7  Any reference in this Agreement to an Act of Parliament shall be deemed to include any statutory modification or re-enactment thereof whenever made.

11.8  The Consultant shall not assign or sub-contract any of his rights or duties under this Agreement. Lehman Brothers may assign this Agreement, upon notice to Consultant but without its consent, to any Group Company.

11.9  The Consultant shall not use the name of Lehman Brothers (or any Group Company) in publicity releases or advertising without securing the prior written approval of Lehman Brothers.

11.10  This Agreement is governed by and shall be construed in accordance with English law and is subject to the exclusive jurisdiction of the English Courts.

12.  **DEFINITIONS AND INTERPRETATION**

12.1  In this Agreement the following words and expressions shall have the following meanings ascribed to them save where the context otherwise appears:

"Competitive Enterprise"    means the major international investment banks or other firms identified by Lehman Brothers as major competitors of Lehman Brothers at the time the Competitive Service is proposed to be offered or within the six months immediately preceding such time.

"Competitive Service"    means any advisory related work, including without limitation providing any speech, report, publication, or any other task or work effort, the intent or result of which is or will be substantially similar to any Services;

"Confidential Information"    (i) all information, which is in written, other visual or machine readable form or is communicated orally, of or relating to Lehman Brothers or any Group Company, any of their respective clients and customers or any transactions involving Lehman Brothers or any Group Company including but not limited to knowledge and information relating to business technical processes, creative processes, designs or finances or relating to know-how, inventions or improvements or any other matters connected with the products or services, future plans, ideas, terms of employment, contracts or terms of contracts and business opportunities of any of the foregoing, which are disclosed to the Consultant or of which the Consultant become aware, and (ii) any



_11_

LEH_0000399_012

analyses, compilations, studies, reports or other materials prepared by or on behalf of the Consultant which include or refer to any of the information described in (i) above.

"Designated Clients"

**Redacted**

"Designated Transactions" means:

**Redacted**

"Financing"

shall mean any transaction pursuant to which any company, partnership, entity or person proposes to secure financing in the form of commercial loans, issuance of debt, equity, preferred equity or equity-linked securities or otherwise.

"Group Company"

means any company which is at the relevant time a direct or indirect subsidiary or holding company of Lehman Brothers or a direct or indirect subsidiary of any such holding company.

"Intellectual Property"

includes (i) letters, patent, trademarks, service marks, designs, copyrights, design rights, applications for registration of any of the foregoing and the right to apply for any of them in any part of the world and (ii) inventions, drawings, computer programs, confidential information, know-how and rights of like nature arising or subsisting anywhere in the world in relation to any of the foregoing whether registered or unregistered.

"M&A Transaction"

shall be any transaction pursuant to which any company, partnership, entity or person proposes to (i) enter into an acquisition of any entity, business or asset(s); (ii) divest any of its subsidiaries, or any of its

_12_

or their businesses or assets; (iii) enter into a joint venture or strategic partnership with any third party or parties; or (iv) enter into any similar transaction for which the services of a financial adviser are customarily used.

"Non Designated Clients"     means any actual or potential clients of Lehman Brothers or any Group Company which are not Designated Clients.

"Senior Executive"     means Christian Meissner or any other person designated by Lehman Brothers to act as Lehman Brothers' representative on all matters concerning this Agreement.

"Services"     means the services to be provided by the Consultant and set out or referred to in Clause 2 hereof.

"Transaction"     shall mean any Financing and any M&A Transaction.

12.1   References to clauses and sub-clauses are references to clauses and sub-clauses in this Agreement.

12.2   The headings contained in this Agreement are for the purpose of convenience only and do not form part of and shall not affect the construction of this Agreement or any part hereof.

IN WITNESS whereof this Agreement has been executed by the parties hereto and is intended to be and is hereby delivered as a deed on the day and year first above written.

Signed as a deed by MARCO FIGUS  )
in the presence of:-

Signature of Witness:

Witness Name:   VALENTINA BARBARESSI

Address:   Lo Rome_ Via in Lucina, 17 – 00186 Roma

Executed for and on behalf of  )
LEHMAN BROTHERS EUROPE  )
LIMITED  )

13

Confidential

SCHEDULE

**Additional Discretionary Payments referred to in Clause 3.3**

# Redacted

14.



Confidential

# Redacted



| Claim Name | Address Information |
|---|---|
| COX,NICHOLA | 7 CARR SIDE LANE HATFIELD DONCASTER, SYORKS DN7 6BG UNITED KINGDOM |
| COX,SHAUNA W. | 2479 TALAVERA DR. SAN RAMON CA 94583 |
| COX,TIMOTHY J. | 241 NASSAU AVE MANHASSET NY 11030 |
| COY E. ROSS | D'AGOSTINO HALL 110 WEST THIRD STREET NEW YORK NY 10012 |
| COY E. ROSS | 515 ARTHUR STREET PITTSBURGH PA 15219 |
| COY, CARLTON | 444 MANHATTAN AVENUE APT 6N NEW YORK NY 10026 |
| COY, JANICE | 346 SHORELAND DRIVE FORT MYERS FL 33905-3164 |
| COY, RICHARD | 346 SHORELAND DR FT MYERS FL 33905-3164 |
| COY, ROGER E | 1499 MASSACHUTTES AVE NW WASHINGTON DC 20005 |
| COY,RICHARD S. | 346 SHORELAND DRIVE FORT MYERS FL 33905 |
| COYE, PAULA D. | 402 EAST 90TH STREET APARTMENT 5F NEW YORK NY 10128 |
| COYLE JR., JOHN J. | 142 EAST 27TH ST APT 1E NEW YORK NY 10016 |
| COYLE, ADRIENNE | ONE EAST RIDGE LOUDONVILLE NY 12211 |
| COYLE, EDWARD | 60 SLEEPY VALLEY ROAD WARWICK NY 10990 |
| COYLE, JOHN | 1020 ROOSEVELT BLVD KENNER LA 70062 |
| COYLE, JOHN P. | PAID DETAIL UNIT 51 CHAMBERS STREET - 3RD FLOOR ATTN:  NADINE POPE NEW YORK NY 10007 |
| COYLE, MARTHA | 216 STATION PARK CIRCLE GRAYSLAKE IL 60030 |
| COYLE, MARTHA CHRISTIN | 216 STATION PARK CIRCLE GRAYSLAKE IL 60030 |
| COYLE, MICHAEL MORGAN | 4705 N TROY GARDEN CHICAGO IL 60625 |
| COYLE, NICOLE | 841 DORIAN RD WESTFIELD NJ 07090 |
| COYLE, WILLIAM | 325 ADAMS STREET APT 1 HOBOKEN NJ 07030 |
| COYLE,ABIGAIL | 152 FULLER STREET WEST NEWTON MA 02465 |
| COYLE,ANNE | 211 HUGHENDEN ROAD HIGH WYCOMBE, BUCKS HP135PG UNITED KINGDOM |
| COYLE,MARTHA CHRISTINE | 216 STATION PARK CIRCLE GRAYSLAKE IL 60030 |
| COYLE,MICHAEL | 45 NUTLEY PARK DONNYBROOK, DUBLIN 4 IRELAND |
| COYLE,MICHAEL MORGAN | 5528 N CHESTER AVE APT 1 CHICAGO IL 60656 |
| COYLE,NANCY E | 8 DEER RUN DRIVE NORTH READING MA 01864 |
| COYM, DR. PETER | OBERER REISBERG 34 BAD HOMBURG 61350 GERMANY |
| COYM,PETER | OBERER REISBERG 34 BAD HOMBURG BE 61350 GERMANY |
| COYNE & BLANCHARD INC | PO BOX 51785 BOULDER CO 80321 |
| COYNE & BLANCHARD INC | 110 CONSTITUTION DR MENLO PARK CA 94025 |
| COYNE, CAITLIN | 337 W. 14TH ST. #23 NEW YORK NY 10014 |
| COYNE, JOHN B | 91 EAST END AVENUE NEW YORK NY 10028 |
| COYNE, TIMOTHY E. | PAID DETAIL UNIT ONE POLICE PLAZA NEW YORK NY 10038 |
| COYNE,CHAD L. | 1217 SOUTH FAIRVIEW DRIVE TACOMA WA 98465 |
| COYNE,SARAH LENEHAN | 340 EAST 74TH STREET APT 4C NEW YORK NY 10021 |
| COYNER, ROSEANN R | 403 S GRANT ST HINSDALE IL 60521-4054 |
| COZAD, CHARLES E. & BARBARA D. | 1685 BECKET AVE. COLUMBUS OH 43235 |
| COZEN O'CONNOR | 1900 MARKET STREET PHILADEPHIA PA 19103 |
| COZEN O'CONNOR | W1385 COZEN O' CONNOR P.O.BOX 7777 PHILADELPHIA PA 19175-0755 |
| COZEN O'CONNOR | W775 P.O. BOX 7777 PHILADELPHIA PA 19175-0775 |
| COZENS,ROBERT | 57 GOODWIN CLOSE CHELMSFORD, ESSEX CM2 9GX UNITED KINGDOM |
| COZETTE MONROE ANDREWS | 701 MONROE ST. BROOKLYN NY 11221 |
| COZETTE ANDREWS | 165-24 116 AVE QUEENS NY 11434 |
| COZIER,KASHAUN | 204 CLEVELAND STREET BROOKLYN NY 11208 |
| COZINE, ALICIA | 3517 COLFAX AVENUE SOUTH MINNEAPOLIS MN 55408 |
| COZMA, ARETHA | 783 SENECA AVENUE APT 3R RIDGEWOOD NY 11385 |
| COZZA, OLINDO | 45 BROOK ROAD VALLEY STREAM NY 11581 |

| Claim Name | Address Information |
|---|---|
| DOYLE,MARK | 155 PENNINE ROAD BACUP, LANCS OL13 9PZ UNITED KINGDOM |
| DOYLE,PENNY | NO 16 OLYMPUS GROVE WOOD GREEN LONDON N225TD UNITED KINGDOM |
| DOYLE,RANDY MATTHEW | 5712 MESA MOUNTAIN WAY COLORADO SPRINGS CO 80923 |
| DOYLE,RICHARD N. | 7315 BRIDGE TOWN LANE CALEDONIA MI 49316 |
| DOYLE,TARA LYNN | 12127A BANNOCK STREET WESTMINSTER CO 80234 |
| DOYLE,WILLIAM K. | 501 ARROYO SQ SOUTH PASADENA CA 91030 |
| DOYLE-EVA, ANN J. | 6 ST MARGARETS COURT ST MARGARETS ROAD CENT WANSTEAD E125DN UNITED KINGDOM |
| DOYLE-EVA,ANN J. | 6 ST MARGARETS COURT ST MARGARETS ROAD WANSTEAD, CENT E125DN UNITED KINGDOM |
| DPC DATA INC | DO NOT USE-SEE V# 0000002261 FORT LEE NJ 07024 |
| DPC DATA INC | ONE EXECUTIVE DRIVE FORT LEE NJ 07024 |
| DPC DATA INC | 2707 27TH LANE BUILDING 108 LAKE WORTH FL 33463 |
| DPMC LTD | 4 THE MEWS 53 HIGH STREET HAMPTON HILL MIDDLESEX TW12 1ND UNITED KINGDOM |
| DPR CONSTRUCTION INC | 1050 SANSOME ST, SUITE 600 SAN FRANCISCO CA 94111 |
| DPR CONSTRUCTION INC | 1510 S WINCHESTER BLVD. SAN JOSE CA 95128 |
| DPR CONSULTING | INTERNATIONAL HOUSE 1 ST KATHARINE'S WAY LONDON E1W 1UN UNITED KINGDOM |
| DPW CAPITAL ADVISORS | 695 CENTRAL AVENUE SUITE 150-N ST. PETERSBURG FL 33701 |
| DR BERNHARD SCHAUB | NORARIAT TAL 12 MUNCHEN D80331 GERMANY |
| DR DAVID GOLDSMITH | 52 SOUTH PARK HILL ROAD SOUTH CROYDON SURREY CR2 7DW UK |
| DR DAVID GOLDSMITH | 52 SOUTH PARK HILL ROAD SOUTH CROYDON SURREY CR2 7DW UNITED KINGDOM |
| DR ELI SILBER FCP | THE BLACKHEATH HOSPITAL 4042 LEE TERRACE LONDON SE3 9UD UK |
| DR ELI SILBER FCP | THE BLACKHEATH HOSPITAL 4042 LEE TERRACE LONDON SE3 9UD UNITED KINGDOM |
| DR GARIMA RAMCHANDANI | A-23/A-24 AMRUT NAGAR SHRENIK NAGAR CHS GHATKOPAR W MUMBAI MH 400080 INDIA |
| DR KLAUS KINKEL | SONNERAIN 46 ST AUGUSTIN 53757 GERMANY |
| DR KWOK KIN WONG | 27 RICHFIELD ROAD ARLINGTON MA 02474 |
| DR L H HIRANANDANI HOSPITAL | HILLSIDE AVENUE HIRANANDANI GARDENS POWAI MUMBAI 400076 INDIA |
| DR LUEBKE GMBH | GUTLEUTSTRASSE GMBH FRANKFURT 60329 GERMANY |
| DR MICHAEL DAVIDSON | RUSHPRESBYTERIAN ST LUKES MEDICAL CENT. 1725 WEST HARRISON STREET CHICAGO IL |
| DR ROS ALTMANN | 9 FAIRHOLME CLOSE LONDON N3 3EE UK |
| DR ROS ALTMANN | 9 FAIRHOLME CLOSE LONDON N3 3EE UNITED KINGDOM |
| DR SETH BILAZARIAN | PMA 1 PARK WAY HAVERHILL MA 01830 |
| DR SUDHIR BHATNAGAR | A-203, JAL VAYU VIHAR NEAR HIRANANDANI GARDENS POWAI MUMBAI MH 400076 INDIA |
| DR ULRICH SCHUMACHER | GRACE SEMICONDUCTOR MANUFACTURING CORPORATION 1399 ZU CHONG ZHI ROAD ZHANGJIANG HI-TECH PARK SHANGHAI 201203 CHINA |
| DR ULRICH SCHUMACHER | SCHIESSSTATTSTRASSE 3B MUNICH 92319 GERMANY |
| DR. CHRISTOPH SCHUECKING | CMS HASCHE SIGLE BARCKHAUSSTRASSE 12-16 FRANKFORT AM MAIN 60325 GERMANY |
| DR. DENIS TRUPKIN | 3535 WINDMILL ROAD WESTIN FL 33331 |
| DR. EUGEN OTTO GMBH | RIEMERGASSE 8 1010 WIEN VIENNA 1010 AUSTRIA |
| DR. FELIX WEBER | HAUROOSSTRASSE 9 OBERROHRDORF 5452 SWITZERLAND |
| DR. IRWIN INGWER PROFIT SHARING PLAN | IRWIN INGWER 7 WESTBOURNE LANE MELVILLE NY 11747 |
| DR. MED Y.S. ABDALLA | VICTOR-ACHARD-STRASSE 3A BAD HOMBURG V.D.H. 61350 GERMANY |
| DR. MICHAEL C. FREGE, RECHTSANWALT | BARCKHAUSSTRASSE 12-16 FRANKFORT AM MAIN 60325 GERMANY |
| DR. MITCHELL SMITH | FOX CHASE CANCER CENTRE 333 COTTMAN AVENUE PHILADELPHIA 19111-2497 |
| DR.-ING. ANDREAS KOSSAK | MOORWEG 6 HAMBURG HH 22453 GERMANY |
| DR.-ING. ANDREAS KOSSAK | MOORWEG 6 HAMBURG 22453 GERMANY |
| DR.EBNER DR.STLZ UND PARTNER GMBH | KRONENSTRASE 30 STUTTGART 70174 GERMANY |
| DR.MED. CLAUDIA KRONSCHWITZ | ESCHERSHEIMER LANDSTRA¯E 18 FRANKFURT AM MAIN 60322 GERMANY |
| DR.MED. CLAUDIA KRONSCHWITZ | ESCHERSHEIMER LANDSTRAAYE 18 FRANKFURT AM MAIN 60322 GERMANY |
| DRACHUK, MIKHAIL | 8 ABERDEEN PL FAIR LAWN NJ 07410 |
| DRAFTINGSTEALS | P.O. BOX 613 SPRINGFIELD OH 45501 |

| Claim Name | Address Information |
|---|---|
| PATRICK, RAVEY | 72-17 34TH AVENUE APT. 1B JACKSON HEIGHTS NY 11372 |
| PATRICK, REILLY | 26 HILL GROVE MARSHALLS PARK ESSEX ROMFORD RM1 4JP UNITED KINGDOM |
| PATRICK, SCHMITZ-MORKRAM | FRAUENLOBSTRASSE 51 HE FRANKFURT 60487 GERMANY |
| PATRICK, TRUEMAN | 92 BRACKENBURY ROAD LONDON W6 0BD UNITED KINGDOM |
| PATRICK, WALSH | 2233 W. SHAKESPEARE APT #2F CHICAGO IL 60647 |
| PATRICK, WALSH | 3257 N. SHEFFIELD #304 CHICAGO IL 60657 |
| PATRICK, WANGURU | 15889 PRESTON ROAD APT 1007 DALLAS TX 75248 |
| PATRICK,CORDULA | TELEMANNSTRASSE 2 FRANKFURT D60323 GERMANY |
| PATRICK,MARK A. | 131 TULIP STREET SUMMIT NJ 07901-3412 |
| PATRICK-ANTHONY, MARSHALL | 20 BALLINGDON ROAD LONDON SW11 6AJ UNITED KINGDOM |
| PATRIK, AXELSSON | RULLSTENSGATAN 180 906 55 UMEA UMEA SWEDEN |
| PATRIK, ZUMSTEIN | NEUGASSE 4 ZG ZUG 6300 SWITZERLAND |
| PATRIZIA AGOSTI, ROVEDA | 8 ARKWRIGHT ROAD FLAT 8 LONDON NW3 6AE UNITED KINGDOM |
| PATRIZIA E, MICUCCI | VIA DE GRASSI 3 MILAN 20123 ITALY |
| PATRIZIA, LAZZARO | VIALE BLIGNY 18 MILAN 20136 ITALY |
| PATRIZIA, MEDVEDICH | 9 KELVIN COURT 40-42 KENSINGTON PARK ROAD LONDON W11 3BT UNITED KINGDOM |
| PATRIZIA, MELONI | VIA ROENTGEN 19 MILAN 20136 ITALY |
| PATRIZIA, REPOSSI | PIAZZALE DELLA STAZIONE,25 PAVIA PV PAVIA ITALY |
| PATRUNO,SABINO | 10 OPATUT COURT MORGANVILLE NJ 07751 |
| PATSOURIS,JEAN L | 150 STREATHAM HILL STREATHAM LONDON SW2 4RX GREAT BRITAIN |
| PATTANAYAK,SAMBIT | 224 BLOOMFIELD STREET #9 HOBOKEN NJ 07030 |
| PATTERSON, LYNIESE | PO BOX 16472 STANFORD, CA 94309 |
| PATTERSON,CARLTON | 9 ARCHDALE ROAD EAST DULWICH LONDON SE22 9HL GREAT BRITAIN |
| PATTERSON,GEORGE G. | 18 SHEFFIELD TERRACE LONDON W8 7NA GREAT BRITAIN |
| PATTERSON,KELLY W. | 23 COLONY LANE ROSLYN HEIGHTS NY 11577 |
| PATTERSON,MARTIN S | FOREST LODGE NEW LODGE CHASE LITTLE BADDOW,ESSEX CM3 4AZ GREAT BRITAIN |
| PATTI-JO, WILSON | 3 PLYMOUTH ROAD WESTFIELD NJ 07090 |
| PATTIE, O'DONNELL | 252 BEACH AVENUE STATEN ISLAND NY 10306 |
| PATTISALL,AINDREA TYL | 385 FIRST AVENUE APARTMENT 10B NEW YORK NY 10010 |
| PATTON,MICHELLE | 136 APPOLLO ROAD BULIMBA BRISBANE QLD AUSTRALIA |
| PATTY C., KAO | 515 WEST 52ND STREET APARTMENT 6Q NEW YORK NY 10019 |
| PATTY T., LEE | 67 07 FRESH MEADOW LANE FRESH MEADOWS NY 11365 |
| PATTY, MO | 154-36 58TH AVE FLUSHING NY 11355 |
| PATWARI,ANKOOR M. | 1032 WATERFORD DRIVE EDISON NJ 08817 |
| PAUL A, ATKINSON | 139 EAST 33RD STREET APT. 4E NEW YORK NY 10016 |
| PAUL A, CUMMINS | 81 CALTON AVENUE DULWICH LONDON SE21 7DF UNITED KINGDOM |
| PAUL A, LEONARD | 400 SALTER PLACE WESTFIELD NJ 07090 |
| PAUL A, NORRIS | 42 ADDISON AVENUE LONDON W114QP UNITED KINGDOM |
| PAUL A, RETEMIAH | 500 GARLAND AVE APT. B13 BERRIEN SPRINGS MI 49103 |
| PAUL A., GASPARRO | 105 STUYVESANT AVE RYE NY 10580 |
| PAUL A., HUGHSON | 20 HIGHFIELD ROAD HARRISON NY 10528 |
| PAUL A., MARSILIO | 71 BROADWAY APT. 20-L NEW YORK NY 10006 |
| PAUL A., MORFOGEN | 444 ROCKAWAY VALLEY ROAD BOONTON NJ 07005 |
| PAUL A., PUSKULDJIAN | 50 ROOSEVELT AVE GLEN HEAD NY 11545 |
| PAUL A., RUBIN | 66 FARMINGDALE DRIVE PARSIPPANY NJ 07054 |
| PAUL A., ZAKIAN | 129 EAST 82ND STREET APT 10A NEW YORK NY 10028 |
| PAUL ALEXIS, PENKETT | HOUSE 1A 6 MOUNT DAVIS DRIVE POKFULAM HONG KONG HONG KONG |
| PAUL ALLEN, GRIGG | 16 SALISBURY ROAD SURREY RICHMOND TW9 2JB UNITED KINGDOM |
| PAUL ANDREW, ARBON | 26 TOWER ROAD HANTS LIPHOOK GU307AR UNITED KINGDOM |

| Claim Name | Address Information |
|---|---|
| MICROGEN | FLEET HOUSE 3 FLEET WOOD PARK FLEET HAMPSHIRE GU51 2QJ UK |
| MICROGEN | FLEET HOUSE 3 FLEET WOOD PARK FLEET HAMPSHIRE GU51 2QJ UNITED KINGDOM |
| MICROGEN ASSET MANAGEMENT SOLUTIONS LTD | ACCOUNTS DEPARTMENT 320 CITY ROAD LONDON EC1V 2PT UNITED KINGDOM |
| MICROGRAPHIC COMPUTER SVCS INC | P.O.BOX 703 MORRISVILLE PA 19067 |
| MICROGRAPHIC COMPUTER SVCS INC | ONE E TRENTON AVE BLDG 24 MORRISVILLE PA 19067 |
| MICROHEDGE INC. | ONE SOUTH WACKER DRIVE SUITE 400 CHICAGO IL 60606 |
| MICROHEDGE INC. | 3556 COLLECTIONS CENTER DRIVE CHICAGO IL 60693 |
| MICROQUILL SOFTWARE PUBLISHING, INC | 10512 68TH #NE 101 KIRKLAND WA 98033 |
| MICRORENT PLC | UNIT 6 THE GATEWAY CENTER CORONATED ROAD CRESSES BUSINESS PARK HIGH WYCOMBE HP12 3SU UK |
| MICRORENT PLC | UNIT 6 THE GATEWAY CENTER CORONATED ROAD CRESSES BUSINESS PARK HIGH WYCOMBE, BUCKS HP12 3SU UNITED KINGDOM |
| MICRORENT PLC | UNIT 6 THE GATEWAY CENTRE CORONATION ROAD CRESSEX BUSINESS PARK HIGH WYCOMBE, BUCKS HP12 3SU UNITED KINGDOM |
| MICROROSE LIMITED | GREAT RUCKINGE HOUSE THORNDEN WOOD ROAD HERNE BAY ENGLAND, U.K. 308-1001 UNITED KINGDOM |
| MICROS RETAIL SYSTEMS INC | 1500 HARBOR BLVD WEEHAWKEN NJ 07087-6732 |
| MICROSENSE PRIVATE LIMITED | 808, EMBASSY CENTRE NARIMAN POINT MUMBAI MH 400021 INDIA |
| MICROSHOP  EUROPE AB | LASARETTSGATAN 18 ORNSKOELDSVIK 89133 SWEDEN |
| MICROSOFT | 1 MICROSOFT WAY REDMOND WA 98052 |
| MICROSOFT CORPORATION | ATTN:BRAD CIAMBOTTI 8050 MICROSOFT WAY AP2-1239 CHARLOTTE NC 28273 |
| MICROSOFT CORPORATION | ATTN:KELLY MURRAY 3 CITY PLACE DRIVE SUITE 1100 ST. LOUIS MO 63141 |
| MICROSOFT CORPORATION | MICROSOFT TECH-ED 2007 1401 ELM STREET LOCKBOX 847715 DALLAS TX 75202 |
| MICROSOFT CORPORATION | P.O. BOX 844510 MICROSOFT ENTERPRISE SOLUTIONS DALLAS TX 75284-4510 |
| MICROSOFT CORPORATION | PO BOX 847255 DALLAS TX 75284-7255 |
| MICROSOFT CORPORATION | ATTN: MS SUPPORT NETWORK SALES/RWG-3 ONE MICROSOFT WAY REDMOND WA 98052 |
| MICROSOFT CORPORATION | ONE MICROSOFT WAY REDMOND WA 98052 |
| MICROSOFT CORPORATION | ATTN:TREASURER MICROSOFT ONE MICROSOFT WAY REDMOND WA 98052-6399 |
| MICROSOFT CORPORATION | TREASURER MICROSOFT ONE MICROSOFT WAY REDMOND WA 98052-6399 |
| MICROSOFT GLOBAL FINANCE | 70 SIR ROGERSON'S QUAY DUBLIN 2 IRELAND |
| MICROSOFT LICENSING GP | DEPT 551, VOLUME LICENSING 6100 NEIL RD, SUITE 210 RENO NV 89511-1137 |
| MICROSOFT LICENSING, GP | 1401 ELM STREET - 5TH FLOOR DEPT 842467 DALLAS TX 75202 |
| MICROSOFT TECHNET INC | PO BOX 848536 DALLAS TX 75284 |
| MICROSOL RESOURCES CORPORATION | 214 WEST 29TH STREET SUITE 1100 NEW YORK NY 10001 |
| MICROSTRATEGY, INC | 5 PENN PLAZA 14TH FLOOR NEW YORK NY 10001 |
| MICROTEK | 18 W. 140 BUTTERFIELD ROAD ONE LINCOLN CENTRE-SUITE 1490 OAKBROOK TERRACE IL 60181 |
| MICROTEK | 2001 BUTTERFIELD ROAD, SUITE 1500 DOWNERS GROVE IL 60515 |
| MICROTEK | PO BOX 10428 CHICAGO IL 60610 |
| MICROULIS, NICHOLAS D | PO BOX 1561 EAST HAMPTON NY 11937 |
| MICROWARE TECHNOLOGIA DE INFORMACAO LTDA | ATTN: GENERAL COUNSEL OR PRESIDENT AL. LORENA 800, 140 ANDAR SAO PAULO, SP BRASIL |
| MICSINAI,MARIANN | 98 RESERVOIR AVENUE #3 JERSEY CITY NJ 07307 |
| MICT LIMITED | 36TH FLOOR, ARK MORI BUILDING 12-32 AKASAKA, 1-CHOME, MINATO-KU JAPAN |
| MICUCCI, PATRIZIA E | VIA DE GRASSI 3 MILAN 20123 ITALY |
| MICULA, TOMASZ | 208 OAK STREET SOUTH AMBOY NJ 08879 |
| MICULTI MIHAI & ASSOCIATII SCA-LINKLATER | 8, NICOLAE IORGA STREET SECTOR 1 BUCHAREST 010434 ROMANIA |
| MID AMERICA GAMES FOR THE DISABLED INC. | 5608 BARKLEY STREET MISSION KS 66202 |
| MID AMERICA REGIONAL INFORMATION | SYSTEMS INC 12825 FLUSHING MEADOWS ST LOUIS MO 63131 |

| Claim Name | Address Information |
|---|---|
| MARCELLO, MOLITIERNO | FLAT 9 CHEVIOT COURT 7 KENDAL CLOSE WHETSTONE N20 0SU UNITED KINGDOM |
| MARCELO, CRUZ | 44 THE DRIVE KENT SEVENOAKS TN13 3AF UNITED KINGDOM |
| MARCELO, LEIFERT | 21 CANTERBURY RD APT 3 GREAT NECK NY 11021 |
| MARCELO, TRAVAGLIA | RUA DONA BRIGIDA 346 - VIA MARIANA SP SAO PAULO 04111-080 BRAZIL |
| MARCH, SCOTT V. | 183 ASHLAND RD. SUMMIT NJ 07901 |
| MARCHETTI, THOMAS M. | 700 FIRST STREET UNIT 17PR HOBOKEN NJ 07030 |
| MARCI, NEEDLE | 90 CORIELL AVE FANWOOD NJ 07023 |
| MARCI, RAPPAPORT | 527 VANDERBILT AVE #3A BROOKLYN NY 11238 |
| MARCIA A., ROSENBERG | 515 WEST 59TH STREET APARTMENT 20L NEW YORK NY 10019 |
| MARCIA, ALLEN | 362 THIRD STREET JERSEY CITY NJ 07302 |
| MARCIN, ADAMOWSKI | 39A DOWNTON AVENUE STREATHAM HILL LONDON SW23TU UNITED KINGDOM |
| MARCIN, MAKOWIECKI | 2761 JOHN F. KENNEDY BLVD JERSEY CITY NJ 07306 |
| MARCIN, WOJNIAK | 21 WOLFE CRESCENT LONDON SE16 6SF UNITED KINGDOM |
| MARCIN, ZDROJOWY | 43A WELLESLEY ROAD LONDON E11 2HG UNITED KINGDOM |
| MARCO A., MARTINOT | 515 WEST 52ND STREET APARTMENT PH2C NEW YORK NY 10019 |
| MARCO A., SIMENTAL | 705 NINTH AVENUE APARTMENT  4A NEW YORK NY 10019 |
| MARCO C, FIGUS | VIA DI S VALENTINO 11 RM ROME 197 ITALY |
| MARCO CHI DUEN, WONG | FLAT 2C 23 REPULSE BAY ROAD HONG KONG HONG KONG |
| MARCO CHUN WAH, CHONG | FLAT H, 7TH FLOOR, ODEON BUILDING 28 SHU KUK STREET, NORTH POINT HONG KONG HONG KONG |
| MARCO F, COSTELLA | 13 BENNETT PARK BLACKHEATH LONDON SE3 9RA UNITED KINGDOM |
| MARCO FILIPE DI, FREIRE | RUA TOMAS DA FONSECA N.º 44 2.º B LISBOA 160-0258 PORTUGAL |
| MARCO J., RODZYNEK | 30 GROSVENOR GARDENS MEWS NORTH LONDON SW1W 0JP UNITED KINGDOM |
| MARCO, AMORIM | 1491 ZENITH WAY WESTON FL 33327 |
| MARCO, AYBAR | 97-37 84TH STREET OZONE PARK NY 11416 |
| MARCO, BONETTI | 10 CORNWALL MANSIONS CREMORNE ROAD LONDON SW100PE UNITED KINGDOM |
| MARCO, D'AGOSTINO | FLAT 19, 79 HARCOURT TERRACE LONDON SW109JP UNITED KINGDOM |
| MARCO, DI FAZIO | 26A REDBURN STREET, CHELSEA LONDON SW3 4BX UNITED KINGDOM |
| MARCO, DI MARIA | FLAT 1 (BASEMENT) 27 POWIS SQUARE LONDON W11 2AZ UNITED KINGDOM |
| MARCO, DI PRIMA | 72 BERKELEY TOWER 48 WESTFERRY CIRCUS LONDON E14 8RP UNITED KINGDOM |
| MARCO, GUBITZ | BORNWIESENWEG 45 HE FRANKFURT 60322 GERMANY |
| MARCO, HIDALGO | 3513 56TH COURT CICERO IL 60804 |
| MARCO, HOUSCHEID | 15 GREYCOAT PLACE FLAT 8 WESTMINSTER SW1P 1SB UNITED KINGDOM |
| MARCO, MICHELI | VIA PIANOSA 1 RM ROME 141 ITALY |
| MARCO, NALDI | 8 BEACH STREET APARTMENT 8 NEW YORK NY 10013 |
| MARCO, PIERETTORI | VIA SPARTACO 30 MILAN MI 20135 ITALY |
| MARCO, ROGGERO | 145 WEST BROADWAY APARTMENT 3 NEW YORK NY 10013 |
| MARCO, TEDONE | FLAT 4, 312/314 NEASDEN LANE LONDON NW10 0AD UNITED KINGDOM |
| MARCO, VALLA | 3 EAST 69TH STREET APARTMENT 9A NEW YORK NY 10021 |
| MARCOS, ALVARADO | 252 SEVENTH AVENUE APT 8S NEW YORK NY 10001 |
| MARCUS DANIEL, HOUGH | 11B FAIRMOUNT ROAD BRIXTON LONDON SW2 2BJ UNITED KINGDOM |
| MARCUS I, MARR | 26 MOUNT CRESCENT WARLEY ESSEX BRENTWOOD CM14 5DB UNITED KINGDOM |
| MARCUS L., KUPFERSCHMIDT | 201 E 15TH ST APT. 6A NEW YORK NY 10003 |
| MARCUS O, POLLING | 3 BARCLAY OVAL ESSEX WOODFORD GREEN IG8 0PP UNITED KINGDOM |
| MARCUS S., WEICKEL | 271 WEST 47TH STREET APARTMENT 45D NEW YORK NY 10036 |
| MARCUS W., GRIFFIN | 242 WEST 136TH STREET NEW YORK NY 10030 |
| MARCUS, JACKSON | 98 DUNSTABLE ROAD HERTS REDBOURN AL3 7QB UNITED KINGDOM |
| MARCUS, JOACHIM | FLAT C203 16 HERTSMERE ROAD LONDON E14 4AX UNITED KINGDOM |
| MARCUS, MARTIN | 228A WESTBOURNE GROVE LONDON W11 2RH UNITED KINGDOM |

| Claim Name | Address Information |
|---|---|
| FIGUEIRA,MARIA JO?O | RUA CANDIDO DOS REIS N.§ 6 6.§ DTO. ODIVELAS 267-5308 PORTUGAL |
| FIGUEIREDO,CARLOS FILIPE MENDES | RUA D.MAFALDA NO 33 2DTO BELAS 2605-656 PORTUGAL |
| FIGUEROA, DAVID JR. | PAID DETAIL UNIT 51 CHAMBERS ST. - 3RD FL. ATTN:  NADINE POPE NEW YORK NY 10007 |
| FIGUEROA, ERIC | PIAD DETAIL UNT 51 CHAMBERS STREET - 3RD FLOOR ATTN: NADINE POPE NEW YORK NY 10007 |
| FIGUEROA, WILFREDO | 1876 FITZGERALD ROAD SIMI VALLEY CA 93065-4857 |
| FIGUEROA,ADELSA | 31-22 98 STREET 2ND FLOOR EAST ELMHURST NY 11369 |
| FIGUEROA,ANNA | 18618 COLLINST ST. #117 TARZANA CA 91356 |
| FIGUEROA,MANUEL | 14732 LAGUNA BEACH CIRCLE ORLANDO FL 32824 |
| FIGUEROA-MERCADO,ALEX P | 455 WEST LAKE DRIVE WEST SACRAMENTO CA 95605 |
| FIGUS, MARCO C | VIA DI S VALENTINO 11 RM ROME 197 ITALY |
| FIKRU, DAWIT | PAID DETAIL UNIT 51 CHAMBERS STREET - 3RD FLOOR ATTN:  NADINE POPE NEW YORK NY 10007 |
| FIKSEL,JAY J. | 1700 PIERCE STREET APT#  501 HOLLYWOOD FL 33020 |
| FIL INV SVCS (UK) LTDA/C FIDELITY INST UK CORP BD | ATTN:MATTHEW DOWNTON, GILL DAVIDSON FIDELITY INVESTMENTS INTERNATIONAL BEECHGATE, MILLFIELD LANE, LOWER KINGSWOOD TADWORTH, SURREY KT20 6RP UNITED KINGDOM |
| FIL INV SVCS (UK) LTDA/C UK AGGREGATE BOND FUND | ATTN:MATTHEW DOWNTON, GILL DAVIDSON FIDELITY INVESTMENTS INTERNATIONAL BEECHGATE, MILLFIELD LANE, LOWER KINGSWOOD TADWORTH, SURREY KT20 6RP UNITED KINGDOM |
| FIL INVESTMENTS INTLA/C FIDELITY EUROCORP | ATTN:TRADE SETTLEMENTS FIDELITY INVESTMENTS INTERNATIONAL BEECHGATE, MILLFIELD LANE LOWER KINGSWOOD TADWORTH, SURREY KT20 6RP UNITED KINGDOM |
| FILALI, SALIM | 12B LINDEN ROAD MUSWELL HILL LONDON N103DH UNITED KINGDOM |
| FILALI,SALIM | 12B LINDEN ROAD MUSWELL HILL LONDON, GT LON N103DH UNITED KINGDOM |
| FILBEE, SARAH M | 107 MAZE HILL GREENWICH LONDON SE108XQ UNITED KINGDOM |
| FILBEE,SARAH M | 107 MAZE HILL GREENWICH LONDON, GT LON SE108XQ UNITED KINGDOM |
| FILDERMAN, ROBERT | 4277 COSOY WAY SAN DIEGO CA 92103 |
| FILIMON, JEFFREY | 2069 15TH AVE. SAN FRANCISCO CA 94116 |
| FILINGERI, MICHAEL | 6554 LAUREL VALLEY ROAD DALLAS TX 75248 |
| FILIPA TEIXEIRA | 119 BEAFORT MANSIONS BEAUFORT STREET LONDON SW3 5AE UK |
| FILIPA TEIXEIRA | 119 BEAFORT MANSIONS BEAUFORT STREET LONDON SW3 5AE UNITED KINGDOM |
| FILIPOV, ADRIENNE | 3 HANOVER SQUARE APARTMENT 22A NEW YORK NY 10004 |
| FILIPOV, SERGEI | 3 HANOVER SQUARE APARTMENT 22A NEW YORK NY 10004 |
| FILIPOVA, MARIYA | 2031 BLANCHARD STUDENT CENTER MOUNT HOLYOKE COLLEGE HADLEY MA 01075 |
| FILIPPATOS, PLLC AS ATTORNEYS FOR | PO BOX 4019 NEW YORK NY 101634019 |
| FILIPPI,BENJAMIN | THE MANOR NISHI-AZABU #101 3-5-35, NISHI-AZABU MINATO-KU 13 106-0031 JAPAN |
| FILIPPINI, DAVID | 48 NORTH DOS CAMINOS AVENUE VENTURA CA 93003 |
| FILIPPIS, FRANK A | 205 BRISTOL CT MARVIN NC 28173 |
| FILIPPO ALTISSIMO | CARE OF LEHMAN BROTHERS 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| FILIPPO ANNUNZIATA | CORSO DI PORTA NUOVA 10 MILAN 20121 ITALY |
| FILIPPO BOLLA | VIA BIANCA DI SAVOIA 19 MILANO 20100 ITALY |
| FILIPPO BORIA | 87 HARCOURT TERRACE LONDON SW10 9JP UNITED KINGDOM |
| FILIPPO BORIA | 8 WAVERLY HOUSE 30 ORMONDE GATE LONDON SW3 4HA UNITED KINGDOM |
| FILIPPO GOTTI | CORSO VITTORIO EMANUELE 145 ROME 00186 ITALY |
| FILIPPO GOTTI | 260 W. 54TH ST. APT 36B NEW YORK NY 10019 |
| FILIPPO JACAZIO | 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| FILIPPO JACAZIO | APT 1, 35 MYDDLETON STREET LONDON EC1R 1UA UNITED KINGDOM |
| FILIPPO SANTILLI | 15 MOSQUE STREET 7A PEACH BLOSSOM CENTRAL, HONG KONG CENTRAL CHINA |
| FILIPPO SANTILLI | 88 OLD WOOLWICH ROAD GREENWICH LONDON SE10 9PN UNITED KINGDOM |

| Claim Name | Address Information |
|---|---|
| MARCO A. MONTES | 21 CLARK COURT RUTHERFORD NJ 07070 |
| MARCO A. MONTES | 21 CLARK CT RUTHERFORD NJ 07070-1301 |
| MARCO A. SALVALAGGIO | 10 FAIRFAX ROAD LONDON,MDDSX W4 1EW UNITED KINGDOM |
| MARCO A. SIMENTAL | 240 MERCHER STREET APARTMENT ME-1212 NEW YORK NY 10012 |
| MARCO A. SIMENTAL | 705 9TH AVE APT 4A NEW YORK NY 100197931 |
| MARCO A. SIMENTAL | 1351 MASON FARM ROAD APARTMENT 216 CHAPEL HILL NC 27514 |
| MARCO A. SIMENTAL | 1351 MASON FARM ROAD APARTMENT 216 HILLCHAPEL NC 27514 |
| MARCO AMORIM | 2031 MEDFORD ROAD #91 ANN ARBOR MI 48104 |
| MARCO AMORIM | 360 HEATHER LN KEY BISCAYNE FL 33149 |
| MARCO AMORIM | PO BOX 310506 MIAMI FL 33231-0506 |
| MARCO ANTONIO PEREIRA DA SILVA | 6043 70TH AVE #2 RIDGEWOOD NY 113855141 |
| MARCO AYBAR | 1917 LINDEN STREET, APT. 1R FLUSHING NY 11385 |
| MARCO BONETTI | 10 CORNWALL MANSIONS CREMORNE ROAD LONDON,ANT SW10 0PE UNITED KINGDOM |
| MARCO C FIGUS | VIA CARDUCCI 10 5TH FLOOR ROME RM 00187 ITALY |
| MARCO C FIGUS | VIA CARDUCCI 10 5TH FLOOR ROME 00187 ITALY |
| MARCO C FIGUS | VIA DI GROTTAROSSA 296 ROME 00189 ITALY |
| MARCO C FIGUS | VIA DI S VALENTINO 11 ROME RM 00197 ITALY |
| MARCO CAMPO | VIA PALLADIO 16 MILANO MI 20135 ITALY |
| MARCO CAMPS | CARE OF LEHMAN BROTHERS 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| MARCO CHUN WAH CHONG | FLAT D, 2/F, GREENCLIFF 23 TUNG SHAN TERRENCE HONG KONG CHINA |
| MARCO CHUN WAH CHONG | FLAT D, 2/F, GREENCLIFF 23 TUNG SHAN TERRENCE HONG KONG HONG KONG |
| MARCO CHUN WAH CHONG | FLAT D, 2/F, GREENCLIFF 23 TUNG SHAN TERRENCE HONG KONG ICELAND |
| MARCO DI FAZIO | VIA DI VIGNA STELLUTI NO 19 ROMA RM 00191 ITALY |
| MARCO DI FAZIO | 26 REDBURN STREET, CHELSEA LONDON SW3 4BX UNITED KINGDOM |
| MARCO DI FAZIO | WARWICK CHAMBERS 22 PATER STREET LONDON W8 6EN UNITED KINGDOM |
| MARCO DI PRIMA | 11 TOWER WALK ST KATHERINE'S WAY LONDON E1W 1LP UNITED KINGDOM |
| MARCO F COSTELLA | 140D SHOOTERS HILL ROAD BLACKHEATH LONDON SE3 8RN UNITED KINGDOM |
| MARCO F LAMBOGLIA | 6571  BLVD OF CHAMPIONS NORTH LAUDERDALE FL 33068 |
| MARCO F LAMBOGLIA | 6571  BLVD OF CHAMPIONS NORTH LAUDERDALE FL 33068 |
| MARCO FILIPE DIAS FREIRE | RUA TOMA-S DA FONSECA N.A$ 44 2.A$ B LISBOA 160-0258 PORTUGAL |
| MARCO GELMI | VIA ROTONDA MONTIGLIO 8 BRESCIA 25127 ITALY |
| MARCO GELMI | VIA ROTONDA MONTIGLIO, 8 BRESCIA BS 25127 ITALY |
| MARCO GERMANI | VIA CUSTODI 3 MILANO 20136 ITALY |
| MARCO HEYER | CHURERSTRASSE 92G 8808 PFAFFIKON SZ SWITZERLAND |
| MARCO HEYER | CHURERSTRASSE 92G PFAFFIKON 8808 SWITZERLAND |
| MARCO HOUSCHEID | 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| MARCO HOUSCHEID | 15 GREYCOAT PLACE WESTMINSTER SW1P 1SB UNITED KINGDOM |
| MARCO HOUSCHEID | 1835 ARCH STREET, APT. 509 PHILADELPHIA PA 19103 PHILADELPHIA PA 19103 |
| MARCO INVESTMENT MANAGEMENT LLC | ATTN: STEVEN MARCO 300 ATLANTA FINANCIAL CENTER, 3343 PEACHTREE RD, NE ATLANTA GA 30326 |
| MARCO J. RODZYNEK | 3 WYNDHAM HOUSE SLOANE SQUARE LONDON SW1W 8AR UNITED KINGDOM |
| MARCO J. RODZYNEK | 17 COURTFIELD GARDENS FLAT 2 LONDON SW5 0PD UNITED KINGDOM |
| MARCO MICHELI | VIA PIANOSA 2 ROME 00141 ITALY |
| MARCO MINONNE | 466 W DEMING PL #2E CHICAGO IL 606141771 |
| MARCO NALDI | 89 JORALEMON STREET BROOKLYN NY 11201 |
| MARCO OCTAVIO PICCININI | 25 BANK ST LONDON E14 5LE UNITED KINGDOM |
| MARCO OCTAVIO PICCININI | 15 GORDON ROAD SEVENOAKS,KENT TN13 1HE UNITED KINGDOM |
| MARCO OCTAVIO PICCININI | VIA SICILIA 6 MONTECATINI TERME (PT) LONDON 51016 ITALY |
| MARCO PAUL VOLPI | 19 PANXWORTH ROAD HEMEL HEMPSTEAD HERTS HP3 9HQ UNITED KINGDOM |