08-13555-scc    Doc 50751-2    Filed 08/21/15    Entered 08/21/15 15:40:28    Exhibit B
Pg 1 of 79

## Exhibit B

**Prime Brokerage Agreements**

*Ltd.*

*LBI.*

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: MAVERICK LONG ENHANCED FUND, LTD. | Account (and Group) No.: |
|---|---|
| | |

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

**4. BREACH, BANKRUPTCY OR DEFAULT.** If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death, mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

2

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

**9.  IMPARTIAL LOTTERY ALLOCATION.**  You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**10.  SECURITIES EVENTS.**  Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

**11.  VOTING RIGHTS.**  If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

**12.  WAIVER, ASSIGNMENT AND NOTICES.**  Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

**13.  FREE CREDIT BALANCES.**  You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

**14.  RESTRICTIONS ON ACCOUNT.**  You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15.** **CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16.** **SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17.** **MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18.** **SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19.** **CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

5

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a) LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b) LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c) On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e) You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know")" all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f) If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g) If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h) You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i) Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

(l)    The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22. LEGALLY BINDING.** You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation. With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time. In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23. AMENDMENT.** You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. ARBITRATION.** Any controversy (1) arising out of or relating to any of your accounts, (2) arising out of or relating to transactions of any kind or (3) arising out of or relating to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

8

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

9

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

*PLEASE COMPLETE THIS INFORMATION <u>AND</u> SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF**  _Junf 27_ , 200 _5_

_____

Maverick Long Enhanced Fund, Ltd.
*Name of Customer*

_5TH FLOOR  HARBOUR  HOUSE_   _CAYMAN  ISLANDS_
*Address*                                                          *Country*

_GEORGETOWN , GRAND CAYMAN_
*City, State*                                        *Zip Code + 4*

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME:  _MAVERICK LONG ENHANCED FUND, LTD._
*Individual or Printed Name of Company*
BY: _MAVERICK CAPITAL, LTD  AS INVESTMENT MANAGER_

SIGNATURE:  _Joseph M. McGonigle_
*Signature of Authorized Person*

PRINT NAME:  _JOSEPH MCGONIGLE , TREASURER_
*Printed Name and Title of Signatory <u>or</u> Name of General Partner if Signer is a Partnership*

BY: _____

*Authorized Signatory and Title of General Partner <u>if</u> Above Signer is a Partnership <u>Otherwise Blank</u>*

**ACCEPTED AND AGREED TO:**

_Lehman_

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates named herein

12

EXHIBIT A
AUTHORIZED PERSONS

<u>Name</u>                                    <u>Specimen Signature</u>

the Estimation Objection3 Pg 14 of 73

## Customer Account Agreement Prime Brokerage

### LEHMAN BROTHERS INC.

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: MAVERICK NEUTRAL LEVERED FUND, LTD. | Account (and Group) No.: |
|---|---|

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

   **4.  BREACH, BANKRUPTCY OR DEFAULT.**  If you shall:

   (i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

   (ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

   (iii) state that you will not perform any obligation to any Lehman Brothers Entity;

   (iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

   (v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon  instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or  your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

    **9.   IMPARTIAL LOTTERY ALLOCATION.**  You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

    **10.   SECURITIES EVENTS.**  Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes.  You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

    **11.   VOTING RIGHTS.**  If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

    **12.   WAIVER, ASSIGNMENT AND NOTICES.**  Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder.  Any purported assignment of your rights and/or obligations hereunder  without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

    **13.   FREE CREDIT BALANCES.**  You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

    **14.   RESTRICTIONS ON ACCOUNT.**  You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15.    CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16.    SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17.    MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18.    SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19.    CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

5

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)   LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b)   LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c) On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e) You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f) If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g) If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h) You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i) Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

(l)   The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22.   LEGALLY BINDING.**   You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation.  With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time.  In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23.   AMENDMENT.**   You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you.  By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification.  If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations.  Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24.   GOVERNING LAW.**   THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.   ARBITRATION.**   Any controversy (1) arising out of or relating to any of your accounts,  (2) arising out of or relating to transactions of any kind or (3) arising out of or relating  to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not  make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages.  No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

8

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

9

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

*PLEASE COMPLETE THIS INFORMATION <u>AND</u> SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF**   <u>DECEMBER   28</u>, 200<u>4</u>

---

Maverick Neutral Levered Fund, Ltd.
*Name of Customer*

<u>3TH FLOOR HARBOUR HOUSE</u>     <u>CAYMAN ISLANDS</u>
*Address*                                    *Country*

<u>GEORGE TOWN , GRAND CAYMAN</u>
*City, State*                            *Zip Code + 4*

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME:   <u>MAVERICK NEUTRAL LEVERED FUND, LTD.</u>
          *Individual or Printed Name of Company*
        BY: MAVERICK CAPITAL LTD. AS INVESTMENT MANAGER

SIGNATURE:   <u>Sharyl Roberston</u>
                    *Signature of Authorized Person*

PRINT NAME:   <u>SHARYL ROBERTSON , CHIEF FINANCIAL OFFICER</u>
                *Printed Name and Title of Signatory <u>or</u> Name of General*
                *Partner if Signer is a Partnership*

BY: _____

*Authorized Signatory and Title of General Partner <u>if</u> Above*
*Signer is a Partnership <u>Otherwise Blank</u>*

**ACCEPTED AND AGREED TO:**

_____

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates
named herein

EXHIBIT A
AUTHORIZED PERSONS

<u>Name</u>                                          <u>Specimen Signature</u>

12

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019

(212) 526-7000

| Title: MAVERICK FUND II, LTD. | Account (and Group) No.: |
|---|---|

**Please Read Carefully, Sign and Return**

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

4.  **BREACH, BANKRUPTCY OR DEFAULT.** If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

2

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

**9. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**10. SECURITIES EVENTS.** Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

**11. VOTING RIGHTS.** If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

**12. WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

**13. FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

**14. RESTRICTIONS ON ACCOUNT.** You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15. CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17. MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18. SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19. CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

5

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a) LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b) LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c) On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

6

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e)    You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f)    If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)    If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h)    You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i)    Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

(l) The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22. LEGALLY BINDING.** You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation. With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time. In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23. AMENDMENT.** You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. ARBITRATION.** Any controversy (1) arising out of or relating to any of your accounts, (2) arising out of or relating to transactions of any kind or (3) arising out of or relating to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

9

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

**34. MISCELLANEOUS.** This Agreement will become effective on November 9, 2004.

10

*PLEASE COMPLETE THIS INFORMATION <u>AND</u> SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF** <u>NOVEMBER 12</u> , 200<u>4</u>

| Maverick Fund II, Ltd. |
| --- |
| *Name of Customer* |

| 5th Floor, Queensgate House, South Church Street, P.O. Box 10658 APO | Cayman Islands, BWI |
| --- | --- |
| *Address* | *Country* |

| Grand Cayman, Cayman Islands | |
| --- | --- |
| *City, State* | *Zip Code + 4* |

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME: <u>MAVERICK FUND II LTD.</u>
*Individual or Printed Name of Company*
BY: MAVERICK CAPITAL, LTD. ACTING AS AGENT AND INVESTMENT
MANAGER

SIGNATURE: *Sharyl Robertson*
*Signature of Authorized Person*

PRINT NAME: <u>SHARYL ROBERTSON, CHIEF FINANCIAL OFFICER</u>
*Printed Name and Title of Signatory <u>or</u> Name of General Partner if Signer is a Partnership*

BY:
*Authorized Signatory and Title of General Partner <u>if</u> Above Signer is a Partnership <u>Otherwise Blank</u>*

**ACCEPTED AND AGREED TO:**

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates named herein

12

## EXHIBIT A
## AUTHORIZED PERSONS

<u>Name</u>                                    <u>Specimen Signature</u>

13

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: MAVERICK FUND USA, LTD. | Account (and Group) No.: |
|---|---|

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

**4. BREACH, BANKRUPTCY OR DEFAULT.** If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

2

· (vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.·

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

**9. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**10. SECURITIES EVENTS.** Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

**11. VOTING RIGHTS.** If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

**12. WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

**13. FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

**14. RESTRICTIONS ON ACCOUNT.** You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15.   CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16.   SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17.   MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18.   SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19.   CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated  securities which are not otherwise received by you, to the full

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)   LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b)   LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c)   On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d)   In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e)   You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f)   If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)   If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction.  In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h)   You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i)   Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

(l)    The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22.    LEGALLY BINDING.** You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation. With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time. In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23.    AMENDMENT.** You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24.    GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.    ARBITRATION.** Any controversy (1) arising out of or relating to any of your accounts, (2) arising out of or relating to transactions of any kind or (3) arising out of or relating to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

8

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

**34. MISCELLANEOUS.** This Agreement will become effective on November 9, 2004.

PLEASE COMPLETE THIS INFORMATION *AND* SIGN THE APPROPRIATE SPACE BELOW:

**THIS AGREEMENT IS DATED AS OF** _NOVEMBER 12_, 200 9

Maverick Fund USA, Ltd.
_____
*Name of Customer*

C/O MAVERICK CAPITAL, LTD.

| 300 Crescent Court, 18th Floor | USA |
|---|---|
| *Address* | *Country* |
| Dallas, Texas | 75201 |
| *City, State* | *Zip Code + 4* |

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME:    MAVERICK FUND USA, LTD.
_____
*Individual or Printed Name of Company*

BY:   MAVERICK CAPITAL, LTD. ACTING AS INVESTMENT MANAGER

SIGNATURE:    _Sharyl Roberton_
_____
*Signature of Authorized Person*

PRINT NAME:    SHARYL ROBERTSON, CHIEF FINANCIAL OFFICER
_____
*Printed Name and Title of Signatory or Name of General*
*Partner if Signer is a Partnership*

BY:    _____
*Authorized Signatory and Title of General Partner if Above*
*Signer is a Partnership Otherwise Blank*

**ACCEPTED AND AGREED TO:**

_____

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates named herein

11

08-13555-mg    Doc 50751-2    Filed 08/21/15    Entered 08/21/15 15:40:28    Exhibit B
Pg 49 of 73    Pg 49 of 73

EXHIBIT A
AUTHORIZED PERSONS


<u>Name</u>                                                      <u>Specimen Signature</u>

# Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
(212) 526-7000

| Title: MAVERICK FUND, LDC | Account (and Group) No.: |
|---|---|
| | |

**Please Read Carefully, Sign and Return**

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

**4. BREACH, BANKRUPTCY OR DEFAULT.** If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into.  In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith.  Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine.  At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers.  In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor.  Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application.  You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity.  You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5.  ADEQUATE ASSURANCES.**  Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances.  The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6.  EXECUTION FEES AND SERVICE CHARGES.**  You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees").  You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7.  AMOUNTS OWED; TRUTH-IN-LENDING.**  You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement.  You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you.  Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8.  COLLECTION AND OTHER ACCOUNT-RELATED COSTS.**  You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

3

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

   **9. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

   **10. SECURITIES EVENTS.** Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

   **11. VOTING RIGHTS.** If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

   **12. WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

   **13. FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

   **14. RESTRICTIONS ON ACCOUNT.** You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15. CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17. MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18. SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19. CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated  securities which are not otherwise received by you, to the full

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a) LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b) LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trades. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c) On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance within the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d) In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

6

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e)    You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f)    If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)    If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h)    You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i)    Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j) You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

7

(l)   The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22.   LEGALLY BINDING.**  You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions.  You hereby waive any and all defenses that any  oral instruction was not in writing as may be required by any applicable law, rule or regulation.  With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time.  In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23.   AMENDMENT.**  You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you.  By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification.  If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations.  Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24.   GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25.   ARBITRATION.**  Any controversy (1) arising out of or relating to any of your accounts,  (2) arising out of or relating to transactions of any kind or (3) arising out of or relating  to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not  make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice.  Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages.  No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

9

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

**34. MISCELLANEOUS.** This Agreement will become effective on November 9, 2004.

*PLEASE COMPLETE THIS INFORMATION <u>AND</u> SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF**   *NOVEMBER   12*   , 200_

Maverick Fund, LDC
_____
*Name of Customer*

5ᵗʰ Floor, Queensgate House, South   |   Cayman Islands,
Church Street, P.O. Box 10658 APO   |   BWI
_____   _____
*Address*   |   *Country*

Grand Cayman, Cayman Islands
_____   _____
*City, State*   |   *Zip Code + 4*

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME:   *MAVERICK FUND, L.D.C.*
_____
*Individual or Printed Name of Company*
*BY: MAVERICK CAPITAL, LTD. ACTING AS INVESTMENT MANAGER AND AGENT*

SIGNATURE:   *Sharyl Robertson*
_____
*Signature of Authorized Person*

PRINT NAME:   *SHARYL ROBERTSON, CHIEF FINANCIAL OFFICER*
_____
*Printed Name and Title of Signatory <u>or</u> Name of General
Partner if Signer is a Partnership*

BY:   _____
*Authorized Signatory and Title of General Partner <u>if</u> Above
Signer is a Partnership <u>Otherwise Blank</u>*

**ACCEPTED AND AGREED TO:**

_____

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates
named herein

EXHIBIT A
AUTHORIZED PERSONS


<u>Name</u>                                          <u>Specimen Signature</u>

## Customer Account Agreement Prime Brokerage

**LEHMAN BROTHERS INC.**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019

(212) 526-7000

| Title: MAVERICK NEUTRAL FUND, LTD. | Account (and Group) No.: |
|---|---|

### Please Read Carefully, Sign and Return

This agreement ("Agreement") sets forth the terms and conditions under which Lehman Brothers (as defined below) will open and maintain prime brokerage account(s) in your name and otherwise transact business with you as our customer. Throughout this Agreement references to "you" and "your" refer to you as our customer.

In consideration of Lehman Brothers opening a prime brokerage account for you, you agree to the following:

**1. PARTIES.** A prime brokerage account opened pursuant to this Agreement will be opened at Lehman Brothers Inc. ("LBI"). All transactions, agreements and contracts between you and Lehman Brothers have been entered into in consideration of each other. You hereby agree that the parties to this Agreement shall consist of you and Lehman Brothers Inc., Lehman Brothers International (Europe), Lehman Brothers Finance S.A., Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc. and any of their subsidiaries, parents, affiliates, divisions, officers, directors, agents and employees now existing or hereafter created, including successors and assigns (each such entity or person being referred to hereinafter as Lehman Brothers or a "Lehman Brothers Entity," unless otherwise specified, and all such entities or persons being collectively referred to hereinafter as "Lehman Brothers"). Unless you advise Lehman Brothers in writing to the contrary, you represent that you are not an affiliate (as defined in Rule 144(a)(1) under the U.S. Securities Act of 1933 as may be amended, modified or supplemented) of the issuer of any security held in any account opened hereby. You represent that you are not currently (i) an employee benefit plan (an "ERISA Plan") as defined in Section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or (ii) subject to ERISA or Section 4975 of the U.S. Internal Revenue Code of 1986, as amended (the "Code"), or materially similar provisions of any other law ("Similar Law"). You further represent that you are not a person acting on behalf of an ERISA Plan and that your assets do not constitute assets of an ERISA Plan. If you become subject to ERISA, the Code or Similar Law or otherwise become unable to make the representations set forth above, you agree to notify Lehman Brothers promptly in writing and to take such action as Lehman Brothers, in its sole and absolute discretion, deems necessary to comply with ERISA, the Code or Similar Law.

**2. APPLICABLE LAWS, RULES AND REGULATIONS; SEVERABILITY.** All transactions under this Agreement shall be subject to the applicable laws, rules and regulations of all U.S. and, if applicable, non-U.S. federal, state and self-regulatory authorities, including, but not limited to, the rules and regulations of the Board of Governors of the Federal Reserve System of the United States and the constitution, rules and customs of the exchange or market (and clearing house) where such transactions are executed or settled. In the event of any conflict between any such present or future laws, regulations and rules and the terms of this Agreement, the provision(s) of this Agreement so affected shall be deemed modified or superseded to conform to such laws, regulations and rules, but the remaining provisions of this Agreement shall remain in full force and effect.

**3. SECURITY INTEREST AND LIEN; REGISTRATION OF SECURITIES.** As security for the payment and performance of all of your obligations and liabilities from time to time outstanding to any Lehman Brothers Entity, whether under this Agreement or otherwise, each Lehman Brothers Entity shall have a continuing lien and first priority security interest in all your Assets, defined as (i) all property in which you now have or hereafter acquire an interest which is now or hereafter held by or through any Lehman Brothers Entity, including, but not limited to, any and all securities, accounts, instruments, documents, contract rights, contracts (including, but not limited to, open transactions, securities purchase or sale contracts, agreements to lend cash or securities, commodity contracts, futures contracts, forward contracts, repurchase agreements, swap agreements, contracts for

differences or any other agreement, without regard to the form of such agreement which may include oral agreements or agreements confirmed or signed by only one party to the agreement and agreements entered into or signed by a Lehman Brothers Entity on your behalf) (hereinafter "Contracts"), commercial paper and other securities, monies, deposit accounts and general intangibles (including all security entitlements in respect thereof, all income and profits thereon, all dividends, interest and other payments and distributions with respect thereto and all proceeds from any of the foregoing), and (ii) any and all rights, claims or causes of action you may now or hereafter have against any Lehman Brothers Entity. The continuing lien and first priority security interest shall apply to all such Assets, which from time to time may be deposited or credited to any account you may have with a Lehman Brothers Entity, be held or carried by a Lehman Brothers Entity for you, be due from a Lehman Brothers Entity to you, or be delivered to or in a Lehman Brothers Entity's possession or control for any purpose, including safekeeping. Such continuing lien and first priority security interest shall apply irrespective of whether or not Lehman Brothers has made advances in connection with such Assets, the number of accounts you have with Lehman Brothers or which particular Lehman Brothers Entity holds such Assets. You hereby acknowledge and agree that all such Assets held by or through any Lehman Brothers Entity are held as collateral by such Lehman Brothers Entity as agent and bailee for itself and all other Lehman Brothers Entities and, as such, each Lehman Brothers Entity shall comply with any orders or instructions originated by any other Lehman Brothers Entity with respect to or in connection with such collateral without your further consent. You and Lehman Brothers agree that all such Assets held in or credited to any account will be treated as financial assets under Article 8 of the Uniform Commercial Code as in effect in the State of New York (the "UCC") and that any account maintained by you with any Lehman Brothers Entity shall be a securities account under Article 8 of the UCC. In the event of a breach or default by you, a Lehman Brothers Entity shall have, in addition to the rights and remedies provided in this Agreement, all rights and remedies available to a secured creditor under the UCC and any other applicable law. You represent that all of the above-described Assets shall at all times be free and clear of all liens, claims and encumbrances of any nature other than the security interest created hereby. Assets consisting of securities shall be delivered in good deliverable form (or Lehman Brothers shall have the unrestricted power to place such securities in good deliverable form) in accordance with the requirements of the primary market for these securities. In addition, in order to satisfy any of your outstanding liabilities or obligations to any Lehman Brothers Entity, each Lehman Brothers Entity may, to the fullest extent permitted by law, at any time in its discretion and without prior notice to you, use, apply or transfer any and all securities or other property or Assets (including, without limitation, fully-paid securities and cash). You hereby agree that, except as otherwise specifically agreed in writing, each Lehman Brothers Entity may register and hold the securities and other property or Assets in your accounts in its name or the name of its designee. You shall execute such documents and take such other action as such Lehman Brothers Entity shall reasonably request in order to perfect its rights with respect to any of the Assets. In addition, you appoint Lehman Brothers as your attorney-in-fact to act on your behalf to sign, seal, execute and deliver all documents and do all such acts as may be required to realize upon any of Lehman Brothers' rights in the Assets.

**4.  BREACH, BANKRUPTCY OR DEFAULT.**  If you shall:

(i) breach, repudiate or default under this Agreement or any Contract with any Lehman Brothers Entity, whether heretofore or hereafter entered into;

(ii) make or repeat any misrepresentations in connection with this Agreement or any Contract with any Lehman Brothers Entity;

(iii) state that you will not perform any obligation to any Lehman Brothers Entity;

(iv) apply for, consent to or be the subject of an application or petition for the appointment of or the taking of possession by a receiver, custodian, trustee, liquidator or similar persons of yourself or of all of or a substantial part of your property;

(v) admit in writing your inability, or become generally unable, to pay your debts as such debts become due or give Lehman Brothers other grounds for insecurity, as determined by Lehman Brothers in its sole and absolute discretion (including, without limitation, death; mental incompetence; dissolution; the appointment of a receiver by or against you, any guarantor, co-signer or other party liable on or providing security for your obligations to any Lehman Brothers Entity or the attachment against your or such other party's account(s) with any Lehman Brothers Entity; or any indication of your refusal or inability to satisfy promptly any Margin Call (as defined below) or other obligation);

(vi) make a general assignment for the benefit of your creditors; or

(vii) file or be subject of the filing or entry of a petition or order for relief or be subject of the commencement of a proceeding regarding reorganization, bankruptcy, liquidation, dissolution or insolvency;

then, any such event shall constitute, at Lehman Brothers' election, a default by you under this Agreement and any or all Contracts you may then have with any Lehman Brothers Entity, whether heretofore or hereafter entered into. In the event of any such default, each Lehman Brothers Entity shall have all of the rights of a secured party upon default under the UCC and other applicable laws, rules and regulations, including, without limitation, the right, without prior notice to you, to sell any and all Assets in which you have an interest (including without limitation this Agreement and any Contract) held by or through any Lehman Brothers Entity (either individually or jointly with others), to buy any or all property which may have been sold short, to exercise any and all options and other rights, to accelerate, cancel, terminate, liquidate, close out and net the settlement payments and/or delivery obligations under any or all outstanding transactions and/or to purchase or sell any other securities or property to offset market risk, and to set off or offset any obligation owing by any Lehman Brothers Entity to you against any obligations owing by you to any Lehman Brothers Entity, after which you shall be liable to Lehman Brothers for any remaining deficiency, loss, costs or expenses incurred or sustained by Lehman Brothers in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as Lehman Brothers may in its sole discretion determine. At any such sale or purchase, any Lehman Brothers Entity may purchase or sell the property to or from itself or third parties free of any right of redemption and you shall remain liable to Lehman Brothers for any deficiency; it being understood that a prior tender, demand or call of any kind from Lehman Brothers, or prior notice from Lehman Brothers, of the time and place of such sale or purchase shall not be considered a waiver of Lehman Brothers' right to buy or sell any securities, commodities or other property or Asset held by Lehman Brothers, or which you may owe to Lehman Brothers. In addition, each Lehman Brothers Entity shall have the right, at any time and from time to time, to set off and otherwise apply any and all amounts owing by such Lehman Brothers Entity to you or for your account against any and all amounts now or hereafter owing by you to any Lehman Brothers Entity (including, without limitation, any indebtedness in your accounts), whether matured or unmatured, fixed, contingent or otherwise and irrespective of whether any Lehman Brothers Entity shall have made any demand therefor. Lehman Brothers agrees to notify you of any such set-off and application, provided, however, that the failure to give such notice shall not affect the validity of any such set-off and application. You agree that any obligation of a Lehman Brothers Entity to you shall be subject to there being no breach, repudiation, misrepresentation or default (however characterized) by you which is continuing under any Contract with a Lehman Brothers Entity. You and Lehman Brothers intend this Agreement to be a master netting agreement.

**5. ADEQUATE ASSURANCES.** Subject to, and not as a limitation of, the rights of Lehman Brothers under this Agreement, if at any time Lehman Brothers has reasonable grounds for insecurity with respect to your performance of any of your obligations, Lehman Brothers may demand, and you shall give, adequate assurance of due performance within 24 hours, or within any shorter period of time Lehman Brothers demands that is reasonable under the circumstances. The adequate assurance of performance that may be demanded by Lehman Brothers may include, but shall not be limited to, the delivery by you of additional property as collateral.

**6. EXECUTION FEES AND SERVICE CHARGES.** You understand that your account(s) will be charged brokerage commissions or mark-ups/mark-downs in connection with the execution of transactions ("Execution Fees") and may be charged certain other fees for custody and other services furnished to you ("Service Fees"). You further understand that Execution Fees may be changed from time to time upon prior written notice to you and that Service Fees may be changed from time to time upon prior written notice to you and, in each case, you agree to be bound thereby.

**7. AMOUNTS OWED; TRUTH-IN-LENDING.** You hereby acknowledge receipt of Lehman Brothers' Truth-in-Lending disclosure statement. You understand that interest will be charged on any amount you owe in your account(s) in accordance with the methods described in such statement or in any amendment or revision thereto which may be provided to you. Any amount due which is not paid at the close of an interest period will be added to the opening balance for the next interest period.

**8. COLLECTION AND OTHER ACCOUNT-RELATED COSTS.** You hereby agree to pay, on demand, all reasonable costs, liabilities and damages incurred by Lehman Brothers (including, without limitation, costs of

collection, attorneys' fees, court costs and other expenses) in connection with (i) enforcing its rights hereunder, (ii) any investigation, litigation or proceeding involving your account or any property therein (including, without limitation, claims to such property by third parties), (iii) your use of or access to any Lehman Brothers or third-party system or (iv) Lehman Brothers' acting in reliance upon instructions, including, but not limited to, instructions transmitted via electronic means, including facsimile or electronic mail, from you or your authorized agents (including investment managers or advisers). In each case and whether or not demand has been made therefor, you hereby authorize Lehman Brothers to charge your account(s) for any and all such costs, liabilities and damages, including, without limitation, those incurred in connection with the liquidation of any of your Assets.

**9. IMPARTIAL LOTTERY ALLOCATION.** You agree that, in the event Lehman Brothers holds on your behalf securities in its name, in the name of its designee or in bearer form which are called in part, you will participate in the impartial lottery allocation system for such called securities in accordance with the rules of The New York Stock Exchange, Inc. or any other appropriate self-regulatory organization. When any such call is favorable, no allocation will be made to any account in which, to the knowledge of Lehman Brothers, any officer, director or employee of Lehman Brothers has any financial interest until all other customers have been satisfied on an impartial lottery basis.

**10. SECURITIES EVENTS.** Lehman Brothers shall inform you if Lehman Brothers becomes aware of the occurrence or prospective occurrence of any of the following with respect to any securities in your account(s): conversions, subdivision or consolidation; redemption; a takeover offer; calls, including calls on partly-paid securities and published calls; a capitalization issue; rights issue; distribution of income in the form of securities; or a certificate which may at a future date be exchanged for securities or an entitlement to acquire securities. Subject to Section 19 herein, if Lehman Brothers receives notice from you that you wish to act on any of the events referenced in this section and such notice is received by Lehman Brothers within a reasonable time for Lehman Brothers to act on such event, Lehman Brothers will act in accordance with your wishes. You represent that you review all prospectuses and offering statements that you may receive and understand the risks inherent with your securities transactions, including any risks associated with the above-described securities events.

**11. VOTING RIGHTS.** If any right to vote arises with respect to securities in your account, you may inform Lehman Brothers that you wish to exercise such right as you specify. Subject to Section 19 hereof, if Lehman Brothers receives this notice within a reasonable time to act, it will act in accordance with your wishes. If Lehman Brothers does not receive such timely notice from you, it will use its discretion to decide whether and how to vote such securities.

**12. WAIVER, ASSIGNMENT AND NOTICES.** Neither Lehman Brothers' failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on its part shall constitute or be considered a waiver by Lehman Brothers of any of its rights or privileges hereunder. Any purported assignment of your rights and/or obligations hereunder without obtaining the prior written consent of an authorized representative of Lehman Brothers shall be null and void. Each Lehman Brothers Entity reserves the right to assign any of its rights or obligations hereunder or under any Contract to any other Lehman Brothers Entity without prior notice to you. Notices and other communications to you (including, without limitation, Margin Calls) that are sent by electronic means, including facsimile or electronic mail, sent by express delivery service or mailed, in each case to the address or number provided by you, shall, until the respective Lehman Brothers Entity has received notice in writing of a different address or number, be deemed to have been personally delivered to you. Margin Calls may also be communicated orally, without subsequent written confirmation.

**13. FREE CREDIT BALANCES.** You hereby authorize Lehman Brothers to use any free credit balance awaiting investment or reinvestment in your account(s) in accordance with all applicable rules and regulations and to pay interest thereon at such rate or rates and under such conditions as are established from time to time by Lehman Brothers for such account(s) and for the amounts of cash so used.

**14. RESTRICTIONS ON ACCOUNT.** You understand that Lehman Brothers, in its sole and absolute discretion, may restrict or prohibit trading of securities or other property in your account(s) and may terminate your account(s), and you shall nevertheless remain liable for all of your obligations to the Lehman Brothers Entities under this Agreement or any Contract. In the event that Lehman Brothers, in its sole and absolute discretion, determines to

4

impose such restrictions on your account(s) due to credit, margin, legal, regulatory, money laundering or other concerns, Lehman Brothers shall be under no obligation to provide you with prior notice of such restriction.

**15. CREDIT INFORMATION AND INVESTIGATION.** You authorize Lehman Brothers, in its discretion, at any time and from time to time, to make or obtain reports concerning your credit standing and business conduct (including, but not limited to, obtaining audited account statements, if such are available). You may make a written request for a description of the nature and scope of the reports made or obtained by Lehman Brothers and the same will be provided to you within a reasonable period of time.

**16. SHORT AND LONG SALES.** In placing any sell order for a short account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "short". You are required to and will comply with all applicable rules and regulations relating to short sale transactions. In placing any sell order for a long account, you will designate the order as such and hereby authorize Lehman Brothers to mark the order as being "long". The designation of a sell order as being for a long account shall constitute a representation by you that you own the security with respect to which the order has been placed, that such security is not restricted under Rules 144 and/or 145 under the U.S. Securities Act of 1933 (as may be amended, modified or supplemented) or any other applicable law, rule or regulation and, as such, may be sold without restriction in the open market and that, if Lehman Brothers does not have the security in its possession at the time you place the order, you shall deliver the security by settlement date in good deliverable form or pay to Lehman Brothers any losses and expenses it may incur or sustain as a result of your failure to make delivery on a timely basis.

**17. MARGIN ACCOUNTS.** You hereby agree to deposit and maintain such cash or collateral as margin in your margin accounts, if any, as Lehman Brothers may in its sole discretion require, and you agree to pay forthwith on demand any amount owing with respect to any of your margin accounts to satisfy Lehman Brothers' demand for such payment (a "Margin Call"). In addition, you further agree to deposit promptly and maintain such other collateral with Lehman Brothers as is required by any Contract you may have with any Lehman Brothers Entity. Upon your failure to make any such payment or deposit, or if at any time Lehman Brothers, in its sole discretion, deems it necessary for its protection, whether with or without prior demand, call or notice, Lehman Brothers shall be entitled to exercise all rights and remedies provided herein. No demands, calls, tenders or notices that Lehman Brothers may have made or given in the past in any one or more instances shall invalidate your waiver of the requirement to make or give the same in the future.

**18. SECURITIES CONTRACTS.** You acknowledge and agree that any positions in your account(s) shall be deemed "securities contracts" within the meaning of Sections 555 and 741(7) (as may be amended, modified or supplemented) of the U.S. Bankruptcy Code.

**19. CONSENT TO LOAN OR PLEDGE OF SECURITIES IN MARGIN ACCOUNTS.**

(a) Except as noted in subparagraph (b) below, within the limits of applicable law and regulations, you hereby authorize Lehman Brothers to lend either to itself or to others any securities held by Lehman Brothers in any of your accounts, to convey therewith all attendant rights of ownership (including voting rights and the right to transfer the securities to others), and to use all such property as collateral for its general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other property for any amounts due to Lehman Brothers thereon or for a greater sum, and Lehman Brothers shall have no obligation to retain a like amount of similar property in its possession and control. You hereby acknowledge that, as a result of such activities, Lehman Brothers may receive and retain certain benefits to which you will not be entitled. In certain circumstances, such loans, pledges, repledges, hypothecations or rehypothecations may limit, in whole or in part, your ability to exercise voting and other attendant rights of ownership with respect to the loaned or pledged securities. You agree to waive the right to vote, or to provide any consent or to take any similar action with respect to these securities in the event that the record date or deadline for such vote, consent or other action falls during the period of any such loan, pledge, repledge, hypothecation or rehypothecation.

(b) Unless otherwise agreed by Lehman Brothers and you, you will be entitled to receive all distributions, including, but not limited to, cash, stock dividends and interest payments, made on or in respect of any loaned, pledged, repledged, hypothecated or rehypothecated securities which are not otherwise received by you, to the full

extent you would be entitled if the securities had not been loaned, pledged, repledged, hypothecated or rehypothecated.

**20. OPTIONS POSITIONS.** You represent and warrant not to enter into any purchase or sale of equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions and risks as set out in the Characteristics and Risks of Standardized Options booklet and applicable supplements. You understand that short options positions are assigned on an automated random basis and may be assigned on the day written. You will notify Lehman Brothers of your intention to exercise listed options no later than two hours before the expiration time of the option (one hour in the case of an over-the-counter option). Failure to give such notice will constitute an abandonment of the option, in which case Lehman Brothers may, but shall be under no obligation to, exercise the option.

**21. PRIME BROKERAGE SERVICES.** Under the terms and conditions of this Agreement, LBI will act as a prime broker for you in accordance with the no-action letter of the Securities and Exchange Commission dated January 25, 1994, as such letter may be amended, modified or supplemented from time to time (the "SEC Letter") and the provisions set forth below:

(a)    LBI will, subject to the terms and conditions of this Agreement, accept for clearance and settlement trades executed on your behalf by such executing brokers as you may designate from time to time and who have received LBI's prior approval and who have previously executed an agreement with LBI setting forth the terms and conditions under which such executing brokers will be authorized to accept orders from you for settlement by LBI (the "Executing Brokerage Agreement").

(b)    LBI shall be responsible for settling trades executed on your behalf by your executing broker(s) and reported to LBI by you and your executing broker(s) provided that you have reported to LBI on trade date, by the time designated to you by LBI, all the details of such trades including, but not limited to, the contract amount, the security involved, the number of shares or the number of units and whether the transaction was a long or short sale or a purchase, and further provided that LBI has either affirmed or not "DK'd" ("indicated it does not know") and has not subsequently disaffirmed such trade. In the event that LBI determines not to settle a trade, LBI shall not have settlement responsibility for such trade and shall, instead, send you a cancellation notification to offset the notification sent to you under sub-paragraph (c) of this paragraph. You shall be solely responsible and liable to your executing broker(s) for settling such trade. In addition, LBI may be required to cease providing prime brokerage services to you in accordance with the Executing Brokerage Agreement.

(c)    On the day following each transaction, LBI shall send you a confirmation of each trade placed with an executing broker in accordance with the SEC Letter based upon the information you provided to LBI. Any confirmations issued by LBI as prime broker shall identify the executing broker and provide you with the information required by the SEC Letter. Confirmations of the execution of orders and other activity in your account(s) which have been provided or made available to you by 10:00 a.m. (New York time) on the business day immediately following the trade date shall be conclusive if not objected to by 2:00 p.m. (New York time) on such business day or, if such reports are provided or made available to you after 10:00 a.m. (New York time) on such business day, then such confirmations shall be conclusive if not objected to within four (4) hours after such confirmations have been provided or made available to you. Monthly statements shall be sent to you in accordance with the SEC Letter. Information contained in monthly statements of account, to the extent not included in an activity report, shall be conclusive if not objected to within ten (10) days after such statements have been provided or made available to you. LBI may send communications to your address of record or another address provided to LBI in writing. All communications sent to such address, whether by mail, facsimile, telegraph, messenger, electronic means or otherwise, shall be deemed to have been given to you personally as of the date and time sent, whether actually received or not.

(d)    In the event of: (i) the filing of a petition or other proceeding in bankruptcy, insolvency or for the appointment of a receiver by or against your executing broker, (ii) the termination of your executing broker's registration and the cessation of business by it as a broker-dealer, or (iii) your executing broker's failure, inability or refusal, for any reason whatsoever or for no reason at all, to settle a trade, and if LBI agrees to settle any trades executed on your behalf by such executing broker, regardless of whether LBI either affirmed or did not DK and did

6

not disaffirm such trades, you shall be solely responsible, and liable to LBI, for any losses arising out of or incurred in connection with LBI's agreement to settle such trades.

(e)   You shall maintain in your account with LBI such minimum net equity in cash or securities as LBI, in its sole discretion, may require from time to time (the "Lehman Brothers Net Equity Requirements"), which shall in no event be less than the minimum net equity required by the SEC Letter (the "SEC Net Equity Requirements"). In the event your account falls below the SEC Net Equity Requirements, you hereby authorize LBI to notify promptly all executing brokers with whom it has an Executing Brokerage Agreement on your behalf of such event. Moreover, if you fail to restore your account to compliance with the SEC Net Equity Requirements within the time specified in the SEC Letter, LBI shall, without notice to you: (i) notify all such executing brokers that LBI is no longer acting as your prime broker and (ii) either not affirm or "DK" ("indicate that it does not know") all prime brokerage transactions on your behalf with a trade date after the business day on which such notification was sent. In the event : (i) your account falls below the Lehman Brothers Net Equity Requirements, (ii) LBI determines in its sole discretion that there would not be enough cash in your account to settle such transactions or that a maintenance Margin Call may be required as a result of settling such transactions, or (iii) LBI determines in its sole discretion that the continuation of prime brokerage services to you presents an unacceptable risk to Lehman Brothers taking into consideration all the facts and circumstances, then LBI may disaffirm all your prime brokerage transactions and/or cease to act as your prime broker. In any such case, LBI shall send a cancellation notification to you, and you understand that you must settle outstanding trades directly with the relevant executing broker and that you authorize LBI to provide the executing broker with any information useful to settle such trades. You further agree that LBI will not be bound to make any investigation into the facts surrounding any transaction to which you are a party and that immediately upon notice to you and, if required, to the executing brokers, LBI may cease acting as your prime broker.

(f)   If you have instructed your executing broker(s) to send confirmations to you in care of LBI, as your prime broker, the confirmation sent by such executing broker is available to you promptly from LBI (once received), at no additional charge.

(g)   If your account is managed on a discretionary basis, you hereby acknowledge that your prime brokerage transactions may be aggregated with those of other accounts of your adviser, according to your adviser's instructions, for execution by your executing broker(s) in a single bulk trade and for settlement in bulk by LBI. You understand that no part of any transaction may be allocated to any other account where such other account's net equity is below the minimum levels established in the SEC Letter and that, should such a net equity deficiency occur in any such other account, LBI must disaffirm the entire transaction. In the event any trade is disaffirmed, as soon as practicable thereafter, LBI shall supply your executing broker(s) with the allocation of the bulk trade, based upon information provided by your adviser.

(h)   You hereby authorize LBI to disclose your name, address and tax I.D. number to your executing broker(s) to enable such executing broker to establish on its books an account for you to be used in the event transactions are disaffirmed by LBI.

(i)   Lehman Brothers will not be responsible or liable for any acts or omissions of any executing broker or its employees. You understand that Lehman Brothers does not act as investment adviser or solicit orders, that Lehman Brothers does not advise prime brokerage customers, perform any analysis, or make any judgment on any matters pertaining to the suitability of any order, or offer any opinion, judgment or other type of information pertaining to the nature, value, potential or suitability of any particular investment.

(j)   You agree to indemnify and hold Lehman Brothers harmless from any loss, claim or expense, including attorneys' fees, incurred by Lehman Brothers in connection with Lehman Brothers acting or declining to act as prime broker for you and to fully reimburse Lehman Brothers for any legal or other expenses (including the cost of any investigation and preparation) which Lehman Brothers may incur in connection with any claim, action, proceeding or investigation arising out of or in connection with this Agreement or any transactions hereunder.

(k) You represent and warrant that you are currently in compliance, and during the term of this Agreement will remain in compliance, with all applicable requirements of the SEC Letter, including, but not limited to, the requirement that you execute an agreement with each executing broker.

    (l)    The prime brokerage services hereunder shall be provided in a manner consistent with the SEC Letter.

**22. LEGALLY BINDING.** You hereby agree that this Agreement and all of the terms hereof shall be binding upon you and your estate, heirs, executors, administrators, personal representatives, successors and assigns. You further agree that all purchases and sales shall be for your account(s) in accordance with your oral or written instructions. You hereby waive any and all defenses that any oral instruction was not in writing as may be required by any applicable law, rule or regulation. With respect to any of your accounts maintained in connection with this Agreement, you hereby authorize Lehman Brothers to act and rely on any instructions (including, without limitation, instructions to transfer cash or securities, purchase or sell securities, enter into derivative or other transactions or borrow money or securities) received by Lehman Brothers from any of the persons listed on Exhibit A, as such list may be amended by you from time to time. In addition, you hereby authorize Lehman Brothers to act and rely on any instructions received by Lehman Brothers from any of your employees or agents (including any investment manager or adviser) that Lehman Brothers reasonably believes is authorized to so act on your behalf.

**23. AMENDMENT.** You agree that Lehman Brothers may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from Lehman Brothers thereafter, you will have indicated your acceptance of any such modification. If you do not accept such modification, you must notify Lehman Brothers in writing; your account may then be terminated by Lehman Brothers, after which you will remain liable to Lehman Brothers for all outstanding liabilities and obligations. Otherwise, this Agreement may not be modified absent a written instrument signed by an authorized representative of Lehman Brothers.

**24. GOVERNING LAW.** THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE CONTRACTUAL AND ALL OTHER RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF.

**25. ARBITRATION.** Any controversy (1) arising out of or relating to any of your accounts, (2) arising out of or relating to transactions of any kind or (3) arising out of or relating to this Agreement or any Contracts, or the breach thereof, shall be resolved by arbitration conducted only at the NYSE, NASD, or AMEX or any other self-regulatory organization ("SRO") of which the relevant Lehman Brothers Entity is a member that is subject to the jurisdiction of the Securities and Exchange Commission and pursuant to the arbitration procedures then in effect at any such exchange or SRO as you may elect. If you do not make such election by registered mail addressed to the Corporate Secretary at Lehman Brothers Inc. within 5 days after demand by Lehman Brothers that you make this election, then Lehman Brothers will have the right to elect the arbitration tribunal of its choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Any such award of the arbitrators shall be final. Nothing in this agreement shall be construed as consent by Lehman Brothers to any punitive damages. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, until:(i) the class certification is denied; (ii) the class action is decertified; or (iii) such person is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein. The foregoing agreement to arbitrate does not entitle you to obtain arbitration of claims that would be barred by the relevant statutes of limitations if such claims were brought in a court of competent jurisdiction. If, at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this agreement may assert the limitations as a bar to the arbitration either before the arbitrators or by applying to any court of competent jurisdiction. You expressly agree that any issues relating to the application of a statute of limitations or other time bar are referable to such court.

By entering into this Agreement, you represent that you understand that:

- Arbitration is final and binding on Lehman Brothers and you.

- The parties waive their right to seek remedies in court, including the right to a jury trial.

- Pre-arbitration discovery is generally more limited than and different from court proceedings.

- The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**26. WAIVER OF IMMUNITIES.** Each party irrevocably waives, to the fullest extent permitted by applicable law, with respect to itself and its revenues and assets, all immunity on the grounds of sovereignty or other similar grounds from (i) suit, (ii) jurisdiction of any court, (iii) arbitration, (iv) relief by way of arbitration award, injunction, order for specific performance or recovery of property, (v) attachment of its assets (whether before or after judgment) and (vi) execution or enforcement of any judgment or arbitration award and irrevocably agrees, to the fullest extent permitted by applicable law, that it will not claim any such immunity.

**27. TRANSFERS.** Lehman Brothers shall have the right to transfer Assets between any account in order to satisfy any of your obligations to Lehman Brothers. When giving instructions to transfer Assets from your accounts to any bank or other entity, you agree that all such requests will have been approved by an authorized signatory and you agree to provide Lehman Brothers with an accurate account number designating the account to receive such Assets. You agree to indemnify and hold Lehman Brothers harmless from and against all liabilities arising from the provision of an inaccurate account number or any other liabilities arising as a result of the transfer at your request.

**28. EXTRAORDINARY EVENTS.** You agree that Lehman Brothers will not be liable for any loss caused, directly or indirectly, by government restrictions, exchange or market rulings, suspension of trading, war (whether declared or undeclared), terrorist acts, insurrection, riots, fires, flooding, strikes, failure of utility services, accidents, adverse weather or other events of nature, including but not limited to earthquakes, hurricanes and tornadoes, or other conditions beyond Lehman Brothers' control. In the event that any communications network, data processing system, or computer system Lehman Brothers uses is rendered inoperable, Lehman Brothers will not be liable to you for any loss, liability, claim, damage or expense resulting, either directly or indirectly, therefrom.

**29. LIMITATION OF LIABILITY.** Lehman Brothers shall not be liable in connection with the execution, clearing, handling, purchasing or selling of securities, commodities or other property, or other action, except for gross negligence or willful misconduct on Lehman Brothers' part. You understand that certain securities may be held outside the United States by unaffiliated, foreign agent banks and depositories. Lehman Brothers will not be liable to you for any loss, liability or expense incurred by you in connection with these arrangements except to the extent that any such loss, liability or expense results from Lehman Brothers' gross negligence or willful misconduct. In no event will Lehman Brothers be liable for any special, indirect, incidental or consequential damages arising out of this Agreement.

**30. HEADINGS; COUNTERPARTS.** The headings of the provisions hereof are for ease of reference only and shall not affect the interpretation or application of this Agreement or in any way modify or qualify any of the rights provided for hereunder. This Agreement may be executed in counterparts, each of which shall be deemed an original.

**31. TELEPHONE CONVERSATIONS.** For the protection of both you and Lehman Brothers, and as a tool to correct misunderstandings, you hereby authorize Lehman Brothers, at Lehman Brothers' discretion and without prior notice to you, to monitor and/or record any or all telephone conversations or electronic communications between you and Lehman Brothers or any of Lehman Brothers' employees or agents. You acknowledge that Lehman Brothers may determine not to make or keep any of such recordings and that such determination shall not in any way affect any party's rights.

**32. CUMULATIVE RIGHTS; ENTIRE AGREEMENT.** The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or

9

protections. You hereby appoint Lehman Brothers as your agent and attorney-in-fact to take any action (including, but not limited to, the filing of financing statements) necessary or desirable to perfect and protect the security interest granted herein or to otherwise accomplish the purposes of this Agreement. Except as set forth above, this Agreement represents the entire agreement and understanding between you and Lehman Brothers concerning the subject matter hereof.

**33. CAPACITY TO CONTRACT; ANTI-MONEY LAUNDERING; AFFILIATIONS.** You represent that you have the capacity and authority to enter into this Agreement. You represent to the best of your knowledge that you do not maintain or transact business for or with nor will you introduce individuals or entities to Lehman Brothers that the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") has listed as "Specially Designated Nationals and Blocked Persons" nor with any client in an embargoed country as determined by OFAC. Furthermore, you represent that you have conducted thorough due diligence with respect to all of your clients, and you do not know or have any reason to suspect that the monies used to fund the account have been or will be derived from or related to any illegal activities, including but not limited to, money laundering activities. You agree to provide Lehman Brothers with any information that it may require in relation to compliance with any applicable money laundering regulations. Each representation or warranty made by you in this Agreement will be deemed to be repeated by you on each date on which a transaction occurs hereunder.

You represent that you are of legal age and that, unless you have notified Lehman Brothers to the contrary, neither you nor any member of your immediate family is: (i) an employee or member of any exchange, (ii) an employee or member of the National Association of Securities Dealers, Inc. or any of its affiliates, (iii) an individual or an employee of any corporation or firm engaged in the business of dealing, as broker or principal, in securities, options or futures or (iv) an employee of any bank, trust company or insurance company. If you are signing on behalf of others, you hereby represent that the persons(s) or entity(ies) on whose behalf you are signing is/are authorized to enter into this Agreement and that you are duly authorized to sign this Agreement and make the representations contained herein in the name and on behalf of such other person(s) or entity(ies) and you agree to indemnify and hold Lehman Brothers harmless from any claim or claims arising from your unauthorized execution of this Agreement on the behalf of such other person(s) or entity(ies). You hereby authorize Lehman Brothers to accept faxed copies of this or any other document or instruction as if it were the original and further to accept signatures on said faxes as if they were original.

10

*PLEASE COMPLETE THIS INFORMATION <u>AND</u> SIGN THE APPROPRIATE SPACE BELOW:*

**THIS AGREEMENT IS DATED AS OF**   <u>DECEMBER   28</u>   , 200*4*

<u>Maverick Neutral Fund, Ltd.</u>
*Name of Customer*

SOUTH   <u>5ᵗʰ FLOOR,  HARBOUR PLACE</u>
<u>CHURCH STREET</u>   <u>CAYMAN ISLANDS</u>
*Address*   *Country*

<u>GEORGE TOWN   GRAND CAYMAN</u>
*City, State*   *Zip Code + 4*

**BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT:**

**YOU HAVE RECEIVED A COPY OF THIS AGREEMENT AND AGREE TO ITS TERMS AND CONDITIONS.**

CUSTOMER
NAME:   <u>MAVERICK NEUTRAL FUND, LTD</u>
*Individual or Printed Name of Company*
BY: MAVERICK CAPITAL, LTD. AS INVESTMENT MANAGER
SIGNATURE:   <u>Sharyl Roberton</u>
*Signature of Authorized Person*

PRINT NAME:   <u>SHARYL ROBERTSON, CHIEF FINANCIAL OFFICER</u>
*Printed Name and Title of Signatory <u>or</u> Name of General
Partner if Signer is a Partnership*

BY:   _____
*Authorized Signatory and Title of General Partner <u>if</u> Above
Signer is a Partnership <u>Otherwise Blank</u>*

**ACCEPTED AND AGREED TO:**

<u>Wynn</u>

Lehman Brothers Inc., as signatory for itself and as agent for the affiliates
named herein

18

EXHIBIT A
AUTHORIZED PERSONS


Name                                          Specimen Signature