LEHMAN BROTHERS

# Lehman Brothers Holdings Inc., et al.
# Plan Administration Update

August 16, 2016



# Disclaimer

The information and data included in this Report are derived from sources available to Lehman Brothers Holdings Inc., in its capacity as Plan Administrator (the "Plan Administrator") under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737]. The Plan Administrator has prepared this presentation based on the information available to it at this time; however, such information is incomplete and may be materially deficient in certain respects. This report was prepared by the Plan Administrator for purposes of presenting the Court with a status of the Estates of Lehman Brothers Holdings Inc. and certain of its subsidiaries that commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Estates") as of the date of the presentation. In preparing this Report, the Plan Administrator made various estimates and assumptions based on information available to it. As such, this Report contains forward-looking statements that involve known and unknown risks, uncertainties and other factors which may cause the Chapter 11 Estates' actual results, performance or achievements to be materially different from any future results, performance or achievements expressed or implied by these forward-looking statements. All statements other than statements of historical fact are statements that could be deemed forward-looking statements, including all statements containing information regarding the intent, belief or current expectation of the Chapter 11 Estates. Accordingly, the financial information herein is subject to change and any such change may be material. The presentation is not meant to be relied upon by investors or others as a complete description of the state of the Chapter 11 Estates, their business, condition (financial or otherwise), results of operations, prospects, assets or liabilities. The information in this presentation will only be updated, including any corrections, in connection with future presentations to the Court on the state of the Chapter 11 Estates. The Plan Administrator reserves all rights to revise this report. All amounts are unaudited and subject to revision. This report is intended to be read in conjunction with the Plan Administrator's previous filings, including Monthly Operating Reports ("MORs") and other reports filed with the Securities and Exchange Commission and the Court.

# I. Progress Since Last Plan Administrator Update

- **As the Court observed "There Is No Lehman;" there is only the Plan Administrator, carrying out the mandate of the liquidation plan, as it continues its effort to maximize distributions to creditors by efficiently monetizing assets and fairly resolving disputed claims**

- **Since the Plan Administrator's last update (June 9, 2015), significant progress has been made to wind-down the Lehman estates - within the past year, the Plan Administrator has:**

    - Distributed approximately $10.2 billion (for a total $109.8 billion of cumulative distributions since emergence from bankruptcy)

    - Resolved $14.1 billion of filed claims (bringing the total to $139.0 billion of claims resolved since emergence from bankruptcy)

- **Nevertheless, this case remains a massive "mega-bankruptcy" case**

    - Approximately $10 billion of assets remain in the estate, including cash (much of which is reserved for disputed claims), real estate, interests in private companies, and recoveries from non-controlled former affiliates, net of future operating expenses and excluding potential litigation recoveries

    - Approximately 850 claims remain unresolved seeking over $54 billion, and the resolution of which will likely require substantial judicial resources and Court time

        - Big Banks: Disputes between Lehman and its large bank creditors (JPMorgan, Citibank and Credit Suisse) involving billions of dollars

        - Private Label RMBS: Claims represented by the 94,080 loan files submitted to the Plan Administrator by the Trustees for Lehman's private label trusts

- **Accordingly, the wind-down will likely continue to require significant Court resources to advance the process and provide final resolution and distributions to creditors**

# I. Progress Since Last Plan Administrator Update

◆ **Distributions: $10.2 billion in distributions since D7**



**Distributions**[1]

*In USD millions*

D8 - D10 Distributions: $10,159

| D1 - D7 | D8 10/1/15 | D9* 4/2/16 | D10 6/16/16 | Total |
|---|---|---|---|---|
| 99,602 | 5,777 | 1,561 | 2,822 | 109,761 |

D1 – D10 Distributions: $109,761

---

1. All distribution amounts sourced from individual published distribution notices

\* Pursuant to a final decree entered by the Bankruptcy Court (Docket No. 51920) the Estate closed the chapter 11 cases of 8 debtors on January 28, 2016 and made a final distribution on March 1, 2016 that included post-petition interest payments of $6.9 million (not included in D9 distribution numbers above)

# I. Progress Since Last Plan Administrator Update

◆ **Claims Resolution: $14.1 billion in filed claim amount has been resolved since D7**

**Filed Amount of Unresolved Claims**[1]



*In USD millions*

D8 - D10 Resolutions: $14,072

D1 - D10 Resolutions: $139,030

---

*1. Based on data from claims register maintained by Epiq Systems, Inc.*

# I. Progress Since Last Plan Administrator Update

- **As litigated matters moved forward, access to the Court enabled and accelerated the resolution of meaningful disputes**

- **Significant settlements since June 2015**:

  - **JPM Derivatives & Collateral cases:** The Plan Administrator settled two of its largest and most complex litigations, the collateral case and derivatives objection against JPM in exchange for $1.496 billion. Even though a *pro se* litigant delayed the consummation of the settlement until after the "D9" deadline, the Plan Administrator was able to distribute the settlement proceeds on June 16 ("D10"), after this Court approved an interim distribution

  - **Bracebridge:** Bracebridge's intervention in the Citibank ("Citi") litigation added complexity and expense. The Plan Administrator was able to resolve Bracebridge's claims, concluding one aspect of the Citi litigation

  - **LCOR Alexandria/Barclays:** After the Court (i) conducted a complete hearing on the defendants' motion to dismiss and (ii) encouraged settlement discussions pending publication of its decision, the Plan Administrator succeeded in resolving its claims and collecting the settlement proceeds

  - **Mizuho matters:** Mizuho International and Mizuho Securities asserted claims relating to over 450 derivatives trades and related collateral disputes. These matters were settled through business to business discussions prior to having to prosecute the Plan Administrator's adversary proceeding

  - **Moore Capital:** A settlement was achieved just weeks before the trial date over disputed set-off and allowance of interest resulting in a net receivable to the Lehman estate

  - **Stonehill:** The Plan Administrator originally faced 40 claims for $3.3 billion from 2 different Stonehill funds. After numerous pre-trial conferences and hearings, the matter was ultimately settled prior to trial

# I. Progress Since Last Plan Administrator Update

- **Significant settlements of disputes since June 2015**:  (cont'd)

  - **Syncora:**  The Syncora matter was an extremely complex dispute requiring substantial Court time and resources to resolve.  During the discovery process, and with a trial on the horizon, the matter was resolved in principle for Syncora to receive an allowed class 7 claim of $37 million

  - **Other Settled Matters:** Over the last year, the Plan Administrator has resolved eight additional Bankruptcy Court litigations involving claims that Lehman's derivatives' counterparties paid less than required by the applicable ISDA closeout provisions

# I. Progress Since Last Plan Administrator Update

- **Continued success with ADR Programs**

  - Highly successful Court-approved mandatory alternative dispute resolution ("ADR") and 2004 discovery procedures for derivatives matters

    - Since the inception of the protocol, settlements achieved with 564 counterparties resulting in recoveries of approximately $3.1 billion

    - Since the Plan Administrator's last update, settlements with 37 counterparties have resulted in recoveries of approximately $200 million

    - As of July 12, 2016, 98% of the Tier One ADRs that have been through the mediation process have been mutually resolved without judicial intervention

  - Within the past year, the Plan Administrator (with the Court's approval) established 2 new ADR protocols

    - Resolution of Private Label Trustees' RMBS claims

    - Resolution of the Plan Administrator's downstream claims against mortgage originators

  - Despite the historical success of these ADR programs, remaining ADR counterparties appear reluctant to settle

# II. Remaining Matters

- **Claims**
  - Although more than 67,000 claims have been resolved, approximately 850 claims seeking to recover allowed claims of more than $54 billion remain unresolved

- **Major Obstacles to Timely Resolution**
  - At this point, the remaining litigations are extremely fact intensive disputes often involving billions of dollars, that raise novel issues of law. Most of these disputes already have been subject to ADR
  - In view of the legal uncertainty and the extensiveness of the factual disputes, resolution of these matters may well require very significant Court time and resources
  - Counterparties routinely resist discovery resulting in serial discovery conferences and handicapping the Plan Administrator's ability to establish the fair value of claims
  - In addition, counterparties in certain remaining disputes have demonstrated an interest in prolonging final resolutions and have employed tactics to delay the litigation process

- **Remaining Disputed Matters Are in 4 Broad Categories**
  - Big Banks Litigation
  - RMBS/Mortgage-related
  - Derivatives/Valuation Disputes
  - Other Matters

# II. Remaining Matters[1,2]

◆ **30+ litigation matters in Bankruptcy Court, of which 16 have a litigation calendar**

Timeline: 2016 (Q2, Q3, Q4) – 2017 (Q1, Q2, Q3, Q4)

| | Deal | Case # | Schedule |
|---|---|---|---|
| 1 | Acts Retirement | 15-01430 | Discovery (11/17/16); Expert (1/26/17) |
| 2 | Citigroup | 12-01044 | Expert (10/26/16); Trial (Apr 2017) |
| 3 | Credit Suisse | 13-01676 | Discovery (5/30/17); Expert (12/2/17) |
| 4 | Daiwa | 15-01431 | Discovery (3/3/17); Expert (6/23/17); Trial (10/16/17) |
| 5 | FHLB Cincinnati | 13-01330 | Expert (8/23/16); Trial (11/30/16) |
| 6 | FHLB NY | 15-01110 | Discovery (8/12/16); Expert (1/27/17); Trial (4/23/17) |
| 7 | HSBC | 15-01412 | Discovery (2/15/17); Expert (11/15/17) |
| 8 | JPM - Deficiency[3] | 12-01874 | Discovery (11/28/16); Expert (6/2/17) |
| 9 | LHM Financial | 14-02393 | Discovery (8/15/16); Expert (1/13/17) |
| 10 | Longwood at Oakmont | 15-01299 | Discovery (8/31/16); Expert (11/11/16) |
| 11 | Merrill Lynch / LCH | 14-02030 | Discovery |
| 12 | Presbyterian SeniorCare | 15-01300 | Discovery (8/31/16); Expert (11/11/16) |
| 13 | QVT | N/A | Discovery (8/29/16); Expert (12/23/16); Trial (1/18/17) |
| 14 | Sequa | 15-01404 | Discovery (11/15/16); Expert (3/1/17) |
| 15 | SPV Avoidance | 10-03547 | Additional Motions to Dismiss; Potential Discovery and Trial |
| 16 | Winchester Medical | 14-02092 | Discovery (11/10/16); Expert (10/28/16); Trial (2/1/17) |

1. Includes only matters where a schedule has been ordered and is subject to change. Length of trial is based on estimates
2. Matters ranked alphabetically
3. The current JPM Deficiency Scheduling Order is out of date and a new Amended Scheduling Order will be filed shortly

# II.a. Big Banks Litigation

- Since the Plan Administrator's last update, the Plan Administrator resolved a massive dispute relating to JPM's derivatives claim and the collateral case pending before U.S. District Court Judge Sullivan

- One very significant matter remains unresolved between the Plan Administrator and JPM – the Deficiency Case

    - JPM's deficiency claim alleges that the tens of billions of dollars JPM held in LBI collateral was insufficient to satisfy its credit extension for clearing and required the provisional application of over $6 billion in LBHI cash collateral

    - The Plan Administrator is challenging the adequacy of the credit given to LBI for approximately 4,000 securities JPM held as collateral. This matter involves a massive discovery effort and will require a lengthy hearing if it cannot be resolved before then

    - We anticipate the trial would occur during the 1st quarter of 2018

- Citi and Credit Suisse derivatives-related claims remain unresolved

- Citi's trial is scheduled to take place on or about April 10, 2017

- Credit Suisse's trial is anticipated to occur no earlier than March 2018 – the Plan Administrator anticipates the Credit Suisse trial to be comparable to the Citi trial in size and scope

- These are highly complex matters that touch every aspect of the complicated web of dealings between Lehman and its biggest banks – they also include complex bankruptcy issues such as setoff and post-petition interest

- These 3 cases have taken, and are likely to continue to require, an enormous use of the Court's time and resources to resolve

# II.a. Big Banks Litigation

- **Lehman Brothers Holdings Inc., *et al*. v. Citibank, *et al*.** (Adv. Case No. 12-01044)

  – Citi demanded and received more than $2 billion from Lehman months prior to bankruptcy and filed claims against the estate relating to Citi's closeout of derivatives trades exceeding $2.2 billion – Citi seeks to set-off its claims against approximately $2 billion it holds of Lehman's money

  – The Plan Administrator contests the amount of Citi's claims, the validity of its right to set-off and its entitlement to post-petition interest

  – The litigation is now in the expert stage

  – The Plan Administrator seeks in the aggregate more than $2 billion from Citi

  – Based upon the Scheduling Order approved by the Bankruptcy Court, the case is scheduled for trial in April 2017

- **Lehman Brothers Holdings Inc. v. Credit Suisse, *et al*.** (Adv. Case No. 13-01676)

  – Credit Suisse filed claims totaling approximately $1.2 billion relating to its nearly 30,000 derivatives trades with Lehman; and also filed corresponding guarantee claims

  – The Plan Administrator contends that Credit Suisse failed to properly determine the close out amounts as of the Early Termination Date and filed inflated claims. The Plan Administrator seeks to significantly reduce Credit Suisse's claims as well as to recover $150 million from Credit Suisse

  – The case is still in the early stages of discovery

# II.b. RMBS/Mortgage-related

- **Private Label Trust RMBS Claims**

  - The Protocol proceeded as planned with the RMBS Trustees' final delivery of 94,080 loan files

  - Since the Plan Administrator's last presentation to the Court:

    - Step 1 of the Protocol is complete (**Trustee loan review and claim submission**) with the review by the Trustees of 210,928 loans and the submission to the Plan Administrator of 94,080 loans which the Trustees allege support recoverable claims

    - Step 2 of the Protocol (**Plan Administrator review of claims and acceptance or rebuttal**) is ongoing. The Plan Administrator has reviewed 63,004 loan files

    - Step 3 of the Protocol (**business to business loan level negotiations with trustee expert**) is ongoing

  - Approximately 30,000 loan reviews are on hold pending additional documentation from the Trustees. The information provided did not comply with the protocol order and was insufficient to evaluate the claims

  - The Plan Administrator has approved 1,053 loan files which support an aggregate claim for $217 million and rejected 61,951 loan files supporting an aggregate claim of $12.4 billion

  - In view of the highly fact-specific nature of "put-back" claims, adjudication of the tens of thousands of disputed loan files currently are expected to require a significant amount of Court time and resources

# II.b. RMBS/Mortgage-related

- **Downstream Claims Against Mortgage Originators**

  - In June 2014, the Court established an ADR protocol to enable the resolution of claims without the need for judicial intervention

  - Nonetheless, these matters will likely require further significant Court time and attention

  - Notably, many mortgage originators have refused to participate in the ADR

  - The Plan Administrator filed an Omnibus Complaint in this Court against approximately 140 mortgage loan sellers in order to preserve its indemnification claims. The Plan Administrator has proposed a Case Management Order ("CMO") for the case. The parties are now conferring in hopes of reaching a consensual CMO

  - Upon resolution of the Private Label RMBS Claims, the estate will obtain rights to pursue even more loan files than those in the current downstream process

# II.c. Derivatives Disputes

- In many cases, the Plan Administrator is facing counterparties who it believes have employed a variety of methods to inflate their claims and thereby profit from the bankruptcy

    - Counterparties submit loss calculations that generate claims in an amount far in excess of their actual loss

    - Counterparties calculate close-outs applying a date and time that maximizes their loss regardless of the date they chose to terminate or how they actually managed their portfolios

    - Counterparties make claims based on hypothetical loss calculations even though trades were replaced, in an effort to withhold proceeds

    - Counterparties that net-out offsetting trades and related risks in the ordinary course of business failed to net risks in calculating their claims

- There are 18 pending Adversary Proceedings/Objections involving derivatives counterparties - the Plan Administrator expects to initiate litigation on approximately 5 additional matters

- Each derivatives dispute involves millions of dollars and is factually unique, involving anywhere between one terminated derivatives transaction to tens of thousands of transactions

- Another area of derivatives litigation relates to Special Purpose Vehicles – many of the remaining disputes are subject to the ADR protocol established by the Court

    - The Plan Administrators have resolved its disputes with approximately 100 of the original 200 defendants in the SPV Protocol

    - Residual SPV litigation involves complex issues to be decided by the Court and may continue to require significant Court time and resources

# II.c. Derivatives Disputes

|   | **Debtor** | **Adversary (SPV Actions)** | **Case #** | **Stage** |
|---|---|---|---|---|
| 1 | LBSF [1] | U.S. Bank National Association (Non Distributed SPV) | 10-03542 | Stayed, Mediation |
| 2 | LBSF | The Bank of New York Mellon Corp. (Non Distributed SPV) | 10-03545 | Stayed, Mediation |
| 3 | LBSF | Bank of America National Association (Distributed SPV) | 10-03547 | Motion to Dismiss |
|   | **Debtor** | **Adversary (Other Derivatives Proceedings)** | **Case #** | **Stage** |
| 4 | LBHI | Federal Home Loan Bank of Cincinnati | 13-01330 | Experts |
| 5 | LBHI [2] | Unipol Banca S.p.A. | 14-01021 | Stayed, Mediation |
| 6 | LBHI | Merrill Lynch Capital Services, Inc. | 14-02030 | Discovery |
| 7 | LBDP [3] | U.S. Bank Trust National Association | 14-02234 | Stayed, Mediation |
| 8 | LBHI | Granite Finance Limited | 14-02236 | Stayed, Mediation |
| 9 | LBHI | Saint Louis University | 14-02443 | Discovery |
| 10 | LBHI | Federal Home Loan Bank of New York | 15-01110 | Discovery |
| 11 | LBHI | Longwood at Oakmont | 15-01299 | Discovery |
| 12 | LBHI | Presbyterian SeniorCare | 15-01300 | Discovery |
| 13 | LBHI | Sequa Corporation | 15-01404 | Discovery |
| 14 | LBHI | HSBC | 15-01412 | Discovery |
| 15 | LBHI | Acts Retirement-Life Communities, Inc. | 15-01430 | Discovery |
| 16 | LBHI | Daiwa Securities Capital Markets Co. Ltd. | 15-01431 | Discovery |
| 17 | LBHI | Tobacco Settlement Ohio | 16-01178 | Complaint Filed |
| 18 | LBHI | QVT | N/A | Discovery |

1. *LBSF: Lehman Brothers Special Financing Inc.*
2. *LBHI: Lehman Brothers Holdings Inc.*
3. *LBDP: Lehman Brothers Derivative Products Inc.*

# II.d. Selected Additional Matters

- **LBIE Guarantee Claims**

  - Since the Plan Administrator's last update, it has made significant progress in connection with LBIE guarantee claims

    - On July 15, 2015, the Plan Administrator requested that the Court estimate at zero Lehman's liability for its guarantee of certain primary obligations of Lehman Brothers International Europe ("LBIE")

    - The basis of the motion was that there is more than sufficient value in the LBIE estate to make distributions that will be more than enough to discharge LBHI's alleged guarantee liability

    - A significant number of creditors agreed and released LBHI's alleged guarantee liability.  Consequently, the Court disallowed over 900 claims with claims reserve of $3 billion resulting in a release of over $200 million of cash reserves to creditors

    - A smaller group of creditors generally agreed with the Plan Administrator's position, but were unwilling to agree to the disallowance of claims until the LBIE estate distributed at least an additional 15% (of sterling total value) on claims

    - Finally, as usual, there are creditors with whom resolution will be more difficult

      - In particular, there are creditors whose claims have been set in the LBIE case, either by agreement or Court order, but who nevertheless believe they are entitled to more than the allowed amount in the affiliate receivership case.  Resolution of these claims likely will require a trial, or motions, in this Court

# II.d. Selected Additional Matters

- **Progress has been made facilitating the resolution of foreign affiliate receiverships**

  - The Plan Administrator reached a global settlement with our Australian affiliate, resolving a long-running dispute over entitlement to certain assets and various inter-company balances

    - This settlement paved the way for hundreds of millions of dollars in distributions to local and foreign creditors from a number of Australian entities and avoided the need for continued litigation in each jurisdiction

  - Certain LBHI guarantees of insolvent Non-Controlled Affiliate obligations also remain unresolved – e.g., LBF

    - Resolution of these claims will be required, notwithstanding liquidation and allowance in a foreign jurisdiction

    - This too will require significant Court time and attention

# III. Conclusion

- The Plan Administrator has made significant progress in asset recovery and claims resolution and has delivered substantial distributions to date

- However, the remaining portfolio of disputed claims is, for the most part, held by the most contentious of the estate's immense creditor constituency.  While settlement discussions constantly occur, these matters include a significant number of those least likely to be resolved without some of the Court's time and attention

- The Plan Administrator maintains a robust and experienced litigation platform and is prepared to strike the necessary balance considering the value of fair compromise, the cost of litigation, the benefit received by the estate's creditors from timely resolution and the goal of ensuring that all creditors are treated fairly

- Remaining dispute resolution will continue to require a very significant amount of Court time, resources and attention