**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

BY EMAIL

**Richard L. Levine**
+1 (212) 310-8286
richard.levine@weil.com

August 15, 2016

Honorable Shelley C. Chapman
United States Bankruptcy Judge, Southern District of New York
One Bowling Green, Rm. 623
New York, NY 10004-1408
scc.chambers@nysb.uscourts.gov

Re: *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (SCC); *Claim Number 29606 (SRM)*

Dear Judge Chapman:

We submit this letter on behalf of Lehman Brothers Holdings Inc. ("LBHI") in response to questions raised by Your Honor at the July 28, 2016 sufficiency hearing (the "Hearing") regarding LBHI's objection [ECF No. 53215] (the "Objection") to Claim Number 29606 (the "Claim") filed by SRM Global Master Fund Ltd Partnership ("SRM").[1]

First, as we previously informed Chambers, there was not an agreement by each party to pursue mediation at this time.

Second, Your Honor requested that SRM provide clarity on the precise amount SRM is seeking. SRM has informed LBHI that SRM is seeking over $264 million for its Segregate Assets Claim, more than the $97.7 million asserted in SRM's Claim. SRM also has informed LBHI that SRM is not seeking amounts in excess of those listed in the Claim for either the Forced Sales Claim ($48.3 million) or the Lost Opportunities Claim ($100.0 million).

As Your Honor is aware, the Plan Administrator believes that SRM is bound by the amounts stated in its Claim absent Court approval of an amendment on a timely motion.[2] No motion to amend the Claim has been made. Accordingly, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, the Court can and should rule that the Segregated Assets Claim has been satisfied in full—without reaching any other arguments raised by the Plan Administrator in support of the expungement of such claim (*e.g.*, the waiver of reliance on any guaranty, the valuation of the Segregated Assets Claim pursuant to Section 562, and the PBA's limitations on liability and damages).

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

[2] *See* Confirmation Order ¶ 86 ("No Amendments to Proofs of Claim. After the Effective Date, other than a proof of claim relating to an executory contract or unexpired lease that is rejected pursuant to the Plan, a proof of claim relating to a prepetition Claim may not be filed or amended without the authority of the Court").


Moreover, the recent contention by SRM that its Segregated Assets Claim was unliquidated or contingent is contrary to the law on guarantees and the face of the Claim. Indeed, nowhere in the Claim does SRM allege that the amount sought was contingent, unliquidated, or anything more than $97.7 million.

We also believe that any belated motion by SRM to amend its Segregated Assets Claim would be futile, as such claim should be disallowed on its merits for the reasons stated in the Objection. Further, nearly eight years after the commencement of these chapter 11 cases, nearly seven years after the deadline to file proofs of claim, over four years since the effective date of the Debtors' chapter 11 plan, and ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ an increase in the amount of the Segregated Assets Claim by approximately $166 million, to a level which is over two-and-a-half times the originally claimed amount, would be inequitable.[3]

Third, Your Honor asked the parties about an English case cited by SRM in its Response to the Objection (Response ¶ 86) in support of its Lost Opportunities Claim. In that case, *Aerospace Publishing Ltd v Thames Water Utilities Ltd* [2007] EWCA Civ 3, [2007] Bus LR 726, the plaintiff was a business that was flooded as a result of a burst pipe. In addition to compensation for damaged property, the plaintiff sought to recover the wages it had paid to its workers to clean up and restore the flooded area. The defendants objected that plaintiff would have been paying wages to their workers regardless of whether or not the flood had occurred, so such wages were not compensable as damages. The court, however, granted damages to the plaintiff in an amount equal to the wages paid to those workers during the cleanup, finding that "it is reasonable for the court to infer from the disruption that, had their time not been thus diverted, staff would have applied it to activities which would, directly or indirectly, have generated revenue for the claimant in an amount at least equal to the costs of employing them during that time." Importantly, and in direct contrast to SRM's Lost Opportunities Claim, the plaintiffs in that case did not seek, nor did the court consider or grant, damages based on speculation about the hypothetical revenue or profits the workers might have generated had their time not been diverted.

Fourth, with regards to SRM's ISDA Claim (which was not a subject of the Objection), the Plan Administrator's valuation team currently is analyzing the claimed amount. But assuming, arguendo, that the Plan Administrator accepts SRM's valuation or determines it should be some lesser amount, 

---

[3] *See In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 684, 695 (Bankr. S.D.N.Y. 1993) (disallowing amendment to increase claim from $2,979.05 to $3,500,000 after substantial delay); *Integrated Res., Inc. v. Ameritrust Co. N.A.* (*In re Integrated Res., Inc.*), 157 B.R. 66, 66 (S.D.N.Y. 1993) ("To be within the scope of a permissible amendment, the second claim should not only be of the same nature as the first but also *reasonably* within the amount to which the first claim provided notice"); *see also In re PT-1 Commc'ns., Inc.*, 292 B.R. 482, 487 (E.D.N.Y. 2003) (disallowing amendment to quadruple amount of claim from $565,653.90 to $2,977,903.94).

Honorable Shelley C. Chapman  
August 15, 2016  
Page 3

**Weil, Gotshal & Manges LLP**



In any event, ███████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, *Chevron Corp. v. Donziger*, 2013 WL 4045326, at *4 (S.D.N.Y. Aug. 9, 2013) (the sword and shield doctrine prohibits a litigant from using privilege "as a sword and a shield by selectively using [] privileged documents to prove a point but then invoking [] privilege to prevent an opponent from challenging the assertion").

We thus ask the Court to require SRM to either produce ███████████████████ or withdraw the ISDA Claim.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications").

Respectfully submitted,

*/s/ Richard L. Levine*

Richard L. Levine

cc:  Gregory M. Starner, Esq. (via email and ECF)  
David G. Hille, Esq. (via email and ECF)  
Garrett A. Fail, Esq. (Weil)

WEIL:\95820001\8\58399.0011