Hearing Date:  September 20, 2016 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  September 13, 2016 at 4:00 p.m. (Prevailing Eastern Time)

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP | ROLLIN BRASWELL FISHER LLC |
| 787 Seventh Avenue | 8350 East Crescent Parkway, Suite 100 |
| New York, New York 10019 | Greenwood Village, Colorado 80111 |
| Telephone: (212) 728-8000 | Telephone: (303) 945-7415 |
| Facsimile: (212) 728-9000 | Facsimile: (303) 974-7468 |
| Paul V. Shalhoub | Michael A. Rollin |
| Todd G. Cosenza | |
| Benjamin P. McCallen | |

*Attorneys for Lehman Brothers Holdings Inc.*
*and Structured Asset Securities Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
               :

In re:              :      **Chapter 11 Case No.**
             :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :     **08-13555 (SCC)**
             :

        **Debtors.**     :     **(Jointly Administered)**
             :

--------------------------------------------------------------x
             :

**LEHMAN BROTHERS HOLDINGS INC. AND**  :    **Adv. No. 15-01112 (SCC)**
**STRUCTURED ASSET SECURITIES**      :
**CORPORATION,**           :
             :

        **Plaintiffs,**    :
             :

    - against -        :
             :

**U.S. BANK NATIONAL ASSOCIATION, AS**  :
**INDENTURE TRUSTEE FOR GREENPOINT**  :
**MORTGAGE FUNDING TRUST 2006-HE1,**  :
**SYNCORA GUARANTEE INC., AND**      :
**GREENPOINT MORTGAGE FUNDING, INC.,**  :
             :

        **Defendants.**   :

--------------------------------------------------------------x

**NOTICE OF MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE AND SECTION 105(A) OF THE BANKRUPTCY CODE**
**FOR APPROVAL OF SETTLEMENT AGREEMENT AMONG LEHMAN BROTHERS**
**HOLDINGS INC., STRUCTURED ASSET SECURITIES CORPORATION, AND**
**U.S. BANK NATIONAL ASSOCIATION, IN CERTAIN OF ITS CAPACITIES**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated August 26, 2016 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, on behalf of itself and Structured Asset Securities Corporation ("SASCO" and, together with LBHI, "Lehman"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code for approval of a settlement agreement (the "Settlement Agreement") among LBHI, SASCO, and U.S. Bank National Association, as indenture trustee under an Indenture dated August 1, 2006, with GreenPoint Mortgage Funding Trust 2006-HE1 and in the other capacities identified in the Settlement Agreement (collectively, in all such capacities, the "Indenture Trustee"), all as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **September 20, 2016, at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be made in writing; shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York; shall set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers); and shall be served upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn.: Paul V. Shalhoub and Todd G. Cosenza) and Rollin Braswell Fisher LLC, 8350 East Crescent Parkway, Suite 100, Greenwood Village, Colorado 80111 (Attn.: Michael Rollin), attorneys for LBHI and SASCO; (iii) Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022 (Attn.: Constance M. Boland) and Chapman and Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603 (Attn.: Franklin H. Top), attorneys for the Indenture Trustee; and (iv) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn.: William K. Harrington, Esq., Susan Golden, Esq. and Andrea B. Schwartz, Esq.), so as to be so filed and received by no later than **September 13, 2016, at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only parties who have filed a timely objection will be heard at the Hearing.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

Dated:  August 26, 2016
        New York, New York

/s/ Todd G. Cosenza
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc. and Structured Asset Securities Corporation*

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-9000
Paul V. Shalhoub
Todd G. Cosenza
Benjamin P. McCallen

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Lehman Brothers Holdings Inc.*
*and Structured Asset Securities Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                 :
In re:                                                           :    Chapter 11 Case No.
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    **08-13555 (SCC)**
                                                                 :
                    Debtors.                                     :    **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC. AND**   :    **Adv. No. 15-01112 (SCC)**
**STRUCTURED ASSET SECURITIES**              :
**CORPORATION,**                                          :
                                                                 :
                    **Plaintiffs,**                          :
                                                                 :
          - against -                                        :
                                                                 :
**U.S. BANK NATIONAL ASSOCIATION, AS**    :
**INDENTURE TRUSTEE FOR GREENPOINT**    :
**MORTGAGE FUNDING TRUST 2006-HE1,**     :
**SYNCORA GUARANTEE INC., AND**            :
**GREENPOINT MORTGAGE FUNDING, INC.,**  :
                                                                 :
                    **Defendants.**                          :
-----------------------------------------------------------------x

**MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND SECTION 105(A) OF THE BANKRUPTCY CODE FOR
APPROVAL OF SETTLEMENT AGREEMENT AMONG LEHMAN BROTHERS
HOLDINGS INC., STRUCTURED ASSET SECURITIES CORPORATION, AND
U.S. BANK NATIONAL ASSOCIATION, IN CERTAIN OF ITS CAPACITIES**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

PROCEDURAL BACKGROUND .................................................................................... 4

JURISDICTION .............................................................................................................. 9

THE SETTLEMENT AGREEMENT .............................................................................. 9

RELIEF REQUESTED .................................................................................................. 11

NOTICE ........................................................................................................................ 14

CONCLUSION .............................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*In re Ashford Hotels, Ltd.*,
        226 B.R. 797 (Bankr. S.D.N.Y. 1998) ............................................................................13

*In re Best Prods. Co.*,
        168 B.R. 35 (Bankr. S.D.N.Y. 1994) ..............................................................................13

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
        699 F.2d 599 (2d Cir. 1983) ......................................................................................12, 13

*In re Hibbard Brown & Co.*,
        217 B.R. 41 (Bankr. S.D.N.Y. 1998) ..............................................................................13

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
        478 F.3d 452 (2d Cir. 2007) ............................................................................................13

*Nellis v. Shugrue*,
        165 B.R. 115 (S.D.N.Y. 1994) ........................................................................................13

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
        390 U.S. 414 (1968) .........................................................................................................13

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
        134 B.R. 499 (Bankr. S.D.N.Y. 1991) ......................................................................12, 13

*In re Spielfogel*,
        211 B.R. 133 (Bankr. E.D.N.Y. 1997) ............................................................................12

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................................12

Fed. R. Bankr. P. 9019(a) ....................................................................................................12

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and Structured Asset Securities Corporation ("SASCO" and, together with LBHI, "Lehman"), files this motion (the "Motion") and respectfully represents:

### PRELIMINARY STATEMENT

1.    By this Motion, the Plan Administrator, on behalf of LBHI and SASCO, seeks approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code ("the Bankruptcy Code"), of a settlement, the terms of which are reflected in a settlement agreement (the "Settlement Agreement," attached hereto as Exhibit 1), and requests that such approval be immediately effective and enforceable.  The Settlement Agreement provides for the resolution of all disputes between the parties thereto—namely, LBHI, SASCO, and U.S. Bank National Association, as indenture trustee and in the other capacities identified in the Settlement Agreement (the "Indenture Trustee")—relating to GreenPoint Mortgage Funding Trust 2006-HE1 (the "Trust"), including but not limited to (i) the 2006-HE-1 Claims and Additional 2006-HE1 Claims that the Indenture Trustee asserted against LBHI and SASCO in the U.S. Bank Claims and the Additional U.S. Bank Claims (each as defined below) and (ii) the claims pertaining to the Trust that LBHI and SASCO asserted against the Indenture Trustee in *Lehman Brothers Holdings Inc. et al. v. U.S. Bank N.A., et al.*, 15-AP-01112 (Bankr. S.D.N.Y.).  The Plan Administrator has determined, in the exercise of its sound business judgment, that the Settlement Agreement is in the best interests of LBHI and SASCO, their estates, and their

creditors.  Entry of an order approving and authorizing the Settlement Agreement substantially in the form of the proposed order annexed to the Settlement Agreement is a condition precedent to the effectiveness of the Settlement Agreement.

2.     As explained more fully below, simultaneous with the execution of the Settlement Agreement, LBHI and SASCO also independently entered into a settlement agreement with Syncora Guarantee Inc. ("Syncora"), pursuant to which LBHI, SASCO and Syncora have resolved all claims between them (the "Syncora Settlement Agreement").  As part of the Syncora Settlement Agreement, among other things, Syncora's claim will be reduced and allowed as a Class 7 Allowed Claim in the amount of $37 million.  Because it is within the Plan Administrator's authority to approve the Syncora Settlement Agreement pursuant to the Order Modifying Certain Existing Claims Orders, entered on July 18, 2012, this Motion does not seek approval of the Syncora Settlement Agreement.[1]

### FACTUAL BACKGROUND

3.     In 2006, LBHI acted as sponsor for a securitization (the "2006-HE1 Securitization") of more than 29,000 loans (the "Loans") that had been originated by GreenPoint Mortgage Funding, Inc. ("GreenPoint").[2]  This securitization was effected through a series of agreements (the "Operative Documents"), pursuant to which the Loans and certain rights and

---

[1]   It would also be within the Plan Administrator's authority to approve the Settlement Agreement that is the subject of this Motion.  However, the Indenture Trustee has made approval of the Settlement Agreement by this Court a requirement for the effectiveness of the Settlement Agreement.  The Syncora Settlement Agreement shall also become effective upon this Court's entry of a final, non-appealable order approving LBHI and SASCO's Settlement Agreement with the Indenture Trustee.

[2]   The 2006-HE1 Securitization also involved the securitization of a small number of loans originated by Impac Funding Corporation ("Impac").

remedies related to them were transferred to SASCO and then assigned to the Trust.[3]  The Trust, in turn, issued $500 million in Class Ac Notes and $1,331,838,000 in Class Ax Notes.

4.    The Operative Documents—and the representations, warranties, and covenants they contain—allocated the risks of the 2006-HE1 Securitization among the parties to the transaction.  As relevant here, GreenPoint made extensive representations and warranties regarding the Loans, which covered each Loan from its origination through July 28, 2006 (collectively, GreenPoint's "Section 7 Representations and Warranties").  LBHI (i) remade GreenPoint's Section 7 Representations and Warranties for the period July 29, 2006, through August 28, 2006, and (ii) made six additional representations and warranties that concerned, among other things, the Loans' material compliance with applicable law at their origination and whether mortgagors would make required payments during an "Early Payment Default Period."[4]

5.    CIFG Assurance North America, Inc. ("CIFG," now known as Assured Guaranty Corp. ("Assured"), CIFG's successor by merger) issued a financial guaranty insurance policy, pursuant to which it unconditionally and irrevocably guaranteed to the Indenture Trustee

---

[3]    For purposes of the Settlement Agreement, "Operative Documents" shall mean (i) the Flow Revolving Credit Loan Purchase and Warranties Agreement between GMAC Mortgage Corporation ("GMAC") and GreenPoint, dated as of September 26, 2005; (ii) the Flow Mortgage Loan Purchase and Warranties Agreement between GMAC and GreenPoint, dated as of July 26, 2006; (iii) any purchase price and terms letter concerning any of the Loans; (iv) the several Assignment, Assumption and Recognition Agreements (each an "AAR") between GMAC, Lehman Brothers Bank, FSB ("Lehman Bank") and GreenPoint, including, without limitation, those AARs entered into as of July 28, 2006; (v) the Assignment and Assumption Agreement between Lehman Bank and LBHI, dated as of August 1, 2006; (vi) the Assignment and Assumption Agreement between Aurora Commercial Corp. (as successor in interest to Aurora Bank, FSB, formerly known as Lehman Bank) and LBHI, dated as of May 11, 2015; (vii) the Mortgage Loan Sale and Assignment Agreement between LBHI and SASCO, dated as of August 1, 2006 (the "MLSAA"); (viii) the Transfer and Servicing Agreement between the Trust, SASCO, GMAC, and the Indenture Trustee, dated as of August 1, 2006 ("Transfer & Servicing Agreement"); (ix) the Insurance and Indemnity Agreement between Syncora, LBHI, SASCO, the Trust, GMAC, and the Indenture Trustee, dated as of August 28, 2006; (x) the Indenture; (xi) the Insurance and Indemnity Agreement between Assured, LBHI and SASCO, dated as of August 21, 2006; and (xii) the Custodial Agreement among the Trust, the Indenture Trustee and the Custodian, dated as of August 1, 2006.

[4]    LBHI also remade GreenPoint's Section 7 Representations and Warranties for each Loan from its origination through July 28, 2006, but the sole remedy for any breach of GreenPoint and LBHI's identical representations and warranties for this time period lies against GreenPoint.

the full and complete payment of scheduled payments to holders of Class Ac Notes. XL Capital

Assurance Inc. ("XLCA," now known as Syncora) did the same for the benefit of the holders of

Class Ax Notes. In other words, if, for any reason, the Trust lacked the funds to make a payment

owed to noteholders, the insurers would cover the shortfall in accordance with their policies.

6.      After the securitization, many of the Loans went into payment default.

These payment defaults caused a considerable decline in the Trust's cash flows, and ultimately a

shortfall in funds available for payments of principal and interest to the noteholders. This, in

turn, triggered insurers' obligations under their financial guaranty insurance policies.

7.      On February 5, 2009, the Indenture Trustee, Syncora, and CIFG

commenced an action against GreenPoint in New York State Supreme Court styled *U.S. Bank*

*Nat'l Ass'n. v. GreenPoint Mortg. Funding, Inc.*, Index No. 600352/2009, (the "State Court

Action"). Each requested, among other things, that GreenPoint repurchase each of the Loans or

pay damages. On March 4, 2010, CIFG and Syncora were dismissed as plaintiffs for lack of

standing.

8.      On January 28, 2016, the court in which the State Court Action is pending

granted the Indenture Trustee's motion for partial summary judgment against GreenPoint, denied

GreenPoint's competing motion for summary judgment, and dismissed GreenPoint's affirmative

defense that the Indenture Trustee lacked standing to assert claims against GreenPoint for breach

of the representations and warranties it made in the Flow Agreements. *U.S. Bank Nat'l Ass'n. v.

GreenPoint Mortg. Funding, Inc.*, 50 Misc. 3d 1216(A), at *6–9 (Sup. Ct. N.Y. Cty. 2016). The

Indenture Trustee and GreenPoint are in the midst of discovery.

## PROCEDURAL BACKGROUND

9.      On September 15, 2008, LBHI commenced in this Court its chapter 11

case, which has been styled *In re Lehman Brothers Holdings, Inc.*, Chapter 11 Case No. 08-

13555 (the "LBHI Bankruptcy Proceeding").  Then, on February 9, 2009, SASCO commenced

its chapter 11 case, Chapter 11 Case No. 09-10558 (the "SASCO Bankruptcy Proceeding" and,

together with the LBHI Bankruptcy Proceeding and Chapter 11 Case Nos. 08-13600, 08-13664,

08-13885, 08-13893, 08-13899, 08-13900, 08-13901, 08-13902, 08-13903, 08-13904, 08-13905,

08-13906, 08-13907, 09-10108, 09-10137, 09-10560, 09-12516, 09-17331, 09-17503, and 09-

17505, the "Lehman Bankruptcy Proceedings"), which is being jointly administered with the

LBHI Bankruptcy Proceeding and other related chapter 11 proceedings.

10.    On September 21, 2009, the Indenture Trustee filed Proofs of Claim Nos.

20586 and 20587 (the "U.S. Bank Claims"), in which it asserted claims against LBHI and

SASCO concerning nine trusts, including the Trust (such claims, only as they relate to the Trust,

the "2006-HE1 Claims").  The Indenture Trustee asserted the value of the 2006-HE1 Claims—

principally claims concerning LBHI and SASCO's purported duties to repurchase Loans and

correct certain defects in Loan files—exceeded $1.05 billion.

11.    On September 22, 2009, the Indenture Trustee filed Proofs of Claim Nos.

27161 and 30872 (the "Additional U.S. Bank Claims"), in which it asserted claims against LBHI

and SASCO concerning hundreds of trusts, including the Trust (such claims, only as they relate

to the Trust, the "Additional 2006-HE1 Claims").  The Indenture Trustee did not quantify the

value of its "omnibus" claim concerning the Trust, but asserted the value of its claim for

custodial fees and expenses was $9,294.73.

12.    On January 13, 2010, Syncora filed Proof of Claim No. 66099 (the

"Syncora Claim").  The Syncora Claim asserts, among other things, that Syncora is entitled to

indemnification in the amount of the insurance claim payments it has made or will make to the

Indenture Trustee for the benefit of the Trust and the holders of Class Ax Notes—as much as

$1,331,838,000.[5]   LBHI objected to the Syncora Claim on September 16, 2011, and asked the

Court to disallow and expunge it.   On May 2, 2013, LBHI commenced an adversary proceeding

(the "2013 Adversary Proceeding") against Syncora in which it asked the Court to disallow or

subordinate the Syncora Claim.   The parties' cross-motions for summary judgment in the 2013

Adversary Proceeding were resolved on February 20, 2014, when the parties agreed to reduce the

reserve for the Syncora Claim to a reserve sufficient for a $600 million general unsecured claim

against LBHI.

       13.   On December 29, 2014, this Court entered an Order Establishing a

Protocol to Resolve Claims Filed by the Trustees on Behalf of Certain Issuers of Residential

Mortgage-Backed Securities, which sets forth a claims resolution process for the review of

certain mortgage loan files, the assertion of claims by the trustees of certain trusts, the responses

of LBHI and SASCO to such claims, and a mechanism for resolving disputes regarding such

claims (the "RMBS Protocol").

       14.   On May 20, 2015, LBHI and SASCO commenced an adversary

proceeding captioned *Lehman Brothers Holdings Inc. et al. v. U.S. Bank N.A. et al. (In re*

*Lehman Brothers Holdings Inc. et al.)*, 15-AP-01112 (Bankr. S.D.N.Y.) (the "2015 Adversary

Proceeding"), and filed an *Adversary Complaint And Further Objections Seeking (I) The*

*Disallowance Of The Claims Of U.S. Bank, N.A., And Syncora Guarantee Inc.; (II)*

*Subordination Of The Syncora Claim To The U.S. Bank Claim; (III) Estimation Of Those Claims*

*At Zero Dollars For Reserve Purposes; (IV) An Injunction Staying A Related Third-Party*

*Action; (V) A Declaration That The Assignment Of Certain Repurchase Rights Was Valid; And*

*(VI) A Declaration That GreenPoint Mortgage Funding, Inc. Must Indemnify Lehman Brothers*

---

[5]   Proof of Claim No. 66099 corrected an error in Proof of Claim No. 13909, filed on September 16, 2009.  Proof
of Claim No. 13909 asserted the amount of Syncora's claim was $1,331,838.

*Holdings Inc. For Its Liability, If Any, To U.S. Bank And Syncora In Connection With The Claims* (the "Adversary Complaint").

15.    In the Adversary Complaint, LBHI and SASCO asserted causes of action seeking, among other things, to disallow the Indenture Trustee's 2006-HE1 Claims and the Syncora Claim pursuant to 11 U.S.C. § 502; to estimate the 2006-HE1 Claims and Syncora Claim at zero dollars for reserve purposes pursuant to 11 U.S.C. § 502; to subordinate the Syncora Claim to the 2006-HE1 Claims pursuant to 11 U.S.C. § 509; and to compel the Indenture Trustee to prove the 2006-HE1 Claims on a loan-by-loan basis through the RMBS Protocol.

16.    On October 2, 2015, LBHI and SASCO moved for an order reducing the reserve for the Syncora Claim.

17.    The Indenture Trustee answered the Adversary Complaint and asserted certain affirmative defenses on November 4, 2015.  Syncora answered the Adversary Complaint and asserted certain affirmative defenses on November 9, 2015.

18.    On January 15, 2016, the Court so-ordered a stipulation in which LBHI, SASCO, and Syncora agreed to reduce the reserve for the Syncora Claim to a reserve sufficient for a $237.5 million general unsecured claim against LBHI.

19.    Then, on April 11, 2016, the Indenture Trustee made the *Submission of the Indenture Trustee Concerning Its Proofs of Claim Against Debtors Lehman Brothers Holdings Inc. and SASCO*, in which it identified certain claims it contends it asserted in the 2006-HE1 Claims.  Syncora made a similar submission that same day.

20.    On April 28, 2016, LBHI and SASCO filed in the Lehman Bankruptcy Proceedings *Debtors' Motion to (a) Disallow and Expunge Certain RMBS Claims and (b)*

*Release Certain Related Claims Reserves*, in which they asked the Court to disallow, among other claims, the U.S. Bank Claims, including the 2006-HE1 Claims (the "Protocol Disallowance Motion").  Two months later, on June 27, 2016, the Bankruptcy Court entered an Order Granting Debtor's Motion to Disallow and Expunge Certain RMBS Claims and Release Certain Related Claims Reserves (the "Expungement Order").   The U.S. Bank Claims—and the 2006-HE1 Claims—were disallowed and expunged pursuant to the Expungement Order.  On July 11, 2016, U.S. Bank, among others, filed a Notice of Appeal and Statement of Election regarding the Expungement Order (the "Notice of Appeal").

21.   On August 25, 2016, LBHI and SASCO independently entered into the Syncora Settlement Agreement with Syncora.  The Syncora Settlement Agreement is the product of lengthy negotiations—before and after the commencement of the Adversary Proceeding and including negotiations facilitated by a mediator—among LBHI, SASCO, and Syncora.  Among other terms, pursuant to the Syncora Settlement Agreement, the Syncora Claim shall be reduced and allowed as an LBHI Class 7 Allowed Claim (as defined in the Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors ("Confirmation Order")) in the amount of $37 million ("Allowed Syncora Claim").[6] The Syncora Settlement Agreement is not the subject of this Motion because, pursuant to the Order Modifying Certain Existing Claims Orders, entered in the Lehman Bankruptcy Proceedings on July 18, 2012 ("Settlement Procedure Order"), it need not be approved by the Court.  The Syncora Settlement Agreement shall become effective upon this Court's entry of a final, non-appealable order approving LBHI and SASCO's Settlement Agreement with the Indenture Trustee.

---

[6]    LBHI will also assign to Syncora any right it may have to indemnification from GreenPoint arising out of the Allowed Syncora Claim.

## JURISDICTION

22.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334, Article 14.1 of the Plan, and Paragraph RR of the Confirmation Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## THE SETTLEMENT AGREEMENT

23.     LBHI, SASCO, and the Indenture Trustee have come to an agreement as to the resolution of their disputes arising out of or relating to the Trust and the 2006-HE1 Securitization.  The key terms of the Settlement Agreement are as follows.[7]

24.     First, LBHI, SASCO, the Indenture Trustee, and certain of their affiliates identified in the Settlement Agreement are releasing one another from any and all claims (as defined in 11 U.S.C. § 101) arising out of or relating to the Trust or the 2006-HE1 Securitization. A single category of non-monetary claims is carved out from the release the Indenture Trustee is providing to LBHI and SASCO.   Specifically, to the extent required by the Operative Documents, LBHI and SASCO will continue to provide or procure documents needed to cure Loan document defects (the "Document Defect Carve Out").   Although this obligation is not terminated by the Settlement Agreement, neither LBHI nor SASCO shall have any obligation to repurchase any Loan for any reason—regardless of whether they provide or procure the documents needed to cure a given Loan document defect—and the claims that are being released by the Indenture Trustee include "any past, present, or future claim on behalf of the Indenture Trustee for monetary damages against LBHI and/or SASCO based on the failure to cure document defects or repurchase any Loan[.]"

---

[7]     The Settlement Agreement is attached hereto as Exhibit 1.  This summary of the Settlement Agreement is qualified in its entirety by the terms and conditions of the Settlement Agreement. The terms and conditions of the Settlement Agreement control to the extent that there is any conflict or inconsistency between this summary and the Settlement Agreement.

25.     The purpose of these mutual releases is to effect a global resolution of the claims pertaining to the Trust or the 2006-HE1 Securitization that LBHI, SASCO, and the Indenture Trustee have asserted or could have asserted against one another.  LBHI and SASCO have nevertheless agreed to the Document Defect Carve Out because they recognize that, by continuing to provide or procure documents needed to cure Loan document defects, to the extent required by the Operative Documents, they may facilitate recoveries by the Indenture Trustee from third parties for the benefit of the Trust's noteholders, certificateholders, and insurers without incurring significant expense or exposing themselves to liability in the event they are unable to provide or procure a document (or under any circumstances).

26.     Second, LBHI and SASCO are agreeing to reasonably cooperate with the Indenture Trustee in connection with the State Court Action, to the extent such cooperation is requested.  This cooperation may include the acceptance of nonparty discovery requests and making reasonable, good-faith efforts to facilitate or provide access to witnesses, documents, and information as the Indenture Trustee proceeds with discovery and prepares for trial.  As with the Document Defect Carve Out, LBHI and SASCO recognize that, by cooperating with the Indenture Trustee in connection with the State Court Action, they may facilitate recoveries by the Indenture Trustee from a third party (in this case, GreenPoint) for the benefit of the Trust's noteholders, certificateholders, and insurers.  Because Syncora has agreed to reimburse them for certain actual, reasonable, documented out-of-pocket costs and attorney's fees they incur in cooperating with the Indenture Trustee, the burden imposed on LBHI and SASCO by this provision of the Settlement Agreement is expected to be insignificant.

27.     Third, consistent with the release it is providing LBHI and SASCO, the Indenture Trustee will withdraw the 2006-HE1 Claims, the Additional 2006-HE1 Claims, and

the Notice of Appeal to the extent it concerns the 2006-HE1 Claims and shall take no further

action to appeal the Expungement Order to the extent it concerns the 2006-HE1 Claims. LBHI

and SASCO are confident that the Expungement Order will be affirmed on appeal, but these

measures to be taken by the Indenture Trustee finally resolve the 2006-HE1 Claims, while also

resolving the Additional 2006-HE1 Claims (which were not addressed by the Expungement

Order).

28.    Fourth, consistent with the release they are providing the Indenture

Trustee, LBHI and SASCO will dismiss the 2015 Adversary Proceeding. Each of LBHI and

SASCO's claims against the Indenture Trustee will be moot once the Settlement Agreement

becomes effective.

## **RELIEF REQUESTED**

29.    The Plan Administrator, on behalf of itself and SASCO, and in its

informed business judgment, submits that the Settlement Agreement is in the best interests of

LBHI and SASCO and should be approved pursuant to section 105(a) of the Bankruptcy Code

and Rule 9019 of the Bankruptcy Rules. The Settlement Agreement will enable LBHI and

SASCO to avoid the expenditure of any additional resources in connection with this dispute

while securing the withdrawal of the 2006-HE1 Claims and the Additional 2006-HE1 Claims,

collectively asserted to be worth in excess of $1 billion. Although the Plan Administrator

believes that the 2006-HE1 Claims and the Additional 2006-HE1 Claims are meritless, and

although the 2006-HE1 Claims have already been expunged pursuant to the Expungement Order,

there are risks inherent in any litigation which counsel in favor of the Settlement Agreement.

Absent consummation of the Settlement Agreement, the Indenture Trustee would undoubtedly

perfect its appeal of the Expungement Order with respect to the 2006-HE1 Claims and, in the

event of a reversal, LBHI and SASCO would be confronted with the prospect of time-consuming

- 11 -

and expensive legal proceedings, including trial and any further appeals.  Even if the Indenture

Trustee elected not to perfect its appeal with respect to the 2006-HE1 Claims, LBHI and SASCO

would be compelled to expend time and resources litigating the Additional 2006-HE1 Claims—

which time and resources the Plan Administrator believes are better spent elsewhere.

      30.    Bankruptcy Rule 9019(a) provides: "[o]n motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P.

9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best

interests of the estate."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham*

*Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result

in the best possible outcome for the debtor, but must not "fall below the lowest point in the range

of reasonableness."  *Id.* (citations and quotation marks omitted)*; accord Cosoff v. Rodman (In re*

*W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr.

E.D.N.Y. 1997).

      31.    This Court also has the authority to approve a settlement under section

105(a) of the Bankruptcy Code, which allows it to "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *See* 11 U.S.C.

§ 105(a).

      32.    Courts typically consider the following factors in determining whether a

settlement should be approved:

> (1) the balance between the litigation's possibility of success and
> the settlement's future benefits; (2) the likelihood of complex and
> protracted litigation, "with its attendant expense, inconvenience,
> and delay"; (3) "the paramount interests of the creditors" . . . ; (4)
> whether other parties in interest support the settlement; (5) the
> "competency and experience of counsel" supporting, and "[t]he
> experience and knowledge of the bankruptcy judge" reviewing, the
> settlement; (6) "the nature and breadth of releases to be obtained

- 12 -

by officers and directors"; and (7) "the extent to which the
settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478

F.3d 452, 462 (2d Cir. 2007) (citations omitted).  *See also In re Ashford Hotels, Ltd.*, 226 B.R.

797, 802–04 (Bankr. S.D.N.Y. 1998).

33.    The decision to approve a particular compromise lies within the sound

discretion of the bankruptcy court.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).

The court's discretion should be exercised "in light of the general public policy favoring

settlements."  *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (citation

omitted).  A proposed compromise settlement implicates the issue of whether it is "fair and

equitable, and . . . in the best interest of the [debtor's] estate."  *In re Best Prods. Co.*, 168 B.R.

35, 50 (Bankr. S.D.N.Y. 1994) (internal citations and quotations omitted).

34.    The court must apprise itself "of all facts necessary for an intelligent and

objective opinion of the probabilities of ultimate success should the claim be litigated."

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

424 (1968) (applying Bankruptcy Act).  While a court must evaluate all "factors relevant to a full

and fair assessment of the wisdom of the proposed compromise," *id.*, a court need not conduct a

"mini trial" of the merits of the claims being settled or conduct a full independent investigation.

*Drexel Burnham*, 134 B.R. at 505.  *See also Cosoff*, 699 F.2d at 608.

35.    Here, the Settlement Agreement undoubtedly will benefit LBHI, SASCO,

and their creditors and is "fair and equitable" and "in the best interest of the [debtor's] estate."

*See Best Prods.*, 165 B.R. at 50 (internal citations and quotations omitted).  First, the Settlement

Agreement will trigger the withdrawal of the 2006-HE1 Claims and the Additional 2006-HE1

Claims, which have a face value in excess of $1 billion.  Second, the Settlement Agreement will

finally resolve all of the parties' pending claims concerning the Trust and the 2006-HE1 Securitization, thus sparing LBHI and SASCO from future disputes or litigation and their attendant costs, which would have been significant. Finally, at all times during this litigation, LBHI and SASCO have been represented by counsel experienced in these bankruptcy proceedings and in litigation related to mortgage-backed securities. Counsel for LBHI and SASCO have negotiated this Settlement Agreement at arm's length with counsel for the Indenture Trustee.

36.    For the reasons stated above, and in the Plan Administrator's informed business judgment, the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the parties' disputes, well within the "range of reasonableness," and are in the best interests of LBHI, SASCO, their estates, and their creditors. Accordingly, the Plan Administrator requests that the Settlement Agreement be approved, effective upon entry of an Order granting the relief requested herein.

## NOTICE

37.    No trustee has been appointed in these Chapter 11 cases. The Plan Administrator has served notice of this Motion in accordance with the procedures set forth in the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, entered on June 17, 2010 [ECF No. 9635], on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for Syncora; (vi) the attorneys for the Indenture Trustee; (vii) the attorneys for GreenPoint; and (viii) all parties who have requested notice in the Chapter 11 Cases. The Plan Administrator submits that no other or further notice need be provided. Additionally, the Indenture Trustee has provided reasonable notice to Assured and

- 14 -

each holder of any of the Trust's Class Ac Notes, Class Ax Notes, Class B Certificates, Class L Certificates, and Class R Certificates.

38.     No previous request for the relief sought herein has been made by the Plan Administrator to this or any other Court.

39.     This Motion sets forth the legal authorities upon which the Motion is based.  Accordingly, the Plan Administrator respectfully submits that the Motion itself satisfies the requirements of the local bankruptcy rules that a separate memorandum of law be submitted herewith.

## <u>CONCLUSION</u>

WHEREFORE the Plan Administrator, on behalf of LBHI and SASCO, respectfully requests that the Court enter the proposed order annexed hereto as Exhibit A and grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  August 26, 2016
      New York, New York

/s/ Todd G. Cosenza
Paul V. Shalhoub
Todd G. Cosenza
Benjamin P. McCallen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc. and Structured Asset Securities Corporation*
