**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re                                                    :        **Chapter 11 Case No.**

                                                         :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (SCC)**

                                                         :

                        **Debtors.**            :        **(Jointly Administered)**

-------------------------------------------------------------------x

### ORDER ESTABLISHING A PROTOCOL
### TO RESOLVE CLAIMS FILED BY TRUSTEES ON BEHALF OF CERTAIN
### ISSUERS OF RESIDENTIAL MORTGAGE-BACKED SECURITIES

Upon the cross-motion of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured Assets Securities Corporation ("SASCO") (together, and collectively with their affiliated debtors in the above-captioned cases, "Lehman" or the "Debtors") for entry of an order establishing a protocol to resolve claims filed by the trustees on behalf of issuers of residential mortgage-backed securities, dated October 15, 2014 (the "Cross-Motion"); and an objection to the Cross-Motion having been filed by U.S. Bank National Association, Law Debenture Trustee Company of New York, Wilmington Trust, National Association and Deutsche Bank National Trust Company (collectively the "RMBS Trustees") on November 14, 2014 (the "Objection"); and the Debtors having filed a reply to the Objection on December 3, 2014 (the "Reply"); and the Court having jurisdiction to consider the Cross-Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan, ¶ 77 of the Order confirming the Plan, and the Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.); and a hearing on the Cross-Motion having taken place on December 10, 2014 (the "Hearing"); and consideration of the Cross-Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Cross-Motion having been provided to the parties identified in the Cross-Motion; and the

Court having considered the Cross-Motion, the Objection, the Reply, the arguments and

evidence presented at the Hearing and the full record of these cases; and it appearing that the

relief sought in the Cross-Motion is in the best interests of the Debtors and their creditors; and

after due deliberation and sufficient cause appearing therefor, it is:

ORDERED that the Cross-Motion is granted to the extent provided herein; and it is

further

ORDERED that the RMBS Protocol[1] attached hereto as Exhibit A is approved and shall

be implemented to reconcile and determine the RMBS Claims filed by the RMBS Trustees; and

it is further

ORDERED that all provisions of General Order #M-452, adopted June 28, 2013,

providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early

Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary

Proceedings in the Bankruptcy Court for the Southern District of New York, and all existing and

further amendments thereto (the "Standing Order"), shall apply to Step 4 of the RMBS Protocol.

To the extent there is any conflict between the Standing Order and this Order, the terms of this

Order shall govern; and it is further

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Cross-Motion.

ORDERED that the confidentiality provisions of Section 5.0 of the Standing Order are hereby incorporated by reference into this Order. Except as expressly provided in the RMBS Protocol, no statements or arguments made or positions taken by a Claim Facilitator (as defined in the RMBS Protocol), the Plan Administrator, or an RMBS Trustee during any part of Steps 3 or 4 or the RMBS Protocol, including at any settlement conferences, may be disclosed by a Claim Facilitator, the parties, the parties' attorneys or any of the parties' advisors to the Court or any third party. Similarly, all writings, records, reports and any other documents received or made by a Claim Facilitator while serving in such capacity shall remain confidential and not be provided to the Court, except as otherwise expressly provided by the RMBS Protocol or unless they would be otherwise admissible. In addition, a Claim Facilitator shall not be compelled to disclose such records, reports and other documents in connection with any hearing held by the Court, except as otherwise expressly provided by the RMBS Protocol. The parties may report to the Court the status of Step 3 of the RMBS Protocol, and a Claim Facilitator may report to the Court the status of Step 4 of the RMBS Protocol with respect to RMBS Claims disputes before such Claim Facilitator, but no party may disclose the content thereof without the express written consent of the Plan Administrator and the applicable RMBS Trustee(s). Rule 408 of the Federal Rules of Evidence shall apply to all aspects of Steps 3 and 4 of the RMBS Protocol; and it is further

ORDERED that nothing contained herein shall prevent the parties from settling, and the parties are encouraged to settle, an RMBS Claim at any time before, during, or following the steps outlined in the RMBS Protocol by the mutual consent of the applicable parties, provided that such settlement either (i) complies with any applicable orders in these bankruptcy cases permitting such settlement, or (ii) is approved by specific order of the Court; and it is further

ORDERED that all discussions between the parties and the contents of any papers submitted during Steps 3 and 4 of the RMBS Protocol shall remain confidential and privileged in accordance with the confidentiality provisions outlined above and shall not be discoverable or admissible as evidence in any subsequent litigation of the RMBS Claim or elsewhere, except as expressly provided in the RMBS Protocol or by further order of this Court; and it is further

ORDERED that no party is required to settle or compromise any dispute or enter into a particular settlement or compromise.  However, once the parties proceed to Step 4 of the RMBS Protocol, both the Plan Administrator and the respective RMBS Trustee must provide the information required for Step 4 of the RMBS Protocol in accordance with Section VI thereof; and it is further

ORDERED that the Plan Administrator and the RMBS Trustees must engage in the RMBS Protocol in good faith and otherwise comply with the provisions of the RMBS Protocol; and it is further

ORDERED that the parties' participation in the RMBS Protocol set forth herein shall not cause the Debtors or any individual RMBS Trustee to waive or release any claims, defenses, or remedies that the individual parties would otherwise hold, except (i) as expressly provided herein or in the RMBS Protocol or (ii) to the extent that the parties enter into a settlement providing for the consensual waiver or release of claims, defenses, and/or remedies; and it is further

ORDERED that the Debtors shall have the right to seek the disallowance and expungement of any RMBS Claims for the RMBS Trustees' failure to comply with the procedures and deadlines set forth in the RMBS Protocol with respect to any such RMBS Claims; and it is further

ORDERED that the RMBS Trustees shall promptly request and seek applicable

documents and records from the master servicers with respect to the Covered Loans; and it is

further

ORDERED that the primary and master servicers for the Covered Loans from whom the

RMBS Trustees and the Plan Administrator seek applicable documents and records in connection

with the implementation of the RMBS Protocol shall promptly respond to the RMBS Trustees'

and the Plan Administrator's reasonable document and file requests; and it is further

ORDERED that each of (i) the RMBS Trustees' right, if any, to seek to provide proof in

support of the allowance of the RMBS Claims through the use of statistical sampling, and (ii) the

Plan Administrator's right to object to the use of statistical sampling by the RMBS Trustees, is

reserved; and it is further

ORDERED that the entry of this Order is without prejudice to the right of the Plan

Administrator and the RMBS Trustees to request that the Court hold additional status

conferences with respect to the RMBS Protocol, in addition to those provided therein; and it is

further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: New York, New York
        December 29, 2014

                                        /S/ Shelley C. Chapman
                                        Honorable Shelley C. Chapman
                                        United States Bankruptcy Judge

# EXHIBIT A

## RMBS PROTOCOL

# RMBS Claim Protocol

I. <u>Receipt of Claims Files From Servicers ("Step 0")</u>

    a.    U.S. Bank National Association, Law Debenture Trustee Company of New York, Wilmington Trust, National Association and Deutsche Bank National Trust Company (each, a "<u>RMBS Trustee</u>" and collectively, the "<u>RMBS Trustees</u>") sent, on December 12, 2014, (i) a direction letter to Nationstar Mortgage LLC ("<u>Nationstar</u>") as master servicer on certain of the Covered Loans, and (ii) a direction letter to Wells Fargo Bank, National Association ("<u>Wells Fargo</u>") as master servicer on certain of the Covered Loans, copies of which are annexed hereto (collectively, the "<u>Direction Letters</u>").

    b.    The Direction Letters direct Nationstar and Wells Fargo to have the primary servicers (Aurora Loan Services LLC ("<u>Aurora</u>"), as a former primary servicer, Nationstar and other servicers) gather complete origination and servicing files and send those files to Digital Risk, LLC on behalf of the RMBS Trustees.

    c.    If the RMBS Trustees have not received a response from Nationstar and Wells Fargo and/or the primary servicers by Friday, December 19, 2014 acknowledging the applicable Direction Letter and stating that they will promptly comply with the applicable Direction Letter, the RMBS Trustees shall promptly request that the Bankruptcy Court enter an order obligating Nationstar and Wells Fargo, as applicable, to comply with the applicable Direction Letter. The Plan Administrator shall reasonably cooperate with and support such request.

    d.    The RMBS Trustees shall also promptly direct Nationstar and Wells Fargo, as master servicer, to provide a key, mapping the applicable loan number to the origination file number and to the servicing file number.

    e.    If any or all of the primary servicers are not promptly providing the requested files, the RMBS Trustees shall promptly request that the Bankruptcy Court order the production of the files. The Plan Administrator shall reasonably cooperate with and support such request.

II. <u>Assumptions Regarding the Loan File Reviews Taking Place in Steps 1 and 2</u>

    a.    The 51,109 substantially complete origination files in Aurora's possession (together with the Aurora servicing files relating to such loan files), which encompass the loan files delivered pursuant to Section II(b) below, shall serve as a template for what the Plan Administrator considers a complete file (a "<u>Complete File</u>").

    b.    Content associated with the Aurora Files:

        i.    All electronically imaged Aurora loan files (the "<u>Aurora Loan Files</u>") shall be delivered to the RMBS Trustees on a hard drive not later than three (3)

business days following the delivery of the Direction Letters signed by the RMBS Trustees, Nationstar and Wells Fargo.

    ii.   The hard drive shall contain:

        1.   All the electronic images Aurora has on its system for the Covered Loans. The Plan Administrator believes that no fewer than 51,109 Aurora Loan Files are Complete Files.

        2.   There shall be one folder per loan, and that folder will contain one .pdf file for each of the imaged documents in Aurora's possession associated with the particular loan.

        3.   The hard drive shall also contain the servicing information that is available in electronic format from Aurora's data repository for the Covered Loans. This servicing information includes but is not limited to (i) payment histories, (ii) servicing comments and (iii) the notes from ResNet, Aurora's REO management system.

III.   <u>Production and Review of Claim Files by the Trustees ("Step 1")</u>

    a.   Completeness Confirmation for Aurora Loan Files:

        i.   The RMBS Trustees shall confirm in writing to the Plan Administrator by January 16, 2015 those Aurora Loan Files that are sufficient for the RMBS Trustees to review and assert claims, if any, arising from or related to Covered Loans included within the Aurora Loan Files (the "<u>Complete Aurora Files</u>"). If the RMBS Trustees believe that one or more Aurora Loan Files are insufficient for purposes of reviewing and asserting claims, the applicable RMBS Trustee(s) shall identify in a writing delivered to the Plan Administrator and the applicable master servicer the asserted insufficiencies no later than January 16, 2015.

        ii.   If the applicable master servicer does not provide the requested information within thirty (30) days of such request, the applicable Aurora Loan Files shall not be considered Complete Aurora Files and the RMBS Trustees shall not be required to review and assert claims with respect to such Aurora Loan Files by the Review and Assertion Deadline for Complete Aurora Files (as defined below).

        iii.   For the sake of clarity, the RMBS Trustees may choose to present claims on Aurora Loan Files they deem incomplete, citing the missing document that has made the file incomplete according to their determination.

    b.   Completeness Confirmation for Other Loan Files:

        i.   Upon receipt of each loan file other than the Aurora Loan Files (the "<u>Other Loan Files</u>"), the applicable RMBS Trustee shall promptly notify

the Plan Administrator in writing of such receipt and the date thereof, identifying for the Plan Administrator both the origination and servicing loan numbers for each such Other Loan File.

    ii.    Not later than thirty (30) days following receipt by the RMBS Trustees of an Other Loan File, the RMBS Trustees shall confirm in writing to the Plan Administrator those Other Loan Files (the "<u>Complete Other File(s)</u>") that are sufficient for the RMBS Trustees to review and assert claims, if any, arising from or relating to Covered Loans included within the Other Loan Files (the "<u>RMBS Trustees' File Completeness Confirmation</u>").

c.    Review Timing for First 50,000 Loan Files:

    i.    The RMBS Trustees shall review the first 10,000 loan files, which may be Complete Aurora Loan Files or Complete Other Files, by March 31, 2015 and shall complete their review of the first 50,000 Complete Aurora Loan Files or Complete Other Files (the "<u>First 50,000 Complete Files</u>") no later than June 30, 2015 (the "<u>Review and Assertion Deadline for First 50,000 Complete Files</u>").

    ii.    The RMBS Trustees shall transmit in writing claims to the Plan Administrator on a rolling basis (with no fewer than 10,000 files being reviewed per month) commencing no later than March 31, 2015. Any claims arising from review of the First 50,000 Complete Files not asserted by the Review and Assertion Deadline for First 50,000 Complete Files shall be deemed waived and released by the RMBS Trustees and disallowed and expunged in the bankruptcy case.

    iii.    The Plan Administrator shall review claims submitted by the RMBS Trustees with respect to the First 50,000 Complete Files on a rolling basis and shall complete its review of claims asserted with respect to such files no later than August 31, 2015 (provided the RMBS Trustees have submitted such claims to the Plan Administrator on a consistent and even rolling basis).

d.    Review Timing for the Balance of Loan Files:

    i.    Commencing on July 1, 2015, the RMBS Trustees shall complete the review of no fewer than 17,000 Complete Aurora Files and/or Complete Other Files per month, provided that there are no fewer than 17,000 such files available for review. If there are fewer than 17,000 Complete Aurora Files and/or Complete Other Files available for the RMBS Trustees' review, the RMBS Trustees shall review as many files as they have available for review in such a month.

    ii.    Not later than thirty (30) days following receipt by the RMBS Trustees of an Other Loan File not already reviewed pursuant to Section III(c) above, the RMBS Trustees shall confirm in writing to the Plan Administrator

those Other Loan Files (the "Complete Other File(s)") that are sufficient for the RMBS Trustees' review and assert claims, if any, arising from or relating to Covered Loans included within the Other Loan Files (the "RMBS Trustees' File Completeness Confirmation").

 iii. The RMBS Trustees' review of the entire population of loan files, meaning both Aurora Loan Files and all Other Loan Files, shall be completed by March 31, 2016 ("Overall Claim File Cut-Off Date"). Any claim arising from a loan associated with either an Aurora Loan File or any Other Loan File not asserted by the Overall Claim File Cut-Off Date shall be deemed waived and released by the RMBS Trustees and disallowed and expunged in the bankruptcy case.

e. Claim Submission:

 i. Each RMBS Trustee may submit to the Plan Administrator claims for alleged breaches of representations and warranties and document deficiencies (each, an "RMBS Claim" and collectively, "RMBS Claims"), as described below.

 ii. Any such RMBS Claim shall be submitted on a loan-by-loan basis in accordance with the Trust Agreement or other governing agreement providing a remedy for such alleged RMBS Claim.

 iii. All such claims shall be submitted on a rolling basis promptly upon the applicable RMBS Trustee's good faith determination that the relevant claim file contains a Material Breach (as defined in Section IV(c) below). In no event shall any RMBS Claim be submitted (a) later than the June 30, 2015 Review and Assertion Deadline for the First 50,000 Complete Files with respect to the First 50,000 Complete Files or (b) later than the Overall Claim File Cut-Off Date with respect to Other Loan Files (each such date shall be referred to as an "RMBS Claim Cut-Off Date").

 iv. Any applicable claim not submitted by the applicable RMBS Claim Cut-Off Date shall be deemed waived and disallowed and expunged in this case.

 v. The applicable RMBS Trustee shall submit with each RMBS Claim a RMBS Claim File.

 vi. A RMBS Claim File shall include:

  1. The Mortgage Loan File, including, at a minimum, all of the loan documents the RMBS Trustees received from the applicable master servicer, primary servicer and/or any other party, or otherwise relied upon in making their claim, which may include the documentation identified in Exhibit B, to the extent such documentation is available and applicable to a particular loan

file.  In the case of a document defect claim, the RMBS Trustees shall submit a copy of the applicable document exception report, to the extent available and applicable to the document defect claimed, together with evidence of its transmittal pursuant to the Trust Agreement or other applicable governing agreement.

2. A statement describing either (i) the specific alleged defect and the representation or warranty violated by the alleged defect, together with all supporting documentation thereof, or (ii) the specific document that is allegedly missing which gives rise to the document defect claim;

3. A statement of how the breach of a representation and warranty or a document defect entitles the RMBS Trustee to a claim under the applicable governing agreements and applicable law (individually and collectively referred to as a "<u>Material Breach</u>");

4. A calculation of the <u>Purchase Price</u> (as defined in the governing agreement), together with all supporting documentation; and

5. A statement describing any notice of the alleged Material Breach provided to LBHI including (a) the approximate date on which the applicable RMBS Trustee became aware of such alleged Material Breach and (b) the date and method of providing notice of such alleged Material Breach.

vii. In addition to the foregoing, not later than ten (10) days following the conclusion of each month of the review, each RMBS Trustee shall provide to the Plan Administrator a <u>Claim Tracking Spreadsheet</u>, substantially in the form attached as Exhibit C, listing all RMBS Claims submitted as of each month of the review.

IV. <u>Review of Claim Files by the Plan Administrator ("Step 2")</u>

a. Not later than thirty (30) days following receipt by the Plan Administrator of a RMBS Trustees' File Completeness Claim Confirmation, copies of the applicable Complete Other Files and a Claim File, the Plan Administrator shall confirm whether the applicable files are Complete Files (the "<u>Plan Administrator File Completeness Confirmation</u>"), provided that the RMBS Trustees have submitted claims to the Plan Administrator on a consistent and even rolling basis.

b. Upon the Plan Administrator's submission of a Plan Administrator File Completeness Confirmation, the Plan Administrator's review of the RMBS Claim Files shall begin for Complete Files.

c. The Plan Administrator's review of the RMBS Claim Files shall include a determination as to whether the Plan Administrator agrees with the RMBS Trustee's assertion of an RMBS Claim for the relevant file.  In its review of each

Claim File, the Plan Administrator shall determine whether the RMBS Trustee has proved that the Claim File contains a "Material Breach"). The Plan Administrator shall have one hundred (100) days from the applicable Plan Administrator File Completeness Confirmation within which to complete its review of such file and respond to the applicable RMBS Trustee, and the failure to respond in such time frame with respect to an RMBS Claim File shall be deemed Approval of such claim, but in no event will the Plan Administrator be required to complete its review of more than 10,000 Claim Files per month.

i.      If the Plan Administrator agrees that the RMBS Trustee has proved a Material Breach for a particular Claim File, that Claim File shall be deemed an "Approved Claim File."

1.      For each Approved Claim File, the Plan Administrator shall either (i) approve the Purchase Price proposed by the RMBS Trustee or (ii) revise the Purchase Price calculation in accordance with the formula in the governing agreement. Any revision made pursuant to subsection (ii) of this Section IV(c)(i)(1) is subject to the RMBS Trustees' right to dispute the Approved Claim File pursuant to Section V(c) below.

2.      For each Approved Claim File, the Plan Administrator shall determine the Debtor liable for such RMBS Claim.

ii.     If the Plan Administrator does not agree that the RMBS Trustee has proved a Material Breach for a particular RMBS Claim, it shall prepare a statement not to exceed 250 words for each alleged Material Breach setting forth its basis for rejecting the Claim File (and classifying the particular Claim File as a "Rejected Claim File") (a "Plan Administrator's Statement").

d.      The Approved Claim Files shall be collected and tabulated on a monthly basis. On the tenth (10th) business day of each month, the Plan Administrator shall file with the Court, with courtesy copies to the RMBS Trustees, a report containing the Approved Claim Files for claims not previously approved, the proposed Purchase Price for each Approved Claim File, their corresponding Aggregate Claims (the sum of the Purchase Price calculations), and the Debtor liable for such RMBS Claim to be allowed in a form substantially similar to Exhibit D (an "Approved Claims Report").

e.      The Plan Administrator shall serve Approved Claim Reports on the applicable RMBS Trustees at least fourteen (14) days before filing them with the Court.

f.      The Rejected Claim Files also shall be collected and tabulated on a monthly basis and submitted to the RMBS Trustees, with courtesy copies filed with the Court, reporting the number and identity of Rejected Claim Files in a form substantially similar to Exhibit E (a "Rejected Claims Report").

V.   Non-Binding Negotiation Procedure for
     Rejected Claims and Disputed Approved Claims ("Step 3")

   a.   Not later than twenty (20) days following receipt of the Rejected Claims Report,
        the applicable RMBS Trustee shall have the right, but not the obligation, to
        resubmit one or more of the Rejected Claim Files to the Plan Administrator with
        its rebuttal in order to enable a negotiation of a mutually acceptable allowed claim
        on account of any such Rejected Claim File.

   b.   Not later than twenty (20) days following receipt of the Approved Claims Report,
        the applicable RMBS Trustees shall have the right, but not the obligation, to
        dispute any Approved Claim in order to enable a negotiation of a mutually
        acceptable allowed claim on account of any such disputed Approved Claim.

   c.   If the Plan Administrator and the applicable RMBS Trustee are unable to resolve
        disputed issues concerning a Rejected Claims Report or a disputed Approved
        Claim within thirty (30) days of its inclusion in Step 3, or by such later date as
        agreed to by the Plan Administrator and the applicable RMBS Trustee, the
        relevant Rejected Claim Files and disputed Approved Claims shall proceed to
        Step 4 for inclusion in non-binding mediation before a Claims Facilitator (as
        defined in Section VI below).

   d.   No Claims Facilitator or representative of the Court will participate in these Step
        3 negotiations, and such negotiations will be covered by Rule 408 of the Federal
        Rules of Evidence and analogous state evidentiary provisions.  Nevertheless, the
        confidentiality provisions of the Order shall apply to these negotiations as though
        a Claims Facilitator were present.

VI.   Non-Binding Dispute Resolution Procedure to Resolve Claims Files Disputes ("Step 4")

   a.   The Plan Administrator shall submit disputed Rejected Claim Files and disputed
        Approved Claims remaining after Step 3 for resolution to one or more neutral
        Claim Facilitators ("Claims Facilitator(s)").  The Claims Facilitator shall oversee
        a non-binding dispute resolution process and shall be selected from among the
        pool of previously approved mediators in the Debtors' bankruptcy proceedings
        (the "CF Pool").  If the Plan Administrator and the applicable RMBS Trustees are
        unable to agree on Claims Facilitators, then the Bankruptcy Court shall appoint
        such Claims Facilitators from the CF Pool.

   b.   On the fifth (5th) business day of each month, the Plan Administrator may submit
        disputed Rejected Claim Files and disputed Approved Claims (or categories of
        issues or disputes) to a Claims Facilitator for non-binding individual claim
        resolution or for non-binding resolution of a category of issues or disputes.  Such
        disputed Rejected Claim Files and disputed Approved Claims (or categories of
        issues or disputes) shall be accompanied by the Plan Administrator's Statement
        and a reply by the RMBS Trustee(s) not to exceed 250 words for each alleged
        Material Breach (together, an "ADR Packet"), to the Claims Facilitator.  The Plan

7

Administrator shall notify the applicable RMBS Trustee twenty (20) days prior to submission of the ADR Packet so that the applicable RMBS Trustee may prepare its respective 250 word reply for inclusion in the ADR Packet.

c.      All proceedings before a Claims Facilitator shall take place in New York, New York.

d.      Not later than twenty (20) business days following the submission of an individual file or files, issue or category of issues to a Claim Facilitator, the Plan Administrator and the RMBS Trustee(s) will each have the right, but not the obligation, to submit to the Claims Facilitator(s) a primer explaining their respective views with respect to the RMBS Claims and/or issues and the legal predicate controlling the allowance and disallowance of such claims and/or issues. Each of such parties shall also have the right to schedule an introductory session with the Claims Facilitator(s) to explain such primer. Such introductory session may take place simultaneously, meaning that the Claims Facilitator may hear from both parties during the same session. Individuals present at the introductory session shall include (i) a business principal that has complete settlement authority and (ii) an additional representative for each side, which may include counsel.

e.      The Claims Facilitator shall have thirty (30) business days from receipt of the ADR Packet, or such later period of time as agreed to by the Plan Administrator, the RMBS Trustees and the Claims Facilitator, to render a non-binding decision (i) approving or disapproving the Plan Administrator's approval or rejection of the applicable RMBS Claim File and (ii) providing a proposed claim amount, if applicable ("NB Proposal"). A Claims Facilitator's failure to render a timely NB Proposal shall not be treated either as an affirmation or rejection of either party's position with respect to the RMBS Claim File at issue.

f.      Once a Claims Facilitator has rendered a NB Proposal, it shall, not later than 10 calendar days following the rendering of such decision, submit the NB Proposal to the Plan Administrator and the applicable RMBS Trustee.

VII.    Court Review and Approval of Claim Amounts ("Step 5")

a.      Upon monthly receipt of Approved Claim Reports, Approved Claims shall be deemed approved without any further order of the Court, unless and only to the extent the applicable RMBS Trustee has disputed them as contemplated in Section V above.

b.      Upon receipt of any NB Proposal:

    i.      If the Plan Administrator or the applicable RMBS Trustee objects to a NB Proposal, it must object to such proposal not later than ten (10) business days following the date of such NB Proposal.

      ii.     If neither party objects to a NB Proposal within the time period noted above, the NB Proposal shall be deemed final.

      iii.    If a party files an objection, the RMBS Claim that is the subject of the NB Proposal shall remain subject to further objections by the Plan Administrator and allowance by the Court.

      iv.    The Plan Administrator shall, if applicable, proceed with any disbursements from the Chapter 11 Estates in accordance with any final, non-appealable order of the Court.

      v.    An acceptance or rejection of any settlement by the Plan Administrator or the RMBS Trustees in connection with a Rejected Claim File or disputed Approved Claim shall not be admissible as evidence or otherwise used in connection with the settlement of any subsequently Rejected Claim File or disputed Approved Claim.

VIII.  <u>Status Conferences</u>

    a.    The parties shall schedule mutually agreeable dates for status conferences with the Court regarding the status of the RMBS Protocol to take place during the months of July 2015, September 2015 and December 2015.

08-13555-scc    Doc 47569    Filed 12/29/14    Entered 12/29/14 15:26:08    Main Document
Pg 10 of 24

# EXHIBIT B

# MORTGAGE LOAN FILE DOCUMENTATION

# Mortgage Loan File

## Credit File Documents:

Original Endorsed Note
Certified Copy of Security Instrument/Riders
Any Assignment of Mortgage
Original or Certified True Copy of PMI Certificate
Original Title Policy or Title Commitment, marked for policy
Hazard Insurance Policy Flood Insurance Policy Sale Contract
Copy of 2nd Lien Note (if subordinate finance)
Verification of Mortgage
All co-op related documents Any other program documents
1008 Transmittal Summary or contract underwriting summary/notice of approval
Payment History
Certified Copy of Final HUD-1
Original and Final Signed 1003
Flood Certificate
Verification of Employment/Income
Deposits/Assets as required by Documentation Type
Verification of Mortgage/Rental
Appraisal with photos and all attachments including final inspection and/or Certificate of Occupancy, if applicable
Survey
Credit Reports and any necessary explanations
Final TIL
Notice of Right to Cancel
ARM Disclosure
Tax Information Sheet
Document Exception Report (if applicable)

## Servicing File Documents:

Last Value Appraisal or BPO
REO HUD 1
Escrow Expenses
Corporate Expense Log
Hazard Claim EOB
MI EOB
Payment History Log Loss Mitigation File

1

09-13555-mg   Doc 53621-7   Filed 08/30/16   Entered 08/30/16 20:39:16   Exhibit G
Pg 19 of 24

**Mortgage Loan File**

All servicing notes (including all notes from all systems used)
Collection Notes
Bankruptcy Notes
Loss Mitigation Notes
Foreclosure Notes
Litigation Notes
Eviction Notes
REO Notes
Tax and Escrow Notes

# EXHIBIT C

# CLAIM TRACKING SPREADSHEET

## Claim Tracking Spreadsheet

| Proof of Claim Number | |
|---|---|
| Claimant | |
| Debtor | |
| Lehman Loan Number | |
| Servicer Loan Number | |
| Servicer Name | |
| Alleged Defect #1 | |
| Alleged Defect #2 | |
| Alleged Defect #3 | |
| Alleged Defect #4 | |
| Purchase Price | |
| Loan Purchase Date | |
| Borrower Name | |
| Lien Type | |
| Property Address | |
| Property City | |
| Property State | |
| Property Zip | |
| Unpaid Principle Balance (as of most recent month-end data) | |
| Next Due Date (as of most recent month-end data) | |
| Default Status (as of most recent month-end data) | |
| Agreement Breached | |
| Date of Agreement | |
| Contractual Provision(s) Breached #1 | |
| Contractual Provision(s) Breached #2 | |
| Contractual Provision(s) Breached #3 | |
| Contractual Provision(s) Breached #4 | |
| Factual Basis for Defect #1 | |
| Factual Basis for Defect #2 | |
| Factual Basis for Defect #3 | |
| Factual Basis for Defect #4 | |
| Materiality Basis for Defect #1 | |
| Materiality Basis for Defect #2 | |
| Materiality Basis for Defect #3 | |
| Materiality Basis for Defect #4 | |
| Date of Discovery of Defect | |
| Notice Date | |

# EXHIBIT D

# APPROVED CLAIMS REPORT

**<u>Approved Claims Report</u>**

| Proof of Claim Number | |
|---|---|
| Claimant | |
| Debtor | |
| Lehman's Loan Number | |
| Servicer Loan Number | |
| Claimant's Purchase Price | |
| Debtor's Purchase Price | |
| Final Allowed Purchase Price | |

09-13555-mg Doc 53621-7 Filed 08/30/16 Entered 08/30/16 20:39:16 Exhibit G Pg 29 of 24

# **EXHIBIT E**

# **REJECTED CLAIMS REPORT**

08-13555-mg Doc 53621-7 Filed 08/30/16 Entered 08/30/16 20:39:16 Exhibit G
Pg 24 of 24

**Rejected Claims Report**

| | |
|---|---|
| Proof of Claim Number | |
| Claimant | |
| Debtor | |
| Lehman Loan Number | |
| Servicer Loan Number | |
| Alleged Defect #1 | |
| Debtor Findings #1 | |
| Alleged Defect #2 | |
| Debtor Findings #2 | |
| Alleged Defect #3 | |
| Debtor Findings #3 | |
| Alleged Defect #4 | |
| Debtor Findings #4 | |
| Claimant's Purchase Price | |
| Debtor's Purchase Price | |