| | |
|---|---|
| Franklin H. Top III (admitted *pro hac vice*)<br>CHAPMAN AND CUTLER LLP<br>111 West Monroe Street<br>Chicago, Illinois  60603<br>Telephone: (312) 845-3000<br>*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts* | M. William Munno<br>Daniel E. Guzmán<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, New York  10004<br>Telephone: (212) 574-1587<br>*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts* |
| John C. Weitnauer (admitted *pro hac vice*)<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309<br>Telephone: (404) 881-7000<br>*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* | Dennis Drebsky<br>NIXON PEABODY LLP<br>437 Madison Avenue<br>New York, New York  10022<br>Telephone: (212) 940-3085<br>*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* |

**In the United States Bankruptcy Court**
**for the Southern District of New York**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Case No. 08-13555 (SCC) |

**STATUS REPORT OF RMBS TRUSTEES IN**
**CONNECTION WITH THE *ORDER ESTABLISHING A PROTOCOL***
***TO RESOLVE CLAIMS FILED BY RMBS TRUSTEES ON BEHALF***
***OF CERTAIN ISSUERS OF RESIDENTIAL MORTGAGE-BACKED SECURITIES***

The RMBS Trustees request a conference with the Court to help the parties accelerate resolution of the more than 91,000 RMBS Claim Files – that is, Covered Loans with breaches of representations and warranties that materially and adversely affected the value of the loans.[1]

---

[1]  The RMBS Trustees are U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust, National Association, and Deutsche Bank National Trust Company, not individually but solely in their respective capacities as trustees or separate trustees for certain RMBS trusts (each a "**Trustee**" and collectively the "**RMBS Trustees**").

This Status Report[2] summarizes the work done by the parties thus far under the Protocol and issues that have arisen, which indicate that it will take more than a decade to resolve the RMBS Claim Files, unless the Protocol process is accelerated.[3]

**I.      Protocol Process**

   *A.      Step 1 of the Protocol*

On May 31, 2016, the RMBS Trustees completed their obligations under Step 1 of the Protocol. Of the 171,663 reviewed Covered Loans (as defined below), the RMBS Trustees submitted 94,564 RMBS Claim Files to the Plan Administrator.[4]

The RMBS Trustees' five review firms and financial advisor determined that each of these 94,564 loans had one or more breaches of representations and warranties that materially and adversely affected the value of the loans to the trusts and/or the interests of certificateholders. Each RMBS Claim File set forth the breach(es) in the loan file and contains (a) all of the loan documents the RMBS Trustees received from the applicable master servicer, primary servicer and/or any other party, or otherwise relied upon in making their claim, (b) a

---

[2]     The RMBS Trustees filed other status reports: (1) ECF 50348; (2) ECF 50931; (3) ECF 51004; (4) ECF 51640; (5) ECF 52342; and (6) ECF 53161.

[3]     *See Order Establishing A Protocol To Resolve Claims Filed By Trustees On Behalf Of Certain Issuers Of Residential Mortgage-Backed Securities* (ECF 47569) (as amended, the "**Protocol Order**"). The Protocol Order, and Exhibit A to that order (as amended, the "**Protocol**"), were amended on March 30, 2016 by that certain *Order Granting Motion of RMBS Trustees To Extend The Overall Claim File Cut-Off Date For Certain Loans Under The Protocol Order And Related Relief* (ECF 52367). All terms that are not defined herein shall have the definition set forth in the Protocol. All data and numerical information contained in this Status Report is through September 4, 2016, unless otherwise indicated, and relates solely to Covered Loans, as defined below

[4]     The RMBS Trustees additionally sought to reserve the right to support allowance of their RMBS Claims by alternative means with respect to 11,051 Covered Loans that were uneconomical to review under the Protocol. The Court rejected such reservation at a hearing held on June 9, 2016 and entered an Order expunging those RMBS Claims. (*See* ECF 53163) which the RMBS Trustees have appealed (ECF 53308). The RMBS Trustees determined that 46,959 loans were paid off in full or are expected to be paid off in full and thus were not reviewed on a loan-by-loan basis under the Protocol.

2

calculation of the Purchase Price (as defined in the governing agreement), together with all supporting documentation, and (c) the date of the discovery of the breach.

B.    Step 2 of the Protocol

Through September 4, 2016, the Plan Administrator has responded to all 94,564 RMBS Claim Files as follows:

- 989 Approved Claim Files (1.0%);
- 64 Approved Claim Files with a disputed Purchase Price (0.1%);
- 63,227 Rejected Claim Files (66.9%); and
- 30,284 files deemed by the Plan Administrator to have insufficient documentation for review (32.0%) (the "**On-Hold Files**").[5]

After review of the Plan Administrator's responses, the RMBS Trustees rescinded 1,156 of the Rejected Claim Files. The RMBS Trustees have additionally rescinded 827 RMBS Claims that have since paid off without any loss.

To date, Approved Claims Reports and Rejected Claims Reports have not been filed with the Court by the Plan Administrator as required in the Protocol (Protocol IV.d.-f.).

C.    Step 3 of the Protocol

In accordance with the Protocol, the RMBS Trustees have timely resubmitted the 61,244 Rejected Claim Files to the Plan Administrator with the RMBS Trustees' rebuttal (Protocol V.a.). For 64 disputed Approved Claims by the Plan Administrator, the RMBS Trustees have

---

[5]   The RMBS Trustees do not agree that the loan files are incomplete, or that the loan files have insufficient documentation on which the Plan Administrator could determine to accept (or reject) a RMBS Claim on each loan or determine the purchase price on each loan. Prior to August 31, 2016, the RMBS Trustees believed, based on communications with the Plan Administrator's representatives, that these loans were being put aside under the Protocol *by agreement of the parties* while they attempt to negotiate under Step 3 of the Protocol a mutually acceptable allowed claim on more than 60,000 other loans.

3

timely disputed the amount to be allowed for each such disputed Approved Claim (Protocol V.b.).

In summary, of the 94,564 RMBS Claim Files submitted by the RMBS Trustees in Step 1, 91,528 RMBS Claim Files (96.8% of 94,564) still remained subject to "negotiation of a mutually acceptable allowed claim" under Step 3 of the Protocol (Protocol V.a. and V.b.).

    *i.*    *Meetings During Step 3*

As of September 4, 2016, representatives of the RMBS Trustees and the Plan Administrator have met (by phone or in person) on 37 occasions in an attempt to negotiate mutually acceptable allowed claims. The results of those meetings are as follows:

| | |
|---|---|
| RMBS Claims Discussed | 764 |
| RMBS Claims Accepted by the Plan Administrator | 13 |
| RMBS Claims Rescinded by the RMBS Trustees | 72 |
| RMBS Claims the parties are unable to resolve at Step 3 | 634 |
| RMBS Claims Deferred to a later Step 3 Meeting | 45 |

For the 72 RMBS Claims Rescinded in Step 3, the RMBS Trustees were able to reconsider their claims in light of new, factual information that the Plan Administrator had not provided during Step 2 of the Protocol.

At the current pace of meetings and the number of RMBS Claim Files reviewed at each meeting, the RMBS Trustees estimate that Step 3 alone will take more than 12 years. Accordingly, the RMBS Trustees request that "categories of issues or disputes" as provided by the Protocol, at VI.b., now be submitted to a Claims Facilitator(s). The Protocol provides that

4

when the parties have been "unable to resolve disputed issues concerning a Rejected Claims Report or a disputed Approved Claim within thirty (30) days of its inclusion in Step 3 . . . [the parties] shall proceed to Step 4 . . . ." (Protocol V.c.). The RMBS Trustees further request that all RMBS Claim Files which have not been resolved in Step 3 shall proceed to Step 4 expeditiously.

**II.    Legal Issues**

Based on the Plan Administrator's responses during Step 2 of the Protocol, there are recurring legal issues that, if resolved at Step 4 with the help of a Claims Facilitator, or at Step 5 by the Court, would enable thousands of RMBS Claims Files to be resolved.  Three of those issues of law are:

1. <u>Causation</u>:  When there is a material breach of an R&W as of the date of origination or closing, as applicable, is the claim nullified if, for instance, information in the loan file indicates that the loss was attributable to an event (such as a job loss) occurring after the closing of the Trust or that the borrower has made payments for a period of years?

2. <u>Seller Knowledge</u>:  When there is a material breach of a "no misrepresentation" R&W or other R&W as of the date of origination or closing, as applicable, is the claim nullified if Lehman (as "Seller") had no knowledge ("Seller Knowledge") of the facts giving rise to the breach where there is no requirement in the governing documents that the Seller have knowledge of such facts in order to establish a breach?

3. <u>Underwriting Guidelines</u>:  When there is a material breach of an R&W as of the date of origination or closing, as applicable, is the claim nullified if, under the applicable underwriting guidelines, the originator of the loan would have been approved it even if the originator had known the facts that establish the breach?

5

These three legal issues alone impact the vast majority of the RMBS Claim Files as evidenced by the number of Step 2 responses that contain one or more of the following rebuttal rationales from the Plan Administrator:

| *Legal Issue* | *RMBS Claim Files Affected*[6] |
|---|---|
| 1. Causation: "The evidence does not support a finding that the alleged breach had material and adverse effect." | 59,713 |
| 2. Seller Knowledge: "The No Fraud representation requires Seller knowledge, of which there is no evidence."[7] | 42,371 |
| 3. Underwriting Guidelines: "The loan would have been approved given compensating factors at origination." | 12,526 |

### III. Standard Handling Method

Lehman's expert, Craig Pino, favored resolution of groups of loans presenting the same issue, rather than on a loan-by-loan basis. Pino explained:

> *[He] believe[d] that negotiation on the 23,056 loans* [the number of RMBS Claim Files Mr. Pino estimated would be at issue during Step 3] *will not, in a high number of cases, require negotiations on the loan-level. The reason for this is that the RMBS Trustees' claims on many these loans will be decided based on a standard handling method.*
>
> For example, where the RMBS Trustees are making claims based on insufficient title insurance, these claims are the same in every instance where there is not also a title defect. As a result, *because the claims are very similar or even the same across every loan, a recovery decision can be made for the category as a whole and*

---

[6] The number of RMBS Claims Files Affected refers to the 63,227 Rejected Claim Files where the Plan Administrator has provided one of the rebuttal responses referred to in the table. See following footnote.

[7] The above-quoted language for "causation," "seller knowledge' and "underwriting guidelines" are from the Plan Administrator's responses in Step 2 to the RMBS Claim Files for each.

6

> *then applied consistently to all claims that contain insufficient title insurance.*[8]

Addressing Step 4 of the Protocol, [9] Mr. Pino explained:

> Step 4 of the Protocol involves the submission of remaining unresolved claims between the RMBS Trustees and the Plan Administrator to a Claim Facilitator. With respect to adjudication of the remaining 17,292 disputed loans [Mr. Pino's estimate], this set, too, will not, in a high number of cases, require dedicated hearings or "mini trials." *The reason is that the RMBS Trustees' claims regarding many claim decisions in this step will also be decided, as in Step 3 above, based on a standard handling method.*[10]

Lehman's expert, William Alread, also opined that resolution of groups of loans with the same issue would be accomplished on a group basis. Mr. Alread explained:

> Further, as both sides move forward with the objection and negotiation processes in the Protocol, they will inevitably be able to apply lessons learned from other similar loans and streamline the process. …
>
> For example, in Dr. Parekh's November 14, 2014 Declaration, he suggests 34,585 to 45,738 of the loans will require review by a Claim Facilitator. Even if those numbers are accurate at the beginning of the project, based on information provided by Recovco, the percentage of loans requiring review by a Claim Facilitator will likely decrease over time, which in turn will decrease the required timeframe to complete the Protocol. *As Lehman has the opportunity to identify and relay the relevant facts for a loan, over time patterns will likely develop for similar loans*

---

[8] Declaration of Craig Pino, December 3, 2014, at p. 5 (emphasis added).

[9] The Protocol, at VI.b., provides:

On the fifth (5th) business day of each month, the Plan Administrator may submit disputed Rejected Claim Files and disputed Approved Claims (or *categories of issues or disputes*) to a Claims Facilitator for non-binding individual claim resolution or *for non-binding resolution of a category of issues or disputes*. Such disputed Rejected Claim Files and disputed Approved Claims *(or categories of issues or disputes)* shall be accompanied by the Plan Administrator's Statement and a reply by the RMBS Trustee(s) not to exceed 250 words for each alleged Material Breach (together, an "ADR Packet"), to the Claims Facilitator.

[10] Declaration of Craig Pino, December 3, 2014, at pp. 5-6 (emphasis added).

7

> *and factual disputes will oftentimes be resolved concurrently for those similar loans.*
>
> Dr. Parekh also suggests that 8,646 to 11,434 loans will require the Court's review. By utilizing the common sense approaches stated above, I believe the number of loans requiring judicial review will be much lower. *As the parties go through the Protocol, disputes will center around categories of loans instead of on specific loans. For example, my opinion is that a compliance issue (such as where a loan file is missing either a HUD-1 or a Final Truth-In- Lending statement) can be categorically addressed. This means that if there are 1,000 loans for which this type of alleged compliance issue is present, resolving the overall dispute will provide a resolution for the group of 1,000 loans.*[11]

At the status conference on September 17, 2015, regarding progress of the Protocol, this Court observed that it would be useful to make some categorical determinations:

> it seems to me that it would be useful to be in a position to make some categorical determinations that would inform the rest of the process, shorten the time and save everybody you know money and expense. Hearing Tr. 9/17/15, 26:15-19.

The RMBS Claim Files present the same legal issues (including the three mentioned above) and same fact patterns again and again. For each such legal issue and repetitive fact pattern, thousands of RMBS Claim Files can be resolved at the same time if, as Lehman proposed when it advocated the imposition of the Protocol, these claims are resolved based on those common legal issues and fact patterns.

## IV.    On-Hold Files

The RMBS Trustees requested the loan files, followed up with the servicers, and the servicers have stated that they have provided everything that exists in the origination files and the servicing files for each loan. The RMBS Trustees have satisfied the Protocol.

---

[11]    Declaration of William Alread, December 3, 2014, at pp. 9-10 (emphasis added). Dr. Parekh estimated that 46,113 loans would make it to Step 3. At the current rate of acceptance by the Plan Administrator, the number of loans proceeding to Step 4 will greatly exceed Dr. Parekh's estimate.

8

The RMBS Trustees maintain that any purported "incompleteness" of a servicing file is irrelevant to whether there was a material breach of a representation and warranty when the loan was originated. The RMBS Trustees have maintained that there is more than sufficient documentation for each of these loans on which the Plan Administrator can determine to accept or reject the related RMBS Claim and to determine the purchase price on each such loan.

## V.     Selection of Claims Facilitators

The RMBS Trustees suggest the following individuals as Claims Facilitators, because they have been mediating Lehman's claims against "downstream" originators and likely are familiar with some of the legal and fact issues that have arisen here:

1. Hon. Stephen G. Crane (Ret.); JAMS
2. Hon. Jane Cutler Greenspan (Ret.); JAMS
3. Peter L. Borowitz; (formerly Debevoise)
4. Mark E. Segall; JAMS
5. Jed Melnik; JAMS

## VI.    Disclosure to Third Parties

**The RMBS Trustees, with input from their counsel and advisors, have reviewed Covered Loans for breaches of representations and warranties. The Plan Administrator has the right to object to any claim submitted by the RMBS Trustees as provided in the RMBS Claims Protocol. While the RMBS Trustees have submitted claims, they make no representation or warranty that the Plan Administrator will agree with the claims or that the claims will ultimately be recoverable against the Estate.**

9

DATED: September 9, 2016

Respectfully Submitted,

**U.S. BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

By:  /s/ Franklin H. Top III
 **ONE OF ITS ATTORNEYS**

**LAW DEBENTURE TRUST COMPANY OF NEW YORK, SOLELY IN ITS CAPACITY AS SEPARATE TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

By:  /s/ M. William Munno

 **ONE OF ITS ATTORNEYS**

**WILMINGTON TRUST COMPANY AND WILMINGTON TRUST, NATIONAL ASSOCIATION, EACH SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

By:  /s/ John C. Weitnauer

 **ONE OF ITS ATTORNEYS**

**DEUTSCHE BANK NATIONAL TRUST COMPANY, SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTAIN MORTGAGE-BACKED SECURITIES TRUSTS**

By:  Dennis Drebsky

 **ONE OF ITS ATTORNEYS**

SK 16271 0159 7253259