UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al*,<br><br>Debtors | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered)<br><br>**AFFIDAVIT OF EDMOND ESSES IN CONNECTION WITH THE RMBS TRUSTEES' OPPOSITION TO LEHMAN BROTHERS HOLDINGS INC.'S SECOND OBJECTION TO CERTAIN RMBS TRUST CLAIMS FOR ALLEGED INSUFFICIENT DOCUMENTATION PROVIDED UNDER THE PROTOCOL** |

STATE OF NEW YORK    )
                                       : ss.:
COUNTY OF NEW YORK    )

EDMOND ESSES, being duly sworn, deposes and says:

1. I am Director, Dispute and Investigations, of Duff & Phelps LLC ("Duff & Phelps"), who are the financial advisor to the RMBS Trustees.[1] I have knowledge of the facts set forth in this affidavit.

2. This affidavit notes some of the steps I participated in, together with counsel for the RMBS Trustees (primarily William Munno), to retrieve loan files from servicers. It is submitted in connection with the RMBS Trustees' response to Lehman Brothers Holdings Inc.'s Second Objection To Certain RMBS Trust Claims For Insufficient Documentation. *See* ECF 53620.

---

[1] The RMBS Trustees are U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust, National Association and Deutsche Bank National Trust Company (the "RMBS Trustees").

**I.      The RMBS Trustees' Compliance with the Protocol**

3.      On December 29, 2014, this Court entered the *Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities* (ECF No. 47569) (the "Protocol Order").[2]

4.      The Protocol Order provided that the RMBS Trustees "promptly request and seek applicable documents and records from the master servicers with respect to the Covered Loans." Protocol Order at 5.

5.      The Protocol Order provided that "primary and master servicers for the Covered Loans from whom the RMBS Trustees and the Plan Administrator seek applicable documents and records in connection with the implementation of the RMBS Protocol shall promptly respond to the RMBS Trustees' and the Plan Administrator's reasonable document and file requests." Protocol Order at 5.[3]

6.      As set forth in the RMBS Claims Protocol (the "Protocol"), attached to the Protocol Order, the RMBS Trustees immediately began complying with the Protocol Order even before it was entered. On December 11, 2014, Lehman edited the RMBS Trustees' proposed direction letter,[4] adding a new Exhibit C to the letter, which contains a definition of "Servicing File." That new definition specified documents or records "related to a Covered Loan" that, per the direction letter, were to be retrieved and provided to the RMBS Trustees. The documents listed on the new Exhibit C did not include either loss certifications or corporate expense logs. On December 12, 2014, the RMBS Trustees sent the direction letters to NationStar and Wells

---

[2]     The Protocol Order and the RMBS Claims Protocol are attached as Exhibit 1.

[3]     A list of the master servicers and servicers is attached as a Schedule.

[4]     A copy of Lehman's cover email and edited direction letter are attached collectively as Exhibit 2.

2

Fargo in their respective capacities as master servicer for Covered Loans.[5] The direction letters directed the master servicers to have the primary servicers gather complete origination and servicing files. An Excel spreadsheet of the respective loans to be retrieved by each servicer was attached to each direction letter. Protocol at 1.[6]

7. The RMBS Trustees' direction letters to the master servicers underscored that the loan files were to be produced immediately:

> In its capacity as Trustee of the Trusts, each Trustee hereby directs and instructs the Master Servicer as follows:
>
> 1. To immediately retrieve all Servicing Files for any of the mortgage loans in any of the Trusts, which mortgage loans are set forth on the Excel spreadsheet (such loans, "Covered Loans"), in the possession or control of Aurora Loan Services LLC or Aurora Bank FSB, and send any such Servicing Files to the Trustee immediately upon receipt thereof at the address set forth below;
>
> 2. To immediately provide all Servicing Files related to Covered Loans in the possession or control of the Master Servicer in its capacity as Master Servicer or servicer to the Trustee at the address set forth below;
>
> 3. To immediately retrieve and provide to the Trustee and/or cause any securitization servicer to provide to the Trustee at the address set forth below all Servicing Files related to any Covered Loans in each securitization servicers possession or control.

RMBS Trustees' letter dated December 12, 2014 at 1. See Ex. 3.

8. On January 7, 2015, NationStar, in capacity as its master servicer, began contacting the primary servicers (the "servicers") by providing them with a copy of the direction

---

[5] At times in this affidavit, Covered Loans are referred to simply as "loans." All references in this affidavit are to Covered Loans.

[6] Copies of the RMBS Trustees two December 12, 2014 direction letters, without the Excel spreadsheet of the loans to be retrieved by each servicer, are attached collectively as Exhibit 3. Wells Fargo later requested a separate direction letter just from U.S. Bank which is included in Exhibit 3.

3

letter and Excel spreadsheet listing the loan files each servicer was to provide and requesting that each servicer provide the loan files.[7]

9.  Under the 15-month timeline imposed by the Protocol, the RMBS Trustees initially had to retrieve and review more than 205,000 Covered Loans from 12 servicers. Based on how long it took to obtain the 5,000 loan file Sample, the RMBS Trustees did not just rely on the master servicers to retrieve the loan files from the servicers.[8] The RMBS Trustees' counsel and I directly undertook to retrieve the loan files from the servicers and communicated with their business representatives and in-house and outside counsel.[9]

10. In January 2015, the RMBS Trustees sought loans from the following twelve servicers:

| Servicer | Number of Covered Loans |
|---|---|
| NationStar Mortgage LLC (master servicer and servicer) | 64,700 |
| Aurora Loan Services LLC | 60,376 |
| Ocwen Loan Servicing LLC | 54,804 |

---

[7]  An example of such an email is attached as Exhibit 4.

[8]  In 2012, the RMBS Trustees engaged Cowen & Company, LLC ("Cowen"), a financial services firm with expertise in the mortgage origination sector, to construct a random sample (the "Sample") to produce a statistically sufficient estimate of the overall breach rates for the Covered Loans at issue. Digital Risk, LLC ("Digital Risk") was primarily responsible for communicating with the master servicers to retrieve the 5,000 loans that constituted the Sample from the applicable servicers. It took about 18 months for 4,579 of the 5,000 loans to be obtained from the servicers.

[9]  In addition to immediately seeking the loan files, the RMBS Trustees promptly engaged five loan review firms to review them: (1) Digital Risk; (2) Opus Capital Market Consultants, LLC; (3) EdgeMac Mortgage Advisory Services, LLC; (4) Crosscheck Compliance LLC; and (5) The Oak Leaf Group, LLC (collectively the "Loan Review Firms"). Approximately 600 people were involved in fulfilling the requirements of the Protocol.

The RMBS Trustees also engaged Duff & Phelps to, among other tasks, (i) oversee the efforts of the Loan Review Firms for a review consistent with the RMBS Claims Protocol and each other, (ii) prepare and submit RMBS Claims to the Plan Administrator, and (iii) coordinate with the Plan Administrator's professionals on the Protocol.

4

| | |
|---|---|
| CitiMortgage Inc. | 12,314 |
| Wells Fargo & Company (master servicer and servicer) | 8,748 |
| J.P. Morgan Chase & Co. | 4,358 |
| Select Portfolio Servicing Inc. | 1,747 |
| Bank of America, N.A. | 1,461 |
| Colonial Savings, F.A. | 509 |
| PHH Mortgage Corporation (Mortgage Family) | 9 |
| Midwest Loan Services Inc. | 33 |
| Bank of Hawaii Corporation | 1 |

11.    The RMBS Trustees emphasized to the servicers the requirement for full and prompt cooperation. With one exception noted below, the servicers promptly cooperated, and several hired additional staff to locate, and retrieve loan files.

12.    For example, in communicating with each of the servicers in January 2015, the RMBS Trustees emphasized that full cooperation was essential and that time was of the essence:

> As you [NationStar] know from my emails to the servicers, time is of the essence. We are facing Court deadlines to retrieve the loan files. We are available to discuss any issues.
>
> We note that during the hearing on December 10, 2014, Judge Chapman emphasized "the ability of the Court to assist in obtaining the documents." Tr. at 340:3-4. Judge Chapman noted that when parties call "people respond with more or less urgency," but "it's another thing when the Court gets involved" (id. at 340:6-8) "backed up by the ability of the Court to order parties to [pro]duce documents." Id. at 357:22-23. "The files have to move." Id. at 350: 25.

RMBS Trustee email dated January 14, 2015 to NationStar.[10]

---

[10]    A copy of the email is attached as Exhibit 5.

5

13. The servicers cooperated by delivering loan files. The Loan Review Firms, with oversight by Duff & Phelps, reviewed the loan files to determine if the files were sufficient to review and assert claims, and, if so, to determine if there were one or more breaches of a representation and warranty that materially and adversely affected the value of the loan to the trust or its certificateholders. The RMBS Trustees met every Protocol milestone as follows:

| Date | Total[11] |
|---|---|
| March 17, 2015 | 2,059 |
| March 27, 2015 | 471 |
| March 30, 2015 | 2,015 |
| March 31, 2015 | 5,765 |
| April 23, 2015 | 1,446 |
| April 30, 2015 | 8,930 |
| May 15, 2015 | 3,414 |
| May 29, 2015 | 12,156 |
| June 17, 2015 | 3,811 |
| June 29, 2015 | 12,307 |
| July 17, 2015 | 4,135 |
| July 31, 2015 | 12,865 |
| August 14, 2015 | 3,023 |
| August 31, 2015 | 13,977 |
| September 18, 2015 | 4,128 |
| September 30, 2015 | 12,872 |
| October 15, 2015 | 4,716 |
| October 30, 2015 | 12,284 |
| November 17, 2015 | 3,333 |
| November 30, 2015 | 13,667 |
| December 15, 2015 | 2,890 |
| December 30, 2015 | 14,110 |
| January 15, 2016 | 2,227 |
| January 29, 2016 | 14,773 |
| February 16, 2016 | 2,192 |
| February 29, 2016 | 14,808 |
| March 16, 2016 | 6,234 |
| March 31, 2016 | 20,124 |
| April 29, 2016 | 629 |
| May 31, 2016 | 3,261 |
| **Total** | **218,622** |

---

[11] *See* RMBS Trustees' Status Report dated June 24, 2016, ECF 53161 at p. 9 of 9.

14. More specifically, the RMBS Trustees continually communicated with these twelve servicers to retrieve loan files.

    **a.**    **NationStar Mortgage LLC ("NationStar")**

15. NationStar was responsible for servicing 64,700 loans.

16. The RMBS Trustees contacted NationStar, as servicer, for the first time on December 17, 2014.[12]

17. The RMBS Trustees and Duff & Phelps had at least 117 separate communications with NationStar, by email and telephone in the course of retrieving the loan files associated with such loans.

    **b.**    **Aurora Loan Services, LLC ("Aurora")**

18. Aurora was responsible for servicing 60,376 loans.

19. The RMBS Trustees and Duff & Phelps were generally in constant contact with representatives of the Plan Administrator in the course of retrieving the loan files associated with such loans.

    **c.**    **Ocwen Loan Servicing LLC ("Ocwen")**

20. Ocwen was responsible for servicing 54,804 loans.[13]

21. The RMBS Trustees contacted Ocwen directly for the first time on January 8, and on January 22, 2015, the RMBS Trustees separately provided them with a copy of the Protocol, the Protocol Order, and the loan file population serviced by Ocwen.[14]

---

[12] A copy of the email is attached as Exhibit 6.

[13] This number includes loan files formerly serviced by GMAC Mortgage, HomeQ Servicing, Homeward Residential Inc. (f/k/a/ AHMSI), and Litton Loan Servicing. Ocwen assumed their servicing responsibilities.

[14] A copy of the emails are attached as Exhibit 7.

7

22. The RMBS Trustees and Duff & Phelps had at least 182 separate communications with Ocwen in the course of retrieving the loan files associated with such loans.

### d. CitiMortgage Inc. ("Citi")

23. Citi was responsible for servicing 12,314 loans.

24. The RMBS Trustees contacted Citi directly for the first time on January 13, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by Citi.[15]

25. The RMBS Trustees and Duff & Phelps had at least 127 separate communications with Citi, by email and telephone in the course of retrieving the loan files associated with such loans.

### e. Wells Fargo & Company ("Wells Fargo")

26. Wells Fargo was responsible for servicing 8,748 loans.

27. The RMBS Trustees contacted Wells Fargo, as servicer, for the first time on January 13, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by Wells Fargo.[16]

28. The RMBS Trustees and Duff & Phelps had at least 75 separate communications with Wells Fargo, by email and telephone in the course of retrieving the loan files associated with such loans.

---

[15] A copy of the email is attached as Exhibit 8.

[16] A copy of the email is attached as Exhibit 9.

8

  f.  **J.P. Morgan Chase & Co. ("Chase")**

29. Chase was responsible for servicing 4,358 loans.[17]

30. The RMBS Trustees contacted Chase directly for the first time on January 13, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by Chase.[18]

31. The RMBS Trustees and Duff & Phelps had at least 161 separate communications with Chase, by email and telephone in the course of retrieving the loan files associated with such loans.

  g.  **Select Portfolio Servicing Inc. ("SPS")**

32. SPS was responsible for servicing 1,747 loans.

33. The RMBS Trustees contacted SPS directly for the first time on January 14, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by SPS.[19]

34. The RMBS Trustees and Duff & Phelps had at least 68 separate communications with SPS, by email and telephone in the course of retrieving the loan files associated with such loans.

  h.  **Bank of America, N.A. ("Bank of America")**

35. Bank of America (f/k/a BAC Home Loan Servicing LP) was responsible for servicing 1,461 loans.

---

[17] This number includes loans that had been serviced by Washington Mutual Inc. ("WaMu"). Chase assumed WaMu's servicing responsibilities.

[18] A copy of the email is attached as Exhibit 10.

[19] A copy of the email is attached as Exhibit 11.

9

36. The RMBS Trustees contacted Bank of America directly for the first time on January 14, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by Bank of America.[20]

37. The RMBS Trustees and Duff & Phelps had at least 146 separate communications with Bank of America by email and telephone in the course of retrieving the loan files associated with such loans.

### i. Colonial Savings, F.A. ("Colonial Savings")

38. Colonial Savings was responsible for servicing 509 loans.

39. The RMBS Trustees contacted Colonial Savings directly for the first time on January 14, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the loan file population serviced by Colonial Savings.[21]

40. The RMBS Trustees and Duff & Phelps had at least 46 separate communications with Colonial Savings by email and telephone in the course of retrieving those loan files.

41. As Colonial Savings was not prompt in providing loan files, the RMBS Trustees served Colonial Savings with a subpoena on July 21, 2015.[22]

42. On August 11, 2015, Colonial Savings produced the loan files associated with such loans.

### j. PHH Mortgage Corporation ("PHH")

43. PHH was responsible for servicing 9 loans.

---

[20] A copy of the email is attached as Exhibit 12.
[21] A copy of the email is attached as Exhibit 13.
[22] A copy of the subpoena is attached as Exhibit 14.

10

44. The RMBS Trustees contacted PHH directly for the first time on January 14, 2015, separately providing them with a copy of the direction letter the Protocol, the Protocol Order, and the loan file population serviced by PHH.[23]

45. The RMBS Trustees and Duff & Phelps had at least 46 separate communications with PHH, by email and telephone in the course of retrieving the loan files associated with such loans.

### k. Midwest Loan Services Inc. ("Midwest")

46. Midwest was responsible for servicing 33 loans.

47. The RMBS Trustees contacted Midwest directly for the first time on January 14, 2015, separately providing them with a copy of the direction letter the Protocol, the Protocol Order, and the loan file population serviced by Midwest.[24]

48. The RMBS Trustees and Duff & Phelps had at least 32 separate communications with Midwest, by email and telephone in the course of retrieving the loan files associated with such loans.

### l. Bank of Hawaii Corporation ("Bank of Hawaii")

49. Bank of Hawaii was responsible for servicing 1 loan.

50. The RMBS Trustees contacted Bank of Hawaii directly on January 14, 2015, separately providing them with a copy of the direction letter, the Protocol, the Protocol Order, and the identification of the one loan file serviced by Bank of Hawaii.[25] Bank of Hawaii promptly provided the loan.

---

[23] A copy of the email is attached as Exhibit 15.

[24] A copy of the email is attached as Exhibit 16.

[25] A copy of the email is attached as Exhibit 17.

11

## II. The RMBS Trustees Identified Other Potential Covered Loans in January 2016

51. In January 2016, the RMBS Trustees identified other potential Covered Loans. Nearly 12,000 of these potential Covered Loans were serviced by nine of the servicers who already were retrieving loan files. Requests for those loan files were promptly made to those servicers. Other servicers were identified who were not already retrieving loan files who may have had potential Covered Loans.

52. The RMBS Trustees contacted NationStar as master servicer in January 2016 to request each of these other servicers to provide the loan files for these potential Covered Loans. The RMBS Trustees provided NationStar with a cover email to send to each servicer emphasizing that the loan files be promptly provided.[26]

53. As in 2015, NationStar's email again emphasized that the loan files had to be promptly provided:

> The RMBS Trustees . . . request your help to retrieve recently identified loan files. Time is of the essence. The RMBS Trustees are facing a Court-ordered deadline of March 31, 2016 to retrieve, review and submit to Lehman all the loan files that have a material breach of a representation and warranty. The Trusts' claims for loans with breaches will be barred unless submitted by March 31, 2016, at the latest.[27]

54. The RMBS Trustees and Duff & Phelps had numerous communications with these servicers to retrieve the loan files:

| Servicer | Covered Loan Files |
|---|---|
| • Bridgefield (Citadel)[28] | 751 |

---

[26] A copy of the email is attached as Exhibit 18.

[27] An example of such an email is attached as Exhibit 19.

[28] Bridgefield Mortgage became Resmae Mortgage Corporation. As explained later (see paragraph 55), Citadel Investment Group purchased Resmae's servicing business.

12

- U.S. Bank National Association        25
- Specialized Loan Servicing, LLC       12
- ABN Amro                              5
- MetLife Home Loans                    3

55.     Bridgefield Mortgage and its successor Resmae Mortgage Corporation went out of business. On April 28, 2016, the RMBS Trustees determined that Citadel Investment Group ("Citadel") had purchased Resmae's subprime lending business from Resmae's bankruptcy. Accordingly, the RMBS Trustees contacted Citadel on April 28, 2016, providing them with a copy of the Protocol, the Protocol Order, and the loan file population serviced by Citadel.[29]

56.     Because of the impending May 31, 2016 deadline for submitting RMBS Claim Files on a loan-by-loan basis,[30] the RMBS Trustees served Citadel with a subpoena on May 2, 2016, requesting the production of 751 loan files.

57.     The RMBS Trustees and Duff & Phelps had at least 21 separate communications with Citadel, by email and telephone in the course of retrieving those loan files.

58.     On May 20, 2016, Citadel produced the loan files associated with such loans.

### III.    The Plan Administrator's Request that Servicers Provide Loss Certifications and Corporate Expense Logs

59.     Beginning in April 2015, the Plan Administrator[31] advised the RMBS Trustees that it wanted "loss certifications" (an item *not* listed in the Protocol) and corporate expense

---

[29]    A copy of the email is attached as Exhibit 20.

[30]    On March 31, 2016, the Overall Claim File Cut-Off Date in the Protocol was extended from March 31, 2016 to May 31, 2016 with respect to loans that had not been previously identified that the RMBS Trustees had identified in January 2016. *See Order Granting Motion of RMBS Trustees To Extend The Overall Claim File Cut-Off Date For Certain Loans Under The Protocol Order And Related Relief* (ECF 52367). Loan files serviced by Citadel were among them.

[31]    References to the Plan Administrator are to its representatives who discussed the Protocol with Duff & Phelps.

13

logs.[32] The Plan Administrator stated that it wanted these documents so it could audit the expenses incurred by the servicer and the loss amount provided by the servicer and master servicer to the RMBS Trustees.[33]

60. We noted to the Plan Administrator that the loss information for each loan is reported by the servicer and master servicer, appears in remittance reports,[34] and is publicly available.

61. We also noted to the Plan Administrator that the Protocol did not require every document listed on Exhibit B (Mortgage Loan File Documentation) to be provided as part of a RMBS Claim. The Protocol states that the documents include "all of the loan documents the RMBS Trustees received from the applicable master servicer, primary servicer and/or any other party, or otherwise relied upon in making their claim, which may include the documentation identified in Exhibit B, to the extent such documentation is available and applicable to a particular loan file." Protocol III (e)(vi).

62. Nevertheless, we and the RMBS Trustees' counsel, specifically contacted servicers to retrieve any loss certifications and corporate expense logs they might have that were not previously provided. To that end, the RMBS Trustees followed up with servicers. For example:

    a. On April 23, 2015, the RMBS Trustees wrote to NationStar,[35] Ocwen[36],

---

[32] Copies of the letters are attached collectively as Exhibit 21.

[33] Under the Protocol Order, the Plan Administrator could directly request this information from servicers, but did not do so. Protocol Order at 5 ("primary and master servicers . . . shall promptly respond to the RMBS Trustees' and the Plan Administrator's reasonable document and file requests.").

[34] Remittance reports are monthly reports available on the RMBS Trustees' portals for investors regarding the trusts and the loans in the trust.

[35] A copy of the email is attached as Exhibit 22.

[36] A copy of the email is attached as Exhibit 23.

14

        Citi,[37] Wells Fargo,[38] Chase,[39] and Colonial Savings[40] requesting any loss certifications and corporate expense logs.

    b.    In June 2015, the RMBS Trustees also followed up with NationStar,[41] Ocwen,[42] Citi,[43] Wells Fargo,[44] Chase,[45] SPS,[46] Bank of America,[47] Colonial Savings[48] and Midwest[49] regarding any loss certifications and corporate expense logs they had.

    c.    The RMBS Trustees and Duff & Phelps had eighteen separate communications with NationStar, fourteen with Ocwen, sixteen with Citi, twelve with Wells Fargo, nine with Chase, five with SPS, six with Bank of America and four with Midwest regarding any loss certifications and corporate expense logs they had.

63. We and the RMBS Trustees' counsel learned from servicers that any loss certifications or corporate expense logs (or similar documents or information) had been previously provided to the extent they existed. For example, on June 30, 2015, NationStar advised that they had included loss certifications to the extent they were available, which were submitted to the Plan Administrator with the relevant RMBS Claim Files. NationStar was additionally able to provide a loss worksheet summarizing the Purchase Price calculations. Duff

---

[37] A copy of the email is attached as Exhibit 24.

[38] A copy of the email is attached as Exhibit 25.

[39] A copy of the email is attached as Exhibit 26.

[40] A copy of the email is attached as Exhibit 27.

[41] A copy of the email and the letter are attached collectively as Exhibit 28.

[42] A copy of the email is attached as Exhibit 29.

[43] A copy of the email is attached as Exhibit 30.

[44] A copy of the email is attached as Exhibit 31.

[45] A copy of the email is attached as Exhibit 32.

[46] A copy of the email is attached as Exhibit 33.

[47] A copy of the email is attached as Exhibit 34.

[48] A copy of the email is attached as Exhibit 35.

[49] A copy of the email is attached as Exhibit 36.

15

& Phelps submitted this loss worksheet to the Plan Administrator on September 1, 2015[50] who reviewed the data and confirmed it had the requested information and cleared 4,060 loan files for its review.

64. On June 17, 2015, Midwest advised by telephone that it had already provided the requested servicing information.

65. On June 24, 2015, Chase advised that it had produced the servicing information requested by the Plan Administrator, including screenshots of their servicing platform where much of the information was captured, which was duly submitted to the Plan Administrator with the relevant RMBS Claim files.[51]

66. On July 16, 2015, Wells Fargo advised that the loan data the Plan Administrator is requesting had already been included as screenshots in the loan files produced.[52]

67. Similarly, on August 10, 2015, Citi advised that it had already provided the loss certification data requested by the Plan Administrator.[53]

Edmond Esses

Sworn to before me
September 29, 2016

Notary Public

JESSE M AKERMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01AK6037415
Qualified in New York County
My Commission Expires February 14, 2018

---

[50] A copy of the email is attached as Exhibit 37.
[51] A copy of the email is attached as Exhibit 38.
[52] A copy of the email is attached as Exhibit 39.
[53] A copy of the email is attached as Exhibit 40.

**Schedule**

| Servicer | Loan Files Requested |
|---|---|
| NationStar Mortgage LLC (master servicer and servicer) | 64,700 |
| Aurora Loan Services LLC | 60,376 |
| Ocwen Loan Servicing LLC | 54,804 |
| CitiMortgage Inc. | 12,314 |
| Wells Fargo & Company (master servicer and servicer) | 8,748 |
| J.P. Morgan Chase & Co. | 4,358 |
| Select Portfolio Servicing Inc. | 1,747 |
| Bank of America, N.A. | 1,461 |
| Bridgefield (Citadel) | 751 |
| Colonial Savings, F.A. | 509 |
| ABN Amro Bank | 5 |
| PHH Mortgage Corporation (Mortgage Family) | 9 |
| MetLife Home Loans (f/k/a First Horizon Home Loans) | 3 |
| Midwest Loan Services Inc. | 33 |
| Specialized Loan Servicing, LLC | 12 |
| U.S. Bank National Association | 25 |
| Bank of Hawaii Corporation | 1 |