Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5

6    LEHMAN BROTHERS HOLDINGS INC.,    Case No. 08-13555-scc

7

8             Debtor.

9

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                   U.S. Bankruptcy Court

13                   One Bowling Green

14                   New York, New York

15

16                   October 6, 2016

17                   12:30 PM

18

19   B E F O R E :

20   HON SHELLEY C. CHAPMAN

21   U.S. BANKRUPTCY JUDGE

22

23

24

25

1    Hearing re:  Doc #52994 Plan Administrator's Objection to

2    Demands for Postpetition Interest Related to Claim No. 28308

3    filed by Garrett A Fail on behalf of Lehman Brothers

4    Holdings. Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South and Jamie Gallagher

Page 3

```
 1   A P P E A R A N C E S :

 2   WEIL, GOTSHAL & MANGES LLP

 3        Attorneys for Debtor

 4        767 Fifth Avenue

 5        Hew York, NY 10153-0019

 6

 7   BY:  GARRETT A. FAIL, ESQ.

 8        SCOTT BOWLING, ESQ.

 9

10   SCHULTE ROTH & ZABEL LLP

11        Attorneys for Centerbridge Special Credit Partners II,

12        CCP Credit Acquisition Holdings, and Recovery Partners

13        919 Third Avenue

14        New York, NY 10022

15

16   BY:  ALAN R. GLUCKMAN, ESQ.

17        MICHAEL KWON, ESQ.

18

19   MORGAN LEWIS

20        Attorney for Chase Lincoln First Commercial Corp.

21        101 Park Avenue

22        New York, NY 10178-0060

23

24   BY:  JOSHUA DORCHAK, ESQ.

25
```

Page 4

1                     P R O C E E D I N G S

2              THE COURT:  Please have a seat.  How is everyone?

3     Good to see everyone.  How are you, Mr. Fail?

4              MR. FAIL:  Very well, Your Honor.  Yourself?

5              THE COURT:  Okay.  So we are here on the objection

6     -- plan administrator's objection to certain postpetition

7     interest claims.

8              MR. FAIL:  Good afternoon, Your Honor.  For the

9     record Garrett Fail, Weil, Gotshal & Manges, here with my

10    colleague, Scott Bowling, today on behalf of Lehman Brothers

11    Holdings Inc, the plan administrator in these cases.  Thank

12    you, Your Honor, for making time this afternoon for us.

13             THE COURT:  Sure.

14             MR. FAIL:  I thought I would begin with a brief

15    background and set the context for today's objection.

16             As Your Honor is aware there were originally 23

17    Chapter 11 debtors in these cases.  Eight cases have already

18    been able to have been closed.  Of those that are remaining

19    four debtors have already satisfied all allowed unsecured

20    claims in full.  Those are the debtors that we refer to as

21    Lot C, LBCC LBDP, and LBFP.

22             Before closing these cases and after resolving all

23    claims and assets in them the plan administrator will need

24    to determine the amounts of postpetition interest to pay and

25    to make distributions in excess of that being reserved to

Page 5

1    equity interests in accordance with the plan.

2              The plan provides in Section 8.13(c) for the

3    payment of interest "at the rate applicable in the contract

4    or contracts on which such allowed claim is based or absent

5    such contractual rate at a statutory rate."

6              A brief update on the status of the postpetition

7    interest demands generally I think would also be helpful,

8    Your Honor.

9              There were a combined $877 million of allowed

10   third-party claims thus far against the debtors Lot C and

11   LBCC collectively.  Those came out of roughly 208 claims

12   held by 95 unique claim holders.

13             The Court established, as Your Honor is aware, a

14   bar date for demands against Lot C and LBCC, and that bar

15   date order established the maximum that debtors would be

16   liable for and limited the basis upon which demands for PPI

17   could be made.

18             You'll recall, Your Honor, that we appeared

19   approximately two years ago in some complex litigation that

20   was eventually settled.

21             To date, Your Honor, I'm pleased to report that

22   the plan administrator has resolved postpetition interest

23   for 88 percent of the dollar amounts of allowed claims

24   against Lot C and LBCC.  That's approximately $781 million

25   in principal of claims out of the 887 million in principal,

Page 6

1    leaving postpetition interest for claims with a face amount

2    of 106 million of allowed remaining.  That's 12 percent

3    remaining to be resolved.  Those that remain are held by

4    only three holders.  The remaining 92 claim holders have

5    been resolved.

6            The 87.6 million in allowed claims before the

7    Court today constitutes 83 percent of the remaining

8    unresolved postpetition interest for allowed claims, and

9    it's two out of the three holders.  So once this matter is

10   disposed of there'll be only one holder remaining with

11   approximately $18 million of face amount of a claim, 2

12   percent of the total that has been allowed.  So there really

13   has been tremendous progress through settlements where

14   settlements have been possible.

15           The demands at issue today are based on claims of

16   an affiliate against LBCC.  Your Honor, may recall that

17   equity interests in LBCC are held by Lehman Brothers

18   Holdings Inc.  Today the maximum recovery by an LBHI

19   creditor has been approximately 40 percent by one of the

20   classes of claims, lower percentages by other classes

21   pursuant to the plan.

22           So excess being reserved for postpetition interest

23   demands at Lot C and LBCC will go to satisfy the principal

24   of claims that have not yet been satisfied in full.

25           The postpetition bar date order, Your Honor may

Page 7

1   recall, provided that the claims procedures established in

2   these cases would apply.  That's on page 4 of the

3   postpetition bar date order.

4           So today we are treating this as a sufficiency

5   hearing and the standard is that we will accept as arguendo

6   the facts being asserted.  The plan administrator believes

7   that the Court can rule under those circumstances today and

8   that would be the most efficient way of proceeding.  We

9   think it would be determinative without the need for further

10  discovery or further proceedings.

11          Your Honor, I'll assume the Court's familiarity

12  with the pleadings and the facts --

13          THE COURT:  Yes.

14          MR. FAIL:  -- and propose to just walk briefly

15  through some of the relevant documents, turn to some of the

16  specifics of the objection, and reserve any time to respond

17  to arguments made by holders or answer any questions Your

18  Honor has.

19          THE COURT:  Okay.  That sounds --

20          MR. FAIL:  Of course unless you have another way

21  that you propose to proceed.

22          THE COURT:  That's fine.  I have read everything,

23  why don't you go ahead.

24          MR. FAIL:  Thank you.  And I have copies of any

25  documents that you may need --

Page 8

1              THE COURT:  Okay.

2              MR. FAIL:  -- if you do.

3              So we can start with the proof of claim that gave

4    rise that started this.  It's claim number 28308.  It was

5    filed on the bar date by the joint provisional liquidators

6    of Lehman Re Ltd., which was an affiliate of the debtors.

7    It asserted in excess of $89.9 million.  The details are

8    limited in the claim and they're limited to one paragraph,

9    it's paragraph 6.  It references "one or more intercompany

10   transactions or arrangements."  And "funds deposited with

11   LBCC."  It does not identify any contract between LBCC and

12   Lehman Re.

13             On February 28th, 2012, years later, the debtors

14   filed a motion to approve a settlement with Lehman Re,

15   that's at ECF number 25864.  Noteworthy, Your Honor, this

16   was after the plan was filed and after the plan was

17   confirmed so all parties would be aware and familiar with

18   the provisions of the plan.

19             Paragraph 8 of the motion that was filed with the

20   Court described Lehman Re's assertion of approximately

21   $2.3 billion in claims against the various debtors, and the

22   negotiations that led to the ultimate reduction of the

23   claims to approximately $1 billion.  The motion included the

24   statement that, "In addition, the debtors will benefit from

25   certain releases from asserted and potential claims by

Page 9

1    Lehman Re and certain of the Lehman Re creditors and their

2    affiliates."

3            Noteworthy also, Your Honor, the motion described

4    a net worth maintenance agreement between Lehman Re and

5    LBHI, that's one contract.  A master repurchase agreement

6    between Lehman Re and LCPI, another debtor and another

7    contract.  An ISDA agreement between Lehman Re and LBSF,

8    another agreement and another debtor.  But it only described

9    "certain undocumented foreign exchange transactions," with

10   LBCC, and that's in paragraph 33 of the motion.

11           Consistent with that, Your Honor, the settlement

12   did not reference a contract between Lehman Re and LBCC.

13   But the settlement agreement was a contract between LBCC and

14   Lehman Re, and it contained a number of provisions relevant

15   to the current dispute.

16           Section 18.8 on page 36 of the settlement

17   agreement provided that the settlement agreement embodied

18   the entire agreement and understanding, and "supersedes all

19   prior written or oral commitments, arrangements, or

20   understandings."

21           Article VII on page 20 entitles arriving contracts

22   provided that all other contracts between the Lehman U.S.

23   parties on one hand and Lehman Re on the other shall be "of

24   no force and effect as of the date hereof."

25           And Section 15.1 on page 30 provided that Lehman

Page 10

1    Re release all claims, demands, damages, causes of action,

2    whether based on contract or statute, against LBCC "arising

3    under, in connection with, or relating in any manner to,"

4    and then a little bit later "any of the documents,

5    instruments, agreements, or transactions described in or

6    contemplated by the proofs of claims filed by Lehman Re."

7    It was all very clear.

8            In fact the order approving the settlement was

9    likewise clear.  That order is filed at ECF 27085, it was

10   entered on March 22nd, 2012, after the plan was effective.

11           On page 3 of the order it states that all

12   contracts between the Lehman U.S. parties on the one hand

13   and Lehman Re on the other shall be "of no force and

14   effect."  And I have copies of any of these documents that

15   Your Honor may need.

16           Turning to the postpetition interest demands

17   themselves, Centerbridge Special Credit Partners II LP, CCP

18   Credit Acquisitions Holdings LLC, Chase Lincoln First

19   Commercial Corporation, and Lehman Re Ltd. filed

20   substantially identical demands for postpetition interest

21   based on their respective portions of the Lehman Re allowed

22   claim that they held at the time.  Copies of the demands

23   were attached to a declaration that we filed.  The

24   declaration was by Ann Gahard Boudler (ph), she's a

25   representative of Epic, and that was at ECF 52995, and

Page 11

1    there's no dispute as to the authenticity of those demands.

2    They are what they are.

3              Noteworthy, Your Honor, the demands do not

4    identify a contract other than the settlement agreement, and

5    here's the important phrase "on which the Lehman Re claim

6    was based."

7              So we cited the demands and we quoted in our

8    pleadings that they said, "They were not aware of an express

9    written agreement governing the transfer of funds to LBCC

10   and the management thereof."  There are certain ellipses in

11   there, but the pleadings have the proper citations.

12             The demands seek postpetition interests based on a

13   contract rate, Your Honor, from a cash management manual

14   that they attached, which provides for interest in certain

15   circumstances at a rate of one week LIBOR flat reset daily,

16   but the demands seek interest at LIBOR fixed as of LBCC's

17   petition date.

18             So based on the foregoing the plan administrator

19   filed its objection, and for either of two reasons the Court

20   should find that the holders cannot demonstrate an

21   entitlement to a contract rate of interest, and either one

22   would be determinative of today.

23             First, assume arguendo that the GCCM as it's

24   referred to sometimes or the draft as we refer to it or

25   whatever the document is that was attached was relevant to

Page 12

1   prepetition between LBCC and Lehman Re.  In this case the

2   settlement agreement nonetheless superseded it.

3           Section 18.8, as I read before, provided that the

4   settlement agreement embodied the entire agreement and

5   supersedes all prior written or oral commitments,

6   arrangements, or understandings.

7           Article VII additionally said that any prepetition

8   contract shall be "of no force and effect as of the date

9   hereof."

10          Section 15.1 provided that Lehman Re released all

11  claims arising under and in connection with relating to in

12  any manner any of the documents, instruments, agreements,

13  transactions described in or contemplated by the claims.

14          Section 13.2 of the settlement agreement provided

15  that the agreement is enforceable with its terms.  The

16  settlement agreement itself contains no provision for a

17  contract rate of interest.  Therefore the holders are

18  entitled to only interest at the statutory rate pursuant to

19  the plan.

20          Now with this first objection alone the plan

21  administrator rebutted the prima facie validity of the

22  demand and shifted the burden back to the holders to

23  demonstrate the validity of their demand.  The holders only

24  response to this, to the various separate provisions in the

25  agreement and in the Court's order, is that they are

Page 13

1   boilerplate.

2          So, Your Honor, you can find that the agreement is

3   (indiscernible) and that it's not boilerplate, but you don't

4   need to do that, because there is no law cited or otherwise

5   that supports disregarding clear contract language whether

6   it's boilerplate or not.

7          We cited cases to support our point, there's no

8   cases cited to disregard all of the provisions.

9          They didn't and can't meet their burden to

10  demonstrate that the settlement agreement is unenforceable,

11  it should therefore be enforced, and even assuming that the

12  Lehman Re claim is based on a prepetition contract, and it

13  doesn't matter what that contract is and there would be no

14  need for discovery to figure out if it's a final one, if

15  there is one, a postpetition interest demand based on any

16  contract would be denied, and the Court can rule on a

17  sufficiency hearing basis on that point alone today.

18         But second and independently, Your Honor, the

19  Court can find at a sufficiency hearing that the allowed

20  Lehman Re claim is based on the settlement agreement.  The

21  settlement agreement is the contract on which the allowed

22  Lehman Re claim is based.

23         Section 2.3 of that settlement agreement provides

24  that "on the effective date the LBCC claim shall be allowed

25  as an unsecured, non-priority affiliate claim against LBCC

Page 14

1      in a fixed liquidated amount of $87,621,000."  And neither

2      the proof of claim nor the demands identified any other

3      contract on which the claim is based.

4              Again, with this second objection the plan

5      administrator rebutted the prima facie validity of the

6      demand and shifted the burden back to the holders to prove

7      the validity of their demands.

8              In response to the second point, Your Honor, the

9      holders made two arguments.

10             First they argue that the plan administrator

11     previously admitted that the GCCM or the draft was the

12     applicable contract rate for PPI, and we went through in

13     detail why that just wasn't so.  It was an assumption

14     arguendo that was quoted and referenced in the holders

15     papers and there was a broad reservations of rights in the

16     first objection that was filed and withdrawn before there

17     was any response to it.

18             Second, the holders argued that we conceded now

19     that the pending objection -- in the pending objection that

20     the GCCM provided applicable contract rate.  Nothing could

21     be further from the truth, and we cited why that just wasn't

22     the case.

23             So the holders didn't and can't meet their burden

24     to demonstrate that the allowed Lehman Re claim isn't the

25     contract on which the settlement is based, and accordingly

1    their demands for PPI based on a contract rate must be

2    denied.

3         So, Your Honor, if the Court agrees for either

4    reason that the holders are not entitled to a contract rate

5    then the Court must find that the holders are entitled to

6    interest at the federal judgment rate.  The holders seek an

7    English statutory rate, but as set forth in the objection

8    and the reply, there's absolutely no basis for such a rate.

9         If the Court disagrees with both of our arguments

10   though and finds that the allowed Lehman Re claim may be

11   based on a contract -- may -- then the holders are limited

12   to the contract on which they can allege their demands, and

13   that is the draft that they alleged.

14        So if the Court assumes arguendo, as it can, that

15   the draft is the contract on which the claim is based, then

16   it must find that the contract rate is floating and not

17   fixed and U.S. dollar denominated.

18        As we said in our objection and the reply, there's

19   absolutely no basis in contract or law to cherry pick

20   provisions from the interest provisions to turn a floating

21   rate into a fixed rate in its context.

22        The plan administrator is proposing to pay the

23   claimant's interest at the federal judgment rate.  The plan

24   administrator thinks that's dictated by the facts and the

25   law here and that would approximate $6.4 million in

Page 16

1    interest.

2            If the Court were to hold that the holders are

3    entitled to look at the draft or the GCCM we think that

4    you'll find that they're entitled to only $1 million, Your

5    Honor, which is obviously less than the $6.4 million that

6    the plan administrator was seeking.  But we think that's

7    what's required by law if we were to get to that juncture.

8    So we were reminded of the old adage, be careful of what you

9    ask for because you might get it.

10           I can address any of these arguments later in

11   response to any arguments that the holders make, happy to

12   answer any questions Your Honor.

13           THE COURT:  Could you explain again, Mr. Fail, the

14   difference between the two arguments?  Because they both

15   come to the same conclusion.

16           MR. FAIL:  They do come to the same conclusion.

17           THE COURT:  That the settlement agreement is

18   dispositive, right?  So even if you assume that the GCCM was

19   an applicable contract you say it's superseded by the

20   settlement agreement, right?

21           MR. FAIL:  Right.

22           THE COURT:  So if it's superseded by the

23   settlement agreement -- if the settlement agreement is the

24   contract --

25           MR. FAIL:  Yes.

 1                THE COURT:  -- you're in the settlement agreement.

 2                MR. FAIL:  Yes.

 3                THE COURT:  One way or the other.

 4                MR. FAIL:  Agree.

 5                THE COURT:  Okay.  Only lawyers could make two

 6     arguments about that one.

 7                MR. FAIL:  Well made two arguments because they

 8     want you to disregard the language that says it's

 9     superseded.  The argument -- we made the arguments that the

10     settlement agreement says --

11                THE COURT:  I see.

12                MR. FAIL:  -- it's superseded, and they said

13     that's boilerplate.  Don't read that, read everything else

14     about settlement agreement.

15                THE COURT:  I got it.

16                MR. FAIL:  Read a billion dollars in allowed

17     claims, but forget about the releases, forget about the

18     other benefits of the bargains that were given.

19                So if Your Honor is inclined to accept that

20     argument --

21                THE COURT:  I see what you're saying.

22                MR. FAIL:  -- we say well just look at the

23     agreement.  What is the contract that gave rise to this

24     claim?  It's the actual settlement agreement itself, it

25     doesn't need to supersede anything else, this is the

Page 18

1    agreement.  And so for two independent closely related --

2              THE COURT:  Got it.

3              MR. FAIL:  -- reasons you get to the same point.

4              THE COURT:  Okay.  All right.  Very good.  Thank

5    you.

6              MR. FAIL:  Thank you, Your Honor.

7              THE COURT:  All right.

8              MR. GLICKMAN:  Good afternoon, Your Honor.

9              THE COURT:  Good afternoon.

10             MR. GLICKMAN:  Alan Glickman, Schulte Roth &

11    Zabel, and here at counsel table is my colleague, Michael

12    Kwon.

13             THE COURT:  Okay.

14             MR. GLICKMAN:  We represent Centerbridge Special

15    Credit Partners II, CCP Credit Acquisition Holdings, and

16    Recovery Partners, they're all holders of claim 28308.  The

17    other holder is Chase Lincoln First Commercial Corp., which

18    is represented by Josh Dorchak of Morgan Lewis, who's also

19    at counsel table.

20             THE COURT:  Okay.

21             MR. GLICKMAN:  Now it's our turn to tell the

22    story, and it used to be a pretty simple story until we had

23    a change of objections by the plan administrator.

24             THE COURT:  Well why am I talking about a change

25    of objections?  The plan administrator is here, has filed a

Page 19

1   very straightforward document, and instead I'm being led on

2   a 20-page ride -- a 23-page ride to English law and LIBOR

3   rates.  There's a settlement agreement, period.  That's the

4   basis of the claim.  It's got words in it, it was approved

5   by the Court, the parties could have negotiated for

6   something else, they didn't.  What more is there to the

7   story?

8           MR. GLICKMAN:  Let me jump to the settlement

9   agreement argument, that's they're --

10          THE COURT:  Okay.  It's a valid settlement

11  agreement, right?

12          MR. GLICKMAN:  Correct, Your Honor.

13          THE COURT:  Okay.  It says very clearly this is

14  the settlement agreement, here's the allowed amount of the

15  claim, it supersedes everything else, we're done.

16          I simply -- I kept turning the pages and I had --

17  I really was not able to follow.

18          MR. GLICKMAN:  Okay.  Can I give it a try?

19          THE COURT:  You can give it a try, but you spent

20  23 pages giving it a try and I simply -- the notion that

21  there would be discovery about anything when the basis of

22  the claim is the subject of a court-approved settlement

23  agreement I just -- I can't even -- you can give it a try.

24          MR. GLICKMAN:  Okay.  So as Your Honor said, if

25  the settlement agreement wipes away the GCCM, and that was

Page 20

1    the applicable contract, then that's of course correct,

2    there would be no discovery.

3              THE COURT:  Then why doesn't -- why doesn't --

4              MR. GLICKMAN:  Why doesn't it wipe it away?

5              THE COURT:  Yeah.

6              MR. GLICKMAN:  Okay.  So let's look at -- the term

7    contract is the term that's in the plan, right?  So we have

8    to decide if the settlement agreement is a contract within

9    the meaning of the plan.  Right?  Because they're saying

10   that's now the contract, it has no interest rate in it, so

11   you don't have a contract-based interest rate so you go to

12   the statutory rate.

13             THE COURT:  What's the basis of the claim?  Tell

14   me what the basis of the claim is.

15             MR. GLICKMAN:  The basis of the claim is what was

16   set forth in our demand, which is that the GCCM system --

17             THE COURT:  No, no, no.  What's the -- what is the

18   basis of the claim?  It's the settlement agreement.  That's

19   the basis of the allowed claim.  It provides the holders

20   with an allowed claim, right?

21             MR. GLICKMAN:  Well the settlement agreement, Your

22   Honor, resolved the claim that we had, right?  I mean that

23   -- from our perspective what they're saying is look, once

24   you have a settlement agreement that automatically becomes

25   the basis of the claim -- I understand the argument -- and

Page 21

1    it wipes away everything that happened.  So let's just kind

2    of walk through and see if that holds up.

3              THE COURT:  So every settlement agreement that's

4    been approved in these cases, somehow with the same language

5    in it, somehow the plan administrator needs to be continuing

6    to look at the underlying documents that led to the

7    settlement, because in some instances claims have been

8    alleged for tens of billions of dollars that have then be

9    settled for a million dollars.  So sometimes the language

10   that says this is a settlement and it supersedes everything

11   else actually means what it says, and sometimes it doesn't.

12             MR. GLICKMAN:  We think it means what it says.

13             THE COURT:  Okay.

14             MR. GLICKMAN:  But we don't think it wipes away a

15   prior contractual arrangement with respect to postpetition

16   interest.

17             THE COURT:  Why?

18             MR. GLICKMAN:  Because it --

19             THE COURT:  Why don't you read me the words as

20   Mr. Fail did and give me a little way to get around that

21   pretty extensive language that you characterize as

22   boilerplate and that lawyers might characterize as covering

23   all of their bases.  I just -- I can't get past it.  I think

24   it's -- is it Section 15.1?

25             MR. GLICKMAN:  Your Honor, we agree that all that

Page 22

1   language speaks to the underlying claim that the settlement

2   resolved.  We agree with that completely.  And the purpose

3   of this settlement was to resolve the amount of the claim.

4          THE COURT:  But not the interest.

5          MR. GLICKMAN:  Correct.  That is our position,

6   Your Honor.

7          THE COURT:  Based on what?  Read the language.

8          MR. GLICKMAN:  There's no mention whosoever of

9   interest.

10         THE COURT:  Well there's no mention whatsoever of

11  anybody's dog either, that's because it would never occur to

12  anybody that when you do a settlement agreement and you

13  present it to a court for approval that somehow people just

14  are not mentioning that despite the sweeping, expansive

15  language stated in the alternative in the most thorough

16  possible way lawyers can imagine, that somehow there's an

17  unspoken carve out for a continuing claim of interest based

18  on something else.

19         MR. GLICKMAN:  It's a spoken carve out, Your

20  Honor, in the release.  The release specifically excludes --

21  Lehman raised distribution entitlements under the plan.

22  That's specifically excluded.  Postpetition --

23         THE COURT:  Right.  That means it gets the

24  distribution under and pursuant to the plan.  That's the

25  claim.

Page 23

1          MR. GLICKMAN:  But postpetition interest is a

2     distribution entitlement under the plan.  So we're not

3     trying to enforce any underlying agreement, Your Honor,

4     we're saying the plan says when you provide for postpetition

5     interest you look and see if there was a contract that

6     indicated what the postpetition interest rate was.  We're

7     not trying to enforce that contract per se, we're trying to

8     enforce the plan which was accepted in the release.

9          THE COURT:  What does that mean you're not trying

10    to enforce that contract per se?

11         MR. GLICKMAN:  We're trying to enforce the plan

12    which references any prior agreement with respect to the

13    claim.  So the plan is carved out of the settlement.

14    Distributions under the plan are carved out in the

15    settlement release.  So --

16         THE COURT:  Sure, because when you settle you have

17    to make sure that you're not waiving your right to a

18    distribution.  That's very basic and fundamental, there's

19    nothing tricky or crafty about that.  That's not a carve out

20    that achieves the purpose that you are describing.

21         MR. GLICKMAN:  Well --

22         THE COURT:  You never -- in a settlement agreement

23    the parties -- and I don't want to be led into a so-called

24    factual determination, I'm making a general observation --

25    it is entirely common in a settlement agreement to make sure

Page 24

1    that the exchange of money that's going to occur pursuant to

2    the settlement agreement is not released, because that would

3    be rather silly.  Of course there's going to be that

4    obligation so that there's no basis for concluding that the

5    language that you're citing to operators as anything more

6    than that kind of a basic carve out.

7               MR. GLICKMAN:  So what we'd be doing, Your Honor,

8    if the Court holds that the settlement agreement wipes away

9    any contract for purposes of postpetition interest, then

10   when parties come to the settlement table they're taking the

11   risk that in the settlement agreement whatever prior

12   understanding they had with respect to something that wasn't

13   at all the subject of the settlement negotiations, the

14   settlement negotiations had to do with the claim amount, not

15   the issue of postpetition interest.  And I agree, there's

16   very broad language that wipes away prior agreements with

17   respect to what the subject matter was of the settlement

18   agreement.  But the reality is, Your Honor, when that

19   settlement agreement was negotiated, which is true to any

20   settlement agreement for any claim, the subject is the

21   claim, not the postpetition interest, that's a separate

22   stage, that's a separate phase.

23               So we agree, you don't have to go back and look at

24   anything else with respect to the claim itself, that's what

25   was dealt with in the settlement agreement.  But if parties

Page 25

1    are going to be told that the settlement agreement is going

2    to wipe away any potential postpetition interest pursuant to

3    a contractual understanding that's discouraging settlement,

4    that's not the --

5            THE COURT:  No, it's absolutely not discouraging

6    settlement, it's the opposite.  When parties settle they

7    settle, we're done, everything is over.  We're not just

8    settling -- we're not just liquidating.  You are conflating

9    liquidating a claim amount with a settlement.  This was not

10   a mere liquidation of a claim amount, this was a settlement

11   agreement.  Read the language.

12           MR. GLICKMAN:  So I would argue, Your Honor, if in

13   fact the settlement agreement put to rest everything then

14   why are we here?  This is a separate phase of the

15   proceedings, it's a separate aspect of what we're doing.  If

16   in fact the settlement agreement ended everything there

17   would have been no need for us to put in a demand for

18   postpetition interest.  The settlement agreement is silent

19   about interest.

20           So consistent with that line of --

21           THE COURT:  The fiduciary duty on the part of the

22   plan administrator to pay all allowed claims in full, their

23   full entitlements to distributions under the plan, and in

24   order to discharge that fiduciary duty the plan

25   administrator has to know what people are expecting so that

Page 26

1   it can reserve appropriately, make distributions, and close

2   out the case.  There's nothing tricky or surprising about

3   the plan administrator seeking to know.  In fact the

4   statistics that were quoted by Mr. Fail demonstrate that you

5   folks are outliers -- outliers in making demands that you

6   have.

7             So it's not enough apparently to being paid in

8   full and to have the concession that you're entitled to the

9   federal judgment rate.  Instead you're inviting me on a

10  frolic and detour into English law.

11            MR. GLICKMAN:  Well in fairness, Your Honor,

12  initially the whole English law issue and the statutory rate

13  issue was not an issue in this case.  Initially when the

14  plan administrator submitted its objection it was prepared

15  to assume that the GCCM applied, it didn't make any of these

16  arguments, Your Honor.

17            THE COURT:  And what am I supposed to do with that

18  alleged --

19            MR. GLICKMAN:  I agree it's not binding.

20            THE COURT:  What am I supposed to do with that

21  alleged fact?  Are you suggesting that --

22            MR. GLICKMAN:  No.

23            THE COURT:  -- first of all Mr. Fail disputes your

24  characterization, he just stood up here and told me that

25  your characterization of those previous arguments is

Page 27

1     inaccurate, that those were assuming arguendo.

2             Secondly, I don't understand what I'm supposed to

3     do with the facts surrounding the prior objection.  The plan

4     administrator is standing here today before me and making an

5     argument.

6             MR. GLICKMAN:  Understood, Your Honor.  Your Honor

7     asked why is it that we're now going on this, what Your

8     Honor described as a frolic and detour, with respect to

9     settlement agreement.  It was never previously in the case.

10    I agree it's in the case now, the plan administrator has

11    ever right to change its mind and put in the new argument,

12    my only point was we didn't bring this issue up, we didn't

13    discuss it initially because it wasn't raised initially.

14    The whole English law issue didn't come up initially because

15    the plan administrator wasn't arguing for the statutory

16    rate.  Now that the plan administrator has switched to

17    arguing for the statutory rate it has every right to do

18    that, I agree.  It has every right to do that.

19            But if you take its new argument to the logical

20    conclusion you have a settlement agreement, let's interpret

21    it like a contract, and I'll try to present why it makes no

22    sense.

23            THE COURT:  You don't think a settlement agreement

24    is a contract?

25            MR. GLICKMAN:  I think it's a contract that deals

1   with the subject matter that was at issue, and I think that

2   you have to look beyond the language as a practical matter,

3   because all contracts have to be interpreted sensibly and

4   reasonably, you have to look at what was being negotiated.

5           But let's take their approach and let's read the

6   settlement agreement like a contract that governs everything

7   between the parties.  Let's see where that takes us.  We

8   read it, it says nothing about interest.  So we don't get

9   interest.  It says it makes -- it's settling the dispute

10  between us --

11          THE COURT:  It's giving you an allowed claim and

12  then you take that allowed claim and you present it to the

13  plan administrator for payment pursuant to the plan.  The

14  plan provisions govern the entitlement to a certain

15  distribution and any interest entitlement thereon.  In a

16  solvent case you get postpetition interest.  No one is

17  disputing that.

18          In this settlement agreement had you thought about

19  it, which of course you didn't because you weren't the

20  holder of the claim then, you -- there could have been a

21  negotiation specifically around an interest rate.  There

22  wasn't.

23          MR. GLICKMAN:  It was premature to do that at that

24  stage, Your Honor, because that wasn't the subject matter of

25  what was being negotiated.  And I would submit what they're

Page 29

1    trying to do --

2            THE COURT:  But again, I'm not going to take up an

3    invitation to engage in a discussion about something that

4    could be interpreted as resolving a disputed issue of fact.

5    You just said that wasn't what it was about.

6            The settlement agreement stands.  It is a court-

7    approved settlement agreement.  Its language is clear, it

8    was ordered by the Court, period.  I'm not going get into a

9    discussion of what was on the table --

10           MR. GLICKMAN:  Agreed.

11           THE COURT:  -- or recognize any ambiguity

12   whatsoever in the language of the settlement agreement or in

13   the language or the order approving it.

14           MR. GLICKMAN:  Your Honor, I'm not trying to

15   suggest that there's a factual question of what the parties

16   had on their mind.  I'm saying as a matter of law what was

17   on the table at that stage was the claim and not the

18   interest.

19           THE COURT:  You just did exactly what you said you

20   weren't going to do.  You're saying as a matter of law what

21   was on the table was the claim and not the interest rate.

22           MR. GLICKMAN:  Because at that stage of the

23   proceedings one isn't dealing with the interest.  I'm not

24   suggesting that the Court refer to some question of fact of

25   what the people were negotiating and so forth, but the

Page 30

1    purpose of the settlement agreement was to resolve the

2    claim.

3              THE COURT:  That's a -- you are stating a fact to

4    me.  That is a fact.

5              MR. GLICKMAN:  But --

6              THE COURT:  That the purpose of the settlement

7    agreement was more narrow than you would have it be --

8              MR. GLICKMAN:  I'm not --

9              THE COURT:  -- than the plan administrator would

10   have it be.  That's a fact to me --

11             MR. GLICKMAN:  I'm not --

12             THE COURT:  -- and I am declining to agree with

13   you.  I'm not going to meet you on that dispute, because I

14   am not going to create an issue of fact.

15             The settlement agreement speaks for itself, it's

16   clear and unambiguous.  Any statement that you make about

17   the purpose of the settlement or the scope of what was

18   settled is not on the table.

19             MR. GLICKMAN:  Your Honor, my argument that it

20   simply dealt with the claim is just based on what the

21   function was -- not a factual issue, I am not trying to say

22   it on the record, I'm not trying to suggest there's a

23   factual issue, I'm not trying to create a factual issue --

24   I'm saying as a matter of the express terms of the agreement

25   and its function it was only to resolve the claim.  And I

1    would say that what they're trying to do in terms of having

2    an impact on interest is to use it selectively.  They're

3    saying it doesn't wipe out the whole postpetition interest

4    process, but it should be read back on the plan to eliminate

5    the contract that's referenced there as a potential basis

6    for the interest.

7            So they're saying on the one hand it doesn't speak

8    to interest, because it preserves the whole postpetition

9    interest process, but on the other hand they're saying, well

10   actually it does, because when you go back and read the plan

11   to determine the postpetition interest you have to read out

12   the word contract because the old contract is gone.

13           So they're saying it partly reads on postpetition

14   interest and partly doesn't.

15           Our position --

16           THE COURT:  No, they're saying that you're saying

17   that you selectively want to continue in existence parts of

18   the pre-settlement agreement contracts that may or may not

19   have been implicated, and the settlement agreement itself

20   says whatever was out there is no longer -- no longer

21   pertains.

22           MR. GLICKMAN:  And our response to that, just to

23   be clear, is that yes, there's very broad language there,

24   but the four corners of what the settlement agreement was

25   doing was dealing with the claim and not the postpetition

Page 32

1    interest.  And maybe never (indiscernible), Your Honor, I

2    mean that -- we're not disputing the breadth of the

3    language, we're not disputing that it was --

4            THE COURT:  Yes, you -- I'm sorry, I don't mean to

5    be so frustrated, but you are exactly doing that.  You say

6    you're not, but then literally in the next breath you're

7    saying that this language was not intended to go beyond the

8    scope of the claim when the language itself says everything

9    else is off the table.

10           So I hear you trying hard not to argue with me,

11   and I appreciate that, but you're contradicting yourself

12   from one sentence to the next.

13           MR. GLICKMAN:  Well, Your Honor, what I'm saying

14   is that there are very broad terms in there and that they

15   wipe away everything, but our position is that everything is

16   with respect to the claim alone.  And yes, Your Honor, in

17   that sense it's limited.

18           THE COURT:  So a settlement agreement -- so I need

19   to go back to all the settlement agreements that I've

20   approved in this case and that Judge Peck approved before me

21   and figure out what implication there is to is it just the

22   claim or is does it somehow impact the distribution?

23           This is a settlement agreement that gave the

24   holders of the -- that gave the parties who filed the proofs

25   of claim an allowed claim.

Page 33

1          MR. GLICKMAN:  Understood, Your Honor.  I think

2    it's simpler than that.  I think Your Honor doesn't have to

3    go back to all those settlement agreements, it's simply a

4    question of concluding that a settlement doesn't become the

5    contract for purposes of postpetition interest.  That's all.

6    It doesn't mean you have go back and revisit everything

7    else.

8          THE COURT:  And what's your authority for that

9    position?

10         MR. GLICKMAN:  My authority for that provision is

11   that -- position is that every contract has to be construed

12   sensibly with respect to what it's about, and we have a

13   contract here that resolved the claim, there's an entirely

14   separate proceeding with respect to postpetition interest

15   that the settlement agreement wasn't about, that's not a

16   factual question, that's what it talks about, it's this is

17   the amount of the claim.  It doesn't say a word about

18   interest.  And to take their argument to a logical

19   conclusion that means there's no interest, but nobody is

20   assuming that.

21         THE COURT:  What about the language that says that

22   all prior agreements -- any contract predating the

23   settlement is of no force and effect?  What about that?

24         MR. GLICKMAN:  So that would eliminate contracts

25   that my client has with other businesses.  If you want to

Page 34

1    read that language as applying to every contract in the

2    world on the face of it, Your Honor, that language would

3    apply to every contract in the world.

4              THE COURT:  That's silly.

5              MR. GLICKMAN:  It can't -- I agree with you, it is

6    silly.

7              THE COURT:  You just got done telling me that you

8    have to read contractual language in the context.  So in the

9    context of this settlement when there's a reference to

10   contracts predating the settlement --

11             MR. GLICKMAN:  Right.

12             THE COURT:  -- I think we can agree, non-

13   ridiculously, that we're not trying to -- that the two

14   parties to the settlement agreement are not somehow trying

15   to render contracts that have --

16             MR. GLICKMAN:  Of course not.

17             THE COURT:  Of course not, because there's

18   context.

19             So the context is that any contracts that may have

20   existed or may have pertained to the subject matter that is

21   the subject of the settlement agreement are of no force and

22   effect.

23             MR. GLICKMAN:  Agreed.

24             THE COURT:  Okay.

25             MR. GLICKMAN:  Your Honor just said there's

1   context and any contracts that relate to the subject matter

2   of the agreement.  Our argument is an intellectually

3   coherent argument, which is the context here was the claim,

4   not postpetition interest.  Yes, it's very broad language.

5   Anything that has to do with the claim gone, good-bye.

6           THE COURT:  No, but now you're flipping back to

7   the other language.

8           MR. GLICKMAN:  No, I'm --

9           THE COURT:  The settlement agreement says that any

10  contract predating the settlement is of no force and effect.

11          MR. GLICKMAN:  In that -- in the context of what

12  the settlement agreement was doing, Your Honor.  The

13  settlement agreement was resolving the claim, not the

14  postpetition interest.  So yes, every contract that has to

15  do with the underlying claim gone, good-bye.  Not with

16  respect to postpetition interest.  It's not an unreasonable

17  position, Your Honor.  Once we accept the notion that

18  context matters, and that's what contract interpretation is

19  all about.  That's the entirety of our position.

20          We're not waving our hand and saying, oh, it's

21  just boilerplate, it wasn't put in there for no -- no any

22  reason.  Of course it was put in there for a reason, and of

23  course it has force and effect, but the force and effect is

24  on the claim, not the postpetition interest.  That's our

25  position pure is simple.  And I don't think it's -- it's

Page 36

1    position that is reasonable, because that's the context.

2              And if you want to say you're going do take those

3    words and divorce them from any context then you get into

4    ridiculous language, as Your Honor was saying, and it could

5    apply to anything.

6              So that's our position on the settlement

7    agreement.

8              Now they raise a number of other arguments, shall

9    I address them?

10             THE COURT:  Up to you.

11             MR. GLICKMAN:  Well I'd like to if it could.

12             THE COURT:  Go ahead.  Sure.

13             MR. GLICKMAN:  Because I mean in fairness to them

14   they have a number of alternative arguments.  So if the

15   settlement agreement argument doesn't work for them --

16             THE COURT:  Is the settlement agreement a

17   contract?

18             MR. GLICKMAN:  Yes, it's a contract, Your Honor.

19             THE COURT:  Okay.

20             MR. GLICKMAN:  The settlement agreement is a

21   contract, it's not the contract on which the claims for

22   interest is based.  That's our position.  Of course it's a

23   contract.  I agree with that.  Not --

24             THE COURT:  The claim for interest is based on the

25   allowed claim, correct?  The claim for interest is premised

Page 37

1     on the allowed claim.

2              MR. GLICKMAN:  It's premised on there having been

3     an allowed claim.

4              THE COURT:  There's an allowed claim.

5              MR. GLICKMAN:  Correct.

6              THE COURT:  You've presented that to the plan

7     administrator and said please pay me postpetition interest.

8     The plan administrator is going to calculate the amount of

9     the postpetition interest based on the number of your

10    allowed claim, right?

11             MR. GLICKMAN:  Correct.

12             THE COURT:  Okay.  And what gives you that allowed

13    claim?  The settlement agreement, the contract that the

14    parties made about what the allowed amount of the claim

15    would be, and then like every other party in this case you

16    take that allowed claim and you get paid a distribution

17    pursuant to the provisions of the plan.

18             MR. GLICKMAN:  We're not disagreeing with that,

19    Your Honor.  What we're saying is that when they drafted the

20    plan and they wanted to give the parties the benefit of

21    their bargain when they put in there that postpetition

22    interest can be based on the contractual rate that the

23    parties agreed to, they weren't thinking about a settlement

24    agreement --

25             THE COURT:  But now we're getting into what they

1   were thinking about when they drafted the plan.

2           MR. GLICKMAN:  I'm speaking colloquially, Your

3   Honor.  I mean I'm just saying a common sense --

4           THE COURT:  Okay.  I just want to be very clear --

5           MR. GLICKMAN:  I'm not raising a factual issue.

6           THE COURT:  Well I suspect that if I don't rule in

7   your favor you will tell the district court that I resolved

8   factual issues.

9           MR. GLICKMAN:  I will not tell the district court

10  that.

11          THE COURT:  So I just want -- I'm just --

12          MR. GLICKMAN:  Your Honor, I'm going to say on the

13  record --

14          THE COURT:  -- trying to be very clear --

15          MR. GLICKMAN:  I'm going to say on the record --

16  but we don't have to go there.  I will not tell the district

17  court that you're resolving a factual issue.

18          THE COURT:  I don't want to -- I --

19          MR. GLICKMAN:  No.  This is --

20          THE COURT:  You have every right --

21          MR. GLICKMAN:  I know.

22          THE COURT:  -- to make whatever argument that you

23  want.

24          MR. GLICKMAN:  I know that, but I'm not going

25  there.  I'm not going there.  It's a legal argument that

Page 39

1   settlement agreements ,and there could be other instances

2   here, and this plan reads like a lot of other plans.  You're

3   going to be making a policy decision, Judge, here, which is

4   when a plan says a contract when referring to postpetition

5   interest does that mean if there's a settlement agreement

6   whatever contract there was goes away?  It's a legal

7   conclusion.

8              THE COURT:  It's not a policy argument.

9              MR. GLICKMAN:  Well it's --

10             THE COURT:  It's a legal --

11             MR. GLICKMAN:  It's a legal issue that's informed

12   by policy, right?

13             THE COURT:  I --

14             MR. GLICKMAN:  Because it's going to have

15   implications for other cases.

16             THE COURT:  I decline to agree with you.

17             MR. GLICKMAN:  Okay.

18             THE COURT:  Okay?

19             MR. GLICKMAN:  So just in terms of managing --

20             THE COURT:  Let the record reflect I'm saying that

21   with a smile, okay?

22             MR. GLICKMAN:  Okay.  I understand.

23             So just in terms of process here.  I don't want to

24   take up the Court's time, but --

25             THE COURT:  You can have as much time as you like.

1           MR. GLICKMAN:  Well here's what I don't want to

2   do, and if Your Honor -- if there's any chance in the world

3   that Your Honor might consider the other issues I think I

4   need to address them.

5           THE COURT:  Of course.

6           MR. GLICKMAN:  Their alternative arguments.

7           THE COURT:  Go ahead.

8           MR. DORCHAK:  Your Honor, may -- I'm sorry to

9   interrupt, Joshua Dorchak on behalf of Chase Lincoln First

10  Commercial Corporation.  I'd just like to add a couple of

11  points on the settlement issue.

12          MR. GLICKMAN:  They've already been discussed and

13  then maybe we can get that topic over with?

14          THE COURT:  Sure.

15          MR. GLICKMAN:  So as not to --

16          THE COURT:  If your --

17          MR. GLICKMAN:  It's a settlement issue.

18          THE COURT:  -- learned colleague will concede the

19  -- will yield the podium then --

20          MR. GLICKMAN:  Temporarily.  I'm willing to let

21  something else take a crack at this settlement agreement

22  issue.

23          THE COURT:  Go ahead.  Okay.

24          MR. DORCHAK:  Thank you, Your Honor.  Again,

25  Joshua Dorchak --

Page 41

1          THE COURT:  Yep.

2          MR. DORCHAK:  -- of Morgan Lewis on behalf of

3    Chase Lincoln First Commercial Corporation.

4          So I have a couple -- well mainly a legal point

5    I'd like to make, which Mr. Glickman didn't quite say,

6    although in effect I think he was saying that.

7          It seems to me the settlement agreement settled

8    the issue of the proper allowed amount, the agreed

9    crystallized amount, of a proof of claim that was filed

10   under Section 501 of the Bankruptcy Code, and that would be

11   allowed under Section 502 of Bankruptcy Code.

12         The entitlement to the distributions on that

13   allowed claim come through a plan.  We all agree on that.

14   There's no more dispute once the settlement agreement is

15   signed and the order is approving it as entered, if there

16   was one, no more dispute about the allowed amount of the

17   claim under Section 502.  That's done.

18         But the entitlement to postpetition interest

19   doesn't come through Section 502, it's not in the proof of

20   claim.  Arguably it's improper to include a demand for

21   postpetition interest from a solvent debtor if you're

22   unsecured in your proof of claim, because your entitlement

23   --

24         THE COURT:  The law gives you the entitlement and

25   the plan --

1            MR. DORCHAK:  Yep.

2            THE COURT:  -- and the plan reflects how that

3       entitlement is going to be taken care of.

4            MR. DORCHAK:  Sure.  And the plan here says -- as

5       a result of negotiations says this thing about contractual

6       rate, if there is one, as opposed to legal rate or fixed

7       rate or statutory rate or whatever.

8            THE COURT:  Uh-huh.

9            MR. DORCHAK:  So that was something negotiated

10      into the plan.  So that's why we have the -- we don't have a

11      contract versus statutory issue here, because --

12           THE COURT:  Uh-huh.

13           MR. DORCHAK:  -- we have a -- the question is

14      whether we have a contract.  The contract that they point to

15      is the only contract that matters here, it's the settlement

16      agreement.

17           My argument here from a legal perspective is that

18      the settlement agreement settled the claim and gave it an

19      allowed amount under Section 502 and that the entitlement to

20      postpetition interest, which is running from Section 702(a)

21      of the Bankruptcy Code -- not from 502 -- because it's

22      unlike an oversecured claim where the postpetition interest

23      is baked into the amount of the claims, the statute saying

24      that -- this is different.  You've got an allowed claim and

25      then if you're lucky enough to have a solvent debtor some

Page 43

1    day then Section 726(a) gives you --

2              THE COURT:  Right.

3              MR. DORCHAK:  -- our postpetition interest.

4              So what these folks were settling was a

5    prepetition claim evidenced by a proof of claim and then

6    resolved under Section 501 and Section 502.  This --

7    anything in that universe is resolved.  Any contract that

8    goes to the merits, goes to the amount of that claim that's

9    allowed under Section 502 and will get distributions some

10   day --

11             THE COURT:  Except contract gone, totally settled,

12   except for those little provisions that say interest rate to

13   be determined X, Y, or Z.  That's your position.  Is that

14   that whole contract we're done with it except we get to keep

15   this one little piece because it pays us a whole boatload

16   more interest than what the plan says.

17             MR. DORCHAK:  We get to keep that piece, Your

18   Honor, because the plan says and when it comes to the

19   Section 726 inquire you're going to look at the contract

20   that underlies the claim.  This can't mean the settlement

21   agreement whereby the 502 claim --

22             THE COURT:  Why not?

23             MR. DORCHAK:  -- is crystallized.

24             THE COURT:  Why not?

25             MR. DORCHAK:  Because if that were the case then

Page 44

1   this -- I don't think there would be a single claim in this

2   case for postpetition interest that would be governed by a

3   contract, because all the claims against the solvent debtors

4   were settled as far as I know -- virtually all of them --

5   there were some settlement agreements that express finality

6   and superseding prior agreements and termination of pending

7   agreements and different words, but all have the same

8   effect, we're done here, everything is over, this is

9   everything.  And if those settlement agreements, which don't

10  give interest rates because they're not about postpetition

11  interest, they're about prepetition claims, if those are the

12  claims -- if those are the contracts on which all of those

13  settled allowed Section 502 claims are based and those

14  claims are no longer based on what they were originally

15  based on --

16          THE COURT:  Well I'm even more confused than I was

17  before.

18          So your idea is that in a case -- in a solvent

19  case claims that are based on or reflected in settlement

20  agreements, allowed claims that come into existence that

21  become allowed via settlement agreements --

22          MR. DORCHAK:  They existed before, they were --

23  they became allowed pursuant to the settlement agreements.

24          THE COURT:  Proof of claim gets filed.

25          MR. DORCHAK:  Yep.

```
 1              THE COURT:  It gets -- a claim then becomes

 2     allowed in the bankruptcy sense either because the debtor

 3     doesn't object to it or they negotiate a settled claim

 4     amount or there's a litigated claim amount, and then there's

 5     an allowed claim, which gets presented for payment.

 6              MR. DORCHAK:  Right.

 7              THE COURT:  Right?

 8              MR. DORCHAK:  Right.

 9              THE COURT:  So that if there is an allowed claim,

10     for example, incident to somebody sold LBCC widgets, right,

11     and they file a proof of claim for a million dollars of

12     widgets and LBCC says, no, that's not right, it's $900,000

13     of widgets, right?

14              MR. DORCHAK:  Okay.

15              THE COURT:  And the claim gets allowed in the

16     amount of $900,000 of widgets.  And in the contract, the

17     widget contract, it says the contractual interest rate is

18     ten percent.

19              MR. DORCHAK:  Okay.

20              THE COURT:  Okay?  I'll ask Mr. Fail, okay, what

21     interest rate are you going to pay on that claim?

22              MR. FAIL:  If the language had -- if the

23     settlement agreement --

24              THE COURT:  There's no settlement agreement.

25              MR. FAIL:  Oh, ten percent, Your Honor.
```

Page 46

1          THE COURT:  You don't have that.  You have a

2    settlement agreement.

3          MR. DORCHAK:  Like 99 percent of the claimants in

4    these cases, Your Honor.  We have a --

5          THE COURT:  So are you suggesting --

6          MR. DORCHAK:  -- either a settlement agreement --

7          THE COURT:  Are you --

8          MR. DORCHAK:  -- or sometimes a reducing and

9    allower, right?  But when there was a negotiation of a

10   settlement agreement, which on its face purports --

11         THE COURT:  Right.  So you're saying when there's

12   a settlement agreement, because for whatever set of reasons

13   procedurally there needs to be a settlement agreement or the

14   parties want a settlement agreement, that the contract for

15   purposes of postpetition interest survives.

16         MR. DORCHAK:  Yes.  The contract on which the

17   claim is based in my view is always the original transaction

18   documents.  They -- their effect going forward is terminated

19   by the settlement agreement, the settlement agreement

20   supersedes the prior contractual prepetition relationship

21   documentation because we're not worried about those details

22   anymore, we've resolved that.  That prepetition

23   relationship, which had contracts on which it was based,

24   turned into an allowed claim, the claim was allowed pursuant

25   to a settlement, but --

Page 47

1              THE COURT:  Okay.  So let me --

2              MR. DORCHAK:  -- to say that the claim is based on

3      the settlement agreement --

4              THE COURT:  Okay.  I'll agree with you.  Then

5      what's the point of the provision in the settlement

6      agreement --

7              MR. DORCHAK:  Uh-huh.

8              THE COURT:  -- we're all at the table --

9              MR. DORCHAK:  Yes.

10             THE COURT:  -- we're settling.

11             MR. DORCHAK:  Yes.

12             THE COURT:  Okay.  Everybody is agreeing and

13     they're saying to each other we're settling the claim but

14     not the right to prepetition interest, oh, wait there's

15     language in here that saying that the contract is of no

16     force and effect.  What does that mean?  Is that just like

17     an inside lawyer's joke?

18             MR. DORCHAK:  No, it's not a joke.  This is --

19             THE COURT:  Every --

20             MR. DORCHAK:  -- none of this is a joke, Your

21     Honor.

22             THE COURT:  No, it's not, because words have

23     meaning.  So when you sit down and you sign a settlement

24     agreement and you present it to a court for approval and the

25     settlement agreement itself says that any contract predating

1    that relates to the claim is of no force and effect what

2    could be clearer?  It doesn't say provided however that the

3    provisions in the contract relating to the entitlement to

4    interest shall survive.

5              MR. DORCHAK:  Right.

6              THE COURT:  It doesn't say that.

7              MR. DORCHAK:  Right.  And we're not going to talk

8    about facts today, Your Honor, so we're not going to talk

9    about the fact that nobody at the time this settlement was

10   entered into had any expectation that LBCC would ever be

11   solvent, so that's the reason why it's not addressed.

12             But what I would respond more directly to the --

13             THE COURT:  Lawyers are pretty good at covering

14   their bases, but I'm not going to go -- as I said before I'm

15   not going to go into any such facts.

16             MR. DORCHAK:  Right.

17             THE COURT:  I think they're irrelevant and --

18             MR. DORCHAK:  I'm trying to stick to the law here,

19   Your Honor.  But there's a -- to refer -- sorry --

20             THE COURT:  Speak up a bit, we're having a hard

21   time -- your soft spoken.

22             MR. DORCHAK:  Sorry.  This happens to me.

23             THE COURT:  I know that from past experience.

24             MR. DORCHAK:  All right.  I'll try to be more

25   aggressive.

Page 49

1          So, Your Honor, to address the point you just made

2     about the prior agreements being superseded by the

3     settlement agreement, to me that's the same as the classic

4     termination agreement whereby the debtors settled derivative

5     claims -- close out derivative claims here.  The rule

6     clearly saying to the extent that the prior agreements

7     weren't terminated already they are terminated hereby,

8     right?  So that's a way of saying --

9          THE COURT:  Terminated --

10          MR. DORCHAK:  -- we're not parties to a

11     derivatives contract anymore.

12          THE COURT:  I understand.  But terminated --

13          MR. DORCHAK:  Uh-huh.

14          THE COURT:  -- is not -- does not mean the same

15     thing as of no force and effect.

16          We all know from our time in the world of ISDAs,

17     that contract transactions can be terminated and certain

18     provisions remain in full force and effect.  Here you have a

19     settlement agreement that specifically says --

20          MR. DORCHAK:  It's --

21          THE COURT:  -- no force and effect.

22          MR. DORCHAK:  -- there's a lot of language in this

23     agreement.  The way we -- we're not calling it boilerplate,

24     Your Honor, I agree, because that doesn't (indiscernible)

25     walk away at that point.

1           THE COURT:  Okay, good.

2           MR. DORCHAK:  Understood.  I'm not complaining

3      about it because it's boilerplate.  I'm saying that the

4      elaborate language in there, which again not to go into

5      facts, is because this is actually a sort of a triangle with

6      LBIE and LBCC and the Lehman Re and other ones, trying to

7      make sure nobody pops up after this settlement and says,

8      hang on a second, I forgot something, you know, you ran over

9      my dog.  So the attempt to be complete and thorough is

10     absolutely there.

11          But we're being thorough is complete about, drum

12     role, an allowed claim under Section 502, and we're not

13     being thorough and complete about this thing that isn't even

14     on the table, which I agree with Mr. Glickman, but from a

15     more Bankruptcy Code-based perspective, which is this

16     distinction between 502 and 726, and then I added the

17     practical thing, which again is merely a factual issue, but

18     it's hard to believe that that phrase in Section 8.13(c) of

19     the plan that says that people who are lucky enough to have

20     solvent debtors will get postpetition interest based on a --

21     pursuant to the contract on which the claim is based.  That

22     actually refers to a settlement agreement, any time there's

23     a settlement agreement.  That blew my mind when they made

24     that argument.  I can't believe anybody thinks that's true.

25     Because as I said before, that would sort of nullify the

Page 51

1    effect of the -- everything, almost everything has been

2    settled by a settlement agreement in this case.

3            So -- and the debtors have paid out postpetition

4    interest to claim holders of other solvent estates where

5    there was a settlement agreement to resolve the claim and

6    they didn't jump up and say we don't owe you anything

7    because the contract on which your claim is based is the

8    settlement agreement, we just entered into last week, ha ha.

9    They didn't do that with everybody else.

10           So I know you said we're outliers and we're

11   exceptional, but actually we're just -- we're -- we want

12   what everybody else got.

13           Now admittedly they settled, but that doesn't mean

14   they didn't get any postpetition interest because ha ha on

15   them they signed a settlement agreement.

16           THE COURT:  They're not -- the plan administrator

17   is agreeing with you that you have an entitlement to

18   postpetition interest at the -- pursuant to the plan,

19   pursuant to what the plan says.

20           MR. DORCHAK:  They can't argue we don't have that,

21   Your Honor, but then they want to take the value away from

22   us.  They're trying to minimize the value.  We can all see

23   that, that's their job you could argue, right, and it's our

24   job to argue for our rights within --

25           THE COURT:  Did you --

1           MR. DORCHAK:  -- in the realm of what's reasonable

2    and ethical and so on, which I think we're well within that.

3           THE COURT:  When did you acquire the claim?

4           MR. DORCHAK:  I don't remember the year in which

5    the claim was acquired, Your Honor.  I'm sorry, I just --

6           THE COURT:  Okay.

7           MR. DORCHAK:  -- didn't want to get into facts,

8    you know.

9           Okay.  So just to add the legal layer, Your Honor,

10   to the discussion, which I totally took your point, but I

11   agree for separate legal actions.  Thank you very much.

12          THE COURT:  Okay.  Thank you.

13          MR. FAIL:  Your Honor, just one very, very

14   briefly, if I may.

15          THE COURT:  Yeah.

16          MR. FAIL:  For the record Garrett Fail for the

17   debtors.

18          Your Honor, you've articulated our points and seem

19   to understand them clearly.  A couple of rebuttal points.

20          First and foremost it's not the plan

21   administrator's job to give as little out as possible, it's

22   maximizing value, and just today distributed over $3 billion

23   to creditors.

24          We're here to give the entitlement to those who

25   are entitled -- to whom it's entitled and we're doing that.

1          The second there was talk about who was at a table

2     and what's factual.  The only fact that is clear and

3     undisputed is that the plan was on file before the

4     settlement agreement was entered into, and the plan was

5     confirmed before the Court entered the order approving the

6     settlement agreement with the language.

7          THE COURT:  So --

8          MR. FAIL:  Just in terms of timing that's --

9          THE COURT:  -- the plan was -- I'm trying to

10    remember now -- the plan was confirmed in March of 2012?

11         MR. FAIL:  It became effective on March 6th --

12         THE COURT:  It became --

13         MR. FAIL:  -- but it was confirmed December 6th or

14    December 12th of --

15         THE COURT:  Of 2011.

16         MR. FAIL:  -- 2011.

17         THE COURT:  It went effective in 2012, the

18    settlement agreement was in --

19         MR. FAIL:  After that in 2012.  March of 2012.

20         THE COURT:  Okay.  And I believe that these -- at

21    least one of these claimants acquired the claim in 2013.

22         MR. FAIL:  All subsequent.  We settled with Lehman

23    Re.

24         THE COURT:  All subsequent.

25         MR. FAIL:  We settled with Lehman Re.  Lehman Re

Page 54

1     consently sold claims.

2              THE COURT:  So the notion of even thinking about

3     who was thinking about what --

4              MR. FAIL:  Only the plan administrator was in the

5     room, only LBHI was in the room, and were LBCC and the

6     debtors, but no holder was in the room.  But we're not

7     talking about facts.

8              THE COURT:  Right.

9              MR. FAIL:  The only fact is just timing wise if

10    people are suggesting that somehow the plan --

11             THE COURT:  I think what Mr. --

12             MR. FAIL:  -- the plan overrides those subsequent

13    settlement --

14             THE COURT:  I think what's being suggested is that

15    these folks are being singled out for disparate treatment

16    that in other instances in which there was a settlement

17    agreement that postpetition interest was being paid at a

18    contractual rate reflected in a contract that existed

19    between the parties and that was resolved pursuant to a

20    settlement agreement.

21             MR. FAIL:  Okay.  Other claims and other issues

22    aren't before the Court today, so it's irrelevant to the

23    contractual reading of the settlement agreement and the

24    objection before the Court.

25             But, Your Honor, I don't think we need to get to

Page 55

1    it, I think it's pretty clear where this is going.  But, you

2    know, our argument is that if they get the settlement

3    agreement -- the only reason they're pushing that is because

4    they want to fix a contractual rate and cherry pick a rate

5    to fix it at the petition date and to increase it by 28

6    times.  We think there's a million dollars of damages.  So

7    if the Court were to rule that the language that they're

8    seeking LIBOR flat reset daily, or you know --

9            THE COURT:  Uh-huh.

10           MR. FAIL:  -- you can't delete those words either.

11   So if that's the answer and it's a million dollars that's

12   fine too.

13           But I don't see how you can come to a conclusion

14   that if it is the GCCM or the draft that's what's -- you

15   know, assume arguendo that's what it is, how do you

16   eliminate those words?  How do you drop out reset daily and

17   fix it?  There's no basis whatsoever.  They're going to cite

18   Dow as one case that did and then there's of course a 15-

19   year-old case from Michigan, and then as it went up they

20   were like, yeah, it could have gone either way, I guess it's

21   not an abuse of discretion.  We would recommend that that's

22   not the standard to strive for for a clear reading or an

23   appropriate way to go.

24           So, you know, the GCCM or the draft is relevant,

25   it's a million dollars of interest to spread amongst the

Page 56

1    holders.

2              THE COURT:  Thank you.

3              MR. GLICKMAN:  I've been trying to think about how

4    we can streamline this and just sort of abort the orders of

5    the issues at this point.  There's a couple of other issues

6    which is assuming that the GCCM does apply, and I guess

7    they've reserved that as kind of a factual issue that

8    they're assuming arguendo for purposes of this hearing.

9              THE COURT:  That it does apply.

10             MR. GLICKMAN:  They're willing to assume that it

11   did apply, but they're saying the settlement wipes it away.

12             THE COURT:  Yes.

13             MR. GLICKMAN:  Right.  So if the settlement

14   doesn't wipe it away --

15             THE COURT:  Right.

16             MR. GLICKMAN:  -- then the question is what do we

17   do about the GCCM and then --

18             THE COURT:  Yes.

19             MR. GLICKMAN:  -- we'll be back here

20   (indiscernible).  Since they're assuming it arguendo for

21   purposes of today --

22             THE COURT:  Right.

23             MR. GLICKMAN:  -- all I would say is that we think

24   the evidence that's in there already, that we've proffered

25   already, they haven't proffered anything.  They didn't have

Page 57

 1    to.  But we think the evidence that's in there already makes

 2    clear how the GCCM works --

 3              THE COURT:  I'm sorry, but --

 4              MR. GLICKMAN:  Okay, sorry.

 5              THE COURT:  -- this is a sufficiency hearing.

 6              MR. GLICKMAN:  Right.  I agree.  I agree.

 7              THE COURT:  Right.

 8              MR. GLICKMAN:  I'm just looking ahead in the event

 9    that Your Honor doesn't rule that the settlement agreement

10    wipes everything away.  Then the question is where are we?

11    What's the next question on the list?

12              THE COURT:  Right.

13              MR. GLICKMAN:  So the next question on the list is

14    okay, so the GCCM is alive and well.  What is it?  How does

15    it work?  So we say it's the system that managed interest as

16    between Lehman entities and it provided for interest at the

17    rate of one week (indiscernible).  They're saying assume

18    that arguendo.  Right?  So what I'm saying is looking ahead,

19    we can either come back and say based on the evidence we've

20    put in, and if they don't proffer anything else, the Court

21    can find that.  Or we would ask for very, very limited

22    discovery, just documents sufficient to show how the system

23    works.  But that would be for a future date.  And I don't

24    want to kind of debate how much better what we've proffered

25    about what it means is -- than what they've proffered

1    because they haven't proffered anything --

2          THE COURT:  It's a sufficiency hearing.

3          MR. GLICKMAN:  Agreed.  Okay.  So just a couple of

4    other -- and whether -- just to tick off everything in an

5    organized way, another issue that's out there is assuming

6    the GCCM applies and provides for one week libor, is it

7    British libor or is it U.S. libor.  That we can hold for

8    another day as necessary.

9          So by my count there's two issues left and we

10   should just make a judgment about what we need to reach

11   today and what we don't.  So one is contingent on the GCCM

12   applying.  If the GCCM applies, is its floating rate fixed

13   as of the petition date?  That's the Dow case.  That's a

14   significant legal issue and it's been briefed extensively.

15   It's an important legal issue.  The question is would you

16   like me to address it today?  It is operable of the GCCM

17   applies.  Your Honor could decide let's see.  Let me make my

18   decision about the settlement agreement.  Let's see what the

19   GCCM says.  If it applies, then I will have to reach the

20   question of whether it's fixed or floating.

21         Now, Garrett addressed that issue today.  I can do

22   it too.  It's --

23         THE COURT:  I don't want to cut off any argument

24   that you want to make.  I think you addressed it in your

25   papers, though.

1          MR. GLICKMAN:  We did address it in our papers,

2    but they cut the last word in their reply and there are some

3    things that I would want to flag but --

4          THE COURT:  Go ahead.

5          MR. GLICKMAN:  Okay.  So their argument boils down

6    to this.  There's a floating rate in the GCCM.  We agree

7    with that.  They say, okay, so it should keep floating post-

8    petition, right?  That's their argument, in essence.  From

9    our perspective, that doesn't answer whether it should.  It

10   just basically says it should.  So it -- from our

11   perspective it's not a question of picking and choosing

12   parts of the GCCM.  The question is does bankruptcy law, as

13   a matter of law, operate to lock in the rate where it was as

14   of the petition date.  It's not a contract question.  It's

15   how does bankruptcy law operate and does it freeze things

16   out of the petition date.

17          So what we argue is it's well-established in a

18   number of other contexts that the petition date is the

19   benchmark.  And we've quoted cases that say the rights of

20   creditors are fixed as of the filing of the petition date.

21   And we've cited as an example --

22          THE COURT:  You realize how intellectually

23   inconsistent this argument is with the entirety of your

24   earlier argument.  That it's the contract right.  It's the

25   contract right.  Look, here's this contract.  This contract

Page 60

1    says the rate floats, but the Bankruptcy Code says you fix

2    it.  So now you're saying that, but when you say you have an

3    allowed claim and your entitlement -- you're entitled to

4    something under the plan, right, that didn't work.  There's

5    a tremendous amount of picking and choosing in your

6    arguments of what parts of the Bankruptcy Code, the case

7    law, and the underlying documents are advantageous to you or

8    not.

9            MR. GLICKMAN:  How about this?

10           THE COURT:  Sure.

11           MR. GLICKMAN:  Okay.  I will acknowledge that if

12   the settlement agreement applied in terms of its scope, it

13   could crush my GCCM, okay?  I will acknowledge that, Your

14   Honor, but it doesn't.  And --

15           THE COURT:  Okay.  So your GCCM lives to fight

16   another day.

17           MR. GLICKMAN:  It lives to fight another day and

18   that --

19           THE COURT:  And now it says we float, right?

20           MR. GLICKMAN:  It says we float.

21           THE COURT:  It says we float.  So now, that's the

22   contract so that in -- we go to the Lehman plan and the

23   Lehman plan says the contractual right.  Okay, so I look at

24   the contract and it says float.  And you say no, no, no,

25   don't float because, look, I've got this provision of the

Page 61

1    Bankruptcy Code that says we're fixed on the petition date.

2          MR. GLICKMAN:  Right.  So I'll make your argument

3    even better.  You're saying look, you're saying contract,

4    contract, contract.  That contract says float and then when

5    it comes to the petition date, you say I don't want my

6    contract anymore.

7          THE COURT:  No more floating, right.

8          MR. GLICKMAN:  Right?  That's the argument.  It

9    doesn't work.  I promise it doesn't work and I'll walk

10    through it.  I get it.  I get it.  The case that I'll come

11    to in a second, the Dow case, specifically considered that

12    question.  And what it said, as I'll come to, says when you

13    come to the petition date, benefit of the bargain becomes

14    only one issue.  Another issue comes in which is

15    compensating for delay.  So let me draw to it if I can

16    briefly, all right?

17          THE COURT:  Okay.

18          MR. GLICKMAN:  Our main analogy here is the

19    federal judgment rate.  So the federal judgment rate

20    provides for a floating rate.  It's the treasury.  It

21    floats.  But the federal judgment statute says it's locked

22    in as of the date of the judgment, right?  And the

23    Bankruptcy Courts say for purposes of bankruptcy law, the

24    petition date is the date of judgment.

25          So we say, for the same reason that you lock in

Page 62

1       the rate under the federal judgment rate as of the petition

2       date, you should lock in the contract rate.  It's part of

3       the same sentence in the plan.  It refers to the contract

4       rate and the federal judgment rate.  And it wouldn't make

5       any sense to say, well, for the federal judgment rate, you

6       stop letting it float as of the petition date, but for the

7       contract rate, you keep letting it float.

8                   Here's another example, exchange rates.  They

9       fluctuate all the time.  Under the Bankruptcy Code, 502(b),

10      they say stop the fluctuation.  Translate it into dollars as

11      of the petition date.  So there's a lot of law for the

12      proposition that the petition date matters to stop things in

13      time.  There's only one case that's ever considered that we

14      can find whether a floating contract rate should be fixed as

15      of the petition date.  Only one.  And it's the Dow case.

16      And it's the one that was decided in March of 2004.  That's

17      in re -- there's a bunch of different Dow cases.  But this

18      is the District Court decision, just to make it clear.  It's

19      In re Dow Corning Corporation, case number 201-CV-71843,

20      DPH, ECF number 36, Eastern District of Michigan, May 18th,

21      2004.

22                  In that case, the plan provided for post-petition

23      interests at the contract rate.  I don't know if there was a

24      settlement agreement, but I'm going to go back and check

25      because maybe we'll address that issue too.  Here, the

Page 63

1    contract rate is floating.  It was floating there.  They had

2    the same argument, let the contract keep floating.  That's

3    what the debtor argued in that case.  The Court explicitly

4    rejected that argument at page 3 and said the contract rate

5    of a contract with floating or variable rates is fixed and

6    set at the specific rate in effect on the date of the filing

7    of the petition for purposes of determining the pendency

8    interest rate.  Now, they say the Court gave no rationale.

9    Not so, keep reading.

10            The case law supports the application of a set

11   rate.  More often than not, an interest rate set by statute,

12   such as the federal judgment rate.  So the Court itself is

13   using a federal judgment rate as an analogy.  So just slight

14   detour.

15            In their reply for the first time they say there's

16   another case out there that speaks to this issue, which is

17   the Hahn case.  Hahn v. GE Capital (ph).  The Hahn case is

18   not on point at all.  No one was arguing about whether the

19   rate should be fixed or not as of the petition date.  The

20   Court didn't consider that question.  It didn't involve

21   post-petition interests.  The debtor was voluntarily paying

22   interests post-petition.  The creditor fixed the interest

23   rate before the petition date on a contract basis.  It's

24   irrelevant.  Let's go back to Dow.

25            They do everything they can to challenge its

Page 64

1    persuasiveness, right?  And so let's just -- and they make

2    these arguments in their reply brief, which we haven't had a

3    chance to respond to, so let me address them now.  The first

4    thing they say is, you know, the Dow Court acknowledged that

5    the debtor made a "good argument."  That's true, but the

6    Court rejected it.  They thought the better argument is that

7    the rate should be fixed.  It said Dow provided no

8    rationale, but I just read you the rationale.  It says,

9    well, the Bankruptcy Court's written decision didn't address

10   the issue, but actually the Bankruptcy Court below did

11   address the issue orally and came out our way as well.

12          So they also say that on appeal, the Court found

13   that the relevant phrase was ambiguous.  And the only reason

14   that it got favorable treatment on appeal was that the

15   District Court was reviewed under abuse of discretion

16   standard.  It wasn't even reviewed on appeal, Your Honor.

17   The issue that they're talking about had to do with default

18   or non-default interest.  The issue of whether it should be

19   fixed or floating wasn't dealt with on appeal.

20          So then they get to the heart of the matter, which

21   is you shouldn't use the federal judgment rate as an

22   analogy.  That's really the core of their position.  And

23   they say, look, you shouldn't do that because under the

24   federal judgment rate, the rate is fixed pursuant to

25   statutory language.  That's why you fix the treasury rate as

Page 65

```
 1    of judgment because there's language in the statute that
 2    tells you to do that.  And they say there's no such language
 3    here.
 4              There's two problems with that argument, Your
 5    Honor.  One is --
 6              THE COURT:  Well, but you know, when you actually
 7    read every bit of this case, which I frankly don't think we
 8    even get to, but for the purposes of engaging you in this
 9    argument.  I'm listening.  There are a number of other
10    things that the Court says that are pretty interesting,
11    okay?  One of them is that the case law supports the
12    application of a set rate more often than not an interest
13    rates set by statute, such as the federal judgment rate.
14              MR. GLICKMAN:  Yeah, that's -- right.
15              THE COURT:  Moreover, the Court says, as the
16    Bankruptcy Court noted, referring to the Dow Bankruptcy
17    Court, post-petition interests does not serve to continue
18    the contractual rights which form the basis of the
19    underlying claim.  That's what you are seeking to do.  You
20    are seeking to preserve the contractual rights which you say
21    form the basis of your underlying claim.  That's what you're
22    saying.  Look, there's that rate.  It floats.  Forget that
23    it floats.  I want to keep the fact that it's that rate, but
24    I want to fix it.  And the Court then goes on to say that
25    but rather -- again quoting the Dow Bankruptcy Court,
```

Page 66

1    "serves to compensate the successful party for any delay

2    that occurs between the time of entitlement and the time of

3    payment."

4              MR. GLICKMAN:  I completely agree, Your Honor.

5    And that --

6              THE COURT:  And that's where the plan comes in,

7    because the plan, among other things as you know, plans say

8    what your entitlement is to post-petition interests.  It

9    says what it is, as plain as day.

10             MR. GLICKMAN:  They made exactly this argument in

11   Dow.  What they said -- in Dow, the plan provided for the

12   contract rate.  So the debtor argued, just the way they're

13   arguing here.  You want your benefit of the bargain?  The

14   contract floats.  So it keeps floating past the petition

15   date.  That's the argument that they made in Dow.  And the

16   language that you're quoting, Judge, is when the Court said

17   no.  Once you get to the petition date, even though it's

18   going to be the contract's rate -- once you get to the

19   petition date, there's another factor that comes into play.

20             THE COURT:  So you're telling me to rely on the

21   Dow District Court decision?

22             MR. GLICKMAN:  Because its reasoning is

23   persuasive.  It's obviously not binding.  It's a Michigan

24   case.

25             THE COURT:  Okay.

1          MR. GLICKMAN:  So let me mention one other, I

2     think, important factor.  If you look at why the federal

3     judgment rate freezes the floating treasury rate as of the

4     judgment date, I think it's instructive.  Bankruptcy Courts

5     have used the federal judgment rate for the petition date.

6     And I think the reason that the statute fixes it is very

7     instructive.  They said it's because of the statutory

8     language.  I agree.  The question is why was that statutory

9     language put in there that says you'd freeze it as of the

10    judgment date?

11         So after we got the reply brief, we went and we

12    looked to see if there was a case that explains why the

13    federal judgment rate freezes an otherwise floating rate as

14    a judgment.  What's the thinking?  What's the rationale?

15         It turns out the United States Supreme Court

16    specifically addressed that question in a case called Kaiser

17    Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827 (1990).

18    So the Supreme Court tried to explain why would Congress fix

19    this otherwise floating rate as of the judgment rate.  And

20    this is how they explained it.  It's so that at the time

21    judgment is entered, the parties are capable of calculating

22    the value or cost or the interest throughout the time period

23    during which the judgment remains unpaid.  In other words,

24    on the date of judgment, expectations with respect to

25    interest liability were fixed so that the parties could make

Page 68

1    informed decisions about the cost and potential benefits of

2    paying the judgment or appealing or litigating it or

3    whatever.  So --

4              THE COURT:  It makes total sense to me.

5              MR. GLICKMAN:  Right.  So --

6              THE COURT:  They're smart, that Supreme Court,

7    aren't they?

8              MR. GLICKMAN:  They're smart and Congress was even

9    smarter.  So the same principle applies here.  If you fix

10   the rate as of --

11             THE COURT:  No, the same principle applies here

12   because when you buy a claim, you need to understand what

13   you're buying.  Period.

14             MR. GLICKMAN:  Yes, I agree with that.  So the

15   question is -- Your Honor, there is a legal question as to

16   when you -- if you have a contract with a floating rate,

17   right, do you freeze the rate as of the petition date?

18   That's like a yes or no legal question.  And our point is

19   the same principle that applies to the federal judgment rate

20   applies here.  It will give clarity to debtors to know what

21   the rate is.  And Your Honor is right.  If you take a pure

22   benefit of the bargain approach, you keep it floating.  But

23   what the Dow Court says is hybrid consideration once you

24   have the petition date, not just benefit of the bargain but

25   compensation for delay.  The Supreme Court says certainty.

Page 69

1    That's her position.  It's not a pure benefit of the bargain

2    analysis once you get to the petition date.  That's --

3            THE COURT:  So it's benefit of the bargain when it

4    benefits you, but it's not benefit of the bargain when it

5    doesn't benefit you.

6            MR. GLICKMAN:  Well, in fairness, Judge --

7            THE COURT:  I really do have to in fairness

8    observe that I think there's a tremendous amount of

9    inconsistency between the parts of the various so-called

10    underlying documents and agreements that you want to have me

11    follow, and hue to, and count and those that you don't.  And

12    the ones -- and it all leads to a very, very large number

13    that if there were consistent approach to what counts and

14    what doesn't count, the number would be smaller.

15            MR. GLICKMAN:  But, Your Honor, just on that point

16    and it was mentioned by Mr. Fail as well.  I mean, they're

17    arguing for a number that they want.  And they're trying to

18    persuade the Court that you can get to their number by

19    applying legal principles properly.  That's what advocates

20    do.  I'm an advocate for my client.

21            THE COURT:  Sure.  I'm not --

22            MR. GLICKMAN:  And I'm not just -- my -- I could

23    say if you let that rate float, do you know what the

24    interest rate is?  It's 0.26 percent.  I'm not saying to

25    Mr. Fail, you're just making the floating argument because

Page 70

1    you want this really low rate.  That's all you're doing.

2    He's an advocate.  He's advocating for his position.  He's

3    trying to make a concerted legal argument that in principle

4    it should be floating.  It's better for his client if it's

5    floating.  It's better for my client if it's fixed.  But I'm

6    trying to do what he's doing.  I'm making a concerted legal

7    argument that it should be fixed.

8             And if Your Honor reaches this question, it's

9    going to apply, right -- this decision in the Southern

10   District of New York will be watched and read, and it will

11   apply in a lot of cases.  And sometimes the floating rate is

12   not going to be lower than the fixed rate.  It's going to

13   cut different ways.  It cuts my client's way in this case.

14   But to say that's the only reason I'm up here arguing it, I

15   could say the same thing that -- why he's arguing floating.

16            I mean, in every case we're advocates and we try

17   to persuade Judges that the principles support where we want

18   to go.

19            THE COURT:  Of course.

20            MR. GLICKMAN:  That's what I do.  So -- okay.

21            THE COURT:  And very well.

22            MR. GLICKMAN:  Thank you.  Judge, there's one

23   issue and I tremble at suggesting this.

24            THE COURT:  You don't.

25            MR. GLICKMAN:  But if Your Honor rules that the

Page 71

1    settlement --

2            THE COURT:  It's interesting, though, because the

3    federal rate is higher than the floating rate, right?

4            MR. GLICKMAN:  It depends.

5            THE COURT:  Well, that's what Mr. Fail is telling

6    me, right?  So, you know, so just in terms of --

7            MR. GLICKMAN:  Yeah, it's high -- it is, yes.

8            THE COURT:  The consistency, right -- I mean, if

9    we were -- if I was really going to accuse each of you of,

10   you know, just being lawyers, I mean -- and Mr. Fail is also

11   a fiduciary.

12           MR. GLICKMAN:  I'm a fiduciary of my client as

13   well.

14           THE COURT:  I understand, but in a different way

15   that Mr. Fail is a fiduciary.

16           MR. GLICKMAN:  And I've never changed my position

17   in this case, Your Honor.

18           THE COURT:  Well --

19           MR. GLICKMAN:  You can tell me that there are

20   inconsistencies.  I get it.  I get it.  It's complicated.

21   But I've been consistent in my position.  Let me --

22           THE COURT:  I prefer to keep things simple when I

23   can.

24           MR. GLICKMAN:  Okay.

25           THE COURT:  I hear you about how you're viewing

1  the broad sweeping significance of the questions that you're

2  putting before me.  I'm not going to -- I would reach that

3  if I have to.

4          MR. GLICKMAN:  I get it.  And I'm just pointing

5  out that it could cut different ways in different cases.

6          THE COURT:  Sure.

7          MR. GLICKMAN:  Now we come to the very last issue.

8          THE COURT:  Okay.

9          MR. GLICKMAN:  Right?  So this one only gets

10  triggered if you rule their way on the settlement agreement

11  and you say it's the statutory rate, right?  Because the way

12  the plan works is --

13          THE COURT:  Right.  It's the contract.  If no

14  contract, then the statutory rate.

15          MR. GLICKMAN:  Right.

16          THE COURT:  Okay.

17          MR. GLICKMAN:  Okay?  This is not what we argued

18  in our demand, right?  We argued for the GCCM.  But now

19  they've taken the positions to statutory rates, so we need

20  to address that, okay?  Just to be clear, though, we are

21  advocating for the GCCM.  But our position as to what

22  statutory rate means, I just clear the debris just to make

23  sure there's no misunderstanding, it's going to be a big

24  number.  We are not urging that number, Judge.  We want the

25  GCCM to apply.  But if they say that the statutory rate

Page 73

1    applies, then we want you to hear our position as to what

2    statutory rate means, okay?

3            It's an 8 percent number.  It's a 5 percent number

4    if you use the GCCM all the way.  But just because

5    everybody's been throwing around where these numbers come

6    out, the number is a larger number.  What did we say, just

7    cutting through it.  They say the statutory rate means the

8    federal judgment rate, okay?  We say, not so fast.  The

9    statutory rate, logically, should mean the applicable law in

10   terms of the nexus of the transaction.  And here, there is a

11   statutory rate under English law, which we say should apply,

12   which is the Judgment's Act of 1838, which provides for 8

13   percent.

14           How do we get to that?  I just -- let me just run

15   through the argument, okay?  So what they --

16           THE COURT:  So just again to continue the theme of

17   inconsistency, okay, what did I have?  Judge, Bankruptcy

18   Code, Bankruptcy Code.  And now enter the English Judgment's

19   Act of 1838.

20           MR. GLICKMAN:  Well --

21           THE COURT:  It's --

22           MR. GLICKMAN:  Your Honor, yes, absolutely apply

23   the U.S. Bankruptcy Code.  But in U.S. bankruptcies, you can

24   absolutely apply foreign law.  It's not inconsistent to say

25   that you can incorporate.  And I'll cite you a bankruptcy

Page 74

```
 1    case that did it.

 2               THE COURT:  I know.  My --

 3               MR. GLICKMAN:  Federal cases do that all the time.

 4               THE COURT:  My predecessor, in fact, in this

 5    job --

 6               MR. GLICKMAN:  Judge Peck?

 7               THE COURT:  Judge Peck.

 8               MR. GLICKMAN:  My former partner.

 9               THE COURT:  You know, had his own views about

10    that.  But, of course, other applicable law applies.

11               MR. GLICKMAN:  Right.

12               THE COURT:  Of course it does.

13               MR. GLICKMAN:  So let me make my case --

14               THE COURT:  But where appropriate.

15               MR. GLICKMAN:  -- that it does here.

16               THE COURT:  Sure.

17               MR. GLICKMAN:  All right?  So what they say is the

18    majority view is that the term legal rate means the federal

19    judgment rate.  That's their principal argument.  So our

20    response is, okay, there's kind of a big problem up front,

21    which is that the term legal rate isn't at issue here.

22               THE COURT:  Well, but Dow Corning, the case that

23    urged me to follow --

24               MR. GLICKMAN:  Yes.

25               THE COURT:  -- is not going to agree with you on
```

Page 75

1    this point.

2              MR. GLICKMAN:  Why?

3              THE COURT:  You don't get to ask the questions.

4              MR. GLICKMAN:  I'm just trying to engage -- I

5    don't think that Court reached the federal judgment rate.

6    It was a contract rate.

7              THE COURT:  I think its observations would be

8    inconsistent with the notion that English law would apply

9    under these facts and circumstances.  Let me stop

10   interrupting you.  Why don't you just continue?

11             MR. GLICKMAN:  Okay, so I can dig through it

12   fairly quickly.  What they set out for the Court is, look,

13   there's a majority view and a minority view in terms of how

14   you interpret the term legal rate.  So our first response to

15   that is to say that's nice, but that's not the term that

16   we're trying to interpret here.  The term here is statutory

17   rate.

18             THE COURT:  Right.

19             MR. GLICKMAN:  And they can say, well, it's close.

20   But sophisticated lawyers put the plan together.  They knew

21   about the jurisprudence on legal rate.  They chose to use

22   the word statutory rate.  And by the way, they chose not to

23   say the federal judgment rate, which they could easily have

24   done.

25             Another point.  When they talk about the minority

Page 76

1    view with respect to what legal rate means, even though

2    legal rate is not the term here, but it's interesting.  It's

3    interesting how those minority cases interpret legal rate.

4    They interpret it to mean the following.  At the contract

5    rate, or if a contract rate does not exist at the otherwise

6    applicable state statutory rate, that's identical to the

7    plan here, except for the word state, which I'll come back

8    to.  But it sure looks like, if anybody was thinking about

9    this, they used the minority view in terms of what statutory

10   rate should be.

11          So our view would be by not putting in the word

12   state statutory rate, it allows even more flexibility.  I

13   mean, look, obviously the idea of putting something in a

14   plan that says your contract rate or your state statutory

15   rate, it's to give greater flexibility, right?  It's not

16   just one size fits all, federal judgment rate.  If you have

17   a contract, you can get your contract rate.  If you don't

18   have a contract, we'll look to your local state for the

19   rate.  The idea is to tailor it.  All right?

20          So in this case, the plan didn't even qualify

21   statutory rate with the word state.  Our argument is you can

22   use the statutory rate from anywhere that would apply.  If

23   it makes more sense to apply the federal, if it makes more

24   sense to apply the state, if it makes more sense to apply

25   the law of England, then you apply the law of England.  And

Page 77

1    we've cited to Your Honor a case where Bankruptcy Courts

2    have applied foreign rates where there's a foreign nexus.

3    And that's the In re Azabu Buildings case at 383 Bankruptcy

4    738 where they awarded post-judgment interest at the

5    Japanese judgment rate because "Japan has the most

6    significant relationship to the parties, the transaction,

7    and the judgment."  If the Court's with me so far in terms

8    of the reasoning, now we come to something that Courts are

9    very familiar with, which is basically a context test, where

10   you look and see what the relevant contexts are.  You say

11   which jurisdiction has the most relevant nexus.  So I'll

12   make my quick case, then it's the UK, and I'll tell you what

13   they say.  All right?

14          The funds were denominated in British pounds.

15   They say that doesn't matter.  It was converted to dollars

16   at the beginning of the bankruptcy.  Well, that's pursuant

17   to statute.  It doesn't change the fact that the rates were

18   denominated in Great British pounds.  They were owed to

19   Lehman Re, which is a Bermuda entity, which is a British

20   territory.  It doesn't have the same laws necessarily as

21   Britain, as they point out, but it's a British territory.

22   What were they for?  What was this money even for?  It was

23   collateral for a reinsurance agreement that Lehman Re had

24   with a British entity, called Britannia Life Limited.  And

25   before they were transferred to LBCC, the debtor here, they

Page 78

1    were held in custody for Lehman Re by another British entity

2    called Libby British.

3              The custody agreement that Libby was holding it

4    with respect to was under UK law.

5              THE COURT:  You have an allowed claim that's

6    denominated in U.S. dollars pursuant to a plan approved in a

7    Bankruptcy Court in the United States.

8              MR. GLICKMAN:  Should that matter, though, is the

9    question.  I take that point, Your Honor.  I agree that

10   that's the case.

11             THE COURT:  There's all kinds of interest rate

12   arbitrages that can go on and that have, in fact, been

13   attempted in this case in order to take advantage of

14   interest rate fluctuations.  And to suggest at some later

15   point in time that a different interest rate should pertain

16   because the original claim or transaction was denominated in

17   a foreign currency, it would be unfair.  It would be

18   uncertain.  And it would be incapable of being administered.

19   And it would set up a plan that involves claims that arise

20   or are connected with foreign law as an endless arbitrage

21   opportunity.

22             MR. GLICKMAN:  Well, Your Honor, I'll respond to

23   that.  Your Honor has made two points.  One, it's in U.S.

24   Court.  Two, it's converted to U.S. currency.  So let me

25   just take them one at a time.

1           It's a U.S. Court, I get it.  But my point is that

2    can't be dispositive because U.S. Courts, State Courts, all

3    the time make decisions based on foreign law when they

4    conclude foreign law is applicable based on the context.

5           THE COURT:  I don't disagree with that general

6    statement.

7           MR. GLICKMAN:  Okay.  Then the next question is

8    does the conversion that's required under 502(b) to dollars

9    take away all of the British connections here?  Not just the

10   British connections with respect to what the currency used

11   to be, but all -- the fact that all of these entities, for

12   the most part, were British.  My position would be I get

13   that it's converted to U.S. dollars.  It's converted to U.S.

14   dollars for the same reason that we're in a U.S. Court.  You

15   can't have a claim in a U.S. Court that's denominated in

16   something other than dollars.  That doesn't go to what

17   jurisdiction has the most relevant nexus to this

18   transaction.  That's our position.  You can obviously agree

19   or disagree, but that's our position.  I think it's a

20   coherent position.

21          Now, they point out that LBCC, the transferee, the

22   debtor here, was a U.S. company.  100 percent true.  That's

23   a point for them.  And the way these analysis are done, you

24   just look at the whole matrix and you decide where it tips.

25   We have five British connections.  They have one U.S.

1    connection.

2          They also say the GCCM governs transactions

3    headquartered in the United States.  But the GCCM doesn't

4    apply here because remember, we're assuming.  We don't get

5    to this argument unless you've thrown the GCCM out the

6    window and you're saying you've got to do the statutory

7    rate.  So that's irrelevant.

8          So look, I think we've covered --

9          THE COURT:  Okay.  I think it's time to wrap it

10   up.

11         MR. GLICKMAN:  I think we've covered the issue,

12   Your Honor understands our position.

13         THE COURT:  Mr. Dorchak, do you have anything

14   else?

15         MR. GLICKMAN:  And thank you very much for taking

16   the time to listen to us.

17         THE COURT:  Sure.  Of course.  Do you have

18   anything else?

19         MR. DORCHAK:  Nothing further, Your Honor.

20         THE COURT:  Okay.  Thank you.  Mr. Fail, thank

21   you, very interesting.

22         MR. FAIL:  Thank you, Your Honor.  We have nothing

23   further.  I think all of the points that were raised today

24   were addressed in our pleadings.

25         THE COURT:  Okay.

1            MR. FAIL:  And if you have any questions, I'm

2    happy to answer them.

3            THE COURT:  Okay.  All right.  I'm going to give

4    it some substantial thought.  You've made a lot of very

5    interesting points.  I appreciate you taking such a long

6    time to present them.  And I wish you a good day.  Thank

7    you.

8        (Chorus of thank you)

9        (Whereupon these proceedings were concluded at 1:59 PM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 82

```
 1              C E R T I F I C A T I O N

 2

 3     We, Dawn South and Jamie Gallagher, certify that the

 4     foregoing transcript is a true and accurate record of the

 5     proceedings.

 6     Dawn South

 7     _____

 8     Dawn South

 9     AAERT Certified Electronic Transcriber CET**D-408

10     Jamie Gallagher

11     _____

12     Jamie Gallagher

13

14     Date:  October 10, 2016

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY 11501
```

Digitally signed by Dawn South
DN: cn=Dawn South, o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2016.10.10 14:07:00 -04'00'

Digitally signed by Jamie Gallagher
DN: cn=Jamie Gallagher, o=Veritext,
ou, email=digital@veritext.com, c=US
Date: 2016.10.10 14:07:25 -04'00'