Keith Olin Hedman  & Adrialyn Varilla Hedman,Executors

785 Shelli Street

Mountain House, CA 95391

408-507-4431

10/15/2016

United States Bankruptcy Court

Attn: Bankruptcy Judge Shelley  C. Chapman & Clerk

Southern District of New York

One Bowling Green

New York, NY 10004-1408


Dear Judge Chapman,

I am writing you to explain why we are filing a CLAIM OF TRESSPASS
& UNLAWFUL DETAINER. This should answer a lot of questions for you about where
LEHMAN got money for their slush funds and liquidity. This will also key you in to looking at
USBANK, NA as a CUSTODIAN and MELLON BANK as a TRUSTEE in some major fraud,
steeling money and looting the US TREASURY.  In Exhibit one the last page shows that
LEHMAN was using "NON-RECOURSE" deposits to steal monies using UCC 1-308, where in
the liability of a NOTE falls on the last signor. We never authorized them to cash in the NOTE or
for that matter multiple times using our SS TRUST accounts to take out SECURED CREDITOR
LOANS.  We are still holding the collateral in this REPO 105 and are giving notice to Accelarate
Repayment of all Principle , Interest, and Personal Payments we were fraudulently induced to
make. If you have opened a Cestui Que Vie Trust to handle this, please collapse our portions and
remit the proceeds to us as we are secured Creditors. We even filed multiple letters of rescession
and are still waiting to be given our monies back over 10 years of payments, interest and Federal
Fines for Mail Fraud. I have a letter I got from MELLON BANK in 2008 saying a data tape fell
off of a truck, and then around 2012-2013 several law firms from TEXAS and DIAMOND BAR
, CA: working with other parts of LEHMAN BROTHERS  BANK, FSB, LEHMAN
BROTHERS, HOLDINGS, INC,  AURORA LOAN SERVICES, LLC , AURORA BANK,
FSB, NATIONSTAR MORTGAGE, INC/LLC, RIGHT FINALY AND ZAK, BUCHALTER
NEMER, FIRST AMERICAN TITLE COMPANY, NORTH AMERICAN TITLE COMPANY,
NDEX WEST, LLC; BARRET FRAPPIER TREDER& WEISS, STARTED TO HARRASS
AND ATTACK MY WIFE.  WE HAVE HAD LEGAL ACTIONS GOING SINCE 2009-2010

AND IT HAS DERAILED MY CAREER AND CAUSED UNDO STRESS FORM MY FAMILY.

I am currently being attacked in San Joaquin County Court, where the judge has been ingnoring all of the prima fascia evidence in the case showing securities fraud. For all I know he might have an interest in the case.

In 2004 my wife and I thought we bought a house and mortgage from LENNAR HOMES, GREYSTONE HOMES, with a table funded loan from WELLS FARGO. They actually gave us a back dated loan of an equity line of credit before what was determined to be our first Mortgage with CMG, MORTGAGE, Inc.. WE already were forced through BANKRUPTCY which has financiall damaged us and our credit, We took out our 401Ks over 100K to pay for LEGAL expenses, and these strangers to the case the law firm of Wright Finlay and Zak, as strangers will not produce there agency appointment letter. I am not sure if these strangers will displace my wife and I and my 10 year old daughter, but we are giving it our best shot. Never one to back down from a challenge. As of recently we learned that LEHMAN BROTHERS BANK, FSB, AND LEHMAN BROTHERS HOLDINGS, INC. were and maybe still are involved with multiple accounts where they transferred funds outside the US. Our NOTE may have even been counterfeited multiple times since over the course of making payments the loan number what changed many time .

A Notice of rescission was sent and delivered under 15 U.S.C. § 1635. According to the statute the loan contract, if it ever existed, is canceled, and the note and mortgage or deed of trust are void, not voidable. This issue has been settled by a unanimous US Supreme Court decision in Jesinoski v Countrywide. Since more than a year has passed since the rescission was sent, the TILA does not allow for an action to enforce the duties under the TILA Rescission procedures in 15 U.S.C. § 1635. But this does not affect the status of the alleged loan contract or the status of the note and mortgage. As a matter of law, they are all void. The current status therefore is that there are no documents that can be used for collection or enforcement of any money from Hedman. And dispute over the rescission appears to have been completely settled by the US Supreme Court. In accounting terms this means that any entity carrying a claim on their accounting records as an asset(i.e. purported Loan") is required under generally accepted accounting principles and auditing standards published by the Financial Accounting Standards Board to make enteries showing the obligation (Liability) to return all monies paid by Hedman, and decreasing the "asset" of ownership of the note and mortgage to zero because they are void. However , a new asset arises of the balance sheet of some party—for a claim by an actual party who would qualify as the actual lender or creditor. The claim would be for the principal amount of the "loan" only. The footnotes on such an entry would ordinarily explain that the claim is contingent upon the creditor's compliance with the three duties specified by TILA Rescission statute- return of the canceled note, release of the encumbrance and payment of the disgorgement and payment of all money paid to third parties as compensation for the origination of the loan. The "asset" would also be a contingent asset, as the debt cannot be claimed until after all

statutory duties under the TILA Rescission statute have been fully executed, and after one year the debt either expires or is rendered unenforceable if the debtor (Hedman) raises the statute of limitations, which we are informing you of with this letter.

Here in lies other issues for Wells Fargo in that the first papers signed back in 2004 were signed prior to the first with CMG Mortgage, Inc. those monies were used to provide a down payment so the second mortgage could be procured. This is a practice that is predatory and illegal called "table funding".

We recently hired a retired banker/attorney an industry expert whom has provided us with a declaration confirming this conclusion. We have also requested several times in our "QWR" or Qualified Written Requests sent to you multiple times via certified mail, for you, to provide us with both instruments the one signed in 2004 and the one signed in 2005 and any alterations or stampings front and back, to prove to us that this loan was indeed placed into a REIT or REMIC trust. You can't even show that it was property securitized via your vendor that you placed as TRUSTEE: AMERICAN SECURITIES COMPANY. This would make "The Hedmans" undisclosed third party beneficiaries to the trust. It is apparent that for this paperwork and that the note then turned into a security after 9 months that was used for a purpose that was simply not disclosed to the Hedmans, but yet it was represented to them as a loan, which form recent discovery, is showing it was simply a deal based on misrepresentations and fraud. This changes the entire statue of limitations as far as recourse of the Hedmans in that they now realize there never was a loan, and they were fraudulently induced by reliance into a mail fraud scheme by Wells Fargo Bank to make unlawful payments which resulted in great financial damage to the Hedmans, resulting out of reliance to file Ch13 (two times) and Ch7 (one time) to discharge the perceived obligation. Hedmans received over 120 illegal presentments (at a fine of $4000 each or $480,000.00) as per UCC and the Federal Fair Debt Collection Practices Act, and received negative reporting of information against the Federal Fair Debt Reporting Act(Damages of credit by Illegal Reporting by Wells Fargo Hedmans estimate to be several millions of dollars in short and long term damage). Then there is actual damages, punitive, and pecuniary, damages for legal expenses, time off work, hospitalization, fees to hire industry experts, mileage, parking, copying, postage, ink and paper costs, etc.. Multiple calls were also initiated by Wells Fargo, and Hedmans are both registered on the Do Not Call Lists, so any call to their cell phones or homes would be a $6000 fine payable to the Hedmans as per the Telephonic Act of 1994. At this time we have sent you several notices and finally a Default Notice that has not been properly responded to.

We find your willful non-compliance and belligerence to be very much pattern behavior of your organization. You had 20 days to return back to us what has been taken from us when we filed a rescission letter. We have found that your company has been non-compliant with any and all requests involving your companies fraudulent practices.

We are demanding you return these payments, any escrow funds, and penalties or monies claimed abandon via IRS 1099A plus 7% interest , back to us immediately.  We estimate the fines, return of payments, to equal over $2,500,000.00. This does not include our claim for other pecuniary and punitive damages, as well as costs to date and credit damages which still have to be determined. As well as getting a restraining order put in place.

Sincerely,

Keith Olin Hedman , Office of Executor

*FILE OUR DEMAND*

*original*

UNITED STATES BANKRUPTCY COURT
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEITH OLIN HEDMAN & ADRIALYN VARILLA HEDMAN**<br>**Creditors** /Plaintiffs, | **Chapter 11**<br> **CASE NO. 08-13555(JMP)**<br>For Unlawful Detainer /CLAIM OF TRESSPASS |
| - versus -<br>**LEHMAN BROTHERS HOLDINGS, INC.,et al.,**<br>Debtors, | |

x------------------------------------------x

# CLAIM OF TRESSPASS

*(Secured creditors)*

**COMES NOW**, the plaintiffs in sui juris to this most Honorable Court, MOST RESPECTFULLY STATES THAT;

# PARTIES

1.  The Creditors , KEITH OLIN HEDMAN AND ADRIALYN VARILLA HEDMAN, are American Citizens, of legal age, married and are residents of 785 Shelli Street, Mountain House, CA, 95391, where they  may be served with copies of notices, orders and other papers of this Honorable Court; the creditors had contacted Judge Peck with three certified letters prior to this filing in 2014-2015 time frame. HEDMANS never received a response but retain the certified letters to the court.

home builder LENNAR HOMES. LENNAR and their sales staff manipulated the HEDMANS by showing them exhibits of items they claimed they were going to build, but after 13 years never have built, to oversell the value of the homes, the purchase price being $462,950, which should have bee about $250,000 without their false claims. The alleged loan they were sold ended up being a security that immediately paid off the house when LEHMAN BROTHERS BANK, FSB NEGOTIATED IT, but HEDMANS were induced to make payments over the last 10 years. THEN LEHMAN BROTHERS HOLDINGS TURNED IN THE NOTE 20X ADDITIONALLY TAKING A LOAN FROM HEDMAN without their knowledge(As Can Be Seen In Exhibit 1 a copy of the Note with three stampings on the back of it). HEDMANS eventually hired a retired Wall Street Banker, attorney, Neil F. Garfield, MBA , JD, a handwriting expert NANETTE BARTO, and Thompson Reuters. From the collective HEDMANS were explained that they never consummated a mortgage and that the monies were embezzled by LEHMAN and their companies.  HEDMANS were able to get a documents showing a REPO 105 transaction where HEDMANS have relationship of Bailor and "non-disclosed third party creditor". The multiple stamping on the back of HEDMANS note show it was done 1X by LEHMAN BROTHERS BANK, FSB, AND 20x BY LEHMAN BROTHERS HOLDINGS(exhibit 1). THE FACE VALUE OF THE NOTE WAS $333,700, AND THERE WAS A TABLE FUNDED NOTE ALSO SIGNED FOR $128,250, the second being refied or rather the new origination of  a new loan being taken out for $169,000.. THAT WAS HANDLED THE SAME WAY. HEDMANS ARE SEEKING RETURN OF MONIES WITH INTEREST, FEDERAL FINES, AND PENALTIES, HEDMANS HAD TO FILE BANKRUPTCY TO PROTECT THEIR PROPERTY RIGHTS AND ARE STILL BEING HARRASSED BY LAW FIRMS WRIGHT, FINALY, AND    ZAK, BUCHALTER NEMER, AND BARRET, FRAPPIER, TREDER, AND WEISS WHOM ARE COMMITTING FRAUD AND GIVING THE LEGAL COMMUNITY A BAD NAME. HEDMANS even believe the Superior Court Judge (Carter P. Holly) is working with the above attorneys to defraud HEDMANS of their property

in Case Number 08-13555(JMP). HEDMANS made efforts to contact JUDGE PECK Dec. 2013, Jan. 2014, and another time in 2014(Exhibit 2, certified letters can be produced from our files upon request). So, HEDMAN's should not be barred from pursuing an action of collection from LEHMAN, since they did contact the court timely when they suspected foul play. In 2014, Mr. HEDMAN was hospitalized due to a stress related illness because of the constant harassment of lawfirms dealing with this same issue. In the beginning of 2016 HEDMAN hired and received semi-retired Wall Street Bankers write up that disclosed without a doubt, the fraud of LEHMAN BROTHERS BANK, FSB, and LEHMAN BROTHERS HOLDINGS, INC. HEDMANS are now working to recover what is rightfully their property.

4.   Damages, HEDMANS have determined and filled out the proper forms 1099-A, forms 8300, forms 1099-oid, and are ready to next day are these to the correct recipient whom can process these for HEDMANS. HEDMANS estimate the monies taken out by LEHMAN BROTHER BANK, FSB, and LEHMAN BROTHERS HOLDINGS, INC. to be a sum with interest at $32,604,130.70, HEDMANS were also fraudulently induced to make payments to LEHMAN and their companies which would be $502,954.00 with interest to date. Federal fines for mail fraud and do not call list violations are worth about $2,000,000.00 to HEDMANS. HEDMANS have had to file Bankruptcy, (maintain legal proceedings since 2009, at a cost of several hundred thousand dollars)lose commissions, time of work,pay court costs, parking, postage, copying ,ink , suffer loss of work to maintain litigation to maintain their God Given Rights. Mr. Hedman has lost several jobs since he has been distracted by this, and been unemployed unable to attain employment with damaged credit to date. Mr. HEDMAN was also hospitalized due to this stress for over 8 days in a Hospital, the bills which are now over $50,000.00.HEDMANS have also been slandered in the TRACY PRESS, on several internet portals by GOOGLE and their media portals whom deliver content incorrect or not to vendors such as Foreclosure.com, Redfin.com, Zillow.com. HEDMANS have suffered a great deal of harassment and public ridicule because of open Foreclosure Sale Notices taped on their door, Foreclosure Publishings in NewsPapers

forms and are secured party creditors, and believe what we have asked for is fair and just, unless it is found that the NOTES were counterfeited multiple times, in which we will have to revisit settlement talks.

5. The defendant, debtor Inform the party that they were going to fraudulently take a loan out on HEDMANS credit,and Social Security Trust.

6. Despite HEDMANS sending three certified letters to the court for discovery purposes, the court never contacted HEDMANS back.

7. HEDMAN developed this claim with expert witness testimony.HEDMANS have received one bond payment from a notary to date whom committed additional acts of fraud on HEDMANS. Thus the Notary can not now harm others if she does not post her own bond in Federal Reserve Notes.

# PRAYER

WHEREFORE, premises considered, it is most respectfully prayed of this Honorable Court that judgement be rendered in favor of the plaintiff/creditor and that after judgement:

a. To pay the amount of Claim of Tresspass of $65,107,084.70.as compensation for the reasonable use of the HEDMANS credit and for damages.

b.

c. To pay the plaintiff/creditor the cost of his suit to date of $328,000.

d. Other just and equitable reliefs and remedies under the premises.

Mountain House, CA , this 15th day of October 2016.

# VERIFICATION AND CERTIFICATION

I, KEITH OLIN HEDMAN, of Legal age, MARRIED, AMERICAN Citizen and a resident of 785 SHELLI STREET, MOUNTAIN HOUSE, CA, 95391, after being sworn according to law, hereby depose and state that;

1. I am a plaintiff in the above-stated case;

2. I caused the preparation of the foregoing SECURED CREDITOR CLAIM OF TRESSPASS;

3. I have read the contents thereof and the facts stated therein are true and correct of my personal knowledge and/or on the basis of copies of documents and records in my possession;

4. I have commenced other actionS or proceeding involving the same issues in the Supreme Court, the Court of Appeals, or any other tribunal or agency so as to not suffer additional damages and to maintain my God Given Rights, and Constitutional Protections.

5. To the best of my knowledge and belief, such actions are proceeding or are pending in the Supreme Court, the Court of Appeals, Superior Court and other tribunal or agency dealing with house property claim only at this time.

6. If I should thereafter learn that a similar action or proceeding has been filed or is pending before the Supreme Court, the Court of Appeals, or any other tribunal or agency, I undertake to report that fact within five (5) days therefrom to this Honorable Court.

# EXHIBIT 1

17877986

# NOTE

HEDMAN
LOAN #: 20519535
MIN:    100072400205195350

MAY 14, 2004                    PLEASANTON                    CALIFORNIA
   [Date]                         [City]                        [State]

785 SHELLI STREET, MOUNTAIN HOUSE, CA 95391
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   333,700.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   CMG MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.375   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1ST   day of each month beginning on JULY 1, 2004                            . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If, on JUNE 1, 2034                            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   3160 CROW CANYON RD., STE 240, SAN RAMON, CA 94583
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S $   2,081.85

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
DOCUCFA1                                    (page 1 of 3 pages)
DOCUCFA1.VTX  01/26/2004

20519535

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
(page 2 of 3 pages)
DOCUCFA2
DOCUCFA2.VTX 1/06/2003

20519535

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

- BORROWER - KEITH O HEDMAN - DATE -                    5/18/04

- BORROWER - ADRIALYN V. HEDMAN - DATE                    5/18/04

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
DOCUCFA3                    (page 3 of 3 pages)
DOCUCFA3.VTX 04/06/2004

VOID

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY:_____
RICK W. SKOGG
VICE PRESIDENT

PAY TO THE ORDER OF
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS, INC.

BY:_____
RALPH A. ORAZI III
AUTHORIZED SIGNATORY

LEHMAN BROTHERS BANK, FS.

SANDY SMITH
ASSISTANT SECRETARY

# EXHIBIT 2

Keith Hedman

785 Shelli Street

Mountain House (TRACY), CA 95391

12/5/2013

408-507-4431

United States Bankruptcy Court for the Southern District of New York

York (Case No. 08-01420 (JMP) (SIPA)

One Bowling Green
New York, NY 10004-1408
Chambers: (212) 668-5632
Courtroom: 601

Attn: Judge James M Peck

Dear Judge Peck,

I have several questions for you, I unknowingly had my loan securitized by Lehman Brothers Holdings in 2004. We actually singed the documents that we thought was a 30 year fixed mortgage on May 18th, 2004.  We did get a notice that Aurora Loan would be servicing the paper, but then some insurance fraud / ponzi scheme happened in 2009-2010 where they tried to foreclose on several times, while we were current on the mortgage. The did despicable things to us like held checks, sent checks back and added fees and raised our mortgage payment unilateral, as well as place a multitude of threatening and harassing phone calls. to us.   This scenario is all starting to happen all over again from my wife and I with Nationstar Mortage LLC and NDex West LLC, they are usurping your authority as trustee and are going ahead using MERS as a nominee to create assignments, and record default notices and deeds of trust.  We are truly trying to still figure out what is happening, and whom we should be paying as the investor of Lehman's Ponzi Scheme.  To make things more complex they had us come back 2X for the signing and never showed us that they destroyed the first paperwork that we signed.

When NDex West LLC recently sent us a default notice I asked them to show me a copy of the wet ink note. What they did  was to provide a copy of what is in our county records , and then a back page with three Lehman Brothers Stampings on the page. I never saw the illusing stamping page though I have sent a multitude of QWR's and TILA and RESPA letters to Aurora Loan Services, Aurora Bank FSB, and I Nationstar Mortgage, LLC.  The only entity that produced it probably by mistake was NDex West LLC.

When I found out what these stampings meant I sent out Rescission letters to all of the Servicers on record even Lehman Brothers Holdings.  I have attached as Exhibit 1 the stamping page in question,

included are also two letters from Lehman Brothers Exhibit 2 and 3. Both content that after an exhausting search that Lehman Brothers has never services or had control with out mortgage dealing with the said part at 785 Shelli Street, Mountain House(Tracy) , CA 95391. Since I rescinded my wife and my names from the security which is the deed of trust because of constructive fraud, could you please send me our wet ink note since it has been over 9 months since it was separated by the deed of trust and is null and void. I am going into court and need it. I was only provided with a blank photo copy, no signatures of our note and other documents. I am under the impression that the liquidation of LBI is overseen by James W. Giddens, as the Trustee appointed by the United States District Court for the Southern District of New York. We are really trying to put our lives back together and now it is starting all over again.

Aurora Loan used many different numbers in their system for us ; **Aurora Loan Services, LLC**
**Loan Number: 20519535        &        0597829530        &        0017877986**

**10350 Park Meadows Drive, Littleton, CA 80124**

**Also used Loan Number : 0017877986**

**Aurora Bank FSB Loan Number: 20519535 = 0597829530**

**10350 Park Meadows Drive, Littleton, CA 80124 Also used Loan Number :**

**Aurora Commercial  Corp.**


We have lost more wealth, income and credit  in the is process than the Loans current value.  We are currently in Chapter 13 trying to salvage what we have left.


Please contact me.


Sincerely,

Keith Olin Hedman

408-507-4431

Keith Hedman

785 Shelli Street

Mountain House (TRACY), CA 95391

01/5/2014

408-507-4431

United States Bankruptcy Court for the Southern District of New York

York (Case No. 08-01420 (JMP) (SIPA)

One Bowling Green
New York, NY 10004-1408
Chambers: (212) 668-5632
Courtroom: 601

Attn: Judge James M Peck

Dear Judge Peck,

**Letter of Rescission Because of Constructive Fraud:**

Again this letter is our notice to you that we want to enter into rescission  because of constructive fraud;  also canceling the mortgage by taking our names off of the security because of constructive fraud.. Lehman Brothers had illegally securitized our 30 year fixed mortgage signed back in May of 2004 with us as the sole signatures, they misrepresented  the product, we had filled out  a conventional loan application in  our records. They basically tapped our credit and loaned us our own money back to us. They further, needed a temporary power of attorney document, and misrepresented what it would be used for to us. We have asked for a copy of it multiple times and they have not been-compliant in its production. It was used to participate in identity theft to embezzle the funds of the promissory note, because it is a negotiable instrument.  Title 18 U.S.C. Section 656 Bank Embezzlement.

This means that the house was paid for as soon as the check was embezzled.  Attached is the last page of the note showing three stamps by Lehman Brothers. This shows that the negotiable instrument was turned in three times.  According to 12 CFR§226.23 and U.S.C. 12 TILA 226.23 Appendage H it allows us to rescind our signatures, request our payments back,  our interest, taxes, an upkeep.  Since I already sent them a rescission letter , and also demanded they cancel the mortgage contract and temp power of attorney doc we are writing you now to request the address where Lehman receives service of complaints(we need to know where to send the legal complaint to sue Lehman) if are not going to send us our money and promissory note.

There is also the matter of the REPO 105/108 Transaction where they have taken out $7,007,700.00 by having us hold the house here. We are ready for them to give our monies back. If you can facilitate this please le me know. Please provide them to us in a cashiers check or money order to Keith Hedman to the address listed above. We now understand that they were loaning us a portion of our own money back to us.

We feel our damages our in excess of $9,000,000.00 if this goes to court we are going to push for a 8X multiplier, because the contract was unconscionable, see UCC article 2. Would it be possible to get Dick Fuld to settle this because if we decide to, we are going to go after therentire cabinet and E&Y and PWC. As well as all the people down the chain of custody who will ultimately rat on Lehman.

Again, we were never issued any check or monies at closing. We left the closing unaware of any of the fraud of securitizaton, embezzlement, or repo 105/108, as well as Lehman defrauding investors on the other side of the transaction and unlicensed, unregistered securities fraud. We have requested accurate records from the servicers a multitude of times and finally they just produced a document that they have been redacting your information off if it or not producing it over the years. Finally one of their servicers NDEX sent it to us, and they contend that you illegally securitized our deed of trust /mortgage/security without our consent. We are at this time demanding that you remove our signatures from the security, thus canceling the mortgage agreement. Also please send us our Note. We have decided to enter into rescission because of the breech of contract and felony constructive fraud.

"You have 20 days to return back to us all payments we have made dealing with this property, including interest on the monies, and compensation for the upgrades on this current house, as well as property tax payments, closing costs and upkeep.

Since it is apparent that you are holding the note, please provide us with our rescission monies, and repo 105/108 because of your Constructive Fraud, then and only then can you have your house here back.

As such, I anticipate and appreciate your thorough and timely response so that this matter may be swiftly and fully resolved. Exhibit 1, 2, 3, and 4 are attached to this rescission letter. Exhibit I is the back page of the note showing the stampings when it was turned into the US Treasury/ Federal Reserve 3 times, the first time paying off what we thought our note obligation was, and the other 2 times was turned in as a repo 105/108 transaction for 10X the face value of the note 2X. Exhibit 2 and 3 are your letters to me, Exhibit 4 is your internal confidential document on dealing with REPO 105/108 transactions(3 pages). We appreciate your cooperation in this matter timely otherwise we will be changing the terms. We are planning on getting this on line right away if there is no cooperation, listing your upper management and officers, as well as channel of partners.

I have several questions for you, I unknowingly had my loan securitized by Lehman Brothers Holdings in 2004. We actually singed the documents that we thought was a 30 year fixed mortgage on May 18th, 2004. We did get a notice that Aurora Loan would be servicing the paper, but then some insurance fraud / ponzi scheme happened in 2009-2010 where they tried to foreclose on several times, while we

were current on the mortgage. The did despicable things to us like held checks, sent checks back and added fees and raised our mortgage payment unilateral, as well as place a multitude of threatening and harassing phone calls. to us.   This scenario is all starting to happen all over again from my wife and I with Nationstar Mortage LLC and NDex West LLC, they are usurping your authority as trustee and are going ahead using MERS as a nominee to create assignments, and record default notices and deeds of trust. We are truly trying to still figure out what is happening, and whom we should be paying as the investor of Lehman's Ponzi Scheme.  To make things more complex they had us come back 2X for the signing and never showed us that they destroyed the first paperwork that we signed.

When NDex West LLC recently sent us a default notice I asked them to show me a copy of the wet ink note. What they did  was to provide a copy of what is in our county records , and then a back page with three Lehman Brothers Stampings on the page. I never saw the illusing stamping page though I have sent a multitude of QWR's and TILA and RESPA letters to Aurora Loan Services, Aurora Bank FSB, and Nationstar Mortgage, LLC.  The only entity that produced it probably by mistake was NDex West LLC.

When I found out what these stampings meant I sent out Rescission letters to all of the Servicers on record even Lehman Brothers Holdings.  I have attached as Exhibit 1 the stamping page in question, included are also two letters from Lehman Brothers Exhibit 2 and 3.  Both content that after an exhausting search that Lehman Brothers has never services or had control with out mortgage dealing with the said part at 785 Shelli Street, Mountain House(Tracy) , CA 95391.  Since I rescinded my wife and my names from the security which is the deed of trust because of constructive fraud, could you please send me our wet ink note since it has been over 9 months since it was separated by the deed of trust and is null and void.  I am going into court and need it.  I was only provided with a blank photo copy, no signatures of our note and other documents.  I am under the impression that the liquidation of LBI is overseen by James W. Giddens, as the Trustee appointed by the United States District Court for the Southern District of New York.  We are really trying to put our lives back together and now it is starting all over again.

Aurora Loan used many different numbers in their system for us ; Aurora Loan Services, LLC
Loan Number: 20519535        &        0597829530        &        0017877986

10350 Park Meadows Drive, Littleton, CA 80124

Also used Loan Number : 0017877986

Aurora Bank FSB Loan Number: 20519535 = 0597829530

10350 Park Meadows Drive, Littleton, CA 80124 Also used Loan Number :

Aurora Commercial  Corp.


We have lost more wealth, income and credit  in the is process than the Loans current value.  We are currently in Chapter 13 trying to salvage what we have left.

This mortgage was set up by UMAC and CMG then apparently Lehman as Aurora Bought then securitized. But there has to have be some one on the inside as constructive fraud since they had us sign a temp power of attorney doc. Thus is constructive fraud.   We also got a letter prior from the a

Sincerely,

Keith Olin Hedman

408-507-4431

copie

## **PROOF OF SERVICE**

I, Alejandro Tualla Varilla, declare as follows:
That I am domiciled in San Joaquin county, I am over the age of eighteen years old and not a party to the within action. I am readily familiar with the practices of collecting and processing correspondence for mailing with the United States Postal Service. Such Correspondence is deposited with the United States Postal Service .

My mailing location is:
16021 Eton Way, Lathrop, CA 95330

On Octoher 15th in the year of our Lord Two thousand and sixteen,
I served by mail a true copy of "Unlawful Retainer / CLAIM OF TRESSPASS"

TO DEFENDANTS for Case number: ~~39-2014-00307185-CU-OR-STK~~  08-13555-JMP
in the ~~Superior Court of California~~, in and for ~~San Joaquin County, County of San Joaquin District Court~~, US Bankruptc Cour Southern District of New York upon all interested parties in this action as follows:

_en_____  by placing a true copy thereof enclosed in seale envelope(s) addressed as follows:

### **SEE SERVICE LIST**

_en_____  **(BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following  ordinary  business practices.**

_en_____  **(State) I declare under penalty of perjury the laws of the State of California that the foregoing is true and correct.**

**Executed on  Oct 15th, 2016 at ___Tracy___  California.**

**By: _Alejandro Varilla_____**

                              PROOF OF SERVICE

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

ATTN: JUDGE SHELLY C. CHAPMAN

ONE BOWLING GREEN

NEW YORK, NY 10004-1408


LEHMAN BROTHERS, INC.  OR HH&R, LLP

CORORATE OFFICER

ONE BATTERY PLAZA

NEW YORK, NY 10004-1482


WEIL, GOTSHAL & MANGES LLP

ATTORNEYS FOR LEHMAN

767 FIFTH AVE.

NEW YORK, NY 10153

HUGHES, HUBBARD, AND REED, LLP

ATTORNEY FOR HAMES W. GIDDENS

TRUSTEE FOR SIPA LIQUIDATION OF LEHMAN BROTHERS INC.

ATTN JOHN WOOD , ESQ

1775 I STREET, N.W. , SUITE 600

WASHINGTON, DC 20006

JONES DAUY

ATTN: B. ROSENBLUM

222 EAST 41ST STREET

NEW YORK ,NY 10017

UNITED STATES BANKRUPTCY COURT
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEITH OLIN HEDMAN & ADRIALYN VARILLA HEDMAN** Creditors /Plaintiffs, | Chapter 11 **CASE NO. 08-13555(JMP)** For Unlawful Detainer /CLAIM OF TRESSPASS |
| - versus - **LEHMAN BROTHERS HOLDINGS, INC.,et al.,** Debtors, | |

x------------------------------------x

## CLAIM OF TRESSPASS
(Secured creditors)

   **COMES NOW**, the plaintiffs in sui juris to this most Honorable Court, MOST RESPECTFULLY STATES THAT;

# PARTIES

1.   The Creditors , KEITH OLIN HEDMAN AND ADRIALYN VARILLA HEDMAN, are American Citizens, of legal age, married and are residents of 785 Shelli Street, Mountain House, CA, 95391, where they  may be served with copies of  notices,  orders  and  other  papers  of  this  Honorable Court; the creditors had contacted Judge Peck with three certified letters prior to this filing in 2014-2015 time frame. HEDMANS never received a response but retain the certified letters to the court.

home builder LENNAR HOMES. LENNAR and their sales staff manipulated the HEDMANS by showing them exhibits of items they claimed they were going to build, but after 13 years never have built, to oversell the value of the homes, the purchase price being $462,950, which should have bee about $250,000 without their false claims. The alleged loan they were sold ended up being a security that immediately paid off the house when LEHMAN BROTHERS BANK, FSB NEGOTIATED IT, but HEDMANS were induced to make payments over the last 10 years. THEN LEHMAN BROTHERS HOLDINGS TURNED IN THE NOTE 20X ADDITIONALLY TAKING A LOAN FROM HEDMAN without their knowledge(As Can Be Seen In Exhibit 1 a copy of the Note with three stampings on the back of it). HEDMANS eventually hired a retired Wall Street Banker, attorney, Neil F. Garfield, MBA , JD, a handwriting expert NANETTE BARTO, and Thompson Reuters. From the collective HEDMANS were explained that they never consummated a mortgage and that the monies were embezzled by LEHMAN and their companies. HEDMANS were able to get a documents showing a REPO 105 transaction where HEDMANS have relationship of Bailor and "non-disclosed third party creditor". The multiple stamping on the back of HEDMANS note show it was done 1X by LEHMAN BROTHERS BANK, FSB, AND 20x BY LEHMAN BROTHERS HOLDINGS(exhibit 1). THE FACE VALUE OF THE NOTE WAS $333,700, AND THERE WAS A TABLE FUNDED NOTE ALSO SIGNED FOR $128,250, the second being refied or rather the new origination of a new loan being taken out for $169,000.. THAT WAS HANDLED THE SAME WAY. HEDMANS ARE SEEKING RETURN OF MONIES WITH INTEREST, FEDERAL FINES, AND PENALTIES, HEDMANS HAD TO FILE BANKRUPTCY TO PROTECT THEIR PROPERTY RIGHTS AND ARE STILL BEING HARRASSED BY LAW FIRMS WRIGHT, FINALY, AND ZAK, BUCHALTER NEMER, AND BARRET, FRAPPIER, TREDER, AND WEISS WHOM ARE COMMITTING FRAUD AND GIVING THE LEGAL COMMUNITY A BAD NAME. HEDMANS even believe the Superior Court Judge (Carter P. Holly) is working with the above attorneys to defraud HEDMANS of their property

in Case Number 08-13555(JMP). HEDMANS made efforts to contact JUDGE PECK Dec. 2013, Jan. 2014, and another time in 2014(Exhibit 2, certified letters can be produced from our files upon request). So, HEDMAN's should not be barred from pursuing an action of collection from LEHMAN, since they did contact the court timely when they suspected foul play. In 2014, Mr. HEDMAN was hospitalized due to a stress related illness because of the constant harassment of lawfirms dealing with this same issue. In the beginning of 2016 HEDMAN hired and received semi-retired Wall Street Bankers write up that disclosed without a doubt, the fraud of LEHMAN BROTHERS BANK, FSB, and LEHMAN BROTHERS HOLDINGS, INC. HEDMANS are now working to recover what is rightfully their property.

4.    Damages, HEDMANS have determined and filled out the proper forms 1099-A, forms 8300, forms 1099-oid, and are ready to next day are these to the correct recipient whom can process these for HEDMANS. HEDMANS estimate the monies taken out by LEHMAN BROTHER BANK, FSB, and LEHMAN BROTHERS HOLDINGS, INC. to be a sum with interest at $32,604,130.70, HEDMANS were also fraudulently induced to make payments to LEHMAN and their companies which would be $502,954.00 with interest to date. Federal fines for mail fraud and do not call list violations are worth about $2,000,000.00 to HEDMANS. HEDMANS have had to file Bankruptcy, (maintain legal proceedings since 2009, at a cost of several hundred thousand dollars)lose commissions, time of work,pay court costs, parking, postage, copying ,ink , suffer loss of work to maintain litigation to maintain their God Given Rights. Mr. Hedman has lost several jobs since he has been distracted by this, and been unemployed unable to attain employment with damaged credit to date. Mr. HEDMAN was also hospitalized due to this stress for over 8 days in a Hospital, the bills which are now over $50,000.00.HEDMANS have also been slandered in the TRACY PRESS, on several internet portals by GOOGLE and their media portals whom deliver content incorrect or not to vendors such as Foreclosure.com, Redfin.com, Zillow.com. HEDMANS have suffered a great deal of harassment and public ridicule because of open Foreclosure Sale Notices taped on their door. Foreclosure Publishings in NewsPapers

forms and are secured party creditors, and believe what we have asked for is fair and just, unless it is found that the NOTES were counterfeited multiple times, in which we will have to revisit settlement talks.

5.    The defendant, debtor Inform the party that they were going to fraudulently take a loan out on HEDMANS credit,and Social Security Trust.

6.    Despite HEDMANS sending three certified letters to the court for discovery purposes, the court never contacted HEDMANS back.

7.    HEDMAN developed this claim with expert witness testimony.HEDMANS have received one bond payment from a notary to date whom committed additional acts of fraud on HEDMANS. Thus the Notary can not now harm others if she does not post her own bond in Federal Reserve Notes.

# PRAYER

WHEREFORE, premises considered, it is most respectfully prayed of this Honorable Court that judgement be rendered in favor of the plaintiff/creditor and that after judgement:

a.    To pay the amount of Claim of Tresspass of $65,107,084.70.as compensation for the reasonable use of the HEDMANS credit and for damages.

b.

c.    To pay the plaintiff/creditor the cost of his suit to date of $328,000.

d.    Other just and equitable reliefs and remedies under the premises.

Mountain House, CA , this 15th day of October 2016.

# VERIFICATION AND CERTIFICATION

I, KEITH OLIN HEDMAN, of Legal age, MARRIED, AMERICAN Citizen and a resident of 785 SHELLI STREET, MOUNTAIN HOUSE, CA, 95391, after being sworn according to law, hereby depose and state that;

1. I am a plaintiff in the above-stated case;

2. I caused the preparation of the foregoing SECURED CREDITOR CLAIM OF TRESSPASS;

3. I have read the contents thereof and the facts stated therein are true and correct of my personal knowledge and/or on the basis of copies of documents and records in my possession;

4. I have commenced other actionS or proceeding involving the same issues in the Supreme Court, the Court of Appeals, or any other tribunal or agency so as to not suffer additional damages and to maintain my God Given Rights, and Constitutional Protections.

5. To the best of my knowledge and belief, such actions are proceeding or are pending in the Supreme Court, the Court of Appeals, Superior Court and other tribunal or agency dealing with house property claim only at this time.

6. If I should thereafter learn that a similar action or proceeding has been filed or is pending before the Supreme Court, the Court of Appeals, or any other tribunal or agency, I undertake to report that fact within five (5) days therefrom to this Honorable Court.

# EXHIBIT 1

17877986

# NOTE

HEDMAN
LOAN #: 20519535
MIN: 100072400205195350

MAY 14, 2004                    PLEASANTON                    CALIFORNIA
[Date]                           [City]                        [State]

785 SHELLI STREET, MOUNTAIN HOUSE, CA 95391
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    333,700.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    CMG MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.375    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month

I will make my monthly payment on the    1ST    day of each month beginning on JULY 1, 2004    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If, on JUNE 1, 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    3160 CROW CANYON RD., STE 240, SAN RAMON, CA 94583
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    2,081.85

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
DOCUCFA1
DOCUCFA1.VTX  01/26/2004                    (page 1 of 3 pages)

20519535

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
DOCUCFA2
DOCUCFA2.VTX 1/06/2003                    (page 2 of 3 pages)

20519535

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

- BORROWER - KEITH O HEDMAN -    DATE -    5/18/04

- BORROWER - ADRIALYN V. HEDMAN - DATE    5/18/04

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUCFAJ
DOCUCFAJ.VTX 04/06/2004                    (page 3 of 3 pages)                    Form 3200 1/01

VOID

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY:_____
RICK W. SKOGG
VICE PRESIDENT

LEHMAN BROTHERS BANK, FS_

SANDY SMITH
ASSISTANT SECRETARY

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS, INC.

BY:_____
RALPH A. CANZI III
AUTHORIZED SIGNATORY

# EXHIBIT 2

Keith Hedman

785 Shelli Street

Mountain House (TRACY), CA 95391

12/5/2013

408-507-4431

United States Bankruptcy Court for the Southern District of New York

York (Case No. 08-01420 (JMP) (SIPA)

One Bowling Green
New York, NY 10004-1408
Chambers: (212) 668-5632
Courtroom: 601

Attn: Judge James M Peck


Dear Judge Peck,

I have several questions for you, I unknowingly had my loan securitized by Lehman Brothers Holdings in 2004. We actually singed the documents that we thought was a 30 year fixed mortgage on May 18th, 2004.  We did get a notice that Aurora Loan would be servicing the paper, but then some insurance fraud / ponzi scheme happened in 2009-2010 where they tried to foreclose on several times, while we were current  on the mortgage. The did despicable things to us like held checks, sent checks back and added fees and raised our mortgage payment unilateral, as well as place a multitude of threatening and harassing phone calls. to us.   This scenario is all starting to happen all over again from my wife and I with Nationstar Mortage LLC and NDex West LLC, they are usurping your authority as trustee and are going ahead using MERS as a nominee to create assignments, and record default notices and deeds of trust.  We are truly trying to still figure out what is happening, and whom we should be paying as the investor of Lehman's Ponzi Scheme.  To make things more complex they had us come back 2X for the signing and never showed us that they destroyed the first paperwork that we signed.

When NDex  West LLC recently sent us a default notice I asked them to show me a copy of the wet ink note. What they did  was to provide a copy of what is in our county records , and then a back page with three Lehman Brothers Stampings on the page. I never saw the illusing stamping page though I have sent a multitude of QWR's and TILA and RESPA letters to Aurora Loan Services, Aurora Bank FSB, and I Nationstar Mortgage, LLC.  The only entity that produced it probably by mistake was NDex West LLC.

When I found out what these stampings meant I sent out Rescission letters to all of the Servicers on record even Lehman Brothers Holdings.  I have attached as Exhibit 1 the stamping page in question,

included are also two letters from Lehman Brothers Exhibit 2 and 3. Both content that after an exhausting search that Lehman Brothers has never services or had control with out mortgage dealing with the said part at 785 Shelli Street, Mountain House(Tracy) , CA 95391.  Since I rescinded my wife and my names from the security which is the deed of trust because of constructive fraud, could you please send me our wet ink note since it has been over 9 months since it was separated by the deed of trust and is null and void. I am going into court and need it. I was only provided with a blank photo copy, no signatures of our note and other documents. I am under the impression that the liquidation of LBI is overseen by James W. Giddens, as the Trustee appointed by the United States District Court for the Southern District of New York.  We are really trying to put our lives back together and now it is starting all over again.

Aurora Loan used many different numbers in their system for us ; **Aurora Loan Services, LLC**
**Loan Number: 20519535        &        0597829530        &        0017877986**

**10350 Park Meadows Drive, Littleton, CA 80124**

**Also used Loan Number : 0017877986**

**Aurora Bank FSB Loan Number: 20519535 = 0597829530**

**10350 Park Meadows Drive, Littleton, CA 80124 Also used Loan Number :**

**Aurora Commercial  Corp.**


We have lost more wealth, income and credit  in the is process than the Loans current value.  We are currently in Chapter 13 trying to salvage what we have left.


Please contact me.


Sincerely,

Keith  Olin  Hedman

408-507-4431

Keith Hedman

785 Shelli Street

Mountain House (TRACY), CA 95391

01/5/2014

408-507-4431

United States Bankruptcy Court for the Southern District of New York

York (Case No. 08-01420 (JMP) (SIPA)

One Bowling Green
New York, NY 10004-1408
Chambers: (212) 668-5632
Courtroom: 601

Attn: Judge James M Peck

Dear Judge Peck,

Letter of Rescission Because of Constructive Fraud:

Again this letter is our notice to you that we want to enter into rescission because of constructive fraud; also canceling the mortgage by taking our names off of the security because of constructive fraud.. Lehman Brothers had illegally securitized our 30 year fixed mortgage signed back in May of 2004 with us as the sole signatures, they misrepresented the product, we had filled out a conventional loan application in our records. They basically tapped our credit and loaned us our own money back to us. They further, needed a temporary power of attorney document, and misrepresented what it would be used for to us. We have asked for a copy of it multiple times and they have not been-compliant in its production. It was used to participate in identity theft to embezzle the funds of the promissory note, because it is a negotiable instrument. Title 18 U.S.C. Section 656 Bank Embezzlement.

This means that the house was paid for as soon as the check was embezzled. Attached is the last page of the note showing three stamps by Lehman Brothers. This shows that the negotiable instrument was turned in three times. According to 12 CFR§226.23 and U.S.C. 12 TILA 226.23 Appendage H it allows us to rescind our signatures, request our payments back, our interest, taxes, an upkeep. Since I already sent them a rescission letter , and also demanded they cancel the mortgage contract and temp power of attorney doc we are writing you now to request the address where Lehman receives service of complaints(we need to know where to send the legal complaint to sue Lehman) if are not going to send us our money and promissory note.

included are also two letters from Lehman Brothers Exhibit 2 and 3. Both content that after an exhausting search that Lehman Brothers has never services or had control with out mortgage dealing with the said part at 785 Shelli Street, Mountain House(Tracy) , CA 95391. Since I rescinded my wife and my names from the security which is the deed of trust because of constructive fraud, could you please send me our wet ink note since it has been over 9 months since it was separated by the deed of trust and is null and void. I am going into court and need it. I was only provided with a blank photo copy, no signatures of our note and other documents. I am under the impression that the liquidation of LBI is overseen by James W. Giddens, as the Trustee appointed by the United States District Court for the Southern District of New York. We are really trying to put our lives back together and now it is starting all over again.

Aurora Loan used many different numbers in their system for us ; **Aurora Loan Services, LLC**
Loan Number: 20519535        &        0597829530        &        0017877986

10350 Park Meadows Drive, Littleton, CA 80124

Also used Loan Number : 0017877986

Aurora Bank FSB Loan Number: 20519535 = 0597829530

10350 Park Meadows Drive, Littleton, CA 80124 Also used Loan Number :

Aurora Commercial Corp.


We have lost more wealth, income and credit in the is process than the Loans current value. We are currently in Chapter 13 trying to salvage what we have left.


Please contact me.

Sincerely,

Keith Olin Hedman

408-507-4431

Keith Hedman

785 Shelli Street

Mountain House (TRACY), CA 95391

01/5/2014

408-507-4431

**United States Bankruptcy Court for the Southern District of New York**

York (Case No. 08-01420 (JMP) (SIPA)

One Bowling Green
New York, NY 10004-1408
Chambers: (212) 668-5632
Courtroom: 601

Attn: Judge James M Peck

Dear Judge Peck,

**Letter of Rescission Because of Constructive Fraud:**

Again this letter is our notice to you that we want to enter into rescission because of constructive fraud; also canceling the mortgage by taking our names off of the security because of constructive fraud.. Lehman Brothers had illegally securitized our 30 year fixed mortgage signed back in May of 2004 with us as the sole signatures, they misrepresented the product, we had filled out a conventional loan application in our records. They basically tapped our credit and loaned us our own money back to us. They further, needed a temporary power of attorney document, and misrepresented what it would be used for to us. We have asked for a copy of it multiple times and they have not been-compliant in its production. It was used to participate in identity theft to embezzle the funds of the promissory note, because it is a negotiable instrument. Title 18 U.S.C. Section 656 Bank Embezzlement.

This means that the house was paid for as soon as the check was embezzled. Attached is the last page of the note showing three stamps by Lehman Brothers. This shows that the negotiable instrument was turned in three times. According to 12 CFR§226.23 and U.S.C. 12 TILA 226.23 Appendage H it allows us to rescind our signatures, request our payments back, our interest, taxes, an upkeep. Since I already sent them a rescission letter , and also demanded they cancel the mortgage contract and temp power of attorney doc we are writing you now to request the address where Lehman receives service of complaints(we need to know where to send the legal complaint to sue Lehman) if are not going to send us our money and promissory note.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

ATTN: JUDGE SHELLY C. CHAPMAN

ONE BOWLING GREEN

NEW YORK, NY 10004-1408


LEHMAN BROTHERS, INC.  OR HH&R, LLP

CORORATE OFFICER

ONE BATTERY PLAZA

NEW YORK, NY 10004-1482


WEIL, GOTSHAL & MANGES LLP

ATTORNEYS FOR LEHMAN

767 FIFTH AVE.

NEW YORK, NY 10153

HUGHES, HUBBARD, AND REED, LLP

ATTORNEY FOR HAMES W. GIDDENS

TRUSTEE FOR SIPA LIQUIDATION OF LEHMAN BROTHERS INC.

ATTN JOHN WOOD , ESQ

1775 I STREET, N.W. , SUITE 600

WASHINGTON, DC 20006

JONES DAUY

ATTN: B. ROSENBLUM

222 EAST 41ST STREET

NEW YORK ,NY 10017

No. __-____

IN THE Supreme Court of the United States

_____

KEITH OLIN HEDMAN &

ADRIALYN VARILLA HEDMAN,

 INDIVIDUALS,

Petitioners,

v.

NATIONSTAR MORTGAGE, INC/LLC,

FIRST AMERICAN TITLE INSURANCE COMPANY, THE BANK OF NEW YORK MELLON,

ET AL., & DOES 1-100

Respondents.

_____

On Petition for a Writ of Certiorari to the California Supreme Court, and the Court of Appeal,
Third Appellate  District-

_____

PETITION FOR A WRIT OF CERTIORARI
_____

KEITH OLIN HEDMAN &

ADRIALYN VARILLA HEDMAN

785 Shelli Street   Mountain House,

California 95391

(209) 836-1334

## QUESTION PRESENTED

HEDMANS have already filed multiple letters of rescission and Qualified Written Requests to each party in what appears to be a fraudulent securitization scheme that has been perpetrated on them since 2003, and has involved many non-disclosed parties, Including LEHMAN BROTHERS BANK, FSB , LEHMAN BROTHERS HOLDINGS, INC., AURORA BANK, FSB, AURORA LOAN SERVICES, LLC, J.P. MORGAN CHASE, , WELLS FARGO, NA ,RICHARD FULD, EARNST & YOUNG, LLP. NDEX WEST, LLC. CMG MORTGAGE, INC.,LENNAR HOMES, UMAC MORTGAGE;(BARRETT, FRAPPIER, TREDER, & WEISS), ET AL, SASCO(STRUCTURED ASSET SECURITIES CORPORATION) , AND THE BANK OF NEW YORK MELLON, U.S. BANK, N.A., FIRST AMERICAN TITLE COMPANY, NORTH AMERICAN TITLE COMPANY,MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, CMG MTG, INC., AND NATIONSTAR MTG,LLC, NATIONSTAR MTG,INC. ,NATIONWIDE TITLE CLEARING, INC..,& DOES 1-20. NA AS WELL AS SEVER OTHER MINOR PLAYERS, ALLEGED LOAN SERVICERS, AND LAW FIRMS whom the judge let consistently violate Transley v. Pitagliaro, whom allowed the attorney's to also be the witness, and signe affidavits, declarations, etc.. Even though HEDMANS invokded COMMON LAW jurisdiction, and brought of the consistent violation of Federal Rule 601. This case has been decided mostly on HEARSAY, without considering the many Prima Fascia exhibits that HEDMANS had submitted into evidence, even with Motion In Liminie. The main offenders being and with including the most aggressive law firms WRIGHT, FINLAY & ZAK, LLP, AND BUCHALTER NEMER, BARRETT, FRAPPIER, TREDER, & WEISS, and a few others, whom we believe are acting unethically, and the Judge is conflicted since he has a pension of the counties design that half of the pension is based on Fraudulent Mortgage Backed Securities . Each of these companies are engaging in control and RICO fraud.

HEDMANS  hired a retired Wall Street banker, Neil F. Garfield,MBA, JD, a Hand Writing Expert Nannette Barto, and Thompson Reuters Investment Research Firm to look through their paperwork to see if any improprieties had taken place since most of HEDMANS request letters had been stonewalled not wanting to provide HEDMANS any due process or discovery. Also, no payments with interest amounting to be over $1,200,000.00 has ever been refunded back to HEDMANS as per TILA statutes as well as the over $13, 264.650 that was taken out of HEDMANS accounts as loans from HEDMANS by LEHMAN. This amount needs to returned back to HEDMANS with the payments they were fraudulently induced to pay, plus penalties and interest, and Clouded Title properly restored to HEDMANS (Chase v. Nguyen, 11th District Court, Westminster,CA)  , US Supreme Court Decision JESINOSKI V. COUNTRYWIDE HOME LOANS, INC., ET AL.. As in California Case 11th District Court Decision CHASE v. NGUYEN; for payments back, title to the property, and damages; and now year has gone by since the rescission, so these adverse parties are barred from pursing a claim against HEDMANS.  However, what HEDMANS have been experiencing in the Superior Court  could only be described as ethics violations of both the Judiciary, and the Lawyer Participants. HEDMANS had rescinded their signatures in a (TILA )Rescission , however the questing still remains is that HEDMANS never received a loan an check of any monies, to consummate a loan?. The Truth in Lending Act provides that a borrower "shall have the right to rescind the transaction until midnight of the third business day following . . . the delivery of the information and rescission forms required under this section . . . by notifying the creditor . . . of his intention to do so." 15 U.S.C. § 1635(a). The Act further creates a "[t]ime limit for [the] exercise of [this] right," providing that

insurance policy if any loss were to occur. However, THE BANK OF NEW YOUR MELLON, never identified themselves properly to HEDMANS. HEDMANS not remembering ever doing business with, THE BANK OF NEW YORK MELLON discounted the letter, but did keep it and filed it away. HEDMANS have come to realize from newly disclosed Securitization Trust paperwork that THE BANK OF NEW YORK MELLON was the TRUSTEE in relation to the Issuing Entities of the Trust "STRUCTURED ASSET SECURITIES CORP. TRUST 2004-S4", of the Depositor STRUCTURED ASSET SECURITIES CORP.  While it has been determined that La Salle Bank, NA & US Bank, NA were Custodians. This information only becomes relevant when the data tape information surfaced at Aurora Loan Services and NDEX WEST.LLC(showing only 1X endorsement by LEHMAN BROTHERS BANK, FSB" while at NDEX WEST, LLC, and the Law Firm of BARRETT, FRAPPIER, TREDER, & Weiss, whom work intimately with NATIONSTAR MORTGAGE, INC /LLC.

From these last three fraudulent entities paper work copies (scanned)of the "NOTE" have been recovered that show HEDMANS note was monetized and endorsed 3X by Commercial Banks(LEHMAN), the hallmark of a REPO 105 transaction. Showing that the "NOTE" paperwork was turned into the FED by a Commercial Bank to receive ($7,007,700) from HEDMANS prepaid trust account . Thus with this evidence it was determined that the "Deed of Trust" was never valid that is the basis of HEDMANS now paying over $60,000 in legal fines and charges that were determined by Judge Carter P. Holly in San Joaquin Superior Court. HEDMANS have showed this and other factual prima fascia evidence that has been over looked by the court in what the HEDMANS surmise as gross violation of Judicial Misconduct. HEDMANS believe that this may be a symptom of having a Judge whom works for the County as an employee, having a conflict of interest, and  vested interest to collect on Mortgage Backed Securities that fund half of his Pension and that of other Public Servants.

## PARTIES TO THE PROCEEDINGS

Petitioners KEITH OLIN HEDMAN  and ADRIALYN VARILLA HEDMAN were the plaintiffs and the appellants in the proceedings below. Respondents Including LEHMAN BROTHERS BANK, FSB , LEHMAN BROTHERS HOLDINGS, INC., AURORA BANK, FSB, AURORA LOAN SERVICES, LLC, J.P. MORGAN CHASE, WELLS FARGO,RICHARD FULD, EARNST & YOUNG, LLP. NDEX WEST, LLC. CMG MORTGAGE, INC.,LENNAR HOMES, UMAC MORTGAGE;BARRETT, FRAPPIER, TREDER, & WEISS, ET AL, SASCO(STRUCTURED ASSET SECURITIES CORPORATION) , AND THE BANK OF NEW YORK MELLON, U.S. BANK,N.A., NATIONWIDE TITLE CLEARING, FIRST AMERICAN TITLE COMPANY, NORTH AMERICAN TITLE COMPANY,MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, CMG MTG, INC., AND NATIONSTAR MTG,LLC, NATIONSTAR MTG,INC. & DOES 1-20 AS WELL AS SEVER OTHER MINOR PLAYERS, ALLEGED LOAN SERVICERS, AND LAW FIRMS including the most aggressive law firms WRIGHT, FINLAY & ZAK, LLP, AND BUCHALTER NEMER; BARRETT, FRAPPIER, TREDER, & WEISS ,LLP that HEDMANS believe are acting fraudulently.

iii

## TABLE OF CONTENTS

Page

QUESTION PRESENTED ........................................... i

PARTIES TO THE PROCEEDINGS ......................... ii

TABLE OF AUTHORITIES ....................................... vi

INTRODUCTION ...................................................... 1

OPINIONS BELOW .................................................. 3

JURISDICTION ......................................................... 3

STATUTORY AND REGULATORY PROVISIONS INVOLVED .................................................. 3

STATEMENT ................................................................ 3 A.

Statutory and Regulatory Background ........... 3 B.

Factual Background .......................................... 6 C.

Proceedings Below ........................................... 7

REASONS FOR GRANTING THE PETITION ......... 9 I.

THE COURTS OF APPEALS ARE DEEPLY DIVIDED OVER WHETHER A BORROWER EXERCISES THE RIGHT TO RESCIND UNDER SECTION 1635 BY NOTIFYING A CREDITOR OR INSTEAD MUST FILE SUIT .......... 9 A.

The Third, Fourth, And Eleventh Circuits Hold That Notifying A Creditor In Writing Within Three Years Of The Consummation Of The Transaction Is Sufficient To Exercise The Right To Rescind

However in this case it is apparent criminal violations have taken place and the Consummation Of The Transaction is in Question, However there is Prima Fascia evidence money was given by HEDMANS to pay for their residence at 785 Shelli Street, Mountain House, CA 95391,and that LEHMAN BROHERS BANK, FSB, AND LEHMAN BROTHER HOLDINGS, INC. and WELLS FARGO BANK, NA took out $13,264,650 from HEDMANS Accounts without their consent and have fraudulent induced HEDMANS to pay additional payments using mail fraud, and have held monies for going on 13 years while paying no interest or fines /penalties...........................................................................................10

iv.

B. The First, Sixth, Eighth, Ninth, And Tenth Circuits Hold That A Borrower Must File Suit Within Three Years Of The Consummation Of The Transaction To Exercise The Right To Rescind ................................................. 12 C.

The Split Among The Courts Of Appeals Is Widely Recognized And Entrenched, And It Can Be Resolved Only By This Court ................................... 18

II. THE EIGHTH CIRCUIT'S HOLDING THAT A BORROWER MUST FILE SUIT TO EXERCISE THE RIGHT TO RESCIND UNDER SECTION 1635 IS IN ERROR ..................................................... 19 A.

Section 1635's Plain Text Establishes That Notice To A Creditor Is Sufficient To Exercise The Right To Rescind ..................................................... 19 B.

The Structure And Purpose Of The Truth In Lending Act Confirm That Notice Alone Is Sufficient To Exercise The Right To Rescind ........................ 21 C.

Regulation Z Removes All Doubt That Written Notice Is Sufficient To Exercise The Right To Rescind ................ 23 D.

The Eighth Circuit's Reliance Upon Beach Is Misplaced ................................... 24

v.

III. THIS CASE IS A SUPERIOR VEHICLE FOR ADDRESSING A RECURRING QUESTION OF GREAT NATIONAL IMPORTANCE THAT WARRANTS THIS COURT'S IMMEDIATE REVIEW ...... 26

CONCLUSION ......................................................... 28

APPENDIX: Opinion of the United States Court of Appeals for the Eighth Circuit, Jesinoski, et al. v. Countrywide Home Loans, Inc., etc., et al., No. 12-2202 (Sept. 10, 2013) ............................................. 1a

Memorandum Opinion and Order of the United States District Court for the District of Minnesota, Jesinoski, et al. v. Countrywide Home Loans, Inc., etc., et al., Civil No. 11-474 (DWF/FLN) (Apr. 19, 2012) ......................................... 4a

Order of the United States Court of Appeals for the Eighth Circuit Denying Rehearing, Jesinoski, et al. v. Countrywide Home Loans, Inc., etc., et al., No. 12-2202 (Nov. 13, 2013) .......... 10a

Statutory and Regulatory Provisions Involved ..... 12a

Truth in Lending Act, 15 U.S.C. § 1601 et seq.: 15 U.S.C. § 1635 .............................................. 12a

12 C.F.R. § 226.23(a)-(b) (Regulation Z of the Federal Reserve Board) ........................ 17a

vi

## TABLE OF AUTHORITIES

Page

### CASES

Anderson Bros. Ford v. Valencia, 452 U.S. 205 (1981) ..................................................................... 23

Auer v. Robbins, 519 U.S. 452 (1997) ........................ 24

Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998) .................................................. 2, 3, 9, 13, 14, 15, 19, 20, 24, 25

Belini v. Washington Mut. Bank, FA, 412 F.3d 17 (1st Cir. 2005) .................................................. 22

Carson v. Wells Fargo Bank, N.A., No. 8:10- CV-2362-T17-EAJ, 2011 WL 2470099 (M.D. Fla. June 20, 2011) .............................................. 12

Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871 (2011) .............................................................. 24

Gilbert v. Residential Funding LLC, 678 F.3d 271 (4th Cir. 2012) ..................................... 11, 18, 20

Johnson v. Mortgage Elec. Registration Sys., Inc., 252 F. App'x 293 (11th Cir. 2007) ............... 12

Keiran v. Home Capital, Inc.: Civil No. 10-4418 (DSD/JSM), 2011 WL 6003961 (D. Minn. Nov. 30, 2011), aff'd, 720 F.3d 721 (8th Cir. 2013) .......................... 27-28

720 F.3d 721 (8th Cir. 2013) ................... 7, 8, 9, 13, 15, 16, 18, 20, 22

Large v. Conseco Fin. Servicing Corp., 292 F.3d 49 (1st Cir. 2002) .............................................17, 18

Lumpkin v. Deutsche Bank Nat'l Trust Co., No. 12-2317, 2013 WL 4007760 (6th Cir. Aug. 6, 2013) ....................................................16, 17

vii

McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325 (9th Cir. 2012) ........................13, 14

Rosenfield v. HSBC Bank, USA, 681 F.3d 1172 (10th Cir. 2012) ......................................... 14, 15, 18

Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699 (9th Cir. 1986) ................................ 21

Sherzer v. Homestar Mortg. Servs., 707 F.3d 255 (3d Cir. 2013) ..........................................10, 11, 18, 20, 21, 25

Sobieniak v. BAC Home Loans Servicing, LP, 835 F. Supp. 2d 705 (D. Minn. 2011), aff'd sub nom.

Keiran v. Home Capital, Inc., 720 F.3d 721 (8th Cir. 2013) ...................................... 27

Williams v. Homesake Mortg. Co., 968 F.2d 1137 (11th Cir. 1992) .......................... 11, 12, 18, 21

Williams v. Saxon Mortg. Co., Civil Action No. 06-0799-WS-B, 2008 WL 45739 (S.D. Ala. Jan. 2, 2008) .......................................................... 12

STATUTES, REGULATIONS, AND RULES Act of Oct. 28, 1974, Pub. L. No. 93-495, § 405, 88 Stat. 1500, 1517 ................................................ 5

Consumer Financial Protection Act of 2010, Pub. L. No. 111-203, tit. X, 124 Stat. 1376, 1955: § 1061(b)(1), 124 Stat. 2036 (codified at 12 U.S.C. § 5581(b)(1)) .......................................... 5

§ 1061(d), 124 Stat. 2039 (codified at 12 U.S.C. § 5581(d)) ................................................ 5

viii

Truth in Lending Act, Pub. L. No. 90-321, tit. I, 82 Stat. 146 (1968):

§ 103(b), 82 Stat. 147 .............................................. 5

§ 105, 82 Stat. 148 ................................................. 5

Truth in Lending Act, 15 U.S.C. § 1601 et seq. ... passim

15 U.S.C. § 1601(a) ...........................................3

15 U.S.C. § 1631 .................................................... 3

15 U.S.C. § 1632 .................................................... 3

15 U.S.C. § 1635 ................................ 2, 3, 9, 10, 19, 20, 22, 23, 24, 25, 28

15 U.S.C. § 1635(a) ................. 1, 3, 4, 19, 20, 21, 25

15 U.S.C. § 1635(b) .................... 4, 6, 11, 21, 22, 23

15 U.S.C. § 1635(f) ............. 1, 5, 6, 7, 13, 20, 24, 25

15 U.S.C. § 1638 .................................................... 3

15 U.S.C. § 1640 .............................................. 7, 20

28 U.S.C. § 1254(1) ..................................................... 3

12 C.F.R. pt. 226 (Regulation Z) ...................... 3, 5, 11, 15, 23, 24, 25 § 226.17(d) ................................................... 6 § 226.23(a)(2) .................................................... 5, 23 § 226.23(a)(3) ........................................................ 5

§ 226.23(b) ................................................... 6

12 C.F.R. pt. 1026 (Regulation Z) ............................... 5

§ 1026.23 .................................................... 5

§ 1026.23(a)(2) ........................................ 8

Fed. R. Civ. P. 12(a) .................................................... 22

lx

## ADMINISTRATIVE MATERIALS

Board of Governors of the Federal Reserve

System, Mortgage Debt Outstanding (up

dated Sept. 25, 2013), at http://www.

federalreserve.gov/econresdata/releases/ mortoutstand

/current.htm (last visited Dec. 4, 2013) .................................................................. 26

Final Rule, Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 10,902 (Feb. 14, 2013):

p. 10,905 ................................................................. 26

p. 10,906 ................................................................. 26

Interim Final Rule, Truth in Lending (Regulation Z), 76

Fed. Reg. 79,768 (Dec. 22, 2011):

pp. 79,803-04 ........................................................... 5

OTHER MATERIALS Saif Alaqili, Comment, Striking a Balance:

How Equitable Doctrine Restores the Purposes of TILA's Rescission Right,

2013 U. Chi. Legal F. 711 (2013) ........................................ 18

Brief of the Consumer Financial Protection Bureau as Amicus Curiae in Support of Plaintiff-Appellant and Reversal, Rosenfield v. HSBC Bank, USA, 681 F.3d 1172 (10th Cir. 2012) (No. 10-1442) (filed Mar. 26, 2012), 2012 WL 1074082 ................................23, 24

Lea Krivinskas Shepard, It's All About the Principal: Preserving Consumers' Right of Rescission Under the Truth in Lending Act, 89 N.C. L. Rev. 171 (2010) .............................. 26-27

x

Jeff Sovern, Preventing Future Economic Crises Through Consumer Protection Law or How the Truth in Lending Act Failed the Subprime Borrowers, 71 Ohio St. L.J. 761 (2010) .................................................................. 26

David Liss, A Conspiracy Of Paper, First Ballantine Books Edition, Feb. (2001)

.................................................................................435-442

3

## Petitioners KEITH OLIN HEDMAN  and ADRIALYN VARILLA HEDMAN

Respectfully petition for a writ of certiorari to review the judgment of the United States Court of Appealsand for the Third Appellate District, and that of the California Supreme Court, in this case. INTRODUCTION This case arises from a mortgage lender's violation of the Truth in Lending Act and the homeowners' obstructed attempt to exercise their right under the Act to rescind the mortgage as a remedy for that lender's statutory violations. In the years prior and preceding the housing crisis of 2008, many mortgage lenders violated the Act's disclosure requirements in tens of thousands of loan transactions. As a result, countless homeowners were lured into oppressive mortgages on the basis of false, misleading, or incomplete disclosures of material information about loans secured by their homes or credit(House Joint Resolution 192, June 5, 1933). The HEDMANS did not receive complete disclosures. They first got a table funded loan through Wells Fargo Bank, NA that was backdated, and the alleged lenders UMAC Mortgage, and CMG MTG, INC,, as preferred lenders of LENNAR HOMES, INC, after LENNAR gathered confidential credit information from HEDMANS,  then HEDMANS loan was table funded, the deal to receive an alleged first mortgage from CMG MTG, INC. It should be noted that during this entire process HEDMANS did not receive any of the alleged loans($333,700.00, $128.950.00-refinance ($169,000) via a check or electronic deposit, however HEDMANS signatures were requested multiple times, they were told they were getting a home mortgage,but alleged money lenders failed to furnish the HEDMANS all the information and disclosures required by the Act, or the monies from the transactions that they believe to be embezzled. The Act creates a "right to rescind" the loan transaction within "three business days" of the delivery of all the required disclosures and funds. A borrower exercises that right simply "by notifying the creditor." 15 U.S.C. § 1635(a). The Act further provides that the right "shall expire three years" after the closing of the transaction, even if all the required disclosures have not been delivered. Id. § 1635(f). When the HEDMANS sought to exercise their rescission right under the Act by sending their creditors a written notice, those creditors refused to honor their right, saying they received a

money purchase, but alas HEDMANS never received the loan monies. When the HEDMANS brought individual suit to enforce the rescission, the courts below refused to recognize that they had validly rescinded 2 of their mortgages. Instead, the courts below held that the Act required the HEDMANS to file a lawsuit to rescind. The San Joaquin Superior Court has joined four other circuits in holding that, to exercise the right to rescind under Section 1635, a borrower must file a lawsuit within three years of the closing of the transaction, but it appears the transaction is still open since HEDMANS never received the Funds. However, other disclosed Prima Fascia evidence has 'shown other non-authorized investment banking activity by LEHMAN BROTHERS BANK, FSB & LEHMAN BROTHERS HOLDINGS, INC. The courts of appeals are starkly divided on the issue. But nonetheless HEDMANS hold this information from multiple sources showing this fraud that has been consciously overlooked by the lower courts causing further damages to HEDMANS. Three other circuits hold that, in accord with the plain text of Section 1635 and with its implementing regulation, notifying the creditor in writing is all that is required to exercise that right. The San Joaquin Superior Court,  holding to the contrary, shared by a minority of the circuits that have ruled on unlike issues, derives from a misinterpretation of the statutory text and a misreading of

this Court's decision in Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998). The resulting rule does violence to the statutory text, manufactures legal obstacles for homeowners seeking to vindicate their rights under a law that was enacted to protect them, and risks flooding the federal courts with thousands of needless lawsuits to accomplish rescissions that Congress intended to be completed privately and without litigation, but while still maintain a non-disclosure of the general public whom have been lied to , cheated, and ill effected. However in this case of HEDMANS the Lower Court Judge has ordered sanctions and fines on HEDMANS as if there was a Mortgage and Deed of Trust in Effect. Even after a higher Federal court in Bankruptcy properly discharged any alleged creditors claims. This was after HEDMANS were forced into Bankruptcy Court, and the Federal Judge discharged NATIONSTAR MORTGAGE, INC, AND CMG MORTGAGE, INC, WELLS FARGO, US BANK, NA, AND SEVERAL OTHERS, since HEDMANS listed them as non-secured creditors. The Federal Judge understood what the HEDMANS were doing and gave the Respondents/Defendants over 90 days to file a proper

4

claim, and they could not, so they were discharged in Chapter 7. The bankruptcy was only necessary to prove HEDMANS standing since the Superior Court appears to not be able to interperate the Law Appropriatelyrder denying rehearing en banc, Judge CANTIL-SAKAUYE & Collton explicitly recognized the circuit conflict (as have many others) and opined that only this Court can resolve it. App. 11a. Because of the deeply entrenched circuit split and the national and recurring importance of the issue, the petition should be granted and this is after the Jesinoski v. Countrywide Mortgage, Inc. decision.

4

## OPINIONS BELOW

The opinion of the court of appeals (App. 1a-3a) is reported at C079416 F.3d 1092.

The opinion of the Supreme Court Of California (App. 4a-9a) is not reported (but is available at 2016 S235169). They also did not take the newly submitted evidence of the "NOTE" with 3 stampings on it and the expert testimony by Neil F. Garfield , MBA, JD into making their decision, which is imperative to the propper adjudication of this case.

## JURISDICTION

The court of appeals entered its judgment on May 4, 2016, and denied a petition for rehearing (App. 10a-11a). This leading from the first case of the Superior Court in KEITH O. HEDMAN,et al., vs. AURORA LOAN SERVICES, LLC,(Superior Court Case No. CV 39-2011-00260395-CU-FR-STK, that ended up being Court of Appeal Case No. C069453), *originating back to 2009).*This case prompted the Consumer Financial Protection Bureau to put the AURORA LOAN SERVICES, AND LEHMAN COMPANIES, in a government conservatorship.  HEDMANS would like to enjoin each case here San Joaquin County Superior Court Case No: 39201400307185CUORSTK, that became Court of Appeal, Third Appellate District Case No.'s C078538/C079416, and California Supreme Court Case S234930 Filed July 13, 2016, and California Supreme Court Case S235169 Filed July 27, 2016. Also, a quiet title case filed as San Joaquin County Superior Court Case No: 39201400314934CUFRSTK .   *This* Court's jurisdiction is invoked under 28 U.S.C. § 1254(1). STATUTORY AND REGULATORY PROVISIONS INVOLVED Relevant provisions of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and of the Federal Reserve Board's Regulation Z are reproduced at App. 12a-19a. STATEMENT A. Statutory and Regulatory Background Congress enacted the Truth in Lending Act "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).

The Act therefore requires creditors to disclose to borrowers various terms of a credit transaction, including "finance charges, loans taken out, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). Section 1635(a) provides that a borrower who secures the loan with a principal dwelling "shall have the right to rescind the transaction until midnight of the third business day following the consummation ofthe transaction or the delivery of the information and rescission forms required under this section . . . whichever is later, by notifying the creditor . . . of his intention to do so." 15 U.S.C. § 1635(a). Section 1635(a) thereby creates an unconditional right to rescind for three days after the consummation of the transaction and, as a remedy for a creditor's violation of the Act's disclosure requirements, extends that

right to rescind until three days following the ultimate delivery of the required disclosures. A borrower's exercise of the right to rescind under Section 1635(a) sets in motion a series of automatic steps to unwind the transaction, imposing obligations on both the creditor and the borrower. When a borrower "exercises his right to rescind under [Section 1635(a)], he is not liable for any finance or other charge, and any security interest given by the [borrower] . . . becomes void upon such a rescission." Id. § 1635(b). Section 1635(b) next provides that, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the [borrower] any money or property given as . . . downpayment . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." Id. Subsequently, "[u]pon the performance of the creditor's obligations under this section, the [borrower] shall tender the property to the creditor," but, "[i]f the creditor does not take possession of the property within 20 days after tender by the [borrower], ownership of the property vests in the [borrower] without obligation on his part to pay for it." Id. These "procedures prescribed" by Section 1635(b) "shall apply except when otherwise ordered by a court." Id. Although the Act originally extended the three-day rescission right until the creditor delivered proper

5

disclosures and notices, whenever that might be, Congress later limited to three years the time within which a borrower may exercise the right to rescind even if a creditor never delivers the disclosures required by the Act. See Act of Oct. 28, 1974, Pub. L. No. 93-495, § 405, 88 Stat. 1500, 1517 (codified at 15 U.S.C. § 1635(f)). Section 1635(f) thus provides that a borrower's "right of rescission shall expire three years after the date of consummation of the transaction . . . notwithstanding the fact that the information . . . required under this section or any other disclosures required under [the Act] have not been delivered to the [borrower]." 15 U.S.C. § 1635(f). Regulation Z, which implements the Act,* confirms that, "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation." 12 C.F.R. § 226.23(a)(3). That Regulation further explains that, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication." Id. § 226.23(a)(2). * The Act originally vested the Federal Reserve Board with authority to promulgate regulations implementing the Act. See Pub. L. No. 90-321, tit. I, §§ 103(b), 105, 82 Stat. 146, 147, 148 (1968). Under this authority, the Board promulgated Regulation Z, after notice and comment. See 12 C.F.R. pt. 226. The Consumer Financial Protection Act of 2010 transferred implementing authority from the Federal Reserve Board to the Consumer Financial Protection Bureau. See Pub. L. No. 111- 203, tit. X, § 1061(b)(1), (d), 124 Stat. 1376, 1955, 2036, 2039 (2010) (codified at 12 U.S.C. § 5581(b)(1), (d)). The Bureau repromulgated Regulation Z without substantive changes. See Interim Final Rule, Truth in Lending (Regulation Z), 76 Fed. Reg. 79,768, 79,803-04 (Dec. 22, 2011) (promulgated at 12 C.F.R. § 1026.23). In this example the HEDMANS have been put in to position of "3rd Party Non-Disclosed Creditor", so it is very clear that there is complex RICO fraud here, a network that has been built to do this in a repeatable process like organized crime is set up.

6

B. Factual Background On May 18, 2004, petitioners KEITH OLIN HEDMAN  and ADRIALYN VARILLA HEDMANS purchased their primary residence in Mountain House, California, by executing two promissory notes , but they were never lent any money, and never received the funds. The "NOTES" were for $333,700 with CMG MORTGAGE, INC/UMAC MORTGAGE, INC./LLC, and a table funded loan for $128,950 with Wells Fargo, NA.   Home Loans, Inc. App. 5a. At and After the alleged closing of the transaction, HEDMANS never received any checks or transfers or loan proceeds.  The alleged creditor also, provided none of the paperwork or disclosures required by the Act ,claiming that their copier was broken, and they would be sent the paperwork within a week, but past the three day cut off, operating in violation of the Act,and they failed to include two copies of a Notice of Right to Cancel for each of the HEDMANS timely, and any documentation explaining to HEDMANS that additional monies were going to be taken out other their accounts with them being a creditor in a REPO 105 transaction making HEDMANS the Bailor or "non-disclosed 3rd party creditor", they also did not receive two copies of a Truth in Lending Disclosure Statement. If HEDMANS knew that LEHMAN BROTHERS HOLDINGS, INC. was associated with the paperwork they might have not signed it, and if they knew additional monies were going to be lent from HEDMANS, HEDMANS would have changed and negotiated different terms and conditions. Thus, the transaction was unconscionable, and thus void ab initio. HEDMANS since they did not know about the loan gave none of the assumed mandatory paperwork to the loan recipient(LEHMAN BROTHERS HOLDINGS, INC.), since it is a regulated industry. See Am. Compl. ¶¶ 19-20 (Dkt. No. 7); see also 12 C.F.R. § 226.23(b) ("[A] creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind") (emphases added); id. § 226.17(d) ("If the transaction is rescindable . . . , the disclosures shall be made to each consumer who has the right to rescind.") (emphasis added). The creditors never delivered the additional required disclosures or monies activating the mortgage or deed of trust. App. 5a. On May 18, 2007, within the three-year limitation period set by Section 1635(f), the HEDMANS were unaware they did not have a valid mortgage to be able to exercise their right to rescind the transaction by sending written notice of rescission to respondents. Id. On June-July, 2013, HEDMANS' gave notice of rescission to multiple parties. Many of the parties have been refusing to acknowledge the rescission stating that the transaction was a Money Purchase Agreement, which was never disclosed during the closing. Id. No other interested party responded to the HEDMANS' notice of rescission. See Am. Compl. ¶ 33 (Dkt. No. 7). The alleged creditors/ alleged loan providers subsequently failed to take, within 20 days of receipt of the notice of rescission, any of the steps required by Section 1635(b) to reflect the termination of the security interest in the HEDMAN' home. See id. ¶ 31.

7

C. Proceedings Below, In 2009-2010 time frame HEDMANS filed a Lawsuit against LOAN SERVICER, AURORA LOAN SERVICES, INC. when they still believed they may have had a loan, but there were gross loan servicing violations and further discovery had to take place and then AURORA was put into a government conservatorship. On February 4th, 2014, the HEDMANS filed a complaint in the United States District Court for the District of California seeking to enforce the rescission they had exercised by notifying their creditors in writing of their intention to rescind among other Statutes. App. 5a-6a. They petitioned to file an amended complaint giving them 20 -60 days leave to ammend but proceedurely with disallowed their God Given rights to DUE PROCESS and a JURY HEARING even though all JURY FEES were Collected by the Court. HEDMANS sought a declaration that the mortgage transaction had been rescinded by that written notice, damages under Section 1640 for respondents' violations of the Act, and damages under state-law causes of action arising from violations of federal mortgage regulatory law. App. 6a. Respondents answered and moved for judgment on the pleadings on the ground that the HEDMANS' suit was barred because the complaint was filed more than three years after the alleged consummation of the transaction,and the court proceedurely dis-allowed HEDMANS justice. App. 7a-9a. The Superior granted respondents' motion. App. 9a. Following other decisions in the district, it held that "a suit for rescission filed more than three years after consummation of an eligible transaction is barred by [the Act's] statute of repose" in Section 1635(f). Id. Because "there is no dispute that [the HEDMANS] failed to file suit within the three-year period," the court held that "their claims are time barred." Id. The HEDMANS appealed to the Third Appellate District, which affirmed the Superior court's judgment. Since it appears the new evidence/ Declaration was not observed by NEIL F. GARFIELD , MBA, JD. The per curiam opinion noted that the Third District said and cautioned HEDMANS for things that they filed properly in the court, yet the court was engauging in Judicial Misconduct making descisions allowing Attorneys to offer testimony in court as if they were the defendant as a witness, which is clear violation of Transley v. Pitagliaro, and HEARSAY RULE. "recently weighed in on the circuit split regarding this precise issue and held that a party seeking to rescind a loan transaction must file suit within three years of consummating the loan." App. 2a (citing Keiran v. Home Capital, Inc., 720 F.3d 721, 726-29 (8th Cir. 2013)). On that ground alone, the court of

8

appeals "affirm[ed] the Superior court's judgment on the pleadings in favor of the alleged lenders." Id. Two members of the panel each concurred separately to express their views that the Third Appellates precedent compelled the wrong result. HEDMANS "[have said they will offer a conditional acceptance upon proof of claim that they received loan proceeds, so any IRS form 8300, IRS form 1099-oid showing the true lender, or evidence that the monies had been cashed at any of HEDMANS accounts, showing they received the monies, via a paper trail"., to this date, this request and conditional acceptance has been left unchallenged, even in the Federal Bankruptcy Court, where each party toting a claim on HEDMANS property was discharged. " The other court though stands by their decision. . . that sending notice within three years of consummating a loan is sufficient to 'exercise' the right to rescind."(Which HEDMANS have done" App. 2a-3a (Melloy, J., concurring in the judgment in Jesinoski v. Countrywide Mortgage, LLC.) (citing 12 C.F.R. § 1026.23(a)(2)).Also, Judge Colloton wrote that he "believe[s] that Keiran . . . was wrongly decided . . . and I would reverse the judgment of the district court if the question presented were open in this circuit." App. 3a (Colloton, J., concurring). The HEDMANS petitioned for rehearing en banc, which the Third Appelate District denied, so HEDMANS asked the matter to be heard in California Supreme Court, where there paperwork was sent back, and not read with a "PETITON FOR REVIEW IS DENIED"... App. 10a.: No 'matter how this court decides this case, there will remain a well-developed conflict in the circuits on the question how a consumer may exercise his or her right to rescind under the Truth in Lending Act, 15 U.S.C. § 1635(f) WHEN THERE IS FRAUD, AND NO CONSUMMATION  AND RECIEPT OF MONIES TO VALIDATE A "MORTGAGE" OR "DEED OF TRUST". Compare Sherzer v. Homestar Mortg. Servs., 707 F.3d 255 (3d Cir. 2013), and Gilbert v. Residential Funding LLC, 678 F.3d 271, 277-78 (4th Cir. 2012), with Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1187-88 (10th Cir. 2012), and McOmieGray v. Bank Am. Home Loans, 667 F.3d 1325, 1328 (9th Cir. 2012). It appears that none of these cases was presented to the Supreme Court by way of petition for writ of certiorari, so it cannot be said that the Court has resolved to

9

leave the issue to individual circuits despite a conflict in authority. Therefore, I conclude that the resources of a rehearing en banc are not warranted at this time simply to move this court from one side to the other in what may prove to be a short-lived conflict in the circuits. App. 11a (Colloton, J., concurring in denial of rehearing en banc). REASONS FOR GRANTING THE PETITION I. THE COURTS OF APPEALS ARE DEEPLY DIVIDED OVER WHETHER A BORROWER EXERCISES THE RIGHT TO RESCIND UNDER SECTION 1635 BY NOTIFYING A CREDITOR OR INSTEAD MUST FILE SUIT, BUT THIS CASE CUTS TO THE VERY ROOT OF PROPERTY RIGHTS IN AMERICA. The Third Circuit's decision in this case deepens a significant conflict among eight circuits by holding that a borrower must file suit within three years of the consummation of a loan to exercise his right to rescind the transaction under Section 1635, it also does not address several of the other issues that HEDMANS provided Prima Fascia evidence to the court to validate. HEDMANS envoked Common Law jurisdication, and in many cases objected to HEARSAY evidence that was taken into court as truthful,and other ethics and judicial violations taking place, with HEDMANS appearing as the EXECUTOR or TRUSTEE for the BENEFICIARY. . The Third, Fourth, and Eleventh Circuits properly rejected such a requirement, holding that the plain text of the statute and its implementing regulation dictate that written notice to the creditor is sufficient, and that neither the statute nor the regulation makes any mention of a further requirement to sue within the three-year time limit. The Third Appelate holding, shared by the First, Sixth, Ninth, and Tenth Circuits, looks past the text of the statute and regulation, "[e]xtrapolating" from this Court's decision in Beach v. Ocwen Federal Bank, 523 U.S. 410, 412 (1998), to impose a requirement that under Section 1635(f) "the [borrower] must file a rescission action in court" within three years. Keiran v. Home Capital, Inc., 720 F.3d 721, 728 (8th Cir. 2013). This Court's review is required to resolve this stark division in authority

10

and to establish uniform national requirements for a borrower's exercise of the right to rescind under Section 1635. A. The Third, Fourth, And Eleventh Circuits Hold That Notifying A Creditor In Writing Within Three Years Of The Consummation Of The Transaction Is Sufficient To Exercise The Right To Rescind 1. Third Circuit. In Sherzer v. Homestar Mortgage Services, 707 F.3d 255 (3d Cir. 2013), the Third Circuit held on facts identical to those here that written notice to a creditor is sufficient to exercise the right to rescind under Section 1635, especially when it is determined there was fraud, misrepresentation of facts and monies were not actually lent this is covered in UCC 3-103, further issues are covered in UCC 3-603 where the definition of legal tender is to be determined, and as the debt is to be discharged, as per the actions of the Bankruptcy Judge, when HEDMANS were forced into Ch13 then Ch7. The alleged creditor could not provide proof of claim, so they were discharged. There, as here, the homeowners notified their creditors in writing of their intention to rescind the loan within three years of its consummation, but in this case that period is still in limbo since HEDMANS are still waiting to be given the loan monies, or for consummation. Id. at 256. The court held that written notice was sufficient because "the text of [Section] 1635 and its implementing regulation . . . supports the view that to timely rescind a loan agreement, [a borrower] need only send a valid notice of rescission." Id. at 258. The court explained that "[n]either [Section] 1635(a) nor Regulation Z states that the [allewged/borrower] must also file suit; both refer exclusively to written notification as the means by which [a borrower] exercises his right of rescission," id., and therefore rejected the creditor's invitation to "infer that the statute contains additional, unwritten requirements with which [borrowers] must comply," id. at 261. Accordingly, the court held that "[a borrower] exercises his right of rescission by sending the creditor valid notice of rescission, and need not also file suit within the three-year period." Id.

11

2. Fourth Circuit. In Gilbert v. Residential Funding LLC, 678 F.3d 271 (4th Cir. 2012), the Fourth Circuit similarly relied upon "the plain meaning of the applicable statute and regulation" to hold that a borrower exercises the right to rescind by notifying a creditor. Id. at 278. There, as in Sherzer and as here, the homeowner sent written notice of rescission within three years of the consummation of the loan but filed suit after three years. The Gilbert court explained that, "[s]imply stated, neither [Section] 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them." Id. at 277. The court therefore held, in accord with the Third Circuit, that "a borrower exercises her right of rescission by merely communicating in writing her intention to rescind." Id. 3. Eleventh Circuit. The Eleventh Circuit reached the same conclusion in Williams v. Homesake Mortgage Co., 968 F.2d 1137 (11th Cir. 1992). Although the homeowner in that case had both notified the creditor in writing and filed suit before the expiration of the three-year time limit, the Eleventh Circuit unmistakably held that written notice alone is sufficient to exercise the right to rescind. "Congress provided the consumer with the right to rescind a credit transaction . . . solely by notifying the creditor within set time limits of his right to rescind." Id. at 1139 (emphasis added). In modifying the default procedures established by Section 1635(b) to unwind the transaction, the court explained that "all that a consumer need do is notify the creditor of his intent to rescind [and] [t]he agreement is automatically rescinded." Id. at 1140. The Williams court further explained that Regulation Z "reaffirm[ed] . . . the Act's

12

12 intent to make rescission automatic upon notification." Id. at 1142. See also Johnson v. Mortgage
Elec. Registration Sys., Inc., 252 F. App'x 293, 294 (11th Cir. 2007) (per curiam) (explaining that a
"borrower can trigger rescission 'solely by notifying the creditor within set time limits of [her] intent to
rescind'" but holding that the borrower in that case had failed to do so) (citing Williams v. Homesake
Mortgage) (alteration in original). District courts in the Eleventh Circuit have followed Williams v.
Homesake Mortgage in holding that written notice alone is sufficient to exercise the right to rescind.
See, e.g., Carson v. Wells Fargo Bank, N.A., No. 8:10-CV-2362-T17-EAJ, 2011 WL 2470099, at *3 (M.D.
Fla. June 20, 2011) ("Rescission is automatic once the creditor is notified. . . . [B]ecause notifying the
creditor automatically triggers rescission, it is this notification, not the filing of the suit, that must be
within the three-year period.") (citing Williams v. Homesake Mortgage); Williams v. Saxon Mortg. Co.,
Civil Action No. 06-0799-WS-B, 2008 WL 45739, at *3 (S.D. Ala. Jan. 2, 2008) ("[A]ll that the consumer
need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and
the creditor must . . . tender first.") (quoting Williams v. Homesake Mortgage). B. The First, Sixth, Eighth,
Ninth, And Tenth Circuits Hold That A Borrower Must File Suit Within Three Years Of The Consummation
Of The Transaction To Exercise The Right To Rescind The First, Sixth, Eighth, Ninth, and Tenth Circuits
depart from this straightforward interpretation of the statutory text and its implementing regulation,
instead requiring that a borrower must file a lawsuit

13

13 within three years to exercise the right to rescind. Those courts of appeals "[e]xtrapolat[e]," Keiran, 720 F.3d at 728, such a rule from this Court's decision in Beach, which held that a homeowner who had neither notified a creditor nor brought suit within the three year time limit could not then assert rescission as an affirmative defense to a foreclosure action brought years later by the creditor. 1. Ninth Circuit. In McOmie-Gray v. Bank of America Home Loans, 667 F.3d 1325 (9th Cir. 2012), the Ninth Circuit held that "[Section] 1635(f) is a three-year statute of repose, requiring dismissal of a claim for rescission brought more than three years after the consummation of the loan . . . regardless of when the borrower sends notice of rescission." Id. at 1326. The court conceded that, "[w]ere [it] writing on a blank slate, [it] might consider whether notification within three years of the transaction could extend the time limit imposed by [Section] 1635(f)." Id. at 1328. Instead, though, the court suggested that it was bound "under the case law of [the Ninth Circuit] and the Supreme Court," which in its view indicated that "rescission suits must be brought within three years of the consummation of the loan, regardless whether notice of rescission is delivered within that three-year period." Id. The Ninth Circuit based its holding on this Court's statement in Beach that Section 1635(f) "talks not of a suit's commencement but of a right's duration," Beach, 523 U.S. at 417, and its conclusion that the Act "permits no federal right to rescind, defensively or otherwise, after the 3-year period of [Section] 1635(f) has run," id. at 419. The Ninth Circuit acknowledged that this Court in Beach held merely that "the [borrower] could not raise the right to rescind as a defense to the [creditor's] foreclosure

14

action after the three-year period had run" when the borrower had neither notified the creditor nor brought suit himself. McOmie-Gray, 667 F.3d at 1328. It nonetheless suggested that "[t]he language the Court used, however, broadly assumes that a three-year limitation governs cases where a borrower, as plaintiff, seeks rescission of the mortgage transaction." Id. at 1328-29. On the basis of this extension of Beach, the Ninth Circuit concluded that "Section 1635(f) is . . . not merely a statute of limitations – it completely extinguishes the underlying right itself," and therefore as "a statute of repose" it "represents an absolute three-year bar on rescission actions," even if the borrower had notified the creditor in writing within the three-year period. Id. at 1329. 2. Tenth Circuit. In Rosenfield v. HSBC Bank, USA, 681 F.3d 1172 (10th Cir. 2012), the Tenth Circuit joined the Ninth Circuit in holding that "the mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period has run." Id. at 1182. Like the Ninth Circuit in McOmie-Gray, the Tenth Circuit "believe[d] that Beach [was] dispositive of the instant question" and that "the Supreme Court has definitively foreclosed – through the implicit instruction of Beach – any argument that a consumer may exercise her right to rescind" by notifying the creditor of his intention to rescind. Id. In the Tenth Circuit's view, the homeowner's "position is not consistent with the effect of a strict repose period – which Beach held that [Section] 1635(f) establishes in this context – one that operates to completely extinguish the right claimed after it lapses." Id.

15

The Tenth Circuit disregarded the Consumer Financial Protection Bureau's ("Bureau") Interpretation of the statute and of Regulation Z, advanced in an amicus brief, that a borrower need not file suit to exercise the right to rescind, again on the basis of the perceived implications of Beach. According to that court, "part and parcel of the Court's vision of repose was the manner in which a rescission must be asserted during the repose period – that is, by invoking the power of the courts through litigation." Id. at 1186 n.10 (citing Beach, 523 U.S. at 415-16). To hold otherwise, the court supposed, "could conflict with the Court's conception of repose under [the Act], in that it would effectively create commercial uncertainty." Id. On this policy basis, the court rejected the agency's authoritative interpretation of the Act and of Regulation Z. 3. Third Appellate District and California Supreme Court. In Keiran v. Home Capital, Inc., the Third Appellate District and California Supreme Court surveyed the split among its sister circuits before joining the Ninth and Tenth Circuits in "hold[ing] that a plaintiff seeking rescission must file suit, as opposed to merely giving the bank notice, within three years in order to preserve th[e] right [to rescind] under [Section] 1635(f)." 720 F.3d at 726-28. The court "[e]xtrapolat[ed] from Beach" to infer that, "to accomplish rescission within the meaning of [Section] 1635(f), the [borrower] must file a rescission action in court." Id. at 728. The court further disregarded the Bureau's interpretation of Regulation Z, suggesting that "while Regulation Z sets forth one of the things [a borrower] must do to rescind the loan – give written notice to the bank – it does not set forth the entirety of the things necessary to accomplish rescission." Id. As a result, the court felt free to impose the additional requirement that the borrower file suit within three years. Id.

16

Judge Murphy dissented, explaining that "[t]he majority decision is contrary to the plain language of [the Act], the congressional intent behind it, and the position of the agency responsible for enforcing it." Id. at 731 (Murphy, J., concurring in part and dissenting in part). She recognized that "[n]owhere in the [Act] is there any requirement that a consumer must file a lawsuit in order to exercise a right of rescission." Id.; see id. at 733 ("[The Act] contains no language even hinting that a lawsuit is required to exercise the right of rescission."). Judge Murphy further explained that "[t]he majority['s] suggest[ion] that Beach . . . compels a different interpretation of the statute . . . is puzzling," because "in Beach the homeowners had unquestionably not exercised their right of rescission within three years, either by providing the statutory notice or by filing a lawsuit as the majority advocates." Id. at 731. Accordingly, she understood that "Beach provides no answer to the question in this case." Id. at 732. For these reasons, she properly concluded that "[t]he plain language of [the Act], its implementing regulations, and its supporting policy rationale all support reading [Section] 1635 to mean what it says: that rescission is exercised when a consumer provides written notice to the lender." Id. at 736. 4. Sixth Circuit. In Lumpkin v. Deutsche Bank National Trust Co., No. 12-2317, 2013 WL 4007760 (6th Cir. Aug. 6, 2013), the Sixth Circuit shared the Eighth, Ninth, and Tenth Circuits' view in holding that a borrower must file suit to exercise his right to rescind. The court there held that the letter the homeowner had sent to his creditors within the three-year period did not qualify as a notice of rescission, id. at *2, and further held that "[t]he three years defined by [Section] 1365(f) were over by the

17

time this suit was filed, and so [the borrower's] right to bring a rescission suit had expired, regardless of when and whether he notified the lender of his rescission within those three years," id. at *3. The Sixth Circuit has thus unmistakably indicated that it would join the Eighth, Ninth, and Tenth Circuits in holding that written notice is insufficient to exercise the right to rescind. 5. First Circuit. The First Circuit has not yet considered this issue in the context of enforcing a rescission, but it has held that a notification within the three-year period did not effect a rescission without suit being filed within the three years. In Large v. Conseco Finance Servicing Corp., 292 F.3d 49 (1st Cir. 2002), the First Circuit reached the same conclusion in enforcing an arbitration provision in the loan agreement a homeowner had attempted to rescind via written notice to his creditor within three years. There, the court rejected the homeowner's argument that his letter notifying his creditors of his intention to rescind "in fact rescinded the transaction the moment it was mailed." Id. at 54. The First Circuit instead held that "neither [Section 1635] nor [Regulation Z] establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract." Id. Rather, the court suggested, "[t]he natural reading of this language is that the security interest becomes void when the [borrower] exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available or because the appropriate decision maker has so determined." Id. at 54-55. The court further inferred that, if "a lender disputes a borrower's purported right to rescind," as was the case in Large and is the

18

case here, "the designated decision maker," there an arbitrator and here a court, "must decide whether the conditions for rescission have been met," and, "[u]ntil such a decision is made, the [borrower] ha[s] only advanced a claim seeking rescission." Id. at 55. The court limited the Eleventh Circuit's approach in Williams v. Homesake Mortgage to cases in which the creditor agreed that grounds for rescission existed, thus holding that written notice alone does not exercise the right to rescind unless "the grounds for rescission have been established, either by agreement or by an appropriate decision maker." Id. C. The Split Among The Courts Of Appeals Is Widely Recognized And Entrenched, And It Can Be Resolved Only By This Court This entrenched conflict in authority is widely recognized among the courts of appeals, as well as not observing PRIMA FASCIA EVIDENCE THAT IS NEW AND SHOW FRAUD. See App. 2a ("This Court recently weighed in on the circuit split regarding this precise issue."); Keiran, 720 F.3d at 726 ("Our sister circuits are split on this issue."); Sherzer, 707 F.3d at 258 (acknowledging circuit split); Rosenfield, 681 F.3d at 1187-88 (same); Gilbert, 678 F.3d at 276 (same); see also Saif Alaqili, Comment, Striking a Balance: How Equitable Doctrine Restores the Purposes of TILA's Rescission Right, 2013 U. Chi. Legal F. 711 (2013) (recognizing circuit split and advocating sufficiency of notice). As Judge Colloton recognized below in his opinion concurring in the denial of rehearing en banc, App. 11a, there is no realistic prospect that the courts of appeals will reconcile this "well-developed conflict" in authority without this Court's intervention. Accordingly, the Court should grant this petition to resolve the conflict rather then expect if to be resolved in a Superior Court where the Rule of Law is not being followed and cases are being decided outside of, "The Law" and Supreme Court Statutes.

19

II. THE EIGHTH CIRCUIT'S HOLDING THAT A BORROWER MUST FILE SUIT TO EXERCISE THE RIGHT TO RESCIND UNDER SECTION 1635 IS IN ERROR This Court's review is further warranted because the Eighth Circuit's holding is incorrect on the merits. The plain text of the statute, the structure and purpose of the Act, and the clear direction of the implementing regulation establish that "notifying the creditor" is sufficient to exercise the right to rescind under Section 1635 and that there is no further requirement to file suit within the three-year time limit. This Court should grant review to correct the Eighth Circuit's misinterpretation of the Act in Jesinoski v. Countrywide, its failure to afford proper regard to the Bureau's implementing regulation, and its misapplication of this Court's decision in Beach. A. Section 1635's Plain Text Establishes That Notice To A Creditor Is Sufficient To Exercise The Right To Rescind The text of Section 1635(a) both creates a right of rescission and specifies the method of its exercise. The statute indisputably provides that the borrower "shall have the right to rescind the transaction." 15 U.S.C. § 1635(a). The statute further details the manner in which that right may be exercised by specifying that the borrower shall have the right to rescind "until midnight of the third business day" after the closing or the delivery of proper disclosures "by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so." Id. The clear meaning of this statutory text is that a borrower exercises his "right to rescind" a transaction "by notifying the creditor." Id.

20

Section 1635(f)'s text confirms that interpretation. That section creates a "time limit for [the] exercise of [the] right," id. § 1635(f), but does not restrict the manner in which that right may be exercised within that time limit. As this Court recognized in Beach, Section 1635(f) "says nothing in terms of bringing an action but instead provides that the 'right of rescission [under the Act] shall expire' at the end of the time period." 523 U.S. at 417. By addressing the "right's duration," id., Section 1635(f) is simply silent regarding what a borrower must do within the time limit it establishes in order to exercise that right.

Beyond Section 1635(a)'s affirmative statement that a borrower exercises his right to rescind by "notifying the creditor" and Section 1635(f)'s notable silence on the issue, neither section gives any indication of a further requirement that the borrower must sue within the three-year time limit. Indeed, neither section even mentions a court or legal proceedings. See Sherzer, 707 F.3d at 260 ("[T]he absence of any reference to causes of action or the commencement of suits in [Section] 1635 also suggests that rescission may be accomplished without a formal court filing."); Gilbert, 678 F.3d at 277 ("Simply stated, neither [Section] 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them."); see also Keiran, 720 F.3d at 728 ("Regulation Z says nothing about filing suit."). This conspicuous absence is notable in a statute that elsewhere explicitly establishes legal causes of action. See 15 U.S.C. § 1640 (creating damages cause of action for violations of the Act and a statute of limitations thereto). Accordingly, Section 1635 does not impose a requirement that a borrower sue to exercise the right to rescind.

21

**B. The Structure And Purpose Of The Truth In Lending Act Confirm That Notice Alone Is Sufficient To Exercise The Right To Rescind** Congress designed the Act to effectuate rescission upon a borrower's notifying creditors without relying on the intervention of the courts. As an initial matter, there is no dispute that a borrower has an unconditional right to rescind under Section 1635(a) for three days after the closing of the transaction since the other fraudulent facts were not disclosed at that time. No court has suggested that a borrower must file a lawsuit within three days to exercise that unconditional right. And it makes no sense to interpret that unconditional right to rescind as requiring only notice while interpreting the extended right to rescind, which is created by the very same clause in the very same sentence of Section 1635(a), as requiring the filing of a lawsuit. See Sherzer, 707 F.3d at 264. Such an incongruous interpretation of Section 1635(a) is unsupportable. Moreover, Section 1635(b) establishes procedures to unwind the transaction "when [a borrower] exercises his right to rescind under [Section 1635(a)]," without mentioning or requiring the involvement of a court. 15 U.S.C. § 1635(b). Those procedures are triggered by the borrower "exercis[ing] his right" under Section 1635(a); that is, by "notifying the creditor." "When" the borrower "exercises his right," immediately and automatically he "is not liable for any finance or other charge." Id.; see Williams, 968 F.2d at 1140; Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 705-06 (9th Cir. 1986). Moreover, "upon such a rescission" that a borrower exercises by notifying his creditor, "any security interest . . . becomes void." 15 U.S.C. § 1635(b).

22

Those first steps proceed automatically upon notice of rescission, and the statute does not require the involvement of a court. The next steps in Section 1635(b)'s default procedures are affirmatively inconsistent with a court proceeding. The statute specifies that, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return" any "money or property given as earnest money, downpayment, or otherwise" and "shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." Id. The provision specifies that those procedures of Section 1635(b) are triggered by "receipt of notice of rescission," not by a lawsuit. Moreover, the time limits established here and elsewhere in Section 1635(b) are tied to the actions of the borrower and creditor, see Keiran, 720 F.3d at 733 (Murphy, J., concurring in part and dissenting in part), and are therefore inconsistent with those established for a legal action by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(a) (establishing times for responsive pleadings). The only reasonable interpretation of Section 1635, therefore, is that notice to a creditor triggers rescission, and the default unwinding procedures of Section 1635(b) follow in due course from that notice without requiring the initiation of a court proceeding. The structure of the statute, including the unwinding procedures in Section 1635(b), reflects the Act's purpose. "[S]ection 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir. 2005). The Eighth Circuit would instead channel all rescissions

23

into the legal system, flooding the courts with thousands of unnecessary lawsuits. That rule not only flouts the structure of Section 1635 generally and the procedures of Section 1635(b) specifically, it eviscerates the efficiencies of the Act by manufacturing thousands of needless lawsuits from a regime that was designed to process rescissions privately in the first instance and without the intervention of the courts. C. Regulation Z Removes All Doubt That Written Notice Is Sufficient To Exercise The Right To Rescind Regulation Z resolves any remaining ambiguity regarding the interpretation of the Act in favor of the sufficiency of written notice. That regulation specifies that, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). The Bureau's interpretation of the Act in Regulation Z, which makes clear that notifying a creditor is sufficient to exercise the right to rescind, is due deference. See Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219 (1981) ("[A]bsent some obvious repugnance to the statute, the [Bureau's] regulation implementing [the Truth in Lending Act] should be accepted by the courts."). Because the text of Section 1635, which does not even mention a court proceeding, does not clearly preclude the Bureau's interpretation promulgated in Regulation Z, that interpretation of the statute is entitled to deference from this Court. The Bureau has reiterated in numerous amicus briefs before the courts of appeals its view that a borrower need only notify a creditor to exercise the right to rescind. See, e.g., Brief of the Consumer

24

Financial Protection Bureau as Amicus Curiae in Support of Plaintiff-Appellant and Reversal, Rosenfield, supra, No. 10-1442 (filed Mar. 26, 2012), 2012 WL 1074082. There, the Bureau confirmed that it interprets Section 1635 to require only notice to the creditor to exercise the right to rescind and that "[c]onsumers are not required also to sue their lender within the three-year period provided under [Section] 1635(f)." Id. at *14. The Bureau's interpretation in an amicus brief of its own regulations is itself entitled to deference. See Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880 (2011) ("[W]e find Regulation Z ambiguous as to the question presented, and must therefore look to the [Bureau's] own interpretation of the regulation for guidance in deciding this case.") (citation omitted); Auer v. Robbins, 519 U.S. 452, 461 (1997) (holding an agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted). Accordingly, the Court should accept the Bureau's interpretation of Section 1635 and Regulation Z to hold that notice to a creditor is sufficient to exercise the right to rescind. D. The Eighth Circuit's Reliance Upon in,Beach Is Misplaced in Jesinoski v. Countrywide, This Court's decision in Beach, on which the Eighth Circuit and several other circuits relied in departing from the clear meaning of Section 1635 and Regulation Z, is not to the contrary. Beach held that Section 1635(f) "permits no federal right to rescind, defensively or otherwise, after the 3-year period of [Section] 1635(f) has run." 523 U.S. at 419. The Court explained that Section 1635(f) "govern[s] the life of the underlying right" and "talks not of a suit's commencement but of a right's duration."

27

27 Under the Truth in Lending Act, 89 N.C. L. Rev. 171, 175 (2010) (stating that "TILA errors seemed surprisingly common, particularly during the early years of the mortgage bubble," and reporting that forensic auditing revealed "actionable mistakes in borrowers' disclosure documents . . . in as many as eighty percent of loans"). Clarification of the procedure that borrowers must follow to exercise their rights under the Act, especially when the majority of circuits would direct hundreds of thousands of rescission actions into federal court, warrants this Court's immediate attention. This case is the ideal vehicle to resolve the question presented. The legal issue is cleanly presented and dispositive of the case. In contrast to other cases raising the same issue that may come before the Court, the district court granted respondents' motion for judgment on the pleadings solely on the procedural ground that the HEDMANs' suit was timebarred and procedurally butchered, without reaching the merits of whether respondents had provided the information and disclosures required under the Act or burden of proof. Compare App. 7a n.3 ("[F]or the purposes of the present motion, the Court assumes without deciding that Plaintiffs have pled a plausible claim that they did not receive the required documents at the closing.") with Sobieniak v. BAC Home Loans Servicing, LP, 835 F. Supp. 2d 705, 709 (D. Minn. 2011) ("plaintiffs offer no evidence that their signatures on the cancellation notices and TILA disclosure do not mean what they say," and "a bald assertion . . . years later" to the contrary "is not sufficient to overcome the presumption" that they received the required disclosures), aff'd sub nom. Keiran v. Home Capital, Inc., 720 F.3d 721 (8th Cir. 2013), and Keiran v. Home Capital, Inc., Civil No. 10-4418

28

(DSD/JSM), 2011 WL 6003961, at *3 (D. Minn. Nov. 30, 2011) ("Bank of New York claims that no violations of the [Act] were evident on the face of the Keirans' loan documents. The court agrees."), aff'd, 720 F.3d 721 (8th Cir. 2013). For these reasons, the Court should resolve the deeply entrenched conflict over the meaning of Section 1635 and provide clarity to homeowners seeking to vindicate their statutory rights.

CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

KEITH OLIN HEDMAN &

ADRIALYN VARILLA HEDMAN

785 Shelli Street   Mountain House,

California 95391

(209) 836-1334

## VERIFICATION

We are the PLAINTIFFS in the above entitled action. We have read the foregoing complaint and Motion for Default and know the contents thereof to be true. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated October 7, 2016

PLAINTIFFS, KEITH OLIN HEDMAN, ADRIALYN VARILLA HEDMAN

**VERIFICATION**

# AFFIDAVIT OF TRUTH

**The State of California**

**San Joaquin County of USA**

I, Keith Olin Hedman of Mountain House (TRACY) , California, MAKE OATH AND SAY THAT.

1. I Keith Olin Hedman of Mounatin House (TRACY), California, purchased a property at 785 Shelli Street with my wife, May of 2004. We were told that we were being sold a mortgage, but no check was ever produced and provided to my wife Adrialyn and I, meaning we never received the funds to validate the "DEED OF TRUST" or Mortgage. What we found out from ex-Wall Street Banker, Neil F. Garfield, MBA, JD, and Thompson Reuters of whom we both hired, is that misrepresentation has taken place where a Loan originator CMG MORTGAGE, INC. misrepresented security paperwork as a mortgage.

    HEDMANS were led to believe that they were provided with financing and

a loan when this did not occur. Prima Fascia evidence that is FACTUAL that

HEDMANS "NOTE" was monetized by LEHMAN BROTHERS BANK, FSB,

immediately paying off the residence. Then using fractional reserve banking the

"NOTE" was additionally monetized by LEHMAN BROTHERS HOLDINGS,

INC, using fractional reserve banking, in what is known as a "REPO 105". These

monies all came out of HEDMANS,  social security trust account, without their

knowledge or consent. The current amount owed back to HEDMANS if interest is

calculated on the payments of the "REPO 105" ($32,499,533.30) as a loan from

HEDMANS., and the payments they (HEDMANS)were induced to pay is

($1,263,745.53) that has been tabulated including interest for HEDMANS

fraudulently induced payments. The additional monies calculated with interest that

Affidavit Of Truth

constituted an illegal loan from HEDMANS accounts. The current total amount is

($33,763,278.80) . HEDMANS have filed multiple letters of rescission to the

various parties to get back their monies. HEDMANS never received any loan check and

have asked repeatedly for proof of claim, IRS8300 form, IRS 1099-oid form , and canceled

check submitted to HEDMANS showing they deposited it in their(HEDMANS) account as proof

of claim. To date from multiple requests by HEDMANS, no proof of claim has been produced.

A "Notice Of Rescission" was sent and delivered under 15 U.S.C. § 1635. According to

the statute the loan contract, if it ever existed, is canceled, and the mortgage or deed of trust are

void, not voidable. The issue has been settled by a unanimous US Supreme Court decision in

Jesinoski v. Countrywide. Since more than one year has passed since the rescission was sent, the

TILA does not allow for an action to enforce the duties under the TILA Rescission procedures in

15 USC § 1635. But this does not affect the status of the alleged loan contract or the status of the

note and mortgage. As a matter of law, they are all void. The current status therefore is that there

are no documents that can be used for collection and enforcement of any money from

HEDMAN. Any dispute over the rescission appears to be completely settled by the US Supreme

Court. In accounting terms this means that any entity carrying a claim on their accounting

records as an asset(i.e., "the purported Loan") is required under generally accepted accounting

principles and auditing standards published by the Financial Accounting Standards Board to

make entries showing the obligation (Liability), to return all monies paid by HEDMAN, and

decreasing the "asset" of the ownership of the note and mortgage to zero because they are void.

However, a new asset arises on the balance sheet of some party – for a claim by an actual party

who would qualify as the actual lender or creditor. The claim would be for the principal amount

Affidavit Of Truth

of the "loan" only. The footnotes to such an entry would ordinarily explain that the claim is

contingent upon the alleged creditor's compliance with the three duties

specified by the TILA Rescission statute—return of the canceled note, release of the

encumbrance, and payment of the disgorgement and payment of all money paid of all money

paid to third parties as compensation for the origination of the alleged loan. The "asset" would

also be a contingent asset, as the debt cannot be claimed until after all statutory duties under the

TILA rescission statute have been fully executed, and after one year the debt either expires of is

rendered unenforceable since the alleged debtor (HEDMANS) have raised the statute of

limitations.

HEDMANS raised such an issue with NATIONSTAR MORTGAGE, LLC/INC. and they
rescinded the default that they filed a "RESCISSION OF DEFAULT" 09/07/2016, 2016-
106632, HEDMANS believe this was done because of the payments section in the NOTE says
that the NOTE can never be in default, and that all missed payments can be made up at the
MATURITY DATE. An additional failure comes up because HEDMANS have repeatedly
asked for PROOF OF CLAIM and no valid PROOF has been provided, thus proving
HEDMANS never received a loan or any monetary payment that would verify them as a debtor.
"CREDIT BID" also comes under scrutiny here since no records can be produced that monies
were lent, or no paperwork to date that shows any interest was transferred to a trust, via a chain
of title documentation which would include monetary transactions for validation. Also, since
MERS was the alleged Trustee on a non-perfected document with their wrong legal name on
it,and no appointment authorization stamp present, this invalidates any TRUSTEE assignment
and the MERS paperwork.

**I declare under penalty of perjury the laws of the State of California that the
foregoing is true and correct. This Affidavit was Executed on October, 4rd,
2016 at_Tracy_, California.**

10-4-2016

KEITH OLIN HEDMAN



Affidavit Of Truth

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____San Joaquin_____ )

On October 4, 2016 before me, Christine Hummel, Notary Public
(insert name and title of the officer)

personally appeared KEITH OLIN HEDMAN
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

CHRISTINE HUMMEL
COMM. # 2151818
NOTARY PUBLIC - CALIFORNIA
SAN JOAQUIN COUNTY
COMM. EXPIRES MAY 2, 2020

Signature _Christine Hummel_ **(Seal)**

SERVICE ON DEMAND

### PROOF OF SERVICE

I, Alejandro Tualla Varilla, declare as follows:
That I am domiciled in San Joaquin county, I am over the age of eighteen years old and not a party to the within action. I am readily familiar with the practices of collecting and processing correspondence for mailing with the United States Postal Service. Such Correspondence is deposited with the United States Postal Service.

My mailing location is:
16021 Eton Way, Lathrop, CA 95330

On October 12th,
in the year of our Lord Two thousand and sixteen,
I served by mail a true copy of "PETITION FOR A WRIT OF CERTIORARI"

TO DEFENDANTS for Case number: ~~39-2014-00307185-CU-OR-STK~~ U.S Supreme Court in the ~~Superior Court of California, in and for San Joaquin County, County of San~~ Joaquin District Court, upon all interested parties in this action as follows: NATIONSTAR MORTGAGE, INC, & DOES 1-100, et al. by placing a true copy thereof enclosed in seale envelope(s) addressed as follows:

### SEE SERVICE LIST

**(BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.**

**(State) I declare under penalty of perjury the laws of the State of California that the foregoing is true and correct.**

**Executed on** Oct 12, 2016 at _____ **California.**

**By:** _Alejandro Tualla Varilla_
Alejandro Tualla Varilla

PROOF OF SERVICE

# SERVICE LIST

✓1)        Wright Finlay and Zak, LLP

            4665 MacArthur Court, Suite 200

            Newport Beach, CA 92660

ATTORNEYS FOR NATIONSTAR MORTGAGE,LLC, NATIONSTAR
MORTGAGE, AND JAY BRAY, MERS, (NEED TO PRODUCE
AGENCY/APPOINTMENT LETTER) U.S BANK, N.A. AND THE BANK OF
NEW YORK MELLON


✓2)        Superior Court of California

            County of San Joaquin

            222  E. Weber Ave, RM 303

            Po Box  201022

            Stockton , CA 95201


/3)        STRUCTURED ASSET SECURITIES CORPORATION
            MORTGAGE PASS THROUGH CERTIFICATES SERIES 2004-S4

ATTN: ELLEN V. KIERNAN, DIANA KENNEALLY OR CORPORATE
OFFICER

745 SEVENTH AVE. , 7TH FLOOR , NEW YORK, NY 10019


4. /        THE PRENTICE-HALL CORPORATION SYSTEM, INC.

2710 GATEWAY OAKS DRIVE, SUITE 150N,
SACRAMENTO, CA 95833

FOR: STRUCTURED ASSET SECURITIES CORPORATION
MORTGAGE PASS THROUGH CERTIFICATES SERIES 2004-S4

√ 5.         THE BANK OF NEW YORK MELLON

            CT CORPORATION SYSTEM

            818 WEST SEVENTH ST. ,2ND FLOOR

            LOS ANGELES, CA 90017

√ 6.        THE BANK OF NEW YORK MELLON

            ATN: GERALD HASSELL, OR CORPORATE OFFICER

            1 WALL STREET,

            NEW YORK CITY, NEW YORK 10286

            212-495-1784

√ 7.        US BANK NATIONAL ASSOCIATION

            RICHARD K. DAVIS, OR CEO, OR OTHER CORPORATE
            OFFICER

            1 FEDERAL STREET, 3RD FLOOR

            BOSTON , MA 02110

√ 8.        SUPREME COURT OF THE UNITED STATES

            1 FIRST STREET, N.E.

            WASHINGTON, DC 20543

    9.  √   WELLS FARGO BANK, NA

PROOF OF SERVICE

ATTN: CORPORATE OFFICER

420 MONTGOMERY STREET

SAN FRANCISCO , CA 94163[1]

866-249-3302

10.    UAMC (UNIVERSAL AMERICAN MORTGAGE, LLC)

ATTN: CORPORATE OFFICER

730 NW 107TH AVE. , 4TH FLOOR

MIAMI, FL 33172

11.    RICHARD SEVERIN FULD, JR.

MATRIX ASSET ADVISORS CORP

747 THIRD AVE., 31ST FLOOR

NEW YORK , NEW YORK  10017

800-366-6223

12.    ERNST & YOUNG, LLP

ATTN: CORPORATE OFFICER

5 TIMES SQUARE

NEW YORK, NY 10036

212-773-3000

13.    LENNAR CORPORATION

ATTN: CORPORATE OFFICER

---

[1]

PROOF OF SERVICE

700 NW 107TH AVE

MIAMI, FL 33172          800-741-4663

14.    LEHMAN BROTHERS HOLDINGS, INC.

ATTN: CORPORATE OFFICER

1271 AVENUE OF THE AMERICANS, STE C2

NEW YORK, NY 10020

646-285-9000

15.    JP MORGAN CHASE & CO

ATTN: CORPORATE OFFICER

270 PARK AVE. , FL 38

NEW YORK, NY 10017          (212)-270-6000

16.    AURORA BANK, FSB

ATTN: CORPORATE OFFICER

10350 PARK MEADOWS DR. , #200

LONE TREE, CO 80124   (866)521-3826

17.    AURORA LOAN SERVICES

2323 S. TROY ST.

AURORA, CO 80014

(720)359-7951

18.    BUCHALTER NEMER

JASON E. GOLDSTEIN

PROOF OF SERVICE

18400 VON KARMAN AVE. , SUITE 800

IRVINE, CA 92612-0514  (949)760-1121

19.   GLENN H. WESCHLER

LAW OFFICES OF GLENN W. WECHSLER

1111 CIVIC DRIVE, SUITE 210

WALNUT CREEK, CA 94596

ATTORNEYS FOR DEFENDANTS FIRST AMERICAN TITLE
FINANCIAL CORP., FIRST AMERICAN TITLE CALIFORNIA AND FIRST
AMERICAN TITLE INSURANCE COMPANY.

20.   BARRETT, DAFFIN, FRAPPIER, TREDER

20955 PATHFINDER ROAD, STE. 300

DIAMOND BAR, CA 91765

ATTORNEYS FOR NDEX WEST, LLC

21.   LEVENE, NEALE, BENDER, YOO, & BRILL, LLP

10250 CONSTELLATION BLVD, STE 1700

LOS ANGELES, CA 90067

ATTORNEYS FOR DEFENDANTS NATIONWIDE TITLE CLEARING
AND DANIEL THOMPSON

22.   UNITED STATES BANKRUPTCY COURT

SOUNTHERN DISTRICT OF NEW YORK

ATTN: JUDGE SHELLEY C. CHAPMAN

ONE BOWLING GREEN

PROOF OF SERVICE

NEW YORK, NY 10004, 1408 (212)668-2301

(PREVIOUS 3 LETTERS SENT TO JUDGE JAMES PECK)

CASE NUMBER 08-13555(JMP) /CHAPTER 11

23.        WEIL , GOTSHAL & MANGES, LLP

ATTORNEYS FOR DEBTORS

767 FIFTH AVE

NEW YORK, NEW YORK 10153

RICHARD P. KRASNOW, ESQ

24.        LEHMAN BROTHERS, INC.

ATTN: CORPORATE OFFICER

ONE BATTERY PLAZA

NEW YORK, NEW YORK 10004-1482

25.        HUGHES, HUBBARD AND REED, LLP

ATTORNEYS FOR JAMES W. GIDDENS

TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS, INC.

1775 I Street, N.W., Suite 600

Washington, DC 20006

Attn: John F. Wood, ESQ

26.    COURT OF APPEAL OF THE STATE OF CALIFORNIA, THIRD APPELLATE DISTRICT

PROOF OF SERVICE

1

914 Capitol Mall, 4th Floor

2

Sacramento, CA 95814

3

C079416 KEITH OLIN HEDMAN, ET. AL. V. NATIONSTAR

4

MORTGAGE, LLC., ET. AL. / C078538 KEITH OLIN HEDMAN,

ET AL. V. FIRST AMERICAN TITLE INSURANCE COMPANY,

5

ET. AL.

6

7

27.   SUPREME COURT OF CALIFORNIA      S235169 / S234930

8

350 MCALLISTER STREET

9

SAN FRANCISCO, CA 94102  415-865-7000

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE