**Hearing Date: November 22, 2016 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 17, 2016 at 4:00 p.m. (Prevailing Eastern Time)**

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Flr.
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
Edward P. Boyle
David N. Cinotti
Michael A. Guerra
*Counsel for Goran Puljic, T.K. Narayan,*
*and Scott Snell*

HOGUET NEWMAN REGAL & KENNEY, LLP
10 East 40th Street
New York, New York 10016
Telephone:    (212) 689-8808
Fascimile:    (212) 689-5101
John P. Curley
*Counsel for Cynthia Zamora Daniel and*
*Christopher Montalvo*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 08-13555 (SCC)**<br><br>**(Jointly Administered)** |

**MOTION OF GORAN PULJIC, T.K. NARAYAN, SCOTT SNELL,**
**CYNTHIA ZAMORA DANIEL, AND CHRISTOPHER MONTALVO**
**FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT**
**APPLY, OR, ALTERNATIVELY, (II) RELIEF FROM THE AUTOMATIC STAY**

TO:    THE HONORABLE SHELLEY C. CHAPMAN
       UNITED STATES BANKRUPTCY JUDGE

Arbitration Respondents Goran Puljic, T.K. Narayan, Scott Snell, Cynthia Zamora

Daniel, and Christopher Montalvo, individuals ("Arbitration Respondents"), by and through their

undersigned counsel, hereby submit this motion (the "Motion") pursuant to Sections 105(a) and

362(d) of Title 11 of the United States Bankruptcy Code and Rules 4001 and 9014 of the Federal

Rules of Bankruptcy Procedure seeking an order (1) determining that the automatic stay does not

apply to a special proceeding that Arbitration Respondents seek to commence in New York State

Supreme Court to stay (*i.e.*, enjoin) an arbitration proceeding against them (the "Arbitration")

13317093

commenced by Lehman Brothers Holdings Inc. ("LBHI"); or (2) in the alternative, if the automatic stay applies, granting relief from the automatic stay to permit Arbitration Respondents to file a petition to stay or enjoin the Arbitration.[1]   In support, Arbitration Respondents respectfully state as follows:

## PRELIMINARY STATEMENT

1.      On October 27, 2016, LBHI, the principal debtor in the above-captioned, jointly administered Chapter 11 cases (the "Lehman Bankruptcy"), filed a Demand for Arbitration and Statement of Claim with the American Arbitration Association against Arbitration Respondents. LBHI is not pursuing the Arbitration on its own behalf, but rather in the capacity of Plan Administrator for entities called LB I Group, Inc. ("LB I Group") and Lehman Brothers CDO Associates 2004, L.P. ("LB CDO L.P.").   Neither LB I Group nor LB CDO L.P. is a debtor in the Lehman Bankruptcy.

2.      The Arbitration Respondents are former investment bankers at Lehman Brothers and limited partners of LB CDO L.P.   LBHI alleges in the Arbitration that Arbitration Respondents are required to return approximately $3.1 million in compensation that LB CDO L.P. distributed to them approximately 10 years ago. LBHI's claims are based on a provision in an unsigned, incomplete draft of a limited-partnership agreement for LB CDO L.P.   (the "Draft LP Agreement") and on a theory of unjust enrichment.   According to the Statement of Claim in the Arbitration, if LBHI prevails on these claims, the amounts recovered would be paid to "Fund

---

[1] Arbitration Respondents have filed contemporaneously with this Motion the Motion of Goran Puljic, T.K. Narayan, Scott Snell, Cynthia Zamora Daniel, and Christopher Montalvo for an Order Shortening Time for Notice of the Hearing to Consider Their Motion for (I) a Determination that the Automatic Stay Does not Apply, or, alternatively, (II) Relief from the Automatic Stay (the "Motion to Shorten").   By the Motion to Shorten, Arbitration Respondents seek to reduce the time to prove notice for this Motion pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure.

13317093

Investors" (defined below), and not to any Lehman debtor's estate. *See* Declaration of Edward

P. Boyle, Esq., dated Nov. 9, 2016 ("Boyle Decl."), Ex. A (Statement of Claim), ¶ 10 ("LBHI

brings this arbitration to compel Respondents to . . . remit the clawback amount so that it may be

returned to the Fund Investors.").

      3.     LBHI asserts that it may pursue these claims in the Arbitration, instead of through

the courts, based on a purported arbitration clause in the same unsigned, incomplete Draft LP

Agreement.  Arbitration Respondents dispute that the Draft LP Agreement constitutes an

enforceable agreement, or that they ever agreed to it, and therefore contend that no arbitration

agreement exists between the parties.  Arbitration Respondents intend to commence a special

proceeding in New York Supreme Court, New York County, to stay or enjoin the Arbitration on

the basis that no agreement to arbitrate exists.

      4.     Arbitration Respondents believe that the automatic stay is inapplicable to their

planned special proceeding.  Arbitration Respondents sought LBHI's agreement that the

automatic stay does not apply, but LBHI refused.  Out of an abundance of caution, Arbitration

Respondents seek this Court's determination that the automatic stay is inapplicable to their

defensive petition to stay the Arbitration.  The reasons the automatic stay should not apply to this

special proceeding are:

    a.   <u>First</u>, LBHI alleges in its Statement of Claim that, if LBHI recovers the Claw-

        Back Amount, these funds will not go to the Lehman debtors' estates, but instead

        directly to Fund Investors.

    b.   <u>Second</u>, the event that purportedly triggered the Arbitration Respondents'

        obligation to return the Claw-Back Amount to Lehman Brothers did not occur

        until nearly eight years after LBHI commenced the Lehman Bankruptcy.

3

    c.   <u>Third</u>, the automatic stay would not prevent Arbitration Respondents from arguing to the American Arbitration Association that it lacks jurisdiction because no arbitration agreement exists. The fact that Arbitration Respondents choose to exercise their right to have this issue decided by a court of law – as opposed to a private forum that they never agreed to use in the first place – should not affect whether the automatic stay applies.

5.     In the alternative, if this Court holds that the automatic stay applies to the special proceeding in New York Supreme Court to stay the Arbitration, Arbitration Respondents ask the Court to lift the stay to allow Arbitration Respondents to commence that special proceeding. The circumstances warrant lifting the automatic stay because LBHI's claims against the Arbitration Respondents have negligible, if any, impact on the Lehman Bankruptcy. LBHI alleges it has no equity in the Claw-Back Amount and their Statement of Claim is devoid of any allegation that those funds are related to LBHI's estate, or to any debtor's estate. According to the Statement of Claim, in the unlikely event that LBHI were to prevail on its claims to recover the Claw-Back Amount, any recovery would be paid to the Fund Investors. *See* Boyle Decl., Ex. A, ¶ 10. Moreover, the Statement of Claim does not allege that any of the Lehman debtors' estates have any payment obligation to the Fund Investors. Arbitration Respondents sought LBHI's consent to lift the automatic stay if it applies, but again, LBHI refused. LBHI also refused to agree to any extensions of deadlines in the Arbitration. While LBHI would like the American Arbitration Association to decide whether it has jurisdiction to hear the Arbitration, Arbitration Respondents intend to exercise their right to have this issue decided by a court. Accordingly if the automatic stay bars Arbitration Respondents from going to New York State Court, Arbitration Respondents

4

will move in this Court for an injunction against the Arbitration.  Arbitration Respondents would prefer not to add unnecessarily to this Court's Lehman Bankruptcy workload, however.

6.    By inserting itself into a dispute to which it is not a party, abusing the automatic stay, and refusing reasonable requests for extensions, LBHI seeks to erase Movants' federal right to have a court decide whether they are bound to arbitrate under an unsigned, draft agreement. Movants are therefore forced to seek relief from this Court.  Accordingly, Arbitration Respondents respectfully ask the Court to (a) determine that the automatic stay does not prevent them from filing a special proceeding in New York Supreme Court to stay the Arbitration, or, in the alternative, (b) grant them relief from the automatic stay.

## JURISDICTION AND VENUE

7.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein include, without limitation, sections 105 and 362 of the Bankruptcy Code, and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND RELEVANT TO THIS MOTION

8.    For the Court's convenience, these defined terms are used through the Background section:

   a.  The "**CDO Funds**":  the three limited partnerships that certain Lehman Brothers entities formed in 2004 to invest in collateralized debt obligations.

   b.  The "**Fund Investors**":  the third parties that invested in the CDO Funds.

   c.  "**Lehman Brothers Cayman Ltd.**":  Lehman Brothers CDO Associates (Cayman) Ltd., a company organized under the laws of the Cayman Islands that is a special limited partner in the CDO Funds.

13317093

d.  "**LB CDO L.P.**": as defined above, the partnership in which Arbitration Respondents were limited partners, the sole owner of Lehman Brothers Cayman Ltd., and one of the entities on whose behalf LBHI commenced the Arbitration.

e.  "**LB I Group**": as defined above, the general partner of LB CDO L.P. and the other entity on whose behalf LBHI commenced the Arbitration.

f.  The "**Draft LP Agreement**": as defined above, the unsigned, incomplete draft partnership agreement for LB CDO L.P., which LBHI alleges requires Arbitration Respondents to return payments made to them and to arbitrate disputes relating to LB CDO L.P.

g.  The "**Claw-Back Amount**": the compensation paid to Arbitration Respondents approximately 10 years ago that LBHI now demands Arbitration Respondents return to LB CDO L.P. under the Draft LP Agreement.

A.  **The Corporate Structure and Agreements Among and Between the Parties Related to the Arbitration**

9.      According to the Statement of Claim,[2] certain Lehman Brothers entities formed the CDO Funds in 2004.  *See* Boyle Decl., Ex. A (Statement of Claim), ¶¶ 23-25.  A number of third-party investors, i.e., the Fund Investors, invested in the CDO Funds.  *See, e.g.*, *id.*, ¶ 1. Lehman Brothers Cayman Ltd. is a special limited partner in the CDO Funds.  *See id.*, ¶¶ 14, 23-26, 31-32.  LB CDO L.P. is the sole owner of Lehman Brothers Cayman Ltd.  *See id.*, ¶ 27.  LB CDO L.P. has its own general and limited partners.  LB I Group serves as the general partner of LB CDO L.P.  *See id.*, ¶ 28.  Former Lehman Brothers employees, including Arbitration Respondents, are limited partners of LB CDO L.P.  *See id.*, ¶¶ 13, 15-19, 29.[3]

10.     LBHI alleges in the Arbitration that, under the limited-partnership agreements for the CDO Funds (to which Arbitration Respondents were not parties), Lehman Brothers Cayman

---

[2] Arbitration Respondents do not admit any of the allegations in LBHI's Statement of Claim. The allegations are set forth here solely to inform the Court of the nature of the claims LBHI has raised in the Arbitration.

[3] Page seven of the Statement of Claim provides a visual representation of the alleged entity relationships and ownership structure.  *See id.*, at 7.

6

Ltd. was required to return a portion of its incentive-based payments to Fund Investors if the

CDO Funds' performance did not meet certain minimum return thresholds. *See id.*, ¶¶ 48-49 &

n.4. LBHI further alleges that LB CDO L.P. is required to reimburse Lehman Brothers Cayman

Ltd. for the incentive-based payments it returned to Fund Investors. *See id.*, ¶ 52.

### B.  The Lehman Bankruptcy

11.     On September 15, 2008, LBHI and certain affiliates commenced voluntary

bankruptcy proceedings under Chapter 11 of the Bankruptcy Code. *See, e.g.*, *In re Lehman*

*Brothers Holdings Inc.*, Case No. 08-13555 (SCC), ECF No. 1 (Voluntary Pet., dated Sept. 15,

2008). Except for alleging that LB I Group is "an indirect wholly owned subsidiary of LBHI,"

Boyle Decl., Ex. A (Statement of Claim), ¶ 12, the Statement of Claim in the Arbitration does

not otherwise explain LBHI's relationship to the claims at issue in the Arbitration, *see id.* at p. 1

(alleging in the Statement of Claim's preamble, without further explanation, that LBHI does not

bring the Arbitration on its own behalf, but rather in its "capacity as Plan Administrator" on

behalf of LB I Group and LB CDO L.P.).

### C.  The Alleged Claw-Back Obligations

12.     According to the Statement of Claim, the CDO Funds' assets were completely

disposed by May 2015. *See id.*, ¶ 64. Subsequently, the CDO Funds completed final audits, and

found that all three funds failed to meet the minimum return threshold for the Fund Investors.

*See id.*, ¶¶ 64-67. LBHI alleges that, as a result: (1) Lehman Brothers Cayman Ltd. was

obligated to return funds to the Fund Investors, (2) LB CDO L.P. was obligated to reimburse

Lehman Brothers Cayman Ltd., and (3) Arbitration Respondents were obligated under the Draft

13317093

LP Agreement to return approximately $3.1 million (the "Claw-Back Amount") to LB CDO L.P.

to cover that entity's obligations to Lehman Brothers Cayman Ltd.  *See id.*, ¶¶ 67-71.[4]

13.    The Draft LP Agreement makes apparent that the document is not a final or

binding agreement among any parties.  The header on the Draft LP Agreement's cover page

bears the legend "CWT DRAFT 11/23/04."  *See id.*, Ex. C (Draft LP Agreement), at 2.  As LBHI

concedes the Draft LP Agreement was never executed by any party.  *See id.*, Ex. A (Statement of

Claim), ¶ 34.  None of the Arbitration Respondents are named in the Draft LP Agreement.  *See*

*generally id.*, Ex. C (Draft LP Agreement).  LBHI relies on Section 9.4 of the Draft LP

Agreement as the basis for its demand that Arbitration Respondents return the Claw-Back

Amount.  *See id.*, ¶¶20-22.  That section includes a number of bracketed phrases and questions,

presumably from someone who had reviewed the draft, further demonstrating that it was not

intended to reflect a final, binding agreement.  *See, e.g., id.*, Ex. C (Draft LP Agreement),

§ 9.4(a), (b)(ii).

### D.    **LBHI Commences the Arbitration**

14.    On October 27, 2016, LBHI filed its Demand for Arbitration and Statement of

Claim "in its capacity as Plan Administrator under the Modified Third Amended Joint Chapter

11 Plan of [LBHI] and its Affiliated Debtors, on behalf of [LB I Group] and [LB CDO L.P.]."

*See id.*, Ex. A (Statement of Claim), p. 1; Ex. B (Demand for Arbitration), p.1.  The Statement of

Claim alleges that LBHI brought the Arbitration in this capacity "to compel Respondents to . . .

remit the clawback amount so that it may be returned to the Fund Investors."  *See id.*, Ex. A

(Statement of Claim), ¶ 10.  The Statement of Claim asserts claims of breach of contract and

---

[4] LBHI claims that, under the Draft LP Agreement, LB I Group (as general partner of LB CDO
L.P.) was responsible for paying any amounts that the limited partners did not pay.  *See id.*, ¶ 57.

13317093

unjust enrichment, both seeking to recover the Claw-Back Amount.  *See id.*, ¶¶ 78-91.  The

Statement of Claim also seeks a declaration that the Draft LP Agreement requires Arbitration

Respondents to contribute toward LB CDO L.P.'s payment obligation to Lehman Brothers

Cayman Ltd.  *See id.*, ¶¶ 92-93.

15.    The Statement of Claim asserts that the basis for the American Arbitration

Association to have jurisdiction over the Arbitration Respondents is an arbitration provision in

the Draft LP Agreement.  *See id.*, ¶¶ 20-22.  However, Arbitration Respondents are not bound to

arbitrate because the Draft LP Agreement does not reflect a final binding agreement.  *See* Boyle

Decl., ¶ 3.  Among other things, Arbitration Respondents never signed or agreed to the terms of

the Draft LP Agreement, and the Draft LP Agreement is an incomplete draft document that was

never ultimately finalized.  *See id.*

16.    New York law and the Federal Arbitration Act ("FAA") permit Arbitration

Respondents to seek a stay of the arbitration (the equivalent of an injunction) from a court on

these grounds.  *See* N.Y. CPLR § 7503; *Jock v. Sterling Jewelers, Inc.*, No. 08 Civ. 2875(JSR),

2010 WL 5158617, at *2 (S.D.N.Y. Dec. 10, 2010) ("The thrust of most . . . [applicable] cases is

that the Court's power to compel arbitration under the FAA necessarily implies the power to

enjoin arbitration.").  Arbitration Respondents do not believe that the automatic stay does or

should bar them from seeking a stay in New York Supreme Court, but have filed this Motion out

of an abundance of caution.  *See, e.g.*, *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104

(2d Cir. 1990) (creditor with a good faith belief that the automatic stay did not apply still "should

have sought the advice of the bankruptcy court as to the applicability of the automatic stay"); *see

generally* 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any willful violation of a stay

13317093

provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.").

## RELIEF REQUESTED

17.    Arbitration Respondents seek a determination that the automatic stay pursuant to Section 362 of the Bankruptcy Code does not prohibit them from defensively challenging the Arbitration for lack of jurisdiction through a special proceeding to stay the Arbitration in New York Supreme Court.

18.    Alternatively, if the Court determines the automatic stay does apply to the proposed special proceeding, then Arbitration Respondents respectfully request that this Court enter an order granting them relief from the automatic stay.

## ARGUMENT

**I.     The Automatic Stay is Inapplicable to Arbitration Respondents' Proposed Proceeding in New York Supreme Court to Stay the Arbitration.**

19.    Section 362(a) of the Bankruptcy Code identifies eight circumstances in which the filing of a bankruptcy petition operates as a stay of various actions to obtain affirmative relief against the debtor or the debtor's property. *See* 11 U.S.C. § 362(a). None of these categories applies to here.

20.    On their face, five of Section 362(a)'s eight categories could not possibly apply because a petition to stay the Arbitration would not seek to (1) enforce a judgment; (2) create, perfect, or enforce a lien against property of the estate; (3) create, perfect, or enforce against property of the debtor a lien securing a claim that arose before the bankruptcy; (4) collect, assess, or recover a claim; or (5) commence or continue a proceeding before the U.S. Tax Court. *See id.*, § 362(a)(2), (4), (5), (6), (8).

13317093

21.    The remaining categories do not apply either.  Section 362(a)(1) does not apply because Arbitration Respondents do not seek the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."  *Id.*, § 362(a)(1).  Arbitration Respondents would not, and could not, have sought to stay the Arbitration before it was filed on October 27, 2016, well after the Lehman Bankruptcy commenced.  *See id.*; *see also Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.)*, 86 B.R. 33, 37-38 (S.D.N.Y. 1987) ("The automatic stay . . . does not apply to claims that arise post-petition."); *cf. Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) ("The stay simply does not apply to post-bankruptcy events.").

22.    Section 362(a)(3) also does not apply because Arbitration Respondents would not "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  *Id.*, § 362(a)(3).  The sole function of a special proceeding under CPLR Article 75 would be to stay the Arbitration on the grounds that no arbitration agreement exists, not to obtain or control property of LBHI's or any debtor's estate.  To the extent the planned special proceeding indirectly implicates "property" at all, it is the Claw-Back Amount, which LBHI alleges would be "returned to the Fund Investors" if LBHI prevails on its Arbitration claims.  *See* Boyle Decl., Ex. A (Statement of Claim), ¶ 10.  There is no suggestion in the Statement of Claim that the Claw-Back Amount, if recovered, would be property of the debtors in the Lehman Bankruptcy.

23.    The Statement of Claim also alleges that LB I Group is liable for amounts that the limited partners of LB CDO L.P. do not pay.  *Id.* ¶ 57.  To the extent this is true, the Statement of

11

Claim does not allege how this obligation implicates property of the debtors in the Lehman Bankruptcy. LB I Group is not a debtor in bankruptcy, *see* Boyle Decl., Ex. D (LBIG Pacer Search, dated Nov. 8, 2016) (listing LB I Group as an entity associated with the Lehman Bankruptcy, but not as a debtor), and, therefore, has never been among the jointly-administered debtors in these cases. LB CDO L.P. is also not a debtor in bankruptcy. *See id.*, Ex. E (L.P. Pacer Search, dated Nov. 8, 2016) (showing a search for "cdo associates," and no results appearing). LB I Group does not claim to be the transferee of a claim relating to the Draft LP Agreement against any of the jointly-administered debtors, *see* ECF Nos. 40045, 40046, 49018; Claim Nos. 19681, 19682, 68081, 68082, 400073, 400140, 400251, nor have the jointly-administered debtors scheduled a claim in favor of LB I Group relating to the Draft LP Agreement, *see* Schedule Nos. 555194160, 888025310. Nor is there any indication that the jointly-administered debtors have an interest in or have assumed the agreements (and purported agreement) at issue here. *See* ECF No. 21254 (Plan Suppl., filed Oct. 25, 2011), 21665 (Am. No. 1 to the Plan Suppl., filed Nov. 4, 2011), 22156 (Am. No. 2 to the Plan Suppl., filed Nov. 15, 2011), 22590 (Am. No. 3 to the Plan Suppl., filed Nov. 22, 2011), 22742 (Am. No. 4 to the Plan Suppl., Nov. 29, 2011), 22876 (Am. No. 5 to the Plan Suppl., filed Dec. 2, 2011), 22975 (Am. No. 6 to the Plan Suppl., filed Dec. 5, 2011), 22980 (Am. No. 7 to the Plan Supp., filed Dec. 5, 2011). Accordingly, the obligation by LB I Group to cover outstanding payments to the Fund Investors does not appear to implicate LBHI's estate.

24.     The only remaining category is Section 362(a)(7), which stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). This category does not apply here because the Claw-Back Amount at issue in the Arbitration is not owed to the debtor. To the extent the

13317093

Claw-Back Amount is debt, the real parties in interest are the Fund Investors, not LBHI.  *See*

Boyle Decl., Ex. A (Statement of Claim), ¶ 10 ("LBHI brings this arbitration to compel

Respondents to . . . remit the clawback amount so that it may be returned to the Fund

Investors.").  Further, a stay under this category applies only to a setoff of debt that "arose before

the commencement" of the related bankruptcy, *see* 11 U.S.C. § 362(a)(7), which is not the case

here, *see id.*, ¶¶ 64-69 (alleging that the CDO Funds determined that its obligation to return funds

to Fund Investors occurred no earlier than May 2015).  The Arbitration Respondents' alleged

debt could not have existed before April 13, 2016, when they first received demands to pay

proportionate shares of the alleged Claw-Back Amount.  *See id.*, ¶ 72.  And, as discussed above,

LB I Group's own alleged payment obligation does not implicate the debtors' estates.  *See* ¶ 13

n.4, *supra*.

25.     Accordingly, because the LB CDO L.P.'s clawback obligations did not exist until

many years after the Lehman Bankruptcy began, Section 362(a)(7) does not apply here.

26.     Lastly, Arbitration Respondents, like any party to a legal dispute, have the right to

defend themselves.  Arbitration Respondents would be free to argue to the American Arbitration

Association that the Arbitration should be dismissed for lack of jurisdiction, without fear of

violating the automatic stay.  The fact that Arbitration Respondents are exercising their rights to

obtain this same relief from a judicial forum should not affect the automatic stay analysis.  *See,*

*e.g.*, *Tenas-Reynard v. Palermo Tax Inc.*, No. 14 Civ. 6974 (PGG), 2016 WL 1276451, at *7

(S.D.N.Y. Mar. 30, 2016) ("Because debtors that enjoy an automatic stay may pursue claims

against other parties, the stay also does not prevent entities against whom the debtor proceeds in

an offensive posture—for example, by initiating a judicial or adversarial proceeding—from

protecting their legal rights." (internal quotation marks omitted)); *Savage & Assocs., P.C. v.*

*Mandl (In re Teligent, Inc.)*, 459 B.R. 190, 198 n.8 (Bankr. S.D.N.Y. 2011) ("A non-party does

not violate the automatic stay by defending a lawsuit brought against it.").  LBHI should not be

allowed to use Section 362(a) to interfere with Arbitration Respondents' rights to defend

themselves.  *See In re Briarpatch Film Corp.*, 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) ("It has

often been stated that the automatic stay is a shield, not a sword."); *see also Volt Info. Sci., Inc. v.*

*Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[T]he [FAA] does not

require parties to arbitrate when they have not agreed to do so . . . ."); *Sec. Ins. Co. of Hartford v.*

*TIG Ins. Co.*, 360 F.3d 322, 325 (2d Cir. 2004) ("[A]rbitration is a matter of contract and a party

cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

(quotation marks omitted)).

## II.    In the Alternative, the Court Should Provide Arbitration Respondents Relief from the Automatic Stay.

27.     Although Section 362(a) of the Bankruptcy Code imposes a stay on most entities'

judicial proceedings against a debtor once that debtor files a bankruptcy petition, in certain

circumstances, Section 362(d) requires that courts grant entities relief from this automatic stay.

*See* 11 U.S.C. § 362(d); *see also E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d

169, 172 (2d Cir. 1998) (citing 11 U.S.C. § 362(d) and explaining that "[t]he Bankruptcy Code

empowers bankruptcy courts to take measures that grant relief from the automatic stay").

28.     Section 362(d) provides, in pertinent part, that, "[o]n request of a party in interest

and after notice and a hearing, the court shall grant relief from the stay provided under

subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such

stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]

13317093

    (2) with respect to a stay of an act against property under subsection (a) of this
section, if—

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization."

11 U.S.C. § 362(d).

29.    A court must provide mandatory relief to a Section 362(d) movant whenever the

movant is a party in interest that establishes its entitlement to relief under any provision of

Section 362(d).  *See* 11 U.S.C. § 362(d) ("[T]he court *shall* grant relief from the stay . . . ."

(emphasis added)); *see also B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 257 (S.D.N.Y.

1999) ("The subsections of Section 362(d) are disjunctive, and the movant need satisfy only one

of the two to obtain relief.").

30.    Arbitration Respondents are parties in interest for purposes of Section 362(d).

Arbitration Respondents seek relief from the automatic stay to file an application to stay or

enjoin the Arbitration under CPLR Article 75.  Claims based on Article 75 are equitable in

nature.  *See Henderson v. State*, 40 Misc. 3d 638, 641 (N.Y. Ct. Cl. 2012) (explaining that the

applicant sought equitable relief pursuant to CPLR Article 75 to compel arbitration).  Entities

"able to assert an equitable claim against the estate" are "parties in interest."  *In re Ionosphere

Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (citing *Roslyn Savs. Bank v. Comcoach

Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir. 1983)).

31.    While the Second Circuit has held that the Section 362(d) movant "must be either

a creditor or a debtor to invoke the court's jurisdiction," *Comcoach*, 698 F.2d at 573, courts have

held that *Comcoach* does not bar an entity from seeking relief from the automatic stay when

there are no other parties who could seek such relief on the entity's behalf.  *See, e.g.*,

*Commercial Union Ins. Co. v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*, 31 B.R. 965,

971-72 (S.D.N.Y. 1983) ("Since if [movant] cannot seek relief from the stay no one can do so on

its behalf, we would be reluctant to deny [movant] standing as a 'party in interest' unless

compelled by the *Comcoach* decision to do so. . . . [W]e feel no such compulsion. Consequently

we conclude that [movant] has the requisite status as a party in interest to contend that [the

bankruptcy court] abused [its] discretion in failing to modify the bankruptcy stay."); *In re French

Bourekas, Inc.*, 183 B.R. 695, 696-97 (Bankr. S.D.N.Y. 1995) (basing its reasoning on the

analysis of  "party in interest" standing under Section 362(d) from *In re Village Rathskeller, Inc.*,

147 B.R. 665 (Bankr. S.D.N.Y. 1992), and holding that mortgagee of the debtor's landlord had

standing to seek sanctions against debtor's counsel), *aff'd, In re French Bourekas, Inc.*, 195 B.R.

19 (S.D.N.Y. 1996); *Village Rathskeller*, 147 B.R. at 669-71 (Bankr. S.D.N.Y. 1992) (analyzing

section 362(d) standing and holding that, because "no one other than [movant] can assert its

rights," the court "believes that *Comcoach* does not control"); *see also, e.g., Doral Ctr., Inc. v.

Ionosphere, Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 814-15 n.5 (Bankr. S.D.N.Y.

1997) (implying that *Comcoach*'s application may be limited outside Chapter 7 proceedings); *In

re Neuman*, 92 B.R. 598, 600 n.4 (Bankr. S.D.N.Y. 1988) ("This court questions [the]

application of *Comcoach* to a situation in which the Debtor's Trustee has challenged the validity

of the mortgage sought to be foreclosed. If the [] mortgage affects the estate sufficiently for the

Trustee to challenge it, it would appear that symmetry should permit the holder of the mortgage

party in interest status."); *In re Johns-Manville Corp.*, 36 B.R. 743, 748 n.2 (Bankr. S.D.N.Y.

1984) (expressing agreement with the holding in *In re Johns-Manville Corp.*, 31 B.R. 965

(S.D.N.Y. 1983)), *aff'd, Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 52

B.R. 940 (S.D.N.Y. 1984).

32.     Once the movant establishes a *prima facie* case for lifting the stay based on cause

pursuant to Section 362(d)(1), or on the basis that the property is not necessary to an effective

reorganization pursuant to Section 362(d)(2), the burden shifts to the debtor to disprove that such

relief is warranted.  *See* 11 U.S.C. § 362(g) ("In any hearing under subsection (d) . . . of this

section concerning relief from the stay . . . (1) the party requesting such relief has the burden of

proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has

the burden of proof on all other issues."); *see, e.g.*, *Sonnax Indus., Inc. v. Tri Component Prods.

Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("Section

362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the

burden of proof on the debtor for all issues other than the debtor's equity in property." (quotation

marks omitted)); *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010)

(explaining that, pursuant to 362(d)(2), "once a movant establishes that a debtor has no equity in

a property, 'it is the burden of the debtor to establish that the [property] at issue is necessary to

an effective reorganization'" (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest

Assocs.*, 484 U.S. 365, 375-76 (1988)).  To make out its *prima facie* case, a movant must

establish a factual and legal right to the relief it seeks.  *See In re Armenakis*, 406 B.R. 589, 619

(Bankr. S.D.N.Y. 2009).

> **A.  Because the Automatic Stay will Prevent Arbitration Respondents From
> Enforcing Their Right to Oppose the Arbitration, "Cause" Exists Pursuant
> to Section 362(d)(1) to Relieve Arbitration Respondents From the Automatic
> Stay.**

33.     As explained above, Section 362(d)(1) provides that "the court shall grant relief

from the stay . . . (1) for cause . . . ."  11 U.S.C. § 362(d)(1).  The Bankruptcy Code does not

define what constitutes "cause," and case law holds that courts should determine whether

"cause" exists on a case-by-case basis.  *See Lichtenstein*, 238 B.R. at 257-58 ("Neither the statute

13317093

nor the legislative history defines the term 'for cause' . . . .  Thus the facts of each request will determine whether relief is appropriate under the circumstances." (citation and quotation marks omitted)); *see also* H.R. Rep. No. 595, 95th Cong. 1st Sess. 343, reprinted in 1978 U.S.C.C.A.N. 5963, 6300 ("[L]ack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause. . . . Other causes might include the lack of any connection with or interference with the pending bankruptcy case.").

34.    The Second Circuit, in *In re Sonnax Industries*, outlined 12 factors that courts should use to determine whether "cause" exists to grant relief from an automatic stay and permit a party to commence or continue litigation in another forum (the "*Sonnax* Factors").  *See* 907 F.2d at 1286; *see also Papadopoulos v. Gazes (In re Papadopoulos)*, No. 14 Civ. 4750 (ER), 2015 U.S. Dist. LEXIS 27168, at *6-7 (S.D.N.Y. Mar. 4, 2015) ("The Second Circuit . . .  has outlined . . . twelve factors that may be relevant in a court's determination of whether there is 'cause' to grant relief from an automatic stay in order to permit a party to commence or continue litigation in another forum.").  The *Sonnax* Factors include:

(1)    "[W]hether relief would result in a partial or complete resolution of the issues;

(2)    "[L]ack of any connection with or interference with the bankruptcy case;"

(3)    "[W]hether the other proceeding involves the debtor as a fiduciary;"

(4)    "[W]hether a specialized tribunal with the necessary expertise has been established to hear the cause of action;"

(5)    "[W]hether the debtor's insurer has assumed full responsibility for [a defense];"

(6)    "[W]hether the action primarily involves third parties;"

(7)    "[W]hether litigation in another forum would prejudice the interests of other creditors;"

(8)    "[W]hether the judgment claim arising from the other action is subject to equitable subordination;"

(9)    "[W]hether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;"

(10)    "[T]he interests of judicial economy and the expeditious and economical resolution of litigation;"

(11)    "[W]hether the parties are ready for trial in the other proceeding;" and

(12)    The "impact of the stay on the parties and the balance of harms."

*Sonnax*, 907 F.2d at 1286.  Courts need only consider factors that are relevant to the particular case, and are not required to assign each factor equal weight.  *See Papadopoulos*, 2015 U.S. Dist. LEXIS 27168, at *7.

35.    All relevant factors weigh in favor of granting the Motion.  The most important *Sonnax* Factors here are the fourth and the final three.  Arbitration Respondents are entitled to have a court decide whether or not the Draft LP Agreement constitutes an agreement to arbitrate that is enforceable against Arbitration Respondents.  *See Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997) ("When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent clear and unmistakable delegation of that authority to an arbitrator."); *TIG Ins. Co.*, 360 F.3d at 325 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quotation marks omitted)); *see also Primavera Labs., Inc. v. Avon Prods., Inc.*, 297 A.D.2d 505, 505 (1st Dep't 2002) ("It is well settled that a court will not order a party to submit to arbitration absent evidence of that party's unequivocal intent to arbitrate the relevant dispute." (quotation marks omitted)); CPLR § 7503(b) ("[A] party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made . . . .").

36.     The New York Supreme Court, and in particular, the Commercial Division of that court, would be the most efficient and appropriate forum to decide whether an argument to arbitrate exists.  The governing law will be New York procedural law, the FAA, and Delaware or New York common law regarding contract formation.  The Commercial Division has specialized knowledge relating to the applicability of New York contract law (and arbitration clauses in particular).  The action Arbitration Respondents seek to commence based on CPLR Article 75 would be a special proceeding, which is itself an expedited proceeding.  *See, e.g.*, *Ford v. Pulmosan Safety Equip. Co.*, 13 Misc. 3d 1242(A), at *4 (Sup. Ct., Queens Cty. 2006) ("By its nature a special proceeding is an expedited process the hallmarks of which are [s]peed, economy and efficiency." (quotation marks omitted and alteration in original)), *dismissing appeal* 52 A.D.3d 710 (2d Dep't 2008); *see also* CPLR § 7502(a) ("A special proceeding shall be used to bring before a court the first application arising out of an arbitrable controversy which is not made by motion in a pending action.").

37.     If the automatic stay prevents Arbitration Respondents from challenging the Arbitration in New York State court, Arbitration Respondents would seek that relief from this Court.  We are mindful that this Court is already administering the most complicated bankruptcy in U.S. history, and need not add to its considerable Lehman Bankruptcy workload by addressing non-bankruptcy questions of arbitrability and contract formation between non-debtor entities and individuals.  Lifting the stay would ensure that Arbitration Respondents do not burden this Court with these issues.

38.     The remaining, relevant factors also weigh in favor of lifting the stay.  For example, the first *Sonnax* Factor, regarding whether relief would result in a partial or complete resolution of the issues, weighs in favor of granting the Motion because the proposed special

proceeding will resolve whether the Draft LP Agreement requires that the parties proceed with the Arbitration.

39.     The second, sixth, and seventh *Sonnax* factors also weigh in favor of granting relief from the stay because the issue to be decided, *i.e.*, arbitrability of LBHI's claims, do not affect the Lehman Bankruptcy.  The dispositive fact here is that, if the New York State court grants Movant's request to stay the Arbitration, that does not prevent continued litigation regarding the Claw-Back Amount in a court of law.  Further, the Statement of Claim explains that the Debtor instituted the Arbitration to permit it to return the Claw-Back Amount to Fund Investors.  *See* Boyle Decl., Ex. A (Statement of Claim), ¶ 10.  If LBHI is successful in the Arbitration, the Fund Investors would ultimately be the beneficiaries.[5]  *See id.*  The Statement of Claim contains no suggestion that the Fund Investors are creditors of LBHI or other Lehman debtors; instead, like Arbitration Respondents, the Fund Investors are third parties to the Lehman Bankruptcy.  The Arbitration is, at most, only tangentially connected to LBHI's estate, which further weighs in favor of granting the Motion pursuant to the second, sixth and seventh *Sonnax* Factors – *i.e.,* lack of any connection with or interference with the bankruptcy case, whether the action primarily involves third parties, and whether litigation in another forum would prejudice the interests of other creditors.  *See, e.g.*, *In re Consol. FGH Liquidating Trust*, 419 B.R. 636, 649 (Bankr. S.D. Miss. 2009) (holding that the seventh *Sonnax* Factor weighed in favor of lifting the stay because "[t]he Court does not find that litigation . . . in another forum would prejudice the interests of other creditors . . . , given that the posture of the case at this time does not involve other creditors, distributions have largely been made, and few claims remain outstanding").

---

[5] Arguably, LB I Group would also benefit because of its alleged obligation to "cover" the unrecovered Claw-Back Amount.  *See* ¶¶ 13 n.4, *supra*.  For the reasons explained above, however, LB I Group's property does not implicate LBHI's estate.  *See* ¶ 23, *supra*.

21

40.     The third *Sonnax* Factor considers whether the other proceeding involves the

debtor as a fiduciary.  *See Sonnax*, 907 F.2d at 1286.  Generally, "proceedings against a debtor in

his fiduciary capacity should be relieved from the continued application of the stay."  *Colin v.*

*Mfrs. Hanover Trust Co. of N.Y. (In re Colin)*, 35 B.R. 904, 909 (Bankr. S.D.N.Y. 1983)

(explaining, pre-*Sonnax* decision, that "[u]nderlying that rule is the premise that such

proceedings are only remotely connected with the bankruptcy case and therefore bear no

relationship to the purpose of the automatic stay which is debtor protection from his creditors."

(quotation marks omitted)).  LBHI alleges that it is acting in a fiduciary capacity on behalf of the

Fund Investors.  *See* Boyle Decl., Ex. A (Statement of Claim), ¶ 10.  The Statement of Claim is

devoid of any allegations that clearly tie the Claw-Back Amount to the Lehman debtors' estates.

Thus, this factor also weighs in favor of lifting the stay.  *See, e.g.*, *In re Colin*, 35 B.R. at 909-10

(granting the lift stay because the movant's claims in the state action would not be against the

debtor's estate, and instead would only implicate the trustee in his fiduciary capacity).

41.     The eighth *Sonnax* Factor examines whether the judgment claim arising from the

other action is subject to equitable subordination.  Here, the answer is no, which further weigh in

favor of lifting the automatic stay.[6]

### B.   Relief From the Automatic Stay is Independently Warranted Under Section 362(d)(2) Because, by LBHI's Own Allegation, it Does Not Possess Equity in the Claw-Back Amount and, Consequently, Those Funds Have no Effect on the Lehman Bankruptcy.

42.     Section 362(d)(2) of the Bankruptcy Code provides another basis for the Court to

grant Arbitration Respondents relief from the automatic stay.  Pursuant to Section 362(d)(2),

---

[6] The fifth (*i.e.*, whether the debtor's insurer has assumed full defense responsibility) and ninth
(*i.e.*, whether the movant's success in the other proceeding would result in a lien the debtor could
avoid) *Sonnax* Factors are not discussed because they are facially not relevant to this Motion.

13317093

relief is warranted where (A) "the debtor does not have an equity in such property;" and (B) "such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Both elements of the test must be met. *See Lichtenstein*, 238 B.R. at 257.

43.    As explained above, once the movant establishes that the debtor has no equity in the at-issue property, the burden then shifts to the debtor, who must establish that the property at issue is necessary to an effective reorganization. *See* 11 U.S.C. § 362(g) ("[T]he party requesting [the lift stay] [] has the burden of proof on the issue of the debtor's equity in property; and . . . the party opposing such relief has the burden of proof on all other issues."); *see, e.g.*, *Tornheim v. Source One Mortg. Servs. Corp.*, No. 95 Civ. 1057 (AGS), 1996 U.S. Dist. LEXIS 9198, at *4 (S.D.N.Y. July 1, 1996) (affirming lift stay order pursuant to 11 U.S.C. § 362(d)(2), and explaining that "[t]he debtor in a bankruptcy proceeding bears the burden of proof as to whether property of the estate is necessary to an effective reorganization").

44.    Here, both prongs of Section 362(d)(2) are satisfied with respect to LBHI's interest in the Claw-Back Amount. First, with respect to Section 362(d)(2)(A), LBHI admits that it is pursuing the Arbitration to permit it to return the Claw-Back Amount to Fund Investors. *See* Boyle Decl., Ex. A (Statement of Claim), ¶ 10. The Fund Investors are not creditors of LBHI's estate, and the Statement of Claim does not allege that LBHI, or any other jointly-administered Lehman debtor, has equity in the Claw-Back Amount. *See, e.g.*, ¶ 23, *supra*. For the same reasons, pursuant to Section 362(d)(2)(B), the Claw-Back Amount is not necessary to an effective reorganization of the jointly administered debtors' estates.

45.    Accordingly, if the stay applies to the Proposed Action, this Court should grant Arbitration Respondents' request for relief from the automatic stay.

13317093

**NO PREVIOUS REQUEST**

46.     Arbitration Respondents have not made a previous request for the relief sought

herein to this or any other Court

**NOTICE**

47.     Pursuant to the Second Amended Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and

Case Management Procedures, dated June 17, 2010 [ECF No. 9635], and Bankruptcy Rule 2002,

Arbitration Respondents, by and through their undersigned counsel, will provide notice of this

Motion to (i) counsel for the Lehman Bankruptcy debtors, (ii) the Creditors' Committee; (iii) the

Office of the United States Trustee for the Southern District of New York, and (vi) LBHI's

Arbitration counsel.  Arbitration Respondents will also email a copy of these motion papers to

counsel for LBHI in this Arbitration.  In light of the nature of the relief requested herein,

Arbitration Respondents will notify all other parties requesting notice under Bankruptcy Rule

2002 via the ECF Filing System.  Arbitration Respondents respectfully submit that no other or

further notice need be given and that the notice that Arbitration Respondents will provide is

sufficient for purposes of this Motion.

13317093

## CONCLUSION

WHEREFORE, Arbitration Respondents respectfully requests that this Court enter an

Order substantially in the form submitted herewith, granting the relief requested herein, and such

other and further relief as the Court deems just and proper.

Dated:  New York, New York
          November 9, 2016

HOGUET NEWMAN REGAL &
KENNEY, LLP

By:  /s/
        John P. Curley
10 East 40th Street
New York, New York 10016
Telephone:    (212) 689-8808
Fascimile:     (212) 689-5101

*Counsel for Cynthia Zamora Daniel and
Christopher Montalvo*

Dated: New York, New York
          November 9, 2016

VENABLE LLP

By:
        Edward P. Boyle
        David N. Cinotti
        Michael A. Guerra
Rockefeller Center
1270 Avenue of the Americas, 24th Flr.
New York, New York 10020
Telephone:    (212) 307-5500
Facsimile:    (212) 307-5598

*Counsel for Goran Puljic, T.K. Narayan,
and Scott Snell*

25

13317093