EXHIBIT 2



LCOHAN@COHANLAWGROUP.COM  |  CELL 404.513.3711
MEMBER: AMERICAN BOARD OF TRIAL ADVOCATES

January 21, 2016

<u>**Via Email**</u>
The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004
scc.chambers@nysb.uscourts.gov

Lawrence S. Brandman
Managing Director, Head of Bankruptcy Strategic Advisory
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, NY 10020
lawrence.brandman@lehmanholdings.com

Joseph T. Moldovan
Chair, Bankruptcy and Restructuring Practice
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
jmoldovan@morrisoncohen.com

**Re: Home Lenders of Georgia, LLC/Lehman Brothers Holdings INC./Case No. 08-13555**

Dear Judge Chapman:

     This firm represents Home Lenders of Georgia, LLC ("Home Lenders") with regard to its dispute with Lehman Brothers Holdings Inc. ("LBHI"). As an initial matter, we dispute that our client is subject to the jurisdiction of this Court and we reserve the right to move for dismissal of Home Lenders as a party to this proceeding on that ground. As more fully discussed below, the purpose of this letter is to judiciously and expeditiously resolve a dispute that has arisen between LBHI and Home Lenders, specifically that Home Lenders does not believe it should be required nor would it prove beneficial to mediate with LBHI. Per the recommendation of your Law Clerk, Kevin O'Neill, this letter serves to lay out the dispute and proposed resolution that Home Lenders is requesting from the Court, that Home Lenders be excused from mandatory mediation of the dispute per the Court's July 18, 2014 Order. (Doc 45277).

     Our understanding of the dispute is that LBHI is currently in bankruptcy proceedings and the Court entered an Order on July 18, 2014, requiring approximately 3,000 counterparties, which involve more than 11,000 mortgage loans, to mediate alleged indemnification and/or reimbursement claims brought by LBHI. (Doc 45277). Home Lenders is one of the counterparties LBHI has identified. On November 12, 2015, Home Lenders received notice that

The Honorable Shelley C. Chapman
Lawrence S. Brandman
Joseph T. Moldovan
January 21, 2016
Page 2 of 5

LBHI was bringing claims against Home Lenders alleging that Home Lenders breached its obligations under the Broker Agreement between LBHI and itself in regards to **three** mortgages it submitted to LBHI in 2007 for underwriting and funding.

Our client disputes that it breached its Broker Agreement between LBHI and asserts that the claims brought by LBHI regarding the three mortgages are not viable.  Our client's position regarding the three claims is more fully discussed below.

Notably, after communication with the assigned mediator, Joseph T. Moldovan, and LBHI, it is clear that the parties are nowhere near reaching a settlement in regards to this dispute.  Copies of the January 2016 email communications between LBHI, Home Lenders, and the mediator are attached as Exhibit A.  Home Lenders is unwilling to offer any monies to settle this dispute and intends to litigate this matter, if necessary, in Bankruptcy Court in Georgia.[1]  Lehman Brother's Counsel, Lawrence Brandman, acknowledged that the Parties "disagree" and that "our positions are so far apart."  *See* Ex. A.  As such, mediation at this time would not be fruitful and would be a waist of both Parties' resources.  Furthermore, our client is a small family owned business operated in Georgia.  To mediate these empty claims in New York would not only be a waste of our client's financial resources, it would create an undue hardship on our client.

It is because of this standstill that Home Lenders requests the Court to excuse Home Lenders from its July 18, 2014 Order requiring mandatory mediation.

For your convenience, the 3 claims brought by LBHI are summarized below, including Home Lender's position regarding each.

**Claim 1, Johnston $71,001.26 (LBHI Loan #45762648):** In this claim, LBHI contends that Home Lenders misrepresented the property's owner-occupied status.  See Attachment A to LBHI's November 12, 2015 Notice to Home Lenders attached as Exhibit B.  In short LBHI has flatly misrepresented the occupancy of the subject property and clearly did not and does not know if the borrower, Mr. Johnston, actually occupied the subject property.  Mr. Johnston did.

It is worth noting that LBHI never actually asserted where Mr. Johnston lived, but only noted some document discrepancies.

Mr. Johnston's loan was closed March 30, 2007.  The collateral was 118 Old Granger Road.  According to LBHI, Mr. Johnston's March 4, 2009 Bankruptcy Petition stated that he resided at 40 Garmon Rd from August 2005 to July 2008.  The credit report pulled February 15, 2007, shows Mr. Johnston residing at the same 40 Garmon Rd address from September 2005 to June 2006.  Of course the time frame in the credit report is irrelevant.  The Fannie Mae Loan

---

[1] The claims asserted by LBHI would almost surely force our client to seek bankruptcy protection.

The Honorable Shelley C. Chapman
Lawrence S. Brandman
Joseph T. Moldovan
January 21, 2016
Page 3 of 5

Application Form 1003 ("1003") which Mr. Johnston filled out stated that Mr. Johnston lived at 6800 Red Maple, his current residence at the time he filled out the application, from 2003 to 2007. The 1003 is not inconsistent with the March 31, 2007 occupancy of the subject property.

Notwithstanding the circumstantial evidence upon which LBHI relies, Mr. Johnston did occupy the subject property during the relevant time. Mr. Johnston's signed statement is attached as Exhibit C. Unlike LBHI, we simply asked Mr. Johnston.

**Claim 2, Irons $195,785.96 (LBHI Loan #45223500)**: The issue in this claim is that the borrower, Mr. Irons, allegedly obtained a $72,000 Mortgage a month before the subject loan was closed and that he did not disclose the loan. LBHI alleges that Home Lenders:

A.    "Failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower." *See* Ex. B.

B.    "Broker also failed to review the accuracy and completeness of all information provided by the borrower." *See* Ex. B.

Not alleged is any particular thing that Home Lenders was specifically required by the subject Broker Agreement to do that it failed to do. The reason for the missing specifics is that there was nothing required by the Broker Agreement that Home Lenders failed to do. This loan was a No-Doc loan, a loan that does not require the borrower to provide documentation of his/her income to lenders and does not require much documentation because the assessment of the loan is primarily focused on the borrower's credit score, so there was minimal underwriting in any event.

The subject loan was closed January 31, 2007. Credit reports were pulled on January 9, and 16, 2007. Neither report listed the undisclosed loan. The report on which LBHI is relying was not pulled until June 5, 2008 (1.5 years after the fact). LBHI has pointed to no source of information available to Home Lenders at the time that would have revealed the existence of the other loan.

As has been stated elsewhere by LBHI, "[b]ecause the subject mortgage was delivered under a No Doc program, the credit score is a highly reliant factor in determining eligibility for these types of loan programs." *See* Ex. B. Mr. Iron's credit score made him eligible for the loan and LBHI has failed to identify anything that Home Lenders could have done to determine otherwise.

In short, LBHI has neither alleged nor identified anything specific that Home Lenders should have done. LBHI has failed to identify any specific provision in the Broker Agreement that was breached and that caused any loss, and has, thus failed to identify any basis for its claim.

**Claim 3, Vidaurreta $108,141.06 (LBHI Loan #45418373):** The issue is that the borrower, Ms. Vidaurreta, purchased another property, in addition to the underlying subject

The Honorable Shelley C. Chapman
Lawrence S. Brandman
Joseph T. Moldovan
January 21, 2016
Page 4 of 5

property, and obtained two additional mortgages all on the same day.  LBHI made the same two boilerplate allegations in Claim 2, including a third as to Home Lenders.  LBHI alleges that Home Lenders:

A.    "Failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower."  *See* Ex. B.

B.    "Broker also failed to review the accuracy and completeness of all information provided by the borrower."  *See* Ex. B.

C.    LBHI alleges that the subject loan was to be an owner occupied purchase money mortgage and that the borrower did not occupy the subject property.  *See* Ex. B.

Not alleged is any particular thing that Home Lenders was specifically required by the subject Broker Agreement to do that it failed to do.  The reason for the missing specifics is that there was nothing required by the Broker Agreement that Home Lenders failed to do.  This loan was a No-Doc loan, so there was minimal underwriting.

LBHI has also failed to identify any means by which Home Lenders could have learned about other loans or the purchase of another property made by Ms. Vidaurreta in a different state on the same day.  Certainly there was no way to guaranty that Ms. Vidaurreta would actually occupy the subject property.    More significantly, however, LBHI has asserted only circumstantial evidence about the occupancy of the subject property.  LBHI has failed to provide any direct evidence of whether Ms. Vidaurreta did or did not occupy the subject property.  The danger of relying on that kind of circumstantial evidence in lieu of direct evidence is made apparent by Mr. Iron's statement, Ex. C, in regards to Claim 1.

As has been stated elsewhere by LBHI, "[b]ecause the subject mortgage was delivered under a No Doc program, the credit score is a highly reliant factor in determining eligibility for these types of loan programs."  Ms. Vidaurreta's credit score made her eligible for the loan and LBHI has failed to identify anything that Home Lenders could have done to determine otherwise.  Nor has LBHI offered any evidence that Home Lenders made a lending decision in this instance based on information other than the credit score.

In short, LBHI has neither alleged nor identified anything specific that Home Lenders should have done.  LBHI has failed to identify any specific provision in the Broker Agreement that was breached and that caused any loss, and has, thus failed to identify any basis for its claims.  It is because these reasons stated above that Home Lenders is unwilling to offer any monies to settle these claims and that mediation would be a wasted effort for all parties involved.

For all the reasons stated above, Home Lenders requests the Court to excuse Home Lenders from its July 18, 2014 Order requiring mandatory mediation.

The Honorable Shelley C. Chapman
Lawrence S. Brandman
Joseph T. Moldovan
January 21, 2016
Page 5 of 5

We look forward to hearing your guidance on the above issue.

Thank you.

Sincerely,

Louis R. Cohan /ejk

# Exhibit A

**Subject:**   Re: Lehman Home Lenders of Georgia LLC

**Date:**   Monday, January 18, 2016 at 10:59:48 AM Eastern Standard Time

**From:**   Louis Cohan

**To:**   Brandman, Lawrence, Moldovan, Joseph T.

**CC:**   Michelle Wein, Shannon Clutter, McCann Garner, Laura, Erin Krinsky

Larry:

I don't really understand your email.  Your client is entitled to nothing and my client is unwilling to pay anything.  Mediation is futile.  Tomorrow, we will request guidance from the Court.

Thank you.

_____
Louis R. Cohan
Cohan Law Group, LLC
3340 Peachtree Rd., N.E. Suite 2570
Atlanta, GA 30326
p: 404-891-1770 l c: 404-513-3711 l f: 404-891-5094
Email: lcohan@cohanlawgroup.com
Twitter:  @CohanLawGroup

Attention: The information contained in this E-mail message is attorney privileged and confidential information intended only for the use of the individual(s) named
above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message.
Thank you.

**From:** "Brandman, Lawrence" <lawrence.brandman@lehmanholdings.com>

**Date:** Wednesday, January 13, 2016 at 10:02 PM

**To:** Louis Cohan <lcohan@cohanlawgroup.com>, "Moldovan, Joseph T." <jmoldovan@morrisoncohen.com>

**Cc:** Michelle Wein <mwein@cohanlawgroup.com>, Shannon Clutter <sclutter@cohanlawgroup.com>, "McCann Garner, Laura" <laura.mccann@lehmanholdings.com>

**Subject:** RE: Lehman Home Lenders of Georgia LLC

It appears that we will have to agree to disagree, and since our positions are so far apart mediation may be the best option. Responses for each loan have been provided below.  If your client would like to resolve this matter instead of mediating, you or your client can contact Laura McCann (720-

945-5841) directly. Larry

<u>Irons Loan – LBHI Loan No. 145223500</u>

With regard to this loan, you stated below that "credit score is the credit score" and that Broker could have nothing to change it. LBHI's position is not that the broker had an obligation to "change" the credit score. Rather it is LBHI's position that Broker had an obligation under Section two of the Broker Agreement to make diligent inquiry when red flags appear that would indicate the loan may be high risk.    The fact that the borrower had 16 credit inquiries listed on the Broker's credit report, all within the previous few months, should at the very least have triggered the loan officer to question the credit inquiries and document the response.  You also state that since this "loan was a no-doc loan so there was minimal underwriting in any event." Actually, in a no-doc loan, "diligent inquiry" into the information provided is actually even higher because of the limited information provided by the borrower.

<u>Vidaurreta Loan – LBHI Loan No. 45418373</u>

The argument you raise here are the same as those in the Irons Loan, ie that the "credit score is the credit score" and that "loan was a no-doc loan so there was minimal underwriting in any event."  Again, LBHI's position is that Broker failed to perform due diligence when red flags appeared on the credit report broker pulled. In this instance, there were 6 credit inquiries in the previous month and half.  As stated above, especially in a no-doc loan, "diligent inquiry" into the borrower's background on the limited information being relied on to originate the loan is much higher than a full document loan.

<u>Johnston Loan – LBHI Loan No. 45762648</u>

Your statement below seems inconsistent and I fail to understand your comment below that the "time frame in the credit report is irrelevant."  The  discrepancies between the borrower's occupancy statement on the 1003 (that he resided at 6800 Red Maple from 2003-2007) and the credit report which shows that he occupied 40 Garmon between 9/2005-6/2006, are  clearly a red flag that should have been followed up by the broker, to at the very least question the discrepancy, especially in light of the fact that the 40 Garmon property is not listed on the 1003 real estate schedule.

You have also attached a written statement from the borrower that he resided at 118 Granger Road from 3/30/2007 through the beginning of 2009.  The borrower's affidavit is suspect, especially since it directly contradicts his bankruptcy filing filed under oath. I believe at trial his bankruptcy documents will be given more credence.

---

**From:** Louis Cohan [mailto:lcohan@cohanlawgroup.com]
**Sent:** Tuesday, January 12, 2016 4:29 PM
**To:** Brandman, Lawrence; Moldovan, Joseph T.

**Cc:** Michelle Wein; Shannon Clutter
**Subject:** Re: Lehman Home Lenders of Georgia LLC

Joe and Larry:

By no later than Monday I apparently meant Tuesday.  Apologies.

We need to be practical, and my client is a tiny family owned business.  Mediation in New York is just not in the cards.  That said, let me address the claims very briefly and as simply as I can.  We really do not think any of the claims are viable.  If there is litigation it is most likely going to end up in a bankruptcy court here in Atlanta.

Keep in mind there is a great deal that I just do not know about what has happened in the Lehman bankruptcy litigation or why or how a Bankruptcy Court Judge in New York would have ever signed an Order requiring my client to mediate the subject 3 claims in New York.

For convenience, I have attached Ex. A to the ADR Notice.  As you can see there are 3 "claims."  I will address each briefly, below – saving the best for last:

**Irons $195,785.96** – The issue is that Mr. Irons allegedly obtained a $72,000 Mortgage a month before the subject loan was closed and that he did not disclose the loan.  It is alleged that Home Lenders of Georgia (HLGA):

A."Failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower."
B."Broker also failed to review the accuracy and completeness of all information provided by the borrower."

Not  alleged is any particular thing that HLGA was specifically required by the subject Broker Agreement to do that it failed to do.  The reason for the missing specifics is that there was nothing required by the Broker Agreement that HLGA failed to do.  This loan was a no-doc loan so there was minimal underwriting in any event.

The subject loan was closed January 31, 2007.  Credit reports were pulled on January 9, and on January 16, 2007.  Neither report listed the undisclosed loan.  The report on which LBHI is relying was not pulled until June 5, 2008 (1.5 years after the fact).  LBHI has pointed to no source of information available to HLGA at the time that would have revealed the existence of the other loan.

As has been stated elsewhere by LBHI, "Because the subject mortgage was delivered under a No Doc program, the credit score is a highly reliant factor in determining eligibility for these types of loan programs."  The credit score was the credit score and LBHI has failed to identify anything that Broker could have done to change it.

In short, LBHI has neither alleged nor identified anything specific that HLGA should have done.  LBHI has failed to identify any specific provision in the Broker Agreement that was breached and that caused any loss, and has, thus failed to identify any basis for its claim.

**Vidaureta $108,141.06** – The issue is that the borrower purchased another  property, in addition to the subject and obtained two additional mortgages all on the same day.  LBHI made the same two boilerplate allegations + a third as

to HLGA:

A.
"Failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower."
B.
"Broker also failed to review the accuracy and completeness of all information provided by the borrower."
C.
In addition to the above, LBHI alleges that the subject loan was to be an owner occupied purchase money mortgage and that the borrower did not occupy the subject property.

Not alleged is any particular thing that HLGA was specifically required by the subject Broker Agreement to do that it failed to do.  The reason for the missing specifics is that there was nothing required by the Broker Agreement that HLGA failed to do.  This loan was a no-doc loan so there was minimal underwriting in any event.

LBHI has failed to identify any means by which Broker could have learned about other loans or the purchase of another property in a different state on the same day.  Certainly there was no way to guaranty that the borrower would actually occupy the subject property. More significantly, however, LBHI has asserted only circumstantial evidence about the occupancy of the subject property.  LBHI has failed to provide any direct evidence of whether the borrower did or did not occupy the subject property.  The danger of relying on that kind of circumstantial evidence in lieu of direct evidence will be apparent in the third discussion, below.

As has been stated elsewhere by LBHI, "Because the subject mortgage was delivered under a No Doc program, the credit score is a highly reliant factor in determining eligibility for these types of loan programs."  The credit score was the credit score and LBHI has failed to identify anything that Broker could have done to change it.  Nor has LBHI offered any evidence that it made a lending decision in this instance based on information other than the credit score.

In short, LBHI has neither alleged nor identified anything specific that HLGA should have done.  LBHI has failed to identify any specific provision in the Broker Agreement that was breached and that caused any loss, and has, thus failed to identify any basis for its claim.

**Johnston $71,001.26** – The contention is that HLGA misrepresented the "property's owner-occupied status." In short LBHI has flatly misrepresented the occupancy of the subject property and clearly did not and does not know if the Borrower actually occupied the subject property.  He did.  LBHI is not to be rewarded for its "ready, fire, aim" litigation approach.

It is worth noting that LBHI never actually asserted where the borrower lived, but only some document discrepancies.

The loan was closed March 30, 2007.  The collateral was 118 Old Granger Road.  According to LBHI Johnston's March 4, 2009, Bankruptcy Petition stated that the borrower resided at 40 Garmon Rd from August 2005 to July 2008.  The credit report pulled February 15, 2007 shows the borrower residing at the same 40 Garmon Rd address from September 2005 to June 2006.  Of course the time frame in the credit report is irrelevant.  The 1003 stated that Johnston lived at 6800 Red Maple from 2003 to 2007.  The 1003 is not inconsistent with the March 31, 2007

occupancy of the subject property.

Notwithstanding the circumstantial evidence upon which LBHI relies, Mr. Johnston did occupy the collateral during the relevant time.  Mr. Johnston's signed statement is attached.  Unlike LBHI, we simply asked Mr. Johnston.

The three claims are specious.  I am unclear how or why the Bankruptcy Court has any jurisdiction to require my client to mediate in New York.  Notwithstanding, mediation will be futile because HLGA has no intention of offering any money to settle the three claims summarized, above.  This intention is not the result of any bad faith, but rather a reflection of the lack of merit for the three claims.

Given the foregoing, it is my sincere hope that LBHI will withdraw its claims.  Short of that I propose we jointly request to be excused from mediation on these claims.  If LBHI chooses to file suit, my client will vigorously defend.

I look forward to your thoughts.  Thank you.


Louis


_____
Louis R. Cohan
Cohan Law Group, LLC
3340 Peachtree Rd., N.E. Suite 2570
Atlanta, GA 30326
p: 404-891-1770 l c: 404-513-3711 l f: 404-891-5094
Email: lcohan@cohanlawgroup.com
Twitter:  @CohanLawGroup


Attention: The information contained in this E-mail message is attorney privileged and confidential information intended only for the use of the individual(s) named
above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the sender by reply E-mail and destroy all copies of the original message.
Thank you.

---

**From:** "Brandman, Lawrence" <lawrence.brandman@lehmanholdings.com>
**Date:** Wednesday, January 6, 2016 at 9:14 AM
**To:** Louis Cohan <lcohan@cohanlawgroup.com>, "Moldovan, Joseph T." <jmoldovan@morrisoncohen.com>
**Cc:** "Dawn M. Munoz" <dawn.munoz@hlgeorgia.com>, Shannon Clutter <sclutter@cohanlawgroup.com>
**Subject:** RE: Lehman Home Lenders of Georgia LLC

Thanks for post.

---

**From:** Louis Cohan [mailto:lcohan@cohanlawgroup.com]
**Sent:** Wednesday, January 06, 2016 9:13 AM

**To:** Brandman, Lawrence; Moldovan, Joseph T.
**Cc:** Dawn M. Munoz; Shannon Clutter
**Subject:** Re: Lehman Home Lenders of Georgia LLC

Joe and Larry:

I expect to be in touch with you no later than Monday.

Louis

_____
Louis R. Cohan
Cohan Law Group, LLC
3340 Peachtree Rd., N.E. Suite 2570
Atlanta, GA 30326
p: 404-891-1770 l c: 404-513-3711 l f: 404-891-5094
Email: lcohan@cohanlawgroup.com
Twitter:  @CohanLawGroup

Attention: The information contained in this E-mail message is attorney privileged and confidential information intended only
for the use of the individual(s) named
above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution
or copy of this communication is strictly prohibited. If you have received this communication in error, please contact the
sender by reply E-mail and destroy all copies of the original message.
Thank you.

---

**From:** "Brandman, Lawrence" <lawrence.brandman@lehmanholdings.com>
**Date:** Tuesday, January 5, 2016 at 9:02 PM
**To:** "Moldovan, Joseph T." <jmoldovan@morrisoncohen.com>, Louis Cohan <lcohan@cohanlawgroup.com>
**Subject:** RE: Lehman Home Lenders of Georgia LLC

Where does this stand? Larry

---

**From:** Brandman, Lawrence
**Sent:** Monday, January 04, 2016 11:20 AM
**To:** 'Moldovan, Joseph T.'; 'lcohan@cohanlawgroup.com'
**Subject:** RE: Lehman Home Lenders of Georgia LLC

Those dates work for the Estate. Larry

---

**From:** Moldovan, Joseph T. [mailto:jmoldovan@morrisoncohen.com]
**Sent:** Monday, December 21, 2015 6:08 PM

**To:** Brandman, Lawrence; 'lcohan@cohanlawgroup.com'
**Subject:** Lehman Home Lenders of Georgia LLC

Lawrence S Brandman
Managing Director,
Head of Bankruptcy Strategic Advisory
Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York   10020
Tel.: 646-285-9650
lawrence.brandman@lehmanholdings.com

Louis R. Cohan
Cohan Law Group
3340 Peachtree Road, Suite 2570
Atlanta, GA 30326
Tel: 404-891-1770
Fax: 404-891-5094
lcohan@cohanlawgroup.com

Dear Larry and Louis –

Pursuant to the Alternative Dispute Resolution Procedures Order for Indemnification Claims Of the Debtors Against Mortgage Loan Sellers, entered in LEHMAN BROTHERS HOLDINGS INC., et al., Chapter 11 Case No. 08-13555 (SCC) in the United States Bankruptcy Court for the Southern District of New York on July 18, 2014 ("Mediation Order"),  I have been assigned the mediation of your matter. I am looking forward to meeting you and your clients and assisting you in consensually resolving your dispute.

I propose that the Mediation take place in my office commencing at 10 am on either of the following dates:

February 10
February 11

Please let me know which dates work best for you.

I have run a conflicts check against the name Home Lenders of Georgia LLC and Lehman determined that we have no conflicts. Please advise if there are any other parties we need to check.

I will forward a Mediation Agreement tailored specifically to this matter that is consistent with and incorporates the Mediation Order shortly.

After the administrative matters have been concluded and Lehman has provided the electronic Mediation Materials, my expectation would be to have separate preliminary discussions with each side after reviewing the file, a few days in advance of when we get together. If either party has material it would like brought to

my attention that is not included in the Mediation Materials provided by LBHI, but may help facilitate a resolution, such materials should be provided to me when LBHI transmits the Mediation Materials and will not be shared by me with the other party, absent consent.

Typically, on the day of the mediation I have all the parties including clients meet in a joint session at which each party presents its case in a manner designed to communicate positions and issues both to me but primarily to the clients on the other side. I would appreciate it if counsel jointly decide how much time to allocate to the presentation. Then I would separate the parties and move from one party to the other until, hopefully, we have an agreement.

Again, I look forward to working with you and helping to resolve your matter. Please do not hesitate to call if you have any questions.

*Joe*

*Joseph T. Moldovan*
*Chair, Bankruptcy and Restructuring Practice*
*Morrison Cohen LLP*
*909 Third Avenue*
*New York, NY 10022*
*Tel: 212.735.8603*
*Cell: 917.693.9682*
*Fax: 917.522.3103*
*jmoldovan@morrisoncohen.com*
*www.morrisoncohen.com*

This transmittal and/or attachment (s) may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you have received this transmittal and/or attachment(s) in error, please notify us immediately by reply or by telephone (call us collect at 212-735-8600) and immediately delete this message and all of its attachments. Thank you. We take steps to remove metadata in attachments sent by email, and any remaining metadata should be presumed inadvertent and should not be viewed or used without our express permission. If you receive an attachment containing metadata, please notify the sender immediately and a replacement will be provided.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed.

This email may contain legally privileged or confidential information and may not be disclosed or forwarded to anyone else without authorization from the originator of this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.
Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged or confidential information and may not be disclosed or forwarded to anyone else without authorization from the originator of this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.
Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged or confidential information and may not be disclosed or forwarded to anyone else without authorization from the originator of this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.

# Exhibit B

**Attachment A**
**Home Lenders of Georgia, LLC**

| Barr Name | LBH Loan # | Seller Loan # | Property Address | City | State | Zip | Claim Reason (1) | Claim Reason (2) | Disputed Amount |
|---|---|---|---|---|---|---|---|---|---|
| Irons | 45235500 | 45235500 | 866 CAPITAL VIEW AVENUE | ATLANTA | GA | 30318 | MISREP-DEBTS: Home Lenders of Georgia, LLC closed loan 45235500 on January 31, 2007. (LBH-HLG_0000414 to LEH-HLG_0000419) Loan documents, including Borrower's loan application, failed to disclose or otherwise include Borrower's other mortgage debt obligation, in breach of Home Lenders' obligations under Section 2 and/or representations and warranties in Sections 8(g) and 8(h) of the Broker Agreement. According to a credit report obtained by Fannie Mae, the borrower obtained one additional mortgage one month prior to the subject transaction. (LEH-HLG_0000639 to LEH-HLG_0000648) This undisclosed liability (LEH-HLG_0000144 to LEH-HLG_0000147), resulted in $72,000 of additional debt. This undisclosed mortgage resulted in a misrepresentation of the borrower's financial condition and unacceptable additional layering of risk. Broker failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower. Broker also failed to review the accuracy and the completeness of all information provided by the borrower. LBH seeks indemnification in the amount of $595,785.96, representing the amount it was liable to Fannie Mae in consideration of this loan. (Fannie Mae-LBH Settlement Agreement) LBH also seeks prejudgment interest and reserves the right to seek attorneys' fees and any other relief permitted by law. | | $595,785.96 |
| Johnston | 45762648 | 45762648 | 118 OLD GRANGER ROAD | HIRAM | GA | 30141 | MISREP-OCCUPANCY: Home Lenders of Georgia, LLC Closed Loan 45762648 on March 30, 2007 (LEH-HLG_0001005 to LEH-HLG_0001007). The loan documents, including Borrower's loan application, misrepresented the property's owner-occupied status in breach of Home Lenders' obligations under Section 2 and/or representations and warranties in Sections 8(g) and 8(h) of the Broker Agreement. The borrower's bankruptcy petition showed that the borrower resided at the 40 Garmon Road property as the borrower's primary residence from 8/2005-7/2008 (LEH-HLG_0001173 to LEH-HLG_0001223). The Broker's credit report pulled 2/15/2007 (LEH-HLG_0000862 to LEH-HLG_0000869) shows the borrower residing at the 40 Garmon Rd residence from 9/05 to 6/06 and yet the 1003 states that the borrower had lived at 6800 Red Maple for the previous four year (2003-2007). This should have raised a red flag for the Broker. Broker failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representation sand warranties of the borrower. Broker also failed to review the accuracy and the completeness of all information provided by the borrower. LBH seeks indemnification in the amount of $571,001.26, representing the amount it was liable to Fannie Mae in consideration of this loan. (Fannie Mae-LBH Settlement Agreement) LBH also seeks prejudgment interest and reserves the right to seek attorney's fees and any other relief permitted by law. | | 571,001.26 |

| Vidaurreta | 45418373 | 45418373 162 LOMA DRIVE | MCDONOUGH GA | 30252 | MO&E DEBTS: Home Lenders of Georgia, LLC-Closed loan 45418373 on April 13, 2007 (LEH-HLG_0001509) to LEH-HLG_0001510. Issuer breach of Home Lenders' obligations under Section 2 and/or warranties in Sections 8(g) and 8(h) of the Broker Agreement. A DC credit report and a Leos Nexis report show that the borrower purchased another property ( 4125 29th Street, SW, Lehigh Acres, FL) on the same day and obtained two additional mortgages closed on the same day as the subject property, LEH-HLG0001727 to LEH-HLG_0001724, and LEH-HLG_0001704 to LEH-HLG_0001715). These liabilities, resulted in $260,000 additional debt. The borrower failed to provide a factual financial statement regarding her financial condition. These undisclosed mortgages resulted in a misrepresentation of the borrower's financial condition and unacceptable additional layering of risk. Because the subject mortgage was delivered under a No Doc program, the credit score is a highly reliant factor in determining eligibility for these type programs. The failure to disclose debt invalidates the credit score. As such, the lender did not have correct financial information at time of loan approval to accurately assess the eligibility of the mortgage loan. Broker failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representation sand warranties of the borrower. Broker also failed to review the accuracy and the completeness of all information provided by the borrower. LBHI seeks indemnification in the amount of $108,141.06, representing the amount it was liable to Fannie Mae in consideration of this loan. (Fannie Mae-LBHI Settlement Agreement) LBHI also seeks prejudgment interest and reserves the right to seek attorneys' fees and any other relief permitted by law. | MO&E OCCUPANCY: Home Lenders of Georgia, LLC-Closed loan 45418373 on April 13, 2007 (LEH-HLG_0001509). The loan documents, including Borrower's loan application, misrepresented the property's owner-occupied status in breach of Home Lenders' obligations under Section 2 and/or representations and warranties in Sections 8(g) and 8(h) of the Broker Agreement. The subject mortgage originated as an owner occupied purchase money mortgage. A DC credit report and a Leos Nexis report show that the borrower purchased another property ( 4125 29th Street, SW, Lehigh, Acres, FL) on the same day. (LEH-HLG0001727 to LEH-HLG_0001724, and LEH-HLG_0001704 to LEH-HLG_0001715). The borrower could not occupy both properties at the same time. We obtained additional property information data from public record sources which revealed the borrower never connected the utilities at the subject property in her name (LEH-HLG_0001700 to LEH-HLG_0001725). The documentation obtained revealed that the borrower continued to reside at the address disclosed as the primary residence (10823 NW 7th Street #11, Miami, FL) on the loan application at the time the loan was originated. In addition, LexisNexis utility locator loss the borrower's primary residence as well (LEH-HLG_0001700 to LEH-HLG_0001715). The person occupying the collateral per accurint.com person search is Xenia Sanchez. Occupancy is from 12/2005-11/2007. No record of the borrower ever occupying the collateral per accurint.com person search (LEH-HLG_0001725). Broker failed to make diligent inquiry into all facts and circumstances in making the loan, including all material representation sand warranties of the borrower. Broker also failed to review the accuracy and the completeness of all information provided by the borrower. LBHI seeks indemnification in the amount of $108,141.06, representing the amount it was liable to Fannie Mae in consideration of this loan. (Fannie Mae-LBHI Settlement Agreement) LBHI also seeks prejudgment interest and reserves the right to seek attorneys' fees and any other relief permitted by law. |
|  |  |  |  |  |  | **Total** |

$374,928.28

$108,141.06

CONFIDENTIAL - SUBJECT TO F.R.E. 408

# Exhibit C

January 6, 2016


To whom it may concern:


I, George Johnston, made an application with Home Lenders of Georgia in February of 2007 to purchase a home at 118 Granger Road, Hiram, GA.  I closed on that home on March, 30, 2007 and occupied that home from the date of closing until approximately the beginning of 2009.  Due to uncontrollable circumstances, I had to let my home go in a bankruptcy.  I am happy to answer any questions you have regarding the loan and my occupancy of the home.  Please feel free to call me at 678-360-1017.


Sincerely,


George Marshall Johnston

01/06/16