UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

IN RE:

LEHMAN BROTHERS HOLDINGS INC., et al.,

    Debtors,

--------------------------------------------------------x

SPANISH BROADCASTING SYSTEM, INC.,

    Appellant-Claimant,

    -against-

LEHMAN BROTHERS HOLDINGS INC.,

    Appellee-Plan Administrator.

--------------------------------------------------------x

No. 16-cv-0487 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/13/16

**DECISION AND ORDER AFFIRMING DECISION OF BANKRUPTCY COURT**

McMahon, C.J.:

    Appellant-Claimant Spanish Broadcasting System, Inc. ("Spanish Broadcasting"), brings this appeal seeking reversal of a January 7, 2016 order (the "Order") issued by the U.S. Bankruptcy Court for the Southern District of New York (Chapman, J.) (the "Bankruptcy Court"), granting the motion of Appellee-Plan Administrator Lehman Brothers Holdings Inc. ("LBHI") for summary judgment and disallowing certain claims filed by Spanish Broadcasting. The damages sought by Spanish Broadcasting arise out of a breach of a credit agreement (the "Credit Agreement") between, among others, Spanish Broadcasting and LBHI's subsidiary, Lehman Commercial Paper Inc. ("LCPI").

    For the reasons stated in the Bankruptcy Court's well-reasoned opinion, the Order is affirmed.

1

## Background and Procedural History

The facts of this case were summarized in detail by the Bankruptcy Court, so I will only review the most relevant ones here. The Credit Agreement at issue was entered into on or around June 10, 2005 and included a term loan of $325 million (the "Term Loan") and a revolving credit facility of $25 million. The revolving credit facility permitted Spanish Broadcasting to withdraw up to $25 million ($10 million of which would come from LCPI and the remaining $15 million of which would come from other lenders). The proceeds were to be used "for working capital purposes, capital needs and general corporate purposes" of Spanish Broadcasting. (Garcia Decl. Ex. B § 4.16(b)).

The Credit Agreement also included a damages waiver provision (the "Damages Waiver") that stated:

> [Spanish Broadcasting] hereby irrevocably and unconditionally . . . waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding . . . any special, exemplary, punitive or consequential damages.

(*Id.* § 10.12(e).)

Shortly after entering into the Credit Agreement, Spanish Broadcasting entered into a swap agreement (the "Swap") with Lehman Brothers Special Financing Inc. ("LBSF"), another LBHI subsidiary.

On September 15, 2008, LBHI and certain of its subsidiaries (not including LBSF or LCPI) filed voluntary bankruptcy petitions under Chapter 11.

As of September 30, 2008, Spanish Broadcasting held approximately $34 million in cash. (Garcia Decl. ¶ 13.) It was also guarantor under a note between SBS Miami Broadcast Center, Inc. and Wachovia Bank, National Association (the "MBC Guaranty") that required Spanish Broadcasting to hold at least $8.5 million in cash, leaving $25.5 million available. (*Id.* ¶ 11.)

Spanish Broadcasting had a number of impending obligations, including a $5 million interest payment on the Term Loan due in December 2008, an $18.5 million secured promissory note (the "Mega TV Note") due to mature on January 2, 2009, and a $2.5 million dividend on preferred stock, payable in cash or in kind, due on January 15, 2009. (*Id.* ¶¶ 10, 12.)

In light of these impending obligations, Spanish Broadcasting submitted a draw request (the "Draw Request") for the full $25 million from the revolving credit facility on October 3, 2008. It intended to use the funds to pay off the $18.5 million Mega TV Note, terminate the Swap with LBSF for $6 million, fund $4 million in advertising and marketing expenses, and pay the $5 million Term Loan interest payment. The proposed borrowing date would be October 6, 2008. (*Id.* ¶ 14.)

On October 3, 2008, LBSF filed its Chapter 11 petition, and on October 5, 2008, LCPI filed its petition. Accordingly, LCPI did not fund its $10 million portion of the Draw Request, but did facilitate the funding of the remaining $15 million portion from the other lenders. (*Id.* ¶ 15.)

As a result of its failure to obtain the $10 million in financing from LCPI, Spanish Broadcasting initially claimed damages of more than $55 million, an amount that appears to have varied throughout this litigation. At issue on appeal are $41.5 million in alleged damages: (1) $24.5 million in EBITDA[1] losses resulting from Spanish Broadcasting's lack of $4 million for advertising and marketing expenses; and (2) approximately $17 million in damages arising from Spanish Broadcasting's inability to terminate the Swap for $6 million.

---

[1] EBITDA means: "A company's income without deductions for interest expenses, taxes, depreciation expenses, or amortization expenses, used as an indicator of a company's profitability and ability to service its debt." Black's Law Dictionary (10th ed. 2014).

3

Spanish Broadcasting and LCPI reached an agreement on Spanish Broadcasting's repayment of the outstanding balance of the Term Loan and agreed to terminate the Credit Agreement on February 7, 2012 pursuant to a payoff letter (the "Payoff Letter"). The Payoff Letter included the following language:

> [A]ll outstanding Loans and all other amounts owing by [Spanish Broadcasting] under the Credit Agreement (including all principal, accrued interest and fees) shall be paid in full and the Credit Agreement and all obligations of [Spanish Broadcasting] and the other Loan Parties thereunder and under the other Loan Documents shall be terminated other than contingent obligations which expressly survive the terms of the Credit Agreement or such other Loan Documents, including without limitation, Section 10.5 of the Credit Agreement . . . .

(Gittlitz Decl. Ex. A § 1(a).)

On July 10, 2012, LBHI filed an objection to Spanish Broadcasting's claim, and after discovery related to the Payoff Letter, LBHI filed for summary judgment, arguing that Spanish Broadcasting's alleged damages were barred by the Damages Waiver, which waived Spanish Broadcasting's right to pursue "any special, exemplary, punitive or consequential damages" arising from the Credit Agreement. On January 7, 2016, the Bankruptcy Court granted summary judgment in favor of LBHI on this ground and disallowed and expunged Spanish Broadcasting's claims.

## Standard of Review

A district court reviews an appeal of a Bankruptcy Court's grant of summary judgment *de novo*, drawing all factual inferences in favor of the non-moving party. *See, e.g., Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, 309 B.R. 830, 835 (S.D.N.Y. 2003). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

4

**Discussion**

This is a straightforward case, and the Bankruptcy Court was correct to grant summary judgment in LBHI's favor. Spanish Broadcasting's Damages Waiver irrevocably waived its right to pursue the consequential damages that make up the bulk of its claim, and that waiver was not rescinded by operation of the Payoff Letter.

There is no question that the Damages Waiver exists and was valid when Spanish Broadcasting signed it as part of the Credit Agreement. The Damages Waiver clearly waived Spanish Broadcasting's right to, among other things seek "consequential damages" arising under the Credit Agreement. Spanish Broadcasting's only argument is that the waiver was terminated by the Payoff Letter, which provides that "all obligations" of Spanish Broadcasting "shall be terminated" except for those that "expressly survived" under the Credit Agreement.

The irrevocable Damages Waiver did not constitute a future "obligation" that was terminated by the Payoff Letter. Spanish Broadcasting offers no legal support for its argument to the contrary, other than citations to Black's Law Dictionary. What Spanish Broadcasting ignores is that all definitions of "obligation" indicate that it is a *future* or *continuing* duty to act or not act, while a waiver of claims (like the Damages Waiver at issue) is an intentional or voluntary "relinquishment or abandonment" of a then-existing right. *See* Black's Law Dictionary (10th ed. 2014). The Damages Waiver is not styled as a future obligation, but instead states that Spanish Broadcasting "hereby irrevocably and unconditionally . . . *waives*" – present tense – its right to consequential damages. The Damages Waiver remains in force despite the Payoff Letter.

Spanish Broadcasting's alleged damages are classic consequential damages under New York law and are unquestionably covered by the Damages Waiver. Consequential, or indirect, damages are losses "that do not flow directly and immediately from an injurious act but that result indirectly from the act." Black's Law Dictionary (10th ed. 2014). Lost profits as a result of

5

business relationships with third parties are a prototypical example of consequential damages. As the Second Circuit explained in *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007):

> Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost."

That is precisely what Spanish Broadcasting alleges happened here. The EBITDA damages allegedly arose from Spanish Broadcasting's inability to invest in advertising and marketing, resulting in a "loss of profits on collateral business arrangements." *Id.* Similarly, the Swap Damages are damages that resulted from a separate contract (the Swap with LBSF), and are also consequential damages. As the funds from the revolving credit facility were free to be used for "general corporate purposes," there can be no argument that Spanish Broadcasting specifically bargained for these types of profits when entering the Credit Agreement.

Spanish Broadcasting has presented nothing that raises a disputed issue of material fact on these questions, and LBHI was, therefore, entitled to summary judgment expunging Spanish Broadcasting's claims.

## Conclusion

For the reasons stated above, the Bankruptcy Court's decision is AFFIRMED.

Dated: December 13, 2016

_____
U.S.D.J.

BY ECF TO ALL COUNSEL