WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Pkwy., Suite 100
Greenwood Village, Colorado 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (admission pending)
Caleb Durling
Corey Longhurst (application to be filed)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.,*<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 08-13555 (SCC)** |
| LEHMAN BROTHERS HOLDINGS INC.,<br><br>Plaintiff,<br><br>-against-<br><br>MORTGAGE CAPITAL ASSOCIATES, INC.,<br><br>Defendant. | **Adv. Pro. No. _____** |

**SECOND AMENDED ADVERSARY COMPLAINT**

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for its Complaint against Defendant Mortgage Capital Associates, Inc. ("Defendant") alleges upon knowledge as to itself and its own conduct, and upon information and belief as to all other matters, as follows:

**NATURE OF ACTION**

1. In this action, LBHI seeks to enforce its right to contractual indemnification for liabilities, losses, damages, claims, judgments and any other costs, fees and expenses LBHI incurred as a result of Defendant's sale and/or submission of defective mortgage loans in breach of Defendant's representations, warranties, obligations, and/or covenants and/or for which LBHI incurred liability due to Defendant's acts, failures to act and/or omissions (the "Defective Loans").

2. LBHI sold the Defective Loans to the Federal National Mortgage Association ("Fannie Mae") and/or the Federal Home Loan Mortgage Corporation ("Freddie Mac") under agreements that included representations and warranties about the Defective Loans that were coextensive with those made by Defendant. LBHI retained the right to seek indemnification from Defendant in the event it became liable for certain indemnification events. After Fannie Mae and Freddie Mac discovered that the mortgage loans breached certain of those representations and warranties, Fannie Mae and Freddie Mac made claims upon LBHI for losses suffered on the Defective Loans. In January and February 2014, respectively, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved settlements between (i) LBHI and Fannie Mae (ECF No. 42153), and (ii) LBHI and Freddie Mac (ECF No. 42754), triggering LBHI's indemnification claims under the Agreements, as defined

2

below, with Defendant.

3. By this action, LBHI seeks to recover money damages from Defendant for the indemnification claims.

## PARTIES

4. On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. LBHI is a Delaware corporation with its principal place of business in New York, New York.

5. Defendant is organized in and does business within the United States.

## JURISDICTION AND VENUE

6. This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court, dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012. The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

8. Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

9. This Court has personal jurisdiction over Defendant under Rule 7004(f) of the Bankruptcy Rules. In addition, this Court has personal jurisdiction over Defendant because Defendant is organized in and does business within the United States, and because the transactions giving rise to this controversy occurred in the United States.

## FACTUAL BACKGROUND

10. At all relevant times, LBHI engaged in the purchase and sale of mortgage loans

directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"), then sold the loans to third parties, including Fannie Mae and Freddie Mac.

11.  At all relevant times, Defendant engaged in mortgage origination, as well as the sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

### A. The Governing Agreements

12.  This dispute arises out of Defendant's sale of residential mortgage loans to LBHI's assignor, LBB, under one or more Loan Purchase Agreements with LBB (each a "LPA").[1]

13.  The dates of the relevant LPA is listed in Exhibit A hereto.

14.  The LPA specifically incorporates the terms and conditions of the Seller's Guide of loan administrator, Aurora Loan Services LLC (the "Seller's Guide", together with the LPA, "Agreements") which sets forth additional duties and obligations of Defendant.[2]  The Seller's Guide in its entirety is valid and binding on Defendant.

15.  The Agreements set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and conveyance of the mortgage loans and mortgage loan documents.

16.  The Agreements also set forth Defendant's duties and obligations regarding underwriting; representations and warranties concerning the parties and individual mortgage loans purchased, sold or submitted; and Defendant's indemnification obligations.

---

[1] Although the language of certain sections referenced throughout this Complaint may vary slightly from LPA to LPA, it is generally consistent in all material respects.

[2] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time the Defendant sold the loan to LBB.  Although the language of certain sections referenced throughout this Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

4

17. Pursuant to the Agreements, Defendant sold Defective Loans to LBB that resulted in LBHI being exposed to and incurring liability, as described further below.

18. The parties agreed that Defendant's obligations would extend to any subsequent purchasers and/or assignees, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." *See* Seller's Guide § 8.

19. In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the Defective Loans.

20. Further, the Seller's Guide provides that LBHI, as a subsequent holder of any Mortgage Loan, "shall be a third party beneficiary" of the LPA. *See* Seller's Guide § 711.

**B.     Defendant's Representations Under the LPA**

21. Accordingly, LBHI as the "assignee" and third-party beneficiary of the LPA, and as "subsequent holder" of the Defective Loans, is entitled to all the benefits of the Agreements, including the right to contractual indemnification.

22. With respect to each of the loans sold to LBHI (as, among other things, LBB's assignee) under the LPA, Defendant made a number of representations, warranties, and covenants concerning the quality, characteristics, and underwriting of the mortgage loans; the property securing the mortgage loans; and the borrowers.

23. Specific examples of Defendant's representations, warranties and covenants include, but are not limited to, the following:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).

5

Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration. Seller's Guide § 703(18).

The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan . . . . Seller's Guide § 703(21).

The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities. The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable. Seller's Guide § 703(24).

Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents

6

and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide. The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate. Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any security thereof. The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan. Seller's Guide § 703(36).

24. To the extent Defendant was also the underwriter of certain loans as permitted under the Seller's Guide or other applicable agreements, Defendant additionally represented, warranted and covenanted in Section 717(1) of the Seller's Guide that with respect to such loans:

All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

25. Defendant represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the LPA. *See* Seller's Guide § 702(5).

26. LBHI (as, among other things, LBB's assignee) relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans. Specifically, Section 701 of the Seller's Guide provides that:

Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance

> with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

**C.    Defendant's Indemnification Obligation Under the LPA**

27.    Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses and expenses it might sustain as a result of the Defective Loans, including attorneys' fees. Section 711 of the Seller's Guide, entitled "Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent. In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder . . . .

**D.    LBHI's Settlements With Fannie Mae and Freddie Mac**

28.    When LBB acquired loans from Defendant and others, it typically did not hold those loans on its books. The loans it acquired from Defendant and other entities, including the Defective Loans, were sold to LBHI, and then sold to other industry participants, including Fannie Mae and Freddie Mac.

29.    When LBHI sold the Defective Loans to Fannie Mae and/or Freddie Mac, it relied on information provided to LBB by Defendant, and it made representations and warranties to Fannie Mae and/or Freddie Mac based, in part, on the representations Defendant made to LBB.

30.    Eventually, Fannie Mae and/or Freddie Mac discovered breaches of

8

representations, warranties and/or covenants in the Defective Loans.

31. Fannie Mae and Freddie Mac filed proofs of claim in LBHI's bankruptcy proceeding to recover for losses on the Defective Loans and other loans sold to LBB.

32. Many of the loans at issue in the Fannie Mae and Freddie Mac proofs of claims, and all of the Defective Loans, contained defects which caused LBHI to incur losses, judgments, costs, expenses, attorneys' fees, and liability to Fannie Mae and Freddie Mac.

33. LBHI was forced to defend against and eventually settle with Fannie Mae and Freddie Mac.

34. The Bankruptcy Court approved LBHI's settlements with Fannie Mae and Freddie Mac, including loan-level damages amounts for each Defective Loan (as shown in Exhibit A of each settlement agreement), finding the settlements to be "reasonable and appropriate."

35. The types of defects which caused LBHI to incur expenses, costs, losses, judgments, attorneys' fees, and liability to Fannie Mae and Freddie Mac, include but are not limited to defects concerning the quality and characteristics of the loans, the creditworthiness of the borrowers, and the value and characteristics of the collateral, such as with respect to the income, employment, assets, and debt obligations of the borrowers, the intended and actual occupancy status of the properties, the appraised value of the properties and compliance with appraisal standards, among other things; defects concerning underwriting and the collection and review of the loan application and supporting documentation; and defects concerning origination practices generally, including compliance with applicable laws, rules, regulations, decrees, pronouncements, directives, orders and guidelines.

36. As it concerns Defendant specifically, Exhibit B attached hereto identifies each of

the Defective Loans, and provides a non-exclusive list of the defects causing LBHI to incur liability, expenses, losses, judgments, attorneys' fees, and other costs for each Defective Loan. A general description of the defects identified in Exhibit B is included in Exhibit C attached hereto.

37. The liability incurred by LBHI to Fannie Mae and/or Freddie Mac was the result of Defendant's acts, failures, omissions, and breaches of its representations, warranties, obligations, and/or covenants, which representations, warranties, obligations, and/or covenants are co-extensive with the representations and warranties LBHI made to Fannie Mae and Freddie Mac.

### E. Defendant's Obligation to Indemnify LBHI

38. Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee) from liabilities, claims, judgments, losses, attorneys' fees, and expenses it might sustain as a result of the Defective Loans. *See* Seller's Guide § 711.

39. LBHI has demanded that Defendant indemnify LBHI, which demands have been refused by Defendant.

40. Defendant's failure and refusal to indemnify LBHI for LBHI's liability to Fannie Mae and/or Freddie Mac constitute breaches of Defendant's contractual indemnification obligations.

41. Pursuant to the Agreements, the laws of the State of New York govern this action.

42. All conditions precedent to bringing this action have been met, occurred or have been waived.

### FIRST CLAIM FOR RELIEF

### (Contractual Indemnification)

43. LBHI hereby incorporates by reference the allegations set forth above as though

10

fully set forth herein.

44.     The Agreements are valid and enforceable contracts that are binding upon Defendant.

45.     LBHI and/or LBB has substantially performed all of their obligations under the Agreements.

46.     Defendant owes LBHI indemnity for its liabilities, losses, claims, attorneys' fees, judgments and any other costs, fees and expenses as to the Defective Loans.

47.     Defendant failed to indemnify LBHI for its liabilities, losses, claims, attorneys' fees, judgments and any other costs, fees and expenses as to the Defective Loans.

48.     Defendant's breaches of the Agreements and other acts and/or omissions as to the Defective Loans resulted in LBHI incurring liability and/or losses in an amount to be determined at trial, comprised of the settlement amount for each of the Defective Loans as identified in the court-approved Fannie Mae and/or Freddie Mac settlement agreement, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs, and all other fees and costs provided by the Agreements.

## **PRAYER FOR RELIEF**

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against Defendant

a)      For all damages arising from or relating to Defendant's obligations under the indemnification provisions of the Agreements, in an amount to be determined at trial;

b)      For recoverable interest;

c)      For the costs and expenses incurred by LBHI in enforcing Defendant's obligations under the Agreement, including attorneys' fees and costs and any expert witness fees incurred in litigation; and

11

  d)  Providing for such other relief as the Court deems just and proper.

Dated: New York, New York
   December 27, 2016

              */s/ William A. Maher*
              William A. Maher
              Paul R. DeFilippo
              James N. Lawlor
              Adam M. Bialek
              Mara R. Lieber

              WOLLMUTH MAHER & DEUTSCH LLP
              500 Fifth Avenue
              New York, New York 10110
              Telephone:  (212) 382-3300
              Facsimile:   (212) 382-0050

              Michael A. Rollin
              Maritza Dominguez Braswell (admission pending)
              Caleb Durling
              Corey Longhurst (application to be filed)

              ROLLIN BRASWELL FISHER LLC
              8350 E. Crescent Pkwy., Suite 100
              Greenwood Village, Colorado 80111
              Telephone: (303) 945-7415
              Facsimile: (303) 974-7468

              *Counsel for Lehman Brothers Holdings Inc.*