UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re:                                                            )
                                                                  )   Chapter 11
                                                                  )
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                          )   Case No. 08-13555 (SCC)
                                                                  )
                                                                  )
                                                                  )
      Debtors                                                     )   (Jointly Administered)
-------------------------------------------------------------------x

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claims referenced in this evidence and notice.

Seaport Global Securities LLC
Name of Transferee

Farallon Capital Partners, LP
Name of Transferor

Name and Address where notices to transferee
should be sent:

Case No.: 08-13555
Debtor: Lehman Brothers Holdings Inc.

**Seaport Global Securities LLC**
Attn: Jonathan Silverman
360 Madison Avenue, 22nd Floor
New York, NY 10017

| Claim Number | Transferred Amount |
|--------------|--------------------|
| 32145        | $5,549,870.00      |
| 33007        | $2,690,951.00      |
| 67146        | $31,245,082.48     |
| 67902        | $8,593,229.45      |

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____   Date: 12/29/2016
        Jonathan Silverman
        General Counsel
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

NYC:375125.1

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM

TO:      THE DEBTOR AND THE BANKRUPTCY COURT

1. For value received, the adequacy and sufficiency of which are hereby acknowledged, Farallon Capital Partners, LP (the "Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Seaport Global Securities LLC (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof for the purchase. price specified in a separate communication by and between Seller and Purchaser dated as of the date hereof (the "Purchase Price"), (a) an undivided 100% interest to the extent relating to Seller's record and beneficial ownership in the securities (each, a "Purchased Security") specified in Schedule 1 attached hereto (each, a "Purchased Claim"), (b) all Seller's right, title and interest in and to Proof of Claim Number 32145 (the "RIC 111 Proof of Claim") originally filed by RIC III plc The U.S. Dollar Cash Plus Fund against Lehman Brothers Holdings Inc. (the "Debtor") in the proceedings for reorganization of Debtor (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08- 13555 (SCC), but only to the extent related to each Purchased Claim, (c) all rights and benefits of Seller relating to each Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to each Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way each Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101 (5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with each Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to each Purchased Claim and (iv) any and all of Seller's right, title and interest in, to and under the Agreement and Evidence of Transfer of Claim dated as of October 7, 2010 (the "Prior Agreement") between JPMorgan Chase Bank, N.A. ("Prior Seller") and Seller, together with the transfer agreements, if any, under which Seller, Prior Seller or any other prior seller acquired the rights and obligations underlying or constituting a part of each Purchased Claim, (d) any and all proceeds of any of the foregoing, and-relating to each Purchased Claim (all of the foregoing, collectively, as described in clauses (a), (b), (c) and (d), the "Transferred Claims"). The Transferred Claims shall exclude the Prior Distributions (as hereinafter defined), and Seller shall retain all right, title and interest therein. In addition, Purchaser is not assuming any liabilities or obligations of the Seller.

2. Seller hereby represents and warrants to Purchaser that: (A) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer of Claim ("Agreement"); (B) Seller has not engaged, and will not engage, in any acts, conduct or omissions, or had, has or will have any relationship with the Debtor or its affiliates, that will result in Purchaser receiving In respect of the Transferred Claims proportionately. less in payments or distributions or less favorable treatment than other general unsecured creditors of the Debtor; and (C) Seller has provided to Purchaser a true and complete copy of the Prior Agreement.

3.      Seller hereby further represents and warrants to Purchaser that: (a) assuming the truth and accuracy of the representations of Prior Seller in the Prior Agreement, the RIC III Proof of Claim was duly and timely filed in accordance with the Court's order setting the deadline for filing proofs of claim and the applicable procedures set forth in that certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Dkt. No. 4271 ); (b) to the extent it received such title to the Transferred Claims

pursuant to the Prior Agreement Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (c) assuming the truth and accuracy of the representations of Prior Seller in the Prior Agreement, the RIC III Proof of includes each Purchased Claim specified in Schedule 1 attached hereto; and (d) other than the distributions set forth on Schedule 2 hereto (the "Prior Distributions") and the distribution totaling $93,701.99 ("Eleventh Distribution") and received on or about October 6, 2016, which Eleventh Distribution shall be credited to the Purchase Price, no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claims.

4.      Seller represents and warrants to Purchaser, and Purchaser, by its acceptance of this Agreement and the payment of the Purchase Price, represents and warrants to Seller, that (i) it is a sophisticated buyer or seller (as the case may be) with respect to the Transferred Claims, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the business and financial condition of the Debtor to make an informed decision regarding the Transferred Claims, and (iii) it has independently and without reliance on the other party hereto, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of Seller and Purchaser has relied upon the express representations and warranties made by the other party hereto in this Paragraph 2.   Each of Seller and Purchaser acknowledges that the other has not given it any investment advice or opinion on whether this Agreement is prudent. Purchaser has not relied, and will not rely, on Seller to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the Debtor. Each of Seller and Purchaser acknowledges that (i) the other currently may have, and later may come into possession of, information regarding the Transferred Claims that is not known to it and that may be material to a decision to enter into this Agreement ("Excluded Information"), (ii) it has determined to enter into this Agreement notwithstanding its lack of knowledge of the Excluded Information, and (iii) the other party hereto shall have no liability to it, and it hereby, to the extent permitted by law, waives and releases any claims it may have against the other of Seller and Purchaser, with respect to the nondisclosure of the Excluded Information, provided, however, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement.

5.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Seller acknowledges and understands that Purchaser may file a copy of this Agreement with the Court, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Tran360 Madison Avenue sferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing the Debtor, the Court and all other interested parties that all further notices relating to the Transferred Claims, and all payments or distributions of money or property in respect of the Transferred Claims, shall be delivered or made to the Purchaser; provided, however that the Purchaser shall promptly provide notice to the Seller upon entry of such order.

6.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations, warranties, covenants and agreements made herein.

7.    Seller has transferred, or shall transfer via the Depository Trust Company (the "DTC") as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account as Purchaser may designate in writing to Seller against payment by Purchaser of the Purchase Price. With respect to the Purchased Security with CUSIP 52525MJF6 (which is "frozen" at the DTC), Seller covenants and agrees to use its commercially reasonable efforts to cause the transfer of such Purchased Security via the DTC to Purchaser, or Purchaser's designee as promptly as practicable. Without limitation to any of Seller's obligations herein, until such time as such Purchased Security can be transferred to Purchaser via the DTC, upon receipt by Seller of the Purchase Price, Seller shall be deemed to have granted to Purchaser an undivided 100% participation interest in and to such Purchased Security. This Agreement supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the purchase and sale of each Purchased Security.

8.    Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms of this Agreement. Seller shall promptly (but in any event no later than three (3) business days following receipt) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser.

9.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed in the signature page below.

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this 29th day of __December 2016.

**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name:
Title:        Monica R. Landry
By:            Managing Member
               Farallon Partners, LLC
               its General Partners

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111

**SEAPORT GLOBAL
SECURITIES LLC**

By: _____
Name:        Jonathan Silverman
Title:        General Counsel

Address:

**Schedule 1**

**Purchased Claim**

$5,549,870.00 of $100,533,412.85 (the accrued amount of the RIC III Proof of Claim).

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper, issued 02/13/2008 | 52525KAB8 | Lehman Brothers Holdings Inc. | $312,736 | 2.875% (which Prior Seller assumes to have been the last rate set under the Security) | 03/11/2009 | $313,520 |

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper | 52525MJF6 | Lehman Brothers Holdings Inc. | $5,236,350 | 2.8% (which Prior Seller assumes to have been the last rate set under the Security) | 09/15/2008 | $5,236,350 |

Distributions:

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|-------|-------|---------------------|---------------------|----------------------|
| 32145 | 52525KAB8 | 4/17/2012 | 6.02382200% | $ 18,885.88 |
| 32145 | 52525KAB8 | 10/1/2012 | 3.81459200% | $ 11,959.50 |
| 32145 | 52525KAB8 | 4/4/2013 | 4.97325800% | $ 15,592.15 |
| 32145 | 52525KAB8 | 10/3/2013 | 5.74109100% | $ 17,999.46 |
| 32145 | 52525KAB8 | 4/3/2014 | 6.37161900% | $ 19,976.29 |
| 32145 | 52525KAB8 | 10/2/2014 | 4.63132400% | $ 14,520.12 |
| 32145 | 52525KAB8 | 4/2/2015 | 3.18263300% | $ 9,978.19 |
| 32145 | 52525KAB8 | 10/1/2015 | 2.38166500% | $ 7,466.99 |
| 32145 | 52525KAB8 | 3/31/2016 | 0.67976000% | $ 2,131.18 |
| 32145 | 52525KAB8 | 6/16/2016 | 0.99648800% | $ 3,124.18 |

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|-------|-------|---------------------|---------------------|----------------------|
| 32145 | 52525MJF6 | 4/17/2012 | 6.02382200% | $ 315,428.40 |
| 32145 | 52525MJF6 | 10/1/2012 | 3.81459200% | $ 199,745.38 |
| 32145 | 52525MJF6 | 4/4/2013 | 4.97325800% | $ 260,417.19 |
| 32145 | 52525MJF6 | 10/3/2013 | 5.74109100% | $ 300,623.61 |
| 32145 | 52525MJF6 | 4/3/2014 | 6.37161900% | $ 333,640.27 |
| 32145 | 52525MJF6 | 10/2/2014 | 4.63132400% | $ 242,512.33 |
| 32145 | 52525MJF6 | 4/2/2015 | 3.18263300% | $ 166,653.80 |
| 32145 | 52525MJF6 | 10/1/2015 | 2.38166500% | $ 124,712.31 |
| 32145 | 52525MJF6 | 3/31/2016 | 0.67976000% | $ 35,594.61 |
| 32145 | 52525MJF6 | 6/16/2016 | 0.99648800% | $ 52,179.59 |

## AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM

TO:      THE DEBTOR AND THE BANKRUPTCY COURT

1.  For value received, the adequacy and sufficiency of which are hereby acknowledged, Farallon Capital Partners, LP (the "Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Seaport Global Securities LLC (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof for the purchase price specified in a separate communication by and between Seller and Purchaser as of the date hereof (the "Purchase Price"), (a) an undivided 100% interest to the extent relating to Seller's record and beneficial ownership in the securities (each, a "Purchased Security") specified in Schedule 1 attached hereto (each, a "Purchased Security"), (b) all of Seller's right, title and interest in and to Proof of Claim Number 33007 (the "CEBFT Proof of Claim"), originally filed by CEBFT Russell Short-Term Investment Fund STIF a ("Original Claimant") against Lehman Brothers Holdings Inc. (the "Debtor") in the proceedings for reorganization of Debtor (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (SCC), but only to the extent relating to each Purchased Claim, (c) all rights and benefits of Seller to the extent relating to each Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to each Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way each Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with each Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to each Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the Agreement and Evidence of Transfer of Claim, dated as of October 7, 2010 (the "Immediate Prior Agreement"), between JPMorgan Chase Bank, N.A. (the "Immediate Prior Seller") and Seller, together with the transfer agreements, if any, under which the Immediate Prior Seller or any other prior seller (each a "Prior Seller") acquired the rights and obligations underlying or constituting a part of each Purchased Claim (the "Prior Agreements"), and (d) any and all proceeds of any of the foregoing to the extent relating to each Purchased Claim (all of the foregoing, collectively, as described in clauses (a), (b), (c) and (d), the "Transferred Claims").   In addition, Purchaser is not assuming any liabilities or obligations of the Seller.

2.  Seller hereby represents and warrants to Purchaser that: (i) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement, and this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms; (ii) Seller has not engaged, and shall not engage, in any acts, conduct or omissions, and Seller does not have, has not had, and shall not have, any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other claims of the same class or type as claims comprising the Purchased Claim; and (iii) Seller has provided to Purchaser a true, correct and complete copy of the Immediate Prior Agreement; (d) to the extent it received such title to the Transferred Claims pursuant to the Immediate Prior Agreement, Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (e) assuming the truth and accuracy of the representations and warranties of the Immediate Prior Seller in the Immediate Prior Agreement, the Proof of Claim includes each Purchased Claim specified in Schedule 1 attached hereto; and (f) other than the distributions set forth on Schedule 2 hereto (the "Prior Distributions") and distribution totaling $45,433.03 ("Eleventh Distribution") and received on or about October 6, 2016, which Eleventh Distribution shall be credited to the Purchase Price, no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claims.

3.  Seller represents and warrants to Purchaser, and Purchaser, by its acceptance of this Agreement and the payment of the Purchase Price, represents and warrants to Seller, that (i) it is a sophisticated buyer or seller (as the

case may be) with respect to the Transferred Claims, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the business and financial condition of the Debtor to make an informed decision regarding the Transferred Claims, and (iii) it has independently and without reliance on the other party hereto, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of Seller and Purchaser has relied upon the express representations and warranties made by the other party hereto in this Paragraph 2. Each of Seller and Purchaser acknowledges that the other has not given it any investment advice or opinion on whether this Agreement is prudent. Purchaser has not relied, and will not rely, on Seller to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the Debtor. Each of Seller and Purchaser acknowledges that (i) the other currently may have, and later may come into possession of, information regarding the Transferred Claims that is not known to it and that may be material to a decision to enter into this Agreement ("Excluded Information"), (ii) it has determined to enter into this Agreement notwithstanding its lack of knowledge of the Excluded Information, and (iii) the other party hereto shall have no liability to it, and it hereby, to the extent permitted by law, waives and releases any claims it may have against the other of Seller and Purchaser, with respect to the nondisclosure of the Excluded Information, provided, however, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement.

4.  Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Seller acknowledges and understands that Purchaser may file a copy of this Agreement with the Court, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing the Debtor, the Court and all other interested parties that all further notices relating to the Transferred Claims, and all payments or distributions of money or property in respect of the Transferred Claims, shall be delivered or made to the Purchaser; provided, however that the Purchaser shall promptly provide notice to the Seller upon entry of such order.

5.  All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein. Purchaser shall be entitled to transfer Its rights hereunder without any notice to. or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations , warranties, covenants and agreements made herein.

6.      Seller has transferred, or shall transfer via the Depository Trust Company (the "DTC") as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account as Purchaser may designate in writing to Seller against payment by Purchaser of the Purchase Price.  With respect to the Purchased Security with CUSIP 52525MJF6 (which is "frozen" at the DTC), Seller covenants and agrees to use its commercially reasonable efforts to cause the transfer of such Purchased Security via the DTC to Purchaser, or Purchaser's designee as promptly as practicable.  Without limitation to any of Seller's obligations herein, until such time as such Purchased Security can be transferred to Purchaser via the DTC, upon receipt by Seller of the Purchase Price, Seller shall be deemed to have granted to Purchaser an undivided 100% participation interest in and to such Purchased Security. This Agreement supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the, purchase and sale of each Purchased Security.

7.  Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and

further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms of this Agreement. Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser.

8. Seller's and Purchasers rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

[Continued on following page]

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this 28th day of __December_____ 2016.


**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name: Michael G. Linn
Title: Managing Member
By: Farallon Partners, LLC
its General Partners

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111Name:
Title:


**SEAPORT GLOBAL SECURITIES LLC**

By: _____
Name:
Title:




Address:  360 Madison Avenue
New York, NY 10017

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this 29ᵗʰ day of __December_____ 2016.


**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name: Michael G. Linn
Title: Managing Member
By: Farallon Partners, LLC
its General Partners


Address:

One Maritime Plaza, Suite 2100
San Francisco, CA 94111


**SEAPORT GLOBAL SECURITIES LLC**

By: _____
Name:      Jonathan Silverman
Title:      General Counsel


Address:

360 Madison Avenue
New York, NY 10017

**Purchased Claim**

$ 2,690,951.00 of $75,296,430.95 (the allowed amount of the CEBFT Proof of Claim as of October 7, 2010).

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper, issued 02/13/2008 | 52525KAB8 | Lehman Brothers Holdings Inc. | $2,015,099.00 | 2.875% (which Prior Seller assumes to have been the last rate set under the Security) | 03/11/2009 | $ 2,020,149.00 |

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper | 52525MJF6 | Lehman Brothers Holdings Inc. | $670,802.00 | 2.8% (which Prior Seller assumes to have been the last rate set under the Security) | 09/15/2008 | $ 670,802.00 |

Schedule 2

Prior Distributions

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|-------|-------|----------------------|----------------------|------------------------|
| 33007 | 52525KAB8 | 4/17/2012 | 6.02382200% | $ 121,690.17 |
| 33007 | 52525KAB8 | 10/1/2012 | 3.81459200% | $ 77,060.44 |
| 33007 | 52525KAB8 | 4/4/2013 | 4.97325800% | $ 100,467.22 |
| 33007 | 52525KAB8 | 10/3/2013 | 5.74109100% | $ 115,978.59 |
| 33007 | 52525KAB8 | 4/3/2014 | 6.37161900% | $ 128,716.19 |
| 33007 | 52525KAB8 | 10/2/2014 | 4.63132400% | $ 93,559.64 |
| 33007 | 52525KAB8 | 4/2/2015 | 3.18263300% | $ 64,293.92 |
| 33007 | 52525KAB8 | 10/1/2015 | 2.38166500% | $ 48,113.18 |
| 33007 | 52525KAB8 | 3/31/2016 | 0.67976000% | $ 13,732.16 |
| 33007 | 52525KAB8 | 6/16/2016 | 0.99648800% | $ 20,130.54 |
| | | | | |
| 33007 | 52525MJF6 | 4/17/2012 | 6.02382200% | $ 40,407.91 |
| 33007 | 52525MJF6 | 10/1/2012 | 3.81459200% | $ 25,588.35 |
| 33007 | 52525MJF6 | 4/4/2013 | 4.97325800% | $ 33,360.71 |
| 33007 | 52525MJF6 | 10/3/2013 | 5.74109100% | $ 38,511.35 |
| 33007 | 52525MJF6 | 4/3/2014 | 6.37161900% | $ 42,740.94 |
| 33007 | 52525MJF6 | 10/2/2014 | 4.63132400% | $ 31,067.01 |
| 33007 | 52525MJF6 | 4/2/2015 | 3.18263300% | $ 21,349.16 |
| 33007 | 52525MJF6 | 10/1/2015 | 2.38166500% | $ 15,976.25 |
| 33007 | 52525MJF6 | 3/31/2016 | 0.67976000% | $ 4,559.84 |
| 33007 | 52525MJF6 | 6/16/2016 | 0.99648800% | $ 6,684.46 |

## AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM

TO:      THE DEBTOR AND THE BANKRUPTCY COURT

1.       (A) For value received, the adequacy and sufficiency of which are hereby acknowledged, Farallon Capital
Partners, LP (the "Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Seaport Global
Securities LLC (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof for the purchase.
price specified in a separate communication by and between Seller and Purchaser dated as of the date hereof (the
"Purchase Price"), (a) an undivided 100% interest to the extent relating to Seller's record and beneficial ownership in
the securities (each, a "Purchased Security") specified in Schedule 1 attached hereto (each, a "Purchased Claim"),
(b) all Seller's right, title and interest in and to Proof of Claim Number 67146 (as such claim number amends the
previously filed proofs of claim 33006 and 66383) (the "Proof of Claim") filed by Frank Russell Company
("Original Claimant") against Lehman Brothers Holdings Inc. (the "Debtor") in the proceedings for reorganization
of Debtor (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the
"Court"), administered under Case No. 08-13555 (SCC) but only to the extent related to each Purchased Claim, (c)
all rights and benefits of Seller to the extent relating to each Purchased Claim, including without limitation (i) any
right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid
or distributed with respect to each Purchased Claim or with respect to any of the documents, agreements, bills and/or
other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in
any material way each Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a
liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section
101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever
that Seller may have, whether against the Debtor or any other party, arising out of or in connection with each
Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or
supporting documentation relating to each Purchased Claim, and (iv) any and all of Seller's right, title and interest
in, to and under the Agreement and Evidence of Transfer of Claim dated November 1, 2010 (the "Immediate Prior
Agreement") between JPMorgan Chase Bank, N.A. ("Immediate Prior Seller") and Seller, and that certain
Agreement and Evidence of Transfer of Claim, dated as of November 1, 2010, by and between Original Claimant, as
seller, and Immediate Prior Seller (the "Original Agreement"), and (d) any and all proceeds of any of the foregoing
to the extent relating to each Purchased Claim (all of the foregoing, collectively, as described in clauses (a), (b), (c)
and (d), the "Transferred Claims").   For the avoidance of doubt, Transferred Claims shall exclude the Prior
Distributions (as hereinafter defined), and Seller shall retain all right, title and interest thereto.   In addition,
Purchaser is not assuming any liabilities or obligations of the Seller.

         (B)       In the event, and to the extent, that after the Closing Date any portion of the Additional Claim
Amount (as defined in the Immediate Prior Agreement) becomes an Allowed Claim in a type or class different than
the Immediate Claim Amount (the "Recharacterized Claim"), (i) Purchaser shall effect (or shall use commercially
reasonable efforts to cause any further direct or indirect transferee or assignee of Purchaser of the Recharacterized
Claim (a "Purchaser Transferee") to effect) a transfer of the Recharacterized Claim to the Original Claimant (or, in
the alternative, to Seller for further transfer to the Immediate Prior Seller or Original Claimant), and (ii) in
connection therewith shall make (or shall use commercially reasonable efforts to cause any Purchaser Transferee to
make) to Seller, and to or for the benefit of the Original Claimant, as "Purchaser" the representations and warranties
(with Purchaser (or any such Purchaser Transferee) as "Seller") required by Section 1(B)(2) of the Immediate Prior
Agreement.    In the event that Purchaser (or any such Purchaser Transferee) shall receive any payments,
distributions or proceeds in respect of the Recharacterized Claim, Purchaser shall or shall use commercially
reasonable efforts to cause any such Purchaser Transferee, as applicable, to promptly (but in any event no later than
three (3) business days) remit to the Original Claimant (or, in the alternative, to Seller for further remittance to the
Immediate Prior Seller or Original Claimant) any payments, distributions or proceeds received by Purchaser or
Purchaser Transferee, as applicable, in respect of the Recharacterized Claim.   Purchaser agrees (and it shall be a
condition of any further transfer to any such Purchaser Transferee that such Purchaser Transferee shall agree) that
any further assignment of the Purchased Claims shall contain the provisions of this Paragraph 1(B), including
without limitation a commitment by any such Purchaser Transferee to make the representations and warranties
required by Section 1(B)(2) of the Immediate Prior Agreement.

2.      Seller hereby represents and warrants to Purchaser that: (a) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer of Claim ("Agreement"); (b) Seller has not engaged, and will not engage, in any acts, conduct or omissions, or had, has, or will have, any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other claims of the same class or type as claims comprising the Immediate Claim Amount; (c) Seller has provided to Purchaser a true and complete copy of the Immediate Prior Agreement; (d) to the extent it received such title to the Transferred Claims pursuant to the Immediate Prior Agreement, Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (e) assuming the truth and accuracy of the representations and warranties of the Immediate Prior Seller in the Immediate Prior Agreement, the Proof of Claim includes each Purchased Claim specified in Schedule 1 attached hereto; and (f) other than the distributions set forth on Schedule 2 hereto (the "Prior Distributions") and the distribution totaling $527,530.71 ("Eleventh Distribution") and received on or about October 6, 2016, which Eleventh Distribution shall be credited to the Purchase Price, no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claims.

3.      Seller represents and warrants to Purchaser, and Purchaser, by its acceptance of this Agreement and the payment of the Purchase Price, represents and warrants to Seller, that (i) it is a sophisticated buyer or seller (as the case may be) with respect to the Transferred Claims, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the business and financial condition of the Debtor to make an informed decision regarding the Transferred Claims, and (iii) it has independently and without reliance on the other party hereto, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of Seller and Purchaser has relied upon the express representations and warranties made by the other party hereto in this Paragraph. Each of Seller and Purchaser acknowledges that the other has not given it any investment advice or opinion on whether this Agreement is prudent. Purchaser has not relied, and will not rely, on Seller to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the Debtor. Each of Seller and Purchaser acknowledges that (I) the other currently may have, and later may come into possession of, information regarding the Transferred Claims that is not known to it and that may be material to a decision to enter into this Agreement ("Excluded Information"), (ii) it has determined to enter into this Agreement notwithstanding its lack of knowledge of the Excluded Information, and (iii) the other party hereto shall have no liability to it, and it hereby, to the extent permitted by law, waives and releases any claims it may have against the other of Seller and Purchaser, with respect to the nondisclosure of the Excluded Information; provided, however, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement. Each of Seller and Purchaser further acknowledge that the consideration being paid by Purchaser hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Purchased Claims pursuant to any plan or reorganization which is confirmed for the Debtor.

4. (A) Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any. notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Seller acknowledges and understands that Purchaser may file a copy of this Agreement with the Court, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing the Debtor, the Court and all other interested parties that all further notices relating to the Transferred Claims, and all payments or distributions of money or property in respect of the Transferred Claims, shall be delivered or made to the Purchaser; provided, however that the Purchaser shall promptly provide notice to the Seller upon entry of such order.

(B) In the event Purchaser or Seller receives notice of an objection, dispute, action, proceeding or litigation, including, without limitation, the filing of or service of a subpoena relating to the Purchased Claims (each, a "Dispute"), Purchaser or Seller, as applicable, shall promptly provide written notice to the other party and to Immediate Prior Seller of the foregoing (the "Dispute Notice"). As provided in the Original Agreement, upon the occurrence of the initial Dispute (the "Initial Dispute"), Original Claimant is authorized to defend against and resolve the initial Dispute (the "Defense Authority"), provided however that upon the earlier to occur of either (i) the one-hundredth (100th) day after the Dispute Notice related to the Initial Dispute (the "Initial Dispute Notice"), (ii) the date on which Original Claimant advises Seller or Immediate Prior Seller that Original Claimant does not intend to exercise the Defense Authority, or (iii) the date distributions are first made to creditors of the Debtor in the Proceedings holding claims against the Debtor of the same type or class as the Purchased Claims, then, upon Immediate Prior Seller's receipt of written instructions from the Majority Holders (as defined in the Immediate Prior Agreement) electing, in their sole discretion, to terminate the Defense Authority, then Immediate Prior Seller shall promptly thereafter notify Original Claimant that such Defense Authority is so terminated.

5. All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations, warranties, covenants and agreements made herein.

6.      Seller has transferred, or shall transfer via the Depository Trust Company (the "DTC") as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account as Purchaser may designate in writing to Seller against payment by Purchaser of the Purchase Price.  With respect to the Purchased Security with CUSIP 52525MJF6 (which is "frozen" at the DTC), Seller covenants and agrees to use its commercially reasonable efforts to cause the transfer of such Purchased Security via the DTC to Purchaser, or Purchaser's designee as promptly as practicable.  Without limitation to any of Seller's obligations herein, until such time as such Purchased Security can be transferred to Purchaser via the DTC, upon receipt by Seller of the Purchase Price, Seller shall be deemed to have granted to Purchaser an undivided 100% participation interest in and to such Purchased Security. This Agreement supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the, purchase and sale of each Purchased Security.

7. Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim. Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions, notices or proceeds received by Seller in respect of the Transferred Claims to Purchaser.

8. Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

[Continued on following page]

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this 29 day of December 2016.

**FARALLON CAPITAL PARTNERS, LP**

By: _____

Name: Michael G. Linn
Title: Managing Member
  By: Farallon Partners, LLC
its General Partner

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111

**SEAPORT GLOBAL SECURITIES LLC**

By: _____

Name:
Title:

Address: 360 Madison Avenue
         New York, NY 10017

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this _29ᵗʰ_ day of December 2016.


**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name: Michael G. Linn
Title: Managing Member
 By: Farallon Partners, LLC
its General Partner


Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111


**SEAPORT GLOBAL SECURITIES LLC**

By: _____
Name:
Title:    **Jonathan Silverman**
          **General Counsel**


Address:  360 Madison Avenue
          New York, NY 10017

Schedule 1

Purchased Claim

$_ 31,245,082.48  of $519,057,796.15 (the allowed amount of the Proof of Claim).

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper, issued 02/13/2008 | 52525KAB8 | Lehman Brothers Holdings Inc. | 6,004,072.00 | 2.875% (which Prior Seller assumes to have been the last rate set under the Security) | 03/11/2009 | $ 6,019,119.48 |

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Commercial Paper | 52525MJF6 | Lehman Brothers Holdings Inc. | $___ 25,225,963.00 | 2.8% (which Prior Seller assumes to have been the last rate set under the Security) | 09/15/2008 | $ 25,225,963.00 |

Schedule 2

Distributions

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|---|---|---|---|---|
| 67146 | 52525KAB8 | 4/17/2012 | 6.02382200% | $ 362,581.04 |
| 67146 | 52525KAB8 | 10/1/2012 | 3.81459200% | $ 229,604.85 |
| 67146 | 52525KAB8 | 4/4/2013 | 4.97325800% | $ 299,346.34 |
| 67146 | 52525KAB8 | 10/3/2013 | 5.74109100% | $ 345,563.12 |
| 67146 | 52525KAB8 | 4/3/2014 | 6.37161900% | $ 383,515.36 |
| 67146 | 52525KAB8 | 10/2/2014 | 4.63132400% | $ 278,764.92 |
| 67146 | 52525KAB8 | 4/2/2015 | 3.18263300% | $ 191,566.48 |
| 67146 | 52525KAB8 | 10/1/2015 | 2.38166500% | $ 143,355.26 |
| 67146 | 52525KAB8 | 3/31/2016 | 0.67976000% | $ 40,915.56 |
| 67146 | 52525KAB8 | 6/16/2016 | 0.99648800% | $ 59,979.80 |

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|---|---|---|---|---|
| 67146 | 52525MJF6 | 4/17/2012 | 6.02382200% | $ 1,519,567.10 |
| 67146 | 52525MJF6 | 10/1/2012 | 3.81459200% | $ 962,267.56 |
| 67146 | 52525MJF6 | 4/4/2013 | 4.97325800% | $ 1,254,552.22 |
| 67146 | 52525MJF6 | 10/3/2013 | 5.74109100% | $ 1,448,245.49 |
| 67146 | 52525MJF6 | 4/3/2014 | 6.37161900% | $ 1,607,302.25 |
| 67146 | 52525MJF6 | 10/2/2014 | 4.63132400% | $ 1,168,296.07 |
| 67146 | 52525MJF6 | 4/2/2015 | 3.18263300% | $ 802,849.82 |
| 67146 | 52525MJF6 | 10/1/2015 | 2.38166500% | $ 600,797.93 |
| 67146 | 52525MJF6 | 3/31/2016 | 0.67976000% | $ 171,476.00 |
| 67146 | 52525MJF6 | 6/16/2016 | 0.99648800% | $ 251,373.69 |

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM

TO:     THE DEBTOR AND THE BANKRUPTCY COURT

1. For value received, the adequacy and sufficiency of which are hereby acknowledged, Farallon Capital Partners, LP ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Seaport Global Securities LLC ("Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof:

    (a) an undivided interest, to the extent relating to Seller's record and beneficial ownership interest in commercial paper, issued by the Debtor (as defined below) as specified in Schedule 1 attached hereto, in Seller's right, title and interest in and to Proof of Claim Number 67902 (as such claim number amends the previously filed proof of claim 17319) (the "Proof of Claim") originally filed by or on behalf of Primary Fund, a series of The Reserve Fund, a Massachusetts business trust ("Original Claimant") against Lehman Brothers Holdings, Inc., (the "Debtor") in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court") administered under Case No. 08-13555 (SCC) (the "Purchased Claim"),

    (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code)), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim and (iv) Seller's right, title and interest in, to and under that certain Agreement and Evidence of Transfer of Claim dated as of April 14, 2010 (the "Prior Agreement"), between Seller and Goldman, Sachs & Co. ("Prior Seller"), under which Seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim,

    (e) any and all proceeds of any of the foregoing, excluding any Retained Distributions (as defined below) (collectively, as described in clauses (a), (b) and (c), the "Transferred Claims"), and

    (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto.

For the avoidance of doubt, the parties agree that (x) the Purchased Claim relates to the Purchased Security described in Section 2 of the Proof of Claim and specified in Schedule 1 attached hereto, (y) this Agreement relates only to the Purchased Claim and the Purchased Security and not to proof of claim number 17321 filed by Original Claimant or any other proof of claim ("Other Claim") or other security ("Other Security") of the Seller or any other party, and (z) Seller does not waive, relinquish, assign or transfer to Purchaser any action, claim, right or lawsuit of any nature whatsoever in whole or in part (i) arising out of or in connection with any Other Claim or Other Security, or (ii) that any party other than Seller may have or may pursue, whether against the Debtor or any other party, arising out of or in connection with any claim, security, matter or issue whatsoever. Furthermore, the Transferred Claims shall exclude, and Seller shall retain all right, title and interest in and to, all distributions received in respect of the Transferred Claims and Purchased Securities prior to September 8, 2016 (the "Retained Distributions"). This assignment shall be deemed an absolute and unconditional assignment of the Transferred Claims. In addition, Purchaser is not assuming any liabilities or obligations of the Seller.

2. Seller hereby represents and warrants to Purchaser and to Purchaser's successors and assigns that: (a) assuming the truth and accuracy of the representations and warranties of the Prior Seller in the Prior Agreement, the Proof of Claim was duly and timely filed in accordance with the Court 's order setting the deadline for filing proofs of claim and the applicable procedures set forth in that certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code

and Bankruptcy Rule 3003(0(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Dicta No. 4271); (b) to the extent that it received such title from Prior Seller pursuant to the Prior Agreement, Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (c) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (d) assuming the truth and accuracy of the representations and warranties of the Prior Seller in the Prior Agreement, the Proof of Claim includes the Purchased Claim specified in Schedule l attached hereto; (e) Seller has not engaged, and will not engage in any acts, conduct or omissions, or has, had or will have any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors of the Debtor; and (f) other than the distributions set forth on Schedule 2 hereto (the "Prior Distributions") and the distribution totaling $145,084.99 ("Eleventh Distribution") and received on or about October 6, 2016, which Eleventh Distribution shall be credited to the Purchase Price, no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claims.

3. Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in respect of the Transferred Claims, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Chaim be delivered or made to Purchaser.

4. All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold. Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless front and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations, warranties, covenants and agreements made herein.

5. Seller shall promptly (but in any event no later than five (5) business days) remit any payments distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, each Purchased Security to a DTC account designated in writing by Purchaser to Seller against payment by Purchaser of the Purchase Price. This Agreement and Evidence of Transfer of Claim supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the purchase and sale of each Purchased Security. 6. Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents, and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and. Evidence of Transfer of Claim, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7. Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State. of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to the service of process by certified mail at its address listed on the signature page below.

[Continued on following page]

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this 21st day of __December_ 2016.


**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name: Michael G. Linn
Title: Managing Member
 By: Farallon Partners, LLC
its General Partner

Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111


**SEAPORT GLOBAL SECURITIES LLC**

By: _____
Name:
Title:

Address:  360 Madison Avenue
          New York, NY 10017

IN WITNESS WHEREOF, this Agreement and Evidence of Transfer of Claim is executed on this **21**⁺day of __December_ 2016.


**FARALLON CAPITAL PARTNERS, LP**

By: _____
Name: Michael G. Linn
Title: Managing Member
 By: Farallon Partners, LLC
its General Partner


Address:
One Maritime Plaza, Suite 2100
San Francisco, CA 94111


**SEAPORT GLOBAL SECURITIES LLC**

By: _____
Name: Jonathan Silverman
Title: General Counsel


Address:  360 Madison Avenue
New York, NY 10017

Schedule 1

Transferred Claims

Purchased Claim

- 3.263784% of CUSIP 52525MKV9, or $6,038,000 of $185,000,000.00 (the principal amount of CUSIP 52525MKV9 due at maturity of the Purchased Security) and as further described in the Proof of Claim, plus all interest related thereto.
- 1.725333% of CUSIP 52525MKA5, or $2,588,000 of $150,000,000.00 (the principal amount of CUSIP 52525MKA5 due at maturity of the Purchased Security) and as further described in the Proof of Claim, plus all interest related thereto.

Description of the Purchased Security

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Principal/Notional Amount | Coupon | Allowed Claim amount transferred hereunder |
|---|---|---|---|---|---|---|
| Floating Rate Note | 52525MKV9 | Lehman Bros. Holdings Inc. | None | USD 6,038,000 | 3.71% | $6,010,621.04 |
| Floating Rate Note | 52525MKA5 | Lehman Bros. Holdings Inc. | None | USD 2,588,000 | 3.00% | $2,582,608.41 |

Schedule 2
Distributions

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|---|---|---|---|---|
| 67902 | 52525MKA5 | 4/17/2012 | 6.02382200% | $ 155,571.73 |
| 67902 | 52525MKA5 | 10/1/2012 | 3.81459200% | $ 98,515.97 |
| 67902 | 52525MKA5 | 4/4/2013 | 4.97325800% | $ 128,439.77 |
| 67902 | 52525MKA5 | 10/3/2013 | 5.74109100% | $ 148,269.89 |
| 67902 | 52525MKA5 | 4/3/2014 | 6.37161900% | $ 164,553.96 |
| 67902 | 52525MKA5 | 10/2/2014 | 4.63132400% | $ 119,608.96 |
| 67902 | 52525MKA5 | 4/2/2015 | 3.18263300% | $ 82,194.94 |
| 67902 | 52525MKA5 | 10/1/2015 | 2.38166500% | $ 61,509.08 |
| 67902 | 52525MKA5 | 3/31/2016 | 0.67976000% | $ 17,555.53 |
| 67902 | 52525MKA5 | 6/16/2016 | 0.99648800% | $ 25,735.38 |

| Claim | Cusip | Date of Distribution | Rate of Distribution | Amount of Distribution |
|---|---|---|---|---|
| 67902 | 52525MKV9 | 4/17/2012 | 6.02382200% | $ 362,069.11 |
| 67902 | 52525MKV9 | 10/1/2012 | 3.81459200% | $ 229,280.66 |
| 67902 | 52525MKV9 | 4/4/2013 | 4.97325800% | $ 298,923.69 |
| 67902 | 52525MKV9 | 10/3/2013 | 5.74109100% | $ 345,075.22 |
| 67902 | 52525MKV9 | 4/3/2014 | 6.37161900% | $ 382,973.87 |
| 67902 | 52525MKV9 | 10/2/2014 | 4.63132400% | $ 278,371.33 |
| 67902 | 52525MKV9 | 4/2/2015 | 3.18263300% | $ 191,296.00 |
| 67902 | 52525MKV9 | 10/1/2015 | 2.38166500% | $ 143,152.85 |
| 67902 | 52525MKV9 | 3/31/2016 | 0.67976000% | $ 40,857.79 |
| 67902 | 52525MKV9 | 6/16/2016 | 0.99648800% | $ 59,895.11 |