# EXHIBIT F

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                0000016219

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Special Financing Inc. | 08-13888 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Attention: Gerald T. Grant, Executive Vice President & CFO
ACTS Retirement-Life Communities, Inc.
375 Morris Road, P.O. Box 90, West Point, PA 19486-0090
CC: Latham & Watkins, Carlos Alvarez, 885 Third Ave. 3rd Floor, NY, NY
10022 (212) 906-1269

Telephone number:  215-661-8330        Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:        Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.  Amount of Claim as of Date Case Filed:** $  293,464.80

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.  Basis for Claim:**  Reserve Fund Agreement
(See instruction #2 on reverse side.)

**3.  Last four digits of any number by which creditor identifies debtor:** _____
**3a.  Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4.  Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
Amount of Secured Claim: $_____  Amount Unsecured: $_____

**6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
(See instruction #6 on reverse side.)

**7.  Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.  Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

Amount entitled to priority:

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 1 8 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 9/11/09 | *Gerald T. Grant*  Gerald T. Grant Executive Vice Pres. |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | ) | |
| | ) | Case No. 08-13555 (JMP) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

## ATTACHMENT TO PROOF OF CLAIM OF
## ACTS Retirement-Life Communities, Inc.

1.      ACTS Retirement-Life Communities, Inc. ("ACTS" or the "Claimant") hereby files this proof of claim (the "Proof of Claim") against Lehman Brothers Holding Inc. ("LBHI" or the "Debtor") seeking payment under a reserve fund agreement on behalf of Lehman Brothers Special Financing Inc., a subsidiary of Lehman Brothers Holding Inc. Attached hereto as Exhibit A is the Reserve Fund Agreement and Supporting Documents.

2.      Claimant expressly reserves the right to amend or supplement this Proof of Claim for any purpose whatsoever, including but not limited to the purposes of increasing the amount of its claim hereunder, fixing or liquidating any claims stated herein, specifying claims for ongoing obligations of Debtor that are not expressly described herein, and asserting new claims.

3.      Claimant may have post-petition administrative expense claims against Debtor. By filing this Proof of Claim, Claimant does not waive any of its post-petition claims against Debtor, and expressly reserves all of its rights in connection with such claims.

4.      To the best of Claimant's knowledge, no judgment has been rendered on the claims set forth herein.

5.      To the best of Claimant's knowledge, all payments made by Debtor in connection with the claims asserted herein have been credited and deducted for the purposes of making this Proof of Claim.

6.      Claimant does not waive any right of action that it has or may have against Debtor or any other person or persons.

7.      In filing this Proof of Claim, Claimant does not submit itself to the jurisdiction of this Court for any purpose other than with respect to this Proof of Claim.

8.      The filing of this Proof of Claim is not intended and should not be construed to be an election of remedies or waiver of any past, present or future defaults or events of default under any agreements between Claimant and Debtor.

9.      All notices and communications concerning this Proof of Claim should be sent to the address(es) listed on proof of claim form.

**EXHIBIT A**
**Reserve Fund Agreement and Supporting Documents**


Five Star Service Guaranteed

Corporate Trust Services
Rookery Building
209 South LaSalle Street  Suite 300
Chicago, IL 60604                         Via Fax: 646/758-2988

Lehman Brothers Special Financing Inc
745 Seventh Avenue
5th Floor
New York, NY 10019
Attn:  Municipal Financial Products - Middle Office

**Re:  Reserve Fund Agreement (the "Agreement") dated as of December 18, 2002 by
and among ACTS RETIREMENT-LIFE COMMUNITIES, INC., a Pennsylvania
nonprofit corporation (the "Corporation"), U S BANK NATIONAL
ASSOCIATION, as successor to LaSalle Bank National Association, a national
banking association, in its capacity as Master Trustee under the Master Indenture
dated as of December 1, 1996 ("the Master Trustee"), and LEHMAN BROTHERS
SPECIAL FINANCING INC., a Delaware corporation ("Lehman")**

To whom this may concern:

Please find attached the notice from ACTS requesting that the Master Trustee sell the
Reserve Securities as defined in the Agreement, pursuant to Section 2.2 of the Agreement
unless Lehman, within 10 days of receipt of such notice from the Master Trustee, shall
have assigned its rights and obligations under this Agreement to an entity which at the
time of such assignment has a long-term rating of at least "A-" from S&P and a long-term
rating of at least "A3" from Moody's or which is otherwise acceptable to the
Corporation.  In connection with any assignment, there shall be delivered to the
Corporation and the Master Trustee an opinion of counsel to the assignee, in form and
substance satisfactory to the Corporation and to the Master Trustee, to the effect that this
Agreement is a valid and binding agreement of the assignee, enforceable against the
assignee in accordance with its terms, subject only to bankruptcy, insolvency,
moratorium, reorganization and other state and federal laws affecting the enforcement of
creditors' rights and to general principles of equity.

If, after ten days from Lehman's receipt of this notice from the Master Trustee as
provided in Section 2.6(c) Lehman has not assigned its rights and obligations under this
Agreement as provided in Section 2.6(c), the Master Trustee may sell the Reserve
Securities in the manner provided in Section 2.2 hereof, in which case Lehman shall on
demand by the Master Trustee pay any Guarantee Payment then due.

This Notice is dated as of September 18, 2008

U S Bank National Association, as Master Trustee
By: _____
        Debra P. Donaldson 312/325-8774
        Assistant Vice President



**ACTS**
Retirement-Life
Communities®

Gerald T. Grant
Executive Vice President
Chief Financial Officer

## DIRECTION TO DELIVER NOTICE

To:    US Bank. National Association, as Master Trustee (the "Master Trustee")

Date:  September 17, 2008

Re:    Reserve Fund Agreement Between (the "Agreement") dated as of December 18, 2002 by and among ACTS RETIREMENT-LIFE COMMUNITIES, INC., a Pennsylvania nonprofit corporation (the "Corporation"), US BANK ASSOCIATION (as successor to LaSalle Bank National Association) a national banking association. in its capacity as Master Trustee under the Master Indenture Master Trust Indenture dated as of December 1, 1996 (the "Master Trustee"). and LEHMAN BROTHERS SPECIAL FINANCING INC.. a Delaware corporation ("Lehman")

---

Pursuant to Section 2.6 (c) of the Agreement, you are hereby directed to notify Lehman in writing that the Master Trustee intends to sell the Reserve Securities, as defined in the Agreement, pursuant to Section 2.2 of the Agreement unless Lehman, within ten days of receipt of such notice from the Master Trustee, shall have assigned its rights and obligations under this Agreement to an entity which at the time of such assignment has a long-term rating of at least "A-" from Standard & Poor's and a long-term rating of at least "A3" from Moody's or which is otherwise acceptable to the Corporation.   In connection with any such assignment. there shall be delivered to the Corporation and the Master Trustee an opinion of counsel to the assignee. in form and substance satisfactory to the Corporation and the Master Trustee, to the effect that this Agreement is a valid and binding agreement of the assignee. enforceable against the assignee in accordance with its terms, subject only to bankruptcy. insolvency, moratorium, reorganization and other state and federal laws affecting the enforcement of creditors' rights and to general principles of equity.

ACTS Retirement-Life Communities, Inc.

By:   _____

       *Executive Vice President & Fo.*

Acknowledged and Received:

US Bank National Association, as Master Trustee

By:   _____

---

ACTS Retirement-Life Communities. Inc.

375 Morris Road P.O. Box 90 West Point, PA 19486-0090
Phone: 215-661-8330  Fax: 215-661-8329
www.acts-retirement.org • Email: ggrant@actsretirement.org

DIANE CROKE - 2002reservefundagree.doc

EXECUTION COPY

## RESERVE FUND AGREEMENT

This Reserve Fund Agreement (the "Agreement") dated as of December 18, 2002 by and among ACTS Retirement-Life Communities, Inc., a Pennsylvania nonprofit corporation (the "Corporation"), LaSalle Bank, National Association, a national banking association, in its capacity as Master Trustee under the Master Indenture defined below (the "Master Trustee"), and LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation ("Lehman").

SECTION I.        DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the following words and terms have the respective meanings provided therefor:

"Authority" means Montgomery Country Industrial Development Authority, a public instrumentality of the Commonwealth of Pennsylvania and a public body corporate and politic organized and existing under the laws of the Commonwealth of Pennsylvania.

"Bonds" means the Montgomery Country Industrial Development Authority Retirement Community Variable Rate Demand Revenue Bonds (ACTS Retirement-Life Communities, Inc. Obligated Group), Series 2002.

"Business Day" means a day on which any of the Corporation, the Master Trustee or Lehman is not required or authorized by law to close.

"Closing Date" means December 18, 2002.

"Collateral" has the meaning specified in the Master Pledge Agreement.

"Consideration Amount" means $135,212.71.

"Corporation Event of Default" means the occurrence of an event specified in Section 8.2 hereof.

"Debt Service Payment" means (i) a scheduled payment of principal of and interest on the Bonds, including any such payment in connection with a scheduled mandatory sinking fund redemption of the Bonds from sinking fund installments but excluding any such payment in connection with any other redemption of the Bonds or (ii) a payment of principal of and interest on the Bonds upon an acceleration of the Bonds following an event of default under the Indenture.

"Equivalent Security" means, with respect to any Reserve Security (or portion thereof) which has been sold pursuant to Section 2.2(b) to make a Debt Service Payment, a security which is identical to or "fungible" (as defined in the Uniform Commercial Code of the State of New

RFA: 430287L

York) therewith, but only if such security is, by usage of trade, the equivalent of any other like unit of such Reserve Security.

"Fee Amount" means $209,429.95.

"Financing Document" means the Master Indenture, the Indenture, the Loan Agreement and any other financing documents related to the Bonds.

"Guarantee Payment" has the meaning specified in Section 2.2(b).

"Guaranteed Price" means, with respect to any Reserve Security, the "Principal Amount" set forth as the price therefor on Schedule 1 (or, in the case of a portion of a Reserve Security, the equivalent portion of such amount).

"Indenture" means the Trust Agreement dated as of December 1, 2002 between the Authority and Wachovia Bank, National Association, as Trustee.

"Insolvent" means (i) either Lehman or the Corporation, as the case may be, shall (1) commence a voluntary case under the federal bankruptcy laws (as in effect on the date of this Agreement or hereafter), (2) file a petition seeking to take advantage of any other law relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debts, (3) consent to any petition filed against it in an involuntary case under such bankruptcy or insolvency or other laws, (4) apply for or consent to the appointment of, or the taking of possession by, a trustee, receiver, custodian, liquidator or the like for itself or for all or a substantial part of its property, (5) admit in writing its inability to pay, or generally not be paying, its debts as they come due, (6) make a general assignment for the benefit of creditors, or (7) take any official action for the purpose of effecting any of the foregoing; or (ii) a case or other proceeding shall be commenced against either Lehman or the Corporation, as the case may be, in any court of competent jurisdiction seeking (1) relief under the federal bankruptcy laws (as in effect on the date of this Agreement or hereafter) or under any other law relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debts, or (2) the appointment of a trustee, receiver, custodian, liquidator or the like for Lehman or the Corporation, as the case may be, or for all or a substantial part of its property, and any such case or proceeding shall continue undismissed and unstayed for a period of 60 consecutive calendar days, or an order granting the relief requested in any such case or proceeding against such party shall be entered and shall remain in effect and unstayed for a period of 60 consecutive days.

"LBH" means Lehman Brothers Holdings Inc., its successors and assigns, which wholly owns Lehman and unconditionally guarantees Lehman's obligations.

"LBI" means Lehman Brothers Inc., its successors and assigns.

"Lehman Event of Default" means the occurrence of an event specified in Section 8.1 hereof.

RFA: 430287L

0

"Liquidation Price" has the meaning specified in 2.2(b) hereof.

"Loan Agreement" means Loan Agreement, dated as of December 1, 2002, by and among the Authority and the Corporation, including all amendments or supplements thereto as therein permitted.

"Master Indenture" means the Master Trust Indenture dated as of December 1, 1996, as amended and supplemented, by and between the Corporation and the Master Trustee.

"Master Pledge Agreement" means the Master Pledge Agreement between Lehman and the Master Trustee dated as of the Closing Date.

"Moody's" means Moody's Investors Service, Inc. and its successors and assigns.

"Purchase Price" means the Total Price for the Reserve Securities as set forth on Schedule 1 attached hereto.

"Qualified Dealer" means any dealer in Government Securities selected by the Master Trustee, including without limitation, LBI.

"Repurchase Notice" has the meaning specified in Section 2.3(b) hereof.

"Repurchase Price" has the meaning specified in Section 2.3(b) hereof.

"Reserve Fund" means the reserve fund created under the Indenture and designated therein as the Debt Service Reserve Fund.

"Reserve Requirement" means at any time the amount required in the Reserve Fund pursuant to the Indenture to secure the related Bonds. The Reserve Requirement on the Closing Date is $1,200,000.

"Reserve Securities" means the securities set forth as such in Schedule 1 and any Equivalent Securities purchased pursuant to Section 2.3 hereof.

"Standard & Poor's" means Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies Inc. and its successors and assigns.

"Sale Date" means the Business Day immediately preceding the date on which a Debt Service Payment is due to be paid to the holders of the Bonds.

"Sale Notice" has the meaning specified in Section 2.2(a) hereof.

"Scheduled Termination Date" means November 15, 2029.

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

## SECTION II.    ARRANGEMENT

Section 2.1    <u>Purchase of Reserve Securities</u>.    In consideration of entering into this Agreement, Lehman shall pay the Consideration Amount to the Corporation on the Closing Date. The Master Trustee has purchased from Cain Brothers & Company LLC ("Cain Brothers") for the account of the Reserve Fund on the date hereof the Reserve Securities set forth in Schedule 1, for settlement on the date hereof. Simultaneously with the delivery of such Reserve Securities, the Master Trustee shall pay the Purchase Price set forth in Schedule 1 for such Reserve Securities to Cain Brothers. Upon receipt of the Purchase Price, Cain Brothers shall immediately pay the Fee Amount to Lehman in accordance with the payment instructions contained in Section 7.1 hereof.

Section 2.2    <u>Sale by the Master Trustee.</u>

(a)    If the Master Trustee is required or authorized under the Indenture to sell all or a portion of the Reserve Securities to make a Debt Service Payment to the holders of the Bonds or as otherwise provided in the Indenture, the Master Trustee shall, if so directed by the Corporation, or if otherwise required or authorized by the Indenture to make such Debt Service Payment or as otherwise provided in the Indenture, give Lehman not less than two nor more than seven days oral and written notice thereof (a "Sale Notice"). The Master Trustee shall in such Sale Notice specify (i) the Sale Date and (ii) the lesser of (A) the amount of funds which the Master Trustee is required to realize from the sale of the Reserve Securities in order to make such Debt Service Payment or other payment authorized by the Indenture or (B) the aggregate Guaranteed Price of the Reserve Securities which are then in the Reserve Fund (such lesser amount being referred to herein as, the "Deficiency Amount").

(b)    The Master Trustee, after delivery of the Sale Notice and prior to the Sale Date, in consultation with Lehman, shall solicit bids for the purchase of the Reserve Securities which must be obtained from at least four Qualified Dealers (one of which shall be LBI). If the price offered by the Qualified Dealer which has offered the highest price for such Reserve Securities (excluding accrued interest, the "Liquidation Price") is less than their Guaranteed Price, the Master Trustee shall make written demand upon Lehman for the payment of such difference (the "Guarantee Payment"). If the Master Trustee is unable to obtain four such quotations, in consultation with Lehman, the Liquidation Price shall be the highest price for such Reserve Securities as reasonably determined in good faith by LBI, in consultation with Cain Brothers.

(c)    If the Master Trustee has delivered a Sale Notice to Lehman and made demand upon Lehman for payment of the Guarantee Payment as provided above, then, by no later than the later of (A) the first Business Day after Lehman has received such Sale Notice or (B) the Sale Date, Lehman unconditionally agrees to pay the Guarantee Payment to the Master Trustee in immediately available funds. If the Master Trustee delivers a Sale Notice to Lehman and makes demand upon Lehman for the Guarantee Payment, prior to selling the Reserve Securities to the Qualified Dealer who has offered the Liquidation Price, the Master Trustee shall offer to sell such securities to Lehman at the Liquidation Price plus any accrued interest and, if Lehman has

RFA: 430287L

0

agreed to pay the Liquidation Price plus any accrued interest on such securities, sell such securities to Lehman at the Liquidation Price plus any accrued interest.

(d)    If in connection with any withdrawal of the Reserve Securities to make a Debt Service Payment less than all of the Reserve Securities must be sold and there is more than one Reserve Security then in the Reserve Fund, the Master Trustee shall select for sale Reserve Securities  pro rata in the proportion that the Guaranteed Price of each such security bears to the Guaranteed Price of all Reserve Securities then on deposit in the Reserve Fund, provided that the aggregate Guaranteed Price of the Reserve Securities which are so selected at least equals the Deficiency Amount (as defined in Section 2.2(a) hereof).

(e)    The Master Trustee shall not deliver any Sale Notice to Lehman unless the Master Trustee has first liquidated all investments (other than the Reserve Securities) in the Reserve Fund and withdrawn (or allocated for withdrawal) all other funds held in the Reserve Fund or otherwise available for the payment of the Debt Service Payment.

(f)    If Lehman receives a Sale Notice or a Repurchase Notice after 1:00 p.m. New York City time on any Business Day, such notice shall be deemed to have been received on the next succeeding Business Day.

(g)    The parties hereto agree that on the Scheduled Termination Date hereof any Reserve Securities or Equivalent Securities which are then held in the Reserve Fund and which mature after such Scheduled Termination Date shall be sold by the Master Trustee in the same manner as set forth in this Section 2.2.

Section 2.3    Repurchase by the Master Trustee.

(a)    The Corporation and the Master Trustee agree that any amounts which are required pursuant to the terms of the Indenture or any other Financing Document to be deposited into the Reserve Fund relating to the Corporation following withdrawal of Reserve Securities to make a Debt Service Payment and the payment of a Guarantee Payment by Lehman (including any amounts permitted to be applied to satisfy the Reserve Requirement for the Bonds), if and to the extent deposited in the Reserve Fund in cash, shall be invested in Equivalent Securities as provided herein.

(b)    If, following Lehman's payment of a Guarantee Payment pursuant to Section 2.2(c), (i) sufficient funds are deposited in the Reserve Fund to permit the purchase of a Minimum Amount (as defined below) of Equivalent Securities or (ii) the Corporation have notified the Master Trustee in writing (with a copy to Lehman) that they intend, in compliance with the Indenture, to deposit sufficient funds in the Reserve Fund within twelve months to permit the purchase of a Minimum Amount of Equivalent Securities, then the Master Trustee shall, within twelve months of such Guarantee Payment, give oral and written notice (a "Repurchase Notice") to Lehman stating (A) the amount of funds which have been or will be deposited and (B) the date(s) or expected date(s) of such deposit(s). If the Master Trustee has so delivered a Repurchase Notice to Lehman, then by no later than the second Business Day after

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

delivery thereof in the case of this Section 2.3(b)(i) above or the second Business Day after each day on which funds have been so deposited in the case of Section 2.3(b)(ii) above, the Master Trustee, in consultation with Lehman, shall solicit quotations for the Equivalent Securities from at least four Qualified Dealers (one of which shall be LBI). If the price offered by the Qualified Dealer which has offered the lowest price for the sale of such Equivalent Securities to the Master Trustee (excluding accrued interest, the "Repurchase Price") is less than the Guaranteed Price, the Master Trustee shall pay to Lehman, solely from funds deposited in the Reserve Fund, the amount of such difference. If the Repurchase Price of the Equivalent Securities is greater than the Guaranteed Price, Lehman shall pay to the Master Trustee the amount of such difference. Upon any such purchase of Equivalent Securities by the Master Trustee such securities shall be covered by the facility provided in Section 2.2. As used herein "Minimum Amount" means an amount equal to the amount deposited in the Reserve Fund and invested in Equivalent Securities as described in Section 2.3(a) rounded down to the nearest authorized denomination of such Equivalent Securities.

(c)    If the Master Trustee delivers a Repurchase Notice to Lehman, prior to purchasing the Equivalent Securities from the Qualified Dealer who has offered the Repurchase Price, the Master Trustee shall offer to purchase such securities from Lehman at such Repurchase Price plus any accrued interest and, if Lehman agrees to sell such securities to the Master Trustee at the Repurchase Price plus accrued interest, purchase such securities from Lehman at the Repurchase Price plus accrued interest.

(d)    If within twelve months of Lehman's payment of a Guarantee Payment pursuant to Section 2.2(c) the Master Trustee has not delivered a Repurchase Notice as required in accordance with Section 2.3(b), Lehman may (but is not obligated to), at any time thereafter, by written notice to the Master Trustee (with a copy to the Corporation), terminate the Master Trustee's right to purchase Equivalent Securities in the manner provided herein and have such Equivalent Securities covered by the facility provided in Section 2.2. Such termination shall not affect the remaining rights and obligations of the parties hereunder with respect to any Reserve Securities which are then in the Reserve Fund.

Section 2.4    Subsequent Deliveries. If any Reserve Securities delivered pursuant to Section 2.1 hereof mature prior to the Scheduled Termination Date for which such Reserve Securities were delivered, Lehman shall, upon at least one Business Day prior written notice to the Master Trustee, cause a Qualified Dealer to deliver to the Master Trustee, at any time on or after the maturity date of such Reserve Securities, other Reserve Securities, provided that the purchase price thereof does not exceed the original Purchase Price of the securities which have so matured less the Fee Amount.

Section 2.5    Termination.

(a)    Unless sooner terminated as provided in this Section 2.5 or in 2.6(d), this Agreement shall terminate on the earlier of (i) the Scheduled Termination Date and (ii) subject to Section 2.5(c), the date on which the Bonds are defeased or redeemed (whether in whole or in part) with respect to the portion of the Bonds defeased or redeemed.

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

(b)    Lehman may elect to terminate this Agreement by giving written notice to the Master Trustee and the Corporation if (i) twelve months have elapsed since the Master Trustee's sale of all of the Reserve Securities and Equivalent Securities have not been repurchased by the Master Trustee pursuant to Section 2.3 or (ii) the Master Trustee and the Corporation fail, for any reason, to apply moneys in the Reserve Fund, as and when available, to purchase Equivalent Securities pursuant to Section 2.3.    If this Agreement is terminated by Lehman pursuant to this Section 2.5(b), the Corporation shall, by no later than the termination date, pay to Lehman, if such termination arises from the Master Trustee's failure to purchase Equivalent Securities as and when required pursuant to Section 2.3, the excess, if any, of the Guaranteed Price of the Equivalent Securities which would have been purchased had the provisions of Section 2.3 been complied with over the market value (excluding accrued interest) of such Equivalent Securities, as reasonably determined by Lehman in accordance with industry practice as of the date this Agreement is so terminated by Lehman.

(c)    If the Corporation cause the Authority to redeem or defease the Bonds and in connection therewith cause the Authority to issue new bonds ("Refunding Bonds") and transfers all or a portion of the Reserve Securities from the Reserve Fund to the reserve account for the Refunding Bonds (the "Refunding Bonds Reserve Fund") the Corporation may, by giving Lehman at least 15 days prior written notice, request that this Agreement be amended to include the Refunding Bonds in the definition of Bonds and the Refunding Bonds Reserve Fund in the definition of Reserve Fund. If Lehman receives such a request from the Corporation, it shall agree to such amendment provided that (A) the Corporation have an unsecured, unenhanced rating of at least "BBB+" by S&P or, in the reasonable judgment of Lehman, the financial exposure to Lehman with respect to such Refunding Bonds is not materially greater than the financial exposure to Lehman with respect to the Bonds as of the date hereof, (B) Lehman receives whatever opinions and other assurances it may reasonably request to assure that the protections afforded Lehman hereunder will continue after such amendment and (C) no further modifications will be required to be made to this Agreement which could impair Lehman's rights or increase or extend its obligations hereunder.

(d)    The Corporation may at any time, by giving Lehman at least five Business Days prior written notice, terminate this Agreement, provided, that, if this Agreement is terminated by the Corporation after Lehman has made a Guarantee Payment and as of the date of termination the Master Trustee has not purchased Equivalent Securities with a Guaranteed Price equal to the Guaranteed Price of the Reserve Securities sold in connection therewith, the Corporation shall, on the date this Agreement is to be terminated, pay to Lehman the excess, if any, of the Guaranteed Price of Equivalent Securities with a Guaranteed Price equal to the Guaranteed Price of the Reserve Securities so sold over the market value (excluding accrued interest) of such Equivalent Securities, as reasonably determined by Lehman in accordance with industry practice as of the date this Agreement is so terminated by the Corporation.

(e)    If this Agreement has not been terminated prior to the Scheduled Termination Date pursuant to this Section 2.5, the Master Trustee shall sell the Reserve

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

Securities to LBI at the Guaranteed Price thereof on the Scheduled Termination Date.

Section 2.6    Delivery of Collateral, Return of Collateral, Downgrade, Assignment, Termination.

(a)    On the Closing Date and at all other times Lehman shall, in accordance with the Master Pledge Agreement, collateralize its obligation to make payments hereunder.

(b)    If at any time after the Closing Date Lehman shall have no further obligations to the Master Trustee relating to this Agreement, then, the Master Trustee shall pay over and deliver and transfer to Lehman all of the Collateral as provided by Section 12 of the Master Pledge Agreement.

(c)    If at any time LBH does not have a long-term rating of at least "A-" from Standard & Poor's or a long-term rating of at least "A3" from Moody's (a "Downgrade Event"), Lehman shall immediately notify the Master Trustee. Upon receipt of such notice of the Downgrade Event, the Master Trustee shall, at the written direction of the Corporation, notify Lehman in writing that the Master Trustee intends to sell the Reserve Securities pursuant to Section 2.2 hereof unless Lehman, within ten days of receipt of such notice from the Master Trustee, shall have assigned its rights and obligations under this Agreement to an entity which at the time of such assignment has a long-term rating of at least "A-" from Standard & Poor's and a long-term rating of at least "A3" from Moody's or which is otherwise acceptable to the Corporation. In connection with any such assignment, there shall be delivered to the Corporation and the Master Trustee an opinion of counsel to the assignee, in form and substance satisfactory to the Corporation and the Master Trustee, to the effect that this Agreement is a valid and binding agreement of the assignee, enforceable against the assignee in accordance with its terms, subject only to bankruptcy, insolvency, moratorium, reorganization and other state and federal laws affecting the enforcement of creditors' rights and to general principles of equity.

(d)    If, after ten days from Lehman's receipt of notice from the Master Trustee as provided in Section 2.6(c), Lehman has not assigned its rights and obligations under this Agreement as provided in such Section 2.6(c), the Master Trustee may sell the Reserve Securities in the manner provided in Section 2.2 hereof, in which case Lehman shall on demand by the Master Trustee pay any Guarantee Payment then due. If the Master Trustee so sells the securities, this Agreement shall terminate on the date of sale.

Section 2.7    Direction by Corporation to Master Trustee. The Corporation hereby irrevocably instructs the Master Trustee to enter into this Agreement and to take the actions and to make any payments to Lehman required hereby.

Section 2.8    Payment Instructions. All payments due under this Agreement to the Master Trustee or to Lehman are to be made in immediately available funds by means of a bank or Federal funds wire, to the account specified by the payee from time to time pursuant to Section 7.1 hereof.

DIANE CROKE - 2002reservefundagree.doc

Section 2.9    No Interest in Reserve Securities.

(a)    Lehman acknowledges that Lehman shall have no right, title or interest in the Reserve Securities or lien on the Reserve Securities.

(b)    Lehman further acknowledges that the Corporation may at any time direct the Master Trustee, in accordance with the Indenture or any other Financing Document, to sell all or any portion of the Reserve Securities relating to the Corporation for purposes other than a Debt Service Payment in any manner permitted under the Indenture or any other Financing Document provided that (i) Lehman shall have no obligation to make a Guarantee Payment in connection with such sale, (ii) any securities so sold shall, from the date of such sale, no longer constitute Reserve Securities and (iii) if such sale is of less than all of the Reserve Securities then in the Reserve Fund, the Master Trustee shall select for sale Reserve Securities pro rata in the proportion that the Guaranteed Price of each such security bears to the Guaranteed Price of all Reserve Securities then on deposit in the Reserve Fund relating to the Corporation.

## SECTION III.    REPRESENTATIONS AND WARRANTIES; ACKNOWLEDGMENTS

Section 3.1    Representations and Warranties.    The Corporation, the Master Trustee and Lehman each represents and warrants to the other parties hereto that as of the date hereof:

(a)    it is duly organized and validly existing under the laws of the jurisdiction of its incorporation or establishment and has full power and legal right to execute and deliver, and to perform its obligations under this Agreement including, without limitation, in the case of the Corporation, the right to purchase from Lehman the facility provided by Lehman hereunder;

(b)    this Agreement has been duly authorized, executed and delivered by it and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms hereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(c)    its execution and delivery of this Agreement and its performance of its obligations hereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under, its charter or by-laws (or equivalent constitutional documents), or any other law, ordinance, regulation or contractual restriction or any of its property;

(d)    all consents, authorizations and approvals requisite for its execution, delivery and performance of this Agreement have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority or regulatory body is required for such execution,

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

delivery or performance;

(e)    there is no proceeding pending or threatened against it at law or in equity, or before any governmental instrumentality or in any arbitration, which would materially impair its ability to perform its obligations under this Agreement, and there is no such proceeding pending against it which purports or is likely to affect the legality, validity or enforceability of the Agreement;

(f)    in the case of the Corporation:

(i)    funds and investments in the Reserve Fund relating to the Corporation are not available to pay any amounts due on any bonds other than the Bonds relating to the Corporation; and

(ii)    the Financing Documents require the Corporation to deposit into the Reserve Fund an amount which will be sufficient to pay all principal and interest which will be due with respect thereto without regard to any amounts which may be available in the Reserve Fund relating to the Corporation; and

(g)    if it is Lehman, its obligations under this Agreement are on parity with the senior debt securities of LBH, which on the date hereof are rated "A+" by Standard & Poor's and "A2" by Moody's.

Section 3.2    Role of Lehman.

(a)    The Corporation and the Master Trustee each acknowledges and agrees that (i) Lehman has not and is not acting as a fiduciary, agent or other representative for the holders of the Bonds or for any other person in connection with this Agreement, (ii) Lehman has made no investigation with respect to the tax-exempt status of the Bonds, and (iii) neither Lehman nor any of its directors, officers, employees, agents or affiliates shall be liable or responsible for: (A) the payment of any amounts owing on or with respect to the Bonds; (B) the use or application by the Master Trustee of any moneys payable to the Master Trustee hereunder; (C) any acts or omissions of the Corporation or the Master Trustee under the Indenture or any other Financing Document; (D) the validity, tax exemption or enforceability of, the Bonds, the Indenture or any other Financing Document; or (E) the Master Trustee's performance of its obligations under the Indenture or any other Financing Document or any other agreement or instrument with respect to the Bonds. Without limiting the foregoing, Lehman shall have no duty to ascertain whether the Master Trustee is in compliance with any applicable statute, regulation or law, the Indenture or any other Financing Document.

(b)    The Corporation acknowledges that the economic terms of this Agreement have been negotiated by it and that, to the extent it has deemed necessary, it has consulted with its own legal, tax and investment advisors regarding its decision to enter into this Agreement.

(c)    The Corporation acknowledges that Lehman has a minority, non-controlling

interest in Cain Brothers, which served as a bidding agent for this Agreement. The Corporation further acknowledges that it was advised of this relationship prior to the time bids were submitted with respect to this Agreement.

Section 3.3    Fees and Commissions.    The Corporation hereby acknowledges that Lehman has paid, at the direction of the Corporation, a broker's fee to Cain Brothers on behalf of the Corporation for services provided by the Cain Brothers to the Corporation in connection with this Agreement.    This broker's fee has been fully disclosed to the Corporation in the request for reserve fund agreement dated December 9, 2002 issued by the Cain Brothers and the certificate issued by Lehman to the Corporation on the Closing Date.

SECTION IV.        COVENANTS

Section 4.1    Covenants.  Each of Lehman, the Corporation and the Master Trustee covenants to the other parties to this Agreement that so long as it shall have any obligations under this Agreement it shall:

(a)    maintain in full force and effect all authorizations of and exemptions, consents, licenses, actions or approvals by, and all filings with or notices to, any governmental or other authority that are required to be obtained or made by such party with respect to this Agreement and will use all reasonable efforts to obtain or make any that may become necessary in the future;

(b)    comply in all material respects with all applicable laws, rules, regulations and orders to which it may be subject if failure so to comply would materially impair its ability to perform its obligations under this Agreement;

(c)    give the other parties hereto prompt notice of any legal proceedings pending or threatened against such party which, if adversely determined, might (i) impair its ability to perform its obligations under this Agreement or (ii) affect the legality, validity or enforceability of this Agreement;

(d)    not take any action that would cause any of the representations and warranties contained in Section 3.1 hereof to be untrue or incorrect in any material respect;

(e)    if it is the Corporation or the Master Trustee, not enter into any amendment or modification of the Indenture or any other Financing Document to which it is a party which could materially impair its ability to perform its obligations to Lehman hereunder, provided that (i) nothing herein shall restrict the issuance of additional Bonds under the Indenture and (ii) an amendment or modification of the Indenture or any other Financing Documents may be made if, in the opinion of bond counsel, such amendment or modification is necessary to maintain the tax-exempt status of the Bonds;

(f)    if it is the Corporation or the Master Trustee, take no action, nor permit any action

RFA 430287L

0

DIANE CROKE - 2002reservefundagree.doc

to be taken against it, which shall cause the Reserve Securities to be subject to any lien or encumbrance other than the lien of the Indenture; and

(g)    if it is the Master Trustee, not use the funds and investments in the Reserve Fund to pay any amounts due on any bonds other than the Bonds.

Section 4.2    Additional Covenant of Lehman. Lehman covenants to the other parties to this Agreement that it is a wholly owned subsidiary of LBH and that LBH unconditionally guarantees the obligations of Lehman under this Agreement.

## SECTION V.    THE MASTER TRUSTEE

Section 5.1    Acceptance by Master Trustee. By execution and delivery of this Agreement, the Master Trustee accepts its duties and obligations hereunder, consistent with its duties and obligations as Master Trustee under the Indenture; provided, however, no implied duties or obligations under the Indenture shall be imposed on the Master Trustee. The Master Trustee is entering into this Agreement solely in its capacity as Master Trustee under the Indenture, and the duties, powers and liabilities of the Master Trustee in acting hereunder shall be subject to the provisions of the Indenture.

Section 5.2    Liability of the Master Trustee; Consultation with Legal Counsel.

(a)    The Master Trustee shall not be liable for any action taken or neglected to be taken in performing or attempting to perform its obligations hereunder or preserving or seeking to preserve the funds it maintains under the Indenture, except for any such actions (or failures to act) arising from its negligence or willful misconduct.

(b)    The Master Trustee may consult with its counsel or other counsel satisfactory to it with respect to any question relating to its duties or responsibilities hereunder or otherwise in connection herewith and, except as expressly provided herein, the Master Trustee shall not be liable for any action taken, suffered, or omitted by the Master Trustee in good faith upon the advice of such counsel. The Master Trustee may act through its officers, employees, agents and attorneys.

Section 5.3    Payment of Master Trustee Fees. Lehman has no liability or responsibility for payment of the Master Trustee's fees or expenses for its services hereunder, including any such fees or expenses arising out of or in connection with the liquidation of the Reserve Securities as provided herein.

Section 5.4    Master Trustee Successor. If the Master Trustee resigns or is discharged from its duties and obligations under the Indenture it shall assign all its rights and duties hereunder to such successor master trustee as is appointed by the Corporation and shall transfer any Collateral held by the Master Trustee as custodian under the Master Pledge Agreement to a successor custodian reasonably acceptable to Lehman.

RFA: 430287L

0

SECTION VI.        CLOSING CONDITIONS

Section 6.1    Closing Conditions.  On or prior to the Closing Date the following shall occur:

(a)    delivery to the Master Trustee and the Corporation of an opinion of counsel to Lehman, in the form of Exhibit A;

(b)    delivery to Lehman and the Master Trustee of an opinion of counsel to the Corporation, in the form of Exhibit B;

(c)    delivery to Lehman and the Corporation of an opinion of counsel to the Master Trustee, substantially in the form of Exhibit C;

(d)    delivery to the Master Trustee of the executed Master Pledge Agreement;

(e)    delivery to Lehman of an executed copy of the Indenture and any other Financing Document; and

(f)    delivery by Lehman of a guarantee of LBH, in the form of Exhibit D, for the benefit of the Corporation.


SECTION VII.        MISCELLANEOUS

Section 7.1    Notices.  All notices, demands or other communications hereunder shall be given or made in writing and shall be delivered personally, or sent by certified or registered mail, postage prepaid, return receipt requested, or overnight delivery service, telex or telecopy to the party to whom they are directed at the following addresses, or at such other addresses as may be designated by notice from such party to all other parties:

To Lehman:

Lehman Brothers Special Financing Inc.
745 Seventh Avenue, 5ᵗʰ Floor
New York, NY 10019
Attention:    Municipal Financial Products - Middle Office
Telephone:    212-526-2240
Fax:            646-758-2988

[FOR PAYMENT OF FEE AMOUNT]
JPMORGAN CHASE
ABA:        0021

RFA: 430287L

0

A/C:  Lehman Brothers Special Financing Inc.
A/C #          3543
Further Credit to:        0020

To the Master Trustee:

LaSalle Bank, National Association
135 South LaSalle Street, Suite 1960
Chicago IL 60603
Attention:      Corporate Trust Department - Wayne M. Evans
Telephone:     312-904-2442
Fax:               312-904-2236

[FOR DELIVERY OF BOOK-ENTRY GOVERNMENT SECURITIES]
LaSalle Bank, National Association
ABA #          0505
LaSalle Chicago/Trust
REF A/C        3384

[FOR DELIVERY OF DTC ELIGIBLE SECURITIES]
LaSalle Bank, National Association
DTC Participant #2251
Institution ID #26320
Agent ID #26320
REF A/C        3384
Attn: Wayne M Evans x42442

To the Corporation:

ACTS Retirement-Life Communities, Inc.
375 Morris Road
West Point, PA 19486
Attention:      Chief Financial Officer
Telephone:     215-661-8330
Fax:               215-661-8314
Federal Tax ID #        0132

    Any notice, demand or other communication given in a manner prescribed in this Section
shall be deemed to have been delivered on receipt, or if any notice, demand or other
communication is delivered by sent by certified or registered mail, postage prepaid, return receipt
requested, or overnight delivery service, the earlier to occur of the date of actual delivery or the
attempted delivery, each as determined by the proof of delivery or refused delivery as

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

documented by the U.S. postal service or independent delivery service, as applicable.

Section 7.2    Binding Effect; Transfer.    This Agreement shall be binding upon the Corporation, the Master Trustee and Lehman and upon their respective permitted successors and transferees. Neither the Corporation, Lehman nor the Master Trustee shall be entitled to transfer this Agreement, or its interests and obligations hereunder, without the written consent of the other parties hereto; provided, that Lehman, without the consent of the Corporation or the Master Trustee, may transfer its rights and obligations hereunder to any affiliate of Lehman provided that the obligations of such affiliate is fully guaranteed by LBH and complies with the provisions of Section 2.6 hereof, provided, that Lehman may not transfer this Agreement if after giving effect to such transfer a Downgrade Event (as defined in Section 2.5(c)) would occur or be continuing. In connection with any such transfer, there shall be delivered to the Corporation and the Master Trustee an opinion of counsel to the transferee, in form and substance satisfactory to the Corporation and the Master Trustee, to the effect that this Agreement is a valid and binding agreement of the transferee, enforceable against the transferee in accordance with its terms, subject only to bankruptcy, insolvency, moratorium, reorganization and other state and federal laws affecting the enforcement of creditors' rights and to general principles of equity. No consent is required under this Section 7.2 for any successor master trustee appointed under the Indenture.

Section 7.3    Limitation.    Nothing expressed or implied herein is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto, any right, remedy or claim by reason of this Agreement or any term hereof, and all terms contained herein shall be for the sole and exclusive benefit of the parties hereto, and their successors and permitted transferees. The obligation under this Agreement are the unconditional obligations of the parties hereto in accordance with the terms hereof.

Section 7.4    Counterparts.    This Agreement may be executed in one or more counterparts and when each party hereto has executed at least one counterpart, this Agreement shall become binding on all parties and such counterparts shall be deemed to be one and the same document.

Section 7.5    Severability.    If one or more provisions of this Agreement or the applicability of any such provisions to any set of circumstances shall be determined to be invalid or ineffective for any reason, such determination shall not affect the validity and enforceability of the remaining provisions or the applicability of the same provisions or any of the remaining provisions to other circumstances.

Section 7.6    Amendments, Changes and Modifications.    This Agreement may be amended or any of its terms modified only by a written document authorized, executed and delivered by each of the parties hereto.

Section 7.7    Governing Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

Section 7.8    Set-Off.  Lehman agrees that any payments due by it hereunder shall not be set-off or counterclaim by any amounts otherwise due Lehman.

Section 7.9    Valuation of Agreement.  For purposes of valuing this Agreement under the Indenture, the Master Trustee shall value this Agreement when combined with the value of the Reserve Securities at the Guaranteed Price for so long as Lehman is not in default under this Agreement.

SECTION VIII.    EVENTS OF DEFAULT; REMEDIES.

Section 8.1    Lehman Events of Default.  The occurrence of any of the following events shall constitute a Lehman Event of Default if Lehman fails to cure such Lehman Event of Default within two Business Days of Lehman's receipt of written notice from the Corporation of such Lehman Event of Default:

(a)    failure of Lehman to make a Guarantee Payment as provided in Section 2.2 hereof;

(b)    any representation, warranty or covenant of Lehman contained in this Agreement proves to have been incorrect, false or misleading in any material respect as of the date on which it was made;

(c)    either Lehman or LBH is at any time Insolvent;

(d)    Lehman has failed to take the actions required of it in Section 2.6 hereof; or

(e)    the guarantee of LBH is terminated.

Section 8.2    Corporation Events of Default.  The occurrence of any of the following events shall constitute a Corporation Event of Default if the Corporation fail to cure such Corporation Event of Default within two Business Days of the Corporation's receipt of written notice from Lehman of such Corporation Event of Default:

(a)    any representation, warranty or covenant of the Corporation contained in this Agreement proves to have been incorrect, false or misleading in any material respect as of the date on which it was made;

(b)    any of the Corporation is at any time Insolvent; or

(c)    any of the Corporation fails pay to Lehman the excess, if any, of the Guaranteed Price of Equivalent Securities pursuant to Section 2.5(d) hereof (the "Excess").

Section 8.3    Remedies Upon Occurrence of a Lehman Event of Default.  Upon the occurrence of a Lehman Event of Default Lehman shall promptly notify the Corporation and the

RFA: 430287L

0

DIANE CROKE - 2002reservefundagree.doc

Master Trustee in writing of such Lehman Event of Default, and the Corporation shall have the right to sell the Reserve Securities and make demand upon Lehman for a Guarantee Payment in accordance with Section 2.2(c) hereof. Lehman and LBH shall remain liable for any deficiency after application of such proceeds from the sale of the Reserve Securities and any Guarantee Payment, if any, which may be due, including any reasonable costs and expenses incurred by the Riverside Group.

Section 8.4    Remedies Upon Occurrence of Corporation Event of Default. Upon the occurrence of a Corporation Event of Default, Lehman shall have the right to (a) immediately terminate this Agreement by giving written notice thereof to the Corporation with a copy to the Master Trustee, and (b) if this Agreement is terminated pursuant to Section 8.2(d) hereof, the Corporation shall pay to Lehman, as liquidated damages for its losses and not as a penalty, on written demand by Lehman, the sum of (x) the Excess, and (y) interest on the Excess until the date on which the Corporation compensates Lehman for the Excess.

RFA: 430287L

EXECUTION COPY

IN WITNESS WHEREOF, the Corporation, the Master Trustee and Lehman have caused this Reserve Fund Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

ACTS Retirement-Life Communities, Inc.

By:
Name:
Title:

LaSalle Bank, National Association, as Master Trustee

By:
Name:
Title:

Lehman Brothers Special Financing Inc.

By:
Name:  T. Courtney Jenkins
Title:    Vice President

RFA: 430287L.

**SCHEDULE 1**

**RESERVE FUND**

| Type of Security | Reserve Security<br>ALAMEDA<br>(Alameda Corridor Transportation Authority) | Reserve Security<br>FREDDIE MAC<br>(Fed. Home Loan Mortgage Corp.) | Total |
|---|---|---|---|
| CUSIP Number | 010869CD5 | 3134A4NM2 | |
| Principal Amount | $805,000 | $395,000 | $1,200,000 |
| Maturity | October 1, 2029 | July 15, 2028 | |
| Interest Rate | 6.60% | 0.00% | |
| Price, without accrued interest | $1,063,482.61 | $125,153.47 | $1,188,636.08 |
| Accrued Interest | $11,363.92 | $0.00 | $11,363.92 |
| Total Price | $1,074,846.53 | $125,153.47 | $1,200,000.00 |
| Settlement Date | 12/18/02 | 12/18/02 | |

RFA: 430287L

EXECUTION COPY

**EXHIBIT A**

[LETTERHEAD OF COUNSEL TO LEHMAN]

December 18, 2002

ACTS Retirement-Life Communities, Inc.
West Point, PA

LaSalle Bank National Association
Chicago IL 60603

Re:    Montgomery Country Industrial Development Authority Retirement Community Variable
Rate Demand Revenue Bonds (ACTS Retirement-Life Communities, Inc. Obligated
Group), Series 2002

Ladies and Gentlemen:

I am an attorney of Lehman Brothers Special Financing Inc. ("Lehman") and Lehman
Brothers Holdings Inc., a Delaware corporation ("LBH"), and am familiar with matters
pertaining to the execution and delivery of the Reserve Fund Agreement dated as of December
18, 2002 (the "Agreement") by and among Lehman, LaSalle Bank National Association, as
Trustee (the "Trustee") and ACTS Retirement-Life Communities, Inc. (the "Corporation"), and
the Master Pledge Agreement also dated as of December 18, 2002 (the "Master Pledge
Agreement") by and between Lehman and the Trustee, and the guarantee of the LBH (the
"Guarantee") delivered in connection with the Agreement. The Agreement, the Master Pledge
Agreement and the Guarantee are collectively referred to herein as the "Lehman Documents".
Capitalized terms used herein and not defined herein have the respective meanings given to them
in the Lehman Documents.

In connection with the opinions expressed below, I have examined, or have had examined
on my behalf, a copy of each of the Lehman Documents executed by Lehman and such other
agreements, instruments, documents and records of Lehman and certificates and statements by
public officials and officers of Lehman as I have deemed necessary or appropriate as a basis for
the opinions hereinafter expressed.

Based on the foregoing but subject to the assumptions, exceptions, qualifications and
limitations hereinafter expressed, I am of the opinion that:

1.    Each of Lehman and LBH is a corporation duly incorporated, validly existing and
in good standing under the laws of the State of Delaware.

2.    The execution, delivery and performance of the Agreement and the Master Pledge
Agreement, in the case of Lehman, and the Guarantee, in the case of LBH, are
within its corporate power, have been duly authorized by all corporate action and
do not conflict with any provision of its certificate of incorporation or by-laws.

RFA: 430287L

3.    Each of the Agreement and the Master Pledge Agreement, in the case of Lehman, and the Guarantee, in the case of LBH, has been duly executed and delivered and constitutes a legal, valid and binding obligation, enforceable against it in accordance with its terms.

The foregoing opinions are subject to the following assumptions, exceptions, qualifications and limitations:

A.    My opinion in paragraph 2 above is subject to the effect of any bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally (including, without limitation, the effect of statutory or other laws regarding fraudulent or other similar transfers) and general principles of equity, regardless of whether enforceability is considered in a proceeding in equity or at law.

B.    I am a member of the Bar of the State of New York and render no opinion on the laws of any jurisdiction other than the State of New York, the United States of America and the General Corporation Law of the State of Delaware.

C.    My opinions are limited to the present laws and to the facts as they presently exist. I assume no obligation to revise or supplement this opinion should the present laws of the jurisdictions referred to in paragraph B above be changed by legislative action, judicial decision or otherwise.

D.    This letter is rendered to you in connection with the Lehman Documents and the transactions related thereto and may not be relied upon by any other person or by you in any other context or for any other purpose.  This letter may not be quoted in whole or in part, nor may copies thereof be furnished or delivered to any other person, without the prior written consent of Lehman, except that you many furnish copies hereof (i) to your independent auditors and attorneys, (ii) to any United States, state or local authority having jurisdiction over you or over Lehman, (iii) pursuant to the order or any legal process of any court of competent jurisdiction or any governmental agency, and (iv) in connection with any legal action arising out of the Lehman Documents.

E.    I have assumed with your permission (i) the genuineness of all signatures by the Trustee and the Corporation, (ii) the authenticity of documents submitted to me as originals and the conformity with the original documents of all documents submitted to me as copies, and (iii) the due execution and delivery, pursuant to due authorization, of the Lehman Documents by each party other than Lehman.

The foregoing opinions are given on the express understanding that the undersigned is an officer of Lehman Brothers Inc. and shall in no event incur any personal liability in connection with the said opinions.

Very truly yours,

A-0

EXECUTION COPY

**EXHIBIT B**

[LETTERHEAD OF COUNSEL OF CORPORATION]

December 18, 2002

Lehman Brothers Special Financing Inc.
New York, NY

LaSalle Bank National Association
Chicago IL 60603

Re:    Re:    Montgomery Country Industrial Development Authority Retirement Community
Variable Rate Demand Revenue Bonds (ACTS Retirement-Life Communities, Inc.,
Obligated Group), Series 2002

Ladies and Gentlemen:

We have acted as counsel to ACTS Retirement-Life Communities, Inc., a Pennsylvania
non-profit corporation (the "Corporation") in connection with the execution and delivery by the
Corporation of the Reserve Fund Agreement as of December 18, 2002 (the "Agreement") by and
between LaSalle Bank, National Association, as Trustee (the "Trustee") under a Master Trust
Indenture dated as of December 1, 1996, (as amended and supplemented including by
Supplement Number 14, dated as of December 1, 2002, between and among the Corporation and
the Trustee (the "Master Indenture")), Lehman Brothers Special Financing Inc. ("Lehman") and
the Corporation and the Master Pledge Agreement also dated as of December 18, 2002 (the
"Master Pledge Agreement") by and between Lehman and the Trustee, and the guarantee of
Lehman Brothers Holdings Inc., a Delaware corporation ("LBH") (the "Guarantee") delivered in
connection with the Agreement. The Agreement, the Master Pledge Agreement and the
Guarantee are collectively referred to herein as the "Financing Documents." Capitalized terms
used herein and not defined herein have the respective meanings given to them in the Financing
Documents. In rendering this opinion, we have examined copies of the Agreement and the other
Financing Documents and the Master Indenture.

In connection with the foregoing, we have also examined originals or copies satisfactory
to us of all such corporate records, agreements, certificates and other documents as we have
deemed relevant and necessary as a basis for the opinions hereinafter expressed. In such
examination we have assumed the genuineness of all signatures, the authenticity of all documents
submitted to us as originals, and the conformity with the original documents of all documents
submitted to us as copies.

The opinions expressed herein are subject to the following assumptions, limitations,
qualifications and exceptions:

RFA: 430287L

(a) As to certain matters of fact material to this opinion, we have relied upon and assumed the accuracy of the factual representations and warranties in the Financing Documents and in certificates of principals of the Corporation given in connection with this opinion, under the Financing Documents or otherwise and on certificates of government officials, and we have not undertaken any independent investigation to determine the existence or absence of those facts. Although we are counsel to the Corporation, we generally handle matters assigned to us and are not necessarily familiar with all of the Corporation's affairs.

(b) We have assumed the genuineness of all signatures except on behalf of the Corporation, the legal capacity of all natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as copies, the authenticity of the originals of such latter documents and the accuracy and authenticity of certificates of public officials.

(c) We have assumed the legal right, power and authority of the other parties executing the Financing Documents ("Other Parties") to enter into, enforce and perform all of its obligations under the Financing Documents and all of the Transactions. Furthermore, we have assumed the due authorization, execution and delivery of the Financing Documents by the Other Parties, and we have assumed the accuracy and completeness of the Other Parties' representations, warranties and covenants therein and assumed that each of the Financing Documents is valid and binding upon the Other Parties and each of them, enforceable against it in accordance with their respective terms.

(d) Our opinions are subject to the effect of (i) bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent conveyance or other similar laws relating to or affecting the rights of creditors, and (ii) limitations imposed by general principles of equity, regardless of whether the relevant matter is considered in proceedings at law or in equity, including with respect to certain covenants and provisions of the Financing Documents, where the Other Parties's enforcement of such covenants or provisions under the circumstances or, in the specified manner, would violate a creditor's or secured party's implied covenant of good faith and fair dealing or would be commercially unreasonable. Enforceability of the Financing Documents may also be limited to the extent that remedies are sought for a breach that a court concludes is immaterial or does not affect the Other Parties.

(e) Certain rights, remedies, waivers and limitations of liability contained in the Financing Documents may be rendered ineffective, or limited, by applicable laws, rules or judicial decisions governing such provisions. Without intending any limitation on the generality of the preceding sentence, we express no opinion as to the enforceability of provisions that (i) purport to allow the Other Parties self-help remedies, (ii) purport to establish evidentiary standards, (iii) purport to impose penalties, forfeitures, prepayment premiums, increased interest rates and/or late payment charges upon delinquency which are unreasonable in nature or amount, (iv) relate to waiver of remedies (or the delay or omission of enforcement thereof), disclaimers, liability limitations with respect to third parties, releases of legal or equitable rights, discharge of defenses or liquidated damages, or the right to a jury trial, (v) purport to constitute consent to venue in a particular jurisdiction, (vi) modify or waive any requirement of commercial

B-0

reasonableness or prior notice or right of redemption arising under applicable law, (vii) purport to grant to the Other Parties any rights, remedies, or powers with respect to the disposition of the collateral or other property, with or without notice, to the extent that such rights, remedies, or powers are not expressly permitted by applicable law, (viii) purport to preclude the modification of the Financing Documents through conduct, custom or course of performance, action or dealing, (ix) purport to limit the Other Parties' liability or provide for the indemnification of the Other Parties for its acts or omissions, (x) purport to entitle the Other Parties to the appointment of a receiver as a matter of right, or (xi) state that the provisions of the Financing Documents are severable. In our opinion, however, none of the qualifications and limitations stated in this paragraph (e) will materially interfere with the practical realization of the benefits or security, or both, afforded under the Financing Documents, subject to the economic consequences of any delay which may result from such applicable laws, rules or judicial decisions.

(f)  We have not made or undertaken to make any investigation of the state of title to any personal or real property, or of the filing or recordation of the Financing Documents, and, except as expressly set forth herein, we express no opinion with respect to the validlity, perfection or priority of any security interest, encumbrance or lien created by any of the Financing Documents.

(g)  Whenever a statement herein is qualified by the phrases "known to us" or "to our knowledge", or similar phrases, it is intended to indicate that, during the course of our representation of the Corporation no information that would give us current actual knowledge of the inaccuracy of such statement has come to the attention of those attorneys presently in this firm who have rendered legal services in connection with the representation of the Corporation. We have not, however, undertaken any independent investigation or review to determine the accuracy of any such statement, and any limited inquiry undertaken by us during the preparation of this opinion letter should not be regarded as such an investigation or review.  No inference as to our knowledge of any matters bearing on the accuracy of any such statement should be drawn from the fact of our representation of the Corporation.

(h)  We express no opinion as to the effect of any federal or state securities laws, antitrust law or laws relating to pollution, hazardous substances, environmental protection, zoning, land use, building, construction, labor or occupation and health and safety in respect of the transaction contemplated by or referenced in the Financing Documents

(i)  We are attorneys admitted to the Bar in the Commonwealth of Pennsylvania, and we express no opinion as to the laws of any jurisdiction other than those identified above, and the federal law of the United States of America.

Based upon the foregoing examination and review, and subject to the qualification set forth above and below, we are of the opinion that:

(i)    The Corporation has full corporate right, power and authority to enter into the Master Indenture and the Agreement.

B-0

(ii)    The Agreement and the Master Indenture have been duly authorized, executed and delivered by the Corporation.

(iii)    The Corporation's execution and delivery of the Agreement and the performance of its obligations thereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under any agreement, instrument, judgment, injunction or order applicable to it or any of its property, and of which we have knowledge.

(iv)    Assuming for the purposes of the opinion expressed in this paragraph (iv) that the law of the Commonwealth of Pennsylvania and the law of the State of New York are identical, the Agreement is a legal, valid and binding obligation of the Corporation, enforceable against the Corporation in accordance with the terms thereof.

(v)    The Loan Agreement is a legal, valid and binding obligation of the Corporation, enforceable against it in accordance with the terms thereof.

(vi)    All consents, authorizations and approvals requisite for its execution, delivery and performance of the Agreement have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority, regulatory body or to our knowledge any other entity is required for such execution, delivery or performance.

This opinion is given as of the date hereof and is limited to the facts, circumstances and matters set forth herein and to laws currently in effect. No opinion may be inferred or is implied beyond matters expressly set forth herein, and we do not undertake and assume no obligation to update or supplement this opinion to reflect any facts or circumstances which may hereafter come to our attention or any changes in law which may hereafter occur.

This opinion is solely for the benefit of the parties to whom this letter is addressed in connection with the above-referenced transactions and this opinion may not be quoted or relied upon by, nor may copies be delivered to, any other person and it may not be used for any other purpose, without our prior written consent.

Very truly yours,

B-0

DIANE CROKE - 2002reservefundagree.doc

## CERTIFICATE

Reference is hereby made to the Transaction Documents (as such term is defined in the opinion (the "Opinion") of even date herewith addressed to Lehman Brothers Special Financing Inc. and LaSalle Bank National Association (the "Other Parties") to which this Exhibit "A" is attached).

The undersigned _____, the (Vice) President of ACTS Retirement-Life Communities, Inc. (the "Corporation"), hereby acknowledges that, in connection with, and pursuant to, the Transaction Documents, (i) the Other Parties has requested that Schnader Harrison Segal & Lewis LLP deliver the Opinion, (ii) this Certificate is being delivered to induce to render the Opinion, and (iii) Schnader Harrison Segal & Lewis LLP has relied, and will rely, upon the certifications, warranties and representations contained herein in rendering its Opinion.

NOW, THEREFORE, the undersigned, hereby certifies, warrants and acknowledges, intending to be legally bound hereby, for the benefit of Schnader Harrison Segal & Lewis LLP, as follows:

    (i)    The Corporation has full corporate right, power and authority to enter into the Master Indenture and the Agreement.

    (ii)    The Agreement and the Master Indenture have been duly authorized, executed and delivered by the Corporation.

    (iii)    The Corporation's execution and delivery of the Agreement and the performance of its obligations thereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under any agreement, instrument, judgment, injunction or order applicable to it or any of its property, and of which we have knowledge.

    (iv)    All consents, authorizations and approvals requisite for its execution, delivery and performance of the Agreement have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority, regulatory body or to out knowledge any other entity is required for such execution, delivery or performance.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Certificate to Schnader Harrison Segal & Lewis LLP as of the _____ day of _____, 2002.

ACTS Retirement-Life Communities, Inc.

By: _____
    Name/Title:

B-0

EXECUTION COPY

**EXHIBIT C**

[LETTERHEAD OF COUNSEL TO MASTER TRUSTEE]

[Date]

[Corporation]


Lehman Brothers Special Financing Inc.
New York, NY

Re:     [Name of Bonds]


Ladies and Gentlemen:

We have acted as counsel to                                    , as master trustee under the Master
Indenture (the "Master Trustee"), in connection with the Master Trustee's execution and delivery
by the Master Trustee of the Reserve Fund Agreement, dated as of          (the "Agreement"),
among                                    (the "Corporation"), the Master Trustee and
Lehman Brothers Special Financing Inc. ("Lehman"). Capitalized terms used herein and not
defined herein have the respective meanings given to them in the Agreement.

In rendering this opinion, we have examined, among other things, copies of the
Agreement and the Indenture.

In connection with the foregoing, we have also examined originals or copies satisfactory
to us of all such corporate records, agreements, certificates and other documents as we have
deemed relevant and necessary as a basis for the opinions hereinafter expressed. In such
examination we have assumed the genuineness of all signatures, the authenticity of all documents
submitted to us as originals, and the conformity with the original documents of all documents
submitted to us as copies.

In giving the opinions expressed below we do not purport to be experts in or generally
familiar with or qualified to express legal opinions based on the laws of any jurisdiction other
than the federal laws of the United States of America and the laws of the State of
(the "State").

Based upon the foregoing examination and review, we are of the opinion that:

(i)     The Master Trustee has full legal right, power and authority to enter into
the Agreement.

(ii)     The Agreement has been duly authorized, executed and delivered by the

RFA: 430287L

Master Trustee.

(iii)     Assuming for the purposes of the opinion expressed in this paragraph (iii) that the Agreement is governed by and construed in accordance with the laws of the State, the Agreement is a legal, valid and binding obligation of the Master Trustee, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(iv)     The execution and delivery by the Master Trustee of the Agreement and the performance of its obligations thereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under, its charter or by-laws, or the Indenture, or any other agreement, instrument, judgment, injunction or order applicable to it or any of its property.

(v)     The Indenture is a legal, valid and binding obligation of the Master Trustee, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

We are furnishing this opinion to you solely for your benefit and no other person is entitled to rely hereon. This opinion is not to be used, circulated, quoted or otherwise referred to for any other purpose.

Very truly yours,

C-0

EXECUTION COPY

# EXHIBIT D

Guarantee of Lehman Brothers Holdings Inc.

Lehman Brothers Special Financing Inc. ("Lehman") has entered into a Reserve Fund Agreement dated as of December 18, 2002 (the "Reserve Fund Agreement") by and among ACTS Retirement-Life Communities, Inc., WACHOVIA BANK, NATIONAL ASSOCIATION (the "Master Trustee"), and a Master Pledge Agreement dated as of December 18, 2002 (the "Master Pledge Agreement," and together with the Reserve Fund Agreement, the "Agreements") with the Master Trustee.   For value received, and in consideration of the financial accommodations accorded to Lehman by the Corporation under the Agreements, Lehman Brothers Holdings Inc., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a)     Guarantor hereby unconditionally guarantees to the Corporation the due and punctual payment of all amounts payable by Lehman under the Agreements when and as Lehman's obligations thereunder shall become due and payable in accordance with the terms of the Agreements. In case of the failure of Lehman to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by the Corporation, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.  In the event that any amounts paid by Lehman under the Agreements are rescinded or must otherwise be returned for any reason whatsoever, the Guarantor shall remain liable hereunder in respect of such amounts as if such payment had not been made.

(b)     Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c)     Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreements against Lehman (other than as a result of the unenforceability thereof against the Corporation), the absence of any action to enforce Lehman's obligations under the Agreements, any waiver or consent by the Corporation with respect to any provisions thereof, or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Lehman could have exercised under the Agreements to cure any default in respect of its obligation under the Agreements or to set off, counterclaim or withhold payment in respect of any default or potential default in respect of the Corporation, but only to the extent such right is provided to Lehman under the Agreements.

·  (d)     Guarantor shall be subrogated to all rights of the Corporation against Lehman in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Lehman under

RFA: 430287L

the Agreements, shall have been paid in full.

(e)    Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreements and this Guarantee, or (ii) any requirement that the Corporation exhaust any right to take any action against Lehman or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

Guarantor makes the same representations to and agreements with the Corporation as those made by Lehman pursuant to Section 4.1 of the Reserve Fund Agreement, at the times set forth therein, except that references therein to "Lehman" will be deemed to be references to "the Guarantor" and references therein to "the Agreements" will be deemed to be references to "the Guarantee."

This Guarantee shall remain in full force and effect and be binding upon the Guarantor and its successors and permitted assigns and inure to the benefit of the Corporation and its successors and permitted assigns until all amounts payable by Lehman under the Agreements have been satisfied in full.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine.  All capitalized terms not defined in this Guarantee are defined in the Agreements.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreements and will be effective as set forth therein.  All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Corporate Counsel, at 745 Seventh Avenue, New York, NY 10019, with a copy to Lehman Brothers Special Financing Inc., Attention: Municipal Financial Products – Middle Office at 745 Seventh Avenue, 5th Floor, New York, NY 10019, Fax: 646-758-2988.

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreements.

LEHMAN BROTHERS HOLDINGS INC.

D-0



# ACTS
## Retirement-Life
## Communities®

July 9, 2009

Lehman Brothers Special Financing, Inc.
c/o Lehman Brothers Holdings Inc.
1271 Sixth Avenue, 40th Floor
New York, New York 10020
Attention: Derivatives Legal

_Via Hand Delivery_

**Re:  Settlement Amount - 1992 ISDA Master Agreement between Lehman Brothers Special Financing Inc. and ACTS Retirement-Life Communities, Inc., dated November 27, 2001**

Dear Sir or Madam:

We refer to the 1992 ISDA Master Agreement (the "Master Agreement"), Credit Support Annex, and Confirmation between Lehman Brothers Special Financing Inc. ("LBSF") and ACTS Retirement-Life Communities, Inc. ("ACTS") dated November 27, 2001 (collectively the "Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Agreement.

Pursuant to the terms and conditions of the Agreement, on July 2, 2009 ACTS notified LBSF (copy of notification attached as Exhibit A hereto) that (i) an Event of Default has occurred pursuant to Section 5(a)(vii) of the Agreement and was continuing and (ii) it was designating July 2, 2009 as the Early Termination Date with respect to all Transactions under the Agreement.

Pursuant to Section 6(e)(i)(3) of the Agreement, ACTS attempted to utilize the Second Method and Market Quotation to determine the Settlement Amount. ACTS received fewer than three (3) quotations required to utilize the Second Method Market Quotation; therefore ACTS was required to utilize Loss to determine the Settlement Amount. Utilizing Loss, ACTS determines (as described in reasonable detail in Annex A hereto) that the Settlement Amount is $-0-.

In connection with the termination of the Agreement, ACTS is owed by LBSH a net aggregate amount of $352,036.32 representing the Settlement Amount ($-0-), plus all outstanding amounts due and owing under the Agreement ($34,265.92), plus reasonable out-of-pocket expenses, including legal fees, incurred by ACTS in connection with the early termination of the Agreement ($24,305.60) and plus ACTS' loss as of this date arising from LBSF's failure to honor its obligations under the Reserve Fund Agreement between ACTS and LBSF dated December 18, 2002 ($293,464.80).

Yours respectfully,

ACTS Retirement-Life Communities, Inc.

Gerald T. Grant
Executive Vice President & CFO

cc: Lehman Brothers Special Financing, Inc.
    c/o Lehman Brothers, Inc.
    Legal, Compliance and Audit Group; Capital Market Contracts - Legal
    1271 Avenue of the Americas 43rd Floor
    New York, NY 10020-1300

## ACTS Retirement-Life Communities, Inc.®
375 Morris Road, P.O. Box 90, West Point, PA 19486-0090
Phone: 215-661-8330  Fax: 215-661-8320
www.ACTSretirement.com

Danica Williams
Direct Dial: (212) 906-4643
Danica.Williams@lw.com

# LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Munich |
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |
| Moscow | |

September 17, 2009

**VIA FEDEX**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

Re:    Lehman Brothers Holdings Inc., et al. Debtors # 08-13555, Proof of Claim

Dear Sir/Madam:

Enclosed please find three originals, one including an attachment with supporting documentation, and three file copy versions (which I placed in the pre-paid envelope) of the *Proof of Claim* in respect of ACTS Retirement-Life Communities' claims against Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc.

Please time-stamp the copy versions of the Proof of Claim, and return it in the enclosed prepaid FedEx envelope, provided for your convenience.

Respectfully submitted,

Danica Williams

Danica Williams, Associate
of LATHAM & WATKINS LLP

Enclosure

From:   Origin ID: JRBA   (212)906-1200
Lauren Gaskill
Latham & Watkins LLP
885 Third Avenue

New York, NY 10022



Ship Date: 17SEP09
ActWgt: 1 LB
CAD: 1792947/WBUS0200
Account#: S *********

Delivery Address Bar Code



SHIP TO: (212)906-1748        BILL SENDER
**EPIQ Bankruptcy Solutions**
**Attn: LBHI Claims Processing**
**757 3rd Ave Frnt 3**

**New York, NY 100172071**

Ref #    046197-0001
Invoice #
PO #
Dept #



RECEIVED
SEP 1 8 2009

TRK#
0201    7915 0649 4880

**FRI - 18SEP        A1**
**STANDARD OVERNIGHT**

**10017**
NY-US
**EWR**

**EB OGSA**



- - - - - - FOLD on this line and place in shipping pouch with **bar code and delivery address** visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.