**Hearing Date and Time: March 21, 2017 at 2:00 p.m. (Prevailing Eastern Time)**
**Response Date and Time: February 17, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3100
Christopher J. Cox

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.,**<br><br>Debtor. | **Chapter 11 Case**<br>**No. 08-13555 (SCC)**<br><br>**(Jointly Administered)** |

### NOTICE OF MOTION PURSUANT TO THE AMENDED SPV ADR ORDER AND SECTION 105(a) OF THE BANKRUPTCY CODE TO (I) ENFORCE SETTLEMENT AND RELEASE AGREEMENT AND (II) GRANT ATTORNEYS' AND MEDIATOR'S FEES AND COSTS

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated

January 30, 2017 (the "Motion"), of Lehman Brothers Holdings Inc. (the "Plan Administrator"),

as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman*

*Brothers Holdings Inc. and its Affiliated Debtors* for certain entities in the above-referenced

chapter 11 cases, on behalf of Lehman Brothers Special Financing Inc. ("LBSF"), (i) to enforce a

settlement and a release agreement between LBSF and Shinhan Bank ("Shinhan"); and (ii) grant

attorneys' and mediator's fees and costs, as more fully described in the Motion, will be held

before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 623, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court"), on **March 21, 2017 at 2:00 p.m.**

**(Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that responses, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

responding party, the basis for the response and the specific grounds thereof, and shall be filed

with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon:  (i) Shelley C. Chapman,

United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton

Customs House, Courtroom 623; and (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New

York, New York 10153, Attn:  Jacqueline Marcus, Esq. and Christopher J. Cox, Esq., attorneys

for the Plan Administrator, so as to be so filed and received no later than **February 17, 2017 at**

**4:00 p.m. (Prevailing Eastern Time) (the "Response Deadline").**

        PLEASE TAKE FURTHER NOTICE that if a response to the Motion is not

received by the Response Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that responding parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated:  Redwood Shores, CA
        January 30, 2017

*s/ Christopher J. Cox*
Christopher J. Cox
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3100
Christopher J. Cox

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.,**<br><br>Debtor. | **Chapter 11 Case**<br>**No. 08-13555 (SCC)**<br><br>**(Jointly Administered)** |

**MOTION PURSUANT TO THE AMENDED SPV ADR ORDER AND
SECTION 105(a) OF THE BANKRUPTCY CODE TO (I) ENFORCE
SETTLEMENT AND RELEASE AGREEMENT AND (II) GRANT
<u>ATTORNEYS' AND MEDIATOR'S FEES AND COSTS</u>**

# TABLE OF CONTENTS

Relief Requested ........................................................................................................ 1

Background ................................................................................................................ 1

Jurisdiction ............................................................................................................... 2

The Dispute .............................................................................................................. 2

The Parties Reached A Settlement As A Result Of Mediation That Should Be Enforced
    By The Court......................................................................................................... 5

Settlement Agreements Need Not Be In Writing ..................................................... 6

     A.     Shinhan Intended To Be Bound By The Release Agreement ................................ 7

     B.     LBSF Performed Its Obligations Under The Release Agreement ......................... 9

     C.     It Is Undisputed That The Parties Agreed To All Material Terms ...................... 10

     D.     The Release Agreement Was Final And Reduced To Writing ............................ 11

The *Winston* Factors Support An Enforceable Agreement Here .................................. 13

LBSF Is Entitled To Fees And Costs ........................................................................ 14

Notice ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.H. Robbins*,
    880 F.2d 769 (4th Cir. 1989) .................................................................5

*Alvarez v. City of New York*,
    146 F. Supp. 2d 327 (S.D.N.Y. 2001)....................................................11

*Apple Corps v. Sony Music Entertainment*,
    91 Civ. 7465 (CSH), 1993 U.S. Dist. LEXIS 9512 (S.D.N.Y. July 8, 1993)..........................13

*Estate of Brannon v. City of New York*,
    14-CV-2849 (AJN)(SN), 2015 U.S. Dist. LEXIS 145473 (S.D.N.Y. Oct. 19, 2015) .............12

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
    131 F.3d 320 (2d Cir. 1997)..............................................................8, 11

*Conway v. Brooklyn Union Gas Co.*,
    236 F. Supp. 2d 241 (E.D.N.Y. 2002) ...........................................7, 8, 10

*Delyanis v. Dyna-Empire, Inc.*,
    465 F. Supp. 2d 170 (E.D.N.Y. 2006) ..................................................14

*Figueroa v. N.Y. City Dep't of Sanitation*,
    475 Fed. Appx. 365 (2d Cir. 2012)......................................................11

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*,
    No. 04 Civ. 1621(KMW)(AP), 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ..................10, 14

*Kaczmarcysk v. Dutton*,
    414 Fed. Appx. 354 (2d Cir. 2011)......................................................8, 9

*LBSF v. Bank of America Nat. Association et al.*,
    No. 10-03547, Dkt. 1360 ...................................................................4

*N. Fork Country, LLC v. Baker Publ'ns, Inc.*,
    436 F. Supp. 2d 441 (E.D.N.Y. 2006) ...................................................9

*Oparah v. New York City Dep't of Educ.*,
    12-CV-08347 (JGK)(SN), 2015 U.S. Dist. LEXIS 90651 (S.D.N.Y. Mar. 9, 2015) .............12

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    173 F.3d 481 (2d Cir. 1999)................................................................6

*Smith v. Lefrak Organization, Inc.*,
    531 N.Y.S.2d 305, 142 A.D.2d 725 (N.Y. App. Div. 2d Dep't 1988) ....................................13

*Torres v. Costich*,
    935 F. Supp. 232 (W.D.N.Y. 1996) .......................................................................................15

*Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*,
    629 F. Supp. 257 (S.D.N.Y. 1986)...................................................................................15, 16

*Walker v. City of New York*,
    05-CV-0004 (JBW) (JMA), 2006 WL 1662702 (E.D.N.Y. June 15, 2006)...........................14

*Winston v. Mediafare Entm't Corp.*,
    777 F.2d 78 (2d Cir. 1985)............................................................................................. *passim*

**Statutes**

11 U.S.C. § 105(a) ..........................................................................................................................5

28 U.S.C. § 157(b) ..........................................................................................................................2

28 U.S.C. § 1334.............................................................................................................................2

Bankruptcy Code Chapter 11............................................................................................15, 16, 17

CPLR 2104..............................................................................................................................11, 12, 13

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan") for certain entities in the above-referenced

chapter 11 cases, on behalf of Lehman Brothers Special Financing Inc. ("LBSF"), submits this

motion (the "Motion") and respectfully represents:

### Relief Requested

1.      By this Motion, the Plan Administrator on behalf of LBSF seeks a court

order pursuant to the *Amended Order Providing for Alternative Dispute Resolution Procedures*

*for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose*

*Vehicle Counterparties* [ECF No. 29507] (the "Amended SPV ADR Order"), section 105(a) of

title 11 of the United States Code (the "Bankruptcy Code"), and the stipulation of facts entered

into by the Parties (as defined hereinafter) and submitted to the Court on January 27, 2017 (the

"Stipulation"), enforcing the Settlement and the Release Agreement, each as defined below,

between LBSF and Shinhan Bank ("Shinhan" and, together with LBSF, the "Parties"), and

requests that such order enforcing the Settlement and the Release Agreement be immediately

effective and enforceable.

2.      In addition, the Plan Administrator seeks an award of attorneys' and

mediator's fees from Shinhan and any other relief the Court deems appropriate.

### Background

3.      Commencing on September 15, 2008, and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF,

commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11

of the Bankruptcy Code.

4.      On September 17, 2009, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors under Derivatives Contracts* [ECF No. 5207] (the "ADR Procedures Order").

5.      On March 3, 2011, the Court entered the *Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors under Derivatives Transactions with Special Purpose Vehicle Counterparties* [ECF No. 14789] (the "SPV ADR Order").

6.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

7.      On July 18, 2012, the Court entered the Amended SPV ADR Order.

**Jurisdiction**

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Dispute**

9.      Virtually all of the facts set forth below have been stipulated to by LBSF and Shinhan.  *See* Stipulation.  On June 11, 2013, LBSF initiated an ADR proceeding with Shinhan pursuant to the Amended SPV ADR Order by serving SPV Derivatives ADR Notice No. 902 (the "SPV ADR Notice").  On April 6, 2016, LBSF and Shinhan engaged in mediation before the Honorable Ralph Mabey (the "Mediator") pursuant to the Amended SPV ADR Order.  At the conclusion of the mediation, the Mediator proposed that the Parties settle this matter by Shinhan paying LBSF a certain amount (the "Settlement Amount") in exchange for mutual releases.

10.      On April 20, 2016, the Parties each independently agreed to the Mediator's proposal, which contained all material terms of the settlement between the Parties (the "Settlement").  Because LBSF had "routine settlement documentation," the Mediator asked

LBSF to provide the documentation to Shinhan.  *See* Stipulated Ex. A (April 20, 2016 email from Brian Koosed, counsel for Shinhan); Stipulated Ex. B (REDACTED copy of April 20, 2016 email from the Mediator).[1]

11.      On April 21, 2016, LBSF sent a draft agreement, entitled "Release Agreement" to Shinhan's counsel for review and comment.  Stipulated Ex. C at 8 (April 21, 2016 email from Matthew Cucolo) (REDACTED).

12.      Shinhan proposed changes to the Release Agreement on May 11, 2016.  *Id.* at 7 (May 11, 2016 email from Priya Chadha).  LBSF accepted Shinhan's proposed changes to the Release Agreement on May 12, 2016.  *Id.* at 6-7 (May 12, 2016 email from Matthew Cucolo).

13.      On May 19, 2016, Shinhan, through its counsel, requested that:  (a) rather than sign in counterparts, LBSF send Shinhan two original, signed copies of the Release Agreement; and (b) LBSF provide a Board resolution and other documents establishing the LBSF and LBHI signatory's authority to sign the Release Agreement.  *Id.* at 4-5 (May 19, 2016 email from Priya Chadha).

14.      On May 27, 2016, LBSF advised Shinhan's counsel that it had sent the requested materials to Shinhan, including the requested Board resolution and other documents, and two original, signed copies of the Release Agreement.  *See* Stipulated Ex. D (LBSF-executed and notarized copy of the Release Agreement, dated May 26, 2016, as sent to Shinhan, with redactions); Stipulated Ex. E (May 25, 2016 Certification of LBSF Settlement Instructions, as sent to Shinhan); Stipulated Ex. F (LBHI's Secretary's Certificate attaching Board Resolution Naming Christopher O'Meara as Chief Executive Officer and President, as sent to Shinhan); Stipulated Ex. G (LBHI Certificate of Incumbency, as sent to Shinhan).

---

[1] Exhibit letters utilized herein refer to the exhibits attached to the Stipulation.

15.     On June 14, 2016, in response to an inquiry from LBSF, Shinhan's counsel advised LBSF that "Shinhan is trying to get everything signed up and payment remitted by the end of this week."  Stipulated Ex. C at 3 (June 14, 2016 email from Brian Koosed).

16.     On June 17, 2016, Shinhan's counsel advised LBSF that, because some members of Shinhan's staff were out of the office, "Shinhan was not able to complete its internal approval process this week" and that "it looks like the week of June 27 is most likely for signature/payment."  *Id.* (June 17, 2016 email from Brian Koosed).

17.     At 10:39 a.m. on June 28, 2016, Shinhan's counsel advised LBSF that "Shinhan just confirmed that they have completed their internal approval process and the Settlement Agreement will be signed by Thursday June 30 (Korea time), after which they will remit the Settlement Amount."  *Id.* at 2 (June 28, 2016 email from Brian Koosed).

18.     Several hours later, this Court issued its decision in *LBSF v. Bank of America Nat. Association et al.*, No. 10-03547, Dkt. 1360, June 28, 2016 ("BofA Order"), dismissing LBSF's claims against, among others, Shinhan.

19.     After the BofA Order was issued, Shinhan abruptly reneged on the Settlement and refused to return a signed copy of the Release Agreement that it had already negotiated, reduced to writing, and assented to.  Yet, LBSF and Shinhan had a binding settlement on April 20, 2016 when both parties accepted the Mediator's proposal.[2]  The Mediator's proposal involved payment of the Settlement Amount and mutual releases of the Parties; it was not complicated and had no contingencies.  The Parties then agreed on the final language of the Release Agreement, and Shinhan induced LBSF to sign two copies of that Release Agreement.

---

[2] Shinhan's conduct is at odds with almost twenty similarly situated counterparties who settled with LBSF before issuance of the BofA Order and followed through by paying LBSF the agreed-upon settlement amounts following entry of the BofA Order.

Shinhan's refusal to return an executed copy of the Release Agreement or pay the agreed-upon Settlement Amount to LBSF is improper and unsupportable.

20.    Shinhan cannot revoke its clear consent to the terms of the Settlement and avoid its obligations simply because it had a "change of heart" after seeing the BofA Order. It had already agreed to the terms of the Settlement months earlier.

21.    This Motion follows substantial attempts to resolve this dispute short of formal court proceedings, including written submissions to the Mediator, letter briefs to the Court, and a January 10, 2017 informal conference with the Court.

### The Parties Reached A Settlement As A Result Of Mediation That Should Be Enforced By The Court

22.    The Plan Administrator seeks an order from the Court enforcing the Settlement and the Release Agreement pursuant to section 105(a) of the Bankruptcy Code. This Court has authority under the broad equitable powers of the Bankruptcy Code set forth in section 105(a) to enforce the Settlement. *See, e.g.*, *In re A.H. Robbins*, 880 F.2d 769, 776 (4th Cir. 1989) (section 105(a) authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code). The use of the Court's equitable authority is justified here, where the Debtors are seeking to enforce Shinhan's compliance with a Court-mandated mediation process.

23.    The Plan Administrator also seeks an order from the Court enforcing the Settlement and the Release Agreement pursuant to the Amended SPV ADR Order. Under Paragraph 12 of the Amended SPV ADR Order, this Court has authority to hear any dispute concerning a party's compliance with the Amended SPV ADR Order and issue any sanctions the Court deems appropriate. Shinhan's failure to proceed with the Settlement is a violation of Paragraphs 5(a) and 12 of the Amended SPV ADR Order which provide that Shinhan must

"engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the SPV Derivatives ADR Procedures" and that failure to comply in good faith with the Amended SPV ADR Order may result in sanctions by the Court.

24.     Finally, in the Stipulation, the Parties stipulated that this Motion is an appropriate procedure for resolving the current dispute and that this Court has authority to consider the Motion and issue appropriate orders and substantive relief thereupon. *See* Stipulation at 2.

### Settlement Agreements Need Not Be In Writing

25.     "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). As a general matter, "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). This rule even extends to situations where the parties fully contemplate a written contract to evidence their agreement, and in such cases "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Id*. In determining whether parties intended to be bound by a settlement agreement, courts in the Second Circuit analyze four factors, none of which is dispositive: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* at 80.

A.    **Shinhan Intended To Be Bound By The Release Agreement**

26.    The first and most important of the four *Winston* factors is whether there

was an express reservation of the right not to be bound in the absence of a signed writing.  *See*

*Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 249 (E.D.N.Y. 2002).  Here, the

undisputed facts show that Shinhan intended to be bound by the terms of the Settlement, whether

the Release Agreement was fully executed or not.  Indeed, the real issue in this dispute is not the

enforceability of the Parties' April 20, 2016 Settlement, but instead whether Shinhan can renege

on the Settlement because it did not sign a document entitled "Release Agreement."  *See*

Stipulated Ex. D (Release Agreement).  There was no express reservation of rights on April 20,

2016, when the Parties settled, and nothing in the correspondence between the Parties suggests

that Shinhan reserved the right to be bound only upon signature of a settlement agreement.  *See*

Stipulated Ex. A (April 20, 2016 email from Brian Koosed); *see generally* Stipulated Ex. C.

Instead, Shinhan repeatedly stated that the Parties had an agreement and it would remit payment.

*See, e.g.*, Stipulated Ex. A (April 20, 2016 email from Brian Koosed) ("[W]e are pleased to

report that Shinhan has agreed to accept."); Stipulated Ex. C at 3 (June 14, 2016 email from

Brian Koosed) ("Shinhan is trying to get everything signed up and payment remitted by the end

of this week."), 3 (June 17, 2016 email from Brian Koosed) ("it looks like the week of June 27 is

most likely for signature/payment."), and 2 (June 28, 2016 email from Brian Koosed) (Shinhan

"just confirmed that they have completed their internal approval process and the [Release]

Agreement will be signed by Thursday June 30 (Korea time), after which they will remit the

Settlement Amount.").

27.    Similarly, the Release Agreement itself includes no such explicit

reservation of rights concerning the Settlement.  Shinhan instead points to the following

language in Section 5 of the Release Agreement to argue the contrary:

> _Effectiveness_.  This Release Agreement shall become effective upon execution hereof by each of the Parties and the payment, without deduction, set-off or counterclaim, of the Settlement Amount to Lehman.

_See_ Stipulated Ex. D (Release Agreement).  This very standard language simply means that LBSF's release automatically becomes effective upon execution and payment, not that the Settlement itself will become effective upon both signing the Release Agreement and payment by Shinhan.  That the Release Agreement was not effective until it was signed and payment made does not invalidate the Settlement reached before the memorialization of that Settlement was signed.  This is especially true here, where the terms of the Settlement were not in dispute.  _See Conway_, 236 F. Supp. 2d at 249 ("Here, neither party expressed a reservation of the right not to be bound in the absence of an executed agreement. . . .  The only written document anticipated by the parties was a settlement agreement and general release in a format that had recently been drafted and to which the parties had agreed. . . .  There is no language in that document, or any correspondence between the parties, indicating a reservation of right not to be bound.").

28.    Shinhan also points to the presence of a merger clause in Section 11 of the Release Agreement and the decision in _Ciaramella v. Reader's Digest Ass'n, Inc._, 131 F.3d 320 (2d Cir. 1997).  In _Ciaramella_, the court made clear that "[t]he intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances" in finding the parties had expressed an intent to be bound only upon a signed writing.  _Id._ at 322.  However, the facts in _Ciaramella_ were very different.  In that case, there was a settlement "follow[ing] weeks of bargaining over the draft settlement, which at all times clearly expressed the requirement that the agreement be signed to become effective." _Id._ at 325.  The negotiations here reflect the opposite.

29.    _Kaczmarcysk v. Dutton_, 414 Fed. Appx. 354 (2d Cir. 2011), is also inapposite.  Unlike the Release Agreement at issue in this dispute, the agreement at issue in

*Kaczmarcysk* was the proposed settlement agreement itself.  Consequently, the reservation of rights in *Kaczmarcysk* has a different meaning and intent than the "effectiveness" clause in Section 5 of the Release Agreement in this case.  Indeed, Shinhan's position seeks to extend *Kaczmarcysk* beyond any reasonable interpretation of the law or the plain language of the Release Agreement itself; both Parties could execute the Release Agreement, but the Settlement would not be "effective," and thus not binding on Shinhan, until payment was made.  Shinhan would then be able to delay payment indefinitely, without any consequences.  That would be an absurd result.  The language Shinhan points to merely states that the mutual releases become effective upon execution of the agreement and payment.  It does not express an intent by the Parties not to be bound by the Settlement absent a written agreement.

30.    *Winston* is similarly distinguishable on this point.  As the Court noted in *Winston*, "[a]lthough neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent . . . .  In his May 11 letter to the district judge, Kokot requested that the court enter the 30-day order 'subject to consummation of the proposed settlement'" and also referred to a "proposed agreement." *Winston*, 777 F.2d at 81.  The *Winston* Court found this communication made clear that there was no final binding agreement until signature.  *Id.*  In stark contrast, the Parties here agreed to the material terms of the Settlement proposed by the Mediator on April 20, 2016, then agreed to all of the language of the Release Agreement when LBSF accepted all of Shinhan's proposed changes without suggesting that the Settlement still needed to be documented.

**B.    LBSF Performed Its Obligations Under The Release Agreement**

31.    The second factor courts consider in determining whether an enforceable agreement exists is partial performance.  *See N. Fork Country, LLC v. Baker Publ'ns, Inc.*, 436 F. Supp. 2d 441, 446 (E.D.N.Y. 2006) (finding partial performance factor satisfied where

plaintiffs provided defendants with an updated accounts receivable statement and submitted a

proposed stipulation to defendants for their review and signature).  Shinhan claims there has

been no partial performance, but that is not so.  Here, upon Shinhan's request, LBSF executed

the Release Agreement and sent two original executed copies of the Release Agreement to

Shinhan.  Thus, LBSF would have been bound to its release as soon as Shinhan signed the

Release Agreement.  By signing and sending the Release Agreement to Shinhan, LBSF

performed every action required of it under the Settlement.  This factor also weighs in favor of

finding that the Parties had an enforceable Settlement.

### C.    It Is Undisputed That The Parties Agreed To All Material Terms

32.    The third factor courts consider is whether all the terms have been agreed

upon.  *See Conway*, 236 F. Supp. 2d at 251 ("The fact that there was agreement to each term of

the settlement and that the parties recognized there were no additional terms remaining to be

negotiated, weighs heavily in favor of enforcement."); *see also Hostcentric Techs., Inc. v.

Republic Thunderbolt, LLC*, No. 04 Civ. 1621(KMW)(AP), 2005 WL 1377853, at *8 (S.D.N.Y.

June 9, 2005) (finding third factor favored enforcement where "[t]he email exchange agreed on

payment amount and timing, removal of Hostcentric's property from the premises and a time for

that performance, mutual general releases and dismissal of the lawsuit with prejudice").

33.    As in *Hostcentric* and *Conway*, Shinhan agreed to all the material terms

the Parties and the Mediator negotiated, discussed, and ultimately agreed to.  The Parties had

nothing left to negotiate.  Notably, Shinhan concedes that the Parties reached an agreement on all

terms.  In contrast, in *Winston*, "the drafting process revealed several points of disagreement."

*Winston*, 777 F.2d at 82.  And the last draft of the *Winston* settlement document was still

unacceptable to one side and, therefore, it was "not for the court to determine retrospectively that

at some point . . . the changes being discussed became so 'minor' or 'technical' that the contract

was binding." *Id.* at 82-83.  LBSF and Shinhan had agreed on all terms, material or not.  LBSF

and LBHI signed the Release Agreement at Shinhan's request and were simply awaiting

Shinhan's signature.

### D.     The Release Agreement Was Final And Reduced To Writing

34.     Finally, courts consider whether the agreement is a type usually

committed to writing.  *Winston*, 777 F.2d at 80.  While it is true that settlements are generally in

writing, in this case there was a written Release Agreement, that Release Agreement was

complete, and the only missing element was a signature, which here was a function of Shinhan

requesting original signatures rather than exchanging electronic signatures in counterparts.  This

weighs heavily in favor of enforcing the Settlement even absent signatures on the Release

Agreement.  As the court stated in *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 337

(S.D.N.Y. 2001):

> Defendants concede that the settlement agreement in this case is the type of
> agreement that is ordinarily written.  Nonetheless, here there was a written
> settlement agreement that was substantially complete.  The parties had
> extensively negotiated the language of the agreement, and only a couple of items
> remained.  While the written agreement was not signed, the terms of the
> agreement had been largely reduced to writing.  Hence, this factor weighs in favor
> of enforcing the agreement.

The Release Agreement here is even more complete than in *Alvarez*; the final agreement had

been finalized, executed by LBSF, and sent to Shinhan.

35.     Shinhan also argues that the Settlement and the Release Agreement are

unenforceable under New York state law.  Shinhan rightfully acknowledges that the Second

Circuit has declined to rule on whether CPLR 2104 applies in federal cases.  *See, e.g.*,

*Ciaramella*, 131 F.3d at 322 n.1 ("[W]e need not address the issue whether section 2104 applies

in federal cases or is consistent with federal policies favoring settlement."); *Figueroa v. N.Y. City

Dep't of Sanitation*, 475 Fed. Appx. 365, 366 (2d Cir. 2012) (stating "we note that the question

11

of whether federal or state law controls the enforceability of a settlement agreement in this context is an open one . . . [b]ut we need not decide that question here"); *see also Oparah v. New York City Dep't of Educ.*, 12-CV-08347 (JGK)(SN), 2015 U.S. Dist. LEXIS 90651, at *9 (S.D.N.Y. Mar. 9, 2015) ("Th[e] [Second] Circuit has not resolved the question of whether a district court should apply federal or state law to decide a motion to enforce a settlement"). In the face of this uncertainty, Shinhan nevertheless argues that CPLR 2104 renders the Settlement unenforceable because the Release Agreement was not fully executed and/or entered as a court order. Shinhan's reliance on CPLR 2104 is misplaced.

36.     As an initial matter, even assuming CPLR 2104 were to apply to this federal case, the Settlement and the Release Agreement meet all of its requirements for finding a binding settlement. Indeed, even a signed email from counsel satisfies the writing requirements of CPLR 2104. *See Estate of Brannon v. City of New York*, 14-CV-2849 (AJN)(SN), 2015 U.S. Dist. LEXIS 145473 (S.D.N.Y. Oct. 19, 2015) (finding that the signed emails sent by counsel in that case satisfied the requirements of Rule 2104) (citing *Williamson v. Delsener*, 59 A.D.3d 291, 874 N.Y.S.2d 41 (1st Dep't 2009); *Regolodo v. Neighborhood P'ship Housing Dev. Fund Co., Inc.*, 25 Misc. 3d 1229[A], 906 N.Y.S.2d 775, 2009 NY Slip Op 52338[U], 2009 WL 3930902, at *3 [N.Y. Sup. Ct. 2009]). Here, Shinhan accepted the Mediator's proposal on April 20, 2016 in an email stating "we are pleased to report that Shinhan has agreed to accept [the settlement proposal]," which was followed by Shinhan's counsel's initials, "BDK." *See* Stipulated Ex. A. (April 20, 2016 email from Brian D. Koosed). Shinhan's April 20, 2016 email is a signed affirmation of the Settlement between the Parties. Shinhan's counsel also demonstrated an acceptance of the Release Agreement through his June 28, 2016 email, which stated "Shinhan just confirmed that they have completed their internal approval process and the Settlement Agreement will be signed by Thursday June 30 (Korea Time) . . . ." *See* Stipulated Ex. C at 2.

Counsel's June 28, 2016 email was again signed with Shinhan's counsel's initials "BDK." *Id.*

(June 28, 2016 email from Brian Koosed); *see also id.* at 3 (June 14, 2016 email from Brian

Koosed) (same).  Thus, the April 20, June 14, and June 28, 2016 emails from Shinhan's counsel

comply with the writing requirement of CPLR 2104.  As such, the requirements of CPLR 2104

have been fulfilled, and Shinhan's reliance on that statute is unavailing.

37.     Further, even if Shinhan's counsel's email affirmations of the Settlement

and the Release Agreement were deemed insufficient, case law clearly demonstrates that

Shinhan is estopped from employing CPLR 2104 to block enforcement of the Settlement and the

Release Agreement on these facts.  *See, e.g.*, *Apple Corps v. Sony Music Entertainment*, 91 Civ.

7465 (CSH), 1993 U.S. Dist. LEXIS 9512, at \*25 (S.D.N.Y. July 8, 1993) (collecting cases and

finding "a party should be estopped from using technical noncompliance with § 2104 as a ground

on which to vacate a settlement agreement where there is no dispute as to terms or that the

parties entered into the agreement"); *see also Smith v. Lefrak Organization, Inc.*, 531 N.Y.S.2d

305, 306, 142 A.D.2d 725 (N.Y. App. Div. 2d Dep't 1988) ("where there is no dispute between

the parties as to the terms of agreement, the courts will refuse to permit the use of this rule

against a party who has been misled or deceived by the oral agreement to his detriment or who

has relied upon it").  Here, there can be no dispute—as demonstrated by the stipulated facts—

that the Parties entered into an agreement and that the terms of that agreement were certain.

Instead, the only outstanding issue is Shinhan's refusal to return a signed Release Agreement.

That minor technicality cannot prevent enforcement of the Settlement here.

### The *Winston* Factors Support An Enforceable Agreement Here

38.     The four *Winston* factors weigh heavily in favor of enforcing the

Settlement and the Release Agreement.  Shinhan cannot simply back out of a contract to which it

freely agreed based on a "change of heart."  Indeed, as the *Winston* court underscored, the

"freedom to contract orally remains even if the parties contemplate a writing to evidence their

agreement. In such a case, the mere intention to commit the agreement to writing will not

prevent contract formation prior to execution." *Winston*, 777 F.2d at 80.

        39.    Courts routinely enforce settlements in factually analogous situations. *See

Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (enforcing oral

settlement agreement where there was an "email to the mediator and [d]efendants' counsel . . .

affirmatively stat[ing] that the case was settled and that the mediator could inform the Court of

the settlement"); *see also Walker v. City of New York*, 05-CV-0004 (JBW) (JMA), 2006 WL

1662702, at *6 (E.D.N.Y. June 15, 2006) ("Under common law principles adopted by the federal

courts, parties are free to enter into settlement without memorializing their agreement in a fully

executed document, and such agreements are as enforceable as any other oral contract.");

*Hostcentric*, 2005 WL 1377853, at *4 ("[O]nce reached, a settlement agreement constitutes a

contract that is binding and conclusive and the parties are bound to the terms of the contract even

if a party has a change of heart between the time of the agreement to the terms of the settlement

and the time it is reduced to writing." (internal quotations omitted)); *id.* at *9 (enforcing

settlement agreement where parties exchanged emails containing all material terms). Here, the

Parties have a contract, and Shinhan will be in breach of that contract if it does not pay LBSF.

### LBSF Is Entitled To Fees And Costs

        40.    As outlined above, the law and facts clearly demonstrate that Shinhan and

LBSF are parties to an enforceable Settlement and an enforceable Release Agreement. Indeed,

LBSF has tried for months to resolve the current dispute informally, short of resorting to the

Court for formal relief. Despite these substantial informal efforts—and the fact that every

neutral evaluator that has reviewed this particular set of facts and the law has advised Shinhan

that the Parties have an enforceable Settlement and an enforceable Release Agreement—Shinhan

still refuses to return an executed Release Agreement to LBSF and to pay LBSF the agreed-upon

Settlement Amount. Thus, LBSF is left with no option but to appeal to the Court for formal

relief.

41.    By forcing LBSF to file a formal motion in the face of the overwhelming

support for LBSF's position (as evidenced by the facts, law, and prior neutral evaluation of this

dispute), Shinhan is needlessly imposing upon the Court's time and wasting the chapter 11

estates' limited resources. Such actions demonstrate that Shinhan has not complied in good faith

with the Amended SPV ADR Order. As such, Shinhan is "subject to such Sanctions as the Court

deems appropriate." *See* Amended SPV ADR Order at ¶ 12. Pursuant to the Amended SPV

ADR Order, sanctions may include, but are not limited to:

> (i) attorneys' fees incurred by the Chapter 11 Estates with respect to the SPV
> Derivatives ADR Procedures after the sending of a Derivatives ADR Package; (ii)
> fees and costs of the mediator; (iii) an award in the SPV Derivatives ADR Dispute
> in the amount specified in the SPV Derivatives ADR Notice; and/or (iv) an entry
> of a judgment for the Chapter 11 Estates in the related Action.

*Id.* ¶ 12(b).

42.    Moreover, even if the Amended SPV ADR Order did not provide a basis

for an award of attorneys' fees and costs to the Plan Administrator, this Court has the inherent

power to grant such relief in this case. *See, e.g.*, *Torres v. Costich*, 935 F. Supp. 232, 236

(W.D.N.Y. 1996) ("There is no general rule that attorney's fees should be awarded on a

successful motion to enforce a settlement agreement, but a court may award fees in such

circumstances under the court's inherent power to award attorney's fees to a successful litigant

when the opposing party has acted 'in bad faith, vexatiously, wantonly, or for oppressive

reasons.'"); *see also Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment

Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) (awarding attorney's fees to plaintiff on

successful motion to enforce settlement, since defendant had acted in bad faith in requiring

plaintiff to file motion).  Here, Shinhan has known it had a final, binding agreement since

April 20, 2016, but is leveraging its months-long delay in returning the executed Release

Agreement and paying LBSF to take advantage of the happenstance that the Court issued a

ruling in the intervening period.  Such conduct is vexatious, wonton, or oppressive, thereby

warranting an award of LBSF's attorneys' fees and costs pursuant to this Court's inherent

authority to manage the cases before it.  *See id.*

43.     Although, as noted above, the sanctions available to LBSF under the

Amended SPV ADR Order are substantial, *see* Amended SPV ADR Order ¶ 12(b), in filing this

Motion, LBSF seeks only the benefit of its bargain with Shinhan, plus the out-of-pocket costs

Shinhan forced LBSF to expend to enforce the Settlement and the Release Agreement.  Thus,

rather than seeking the full suite of sanctions available under the Amended SPV ADR Order,

LBSF respectfully requests (1) attorneys' fees incurred by LBSF following Shinhan's June 30,

2016 refusal to remit payment of the Settlement Amount to LBSF and relating to the current

dispute concerning the enforceability of the Parties' Settlement and the Release Agreement, and

(2) fees and costs paid to the Mediator associated with the current dispute concerning the

enforceability of the Parties' Settlement and the Release Agreement.  The Plan Administrator

submits that the limited relief requested is more than reasonable under the circumstances and

prevents LBSF's creditors from bearing the costs of Shinhan's unreasonable refusal to

consummate the Settlement.

## **Notice**

44.     No trustee has been appointed in these chapter 11 cases.  The Plan

Administrator has served notice of this Motion in accordance with the procedures set forth in the

second amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; (v) the attorneys for Shinhan; and (vi) all parties who have

requested notice in the chapter 11 cases.  The Plan Administrator submits that no other or further

notice need be provided.

45.     No previous request for the relief sought herein has been made by the Plan

Administrator to this or any other Court.

WHEREFORE the Plan Administrator, on behalf of LBSF, respectfully requests

an order from the Court (i) enforcing the Settlement and the Release Agreement agreed to by the

Parties and ordering Shinhan to pay LBSF the agreed-upon Settlement Amount; (ii) imposing

upon Shinhan (1) attorneys' fees incurred by LBSF following Shinhan's June 30, 2016 refusal to

remit payment of the Settlement Amount to LBSF and relating to the current dispute concerning

the enforceability of the Parties' Settlement and the Release Agreement, and (2) fees and costs

paid to the Mediator associated with the current dispute concerning the enforceability of the

Parties' Settlement and the Release Agreement; and (iii) all such other and further relief as the

Court deems just and proper.

Dated:  January 30, 2017
        Redwood Shores, CA

*s/ Christopher J. Cox*
Christopher J. Cox
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3100

Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings*
*Inc. and Lehman Brothers Special*
*Financing Inc.*

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**LEHMAN BROTHERS HOLDINGS INC.,**<br><br>Debtor. | **Chapter 11 Case**<br>**No. 08-13555 (SCC)**<br><br>**(Jointly Administered)** |

**ORDER GRANTING MOTION PURSUANT TO THE AMENDED SPV ADR ORDER
AND SECTION 105(a) OF THE BANKRUPTCY CODE TO (I) ENFORCE
SETTLEMENT AND RELEASE AGREEMENT AND (II) GRANT
ATTORNEYS' AND MEDIATOR'S FEES AND COSTS**

Upon the motion, dated January 30, 2017 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified*

*Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated*

*Debtors* for certain entities in the above-referenced chapter 11 cases, on behalf of Lehman

Brothers Special Financing Inc. ("LBSF"), (i) to enforce the Settlement and the Release

Agreement among LBSF and Shinhan Bank ("Shinhan"), as more fully described in the Motion;

and (ii) grant the Plan Administrator attorneys' and mediator's fees and costs; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided in accordance with the procedures set forth in the amended order entered June 17,

2010 governing case management and administrative procedures [ECF No. 9635] to (i) K&L

1

Gates LLP, 599 Lexington Ave., New York, New York 10022, Attn: John A. Bicks, Esq.,

attorneys for Shinhan Bank, (ii) the U.S. Trustee, (iii) the Securities and Exchange Commission,

(iv) the Internal Revenue Service, (v) the United States Attorney for the Southern District of

New York, and (vi) all parties who have requested notice in the chapter 11 cases; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBSF, LBHI, their

estates and creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Court finds that the Settlement and the Release Agreement

are enforceable; and it is further

ORDERED that Shinhan shall promptly deliver an executed copy of the Release

Agreement to LBSF; and it is further

ORDERED that Shinhan shall pay LBSF the agreed-upon Settlement Amount

within ten (10) days of entry of this Order; and it is further

ORDERED that Shinhan shall pay to LBSF (1) attorneys' fees incurred by LBSF

following Shinhan's June 30, 2016 refusal to remit payment of the Settlement Amount to LBSF

and relating to the current dispute concerning the enforceability of the Parties' Settlement and the

Release Agreement, and (2) fees and costs paid to the Mediator associated with the current

dispute concerning the enforceability of the Parties' Settlement and the Release Agreement; and

it is further

ORDERED that LBSF shall, within 30 days of entry of this Order, file a signed

affidavit detailing (1) attorneys' fees incurred by LBSF following Shinhan's June 30, 2016

refusal to remit payment of the Settlement Amount to LBSF and relating to the current dispute

concerning the enforceability of the Parties' Settlement and the Release Agreement, and (2) fees

and costs paid to the Mediator associated with the current dispute concerning the enforceability

of the Parties' Settlement and the Release Agreement; and it is further

ORDERED that this Order is binding and effective on the Plan Administrator,

LBHI, LBSF, Shinhan, and any successors thereto; and it is further

ORDERED that the terms of this Order shall be immediately effective and

enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated:  March __, 2017
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE