Hearing Date and Time: February 16, 2017 at 9:30 a.m.  (Prevailing Eastern Time)
Objection Date and Time: February 13, 2017 at 4:00 p.m.  (Prevailing Eastern Time)

Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
*Counsel to Lehman Brothers Holdings Inc. and the*
*Official Committee of Unsecured Creditors of Lehman*
*Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X
In re:                                                           :   Chapter 11
                                                                 :   Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                         :
                                                                 :
              Debtors.                                           :
-------------------------------------------------------------------------------- X
In re:                                                           :   SIPA
                                                                 :   Case No. 08-01420 (SCC)
LEHMAN BROTHERS INC.,                                            :
                                                                 :
              Debtor.                                            :
-------------------------------------------------------------------------------- X

## NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(A), FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH JPMORGAN CHASE BANK, N.A. AND CERTAIN OF ITS AFFILIATES

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated February 1, 2017

(the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as

Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors [ECF No. 23023-1], on behalf of itself,

Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Derivative Products Inc.

("LBDP"), Lehman Brothers Commercial Paper Inc. ("LCPI"), Lehman Brothers OTC

Derivatives Inc. ("LBOD"), Lehman Brothers Financial Products Inc. ("LBFP"), and Lehman

Brothers Commodity Services Inc. ("LBCS," and, with LBHI, LBSF, LBDP, LCPI, LBOD, and LBFP, the "Lehman Parties"[1]), together with the Official Committee of Unsecured Creditors, through its Litigation Subcommittee (the "Committee," and together with LBHI, the "Movants"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of a settlement among the Plan Administrator, on behalf of the Lehman Parties, and JPMorgan Chase Bank, N.A. ("JPMCB" and, collectively with all of its relevant affiliates, "JPMorgan") and certain other JPMorgan Parties,[2] all as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on February 16, 2017 at 9:30 a.m. (Prevailing Eastern Time) (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system (with a courtesy copy delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom

---

[1]        "Lehman" refers to LBHI and all of its relevant affiliates.

[2]        As used herein, the term "JPMorgan Parties" means JPMCB, JPMorgan Markets Limited (f/k/a Bear Stearns International Limited) ("JPMML"), J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.) ("JPMSL"), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("JPMSI").

623; (ii) attorneys for LBHI and certain of its affiliates and for the Committee, Quinn Emanuel

Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn:

Susheel Kirpalani, Andrew J. Rossman, James Tecce, and Tyler G. Whitmer); (iii) the Office of

the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite

1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq. and

Andrea B. Schwartz, Esq.); and (iv) attorneys for JPMorgan Chase Bank, N.A., Wachtell,

Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn: Harold S. Novikoff

and Ian Boczko), so as to be so filed and received by no later than February 13, 2017 at 4:00 p.m.

(Prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received

by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy

Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing and failure to appear may result in relief being granted or denied upon default.

Dated:    February 1, 2017
          New York, New York

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew J. Rossman*
Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer

*Counsel to Lehman Brothers Holdings Inc. and the*
*Official Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc.*

Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
*Counsel to Lehman Brothers Holdings Inc. and the*
*Official Committee of Unsecured Creditors of Lehman*
*Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------------- X | | |
| In re: | : | Chapter 11 |
| | : | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | |
| | : | |
| Debtors. | : | |
| ------------------------------------------------------------------- X | | |
| In re: | : | SIPA |
| | : | Case No. 08-01420 (SCC) |
| LEHMAN BROTHERS INC., | : | |
| | : | |
| Debtor. | : | |
| ------------------------------------------------------------------- X | | |

**MOTION OF LEHMAN BROTHERS HOLDINGS INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(A), FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH JPMORGAN CHASE BANK, N.A. AND CERTAIN OF ITS <u>AFFILIATES</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................2

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................4

    A.    Collateral Disposition Agreement..........................................................4

    B.    Tassimo Action ...............................................................7

    C.    Other Objections ...........................................................9

        (1).   Securities Lending Objection......................................9

        (2).   492nd Omnibus Objection ...........................................9

    D.    LBSF Action ................................................................10

    E.    Negotiation Of Settlement Agreement....................................................10

III.  JURISDICTION ................................................................11

IV.  ARGUMENT ................................................................11

    A.    Applicable Standards For Bankruptcy Settlements ..............................................11

    B.    Settlement Easily Satisfies Standards Applicable To Rule 9019 Motions ............14

NOTICE................................................................16

CONCLUSION................................................................16

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors [ECF No. 23023-1] (the "Plan"), on behalf of itself,

Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Derivative Products Inc.

("LBDP"), Lehman Brothers Commercial Paper Inc. ("LCPI"), Lehman Brothers OTC

Derivatives Inc. ("LBOD"), Lehman Brothers Financial Products Inc. ("LBFP"), and Lehman

Brothers Commodity Services Inc. ("LBCS," and, with LBHI, LBSF, LBDP, LCPI, LBOD, and

LBFP, the "Lehman Parties"[3]), and the Official Committee of Unsecured Creditors, through its

Litigation Subcommittee (the "Committee"[4] and, together with LBHI, the "Movants"), hereby

move (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532 (as amended, the "Bankruptcy Code"), for the entry of an order approving the Settlement[5]

---

[3]    "Lehman" refers to LBHI and all of its relevant affiliates.

[4]    Section 15.1(a) of the Plan (p. 93), and paragraph 48 of the Order Confirming the Plan [ECF No. 23023 (the "Confirmation Order") (p. 43)] both provide that "[o]n the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (1) implementation of the Plan through the date of the initial Distribution in accordance with section 8.3 of the Plan; (ii) defending any appeals from this Confirmation Order until final disposition of such appeals; and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date. Following the Effective Date, the litigation and derivatives subcommittees of the Creditors' Committee may continue functioning for the limited purposes of (i) resolving pending litigation . . . ."

[5]    As used herein, "Settlement" means the settlement documented in the settlement agreement attached hereto as Exhibit A (the "Settlement Agreement"). The summary of the Settlement Agreement herein is qualified in its entirety by the terms and conditions of the Settlement Agreement. The terms and conditions of the Settlement Agreement control to the extent that there is any conflict or inconsistency between the summary and the Settlement Agreement. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Settlement Agreement.

1

among the Lehman Parties, the Committee, and the JPMorgan Parties[6] with respect to

JPMorgan's remaining claims and the objections against them and respectfully state as follows:

## I.    PRELIMINARY STATEMENT

1.    The Settlement finally resolves the last of LBHI's disputes with JPMorgan, its

largest secured creditor, and enables creditor distributions of nearly $800 million, on the

following terms:

- *Cash Payment*.  JPMCB will pay to LBHI for the benefit of LBHI and its subsidiaries cash totaling $797.5 million (the "Settlement Payment").

- *Tassimo Action*.  LBHI will withdraw with prejudice its Objection to Proofs of Claim No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. of JPMorgan Chase Bank, N.A. Regarding Triparty Repo-Related Losses (the "Tassimo Action") [ECF No. 19604], objecting to portions of Claim No. 66462 (by JPMCB against LBHI) (the "Deficiency Claim") relating to the purported deficiency remaining after JPMCB's application of proceeds from the disposition of securities held by JPMorgan as collateral against intraday credit extended in connection with JPMorgan's role as triparty repo custodian for Lehman Brothers Inc. ("LBI").

- *Securities Lending Objection*.  LBHI will withdraw with prejudice its Objection to Portions of Proofs of Claim No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. of JPMorgan Chase Bank, N.A. Regarding Securities Lending (the "Securities Lending Objection") [ECF No. 47719], concerning JPMCB's claims relating to its disposition of collateral held pursuant to certain LBI securities lending transactions for which JPMCB served as custodian.

- *492nd Omnibus Objection.*  LBHI will withdraw with prejudice its 492nd Omnibus Objection to Miscellaneous Claims by Various Subsidiaries of JPMorgan Chase & Co. Against Various Debtors (Insufficient Documentation Claims (the "492nd Omnibus Objection") [ECF No. 47715], objecting to portions of Claims Nos. 66474 (by JPMML against LBHI), 66452 (by JPMSI against LBHI) 66455 (by JPMCB against LBSF), 66462 (by JPMCB against LBHI), 66465 (by JPMCB against LBDP), 66466 (by JPMCB against LCPI), 66468 (by JPMCB against LBOD), 66469 (by JPMCB against LBFP), and 66473 (by JPMCB against LBCS), concerning

---

[6]    As used herein, the term "JPMorgan Parties" means JPMCB, JPMorgan Markets Limited (f/k/a Bear Stearns International Limited) ("JPMML"), J.P. Morgan Securities plc (f/k/a J.P. Morgan Securities Ltd.) ("JPMSL"), and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("JPMSI").

miscellaneous claims for which LBHI has alleged JPMorgan has failed to supply sufficient documentation.

- **LBSF Action.** LBSF will dismiss JPMCB and JPMSL with prejudice from the adversary proceeding commenced by LBSF against various parties in the Bankruptcy Court on September 14, 2010 [Case No. 10-03547 at ECF No. 1] (the "LBSF Action"), to which JPMCB and JPMSL were added as parties in the second amended complaint on July 23, 2012 [Case No. 10-03547 at ECF No. 303-1].[7]

- **Claims Allowance and CDA.** JPMorgan's Claim No. 66462 against LBHI will be reduced, allowed in an amount consistent with the Settlement Payment and the settlement of the LBSF Action, and the 492nd Omnibus Objection, as set forth in an instruction letter (the "Instruction Letter") to be submitted to the claims agent retained in the Chapter 11 Cases: Epiq Systems Inc. (the "Claims Agent"), and deemed fully satisfied because it had been previously fully satisfied pursuant to the Collateral Disposition Agreement dated March 16, 2010 [ECF No. 7619] (as amended and supplemented from time to time, the "CDA"). Claim Nos. 66474, 66452, 66455, 66465, 66466, 66468, 66469, and 66473 will be assigned to certain of the Lehman Parties on a final basis and reconciled in amounts not to exceed $200 million, as set forth in the Instruction Letter. All true-up and other remaining obligations of the parties under the CDA will be terminated and discharged.

- **Unaffected Matters.** Unaffected by the Settlement are remaining claims not the subject of the objections enumerated above, including claims filed by or on behalf of a JPMorgan Entity as agent, for a customer or for a fund that it manages, claims relating to Canary Wharf and claims held from time to time by a JPMorgan entity's distressed claims trading desk, and any other filed claims that JPMorgan did not assert were covered by LBHI's August and September 2008 guaranties and security agreements.

2.     Through the Tassimo Action, LBHI and the Committee (the "Objectors") objected to the sufficiency of the credit provided to LBI in connection with its disposition of LBI securities collateral. In addition to alleging that JPMorgan disposed of LBI collateral in a commercially unreasonable manner, the Objectors contend that JPMorgan improperly included in its claim approximately $280 million of post-petition interest and that it failed to net against the Deficiency Claim value received in a settlement from Barclays, resulting in an improper

---

[7]     As used herein, "Settled Matters" means the LBSF Action (as to JPMCB and JPMSL only), the Tassimo Action, the Securities Lending Objection, and the 492nd Omnibus Objection.

double recovery.  JPMorgan has vigorously defended both its disposition of the collateral and the amount and valuation of the Deficiency Claim.  The Settlement resolves the Tassimo Action on fair and reasonable terms under Bankruptcy Rule 9019.

3.       The Settlement is a global resolution of all claims and objections by Lehman against JPMorgan, as well as an agreement to terminate the CDA and the true-up rights and obligations outlined therein.  The Settlement removes the uncertainty inherent in any litigation where hundreds of millions of dollars are at stake and millions of dollars in fees would have been spent by each side if the case were to proceed through trial and enables a significant creditor distribution of almost $800 million.  Accordingly, the Plan Administrator and the Committee have determined, in the exercise of their sound business judgment, that the Settlement is in the best interests of the Lehman estate and its creditors.

## II.       RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

4.       Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Petition Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

5.       On December 6, 2011, the Court approved and entered the Confirmation Order. The Plan became effective on March 6, 2012.

## A.    COLLATERAL DISPOSITION AGREEMENT

6.       JPMorgan lodged proofs of claim against LBHI and its affiliated debtors in the Chapter 11 Cases and against LBI in its Securities Investor Protection Act proceeding totaling more than $29 billion in the aggregate (as of October 2008).[8]  In particular, JPMCB asserted

---

[8]       Debtors' Motion Pursuant To Section 363 Of Bankruptcy Code And Bankruptcy Rule 6004 For Approval Of Collateral Disposition Agreement With JPMorgan Chase Bank, N.A., et al. (the "CDA Mot.") at 3 (¶ 4) [ECF No. 7269].  See also Declaration Of Amy R. Wolf In Support Of Defendant's Motion To Dismiss dated

claims totaling approximately $25.3 billion against LBI (as primary obligor) allegedly for "extensions of credit for the clearance and settlement of securities transactions under the [2000] Clearance Agreement …" (hereinafter, the "Clearing Claims").[9]  JPMorgan also filed claims against LBHI as the purported guarantor of LBI's obligations with respect to the Clearing Claims and against LBHI as guarantor under various derivatives agreements.

7.    To satisfy its alleged Clearing Claims, JPMCB disposed of some of LBI's securities collateral and provided a credit to LBI of approximately $19 billion.[10]  JPMorgan did not dispose of other securities collateral, including certain structured securitization vehicles (collectively, the "Structured Securities").  The Structured Securities included certain LBI collateral (including the structure known as RACERS) as well as LBHI securities collateral (including the structures known as Fenway, Pine, Spruce, and Verano), all of which LBHI believed were highly valuable.

8.    In March 2010, JPMorgan and Lehman entered into the CDA.[11]  That agreement

---

October 19, 2010 [Avoidance action ECF No. 53] ("Wolf Decl.") at 3 (¶ 15) ("Attached hereto as Exhibit 14 is a copy of JPMorgan's proofs of claim, as amended April 1, 2010.").

[9]    Wolf Decl. Ex. 14 (Amended And Restated Annex To Proofs Of Claim Of JPMorgan Chase Bank, N.A., J.P. Morgan Securities Inc. and J.P. Morgan Clearing Corp. dated March 31, 2010 at 2 (¶ 2.A.I)).

[10]    See Wolf Decl. Ex. 14 (Amended And Restated Annex To Proofs Of Claim Of JPMorgan Chase Bank, N.A., J.P. Morgan Securities Inc. and J.P. Morgan Clearing Corp. dated March 31, 2010 at 2-3 (¶ 2.A.I)) ("As of March 15, 2010, such amount ["clearing claim" of $25,279,675,964] had been reduced to $6,333,781,099, principally by application of the sale proceeds of securities collateral (the 'Clearance Agreement Securities Collateral') pledged by [LBI] pursuant to the Clearance Agreement to secure such claims, application of distributions received on the Clearance Agreement Securities Collateral, application of cash repo adjustments received with respect to the Clearance Agreement Securities Collateral, the exercise of setoff rights against certain of the Debtor's [LBI's] demand deposit accounts, application of collateral pledged by the Debtor in connection with the Agency MLSA … and other account activity").

[11]    All summaries and descriptions of the CDA in this Motion are for ease of reference only and do not constitute amendments of or admissions regarding its terms.  To the extent there is any conflict or inconsistency between summaries or descriptions of the CDA in this Motion and the CDA itself, the terms of the CDA govern unchanged by this Motion.

gave JPMorgan the right satisfy on a "provisional basis" the $7.38 billion[12] in asserted claims

against LBHI and its affiliated debtors that remained unsatisfied on the following terms:  (a) the

provisionally satisfied claims would remain subject to challenge by Lehman; (b) LBHI would

allow JPMorgan to provisionally apply cash collateral posted by LBHI; (c) LBHI would pay an

additional approximately $550 million in cash to JPMorgan to satisfy all of JPMorgan's claims;

(d) JPMorgan would return the Structured Securities to Lehman; and (e) LBHI would be

subrogated to the claims JPMorgan had filed against the Lehman estates.[13]  The CDA was not a

settlement of JPMorgan's claims against the Lehman debtors.  Instead, it allowed LBHI to pay

down the full amount of JPMorgan's claims and stop the claimed accrual of post-petition

interest—subject expressly to the estates' right to object to JPMorgan's underlying claims,

including the claim for post-petition interest, and challenge the validity of LBHI's parent-level

guaranties.[14]  The Court approved the CDA by order dated March 24, 2010 [ECF Nos. 7619,

---

[12]    See CDA Mot. at 4 (¶ 6) ("After giving effect to the application of Collateral to date (including from the receipt of proceeds received from the disposition of Collateral), the current outstanding amount of the Claims asserted by JPMorgan (including estimated accruals of interest and fees through March 31, 2010) is approximately $7.38 billion.").  The $7.38 billion in claims has been reduced significantly since the execution of the CDA as a result of settlements and adjustments, including the return of $714 million of cash collateral pursuant to the settlement of JPMorgan's asset management claims previously approved by this Court [ECF No. 25383].

[13]    See CDA at 3 (¶ 3) ("Subrogation And Assignment.  (a) In consideration of (i) the Cash Payment made by LBHI with respect to the Claims against LBI and other subsidiaries of LBHI, (ii) the application pursuant to Paragraph 1 of Cash Collateral posted by LBHI to the payment of Claims against LBHI and other subsidiaries of LBHI, and (iii) Prior Payments of Collateral posted by LBHI to the payment of Claims against LBI and other subsidiaries of LBHI, simultaneously with the payment of the Cash Payment and as described more detail in this agreement:  (1) LBHI shall be subrogated to the claims of the relevant JPMC Entities against LBHI and such other subsidiaries to the full extent of the payments made by LBHI or applied from its property (the 'Subrogated Claims') to such Claims.").

[14]    See CDA Mot. at 1 (¶ 1) ("In an effort to transfer management of certain illiquid securities held as collateral by JPMorgan back to certain of the Debtors, the Debtors and JPMorgan have reached [the CDA] . . . .  [The CDA] provides the Debtors with the means of recovering and administering, in a manner most conducive to enhancing their value, illiquid securities with an aggregate face value in the billions of dollars.  Second, it allows JPMorgan to apply cash and cash equivalents it is currently holding to provisionally satisfy its claims against the Debtors, while reserving the rights of all parties with respect to the propriety of such claims.  Upon a further cash payment to JPMorgan by the Debtors in the amount of the unpaid claims balance remaining after application of the

7785].[15]

### B.   TASSIMO ACTION

9.      JPMCB acted as the primary clearing bank for Lehman's broker-dealer business and as LBI's non-exclusive custodian for tri-party repurchase agreements.  The Clearing Claims arise out of that relationship.  In an effort to satisfy the Clearing Claims, JPMCB was entitled to, and did dispose of LBI securities collateral and apply the purported proceeds to reduce the approximately $25 billion of credit it had outstanding to LBI arising from its role as LBI's tri-party repo custodian.  JPMorgan filed the Deficiency Claim, claiming the deficiency against LBHI as guarantor of LBI's obligations.[16]

10.     On August 31, 2011, the Objectors filed the Tassimo Action, objecting to the Deficiency Claim.  Through the Tassimo Action, LBHI and the Committee (i) challenged JPMorgan's disposition of LBI collateral as commercially unreasonable under Article 9 of the Uniform Commercial Code ("UCC"), resulting in an inflated Deficiency Claim, (ii) challenged JPMorgan's inclusion in the Deficiency Claim of approximately $280 million in post-petition interest as inflated, and (iii) sought to reduce the Deficiency Claim by the value received by JPMorgan through settlement of a related dispute with Barclays.  JPMorgan vigorously disputes the Tassimo Action.

---

[15]      JPMCB and LBHI are parties to letter agreements amending and supplementing the CDA dated March 31, 2010, July 12, 2010, April 1, 2011, April 20, 2011, February 21, 2012, April 5, 2012, November 26, 2013 (the "November 26 Letter"), April 29, 2014 (the "April 29 Letter"), June 13, 2014 (the "June 13 Letter") and March 12, 2015.

cash and cash equivalents, JPMorgan will transfer the illiquid securities to certain of the Debtors, with all parties reserving their respective rights.").

[16]      In Adversary proceeding No. 10-03266, the Objectors sought to invalidate LBHI's guaranty of LBI's obligations to JPMorgan.  The Parties ultimately settled that dispute, leaving LBHI's guaranty intact, and the settlement was approved by the Court on February 11, 2016 [ECF No. 52002].

11.     On February 24, 2012, JPMorgan filed a motion to strike [ECF No. 25781] portions (ii) and (iii) of the Tassimo Action challenging the amount of post-petition interest and the failure to reduce the amount of the claim as a result of the Barclays settlement.  JPMorgan's motion was heard on April 26, 2012 and denied without prejudice by order dated July 16, 2012 [ECF No. 29420].

12.     During discovery-related negotiations, the Parties agreed to forego the bulk of discovery until LBHI had filed all of the objections it intended to file against any claims by JPMorgan Entities.  Following the filing of the Securities Lending Objection and the 492nd Omnibus Objection in January 2015, the Parties resumed discovery in the Tassimo Action without any restrictions.  Over the ensuing two years, JPMorgan responded to requests from the Objectors by producing almost 1 million documents, totaling over 7.5 million pages.  LBHI responded to requests from JPMorgan by producing over 400,000 documents totaling over 2.6 million pages.  The Objectors served over 40 subpoenas on third parties.  Both LBHI and JPMorgan also produced reams of data, including trading data, marks on securities, and other information.

13.     Prior to agreeing to a stay of discovery to allow for implementation of a negotiated agreement in principle, fact depositions were well underway.  The Objectors have deposed ten current and former JPMorgan employees (some in their capacity as corporate representatives pursuant to Rule 30(b)(6)), and JPMorgan has taken seven depositions.  The Objectors have noticed an additional 27 fact-witness depositions and anticipate noticing at least a dozen more.  JPMorgan has noticed an additional 19 fact-witness depositions.  The Parties were also in the process of negotiating the scope of six outstanding 30(b)(6) deposition notices served by the Objectors on JPMorgan.

14.     The Parties appeared before the Court in multiple informal discovery conferences to resolve potential disputes.  During one of those conferences, the Court set a trial date for the Tassimo Action of January 8, 2018.  In the absence of this Settlement, the additional year of litigation would include fact discovery through June 30, 2017, expert reports and expert discovery through October 20, 2017, and dispositive motions to be fully briefed by November 10, 2017.

**C.     OTHER OBJECTIONS**

**(1).     Securities Lending Objection**

15.     JPMCB also served as custodian for LBI's securities lending transactions.  On January 7, 2015, LBHI filed the Securities Lending Objection [ECF No. 47719], objecting to portions of Claim No. 66462 (by JPMCB against LBHI) wherein JPMCB asserts claims relating to its role as custodian for LBI's securities lending transactions.  JPMCB disputes the contentions in the Securities Lending Objection.  While LBHI and JPMCB have exchanged information related to the claims addressed in the Securities Lending Objection, formal discovery has not begun.

**(2).     492nd Omnibus Objection**

16.     On January 7, 2015, LBHI filed the 492nd Omnibus Objection [ECF No. 47715], objecting to all or portions of various claims by JPMorgan-affiliated entities against LBHI and affiliated debtor entities on the grounds that they lack sufficient supporting documentation.  JPMorgan disputes the contentions in the 492nd Omnibus Objection.  While Lehman and JPMorgan have exchanged information related to the claims addressed in the 492nd Omnibus Objection, formal discovery has not begun.

### C.    LBSF ACTION

17.    On September 14, 2010, LBSF filed Adversary Proceeding No. 10-03547 (SCC) against various parties, captioned Lehman Brothers Special Financing Inc. v. Bank of America National Association, et al. (the "LBSF Action") [LBSF Action ECF No. 1] relating to LBSF's role as swap counterparty in structures where, LBSF alleges, the related documentation contained provisions which changed the relative priority of cash distributions from certain trusts in response to a bankruptcy filing.  LBSF added JPMCB and JPMSL as parties in the second amended complaint filed on July 23, 2012 [LBSF Action ECF No. 303-1], last amended on October 13, 2015 [LBSF Action ECF No. 1156].  JPMCB and JPMSL dispute the allegations in the LBSF Action.  The Court recently granted a motion to dismiss the claims against JPMCB and JPMSL in the LBSF Action, which order is subject to appeal.

### G.    NEGOTIATION OF SETTLEMENT

18.    In January 2016, the Parties reached a resolution of many of the disputes between them,[17] but the Settled Matters were left unresolved.  The Parties continued exchanging information and negotiating and expended significant time and effort working toward a resolution of those unresolved matters.  In April and May 2016, the Parties engaged in settlement conferences that included business decision-makers on both sides, as well as both internal and external counsel.  Discussions continued on and off following that meeting, as the Parties continued to litigate, leading to a follow-up conference in September 2016.  Following the

---

[17]    See Motion of Lehman Brothers Holdings Inc. and Official Committee of Unsecured Creditors, Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a), for Entry of Order Approving Settlement Agreement with JPMorgan Chase Bank, N.A. and Certain of its Affiliates with Respect to Avoidance Action and Derivatives Claims Objections and Granting Related Relief [ECF No. 51904], filed on January 25, 2016 and approved by the Court by order dated February 8, 2016 [ECF No. 52002].

September 2016 meeting, designated negotiators from both sides continued to discuss the

dispute, and those discussions ultimately led to the Settlement.

### III.    JURISDICTION

19.    This Court has subject matter jurisdiction to consider and determine this matter

pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV.    ARGUMENT

#### A.    APPLICABLE STANDARDS FOR BANKRUPTCY SETTLEMENTS

20.    Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice

and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. Proc.

9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best

interests of the estate."  In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 499, 505 (Bankr.

S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor, but

must not "fall beneath the lowest point in the range of reasonableness."  Id. (quoting Cosoff v.

Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)); accord In re Spielfogel, 211

B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

21.    Compromises are "a normal part of the process of reorganization."  Prot. Comm.

for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)

(quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939)).  Compromises

may be effected separately during the reorganization proceedings or in the body of the plan itself.

Drexel Burnham, 138 B.R. at 758.  The decision to approve a particular compromise lies within

the sound discretion of the bankruptcy court.  See Nellis v. Shugrue, 165 B.R. 115, 123

(S.D.N.Y. 1994).  The Court's discretion may be exercised "in light of the general public policy

favoring settlements."  In re Hibbard Brown & Co., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A

proposed compromise settlement implicates the issue of whether it is "fair and equitable, and in

the best interest of the [debtor's] estate."  In re Best Prods., 168 B.R. 35, 50 (Bankr. S.D.N.Y.

1994) (internal citations omitted).  The Court must apprise itself "of all relevant facts necessary

for an intelligent and objective opinion of the probabilities of ultimate success should the claim

be litigated."  Anderson, 390 U.S. at 424.

22.     Courts typically consider the following factors in determining whether a

settlement should be approved:  (i) the probability of success in litigation, with due consideration

for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment;

(iii) the complexity and likely duration of the litigation and any attendant expense,

inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who

affirmatively support, the proposed settlement; (v) the competence and experience of counsel

who support the settlement; (vi) the relative benefits to be received by members of any affected

class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and

not the product of fraud or collusion; and (viii) the debtor's informed judgment that the

settlement is fair and reasonable.  See id.; In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr.

S.D.N.Y. 1998); In re Best Prods. Co., 168 B.R. at 50.

23.     While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, In re W.T. Grant & Co.,

699 F.2d at 608, or conduct a full independent investigation, Drexel Burnham, 134 B.R. at 496.

Moreover, in reviewing a proposed global compromise, the Court need not be aware of or decide

the particulars of each individual claim resolved by the settlement or "assess the minutia of each

and every claim"; rather, the Court "need only canvass the issues and see whether the settlement

falls 'below the lowest point in the range of reasonableness.'"  Shugrue, 165 B.R. at 123.  As one

court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement in its entirety is appropriate for the . . . estate." Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 430 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1993).

24.    The Court also has authority under the broad equitable powers of the Bankruptcy Code set forth in section 105(a) to approve the Settlement Agreement. See, e.g., In re A.H. Robbins, 880 F.2d 769, 776 (4th Cir. 1989) (section 105(a) authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code); In re Joint E. & S. Dists. Asbestos Litig., 878 F. Supp. 473 (E.D.N.Y. & S.D.N.Y. 1995) and 129 B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) of the Bankruptcy Code authorizes the federal courts in bankruptcy cases to approve a settlement modifying distributions, obligations, and payment procedures under a trust).

25.    This Court has granted similar relief in the Chapter 11 Cases pursuant to section 105(a) of the Bankruptcy Code. See Order Approving the Settlement Agreement Relating to Restructured Asset Certificates with Enhanced Returns, Series 2006-20AT Credit Default Swap Agreement and Trust Agreement [ECF No. 49408]; Order Approving the Settlement Agreement Relating to Exum Ridge CBO 2007-2 Credit Default Swap Agreement and Indenture [ECF No. 48318]; Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Partial Settlement Agreement Relating to SGS HY Credit Fund I (Exum Ridge CBO 2006-3) Swap Agreement and Indenture [ECF No. 45451]; Order Approving Partial Settlement Agreements Relating to Certain Credit Default Swap Agreements and Trust Agreements [ECF No. 39624]; Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement

Relating to Airlie CDO I, Ltd. [ECF No. 39017]; Order Pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating

to Pebble Creek LCDO 2007-3, Ltd. [ECF No. 36867]; Order Approving Settlement Agreement

and Indemnity Between Lehman Brothers Special Financing Inc. and Deutsche Bank Trust

Company Americas, as Trustee, Relating to Credit Default Swap Agreement [ECF No. 30096];

Order Approving Settlement Agreement with JPMorgan Chase Bank, N.A. and Certain of its

Affiliates with Respect to Avoidance Action and Derivatives Claims Objections and Granting

Related Relief [ECF No. 52002].

**B.**     **Settlement Easily Satisfies Standards Applicable To Rule 9019 Motions**

26.     The Settlement resolves all claims and objections by Lehman against JPMorgan,

including the Tassimo Action, the Securities Lending Objection, the 492nd Omnibus Objection,

and the LBSF Action.

27.     There are significant risks facing both the estates and JPMorgan if they continue

to litigate the Settled Matters.  As this Court has recognized during various discovery

conferences, a trial of the Tassimo Action would be a complex, sprawling, lengthy affair.  The

Objectors are challenging JPMorgan's disposition of thousands of positions over a multi-year

time period in a vast array of different types of securities based on a massive record of data,

documents and testimony, and any result after trial would almost certainly be appealed.  The

degree of uncertainty, including the range of potential outcomes, on both sides in a trial would be

extremely high.

28.     Furthermore, the Securities Lending Objection and 492nd Omnibus Objection each

remain at a nascent stage and would also require substantial time and resources to litigate,

despite representing a fraction of the amount at issue in the Tassimo Action.  Moreover, the

Settlement terminates and fully discharges the Parties' rights and obligations under the CDA,

14

removing another potential source of disputes that could arise between the Parties should any of the Settled Matters proceed to a litigated conclusion instead of settlement.

29.     Absent the Settlement, Lehman and the Committee will continue to prosecute the Tassimo Action with the same verve that has resulted in the existing record, which is massive and continues to grow.  That litigation will be complicated, expensive, and time-consuming, requiring continued fact discovery on a huge scale, as well as a substantial amount of work by hired experts.  Though on a far smaller scale, the Securities Lending Objection would require similarly thorough discovery, analysis, and presentation.

30.     The Settlement resolves the Settled Matters on fair and reasonable terms under Bankruptcy Rule 9019—a $797.5 million cash payment and reduction and allowance of the Deficiency Claim by the Plan Administrator.

31.     Time and cost are prominent considerations.  The estates have been investigating the claims asserted by the JPMorgan Parties since these cases began nearly eight years ago.  Both sides have incurred significant legal fees in prosecuting and defending fact-intensive claims and objections among tens of thousands of transactions between the parties.  The Settlement follows repeated attempts to reach a consensual resolution of the Parties' disputes.  The Settlement is indisputably the product of extensive arm's length negotiations.  Indeed, the Parties were only able to reach an agreement after years of hard-fought litigation and many months of settlement negotiations.

32.     Accordingly, the compromises in the Settlement are a "fair and equitable" resolution of the Parties' disputes, well within the "range of reasonableness," and are in the best interests of LBHI and the other Lehman Parties and their respective estates and creditors.

## NOTICE

33.     No trustee has been appointed in these Chapter 11 Cases.  The Movants have

served notice of this Motion in accordance with the procedures set forth in the second amended

order entered on June 17, 2010, governing case management and administrative procedures for

these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; (v) the attorneys for JPMorgan; and (vi) all parties who have requested

notice in the Chapter 11 Cases.  The Movants submit that no other or further notice need be

provided.  No previous request for the relief sought herein has been made by the Movants to this

or any other Court.

## CONCLUSION

WHEREFORE the Movants respectfully request that the Court enter an Order in the form

attached as Exhibit B (a) granting the Motion and (b) awarding such other and further relief as it

deems just and proper.


Dated:    February 1, 2017
          New York, New York



Respectfully submitted,


QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Andrew J. Rossman*
Susheel Kirpalani
Andrew J. Rossman
James C. Tecce
Tyler G. Whitmer
*Counsel to Lehman Brothers Holdings Inc. and the*
*Official Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc.*