Hearing Date and Time: March 28, 2017 at 3:00 p.m. (Prevailing Eastern Time)
Response Deadline: March 21, 2017  at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (SCC)
                                          :
              Debtors.                    :    (Jointly Administered)
                                          :
------------------------------------------------------------------x
```

## NOTICE OF MOTION PURSUANT TO SECTIONS 8.4, 9.3, AND 14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval, pursuant to Sections 8.4, 9.3, and 14.1 of the Plan, to estimate certain LBIE-based guarantee claims in the maximum amount of zero dollars for reserve and distribution purposes, all as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 28, 2017 at 3:00 p.m. (Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Garret A. Fail, Esq., attorneys for LBHI and certain of its affiliates; and (iii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq., so as to be so filed and received no later than **March 21, 2017 at 4:00 p.m. (Eastern Time) (the "Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

WEIL:\96029188\5\58399.0011

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 23, 2017
      New York, New York

                                   /s/ Garrett A. Fail
                                   Garrett A. Fail

                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone: (212) 310-8000
                                   Facsimile: (212) 310-8007
                                   Garrett A. Fail


                                   Attorneys for Lehman Brothers Holdings Inc.
                                   and Certain of Its Affiliates

WEIL:\96029188\5\58399.0011

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
**In re**                                                      :   **Chapter 11 Case No.**
                                                               :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                   :   **08-13555 (SCC)**
                                                               :
                                            **Debtors.**       :   **(Jointly Administered)**
                                                               :
---------------------------------------------------------------x

**MOTION OF PLAN ADMINISTRATOR PURSUANT TO SECTIONS 8.4, 9.3,**
**AND 14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**
**TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

JURISDICTION ....................................................................................................5

BACKGROUND ...................................................................................................5

    A.  Chapter 11 Case Background ...................................................................5

    B.  LBIE's English-law Administration...........................................................5

    C.  Plan Provisions Governing Distributions ....................................................7

BASIS FOR REQUESTED RELIEF.........................................................................9

THE REMAINING GUARANTEE CLAIMS SHOULD BE ESTIMATED TO BE
ZERO DOLLARS FOR RESERVE AND DISTRIBUTION PURPOSES ..................................11

    A.  Zero Dollars Reflects LBHI's Ultimate Liability for Remaining Guarantee Claims ........11

    B.  Estimating the Remaining Guarantee Claims Will  Avoid Undue Delay in the
        Administration of LBHI's Case ...............................................................14

NOTICE ............................................................................................................20

WEIL:\96029188\5\58399.0011

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Bus. Solutions, Inc.*,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) ...............................................................10

*Bankers' Trust Co. v. Irving Trust Co. (In re United Cigar Stores)*,
    73 F.2d 296 (2d Cir. 1934) ................................................................................18

*Bittner v. Borne Chem. Co., Inc.*,
    691 F.2d 134 (3d Cir. 1982) ..............................................................................11

*Calcot Ass'n v. Coast Cotton Mills*,
    295 P.2d 1 (Cal. Ct. App. 1956)........................................................................16

*In re Enron Corp.*,
    No. 01-16034, 2006 WL 544463 (Bankr. Jan. 17, 2006)........................ 10, 13, 19

*F.D.I.C. v. Schumacher*,
    660 F. Supp. 6 (E.D.N.Y. 1984) ........................................................................16

*In re Genesis Health Ventures, Inc.*,
    272 B.R. 558 (Bankr. D. Del. 2002), *aff'd* 112 Fed. Appx. 140 (3d Cir. 2004)....................13

*J.C. Wattenbarger & Sons v. Sanders*,
    30 Cal. Rptr. 910 (Cal. Ct. App. 1963)..............................................................16

*Joe Balestrieri & Co. v. Comm'r of Internal Revenue*,
    177 F.2d 867 (9th Cir. 1949) .............................................................................16

*JP Morgan Chase Bank v. U.S. Nat'l Bank Ass'n. (In re Oakwood Homes Corp.)*,
    329 B.R. 19 (D. Del. 2005)................................................................................10

*Leighty v. Brunn*,
    510 N.Y.S.2d 174 (N.Y. App. Div. 1986)..........................................................18

*In re Lionel LLC*,
    2007 Bankr. Lexis 2652 (Bankr. S.D.N.Y. Aug. 3, 2007) ..................................19

*In re Minbatiwalla*,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) ...............................................................17

*O'Neill v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*,
    981 F.2d 1450 (5th Cir. 1993) ...........................................................................20

*Philip Carey Co. v. Duffy*,
    10 N.Y.S.2d 876 (N.Y. App. Div. 1939).............................................................16

WEIL:\96029188\5\58399.0011

*In re Porter*,
374 B.R. 471 (Bankr. D. Conn. 2007)..................................................................17

*In re Ralph Lauren Womenswear, Inc.*,
197 B.R. 771 (Bankr. S.D.N.Y. 1996) ...............................................................11

*Ross v. Worth Elec. Supply Co., Inc.*,
420 N.Y.S.2d 441 (N.Y. Civ. Ct. 1979) .............................................................18

*Singer v. Olympia Brewing Co.*,
878 F.2d 596 (2d Cir. 1989) .............................................................................18

*In re Teigen*,
228 B.R. 720 (Bankr. D.S.D. 1998) ...................................................................13

*United States v. Zan Mach. Co.*,
803 F. Supp. 620 (E.D.N.Y. 1992)....................................................................18

*In re Wallace's Bookstores, Inc.*,
317 B.R. 720 (Bankr. E.D. Ky. 2004) ...............................................................10

**Statutes**

11 U.S.C. §§ 105.....................................................................................................10

11 U.S.C. §§ 1142...................................................................................................10

11 U.S.C. § 502.................................................................................8, 10, 11, 19, 20

28 U.S.C. § 157.........................................................................................................5

28 U.S.C. § 1334.......................................................................................................5

English Insolvency Act of 1986...........................................................................5, 6

**Other Authorities**

FED. R. BANKR. P. 3020(d) ....................................................................................10

FED. R. BANKR. P. 1015(b) ......................................................................................5

RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTEE § 19 (1996)..........................18

38 AM. JUR. 2D *Guaranty* § 14 (1968) ..................................................................16

iii

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the
Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its
Affiliated Debtors (the "Plan")[1] for the entities in the above-referenced chapter 11 cases, files
this motion and respectfully represents:

## PRELIMINARY STATEMENT

1.      Deutsche Bank AG and its affiliates, and CarVal Investors UK Limited
and its affiliates alone acquired and continue to assert approximately 113 unique Disputed
Claims for approximately $2.8 billion in purported guarantee liability against LBHI based on
primary obligations of Lehman Brothers International (Europe) ("LBIE") that are expected to be
satisfied in full as a result of distributions from LBIE alone.

2.      LBIE has distributed to its unsecured creditors 100% of the allowed
amounts of their claims (with certain *de minimis* exceptions) and it holds 100% reserves for
disputed claims.  LBIE has returned nearly all customer property and allowed and paid 100% of
unsecured claims for any shortfalls.  LBIE's reports project additional distributions of up to 55%
- 64% above par, and general unsecured creditors of LBIE can potentially sell their claims for
such future distributions in the open market for at least 37% above par.

3.      LBHI's Plan limits recoveries on account of related primary and guarantee
claims to a single satisfaction, consistent with long-standing principles of guarantee law.
Although allowed unsecured claims against LBIE have already received 100% distributions from
LBIE, due to an idiosyncratic provision of the Plan converting foreign currency distributions

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1

from LBIE using confirmation-date exchange rates, certain holders of LBIE-based guarantee claims may receive additional amounts from LBIE before their guarantee claims are deemed satisfied in full under the Plan.  As noted above, however, additional distributions from LBIE are expected.  Based on receipt of distributions from LBIE alone, holders of the remaining LBIE-based guarantee claims would not be entitled to recoveries from LBHI.  There will be sufficient value in LBIE's estate to make distributions that will be more than sufficient to discharge LBHI's alleged guaranty liability for the LBIE claims.

4.    Not surprisingly, no doubt largely as a consequence of this obvious reality, a substantial number of creditors withdrew their LBIE-based guaranty claims, and other creditors consented to the Court's estimation of more than 900 LBIE-based guaranty claims to be zero for all purposes.  *See* ECF Nos. 50298, 50824, 50948, 50977, 50978 (granting motion substantially similar to this motion on an uncontested basis).

5.    The Plan and applicable case law permit estimation of each of the LBIE-based guarantee claims in the amount of zero dollars for reserve and distribution purposes.  The facts and circumstances of these cases compel estimation in this instance.  Estimation in the amount of zero dollars will accurately reflect LBHI's ultimate liability for these claims. Moreover, estimation now would enable the release of approximately $1.24 billion in cash and assets currently in reserve.  It will avoid the undue delay of awaiting the conclusion of LBIE's administration in the United Kingdom.

6.    Without estimation, reconciliation of approximately 113 unique proofs of claim would be a substantial undertaking in any case.  In the circumstances of this particular case, the undertaking would be extremely cumbersome, complicated, and time-consuming.  The claims are on account of alleged guarantees of obligations of a non-controlled and foreign entity

under the jurisdiction of an insolvency proceeding in the United Kingdom. The majority of the claims are based on derivatives contracts. The initial holders of the guarantee claims and primary claims (potentially different parties) are spread around the world. These facts make the task of claims resolution that much more expensive, time-consuming, and difficult. In the end, reconciliation will have been unnecessary if the claims are satisfied in full (as they are or will be here) or if the claimants are otherwise not entitled to a distribution from LBHI (as described below).

7.        Further, without estimation, if LBIE-based guarantee claims were Allowed, and LBHI were required to make Distributions, LBHI would be compelled to recover such Distributions each time LBIE makes additional payments. Failure to seek such recovery would result in the unjust enrichment of a number of LBIE-based creditors, who would receive more than a single satisfaction of their claims. Although the Court retained jurisdiction over collection actions, distributions are made to parties around the world. As both the primary and guarantee claims receiving distributions are transferrable, multiple parties could receive distributions on account of a single claim over time. To minimize the considerable inherent counterparty and collection risk, the Plan permits the Plan Administrator, in its sole discretion, to request certifications, evidence, and even security from a holder of an Allowed Guarantee Claim to "ensure the recovery of any amount of Distributions made by LBHI to such holder that is ordered to be disgorged." It further permits the Plan Administrator to withhold Distributions to any such holder that does not comply with a request. The Court would nonetheless be required to determine any and each subsequent challenge by a particular creditor to the Plan Administrator's determination not to make a Distribution. The Court would also be required to determine whether to release reserves for delinquent creditors that fail to comply with requests

3

for information.    Either process (instituting recovery actions to disgorge Distributions or withholding Distributions and facing challenges to such withholding) would be cumbersome.

8.    LBHI is currently maintaining cash and asset reserves under the Plan for approximately $2.8 billion of Disputed LBIE-based guarantee claims notwithstanding that LBIE-based creditors (i) received 100% of the allowed amounts of their primary claims, (ii) are expected to receive additional amounts from LBIE, and (iii) may not provide sufficient assurance that they can disgorge any overpayments.  This reserve, like the amounts expected to be paid by LBIE, already exceeds the amount that LBHI could be required to distribute if the LBIE-based guarantee claims were allowed today in amounts that approximate the amounts that corresponding primary claims were allowed by LBIE, taking into account any possible currency conversions and the payment of subordinated and shareholder claims by LBIE.  LBHI's prior experience in reconciling guarantee claims suggests that the aggregate allowable amount of LBIE-based guarantee claims would likely be significantly less than the amount of the currently-filed claims and, thus, that there is even further excess in the current reserves.  The currently excessive and ultimately unnecessary reserve continues to diminish distributions that LBHI can make to other Allowed Claims, the vast majority of which will not be satisfied in full.

9.    As the Court has found on other occasions, the Plan permits the Court to estimate Disputed Claims where, as here, estimation is consistent with the policies underlying estimation in the Bankruptcy Code to avoid undue delay in the administration of these extraordinary cases.

## JURISDICTION

10.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

**A.      Chapter 11 Case Background**

11.     Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

12.     On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

**B.      LBIE's English-law Administration**

13.     LBIE is a subsidiary of LBHI that is not a debtor in the Chapter 11 Cases.  On September 15, 2008, LBIE entered English administration proceedings pursuant to the English Insolvency Act of 1986.  LBIE's estate is currently being wound-up by certain joint administrators not controlled by the Plan Administrator (the "Joint Administrators").

14.     On April 30, 2014, LBIE paid a fourth interim dividend to all unsecured creditors whose claims had been allowed against LBIE for dividend purposes.  *See* Joint Administrators' Twelfth Progress Report for the Period from 15 March 2014 to 14 September

WEIL:\96029188\5\58399.0011

2014 (the "Twelfth Progress Report"), at 5-6.[2]  As a result of the fourth interim dividend, LBIE's unsecured creditors have received 100% of the allowed amounts of their claims.  *See id.*

15.    The Joint Administrators maintain a reserve for any unsecured claims against LBIE that have not yet been allowed, and such claims are likewise expected to be paid in full.  *See* Joint Administrators' Sixteenth Progress Report for the Period from 15 March 2016 to 14 September 2016 (the "Sixteenth Progress Report"), at 13; Joint Adm'rs of LB Holdings Intermediate 2 Ltd. (In Admin.) v. Lomas, [2015] EWCA (Civ) 485 [1] (Eng.) (the "Waterfall Decision") ("Now it turns out that [LBIE] is able to repay all its external creditors in full.").[3]

16.    Further, LBIE (i) has returned over 99%[4] of its "Client Assets" and any customers with "Client Asset" shortfalls were provided unsecured claims (which claims have been paid 100%), (ii) made a final distribution and final True-up and Catch-up distributions *in U.S. Dollars* on June 25, 2015 resulting in a cumulative rate of 110.349% of the "Best Claim" value to all "Consenting Beneficiaries" with allowed claims against the "Omnibus Trust," *see* Joint Administrators' Fourteenth Progress Report for the period from 15 March 2015 to 14 September 2015 (the "Fourteenth Progress Report") at 8,[5] and (iii) as of March 2015, approximately $20 million "Client Money" claims remained outstanding, whereas the pre-

---

[2] Select portions of the Twelfth Progress Report are attached hereto as Exhibit B.  The Twelfth Progress Report is available in full at www.pwc.co.uk/business-recovery/administrations/lehman.  The most relevant portions of the Twelfth Progress Report have been highlighted for emphasis on Exhibit B.

[3] Select portions of the Sixteenth Progress Report and Waterfall Decision are attached hereto as Exhibit C and Exhibit D, respectively.  The Sixteenth Progress Report and Waterfall Decision are available in full at www.pwc.co.uk/business-recovery/administrations/lehman.  The most relevant portions of the Sixteenth Progress Report and Waterfall Decision have been highlighted for emphasis on Exhibit C and Exhibit D.

[4] As of September 2016, LBIE held £40m in "Client Assets." (*See* Ex. C (Sixteenth Progress Report) at 7.)  As of March 2015, LBIE had distributed approximately £14.1 billion in "Client Assets."  *See* Joint Administrators' Thirteenth Progress Report for the period from 15 September 2014 to 14 March 2015 (the "Thirteenth Progress Report"), select portions of which are attached hereto as Exhibit E) at 25.

[5] The Fourteenth Progress Report is available at www.pwc.co.uk/business-recovery/administrations/lehman.

Administration "Client Money" pool from which these claims may be paid exceeds $1.3 billion. *See* Ex. C (Thirteenth Progress Report) at 24-27.  As a result of the foregoing, nearly all LBIE customers have received a 100% recovery on their claims against LBIE.  *Id.*

17.    LBIE is expected to make further distributions to unsecured claimants, including customers with shortfall claims, in as much as 55% - 64% of the allowed amount of unsecured claims.  *See* Ex. C (Sixteenth Progress Report) at 9.[6]  Not surprisingly, unsecured claims against LBIE recently were bid as high as 36% - 47% above par.  *See* Declaration of Matthew Blake, dated February 23, 2017, at ¶ 6 ("Blake Declaration").  The exact timing and quantum of any further distributions from LBIE are unknown and dependent upon the outcome of pending litigation in the United Kingdom.  Following a hearing in the U.K. Supreme Court in October 2016, a judgment is expected to be handed down in the coming months which should give more clarity as to the level of surplus cash and claims in the LBIE estate.  The Joint Administrators stated their intention to propose a significant first interim payment of senior creditors' entitlements to post-administration interest by means of a company voluntary arrangement for mid-2017, following the U.K. Supreme Court judgment.  *See* Ex. C (Sixteenth Progress Report) at 15.

C.    **Plan Provisions Governing Distributions**

18.    Under the Plan and consistent with applicable law,

> An . . . Allowed Guarantee Claim that receives Distributions . . . that combined with . . . other consideration provided on the corresponding Primary Claim . . . equal to the Allowed amount of such Guarantee Claim . . . shall  . . . be deemed satisfied in full . . . .

---

[6] The Sixteenth Progress Report lists a low estimate of £6.86 billion in surplus cash distributable on account of £12.33 billion in claims (*i.e.*, a surplus of approximately 55.6%) and a high estimate of £8 billion in surplus cash distributable on account of £12.4 billion in claims  (*i.e.*, a surplus of approximately 64.5%).

Plan § 8.13(a). Accordingly, the Plan provides that, "[i]n no event shall . . . an Allowed Guarantee Claim receive Distributions . . . that combined with Distributions or other consideration provided on the corresponding Primary Claim . . . are in excess of the Allowed amount of the Guarantee Claim . . . ." *Id.* § 8.13(b).

19.    Claims against LBHI are valued in lawful currency of the United States as of LBHI's petition date, September 15, 2008. 11 U.S.C. §502(b); *cf.* Plan §8.13(d) ("Nothing contained in this provision shall affect the applicable exchange rate for determining the Allowed Amount of any Claim under section 502(b) of the Bankruptcy Code."). However, "[f]or the purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan,"

> all . . . consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date [December 6, 2011].

*Id.* at §8.13(d).

20.    Creditors of LBIE were owed various amounts in various currencies. All unsecured claims against LBIE that were not owed in British Pounds were converted to British Pounds using the September 15, 2008 conversion rates. LBIE's four interim distributions to creditors were likewise made in British Pounds. As a result of the different conversion rates, it is possible that a Guarantee Claim may be entitled to additional consideration before it is deemed satisfied in full under the Plan, even though the related Primary Claim against LBIE has received 100% in distributions from LBIE.

21.    Pursuant to the Plan, the Plan Administrator has established reserves for each Disputed Claim based on Distributions that would have been made to the holder of such

claim if the claim were Allowed in the lesser of the filed amount of such claim, the amount determined by the Court for purposes of fixing the amount to be retained for such Disputed Claim, and the amount agreed upon by the holder of such Disputed Claim and the Plan Administrator. *Id.* at §8.14.

22.     Notwithstanding the foregoing, the Plan does not require the Plan Administrator to make Distributions to holders of Allowed Guarantee Claims without safeguards.  Pursuant to section 8.13(e) of the Plan, "[t]he Plan Administrator may, in its sole discretion, request that the holder of an Allowed Guarantee Claim . . . certify in writing and provide evidence . . . to confirm," among other things, (a) whether any future distributions or payments from the Primary Obligor are anticipated or estimated to be made on account of the primary claim, (b) that it has sufficient assets within the United States to satisfy an order or judgment to disgorge any Distributions received, and (c) that it will submit to the jurisdiction of the Court and will not contest the enforcement of an order of the Court in a foreign jurisdiction. *Id.* § 8.13(e).  The Plan Administrator may also condition receipt of Distributions upon posting of security by a holder of an Allowed Guarantee Claim.  *Id.*

## BASIS FOR REQUESTED RELIEF

23.     The Plan permits the estimation of Disputed Claims.  Plan § 9.3 ("[T]he Plan Administrator may at any time request on behalf of any Debtor that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules . . . .").  Specifically, the Plan permits the estimation of Disputed Claims for both reserve and distribution purposes.  *Id.* ("[T]he amount so estimated may constitute . . . a maximum limitation on such Claim, . . . [or] the amount to be reserved in respect of the Claim . . . ."); *see also id.* § 8.4 (permitting the Plan Administrator to reserve for

Disputed Claims in "the amount determined . . . by the Bankruptcy Court . . . ."). In addition, the Court has broad authority to issue any order necessary to implement the provisions of the Plan or the Bankruptcy Code. *See* 11 U.S.C. §§ 105(a), 1142(b); FED. R. BANKR. P. 3020(d).

24.    The Court retained and has jurisdiction to hear and determine any motion to estimate claims. Plan §14.1(c). Post-confirmation, this Court has relied on the foregoing Plan provisions to estimate Disputed Claims filed against LBHI using the procedures of section 502(c) of the Bankruptcy Code. *See, e.g.*, Hr'g Tr. 16:25-17:2, Jan. 26, 2012 ("the Court will have the ability to estimate disputed claims using the procedures that are outlined in [section] 502(c) [of the Bankruptcy Code] and related case law.").[7] Indeed, the Court has estimated more than 930 LBIE-based guarantee claims against LBHI to be zero in orders approving a motion substantially identical to this one. *See* ECF Nos. 50298, 50824, 50948, 50977, 50978. Other courts have also recognized the ability to estimate disputed claims. *See, e.g.*, *In re Enron Corp.*, No. 01-16034, 2006 WL 544463, at *13-15 (Bankr. Jan. 17, 2006); *JP Morgan Chase Bank v. U.S. Nat'l Bank Ass'n*. (*In re Oakwood Homes Corp.*), 329 B.R. 19, 22 (D. Del. 2005); *In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724 (Bankr. E.D. Ky. 2004); *see also In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003) (estimating the disputed unliquidated amount of an administrative claim).

---

[7] *See also Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors to Estimate the Amount of Proof of Claim Number 30598 Filed by US Airways, Inc. for Purposes of Establishing Reserves* [ECF No. 34700]; *Order Pursuant to Section 8.4 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors and Sections 105(a), 502(c) and 1142(b) of the Bankruptcy Code Estimating the Amounts of Claims Filed by Indenture Trustees on Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves* [ECF No. 25643]; *Order Granting Motion of Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing, Inc. to Estimate Claims Filed by Citadel Equity Fund Ltd. for Purposes of Establishing Reserves* [ECF No. 27112].

25.    "Neither the [Bankruptcy] Code nor the [Bankruptcy] Rules prescribe any method for estimating a claim, and it is therefore committed to the reasonable discretion of the court, which should employ whatever method is best suited to the circumstances of the case." *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (internal citations omitted); *accord Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982). Estimation of a claim requires only "sufficient evidence on which to base a reasonable estimate of the claim." *Bittner*, 691 F.2d at 135.

26.    Each of the claims listed on <u>Exhibit A</u> hereto (the "<u>Remaining Guarantee Claims</u>") is a "Disputed Claim," as such term is used or defined in the Plan. *See* Plan §§ 1.46, 8.3, 8.4. Accordingly, pursuant to the Plan and consistent with the procedures of section 502(c) of the Bankruptcy Code, the Court may estimate such claims for reserve and distribution purposes.

### THE REMAINING GUARANTEE CLAIMS SHOULD BE ESTIMATED TO BE ZERO DOLLARS FOR RESERVE AND DISTRIBUTION PURPOSES

**A.    <u>Zero Dollars Reflects LBHI's Ultimate Liability for Remaining Guarantee Claims</u>**

27.    The Plan Administrator is currently maintaining a reserve for the Remaining Guarantee Claims based on the filed or otherwise agreed upon amounts of such Disputed Claims and the more than 23% that LBHI has already distributed to holders of Allowed Guarantee Claims.[8] The current reserve amount of Cash and assets attributable to the Remaining Guarantee Claims is approximately $1.24 billion. The reserve amount will increase over time as LBHI makes additional Distributions to Allowed Claims.

---

[8] Based upon its experience in reconciling other Guarantee Claims, the Plan Administrator believes that, compared with a potential allowable amount, the aggregate filed amount of the Remaining Guarantee Claims may be overstated significantly.

WEIL:\96029188\5\58399.0011

28.    LBHI has not yet undertaken discovery with respect to each of the Remaining Guarantee Claims.  The considerable cost of such discovery would be shared by all creditors of LBHI.

29.    The Plan Administrator seeks to estimate the Remaining Guarantee Claims to be zero dollars for reserve and distribution purposes.  The clearest possible statement of unsecured creditors' expectations of recoveries from LBIE is the price at which unsecured claims against LBIE were bid: as high as 36% - 47% above their allowed amounts.  *See* Blake Declaration ¶ 6.  Public reports issued by the Joint Administrators have stated that LBIE (i) has distributed 100% of the allowed amount of nearly all primary claims against LBIE, (ii) holds reserves for disputed claims, and (iii) will make significant additional distributions to holders of allowed claims.  *See supra* ¶¶ 12-15.  Based on the foregoing, it is clear that if the Remaining Guarantee Claims were allowed in amounts that approximate the allowed amounts of the corresponding primary claims, the Remaining Guarantee Claims will ultimately be satisfied in full as a result of distributions from LBIE alone, even if LBIE paid subordinated claims before paying statutory interest to senior claims.  Because all Remaining Guarantee Claims are expected to be satisfied in full from LBIE, they will not be entitled to a net recovery from LBHI.  Plan § 8.13.

30.    Further, the Plan Administrator does not believe that all holders of Remaining Guarantee Claims will be able to satisfy the strict safeguard requirements of section 8.13(e) of the Plan.  Many, for example, may have no assets in the United States.  Moreover, holders of Remaining Guarantee Claims may reasonably elect to forego the effort to comply with the requirements of section 8.13(e) and forego Distributions from LBHI, given (i) the time and effort required to comply, (ii) the six-month intervals between LBHI's Distributions, (iii) the

12

requirement to return any Distributions received from LBHI once satisfied in full by LBIE, and (iv) the cost-benefit analysis of compliance given that, net-net, Remaining Guarantee Claims will not be entitled to retain any recovery from LBHI.  Whatever their reason, holders of Remaining Guarantee Claims that do not comply with section 8.13(e) would not be entitled to Distributions from LBHI.

31.    Applicable case law supports estimating the Remaining Guarantee Claims to be zero dollars in these circumstances.  The bankruptcy court in *In re Teigen*, for example, reduced guarantee claims against chapter 7 debtor guarantors by "amounts *paid or to be paid*" by a primary obligor over "several years" under a primary obligor's separate chapter 11 plan.  *In re Teigen*, 228 B.R. 720, 723 (Bankr. D.S.D. 1998) (emphasis in original).  The court found that "[t]o wait that long . . . is too long.  Other creditors' payments would be delayed unnecessarily." *Id*.  The court reduced the guarantee claims after acknowledging that the respective agreements permitted the creditors' "full claims" to be asserted against and collected from the chapter 7 debtors.  The court found that "in estimating the claims . . . the Court cannot ignore that these . . . claims are scheduled to be paid in part through the [separate] Chapter 11 plan" and that "[t]he Court's failure to recognize those payments would unfairly penalize other unsecured creditors in [the chapter 7] case."  *Id.   Cf. In re Enron Corp.*, No. 01-16034, 2006 WL 544463, at *23 (Bankr. S.D.N.Y. Jan. 17, 2006) (estimating a disputed claim to be zero dollars for reserve purposes to reflect the debtor's expected ultimate liability); *In re Genesis Health Ventures, Inc.* 272 B.R. 558 (Bankr. D. Del. 2002), *aff'd* 112 Fed. Appx. 140 (3d Cir. 2004) (estimating a claim to be zero dollars for allowance purposes where there was no likelihood of ultimate liability for the claim).

13

**B.      Estimating the Remaining Guarantee Claims Will
Avoid Undue Delay in the Administration of LBHI's Case**

32.    Absent estimation and the relief requested, resolution of the Remaining

Guarantee Claims would require:

a. claim-by-claim determinations of whether Remaining Guarantee Claims have already been satisfied in full by LBIE;

b. claimant-by-claimant determinations of ability and willingness to satisfy an order disgorging all Distributions received with respect to Remaining Guarantee Claims;

c. claim-by-claim determinations as to the enforceability of alleged guarantees;

d. claim-by-claim determinations as to the appropriate amount of the asserted claims; and

e. claimant-by-claimant disgorgement of Distributions from LBHI to enforce the rule of single satisfaction and prevent unjust enrichment.

The Plan Administrator is not opposed to engaging in potentially protracted reconciliation and

litigation of claims when appropriate.  Here, however, resolution of the Remaining Guarantee

Claims through the five steps above would *unduly* delay the administration of LBHI's case

because any reconciliation and litigation processes begun for the Remaining Guarantee Claims

would be mooted by distributions from LBIE, and the diversion and expenditure of limited

resources would be simply wasted.

33.    Satisfaction by LBIE:  Even before the Plan Administrator were to begin

discovery related to the substance of a Remaining Guarantee Claim, the Plan Administrator may

spend time and resources obtaining information regarding consideration received to date – and

anticipated to be received – on account of claimants' related primary claims against LBIE.

Absent estimation of the Remaining Guarantee Claims, such information would be necessary to

WEIL:\96029188\5\58399.0011

determine whether each Remaining Guarantee Claim had already been or will be satisfied in full pursuant to section 8.13(a) of the Plan.[9]  *See* Plan §§ 8.13(a), (e).

34.    <u>Ability to Satisfy Disgorgement Obligations</u>:   The Plan Administrator would be remiss if it diverted its own or the Court's limited resources to reconcile claims for which it is not required to make Distributions.   Specifically, the Plan permits the Plan Administrator to withhold payments to creditors that could not "satisfy an order or judgment to disgorge any Distributions received with respect to [an] Allowed Guarantee Claim if it is ultimately determined that such holder is required to disgorge all or a portion of such Distributions."   Plan § 8.13(e).   To do otherwise would prejudice other holders of Allowed Claims that have yet to be satisfied in full.   Thus, before addressing the substance of a Remaining Guarantee Claim, the Plan Administrator would dedicate time and resources requesting certifications, evidence, and even security from parties around the world to determine their eligibility for Distributions pursuant to section 8.13(e) of the Plan.   But this alone may not bring finality or obviate Court intervention: the Plan Administrator's determinations may be subject to review upon request of a particular creditor; a historic number of claims continue to trade and record holders change from Distribution Date to Distribution Date; and creditors may fail to respond to requests for information, requiring Court intervention to disallow or release reserves for Remaining Guarantee Claims held by delinquent creditors.

---

[9]  Creditors may fail to respond to voluntary requests or even to subpoenas, and failure may be due to the disallowance of a primary claim by LBIE, the actual or anticipated satisfaction by LBIE, the size of a claim, the additional steps required to obtain Distributions from LBHI under section 8.13(e) of the Plan, or the obligation to ultimately return any Distributions from LBHI.   Other creditors may fail to respond to avoid making public information that might lead to either a reduction of their primary claim against LBIE or a compromise of positions they may take in the LBIE administration.   Where creditors fail to comply for whatever reason, additional time, expense, and Court intervention could be required.

15

35.    <u>Enforceability and Amount of Remaining Guarantee Claims</u>:  If they are not estimated to be zero for the reasons set forth herein, a number of Remaining Claims would be expunged and disallowed for failure to state a prima facie claim because they and their related questionnaires include neither an executed or individualized guarantee nor evidence of knowledge or reliance on a purported general guarantee at the time of the relevant transaction,[10] and courts consistently require knowledge and reliance in enforcing claims based on general guarantees.[11]

36.    Certain of the Remaining Guarantee Claims are asserted as at least partially unliquidated claims.  If they are not estimated to be zero for the reasons set forth herein, any unliquidated portion of a Remaining Guarantee Claim would be disallowed and expunged. The Court's bar date order required, among other things, that "each Proof of Claim . . . include supporting documentation or an explanation as to why documentation is not available." [ECF No. 4271] at 6 and Ex. B.   It required creditors to "electronically upload supporting documentation." *Id.* at 7.  It provided that "any holder of a claim . . . who is required, but fails to file a proof of claim in accordance with the Bar Date Order on or before the Bar Date . . . shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing

---

[10] To benefit from a general guaranty, a creditor must show that it knew of the existence of the guaranty and acted in reliance upon its terms when entering into the transaction with the primary obligor. "It is, of course, elementary that a creditor's right to enforce a contract of guaranty must be based upon knowledge of the existence of the guaranty and that the credit must be extended in reliance thereof[.]" *F.D.I.C. v. Schumacher*, 660 F. Supp. 6, 8 (E.D.N.Y. 1984) (citations omitted).  "A 'general' guaranty is addressed to persons generally and may be enforced by anyone to whom it is presented although it has been recognized that the person so acting must have had definite knowledge of the existence of the guaranty and acted in reliance on it." 38 AM. JUR. 2D *Guaranty* § 14 (1968).

[11] *See, e.g., Philip Carey Co. v. Duffy*, 10 N.Y.S.2d 876 (N.Y. App. Div. 1939); *see also Joe Balestrieri & Co. v. Comm'r of Internal Revenue*, 177 F.2d 867, 873 (9th Cir. 1949) (recognizing the validity of guaranty claim where guaranty was made at the request of the prospective creditor and was delivered by the primary obligor); *J.C. Wattenbarger & Sons v. Sanders*, 30 Cal. Rptr. 910, 915 (Cal. Ct. App. 1963) (rejecting guaranty claim where there was "no proof that credit was extended with knowledge of it and reliance upon it"); *Calcot Ass'n v. Coast Cotton Mills*, 295 P.2d 1, 4 (Cal. Dist. Ct. App. 1956) (recognizing guaranty claim where court recognized that product was delivered to the primary obligor "only because the guaranties had been made").

WEIL:\96029188\5\58399.0011

a Proof of Claim with respect thereto)." *Id.* at 9-10.   In addition, the Confirmation Order provided that after the Effective Date, no proof of claim relating to a prepetition claim may be amended without the authority of the Court. See Confirmation Order ¶ 86.  This Court and others in the Second Circuit have held that "claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of the claim."  *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010) (relying on Bankruptcy Rule 3001(c), which requires that proofs of claim include supporting information to establish their prima facie validity); *accord In re Porter*, 374 B.R. 471 (Bankr. D. Conn. 2007).   After more than eight years after the commencement of these cases, more than seven years after the bar date, and more than five years after the confirmation of the Plan, any unliquidated or unsupported portion of a Remaining Guarantee Claim would be disallowed and expunged.

37.   Most of the Remaining Guarantee Claims are based upon purported guarantees of complex derivatives contracts.  The vast majority of the derivatives-related claims against the Chapter 11 Estates that have been resolved to date have been resolved through persistent, individual, creditor-by-creditor negotiations and Court-approved mediations over the past five years.  The process has allowed parties to reach resolution without burdening the Court, but relies on, and can be constrained by, the limited pool of highly-experienced and efficient approved mediators and participants on behalf of the Plan Administrator.  Litigation in instances of failed mediations could be protracted.  Discovery by the Plan Administrator could be required in any dispute as to the validity of such claims.  Discovery could be further complicated and protracted due to the high volume of trading of claims in these chapter 11 cases.

WEIL:\96029188\5\58399.0011

38.    <u>Recovery of All Distributions</u>:    If a holder of a Remaining Guarantee Claim could establish that it was currently entitled to a Distribution pursuant to section 8.13(a) of the Plan, that it was entitled to a Distribution pursuant to section 8.13(e) of the Plan, that it had a valid guarantee, and that it was entitled to an Allowed Claim, a Distribution from LBHI satisfying the claim in full would not end the administration related to the claim.  Rather, LBHI would be compelled, each time that LBIE makes additional payments, to recover the amount of LBHI's Distributions on account of approximately 113 unique proofs of claim, pursuant to the Plan and well-established principles of guarantee law, the rule of single satisfaction, and unjust enrichment.[12]    Other creditors of LBHI would be entitled to any amounts recovered in accordance with section 8.13(f) of the Plan.  Although the Court retained jurisdiction over any collection actions that may be brought, holders of the relevant guarantee claims are spread around the globe.    The record holders of both guarantee and primary claims receiving distributions continue to change, leading to the potential for multiple parties to receive distributions on account of a single claim over time.  The Plan Administrator would have to develop and administer new tracking and collections activities to ensure that no holder of a Remaining Guarantee Claim receives more than a single satisfaction.  The Plan Administrator could be compelled to send demand letters, enforce rights against collateral, and commence

---

[12] *See Bankers' Trust Co. v. Irving Trust Co.* (*In re United Cigar Stores*), 73 F.2d 296, 298 (2d Cir. 1934) ("In no case can the [holder of a guarantee claim] recover from all sources more than the full amount of its claim."); *Ross v. Worth Elec. Supply Co., Inc*., 420 N.Y.S.2d 441, 443 (N.Y. Civ. Ct. 1979) ("It is fundamental in suretyship that with the payment of the principal obligation the obligations of both principal and surety are discharged."); *see also Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) ("[A] plaintiff is entitled to only one satisfaction for each injury."); *United States v. Zan Mach. Co.,* 803 F. Supp. 620, 623 (E.D.N.Y. 1992) ("It is hornbook law that a plaintiff cannot recover twice for the same injury."); *Leighty v. Brunn*, 510 N.Y.S.2d 174, 175 (N.Y. App. Div. 1986) ("It is beyond cavil that a plaintiff is entitled to only one recovery with respect to an identical damage claim."); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTEE § 19 (1996) ("To the extent that the underlying obligation is discharged by performance or other satisfaction by the principal obligor, the secondary obligation is also discharged.  The obligee is entitled to only one aggregate performance.").

WEIL:\96029188\5\58399.0011

separate adversary proceedings in this Court to ensure collection – an unfortunate, but preventable waste of estate and judicial resources.  *See* Plan §§ 14.1(b), (e), (i), (j), (k), (o).

39.    The Plan provides for estimation as a prudent alternative to needless litigation of approximately half of the remaining Disputed Claims filed against the Chapter 11 Estates.   Estimation of the Remaining Guarantee Claims will result in faster and larger distributions to LBHI's other creditors and will avoid the undue delay to the administration of LBHI's case that would result from litigation regarding the allowance and amounts of claims that will ultimately be satisfied by LBIE and the recovery of amounts distributed by LBHI on account of such claims.   Estimation would not significantly impair holders of Remaining Guarantee Claims who, unlike LBHI's other creditors, are expected to be satisfied in full.   It would significantly benefit all of LBHI's other creditors by ensuring that approximately $1.24 billion in unnecessary reserves are not maintained and do not continue to increase and that administrative resources are not depleted or diverted.

40.    Based on the foregoing, estimation of the Remaining Guarantee Claims would clearly prevent "undue delay" in the administration of LBHI's case and be consistent with estimation under section 502(c) of the Bankruptcy Code.   *See* 11 U.S.C. § 502(c) (requiring estimation of "any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case."); *Enron*, 2006 WL 544463, at *23 ("[B]ecause a deferral of a distribution affects the efficient administration of a case, the possibility of such deferral provides a justification for estimation of a claim."); *In re Lionel LLC*, 2007 Bankr. Lexis 2652 (Bankr. S.D.N.Y. Aug. 3, 2007) ("[A] main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors.   Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use

the assets until they receive them."); *O'Neill v. Continental Airlines, Inc.* (*In re Continental Airlines, Inc.*), 981 F.2d 1450 (5th Cir. 1993) (stating that section 502(c) of the Bankruptcy Code serves two purposes, one of which is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims.").

### NOTICE

41.    No trustee has been appointed in the Chapter 11 Cases.    The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the record holder of each Remaining Guarantee Claim; and (vi) all parties who have requested notice in these chapter 11 cases.    The Plan Administrator submits that no other or further notice need be provided.

42.    The Plan Administrator withdrew without prejudice a prior motion to estimate the Remaining Claims and the oppositions to that prior motion were withdrawn with prejudice.

WEIL:\96029188\5\58399.0011

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
       February 23, 2017

/s/ Garrett A. Fail
Garrett A. Fail

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

21

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                    :

In re                                :       **Chapter 11 Case No.**
                                      :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :       **08-13555 (SCC)**
                                      :

                    **Debtors.**        :       **(Jointly Administered)**
                                      :

-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 8.4, 9.3, AND 14.1 OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES

Upon the motion (the "Motion"),[1] dated February 23, 2017, of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval, pursuant to sections 8.4, 9.3, and 14.1 of the Plan and sections 105(a), 502(c), and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), to estimate the maximum amount of the Remaining Guarantee Claims for reserve and distribution purposes, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

States Attorney for the Southern District of New York; (v) the parties listed on Exhibit 1 attached hereto; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the each Remaining Guarantee Claim listed on Exhibit 1 is hereby estimated in its entirety in the amount of zero dollars for purposes of establishing (i) the amount of reserves to be retained for such Remaining Guarantee Claim under the Plan and (ii) the maximum amount of Distributions (as such term is defined in the Plan) that a holder of a Remaining Guarantee Claim is entitled to receive on account of such Remaining Guarantee Claim under the Plan; and it is further

ORDERED that under no circumstances shall LBHI be required to retain any reserve on account of any Remaining Guarantee Claim listed on Exhibit 1; and it is further

ORDERED that under no circumstances shall any holder of a Remaining Guarantee Claim be entitled to a Distribution (as such term is defined in the Plan) from LBHI on account of a Remaining Guarantee Claim; and it is further

WEIL:\96029188\5\58399.0011

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
           _____, 2017


                                                    _____
                                                    Honorable Shelley C. Chapman
                                                    United States Bankruptcy Judge