UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :
In re                                                          :   Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                       :   Case No. 08-13555 (SCC)
                                                               :
                                              Debtors.         :   (Jointly Administered)
                                                               :
---------------------------------------------------------------x

### DECLARATION OF MICHAEL SUTTON IN SUPPORT OF OBJECTION OF DEUTSCHE BANK AG AND AFFILIATES TO MOTION OF PLAN ADMINISTRATOR TO ESTIMATE CLAIMS FOR RESERVE AND DISTRIBUTION PURPOSES

I, Michael Sutton, pursuant to 28 U.S.C. § 1746, declare as follows:

1.   I am a Managing Director of Deutsche Bank AG, London Branch ("DB London") which maintains its principal place of business at Winchester House, 1 Great Winchester Street, London EC2N 2DB, England.

2.   I submit this Declaration in support of the accompanying objection (the "Objection") of Deutsche Bank AG and its affiliates (collectively, "Deutsche Bank") to the *Motion of the Plan Administrator Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors to Estimate Claims for Reserve and Distribution Purposes* [ECF #54094] (the "Motion") in the above-captioned proceeding.[1]

3.   I make this Declaration based on my personal knowledge, review of relevant documents, and consultation with my colleagues.

4.   Since the commencement of the various insolvency proceedings of Lehman affiliates worldwide, I have headed the team at DB London that manages the substantial majority

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Objection.

DB3/ 201340581.3

of Deutsche Bank's portfolio of claims against Lehman entities in UK insolvency proceedings, including the Primary Claims against LBIE and corresponding Guarantee Claims against LBHI that are at issue in the Motion and the Objection.

5. The principal amounts of the Primary Claims were agreed by LBIE and were admitted for payment in GBP in LBIE's Administration; and Deutsche Bank has received distributions from LBIE in GBP at the GBP equivalent of those agreed amounts at the official exchange rate applicable in LBIE's Administration.

6. I was involved in the negotiation and execution of an Agreement Regarding Guarantee Claims between LBHI and DB London, dated as of September 11, 2015 (the "Reserves Agreement"), which resolved certain disputes arising from a *Motion of the Plan Administrator Pursuant to Sections 8.4, 9.3, and 14.1 of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors to Estimate Claims for Reserve and Distribution Purposes* [ECF #49954] (the "Initial Estimation Motion").

7. In the Reserves Agreement, DB London and the Plan Administrator agreed that, for the forty-nine Guarantee Claims held by Deutsche Bank that were subject to the Initial Estimation Motion, the Plan Administrator would hold reserves in non-cash assets based on the USD equivalents of the GBP amounts at which the corresponding Primary Claims had been admitted for payment in LBIE's Administration.

8. In the Reserves Agreement, the parties reserved their rights to dispute the subject Guarantee Claims, and Deutsche Bank agreed to cap its actual recovery on those claims at the amount reserved, but Deutsche Bank did not agree to cap the allowed amount of those claims.

9. The Reserves Agreement further provided that the Initial Estimation Motion would be withdrawn without prejudice and that the objection thereto filed by Deutsche Bank

[ECF #50602] would be withdrawn without prejudice, with any formal litigation concerning the subject claims to be deferred for an agreed period.

10. I have been monitoring the so-called "Waterfall Applications" in the English Courts related to LBIE's Administration since they were commenced in or about February 2013.

11. Based on my understanding of the Claims, the Waterfall Applications, and the Motion, I consider the following issues being determined by the English Courts in the Waterfall Applications to be relevant to the Motion:

"Waterfall I Application":

- if the LBIE Administration converts to a Liquidation, is no statutory interest payable for the period prior to the conversion;

- are creditors that received distributions in GBP on debts converted from another currency to GBP entitled to no true-up payment where the GBP has weakened against the original currency; and

- do LBIE's billions of dollars of subordinated debt rank prior to statutory interest on "provable" debts and "non-provable" claims, and does interest on subordinated debt (which could potentially be at a high rate) rank equally with statutory interest on "provable" debts.

"Waterfall II Application":

- does statutory interest begin to accrue on admitted claims that were contingent or unmatured on the commencement date only when such claims became fixed, and not from the commencement date forward; and

- must payments of contractual or statutory interest be offset against the creditor's currency conversion claim, if any; and

- were entitlements to contractual or statutory interest or currency conversion true-ups waived in any of the various agreements entered into between LBIE and creditors after the commencement date.

12. Virtually every question above that is definitively answered "Yes" by the English Courts will decrease the Claimant's entitlement and/or recovery in the "surplus" at LBIE --

potentially, in certain combinations, substantially so (as discussed below). Another variable in the Waterfall II Application is the "Bower v Marris" issue: whether LBIE's distributions to date should be applied first to statutory interest and second to principal claim amount, or vice versa.

13. It is expected among persons familiar with the Waterfall I Application that the Supreme Court of the United Kingdom will issue its decision on the Waterfall I Application within a few weeks of the date of this Declaration.

14. It is my understanding that the majority of issues originally encompassed by the Waterfall II Application have been decided by the High Court in several phases and are subject to appeals in the Court of Appeal.

15. There is also a "Waterfall III Application," concerning intercompany claims and liabilities between LBIE and its members, LB Holdings Intermediate 2 Limited and Lehman Brothers Limited, as well as Lehman Brothers Europe Limited, which is scheduled to be heard by the High Court in two phases over the course of 2017.

16. Despite hoping to maximize its recoveries on the Primary Claims, Deutsche Bank is not willing to waive the protection of the Guarantee Claims at this time.

17. Deutsche Bank has been closely monitoring the Waterfall Applications and has concluded that, as of today, even assuming future payments from LBIE constitute "consideration on the Primary Claims," there are several unlikely but possible outcomes in which LBIE will pay creditors in respect of the Primary Claims and statutory interest less than would be necessary to discharge LBHI's Currency Conversion Obligation.

18. In one scenario, if (a) the English Courts rule with finality in the Waterfall I Application that LBIE (i) owes no accrued statutory interest for the period of administration, if it converts from administration to liquidation, and (ii) has no obligation at all for currency

conversion true-ups, and (b) LBIE converts to liquidation and makes all outstanding payments promptly thereafter, then the Primary Claims could ultimately recover from LBIE much less than would be necessary to discharge LBHI's Currency Conversion Obligation.

19. In a second scenario, if (a) the English Courts rule with finality in the Waterfall I Application that LBIE must pay subordinated debt claims in priority to statutory interest on claims such as the Primary Claims and that statutory interest on such subordinated claims (at relatively high interest rates) ranks equally with statutory interest on claims such as the Primary Claims, and (b) if the English Courts rule with finality in the Waterfall II Application that claimants with ISDAs are entitled to high costs of funding, then the non-ISDA-based Primary Claims could ultimately recover from LBIE less than would be necessary to discharge LBHI's Currency Conversion Obligation. This outcome would be even worse for the Claimant in this scenario for certain Primary Claims if, in addition, the English Courts rule with finality in the Waterfall II Application that statutory interest does not begin to accrue on contingent claims until they are fixed.

20. In a third scenario, if (a) the English Courts rule with finality (i) in the Waterfall I Application that LBIE has no obligation at all for currency conversion true-ups, or (ii) in the Waterfall II Application that certain terms in post-administration agreements effectively waive currency conversion true-ups, and (b) the English Courts rule with finality in the Waterfall II Application that statutory interest does not begin to accrue on contingent claims until they are fixed, then certain Primary Claims could ultimately receive from LBIE much less than would be necessary to discharge LBHI's Currency Conversion Obligation.

Pg 6 of 6

21. In the Waterfall Applications, LBHI (in Waterfall I) and the joint venture in which LBHI is known to have a substantial economic interest (in Waterfall II) have been actively litigating in support of outcomes that will reduce recoveries to holders of general unsecured claims against LBIE, including almost all of the components of the scenarios described above.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: March 21, 2017
London, England

_____
Michael Sutton

6