Presentment Date: April 5, 2017 at 12:00 noon (prevailing Eastern Time)
Objection Deadline: March 31, 2017 at 4:00 p.m. (prevailing Eastern Time)

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7412
Fax: (303) 974-7468
Michael A. Rollin

*Attorneys for Debtors Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            )
In re                                                       )    Chapter 11 Case No.
                                                            )
Lehman Brothers Holdings Inc., et al.,                      )    08-13555 (SCC)
                                                            )
            Debtors.                                        )    Jointly Administered
                                                            )
------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF ORDER APPROVING NOTICE PROCEDURES
WITH RESPECT TO PROPOSED RMBS SETTLEMENT AGREEMENT**

       **PLEASE TAKE NOTICE** that upon the annexed motion of Lehman Brothers

Holdings Inc. (the "Motion"), as Plan Administrator under the *Modified Third Amended Joint*

*Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, on behalf of itself

and the other affiliated debtors in the above-captioned cases (collectively, the "LBHI Debtors"),

the undersigned will present the proposed order annexed to the Motion as Exhibit A (the

"Proposed Order") for signature to the Honorable Shelley C. Chapman, United States

Bankruptcy Judge, Courtroom 623 at the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York 10004 on **April 5, 2017 at**

**12:00 noon (prevailing Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of the Proposed

Order must be made in writing, state with particularity the grounds therefor, conform to the

Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District

of New York, be filed electronically in text searchable portable document format (PDF) with the

Court in accordance with General Order M-399 (General Order M-399 can be found at

www.nysb.uscourts.gov, the official website for the Court), by registered users of the Court's

case filing system and by all other parties in interest (with a hard copy delivered directly to the

Judge's Chambers), and be served in accordance with General Order M-399, and upon (i) the

chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York

10004, Courtroom 23; (ii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New

York 10019 (Attn: Paul V. Shalhoub, Esq. and Todd G. Cosenza, Esq.) and Rollin Braswell

Fisher LLC, 8350 East Crescent Parkway, Suite 100, Greenwood Village, Colorado 80111 (Attn:

Michael A. Rollin, Esq.), attorneys for LBHI and certain of its affiliates; (iii) Gibbs & Bruns

LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002 (Attn: Kathy Patrick, Esq.), attorneys

for the Institutional Investors; (iv) Chapman & Cutler LLP, 111 West Monroe Street, Chicago,

Illinois 60603 (Attn: Franklin H. Top III, Esq. and Scott A. Lewis, Esq.), Morgan, Lewis &

Bockius LLP, 101 Park Avenue, New York, New York 10178 (Attn: Michael S. Kraut, Esq.),

Seward & Kissel LLP, 1 Battery Park Plaza, New York, New York 10004 (Attn: M. William

Munno, Esq. and Daniel E. Guzman, Esq.), Alston & Bird LLP, 1201 West Peachtreet Street,

Suite 4900, Atlanta, Georgia 30309 (Attn: John C. Weitnauer, Esq.), and Nixon Peabody LLP,

437 Madison Avenue, New York, New York 10022 (Attn: Dennis Drebsky, Esq.), attorneys for

the Trustees; and (v) the Office of the United States Trustee for the Southern District of New

York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014

(Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz, Esq.) **so as**

**to be actually filed and received by no later than March 31, 2017 at 4:00 p.m. (prevailing**

**Eastern time) (the "Objection Deadline")**.

        **PLEASE TAKE FURTHER NOTICE** that if no responses or objections are

received by the Objection Deadline, the Proposed Order may be approved without further notice

or a hearing.  If an objection is filed, you may be notified of a hearing to consider the relief

requested.

Dated: March 22, 2017
      New York, New York

           /s/ Paul V. Shalhoub
           Paul V. Shalhoub
           Todd G. Cosenza
           WILLKIE FARR & GALLAGHER LLP
           787 Seventh Avenue
           New York, New York 10019
           Tel:  (212) 728-8000
           Fax:  (212) 728-8111

           Michael A. Rollin
           ROLLIN BRASWELL FISHER LLC
           8350 East Crescent Parkway, Suite 100
           Greenwood Village, Colorado 80111
           Tel: (303) 945-7412
           Fax: (303) 974-7468

           *Attorneys for Debtors Lehman Brothers Holdings*
           *Inc. and Certain of Its Affiliates*

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7412
Fax: (303) 974-7468
Michael A. Rollin

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
|  |  |
| --- | --- |
| In re | Chapter 11 Case No. |
| Lehman Brothers Holdings Inc., <u>et al.</u>, | 08-13555 (SCC) |
| Debtors. | Jointly Administered |
---------------------------------------------------------x

**MOTION FOR ENTRY OF ORDER APPROVING NOTICE PROCEDURES WITH
<u>RESPECT TO PROPOSED RMBS SETTLEMENT AGREEMENT</u>**

Lehman Brothers Holdings Inc. (the "<u>Plan Administrator</u>"), as Plan Administrator

under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and

Its Affiliated Debtors*, on behalf of itself and the affiliated debtors in the above-captioned cases

(collectively, the "<u>LBHI Debtors</u>"), hereby move for entry of an order (the "<u>Motion</u>"), the

proposed form of which is attached hereto as <u>Exhibit A</u> (the "<u>Proposed Order</u>"), under sections

105(a) and 105(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), as

complemented by Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

Rules"), for approval of the proposed Notice Procedures[1] with respect to the motion (the "9019 Motion") requesting approval of the RMBS Settlement Agreement.

## PRELIMINARY STATEMENT

1.    Following the Court's consideration and approval of this Motion, the LBHI Debtors intend to file and serve (in the manner contemplated by the proposed Notice Procedures) the 9019 Motion, which requests this Court's approval of an agreement (as modified, the "RMBS Settlement Agreement")[2] that provides a process to determine and resolve claims arising out of alleged breaches of representations and warranties made by certain of the LBHI Debtors in applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other related agreements (the "Governing Agreements") concerning mortgage loans in certain residential mortgage-backed securitizations ("RMBS").  In brief, the trustees for the RMBS allege that the LBHI Debtors breached various representations and warranties and provided deficient mortgage loan files when they sold mortgage loans into the RMBS trusts, and that these purported breaches gave rise to billions of dollars in claims. The LBHI Debtors dispute the magnitude of the claims alleged by the trustees.

2.    On November 30, 2016, after years of litigation, negotiation, mediation, meet-and-confers, and even an earlier settlement agreement, the LBHI Debtors and certain authorized investment advisors and investors (the "Institutional Investors")[3] who are significant holders of certificates in the RMBS trusts (the "Trusts") at issue in the RMBS Settlement

---

[1]    Capitalized terms not immediately defined herein have the meanings ascribed to them below.

[2]    A copy of the RMBS Settlement Agreement is attached as Exhibit B.

[3]    The Institutional Investors hold approximately $6 billion of the unpaid principal balance of securities issued by Trusts subject to the RMBS Settlement Agreement.

Agreement, entered into a prior version of the RMBS Settlement Agreement and presented it to the trustees for the Trusts (the "Trustees").[4]   Following months of additional negotiations between the LBHI Debtors, the Institutional Investors and the Trustees, on March 17, 2017, the LBHI Debtors and the Institutional Investors entered into a modified form of the RMBS Settlement Agreement and presented the modified agreement to the Trusts for their consideration and, hopefully, acceptance.  The Trustees have until June 1, 2017, to determine whether to accept the RMBS Settlement Agreement.

        3.      Generally, under the RMBS Settlement Agreement, the LBHI Debtors and the Institutional Investors (and the Trustees, assuming their acceptance) will have agreed to seek estimation of the Covered Loan Claims (as defined in the RMBS Settlement Agreement),[5]  in an amount to be determined by this Court in an estimation proceeding (the "Estimation Proceeding") pursuant to section 502(c) of the Bankruptcy Code.  The LBHI Debtors have agreed to seek estimation in the amount of $2.416 billion, as an allowed class 7 general unsecured claim in the above-captioned bankruptcy proceedings (the "Chapter 11 Cases") against Lehman Brothers Holdings Inc., although the Trustees have the ability to seek estimation of the claims in a higher amount.  The Institutional Investors have previously agreed that a settlement of the Covered Loan Claims for an allowed class 7 claim of $2.416 billion was fair and reasonable, and have supported a settlement of the claims at that amount.  The Institutional Investors have informed the LBHI Debtors that they continue to believe that a settlement at that

---

[4]      On October 26, 2015, a little more than one year prior to the November 30, 2016 presentation of the prior version of the RMBS Settlement Agreement to the Trustees, the LBHI Debtors and the Institutional Investors had entered into an earlier settlement agreement whereby the LBHI Debtors and the Institutional Investors had agreed to settle the both the Covered Loan Claims and the Transferor Loan Claims (each as defined in the RMBS Settlement Agreement) for $2.44 billion.  That earlier settlement agreement was presented to the Trustees but ultimately was withdrawn.

[5]      The Transferor Loan Claims are not part of the RMBS Settlement Agreement and, although the disallowance of those claims already has been ordered by this Court and affirmed by the District Court, the Trustees have indicated that they intend to further appeal the disallowance of such claims.

amount is fair and reasonable, and they therefore support estimation of the Covered Loan Claims

so long as the amount estimated is not less than $2.416 billion.

4.      Under the RMBS Settlement Agreement, among other terms:

    a.   if the Court estimates the Covered Loan Claims at $2 billion or more, all parties will have waived their right to appeal the Court's decision;

    b.   if the Court estimates the Covered Loan Claims at less than $2 billion, the Trustees (but not the LBHI Debtors) may appeal the Court's decision;

    c.   if the Court estimates the Covered Loan Claims in an amount between $2 billion and $2.416 billion, the allowed claim will be equal to $2.416 billion (and neither the Trustees nor the LBHI Debtors may appeal); and

    d.   if the Court estimates the Covered Loan Claims in an amount greater than $2.416 billion, such greater amount will be the allowed claim (and neither the Trustees not the LBHI Debtors may appeal).

5.      The LBHI Debtors and the Trustees have extensively negotiated the

manner in which the Estimation Proceeding will be conducted, which is set forth in Exhibit G to

the RMBS Settlement Agreement.   In short, the Estimation Proceeding will commence in

October of 2017 and will provide the Trustees and the LBHI Debtors with more than an adequate

opportunity to present their respective cases.

6.      Pursuant to the terms of the RMBS Settlement Agreement, the Trustees

may condition their acceptance of the settlement on certain findings (the "Trustee Findings")

being made with respect to their determination to enter into the settlement.   Similarly, it is a

condition to the LBHI Debtors' obligations under the settlement that the Court make certain

findings (the "Debtors' Findings") with respect to their decision to enter into the RMBS

Settlement Agreement.   The Trustee Findings and the Debtors' Findings are attached as Exhibits

F and I, respectively, to the RMBS Settlement Agreement.

- 4 -

7.     Pursuant to the terms of the RMBS Settlement Agreement, the Plan Administrator, on behalf of itself and the LBHI Debtors, is required to file this Motion requesting that the Court enter an order approving and establishing certain notice requirements, deadlines, and a hearing date with respect to this Court's consideration of the 9019 Motion[6] (as further described herein, collectively the "Notice Procedures").

## JURISDICTION

8.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## NOTICE PROCEDURES

9.     Pursuant to RMBS Settlement Agreement, the LBHI Debtors propose that the Trustees provide notice of the RMBS Settlement Agreement, the 9019 Motion, the hearing date to consider approval of the RMBS Settlement Agreement, the Trustee Findings and the Debtors' Findings, and the related objection deadline, to all (i) certificateholders, bondholders, noteholders, and beneficial holders of certificates, bonds or notes in the Trusts (collectively, the "Investors") and (ii) all financial guaranty institutions known to the Trustees to have an interest in the Trusts.   The LBHI Debtors understand the Trustees will provide this notice by:

    a.  Posting the notice on a publicly-accessible website established by the Trustees, http://www.lbhirmbssettlement.com;

    b.  Providing the notice to The Depository Trust Company ("DTC") for posting on DTC's LENS Notification System;

    c.  Providing the notice to Broadridge, a provider of investor communications;

---

[6]     This Motion does not and is not intended to provide a comprehensive summary of the terms of the RMBS Settlement Agreement.  The 9019 Motion will provide a more detailed summary of both the relevant terms of the RMBS Settlement Agreement and the efforts of the parties in negotiating such agreement.

d.  Mailing the notice, by first class registered mail, to Certificateholders whose names and addresses appear on the securities registration books of the Trustees for the relevant Trusts;

e.  Causing the notice to be published in *The Wall Street Journal, Financial Times Worldwide,* and *The New York Times;*

f.  Issuing the notice to the wire service *PR Newswire*; and

g.  Purchasing banner advertisements announcing the 9019 Motion and providing a hyperlink to http://www.lbhirmbssettlement.com on the following websites: Wall Street Journal Digital Network, NYT.com, investors.com, reuters.com, and economist.com.

10.    In addition, the LBHI Debtors propose that they provide additional notice of the RMBS Settlement Agreement, the 9019 Motion, the hearing date to consider approval of the RMBS Settlement Agreement, the Trustee Findings and the Debtors' Findings, and related objection deadline, to (i) those parties required to receive notice in the above-captioned chapter 11 cases in accordance with the procedures set forth in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures*, entered on June 17, 2010 (Docket No. 9635), (ii) all servicers and master servicers of loans in the applicable Trusts, (iii) all mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the RMBS Settlement Agreement), and (iv) any other person who the LBHI Debtors conclude may have a claim or interest in the applicable Trusts or the RMBS Settlement Agreement.

11.    The LBHI Debtors request that this Court (a) schedule the hearing to consider approval of the 9019 Motion for July 6, 2017 at 10:00 a.m. (prevailing Eastern time) (the "Hearing"), and (b) establish June 22, 2017 at 12:00 noon (prevailing Eastern time), as the deadline by which all objections to the 9019 Motion must be filed and served.

- 6 -

12.     The LBHI Debtors respectfully submit that the foregoing notice procedures, and requested hearing date and objection deadline, will provide comprehensive notice to all affected parties of the terms of the RMBS Settlement Agreement and the relief to be sought at the hearing to consider approval of the 9019 Motion, and that no other or further notice is necessary or required.

## BASIS FOR RELIEF

13.     Section 105(a) provides a bankruptcy court with broad powers in its administration of a case under the Bankruptcy Code: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).   Pursuant to section 105(a), the Bankruptcy Court has expansive equitable powers to achieve fairness and justice in the reorganization process.  *See, e.g., Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n (In re Croton River Club, Inc.)*, 52 F.3d 41 (2d Cir. 1994) (holding that bankruptcy courts have broad equity power to manage affairs of debtors); *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern").

14.     In addition, the Court has the authority and discretion under section 105(d) of the Bankruptcy Code to issue and prescribe procedures and conditions as the Court deems appropriate to ensure that matters before it are handled expeditiously and economically.  *See* 11

U.S.C. § 105(d); *see In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 560 (S.D.N.Y. 2015), *aff'd sub nom.*

*In the Matter of: Fletcher Int'l, Ltd.*, 661 F. App'x 124 (2d Cir. 2016); *In re Pac. Ave., LLC*, 467

B.R. 868, 870 (Bankr. W.D.N.C. 2012); *In re Aspen Limousine Serv., Inc.*, 187 B.R. 989, 995

(Bankr. D. Colo. 1995), aff'd, 193 B.R. 325 (D. Colo. 1996).  Under Bankruptcy Rule 2002, no

less than 21 days' notice must be provide for proposed settlements under Bankruptcy Rule 9019.

       15.    Entry of the Proposed Order is appropriate under sections 105(a) and

105(d), as complemented by Bankruptcy Rule 9019, because it will allow the LBHI Debtors to

(i) comply with the requirements of the RMBS Settlement Agreement (which, in turn,

specifically requires the LBHI Debtors to receive an order from this Court approving the Notice

Procedures), and (ii) implement a process in which appropriate notice will be given to all

relevant parties with an interest in the applicable Trusts or the RMBS Settlement Agreement so

that this Court can consider the appropriateness of the 9019 Motion at the Hearing.

## NOTICE AND PROCEDURE

16.    No trustee has been appointed in these Chapter 11 Cases.  The LBHI Debtors will provide notice of this Motion in accordance with the procedures set forth in the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, entered on June 17, 2010 (Docket No. 9635), on: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for the Institutional Investors; (vi) the attorneys for the Trustees; and (viii) all parties who have requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided.

17.    No previous request for the relief sought herein has been made to this Court or any other court.

18.    This Motion sets forth the legal authorities upon which the Motion is based.  Accordingly, the LBHI Debtors respectfully submit that the Motion itself satisfies the requirements of the local bankruptcy rules that a separate memorandum of law be submitted herewith.


*Remainder of Page Intentionally Left Blank*

## CONCLUSION

**WHEREFORE** the Plan Administrator respectfully requests entry of the Proposed

Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein

and such other and further relief as this Court deems just and proper.

Dated: March 22, 2017
       New York, New York

/s/ Paul V. Shalhoub
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7412
Fax: (303) 974-7468

*Attorneys for Debtors Lehman Brothers Holdings
Inc. and Certain of Its Affiliates*

## EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                                                    )
In re                                                               )    Chapter 11 Case No.
                                                                    )
Lehman Brothers Holdings Inc., <u>et al.</u>,                        )    08-13555 (SCC)
                                                                    )
            Debtors.                                                )    Jointly Administered
                                                                    )
----------------------------------------------------------x

## ORDER APPROVING AND ESTABLISHING NOTICE
## PROCEDURES WITH RESPECT
## <u>TO PROPOSED RMBS SETTLEMENT AGREEMENT</u>

Upon the motion, dated March 22, 2017 (the "<u>Motion</u>"),[7] of Lehman Brothers Holdings

Inc. (the "<u>Plan Administrator</u>") as Plan Administrator under the *Modified  Third Amended Joint*

*Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "<u>Plan</u>"), on

behalf of itself and the other affiliated debtors in the above-captioned cases (collectively, the

"<u>LBHI Debtors</u>"), pursuant to sections 105(a) and 105(d) of title 11 of the United States Code

(the "<u>Bankruptcy Code</u>"), as complemented by  Rule 2002 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), for approval of the Notice Procedures with respect to the

9019 Motion, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of

Reference M-431, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these

Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28

U.S.C. §157(b); and sufficient notice of the Motion having been given; and it appearing that no

other or further notice need be provided; and that the relief requested in the Motion being in the

---

[7]        Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

best interests of the LBHI Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Notice Procedures and the form of notice with respect to the 9019 Motion, a copy of which is annexed hereto as <u>Exhibit 1</u>, are approved; and it is further

ORDERED that notice of the Motion and the RMBS Settlement Agreement in accordance with the Notice Procedures will be sufficient and effective notice in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 Cases and others, including the Institutional Investors and the investors in each Trust, on notice of the Motion and the RMBS Settlement Agreement; and it is further

ORDERED, that the LBHI Debtors shall file the 9019 Motion no later than 21 days after entry of this Order; and it is further

ORDERED that, all objections to the 9019 Motion must be filed and served so as be received by June 22, 2017 at 12:00 noon (prevailing Eastern time); and it is further

ORDERED that the Hearing on the 9019 Motion will take place in the Bankruptcy Court on July 6, 2017 at 10:00 a.m. (prevailing Eastern Time); and it is further

ORDERED that notice of the 9019 Motion as provided herein shall be deemed good and sufficient notice of the 9019 Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2017
      New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

- 2 -

**<u>EXHIBIT 1</u>**

**Hearing Date: July 6, 2017 at 10:00 a.m. (ET)**
**Objection Deadline: June 22, 2017 at 12:00 noon (ET)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7412
Fax: (303) 974-7468
Michael A. Rollin

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                         )
In re                                    )    Chapter 11 Case No.
                                         )
Lehman Brothers Holdings Inc., et al.,   )    08-13555 (SCC)
                                         )
            Debtors.                     )    Jointly Administered
                                         )
-----------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C § 105(A) FOR**
**APPROVAL OF THE RMBS SETTLEMENT AGREEMENT**

**PLEASE TAKE NOTICE** that, on [_____ ], 2017 Lehman Brothers Holdings Inc.

(the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint*

*Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, on behalf of itself

and the other affiliated debtors in the above-captioned cases (collectively, the "LBHI Debtors")

filed the [Motion of Lehman Brothers Holdings Inc. pursuant to Fed. R. Bankr. P. 9019 and 11

U.S.C. §105(A) for Approval of RMBS Settlement Agreement (the "Motion")]. Capitalized

terms used but not define herein have the meanings given to them in the Motion.

PLEASE TAKE FURTHER NOTICE that a hearing will be held on the Motion before

the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States

Bankruptcy Court for the Southern District of New York, Courtroom 623, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court") on **July 6, 2017 at 10:00 a.m.**

**(prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion (including

approval of the Trustee Findings and the Debtors' Findings) must be made in writing, state with

particularity the grounds therefor, conform to the Federal Rules of Bankruptcy Procedure and the

Local Bankruptcy Rules for the Southern District of New York, be filed electronically in text

searchable portable document format (PDF) with the Court in accordance with General Order M-

399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the

Court), by registered users of the Court's case filing system and by all other parties in interest

(with a hard copy delivered directly to the Judge's Chambers), and be served in accordance with

General Order M-399, and upon (i) the chambers of the Honorable Shelley C. Chapman, One

Bowling Green, New York, New York 10004, Courtroom 23; (ii) Willkie Farr & Gallagher LLP,

787 Seventh Avenue, New York, New York 10019 (Attn: Paul V. Shalhoub, Esq. and Todd G.

Cosenza, Esq.) and Rollin Braswell Fisher LLC, 8350 East Crescent Parkway, Suite 100,

Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq.), attorneys for LBHI and

certain of its affiliates; (iii) Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas

77002 (Attn: Kathy Patrick, Esq.), attorneys for the Institutional Investors; (iv) Chapman &

Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603 (Attn: Franklin H. Top III, Esq.

and Scott A. Lewis, Esq.), Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178 (Attn: Michael S. Kraut, Esq.), Seward & Kissel LLP, 1 Battery Park Plaza, New York, New York 10004 (Attn: M. William Munno, Esq. and Daniel E. Guzman, Esq.), Alston & Bird LLP, 1201 West Peachtreet Street, Suite 4900, Atlanta, Georgia 30309 (Attn: John C. Weitnauer, Esq.), and Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022 (Attn: Dennis Drebsky, Esq.), attorneys for the Trustees; and (v) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz, Esq.) so as to be actually filed and received by **no later than June 22, 2017 at 12:00 noon (prevailing Eastern time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion may be granted without a hearing if no objection is timely filed and served as set forth above and in accordance with the order, dated June 17, 2010, implementing certain notice and case management procedures in these cases [Docket No. 9635] (the "Case Management Order").

*Remainder of Page Intentionally Left Blank*

Dated:  [_____], 2017
        New York, New York

/s/ DRAFT_____
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7412
Fax: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

**EXHIBIT B**

EXECUTION VERSION

## RMBS TRUST SETTLEMENT AGREEMENT

This RMBS Trust Settlement Agreement ("Settlement Agreement") is entered into as of November 30, 2016 (the "Agreement Date"), and modified as of March 17, 2017 (the "Modification Date"), by and among Lehman Brothers Holdings Inc. (the "Plan Administrator") and the other Debtors in the Bankruptcy Proceeding (as defined below) (collectively, the "LBHI Debtors") and the authorized Investment Advisors (as defined below) and Investors (as defined below) identified in the attached signature pages (collectively, the "Institutional Investors"); and, upon acceptance as described below, the Accepting Trustees (defined and set forth herein). Each of the LBHI Debtors and the Institutional Investors may be referred to herein as an "Initial Party" and collectively as the "Initial Parties." Upon acceptance by the Accepting Trustees, each of the Accepting Trustees and the Initial Parties may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain of the LBHI Debtors were the Seller, Sponsor, and/or Depositor for certain residential mortgage-backed securitizations (collectively, the "RMBS");

WHEREAS, certain of the LBHI Debtors are parties to certain applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the RMBS (the "Governing Agreements");

WHEREAS, pursuant to the Governing Agreements, certain of the LBHI Debtors have contributed or sold loans originated by various entities into the RMBS (the "Mortgage Loans");

WHEREAS, the LBHI Debtors commenced bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, styled or related to *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (the "Bankruptcy Proceeding");

WHEREAS, certain trustees for the RMBS filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans by certain of the LBHI Debtors under the Governing Agreements;

WHEREAS, as of the Modification Date, the 244 RMBS identified on the attached Exhibit A (the "Trusts") have not been terminated and the proofs of claim filed by the trustees for such Trusts (the "Trustees") on behalf of and/or relating to such Trusts (the "Proofs of Claim") assert, among other things, claims on behalf of the Trusts;

WHEREAS, as of the Modification Date, the 16 RMBS identified on the attached Exhibit B (the "Terminated Trusts") were terminated and the proofs of claim filed by the then trustees for such Terminated Trusts on behalf of and/or related to such Trusts (the "Terminated Trusts Proofs of Claim") assert, among other things, claims on behalf of the Terminated Trusts;

WHEREAS, on December 29, 2014, the Court presiding over the Bankruptcy Proceeding entered an Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities (Docket No. 47569) (the "Protocol Order") setting forth a protocol (the "Protocol") for the review of mortgage loan files, the assertion of RMBS Claims (as defined in the Protocol Order) by the Trustees, the response by the LBHI Debtors to such claims, and a mechanism for resolving disputes regarding such claims;

WHEREAS, the LBHI Debtors dispute the validity of the Proofs of Claims and the RMBS Claims (collectively, the "Claims"), as well as the Terminated Trusts Proofs of Claim, and subject to the terms of this Settlement Agreement, waive no rights and preserve all of their defenses with respect to the Claims and the Terminated Trusts Proofs of Claim except as expressly stated herein;

WHEREAS, the Trustees maintain the validity of the Claims and, subject to the terms of this Settlement Agreement, waive no rights with respect to the Claims except as expressly stated herein;

WHEREAS, the Institutional Investors are represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and, through counsel, engaged in extensive arm's length and good faith settlement negotiations with the LBHI Debtors regarding the Claims and the Terminated Trusts Proofs of Claim that included the use of David Geronemus of JAMS, as mediator, and the exchange of confidential materials;

WHEREAS, pursuant to this Settlement Agreement, the Parties wish to provide for an efficient, cost-effective, and equitable mechanism for fully and finally resolving the disputes between the Trustees and the LBHI Debtors regarding the Claims relating to Covered Loans (defined below) (the "Covered Loan Claims");

WHEREAS, this Settlement Agreement shall be presented to the Trustees for their consideration and approval, upon which approval the Trustees shall become Accepting Trustees (as defined herein) and Parties to this Settlement Agreement as set forth herein; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Covered Loan Claims.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

## ARTICLE I.    DEFINITIONS

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement

**EXECUTION VERSION**

shall, with respect to any particular Trust, have the definition given to them in the Governing Agreements for that Trust.

1.01.    "Acceptance Date" means June 1, 2017, unless extended as provided herein.

1.02.    "Accepting Trustees" means the Trustees that expressly accept the Settlement Agreement pursuant to Section 2.03.

1.03.    "Accepting Trusts" means the Trusts for which an Accepting Trustee has accepted the Settlement Agreement pursuant to Section 2.03.

1.04.    "Allocable Share" means, for any Participating Trust, the share of the Net Allowed Claim allocable to that Trust, as set forth in Section 3.04.

1.05.    "Allocated Percentage" has the meaning set forth in Section 3.04.

1.06.    "Allowed Claim" has the meaning set forth in Section 3.01.

1.07.    "Bankruptcy Court" means the court presiding over the Bankruptcy Proceeding.

1.08.    "Covered Loans" shall mean (a) the Mortgage Loans identified as the "Covered Loans" in The RMBS Trustees' Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code (ECF Doc. No. 46078), dated August 22, 2014, filed by the Trustees in the Bankruptcy Proceeding, and (b) the additional Mortgage Loans identified as "Covered Loans" in the Status Report of the RMBS Trustees with respect to Compliance with the Protocol and the Motion to Extend the Overall Claim File Cut-Off Date for Certain Loans under the Protocol Order and For Related Relief (ECF Doc. No. 52342).

1.09.    "District Court" means a United States District Court for the Southern District of New York.

1.10.    "Effective Date" shall mean the date of Final Court Approval.

1.11.    "Estimation" shall mean the estimation of the Covered Loan Claims under the Trusts, supported by legal and loan review professionals and expert analysis and analytics, pursuant to 11 U.S.C. § 502(c).

1.12.    "Estimation Proceeding" means an estimation proceeding, conducted by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c), in accordance with the procedures set forth in Exhibit G hereto, at which proceeding the Bankruptcy Court will estimate and assign a value to the Covered Loan Claims, which value will constitute the full and final Allowed Claim amount as provided herein.

1.13.    "Excluded Trust" has the meaning set forth in Section 3.02(a).

1.14.    "Expert" means the professional firm retained or to be retained by one or more of the Accepting Trustees to make the calculations required in connection with the allocation of the Net Allowed Claim pursuant to Section 3.04.

1.15.    "Final Court Approval" shall mean the later of the dates that the Trustee Findings Order and the order approving this Settlement Agreement (which may include the Trustee Findings Order) becomes a Final Order.

1.16.    "Final Order" shall mean an order or judgment of a court of competent jurisdiction that has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure (or any analogous rule applicable to such court); provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous rule applicable to such court) may be filed relating to such order shall not cause an order not to be a Final Order.

1.17.    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

1.18.    "Institutional Investors" shall mean the authorized Investment Advisors and Investors identified in the attached signature pages.

1.19.    "Investment Advisor" shall mean the following Institutional Investors: BlackRock Financial Management Inc.; Goldman Sachs Asset Management, L.P.; Invesco Advisers, Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Sealink Designated Activity Company, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; and Western Asset Management Company, and, for the avoidance of doubt, shall not include (i) any of the individual clients or funds whose assets are managed by such Investment Advisor or (ii) any affiliates of such Investment Advisor.

1.20.    "Investors" shall mean all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees, and/or transferees, and beneficial

- 4 -

holders of certificates, bonds or notes in the Trusts claiming rights through certificateholders, bondholders and noteholders in the Trusts, including but not limited to the Institutional Investors.

1.21. "Liquidated Loans" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017 are not Non-Liquidated Loans, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.22. "Net Allowed Claim" has the meaning set forth in Section 3.01.

1.23. "Non-Liquidated Loans" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017, were performing to some extent under the applicable mortgage loan documents, loans that were in default but had yet to have been foreclosed upon, or loans that had been foreclosed upon but the real property that secures the repayment of the mortgage loan had not been sold and for which the final loss suffered by the trust has not been reported by the applicable servicer or master servicer, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.24. "Participating Trust" has the meaning set forth in Section 3.02(a).

1.25. "Party in Interest" shall have the same meaning as the term "party in interest" is used in 11 U.S.C. 1109(b), and shall include any Investor.

1.26. "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

1.27. "Plan" shall mean the LBHI Debtors' third amended joint chapter 11 plan confirmed by the Bankruptcy Court on December 6, 2011 (Docket No. 23023).

1.28. "Plan Payments" shall mean distributions under the Plan on account of the Net Allowed Claim.

1.29. "Released Parties" shall mean: (i) any and all LBHI Debtors, including, without limitation, Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, BNC Mortgage LLC, Finance America LLC, and LBHI Debtors' affiliates and subsidiaries identified on Exhibit C hereto, and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents; and (ii) Aurora Commercial Corp., f/k/a Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, "Aurora"), and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents.

1.30. "Required Tax Conclusions" shall mean, except as otherwise described in Subsection 1.30(v) below, all of the following U.S. federal income tax conclusions (or their substantive equivalents) for each Accepting Trust, or portion thereof, for which a timely, valid and continuing REMIC election (as defined in the Internal Revenue Code of 1986, as amended

- 5 -

(the "Internal Revenue Code") has been made, and remains in effect, in accordance with the applicable Governing Agreements (each, a "REMIC Trust"):

(i) none of (a) the execution of this Settlement Agreement, (b) the methodology for determining, and the right to receive, an Allocable Share of the Net Allowed Claim, or (c) the receipt of Plan Payments, will cause such REMIC Trust to fail to meet the requirements of Internal Revenue Code Section 860D(a)(4);

(ii) the receipt of Plan Payments by such REMIC Trust will be treated as payments received on qualified mortgages within the meaning of U.S. Treasury Regulation Section 1.860G-2(g)(1)(ii);

(iii) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement will not cause any regular interest in such REMIC Trust to fail to qualify as a "regular interest", as defined in Internal Revenue Code Section 860G(a)(1) and will not cause the sole class of residual interest in such REMIC Trust to fail to qualify as a "residual interest", as defined in Code section 860G(a)(2);

(iv) the receipt of Plan Payments by such REMIC Trust will not be treated as a "prohibited transaction" within the meaning of Internal Revenue Code Section 860F(a)(2) or as a contribution that is subject to the tax imposed under Internal Revenue Code Section 860G(d)(1); and

(v) in the case of a REMIC Opinion only, none of (a) the right to receive an Allocable Share of the Net Allowed Claim, (b) the receipt of Plan Payments or (c) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement, will cause such REMIC Trust to fail to qualify as a REMIC as defined in Internal Revenue Code Section 860D.

1.31.  "REMIC Opinion" shall mean the opinion of tax counsel, reasonably acceptable to the LBHI Debtors and the Accepting Trustees, experienced in the U.S. federal income taxation of "real estate mortgage investment conduits," that concludes at a "will" level of certainty, subject to customary assumptions and exceptions and based on all of the relevant facts and circumstances, that a court of competent jurisdiction would agree and render a judgment on each of the Required Tax Conclusions.  For purposes of this Settlement Agreement, each of the following law firms shall be considered acceptable to the LBHI Debtors and the Accepting Trustees for purposes of rendering a REMIC Opinion: K&L Gates LLP; Cadwalader, Wickersham & Taft LLP; and Mayer Brown LLP.

1.32.  "RMBS Reserve" means the reserve maintained by the LBHI Debtors pursuant to that certain order of the Bankruptcy Court dated February 22, 2012 (Docket No. 25643).

1.33.  "Settlement" means the negotiated settlement set forth in this Settlement Agreement, including all terms and conditions thereof.

1.34.  "Transferor Loans" means the Mortgage Loans sold into, deposited into or otherwise conveyed into the Trusts that are not Covered Loans.

**EXECUTION VERSION**

1.35.    "Transferor Trusts" means all Trusts that contain solely Transferor Loans.

1.36.    "Trustee Findings" shall mean the findings of fact and conclusions of law set forth on Exhibit F annexed hereto

1.37.    "Trustee Findings Order" shall mean an order when entered by the District Court after considering certain proposed findings of fact and conclusions of law submitted by the Bankruptcy Court, or by a court of competent jurisdiction if the District Court declines to enter such order on the basis of the District Court's jurisdiction, containing, among other things, the Trustee Findings.

1.38.    "Trustees" shall mean U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust National Association, Deutsche Bank National Trust Company, in each case acting in their respective capacities as trustees, co-trustees, separate trustees and/or successor trustees of the applicable Trust(s).

ARTICLE II.    SETTLEMENT PROCESS

2.01.    Effective Date for the LBHI Debtors and Institutional Investors.  This Settlement Agreement shall be binding and effective upon the LBHI Debtors (subject to Bankruptcy Court approval) and the Institutional Investors as of the Agreement Date and shall continue to be binding and irrevocable until: (i) such time as the LBHI Debtors or the Accepting Trustees shall exercise any right they may have to terminate the Settlement Agreement under Section 2.03(c) below; or (ii) the date Final Court Approval becomes legally impossible.  Promptly following the Modification Date, the LBHI Debtors shall request that the Bankruptcy Court schedule and hold a chambers conference at a time and date mutually agreeable to the Initial Parties and the Trustees so that the LBHI Debtors and the Institutional Investors may inform the Court of the existence and terms of this Settlement Agreement.  The LBHI Debtors and the Institutional Investors agree that, subject to acceptable confidentiality arrangements, counsel for the Trustees shall be informed of and entitled to attend such conference. At that chambers conference, the Plan Administrator and the Trustees shall inform the Bankruptcy Court that they believe it is appropriate to suspend the Protocol until the earlier of the conclusion of the Estimation Hearing or the termination of this Settlement Agreement.

2.02.    Presentation of Settlement to Trustees/Intervention.

(a)    Request Letter.  This Settlement Agreement shall be presented to the Trustees for their review, evaluation, and acceptance within one (1) business day of the Modification Date as follows:  The Institutional Investors shall submit, through their counsel, a letter (in the form annexed hereto as Exhibit D) to each of the Trustees expressing their support for the settlement and requesting and urging that each enter into the Settlement Agreement.

(b)    Intervention in Court Approval Process.  Following the filing of the 9019 Motion (as defined in Section 2.03(a) below), the Institutional Investors shall jointly file a motion for leave to intervene (or a similar pleading) in the Bankruptcy Court (and, at the appropriate time, the District Court (or such other court of competent jurisdiction)  in connection with such court's consideration of the entry of the Trustee Findings Order), to

- 7 -

evidence their support for the Settlement, the Settlement Agreement, the Trustee Findings Order, the entry of an order by the court barring Investors in the Participating Trusts from asserting claims against the Trustees for the Participating Trusts with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and Final Court Approval. Each of the Institutional Investors shall use its reasonable best efforts to prosecute the intervention, to support the Settlement, and to obtain Final Court Approval of the Settlement Agreement and entry of the Trustee Findings Order. The Institutional Investors' obligation to use reasonable best efforts shall continue until the earliest of (i) Final Court Approval, (ii) the date Final Court Approval becomes legally impossible, (iii) the date on which the LBHI Debtors or the Accepting Trustees terminate the Settlement Agreement pursuant to Section 2.03(c), below, or (iv) any material breach by the LBHI Debtors of the Settlement Agreement (which breach is not cured or waived within 90 days of written notice of such breach having been provided by a Party).

    2.03.   <u>Acceptance by Trustees/Final Court Approval</u>.

    (a)   <u>Acceptance of Settlement Agreement/Notice</u>. On or prior to the Acceptance Date, each Trustee shall provide written notice to the Institutional Investors and the LBHI Debtors accepting or rejecting the Settlement separately on behalf of each Trust and an executed signature page for this Settlement Agreement to the Institutional Investors and the LBHI Debtors, all in accordance with the notice provisions set forth in Section 6.17 hereof, subject to Sections 2.03(c) and 2.06 below; provided, however, if any Trust listed on <u>Exhibit A</u> is terminated after the Modification Date but before the date the LBHI Debtors commence Plan Payments on the Net Allowed Claim, the Trustee that was the trustee for such Trust shall provide written notice to the Institutional Investors and the LBHI Debtors of such fact and such trust shall also be considered a Terminated Trust.

    Within 21 days after the Modification Date, the LBHI Debtors shall file a motion (the "<u>Scheduling Motion</u>") requesting that the Bankruptcy Court enter an order (1) approving a notice program with respect to its consideration of the 9019 Motion (as defined below), (2) setting a date by which all objections to the 9019 Motion must be filed and served (which deadline shall be at least twenty-one (21) days after the Acceptance Date, the "<u>9019 Objection Deadline</u>"), and (3) setting the date of the hearing to consider approval of the 9019 Motion.

    Within 21 days of the Bankruptcy Court order granting the Scheduling Motion, the LBHI Debtors shall file a motion with the Bankruptcy Court (which may include the Scheduling Motion, the "<u>9019 Motion</u>") requesting that the Bankruptcy Court enter an order (i) approving this Settlement Agreement and containing the Trustee Findings (which shall be submitted by the Bankruptcy Court to the District Court) and the Debtors' Findings (defined below), (ii) setting the date on which the Estimation Proceeding will begin, which date shall be no earlier than October 16, 2017; and (iii) providing that the Estimation Proceeding shall be conducted in accordance with the procedures set forth in <u>Exhibit G</u> hereto.

**EXECUTION VERSION**

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the Accepting Trustees to all Investors and all financial guaranty institutions known to the Accepting Trustees to have an interest in the Trusts in the manner approved by the Bankruptcy Court.

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the LBHI Debtors to those parties required to receive notice in the Bankruptcy Proceeding, and all known servicers and master servicers of loans in the Trusts, all known mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement), and any other person who the LBHI Debtors shall conclude may have a claim or interest in the Trusts or the Settlement Agreement in the manner approved by the Bankruptcy Court.

Upon the Acceptance Date, this Settlement Agreement shall continue in effect for such Accepting Trustee(s) and the associated Trusts unless and until: (i) the Bankruptcy Court has issued an order that has become a Final Order denying approval of the Settlement Agreement or declines to submit the Trustee Findings to the District Court; (ii) the District Court or, if the District Court declines to exercise jurisdiction, a different court of competent jurisdiction, has issued an order that has become a Final Order denying approval of the Settlement Agreement or entry of the Trustee Findings Order; (iii) the date on which obtaining Final Court Approval becomes legally impossible; or (iv) the Settlement Agreement is terminated in accordance with Section 2.03(c) below.

(b)     Best Efforts.  During the period during which Final Court Approval is being sought, the Accepting Trustees, the LBHI Debtors, and the Institutional Investors shall each be obligated to use their reasonable best efforts to obtain Final Court Approval of the Settlement and the entry of the Trustee Findings Order so long as there has been no material breach of this Settlement Agreement.  The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the Acceptance Date, or if any Party discovers facts that are additional to, inconsistent with, or different from those which they knew at the time they entered into this Settlement Agreement, until such time as Final Court Approval becomes legally impossible.

(c)     The LBHI Debtors' and the Accepting Trustees' Right to Terminate.  The LBHI Debtors and the Institutional Investors have entered into a confidential letter agreement that provides the LBHI Debtors the right to terminate this Settlement Agreement in the manner provided in clauses (i) and (ii) in the immediately following sentence (the "Confidential Letter Agreement") (the Trustees shall be entitled to know such confidential agreed-upon percentages provided they agree to hold such agreed-upon percentages in confidence, and the LBHI Debtors shall be entitled to disclose such percentages to the Bankruptcy Court and the District Court).

The LBHI Debtors shall have the right to terminate this Settlement Agreement in the event that (i) Trustees for a percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such

Trusts and the amount of losses on the Mortgage Loans in such Trusts, as of the Modification Date, have not accepted this Settlement Agreement by the Acceptance Date, (ii) an agreed-upon percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such Trusts and the amount of losses on the Mortgage Loans in such Trusts, are not included within Final Court Approval of the Settlement Agreement, (iii) (x) the REMIC Approval is not obtained by the date that is one year after the Trustee Findings Order becomes a Final Order or (y) the LBHI Debtors form the good faith belief that no REMIC Approval will take place, or (iv) the Bankruptcy Court does not include within the order approving this Settlement Agreement the findings of fact and conclusions of law set forth on Exhibit I hereto (the "Debtors' Findings").

An Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts (i) in the event that an Accepting Trust or Accepting Trusts are not included within Final Court Approval, but only for the Accepting Trust or Accepting Trusts that are not included within Final Court Approval, (ii) in the event the applicable Accepting Trustee has been directed, prior to the 9019 Objection Deadline, to terminate this Settlement Agreement as to such Accepting Trust or Accepting Trusts in a manner acceptable to the Accepting Trustee, but only for the Accepting Trust or Accepting Trusts for which such a direction has been provided, or (iii) the Bankruptcy Court does not include within the order approving this Settlement Agreement the proposed Trustee Findings for submission by the Bankruptcy Court to the District Court.

The LBHI Debtors shall have the right to terminate this Settlement Agreement, and an Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts, in the event that: (i) the Bankruptcy Court has not entered an order approving this Settlement Agreement (inclusive of the Debtors' Findings and the proposed Trustee Findings) by July 31, 2017; or (ii) the Bankruptcy Court does not agree that the Estimation Hearing will be conducted in accordance with the terms set forth in Exhibit G (including the admission of the Institutional Investor Statement annexed hereto as Exhibit E).

The LBHI Debtors and the Accepting Trustees shall provide written notice to each other and the Institutional Investors of the exercise of their right to terminate this Settlement Agreement in accordance with the terms of this paragraph. The LBHI Debtors' and the Accepting Trustees' right to terminate this Settlement Agreement upon the occurrence of any of the events described in this paragraph shall be waived if not exercised, by providing notice as set forth in the preceding sentence, within 20 days following the occurrence of the applicable event.

2.04.    Trustee Review.  The Trustees shall have until the Acceptance Date to conduct an investigation of the Settlement Agreement and its terms.  The Trustees may conduct such diligence, may solicit input from Investors, and may retain experts to assist them as they deem necessary to inform themselves concerning the Settlement Agreement.

2.05.    Effect of Termination.  In the event that this Settlement Agreement is terminated

**EXECUTION VERSION**

as provided for herein, the Settlement Agreement shall be null and void as to those Trusts for which it is terminated, and all pending claims filed by or on behalf of such Trusts shall be resolved pursuant to the Protocol Order, as amended by the Bankruptcy Court as appropriate in light of the suspension of the Protocol referred to in Section 2.03(a) herein and approved by the Bankruptcy Court, or in such other manner as the Bankruptcy Court shall direct.

2.06. <u>REMIC Approval/Trustee Findings/Other Trustee Conditions</u>.  The Trustees may condition their acceptance of this Settlement Agreement upon:

(i) the District Court's approval of the Trustee Findings;

(ii) the Trustee Findings Order becoming a Final Order;

 (iii) the receipt by the Accepting Trustees of the earlier of either:

(a) (a) A REMIC Opinion, in form and substance reasonably acceptable to the Accepting Trustees and LBHI Debtors, from legal counsel reasonably acceptable to the Accepting Trustees and the LBHI Debtors but retained by and at the expense of the LBHI Debtors, with respect to the REMIC Trusts that comprise the Accepting Trusts on behalf of which the Accepting Trustees (each acting as trustee, indenture trustee or separate trustee, as applicable) accepted the Settlement Agreement. The LBHI Debtors shall use their reasonable best efforts to obtain the REMIC Opinion for all REMIC Trusts that are, or are within, or that comprise, an Accepting Trust within 180 days of the Acceptance Date.

(b) A private letter ruling(s), or similar guidance, acceptable to the Parties, applicable to the REMIC Trusts that are, or are within, or that comprise, an Accepting Trust from the Internal Revenue Service containing the Required Tax Conclusions (the "REMIC Private Letter Ruling"). Only if, and after, (i) the LBHI Debtors notify the Accepting Trustees that it would not be possible or practicable for them to obtain an opinion of counsel as described in Section 2.06(iii)(a) or (ii) the Accepting Trustees determine that a REMIC Opinion delivered to them is not acceptable in form, content, or counsel providing the REMIC Opinion, the Accepting Trustees shall begin the process to cause requests for such letter ruling(s) to be submitted, if necessary, to the Internal Revenue Service as promptly as practicable, shall use reasonable best efforts to pursue such requests, and such requests may not be abandoned, unless an acceptable REMIC Opinion has been obtained, without the consent (which shall not unreasonably be withheld) of the LBHI Debtors and the Institutional Investors. In the event that the provisions of Section 3.06 of this Settlement Agreement are modified, the Accepting Trustees shall, if necessary, update their request(s) to the Internal Revenue Service to take account of such modifications. The LBHI Debtors shall use their reasonable best efforts to

assist the Accepting Trustees' preparation and pursuit of the request for the rulings.

Receipt of the first to occur of either an acceptable REMIC Opinion or the REMIC Private Letter Ruling shall constitute the "REMIC Approval" as that term is used herein. The Parties acknowledge and agree that pursuit of the REMIC Approval shall not delay the commencement and conduct of the Estimation Proceeding, and such proceeding may take place and be completed while the applicable Parties pursue a REMIC Approval.

2.07  Bar Order.  In connection with the entry of the Trustee Findings Order, the LBHI Debtors, the Accepting Trustees, and the Institutional Investors shall request the entry of an order barring Investors in the Accepting Trusts from asserting claims against the Accepting Trustees with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, provided however that the entry of such a bar order is not a condition of Final Court Approval.

2.08.  LBHI Representations.  The LBHI Debtors represent to the Trustees that each of the entities identified on Exhibit C hereto is an affiliate or subsidiary of one or more of the LBHI Debtors.


ARTICLE III.  SETTLEMENT TERMS

3.01.  Settlement Consideration and Payment.

The Settlement consideration shall consist of an allowed Class 7 General Unsecured claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc. in an amount to be determined by the Bankruptcy Court in the Estimation Proceeding (the "Allowed Claim"), *plus* interest thereon to the extent provided by Section 8.4 of the Plan, *less* the Legal Fees (as defined and determined in accordance with the attorneys' fee provision in Section 6.05) (the "Net Allowed Claim").  In accordance with the allocation methodology in Section 3.04, each Participating Trust shall be awarded its Allocable Share of the Net Allowed Claim. Distributions on account of the Allocable Shares of the Net Allowed Claim shall be made by the LBHI Debtors in accordance with, and on the periodic distribution dates contained in, the Plan (the "Plan Payments"), following the Final Expert Calculation, as defined in Section 3.04 below, and receipt of the REMIC Approval.

Unless otherwise directed in writing by the applicable Accepting Trustee prior to the making of Distributions on account of the Allocable Shares of the Net Allowed Claim, the LBHI Debtors shall make all such Distributions to the applicable Accepting Trustee for the Participating Trusts.

The LBHI Debtors shall have no responsibility for the maintenance or distribution of amounts paid to the Accepting Trustees on account of the Net Allowed Claim.

To the extent that any Accepting Trustee is the party responsible for distributing

payments for a given Trust under the applicable Governing Agreement(s), that Accepting Trustee shall use its reasonable best efforts to distribute the amounts received from the LBHI Debtors on account of the Allocable Shares of the Net Allowed Claim promptly.

Notwithstanding the foregoing, to the extent that any Accepting Trustee or other party responsible for calculating or distributing Plan Payments for a given Trust forms a good-faith belief that guidance from a court is necessary or appropriate for resolving ambiguities or disputes concerning the distribution of Plan Payments, the Accepting Trustee or other party responsible for calculating or distributing such Plan Payments shall have the right to seek guidance from a court of competent jurisdiction before distributing those amounts. Any decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments under this Settlement Agreement or under the Plan.

3.02    The Estimation Proceeding.

(a)    The LBHI Debtors shall include in the 9019 Motion a request seeking Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts pursuant to 11 U.S.C. § 502(c) (the "Estimation Motion"). In the Estimation Proceeding, the LBHI Debtors shall seek Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts, for purposes of setting the amount of the Allowed Claim under Section 3.01 herein, at a total amount of $2,416,000,000.00 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), without prejudice to the rights of the LBHI Debtors to argue in furtherance of such estimation that an amount different from $2.416 billion is correct, reasonable, or legally and factually supportable (provided, however, that (x) if all Trusts are not Accepting Trusts, (y) if any Accepting Trust is not included within Final Court Approval, or (z) if any Accepting Trust is not included within the Estimation and Estimation Proceeding (whether because it has become a Terminated Trust or for any other reason) (the Trusts listed in clauses (x), (y) and (z), the "Excluded Trusts"), the Parties agree that the $2.416 billion will be reduced by an amount equal to $2.416 billion multiplied by the sum of the Initial Allocated Percentages (as defined in Section 3.04 below) of the Excluded Trusts). A "Participating Trust" is any Accepting Trust that is not an Excluded Trust.).

(b)    The Accepting Trustees shall agree and consent to the Estimation Motion solely to the extent of agreeing to estimation of the Covered Loan Claims of the Participating Trusts pursuant to 11 U.S.C. § 502(c) pursuant to this Settlement Agreement. The Accepting Trustees shall be entitled to seek estimation of the Covered Loan Claims of the Participating Trusts in the Estimation Proceeding at whatever sum they choose.

(c)    The LBHI Debtors and the Accepting Trustees agree that, except as provided below in Section 3.02(c)(ii), the Bankruptcy Court shall not be required to make findings of fact or conclusions of law when determining the Allowed Claim, and the Net Allowed Claim amount decided by the Bankruptcy Court as a result of the Estimation Proceeding, shall be final, binding, not subject to appeal or reconsideration, and shall be conclusive of the LBHI Debtors' liability to the Participating Trusts or in any way related to the  Covered Loan Claims of the Participating Trusts; provided however, that:

(i) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set between $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) and $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), the Allowed Claim shall be set, and deemed to be set, for all purposes with respect to the Covered Loan Claims of the Participating Trusts as $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS) (provided, however, if there are any Excluded Trusts, the Parties agree that the $2 billion and the $2.416 billion will be reduced by an amount equal to the $2 billion and the $2.416 billion multiplied by the sum of the Initial Allocated Percentages of the Excluded Trusts)**; and**

(ii) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set at an amount less than $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) (reduced by an amount equal to the $2 billion multiplied by the sum of the Initial Allocated Percentages of any Excluded Trusts), the Bankruptcy Court shall make findings of fact and conclusions of law when determining the Allowed Claim, and the Accepting Trustees retain, and do not waive, any right to appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim) (provided, however, if any Accepting Trusts become Excluded Trusts after the Court sets the Allowed Claim, the Parties agree that the amount determined in a Final Order by the Bankruptcy Court or, if applicable, an appellate Court, will be reduced by an amount equal to such amount multiplied by the sum of the Initial Allocated Percentages of those Excluded Trusts)..

For the avoidance of doubt, under no circumstances may the LBHI Debtors appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim.

3.03.   <u>Release of Claims</u>.  For and in consideration of the allowance of the Allowed Claim and the other agreements and consideration provided herein, the Participating Trusts, the Accepting Trustees for the Participating Trusts, and any and all persons claiming by, through, or on behalf of such Participating Trusts (including any Investors claiming derivatively for any such trust) and any and all agents or appointees acting on behalf of the Accepting Trustees (collectively, the "<u>Releasors</u>"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of the Released Parties, as of the Effective Date, for any and all claims (as defined in section 101 of the Bankruptcy Code) that were asserted, or that could have been asserted, in the Covered Loan Claims filed or asserted in the Bankruptcy Proceeding or in the Protocol by the Accepting Trustees on behalf of the Participating Trusts (collectively, all such claims being defined as the "<u>Trust Released Claims</u>"); *provided, however*, that the Participating Trusts' Allocable Shares and any claims of any Trust arising out of or relating to Transferor Loans are not released, waived or discharged by operation of this Settlement Agreement and are not a Trust Released Claim.  Upon Final Court Approval:  (a) each of the Claims filed or asserted by the Accepting Trustees on behalf of or related to the Participating Trusts shall be allowed as provided herein for Covered Loan Claims and otherwise shall be disallowed and expunged only with respect to Covered Loan Claims; (b) the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve on account of the Trust Released Claims; and (c) the Allocable Shares shall be conclusive of the Debtors' liability relating to the Covered Loan Claims of the Participating Trusts.  Except as provided herein, no

**EXECUTION VERSION**

distributions from the LBHI Debtors shall be required on account of the Trust Released Claims. For the avoidance of doubt, nothing in this Section 3.03 is intended to address claims related to Trusts that are not Participating Trusts or claims arising out of or related to Transferor Loans.

3.04 <u>Allocation Formula</u>.  The Net Allowed Claim shall be allocated amongst the relevant trusts by the Accepting Trustees by calculating for each such trust its "Allocable Share" of the Net Allowed Claim as described below, pursuant to the binding determination of the Expert who will perform any calculations required.  To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("<u>Loan Groups</u>") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts solely for purposes of the allocation methodologies set forth below.  The Accepting Trustees may fully and conclusively rely on the Expert's determinations and calculations without any obligation to independently re-verify the same.

The allocated percentage for any given Trust (the "<u>Allocated Percentage</u>") shall be (a) the dollar amount of the claims asserted pursuant to the Protocol by the relevant trust as determined by the Expert, *divided by* (b) the dollar amount of claims asserted pursuant to the Protocol by the relevant trusts as determined by the Expert, expressed as a percentage.  Attached hereto as <u>Exhibit H</u> is a list of the Allocated Percentages for each Trust (assuming that each Trust becomes a Participating Trust) (for purposes of this Agreement such allocated percentages shall be deemed the "<u>Initial Allocated Percentages</u>").

For purposes of determining the dollar amounts used in <u>Exhibit H</u>, the Expert has used the following methodology. For all Liquidated Loans, the Expert used total dollar amount of the loss on each such loan that was the subject of an RMBS Claim that was reported to the Trustee by the applicable servicer or master servicer as of January 31, 2017.  For all Non-Liquidated Loans the Expert has used the Purchase Price, including the impact of any balance modifications, of each such loan as of January 31, 2017 *less* the market value of such loan as of January 31, 2017 using the Andrew Davidson & Co.'s LoanKinetics model.

In the event that all Trusts become Accepting Trusts and no Trusts become Excluded Trusts, the Allocated Percentage for each Trust will be the same as set forth on <u>Exhibit H</u>. However, in the event that any Trust does not become an Accepting Trust or any Trust becomes an Excluded Trust, the Allocated Percentage will be recalculated in accordance with the methodology described above with only the following changes: the dollar amount of claims asserted under the Protocol of any Trust that is not a Participating Trust will be set at zero.

For any Participating Trust, the Allocable Share will be equal to the Net Allowed Claim multiplied by Allocated Percentage. The Expert shall calculate the Allocable Share for each Participating Trust within thirty (30) days of the date the Net Allowed Claim has been determined by the Bankruptcy Court (the "<u>Final Expert Calculation</u>" and the "<u>Final Allocated Percentages</u>"). In performing the Final Expert Calculation, the Expert shall be permitted to make such adjustments as are necessary to ensure that the effects of rounding do not cause the sum of the Allocable Shares to exceed the amount of the Net Allowed Claim.

3.05.    Plan Administrator's Allocation.

The Parties agree (a) that the allocation set forth in Section 3.04 above shall in no way be binding on the LBHI Debtors or affect the LBHI Debtors' right to account for and allocate the Allowed Claim in accordance with their own analyses of the Claims and in the best interests of the Estate, and (b) the Bankruptcy Court order approving this Settlement Agreement shall expressly preserve such right; provided, that, the LBHI Debtors' account and allocation of the Allowed Claim shall in no way affect the allowance and priority of such claims or manner in which the Allowed Claim is allocated among the Trusts as provided in Section 3.04 above.

3.06    Subsequent Recovery/Repayment of Principal.

(a)    Plan Payments on each Participating Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution in accordance with the distribution provisions of the Governing Agreements as though such Plan Payments are a subsequent recovery available for distribution on the related distribution date; and further provided that if the Governing Agreement for such a Trust does not include the concept of "subsequent recovery," Plan Payments to such Trust shall be distributed as though they are unscheduled principal available for distribution on the related distribution date), subject to Section 3.04. If distribution of Plan Payments to a trust would become payable to a class of REMIC residual interests, whether on the initial distribution of such Plan Payments or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Trust, such Plan Payment shall be maintained in the distribution account, and the party responsible for distributing payments under the Governing Agreements of a given trust shall distribute it on the next distribution date according to the provisions of this Subsection 3.06(a).

(b)    In connection with the distribution of Plan Payments to Participating Trusts pursuant to Subsection 3.06(a), to the extent permitted under each Trust's Governing Agreement, the applicable Accepting Trustee, or the party responsible for calculating certificate balances pursuant to the terms of the Governing Agreements of a given Participating Trust, will apply the amount of the Plan Payment for that Trust to increase the balance of securities within that Trust (other than any class of REMIC residual interests) *in the reverse order of* previously allocated losses, as though such Plan Payment was a subsequent recovery; and further provided that if the Governing Agreement for a particular Participating Trust does not include the concept of "subsequent recovery," to the extent permitted under each Trust's Governing Agreement, the securities for such Trust shall be increased, *in reverse order of* previously allocated losses, as though the Plan Payment was distributed as though it was unscheduled principal), but in each case by not more than the amount of such losses previously allocated to that class of securities pursuant to the Governing Agreements. Investors shall not be entitled to payment in respect of interest on the amount of such increases for any interest accrual period relating to the distribution date on which such increase occurs or any prior distribution date. For the avoidance of doubt, this Subsection 3.06(b) is intended only to increase the balances of the related classes of securities, as provided for herein, and shall not affect the distribution of Plan Payments on the Net Allowed Claim

**EXECUTION VERSION**

provided for in Subsection 3.06(a).

(c)     Should the party responsible for calculating distributions and/or making distributions to Investors under the terms of the Governing Agreements of a given Trust or a court determine that the payment procedure described in Sections 3.06(a) and 3.06(b) may not conform to the terms of the Governing Agreement for a particular Accepting Trust, the distribution described above shall be modified to distribute that Trust's Plan Payments as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the party responsible for calculating distributions under the terms of the Governing Agreements of a given Trust or a court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

(d) Notwithstanding anything to the contrary set forth in this Section 3.06 or any other provision of this Settlement Agreement, each Accepting Trustee and/or the party responsible for such implementation shall be entitled, prior to implementing the forgoing Subsections 3.06(a)-(c), to seek further guidance from a court of competent jurisdiction regarding the applicable procedures under the Governing Agreements related to the distribution of Plan Payments or determining the balance of securities potentially affected by distribution of the Plan Payments.  Any such Accepting Trustee's or other implementing party's decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments to the Accepting Trustees under this Settlement Agreement or under the Plan.

3.07.    No Alteration of Trigger Dates or Similar Credit Support Measurement Dates. Neither the Net Allowed Claim nor any allocation or application thereof pursuant to Section 3.04, nor the receipt of any Plan Payments pursuant to Section 3.06 shall be deemed to reverse the occurrence of any transaction-related trigger in any Participating Trust.

3.08.    Responsibility for Distribution of Plan Payments.  An Accepting Trustee (to the extent it is the party responsible for making distributions under the applicable Governing Agreement(s)), or the party responsible for making distributions under the applicable Governing Agreement(s) if it is not the Accepting Trustee, shall administer distribution of the Plan Payments under the terms of the Governing Agreements.  No party (including the LBHI Debtors and the Institutional Investors), other than the party responsible for calculating and causing the distributions under the applicable Governing Agreements, shall have any liability to Accepting Trustees, the Participating Trusts, any Investor in such Trusts, or any other Person in connection with the determination of the Net Allowed Claim, the Allocated Percentages, the Final Expert Determination or the administration or distribution of the Plan Payments, including under any indemnification obligation that exists under any Governing Agreement.

3.09.    Expert Calculation of Final Allocated Percentages to be Conclusive.  In the absence of bad faith or manifest error, the Expert's calculations of the Final Allocated Percentages and each Participating Trust's Allocable Share shall be binding on all Participating Trusts.

3.10.    Full Satisfaction.  The determination and allowance of the Net Allowed Claim

**EXECUTION VERSION**

under the Plan pursuant to this Settlement Agreement shall be in full and final satisfaction of any and all Covered Loan Claims of the Participating Trusts (but not the Excluded Trusts or the Transferor Trusts) and, except for Plan Payments, there shall be no further recovery against the LBHI Debtors by a Participating Trust on account of any of the Trust Released Claims.

3.11.    <u>Release of RMBS Reserve</u>.  Notwithstanding anything to the contrary contained herein, following the Bankruptcy Court's determination of the Allowed Claim if the REMIC Approval has not occurred on or before October 31, 2018, the Accepting Trustees, solely in their capacity as trustee for Participating Trusts and not on behalf of any other Trusts, shall not oppose any request or motion by the LBHI Debtors to reduce the RMBS Reserve to the amount necessary to make distributions under the Plan on account of the Allocable Shares.

## ARTICLE IV.  <u>CLAIMS NOT RELEASED</u>

4.01.    <u>Financial-Guaranty Provider Rights and Obligations</u>.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Trust has rights or obligations wholly independent of the rights or obligations of the Trustee of or Investors in such Trust, the Trustees, or the Trusts, the releases and waivers in Article III are not intended to and shall not release such rights, if any, provided, however, that the LBHI Debtors reserve all rights with respect to the position they may take on whether the resolution of the Covered Loan Claims pursuant to this Settlement Agreement shall offset or otherwise bar any claims asserted by a third party guarantor or financial-guaranty provider.

4.02.    <u>Mortgage Originator and Third Party Guarantor Claims</u>.  The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents), and (b) claims against any third party guarantor or financial-guaranty provider with respect to the Trusts, if any.

4.03.    <u>Settlement Agreement Rights</u>.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement.

4.04.    <u>Disclosure Claims/Bar Date</u>.  The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("<u>Disclosure Claims</u>") that an Investor may seek to assert based upon such Investor's purchase or sale of securities; provided, however, that the question of the extent to which any payment made or benefit conferred pursuant to this Settlement Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Settlement Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights. Notwithstanding the foregoing, the Investment Advisers for themselves, and not for any individual clients or funds they advise, state that they do not own any Disclosure Claims and hereby irrevocably, fully and finally release any Disclosure Claims to the extent they own such claims personally, and such Investment Advisers agree not to assist or advise any of the individual clients or funds that they advise in bringing any Disclosure Claim except to the extent legally required.   Nothing in this provision shall bar any individual client, or any fund advised

**EXECUTION VERSION**

by an Investment Adviser, from asserting its own Disclosure Claims on its own behalf.  Nothing in this Settlement Agreement is intended or shall be read to alter, modify, or amend any order of the Bankruptcy Court, any provision in the Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

4.05.    Repurchase Obligations of Unaffiliated Mortgage Sellers.  Claims against parties other than the Released Parties related to the origination and/or sale of Mortgage Loans sold or securitized by the LBHI Debtors are not released.  To the extent that the LBHI Debtors, or any successors or assigns of the LBHI Debtors, elect to pursue any third-parties, unaffiliated with the LBHI Debtors, for recovery based on the Trust Released Claims related to the origination and/or sale of  Covered Loans, the Accepting Trustees agree to use commercially reasonable efforts to assist such pursuit (provided that the LBHI Debtors shall reimburse the Accepting Trustees in full, in cash, for their reasonable and necessary fees, costs and expenses in providing such assistance); *provided, however*, neither the Accepting Trustees nor their counsel, advisors or experts shall be obligated to disclose or provide to the LBHI Debtors any work product or attorney-client privileged information.

4.06.    Obligations of Master Servicers and Servicers.  This Settlement Agreement shall not release or affect any obligation of any Master Servicer or Servicer not a debtor in the Bankruptcy Proceeding, including without limitation Aurora, under any of the Governing Agreements that pertain to the servicing of Mortgage Loans held by the Trusts.

4.07.    Correction of Certain Document Defects.  The releases and waivers in this agreement do not release any party from any existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects, provided however, that any claims for monetary damages against the LBHI Debtors based upon the failure to cure such defects shall be included with the Trust Released Claims, and further provided that nothing in this Section 4.07 is intended to or shall be interpreted to create new obligations on the part of any party.

4.07.    Inter-Debtor Claims.  This Settlement Agreement shall not waive, release or discharge any claims, liabilities, rights, obligations or other relationships held by one or more LBHI Debtors against one or more other LBHI Debtors.

ARTICLE V.   RELEASE OF UNKNOWN CLAIMS

5.01.    Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM

**EXECUTION VERSION**

OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR.”

5.02.    The Parties acknowledge that inclusion of the provisions of this Article V to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

ARTICLE VI.  <u>MISCELLANEOUS PROVISIONS</u>

6.01.  <u>Terminated Trusts</u>.  Effective as of the Modification Date, the Accepting Trustees agree that they will not pursue any claims of, or on behalf of, any Terminated Trust, but make no representations as to whether any assignees of claims relating to Terminated Trusts will pursue or not pursue such claims.  For the avoidance of doubt, the definition of "Trust" does not include any "Terminated Trusts."  The Accepting Trustees agree that, as of the Modification Date, they will no longer pursue any rights with respect to any of the Terminated Trusts Proofs of Claim, and acknowledge that they have no standing to oppose and will not oppose any objection filed by the LBHI Debtors to the Terminated Trusts Proofs of Claim.

6.02.  <u>Holdings</u>.  Each of the Institutional Investors shall continue to hold securities issued by at least one of the Accepting Trusts sufficient to support its individual standing to prosecute any intervention in any proceeding seeking entry of the Trustee Findings Order (the "<u>Required Holdings</u>").  Such maintenance of Required Holdings shall continue until the earliest of:  (i) the date on which Final Court Approval is obtained; (ii) such time as Final Court Approval becomes legally impossible; or (iii) any material breach of the Settlement Agreement by the LBHI Debtors or any Accepting Trustee, which breach is not cured or waived within ninety (90) days of written notice of such breach having been provided by a party to the Settlement Agreement; provided, however, that continued holding is not required if prohibited by law, regulation, contract, or fiduciary obligations.  The requirements of this Section 6.02 shall be met if any investor, fund, or entity included within the definition of that Institutional Investor maintains holdings in compliance with this Settlement Agreement.  For the avoidance of doubt, other than as set forth above and/or as otherwise required by federal or state securities laws, this Settlement Agreement shall not restrict the right of any Institutional Investor to sell or exchange any security issued by a Trust free and clear of any encumbrance.  No Trustee shall be required to provide any oversight with respect to the Institutional Investors' compliance with this Section 6.02.  The Parties agree that the aggregate amounts of securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings of each Institutional Investor shall remain confidential, subject to review only by the LBHI Debtors and the Trustees unless required by law, regulation, or process.

6.03.   <u>No Inconsistent Directions</u>.  Except for providing the Request Letter, the Institutional Investors agree that between the date hereof and the Effective Date, with respect to the securities issued by the Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or join with any other Investors or Trustees to cause the Trustees to enforce (or seek derivatively to enforce) any Claims for any Trust.  Nothing in this Settlement Agreement shall restrict the ability of, or require, any Trustee to demand that any other Investor who seeks to direct the Trustee regarding the Settlement must post the indemnity or bond, if any, required or permitted by the Governing Agreements for the applicable Trust.

6.04.    No Amendments to Governing Agreements.    The Parties agree that this Settlement Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement; provided, however, that compliance with this Settlement Agreement and its Exhibits, including the provisions relating to Plan Payments, shall be deemed compliance with the applicable Governing Agreements and no Party or Investor shall make any subsequent claim to the contrary.

6.05.    Legal Fees.    As payment of the attorneys' fees for counsel to the Institutional Investors for its work relating to the Settlement, Gibbs & Bruns shall be allocated, without conveyance to the Accepting Trusts, 4.75% of the first $2,416,000,000 of the Allowed Claim (the "Legal Fees") by the Plan Administrator, without the requirement of submitting any form of estate retention or fee application, as an allowed Class 7 General Unsecured Claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc.  Distributions under the Plan on account of the Legal Fees shall be made at such times as distributions are made on account of the Allowed Claim in accordance with, and on the periodic distribution dates contained in, the Plan.

6.06.    Voluntary Agreement.    Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress.  This Settlement Agreement is a settlement of disputed matters.

6.07.    No Admission of Breach or Wrongdoing.    The LBHI Debtors have denied and continue to deny any breach, fault, liability, or wrongdoing.  This denial includes, but is not limited to, allegations of breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which any LBHI Debtor was the Seller, Sponsor, Servicer, or Depositor.  Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the LBHI Debtors with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the LBHI Debtors have or could have asserted.  No statements made by any Party to this Settlement Agreement in support of the Settlement or the Trustee Findings Order shall be admissible in any other proceeding for any purpose.

6.08.    Concerning the Trustees.    The provisions of this Settlement Agreement shall not affect the rights and obligations of the Trustees under the applicable Governing Agreements, which shall equally apply to each and every such Trustee's rights and obligations under the Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to imply that any Trustee owes any greater duties under the Governing Agreements than it would otherwise owe under those agreements.

6.09.    Counterparts.    This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement.  Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as

delivery of the original signature page to this Settlement Agreement.

6.10.    Joint Drafting.  Following the Modification Date, this Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

6.11.    Entire Agreement.  This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties, at the relevant point in time, or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

6.12.    Specific Performance.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief as a remedy for any such breach.  The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

6.13.    Authority.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

6.14.    No Obligation to Amend.  No Party shall be under any obligation to participate in the amendment of any term of any Governing Agreement and shall not have any liability to any other Party or Person in connection with any amendment to any term of any Governing Agreement that any Party or other Person determines is necessary to implement the terms of this Settlement Agreement.

6.15.    No Third Party Beneficiaries.  There are no third party beneficiaries of this Settlement Agreement.

6.16.    Headings.  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

6.17.    Notices.  All notices or demands given or made by one Party to another Party relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

EXECUTION VERSION

To:    Institutional Investors
       c/o Kathy Patrick
       Gibbs & Bruns LLP
       1100 Louisiana
       Suite 5300
       Houston, TX 77002
       Tel: 713-650-8805
       Email: kpatrick@gibbsbruns.com

To:    The LBHI Debtors
       c/o Paul Shalhoub
       c/o Todd Cosenza
       Willkie Farr & Gallagher LLP
       787 Seventh Avenue
       New York, NY 10019
       Tel: 212-728-8000
       Email: pshalhoub@willkie.com
              tcosenza@willkie.com

       c/o Michael Rollin
       c/o Maritza Dominguez Braswell
       Rollin Braswell Fisher LLC
       8350 E. Crescent Parkway, Suite 100
       Greenwood Village, CO 80111
       Tel: 303-945-7415
       Email: mrollin@RBF.Law
              mbraswell@RBF.Law

To:    The Accepting Trustees, at such addresses identified in writing by the
       applicable Accepting Trustee to the other Parties.

6.18.    Disputes and Bankruptcy Court Approval.  This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof.  Except as otherwise provided in this Settlement Agreement, each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. Thereafter, each of the Parties hereto consents to the non-exclusive jurisdiction of the federal and state courts of New York with respect to such matters.

6.19.    Press Statements.  In the event the Parties agree to make this Settlement Agreement public, the Parties shall agree in advance on the text of a permissible disclosure concerning this Settlement Agreement, which shall be factual and non-disparaging.  The Parties agree that any subsequent press statements concerning this Settlement Agreement also shall be factual and non-disparaging.  At any time on or after the Modification Date, each Trustee may provide notice of this Settlement Agreement and its terms publicly and/or to such present and

- 23 -

**EXECUTION VERSION**

former Investors of the Trusts and other persons, including all financial guaranty institutions and securities administrators known to the Trustees to have an interest in the Trusts, as such Trustee determines, in its sole discretion, is necessary or appropriate.

     6.20.   <u>Fiduciary Obligations</u>.  Nothing in this Settlement Agreement shall be construed to require any Party to breach any investment management agreement or fiduciary obligation to comply with this Settlement Agreement.

       **[REST OF PAGE INTENTIONALLY LEFT BLANK]**

**EXECUTION VERSION**

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this Settlement Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan
Administrator for Lehman Brothers Holding Inc.
and the other LBHI Debtors

By: _____

Name: _____

Title: _____

Gibbs & Bruns, LLP,
counsel to, and authorized signatory for:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,
Cascade Investment, L.L.C.,
Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
Metropolitan Life Insurance Company,
Pacific Investment Management Company, LLC,
Sealink Designated Activity Company, through its investment manager
        Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans,
Voya Investment Management LLC, and
Western Asset Management Company.

By: _____

Name:   Robert Madden

Title:    Partner

EXECUTION VERSION

## EXHIBIT A

## TRUSTS

| No. | Trust Name |
| --- | --- |
| 1 | ARC 2002-BC10 |
| 2 | ARC 2002-BC8 |
| 3 | ARC 2002-BC9 |
| 4 | ARC 2004-1 |
| 5 | BNC 2006-1 |
| 6 | BNC 2006-2 |
| 7 | BNC 2007-1 |
| 8 | BNC 2007-2 |
| 9 | BNC 2007-3 |
| 10 | BNC 2007-4 |
| 11 | LABS 2004-1 |
| 12 | LABS 2007-1 |
| 13 | LMT 2005-1 |
| 14 | LMT 2005-2 |
| 15 | LMT 2005-3 |
| 16 | LMT 2006-1 |
| 17 | LMT 2006-2 |
| 18 | LMT 2006-4 |
| 19 | LMT 2006-8 |
| 20 | LMT 2006-9 |
| 21 | LMT 2007-1 |
| 22 | LMT 2007-10 |
| 23 | LMT 2007-2 |
| 24 | LMT 2007-3 |
| 25 | LMT 2007-4 |
| 26 | LMT 2007-5 |
| 27 | LMT 2007-6 |
| 28 | LMT 2007-7 |
| 29 | LMT 2007-8 |
| 30 | LMT 2007-9 |
| 31 | LMT 2008-2 |
| 32 | LMT 2008-6 |
| 33 | LXS 2005-1 |
| 34 | LXS 2005-10 |
| 35 | LXS 2005-2 |
| 36 | LXS 2005-3 |
| 37 | LXS 2005-4 |

<u>**EXECUTION VERSION**</u>

| 38 | LXS 2005-6 |
| 39 | LXS 2005-8 |
| 40 | LXS 2006-1 |
| 41 | LXS 2006-10N |
| 42 | LXS 2006-11 |
| 43 | LXS 2006-12N |
| 44 | LXS 2006-13 |
| 45 | LXS 2006-15 |
| 46 | LXS 2006-17 |
| 47 | LXS 2006-19 |
| 48 | LXS 2006-20 |
| 49 | LXS 2006-3 |
| 50 | LXS 2006-5 |
| 51 | LXS 2006-7 |
| 52 | LXS 2006-8 |
| 53 | LXS 2006-9 |
| 54 | LXS 2007-1 |
| 55 | LXS 2007-10H |
| 56 | LXS 2007-11 |
| 57 | LXS 2007-12N |
| 58 | LXS 2007-14H |
| 59 | LXS 2007-15N |
| 60 | LXS 2007-16N |
| 61 | LXS 2007-17H |
| 62 | LXS 2007-18N |
| 63 | LXS 2007-20N |
| 64 | LXS 2007-3 |
| 65 | LXS 2007-5H |
| 66 | LXS 2007-6 |
| 67 | LXS 2007-7N |
| 68 | LXS 2007-8H |
| 69 | LXS 2007-9 |
| 70 | RLT 2008-AH1 |
| 71 | SAIL 2003-BC1 |
| 72 | SAIL 2003-BC10 |
| 73 | SAIL 2003-BC11 |
| 74 | SAIL 2003-BC12 |
| 75 | SAIL 2003-BC13 |
| 76 | SAIL 2003-BC2 |
| 77 | SAIL 2003-BC3 |
| 78 | SAIL 2003-BC4 |
| 79 | SAIL 2003-BC5 |
| 80 | SAIL 2003-BC8 |

| 81 | SAIL 2003-BC9 |
|-----|---------------|
| 82 | SAIL 2004-1 |
| 83 | SAIL 2004-10 |
| 84 | SAIL 2004-2 |
| 85 | SAIL 2004-3 |
| 86 | SAIL 2004-4 |
| 87 | SAIL 2004-5 |
| 88 | SAIL 2004-6 |
| 89 | SAIL 2004-8 |
| 90 | SAIL 2004-9 |
| 91 | SAIL 2005-1 |
| 92 | SAIL 2005-10 |
| 93 | SAIL 2005-11 |
| 94 | SAIL 2005-2 |
| 95 | SAIL 2005-3 |
| 96 | SAIL 2005-4 |
| 97 | SAIL 2005-5 |
| 98 | SAIL 2005-6 |
| 99 | SAIL 2005-7 |
| 100 | SAIL 2005-8 |
| 101 | SAIL 2005-9 |
| 102 | SAIL 2005-HE3 |
| 103 | SAIL 2006-1 |
| 104 | SAIL 2006-2 |
| 105 | SAIL 2006-4 |
| 106 | SAIL 2006-BNC3 |
| 107 | SARM 2004-10 |
| 108 | SARM 2004-16 |
| 109 | SARM 2004-18 |
| 110 | SARM 2004-20 |
| 111 | SARM 2004-5 |
| 112 | SARM 2004-9XS |
| 113 | SARM 2005-11 |
| 114 | SARM 2005-12 |
| 115 | SARM 2005-15 |
| 116 | SARM 2005-17 |
| 117 | SARM 2005-20 |
| 118 | SARM 2005-22 |
| 119 | SARM 2005-23 |
| 120 | SARM 2005-3XS |
| 121 | SARM 2005-6XS |
| 122 | SARM 2005-8XS |
| 123 | SARM 2006-1 |

| 124 | SARM 2006-10 |
| 125 | SARM 2006-11 |
| 126 | SARM 2006-12 |
| 127 | SARM 2006-2 |
| 128 | SARM 2006-3 |
| 129 | SARM 2006-4 |
| 130 | SARM 2006-5 |
| 131 | SARM 2006-6 |
| 132 | SARM 2006-7 |
| 133 | SARM 2006-8 |
| 134 | SARM 2006-9 |
| 135 | SARM 2007-1 |
| 136 | SARM 2007-10 |
| 137 | SARM 2007-11 |
| 138 | SARM 2007-2 |
| 139 | SARM 2007-3 |
| 140 | SARM 2007-4 |
| 141 | SARM 2007-6 |
| 142 | SARM 2007-8 |
| 143 | SARM 2008-2 |
| 144 | SASCO 2003-12XS |
| 145 | SASCO 2003-15A |
| 146 | SASCO 2003-17A |
| 147 | SASCO 2003-18XS |
| 148 | SASCO 2003-25XS |
| 149 | SASCO 2003-26A |
| 150 | SASCO 2003-28XS |
| 151 | SASCO 2003-29 |
| 152 | SASCO 2003-30 |
| 153 | SASCO 2003-34A |
| 154 | SASCO 2003-35 |
| 155 | SASCO 2003-36XS |
| 156 | SASCO 2003-38 |
| 157 | SASCO 2003-39EX |
| 158 | SASCO 2003-3XS |
| 159 | SASCO 2003-6A |
| 160 | SASCO 2003-GEL1 |
| 161 | SASCO 2003-NP1 |
| 162 | SASCO 2003-S1 |
| 163 | SASCO 2003-S2 |
| 164 | SASCO 2004-10 |
| 165 | SASCO 2004-11XS |
| 166 | SASCO 2004-13 |

| | |
|---|---|
| 167 | SASCO 2004-15 |
| 168 | SASCO 2004-16XS |
| 169 | SASCO 2004-17XS |
| 170 | SASCO 2004-18H |
| 171 | SASCO 2004-19XS |
| 172 | SASCO 2004-20 |
| 173 | SASCO 2004-21XS |
| 174 | SASCO 2004-22 |
| 175 | SASCO 2004-23XS |
| 176 | SASCO 2004-2AC |
| 177 | SASCO 2004-4XS |
| 178 | SASCO 2004-6XS |
| 179 | SASCO 2004-7 |
| 180 | SASCO 2004-9XS |
| 181 | SASCO 2004-GEL1 |
| 182 | SASCO 2004-GEL2 |
| 183 | SASCO 2004-GEL3 |
| 184 | SASCO 2004-NP1 |
| 185 | SASCO 2004-S2 |
| 186 | SASCO 2004-S3 |
| 187 | SASCO 2004-S4 |
| 188 | SASCO 2005-1 |
| 189 | SASCO 2005-10 |
| 190 | SASCO 2005-11H |
| 191 | SASCO 2005-14 |
| 192 | SASCO 2005-15 |
| 193 | SASCO 2005-17 |
| 194 | SASCO 2005-2XS |
| 195 | SASCO 2005-3 |
| 196 | SASCO 2005-4XS |
| 197 | SASCO 2005-5 |
| 198 | SASCO 2005-7XS |
| 199 | SASCO 2005-9XS |
| 200 | SASCO 2005-GEL2 |
| 201 | SASCO 2005-GEL3 |
| 202 | SASCO 2005-GEL4 |
| 203 | SASCO 2005-RF1 |
| 204 | SASCO 2005-RF2 |
| 205 | SASCO 2005-RF4 |
| 206 | SASCO 2005-RF5 |
| 207 | SASCO 2005-RF6 |
| 208 | SASCO 2005-RF7 |
| 209 | SASCO 2005-S1 |

210  SASCO 2005-S2
211  SASCO 2005-S3
212  SASCO 2005-S4
213  SASCO 2005-S5
214  SASCO 2005-S6
215  SASCO 2005-S7
216  SASCO 2005-SC1
217  SASCO 2006-BC2
218  SASCO 2006-BC3
219  SASCO 2006-BC4
220  SASCO 2006-BC6
221  SASCO 2006-GEL1
222  SASCO 2006-GEL2
223  SASCO 2006-GEL3
224  SASCO 2006-GEL4
225  SASCO 2006-RF1
226  SASCO 2006-RF2
227  SASCO 2006-RF3
228  SASCO 2006-RF4
229  SASCO 2006-S1
230  SASCO 2006-S2
231  SASCO 2006-S3
232  SASCO 2006-S4
233  SASCO 2006-Z
234  SASCO 2007-BC1
235  SASCO 2007-BC2
236  SASCO 2007-BC3
237  SASCO 2007-BC4
238  SASCO 2007-BNC1
239  SASCO 2007-GEL1
240  SASCO 2007-GEL2
241  SASCO 2007-MLN1
242  SASCO 2007-OSI
243  SASCO 2007-RF1
244  SASCO 2007-TC1

**EXHIBIT B**

**TERMINATED TRUSTS**

| No. | Trust Name |
| --- | --- |
| 1 | LABS 2003-1 |
| 2 | SASCO 2003-10 |
| 3 | SASCO 2003-14 |
| 4 | SASCO 2003-16 |
| 5 | SASCO 2003-20 |
| 6 | SASCO 2003-21 |
| 7 | SASCO 2003-4 |
| 8 | SASCO 2003-8 |
| 9 | SASCO 2003-NP2 |
| 10 | SASCO 2003-NP3 |
| 11 | SASCO 2003-RNP2 |
| 12 | SASCO 2004-NP2 |
| 13 | SASCO 2007-RF2 |
| 14 | SASC 2003-32 |
| 15 | SASC 2004-3 |
| 16 | SASC 2005-6 |

EXECUTION VERSION

## EXHIBIT C

### SUBSIDIARIES AND AFFILIATES

| No. | Company Name |
|-----|--------------|
| 1 | Lehman Brothers Holdings Inc. |
| 2 | 314 Commonwealth Ave. Inc. |
| 3 | Acesco Holdings Inc |
| 4 | Appalachian Asset Management Corp. |
| 5 | Battle Station LHCI., Inc. |
| 6 | Brookson Corp. |
| 7 | Brookwood Energy And Properties Inc. |
| 8 | Campus Door, Inc. |
| 9 | Capital Crossing Securities Corp II |
| 10 | Da Group Holdings Inc. |
| 11 | Diogenes Holdings Inc. |
| 12 | Diogenes Management Company Inc. |
| 13 | Dl Mortgage Corporation |
| 14 | DOLCAP INC |
| 15 | E.F.H. Insurance Agency Of Pennsylvania, Inc. |
| 16 | Fleet Street Condos Inc. |
| 17 | Frah Special Services Inc. |
| 18 | Future Financial Holdings Inc. |
| 19 | GA Dekalb Inc. |
| 20 | Industrial Holdings Corporation |
| 21 | LB Brickstone Inc. |
| 22 | LB Eastview, Inc. |
| 23 | LB Funding Corp II |
| 24 | LB Hercules Agency, Inc. |
| 25 | LB I Group Inc. |
| 26 | LB Lakeside I Inc. |
| 27 | LB Lakeside II Inc. |
| 28 | LB Lakeside III Inc. |
| 29 | LB LIH Corp. |
| 30 | LB Skypower Inc. |
| 31 | LB Transaction No. 5 Inc. |

**EXECUTION VERSION**

| 32 | LB Verve Condos Inc. |
|----|----------------------|
| 33 | LB Windsor Capital One Bloor Street East Inc. |
| 34 | LB Windsor Kitchener Inc. |

| No. | Company Name |
|-----|--------------|
| 35 | LB Windsor Pointz Avenue Inc. |
| 36 | LBMB CAPITAL PARTNERS V EAGLE ENERGY HOLDINGS |
| 37 | LBMB FUND (B) EAGLE ENERGY HOLDINGS LP |
| 38 | LBMB FUND EAGLE ENERGY HOLDINGS LP |
| 39 | LBMB PARTNERS EAGLE ENERGY HOLDINGS LP |
| 40 | LBTC Transfer Inc. |
| 41 | LCPI Properties, Inc. |
| 42 | Lehman ABS Corporation |
| 43 | Lehman Aircraft Securitization Holdings Inc. |
| 44 | Lehman Ali Inc. |
| 45 | Lehman Brothers  Asset Management Inc. |
| 46 | Lehman Brothers (Israel) Inc. |
| 47 | Lehman Brothers Bancorp, Inc. |
| 48 | Lehman Brothers Commercial Corporation |
| 49 | Lehman Brothers Commodity Services Inc. |
| 50 | Lehman Brothers Communications Associates Inc |
| 51 | Lehman Brothers Derivative Products Inc. |
| 52 | Lehman Brothers Europe Inc. |
| 53 | Lehman Brothers Finance (Japan) Inc. |
| 54 | Lehman Brothers Financial Products Inc. |
| 55 | Lehman Brothers Futures Asset Management Corp |
| 56 | Lehman Brothers International Services Inc. |
| 57 | Lehman Brothers Investment Holdings Company |
| 58 | Lehman Brothers Investments Japan Inc. |
| 59 | Lehman Brothers Merchant Banking Partners II |
| 60 | Lehman Brothers Mortgage Opportunity |
| 61 | Lehman Brothers OTC Derivatives Inc. |
| 62 | Lehman Brothers Overseas Inc. |
| 63 | Lehman Brothers Pera Inc. |
| 64 | Lehman Brothers Special Financing Inc. |
| 65 | Lehman Brothers U.K. Holdings (Delaware) Inc. |
| 66 | Lehman Brothers Venture Associates, Inc. |

- 9 -

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 67 | Lehman Brothers/FW Inc. |
| 68 | Lehman Brothers/Rosecliff Inc. |
| 69 | Lehman Commercial Paper Inc. |
| 70 | Lehman Housing Capital Inc. |
| 71 | Lehman Housing Lending Corp. |
| **No.** | **Company Name** |
| 72 | Lehman Investments Inc. |
| 73 | Lehman Pass-Through Securities Inc. |
| 74 | Lehman Tax Credit Advisor Inc. |
| 75 | Lehman VIP Holdings Inc. |
| 76 | LHCI GP VI Inc. |
| 77 | LHCI GP VII Inc. |
| 78 | LHCI GP VIII Inc. |
| 79 | LHCI GP X, Inc. |
| 80 | LHCI GP XI, Inc |
| 81 | LHCI Martinsburg GP Inc. |
| 82 | Libro Holdings I Inc. |
| 83 | LPTG Inc. |
| 84 | LW-GP2B, Inc |
| 85 | LW-GP2D, Inc. |
| 86 | LW-LP Inc. |
| 87 | LW-LP Properties Inc. |
| 88 | MBR/GP Corp. |
| 89 | MMP Funding Corporation |
| 90 | NJ Atlantic Inc. |
| 91 | NJ Somerset Inc. |
| 92 | NP Investment I Co. |
| 93 | PAC Aircraft Management Inc. |
| 94 | PAMI 5-7 East 17th Street Inc. |
| 95 | PAMI Newark Inc. |
| 96 | PAMI PPC I Inc. |
| 97 | PAMI Public/Private II, Inc. |
| 98 | PAMI Raymond Inc. |
| 99 | Petro L Corporation |
| 100 | Principal Transactions II Inc. |
| 101 | Principal Transactions Inc. |
| 102 | Property Asset Management Inc. |
| 103 | Real Estate Private Equity Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 104 | Rock Hill Investors Inc. |
| 105 | SBA 2011 Acquisition Co Inc. |
| 106 | SASCO ARC CORPORATION |
| 107 | Select Asset Inc. |
| 108 | Sharpstown Center Inc. |
| **No.** | **Company Name** |
| 109 | Shearson Financial Services Of TX Inc. |
| 110 | Solar Finance Inc |
| 111 | Structured Asset Securities Corp |
| 112 | Structured Options Inc. |
| 113 | Thai Holding I Inc. |
| 114 | Thai Holding II Inc. |
| 115 | Tulsa Hotels LS, Inc |
| 116 | Warren Atlantic Inc. |
| 117 | Warren/GP Corp. |
| 118 | West Bay Club Development Corp. |
| 119 | West Bay Realty Inc. |
| 120 | Wharf Reinsurance Inc. |
| 121 | Winter Garden Inc. |
| 122 | Woodlands Commercial Corporation |
| 123 | Lehman Re Inc. |
| 124 | BK II Properties Inc. |
| 125 | ASIA INDO OPPORTUNITY I LTD |
| 126 | ASIA INDO OPPORTUNITY II LTD |
| 127 | BALLYBUNION INVESTMENT LIMITED |
| 128 | BALLYBUNION INVESTMENT NO 2 LIMITED |
| 129 | BALLYBUNION INVESTMENT NO 3 LIMITED |
| 130 | BIRCH Y.K. |
| 131 | BISON II SP. Z.O.O. |
| 132 | CAPITAL GROWTH INVESTMENTS LTD. |
| 133 | CENTRAL TOKYO HOLDINGS INC. |
| 134 | CENTRAL TOKYO INVESTMENTS INC. |
| 135 | CENTRAL TOKYO PROPERTIES INC. |
| 136 | CEREP III INVESTMENT D S.ÀR.L. |
| 137 | CIMT LIMITED |
| 138 | CJC INVESTMENTS INC |
| 139 | CYGNUS Y.K. |
| 140 | DYNAMO INVESTMENTS LIMITED |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 141 | EAGLE HOLDINGS II INC |
| 142 | EAST DOVER LIMITED |
| 143 | ELMWOOD Y.K. |
| 144 | FALCON HOLDINGS II INC. |
| 145 | FALCON HOLDINGS III INC. |
| 146 | FALCON HOLDINGS IV INC. |
| **No.** | **Company Name** |
| 147 | FALCON INVESTOR I INC. |
| 148 | FALCON INVESTOR II INC. |
| 149 | FALCON INVESTOR III INC. |
| 150 | FALCON INVESTOR IV INC. |
| 151 | FALCON INVESTOR IX INC. |
| 152 | FALCON INVESTOR V INC . |
| 153 | FALCON INVESTOR VI INC. |
| 154 | FALCON INVESTOR VII INC. |
| 155 | FALCON INVESTOR VIII INC. |
| 156 | FALCON INVESTOR X INC. |
| 157 | GAINSBOROUGH INVESTMENTS BV |
| 158 | GKI KOREA DEVELOPMENT LIMITED |
| 159 | GKI KOREA MANAGEMENT LIMITED |
| 160 | GLOBAL KOREA INVESTMENTS LTD |
| 161 | GLOBAL TAIWAN INVESTMENTS LTD |
| 162 | GLOBAL THAI PROPERTY FUND |
| 163 | GRA FINANCE CORPORATION LTD. |
| 164 | HOLLYHOCK YK |
| 165 | HONG KONG TRUST NO. 1 |
| 166 | IVANHOE LANE PTY LTD |
| 167 | JAPAN REAL ESTATE INVESTMENT PARTNERSHIP INC. |
| 168 | JAPAN TK INVESTOR I (CAYMAN) HOLDINGS INC. |
| 169 | JASMINE Y.K. |
| 170 | KENILWORTH INVESTMENTS 1 LTD |
| 171 | KENILWORTH INVESTMENTS 2 LTD |
| 172 | KINGFISHER CAPITAL CDO LTD |
| 173 | L.B.A. YK |
| 174 | LAMCO Services Ltd |
| 175 | LB ALPHA FINANCE CAYMAN LIMITED |
| 176 | LB BETA FINANCE CAYMAN LIMITED |
| 177 | LB CANADA SKYPOWER |
| 178 | LB DAME LP S.ÀR.L. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 179 | LB DAME S.ÀR.L. |
| 180 | LB FINANCE JAPAN HEAD OFFICE |
| 181 | LB FUNDING BV |
| 182 | LB HONG KONG FUNDING TRUST |
| 183 | LB INDIA HOLDINGS MAURITIUS I LTD |
| 184 | LB INDIA HOLDINGS MAURITIUS II LTD |
| **No.** | **Company Name** |
| 185 | LB INVESTMENT MGMT COMPANY LTD (f/k/a LB INDIA HOLDINGS CAYMAN II LIMITED) |
| 186 | LB INVESTMENTS (UK) LTD |
| 187 | LB LUX RE HOLDINGS S.A.R.L |
| 188 | LB MAURITIUS I LTD. |
| 189 | LB OFFSHORE PARTNERS II LTD. |
| 190 | LB OFFSHORE PARTNERS LTD |
| 191 | LB OFFSHORE RE MEZZANINE ASSOC,LTD. |
| 192 | LB OPPORTUNITY HOLDING INC |
| 193 | LB RE FINANCING NO.1 LIMITED |
| 194 | LB SHELF CI IV |
| 195 | LB VINTNERS (LUXEMBOURG) S.ÀR.L. |
| 196 | LB VINTNERS BRIDGE (LUXEMBOURG) S.ÀR.L. |
| 197 | LB3 GMBH |
| 198 | LBD YK |
| 199 | LBE YK |
| 200 | LBHK FUNDING (CAYMAN) NO. 1 LIMITED |
| 201 | LBHK FUNDING (CAYMAN) NO. 2 LIMITED |
| 202 | LBHK FUNDING (CAYMAN) NO. 4 LIMITED |
| 203 | LBMB ASSOCIATES IV (EUROPE) S.A.R.L |
| 204 | LBMB EUROPE MGMT CORP SARL |
| 205 | LBO FUNDING (CAYMAN) LIMITED |
| 206 | LBQ FUNDING (CAYMAN) LIMITED |
| 207 | LBQ HONG KONG SERVICES LIMITED |
| 208 | LBREP GAITHERSBURG HOLDINGS LLC |
| 209 | LBS HOLDINGS SARL |
| 210 | LBSP HOLDING (IRLAND) PUBLIC LTD |
| 211 | LBSP LIMITED |
| 212 | LCPI DHS  (f/k/a LB SHELF II, INC.) |
| 213 | LEHMAN BROTHERS (CAYMAN ISLANDS) LTD. |
| 214 | LEHMAN BROTHERS (THAILAND) LIMITED PCO-NEWTHB |
| 215 | LEHMAN BROTHERS ASEAN OPPORTUNITY LTD |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 216 | LEHMAN BROTHERS ASIA ISSUANCE CO LTD |
| 217 | LEHMAN BROTHERS AUSTRALIA SECURITIES PTY LIMITED |
| 218 | LEHMAN BROTHERS CAPITAL (THAILAND) LIMITED |
| 219 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN) II, LTD |
| 220 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN), LTD |
| 221 | Lehman Brothers Global Services Ltd. |
| **No.** | **Company Name** |
| 222 | LEHMAN BROTHERS HK OLYMPUS FUNDING TRUST |
| 223 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP |
| 224 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP2 |
| 225 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP3 |
| 226 | LEHMAN BROTHERS HOLDINGS, INC. UK BRANCH |
| 227 | LEHMAN BROTHERS HY OPPORTUNITIES KOREA INC. |
| 228 | Lehman Brothers Investments Japan Inc. |
| 229 | LEHMAN BROTHERS LATIN AMERICA LIMITED |
| 230 | LEHMAN BROTHERS OFFSHORE COMMUNICATIONS ASSOCIATES LTD. |
| 231 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES II LTD. |
| 232 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES LTD |
| 233 | LEHMAN BROTHERS OPPORTUNITY LTD. |
| 234 | LEHMAN BROTHERS PACIFIC SERVICES |
| 235 | LEHMAN BROTHERS SOUTH EAST ASIA INVESTMENTS PTE LIMITED |
| 236 | LEHMAN BROTHERS UK INVESTMENTS LTD |
| 237 | LEHMAN RISK SERVICES (BERMUDA) LTD. |
| 238 | LEHMAN SCOTTISH FINANCE LP |
| 239 | LEHMAN VIP INVESTMENT LDC |
| 240 | LUXEMBOURG FINANCE S.A.R.L. |
| 241 | LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE SARL |
| 242 | M&L DEBT INVESTMENTS HOLDINGS PTY |
| 243 | M&L DEBT INVESTMENTS PTY LIMITED |
| 244 | MAEWHA K-STARS LTD |
| 245 | MARLIN INTERNATIONAL Y.K. |
| 246 | MEISHO ESTATE Y.K |
| 247 | MICT LIMITED |
| 248 | NOVACORP REALTY/GP INC. |
| 249 | OPAL FINANCE HOLDINGS IRELAND LIMITED |
| 250 | PHUKET HOTEL 3 HOLDING COMPANY LIMITED |
| 251 | REVIVAL HOLDINGS LIMITED |
| 252 | SATURN INVESTMENT INC |

| No. | Company Name |
|---|---|
| 253 | SERAFINO INVESTMENTS PTY LTD |
| 254 | SOGKI DEVELOPMENT INC. |
| 255 | SOGKI INC. |
| 256 | SOGKI MANAGEMENT INC |
| 257 | SOGTI INC. |
| 258 | SOR INVESTOR I INC |
| **No.** | **Company Name** |
| 259 | SOR INVESTORS IV INC |
| 260 | SOUTHWESTERN FIRST CAPITAL LLC |
| 261 | TAHOE Y.K. |
| 262 | TCP CAP VI GP (EUROPE) L.P. INC. |
| 263 | TMIC LIMITED |
| 264 | VINTNERS BIDCO S.C.A. |
| 265 | VINTNERS S.ÀR.L. |
| 266 | Y.K. SAPPHIRE INVESTMENT I |
| 267 | YELLOWTAIL INTERNATIONAL Y.K. |
| 268 | YK DUCKHORN |

<u>**EXECUTION VERSION**</u>

<u>**EXHIBIT D**</u>

**INSTITUTIONAL INVESTOR REQUEST LETTER**



Robert J. Madden
rmadden@gibbsbruns.com
713.751.5266

*Via Email and Federal Express*

March _____, 2017

Franklin H. Top III
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603

M. William Munno
Daniel E. Guzmán
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

Michael S. Kraut
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, New York 10178

*Counsel for Law Debenture Trust Company of
New York, solely in its capacity as Separate
Trustee for Certain Mortgage-Backed
Securities Trusts*

*Counsel for U.S. Bank National Association,
solely in its capacity as Indenture Trustee for
Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

Dennis Drebsky
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022

*Counsel for Wilmington Trust Company and
Wilmington Trust, National Association, each
solely in its capacity as Trustee for Certain
Mortgage-Backed Securities Trusts*

*Counsel for Deutsche Bank National Trust
Company, solely in its capacity as Trustee for
Certain Mortgage-Backed Securities Trusts*

Re:    <u>Binding Settlement Offer from Lehman to Trustees of RMBS Trusts</u>

Dear Counsel:

This firm represents 14 large institutional investors who collectively are holders, and/or authorized investment managers for holders, of approximately $6 billion of the unpaid principal balance of securities ("UPB") issued by the RMBS Trusts listed on Exhibit "A" to the attached RMBS Trust Settlement Agreement (the "Trusts").  Our clients' holdings include 25% or more of the UPB of 69 of the Trusts, which Trusts account for approximately 35% of the total UPB across all of the Trusts.

Our clients have engaged in extensive, mediated negotiations with representatives of the LBHI estate in an effort to reach a proposed settlement, that our clients would be willing to recommend, of the claims set forth in the Proofs of Claim filed by your clients on behalf of the Trusts.

We understand the LBHI debtors have advised you of the terms of a binding offer they have agreed to make to the Trustees to settle these claims.  A copy of that binding offer is enclosed with this correspondence for your review.

Our clients have advocated settlement in this matter for some time, in no small part because of the significant expense that has been imposed on the Trusts by virtue of the Court-ordered Protocol.  Though those earlier efforts did not lead to a settlement the Trustees were able to accept, this offer is one the Trustees certainly should accept. It <u>virtually ensures</u> the Trusts claims will be allowed in an amount no less than $2.416 billion, because Lehman has agreed to seek estimation at that amount. In addition, while setting a functional floor on the recovery, the offer establishes no ceiling; instead, the Trustees are free to put on whatever proof they wish, to advocate for an increased estimation if they possess evidence they believe warrants it. And, finally, by making the estimation final as to both the Trusts and Lehman, it ends both the hemorrhage of dollars caused by the protocol and eliminates the risk--through elimination of any appeals--that this hemorrhage of funds will resume. In short, there is no reasonable basis on which the Trustees could or should refuse this guarantee of a certain recovery of more than a $1 billion in cash, with the opportunity to obtain more.

Accordingly, on behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf.  Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

_____
Robert Madden
On behalf of the Institutional Investors

Cc:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,

Cascade Investment, L.L.C.,
Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
Metropolitan Life Insurance Company,
Pacific Investment Management Company, LLC,
Sealink Designated Activity Company, through its investment manager
        Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans,
Voya Investment Management LLC, and
Western Asset Management Company.

**EXECUTION VERSION**

**EXHIBIT E**

**THE INSTITUTIONAL INVESTOR STATEMENT**


The "Institutional Investors" are AEGON USA Investment Management, LLC, BlackRock Financial Management, Inc., Cascade Investment, L.L.C., Federal Home Loan Bank of Atlanta, Goldman Sachs Asset Management, L.P., Invesco Advisers, Inc., Kore Advisors, L.P., Metropolitan Life Insurance Company, Pacific Investment Management Company, LLC, Sealink Designated Activity Company, through its investment manager Neuberger Berman Europe Limited, The TCW Group, Inc., on behalf of itself and its subsidiaries, Thrivent Financial for Lutherans, Voya Investment Management LLC, and Western Asset Management Company.  The Institutional Investors are holders, and/or authorized investment managers for holders, of approximately $6 billion in certificates in 195 of the trusts for whose benefit the Covered Loan Claims are being pursued.

The Institutional Investors have previously agreed that a settlement of the Covered Loan Claims for an allowed Class 7 General Unsecured Claim of $2.416 billion was fair and reasonable, and have supported a settlement of the claims at that amount. The Institutional Investors continue to believe, today, that a settlement at that amount is fair and reasonable. Therefore, the Institutional Investors support Lehman's request that the Bankruptcy Court estimate the Claims so long as the amount estimated is not below an allowed Class 7 General Unsecured Claim of $2.416 billion.

EXECUTION VERSION

## EXHIBIT F

## TRUSTEE FINDINGS

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. Certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the Accepting Trustees acted within the bounds of its discretion, reasonably, and in good faith with respect to its evaluation and acceptance of the Trust Settlement Agreement dated as of November 30, 2016 and modified as of March 17, 2017 (the "Settlement Agreement") concerning the applicable Accepting Trust(s).

<u>**EXHIBIT G**</u>

**I.    CLAIMS AND DEFENSES TO BE TRIED**

    **a.  The Plan Administrator's Position Statement**

The RMBS Trustees allege that LBHI: (i) breached certain representations and warranties regarding the quality and characteristics of certain mortgage loans, or (ii) provided deficient mortgage loan files to the RMBS Trusts, when they sold loans into certain residential mortgage-backed securitization trusts.  LBHI will ask the Bankruptcy Court to estimate the claims related to those mortgage loans that have not already been disallowed or expunged from the RMBS Trustees' proofs of claim, in particular those loans that have been placed into the RMBS Protocol by the RMBS Trustees.  The loan-by-loan analysis conducted by the Plan Administrator through steps 1 and 2 of the RMBS Protocol and additional evidence will provide various bases upon which the Court can make a realistic assessment of the outcome of the RMBS Trustees' claims, without the undue delay that would likely occur if the Parties were to adjudicate these claims in their entirety.

    **b.  The RMBS Trustees' Position Statement**

The following claims will be estimated:  claims arising out of alleged breaches of representations and warranties made by the LBHI Debtors in applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the Trust and Terminated Trusts (the "<u>Governing Agreements</u>") concerning Mortgage Loans in the residential mortgage-backed securitizations identified on <u>Exhibit A</u> (the "<u>Trusts</u>").  The RMBS Trustees allege that the LBHI Debtors breached one or more of their representations and warranties under the Governing Agreements with respect to certain loans in the RMBS Trusts in a manner that materially and adversely affected the value of the loans or certificateholders' interests in the loans.  The RMBS Trustees intend to demonstrate that the LBHI Debtors breached their representations and warranties with respect to over 91,000 loans through evidence derived from the RMBS Trustees' loan-by-loan review and presented to the LBHI Debtors as required by the RMBS Protocol; and the absence of any legally or factually supported bases proffered by the Plan Administrator during the RMBS Protocol for the rejection of the Trustees' claims.

**II.    NATURE AND LENGTH OF THE HEARING**

The Parties agree that their claims and defenses will be determined at an estimation hearing that the parties will jointly request the court schedule no earlier

than Monday, October 16, 2017 (the "Hearing").[1]  The Hearing shall be conducted in accordance with the procedures set forth herein.

The Parties agree that the Hearing shall be scheduled for at least 14 hearing days, or a total of 98 hours, on the record.  The LBHI Debtors will be allotted 7 days (or a total of 49 hours) to present their case, including rebuttals, and 7 days (or a total of 49 hours) will be allotted to the RMBS Trustees.  Each Party's allotted time will run during its (i) opening and closing statements and (ii) direct or cross examination of any witness.  Either side is free to use less than its allotted time.  The scheduling of the dates on which the Hearing shall be conducted shall be at the discretion of the Court.

Each side shall be allowed to present opening statements of up to two hours in length and closing statements of up to two hours in length.  Each Party will be able to reserve and reallocate its time for opening and closing statements.

## III.    TIMING AND CONTENT OF EXPERT REPORTS, AND EXPERT DISCOVERY

The Parties agree to pre-Hearing expert discovery pursuant to the following schedule:

| | |
|---|---|
| Parties disclose the identity and subject matter of Experts then expected to provide Affirmative Reports, and Lehman to identify such settlements that it intends to use in its Expert Reports | Wednesday, May 10, 2017 |
| Simultaneous exchange of Affirmative Reports, and the Parties to identify exemplar loans to be used in their case-in-chief | Thursday, June 13, 2017 |
| Simultaneous exchange of Rebuttal Reports, the Parties to identify exemplar loans to be used by their rebuttal experts, and the RMBS Trustees to identify such settlements that they intend to use in their Expert | Friday, July 14, 2017 |

---

[1] Should the date of the Hearing in this section be moved to a later date, the Parties will meet and confer in good faith to negotiate appropriate modifications of the dates set forth in Section III of this agreement.

- 4 -

EXECUTION VERSION

| Reports | |
|---|---|
| Simultaneous exchange of Reply Reports with any additional exemplar loans.[2] | Monday, August 21, 2017 |
| Completion of Expert Depositions | Thursday, September 21, 2017 |

*Expert Reports*.  Each expert witness must provide a signed written report that contains:

  i.   a complete statement of the opinions the witness is expected to express and the basis for such opinions;
  ii.  the facts or data relied upon by the witness in forming any such opinions and, to the extent the witness' opinions include or rely upon the results of any quantitative calculations or estimates, the underlying data and all formulae, macros and any other information necessary to allow the opposing party to reproduce such quantitative calculations or estimates[3];
  iii. any assumptions that the expert was provided and relied upon in forming the opinions to be expressed;
  iv.  any exhibits prepared in connection with the written report;
  v.   the witness's qualifications, including a list of all publications authored in the previous 10 years;
  vi.  a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
  vii. a statement of the compensation to be paid in connection with the case.

*Information Excluded from Disclosure*.  The Parties shall not be required to disclose and no witness may be examined regarding (i) drafts of any report, calculation, analysis or estimate, regardless of the form in which the draft is recorded; (ii) other notes or writing taken or prepared by or for the testifying expert; or (iii) communications involving any expert witness regardless of the form of the communications, including but not limited to any communication between (x) any expert witness and the Parties' attorneys, (y) any expert witness and the witness's staff, and (z) communications between testifying experts and consulting experts.  Additionally, there shall be no disclosure of materials prepared by or for consulting experts. The Parties further agree that the provision of any materials to an expert witness and/or the witness's staff shall not

---

[2] Any reply shall be limited to addressing materials, opinions or arguments raised in rebuttal reports.

[3] To the extent any such data, calculations or estimates are in the form of or rely upon computer data files, the witness shall produce all such data files, in the electronic format used by the witness, and sufficient documentation or explanation to enable one reasonably skilled in the art to understand and use such data files.

**EXECUTION VERSION**

constitute a subject matter waiver of the attorney client privilege or any other privilege or protection.

## IV.    PRE-TRIAL BRIEFS AND SUBMISSIONS

All pending motions concerning the Covered Loans and RMBS Protocol are deemed withdrawn.  Each of the Parties shall submit a single pre-trial brief addressing reasonably anticipated disputes concerning substantive law no less than 15 days prior to the Hearing.  Each of the pre-trial briefs shall be no longer than 50 pages in length.  The pre-trial brief shall be the only pre-hearing brief or submission submitted by the Parties with respect to disputes concerning substantive law.  For the avoidance of doubt, nothing in this agreement shall prejudice the right of any Party to make, in connection with the Hearing, arguments or challenges based on the sufficiency, completeness or timeliness of materials, loan files, or documentation submitted by any Party under the Protocol or arguments or challenges based on compliance with the requirements of the Protocol by any Party, including but not limited to any arguments made by any Party in connection with *Lehman's Second Objection to Certain RMBS Trust Claims and Motion to Disallow and Expunge Certain RMBS Trust Claims for Insufficient Documentation* [Doc. No. 53620].

## V.    WITNESSES

No less than 75 days prior to the Hearing, the Parties shall submit a preliminary list of the witnesses that they may present at the Hearing.  Each Party shall make a good-faith effort to include on its preliminary witness list all of the individuals (and only those individuals) that the Party believes it will present at the Hearing. No less than 45 days prior to the Hearing the Parties shall submit final witness lists of those individuals they expect to call at the Hearing.

Direct testimony of witnesses may be presented by written declaration, which shall be provided by Lehman no less than 30 days before the hearing, and shall be provided by the RMBS Trustees no less than 15 days prior to the Hearing. Notwithstanding the foregoing, the Parties shall each be permitted to present direct testimony of any witness at the Hearing.  Depositions of fact witnesses, if any, shall be completed at least 15 days prior to the Hearing.  In addition to hearing witnesses, the Parties shall also each be entitled to take the deposition of up to three fact witnesses. Such depositions shall be completed no later than 15 days before the hearing date.

For the removal of doubt, both the Trustees and Lehman shall be permitted to depose any witness identified by the other side as a Hearing witness.  Should either side wish to add a witness based on developments during the Hearing, that Party shall provide sufficient advance notice such that the other Party will have the opportunity to depose that witness before he/she testifies at the Hearing.  Each Party reserves all objections to the designation of any person as a witness or deponent.

## VI.    EXHIBITS

On the dates set forth in Section III, the Parties shall identify for one another, by Loan Number, any specific loans that they intend to introduce as exemplar loans in their cases-in-chief at the Hearing.  The Parties reserve the right to request that they be allowed to introduce additional exemplar loans, however, the other Party shall have the right to move to exclude such exemplar loans.

No less than 30 days prior to the Hearing, the Parties shall exchange lists of exhibits (not including demonstratives or exemplar loans, which is addressed above) that they expect to be offered in their cases-in-chief.  The parties will cooperate in good faith to create a Bates Numbered set of all documents that will be offered as trial exhibits.  The Parties may supplement their exhibit lists before and during the Hearing if, in good faith, it is necessary to do so.

If a Party objects to the other Party's proposed use of any testimony or exhibits, that Party shall provide prompt notice to the other Party no later than 10 days prior to the Hearing, or in the case of later added exhibits, promptly after the exhibits are identified, and the Parties shall promptly attempt to resolve the objection.

## VII.    EVIDENCE

The Parties may offer into evidence before the Court, at the Hearing, without objection by any Party:

(i)    the RMBS Trust Settlement Agreements entered into by and between the LBHI Debtors and the Institutional Investors on October 26, 2015 and November 29, 2016;

(ii)    materials concerning other settlement agreements in disputes involving residential mortgage-backed securities.  Each Party will identify within 15 days of the execution by LBHI and the Institutional Investors of the Settlement Agreement to which this Exhibit G is appended, a preliminary list of those settlements that it wishes to admit into evidence;

(iii)    the Institutional Investor Statement attached as Exhibit [ ] to the Settlement Agreement;

(iv)    the RMBS Claim Files, as defined in the Protocol Order;

(v)    the loan origination and servicing files for each of the loans as to which the RMBS Trustees assert a claim;

(vi)    the RMBS Claim, as defined in the Protocol, for each such claim;

(vii)    the Claim Tracking Spreadsheet, as defined in the Protocol;

(viii)    the Approved Claims Report, as defined in the Protocol;

(ix)    the Rejected Claims Report, as defined in the Protocol;

(x)    any disputed Approved Claims, as referenced in the Protocol;

(xi)    Rejected Claim File rebuttals, as referenced in the Protocol;

(xii)    the Plan Administrator's Statement, as defined in the Protocol;

(xiii)    any other materials exchanged between the Parties (including but not limited to the Nationstar and Intex datatapes in support of the Purchase Price) during the Protocol;

(xiv)    the Governing Agreements related to the Trusts; and

(xv)    the holdings of the Institutional Investors, which shall be updated and certified by the Institutional Investors as of the first day of the Estimation Hearing.

For the avoidance of doubt, items (iv)-(xiii) above are intended to refer to materials exchanged during the Protocol and the agreement herein extends only to materials that were, in fact, so exchanged by the Parties.

With respect to the foregoing categories or documents, while the Parties agree that such documents will be admitted into evidence, they reserve all rights to present arguments as to reliability, competency, weight, relevance, timeliness or any other arguments concerning the Court's consideration of such evidence.  In addition, the Parties reserve all rights to seek to introduce additional evidence at the Hearing.

**EXECUTION VERSION**

**EXHIBIT H**

**ALLOCATION PERCENTAGES**

| Trustee | Trust Name / Loan Group | Initial Allocated Percentage |
|---|---|---|
| Deutsche Bank | SAIL 2004-1 / 1 | 0.004308% |
| Deutsche Bank | SAIL 2004-1 / 2 | 0.001292% |
| Law Debenture | ARC 2002-BC10 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC10 / 2 | 0.001084% |
| Law Debenture | ARC 2002-BC10 / 3 | 0.001060% |
| Law Debenture | ARC 2002-BC8 / 1 | 0.008188% |
| Law Debenture | ARC 2002-BC8 / 2 | 0.000561% |
| Law Debenture | ARC 2002-BC9 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC9 / 2 | 0.000169% |
| Law Debenture | BNC 2007-4 / 1 | 0.598969% |
| Law Debenture | BNC 2007-4 / 2 | 0.319296% |
| Law Debenture | LABS 2007-1 / 1 | 0.213542% |
| Law Debenture | LABS 2007-1 / 2 | 0.665016% |
| Law Debenture | LMT 2006-9 / 1 | 0.007225% |
| Law Debenture | LMT 2006-9 / 2 | 0.142322% |
| Law Debenture | LMT 2006-9 / 3 | 0.059861% |
| Law Debenture | LMT 2007-1 / 1 | 0.104230% |
| Law Debenture | LMT 2007-1 / 2 | 0.015085% |
| Law Debenture | LMT 2007-1 / 3 | 0.051720% |
| Law Debenture | LMT 2007-4 / 1 | 0.081740% |
| Law Debenture | LMT 2007-4 / 2 | 0.179616% |
| Law Debenture | LMT 2007-4 / 3 | 0.030551% |
| Law Debenture | LMT 2007-4 / 4 | 0.030503% |
| Law Debenture | LMT 2007-4 / 5 | 0.007382% |
| Law Debenture | LMT 2007-5 / 1 | 0.068732% |
| Law Debenture | LMT 2007-5 / 2 | 0.000000% |
| Law Debenture | LMT 2007-5 / 3 | 0.207011% |
| Law Debenture | LMT 2007-5 / 4 | 0.082310% |
| Law Debenture | LMT 2007-9 / 1 | 0.082662% |
| Law Debenture | LMT 2007-9 / 2 | 0.000000% |
| Law Debenture | LMT 2008-2 / 1 | 0.139862% |

| | | |
|---|---|---|
| Law Debenture | LMT 2008-6 / 1 | 0.034315% |
| Law Debenture | LMT 2008-6 / 2 | 0.015777% |
| Law Debenture | SAIL 2003-BC12 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC12 / 2 | 0.001352% |
| Law Debenture | SAIL 2003-BC12 / 3 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 2 | 0.002550% |
| Law Debenture | SAIL 2003-BC4 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC4 / 2 | 0.002132% |
| Law Debenture | SARM 2004-10 / 1 | 0.049816% |
| Law Debenture | SARM 2004-10 / 2 | 0.041340% |
| Law Debenture | SARM 2004-10 / 3 | 0.069912% |
| Law Debenture | SARM 2004-10 / 4 | 0.005914% |
| Law Debenture | SARM 2004-16 / 1 | 0.081050% |
| Law Debenture | SARM 2004-16 / 2 | 0.025806% |
| Law Debenture | SARM 2004-16 / 3 | 0.071327% |
| Law Debenture | SARM 2004-16 / 4 | 0.006938% |
| Law Debenture | SARM 2004-16 / 5 | 0.006614% |
| Law Debenture | SARM 2004-16 / 6 | 0.024738% |
| Law Debenture | SARM 2004-18 / 1 | 0.076254% |
| Law Debenture | SARM 2004-18 / 2 | 0.033334% |
| Law Debenture | SARM 2004-18 / 3 | 0.068914% |
| Law Debenture | SARM 2004-18 / 4 | 0.011927% |
| Law Debenture | SARM 2004-18 / 5 | 0.000184% |
| Law Debenture | SARM 2004-20 / 1 | 0.092546% |
| Law Debenture | SARM 2004-20 / 2 | 0.046727% |
| Law Debenture | SARM 2004-20 / 3 | 0.020287% |
| Law Debenture | SARM 2004-20 / 4 | 0.002601% |
| Law Debenture | SARM 2004-20 / 5 | 0.001475% |
| Law Debenture | SARM 2004-5 / 1 | 0.004269% |
| Law Debenture | SARM 2004-5 / 2 | 0.017610% |
| Law Debenture | SARM 2004-5 / 3 | 0.035427% |
| Law Debenture | SARM 2004-5 / 4 | 0.002673% |
| Law Debenture | SARM 2004-5 / 5 | 0.001785% |
| Law Debenture | SARM 2004-9XS / 1 | 0.010376% |
| Law Debenture | SARM 2005-11 / 1 | 0.046958% |
| Law Debenture | SARM 2005-11 / 2 | 0.020525% |
| Law Debenture | SARM 2005-11 / 3 | 0.029317% |
| Law Debenture | SARM 2005-11 / 4 | 0.002855% |

EXECUTION VERSION

| | | |
|---|---|---|
| Law Debenture | SARM 2005-11 / 5 | 0.002325% |
| Law Debenture | SARM 2005-12 / 1 | 0.065902% |
| Law Debenture | SARM 2005-12 / 2 | 0.029879% |
| Law Debenture | SARM 2005-12 / 3 | 0.041953% |
| Law Debenture | SARM 2005-12 / 4 | 0.024114% |
| Law Debenture | SARM 2005-12 / 5 | 0.012730% |
| Law Debenture | SARM 2005-12 / 6 | 0.000000% |
| Law Debenture | SARM 2005-15 / 1 | 0.058291% |
| Law Debenture | SARM 2005-15 / 2 | 0.005084% |
| Law Debenture | SARM 2005-15 / 3 | 0.009176% |
| Law Debenture | SARM 2005-15 / 4 | 0.000000% |
| Law Debenture | SARM 2005-15 / 5 | 0.000000% |
| Law Debenture | SARM 2005-17 / 1 | 0.010736% |
| Law Debenture | SARM 2005-17 / 2 | 0.030931% |
| Law Debenture | SARM 2005-17 / 3 | 0.141143% |
| Law Debenture | SARM 2005-17 / 4 | 0.000000% |
| Law Debenture | SARM 2005-17 / 5 | 0.040697% |
| Law Debenture | SARM 2005-17 / 6 | 0.000000% |
| Law Debenture | SARM 2005-20 / 1 | 0.006759% |
| Law Debenture | SARM 2005-20 / 2 | 0.158112% |
| Law Debenture | SARM 2005-20 / 3 | 0.021248% |
| Law Debenture | SARM 2005-20 / 4 | 0.057642% |
| Law Debenture | SARM 2007-1 / 1 | 0.488971% |
| Law Debenture | SARM 2007-1 / 2 | 0.039373% |
| Law Debenture | SARM 2007-11 / 1 | 0.400153% |
| Law Debenture | SARM 2007-11 / 2 | 0.124982% |
| Law Debenture | SARM 2007-11 / 3 | 0.155263% |
| Law Debenture | SARM 2007-2 / 1 | 0.568272% |
| Law Debenture | SARM 2007-2 / 2 | 0.048575% |
| Law Debenture | SARM 2007-3 / 1 | 0.538650% |
| Law Debenture | SARM 2007-3 / 2 | 0.004111% |
| Law Debenture | SARM 2007-3 / 3 | 0.013387% |
| Law Debenture | SARM 2007-3 / 4 | 0.000000% |
| Law Debenture | SARM 2007-4 / 1 | 0.837854% |
| Law Debenture | SARM 2007-6 / 1 | 0.254836% |
| Law Debenture | SARM 2007-6 / 2 | 0.477651% |
| Law Debenture | SARM 2007-6 / 3 | 0.227329% |
| Law Debenture | SASCO 2003-15A / 1 | 0.002203% |
| Law Debenture | SASCO 2003-15A / 2 | 0.004188% |

EXECUTION VERSION

| Law Debenture | SASCO 2003-15A / 3 | 0.000917% |
|---|---|---|
| Law Debenture | SASCO 2003-15A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 1 | 0.011847% |
| Law Debenture | SASCO 2003-17A / 2 | 0.010668% |
| Law Debenture | SASCO 2003-17A / 3 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 4 | 0.000598% |
| Law Debenture | SASCO 2003-26A / 1 | 0.001135% |
| Law Debenture | SASCO 2003-26A / 2 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 3 | 0.037971% |
| Law Debenture | SASCO 2003-26A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 5 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 6 | 0.001571% |
| Law Debenture | SASCO 2003-26A / 7 | 0.000365% |
| Law Debenture | SASCO 2003-34A / 1 | 0.004542% |
| Law Debenture | SASCO 2003-34A / 2 | 0.003370% |
| Law Debenture | SASCO 2003-34A / 3 | 0.010398% |
| Law Debenture | SASCO 2003-34A / 4 | 0.000633% |
| Law Debenture | SASCO 2003-34A / 5 | 0.029231% |
| Law Debenture | SASCO 2003-34A / 6 | 0.005114% |
| Law Debenture | SASCO 2003-6A / 1 | 0.000347% |
| Law Debenture | SASCO 2003-6A / 2 | 0.001655% |
| Law Debenture | SASCO 2003-6A / 3 | 0.002655% |
| Law Debenture | SASCO 2003-6A / 4 | 0.001979% |
| Law Debenture | SASCO 2003-S2 / 1 | 0.004955% |
| Law Debenture | SASCO 2005-S6 / 1 | 0.579689% |
| Law Debenture | SASCO 2005-S7 / 1 | 0.365128% |
| Law Debenture | SASCO 2005-S7 / 2 | 0.455817% |
| Law Debenture | SASCO 2007-BC1 / 1 | 1.057679% |
| Law Debenture | SASCO 2007-BC1 / 2 | 0.982354% |
| Law Debenture | SASCO 2007-MLN1 / 1 | 0.944060% |
| Law Debenture | SASCO 2007-MLN1 / 2 | 1.324885% |
| Law Debenture | SASCO 2007-OSI / 1 | 1.052390% |
| Law Debenture | SASCO 2007-OSI / 2 | 1.196287% |
| US Bank | ARC 2004-1 / 1 | 0.000000% |
| US Bank | ARC 2004-1 / 2 | 0.000000% |
| US Bank | BNC 2006-1 / 1 | 0.634371% |
| US Bank | BNC 2006-1 / 2 | 0.595645% |
| US Bank | BNC 2006-2 / 1 | 0.203133% |
| US Bank | BNC 2006-2 / 2 | 0.735519% |

EXECUTION VERSION

| US Bank | BNC 2007-1 / 1 | 0.987162% |
|---------|----------------|-----------|
| US Bank | BNC 2007-1 / 2 | 0.886811% |
| US Bank | BNC 2007-2 / 1 | 1.137371% |
| US Bank | BNC 2007-2 / 2 | 1.028894% |
| US Bank | LABS 2004-1 / 1 | 0.007673% |
| US Bank | LABS 2004-1 / 2 | 0.008799% |
| US Bank | LMT 2005-1 / 1 | 0.047402% |
| US Bank | LMT 2005-1 / 2 | 0.067437% |
| US Bank | LMT 2005-1 / 3 | 0.029578% |
| US Bank | LMT 2005-1 / 4 | 0.018448% |
| US Bank | LMT 2005-1 / 5 | 0.045656% |
| US Bank | LMT 2005-1 / 6 | 0.003233% |
| US Bank | LMT 2005-2 / 1 | 0.110091% |
| US Bank | LMT 2005-2 / 2 | 0.086622% |
| US Bank | LMT 2005-2 / 3 | 0.078927% |
| US Bank | LMT 2005-2 / 4 | 0.026577% |
| US Bank | LMT 2005-2 / 5 | 0.074712% |
| US Bank | LMT 2005-3 / 1 | 0.075870% |
| US Bank | LMT 2005-3 / 2 | 0.060637% |
| US Bank | LMT 2005-3 / 3 | 0.035600% |
| US Bank | LMT 2005-3 / 4 | 0.021575% |
| US Bank | LMT 2006-2 / 1 | 0.005721% |
| US Bank | LMT 2006-2 / 2 | 0.011030% |
| US Bank | LMT 2006-2 / 3 | 0.004150% |
| US Bank | LMT 2006-2 / 4 | 0.002940% |
| US Bank | LMT 2006-8 / 1 | 0.321303% |
| US Bank | LMT 2007-10 / 1 | 0.080406% |
| US Bank | LMT 2007-10 / 2 | 0.493666% |
| US Bank | LMT 2007-10 / 3 | 0.001068% |
| US Bank | LMT 2007-2 / 1 | 0.018559% |
| US Bank | LMT 2007-2 / 2 | 0.032447% |
| US Bank | LMT 2007-2 / 3 | 0.121884% |
| US Bank | LMT 2007-3 / 1 | 0.028116% |
| US Bank | LMT 2007-6 / 1 | 0.020340% |
| US Bank | LMT 2007-6 / 2 | 0.159604% |
| US Bank | LMT 2007-7 / 1 | 0.037798% |
| US Bank | LMT 2007-7 / 2 | 0.000697% |
| US Bank | LMT 2007-7 / 3 | 0.226436% |
| US Bank | LMT 2007-8 / 1 | 0.151236% |

| | | |
|---|---|---|
| US Bank | LMT 2007-8 / 2 | 0.039659% |
| US Bank | LMT 2007-8 / 3 | 0.350808% |
| US Bank | LXS 2005-2 / 1 | 0.407721% |
| US Bank | LXS 2005-2 / 2 | 0.067132% |
| US Bank | LXS 2005-4 / 1 | 0.242492% |
| US Bank | LXS 2005-4 / 2 | 0.189077% |
| US Bank | LXS 2006-10N / 1 | 0.177095% |
| US Bank | LXS 2006-10N / 2 | 0.000000% |
| US Bank | LXS 2006-10N / 3 | 0.000000% |
| US Bank | LXS 2006-11 / 1 | 0.546454% |
| US Bank | LXS 2006-11 / 2 | 0.025908% |
| US Bank | LXS 2006-12N / 1 | 0.068131% |
| US Bank | LXS 2006-12N / 2 | 0.000000% |
| US Bank | LXS 2006-12N / 3 | 0.000000% |
| US Bank | LXS 2006-15 / 1 | 1.087065% |
| US Bank | LXS 2006-19 / 1 | 1.315674% |
| US Bank | LXS 2006-20 / 1 | 1.191402% |
| US Bank | LXS 2006-3 / 1 | 0.655467% |
| US Bank | LXS 2006-8 / 1 | 0.396812% |
| US Bank | LXS 2006-8 / 2 | 0.315565% |
| US Bank | LXS 2006-8 / 3 | 0.350715% |
| US Bank | LXS 2007-1 / 1 | 1.089568% |
| US Bank | LXS 2007-1 / 2 | 0.244584% |
| US Bank | LXS 2007-1 / 3 | 0.000000% |
| US Bank | LXS 2007-10H / 1 | 1.763647% |
| US Bank | LXS 2007-10H / 2 | 0.386591% |
| US Bank | LXS 2007-12N / 1 | 0.000000% |
| US Bank | LXS 2007-12N / 2 | 0.846426% |
| US Bank | LXS 2007-12N / 3 | 0.000000% |
| US Bank | LXS 2007-14H / 1 | 2.649003% |
| US Bank | LXS 2007-15N / 1 | 0.116525% |
| US Bank | LXS 2007-15N / 2 | 0.375078% |
| US Bank | LXS 2007-15N / 3 | 0.000000% |
| US Bank | LXS 2007-15N / 4 | 0.000000% |
| US Bank | LXS 2007-15N / 6 | 0.000000% |
| US Bank | LXS 2007-15N / 1C | 0.156605% |
| US Bank | LXS 2007-16N / 1 | 0.139360% |
| US Bank | LXS 2007-16N / 2 | 0.725591% |
| US Bank | LXS 2007-16N / 3 | 0.094417% |

| US Bank | LXS 2007-16N / 4 | 0.000000% |
|---------|------------------|-----------|
| US Bank | LXS 2007-17H / 1 | 1.713333% |
| US Bank | LXS 2007-18N / 1 | 0.622723% |
| US Bank | LXS 2007-18N / 2 | 0.549264% |
| US Bank | LXS 2007-20N / 1 | 0.868777% |
| US Bank | LXS 2007-3 / 2 | 0.933371% |
| US Bank | LXS 2007-3 / 1A | 0.144193% |
| US Bank | LXS 2007-3 / 1B | 0.620399% |
| US Bank | LXS 2007-3 / 3A | 0.199179% |
| US Bank | LXS 2007-3 / 3B | 0.256320% |
| US Bank | LXS 2007-3 / 4A | 0.000000% |
| US Bank | LXS 2007-3 / 4B | 0.084520% |
| US Bank | LXS 2007-5H / 1 | 0.351476% |
| US Bank | LXS 2007-5H / 2 | 0.408046% |
| US Bank | LXS 2007-5H / 3 | 0.941454% |
| US Bank | LXS 2007-6 / 1 | 1.656792% |
| US Bank | LXS 2007-6 / 2 | 0.720225% |
| US Bank | LXS 2007-6 / 3 | 1.128605% |
| US Bank | LXS 2007-7N / 1 | 0.298622% |
| US Bank | LXS 2007-7N / 2 | 0.149496% |
| US Bank | LXS 2007-7N / 3 | 0.000000% |
| US Bank | LXS 2007-8H / 1 | 3.215265% |
| US Bank | LXS 2007-9 / 1 | 0.705272% |
| US Bank | LXS 2007-9 / 2 | 0.000000% |
| US Bank | RLT 2008-AH1 / 1 | 0.038943% |
| US Bank | SAIL 2003-BC1 / 1 | 0.001775% |
| US Bank | SAIL 2003-BC1 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 2 | 0.001061% |
| US Bank | SAIL 2003-BC10 / 3 | 0.000316% |
| US Bank | SAIL 2003-BC11 / 1 | 0.000923% |
| US Bank | SAIL 2003-BC11 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 2 | 0.001758% |
| US Bank | SAIL 2003-BC13 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 2 | 0.000308% |
| US Bank | SAIL 2003-BC2 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC5 / 1 | 0.008841% |

- 15 -

| US Bank | SAIL 2003-BC5 / 2 | 0.000000% |
|---------|-------------------|-----------|
| US Bank | SAIL 2003-BC8 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 3a | 0.002498% |
| US Bank | SAIL 2003-BC8 / 3b | 0.001917% |
| US Bank | SAIL 2003-BC9 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 3 | 0.003657% |
| US Bank | SAIL 2004-10 / 1 | 0.000000% |
| US Bank | SAIL 2004-10 / 2 | 0.020774% |
| US Bank | SAIL 2004-10 / 3 | 0.009093% |
| US Bank | SAIL 2004-10 / 4 | 0.019061% |
| US Bank | SAIL 2004-2 / 1 | 0.000000% |
| US Bank | SAIL 2004-2 / 2 | 0.004715% |
| US Bank | SAIL 2004-2 / 3 | 0.000000% |
| US Bank | SAIL 2004-3 / 1 | 0.002379% |
| US Bank | SAIL 2004-3 / 2 | 0.017431% |
| US Bank | SAIL 2004-4 / 1 | 0.000000% |
| US Bank | SAIL 2004-4 / 2 | 0.000000% |
| US Bank | SAIL 2004-4 / 3 | 0.000000% |
| US Bank | SAIL 2004-5 / 1 | 0.000651% |
| US Bank | SAIL 2004-5 / 2 | 0.000929% |
| US Bank | SAIL 2004-6 / 1 | 0.002381% |
| US Bank | SAIL 2004-6 / 2 | 0.001584% |
| US Bank | SAIL 2004-8 / 1 | 0.000000% |
| US Bank | SAIL 2004-8 / 2 | 0.002003% |
| US Bank | SAIL 2004-8 / 3 | 0.000000% |
| US Bank | SAIL 2004-8 / 4 | 0.003276% |
| US Bank | SAIL 2004-8 / 5 | 0.011847% |
| US Bank | SAIL 2004-9 / 1 | 0.000745% |
| US Bank | SAIL 2004-9 / 2 | 0.004372% |
| US Bank | SAIL 2004-9 / 3 | 0.001530% |
| US Bank | SAIL 2005-1 / 1 | 0.000000% |
| US Bank | SAIL 2005-1 / 2 | 0.018902% |
| US Bank | SAIL 2005-1 / 3 | 0.020621% |
| US Bank | SAIL 2005-10 / 1 | 0.000018% |
| US Bank | SAIL 2005-10 / 2 | 0.000000% |
| US Bank | SAIL 2005-10 / 3 | 0.018075% |
| US Bank | SAIL 2005-11 / 1 | 0.002021% |

EXECUTION VERSION

| US Bank | SAIL 2005-11 / 2 | 0.000000% |
|---------|------------------|-----------|
| US Bank | SAIL 2005-11 / 3 | 0.025150% |
| US Bank | SAIL 2005-2 / 1 | 0.013629% |
| US Bank | SAIL 2005-2 / 2 | 0.004903% |
| US Bank | SAIL 2005-3 / 1 | 0.000000% |
| US Bank | SAIL 2005-3 / 2 | 0.010890% |
| US Bank | SAIL 2005-3 / 3 | 0.004563% |
| US Bank | SAIL 2005-3 / 4 | 0.000000% |
| US Bank | SAIL 2005-4 / 1 | 0.062889% |
| US Bank | SAIL 2005-4 / 2 | 0.052243% |
| US Bank | SAIL 2005-5 / 1 | 0.000000% |
| US Bank | SAIL 2005-5 / 2 | 0.044159% |
| US Bank | SAIL 2005-5 / 3 | 0.030846% |
| US Bank | SAIL 2005-5 / 4 | 0.027217% |
| US Bank | SAIL 2005-6 / 1 | 0.000000% |
| US Bank | SAIL 2005-6 / 2 | 0.012233% |
| US Bank | SAIL 2005-6 / 3 | 0.023835% |
| US Bank | SAIL 2005-6 / 4 | 0.048166% |
| US Bank | SAIL 2005-7 / 1 | 0.027160% |
| US Bank | SAIL 2005-7 / 2 | 0.037440% |
| US Bank | SAIL 2005-8 / 1 | 0.031559% |
| US Bank | SAIL 2005-8 / 2 | 0.055215% |
| US Bank | SAIL 2005-9 / 1 | 0.000000% |
| US Bank | SAIL 2005-9 / 2 | 0.000000% |
| US Bank | SAIL 2005-9 / 3 | 0.037779% |
| US Bank | SAIL 2005-HE3 / 1 | 0.031341% |
| US Bank | SAIL 2005-HE3 / 2 | 0.031600% |
| US Bank | SAIL 2006-1 / 1 | 0.020272% |
| US Bank | SAIL 2006-2 / 1 | 0.043225% |
| US Bank | SAIL 2006-4 / 1 | 0.000000% |
| US Bank | SAIL 2006-4 / 2 | 0.009465% |
| US Bank | SAIL 2006-4 / 3 | 0.016682% |
| US Bank | SAIL 2006-BNC3 / 1 | 1.853131% |
| US Bank | SAIL 2006-BNC3 / 2 | 1.984505% |
| US Bank | SARM 2005-22 / 1 | 0.224487% |
| US Bank | SARM 2005-22 / 2 | 0.088204% |
| US Bank | SARM 2005-22 / 3 | 0.000000% |
| US Bank | SARM 2005-22 / 4 | 0.000000% |
| US Bank | SARM 2005-22 / 5 | 0.153723% |

EXECUTION VERSION

| US Bank | SARM 2005-23 / 1 | 0.152283% |
|---------|------------------|-----------|
| US Bank | SARM 2005-23 / 2 | 0.127682% |
| US Bank | SARM 2005-23 / 3 | 0.147378% |
| US Bank | SARM 2005-23 / 4 | 0.000000% |
| US Bank | SARM 2005-6XS / 1 | 0.158228% |
| US Bank | SARM 2005-8XS / 1 | 0.167643% |
| US Bank | SARM 2006-1 / 1 | 0.090431% |
| US Bank | SARM 2006-1 / 2 | 0.043361% |
| US Bank | SARM 2006-1 / 3 | 0.000000% |
| US Bank | SARM 2006-1 / 4 | 0.189958% |
| US Bank | SARM 2006-1 / 5 | 0.032162% |
| US Bank | SARM 2006-1 / 6 | 0.110819% |
| US Bank | SARM 2006-1 / 7 | 0.000000% |
| US Bank | SARM 2006-1 / 8 | 0.101616% |
| US Bank | SARM 2006-10 / 1 | 0.000000% |
| US Bank | SARM 2006-10 / 2 | 0.051032% |
| US Bank | SARM 2006-10 / 3 | 0.054674% |
| US Bank | SARM 2006-11 / 1 | 0.285091% |
| US Bank | SARM 2006-11 / 2 | 0.052407% |
| US Bank | SARM 2006-11 / 3 | 0.034068% |
| US Bank | SARM 2006-12 / 1 | 0.415504% |
| US Bank | SARM 2006-12 / 2 | 0.047158% |
| US Bank | SARM 2006-2 / 1 | 0.088211% |
| US Bank | SARM 2006-2 / 2 | 0.116346% |
| US Bank | SARM 2006-2 / 3 | 0.090787% |
| US Bank | SARM 2006-2 / 4 | 0.284508% |
| US Bank | SARM 2006-2 / 5 | 0.098247% |
| US Bank | SARM 2006-3 / 1 | 0.108397% |
| US Bank | SARM 2006-3 / 2 | 0.059825% |
| US Bank | SARM 2006-3 / 3 | 0.110221% |
| US Bank | SARM 2006-3 / 4 | 0.119412% |
| US Bank | SARM 2006-4 / 1 | 0.153813% |
| US Bank | SARM 2006-4 / 2 | 0.072317% |
| US Bank | SARM 2006-4 / 3 | 0.093587% |
| US Bank | SARM 2006-4 / 4 | 0.023258% |
| US Bank | SARM 2006-4 / 5 | 0.246539% |
| US Bank | SARM 2006-4 / 6 | 0.133100% |
| US Bank | SARM 2006-4 / 7 | 0.000000% |
| US Bank | SARM 2006-5 / 1 | 0.061507% |

| US Bank | SARM 2006-5 / 2 | 0.135872% |
|---------|-----------------|-----------|
| US Bank | SARM 2006-5 / 3 | 0.190280% |
| US Bank | SARM 2006-5 / 4 | 0.052103% |
| US Bank | SARM 2006-5 / 5 | 0.094904% |
| US Bank | SARM 2006-6 / 1 | 0.133156% |
| US Bank | SARM 2006-6 / 2 | 0.188455% |
| US Bank | SARM 2006-6 / 3 | 0.098324% |
| US Bank | SARM 2006-7 / 1 | 0.021553% |
| US Bank | SARM 2006-7 / 2 | 0.075574% |
| US Bank | SARM 2006-7 / 3 | 0.147236% |
| US Bank | SARM 2006-7 / 4 | 0.064788% |
| US Bank | SARM 2006-8 / 1 | 0.000000% |
| US Bank | SARM 2006-8 / 2 | 0.140340% |
| US Bank | SARM 2006-8 / 3 | 0.000000% |
| US Bank | SARM 2006-8 / 4 | 0.000000% |
| US Bank | SARM 2006-9 / 1 | 0.121490% |
| US Bank | SARM 2006-9 / 2 | 0.012400% |
| US Bank | SARM 2006-9 / 3 | 0.050361% |
| US Bank | SARM 2006-9 / 4 | 0.000000% |
| US Bank | SARM 2007-10 / 1 | 0.418956% |
| US Bank | SARM 2007-10 / 2 | 0.352233% |
| US Bank | SARM 2007-8 / 1 | 0.524086% |
| US Bank | SARM 2007-8 / 2 | 0.233335% |
| US Bank | SARM 2008-2 / 1 | 0.176724% |
| US Bank | SASCO 2003-25XS / 1 | 0.016419% |
| US Bank | SASCO 2003-39EX / 1 | 0.034170% |
| US Bank | SASCO 2003-GEL1 / 1 | 0.004737% |
| US Bank | SASCO 2003-NP1 / 1 | 0.004274% |
| US Bank | SASCO 2004-10 / 4 | 0.040548% |
| US Bank | SASCO 2004-11XS / 1 | 0.037679% |
| US Bank | SASCO 2004-11XS / 2 | 0.001614% |
| US Bank | SASCO 2004-13 / 1 | 0.000000% |
| US Bank | SASCO 2004-13 / 2 | 0.041289% |
| US Bank | SASCO 2004-17XS / 1 | 0.028814% |
| US Bank | SASCO 2004-19XS / 1 | 0.026352% |
| US Bank | SASCO 2004-20 / 1 | 0.000574% |
| US Bank | SASCO 2004-20 / 2 | 0.008173% |
| US Bank | SASCO 2004-20 / 3 | 0.005517% |
| US Bank | SASCO 2004-20 / 4 | 0.020767% |

| US Bank | SASCO 2004-20 / 5 | 0.008046% |
|---------|-------------------|-----------|
| US Bank | SASCO 2004-20 / 6 | 0.000000% |
| US Bank | SASCO 2004-20 / 7 | 0.000021% |
| US Bank | SASCO 2004-20 / 8 | 0.008707% |
| US Bank | SASCO 2004-21XS / 1 | 0.049709% |
| US Bank | SASCO 2004-21XS / 2 | 0.016566% |
| US Bank | SASCO 2004-2AC / 1 | 0.042243% |
| US Bank | SASCO 2004-6XS / 1 | 0.025015% |
| US Bank | SASCO 2004-7 / 1 | 0.033747% |
| US Bank | SASCO 2004-7 / 2 | 0.001088% |
| US Bank | SASCO 2004-7 / 3 | 0.005477% |
| US Bank | SASCO 2004-9XS / 1 | 0.046737% |
| US Bank | SASCO 2004-9XS / 2 | 0.009750% |
| US Bank | SASCO 2004-GEL1 / 1 | 0.011649% |
| US Bank | SASCO 2004-GEL2 / 1 | 0.008805% |
| US Bank | SASCO 2004-GEL3 / 1 | 0.002683% |
| US Bank | SASCO 2004-NP1 / 1 | 0.007823% |
| US Bank | SASCO 2004-S2 / 1 | 0.005952% |
| US Bank | SASCO 2004-S3 / 1 | 0.006036% |
| US Bank | SASCO 2004-S3 / 2 | 0.013127% |
| US Bank | SASCO 2004-S4 / 1 | 0.059859% |
| US Bank | SASCO 2005-14 / 1 | 0.008746% |
| US Bank | SASCO 2005-14 / 2 | 0.008792% |
| US Bank | SASCO 2005-14 / 3 | 0.020391% |
| US Bank | SASCO 2005-14 / 4 | 0.041388% |
| US Bank | SASCO 2005-3 / 1 | 0.058777% |
| US Bank | SASCO 2005-7XS / 1 | 0.071050% |
| US Bank | SASCO 2005-7XS / 2 | 0.078792% |
| US Bank | SASCO 2005-GEL2 / 1 | 0.010236% |
| US Bank | SASCO 2005-GEL2 / 2 | 0.001913% |
| US Bank | SASCO 2005-GEL3 / 1 | 0.016596% |
| US Bank | SASCO 2005-GEL4 / 1 | 0.029040% |
| US Bank | SASCO 2005-RF1 / 1 | 0.000040% |
| US Bank | SASCO 2005-RF2 / 1 | 0.000869% |
| US Bank | SASCO 2005-RF4 / 2 | 0.000913% |
| US Bank | SASCO 2005-RF5 / 1 | 0.000212% |
| US Bank | SASCO 2005-RF5 / 2 | 0.000000% |
| US Bank | SASCO 2005-RF6 / 1 | 0.000017% |
| US Bank | SASCO 2005-RF7 / 1 | 0.000682% |

EXECUTION VERSION

| US Bank | SASCO 2005-S1 / 1 | 0.016985% |
| US Bank | SASCO 2005-S1 / 2 | 0.074697% |
| US Bank | SASCO 2005-S2 / 1 | 0.107416% |
| US Bank | SASCO 2005-S3 / 1 | 0.232562% |
| US Bank | SASCO 2005-S4 / 1 | 0.043521% |
| US Bank | SASCO 2005-S5 / 1 | 0.379139% |
| US Bank | SASCO 2005-SC1 / 1 | 0.212532% |
| US Bank | SASCO 2006-BC2 / 1 | 0.659689% |
| US Bank | SASCO 2006-BC2 / 2 | 0.008230% |
| US Bank | SASCO 2006-BC3 / 1 | 0.042642% |
| US Bank | SASCO 2006-BC3 / 2 | 0.086333% |
| US Bank | SASCO 2006-BC4 / 1 | 0.021788% |
| US Bank | SASCO 2006-BC4 / 2 | 0.049696% |
| US Bank | SASCO 2006-BC6 / 1 | 0.772772% |
| US Bank | SASCO 2006-BC6 / 2 | 0.670175% |
| US Bank | SASCO 2006-GEL1 / 1 | 0.018225% |
| US Bank | SASCO 2006-GEL2 / 1 | 0.008997% |
| US Bank | SASCO 2006-GEL3 / 1 | 0.007282% |
| US Bank | SASCO 2006-GEL3 / 2 | 0.000000% |
| US Bank | SASCO 2006-GEL4 / 1 | 0.046913% |
| US Bank | SASCO 2006-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF2 / 1 | 0.001991% |
| US Bank | SASCO 2006-RF3 / 1 | 0.000480% |
| US Bank | SASCO 2006-RF3 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF3 / 3 | 0.000398% |
| US Bank | SASCO 2006-RF3 / 4 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 2 | 0.000225% |
| US Bank | SASCO 2006-RF4 / 3 | 0.000000% |
| US Bank | SASCO 2006-S1 / 1 | 1.286686% |
| US Bank | SASCO 2006-Z / 1 | 0.125224% |
| US Bank | SASCO 2006-Z / 2 | 0.163178% |
| US Bank | SASCO 2007-BC2 / 1 | 0.018223% |
| US Bank | SASCO 2007-BC2 / 2 | 0.056520% |
| US Bank | SASCO 2007-BC3 / 1 | 0.682815% |
| US Bank | SASCO 2007-BC3 / 2 | 0.617148% |
| US Bank | SASCO 2007-BC4 / 1 | 1.341653% |
| US Bank | SASCO 2007-BC4 / 2 | 1.475628% |

| US Bank | SASCO 2007-BNC1 / 1 | 0.950916% |
| US Bank | SASCO 2007-BNC1 / 2 | 1.402866% |
| US Bank | SASCO 2007-GEL1 / 1 | 0.199334% |
| US Bank | SASCO 2007-GEL2 / 1 | 0.255981% |
| US Bank | SASCO 2007-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2007-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2007-TC1 / 1 | 0.238499% |
| Wilmington Trust | BNC 2007-3 / 1 | 1.032133% |
| Wilmington Trust | BNC 2007-3 / 2 | 0.490340% |
| Wilmington Trust | LMT 2006-1 / 1 | 0.128637% |
| Wilmington Trust | LMT 2006-1 / 2 | 0.023404% |
| Wilmington Trust | LMT 2006-1 / 3 | 0.051984% |
| Wilmington Trust | LMT 2006-4 / 1 | 0.011941% |
| Wilmington Trust | LMT 2006-4 / 2 | 0.001525% |
| Wilmington Trust | LXS 2005-1 / 1 | 0.166349% |
| Wilmington Trust | LXS 2005-1 / 2 | 0.167067% |
| Wilmington Trust | LXS 2005-1 / 3 | 0.054199% |
| Wilmington Trust | LXS 2005-10 / 1 | 0.305489% |
| Wilmington Trust | LXS 2005-10 / 2 | 0.200249% |
| Wilmington Trust | LXS 2005-3 / 1 | 0.242947% |
| Wilmington Trust | LXS 2005-3 / 2 | 0.227732% |
| Wilmington Trust | LXS 2005-3 / 3 | 0.105695% |
| Wilmington Trust | LXS 2005-6 / 1 | 0.264233% |
| Wilmington Trust | LXS 2005-6 / 2 | 0.187614% |
| Wilmington Trust | LXS 2005-6 / 3 | 0.214582% |
| Wilmington Trust | LXS 2005-8 / 1 | 0.270499% |
| Wilmington Trust | LXS 2005-8 / 2 | 0.195244% |
| Wilmington Trust | LXS 2006-1 / 1 | 0.287423% |
| Wilmington Trust | LXS 2006-1 / 2 | 0.218340% |
| Wilmington Trust | LXS 2006-13 / 1 | 0.731870% |
| Wilmington Trust | LXS 2006-13 / 2 | 0.043277% |
| Wilmington Trust | LXS 2006-17 / 1 | 1.227788% |
| Wilmington Trust | LXS 2006-17 / 2 | 0.000000% |
| Wilmington Trust | LXS 2006-5 / 1 | 0.744378% |
| Wilmington Trust | LXS 2006-5 / 2 | 0.234677% |
| Wilmington Trust | LXS 2006-7 / 1 | 0.876394% |
| Wilmington Trust | LXS 2006-7 / 2 | 0.369689% |
| Wilmington Trust | LXS 2006-9 / 1 | 0.538173% |
| Wilmington Trust | LXS 2006-9 / 2 | 0.328633% |

EXECUTION VERSION

| | | |
|---|---|---|
| Wilmington Trust | LXS 2007-11 / 1 | 1.110351% |
| Wilmington Trust | SARM 2005-3XS / 1 | 0.037970% |
| Wilmington Trust | SASCO 2003-12XS / 1 | 0.003221% |
| Wilmington Trust | SASCO 2003-18XS / 1 | 0.008246% |
| Wilmington Trust | SASCO 2003-28XS / 1 | 0.004696% |
| Wilmington Trust | SASCO 2003-29 / 1 | 0.005971% |
| Wilmington Trust | SASCO 2003-29 / 2 | 0.001001% |
| Wilmington Trust | SASCO 2003-29 / 3 | 0.003988% |
| Wilmington Trust | SASCO 2003-29 / 4 | 0.002210% |
| Wilmington Trust | SASCO 2003-29 / 5 | 0.005912% |
| Wilmington Trust | SASCO 2003-30 / 1 | 0.025074% |
| Wilmington Trust | SASCO 2003-30 / 2 | 0.001480% |
| Wilmington Trust | SASCO 2003-30 / 3 | 0.015082% |
| Wilmington Trust | SASCO 2003-35 / 1 | 0.000555% |
| Wilmington Trust | SASCO 2003-35 / 2 | 0.001603% |
| Wilmington Trust | SASCO 2003-35 / 3 | 0.013751% |
| Wilmington Trust | SASCO 2003-35 / 4 | 0.019244% |
| Wilmington Trust | SASCO 2003-36XS / 1 | 0.023291% |
| Wilmington Trust | SASCO 2003-38 / 1 | 0.009282% |
| Wilmington Trust | SASCO 2003-38 / 2 | 0.003798% |
| Wilmington Trust | SASCO 2003-3XS / 1 | 0.004044% |
| Wilmington Trust | SASCO 2003-S1 / 1 | 0.020231% |
| Wilmington Trust | SASCO 2004-15 / 1 | 0.000156% |
| Wilmington Trust | SASCO 2004-15 / 2 | 0.000000% |
| Wilmington Trust | SASCO 2004-15 / 3 | 0.012284% |
| Wilmington Trust | SASCO 2004-15 / 4 | 0.000677% |
| Wilmington Trust | SASCO 2004-16XS / 1 | 0.032070% |
| Wilmington Trust | SASCO 2004-18H / 1 | 0.000796% |
| Wilmington Trust | SASCO 2004-22 / 1 | 0.015932% |
| Wilmington Trust | SASCO 2004-23XS / 1 | 0.039230% |
| Wilmington Trust | SASCO 2004-23XS / 2 | 0.055258% |
| Wilmington Trust | SASCO 2004-4XS / 1 | 0.015873% |
| Wilmington Trust | SASCO 2004-4XS / 2 | 0.016730% |
| Wilmington Trust | SASCO 2005-1 / 1 | 0.062667% |
| Wilmington Trust | SASCO 2005-1 / 2 | 0.006624% |
| Wilmington Trust | SASCO 2005-1 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 5 | 0.001916% |
| Wilmington Trust | SASCO 2005-1 / 6 | 0.074564% |

DB1/ 91137811.2

EXECUTION VERSION

| | | |
|---|---|---|
| Wilmington Trust | SASCO 2005-1 / 7 | 0.043110% |
| Wilmington Trust | SASCO 2005-10 / 1 | 0.042529% |
| Wilmington Trust | SASCO 2005-10 / 2 | 0.017863% |
| Wilmington Trust | SASCO 2005-10 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 5 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 6 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 7 | 0.002397% |
| Wilmington Trust | SASCO 2005-10 / 8 | 0.038340% |
| Wilmington Trust | SASCO 2005-11H / 1 | 0.000000% |
| Wilmington Trust | SASCO 2005-15 / 1 | 0.006576% |
| Wilmington Trust | SASCO 2005-15 / 2 | 0.035261% |
| Wilmington Trust | SASCO 2005-15 / 3 | 0.008890% |
| Wilmington Trust | SASCO 2005-15 / 4 | 0.042647% |
| Wilmington Trust | SASCO 2005-15 / 5 | 0.014276% |
| Wilmington Trust | SASCO 2005-17 / 1 | 0.001003% |
| Wilmington Trust | SASCO 2005-17 / 2 | 0.005479% |
| Wilmington Trust | SASCO 2005-17 / 3 | 0.019832% |
| Wilmington Trust | SASCO 2005-17 / 4 | 0.037825% |
| Wilmington Trust | SASCO 2005-17 / 5 | 0.042364% |
| Wilmington Trust | SASCO 2005-2XS / 1 | 0.047617% |
| Wilmington Trust | SASCO 2005-2XS / 2 | 0.048195% |
| Wilmington Trust | SASCO 2005-4XS / 1 | 0.062751% |
| Wilmington Trust | SASCO 2005-4XS / 2 | 0.047130% |
| Wilmington Trust | SASCO 2005-4XS / 3 | 0.010096% |
| Wilmington Trust | SASCO 2005-5 / 1 | 0.077738% |
| Wilmington Trust | SASCO 2005-5 / 2 | 0.029624% |
| Wilmington Trust | SASCO 2005-5 / 3 | 0.023057% |
| Wilmington Trust | SASCO 2005-5 / 4 | 0.000009% |
| Wilmington Trust | SASCO 2005-9XS / 1 | 0.107536% |
| Wilmington Trust | SASCO 2005-9XS / 2 | 0.080869% |
| Wilmington Trust | SASCO 2006-S2 / 1 | 1.811246% |
| Wilmington Trust | SASCO 2006-S3 / 1 | 1.020158% |
| Wilmington Trust | SASCO 2006-S4 / 1 | 1.465131% |
| **Total** | | **100.000000%** |

DB1/ 91137811.2

EXECUTION VERSION

## EXHIBIT I

## DEBTORS' FINDINGS

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. All parties entitled to receive notice of the Motion have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the LBHI Debtors has acted in good faith and exercised sound business judgment in connection with its determination to enter into and execute the Settlement Agreement.  Approval of the Settlement Agreement is in the best interests of the LBHI Debtors, their respective estates and creditors.