Exhibit A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4

5   In the Matter of:

6

7   LEHMAN BROTHERS HOLDINGS INC.,    Case No. 08-13555 (SCC)

8

9            Debtor.

10

11  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                U.S. Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17                March 21, 2017

18                10:04 AM

19

20

21  B E F O R E :

22  HON SHELLEY C. CHAPMAN

23  U.S. BANKRUPTCY JUDGE

24

25

1    Hearing re:  Doc #54675 Motion pursuant to the Amended SPV ADR

2    Order and Section 105(a) of the Bankruptcy Code to (I) Enforce

3    settlement and release agreement and (II) Grant attorneys and

4    mediators fees and costs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher

Page 3

```
1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3         Attorney for Lehman Brothers Holdings Inc. and Affiliates

4         201 Redwood Shores Parkway

5         Redwood Shores, CA 94065

6

7    BY:  CHRISTOPHER COX, ESQ.

8

9    WEIL, GOTSHAL & MANGES LLP

10        Attorney for Lehman Brothers Holdings Inc. and Affiliates

11        767 Fifth Avenue

12        New York, NY 10153

13

14   BY:  JACQUELINE MARCUS, ESQ.

15

16   K&L GATES

17        Attorneys for Shinhan

18        599 Lexington Avenue

19        New York, NY 10022

20

21   BY:  JOHN A. BICKS, ESQ.

22        PRIYA CHADHA, ESQ.

23

24

25
```

**Page 4**

```
 1   K&L GATES

 2         Attorney for Shinhan

 3         1601 K Street, NW

 4         Washington, DC 20006

 5

 6   BY:  BRIAN KOOSED, ESQ.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              THE COURT:  Please have a seat.  How's everyone

3     today?  So I take it you haven't settled, no?

4         (Chorus of no)

5              MS. MARCUS:  Good morning, Your Honor.  Jacqueline

6     Marcus, Weil, Gotshal & Manges on behalf of Lehman Brothers

7     Holdings Inc. and its affiliated debtors.

8              This is -- we're here this morning for the 106th

9     omnibus hearing and most of the matters are not going forward

10    today.  Four of them have been adjourned, two have been

11    withdrawn.  And what we're going forward with is the motion

12    pursuant to the amended SPV ADR order in Section 105(a) of the

13    Bankruptcy Court to enforce the settlement agreement with

14    Shinhan Bank.  Your Honor, that will be handled by my partner,

15    Chris Cox.

16             I just wanted to mention that there is one

17    housekeeping matter --

18             THE COURT:  Okay.

19             MS. MARCUS:  -- that I'd like to address when we're

20    done.

21             THE COURT:  Okay, certainly.

22             MS. MARCUS:  Thank you.

23             THE COURT:  All right, so I'm well familiar with this

24    dispute and I've read the papers a number of times.  So I'm

25    happy to hear you if there's anything you'd like to add, but

Page 6

1    certainly you don't have to review what's in the papers.  So

2    I'll leave it to you.

3              MR. COX:  Your Honor, if I could just briefly --

4              THE COURT:  Sure.

5              MR. COX:  -- address it.  And you have 60 pages of

6    briefing, so I have no intention of going through all of the

7    briefs again.  And I just wanted to highlight just a couple of

8    points I think are there because what we really have here is

9    two ships passing in the night, right?  So --

10             THE COURT:  Right.

11             MR. COX:  I just wanted to reinforce a few things,

12   right?  Which is one which came out of our last meeting, right,

13   which is this release agreement doesn't say it's a settlement

14   and release.  It says it's a release.  And nowhere was there a

15   negotiation that we were going to put the word settlement in

16   there.  And that's key when you look at Shinhan's cases because

17   all the cases they cite were for settlement agreements and

18   settlement release agreements.  And I think that's just a very

19   important point here because as you could tell from our

20   briefing, we look at the settlement and the releases separate.

21   And the release is just a functional thing about the timing and

22   of the dismissals and releases.  And what we had here was a

23   release where there was never a negotiation that it was also

24   going to be reducing the settlement to writing.

25             And I think if you look at that, it's really

Page 7

1    dispositive of the issue because the settlement that was

2    reached on April 20th was very simple.  It just said Shinhan

3    pays X --

4              THE COURT:  Pay money, get released.

5              MR. COX:  And you both provide general releases, you

6    know, so we're done.  And I don't think we really need to kind

7    of get into that much more, but importantly, I wanted to

8    address this moral hazard issue.  Without getting into the

9    release agreement and the language, because we've briefed on

10   that, I'm happy to discuss anything you want to discuss.  But

11   here what we have is a situation where there was full briefing

12   on the B of A motion.

13             THE COURT:  I never thought I knew that.

14             MR. COX:  And everybody knew it.  The briefing had

15   been submitted.  The matter had been submitted.  And both

16   parties reached a compromise based on the risk of what Your

17   Honor was going to do at that moment.

18             THE COURT:  At any minute, right.

19             MR. COX:  And what we had was a situation where

20   Shinhan is basically arguing -- they gave themselves a

21   unilateral option, right?  Which is you get all of these papers

22   together for us, Lehman.  You sign two agreements that you're

23   bound by your compromised settlement.  And we're going to give

24   ourselves a unilateral option and we're going to sit on it.

25   And if the order is in favor of us, we're going to rip it up.

Page 8

1   If it's not in favor of us, we get a settlement on very good

2   terms.  And whether that was intentional or not and I'm not

3   accusing them of doing anything.  We haven't done any

4   discovery.  But whether it was intentional or not, it still

5   places Lehman in a position where they can't win, right?  And

6   that can't be what the party's bargain was.  It had to be

7   something else.

8           And what the bargain was was we reached a compromise

9   settlement based on all of the factors at the time.  It

10  stipulated -- everything was agreed to, right?  So whether

11  you're looking at the first Winston factor where there was no

12  reservation of rights to -- that things need to be reduced in

13  writing, or the third Winston factor where everything was in

14  place, I think under any term we have a binding settlement

15  here.  And with regard to the 2104 motion -- well, the argument

16  that you don't have a signed writing without a signature from

17  the lawyers, I think we addressed that fairly well that we have

18  these signed e-mail exchanges where they had the authority to

19  bind the companies.  And so I think we meet that, whether or

20  not it applies in Federal Court.

21          And the last point I'd make, Your Honor, is that you

22  do have equitable power to order any attorney's fees and

23  sanctions.  And we did not get greedy in asking for sanctions.

24  All we ask for were the additional attorney's fees and mediator

25  fees from the time we reached the settlement and they said that

Page 9

1    they're not going to sign it.  So I'm happy to answer any

2    questions Your Honor might have, but otherwise I'll submit.

3                THE COURT:  Okay.  Well, if it doesn't end after

4    today or at some point, there could be additional fees that are

5    incurred if there's going to be an appeal.  The Bank of America

6    action is now up on appeal itself, which is neither here nor

7    there, but --

8                MR. COX:  But yes, I think, unless the parties

9    settle, there's going to be more fees and costs going forward

10   with an appeal on.  So we think that it's only fair to put us

11   in a position where we're back on equal footing when we were

12   when we thought we were getting paid our settlement.

13               THE COURT:  Okay, thank you.

14               MR. COX:  All right.  Thank you, Your Honor.

15               MR. BICKS:  Good morning, Your Honor.

16               THE COURT:  Good morning.

17               MR. BICKS:  I'll do my very best to be brief.  I'm

18   pretty sure --

19               THE COURT:  Okay.

20               MR. BICKS:  -- I will not be as brief as Chris.  I do

21   have a couple of --

22               THE COURT:  But I did read everything.

23               MR. BICKS:  I appreciate that.

24               THE COURT:  Many times.

25               MR. BICKS:  I believe it, absolutely, Your Honor.

Page 10

```
 1              THE COURT:  Okay.

 2              MR. BICKS:  So Chris has said an interesting thing,

 3      he said the release agreement is a separate thing.  I'm not

 4      really sure what that means, but I guess the way I see it, and

 5      if you look at the proposed order that Lehman has handed you,

 6      they're asking you to do two things.  They're asking you to

 7      enforce what they're calling a settlement that they say

 8      occurred on April 20th.  And separately, they're asking you to

 9      enforce a release agreement that never got signed about a month

10      later.

11              The problem is here, there really isn't a path down

12      the middle here.  In order for you, respectfully, to rule in

13      Lehman's favor on this matter, I think you have to do one of

14      two things, but not both of two things.  You either have to

15      decide that there was enough that had been agreed to on April

16      20th --

17              THE COURT:  Yeah, there was an agreement.  There was

18      a settlement.  There's going to be a payment of money.  And

19      there's going to be a release.

20              MR. BICKS:  See, the problem --

21              THE COURT:  Period.

22              MR. BICKS:  The problem with that, Your Honor, is it

23      is absolutely clear that there were a lot of essential terms

24      that forget about not having been agreed to --

25              THE COURT:  No, there weren't.  There were -- it is
```

1    the simplest settlement that there could possibly be.  Pay

2    money.  Get released.

3             MR. BICKS:  So, so --

4             THE COURT:  There's not a lot of moving parts here.

5             MR. BICKS:  But let me ask you about one.  Pay money.

6    When?  Five years from now?  Two days from now?  Ten years from

7    now?  The parties had absolutely no agreement because we had

8    never even talked about when money would be paid.  And I won't

9    regale you with them.

10            THE COURT:  Could we just be forthcoming here?

11            MR. BICKS:  Please.

12            THE COURT:  Okay.  There was a settlement.  And then,

13   incredibly, against all odds, the B of A ruling was issued

14   right at the moment of truth.  That's what happened.  It's not

15   about anything else but that.  So I appreciate that many

16   arguments have been constructed to get around that unfortunate

17   fact, but it's a fact.

18            MR. BICKS:  Your Honor --

19            THE COURT:  Okay, so --

20            MR. BICKS:  Obviously, we respectfully disagree that

21   there was a settlement because, in fact, a lot of terms were

22   missing.  But if you've concluded that there was, let me ask

23   you this question, please.

24            THE COURT:  You don't get to ask me questions, okay?

25            MR. BICKS:  You're right, I don't.  But I would ask

Page 12

1    this question to Lehman.  If you believe that there was a

2    settlement, why did you then draft a settlement agreement, send

3    it to us, which contained a merger clause?  Why would you do

4    that?  Why would they do that?  The reason they did that is

5    simple, because their understanding was precisely the same as

6    ours.  That we had agreed to one thing and one thing only on

7    April 20th.  And that was in the context of an overall

8    settlement, how much our client would pay to Lehman to be done

9    with this.  They understood, just as we did, that this would

10   ultimately be wrapped up in a proper settlement agreement.  How

11   does Lehman know this?  Because they've settled about 200 of

12   these cases.  How do we know this?  Because we have settled

13   cases, these same cases with them.  So we knew, just as they

14   knew, that this would all be subject to a proper settlement

15   agreement.  And the fact that the agreement that they sent us,

16   we didn't write it.  They sent us the draft.  The fact that the

17   draft they sent us contains a merger clause, contains

18   provisions that says it's not effective until it's signed,

19   those completely fly in the face on this argument that they're

20   trying to make now that what you ought to do is take a little

21   from this one and a little from that one.  You know, that's --

22            THE COURT:  A little from what one?  A little from

23   what one?

24            MR. BICKS:  A little from this supposed settlement on

25   April 20th --

1          THE COURT:  There were -- there was money to be paid

2     and there was a release.  And Judge Mabey said there's a

3     settlement and everybody agreed.

4          MR. BICKS:  And --

5          THE COURT:  Super simple.

6          MR. BICKS:  Super simple if you're willing to

7     disregard the fact that material pieces of that settlement were

8     gone.  And if you are willing to disregard the fact that what

9     Winston said over 30 years ago, which is as good law as it is

10    -- then as it is now.  Winston says you look at the intent of

11    the parties to decide when they intend to be bound.  What did

12    these parties put in the draft agreement that was prepared by

13    Lehman, negotiated through a couple of rounds?  What did these

14    parties put in the agreement was real simple.  They put in the

15    agreement that we intended to be bound when everyone signed.

16          And I want to talk just a little bit about this whole

17    -- you know, this moral hazard concept.  I mean, in a way I'm

18    flattered.  Are they saying that we knew more than they did?

19          THE COURT:  No, they're simply saying that as the

20    delay occurred, which according to the uncontested record

21    that's before me, I'm not deciding any disputed facts, the

22    delay was solely on Shinhan part for what appeared to be

23    internal administrative reasons, giving Shinhan every benefit

24    of the doubt, okay?  Somebody was out of town.  They wanted

25    multiple copies.  All kinds of stuff that had -- that are not

Page 14

1   substantive and that are not material.  But Shinhan wanted

2   them.  That's fine.  And then the only thing that changed was

3   the B of A decision came down.  And then, all of a sudden,

4   Shinhan was reevaluating the settlement because it decided that

5   it felt that it didn't want to go through with it because,

6   understandably, at the level of human nature, a decision comes

7   down that would have let them off the hook.  It's no more

8   complicated than that.

9          So our argument has now been advanced as to why that

10  settlement, that until that moment was a good settlement, is no

11  longer a good settlement.  So I will apply the Winston factors

12  and I will tell you what my conclusion is.  And you'll all take

13  it from there.

14          MR. BICKS:  All right.  I appreciate that.  Just to

15  be super clear, we don't at this point qualify anything as

16  being a good settlement or a bad settlement.  What I've said to

17  Mr. Cox all --

18          THE COURT:  But that's disingenuous.  The B of A

19  decision, and I literally do not know where in the

20  constellation of those defendants Shinhan falls because it's

21  irrelevant to the narrow issue that's before me.  But generally

22  speaking, the B of A ruling was a sweeping ruling against

23  Lehman and in favor of the defendants.  Okay, I would add

24  parenthetically that I would cite that as Exhibit A in the

25  category of Lehman doesn't always win when they walk through

1    this door.  Okay?  That's got nothing to do with it.

2         But -- so good or bad, Shinhan then was faced with if

3    we hadn't settled, we would not have to pay anything and now

4    because we "settled", we have to pay money.  Paying money is

5    worse than not paying money if you're the party paying money.

6    It's just simple.

7         MR. BICKS:  All right.  I was making a slightly

8    different point.  At this point, the position that the client

9    takes in the litigation has nothing to do with the clients

10   looking either backwards or forwards and saying this is a good

11   settlement or it's a bad settlement.  Our position all along

12   has been it either is a settlement or it is not.  It is --

13        THE COURT:  And what -- and just hypothetically, even

14   though it's not an issue now, what caused Shinhan to change its

15   mind?

16        MR. BICKS:  Maybe it's the same thing that caused Mr.

17   Kasmarsick (ph) to change his mind.  The reality is, and

18   Winston recognizes this in the cases that we cited in our

19   brief, if all that happened was somebody woke up one morning

20   before they signed the agreement, the instant before they

21   signed that agreement that says it's not effective until you

22   sign it, then the answer is, actually they can change their

23   mind.  They can change their mind, because that's the agreement

24   that the parties negotiated.  That's the agreement that Lehman

25   prepared for us.

1          I want to address the moral hazard piece because

2     there -- certainly Mr. Cox is aware, his client is aware that

3     at the exact same time that we are supposedly engaging in this

4     foot dragging to hold off on signing this agreement, we are

5     literally --

6          THE COURT:  Let's not characterize it as foot

7     dragging.  Let's characterize it factually accurately, which is

8     that there was -- there were weeks and weeks of delay

9     occasioned solely by Shinhan and at Shinhan's request.  Do you

10    agree with that?

11         MR. BICKS:  I do.

12         THE COURT:  Okay.

13         MR. BICKS:  And during --

14         THE COURT:  So --

15         MR. BICKS:  And during those weeks and weeks of

16    delay, occasioned principally, if not solely, by the requests

17    of our client, all of which were honored and in very good humor

18    by the folks at Lehman, who we appreciate.  During that same

19    period of time, we were in the process of consummating

20    settlements which were funded -- signed and funded, literally

21    within the same period of time between April 20th and when your

22    decision comes down.  We were consummating settlements for

23    other clients.  That's -- to me --

24         THE COURT:  Who's the we?  I don't know what you're

25    talking about.

1           MR. BICKS:  K&L Gates on behalf of other defendants

2    in these actions.

3           THE COURT:  What does that have to do with anything?

4           MR. BICKS:  To me, Your Honor, what it has to do with

5    is if the suggestion is that we were trying to outsmart Lehman

6    on behalf of one client, why wouldn't we have done it for

7    others?

8           THE COURT:  I want to make it perfectly clear,

9    because I feel that a record is being created here that someone

10   might want to use on appeal that indicates that I'm finding

11   facts that are somehow in dispute.  All of what you just said

12   is completely irrelevant to my decision making process.  So you

13   may not be doing this, but I'm feeling strongly that you are

14   trying to engage me in a discussion that will appear as if

15   somehow I decided disputed facts.  There are none.  There is a

16   simple timeline.  It's set forth in the papers.  That's the

17   basis for the ruling on a straightforward application of those

18   undisputed facts to and under the Winston factors.  Period.  So

19   I'm not going to respond to that statement.  I have no idea why

20   it's relevant.

21          MR. BICKS:  And just to be clear, that is not my

22   intention at all.  The very last argument that was advanced in

23   papers by Lehman, the last argument in their last pleading,

24   distilled down to its essence is that we were trying to gain

25   the outcome here.  That's their argument.  All I'm doing is

Page 18

1    responding and noting that if we were going to try to game the

2    outcome, why when they called us on the morning that you issued

3    your ruling, there's a fact -- undisputed fact that's in the

4    record, when they called us at 10:30 that morning and said,

5    "Are we done?  Are we done?"  I don't know what they knew when

6    they called us, because we didn't take any discovery.  I don't

7    know what they knew.  I know what we knew.  We didn't know

8    anything.  Maybe they knew exactly what we knew, which was

9    nothing.

10            THE COURT:  Again, you -- again, I'm not going to

11   engage on this topic because it's irrelevant, unless somebody

12   makes it relevant.  So if what you're telling me now is that

13   you believe -- I don't remember what moment the decision was

14   issued.  I don't know who called whom when.   Irrelevant.

15            MR. BICKS:  Well, the folks at this table seem to

16   think it's quite relevant.  They made it the last argument in

17   their reply brief.  That was the only reason I make the point.

18   I think I'm just about done, Your Honor.  I would ask that you

19   do look, though, in particular at one -- just one -- literally

20   one sentence of the reply brief.  There is a sort of a stunning

21   sentence in the reply brief in paragraph 19 which says the

22   release agreement does not set forth the terms and conditions

23   of the settlement.  That's in paragraph 19 of the Lehman reply

24   brief.

25            I guess I would challenge Lehman to identify a single

Page 19

```
 1   term of the settlement that is not in the release agreement.

 2   And the answer is, they won't be able to because you can look

 3   at the release agreement.  That's in the record as well.  And I

 4   promise you that what you will see when you look at the release

 5   agreement, there is not one single term that would relate to

 6   what Lehman calls the settlement that is not in that document.

 7   And that's a significant -- this is a sort of a significant

 8   whiff because, again, what this is is Lehman trying to ask you

 9   to take a course down the middle between enforcing what they

10   say was in the agreement made on April 20th, which they know

11   really isn't an agreement because it's missing too many pieces,

12   and asking you to enforce a negotiated agreement that has one

13   fatal flaw, which is that it was never signed.

14           So they realize -- that on the law, they realize

15   they've got an issue over here.  They've got an issue over

16   here.  They're asking you to take a path down the middle, sort

17   of mash them together.  You know, it works for making meatloaf,

18   but it's not great for, you know, legal analysis.

19           THE COURT:  It's super simple.  If the settlement

20   agreement is upheld, there's going to be a payment of money and

21   there are going to be releases.  That's it.

22           MR. BICKS:  And when are we to pay?  I don't mean to

23   ask you that question, but I'll restate it.  If you believe

24   that there was an agreement on April 20th, it is -- it's

25   inconceivable that that term -- that term was never discussed.
```

Page 20

1    There's absolutely nothing in the record.  They know it was

2    never discussed.  There's nothing in Judge Mabey's (ph)

3    correspondences to suggest that it was discussed.  What more

4    material term could there be than that.

5            And I point you to our brief.  I won't cite the

6    cases, obviously, but in our brief at pages -- on page 36,

7    paragraphs 10 and 11, we go through the --

8            THE COURT:  So the whole thing was illusory?  This is

9    a complete waste of everyone's time.  A waste of Judge Mabey's

10   time.  And when Judge Mabey, after all that he did, said the

11   parties have agreed to a settlement, that that's not

12   meaningful?

13           MR. BICKS:  No, it's the risk that when they drafted

14   an agreement and sent it to us that says this is binding as

15   soon as we sign it, that if we never signed it, it never became

16   binding.

17           THE COURT:  Okay, thank you.

18           MR. BICKS:  Thank you.

19           THE COURT:  Any response, Mr. Cox?

20           MR. COX:  No, Your Honor, unless you want me to

21   address any particular --

22           THE COURT:  Do you want to address the point about so

23   you sign it and when -- do they actually pay the money?

24           MR. COX:  Yes, Your Honor.  First of all, Your Honor

25   can certainly issue an order that orders them to pay the money

Page 21

1      whenever is appropriate.

2               THE COURT:  But counsel's point is that because the

3      agreement, or Judge Mabey's e-mail, or anything else for that

4      matter did not specify the date on which the payment would be

5      made, that that's somehow fatal to the vitality or the

6      enforceability of the settlement.

7               MR. COX:  I don't think so, Your Honor.  It's --

8      first of all, it's the nuts and bolts of the timing of the

9      releases.  It's not the actual settlement.  And if you look at

10     paragraph 39 of our opening brief and at paragraph 9, I think

11     we repeat a lot of the same cases in our reply brief, where the

12     Court is enforcing an oral agreement to settlement.  Because as

13     Your Honor pointed out very clearly, the settlement where -- we

14     have an ADR order where the parties are supposed to have

15     authority to bind the clients.  And once you see the settlement

16     -- we hereby accept the settlement, you have a settlement.

17     Whether you need to implement it with some language or

18     something is irrelevant to the fact that we had a binding

19     settlement at the time.

20               And also, I pointed it out in our brief, but also too

21     the effectiveness of the release, you know, that Section 5,

22     what it says is the releases are effective upon signature and

23     payment, which is how releases work, right?  You don't release

24     somebody until the payment is made.  But here, if you notice in

25     the briefing, payment gets taken out in the first reference in

Page 22

1    Shinhan's opposition and then it's never part of the bolded

2    section of that.  And I think they're trying to run away from

3    that.  And the fact of the matter is, is the release agreement

4    reads like a release agreement, which is okay, the release is

5    going to be effective a certain number of days after payment.

6    That is ministerial, right, because all it is is implementing

7    the settlement reached by Judge Mabey on April 20th.

8            And one thing I'd also point out is this merger

9    agreement argument is -- the agreement -- the release agreement

10   wasn't signed.  So Shinhan wants to take advantage of the terms

11   of the agreement as if it's been signed, but it wasn't.  So we

12   had the settlement.  And so you can't have it both ways.

13           THE COURT:  Right.  And there's always an implied

14   covenant of good faith and fair dealing, right?

15           MR. COX:  Absolutely.

16           THE COURT:  Okay.  Thank you.

17           MR. COX:  Thank you, Your Honor.

18           THE COURT:  All right.  Thank you very much.  I'm

19   going to give you -- the way this will work is I'm going to

20   read something.  It will probably take me about 10 or 15

21   minutes to read it.  You can get a transcript when it's ready.

22   I'll ask you to prepare an order and you can in the order refer

23   to the transcript and/or attach it and that will provide you a

24   basis for any subsequent action that you wish to take.  All

25   right.

1          Before the Court is Lehman Brothers Special Finance

2     Inc.'s, LBSF's motion pursuant to the amended SPV ADR order and

3     section 105(a) of the Bankruptcy Code to: 1) enforce settlement

4     and release agreement; and 2) grant attorney's fees and

5     mediator's fees and costs.  The motion.  Shinhan opposes the

6     motion.

7          Background.  The facts relevant to the narrow issue

8     before the Court as undisputed, as evidenced by the joint

9     stipulation of facts signed by the parties on January 27th,

10    2017, and subsequently entered by the Court.  On September

11    14th, 2010, LBSF initiated an adversary proceeding captioned

12    LBSF v. Bank of American National Association, et al., case

13    number 10-03547 against some 250 defendant noteholders, note

14    issuers, and indentured trustees seeking inter alia to recover

15    approximately $1 billion that was distributed to the defendant

16    noteholders following the commencement of the Lehman Brothers'

17    Chapter 11 proceedings in September 2008.

18          The action is colloquially known as the distributed

19    action.  Shinhan is one of the defendants named in the

20    distributed action.  Shinhan denied that it had any liability

21    to Lehman in the distributed action.  In April 2016, while

22    fully briefed dispositive motions in the distributed action

23    were sub judice in this Court, LBS and Shinhan engaged in

24    mediation discussions pursuant to the amended SBV ADR order.

25    The Honorable Ralph Mabey served as mediator.

Page 24

1        At the conclusion of the mediation, Judge Mabey

2    proposed that the parties settle the matter by paying LBSF a

3    certain amount, the settlement amount.  On or about April 20th,

4    2016, both LBSF and Shinhan accepted Judge Mabey's proposal as

5    to the settlement amount and Judge Mabey asked LBSF to provide

6    settlement documentation to Shinhan.

7        The next day, LBSF sent a draft release agreement,

8    the release agreement, to Shinhan's counsel for review and

9    comment.  Shinhan proposed certain changes to the release

10   agreement, which LBSF subsequently accepted.  Specifically, on

11   May 11th, 2016, Shinhan revised Section 4 of the release

12   agreement to require that the parties execute hard copies as

13   opposed to electronic copies and in accordance with that

14   change, revised the date of the release agreement to be dated

15   as of the date Shinhan executed its respective hard copies.

16       Shinhan's counsel later requested that LBSF: 1. Send

17   Shinhan two original signed copies of the release agreement;

18   and 2. Provide documents establishing Lehman's signatory

19   authority to sign the release agreement.

20       On May 27th, 2016, LBSF advised Shinhan's counsel

21   that LBSF had sent the requested materials to Shinhan.  On June

22   17th, 2016, Shinhan's counsel notified LBSF that Shinhan was

23   unable to complete its internal approval process because

24   certain staff members were out of the office and that signature

25   and payment would most likely occur the week of June 27th,

Page 25

1   2016.

2          On the morning of June 28th, 2016, Shinhan's counsel

3   confirmed by e-mail that Shinhan had completed its internal

4   approval process and that the release agreement would be signed

5   by June 30th, 2016.  Several hours after such e-mail was sent,

6   this Court issued its decision in the distributed action,

7   dismissing LBSF's claims against, among others, Shinhan.  Two

8   days after the Bank of America decision was rendered, Shinhan's

9   counsel advised LBSF that it had not signed the release

10  agreement and was still "evaluating" the Bank of America

11  decision.

12         LBSF replied that it did not believe that the Bank of

13  America decision affected the parties' settlement agreement and

14  that Shinhan should transfer the settlement amount to LBSF.

15  The parties returned to Judge Mabey to attempt to resolve the

16  dispute, but were unable to reach a consensual resolution.  As

17  a result, the parties have now sought the Court's intervention

18  in this matter.

19         As described in the motion, LBSF asserts that the

20  parties had a binding and enforceable settlement agreement as

21  of April 20th, 2016, when the parties accepted Judge Mabey's

22  settlement proposal.  LBSF urges the Court to treat the April

23  20th settlement as final, binding, and enforceable, despite the

24  fact that Shinhan never signed the release agreement.

25         Shinhan, on the other hand, contends that the parties

Page 26

1   did not enter into an enforceable settlement on April 20th,

2   2016, and that certain provisions in the release agreement

3   preclude a finding that the release agreement is an enforceable

4   agreement in the absence of Shinhan's signature.  For the

5   reasons that follow, the Court finds in favor of LBSF.

6           II. Discussion.  A.  Applicable law.

7           The Second Circuit has held that in deciding whether

8   an unexecuted settlement agreement -- unexecuted agreement is

9   binding and enforceable, Courts must examine four factors: 1.

10  Whether there has been an express reservation of the right not

11  to be bound in the absence of a writing; 2. Whether there has

12  been partial performance of the contract; 3. Whether all of the

13  terms of the alleged contract have been agreed upon; and 4.

14  Whether the agreement at issue is the type of contract that is

15  usually committed to writing.  Winston v. Mediafire

16  Entertainment Corporation, 777 F.2d 78 at 80 (Second Circuit,

17  1985).

18          No single factor is dispositive and the circumstances

19  may be shown by oral testimony, correspondence, or other

20  preliminary or partially complete writings.  Id at 81.

21          Under the first Winston factor, the Court must

22  consider whether there was an express of the right not to be

23  bound in the absence of a writing.  When the parties accepted

24  Judge Mabey's settlement proposal on April 20th, 2016, neither

25  party reserved the right to be bound by such settlement, only

Page 27

1   upon signature of an agreement.  Moreover, nothing in the

2   correspondence between the parties suggests that Shinhan

3   reserved the right to be bound to the April 20th, 2016

4   settlement only upon signature of an agreement.

5          Following the parties acceptance of Judge Mabey's

6   settlement proposal, counsel for Shinhan repeatedly stated that

7   the parties reached an agreement on the terms of the release

8   agreement and that it would remit payment once its internal

9   approval process was complete.  For example, after LBSF sent

10  Shinhan two executed copies of the release agreement, Shinhan's

11  counsel responded that, "Shinhan is trying to get everything

12  signed up and payment remitted by the end of this week."  Two

13  weeks later, Shinhan's counsel wrote to LBSF that, "Shinhan

14  just confirmed that they have completed their internal approval

15  process and the settlement agreement will be signed by

16  Thursday, June 30th."  At no point before the Bank of America

17  decision was issued did Shinhan express an intent not to sign

18  the release agreement.  In fact, the aforementioned

19  correspondence with LBSF reveals precisely the opposite.

20          Although Shinhan points to Sections 4 and 5 of the

21  release agreement, both of which state that the release

22  agreement will become effective upon execution by both parties,

23  Shinhan's reliance on such language is misplaced.  This

24  language simply means that LBSF's release automatically becomes

25  effective upon execution and payment, not that the April 20th,

Page 28

1    2016 settlement itself will become effective upon signing the

2    release agreement and paying the settlement amount.

3         Moreover, although Shinhan contends that certain

4    provisions in the release agreement manifests an implied intent

5    not to be bound, the correspondence between April 20th, 2016

6    and the day the Bank of America decision was issued undercuts

7    that argument because during this time, Shinhan repeatedly

8    assured LBSF that it intended to sign the release agreement.

9         As LBSF correctly points out, the real issue in this

10   dispute is not the enforceability of the April 20th, 2016

11   settlement, but instead whether Shinhan can renege from the

12   April 20th settlement, purportedly because it did not sign a

13   document entitled "release agreement."

14        Only after this Court issued the Bank of America

15   decision did Shinhan, for the first time, communicate that it

16   was still evaluating its agreement with LBSF.  The intent

17   manifest here is not the intent not to be bound absent a signed

18   writing.  Rather it is a change of heart and strategy following

19   this Court's Bank of America decision.

20        The first Winston factor weighs in favor of enforcing

21   the April 20th settlement and the release agreement.  Under the

22   second Winston factor, the Court must consider whether there

23   has been partial performance of the contract.  There is no

24   dispute that LBSF has not released Shinhan or dismissed Shinhan

25   from the adversary proceeding.  There was also no dispute that

1  Shinhan has not remitted the settlement amount or released

2  LBSF.  These are basic elements of consideration that would

3  have been due under the release agreement.  It is undisputed

4  that they have not been exchanged.

5          Although LBSF states that its execution of the

6  release agreement constitutes partial performance, the Second

7  Circuit rejected such an argument in Winston, finding that

8  there was no partial performance despite one side signing of

9  the alleged agreements at issue.  Because neither LBSF nor

10  Shinhan has partially performed under the release agreement,

11  the second Winston factor weighs against enforcing the April

12  20th settlement and the release agreement.

13          Under the third Winston factor, the Court must

14  consider whether all of the terms of the alleged contract have

15  been agreed upon.  Judge Mabey confirmed in an e-mail on April

16  20th, 2016 that the parties agreed to settle the dispute

17  through the payment of the settlement amount to LBSF "in full

18  and complete settlement."  At no point on or after April 20th

19  did either party suggest that Judge Mabey mischaracterized or

20  omitted material terms of the settlement that was reached on

21  April 20th.

22          Moreover, based on the correspondence between the

23  parties, it is evident that the parties agreed to the material

24  terms of the release agreement and that there was nothing left

25  to negotiate.  In fact, neither party disputes that by the time

Page 30

1    the Bank of America decision was issued, all material terms in

2    the release agreement were agreed upon and the only remaining

3    item was to obtain Shinhan's signature.  As such, the third

4    Winston factor weighs in favor of enforcing the April 20th

5    settlement and the release agreement.

6            Under the fourth Winston factor, the Court must

7    consider whether the agreement at issue is the type of contract

8    that is usually committed to writing.  While settlement

9    agreements are generally reduced to writing, in this case there

10   was, indeed, a complete, written release agreement.  Its only

11   missing element was Shinhan's signature.  This weighs in favor

12   of enforcing the April 20th settlement agreement, even absent

13   Shinhan's signature on the release agreement.

14           By the time the Bank of America decision was issued,

15   Shinhan had successfully completed its internal approval

16   process and indicated that it intended to sign the release

17   agreement on June 30th.  Most notably, it was upon issuance of

18   this Court's Bank of America decision directing dismissal of

19   LBSF's claims against Shinhan that Shinhan communicated it was

20   still evaluating its position.  This undercuts not only the

21   purpose of engaging in mediation, but also undermines the point

22   of reducing a settlement to writing.

23           Strategic delay ought not to be able to be used to

24   enhance one's position or to renege on an otherwise binding

25   oral agreement.  The Court finds that analysis of the fourth

Page 31

1    Winston factor weighs in favor of enforcing the April 20th

2    settlement and the release agreement.  On balance, therefore,

3    the Court finds that the first, third, and fourth Winston

4    factors weigh in favor of enforcing the April 20th settlement

5    and the release agreement.

6              Finally, the amended SPV ADR order provides for

7    sanctions if a party has not complied with such order in good

8    faith.  Despite LBSF's request for sanctions in the form of

9    attorney's fees and mediator fees, the Court finds that

10   sanctions are not warranted in this case.  It is clear that

11   LBSF and Shinhan have dramatically divergent views regarding

12   the enforceability of the settlement agreement between the

13   parties.  This circumstance, without more, does not justify

14   imposing sanction on Shinhan for failing to remit the

15   settlement amount.  The undisputed evidence reflects that

16   Shinhan -- that LBSF and Shinhan participated in the mediation

17   process in accordance with the amended SPV ADR order.

18   Shinhan's post Bank of America decision reevaluation of the

19   release agreement does not, in this Court's view, rise to the

20   level of sanctionable conduct.  The Court therefore denies

21   LBSF's request for sanction.

22              Accordingly, based on the pleadings submitted by the

23   parties and upon the full record of today's hearing, the Court

24   grants the motion -- the Court finds that the Winston factors

25   on balance weigh in favor of finding that an enforceable

Page 32

1    settlement exists between the parties, notwithstanding the fact

2    that Shinhan did not sign the release agreement.  The parties

3    are directed to submit an order in accordance with this ruling.

4              All right?

5         (Chorus of thank you)

6              THE COURT:  All right, so if I could please ask you

7    to share a draft agreement among the parties and then send it

8    to chambers with an indication that everybody signs off on the

9    language, if not the substance, all right?

10        (Chorus of thank you)

11             MS. MARCUS:  May I discuss the last issue?

12             THE COURT:  Yes, Ms. Marcus.

13             MS. MARCUS:  It's really a procedural matter, Your

14   Honor --

15             THE COURT:  Okay.

16             MS. MARCUS:  -- that relates actually to the ADR

17   order for --

18             THE COURT:  Okay.

19             MS. MARCUS:  -- affirmative claims on a derivatives

20   contracts.  As Your Honor I'm sure will recall, every month

21   since September of 2009 when Judge Peck issued that order, a

22   partner of Weil has been reporting to the Court on the number

23   of settlements, the number of pending ADRs going forward.

24   We're now at a point where the volume of remaining open ADR

25   receivables is so small that we'd like to spare the estate the

Page 33

1    expense of doing that monthly reporting.  And what we suggest

2    is that we'll do it semi-annually, so perhaps in June and

3    December of each year.  I don't know if we need to submit a

4    revised order or how you'd like to handle that.

5              THE COURT:  I'll leave that to you.  I don't know if

6    folks out in the world look forward to that report every month

7    and might have a question if it doesn't appear, you could

8    simply submit an order on notice of presentment that indicates

9    the change.

10             MS. MARCUS:  Okay.  Thank you, Your Honor.  We'll do

11   that.

12             THE COURT:  That sounds fine.

13             MS. MARCUS:  And the first -- I guess we were due to

14   file a report today, we're not going to do that if that's okay

15   with Your Honor.

16             THE COURT:  That's fine.  It's a good thing that the

17   numbers are getting smaller.

18             MS. MARCUS:  Yes, I agree.

19             THE COURT:  All right?

20             MS. MARCUS:  Thank you, Your Honor.

21             THE COURT:  Thank you.  Okay.  Thank you.

22        (Chorus of thank you)

23        (Whereupon, these proceedings were concluded at 10:43

24   a.m.)

25

1                          I N D E X

2

3                          RULINGS

4                                                    PAGE

5      Motion pursuant to the Amended SPV ADR Order and        23

6      Section 105(a) of the Bankruptcy Code to enforce

7      settlement and release agreement

8

9      Motion pursuant to the Amended SPV ADR Order and        31

10     Section 105(a) of the Bankruptcy Code to grant

11     attorneys and mediators fees and costs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    C E R T I F I C A T I O N

 2

 3        I, Jamie Gallagher, certify that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6

 7    _____

 8    Jamie Gallagher

 9

10

11    DATE:  March 22, 2017

12

13

14    Veritext Legal Solutions

15    330 Old Country Road

16    Suite 300

17    Mineola, NY 11501

18

19

20

21

22

23

24

25
```

| & | | |
|---|---|---|
| **&** 3:2,9 5:6 | | |

| 0 | | |
|---|---|---|
| **08-13555** 1:7 | | |

| 1 | | |
|---|---|---|
| **1** 23:3,15 24:16 26:9 | | |
| **10** 20:7 22:20 | | |
| **10-03547** 23:13 | | |
| **10022** 3:19 | | |
| **10153** 3:12 | | |
| **105** 2:2 5:12 23:3 34:6,10 | | |
| **106th** 5:8 | | |
| **10:04** 1:18 | | |
| **10:30** 18:4 | | |
| **11** 20:7 23:17 | | |
| **11501** 35:17 | | |
| **11th** 24:11 | | |
| **14th** 23:11 | | |
| **15** 22:20 | | |
| **1601** 4:3 | | |
| **17th** 24:22 | | |
| **19** 18:21,23 | | |
| **1985** 26:17 | | |

| 2 | | |
|---|---|---|
| **2** 23:4 24:18 26:11 | | |
| **200** 12:11 | | |
| **20006** 4:4 | | |
| **2008** 23:17 | | |
| **2009** 32:21 | | |
| **201** 3:4 | | |
| **2010** 23:11 | | |
| **2016** 23:21 24:4 24:11,20,22 25:1 25:2,5,21 26:2,24 27:3 28:1,5,10 29:16 | | |
| **2017** 1:17 23:10 35:11 | | |
| **20th** 7:2 10:8,16 12:7,25 16:21 | | |

19:10,24 22:7 24:3 25:21,23 26:1,24 27:3,25 28:5,10,12,21 29:12,16,18,21 30:4,12 31:1,4

**21** 1:17
**2104** 8:15
**22** 35:11
**23** 34:5
**250** 23:13
**27th** 23:9 24:20 24:25
**28th** 25:2

| 3 | | |
|---|---|---|
| **3** 26:12 | | |
| **30** 13:9 | | |
| **300** 35:16 | | |
| **30th** 25:5 27:16 30:17 | | |
| **31** 34:9 | | |
| **330** 35:15 | | |
| **36** 20:6 | | |
| **39** 21:10 | | |

| 4 | | |
|---|---|---|
| **4** 24:11 26:13 27:20 | | |

| 5 | | |
|---|---|---|
| **5** 21:21 27:20 | | |
| **54675** 2:1 | | |
| **599** 3:18 | | |

| 6 | | |
|---|---|---|
| **60** 6:5 | | |

| 7 | | |
|---|---|---|
| **767** 3:11 | | |
| **777** 26:16 | | |
| **78** 26:16 | | |

| 8 | | |
|---|---|---|
| **80** 26:16 | | |
| **81** 26:20 | | |

| 9 | | |
|---|---|---|
| **9** 21:10 | | |
| **94065** 3:5 | | |

| a | | |
|---|---|---|
| **a.m.** 33:24 | | |
| **able** 19:2 30:23 | | |
| **absence** 26:4,11 26:23 | | |
| **absent** 28:17 30:12 | | |
| **absolutely** 9:25 10:23 11:7 20:1 22:15 | | |
| **accept** 21:16 | | |
| **acceptance** 27:5 | | |
| **accepted** 24:4,10 25:21 26:23 | | |
| **accurate** 35:4 | | |
| **accurately** 16:7 | | |
| **accusing** 8:3 | | |
| **action** 9:6 22:24 23:18,19,20,21,22 25:6 | | |
| **actions** 17:2 | | |
| **actual** 21:9 | | |
| **add** 5:25 14:23 | | |
| **additional** 8:24 9:4 | | |
| **address** 5:19 6:5 7:8 16:1 20:21,22 | | |
| **addressed** 8:17 | | |
| **adjourned** 5:10 | | |
| **administrative** 13:23 | | |
| **adr** 2:1 5:12 21:14 23:2,24 31:6,17 32:16,24 34:5,9 | | |
| **adrs** 32:23 | | |
| **advanced** 14:9 17:22 | | |
| **advantage** 22:10 | | |
| **adversary** 23:11 28:25 | | |

**advised** 24:20 25:9
**affiliated** 5:7
**affiliates** 3:3,10
**affirmative** 32:19
**aforementioned** 27:18
**ago** 13:9
**agree** 16:10 33:18
**agreed** 8:10 10:15 10:24 12:6 13:3 20:11 26:13 29:15 29:16,23 30:2
**agreement** 2:3 5:13 6:13 7:9 10:3 10:9,17 11:7 12:2 12:10,15,15 13:12 13:14,15 15:20,21 15:23,24 16:4 18:22 19:1,3,5,10 19:11,12,20,24 20:14 21:3,12 22:3,4,9,9,9,11 23:4 24:7,8,10,12 24:14,17,19 25:4 25:10,13,20,24 26:2,3,4,8,8,14 27:1,4,7,8,10,15 27:18,21,22 28:2 28:4,8,13,16,21 29:3,6,10,12,24 30:2,5,7,10,12,13 30:17,25 31:2,5 31:12,19 32:2,7 34:7
**agreements** 6:17 6:18 7:22 29:9 30:9
**al** 23:12
**alia** 23:14
**alleged** 26:13 29:9 29:14

[amended - circumstances]                                                        Page 2

**amended**  2:1 5:12
23:2,24 31:6,17
34:5,9
**america**  9:5 25:8
25:10,13 27:16
28:6,14,19 30:1
30:14,18 31:18
**american**  23:12
**amount**  24:3,3,5
25:14 28:2 29:1
29:17 31:15
**analysis**  19:18
30:25
**annually**  33:2
**answer**  9:1 15:22
19:2
**appeal**  9:5,6,10
17:10
**appear**  17:14 33:7
**appeared**  13:22
**applicable**  26:6
**application**  17:17
**applies**  8:20
**apply**  14:11
**appreciate**  9:23
11:15 14:14 16:18
**appropriate**  21:1
**approval**  24:23
25:4 27:9,14
30:15
**approximately**
23:15
**april**  7:2 10:8,15
12:7,25 16:21
19:10,24 22:7
23:21 24:3 25:21
25:22 26:1,24
27:3,25 28:5,10
28:12,21 29:11,15
29:18,21 30:4,12
31:1,4
**arguing**  7:20

**argument**  8:15
12:19 14:9 17:22
17:23,25 18:16
22:9 28:7 29:7
**arguments**  11:16
**asked**  24:5
**asking**  8:23 10:6,6
10:8 19:12,16
**asserts**  25:19
**association**  23:12
**assured**  28:8
**attach**  22:23
**attempt**  25:15
**attorney**  3:3,10
4:2
**attorney's**  8:22,24
23:4 31:9
**attorneys**  2:3 3:17
34:11
**authority**  8:18
21:15 24:19
**automatically**
27:24
**avenue**  3:11,18
**aware**  16:2,2

**b**

**b**  1:21 7:12 11:13
14:3,18,22
**back**  9:11
**background**  23:7
**backwards**  15:10
**bad**  14:16 15:2,11
**balance**  31:2,25
**bank**  5:14 9:5
23:12 25:8,10,12
27:16 28:6,14,19
30:1,14,18 31:18
**bankruptcy**  1:1
1:13,23 2:2 5:13
23:3 34:6,10
**bargain**  8:6,8
**based**  7:16 8:9
29:22 31:22

**basic**  29:2
**basically**  7:20
**basis**  17:17 22:24
**behalf**  5:6 17:1,6
**believe**  9:25 12:1
18:13 19:23 25:12
**benefit**  13:23
**best**  9:17
**bicks**  3:21 9:15,17
9:20,23,25 10:2
10:20,22 11:3,5
11:11,18,20,25
12:24 13:4,6
14:14 15:7,16
16:11,13,15 17:1
17:4,21 18:15
19:22 20:13,18
**billion**  23:15
**bind**  8:19 21:15
**binding**  8:14
20:14,16 21:18
25:20,23 26:9
30:24
**bit**  13:16
**bolded**  22:1
**bolts**  21:8
**bound**  7:23 13:11
13:15 26:11,23,25
27:3 28:5,17
**bowling**  1:14
**brian**  4:6
**brief**  9:17,20
15:19 18:17,20,21
18:24 20:5,6
21:10,11,20
**briefed**  7:9 23:22
**briefing**  6:6,20
7:11,14 21:25
**briefly**  6:3
**briefs**  6:7
**brothers**  1:7 3:3
3:10 5:6 23:1,16

**c**

**c**  1:22 3:1 5:1 35:1
35:1
**ca**  3:5
**called**  18:2,4,6,14
**calling**  10:7
**calls**  19:6
**captioned**  23:11
**case**  1:7 23:12
30:9 31:10
**cases**  6:16,17
12:12,13,13 15:18
20:6 21:11
**category**  14:25
**caused**  15:14,16
**certain**  22:5 24:3
24:9,24 26:2 28:3
**certainly**  5:21 6:1
16:2 20:25
**certify**  35:3
**chadha**  3:22
**challenge**  18:25
**chambers**  32:8
**change**  15:14,17
15:22,23 24:14
28:18 33:9
**changed**  14:2
**changes**  24:9
**chapman**  1:22
**chapter**  23:17
**characterize**  16:6
16:7
**chorus**  5:4 32:5
32:10 33:22
**chris**  5:15 9:20
10:2
**christopher**  3:7
**circuit**  26:7,16
29:7
**circumstance**
31:13
**circumstances**
26:18

**cite** 6:17 14:24
20:5
**cited** 15:18
**claims** 25:7 30:19
32:19
**clause** 12:3,17
**clear** 10:23 14:15
17:8,21 31:10
**clearly** 21:13
**client** 12:8 15:8
16:2,17 17:6
**clients** 15:9 16:23
21:15
**code** 2:2 23:3 34:6
34:10
**colloquially** 23:18
**comes** 14:6 16:22
**commencement**
23:16
**comment** 24:9
**committed** 26:15
30:8
**communicate**
28:15
**communicated**
30:19
**companies** 8:19
**complete** 20:9
24:23 26:20 27:9
29:18 30:10
**completed** 25:3
27:14 30:15
**completely** 12:19
17:12
**complicated** 14:8
**complied** 31:7
**compromise** 7:16
8:8
**compromised**
7:23
**concept** 13:17
**concluded** 11:22
33:23

**conclusion** 14:12
24:1
**conditions** 18:22
**conduct** 31:20
**confirmed** 25:3
27:14 29:15
**consensual** 25:16
**consider** 26:22
28:22 29:14 30:7
**consideration**
29:2
**constellation**
14:20
**constitutes** 29:6
**constructed** 11:16
**consummating**
16:19,22
**contained** 12:3
**contains** 12:17,17
**contends** 25:25
28:3
**context** 12:7
**contract** 26:12,13
26:14 28:23 29:14
30:7
**contracts** 32:20
**copies** 13:25
24:12,13,15,17
27:10
**corporation** 26:16
**correctly** 28:9
**correspondence**
26:19 27:2,19
28:5 29:22
**correspondences**
20:3
**costs** 2:4 9:9 23:5
34:11
**counsel** 24:8,16
24:20,22 25:2,9
27:6,11,13
**counsel's** 21:2

**country** 35:15
**couple** 6:7 9:21
13:13
**course** 19:9
**court** 1:1,13 5:2
5:13,18,21,23 6:4
6:10 7:4,13,18
8:20 9:3,13,16,19
9:22,24 10:1,17
10:21,25 11:4,10
11:12,19,24 12:22
13:1,5,19 14:18
15:13 16:6,12,14
16:24 17:3,8
18:10 19:19 20:8
20:17,19,22 21:2
21:12 22:13,16,18
23:1,8,10,23 25:6
25:22 26:5,21
28:14,22 29:13
30:6,25 31:3,9,20
31:23,24 32:6,12
32:15,18,22 33:5
33:12,16,19,21
**court's** 25:17
28:19 30:18 31:19
**courts** 26:9
**covenant** 22:14
**cox** 3:7 5:15 6:3,5
6:11 7:5,14,19 9:8
9:14 14:17 16:2
20:19,20,24 21:7
22:15,17
**created** 17:9

### d

**d** 5:1 34:1
**date** 21:4 24:14
24:15 35:11
**dated** 24:14
**day** 24:7 28:6
**days** 11:6 22:5
25:8

**dc** 4:4
**dealing** 22:14
**debtor** 1:9
**debtors** 5:7
**december** 33:3
**decide** 10:15
13:11
**decided** 14:4
17:15
**deciding** 13:21
26:7
**decision** 14:3,6,19
16:22 17:12 18:13
25:6,8,11,13
27:17 28:6,15,19
30:1,14,18 31:19
**defendant** 23:13
23:15
**defendants** 14:20
14:23 17:1 23:19
**delay** 13:20,22
16:8,16 30:23
**denied** 23:20
**denies** 31:20
**derivatives** 32:19
**described** 25:19
**despite** 25:23 29:8
31:8
**different** 15:8
**directed** 32:3
**directing** 30:18
**disagree** 11:20
**discovery** 8:4 18:6
**discuss** 7:10,10
32:11
**discussed** 19:25
20:2,3
**discussion** 17:14
26:6
**discussions** 23:24
**disingenuous**
14:18

[dismissal - foregoing]                                                                    Page 4

**dismissal**  30:18
**dismissals**  6:22
**dismissed**  28:24
**dismissing**  25:7
**dispositive**  7:1
  23:22 26:18
**dispute**  5:24
  17:11 25:16 28:10
  28:24,25 29:16
**disputed**  13:21
  17:15
**disputes**  29:25
**disregard**  13:7,8
**distilled**  17:24
**distributed**  23:15
  23:18,20,21,22
  25:6
**district**  1:2
**divergent**  31:11
**doc**  2:1
**document**  19:6
  28:13
**documentation**
  24:6
**documents**  24:18
**doing**  8:3 17:13
  17:25 33:1
**door**  15:1
**doubt**  13:24
**draft**  12:2,16,17
  13:12 24:7 32:7
**drafted**  20:13
**dragging**  16:4,7
**dramatically**
  31:11
**due**  29:3 33:13

**e**

**e**  1:21,21 3:1,1 5:1
  5:1 8:18 21:3 25:3
  25:5 29:15 34:1
  35:1
**effective**  12:18
  15:21 21:22 22:5

27:22,25 28:1
**effectiveness**
  21:21
**either**  10:14 15:10
  15:12 29:19
**electronic**  24:13
**element**  30:11
**elements**  29:2
**enforce**  2:2 5:13
  10:7,9 19:12 23:3
  34:6
**enforceability**
  21:6 28:10 31:12
**enforceable**  25:20
  25:23 26:1,3,9
  31:25
**enforcing**  19:9
  21:12 28:20 29:11
  30:4,12 31:1,4
**engage**  17:14
  18:11
**engaged**  23:23
**engaging**  16:3
  30:21
**enhance**  30:24
**enter**  26:1
**entered**  23:10
**entertainment**
  26:16
**entitled**  28:13
**equal**  9:11
**equitable**  8:22
**esq**  3:7,14,21,22
  4:6
**essence**  17:24
**essential**  10:23
**establishing**  24:18
**estate**  32:25
**et**  23:12
**evaluating**  25:10
  28:16 30:20
**everybody**  7:14
  13:3 32:8

**everyone's**  20:9
**evidence**  31:15
**evidenced**  23:8
**evident**  29:23
**exact**  16:3
**exactly**  18:8
**examine**  26:9
**example**  27:9
**exchanged**  29:4
**exchanges**  8:18
**execute**  24:12
**executed**  24:15
  27:10
**execution**  27:22
  27:25 29:5
**exhibit**  14:24
**exists**  32:1
**expense**  33:1
**express**  26:10,22
  27:17

**f**

**f**  1:21 35:1
**f.2d**  26:16
**face**  12:19
**faced**  15:2
**fact**  11:17,17,21
  12:15,16 13:7,8
  18:3,3 21:18 22:3
  25:24 27:18 29:25
  32:1
**factor**  8:11,13
  26:18,21 28:20,22
  29:11,13 30:4,6
  31:1
**factors**  8:9 14:11
  17:18 26:9 31:4
  31:24
**facts**  13:21 17:11
  17:15,18 23:7,9
**factually**  16:7
**failing**  31:14
**fair**  9:10 22:14

**fairly**  8:17
**faith**  22:14 31:8
**falls**  14:20
**familiar**  5:23
**fatal**  19:13 21:5
**favor**  7:25 8:1
  10:13 14:23 26:5
  28:20 30:4,11
  31:1,4,25
**federal**  8:20
**feel**  17:9
**feeling**  17:13
**fees**  2:4 8:22,24
  8:25 9:4,9 23:4,5
  31:9,9 34:11
**felt**  14:5
**fifth**  3:11
**file**  33:14
**final**  25:23
**finally**  31:6
**finance**  23:1
**finding**  17:10 26:3
  29:7 31:25
**finds**  26:5 30:25
  31:3,9,24
**fine**  14:2 33:12,16
**first**  8:11 20:24
  21:8,25 26:21
  28:15,20 31:3
  33:13
**five**  11:6
**flattered**  13:18
**flaw**  19:13
**fly**  12:19
**folks**  16:18 18:15
  33:6
**follow**  26:5
**following**  23:16
  27:5 28:18
**foot**  16:4,6
**footing**  9:11
**foregoing**  35:3

forget 10:24
form 31:8
forth 17:16 18:22
forthcoming
  11:10
forward 5:9,11
  9:9 32:23 33:6
forwards 15:10
four 5:10 26:9
fourth 30:6,25
  31:3
full 7:11 29:17
  31:23
fully 23:22
functional 6:21
funded 16:20,20

**g**

g 5:1
gain 17:24
gallagher 2:25
  35:3,8
game 18:1
gates 3:16 4:1
  17:1
general 7:5
generally 14:21
  30:9
getting 7:8 9:12
  33:17
give 7:23 22:19
giving 13:23
go 14:5 20:7
going 5:9,11 6:6
  6:15,24 7:17,23
  7:24,25 9:1,5,9,9
  10:18,19 17:19
  18:1,10 19:20,21
  22:5,19,19 32:23
  33:14
good 5:5 8:1 9:15
  9:16 13:9 14:10
  14:11,16 15:2,10
  16:17 22:14 31:7

33:16
gotshal 3:2,9 5:6
grant 2:3 23:4
  34:10
grants 31:24
great 19:18
greedy 8:23
green 1:14
guess 10:4 18:25
  33:13

**h**

hand 25:25
handed 10:5
handle 33:4
handled 5:14
happened 11:14
  15:19
happy 5:25 7:10
  9:1
hard 24:12,15
hazard 7:8 13:17
  16:1
hear 5:25
hearing 2:1 5:9
  31:23
heart 28:18
held 26:7
highlight 6:7
hold 16:4
holdings 1:7 3:3
  3:10 5:7
hon 1:22
honor 5:5,14 6:3
  7:17 8:21 9:2,14
  9:15,25 10:22
  11:18 17:4 18:18
  20:20,24,24 21:7
  21:13 22:17 32:14
  32:20 33:10,15,20
honorable 23:25
honored 16:17
hook 14:7

hours 25:5
housekeeping
  5:17
how's 5:2
human 14:6
humor 16:17
hypothetically
  15:13

**i**

idea 17:19
identify 18:25
ii 2:3 26:6
illusory 20:8
implement 21:17
implementing
  22:6
implied 22:13
  28:4
important 6:19
importantly 7:7
imposing 31:14
inc.'s 23:2
inconceivable
  19:25
incredibly 11:13
incurred 9:5
indentured 23:14
indicated 30:16
indicates 17:10
  33:8
indication 32:8
initiated 23:11
instant 15:20
intend 13:11
intended 13:15
  28:8 30:16
intent 13:10 27:17
  28:4,16,17
intention 6:6
  17:22
intentional 8:2,4
inter 23:14

interesting 10:2
internal 13:23
  24:23 25:3 27:8
  27:14 30:15
intervention
  25:17
irrelevant 14:21
  17:12 18:11,14
  21:18
issuance 30:17
issue 7:1,8 14:21
  15:14 19:15,15
  20:25 23:7 26:14
  28:9 29:9 30:7
  32:11
issued 11:13 18:2
  18:14 25:6 27:17
  28:6,14 30:1,14
  32:21
issuers 23:14
item 30:3

**j**

jacqueline 3:14
  5:5
jamie 2:25 35:3,8
january 23:9
john 3:21
joint 23:8
judge 1:23 13:2
  20:2,9,10 21:3
  22:7 24:1,4,5
  25:15,21 26:24
  27:5 29:15,19
  32:21
judice 23:23
june 24:21,25
  25:2,5 27:16
  30:17 33:2
justify 31:13

**k**

k 4:3
k&l 3:16 4:1 17:1

kasmarsick  15:17
key  6:16
kind  7:6
kinds  13:25
knew  7:13,14
   12:13,14 13:18
   18:5,7,7,8,8
know  7:6 12:11
   12:12,21 13:17
   14:19 16:24 18:5
   18:7,7,7,14 19:10
   19:17,18 20:1
   21:21 33:3,5
known  23:18
koosed  4:6

**l**

language  7:9
   21:17 27:23,24
   32:9
law  13:9 19:14
   26:6
lawyers  8:17
lbs  23:23
lbsf  23:11,12 24:2
   24:4,5,7,10,16,20
   24:21,22 25:9,12
   25:14,19,22 26:5
   27:9,13,19 28:8,9
   28:16,24 29:2,5,9
   29:17 31:11,16
lbsf's  23:2 25:7
   27:24 30:19 31:8
   31:21
leave  6:2 33:5
left  29:24
legal  19:18 35:14
lehman  1:7 3:3,10
   5:6 7:22 8:5 10:5
   12:1,8,11 13:13
   14:23,25 15:24
   16:18 17:5,23
   18:23,25 19:6,8
   23:1,16,21

lehman's  10:13
   24:18
level  14:6 31:20
lexington  3:18
liability  23:20
literally  14:19
   16:5,20 18:19
litigation  15:9
little  12:20,21,22
   12:22,24 13:16
llp  3:2,9
longer  14:11
look  6:16,20,25
   10:5 13:10 18:19
   19:2,4 21:9 33:6
looking  8:11
   15:10
lot  10:23 11:4,21
   21:11

**m**

mabey  13:2 20:10
   22:7 23:25 24:1,5
   25:15 29:15,19
mabey's  20:2,9
   21:3 24:4 25:21
   26:24 27:5
mail  8:18 21:3
   25:3,5 29:15
making  15:7
   17:12 19:17
manges  3:2,9 5:6
manifest  28:17
manifests  28:4
march  1:17 35:11
marcus  3:14 5:5,6
   5:19,22 32:11,12
   32:13,16,19 33:10
   33:13,18,20
mash  19:17
material  13:7
   14:1 20:4 29:20
   29:23 30:1

materials  24:21
matter  1:5 5:17
   7:15 10:13 21:4
   22:3 24:2 25:18
   32:13
matters  5:9
mean  13:17 19:22
meaningful  20:12
means  10:4 27:24
meatloaf  19:17
mediafire  26:15
mediation  23:24
   24:1 30:21 31:16
mediator  8:24
   23:25 31:9
mediator's  23:5
mediators  2:4
   34:11
meet  8:19
meeting  6:12
members  24:24
mention  5:16
merger  12:3,17
   22:8
middle  10:12 19:9
   19:16
mind  15:15,17,23
   15:23
mineola  35:17
ministerial  22:6
minute  7:18
minutes  22:21
mischaracterized
   29:19
misplaced  27:23
missing  11:22
   19:11 30:11
moment  7:17
   11:14 14:10 18:13
money  7:4 10:18
   11:2,5,8 13:1 15:4
   15:4,5,5 19:20
   20:23,25

month  10:9 32:20
   33:6
monthly  33:1
moral  7:8 13:17
   16:1
morning  5:5,8
   9:15,16 15:19
   18:2,4 25:2
motion  2:1 5:11
   7:12 8:15 23:2,5,6
   25:19 31:24 34:5
   34:9
motions  23:22
moving  11:4
multiple  13:25

**n**

n  3:1 5:1 34:1
   35:1
named  23:19
narrow  14:21
   23:7
national  23:12
nature  14:6
need  7:6 8:12
   21:17 33:3
negotiate  29:25
negotiated  13:13
   15:24 19:12
negotiation  6:15
   6:23
neither  9:6 26:24
   29:9,25
never  6:23 7:13
   10:9 11:8 19:13
   19:25 20:2,15,15
   22:1 25:24
new  1:2,15,15
   3:12,19
night  6:9
notably  30:17
note  23:13
noteholders  23:13
   23:16

notice 21:24 33:8
notified 24:22
noting 18:1
notwithstanding
  32:1
number 5:24 22:5
  23:13 32:22,23
numbers 33:17
nuts 21:8
nw 4:3
ny 3:12,19 35:17

**o**

o 1:21 5:1 35:1
obtain 30:3
obviously 11:20
  20:6
occasioned 16:9
  16:16
occur 24:25
occurred 10:8
  13:20
odds 11:13
office 24:24
okay 5:18,21 9:3
  9:13,19 10:1
  11:12,19,24 13:24
  14:23 15:1 16:12
  20:17 22:4,16
  32:15,18 33:10,14
  33:21
old 35:15
omitted 29:20
omnibus 5:9
once 21:15 27:8
one's 30:24
open 32:24
opening 21:10
opposed 24:13
opposes 23:5
opposite 27:19
opposition 22:1
option 7:21,24

oral 21:12 26:19
  30:25
order 2:2 5:12
  7:25 8:22 10:5,12
  20:25 21:14 22:22
  22:22 23:2,24
  31:6,7,17 32:3,17
  32:21 33:4,8 34:5
  34:9
orders 20:25
original 24:17
ought 12:20 30:23
outcome 17:25
  18:2
outsmart 17:5
overall 12:7

**p**

p 3:1,1 5:1
page 20:6 34:4
pages 6:5 20:6
paid 9:12 11:8
  13:1
papers 5:24 6:1
  7:21 17:16,23
paragraph 18:21
  18:23 21:10,10
paragraphs 20:7
parenthetically
  14:24
parkway 3:4
part 13:22 22:1
partial 26:12
  28:23 29:6,8
partially 26:20
  29:10
participated
  31:16
particular 18:19
  20:21
parties 7:16 9:8
  11:7 13:11,12,14
  15:24 20:11 21:14
  23:9 24:2,12

25:13,15,17,20,21
  25:25 26:23 27:2
  27:5,7,22 29:16
  29:23,23 31:13,23
  32:1,2,7
partner 5:14
  32:22
parts 11:4
party 15:5 26:25
  29:19,25 31:7
party's 8:6
passing 6:9
path 10:11 19:16
pay 7:4 11:1,5
  12:8 15:3,4 19:22
  20:23,25
paying 15:4,5,5
  24:2 28:2
payment 10:18
  19:20 21:4,23,24
  21:25 22:5 24:25
  27:8,12,25 29:17
pays 7:3
peck 32:21
pending 32:23
perfectly 17:8
performance
  26:12 28:23 29:6
  29:8
performed 29:10
period 10:21
  16:19,21 17:18
ph 15:17 20:2
piece 16:1
pieces 13:7 19:11
place 8:14
places 8:5
pleading 17:23
pleadings 31:22
please 5:2 11:11
  11:23 32:6
point 6:19 8:21
  9:4 14:15 15:8,8

18:17 20:5,22
  21:2 22:8 27:16
  29:18 30:21 32:24
pointed 21:13,20
points 6:8 27:20
  28:9
position 8:5 9:11
  15:8,11 30:20,24
possibly 11:1
post 31:18
power 8:22
precisely 12:5
  27:19
preclude 26:3
preliminary
  26:20
prepare 22:22
prepared 13:12
  15:25
presentment 33:8
pretty 9:18
principally 16:16
priya 3:22
probably 22:20
problem 10:11,20
  10:22
procedural 32:13
proceeding 23:11
  28:25
proceedings
  23:17 33:23 35:4
process 16:19
  17:12 24:23 25:4
  27:9,15 30:16
  31:17
promise 19:4
proper 12:10,14
proposal 24:4
  25:22 26:24 27:6
proposed 10:5
  24:2,9
provide 7:5 22:23
  24:5,18

**provides** 31:6
**provisions** 12:18
26:2 28:4
**purportedly**
28:12
**purpose** 30:21
**pursuant** 2:1 5:12
23:2,24 34:5,9
**put** 6:15 9:10
13:12,14,14

## q

**qualify** 14:15
**question** 11:23
12:1 19:23 33:7
**questions** 9:2
11:24
**quite** 18:16

## r

**r** 1:21 3:1 5:1 35:1
**ralph** 23:25
**reach** 25:16
**reached** 7:2,16
8:8,25 22:7 27:7
29:20
**read** 5:24 9:22
22:20,21
**reads** 22:4
**ready** 22:21
**real** 13:14 28:9
**reality** 15:17
**realize** 19:14,14
**really** 6:8,25 7:6
10:4,11 19:11
32:13
**reason** 12:4 18:17
**reasons** 13:23
26:5
**recall** 32:20
**receivables** 32:25
**recognizes** 15:18
**record** 13:20 17:9
18:4 19:3 20:1
31:23 35:4

**recover** 23:14
**reduced** 8:12 30:9
**reducing** 6:24
30:22
**redwood** 3:4,5
**reevaluating** 14:4
**reevaluation**
31:18
**refer** 22:22
**reference** 21:25
**reflects** 31:15
**regale** 11:9
**regard** 8:15
**regarding** 31:11
**reinforce** 6:11
**rejected** 29:7
**relate** 19:5
**relates** 32:16
**release** 2:3 6:13
6:14,14,18,21,23
7:9 10:3,9,19 13:2
18:22 19:1,3,4
21:21,23 22:3,4,4
22:9 23:4 24:7,8,9
24:11,14,17,19
25:4,9,24 26:2,3
27:7,10,18,21,21
27:24 28:2,4,8,13
28:21 29:3,6,10
29:12,24 30:2,5
30:10,13,16 31:2
31:5,19 32:2 34:7
**released** 7:4 11:2
28:24 29:1
**releases** 6:20,22
7:5 19:21 21:9,22
21:23
**relevant** 17:20
18:12,16 23:7
**reliance** 27:23
**remaining** 30:2
32:24

**remember** 18:13
**remit** 27:8 31:14
**remitted** 27:12
29:1
**rendered** 25:8
**renege** 28:11
30:24
**repeat** 21:11
**repeatedly** 27:6
28:7
**replied** 25:12
**reply** 18:17,20,21
18:23 21:11
**report** 33:6,14
**reporting** 32:22
33:1
**request** 16:9 31:8
31:21
**requested** 24:16
24:21
**requests** 16:16
**require** 24:12
**reservation** 8:12
26:10
**reserved** 26:25
27:3
**resolution** 25:16
**resolve** 25:15
**respectfully** 10:12
11:20
**respective** 24:15
**respond** 17:19
**responded** 27:11
**responding** 18:1
**response** 20:19
**restate** 19:23
**result** 25:17
**returned** 25:15
**reveals** 27:19
**review** 6:1 24:8
**revised** 24:11,14
33:4

**right** 5:23 6:9,10
6:12,12 7:18,21
8:5,10 9:14 11:14
11:25 14:14 15:7
21:23 22:6,13,14
22:18,25 26:10,22
26:25 27:3 32:4,6
32:9 33:19
**rights** 8:12
**rip** 7:25
**rise** 31:19
**risk** 7:16 20:13
**road** 35:15
**rounds** 13:13
**rule** 10:12
**ruling** 11:13
14:22,22 17:17
18:3 32:3
**rulings** 34:3
**run** 22:2

## s

**s** 3:1 5:1
**sanction** 31:14,21
**sanctionable**
31:20
**sanctions** 8:23,23
31:7,8,10
**saying** 13:18,19
15:10
**says** 6:14 12:18
13:10 15:21 18:21
20:14 21:22
**sbv** 23:24
**scc** 1:7
**seat** 5:2
**second** 26:7,16
28:22 29:6,11
**section** 2:2 5:12
21:21 22:2 23:3
24:11 34:6,10
**sections** 27:20
**see** 10:4,20 19:4
21:15

**seeking** 23:14
**semi** 33:2
**send** 12:2 24:16
  32:7
**sent** 12:15,16,17
  20:14 24:7,21
  25:5 27:9
**sentence** 18:20,21
**separate** 6:20
  10:3
**separately** 10:8
**september** 23:10
  23:17 32:21
**served** 23:25
**set** 17:16 18:22
**settle** 9:9 24:2
  29:16
**settled** 5:3 12:11
  12:12 15:3,4
**settlement** 2:3
  5:13 6:13,15,17
  6:18,20,24 7:1,23
  8:1,9,14,25 9:12
  10:7,18 11:1,12
  11:21 12:2,2,8,10
  12:14,24 13:3,7
  14:4,10,10,11,16
  14:16 15:11,11,12
  18:23 19:1,6,19
  20:11 21:6,9,12
  21:13,15,16,16,19
  22:7,12 23:3 24:3
  24:5,6 25:13,14
  25:20,22,23 26:1
  26:8,24,25 27:4,6
  27:15 28:1,2,11
  28:12,21 29:1,12
  29:17,18,20 30:5
  30:8,12,22 31:2,4
  31:12,15 32:1
  34:7
**settlements** 16:20
  16:22 32:23

**share** 32:7
**shelley** 1:22
**shinhan** 3:17 4:2
  5:14 7:2,20 13:22
  13:23 14:1,4,20
  15:2,14 16:9
  22:10 23:5,19,20
  23:23 24:4,6,9,11
  24:15,17,21,22
  25:3,7,14,24,25
  27:2,6,10,11,13
  27:17,20 28:3,7
  28:11,15,24,24
  29:1,10 30:15,19
  30:19 31:11,14,16
  31:16 32:2
**shinhan's** 6:16
  16:9 22:1 24:8,16
  24:20,22 25:2,8
  26:4 27:10,13,23
  30:3,11,13 31:18
**ships** 6:9
**shores** 3:4,5
**shown** 26:19
**side** 29:8
**sign** 7:22 9:1
  15:22 20:15,23
  24:19 27:17 28:8
  28:12 30:16 32:2
**signatory** 24:18
**signature** 8:16
  21:22 24:24 26:4
  27:1,4 30:3,11,13
**signed** 8:16,18
  10:9 12:18 13:15
  15:20,21 16:20
  19:13 20:15 22:10
  22:11 23:9 24:17
  25:4,9,24 27:12
  27:15 28:17
**significant** 19:7,7
**signing** 16:4 28:1
  29:8

**signs** 32:8
**simple** 7:2 12:5
  13:5,6,14 15:6
  17:16 19:19
**simplest** 11:1
**simply** 13:19
  27:24 33:8
**single** 18:25 19:5
  26:18
**sit** 7:24
**situation** 7:11,19
**slightly** 15:7
**small** 32:25
**smaller** 33:17
**solely** 13:22 16:9
  16:16
**solutions** 35:14
**somebody** 13:24
  15:19 18:11 21:24
**soon** 20:15
**sort** 18:20 19:7,16
**sought** 25:17
**sounds** 33:12
**southern** 1:2
**spare** 32:25
**speaking** 14:22
**special** 23:1
**specifically** 24:10
**specify** 21:4
**spv** 2:1 5:12 23:2
  31:6,17 34:5,9
**staff** 24:24
**state** 27:21
**stated** 27:6
**statement** 17:19
**states** 1:1 29:5
**stipulated** 8:10
**stipulation** 23:9
**straightforward**
  17:17
**strategic** 30:23
**strategy** 28:18

**street** 4:3
**strongly** 17:13
**stuff** 13:25
**stunning** 18:20
**sub** 23:23
**subject** 12:14
**submit** 9:2 32:3
  33:3,8
**submitted** 7:15,15
  31:22
**subsequent** 22:24
**subsequently**
  23:10 24:10
**substance** 32:9
**substantive** 14:1
**successfully** 30:15
**sudden** 14:3
**suggest** 20:3
  29:19 33:1
**suggestion** 17:5
**suggests** 27:2
**suite** 35:16
**super** 13:5,6
  14:15 19:19
**supposed** 12:24
  21:14
**supposedly** 16:3
**sure** 6:4 9:18 10:4
  32:20
**sweeping** 14:22

**t**

**t** 35:1,1
**table** 18:15
**take** 5:3 12:20
  14:12 18:6 19:9
  19:16 22:10,20,24
**taken** 21:25
**takes** 15:9
**talk** 13:16
**talked** 11:8
**talking** 16:25
**tell** 6:19 14:12

telling 18:12
ten 11:6
term 8:14 19:1,5
  19:25,25 20:4
terms 8:2 10:23
  11:21 18:22 22:10
  26:13 27:7 29:14
  29:20,24 30:1
testimony 26:19
thank 5:22 9:13
  9:14 20:17,18
  22:16,17,18 32:5
  32:10 33:10,20,21
  33:21,22
thing 6:21 10:2,3
  12:6,6 14:2 15:16
  20:8 22:8 33:16
things 6:11 8:12
  10:6,14,14
think 6:8,18,25
  7:6 8:14,17,19 9:8
  9:10 10:13 18:16
  18:18 21:7,10
  22:2
third 8:13 29:13
  30:3 31:3
thought 7:13 9:12
thursday 27:16
time 8:9,25 16:3
  16:19,21 20:9,10
  21:19 28:7,15
  29:25 30:14
timeline 17:16
times 5:24 9:24
timing 6:21 21:8
today 5:3,10 9:4
  33:14
today's 31:23
topic 18:11
town 13:24
transcribed 2:25
transcript 22:21
  22:23 35:4

transfer 25:14
treat 25:22
true 35:4
trustees 23:14
truth 11:14
try 18:1
trying 12:20 17:5
  17:14,24 19:8
  22:2 27:11
two 5:10 6:9 7:22
  10:6,14,14 11:6
  24:17 25:7 27:10
  27:12
type 26:14 30:7

**u**

u.s. 1:13,23
ultimately 12:10
unable 24:23
  25:16
uncontested
  13:20
undercuts 28:6
  30:20
undermines 30:21
understandably
  14:6
understanding
  12:5
understood 12:9
undisputed 17:18
  18:3 23:8 29:3
  31:15
unexecuted 26:8,8
unfortunate
  11:16
unilateral 7:21,24
united 1:1
upheld 19:20
urges 25:22
use 17:10
usually 26:15 30:8

**v**

v 23:12 26:15
veritext 35:14
view 31:19
views 31:11
vitality 21:5
volume 32:24

**w**

walk 14:25
want 7:10 13:16
  14:5 16:1 17:8,10
  20:20,22
wanted 5:16 6:7
  6:11 7:7 13:24
  14:1
wants 22:10
warranted 31:10
washington 4:4
waste 20:9,9
way 10:4 13:17
  22:19
ways 22:12
we've 7:9
week 24:25 27:12
weeks 16:8,8,15
  16:15 27:13
weigh 31:4,25
weighs 28:20
  29:11 30:4,11
  31:1
weil 3:2,9 5:6
  32:22
whiff 19:8
willing 13:6,8
win 8:5 14:25
winston 8:11,13
  13:9,10 14:11
  15:18 17:18 26:15
  26:21 28:20,22
  29:7,11,13 30:4,6
  31:1,3,24
wish 22:24

withdrawn 5:11
woke 15:19
word 6:15
work 21:23 22:19
works 19:17
world 33:6
worse 15:5
wrapped 12:10
write 12:16
writing 6:24 8:13
  8:16 26:11,15,23
  28:18 30:8,9,22
writings 26:20
written 30:10
wrote 27:13

**x**

x 1:3,11 7:3 34:1

**y**

yeah 10:17
year 33:3
years 11:6,6 13:9
york 1:2,15,15
  3:12,19