```
 1   UNITED STATES BANKRUPTCY COURT
 2   SOUTHERN DISTRICT OF NEW YORK
 3   Case No. 08-13555-scc
 4   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
 5   In the Matter of:
 6
 7   LEHMAN BROTHERS HOLDINGS INC.,
 8            Debtor.
 9   - - - - - - - - - - - - - - - - - - - - - - - - - - -x
10
11                   U.S. Bankruptcy Court
12                   One Bowling Green
13                   New York, NY  10004
14
15                   April 13, 2017
16                   3:02 PM
17
18
19
20
21   B E F O R E :
22   HON SHELLEY C. CHAPMAN
23   U.S. BANKRUPTCY JUDGE
24
25   ECRO:  JONATHAN
```

1  Hearing re:   Bench Decision re: The Plan Administrator's

2  Supplemental Objection to the Four Hundred Thirty-First

3  Omnibus Objection to Claims (Reduce and Allow Claims) [ECF

4  No. 50054]

25  Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   WEIL, GOTSHAL & MANGES LLP

 4        Attorneys for Lehman Brothers, Debtors

 5        767 5th Avenue

 6        New York, NY 10153

 7

 8   BY:  LORI F. FIFE (TELEPHONICALLY)

 9        JACKIE MARCUS

10

11   SCHILLER, KNAPP, LEFKOWITZ & HERTZEL, LLP

12        California Employment Counsel for the Plan

13        Administrator

14        950 New Loudon Road, Suite 109

15        Latham,  NY   12110

16

17   RANDY STROSS - Attorney for the Claimant

18

19

20

21

22

23

24

25
```

Page 4

```
 1                  P R O C E E D I N G S
 2              THE COURT:  Hello, good afternoon.  Are folks on
 3   the line?
 4              MR. STROSS:  Good afternoon, Your Honor, Randy
 5   Stross for the Claimant.
 6              THE COURT:  All right, thank you.  Is anyone from
 7   Weil on the line?
 8              MR. STROSS:  Your Honor, the Court Solution
 9   Dashboard indicated there is a Mr. Fail on the listen-only.
10              THE COURT:  Okay.  Should we unblock--yeah, we're
11   going to unmute the line.  Okay.  Is anyone there from Weil?
12   Our dashboard indicates that there's a live line at Weil.
13   Can someone from Weil respond?  All right, if you would just
14   give us a minute, we're going to reach out to Weil and see
15   what the problem is.
16              MR. STROSS:  Okay.
17              (Recess)
18              THE COURT:  Try it again, is anyone from Weil on
19   the line?  Who just joined the call, please?
20              MS. MARCUS:  Hi, Your Honor, it's Jackie Marcus
21   from Weil.  I'm terribly sorry.  We were on, and I couldn't
22   understand why you couldn't hear me, and then we realized we
23   were on listen-only.  We apologize for the inconvenience.
24              THE COURT:  Okay, we were just looking at our
25   screen, and it was showing that you were on a live line.  So
```

Page 5

1  in any event, we're all here, and just let me go ahead and
2  read this relatively short bench decision.  For anyone
3  unfamiliar with this type of procedure, what I'll do is I'll
4  read a decision into the record, and afterwards as the
5  parties to defat and file a short order reflecting the
6  decision, which incorporates by record, the transcript.
7  Someone will have to order a transcript.  A copy of it
8  should be made available to us, so we can make any
9  corrections that we think ought to be made.  And that will
10 form the basis of the decision.  So this is a bench decision
11 with respect the Plan Administrator's 431st Omnibus
12 Objection to Claims.  Before the Court is the Plan
13 Administrator's 431st Omnibus Objection to Claims (Reduce
14 and Allow Claims) (the "Objection") -- who just joined,
15 please?
16           WOMAN 1:  This is Lisa (indiscernible) and Nathan
17 (indiscernible).
18           THE COURT:  I'm sorry, who do you represent?
19           MAN:  We're California employment counsel for the
20 Plan Administrator.
21           THE COURT:  Okay, thank you.  Continuing, then.
22 By the Objection, the Plan Administrator seeks to disallow
23 certain damages asserted in the proofs of claim filed
24 against BNC Mortgage Inc. ("BNC") by claimants Sylvia Vega-
25 Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James,

1   Isabel Guajardo, and Coleen Denise Colombo (collectively,

2   the "Claimants").  Specifically, the Plan Administrator

3   requests an order disallowing (i) damages for defamation;

4   (ii) compensatory damages for the period subsequent to

5   October 22, 2007; and (iii) punitive damages.  On September

6   17, 2013, the Claimants filed a response to the Objection at

7   ECF No. 40127.  Thereafter, BNC and the Claimants

8   participated in three mediations in San Francisco,

9   California.  All three mediations concluded at an impasse.

10          On June 22, 2015, the Plan Administrator filed a

11  supplemental objection (ECF No. 50054).  The Claimants filed

12  an opposition to the Supplemental Objection (ECF No. 50457)

13  and the Plan Administrator subsequently filed a reply (ECF

14  No. 50497).  A hearing was held on August 4, 2015 (a

15  transcript of which is available at ECF No. 51194).  The

16  parties have, since then, exchanged a series of letters, in

17  which the parties advised the Court, in substance, that

18  further attempts at settlement have been unsuccessful and

19  requested that the Court issue a ruling on the Objection and

20  the Supplemental Objection.

21          The Claimants' proofs of claim (collectively, the

22  "Claims") are based on a November 7, 2005 complaint

23  (hereinafter the "Complaint") filed by the Claimants against

24  BNC in the Superior Court of the State of California.

25  Although the Complaint sets forth nine causes of action and

1    requests both compensatory and punitive damages, the Plan

2    Administrator, at this juncture, seeks to reduce or disallow

3    only a portion of the Claims.

4            Pursuant to the Order Pursuant to Section 105 of

5    the Bankruptcy Code, Bankruptcy Rule 9014, and General Order

6    M-390 Authorizing the Debtors to Implement Claims Hearing

7    Procedures and Alternative Dispute Resolution Procedures for

8    Claims Against Debtors (ECF No. 8474) entered in these

9    Chapter 11 cases, the standard of review to be applied at a

10   non-evidentiary hearing addressing the legal sufficiency of

11   a particular contested claim and whether the contested claim

12   states a claim, under Bankruptcy Rule 7012, is equivalent to

13   the standard applied by the Court upon a motion to dismiss

14   for failure to state a claim.  A motion to dismiss pursuant

15   to Rule 12(b)(6) of the Federal Rules of Civil Procedure

16   requires a Court to treat all allegations in the complaint

17   as true and draw all reasonable inferences in favor of the

18   nonmoving party.  Moreover, the plaintiff is required to set

19   forth "enough facts to state a claim to relief that is

20   plausible on its face."  Bell Atlantic Corporation v.

21   Twombly, 550 U.S. 544, 570 (2007).  In addition to assuming

22   the facts in a well-pleaded complaint to be true, it is well

23   settled that the Court may also rely upon any information of

24   which the Court can take judicial notice.

25            I, Claimants Have Failed to State a Claim for

1  Defamation.

2          Among other things, the Claims seek damages based
3  on a claim for defamation against BNC.  In order to state a
4  claim for defamation under California law, a plaintiff must
5  allege "the intentional publication of a statement of fact
6  that is false, unprivileged, and has a natural tendency to
7  injure or which causes special damage."  Smith v. Maldonado,
8  72 Cal. App. 4th 637, 645 (1999), as modified (June 23,
9  1999).  "[A]lthough a plaintiff need not plead the allegedly
10 defamatory statement verbatim, the allegedly defamatory
11 statement must be specifically identified, and the plaintiff
12 must plead the substance of the statement."  Jacobson v.
13 Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004).
14 "Even under liberal federal pleading standards, general
15 allegations of the defamatory statements which do not
16 identify the substance of what was said are insufficient."
17 Id.

18         Neither party disputes that California law
19 requires that the substance of the allegedly defamatory
20 statement be pled in order to sufficiently state a claim for
21 defamation.  As alleged in Paragraph 147 of the Complaint,
22 for example, the Claimants assert that "BNC employees
23 including but not limited to Sacramento branch supervising
24 account manager, Linda Harris and branch managers defendant
25 Nick Murphy and defendant Joe Pennington recklessly and

1    intentionally published false information to others

2    disparaging plaintiffs Coleen Colombo, Isabel Guajardo,

3    Linda Howard-James, Cheryl McNeil, Sylvia Vega-Sutfin and on

4    information and belief Michelle Seymour's work performance

5    and abilities."

6            The Plan Administrator argues that the allegation

7    in Paragraph 147 of the Complaint does not adequately state

8    the substance of the allegedly defamatory statements because

9    it does not allege when such statements were made, the

10   circumstances in which they were made, or what was allegedly

11   said.  See Supplemental Objection, at Paragraphs 17-18.  The

12   Claimants, on the other hand, contend that the allegation in

13   paragraph 147 is sufficient to properly plead a cause of

14   action for defamation under California law.  The Claimants

15   assert that the allegedly false statements that were made

16   by, among others, Linda Harris, Nick Murphy, and Joe

17   Pennington about the Claimants' "work performance and

18   abilities" constitute the substance of the allegedly

19   defamatory statements.

20           The Court agrees with the Plan Administrator.  The

21   allegation in the Complaint, including in Paragraph 147 of

22   the Complaint are vague and general; they do not

23   sufficiently identify the substance of the allegedly

24   defamatory statements.  Although the Claimants assert that

25   false statements were made concerning the Claimants' work

1  performance and abilities, virtually no information has been

2  provided concerning what was said about the Claimants' work

3  performance and abilities.  The Claimants need not plead the

4  defamatory statements verbatim; however, a sentence merely

5  stating that false statements were made concerning "work

6  performance and abilities" does not meet the standard for

7  stating a defamation claim under California law.

8  Accordingly, if the Claimants wish to pursue their

9  defamation claim, they must amend the Claims to plead the

10  substance of any allegedly defamatory statements made.

11            II, Claimants are Precluded from Recovering Lost

12  Wages from BNC For the Period After October 22, 2007.

13            In the Complaint, the Claimants assert that they

14  resigned from BNC in 2005 due to the defendants' alleged

15  retaliation and harassment.  See, e.g., Complaint, at

16  Paragraphs 35, 47, 59, 68, 77, and 92.  As a result, the

17  Claimants seek certain economic damages, including back pay,

18  front pay, and benefits.  See, e.g., Complaint, at Page 24.

19  The Plan Administrator, in an attempt to limit such damages,

20  contends that the Claimants should be precluded from

21  recovering lost wages for the time period beyond BNC's

22  closure in October 2007.  In support of this argument, the

23  Plan Administrator points to certain documents that evidence

24  BNC's closure.

25            Moreover, the Plan Administrator requests that the

1   Court take judicial notice of BNC's announcement of its
2   closure in August 2007 and its ultimate closing on October
3   22, 2007.  According to the Plan Administrator, BNC issued a
4   WARN notice on August 22, 2007, which stated that BNC
5   intended to cease operations at all of its U.S.  locations
6   and terminate all employees on October 22, 2007.
7   Supplemental Objection at Exhibit A.  The Plan Administrator
8   also directs the Court to LBHI's Securities and Exchange
9   Commission Form 10-K for the fiscal year ended November 30,
10  2007, which refers to the closing of BNC.  Id. at Exhibit B.
11  Pursuant to Rule 201 of the Federal Rules of Evidence, a
12  court may take judicial notice of an adjudicative fact that
13  is "not subject to reasonable dispute" because it is either
14  (i) generally known within the trial court's territorial
15  jurisdiction; or (ii) can be accurately and readily
16  determined from sources whose accuracy cannot reasonably be
17  questioned.  See Federal Rule of Evidence 201(a) and 201(b).
18  Court will take judicial notice that BNC's ultimate closure
19  occurred on October 22, 2007, based on the WARN notice and
20  LBHI's Form 10-K attached to the Supplemental Objection,
21  both of which are sources whose accuracy, in this context,
22  cannot reasonably be questioned.
23          The Plan Administrator argues that the Claimants'
24  employment would have been terminated on October 2007 with
25  the rest of BNC's workforce.  Thus, even if the Claimants

1  were able to establish BNC's liability, the Plan
2  Administrator contends that any compensatory damages would
3  be limited to the period between the date of the Claimants'
4  resignation and the closing of BNC on October 22, 2007.  See
5  Supplemental Objection, at Paragraph 20.  The Claimants
6  argue that the issue of economic damages is an issue for a
7  jury to determine under California law after assessing all
8  of the evidence.  See Opposition, at 8.  In addition, the
9  Claimants contend that they have an independent theory of
10 recovery for lost earning capacity and that such theory is
11 not impacted by BNC's closure because impairment of the
12 capacity to work can be viewed as an injury or loss separate
13 from an actual loss of earnings.  Id.
14         The Court agrees with the Plan Administrator that,
15 as a matter of law, lost wages are precluded once an
16 employer goes out of business.  See Slack v. Havens, 522
17 F.2d 1091, 1095 (9th Cir.  1975) (remanding to the district
18 court for the purpose of recalculating the back pay due
19 plaintiffs to reflect only the period before the employer
20 dissolved and transferred its assets); Herring v. Fry's Food
21 & Drug Store, 1992 U.S. Dist. LEXIS 2994, at *13-14 (N.D.
22 Cal. Feb 18, 1992) (granting summary adjudication in a Title
23 VII case with respect to a claim for back pay after the
24 employer sold off its operating assets); Priest v. Rotary,
25 634 F. Supp.  571, 580 (N.D. Cal. 1986) (concluding as a

1    matter of law in a Title VII case that an employee's

2    entitlement to back pay terminated when the employer was

3    sold).  Based on such case law, it is clear that the

4    Claimants are precluded from seeking lost wages after BNC's

5    closure on October 22, 2007.  Although the Claimants attempt

6    to distinguish the cited cases by noting that they arose

7    under Title VII and not California's Fair Employment and

8    Housing Act ("FEHA"), California courts look to Title VII

9    decisional law in certain circumstances in order to

10   interpret FEHA.  See e.g., Lyle v. Warner Bros. Television

11   Productions, 38 Cal. 4th 264, 279-280 (2006) (noting that

12   California courts frequently seek guidance from Title VII

13   decisions when interpreting FEHA and its prohibitions

14   against sexual harassment).

15            Although the Claimants are precluded from

16   obtaining lost wages from BNC after October 22, 2007, the

17   Claimants are not precluded from seeking damages suffered on

18   account of alleged loss of earning capacity.  As stated in

19   Rodriguez v. McDonnell Douglas Corporation, "loss of earning

20   power is an element of general damages which can be inferred

21   from the nature of the injury, without proof of actual

22   earnings or income either before or after the injury, and

23   damages in this respect are awarded for the loss of ability

24   thereafter to earn money."  87 Cal. App. 3d 626, 656 (Ct.

25   App. 1978), disapproved of on other grounds by Coito v.

1   Superior Court, 54 Cal. 4th 480 (2012).

2   Claimants cite to two paragraphs of the Complaint
3   to support the assertion that they are entitled to damages
4   for lost earning capacity: (i) Paragraph 107 of the
5   Complaint states that the Claimants suffered severe
6   emotional distress as a result of harassment by the
7   defendants; and (ii) Paragraph 152 of the Complaint states
8   that the Claimants have suffered "injury to their personal,
9   business and professional reputations" as well as "severe
10  emotional distress" as a result of the defendants'
11  defamatory statements.  While such paragraphs address
12  separate torts for which the Claimants may seek damages
13  (intentional infliction of emotional distress and
14  defamation), neither paragraph pleads a claim for loss of
15  earning capacity.  Accordingly, if the Claimants wish to
16  pursue such a claim, they must amend the Claims in order to
17  plead the basis of any claim for lost earning capacity.

18  III. Claimants' Claims for Punitive Damages are
19  Disallowed Pursuant to § 105 of the Bankruptcy Code

20  The Claimants seek punitive damages for the
21  majority of the causes of action they assert against BNC.
22  See e.g., Complaint, at Paragraphs 108, 120, 126, 133, 145,
23  153, and 160.  The Plan Administrator requests that the
24  Court disallow the Claimants' claims for punitive damages
25  pursuant to section 105 of the Bankruptcy Code, arguing that

1   the purpose of punitive damages would not be served because
2   the instant case is a liquidating Chapter 11 case and thus,
3   the goals of punitive damages are inapplicable.  The
4   Claimants, on the other hand, contend, among other things,
5   that although Section 105 of the Bankruptcy Code vests
6   bankruptcy courts with equitable powers, exercise of such
7   powers should be applied with extreme circumspection.
8   Opposition, at 13.
9           It is generally accepted that the goals of
10  punitive damages are deterrence and punishment.  The United
11  States Supreme Court has recognized that punitive damages
12  may be no greater than "reasonably necessary" to achieve the
13  goals that justify the imposition of the sanction.  BMW of
14  North America, Inc. v. Gore, 517 U.S. 559, 568 (1996).
15          In accordance with the clear guidance of the
16  Supreme Court, Claimants' claims for punitive damages shall
17  be disallowed.  The disallowance of punitive damages in a
18  liquidating chapter 11 case is in accord with bankruptcy
19  case law in this District and is appropriate in this case.
20  As Judge Gerber stated in In re Motors Liquidation Company,
21  2012 Bankr. LEXIS 6258, *35 (Bankr. S.D.N.Y. Aug. 6, 2012),
22  in the context of employment discrimination claims,
23  "[d]isallowance of punitive damage claims is particularly
24  appropriate in a liquidating case, including a liquidating
25  Chapter 11 case, where there is no future conduct to

1   deter[.]" Judge Gerber went on to note that "in a bankruptcy
2   setting where the recovery of punitive damages by some
3   creditors depletes recovery of other creditors, Courts have
4   regularly exercised their equitable power to disallow or
5   subordinate punitive damage claims."  Id.  In the seminal
6   case of In re Johns-Manville Corporation, 68 B.R. 618, 627-
7   28 (Bankr. S.D.N.Y. 1986), Judge Lifland denied a request
8   for the award of punitive damages, holding that the recovery
9   of punitive damages would deplete the asbestos health trust
10  at the expense of future asbestos victims rather than
11  achieve the policy goals that punitive damages were intended
12  to achieve.  As a result, Judge Lifland disallowed a claim
13  for punitive damages on the ground that allowing such a
14  claim "would ill serve the policy of such awards."
15  Similarly, the policy goals of punitive damages would not be
16  achieved in the instant case.  There is no longer a
17  wrongdoer to deter here.  The unsecured creditors who would
18  effectively bear the cost of a punitive damages award are
19  not the alleged wrongdoers.  Accordingly, the Court denies,
20  with prejudice, the Claimants' claims for punitive damages.
21           Conclusion.  For the reasons discussed, the Court
22  sustains the Objection to the extent set forth in this
23  Decision and grants the Claimants leave to amend the Claims
24  in accordance with the Court's rulings herein.  Pursuant to
25  the claim reduction procedures set forth in the Supplemental

1   Objection, each Claimant shall have 30 days from the entry

2   of an order reflecting the relief granted herein to provide

3   written notice to the Plan Administrator setting forth the

4   remaining components of her Claim, upon receipt of which the

5   Claim shall be deemed amended to reflect the reduced amount

6   sought.  In the event such notice is not timely submitted,

7   absent an agreed upon extension between the Claimant and the

8   Plan Administrator or an order of this Court, the

9   corresponding Claim shall be expunged and disallowed in its

10  entirety with prejudice.

11          Okay, that concludes the ruling, and I will -- we

12  will just wait to hear from folks with an order reflecting

13  the rulings that I provided Thank you all very much, have an

14  excellent afternoon.  And thank you for making yourselves

15  available on such short notice.

16

17     (Whereupon these proceedings were concluded at 3:30 PM)

18

19

20

21

22

23

24

25

```
 1                C E R T I F I C A T I O N
 2
 3        I, Sonya Ledanski Hyde, certified that the foregoing
 4   transcript is a true and accurate record of the proceedings.
 5
 6   Sonya Ledanski Hyde
         Digitally signed by Sonya Ledanski Hyde
         DN: cn=Sonya Ledanski Hyde, o, ou,
         email=digital1@veritext.com, c=US
         Date: 2017.04.14 12:53:59 -04'00'
 7
 8   Sonya Ledanski Hyde
 9
10
11
12
13
14
15
16
17
18
19
20   Veritext Legal Solutions
21   330 Old Country Road
22   Suite 300
23   Mineola, NY 11501
24
25   Date:  April 14, 2017
```