**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                              :     Chapter 11
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :     Case No. 08-13555 (SCC)
                                                   :
                          Debtors.                 :     (Jointly Administered)
------------------------------------------------------------------x

### ORDER GRANTING
### PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)

Upon consideration of The Plan Administrator's Five Hundred Nineteenth Omnibus Objection To Claims (No Liability Claims) with respect to claims filed by Maverick Long Enhanced Fund, Ltd., Maverick Neutral Levered Fund, Ltd., Maverick Neutral Fund, Ltd., Maverick Fund USA, Ltd., Maverick Fund II, Ltd. and Maverick Fund, L.D.C. (collectively, the "Claimants"), dated June 22, 2016 [Docket No. 53107] (the "Objection"),[1] of Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to disallow and expunge the Maverick Claims, all as more fully described in the Objection; and it appearing that this Court has jurisdiction to hear and consider the Objection; and notice of the Objection having been provided to Claimants, and it appearing that no other or further notice need be provided; and the Court having carefully considered the Objection, the Opposition Of The Maverick Entities To The Plan Administrator's Five Hundred Nineteenth Omnibus Objection To Claims (No Liability Claims) [Docket No. 53435], and the Reply To Response To, And In Further

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Objection.

Support Of, Plan Administrator's Five Hundred Nineteenth Omnibus Objection To Claims [Docket No. 55046]; and the Court having heard the arguments of counsel at the Sufficiency Hearing held on March 24, 2017; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing thereof for the reasons stated in the Court's oral opinion included in the transcript attached as Exhibit A hereto, which is incorporated herein and made part hereof, it is hereby ordered that:

1.  Pursuant to section 502(b) of the Bankruptcy Code and Rule 3007(d) of the Bankruptcy Rules, the Maverick Claims are hereby disallowed and expunged in their entirety with prejudice.

2.  The Court's oral opinion is hereby supplemented as follows: The Claimants submit that the Maverick Claims adequately assert claims against LBHI for (i) direct liability under the prime brokerage agreements (the "PB Claim"); (ii) liability for breaches of the New York Uniform Commercial Code (the "UCC Claim"); and (iii) liability for unspecified damages for lost investment opportunities and other items (the "Lost Opportunity Claim", and collectively with the PB Claim and the UCC Claim, the "Additional Claims"). To the extent that the Court disagrees with the Claimants' assertion that the Maverick Claims can be characterized as direct claims, the Claimants seek an opportunity to move to amend the Maverick Claims to assert the Additional Claims.

The Claimants are not entitled at this late date to amend their guarantee claims to assert direct claims. *See Midland Cogeneration Venture v. Enron Corp. (In re Enron Corp.),* 419 F.3d 115 (2d Cir. 2005) ("Enron I")*; see also In re Enron Creditors Recovery Corp.,* 370 B.R. 90

2

(Bankr. S.D.N.Y. 2007). As outlined by the Second Circuit in *Enron I*, courts typically engage in a two-step inquiry when considering a claimant's request for leave to amend its claim: first, the court examines whether the amendment "relates back" to the original claim (*i.e.*, if it corrects a defect of form in the original claim, describes the original claim with greater particularity, or pleads a new theory of recovery on the facts set forth in the original claim); and second, "if an amendment does, in fact, 'relate back' to the timely filed claim, [the] court[] will 'examine each fact within the case and determine whether it would be equitable to allow the amendment.'" *Enron I*, 419 F.3d at 133 (citations omitted). "Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment . . . whether the late claimant acted in good faith and the delay was justified [and] . . . whether the opposing party will be unduly prejudiced by the amendment." *Id*. (internal quotations and citations omitted).

The Additional Claims constitute new claims seeking to assert direct liability (rather than guarantor liability) against LBHI; accordingly, leave to amend the Maverick Claims to assert such Additional Claims is denied for failure to satisfy the first step of the *Enron I* inquiry. Even assuming, *arguendo*, that the Additional Claims are not new claims but do in fact "relate back" to the original guarantee claims such that the first step of the inquiry for leave to amend would be satisfied, any amendments to the Claimants' proofs of claim would inequitably and unduly prejudice the estate of LBHI; accordingly, leave to amend is denied based on the failure to satisfy the second step of the *Enron I* inquiry. While the Second Circuit in *Enron I* stated that there is no bright-line rule governing lateness and that lateness must be considered in the context of the proceedings as a whole, *id*. at 128, the Claimants have requested leave to amend their proofs of claim more than *seven years* after the bar date, *five years* after the effective date of the

3

Plan, and after numerous distributions have been made to creditors; such request cannot be considered timely. Further, the Claimants do not provide any cogent justification for their delay in requesting leave to amend but instead observe that the parties have been discussing the Additional Claims for quite some time, so these claims should not be a surprise to LBHI. As in *Enron I,* the Claimants' argument that LBHI "should have known" about the Additional Claims "undermine[s] the process of distinguishing between asserted and unasserted claims by requiring creditors to submit proofs of claim in order to participate in the bankruptcy reorganization." *Id.* at 131. LBHI could not and should not have been expected to reserve funds for the Additional Claims. Lastly, the Claimants' claims are not unique; LBHI guaranteed numerous contracts of its many affiliated entities. As in *Enron I*, if the Court were to permit holders of LBHI guarantees to amend their claims at this juncture in the case, it would "open the 'floodgates' to similar late[-filed] claims" which would cause undue prejudice to LBHI and result in a significant adverse impact to the estate and its creditors. *Id.* at 121. For these reasons, the Claimants are not entitled to amend their proofs of claim to assert the Additional Claims.

      Moreover, even if the Court were to permit the Claimants to amend their proofs of claim to assert the Additional Claims, such amendment would be futile as the Additional Claims fail on the merits for the following reasons. First, with respect to the PB Claim, the Claimants argue that LBHI is directly liable under the PB Agreements because LBI signed the PB Agreements on behalf of itself and all of its affiliates, including LBHI. This contention is unfounded because LBHI, by its nature, could not have been directly responsible for the obligations under the PB Agreements. LBHI was merely a holding company; it was not permitted to hold securities or cash on behalf of customers, execute trades, or otherwise undertake any brokerage-type

4

obligations. Since LBHI could not perform the functions of a broker-dealer, LBHI cannot be directly liable under the PB Agreements.

Second, with respect to the UCC Claim, the Claimants maintain that LBHI is liable for breaches of statutory obligations under Sections 8-503, 8-506, and 8-508 of the UCC; however, the UCC is not applicable to the Maverick Claims. The plain language of the UCC states that the substance of the duties imposed by the aforementioned sections should be governed by applicable insolvency law. *See* N.Y. U.C.C. § 8-503, cmt 1 (stating that "[i]f the [securities] intermediary fails and its affairs are being administered in an insolvency proceeding, the applicable insolvency law governs how the various parties having claims against the firm are treated"); *see also,* N.Y. U.C.C. § 8-509(a) (stating that "[i]f the substance of a duty imposed upon a securities intermediary by Sections 8-504 through 8-508 is the subject of other statute, regulation, or rule, compliance with that statute, regulation, or rule satisfies the duty"). The Claimants do not dispute LBHI's compliance with the Bankruptcy Code or the purportedly applicable United Kingdom Insolvency Act 1986. Because LBHI's compliance with applicable insolvency law satisfies the duties imposed under Sections 8-503, 8-506, and 8-508 of the UCC, the UCC Claim would fail as a matter of law.

Lastly, the Lost Opportunity Claim is entirely too speculative and implausible to sustain a cause of action. To establish a claim for loss of future profits as damages for a breach of contract, "the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co. v. Country of Erie*, 67 N.Y.2d 257, 261 (1986) (citations omitted). Any potential lost profits claimed by the Claimants appear to be based on purely hypothetical investments that

5

Claimants *could have* made; such hypothetical investments would not be sufficient to prove loss. As such, Claimants would be unable to state a valid cause of action with respect to the Lost Opportunity Claim.

Accordingly, for all of the foregoing reasons, Claimants' request for leave to amend their proofs of claim is denied.

3.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

4.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) with respect to the Maverick Claims.

Dated: May 12, 2017
      New York, New York

/S/ Shelley C. Chapman
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE