**<u>EXHIBIT A</u>**

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    CASE NO. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC.,

8

9            Debtor.

10    - - - - - - - - - - - - - - - - - - x

11                     U.S. Bankruptcy Court

12                     One Bowling Green

13                     New York, New York

14

15                     March 24, 2017

16                     10:03 AM

17

18    B E F O R E :

19    HON. SHELLEY C. CHAPMAN

20    U.S. BANKRUPTCY JUDGE

21

22

23

24

25

1    ECRO - KAREN

2    HEARING RE:   Doc #53107 Plan Administrators Five Hundred

3    Nineteenth Omnibus Objection to Claims (No Liability Claims)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2     Transcribed by:  Sheila Orms and Dawn South

3     A P P E A R A N C E S :

4     WEIL, GOTSHAL & MANGES, L.L.P.

5          Attorneys for LBHI

6          767 Fifth Avenue

7          New York, NY  10153

8

9     BY:  ADAM M. LAVINE, ESQ.

10         GARRETT A. FAIL, ESQ.

11         RICHARD L. LEVINE, ESQ.

12

13    SHEARMAN & STERLING, LLP

14         Attorneys for the Maverick Entities

15         599 Lexington Avenue

16         New York, NY  10022

17

18    BY:  WILLIAM J. F. ROLL, III, ESQ.

19         RANDALL L. MARTIN, ESQ.

20

21

22

23

24

25

Page 4

```
1

2

3

4                    P R O C E E D I N G S

5             THE COURT:  Please have a seat.

6             How is everyone?

7             ALL:  Very good, Your Honor.

8             THE COURT:  Okay.  Who am I going to hear from?

9             MR. LEVINE:  Thank you, Your Honor, Richard Levine

10    from Weil Gotshal for LBHI as plan administrator.

11            THE COURT:  Okay.

12            MR. LEVINE:  Your Honor --

13            THE COURT:  You know, I'll say my usual, I've read

14    the papers, but in light of the degree of complexity for the

15    -- although you say it's not complex, but in light of the

16    sheer volume of the different arguments, I'm happy to let

17    you make whatever presentation you like and the same goes

18    for the Maverick parties.

19            MR. LEVINE:  Thank you, Your Honor.

20            So, as you know, we believe that if we are right

21    about the application of Section 562, then our motion should

22    be granted in its entirety so that will be my focus.  But

23    I'd like to start, Your Honor, with the Maverick LBIE

24    settlement.

25
```

Page 5

```
 1              The first thing I'd like to read from is --

 2              THE COURT:  Can I ask you one --

 3              MR. LEVINE:  Sure.

 4              THE COURT:  -- overarching background question.

 5              MR. LEVINE:  Sure.

 6              THE COURT:  So this all came in the first round

 7    incident to the estimation motion.

 8              MR. LEVINE:  That's right.

 9              THE COURT:  Okay.  So in terms of, you know, given

10    that we're at an advanced point in the case, and this is not

11    dispositive in any way, it's just information for me, are

12    there other similar claims structurally similar claims that

13    have been allowed or disallowed either with respect to an

14    LBHI guarantee of a LBIE obligation or LBIE obligation or an

15    LBHI guarantee of an LBI obligation?  And if you don't know

16    the answer that's fine, as a legal matter it's neither here

17    nor there, it's just information.

18              MR. LEVINE:  I'll defer to Mr. Fail on that.  But

19    it's my understanding that no, that there were two of these

20    "LBIE" guarantee claims, SRM, which we argued to Your Honor

21    last summer and then mediated and then this one, where there

22    were among the few LBIE guaranteed claims that were

23    withdrawn from the estimation objection.

24              Most of the LBIE guarantee claims were resolved

25
```

Page 6

1    with the estimation objection and you estimated at zero

2    because LBIE was being a hundred percent payor.  There were

3    only a handful --

4              THE COURT:  Payor, you said, payor.

5              MR. LEVINE:  Right, so LBIE was paying a hundred

6    percent on claims.  So it was only a few guarantee claims

7    against LBHI that had settled with LBIE before they knew

8    that LBIE was going to be a hundred percent payor who

9    objected to the estimation motion.

10             The estimation motion was withdrawn as to those

11   claims because we wanted to get rid of the vast majority

12   where there was no objection, so there was only a handful

13   that survived.

14             And as far as I know, the only ones still

15   outstanding are SRM and Maverick.  SRM is a little bit more

16   complicated because it's governed by UK law, remember we

17   don't think that makes a difference --

18             THE COURT:  I remember, right.

19             MR. LEVINE:  -- but it does, it did require both

20   sides to put in those horrible English expert law

21   declarations --

22             THE COURT:  I wouldn't agree with the

23   characterization as horrible, but.

24             MR. LEVINE:  Well, they're not written in American

25

1      English for sure.

2                THE COURT:  No comment.

3                MR. LEVINE:  Garrett, do you want to add anything

4      to add?

5                MR. FAIL:  Yeah, thank you, Your Honor, Garrett

6      Fail.

7                THE COURT:  Yes, Mr. Fail.

8                MR. FAIL:  Your Honor, is correct, there are a

9      number of claims that are still outstanding on -- of LBIE

10     guarantees, guarantees by LBHI of LBIE primary obligations

11     that are subject to a motion to estimate claims.  There's

12     essentially two parties that are still outstanding with

13     those, there's a number of claims that they have acquired,

14     but there's only two parties there.

15               These -- the two that Mr. Levine referenced SRM

16     and Maverick are the only two in the claims objection where

17     LBHI filed an objection because the parties are asking for

18     more than they -- they're looking for no more than --

19               THE COURT:  The notion on that are the primary

20     obligation at Libby.

21               MR. FAIL:  Exactly.  And I'm not aware of any

22     claims against LBHI where the primary obligation was LBIE

23     that have been allowed by LBHI.

24               THE COURT:  Okay.  All right.  Thank you.

25

Page 8

```
 1              MR. LEVINE:  So what I was going to -- since our
 2       focus is on 562 --
 3              THE COURT:  Right.
 4              MR. LEVINE:  -- and I'll get to the legal issues
 5       there in a few minutes.  I thought what I'd like to do is
 6       start with the key elements, which we think allow us to win
 7       if 562 applies.
 8              The first is a statement in Maverick's objection
 9       to the estimation motion which I don't think, you know, by
10       any means they're walking away from.  Your Honor doesn't
11       need to read along with me, but if you want to --
12              THE COURT:  I have it.  I have tab 4.
13              MR. LEVINE:  Tab 4.
14              THE COURT:  Tab 4, yes.
15              MR. LEVINE:  Page 11, paragraph 22, and I'm
16       reading the second half of the paragraph about five lines up
17       from the bottom.
18              And this is their statement, and again I don't
19       think it's --
20              THE COURT:  Hold on, tab 4 -- sorry.
21              MR. LEVINE:  No problem, tab 4, page 11.
22              THE COURT:  Page 11, yes.
23              MR. LEVINE:  Paragraph 22.
24              THE COURT:  The Ivanhoe rule.
25
```

1              MR. LEVINE:  On paragraph 23, sorry, next

2       paragraph, I can't read my numbers.  So if you go about

3       halfway or three quarters of the way down that paragraph,

4       the last sentence begins towards the right-hand column "in

5       light of the cancellation."

6              THE COURT:  Yes.

7              MR. LEVINE:  So this is their statement "In light

8       of the cancellation of indebtedness that would otherwise

9       have been owed to LBIE, Maverick concedes that it already

10      has effectively received approximately 101.9 million in

11      value from LBIE, in connection with the LBIE settlement

12      agreement, reflecting an offset of the approximate value of

13      the securities and cash that LBIE may have been obligated to

14      return to Maverick under English law."

15             So that's our first kind of point, which is that

16      if we're right, that the settlement date, and it wasn't

17      exactly the settlement date but for purpose of the

18      estimation motion, we're using the date and the valuation

19      that they assert, they got the value of their cash and

20      securities as of the settlement date under the settlement.

21             So that's a valuation date, they got what they're

22      entitled to.  As we understand their argument, they say, no,

23      you use the petition date.

24             THE COURT:  They say you use the petition date --

25

1             MR. LEVINE:  Right.

2             THE COURT:  -- for the purpose of the guarantee.

3             MR. LEVINE:  Of valuing, right, of valuing the

4      claim.

5             THE COURT:  For the purpose of asserting a claim

6      on the guarantee.

7             MR. LEVINE:  That's right.  Then the second thing

8      that I wanted to bring out is actually in the settlement

9      agreement itself, so that is behind tab 4, now we're going

10     to tab E behind tab 4, which is the LBIE settlement --

11     settlement between LBIE and Maverick.

12             THE COURT:  Yes.

13             MR. LEVINE:  And there I'd like you to turn to

14     page 4 --

15             THE COURT:  Okay.

16             MR. LEVINE:  -- of the settlement.  And it's

17     actually part of -- it's 2.1.A, and this is where it

18     provides for termination—of the relevant agreements and

19     they're actually in Schedule 2 to the settlement, and they

20     list all the agreements at issue, the prime brokerage

21     agreements, the marginal lending agreements, and the global

22     master securities lending agreements, so they're all listed

23     in Schedule 2 and then defined as the relevant agreements.

24             "The relevant agreements and all transactions

25

Page 11

1    thereunder, to the extent that they have not previously been

2    terminated are terminated as between LBIE and each Maverick

3    entity."

4           And I will tell Your Honor that we saw in

5    discovery any documents suggesting an earlier termination,

6    and SRM you'll remember, they actually served the notice of

7    termination, but Maverick was like most LBIE claimants, they

8    didn't serve a notice of termination, so there was no prior

9    termination.

10          And I don't understand them to be arguing there

11   was a prior termination.

12          THE COURT:  No, I think in this point their

13   argument is that essentially it doesn't matter because the

14   words say that they're terminated as between LBIE and each

15   Maverick entity and therefore that does not affect the

16   obligations of LBHI and therefore, it does not implicate or

17   mean that 562(a) is controlling.

18          MR. LEVINE:  Right and --

19          THE COURT:  And in response to this, you say,

20   well, look all the obligations --

21          MR. LEVINE:  I can sit down.

22          THE COURT:  All the obligations are terminated, so

23   the fact that these words limit it to LBIE, is neither here

24   nor there.

25

1              MR. LEVINE:  Right.  I mean, that's exactly right,

2       it's really those three arguments you were just hinting at

3       that LBHI was not a broker dealer.  LBHI could not perform

4       the prime brokerage functions, in fact, in the prime

5       brokerage agreement it expressly provides that a prime

6       brokerage account, the opening words are "a prime brokerage

7       account opened pursuant to this agreement will be opened at

8       Lehman Brothers, Inc."

9              And so clearly Lehman Brothers, Inc. was the prime

10      broker that, in fact, it was LBIE but it had to be either

11      LBI or LBIE --

12             THE COURT:  Sure.

13             MR. LEVINE:  -- because LBHI was not a broker or

14      could not trade for customers, could not custody --

15             THE COURT:  Could not custody --

16             MR. LEVINE:  -- securities or cash.  So that in

17      terms of the obligations on the Lehman side on the -- under

18      the prime brokerage agreements, it was terminated as to

19      LBIE, there was nothing left for LBHI to do.  LBHI was

20      technically a party and benefitted from things like

21      exculpation provisions, but it didn't have any obligations

22      because it couldn't interact with customers.

23             Secondly obviously to the extent that their claims

24      are guarantee claims, and under the proof of claim, and

25

1    we'll look at that in a moment, I'm not sure you're going to

2    pull one out, all the claims are guarantee claims.

3             THE COURT:  They're guarantee claims.

4             MR. LEVINE:  So if they're guarantee claims --

5             THE COURT:  Right.

6             MR. LEVINE:  -- and the primary claims are against

7    LBIE and it's been terminated as to LBIE, and the only

8    question is whether LBIE still owes them something as to

9    which we're guarantor.  Well, I don't think it matters

10   whether it was terminated as to LBHI when, to the extent

11   their claims are a guarantee claim.

12             And I think finally the argument would be that if,

13   in fact, it was not terminated as to LBHI, so that there

14   were still somehow remaining obligations of LBHI after the

15   LBIE/Maverick settlement, then it was an executory contract

16   and it was rejected pursuant to the plan, and that was just

17   about the same date as the settlement, the effective date of

18   the plan, so it was rejected and 562 would still apply.

19             So that's our response to the argument that it

20   wasn't terminated as to LBHI.  So if we are right that

21   Section 562 controls, then we think there's no room to

22   argument, no room to argue, other than as of that date, the

23   contracts were terminated, the security contracts, the

24   master netting agreements were terminated and they got full

25

1    value.

2            Now, as I understand Maverick's main theory, it's

3    very different.  The main theory is that the value of their

4    long positions, and they say you don't take into account the

5    short positions, the offsetting short positions, you just

6    look at their long positions, to decrease from the petition

7    date which is they say when you value it, 562 doesn't apply,

8    to the settlement date by 16.2 million.  And that they're

9    entitled to that diminution in value from petition date to

10   settlement date because all they were able to get from LBIE

11   is the value at the settlement date, and not the value at

12   the petition date.

13           Of course, we think well, it doesn't matter what

14   the value is of the petition date, but that's their argument

15   as I understand it.

16           THE COURT:  Well, in support of that argument,

17   they say, for example, if for some reason, their claim

18   against LBHI would have had to have been valued prior to the

19   settlement date, you would be stuck with valuation as of the

20   petition date.

21           MR. LEVINE:  Well, I -- that may have been true,

22   but the -- once they terminated their contracts, 562 kicks

23   in.  I mean, 562 --

24           THE COURT:  562 kicks in not only with respect to

25

Page 15

1    the termination of the prime brokerage agreement, but also

2    with respect to the guarantee agreement.

3                MR. LEVINE:  Right, for multiple reasons.  Number

4    one, we think the guarantee agreement under the definition

5    in the Code, in Section 741 --

6                THE COURT:  Is the securities --

7                MR. LEVINE:  -- is the securities contract, right,

8    and to the extent the prime brokerage agreement is the

9    master netting agreement, then the guarantee of the master

10   netting agreement is also a securities contract.

11               The -- I lost my train of thought, I'm sorry.

12               THE COURT:  I'm sorry, my fault.

13               MR. LEVINE:  So, you know, we think 562 applies,

14   but so to get these diminution damages, reduction in value,

15   and we're accepting their numbers for purposes of the motion

16   to dismiss hearing, we're not agreeing with them, we're just

17   accepting them for purposes of -- for example, they value --

18   their settlement they value is supposedly as of February

19   13th, 2012.  Because that's, according to their affidavit,

20   basically when the business deal was done.

21               Now, my guess is, is that the reason they're using

22   that day, so the actual settlement date of March 30th, 2012

23   is because it moved against them, but I don't know that, and

24   we're not challenging that --

25

1              THE COURT:  We're not going there at a sufficiency

2       hearing.

3              MR. LEVINE:  At a sufficiency hearing.

4              THE COURT:  Right.

5              MR. LEVINE:  We're accepting their number.  So --

6       but to get those diminution damages, that 16.2 million, they

7       need to establish 562 doesn't apply, they need to convince

8       Your Honor that your rulings in Stonehill, Newport, and

9       Providence and the decision in MF Global on exculpation

10      provisions precluding diminution damages doesn't apply here;

11      they're wrong.

12             THE COURT:  And just to stop in the decision tree,

13      even if 562 were held not to apply, you say the exculpation

14      would kick in and would knock out the liability of LBHI on

15      the guarantee nonetheless, correct?

16             MR. LEVINE:  On the diminution damages.

17             THE COURT:  On the diminution damages.

18             MR. LEVINE:  They make an assertion that as of the

19      petition date for five of the six funds, you know, five

20      funds they chose, so we know what the sixth one would have

21      done to the number, the net amount, and this is on a net

22      basis owed by LBIE to Maverick was 4.3, 4.3 million.

23             So we would say that, if they're right that 562

24      doesn't apply, our worst case is a 4.3 million --

25

1            THE COURT:  Yes.

2            MR. LEVINE:  -- then we'd say, once we take into

3      account that sixth fund, it's likely -- well, we know it's

4      going to be less than 4.3, whether it's going to be any

5      positive amount, I mean, I actually know the number, but it

6      was provided in mediation so I can't say it unless counsel

7      agrees, but in the public record, we know that for five of

8      the six funds all that LBIE owed Maverick as of the petition

9      date was 4.3 million on a net basis.

10            And as you know, Your Honor, we think this notion

11      that our guarantee was only of long positions and not net,

12      makes no sense.  I mean, the function of a guarantee

13      obviously is to make sure that the primary obligor makes the

14      claimant whole.  Right.

15            If all LBIE owed to Maverick was 4.3 million

16      because Maverick owed LBIE this much and LBIE owed it that

17      much, it seems crazy to say that we have to pay them this

18      windfall that we don't get to take into -- well, we're

19      guaranteeing more than the net amount, that they get to

20      claim and get this windfall.

21            So we think that doesn't make sense.  So we think

22      that to get the 16.2 diminution damages, two of the three

23      arguments are that 562 doesn't apply, we think they lose.

24      The exculpation provisions don't preclude the diminution

25

Page 18

1    damages, and we think they lose the law of the case, and MF

2    Global.  And then there's this issue of they only look at

3    their long positions, and I think that's contrary to the

4    nature of a guarantee.  We think that's contrary to the

5    nature of the parties' agreements.

6             Now, we made a mistake in our opening brief, we

7    cited to Your Honor the netting provision in the prime

8    brokerage agreement, which provides for netting.  And they

9    correctly pointed out in their opposition that that only

10   applied if Maverick was in default.

11            But there's, you know, sometimes it's lucky to be

12   on the side of a good contract.  Paragraph 32 of the prime

13   brokerage agreement, Your Honor --

14            THE COURT:  What tab am I in?

15            MR. LEVINE:  Okay.  You are in tab 4B. Your Honor,

16   I actually have some excerpts printed out, would you --

17            THE COURT:  I can -- it's easier for me to just

18   use my little tabs here.  So I'm with you.

19            MR. LEVINE:  4B, and if you go to the end of the

20   prime brokerage agreement --

21            THE COURT:  So this is --

22            MR. LEVINE:  4B.

23            THE COURT:  -- LBI, prime brokerage agreement.

24            MR. LEVINE:  Right, the only prime brokerage

25

1    agreement is with LBI.

2              THE COURT:  Well, it says LBI.

3              MR. LEVINE:  Yeah, it's with LBI, but this is the

4    one that governed the relationship, there was no separate

5    one with LBIE.

6              THE COURT:  Okay.  You folks agree with that?

7              MR. BELL:  Correct, we do, Your Honor.

8              THE COURT:  Okay.  So I'm in tab 4B, and what

9    page?

10             MR. LEVINE:  And if you go to paragraph 32, so

11   we're towards the end.

12             THE COURT:  Numbered paragraph 32.

13             MR. LEVINE:  On page 9.

14             THE COURT:  Yes, cumulative rights entire

15   agreement.

16             MR. LEVINE:  Right.  If you go to the second

17   sentence, it's about four lines down, towards the right-hand

18   margin, "to the extent that the provisions of any contracts

19   you have with any Lehman Brothers entity, whether heretofore

20   or hereafter entered into are inconsistent whether the

21   inconsistency be within the contracts or a single contract,

22   the conflict shall be resolved in favor of the provision

23   which affords Lehman Brothers with the maximum rights,

24   remedies, benefits or protections."

25

1          So to the extent that the provisions of a

2    contract, a prior contract heretofore entered into are

3    inconsistent with this, Lehman gets the best provision.

4          THE COURT:  Okay.  And how does that help with

5    respect to the netting provision?

6          MR. LEVINE:  Because if you go to our tab 3, which

7    is our reply brief, attached to our reply brief was the

8    prior prime brokerage agreement, it's Exhibit 1, in terms of

9    the ECF filings, page 27 of 80.  Lehman Brothers

10   International Europe LBIE Master Prime Brokerage Agreement.

11   At tab 3, page 27 of 80.

12         THE COURT:  Yes.

13         MR. LEVINE:  Okay.  So if we go to page -- well,

14   I'm sure there's a page number, it's page 42 of 80, I'm

15   looking at Section 12, termination.

16         THE COURT:  Yes.

17         MR. LEVINE:  "Events of default," of course we

18   have to figure out what an event of default is, "the

19   occurrence of the following events with respect to a party

20   constitutes an event of default in relation to that party,"

21   the defaulting party, the other party being the non-

22   defaulting party.

23         And then we turn to the next page, 12.1D provides

24   "an active insolvency occurs with respect to the party,

25

1    except in the case of an active insolvency which is the

2    presentation of a petition for winding up or any analogous

3    proceeding or the appointment of a liquidator or analogous

4    officer of the defaulting party, in which case, no such

5    notice will be required, the non-defaulting party serves the

6    default notice."

7              Well, from our perspective it's clear that LBIE's

8    appointment of an administrator was covered by D, no notice

9    was required, so there was an event of default, it makes

10   sense LBIE filed, sought administration was an event of

11   default.

12             You go to the next section, Section 13, close-out

13   "on the occurrence of an event of default the following

14   shall immediately occur," Part C provides that the non-

15   defaulting party, Maverick, had to calculate the amounts,

16   and then Section D on page 44 of 80 makes clear that there's

17   automatic net.

18             THE COURT:  Okay.

19             MR. LEVINE:  So that under the prime brokerage

20   agreement in effect, there was a provision which said prior

21   agreements that are better for Lehman control, this prior

22   agreement makes clear that there's automatic netting in the

23   event of an event of default.

24             So we think that makes clear that they're netting

25

Page 22

1    that.

2              THE COURT:  So just to encapsulate that, you're

3    saying that notwithstanding that they were right with

4    respect to, I'll call it the LBI PB agreement that under the

5    LBI PB agreement, you have to revert to this constellation

6    of provisions in the previous PB agreement, which was, in

7    fact, with LBIE, and that gave you the advantage of netting

8    notwithstanding the fact that your status as a non-

9    defaulting party.

10             MR. LEVINE:  Right, correct.  And, you know,

11   frankly I think that's kind of standard and it's kind of

12   surprising to me that the LBI prime brokerage agreement

13   didn't provide for automatic netting.  I think this is kind

14   of typical, you know, if things end, you figure out who owes

15   what to what, whom to whom, and you net.

16             So that we think that's very important.  And maybe

17   it's time to look at the proofs of claim.

18             THE COURT:  Okay.  That's tab 5.

19             MR. LEVINE:  That's tab 5.  As far as I know,

20   they're all the same except for which Maverick fund it is,

21   the amount claimed, and which guarantee they rely on.

22             So the language we're going to look at as far as I

23   know, and I checked very carefully is the same -- each of

24   the six proofs of claim.  The difference on the guarantees

25

Page 23

1    are three of them rely on the corporate resolution, and

2    three of them rely on the 2002 direct guarantee by LBHI.

3              Now, in fact, that 2002 direct guarantee was

4    replaced by a later guarantee, there was a direct guarantee

5    and the one that we think governs here even though it's not

6    mentioned in the proofs of claim, is a direct guarantee,

7    we're not contesting the application of that direct

8    guarantee, we clearly don't accept the fact that the

9    corporation resolution is enforceable, we don't accept the

10   fact that the S&P letter is enforceable, but we think none

11   of that matters for today because there's a direct guarantee

12   which we acknowledge is enforceable.

13             So anyway, so I'm just looking at the very first

14   one behind tab 5 which is the one from Maverick Long

15   Enhanced Fund Limited.  And of course, on the first page, on

16   the form page, they check this box if all or part of your

17   claim is based the guarantee.  And then if we actually

18   look at the text, paragraph 1 just recites the filing.  The

19   second paragraph 1 provides "this proof of claim is filed in

20   debtor's bankruptcy case by Maverick Long Enhanced Fund

21   Limited.  Maverick has a claim, the claim against the debtor

22   on account of the debtor's full guarantee pursuant," and

23   they refer to the corporate resolution, "of the payment of

24   all liabilities, obligations and commitments of LBIE."

25

Page 24

1          So clearly that paragraph is only talking about

2     the guarantee.  If we go to paragraph 2, again recites the

3     three agreements, the prime brokerage agreement, the

4     marginal lending agreement, and the global master securities

5     lending agreement, and then at the very bottom, the last

6     three words on that page it continues, "The Lehman entities

7     agree to provide certain prime brokerage services to

8     Maverick," and then it defines the different agreements as

9     the prime brokerage documents, and that's important, prime

10    brokerage documents, "under the terms of the prime brokerage

11    documents, LBIE has a lien and first priority security

12    interest in certain assets held or controlled by LBIE."

13          Okay.  Well, that certainly sounds like a right to

14    net, if you have a lien and first priority security interest

15    on the assets.  And it continues in that same vein, "Such

16    assets are held as collateral by LBIE as agent and bailee on

17    behalf of itself and all other affiliates of LBIE, in

18    connection with Maverick's obligations under the prime

19    brokerage documents."

20          Again it sounds like they're admitting that we get

21    to net.  Then importantly, the last sentence of paragraph 2

22    reads, "As of the petition date, the Lehman entities had

23    custody of Maverick's assets pursuant to the prime brokerage

24    documents in the amount of 1.286 million," that aggregates

25

Page 25

1    across the six claims to 187 million.

2            "This proof of claim constitutes a demand for

3    payment under the guarantee."  Then, when describing the

4    claim in paragraph 3, "Maverick hereby asserts the claim in

5    the initial amount of that 1.3 million less any amounts owed

6    by Maverick in connection with the prime brokerage

7    documents."

8            Okay.  Now, in their opposition, Maverick argues

9    well, that's not netting, well, you know, sounds to me like

10   netting.  And they drop a footnote, which also sounds like

11   netting.

12           THE COURT:  Footnote 3.

13           MR. LEVINE:  Footnote 3.  "For the avoidance of

14   doubt, the initial claim amount is a gross claim and does

15   not take into account any amounts or obligations that

16   Maverick may owe to the Lehman entities under the terms of

17   the prime brokerage documents."

18           THE COURT:  Well, that is a -- that language is to

19   protect them from an accusation that they overstated the

20   claim.

21           MR. LEVINE:  Right, right, but it's certainly

22   consistent --

23           THE COURT:  No, I understand.

24           MR. LEVINE:  -- to their understanding that they

25

Page 26

1    only got a net claim.

2              THE COURT:  Right.

3              MR. LEVINE:  Then they say, "the initial claim

4    amount may change depending on the current value of the

5    assets in custody until such time as Maverick exercises any

6    remedies it may have to liquidate the claim."  Well, it's

7    claim.

8              Now, we don't agree with that, we think that

9    either it's the petition date under 502 or the termination

10   or rejection date under 562, but that was their claim,

11   that's fine.

12             Then we go with the additional claims, because now

13   remember they're asserting they have direct claims under the

14   PB agreements, and --

15             THE COURT:  But they're seeking to amend to assert

16   them, they don't have direct claims under the filed

17   documents, right?

18             MR. LEVINE:  Well, as I understand it, they argue

19   that those direct claims are embedded in here.

20             THE COURT:  In here?

21             MR. LEVINE:  Yes.  They have suggested that if

22   they're wrong about that, they'd like to amend, but they

23   don't admit that they need to amend, as I understand their

24   position.

25

1              THE COURT:  Okay.  Well, I can ask them about

2      that.

3              MR. LEVINE:  The -- I'm reading just now from

4      paragraph -- from footnote 13 of their opposition, "As noted

5      in footnote 3 of the estimation objection, Maverick's claims

6      also asserted and reserve rights with respect to various

7      other entitlements, such as interest, legal fees, and other

8      damages, including damages for lost investment opportunities

9      and other items."

10             Now, we agree that they (indiscernible) mention

11     interest and fees, but we think it's completely inaccurate

12     to say that the Maverick claims also asserted and reserved

13     rights with respect to other entitlements including damages,

14     including damages for investment opportunities and other

15     items.  We just don't think they're here.

16             So we think that to the extent they think they've

17     already asserted them, that's just wrong, and that to the

18     extent that they want to assert them, they have to move to

19     amend the proof of claim, and of course we would argue it's

20     much, much too late for that.

21             THE COURT:  Could you address -- there seems to be

22     an argument that somehow this is not capable of being

23     resolved in a sufficiency hearing basis.

24             MR. LEVINE:  Well, we think that's just wrong

25

Page 28

1    because there are no disputes.  If 562 applies, we think the

2    -- well, we think that the fact -- our 562 argument relies

3    entirely on legal disputes, that the facts underlying those

4    arguments are not in dispute, that the settlement agreement

5    with LBIE and Maverick was where all the prime brokerage

6    documents were terminated, there was no prior termination.

7            They admit that they got the value of their

8    assets, their cash and securities as of around that date.

9    So those are the only factual issues, we're not disputing

10   the money and I don't think they're disputing the

11   termination.

12           All they're raising are legal arguments, 562

13   doesn't apply because the prime brokerage documents are not

14   securities contracts and are not master netting agreements.

15   And the guarantee is not a securities contract or master

16   netting agreements, we think those are issues of law which

17   Your Honor can resolve.

18           They argue that the prime brokerage documents were

19   only terminated as to LBIE, not as to LBHI.  Again, we think

20   there's no dispute about the language of the settlement

21   agreement, the question is what is the legal impact of the

22   termination.  Was there anything against LBHI that could

23   have survived and if there was, wasn't -- didn't that mean

24   that it was an executory contract which was rejected on the

25

Page 29

1    date of the effectiveness of the plan.

2          So we think that clearly under the 562 argument,

3    it clearly can be resolved because the facts that we rely on

4    are not in dispute, or we're not disputing them at least for

5    purposes of this hearing, and they're just legal issues.

6          There's also the question of netting.  We think

7    that -- or their right to diminution damages-- we think that

8    clearly is another legal issue.  The language of the prime

9    brokerage documents and the exculpatory language, we think

10   as a matter of law, as Your Honor has held in three

11   different cases and consistent with MF Global precludes

12   diminution damages.

13         So that we think Your Honor -- so even if Your

14   Honor rejects the 562(a) argument, you certainly can rule as

15   a matter of law that there are no diminution damages, which

16   would then just leave a question of whether they're entitled

17   to the 4.3 million net amount owed to them as of the

18   petition date or some greater or lesser amount I guess.

19         But it seems to me, you know, let me -- because as

20   you know, I have never gotten over show and tell, I can't

21   leave without a handout, so I'd like to hand up one and

22   counsel and approach the bench.

23         THE COURT:  And then I'll ask you to wrap up.

24         MR. LEVINE:  Okay.

25

1                THE COURT:  This is just a demonstrative, right?

2                MR. LEVINE:  This is just a demonstrative.  These

3       are numbers.  So -- okay.  So the top of this is supposed to

4       be our summary of the proofs of claim.

5                THE COURT:  Uh-huh.

6                MR. LEVINE:  And as we see it, it's purely a

7       guarantee claim in which they seek 187.3 million in the

8       aggregate, but expressly, as we saw when we look at the

9       sample proof of claim, expressly minus any amounts owed by

10      Maverick back to LBIE, and they think fees and expenses

11      which are unliquidated and interest which is unliquidated,

12      and we don't think they're entitled to those either for the

13      normal reasons, and then no other claims asserted.

14               Then in their current theory which comes from

15      their objection to the estimation motion, and their response

16      to our objection to their claim, there are guarantee claim

17      components, in which they assert that not 187.3 million, but

18      the value of their long positions, just their long positions

19      without netting was 118.1 at the petition date, that they

20      received 101.9 million in value as of the settlement date,

21      and therefore, that difference is the 16.2 they're asking

22      for we say that since you value it under 562 with the

23      settlement date, there's nothing that's owed to them.

24               Fees and expenses and interest are still

25

Page 31

1    unliquidated.  In terms of the second page, there are other

2    claims, they're now saying they have asserted, they want to

3    amend to assert direct claims under the prime brokerage

4    documents.  Those do not seek any incremental damages, so as

5    we understand it, it's still the 16.2 as opposed to the

6    187.3 on the proofs of claim.

7           Now, we obviously have various responses that are

8    not asserted in the proofs of claim, LBHI did not assume any

9    broker dealer obligations, and all the other defenses that

10   apply to the guarantee claims apply.

11          And then they have consequential damages.  And all

12   we know about the consequential damages are what's in that

13   footnote I read to you before, which simply says that they

14   have consequential damages without offering any factual

15   support, any -- well, let me read it to you.

16          In addition -- this is from the estimation motion

17   objection footnote 3 --

18          THE COURT:  Which is tab?

19          MR. LEVINE:  Tab 4, I'm sorry.  Tab 4, page 4.

20          THE COURT:  Okay.

21          MR. LEVINE:  Footnote 13, and they basically

22   repeat this in their response to the objection motion they

23   refer back to this paragraph.  But this is basically all

24   they said about --

25

1           THE COURT:  Other damages.

2           MR. LEVINE:  -- other damages, or lost investment

3   opportunities is what they call it.

4           "In addition to the 16.2 million recoverable by

5   Maverick, the Maverick entities proofs of claim also

6   reserved the right to seek interest and legal fees and also

7   generally asserted and preserved the right to pursue all

8   amounts payable in connection with the prime brokerage

9   agreements."

10          And actually what it says is "the prime brokerage

11  documents," which is a full list of agreements, not just the

12  PB agreements, and the guarantees.  "Although Maverick

13  believes the $16.2 still owed to it provides ample

14  justification to deny the estimation motion with respect to

15  the Maverick entitiesMaverick expects that it may in the

16  future continue to pursue any rights it may have to collect

17  interest, legal fees, or other damages, including damages

18  for lost investment opportunities or other items."

19          And that footnote is basically repeated in their

20  most recent objection, but lost investment opportunities, I

21  mean, we know that, under New York law, it's virtually --

22          THE COURT:  You don't have to spend time on this.

23          MR. LEVINE:  Okay.  The final thing is I got

24  handed a note by Mr. Fail, let me just make a couple of

25

Page 33

1      points that he asked me to make.

2             Another reason that Section 562 applies to the

3      guarantee claims is that 562 talks about damages, it's not -

4      - in their papers they kind of suggest 562 is a measure of a

5      claim, how much a claim should be, but that's not right.

6      562 talks about damages.  And then they say, well, New York

7      law says you could calculate damages on the date of breach,

8      and I agree with that.

9             But here we have a Bankruptcy Code provision,

10     which under the supremacy clause controls, which says that

11     if under 562, if 562 applies, damages are measured as of the

12     termination date, rejection date, liquidation date.

13            And finally, we think that a fundamental problem

14     with Maverick's approach under 562 is that it would suggest

15     that where 562 applies to a primary obligor, it might not

16     apply to a guarantor --

17            THE COURT:  You have a two tiered system with two

18     sets of books.

19            MR. LEVINE:  -- two tier, you got it, Your Honor.

20            Then I'll sit down and let Your Honor -- thank you

21     very much for your patience.

22            THE COURT:  Sure.

23            MR. FAIL:  Can I just correct?  Sorry.  One more

24     thing and I won't correct Rick, Garrett Fail, Weil Gotshal

25

Page 34

1    for the record.  Your Honor asked the question before if we

2    were aware of any claims against LBHI that had a primary

3    obligor of LBIE that were allowed, I said I wasn't.  I've

4    since had a chance to check with my client, there was one

5    claim that was allowed where the amount received by the

6    counterparty was less than the claim allowed by LBIE or the

7    claim asserted against LBHI due to certain unique

8    circumstances of an agreement.

9            So we allowed one guarantee claim against LBHI,

10   where we appropriately think the guarantee should be paid.

11   In terms of the estimation motion, I said that there were

12   largely two parties that were still disputing that.  There

13   are two additional claims, plus or minus a million dollars

14   each that are also outstanding --

15           THE COURT:  Okay.

16           MR. FAIL:  -- that are disputing it.  Other

17   parties have claims outstanding with respect to estimation,

18   but they won't be litigated if there's an agreement that

19   those claims will be withdrawn on a date certain in the

20   future.

21           THE COURT:  Okay.

22           MR. FAIL:  And in terms of claims that are being

23   litigated, other LBIE related, we spoke about SRM, Newport

24   and Providence you're aware of.

25

1              THE COURT:  Yes.

2              MR. FAIL:  And there's one additional claim that

3     I'm aware of, Highland, which is in mediation, a $5 million

4     claim, so I just wanted to be complete for the record.

5              THE COURT:  All right.

6              MR. FAIL:  All the unique circumstances.

7              THE COURT:  It was just by way of background for

8     me, it's neither here nor there in terms of legal arguments.

9              MR. FAIL:  I agree, thank you.

10             MR. ROLL:  Good morning, Your Honor.

11             THE COURT:  How are you?

12             MR. ROLL:  I'm fine, Your Honor, how are you?

13             THE COURT:  Good.

14             MR. ROLL:  William Roll of Shearman & Sterling

15    appearing on behalf of the Maverick entities.  I'm here with

16    my colleague, Randall Martin.

17             Just a program note if I might, Your Honor --

18             THE COURT:  Sure.

19             MR. ROLL:  -- if it's all right with the Court, I

20    was hoping to afford Mr. Martin the opportunity to argue at

21    least some of this because he's --

22             THE COURT:  Of course.

23             MR. ROLL:  -- done 99 percent of the work, so he

24    should have at least some of the fun.

25

1                    THE COURT:  Delighted.

2                    MR. ROLL:  My intention is if we get to things

3      like the exculpatory provisions --

4                    THE COURT:  Sure.

5                    MR. ROLL:  -- and the proofs of claim, I'm going

6      to turn that over to him.

7                    THE COURT:  Sure.  I want to ask you a couple of

8      questions, though --

9                    MR. ROLL:  Of course.

10                    THE COURT:  -- right off the bat.

11                    So suppose there was no Lehman filing broadly

12      speaking and life just went on.

13                    MR. ROLL:  Yes.

14                    THE COURT:  Right?  And the Maverick entities

15      decided to part ways with LBIE.  And they terminated the

16      prime brokerage agreement.

17                    MR. ROLL:  Uh-huh.

18                    THE COURT:  Give me back my stuff, we're going to

19      go to another broker dealer.

20                    MR. ROLL:  Right.

21                    THE COURT:  Okay.  And at that moment in time, the

22      custody and securities were worth less than what they were

23      when you gave them to LBIE.

24                    MR. ROLL:  Uh-huh.

25

1             THE COURT:  Would you have a right to call in the

2     guarantee for the diminution in value?

3             MR. ROLL:  Well, there would be no diminution in

4     value, as Your Honor has articulated that hypothetical,

5     because we would be looking at just that one date.

6             THE COURT:  I'm sorry, no, my hypothetical is that

7     on the -- at the commencement of the relationship with the

8     prime broker --

9             MR. ROLL:  Right.

10             THE COURT:  -- with LBHI as a guarantor --

11             MR. ROLL:  Right.

12             THE COURT:  -- you -- custodies, securities that

13     were say a billion dollars --

14             MR. ROLL:  Correct.

15             THE COURT:  -- okay.  And then you decide you're

16     going to go with a different broker dealer, right, and you

17     terminate.  And you say to LBIE, give me back my stuff,

18     right.  And LBIE says, sure, here's your stuff.  Okay.  Or

19     LBIE says, and you agree, well, we don't want back our

20     stuff, we just want the value of our stuff.  And the value

21     of the stuff on that date is half a million dollars less,

22     right.  You get to go ask for that half a million dollars

23     from your guarantor?

24             MR. ROLL:  No.

25

1                    THE COURT:  Why not?

2                    MR. ROLL:  Because we would have -- well, Your

3      Honor started with a very big if.  No bankruptcy filing, so

4      we're in a normal relationship, so we, Maverick, would be

5      taking a risk in that circumstance of asking for its

6      securities back --

7                    THE COURT:  Why is that --

8                    MR. ROLL:  -- at a time when the value would've

9      diminished.

10                   THE COURT:  Why does that not apply in this

11     situation?

12                   MR. ROLL:  Because of the application of 502 in

13     the Bankruptcy Code, because of the fact that --

14                   THE COURT:  So you get more in bankruptcy than you

15     would out of bankruptcy?

16                   MR. ROLL:  Because --

17                   THE COURT:  You get an enhanced claim against a

18     bankrupt guarantor.

19                   MR. ROLL:  In these -- in the circumstances

20     presented here --

21                   THE COURT:  That's pretty good stuff.

22                   MR. ROLL:  It's good stuff, but it's consistent

23     with the law.  And I think it's important to note that Your

24     Honor's hypothetical, it's a fair question, but in that

25

Page 39

1    circumstance, Maverick could have taken -- made the choice

2    at any point along the way to say, give me my stuff back.

3              THE COURT:  Right.

4              MR. ROLL:  With the bankruptcy having intervened,

5    we didn't have that choice.  So in Your Honor's hypothetical

6    we could have said, well, you know --

7              THE COURT:  You realize what you just said.  When

8    the bankruptcy intervened, you didn't have that choice.  So

9    that's consistent with the application of the exculpation.

10   It's the absence of choice that was --

11             MR. ROLL:  In terms of the number, because --

12   that's all I was really getting at, Your Honor.  Because

13   when the bankruptcy intervened, when -- and let's, you know

14   --

15             THE COURT:  Go back to my hypothetical though,

16   because a guarantee is a guarantee is a guarantee --

17             MR. ROLL:  Correct.

18             THE COURT:  -- according to you.

19             MR. ROLL:  Right.

20             THE COURT:  So when you -- you get a guarantee

21   from LBHI parent --

22             MR. ROLL:  Uh-huh.

23             THE COURT:  -- and then you decide to terminate --

24             MR. ROLL:  Right.

25

Page 40

1          THE COURT:  -- and your stuff is worth less, you

2    have a guarantee.  Well, I don't understand why out of

3    bankruptcy you would not be able to then say, make good on

4    the guarantee.

5          MR. ROLL:  We have a guarantee for whatever the

6    obligation is at that point.

7          THE COURT:  At the point of the termination.

8          MR. ROLL:  No, no.  In this particular instance,

9    there was no termination.  The value of the guarantee

10   derives from the claim we're able to assert under Section

11   502 of the Bankruptcy Code against LBIE on or LBHI and LBIE

12   on the petition date --

13         THE COURT:  But the claim was unliquidated on the

14   petition date.

15         MR. ROLL:  Understood.  But New York law says,

16   it's a New York law governed contract, New York law says the

17   damages are measured from the date of the breach.  The

18   breach occurred on the date they went into administration,

19   which is the same date that LBHI filed for Chapter 11.

20         So that's when things begin.  And on that date, we

21   have a claim against LBIE under New York law for the amount

22   of the securities, i.e., you know, what they're holding

23   because they breached the obligations to return those.

24         We have a claim under the guarantee, as of that

25

1     same date for that same amount, but we can't exercise it, we

2     can't exercise the right under the guarantee because LBHI

3     has filed.

4          So at that point and from that point, we have a

5     claim for 118, at least 118, the value of the securities at

6     that point and cash, which they don't dispute.  Every day

7     from that point, until we get to March of 2012, and under

8     the LBHI theory today, everything changes at that point.

9          They say, well, the settlement agreement is

10    entered into, it effectuates a payment in full to Maverick,

11    the liability under all the agreements, including the

12    guarantee, is extinguished and everybody goes home. But

13    that's not quite right.

14          That doesn't take into account the -- two things,

15    two sets of things.  The first thing is the facts, what

16    actually happened at that point, which is there was a --

17    LBIE's liability and the damages was actually compromised at

18    that point, following a real live negotiation engaged in by

19    real live people coming up with a real live agreement, which

20    Mr. Levine quoted from, and I'm going to quote from too.

21          That said because of the positions taken in that

22    negotiation and because of the application of UK insolvency

23    law, all you're going to get, Maverick, at this point, is

24    the value that UK insolvency law would say you get, which is

25

1    the value of the cash and securities at that point, the

2    101.9.

3              But it didn't change what was owed to us under the

4    guarantee, the amount of the claim for which was fixed as of

5    the petition date, unless there's some basis on which it can

6    be set that got terminated, and this was a question Your

7    Honor put to Mr. Levine at the very beginning of his

8    argument, you know, which is -- if it's not terminated --

9              THE COURT:  But you're assuming your conclusion.

10   You're assuming that simply because there was an LBHI

11   petition date --

12             MR. ROLL:  Uh-huh.

13             THE COURT:  -- and you can come up with a number -

14   -

15             MR. ROLL:  Right.

16             THE COURT:  -- a value of the securities on that

17   petition date, that that's the amount you get to assert

18   against LBHI on the guarantee.  But that's not an argument,

19   that's just ipse dixit, I mean --

20             MR. ROLL:  Under 502, the amount of a claim is

21   fixed as of petition.

22             THE COURT:  But that assumes that 562(a) does not

23   apply.

24             MR. ROLL:  Well, 562(a) does not apply, and I can

25

Page 43

1    go right into that if Your Honor would like.  This may be

2    the nub of it, you know, they say the agreement -- the

3    guarantee was terminated for two sets of reasons --

4              THE COURT:  Forget about whether it's terminated

5    or not.  Assume it's not terminated.

6              MR. ROLL:  If the guarantee -- if it is not

7    terminated and if the guarantee was not terminated and 562

8    does not apply, there should be absolutely no dispute that

9    we're entitled to what Section 502 would say we can assert

10   against the guarantor, which is the value as of the petition

11   date.  Their entire argument on sufficiency rests on the

12   notion that we were somehow paid in full, which relates to

13   the very "facty" set of issues surrounding the numbers, and

14   I was going to get to --

15             THE COURT:  What do you mean "facty" issues

16   surrounding the numbers?  There's no facts surrounding the

17   numbers.  You say you should be able to assert a claim on

18   the guarantee for the 118 so essentially you can get

19   distributions from LBHI that would catch you up and give you

20   full recovery on the 118 as opposed to the 101, that you've

21   already gotten.

22             MR. ROLL:  I was referring to the back and forth

23   between the parties in the negotiations, the evidence of

24   which is not at all before the Court at this stage, that

25

1    resulted in the number of 101.9 at the time we did the

2    settlement with LBIE, that's what I was referring to.

3         But the second part of their, you know, you-were-

4    paid-in-full argument is that the guarantee was terminated,

5    and therefore 562 kicks in and that's how you measure the

6    damages.  But let's think about that.  562 requires at least

7    three things, a specific party, a specific kind of an

8    agreement, and a specific action being undertaken on behalf

9    -- by that party with respect to that agreement.

10        We're not going to fight about, you know, the

11   specific party here, you know, whether it's a securities

12   contract or whatever, but we do take issue with the notion

13   that the guarantee was actually terminated in connection

14   with the settlement, because it clearly was not.

15        The settlement agreement itself says, quite

16   clearly that it's terminating the relationship between LBIE

17   and Maverick and not anybody else, and it specifically

18   reserves to Maverick the right to pursue claims against any

19   other Lehman entity.

20        THE COURT:  Sure, but you know, this is where you

21   go into your, you know, your Ivanhoe argument which you

22   think is a show stopper.  But the fact of the matter is that

23   all of that only stands for the proposition that had claims

24   against LBIE, claims -- if LBIE had not been a 100 percent

25

1    payor, you would unquestionably be able to assert the full

2    amount of that claim against LBHI so that you could become

3    paid in full, but you got paid in full by LBIE on the 101.

4              MR. ROLL:  We got paid 101, but that was not --

5    that was clearly not payment in full in the eyes of the

6    Maverick people.

7              THE COURT:  So let me ask you a different

8    question.  Let's take a little walk around the Bankruptcy

9    Code.

10             MR. ROLL:  Okay.

11             THE COURT:  502(b)(6).

12             MR. ROLL:  502(b)(6), okay.

13             THE COURT:  All right.  The cap on lease rejection

14   damages.

15             MR. ROLL:  Okay.

16             THE COURT:  See, he is smarter than you, he knows

17   exactly what it is.

18             MR. MARTIN:  We were going to bring up this

19   example, Your Honor.

20             THE COURT:  Okay.  All right.  So 502(b)(6) says

21   if, you know, if you reject a lease, your damages are capped

22   pursuant to 502(b)(6).

23             MR. ROLL:  Right.

24             THE COURT:  Right.  And the landlord might say,

25

Page 46

1   well, that's really nice, tenant debtor, but I've got this

2   nice guarantee.  Okay.  So I would think that you would tell

3   me, see, that's just like this, we've got this guarantee so

4   that the allowance of the lesser amount pursuant to the

5   Bankruptcy Code doesn't mean that I don't get to assert the

6   full amount of my damages against my guarantor, right?

7              MR. ROLL:  Correct.

8              THE COURT:  Okay.  However, under the Bankruptcy

9   Code if your guarantor is a debtor it doesn't work that way,

10  the cap applies.

11             So this notion that there's some greater ability

12  to recover under applicable -- I put in air quotes, although

13  air quotes have been much maligned nowadays -- applicable

14  non-bankruptcy law, you know, doesn't necessarily fly.   And

15  here I draw an analogy to the way 562(a) works both as a

16  matter of policy and actually by its terms --

17             MR. ROLL:  Uh-huh.

18             THE COURT:  -- to rebut the concept that, you

19  know, a guarantee, is a guarantee, is a guarantee, and you

20  get more than your -- the obligation owed to you by your

21  primary obligor, which is in fact what you're seeking.

22             MR. ROLL:  Right.

23             THE COURT:  You're seeking more than what your

24  primary obligor owed you.

25

1              MR. ROLL:  Because of the operation of UK

2    insolvency rules we get the value of the securities on that

3    date.  And there is law from the southern district, cited in

4    our papers, which they don't deal with, unless I missed it,

5    and I don't think I did, the Instituto (ph) case on page 14

6    of our --

7              THE COURT:  Uh-huh.

8              MR. ROLL:  -- objection, which basically says that

9    the discharge -- a guarantor's obligations on the guarantee

10   are not discharged by reason of discharge of the primary

11   obligor's obligations as a result of foreign bankruptcy law.

12   That's still good law from the district court here, and they

13   don't address it at.

14             So as a result of that that discharge at the level

15   of 101.9 as a result of the negotiations we had with them

16   over what counted and what didn't to get to the final

17   number, means that we still retain the full amount of the

18   claim against the guarantor, you know, regardless of what

19   happens in connection with the foreign bankruptcy

20   proceeding.

21             So you still have that, and if you combine that

22   with Ivanhoe that means we can still recover -- we can still

23   assert the full amount of the claim against the co-

24   obligor/guarantor up to the point of payment in full,

25

1    payment in full being defined by New York law in this

2    circumstance, because damages are measured as of the date of

3    the breach, against the guarantor.

4              So -- and I sense that Your Honor apprehends that

5    this is the argument, because this is where the Court

6    started with Mr. Levine, so I know that I'm not saying

7    anything that Your Honor doesn't already know that we're

8    going to say, but that really is the nub of the argument.

9              What I would say with respect to the hypothetical

10   scenarios and the 506(b), you know, I'm not smart enough to

11   parse 506(b) on the fly, maybe Mr. Martin can do it, he

12   can --

13             THE COURT:  502(b)(6).

14             MR. ROLL:  502(b)(6), I'm sorry -- you know, maybe

15   he can do it and fix whatever I've left unfixed at that

16   point, but respectfully we're not dealing with a

17   hypothetical circumstance.

18             THE COURT:  But we're not -- but we're also not

19   dealing with New York law, we're dealing with the Bankruptcy

20   Code and we're dealing with the operation of 562(a) --

21             MR. ROLL:  Right.

22             THE COURT:  -- under the Bankruptcy Code two

23   securities contracts.

24             MR. ROLL:  But -- right.

25

Page 49

1          THE COURT:  Which is -- the prime brokerage

2     agreement certainly is, and which the guarantee certainly

3     is.

4          MR. ROLL:  Well we'll assume that for the purposes

5     of this argument, but that's only two -- that's two-thirds

6     -- or that's one-third, and I'll concede the other third --

7          THE COURT:  Why isn't --

8          MR. ROLL:  Because it was not terminated.  It was

9     not terminated in connection with the settlement, period,

10    full stop, because of what the parties did and because of

11    what the documents provide.

12         THE COURT:  Well but there's terminate and there's

13    terminated, right?  To the extent that the underlying

14    relationship terminates, right, let's go back to my

15    502(b)(6) example --

16         MR. ROLL:  Uh-huh.

17         THE COURT:  -- to the extent that the underlying

18    relationship terminates I'm not exactly sure what the

19    termination of a guarantee means.  There are no ongoing --

20    there's no ongoing relationship between the primary obligor

21    and the primary obligee, but the obligation of the guarantor

22    to pay it is what it is as of that moment in time.

23         MR. ROLL:  But the guarantee itself tells us what

24    it means for the guarantee to not exist -- for the

25

1    obligations under the guarantee to not exist.  And we should

2    look at that.  There's only one instance in which the

3    guarantee itself -- and this is the one that's toward the

4    back of the book, I forget which tab it is -- but it's the

5    one that the parties have referred to as the LBHI guarantee.

6              THE COURT:  Uh-huh.

7              MR. ROLL:  4(c).

8              THE COURT:  Uh-huh.

9              MR. ROLL:  If Your Honor would look at the --

10             THE COURT:  But you have to deal with the language

11   that says that -- the termination language that says that

12   all obligations --

13             MR. ROLL:  Uh-huh.

14             THE COURT:  -- are terminated.

15             MR. ROLL:  You're talking about the language in

16   the settlement agreement.

17             THE COURT:  Yeah.

18             MR. ROLL:  All obligations of LBIE.

19             THE COURT:  No, but that's not exactly right.

20             Let me -- you show me what you wanted to show me.

21             MR. ROLL:  I'll show -- well let's go to the --

22   let's talk about the settlement agreement first --

23             THE COURT:  Sure.

24             MR. ROLL:  -- because we're on it, and then we'll

25

1    go back to the guarantee.

2              THE COURT:  What's -- give me the tab, please.

3              MR. MARTIN:  4(e).

4              MR. ROLL:  4(e) for the settlement agreement.

5              THE COURT:  4(e).  Okay.

6              MR. ROLL:  If Your Honor would look at paragraph

7    2.1(a), I think this is one of those that Mr. Levine may

8    have actually pointed Your Honor to.

9              THE COURT:  Yep.

10             MR. ROLL:  But it says the relevant agreements and

11   all transactions thereunder --

12             THE COURT:  Uh-huh.

13             MR. ROLL:  -- are terminated as between LBIE and

14   each Maverick entity.  It doesn't say anything about LBHI,

15   it doesn't say anything about the --

16             THE COURT:  No, I'm thinking of --

17             MR. ROLL:  -- guarantee.

18             THE COURT:  -- a different provision.  I'll have

19   to find it.

20             MR. ROLL:  Okay.  But this one doesn't go away, I

21   mean this one is here.

22             The second part of that, subsection (b) says that

23   this deed shall be a full and final settlement of all

24   rights, obligations, liabilities, and claims, et cetera, et

25

1    cetera, which LBIE and each Maverick entity may have against

2    one another, including, but not limited to, and it goes on

3    from there.  And it doesn't say anything about LBHI.

4              THE COURT:  Well --

5              MR. ROLL:  And they knew about LBHI at the time

6    and they knew about the guarantee.

7              You can then look at paragraph 2.3, which is the

8    release language, the releases, which are actually once

9    litigated you can say that's the most operative part of any

10   settlement agreement most important, and the one where it's

11   most important to be clear provides that it's only the

12   Maverick entities and LBIE that are releasing each other

13   with respect to all claims.

14             Again, the parties knew about LBHI and the

15   guarantee.

16             THE COURT:  But the guarantee says that the

17   guarantee will remain in full force and effect until the

18   first to occur of --

19             MR. ROLL:  Right.

20             THE COURT:  -- the obligations defined term, no

21   longer in existence, and the prime brokerage guarantee

22   defines obligations as all obligations under the agreements,

23   a defined term, and the defined term agreements includes the

24   prime brokerage agreements, the GMSLAs, and the letter

25

1    agreement, and the MLAs.  So --

2              MR. ROLL:  But the obligations no longer being in

3    existence is not a termination under this language.

4    Termination is -- this is the point I was trying to get to

5    before.  Termination is effectuated by notice.  Obligations

6    no longer being in existence means, has to be based on the

7    other language in this document, paid in full, and that has

8    to mean --

9              THE COURT:  You're ignoring the language --

10             MR. ROLL:  -- under New York law.

11             THE COURT:  -- that says the guarantee will remain

12   in full force and effect.

13             MR. ROLL:  Right.  Until the first --

14             THE COURT:  Until the obligations are no longer in

15   existence.

16             MR. ROLL:  But the obligations are in fact in

17   existence.  The obligations are still in existence because

18   we have not been paid in full --

19             THE COURT:  Can you hold on one second?

20             MR. ROLL:  Certainly.

21             THE COURT:  Hold on one second.

22        (Pause)

23             THE COURT:  Okay.  Go ahead, Mr. Roll, sorry.

24             MR. ROLL:  I would just contend, Your Honor, that

25

Page 54

1    that -- you know, termination is the trigger for 562.  My

2    point is that the obligations no longer being in existence

3    is not a termination point, it has to do with actual payment

4    in full.

5            And the reason I say that is, that position is

6    consistent with the rest of the language in the agreement,

7    which actually indicates that there are certain

8    circumstances in which the obligations still remain.  In

9    fact the very next sentence.  Termination of this guarantee

10   shall not affect the guarantor's liability hereunder as to

11   the obligations incurred or arising out of transactions

12   entered into it prior to the termination thereof.

13           So obligations still being in existence is

14   separate and apart from termination.  It's a separate

15   concept.

16           THE COURT:  Okay.

17           MR. ROLL:  And there's actually another provision

18   in here that says the obligations can spring back to life if

19   they -- even if they've been paid in full and a bankruptcy

20   proceeding allows them to be avoided -- payments to Maverick

21   to be avoided.

22           So termination and obligations being paid in full

23   are two different concepts in this guarantee, and I think it

24   was carefully drafted for that reason, and -- or to

25

1    establish that or to leave to be a readily ascertainable

2    inference to draw from the document.

3            And it must mean, I think any way, and we've made

4    this point in the papers, that paid in full doesn't relate

5    to terminating the obligations of LBIE as a result of the

6    operation of UK insolvency law and the settlement and

7    whatever was done there and whatever was left open or not,

8    but rather New York law, which says the damages are measured

9    as of the petition date, which is the date of the breach.

10           THE COURT:  Okay.  Do you want to -- we should

11   turn to anything you want to say about exculpation and we

12   should turn to anything you want to say about direct claims

13   and/or amendments.

14           MR. ROLL:  Yeah, on that, Your Honor, I'll turn it

15   over to Mr. Martin who will cover exculpation.

16           THE COURT:  Okay.

17           MR. ROLL:  Probably the other items as well, but

18   if not I can come back on this.

19           THE COURT:  Okay.

20           MR. ROLL:  Thank you, Your Honor.

21           MR. MARTIN:  Good morning, Your Honor.

22           THE COURT:  Good morning.

23           MR. MARTIN:  Thank you for indulging our --

24           THE COURT:  No problem.

25

Page 56

1          MR. MARTIN:  -- tag team presentation.

2          THE COURT:  Always like it when the younger person

3     teaches the older person a thing or two.

4          MR. MARTIN:  I don't think that's going to happen

5     today, but --

6          MR. ROLL:  I actually appreciate it too, Your

7     Honor.

8          MR. MARTIN:  Could I touch on briefly the example

9     in the question that you opened with to Mr. Roll?

10          THE COURT:  Sure.

11          MR. MARTIN:  Because I think that you're creating

12     a hypothetical that can't and won't happen in the real

13     world,and it is not the case that we are asserting a claim

14     for one penny more than we are entitled to outside of

15     bankruptcy.

16          You raised the hypothetical in which we went --

17          THE COURT:  Hold on one second.

18      (Pause)

19          THE COURT:  Go ahead.

20          MR. MARTIN:  You proposed a hypothetical in which

21     we wanted to terminate our relationship with the Lehman

22     entities outside of bankruptcy.

23          THE COURT:  Uh-huh

24          MR. MARTIN:  Every day outside of bankruptcy that

25

1     we have a long position open, we're betting on Apple stock,

2     for instance, we are assuming the risk that Apple stock goes

3     up or down.

4              THE COURT:  Yes.

5              MR. MARTIN:  So it's in custody with them, but

6     every day we have it with them --

7              THE COURT:  You do have that risk, right.

8              MR. MARTIN:  And so if we tell them we want to

9     terminate the relationship, please give us our securities

10    back or the monetary equivalent --

11             THE COURT:  Uh-huh.

12             MR. MARTIN:  -- they have to give it back to us.

13             THE COURT:  Uh-huh.

14             MR. MARTIN:  If they take two years to execute

15    that instruction and during that two years after which we've

16    told them we don't want to be invested in Apple stock --

17             THE COURT:  Uh-huh.

18             MR. MARTIN:  -- we get the Apple stock back and

19    its declined in value --

20             THE COURT:  Right.  That's --

21             MR. MARTIN:  -- in that case, yes, the guarantee

22    kicks in.

23             THE COURT:  That's a fair clarification.

24             But here this goes right -- this takes us right to

25

Page 58

1    exculpation.  Here LBIE filed.

2               MR. MARTIN:  It filed, that's right.

3               THE COURT:  And that's what caused the delay.

4               MR. MARTIN:  I don't think that our claim was

5    caused by a bankruptcy.  Our claim is based on the fact --

6               THE COURT:  Why didn't you get your securities

7    back sooner?  You didn't get your securities back sooner

8    because there was a bankruptcy.

9               MR. MARTIN:  But surely that's not what the force

10   majeure clause was intended to capture and pick up.

11              THE COURT:  You don't think?

12              MR. MARTIN:  It talks about tornados, it talks

13   about insurrections, it does not reference --

14              THE COURT:  It does not reference --

15              MR. MARTIN:  -- bankruptcy.

16              THE COURT:  -- specifically -- well Judge Glenn in

17   MF Global certainly thought that suspension of trading by

18   SIPA with respect to LBI was pretty much of a financial

19   tornado.

20              MR. MARTIN:  Respectfully we think he's wrong.

21   It's a term of art in the financial world.  On suspension of

22   trading I think we have a half page footnote --

23              THE COURT:  Okay.

24              MR. MARTIN:  -- citing what a suspension of

25

1      trading means.

2              Critically I also think that the MF Global

3      language and exculpation clause also included a reference to

4      all laws.  This one does not.  So there is an important

5      distinction between the language that was at issue in that

6      case and our language.

7              And the other thing, Your Honor, that makes it I

8      think crystal clear to me, that the guarantee could not have

9      been eviscerated by a force majeure clause, is that the

10     guarantee itself says as much.

11             I'm at the third paragraph of paragraph -- of tab

12     C --

13             THE COURT:  Okay.

14             MR. MARTIN:  -- behind tab 4 --

15             THE COURT:  Okay.

16             MR. MARTIN:  -- and there's a provision in the

17     guarantee that expressly notes that the obligations under

18     the guarantee kick in if we are the subject of a claw-back

19     resulting from a preference.

20             THE COURT:  Where are you?

21             MR. MARTIN:  It's the third full paragraph down,

22     Your Honor.  It's about two-thirds of the way down.

23             THE COURT:  This guarantee is?

24             MR. MARTIN:  Correct.  And if you read that whole

25

1    paragraph what you'll see is that it expressly and

2    unambiguously contemplates that they will have to pay us

3    under the guarantee if we are the subject of a claw-back

4    with respect to a preference or a fraudulent conveyance.

5                    THE COURT:  Okay.

6                    MR. MARTIN:  That can mean one thing only.

7                    Now, I know we're not making a claim based on a

8    preference and I know we're not making a claim based on a

9    fraudulent conveyance, but what this unambiguously means is

10   that if as a consequence of a bankruptcy we don't get paid

11   in full this guarantee is triggered.  The parties said as

12   much.

13                   And what else is a guarantee for?

14                   THE COURT:  It doesn't say that, let alone

15   unambiguously say that, but it's interesting.

16                   MR. MARTIN:  A preference would be consequence of

17   a bankruptcy.

18                   THE COURT:  I'm going to decline your invitation

19   to go down that path, because that's not what this says.

20   It's --

21                   MR. MARTIN:  Your Honor, we had some points to

22   make on netting as well if you'd like to hear those.  I

23   don't know if those are the --

24                   THE COURT:  I actually would not.  I think I'm

25

1    okay on netting.

2           The only other thing that I'm interested in

3    hearing is about this concept that there's either an

4    embedded direct claim in the claims that were filed or that

5    the Maverick entities ought to be allowed to amend to assert

6    a direct claim, which seems to include some notion of lost

7    investment opportunities.  Is that on you or Mr. Roll?

8           MR. MARTIN:  I can handle it, Your Honor.

9           :  That's perfectly fine.  Counsel is being

10    generous to us and preserving our right.

11          We're not taking the position that there is a

12    direct claim embedded in the proof of claim.

13          THE COURT:  Okay.  Because I didn't see.

14          MR. MARTIN:  And it's not there.

15          THE COURT:  Okay.

16          MR. MARTIN:  However, and this is critical, and

17    this speaks importantly to a point that you were discussing

18    with Mr. Roll.  An absolute and unconditional guarantee of

19    payment is a standalone document under New York law and a

20    standalone series of obligations.

21          So our point on the direct claim is that it is so

22    similar to the claim asserted with respect to the guarantee

23    claim that we should be permitted an opportunity to amend,

24    if necessary, although that only comes into play if you

25

Page 62

1    disagree with Mr. Roll that 562 doesn't apply because the

2    guarantee wasn't terminated.  We don't need the direct claim

3    otherwise so there's no need for you to resolve that unless

4    you go against us on 562.

5            THE COURT:  But here's the part I don't

6    understand.  If you think you have a claim for the delta

7    between 101- and 118- --

8            MR. MARTIN:  Uh-huh.

9            THE COURT:  -- which you do.

10           MR. MARTIN:  Correct.

11           THE COURT:  Okay?  Then you think you have a claim

12   for lost investment opportunities, because I assume that the

13   theory of the claim is that if we had had that $5 million

14   for that period of time we would have invested in all this

15   great stuff and we would have made all this money.

16           So the notion that you have that claim but you

17   didn't assert it, it just doesn't make any sense.

18           MR. MARTIN:  You're switching I think from the

19   direct claim to the consequential damages claim, and those

20   are two different things in my mind.  And I do think, Your

21   Honor, the proof of claim did adequately address our theory

22   of consequential damages.

23           THE COURT:  You think a guarantee claim includes a

24   claim for loss investment opportunities?

25

Page 63

1              MR. MARTIN:  I think our proof of claim --

2              THE COURT:  Really?

3              MR. MARTIN:  -- adequately stated -- yes, Your

4    Honor.

5              THE COURT:  Where does it say that?

6              MR. MARTIN:  Under tab 5, page 2, the first --

7    sorry -- the last sentence, it's about halfway down on page

8    2 in Roman I.

9              THE COURT:  Uh-huh.

10             MR. MARTIN:  This is a very broad and very general

11   statement, Your Honor.  We said, "this proof of claim

12   constitutes a demand for payment under the guarantee".  That

13   refers to a payment of any amount owed as a result of the

14   breach of the guarantee which occurred under New York State

15   law as of the petition date.

16             THE COURT:  So you can say to me today that

17   statement means that we have a claim for lost investment

18   opportunities for $50 million?  Surprise LBHI, how's your

19   reserve looking?  I mean that's --

20             MR. MARTIN:  There should be --

21             THE COURT:  -- it doesn't work that way.  Okay?

22   It doesn't work that way.

23             MR. MARTIN:  Are there any other points that Your

24   Honor would like to hear addressed?

25

1             THE COURT:  All right.

2             MR. MARTIN:  Thank you, Your Honor.

3             THE COURT:  Thank you.  Clean up, anyone?

4             MR. LEVINE:  Yeah, Your Honor, I'd appreciate -- I

5     can be very quick.

6             THE COURT:  I'm going to hold you to that.

7             MR. LEVINE:  Fair enough.  You've been very

8     generous with your time.

9             Okay.  So the first thing, I just wanted to

10    enforce a few things that Your Honor questioned counsel

11    about.  In terms of the exculpation provision and what

12    happened after LBIE filed for administration, on page 8 of

13    their response --

14            THE COURT:  And counsel cited a district court

15    case that says it's dispositive in their favor of that

16    argument that --

17            MR. LEVINE:  Well what I was going to point you

18    to, Your Honor --

19            THE COURT:  Yeah.

20            MR. LEVINE:  -- was their own statement.  I'm

21    reading from their brief, and you know, that in opposition

22    to the current objection, the one they filed.

23            LBIE -- under the -- this is tab 2, page 8, if you

24    want to read along, paragraph 22.  "The Maverick claims are

25

1    straightforward.  Under the prime brokerage agreements and

2    the New York Uniform Commercial Code, LBIE was obligated to

3    return all custodied, cash and securities to the Maverick

4    entities upon request.  LBIE, however, was not in the

5    position to do so after having commenced its administration

6    proceedings".

7              To me that necessarily would require rulings, that

8    is, under clause 28 of the PB agreement,  "You'll agree that

9    Lehman Brothers will be liable for any loss caused, directly

10   or indirectly, by government restrictions, exchange or

11   market rulings" -- that doesn't really apply – "suspension

12   of trading..."  They couldn't perform.  They admit the

13   reason they have a loss is because once LBIE filed for

14   administration, it wasn't able to trade, it wasn't able to

15   perform.  To me that's clearly covered.

16             In terms of the lost opportunities, the last

17   sentence of paragraph 29 of the PB agreement says, "in no

18   event will Lehman Brothers be liable for any special,

19   indirect, incidental or consequential damages."  Lost

20   investment opportunities are quintessential consequential

21   damages.  Consequential damages you almost never get unless

22   you have a specific instrument you can point to.

23             In terms of the guarantee.  Your Honor, I think,

24   was completely on point when you were directing counsel to

25

1    the last paragraph on the first page of the guarantee.

2    "This guarantee will remain in full force and effect until"

3    – "until" means something -- "the first to occur of…the

4    obligations are no longer in existence."

5              As you pointed out, the obligations refer back to

6    LBIE's obligations as a  guarantee.  It's not direct

7    obligations, it's guaranteed obligations.  LBIE's

8    obligations were completely released and extinguished by the

9    settlement.

10             And in terms of the distinction, which I don't

11   really understand, between termination and ending of the

12   guarantee, the next sentence says, "termination of this

13   guarantee shall not affect."  Clearly, it understood the

14   prior sentence to relate to a termination of the guarantee.

15             As you know that, you know, we don't think it

16   matters for 562 whether the guarantee was terminated, even

17   though we think it was, because it governs damages in

18   relation to securities contracts, master nettings

19   agreements, the damages at issue are those that are running

20   under the prime brokerage documents which I think is clearly

21   under the very, very broad language of the second circuit

22   in --

23             THE COURT:  Madoff.

24             MR. LEVINE:  -- Picard versus Ida Fishman,

25

1    including they specifically call out were it not for the

2    account documents -- I'm reading from the second circuit

3    decision — "were it not for the account documents there

4    would be no basis for a customer to make deposits or request

5    withdrawals."

6              Their attempt to distinguish the PB agreement from

7    the definition of a securities contract, because what they

8    want was to get their securities back and not buy or sell

9    trades, is specifically described by the second circuit as

10   something that made the account agreements there a

11   securities contract.

12             And finally, Your Honor, I mean just to be kind of

13   crude, they paid $30 million.  They paid $30 million to

14   LBIE.

15             You know, you can't have an obligation to the

16   primary obligor and think you have a guarantee claim, it

17   just doesn't make sense.

18             THE COURT:  Okay.

19             MR. LEVINE:  Thank you.

20             THE COURT:  All right.  So, last licks, Mr. Roll?

21             MR. ROLL:  Please, Your Honor.

22             THE COURT:  Sure.

23             MR. ROLL:  And I promise, I will be quicker than

24   Mr. Levine.  And I appreciate the time --

25

Page 68

1                    THE COURT:  Sure.

2                    MR. ROLL:  -- I appreciate everyone's patience.

3                    The last point we paid $30 million, we would have

4      paid a lot less if we had gotten full credit for the

5      securities cash that they had that they owed us, so that's a

6      red herring.

7                    THE COURT:  What do you mean if you had gotten

8      full credit --

9                    MR. ROLL:  If we had gotten everything that we

10     thought we were entitled to under -- from LBIE, if all the

11     positions had been closed out as we requested and the

12     resisted in the course of the negotiations we would have

13     ended up paying less.

14                   So it's -- it doesn't mean that we weren't

15     entitled to --

16                   THE COURT:  Okay.  Well I don't want -- I'm not --

17                   MR. ROLL:  But --

18                   THE COURT:  I really am trying to resist anyone

19     luring me away -- into contested facts, so.

20                   MR. ROLL:  Well I was going to stop at that point.

21     The bottom line on that is, it is part of a set of contested

22     facts which is inappropriate at a sufficiency hearing, and

23     they know full well that there was a lot more to the story

24     of what went on in those negotiations and what's in the

25

1    papers, because --

2            THE COURT:  Okay.  But you're doing precisely what

3    I said I'm not -- I don't believe that there's a need to go

4    beyond the undisputed facts --

5            MR. ROLL:  Okay.

6            THE COURT:  -- of using the 101- and comparing it

7    to the 118- that is now being sought.

8            MR. ROLL:  Then I'll close on this point, Your

9    Honor.

10            With respect to the termination of the guarantee

11   as a matter of fact it was not terminated, absolutely --

12            THE COURT:  What about the plan provision?  What

13   about the argument that once you get to the plan it's over,

14   it's rejected?

15            MR. ROLL:  As an executory contract?

16            THE COURT:  Yeah.

17            MR. ROLL:  I think it fails the Countryman test,

18   there were no remaining obligations on the part of Maverick,

19   so I don't think it actually qualifies as an executory

20   contract.  And we saw that for the first time in their reply

21   brief, you know, that's my kneejerk reaction to that.  It's

22   the first we had heard of that.  But again, I don't think it

23   meets the test for an executory contract.

24            This is the point I wanted to close on.  The

25

Page 70

1    guarantee was not terminated as a matter of fact or law or

2    else there would have been no reason for the existence in

3    the settlement agreement of the provision that preserved for

4    us the right to proceed against other Lehman entities.  That

5    can only mean that we had the right to proceed on other

6    obligations held by other Lehman entities, including LBHI,

7    including the guarantee.

8            And on the proof of claim issue, you know, LBHI is

9    really claiming they're surprised by the consequential

10   damages point which we have been discussing with them for

11   quite some time and they know it --

12           THE COURT:  It's not a question of what you've

13   been discussing with them, it's a question of what the proof

14   of claim says, so.

15           MR. ROLL:  And if they believe it's not fairly set

16   forth, if the Court believes it's not fairly set forth we

17   would respectfully ask for the opportunity to move to amend

18   to make that claim, because we believe sincerely it's been

19   clear to them all along, and if need be to make it clearer

20   we'll do it in writing.

21           THE COURT:  Okay.

22           MR. ROLL:  Thank you, Your Honor.

23           THE COURT:  Thank you.

24           So you can probably tell that I spent a lot of

25

1    time on this before today, but I very much wanted to hear

2    from you, because the issues are many, and here's the thing,

3    you're entitled to, and I think this probably merits a full-

4    blown written opinion.  When that would occur, just look

5    around.  Starting trial in another Lehman matter on

6    April 3rd, 150 million at issue.  As soon as that's over,

7    starting trial on another Lehman matter in which the amount

8    at issue is $2 billion.  That promises to take me into 2018,

9    and that's just Lehman.  I have a full docket otherwise.  So

10   I don't want to deprive you of what you're entitled to, but

11   I'd also like to help you progress beyond today.

12           So I'm going to give you my bullet points, what my

13   ruling -- what the decision will look like.  Beyond that, I

14   can't give you a date when I would issue a formal memorandum

15   opinion, but perhaps this could provide the bases for you to

16   have further discussions and figure out whether you want to

17   wait, you know, exercise appeal rights, etcetera, et cetera.

18           If there were 48 hours in the day or if there were

19   two of me I could move more quickly, but it just -- it is

20   what it is.  So it was a good happenstance that I was able

21   to even fit you in today for this hearing.

22           So the bottom line is that the Maverick claims

23   should be disallowed and expunged.  The claims have been

24   satisfied in full by LBIE.  Although claims are typically

25

Page 72

1       valued under the Code as of the petition date, here Section

2       562(a) is applicable and provides an alternative date for

3       valuing claims that arise from the rejection, liquidation,

4       termination, or acceleration of certain specified contracts,

5       including "master netting agreements," in quotes, and

6       "securities contracts," in quotes.

7              So the prime brokerage agreements are securities

8       contracts and master netting agreements within the meaning

9       of Section 562(a).

10             Maverick's arguments that its claims are not based

11      on the securities contract aspects of the prime brokerage

12      documents and thus are not subject to 562 fails because the

13      argument is contrary not only to the courts' expansive

14      reading of the term "securities contracts," and more

15      specifically the second circuit's holding in the Madoff case

16      finding that brokerage account agreements similar to those

17      here are in fact securities contracts, and that's explored

18      in some detail at pages 5 to 7 of Lehman's reply;Maverick's

19      severability argument, as I'll call it, ignores the fact

20      that the prime brokerage guarantee is a separate securities

21      agreement under the Code, and regardless of whether certain

22      obligations arising under the prime brokerage agreements are

23      severable, which I don't believe that they are, Section

24      562(a) applies here because the claims are based upon a

25

Page 73

1    guarantee which qualifies as "a security agreement or other

2    arrangement or other credit enhancement related to a

3    securities contract or a master netting agreement."  And

4    once again, thedefinitions of these important terms are

5    spelled out in Lehman's reply on page 7.

6              So the operative date for valuing the claims under

7    562(a) is the settlement date, which is March 30, 2012, the

8    date of the Maveric-LBIE settlement.

9              Each of the prime brokerage agreements, including

10   the guarantee, terminated on the settlement date.  Pursuant

11   to the terms of the settlement agreement all quote/unquote

12   obligations under the prime brokerage documents were -- to

13   use the words of that agreement -- no longer in existence

14   from and after the settlement date.  Therefore, Maverick's

15   reliance on the petition date for the valuation of its

16   claims is simply not correct.  The prime brokerage

17   agreements were terminated in all respects, functionally,

18   not only as to LBIE.

19             Moreover, 562(a) would apply even if the guarantee

20   had not been terminated, because nothing in 562(a) requires

21   that a guarantee be terminated for such section to apply.

22   562 governs the measurement of "damages," quote/unquote, in

23   connection with, among other things, the termination of

24   securities contracts and master netting agreements.

25

Page 74

1            As Lehman correctly points out, Maverick's reading

2       of Section 562(a) would limit its applicability and in

3       effect create a two-tier system of measuring damages.

4            First, primary claims in accordance with Section

5       562(a) as of the date of contract rejection, termination,

6       acceleration, or liquidation; and two, related guarantee

7       claims measured as of a different date.

8            I believe that this is incompatible with the

9       policy behind such guarantees, which are given in essence to

10      assure that the liability of the principal obligator, the

11      primary obligor, is satisfied, which is what occurred here.

12           Value of the Maverick guarantee claims are covered

13      by Section 562(a), they were valued at one hundred and one

14      point nine million dollars as of the settlement date, which

15      was the date that Maverick was made whole by LBIE.

16           Maverick cites Ivanhoe, but Ivanhoe and its

17      progeny merely stand for the proposition that a creditor

18      cannot recover more than the value of its claims or damages,

19      and Ivanhoe does not enable Maverick to assert additional

20      guarantee claim rights against LBHI.

21           Accordingly, I believe that Maverick cannot

22      establish a guarantee claim against LBHI because it cannot

23      establish any unsatisfied obligations of its primary

24      obligor, LBIE.

25

1            Maverick recovered the full value of its long

2    positions as of the settlement date.  It would be contrary

3    to commercial practice and commercial reality for a

4    brokerage customer to be able to recover more from its

5    primary obligor and guarantor in bankruptcy than it would

6    outside of bankruptcy where a customer's economic exposure

7    is measured on a net basis with the value of its long

8    positions offset against its short positions.

9            In addition, for reasons that I will elaborate

10   further in a more complete written opinion, I do believe

11   that Judge Glenn was correct in MF Global, I do believe that

12   under the principles that he articulated and the terms of

13   the documents here that the exculpation provisions would

14   themselves preclude the allowance of, in essence, what is

15   the diminution claim being asserted by the Maverick

16   entities.

17           Finally, I do not believe that Maverick should be

18   allowed to amend its claims in any respects.  Maverick filed

19   guarantee claims, they are clear on its face and I don't

20   believe that they have -- that it would be appropriate to

21   allow them the opportunity to expand upon the theories of

22   liability or the amount or nature of damages which had been

23   asserted in the guarantee claims.

24           So that's kind of the short form of what I would

25

1    write.  I suppose I could give you the option of entering an

2    order and attaching the transcript, or just ask you to wait,

3    or a third option behind door number 3 would be to continue

4    to talk to one another and see if you can come to a

5    consensual resolution.

6            So it's not that I don't believe that this --

7    every claimant's claim is very important, but I just have a

8    reality of what I'm dealing with in terms of when I'd be

9    able to turn something out that I would be willing to sign

10   as a memorandum opinion.

11           MR. ROLL:  We understand that, Your Honor.  I --

12   respectfully I think we would choose a combination of one

13   and three, three being we'll continue to talk, and one being

14   not waiting.  I mean we understand Your Honor is busy.  If

15   Your Honor is inclined or is willing to enter an order with

16   the transcript attached that allows the right to -- affords

17   us the right and the opportunity to take this to the next

18   level we would appreciate that.

19           THE COURT: Well I think fairness you'd have -- I'd

20   want you to discuss that.

21           MR. ROLL:  Okay.

22           THE COURT:  Because I really don't want to be in

23   the position of depriving anyone of due process in any

24   respect and what they're entitled to, and I don't like -- I

25

1    don't want anyone to feel that I'm giving them short shrift.

2             MR. ROLL:  I understand that, Your Honor.  We're

3    sort of -- I'm trying to balance --

4             THE COURT:  Yeah, me too.

5             MR. ROLL:  -- the need to get moving on it --

6             THE COURT:  Me too.

7             MR. ROLL:  -- and again, I don't want to burden

8    the Court.  So we will continue to talk and if we may, would

9    the Court permit us to get back to Your Honor --

10            THE COURT:  Sure.

11            MR. ROLL:  -- with how to proceed?

12            THE COURT:  Absolutely.

13            MR. ROLL:  I will say this though, I've seen in

14   other instances how capable the Court is in terms of turning

15   things out quickly and fully under tough circumstances, so.

16            THE COURT:  Well but just to be clear, because you

17   know, among us who, you know, practice in this building a

18   lot people who know what 502(b)(6) is --

19            MR. ROLL:  You will never let me forget that.

20            THE COURT:  -- do not -- you're not -- no, you're

21   not allowed to give him a hard time when you go back to the

22   office.

23            MR. ROLL:  I'll give him a very good time, because

24   he did well.

25

1             THE COURT:  Good.  I do turn out things very

2     quickly, very voluminous things, but often those are

3     instances in which I have a real live living, breathing,

4     struggling to breath debtor --

5             MR. ROLL:  Understood.

6             THE COURT:  -- and that makes for greater urgency.

7     So I'm trying to not dig myself deeper here, but --

8             MR. ROLL:  That's fine, Your Honor.  We're happy

9     to accommodate that, we'll talk to our friends on the other

10    side and we'll see what we can do.

11            THE COURT:  Okay.

12            MR. ROLL: Thank you, Your Honor.

13            THE COURT:  All right.  Thank you very much.

14        (A chorus of thank you)

15            THE COURT:  Just together just email chambers and

16    just let us know which path you have elected to take, and

17    you need not call out the party who's dissenting.

18        (Laughter)

19            THE COURT:  Okay?  If there's a dissent.  If

20    there's agreement, great.  If there's a dissent just say,

21    you know, we're going to wait or whatever it is we're going

22    to do.

23            MR. ROLL:  Very well, Your Honor.

24            THE COURT:  All right.

25

1          (A chorus of thank you)

2               THE COURT:   Thanks a lot.  Have a great weekend.

3          (Whereupon these proceedings were concluded at 11:36

4    AM)

5                         *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                           RULINGS

3                                                              PAGE

4      Doc #53107 Plan Administrators Five Hundred          69

5    Nineteenth Omnibus Objection to Claims

6     (No Liability Claims)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T I O N

2

3      We, Sheila Orms and Dawn South, certify that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6      _____

7      Sheila Orms

8      Certified Electronic Transcriber

9

        _____

10

11     Dawn South

12     AAERT Certified Electronic Transcriber CET**D-408

13

14     Date:  March 27, 2017

15

16

17

18

19     Veritext Legal Solutions

20     330 Old Country Road

21     Suite 300

22     Mineola, NY 11501

23

24

25

| & | | |
|---|---|---|
| **&**  3:4,13 35:14 | | |

| **0** |
|---|
| **08-13555**  1:3 |

| **1** |
|---|
| **1**  20:8 23:18,19 |
| **1.286**  24:24 |
| **1.3**  25:5 |
| **100**  44:24 |
| **10022**  3:16 |
| **101**  43:20 45:3,4 |
| 62:7 69:6 |
| **101.9**  9:10 30:20 |
| 44:1 47:15 |
| **101.9.**  42:2 |
| **10153**  3:7 |
| **10:03**  1:16 |
| **11**  8:15,21,22 |
| 40:19 |
| **11501**  81:22 |
| **118**  41:5,5 43:18 |
| 43:20 62:7 69:7 |
| **118.1**  30:19 |
| **12**  20:15 |
| **12.1d**  20:23 |
| **13**  21:12 27:4 |
| 31:21 |
| **13th**  15:19 |
| **14**  47:5 |
| **150**  71:6 |
| **16.2**  14:8 16:6 |
| 17:22 30:21 31:5 |
| 32:4,13 |
| **187**  25:1 |
| **187.3**  30:7,17 31:6 |

| **2** |
|---|
| **2**  10:19,23 24:2,21 |
| 63:6,8 64:23 71:8 |
| **2.1**  51:7 |
| **2.1.a**  10:17 |
| **2.3**  52:7 |

| **2002**  23:2,3 |
|---|
| **2012**  15:19,22 |
| 41:7 73:7 |
| **2017**  1:15 81:14 |
| **2018**  71:8 |
| **22**  8:15,23 64:24 |
| **23**  9:1 |
| **24**  1:15 |
| **27**  20:9,11 81:14 |
| **28**  65:8 |
| **29**  65:17 |

| **3** |
|---|
| **3**  20:6,11 25:4,12 |
| 25:13 27:5 31:17 |
| 76:3 |
| **30**  67:13,13 68:3 |
| 73:7 |
| **300**  81:21 |
| **30th**  15:22 |
| **32**  18:12 19:10,12 |
| **330**  81:20 |
| **3rd**  71:6 |

| **4** |
|---|
| **4**  8:12,13,14,20,21 |
| 10:9,10,14 31:19 |
| 31:19,19 50:7 |
| 51:3,4,5 59:14 |
| **4.3**  16:22,22,24 |
| 17:4,9,15 29:17 |
| **408**  81:12 |
| **42**  20:14 |
| **44**  21:16 |
| **48**  71:18 |
| **4b**  18:15,19,22 |
| 19:8 |

| **5** |
|---|
| **5**  22:18,19 23:14 |
| 35:3 62:13 63:6 |
| 72:18 |
| **50**  63:18 |
| **502**  26:9 38:12 |
| 40:11 42:20 43:9 |

| 45:11,12,20,22 |
|---|
| 48:13,14 49:15 |
| 77:18 |
| **506**  48:10,11 |
| **53107**  2:2 80:4 |
| **562**  4:21 8:2,7 |
| 11:17 13:18,21 |
| 14:7,22,23,24 |
| 15:13 16:7,13,23 |
| 17:23 26:10 28:1 |
| 28:2,12 29:2,14 |
| 30:22 33:2,3,4,6 |
| 33:11,11,14,15 |
| 42:22,24 43:7 |
| 44:5,6 46:15 |
| 48:20 54:1 62:1,4 |
| 66:16 72:2,9,12 |
| 72:24 73:7,19,20 |
| 73:22 74:2,5,13 |
| **599**  3:15 |

| **6** |
|---|
| **6**  45:11,12,20,22 |
| 48:13,14 49:15 |
| 77:18 |
| **69**  80:4 |

| **7** |
|---|
| **7**  72:18 73:5 |
| **741**  15:5 |
| **767**  3:6 |

| **8** |
|---|
| **8**  64:12,23 |
| **80**  20:9,11,14 |
| 21:16 |

| **9** |
|---|
| **9**  19:13 |
| **99**  35:23 |

| **a** |
|---|
| **aaert**  81:12 |
| **ability**  46:11 |
| **able**  14:10 40:3,10 |
| 43:17 45:1 65:14 |

| 65:14 71:20 75:4 |
|---|
| 76:9 |
| **absence**  39:10 |
| **absolute**  61:18 |
| **absolutely**  43:8 |
| 69:11 77:12 |
| **acceleration**  72:4 |
| 74:6 |
| **accept**  23:8,9 |
| **accepting**  15:15 |
| 15:17 16:5 |
| **accommodate** |
| 78:9 |
| **account**  12:6,7 |
| 14:4 17:3 23:22 |
| 25:15 41:14 67:2 |
| 67:3,10 72:16 |
| **accurate**  81:4 |
| **accusation**  25:19 |
| **acknowledge** |
| 23:12 |
| **acquired**  7:13 |
| **action**  44:8 |
| **active**  20:24 21:1 |
| **actual**  15:22 54:3 |
| **adam**  3:9 |
| **add**  7:3,4 |
| **addition**  31:16 |
| 32:4 75:9 |
| **additional**  26:12 |
| 34:13 35:2 74:19 |
| **address**  27:21 |
| 47:13 62:21 |
| **addressed**  63:24 |
| **adequately**  62:21 |
| 63:3 |
| **administration** |
| 21:10 40:18 64:12 |
| 65:5,14 |
| **administrator** |
| 4:10 21:8 |
| **administrators** |
| 2:2 80:4 |

admit  26:23 28:7
  65:12
admitting  24:20
advanced  5:10
advantage  22:7
affect  11:15 54:10
  66:13
affidavit  15:19
affiliates  24:17
afford  35:20
affords  19:23
  76:16
agent  24:16
aggregate  30:8
aggregates  24:24
agree  6:22 19:6
  24:7 26:8 27:10
  33:8 35:9 37:19
  65:8
agreeing  15:16
agreement  9:12
  10:9 12:5,7 15:1,2
  15:4,8,9,10 18:8
  18:13,20,23 19:1
  19:15 20:8,10
  21:20,22 22:4,5,6
  22:12 24:3,4,5
  28:4,21 34:8,18
  36:16 41:9,19
  43:2 44:8,9,15
  49:2 50:16,22
  51:4 52:10 53:1
  54:6 65:8,17 67:6
  70:3 72:21 73:1,3
  73:11,13 78:20
agreements  10:18
  10:20,21,21,22,23
  10:24 12:18 13:24
  18:5 21:21 24:3,8
  26:14 28:14,16
  32:9,11,12 41:11
  51:10 52:22,23,24
  65:1 66:19 67:10

72:5,7,8,16,22
  73:9,17,24
agrees  17:7
ahead  53:23 56:19
air  46:12,13
allow  8:6 75:21
allowance  46:4
  75:14
allowed  5:13 7:23
  34:3,5,6,9 61:5
  75:18 77:21
allows  54:20
  76:16
alternative  72:2
amend  26:15,22
  26:23 27:19 31:3
  61:5,23 70:17
  75:18
amendments
  55:13
american  6:24
amount  16:21
  17:5,19 22:21
  24:24 25:5,14
  26:4 29:17,18
  34:5 40:21 41:1
  42:4,17,20 45:2
  46:4,6 47:17,23
  63:13 71:7 75:22
amounts  21:15
  25:5,15 30:9 32:8
ample  32:13
analogous  21:2,3
analogy  46:15
answer  5:16
anybody  44:17
anyway  23:13
apart  54:14
appeal  71:17
appearing  35:15
apple  57:1,2,16,18
applicability  74:2

applicable  46:12
  46:13 72:2
application  4:21
  23:7 38:12 39:9
  41:22
applied  18:10
applies  8:7 15:13
  28:1 33:2,11,15
  46:10 72:24
apply  13:18 14:7
  16:7,10,13,24
  17:23 28:13 31:10
  31:10 33:16 38:10
  42:23,24 43:8
  62:1 65:11 73:19
  73:21
appointment  21:3
  21:8
appreciate  56:6
  64:4 67:24 68:2
  76:18
apprehends  48:4
approach  29:22
  33:14
appropriate
  75:20
appropriately
  34:10
approximate  9:12
approximately
  9:10
april  71:6
argue  13:22 26:18
  27:19 28:18 35:20
argued  5:20
argues  25:8
arguing  11:10
argument  9:22
  11:13 13:12,19,22
  14:14,16 27:22
  28:2 29:2,14 42:8
  42:18 43:11 44:4
  44:21 48:5,8 49:5

64:16 69:13 72:13
  72:19
arguments  4:16
  12:2 17:23 28:4
  28:12 35:8 72:10
arising  54:11
  72:22
arrangement  73:2
art  58:21
articulated  37:4
  75:12
ascertainable
  55:1
asked  33:1 34:1
asking  7:17 30:21
  38:5
aspects  72:11
assert  9:19 26:15
  27:18 30:17 31:3
  40:10 42:17 43:9
  43:17 45:1 46:5
  47:23 61:5 62:17
  74:19
asserted  27:6,12
  27:17 30:13 31:2
  31:8 32:7 34:7
  61:22 75:15,23
asserting  10:5
  26:13 56:13
assertion  16:18
asserts  25:4
assets  24:12,15,16
  24:23 26:5 28:8
assume  31:8 43:5
  49:4 62:12
assumes  42:22
assuming  42:9,10
  57:2
assure  74:10
attached  20:7
  76:16
attaching  76:2

**attempt** 67:6
**attorneys** 3:5,14
**automatic** 21:17
  21:22 22:13
**avenue** 3:6,15
**avoidance** 25:13
**avoided** 54:20,21
**aware** 7:21 34:2
  34:24 35:3

**b**

**b** 1:18 45:11,12,20
  45:22 48:10,11,13
  48:14 49:15 51:22
  77:18
**back** 30:10 31:23
  36:18 37:17,19
  38:6 39:2,15
  43:22 49:14 50:4
  51:1 54:18 55:18
  57:10,12,18 58:7
  58:7 59:18 60:3
  66:5 67:8 77:9,21
**background** 5:4
  35:7
**bailee** 24:16
**balance** 77:3
**bankrupt** 38:18
**bankruptcy** 1:1
  1:11,20 23:20
  33:9 38:3,13,14
  38:15 39:4,8,13
  40:3,11 45:8 46:5
  46:8,14 47:11,19
  48:19,22 54:19
  56:15,22,24 58:5
  58:8,15 60:10,17
  75:5,6
**based** 23:17 53:6
  58:5 60:7,8 72:10
  72:24
**bases** 71:15
**basically** 15:20
  31:21,23 32:19

47:8
**basis** 16:22 17:9
  27:23 42:5 67:4
  75:7
**bat** 36:10
**beginning** 42:7
**begins** 9:4
**behalf** 24:17
  35:15 44:8
**believe** 4:20 69:3
  70:15,18 72:23
  74:8,21 75:10,11
  75:17,20 76:6
**believes** 32:13
  70:16
**bell** 19:7
**bench** 29:22
**benefits** 19:24
**benefitted** 12:20
**best** 20:3
**better** 21:21
**betting** 57:1
**beyond** 69:4
  71:11,13
**big** 38:3
**billion** 37:13 71:8
**bit** 6:15
**blown** 71:4
**book** 50:4
**books** 33:18
**bottom** 8:17 24:5
  68:21 71:22
**bowling** 1:12
**box** 23:16
**breach** 33:7 40:17
  40:18 48:3 55:9
  63:14
**breached** 40:23
**breath** 78:4
**breathing** 78:3
**brief** 18:6 20:7,7
  64:21 69:21

**briefly** 56:8
**bring** 10:8 45:18
**broad** 63:10 66:21
**broadly** 36:11
**broker** 12:3,10,13
  31:9 36:19 37:8
  37:16
**brokerage** 10:20
  12:4,5,6,6,18 15:1
  15:8 18:8,13,20
  18:23,24 20:8,10
  21:19 22:12 24:3
  24:7,9,10,10,19
  24:23 25:6,17
  28:5,13,18 29:9
  31:3 32:8,10
  36:16 49:1 52:21
  52:24 65:1 66:20
  72:7,11,16,20,22
  73:9,12,16 75:4
**brothers** 1:7 12:8
  12:9 19:19,23
  20:9 65:9,18
**building** 77:17
**bullet** 71:12
**burden** 77:7
**business** 15:20
**busy** 76:14
**buy** 67:8

**c**

**c** 1:19 3:3 4:4
  21:14 50:7 59:12
  81:1,1
**calculate** 21:15
  33:7
**call** 22:4 32:3 37:1
  67:1 72:19 78:17
**cancellation** 9:5,8
**cap** 45:13 46:10
**capable** 27:22
  77:14
**capped** 45:21

**capture** 58:10
**carefully** 22:23
  54:24
**case** 1:3 5:10
  16:24 18:1 21:1,4
  23:20 47:5 56:13
  57:21 59:6 64:15
  72:15
**cases** 29:11
**cash** 9:13,19
  12:16 28:8 41:6
  42:1 65:3 68:5
**catch** 43:19
**caused** 58:3,5
  65:9
**certain** 24:7,12
  34:7,19 54:7 72:4
  72:21
**certainly** 24:13
  25:21 29:14 49:2
  49:2 53:20 58:17
**certified** 81:8,12
**certify** 81:3
**cet** 81:12
**cetera** 51:24 52:1
  71:17
**challenging** 15:24
**chambers** 78:15
**chance** 34:4
**change** 26:4 42:3
**changes** 41:8
**chapman** 1:19
**chapter** 40:19
**characterization**
  6:23
**check** 23:16 34:4
**checked** 22:23
**choice** 39:1,5,8,10
**choose** 76:12
**chorus** 78:14 79:1
**chose** 16:20
**circuit** 66:21 67:2
  67:9

circuit's 72:15
circumstance
38:5 39:1 48:2,17
circumstances
34:8 35:6 38:19
54:8 77:15
cited 18:7 47:3
64:14
cites 74:16
citing 58:24
claim 10:4,5 12:24
13:11 14:17 17:20
22:17,24 23:6,17
23:19,21,21 25:2
25:4,4,14,14,20
26:1,3,6,7,10
27:19 30:4,7,9,16
30:16 31:6,8 32:5
33:5,5 34:5,6,7,9
35:2,4 36:5 38:17
40:10,13,21,24
41:5 42:4,20
43:17 45:2 47:18
47:23 56:13 58:4
58:5 60:7,8 61:4,6
61:12,12,21,22,23
62:2,6,11,13,16
62:19,19,21,23,24
63:1,11,17 67:16
70:8,14,18 74:20
74:22 75:15 76:7
claimant 17:14
claimant's 76:7
claimants 11:7
claimed 22:21
claiming 70:9
claims 2:3,3 5:12
5:12,20,22,24 6:6
6:6,11 7:9,11,13
7:16,22 12:23,24
13:2,2,3,4,6,11
25:1 26:12,13,16
26:19 27:5,12

30:13 31:2,3,10
33:3 34:2,13,17
34:19,22 44:18,23
44:24 51:24 52:13
55:12 61:4 64:24
71:22,23,24 72:3
72:10,24 73:6,16
74:4,7,12,18
75:18,19,23 80:5
80:6
clarification
57:23
clause 33:10
58:10 59:3,9 65:8
claw 59:18 60:3
clean 64:3
clear 21:7,16,22
21:24 52:11 59:8
70:19 75:19 77:16
clearer 70:19
clearly 12:9 23:8
24:1 29:2,3,8
44:14,16 45:5
65:15 66:13,20
client 34:4
close 21:12 69:8
69:24
closed 68:11
code 15:5 33:9
38:13 40:11 45:9
46:5,9 48:20,22
65:2 72:1,21
collateral 24:16
colleague 35:16
collect 32:16
column 9:4
combination
76:12
combine 47:21
come 42:13 55:18
76:4
comes 30:14
61:24

coming 41:19
commenced 65:5
commencement
37:7
comment 7:2
commercial 65:2
75:3,3
commitments
23:24
comparing 69:6
complete 35:4
75:10
completely 27:11
65:24 66:8
complex 4:15
complexity 4:14
complicated 6:16
components 30:17
compromised
41:17
concede 49:6
concedes 9:9
concept 46:18
54:15 61:3
concepts 54:23
concluded 79:3
conclusion 42:9
conflict 19:22
connection 9:11
24:18 25:6 32:8
44:13 47:19 49:9
73:23
consensual 76:5
consequence
60:10,16
consequential
31:11,12,14 62:19
62:22 65:19,20,21
70:9
consistent 25:22
29:11 38:22 39:9
54:6

constellation 22:5
constitutes 20:20
25:2 63:12
contemplates 60:2
contend 53:24
contested 68:19
68:21
contesting 23:7
continue 32:16
76:3,13 77:8
continues 24:6,15
contract 13:15
15:7,10 18:12
19:21 20:2,2
28:15,24 40:16
44:12 67:7,11
69:15,20,23 72:11
73:3 74:5
contracts 13:23
13:23 14:22 19:18
19:21 28:14 48:23
66:18 72:4,6,8,14
72:17 73:24
contrary 18:3,4
72:13 75:2
control 21:21
controlled 24:12
controlling 11:17
controls 13:21
33:10
conveyance 60:4
60:9
convince 16:7
corporate 23:1,23
corporation 23:9
correct 7:8 16:15
19:7 22:10 33:23
33:24 37:14 39:17
46:7 59:24 62:10
73:16 75:11
correctly 18:9
74:1

**counsel** 17:6
29:22 61:9 64:10
64:14 65:24
**counted** 47:16
**counterparty**
34:6
**country** 81:20
**countryman**
69:17
**couple** 32:24 36:7
**course** 14:13
20:17 23:15 27:19
35:22 36:9 68:12
**court** 1:1,11 4:5,8
4:11,13 5:2,4,6,9
6:4,18,22 7:2,7,19
7:24 8:3,12,14,20
8:22,24 9:6,24
10:2,5,12,15
11:12,19,22 12:12
12:15 13:3,5
14:16,24 15:6,12
16:1,4,12,17 17:1
18:14,17,21,23
19:2,6,8,12,14
20:4,12,16 21:18
22:2,18 25:12,18
25:23 26:2,15,20
27:1,21 29:23
30:1,5 31:18,20
32:1,22 33:17,22
34:15,21 35:1,5,7
35:11,13,18,19,22
36:1,4,7,10,14,18
36:21 37:1,6,10
37:12,15 38:1,7
38:10,14,17,21
39:3,7,15,18,20
39:23 40:1,7,13
42:9,13,16,22
43:4,15,24 44:20
45:7,11,13,16,20
45:24 46:8,18,23

47:7,12 48:5,13
48:18,22 49:1,7
49:12,17 50:6,8
50:10,14,17,19,23
51:2,5,9,12,16,18
52:4,16,20 53:9
53:11,14,19,21,23
54:16 55:10,16,19
55:22,24 56:2,10
56:17,19,23 57:4
57:7,11,13,17,20
57:23 58:3,6,11
58:14,16,23 59:13
59:15,20,23 60:5
60:14,18,24 61:13
61:15 62:5,9,11
62:23 63:2,5,9,16
63:21 64:1,3,6,14
64:14,19 66:23
67:18,20,22 68:1
68:7,16,18 69:2,6
69:12,16 70:12,16
70:21,23 76:19,22
77:4,6,8,9,10,12
77:14,16,20 78:1
78:6,11,13,15,19
78:24 79:2
**courts'** 72:13
**cover** 55:15
**covered** 21:8
65:15 74:12
**crazy** 17:17
**create** 74:3
**creating** 56:11
**credit** 68:4,8 73:2
**creditor** 74:17
**critical** 61:16
**critically** 59:2
**crude** 67:13
**crystal** 59:8
**cumulative** 19:14
**current** 26:4
30:14 64:22

**custodied** 65:3
**custodies** 37:12
**custody** 12:14,15
24:23 26:5 36:22
57:5
**customer** 67:4
75:4
**customer's** 75:6
**customers** 12:14
12:22

**d**

**d** 4:4 21:8,16 80:1
81:12
**damages** 15:14
16:6,10,16,17
17:22 18:1 27:8,8
27:13,14 29:7,12
29:15 31:4,11,12
31:14 32:1,2,17
32:17 33:3,6,7,11
40:17 41:17 44:6
45:14,21 46:6
48:2 55:8 62:19
62:22 65:19,21,21
66:17,19 70:10
73:22 74:3,18
75:22
**date** 9:16,17,18,20
9:21,23,24 13:17
13:17,22 14:7,8,9
14:10,11,12,14,19
14:20 15:22 16:19
17:9 24:22 26:9
26:10 28:8 29:1
29:18 30:19,20,23
33:7,12,12,12
34:19 37:5,21
40:12,14,17,18,19
40:20 41:1 42:5
42:11,17 43:11
47:3 48:2 55:9,9
63:15 71:14 72:1
72:2 73:6,7,8,10

73:14,15 74:5,7
74:14,15 75:2
81:14
**dawn** 3:2 81:3,11
**day** 15:22 41:6
56:24 57:6 71:18
**deal** 15:20 47:4
50:10
**dealer** 12:3 31:19
36:19 37:16
**dealing** 48:16,19
48:19,20 76:8
**debtor** 1:9 23:21
46:1,9 78:4
**debtor's** 23:20,22
**decide** 37:15
39:23
**decided** 36:15
**decision** 16:9,12
67:3 71:13
**declarations** 6:21
**decline** 60:18
**declined** 57:19
**decrease** 14:6
**deed** 51:23
**deeper** 78:7
**default** 18:10
20:17,18,20 21:6
21:9,11,13,23
**defaulting** 20:21
20:22 21:4,5,15
22:9
**defenses** 31:9
**defer** 5:18
**defined** 10:23
48:1 52:20,23,23
**defines** 24:8 52:22
**definition** 15:4
67:7
**degree** 4:14
**delay** 58:3
**delighted** 36:1

**delta** 62:6
**demand** 25:2
  63:12
**demonstrative**
  30:1,2
**deny** 32:14
**depending** 26:4
**deposits** 67:4
**deprive** 71:10
**depriving** 76:23
**derives** 40:10
**described** 67:9
**describing** 25:3
**detail** 72:18
**difference** 6:17
  22:24 30:21
**different** 4:16
  14:3 24:8 29:11
  37:16 45:7 51:18
  54:23 62:20 74:7
**dig** 78:7
**diminished** 38:9
**diminution** 14:9
  15:14 16:6,10,16
  16:17 17:22,24
  29:7,12,15 37:2,3
  75:15
**direct** 23:2,3,4,6,7
  23:11 26:13,16,19
  31:3 55:12 61:4,6
  61:12,21 62:2,19
  66:6
**directing** 65:24
**directly** 65:9
**disagree** 62:1
**disallowed** 5:13
  71:23
**discharge** 47:9,10
  47:14
**discharged** 47:10
**discovery** 11:5
**discuss** 76:20

**discussing** 61:17
  70:10,13
**discussions** 71:16
**dismiss** 15:16
**dispositive** 5:11
  64:15
**dispute** 28:4,20
  29:4 41:6 43:8
**disputes** 28:1,3
**disputing** 28:9,10
  29:4 34:12,16
**dissent** 78:19,20
**dissenting** 78:17
**distinction** 59:5
  66:10
**distinguish** 67:6
**distributions**
  43:19
**district** 1:2 47:3
  47:12 64:14
**dixit** 42:19
**doc** 2:2 80:4
**docket** 71:9
**document** 53:7
  55:2 61:19
**documents** 11:5
  24:9,10,11,19,24
  25:7,17 26:17
  28:6,13,18 29:9
  31:4 32:11 49:11
  66:20 67:2,3
  72:12 73:12 75:13
**doesn't** 16:10
**doing** 69:2
**dollars** 34:13
  37:13,21,22 74:14
**door** 76:3
**doubt** 25:14
**drafted** 54:24
**draw** 46:15 55:2
**drop** 25:10
**due** 34:7 76:23

**e**

**e** 1:18,18 3:3,3 4:4
  4:4 10:10 51:3,4,5
  80:1 81:1
**earlier** 11:5
**easier** 18:17
**ecf** 20:9
**economic** 75:6
**ecro** 2:1
**effect** 21:20 52:17
  53:12 66:2 74:3
**effective** 13:17
**effectively** 9:10
**effectiveness** 29:1
**effectuated** 53:5
**effectuates** 41:10
**either** 5:13 12:10
  26:9 30:12 61:3
**elaborate** 75:9
**elected** 78:16
**electronic** 81:8,12
**elements** 8:6
**email** 78:15
**embedded** 26:19
  61:4,12
**enable** 74:19
**encapsulate** 22:2
**ended** 68:13
**enforce** 64:10
**enforceable** 23:9
  23:10,12
**engaged** 41:18
**english** 6:20 7:1
  9:14
**enhanced** 23:15
  23:20 38:17
**enhancement**
  73:2
**enter** 76:15
**entered** 19:20
  20:2 41:10 54:12
**entering** 76:1

**entire** 19:14 43:11
**entirely** 28:3
**entirety** 4:22
**entities** 3:14 24:6
  24:22 25:16 32:5
  35:15 36:14 52:12
  56:22 61:5 65:4
  70:4,6 75:16
**entitiesmaverick**
  32:15
**entitled** 9:22 14:9
  29:16 30:12 43:9
  56:14 68:10,15
  71:3,10 76:24
**entitlements** 27:7
  27:13
**entity** 11:3,15
  19:19 44:19 51:14
  52:1
**equivalent** 57:10
**esq** 3:9,10,11,18
  3:19
**essence** 74:9
  75:14
**essentially** 7:12
  11:13 43:18
**establish** 16:7
  55:1 74:22,23
**estimate** 7:11
**estimated** 6:1
**estimation** 5:7,23
  6:1,9,10 8:9 9:18
  27:5 30:15 31:16
  32:14 34:11,17
**et** 51:24,24 71:17
**etcetera** 71:17
**europe** 20:10
**event** 20:18,20
  21:9,10,13,23,23
  65:18
**events** 20:17,19
**everybody** 41:12

everyone's 68:2
evidence 43:23
eviscerated 59:9
exactly 7:21 9:17
  12:1 45:17 49:18
  50:19
example 14:17
  15:17 45:19 49:15
  56:8
excerpts 18:16
exchange 65:10
exculpation 12:21
  16:9,13 17:24
  39:9 55:11,15
  58:1 59:3 64:11
  75:13
exculpatory 29:9
  36:3
execute 57:14
executory 13:15
  28:24 69:15,19,23
exercise 41:1,2
  71:17
exercises 26:5
exhibit 20:8
exist 49:24 50:1
existence 52:21
  53:3,6,15,17,17
  54:2,13 66:4 70:2
  73:13
expand 75:21
expansive 72:13
expects 32:15
expenses 30:10,24
expert 6:20
explored 72:17
exposure 75:6
expressly 12:5
  30:8,9 59:17 60:1
expunged 71:23
extent 11:1 12:23
  13:10 15:8 19:18
  20:1 27:16,18

49:13,17
extinguished
  41:12 66:8
eyes 45:5

**f**

f 1:18 3:18 81:1
face 75:19
fact 11:23 12:4,10
  13:13 22:7,8 23:3
  23:8,10 28:2
  38:13 44:22 46:21
  53:16 54:9 58:5
  69:11 70:1 72:17
  72:19
facts 28:3 29:3
  41:15 43:16 68:19
  68:22 69:4
factual 28:9 31:14
facty 43:13,15
fail 3:10 5:18 7:5
  7:6,7,8,21 32:24
  33:23,24 34:16,22
  35:2,6,9
fails 69:17 72:12
fair 38:24 57:23
  64:7
fairly 70:15,16
fairness 76:19
far 6:14 22:19,22
fault 15:12
favor 19:22 64:15
february 15:18
feel 77:1
fees 27:7,11 30:10
  30:24 32:6,17
fifth 3:6
fight 44:10
figure 20:18 22:14
  71:16
filed 7:17 21:10
  23:19 26:16 40:19
  41:3 58:1,2 61:4
  64:12,22 65:13

75:18
filing 23:18 36:11
  38:3
filings 20:9
final 32:23 47:16
  51:23
finally 13:12
  33:13 67:12 75:17
financial 58:18,21
find 51:19
finding 72:16
fine 5:16 26:11
  35:12 61:9 78:8
first 5:1,6 8:8 9:15
  23:13,15 24:11,14
  41:15 50:22 52:18
  53:13 63:6 64:9
  66:1,3 69:20,22
  74:4
fishman 66:24
fit 71:21
five 2:2 8:16
  16:19,19 17:7
  80:4
fix 48:15
fixed 42:4,21
fly 46:14 48:11
focus 4:22 8:2
folks 19:6
following 20:19
  21:13 41:18
footnote 25:10,12
  25:13 27:4,5
  31:13,17,21 32:19
  58:22
force 52:17 53:12
  58:9 59:9 66:2
foregoing 81:3
foreign 47:11,19
forget 43:4 50:4
  77:19
form 23:16 75:24

formal 71:14
forth 43:22 70:16
  70:16
four 19:17
frankly 22:11
fraudulent 60:4,9
friends 78:9
full 13:24 23:22
  32:11 41:10 43:12
  43:20 44:4 45:1,3
  45:3,5 46:6 47:17
  47:23,24 48:1
  49:10 51:23 52:17
  53:7,12,18 54:4
  54:19,22 55:4
  59:21 60:11 66:2
  68:4,8,23 71:3,9
  71:24 75:1
fully 77:15
fun 35:24
function 17:12
functionally
  73:17
functions 12:4
fund 17:3 22:20
  23:15,20
fundamental
  33:13
funds 16:19,20
  17:8
further 71:16
  75:10
future 32:16
  34:20

**g**

g 4:4
garrett 3:10 7:3,5
  33:24
general 63:10
generally 32:7
generous 61:10
  64:8

getting 39:12
give 36:18 37:17
  39:2 43:19 51:2
  57:9,12 71:12,14
  76:1 77:21,23
given 5:9 74:9
giving 77:1
glenn 58:16 75:11
global 10:21 16:9
  18:2 24:4 29:11
  58:17 59:2 75:11
gmslas 52:24
go 9:2 18:19 19:10
  19:16 20:6,13
  21:12 24:2 26:12
  36:19 37:16,22
  39:15 43:1 44:21
  49:14 50:21 51:1
  51:20 53:23 56:19
  60:19 62:4 69:3
  77:21
goes 4:17 41:12
  52:2 57:2,24
going 4:8 6:8 8:1
  10:9 13:1 16:1
  17:4,4 22:22 36:5
  36:18 37:16 41:20
  41:23 43:14 44:10
  45:18 48:8 56:4
  60:18 64:6,17
  68:20 71:12 78:21
  78:21
good 4:7 18:12
  35:10,13 38:21,22
  40:3 47:12 55:21
  55:22 71:20 77:23
  78:1
gotshal 3:4 4:10
  33:24
gotten 29:20
  43:21 68:4,7,9
governed 6:16
  19:4 40:16

government 65:10
governs 23:5
  66:17 73:22
granted 4:22
great 62:15 78:20
  79:2
greater 29:18
  46:11 78:6
green 1:12
gross 25:14
guarantee 5:14,15
  5:20,24 6:6 10:2,6
  12:24 13:2,3,4,11
  15:2,4,9 16:15
  17:11,12 18:4
  22:21 23:2,3,4,4,6
  23:8,11,17,22
  24:2 25:3 28:15
  30:7,16 31:10
  33:3 34:9,10 37:2
  39:16,16,16,20
  40:2,4,5,9,24 41:2
  41:12 42:4,18
  43:3,6,7,18 44:4
  44:13 46:2,3,19
  46:19,19 47:9
  49:2,19,23,24
  50:1,3,5 51:1,17
  52:6,15,16,17,21
  53:11 54:9,23
  57:21 59:8,10,17
  59:18,23 60:3,11
  60:13 61:18,22
  62:2,23 63:12,14
  65:23 66:1,2,6,12
  66:13,14,16 67:16
  69:10 70:1,7
  72:20 73:1,10,19
  73:21 74:6,12,20
  74:22 75:19,23
guaranteed 5:22
  66:7

guaranteeing
  17:19
guarantees 7:10
  7:10 22:24 32:12
  74:9
guarantor 13:9
  33:16 37:10,23
  38:18 43:10 46:6
  46:9 47:18,24
  48:3 49:21 75:5
guarantor's 47:9
  54:10
guess 15:21 29:18

h

half 8:16 37:21,22
  58:22
halfway 9:3 63:7
hand 9:4 19:17
  29:21
handed 32:24
handful 6:3,12
handle 61:8
handout 29:21
happen 56:4,12
happened 41:16
  64:12
happens 47:19
happenstance
  71:20
happy 4:16 78:8
hard 77:21
hear 4:8 60:22
  63:24 71:1
heard 69:22
hearing 2:2 15:16
  16:2,3 27:23 29:5
  61:3 68:22 71:21
held 16:13 24:12
  24:16 29:10 70:6
help 20:4 71:11
heretofore 19:19
  20:2

hereunder 54:10
herring 68:6
highland 35:3
hinting 12:2
hold 8:20 53:19
  53:21 56:17 64:6
holding 40:22
  72:15
holdings 1:7
home 41:12
hon 1:19
honor 4:7,9,12,19
  4:23 5:20 7:5,8
  8:10 11:4 16:8
  17:10 18:7,13,15
  19:7 28:17 29:10
  29:13,14 33:19,20
  34:1 35:10,12,17
  37:4 38:3 39:12
  42:7 43:1 45:19
  48:4,7 50:9 51:6,8
  53:24 55:14,20,21
  56:7 59:7,22
  60:21 61:8 62:21
  63:4,11,24 64:2,4
  64:10,18 65:23
  67:12,21 69:9
  70:22 76:11,14,15
  77:2,9 78:8,12,23
honor's 38:24
  39:5
hoping 35:20
horrible 6:20,23
hours 71:18
how's 63:18
huh 30:5 36:17,24
  39:22 42:12 46:17
  47:7 49:16 50:6,8
  50:13 51:12 56:23
  57:11,13,17 62:8
  63:9
hundred 2:2 6:2,5
  6:8 74:13 80:4

Page 9

**hypothetical** 37:4
37:6 38:24 39:5
39:15 48:9,17
56:12,16,20

**i**

**i.e.** 40:22
**ida** 66:24
**ignores** 72:19
**ignoring** 53:9
**iii** 3:18
**immediately**
21:14
**impact** 28:21
**implicate** 11:16
**important** 22:16
24:9 38:23 52:10
52:11 59:4 73:4
76:7
**importantly**
24:21 61:17
**inaccurate** 27:11
**inappropriate**
68:22
**incident** 5:7
**incidental** 65:19
**inclined** 76:15
**include** 61:6
**included** 59:3
**includes** 52:23
62:23
**including** 27:8,13
27:14 32:17 41:11
52:2 67:1 70:6,7
72:5 73:9
**incompatible** 74:8
**inconsistency**
19:21
**inconsistent** 19:20
20:3
**incremental** 31:4
**incurred** 54:11
**indebtedness** 9:8

**indicates** 54:7
**indirect** 65:19
**indirectly** 65:10
**indiscernible**
27:10
**indulging** 55:23
**inference** 55:2
**information** 5:11
5:17
**initial** 25:5,14
26:3
**insolvency** 20:24
21:1 41:22,24
47:2 55:6
**instance** 40:8 50:2
57:2
**instances** 77:14
78:3
**instituto** 47:5
**instruction** 57:15
**instrument** 65:22
**insurrections**
58:13
**intended** 58:10
**intention** 36:2
**interact** 12:22
**interest** 24:12,14
27:7,11 30:11,24
32:6,17
**interested** 61:2
**interesting** 60:15
**international**
20:10
**intervened** 39:4,8
39:13
**invested** 57:16
62:14
**investment** 27:8
27:14 32:2,18,20
61:7 62:12,24
63:17 65:20
**invitation** 60:18

**ipse** 42:19
**issue** 10:20 18:2
29:8 44:12 59:5
66:19 70:8 71:6,8
71:14
**issues** 8:4 28:9,16
29:5 43:13,15
71:2
**items** 27:9,15
32:18 55:17
**ivanhoe** 8:24
44:21 47:22 74:16
74:16,19

**j**

**j** 3:18
**judge** 1:20 58:16
75:11
**justification**
32:14

**k**

**karen** 2:1
**key** 8:6
**kick** 16:14 59:18
**kicks** 14:22,24
44:5 57:22
**kind** 9:15 22:11
22:11,13 33:4
44:7 67:12 75:24
**kneejerk** 69:21
**knew** 6:7 52:5,6
52:14
**knock** 16:14
**know** 4:13,20 5:9
5:15 6:14 8:9
15:13,23 16:19,20
17:3,5,7,10 18:11
22:10,14,19,23
25:9 29:19,20
31:12 32:21 39:6
39:13 40:22 42:8
43:2 44:3,10,11
44:20,21 45:21
46:14,19 47:18

48:6,7,10,14 54:1
60:7,8,23 64:21
66:15,15 67:15
68:23 69:21 70:8
70:11 71:17 77:17
77:17,18 78:16,21
**knows** 45:16

**l**

**l** 3:11,19
**l.l.p.** 3:4
**landlord** 45:24
**language** 22:22
25:18 28:20 29:8
29:9 50:10,11,15
52:8 53:3,7,9 54:6
59:3,5,6 66:21
**largely** 34:12
**late** 27:20
**laughter** 78:18
**lavine** 3:9
**law** 6:16,20 9:14
18:1 28:16 29:10
29:15 32:21 33:7
38:23 40:15,16,16
40:21 41:23,24
46:14 47:3,11,12
48:1,19 53:10
55:6,8 61:19
63:15 70:1
**laws** 59:4
**lbhi** 3:5 4:10 5:14
5:15 6:7 7:10,17
7:22,23 11:16
12:3,3,13,19,19
13:10,13,14,20
14:18 16:14 23:2
28:19,22 31:8
34:2,7,9 37:10
39:21 40:11,19
41:2,8 42:10,18
43:19 45:2 50:5
51:14 52:3,5,14
63:18 70:6,8

74:20,22

**lbi** 5:15 12:11
18:23 19:1,2,3
22:4,5,12 58:18

**lbie** 4:23 5:14,14
5:20,22,24 6:2,5,7
6:8 7:9,10,22 9:9
9:11,11,13 10:10
10:11 11:2,7,14
11:23 12:10,11,19
13:7,7,8,15 14:10
16:22 17:8,15,16
17:16 19:5 20:10
21:10 22:7 23:24
24:11,12,16,17
28:5,19 30:10
34:3,6,23 36:15
36:23 37:17,18,19
40:11,11,21 44:2
44:16,24,24 45:3
50:18 51:13 52:1
52:12 55:5 58:1
64:12,23 65:2,4
65:13 67:14 68:10
71:24 73:8,18
74:15,24

**lbie's** 21:7 41:17
66:6,7

**lease** 45:13,21

**leave** 29:16,21
55:1

**left** 12:19 48:15
55:7

**legal** 5:16 8:4 27:7
28:3,12,21 29:5,8
32:6,17 35:8
81:19

**lehman** 1:7 12:8,9
12:17 19:19,23
20:3,9 21:21 24:6
24:22 25:16 36:11
44:19 56:21 65:9
65:18 70:4,6 71:5

71:7,9 74:1

**lehman's** 72:18
73:5

**lending** 10:21,22
24:4,5

**lesser** 29:18 46:4

**letter** 23:10 52:24

**level** 47:14 76:18

**levine** 3:11 4:9,9
4:12,19 5:3,5,8,18
6:5,19,24 7:3,15
8:1,4,13,15,21,23
9:1,7 10:1,3,7,13
10:16 11:18,21
12:1,13,16 13:4,6
14:21 15:3,7,13
16:3,5,16,18 17:2
18:15,19,22,24
19:3,10,13,16
20:6,13,17 21:19
22:10,19 25:13,21
25:24 26:3,18,21
27:3,24 29:24
30:2,6 31:19,21
32:2,23 33:19
41:20 42:7 48:6
51:7 64:4,7,17,20
66:24 67:19,24

**lexington** 3:15

**liabilities** 23:24
51:24

**liability** 2:3 16:14
41:11,17 54:10
74:10 75:22 80:6

**liable** 65:9,18

**libby** 7:20

**licks** 67:20

**lien** 24:11,14

**life** 36:12 54:18

**light** 4:14,15 9:5,7

**limit** 11:23 74:2

**limited** 23:15,21
52:2

**line** 68:21 71:22

**lines** 8:16 19:17

**liquidate** 26:6

**liquidation** 33:12
72:3 74:6

**liquidator** 21:3

**list** 10:20 32:11

**listed** 10:22

**litigated** 34:18,23
52:9

**little** 6:15 18:18
45:8

**live** 41:18,19,19
78:3

**living** 78:3

**llp** 3:13

**long** 14:4,6 17:11
18:3 23:14,20
30:18,18 57:1
75:1,7

**longer** 52:21 53:2
53:6,14 54:2 66:4
73:13

**look** 11:20 13:1
14:6 18:2 22:17
22:22 23:18 30:8
50:2,9 51:6 52:7
71:4,13

**looking** 7:18
20:15 23:13 37:5
63:19

**lose** 17:23 18:1

**loss** 62:24 65:9,13

**lost** 15:11 27:8
32:2,18,20 61:6
62:12 63:17 65:16
65:19

**lot** 68:4,23 70:24
77:18 79:2

**lucky** 18:11

**luring** 68:19

**m**

**m** 3:9

**madoff** 66:23
72:15

**main** 14:2,3

**majeure** 58:10
59:9

**majority** 6:11

**making** 60:7,8

**maligned** 46:13

**manges** 3:4

**march** 1:15 15:22
41:7 73:7 81:14

**margin** 19:18

**marginal** 10:21
24:4

**market** 65:11

**martin** 3:19 35:16
35:20 45:18 48:11
51:3 55:15,21,23
56:1,4,8,11,20,24
57:5,8,12,14,18
57:21 58:2,4,9,12
58:15,20,24 59:14
59:16,21,24 60:6
60:16,21 61:8,15
61:16 62:8,10,18
63:1,3,6,10,20,23
64:2

**master** 10:22
13:24 15:9,9
20:10 24:4 28:14
28:15 66:18 72:5
72:8 73:3,24

**matter** 1:5 5:16
11:13 14:13 29:10
29:15 44:22 46:16
69:11 70:1 71:5,7

**matters** 13:9
23:11 66:16

**maveric** 73:8

**maverick** 3:14
4:18,23 6:15 7:16

9:9,14 10:11 11:2
11:7,15 13:15
16:22 17:8,15,16
18:10 21:15 22:20
23:14,20,21 24:8
25:4,6,8,16 26:5
27:12 28:5 30:10
32:5,5,12,15
35:15 36:14 38:4
39:1 41:10,23
44:17,18 45:6
51:14 52:1,12
54:20 61:5 64:24
65:3 69:18 71:22
74:12,15,16,19,21
75:1,15,17,18
**maverick's** 8:8
14:2 24:18,23
27:5 33:14 72:10
73:14 74:1
**maverick's** 72:18
**maximum** 19:23
**mean** 11:17 12:1
14:23 17:5,12
28:23 32:21 42:19
43:15 46:5 51:21
53:8 55:3 60:6
63:19 67:12 68:7
68:14 70:5 76:14
**meaning** 72:8
**means** 8:10 47:17
47:22 49:19,24
53:6 59:1 60:9
63:17 66:3
**measure** 33:4
44:5
**measured** 33:11
40:17 48:2 55:8
74:7 75:7
**measurement**
73:22
**measuring** 74:3

**mediated** 5:21
**mediation** 17:6
35:3
**meets** 69:23
**memorandum**
71:14 76:10
**mention** 27:10
**mentioned** 23:6
**merely** 74:17
**merits** 71:3
**mf** 16:9 18:1
29:11 58:17 59:2
75:11
**million** 9:10 14:8
16:6,22,24 17:9
17:15 24:24 25:1
25:5 29:17 30:7
30:17,20 32:4
34:13 35:3 37:21
37:22 62:13 63:18
67:13,13 68:3
71:6 74:14
**mind** 62:20
**mineola** 81:22
**minus** 30:9 34:13
**minutes** 8:5
**missed** 47:4
**mistake** 18:6
**mlas** 53:1
**moment** 13:1
36:21 49:22
**monetary** 57:10
**money** 28:10
62:15
**morning** 35:10
55:21,22
**motion** 4:21 5:7
6:9,10 7:11 8:9
9:18 15:15 30:15
31:16,22 32:14
34:11
**move** 27:18 70:17
71:19

**moved** 15:23
**moving** 77:5
**multiple** 15:3

### n

**n** 3:3 4:4 80:1
81:1
**nature** 18:4,5
75:22
**necessarily** 46:14
65:7
**necessary** 61:24
**need** 8:11 16:7,7
26:23 62:2,3 69:3
70:19 77:5 78:17
**negotiation** 41:18
41:22
**negotiations**
43:23 47:15 68:12
68:24
**neither** 5:16 11:23
35:8
**net** 16:21,21 17:9
17:11,19 21:17
22:15 24:14,21
26:1 29:17 75:7
**netting** 13:24 15:9
15:10 18:7,8 20:5
21:22,24 22:7,13
25:9,10,11 28:14
28:16 29:6 30:19
60:22 61:1 72:5,8
73:3,24
**nettings** 66:18
**never** 29:20 65:21
77:19
**new** 1:2,13,13 3:7
3:16 32:21 33:6
40:15,16,16,21
48:1,19 53:10
55:8 61:19 63:14
65:2
**newport** 16:8
34:23

**nice** 46:1,2
**nine** 74:14
**nineteenth** 2:3
80:5
**non** 20:21 21:5,14
22:8 46:14
**normal** 30:13
38:4
**note** 32:24 35:17
38:23
**noted** 27:4
**notes** 59:17
**notice** 11:6,8 21:5
21:6,8 53:5
**notion** 7:19 17:10
43:12 44:12 46:11
61:6 62:16
**notwithstanding**
22:3,8
**nowadays** 46:13
**nub** 43:2 48:8
**number** 7:9,13
15:3 16:5,21 17:5
20:14 39:11 42:13
44:1 47:17 76:3
**numbered** 19:12
**numbers** 9:2
15:15 30:3 43:13
43:16,17
**ny** 3:7,16 81:22

### o

**o** 1:18 4:4 81:1
**objected** 6:9
**objection** 2:3 5:23
6:1,12 7:16,17 8:8
27:5 30:15,16
31:17,22 32:20
47:8 64:22 80:5
**obligated** 9:13
65:2
**obligation** 5:14,14
5:15 7:20,22 40:6
46:20 49:21 67:15

**obligations** 7:10
11:16,20,22 12:17
12:21 13:14 23:24
24:18 25:15 31:9
40:23 47:9,11
50:1,12,18 51:24
52:20,22,22 53:2
53:5,14,16,17
54:2,8,11,13,18
54:22 55:5 59:17
61:20 66:4,5,6,7,7
66:8 69:18 70:6
72:22 73:12 74:23
**obligator** 74:10
**obligee** 49:21
**obligor** 17:13
33:15 34:3 46:21
46:24 47:24 49:20
67:16 74:11,24
75:5
**obligor's** 47:11
**obviously** 12:23
17:13 31:7
**occur** 21:14 52:18
66:3 71:4
**occurred** 40:18
63:14 74:11
**occurrence** 20:19
21:13
**occurs** 20:24
**offering** 31:14
**office** 77:22
**officer** 21:4
**offset** 9:12 75:8
**offsetting** 14:5
**okay** 4:8,11 5:9
7:24 10:15 18:15
19:6,8 20:4,13
21:18 22:18 24:13
25:8 27:1 29:24
30:3 31:20 32:23
34:15,21 36:21
37:15,18 45:10,12

45:15,20 46:2,8
51:5,20 53:23
54:16 55:10,16,19
58:23 59:13,15
60:5 61:1,13,15
62:11 63:21 64:9
67:18 68:16 69:2
69:5 70:21 76:21
78:11,19
**old** 81:20
**older** 56:3
**omnibus** 2:3 80:5
**once** 14:22 17:2
52:8 65:13 69:13
73:4
**ones** 6:14
**ongoing** 49:19,20
**open** 55:7 57:1
**opened** 12:7,7
56:9
**opening** 12:6 18:6
**operation** 47:1
48:20 55:6
**operative** 52:9
73:6
**opinion** 71:4,15
75:10 76:10
**opportunities**
27:8,14 32:3,18
32:20 61:7 62:12
62:24 63:18 65:16
65:20
**opportunity**
35:20 61:23 70:17
75:21 76:17
**opposed** 31:5
43:20
**opposition** 18:9
25:8 27:4 64:21
**option** 76:1,3
**order** 76:2,15
**orms** 3:2 81:3,7

**ought** 61:5
**outside** 56:14,22
56:24 75:6
**outstanding** 6:15
7:9,12 34:14,17
**overarching** 5:4
**overstated** 25:19
**owe** 25:16
**owed** 9:9 16:22
17:8,15,16,16
25:5 29:17 30:9
30:23 32:13 42:3
46:20,24 63:13
68:5
**owes** 13:8 22:14

**p**

**p** 3:3,3 4:4
**page** 8:15,21,22
10:14 19:9,13
20:9,11,13,14,14
20:23 21:16 23:15
23:16 24:6 31:1
31:19 47:5 58:22
63:6,7 64:12,23
66:1 73:5 80:3
**pages** 72:18
**paid** 34:10 43:12
44:4 45:3,3,4 53:7
53:18 54:19,22
55:4 60:10 67:13
67:13 68:3,4
**papers** 4:14 33:4
47:4 55:4 69:1
**paragraph** 8:15
8:16,23 9:1,2,3
18:12 19:10,12
23:18,19 24:1,2
24:21 25:4 27:4
31:23 51:6 52:7
59:11,11,21 60:1
64:24 65:17 66:1
**parent** 39:21

**parse** 48:11
**part** 10:17 21:14
23:16 36:15 44:3
51:22 52:9 62:5
68:21 69:18
**particular** 40:8
**parties** 4:18 7:12
7:14,17 34:12,17
43:23 49:10 50:5
52:14 60:11
**parties'** 18:5
**party** 12:20 20:19
20:20,21,21,22,24
21:4,5,15 22:9
44:7,9,11 78:17
**path** 60:19 78:16
**patience** 33:21
68:2
**pause** 53:22 56:18
**pay** 17:17 49:22
60:2
**payable** 32:8
**paying** 6:5 68:13
**payment** 23:23
25:3 41:10 45:5
47:24 48:1 54:7
61:19 63:12,13
**payments** 54:20
**payor** 6:2,4,4,8
45:1
**pb** 22:4,5,6 26:14
32:12 65:8,17
67:6
**penny** 56:14
**people** 41:19 45:6
77:18
**percent** 6:2,6,8
35:23 44:24
**perfectly** 61:9
**perform** 12:3
65:12,15
**period** 49:9 62:14

permit 77:9
permitted 61:23
person 56:2,3
perspective 21:7
petition 9:23,24
  14:6,9,12,14,20
  16:19 17:8 21:2
  24:22 26:9 29:18
  30:19 40:12,14
  42:5,11,17,21
  43:10 55:9 63:15
  72:1 73:15
ph 47:5
picard 66:24
pick 58:10
plan 2:2 4:10
  13:16,18 29:1
  69:12,13 80:4
play 61:24
please 4:5 51:2
  57:9 67:21
plus 34:13
point 5:10 9:15
  11:12 39:2 40:6,7
  41:4,4,6,7,8,16,18
  41:23 42:1 47:24
  48:16 53:4 54:2,3
  55:4 61:17,21
  64:17 65:22,24
  68:3,20 69:8,24
  70:10 74:14
pointed 18:9 51:8
  66:5
points 33:1 60:21
  63:23 71:12 74:1
policy 46:16 74:9
position 26:24
  54:5 57:1 61:11
  65:5 76:23
positions 14:4,5,5
  14:6 17:11 18:3
  30:18,18 41:21
  68:11 75:2,8,8

positive 17:5
practice 75:3
  77:17
precisely 69:2
preclude 17:24
  75:14
precludes 29:11
precluding 16:10
preference 59:19
  60:4,8,16
presentation 4:17
  21:2 56:1
presented 38:20
preserved 32:7
  70:3
preserving 61:10
pretty 38:21
  58:18
previous 22:6
previously 11:1
primary 7:10,19
  7:22 13:6 17:13
  33:15 34:2 46:21
  46:24 47:10 49:20
  49:21 67:16 74:4
  74:11,23 75:5
prime 10:20 12:4
  12:4,5,6,9,18 15:1
  15:8 18:7,12,20
  18:23,24 20:8,10
  21:19 22:12 24:3
  24:7,9,9,10,18,23
  25:6,17 28:5,13
  28:18 29:8 31:3
  32:8,10 36:16
  37:8 49:1 52:21
  52:24 65:1 66:20
  72:7,11,20,22
  73:9,12,16
principal 74:10
principles 75:12
printed 18:16

prior 11:8,11
  14:18 20:2,8
  21:20,21 28:6
  54:12 66:14
priority 24:11,14
probably 55:17
  70:24 71:3
problem 8:21
  33:13 55:24
proceed 70:4,5
  77:11
proceeding 21:3
  47:20 54:20
proceedings 65:6
  79:3 81:4
process 76:23
progeny 74:17
program 35:17
progress 71:11
promise 67:23
promises 71:8
proof 12:24 23:19
  25:2 27:19 30:9
  61:12 62:21 63:1
  63:11 70:8,13
proofs 22:17,24
  23:6 30:4 31:6,8
  32:5 36:5
proposed 56:20
proposition 44:23
  74:17
protect 25:19
protections 19:24
provide 22:13
  24:7 49:11 71:15
provided 17:6
providence 16:9
  34:24
provides 10:18
  12:5 18:8 20:23
  21:14 23:19 32:13
  52:11 72:2

provision 18:7
  19:22 20:3,5
  21:20 33:9 51:18
  54:17 59:16 64:11
  69:12 70:3
provisions 12:21
  16:10 17:24 19:18
  20:1 22:6 36:3
  75:13
public 17:7
pull 13:2
purely 30:6
purpose 9:17 10:2
  10:5
purposes 15:15,17
  29:5 49:4
pursuant 12:7
  13:16 23:22 24:23
  45:22 46:4 73:10
pursue 32:7,16
  44:18
put 6:20 42:7
  46:12

q

qualifies 69:19
  73:1
quarters 9:3
question 5:4 13:8
  28:21 29:6,16
  34:1 38:24 42:6
  45:8 56:9 70:12
  70:13
questioned 64:10
questions 36:8
quick 64:5
quicker 67:23
quickly 71:19
  77:15 78:2
quintessential
  65:20
quite 41:13 44:15
  70:11

**quote** 41:20 73:11
73:22
**quoted** 41:20
**quotes** 46:12,13
72:5,6

**r**

**r** 1:18 3:3 4:4 81:1
**raised** 56:16
**raising** 28:12
**randall** 3:19
35:16
**reaction** 69:21
**read** 4:13 5:1 8:11
9:2 31:13,15
59:24 64:24
**readily** 55:1
**reading** 8:16 27:3
64:21 67:2 72:14
74:1
**reads** 24:22
**real** 41:18,19,19
56:12 78:3
**reality** 75:3 76:8
**realize** 39:7
**really** 12:2 39:12
46:1 48:8 63:2
65:11 66:11 68:18
70:9 76:22
**reason** 14:17
15:21 33:2 47:10
54:5,24 65:13
70:2
**reasons** 15:3
30:13 43:3 75:9
**rebut** 46:18
**received** 9:10
30:20 34:5
**recites** 23:18 24:2
**record** 17:7 34:1
35:4 81:4
**recover** 46:12
47:22 74:18 75:4

**recoverable** 32:4
**recovered** 75:1
**recovery** 43:20
**red** 68:6
**reduction** 15:14
**refer** 23:23 31:23
66:5
**reference** 58:13
58:14 59:3
**referenced** 7:15
**referred** 50:5
**referring** 43:22
44:2
**refers** 63:13
**reflecting** 9:12
**regardless** 47:18
72:21
**reject** 45:21
**rejected** 13:16,18
28:24 69:14
**rejection** 26:10
33:12 45:13 72:3
74:5
**rejects** 29:14
**relate** 55:4 66:14
**related** 34:23 73:2
74:6
**relates** 43:12
**relation** 20:20
66:18
**relationship** 19:4
37:7 38:4 44:16
49:14,18,20 56:21
57:9
**release** 52:8
**released** 66:8
**releases** 52:8
**releasing** 52:12
**relevant** 10:18,23
10:24 51:10
**reliance** 73:15
**relies** 28:2

**rely** 22:21 23:1,2
29:3
**remain** 52:17
53:11 54:8 66:2
**remaining** 13:14
69:18
**remedies** 19:24
26:6
**remember** 6:16
6:18 11:6 26:13
**repeat** 31:22
**repeated** 32:19
**replaced** 23:4
**reply** 20:7,7 69:20
72:18 73:5
**request** 65:4 67:4
**requested** 68:11
**require** 6:19 65:7
**required** 21:5,9
**requires** 44:6
73:20
**reserve** 27:6
63:19
**reserved** 27:12
32:6
**reserves** 44:18
**resist** 68:18
**resisted** 68:12
**resolution** 23:1,9
23:23 76:5
**resolve** 28:17 62:3
**resolved** 5:24
19:22 27:23 29:3
**respect** 5:13 14:24
15:2 20:5,19,24
22:4 27:6,13
32:14 34:17 44:9
48:9 52:13 58:18
60:4 61:22 69:10
76:24
**respectfully** 48:16
58:20 70:17 76:12

**respects** 73:17
75:18
**response** 11:19
13:19 30:15 31:22
64:13
**responses** 31:7
**rest** 54:6
**restrictions** 65:10
**rests** 43:11
**result** 47:11,14,15
55:5 63:13
**resulted** 44:1
**resulting** 59:19
**retain** 47:17
**return** 9:14 40:23
65:3
**revert** 22:5
**richard** 3:11 4:9
**rick** 33:24
**rid** 6:11
**right** 4:20 5:8 6:5
6:18 7:24 8:3 9:4
9:16 10:1,3,7
11:18 12:1,1 13:5
13:20 15:3,7 16:4
16:23 17:14 18:24
19:16,17 22:3,10
24:13 25:21,21
26:2,17 29:7 30:1
32:6,7 33:5 35:5
35:19 36:10,14,20
37:1,9,11,16,18
37:22 39:3,19,24
41:2,13 42:15
43:1 44:18 45:13
45:20,23,24 46:6
46:22 48:21,24
49:13,14 50:19
52:19 53:13 57:7
57:20,24,24 58:2
61:10 64:1 67:20
70:4,5 76:16,17
78:13,24

**rights**  19:14,23
    27:6,13 32:16
    51:24 71:17 74:20
**risk**  38:5 57:2,7
**road**  81:20
**roll**  3:18 35:10,12
    35:14,14,19,23
    36:2,5,9,13,17,20
    36:24 37:3,9,11
    37:14,24 38:2,8
    38:12,16,19,22
    39:4,11,17,19,22
    39:24 40:5,8,15
    42:12,15,20,24
    43:6,22 45:4,10
    45:12,15,23 46:7
    46:17,22 47:1,8
    48:14,21,24 49:4
    49:8,16,23 50:7,9
    50:13,15,18,21,24
    51:4,6,10,13,17
    51:20 52:5,19
    53:2,10,13,16,20
    53:23,24 54:17
    55:14,17,20 56:6
    56:9 61:7,18 62:1
    67:20,21,23 68:2
    68:9,17,20 69:5,8
    69:15,17 70:15,22
    76:11,21 77:2,5,7
    77:11,13,19,23
    78:5,8,12,23
**roman**  63:8
**room**  13:21,22
**round**  5:6
**rule**  8:24 29:14
**rules**  47:2
**ruling**  71:13
**rulings**  16:8 65:7
    65:11 80:2
**running**  66:19

**s**

**s**  3:3 4:4
**s&p**  23:10
**sample**  30:9
**satisfied**  71:24
    74:11
**saw**  11:4 30:8
    69:20
**saying**  22:3 31:2
    48:6
**says**  19:2 31:13
    32:10 33:7,10
    37:18,19 40:15,16
    44:15 45:20 47:8
    50:11,11 51:10,22
    52:16 53:11 54:18
    55:8 59:10 60:19
    64:15 65:17 66:12
    70:14
**scc**  1:3
**scenarios**  48:10
**schedule**  10:19,23
**seat**  4:5
**second**  8:16 10:7
    19:16 23:19 31:1
    44:3 51:22 53:19
    53:21 56:17 66:21
    67:2,9 72:15
**secondly**  12:23
**section**  4:21 13:21
    15:5 20:15 21:12
    21:12,16 33:2
    40:10 43:9 72:1,9
    72:23 73:21 74:2
    74:4,13
**securities**  9:13,20
    10:22 12:16 15:6
    15:7,10 24:4 28:8
    28:14,15 36:22
    37:12 38:6 40:22
    41:5 42:1,16
    44:11 47:2 48:23
    57:9 58:6,7 65:3

    66:18 67:7,8,11
    68:5 72:6,7,11,14
    72:17,20 73:3,24
**security**  13:23
    24:11,14 73:1
**see**  30:6 45:16
    46:3 60:1 61:13
    76:4 78:10
**seek**  30:7 31:4
    32:6
**seeking**  26:15
    46:21,23
**seen**  77:13
**sell**  67:8
**sense**  17:12,21
    21:10 48:4 62:17
    67:17
**sentence**  9:4
    19:17 24:21 54:9
    63:7 65:17 66:12
    66:14
**separate**  19:4
    54:14,14 72:20
**series**  61:20
**serve**  11:8
**served**  11:6
**serves**  21:5
**services**  24:7
**set**  42:6 43:13
    68:21 70:15,16
**sets**  33:18 41:15
    43:3
**settled**  6:7
**settlement**  4:24
    9:11,16,17,20,20
    10:8,10,11,16,19
    13:15,17 14:8,10
    14:11,19 15:18,22
    28:4,20 30:20,23
    41:9 44:2,14,15
    49:9 50:16,22
    51:4,23 52:10
    55:6 66:9 70:3

**73**:7,8,10,11,14
    74:14 75:2
**severability**  72:19
**severable**  72:23
**shearman**  3:13
    35:14
**sheer**  4:16
**sheila**  3:2 81:3,7
**shelley**  1:19
**short**  14:5,5 75:8
    75:24 77:1
**show**  29:20 44:22
    50:20,20,21
**shrift**  77:1
**side**  12:17 18:12
    78:10
**sides**  6:20
**sign**  76:9
**similar**  5:12,12
    61:22 72:16
**simply**  31:13
    42:10 73:16
**sincerely**  70:18
**single**  19:21
**sipa**  58:18
**sit**  11:21 33:20
**situation**  38:11
**six**  16:19 17:8
    22:24 25:1
**sixth**  16:20 17:3
**smart**  48:10
**smarter**  45:16
**solutions**  81:19
**soon**  71:6
**sooner**  58:7,7
**sorry**  8:20 9:1
    15:11,12 31:19
    33:23 37:6 48:14
    53:23 63:7
**sort**  77:3
**sought**  21:10 69:7
**sounds**  24:13,20
    25:9,10

south  3:2 81:3,11
southern  1:2 47:3
speaking  36:12
speaks  61:17
special  65:18
specific  44:7,7,8
  44:11 65:22
specifically  44:17
  58:16 67:1,9
  72:15
specified  72:4
spelled  73:5
spend  32:22
spent  70:24
spoke  34:23
spring  54:18
srm  5:20 6:15,15
  7:15 11:6 34:23
stage  43:24
stand  74:17
standalone  61:19
  61:20
standard  22:11
stands  44:23
start  4:23 8:6
started  38:3 48:6
starting  71:5,7
state  63:14
stated  63:3
statement  8:8,18
  9:7 63:11,17
  64:20
states  1:1
status  22:8
sterling  3:13
  35:14
stock  57:1,2,16,18
stonehill  16:8
stop  16:12 49:10
  68:20
stopper  44:22
story  68:23

straightforward
  65:1
structurally  5:12
struggling  78:4
stuck  14:19
stuff  36:18 37:17
  37:18,20,20,21
  38:21,22 39:2
  40:1 62:15
subject  7:11 59:18
  60:3 72:12
subsection  51:22
sufficiency  16:1,3
  27:23 43:11 68:22
suggest  33:4,14
suggested  26:21
suggesting  11:5
suite  81:21
summary  30:4
summer  5:21
support  14:16
  31:15
suppose  36:11
  76:1
supposed  30:3
supposedly  15:18
supremacy  33:10
sure  5:3,5 7:1
  12:12 13:1 17:13
  20:14 33:22 35:18
  36:4,7 37:18
  44:20 49:18 50:23
  56:10 67:22 68:1
  77:10
surely  58:9
surprise  63:18
surprised  70:9
surprising  22:12
surrounding
  43:13,16,16
survived  6:13
  28:23

suspension  58:17
  58:21,24 65:11
switching  62:18
system  33:17 74:3

**t**

t  81:1,1
tab  8:12,13,14,20
  8:21 10:9,10,10
  18:14,15 19:8
  20:6,11 22:18,19
  23:14 31:18,19,19
  50:4 51:2 59:11
  59:14 63:6 64:23
tabs  18:18
tag  56:1
take  14:4 17:2,18
  25:15 41:14 44:12
  45:8 57:14 71:8
  76:17 78:16
taken  39:1 41:21
takes  57:24
talk  50:22 76:4,13
  77:8 78:9
talking  24:1 50:15
talks  33:3,6 58:12
  58:12
teaches  56:3
team  56:1
technically  12:20
tell  11:4 29:20
  46:2 57:8 70:24
tells  49:23
tenant  46:1
term  52:20,23,23
  58:21 72:14
terminate  37:17
  39:23 49:12 56:21
  57:9
terminated  11:2,2
  11:14,22 12:18
  13:7,10,13,20,23
  13:24 14:22 28:6
  28:19 36:15 42:6

42:8 43:3,4,5,7,7
  44:4,13 49:8,9,13
  50:14 51:13 62:2
  66:16 69:11 70:1
  73:10,17,20,21
terminates  49:14
  49:18
terminating  44:16
  55:5
termination  10:18
  11:5,7,8,9,11 15:1
  20:15 26:9 28:6
  28:11,22 33:12
  40:7,9 49:19
  50:11 53:3,4,5
  54:1,3,9,12,14,22
  66:11,12,14 69:10
  72:4 73:23 74:5
terms  5:9 12:17
  20:8 24:10 25:16
  31:1 34:11,22
  35:8 39:11 46:16
  64:11 65:16,23
  66:10 73:4,11
  75:12 76:8 77:14
test  69:17,23
text  23:18
thank  4:9,19 7:5
  7:24 33:20 35:9
  55:20,23 64:2,3
  67:19 70:22,23
  78:12,13,14 79:1
thanks  79:2
thedefinitions
  73:4
theories  75:21
theory  14:2,3
  30:14 41:8 62:13
  62:21
thereof  54:12
thereunder  11:1
  51:11

**there's** 7:13
**thing** 5:1 10:7
  32:23 33:24 41:15
  56:3 59:7 60:6
  61:2 64:9 71:2
**things** 12:20
  22:14 36:2 40:20
  41:14,15 44:7
  62:20 64:10 73:23
  77:15 78:1,2
**think** 6:17 8:6,9
  8:19 11:12 13:9
  13:12,21 14:13
  15:4,13 17:10,21
  17:21,23 18:1,3,4
  21:24 22:11,13,16
  23:5,10 26:8
  27:11,15,16,16,24
  28:1,2,10,16,19
  29:2,6,7,9,13
  30:10,12 33:13
  34:10 38:23 44:6
  44:22 46:2 47:5
  51:7 54:23 55:3
  56:4,11 58:4,11
  58:20,22 59:2,8
  60:24 62:6,11,18
  62:20,23 63:1
  65:23 66:15,17,20
  67:16 69:17,19,22
  71:3 76:12,19
**thinking** 51:16
**third** 49:6,6 59:11
  59:21 76:3
**thirds** 49:5 59:22
**thought** 8:5 15:11
  58:17 68:10
**three** 9:3 12:2
  17:22 23:1,2 24:3
  24:6 29:10 44:7
  76:13,13
**tier** 33:19 74:3

**tiered** 33:17
**time** 22:17 26:5
  32:22 36:21 38:8
  44:1 49:22 52:5
  62:14 64:8 67:24
  69:20 70:11 71:1
  77:21,23
**today** 23:11 41:8
  56:5 63:16 71:1
  71:11,21
**told** 57:16
**top** 30:3
**tornado** 58:19
**tornados** 58:12
**touch** 56:8
**tough** 77:15
**trade** 12:14 65:14
**trades** 67:9
**trading** 58:17,22
  59:1 65:12
**train** 15:11
**transactions**
  10:24 51:11 54:11
**transcribed** 3:2
**transcriber** 81:8
  81:12
**transcript** 76:2,16
  81:4
**tree** 16:12
**trial** 71:5,7
**trigger** 54:1
**triggered** 60:11
**true** 14:21 81:4
**trying** 53:4 68:18
  77:3 78:7
**turn** 13:10 20:23
  36:6 55:11,12,14
  76:9 78:1
**turning** 77:14
**two** 5:19 7:12,14
  7:15,16 17:22
  33:17,17,19 34:12
  34:13 41:14,15

43:3 48:22 49:5,5
  54:23 56:3 57:14
  57:15 59:22 62:20
  71:19 74:3,6
**typical** 22:14
**typically** 71:24

**u**

**u.s.** 1:11,20
**uh** 30:5 36:17,24
  39:22 42:12 46:17
  47:7 49:16 50:6,8
  50:13 51:12 56:23
  57:11,13,17 62:8
  63:9
**uk** 6:16 41:22,24
  47:1 55:6
**unambiguously**
  60:2,9,15
**unconditional**
  61:18
**underlying** 28:3
  49:13,17
**understand** 9:22
  11:10 14:2,15
  25:23 26:18,23
  31:5 40:2 62:6
  66:11 76:11,14
  77:2
**understanding**
  5:19 25:24
**understood** 40:15
  66:13 78:5
**undertaken** 44:8
**undisputed** 69:4
**unfixed** 48:15
**uniform** 65:2
**unique** 34:7 35:6
**united** 1:1
**unliquidated**
  30:11,11 31:1
  40:13
**unquestionably**
  45:1

**unquote** 73:11,22
**unsatisfied** 74:23
**urgency** 78:6
**use** 9:23,24 18:18
  73:13
**usual** 4:13

**v**

**valuation** 9:18,21
  14:19 73:15
**value** 9:11,12,19
  14:1,3,7,9,11,11
  14:14 15:14,17,18
  26:4 28:7 30:18
  30:20,22 37:2,4
  37:20,20 38:8
  40:9 41:5,24 42:1
  42:16 43:10 47:2
  57:19 74:12,18
  75:1,7
**valued** 14:18 72:1
  74:13
**valuing** 10:3,3
  72:3 73:6
**various** 27:6 31:7
**vast** 6:11
**vein** 24:15
**veritext** 81:19
**versus** 66:24
**virtually** 32:21
**volume** 4:16
**voluminous** 78:2

**w**

**wait** 71:17 76:2
  78:21
**waiting** 76:14
**walk** 45:8
**walking** 8:10
**want** 7:3 8:11
  27:18 31:2 36:7
  37:19,20 55:10,11
  55:12 57:8,16
  64:24 67:8 68:16
  71:10,16 76:20,22

77:1,7
**wanted**   6:11 10:8
  35:4 50:20 56:21
  64:9 69:24 71:1
**way**   5:11 9:3 35:7
  39:2 46:9,15 55:3
  59:22 63:21,22
**ways**   36:15
**we've**   46:3 55:3
  57:15
**weekend**   79:2
**weil**   3:4 4:10
  33:24
**went**   36:12 40:18
  56:16 68:24
**william**   3:18
  35:14
**willing**   76:9,15
**win**   8:6
**windfall**   17:18,20
**winding**   21:2
**withdrawals**   67:5
**withdrawn**   5:23
  6:10 34:19
**words**   11:14,23
  12:6 24:6 73:13
**work**   35:23 46:9
  63:21,22
**works**   46:15
**world**   56:13 58:21
**worst**   16:24
**worth**   36:22 40:1
**would've**   38:8
**wrap**   29:23
**write**   76:1
**writing**   70:20
**written**   6:24 71:4
  75:10
**wrong**   16:11
  26:22 27:17,24
  58:20

| x |
|---|
| **x**   1:4,10 80:1 |

| y |
|---|
| **yeah**   7:5 19:3 |

50:17 55:14 64:4
  64:19 69:16 77:4
**years**   57:14,15
**yep**   51:9
**york**   1:2,13,13 3:7
  3:16 32:21 33:6
  40:15,16,16,21
  48:1,19 53:10
  55:8 61:19 63:14
  65:2
**younger**   56:2

| z |
|---|
| **zero**   6:1 |