Gary Gwilliam (Bar No. 33430)
Randall E. Strauss (Bar No. 168363)
**GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER**
1999 Harrison Street, Suite 1600
Oakland, California 94612-3528
Telephone:  (510) 832-5411
Fax:  (510) 832-1918
Email:  GGwilliam@giccb.com, rstrauss@giccb.com

Mark S. Bostick (Bar No. 111241)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928
Email:  mbostick@wendel.com

Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour,
Cheryl McNeil, Linda Howard-James, Isabel Guajardo and
Denise Colombo

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No. 08-13555 (SCC) |
| | (Jointly Administered) |
| Debtors. | |

## MOTION FOR LEAVE TO APPEAL
## ORDER GRANTING OBJECTION TO CLAIMS

Claimants Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo (collectively, the "Claimants") hereby move this Court for the relief requested below with respect to their claims against debtor BNC Mortgage LLC:

1.        This motion arises under 28 U.S.C. §158(a)(3) and is being brought under Federal Rules of Bankruptcy Procedure 8002, 8004 and 8005.

2.        The movants respectfully request leave to appeal the bankruptcy court's May 9, 2017 [Doc #55327] order entered in the above-captioned case to the district court.  Leave to appeal is sought only with respect to the Bankruptcy Court's ruling disallowing movants' claims for punitive damages.  The factual and legal bases for this motion are set forth in greater detail in the accompanying memorandum of law.

### REQUEST FOR RELIEF

WHEREFORE, the movants request entry of an order:

A.        Granting the motion for leave to appeal; and

B.        Granting such other and further relief as the Court deems just and equitable.


DATED May 23, 2017                  GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER

                                   By: _/s/ *Gary Gwilliam*_____
                                    Gary Gwilliam
                                    Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo


DATED:  May 23, 2017               WENDEL, ROSEN, BLACK & DEAN LLP

                                     By: _/s/ *Mark S. Bostick*_____
                                    Mark S. Bostick
                                    Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.  STATEMENT OF QUESTIONS PRESENTED..............................................................4

IV.  THE RELIEF SOUGHT ...................................................................................................5

V.  ARGUMENT .....................................................................................................................5

    A.  An Interlocutory Appeal Is Permissible Under 28 U.S.C. §158(a)(3).....................5

    B.  This Appeal Satisfies The Requirements For An Interlocutory Appeal .................7

        1.  Whether The Bankruptcy Court May Categorically Disallow Punitive Damages Is A Controlling Question of Law .................................7

        2.  Substantial Grounds for a Difference in Opinion Exist.............................8

        3.  An Immediate Appeal May Materially Advance The Resolution Of These Cases And Extraordinary Circumstances Warrant This Interlocutory Appeal .................................................................................15

VI.  CONCLUSION.................................................................................................................17

## TABLE OF AUTHORITIES

**Page**

## CASES

*Agarwal v. Johnson,*
    25 Cal.3d 932 (1979) ...................................................................................... 9

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee,*
    321 B.R. 147 (D. N.J. 2005) ........................................................................... 6

*BMW of North America, Inc. v. Gore,*
    517 U.S. 559, 116 S.Ct. 1589 (1996)............................................................. 12

*Commodore Home Systems, Inc. v. Superior Court,*
    32 Cal.3d 211 (1982) .................................................................................... 9

*Enron Corp. v. Springfield Associates, L.L.C. (In re Enron Corp.),*
    2006 WL 2548592, at *5 (S.D.N.Y. Sept. 5, 2006)............................... 6, 7, 8, 15

*GE Capital Corp. v. Machinery, Inc. (In re Machinery, Inc.)*
    275 B.R. 303 (B.A.P. 8th Cir. 2002)................................................................ 5

*In re A.G. Financial Service Center, Inc.,*
    395 F.3d 410 (7th Cir. 2005) .................................................................... 8, 15

*In re Adelphia Communications Corp.,*
    333 B.R. 649 (S.D.N.Y. 2005)................................................................. 5, 7, 8

*In re Ahlswede,*
    516 F.2d 784 (9th Cir. 1975) ....................................................................... 11

*In re Beker Industries Corp.,*
    89 B.R. 336 (S.D.N.Y. 1988)......................................................................... 6

*In re Dinos, Inc.,*
    183 B.R. 779 (S.D.Ohio 1995) ...................................................................... 5

*In re Friedman's, Inc.,*
    356 B.R. 766 (Bankr. S.D. Ga. 2006) ........................................................... 14

*In re Infiltrator Systems, Inc.,*
    248 B.R. 707 (Bankr. D.Conn. 2000) ........................................................... 14

*In re Johns-Manville Corporation,*
    68 B.R. 618 (Bankr. S.D.N.Y. 1986)....................................................... 13, 14

*In re Motors Liquidation Company,*
    2012 Bankr. LEXIS 6258, *35 (Bankr. S.D.N.Y. Aug. 6, 2012) [2012 WL
    10864205] ............................................................................................ 12, 14

*In re New York Medical Group, P.C.*,
  265 B.R. 408 (Bankr. S.D.N.Y. 2001) ................................................................... 15

*In re Roman Catholic Archbishop of Portland in Oregon.*,
  339 B.R. 215 (Bankr. D. Ore. 2006) .................................................................. 8, 9

*In re Smart World Techs.*,
  423 F.3d 166, 184 (2d Cir. 2005) ....................................................................... 10

*In re Williams*,
  215 B.R. 289, n. 6 (D.R.I. 1997) .......................................................................... 6

*In re Worldcom, Inc.*,
  2003 WL 21498904, at * 10 (S.D.N.Y. June 30, 2003) .......................................... 7

*Law Debenture Trust Company of New York v. Calpine Corp. (In re Calpine Corp.)*,
  356 B.R. 585 (S.D.N.Y. 2007) .............................................................................. 5

*Law v. Siegel*,
  134 S.Ct. 1188, 188 L.Ed.2d 146 (2014) ............................................................. 10

*Lehman Brothers Special Financing, Inc. v. BNY Corporate Trustee Services Ltd. ( In re Lehman Brothers Holdings, Inc.)*,
  422 B.R. 403, 405-406 (S.D.N.Y. 2009) ............................................................... 5

*Merrimac Paper Company, Inc. v. Harrison (In re Merrimac Paper Co., Inc.)*,
  420 F.3d 53 (1st Cir. 2005) ................................................................................ 15

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998) .............................................................................. 6

*Myers v. Trendwest Resorts, Inc.*,
  148 Cal.App.4th 1403 (2007) .............................................................................. 9

*Novak v. Callahan (In re GAC Corp.)*,
  681 F.2d 1295 (11th Cir. 1982) .......................................................................... 14

*O'Leary v. Maxum Marine (In re Orange Boat Sales)*,
  239 B.R. 471 (S.D.N.Y. 1999) ........................................................................... 5, 6

*Official Committee of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V.  (In re NSB Film Corp.)*
  167 B.R. 176 (B.A.P. 9th Cir. 1994) ..................................................................... 6

*Pagliolo v. Guidant Corp.*,
  2007 WL 1567617, at *1 (D.Minn. May 29, 2007) ................................................. 7

*Patrick v. Dell Fin. Servs.*,
  366 B.R. 378 (M.D.Pa. 2007) ............................................................................. 16

*Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  45 B.R. 833 (S.D.N.Y. 1984) ................................................................................ 6

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities,*
*LLC,*
    2011 WL 6057927, at *5 (S.D.N.Y. Dec. 6, 2011) ........................................................ 15

*Travelers Cas. & Sure. Co. of Am. v. Pac. Gas & Elec. Co.,*
    549 U.S. 443, 127 S.Ct. 1199 (2007) ............................................................................... 9

*United States v. Noland,*
    517 U.S. 535, 116 S.Ct. 1524 (1996) ..................................................................... passim

*United States v. Reorganized CF & I Fabricators of Utah, Inc.,*
    518 U.S. 213, 116 S.Ct. 2106 (1996) ..................................................................... passim

*Vanston Bondholders Protective Comm. v. Green,*
    329 U.S. 156, 67 S.Ct. 237 (1946) ................................................................................... 9

*W. Tennessee Chapter of Assoc. Builders and Contractors, Inc. v. City of Memphis,*
    138 F.Supp.2d 1015 (W.D.Tenn. 2000) .......................................................................... 7

*White v. Ultramar, Inc.,*
    21 Cal.4th 563 (1999) ...................................................................................................... 9

*Williams v. City of New York,*
    508 F.2d 356 (2d Cir. 1974) ........................................................................................... 13

*Young v. Paramount Comm'ns Inc. (In re Wingspread Corp.),*
    186 B.R. 803 (S.D.N.Y. 1995) ......................................................................................... 6

## STATUTES

11 U.S.C.
    § 105(a) ................................................................................... passim
    § 502(b) ............................................................................................ 9
    § 502(b)(1) ....................................................................................... 9
    § 506(c) ............................................................................................ 6
    § 510(c) .......................................................................................... 11
    § 524 ................................................................................................ 4
    § 726(a)(4) ....................................................................................... 9
    § 1141(d)(3) .................................................................................... 13

28 U.S.C.
    § 157(b)(5) ...................................................................................... 11
    § 158(a)(3) ............................................................................. 1, 2, 5, 6
    § 1292(b) ................................................................................. 5, 6, 7

California Government Code
    §§12900 *et. seq.* ............................................................................. 2

## <u>OTHER AUTHORITIES</u>

Restatement 2d Torts,
§908...................................................................................................................................... 13

## <u>RULES</u>

Federal Rules of Bankruptcy Procedure
Rule 7012 ...................................................................................................................... 1
Rule 8002 ...................................................................................................................... 1
Rule 8004 ...................................................................................................................... 1
Rule 8005 ...................................................................................................................... 1

**MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS' MOTION FOR LEAVE
TO APPEAL**

Claimants Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo (collectively, the "Claimants") respectfully submit this memorandum in support of their motion, pursuant to 28 U.S.C. §158(a)(3) and Federal Rules of Bankruptcy Procedure 8002, 8004 and 8005 for leave to file an interlocutory appeal of the Bankruptcy Court's Order Granting Objection To The Four Hundred Thirty-First Omnibus Objection To Claims (Reduce And Allow Claims) And Granting Claimants Lave To Amend Claims entered on May 9, 2017 (the "Order") insofar as that Order disallowed Claimants' claims for punitive damages for their state law claims for employment-related torts, including personal injury claims, pursuant to section 105(a) of the Bankruptcy Code and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## I.    PRELIMINARY STATEMENT

Although on the surface it may not have been the quintessential boiler room, BNC Mortgage, Inc. was churning out subprime mortgages that played a part in bringing the financial world to its knees in 2008, and a culture of harassment was prevalent there.  When three of the Claimants reported the fraudulent mortgage practices to their supervisors, those Claimants were subjected to retaliation and a hostile work environment.  All of the Claimants were the targets of repeated sexual harassment.  After BNC did nothing to halt those illegal practices, Claimants filed suit in California state court in 2005.  Procedural maneuvers by BNC delayed that litigation until Lehman collapsed and it and its affiliates, including BNC, filed bankruptcy.

Now after nearly twelve years of litigation and delays, the Plan Administrator is trying to deny those Claimants the right to prove and recover punitive damages, even as  subordinated claims, by asking the Bankruptcy Court to disallow them entirely.    That is the backdrop for this motion.

By its Order Granting Objection to the Four Hundred Thirty-First Omnibus Objection to Claims (Reduce and Allow Claims) And Granting Claimants Leave to Amend Claims, the

Bankruptcy Court categorically disallowed Claimants' punitive damages claims, in contravention to the Supreme Court's direction that penalties *not* be subjected to categorical disposition, but rather, be determined on a case-by-case basis. The Bankruptcy Court failed to apply that standard here, and if the Bankruptcy Court's Order is not reversed by an interlocutory appeal, the Claimants will be compelled to endure the delay and expense of two trials—one regarding liability and compensatory damages, and then, following an appeal, a trial on the issue of BNC's malicious and despicable conduct, which warrants an award of punitive damages.

As discussed in greater detail below, this case presents a pure question of law that may be decided quickly and cleanly and satisfies the conditions necessary for allowing an interlocutory appeal under 28 U.S.C. §158(a)(3).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1.      Claimants are former employees of BNC Mortgage Inc., subsequently converted to a limited liability company in 2007 known as BNC Mortgage, LLC ("BNC").

2.      Lehman Brothers Bank FSB owns 100% of the equity of BNC. [Case 09-10137, Doc #2]. BNC served as Lehman Brothers' originator of subprime mortgage loans, which Lehman then packaged into mortgage-backed securities that were sold to investors, including hedge funds, insurers, banks and pension funds.

3.      On November 8, 2005, the Claimants filed a complaint against BNC in the Superior Court of Sacramento County, California, Case No. 05AS05161 ("Complaint"), alleging claims for employment discrimination, harassment, retaliation, wrongful termination under the California Fair Employment and Housing Act (Cal. Govt. Code §§12900 *et seq.*) ("FEHA") and intentional infliction of emotional distress, and seeking compensatory damages against BNC and other third party defendants, and also seeking punitive damages allowable under California law for BNC's malicious and despicable conduct as alleged in the Complaint. Among other things, three of the Claimants alleged that when they had reported what they believed were fraudulent and illegal business practices to their superior officers at BNC, they were subsequently subjected to retaliation and a hostile work environment. All of the claimants alleged that they were

subjected to sexual harassment, and that BNC took no action in response to their complaints to correct any of this illegal conduct. Adjudication of those state law claims was delayed by BNC's procedural maneuvers and a state court appeal it filed.

4.      On January 9, 2009, BNC filed its petition for relief under chapter 11 of the Bankruptcy Code.[1]

5.      On or about July 7, 2009, the Claimants filed timely proofs of claim in the BNC case, registered as Claim Nos. 5222, 5223, 5224, 5225, 5226 and 5227 (Collectively, the "Claims").

6.      Each proof of claim was based on the claims for damages stated in the Complaint. Since the Complaint was pending at the time of BNC's bankruptcy filing, the Claimants chose an amount of compensatory and punitive damages that they believed would be awarded by a jury in the action: five Claims were asserted in the amount of $5,000,000.00 and the sixth in the amount of $10,000,000.00 ( for a total of $35,000,000.00).

7.      On August 31, 2011, LBHI and its affiliates and BNC promulgated their Modified Third Amended Joint Chapter 11 Plan Of Lehman Brothers Holdings Inc. And Its Affiliated Debtors (the "Plan"). The Disclosure Statement for the Plan contained a liquidation analysis for BNC that showed that BNC held assets worth Seventeen Million Dollars and had liabilities in the aggregate amount of Fourteen Million Dollars [ECF No. 19629, pg. 506 of 791].

8.      On December 6, 2011, the Bankruptcy Court entered its Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors  [ECF No. 23023] ("Order Confirming Plan"). Under the Plan, a Plan Administrator was appointed to administer the debtors' assets and liabilities. Although the Plan was a 'liquidating plan' and the debtors were not continuing to operate, the Plan provided and the Order Confirming Plan confirmed that all prepetition claims were discharged under Section

---

[1] Lehman Brothers Holdings Inc. ("LBHI"), and subsequently 22 of LBHI's affiliates, filed its petition under chapter 11 of the Bankruptcy Code beginning on September 15, 2008.

524 of the Bankruptcy Code.  [¶13.4 of the Plan; ¶56 of the Order Confirming Plan.]  The Plan was silent as to the treatment or classification of claims for punitive damages.

9.      On August 20, 2013, the Plan Administrator filed a Four Hundred Thirty-First Omnibus Objections To Claims, in which it objected to Claimants' proofs of claim [ECF No. 39569] (the "Objection").  That matter was subsequently adjourned.

10.     On June 22, 2015, the Plan Administrator filed a Supplemental Objection to the Four Hundred Thirty-First Omnibus Objections to Claim in which it sought to disallow certain aspects of Claimants' claims, including their claims for punitive damages [ECF No. 50054] (the "Supplemental Objection").  Claimants filed an Opposition to the Plan Administrator's Supplemental Objection on July 27, 2015 [ECF No. 50457] and the Plan Administrator filed its reply on July 31, 2017 [ECF No. 50497].

11.     A hearing on the Supplemental Objection was held by the Bankruptcy Court on August 4, 2015, and was thereafter taken under submission pending further efforts of the parties to mediate their dispute.

12.     Efforts at mediation failed and on April 13, 2017, the Bankruptcy Court entered an oral ruling sustaining the Supplemental Objection.  A copy of the reporter's transcript of that April 13, 2017 hearing is attached hereto as Exhibit A.  An order sustaining the Supplemental Objection entitled "Order Granting Objection to the Four Hundred Thirty-First Omnibus Objection to Claims (Reduce and Allow Claims) and Granting Claimants Leave to Amend Claims" was entered on May 9, 2017 [ECF No. 55327] (the "Order").  A copy of that Order is attached hereto as Exhibit B.

## III.    STATEMENT OF QUESTIONS PRESENTED

Did the Bankruptcy Court err as a matter of law by categorically disallowing Claimants' claims against BNC for punitive damages for their personal injury and tort claims, because this is a liquidating Chapter 11 case?

Is the Bankruptcy Court's categorical disallowance of punitive damages claims in a Chapter 11 case an improper exercise of the Court's equitable power under Section 105(a)?

## IV.    THE RELIEF SOUGHT

Claimants seek an order (i) granting this motion for leave to appeal the interlocutory Order entered by the Bankruptcy Court on May 9, 2017, and (ii) granting such other and further relief as is just and proper.  The appeal seeks a determination that the Bankruptcy Court may not categorically disallow Claimants' punitive damages claims, which are allowable under the Lehman Brothers Holding Co., Inc. Liquidating Plan, and an order reversing the Bankruptcy Court's order disallowing Claimants' punitive damages claims.

## V.    ARGUMENT

### A.    An Interlocutory Appeal Is Permissible Under 28 U.S.C. §158(a)(3)

This Court has discretionary appellate jurisdiction over interlocutory orders issued by the Bankruptcy Court pursuant to 28 U.S.C. §158(a)(3).  *See In re Adelphia Communications Corp.*, 333 B.R. 649, 657 (S.D.N.Y. 2005).  Section 158(a)(3) provides, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . with leave of the Court, from . . . interlocutory orders and decrees."  28 U.S.C. §158(a)(3).  Although section 158(a)(3) provides no statutory criteria for determining whether to grant leave to appeal an interlocutory order, courts in the Second Circuit and elsewhere have adopted the standard for granting leave to appeal set forth in 28 U.S.C. §1292(b).  *See, e.g., Lehman Brothers Special Financing, Inc. v. BNY Corporate Trustee Services Ltd. ( In re Lehman Brothers Holdings, Inc.)*, 422 B.R. 403, 405-406 (S.D.N.Y. 2009); *Law Debenture Trust Company of New York v. Calpine Corp. (In re Calpine Corp.)*, 356 B.R. 585, 593 (S.D.N.Y. 2007); *GE Capital Corp. v. Machinery, Inc. (In re Machinery, Inc.)* 275 B.R. 303, 306 (B.A.P. 8th Cir. 2002); *O'Leary v. Maxum Marine (In re Orange Boat Sales)*, 239 B.R. 471, 474 (S.D.N.Y. 1999); *In re Dinos, Inc.*, 183 B.R. 779, 781 (S.D.Ohio 1995).

Under section 1292(b), this Court's review is warranted where (1) the "order involves a controlling question of law," (2) "there is substantial ground for difference of opinion" on that question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. §1292(b); *see Young v. Paramount Comm'ns Inc. (In re*

*Wingspread Corp.*), 186 B.R. 803, 806 (S.D.N.Y. 1995).  Furthermore, granting leave to appeal is appropriate where "review might avoid protracted and expensive litigation." *Enron Corp. v. Springfield Associates, L.L.C. (In re Enron Corp.)*, 2006 WL 2548592, at *5 (S.D.N.Y. Sept. 5, 2006); *Official Committee of Unsecured Creditors v. Credit Lyonnais Bank Nederland, N.V.  (In re NSB Film Corp.*) 167 B.R. 176, 180 (B.A.P. 9th Cir. 1994) (interlocutory appeal permitted where "refusal would result in wasted litigation and expense").  "Leave to appeal is to be liberally granted where it can help the expeditious resolution of the case." *In re Beker Industries Corp.,* 89 B.R. 336, 341 (S.D.N.Y. 1988) (granting leave to appeal was appropriate where there was a substantial controversy over the proper application of 11 U.S.C. §506(c)); *Robinson v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 45 B.R. 833, 835 (S.D.N.Y. 1984).  Courts have taken a pragmatic approach in determining whether denying leave to appeal and attendant delay would waste time and resources.  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee,* 321 B.R. 147, 155 (D. N.J. 2005).  Such circumstances are present here.

Even if the Court were to determine that the elements of section 1292(b) were not satisfied, this Court should exercise its broader discretion to grant leave to appeal under section 158(a)(3), which has been recognized by courts in this district and others.  *See, e.g., In re Williams*, 215 B.R. 289, 298, n. 6 (D.R.I. 1997) ("the language of section 158(a)(3) obviously vests broader discretion in the district courts to permit interlocutory appeals"); *O'Leary v. Maxum Marine (In re Orange Boat Sales)*, 239 B.R. at 474  (in considering appeals under section 158(a)(3), "courts have recognized the limitations of [1292(b)] analysis . . . and have adopted a more flexible approach."); *Mishkin v. Ageloff*, 220 B.R. 784, 791 (S.D.N.Y. 1998) (declining to "rely upon the criteria set forth in section 1292(b)" in granting leave to appeal pursuant to section 158(a)(3)).

### B.    This Appeal Satisfies The Requirements For An Interlocutory Appeal

#### 1.    Whether The Bankruptcy Court May Categorically Disallow Punitive Damages Is A Controlling Question of Law

"'In regard to the first prong, the "question of law" must refer to a "pure" question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Enron Corp. v. Springfield Associates, L.L.C. (In re Enron Corp.),* 2006 WL 2548592 at *4; *see also In re Adelphia Communications Corp.,* 333 B.R. at 658; *In re Worldcom, Inc.*, 2003 WL 21498904, at * 10 (S.D.N.Y. June 30, 2003). An order involves a "controlling question of law" where it involves a "legal question[] that contrast[s] with a matter for the discretion of the trial court." *Pagliolo v. Guidant Corp.*, 2007 WL 1567617, at *1 (D.Minn. May 29, 2007). "A 'controlling question of law' means 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'" *Pagliolo v. Guidant Corp.*, 2007 WL 1567617, at *1 (District Court determined that order finding a release invalid under federal statute and regulations as a matter of law involved controlling questions of law). Furthermore, an issue may be "controlling" under section 1292(b) if its resolution will have precedential value. *Id.; see also, W. Tennessee Chapter of Assoc. Builders and Contractors, Inc. v. City of Memphis,* 138 F.Supp.2d 1015, 1018 (W.D.Tenn. 2000). In addition, a question of law is "controlling," if determination of the issue on appeal would "at a minimum . . . materially affect the litigation's outcome." *In re Enron Corp.*, 2006 WL 2548592, at *4.

The issue here—whether the Bankruptcy Court applied the correct standard in categorically determining that Claimant's punitive damages claims should be disallowed—presents an issue of law that will have precedential value, as it involves the interpretation of the extent of a Bankruptcy Court's equitable power under section 105(a), in light of the limits the Supreme Court placed on such power in *United States v. Noland,* 517 U.S. 535, 540-541, 116 S.Ct. 1524 (1996) ("*Noland*"), and *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229, 116 S.Ct. 2106 (1996) ("*Fabricators of Utah*"). As discussed below, the Bankruptcy Court erred as a matter of law by asserting it had the equitable power under

section 105(a) to categorically disallow punitive damages in a liquidating Chapter 11 case.  Such punitive damages are allowable under applicable California and bankruptcy law, and determination of the standard to be applied in deciding whether such claims are allowable on an interlocutory appeal will materially affect the outcome of the case for Claimants.

### 2.    Substantial Grounds for a Difference in Opinion Exist

The "'substantial ground for a difference in opinion' must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard."  *In re Enron Corp.*, 2006 WL 2548592, at *4; *see also In re Adelphia Communications Corp.,* 333 B.R. 649, 658-659 (there must be a genuine doubt as to the correct applicable legal standard relied on in the order). This factor is satisfied when "'(1) there is conflicting authority on this issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'"  *In re Enron Corp.*, 2006 WL 2548592, at *4.  Given the lack of definitive authority on the issue in this Circuit, the tenuous nature of the authority on which the Bankruptcy Court relied in reaching its erroneous interpretation of the extent of its authority under section 105(a) in categorically disallowing punitive damages, and the clear statements of the Supreme Court in *Noland* and *Fabricators of Utah* regarding the limits on a bankruptcy court's equitable power, this factor is satisfied here.

The legal analysis starts with the indisputable principle that "[a] creditor's entitlements under non-bankruptcy law are enforced in bankruptcy, unless they are modified by some provision of the Bankruptcy Code."  *In re Roman Catholic Archbishop of Portland in Oregon.,* 339 B.R. 215, 226 (Bankr. D. Ore. 2006); *see also In re A.G. Financial Service Center, Inc.*, 395 F.3d 410, 413 (7th Cir. 2005).  Furthermore, "[b]ankruptcy courts lack authority to alter rules of state law, or depart from those in the Code, to implement their own views of wise policy."  *In re A.G. Financial Service Center, Inc.*, 395 F.3d at 413-414.

The Supreme Court has long recognized that "what claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237

(1946). Thus, courts "generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed" by the Bankruptcy Code. *Travelers Cas. & Sure. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-452, 127 S.Ct. 1199 (2007).

Here, California state law allows punitive damages for such claims. *Commodore Home Systems, Inc. v. Superior Court,* 32 Cal.3d 211, 215, 221 (1982) (punitive damages may be awarded in civil actions for FEHA violations); *Agarwal v. Johnson,* 25 Cal.3d 932, 947 (1979) (punitive damages may be awarded for a claim for intentional infliction of emotional distress), *disapproved on other grounds in White v. Ultramar, Inc.*, 21 Cal.4[th] 563 (1999); *Myers v. Trendwest Resorts, Inc.,* 148 Cal.App.4[th] 1403, 1435-1436 (2007) (punitive damages may be awarded for FEHA violations). Neither the Plan Administrator nor the Bankruptcy Court took the position that punitive damages were not allowable for Claimants' California state law personal injury claims that are at issue in the underlying Complaint. 11 U.S.C. § 502(b) governs the allowance of claims, and it provides that "the court shall allow a claim except as provided in that subsection. Nothing in §502(b) provides for disallowance of punitive damages. Therefore, punitive damages may not be categorically disallowed under § 502." *In re Roman Catholic Archbishop of Portland in Oregon,* 339 B.R. at 227. Congress could have expressly disallowed punitive damages or it could have given the courts the power to disallow punitive damages claims in section 502(b), but it did not.[2] Congress *did* expressly subordinate punitive damages claims in Chapter 7 case under 11 U.S.C. §726(a)(4), demonstrating that knows how to limit or disallow particular claims when it intends to do so.

Since there is no express provision in the Code or the Plan giving the Bankruptcy Court the power to disallow punitive damage claims, the Plan Administrator invoked the Court's equitable power under 11 U.S.C. §105(a). "The Plan Administrator requests that the Court disallow the Claimants' claims for punitive damages pursuant to section 105 of the Bankruptcy

---

[2] Section 502(b)(1) merely looks to state law to determine the validity of claims, so where punitive damages are allowed under state law, section 502(b) provides no basis for disallowance.

Code, arguing that the purpose of punitive damages would not be served because the instant case is a liquidating Chapter 11 case and thus, the goals of punitive damages are inapplicable." April 13, 2017 Hearing Transcript ("RT"), pp. 14:23-15:3.

However, a court's power under section 105 is strictly circumscribed, and that statute only enables a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   As the Supreme Court explained, "[w]e have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Law v. Siegel,* 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014). "Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Id.*; *see also In re Smart World Techs.,* 423 F.3d 166, 184 (2d Cir. 2005) (section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity") (citation omitted).

Not only has the Supreme Court recognized limits on the bankruptcy court's equitable power in in *Law v. Siegel,* it similarly also identified limits on the court's power of equitable subrogation in *United States v. Noland,* 517 U.S. 535, 540-541, 116 S.Ct. 1524, and *Fabricators of Utah,* 518 U.S. 213, 229, 116 S.Ct. 2106. The Supreme Court stated that any exercise of equitable subrogation should "'not be inconsistent with the provisions of the Bankruptcy Act.'" *United States v. Noland,* 517 U.S. at 538, 116 S.Ct. 1524 (citation omitted). "This last requirement has been read as a 'reminder to the bankruptcy court that although it is a court of equity, it is not free to adjust the legally valid claim of an innocent party who asserts the claim in good faith merely because the court perceives that the result is inequitable.'" *Id.* (citation omitted). Likewise, the Court cautioned: "'[T]he [equity] chancellor never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer

result may be obtained by application of a different rule'". *Id.* at 543, citing *In re Ahlswede*, 516 F.2d 784, 787 (9th Cir. 1975).[3]

In *Noland*, the issue was whether under the bankruptcy court's power of equitable subrogation under 11 U.S.C. § 510(c), the court could categorically subordinate the Government's claim for a noncompensatory tax penalty. The bankruptcy court had "weighed the relative equities" and had "subordinated the tax penalty claim to those of the general unsecured creditors." *Id.* at 537. The Supreme Court reversed, finding that if the provision were read as conferring equitable power on the bankruptcy court that authorized it "to conclude on a general categorical level that tax penalties should not be treated as administrative expenses to be paid first, it would empower a court to modify the operation of the priority statute at the same level at which Congress operated" when it exercised its judgment in establishing a hierarchy of claims. *Id.* at 540. The Bankruptcy Court's equitable power does not extend that far. *Id.* at 540-541.

The Supreme Court reaffirmed its limitations on a bankruptcy court's equitable power in *Fabricators of Utah*, 518 U.S. 213, 116 S.Ct. 2106, a Chapter 11 case in which the bankruptcy court had improperly subordinated the IRS' claim for a tax liability to claims of other general unsecured creditors. Citing its decision in *Noland* that categorical subordination of claims was beyond the scope of the bankruptcy court's equitable authority, the Supreme Court stated: "The principle is simply that categorical reordering of priorities that takes place at the legislative level of consideration is beyond the scope of judicial authority to order equitable subordination under §510(c)." *Fabricators of Utah*, 518 U.S. 213, 229, 116 S.Ct. 2106.

The Bankruptcy Court's action here, in categorically disallowing Claimants' punitive damages claims, similarly invades Congress' power to determine what categories of claims may be disallowed – or subordinated.

When providing its oral ruling that the Claimants' punitive damages claims be disallowed, the Bankruptcy Court started by mentioning the holding from *BMW of North*

---

[3] This circumspection should be amplified to the extent the Bankruptcy Court lacks jurisdiction over the underlying claims under 28 U.S.C. §157(b)(5).

*America, Inc. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589 (1996) that punitive damages may be no greater than "reasonably necessary." RT, p. 15:9-14. The Bankruptcy Court then stated: "In accordance with the clear guidance of the Supreme Court, Claimants' claims for punitive damages shall be disallowed. The disallowance of punitive damages in a liquidating chapter 11 case is in accord with the bankruptcy case law in this District and is appropriate in this case." RT, p. 15:15-19. The Bankruptcy Court then cited and quoted at length from the opinion *In re Motors Liquidation Company,* 2012 Bankr. LEXIS 6258, *35 (Bankr. S.D.N.Y. Aug. 6, 2012) [2012 WL 10864205]. However, the entire discussion of damages in the *Motors Liquidation* opinion, and particularly the discussion of punitive damages, was pure dicta. The court began that section of its opinion admitting as much: "Though I find no claims that would support an award of damages in any amount, I believe it desirable, for the sake of completeness, to discuss the matter of damages." *In re Motors Liquidation Company,* 2012 WL 10864205 at *10. The Court completely ignored and never mentioned *Noland* or *Fabricators of Utah,* and instead relied on case law that pre-dated both of those opinions. Judge Gerber stated: "Disallowance of punitive damages is particularly appropriate in a liquidating case, including a liquidating chapter 11 case where there is no future conduct to deter; the people guilty of the misconduct would not be punished for it; and the victims of the punitive damages would in reality be only other wholly innocent, creditors." *In re Motors Liquidation Company,* 2012 WL 10864205 at *11. Despite opining generally on the issue of depletion and "unfairness," the Court provided no actual analysis of the facts and cited to no evidence showing that in the case before it, an award of punitive damages would, in fact, "deplete" the recovery of other creditors.

In the present case involving BNC, the Bankruptcy Court likewise did no specific analysis of the circumstances. There is no indication that allowing Claimants' punitive damages claims would dilute or otherwise detrimentally affect payments to other creditors. Instead, the Bankruptcy Court adopted the bare assertions of the *Liquidation Company* opinion by stating

"the policy goals of punitive damages would not be achieved in the instant case" since "[t]here is no longer a wrongdoer to deter." 4/13/2017 RT, p. 16:15-17.[4]

However, in reaching this conclusion, both the Bankruptcy Court and the court in *Liquidation Company* disregarded the fact that the public policies underlying punitive damages are to protect the public by not only deterring "repetition of the tortious conduct by both the particular defendant adjudged liable" but also "**others who might be tempted to imitate his conduct**." *Williams v. City of New York*, 508 F.2d 356, 360 (2d Cir. 1974) (emphasis added); *see also* Restatement 2d Torts, §908 (punitive damages are to deter the wrongdoer "and others like him"). The fact that a particular debtor may be liquidating, and therefore was unlikely to repeat the tortious conduct, does not render imposition of punitive damages meaningless, since such a penalty will protect the public by serving as an example and a deterrent to others who may be tempted to engage in the same kind of wrongful conduct. In this case, imposition of punitive damages on BNC will help deter other employers who may be inclined to ignore complaints from its employees about ongoing sexual harassment and a hostile work environment and take action to protect their employees from such tortious conduct – even those who know or suspect that their company may be or become insolvent.

Nor was there any attempt by the Bankruptcy Court to determine that the recovery by other BNC creditors would be diluted or depleted if the Claimants were allowed to pursue their punitive damages claims. The Court cited *In re Johns-Manville Corporation,* 68 B.R. 618, 627-628 (Bankr. S.D.N.Y. 1986) as support for the decision to disallow Claimants' punitive damages claims, but reliance on that case is misplaced. First, it preceded the Supreme Court's decisions in *Noland* and *Fabricators of Utah*. Second, in *Johns-Manville* Judge Lifland applied section 105 only with the strictest circumspection and after concluding that allowing such claims would

---

[4] The Court's statement that there was "no longer a wrongdoer to deter" overlooks or is inconsistent with the fact that the debtor was treated as an ongoing business under the Plan, which gave BNC a discharge—a remedy reserved exclusively for corporations that continue to operate. *See* 11 U.S.C. §1141(d)(3).

deplete the assets and defeat the purposes of the plan to provide equal dividends to creditors of the same class, and not because it would result in dilution of claims to all creditors.  *In re Johns-Manville Corporation,* 68 B.R. at 628.

Contrary to the approach taken by the Bankruptcy Court and the court in *Liquidation Company*, other courts have concluded that punitive damages may not be categorically disallowed.  For example, the Bankruptcy Court in *In re Infiltrator Systems, Inc.,* 248 B.R. 707 (Bankr. D.Conn. 2000) rejected an attempt by the debtor to have the punitive damages claims summarily disallowed.  "The debtor's argument that punitive damages should be disallowed as a matter of law because they impose a penalty on innocent creditors lacks merit.  In considering a similar argument with regard to the equitable subordination of tax penalties, the United States Supreme Court held that the bankruptcy courts could not categorically disallow such claims."  *In re Infiltrator Systems, Inc.,* 248 B.R. at 711 (citing *Noland* and *Fabricators of Utah*).  "Its equity jurisdiction 'permits a [bankruptcy] court to make exceptions to the general rule when justified by particular facts,' not to make 'a categorically distinction at a legislative level of generality.' *Noland,* 517 U.S. at 540-541, 116 S.Ct. 1524."  *In re Infiltrator Systems, Inc.,* 248 B.R. at 711.

Likewise, when faced with the contention that punitive damages should be disallowed under *Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295 (11th Cir. 1982)[5], the bankruptcy court in *In re Friedman's, Inc.,* 356 B.R. 766 (Bankr. S.D. Ga. 2006), rejected the contention, concluding that *Noland* led to a different result.  *Id.* at 770.

> Despite the fact that *Noland* dealt with categorical subordination and not disallowance, a fair reading of that decision leads to the conclusion that *Novak*'s categorical disallowance of penalty/punitive claims would also be viewed by the United States Supreme Court as in derogation of Congress's authority. . . . There is no language anywhere in Section 502(b) that indicates a congressional intent to disallow penalty/punitive claims.

*Id.* at 772.

---

[5] *GAC* was one of the cases cited and relied upon by Judge Gerber in *Motors Liquidation*, 2012 WL 10864205 at *11.

14

As recognized in *In re A.G. Financial Service Center, Inc.*, 395 F.3d at 414, in *Noland*, "the Supreme Court has rejected the contention that tax penalties may be disfavored categorically . . . strongly implying that case-by-case administration of the Code's authority for equitable subordination is the right way to deal with all punitive financial claims." In the Seventh Circuit's view, after *Noland* and *Fabricators of Utah*, "whether a punitive award should be subordinated to other claims is open to independent consideration under the terms of the Bankruptcy Code." *In re A.G. Financial Service Center, Inc.*, 395 F.3d at 414. See also *In re New York Medical Group, P.C.*, 265 B.R. 408, 415-416 (Bankr. S.D.N.Y. 2001).

The First Circuit explained the import of *Noland* as follows:

> The Court made equally clear, however, that courts were not authorized to subordinate entire classes of claims based "not on individual equities but on the supposedly general unfairness" of preferring that class of claims over another. *Id.* at 540-41, 116 S.Ct. 1524. Such categorical judgments are legislative in nature; they "are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination." *Id.* at 541, 116 S.Ct. 1524 . . . .

*Merrimac Paper Company, Inc. v. Harrison (In re Merrimac Paper Co., Inc.)*, 420 F.3d 53, 61 (1st Cir. 2005).

In sum, there are substantial grounds to differ with the Bankruptcy Court's legal conclusion that punitive damages must be categorically disallowed in a liquidating Chapter 11 case, warranting an interlocutory appeal.

### 3. An Immediate Appeal May Materially Advance The Resolution Of These Cases And Extraordinary Circumstances Warrant This Interlocutory Appeal

Under these factors, "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial." *In re Enron Corp.*, 2006 WL 2548592, at *4 (internal quotation marks omitted); *see also Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities, LLC*, 2011 WL 6057927, at *5 (S.D.N.Y. Dec. 6, 2011).

Immediate appellate review of the Bankruptcy Court's Order will materially advance the resolution of these claims because allowing the issue of punitive damages to be tried with the liability claims is likely to "avoid protracted and expensive litigation" since there will be no need to present the same evidence at two different trials to two separate juries.  The evidence and testimony necessary to prove the claims for compensatory damages for harassment, retaliation, wrongful termination, intentional infliction of emotional distress and the other claims will be substantially the same as the evidence necessary to establish the malicious and outrageous conduct to show entitlement to punitive damages.  The Claimants have already waited nearly twelve long years for resolution of their claims.  If an interlocutory appeal is not granted, that will indefinitely delay the final resolution of all of their claims, including punitive damages, as there is no end in sight to the biggest bankruptcy case ever.  Granting this motion for an interlocutory appeal will expedite resolution of those claims, avoid the expense and delay of two trials, and bring this litigation to an end for the Claimants.

All of these factors  heavily favor an interlocutory appeal.  *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 387 (M.D.Pa. 2007) (finding that immediate appeal would materially advance ultimate termination because the case "could proceed in an expeditious manner without significant expense.")

## VI.    CONCLUSION

For the foregoing reasons, Claimants respectfully request that this Court grant the motion

for leave to appeal the Order of the Bankruptcy Court.

DATED May 23, 2017                              GWILLIAM, IVARY, CHIOSSO,
                                                CAVALLI & BREWER


                                                By: /s/ Gary Gwilliam
                                                    Gary Gwilliam
                                                    Attorneys for Claimants, Sylvia Vega-
                                                    Sutfin, Michelle Seymour, Cheryl McNeil,
                                                    Linda Howard-James, Isabel Guajardo and
                                                    Denise Colombo


DATED:  May 23, 2017                            WENDEL, ROSEN, BLACK & DEAN LLP


                                                By: /s/ Mark S. Bostick
                                                    Mark S. Bostick
                                                    Attorneys for Claimants, Sylvia Vega-
                                                    Sutfin, Michelle Seymour, Cheryl McNeil,
                                                    Linda Howard-James, Isabel Guajardo and
                                                    Denise Colombo