**<u>Exhibit A</u>**

**Order Granting Plan Administrator's Five Hundred Nineteenth Omnibus Objection to
Claims (No Liability Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **Case No. 08-13555 (SCC)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

---------------------------------------------------------------------x

<u>**ORDER GRANTING**</u>
<u>**PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION**</u>
<u>**TO CLAIMS (NO LIABILITY CLAIMS)**</u>

Upon consideration of The Plan Administrator's Five Hundred Nineteenth

Objection To Claims (No Liability Claims) with respect to claims filed by Maverick Long

Enhanced Fund, Ltd., Maverick Neutral Levered Fund, Ltd., Maverick Neutral Fund, Ltd.,

Maverick Fund USA, Ltd., Maverick Fund II, Ltd. and Maverick Fund, L.D.C. (collectively, the

"<u>Claimants</u>"), dated June 22, 2016 [Docket No. 53107] (the "<u>Objection</u>"),[1] of Lehman Brothers

Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan

of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>"), pursuant to section

502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 3007(d) of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), seeking to disallow and

expunge the Maverick Claims, all as more fully described in the Objection; and it appearing that

this Court has jurisdiction to hear and consider the Objection; and notice of the Objection having

been provided to Claimants, and it appearing that no other or further notice need be provided;

and the Court having carefully considered the Objection, the Opposition Of The Maverick

Entities To The Plan Administrator's Five Hundred Nineteenth Omnibus Objection To Claims

(No Liability Claims) [Docket No. 53435], and the Reply To Response To, And In Further

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Objection.

Support Of, Plan Administrator's Five Hundred Nineteenth Omnibus Objection To Claims

[Docket No. 55046]; and the Court having heard the arguments of counsel at the Sufficiency

Hearing held on March 24, 2017; and the Court having found and determined that the relief

sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all

parties in interest, and that the legal and factual bases set forth in the Objection establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

thereof for the reasons stated in the Court's oral opinion included in the transcript attached as

<u>Exhibit A</u> hereto, which is incorporated herein and made part hereof, it is hereby ordered that:

1.      Pursuant to section 502(b) of the Bankruptcy Code and Rule 3007(d) of the

Bankruptcy Rules, the Maverick Claims are hereby disallowed and expunged in their entirety

with prejudice.

2.      The Court's oral opinion is hereby supplemented as follows:  The Claimants

submit that the Maverick Claims adequately assert claims against LBHI for (i) direct liability

under the prime brokerage agreements (the "<u>PB Claim</u>"); (ii) liability for breaches of the New

York Uniform Commercial Code (the "<u>UCC Claim</u>"); and (iii) liability for unspecified damages

for lost investment opportunities and other items (the "<u>Lost Opportunity Claim</u>", and collectively

with the PB Claim and the UCC Claim, the "<u>Additional Claims</u>").  To the extent that the Court

disagrees with the Claimants' assertion that the Maverick Claims can be characterized as direct

claims, the Claimants seek an opportunity to move to amend the Maverick Claims to assert the

Additional Claims.

The Claimants are not entitled at this late date to amend their guarantee claims to assert

direct claims.  *See Midland Cogeneration Venture v. Enron Corp. (In re Enron Corp.),* 419 F.3d

115 (2d Cir. 2005) ("<u>Enron I</u>")*; see also In re Enron Creditors Recovery Corp.,* 370 B.R. 90

(Bankr. S.D.N.Y. 2007). As outlined by the Second Circuit in *Enron I*, courts typically engage in a two-step inquiry when considering a claimant's request for leave to amend its claim: first, the court examines whether the amendment "relates back" to the original claim (*i.e.*, if it corrects a defect of form in the original claim, describes the original claim with greater particularity, or pleads a new theory of recovery on the facts set forth in the original claim); and second, "if an amendment does, in fact, 'relate back' to the timely filed claim, [the] court[] will 'examine each fact within the case and determine whether it would be equitable to allow the amendment.'" *Enron I*, 419 F.3d at 133 (citations omitted). "Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment . . . whether the late claimant acted in good faith and the delay was justified [and] . . . whether the opposing party will be unduly prejudiced by the amendment." *Id.* (internal quotations and citations omitted).

The Additional Claims constitute new claims seeking to assert direct liability (rather than guarantor liability) against LBHI; accordingly, leave to amend the Maverick Claims to assert such Additional Claims is denied for failure to satisfy the first step of the *Enron I* inquiry. Even assuming, *arguendo*, that the Additional Claims are not new claims but do in fact "relate back" to the original guarantee claims such that the first step of the inquiry for leave to amend would be satisfied, any amendments to the Claimants' proofs of claim would inequitably and unduly prejudice the estate of LBHI; accordingly, leave to amend is denied based on the failure to satisfy the second step of the *Enron I* inquiry. While the Second Circuit in *Enron I* stated that there is no bright-line rule governing lateness and that lateness must be considered in the context of the proceedings as a whole, *id.* at 128, the Claimants have requested leave to amend their proofs of claim more than *seven years* after the bar date, *five years* after the effective date of the

Plan, and after numerous distributions have been made to creditors; such request cannot be

considered timely.  Further, the Claimants do not provide any cogent justification for their delay

in requesting leave to amend but instead observe that the parties have been discussing the

Additional Claims for quite some time, so these claims should not be a surprise to LBHI.  As in

*Enron I,* the Claimants' argument that LBHI "should have known" about the Additional Claims

"undermine[s] the process of distinguishing between asserted and unasserted claims by requiring

creditors to submit proofs of claim in order to participate in the bankruptcy reorganization."  *Id.*

at 131.  LBHI could not and should not have been expected to reserve funds for the Additional

Claims.  Lastly, the Claimants' claims are not unique; LBHI guaranteed numerous contracts of

its many affiliated entities.  As in *Enron I*, if the Court were to permit holders of LBHI

guarantees to amend their claims at this juncture in the case, it would "open the 'floodgates' to

similar late[-filed] claims" which would cause undue prejudice to LBHI and result in a

significant adverse impact to the estate and its creditors.  *Id.* at 121.  For these reasons, the

Claimants are not entitled to amend their proofs of claim to assert the Additional Claims.

Moreover, even if the Court were to permit the Claimants to amend their proofs of claim

to assert the Additional Claims, such amendment would be futile as the Additional Claims fail on

the merits for the following reasons.  First, with respect to the PB Claim, the Claimants argue

that LBHI is directly liable under the PB Agreements because LBI signed the PB Agreements on

behalf of itself and all of its affiliates, including LBHI.  This contention is unfounded because

LBHI, by its nature, could not have been directly responsible for the obligations under the PB

Agreements.  LBHI was merely a holding company; it was not permitted to hold securities or

cash on behalf of customers, execute trades, or otherwise undertake any brokerage-type

obligations. Since LBHI could not perform the functions of a broker-dealer, LBHI cannot be directly liable under the PB Agreements.

Second, with respect to the UCC Claim, the Claimants maintain that LBHI is liable for breaches of statutory obligations under Sections 8-503, 8-506, and 8-508 of the UCC; however, the UCC is not applicable to the Maverick Claims. The plain language of the UCC states that the substance of the duties imposed by the aforementioned sections should be governed by applicable insolvency law. *See* N.Y. U.C.C. § 8-503, cmt 1 (stating that "[i]f the [securities] intermediary fails and its affairs are being administered in an insolvency proceeding, the applicable insolvency law governs how the various parties having claims against the firm are treated"); *see also,* N.Y. U.C.C. § 8-509(a) (stating that "[i]f the substance of a duty imposed upon a securities intermediary by Sections 8-504 through 8-508 is the subject of other statute, regulation, or rule, compliance with that statute, regulation, or rule satisfies the duty"). The Claimants do not dispute LBHI's compliance with the Bankruptcy Code or the purportedly applicable United Kingdom Insolvency Act 1986. Because LBHI's compliance with applicable insolvency law satisfies the duties imposed under Sections 8-503, 8-506, and 8-508 of the UCC, the UCC Claim would fail as a matter of law.

Lastly, the Lost Opportunity Claim is entirely too speculative and implausible to sustain a cause of action. To establish a claim for loss of future profits as damages for a breach of contract, "the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co. v. Country of Erie*, 67 N.Y.2d 257, 261 (1986) (citations omitted). Any potential lost profits claimed by the Claimants appear to be based on purely hypothetical investments that

08-13555-scc    Doc 55348    Filed 05/12/17    Entered 05/12/17 14:00:19    Main Document
Pg 6 of 6

Claimants *could have* made; such hypothetical investments would not be sufficient to prove loss.

As such, Claimants would be unable to state a valid cause of action with respect to the Lost

Opportunity Claim.

Accordingly, for all of the foregoing reasons, Claimants' request for leave to amend their

proofs of claim is denied.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to this Order.

4.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1)

with respect to the Maverick Claims.


Dated:  May 12, 2017
        New York, New York

                                                /S/ Shelley C. Chapman
                                                HONORABLE SHELLEY C. CHAPMAN
                                                UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    CASE NO. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC.,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - x

11                   U.S. Bankruptcy Court

12                   One Bowling Green

13                   New York, New York

14

15                   March 24, 2017

16                   10:03 AM

17

18   B E F O R E :

19   HON. SHELLEY C. CHAPMAN

20   U.S. BANKRUPTCY JUDGE

21

22

23

24

25

08-13555-scg   Doc 55346-1   Filed 05/22/17   Entered 05/22/17 14:14:30   Exhibit A
Pg 9 of 107

Page 2

1    ECRO - KAREN

2    HEARING RE:   Doc #53107 Plan Administrators Five Hundred

3    Nineteenth Omnibus Objection to Claims (No Liability Claims)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2    Transcribed by:  Sheila Orms and Dawn South

3    A P P E A R A N C E S :

4    WEIL, GOTSHAL & MANGES, L.L.P.

5         Attorneys for LBHI

6         767 Fifth Avenue

7         New York, NY  10153

8

9    BY:  ADAM M. LAVINE, ESQ.

10        GARRETT A. FAIL, ESQ.

11        RICHARD L. LEVINE, ESQ.

12

13   SHEARMAN & STERLING, LLP

14        Attorneys for the Maverick Entities

15        599 Lexington Avenue

16        New York, NY  10022

17

18   BY:  WILLIAM J. F. ROLL, III, ESQ.

19        RANDALL L. MARTIN, ESQ.

20

21

22

23

24

25

Page 4

1

2

3

4                    P R O C E E D I N G S

5              THE COURT:  Please have a seat.

6              How is everyone?

7              ALL:  Very good, Your Honor.

8              THE COURT:  Okay.  Who am I going to hear from?

9              MR. LEVINE:  Thank you, Your Honor, Richard Levine

10    from Weil Gotshal for LBHI as plan administrator.

11             THE COURT:  Okay.

12             MR. LEVINE:  Your Honor --

13             THE COURT:  You know, I'll say my usual, I've read

14    the papers, but in light of the degree of complexity for the

15    -- although you say it's not complex, but in light of the

16    sheer volume of the different arguments, I'm happy to let

17    you make whatever presentation you like and the same goes

18    for the Maverick parties.

19             MR. LEVINE:  Thank you, Your Honor.

20             So, as you know, we believe that if we are right

21    about the application of Section 562, then our motion should

22    be granted in its entirety so that will be my focus.  But

23    I'd like to start, Your Honor, with the Maverick LBIE

24    settlement.

25

1              The first thing I'd like to read from is --

2              THE COURT:  Can I ask you one --

3              MR. LEVINE:  Sure.

4              THE COURT:  -- overarching background question.

5              MR. LEVINE:  Sure.

6              THE COURT:  So this all came in the first round

7       incident to the estimation motion.

8              MR. LEVINE:  That's right.

9              THE COURT:  Okay.  So in terms of, you know, given

10      that we're at an advanced point in the case, and this is not

11      dispositive in any way, it's just information for me, are

12      there other similar claims structurally similar claims that

13      have been allowed or disallowed either with respect to an

14      LBHI guarantee of a LBIE obligation or LBIE obligation or an

15      LBHI guarantee of an LBI obligation?  And if you don't know

16      the answer that's fine, as a legal matter it's neither here

17      nor there, it's just information.

18              MR. LEVINE:  I'll defer to Mr. Fail on that.  But

19      it's my understanding that no, that there were two of these

20      "LBIE" guarantee claims, SRM, which we argued to Your Honor

21      last summer and then mediated and then this one, where there

22      were among the few LBIE guaranteed claims that were

23      withdrawn from the estimation objection.

24              Most of the LBIE guarantee claims were resolved

25

Page 6

1     with the estimation objection and you estimated at zero

2     because LBIE was being a hundred percent payor.  There were

3     only a handful --

4             THE COURT:  Payor, you said, payor.

5             MR. LEVINE:  Right, so LBIE was paying a hundred

6     percent on claims.  So it was only a few guarantee claims

7     against LBHI that had settled with LBIE before they knew

8     that LBIE was going to be a hundred percent payor who

9     objected to the estimation motion.

10            The estimation motion was withdrawn as to those

11    claims because we wanted to get rid of the vast majority

12    where there was no objection, so there was only a handful

13    that survived.

14            And as far as I know, the only ones still

15    outstanding are SRM and Maverick.  SRM is a little bit more

16    complicated because it's governed by UK law, remember we

17    don't think that makes a difference --

18            THE COURT:  I remember, right.

19            MR. LEVINE:  -- but it does, it did require both

20    sides to put in those horrible English expert law

21    declarations --

22            THE COURT:  I wouldn't agree with the

23    characterization as horrible, but.

24            MR. LEVINE:  Well, they're not written in American

25

Page 7

1    English for sure.

2              THE COURT:  No comment.

3              MR. LEVINE:  Garrett, do you want to add anything

4    to add?

5              MR. FAIL:  Yeah, thank you, Your Honor, Garrett

6    Fail.

7              THE COURT:  Yes, Mr. Fail.

8              MR. FAIL:  Your Honor, is correct, there are a

9    number of claims that are still outstanding on -- of LBIE

10   guarantees, guarantees by LBHI of LBIE primary obligations

11   that are subject to a motion to estimate claims.  There's

12   essentially two parties that are still outstanding with

13   those, there's a number of claims that they have acquired,

14   but there's only two parties there.

15             These -- the two that Mr. Levine referenced SRM

16   and Maverick are the only two in the claims objection where

17   LBHI filed an objection because the parties are asking for

18   more than they -- they're looking for no more than --

19             THE COURT:  The notion on that are the primary

20   obligation at Libby.

21             MR. FAIL:  Exactly.  And I'm not aware of any

22   claims against LBHI where the primary obligation was LBIE

23   that have been allowed by LBHI.

24             THE COURT:  Okay.  All right.  Thank you.

25

Page 8

1              MR. LEVINE:  So what I was going to -- since our

2       focus is on 562 --

3              THE COURT:  Right.

4              MR. LEVINE:  -- and I'll get to the legal issues

5       there in a few minutes.  I thought what I'd like to do is

6       start with the key elements, which we think allow us to win

7       if 562 applies.

8              The first is a statement in Maverick's objection

9       to the estimation motion which I don't think, you know, by

10      any means they're walking away from.  Your Honor doesn't

11      need to read along with me, but if you want to --

12             THE COURT:  I have it.  I have tab 4.

13             MR. LEVINE:  Tab 4.

14             THE COURT:  Tab 4, yes.

15             MR. LEVINE:  Page 11, paragraph 22, and I'm

16      reading the second half of the paragraph about five lines up

17      from the bottom.

18             And this is their statement, and again I don't

19      think it's --

20             THE COURT:  Hold on, tab 4 -- sorry.

21             MR. LEVINE:  No problem, tab 4, page 11.

22             THE COURT:  Page 11, yes.

23             MR. LEVINE:  Paragraph 22.

24             THE COURT:  The Ivanhoe rule.

25

1          MR. LEVINE:  On paragraph 23, sorry, next

2     paragraph, I can't read my numbers.  So if you go about

3     halfway or three quarters of the way down that paragraph,

4     the last sentence begins towards the right-hand column "in

5     light of the cancellation."

6          THE COURT:  Yes.

7          MR. LEVINE:  So this is their statement "In light

8     of the cancellation of indebtedness that would otherwise

9     have been owed to LBIE, Maverick concedes that it already

10    has effectively received approximately 101.9 million in

11    value from LBIE, in connection with the LBIE settlement

12    agreement, reflecting an offset of the approximate value of

13    the securities and cash that LBIE may have been obligated to

14    return to Maverick under English law."

15         So that's our first kind of point, which is that

16    if we're right, that the settlement date, and it wasn't

17    exactly the settlement date but for purpose of the

18    estimation motion, we're using the date and the valuation

19    that they assert, they got the value of their cash and

20    securities as of the settlement date under the settlement.

21         So that's a valuation date, they got what they're

22    entitled to.  As we understand their argument, they say, no,

23    you use the petition date.

24         THE COURT:  They say you use the petition date --

25

1            MR. LEVINE:  Right.

2            THE COURT:  -- for the purpose of the guarantee.

3            MR. LEVINE:  Of valuing, right, of valuing the

4    claim.

5            THE COURT:  For the purpose of asserting a claim

6    on the guarantee.

7            MR. LEVINE:  That's right.  Then the second thing

8    that I wanted to bring out is actually in the settlement

9    agreement itself, so that is behind tab 4, now we're going

10   to tab E behind tab 4, which is the LBIE settlement --

11   settlement between LBIE and Maverick.

12           THE COURT:  Yes.

13           MR. LEVINE:  And there I'd like you to turn to

14   page 4 --

15           THE COURT:  Okay.

16           MR. LEVINE:  -- of the settlement.  And it's

17   actually part of -- it's 2.1.A, and this is where it

18   provides for termination—of the relevant agreements and

19   they're actually in Schedule 2 to the settlement, and they

20   list all the agreements at issue, the prime brokerage

21   agreements, the marginal lending agreements, and the global

22   master securities lending agreements, so they're all listed

23   in Schedule 2 and then defined as the relevant agreements.

24           "The relevant agreements and all transactions

25

 1   thereunder, to the extent that they have not previously been

 2   terminated are terminated as between LBIE and each Maverick

 3   entity."

 4          And I will tell Your Honor that we saw in

 5   discovery any documents suggesting an earlier termination,

 6   and SRM you'll remember, they actually served the notice of

 7   termination, but Maverick was like most LBIE claimants, they

 8   didn't serve a notice of termination, so there was no prior

 9   termination.

10          And I don't understand them to be arguing there

11   was a prior termination.

12          THE COURT:  No, I think in this point their

13   argument is that essentially it doesn't matter because the

14   words say that they're terminated as between LBIE and each

15   Maverick entity and therefore that does not affect the

16   obligations of LBHI and therefore, it does not implicate or

17   mean that 562(a) is controlling.

18          MR. LEVINE:  Right and --

19          THE COURT:  And in response to this, you say,

20   well, look all the obligations --

21          MR. LEVINE:  I can sit down.

22          THE COURT:  All the obligations are terminated, so

23   the fact that these words limit it to LBIE, is neither here

24   nor there.

25

1           MR. LEVINE:  Right.  I mean, that's exactly right,

2      it's really those three arguments you were just hinting at

3      that LBHI was not a broker dealer.  LBHI could not perform

4      the prime brokerage functions, in fact, in the prime

5      brokerage agreement it expressly provides that a prime

6      brokerage account, the opening words are "a prime brokerage

7      account opened pursuant to this agreement will be opened at

8      Lehman Brothers, Inc."

9           And so clearly Lehman Brothers, Inc. was the prime

10     broker that, in fact, it was LBIE but it had to be either

11     LBI or LBIE --

12          THE COURT:  Sure.

13          MR. LEVINE:  -- because LBHI was not a broker or

14     could not trade for customers, could not custody --

15          THE COURT:  Could not custody --

16          MR. LEVINE:  -- securities or cash.  So that in

17     terms of the obligations on the Lehman side on the -- under

18     the prime brokerage agreements, it was terminated as to

19     LBIE, there was nothing left for LBHI to do.  LBHI was

20     technically a party and benefitted from things like

21     exculpation provisions, but it didn't have any obligations

22     because it couldn't interact with customers.

23          Secondly obviously to the extent that their claims

24     are guarantee claims, and under the proof of claim, and

25

1    we'll look at that in a moment, I'm not sure you're going to

2    pull one out, all the claims are guarantee claims.

3                THE COURT:  They're guarantee claims.

4                MR. LEVINE:  So if they're guarantee claims --

5                THE COURT:  Right.

6                MR. LEVINE:  -- and the primary claims are against

7    LBIE and it's been terminated as to LBIE, and the only

8    question is whether LBIE still owes them something as to

9    which we're guarantor.  Well, I don't think it matters

10   whether it was terminated as to LBHI when, to the extent

11   their claims are a guarantee claim.

12                And I think finally the argument would be that if,

13   in fact, it was not terminated as to LBHI, so that there

14   were still somehow remaining obligations of LBHI after the

15   LBIE/Maverick settlement, then it was an executory contract

16   and it was rejected pursuant to the plan, and that was just

17   about the same date as the settlement, the effective date of

18   the plan, so it was rejected and 562 would still apply.

19                So that's our response to the argument that it

20   wasn't terminated as to LBHI.  So if we are right that

21   Section 562 controls, then we think there's no room to

22   argument, no room to argue, other than as of that date, the

23   contracts were terminated, the security contracts, the

24   master netting agreements were terminated and they got full

25

1    value.

2            Now, as I understand Maverick's main theory, it's

3    very different.  The main theory is that the value of their

4    long positions, and they say you don't take into account the

5    short positions, the offsetting short positions, you just

6    look at their long positions, to decrease from the petition

7    date which is they say when you value it, 562 doesn't apply,

8    to the settlement date by 16.2 million.  And that they're

9    entitled to that diminution in value from petition date to

10   settlement date because all they were able to get from LBIE

11   is the value at the settlement date, and not the value at

12   the petition date.

13           Of course, we think well, it doesn't matter what

14   the value is of the petition date, but that's their argument

15   as I understand it.

16           THE COURT:  Well, in support of that argument,

17   they say, for example, if for some reason, their claim

18   against LBHI would have had to have been valued prior to the

19   settlement date, you would be stuck with valuation as of the

20   petition date.

21           MR. LEVINE:  Well, I -- that may have been true,

22   but the -- once they terminated their contracts, 562 kicks

23   in.  I mean, 562 --

24           THE COURT:  562 kicks in not only with respect to

25

1    the termination of the prime brokerage agreement, but also

2    with respect to the guarantee agreement.

3              MR. LEVINE:  Right, for multiple reasons.  Number

4    one, we think the guarantee agreement under the definition

5    in the Code, in Section 741 --

6              THE COURT:  Is the securities --

7              MR. LEVINE:  -- is the securities contract, right,

8    and to the extent the prime brokerage agreement is the

9    master netting agreement, then the guarantee of the master

10   netting agreement is also a securities contract.

11             The -- I lost my train of thought, I'm sorry.

12             THE COURT:  I'm sorry, my fault.

13             MR. LEVINE:  So, you know, we think 562 applies,

14   but so to get these diminution damages, reduction in value,

15   and we're accepting their numbers for purposes of the motion

16   to dismiss hearing, we're not agreeing with them, we're just

17   accepting them for purposes of -- for example, they value --

18   their settlement they value is supposedly as of February

19   13th, 2012.  Because that's, according to their affidavit,

20   basically when the business deal was done.

21             Now, my guess is, is that the reason they're using

22   that day, so the actual settlement date of March 30th, 2012

23   is because it moved against them, but I don't know that, and

24   we're not challenging that --

25

 1                  THE COURT:  We're not going there at a sufficiency

 2        hearing.

 3                  MR. LEVINE:  At a sufficiency hearing.

 4                  THE COURT:  Right.

 5                  MR. LEVINE:  We're accepting their number.  So --

 6        but to get those diminution damages, that 16.2 million, they

 7        need to establish 562 doesn't apply, they need to convince

 8        Your Honor that your rulings in Stonehill, Newport, and

 9        Providence and the decision in MF Global on exculpation

10        provisions precluding diminution damages doesn't apply here;

11        they're wrong.

12                  THE COURT:  And just to stop in the decision tree,

13        even if 562 were held not to apply, you say the exculpation

14        would kick in and would knock out the liability of LBHI on

15        the guarantee nonetheless, correct?

16                  MR. LEVINE:  On the diminution damages.

17                  THE COURT:  On the diminution damages.

18                  MR. LEVINE:  They make an assertion that as of the

19        petition date for five of the six funds, you know, five

20        funds they chose, so we know what the sixth one would have

21        done to the number, the net amount, and this is on a net

22        basis owed by LBIE to Maverick was 4.3, 4.3 million.

23                  So we would say that, if they're right that 562

24        doesn't apply, our worst case is a 4.3 million --

25

1          THE COURT:  Yes.

2          MR. LEVINE:  -- then we'd say, once we take into

3     account that sixth fund, it's likely -- well, we know it's

4     going to be less than 4.3, whether it's going to be any

5     positive amount, I mean, I actually know the number, but it

6     was provided in mediation so I can't say it unless counsel

7     agrees, but in the public record, we know that for five of

8     the six funds all that LBIE owed Maverick as of the petition

9     date was 4.3 million on a net basis.

10          And as you know, Your Honor, we think this notion

11    that our guarantee was only of long positions and not net,

12    makes no sense.  I mean, the function of a guarantee

13    obviously is to make sure that the primary obligor makes the

14    claimant whole.  Right.

15          If all LBIE owed to Maverick was 4.3 million

16    because Maverick owed LBIE this much and LBIE owed it that

17    much, it seems crazy to say that we have to pay them this

18    windfall that we don't get to take into -- well, we're

19    guaranteeing more than the net amount, that they get to

20    claim and get this windfall.

21          So we think that doesn't make sense.  So we think

22    that to get the 16.2 diminution damages, two of the three

23    arguments are that 562 doesn't apply, we think they lose.

24    The exculpation provisions don't preclude the diminution

25

Page 18

1    damages, and we think they lose the law of the case, and MF

2    Global.  And then there's this issue of they only look at

3    their long positions, and I think that's contrary to the

4    nature of a guarantee.  We think that's contrary to the

5    nature of the parties' agreements.

6           Now, we made a mistake in our opening brief, we

7    cited to Your Honor the netting provision in the prime

8    brokerage agreement, which provides for netting.  And they

9    correctly pointed out in their opposition that that only

10   applied if Maverick was in default.

11          But there's, you know, sometimes it's lucky to be

12   on the side of a good contract.  Paragraph 32 of the prime

13   brokerage agreement, Your Honor --

14          THE COURT:  What tab am I in?

15          MR. LEVINE:  Okay.  You are in tab 4B. Your Honor,

16   I actually have some excerpts printed out, would you --

17          THE COURT:  I can -- it's easier for me to just

18   use my little tabs here.  So I'm with you.

19          MR. LEVINE:  4B, and if you go to the end of the

20   prime brokerage agreement --

21          THE COURT:  So this is --

22          MR. LEVINE:  4B.

23          THE COURT:  -- LBI, prime brokerage agreement.

24          MR. LEVINE:  Right, the only prime brokerage

25

 1      agreement is with LBI.

 2                  THE COURT:  Well, it says LBI.

 3                  MR. LEVINE:  Yeah, it's with LBI, but this is the

 4      one that governed the relationship, there was no separate

 5      one with LBIE.

 6                  THE COURT:  Okay.  You folks agree with that?

 7                  MR. BELL:  Correct, we do, Your Honor.

 8                  THE COURT:  Okay.  So I'm in tab 4B, and what

 9      page?

10                  MR. LEVINE:  And if you go to paragraph 32, so

11      we're towards the end.

12                  THE COURT:  Numbered paragraph 32.

13                  MR. LEVINE:  On page 9.

14                  THE COURT:  Yes, cumulative rights entire

15      agreement.

16                  MR. LEVINE:  Right.  If you go to the second

17      sentence, it's about four lines down, towards the right-hand

18      margin, "to the extent that the provisions of any contracts

19      you have with any Lehman Brothers entity, whether heretofore

20      or hereafter entered into are inconsistent whether the

21      inconsistency be within the contracts or a single contract,

22      the conflict shall be resolved in favor of the provision

23      which affords Lehman Brothers with the maximum rights,

24      remedies, benefits or protections."

25

1              So to the extent that the provisions of a

2      contract, a prior contract heretofore entered into are

3      inconsistent with this, Lehman gets the best provision.

4              THE COURT:  Okay.  And how does that help with

5      respect to the netting provision?

6              MR. LEVINE:  Because if you go to our tab 3, which

7      is our reply brief, attached to our reply brief was the

8      prior prime brokerage agreement, it's Exhibit 1, in terms of

9      the ECF filings, page 27 of 80.  Lehman Brothers

10     International Europe LBIE Master Prime Brokerage Agreement.

11     At tab 3, page 27 of 80.

12             THE COURT:  Yes.

13             MR. LEVINE:  Okay.  So if we go to page -- well,

14     I'm sure there's a page number, it's page 42 of 80, I'm

15     looking at Section 12, termination.

16             THE COURT:  Yes.

17             MR. LEVINE:  "Events of default," of course we

18     have to figure out what an event of default is, "the

19     occurrence of the following events with respect to a party

20     constitutes an event of default in relation to that party,"

21     the defaulting party, the other party being the non-

22     defaulting party.

23             And then we turn to the next page, 12.1D provides

24     "an active insolvency occurs with respect to the party,

25

1    except in the case of an active insolvency which is the

2    presentation of a petition for winding up or any analogous

3    proceeding or the appointment of a liquidator or analogous

4    officer of the defaulting party, in which case, no such

5    notice will be required, the non-defaulting party serves the

6    default notice."

7                Well, from our perspective it's clear that LBIE's

8    appointment of an administrator was covered by D, no notice

9    was required, so there was an event of default, it makes

10   sense LBIE filed, sought administration was an event of

11   default.

12               You go to the next section, Section 13, close-out

13   "on the occurrence of an event of default the following

14   shall immediately occur," Part C provides that the non-

15   defaulting party, Maverick, had to calculate the amounts,

16   and then Section D on page 44 of 80 makes clear that there's

17   automatic net.

18               THE COURT:  Okay.

19               MR. LEVINE:  So that under the prime brokerage

20   agreement in effect, there was a provision which said prior

21   agreements that are better for Lehman control, this prior

22   agreement makes clear that there's automatic netting in the

23   event of an event of default.

24               So we think that makes clear that they're netting

25

1   that.

2              THE COURT:  So just to encapsulate that, you're

3   saying that notwithstanding that they were right with

4   respect to, I'll call it the LBI PB agreement that under the

5   LBI PB agreement, you have to revert to this constellation

6   of provisions in the previous PB agreement, which was, in

7   fact, with LBIE, and that gave you the advantage of netting

8   notwithstanding the fact that your status as a non-

9   defaulting party.

10             MR. LEVINE:  Right, correct.  And, you know,

11  frankly I think that's kind of standard and it's kind of

12  surprising to me that the LBI prime brokerage agreement

13  didn't provide for automatic netting.  I think this is kind

14  of typical, you know, if things end, you figure out who owes

15  what to what, whom to whom, and you net.

16             So that we think that's very important.  And maybe

17  it's time to look at the proofs of claim.

18             THE COURT:  Okay.  That's tab 5.

19             MR. LEVINE:  That's tab 5.  As far as I know,

20  they're all the same except for which Maverick fund it is,

21  the amount claimed, and which guarantee they rely on.

22             So the language we're going to look at as far as I

23  know, and I checked very carefully is the same -- each of

24  the six proofs of claim.  The difference on the guarantees

25

1    are three of them rely on the corporate resolution, and

2    three of them rely on the 2002 direct guarantee by LBHI.

3            Now, in fact, that 2002 direct guarantee was

4    replaced by a later guarantee, there was a direct guarantee

5    and the one that we think governs here even though it's not

6    mentioned in the proofs of claim, is a direct guarantee,

7    we're not contesting the application of that direct

8    guarantee, we clearly don't accept the fact that the

9    corporation resolution is enforceable, we don't accept the

10   fact that the S&P letter is enforceable, but we think none

11   of that matters for today because there's a direct guarantee

12   which we acknowledge is enforceable.

13           So anyway, so I'm just looking at the very first

14   one behind tab 5 which is the one from Maverick Long

15   Enhanced Fund Limited.  And of course, on the first page, on

16   the form page, they check this box if all or part of your

17   claim is based on the guarantee.  And then if we actually

18   look at the text, paragraph 1 just recites the filing.  The

19   second paragraph 1 provides "this proof of claim is filed in

20   debtor's bankruptcy case by Maverick Long Enhanced Fund

21   Limited.  Maverick has a claim, the claim against the debtor

22   on account of the debtor's full guarantee pursuant," and

23   they refer to the corporate resolution, "of the payment of

24   all liabilities, obligations and commitments of LBIE."

25

1           So clearly that paragraph is only talking about

2      the guarantee.  If we go to paragraph 2, again recites the

3      three agreements, the prime brokerage agreement, the

4      marginal lending agreement, and the global master securities

5      lending agreement, and then at the very bottom, the last

6      three words on that page it continues, "The Lehman entities

7      agree to provide certain prime brokerage services to

8      Maverick," and then it defines the different agreements as

9      the prime brokerage documents, and that's important, prime

10     brokerage documents, "under the terms of the prime brokerage

11     documents, LBIE has a lien and first priority security

12     interest in certain assets held or controlled by LBIE."

13          Okay.  Well, that certainly sounds like a right to

14     net, if you have a lien and first priority security interest

15     on the assets.  And it continues in that same vein, "Such

16     assets are held as collateral by LBIE as agent and bailee on

17     behalf of itself and all other affiliates of LBIE, in

18     connection with Maverick's obligations under the prime

19     brokerage documents."

20          Again it sounds like they're admitting that we get

21     to net.  Then importantly, the last sentence of paragraph 2

22     reads, "As of the petition date, the Lehman entities had

23     custody of Maverick's assets pursuant to the prime brokerage

24     documents in the amount of 1.286 million," that aggregates

25

1     across the six claims to 187 million.

2                "This proof of claim constitutes a demand for

3     payment under the guarantee."  Then, when describing the

4     claim in paragraph 3, "Maverick hereby asserts the claim in

5     the initial amount of that 1.3 million less any amounts owed

6     by Maverick in connection with the prime brokerage

7     documents."

8                Okay.  Now, in their opposition, Maverick argues

9     well, that's not netting, well, you know, sounds to me like

10    netting.  And they drop a footnote, which also sounds like

11    netting.

12                THE COURT:  Footnote 3.

13                MR. LEVINE:  Footnote 3.  "For the avoidance of

14    doubt, the initial claim amount is a gross claim and does

15    not take into account any amounts or obligations that

16    Maverick may owe to the Lehman entities under the terms of

17    the prime brokerage documents."

18                THE COURT:  Well, that is a -- that language is to

19    protect them from an accusation that they overstated the

20    claim.

21                MR. LEVINE:  Right, right, but it's certainly

22    consistent --

23                THE COURT:  No, I understand.

24                MR. LEVINE:  -- to their understanding that they

25

Page 26

1    only got a net claim.

2              THE COURT:  Right.

3              MR. LEVINE:  Then they say, "the initial claim

4    amount may change depending on the current value of the

5    assets in custody until such time as Maverick exercises any

6    remedies it may have to liquidate the claim."  Well, it's

7    claim.

8              Now, we don't agree with that, we think that

9    either it's the petition date under 502 or the termination

10   or rejection date under 562, but that was their claim,

11   that's fine.

12             Then we go with the additional claims, because now

13   remember they're asserting they have direct claims under the

14   PB agreements, and --

15             THE COURT:  But they're seeking to amend to assert

16   them, they don't have direct claims under the filed

17   documents, right?

18             MR. LEVINE:  Well, as I understand it, they argue

19   that those direct claims are embedded in here.

20             THE COURT:  In here?

21             MR. LEVINE:  Yes.  They have suggested that if

22   they're wrong about that, they'd like to amend, but they

23   don't admit that they need to amend, as I understand their

24   position.

25

1            THE COURT:  Okay.  Well, I can ask them about

2    that.

3            MR. LEVINE:  The -- I'm reading just now from

4    paragraph -- from footnote 13 of their opposition, "As noted

5    in footnote 3 of the estimation objection, Maverick's claims

6    also asserted and reserve rights with respect to various

7    other entitlements, such as interest, legal fees, and other

8    damages, including damages for lost investment opportunities

9    and other items."

10            Now, we agree that they (indiscernible) mention

11    interest and fees, but we think it's completely inaccurate

12    to say that the Maverick claims also asserted and reserved

13    rights with respect to other entitlements including damages,

14    including damages for investment opportunities and other

15    items.  We just don't think they're here.

16            So we think that to the extent they think they've

17    already asserted them, that's just wrong, and that to the

18    extent that they want to assert them, they have to move to

19    amend the proof of claim, and of course we would argue it's

20    much, much too late for that.

21            THE COURT:  Could you address -- there seems to be

22    an argument that somehow this is not capable of being

23    resolved in a sufficiency hearing basis.

24            MR. LEVINE:  Well, we think that's just wrong

25

1    because there are no disputes.  If 562 applies, we think the

2    -- well, we think that the fact -- our 562 argument relies

3    entirely on legal disputes, that the facts underlying those

4    arguments are not in dispute, that the settlement agreement

5    with LBIE and Maverick was where all the prime brokerage

6    documents were terminated, there was no prior termination.

7            They admit that they got the value of their

8    assets, their cash and securities as of around that date.

9    So those are the only factual issues, we're not disputing

10   the money and I don't think they're disputing the

11   termination.

12           All they're raising are legal arguments, 562

13   doesn't apply because the prime brokerage documents are not

14   securities contracts and are not master netting agreements.

15   And the guarantee is not a securities contract or master

16   netting agreements, we think those are issues of law which

17   Your Honor can resolve.

18           They argue that the prime brokerage documents were

19   only terminated as to LBIE, not as to LBHI.  Again, we think

20   there's no dispute about the language of the settlement

21   agreement, the question is what is the legal impact of the

22   termination.  Was there anything against LBHI that could

23   have survived and if there was, wasn't -- didn't that mean

24   that it was an executory contract which was rejected on the

25

Page 29

1     date of the effectiveness of the plan.

2              So we think that clearly under the 562 argument,

3     it clearly can be resolved because the facts that we rely on

4     are not in dispute, or we're not disputing them at least for

5     purposes of this hearing, and they're just legal issues.

6              There's also the question of netting.  We think

7     that -- or their right to diminution damages-- we think that

8     clearly is another legal issue.  The language of the prime

9     brokerage documents and the exculpatory language, we think

10    as a matter of law, as Your Honor has held in three

11    different cases and consistent with MF Global precludes

12    diminution damages.

13             So that we think Your Honor -- so even if Your

14    Honor rejects the 562(a) argument, you certainly can rule as

15    a matter of law that there are no diminution damages, which

16    would then just leave a question of whether they're entitled

17    to the 4.3 million net amount owed to them as of the

18    petition date or some greater or lesser amount I guess.

19             But it seems to me, you know, let me -- because as

20    you know, I have never gotten over show and tell, I can't

21    leave without a handout, so I'd like to hand up one and

22    counsel and approach the bench.

23             THE COURT:  And then I'll ask you to wrap up.

24             MR. LEVINE:  Okay.

25

```
 1                THE COURT:  This is just a demonstrative, right?

 2                MR. LEVINE:  This is just a demonstrative.  These

 3      are numbers.  So -- okay.  So the top of this is supposed to

 4      be our summary of the proofs of claim.

 5                THE COURT:  Uh-huh.

 6                MR. LEVINE:  And as we see it, it's purely a

 7      guarantee claim in which they seek 187.3 million in the

 8      aggregate, but expressly, as we saw when we look at the

 9      sample proof of claim, expressly minus any amounts owed by

10      Maverick back to LBIE, and they think fees and expenses

11      which are unliquidated and interest which is unliquidated,

12      and we don't think they're entitled to those either for the

13      normal reasons, and then no other claims asserted.

14                Then in their current theory which comes from

15      their objection to the estimation motion, and their response

16      to our objection to their claim, there are guarantee claim

17      components, in which they assert that not 187.3 million, but

18      the value of their long positions, just their long positions

19      without netting was 118.1 at the petition date, that they

20      received 101.9 million in value as of the settlement date,

21      and therefore, that difference is the 16.2 they're asking

22      for we say that since you value it under 562 with the

23      settlement date, there's nothing that's owed to them.

24                Fees and expenses and interest are still

25
```

Page 31

1    unliquidated.  In terms of the second page, there are other

2    claims, they're now saying they have asserted, they want to

3    amend to assert direct claims under the prime brokerage

4    documents.  Those do not seek any incremental damages, so as

5    we understand it, it's still the 16.2 as opposed to the

6    187.3 on the proofs of claim.

7            Now, we obviously have various responses that are

8    not asserted in the proofs of claim, LBHI did not assume any

9    broker dealer obligations, and all the other defenses that

10   apply to the guarantee claims apply.

11           And then they have consequential damages.  And all

12   we know about the consequential damages are what's in that

13   footnote I read to you before, which simply says that they

14   have consequential damages without offering any factual

15   support, any -- well, let me read it to you.

16           In addition -- this is from the estimation motion

17   objection footnote 3 --

18           THE COURT:  Which is tab?

19           MR. LEVINE:  Tab 4, I'm sorry.  Tab 4, page 4.

20           THE COURT:  Okay.

21           MR. LEVINE:  Footnote 13, and they basically

22   repeat this in their response to the objection motion they

23   refer back to this paragraph.  But this is basically all

24   they said about --

25

1          THE COURT:  Other damages.

2          MR. LEVINE:  -- other damages, or lost investment

3     opportunities is what they call it.

4          "In addition to the 16.2 million recoverable by

5     Maverick, the Maverick entities proofs of claim also

6     reserved the right to seek interest and legal fees and also

7     generally asserted and preserved the right to pursue all

8     amounts payable in connection with the prime brokerage

9     agreements."

10         And actually what it says is "the prime brokerage

11    documents," which is a full list of agreements, not just the

12    PB agreements, and the guarantees.  "Although Maverick

13    believes the $16.2 still owed to it provides ample

14    justification to deny the estimation motion with respect to

15    the Maverick entitiesMaverick expects that it may in the

16    future continue to pursue any rights it may have to collect

17    interest, legal fees, or other damages, including damages

18    for lost investment opportunities or other items."

19         And that footnote is basically repeated in their

20    most recent objection, but lost investment opportunities, I

21    mean, we know that, under New York law, it's virtually --

22         THE COURT:  You don't have to spend time on this.

23         MR. LEVINE:  Okay.  The final thing is I got

24    handed a note by Mr. Fail, let me just make a couple of

25

1          points that he asked me to make.

2                  Another reason that Section 562 applies to the

3          guarantee claims is that 562 talks about damages, it's not -

4          - in their papers they kind of suggest 562 is a measure of a

5          claim, how much a claim should be, but that's not right.

6          562 talks about damages.  And then they say, well, New York

7          law says you could calculate damages on the date of breach,

8          and I agree with that.

9                  But here we have a Bankruptcy Code provision,

10         which under the supremacy clause controls, which says that

11         if under 562, if 562 applies, damages are measured as of the

12         termination date, rejection date, liquidation date.

13                 And finally, we think that a fundamental problem

14         with Maverick's approach under 562 is that it would suggest

15         that where 562 applies to a primary obligor, it might not

16         apply to a guarantor --

17                 THE COURT:  You have a two tiered system with two

18         sets of books.

19                 MR. LEVINE:  -- two tier, you got it, Your Honor.

20                 Then I'll sit down and let Your Honor -- thank you

21         very much for your patience.

22                 THE COURT:  Sure.

23                 MR. FAIL:  Can I just correct?  Sorry.  One more

24         thing and I won't correct Rick, Garrett Fail, Weil Gotshal

25

1    for the record.  Your Honor asked the question before if we

2    were aware of any claims against LBHI that had a primary

3    obligor of LBIE that were allowed, I said I wasn't.  I've

4    since had a chance to check with my client, there was one

5    claim that was allowed where the amount received by the

6    counterparty was less than the claim allowed by LBIE or the

7    claim asserted against LBHI due to certain unique

8    circumstances of an agreement.

9            So we allowed one guarantee claim against LBHI,

10   where we appropriately think the guarantee should be paid.

11   In terms of the estimation motion, I said that there were

12   largely two parties that were still disputing that.  There

13   are two additional claims, plus or minus a million dollars

14   each that are also outstanding --

15           THE COURT:  Okay.

16           MR. FAIL:  -- that are disputing it.  Other

17   parties have claims outstanding with respect to estimation,

18   but they won't be litigated if there's an agreement that

19   those claims will be withdrawn on a date certain in the

20   future.

21           THE COURT:  Okay.

22           MR. FAIL:  And in terms of claims that are being

23   litigated, other LBIE related, we spoke about SRM, Newport

24   and Providence you're aware of.

25

Page 35

```
 1                THE COURT:  Yes.

 2                MR. FAIL:  And there's one additional claim that

 3      I'm aware of, Highland, which is in mediation, a $5 million

 4      claim, so I just wanted to be complete for the record.

 5                THE COURT:  All right.

 6                MR. FAIL:  All the unique circumstances.

 7                THE COURT:  It was just by way of background for

 8      me, it's neither here nor there in terms of legal arguments.

 9                MR. FAIL:  I agree, thank you.

10                MR. ROLL:  Good morning, Your Honor.

11                THE COURT:  How are you?

12                MR. ROLL:  I'm fine, Your Honor, how are you?

13                THE COURT:  Good.

14                MR. ROLL:  William Roll of Shearman & Sterling

15      appearing on behalf of the Maverick entities.  I'm here with

16      my colleague, Randall Martin.

17                Just a program note if I might, Your Honor --

18                THE COURT:  Sure.

19                MR. ROLL:  -- if it's all right with the Court, I

20      was hoping to afford Mr. Martin the opportunity to argue at

21      least some of this because he's --

22                THE COURT:  Of course.

23                MR. ROLL:  -- done 99 percent of the work, so he

24      should have at least some of the fun.

25
```

Page 36

```
 1              THE COURT:  Delighted.

 2              MR. ROLL:  My intention is if we get to things

 3     like the exculpatory provisions --

 4              THE COURT:  Sure.

 5              MR. ROLL:  -- and the proofs of claim, I'm going

 6     to turn that over to him.

 7              THE COURT:  Sure.  I want to ask you a couple of

 8     questions, though --

 9              MR. ROLL:  Of course.

10              THE COURT:  -- right off the bat.

11              So suppose there was no Lehman filing broadly

12     speaking and life just went on.

13              MR. ROLL:  Yes.

14              THE COURT:  Right?  And the Maverick entities

15     decided to part ways with LBIE.  And they terminated the

16     prime brokerage agreement.

17              MR. ROLL:  Uh-huh.

18              THE COURT:  Give me back my stuff, we're going to

19     go to another broker dealer.

20              MR. ROLL:  Right.

21              THE COURT:  Okay.  And at that moment in time, the

22     custody and securities were worth less than what they were

23     when you gave them to LBIE.

24              MR. ROLL:  Uh-huh.

25
```

Page 37

1              THE COURT:  Would you have a right to call in the

2      guarantee for the diminution in value?

3              MR. ROLL:  Well, there would be no diminution in

4      value, as Your Honor has articulated that hypothetical,

5      because we would be looking at just that one date.

6              THE COURT:  I'm sorry, no, my hypothetical is that

7      on the -- at the commencement of the relationship with the

8      prime broker --

9              MR. ROLL:  Right.

10             THE COURT:  -- with LBHI as a guarantor --

11             MR. ROLL:  Right.

12             THE COURT:  -- you -- custodies, securities that

13     were say a billion dollars --

14             MR. ROLL:  Correct.

15             THE COURT:  -- okay.  And then you decide you're

16     going to go with a different broker dealer, right, and you

17     terminate.  And you say to LBIE, give me back my stuff,

18     right.  And LBIE says, sure, here's your stuff.  Okay.  Or

19     LBIE says, and you agree, well, we don't want back our

20     stuff, we just want the value of our stuff.  And the value

21     of the stuff on that date is half a million dollars less,

22     right.  You get to go ask for that half a million dollars

23     from your guarantor?

24             MR. ROLL:  No.

25

1          THE COURT:  Why not?

2          MR. ROLL:  Because we would have -- well, Your

3     Honor started with a very big if.  No bankruptcy filing, so

4     we're in a normal relationship, so we, Maverick, would be

5     taking a risk in that circumstance of asking for its

6     securities back --

7          THE COURT:  Why is that --

8          MR. ROLL:  -- at a time when the value would've

9     diminished.

10          THE COURT:  Why does that not apply in this

11     situation?

12          MR. ROLL:  Because of the application of 502 in

13     the Bankruptcy Code, because of the fact that --

14          THE COURT:  So you get more in bankruptcy than you

15     would out of bankruptcy?

16          MR. ROLL:  Because --

17          THE COURT:  You get an enhanced claim against a

18     bankrupt guarantor.

19          MR. ROLL:  In these -- in the circumstances

20     presented here --

21          THE COURT:  That's pretty good stuff.

22          MR. ROLL:  It's good stuff, but it's consistent

23     with the law.  And I think it's important to note that Your

24     Honor's hypothetical, it's a fair question, but in that

25

1    circumstance, Maverick could have taken -- made the choice

2    at any point along the way to say, give me my stuff back.

3              THE COURT:  Right.

4              MR. ROLL:  With the bankruptcy having intervened,

5    we didn't have that choice.  So in Your Honor's hypothetical

6    we could have said, well, you know --

7              THE COURT:  You realize what you just said.  When

8    the bankruptcy intervened, you didn't have that choice.  So

9    that's consistent with the application of the exculpation.

10   It's the absence of choice that was --

11             MR. ROLL:  In terms of the number, because --

12   that's all I was really getting at, Your Honor.  Because

13   when the bankruptcy intervened, when -- and let's, you know

14   --

15             THE COURT:  Go back to my hypothetical though,

16   because a guarantee is a guarantee is a guarantee --

17             MR. ROLL:  Correct.

18             THE COURT:  -- according to you.

19             MR. ROLL:  Right.

20             THE COURT:  So when you -- you get a guarantee

21   from LBHI parent --

22             MR. ROLL:  Uh-huh.

23             THE COURT:  -- and then you decide to terminate --

24             MR. ROLL:  Right.

25

1          THE COURT:  -- and your stuff is worth less, you

2     have a guarantee.  Well, I don't understand why out of

3     bankruptcy you would not be able to then say, make good on

4     the guarantee.

5          MR. ROLL:  We have a guarantee for whatever the

6     obligation is at that point.

7          THE COURT:  At the point of the termination.

8          MR. ROLL:  No, no.  In this particular instance,

9     there was no termination.  The value of the guarantee

10    derives from the claim we're able to assert under Section

11    502 of the Bankruptcy Code against LBIE on or LBHI and LBIE

12    on the petition date --

13         THE COURT:  But the claim was unliquidated on the

14    petition date.

15         MR. ROLL:  Understood.  But New York law says,

16    it's a New York law governed contract, New York law says the

17    damages are measured from the date of the breach.  The

18    breach occurred on the date they went into administration,

19    which is the same date that LBHI filed for Chapter 11.

20          So that's when things begin.  And on that date, we

21    have a claim against LBIE under New York law for the amount

22    of the securities, i.e., you know, what they're holding

23    because they breached the obligations to return those.

24          We have a claim under the guarantee, as of that

25

1    same date for that same amount, but we can't exercise it, we

2    can't exercise the right under the guarantee because LBHI

3    has filed.

4           So at that point and from that point, we have a

5    claim for 118, at least 118, the value of the securities at

6    that point and cash, which they don't dispute.  Every day

7    from that point, until we get to March of 2012, and under

8    the LBHI theory today, everything changes at that point.

9           They say, well, the settlement agreement is

10   entered into, it effectuates a payment in full to Maverick,

11   the liability under all the agreements, including the

12   guarantee, is extinguished and everybody goes home. But

13   that's not quite right.

14          That doesn't take into account the -- two things,

15   two sets of things.  The first thing is the facts, what

16   actually happened at that point, which is there was a --

17   LBIE's liability and the damages was actually compromised at

18   that point, following a real live negotiation engaged in by

19   real live people coming up with a real live agreement, which

20   Mr. Levine quoted from, and I'm going to quote from too.

21          That said because of the positions taken in that

22   negotiation and because of the application of UK insolvency

23   law, all you're going to get, Maverick, at this point, is

24   the value that UK insolvency law would say you get, which is

25

1    the value of the cash and securities at that point, the

2    101.9.

3              But it didn't change what was owed to us under the

4    guarantee, the amount of the claim for which was fixed as of

5    the petition date, unless there's some basis on which it can

6    be set that got terminated, and this was a question Your

7    Honor put to Mr. Levine at the very beginning of his

8    argument, you know, which is -- if it's not terminated --

9              THE COURT:  But you're assuming your conclusion.

10   You're assuming that simply because there was an LBHI

11   petition date --

12             MR. ROLL:  Uh-huh.

13             THE COURT:  -- and you can come up with a number -

14   -

15             MR. ROLL:  Right.

16             THE COURT:  -- a value of the securities on that

17   petition date, that that's the amount you get to assert

18   against LBHI on the guarantee.  But that's not an argument,

19   that's just ipse dixit, I mean --

20             MR. ROLL:  Under 502, the amount of a claim is

21   fixed as of petition.

22             THE COURT:  But that assumes that 562(a) does not

23   apply.

24             MR. ROLL:  Well, 562(a) does not apply, and I can

25

Page 43

1   go right into that if Your Honor would like.  This may be

2   the nub of it, you know, they say the agreement -- the

3   guarantee was terminated for two sets of reasons --

4           THE COURT:  Forget about whether it's terminated

5   or not.  Assume it's not terminated.

6           MR. ROLL:  If the guarantee -- if it is not

7   terminated and if the guarantee was not terminated and 562

8   does not apply, there should be absolutely no dispute that

9   we're entitled to what Section 502 would say we can assert

10  against the guarantor, which is the value as of the petition

11  date.  Their entire argument on sufficiency rests on the

12  notion that we were somehow paid in full, which relates to

13  the very "facty" set of issues surrounding the numbers, and

14  I was going to get to --

15          THE COURT:  What do you mean "facty" issues

16  surrounding the numbers?  There's no facts surrounding the

17  numbers.  You say you should be able to assert a claim on

18  the guarantee for the 118 so essentially you can get

19  distributions from LBHI that would catch you up and give you

20  full recovery on the 118 as opposed to the 101, that you've

21  already gotten.

22          MR. ROLL:  I was referring to the back and forth

23  between the parties in the negotiations, the evidence of

24  which is not at all before the Court at this stage, that

25

**Page 44**

 1    resulted in the number of 101.9 at the time we did the

 2    settlement with LBIE, that's what I was referring to.

 3            But the second part of their, you know, you-were-

 4    paid-in-full argument is that the guarantee was terminated,

 5    and therefore 562 kicks in and that's how you measure the

 6    damages.  But let's think about that.  562 requires at least

 7    three things, a specific party, a specific kind of an

 8    agreement, and a specific action being undertaken on behalf

 9    -- by that party with respect to that agreement.

10            We're not going to fight about, you know, the

11    specific party here, you know, whether it's a securities

12    contract or whatever, but we do take issue with the notion

13    that the guarantee was actually terminated in connection

14    with the settlement, because it clearly was not.

15            The settlement agreement itself says, quite

16    clearly that it's terminating the relationship between LBIE

17    and Maverick and not anybody else, and it specifically

18    reserves to Maverick the right to pursue claims against any

19    other Lehman entity.

20            THE COURT:  Sure, but you know, this is where you

21    go into your, you know, your Ivanhoe argument which you

22    think is a show stopper.  But the fact of the matter is that

23    all of that only stands for the proposition that had claims

24    against LBIE, claims -- if LBIE had not been a 100 percent

25

1      payor, you would unquestionably be able to assert the full

2      amount of that claim against LBHI so that you could become

3      paid in full, but you got paid in full by LBIE on the 101.

4              MR. ROLL:  We got paid 101, but that was not --

5      that was clearly not payment in full in the eyes of the

6      Maverick people.

7              THE COURT:  So let me ask you a different

8      question.  Let's take a little walk around the Bankruptcy

9      Code.

10             MR. ROLL:  Okay.

11             THE COURT:  502(b)(6).

12             MR. ROLL:  502(b)(6), okay.

13             THE COURT:  All right.  The cap on lease rejection

14     damages.

15             MR. ROLL:  Okay.

16             THE COURT:  See, he is smarter than you, he knows

17     exactly what it is.

18             MR. MARTIN:  We were going to bring up this

19     example, Your Honor.

20             THE COURT:  Okay.  All right.  So 502(b)(6) says

21     if, you know, if you reject a lease, your damages are capped

22     pursuant to 502(b)(6).

23             MR. ROLL:  Right.

24             THE COURT:  Right.  And the landlord might say,

25

Page 46

1   well, that's really nice, tenant debtor, but I've got this

2   nice guarantee.  Okay.  So I would think that you would tell

3   me, see, that's just like this, we've got this guarantee so

4   that the allowance of the lesser amount pursuant to the

5   Bankruptcy Code doesn't mean that I don't get to assert the

6   full amount of my damages against my guarantor, right?

7           MR. ROLL:  Correct.

8           THE COURT:  Okay.  However, under the Bankruptcy

9   Code if your guarantor is a debtor it doesn't work that way,

10  the cap applies.

11          So this notion that there's some greater ability

12  to recover under applicable -- I put in air quotes, although

13  air quotes have been much maligned nowadays -- applicable

14  non-bankruptcy law, you know, doesn't necessarily fly.  And

15  here I draw an analogy to the way 562(a) works both as a

16  matter of policy and actually by its terms --

17          MR. ROLL:  Uh-huh.

18          THE COURT:  -- to rebut the concept that, you

19  know, a guarantee, is a guarantee, is a guarantee, and you

20  get more than your -- the obligation owed to you by your

21  primary obligor, which is in fact what you're seeking.

22          MR. ROLL:  Right.

23          THE COURT:  You're seeking more than what your

24  primary obligor owed you.

25

Page 47

1          MR. ROLL:  Because of the operation of UK

2     insolvency rules we get the value of the securities on that

3     date.  And there is law from the southern district, cited in

4     our papers, which they don't deal with, unless I missed it,

5     and I don't think I did, the Instituto (ph) case on page 14

6     of our --

7          THE COURT:  Uh-huh.

8          MR. ROLL:  -- objection, which basically says that

9     the discharge -- a guarantor's obligations on the guarantee

10    are not discharged by reason of discharge of the primary

11    obligor's obligations as a result of foreign bankruptcy law.

12    That's still good law from the district court here, and they

13    don't address it at.

14          So as a result of that that discharge at the level

15    of 101.9 as a result of the negotiations we had with them

16    over what counted and what didn't to get to the final

17    number, means that we still retain the full amount of the

18    claim against the guarantor, you know, regardless of what

19    happens in connection with the foreign bankruptcy

20    proceeding.

21          So you still have that, and if you combine that

22    with Ivanhoe that means we can still recover -- we can still

23    assert the full amount of the claim against the co-

24    obligor/guarantor up to the point of payment in full,

25

Page 48

1    payment in full being defined by New York law in this

2    circumstance, because damages are measured as of the date of

3    the breach, against the guarantor.

4            So -- and I sense that Your Honor apprehends that

5    this is the argument, because this is where the Court

6    started with Mr. Levine, so I know that I'm not saying

7    anything that Your Honor doesn't already know that we're

8    going to say, but that really is the nub of the argument.

9            What I would say with respect to the hypothetical

10   scenarios and the 506(b), you know, I'm not smart enough to

11   parse 506(b) on the fly, maybe Mr. Martin can do it, he

12   can --

13           THE COURT:  502(b)(6).

14           MR. ROLL:  502(b)(6), I'm sorry -- you know, maybe

15   he can do it and fix whatever I've left unfixed at that

16   point, but respectfully we're not dealing with a

17   hypothetical circumstance.

18           THE COURT:  But we're not -- but we're also not

19   dealing with New York law, we're dealing with the Bankruptcy

20   Code and we're dealing with the operation of 562(a) --

21           MR. ROLL:  Right.

22           THE COURT:  -- under the Bankruptcy Code two

23   securities contracts.

24           MR. ROLL:  But -- right.

25

1            THE COURT:  Which is -- the prime brokerage

2       agreement certainly is, and which the guarantee certainly

3       is.

4            MR. ROLL:  Well we'll assume that for the purposes

5       of this argument, but that's only two -- that's two-thirds

6       -- or that's one-third, and I'll concede the other third --

7            THE COURT:  Why isn't --

8            MR. ROLL:  Because it was not terminated.  It was

9       not terminated in connection with the settlement, period,

10      full stop, because of what the parties did and because of

11      what the documents provide.

12           THE COURT:  Well but there's terminate and there's

13      terminated, right?  To the extent that the underlying

14      relationship terminates, right, let's go back to my

15      502(b)(6) example --

16           MR. ROLL:  Uh-huh.

17           THE COURT:  -- to the extent that the underlying

18      relationship terminates I'm not exactly sure what the

19      termination of a guarantee means.  There are no ongoing --

20      there's no ongoing relationship between the primary obligor

21      and the primary obligee, but the obligation of the guarantor

22      to pay it is what it is as of that moment in time.

23           MR. ROLL:  But the guarantee itself tells us what

24      it means for the guarantee to not exist -- for the

25

1    obligations under the guarantee to not exist.  And we should

2    look at that.  There's only one instance in which the

3    guarantee itself -- and this is the one that's toward the

4    back of the book, I forget which tab it is -- but it's the

5    one that the parties have referred to as the LBHI guarantee.

6              THE COURT:  Uh-huh.

7              MR. ROLL:  4(c).

8              THE COURT:  Uh-huh.

9              MR. ROLL:  If Your Honor would look at the --

10             THE COURT:  But you have to deal with the language

11   that says that -- the termination language that says that

12   all obligations --

13             MR. ROLL:  Uh-huh.

14             THE COURT:  -- are terminated.

15             MR. ROLL:  You're talking about the language in

16   the settlement agreement.

17             THE COURT:  Yeah.

18             MR. ROLL:  All obligations of LBIE.

19             THE COURT:  No, but that's not exactly right.

20             Let me -- you show me what you wanted to show me.

21             MR. ROLL:  I'll show -- well let's go to the --

22   let's talk about the settlement agreement first --

23             THE COURT:  Sure.

24             MR. ROLL:  -- because we're on it, and then we'll

25

1    go back to the guarantee.

2              THE COURT:  What's -- give me the tab, please.

3              MR. MARTIN:  4(e).

4              MR. ROLL:  4(e) for the settlement agreement.

5              THE COURT:  4(e).  Okay.

6              MR. ROLL:  If Your Honor would look at paragraph

7    2.1(a), I think this is one of those that Mr. Levine may

8    have actually pointed Your Honor to.

9              THE COURT:  Yep.

10             MR. ROLL:  But it says the relevant agreements and

11   all transactions thereunder --

12             THE COURT:  Uh-huh.

13             MR. ROLL:  -- are terminated as between LBIE and

14   each Maverick entity.  It doesn't say anything about LBHI,

15   it doesn't say anything about the --

16             THE COURT:  No, I'm thinking of --

17             MR. ROLL:  -- guarantee.

18             THE COURT:  -- a different provision.  I'll have

19   to find it.

20             MR. ROLL:  Okay.  But this one doesn't go away, I

21   mean this one is here.

22             The second part of that, subsection (b) says that

23   this deed shall be a full and final settlement of all

24   rights, obligations, liabilities, and claims, et cetera, et

25

 1    cetera, which LBIE and each Maverick entity may have against

 2    one another, including, but not limited to, and it goes on

 3    from there.  And it doesn't say anything about LBHI.

 4              THE COURT:  Well --

 5              MR. ROLL:  And they knew about LBHI at the time

 6    and they knew about the guarantee.

 7              You can then look at paragraph 2.3, which is the

 8    release language, the releases, which are actually once

 9    litigated you can say that's the most operative part of any

10    settlement agreement most important, and the one where it's

11    most important to be clear provides that it's only the

12    Maverick entities and LBIE that are releasing each other

13    with respect to all claims.

14              Again, the parties knew about LBHI and the

15    guarantee.

16              THE COURT:  But the guarantee says that the

17    guarantee will remain in full force and effect until the

18    first to occur of --

19              MR. ROLL:  Right.

20              THE COURT:  -- the obligations defined term, no

21    longer in existence, and the prime brokerage guarantee

22    defines obligations as all obligations under the agreements,

23    a defined term, and the defined term agreements includes the

24    prime brokerage agreements, the GMSLAs, and the letter

25

1    agreement, and the MLAs.  So --

2              MR. ROLL:  But the obligations no longer being in

3    existence is not a termination under this language.

4    Termination is -- this is the point I was trying to get to

5    before.  Termination is effectuated by notice.  Obligations

6    no longer being in existence means, has to be based on the

7    other language in this document, paid in full, and that has

8    to mean --

9              THE COURT:  You're ignoring the language --

10             MR. ROLL:  -- under New York law.

11             THE COURT:  -- that says the guarantee will remain

12   in full force and effect.

13             MR. ROLL:  Right.  Until the first --

14             THE COURT:  Until the obligations are no longer in

15   existence.

16             MR. ROLL:  But the obligations are in fact in

17   existence.  The obligations are still in existence because

18   we have not been paid in full --

19             THE COURT:  Can you hold on one second?

20             MR. ROLL:  Certainly.

21             THE COURT:  Hold on one second.

22        (Pause)

23             THE COURT:  Okay.  Go ahead, Mr. Roll, sorry.

24             MR. ROLL:  I would just contend, Your Honor, that

25

1    that -- you know, termination is the trigger for 562.  My

2    point is that the obligations no longer being in existence

3    is not a termination point, it has to do with actual payment

4    in full.

5           And the reason I say that is, that position is

6    consistent with the rest of the language in the agreement,

7    which actually indicates that there are certain

8    circumstances in which the obligations still remain.  In

9    fact the very next sentence.  Termination of this guarantee

10   shall not affect the guarantor's liability hereunder as to

11   the obligations incurred or arising out of transactions

12   entered into it prior to the termination thereof.

13          So obligations still being in existence is

14   separate and apart from termination.  It's a separate

15   concept.

16          THE COURT:  Okay.

17          MR. ROLL:  And there's actually another provision

18   in here that says the obligations can spring back to life if

19   they -- even if they've been paid in full and a bankruptcy

20   proceeding allows them to be avoided -- payments to Maverick

21   to be avoided.

22          So termination and obligations being paid in full

23   are two different concepts in this guarantee, and I think it

24   was carefully drafted for that reason, and -- or to

25

1     establish that or to leave to be a readily ascertainable

2     inference to draw from the document.

3            And it must mean, I think any way, and we've made

4     this point in the papers, that paid in full doesn't relate

5     to terminating the obligations of LBIE as a result of the

6     operation of UK insolvency law and the settlement and

7     whatever was done there and whatever was left open or not,

8     but rather New York law, which says the damages are measured

9     as of the petition date, which is the date of the breach.

10            THE COURT:  Okay.  Do you want to -- we should

11     turn to anything you want to say about exculpation and we

12     should turn to anything you want to say about direct claims

13     and/or amendments.

14            MR. ROLL:  Yeah, on that, Your Honor, I'll turn it

15     over to Mr. Martin who will cover exculpation.

16            THE COURT:  Okay.

17            MR. ROLL:  Probably the other items as well, but

18     if not I can come back on this.

19            THE COURT:  Okay.

20            MR. ROLL:  Thank you, Your Honor.

21            MR. MARTIN:  Good morning, Your Honor.

22            THE COURT:  Good morning.

23            MR. MARTIN:  Thank you for indulging our --

24            THE COURT:  No problem.

25

 1                  MR. MARTIN:  -- tag team presentation.

 2                  THE COURT:  Always like it when the younger person

 3      teaches the older person a thing or two.

 4                  MR. MARTIN:  I don't think that's going to happen

 5      today, but --

 6                  MR. ROLL:  I actually appreciate it too, Your

 7      Honor.

 8                  MR. MARTIN:  Could I touch on briefly the example

 9      in the question that you opened with to Mr. Roll?

10                  THE COURT:  Sure.

11                  MR. MARTIN:  Because I think that you're creating

12      a hypothetical that can't and won't happen in the real

13      world,and it is not the case that we are asserting a claim

14      for one penny more than we are entitled to outside of

15      bankruptcy.

16                  You raised the hypothetical in which we went --

17                  THE COURT:  Hold on one second.

18          (Pause)

19                  THE COURT:  Go ahead.

20                  MR. MARTIN:  You proposed a hypothetical in which

21      we wanted to terminate our relationship with the Lehman

22      entities outside of bankruptcy.

23                  THE COURT:  Uh-huh

24                  MR. MARTIN:  Every day outside of bankruptcy that

25

1          we have a long position open, we're betting on Apple stock,

2          for instance, we are assuming the risk that Apple stock goes

3          up or down.

4                    THE COURT:  Yes.

5                    MR. MARTIN:  So it's in custody with them, but

6          every day we have it with them --

7                    THE COURT:  You do have that risk, right.

8                    MR. MARTIN:  And so if we tell them we want to

9          terminate the relationship, please give us our securities

10         back or the monetary equivalent --

11                   THE COURT:  Uh-huh.

12                   MR. MARTIN:  -- they have to give it back to us.

13                   THE COURT:  Uh-huh.

14                   MR. MARTIN:  If they take two years to execute

15         that instruction and during that two years after which we've

16         told them we don't want to be invested in Apple stock --

17                   THE COURT:  Uh-huh.

18                   MR. MARTIN:  -- we get the Apple stock back and

19         its declined in value --

20                   THE COURT:  Right.  That's --

21                   MR. MARTIN:  -- in that case, yes, the guarantee

22         kicks in.

23                   THE COURT:  That's a fair clarification.

24                   But here this goes right -- this takes us right to

25

1     exculpation.  Here LBIE filed.

2               MR. MARTIN:  It filed, that's right.

3               THE COURT:  And that's what caused the delay.

4               MR. MARTIN:  I don't think that our claim was

5     caused by a bankruptcy.  Our claim is based on the fact --

6               THE COURT:  Why didn't you get your securities

7     back sooner?  You didn't get your securities back sooner

8     because there was a bankruptcy.

9               MR. MARTIN:  But surely that's not what the force

10    majeure clause was intended to capture and pick up.

11              THE COURT:  You don't think?

12              MR. MARTIN:  It talks about tornados, it talks

13    about insurrections, it does not reference --

14              THE COURT:  It does not reference --

15              MR. MARTIN:  -- bankruptcy.

16              THE COURT:  -- specifically -- well Judge Glenn in

17    MF Global certainly thought that suspension of trading by

18    SIPA with respect to LBI was pretty much of a financial

19    tornado.

20              MR. MARTIN:  Respectfully we think he's wrong.

21    It's a term of art in the financial world.  On suspension of

22    trading I think we have a half page footnote --

23              THE COURT:  Okay.

24              MR. MARTIN:  -- citing what a suspension of

25

Page 59

1    trading means.

2          Critically I also think that the MF Global

3    language and exculpation clause also included a reference to

4    all laws.  This one does not.  So there is an important

5    distinction between the language that was at issue in that

6    case and our language.

7          And the other thing, Your Honor, that makes it I

8    think crystal clear to me, that the guarantee could not have

9    been eviscerated by a force majeure clause, is that the

10   guarantee itself says as much.

11         I'm at the third paragraph of paragraph -- of tab

12   C --

13         THE COURT:  Okay.

14         MR. MARTIN:  -- behind tab 4 --

15         THE COURT:  Okay.

16         MR. MARTIN:  -- and there's a provision in the

17   guarantee that expressly notes that the obligations under

18   the guarantee kick in if we are the subject of a claw-back

19   resulting from a preference.

20         THE COURT:  Where are you?

21         MR. MARTIN:  It's the third full paragraph down,

22   Your Honor.  It's about two-thirds of the way down.

23         THE COURT:  This guarantee is?

24         MR. MARTIN:  Correct.  And if you read that whole

25

Page 60

1    paragraph what you'll see is that it expressly and

2    unambiguously contemplates that they will have to pay us

3    under the guarantee if we are the subject of a claw-back

4    with respect to a preference or a fraudulent conveyance.

5                THE COURT:  Okay.

6                MR. MARTIN:  That can mean one thing only.

7                Now, I know we're not making a claim based on a

8    preference and I know we're not making a claim based on a

9    fraudulent conveyance, but what this unambiguously means is

10   that if as a consequence of a bankruptcy we don't get paid

11   in full this guarantee is triggered.  The parties said as

12   much.

13               And what else is a guarantee for?

14               THE COURT:  It doesn't say that, let alone

15   unambiguously say that, but it's interesting.

16               MR. MARTIN:  A preference would be consequence of

17   a bankruptcy.

18               THE COURT:  I'm going to decline your invitation

19   to go down that path, because that's not what this says.

20   It's --

21               MR. MARTIN:  Your Honor, we had some points to

22   make on netting as well if you'd like to hear those.  I

23   don't know if those are the --

24               THE COURT:  I actually would not.  I think I'm

25

1      okay on netting.

2           The only other thing that I'm interested in

3      hearing is about this concept that there's either an

4      embedded direct claim in the claims that were filed or that

5      the Maverick entities ought to be allowed to amend to assert

6      a direct claim, which seems to include some notion of lost

7      investment opportunities.  Is that on you or Mr. Roll?

8           MR. MARTIN:  I can handle it, Your Honor.

9           :  That's perfectly fine.  Counsel is being

10     generous to us and preserving our right.

11          We're not taking the position that there is a

12     direct claim embedded in the proof of claim.

13          THE COURT:  Okay.  Because I didn't see.

14          MR. MARTIN:  And it's not there.

15          THE COURT:  Okay.

16          MR. MARTIN:  However, and this is critical, and

17     this speaks importantly to a point that you were discussing

18     with Mr. Roll.  An absolute and unconditional guarantee of

19     payment is a standalone document under New York law and a

20     standalone series of obligations.

21          So our point on the direct claim is that it is so

22     similar to the claim asserted with respect to the guarantee

23     claim that we should be permitted an opportunity to amend,

24     if necessary, although that only comes into play if you

25

Page 62

1    disagree with Mr. Roll that 562 doesn't apply because the

2    guarantee wasn't terminated.  We don't need the direct claim

3    otherwise so there's no need for you to resolve that unless

4    you go against us on 562.

5              THE COURT:  But here's the part I don't

6    understand.  If you think you have a claim for the delta

7    between 101- and 118- --

8              MR. MARTIN:  Uh-huh.

9              THE COURT:  -- which you do.

10             MR. MARTIN:  Correct.

11             THE COURT:  Okay?  Then you think you have a claim

12   for lost investment opportunities, because I assume that the

13   theory of the claim is that if we had had that $5 million

14   for that period of time we would have invested in all this

15   great stuff and we would have made all this money.

16             So the notion that you have that claim but you

17   didn't assert it, it just doesn't make any sense.

18             MR. MARTIN:  You're switching I think from the

19   direct claim to the consequential damages claim, and those

20   are two different things in my mind.  And I do think, Your

21   Honor, the proof of claim did adequately address our theory

22   of consequential damages.

23             THE COURT:  You think a guarantee claim includes a

24   claim for loss investment opportunities?

25

1           MR. MARTIN:  I think our proof of claim --

2           THE COURT:  Really?

3           MR. MARTIN:  -- adequately stated -- yes, Your

4    Honor.

5           THE COURT:  Where does it say that?

6           MR. MARTIN:  Under tab 5, page 2, the first --

7    sorry -- the last sentence, it's about halfway down on page

8    2 in Roman I.

9           THE COURT:  Uh-huh.

10           MR. MARTIN:  This is a very broad and very general

11    statement, Your Honor.  We said, "this proof of claim

12    constitutes a demand for payment under the guarantee".  That

13    refers to a payment of any amount owed as a result of the

14    breach of the guarantee which occurred under New York State

15    law as of the petition date.

16           THE COURT:  So you can say to me today that

17    statement means that we have a claim for lost investment

18    opportunities for $50 million?  Surprise LBHI, how's your

19    reserve looking?  I mean that's --

20           MR. MARTIN:  There should be --

21           THE COURT:  -- it doesn't work that way.  Okay?

22    It doesn't work that way.

23           MR. MARTIN:  Are there any other points that Your

24    Honor would like to hear addressed?

25

```
 1                THE COURT:  All right.

 2                MR. MARTIN:  Thank you, Your Honor.

 3                THE COURT:  Thank you.  Clean up, anyone?

 4                MR. LEVINE:  Yeah, Your Honor, I'd appreciate -- I

 5      can be very quick.

 6                THE COURT:  I'm going to hold you to that.

 7                MR. LEVINE:  Fair enough.  You've been very

 8      generous with your time.

 9                Okay.  So the first thing, I just wanted to

10      enforce a few things that Your Honor questioned counsel

11      about.  In terms of the exculpation provision and what

12      happened after LBIE filed for administration, on page 8 of

13      their response --

14                THE COURT:  And counsel cited a district court

15      case that says it's dispositive in their favor of that

16      argument that --

17                MR. LEVINE:  Well what I was going to point you

18      to, Your Honor --

19                THE COURT:  Yeah.

20                MR. LEVINE:  -- was their own statement.  I'm

21      reading from their brief, and you know, that in opposition

22      to the current objection, the one they filed.

23                LBIE -- under the -- this is tab 2, page 8, if you

24      want to read along, paragraph 22.  "The Maverick claims are

25
```

1    straightforward.  Under the prime brokerage agreements and

2    the New York Uniform Commercial Code, LBIE was obligated to

3    return all custodied, cash and securities to the Maverick

4    entities upon request.  LBIE, however, was not in the

5    position to do so after having commenced its administration

6    proceedings".

7            To me that necessarily would require rulings, that

8    is, under clause 28 of the PB agreement,  "You'll agree that

9    Lehman Brothers will be liable for any loss caused, directly

10   or indirectly, by government restrictions, exchange or

11   market rulings" -- that doesn't really apply – "suspension

12   of trading..."  They couldn't perform.  They admit the

13   reason they have a loss is because once LBIE filed for

14   administration, it wasn't able to trade, it wasn't able to

15   perform.  To me that's clearly covered.

16           In terms of the lost opportunities, the last

17   sentence of paragraph 29 of the PB agreement says, "in no

18   event will Lehman Brothers be liable for any special,

19   indirect, incidental or consequential damages."  Lost

20   investment opportunities are quintessential consequential

21   damages.  Consequential damages you almost never get unless

22   you have a specific instrument you can point to.

23           In terms of the guarantee.  Your Honor, I think,

24   was completely on point when you were directing counsel to

25

Page 66

1    the last paragraph on the first page of the guarantee.

2    "This guarantee will remain in full force and effect until"

3    – "until" means something -- "the first to occur of…the

4    obligations are no longer in existence."

5              As you pointed out, the obligations refer back to

6    LBIE's obligations as a  guarantee.  It's not direct

7    obligations, it's guaranteed obligations.  LBIE's

8    obligations were completely released and extinguished by the

9    settlement.

10             And in terms of the distinction, which I don't

11   really understand, between termination and ending of the

12   guarantee, the next sentence says, "termination of this

13   guarantee shall not affect."  Clearly, it understood the

14   prior sentence to relate to a termination of the guarantee.

15             As you know that, you know, we don't think it

16   matters for 562 whether the guarantee was terminated, even

17   though we think it was, because it governs damages in

18   relation to securities contracts, master nettings

19   agreements, the damages at issue are those that are running

20   under the prime brokerage documents which I think is clearly

21   under the very, very broad language of the second circuit

22   in --

23             THE COURT:  Madoff.

24             MR. LEVINE:  -- Picard versus Ida Fishman,

25

1    including they specifically call out were it not for the

2    account documents -- I'm reading from the second circuit

3    decision — "were it not for the account documents there

4    would be no basis for a customer to make deposits or request

5    withdrawals."

6            Their attempt to distinguish the PB agreement from

7    the definition of a securities contract, because what they

8    want was to get their securities back and not buy or sell

9    trades, is specifically described by the second circuit as

10   something that made the account agreements there a

11   securities contract.

12           And finally, Your Honor, I mean just to be kind of

13   crude, they paid $30 million.  They paid $30 million to

14   LBIE.

15           You know, you can't have an obligation to the

16   primary obligor and think you have a guarantee claim, it

17   just doesn't make sense.

18           THE COURT:  Okay.

19           MR. LEVINE:  Thank you.

20           THE COURT:  All right.  So, last licks, Mr. Roll?

21           MR. ROLL:  Please, Your Honor.

22           THE COURT:  Sure.

23           MR. ROLL:  And I promise, I will be quicker than

24   Mr. Levine.  And I appreciate the time --

25

08-13555-scc    Doc 55386-1    Filed 05/25/17    Entered 05/25/17 16:06:39    Exhibit A
Pg 76 of 107

Page 68

```
1              THE COURT:  Sure.

2              MR. ROLL:  -- I appreciate everyone's patience.

3              The last point we paid $30 million, we would have

4     paid a lot less if we had gotten full credit for the

5     securities cash that they had that they owed us, so that's a

6     red herring.

7              THE COURT:  What do you mean if you had gotten

8     full credit --

9              MR. ROLL:  If we had gotten everything that we

10    thought we were entitled to under -- from LBIE, if all the

11    positions had been closed out as we requested and the

12    resisted in the course of the negotiations we would have

13    ended up paying less.

14             So it's -- it doesn't mean that we weren't

15    entitled to --

16             THE COURT:  Okay.  Well I don't want -- I'm not --

17             MR. ROLL:  But --

18             THE COURT:  I really am trying to resist anyone

19    luring me away -- into contested facts, so.

20             MR. ROLL:  Well I was going to stop at that point.

21    The bottom line on that is, it is part of a set of contested

22    facts which is inappropriate at a sufficiency hearing, and

23    they know full well that there was a lot more to the story

24    of what went on in those negotiations and what's in the

25
```

1      papers, because --

2              THE COURT:  Okay.  But you're doing precisely what

3      I said I'm not -- I don't believe that there's a need to go

4      beyond the undisputed facts --

5              MR. ROLL:  Okay.

6              THE COURT:  -- of using the 101- and comparing it

7      to the 118- that is now being sought.

8              MR. ROLL:  Then I'll close on this point, Your

9      Honor.

10             With respect to the termination of the guarantee

11     as a matter of fact it was not terminated, absolutely --

12             THE COURT:  What about the plan provision?  What

13     about the argument that once you get to the plan it's over,

14     it's rejected?

15             MR. ROLL:  As an executory contract?

16             THE COURT:  Yeah.

17             MR. ROLL:  I think it fails the Countryman test,

18     there were no remaining obligations on the part of Maverick,

19     so I don't think it actually qualifies as an executory

20     contract.  And we saw that for the first time in their reply

21     brief, you know, that's my kneejerk reaction to that.  It's

22     the first we had heard of that.  But again, I don't think it

23     meets the test for an executory contract.

24             This is the point I wanted to close on.  The

25

1     guarantee was not terminated as a matter of fact or law or

2     else there would have been no reason for the existence in

3     the settlement agreement of the provision that preserved for

4     us the right to proceed against other Lehman entities.  That

5     can only mean that we had the right to proceed on other

6     obligations held by other Lehman entities, including LBHI,

7     including the guarantee.

8               And on the proof of claim issue, you know, LBHI is

9     really claiming they're surprised by the consequential

10    damages point which we have been discussing with them for

11    quite some time and they know it --

12              THE COURT:  It's not a question of what you've

13    been discussing with them, it's a question of what the proof

14    of claim says, so.

15              MR. ROLL:  And if they believe it's not fairly set

16    forth, if the Court believes it's not fairly set forth we

17    would respectfully ask for the opportunity to move to amend

18    to make that claim, because we believe sincerely it's been

19    clear to them all along, and if need be to make it clearer

20    we'll do it in writing.

21              THE COURT:  Okay.

22              MR. ROLL:  Thank you, Your Honor.

23              THE COURT:  Thank you.

24              So you can probably tell that I spent a lot of

25

1      time on this before today, but I very much wanted to hear

2      from you, because the issues are many, and here's the thing,

3      you're entitled to, and I think this probably merits a full-

4      blown written opinion.  When that would occur, just look

5      around.  Starting trial in another Lehman matter on

6      April 3rd, 150 million at issue.  As soon as that's over,

7      starting trial on another Lehman matter in which the amount

8      at issue is $2 billion.  That promises to take me into 2018,

9      and that's just Lehman.  I have a full docket otherwise.  So

10     I don't want to deprive you of what you're entitled to, but

11     I'd also like to help you progress beyond today.

12             So I'm going to give you my bullet points, what my

13     ruling -- what the decision will look like.  Beyond that, I

14     can't give you a date when I would issue a formal memorandum

15     opinion, but perhaps this could provide the bases for you to

16     have further discussions and figure out whether you want to

17     wait, you know, exercise appeal rights, etcetera, et cetera.

18             If there were 48 hours in the day or if there were

19     two of me I could move more quickly, but it just -- it is

20     what it is.  So it was a good happenstance that I was able

21     to even fit you in today for this hearing.

22             So the bottom line is that the Maverick claims

23     should be disallowed and expunged.  The claims have been

24     satisfied in full by LBIE.  Although claims are typically

25

1    valued under the Code as of the petition date, here Section

2    562(a) is applicable and provides an alternative date for

3    valuing claims that arise from the rejection, liquidation,

4    termination, or acceleration of certain specified contracts,

5    including "master netting agreements," in quotes, and

6    "securities contracts," in quotes.

7              So the prime brokerage agreements are securities

8    contracts and master netting agreements within the meaning

9    of Section 562(a).

10             Maverick's arguments that its claims are not based

11   on the securities contract aspects of the prime brokerage

12   documents and thus are not subject to 562 fails because the

13   argument is contrary not only to the courts' expansive

14   reading of the term "securities contracts," and more

15   specifically the second circuit's holding in the Madoff case

16   finding that brokerage account agreements similar to those

17   here are in fact securities contracts, and that's explored

18   in some detail at pages 5 to 7 of Lehman's reply;Maverick's

19   severability argument, as I'll call it, ignores the fact

20   that the prime brokerage guarantee is a separate securities

21   agreement under the Code, and regardless of whether certain

22   obligations arising under the prime brokerage agreements are

23   severable, which I don't believe that they are, Section

24   562(a) applies here because the claims are based upon a

25

1    guarantee which qualifies as "a security agreement or other

2    arrangement or other credit enhancement related to a

3    securities contract or a master netting agreement."  And

4    once again, thedefinitions of these important terms are

5    spelled out in Lehman's reply on page 7.

6             So the operative date for valuing the claims under

7    562(a) is the settlement date, which is March 30, 2012, the

8    date of the Maveric-LBIE settlement.

9             Each of the prime brokerage agreements, including

10   the guarantee, terminated on the settlement date.  Pursuant

11   to the terms of the settlement agreement all quote/unquote

12   obligations under the prime brokerage documents were -- to

13   use the words of that agreement -- no longer in existence

14   from and after the settlement date.  Therefore, Maverick's

15   reliance on the petition date for the valuation of its

16   claims is simply not correct.  The prime brokerage

17   agreements were terminated in all respects, functionally,

18   not only as to LBIE.

19            Moreover, 562(a) would apply even if the guarantee

20   had not been terminated, because nothing in 562(a) requires

21   that a guarantee be terminated for such section to apply.

22   562 governs the measurement of "damages," quote/unquote, in

23   connection with, among other things, the termination of

24   securities contracts and master netting agreements.

25

1            As Lehman correctly points out, Maverick's reading

2       of Section 562(a) would limit its applicability and in

3       effect create a two-tier system of measuring damages.

4            First, primary claims in accordance with Section

5       562(a) as of the date of contract rejection, termination,

6       acceleration, or liquidation; and two, related guarantee

7       claims measured as of a different date.

8            I believe that this is incompatible with the

9       policy behind such guarantees, which are given in essence to

10      assure that the liability of the principal obligator, the

11      primary obligor, is satisfied, which is what occurred here.

12           Value of the Maverick guarantee claims are covered

13      by Section 562(a), they were valued at one hundred and one

14      point nine million dollars as of the settlement date, which

15      was the date that Maverick was made whole by LBIE.

16           Maverick cites Ivanhoe, but Ivanhoe and its

17      progeny merely stand for the proposition that a creditor

18      cannot recover more than the value of its claims or damages,

19      and Ivanhoe does not enable Maverick to assert additional

20      guarantee claim rights against LBHI.

21           Accordingly, I believe that Maverick cannot

22      establish a guarantee claim against LBHI because it cannot

23      establish any unsatisfied obligations of its primary

24      obligor, LBIE.

25

1          Maverick recovered the full value of its long

2     positions as of the settlement date.  It would be contrary

3     to commercial practice and commercial reality for a

4     brokerage customer to be able to recover more from its

5     primary obligor and guarantor in bankruptcy than it would

6     outside of bankruptcy where a customer's economic exposure

7     is measured on a net basis with the value of its long

8     positions offset against its short positions.

9          In addition, for reasons that I will elaborate

10    further in a more complete written opinion, I do believe

11    that Judge Glenn was correct in MF Global, I do believe that

12    under the principles that he articulated and the terms of

13    the documents here that the exculpation provisions would

14    themselves preclude the allowance of, in essence, what is

15    the diminution claim being asserted by the Maverick

16    entities.

17          Finally, I do not believe that Maverick should be

18    allowed to amend its claims in any respects.  Maverick filed

19    guarantee claims, they are clear on its face and I don't

20    believe that they have -- that it would be appropriate to

21    allow them the opportunity to expand upon the theories of

22    liability or the amount or nature of damages which had been

23    asserted in the guarantee claims.

24          So that's kind of the short form of what I would

25

1    write.  I suppose I could give you the option of entering an

2    order and attaching the transcript, or just ask you to wait,

3    or a third option behind door number 3 would be to continue

4    to talk to one another and see if you can come to a

5    consensual resolution.

6           So it's not that I don't believe that this --

7    every claimant's claim is very important, but I just have a

8    reality of what I'm dealing with in terms of when I'd be

9    able to turn something out that I would be willing to sign

10   as a memorandum opinion.

11          MR. ROLL:  We understand that, Your Honor.  I --

12   respectfully I think we would choose a combination of one

13   and three, three being we'll continue to talk, and one being

14   not waiting.  I mean we understand Your Honor is busy.  If

15   Your Honor is inclined or is willing to enter an order with

16   the transcript attached that allows the right to -- affords

17   us the right and the opportunity to take this to the next

18   level we would appreciate that.

19          THE COURT: Well I think fairness you'd have -- I'd

20   want you to discuss that.

21          MR. ROLL:  Okay.

22          THE COURT:  Because I really don't want to be in

23   the position of depriving anyone of due process in any

24   respect and what they're entitled to, and I don't like -- I

25

1    don't want anyone to feel that I'm giving them short shrift.

2           MR. ROLL:  I understand that, Your Honor.  We're

3    sort of -- I'm trying to balance --

4           THE COURT:  Yeah, me too.

5           MR. ROLL:  -- the need to get moving on it --

6           THE COURT:  Me too.

7           MR. ROLL:  -- and again, I don't want to burden

8    the Court.  So we will continue to talk and if we may, would

9    the Court permit us to get back to Your Honor --

10           THE COURT:  Sure.

11           MR. ROLL:  -- with how to proceed?

12           THE COURT:  Absolutely.

13           MR. ROLL:  I will say this though, I've seen in

14    other instances how capable the Court is in terms of turning

15    things out quickly and fully under tough circumstances, so.

16           THE COURT:  Well but just to be clear, because you

17    know, among us who, you know, practice in this building a

18    lot people who know what 502(b)(6) is --

19           MR. ROLL:  You will never let me forget that.

20           THE COURT:  -- do not -- you're not -- no, you're

21    not allowed to give him a hard time when you go back to the

22    office.

23           MR. ROLL:  I'll give him a very good time, because

24    he did well.

25

1          THE COURT:  Good.  I do turn out things very

2     quickly, very voluminous things, but often those are

3     instances in which I have a real live living, breathing,

4     struggling to breath debtor --

5          MR. ROLL:  Understood.

6          THE COURT:  -- and that makes for greater urgency.

7     So I'm trying to not dig myself deeper here, but --

8          MR. ROLL:  That's fine, Your Honor.  We're happy

9     to accommodate that, we'll talk to our friends on the other

10    side and we'll see what we can do.

11         THE COURT:  Okay.

12         MR. ROLL: Thank you, Your Honor.

13         THE COURT:  All right.  Thank you very much.

14       (A chorus of thank you)

15         THE COURT:  Just together just email chambers and

16    just let us know which path you have elected to take, and

17    you need not call out the party who's dissenting.

18       (Laughter)

19         THE COURT:  Okay?  If there's a dissent.  If

20    there's agreement, great.  If there's a dissent just say,

21    you know, we're going to wait or whatever it is we're going

22    to do.

23         MR. ROLL:  Very well, Your Honor.

24         THE COURT:  All right.

25

Page 79

1          (A chorus of thank you)

2              THE COURT:   Thanks a lot.   Have a great weekend.

3          (Whereupon these proceedings were concluded at 11:36

4     AM)

5                              * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **I N D E X**

2                      RULINGS

3                                                    **PAGE**

4     Doc #53107 Plan Administrators Five Hundred      69

5    Nineteenth Omnibus Objection to Claims

6    (No Liability Claims)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 81

1                   C E R T I F I C A T I O N

2

3     We, Sheila Orms and Dawn South, certify that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     _____

7     Sheila Orms

8     Certified Electronic Transcriber

9

    _____

10

11    Dawn South

12    AAERT Certified Electronic Transcriber CET**D-408

13

14   Date:  March 27, 2017

15

16

17

18

19    Veritext Legal Solutions

20    330 Old Country Road

21    Suite 300

22    Mineola, NY 11501

23

24

25

**[& - administrators]**                                                           Page 1

| & |
| --- |
| **&**   3:4,13 35:14 |

| 0 |
| --- |
| **08-13555**   1:3 |

| 1 |
| --- |
| **1**   20:8 23:18,19 |
| **1.286**   24:24 |
| **1.3**   25:5 |
| **100**   44:24 |
| **10022**   3:16 |
| **101**   43:20 45:3,4 |
| 62:7 69:6 |
| **101.9**   9:10 30:20 |
| 44:1 47:15 |
| **101.9.**   42:2 |
| **10153**   3:7 |
| **10:03**   1:16 |
| **11**   8:15,21,22 |
| 40:19 |
| **11501**   81:22 |
| **118**   41:5,5 43:18 |
| 43:20 62:7 69:7 |
| **118.1**   30:19 |
| **12**   20:15 |
| **12.1d**   20:23 |
| **13**   21:12 27:4 |
| 31:21 |
| **13th**   15:19 |
| **14**   47:5 |
| **150**   71:6 |
| **16.2**   14:8 16:6 |
| 17:22 30:21 31:5 |
| 32:4,13 |
| **187**   25:1 |
| **187.3**   30:7,17 31:6 |

| 2 |
| --- |
| **2**   10:19,23 24:2,21 |
| 63:6,8 64:23 71:8 |
| **2.1**   51:7 |
| **2.1.a**   10:17 |
| **2.3**   52:7 |

**2002**   23:2,3
**2012**   15:19,22
41:7 73:7
**2017**   1:15 81:14
**2018**   71:8
**22**   8:15,23 64:24
**23**   9:1
**24**   1:15
**27**   20:9,11 81:14
**28**   65:8
**29**   65:17

| 3 |
| --- |
| **3**   20:6,11 25:4,12 |
| 25:13 27:5 31:17 |
| 76:3 |
| **30**   67:13,13 68:3 |
| 73:7 |
| **300**   81:21 |
| **30th**   15:22 |
| **32**   18:12 19:10,12 |
| **330**   81:20 |
| **3rd**   71:6 |

| 4 |
| --- |
| **4**   8:12,13,14,20,21 |
| 10:9,10,14 31:19 |
| 31:19,19 50:7 |
| 51:3,4,5 59:14 |
| **4.3**   16:22,22,24 |
| 17:4,9,15 29:17 |
| **408**   81:12 |
| **42**   20:14 |
| **44**   21:16 |
| **48**   71:18 |
| **4b**   18:15,19,22 |
| 19:8 |

| 5 |
| --- |
| **5**   22:18,19 23:14 |
| 35:3 62:13 63:6 |
| 72:18 |
| **50**   63:18 |
| **502**   26:9 38:12 |
| 40:11 42:20 43:9 |

45:11,12,20,22
48:13,14 49:15
77:18
**506**   48:10,11
**53107**   2:2 80:4
**562**   4:21 8:2,7
11:17 13:18,21
14:7,22,23,24
15:13 16:7,13,23
17:23 26:10 28:1
28:2,12 29:2,14
30:22 33:2,3,4,6
33:11,11,14,15
42:22,24 43:7
44:5,6 46:15
48:20 54:1 62:1,4
66:16 72:2,9,12
72:24 73:7,19,20
73:22 74:2,5,13
**599**   3:15

| 6 |
| --- |
| **6**   45:11,12,20,22 |
| 48:13,14 49:15 |
| 77:18 |
| **69**   80:4 |

| 7 |
| --- |
| **7**   72:18 73:5 |
| **741**   15:5 |
| **767**   3:6 |

| 8 |
| --- |
| **8**   64:12,23 |
| **80**   20:9,11,14 |
| 21:16 |

| 9 |
| --- |
| **9**   19:13 |
| **99**   35:23 |

| a |
| --- |
| **aaert**   81:12 |
| **ability**   46:11 |
| **able**   14:10 40:3,10 |
| 43:17 45:1 65:14 |

65:14 71:20 75:4
76:9
**absence**   39:10
**absolute**   61:18
**absolutely**   43:8
69:11 77:12
**acceleration**   72:4
74:6
**accept**   23:8,9
**accepting**   15:15
15:17 16:5
**accommodate**
78:9
**account**   12:6,7
14:4 17:3 23:22
25:15 41:14 67:2
67:3,10 72:16
**accurate**   81:4
**accusation**   25:19
**acknowledge**
23:12
**acquired**   7:13
**action**   44:8
**active**   20:24 21:1
**actual**   15:22 54:3
**adam**   3:9
**add**   7:3,4
**addition**   31:16
32:4 75:9
**additional**   26:12
34:13 35:2 74:19
**address**   27:21
47:13 62:21
**addressed**   63:24
**adequately**   62:21
63:3
**administration**
21:10 40:18 64:12
65:5,14
**administrator**
4:10 21:8
**administrators**
2:2 80:4

**admit** 26:23 28:7
65:12
**admitting** 24:20
**advanced** 5:10
**advantage** 22:7
**affect** 11:15 54:10
66:13
**affidavit** 15:19
**affiliates** 24:17
**afford** 35:20
**affords** 19:23
76:16
**agent** 24:16
**aggregate** 30:8
**aggregates** 24:24
**agree** 6:22 19:6
24:7 26:8 27:10
33:8 35:9 37:19
65:8
**agreeing** 15:16
**agreement** 9:12
10:9 12:5,7 15:1,2
15:4,8,9,10 18:8
18:13,20,23 19:1
19:15 20:8,10
21:20,22 22:4,5,6
22:12 24:3,4,5
28:4,21 34:8,18
36:16 41:9,19
43:2 44:8,9,15
49:2 50:16,22
51:4 52:10 53:1
54:6 65:8,17 67:6
70:3 72:21 73:1,3
73:11,13 78:20
**agreements** 10:18
10:20,21,21,22,23
10:24 12:18 13:24
18:5 21:21 24:3,8
26:14 28:14,16
32:9,11,12 41:11
51:10 52:22,23,24
65:1 66:19 67:10

72:5,7,8,16,22
73:9,17,24
**agrees** 17:7
**ahead** 53:23 56:19
**air** 46:12,13
**allow** 8:6 75:21
**allowance** 46:4
75:14
**allowed** 5:13 7:23
34:3,5,6,9 61:5
75:18 77:21
**allows** 54:20
76:16
**alternative** 72:2
**amend** 26:15,22
26:23 27:19 31:3
61:5,23 70:17
75:18
**amendments**
55:13
**american** 6:24
**amount** 16:21
17:5,19 22:21
24:24 25:5,14
26:4 29:17,18
34:5 40:21 41:1
42:4,17,20 45:2
46:4,6 47:17,23
63:13 71:7 75:22
**amounts** 21:15
25:5,15 30:9 32:8
**ample** 32:13
**analogous** 21:2,3
**analogy** 46:15
**answer** 5:16
**anybody** 44:17
**anyway** 23:13
**apart** 54:14
**appeal** 71:17
**appearing** 35:15
**apple** 57:1,2,16,18
**applicability** 74:2

**applicable** 46:12
46:13 72:2
**application** 4:21
23:7 38:12 39:9
41:22
**applied** 18:10
**applies** 8:7 15:13
28:1 33:2,11,15
46:10 72:24
**apply** 13:18 14:7
16:7,10,13,24
17:23 28:13 31:10
31:10 33:16 38:10
42:23,24 43:8
62:1 65:11 73:19
73:21
**appointment** 21:3
21:8
**appreciate** 56:6
64:4 67:24 68:2
76:18
**apprehends** 48:4
**approach** 29:22
33:14
**appropriate**
75:20
**appropriately**
34:10
**approximate** 9:12
**approximately**
9:10
**april** 71:6
**argue** 13:22 26:18
27:19 28:18 35:20
**argued** 5:20
**argues** 25:8
**arguing** 11:10
**argument** 9:22
11:13 13:12,19,22
14:14,16 27:22
28:2 29:2,14 42:8
42:18 43:11 44:4
44:21 48:5,8 49:5

64:16 69:13 72:13
72:19
**arguments** 4:16
12:2 17:23 28:12
28:12 35:8 72:10
**arising** 54:11
72:22
**arrangement** 73:2
**art** 58:21
**articulated** 37:4
75:12
**ascertainable**
55:1
**asked** 33:1 34:1
**asking** 7:17 30:21
38:5
**aspects** 72:11
**assert** 9:19 26:15
27:18 30:17 31:3
40:10 42:17 43:9
43:17 45:1 46:5
47:23 61:5 62:17
74:19
**asserted** 27:6,12
27:17 30:13 31:2
31:8 32:7 34:7
61:22 75:15,23
**asserting** 10:5
26:13 56:13
**assertion** 16:18
**asserts** 25:4
**assets** 24:12,15,16
24:23 26:5 28:8
**assume** 31:8 43:5
49:4 62:12
**assumes** 42:22
**assuming** 42:9,10
57:2
**assure** 74:10
**attached** 20:7
76:16
**attaching** 76:2

**attempt** 67:6
**attorneys** 3:5,14
**automatic** 21:17
  21:22 22:13
**avenue** 3:6,15
**avoidance** 25:13
**avoided** 54:20,21
**aware** 7:21 34:2
  34:24 35:3

**b**

**b** 1:18 45:11,12,20
  45:22 48:10,11,13
  48:14 49:15 51:22
  77:18
**back** 30:10 31:23
  36:18 37:17,19
  38:6 39:2,15
  43:22 49:14 50:4
  51:1 54:18 55:18
  57:10,12,18 58:7
  58:7 59:18 60:3
  66:5 67:8 77:9,21
**background** 5:4
  35:7
**bailee** 24:16
**balance** 77:3
**bankrupt** 38:18
**bankruptcy** 1:1
  1:11,20 23:20
  33:9 38:3,13,14
  38:15 39:4,8,13
  40:3,11 45:8 46:5
  46:8,14 47:11,19
  48:19,22 54:19
  56:15,22,24 58:5
  58:8,15 60:10,17
  75:5,6
**based** 23:17 53:6
  58:5 60:7,8 72:10
  72:24
**bases** 71:15
**basically** 15:20
  31:21,23 32:19

47:8
**basis** 16:22 17:9
  27:23 42:5 67:4
  75:7
**bat** 36:10
**beginning** 42:7
**begins** 9:4
**behalf** 24:17
  35:15 44:8
**believe** 4:20 69:3
  70:15,18 72:23
  74:8,21 75:10,11
  75:17,20 76:6
**believes** 32:13
  70:16
**bell** 19:7
**bench** 29:22
**benefits** 19:24
**benefitted** 12:20
**best** 20:3
**better** 21:21
**betting** 57:1
**beyond** 69:4
  71:11,13
**big** 38:3
**billion** 37:13 71:8
**bit** 6:15
**blown** 71:4
**book** 50:4
**books** 33:18
**bottom** 8:17 24:5
  68:21 71:22
**bowling** 1:12
**box** 23:16
**breach** 33:7 40:17
  40:18 48:3 55:9
  63:14
**breached** 40:23
**breath** 78:4
**breathing** 78:3
**brief** 18:6 20:7,7
  64:21 69:21

**briefly** 56:8
**bring** 10:8 45:18
**broad** 63:10 66:21
**broadly** 36:11
**broker** 12:3,10,13
  31:9 36:19 37:8
  37:16
**brokerage** 10:20
  12:4,5,6,6,18 15:1
  15:8 18:8,13,20
  18:23,24 20:8,10
  21:19 22:12 24:3
  24:7,9,10,10,19
  24:23 25:6,17
  28:5,13,18 29:9
  31:3 32:8,10
  36:16 49:1 52:21
  52:24 65:1 66:20
  72:7,11,16,20,22
  73:9,12,16 75:4
**brothers** 1:7 12:8
  12:9 19:19,23
  20:9 65:9,18
**building** 77:17
**bullet** 71:12
**burden** 77:7
**business** 15:20
**busy** 76:14
**buy** 67:8

**c**

**c** 1:19 3:3 4:4
  21:14 50:7 59:12
  81:1,1
**calculate** 21:15
  33:7
**call** 22:4 32:3 37:1
  67:1 72:19 78:17
**cancellation** 9:5,8
**cap** 45:13 46:10
**capable** 27:22
  77:14
**capped** 45:21

**capture** 58:10
**carefully** 22:23
  54:24
**case** 1:3 5:10
  16:24 18:1 21:1,4
  23:20 47:5 56:13
  57:21 59:6 64:15
  72:15
**cases** 29:11
**cash** 9:13,19
  12:16 28:8 41:6
  42:1 65:3 68:5
**catch** 43:19
**caused** 58:3,5
  65:9
**certain** 24:7,12
  34:7,19 54:7 72:4
  72:21
**certainly** 24:13
  25:21 29:14 49:2
  49:2 53:20 58:17
**certified** 81:8,12
**certify** 81:3
**cet** 81:12
**cetera** 51:24 52:1
  71:17
**challenging** 15:24
**chambers** 78:15
**chance** 34:4
**change** 26:4 42:3
**changes** 41:8
**chapman** 1:19
**chapter** 40:19
**characterization**
  6:23
**check** 23:16 34:4
**checked** 22:23
**choice** 39:1,5,8,10
**choose** 76:12
**chorus** 78:14 79:1
**chose** 16:20
**circuit** 66:21 67:2
  67:9

**circuit's** 72:15
**circumstance**
 38:5 39:1 48:2,17
**circumstances**
 34:8 35:6 38:19
 54:8 77:15
**cited** 18:7 47:3
 64:14
**cites** 74:16
**citing** 58:24
**claim** 10:4,5 12:24
 13:11 14:17 17:20
 22:17,24 23:6,17
 23:19,21,21 25:2
 25:4,4,14,14,20
 26:1,3,6,7,10
 27:19 30:4,7,9,16
 30:16 31:6,8 32:5
 33:5,5 34:5,6,7,9
 35:2,4 36:5 38:17
 40:10,13,21,24
 41:5 42:4,20
 43:17 45:2 47:18
 47:23 56:13 58:4
 58:5 60:7,8 61:4,6
 61:12,12,21,22,23
 62:2,6,11,13,16
 62:19,19,21,23,24
 63:1,11,17 67:16
 70:8,14,18 74:20
 74:22 75:15 76:7
**claimant** 17:14
**claimant's** 76:7
**claimants** 11:7
**claimed** 22:21
**claiming** 70:9
**claims** 2:3,3 5:12
 5:12,20,22,24 6:6
 6:6,11 7:9,11,13
 7:16,22 12:23,24
 13:2,2,3,4,6,11
 25:1 26:12,13,16
 26:19 27:5,12

30:13 31:2,3,10
 33:3 34:2,13,17
 34:19,22 44:18,23
 44:24 51:24 52:13
 55:12 61:4 64:24
 71:22,23,24 72:3
 72:10,24 73:6,16
 74:4,7,12,18
 75:18,19,23 80:5
 80:6
**clarification**
 57:23
**clause** 33:10
 58:10 59:3,9 65:8
**claw** 59:18 60:3
**clean** 64:3
**clear** 21:7,16,22
 21:24 52:11 59:8
 70:19 75:19 77:16
**clearer** 70:19
**clearly** 12:9 23:8
 24:1 29:2,3,8
 44:14,16 45:5
 65:15 66:13,20
**client** 34:4
**close** 21:12 69:8
 69:24
**closed** 68:11
**code** 15:5 33:9
 38:13 40:11 45:9
 46:5,9 48:20,22
 65:2 72:1,21
**collateral** 24:16
**colleague** 35:16
**collect** 32:16
**column** 9:4
**combination**
 76:12
**combine** 47:21
**come** 42:13 55:18
 76:4
**comes** 30:14
 61:24

**coming** 41:19
**commenced** 65:5
**commencement**
 37:7
**comment** 7:2
**commercial** 65:2
 75:3,3
**commitments**
 23:24
**comparing** 69:6
**complete** 35:4
 75:10
**completely** 27:11
 65:24 66:8
**complex** 4:15
**complexity** 4:14
**complicated** 6:16
**components** 30:17
**compromised**
 41:17
**concede** 49:6
**concedes** 9:9
**concept** 46:18
 54:15 61:3
**concepts** 54:23
**concluded** 79:3
**conclusion** 42:9
**conflict** 19:22
**connection** 9:11
 24:18 25:6 32:8
 44:13 47:19 49:9
 73:23
**consensual** 76:5
**consequence**
 60:10,16
**consequential**
 31:11,12,14 62:19
 62:22 65:19,20,21
 70:9
**consistent** 25:22
 29:11 38:22 39:9
 54:6

**constellation** 22:5
**constitutes** 20:20
 25:2 63:12
**contemplates** 60:2
**contend** 53:24
**contested** 68:19
 68:21
**contesting** 23:7
**continue** 32:16
 76:3,13 77:8
**continues** 24:6,15
**contract** 13:15
 15:7,10 18:12
 19:21 20:2,2
 28:15,24 40:16
 44:12 67:7,11
 69:15,20,23 72:11
 73:3 74:5
**contracts** 13:23
 13:23 14:22 19:18
 19:21 28:14 48:23
 66:18 72:4,6,8,14
 72:17 73:24
**contrary** 18:3,4
 72:13 75:2
**control** 21:21
**controlled** 24:12
**controlling** 11:17
**controls** 13:21
 33:10
**conveyance** 60:4
 60:9
**convince** 16:7
**corporate** 23:1,23
**corporation** 23:9
**correct** 7:8 16:15
 19:7 22:10 33:23
 33:24 37:14 39:17
 46:7 59:24 62:10
 73:16 75:11
**correctly** 18:9
 74:1

[counsel - delighted]                                                    Page 5

**counsel** 17:6
29:22 61:9 64:10
64:14 65:24
**counted** 47:16
**counterparty**
34:6
**country** 81:20
**countryman**
69:17
**couple** 32:24 36:7
**course** 14:13
20:17 23:15 27:19
35:22 36:9 68:12
**court** 1:1,11 4:5,8
4:11,13 5:2,4,6,9
6:4,18,22 7:2,7,19
7:24 8:3,12,14,20
8:22,24 9:6,24
10:2,5,12,15
11:12,19,22 12:12
12:15 13:3,5
14:16,24 15:6,12
16:1,4,12,17 17:1
18:14,17,21,23
19:2,6,8,12,14
20:4,12,16 21:18
22:2,18 25:12,18
25:23 26:2,15,20
27:1,21 29:23
30:1,5 31:18,20
32:1,22 33:17,22
34:15,21 35:1,5,7
35:11,13,18,19,22
36:1,4,7,10,14,18
36:21 37:1,6,10
37:12,15 38:1,7
38:10,14,17,21
39:3,7,15,18,20
39:23 40:1,7,13
42:9,13,16,22
43:4,15,24 44:20
45:7,11,13,16,20
45:24 46:8,18,23

47:7,12 48:5,13
48:18,22 49:1,7
49:12,17 50:6,8
50:10,14,17,19,23
51:2,5,9,12,16,18
52:4,16,20 53:9
53:11,14,19,21,23
54:16 55:10,16,19
55:22,24 56:2,10
56:17,19,23 57:4
57:7,11,13,17,20
57:23 58:3,6,11
58:14,16,23 59:13
59:15,20,23 60:5
60:14,18,24 61:13
61:15 62:5,9,11
62:23 63:2,5,9,16
63:21 64:1,3,6,14
64:14,19 66:23
67:18,20,22 68:1
68:7,16,18 69:2,6
69:12,16 70:12,16
70:21,23 76:19,22
77:4,6,8,9,10,12
77:14,16,20 78:1
78:6,11,13,15,19
78:24 79:2
**courts'** 72:13
**cover** 55:15
**covered** 21:8
65:15 74:12
**crazy** 17:17
**create** 74:3
**creating** 56:11
**credit** 68:4,8 73:2
**creditor** 74:17
**critical** 61:16
**critically** 59:2
**crude** 67:13
**crystal** 59:8
**cumulative** 19:14
**current** 26:4
30:14 64:22

**custodied** 65:3
**custodies** 37:12
**custody** 12:14,15
24:23 26:5 36:22
57:5
**customer** 67:4
75:4
**customer's** 75:6
**customers** 12:14
12:22

**d**

**d** 4:4 21:8,16 80:1
81:12
**damages** 15:14
16:6,10,16,17
17:22 18:1 27:8,8
27:13,14 29:7,12
29:15 31:4,11,12
31:14 32:1,2,17
32:17 33:3,6,7,11
40:17 41:17 44:6
45:14,21 46:6
48:2 55:8 62:19
62:22 65:19,21,21
66:17,19 70:10
73:22 74:3,18
75:22
**date** 9:16,17,18,20
9:21,23,24 13:17
13:17,22 14:7,8,9
14:10,11,12,14,19
14:20 15:22 16:19
17:9 24:22 26:9
26:10 28:8 29:1
29:18 30:19,20,23
33:7,12,12,12
34:19 37:5,21
40:12,14,17,18,19
40:20 41:1 42:5
42:11,17 43:11
47:3 48:2 55:9,9
63:15 71:14 72:1
72:2 73:6,7,8,10

73:14,15 74:5,7
74:14,15 75:2
81:14
**dawn** 3:2 81:3,11
**day** 15:22 41:6
56:24 57:6 71:18
**deal** 15:20 47:4
50:10
**dealer** 12:3 31:9
36:19 37:16
**dealing** 48:16,19
48:19,20 76:8
**debtor** 1:9 23:21
46:1,9 78:4
**debtor's** 23:20,22
**decide** 37:15
39:23
**decided** 36:15
**decision** 16:9,12
67:3 71:13
**declarations** 6:21
**decline** 60:18
**declined** 57:19
**decrease** 14:6
**deed** 51:23
**deeper** 78:7
**default** 18:10
20:17,18,20 21:6
21:9,11,13,23
**defaulting** 20:21
20:22 21:4,5,15
22:9
**defenses** 31:9
**defer** 5:18
**defined** 10:23
48:1 52:20,23,23
**defines** 24:8 52:22
**definition** 15:4
67:7
**degree** 4:14
**delay** 58:3
**delighted** 36:1

**delta** 62:6
**demand** 25:2 63:12
**demonstrative** 30:1,2
**deny** 32:14
**depending** 26:4
**deposits** 67:4
**deprive** 71:10
**depriving** 76:23
**derives** 40:10
**described** 67:9
**describing** 25:3
**detail** 72:18
**difference** 6:17 22:24 30:21
**different** 4:16 14:3 24:8 29:11 37:16 45:7 51:18 54:23 62:20 74:7
**dig** 78:7
**diminished** 38:9
**diminution** 14:9 15:14 16:6,10,16 16:17 17:22,24 29:7,12,15 37:2,3 75:15
**direct** 23:2,3,4,6,7 23:11 26:13,16,19 31:3 55:12 61:4,6 61:12,21 62:2,19 66:6
**directing** 65:24
**directly** 65:9
**disagree** 62:1
**disallowed** 5:13 71:23
**discharge** 47:9,10 47:14
**discharged** 47:10
**discovery** 11:5
**discuss** 76:20

**discussing** 61:17 70:10,13
**discussions** 71:16
**dismiss** 15:16
**dispositive** 5:11 64:15
**dispute** 28:4,20 29:4 41:6 43:8
**disputes** 28:1,3
**disputing** 28:9,10 29:4 34:12,16
**dissent** 78:19,20
**dissenting** 78:17
**distinction** 59:5 66:10
**distinguish** 67:6
**distributions** 43:19
**district** 1:2 47:3 47:12 64:14
**dixit** 42:19
**doc** 2:2 80:4
**docket** 71:9
**document** 53:7 55:2 61:19
**documents** 11:5 24:9,10,11,19,24 25:7,17 26:17 28:6,13,18 29:9 31:4 32:11 49:11 66:20 67:2,3 72:12 73:12 75:13
**doesn't** 16:10
**doing** 69:2
**dollars** 34:13 37:13,21,22 74:14
**door** 76:3
**doubt** 25:14
**drafted** 54:24
**draw** 46:15 55:2
**drop** 25:10
**due** 34:7 76:23

**e**

**e** 1:18,18 3:3,3 4:4 4:4 10:10 51:3,4,5 80:1 81:1
**earlier** 11:5
**easier** 18:17
**ecf** 20:9
**economic** 75:6
**ecro** 2:1
**effect** 21:20 52:17 53:12 66:2 74:3
**effective** 13:17
**effectively** 9:10
**effectiveness** 29:1
**effectuated** 53:5
**effectuates** 41:10
**either** 5:13 12:10 26:9 30:12 61:3
**elaborate** 75:9
**elected** 78:16
**electronic** 81:8,12
**elements** 8:6
**email** 78:15
**embedded** 26:19 61:4,12
**enable** 74:19
**encapsulate** 22:2
**ended** 68:13
**enforce** 64:10
**enforceable** 23:9 23:10,12
**engaged** 41:18
**english** 6:20 7:1 9:14
**enhanced** 23:15 23:20 38:17
**enhancement** 73:2
**enter** 76:15
**entered** 19:20 20:2 41:10 54:12
**entering** 76:1

**entire** 19:14 43:11
**entirely** 28:3
**entirety** 4:22
**entities** 3:14 24:6 24:22 25:16 32:5 35:15 36:14 52:12 56:22 61:5 65:4 70:4,6 75:16
**entitiesmaverick** 32:15
**entitled** 9:22 14:9 29:16 30:12 43:9 56:14 68:10,15 71:3,10 76:24
**entitlements** 27:7 27:13
**entity** 11:3,15 19:19 44:19 51:14 52:1
**equivalent** 57:10
**esq** 3:9,10,11,18 3:19
**essence** 74:9 75:14
**essentially** 7:12 11:13 43:18
**establish** 16:7 55:1 74:22,23
**estimate** 7:11
**estimated** 6:1
**estimation** 5:7,23 6:1,9,10 8:9 9:18 27:5 30:15 31:16 32:14 34:11,17
**et** 51:24,24 71:17
**etcetera** 71:17
**europe** 20:10
**event** 20:18,20 21:9,10,13,23,23 65:18
**events** 20:17,19
**everybody** 41:12

**everyone's** 68:2
**evidence** 43:23
**eviscerated** 59:9
**exactly** 7:21 9:17
  12:1 45:17 49:18
  50:19
**example** 14:17
  15:17 45:19 49:15
  56:8
**excerpts** 18:16
**exchange** 65:10
**exculpation** 12:21
  16:9,13 17:24
  39:9 55:11,15
  58:1 59:3 64:11
  75:13
**exculpatory** 29:9
  36:3
**execute** 57:14
**executory** 13:15
  28:24 69:15,19,23
**exercise** 41:1,2
  71:17
**exercises** 26:5
**exhibit** 20:8
**exist** 49:24 50:1
**existence** 52:21
  53:3,6,15,17,17
  54:2,13 66:4 70:2
  73:13
**expand** 75:21
**expansive** 72:13
**expects** 32:15
**expenses** 30:10,24
**expert** 6:20
**explored** 72:17
**exposure** 75:6
**expressly** 12:5
  30:8,9 59:17 60:1
**expunged** 71:23
**extent** 11:1 12:23
  13:10 15:8 19:18
  20:1 27:16,18

49:13,17
**extinguished**
  41:12 66:8
**eyes** 45:5

**f**

**f** 1:18 3:18 81:1
**face** 75:19
**fact** 11:23 12:4,10
  13:13 22:7,8 23:3
  23:8,10 28:2
  38:13 44:22 46:21
  53:16 54:9 58:5
  69:11 70:1 72:17
  72:19
**facts** 28:3 29:3
  41:15 43:16 68:19
  68:22 69:4
**factual** 28:9 31:14
**facty** 43:13,15
**fail** 3:10 5:18 7:5
  7:6,7,8,21 32:24
  33:23,24 34:16,22
  35:2,6,9
**fails** 69:17 72:12
**fair** 38:24 57:23
  64:7
**fairly** 70:15,16
**fairness** 76:19
**far** 6:14 22:19,22
**fault** 15:12
**favor** 19:22 64:15
**february** 15:18
**feel** 77:1
**fees** 27:7,11 30:10
  30:24 32:6,17
**fifth** 3:6
**fight** 44:10
**figure** 20:18 22:14
  71:16
**filed** 7:17 21:10
  23:19 26:16 40:19
  41:3 58:1,2 61:4
  64:12,22 65:13

75:18
**filing** 23:18 36:11
  38:3
**filings** 20:9
**final** 32:23 47:16
  51:23
**finally** 13:12
  33:13 67:12 75:17
**financial** 58:18,21
**find** 51:19
**finding** 72:16
**fine** 5:16 26:11
  35:12 61:9 78:8
**first** 5:1,6 8:8 9:15
  23:13,15 24:11,14
  41:15 50:22 52:18
  53:13 63:6 64:9
  66:1,3 69:20,22
  74:4
**fishman** 66:24
**fit** 71:21
**five** 2:2 8:16
  16:19,19 17:7
  80:4
**fix** 48:15
**fixed** 42:4,21
**fly** 46:14 48:11
**focus** 4:22 8:2
**folks** 19:6
**following** 20:19
  21:13 41:18
**footnote** 25:10,12
  25:13 27:4,5
  31:13,17,21 32:19
  58:22
**force** 52:17 53:12
  58:9 59:9 66:2
**foregoing** 81:3
**foreign** 47:11,19
**forget** 43:4 50:4
  77:19
**form** 23:16 75:24

**formal** 71:14
**forth** 43:22 70:16
  70:16
**four** 19:17
**frankly** 22:11
**fraudulent** 60:4,9
**friends** 78:9
**full** 13:24 23:22
  32:11 41:10 43:12
  43:20 44:4 45:1,3
  45:3,5 46:6 47:17
  47:23,24 48:1
  49:10 51:23 52:17
  53:7,12,18 54:4
  54:19,22 55:4
  59:21 60:11 66:2
  68:4,8,23 71:3,9
  71:24 75:1
**fully** 77:15
**fun** 35:24
**function** 17:12
**functionally**
  73:17
**functions** 12:4
**fund** 17:3 22:20
  23:15,20
**fundamental**
  33:13
**funds** 16:19,20
  17:8
**further** 71:16
  75:10
**future** 32:16
  34:20

**g**

**g** 4:4
**garrett** 3:10 7:3,5
  33:24
**general** 63:10
**generally** 32:7
**generous** 61:10
  64:8

**getting** 39:12
**give** 36:18 37:17
  39:2 43:19 51:2
  57:9,12 71:12,14
  76:1 77:21,23
**given** 5:9 74:9
**giving** 77:1
**glenn** 58:16 75:11
**global** 10:21 16:9
  18:2 24:4 29:11
  58:17 59:2 75:11
**gmslas** 52:24
**go** 9:2 18:19 19:10
  19:16 20:6,13
  21:12 24:2 26:12
  36:19 37:16,22
  39:15 43:1 44:21
  49:14 50:21 51:1
  51:20 53:23 56:19
  60:19 62:4 69:3
  77:21
**goes** 4:17 41:12
  52:2 57:2,24
**going** 4:8 6:8 8:1
  10:9 13:1 16:1
  17:4,4 22:22 36:5
  36:18 37:16 41:20
  41:23 43:14 44:10
  45:18 48:8 56:4
  60:18 64:6,17
  68:20 71:12 78:21
  78:21
**good** 4:7 18:12
  35:10,13 38:21,22
  40:3 47:12 55:21
  55:22 71:20 77:23
  78:1
**gotshal** 3:4 4:10
  33:24
**gotten** 29:20
  43:21 68:4,7,9
**governed** 6:16
  19:4 40:16

**government** 65:10
**governs** 23:5
  66:17 73:22
**granted** 4:22
**great** 62:15 78:20
  79:2
**greater** 29:18
  46:11 78:6
**green** 1:12
**gross** 25:14
**guarantee** 5:14,15
  5:20,24 6:6 10:2,6
  12:24 13:2,3,4,11
  15:2,4,9 16:15
  17:11,12 18:4
  22:21 23:2,3,4,4,6
  23:8,11,17,22
  24:2 25:3 28:15
  30:7,16 31:10
  33:3 34:9,10 37:2
  39:16,16,16,20
  40:2,4,5,9,24 41:2
  41:12 42:4,18
  43:3,6,7,18 44:4
  44:13 46:2,3,19
  46:19,19 47:9
  49:2,19,23,24
  50:1,3,5 51:1,17
  52:6,15,16,17,21
  53:11 54:9,23
  57:21 59:8,10,17
  59:18,23 60:3,11
  60:13 61:18,22
  62:2,23 63:12,14
  65:23 66:1,2,6,12
  66:13,14,16 67:16
  69:10 70:1,7
  72:20 73:1,10,19
  73:21 74:6,12,20
  74:22 75:19,23
**guaranteed** 5:22
  66:7

**guaranteeing**
  17:19
**guarantees** 7:10
  7:10 22:24 32:12
  74:9
**guarantor** 13:9
  33:16 37:10,23
  38:18 43:10 46:6
  46:9 47:18,24
  48:3 49:21 75:5
**guarantor's** 47:9
  54:10
**guess** 15:21 29:18

**h**

**half** 8:16 37:21,22
  58:22
**halfway** 9:3 63:7
**hand** 9:4 19:17
  29:21
**handed** 32:24
**handful** 6:3,12
**handle** 61:8
**handout** 29:21
**happen** 56:4,12
**happened** 41:16
  64:12
**happens** 47:19
**happenstance**
  71:20
**happy** 4:16 78:8
**hard** 77:21
**hear** 4:8 60:22
  63:24 71:1
**heard** 69:22
**hearing** 2:2 15:16
  16:2,3 27:23 29:5
  61:3 68:22 71:21
**held** 16:13 24:12
  24:16 29:10 70:6
**help** 20:4 71:11
**heretofore** 19:19
  20:2

**hereunder** 54:10
**herring** 68:6
**highland** 35:3
**hinting** 12:2
**hold** 8:20 53:19
  53:21 56:17 64:6
**holding** 40:22
  72:15
**holdings** 1:7
**home** 41:12
**hon** 1:19
**honor** 4:7,9,12,19
  4:23 5:20 7:5,8
  8:10 11:4 16:8
  17:10 18:7,13,15
  19:7 28:17 29:10
  29:13,14 33:19,20
  34:1 35:10,12,17
  37:4 38:3 39:12
  42:7 43:1 45:19
  48:4,7 50:9 51:6,8
  53:24 55:14,20,21
  56:7 59:7,22
  60:21 61:8 62:21
  63:4,11,24 64:2,4
  64:10,18 65:23
  67:12,21 69:9
  70:22 76:11,14,15
  77:2,9 78:8,12,23
**honor's** 38:24
  39:5
**hoping** 35:20
**horrible** 6:20,23
**hours** 71:18
**how's** 63:18
**huh** 30:5 36:17,24
  39:22 42:12 46:17
  47:7 49:16 50:6,8
  50:13 51:12 56:23
  57:11,13,17 62:8
  63:9
**hundred** 2:2 6:2,5
  6:8 74:13 80:4

**hypothetical** 37:4
37:6 38:24 39:5
39:15 48:9,17
56:12,16,20

**i**

**i.e.** 40:22
**ida** 66:24
**ignores** 72:19
**ignoring** 53:9
**iii** 3:18
**immediately**
21:14
**impact** 28:21
**implicate** 11:16
**important** 22:16
24:9 38:23 52:10
52:11 59:4 73:4
76:7
**importantly**
24:21 61:17
**inaccurate** 27:11
**inappropriate**
68:22
**incident** 5:7
**incidental** 65:19
**inclined** 76:15
**include** 61:6
**included** 59:3
**includes** 52:23
62:23
**including** 27:8,13
27:14 32:17 41:11
52:2 67:1 70:6,7
72:5 73:9
**incompatible** 74:8
**inconsistency**
19:21
**inconsistent** 19:20
20:3
**incremental** 31:4
**incurred** 54:11
**indebtedness** 9:8

**indicates** 54:7
**indirect** 65:19
**indirectly** 65:10
**indiscernible**
27:10
**indulging** 55:23
**inference** 55:2
**information** 5:11
5:17
**initial** 25:5,14
26:3
**insolvency** 20:24
21:1 41:22,24
47:2 55:6
**instance** 40:8 50:2
57:2
**instances** 77:14
78:3
**instituto** 47:5
**instruction** 57:15
**instrument** 65:22
**insurrections**
58:13
**intended** 58:10
**intention** 36:2
**interact** 12:22
**interest** 24:12,14
27:7,11 30:11,24
32:6,17
**interested** 61:2
**interesting** 60:15
**international**
20:10
**intervened** 39:4,8
39:13
**invested** 57:16
62:14
**investment** 27:8
27:14 32:2,18,20
61:7 62:12,24
63:17 65:20
**invitation** 60:18

**ipse** 42:19
**issue** 10:20 18:2
29:8 44:12 59:5
66:19 70:8 71:6,8
71:14
**issues** 8:4 28:9,16
29:5 43:13,15
71:2
**items** 27:9,15
32:18 55:17
**ivanhoe** 8:24
44:21 47:22 74:16
74:16,19

**j**

**j** 3:18
**judge** 1:20 58:16
75:11
**justification**
32:14

**k**

**karen** 2:1
**key** 8:6
**kick** 16:14 59:18
**kicks** 14:22,24
44:5 57:22
**kind** 9:15 22:11
22:11,13 33:4
44:7 67:12 75:24
**kneejerk** 69:21
**knew** 6:7 52:5,6
52:14
**knock** 16:14
**know** 4:13,20 5:9
5:15 6:14 8:9
15:13,23 16:19,20
17:3,5,7,10 18:11
22:10,14,19,23
25:9 29:19,20
31:12 32:21 39:6
39:13 40:22 42:8
43:2 44:3,10,11
44:20,21 45:21
46:14,19 47:18

48:6,7,10,14 54:1
60:7,8,23 64:21
66:15,15 67:15
68:23 69:21 70:8
70:11 71:17 77:17
77:17,18 78:16,21
**knows** 45:16

**l**

**l** 3:11,19
**l.l.p.** 3:4
**landlord** 45:24
**language** 22:22
25:18 28:20 29:8
29:9 50:10,11,15
52:8 53:3,7,9 54:6
59:3,5,6 66:21
**largely** 34:12
**late** 27:20
**laughter** 78:18
**lavine** 3:9
**law** 6:16,20 9:14
18:1 28:16 29:10
29:15 32:21 33:7
38:23 40:15,16,16
40:21 41:23,24
46:14 47:3,11,12
48:1,19 53:10
55:6,8 61:19
63:15 70:1
**laws** 59:4
**lbhi** 3:5 4:10 5:14
5:15 6:7 7:10,17
7:22,23 11:16
12:3,3,13,19,19
13:10,13,14,20
14:18 16:14 23:2
28:19,22 31:8
34:2,7,9 37:10
39:21 40:11,19
41:2,8 42:10,18
43:19 45:2 50:5
51:14 52:3,5,14
63:18 70:6,8

| | | | **m** |
|---|---|---|---|

74:20,22

**lbi**   5:15 12:11
18:23 19:1,2,3
22:4,5,12 58:18

**lbie**   4:23 5:14,14
5:20,22,24 6:2,5,7
6:8 7:9,10,22 9:9
9:11,11,13 10:10
10:11 11:2,7,14
11:23 12:10,11,19
13:7,7,8,15 14:10
16:22 17:8,15,16
17:16 19:5 20:10
21:10 22:7 23:24
24:11,12,16,17
28:5,19 30:10
34:3,6,23 36:15
36:23 37:17,18,19
40:11,11,21 44:2
44:16,24,24 45:3
50:18 51:13 52:1
52:12 55:5 58:1
64:12,23 65:2,4
65:13 67:14 68:10
71:24 73:8,18
74:15,24

**lbie's**   21:7 41:17
66:6,7

**lease**   45:13,21

**leave**   29:16,21
55:1

**left**   12:19 48:15
55:7

**legal**   5:16 8:4 27:7
28:3,12,21 29:5,8
32:6,17 35:8
81:19

**lehman**   1:7 12:8,9
12:17 19:19,23
20:3,9 21:21 24:6
24:22 25:16 36:11
44:19 56:21 65:9
65:18 70:4,6 71:5

71:7,9 74:1

**lehman's**   72:18
73:5

**lending**   10:21,22
24:4,5

**lesser**   29:18 46:4

**letter**   23:10 52:24

**level**   47:14 76:18

**levine**   3:11 4:9,9
4:12,19 5:3,5,8,18
6:5,19,24 7:3,15
8:1,4,13,15,21,23
9:1,7 10:1,3,7,13
10:16 11:18,21
12:1,13,16 13:4,6
14:21 15:3,7,13
16:3,5,16,18 17:2
18:15,19,22,24
19:3,10,13,16
20:6,13,17 21:19
22:10,19 25:13,21
25:24 26:3,18,21
27:3,24 29:24
30:2,6 31:19,21
32:2,23 33:19
41:20 42:7 48:6
51:7 64:4,7,17,20
66:24 67:19,24

**lexington**   3:15

**liabilities**   23:24
51:24

**liability**   2:3 16:14
41:11,17 54:10
74:10 75:22 80:6

**liable**   65:9,18

**libby**   7:20

**licks**   67:20

**lien**   24:11,14

**life**   36:12 54:18

**light**   4:14,15 9:5,7

**limit**   11:23 74:2

**limited**   23:15,21
52:2

**line**   68:21 71:22

**lines**   8:16 19:17

**liquidate**   26:6

**liquidation**   33:12
72:3 74:6

**liquidator**   21:3

**list**   10:20 32:11

**listed**   10:22

**litigated**   34:18,23
52:9

**little**   6:15 18:18
45:8

**live**   41:18,19,19
78:3

**living**   78:3

**llp**   3:13

**long**   14:4,6 17:11
18:3 23:14,20
30:18,18 57:1
75:1,7

**longer**   52:21 53:2
53:6,14 54:2 66:4
73:13

**look**   11:20 13:1
14:6 18:2 22:17
22:22 23:18 30:8
50:2,9 51:6 52:7
71:4,13

**looking**   7:18
20:15 23:13 37:5
63:19

**lose**   17:23 18:1

**loss**   62:24 65:9,13

**lost**   15:11 27:8
32:2,18,20 61:6
62:12 63:17 65:16
65:19

**lot**   68:4,23 70:24
77:18 79:2

**lucky**   18:11

**luring**   68:19

**m**   3:9

**madoff**   66:23
72:15

**main**   14:2,3

**majeure**   58:10
59:9

**majority**   6:11

**making**   60:7,8

**maligned**   46:13

**manges**   3:4

**march**   1:15 15:22
41:7 73:7 81:14

**margin**   19:18

**marginal**   10:21
24:4

**market**   65:11

**martin**   3:19 35:16
35:20 45:18 48:11
51:3 55:15,21,23
56:1,4,8,11,20,24
57:5,8,12,14,18
57:21 58:2,4,9,12
58:15,20,24 59:14
59:16,21,24 60:6
60:16,21 61:8,15
61:16 62:8,10,18
63:1,3,6,10,20,23
64:2

**master**   10:22
13:24 15:9,9
20:10 24:4 28:14
28:15 66:18 72:5
72:8 73:3,24

**matter**   1:5 5:16
11:13 14:13 29:10
29:15 44:22 46:16
69:11 70:1 71:5,7

**matters**   13:9
23:11 66:16

**maveric**   73:8

**maverick**   3:14
4:18,23 6:15 7:16

9:9,14 10:11 11:2
11:7,15 13:15
16:22 17:8,15,16
18:10 21:15 22:20
23:14,20,21 24:8
25:4,6,8,16 26:5
27:12 28:5 30:10
32:5,5,12,15
35:15 36:14 38:4
39:1 41:10,23
44:17,18 45:6
51:14 52:1,12
54:20 61:5 64:24
65:3 69:18 71:22
74:12,15,16,19,21
75:1,15,17,18
**maverick's** 8:8
14:2 24:18,23
27:5 33:14 72:10
73:14 74:1
**maverick's** 72:18
**maximum** 19:23
**mean** 11:17 12:1
14:23 17:5,12
28:23 32:21 42:19
43:15 46:5 51:21
53:8 55:3 60:6
63:19 67:12 68:7
68:14 70:5 76:14
**meaning** 72:8
**means** 8:10 47:17
47:22 49:19,24
53:6 59:1 60:9
63:17 66:3
**measure** 33:4
44:5
**measured** 33:11
40:17 48:2 55:8
74:7 75:7
**measurement**
73:22
**measuring** 74:3

**mediated** 5:21
**mediation** 17:6
35:3
**meets** 69:23
**memorandum**
71:14 76:10
**mention** 27:10
**mentioned** 23:6
**merely** 74:17
**merits** 71:3
**mf** 16:9 18:1
29:11 58:17 59:2
75:11
**million** 9:10 14:8
16:6,22,24 17:9
17:15 24:24 25:1
25:5 29:17 30:7
30:17,20 32:4
34:13 35:3 37:21
37:22 62:13 63:18
67:13,13 68:3
71:6 74:14
**mind** 62:20
**mineola** 81:22
**minus** 30:9 34:13
**minutes** 8:5
**missed** 47:4
**mistake** 18:6
**mlas** 53:1
**moment** 13:1
36:21 49:22
**monetary** 57:10
**money** 28:10
62:15
**morning** 35:10
55:21,22
**motion** 4:21 5:7
6:9,10 7:11 8:9
9:18 15:15 30:15
31:16,22 32:14
34:11
**move** 27:18 70:17
71:19

**moved** 15:23
**moving** 77:5
**multiple** 15:3

## n

**n** 3:3 4:4 80:1
81:1
**nature** 18:4,5
75:22
**necessarily** 46:14
65:7
**necessary** 61:24
**need** 8:11 16:7,7
26:23 62:2,3 69:3
70:19 77:5 78:17
**negotiation** 41:18
41:22
**negotiations**
43:23 47:15 68:12
68:24
**neither** 5:16 11:23
35:8
**net** 16:21,21 17:9
17:11,19 21:17
22:15 24:14,21
26:1 29:17 75:7
**netting** 13:24 15:9
15:10 18:7,8 20:5
21:22,24 22:7,13
25:9,10,11 28:14
28:16 29:6 30:19
60:22 61:1 72:5,8
73:3,24
**nettings** 66:18
**never** 29:20 65:21
77:19
**new** 1:2,13,13 3:7
3:16 32:21 33:6
40:15,16,16,21
48:1,19 53:10
55:8 61:19 63:14
65:2
**newport** 16:8
34:23

**nice** 46:1,2
**nine** 74:14
**nineteenth** 2:3
80:5
**non** 20:21 21:5,14
22:8 46:14
**normal** 30:13
38:4
**note** 32:24 35:17
38:23
**noted** 27:4
**notes** 59:17
**notice** 11:6,8 21:5
21:6,8 53:5
**notion** 7:19 17:10
43:12 44:12 46:11
61:6 62:16
**notwithstanding**
22:3,8
**nowadays** 46:13
**nub** 43:2 48:8
**number** 7:9,13
15:3 16:5,21 17:5
20:14 39:11 42:13
44:1 47:17 76:3
**numbered** 19:12
**numbers** 9:2
15:15 30:3 43:13
43:16,17
**ny** 3:7,16 81:22

## o

**o** 1:18 4:4 81:1
**objected** 6:9
**objection** 2:3 5:23
6:1,12 7:16,17 8:8
27:5 30:15,16
31:17,22 32:20
47:8 64:22 80:5
**obligated** 9:13
65:2
**obligation** 5:14,14
5:15 7:20,22 40:6
46:20 49:21 67:15

**obligations** 7:10
11:16,20,22 12:17
12:21 13:14 23:24
24:18 25:15 31:9
40:23 47:9,11
50:1,12,18 51:24
52:20,22,22 53:2
53:5,14,16,17
54:2,8,11,13,18
54:22 55:5 59:17
61:20 66:4,5,6,7,7
66:8 69:18 70:6
72:22 73:12 74:23
**obligator** 74:10
**obligee** 49:21
**obligor** 17:13
33:15 34:3 46:21
46:24 47:24 49:20
67:16 74:11,24
75:5
**obligor's** 47:11
**obviously** 12:23
17:13 31:7
**occur** 21:14 52:18
66:3 71:4
**occurred** 40:18
63:14 74:11
**occurrence** 20:19
21:13
**occurs** 20:24
**offering** 31:14
**office** 77:22
**officer** 21:4
**offset** 9:12 75:8
**offsetting** 14:5
**okay** 4:8,11 5:9
7:24 10:15 18:15
19:6,8 20:4,13
21:18 22:18 24:13
25:8 27:1 29:24
30:3 31:20 32:23
34:15,21 36:21
37:15,18 45:10,12

45:15,20 46:2,8
51:5,20 53:23
54:16 55:10,16,19
58:23 59:13,15
60:5 61:1,13,15
62:11 63:21 64:9
67:18 68:16 69:2
69:5 70:21 76:21
78:11,19
**old** 81:20
**older** 56:3
**omnibus** 2:3 80:5
**once** 14:22 17:2
52:8 65:13 69:13
73:4
**ones** 6:14
**ongoing** 49:19,20
**open** 55:7 57:1
**opened** 12:7,7
56:9
**opening** 12:6 18:6
**operation** 47:1
48:20 55:6
**operative** 52:9
73:6
**opinion** 71:4,15
75:10 76:10
**opportunities**
27:8,14 32:3,18
32:20 61:7 62:12
62:24 63:18 65:16
65:20
**opportunity**
35:20 61:23 70:17
75:21 76:17
**opposed** 31:5
43:20
**opposition** 18:9
25:8 27:4 64:21
**option** 76:1,3
**order** 76:2,15
**orms** 3:2 81:3,7

**ought** 61:5
**outside** 56:14,22
56:24 75:6
**outstanding** 6:15
7:9,12 34:14,17
**overarching** 5:4
**overstated** 25:19
**owe** 25:16
**owed** 9:9 16:22
17:8,15,16,16
25:5 29:17 30:9
30:23 32:13 42:3
46:20,24 63:13
68:5
**owes** 13:8 22:14

**p**

**p** 3:3,3 4:4
**page** 8:15,21,22
10:14 19:9,13
20:9,11,13,14,14
20:23 21:16 23:15
23:16 24:6 31:1
31:19 47:5 58:22
63:6,7 64:12,23
66:1 73:5 80:3
**pages** 72:18
**paid** 34:10 43:12
44:4 45:3,3,4 53:7
53:18 54:19,22
55:4 60:10 67:13
67:13 68:3,4
**papers** 4:14 33:4
47:4 55:4 69:1
**paragraph** 8:15
8:16,23 9:1,2,3
18:12 19:10,12
23:18,19 24:1,2
24:21 25:4 27:4
31:23 51:6 52:7
59:11,11,21 60:1
64:24 65:17 66:1
**parent** 39:21

**parse** 48:11
**part** 10:17 21:14
23:16 36:15 44:3
51:22 52:9 62:7
68:21 69:18
**particular** 40:8
**parties** 4:18 7:12
7:14,17 34:12,17
43:23 49:10 50:5
52:14 60:11
**parties'** 18:5
**party** 12:20 20:19
20:20,21,21,22,24
21:4,5,15 22:9
44:7,9,11 78:17
**path** 60:19 78:16
**patience** 33:21
68:2
**pause** 53:22 56:18
**pay** 17:17 49:22
60:2
**payable** 32:8
**paying** 6:5 68:13
**payment** 23:23
25:3 41:10 45:5
47:24 48:1 54:7
61:19 63:12,13
**payments** 54:20
**payor** 6:2,4,4,8
45:1
**pb** 22:4,5,6 26:14
32:12 65:8,17
67:6
**penny** 56:14
**people** 41:19 45:6
77:18
**percent** 6:2,6,8
35:23 44:24
**perfectly** 61:9
**perform** 12:3
65:12,15
**period** 49:9 62:14

**permit** 77:9
**permitted** 61:23
**person** 56:2,3
**perspective** 21:7
**petition** 9:23,24
 14:6,9,12,14,20
 16:19 17:8 21:2
 24:22 26:9 29:18
 30:19 40:12,14
 42:5,11,17,21
 43:10 55:9 63:15
 72:1 73:15
**ph** 47:5
**picard** 66:24
**pick** 58:10
**plan** 2:2 4:10
 13:16,18 29:1
 69:12,13 80:4
**play** 61:24
**please** 4:5 51:2
 57:9 67:21
**plus** 34:13
**point** 5:10 9:15
 11:12 39:2 40:6,7
 41:4,4,6,7,8,16,18
 41:23 42:1 47:24
 48:16 53:4 54:2,3
 55:4 61:17,21
 64:17 65:22,24
 68:3,20 69:8,24
 70:10 74:14
**pointed** 18:9 51:8
 66:5
**points** 33:1 60:21
 63:23 71:12 74:1
**policy** 46:16 74:9
**position** 26:24
 54:5 57:1 61:11
 65:5 76:23
**positions** 14:4,5,5
 14:6 17:11 18:3
 30:18,18 41:21
 68:11 75:2,8,8

**positive** 17:5
**practice** 75:3
 77:17
**precisely** 69:2
**preclude** 17:24
 75:14
**precludes** 29:11
**precluding** 16:10
**preference** 59:19
 60:4,8,16
**presentation** 4:17
 21:2 56:1
**presented** 38:20
**preserved** 32:7
 70:3
**preserving** 61:10
**pretty** 38:21
 58:18
**previous** 22:6
**previously** 11:1
**primary** 7:10,19
 7:22 13:6 17:13
 33:15 34:2 46:21
 46:24 47:10 49:20
 49:21 67:16 74:4
 74:11,23 75:5
**prime** 10:20 12:4
 12:4,5,6,9,18 15:1
 15:8 18:7,12,20
 18:23,24 20:8,10
 21:19 22:12 24:3
 24:7,9,9,10,18,23
 25:6,17 28:5,13
 28:18 29:8 31:3
 32:8,10 36:16
 37:8 49:1 52:21
 52:24 65:1 66:20
 72:7,11,20,22
 73:9,12,16
**principal** 74:10
**principles** 75:12
**printed** 18:16

**prior** 11:8,11
 14:18 20:2,8
 21:20,21 28:6
 54:12 66:14
**priority** 24:11,14
**probably** 55:17
 70:24 71:3
**problem** 8:21
 33:13 55:24
**proceed** 70:4,5
 77:11
**proceeding** 21:3
 47:20 54:20
**proceedings** 65:6
 79:3 81:4
**process** 76:23
**progeny** 74:17
**program** 35:17
**progress** 71:11
**promise** 67:23
**promises** 71:8
**proof** 12:24 23:19
 25:2 27:19 30:9
 61:12 62:21 63:1
 63:11 70:8,13
**proofs** 22:17,24
 23:6 30:4 31:6,8
 32:5 36:5
**proposed** 56:20
**proposition** 44:23
 74:17
**protect** 25:19
**protections** 19:24
**provide** 22:13
 24:7 49:11 71:15
**provided** 17:6
**providence** 16:9
 34:24
**provides** 10:18
 12:5 18:8 20:23
 21:14 23:19 32:13
 52:11 72:2

**provision** 18:7
 19:22 20:3,5
 21:20 33:9 51:18
 54:17 59:16 64:11
 69:12 70:3
**provisions** 12:21
 16:10 17:24 19:18
 20:1 22:6 36:3
 75:13
**public** 17:7
**pull** 13:2
**purely** 30:6
**purpose** 9:17 10:2
 10:5
**purposes** 15:15,17
 29:5 49:4
**pursuant** 12:7
 13:16 23:22 24:23
 45:22 46:4 73:10
**pursue** 32:7,16
 44:18
**put** 6:20 42:7
 46:12

## q

**qualifies** 69:19
 73:1
**quarters** 9:3
**question** 5:4 13:8
 28:21 29:6,16
 34:1 38:24 42:6
 45:8 56:9 70:12
 70:13
**questioned** 64:10
**questions** 36:8
**quick** 64:5
**quicker** 67:23
**quickly** 71:19
 77:15 78:2
**quintessential**
 65:20
**quite** 41:13 44:15
 70:11

[quote - right]                                                            Page 14

**quote**  41:20 73:11
  73:22
**quoted**  41:20
**quotes**  46:12,13
  72:5,6

**r**

**r**  1:18 3:3 4:4 81:1
**raised**  56:16
**raising**  28:12
**randall**  3:19
  35:16
**reaction**  69:21
**read**  4:13 5:1 8:11
  9:2 31:13,15
  59:24 64:24
**readily**  55:1
**reading**  8:16 27:3
  64:21 67:2 72:14
  74:1
**reads**  24:22
**real**  41:18,19,19
  56:12 78:3
**reality**  75:3 76:8
**realize**  39:7
**really**  12:2 39:12
  46:1 48:8 63:2
  65:11 66:11 68:18
  70:9 76:22
**reason**  14:17
  15:21 33:2 47:10
  54:5,24 65:13
  70:2
**reasons**  15:3
  30:13 43:3 75:9
**rebut**  46:18
**received**  9:10
  30:20 34:5
**recites**  23:18 24:2
**record**  17:7 34:1
  35:4 81:4
**recover**  46:12
  47:22 74:18 75:4

**recoverable**  32:4
**recovered**  75:1
**recovery**  43:20
**red**  68:6
**reduction**  15:14
**refer**  23:23 31:23
  66:5
**reference**  58:13
  58:14 59:3
**referenced**  7:15
**referred**  50:5
**referring**  43:22
  44:2
**refers**  63:13
**reflecting**  9:12
**regardless**  47:18
  72:21
**reject**  45:21
**rejected**  13:16,18
  28:24 69:14
**rejection**  26:10
  33:12 45:13 72:3
  74:5
**rejects**  29:14
**relate**  55:4 66:14
**related**  34:23 73:2
  74:6
**relates**  43:12
**relation**  20:20
  66:18
**relationship**  19:4
  37:7 38:4 44:16
  49:14,18,20 56:21
  57:9
**release**  52:8
**released**  66:8
**releases**  52:8
**releasing**  52:12
**relevant**  10:18,23
  10:24 51:10
**reliance**  73:15
**relies**  28:2

**rely**  22:21 23:1,2
  29:3
**remain**  52:17
  53:11 54:8 66:2
**remaining**  13:14
  69:18
**remedies**  19:24
  26:6
**remember**  6:16
  6:18 11:6 26:13
**repeat**  31:22
**repeated**  32:19
**replaced**  23:4
**reply**  20:7,7 69:20
  72:18 73:5
**request**  65:4 67:4
**requested**  68:11
**require**  6:19 65:7
**required**  21:5,9
**requires**  44:6
  73:20
**reserve**  27:6
  63:19
**reserved**  27:12
  32:6
**reserves**  44:18
**resist**  68:18
**resisted**  68:12
**resolution**  23:1,9
  23:23 76:3
**resolve**  28:17 62:3
**resolved**  5:24
  19:22 27:23 29:3
**respect**  5:13 14:24
  15:2 20:5,19,24
  22:4 27:6,13
  32:14 34:17 44:9
  48:9 52:13 58:18
  60:4 61:22 69:10
  76:24
**respectfully**  48:16
  58:20 70:17 76:12

**respects**  73:17
  75:18
**response**  11:19
  13:19 30:15 31:22
  64:13
**responses**  31:7
**rest**  54:6
**restrictions**  65:10
**rests**  43:11
**result**  47:11,14,15
  55:5 63:13
**resulted**  44:1
**resulting**  59:19
**retain**  47:17
**return**  9:14 40:23
  65:3
**revert**  22:5
**richard**  3:11 4:9
**rick**  33:24
**rid**  6:11
**right**  4:20 5:8 6:5
  6:18 7:24 8:3 9:4
  9:16 10:1,3,7
  11:18 12:1,1 13:5
  13:20 15:3,7 16:4
  16:23 17:14 18:24
  19:16,17 22:3,10
  24:13 25:21,21
  26:2,17 29:7 30:1
  32:6,7 33:5 35:5
  35:19 36:10,14,20
  37:1,9,11,16,18
  37:22 39:3,19,24
  41:2,13 42:15
  43:1 44:18 45:13
  45:20,23,24 46:6
  46:22 48:21,24
  49:13,14 50:19
  52:19 53:13 57:7
  57:20,24,24 58:2
  61:10 64:1 67:20
  70:4,5 76:16,17
  78:13,24

**rights** 19:14,23
  27:6,13 32:16
  51:24 71:17 74:20
**risk** 38:5 57:2,7
**road** 81:20
**roll** 3:18 35:10,12
  35:14,14,19,23
  36:2,5,9,13,17,20
  36:24 37:3,9,11
  37:14,24 38:2,8
  38:12,16,19,22
  39:4,11,17,19,22
  39:24 40:5,8,15
  42:12,15,20,24
  43:6,22 45:4,10
  45:12,15,23 46:7
  46:17,22 47:1,8
  48:14,21,24 49:4
  49:8,16,23 50:7,9
  50:13,15,18,21,24
  51:4,6,10,13,17
  51:20 52:5,19
  53:2,10,13,16,20
  53:23,24 54:17
  55:14,17,20 56:6
  56:9 61:7,18 62:1
  67:20,21,23 68:2
  68:9,17,20 69:5,8
  69:15,17 70:15,22
  76:11,21 77:2,5,7
  77:11,13,19,23
  78:5,8,12,23
**roman** 63:8
**room** 13:21,22
**round** 5:6
**rule** 8:24 29:14
**rules** 47:2
**ruling** 71:13
**rulings** 16:8 65:7
  65:11 80:2
**running** 66:19

**s**

**s** 3:3 4:4
**s&p** 23:10
**sample** 30:9
**satisfied** 71:24
  74:11
**saw** 11:4 30:8
  69:20
**saying** 22:3 31:2
  48:6
**says** 19:2 31:13
  32:10 33:7,10
  37:18,19 40:15,16
  44:15 45:20 47:8
  50:11,11 51:10,22
  52:16 53:11 54:18
  55:8 59:10 60:19
  64:15 65:17 66:12
  70:14
**scc** 1:3
**scenarios** 48:10
**schedule** 10:19,23
**seat** 4:5
**second** 8:16 10:7
  19:16 23:19 31:1
  44:3 51:22 53:19
  53:21 56:17 66:21
  67:2,9 72:15
**secondly** 12:23
**section** 4:21 13:21
  15:5 20:15 21:12
  21:12,16 33:2
  40:10 43:9 72:1,9
  72:23 73:21 74:2
  74:4,13
**securities** 9:13,20
  10:22 12:16 15:6
  15:7,10 24:4 28:8
  28:14,15 36:22
  37:12 38:6 40:22
  41:5 42:1,16
  44:11 47:2 48:23
  57:9 58:6,7 65:3

  66:18 67:7,8,11
  68:5 72:6,7,11,14
  72:17,20 73:3,24
**security** 13:23
  24:11,14 73:1
**see** 30:6 45:16
  46:3 60:1 61:13
  76:4 78:10
**seek** 30:7 31:4
  32:6
**seeking** 26:15
  46:21,23
**seen** 77:13
**sell** 67:8
**sense** 17:12,21
  21:10 48:4 62:17
  67:17
**sentence** 9:4
  19:17 24:21 54:9
  63:7 65:17 66:12
  66:14
**separate** 19:4
  54:14,14 72:20
**series** 61:20
**serve** 11:8
**served** 11:6
**serves** 21:5
**services** 24:7
**set** 42:6 43:13
  68:21 70:15,16
**sets** 33:18 41:15
  43:3
**settled** 6:7
**settlement** 4:24
  9:11,16,17,20,20
  10:8,10,11,16,19
  13:15,17 14:8,10
  14:11,19 15:18,22
  28:4,20 30:20,23
  41:9 44:2,14,15
  49:9 50:16,22
  51:4,23 52:10
  55:6 66:9 70:3

  73:7,8,10,11,14
  74:14 75:2
**severability** 72:19
**severable** 72:23
**shearman** 3:13
  35:14
**sheer** 4:16
**sheila** 3:2 81:3,7
**shelley** 1:19
**short** 14:5,5 75:8
  75:24 77:1
**show** 29:20 44:22
  50:20,20,21
**shrift** 77:1
**side** 12:17 18:12
  78:10
**sides** 6:20
**sign** 76:9
**similar** 5:12,12
  61:22 72:16
**simply** 31:13
  42:10 73:16
**sincerely** 70:18
**single** 19:21
**sipa** 58:18
**sit** 11:21 33:20
**situation** 38:11
**six** 16:19 17:8
  22:24 25:1
**sixth** 16:20 17:3
**smart** 48:10
**smarter** 45:16
**solutions** 81:19
**soon** 71:6
**sooner** 58:7,7
**sorry** 8:20 9:1
  15:11,12 31:19
  33:23 37:6 48:14
  53:23 63:7
**sort** 77:3
**sought** 21:10 69:7
**sounds** 24:13,20
  25:9,10

| | | | |
|---|---|---|---|
| **south** 3:2 81:3,11 | **straightforward** 65:1 | **suspension** 58:17 58:21,24 65:11 | 42:8 43:3,4,5,7,7 44:4,13 49:8,9,13 |
| **southern** 1:2 47:3 | **structurally** 5:12 | **switching** 62:18 | 50:14 51:13 62:2 |
| **speaking** 36:12 | **struggling** 78:4 | **system** 33:17 74:3 | 66:16 69:11 70:1 |
| **speaks** 61:17 | **stuck** 14:19 | **t** | 73:10,17,20,21 |
| **special** 65:18 | **stuff** 36:18 37:17 | **t** 81:1,1 | **terminates** 49:14 |
| **specific** 44:7,7,8 | 37:18,20,20,21 | **tab** 8:12,13,14,20 | 49:18 |
| 44:11 65:22 | 38:21,22 39:2 | 8:21 10:9,10,10 | **terminating** 44:16 |
| **specifically** 44:17 | 40:1 62:15 | 18:14,15 19:8 | 55:5 |
| 58:16 67:1,9 | **subject** 7:11 59:18 | 20:6,11 22:18,19 | **termination** 10:18 |
| 72:15 | 60:3 72:12 | 23:14 31:18,19,19 | 11:5,7,8,9,11 15:1 |
| **specified** 72:4 | **subsection** 51:22 | 50:4 51:2 59:11 | 20:15 26:9 28:6 |
| **spelled** 73:5 | **sufficiency** 16:1,3 | 59:14 63:6 64:23 | 28:11,22 33:12 |
| **spend** 32:22 | 27:23 43:11 68:22 | **tabs** 18:18 | 40:7,9 49:19 |
| **spent** 70:24 | **suggest** 33:4,14 | **tag** 56:1 | 50:11 53:3,4,5 |
| **spoke** 34:23 | **suggested** 26:21 | **take** 14:4 17:2,18 | 54:1,3,9,12,14,22 |
| **spring** 54:18 | **suggesting** 11:5 | 25:15 41:14 44:12 | 66:11,12,14 69:10 |
| **srm** 5:20 6:15,15 | **suite** 81:21 | 45:8 57:14 71:8 | 72:4 73:23 74:5 |
| 7:15 11:6 34:23 | **summary** 30:4 | 76:17 78:16 | **terms** 5:9 12:17 |
| **stage** 43:24 | **summer** 5:21 | **taken** 39:1 41:21 | 20:8 24:10 25:16 |
| **stand** 74:17 | **support** 14:16 | **takes** 57:24 | 31:1 34:11,22 |
| **standalone** 61:19 | 31:15 | **talk** 50:22 76:4,13 | 35:8 39:11 46:16 |
| 61:20 | **suppose** 36:11 | 77:8 78:9 | 64:11 65:16,23 |
| **standard** 22:11 | 76:1 | **talking** 24:1 50:15 | 66:10 73:4,11 |
| **stands** 44:23 | **supposed** 30:3 | **talks** 33:3,6 58:12 | 75:12 76:8 77:14 |
| **start** 4:23 8:6 | **supposedly** 15:18 | 58:12 | **test** 69:17,23 |
| **started** 38:3 48:6 | **supremacy** 33:10 | **teaches** 56:3 | **text** 23:18 |
| **starting** 71:5,7 | **sure** 5:3,5 7:1 | **team** 56:1 | **thank** 4:9,19 7:5 |
| **state** 63:14 | 12:12 13:1 17:13 | **technically** 12:20 | 7:24 33:20 35:9 |
| **stated** 63:3 | 20:14 33:22 35:18 | **tell** 11:4 29:20 | 55:20,23 64:2,3 |
| **statement** 8:8,18 | 36:4,7 37:18 | 46:2 57:8 70:24 | 67:19 70:22,23 |
| 9:7 63:11,17 | 44:20 49:18 50:23 | **tells** 49:23 | 78:12,13,14 79:1 |
| 64:20 | 56:10 67:22 68:1 | **tenant** 46:1 | **thanks** 79:2 |
| **states** 1:1 | 77:10 | **term** 52:20,23,23 | **thedefinitions** |
| **status** 22:8 | **surely** 58:9 | 58:21 72:14 | 73:4 |
| **sterling** 3:13 | **surprise** 63:18 | **terminate** 37:17 | **theories** 75:21 |
| 35:14 | **surprised** 70:9 | 39:23 49:12 56:21 | **theory** 14:2,3 |
| **stock** 57:1,2,16,18 | **surprising** 22:12 | 57:9 | 30:14 41:8 62:13 |
| **stonehill** 16:8 | **surrounding** | **terminated** 11:2,2 | 62:21 |
| **stop** 16:12 49:10 | 43:13,16,16 | 11:14,22 12:18 | **thereof** 54:12 |
| 68:20 | **survived** 6:13 | 13:7,10,13,20,23 | **thereunder** 11:1 |
| **stopper** 44:22 | 28:23 | 13:24 14:22 28:6 | 51:11 |
| **story** 68:23 | | 28:19 36:15 42:6 | |

**there's** 7:13
**thing** 5:1 10:7
   32:23 33:24 41:15
   56:3 59:7 60:6
   61:2 64:9 71:2
**things** 12:20
   22:14 36:2 40:20
   41:14,15 44:7
   62:20 64:10 73:23
   77:15 78:1,2
**think** 6:17 8:6,9
   8:19 11:12 13:9
   13:12,21 14:13
   15:4,13 17:10,21
   17:21,23 18:1,3,4
   21:24 22:11,13,16
   23:5,10 26:8
   27:11,15,16,16,24
   28:1,2,10,16,19
   29:2,6,7,9,13
   30:10,12 33:13
   34:10 38:23 44:6
   44:22 46:2 47:5
   51:7 54:23 55:3
   56:4,11 58:4,11
   58:20,22 59:2,8
   60:24 62:6,11,18
   62:20,23 63:1
   65:23 66:15,17,20
   67:16 69:17,19,22
   71:3 76:12,19
**thinking** 51:16
**third** 49:6,6 59:11
   59:21 76:3
**thirds** 49:5 59:22
**thought** 8:5 15:11
   58:17 68:10
**three** 9:3 12:2
   17:22 23:1,2 24:3
   24:6 29:10 44:7
   76:13,13
**tier** 33:19 74:3

**tiered** 33:17
**time** 22:17 26:5
   32:22 36:21 38:8
   44:1 49:22 52:5
   62:14 64:8 67:24
   69:20 70:11 71:1
   77:21,23
**today** 23:11 41:8
   56:5 63:16 71:1
   71:11,21
**told** 57:16
**top** 30:3
**tornado** 58:19
**tornados** 58:12
**touch** 56:8
**tough** 77:15
**trade** 12:14 65:14
**trades** 67:9
**trading** 58:17,22
   59:1 65:12
**train** 15:11
**transactions**
   10:24 51:11 54:11
**transcribed** 3:2
**transcriber** 81:8
   81:12
**transcript** 76:2,16
   81:4
**tree** 16:12
**trial** 71:5,7
**trigger** 54:1
**triggered** 60:11
**true** 14:21 81:4
**trying** 53:4 68:18
   77:3 78:7
**turn** 10:13 20:23
   36:6 55:11,12,14
   76:9 78:1
**turning** 77:14
**two** 5:19 7:12,14
   7:15,16 17:22
   33:17,17,19 34:12
   34:13 41:14,15

43:3 48:22 49:5,5
   54:23 56:3 57:14
   57:15 59:22 62:20
   71:19 74:3,6
**typical** 22:14
**typically** 71:24

## u

**u.s.** 1:11,20
**uh** 30:5 36:17,24
   39:22 42:12 46:17
   47:7 49:16 50:6,8
   50:13 51:12 56:23
   57:11,13,17 62:8
   63:9
**uk** 6:16 41:22,24
   47:1 55:6
**unambiguously**
   60:2,9,15
**unconditional**
   61:18
**underlying** 28:3
   49:13,17
**understand** 9:22
   11:10 14:2,15
   25:23 26:18,23
   31:5 40:2 62:6
   66:11 76:11,14
   77:2
**understanding**
   5:19 25:24
**understood** 40:15
   66:13 78:5
**undertaken** 44:8
**undisputed** 69:4
**unfixed** 48:15
**uniform** 65:2
**unique** 34:7 35:6
**united** 1:1
**unliquidated**
   30:11,11 31:1
   40:13
**unquestionably**
   45:1

**unquote** 73:11,22
**unsatisfied** 74:23
**urgency** 78:6
**use** 9:23,24 18:18
   73:13
**usual** 4:13

## v

**valuation** 9:18,21
   14:19 73:15
**value** 9:11,12,19
   14:1,3,7,9,11,11
   14:14 15:14,17,18
   26:4 28:7 30:18
   30:20,22 37:2,4
   37:20,20 38:8
   40:9 41:5,24 42:1
   42:16 43:10 47:2
   57:19 74:12,18
   75:1,7
**valued** 14:18 72:1
   74:13
**valuing** 10:3,3
   72:3 73:6
**various** 27:6 31:7
**vast** 6:11
**vein** 24:15
**veritext** 81:19
**versus** 66:24
**virtually** 32:21
**volume** 4:16
**voluminous** 78:2

## w

**wait** 71:17 76:2
   78:21
**waiting** 76:14
**walk** 45:8
**walking** 8:10
**want** 7:3 8:11
   27:18 31:2 36:7
   37:19,20 55:10,11
   55:12 57:8,16
   64:24 67:8 68:16
   71:10,16 76:20,22

| | x |
|---|---|
| 77:1,7 | **x**  1:4,10 80:1 |

**wanted**  6:11 10:8
  35:4 50:20 56:21
  64:9 69:24 71:1

**way**  5:11 9:3 35:7
  39:2 46:9,15 55:3
  59:22 63:21,22

**ways**  36:15

**we've**  46:3 55:3
  57:15

**weekend**  79:2

**weil**  3:4 4:10
  33:24

**went**  36:12 40:18
  56:16 68:24

**william**  3:18
  35:14

**willing**  76:9,15

**win**  8:6

**windfall**  17:18,20

**winding**  21:2

**withdrawals**  67:5

**withdrawn**  5:23
  6:10 34:19

**words**  11:14,23
  12:6 24:6 73:13

**work**  35:23 46:9
  63:21,22

**works**  46:15

**world**  56:13 58:21

**worst**  16:24

**worth**  36:22 40:1

**would've**  38:8

**wrap**  29:23

**write**  76:1

**writing**  70:20

**written**  6:24 71:4
  75:10

**wrong**  16:11
  26:22 27:17,24
  58:20

**y**

**yeah**  7:5 19:3
  50:17 55:14 64:4
  64:19 69:16 77:4

**years**  57:14,15

**yep**  51:9

**york**  1:2,13,13 3:7
  3:16 32:21 33:6
  40:15,16,16,21
  48:1,19 53:10
  55:8 61:19 63:14
  65:2

**younger**  56:2

**z**

**zero**  6:1