

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC.

8

9              Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12

13                        United States Bankruptcy Court

14                        One Bowling Green

15                        New York, New York

16                        December 8, 2016

17                        11:34 AM

18

19

20

21

22   B E F O R E:

23   HON. SHELLEY C. CHAPMAN

24   U.S. BANKRUPTCY JUDGE

25   ECRO:  KAREN

 1    HEARING RE #53946:  Motion for Sanctions filed by

 2    James N. Lawlor on behalf of Lehman Brothers Holdings Inc

 3

 4    HEARING RE #53970:  Letter to Judge Chapman, In re:

 5    Sanctions Filed by Stephen R. Williams

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan

Page 3

1   A P P E A R A N C E S :

2

3   WOLLMUTH MAHER & DEUTSCH LLP

4        Attorneys for Lehman Brothers

5        500 Fifth Avenue

6        New York, NY  10110

7   BY:   JOHN G. GIAMPOLO, ESQ.

8

9   VIA TELEPHONE

10        STEPHEN WILLIAMS -- Mortgage Experts

11        LOUIS COHAN, ESQ. -- Home Lenders of Georgia

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

<pre>
 1                    P R O C E E D I N G S

 2              THE COURT:  Is everyone here?

 3              MR. GIAMPOLO:  John Giampolo, Wollmuth Maher &

 4    Deutsch on behalf of the movant, Lehman Brothers Holdings, Inc.

 5    as plan administrator.

 6              THE COURT:  Very good.  All right.  Let me see who I

 7    have on the phone.  Mr. Williams, are you there?

 8              MR. WILLIAMS:  Yes, Your Honor.

 9              THE COURT:  Thank you.  All right.  Why don't you go

10    ahead?

11              MR. GIAMPOLO:  Thank you, Your Honor.  Your Honor,

12    the matters before you -- I filed a notice of agenda.

13              THE COURT:  Yes.

14              MR. GIAMPOLO:  Would you like an additional copy?

15              THE COURT:  Yes.  This is Lehman's motion with

16    respect to the ADR procedures order that we previously entered

17    a number of months ago, and it relates to the noncompliance

18    with the order by parties who are listed on exhibit C to the

19    motion.  Correct?

20              MR. GIAMPOLO:  Exhibit C and Exhibit D.

21              THE COURT:  Okay.

22              MR. GIAMPOLO:  Altogether there are 36 counterparties

23    that are subject to the motion.

24              THE COURT:  Right.

25              MR. GIAMPOLO:  Since we filed the motion, Your Honor,
</pre>

Page 5

1    ten of those counterparties have essentially agreed to start

2    complying, essentially have started to comply and so we've

3    adjourned the motion as to those ten.  I filed a motion to

4    adjourn.

5            THE COURT:  Okay.  And those are the parties who

6    filed something that was styled as nonresponsive or

7    nonobjection.

8            MR. GIAMPOLO:  A few of them did, Your Honor, file

9    that.  Altogether there's ten parties, counterparties, the 36

10   that the motion was adjourned as to and they're listed in the

11   notice of adjournment that was filed.  So what's before Your

12   Honor today is the motion as to the remaining 26.

13           THE COURT:  Okay.

14           MR. GIAMPOLO:  And what's also before Your Honor is

15   out of the 26 counterparties that the motion is proceeding

16   against today, only one of them filed an actual response or

17   objection to the motion.

18           THE COURT:  And that's Mr. Williams.

19           MR. GIAMPOLO:  Which is -- actually, that's Home

20   Lenders of Georgia.

21           THE COURT:  Yes.

22           MR. GIAMPOLO:  Filed their response, or objection to

23   the motion.

24           Mr. Williams on behalf of Mortgage Experts had filed

25   with the Court a letter, actually prior to this motion had

Page 6

1    filed a letter raising issues that completely overlap with this

2    motion, so I understand the Court had asked that Mr. Williams'

3    letter be heard in connection with this motion.

4            THE COURT:  Okay.  All right.  So why don't you

5    proceed first with respect to all of the other parties other

6    than Mr. Williams?  Let's do that first and then I'll hear from

7    Mr. Williams and also have you clarify the state of the issues

8    that Mr. Williams raises.

9            MR. GIAMPOLO:  Okay.  And before I do that, Your

10   Honor, just an additional point is, in connection with the

11   motion before Your Honor, we also filed the motion to seal

12   because a number of the exhibits were filed as redacted.

13           THE COURT:  So I'll grant that motion.

14           MR. GIAMPOLO:  Thank you, Your Honor.

15           As Your Honor knows, this motion arises from, I'll

16   refer to it as the sanctions motion.  This motion arises from

17   the ADR order that Your Honor entered back on July 18th, 2014.

18   We have, we've got a number of counterparties that had over

19   time, over several months, if not a year or two years, have

20   failed or refused to comply with the alternative dispute

21   resolution, the mediation process.

22           So even after they were repeatedly warned, even after

23   they were given warning letters which are also attached as

24   additional exhibits to this motion, they still have failed or

25   refuse to comply so we had no choice really but to bring this

Page 7

1    motion.

2         THE COURT:  And they simply haven't responded.  Or

3    have they responded and said, we're not going to comply?

4         MR. GIAMPOLO:  All of the counterparties listed on

5    exhibit C have not provided a response to the ADR notice, at

6    least some of them have communicated and said that, I believe

7    that they will not comply or they don't believe that they have

8    to.

9         All the parties, there's about seven of them, the

10   counterparties listed on exhibit D, as I've noted in the

11   commentaries, which are included on exhibit D, those parties,

12   those seven counterparties have answered the ADR notices, but

13   then failed or refuse to continue to mediation.

14        A number of them have continued to correspond with

15   us, particularly Home Lenders of Georgia.  Its counsel has

16   continued to correspond with us and did provide a response or

17   answer to its ADR notice, but it has simply repeatedly refused

18   to actually proceed to mediation.

19        And for that particular counterparty, as set forth in

20   my reply papers, Home Lenders of Georgia, actually had

21   submitted a letter back in January of this year to Your Honor

22   basically asking to be excused from compliance with the ADR

23   order.  There was a telephonic conference on April 29th of this

24   year during which Your Honor basically told Home Lenders of

25   Georgia, told its counsel that they are subject to the order,

Page 8

1    and they do need to proceed to mediation.

2            THE COURT:  Right.

3            MR. GIAMPOLO:  As set forth in the motion and my

4    reply papers, Home Lenders of Georgia, its counsel then

5    continued to refuse to proceed with mediation in accordance

6    with the ADR order.

7            At first, they communicated that it wanted Lehman to

8    pay its fees in connection with the mediation, which is not

9    what the order requires.  The order requires sharing fees so it

10   doesn't cost the estate.  It also asks or basically told us

11   that it would only appear by video conference, which the order

12   does not require, but out of good faith, Lehman agreed to do

13   that.  And in response we were told repeatedly as set forth in

14   my reply papers, that Home Lenders of Georgia, its client,

15   would only show up for mediation to just say no, would not,

16   obviously would not show up in good faith by that statement,

17   would not listen to the mediator, would not listen to what had

18   to be said and participate in good faith in a mediation or

19   settlement conference.

20           Now, that's Home Lenders of Georgia that I'm giving

21   you so much detail on, because they're the one that --

22           THE COURT:  I understand.

23           MR. GIAMPOLO:  -- provided the objection.

24           The other parties, that are counterparties that are

25   included in exhibit D, they each have commentaries.

Page 9

1           THE COURT:  So this is, looks like Ms. Berman filed a

2      response.

3           MR. GIAMPOLO:  Correct.  It was Ms. Berman that filed

4      it.  It was Mr. Louis Cohan who had been corresponding.

5           THE COURT:  Yes.

6           MR. GIAMPOLO:  And who also appeared by pro hac

7      papers recently.

8           THE COURT:  Okay.  But neither of them -- Mr. Cohan,

9      you're on the phone?

10           MR. COHAN:  Yeah, Judge.  I was not admitted to the

11      Court.  Ms. Berman was, so she was kind to help me get the

12      response filed Monday after Thanksgiving.

13           THE COURT:  Okay.  Well --

14           MR. COHAN:  Since then, I'm admitted and I'm here.

15           THE COURT:  So Mr. Berman [sic], your position is

16      that you'll show up at the mediation to just say no?

17           MR. COHAN:  I'm Louis Cohan.

18           THE COURT:  Yes.

19           MR. COHAN:  Judge, not in bad faith.  We have

20      explained in very detailed fashion in response to the

21      contentions why there was no merit.  And what we have --

22           THE COURT:  Mr. Cohan, I have to tell you that

23      virtually every party, many many parties take the positon, have

24      taken the position, will take the position that there's no

25      merit to a claim being asserted against them.  And certainly

Page 10

1    that's true with respect to a large number of the mortgage

2    sellers who are involved in this proceeding.

3              The purpose of the ADR order is to set up a framework

4    in which the parties in good faith can have a discussion.  It's

5    not appropriate for you to once again try to convince me that

6    your position is meritorious and that Lehman's is not.  The

7    purpose of the ADR order is for you to attend the mediation,

8    and as I understand it, Lehman has made a concession to allow

9    that to take place by videoconference, and for you to have that

10   discussion with the mediator.  That's different from just

11   saying no.  Because --

12             MR. COHAN:  Judge, just want you to know -- sorry to

13   interrupt.  We had that telephone conference with you, we fully

14   intended to comply with your direction.  We exchanged

15   correspondence with Lehman Brothers.  The last correspondence

16   was my letter to Lehman Brothers saying that we would

17   participate in a video deposition, I'm sorry, mediation.  I did

18   indicate that I thought that our position would be no, we don't

19   think we owe any money, but that's not to say that we would

20   show up in bad faith.  You know, my client and I would have

21   been there.  We did ask that they pay the fees.  We never heard

22   back from them.

23             I also explained, and this is really why we're here

24   today, that I'm convinced my client is not one of the sellers

25   identified in the motion or the order.  I don't think it

Page 11

1    pertains to my client at all.  We never heard back from Lehman

2    at all until out of the blue we got this motion, I think it was

3    filed on November 18th, right before Thanksgiving.

4            So we have, as Mr. Giampolo indicated to the Court,

5    continued to correspond and be communicative.  We responded to

6    every communication from Lehman Brothers.  We've explained,

7    contrary to what the motion represents to the Court, we have

8    explained in detail our position and why, and I really am

9    convinced that the order does not apply to my client because

10   Lehman Brothers never purchased any mortgage from my client.

11   And I'd like to go through that in a little bit of detail when

12   the Court is ready to hear me on that.

13           THE COURT:  Mr. Cohan, the time to do that is at the

14   mediation where all of the time that you're spending having

15   this conversation now here today or otherwise with Lehman can

16   simply be had in the video mediation.

17           And to the extent that you believe that the events,

18   the chain leading to these loans being acquired by Lehman means

19   that you're not a seller as defined by the ADR motion, you can,

20   Lehman will explain to you again why they believe that you're

21   covered and you can explain to Lehman why you believe that

22   you're not.  But that will then have constituted the mediation.

23   So instead of continuing to talk about having it or not, simply

24   have it.  And then Lehman will make a determination as to what

25   to do next.

1              It may be that after that conversation, you see

2    things in a new light, it may be that you don't.  But that's

3    what a good faith mediation is.  Lehman may walk away from that

4    mediation and decide it's not going to pursue claims against

5    Home Lenders of Georgia or Lehman may decide that it is.  And

6    at that point, you know, Home Lenders of Georgia will have a

7    decision to make in terms of whether or not it wants to make a

8    settlement offer, engage in settlement discussions -- that's

9    the way it proceeds.

10             So I'm not going to have a hearing on the merits

11   right now of whether or not, on your arguments as to why Home

12   Lenders of Georgia has or does not have liability.  There are

13   many others that are in your situation who have recognized the

14   need to participate.  So all of this time and energy could just

15   be spent getting on the video, having the conversation, and

16   then we move on.

17             MR. COHAN:  Judge, thank you.  And obviously, we're

18   going to abide by the Court's direction on that.  I beg the

19   Court not to hold my client in any kind of contempt or impose

20   any sanctions.  But could I get a little direction?

21             First, again, I'd l like to, irrespective of the

22   merits of the three things, we just don't think this order, the

23   ADR order, was ever intended to apply to our client.  But if

24   you're telling my client that it should mediate, then it's

25   going to mediate.

Page 13

1              THE COURT:  I appreciate that.  I can tell you that

2     many counterparties have taken the position that it doesn't

3     apply.  On the record that I have before me, I believe that it

4     applies.  If I were to engage in a contested hearing with every

5     party who says that one thing or another doesn't apply to them,

6     we would never get anything done.

7              So what I'm suggesting to you is that I will not hold

8     your client in contempt, I will not impose any sanctions, on

9     the understanding that the discussion that you would like to

10    have right now will be part of the discussion that you'll have

11    in the mediation, and Lehman -- and I'm looking at the folks

12    who are here representing Lehman -- will move on from there,

13    that they won't be coming back to tell me that they again want

14    to seek sanctions in connection with the order.

15             I don't have the authority, of course, to order

16    anybody to settle.  All I can do is enter an order that

17    requires parties to mediate in good faith.  If you're

18    indicating to me that you're willing to do that, particularly

19    with the video conference concession that Lehman has made which

20    I appreciate so that everybody can save costs and don't have to

21    travel, then we should just move forward.  And it's not going

22    to be a half a day, it sounds like it's going to be a

23    relatively short session.

24             MR. COHAN:  Thank you, Judge.  And the only other

25    thing is just in terms of the cost of that.  My client, and

Page 14

1    representing to the Court, in a good month, maybe they have a

2    thousand dollars of disposable income, that means like over and

3    above groceries and bills.  And if it's a short mediation, I'd

4    ask that Lehman pay for it.  I don't know how much the mediator

5    is going to cost, I don't know what the hourly rate is, it's

6    New York, I assume it's expensive.  So I just ask that we do

7    this as efficiently as possible and whatever you decide, we'll

8    abide by.

9           MR. GIAMPOLO:  Your Honor, the ADR order very clearly

10   provides for sharing of costs, not for the estate to incur the

11   full costs.

12          And, Your Honor, to your point that so many

13   counterparties have tried to say that the order doesn't apply

14   to them, the same number of counterparties have said that they

15   don't have any money.  And if we listen to that, then there

16   would be no ADR process and we would resolve nothing.

17          THE COURT:  I understand.  One of the things, Mr.

18   Cohan, that I would like you to do is be prepared when you have

19   the mediation session to present evidence with respect to your

20   client's lack of wherewithal because that's something that will

21   go, that I would imagine may go into Lehman's analysis of

22   whether or not to pursue claims against your client.

23          So the cost is going to be incurred, why don't we

24   leave for another day reconsideration of the issue of whether

25   or not there's going to be a 50/50 split on the mediation fee

Page 15

1    or whether the estate will shoulder the entire expense.

2            As a matter of fairness to all the other claimants,

3    I'm not prepared to say right now that there are sufficient

4    special circumstances that warrant variation from the general

5    rule as expressed in the order and other mediation, ADR orders

6    that requires sharing of the expenses.  So I'd like to table

7    that for today and put it off for another day.

8            MR. GIAMPOLO:  Your Honor, if that's how you'd like

9    to proceed with this one individual counterparty, as long as

10   Lehman has reserved its rights to seek its half of the costs --

11           THE COURT:  Absolutely.

12           MR. GIAMPOLO:  -- because I think Your Honor can

13   appreciate setting a dangerous example for every counterparty

14   going forward to say I don't have money so I can't pay the

15   costs.

16           THE COURT:  Yes.

17           MR. GIAMPOLO:  Just like, I don't have money,

18   therefore, I shouldn't be forced to mediate.

19           THE COURT:  All right.  So we've taken a lot of time

20   to get to where I think we need to be which is Mr. Cohan, that

21   Home Lenders of Georgia is going to participate in a video

22   mediation session with the question of any departure with

23   respect to the cost of that to be determined at a later date.

24           MR. GIAMPOLO:  One additional point, Your Honor, if I

25   may, ig the proposed order that is included with our sanctions

Page 16

1    motion is structured in such a way that as long as a

2    counterparty complies right away within a reasonable time, then

3    the counterparty is not going to face liability for sanctions.

4    If we're going to deviate from the proposed order for Home

5    Lenders of Georgia, then I would at least ask that Your Honor

6    also impose at least a 30-day deadline for Home Lenders of

7    Georgia to have -- we'll make sure a mediator gives Home

8    Lenders of Georgia a couple of dates -- but they need to have a

9    deadline.

10          THE COURT:  All right.  Let's have Home Lenders of

11   Georgia be in a separate order that will recite this and I'll

12   so order the record as well.  And Mr. Cohan, I am going to

13   grant Lehman's request to implement, to include a 30-day

14   deadline.

15          MR. COHAN:  We can mediate as soon as tomorrow or

16   next week or whatever.

17          THE COURT:  Okay.  I mean no one needs to ruin their

18   Christmas holidays, but let's call it 30 days from the date of

19   entry of the order.  All right?

20          MR. GIAMPOLO:  I'm sorry, Your Honor, one last point

21   for Home Lenders of Georgia, and this is also going to apply to

22   Mortgage Experts, is that documents that were filed as exhibits

23   by Home Lenders of Georgia, as well Mortgage Experts, included

24   confidential documents that are protected by the ADR order,

25   since they violated the order again, and part of our motion

Page 17

1    papers have asked that those documents are to be removed from

2    the record or redacted.

3              THE COURT:  With respect to Mortgage Experts, we

4    removed those from public view.  I was not aware of that issue

5    with respect to Home Lenders of Georgia.

6              MR. GIAMPOLO:  It's in my reply papers, Your Honor.

7              THE COURT:  Okay.  I'm sorry.

8              MR. GIAMPOLO:  There are two documents that are

9    specifically flagged.

10             THE COURT:  I missed it.  Okay.  So we'll take care

11   of that by blocking those documents from view on the docket.

12             MR. GIAMPOLO:  Thank you, Your Honor.

13             MR. COHAN:  We join that motion, we're happy to do

14   that.  Thank you.

15             THE COURT:  Okay, Mr. Cohan.  So I think that takes

16   care of everything with respect to Home Lenders of Georgia.

17             MR. COHAN:  Thank you.  Have a good day.

18             THE COURT:  Yes sir, have a good day.

19             With respect to the other parties then, we've

20   received no other responses.  Correct?

21             MR. GIAMPOLO:  We've received no other responses,

22   just the Mortgage Experts filed the letter before the motion.

23             THE COURT:  Okay.  So other than Mortgage Experts, is

24   there anyone in the courtroom or on the phone who wishes to be

25   heard with respect to Lehman's sanctions motion?

Page 18

1    All right.  So the relief is granted with respect to

2    all of those other parties.

3    MR. GIAMPOLO:  Thank you, Your Honor.

4    THE COURT:  All right.  So let's -- Mr. Williams?

5    Mr. Williams, are you there?

6    MR. WILLIAMS:  Yes, ma'am.

7    THE COURT:  First of all, I need to point out that as

8    I understand it, you're not an attorney.  Correct?

9    MR. WILLIAMS:  That is correct.

10    THE COURT:  Okay.  And you're not representing

11    yourself.  Correct?

12    MR. WILLIAMS:  Correct.

13    THE COURT:  Okay.  That's not permitted.  An

14    individual is entitled to represent himself or herself, but a

15    non-lawyer is not permitted to represent a corporate entity in

16    a proceeding like this.

17    So we've engaged in, we've filed your correspondence

18    on the docket, I understand that you have had numerous

19    conversations with my chambers.  We're trying our best to

20    assist you, but I do need to point out that it's problematic

21    from our perspective to be talking to a non-lawyer representing

22    "a corporate entity."  So that's point number one.

23    Point number two is that as I understand what you

24    filed, you're willing to engage in the mediation, or Mortgage

25    Experts is willing to engage in the mediation, but that you're

Page 19

1    seeking as a precondition the production of certain documents

2    relating to the Fannie Mae and Freddie Mac settlements.  And

3    there seems to be a misunderstanding on your part on a number

4    of levels -- one, that those documents somehow are no longer

5    going to be available to Lehman or to others after January 1,

6    2017.  And that's just incorrect.  That's not a correct reading

7    of the agreement.

8              Secondly, whether or not documents of that, those

9    documents or any --

10             MR. WILLIAMS:  [indiscernible]

11             THE COURT:  I'm sorry, let me finish, sir. Whether or

12   not those documents or any other documents are available in the

13   context of litigation, is another issue.  And that it's not

14   appropriate for there to be a condition in terms of those

15   documents are anything else layered onto the ADR order.  So

16   even though you might think, and I don't know one way or the

17   other if it's true, that those documents that you're seeking

18   would demonstrate in your mind that you have no liability, you

19   still have to come to the mediation, Mortgage Experts still has

20   to participate in the mediation.  And then if the matter goes

21   to litigation, then you would be entitled at least to request

22   discovery of documents that were relevant to the defense of the

23   claim.

24             So I'm just going to ask Lehman's counsel, who is

25   standing here in the courtroom, to say what he would like and

1    then I'm happy to hear you.  All right?  So hold on one second.

2    Go ahead.

3            MR. GIAMPOLO:  Your Honor, with respect to Mortgage

4    Experts, what we would like is exactly the same relief we've

5    asked for with respect to the other counterparties subject to

6    the motion, that it simply attends and participates in the

7    mediation.

8            THE COURT:  And do you disagree with anything that

9    I've said with respect to the Fannie and Freddie documents?

10           MR. GIAMPOLO:  No, we do not, Your Honor.

11           THE COURT:  All right.  So Mr. Williams, go ahead.

12           MR. WILLIAMS:  Do you have my December 2nd, 2016

13   letter?

14           THE COURT:  Yes, I do.

15           MR. WILLIAMS:  Regarding your comments about the

16   availability of these documents with Fannie Mae, their

17   agreement, which I attached as part of my request for

18   sanctions, states that after January 1, 2017, that they would

19   be under no obligation to provide any disclosures or documents

20   to Lehman Brothers.  And they have 11,000 loans and I find

21   nothing anywhere in that document that says after January 1,

22   2017 you can request whatever you want and we will continue to

23   do best efforts to provide that to you.

24           THE COURT:  Well I would suggest to you that if I

25   enter an order requiring Fannie and Freddie to produce those

Page 21

1    documents, they're going to produce those documents.

2          MR. WILLIAMS:  Well, some of these loans were over 11

3    years ago, and most places, you know, they're not required to

4    retain documents so long.  If you can, if that's your

5    understanding of that, then I would feel more comfortable that

6    they would be able to do that.  But I'm not a party to a Fannie

7    Mae Lehman Brothers agreement.  So I doubt that they would

8    listen to me.

9          And if litigation occurs, I think it occurs outside

10   of your Court and I don't know that a new judge would be able

11   to place an order to Fannie Mae which, if they did set that

12   precedent then there's 11,000 other documents that would be

13   exposed to having to be produced.

14         In your order it says that, you know, the parties,

15   both Lehman Brothers and the counterparties are to take a

16   [indiscernible] to take steps to preserve all documents and

17   other evidentiary materials related to the indemnification of

18   the ADR dispute.

19         THE COURT:  Mr. Williams, we're getting, we're

20   really, we're getting very far afield here.  So --

21         MR. WILLIAMS:  Well, the documents --

22         THE COURT:  Sir, sir, sir, look.  I made an

23   accommodation on many levels right now.  You're participating

24   by phone and I'm having a conversation with you, and you're not

25   an attorney.  So first of all, there is a basis for there being

Page 22

1    litigation before me, and there's a lot of litigation relating

2    to the sellers pending before me.  That's point number one.

3            Point number two is that the Fannie Mae and Freddie

4    Mac settlements were approved by me and I retain jurisdiction

5    to enforce my order.  So that's point number two.

6            Point number three is that I entered an ADR order and

7    you are not entitled to unilaterally impose conditions that you

8    believe are applicable to whether or not you comply with the

9    ADR order.

10           Point number four is that Lehman, acting as a

11   fiduciary for the creditors of the estate is in charge of

12   figuring out whether or not it needs to get documents from

13   Fannie Mae and Freddie Mac.  And if in fact it needs those

14   documents to prove a case against you or anybody else, then

15   those chips are going to fall where they may.

16           But most importantly we are only talking about your

17   complying with the ADR order which you have said you are

18   willing to do.  You've imposed the condition, and what I'm

19   telling you is that that's inappropriate.  And Mortgage Experts

20   needs to comply with the ADR order, and in good faith

21   participate in a mediation session.  That's kind of it.

22           MR. WILLIAMS:  Ma'am?

23           THE COURT:  Go ahead.

24           MR. WILLIAMS:  We had, I do have some personal issues

25   regarding my wife's care.  She has myeloma and I'm her sole

Page 23

1   caregiver.  I've offered in the past to do a video conference

2   and Lehman Brothers only offered to do that if I paid for the

3   entire expense of the mediation.  Listening to what happened

4   with the last case, it seems like it's reasonable to do a video

5   conference and have it shared as per your ADR order.  Is that

6   reasonable?

7            THE COURT:  All right.  So based on Mr. Williams's

8   representations regarding his personal circumstances, is Lehman

9   willing to have Mr. Williams's Mortgage Experts participate in

10  a video mediation?

11           MR. GIAMPOLO:  Yes, Your Honor.

12           THE COURT:  All right.  So we'll do that.  And with

13  respect to the costs, we'll do the same thing on a one off

14  basis not setting a precedent for others, based on your

15  representations as to your difficult personal circumstances,

16  that the mediation will be conducted and the issue of the cost

17  will be revisited at a later time.

18           MR. GIAMPOLO:  And, Your Honor, we also ask that a 30

19  days' deadline be imposed like Home Lenders.

20           THE COURT:  And that a 30-day deadline be imposed

21  from the entry of the order.

22           MR. WILLIAMS:  I don't know if we need to readdress

23  if the mediation is split 50/50, I'm not asking for any

24  concession on that, I'm just asking to follow the ADR order the

25  way it was.

Page 24

1          THE COURT:  I misunderstood.  All right.  Thank you.

2     All right.  So hopefully that addresses your issue.  And you

3     filed a lot of papers, I understand that unintentionally some

4     of them were filed on the docket with personally identifiable

5     information.  We took those off the docket.  But filing those

6     papers is a good start and enables Lehman to see what it is

7     that you think constitutes a defense to their claims so that

8     once you have the mediation, everybody can decide what to do

9     from that point forward.

10          MR. GIAMPOLO:  Your Honor, if I may.  I believe in

11    our reply, in our letter that was submitted in reply to Mr.

12    Williams's letter, I pled that it's not just personal

13    identifiers that were included in what Mr. Williams's filed,

14    but there's also documents and information that are

15    confidential under the ADR order.

16          THE COURT:  We took everything off the docket.

17          MR. GIAMPOLO:  Okay, just making sure.

18          THE COURT:  Yes, we took everything off the docket.

19    Mr. Williams was acting at the suggestion of my chambers.  When

20    somebody is sending us letters, we then tell them to put them

21    on the docket and there was just a miscommunication.

22          MR. GIAMPOLO:  I understand.

23          THE COURT:  All right.  So Mr. Williams, counsel is

24    going to prepare an order reflecting the go forward plan with

25    respect to Mortgage Experts.  I'm going to so order this record

Page 25

1    in that regard, and I think that's everything we have.  All

2    right?

3              MR. GIAMPOLO:  Yes, Your Honor.

4              THE COURT:  Okay. Thank you.  Have a good day, folks.

5              MR. WILLIAMS:  Can I ask one question?

6              THE COURT:  Can you?

7              MR. WILLIAMS:  Can I ask one question?

8              THE COURT:  Sure.

9              MR. WILLIAMS:  When Lehman Brothers filed, you know,

10   corresponding documents in our files instead of [indiscernible]

11   documents in our file, it would appear that it was a direct --

12   never mind, we'll do this at the mediation.  Forgive me.  Thank

13   you, Your Honor, I appreciate your help.  The order will call

14   for 50/50 on the video conference expenses?

15             THE COURT:  Yes.

16             MR. WILLIAMS:  Thank you.  I hope you have a good

17   day.

18             THE COURT:  Okay, thank you sir.

19             MR. GIAMPOLO:  Thank you, Your Honor.

20        (Proceedings concluded at 12:10 PM)

21

22

23

24

25

1                            I N D E X

2

3

4                              RULINGS

5     DESCRIPTION

6                                                    PAGE

7     HEARING RE #53946:  Motion for Sanctions              25

8

9     HEARING RE #53970:  Letter to Judge Chapman

10    regarding Sanctions                                   25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                        CERTIFICATION

2           I, Theresa Pullan, certify that the foregoing is a

3    correct transcript from the official electronic sound recording

4    of the proceedings in the above-entitled matter.

5    Theresa Pullan    Digitally signed by Theresa Pullan
                        DN: cn=Theresa Pullan, o=Veritext, ou,
                        email=digital@veritext.com, c=US
                        Date: 2017.05.30 14:06:56 -04'00'

6    AAERT Certified Electronic Transcriber CET**00650

7    Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22    Veritext

23    330 Old Country Road

24    Suite 300

25    Mineola, NY   11501