Gary Gwilliam (Bar No. 33430)
Randall E. Strauss (Bar No. 168363)
**GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER**
1999 Harrison Street, Suite 1600
Oakland, California 94612-3528
Telephone:  (510) 832-5411
Fax:  (510) 832-1918
Email:  GGwilliam@giccb.com, rstrauss@giccb.com

Mark S. Bostick (Bar No. 111241)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone:  (510) 834-6600
Fax:  (510) 834-1928
Email:  mbostick@wendel.com

Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour,
Cheryl McNeil, Linda Howard-James, Isabel Guajardo and
Denise Colombo

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>                              Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |

**OBJECTION OF CLAIMANTS SYLVIA VEGA-SUTFIN,
MICHELLE SEYMOUR, CHERYL MCNEIL, LINDA HOWARD-JAMES,
ISABEL UAJARDO AND DENISE COLOMBO TO MOTION OF LEHMAN
BROTHERS HOLDINGS INC. PURSUANT TO FED. R. BANK. P. 9019 AND
11 U.S.C. § 105(A) FOR ENTRY OF ORDER (A) APPROVING RMBS
SETTLEMENT AGREEMENT AND OTHER REQUESTED RELIEF**

**Introduction**

Claimants Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo (collectively, the "Claimants") hereby object to the Motion of Lehman Brothers Holdings Inc., pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and section 105(a) of title 11 of the United States Code for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding

Decision of RMBS Trustees and LBHI Debtors to Enter Into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Scheduling RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing , and (D) Granting Related Relief ("Motion") on the grounds that the proposed Settlement Agreement is not in the best interests of the various debtors, bankruptcy estates and creditors because the Plan Administrator has failed to identify how the ultimate estimated RMBS Covered Loan Claims will be allocated among the various LBHI Debtors.  Absent such information, it is impossible to determine if the Settlement Agreement is truly in the interests of creditors.

## Factual and Procedural Background

1. Claimants are former employees of BNC Mortgage Inc.("BNC").

2. Lehman Brothers Bank FSB owns 100% of the equity of BNC. [Case 09-10137, Doc #2].  BNC served as Lehman Brothers' originator of subprime mortgage loans, which Lehman then packaged into mortgage-backed securities that were sold to investors, including hedge funds, insurers, banks and pension funds.

3. On November 8, 2005, the Claimants filed a complaint against BNC in the Superior Court of Sacramento County, California, Case No. 05AS05161 ("Complaint"), alleging claims for employment discrimination, harassment, retaliation, wrongful termination under the California Fair Employment and Housing Act (Cal. Govt. Code §§12900 *et seq.*) ("FEHA") and intentional infliction of emotional distress, and seeking compensatory damages against BNC and other third party defendants, and also seeking punitive damages allowable under California law for BNC's malicious and despicable conduct as alleged in the Complaint.  Among other things, three of the Claimants alleged that when they had reported what they believed were fraudulent and illegal business practices to their superior officers at BNC, they were subsequently subjected to retaliation and a hostile work environment.  All of the claimants alleged that they were subjected to sexual harassment, and that BNC took no action in response to their complaints to correct any of this illegal conduct.  Adjudication of those state law claims was delayed by BNC's procedural maneuvers and a state court appeal it filed.

4.     On January 9, 2009, BNC filed its petition for relief under chapter 11 of the Bankruptcy Code.

5.     On or about July 7, 2009, the Claimants filed timely proofs of claim in the BNC case, registered as Claim Nos. 5222, 5223, 5224, 5225, 5226 and 5227, as amended on June 8, 2017 (collectively, the "Claims").[1] The Claims are subject to pending objections.

6.     On December 6, 2011, the Bankruptcy Court entered its Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 23023] ("Order Confirming Plan").

7.     To the best of Claimants knowledge, in the BNC estate, excluding Claimants' Claims, there are 23 allowed claims totaling $734,308.61.[2] To the best of Claimants knowledge, the BNC estate has $15 million in assets. Quarterly Finance Report as of December 31, 2016, filed herein on March 29, 2017 [ECF No. 55127].

## Objection

The Court may only approve the RMBS Settlement Agreement if it satisfies the *Iridium* factors.[3] The RMBS Settlement Agreement cannot be approved, because, as proposed, it is not in the paramount interest of creditors.

Under the terms of the proposed RMBS Settlement Agreement, the Plan Administrator and Trustees agree to a claims estimation process pursuant to Bankruptcy Code § 502(c) for the Covered Loan Claims. If the Court estimates the Covered Loan Claims at $2 billion or more, all parties will waive their right to appeal. If the Court estimates the Covered Loan Claims at less than $2 billion, the Trustees may appeal the Court's decision. If the Court estimates the Covered Loan Claims in an amount between $2 billion and $2.416 billion, the allowed claim will be equal to the higher amount, and all parties waive their rights to appeal. If the Court estimates the

---

[1] The Amended Claims as aggregated total $4,500,000.00.

[2] This does not include unliquidated and contingent claims or claims that have been subordinated.

[3] *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)

Covered Loan Claims in an amount greater than $2.416 billion, the greater amount will be the allowed claim and all parties waive their rights to appeal. The Plan Administration claims that this process is beneficial to the LBHI Debtors' estates and creditors but there is insufficient information in either the Motion or the Settlement Agreement to support that broad brush statement.

Prior to reaching the proposed Settlement Agreement, the Court had ordered the LBHI Debtors and the RMBS Trustees to follow a strict Protocol to reconcile and determine the RMBS Claims on a loan by loan basis. See, Motion [ECF No. 55232], pp 10-11. Under the detailed steps of the Protocol, the Trustees were required to submit the claims files, the mortgage loan file, a statement describing the specific alleged defect and the representation and warranty violated or the document missing and a statement of how the breach entities the Trustee to a claim under the applicable governing Agreements and applicable law and a calculation of the purchase price and a statement of describing any notice given of breach given to a LBHI Debtor. Id. As part of that analysis, the Plan Administrator would, could or should know which LBHI Debtor was responsible for which claim and how each claim could, should or would be allocated.

Under the RMBS Settlement Agreement, the allocation of claim liability is silent. Creditors of LBHI Debtors have no idea what portion of $2.416 billion in liability will be allocated to which LBHI Debtors and how that will impact their returns. In BNC, the presently allowed claims are $734,308.61. Without the crucial information of what portion of RMBS' claim liability will be assigned to BNC and each LBHI Debtor, it is impossible to conclude that the proposed RMBS Settlement Agreement is in the paramount interests of the LBHI Debtors and their creditors.

This lack of information is compelling because it illustrates a fundamental problem with the RMBS Settlement Agreement. The Plan Administrator is the single administrator for each LBHI Debtor and may have a conflict of interest in allocating the liability for the RMBS Covered Loan Claims among each of the LBHI Debtors. When the Plan was confirmed no such conflict was apparent because the LBHI Debtors promised creditors that the Plan would be a

100% full payout plan. However, now that the Plan Administrator is essentially agreeing to the RMBS Covered Loan Claims liability in a range within $2 billion, it appears that the Plan is far from a 100% payout Plan. It appears that under the terms of the Settlement Agreement, the Plan Administrator may choose which LBHI Debtor to assign liability for the RMBS Covered Loan Claims. There is a conflict in that the Plan Administrator has not and will not disclose how the liability for the Covered Loan Claims will be allocated among the various LBHI Debtors. The Plan Administrator is a fiduciary for each LBHI Debtor, and in that respect, owes a duty to each LBHI Debtor to minimize the claims asserted against it. In the absence of disclosing to the creditors of the each LBHI Debtor how the RMBS Covered Loan liability will be assigned and how each LBHI Debtor's payout to creditors will be affected, the proposed RMBS Settlement cannot be in the paramount interest of creditors.

Claimants' objection to the Motion and RMBS Settlement Agreement can be resolved in one of two ways. The Plan Administrator can amend the proposed Settlement Agreement to exclude BNC's estate from any liability relating to the RMBS Covered Loan Claims, including any guaranty or indemnification claims by the related LBHI Debtors; or, alternatively, the Plan Administrator can provide written assurances that BNC will not be liable for the RMBS Covered Loan Claims, or the guaranty and indemnification claims from the related LBHI Debtors. Absent such amendment or assurances, the BNC estate risks turning from a 100% payout estate as promised in the Plan, to zero percent plan at the discretion of the Plan Administrator.

## Conclusion

If the adjustments or assurances resolving this objection as proposed above are declined, Claimants request that the Motion be denied based on insufficient evidence to determine the effect of the RMBS Settlement Agreement on individual estates and the consequent lack of evidence showing that its approval is in the paramount interests of creditors.

| | |
|---|---|
| DATED June 20, 2017 | GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER |
| | By: /s/ *Gary Gwilliam* |
| | Gary Gwilliam<br>Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo |
| DATED: June 21, 2017 | WENDEL, ROSEN, BLACK & DEAN LLP |
| | By: /s/ *Mark S. Bostick* |
| | Mark S. Bostick<br>Attorneys for Claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Guajardo and Denise Colombo |