UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            )
In re                                                       )    Chapter 11 Case No.
                                                            )
Lehman Brothers Holdings Inc., et al.,                      )    08-13555 (SCC)
                                                            )
            Debtors.                                        )    Jointly Administered
                                                            )
------------------------------------------------------------x

**AFFIDAVIT OF MELISSA ROSSITER IN SUPPORT OF LBHI DEBTORS'
RULE 9019 MOTION TO APPROVE THE RMBS SETTLEMENT AGREEMENT**

STATE OF CALIFORNIA )
                             ) ss.:
COUNTY OF ORANGE )

MELISSA ROSSITER, being duly sworn, deposes and says:

1.     I am a Vice President of Deutsche Bank National Trust Company ("DBNTC"). I have been employed by DBNTC since August 2, 2006. I have personal knowledge of the facts set forth herein. I offer this affidavit in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C § 105(A) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting Related Relief* (the "Motion").[1]

2.     DBNTC acts as a trustee for the Structured Asset Investment Loan Trust Series 2004-1 (the "Trust") which is at issue in the above-captioned proceeding. The Trust is governed, in part, by a Trust Agreement and relates to a securitization transaction that was sponsored by a subsidiary of Lehman Brother Holdings Inc. ("LBHI").

3.     Following the commencement of the LBHI Debtors' bankruptcy cases, DBNTC filed a proof of claim for claims including breaches of representations and warranties made by the LBHI Debtors (the "Claims") under the terms of the Trust Agreement and Mortgage Loan Sale and Assignment Agreement. Attached hereto as **Exhibit 1** is the proof of claim filed by DBNTC in this bankruptcy matter. DBNTC has been pursuing this claim against the LBHI Debtors since filing those proofs of claim.

---

[1] Any terms not defined here are defined in RMBS Settlement Agreement.

4. To assist with their prosecution of Claims, the Trustees engaged the services of competent and experienced counsel. For example, DBNTC retained Nixon Peabody LLP in connection with relevant issues, including bankruptcy law, global settlements of representation and warranty liability, and repurchase claims. The Trustees also retained highly skilled financial expert advisors, including Duff & Phelps, and re-underwriting experts to assist in prosecuting these claims.

5. The Trustees and LBHI Debtors made efforts to try to resolve the Trustees' Claims without success.

### A. October 2015 Settlement Agreement

6. I understand that on October 26, 2015, the Institutional Investors[2] and the LBHI Debtors informed counsel for the Trustees that they had reached an agreement to resolve the Trustees' Claims against the LBHI Debtors (the "October 2015 Settlement Agreement"), which they wanted to present to the Trustees for their consideration.

7. The Institutional Investors and the LBHI Debtors agreed to share the October 2015 Settlement Agreement with the Trustees on the condition that the Trustees agreed to keep the agreement confidential. After agreeing to the confidentiality pre-requisite, the Trustees received a copy of the October 2015 Settlement Agreement.

8. Between November 2015 and early February 2016, the RMBS Trustees worked with their counsel and legal and financial consulting experts to evaluate the October 2015 Settlement Agreement. In February 2016, counsel for the RMBS Trustees conveyed to the LBHI Debtors, based on preliminary work performed by their consulting experts, the number of trusts for which the RMBS Trustees might be advised to accept the settlement. Thereafter, and prior to

---

[2] The Institutional Investors at that time comprised a group of institutional investors who were represented then, as now, by Gibbs and Bruns LLP.

3

the Trustees' acceptance deadline, the LBHI Debtors formally withdrew the October 2015 Settlement Agreement.

9. I understand that following the LBHI Debtors' withdrawal of the October 2015 Settlement Agreement, the LBHI Debtors and the Institutional Investors participated in mediation. At the request of the mediator, the Trustees provided certain information to the mediator, on a confidential basis, to enable him to facilitate a revised settlement.

**B.  November 2016 Settlement Agreement**

10. On November 30, 2016, the LBHI Debtors sent to the Trustees on a confidential basis a settlement agreement that the Institutional Investors and the LBHI Debtors had executed (the "November 2016 Settlement Agreement") for consideration by the RMBS Trustees.

11. The terms of the November 2016 Settlement Agreement prohibited the Trustees from sharing it with Investors. In this affidavit, I use the term "Investor" to mean any of the following: certificateholders, noteholders, beneficial owners of certificates, and/or investment managers or advisors acting on behalf of beneficial owners of certificates.

**i.  Appointment of Responsible Individuals**

12. Each Trustee selected internal trustee personnel to work with counsel and experts on a day-to-day basis to manage the process of evaluating the November 2016 Settlement Agreement (each a "Working Group"). I was a member of the DBNTC Working Group.

13. The Working Groups' responsibilities included coordinating the evaluation process, selecting and working with experts, meeting or speaking with counsel for the Trustees on a frequent basis, and facilitating requests for, and delivery of, relevant data and information needed to evaluate the agreements.

### ii. The Expert Selection Process

14.  The Trustees decided to retain an expert to provide an independent opinion on the reasonableness of the November 2016 Settlement Agreement as a means of resolving the Trustees' claims in the LBHI Debtors bankruptcy cases.

15.  The Trustees considered a variety of factors in selecting an expert to evaluate the November 2016 Settlement Agreement, including: (a) credentials, including significant bankruptcy court experience; (b) experience in evaluating the reasonableness of settlements; (c) experience with settlements in complex bankruptcy cases; (d) testifying experience; (e) availability; and (f) absence of conflicts.

16.  After interviewing several candidates, and taking these factors into consideration, the Trustees selected the Honorable Judge Judith K. Fitzgerald to provide an independent opinion on the reasonableness of the RMBS Settlement Agreement.

### iii. The Trustees' Coordination and Facilitation of Judge Fitzgerald's Evaluation

17.  Throughout the evaluation process, the Trustees took steps to enable Judge Fitzgerald to perform a thorough and robust analysis. The Trustees and their counsel participated in scheduled conference calls, in-person meetings with Judge Fitzgerald on a weekly basis and at times more frequently, as well as additional ad hoc telephone calls. Through these frequent communications, the Trustees were able to facilitate Judge Fitzgerald's requests for information, answer questions she raised, and monitor her progress.

18.  In response to requests posed by Judge Fitzgerald, the Trustees provided her with, among other documents and information: representative copies of the Governing Agreements, summaries of certain agreement provisions, examples of the types of alleged breaches of representations and warranties, information related to the Protocol, the costs required to comply

with the Protocol, and relevant case law concerning, among other things, settlements, claims objections, and claims estimations. The materials that the Trustees provided to Judge Fitzgerald consisted of thousands of pages of documents and data. The Trustees also facilitated a conference call between Judge Fitzgerald and the Trustees' expert financial consultants, Duff and Phelps, to address and answer her questions.

19. DBNTC has not received any letters or communications from the noteholders of the Trust indicating any stance on the proposed settlement.

20. In addition to the regular conference calls discussed above, Judge Fitzgerald participated in four in-person meetings with counsel for the Trustees.

21. After completing her analysis, Judge Fitzgerald provided a written report to the Trustees. In her report, Judge Fitzgerald set forth a number of opinions, including her opinion "to a reasonable degree of professional certainty, that the RMBS Settlement sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement, in the circumstances of this Bankruptcy Proceeding, would be appropriate" for all of the Accepting Trusts. In her report, Judge Fitzgerald recommended that the Trustees not accept the RMBS Settlement Agreement with respect to certain trusts none of which was the Trust.

22. Within a few days of delivering her report to the Trustees, but before June 1, 2017, the Trustees received additional correspondence from Investors, which it reviewed and passed along to Judge Fitzgerald. As a result, Judge Fitzgerald issued a supplement to her expert report in which she confirmed that she had reviewed the additional correspondence, which had not caused her to change any of her opinions or recommendations. *See* Fitzgerald Aff., Exh. B.

    iv.    **The Trustees' Determination**

23. In the days leading up to the June 1, 2017 date to accept or reject the RMBS Settlement Agreement, the Trustees and/or their respective representatives met multiple times.

During these meetings, participants discussed Judge Fitzgerald's report and considered any other factors that could be relevant to whether to accept the RMBS Settlement Agreement, including Investor comments. After considering the opinion of Judge Fitzgerald. DBNTC determined to accept the RMBS Settlement Agreement with respect to the Trust that it administers.

By: _____
Melissa Rossiter

State of California
County of Orange

Sworn to before me this
23rd day of June, 2017

_____
Notary Public

SUZANNE C. PATTEN
Commission # 2075460
Notary Public - California
Orange County
My Comm. Expires Jul 21, 2018

EXHIBIT 1

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Unique Identification Number 888040690 |
| Name of Debtor Against Which Claim is Held<br>Lehman Brothers Holdings Inc. | Case No. of Debtor<br>08-13555(JMP) | |

**THIS SPACE IS FOR COURT USE ONLY**

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Deutsche Bank National Trust Company as Trustee of Structured Asset Investment Loan Trust*
See attached for additional addresses

c/o Richard C. Pedone, Esq.
Amanda D. Darwin, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

rpedone@nixonpeabody.com
adarwin@nixonpeabody.com

Telephone number: (617) 345-1000

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ Unliquidated (see attached)
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See attached
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** Not applicable
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe: See attached for detail requested in this section

Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ See attached
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim...
8. **Documents:** Attach redacted copies of any doc orders, invoices, itemized statements of running acc Attach redacted copies of documents providing evid on reverse side.) If the documents are voluminous, ...
DO NOT SEND ORIGINAL DOCUMENTS. AT SCANNING.
If the documents are not available, please explain:

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)    0000018542

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**
$_____

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 18 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

**Date:** 9/15/09
**Signature:** Deutsche Bank National Trust Company
By: _____ (See attached)
Melissa Wilman, Vice President

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

*Mortgage Pass-Through Certificates Series 2004-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | Chapter 11 |
| --- | --- |
| LEHMAN BROTHERS HOLDINGS INC., et al. | 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## ADDENDUM TO PROOF OF CLAIM

Name of Debtor Against Which Claim is Asserted:

        Lehman Brothers Holdings Inc. (the "Debtor").

Case Number of Debtor Against Which Claim is Asserted:

        08-13555 (JMP).

Name of Creditor:

        Deutsche Bank National Trust Company, as Trustee of Structured Asset Investment Loan Trust, 2004-1 (the "Creditor"). The Creditor is a national banking association and hereby makes this proof of claim on behalf of itself as Trustee, and in any other fiduciary or agency capacity in which it may serve under the Transaction Documents (defined below), and on behalf of the holders of the securities issued by Structured Asset Investment Loan Trust, 2004-1. The signatory of this proof of claim is a Vice President of the Creditor and is authorized to execute this proof of claim.

Unique Identification Number:

        888040690

Name and address where notices should be sent:

        Deutsche Bank National Trust Company
        1761 East St. Andrew Place
        Santa Ana, CA 92705
        Attention: Structured Asset Investment Loan Trust, 2004-1 - LH0401
        Melissa Wilman, Vice President
        Telephone: (714) 247-6342
        e-mail: melissa.wilman@db.com

12710067.3

With a copy to:

Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone:   (617) 345-1000
Attention:    Richard C. Pedone, Esq.
              e-mail: rpedone@nixonpeabody.com
              Amanda D. Darwin, Esq.
              e-mail: adarwin@nixonpeabody.com

I.   **OVERVIEW**

Reference is made to the following (together with all other documents executed or entered into with respect to Structured Asset Investment Loan Trust, 2004-1, collectively referred to herein as the "Transaction Documents" and each singly as a "Transaction Document"):

1.   that certain Trust Agreement, dated as of January 1, 2004 (the "Trust Agreement") by and among Structured Asset Securities Corporation (the "Depositor"), Aurora Loan Services Inc., the Murrayhill Company and the Creditor;

2.   that certain mortgage loan sale agreement dated as of January 1, 2004 (the "MLSA") between the Depositor and the Debtor; and

3.   all other related agreements, documents and amendments.

Capitalized terms used but not defined herein shall have the meanings given to such terms in the applicable Transaction Document. The Transaction Documents are incorporated herein by reference.

Pursuant to the MLSA, the Debtor transferred and assigned certain mortgage loans (the "Mortgage Loans") to the Depositor who subsequently transferred and assigned all of its rights to the Mortgage Loans (including the rights under the MLSA and other related transfer agreements) to the Trustee for the benefit of the holders of the certificates (the "Certificateholders") issued in connection with the Trust Agreement. In connection with such transfer, the Debtor made numerous representations, warranties and covenants pertaining to the Mortgage Loans that have given rise or may give rise to claims by the Trustee for the benefit of the Certificateholders related to breaches of such representations and warranties and indemnification for losses.

Pursuant to the applicable Transaction Document, in the event that the Debtor breaches its representations and warranties, the Debtor has incurred obligations to (i) make certain cure payments or (ii) repurchase certain Mortgage Loans affected by the Debtor's breaches at the purchase price provided in the applicable Transaction Document. In addition to the payment of

12710067.3                              2

the purchase price, the Debtor is obligated to indemnify the Creditor and the Certificateholders and hold them harmless against any losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Debtor's representations and warranties contained in the Transaction Documents.

## II. SUMMARY OF CLAIM

The total amount of the Creditor's claim remains unliquidated, because certain components of the claim have not yet been determined. As of the date hereof, certain portions of the total claim have been determined and where possible, such amounts are set forth below.

a. <u>Repurchase Price and Indemnification</u>: Claim arising from losses and costs incurred by the Creditor or Certificateholders, and/or other amounts owed by the Debtor to the Creditor, in connection with any repurchase or indemnity obligations as more particularly described above, which amounts are unliquidated and continue to accrue.

b. <u>Interest</u>: Claim for payment of interest in accordance with the terms of the Transaction Documents, and/or applicable law, which is unliquidated and continues to accrue.

c. <u>Expenses</u>: Claim for reimbursement of all reasonable compensation and out-of-pocket expenses, disbursements or advances, including, without limitation, legal fees and collection costs, the cost of valuation, including accountants' fees and financial advisor fees, and other costs and expenses incurred by the Creditor under the Transaction Documents, which amounts are unliquidated and continue to accrue.

d. <u>Other Claims</u>: In addition, the Creditor asserts, and reserves all rights to assert, all legal or equitable rights it may have against the Debtor, including without limitation, breach of contract claims, tort claims, claims for fraud or misrepresentation, fraudulent transfer or fraudulent conveyance claims, claims for aiding and abetting tortuous conduct, claims for interference with contractual relations and other similar claims, whether arising out of the Transaction Documents, the structure or otherwise.

The Creditor reserves the right to amend any and all amounts set forth above as necessary. Claims asserted herein are asserted as secured to the fullest extent permitted under the Transaction Documents and applicable law.

## III. SUPPORTING DOCUMENTATION

The Trust Agreement and MLSA are attached to the original of this Proof of Claim. Copies of the other Transaction Documents are voluminous and will be made available upon request. Upon information and belief, the Transaction Documents are in the possession of the Debtor.

12710067.3

3

## IV. SETOFF AND RECOUPMENT RIGHTS AND RIGHTS UNDER THE TRANSACTION DOCUMENTS

To the fullest extent permissible under the Bankruptcy Code and applicable law, the Creditor hereby asserts all applicable setoff and recoupment rights against the Debtor (and to the extent permissible, the Debtor's affiliates) arising out of or in connection with, the Transaction Documents.

In addition, the Creditor asserts all rights to enforce the provisions of the Trust Agreement that may impact the Debtor, including without limitation, any priority of payments or adjustments thereto provided for in the Transaction Documents, called for by virtue of the Debtor's bankruptcy filing or other defaults under any Transaction Document.

## V. RESERVATION OF RIGHTS

The Creditor reserves the right to (a) amend and/or supplement this proof of claim at any time, including after any bar date, and in any manner; and (b) to file additional proofs of claim for any additional claim against the Debtor which may be based on the same or additional documents or grounds of liability. This proof of claim is not a waiver of any claim by the Creditor and all claims under the Transaction Documents are hereby asserted.

The filing of this proof of claim is not and shall not be deemed or construed as: (a) a waiver or release by the Creditor of any rights against any person, entity or property; (b) a consent by the Creditor to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Creditor; (c) a waiver or release of the Creditor's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as core proceedings pursuant to 28 U.S.C. § 157, and whether such jury trial right is pursuant to the statute or the United States Constitution; (d) a consent by the Creditor to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. § 157 or otherwise; (e) a waiver or release of the Creditor's right to have any and all final orders in any and all non-core matters or proceedings entered on after *de novo* review by a judge of the United States District Court; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this proof of claim, any objection thereto or other proceeding which may be commenced in this case or otherwise involving the Creditor; (g) an election of remedies; (h) a waiver or release of, or any limitation on the Creditor's right to assert that any portion of the claims asserted herein are entitled to treatment as priority claims; (i) a waiver or release of, or any limitation on the Creditor's right to assert that any portion of the claims asserted herein are entitled to treatment as administrative claims under §§ 503(b) and 507(a) of the Bankruptcy Code; or (j) a waiver or release of, or any limitation on the Creditor's right to assert the "safe harbor" provisions in §§ 555, 556, 559, 560 or 561 of the Bankruptcy Code; or (k) a waiver of any rights, claim, actions or defenses, setoffs, recoupments or other matters to which the Creditor is entitled under any agreements, at law, in equity or under the United States Constitution.

12710067.3                                                                                              4

*EXECUTION*

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor,

AURORA LOAN SERVICES INC., as Master Servicer,

THE MURRAYHILL COMPANY, as Credit Risk Manager,

and

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee

---

TRUST AGREEMENT

Dated as of January 1, 2004

---

STRUCTURED ASSET INVESTMENT LOAN TRUST
MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2004-1

EXHIBITS TO PROOF OF CLAIM INTENTIONALLY OMITTED