**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case No. |
|  | ) |  |
| Lehman Brothers Holdings Inc., et al., | ) | 08-13555 (SCC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

------------------------------------------------------------x

### RMBS TRUSTEES' STATEMENT IN SUPPORT OF THE LBHI DEBTORS' MOTION FOR APPROVAL OF THE RMBS SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 2

STATEMENT OF FACTS .................................................................................. 8

    A.    Background ............................................................................... 8

    B.    Prior Proposed Settlement Agreements ............................................... 9

    C.    The RMBS Settlement Agreement .................................................... 12

    D.    The Trustees' Evaluation of the RMBS Settlement Agreement ......................... 13

        i.    The Trustees' Appointment of Responsible Individuals ........................ 13

        ii.    The Trustees' Expert Selection Process .................................... 14

        iii.    The Trustees' Communications with Investors ...................................... 15

        iv.    The Trustees' Coordination and Facilitation of Judge Fitzgerald's Evaluation ............................................................................... 19

        v.    The Expert's Analyses ...................................................... 21

            a.    Expert Work Performed by Judge Fitzgerald .............................. 21

        vi.    The Trustees' Determination .................................................. 25

    E.    The Trustees' Notice to Investors of their Acceptance ......................................... 26

    F.    Objections .............................................................................. 26

ARGUMENT ............................................................................................ 27

    A.    The Court Should Approve the Motion and Enter the Trustee Relief ................. 27

        i.    Approval of the Motion Is Within this Court's Jurisdiction .................. 27

        ii.    The Evidence Supports the Trustee Findings ........................................ 29

        iii.    Adequate Notice Was Provided to Investors .......................................... 29

        iv.    The Court Should Overrule Any Objections or Deem any Objection Waived ................................................................... 31

            a.    All Objections that Investors Filed Concerning the Trustee Relief Have Been Resolved ............................................... 31

            b.    Any Objections that Were Not Filed Were Waived .................... 31

        v.    The Trustees Reasonably Exercised their Discretion in Good Faith ....... 32

            a.    The Trustees Acted Reasonably .................................... 34

            b.    The Trustees Acted in Good Faith ................................. 38

B.     The Court Should Enter a Proposed Order Barring Certain Investor Claims
Against the Trustees ............................................................................................. 39

CONCLUSION ......................................................................................................................... 44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AIG, Inc. Sec. Litig.*,
   916 F. Supp. 2d 454 (S.D.N.Y. 2013)......................................................................37

*In re Bank of New York Mellon*,
   127 A.D.3d 120 (1st Dep't 2015) .................................................. *passim*

*In re Cabrini Med. Ctr.*,
   2009 WL 7193577 (Bankr. S.D.N.Y. Dec. 30, 2009)..............................................32

*Crouse-Hinds Co. v. InterNorth, Inc.*,
   634 F.2d 690 (2d Cir. 1980)....................................................................................38

*Cruden v. Bank of New York*,
   957 F.2d 961 (2d Cir. 1992)....................................................................................35

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992)....................................................................................28

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................36

*In re Joost's Estate*,
   50 Misc. 78 (Sur. Ct. Kings Cty. 1906), *aff'd sub nom. In re Voelbel*, 126 A.D.
   932 (2d Dep't 1908)................................................................................................35

*In re Lawyers Title & Guar. Co.*,
   162 Misc. 188 (Sup. Ct. N.Y. Special Term 1937)................................................42

*In re Mal Dunn Assocs., Inc.*
   406 B.R. 622 (Bankr. S.D.N.Y. 2009)....................................................................42

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................................37

*In re Nw. Airlines Corp.*,
   2007 WL 498285 (Bankr. S.D.N.Y. Feb. 9, 2007) ...............................................31

*In re Residential Capital, LLC*,
   497 B.R. 720 (Bankr. S.D.N.Y. 2013)......................................................... *passim*

*Taylor v. Freeland & Kronz*,
   503 U.S. 638 (1992)................................................................................................31

*In re Tender Loving Care Health Servs., Inc.*,
   562 F.3d 158 (2d Cir. 2009)...................................................................................31

*In the Matter of U.S. Bank Nat'l Ass'n*,
   2016 WL 9110399 (Sup. Ct. N.Y. Cty. Aug. 12, 2016) ................................................. *passim*

*In re U.S. Bank Nat'l Ass'n*,
   51 Misc. 3d 273 (Sup. Ct. N.Y. Cty. 2015) ................................................................. *passim*

*In the Matter of U.S. Bank Nat'l Ass'n*,
   No. 653902/2014, Tr. 29:14–24 (N.Y. Sup. Ct., Nov. 6, 2015) ........................................43, 44

*In re Worldcom, Inc. ERISA Litig.*,
   339 F. Supp. 2d 561 (S.D.N.Y. 2004)....................................................................................42

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................31

**Statutes**

*11 U.S.C. § 105(a)* ...................................................................................................................1

28 U.S.C. § 1334 ......................................................................................................................28

28 U.S.C. § 1367(a) .................................................................................................................28

Deutsche Bank National Trust Company ("DBNTC"), TMI Trust Company, successor to Law Debenture Trust Company of New York ("TMI Trust"), U.S. Bank National Association ("U.S. Bank"), and Wilmington Trust Company and Wilmington Trust, National Association ("Wilmington Trust"), solely in their respective capacities as trustees, indenture trustees, and/or successor trustees (collectively, the "Trustees") for the Accepting Trusts (defined below), respectfully submit this statement (the "Statement") in support of the *Motion of Lehman Brothers Holdings Inc. pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a) for Entry of an Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting Related Relief* [Docket. No. 55232] (the "Motion") filed by Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator on behalf of itself and the other affiliated debtors in the above-captioned case (collectively, the "LBHI Debtors") with respect to the residential mortgage-backed securitization ("RMBS") trusts identified in the fully executed RMBS Settlement Agreement[1] (the "Accepting Trusts").[2]

The Motion, in part, seeks the entry of an order containing the Trustee Findings and a bar order (the "Trustee Relief"), each relating to the Trustees' acceptance as to the Accepting Trusts

---

[1] A copy of the RMBS Settlement Agreement executed by the Trustees on behalf of the Accepting Trusts is attached as Exhibit 11 to the U.S. Bank Affidavit (defined herein).

[2] Except where noted, the Trustees' conduct with respect to the 238 Accepting Trusts and six Covered RMBS Trusts (defined below) that did not become Accepting Trusts on the Acceptance Date was identical; accordingly, for simplicity sake, this Statement does not separately define the trustees for Accepting Trusts, the trustees for Covered RMBS Trusts, and trustees for the six Covered RMBS Trusts that did not become Accepting Trusts on the Acceptance Date, and the "Trustees" refers to the trustees of the trusts that the particular discussion references.

of the RMBS Settlement Agreement (as defined in the Motion).[3]  The RMBS Settlement

Agreement was proposed to the Trustees of 244 RMBS Trusts (the "Covered RMBS Trusts") by

the LBHI Debtors and certain investment advisors and investors who are significant holders of

certificates in those trusts (the "Institutional Investors").[4]

## PRELIMINARY STATEMENT

1.    Courts have repeatedly approved RMBS settlements where trustees have

followed a process which the First Department concluded in *In re Bank of New York Mellon*, 127

A.D.3d 120 (1st Dep't 2015) ("*Countrywide II*") was reasonable and reflected RMBS trustees'

good faith evaluation of a settlement offer.  Where that process has been followed courts have

entered findings of fact and conclusions of law consistent with those sought by the Trustees here.

2.    That process included: (i) retention of experienced counsel; (ii) provision of

notice to Investors in the trusts at issue seeking their input; (iii) retention of one or more experts

in their areas of core competency to advise the Trustees as to whether to accept or reject the

settlement as to each trust; and (iv) in light of Investor feedback and in reliance on the

recommendations of the expert(s), consideration by one or more senior trust officers of the

settlement offer separately for each trust.

---

[3] Capitalized terms used and not defined herein will have the meanings ascribed to them in the Motion.
A copy of the RMBS Settlement Agreement is attached as an exhibit to the Motion.

[4] As of June 9, 2017, the Institutional Investors are holders, and/or authorized investment managers for
holders, of approximately $6 billion in certificates in 191 of the 238 trusts that became the Accepting
Trusts.  *See Institutional Investors' Motion to Intervene in Support of: (A) The RMBS Settlement, (B) The
Plan Administrator's 9019 Motion (ECF 55232), and (C) Entry by the Court of the Trustee Findings and
Bar Order* ("Motion to Intervene") [Dkt. No. 55457], 1.

For ease of reference, this Statement uses the term "certificates" to refer to certificates and/or notes issued
under the agreements governing the Trusts.  For the same reason, the term "Investor" is used to refer to
certificateholders, noteholders, beneficial owners of certificates, and investment managers or advisors
acting on behalf of beneficial owners of certificates.

3.      As set forth in this Statement and the supporting affidavits and declaration, the Trustees have followed the *Countrywide*-approved process in reaching their determination to accept the settlement offer as to the Accepting Trusts and to reject the settlement offer as to certain other trusts.  Most notably, counsel for the Trustees retained a highly qualified expert, the Honorable Judith Fitzgerald (ret.), to advise them whether to accept the RMBS Settlement Agreement, and they relied on her advice when making their decision.  In doing so, the Trustees acted reasonably and in good faith for the reasons set forth herein.

4.      The First Department has made clear that "good faith" and "reasonableness" is the proper standard for a court to utilize to review the conduct of a trustee of a trust governed by New York law acting in a discretionary capacity.  *See, e.g., Countrywide II*, 127 A.D.3d at 125-26 ("a party challenging the decisions of a trustee who followed the advice of a highly regarded specialist . . . can prevail only upon a showing that, based on the particular circumstances, the reliance on such counsel's assessment was unreasonable and in bad faith.").  Importantly, courts recognize that their review must be extremely narrow and does not permit the court to substitute its judgment for a trustee's judgment: "[t]he ultimate issue for determination . . . is whether the trustee's discretionary power was exercised reasonably and in good faith.  It is not the task of the court to decide whether we agree with the [T]rustee's judgment; rather, our task is limited to ensuring that the trustee has not acted in bad faith such that his conduct constituted an abuse of discretion." *Countrywide*, 127 A.D.3d at 125 (citation omitted).

5.      Following *Countrywide*, this identical standard has been applied to judicial consideration and ultimate approval of other settlements that RMBS trustees entered into with JPMorgan and with Citigroup.  *See In the Matter of U.S. Bank Nat'l Ass'n*, 2016 WL 9110399 (Sup. Ct. N.Y. Cty. Aug. 12, 2016) ("*JPMorgan*"); *In re U.S. Bank Nat'l Ass'n*, 51 Misc. 3d 273

(Sup. Ct. N.Y. Cty. 2015) ("*Citigroup*").  And, in the chapter 11 cases of *In re Residential Capital, LLC*, jointly administered at Case No. 12-12020 (MG) ("ResCap"), U.S. Bankruptcy Judge Martin Glenn likewise made findings similar to the Trustee Findings in connection with the ResCap debtors' motion, also pursuant to Bankruptcy Rule 9019, to approve a settlement of RMBS claims.  *See In re Residential Capital, LLC*, 497 B.R. 720 (Bankr. S.D.N.Y. 2013).[5]

6.      Since filing proofs of claim in 2009 in the LBHI Debtors' bankruptcy cases, the Trustees have diligently pursued the Covered Loan Claims.[6]  During their loan-by-loan review required by the Protocol,[7] the Trustees determined that LBHI breached various representations and warranties in applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other related agreements (the "Governing Agreements") governing the mortgage loans in the Covered RMBS Trusts.  The Trustees submitted 94,564 claim files under Step 1 of the Protocol.  The Trustees have spent over one hundred million dollars pursuing claims through the Protocol.

7.      In November 2016, the LBHI Debtors sent the Trustees a confidential settlement offer to resolve their Claims (the "November 2016 Settlement Agreement").  At the time, the Trustees and the LBHI Debtors had only just begun Step 3 of the Protocol.  Steps 4 and 5 had not even been started.  The Trustees' experts project that completion of Step 3 alone could take more than 12 years.

---

[5] While these settlements have little or no relevance to the Estimation Proceeding, they do support approval of the relief sought in the Motion before the Court.

[6] The RMBS Settlement Agreement defines Covered Loan Claims as "the Claims relating to Covered Loans."

[7] On December 29, 2014, this Court entered the *Order Establishing a Protocol to Resolve Claims Filed by Trustees on behalf of Certain Issuers of Residential Mortgage-Backed Securities* [Dkt. No. 47569] (as amended, the "Protocol Order").  The Protocol Order and Exhibit A to that order (as amended, the "Protocol") were amended on March 30, 2016 by that certain *Order Granting Motion of RMBS Trustees to Extend the Overall Claim File Cut-Off Date for Certain Loans under the Protocol Order and Related Relief* [Dkt. No. 52367].

8.    Upon receiving the November 2016 Settlement Agreement, the Trustees engaged in a comprehensive effort to analyze and evaluate whether the offer was in the best interests of the affected trusts.  After a thorough vetting process, the Trustees retained Judge Fitzgerald to assist them with an independent evaluation of the November 2016 Settlement Agreement, in particular to opine on the reasonableness of the offer as a means of resolving the Trustees' claims submitted through the Protocol in the LBHI Debtors' bankruptcy cases.  Based, in part, on input from Judge Fitzgerald, the Trustees provided comments to the LBHI Debtors and the Institutional Investors concerning the settlement offer, including certain aspects of it that Judge Fitzgerald found unacceptable.

9.    Following these discussions, in March 2017, the Institutional Investors sent to the Trustees for their consideration the RMBS Settlement Agreement, which addressed each of the concerns that Judge Fitzgerald had with the November 2016 Settlement Agreement.  The Trustees promptly notified Investors, other interested parties and the general public of their receipt of the RMBS Settlement Agreement and requested that they share their views of it with the Trustees to assist the Trustees in reaching their decision whether to accept or reject the offer as to each separate Trust.

10.    The Trustees created a public website (the "Settlement Website") on which they published multiple notices describing the settlement, requesting input from Investors, and responding to Investor questions.  The Trustees also posted on the Settlement Website other related documentation, including the RMBS Settlement Agreement, relevant filings in the LBHI Debtors' bankruptcy cases, and contact information for each of the Trustees.[8]  Further, pursuant to the Court's April 6, 2017 *Order Approving and Establishing Notice Procedures with Respect*

---

[8] The Settlement Website is available at http://lbhirmbssettlement.com/.

5

*to Proposed RMBS Settlement* Agreement,[9] the Trustees initiated a worldwide notice program to provide information to Investors of the RMBS Settlement Agreement and to provide notice of the Motion and the Trustee Relief requested therein.  The Trustees' efforts to reach Investors were successful as evidenced by the letters they received from Investors reflecting their views concerning the RMBS Settlement Agreement.

11.      Meanwhile, the Trustees provided Judge Fitzgerald with thousands of pages of data, including all of the documents and information that she requested for her review, and made their expert financial consultants available to speak with her.  After she completed her analysis drawing on her experience as a longtime bankruptcy judge and litigator, and after taking into consideration Investor feedback, Judge Fitzgerald provided the Trustees with a report in which she opined "to a reasonable degree of professional certainty, that the RMBS Settlement sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement, in the circumstances of this Bankruptcy Proceeding, would be appropriate" as to the Accepting Trusts.  Declaration of Judith K. Fitzgerald dated June 29, 2017 ("Fitzgerald Decl."), Exh. 2 (the "Fitzgerald Report"), at 8.

12.      The RMBS Settlement Agreement afforded the Trustees until June 1, 2017 to decide whether to accept it on a trust-by-trust basis.  In reliance on the recommendation of Judge Fitzgerald, the Trustees accepted the RMBS Settlement Agreement as to the Accepting Trusts, subject to Court approval and other conditions set forth therein.[10]  The Trustees concluded that

---

[9] *Order Approving and Establishing Notice Procedures with Respect to Proposed RMBS Settlement Agreement*, [Dkt. No. 55154] (hereinafter the "Notice Order").

[10] In reliance on Judge Fitzgerald's expert analysis, the Trustees did not accept the RMBS Settlement Agreement as to the five trusts listed on Exhibit B thereto.  The RMBS Settlement Agreement was not accepted as to SASCO 2003-38, which terminated between the date when the RMBS Settlement Agreement was offered to the Trustees and the Acceptance Date.  Neither the Trustees nor the LBHI Debtors request that the Court enter any findings or conclusions with respect to these six trusts.

the RMBS Settlement Agreement provides a reasonable process to resolve their claims arising

out of breaches of representations and warranties by LBHI at the earliest practicable opportunity

in a way that is designed to: (a) minimize future expenses, (b) provide the opportunity for the

Trustees to assert a claim in any amount they deem appropriate based upon their review of the

loans, and (c) minimize the risk of depletion of the LBHI Debtors' estate before the Trustees'

claims are resolved and paid.

13.    The individual and collective steps that the Trustees took to evaluate the RMBS

Settlement Agreement and exercise their discretion to accept or reject it for each individual

Covered RMBS Trust satisfy the key criteria that this Court and other courts have considered in

similar cases, as mentioned above and described in detail below and in the six affidavits and the

declaration accompanying this Statement.[11]  Measured against these and any other relevant

criteria, the Trustees acted reasonably and in good faith in accepting the proposed RMBS

Settlement Agreement with respect to the Accepting Trusts.  Each Trustee acted in good faith

and carefully considered Judge Fitzgerald's guidance, as well as other pertinent facts, before

---

Following the Acceptance Date, notice was given that SASCO 2004-15 and SASCO 2004-NP1 had terminated, and as provided by the RMBS Settlement Agreement, they cannot be Participating Trusts.  On June 22, 2017, notice was given that the RMBS Settlement Agreement had been terminated as to SASCO 2006-S4 following an acceptable direction from Investors in that trust, and accordingly SASCO 2006-S4 will not be a Participating Trust.

[11] Affidavits describing and demonstrating the reasonableness of each Trustee's process are attached hereto as exhibits.  In his affidavit (the "U.S. Bank Affidavit"), Brad Zwetzig describes how U.S. Bank considered, evaluated, and made decisions in good faith regarding the RMBS Settlement Agreement with respect to the 152 U.S. Bank-administered Accepting Trusts.  In his affidavit (the "Wilmington Trust Affidavit"), Adam Scozzafava explains how Wilmington Trust considered, evaluated, and made decisions in good faith regarding the RMBS Settlement Agreement with respect to the 42 Wilmington Trust-administered Accepting Trusts.  In her affidavit (the "DBNTC Affidavit"), Melissa Rossiter explains how DBNTC considered, evaluated, and made decisions in good faith regarding the RMBS Settlement Agreement with respect to the Accepting Trust that it administers.  The affidavit of Jane Strobel (the "TMI Trust Affidavit") explains how TMI Trust Company considered, evaluated and made decisions in good faith regarding the RMBS Settlement Agreement with respect to the 43 Accepting Trusts that it administers.  As set forth in footnote 1 of the TMI Trust Affidavit, TMI Trust Company was appointed as successor Trustee to Law Debenture.  Depending on the activity being described, references to the Trustees would include Law Debenture, TMI, or both.

reaching determining that accepting the RMBS Settlement Agreement was in the best interest of the Accepting Trusts.

14.     Accordingly, the Trustees are entitled to entry of the Trustee Findings.  The Trustees also are entitled to an order barring Investors in the Accepting Trusts from asserting claims against the Accepting Trustees with respect to the Accepting Trustees' evaluation and acceptance of the RMBS Settlement Agreement and implementation of the RMBS Settlement Agreement in accordance with its terms (the "Bar Order").

## STATEMENT OF FACTS

### A.     Background

15.     Following the commencement of the LBHI Debtors' bankruptcy cases, the Trustees filed proofs of claim, which included claims for breaches of representations and warranties made by the LBHI Debtors under the terms of the Governing Agreements.  U.S. Bank Aff. ¶ 3; TMI Trust Aff. ¶ 18; Wilmington Trust Aff. ¶ 3; DBNTC Aff. ¶ 3.

16.     Nearly eight years have passed since the Trustees filed their proofs of claim in 2009.  Even though the Trustees, working together with their expert financial consultants Duff & Phelps, LLC ("Duff & Phelps), have been diligently pursuing the claims, pursuant to the Protocol, over 96% remain unresolved.  Affidavit of Edmond Esses dated June 29, 2017 (the "Duff & Phelps Affidavit") ¶ 8.  The Trustees engaged the services of competent and experienced counsel and financial and re-underwriting experts to assist in prosecuting these claims.  U.S. Bank Aff. ¶ 5; TMI Trust Aff. ¶ 8; Wilmington Trust Aff. ¶¶ 6–8; DBNTC Aff. ¶ 4.

17.     Following this Court's establishment of the Protocol, the Trustees submitted 94,564 claims in the Protocol, which required a loan-by-loan review process.  Duff & Phelps Aff. ¶ 6.  The unprecedented effort called for the collection and review of approximately 172,000 mortgage loan files, at a cost of approximately $130 million.  *Id.* ¶¶ 5, 12.  Notwithstanding the

extensive effort and considerable cost, the LBHI Debtors and the Trustees have resolved only

3.3% of the claims through Step 2 of the Protocol process. *Id.* ¶ 9. Duff & Phelps estimates that

it would take more than twelve years to complete Step 3 of the Protocol alone, and it would take

many more years to complete the remaining steps of the Protocol for all of the claims in the

Covered RMBS Trusts. *Id.* ¶ 11.

18.     Previous attempts to settle these claims outside of the Protocol failed, as the

Trustees and the LBHI Debtors remain billions of dollars apart in their views of the value of

these claims. Fitzgerald Decl., Exh. 2 at 9; Wilmington Trust Aff. ¶ 9.

**B.      Prior Proposed Settlement Agreements**

19.     On October 26, 2015, the Institutional Investors[12] and the LBHI Debtors informed

counsel for the Trustees that they had reached an agreement to resolve the Trustee Claims (the

"October 2015 Settlement Agreement"), which they wanted to present to the Trustees for their

consideration. U.S. Bank Aff. ¶ 6, Exh. 2. If accepted by Trustees, the October 2015 Settlement

Agreement would have settled the Claims against the LBHI Debtors. U.S. Bank Aff. ¶ 7, Exh. 2.

The Institutional Investors and the LBHI Debtors agreed to share the October 2015 Settlement

Agreement with the Trustees on the condition that the Trustees agreed to keep the agreement

confidential. U.S. Bank Aff. ¶ 7; Wilmington Trust Aff. ¶ 11; DBNTC Aff. ¶ 7. The Trustees

agreed to keep it confidential and shortly thereafter received a copy of the October 2015

Settlement Agreement. U.S. Bank Aff. ¶ 7; Wilmington Trust Aff. ¶ 11; DBNTC Aff. ¶ 7.

Some of the material terms of the October 2015 Settlement Agreement, which the Institutional

Investors and the LBHI Debtors had executed, included:

---

[12] The Institutional Investors comprised a group of fifteen (15) institutional investors who are represented
by Gibbs and Bruns LLP.

a. the LBHI Debtors agreed to an allowed Class 7 unsecured claim to settle the Trustees' proofs of claim for a fixed amount in exchange for releases (§§ 3.01, 3.02);

b. the Trustees were not permitted to disclose the offer unless and until they accepted it (§§ 2.02, 2.04);

c. the fixed amount would be allocated based on each trust's estimated lifetime losses, except that estimated lifetime losses associated with Transferor Loans[13] would be reduced by 99% (§ 3.03); and

d. the LBHI Debtors had the right to terminate the October 2015 Settlement Agreement if the Trustees opted out of the settlement as to a certain threshold of trusts (§ 2.03(f)).

U.S. Bank Aff., Exh. 2.

20. Between November 2015 and early February 2016, the Trustees worked with experienced counsel and legal and financial consulting experts to evaluate the October 2015 Settlement Agreement. U.S. Bank Aff. ¶ 8; Wilmington Trust Aff. ¶ 12; DBNTC Aff. ¶ 8. As a result of preliminary work performed by their consulting experts, in February 2016 counsel for the Trustees conveyed to the LBHI Debtors the number of trusts for which the Trustees might be advised to accept the October 2015 Settlement Agreement. U.S. Bank Aff. ¶ 8; Wilmington Trust Aff. ¶ 12; DBNTC Aff. ¶ 8. Subsequently, the LBHI Debtors formally withdrew the October 2015 Settlement Agreement. U.S. Bank Aff. ¶ 8; Wilmington Trust Aff. ¶ 12.

21. Following the withdrawal of the October 2015 Settlement Agreement, the LBHI Debtors and the Institutional Investors participated in mediation. At the request of the mediator,

---

[13] The October 2015 Settlement Agreement defined Transferor Loans as "the Mortgage Loans sold into, deposited into, or otherwise conveyed into the Trusts that are not Covered Loans."

the Trustees provided certain information to the mediator, on a confidential basis, to enable him

to facilitate a revised settlement.  U.S. Bank Aff. ¶ 9; Wilmington Trust Aff. ¶ 13; DBNTC Aff.

¶ 9.

22.     On November 30, 2016, the LBHI Debtors confidentially sent to the Trustees for

their consideration the November 2016 Settlement Agreement, which the Institutional Investors

and the LBHI Debtors had executed.  U.S. Bank Aff., Exh. 3.  The November 2016 Settlement

Agreement differed from the October 2015 Settlement Agreement in a number of material

respects, including: (i) the agreement contemplated an estimation proceeding (the "Estimation

Proceeding") pursuant to Section 502(c) of the Bankruptcy Code, to estimate the value of the

Covered Loan Claims, instead of a fixed amount agreed to by the parties (§ 3.01); (ii) a release of

all appellate rights (§ 3.02(c)); and (iii) a different allocation formula to be established by experts

for the Trustees (§ 3.04).

23.     After a thorough search for an appropriate expert as explained below, the Trustees

retained Judge Fitzgerald to advise them on the reasonableness of the November 2016 Settlement

Agreement.  The Trustees provided a copy of the November 2016 Settlement Agreement to

Judge Fitzgerald, who expressed three concerns regarding its terms: (i) the inability of the

Trustees to notify Investors of the terms of the settlement to permit Investors to provide

comments to the Trustees in advance of their deadline to accept or reject the settlement

agreement; (ii) the inability of the Trustees to appeal any adverse decision of the bankruptcy

court; and (iii) the uncertainty as to the process this Court would use to estimate the value of the

claims.  Fitzgerald Decl., Exh. 2 at 29.

24.     After considering Judge Fitzgerald's views, the Trustees provided feedback to the

LBHI Debtors, which led ultimately to a modification of the November 2016 Settlement

Agreement in the form of the RMBS Settlement Agreement that is now before the Court.

Fitzgerald Decl., Exh. 2 at 29; U.S. Bank Aff. ¶ 18; TMI Trust Aff. ¶ 22; Wilmington Trust Aff.

¶ 19.

### C.    The RMBS Settlement Agreement

25.    In a letter dated March 17, 2017, the Institutional Investors sent the RMBS

Settlement Agreement to the Trustees for their review and consideration, which addressed the

three issues raised by Judge Fitzgerald with respect to the November 2016 Settlement

Agreement.  The RMBS Settlement Agreement (attached as Exhibit 5 to the U.S. Bank

Affidavit) includes the following provisions:

a.    the LBHI Debtors agreed to seek estimation of the Covered Loan Claims

in the amount of $2.416 billion,[14] as an allowed class 7 general unsecured

claim in the Bankruptcy Proceeding, while the Trustees have no limitation

on the amount that they can seek (RMBS Settlement Agreement, §§ 3.01

and 3.02).

b.    The LBHI Debtors waived any and all rights to appeal this Court's

estimate of the Trustee's Covered Loan Claims, no matter how high the

estimate (*Id.* § 3.02(c)).  In contrast, the Trustees preserve their rights to

appeal a decision by this Court that sets the estimate below $2 billion (*Id.*).

In addition, the LBHI Debtors agreed that, if the Court estimates the

Covered Loan Claims between $2 billion and $2.416 billion, the Covered

Loan Claims would be treated as Allowed Claims of $2.416 billion. (*Id.*)

---

[14] The LBHI Debtors and the Institutional Investors removed the Trustees' release of the LBHI Debtors
for Transferor Loans from the modified version of the November 2016 Settlement Agreement (i.e., the
RMBS Settlement Agreement) and correspondingly reduced the amount that the LBHI Debtors would
seek as an estimate by $24 million.

c.     The parties have the right to terminate the RMBS Settlement Agreement if the Court does not agree to conduct the estimation hearing in accordance with terms that the Trustees carefully negotiated with the LBHI Debtors, including a minimum of seven trial days for the Trustees to present their evidence.  The agreed-upon procedures for the estimation hearing are set forth in Exhibit G to the RMBS Settlement Agreement (*Id.* § 2.03(c)).

26.     The RMBS Settlement Agreement afforded the Trustees until June 1, 2017 to accept or reject it and allowed them to accept or reject the RMBS Settlement Agreement separately for each affected trust.  *Id.* §§ 1.01 and 2.03.

**D.     The Trustees' Evaluation of the RMBS Settlement Agreement[15]**

**i.     The Trustees' Appointment of Responsible Individuals**

27.     Each Trustee selected one or more internal trustee personnel to work with counsel and experts (each a "Working Group") to manage the process of evaluating the November 2016 Settlement Agreement and the RMBS Settlement Agreement (collectively, the "Proposed Settlement").  U.S. Bank Aff. ¶ 12; TMI Trust Aff. ¶¶ 3, 9; DBNTC Aff. ¶ 12; *see also* Wilmington Trust Aff. ¶ 38.  The Working Groups' responsibilities included coordinating the evaluation process, selecting and working with experts, meeting or speaking with counsel for the Trustees on a frequent basis, and facilitating requests for, and delivery of, relevant data and information needed to evaluate the Proposed Settlement.[16]  *Id.*

---

[15] The Trustees followed reasonably similar internal processes for their evaluation of the RMBS Settlement Agreement.  This Statement describes the process that U.S. Bank followed.  To the extent that the other Trustees utilized materially different approaches, the affidavits for those Trustees make those differences clear.

[16] Except where otherwise noted, actions taken during the Trustees' evaluation period by "the Trustees" were taken by the Trustee Representatives or other individuals tasked by each Trustee to perform that role.

28.     Each Trustee also identified senior corporate trust personnel to make the final decision with respect to each Covered RMBS Trust that they administer, to accept or reject the RMBS Settlement Agreement (each a "Trustee Committee").  U.S. Bank Aff. ¶ 13; DBNTC Aff. ¶ 24; *see also* Wilmington Trust Aff. ¶ 38.

### ii.     The Trustees' Expert Selection Process

29.     The Trustees decided to retain an expert to provide an independent opinion on the reasonableness of the Proposed Settlement as a means of resolving the Trustees' claims in the LBHI Debtors bankruptcy cases.  U.S. Bank Aff. ¶ 14; TMI Trust Aff. ¶ 10; Wilmington Trust Aff. ¶ 16; DBNTC Aff. ¶ 14.

30.     The Trustees considered a variety of factors in selecting an expert, including: (a) credentials (e.g., significant bankruptcy court experience); (b) experience in evaluating the reasonableness of settlements; (c) experience with settlements in complex bankruptcy cases; (d) testifying experience; (e) availability; and (f) absence of conflicts.  U.S. Bank Aff. ¶ 15; TMI Trust Aff. ¶ 11; Wilmington Trust Aff. ¶ 17; DBNTC Aff. ¶ 15.

31.     After interviewing several candidates, and taking these factors into consideration, the Trustees selected Judge Fitzgerald to provide an independent opinion on the reasonableness of the Proposed Settlement.  U.S. Bank Aff. ¶ 16; TMI Trust Aff. ¶ 10; Wilmington Trust Aff. ¶ 18; DBNTC Aff. ¶ 16.  Judge Fitzgerald has 43 years of experience, including more than 25 years of experience as a bankruptcy judge.  Fitzgerald Decl., Exh. 1 at 3.  She presided over matters in the Western District of Pennsylvania (where she was chief judge for five years) as well as in the District of Delaware (20 years), the Eastern District of Pennsylvania (eight years) and the U.S. Virgin Islands (nine years).  Fitzgerald Decl., Exh. 1 at 3-4.  During her tenure as a bankruptcy judge, Judge Fitzgerald presided over many significant corporate cases including those involving: *Flintkote, Kaiser Aluminum, Corp., Owens Corning, W.R. Grace, Pittsburgh*

*Corning Corporation, Armstrong World Industries, United States Mineral Products, U.S.G., Specialty Products Holding Corp., Maronda Homes, Fleming Steel Company, Federal-Mogul Global, Innovative Communications Corp., Just For Feet, Inc., WorldClass Processing, Inc., Combustion Engineering, Inc., Peregrine Systems, American Pad & Paper Co., PHP Healthcare Corporation, Color Tile, Inc., Italian Oven, Shannopin Mining, Busy Beaver Bldg. Centers, and Papercraft Corporation.* Fitzgerald Decl., Exh. 1 at 1.

32.    Judge Fitzgerald has an extensive trial background and frequently served as a settlement judge and mediator. Fitzgerald Decl., Exh. 1 at 2. Additionally, as a bankruptcy judge, Judge Fitzgerald considered and ruled on hundreds of motions to approve settlements. Fitzgerald Decl., Exh. 2 at 2. Adjudicating those motions frequently required the determination of the reasonableness of a proposed settlement agreement for the purposes of liquidating and/or paying claims, as well as assessments of whether proposed agreements were entered into at arm's length and in good faith. *Id.* For more information concerning her credentials and experience, *see generally* Fitzgerald Decl., Exh. 2 at 1-6.

### iii.    The Trustees' Communications with Investors

33.    One of the principal modifications to the November 2016 Settlement Agreement that the Trustees insisted upon, based in part on the concerns expressed by Judge Fitzgerald, was the removal of restrictions on their ability to disclose the terms of the settlement to Investors and seek their input before deciding whether to accept it for any particular trust. On the evening of Friday, March 17, 2017, the Trustees received the RMBS Settlement Agreement, and on Monday, March 20, 2017, the Trustees sent a notice to Investors in the Covered RMBS Trusts informing them about the RMBS Settlement Agreement (the "March 2017 Notice"). The March 2017 Notice referenced certain terms of the RMBS Settlement Agreement and how Investors could access the RMBS Settlement Agreement on the Settlement Website. In the notice, the

Trustees urged all interested persons to carefully review the RMBS Settlement Agreement. Affidavit of Jose Fraga dated June 28, 2017 (the "GCG Aff.") Exh. E.  The March 2017 Notice also informed Investors that the Trustees had retained Judge Fitzgerald to advise them on the reasonableness of the RMBS Settlement Agreement as a means to resolve the claims of the affected trusts, and further provided contact information for each Trustee if they had questions or wished to furnish directions concerning the RMBS Settlement Agreement.  *Id.*  Finally, the notice invited Investors in each trust to provide their views on the RMBS Settlement Agreement and whether the Trustees should accept or reject it.  In order for Investor input to be meaningful and fully considered by the Trustees and their expert, Investors were encouraged to provide input to the Trustees no later than May 5, 2017.  *Id.*

34.    The Trustees retained Garden City Group, LLC ("GCG") to assist with establishing the Settlement Website and to publicize all notices, facilitate communications with Investors, and provide Investors with access to certain relevant documents.  GCG Aff. ¶ 4.  At the Trustees' direction, GCG disseminated the March 2017 Notice to Investors in the Covered RMBS Trusts and posted on the Settlement Website the March 2017 Notice, the RMBS Settlement Agreement, and the March 17, 2017 letter from the Institutional Investors urging the Trustees to accept it.  GCG Aff. ¶13, Exh. E.

35.    Apart from the Trustees' efforts, the RMBS Settlement Agreement was publicized in other ways, including the following:

a.    Counsel for the Institutional Investors published a press release.[17]

---

[17] Press Release, Gibbs & Bruns LLP, *14 Institutional Investors in RMBS Issued by Lehman Announce Binding Offer by the Plan Administrator to The Lehman Estate to Four RMBS Trustees to Settle Mortgage Repurchase Claims for 244 RMBS Trusts* (Apr. 4, 2017), http://www.gibbsbruns.com/14-institutional-investors-in-rmbs-issued-by-lehman-announce-binding-offer-by-the-plan-administrator-to-the-lehman-estate-to-four-rmbs-trustees-to-settle-mortgage-repurchase-claims-for-244-rmbs-trusts-04-03-2017/.

b.  Media sources published articles concerning the proposed settlement.[18]

c.  On March 22, 2017, the LBHI Debtors filed a Notice of Presentment of Order Approving Notice Procedures with Respect to Proposed RMBS Settlement Agreement, which was posted on the Court docket.[19]  GCG published the notice on the Settlement Website, along with the Court's Order approving the motion (the "Notice Order").[20]  The Notice Order reflects this Court's determination that "notice of the Motion and the RMBS Settlement Agreement in accordance with the Notice Procedures will be sufficient and effective notice in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 Cases and others, including the Institutional Investors and the investors in each Trust, on notice of the Motion and the RMBS Settlement Agreement."[21]

d.  On April 27, 2017, the LBHI Debtors filed the Motion, which was published on the court docket.[22]  In addition, GCG posted the Motion on the Settlement Website.[23]  Pursuant to the Notice Order, notice of the

---

[18] *E.g.*, Bonnie Sinnock, *Investor's Group Supports Lehman Settlement Offer on RMBS*, NAT'L MORTG. NEWS (Apr. 3, 2017, 5:24 PM), available at http://www.nationalmortgagenews.com/news/investors-group-supports-lehman-settlement-offer-on-rmbs.

[19] *Notice of Presentment of Order Approving Notice Procedures with Respect to Proposed RMBS Settlement Agreement* [Dkt. No. 55096].

[20] *Notices*, RMBS TRUSTEE'S WEBSITE CONCERNING THE LBHI DEBTORS' SETTLEMENT OFFER, available at http://www.lbhirmbssettlement.com/notice.php.

[21] *Id.*

[22] *See* Motion, at Dkt. No. 55232.

[23] *See supra* note 21.

Motion was published in *The Wall Street Journal*, *Financial Times Worldwide*, and *The New York Times*.[24]

These steps created additional opportunities for Investors to learn about the RMBS Settlement Agreement.

36.     The Trustees' efforts to notify Investors of the RMBS Settlement Agreement evidently were successful, as Investors contacted Trustees concerning it.  U.S. Bank Aff. ¶¶ 24, 25; TMI Trust Aff. ¶¶ 19-21; Wilmington Trust Aff. ¶¶ 28-29, 31.  Investors, typically communicating through counsel, wrote letters expressing their views of the RMBS Settlement Agreement—some supporting it, and some opposing it—and initiated communications about possible directions to the Trustees concerning potential claims against the LBHI Debtors.  These letters were reviewed by the applicable Trustee and provided to Judge Fitzgerald for her consideration.  U.S. Bank Aff. ¶ 24; TMI Trust Aff. ¶ 19; Wilmington Trust Aff. ¶ 28.

37.     Investors also posed a number of questions and/or requests for additional information to one or more of the Trustees.  Following the publication of the March 2017 Notice, the Trustees received questions relating to the RMBS Settlement Agreement and/or requests for additional information.  U.S. Bank Aff. ¶ 25. In response to those questions, the Trustees published a second notice, dated April 21, 2017 (the "April 2017 Notice") in which they provided additional information about the RMBS Settlement Agreement that was responsive to those requests.  GCG Aff., Exh. F.  The April 2017 Notice further publicized that a hearing on the 9019 Motion is scheduled to occur on July 6, 2017 before this Court.  *Id*.  Finally, the April 2017 Notice reminded Investors again to contact the Trustees "immediately and certainly no later than May 5, 2017" if they had views that they wanted the Trustees and/or their experts to

---

[24] GCG Aff. ¶ 11(h), Exh. B.

consider when deciding whether to accept or reject the RMBS Settlement Agreement.  GCG Aff., Exh. F.

38.    As described further below, upon accepting the RMBS Settlement Agreement for the Accepting Trusts on June 1, 2017, the Trustees published a notice on June 1, 2017 to certificateholders informing Investors of their decisions (the "June 2017 Notice"), which is discussed *infra* at ¶ 49.  GCG Aff., Exh. G.  In that notice, the Trustee also announced that they posted on the Settlement Website Judge Fitzgerald's report and additional documents and information relating to the RMBS Settlement Agreement and/or the Covered Loan Claims that Investors requested in May 2017.  *Id.*  Some Investors had indicated that this information could be relevant to their determination whether to seek to direct the Trustees to exercise the Trustees' right to terminate the RMBS Settlement Agreement on or before June 22, 2017 as to one or more Accepting Trusts.[25]

### iv.    The Trustees' Coordination and Facilitation of Judge Fitzgerald's Evaluation

39.    Throughout the evaluation process, the Trustees took steps to enable Judge Fitzgerald to perform a thorough and comprehensive analysis.  The Trustees and/or their counsel participated in scheduled conference calls, in-person meetings with Judge Fitzgerald on a weekly basis and at times more frequently, as well as additional ad hoc telephone calls.  Fitzgerald Decl. ¶ 12; U.S. Bank Aff. ¶ 28; TMI Trust Aff. ¶ 14; Wilmington Trust Aff. ¶ 32; DBNTC Aff. ¶ 17. Through these frequent communications, the Trustees were able to fulfill Judge Fitzgerald's requests for information and answer questions that she raised.  Fitzgerald Decl. ¶¶ 12-15; U.S. Bank Aff. ¶ 28; TMI Trust Aff ¶ 12; Wilmington Trust Aff. ¶ 33; DBNTC Aff. ¶ 17.

---

[25] The Trustees exercised this right to terminate one Trust.  *See* n.8 *supra*.

40.     In response to requests posed by Judge Fitzgerald, the Trustees provided her with, among other documents and information: (i) representative copies of the Governing Agreements, (ii) summaries of certain agreement provisions, (iii) examples of the types of alleged breaches of representations and warranties, (iv) information related to the Protocol, (v) the costs required to comply with the Protocol, and (vi) relevant case law concerning, among other things, settlements, claims objections, and claims estimations.  Fitzgerald Decl. ¶¶ 13-15, Exh. 2 at 6-8; U.S. Bank Aff. ¶ 29; TMI Trust Aff. ¶ 12; Wilmington Trust Aff. ¶ 33; DBNTC Aff. ¶ 18.  The materials that the Trustees provided to Judge Fitzgerald consisted of thousands of pages of documents and data.  Fitzgerald Decl. ¶ 13; U.S. Bank Aff. ¶ 29; Wilmington Trust Aff. ¶ 33; DBNTC Aff. ¶ 18.  The Trustees also facilitated a conference call and in-person meeting between Judge Fitzgerald and Duff & Phelps, to answer her questions about, *inter alia*, the nature and types of claims asserted and the operational mechanics of the Protocol.  Fitzgerald Decl., Exh. 2 at 59, fn. 67; Duff & Phelps Aff. ¶ 15–16.

41.     In addition to the regular conference calls discussed above, Judge Fitzgerald participated in four in-person meetings with counsel for the Trustees.  Fitzgerald Decl. ¶ 12; Wilmington Trust Aff. ¶ 34.  On May 22, 2017, certain of the Trustee Working Groups, along with Trustees' counsel and Duff & Phelps met with Judge Fitzgerald.  U.S. Bank Aff. ¶ 30; TMI Trust Aff. ¶ 22.  Judge Fitzgerald walked the Trustees through her analysis and then-tentative conclusions and answered questions asked by those in attendance.  U.S. Bank Aff. ¶ 30; TMI Trust Aff. ¶ 22.  After participating in the May 22nd meeting and completing her analysis, Judge Fitzgerald provided a written report to the Trustees.  U.S. Bank Aff. ¶ 31; Fitzgerald Decl., Exh. 2; Wilmington Trust Aff. ¶ 35.

42.     Within a few days after delivering her report to the Trustees, but before June 1, 2017, U.S. Bank and Wilmington Trust received additional correspondence from Investors, which they reviewed and provided to Judge Fitzgerald.  U.S. Bank Aff. ¶ 33; Wilmington Trust Aff. ¶ 37; Fitzgerald Decl. ¶ 28.  As a result, Judge Fitzgerald issued a supplement to her expert report in which she confirmed that she had reviewed the additional correspondence and that her opinions or recommendations remain unchanged.  Fitzgerald Decl., Exh. 3.

<strong>v.      The Expert's Analyses</strong>

<em>a.      Expert Work Performed by Judge Fitzgerald</em>

43.     Judge Fitzgerald considered a number of factors in reaching her conclusions.  The primary factors considered are identified on pages 62 and 63 of her report.  Fitzgerald Decl., Exh. 2 at 62-63.  The table below sets forth some of the factors that went into Judge Fitzgerald's analysis, along with the section of her expert report addressing them:

| Considerations | Report Section & Page |
|---|---|
| a.   Proper notice to Investors and opportunity to be heard | II.C.1, p.30 |
| b.   Consideration of Investors' views of the RMBS Settlement Agreement | II.C.2, p. 33 |
| c.   Application of the *Iridium* factors to the terms of the RMBS Settlement Agreement | II.C.3, p. 43 |
| i.   Balancing the probability of litigation success and the settlement's future benefits and the likelihood of complex, protracted and expensive litigation, including considerations of appellate rights and the evidentiary process | II.C.3, p. 45 |

| Considerations | Report Section & Page |
|---|---|
| ii.  The paramount interests of the creditors and the degree to which parties in interest support the RMBS Settlement Agreement | II.C.3, p. 54 |
| iii.  The experience and competency of counsel supporting, and of the bankruptcy judge reviewing, the RMBS Settlement Agreement | II.C.3, p. 57 |
| iv.  The nature and breadth of releases | II.C.3, p. 60 |
| v.  Whether parties negotiated in good faith and at arms-length | II.C.3, p. 54 |

44.    Judge Fitzgerald opined:

a.    "to a reasonable degree of professional certainty, that the RMBS

Settlement sets forth a reasonable methodology to liquidate the disputed

RMBS Claims, and that entry into the RMBS Settlement, in the

circumstances of this Bankruptcy Proceeding, would be appropriate" for

all of the Accepting Trusts.  Fitzgerald Decl., Exh. 2 at 10.

b.    "Having considered the comments [provided by Investors to the RMBS

Settlement Agreement], and based on what I perceive to be the substantial

risks in the event that the RMBS Settlement is not approved and the

substantial costs and delays inherent in waiting for loan-by-loan trials or

for some other unknown claims resolution process, it is nonetheless my

opinion that the RMBS Settlement is reasonable and preferable to the

likely return to the Protocol and any subsequent trials." Fitzgerald Decl., Exh. 2 at 42-43.

c.      "The RMBS Settlement provides the opportunity for a timely resolution of the significant issues between the parties by establishing a methodology for prompt resolution that avoids loan-by-loan trials while preserving the ability of the RMBS Trustees to present evidence of the amounts of the RMBS Claims that should be allowed." Fitzgerald Decl., Exh. 2 at 53.

d.      "[W]ithout the RMBS Settlement and Exhibit 'G,' the parties are left with substantial uncertainty as to when and how RMBS Claims allowance proceeding would occur. The RMBS Settlement eliminates that uncertainty and provides significant benefits to the Certificate Holders as a result." Fitzgerald Decl., Exh. 2 at 45, 52-53.

e.      The release of claims by the Covered RMBS Trusts in Section 3.03 of the RMBS Settlement Agreement is a type of release "customary in bankruptcy settlements" to ensure the finality of the process. Fitzgerald Decl., Exh. 2 at 53-54.

f.      "In my opinion, a direction [by Investors to reject the RMBS Settlement] without an indemnity is not an adequate reason for any particular Trust to refuse to accept a settlement that provides the advantages that the RMBS Settlement offers and to return, instead, to the lengthy, expensive, long-delayed process encompassed in the Protocol and the uncertainty of an alternative process or better outcome, which could create unnecessary risk to the RMBS Trustees." Fitzgerald Decl., Exh. 2 at 41.

45.     In response to criticisms of the RMBS Settlement raised by Investors, Judge
Fitzgerald opined that:

a.      The LBHI Debtors' concession to seek allowance of the RMBS Claims at
$2.416 billion does not mean that this Court will "automatically value the
RMBS Claims at $2.416 billion . . . .  It is highly unlikely that a judge with
her background, skill and awareness of the circumstances that led to the
RMBS Settlement will ignore the RMBS Trustees' evidence as developed
through the Protocol that she imposed."  Fitzgerald Decl., Exh. 2 at 40-41.

b.      Loan-by-loan trials could not be completed within 18-24 months in this
Bankruptcy Proceeding.  Fitzgerald Decl., Exh. 2 at 36-37.  "The RMBS
Settlement also assures that RMBS Claims will be allowed and enables
them to be paid sooner rather than later because, until the Bankruptcy
Court determines that amount, the RMBS Claims will not be paid."
Fitzgerald Decl., Exh. 2 at 51.  "There is significant risk that protracted
litigation, whether under the Protocol or otherwise, in an effort to seek a
larger allowed claim will take so long, while semi-annual distributions
continue to be made to other creditors, that there will be insufficient funds
to satisfy any larger claims award either in whole or in part."  Fitzgerald
Decl., Exh. 2 at 55.

c.      It cannot be assumed that a trial based on statistical sampling would lead
to a better result than the RMBS Settlement in light of anticipated
challenges, delay, and expense.  Fitzgerald Decl., Exh. 2 at 37-39.

d. In light of the pre-trial procedures set forth in Exhibit G to the RMBS

Settlement, "it is my opinion based on my experience as a litigator and as

a trial judge, that the time reserved for trial is adequate for the RMBS

Trustees to present their evidence."  Fitzgerald Decl., Exh. 2 at 39-40.  "In

my opinion, Exhibit 'G' provides a reasonable method to timely fix the

allowed amount of the RMBS Claims.  Fitzgerald Decl., Exh. 2 at 51.

e. The fee payable under the RMBS Settlement Agreement to Gibbs & Bruns

as counsel for the Institutional Investors "is comparable to those in some

other RMBS settlements negotiated by Gibbs & Bruns."  Fitzgerald Decl.,

Exh. 2 at 35.

### vi.  The Trustees' Determination

46.     In the days leading up to the June 1, 2017 deadline for the Trustees to accept or

reject the RMBS Settlement Agreement, Working Group Members, and to the extent applicable

Committee Members, met with counsel multiple times.  U.S. Bank Aff. ¶ 34; TMI Trust Aff. ¶

14; DBNTC Aff. ¶ 23; *see also* Wilmington Trust Aff. ¶ 38.

47.     Following their receipt of Judge Fitzgerald's report, the Trustees conferred with

their respective counsel to analyze it and to consider any other factors that each believed to be

relevant to a decision to accept the RMBS Settlement Agreement, including Investor comments.

U.S. Bank Aff. ¶ 34; TMI Trust Aff. ¶ 24; DBNTC Aff. ¶ 23; *see also* Wilmington Trust Aff. ¶

38.  After considering the opinion of Judge Fitzgerald, as well as feedback from several

Investors, the Trustees determined to accept the RMBS Settlement Agreement with respect to the

238 Accepting Trusts.  U.S. Bank Aff. ¶ 34, Exh. 11; TMI Trust Aff. ¶ 25; Wilmington Trust

Aff. ¶ 39; DBNTC Aff. ¶ 23.  *See also*, U.S. Bank Aff., Exh. 11.  As noted above, five of the

Covered RMBS Trusts that did not accept the RMBS Settlement Agreement were not receiving any distribution thereunder, and a sixth trust terminated.

### E.    The Trustees' Notice to Investors of their Acceptance

48.    Immediately upon accepting the RMBS Settlement Agreement for the Accepting Trusts on June 1, 2017, the Trustees issued the June 2017 Notice informing Investors of their decisions, which GCG promptly posted to the Settlement Website.  U.S. Bank Aff. ¶ 35; GCG Aff., Exh. G.  The June 2017 Notice informed Investors of the Trustees' decision to accept the RMBS Settlement Agreement on behalf of 238 Covered RMBS Trusts.  GCG Aff., Exh. G.   The June 2017 Notice also reminded Investors of the deadline for responses to the LBHI Debtors' 9019 Motion, and invited Investors to provide a direction to the relevant Trustee to opt out with respect to one or more trusts in the event a holder disagreed with the Trustee's determination of the reasonableness of the RMBS Settlement Agreement, so long as the Investor provided a direction and indemnity acceptable to the relevant Trustee.  GCG Aff., Exh. G; *see also* n.8 *supra*.

### F.    Objections

49.    On or before the June 22, 2017 deadline, Investors filed four objections that relate to the Trustee Relief: (i) investors that refer to themselves as the "Investor Group" filed a preliminary objection on June 6, 2017; (ii) Royal Park Investments SA/NV ("Royal Park") filed two separate limited objections, one relating to U.S. Bank, as an Accepting Trustee, and one relating to Wells Fargo Bank, N.A., on June 22, 2017; and (iii) Five Points LLC ("Five Points") filed an objection on June 22, 2017.   As explained *infra* at ¶ 60, all four objections have been resolved.

## ARGUMENT

50.     For the reasons set forth in the Statement of Facts, in the affidavits and

declaration supporting this Statement and in the following argument citing legal authority, the

Court should enter the Proposed Order that accompanied the Motion, which includes the Trustee

Relief.

### A.     The Court Should Approve the Motion and Enter the Trustee Relief

#### i.     Approval of the Motion Is Within this Court's Jurisdiction

51.     For reasons that we understand will be set forth in a reply memorandum filed by

the LBHI Debtors, this matter is within the Court's core jurisdiction and accordingly, the Trustee

Relief would be part of a final binding order against third parties.  Nonetheless, even if it were

determined that the Court's consideration of the Trustee Relief was a non-core proceeding, the

Court has the power to enter the Trustee Relief either by exercising its "related-to" jurisdiction or

supplemental jurisdiction to consider the Trustee Relief.

52.     The Court still may enter the Trustee Relief pursuant to its "related-to"

jurisdiction under 11 U.S.C. § 157(c)(1), which provides that

> a bankruptcy judge may hear a proceeding that is not a core
> proceeding but that is otherwise related to a case under title 11.  In
> such proceeding, the bankruptcy judge shall submit proposed
> findings of fact and conclusions of law to the district court, and
> any final order or judgment shall be entered by the district judge
> after considering the bankruptcy judge's proposed findings and
> conclusions and after reviewing de novo those matters to which
> any party has timely and specifically objected.

11 U.S.C. § 157(c)(1).  The RMBS Settlement Agreement contemplates this exact scenario

because it defines "Trustee Findings Order" to mean "an order when entered by the District

Court after considering certain proposed findings of fact and conclusions of law submitted by the

Bankruptcy Court."  RMBS Settlement Agreement, §1.37.

53.     The Court could also exercise supplemental jurisdiction under 28 U.S.C.

§ 1367(a) as part of the same constitutional case or controversy where the court is asserting

original jurisdiction over the RMBS Settlement Agreement under 28 U.S.C. § 1334. *See, e.g., In

re Cuyahoga Equip. Corp.*, 980 F.2d 110, 115 (2d Cir. 1992). *Cuyahoga* involved a challenge to

the power of the district court sitting in bankruptcy in the Southern District of New York to

approve a settlement involving a debtor that, *inter alia*, protected two non-debtor entities

(Freedom Savings and the RTC, succeeding owners of the debtor's site) from contribution claims

that had been or might be asserted against them by a third party non-debtor entity (Publicker, a

former owner of the debtor's site) in a separate CERCLA action pending in the Eastern District

of Pennsylvania.  In essence, the settlement operated as a "bar order" to Publicker's contribution

claims against Freedom and the RTC.  The Second Circuit concluded that supplemental

jurisdiction was available: "the environmental causes form part of the same case with the

bankruptcy claims because all of them, resolved in the [S]ettlement [A]greement, concern[ed]

the government's attempts to remedy hazardous substance releases at the Publicker site and they

remain intertwined in the competing parties' efforts to secure a share of the proceeds of the

option sale." *Id.*

54.     The circumstances here are analogous to the circumstances at issue in *Cuyahoga*.

The Trustee Relief plainly forms part of the same case or controversy with the bankruptcy

claims.  This Court's consideration of the 9019 Motion requires an assessment of the RMBS

Settlement Agreement, which resolves the Trustees' Claims, and the Trustee Relief relates solely

to the Trustee's evaluation, acceptance, and implementation of that agreement to resolve those

Claims in bankruptcy.  For this reason, as in *Cuyahoga*, this Court has supplemental jurisdiction

to enter the Trustee Relief.

ii.      **The Evidence Supports the Trustee Findings**

55.      As described herein, and more fully in the affidavits and the declaration

supporting this Statement, each of the parties that negotiated the RMBS Settlement Agreement is

highly sophisticated and represented by experienced counsel and financial advisors.  Fitzgerald

Decl., Exh. 2 at 57.

56.      The evidence fully supports the Trustee Findings that:

a.      Investors, noteholders, and any other parties claiming rights in any

Accepting Trust have been provided with notice that was reasonable,

adequate, and was the best notice practicable, was reasonably calculated to

put interested parties on notice of the Motion, and constitutes due and

sufficient notice of Motion in satisfaction of federal and state due process

requirements and other applicable law;

b.      all such persons have been given the opportunity to be heard in opposition

to the Motion;

c.      any objections that were raised or that could have been raised in

opposition to the Motion, that have not been withdrawn or resolved, are

overruled and/or waived; and

d.      each of the Accepting Trustees acted within the bounds of its discretion,

reasonably, and in good faith with respect to its evaluation and acceptance

of the RMBS Settlement Agreement.

iii.      **Adequate Notice Was Provided to Investors**

57.      As explained above, the Trustees and the LBHI Debtors engaged in a

comprehensive notice program that provided notice to Investors on the Settlement Website,

through DTC, and by direct mailing.

58.    The notice program was approved in advance by this Court.  On March 22, 2017, the LBHI Debtors filed a *Motion for Entry of Order Approving Notice Procedures with Respect to Proposed RMBS Settlement Agreement* (the "Notice Motion") [Dkt. No. 55096].  A copy of the Notice Motion also was made available on the Settlement Website.  GCG Aff. ¶¶ 7-8.  No Investor objected to the Notice Motion, and the Court entered an order approving the form, concluding that such form was "sufficient and effective notice in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 Cases and others, including the Institutional Investors and the Investors in each Trust, on notice of the Motion and the RMBS Settlement Agreement."  *Order Approving and Establishing Notice Procedures with Respect to Proposed RMBS Settlement Agreement*, entered on April 6, 2017 [Dkt. No. 55154].

59.    The notice program approved by this Court and utilized in these cases is virtually identical to the notice program that trustees previously utilized in the Residential Capital, LLC chapter 11 cases before this Court.  In *ResCap*, Judge Glenn concluded that the "robust notice program … designed by the Garden City Group, ensured that all investors were provided with notices by distributing notices to all registered holders of RMBS by mail and posting the notices and other information on the Trustee Website…[,] was reasonably calculated to provide notice to all investors, … and fully satisfie[d] New York and federal due process requirements."  *ResCap*, 497 B.R. at 744.  Notice programs similarly were approved by courts and then implemented in other large RMBS global settlement matters as well.  *See JPMorgan*, 2016 WL 9110399 at *15–17; *Citigroup*, 51 Misc. 3d at 281-83; and *Countrywide II*, 127 A.D.3d at 124.

iv.     **The Court Should Overrule Any Objections or Deem any Objection Waived**

   a.     *All Objections that Investors Filed Concerning the Trustee Relief Have Been Resolved*

60.     As explained supra at ¶ 49, Investors filed four objections concerning the Trustee Relief.  The Investor Group filed a preliminary objection on June 6, 2017 and withdrew it on June 29, 2017 [Dkt. Nos. 55432 and 55670, respectively].  Royal Park filed two limited objections on June 22, 2017 [Dkt. Nos. 55614 and 55615], which have been resolved; Royal Park has agreed that, upon filing a proposed order by the LBHI Debtors that contains certain agreed-upon language, Royal Park will withdraw its two objections.  Five Points filed a limited objection on June 22, 2017 [Dkt. No. 55613], which has been resolved; Five Points has agreed that, upon confirmation that the LBHI Debtors submission that we understand will be filed contains agreed-upon language, they will withdraw their objection.  Accordingly, all of the Investors' objections have been fully resolved.

   b.     *Any Objections that Were Not Filed Were Waived*

61.     The notice program provided Investors with ample opportunity to object to the RMBS Settlement Agreement or the relief sought in the 9019 Motion.  Any Investors who have not raised actual or potential objections timely, or have withdrawn their objections, have now waived their right to do so.  *See, e.g.*, *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992) ("Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality.");  *In re Tender Loving Care Health Servs., Inc.*, 562 F.3d 158, 163 (2d Cir. 2009) (denying a motion to reconsider as untimely under Federal Rule of Bankruptcy Procedure 9024); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 341 (S.D.N.Y. 2005) (finding that an objection to releases granted in connection with a settlement was untimely and was waived); *In re Nw. Airlines Corp.*, 2007 WL 498285, at *3 (Bankr. S.D.N.Y. Feb. 9, 2007) (denying motion

31

objecting to claim transfer where creditor "filed its motion objecting to the transfer … 38 days after the time to object had expired and after receiving unambiguous notice of the deadline for filing objections."); *see also In re Cabrini Med. Ctr.*, 2009 WL 7193577, at *8 (Bankr. S.D.N.Y. Dec. 30, 2009) (entering an order barring objections at a Sale Hearing by persons or entities who fail to "timely file [an] objection to the [Sale] Motion.").

### v.    The Trustees Reasonably Exercised their Discretion in Good Faith

62.    For reasons set forth below, elsewhere in this Statement, and in the supporting affidavits and declaration, the Trustees reasonably exercised their discretion in good faith in accepting the RMBS Settlement Agreement as to the Accepting Trusts.

63.    The First Department unequivocally set forth the standard of review that a court analyzing the discretionary conduct of an RMBS trustee administering a New York common law trust in evaluating whether to enter into a settlement:  "[t]he ultimate issue for determination . . . is whether the trustee's discretionary power was exercised reasonably and in good faith.  It is not the task of the court to decide whether we agree with the [T]rustee's judgment; rather, our task is limited to ensuring that the trustee has not acted in bad faith such that his conduct constituted an abuse of discretion." *Countrywide*, 127 A.D.3d at 125 (citation omitted).

64.    The court in *Countrywide* explained the significance of the trustee's reliance on counsel and qualified experts in evaluating the settlement offer:

> Importantly, if a trustee has selected trust counsel prudently and in good faith, and has relied on plausible advice on a matter within counsel's expertise, the trustee's conduct is significantly probative of prudence.... Court approval of the settlement does not require that the court agree with counsel's judgment or assessment; all that is required is a determination that it was reasonable for the [T]rustee to rely on counsel's expert judgment.... In evaluating the elements of the settlement, the [T]rustee properly obtained and considered the opinions of several highly respected outside experts [on valuation and other issues].

*Id.* at 126-27.

65.    Ultimately, the court in *Countrywide* concluded that "[t]he [T]rustee acted within its authority throughout the process, and there is no indication that it was acting in self-interest or in the interests of BofA rather than those of the certificateholders." *Countrywide* at 126.

66.    The standard set forth in *Countrywide* has been adopted and applied in two subsequent proceedings in which, as here and in *Countrywide*, RMBS trustees of a number of New York common law trusts evaluated a settlement of, at least in part, their counterparties' liability to the trustees for alleged breaches of loan-level representations and warranties.  In each of these two matters, as here, the trustees utilized an evaluation process that included the steps that the court in *Countrywide* found significant.

67.    The court in *Citigroup* explained the process that the trustees had followed in evaluating the Citigroup settlement offer:

- Among other things, the court noted that senior trust personnel had made the decision to accept the settlement following an eight-month evaluation period and regular meetings with counsel.  (*Citigroup*, 51 Misc. 3d at 279.)

- The trustees had also obtained and considered the plausible reports and advice of outside experts on significant legal and valuation issues, including the applicable statute of limitations for repurchase actions, and a comparison of the settlement payment to estimated losses incurred by the Trusts due to breaches of representations and warranties.  (*Id.* at 279–80, 285–86.)

- An expert had been retained to form an independent opinion of the reasonableness of the settlement, and to recommend whether it should be accepted or rejected for each covered loan group.  (*Id.* at 280.)

- The trustees had taken reasonable steps to ensure their experts' access to necessary information, negotiated several extensions of the deadline to accept the proposed settlement, made substantial efforts to keep investors informed of their progress, and taken investors' views into account in making their final decisions.  (*Id.* at 281.)

- The Trustees had also provided extensive notice to investors of their opportunity to object to the proposed settlement. (*Id.* at 282–83.)

- Applying the standards set forth in *Countrywide*, the court held that the trustees had exercised their discretionary power reasonably and in good faith in accepting the settlement. (*Id.* at 284.)

*Id.* at 279–86.

68.    Applying these same factors and observing the same trustee conduct, the court in *JPMorgan* concluded that the trustees had acted reasonably and in good faith and, as in *Countrywide* and *Citigroup*, were entitled to relief virtually identical to the Trustee Relief sought here. *JPMorgan*, 2016 WL 9110399 at *16.

69.    In *ResCap* as well, Judge Glenn ordered relief that is similar to the Trustee Relief when ruling on the debtors' motion pursuant to Bankruptcy Rule 9019 to approve a settlement of RMBS claims. *See ResCap*, 497 B.R. at 745.

### a.    *The Trustees Acted Reasonably*

70.    As explained above, the Trustees engaged in an intensive process over several months similar to the processes used successfully in the four previous RMBS global settlements. *See JPMorgan*, 2016 WL 9110399 at *5; *Citigroup*, 51 Misc. 3d at 279; *ResCap*, 497 B.R. at 735-36*;* and *Countrywide II*, 127 A.D.3d at 124.  The process by which the Trustees analyzed the RMBS Settlement Agreement with the assistance of highly skilled subject-matter advisors reflects a careful, informed and rational exercise of each Trustee's discretion.[26]

---

[26] It is well settled that trustees of RMBS trusts have the authority to settle breaches of representation and warranty claims because the Trustees were assigned "all the right, title, and interest" in mortgages contained within the trusts.  *See, e.g.*, *ResCap*, 497 B.R. at 748 ("The FGIC Trustees, as the party authorized to represent and assert claims on behalf of the FGIC Insured Trusts, have the authority to enter into settlement agreements with respect to the FGIC Insured Trusts' claims against FGIC under the FGIC Policies."); *JPMorgan*, 2016 WL 9110399 at *9 ("In reviewing substantially similar agreements, the courts have held that such provisions 'effectively grant[] the Trustee the power and authority to commence litigation' and, with it, the discretionary 'power to settle litigation.'"); and *Citigroup*, 51 Misc. 3d at 284 (same).  For an example of the relevant language in Governing Agreements for the Accepting Trusts, *see* TMI Aff., Exh. 2, at § 2.01(a) ("Concurrently with the execution and delivery of this

71.    The deliberative process that the Trustees employed was designed to ensure that their decision to accept or reject the RMBS Settlement Agreement was in the best interests of the trusts.  These steps included the selection of Working Groups of experienced and knowledgeable corporate trust employees to oversee the evaluation process and a Committee of senior executives to decide whether to accept or reject the RMBS Settlement Agreement as to each trust, the retention of experienced counsel, and the selection of a highly-qualified bankruptcy expert.

72.    As in the previous RMBS settlements, the Trustees in this case are each represented by counsel experienced in settling RMBS claims.  *See ResCap*, 497 B.R. at 742 (highlighting that the Trustees retained "competent counsel.").  The Trustees also have relied on the expertise of Judge Fitzgerald, a highly experienced and well-regarded retired bankruptcy judge, in their consideration of the RMBS Settlement Agreement.  As explained above, courts have emphasized the importance of the trustee's reliance on the "properly obtained and considered" opinions of "highly respected outside experts."  *Countrywide II*, 127 A.D.3d at 127; *see also Citigroup*, 51 Misc. 3d at 285 (holding that "the Trustees' reliance on the plausible reports and advice of outside experts is 'significantly probative of [the Trustees] prudence.'"); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) (concluding that trustee reasonably relied, based on findings "that there was a studied approach to the opinions" provided by advisors); *In re Joost's Estate*, 50 Misc. 78, 82-83 (Sur. Ct. Kings Cty. 1906) ("[W]here, in the course of the administration of his trust, he is confronted with any question which requires the advice of a skilled specialist and in good faith seeks such advice, receives the same, and acts

---

Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05, and 2.06, in trust, all the right, title, and interest of the Depositor in and to the Mortgage Loans.").

thereon, he is not held accountable for the consequences of following it[.]"), *aff'd sub nom. In re Voelbel*, 126 A.D. 932 (2d Dep't 1908).  As explained in *Countrywide,* the issue is not whether any particular expert's opinions are right or wrong, but whether "it was reasonable for the trustee to rely on [advisor's] expert judgment." *Countrywide II*, 127 A.D.3d at 126.  There is nothing in the record to demonstrate that the Trustees' reliance on expert advice was "unreasonable and in bad faith." *Id.*

73.     The Trustees also kept Investors informed throughout the process to enable Investors to provide their input.  U.S. Bank Aff. ¶¶ 21-27.  The Trustees gave notice to Investors of the RMBS Settlement Agreement at the first permissible time and provided them with approximately six weeks to share their feedback.  Judge Fitzgerald factored Investor input into her analysis, and the Trustees considered this input when making their decisions.  Fitzgerald Decl., Exh. 2 at  33-43; U.S. Bank Aff. ¶ 34.

74.     The Trustees and Judge Fitzgerald considered the cost, delay and risk associated with litigating claims for breaches of representations and warranties through the Protocol or other litigation process, on a trust-by-trust basis.  The review of such claims involving tens of thousands of loans in the Covered RMBS Trusts, or even some small fraction thereof, "would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *In re Giant Interactive Grp., Inc. Sec. Litig*., 279 F.R.D. 151, 160 (S.D.N.Y. 2011); *see also ResCap*, 497 B.R. at 734 (approving settlement in light of "anticipated scope of discovery" and the "enormous discovery burden required" in an RMBS case involv[ing] forty-seven securitizations).

75.     The Trustees' experts estimate that, given the pace at which Step 3 of the Protocol has been proceeding, Step 3 alone could take more than twelve years to complete, and it could

take many more years to complete the remaining steps of the Protocol for all of the RMBS

claims.  Duff & Phelps Aff. ¶ 11.  When presented with the RMBS Settlement Agreement, it was

reasonable for the Trustees and their expert to consider the uncertainty, cost and delay inherent in

using the Protocol or other litigation process to establish the amount of the allowed RMBS

claims, in determining whether to accept the settlement for the Covered RMBS Trusts.  *See, e.g.,*

*In re AIG, Inc. Sec. Litig*., 916 F. Supp. 2d 454, 469 (S.D.N.Y. 2013) (settlement "must take into

account a number of variables that may impact the parties' expected gains from foregoing trial,

including settlement awards in comparable suits, the cost of delay, the value of potential verdicts

in related suits, and changes in the bargaining position of the parties, among other factors");

*Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) (the "uncertainty"

of litigation must be "weighed against the immediate and tangible benefits conferred by the

Settlement").

76.    Further, the Trustees and Judge Fitzgerald considered that Investors had three

opportunities to involve themselves in this decision: first, the opportunity to provide comments

to the Trustees by May 5, 2017; second, the option of providing direction and indemnity to the

Trustees by June 22, 2017 (*see* n.8 *supra*), and finally the ability to be heard in opposition to the

Motion.  Judge Fitzgerald concluded that not one Investor provided a reasonable alternative

method for resolving the RMBS claims.  Fitzgerald Decl., Exh. 2 at 41-42.

77.    Accounting for all of those factors, and relying on the opinions of Judge

Fitzgerald, the Trustees made the reasonable, discretionary judgment that accepting the

settlement, and the efficient estimation process it offered in lieu of the Protocol, was in the best

interests of the Accepting Trusts.

b.    *The Trustees Acted in Good Faith*

78.    By considering all of the above-described information and relying on the

recommendations of Judge Fitzgerald, the Trustees acted in good faith to accept the settlement

for the Accepting Trusts at issue in this proceeding.  U.S. Bank Aff. ¶ 34.  As with the other

global RMBS settlements, the Trustees demonstrated that they acted in good faith in settling

these RMBS claims.  *See ResCap*, 497 B.R. at 744; *JPMorgan*, 2016 WL 9110399 at *16;

*Citigroup*, 51 Misc. 3d at 288; *Countrywide II*, 127 A.D.3d at 126.  The evidence establishes that

each Trustee accepted the RMBS Settlement Agreement because it determined, in good faith,

that this decision was in the best interests of each Accepting Trust, following their review and

assessment of the RMBS Settlement Agreement and Judge Fitzgerald's analyses.  U.S. Bank Aff.

¶ 34.[27]  Indeed, no objector is asserting that the Trustees did not act in good faith.  To the

contrary, the only Investors who have articulated their views to this Court concerning the RMBS

Settlement Agreement – the Institutional Investors – emphatically support the settlement and all

of the relief sought in the Motion.  This constitutes compelling evidence of the Trustees' good

faith in accepting the RMBS Settlement Agreement.

79.    Courts, including this one, that have analyzed trustees' good faith in the virtually

identical circumstances of global RMBS settlements and utilizing virtually identical practices,

including but not limited to, a global notice program, and retention of well-respected experts,

---

[27] By contrast, there is no evidence from which the Court could conclude the Trustees acted in bad faith, and good faith is presumed absent evidence to the contrary.  In the analogous context of corporate boards, "directors are presumed to have acted properly and in good faith, and are called to account for their actions only when they are shown to have engaged in self-dealing or fraud, or to have acted in bad faith." *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 702 (2d Cir. 1980); *see also Citigroup*, 51 Misc. 3d. at 273 (finding "no indication that, in approving the [P]roposed [S]ettlement, [the Trustees] acted in their self-interest or in the interests of [Citigroup] or of the [Institutional Investors], rather than in the interests of the investors generally.").  Similarly, there are no allegations (much less any evidence) that the Trustees have acted in bad faith, despite widespread publicity of the RMBS Settlement Agreement by the media and by the Trustees themselves.

have uniformly have concluded that the trustees acted in good faith.  *See ResCap*, 497 B.R. 720*;*

*JPMorgan*, 2016 WL 9110399; *Citigroup*, 51 Misc. 3d 273; and *Countrywide II*, 127 A.D.3d

120.  Accordingly, the same conclusion is warranted here.

80.    In prior global settlements, courts have rejected assertions by objecting investors

that the trustees had conflicts of interest.  *See JPMorgan*, 2016 WL 9110399 at *9 ("Here, as in

*Countrywide* and *Citigroup*, there is no indication in the record that, in approving the Proposed

Settlement, the Trustees acted in their self-interest or in the interests of JPMorgan or of the

Institutional Investors, rather than in the interests of the investors generally. (*See Countrywide*,

127 A.D. 3d at 126; *Citigroup*, 51 Misc. 3d at 284-85)).  Given the similarity of circumstances

and conduct, the same conclusion is warranted here.

81.    With the presumption of good faith, the absence of any claim that the Trustees did

not act in good faith, the absence of any facts suggesting a lack of good faith by any of the

Trustees, and their participation in a thorough process that demonstrates their good faith, the

Court should find that the Trustees acted in good faith in determining to accept the RMBS

Settlement Agreement for the Accepting Trusts.

### B.    The Court Should Enter a Proposed Order Barring Certain Investor Claims Against the Trustees

82.    The Trustees are also entitled to an order barring any Investor from asserting

claims against the Trustees concerning the Trustees' evaluation and acceptance of the RMBS

Settlement Agreement.  In the only two global settlement proceedings since the First Department

established the *Countrywide* standard, the courts have entered near-verbatim bar orders.  *See*

*JPMorgan*, 2016 WL 9110399 at *3–4 ("Certificateholders, Noteholders, and any other parties

claiming rights in any Accepting Trusts are barred from asserting claims against any Trustee

with respect to such Trustee's evaluation and acceptance of the Settlement Agreement and

implementation of the Settlement Agreement, so long as such implementation is in accordance

with the terms of the Settlement Agreement."); *Citigroup*, 51 Misc. 3d at 277 (same).

83.     The Motion and the RMBS Settlement Agreement clearly contemplate that the

Trustees would receive the bar relief that they now seek.  The Motion cautions Investors and

other parties-in-interest that:

> Pursuant to Section 2.07 of the RMBS Settlement Agreement,
> the Plan Administrator agreed to request the entry of an order
> barring Investors in the Accepting Trusts from asserting claims
> against the Accepting Trustees with respect to their evaluation
> and acceptance of the RMBS Settlement Agreement and
> implementation of the RMBS Settlement Agreement in
> accordance with its terms.

Motion at ¶ 45.

84.     The language of the Proposed Order to the Motion also clearly contemplates that

the Accepting Trustees would receive the bar relief that they now seek.  *See* Proposed Order,

Finding G ("Investors in the Accepting Trusts shall be barred from asserting claims against the

Accepting Trustees with respect to their evaluation and acceptance of the RMBS Settlement

Agreement and implementation of the RMBS Settlement Agreement in accordance with its

terms.")

85.     In the notice of the Motion, the Investors were further notified that:

> objections, if any, to the Motion (including approval of the Trustee
> Findings and the Debtors' Findings) must be made in writing, state
> with particularity the grounds therefor, conform to the Federal
> Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for
> the Southern District of New York, be filed electronically in text
> searchable portable document format (PDF) with the Court . . .  so
> as to be actually filed and received by no later than **June 22,**
> **2017 at 12:00 noon (EDT)** (the "Objection Deadline").
> **PLEASE TAKE FURTHER NOTICE** that the relief requested
> in the Motion may be granted without a hearing if no objection
> is timely filed and served as set forth above and in accordance

with the order,

Notice of the Motion at 3 (emphasis in original).

86.     The Bar Order relief is ripe, given that more than three months have passed since

the RMBS Settlement Agreement was announced and more than two months have passed since

the Motion was filed and the Notice of the Motion disseminated.  During that time, the Trustees

made extensive efforts to publicize their evaluation and acceptance of the RMBS Settlement

Agreement and to solicit the views of Investors.  In light of the Trustees' efforts and the robust

record of good faith and reasonableness the Trustees have presented, it would be fundamentally

unfair to the Trustees to face any future claims concerning their evaluation and acceptance of the

RMBS Settlement Agreement from Investors who chose not to avail themselves of an

opportunity to be heard in connection with the Motion.

87.     The reason why the Trustees bargained for the right to condition their acceptance

of the RMBS Settlement Agreement on entry by the Court of the Trustee Findings is to obtain

protection for the Trustees before they commit themselves irrevocably to a course of action so

that they will not face liability after they act.  The appropriateness of entry of the Trustee Relief

is well established and is particularly appropriate, given that the agreements governing the trusts

provide that each applicable Trustee is not obligated to risk or expend its own funds in

connection with performing its duties. *See* TMI Aff., Exh. 2, at § 6.01(c)(iii); *see also In re*

*Residential Capital, LLC*, 497 B.R. 720, 731 n.8, 753 (Bankr. S.D.N.Y. 2013) (holding that the

FGIC Trustees demonstrated that the findings contemplated in the settlement agreement were

supported by a preponderance of the evidence and necessary and appropriate in the

circumstances in light of the fact that the FGIC Trustees "refused to bear the risk of claims by

investors that the FGIC Trustees failed to act reasonably and in good faith in entering into the

41

Settlement Agreement, or that the notice of the Settlement Agreement provided by the FGIC

Trustees was insufficient"); *see also In re Mal Dunn Assocs., Inc.* 406 B.R. 622, 628-34 (Bankr.

S.D.N.Y. 2009) (citing *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005))

(holding that findings of fact and releases in the global settlement, plan, and confirmation orders

apply to state court action).  Consistent with those provisions, a bar order ensures the Trustees

that their efforts to act in the best interests of the Accepting Trusts will not cause them to risk or

expend their own funds by facing litigation from silent objecting Investors lying in wait.

88.      As courts have recognized "[w]ithout the ability to limit the liability of settling

defendants through bar orders 'it is likely that no settlements could be reached.'"  *In re*

*Worldcom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004) (*quoting In re Ivan F.*

*Boesky Sec. Litig.*, 948 F.2d 1358, 1369 (2d Cir. 1991)).  Similarly, courts have long recognized

the power of the court to impose time limits within which trust claims must be filed.  *In re*

*Lawyers Title & Guar. Co.*, 162 Misc. 188, 191 (Sup. Ct. N.Y.  Special Term 1937) ("this court

may fix a time within which all trust claims must be filed or else suffer the risk of being barred.

The power of a court of equity to issue a so-called 'bar order' is well recognized.").

89.      For the same reasons, the Trustees are also entitled to an order barring Investors

from asserting claims against the Trustees relating to the Trustees' implementation of the RMBS

Settlement Agreement *according to its terms.*  To be clear, the Trustees are not asking the Court

to issue an order that the Trustees are immune from liability if they breach the RMBS Settlement

Agreement during their implementation of it.  To the contrary, the Trustees merely seek an order

providing that, when they do exactly what the RMBS Settlement Agreement requires them to do,

they may not be sued for doing it.

90.     The Bar Order is both reasonable and limited.  The RMBS Settlement Agreement
is not self-executing; instead, there are several post-closing conditions (such as obtaining
REMIC Approval and determination of the Final Allocated Percentages) that must be made to
implement the RMBS Settlement Agreement according to its terms.  The terms of the RMBS
Settlement Agreement, including these specific limited steps that the Trustees have agreed to
perform, have been public for many months.  If Investors believed the steps for implementation
of the RMBS Settlement Agreement were unreasonable or would violate a Trustee duty, they
were obligated to raise that concern by the June 22nd deadline.  Because the Accepting Trustees
have acted reasonably and in good faith in accepting the RMBS Settlement Agreement, it would
be manifestly unreasonable to permit Investors to attack them for performing that contract
according to its terms.

91.     The Bar Order benefits not only the Trustees but Investors as well.  During the
hearing concerning the approval of the Citigroup RMBS Settlement, counsel for some of the
Institutional Investors explained why:

> These pooling and servicing agreements all include provisions
> stating that at section 8.01, you've seen that excerpted there, that
> the trustees are not required to incur any financial risk and are to
> be indemnified against financial risks by a number of parties
> including the trusts, as a backstop, because they're not supposed to
> take risk.  When the expenses of the litigation -- sorry, when the
> expenses of the investigation are borne by Citigroup for that
> purpose, it is beneficial to the trusts, because otherwise the trusts
> would have paid it.

*In the Matter of U.S. Bank Nat'l Ass'n*, No. 653902/2014, Tr. 29:14–24 (N.Y. Sup. Ct., Nov. 6,
2015).

92.     Counsel for the Institutional Investors continued:

> that's exactly why for purposes of the bar order, the bar order
> makes sense.  On this record, the Court has abundant evidence
> from which it can find that the trustees have acted reasonably and

> in good faith in connection with their evaluation and acceptance of
> the settlement.  Once that finding of good faith exists, they are
> protected from liability.  If they are then sued in some other
> jurisdiction, ostensibly on account of this settlement, when
> certificateholders had the opportunity to appear here, that is
> injurious not just to the trustees, but to the trusts and their investors
> who then will have to indemnify the trustees for the costs of
> defending actions that the Court has found to be reasonable and in
> good faith and not subjecting them to liability.

*Id.* at 30:6–20.

93.    Counsel for the Institutional Investors concluded by saying:

> Assuming the Court finds in favor of the trustees, it is in the
> interest of all certificate-holders to ensure that there is no further
> litigation about the settlement.

*Id.* at 30:24–31:1.

## **CONCLUSION**

94.    As demonstrated by the Trustees' extensive and thorough process of reviewing

the RMBS Settlement Agreement, aided by experienced counsel and a highly respected expert,

the scope of the information reviewed, and the affirmative evidence that the Trustees acted in

good faith and did not abuse their discretion, this Court should enter an order providing for

Trustee Relief.

Dated: New York, New York
June 29, 2017

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Michael S. Kraut*
Michael S. Kraut
James O. Moore
101 Park Avenue
New York, New York 10178
(212) 309-6000

*Attorneys for U.S. Bank National Association,*
*acting solely in its trustee capacity of certain*
*Accepting Trusts*

Dated: Chicago, Illinois
June 29, 2017

CHAPMAN AND CUTLER LLP

*/s/ Franklin H. Top, III*
Franklin H. Top, III (*pro hac vice*)
Scott A. Lewis (*pro hac vice*)
111 West Monroe Street
Chicago, IL 60603-4080
(312) 845-3000

*Attorneys for U.S. Bank National Association,*
*acting solely in its trustee capacity of certain*
*Accepting Trusts*

Dated: Atlanta, Georgia
June 29, 2017

ALSTON & BIRD LLP
*/s/ John C. Weitnauer*
John C. Weitnauer (*pro hac vice*)
1201 West Peachtree Street
Atlanta, Georgia 30309

*Attorneys for Wilmington Trust Company and*
*Wilmington Trust, National Association, each*
*acting solely in its trustee capacity of certain*
*Accepting Trusts*

Dated:  New York, New York          SEWARD & KISSEL LLP
        June 29, 2017

                                    */s/ M. William Munno*
                                    M. William Munno
                                    Daniel E. Guzmán
                                    One Battery Park Plaza
                                    New York, New York 10004

                                    *Attorneys for TMI Trust Company, successor to
                                    Law Debenture Trust Company of New York,
                                    acting solely in its trustee capacity of certain
                                    Accepting Trusts*

Dated:  New York, New York          NIXON PEABODY LLP
        June 29, 2017

                                    */s/ Dennis Drebsky*
                                    Dennis Drebsky
                                    Amanda Darwin
                                    437 Madison Avenue
                                    New York, New York 10022

                                    *Attorneys for Deutsche Bank National Trust
                                    Company, acting solely in its trustee capacity of
                                    a certain Accepting Trust*