UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                )

In re                                    )        Chapter 11 Case No.

Lehman Brothers Holdings Inc., et al.,   )        08-13555 (SCC)

        Debtors.                   )        Jointly Administered

------------------------------------------------------------x

**AFFIDAVIT OF BRAD ZWETZIG IN CONNECTION WITH**
**RMBS TRUSTEES' STATEMENT IN SUPPORT OF LBHI DEBTORS' 9019 MOTION**

STATE OF ILLINOIS    )
                              )  ss.:
COUNTY OF COOK     )

BRAD ZWETZIG, being duly sworn, deposes and says:

1.      I am a Vice President of U.S. Bank National Association ("U.S. Bank"). I have been employed by U.S. Bank since February 1, 2011. I have personal knowledge of the facts set forth herein, except as otherwise noted. I offer this affidavit in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C § 105(A) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting Related Relief* [Docket No. 55232] (the "Motion"). Specifically, I offer this affidavit in support of the Trustee Findings set forth in Exhibit F of the RMBS Settlement Agreement.[1]

---

[1] Any terms not defined here are defined in RMBS Settlement Agreement.

2.      U.S. Bank acts as a trustee, indenture trustee or successor trustee, as applicable, for certain residential mortgage-backed securitization ("RMBS") trusts that have asserted claims in the above-captioned bankruptcy cases. The RMBS trusts are governed, in part, by Trust Agreements, Indentures and/or other agreements (the "Governing Agreements") that relate to securitization transactions that were sponsored by a subsidiary of Lehman Brothers Holdings Inc. ("LBHI").

3.      I understand that, following the commencement of the bankruptcy cases involving LBHI and certain affiliates (the "LBHI Debtors"), U.S. Bank filed timely proofs of claim for claims including breaches of representations and warranties made by the LBHI Debtors (the "U.S. Bank Claims") under the terms of the Governing Agreements. Attached hereto as **Exhibit 1** is an example of one of the U.S. Bank Claims. U.S. Bank has actively pursued the U.S. Bank Claims against the LBHI Debtors.

4.      In or about December 2010, U.S. Bank acquired Bank of America's U.S. and European CDO, CMBS, RMBS and ABS securitization trust administration platform, which included administration of certain RMBS trusts sponsored by the LBHI Debtors or their affiliates. U.S. Bank has actively pursued against the LBHI Debtors the claims that were the subject of proofs of claim that Bank of America had timely filed on behalf of RMBS trusts that it had administered (the "BoA Claims" and together with the U.S. Bank Claims, the "Claims").

5.      To assist with their prosecution of the Claims, the Trustees engaged the services of competent and experienced counsel. U.S. Bank retained Chapman and Cutler LLP, Morgan, Lewis & Bockius LLP, and Holwell Shuster & Goldberg LLP, respectively, to advise and represent U.S. Bank in connection with relevant issues, including bankruptcy law, indenture trustee law, repurchase claims, and settlements of representation and warranty liability. The

2

Trustees also retained highly skilled financial expert advisors, including Duff & Phelps LLC, and re-underwriting experts to assist in prosecuting the Claims.

### A. October 2015 Settlement Agreement

6. I understand that on October 26, 2015, the Institutional Investors[2] and the LBHI Debtors informed counsel for the Trustees that they had reached an agreement to resolve the Trustees' Claims against the LBHI Debtors (the "October 2015 Settlement Agreement"), which they wanted to present to the Trustees for their consideration. A true and correct copy of the October 2015 Settlement Agreement is attached hereto as **Exhibit 2**.

7. The Institutional Investors and the LBHI Debtors agreed to share the October 2015 Settlement Agreement with the Trustees on the condition that the Trustees agreed to keep the agreement confidential. After agreeing to the confidentiality pre-requisite, the Trustees received a copy of the October 2015 Settlement Agreement in late October 2015.

8. Between November 2015 and early February 2016, U.S. Bank worked with its counsel and legal and financial consulting experts to evaluate the October 2015 Settlement Agreement. In February 2016, counsel for the Trustees conveyed to the LBHI Debtors, based on preliminary work performed by their consulting experts, the number of trusts for which the Trustees might be advised to accept the settlement. Thereafter, and prior to the Trustees' acceptance deadline, the LBHI Debtors formally withdrew the October 2015 Settlement Agreement.

9. I understand that following the LBHI Debtors' withdrawal of the October 2015 Settlement Agreement, the LBHI Debtors and the Institutional Investors participated in

---

[2] The Institutional Investors at that time comprised a group of institutional investors who are represented by Gibbs & Bruns LLP.

3

mediation. At the request of the mediator, the Trustees provided certain information to the mediator, on a confidential basis, to enable him to facilitate a revised settlement.

**B.      November 2016 Settlement Agreement**

10.     On November 30, 2016, the LBHI Debtors sent to the Trustees on a confidential basis a settlement agreement that the Institutional Investors and the LBHI Debtors had executed (the "November 2016 Settlement Agreement") for consideration by the RMBS Trustees. Attached as **Exhibit 3** is a true and correct copy of the November 2016 Settlement Agreement.

11.     The RMBS Trustees were not authorized to disclose the November 2016 Settlement Agreement to Investors or other third parties without the LBHI Debtors' prior written consent. In this affidavit, I use the term "Investor" to mean any of the following: certificateholders, noteholders, beneficial owners of certificates, and/or investment managers or advisors acting on behalf of beneficial owners of certificates.

**i.      Appointment of Responsible Individuals**

12.     U.S. Bank selected internal trustee personnel to manage the process of evaluating the November 2016 Settlement Agreement and then the RMBS Settlement Agreement (the "Working Group"). Timothy Pillar (Senior Vice President), David Hagens (Associate General Counsel), and I were the members of the U.S. Bank Working Group. The Working Group's responsibilities included selecting and working with experts, meeting or speaking with counsel for the Trustees on a frequent basis, and facilitating requests for, and delivery of, relevant data and information needed to evaluate the agreements.

13.     In addition to forming a Working Group, U.S. Bank identified senior corporate trust personnel to make the final decision whether or not to accept or reject the settlement offer as to the affected Trusts that U.S. Bank administers (the "Trustee Committee"). For U.S. Bank, the Trustee Committee members were Senior Vice Presidents Edward Frere, Jr., Eve Kaplan,

Scott Strodthoff, and Cindy Woodward. Members of the Trustee Committee met with the Working Group and counsel on a monthly basis and more frequently as the deadline for the Trustees to accept or reject the RMBS Settlement Agreement approached.

### ii. The Expert Selection Process

14. The Trustees decided to retain an expert to provide an independent opinion on the reasonableness of the November 2016 Settlement Agreement as a means of resolving the Trustees' claims in the LBHI Debtors' bankruptcy cases.

15. The Trustees considered a variety of factors in selecting an expert, including: (a) credentials, specifically significant bankruptcy court experience; (b) experience in evaluating the reasonableness of settlements; (c) experience with settlements in complex bankruptcy cases; (d) testifying experience; (e) availability; and (f) absence of conflicts.

16. After interviewing several candidates, and taking these factors into consideration, the Trustees selected the Honorable Judge Judith K. Fitzgerald (Ret.) to serve as the expert. Judge Fitzgerald's strong credentials are set forth in Exhibit 1 to the expert report that she provided to the Trustees, which report is attached as Exhibit 2 to her declaration that is also being filed today in support of the Motion.

17. The Trustees provided a copy of the November 2016 Settlement Agreement to Judge Fitzgerald who, in turn, provided comments to the Trustees, including a few specific provisions that she believed needed to be changed to make the offer reasonable. As one example, as she explained in her expert report, Judge Fitzgerald believed that the November 2016 Settlement Agreement needed to be modified to remove restrictions on the Trustees' ability to disclose the terms of a settlement offer to Investors and solicit their views about the offer.

18. The Trustees provided the LBHI Debtors with Judge Fitzgerald's comments and other feedback, which led ultimately to a March 2017 modification of the November 2016

Settlement Agreement. In a letter dated March 17, 2017, the Institutional Investors sent to the Trustees a modified version of the November 2016 Settlement Agreement (the "RMBS Settlement Agreement") for their review and consideration. The revisions to the RMBS Settlement Agreement addressed the issues raised by Judge Fitzgerald. Attached hereto as **Exhibit 4** is a true and correct copy of the March 17, 2017 letter that the Institutional Investors sent to the Trustees. Attached hereto as **Exhibit 5** is a true and correct copy of the RMBS Settlement Agreement that accompanied Exhibit 4.

19. In March 2017, counsel for the Trustees requested that Judge Fitzgerald provide an independent opinion on the reasonableness of the RMBS Settlement Agreement as a means of resolving the RMBS Trustees' claims in the LBHI Debtors' bankruptcy cases.

20. The RMBS Settlement Agreement afforded the Trustees until June 1, 2017 to accept or reject it. *See* Exh. 5, § 1.01.

### iii. The Trustees' Communications with Investors

21. On March 20, 2017, the Trustees sent a notice to Investors in the Covered Trusts informing them about the RMBS Settlement Agreement (the "March 2017 Notice"). Attached hereto as **Exhibit 6** is a true and correct copy of the March 2017 Notice. The March 2017 Notice referenced certain terms of the RMBS Settlement Agreement and urged all interested persons to carefully review the RMBS Settlement Agreement. *See* Exh. 6 at 3. The March 2017 Notice also informed Investors that the Trustees had retained Judge Fitzgerald to advise them in their evaluation of the RMBS Settlement Agreement, and further informed Investors that if they wished to have their views concerning whether the Trustees should accept or reject the RMBS Settlement Agreement considered by the Trustees and/or Judge Fitzgerald, the Investors should contact the Trustees immediately, and certainly no later than May 5, 2017. *See* Exh. 6 at 4–5.

6

22. In order to deliver the March 2017 Notice and to facilitate the Trustees' future communications with Investors, the Trustees retained Garden City Group, LLC ("GCG") to establish a website (the "Settlement Website") and publicly disseminate the Trustees' notices. At the Trustees' direction, I understand that GCG disseminated the March 2017 Notice to certificateholders in the Covered Trusts and posted on the Settlement Website: (i) the March 2017 Notice, (ii) the RMBS Settlement Agreement, and (iii) the March 17, 2017 letter from the Institutional Investors urging the Trustees to accept it. In addition, U.S. Bank caused the March 2017 Notice to be posted on the websites for the applicable securities administrators.

23. Apart from the Trustees' efforts, the RMBS Settlement Agreement was publicized in other ways. For example, counsel for the Institutional Investors published a press release on April 3, 2017, a true and correct copy of which is attached hereto as **Exhibit 7**. Media sources published articles (collectively, the "Articles") concerning the settlement. A true and correct copy of one example of these articles is attached hereto as **Exhibit 8**.

24. Each of the Trustees' notices mentioned that U.S. Bank had established a dedicated electronic mailbox at LehmanRMBSSettlementInvestorInquiries@usbank.com for Investors to contact U.S. Bank regarding the RMBS Settlement Agreement. Following the Trustees' efforts to notify Investors of their receipt of the RMBS Settlement Agreement, some Investors began contacting U.S. Bank to share their views. Investors wrote letters expressing their views of the RMBS Settlement Agreement, and some Investors initiated communications about possible directions to U.S. Bank concerning potential claims against the LBHI Debtors. Some of the communications favored the settlement, while others opposed it. Upon receipt of written input from Investors, U.S. Bank asked the Investors to verify their holdings, asked Duff and Phelps to provide information concerning the Investors' beneficial ownership stake in the

7

applicable trust(s), and reviewed carefully the Investors' correspondence. U.S. Bank also promptly provided the written input to Judge Fitzgerald for her consideration.

25. Some Investors also posed questions and/or requests for additional information. I personally responded to e-mails that Investors sent to the dedicated electronic mailbox mentioned above. In response to inquiries from Investors, the Trustees, through GCG's mailing and posting on the Settlement Website, disseminated an April 21, 2017 notice (the "April 21, 2017 Notice") that provided additional information directly responsive to those inquiries about the RMBS Settlement Agreement and other related topics. In addition, U.S. Bank caused the April 21, 2017 Notice to be posted on the websites for the applicable securities administrators. Attached hereto as **Exhibit 9** is a true and correct copy of the April 21, 2017 Notice. The April 21, 2017 Notice also reminded Investors again to contact the Trustees "immediately and certainly no later than May 5, 2017" if they had views that they wanted the Trustees and/or their experts to consider when deciding whether to accept or reject the RMBS Settlement Agreement. *See* Exh. 9, pp. 5-6.

26. The Trustees disseminated, again through GCG's mailing and posting on the Settlement Website a third notice on April 27, 2017 (the "April 27, 2017 Notice"), alerting certificateholders and any interested parties of the LBHI Debtors' filing of the Motion. In addition, U.S. Bank caused the April 27, 2017 Notice to be posted on the websites for the applicable securities administrators. Attached hereto as **Exhibit 10** is a true and correct copy of the April 27, 2017 Notice. The April 27, 2017 Notice further publicized that a hearing on the Motion is scheduled to occur on July 6, 2017 before this Court. *See* Exh. 13, at 2.

27. Some of the Investors who sent letters to U.S. Bank on May 5, 2017 concerning the RMBS Settlement Agreement requested to speak with U.S. Bank or its counsel, which U.S.

Bank accommodated. In addition, one group of Investors (the "Investor Group") sent requests for additional information in its May 5th letter and in a follow-up e-mail to counsel for the Trustees and the LBHI Debtors on May 15, 2017. Although I did not participate, I understand that counsel for U.S. Bank participated in a number of telephone calls with the Investor Group's counsel, and counsel for U.S. Bank kept me closely informed about those discussions. After receiving each of the Investor Group's informal requests for documents and information, the Working Group met with counsel to consider what responsive information the Trustees could share with Investors, in light of at least the following considerations: privacy laws, confidentiality restrictions imposed on the Trustees, fair disclosure, and the risk of prejudicing the Trustees' ability to maximize the value of their Claims. Following those discussions, and in response to the May 5th and May 15th requests, the Trustees posted additional information on the Settlement Website. In a June 1, 2017 notice to Investors that is discussed below, the Trustees flagged for Investors that this additional information had been posted on the Settlement Website.

      **iv.**      **The Trustees' Coordination and Facilitation of Judge Fitzgerald's Evaluation**

28. Throughout the evaluation process, the Trustees took steps to enable Judge Fitzgerald to perform a thorough and robust analysis. The Trustees and/or their counsel participated in multiple in-person meetings, weekly scheduled conference calls, and many additional ad hoc telephone calls. Through these frequent communications, the Trustees fulfilled Judge Fitzgerald's requests for information, answered questions she raised, and monitored her progress.

29. In response to requests posed by Judge Fitzgerald, the Trustees provided her with, among other documents and information: representative copies of the Governing Agreements,

9

summaries of certain agreement provisions, examples of the types of alleged breaches of representations and warranties, information related to the Protocol, the costs required to comply with the Protocol, and relevant case law concerning, among other things, settlements, claims objections, and claims estimations. The materials that the Trustees provided to Judge Fitzgerald consisted of thousands of pages of documents and data. The Trustees also facilitated a conference call between Judge Fitzgerald and the Trustees' expert financial consultants, Duff and Phelps, to address and answer her questions with respect to the types of claims asserted, the evidentiary support for the claims, and the potential value thereof.

30. In addition to the regular conference calls discussed above, Judge Fitzgerald participated in four in-person meetings with counsel for the Trustees. I participated telephonically in a May 22, 2017 meeting among the Trustees, their counsel, Duff and Phelps, and Judge Fitzgerald and one of her colleagues. During that meeting, Judge Fitzgerald walked the Trustees through her analysis and then-tentative conclusions and answered questions asked by those in attendance.

31. After completing her analysis, Judge Fitzgerald provided a written report to the Trustees, a copy of which is annexed to her declaration as Exhibit 2. On page 10 of her report, Judge Fitzgerald set forth a number of opinions, including her opinion "to a reasonable degree of professional certainty, that the RMBS Settlement sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement, in the circumstances of this Bankruptcy Proceeding, would be appropriate" for all of the Trusts for which the Trustees accepted the RMBS Settlement Agreement (the "Accepting Trusts"). In footnotes 3 and 70 of her report, Judge Fitzgerald recommended that U.S. Bank not accept the RMBS Settlement Agreement with respect to four trusts that are administered by U.S. Bank.

10

These trusts would not be receiving distributions under the Settlement Agreement because these trusts did not assert any claims against LBHI.

32. In her report, Judge Fitzgerald recognized that a small number of Investors had offered to direct the Trustees to reject the RMBS Settlement Agreement as to trusts in which they held securities but had not offered to provide a satisfactory indemnity to the Trustees. On page 41 of her report, Judge Fitzgerald opined that a direction without a satisfactory indemnity was not an adequate reason for a Trustee to opt out of the RMBS Settlement Agreement "that provides the advantages that the RMBS Settlement offers and to return, instead, to the lengthy, expensive, long-delayed process encompassed in the Protocol and the uncertainty of an alternative process or better outcome, which could create unnecessary risk to the RMBS Trustees."

33. Within a few days of delivering her report to the Trustees, but before June 1, 2017, U.S. Bank received additional correspondence from Investors, which it reviewed and passed along to Judge Fitzgerald. As a result, Judge Fitzgerald issued a supplement to her expert report in which she confirmed that she had reviewed the additional correspondence, which had not caused her to change any of her opinions or recommendations.

     **v.**     **The Trustees' Determination**

34. In the days leading up to the June 1, 2017 date to accept or reject the RMBS Settlement Agreement, members of both the Trustee Committee and the Working Group met with counsel multiple times, including conference calls on May 15th, 25th, 26th, and 31st. During these meetings, participants discussed the terms of the RMBS Settlement Agreement and Judge Fitzgerald's report and considered other factors that could be relevant to whether it was in the best interest of each Covered RMBS Trusts to accept the RMBS Settlement Agreement. These factors included Investor feedback, the voting rights held by each Investor who supported

or opposed the RMBS Settlement Agreement, and the benefits and risks to the Claims if the Trustees rejected the settlement offer.  During the meetings, I, other members of the Working Group, and the Trustee Committee members had an opportunity to ask questions of counsel, and we did so.  After considering the opinion of Judge Fitzgerald, as well as feedback from several Investors, U.S. Bank determined to accept the RMBS Settlement Agreement with respect to 152 of the 156 Covered RMBS Trusts that it administers.  Attached hereto as **Exhibit 11** is a true and correct copy of the fully executed RMBS Settlement Agreement.

        C.        **The Trustees' Notice to Investors of their Acceptance**

        35.        Immediately upon accepting the RMBS Settlement Agreement for the Accepting Trusts on June 1, 2017, the Trustees issued a notice to Investors and other interested parties (the "June 2017 Notice").  The June 2017 Notice informed Investors of the Trustees' decision to accept the RMBS Settlement Agreement with respect to 238 Covered Trusts.  The June 2017 Notice also reminded Investors that June 22, 2017 was the deadline for responses to the Motion, and for any Investors to provide direction and indemnity acceptable to the Trustees directing the Trustees to terminate the RMBS Settlement Agreement as to a specific Accepting Trust.  At the Trustees' direction, I understand that GCG disseminated the June 2017 Notice to certificateholders in the Covered Trusts and posted the June 2017 Notice on the Settlement Website.  In addition, U.S. Bank caused the June 2017 Notice to be posted on the websites for the applicable securities administrators.

        36.        U.S. Bank did not accept any directions to terminate the RMBS Settlement Agreement as to any Accepting Trust.  One of the trusts that was an Accepting Trust, SASCO 2004-NP1 terminated within the past week.  Accordingly, the RMBS Settlement Agreement applies to 151 Covered Trusts that U.S. Bank administers.

Brad Zwetzig

Sworn to before me this
28th day of June, 2017

_____
Notary Public

OFFICIAL SEAL
CHRISTOPHER J NUXOLL
Notary Public - State of Illinois
My Commission Expires Apr 15, 2018

13