# EXHIBIT 1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings, Inc. | 08-13555 |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000020595

0000020595

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Timothy Pillar, VP
Corporate Trust Services
U.S. Bank National Association
EP-MN-WS1D
60 Livingston Avenue
St. Paul, MN 55107-2292

Notices to:
James E. Spiotto
Ann E. Acker
Franklin H. Top, III
Chapman and Cutler LLP
111 West Monroe St., 18th Fl.
Chicago, IL 60603
Telephone: (312)-845-3000

Telephone number: (651) 495-3958        Email Address: timothy.pillar@usbank.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
    (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)
Timothy Pillar, VP
Corporate Trust Services
U.S. Bank National Association
EP-MN-WS1D, 60 Livingston Avenue
St. Paul, MN 55107-2292

Telephone number: (651) 495-3958        Email Address: timothy.pillar@usbank.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

| | |
|---|---|
| **1.** Amount of Claim as of Date Case Filed: $ See Addendum _____<br><br>If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br>If all or part of your claim is entitled to priority, complete Item 5.<br>If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.<br>☐ Check this box if all or part of your claim is based on a Derivative Contract.*<br>☐ Check this box if all or part of your claim is based on a Guarantee.*<br>***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.***<br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee. | **5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br><br>Amount entitled to priority: |
| **2.** Basis for Claim: See Addendum _____<br>(See instruction #2 on reverse side.) | |
| **3.** Last four digits of any number by which creditor identifies debtor: _____<br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| **4.** Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br>Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other<br>Describe: _____<br>Value of Property: $_____ Annual Interest Rate _____%<br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br>$_____ Basis for perfection: _____<br>Amount of Secured Claim: $_____ Amount Unsecured: $_____ | $_____ |
| **6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____<br>(See instruction #6 on reverse side.) | |

**7.** **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:          **The attached Addendum is hereby**
          See Addendum          **incorporated by reference.**

FOR COURT USE ONLY
**FILED / RECEIVED**

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 9/18/09 | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

2684770

ADDENDUM TO PROOF OF CLAIM OF
U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES

## FILED AGAINST LEHMAN BROTHERS HOLDINGS INC.

### CASE NO. 08-13555 PENDING IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1.    *Name and Address of Creditor and Basis for Claim.*  U.S. Bank National

Association, a national banking association having a corporate trust office at 60 Livingston

Avenue, EP-MN-WS1D, St. Paul, MN  55107-2292, serves as trustee (the *"Trustee"*) under the

Trust Agreements (identified in the attached Schedule A) in respect of the Trusts (identified in

the attached Schedule A) and makes and files this proof of claim against Lehman Brothers

Holdings Inc. (the *"Debtor"*) pursuant to 11 U.S.C. § 501 of the United States Bankruptcy Code

and Federal Rule of Bankruptcy Procedure 3003.

This Proof of Claim relates to the securitization of mortgage loans under the Lehman XS

Trust series of trusts.  The Trustee is trustee under certain Trust Agreements by and between

Structured Asset Securities Corporation as Depositor and U.S. Bank National Association as

Trustee (the *"Trust Agreement"*), with respect to the relevant Trusts (the *"Trusts"*) as identified

in the attached Schedule A (the trusts are bankruptcy-remote mortgage loan securitization trusts

that hold mortgage loans purchased by the Debtor and sold and/or assigned to the Trusts).  Under

the terms of the Trust Agreements certain mortgage loans were purchased by the Trusts using

funds obtained from investors through the issuance of certificates.

The mortgage loans (the *"Mortgage Loans"*) giving rise to this Proof of Claim were

originated by various third parties (collectively, the *"Originator"*), and were purchased by

Lehman Brothers Bank F.S.B. (the *"Initial Purchaser"*)[1] under the terms of loan purchase and warranty agreements (or similar agreements) (the *"Purchase Agreement"*). Thereafter, the Initial Purchaser assigned these loans for value to Lehman Brothers Holdings, Inc. (the *"Seller"*), who thereafter transferred the Mortgage Loans for value to Structured Asset Securities Corporation (the *"Depositor"*) under the terms of Mortgage Loan Sale and Assignment Agreements (the *"Mortgage Loan Sale Agreements"*). In exchange for the proceeds from the issuance of certificates, the Depositor transferred and conveyed the Mortgage Loans to U.S. Bank National Association as Trustee for the benefit of the holders of the certificates pursuant to the terms of the Trust Agreements. In addition, the Trustee was assigned all of the Depositor's rights under the Mortgage Loan Sale Agreements.

Under the terms of the Trust Agreements and the Mortgage Loan Sale Agreements the Depositor and Seller made certain representations and warranties with respect to the Mortgage Loans to or for the benefit of the Trustee. In the event certain representations and warranties were breached with respect to individual Mortgage Loans which materially and/or adversely affected the value of such Mortgage Loan, the Depositor and/or the Debtor, as Seller, had the obligation to either (a) cure the breach in all material respects, (b) repurchase the Mortgage Loan, or (c) within two years of the Closing Date, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan (the *"Representation and Warranty Claims"*). This Claim is filed as an unsecured and/or administrative expense claims with respect to breaches of these representations and warranties, and alternatively as a secured claim in the event that the securitization transactions are deemed a financing and not a true sale.

---

[1] All claims against the Initial Purchaser are reserved.

On September 15, 2008 (the "*Petition Date*"), the Debtor filed its voluntary petition for relief in this Court, thus commencing the instant chapter 11 case. Affiliates of the Debtor filed voluntary petitions after September 15, 2008.

2.    *Repurchase Obligations.*   Pursuant to the Trust Agreements, the Debtor made certain representations, warranties and covenants about the Mortgage Loans that were subsequently acquired by the Trusts.   If there is a violation of a representation, warranty or covenant with respect to any Mortgage Loan that was sold to the Trust that materially adversely affects the value of such Mortgage Loan or the interest of the Certificateholders therein, the Debtor is obligated to repurchase that Mortgage Loan.

As of the date of this Proof of Claim, the Trustee has been advised that the Debtor's representations, warranties and/or covenants with respect to the Mortgage Loans identified on Schedule B were incorrect or untrue which materially and adversely affect the value of such Mortgage Loans and the interest of the Certificateholders therein and such breaches cannot be or have not been cured.   The total outstanding principal balance of these Mortgage Loans is likewise set forth on Schedule B.   To date, the Debtor has not fulfilled its obligation to repurchase these Mortgage Loans.   As a result of the Debtor's breach of its representations, warranties and/or covenants in respect of these Mortgage Loans and the Debtor's (and Seller's) failure to repurchase them, the Trustee hereby asserts a claim against the Debtor in an amount not less than the repurchase price as and when required by the Trust Agreements and/or the Mortgage Loan Sale Agreements, plus such additional amount for any other breaches of the obligations to repurchase as may exist from time to time plus interest on any past due amount as noted below.   The terms of the Trust Agreements and/or Mortgage Loan Sale Agreements may require other Mortgage Loans be repurchased that the Trustee is not aware of at this time.   The

Trustee reserves the right to amend its Repurchase Claim in the event it becomes aware of other loans that should likewise be repurchased under the terms of the Trust Agreements and/or Mortgage Loan Sale Agreements.

3.      *Obligation to Cure Documentary Exceptions.*  In addition to the foregoing, the Custodians have identified that certain Mortgage Loan files are missing or contain defective documentation.  The Debtor is obligated to correct material defects in the loan files.  Attached as Schedule C is a summary of the principal balance per trust of loan files with documentary defects.  It is not certain at this time whether any of these defects in the Mortgage Loan files will give rise to any loss to the Trusts, although many if not all of these may impair the value of the respective Mortgage Loan or the interest of the holders of the Certificates therein.  As a result, the Trustee asserts a claim up to the lesser of the full principal amount of these Mortgage Loans or the outstanding balance of the Certificates as set forth by trust in Schedule D, plus such additional amounts as may be determined based upon additional documentary exceptions becoming known by the Trustee.

Additional Mortgage Loan files may contain missing or defective documentation which has not been discovered.  The Trustee asserts a contingent and unliquidated claim with respect to all undiscovered deficiencies with respect to the Mortgage Loan files.

4.      *Early Payment Default.*  After due inquiry of the Master Servicers, the Trustee is not aware of any outstanding Mortgage Loan which is the subject of an early payment default, but reserves the right to assert a claim in the event it ultimately becomes aware of one.

4.a. *Servicer Claims.*  The Trustee asserts a claim against LBHI to the extent that LBHI was a servicer or master servicer for all or some of the Mortgage Loans, for any breaches of any of the agreements, covenants, representations or warranties contained in the servicing agreement.

Any continuing failure to service or master service the loans in strict accordance with the terms of the servicing agreement likewise may give rise to administrative expense claims against LBHI, as servicer. Due to the nature of the servicing roles, claims against the servicer or master servicer may not be discovered by the Trustee for an extended period of time after the breach, and therefore the Trustee continues to investigate whether or not it has any claims with respect to the servicing of the Mortgage Loans. The Trustee asserts claims against LBHI as servicer or master servicer for any failure to assert claims for Representation and Warranty Claims, documentary exceptions and failure to perform any other roles of the servicer under the relevant documents including claims for the cost of any required transfer of servicing of the Mortgage Loans in the future against any insurance or any claims (or claims for failure to assert claims against insurance) that may arise by virtue of action taken by the Debtor to cause any Trust to lose its REMIC status, if any.

5. *Obligations are Continuing.* The claims set forth herein may have grown and may continue to grow after the Petition Date, to the extent permitted by law.

6. *Fees and Expenses and other claims.* The Trustee also asserts a claim for Trustee's fees, expenses and indemnification claims and, as appropriate, a claim for the fees and expenses of the Master Servicer, Custodian, Owner Trustee, Credit Risk Manager or Administrator fees, expenses and indemnification claims incurred by the Trusts, including without limitation, attorneys' and/or agents' fees, all as more fully set forth and described in the Trust Agreements, any indemnification agreements and other related agreements. Further, the Trustee asserts a claim for indemnification on behalf of itself and the Master Servicer, Custodian, and described therein. The Trustee reserves the right to amend this proof of claim in the future to assert a liquidated claim in connection with fees, expenses and indemnification.

7.    *True Sale.*  If the sale of any Mortgage Loans to the Initial Purchaser, any subsequent purchaser or the Trusts are determined to be a financing transaction (rather than a true sale), then the Trustee's claim is in the full amount of the principal and interest due on the Certificates as set forth in the attached Schedule D and secured by collateral set forth in the Granting Clause of the Trust Agreements, including but not limited to the Mortgage Loans.  The Trustee also asserts setoff and recoupment rights with respect to any and all funds held by the Trustee, the Servicer, or the Master Servicer and Trust Administrator, that constitute property of the Debtor (if any), and any and all other setoff and recoupment rights, all of which the Trustee expressly reserves, and asserts a secured claim on account thereof.  The claims asserted in this proof of claim are secured to the extent of the value of any security and setoff rights and unsecured for any deficiency.  The above-described security interest (to the extent that the sale of any Mortgage Loans to any prior Purchaser or the Trusts is determined to be a financing transaction) is perfected by possession and/or control of the above mentioned property, as applicable.

8.    *Date Debt Was Incurred.*  The claims set forth herein relate to multiple securitization transactions commonly known as Lehman XS Trusts entered into over a period of years.  See attached Schedule A.

9.    *If Court Judgment Was Obtained.*  To the best of the Trustee's knowledge, no judgment has been rendered with respect to this claim.

10.    *Classification of Claim.*  The claim is filed as an unsecured claim or as a secured claim as aforesaid.  In addition, the Trustee may have post-petition administrative expense claims against the Debtor.  While the Trustee is not asserting these claims herein, as the sole purpose of this proof of claim is to assert its pre-petition claims against the Debtor, by filing this

proof of claim, the Trustee does not waive any of its post-petition claims against the Debtor, and expressly reserves all of its rights in connection with such claims.

11.    *Documents on Which this Claim is based.*  The documents supporting this Claim includes the Trust Agreements and the Mortgage Loan Sale Agreements.  These documents are voluminous and are available upon request.

12.    *Credits and Setoffs.* Except as provided above, to the knowledge of the undersigned, the claims are not subject to any setoff or counterclaim.  The amount of all payments made prior to the Petition Date have been credited and deducted for the purpose of making this proof of claim, but no other payments have been credited or deducted.

13.    *Reservation of Rights.*  This Proof of Claim is filed under the compulsion of the bar date established in the Debtor's Chapter 11 cases and is filed to protect the Trustee from forfeiture of claims by reason of said bar date.  The filing of this Proof of Claim is not intended to be and should not be deemed or construed as (a) an election of a remedy, (b) a consent by the Trustee to the jurisdiction of the Bankruptcy Court or any other court with respect to the proceedings, if any, commenced, in an case against or otherwise involving the Trustee, (c) a consent by the Trustee to trial by jury as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. §157(e) or otherwise, (d) a waiver of the right of the Trustee to a trial by jury in any matter herein or in any case, controversy or proceeding related hereto, (e) a waiver of the right of the Trustee to have final orders in non-core matters entered only after a de novo review by the United States District Court, (f) a waiver of any right of the Trustee to have the reference withdrawn by the United States District Court in any matter subject to mandatory or discretionary withdrawal, (g) a waiver of any past, present or future event of default in regard to the Trust Agreements, the Mortgage

Loan Sale Agreements or otherwise, (h) a waiver or limitation of any rights of the Trustee, including, without limitation, a waiver of obligations owing to the Trustee, rights, claims, actions, defenses, set-offs or recoupments to which the Trustee is or may be entitled under the Trust Agreements, Mortgage Loan Sale Agreements or otherwise, in law or equity, against the Debtor and/or any subsidiary of affiliate thereof, or any other person, including without limitation, rights against guarantors, officers or directors, or the right to contest the validity or extent of any liens or security interests purported to be equal, senior or inferior to any right, lien or security interest of the Trustee, all of which rights, claims, actions, defenses, set-offs or recoupments are expressly reserved by the Trustee, (i) an admission by the Trustee that any property held by the Debtor (or any subsidiary or affiliate thereof) is property of the estate, or (j) a waiver of any right to recharacterize any of the claims set forth herein as administrative claims.

U.S. Bank National Association, as Trustee, expressly reserves any rights, remedies, liens, interests, priorities, protections and claims which it may have against Debtor or the other Debtors and other parties under the Bankruptcy Code. U.S. Bank National Association, as Trustee, reserves the right to amend, restate and supplement this Proof of Claim or to file additional Proofs of Claim or further pleadings for additional claims against Debtor and its related entities should U.S. Bank National Association, as Trustee, deem it appropriate. U.S. Bank National Association, as Trustee, reserves all rights and claims accruing to it, including, but not limited to, its rights (a) against all other creditors, (b) to update total exposure estimates of liquidated and unliquidated claims, (c) request payment of administrative expenses (whether in respect of claims asserted herein or otherwise), or (d) amend, update, supplement or modify as it believes is appropriate including, but not limited to, fees, expenses and interest.

U.S. Bank as Trustee asserts that any funds, property or collateral held by the Trust or certain funds or property held by Debtor relating to the transaction are not property of the Estate but are property of the Trust or other parties having a beneficial interest therein and that the possession or assertion of rights over such funds, property or collateral by Debtor do not transform such funds, property or collateral into property of the Estate and therefore the Debtor has no legitimate legal right to hold or to prevent the transfer of such funds, property, collateral or the proceeds thereof to third parties under the terms of the relevant documents.

Nothing contained herein shall limit or prejudice the right of the Trustee to file additional claims with respect to any other liability or debt of the Debtor to the Trustee.

To the extent the Debtor has not rejected any particular Agreement that constitutes an executory contract, the Trustee reserves its right to amend, supplement or add to this claim to include any rejection damage claim.

14.    *Notices.* All notices relating to this proof of claim should be sent to:

> James E. Spiotto, Esq.
> Franklin H. Top III, Esq.
> Chapman and Cutler LLP
> 111 West Monroe Street, 18th Floor
> Chicago, IL 60613
>      -and-
> Timothy Pillar, Vice President
> Pamela Weider, Vice President
> Corporate Trust Services
> U.S. Bank National Association
> EP-MN-WS1D
> 60 Livingston Avenue
> St. Paul, MN  55107-2292

[Remainder of the Page Intentionally Blank]

## Schedule A

### Transaction

| | |
|---|---|
| 1 | LXS 2005-2 SUCCESSOR TRUSTEE, Trust Administration Agreement, by and between LaSalle Bank NA, as Predecessor Trustee, and US Bank National Association, as Successor Trustee, dated as of March 28, 2008 |
| 2 | LXS 2005-5N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of October 1, 2005 |
| 3 | LXS 2005-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2005 |
| 4 | LXS 2005-9N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of December 1, 2005 |
| 5 | LXS 2006-10N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 |
| 6 | LXS 2006-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 |
| 7 | LXS 2006-14N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2006 |
| 8 | LXS 2006-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2006 |
| 9 | LXS 2006-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2006 |
| 10 | LXS 2006-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2006 |
| 11 | LXS 2006-3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of February 1, 2006 |
| 12 | LXS 2006-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2006 |

## Schedule A

### Transaction

| | |
|---|---|
| 13 | LXS 2006-8 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2006 |
| 14 | LXS 2006-GP1, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of April 1, 2006 |
| 15 | LXS 2006-GP2, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2006 |
| 16 | LXS 2006-GP3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 |
| 17 | LXS 2006-GP4, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 |
| 18 | LXS 2007-10H - Successor Trustee, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of June 1, 2007 |
| 19 | LXS 2007-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee |
| 20 | LXS 2007-15N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2007 |
| 21 | LXS 2007-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2007 |
| 22 | LXS 2007-17H, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 |
| 23 | LXS 2007-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 |
| 24 | LXS 2007-20N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2007 |

Schedule A

**Transaction**

| | |
|---|---|
| 25 | LXS 2007-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2007 |
| 26 | LXS 2007-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2007 |
| 27 | LXS 2007-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2007 |
| 28 | LXS 2007-9 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2007 |

Schedule B

| | Transaction | Repurchase Claims - total # of loans (as of 7/30/09) | Repurchase Claims -Current Loan Value (as of 7/31/09) |
|---|---|---|---|
| 1 | LXS 2005-2 SUCCESSOR TRUSTEE, Trust Administration Agreement, by and between LaSalle Bank NA, as Predecessor Trustee, and US Bank National Association, as Successor Trustee, dated as of March 28, 2008 | 0 | $0.00 |
| 2 | LXS 2005-5N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of October 1, 2005 | 0 | $0.00 |
| 3 | LXS 2005-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2005 | 0 | $0.00 |
| 4 | LXS 2005-9N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of December 1, 2005 | 0 | $0.00 |
| 5 | LXS 2006-10N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | 0 | $0.00 |
| 6 | LXS 2006-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | 2 | $2,549,999.99 |
| 7 | LXS 2006-14N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2006 | 0 | $0.00 |

2682048

Schedule B

| | Transaction | Repurchase Claims - total # of loans (as of 7/30/09) | Repurchase Claims -Current Loan Value (as of 7/31/09) |
|---|---|---|---|
| 8 | LXS 2006-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2006 | 0 | $0.00 |
| 9 | LXS 2006-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2006 | 0 | $0.00 |
| 10 | LXS 2006-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2006 | 0 | $0.00 |
| 11 | LXS 2006-3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of February 1, 2006 | 2 | $383,999.98 |
| 12 | LXS 2006-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2006 | 0 | $0.00 |
| 13 | LXS 2006-8 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2006 | 2 | $498,038.20 |
| 14 | LXS 2006-GP1, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of April 1, 2006 | 0 | $0.00 |

## Schedule B

| | Transaction | Repurchase Claims - total # of loans (as of 7/30/09) | Repurchase Claims -Current Loan Value (as of 7/31/09) |
|---|---|---|---|
| 15 | LXS 2006-GP2, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2006 | 0 | $0.00 |
| 16 | LXS 2006-GP3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | 0 | $0.00 |
| 17 | LXS 2006-GP4, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | 0 | $0.00 |
| 18 | LXS 2007-10H - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of June 1, 2007 | 43 | $14,945,594.02 |
| 19 | LXS 2007-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee | 0 | $0.00 |
| 20 | LXS 2007-15N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2007 | 0 | $0.00 |
| 21 | LXS 2007-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2007 | 0 | $0.00 |

Schedule B

| | Transaction | Repurchase Claims - total # of loans (as of 7/30/09) | Repurchase Claims -Current Loan Value (as of 7/31/09) |
|---|---|---|---|
| 22 | LXS 2007-17H, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | 0 | $0.00 |
| 23 | LXS 2007-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | 0 | $0.00 |
| 24 | LXS 2007-20N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2007 | 0 | $0.00 |
| 25 | LXS 2007-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2007 | 0 | $0.00 |
| 26 | LXS 2007-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2007 | 0 | $0.00 |
| 27 | LXS 2007-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2007 | 0 | $0.00 |
| 28 | LXS 2007-9 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2007 | 0 | $0.00 |

## Schedule C

| | Transaction | Document Exceptions total original Loan Value (as of 12./31/08) * |
|---|---|---|
| 1 | LXS 2005-2 SUCCESSOR TRUSTEE, Trust Administration Agreement, by and between LaSalle Bank NA, as Predecessor Trustee, and US Bank National Association, as Successor Trustee, dated as of March 28, 2008 | $107,141,273.58 |
| 2 | LXS 2005-5N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of October 1, 2005 | $1,110,077,624.82 |
| 3 | LXS 2005-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2005 | $342,035,057.25 |
| 4 | LXS 2005-9N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of December 1, 2005 | $841,884,672.33 |
| 5 | LXS 2006-10N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | $624,619,731.47 |
| 6 | LXS 2006-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | $1,092,475,672.30 |
| 7 | LXS 2006-14N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2006 | $400,850,529.22 |
| 8 | LXS 2006-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2006 | $1,163,506,242.60 |

* The information contained herein was obtained by U.S. Bank from third parties - U.S. Bank is in the process of reconciling some of the data contained herein.

## Schedule C

| | Transaction | Document Exceptions total original Loan Value (as of 12./31/08) * |
|---|---|---|
| 9 | LXS 2006-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2006 | $589,506,331.53 |
| 10 | LXS 2006-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2006 | $946,516,557.19 |
| 11 | LXS 2006-3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of February 1, 2006 | $69,770,609.43 |
| 12 | LXS 2006-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2006 | $241,837,940.00 |
| 13 | LXS 2006-8 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2006 | $188,420,216.38 |
| 14 | LXS 2006-GP1, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of April 1, 2006 | $103,407,753.00 |
| 15 | LXS 2006-GP2, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as ofMay 1, 2006 | $154,772,338.00 |
| 16 | LXS 2006-GP3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | $190,514,270.00 |

* The information contained herein was obtained by U.S. Bank from third parties - U.S. Bank is in the process of reconciling some of the data contained herein.

## Schedule C

| | Transaction | Document Exceptions total original Loan Value (as of 12./31/08) * |
|---|---|---|
| 17 | LXS 2006-GP4, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | $210,940,657.00 |
| 18 | LXS 2007-10H - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of June 1, 2007 | $98,469,829.58 |
| 19 | LXS 2007-12N,Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee | $589,907,616.14 |
| 20 | LXS 2007-15N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2007 | $1,032,927,869.05 |
| 21 | LXS 2007-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2007 | $269,197,960.00 |
| 22 | LXS 2007-17H, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | $79,980,115.03 |
| 23 | LXS 2007-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | $169,923,921.28 |
| 24 | LXS 2007-20N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2007 | $198,508,169.00 |

* The information contained herein was obtained by U.S. Bank from third parties - U.S. Bank is in the process of reconciling some of the data contained herein.

## Schedule C

| | Transaction | Document Exceptions total original Loan Value (as of 12./31/08) * |
|---|---|---|
| 25 | LXS 2007-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2007 | $996,914,393.51 |
| 26 | LXS 2007-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2007 | $1,634,143,322.57 |
| 27 | LXS 2007-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2007 | $1,171,401,670.40 |
| 28 | LXS 2007-9 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2007 | $235,940,061.21 |

* The information contained herein was obtained by U.S. Bank from third parties - U.S. Bank is in the process of reconciling some of the data contained herein.

## Schedule D

| | Transaction | Total deal O/S as of 8/30/09; successor deals as of 6/30/09 |
|---|---|---|
| 1 | LXS 2005-2 SUCCESSOR TRUSTEE, Trust Administration Agreement, by and between LaSalle Bank NA, as Predecessor Trustee, and US Bank National Association, as Successor Trustee, dated as of March 28, 2008 | $408,343,427.60 |
| 2 | LXS 2005-5N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of October 1, 2005 | $1,110,077,624.82 |
| 3 | LXS 2005-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2005 | $1,067,275,586.68 |
| 4 | LXS 2005-9N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of December 1, 2005 | $841,884,672.33 |
| 5 | LXS 2006-10N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | $817,250,690.01 |
| 6 | LXS 2006-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | $1,131,746,677.70 |
| 7 | LXS 2006-14N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2006 | $474,314,924.59 |
| 8 | LXS 2006-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2006 | $1,941,514,916.70 |
| 9 | LXS 2006-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2006 | $717,117,155.36 |
| 10 | LXS 2006-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2006 | $1,040,849,894.72 |

2682048

## Schedule D

| | Transaction | Total deal O/S as of 8/30/09; successor deals as of 6/30/09 |
|---|---|---|
| 11 | LXS 2006-3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of February 1, 2006 | $317,141,599.85 |
| 12 | LXS 2006-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2006 | $809,847,784.49 |
| 13 | LXS 2006-8 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2006 | $511,834,183.28 |
| 14 | LXS 2006-GP1, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of April 1, 2006 | $478,847,266.45 |
| 15 | LXS 2006-GP2, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as ofMay 1, 2006 | $611,894,778.78 |
| 16 | LXS 2006-GP3, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of June 1, 2006 | $608,422,582.35 |
| 17 | LXS 2006-GP4, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2006 | $798,640,073.68 |
| 18 | LXS 2007-10H - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of June 1, 2007 | $639,018,483.36 |
| 19 | LXS 2007-12N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee | $1,111,346,687.11 |
| 20 | LXS 2007-15N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of July 1, 2007 | $2,793,781,157.41 |

2682048

## Schedule D

| | Transaction | Total deal O/S as of 8/30/09; successor deals as of 6/30/09 |
|---|---|---|
| 21 | LXS 2007-16N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of August 1, 2007 | $1,860,976,726.76 |
| 22 | LXS 2007-17H, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | $493,599,032.43 |
| 23 | LXS 2007-18N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of September 1, 2007 | $664,589,692.83 |
| 24 | LXS 2007-20N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of November 1, 2007 | $568,948,539.25 |
| 25 | LXS 2007-2N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of January 1, 2007 | $996,914,393.51 |
| 26 | LXS 2007-4N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of March 1, 2007 | $1,634,143,322.57 |
| 27 | LXS 2007-7N, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and US Bank National Association, as Trustee, dated as of May 1, 2007 | $1,947,403,177.39 |
| 28 | LXS 2007-9 - SUCCESSOR TRUSTEE, Trust Agreement by and between SASCO, as Depositor, Aurora Loan Services LLC, as Master Servicer, and LaSalle Bank National Association, as Trustee, dated as of May 1, 2007 | $464,871,006.87 |

Law Offices of

# CHAPMAN AND CUTLER LLP

Theodore S. Chapman
1877-1943

Henry E. Cutler
1879-1959
Joshua M. Wiersma
Telephone: (312) 845-3859
Facsimile (312) 516-3259
E-mail: wiersma@chapman.com

111 West Monroe Street, Chicago, Illinois 60603-4080
Telephone (312) 845-3000
Facsimile (312) 701-2361
chapman.com

New York

Salt Lake City

San Francisco

September 20, 2009

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, NY  10017

      Re:        Lehman Brothers Holdings, Inc. *et al* Proofs of Claim

To whom this may concern:

Enclosed please find Proofs of Claim on the following transactions listed below to be filed. Please return  file stamped copies.  We have enclosed a return UPS label for your convenience.

Box #4

      BNC Mortgage Trust Master (LBHI)
      BNC Mortgage Trust Master (SASCO)
      First Franklin Mortgage Trust Master (LBHI)
      First Franklin Mortgage Trust Master (SASCO)
      GreenPoint Mortgage Fund Master (LBHI)
      GreenPoint Mortgage Fund Master (SASCO)
      Lehman ABS Corporation Master (LBHI)
      Lehman ABS Corporation Master (SASCO)
      Lehman Brothers Small Balance Commercial Master (LBHI)
      Lehman Brothers Small Balance Commercial Master (SASCO)
      Lehman Mortgage Trust Master (LBHI)
      Lehman Mortgage Trust Master (SASCO)
      Lehman XS Trust Master (LBHI)
      Lehman XS Trust Master (SASCO)
      Residential Loan Trust Master (LBHI)
      Residential Loan Trust Master (SASCO)

Law Offices of

# CHAPMAN AND CUTLER LLP

Epiq Bankruptcy Solutions, LLC
Page - 2 -
September 20, 2009

> Structured Asset Investment Loan Trust Master (LBHI)
> Structured Asset Investment Loan Trust Master (SASCO)
> Structured Adjustable Rate Mortgage Trust Master (LBHI)
> Structured Adjustable Rate Mortgage Trust Master (SASCO)
> Structured Asset Securities Corporation Master (LBHI)
> Structured Asset Securities Corporation Master (SASCO)
> AAMES 2003-1 (LBHI and SASCO)
> Finance America 2004-1 (LBHI and SASCO)
> Fremont 2004-3 (LBHI and SASCO)
> HLTV Mortgage Loan Trust 2004-1 (LBHI and SASCO)
> LB-UBS Commercial Mortgage Trust 2007-C-2 (LBHI and SASCO)
> SLH Mortgage Trust - 1989-1 (LBHI and SASCO)
> TBW 2006-3 (LBHI and SASCO)
> Thornburg 2005-3 (LBHI and SASCO)
> Thornburg 2006-4 (LBHI and SASCO)
> Lehman Home Equity Loan Trust 1998-2 (LBHI)
> First Union National Bank 1998-C2 (LBHI)

Very truly yours,

CHAPMAN AND CUTLER LLP

By: _____
Joshua M. Wiersma

JMW/ppr
Enclosures

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

SEP 2 1 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

N. Roman
**RECEIVED BY:**

**DATE**

1245
**TIME**

# EXHIBIT 2



Kathy D. Patrick
kpatrick@gibbsbruns.com
713.751.5253

**EXECUTION VERSION**

*Via Federal Express*

October 26, 2015

| | |
|---|---|
| Franklin H. Top III | M. William Munno |
| Scott A. Lewis | Daniel E. Guzmán |
| CHAPMAN AND CUTLER LLP | SEWARD & KISSEL LLP |
| 111 West Monroe Street | One Battery Park Plaza |
| Chicago, Illinois 60603 | New York, New York 10004 |
| Telephone: (312) 845-3000 | Telephone: (212) 574-1587 |

*Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts*

*Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000

Richard C. Pedone
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3085

*Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

*Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts*

Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, Maryland 21045
Attention: RMBS Corporate Trust

Re:    Binding Settlement Offer from Lehman to Trustees of 406 RMBS Trusts Listed on Exhibit A

Dear Counsel:

This firm represents 15 large investors who collectively hold approximately $10 billion of the unpaid principal balance of securities ("UPB") issued by the 406 RMBS Trusts listed on

Lehman RMBS Settlement
October 26, 2015
Page 2

Exhibit "A" (the "Trusts"). Our clients hold 25% or more of the UPB of 105 of the Trusts, which Trusts account for approximately one-third of the total UPB across the Trusts.

Our clients have engaged in extensive, mediated negotiations with representatives of the Lehman estate in an effort to reach a proposed settlement of claims in the Trustees' Lehman Proofs of Claim that they would be willing to recommend to the Trustees.

Our clients are pleased to inform you that they have reached such an agreement with Lehman. We understand Lehman has advised you, on a confidential basis, of the terms of the binding offer they have agreed to make to the Trustees to settle these claims. A copy of that binding offer is enclosed with this correspondence for your review.

On behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf. Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

*Kathy Patrick*

Kathy Patrick
On behalf of the Institutional Investors

Cc:

AEGON USA Investment Management, LLC
BlackRock Financial Management Inc.
Cascade Investment, L.L.C.
Federal Home Loan Bank of Atlanta
Goldman Sachs Asset Management, L.P.
Invesco Advisers, Inc.
Kore Advisors, L.P.
Metropolitan Life Insurance Company
Pacific Investment Management Company LLC
Sealink Funding Limited, through its investment manager
      Neuberger Berman Europe Limited
The Prudential Insurance Company of America
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans
Voya Investment Management LLC
Western Asset Management Company

EXECUTION VERSION

**EXHIBIT A**
**TRUSTS**

| No. | Trust Name |
|-----|------------|
| 1 | AAMES 2003-1 |
| 2 | ARC 2001-BC1 |
| 3 | ARC 2002-BC10 |
| 4 | ARC 2002-BC5 |
| 5 | ARC 2002-BC6 |
| 6 | ARC 2002-BC8 |
| 7 | ARC 2002-BC9 |
| 8 | ARC 2004-1 |
| 9 | BNC 2006-1 |
| 10 | BNC 2006-2 |
| 11 | BNC 2007-1 |
| 12 | BNC 2007-2 |
| 13 | BNC 2007-3 |
| 14 | BNC 2007-4 |
| 15 | ENCORE 2003-1 |
| 16 | FFMLT 2002-FF3 |
| 17 | FFMLT 2003-FF3 |
| 18 | FFMLT 2003-FFB |
| 19 | FFMLT 2004-FF7 |
| 20 | FFMLT 2004-FFA |
| 21 | FFMLT 2005-FF10 |
| 22 | FFMLT 2005-FF3 |
| 23 | FFMLT 2005-FF9 |
| 24 | FFMLT 2005-FFH2 |
| 25 | FFMLT 2006-FF10 |
| 26 | FFMLT 2006-FF12 |
| 27 | FFMLT 2006-FF14 |
| 28 | FFMLT 2006-FF15 |
| 29 | FFMLT 2006-FF17 |
| 30 | FFMLT 2006-FF2 |
| 31 | FFMLT 2006-FFA |
| 32 | FFMLT 2006-FFB |
| 33 | Finance America 2004-1 |
| 34 | Fremont 2004-3 |

**EXECUTION VERSION**

| No. | Trust Name |
|-----|------------|
| 35 | GPMF 2006-AR4 |
| 36 | GPMF 2006-AR5 |
| 37 | GPMF 2006-AR6 |
| 38 | GPMF 2006-AR7 |
| 39 | GPMF 2006-AR8 |
| 40 | GPMF 2007-AR1 |
| 41 | GPMF 2007-AR2 |
| 42 | GPMF 2007-AR3 |
| 43 | Greenpoint 2005-HE3 |
| 44 | Greenpoint 2006-HE1 |
| 45 | HLTV 2004-1 |
| 46 | LABS 2002-A |
| 47 | LABS 2003-1 |
| 48 | LABS 2004-1 |
| 49 | LABS 2004-2 |
| 50 | LABS 2005-1 |
| 51 | LABS 2007-1 |
| 52 | LABS MH 2001-B |
| 53 | Lehman Home Equity Loan Trust 1998-2 |
| 54 | LMT 2005-1 |
| 55 | LMT 2005-2 |
| 56 | LMT 2005-3 |
| 57 | LMT 2006-1 |
| 58 | LMT 2006-2 |
| 59 | LMT 2006-3 |
| 60 | LMT 2006-4 |
| 61 | LMT 2006-8 |
| 62 | LMT 2006-9 |
| 63 | LMT 2007-1 |
| 64 | LMT 2007-10 |
| 65 | LMT 2007-2 |
| 66 | LMT 2007-3 |
| 67 | LMT 2007-4 |
| 68 | LMT 2007-5 |
| 69 | LMT 2007-6 |
| 70 | LMT 2007-7 |
| 71 | LMT 2007-8 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 72 | LMT 2007-9 |
| 73 | LMT 2008-2 |
| 74 | LMT 2008-6 |
| 75 | LXS 2005-1 |
| 76 | LXS 2005-10 |
| 77 | LXS 2005-2 |
| 78 | LXS 2005-3 |
| 79 | LXS 2005-4 |
| 80 | LXS 2005-5N |
| 81 | LXS 2005-6 |
| 82 | LXS 2005-7N |
| 83 | LXS 2005-8 |
| 84 | LXS 2005-9N |
| 85 | LXS 2006-1 |
| 86 | LXS 2006-10N |
| 87 | LXS 2006-11 |
| 88 | LXS 2006-12N |
| 89 | LXS 2006-13 |
| 90 | LXS 2006-14N |
| 91 | LXS 2006-15 |
| 92 | LXS 2006-16N |
| 93 | LXS 2006-17 |
| 94 | LXS 2006-18N |
| 95 | LXS 2006-19 |
| 96 | LXS 2006-20 |
| 97 | LXS 2006-2N |
| 98 | LXS 2006-3 |
| 99 | LXS 2006-4N |
| 100 | LXS 2006-5 |
| 101 | LXS 2006-7 |
| 102 | LXS 2006-8 |
| 103 | LXS 2006-9 |
| 104 | LXS 2006-GP1 |
| 105 | LXS 2006-GP2 |
| 106 | LXS 2006-GP3 |
| 107 | LXS 2006-GP4 |
| 108 | LXS 2007-1 |

- 3 -

EXECUTION VERSION

| No. | Trust Name |
|---|---|
| 109 | LXS 2007-10H |
| 110 | LXS 2007-11 |
| 111 | LXS 2007-12N |
| 112 | LXS 2007-14H |
| 113 | LXS 2007-15N |
| 114 | LXS 2007-16N |
| 115 | LXS 2007-17H |
| 116 | LXS 2007-18N |
| 117 | LXS 2007-20N |
| 118 | LXS 2007-2N |
| 119 | LXS 2007-3 |
| 120 | LXS 2007-4N |
| 121 | LXS 2007-5H |
| 122 | LXS 2007-6 |
| 123 | LXS 2007-7N |
| 124 | LXS 2007-8H |
| 125 | LXS 2007-9 |
| 126 | Resmae 2007-1 |
| 127 | RLT 2008-2 |
| 128 | RLT 2008-AH1 |
| 129 | SAIL 2003-BC1 |
| 130 | SAIL 2003-BC10 |
| 131 | SAIL 2003-BC11 |
| 132 | SAIL 2003-BC12 |
| 133 | SAIL 2003-BC13 |
| 134 | SAIL 2003-BC2 |
| 135 | SAIL 2003-BC3 |
| 136 | SAIL 2003-BC4 |
| 137 | SAIL 2003-BC5 |
| 138 | SAIL 2003-BC6 |
| 139 | SAIL 2003-BC7 |
| 140 | SAIL 2003-BC8 |
| 141 | SAIL 2003-BC9 |
| 142 | SAIL 2004-1 |
| 143 | SAIL 2004-10 |
| 144 | SAIL 2004-11 |
| 145 | SAIL 2004-2 |

- 4 -

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 146 | SAIL 2004-3 |
| 147 | SAIL 2004-4 |
| 148 | SAIL 2004-5 |
| 149 | SAIL 2004-6 |
| 150 | SAIL 2004-7 |
| 151 | SAIL 2004-8 |
| 152 | SAIL 2004-9 |
| 153 | SAIL 2004-BNC1 |
| 154 | SAIL 2004-BNC2 |
| 155 | SAIL 2005-1 |
| 156 | SAIL 2005-10 |
| 157 | SAIL 2005-11 |
| 158 | SAIL 2005-2 |
| 159 | SAIL 2005-3 |
| 160 | SAIL 2005-4 |
| 161 | SAIL 2005-5 |
| 162 | SAIL 2005-6 |
| 163 | SAIL 2005-7 |
| 164 | SAIL 2005-8 |
| 165 | SAIL 2005-9 |
| 166 | SAIL 2005-HE1 |
| 167 | SAIL 2005-HE2 |
| 168 | SAIL 2005-HE3 |
| 169 | SAIL 2006-1 |
| 170 | SAIL 2006-2 |
| 171 | SAIL 2006-3 |
| 172 | SAIL 2006-4 |
| 173 | SAIL 2006-BNC1 |
| 174 | SAIL 2006-BNC2 |
| 175 | SAIL 2006-BNC3 |
| 176 | SARM 2004-10 |
| 177 | SARM 2004-16 |
| 178 | SARM 2004-18 |
| 179 | SARM 2004-20 |
| 180 | SARM 2004-5 |
| 181 | SARM 2004-9XS |
| 182 | SARM 2005-11 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 183 | SARM 2005-12 |
| 184 | SARM 2005-14 |
| 185 | SARM 2005-15 |
| 186 | SARM 2005-16XS |
| 187 | SARM 2005-17 |
| 188 | SARM 2005-19XS |
| 189 | SARM 2005-20 |
| 190 | SARM 2005-22 |
| 191 | SARM 2005-23 |
| 192 | SARM 2005-9 |
| 193 | SARM 2006-1 |
| 194 | SARM 2006-10 |
| 195 | SARM 2006-11 |
| 196 | SARM 2006-12 |
| 197 | SARM 2006-2 |
| 198 | SARM 2006-3 |
| 199 | SARM 2006-4 |
| 200 | SARM 2006-5 |
| 201 | SARM 2006-6 |
| 202 | SARM 2006-7 |
| 203 | SARM 2006-8 |
| 204 | SARM 2006-9 |
| 205 | SARM 2007-1 |
| 206 | SARM 2007-10 |
| 207 | SARM 2007-11 |
| 208 | SARM 2007-2 |
| 209 | SARM 2007-3 |
| 210 | SARM 2007-4 |
| 211 | SARM 2007-6 |
| 212 | SARM 2007-8 |
| 213 | SARM 2008-1 |
| 214 | SARM 2008-2 |
| 215 | SASCO 1996-4 |
| 216 | SASCO 1997-2 |
| 217 | SASCO 1998-2 |
| 218 | SASCO 1998-3 |
| 219 | SASCO 1998-6 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 220 | SASCO 1999-ALS3 |
| 221 | SASCO 1999-RF1 |
| 222 | SASCO 2001-1 |
| 223 | SASCO 2001-11 |
| 224 | SASCO 2001-16H |
| 225 | SASCO 2001-19 |
| 226 | SASCO 2001-2 |
| 227 | SASCO 2001-21A |
| 228 | SASCO 2001-6 |
| 229 | SASCO 2001-SB1 |
| 230 | SASCO 2002-10H |
| 231 | SASCO 2002-12 |
| 232 | SASCO 2002-13 |
| 233 | SASCO 2002-15 |
| 234 | SASCO 2002-17 |
| 235 | SASCO 2002-22H |
| 236 | SASCO 2002-5A |
| 237 | SASCO 2002-6 |
| 238 | SASCO 2002-AL1 |
| 239 | SASCO 2002-BC1 |
| 240 | SASCO 2002-HF1 |
| 241 | SASCO 2002-HF2 |
| 242 | SASCO 2002-NP1 |
| 243 | SASCO 2003-10 |
| 244 | SASCO 2003-12XS |
| 245 | SASCO 2003-14 |
| 246 | SASCO 2003-15A |
| 247 | SASCO 2003-16 |
| 248 | SASCO 2003-17A |
| 249 | SASCO 2003-18XS |
| 250 | SASCO 2003-20 |
| 251 | SASCO 2003-21 |
| 252 | SASCO 2003-23H |
| 253 | SASCO 2003-25XS |
| 254 | SASCO 2003-26A |
| 255 | SASCO 2003-28XS |
| 256 | SASCO 2003-29 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 257 | SASCO 2003-30 |
| 258 | SASCO 2003-32 |
| 259 | SASCO 2003-33H |
| 260 | SASCO 2003-34A |
| 261 | SASCO 2003-35 |
| 262 | SASCO 2003-36XS |
| 263 | SASCO 2003-38 |
| 264 | SASCO 2003-39EX |
| 265 | SASCO 2003-3XS |
| 266 | SASCO 2003-4 |
| 267 | SASCO 2003-6A |
| 268 | SASCO 2003-7H |
| 269 | SASCO 2003-8 |
| 270 | SASCO 2003-AL1 |
| 271 | SASCO 2003-AL2 |
| 272 | SASCO 2003-GEL1 |
| 273 | SASCO 2003-NP1 |
| 274 | SASCO 2003-NP2 |
| 275 | SASCO 2003-NP3 |
| 276 | SASCO 2003-RNP2 |
| 277 | SASCO 2003-S1 |
| 278 | SASCO 2003-S2 |
| 279 | SASCO 2004-10 |
| 280 | SASCO 2004-11XS |
| 281 | SASCO 2004-12H |
| 282 | SASCO 2004-13 |
| 283 | SASCO 2004-15 |
| 284 | SASCO 2004-16XS |
| 285 | SASCO 2004-17XS |
| 286 | SASCO 2004-18H |
| 287 | SASCO 2004-19XS |
| 288 | SASCO 2004-20 |
| 289 | SASCO 2004-21XS |
| 290 | SASCO 2004-22 |
| 291 | SASCO 2004-23XS |
| 292 | SASCO 2004-2AC |
| 293 | SASCO 2004-3 |

- 8 -

EXECUTION VERSION

| No. | Trust Name |
|---|---|
| 294 | SASCO 2004-4XS |
| 295 | SASCO 2004-5H |
| 296 | SASCO 2004-6XS |
| 297 | SASCO 2004-7 |
| 298 | SASCO 2004-9XS |
| 299 | SASCO 2004-GEL1 |
| 300 | SASCO 2004-GEL2 |
| 301 | SASCO 2004-GEL3 |
| 302 | SASCO 2004-NP1 |
| 303 | SASCO 2004-NP2 |
| 304 | SASCO 2004-S2 |
| 305 | SASCO 2004-S3 |
| 306 | SASCO 2004-S4 |
| 307 | SASCO 2005-1 |
| 308 | SASCO 2005-10 |
| 309 | SASCO 2005-11H |
| 310 | SASCO 2005-14 |
| 311 | SASCO 2005-15 |
| 312 | SASCO 2005-17 |
| 313 | SASCO 2005-2XS |
| 314 | SASCO 2005-3 |
| 315 | SASCO 2005-3XS |
| 316 | SASCO 2005-4XS |
| 317 | SASCO 2005-5 |
| 318 | SASCO 2005-6 |
| 319 | SASCO 2005-6XS |
| 320 | SASCO 2005-7XS |
| 321 | SASCO 2005-8XS |
| 322 | SASCO 2005-9XS |
| 323 | SASCO 2005-AR1 |
| 324 | SASCO 2005-GEL1 |
| 325 | SASCO 2005-GEL2 |
| 326 | SASCO 2005-GEL3 |
| 327 | SASCO 2005-GEL4 |
| 328 | SASCO 2005-NC1 |
| 329 | SASCO 2005-NC2 |
| 330 | SASCO 2005-OPT1 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 331 | SASCO 2005-RF1 |
| 332 | SASCO 2005-RF2 |
| 333 | SASCO 2005-RF3 |
| 334 | SASCO 2005-RF4 |
| 335 | SASCO 2005-RF5 |
| 336 | SASCO 2005-RF6 |
| 337 | SASCO 2005-RF7 |
| 338 | SASCO 2005-RMS1 |
| 339 | SASCO 2005-S1 |
| 340 | SASCO 2005-S2 |
| 341 | SASCO 2005-S3 |
| 342 | SASCO 2005-S4 |
| 343 | SASCO 2005-S5 |
| 344 | SASCO 2005-S6 |
| 345 | SASCO 2005-S7 |
| 346 | SASCO 2005-SC1 |
| 347 | SASCO 2005-WF1 |
| 348 | SASCO 2005-WF2 |
| 349 | SASCO 2005-WF3 |
| 350 | SASCO 2005-WF4 |
| 351 | SASCO 2006-3H |
| 352 | SASCO 2006-AM1 |
| 353 | SASCO 2006-ARS1 |
| 354 | SASCO 2006-BC1 |
| 355 | SASCO 2006-BC2 |
| 356 | SASCO 2006-BC3 |
| 357 | SASCO 2006-BC4 |
| 358 | SASCO 2006-BC5 |
| 359 | SASCO 2006-BC6 |
| 360 | SASCO 2006-EQ1 |
| 361 | SASCO 2006-GEL1 |
| 362 | SASCO 2006-GEL2 |
| 363 | SASCO 2006-GEL3 |
| 364 | SASCO 2006-GEL4 |
| 365 | SASCO 2006-NC1 |
| 366 | SASCO 2006-OPT1 |
| 367 | SASCO 2006-OW1 |

- 10 -

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 368 | SASCO 2006-RF1 |
| 369 | SASCO 2006-RF2 |
| 370 | SASCO 2006-RF3 |
| 371 | SASCO 2006-RF4 |
| 372 | SASCO 2006-S1 |
| 373 | SASCO 2006-S2 |
| 374 | SASCO 2006-S3 |
| 375 | SASCO 2006-S4 |
| 376 | SASCO 2006-W1 |
| 377 | SASCO 2006-WF1 |
| 378 | SASCO 2006-WF2 |
| 379 | SASCO 2006-WF3 |
| 380 | SASCO 2006-Z |
| 381 | SASCO 2007-BC1 |
| 382 | SASCO 2007-BC2 |
| 383 | SASCO 2007-BC3 |
| 384 | SASCO 2007-BC4 |
| 385 | SASCO 2007-BNC1 |
| 386 | SASCO 2007-EQ1 |
| 387 | SASCO 2007-GEL1 |
| 388 | SASCO 2007-GEL2 |
| 389 | SASCO 2007-MLN1 |
| 390 | SASCO 2007-OS1 |
| 391 | SASCO 2007-RF1 |
| 392 | SASCO 2007-RF2 |
| 393 | SASCO 2007-RNP1 |
| 394 | SASCO 2007-SC1 |
| 395 | SASCO 2007-TC1 |
| 396 | SASCO 2007-WF1 |
| 397 | SASCO 2007-WF2 |
| 398 | SASCO FHA/VA 1998-RF1 |
| 399 | SASCO FHA/VA 1998-RF2 |
| 400 | SASCO FHA/VA 1998-RF3 |
| 401 | SASCO FHA/VA 1998-RF4 |
| 402 | SLH 1989-1 |
| 403 | TBW 2006-3 |
| 404 | Thornburg 2005-3 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 405 | Thornburg 2006-4 |
| 406 | WFHET 2004-1 |

EXECUTION VERSION

## RMBS TRUST SETTLEMENT AGREEMENT

This RMBS Trust Settlement Agreement ("Settlement Agreement") is entered into as of October 26, 2015 (the "Agreement Date"), by and among Lehman Brothers Holdings Inc. (the "Plan Administrator") and the other Debtors in the Bankruptcy Proceeding (as defined below) (collectively, the "LBHI Debtors") and the authorized Investment Advisors and Investors identified in the attached signature pages (collectively, the "Institutional Investors"); and, upon acceptance as described below, the Accepting Trustees as defined and set forth herein. Each of the LBHI Debtors, the Institutional Investors and, upon acceptance, the Accepting Trustees, may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain of the LBHI Debtors entities were the Seller, Sponsor, and/or Depositor for the 406 residential mortgage-backed securitizations identified on the attached Exhibit A (the "Trusts");

WHEREAS, certain of the LBHI Debtors entities are parties to certain applicable Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements and/or other agreements governing or related to the Trusts (the "Governing Agreements");

WHEREAS, pursuant to the Governing Agreements, certain of the LBHI Debtors entities have contributed or sold loans originated by various entities into the Trusts (the "Mortgage Loans");

WHEREAS, the LBHI Debtors commenced bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, styled or related to *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (the "Bankruptcy Proceeding");

WHEREAS, the trustees or indenture trustees for the Trusts (each, a "Trustee") have filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans in the Trusts by various of the LBHI Debtors entities under the Governing Agreements (collectively, the "Claims");

WHEREAS, on December 29, 2014, the Court presiding over the Bankruptcy Proceeding entered an Order Establishing a Protocol to Resolve Claims Filed by the Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities (the "Loan File Review Protocol Order") setting forth a protocol for the review of mortgage loan files, the assertion of Claims by the Trustees, the response by the LBHI Debtors to such claims, and a mechanism for resolving disputes regarding such claims;

WHEREAS, the Institutional Investors are significant holders of certificates in the Trusts;

WHEREAS, the LBHI Debtors dispute the validity of the Claims and waive no rights and preserve all of their defenses with respect to the Claims;

EXECUTION VERSION

WHEREAS, the Institutional Investors are represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and have, through counsel, engaged in extensive arm's length and good faith settlement negotiations with the LBHI Debtors that included the use of David Geronemus of JAMS, as mediator, and the exchange of confidential materials;

WHEREAS, the Institutional Investors and the LBHI Debtors have reached agreement concerning a proposed settlement that would resolve all of the Claims the Trustees or Trusts hold against the LBHI Debtors under the Governing Agreements;

WHEREAS, this Settlement Agreement shall be presented to the Trustees for approval in the exercise of their good faith business judgment, upon which approval the Trustees shall become Accepting Trustees (as defined herein) and Parties to this Settlement Agreement as set forth herein; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Claims and the Governing Agreements.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

ARTICLE I. DEFINITIONS

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement). Any capitalized terms not defined in this Settlement Agreement shall, with respect to any particular Trust, have the definition given to them in the Governing Agreements for that Trust.

1.01.    "Initial Acceptance Date" for each Trustee shall mean 30 days after the date on which this Settlement Agreement is presented to such Trustee for its review and acceptance, unless extended as provided herein.

1.02.    "Accepting Trustee" means any Trustee that has accepted the Settlement Agreement pursuant to Section 2.03 with respect to any Trust.

1.03.    "Allocable Share" means, for any Trust, the share of the Gross Settled Claim and Net Settled Claim allocable to that Trust, as set forth herein.

1.04.    "Bankruptcy Court" means the Court presiding over the Bankruptcy Proceeding.

1.05    "Covered Loans" shall mean the Mortgage Loans identified as the "Covered Loans" in The RMBS Trustees' Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section

- 2 -

**EXECUTION VERSION**

502(c) of the Bankruptcy Code (ECF Doc. No. 46078), dated August 22, 2014, filed by the Trustees in the Bankruptcy Proceeding.

1.06.   "Effective Date" shall mean the date of Final Court Approval.

1.07.   "Expert" means the professional firm retained by the Accepting Trustees to make any determinations and perform any calculations required in connection with the allocation of the Gross Settled Claim among the Trusts in accordance with Section 3.03 herein.

1.08.   "Final Acceptance Date" for each Trustee shall mean 30 days after the Initial Acceptance Date, unless extended as provided herein.

1.09.   "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

1.10.   "Institutional Investors" shall mean the authorized Investment Advisors and Investors identified in the attached signature pages.

1.11.   "Investment Advisor" shall mean the following Institutional Investors: BlackRock Financial Management Inc.; Goldman Sachs Asset Management, L.P.; Invesco Advisers, Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Sealink Funding Limited, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; and Western Asset Management Company, and, for the avoidance of doubt, shall not include (i) any of the individual clients or funds whose assets are managed by such Investment Advisor or (ii) any affiliates of such Investment Advisor.

1.12.   "Investors" shall mean all certificateholders, bondholders and noteholders in the Settlement Trusts, and their successors in interest, assigns, pledgees, and/or transferees.

1.13.   "Lifetime Losses" means, with respect to any Settlement Trust, the amount of losses on the Mortgage Loans in such Settlement Trust that have been or are estimated to be borne by that Settlement Trust from its inception date to its expected date of termination, as determined by the Expert. For the avoidance of doubt, a collateral loss on a Mortgage Loan that has been reimbursed or indemnified by reason of applicable policies of mortgage or bond insurance or other financial guaranty insurance shall nonetheless be considered a loss on a Mortgage Loan and included within the calculation of "Lifetime Losses."

1.14.   "Non-Settling Trust" means any Trust as to which the Trustee rejects the Settlement pursuant to Section 2.05 or is excluded from the Settlement pursuant to Section 2.06.

- 3 -

EXECUTION VERSION

1.15.  "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

1.16.  "Released Parties" shall mean: (i) any and all LBHI Debtors, including, without limitation, Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, BNC Mortgage LLC, Finance America LLC, and LBHI Debtors' affiliates and subsidiaries identified on Exhibit B hereto, and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents; and (ii) Aurora Commercial Corp., f/k/a Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, "Aurora"), and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents.

1.17  "RMBS Reserve" means the reserve maintained by the LBHI Debtors pursuant to that certain order of the Bankruptcy Court dated February 22, 2012 (Docket No. 25643).

1.18.  "Securities" shall mean securities, notes, bonds, certificates and/or other instruments issued by the Trusts.

1.19.  "Settlement" means the negotiated settlement set forth in this Settlement Agreement, including all terms and conditions thereof.

1.20.  "Settlement Trusts" means all Trusts as to which the applicable Trustee accepts the Settlement that do not become Non-Settling Trusts.

1.21.  "Transferor Loans" means the Mortgage Loans sold into, deposited into, or otherwise conveyed into the Trusts that are not "Covered Loans."

1.22.  "Transferor Trusts" means all Trusts that contain solely Transferor Loans.

1.23.  "Trustees" shall mean U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust National Association, Deutsche Bank National Trust Company, Wells Fargo, N.A. and/or separate or successor trustees for the Trusts appointed pursuant to court orders confirming their appointment or otherwise appointed.

ARTICLE II. SETTLEMENT PROCESS

2.01.  Effective Date for the LBHI Debtors and Institutional Investors. This Settlement Agreement shall be binding and effective upon the LBHI Debtors (subject to Bankruptcy Court approval) and the Institutional Investors as of the Agreement Date and shall continue to be binding and irrevocable until: (i) the Initial Acceptance Date has passed without initial acceptance by any Trustee; (ii) the Final Acceptance Date has passed without final acceptance by any Trustee; (iii) such time as the LBHI Debtors shall exercise any right they may have to terminate the Settlement Agreement under Section 2.03(f) below; or (iv) the date Final Court Approval becomes legally impossible. Promptly following the Agreement Date, the LBHI Debtors shall request that the Bankruptcy Court schedule and hold a chambers conference so that the LBHI Debtors and the Institutional Investors may inform the Court of the existence and

EXECUTION VERSION

terms of this Settlement Agreement. The LBHI Debtors and the Institutional Investors agree that, subject to acceptable confidentiality arrangements, counsel for the Trustees shall be informed of and entitled to attend such conference.

2.02.   Presentation of Settlement to Trustees.

(a)   Request Letter.   This Settlement Agreement shall be presented to the Trustees for their review, evaluation, and initial acceptance within five (5) business days of the Agreement Date as follows: The Institutional Investors shall submit, through their counsel, a letter to each of the Trustees expressing their support for the settlement and requesting that each enter into the Settlement Agreement (the "Request Letter"). The Request Letter, which shall be subject to the reasonable review and comment of the LBHI Debtors, shall urge the Trustees to exercise their independent business judgment in deciding whether to accept the Settlement Agreement. The Request Letter shall not be provided to the Trustees until they have agreed, in a manner satisfactory to the LBHI Debtors and the Institutional Investors, to keep confidential and not disclose the existence or terms of this Settlement Agreement until after the Initial Acceptance Date.

(b)   Intervention in Bankruptcy Court Approval Process.   The Institutional Investors shall jointly file a motion for leave to intervene (or a similar pleading) in the Bankruptcy Court to evidence their support for the Settlement, Final Court Approval, as defined below, and the Settlement Agreement. Each of the Institutional Investors shall use their reasonable best efforts to prosecute the intervention, to support the Settlement, and to obtain Final Court Approval of the Settlement. The Institutional Investors' obligation to use reasonable best efforts shall continue until the earliest of: (i) Final Court Approval, (ii) the date Final Court Approval becomes legally impossible, (iii) the date on which the LBHI Debtors terminate the Settlement Agreement pursuant to Section 2.03(f), below, or (iv) any material breach by the LBHI Debtors of the Settlement Agreement (which breach is not cured or waived within 90 days of written notice of such breach having been provided by a Party to this Agreement).

2.03.   Initial and Final Acceptance by Trustees.

(a)   Initial Acceptance.   The Settlement Agreement shall become binding upon any Trustee (subject to such Trustee's final acceptance of this Settlement Agreement prior to the Final Acceptance Date in accordance with Section 2.03(d), below) upon such Trustee's initial acceptance of this Settlement Agreement prior to the Initial Acceptance Date in accordance with Section 2.03(c), below.

(b)   Extension of Acceptance Date.   The Trustees may request an extension of the Initial Acceptance Date and Final Acceptance Date (and such dates may be so extended in a writing signed by the LBHI Debtors), but the LBHI Debtors shall have the unilateral right to refuse to extend either date.

(c)   Initial Acceptance of Settlement Agreement.   On or prior to the Initial Acceptance Date, each Trustee shall conduct such review as it believes is necessary for it to exercise its independent business judgment in deciding whether to initially accept the

- 5 -

EXECUTION VERSION

Settlement Agreement and shall indicate in a writing to the LBHI Debtors and the Institutional Investors whether it initially accepts or rejects the Settlement Agreement, and identifying the Trusts for which it is initially accepting or rejecting the Settlement. If an Accepting Trustee initially accepts the Settlement by executing the applicable signature page attached hereto and delivering an original or copy thereof to the Institutional Investors with a copy to the LBHI Debtors ("Trustee's Initial Acceptance"), it may do so subject to (i) final acceptance by the Accepting Trustee pursuant to Section 2.03(d) below and (ii) the Bankruptcy Court's entry of an order approving this Settlement Agreement that contains findings that the Trustee acted in good faith and exercised reasonable discretion in entering into the Settlement Agreement (the "Trustee Findings").

(d)    Final Acceptance of Settlement Agreement.  On or prior to the Final Acceptance Date, each Trustee shall provide written notice to the Institutional Investors and the LBHI Debtors finally accepting or rejecting the Settlement and identifying the Trusts for which it is finally accepting or rejecting the Settlement. If an Accepting Trustee finally accepts the Settlement, it shall indicate in such written notice to the LBHI Debtors and the Institutional Investors that it agrees that the executed signature page it provided in connection with the Trustee's Initial Acceptance may be used for purposes of final acceptance ("Trustee's Final Acceptance"), subject to the Trustee Findings (if so required).  Within 10 days of the Final Acceptance Date, the LBHI Debtors shall request that the Bankruptcy Court enter an order (1) approving a notice program with respect to its consideration of the motion requesting approval of the Settlement Agreement and the Trustee Findings (if so required), (2) setting a date by which the LBHI Debtors shall file their motion to approve the Settlement Agreement and obtain the Trustee Findings (if so required), (3) setting a date by which all objections to the motion must be filed and served, including objections, if any, to the Trustee Findings and (4) setting a date on which the motion to approve the Settlement Agreement and Trustee Findings (if so required) shall be heard.  Notice of the Settlement Agreement and the motion seeking approval of such Bankruptcy Court order shall be provided by the Trustees to all certificateholders in the Trusts and all financial guaranty institutions having an interest in the Trusts.  Notice of the Settlement Agreement and the motion seeking approval of such Bankruptcy Court order shall be provided by the LBHI Debtors to those parties required to receive notice in the Bankruptcy Proceedings, and all servicers and master servicers of loans in the Trusts, all mortgage originators (including brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement), and any other person who the LBHI Debtors shall conclude may have a claim or interest in the Trusts or the Settlement Agreement.  Upon a Trustee's Initial Acceptance, this Settlement Agreement shall continue in effect for such Trustee and the associated Settlement Trusts unless and until:  (i) there is no Trustee Final Acceptance for such Trustee; (ii) the Bankruptcy Court has issued a final and non-appealable judgment (including the expiration of any time to apply for discretionary review) denying approval of the Settlement Agreement and/or the Trustee Findings (if so required); or (iii) the date on which obtaining a final and non-appealable judgment (including the expiration of any time to apply for discretionary review) approving the Settlement Agreement and Trustee Findings (if so required) (the "Final Court Approval") becomes legally impossible.

- 6 -

EXECUTION VERSION

(e)    Best Efforts. During the period during which Final Court Approval is being sought, the Accepting Trustees, the LBHI Debtors, and the Institutional Investors shall each be obligated to use their reasonable best efforts to obtain Final Court Approval of the Settlement and any required Trustee Findings so long as there has been no material breach of this Settlement Agreement. The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the Trustee's Final Acceptance, or if any Party discovers facts that are additional to, inconsistent with, or different from those which they knew at the time they entered into this Settlement Agreement, until such time as Final Court Approval becomes legally impossible.

(f)    The LBHI Debtors' Right to Terminate. The LBHI Debtors and the Institutional Investors have entered into a confidential letter agreement that provides the LBHI Debtors the right to terminate this Settlement Agreement in the event (i) Trustees for an agreed-upon percentage of Trusts measured by the losses on the Covered Loans, as of the Agreement Date, have not (a) initially accepted this Settlement Agreement by the Initial Acceptance Date, or (b) finally accepted this Settlement Agreement by the Final Acceptance Date, or (ii) an agreed-upon percentage of Trusts measured by the losses on the Covered Loans, as of the Agreement Date, are not included within the Final Court Approval of the Settlement Agreement. The LBHI Debtors' and the Institutional Investors' confidential letter agreement also provides the LBHI Debtors the right to terminate this Settlement Agreement in the event that: (i) less than a confidential percentage of the Transferor Trusts, by number, accept the Settlement by the Final Acceptance Date; (ii) no later than 10 days after the Final Acceptance Date, the LBHI Debtors file a motion with the Bankruptcy Court seeking entry of an order (the "Reserve Order") providing that, upon Final Court Approval, the RMBS Reserve shall be reduced to such reserve that is sufficient for an amount equal to two times the total claim that would have been allowed for the Trusts that are not Settlement Trusts had these Trusts accepted the Settlement (the "Reserve Order Motion"); (iii) the LBHI Debtors make reasonable best efforts to obtain entry of the Reserve Order; and (iv) the Reserve Order Motion is denied. The Trustees shall be entitled to know the confidential percentages referenced above, so long as they agree to hold such percentages in confidence, and the LBHI Debtors shall be authorized to disclose such percentages to the Bankruptcy Court. The LBHI Debtors, with prior written consent of the Accepting Trustees, also shall have the right to terminate this Settlement Agreement if the Bankruptcy Court has not entered an order approving this Settlement Agreement and any Trustee Findings (if so required) by March 15, 2016. The LBHI Debtors shall provide written notice to the Institutional Investors and any Accepting Trustees of the exercise of their right to terminate this Settlement Agreement in accordance with the terms of this paragraph. The LBHI Debtors' right to terminate this Settlement Agreement upon the occurrence of any of the events described in this paragraph shall be waived if not exercised, by providing notice as set forth in the preceding sentence, within 20 days following the occurrence of the applicable event.

(g)    Suspension of the Loan File Review Protocol Order for Accepting Trusts. Within 10 days of the Initial Acceptance Date, the LBHI Debtors shall seek an order from the Bankruptcy Court modifying the Loan File Review Protocol Order (the "Protocol") to

- 7 -

provide for the following: (i) the Protocol shall be suspended for any Settlement Trust(s) as of the Initial Acceptance Date; (ii) the Protocol shall remain in effect for any Trust that is not a Settlement Trust; (iii) in the event that the Settlement Agreement is terminated as to any or all Settlement Trusts as provided for herein, the suspension of the Protocol shall cease as to any Trust for which the Settlement Agreement is terminated, and the terms and conditions of the Protocol shall once again apply to and bind the Trustees and the LBHI Debtors with respect to such Trusts; provided however, that the dates and deadlines in the Protocol applicable to any such Settlement Trust for which the Settlement Agreement is terminated shall be extended for a period equal to the number of days between the date on which the affected Trust became a Settlement Trust and the date on which the Settlement Agreement was terminated with regard to such Trust.

2.04.   Trustee Review.  The Trustees shall have until the Initial Acceptance Date (the "Diligence Period") to conduct a reasonable investigation of the Settlement and its terms. The Trustees may request documents or other information from the LBHI Debtors to conduct such diligence, may retain experts to assist them, and may conduct such other due diligence as they deem necessary to inform themselves concerning the Settlement. The LBHI Debtors agree to use reasonable best efforts to provide promptly to the Trustees documents reasonably requested by the Trustees and necessary for the Trustees' due diligence, and the Trustees agree to confer in good faith with the LBHI Debtors regarding the scope of any request for information; provided, however, that the LBHI Debtors shall not be required to provide any privileged or work-product documents or materials. Copies of all such documents shall also be made available to counsel for the Institutional Investors to assist them in responding to any Trustee inquiries regarding the documents or the Settlement through the Initial Acceptance Date. Following the Initial Acceptance Date, each Trustee that has provided a Trustee's Initial Acceptance may provide notice of the Settlement Agreement and its terms to such present and former certificateholders and other persons as such Trustee determines is necessary for purposes of determining whether such Trustee will provide such Trustee's Final Acceptance.

2.05.   Non-Settling Trusts.  If a Trustee declines to accept the Settlement for any Trust on or prior to the Initial Acceptance Date or Final Acceptance Date, as applicable, or rejects the Settlement Agreement with respect to all Trusts for which that Trustee serves as trustee, or if any Trust is excluded from the Settlement by the LBHI Debtors pursuant to Section 2.06 below, or if any Trust is not part of the Final Court Approval for any reason, such Trust or Trusts shall be Non-Settling Trusts. The Gross Settled Claim will be reduced by the amount of the Allocable Share for each such Trust, as set forth in Section 3.01.

2.06.   Other Excluded Trusts.  The LBHI Debtors may, on five days' notice to the applicable Accepting Trustee and the Institutional Investors, exclude any Trust from this Settlement Agreement, for which an objection has been asserted by any certificateholder in, or financial guaranty provider for, such Trust. Trusts excluded pursuant to the prior sentence shall be referred to as "Excluded Trusts." The LBHI Debtors shall be permitted to exclude a Trust pursuant to this Section 2.06 only if they have reached the reasonable conclusion, arrived at in good faith, that excluding such Trust will prevent unnecessary delay in obtaining Final Court Approval of the Settlement for the remaining Settlement Trusts; provided, however, that the LBHI Debtors' right to exclude Trusts pursuant to this Section 2.06 is capped at and limited as follows:  the combined losses for the Excluded Trusts (meaning the amount of losses with

- 8 -

**EXECUTION VERSION**

respect to the Mortgage Loans held by such Excluded Trusts), taken together, may not exceed 10% of the losses for all Settlement Trusts measured as of the Final Acceptance Date. The LBHI Debtors, in their sole discretion, may also exclude any Trust for which there is a third-party or other financial guaranty or credit enhancement provider without regard to the provisions of the prior sentences. Any Trust excluded pursuant to this section shall be treated as a Non-Settling Trust, but shall not be included in determining the LBHI Debtors' right to terminate pursuant to Section 2.03(f).

2.07    Failure to Obtain Final Court Approval. To the extent that an Accepting Trustee conditions its acceptance of the Settlement Agreement on the Trustee Findings being included in the Final Court Approval, and such Final Court Approval becomes impossible to obtain for any Settlement Trust, by way of appeal or other judicial proceedings, such Settlement Trust shall be treated as a Non-Settling Trust.

2.08    Resolution of Claims of Non-Settling Trusts and Excluded Trusts. To the extent that any Trust shall become a Non-Settling Trust or Excluded Trust, or in the event that the LBHI Debtors shall terminate this agreement as provided for herein, the Settlement Agreement shall be null and void with respect to all affected Trusts, and all pending claims filed by or on behalf of such Trusts shall be resolved pursuant to the Loan File Review Protocol Order, as amended by the Bankruptcy Court as appropriate in light of the suspension of the Protocol as provided for in Section 2.03(g) herein.

## ARTICLE III. SETTLEMENT TERMS

3.01.    Settlement Consideration and Payment. The Settlement consideration shall consist of an allowed Class 7 General Unsecured claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc. in the amount of TWO BILLION FOUR HUNDRED AND FORTY MILLION ($2,440,000,000) and no/100 dollars (the "Gross Settled Claim"), reduced by the sum of the Allocable Shares for all Non-Settling Trusts (as so reduced, the "Net Settled Claim"). In accordance with the allocation methodology in Section 3.03, and after giving effect to the attorneys' fee provision in Section 6.04, each Settlement Trust shall be awarded 95.25% of its Allocable Share. Distributions on account of the Net Settled Claim shall be made by the LBHI Debtors, after giving effect to Section 6.04 below, in accordance with, and on the periodic distribution dates contained in, the LBHI Debtors' plan of reorganization, as confirmed by the Bankruptcy Court (the "Plan"), following the Final Expert Calculation, as defined herein. The LBHI Debtors shall have no responsibility for the maintenance or distribution of amounts paid to the Accepting Trustees on account of the Gross Settled Claim or the Net Settled Claim, which shall be the sole responsibility of the Accepting Trustees. The Accepting Trustees shall use their reasonable best efforts to distribute the amounts received from the LBHI Debtors on account of the Gross Settled Claim and the Net Settled Claim to the Settlement Trusts as promptly as possible.

3.02.    Release of Claims. For and in consideration of the allowance of the Net Settled Claim and the other agreements and consideration provided herein, the Settlement Trusts, the Trustees for the Settlement Trusts, and any and all persons claiming by, through, or on behalf of such Settlement Trusts (including any investors claiming derivatively for any such trust) and any and all agents or appointees acting on behalf of the Settlement Trustees (collectively, the

- 9 -

**EXECUTION VERSION**

"Releasors"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of the Released Parties for any and all claims (as defined in section 101 of the Bankruptcy Code) that were asserted, or that could have been asserted, in the Claims filed in the Bankruptcy Proceeding by the Trustees on behalf of the Settlement Trusts (collectively, all such claims being defined as the "Trust Released Claims"). Upon Final Court Approval: (a) each of the Claims filed by the Trustees on behalf of or related to the Trusts shall be allowed solely to the extent provided herein and otherwise shall be disallowed and expunged, provided that a Claim shall neither be allowed nor disallowed and expunged to the extent the Claim was asserted by the Trustees on behalf of any Non-Settling Trust on account of claims for breaches and representations and warranties concerning the Mortgage Loans in such Non-Settling Trusts; and (b) the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve on account of the Trust Released Claims. Except as provided herein, no distributions from the LBHI Debtors shall be required on account of the Trust Released Claims.

3.03 Allocation Formula. The Gross Settled Claim shall be allocated amongst the Trusts by the Trustees pursuant to the determination of the Expert who will make any determinations and perform any calculations required in connection with the allocation of the Gross Settled Claim among the Trusts. To the extent that the collateral in any Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Trusts solely for purposes of the allocation and distribution methodologies set forth below.

The Expert is to apply the following allocation formulas:

(a)    First, the Expert shall calculate the amount of Lifetime Losses for each Trust ("Individual Trust Loss").

(b)    Second, the "Adjusted Individual Trust Loss" shall be the Individual Trust Loss less 99% of the Lifetime Losses associated with Transferor Loans. For the avoidance of doubt, in calculating each Trust's Adjusted Individual Trust Loss, the Lifetime Losses associated with Covered Loans shall not be discounted.

(c)    Third, "Total Adjusted Trust Losses" shall be the sum of the Adjusted Individual Trust Losses for all Trusts.

(d)    Fourth, the "Trust Allocated Settlement Percentage" for each Trust shall be the Adjusted Individual Trust Loss for such Trust divided by the Total Adjusted Trust Losses.

(e)    Fifth, the "Allocable Share" for each Trust shall be the Gross Settled Claim multiplied by the Trust Allocated Settlement Percentage for such Trust.

In performing the calculations described above, the Expert shall be permitted to make such adjustments as are necessary to ensure that the effects of rounding do not (i) cause the sum of the Allocable Shares for all Trusts to exceed the amount of the Gross Settled Claim or (ii) cause the sum of the Allocable Shares for all Settlement Trusts to exceed the amount of the Net Settled Claim. The Expert shall calculate the final Allocable Share for each Trust within ninety

- 10 -

EXECUTION VERSION

(90) days of the later of the Acceptance Date of the last Accepting Trustee or Final Court Approval for any Trust for which the Trustees has sought the Trustee Findings (the "Final Expert Calculation").

3.04.   Plan Administrator's Allocation.

The Parties agree (a) that the allocation set forth in Section 3.03 above shall in no way be binding on the LBHI Debtors or affect the LBHI Debtors' right to account for and allocate the Gross Settled Claim and the Net Settled Claim in accordance with their own analyses of the Claims and in the best interests of the Estate, and (b) the Bankruptcy Court order approving this Settlement Agreement shall expressly preserve such right; provided, that, the LBHI Debtors' account and allocation of the Gross Settled Claim and the Net Settled Claim shall in no way affect the manner in which the Gross Settled Claim and Net Settled Claim are allocated among the Trusts as provided in Section 3.03 above.

3.05   Subsequent Recovery/Repayment of Principal.

(a)   The proceeds of each Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution to Investors in accordance with the distribution provisions of the Governing Agreements (taking into account the Expert's determination under Section 3.03) as though such Allocable Share was the proceeds of a mortgage repurchase (provided that if the Governing Agreement for a particular Settlement Trust does not include the concept of the proceeds of a mortgage repurchase, the Allocable Share of such Settlement Trust shall be distributed as though it was a subsequent recovery available for distribution on the related distribution date; and further provided that if the Governing Agreement for such a Settlement Trust does not include the concept of "subsequent recovery," the Allocable Share of such Settlement Trust shall be distributed as though it was unscheduled principal available for distribution on the related distribution date), subject to Section 3.03. If distribution of a Settlement Trust's Allocable Share would become payable to a class of REMIC residual interests, whether on the initial distribution of the Allocable Share or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Settlement Trust, such payment shall be maintained in the distribution account and the Trustee shall distribute it on the next distribution date according to the provisions of this Subsection 3.05(a).

(b)   After the distribution of the Allocable Share to Settlement Trusts pursuant to Subsection 3.05(a), the Trustee for a Settlement Trust will apply the amount of the Allocable Share for that Settlement Trust in the reverse order of previously allocated losses, to increase the balance of each class of securities (other than any class of REMIC residual interests) to which such losses have been previously allocated, but in each case by not more than the amount of such losses previously allocated to that class of securities pursuant to the Governing Agreements. For the avoidance of doubt, this Subsection 3.05(b) is intended only to increase the balances of the related classes of securities, as provided for herein, and shall not affect the distribution of the Gross Settled Claim and Net Settled Claim provided for in Subsection 3.05(a).

- 11 -

(c)    In no event shall the deposit or distribution of any amount hereunder into any Settlement Trust be deemed to reduce the Lifetime Losses experienced by such Settlement Trust.

(d)    Should the Trustee determine that the payment waterfall described above does not conform to the terms of the Governing Agreement for a particular Trust, the distribution described above shall be modified to distribute that Trust's Allocable Share as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the Trustee or court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

3.06.    No Alteration of Trigger Dates or Similar Credit Support Measurement Dates. Neither the Gross Settled Claim and Net Settled Claim nor any allocation or application thereof pursuant to Section 3.03, nor the receipt of any payments pursuant to Section 3.05 shall be deemed to reverse the occurrence of any transaction-related trigger in any Settlement Trust.

3.07.    Accepting Trustee Responsible for Distribution of Gross Settled Claim and Net Settled Claim. The Accepting Trustees shall administer the distribution of the Allocable Share of the proceeds of the Gross Settled Claim and Net Settled Claim to the related Settlement Trusts. Neither the LBHI Debtors nor any of the Institutional Investors shall have any liability to the Accepting Trustees, the Settlement Trusts, any Investor in such Settlement Trusts, or any other Person in connection with the determination, administration, or distribution of the Allocable Shares, including under any indemnification obligation that exists under any Governing Agreement.

3.08.    Expert Determination of Allocable Shares to be Conclusive. In the absence of bad faith or manifest error, the Expert's determinations and calculations of each Trust's Allocable Share of the Gross Settled Claim and Net Settled Claim shall be final for all purposes.

3.09.    Cooperation with Plan Administrator Loss Recovery Efforts. The Accepting Trustees will make best efforts, consistent with any confidentiality obligations, to assist and cooperate with the Plan Administrator's loss recovery efforts on behalf of creditors of the estate by doing each of the following:

(a)    Upon a Trustee's Final Acceptance, deliver to the Plan Administrator copies of all loan files received from the servicers in connection with the Protocol.

(b)    Upon Final Court Approval, deliver to the Plan Administrator copies of all claim write-ups and working papers of any vendor or expert retained by the Accepting Trustees (e.g., Digital Risk, Duff & Phelps) for all Mortgage Loans in the Settlement Trusts.

(c)    Upon Final Court Approval, cooperate with the Plan Administrator, as requested, to obtain additional information (i.e., loan files, payment histories, servicing notes, loss mitigation records, etc.) from the servicers for Mortgage Loans in the Settlement Trusts.

Provided, however, that the LBHI Debtors agree to compensate the Accepting Trustees for their

- 12 -

**EXECUTION VERSION**

reasonable and necessary costs and expenses in cooperating with any such request by the LBHI Debtors.

## ARTICLE IV.  CLAIMS NOT RELEASED

4.01.  Financial-Guaranty Provider Rights and Obligations.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Settlement Trust has rights or obligations wholly independent of the rights or obligations of the Trustee of or Investors in such Settlement Trust, the Accepting Trustees, or the Settlement Trusts, the releases and waivers in Article III are not intended to and shall not release such rights, if any, provided, however, that the LBHI Debtors reserve all rights with respect to the position they may take on whether the resolution of Claims pursuant to this Agreement shall offset or otherwise bar any claims asserted by a third party guarantor or financial-guaranty provider.

4.02.  Mortgage Originator and Third Party Guarantor Claims.  The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Accepting Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents), and (b) claims against any third party guarantor or financial-guaranty provider with respect to the Settlement Trusts, if any.

4.02.  Settlement Agreement Rights.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement.

4.03.  Disclosure Claims/Bar Date.  The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("Disclosure Claims") that an Investor may seek to assert based upon such Investor's purchase or sale of securities; provided, however, that the question of the extent to which any payment made or benefit conferred pursuant to this Settlement Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Settlement Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights. Notwithstanding the foregoing, the Investment Advisers for themselves, and not for any individual clients or funds they advise, state that they do not own any Disclosure Claims and hereby irrevocably, fully and finally release any Disclosure Claims to the extent they own such claims personally, and such Investment Advisers agree not to assist or advise any of the individual clients or funds that they advise in bringing any Disclosure Claim except to the extent legally required.  Nothing in this provision shall bar any individual client, or any fund advised by an Investment Adviser, from asserting its own Disclosure Claims on its own behalf.  Nothing in this Settlement Agreement is intended or shall be read to alter, modify, or amend any order of the Bankruptcy Court, any provision in the Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

4.04.  Repurchase Obligations of Unaffiliated Mortgage Sellers.  Claims against third-parties, unaffiliated with the LBHI Debtors, related to the origination and/or sale of Mortgage Loans sold or securitized by the LBHI Debtors are not released.  To the extent that the

- 13 -

EXECUTION VERSION

LBHI Debtors, or any successors or assigns of the LBHI Debtors, elect to pursue any third-parties, unaffiliated with the LBHI Debtors, for recovery based on the Trust Released Claims related to the origination and/or sale of Mortgage Loans, the Accepting Trustees agree to use commercially reasonable efforts to assist such pursuit.

4.05. <u>Obligations of Master Servicers and Servicers.</u> This Settlement Agreement shall not release or affect any obligation of any Master Servicer or Servicer not a debtor in the Bankruptcy Proceeding, including without limitation Aurora, under any of the Governing Agreements that pertain to the servicing of Mortgage Loans held by the Trusts.

4.06. <u>Correction of Certain Document Defects.</u> The releases and waivers in this agreement do not release any party from any existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects, provided however, that any claims for monetary damages against the LBHI Debtors based upon the failure to cure such defects shall be included with the Trust Released Claims, and further provided that nothing in this Section 4.06 is intended to or shall be interpreted to create new obligations on the part of any party.

4.07. <u>Inter-Debtor Claims.</u> This Settlement Agreement shall not waive, release or discharge any claims, liabilities, rights, obligations or other relationships held by one or more LBHI Debtors against one or more other LBHI Debtors.

ARTICLE V. <u>RELEASE OF UNKNOWN CLAIMS</u>

5.01. Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR."

5.02. The Parties acknowledge that inclusion of the provisions of this Article V to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

ARTICLE VI. <u>MISCELLANEOUS PROVISIONS</u>

6.01. <u>Holdings.</u> Each of the Institutional Investors shall continue to hold securities issued by at least one of the Settlement Trusts sufficient to support its individual standing to prosecute any intervention in any proceeding before the Bankruptcy Court seeking any Trustee Findings (the "<u>Required Holdings</u>"). Such maintenance of Required Holdings shall continue until the earliest of: (i) the later of the date on which the Final Acceptance Date or, if the Accepting Trustees elect to require Trustee Findings concerning the settlement, the date on

- 14 -

EXECUTION VERSION

which Final Court Approval is obtained, (ii) such time as Final Court Approval becomes legally impossible, or (iii) any material breach of the Settlement Agreement by the LBHI Debtors or any Accepting Trustee, which breach is not cured or waived within ninety (90) days of written notice of such breach having been provided by a party to the Settlement Agreement; provided, however, that continued holding is not required if prohibited by law, regulation, contract, or fiduciary obligations. The requirements of this Section 6.01 shall be met if any investor, fund, or entity included within the definition of that Institutional Investor maintains holdings in compliance with this Agreement. For the avoidance of doubt, other than as set forth above, this Agreement shall not restrict the right of any Institutional Investor to sell or exchange any security issued by a Settlement Trust free and clear of any encumbrance. No Trustee shall be required to provide any oversight with respect to the Institutional Investors' compliance with this Section 6.01. The Parties agree that the aggregate amounts of securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings of each Institutional Investor shall remain confidential, subject to review only by the LBHI Debtors and the Trustees unless required by law, regulation, or process.

6.02.    No Inconsistent Directions. Except for providing the Request Letter, the Institutional Investors agree that between the date hereof and the Effective Date, with respect to the securities issued by the Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or join with any other Investors or Trustees to cause the Trustees to enforce (or seek derivatively to enforce) any Claims for any Trust. Nothing in this Settlement Agreement shall restrict the ability of any Trustee to demand that any other Investor who seeks to direct the Trustee regarding the Settlement must post the indemnity or bond, if any, required or permitted by the Governing Agreements for the applicable Trust.

6.03.    No Amendments to Governing Agreements. The Parties agree that this Settlement Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement; provided, however, that compliance with this Settlement Agreement and its Exhibits shall be deemed compliance with the Governing Agreements and no Accepting Trustee shall make any subsequent claim to the contrary.

6.04.    Legal Fees. As payment of the attorneys' fees for counsel to the Institutional Investors for its work relating to the Settlement, Gibbs & Bruns, LLP shall be allocated, without conveyance to the Accepting Trustees, 4.75% of the Net Settled Claim by the Plan Administrator, without the requirement of submitting any form of estate retention or fee application.

6.05.    Voluntary Agreement. Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress. This Settlement Agreement is a settlement of disputed matters.

6.06.    No Admission of Breach or Wrongdoing. The LBHI Debtors have denied and continue to deny any breach, fault, liability, or wrongdoing. This denial includes, but is not limited to, allegations of breaches of representations and warranties, violations of state or federal

- 15 -

EXECUTION VERSION

securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which any LBHI Debtor was the Seller, Sponsor, Servicer, or Depositor. Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the LBHI Debtors with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the LBHI Debtors have or could have asserted. No statements made by any Party to this Settlement Agreement in support of the Settlement or the Trustee Findings shall be admissible in any other proceeding for any purpose.

6.07.   Concerning the Trustees.  The provisions of this Settlement Agreement shall not affect the rights and obligations of the Accepting Trustees under the applicable Governing Agreements, which shall equally apply to each and every such Trustee's rights and obligations under the Settlement Agreement. Nothing in this Settlement Agreement shall be construed to imply that any Trustee owes any greater duties under the Governing Agreements than it would otherwise owe under those agreements.

6.08.   Counterparts.  This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement. Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Settlement Agreement.

6.09.   Joint Drafting.  This Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

6.10.   Entire Agreement.  This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

6.11.   Specific Performance.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief as a remedy for any such breach. The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

6.12.   Authority.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

- 16 -

<u>**EXECUTION VERSION**</u>

6.13.    <u>No Obligation to Amend</u>.  The LBHI Debtors shall not be under any obligation to participate in the amendment of any term of any Governing Agreement and shall not have any liability to the Accepting Trustees, the Settlement Trusts, any Investor in such Settlement Trusts, or any other Person in connection with any amendment to any term of any Governing Agreement that the Accepting Trustees, the Settlement Trusts, any Investor in such Settlement Trusts, or any other Person determines is necessary to implement the terms of this Settlement Agreement.

6.14.    <u>No Third Party Beneficiaries</u>.  There are no third party beneficiaries of this Settlement Agreement.

6.15.    <u>Headings</u>.  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

6.16.    <u>Notices</u>.  All notices or demands given or made by one Party to the other relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

                To:    Institutional Investors
                        c/o Kathy Patrick
                        Gibbs & Bruns LLP
                        1100 Louisiana
                        Suite 5300
                        Houston, TX 77002
                        Tel: 713-650-8805
                        Email: kpatrick@gibbsbruns.com

                To:    The LBHI Debtors
                        c/o Paul Shalhoub
                        c/o Todd Cosenza
                        Willkie Farr & Gallagher LLP
                        787 Seventh Avenue
                        New York, NY 10019
                        Tel: 212-728-8000
                        Email: pshalhoub@willkie.com
                                tcosenza@willkie.com

                        c/o Michael Rollin
                        c/o Maritza Dominguez Braswell
                        Rollin Braswell Fisher LLC
                        8350 E. Crescent Parkway, Suite 100
                        Greenwood Village, CO 80111

- 17 -

EXECUTION VERSION

Tel: 303-945-7415
Email: mrollin@RBF.Law
mbraswell@RBF.Law

6.17.   Disputes and Bankruptcy Court Approval. This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof. Each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement.

6.18.   Press Statements. The Parties shall agree in advance on the text of a permissible disclosure concerning this Settlement, which shall be factual and non-disparaging. Either Party may issue a disclosure containing such information concurrently with the presentation of this binding offer to the Trustees. The Parties agree that any subsequent press statements concerning this agreement shall be factual and non-disparaging.

6.19.   Fiduciary Obligations. Nothing in this Settlement Agreement shall be construed to require any Party to breach any investment management agreement or fiduciary obligation to comply with this Settlement Agreement.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this
Settlement Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan
Administrator for Lehman Brothers Holding Inc.
and the other LBHI Debtors

By: _____

Name: _MATTHEW CANTOR_____

Title: _EVP LEGAL AFFAIRS_____

- 19 -

AEGON USA Investment Management, LLC

By: _____

Name: _Nathan W. Read_

Title: _Assistant Secretary_

BlackRock Financial Management Inc.

By: _____

Name: _____Stephen Ahrens_____

Title: _____Director_____

Cascade Investment, L.L.C.

By: _____

Name: _Keith Traverse_____

Title: _Authorized Representative_

Federal Home Loan Bank of Atlanta

By: _____

Name: _Reginald T. O'Shields_

Title: _SVP/General Counsel_

Goldman Sachs Asset Management, L.P.

By: _____

Name: _Kenneth A. Topping_____

Title: _Managing Director_____

Invesco Advisers, Inc.

By: _____

Name: _____

Title: _____

Kore Advisors, L.P.

By: _____

Name: _____Cory B. Nass_____

Title: _____General Counsel_____

Metropolitan Life Insurance Company

By: _____

Name: NANCY MUELLER HANDAL

Title: Senior Managing Director

PACIFIC INVESTMENT MANAGEMENT COMPANY LLC,
On behalf of various funds and accounts

By: _____

Douglas M. Hodge
Managing Director, Chief Executive Officer



The Prudential Insurance Company of America

By: _Richard B. Rogers_

Name: _Richard B. Rogers_

Title: _Vice President_

Sealink Funding Limited,
through its investment manager
Neuberger Berman Europe Limited

By: _____

Name: DRAKE DUBIN

Title: AUTHORISED SIGNATORY

The TCW Group, Inc.
On behalf of itself and its subsidiaries

By: _____

Name: _____
Meredith Jackson
Executive Vice President & General Counsel
Title: _____

Thrivent Financial for Lutherans

By: _____

Name:  Gregory Anderson

Title:  Director, Senior Portfolio Manager

Voya Investment Management LLC

By:

Gregory R. Addicks
Senior Vice President

Western Asset Management Company

By: _C. a Rod R_____

Name: _C.A. Ruys de Peer_____

Title: _____Secretary_____

EXECUTION VERSION

**EXHIBIT A**
**TRUSTS**

| No. | Trust Name |
|-----|------------|
| 1 | AAMES 2003-1 |
| 2 | ARC 2001-BC1 |
| 3 | ARC 2002-BC10 |
| 4 | ARC 2002-BC5 |
| 5 | ARC 2002-BC6 |
| 6 | ARC 2002-BC8 |
| 7 | ARC 2002-BC9 |
| 8 | ARC 2004-1 |
| 9 | BNC 2006-1 |
| 10 | BNC 2006-2 |
| 11 | BNC 2007-1 |
| 12 | BNC 2007-2 |
| 13 | BNC 2007-3 |
| 14 | BNC 2007-4 |
| 15 | ENCORE 2003-1 |
| 16 | FFMLT 2002-FF3 |
| 17 | FFMLT 2003-FF3 |
| 18 | FFMLT 2003-FFB |
| 19 | FFMLT 2004-FF7 |
| 20 | FFMLT 2004-FFA |
| 21 | FFMLT 2005-FF10 |
| 22 | FFMLT 2005-FF3 |
| 23 | FFMLT 2005-FF9 |
| 24 | FFMLT 2005-FFH2 |
| 25 | FFMLT 2006-FF10 |
| 26 | FFMLT 2006-FF12 |
| 27 | FFMLT 2006-FF14 |
| 28 | FFMLT 2006-FF15 |
| 29 | FFMLT 2006-FF17 |
| 30 | FFMLT 2006-FF2 |
| 31 | FFMLT 2006-FFA |
| 32 | FFMLT 2006-FFB |
| 33 | Finance America 2004-1 |
| 34 | Fremont 2004-3 |

- 1 -

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 35 | GPMF 2006-AR4 |
| 36 | GPMF 2006-AR5 |
| 37 | GPMF 2006-AR6 |
| 38 | GPMF 2006-AR7 |
| 39 | GPMF 2006-AR8 |
| 40 | GPMF 2007-AR1 |
| 41 | GPMF 2007-AR2 |
| 42 | GPMF 2007-AR3 |
| 43 | Greenpoint 2005-HE3 |
| 44 | Greenpoint 2006-HE1 |
| 45 | HLTV 2004-1 |
| 46 | LABS 2002-A |
| 47 | LABS 2003-1 |
| 48 | LABS 2004-1 |
| 49 | LABS 2004-2 |
| 50 | LABS 2005-1 |
| 51 | LABS 2007-1 |
| 52 | LABS MH 2001-B |
| 53 | Lehman Home Equity Loan Trust 1998-2 |
| 54 | LMT 2005-1 |
| 55 | LMT 2005-2 |
| 56 | LMT 2005-3 |
| 57 | LMT 2006-1 |
| 58 | LMT 2006-2 |
| 59 | LMT 2006-3 |
| 60 | LMT 2006-4 |
| 61 | LMT 2006-8 |
| 62 | LMT 2006-9 |
| 63 | LMT 2007-1 |
| 64 | LMT 2007-10 |
| 65 | LMT 2007-2 |
| 66 | LMT 2007-3 |
| 67 | LMT 2007-4 |
| 68 | LMT 2007-5 |
| 69 | LMT 2007-6 |
| 70 | LMT 2007-7 |
| 71 | LMT 2007-8 |

- 2 -

<u>EXECUTION VERSION</u>

| No. | Trust Name |
|-----|-----------|
| 72 | LMT 2007-9 |
| 73 | LMT 2008-2 |
| 74 | LMT 2008-6 |
| 75 | LXS 2005-1 |
| 76 | LXS 2005-10 |
| 77 | LXS 2005-2 |
| 78 | LXS 2005-3 |
| 79 | LXS 2005-4 |
| 80 | LXS 2005-5N |
| 81 | LXS 2005-6 |
| 82 | LXS 2005-7N |
| 83 | LXS 2005-8 |
| 84 | LXS 2005-9N |
| 85 | LXS 2006-1 |
| 86 | LXS 2006-10N |
| 87 | LXS 2006-11 |
| 88 | LXS 2006-12N |
| 89 | LXS 2006-13 |
| 90 | LXS 2006-14N |
| 91 | LXS 2006-15 |
| 92 | LXS 2006-16N |
| 93 | LXS 2006-17 |
| 94 | LXS 2006-18N |
| 95 | LXS 2006-19 |
| 96 | LXS 2006-20 |
| 97 | LXS 2006-2N |
| 98 | LXS 2006-3 |
| 99 | LXS 2006-4N |
| 100 | LXS 2006-5 |
| 101 | LXS 2006-7 |
| 102 | LXS 2006-8 |
| 103 | LXS 2006-9 |
| 104 | LXS 2006-GP1 |
| 105 | LXS 2006-GP2 |
| 106 | LXS 2006-GP3 |
| 107 | LXS 2006-GP4 |
| 108 | LXS 2007-1 |

| No. | Trust Name |
|-----|------------|
| 109 | LXS 2007-10H |
| 110 | LXS 2007-11 |
| 111 | LXS 2007-12N |
| 112 | LXS 2007-14H |
| 113 | LXS 2007-15N |
| 114 | LXS 2007-16N |
| 115 | LXS 2007-17H |
| 116 | LXS 2007-18N |
| 117 | LXS 2007-20N |
| 118 | LXS 2007-2N |
| 119 | LXS 2007-3 |
| 120 | LXS 2007-4N |
| 121 | LXS 2007-5H |
| 122 | LXS 2007-6 |
| 123 | LXS 2007-7N |
| 124 | LXS 2007-8H |
| 125 | LXS 2007-9 |
| 126 | Resmae 2007-1 |
| 127 | RLT 2008-2 |
| 128 | RLT 2008-AH1 |
| 129 | SAIL 2003-BC1 |
| 130 | SAIL 2003-BC10 |
| 131 | SAIL 2003-BC11 |
| 132 | SAIL 2003-BC12 |
| 133 | SAIL 2003-BC13 |
| 134 | SAIL 2003-BC2 |
| 135 | SAIL 2003-BC3 |
| 136 | SAIL 2003-BC4 |
| 137 | SAIL 2003-BC5 |
| 138 | SAIL 2003-BC6 |
| 139 | SAIL 2003-BC7 |
| 140 | SAIL 2003-BC8 |
| 141 | SAIL 2003-BC9 |
| 142 | SAIL 2004-1 |
| 143 | SAIL 2004-10 |
| 144 | SAIL 2004-11 |
| 145 | SAIL 2004-2 |

- 4 -

| No. | Trust Name |
| --- | --- |
| 146 | SAIL 2004-3 |
| 147 | SAIL 2004-4 |
| 148 | SAIL 2004-5 |
| 149 | SAIL 2004-6 |
| 150 | SAIL 2004-7 |
| 151 | SAIL 2004-8 |
| 152 | SAIL 2004-9 |
| 153 | SAIL 2004-BNC1 |
| 154 | SAIL 2004-BNC2 |
| 155 | SAIL 2005-1 |
| 156 | SAIL 2005-10 |
| 157 | SAIL 2005-11 |
| 158 | SAIL 2005-2 |
| 159 | SAIL 2005-3 |
| 160 | SAIL 2005-4 |
| 161 | SAIL 2005-5 |
| 162 | SAIL 2005-6 |
| 163 | SAIL 2005-7 |
| 164 | SAIL 2005-8 |
| 165 | SAIL 2005-9 |
| 166 | SAIL 2005-HE1 |
| 167 | SAIL 2005-HE2 |
| 168 | SAIL 2005-HE3 |
| 169 | SAIL 2006-1 |
| 170 | SAIL 2006-2 |
| 171 | SAIL 2006-3 |
| 172 | SAIL 2006-4 |
| 173 | SAIL 2006-BNC1 |
| 174 | SAIL 2006-BNC2 |
| 175 | SAIL 2006-BNC3 |
| 176 | SARM 2004-10 |
| 177 | SARM 2004-16 |
| 178 | SARM 2004-18 |
| 179 | SARM 2004-20 |
| 180 | SARM 2004-5 |
| 181 | SARM 2004-9XS |
| 182 | SARM 2005-11 |

| No. | Trust Name |
|-----|------------|
| 183 | SARM 2005-12 |
| 184 | SARM 2005-14 |
| 185 | SARM 2005-15 |
| 186 | SARM 2005-16XS |
| 187 | SARM 2005-17 |
| 188 | SARM 2005-19XS |
| 189 | SARM 2005-20 |
| 190 | SARM 2005-22 |
| 191 | SARM 2005-23 |
| 192 | SARM 2005-9 |
| 193 | SARM 2006-1 |
| 194 | SARM 2006-10 |
| 195 | SARM 2006-11 |
| 196 | SARM 2006-12 |
| 197 | SARM 2006-2 |
| 198 | SARM 2006-3 |
| 199 | SARM 2006-4 |
| 200 | SARM 2006-5 |
| 201 | SARM 2006-6 |
| 202 | SARM 2006-7 |
| 203 | SARM 2006-8 |
| 204 | SARM 2006-9 |
| 205 | SARM 2007-1 |
| 206 | SARM 2007-10 |
| 207 | SARM 2007-11 |
| 208 | SARM 2007-2 |
| 209 | SARM 2007-3 |
| 210 | SARM 2007-4 |
| 211 | SARM 2007-6 |
| 212 | SARM 2007-8 |
| 213 | SARM 2008-1 |
| 214 | SARM 2008-2 |
| 215 | SASCO 1996-4 |
| 216 | SASCO 1997-2 |
| 217 | SASCO 1998-2 |
| 218 | SASCO 1998-3 |
| 219 | SASCO 1998-6 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 220 | SASCO 1999-ALS3 |
| 221 | SASCO 1999-RF1 |
| 222 | SASCO 2001-1 |
| 223 | SASCO 2001-11 |
| 224 | SASCO 2001-16H |
| 225 | SASCO 2001-19 |
| 226 | SASCO 2001-2 |
| 227 | SASCO 2001-21A |
| 228 | SASCO 2001-6 |
| 229 | SASCO 2001-SB1 |
| 230 | SASCO 2002-10H |
| 231 | SASCO 2002-12 |
| 232 | SASCO 2002-13 |
| 233 | SASCO 2002-15 |
| 234 | SASCO 2002-17 |
| 235 | SASCO 2002-22H |
| 236 | SASCO 2002-5A |
| 237 | SASCO 2002-6 |
| 238 | SASCO 2002-AL1 |
| 239 | SASCO 2002-BC1 |
| 240 | SASCO 2002-HF1 |
| 241 | SASCO 2002-HF2 |
| 242 | SASCO 2002-NP1 |
| 243 | SASCO 2003-10 |
| 244 | SASCO 2003-12XS |
| 245 | SASCO 2003-14 |
| 246 | SASCO 2003-15A |
| 247 | SASCO 2003-16 |
| 248 | SASCO 2003-17A |
| 249 | SASCO 2003-18XS |
| 250 | SASCO 2003-20 |
| 251 | SASCO 2003-21 |
| 252 | SASCO 2003-23H |
| 253 | SASCO 2003-25XS |
| 254 | SASCO 2003-26A |
| 255 | SASCO 2003-28XS |
| 256 | SASCO 2003-29 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 257 | SASCO 2003-30 |
| 258 | SASCO 2003-32 |
| 259 | SASCO 2003-33H |
| 260 | SASCO 2003-34A |
| 261 | SASCO 2003-35 |
| 262 | SASCO 2003-36XS |
| 263 | SASCO 2003-38 |
| 264 | SASCO 2003-39EX |
| 265 | SASCO 2003-3XS |
| 266 | SASCO 2003-4 |
| 267 | SASCO 2003-6A |
| 268 | SASCO 2003-7H |
| 269 | SASCO 2003-8 |
| 270 | SASCO 2003-AL1 |
| 271 | SASCO 2003-AL2 |
| 272 | SASCO 2003-GEL1 |
| 273 | SASCO 2003-NP1 |
| 274 | SASCO 2003-NP2 |
| 275 | SASCO 2003-NP3 |
| 276 | SASCO 2003-RNP2 |
| 277 | SASCO 2003-S1 |
| 278 | SASCO 2003-S2 |
| 279 | SASCO 2004-10 |
| 280 | SASCO 2004-11XS |
| 281 | SASCO 2004-12H |
| 282 | SASCO 2004-13 |
| 283 | SASCO 2004-15 |
| 284 | SASCO 2004-16XS |
| 285 | SASCO 2004-17XS |
| 286 | SASCO 2004-18H |
| 287 | SASCO 2004-19XS |
| 288 | SASCO 2004-20 |
| 289 | SASCO 2004-21XS |
| 290 | SASCO 2004-22 |
| 291 | SASCO 2004-23XS |
| 292 | SASCO 2004-2AC |
| 293 | SASCO 2004-3 |

- 8 -

EXECUTION VERSION

| No. | Trust Name |
|-----|-----------|
| 294 | SASCO 2004-4XS |
| 295 | SASCO 2004-5H |
| 296 | SASCO 2004-6XS |
| 297 | SASCO 2004-7 |
| 298 | SASCO 2004-9XS |
| 299 | SASCO 2004-GEL1 |
| 300 | SASCO 2004-GEL2 |
| 301 | SASCO 2004-GEL3 |
| 302 | SASCO 2004-NP1 |
| 303 | SASCO 2004-NP2 |
| 304 | SASCO 2004-S2 |
| 305 | SASCO 2004-S3 |
| 306 | SASCO 2004-S4 |
| 307 | SASCO 2005-1 |
| 308 | SASCO 2005-10 |
| 309 | SASCO 2005-11H |
| 310 | SASCO 2005-14 |
| 311 | SASCO 2005-15 |
| 312 | SASCO 2005-17 |
| 313 | SASCO 2005-2XS |
| 314 | SASCO 2005-3 |
| 315 | SASCO 2005-3XS |
| 316 | SASCO 2005-4XS |
| 317 | SASCO 2005-5 |
| 318 | SASCO 2005-6 |
| 319 | SASCO 2005-6XS |
| 320 | SASCO 2005-7XS |
| 321 | SASCO 2005-8XS |
| 322 | SASCO 2005-9XS |
| 323 | SASCO 2005-AR1 |
| 324 | SASCO 2005-GEL1 |
| 325 | SASCO 2005-GEL2 |
| 326 | SASCO 2005-GEL3 |
| 327 | SASCO 2005-GEL4 |
| 328 | SASCO 2005-NC1 |
| 329 | SASCO 2005-NC2 |
| 330 | SASCO 2005-OPT1 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 331 | SASCO 2005-RF1 |
| 332 | SASCO 2005-RF2 |
| 333 | SASCO 2005-RF3 |
| 334 | SASCO 2005-RF4 |
| 335 | SASCO 2005-RF5 |
| 336 | SASCO 2005-RF6 |
| 337 | SASCO 2005-RF7 |
| 338 | SASCO 2005-RMS1 |
| 339 | SASCO 2005-S1 |
| 340 | SASCO 2005-S2 |
| 341 | SASCO 2005-S3 |
| 342 | SASCO 2005-S4 |
| 343 | SASCO 2005-S5 |
| 344 | SASCO 2005-S6 |
| 345 | SASCO 2005-S7 |
| 346 | SASCO 2005-SC1 |
| 347 | SASCO 2005-WF1 |
| 348 | SASCO 2005-WF2 |
| 349 | SASCO 2005-WF3 |
| 350 | SASCO 2005-WF4 |
| 351 | SASCO 2006-3H |
| 352 | SASCO 2006-AM1 |
| 353 | SASCO 2006-ARS1 |
| 354 | SASCO 2006-BC1 |
| 355 | SASCO 2006-BC2 |
| 356 | SASCO 2006-BC3 |
| 357 | SASCO 2006-BC4 |
| 358 | SASCO 2006-BC5 |
| 359 | SASCO 2006-BC6 |
| 360 | SASCO 2006-EQ1 |
| 361 | SASCO 2006-GEL1 |
| 362 | SASCO 2006-GEL2 |
| 363 | SASCO 2006-GEL3 |
| 364 | SASCO 2006-GEL4 |
| 365 | SASCO 2006-NC1 |
| 366 | SASCO 2006-OPT1 |
| 367 | SASCO 2006-OW1 |

EXECUTION VERSION

| No. | Trust Name |
|-----|------------|
| 368 | SASCO 2006-RF1 |
| 369 | SASCO 2006-RF2 |
| 370 | SASCO 2006-RF3 |
| 371 | SASCO 2006-RF4 |
| 372 | SASCO 2006-S1 |
| 373 | SASCO 2006-S2 |
| 374 | SASCO 2006-S3 |
| 375 | SASCO 2006-S4 |
| 376 | SASCO 2006-W1 |
| 377 | SASCO 2006-WF1 |
| 378 | SASCO 2006-WF2 |
| 379 | SASCO 2006-WF3 |
| 380 | SASCO 2006-Z |
| 381 | SASCO 2007-BC1 |
| 382 | SASCO 2007-BC2 |
| 383 | SASCO 2007-BC3 |
| 384 | SASCO 2007-BC4 |
| 385 | SASCO 2007-BNC1 |
| 386 | SASCO 2007-EQ1 |
| 387 | SASCO 2007-GEL1 |
| 388 | SASCO 2007-GEL2 |
| 389 | SASCO 2007-MLN1 |
| 390 | SASCO 2007-OS1 |
| 391 | SASCO 2007-RF1 |
| 392 | SASCO 2007-RF2 |
| 393 | SASCO 2007-RNP1 |
| 394 | SASCO 2007-SC1 |
| 395 | SASCO 2007-TC1 |
| 396 | SASCO 2007-WF1 |
| 397 | SASCO 2007-WF2 |
| 398 | SASCO FHA/VA 1998-RF1 |
| 399 | SASCO FHA/VA 1998-RF2 |
| 400 | SASCO FHA/VA 1998-RF3 |
| 401 | SASCO FHA/VA 1998-RF4 |
| 402 | SLH 1989-1 |
| 403 | TBW 2006-3 |
| 404 | Thornburg 2005-3 |

EXECUTION VERSION

| No. | Trust Name |
| --- | --- |
| 405 | Thornburg 2006-4 |
| 406 | WFHET 2004-1 |

EXECUTION VERSION

**EXHIBIT B**
**SUBSIDIARIES AND AFFILIATES**

| No. | Company Name |
|---|---|
| 1 | Lehman Brothers Holdings Inc. |
| 2 | 314 Commonwealth Ave. Inc. |
| 3 | Acesco Holdings Inc |
| 4 | Appalachian Asset Management Corp. |
| 5 | Battle Station LHCI., Inc. |
| 6 | Brookson Corp. |
| 7 | Brookwood Energy And Properties Inc. |
| 8 | Campus Door, Inc. |
| 9 | Capital Crossing Securities Corp II |
| 10 | Da Group Holdings Inc. |
| 11 | Diogenes Holdings Inc. |
| 12 | Diogenes Management Company Inc. |
| 13 | DI Mortgage Corporation |
| 14 | DOLCAP INC |
| 15 | E.F.H. Insurance Agency Of Pennsylvania, Inc. |
| 16 | Fleet Street Condos Inc. |
| 17 | Frah Special Services Inc. |
| 18 | Future Financial Holdings Inc. |
| 19 | GA Dekalb Inc. |
| 20 | Industrial Holdings Corporation |
| 21 | LB Brickstone Inc. |
| 22 | LB Eastview, Inc. |
| 23 | LB Funding Corp II |
| 24 | LB Hercules Agency, Inc. |
| 25 | LB I Group Inc. |
| 26 | LB Lakeside I Inc. |
| 27 | LB Lakeside II Inc. |
| 28 | LB Lakeside III Inc. |
| 29 | LB LIH Corp. |
| 30 | LB Skypower Inc. |
| 31 | LB Transaction No. 5 Inc. |
| 32 | LB Verve Condos Inc. |
| 33 | LB Windsor Capital One Bloor Street East Inc. |
| 34 | LB Windsor Kitchener Inc. |

- 13 -

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 35 | LB Windsor Pointz Avenue Inc. |
| 36 | LBMB CAPITAL PARTNERS V EAGLE ENERGY HOLDINGS |
| 37 | LBMB FUND (B) EAGLE ENERGY HOLDINGS LP |
| 38 | LBMB FUND EAGLE ENERGY HOLDINGS LP |
| 39 | LBMB PARTNERS EAGLE ENERGY HOLDINGS LP |
| 40 | LBTC Transfer Inc. |
| 41 | LCPI Properties, Inc. |
| 42 | Lehman ABS Corporation |
| 43 | Lehman Aircraft Securitization Holdings Inc. |
| 44 | Lehman Ali Inc. |
| 45 | Lehman Brothers  Asset Management Inc. |
| 46 | Lehman Brothers (Israel) Inc. |
| 47 | Lehman Brothers Bancorp, Inc. |
| 48 | Lehman Brothers Commercial Corporation |
| 49 | Lehman Brothers Commodity Services Inc. |
| 50 | Lehman Brothers Communications Associates Inc |
| 51 | Lehman Brothers Derivative Products Inc. |
| 52 | Lehman Brothers Europe Inc. |
| 53 | Lehman Brothers Finance (Japan) Inc. |
| 54 | Lehman Brothers Financial Products Inc. |
| 55 | Lehman Brothers Futures Asset Management Corp |
| 56 | Lehman Brothers International Services Inc. |
| 57 | Lehman Brothers Investment Holdings Company |
| 58 | Lehman Brothers Investments Japan Inc. |
| 59 | Lehman Brothers Merchant Banking Partners II |
| 60 | Lehman Brothers Mortgage Opportunity |
| 61 | Lehman Brothers OTC Derivatives Inc. |
| 62 | Lehman Brothers Overseas Inc. |
| 63 | Lehman Brothers Pera Inc. |
| 64 | Lehman Brothers Special Financing Inc. |
| 65 | Lehman Brothers U.K. Holdings (Delaware) Inc. |
| 66 | Lehman Brothers Venture Associates, Inc. |
| 67 | Lehman Brothers/FW Inc. |
| 68 | Lehman Brothers/Rosecliff Inc. |
| 69 | Lehman Commercial Paper Inc. |
| 70 | Lehman Housing Capital Inc. |
| 71 | Lehman Housing Lending Corp. |

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 72 | Lehman Investments Inc. |
| 73 | Lehman Pass-Through Securities Inc. |
| 74 | Lehman Tax Credit Advisor Inc. |
| 75 | Lehman VIP Holdings Inc. |
| 76 | LHCI GP VI Inc. |
| 77 | LHCI GP VII Inc. |
| 78 | LHCI GP VIII Inc. |
| 79 | LHCI GP X, Inc. |
| 80 | LHCI GP XI, Inc |
| 81 | LHCI Martinsburg GP Inc. |
| 82 | Libro Holdings I Inc. |
| 83 | LPTG Inc. |
| 84 | LW-GP2B, Inc |
| 85 | LW-GP2D, Inc. |
| 86 | LW-LP Inc. |
| 87 | LW-LP Properties Inc. |
| 88 | MBR/GP Corp. |
| 89 | MMP Funding Corporation |
| 90 | NJ Atlantic Inc. |
| 91 | NJ Somerset Inc. |
| 92 | NP Investment I Co. |
| 93 | PAC Aircraft Management Inc. |
| 94 | PAMI 5-7 East 17th Street Inc. |
| 95 | PAMI Newark Inc. |
| 96 | PAMI PPC I Inc. |
| 97 | PAMI Public/Private II, Inc. |
| 98 | PAMI Raymond Inc. |
| 99 | Petro L Corporation |
| 100 | Principal Transactions II Inc. |
| 101 | Principal Transactions Inc. |
| 102 | Property Asset Management Inc. |
| 103 | Real Estate Private Equity Inc. |
| 104 | Rock Hill Investors Inc. |
| 105 | SBA 2011 Acquisition Co Inc. |
| 106 | SASCO ARC CORPORATION |
| 107 | Select Asset Inc. |
| 108 | Sharpstown Center Inc. |

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 109 | Shearson Financial Services Of TX Inc. |
| 110 | Solar Finance Inc |
| 111 | Structured Asset Securities Corp |
| 112 | Structured Options Inc. |
| 113 | Thai Holding I Inc. |
| 114 | Thai Holding II Inc. |
| 115 | Tulsa Hotels LS, Inc |
| 116 | Warren Atlantic Inc. |
| 117 | Warren/GP Corp. |
| 118 | West Bay Club Development Corp. |
| 119 | West Bay Realty Inc. |
| 120 | Wharf Reinsurance Inc. |
| 121 | Winter Garden Inc. |
| 122 | Woodlands Commercial Corporation |
| 123 | Lehman Re Inc. |
| 124 | BK II Properties Inc. |
| 125 | ASIA INDO OPPORTUNITY I LTD |
| 126 | ASIA INDO OPPORTUNITY II LTD |
| 127 | BALLYBUNION INVESTMENT LIMITED |
| 128 | BALLYBUNION INVESTMENT NO 2 LIMITED |
| 129 | BALLYBUNION INVESTMENT NO 3 LIMITED |
| 130 | BIRCH Y.K. |
| 131 | BISON II SP. Z.O.O. |
| 132 | CAPITAL GROWTH INVESTMENTS LTD. |
| 133 | CENTRAL TOKYO HOLDINGS INC. |
| 134 | CENTRAL TOKYO INVESTMENTS INC. |
| 135 | CENTRAL TOKYO PROPERTIES INC. |
| 136 | CEREP III INVESTMENT D S.ÀR.L. |
| 137 | CIMT LIMITED |
| 138 | CJC INVESTMENTS INC |
| 139 | CYGNUS Y.K. |
| 140 | DYNAMO INVESTMENTS LIMITED |
| 141 | EAGLE HOLDINGS II INC |
| 142 | EAST DOVER LIMITED |
| 143 | ELMWOOD Y.K. |
| 144 | FALCON HOLDINGS II INC. |
| 145 | FALCON HOLDINGS III INC. |
| 146 | FALCON HOLDINGS IV INC. |

- 16 -

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 147 | FALCON INVESTOR I INC. |
| 148 | FALCON INVESTOR II INC. |
| 149 | FALCON INVESTOR III INC. |
| 150 | FALCON INVESTOR IV INC. |
| 151 | FALCON INVESTOR IX INC. |
| 152 | FALCON INVESTOR V INC . |
| 153 | FALCON INVESTOR VI INC. |
| 154 | FALCON INVESTOR VII INC. |
| 155 | FALCON INVESTOR VIII INC. |
| 156 | FALCON INVESTOR X INC. |
| 157 | GAINSBOROUGH INVESTMENTS BV |
| 158 | GKI KOREA DEVELOPMENT LIMITED |
| 159 | GKI KOREA MANAGEMENT LIMITED |
| 160 | GLOBAL KOREA INVESTMENTS LTD |
| 161 | GLOBAL TAIWAN INVESTMENTS LTD |
| 162 | GLOBAL THAI PROPERTY FUND |
| 163 | GRA FINANCE CORPORATION LTD. |
| 164 | HOLLYHOCK YK |
| 165 | HONG KONG TRUST NO. 1 |
| 166 | IVANHOE LANE PTY LTD |
| 167 | JAPAN REAL ESTATE INVESTMENT PARTNERSHIP INC. |
| 168 | JAPAN TK INVESTOR I (CAYMAN) HOLDINGS INC. |
| 169 | JASMINE Y.K. |
| 170 | KENILWORTH INVESTMENTS 1 LTD |
| 171 | KENILWORTH INVESTMENTS 2 LTD |
| 172 | KINGFISHER CAPITAL CDO LTD |
| 173 | L.B.A. YK |
| 174 | LAMCO Services Ltd |
| 175 | LB ALPHA FINANCE CAYMAN LIMITED |
| 176 | LB BETA FINANCE CAYMAN LIMITED |
| 177 | LB CANADA SKYPOWER |
| 178 | LB DAME LP S.ÀR.L. |
| 179 | LB DAME S.ÀR.L. |
| 180 | LB FINANCE JAPAN HEAD OFFICE |
| 181 | LB FUNDING BV |
| 182 | LB HONG KONG FUNDING TRUST |
| 183 | LB INDIA HOLDINGS MAURITIUS I LTD |
| 184 | LB INDIA HOLDINGS MAURITIUS II LTD |

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 185 | LB INVESTMENT MGMT COMPANY LTD (f/k/a LB INDIA HOLDINGS CAYMAN II LIMITED) |
| 186 | LB INVESTMENTS (UK) LTD |
| 187 | LB LUX RE HOLDINGS S.A.R.L |
| 188 | LB MAURITIUS I LTD. |
| 189 | LB OFFSHORE PARTNERS II LTD. |
| 190 | LB OFFSHORE PARTNERS LTD |
| 191 | LB OFFSHORE RE MEZZANINE ASSOC,LTD. |
| 192 | LB OPPORTUNITY HOLDING INC |
| 193 | LB RE FINANCING NO.1 LIMITED |
| 194 | LB SHELF CI IV |
| 195 | LB VINTNERS (LUXEMBOURG) S.ÀR.L. |
| 196 | LB VINTNERS BRIDGE (LUXEMBOURG) S.ÀR.L. |
| 197 | LB3 GMBH |
| 198 | LBD YK |
| 199 | LBE YK |
| 200 | LBHK FUNDING (CAYMAN) NO. 1 LIMITED |
| 201 | LBHK FUNDING (CAYMAN) NO. 2 LIMITED |
| 202 | LBHK FUNDING (CAYMAN) NO. 4 LIMITED |
| 203 | LBMB ASSOCIATES IV (EUROPE) S.A.R.L |
| 204 | LBMB EUROPE MGMT CORP SARL |
| 205 | LBO FUNDING (CAYMAN) LIMITED |
| 206 | LBQ FUNDING (CAYMAN) LIMITED |
| 207 | LBQ HONG KONG SERVICES LIMITED |
| 208 | LBREP GAITHERSBURG HOLDINGS LLC |
| 209 | LBS HOLDINGS SARL |
| 210 | LBSP HOLDING (IRLAND) PUBLIC LTD |
| 211 | LBSP LIMITED |
| 212 | LCPI DHS  (f/k/a LB SHELF II, INC.) |
| 213 | LEHMAN BROTHERS (CAYMAN ISLANDS) LTD. |
| 214 | LEHMAN BROTHERS (THAILAND) LIMITED PCO-NEWTHB |
| 215 | LEHMAN BROTHERS ASEAN OPPORTUNITY LTD |
| 216 | LEHMAN BROTHERS ASIA ISSUANCE CO LTD |
| 217 | LEHMAN BROTHERS AUSTRALIA SECURITIES PTY LIMITED |
| 218 | LEHMAN BROTHERS CAPITAL (THAILAND) LIMITED |
| 219 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN) II, LTD |
| 220 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN), LTD |
| 221 | Lehman Brothers Global Services Ltd. |

- 18 -

| No. | Company Name |
|-----|--------------|
| 222 | LEHMAN BROTHERS HK OLYMPUS FUNDING TRUST |
| 223 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP |
| 224 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP2 |
| 225 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP3 |
| 226 | LEHMAN BROTHERS HOLDINGS, INC. UK BRANCH |
| 227 | LEHMAN BROTHERS HY OPPORTUNITIES KOREA INC. |
| 228 | Lehman Brothers Investments Japan Inc. |
| 229 | LEHMAN BROTHERS LATIN AMERICA LIMITED |
| 230 | LEHMAN BROTHERS OFFSHORE COMMUNICATIONS ASSOCIATES LTD. |
| 231 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES II LTD. |
| 232 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES LTD |
| 233 | LEHMAN BROTHERS OPPORTUNITY LTD. |
| 234 | LEHMAN BROTHERS PACIFIC SERVICES |
| 235 | LEHMAN BROTHERS SOUTH EAST ASIA INVESTMENTS PTE LIMITED |
| 236 | LEHMAN BROTHERS UK INVESTMENTS LTD |
| 237 | LEHMAN RISK SERVICES (BERMUDA) LTD. |
| 238 | LEHMAN SCOTTISH FINANCE LP |
| 239 | LEHMAN VIP INVESTMENT LDC |
| 240 | LUXEMBOURG FINANCE S.A.R.L. |
| 241 | LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE SARL |
| 242 | M&L DEBT INVESTMENTS HOLDINGS PTY |
| 243 | M&L DEBT INVESTMENTS PTY LIMITED |
| 244 | MAEWHA K-STARS LTD |
| 245 | MARLIN INTERNATIONAL Y.K. |
| 246 | MEISHO ESTATE Y.K |
| 247 | MICT LIMITED |
| 248 | NOVACORP REALTY/GP INC. |
| 249 | OPAL FINANCE HOLDINGS IRELAND LIMITED |
| 250 | PHUKET HOTEL 3 HOLDING COMPANY LIMITED |
| 251 | REVIVAL HOLDINGS LIMITED |
| 252 | SATURN INVESTMENT INC |
| 253 | SERAFINO INVESTMENTS PTY LTD |
| 254 | SOGKI DEVELOPMENT INC. |
| 255 | SOGKI INC. |
| 256 | SOGKI MANAGEMENT INC |
| 257 | SOGTI INC. |
| 258 | SOR INVESTOR I INC |

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 259 | SOR INVESTORS IV INC |
| 260 | SOUTHWESTERN FIRST CAPITAL LLC |
| 261 | TAHOE Y.K. |
| 262 | TCP CAP VI GP (EUROPE) L.P. INC. |
| 263 | TMIC LIMITED |
| 264 | VINTNERS BIDCO S.C.A. |
| 265 | VINTNERS S.ÀR.L. |
| 266 | Y.K. SAPPHIRE INVESTMENT I |
| 267 | YELLOWTAIL INTERNATIONAL Y.K. |
| 268 | YK DUCKHORN |

# EXHIBIT 3

EXECUTION VERSION

## RMBS TRUST SETTLEMENT AGREEMENT

This RMBS Trust Settlement Agreement ("Settlement Agreement") is entered into as of November  30, 2016 (the "Agreement Date"), by and among Lehman Brothers Holdings Inc. (the "Plan Administrator") and the other Debtors in the Bankruptcy Proceeding (as defined below) (collectively, the "LBHI Debtors") and the authorized Investment Advisors (as defined below) and Investors (as defined below) identified in the attached signature pages (collectively, the "Institutional Investors"); and, upon acceptance as described below, the Accepting Trustees as defined and set forth herein.  Each of the LBHI Debtors and the Institutional Investors may be referred to herein as an "Initial Party" and collectively as the "Initial Parties."  Upon acceptance by the Accepting Trustees, the Accepting Trustees and the Initial Parties may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain of the LBHI Debtors entities were the Seller, Sponsor, and/or Depositor for (i) the 377 residential mortgage-backed securitizations identified on the attached Exhibit A (the "Trusts") and (ii) the 28 residential mortgage-backed securitizations identified on the attached Exhibit B (the "Terminated Trusts");

WHEREAS, certain of the LBHI Debtors entities are parties to certain applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the Trusts and Terminated Trusts (the "Governing Agreements");

WHEREAS, pursuant to the Governing Agreements, certain of the LBHI Debtors entities have contributed or sold loans originated by various entities into the Trusts and Terminated Trusts (the "Mortgage Loans");

WHEREAS, the LBHI Debtors commenced bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, styled or related to *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (the "Bankruptcy Proceeding");

WHEREAS, the trustees for the Trusts (each, a "Trustee") filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans in the Trusts and Terminated Trusts by various of the LBHI Debtors entities under the Governing Agreements (collectively, the "Proofs of Claims");

WHEREAS, the Trustees for the Terminated Trusts filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans in the Terminated Trusts by various of the LBHI Debtors entities under the Governing Agreements (collectively, the "Terminated Trusts Proofs of Claims");

WHEREAS, on December 29, 2014, the Court presiding over the Bankruptcy Proceeding entered an Order Establishing a Protocol to Resolve Claims Filed by the Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities (the "Loan File Review Protocol

Order") setting forth a protocol for the review of mortgage loan files, the assertion of RMBS Claims (as defined in the Loan File Review Protocol Order) by the Trustees, the response by the LBHI Debtors to such claims, and a mechanism for resolving disputes regarding such claims;

WHEREAS, the LBHI Debtors dispute the validity of the Proofs of Claims and the RMBS Claims (collectively, the "Claims") and the Terminated Trusts Proofs of Claims, and subject to the terms of this Settlement Agreement, waive no rights and preserve all of their defenses with respect to the Claims and the claims set forth in the Terminated Trusts Proofs of Claims;

WHEREAS, the Trustees maintain the validity of the Claims and, subject to the terms of this Settlement Agreement, waive no rights with respect to the Claims;

WHEREAS, the Institutional Investors are represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and, through counsel, engaged in extensive arm's length and good faith settlement negotiations with the LBHI Debtors regarding the Claims that included the use of David Geronemus of JAMS, as mediator, and the exchange of confidential materials;

WHEREAS, pursuant to this Settlement Agreement, the Parties wish to provide for a efficient, cost-effective, and equitable mechanism for fully and finally resolving the disputes between the Trustees and the LBHI Debtors regarding the Claims;

WHEREAS, this Settlement Agreement shall be presented to the Trustees for their consideration and approval, upon which approval the Trustees shall become Accepting Trustees (as defined herein) and Parties to this Settlement Agreement as set forth herein; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Claims and the Governing Agreements.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

## ARTICLE I.  DEFINITIONS

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement shall, with respect to any particular Trust or Terminated Trust, have the definition given to them in the Governing Agreements for that Trust or Terminated Trust, as applicable.

1.01.  "Acceptance Date" means January 9, 2017, unless extended as provided herein.

1.02.  "Accepting Trustees" means the Trustees following acceptance of the Settlement Agreement pursuant to Section 2.03.

1.03.    "Allocable Share" means, for any Trust, the share of the Settled Claim allocable to that Trust, as set forth herein.

1.04.    "Bankruptcy Court" means the Court presiding over the Bankruptcy Proceeding.

1.05    "Covered Loans" shall mean (a) the Mortgage Loans identified as the "Covered Loans" in The RMBS Trustees' Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code (ECF Doc. No. 46078), dated August 22, 2014, filed by the Trustees in the Bankruptcy Proceeding, and (b) the additional Mortgage Loans identified as "Covered Loans" in the Status Report of the RMBS Trustees with respect to Compliance with the Protocol and the Motion to Extend the Overall Claim File Cut-Off Date for Certain Loans under the Protocol Order and For Related Relief (ECF Doc. No. 52342).

1.06.    "Effective Date" shall mean the date of Final Court Approval.

1.07    "Estimation" shall mean the LBHI Debtors' loan-level estimation of the Claims under the Trusts, supported by legal and loan review professionals and expert analysis and analytics, pursuant to 11 U.S.C. § 502(c).

1.08.    "Estimation Proceeding" means an estimation proceeding, conducted by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c), at which proceeding the Bankruptcy Court will estimate and assign a value to the Claims, which value will constitute the full and final Settled Claim amount as provided herein.

1.09.    "Expert" means the professional firm retained or to be retained by one or more of the Accepting Trustees to perform any calculations required in connection with the allocation of the Settled Claim among the Trusts in accordance with Section 3.04 herein.

1.10.    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

1.11.    "Institutional Investors" shall mean the authorized Investment Advisors and Investors identified in the attached signature pages.

1.12.    "Investment Advisor" shall mean the following Institutional Investors: BlackRock Financial Management Inc.; Goldman Sachs Asset Management, L.P.; Invesco Advisers, Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Sealink Funding Limited, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; and Western Asset Management Company, and, for the avoidance of doubt, shall not include (i) any of the individual clients or funds whose assets are managed by such Investment Advisor or (ii) any affiliates of such Investment Advisor.

**EXECUTION VERSION**

1.13.    "Investors" shall mean all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees, and/or transferees, and beneficial holders of certificates, bonds or notes in the Trusts claiming rights through certificateholders, bondholders and noteholders in the Trusts.

1.14.    "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

1.15.    "Released Parties" shall mean: (i) any and all LBHI Debtors, including, without limitation, Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, BNC Mortgage LLC, Finance America LLC, and LBHI Debtors' affiliates and subsidiaries identified on Exhibit C hereto, and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents; and (ii) Aurora Commercial Corp., f/k/a Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, "Aurora"), and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents.

1.16.    "RMBS Reserve" means the reserve maintained by the LBHI Debtors pursuant to that certain order of the Bankruptcy Court dated February 22, 2012 (Docket No. 25643).

1.17.    "Settlement" means the negotiated settlement set forth in this Settlement Agreement, including all terms and conditions thereof.

1.18.    "Trustees" shall mean U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust National Association, Deutsche Bank National Trust Company, Wells Fargo, N.A. and/or co-trustees or separate trustees or successor trustees for any of the Trusts and Terminated Trusts appointed (either pursuant to court orders confirming their appointment or otherwise appointed), in each case acting in their capacities as trustees, co-trustees, separate trustees and/or successor trustees of the applicable Trust(s) or Terminated Trusts.

ARTICLE II.    SETTLEMENT PROCESS

2.01.    Effective Date for the LBHI Debtors and Institutional Investors.    This Settlement Agreement shall be binding and effective upon the LBHI Debtors (subject to Bankruptcy Court approval) and the Institutional Investors as of the Agreement Date and shall continue to be binding and irrevocable until: (i) the Acceptance Date has passed without acceptance by all Trustees; (ii) such time as the LBHI Debtors shall exercise any right they may have to terminate the Settlement Agreement under Section 2.03(c) below; or (iii) the date Final Court Approval becomes legally impossible.  Promptly following the Agreement Date, the LBHI Debtors shall request that the Bankruptcy Court schedule and hold a chambers conference so that the LBHI Debtors and the Institutional Investors may inform the Court of the existence and terms of this Settlement Agreement.  The LBHI Debtors and the Institutional Investors agree that, subject to acceptable confidentiality arrangements, counsel for the Trustees shall be informed of and entitled to attend such conference.

2.02.    Presentation of Settlement to Trustees/Intervention.

(a)    Request Letter. This Settlement Agreement shall be presented to the Trustees for their review, evaluation, and acceptance within one (1) business day of the Agreement Date as follows: The Institutional Investors shall submit, through their counsel, a letter (in the form annexed hereto as Exhibit D) to each of the Trustees expressing their support for the settlement and requesting and urging that each enter into the Settlement Agreement.

(b)    Intervention in Court Approval Process. Following the filing of the 9019 Motion (as defined in Section 2.03(a) below), the Institutional Investors shall jointly file a motion for leave to intervene (or a similar pleading) in the Bankruptcy Court (and, at the appropriate time, the United States District Court for the Southern District of New York (the "District Court") in connection with the District Court's consideration of the entry of the Trustee Findings (as defined in Section 2.06 below)), to evidence their support for the Settlement, Final Court Approval, as defined in Section 2.03(a) below, and the Settlement Agreement. Each of the Institutional Investors shall use their reasonable best efforts to prosecute the intervention, to support the Settlement, and to obtain Final Court Approval of the Settlement Agreement and entry of the Trustee Findings. The Institutional Investors' obligation to use reasonable best efforts shall continue until the earliest of (i) Final Court Approval, (ii) the date Final Court Approval becomes legally impossible, (iii) the date on which the LBHI Debtors terminate the Settlement Agreement pursuant to Section 2.03(c), below, or (iv) any material breach by the LBHI Debtors of the Settlement Agreement (which breach is not cured or waived within 90 days of written notice of such breach having been provided by a Party to this Agreement).

2.03.    Acceptance by Trustees/Final Court Approval.

(a)    Acceptance of Settlement Agreement/Notice. On or prior to the Acceptance Date, each Trustee shall provide written notice to the Institutional Investors and the LBHI Debtors accepting or rejecting the Settlement and an executed signature page for this Settlement Agreement to each of the Institutional Investors and the LBHI Debtors, subject to the entry of the Trustee Findings and the REMIC Approval (as defined in Section 2.06 below). Within 21 days of the Acceptance Date, if this Settlement Agreement is accepted by all of the Trustees on behalf of all of the Trusts on or before such date (the "Trustees' Acceptance"), the LBHI Debtors shall file a motion (the "Scheduling Motion") requesting that the Bankruptcy Court enter an order (1) approving a notice program with respect to its consideration of the 9019 Motion (as defined below), (2) setting a date by which all objections to the 9019 Motion must be filed and served, and (3) setting a the date of the hearing to consider approval of the 9019 Motion. Also within 21 days of the Trustees' Acceptance, the LBHI Debtors shall file a motion with the Bankruptcy Court (which may include the Scheduling Motion, the "9019 Motion") requesting that the Bankruptcy Court (i) approve this Settlement Agreement, (ii) enter the Trustee Findings, (iii) suspend the protocol established by the Loan File Review Protocol Order (the "Protocol"), and (iv) establish the manner in which the Estimation Proceeding shall take place and set the dates on which the Estimation

Proceeding will be conducted. Notice of the Settlement Agreement and the 9019 Motion shall be provided by the Trustees to all certificateholders in the Trusts and all financial guaranty institutions known to the Trustees to have an interest in the Trusts. Notice of the Settlement Agreement and the 9019 Motion shall be provided by the LBHI Debtors to those parties required to receive notice in the Bankruptcy Proceeding, and all known servicers and master servicers of loans in the Trusts and Terminated Trusts, all known mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement), and any other person who the LBHI Debtors shall conclude may have a claim or interest in the Trusts, the Terminated Trusts or the Settlement Agreement. Upon the Trustees' Acceptance, this Settlement Agreement shall continue in effect for unless and until: (i) the Bankruptcy Court (and the District Court to the extent of its review of the Bankruptcy Court's entry of the Trustee Findings pursuant to 28 U.S.C. § 1367) has issued a final and non-appealable judgment (including the expiration of any time to apply for discretionary review) denying approval of the Settlement Agreement and/or entry of the Trustee Findings; (ii) the date on which obtaining a final and non-appealable judgment (including the expiration of any time to apply for discretionary review) approving the Settlement Agreement and entry of the Trustee Findings (the "Final Court Approval") becomes legally impossible; or (iii) the Settlement Agreement is terminated in accordance with Section 2.03(c) below.

(b)     Best Efforts.  During the period during which Final Court Approval is being sought, the Accepting Trustees, the LBHI Debtors, and the Institutional Investors shall each be obligated to use their reasonable best efforts to obtain Final Court Approval of the Settlement and the entry of the Trustee Findings so long as there has been no material breach of this Settlement Agreement. The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the Trustees' Acceptance, or if any Party discovers facts that are additional to, inconsistent with, or different from those which they knew at the time they entered into this Settlement Agreement, until such time as Final Court Approval becomes legally impossible.

(c)     The LBHI Debtors' Right to Terminate.  The LBHI Debtors shall have the right to terminate this Settlement Agreement in the event that (i) the Trustees for all of the Trusts have not accepted this Settlement Agreement by the Acceptance Date, (ii) all of the Trusts are not included within Final Court Approval of the Settlement Agreement, (iii) with prior written consent of the Accepting Trustees, if the Bankruptcy Court has not entered an order approving this Settlement Agreement and the entry of the Trustee Findings by April 30, 2017, or (iv) (x) the REMIC Approval is not obtained by the date that is one year after entry of the Trustee Findings or (y) the LBHI Debtors form the good faith believe that no REMIC Approval will take place. The LBHI Debtors shall provide written notice to the Institutional Investors and the Accepting Trustees of the exercise of their right to terminate this Settlement Agreement in accordance with the terms of this paragraph. The LBHI Debtors' right to terminate this Settlement Agreement upon the occurrence of any of the events described in this paragraph shall be waived if not exercised, by providing notice as set forth in the preceding sentence, within 20 days following the occurrence of the applicable event.

2.04.    <u>Trustee Review</u>.  The Trustees shall have until the Acceptance Date to conduct an investigation of the Settlement and its terms.  The Trustees may conduct such diligence and may retain experts to assist them as they deem necessary to inform themselves concerning the Settlement.

2.05.    <u>Effect of Termination</u>.  In the event that the LBHI Debtors shall terminate this Settlement Agreement as provided for herein, the Settlement Agreement shall be null and void, and all pending claims filed by or on behalf of such Trusts shall be resolved pursuant to the Loan File Review Protocol Order, as amended by the Bankruptcy Court as appropriate in light of the suspension of the Protocol as provided for in Section 2.03(a) herein, or in such other manner as the Bankruptcy Court shall direct.

2.06.    <u>REMIC Approval/Trustee Findings</u>.  The Trustees may condition their acceptance of this Settlement Agreement upon:

(i) the final, non-appealable entry of findings by the Bankruptcy Court (approved by the District Court as described in Section 2.03(a) above) that the Trustees' acceptance of this Settlement Agreement was a reasonable and good faith exercise of the Trustees' authority and discretion under the applicable Governing Agreements (the "<u>Trustee Findings</u>"), and

(ii) the receipt of the earlier of either:

(a) An opinion of counsel, acceptable to the Parties but retained by the LBHI Debtors, applicable to all of the Trusts, to the effect that (i) the execution of, and transaction contemplated by, this Settlement Agreement will not cause a Trust for which a REMIC election (as defined in the Internal Revenue Code) has been made in accordance with the applicable Governing Agreement to fail to qualify as a REMIC, and (ii) the receipt of the Allocable Shares of the Settled Claim by the Trusts will not cause, or result in, the imposition of any taxes on the Trusts or on any portion of a Trust for which a REMIC election has been made in accordance with the terms of the applicable Governing Agreement (the "<u>REMIC Opinion</u>").  The LBHI Debtors shall use their reasonable best efforts to obtain the REMIC Opinion within 180 days of the Trustees' Acceptance.

or

(b) A private letter ruling(s), or similar guidance, acceptable to the Parties, applicable to all of the Trusts from the Internal Revenue Service to the effect that: (i) the execution of, and the transactions contemplated by, this Settlement Agreement will not cause any portion of a Trust for which a REMIC election (as defined in the Internal Revenue Code) has been made in accordance with the applicable Governing Agreement to fail to qualify at any time as a REMIC, and (ii) the receipt of the Allocable Shares of the Settlement Claim by the Trusts will not cause, or result in, the imposition of any taxes on the Trusts or on any portion of a Trust for which a REMIC election has been made in accordance with the terms of the applicable Governing Agreement (the "<u>REMIC Private Letter Ruling</u>").  The Trustees shall cause requests for such letter ruling(s) to be submitted, if necessary, to the Internal Revenue Service as promptly as practicable, and

shall use reasonable best efforts to pursue such request; such request may not be abandoned, unless the REMIC Opinion has been obtained, without the consent (which shall not unreasonably be withheld) of the LBHI Debtors and the Institutional Investors. In the event that the provisions of Section 3.06 of this Settlement Agreement are modified the Parties, the Trustees shall update their request(s) to the Internal Revenue Service to take account of such modifications. The LBHI Debtors shall use their reasonable best efforts to assist the Trustees' preparation and pursuit of the request for the rulings.

Receipt of the first to occur of either the REMIC Opinion or the REMIC Private Letter Ruling shall constitute the "REMIC Approval" as that term is used herein. The Parties acknowledge and agree that pursuit of the REMIC Approval shall not delay the commencement and conduct of the Estimation Proceeding, and such proceeding may take place and be completed while the applicable Parties pursue a REMIC Approval.

2.07  Bar Order.  In connection with the entry of the Trustee Findings, the Trustees may request the entry of an order barring certificateholders in the Trusts from asserting claims against the Trustees with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, provided however that the entry of such a bar order is not a condition of Final Court Approval.

2.08.  LBHI Representations.  The LBHI Debtors represent to the Trustees that each of the entities identified on Exhibit C hereto is an affiliate or subsidiary of one or more of the LBHI Debtors.

ARTICLE III.  SETTLEMENT TERMS

3.01.  Settlement Consideration and Payment.  The Settlement consideration shall consist of an allowed Class 7 General Unsecured claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc. in an amount to be determined by the Bankruptcy Court in the Estimation Proceeding (the "Settled Claim").  In accordance with the allocation methodology in Section 3.04, and after giving effect to the attorneys' fee provision in Section 6.05, each Trust shall be awarded the Adjusted Percentage of its Allocable Share.  Distributions on account of the Settled Claim shall be made by the LBHI Debtors, after giving effect to Section 6.05 below, in accordance with, and on the periodic distribution dates contained in, the LBHI Debtors' plan of reorganization, as confirmed by the Bankruptcy Court (the "Plan"), following the Final Expert Calculation, as defined in Section 3.04 below.  The LBHI Debtors shall have no responsibility for the maintenance or distribution of amounts paid to the Accepting Trustees on account of the Settled Claim, which shall be the sole responsibility of the applicable Accepting Trustee.  The Accepting Trustees shall use their reasonable best efforts to distribute, or cause to be distributed by the party responsible for distributing payments under the terms of the Governing Agreements of a given Trust, the amounts received from the LBHI Debtors on account of the Settled Claim promptly.

3.02  The Estimation Proceeding.

**EXECUTION VERSION**

(a)    The LBHI Debtors shall include in the 9019 Motion a request seeking Estimation of the Claims arising under or related to the Trusts pursuant to 28 U.S.C. § 502(c) (the "Estimation Motion"). In the Estimation Proceeding, the LBHI Debtors shall seek Estimation of the Claims arising under or related to the Trusts, for purposes of setting the amount of the Settled Claim under Section 3.01 herein, at a total amount of $2,440,000,000 (TWO BILLION, FOUR HUNDRED AND FORTY MILLION AND 00/100 DOLLARS), without prejudice to the rights of the LBHI Debtors to argue in furtherance of such estimation that an amount different from $2.44 billion is correct, reasonable, or legally and factually supportable.

(b)    The Trustees shall agree and consent to the Estimation Motion solely to the extent of agreeing to estimation of such Claims pursuant to 28 U.S.C. § 502(c). The Trustees shall be entitled to seek estimation of such Claims in the Estimation Proceeding at whatever sum they believe is justified by the facts and the law.

(c)    The LBHI Debtors and the Accepting Trustees agree that the Settled Claim amount decided by the Bankruptcy Court as a result of the Estimation Proceeding, shall be final, binding, and not subject to appeal or reconsideration.

(c)    The LBHI Debtors and the Accepting Trustees agree that the LBHI Debtors may offer into evidence before the Court, at the Estimation Proceeding, without objection by the Accepting Trustees: (i) the RMBS Trust Settlement Agreement entered into by and between the LBHI Debtors and the Institutional Investors on October 26, 2015; (ii) other settlement agreements in cases involving residential mortgage backed securities; and (iii) ███████████REDACTED███████████

3.03.    Release of Claims.  For and in consideration of the allowance of the Settled Claim and the other agreements and consideration provided herein, the Trusts, the Trustees for the Trusts, and any and all persons claiming by, through, or on behalf of such Trusts (including any investors claiming derivatively for any such trust) and any and all agents or appointees acting on behalf of the Trustees (collectively, the "Releasors"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of the Released Parties, as of the Effective Date, for any and all claims (as defined in section 101 of the Bankruptcy Code) that were asserted, or that could have been asserted, in the Claims filed or asserted in the Bankruptcy Proceeding or in the Protocol by the Trustees on behalf of the Trusts (collectively, all such claims being defined as the "Trust Released Claims").  Upon Final Court Approval: (a) each of the Claims filed  or asserted by the Trustees on behalf of or related to the Trusts shall be allowed solely to the extent provided herein and otherwise shall be disallowed and expunged; (b) the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve on account of the Trust Released Claims; and (c) the Settled Claim shall be conclusive of the Debtors' liability relating to the Claims.  Except as provided herein, no distributions from the LBHI Debtors shall be required on account of the Trust Released Claims.

3.04  Allocation Formula.  The Settled Claim shall be allocated amongst the Trusts by the Trustees, assigning to each Trust an "Allocable Share" of the Settled Claim, pursuant to the determination of the Expert who will make any determinations and perform any calculations required in connection with the allocation of the Settled Claim among the Trusts.  To the extent

EXECUTION VERSION

that the collateral in any Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Trusts solely for purposes of the allocation and distribution methodologies set forth below. The Trustees may fully and conclusively rely on the Expert's determinations and calculations without any obligation to independently re-verify the same.

The Expert shall assign an Allocable Share of the Settled Claim to each Trust, stated as a percentage, based upon the Expert's estimate of each Trust's proportionate share of the total aggregate claim of all of the Trusts.

In performing the calculations described above, the Expert shall be permitted to make such adjustments as are necessary to ensure that the effects of rounding do not (i) cause the sum of the Allocable Shares for all Trusts to exceed the amount of the Settled Claim or (ii) cause the sum of the Allocable Shares for all Trusts to exceed the amount of the Settled Claim. The Expert shall calculate the final Allocable Share for each Trust within thirty (30) days of Final Court Approval (the "Final Expert Calculation").

3.05.    Plan Administrator's Allocation.

The Parties agree (a) that the allocation set forth in Section 3.04 above shall in no way be binding on the LBHI Debtors or affect the LBHI Debtors' right to account for and allocate the Settled Claim in accordance with their own analyses of the Claims and in the best interests of the Estate, and (b) the Bankruptcy Court order approving this Settlement Agreement shall expressly preserve such right; provided, that, the LBHI Debtors' account and allocation of the Settled Claim shall in no way affect the allowance and priority of such claims or manner in which the Settled Claim is allocated among the Trusts as provided in Section 3.04 above.

3.06    Subsequent Recovery/Repayment of Principal.

(a)    The proceeds of each Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution in accordance with the distribution provisions of the Governing Agreements (taking into account the Expert's determination under Section 3.04) as though such Allocable Share was the proceeds of a mortgage repurchase (provided that if the Governing Agreement for a particular Trust does not include the concept of the proceeds of a mortgage repurchase, the Allocable Share of such Trust shall be distributed as though it was a subsequent recovery available for distribution on the related distribution date; and further provided that if the Governing Agreement for such a Trust does not include the concept of "subsequent recovery," the Allocable Share of such Trust shall be distributed as though it was unscheduled principal available for distribution on the related distribution date), subject to Section 3.04. If distribution of a Trust's Allocable Share would become payable to a class of REMIC residual interests, whether on the initial distribution of the Allocable Share or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Trust, such payment shall be maintained in the distribution account, and the applicable Trustee shall distribute, or cause to be distributed by the party responsible for distributing payments

under the terms of the Governing Agreements of a given Trust, it on the next distribution date according to the provisions of this Subsection 3.06(a).

(b)    After the distribution of the Allocable Share to Trusts pursuant to Subsection 3.06(a), the applicable Trustee, or the party responsible for calculating certificate balances pursuant to the terms of the Governing Agreements of a given Trust, will apply the amount of the Allocable Share for that Trust in the reverse order of previously allocated losses, to increase the balance of each class of securities (other than any class of REMIC residual interests) to which such losses have been previously allocated, but in each case by not more than the amount of such losses previously allocated to that class of securities pursuant to the Governing Agreements.  For the avoidance of doubt, this Subsection 3.06(b) is intended only to increase the balances of the related classes of securities, as provided for herein, and shall not affect the distribution of the Settled Claim provided for in Subsection 3.06(a).

(c)    In no event shall the deposit or distribution of any amount hereunder into any Trust be deemed to reduce the Lifetime Losses experienced by such Trust.

(d)    Should the party responsible for calculating distributions to Investors under the terms of the Governing Agreements of a given Trust or a court determine that the payment waterfall described above does not conform to the terms of the Governing Agreement for a particular Trust, the distribution described above shall be modified to distribute that Trust's Allocable Share as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the party responsible for calculating distributions under the terms of the Governing Agreements of a given Trust or a court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

3.07.    <u>No Alteration of Trigger Dates or Similar Credit Support Measurement Dates</u>. Neither the Settled Claim nor any allocation or application thereof pursuant to Section 3.04, nor the receipt of any payments pursuant to Section 3.06 shall be deemed to reverse the occurrence of any transaction-related trigger in any Trust.

3.08.    <u>Accepting Trustee Responsible for Distribution of Settled Claim</u>.  The Accepting Trustees shall administer, or cause to be distributed by the party responsible for distribution of the payments under the terms of the Governing Agreements of the applicable Trusts, the Allocable Share of the proceeds of the Settled Claim.  Neither the LBHI Debtors, the Institutional Investors or any other party, other than the party responsible for calculating and causing the distributions under the applicable Governing Agreements, shall have any liability to the Accepting Trustees, the Trusts, any Investor in such Trusts, or any other Person in connection with the determination, administration, or distribution of the Allocable Shares, including under any indemnification obligation that exists under any Governing Agreement.

3.09.    <u>Expert Determination of Allocable Shares to be Conclusive</u>.  In the absence of bad faith or manifest error, the Expert's determinations and calculations of each Trust's Allocable Share of the Settled Claim shall be final for all purposes.

**EXECUTION VERSION**

3.10.  <u>Full Satisfaction</u>.  The Settled Claim shall be in full and final satisfaction of any and all Claims and, except on account of distributions under the Plan with respect to the Settled Claim, there shall be no further recovery on, or distributions made under the Plan on account of, any of the Claims.

3.11.  <u>Release of RMBS Reserve</u>.  Notwithstanding anything to the contrary contained herein, following the Bankruptcy Court's determination of the Settled Claim amount, if the REMIC Approval has not occurred on or before October 31, 2017, the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve in excess of the amount necessary to make distributions under the Plan on account of the Settled Claim amount.

## ARTICLE IV.  <u>CLAIMS NOT RELEASED</u>

4.01.  <u>Financial-Guaranty Provider Rights and Obligations</u>.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Trust has rights or obligations wholly independent of the rights or obligations of the Trustee of or Investors in such Trust, the Accepting Trustees, or the Trusts, the releases and waivers in Article III are not intended to and shall not release such rights, if any, provided, however, that the LBHI Debtors reserve all rights with respect to the position they may take on whether the resolution of Claims pursuant to this Agreement shall offset or otherwise bar any claims asserted by a third party guarantor or financial-guaranty provider.

4.02.  <u>Mortgage Originator and Third Party Guarantor Claims</u>.  The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Accepting Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents), and (b) claims against any third party guarantor or financial-guaranty provider with respect to the Trusts, if any.

4.02.  <u>Settlement Agreement Rights</u>.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement.

4.03.  <u>Disclosure Claims/Bar Date</u>.  The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("Disclosure Claims") that an Investor may seek to assert based upon such Investor's purchase or sale of securities; provided, however, that the question of the extent to which any payment made or benefit conferred pursuant to this Settlement Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Settlement Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights. Notwithstanding the foregoing, the Investment Advisers for themselves, and not for any individual clients or funds they advise, state that they do not own any Disclosure Claims and hereby irrevocably, fully and finally release any Disclosure Claims to the extent they own such claims personally, and such Investment Advisers agree not to assist or advise any of the individual clients or funds that they advise in bringing any Disclosure Claim except to the extent legally required.   Nothing in this provision shall bar any individual client, or any fund advised by an Investment Adviser, from asserting its own Disclosure Claims on its own behalf.  Nothing

in this Settlement Agreement is intended or shall be read to alter, modify, or amend any order of the Bankruptcy Court, any provision in the Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

4.04.    Repurchase Obligations of Unaffiliated Mortgage Sellers. Claims against parties other than the Released Parties related to the origination and/or sale of Mortgage Loans sold or securitized by the LBHI Debtors are not released. To the extent that the LBHI Debtors, or any successors or assigns of the LBHI Debtors, elect to pursue any third-parties, unaffiliated with the LBHI Debtors, for recovery based on the Trust Released Claims related to the origination and/or sale of Mortgage Loans, the Accepting Trustees agree to use commercially reasonable efforts to assist such pursuit (provided that the LBHI Debtors shall compensate the Accepting Trustees for their reasonable and necessary fees, costs and expenses in providing such assistance).

4.05.    Obligations of Master Servicers and Servicers. This Settlement Agreement shall not release or affect any obligation of any Master Servicer or Servicer not a debtor in the Bankruptcy Proceeding, including without limitation Aurora, under any of the Governing Agreements that pertain to the servicing of Mortgage Loans held by the Trusts.

4.06.    Correction of Certain Document Defects. The releases and waivers in this agreement do not release any party from any existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects, provided however, that any claims for monetary damages against the LBHI Debtors based upon the failure to cure such defects shall be included with the Trust Released Claims, and further provided that nothing in this Section 4.06 is intended to or shall be interpreted to create new obligations on the part of any party.

4.07.    Inter-Debtor Claims. This Settlement Agreement shall not waive, release or discharge any claims, liabilities, rights, obligations or other relationships held by one or more LBHI Debtors against one or more other LBHI Debtors.

ARTICLE V. RELEASE OF UNKNOWN CLAIMS

5.01.    Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

5.02.    The Parties acknowledge that inclusion of the provisions of this Article V to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

## ARTICLE VI. <u>MISCELLANEOUS PROVISIONS</u>

6.01. <u>Terminated Trusts</u>. Effective as of the Effective Date, the Terminated Trusts Proofs of Claim shall be deemed withdrawn with prejudice.

6.02. <u>Holdings</u>. Each of the Institutional Investors shall continue to hold securities issued by at least one of the Trusts sufficient to support its individual standing to prosecute any intervention in any proceeding seeking entry of the Trustee Findings (the "<u>Required Holdings</u>"). Such maintenance of Required Holdings shall continue until the earliest of: (i) the date on which Final Court Approval is obtained; (ii) such time as Final Court Approval becomes legally impossible; or (iii) any material breach of the Settlement Agreement by the LBHI Debtors or any Accepting Trustee, which breach is not cured or waived within ninety (90) days of written notice of such breach having been provided by a party to the Settlement Agreement; provided, however, that continued holding is not required if prohibited by law, regulation, contract, or fiduciary obligations. The requirements of this Section 6.02 shall be met if any investor, fund, or entity included within the definition of that Institutional Investor maintains holdings in compliance with this Agreement. For the avoidance of doubt, other than as set forth above and/or as otherwise required by federal or state securities laws, this Agreement shall not restrict the right of any Institutional Investor to sell or exchange any security issued by a Trust free and clear of any encumbrance. No Trustee shall be required to provide any oversight with respect to the Institutional Investors' compliance with this Section 6.02. The Parties agree that the aggregate amounts of securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings of each Institutional Investor shall remain confidential, subject to review only by the LBHI Debtors and the Trustees unless required by law, regulation, or process.

6.03. <u>No Inconsistent Directions</u>. Except for providing the Request Letter, the Institutional Investors agree that between the date hereof and the Effective Date, with respect to the securities issued by the Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or join with any other Investors or Trustees to cause the Trustees to enforce (or seek derivatively to enforce) any Claims for any Trust. Nothing in this Settlement Agreement shall restrict the ability of, or require, any Trustee to demand that any other Investor who seeks to direct the Trustee regarding the Settlement must post the indemnity or bond, if any, required or permitted by the Governing Agreements for the applicable Trust.

6.04. <u>No Amendments to Governing Agreements</u>. The Parties agree that this Settlement Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement; provided, however, that compliance with this Settlement Agreement and its Exhibits shall be deemed compliance with the Governing Agreements and no Party shall make any subsequent claim to the contrary.

6.05. <u>Legal Fees</u>. As payment of the attorneys' fees for counsel to the Institutional Investors for its work relating to the Settlement, Gibbs & Bruns, LLP shall be allocated, without conveyance to the Accepting Trustees, 4.75% of the first $2,440,000,000 of the Settled Claim (the "<u>Legal Fees</u>") by the Plan Administrator, without the requirement of submitting any form of

estate retention or fee application. For purposes of Section 3.01 herein, the Adjusted Percentage shall equal the Settled Claim, minus the Legal Fees, divided by the Settled Claim, expressed as a percentage. Distributions under the Plan on account of the Legal Fees shall be made at such times as distributions are made on account of the Settled Claim in accordance with, and on the periodic distribution dates contained in, the Plan.

6.06.    <u>Voluntary Agreement</u>. Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress. This Settlement Agreement is a settlement of disputed matters.

6.07.    <u>No Admission of Breach or Wrongdoing</u>. The LBHI Debtors have denied and continue to deny any breach, fault, liability, or wrongdoing. This denial includes, but is not limited to, allegations of breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which any LBHI Debtor was the Seller, Sponsor, Servicer, or Depositor. Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the LBHI Debtors with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the LBHI Debtors have or could have asserted. No statements made by any Party to this Settlement Agreement in support of the Settlement or the Trustee Findings shall be admissible in any other proceeding for any purpose.

6.08.    <u>Concerning the Trustees</u>. The provisions of this Settlement Agreement shall not affect the rights and obligations of the Accepting Trustees under the applicable Governing Agreements, which shall equally apply to each and every such Trustee's rights and obligations under the Settlement Agreement. Nothing in this Settlement Agreement shall be construed to imply that any Trustee owes any greater duties under the Governing Agreements than it would otherwise owe under those agreements.

6.09.    <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement. Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Settlement Agreement.

6.10.    <u>Joint Drafting</u>. This Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

6.11.    <u>Entire Agreement</u>. This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties, at the relevant point in time, or their duly appointed agents. All prior agreements and

understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

6.12.    Specific Performance.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief as a remedy for any such breach.  The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

6.13.    Authority.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

6.14.    No Obligation to Amend.  The LBHI Debtors shall not be under any obligation to participate in the amendment of any term of any Governing Agreement and shall not have any liability to the Accepting Trustees, the Trusts, any Investor in such Trusts, or any other Person in connection with any amendment to any term of any Governing Agreement that the Accepting Trustees, the Trusts, any Investor in such Trusts, or any other Person determines is necessary to implement the terms of this Settlement Agreement.

6.15.    No Third Party Beneficiaries.  There are no third party beneficiaries of this Settlement Agreement.

6.16.    Headings.  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

6.17.    Notices.  All notices or demands given or made by one Party to another Party relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

> To:    Institutional Investors
> c/o Kathy Patrick
> Gibbs & Bruns LLP
> 1100 Louisiana
> Suite 5300
> Houston, TX 77002
> Tel: 713-650-8805
> Email:  kpatrick@gibbsbruns.com

> To:    The LBHI Debtors

**EXECUTION VERSION**

c/o Paul Shalhoub
c/o Todd Cosenza
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-728-8000
Email: pshalhoub@willkie.com
        tcosenza@willkie.com

c/o Michael Rollin
c/o Maritza Dominguez Braswell
Rollin Braswell Fisher LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Tel: 303-945-7415
Email: mrollin@RBF.Law
        mbraswell@RBF.Law

To:   The Accepting Trustees, at such addresses identified in writing by the applicable Accepting Trustee to the other Parties.

6.18.   Disputes and Bankruptcy Court Approval. This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof. Each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. Thereafter, each of the Parties hereto consents to the jurisdiction of the federal and state courts of New York with respect to such matters.

6.19.   Press Statements. The Parties shall agree in advance on the text of a permissible disclosure concerning this Settlement, which shall be factual and non-disparaging. Either Party may issue a disclosure containing such information concurrently with the presentation of this binding offer to the Trustees. The Parties agree that any subsequent press statements concerning this agreement shall be factual and non-disparaging.

6.20.   Fiduciary Obligations. Nothing in this Settlement Agreement shall be construed to require any Party to breach any investment management agreement or fiduciary obligation to comply with this Settlement Agreement.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

**EXECUTION COPY**

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this Settlement Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan
Administrator for Lehman Brothers Holdings Inc.
and the other LBHI Debtors

By: _____

Name: _MATTHEW CANTOR_

Title: _SVP - LEGAL AFFAIRS_

**EXECUTION VERSION**

Gibbs & Bruns, LLP,
counsel to, and authorized signatory for:

AEGON USA Investment Management, LLC,
Blackrock Financial Management, Inc.,
Cascade Investment, L.L.C.,
The Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
The Metropolitan Life Insurance Company,
Pacific Investment Management, LLC,
SeaLink Funding Limited,
The TCW Group, Inc.,
Thrivent Financial for Lutherans,
Voya Investment Management, and
Western Asset Management Company.

By: _____

Name: ___Robert Madden_____

Title: ___Partner, Gibbs & Bruns, LLP___

**EXECUTION VERSION**

# EXHIBIT A
# TRUSTS

| No. | Trust Name |
| --- | --- |
| 1 | ARC 2001-BC1 |
| 2 | ARC 2002-BC10 |
| 3 | ARC 2002-BC5 |
| 4 | ARC 2002-BC6 |
| 5 | ARC 2002-BC8 |
| 6 | ARC 2002-BC9 |
| 7 | ARC 2004-1 |
| 8 | BNC 2006-1 |
| 9 | BNC 2006-2 |
| 10 | BNC 2007-1 |
| 11 | BNC 2007-2 |
| 12 | BNC 2007-3 |
| 13 | BNC 2007-4 |
| 14 | ENCORE 2003-1 |
| 15 | FFMLT 2002-FF3 |
| 16 | FFMLT 2003-FF3 |
| 17 | FFMLT 2003-FFB |
| 18 | FFMLT 2004-FF7 |
| 19 | FFMLT 2004-FFA |
| 20 | FFMLT 2005-FF10 |
| 21 | FFMLT 2005-FF3 |
| 22 | FFMLT 2005-FF9 |
| 23 | FFMLT 2005-FFH2 |
| 24 | FFMLT 2006-FF10 |
| 25 | FFMLT 2006-FF12 |
| 26 | FFMLT 2006-FF14 |
| 27 | FFMLT 2006-FF15 |
| 28 | FFMLT 2006-FF17 |
| 29 | FFMLT 2006-FF2 |
| 30 | FFMLT 2006-FFA |
| 31 | FFMLT 2006-FFB |
| 32 | Finance America 2004-1 |
| 33 | Fremont 2004-3 |
| 34 | GPMF 2006-AR4 |
| 35 | GPMF 2006-AR5 |
| 36 | GPMF 2006-AR6 |
| 37 | GPMF 2006-AR7 |

EXECUTION VERSION

| 38 | GPMF 2006-AR8 |
| 39 | GPMF 2007-AR1 |
| 40 | GPMF 2007-AR2 |
| 41 | GPMF 2007-AR3 |
| 42 | Greenpoint 2005-HE3 |
| 43 | HLTV 2004-1 |
| 44 | LABS 2002-A |
| 45 | LABS 2004-1 |
| 46 | LABS 2004-2 |
| 47 | LABS 2005-1 |
| 48 | LABS 2007-1 |
| 49 | LABS MH 2001-B |
| 50 | Lehman Home Equity Loan Trust 1998-2 |
| 51 | LMT 2005-1 |
| 52 | LMT 2005-2 |
| 53 | LMT 2005-3 |
| 54 | LMT 2006-1 |
| 55 | LMT 2006-2 |
| 56 | LMT 2006-3 |
| 57 | LMT 2006-4 |
| 58 | LMT 2006-8 |
| 59 | LMT 2006-9 |
| 60 | LMT 2007-1 |
| 61 | LMT 2007-10 |
| 62 | LMT 2007-2 |
| 63 | LMT 2007-3 |
| 64 | LMT 2007-4 |
| 65 | LMT 2007-5 |
| 66 | LMT 2007-6 |
| 67 | LMT 2007-7 |
| 68 | LMT 2007-8 |
| 69 | LMT 2007-9 |
| 70 | LMT 2008-2 |
| 71 | LMT 2008-6 |
| 72 | LXS 2005-1 |
| 73 | LXS 2005-10 |
| 74 | LXS 2005-2 |
| 75 | LXS 2005-3 |
| 76 | LXS 2005-4 |
| 77 | LXS 2005-5N |
| 78 | LXS 2005-6 |
| 79 | LXS 2005-7N |
| 80 | LXS 2005-8 |

EXECUTION VERSION

| 81  | LXS 2005-9N   |
| 82  | LXS 2006-1    |
| 83  | LXS 2006-10N  |
| 84  | LXS 2006-11   |
| 85  | LXS 2006-12N  |
| 86  | LXS 2006-13   |
| 87  | LXS 2006-14N  |
| 88  | LXS 2006-15   |
| 89  | LXS 2006-16N  |
| 90  | LXS 2006-17   |
| 91  | LXS 2006-18N  |
| 92  | LXS 2006-19   |
| 93  | LXS 2006-20   |
| 94  | LXS 2006-2N   |
| 95  | LXS 2006-3    |
| 96  | LXS 2006-4N   |
| 97  | LXS 2006-5    |
| 98  | LXS 2006-7    |
| 99  | LXS 2006-8    |
| 100 | LXS 2006-9    |
| 101 | LXS 2006-GP1  |
| 102 | LXS 2006-GP2  |
| 103 | LXS 2006-GP3  |
| 104 | LXS 2006-GP4  |
| 105 | LXS 2007-1    |
| 106 | LXS 2007-10H  |
| 107 | LXS 2007-11   |
| 108 | LXS 2007-12N  |
| 109 | LXS 2007-14H  |
| 110 | LXS 2007-15N  |
| 111 | LXS 2007-16N  |
| 112 | LXS 2007-17H  |
| 113 | LXS 2007-18N  |
| 114 | LXS 2007-20N  |
| 115 | LXS 2007-2N   |
| 116 | LXS 2007-3    |
| 117 | LXS 2007-4N   |
| 118 | LXS 2007-5H   |
| 119 | LXS 2007-6    |
| 120 | LXS 2007-7N   |
| 121 | LXS 2007-8H   |
| 122 | LXS 2007-9    |
| 123 | RLT 2008-AH1  |

| 124 | SAIL 2003-BC1 |
| 125 | SAIL 2003-BC10 |
| 126 | SAIL 2003-BC11 |
| 127 | SAIL 2003-BC12 |
| 128 | SAIL 2003-BC13 |
| 129 | SAIL 2003-BC2 |
| 130 | SAIL 2003-BC3 |
| 131 | SAIL 2003-BC4 |
| 132 | SAIL 2003-BC5 |
| 133 | SAIL 2003-BC6 |
| 134 | SAIL 2003-BC7 |
| 135 | SAIL 2003-BC8 |
| 136 | SAIL 2003-BC9 |
| 137 | SAIL 2004-1 |
| 138 | SAIL 2004-10 |
| 139 | SAIL 2004-11 |
| 140 | SAIL 2004-2 |
| 141 | SAIL 2004-3 |
| 142 | SAIL 2004-4 |
| 143 | SAIL 2004-5 |
| 144 | SAIL 2004-6 |
| 145 | SAIL 2004-7 |
| 146 | SAIL 2004-8 |
| 147 | SAIL 2004-9 |
| 148 | SAIL 2004-BNC1 |
| 149 | SAIL 2004-BNC2 |
| 150 | SAIL 2005-1 |
| 151 | SAIL 2005-10 |
| 152 | SAIL 2005-11 |
| 153 | SAIL 2005-2 |
| 154 | SAIL 2005-3 |
| 155 | SAIL 2005-4 |
| 156 | SAIL 2005-5 |
| 157 | SAIL 2005-6 |
| 158 | SAIL 2005-7 |
| 159 | SAIL 2005-8 |
| 160 | SAIL 2005-9 |
| 161 | SAIL 2005-HE1 |
| 162 | SAIL 2005-HE2 |
| 163 | SAIL 2005-HE3 |
| 164 | SAIL 2006-1 |
| 165 | SAIL 2006-2 |
| 166 | SAIL 2006-3 |

| 167 | SAIL 2006-4 |
| 168 | SAIL 2006-BNC1 |
| 169 | SAIL 2006-BNC2 |
| 170 | SAIL 2006-BNC3 |
| 171 | SARM 2004-10 |
| 172 | SARM 2004-16 |
| 173 | SARM 2004-18 |
| 174 | SARM 2004-20 |
| 175 | SARM 2004-5 |
| 176 | SARM 2004-9XS |
| 177 | SARM 2005-11 |
| 178 | SARM 2005-12 |
| 179 | SARM 2005-14 |
| 180 | SARM 2005-15 |
| 181 | SARM 2005-16XS |
| 182 | SARM 2005-17 |
| 183 | SARM 2005-19XS |
| 184 | SARM 2005-20 |
| 185 | SARM 2005-22 |
| 186 | SARM 2005-23 |
| 187 | SARM 2005-9 |
| 188 | SARM 2006-1 |
| 189 | SARM 2006-10 |
| 190 | SARM 2006-11 |
| 191 | SARM 2006-12 |
| 192 | SARM 2006-2 |
| 193 | SARM 2006-3 |
| 194 | SARM 2006-4 |
| 195 | SARM 2006-5 |
| 196 | SARM 2006-6 |
| 197 | SARM 2006-7 |
| 198 | SARM 2006-8 |
| 199 | SARM 2006-9 |
| 200 | SARM 2007-1 |
| 201 | SARM 2007-10 |
| 202 | SARM 2007-11 |
| 203 | SARM 2007-2 |
| 204 | SARM 2007-3 |
| 205 | SARM 2007-4 |
| 206 | SARM 2007-6 |
| 207 | SARM 2007-8 |
| 208 | SARM 2008-1 |
| 209 | SARM 2008-2 |

| 210 | SASCO 1996-4 |
| 211 | SASCO 1997-2 |
| 212 | SASCO 1998-2 |
| 213 | SASCO 1998-3 |
| 214 | SASCO 1998-6 |
| 215 | SASCO 1999-ALS3 |
| 216 | SASCO 1999-RF1 |
| 217 | SASCO 2001-1 |
| 218 | SASCO 2001-2 |
| 219 | SASCO 2001-21A |
| 220 | SASCO 2001-SB1 |
| 221 | SASCO 2002-12 |
| 222 | SASCO 2002-5A |
| 223 | SASCO 2002-6 |
| 224 | SASCO 2002-AL1 |
| 225 | SASCO 2002-BC1 |
| 226 | SASCO 2002-HF2 |
| 227 | SASCO 2002-NP1 |
| 228 | SASCO 2003-12XS |
| 229 | SASCO 2003-15A |
| 230 | SASCO 2003-17A |
| 231 | SASCO 2003-18XS |
| 232 | SASCO 2003-23H |
| 233 | SASCO 2003-25XS |
| 234 | SASCO 2003-26A |
| 235 | SASCO 2003-28XS |
| 236 | SASCO 2003-29 |
| 237 | SASCO 2003-30 |
| 238 | SASCO 2003-32 |
| 239 | SASCO 2003-33H |
| 240 | SASCO 2003-34A |
| 241 | SASCO 2003-35 |
| 242 | SASCO 2003-36XS |
| 243 | SASCO 2003-38 |
| 244 | SASCO 2003-39EX |
| 245 | SASCO 2003-3XS |
| 246 | SASCO 2003-6A |
| 247 | SASCO 2003-AL1 |
| 248 | SASCO 2003-AL2 |
| 249 | SASCO 2003-GEL1 |
| 250 | SASCO 2003-NP1 |
| 251 | SASCO 2003-NP2 |
| 252 | SASCO 2003-RNP2 |

| 253 | SASCO 2003-S1 |
| 254 | SASCO 2003-S2 |
| 255 | SASCO 2004-10 |
| 256 | SASCO 2004-11XS |
| 257 | SASCO 2004-12H |
| 258 | SASCO 2004-13 |
| 259 | SASCO 2004-15 |
| 260 | SASCO 2004-16XS |
| 261 | SASCO 2004-17XS |
| 262 | SASCO 2004-18H |
| 263 | SASCO 2004-19XS |
| 264 | SASCO 2004-20 |
| 265 | SASCO 2004-21XS |
| 266 | SASCO 2004-22 |
| 267 | SASCO 2004-23XS |
| 268 | SASCO 2004-2AC |
| 269 | SASCO 2004-3 |
| 270 | SASCO 2004-4XS |
| 271 | SASCO 2004-5H |
| 272 | SASCO 2004-6XS |
| 273 | SASCO 2004-7 |
| 274 | SASCO 2004-9XS |
| 275 | SASCO 2004-GEL1 |
| 276 | SASCO 2004-GEL2 |
| 277 | SASCO 2004-GEL3 |
| 278 | SASCO 2004-NP1 |
| 279 | SASCO 2004-S2 |
| 280 | SASCO 2004-S3 |
| 281 | SASCO 2004-S4 |
| 282 | SASCO 2005-1 |
| 283 | SASCO 2005-10 |
| 284 | SASCO 2005-11H |
| 285 | SASCO 2005-14 |
| 286 | SASCO 2005-15 |
| 287 | SASCO 2005-17 |
| 288 | SASCO 2005-2XS |
| 289 | SASCO 2005-3 |
| 290 | SASCO 2005-3XS |
| 291 | SASCO 2005-4XS |
| 292 | SASCO 2005-5 |
| 293 | SASCO 2005-6 |
| 294 | SASCO 2005-6XS |
| 295 | SASCO 2005-7XS |

| | |
|---|---|
| 296 | SASCO 2005-8XS |
| 297 | SASCO 2005-9XS |
| 298 | SASCO 2005-AR1 |
| 299 | SASCO 2005-GEL1 |
| 300 | SASCO 2005-GEL2 |
| 301 | SASCO 2005-GEL3 |
| 302 | SASCO 2005-GEL4 |
| 303 | SASCO 2005-NC1 |
| 304 | SASCO 2005-NC2 |
| 305 | SASCO 2005-OPT1 |
| 306 | SASCO 2005-RF1 |
| 307 | SASCO 2005-RF2 |
| 308 | SASCO 2005-RF3 |
| 309 | SASCO 2005-RF4 |
| 310 | SASCO 2005-RF5 |
| 311 | SASCO 2005-RF6 |
| 312 | SASCO 2005-RF7 |
| 313 | SASCO 2005-RMS1 |
| 314 | SASCO 2005-S1 |
| 315 | SASCO 2005-S2 |
| 316 | SASCO 2005-S3 |
| 317 | SASCO 2005-S4 |
| 318 | SASCO 2005-S5 |
| 319 | SASCO 2005-S6 |
| 320 | SASCO 2005-S7 |
| 321 | SASCO 2005-SC1 |
| 322 | SASCO 2005-WF1 |
| 323 | SASCO 2005-WF2 |
| 324 | SASCO 2005-WF3 |
| 325 | SASCO 2005-WF4 |
| 326 | SASCO 2006-3H |
| 327 | SASCO 2006-AM1 |
| 328 | SASCO 2006-ARS1 |
| 329 | SASCO 2006-BC1 |
| 330 | SASCO 2006-BC2 |
| 331 | SASCO 2006-BC3 |
| 332 | SASCO 2006-BC4 |
| 333 | SASCO 2006-BC5 |
| 334 | SASCO 2006-BC6 |
| 335 | SASCO 2006-EQ1 |
| 336 | SASCO 2006-GEL1 |
| 337 | SASCO 2006-GEL2 |
| 338 | SASCO 2006-GEL3 |

| 339 | SASCO 2006-GEL4 |
| 340 | SASCO 2006-NC1 |
| 341 | SASCO 2006-OPT1 |
| 342 | SASCO 2006-OW1 |
| 343 | SASCO 2006-RF1 |
| 344 | SASCO 2006-RF2 |
| 345 | SASCO 2006-RF3 |
| 346 | SASCO 2006-RF4 |
| 347 | SASCO 2006-S1 |
| 348 | SASCO 2006-S2 |
| 349 | SASCO 2006-S3 |
| 350 | SASCO 2006-S4 |
| 351 | SASCO 2006-W1 |
| 352 | SASCO 2006-WF1 |
| 353 | SASCO 2006-WF2 |
| 354 | SASCO 2006-WF3 |
| 355 | SASCO 2006-Z |
| 356 | SASCO 2007-BC1 |
| 357 | SASCO 2007-BC2 |
| 358 | SASCO 2007-BC3 |
| 359 | SASCO 2007-BC4 |
| 360 | SASCO 2007-BNC1 |
| 361 | SASCO 2007-EQ1 |
| 362 | SASCO 2007-GEL1 |
| 363 | SASCO 2007-GEL2 |
| 364 | SASCO 2007-MLN1 |
| 365 | SASCO 2007-OSI |
| 366 | SASCO 2007-RF1 |
| 367 | SASCO 2007-TC1 |
| 368 | SASCO 2007-WF1 |
| 369 | SASCO 2007-WF2 |
| 370 | SASCO FHA/VA 1998-RF1 |
| 371 | SASCO FHA/VA 1998-RF2 |
| 372 | SASCO FHA/VA 1998-RF3 |
| 373 | SASCO FHA/VA 1998-P.F4 |
| 374 | TBW 2006-3 |
| 375 | Thornburg 2005-3 |
| 376 | Thornburg 2006-4 |
| 377 | WFHET 2004-1 |

__EXECUTION VERSION__

## EXHIBIT B
## TERMINATED TRUSTS

| No. | Trust Name |
|-----|------------|
| 1 | AAMES 2003-1 |
| 2 | LABS 2003-1 |
| 3 | RLT 2008-2 |
| 4 | Resmae 2007-1 |
| 5 | SASCO 2001-11 |
| 6 | SASCO 2001-16H |
| 7 | SASCO 2001-19 |
| 8 | SASCO 2001-6 |
| 9 | SASCO 2002-10H |
| 10 | SASCO 2002-13 |
| 11 | SASCO 2002-15 |
| 12 | SASCO 2002-17 |
| 13 | SASCO 2002-22H |
| 14 | SASCO 2002-HF1 |
| 15 | SASCO 2003-10 |
| 16 | SASCO 2003-14 |
| 17 | SASCO 2003-16 |
| 18 | SASCO 2003-20 |
| 19 | SASCO 2003-21 |
| 20 | SASCO 2003-4 |
| 21 | SASCO 2003-7H |
| 22 | SASCO 2003-8 |
| 23 | SASCO 2003-NP3 |
| 24 | SASCO 2004-NP2 |
| 25 | SASCO 2007-RF2 |
| 26 | SASCO 2007-RNP1 |
| 27 | SASCO 2007-SC1 |
| 28 | SLH 1989-1 |

EXHIBIT C
SUBSIDIARIES AND AFFILIATES

| No. | Company Name |
| --- | --- |
| 1 | Lehman Brothers Holdings Inc. |
| 2 | 314 Commonwealth Ave. Inc. |
| 3 | Acesco Holdings Inc |
| 4 | Appalachian Asset Management Corp. |
| 5 | Battle Station LHCI., Inc. |
| 6 | Brookson Corp. |
| 7 | Brookwood Energy And Properties Inc. |
| 8 | Campus Door, Inc. |
| 9 | Capital Crossing Securities Corp II |
| 10 | Da Group Holdings Inc. |
| 11 | Diogenes Holdings Inc. |
| 12 | Diogenes Management Company Inc. |
| 13 | Dl Mortgage Corporation |
| 14 | DOLCAP INC |
| 15 | E.F.H. Insurance Agency Of Pennsylvania, Inc. |
| 16 | Fleet Street Condos Inc. |
| 17 | Frah Special Services Inc. |
| 18 | Future Financial Holdings Inc. |
| 19 | GA Dekalb Inc. |
| 20 | Industrial Holdings Corporation |
| 21 | LB Brickstone Inc. |
| 22 | LB Eastview, Inc. |
| 23 | LB Funding Corp II |
| 24 | LB Hercules Agency, Inc. |
| 25 | LB I Group Inc. |
| 26 | LB Lakeside I Inc. |
| 27 | LB Lakeside II Inc. |
| 28 | LB Lakeside III Inc. |
| 29 | LB LIH Corp. |
| 30 | LB Skypower Inc. |
| 31 | LB Transaction No. 5 Inc. |
| 32 | LB Verve Condos Inc. |
| 33 | LB Windsor Capital One Bloor Street East Inc. |
| 34 | LB Windsor Kitchener Inc. |

EXECUTION VERSION

| No. | Company Name |
|-----|--------------|
| 35 | LB Windsor Pointz Avenue Inc. |
| 36 | LBMB CAPITAL PARTNERS V EAGLE ENERGY HOLDINGS |
| 37 | LBMB FUND (B) EAGLE ENERGY HOLDINGS LP |
| 38 | LBMB FUND EAGLE ENERGY HOLDINGS LP |
| 39 | LBMB PARTNERS EAGLE ENERGY HOLDINGS LP |
| 40 | LBTC Transfer Inc. |
| 41 | LCPI Properties, Inc. |
| 42 | Lehman ABS Corporation |
| 43 | Lehman Aircraft Securitization Holdings Inc. |
| 44 | Lehman Ali Inc. |
| 45 | Lehman Brothers  Asset Management Inc. |
| 46 | Lehman Brothers (Israel) Inc. |
| 47 | Lehman Brothers Bancorp, Inc. |
| 48 | Lehman Brothers Commercial Corporation |
| 49 | Lehman Brothers Commodity Services Inc. |
| 50 | Lehman Brothers Communications Associates Inc |
| 51 | Lehman Brothers Derivative Products Inc. |
| 52 | Lehman Brothers Europe Inc. |
| 53 | Lehman Brothers Finance (Japan) Inc. |
| 54 | Lehman Brothers Financial Products Inc. |
| 55 | Lehman Brothers Futures Asset Management Corp |
| 56 | Lehman Brothers International Services Inc. |
| 57 | Lehman Brothers Investment Holdings Company |
| 58 | Lehman Brothers Investments Japan Inc. |
| 59 | Lehman Brothers Merchant Banking Partners II |
| 60 | Lehman Brothers Mortgage Opportunity |
| 61 | Lehman Brothers OTC Derivatives Inc. |
| 62 | Lehman Brothers Overseas Inc. |
| 63 | Lehman Brothers Pera Inc. |
| 64 | Lehman Brothers Special Financing Inc. |
| 65 | Lehman Brothers U.K. Holdings (Delaware) Inc. |
| 66 | Lehman Brothers Venture Associates, Inc. |
| 67 | Lehman Brothers/FW Inc. |
| 68 | Lehman Brothers/Rosecliff Inc. |
| 69 | Lehman Commercial Paper Inc. |
| 70 | Lehman Housing Capital Inc. |
| 71 | Lehman Housing Lending Corp. |

| No. | Company Name |
|-----|--------------|
| 72 | Lehman Investments Inc. |
| 73 | Lehman Pass-Through Securities Inc. |
| 74 | Lehman Tax Credit Advisor Inc. |
| 75 | Lehman VIP Holdings Inc. |
| 76 | LHCI GP VI Inc. |
| 77 | LHCI GP VII Inc. |
| 78 | LHCI GP VIII Inc. |
| 79 | LHCI GP X, Inc. |
| 80 | LHCI GP XI, Inc |
| 81 | LHCI Martinsburg GP Inc. |
| 82 | Libro Holdings I Inc. |
| 83 | LPTG Inc. |
| 84 | LW-GP2B, Inc |
| 85 | LW-GP2D, Inc. |
| 86 | LW-LP Inc. |
| 87 | LW-LP Properties Inc. |
| 88 | MBR/GP Corp. |
| 89 | MMP Funding Corporation |
| 90 | NJ Atlantic Inc. |
| 91 | NJ Somerset Inc. |
| 92 | NP Investment I Co. |
| 93 | PAC Aircraft Management Inc. |
| 94 | PAMI 5-7 East 17th Street Inc. |
| 95 | PAMI Newark Inc. |
| 96 | PAMI PPC I Inc. |
| 97 | PAMI Public/Private II, Inc. |
| 98 | PAMI Raymond Inc. |
| 99 | Petro L Corporation |
| 100 | Principal Transactions II Inc. |
| 101 | Principal Transactions Inc. |
| 102 | Property Asset Management Inc. |
| 103 | Real Estate Private Equity Inc. |
| 104 | Rock Hill Investors Inc. |
| 105 | SBA 2011 Acquisition Co Inc. |
| 106 | SASCO ARC CORPORATION |
| 107 | Select Asset Inc. |
| 108 | Sharpstown Center Inc. |

| No. | Company Name |
|---|---|
| 109 | Shearson Financial Services Of TX Inc. |
| 110 | Solar Finance Inc |
| 111 | Structured Asset Securities Corp |
| 112 | Structured Options Inc. |
| 113 | Thai Holding I Inc. |
| 114 | Thai Holding II Inc. |
| 115 | Tulsa Hotels LS, Inc |
| 116 | Warren Atlantic Inc. |
| 117 | Warren/GP Corp. |
| 118 | West Bay Club Development Corp. |
| 119 | West Bay Realty Inc. |
| 120 | Wharf Reinsurance Inc. |
| 121 | Winter Garden Inc. |
| 122 | Woodlands Commercial Corporation |
| 123 | Lehman Re Inc. |
| 124 | BK II Properties Inc. |
| 125 | ASIA INDO OPPORTUNITY I LTD |
| 126 | ASIA INDO OPPORTUNITY II LTD |
| 127 | BALLYBUNION INVESTMENT LIMITED |
| 128 | BALLYBUNION INVESTMENT NO 2 LIMITED |
| 129 | BALLYBUNION INVESTMENT NO 3 LIMITED |
| 130 | BIRCH Y.K. |
| 131 | BISON II SP. Z.O.O. |
| 132 | CAPITAL GROWTH INVESTMENTS LTD. |
| 133 | CENTRAL TOKYO HOLDINGS INC. |
| 134 | CENTRAL TOKYO INVESTMENTS INC. |
| 135 | CENTRAL TOKYO PROPERTIES INC. |
| 136 | CEREP III INVESTMENT D S.ÀR.L. |
| 137 | CIMT LIMITED |
| 138 | CJC INVESTMENTS INC |
| 139 | CYGNUS Y.K. |
| 140 | DYNAMO INVESTMENTS LIMITED |
| 141 | EAGLE HOLDINGS II INC |
| 142 | EAST DOVER LIMITED |
| 143 | ELMWOOD Y.K. |
| 144 | FALCON HOLDINGS II INC. |
| 145 | FALCON HOLDINGS III INC. |
| 146 | FALCON HOLDINGS IV INC. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 147 | FALCON INVESTOR I INC. |
| 148 | FALCON INVESTOR II INC. |
| 149 | FALCON INVESTOR III INC. |
| 150 | FALCON INVESTOR IV INC. |
| 151 | FALCON INVESTOR IX INC. |
| 152 | FALCON INVESTOR V INC . |
| 153 | FALCON INVESTOR VI INC. |
| 154 | FALCON INVESTOR VII INC. |
| 155 | FALCON INVESTOR VIII INC. |
| 156 | FALCON INVESTOR X INC. |
| 157 | GAINSBOROUGH INVESTMENTS BV |
| 158 | GKI KOREA DEVELOPMENT LIMITED |
| 159 | GKI KOREA MANAGEMENT LIMITED |
| 160 | GLOBAL KOREA INVESTMENTS LTD |
| 161 | GLOBAL TAIWAN INVESTMENTS LTD |
| 162 | GLOBAL THAI PROPERTY FUND |
| 163 | GRA FINANCE CORPORATION LTD. |
| 164 | HOLLYHOCK YK |
| 165 | HONG KONG TRUST NO. 1 |
| 166 | IVANHOE LANE PTY LTD |
| 167 | JAPAN REAL ESTATE INVESTMENT PARTNERSHIP INC. |
| 168 | JAPAN TK INVESTOR I (CAYMAN) HOLDINGS INC. |
| 169 | JASMINE Y.K. |
| 170 | KENILWORTH INVESTMENTS 1 LTD |
| 171 | KENILWORTH INVESTMENTS 2 LTD |
| 172 | KINGFISHER CAPITAL CDO LTD |
| 173 | L.B.A. YK |
| 174 | LAMCO Services Ltd |
| 175 | LB ALPHA FINANCE CAYMAN LIMITED |
| 176 | LB BETA FINANCE CAYMAN LIMITED |
| 177 | LB CANADA SKYPOWER |
| 178 | LB DAME LP S.ÀR.L. |
| 179 | LB DAME S.ÀR.L. |
| 180 | LB FINANCE JAPAN HEAD OFFICE |
| 181 | LB FUNDING BV |
| 182 | LB HONG KONG FUNDING TRUST |
| 183 | LB INDIA HOLDINGS MAURITIUS I LTD |
| 184 | LB INDIA HOLDINGS MAURITIUS II LTD |

| No. | Company Name |
|-----|--------------|
| 185 | LB INVESTMENT MGMT COMPANY LTD (f/k/a LB INDIA HOLDINGS CAYMAN II LIMITED) |
| 186 | LB INVESTMENTS (UK) LTD |
| 187 | LB LUX RE HOLDINGS S.A.R.L |
| 188 | LB MAURITIUS I LTD. |
| 189 | LB OFFSHORE PARTNERS II LTD. |
| 190 | LB OFFSHORE PARTNERS LTD |
| 191 | LB OFFSHORE RE MEZZANINE ASSOC,LTD. |
| 192 | LB OPPORTUNITY HOLDING INC |
| 193 | LB RE FINANCING NO.1 LIMITED |
| 194 | LB SHELF CI IV |
| 195 | LB VINTNERS (LUXEMBOURG) S.ÀR.L. |
| 196 | LB VINTNERS BRIDGE (LUXEMBOURG) S.ÀR.L. |
| 197 | LB3 GMBH |
| 198 | LBD YK |
| 199 | LBE YK |
| 200 | LBHK FUNDING (CAYMAN) NO. 1 LIMITED |
| 201 | LBHK FUNDING (CAYMAN) NO. 2 LIMITED |
| 202 | LBHK FUNDING (CAYMAN) NO. 4 LIMITED |
| 203 | LBMB ASSOCIATES IV (EUROPE) S.A.R.L |
| 204 | LBMB EUROPE MGMT CORP SARL |
| 205 | LBO FUNDING (CAYMAN) LIMITED |
| 206 | LBQ FUNDING (CAYMAN) LIMITED |
| 207 | LBQ HONG KONG SERVICES LIMITED |
| 208 | LBREP GAITHERSBURG HOLDINGS LLC |
| 209 | LBS HOLDINGS SARL |
| 210 | LBSP HOLDING (IRLAND) PUBLIC LTD |
| 211 | LBSP LIMITED |
| 212 | LCPI DHS  (f/k/a LB SHELF II, INC.) |
| 213 | LEHMAN BROTHERS (CAYMAN ISLANDS) LTD. |
| 214 | LEHMAN BROTHERS (THAILAND) LIMITED PCO-NEWTHB |
| 215 | LEHMAN BROTHERS ASEAN OPPORTUNITY LTD |
| 216 | LEHMAN BROTHERS ASIA ISSUANCE CO LTD |
| 217 | LEHMAN BROTHERS AUSTRALIA SECURITIES PTY LIMITED |
| 218 | LEHMAN BROTHERS CAPITAL (THAILAND) LIMITED |
| 219 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN) II, LTD |
| 220 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN), LTD |
| 221 | Lehman Brothers Global Services Ltd. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 222 | LEHMAN BROTHERS HK OLYMPUS FUNDING TRUST |
| 223 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP |
| 224 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP2 |
| 225 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP3 |
| 226 | LEHMAN BROTHERS HOLDINGS, INC. UK BRANCH |
| 227 | LEHMAN BROTHERS HY OPPORTUNITIES KOREA INC. |
| 228 | Lehman Brothers Investments Japan Inc. |
| 229 | LEHMAN BROTHERS LATIN AMERICA LIMITED |
| 230 | LEHMAN BROTHERS OFFSHORE COMMUNICATIONS ASSOCIATES LTD. |
| 231 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES II LTD. |
| 232 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES LTD |
| 233 | LEHMAN BROTHERS OPPORTUNITY LTD. |
| 234 | LEHMAN BROTHERS PACIFIC SERVICES |
| 235 | LEHMAN BROTHERS SOUTH EAST ASIA INVESTMENTS PTE LIMITED |
| 236 | LEHMAN BROTHERS UK INVESTMENTS LTD |
| 237 | LEHMAN RISK SERVICES (BERMUDA) LTD. |
| 238 | LEHMAN SCOTTISH FINANCE LP |
| 239 | LEHMAN VIP INVESTMENT LDC |
| 240 | LUXEMBOURG FINANCE S.A.R.L. |
| 241 | LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE SARL |
| 242 | M&L DEBT INVESTMENTS HOLDINGS PTY |
| 243 | M&L DEBT INVESTMENTS PTY LIMITED |
| 244 | MAEWHA K-STARS LTD |
| 245 | MARLIN INTERNATIONAL Y.K. |
| 246 | MEISHO ESTATE Y.K |
| 247 | MICT LIMITED |
| 248 | NOVACORP REALTY/GP INC. |
| 249 | OPAL FINANCE HOLDINGS IRELAND LIMITED |
| 250 | PHUKET HOTEL 3 HOLDING COMPANY LIMITED |
| 251 | REVIVAL HOLDINGS LIMITED |
| 252 | SATURN INVESTMENT INC |
| 253 | SERAFINO INVESTMENTS PTY LTD |
| 254 | SOGKI DEVELOPMENT INC. |
| 255 | SOGKI INC. |
| 256 | SOGKI MANAGEMENT INC |
| 257 | SOGTI INC. |
| 258 | SOR INVESTOR I INC |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 259 | SOR INVESTORS IV INC |
| 260 | SOUTHWESTERN FIRST CAPITAL LLC |
| 261 | TAHOE Y.K. |
| 262 | TCP CAP VI GP (EUROPE) L.P. INC. |
| 263 | TMIC LIMITED |
| 264 | VINTNERS BIDCO S.C.A. |
| 265 | VINTNERS S.ÀR.L. |
| 266 | Y.K. SAPPHIRE INVESTMENT I |
| 267 | YELLOWTAIL INTERNATIONAL Y.K. |
| 268 | YK DUCKHORN |

EXECUTION VERSION

### EXHIBIT D
### INSTITUTIONAL INVESTOR REQUEST LETTER



Robert J. Madden
rmadden@gibbsbruns.com
713.751.5266

*Via Email and Federal Express*

November ___, 2016

Franklin H. Top III
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603

Michael S. Kraut
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, New York 10178

*Counsel for U.S. Bank National Association,
solely in its capacity as Indenture Trustee for
Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

*Counsel for Wilmington Trust Company and
Wilmington Trust, National Association, each
solely in its capacity as Trustee for Certain
Mortgage-Backed Securities Trusts*

M. William Munno
Daniel E. Guzmán
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

*Counsel for Law Debenture Trust Company of
New York, solely in its capacity as Separate
Trustee for Certain Mortgage-Backed
Securities Trusts*

Dennis Drebsky
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022

*Counsel for Deutsche Bank National Trust
Company, solely in its capacity as Trustee for
Certain Mortgage-Backed Securities Trusts*

Re:    Binding Settlement Offer from Lehman to Trustees of RMBS Trusts

Dear Counsel:

This firm represents 14 large institutional investors who collectively are holders, and/or

<u>EXECUTION VERSION</u>

authorized investment managers for holders, of approximately $10 billion of the unpaid principal balance of securities ("UPB") issued by the RMBS Trusts listed on Exhibit "A" to the attached RMBS Trust Settlement Agreement (the "Trusts"). Our clients' holdings include 25% or more of the UPB of 108 of the Trusts, which Trusts account for approximately 35% of the total UPB across all of the Trusts.

Our clients have engaged in extensive, mediated negotiations with representatives of the LBHI estate in an effort to reach a proposed settlement, that our clients would be willing to recommend, of the claims set forth in the Proofs of Claim filed by your clients on behalf of the Trusts.

Our clients are pleased to inform you that they have reached such an agreement with the LBHI debtors. We understand the LBHI debtors have advised you, on a confidential basis, of the terms of the binding offer they have agreed to make to the Trustees to settle these claims. A copy of that binding offer is enclosed with this correspondence for your review.

Our clients have advocated settlement in this matter for some time, in no small part because of the significant expense that has been imposed on the Trusts by virtue of the Court-ordered Protocol. Though those earlier efforts did not lead to a settlement the Trustees were able to accept, this offer is one the Trustees certainly should accept. It <u>virtually ensures</u> the Trusts claims will be allowed in an amount no less than $2.44 billion, because Lehman has agreed to seek estimation at that amount. In addition, while setting a floor on the recovery, the offer establishes no ceiling; instead, the Trustees are free to put on whatever proof they wish, to advocate for an increased estimation if they possess evidence they believe warrants it. And, finally, by making the estimation final as to both the Trusts and Lehman, it ends both the hemorrhage of dollars caused by the protocol and eliminates the risk--through elimination of any appeals--that this hemorrhage of funds will resume. In short, there is no reasonable basis on which the Trustees could or should refuse this guarantee of a certain recovery of more than a $1 billion in cash, with the opportunity to obtain more.

Accordingly, on behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf. Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

_____

Robert Madden
On behalf of the Institutional Investors

Cc:
AEGON USA Investment Management, LLC
BlackRock Financial Management Inc.
Cascade Investment, L.L.C.
Federal Home Loan Bank of Atlanta

**EXECUTION VERSION**

Goldman Sachs Asset Management, L.P.
Invesco Advisers, Inc.
Kore Advisors, L.P.
Metropolitan Life Insurance Company
Pacific Investment Management Company LLC
Sealink Funding Limited, through its investment manager
      Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans
Voya Investment Management LLC
Western Asset Management Company

EXECUTION VERSION

**EXHIBIT E**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

- 1 -

# EXHIBIT 4



Robert J. Madden
rmadden@gibbsbruns.com
713.751.5266

*Via Email and Federal Express*

March 17, 2017

Franklin H. Top III
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603

Michael S. Kraut
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, New York 10178

*Counsel for U.S. Bank National Association,
solely in its capacity as Indenture Trustee for
Certain Mortgage-Backed Securities Trusts*

John C. Weitnauer
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

*Counsel for Wilmington Trust Company and
Wilmington Trust, National Association, each
solely in its capacity as Trustee for Certain
Mortgage-Backed Securities Trusts*

M. William Munno
Daniel E. Guzmán
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

*Counsel for Law Debenture Trust Company of
New York, solely in its capacity as Separate
Trustee for Certain Mortgage-Backed
Securities Trusts*

Dennis Drebsky
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022

*Counsel for Deutsche Bank National Trust
Company, solely in its capacity as Trustee for
Certain Mortgage-Backed Securities Trusts*

Re:    <u>Binding Settlement Offer from Lehman to Trustees of RMBS Trusts</u>

Dear Counsel:

This firm represents 14 large institutional investors who collectively are holders, and/or authorized investment managers for holders, of approximately $6 billion of the unpaid principal balance of securities ("UPB") issued by the RMBS Trusts listed on Exhibit "A" to the attached RMBS Trust Settlement Agreement (the "Trusts"). Our clients' holdings include 25% or more of the UPB of 69 of the Trusts, which Trusts account for approximately 35% of the total UPB across all of the Trusts.

Lehman RMBS Settlement
March 17, 2017
Page 2 of 3

Our clients have engaged in extensive, mediated negotiations with representatives of the LBHI estate in an effort to reach a proposed settlement, that our clients would be willing to recommend, of the claims set forth in the Proofs of Claim filed by your clients on behalf of the Trusts.

We understand the LBHI debtors have advised you of the terms of a binding offer they have agreed to make to the Trustees to settle these claims. A copy of that binding offer is enclosed with this correspondence for your review.

Our clients have advocated settlement in this matter for some time, in no small part because of the significant expense that has been imposed on the Trusts by virtue of the Court-ordered Protocol. Though those earlier efforts did not lead to a settlement the Trustees were able to accept, this offer is one the Trustees certainly should accept. It virtually ensures the Trusts claims will be allowed in an amount no less than $2.416 billion, because Lehman has agreed to seek estimation at that amount. In addition, while setting a functional floor on the recovery, the offer establishes no ceiling; instead, the Trustees are free to put on whatever proof they wish, to advocate for an increased estimation if they possess evidence they believe warrants it. And, finally, by making the estimation final as to both the Trusts and Lehman, it ends both the hemorrhage of dollars caused by the protocol and eliminates the risk--through elimination of any appeals--that this hemorrhage of funds will resume. In short, there is no reasonable basis on which the Trustees could or should refuse this guarantee of a certain recovery of more than a $1 billion in cash, with the opportunity to obtain more.

Accordingly, on behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf. Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

Robert Madden (w/ permission, by DMS)

Robert Madden
On behalf of the Institutional Investors

Cc:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,
Cascade Investment, L.L.C.,
Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
Metropolitan Life Insurance Company,

Pacific Investment Management Company, LLC,
Sealink Designated Activity Company, through its investment manager
      Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans,
Voya Investment Management LLC, and
Western Asset Management Company.

# EXHIBIT 5

## RMBS TRUST SETTLEMENT AGREEMENT

This RMBS Trust Settlement Agreement ("Settlement Agreement") is entered into as of November 30, 2016 (the "Agreement Date"), and modified as of March 17, 2017 (the "Modification Date"), by and among Lehman Brothers Holdings Inc. (the "Plan Administrator") and the other Debtors in the Bankruptcy Proceeding (as defined below) (collectively, the "LBHI Debtors") and the authorized Investment Advisors (as defined below) and Investors (as defined below) identified in the attached signature pages (collectively, the "Institutional Investors"); and, upon acceptance as described below, the Accepting Trustees (defined and set forth herein).  Each of the LBHI Debtors and the Institutional Investors may be referred to herein as an "Initial Party" and collectively as the "Initial Parties."  Upon acceptance by the Accepting Trustees, each of the Accepting Trustees and the Initial Parties may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain of the LBHI Debtors were the Seller, Sponsor, and/or Depositor for certain residential mortgage-backed securitizations (collectively, the "RMBS");

WHEREAS, certain of the LBHI Debtors are parties to certain applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the RMBS (the "Governing Agreements");

WHEREAS, pursuant to the Governing Agreements, certain of the LBHI Debtors have contributed or sold loans originated by various entities into the RMBS (the "Mortgage Loans");

WHEREAS, the LBHI Debtors commenced bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, styled or related to *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (the "Bankruptcy Proceeding");

WHEREAS, certain trustees for the RMBS filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans by certain of the LBHI Debtors under the Governing Agreements;

WHEREAS, as of the Modification Date, the 244 RMBS identified on the attached Exhibit A (the "Trusts") have not been terminated and the proofs of claim filed by the trustees for such Trusts (the "Trustees") on behalf of and/or relating to such Trusts (the "Proofs of Claim") assert, among other things, claims on behalf of the Trusts;

WHEREAS, as of the Modification Date, the 16 RMBS identified on the attached Exhibit B (the "Terminated Trusts") were terminated and the proofs of claim filed by the then trustees for such Terminated Trusts on behalf of and/or related to such Trusts (the "Terminated Trusts Proofs of Claim") assert, among other things, claims on behalf of the Terminated Trusts;

WHEREAS, on December 29, 2014, the Court presiding over the Bankruptcy Proceeding entered an Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities (Docket No. 47569) (the "Protocol Order") setting forth a protocol (the "Protocol") for the review of mortgage loan files, the assertion of RMBS Claims (as defined in the Protocol Order) by the Trustees, the response by the LBHI Debtors to such claims, and a mechanism for resolving disputes regarding such claims;

WHEREAS, the LBHI Debtors dispute the validity of the Proofs of Claims and the RMBS Claims (collectively, the "Claims"), as well as the Terminated Trusts Proofs of Claim, and subject to the terms of this Settlement Agreement, waive no rights and preserve all of their defenses with respect to the Claims and the Terminated Trusts Proofs of Claim except as expressly stated herein;

WHEREAS, the Trustees maintain the validity of the Claims and, subject to the terms of this Settlement Agreement, waive no rights with respect to the Claims except as expressly stated herein;

WHEREAS, the Institutional Investors are represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and, through counsel, engaged in extensive arm's length and good faith settlement negotiations with the LBHI Debtors regarding the Claims and the Terminated Trusts Proofs of Claim that included the use of David Geronemus of JAMS, as mediator, and the exchange of confidential materials;

WHEREAS, pursuant to this Settlement Agreement, the Parties wish to provide for an efficient, cost-effective, and equitable mechanism for fully and finally resolving the disputes between the Trustees and the LBHI Debtors regarding the Claims relating to Covered Loans (defined below) (the "Covered Loan Claims");

WHEREAS, this Settlement Agreement shall be presented to the Trustees for their consideration and approval, upon which approval the Trustees shall become Accepting Trustees (as defined herein) and Parties to this Settlement Agreement as set forth herein; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Covered Loan Claims.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

## ARTICLE I.   DEFINITIONS

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement

shall, with respect to any particular Trust, have the definition given to them in the Governing Agreements for that Trust.

1.01.    "Acceptance Date" means June 1, 2017, unless extended as provided herein.

1.02.    "Accepting Trustees" means the Trustees that expressly accept the Settlement Agreement pursuant to Section 2.03.

1.03.    "Accepting Trusts" means the Trusts for which an Accepting Trustee has accepted the Settlement Agreement pursuant to Section 2.03.

1.04.    "Allocable Share" means, for any Participating Trust, the share of the Net Allowed Claim allocable to that Trust, as set forth in Section 3.04.

1.05.    "Allocated Percentage" has the meaning set forth in Section 3.04.

1.06.    "Allowed Claim" has the meaning set forth in Section 3.01.

1.07.    "Bankruptcy Court" means the court presiding over the Bankruptcy Proceeding.

1.08.    "Covered Loans" shall mean (a) the Mortgage Loans identified as the "Covered Loans" in The RMBS Trustees' Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code (ECF Doc. No. 46078), dated August 22, 2014, filed by the Trustees in the Bankruptcy Proceeding, and (b) the additional Mortgage Loans identified as "Covered Loans" in the Status Report of the RMBS Trustees with respect to Compliance with the Protocol and the Motion to Extend the Overall Claim File Cut-Off Date for Certain Loans under the Protocol Order and For Related Relief (ECF Doc. No. 52342).

1.09.    "District Court" means a United States District Court for the Southern District of New York.

1.10.    "Effective Date" shall mean the date of Final Court Approval.

1.11.    "Estimation" shall mean the estimation of the Covered Loan Claims under the Trusts, supported by legal and loan review professionals and expert analysis and analytics, pursuant to 11 U.S.C. § 502(c).

1.12.    "Estimation Proceeding" means an estimation proceeding, conducted by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c), in accordance with the procedures set forth in Exhibit G hereto, at which proceeding the Bankruptcy Court will estimate and assign a value to the Covered Loan Claims, which value will constitute the full and final Allowed Claim amount as provided herein.

1.13.    "Excluded Trust" has the meaning set forth in Section 3.02(a).

**EXECUTION VERSION**

1.14.    "Expert" means the professional firm retained or to be retained by one or more of the Accepting Trustees to make the calculations required in connection with the allocation of the Net Allowed Claim pursuant to Section 3.04.

1.15.    "Final Court Approval" shall mean the later of the dates that the Trustee Findings Order and the order approving this Settlement Agreement (which may include the Trustee Findings Order) becomes a Final Order.

1.16.    "Final Order" shall mean an order or judgment of a court of competent jurisdiction that has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure (or any analogous rule applicable to such court); provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous rule applicable to such court) may be filed relating to such order shall not cause an order not to be a Final Order.

1.17.    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

1.18.    "Institutional Investors" shall mean the authorized Investment Advisors and Investors identified in the attached signature pages.

1.19.    "Investment Advisor" shall mean the following Institutional Investors: BlackRock Financial Management Inc.; Goldman Sachs Asset Management, L.P.; Invesco Advisers, Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Sealink Designated Activity Company, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; and Western Asset Management Company, and, for the avoidance of doubt, shall not include (i) any of the individual clients or funds whose assets are managed by such Investment Advisor or (ii) any affiliates of such Investment Advisor.

1.20.    "Investors" shall mean all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees, and/or transferees, and beneficial

**EXECUTION VERSION**

holders of certificates, bonds or notes in the Trusts claiming rights through certificateholders, bondholders and noteholders in the Trusts, including but not limited to the Institutional Investors.

1.21.   "<u>Liquidated Loans</u>" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017 are not Non-Liquidated Loans, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.22.   "<u>Net Allowed Claim</u>" has the meaning set forth in Section 3.01.

1.23.   "<u>Non-Liquidated Loans</u>" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017, were performing to some extent under the applicable mortgage loan documents, loans that were in default but had yet to have been foreclosed upon, or loans that had been foreclosed upon but the real property that secures the repayment of the mortgage loan had not been sold and for which the final loss suffered by the trust has not been reported by the applicable servicer or master servicer, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.24.   "<u>Participating Trust</u>" has the meaning set forth in Section 3.02(a).

1.25.   "<u>Party in Interest</u>" shall have the same meaning as the term "party in interest" is used in 11 U.S.C. 1109(b), and shall include any Investor.

1.26.   "<u>Person</u>" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

1.27.   "<u>Plan</u>" shall mean the LBHI Debtors' third amended joint chapter 11 plan confirmed by the Bankruptcy Court on December 6, 2011 (Docket No. 23023).

1.28.   "<u>Plan Payments</u>" shall mean distributions under the Plan on account of the Net Allowed Claim.

1.29.   "<u>Released Parties</u>" shall mean: (i) any and all LBHI Debtors, including, without limitation, Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, BNC Mortgage LLC, Finance America LLC, and LBHI Debtors' affiliates and subsidiaries identified on <u>Exhibit C</u> hereto, and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents; and (ii) Aurora Commercial Corp., f/k/a Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, "<u>Aurora</u>"), and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents.

1.30.   "<u>Required Tax Conclusions</u>" shall mean, except as otherwise described in Subsection 1.30(v) below, all of the following U.S. federal income tax conclusions (or their substantive equivalents) for each Accepting Trust, or portion thereof, for which a timely, valid and continuing REMIC election (as defined in the Internal Revenue Code of 1986, as amended

(the "Internal Revenue Code") has been made, and remains in effect, in accordance with the applicable Governing Agreements (each, a "REMIC Trust"):

(i) none of (a) the execution of this Settlement Agreement, (b) the methodology for determining, and the right to receive, an Allocable Share of the Net Allowed Claim, or (c) the receipt of Plan Payments, will cause such REMIC Trust to fail to meet the requirements of Internal Revenue Code Section 860D(a)(4);

(ii) the receipt of Plan Payments by such REMIC Trust will be treated as payments received on qualified mortgages within the meaning of U.S. Treasury Regulation Section 1.860G-2(g)(1)(ii);

(iii) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement will not cause any regular interest in such REMIC Trust to fail to qualify as a "regular interest", as defined in Internal Revenue Code Section 860G(a)(1) and will not cause the sole class of residual interest in such REMIC Trust to fail to qualify as a "residual interest", as defined in Code section 860G(a)(2);

(iv) the receipt of Plan Payments by such REMIC Trust will not be treated as a "prohibited transaction" within the meaning of Internal Revenue Code Section 860F(a)(2) or as a contribution that is subject to the tax imposed under Internal Revenue Code Section 860G(d)(1); and

(v) in the case of a REMIC Opinion only, none of (a) the right to receive an Allocable Share of the Net Allowed Claim, (b) the receipt of Plan Payments or (c) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement, will cause such REMIC Trust to fail to qualify as a REMIC as defined in Internal Revenue Code Section 860D.

1.31. "REMIC Opinion" shall mean the opinion of tax counsel, reasonably acceptable to the LBHI Debtors and the Accepting Trustees, experienced in the U.S. federal income taxation of "real estate mortgage investment conduits," that concludes at a "will" level of certainty, subject to customary assumptions and exceptions and based on all of the relevant facts and circumstances, that a court of competent jurisdiction would agree and render a judgment on each of the Required Tax Conclusions. For purposes of this Settlement Agreement, each of the following law firms shall be considered acceptable to the LBHI Debtors and the Accepting Trustees for purposes of rendering a REMIC Opinion: K&L Gates LLP; Cadwalader, Wickersham & Taft LLP; and Mayer Brown LLP.

1.32. "RMBS Reserve" means the reserve maintained by the LBHI Debtors pursuant to that certain order of the Bankruptcy Court dated February 22, 2012 (Docket No. 25643).

1.33. "Settlement" means the negotiated settlement set forth in this Settlement Agreement, including all terms and conditions thereof.

1.34. "Transferor Loans" means the Mortgage Loans sold into, deposited into or otherwise conveyed into the Trusts that are not Covered Loans.

1.35.    "Transferor Trusts" means all Trusts that contain solely Transferor Loans.

1.36.    "Trustee Findings" shall mean the findings of fact and conclusions of law set forth on Exhibit F annexed hereto

1.37.    "Trustee Findings Order" shall mean an order when entered by the District Court after considering certain proposed findings of fact and conclusions of law submitted by the Bankruptcy Court, or by a court of competent jurisdiction if the District Court declines to enter such order on the basis of the District Court's jurisdiction, containing, among other things, the Trustee Findings.

1.38.    "Trustees" shall mean U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust National Association, Deutsche Bank National Trust Company, in each case acting in their respective capacities as trustees, co-trustees, separate trustees and/or successor trustees of the applicable Trust(s).

ARTICLE II.  SETTLEMENT PROCESS

2.01.    Effective Date for the LBHI Debtors and Institutional Investors.  This Settlement Agreement shall be binding and effective upon the LBHI Debtors (subject to Bankruptcy Court approval) and the Institutional Investors as of the Agreement Date and shall continue to be binding and irrevocable until: (i) such time as the LBHI Debtors or the Accepting Trustees shall exercise any right they may have to terminate the Settlement Agreement under Section 2.03(c) below; or (ii) the date Final Court Approval becomes legally impossible.  Promptly following the Modification Date, the LBHI Debtors shall request that the Bankruptcy Court schedule and hold a chambers conference at a time and date mutually agreeable to the Initial Parties and the Trustees so that the LBHI Debtors and the Institutional Investors may inform the Court of the existence and terms of this Settlement Agreement.  The LBHI Debtors and the Institutional Investors agree that, subject to acceptable confidentiality arrangements, counsel for the Trustees shall be informed of and entitled to attend such conference.  At that chambers conference, the Plan Administrator and the Trustees shall inform the Bankruptcy Court that they believe it is appropriate to suspend the Protocol until the earlier of the conclusion of the Estimation Hearing or the termination of this Settlement Agreement.

2.02.    Presentation of Settlement to Trustees/Intervention.

(a)    Request Letter.  This Settlement Agreement shall be presented to the Trustees for their review, evaluation, and acceptance within one (1) business day of the Modification Date as follows:  The Institutional Investors shall submit, through their counsel, a letter (in the form annexed hereto as Exhibit D) to each of the Trustees expressing their support for the settlement and requesting and urging that each enter into the Settlement Agreement.

(b)    Intervention in Court Approval Process.  Following the filing of the 9019 Motion (as defined in Section 2.03(a) below), the Institutional Investors shall jointly file a motion for leave to intervene (or a similar pleading) in the Bankruptcy Court (and, at the appropriate time, the District Court (or such other court of competent jurisdiction) in connection with such court's consideration of the entry of the Trustee Findings Order), to

**EXECUTION VERSION**

evidence their support for the Settlement, the Settlement Agreement, the Trustee Findings Order, the entry of an order by the court barring Investors in the Participating Trusts from asserting claims against the Trustees for the Participating Trusts with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and Final Court Approval.  Each of the Institutional Investors shall use its reasonable best efforts to prosecute the intervention, to support the Settlement, and to obtain Final Court Approval of the Settlement Agreement and entry of the Trustee Findings Order.  The Institutional Investors' obligation to use reasonable best efforts shall continue until the earliest of (i) Final Court Approval, (ii) the date Final Court Approval becomes legally impossible, (iii) the date on which the LBHI Debtors or the Accepting Trustees terminate the Settlement Agreement pursuant to Section 2.03(c), below, or (iv) any material breach by the LBHI Debtors of the Settlement Agreement (which breach is not cured or waived within 90 days of written notice of such breach having been provided by a Party).

      2.03.   <u>Acceptance by Trustees/Final Court Approval</u>.

      (a)   <u>Acceptance of Settlement Agreement/Notice</u>.  On or prior to the Acceptance Date, each Trustee shall provide written notice to the Institutional Investors and the LBHI Debtors accepting or rejecting the Settlement separately on behalf of each Trust and an executed signature page for this Settlement Agreement to the Institutional Investors and the LBHI Debtors, all in accordance with the notice provisions set forth in Section 6.17 hereof, subject to Sections 2.03(c) and 2.06 below; provided, however, if any Trust listed on <u>Exhibit A</u> is terminated after the Modification Date but before the date the LBHI Debtors commence Plan Payments on the Net Allowed Claim, the Trustee that was the trustee for such Trust shall provide written notice to the Institutional Investors and the LBHI Debtors of such fact and such trust shall also be considered a Terminated Trust.

      Within 21 days after the Modification Date, the LBHI Debtors shall file a motion (the "<u>Scheduling Motion</u>") requesting that the Bankruptcy Court enter an order (1) approving a notice program with respect to its consideration of the 9019 Motion (as defined below), (2) setting a date by which all objections to the 9019 Motion must be filed and served (which deadline shall be at least twenty-one  (21) days after the Acceptance Date, the "<u>9019 Objection Deadline</u>"), and (3) setting the date of the hearing to consider approval of the 9019 Motion.

      Within 21 days of the Bankruptcy Court order granting the Scheduling Motion, the LBHI Debtors shall file a motion with the Bankruptcy Court (which may include the Scheduling Motion, the "<u>9019 Motion</u>") requesting that the Bankruptcy Court enter an order (i) approving this Settlement Agreement and containing the Trustee Findings (which shall be submitted by the Bankruptcy Court to the District Court) and the Debtors' Findings (defined below), (ii) setting the date on which the Estimation Proceeding will begin, which date shall be no earlier than October 16, 2017; and (iii) providing that the Estimation Proceeding shall be conducted in accordance with the procedures set forth in <u>Exhibit G</u> hereto.

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the Accepting Trustees to all Investors and all financial guaranty institutions known to the Accepting Trustees to have an interest in the Trusts in the manner approved by the Bankruptcy Court.

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the LBHI Debtors to those parties required to receive notice in the Bankruptcy Proceeding, and all known servicers and master servicers of loans in the Trusts, all known mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement), and any other person who the LBHI Debtors shall conclude may have a claim or interest in the Trusts or the Settlement Agreement in the manner approved by the Bankruptcy Court.

Upon the Acceptance Date, this Settlement Agreement shall continue in effect for such Accepting Trustee(s) and the associated Trusts unless and until:  (i) the Bankruptcy Court has issued an order that has become a Final Order denying approval of the Settlement Agreement or declines to submit the Trustee Findings to the District Court; (ii) the District Court or, if the District Court declines to exercise jurisdiction, a different court of competent jurisdiction, has issued an order that has become a Final Order denying approval of the Settlement Agreement or entry of the Trustee Findings Order; (iii) the date on which obtaining Final Court Approval becomes legally impossible; or (iv) the Settlement Agreement is terminated in accordance with Section 2.03(c) below.

(b)    <u>Best Efforts</u>.  During the period during which Final Court Approval is being sought, the Accepting Trustees, the LBHI Debtors, and the Institutional Investors shall each be obligated to use their reasonable best efforts to obtain Final Court Approval of the Settlement and the entry of the Trustee Findings Order so long as there has been no material breach of this Settlement Agreement.  The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the Acceptance Date, or if any Party discovers facts that are additional to, inconsistent with, or different from those which they knew at the time they entered into this Settlement Agreement, until such time as Final Court Approval becomes legally impossible.

(c)    <u>The LBHI Debtors' and the Accepting Trustees' Right to Terminate</u>.  The LBHI Debtors and the Institutional Investors have entered into a confidential letter agreement that provides the LBHI Debtors the right to terminate this Settlement Agreement in the manner provided in clauses (i) and (ii) in the immediately following sentence (the "<u>Confidential Letter Agreement</u>") (the Trustees shall be entitled to know such confidential agreed-upon percentages provided they agree to hold such agreed-upon percentages in confidence, and the LBHI Debtors shall be entitled to disclose such percentages to the Bankruptcy Court and the District Court).

The LBHI Debtors shall have the right to terminate this Settlement Agreement in the event that (i) Trustees for a percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such

- 9 -

**EXECUTION VERSION**

Trusts and the amount of losses on the Mortgage Loans in such Trusts, as of the Modification Date, have not accepted this Settlement Agreement by the Acceptance Date, (ii) an agreed-upon percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such Trusts and the amount of losses on the Mortgage Loans in such Trusts, are not included within Final Court Approval of the Settlement Agreement, (iii) (x) the REMIC Approval is not obtained by the date that is one year after the Trustee Findings Order becomes a Final Order or (y) the LBHI Debtors form the good faith belief that no REMIC Approval will take place, or (iv) the Bankruptcy Court does not include within the order approving this Settlement Agreement the findings of fact and conclusions of law set forth on <u>Exhibit I</u> hereto (the "<u>Debtors' Findings</u>").

An Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts (i) in the event that an Accepting Trust or Accepting Trusts are not included within Final Court Approval, but only for the Accepting Trust or Accepting Trusts that are not included within Final Court Approval, (ii) in the event the applicable Accepting Trustee has been directed, prior to the 9019 Objection Deadline, to terminate this Settlement Agreement as to such Accepting Trust or Accepting Trusts in a manner acceptable to the Accepting Trustee, but only for the Accepting Trust or Accepting Trusts for which such a direction has been provided, or (iii) the Bankruptcy Court does not include within the order approving this Settlement Agreement the proposed Trustee Findings for submission by the Bankruptcy Court to the District Court.

The LBHI Debtors shall have the right to terminate this Settlement Agreement, and an Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts, in the event that: (i) the Bankruptcy Court has not entered an order approving this Settlement Agreement (inclusive of the Debtors' Findings and the proposed Trustee Findings) by July 31, 2017; or (ii) the Bankruptcy Court does not agree that the Estimation Hearing will be conducted in accordance with the terms set forth in Exhibit G ████████ **REDACTED** ████████ ███████████.

The LBHI Debtors and the Accepting Trustees shall provide written notice to each other and the Institutional Investors of the exercise of their right to terminate this Settlement Agreement in accordance with the terms of this paragraph. The LBHI Debtors' and the Accepting Trustees' right to terminate this Settlement Agreement upon the occurrence of any of the events described in this paragraph shall be waived if not exercised, by providing notice as set forth in the preceding sentence, within 20 days following the occurrence of the applicable event.

2.04.    <u>Trustee Review</u>. The Trustees shall have until the Acceptance Date to conduct an investigation of the Settlement Agreement and its terms. The Trustees may conduct such diligence, may solicit input from Investors, and may retain experts to assist them as they deem necessary to inform themselves concerning the Settlement Agreement.

2.05.    <u>Effect of Termination</u>. In the event that this Settlement Agreement is terminated

**EXECUTION VERSION**

as provided for herein, the Settlement Agreement shall be null and void as to those Trusts for which it is terminated, and all pending claims filed by or on behalf of such Trusts shall be resolved pursuant to the Protocol Order, as amended by the Bankruptcy Court as appropriate in light of the suspension of the Protocol referred to in Section 2.03(a) herein and approved by the Bankruptcy Court, or in such other manner as the Bankruptcy Court shall direct.

2.06.   REMIC Approval/Trustee Findings/Other Trustee Conditions.  The Trustees may condition their acceptance of this Settlement Agreement upon:

(i) the District Court's approval of the Trustee Findings;

(ii) the Trustee Findings Order becoming a Final Order;

(iii) the receipt by the Accepting Trustees of the earlier of either:

(a) (a) A REMIC Opinion, in form and substance reasonably acceptable to the Accepting Trustees and LBHI Debtors, from legal counsel reasonably acceptable to the Accepting Trustees and the LBHI Debtors but retained by and at the expense of the LBHI Debtors, with respect to the REMIC Trusts that comprise the Accepting Trusts on behalf of which the Accepting Trustees (each acting as trustee, indenture trustee or separate trustee, as applicable) accepted the Settlement Agreement. The LBHI Debtors shall use their reasonable best efforts to obtain the REMIC Opinion for all REMIC Trusts that are, or are within, or that comprise, an Accepting Trust within 180 days of the Acceptance Date.

(b) A private letter ruling(s), or similar guidance, acceptable to the Parties, applicable to the REMIC Trusts that are, or are within, or that comprise, an Accepting Trust from the Internal Revenue Service containing the Required Tax Conclusions (the "REMIC Private Letter Ruling"). Only if, and after, (i) the LBHI Debtors notify the Accepting Trustees that it would not be possible or practicable for them to obtain an opinion of counsel as described in Section 2.06(iii)(a) or (ii) the Accepting Trustees determine that a REMIC Opinion delivered to them is not acceptable in form, content, or counsel providing the REMIC Opinion, the Accepting Trustees shall begin the process to cause requests for such letter ruling(s) to be submitted, if necessary, to the Internal Revenue Service as promptly as practicable, shall use reasonable best efforts to pursue such requests, and such requests may not be abandoned, unless an acceptable REMIC Opinion has been obtained, without the consent (which shall not unreasonably be withheld) of the LBHI Debtors and the Institutional Investors. In the event that the provisions of Section 3.06 of this Settlement Agreement are modified, the Accepting Trustees shall, if necessary, update their request(s) to the Internal Revenue Service to take account of such modifications. The LBHI Debtors shall use their reasonable best efforts to

**EXECUTION VERSION**

assist the Accepting Trustees' preparation and pursuit of the request for the rulings.

Receipt of the first to occur of either an acceptable REMIC Opinion or the REMIC Private Letter Ruling shall constitute the "REMIC Approval" as that term is used herein. The Parties acknowledge and agree that pursuit of the REMIC Approval shall not delay the commencement and conduct of the Estimation Proceeding, and such proceeding may take place and be completed while the applicable Parties pursue a REMIC Approval.

2.07  Bar Order.  In connection with the entry of the Trustee Findings Order, the LBHI Debtors, the Accepting Trustees, and the Institutional Investors shall request the entry of an order barring Investors in the Accepting Trusts from asserting claims against the Accepting Trustees with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, provided however that the entry of such a bar order is not a condition of Final Court Approval.

2.08.  LBHI Representations.  The LBHI Debtors represent to the Trustees that each of the entities identified on Exhibit C hereto is an affiliate or subsidiary of one or more of the LBHI Debtors.


## ARTICLE III.  SETTLEMENT TERMS

3.01.  Settlement Consideration and Payment.

The Settlement consideration shall consist of an allowed Class 7 General Unsecured claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc. in an amount to be determined by the Bankruptcy Court in the Estimation Proceeding (the "Allowed Claim"), *plus* interest thereon to the extent provided by Section 8.4 of the Plan, *less* the Legal Fees (as defined and determined in accordance with the attorneys' fee provision in Section 6.05) (the "Net Allowed Claim").  In accordance with the allocation methodology in Section 3.04, each Participating Trust shall be awarded its Allocable Share of the Net Allowed Claim. Distributions on account of the Allocable Shares of the Net Allowed Claim shall be made by the LBHI Debtors in accordance with, and on the periodic distribution dates contained in, the Plan (the "Plan Payments"), following the Final Expert Calculation, as defined in Section 3.04 below, and receipt of the REMIC Approval.

Unless otherwise directed in writing by the applicable Accepting Trustee prior to the making of Distributions on account of the Allocable Shares of the Net Allowed Claim, the LBHI Debtors shall make all such Distributions to the applicable Accepting Trustee for the Participating Trusts.

The LBHI Debtors shall have no responsibility for the maintenance or distribution of amounts paid to the Accepting Trustees on account of the Net Allowed Claim.

To the extent that any Accepting Trustee is the party responsible for distributing

- 12 -

**EXECUTION VERSION**

payments for a given Trust under the applicable Governing Agreement(s), that Accepting Trustee shall use its reasonable best efforts to distribute the amounts received from the LBHI Debtors on account of the Allocable Shares of the Net Allowed Claim promptly.

Notwithstanding the foregoing, to the extent that any Accepting Trustee or other party responsible for calculating or distributing Plan Payments for a given Trust forms a good-faith belief that guidance from a court is necessary or appropriate for resolving ambiguities or disputes concerning the distribution of Plan Payments, the Accepting Trustee or other party responsible for calculating or distributing such Plan Payments shall have the right to seek guidance from a court of competent jurisdiction before distributing those amounts. Any decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments under this Settlement Agreement or under the Plan.

3.02    The Estimation Proceeding.

(a)    The LBHI Debtors shall include in the 9019 Motion a request seeking Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts pursuant to 11 U.S.C. § 502(c) (the "Estimation Motion"). In the Estimation Proceeding, the LBHI Debtors shall seek Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts, for purposes of setting the amount of the Allowed Claim under Section 3.01 herein, at a total amount of $2,416,000,000.00 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), without prejudice to the rights of the LBHI Debtors to argue in furtherance of such estimation that an amount different from $2.416 billion is correct, reasonable, or legally and factually supportable (provided, however, that (x) if all Trusts are not Accepting Trusts, (y) if any Accepting Trust is not included within Final Court Approval, or (z) if any Accepting Trust is not included within the Estimation and Estimation Proceeding (whether because it has become a Terminated Trust or for any other reason) (the Trusts listed in clauses (x), (y) and (z), the "Excluded Trusts"), the Parties agree that the $2.416 billion will be reduced by an amount equal to $2.416 billion multiplied by the sum of the Initial Allocated Percentages (as defined in Section 3.04 below) of the Excluded Trusts). A "Participating Trust" is any Accepting Trust that is not an Excluded Trust.).

(b)    The Accepting Trustees shall agree and consent to the Estimation Motion solely to the extent of agreeing to estimation of the Covered Loan Claims of the Participating Trusts pursuant to 11 U.S.C. § 502(c) pursuant to this Settlement Agreement. The Accepting Trustees shall be entitled to seek estimation of the Covered Loan Claims of the Participating Trusts in the Estimation Proceeding at whatever sum they choose.

(c)    The LBHI Debtors and the Accepting Trustees agree that, except as provided below in Section 3.02(c)(ii), the Bankruptcy Court shall not be required to make findings of fact or conclusions of law when determining the Allowed Claim, and the Net Allowed Claim amount decided by the Bankruptcy Court as a result of the Estimation Proceeding, shall be final, binding, not subject to appeal or reconsideration, and shall be conclusive of the LBHI Debtors' liability to the Participating Trusts or in any way related to the  Covered Loan Claims of the Participating Trusts; provided however, that:

(i) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set between $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) and $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), the Allowed Claim shall be set, and deemed to be set, for all purposes with respect to the Covered Loan Claims of the Participating Trusts as $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS) (provided, however, if there are any Excluded Trusts, the Parties agree that the $2 billion and the $2.416 billion will be reduced by an amount equal to the $2 billion and the $2.416 billion multiplied by the sum of the Initial Allocated Percentages of the Excluded Trusts)**;** and

(ii) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set at an amount less than $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) (reduced by an amount equal to the $2 billion multiplied by the sum of the Initial Allocated Percentages of any Excluded Trusts), the Bankruptcy Court shall make findings of fact and conclusions of law when determining the Allowed Claim, and the Accepting Trustees retain, and do not waive, any right to appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim) (provided, however, if any Accepting Trusts become Excluded Trusts after the Court sets the Allowed Claim, the Parties agree that the amount determined in a Final Order by the Bankruptcy Court or, if applicable, an appellate Court, will be reduced by an amount equal to such amount multiplied by the sum of the Initial Allocated Percentages of those Excluded Trusts)..

For the avoidance of doubt, under no circumstances may the LBHI Debtors appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim.

3.03.   <u>Release of Claims</u>.  For and in consideration of the allowance of the Allowed Claim and the other agreements and consideration provided herein, the Participating Trusts, the Accepting Trustees for the Participating Trusts, and any and all persons claiming by, through, or on behalf of such Participating Trusts (including any Investors claiming derivatively for any such trust) and any and all agents or appointees acting on behalf of the Accepting Trustees (collectively, the "<u>Releasors</u>"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of the Released Parties, as of the Effective Date, for any and all claims (as defined in section 101 of the Bankruptcy Code) that were asserted, or that could have been asserted, in the Covered Loan Claims filed or asserted in the Bankruptcy Proceeding or in the Protocol by the Accepting Trustees on behalf of the Participating Trusts (collectively, all such claims being defined as the "<u>Trust Released Claims</u>"); *provided, however*, that the Participating Trusts' Allocable Shares and any claims of any Trust arising out of or relating to Transferor Loans are not released, waived or discharged by operation of this Settlement Agreement and are not a Trust Released Claim.  Upon Final Court Approval:  (a) each of the Claims filed or asserted by the Accepting Trustees on behalf of or related to the Participating Trusts shall be allowed as provided herein for Covered Loan Claims and otherwise shall be disallowed and expunged only with respect to Covered Loan Claims; (b) the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve on account of the Trust Released Claims; and (c) the Allocable Shares shall be conclusive of the Debtors' liability relating to the Covered Loan Claims of the Participating Trusts.  Except as provided herein, no

distributions from the LBHI Debtors shall be required on account of the Trust Released Claims. For the avoidance of doubt, nothing in this Section 3.03 is intended to address claims related to Trusts that are not Participating Trusts or claims arising out of or related to Transferor Loans.

3.04 <u>Allocation Formula</u>.  The Net Allowed Claim shall be allocated amongst the relevant trusts by the Accepting Trustees by calculating for each such trust its "Allocable Share" of the Net Allowed Claim as described below, pursuant to the binding determination of the Expert who will perform any calculations required.  To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("<u>Loan Groups</u>") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts solely for purposes of the allocation methodologies set forth below.  The Accepting Trustees may fully and conclusively rely on the Expert's determinations and calculations without any obligation to independently re-verify the same.

The allocated percentage for any given Trust (the "<u>Allocated Percentage</u>") shall be (a) the dollar amount of the claims asserted pursuant to the Protocol by the relevant trust as determined by the Expert, *divided by* (b) the dollar amount of claims asserted pursuant to the Protocol by the relevant trusts as determined by the Expert, expressed as a percentage.  Attached hereto as <u>Exhibit H</u> is a list of the Allocated Percentages for each Trust (assuming that each Trust becomes a Participating Trust) (for purposes of this Agreement such allocated percentages shall be deemed the "<u>Initial Allocated Percentages</u>").

For purposes of determining the dollar amounts used in <u>Exhibit H</u>, the Expert has used the following methodology. For all Liquidated Loans, the Expert used total dollar amount of the loss on each such loan that was the subject of an RMBS Claim that was reported to the Trustee by the applicable servicer or master servicer as of January 31, 2017.  For all Non-Liquidated Loans the Expert has used the Purchase Price, including the impact of any balance modifications, of each such loan as of January 31, 2017 *less* the market value of such loan as of January 31, 2017 using the Andrew Davidson & Co.'s LoanKinetics model.

In the event that all Trusts become Accepting Trusts and no Trusts become Excluded Trusts, the Allocated Percentage for each Trust will be the same as set forth on <u>Exhibit H</u>. However, in the event that any Trust does not become an Accepting Trust or any Trust becomes an Excluded Trust, the Allocated Percentage will be recalculated in accordance with the methodology described above with only the following changes: the dollar amount of claims asserted under the Protocol of any Trust that is not a Participating Trust will be set at zero.

For any Participating Trust, the Allocable Share will be equal to the Net Allowed Claim multiplied by Allocated Percentage. The Expert shall calculate the Allocable Share for each Participating Trust within thirty (30) days of the date the Net Allowed Claim has been determined by the Bankruptcy Court (the "<u>Final Expert Calculation</u>" and the "<u>Final Allocated Percentages</u>"). In performing the Final Expert Calculation, the Expert shall be permitted to make such adjustments as are necessary to ensure that the effects of rounding do not cause the sum of the Allocable Shares to exceed the amount of the Net Allowed Claim.

3.05.  <u>Plan Administrator's Allocation</u>.

The Parties agree (a) that the allocation set forth in Section 3.04 above shall in no way be binding on the LBHI Debtors or affect the LBHI Debtors' right to account for and allocate the Allowed Claim in accordance with their own analyses of the Claims and in the best interests of the Estate, and (b) the Bankruptcy Court order approving this Settlement Agreement shall expressly preserve such right; <u>provided</u>, <u>that</u>, the LBHI Debtors' account and allocation of the Allowed Claim shall in no way affect the allowance and priority of such claims or manner in which the Allowed Claim is allocated among the Trusts as provided in Section 3.04 above.

3.06  <u>Subsequent Recovery/Repayment of Principal</u>.

(a)  Plan Payments on each Participating Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution in accordance with the distribution provisions of the Governing Agreements  as though such Plan Payments  are a subsequent recovery available for distribution on the related distribution date; and further provided that if the Governing Agreement for such a Trust does not include the concept of "subsequent recovery," Plan Payments to such Trust shall be distributed as though they are unscheduled principal available for distribution on the related distribution date), subject to Section 3.04. If distribution of Plan Payments to a trust would become payable to a class of REMIC residual interests, whether on the initial distribution of such Plan Payments or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Trust, such Plan Payment shall be maintained in the distribution account, and the party responsible for distributing payments under the Governing Agreements of a given trust shall distribute it on the next distribution date according to the provisions of this Subsection 3.06(a).

(b)  In connection with the distribution of Plan Payments to Participating Trusts pursuant to Subsection 3.06(a), to the extent permitted under each Trust's Governing Agreement, the applicable Accepting Trustee, or the party responsible for calculating certificate balances pursuant to the terms of the Governing Agreements of a given Participating Trust, will apply the amount of the Plan Payment for that Trust to increase the balance of securities within that Trust (other than any class of REMIC residual interests) *in the reverse order of* previously allocated losses, as though such Plan Payment was a subsequent recovery; and further provided that if the Governing Agreement for a particular Participating Trust does not include the concept of "subsequent recovery," to the extent permitted under each Trust's Governing Agreement, the securities for such Trust shall be increased, *in reverse order of* previously allocated losses, as though the Plan Payment was distributed as though it was unscheduled principal), but in each case by not more than the amount of such losses previously allocated to that class of securities pursuant to the Governing Agreements.  Investors shall not be entitled to payment in respect of interest on the amount of such increases for any interest accrual period relating to the distribution date on which such increase occurs or any prior distribution date. For the avoidance of doubt, this Subsection 3.06(b) is intended only to increase the balances of the related classes of securities, as provided for herein, and shall not affect the distribution of Plan Payments on the Net Allowed Claim

- 16 -

**EXECUTION VERSION**

provided for in Subsection 3.06(a).

(c)    Should the party responsible for calculating distributions and/or making distributions to Investors under the terms of the Governing Agreements of a given Trust or a court determine that the payment procedure described in Sections 3.06(a) and 3.06(b) may not conform to the terms of the Governing Agreement for a particular Accepting Trust, the distribution described above shall be modified to distribute that Trust's Plan Payments as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the party responsible for calculating distributions under the terms of the Governing Agreements of a given Trust or a court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

(d) Notwithstanding anything to the contrary set forth in this Section 3.06 or any other provision of this Settlement Agreement, each Accepting Trustee and/or the party responsible for such implementation shall be entitled, prior to implementing the forgoing Subsections 3.06(a)-(c), to seek further guidance from a court of competent jurisdiction regarding the applicable procedures under the Governing Agreements related to the distribution of Plan Payments or determining the balance of securities potentially affected by distribution of the Plan Payments. Any such Accepting Trustee's or other implementing party's decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments to the Accepting Trustees under this Settlement Agreement or under the Plan.

3.07.    No Alteration of Trigger Dates or Similar Credit Support Measurement Dates. Neither the Net Allowed Claim nor any allocation or application thereof pursuant to Section 3.04, nor the receipt of any Plan Payments pursuant to Section 3.06 shall be deemed to reverse the occurrence of any transaction-related trigger in any Participating Trust.

3.08.    Responsibility for Distribution of Plan Payments. An Accepting Trustee (to the extent it is the party responsible for making distributions under the applicable Governing Agreement(s)), or the party responsible for making distributions under the applicable Governing Agreement(s) if it is not the Accepting Trustee, shall administer distribution of the Plan Payments under the terms of the Governing Agreements. No party (including the LBHI Debtors and the Institutional Investors), other than the party responsible for calculating and causing the distributions under the applicable Governing Agreements, shall have any liability to Accepting Trustees, the Participating Trusts, any Investor in such Trusts, or any other Person in connection with the determination of the Net Allowed Claim, the Allocated Percentages, the Final Expert Determination or the administration or distribution of the Plan Payments, including under any indemnification obligation that exists under any Governing Agreement.

3.09.    Expert Calculation of Final Allocated Percentages to be Conclusive. In the absence of bad faith or manifest error, the Expert's calculations of the Final Allocated Percentages and each Participating Trust's Allocable Share shall be binding on all Participating Trusts.

3.10.    Full Satisfaction. The determination and allowance of the Net Allowed Claim

- 17 -

under the Plan pursuant to this Settlement Agreement shall be in full and final satisfaction of any and all Covered Loan Claims of the Participating Trusts (but not the Excluded Trusts or the Transferor Trusts) and, except for Plan Payments, there shall be no further recovery against the LBHI Debtors by a Participating Trust on account of any of the Trust Released Claims.

3.11.    Release of RMBS Reserve.  Notwithstanding anything to the contrary contained herein, following the Bankruptcy Court's determination of the Allowed Claim if the REMIC Approval has not occurred on or before October 31, 2018, the Accepting Trustees, solely in their capacity as trustee for Participating Trusts and not on behalf of any other Trusts, shall not oppose any request or motion by the LBHI Debtors to reduce the RMBS Reserve to the amount necessary to make distributions under the Plan on account of the Allocable Shares.

ARTICLE IV.  CLAIMS NOT RELEASED

4.01.    Financial-Guaranty Provider Rights and Obligations.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Trust has rights or obligations wholly independent of the rights or obligations of the Trustee of or Investors in such Trust, the Trustees, or the Trusts, the releases and waivers in Article III are not intended to and shall not release such rights, if any, provided, however, that the LBHI Debtors reserve all rights with respect to the position they may take on whether the resolution of the Covered Loan Claims pursuant to this Settlement Agreement shall offset or otherwise bar any claims asserted by a third party guarantor or financial-guaranty provider.

4.02.    Mortgage Originator and Third Party Guarantor Claims.  The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents), and (b) claims against any third party guarantor or financial-guaranty provider with respect to the Trusts, if any.

4.03.    Settlement Agreement Rights.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement.

4.04.    Disclosure Claims/Bar Date.  The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("Disclosure Claims") that an Investor may seek to assert based upon such Investor's purchase or sale of securities; provided, however, that the question of the extent to which any payment made or benefit conferred pursuant to this Settlement Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Settlement Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights. Notwithstanding the foregoing, the Investment Advisers for themselves, and not for any individual clients or funds they advise, state that they do not own any Disclosure Claims and hereby irrevocably, fully and finally release any Disclosure Claims to the extent they own such claims personally, and such Investment Advisers agree not to assist or advise any of the individual clients or funds that they advise in bringing any Disclosure Claim except to the extent legally required.   Nothing in this provision shall bar any individual client, or any fund advised

**EXECUTION VERSION**

by an Investment Adviser, from asserting its own Disclosure Claims on its own behalf. Nothing in this Settlement Agreement is intended or shall be read to alter, modify, or amend any order of the Bankruptcy Court, any provision in the Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

4.05.    Repurchase Obligations of Unaffiliated Mortgage Sellers. Claims against parties other than the Released Parties related to the origination and/or sale of Mortgage Loans sold or securitized by the LBHI Debtors are not released. To the extent that the LBHI Debtors, or any successors or assigns of the LBHI Debtors, elect to pursue any third-parties, unaffiliated with the LBHI Debtors, for recovery based on the Trust Released Claims related to the origination and/or sale of Covered Loans, the Accepting Trustees agree to use commercially reasonable efforts to assist such pursuit (provided that the LBHI Debtors shall reimburse the Accepting Trustees in full, in cash, for their reasonable and necessary fees, costs and expenses in providing such assistance); *provided, however*, neither the Accepting Trustees nor their counsel, advisors or experts shall be obligated to disclose or provide to the LBHI Debtors any work product or attorney-client privileged information.

4.06.    Obligations of Master Servicers and Servicers. This Settlement Agreement shall not release or affect any obligation of any Master Servicer or Servicer not a debtor in the Bankruptcy Proceeding, including without limitation Aurora, under any of the Governing Agreements that pertain to the servicing of Mortgage Loans held by the Trusts.

4.07.    Correction of Certain Document Defects. The releases and waivers in this agreement do not release any party from any existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects, provided however, that any claims for monetary damages against the LBHI Debtors based upon the failure to cure such defects shall be included with the Trust Released Claims, and further provided that nothing in this Section 4.07 is intended to or shall be interpreted to create new obligations on the part of any party.

4.07.    Inter-Debtor Claims. This Settlement Agreement shall not waive, release or discharge any claims, liabilities, rights, obligations or other relationships held by one or more LBHI Debtors against one or more other LBHI Debtors.

ARTICLE V.    RELEASE OF UNKNOWN CLAIMS

5.01.    Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM

**EXECUTION VERSION**

OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR."

5.02.    The Parties acknowledge that inclusion of the provisions of this Article V to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

## ARTICLE VI.  MISCELLANEOUS PROVISIONS

6.01.    Terminated Trusts.  Effective as of the Modification Date, the Accepting Trustees agree that they will not pursue any claims of, or on behalf of, any Terminated Trust, but make no representations as to whether any assignees of claims relating to Terminated Trusts will pursue or not pursue such claims.  For the avoidance of doubt, the definition of "Trust" does not include any "Terminated Trusts."  The Accepting Trustees agree that, as of the Modification Date, they will no longer pursue any rights with respect to any of the Terminated Trusts Proofs of Claim, and acknowledge that they have no standing to oppose and will not oppose any objection filed by the LBHI Debtors to the Terminated Trusts Proofs of Claim.

6.02.    Holdings.  Each of the Institutional Investors shall continue to hold securities issued by at least one of the Accepting Trusts sufficient to support its individual standing to prosecute any intervention in any proceeding seeking entry of the Trustee Findings Order (the "Required Holdings").  Such maintenance of Required Holdings shall continue until the earliest of:  (i) the date on which Final Court Approval is obtained; (ii) such time as Final Court Approval becomes legally impossible; or (iii) any material breach of the Settlement Agreement by the LBHI Debtors or any Accepting Trustee, which breach is not cured or waived within ninety (90) days of written notice of such breach having been provided by a party to the Settlement Agreement; provided, however, that continued holding is not required if prohibited by law, regulation, contract, or fiduciary obligations.  The requirements of this Section 6.02 shall be met if any investor, fund, or entity included within the definition of that Institutional Investor maintains holdings in compliance with this Settlement Agreement.  For the avoidance of doubt, other than as set forth above and/or as otherwise required by federal or state securities laws, this Settlement Agreement shall not restrict the right of any Institutional Investor to sell or exchange any security issued by a Trust free and clear of any encumbrance.  No Trustee shall be required to provide any oversight with respect to the Institutional Investors' compliance with this Section 6.02.  The Parties agree that the aggregate amounts of securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings of each Institutional Investor shall remain confidential, subject to review only by the LBHI Debtors and the Trustees unless required by law, regulation, or process.

6.03.    No Inconsistent Directions.  Except for providing the Request Letter, the Institutional Investors agree that between the date hereof and the Effective Date, with respect to the securities issued by the Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or join with any other Investors or Trustees to cause the Trustees to enforce (or seek derivatively to enforce) any Claims for any Trust.  Nothing in this Settlement Agreement shall restrict the ability of, or require, any Trustee to demand that any other Investor who seeks to direct the Trustee regarding the Settlement must post the indemnity or bond, if any, required or permitted by the Governing Agreements for the applicable Trust.

6.04.   <u>No Amendments to Governing Agreements</u>.  The Parties agree that this Settlement Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement; provided, however, that compliance with this Settlement Agreement and its Exhibits, including the provisions relating to Plan Payments, shall be deemed compliance with the applicable Governing Agreements and no Party or Investor shall make any subsequent claim to the contrary.

6.05.   <u>Legal Fees</u>.  As payment of the attorneys' fees for counsel to the Institutional Investors for its work relating to the Settlement, Gibbs & Bruns shall be allocated, without conveyance to the Accepting Trusts, 4.75% of the first $2,416,000,000 of the Allowed Claim (the "<u>Legal Fees</u>") by the Plan Administrator, without the requirement of submitting any form of estate retention or fee application, as an allowed Class 7 General Unsecured Claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc.  Distributions under the Plan on account of the Legal Fees shall be made at such times as distributions are made on account of the Allowed Claim in accordance with, and on the periodic distribution dates contained in, the Plan.

6.06.   <u>Voluntary Agreement</u>.  Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress.  This Settlement Agreement is a settlement of disputed matters.

6.07.   <u>No Admission of Breach or Wrongdoing</u>.  The LBHI Debtors have denied and continue to deny any breach, fault, liability, or wrongdoing.  This denial includes, but is not limited to, allegations of breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which any LBHI Debtor was the Seller, Sponsor, Servicer, or Depositor.  Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the LBHI Debtors with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the LBHI Debtors have or could have asserted.  No statements made by any Party to this Settlement Agreement in support of the Settlement or the Trustee Findings Order shall be admissible in any other proceeding for any purpose.

6.08.   <u>Concerning the Trustees</u>.  The provisions of this Settlement Agreement shall not affect the rights and obligations of the Trustees under the applicable Governing Agreements, which shall equally apply to each and every such Trustee's rights and obligations under the Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to imply that any Trustee owes any greater duties under the Governing Agreements than it would otherwise owe under those agreements.

6.09.   <u>Counterparts</u>.  This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement.  Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as

delivery of the original signature page to this Settlement Agreement.

6.10.    Joint Drafting.  Following the Modification Date, this Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

6.11.    Entire Agreement.  This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties, at the relevant point in time, or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

6.12.    Specific Performance.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief as a remedy for any such breach.  The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

6.13.    Authority.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

6.14.    No Obligation to Amend.  No Party shall be under any obligation to participate in the amendment of any term of any Governing Agreement and shall not have any liability to any other Party or Person in connection with any amendment to any term of any Governing Agreement that any Party or other Person determines is necessary to implement the terms of this Settlement Agreement.

6.15.    No Third Party Beneficiaries.  There are no third party beneficiaries of this Settlement Agreement.

6.16.    Headings.  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

6.17.    Notices.  All notices or demands given or made by one Party to another Party relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

<u>EXECUTION VERSION</u>

To:    Institutional Investors
       c/o Kathy Patrick
       Gibbs & Bruns LLP
       1100 Louisiana
       Suite 5300
       Houston, TX 77002
       Tel: 713-650-8805
       Email: kpatrick@gibbsbruns.com

To:    The LBHI Debtors
       c/o Paul Shalhoub
       c/o Todd Cosenza
       Willkie Farr & Gallagher LLP
       787 Seventh Avenue
       New York, NY  10019
       Tel: 212-728-8000
       Email: pshalhoub@willkie.com
              tcosenza@willkie.com

       c/o Michael Rollin
       c/o Maritza Dominguez Braswell
       Rollin Braswell Fisher LLC
       8350 E. Crescent Parkway, Suite 100
       Greenwood Village, CO  80111
       Tel: 303-945-7415
       Email: mrollin@RBF.Law
              mbraswell@RBF.Law

To:    The Accepting Trustees, at such addresses identified in writing by the
       applicable Accepting Trustee to the other Parties.

6.18.    <u>Disputes and Bankruptcy Court Approval</u>.  This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof.  Except as otherwise provided in this Settlement Agreement, each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. Thereafter, each of the Parties hereto consents to the non-exclusive jurisdiction of the federal and state courts of New York with respect to such matters.

6.19.    <u>Press Statements</u>.  In the event the Parties agree to make this Settlement Agreement public, the Parties shall agree in advance on the text of a permissible disclosure concerning this Settlement Agreement, which shall be factual and non-disparaging.  The Parties agree that any subsequent press statements concerning this Settlement Agreement also shall be factual and non-disparaging.  At any time on or after the Modification Date, each Trustee may provide notice of this Settlement Agreement and its terms publicly and/or to such present and

former Investors of the Trusts and other persons, including all financial guaranty institutions and securities administrators known to the Trustees to have an interest in the Trusts, as such Trustee determines, in its sole discretion, is necessary or appropriate.

6.20.    <u>Fiduciary Obligations</u>.  Nothing in this Settlement Agreement shall be construed to require any Party to breach any investment management agreement or fiduciary obligation to comply with this Settlement Agreement.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

**EXECUTION VERSION**

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this Settlement Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan
Administrator for Lehman Brothers Holding Inc.
and the other LBHI Debtors

By: _____

Name: _____

Title: _____

**EXECUTION VERSION**

Gibbs & Bruns, LLP,
counsel to, and authorized signatory for:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,
Cascade Investment, L.L.C.,
Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
Metropolitan Life Insurance Company,
Pacific Investment Management Company, LLC,
Sealink Designated Activity Company, through its investment manager
      Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans,
Voya Investment Management LLC, and
Western Asset Management Company.

By:

Name:   Robert Madden

Title:   Partner

**EXHIBIT A**

**TRUSTS**

| No. | Trust Name |
|-----|------------|
| 1 | ARC 2002-BC10 |
| 2 | ARC 2002-BC8 |
| 3 | ARC 2002-BC9 |
| 4 | ARC 2004-1 |
| 5 | BNC 2006-1 |
| 6 | BNC 2006-2 |
| 7 | BNC 2007-1 |
| 8 | BNC 2007-2 |
| 9 | BNC 2007-3 |
| 10 | BNC 2007-4 |
| 11 | LABS 2004-1 |
| 12 | LABS 2007-1 |
| 13 | LMT 2005-1 |
| 14 | LMT 2005-2 |
| 15 | LMT 2005-3 |
| 16 | LMT 2006-1 |
| 17 | LMT 2006-2 |
| 18 | LMT 2006-4 |
| 19 | LMT 2006-8 |
| 20 | LMT 2006-9 |
| 21 | LMT 2007-1 |
| 22 | LMT 2007-10 |
| 23 | LMT 2007-2 |
| 24 | LMT 2007-3 |
| 25 | LMT 2007-4 |
| 26 | LMT 2007-5 |
| 27 | LMT 2007-6 |
| 28 | LMT 2007-7 |
| 29 | LMT 2007-8 |
| 30 | LMT 2007-9 |
| 31 | LMT 2008-2 |
| 32 | LMT 2008-6 |
| 33 | LXS 2005-1 |
| 34 | LXS 2005-10 |
| 35 | LXS 2005-2 |
| 36 | LXS 2005-3 |
| 37 | LXS 2005-4 |

**EXECUTION VERSION**

| | |
|---|---|
| 38 | LXS 2005-6 |
| 39 | LXS 2005-8 |
| 40 | LXS 2006-1 |
| 41 | LXS 2006-10N |
| 42 | LXS 2006-11 |
| 43 | LXS 2006-12N |
| 44 | LXS 2006-13 |
| 45 | LXS 2006-15 |
| 46 | LXS 2006-17 |
| 47 | LXS 2006-19 |
| 48 | LXS 2006-20 |
| 49 | LXS 2006-3 |
| 50 | LXS 2006-5 |
| 51 | LXS 2006-7 |
| 52 | LXS 2006-8 |
| 53 | LXS 2006-9 |
| 54 | LXS 2007-1 |
| 55 | LXS 2007-10H |
| 56 | LXS 2007-11 |
| 57 | LXS 2007-12N |
| 58 | LXS 2007-14H |
| 59 | LXS 2007-15N |
| 60 | LXS 2007-16N |
| 61 | LXS 2007-17H |
| 62 | LXS 2007-18N |
| 63 | LXS 2007-20N |
| 64 | LXS 2007-3 |
| 65 | LXS 2007-5H |
| 66 | LXS 2007-6 |
| 67 | LXS 2007-7N |
| 68 | LXS 2007-8H |
| 69 | LXS 2007-9 |
| 70 | RLT 2008-AH1 |
| 71 | SAIL 2003-BC1 |
| 72 | SAIL 2003-BC10 |
| 73 | SAIL 2003-BC11 |
| 74 | SAIL 2003-BC12 |
| 75 | SAIL 2003-BC13 |
| 76 | SAIL 2003-BC2 |
| 77 | SAIL 2003-BC3 |
| 78 | SAIL 2003-BC4 |
| 79 | SAIL 2003-BC5 |
| 80 | SAIL 2003-BC8 |

<u>**EXECUTION VERSION**</u>

| | |
|---|---|
| 81 | SAIL 2003-BC9 |
| 82 | SAIL 2004-1 |
| 83 | SAIL 2004-10 |
| 84 | SAIL 2004-2 |
| 85 | SAIL 2004-3 |
| 86 | SAIL 2004-4 |
| 87 | SAIL 2004-5 |
| 88 | SAIL 2004-6 |
| 89 | SAIL 2004-8 |
| 90 | SAIL 2004-9 |
| 91 | SAIL 2005-1 |
| 92 | SAIL 2005-10 |
| 93 | SAIL 2005-11 |
| 94 | SAIL 2005-2 |
| 95 | SAIL 2005-3 |
| 96 | SAIL 2005-4 |
| 97 | SAIL 2005-5 |
| 98 | SAIL 2005-6 |
| 99 | SAIL 2005-7 |
| 100 | SAIL 2005-8 |
| 101 | SAIL 2005-9 |
| 102 | SAIL 2005-HE3 |
| 103 | SAIL 2006-1 |
| 104 | SAIL 2006-2 |
| 105 | SAIL 2006-4 |
| 106 | SAIL 2006-BNC3 |
| 107 | SARM 2004-10 |
| 108 | SARM 2004-16 |
| 109 | SARM 2004-18 |
| 110 | SARM 2004-20 |
| 111 | SARM 2004-5 |
| 112 | SARM 2004-9XS |
| 113 | SARM 2005-11 |
| 114 | SARM 2005-12 |
| 115 | SARM 2005-15 |
| 116 | SARM 2005-17 |
| 117 | SARM 2005-20 |
| 118 | SARM 2005-22 |
| 119 | SARM 2005-23 |
| 120 | SARM 2005-3XS |
| 121 | SARM 2005-6XS |
| 122 | SARM 2005-8XS |
| 123 | SARM 2006-1 |

| 124 | SARM 2006-10 |
| 125 | SARM 2006-11 |
| 126 | SARM 2006-12 |
| 127 | SARM 2006-2 |
| 128 | SARM 2006-3 |
| 129 | SARM 2006-4 |
| 130 | SARM 2006-5 |
| 131 | SARM 2006-6 |
| 132 | SARM 2006-7 |
| 133 | SARM 2006-8 |
| 134 | SARM 2006-9 |
| 135 | SARM 2007-1 |
| 136 | SARM 2007-10 |
| 137 | SARM 2007-11 |
| 138 | SARM 2007-2 |
| 139 | SARM 2007-3 |
| 140 | SARM 2007-4 |
| 141 | SARM 2007-6 |
| 142 | SARM 2007-8 |
| 143 | SARM 2008-2 |
| 144 | SASCO 2003-12XS |
| 145 | SASCO 2003-15A |
| 146 | SASCO 2003-17A |
| 147 | SASCO 2003-18XS |
| 148 | SASCO 2003-25XS |
| 149 | SASCO 2003-26A |
| 150 | SASCO 2003-28XS |
| 151 | SASCO 2003-29 |
| 152 | SASCO 2003-30 |
| 153 | SASCO 2003-34A |
| 154 | SASCO 2003-35 |
| 155 | SASCO 2003-36XS |
| 156 | SASCO 2003-38 |
| 157 | SASCO 2003-39EX |
| 158 | SASCO 2003-3XS |
| 159 | SASCO 2003-6A |
| 160 | SASCO 2003-GEL1 |
| 161 | SASCO 2003-NP1 |
| 162 | SASCO 2003-S1 |
| 163 | SASCO 2003-S2 |
| 164 | SASCO 2004-10 |
| 165 | SASCO 2004-11XS |
| 166 | SASCO 2004-13 |

EXECUTION VERSION

| 167 | SASCO 2004-15 |
| 168 | SASCO 2004-16XS |
| 169 | SASCO 2004-17XS |
| 170 | SASCO 2004-18H |
| 171 | SASCO 2004-19XS |
| 172 | SASCO 2004-20 |
| 173 | SASCO 2004-21XS |
| 174 | SASCO 2004-22 |
| 175 | SASCO 2004-23XS |
| 176 | SASCO 2004-2AC |
| 177 | SASCO 2004-4XS |
| 178 | SASCO 2004-6XS |
| 179 | SASCO 2004-7 |
| 180 | SASCO 2004-9XS |
| 181 | SASCO 2004-GEL1 |
| 182 | SASCO 2004-GEL2 |
| 183 | SASCO 2004-GEL3 |
| 184 | SASCO 2004-NP1 |
| 185 | SASCO 2004-S2 |
| 186 | SASCO 2004-S3 |
| 187 | SASCO 2004-S4 |
| 188 | SASCO 2005-1 |
| 189 | SASCO 2005-10 |
| 190 | SASCO 2005-11H |
| 191 | SASCO 2005-14 |
| 192 | SASCO 2005-15 |
| 193 | SASCO 2005-17 |
| 194 | SASCO 2005-2XS |
| 195 | SASCO 2005-3 |
| 196 | SASCO 2005-4XS |
| 197 | SASCO 2005-5 |
| 198 | SASCO 2005-7XS |
| 199 | SASCO 2005-9XS |
| 200 | SASCO 2005-GEL2 |
| 201 | SASCO 2005-GEL3 |
| 202 | SASCO 2005-GEL4 |
| 203 | SASCO 2005-RF1 |
| 204 | SASCO 2005-RF2 |
| 205 | SASCO 2005-RF4 |
| 206 | SASCO 2005-RF5 |
| 207 | SASCO 2005-RF6 |
| 208 | SASCO 2005-RF7 |
| 209 | SASCO 2005-S1 |

| | |
|---|---|
| 210 | SASCO 2005-S2 |
| 211 | SASCO 2005-S3 |
| 212 | SASCO 2005-S4 |
| 213 | SASCO 2005-S5 |
| 214 | SASCO 2005-S6 |
| 215 | SASCO 2005-S7 |
| 216 | SASCO 2005-SC1 |
| 217 | SASCO 2006-BC2 |
| 218 | SASCO 2006-BC3 |
| 219 | SASCO 2006-BC4 |
| 220 | SASCO 2006-BC6 |
| 221 | SASCO 2006-GEL1 |
| 222 | SASCO 2006-GEL2 |
| 223 | SASCO 2006-GEL3 |
| 224 | SASCO 2006-GEL4 |
| 225 | SASCO 2006-RF1 |
| 226 | SASCO 2006-RF2 |
| 227 | SASCO 2006-RF3 |
| 228 | SASCO 2006-RF4 |
| 229 | SASCO 2006-S1 |
| 230 | SASCO 2006-S2 |
| 231 | SASCO 2006-S3 |
| 232 | SASCO 2006-S4 |
| 233 | SASCO 2006-Z |
| 234 | SASCO 2007-BC1 |
| 235 | SASCO 2007-BC2 |
| 236 | SASCO 2007-BC3 |
| 237 | SASCO 2007-BC4 |
| 238 | SASCO 2007-BNC1 |
| 239 | SASCO 2007-GEL1 |
| 240 | SASCO 2007-GEL2 |
| 241 | SASCO 2007-MLN1 |
| 242 | SASCO 2007-OSI |
| 243 | SASCO 2007-RF1 |
| 244 | SASCO 2007-TC1 |

<u>**EXECUTION VERSION**</u>

## <u>EXHIBIT B</u>

## **TERMINATED TRUSTS**

| <u>No.</u> | <u>Trust Name</u> |
|-----|-------------|
| 1 | LABS 2003-1 |
| 2 | SASCO 2003-10 |
| 3 | SASCO 2003-14 |
| 4 | SASCO 2003-16 |
| 5 | SASCO 2003-20 |
| 6 | SASCO 2003-21 |
| 7 | SASCO 2003-4 |
| 8 | SASCO 2003-8 |
| 9 | SASCO 2003-NP2 |
| 10 | SASCO 2003-NP3 |
| 11 | SASCO 2003-RNP2 |
| 12 | SASCO 2004-NP2 |
| 13 | SASCO 2007-RF2 |
| 14 | SASC 2003-32 |
| 15 | SASC 2004-3 |
| 16 | SASC 2005-6 |

**EXHIBIT C**

**SUBSIDIARIES AND AFFILIATES**

| No. | Company Name |
|-----|-------------|
| 1 | Lehman Brothers Holdings Inc. |
| 2 | 314 Commonwealth Ave. Inc. |
| 3 | Acesco Holdings Inc |
| 4 | Appalachian Asset Management Corp. |
| 5 | Battle Station LHCI., Inc. |
| 6 | Brookson Corp. |
| 7 | Brookwood Energy And Properties Inc. |
| 8 | Campus Door, Inc. |
| 9 | Capital Crossing Securities Corp II |
| 10 | Da Group Holdings Inc. |
| 11 | Diogenes Holdings Inc. |
| 12 | Diogenes Management Company Inc. |
| 13 | Dl Mortgage Corporation |
| 14 | DOLCAP INC |
| 15 | E.F.H. Insurance Agency Of Pennsylvania, Inc. |
| 16 | Fleet Street Condos Inc. |
| 17 | Frah Special Services Inc. |
| 18 | Future Financial Holdings Inc. |
| 19 | GA Dekalb Inc. |
| 20 | Industrial Holdings Corporation |
| 21 | LB Brickstone Inc. |
| 22 | LB Eastview, Inc. |
| 23 | LB Funding Corp II |
| 24 | LB Hercules Agency, Inc. |
| 25 | LB I Group Inc. |
| 26 | LB Lakeside I Inc. |
| 27 | LB Lakeside II Inc. |
| 28 | LB Lakeside III Inc. |
| 29 | LB LIH Corp. |
| 30 | LB Skypower Inc. |
| 31 | LB Transaction No. 5 Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 32 | LB Verve Condos Inc. |
| 33 | LB Windsor Capital One Bloor Street East Inc. |
| 34 | LB Windsor Kitchener Inc. |
| **No.** | **Company Name** |
| 35 | LB Windsor Pointz Avenue Inc. |
| 36 | LBMB CAPITAL PARTNERS V EAGLE ENERGY HOLDINGS |
| 37 | LBMB FUND (B) EAGLE ENERGY HOLDINGS LP |
| 38 | LBMB FUND EAGLE ENERGY HOLDINGS LP |
| 39 | LBMB PARTNERS EAGLE ENERGY HOLDINGS LP |
| 40 | LBTC Transfer Inc. |
| 41 | LCPI Properties, Inc. |
| 42 | Lehman ABS Corporation |
| 43 | Lehman Aircraft Securitization Holdings Inc. |
| 44 | Lehman Ali Inc. |
| 45 | Lehman Brothers  Asset Management Inc. |
| 46 | Lehman Brothers (Israel) Inc. |
| 47 | Lehman Brothers Bancorp, Inc. |
| 48 | Lehman Brothers Commercial Corporation |
| 49 | Lehman Brothers Commodity Services Inc. |
| 50 | Lehman Brothers Communications Associates Inc |
| 51 | Lehman Brothers Derivative Products Inc. |
| 52 | Lehman Brothers Europe Inc. |
| 53 | Lehman Brothers Finance (Japan) Inc. |
| 54 | Lehman Brothers Financial Products Inc. |
| 55 | Lehman Brothers Futures Asset Management Corp |
| 56 | Lehman Brothers International Services Inc. |
| 57 | Lehman Brothers Investment Holdings Company |
| 58 | Lehman Brothers Investments Japan Inc. |
| 59 | Lehman Brothers Merchant Banking Partners II |
| 60 | Lehman Brothers Mortgage Opportunity |
| 61 | Lehman Brothers OTC Derivatives Inc. |
| 62 | Lehman Brothers Overseas Inc. |
| 63 | Lehman Brothers Pera Inc. |
| 64 | Lehman Brothers Special Financing Inc. |
| 65 | Lehman Brothers U.K. Holdings (Delaware) Inc. |
| 66 | Lehman Brothers Venture Associates, Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 67 | Lehman Brothers/FW Inc. |
| 68 | Lehman Brothers/Rosecliff Inc. |
| 69 | Lehman Commercial Paper Inc. |
| 70 | Lehman Housing Capital Inc. |
| 71 | Lehman Housing Lending Corp. |
| **No.** | **Company Name** |
| 72 | Lehman Investments Inc. |
| 73 | Lehman Pass-Through Securities Inc. |
| 74 | Lehman Tax Credit Advisor Inc. |
| 75 | Lehman VIP Holdings Inc. |
| 76 | LHCI GP VI Inc. |
| 77 | LHCI GP VII Inc. |
| 78 | LHCI GP VIII Inc. |
| 79 | LHCI GP X, Inc. |
| 80 | LHCI GP XI, Inc |
| 81 | LHCI Martinsburg GP Inc. |
| 82 | Libro Holdings I Inc. |
| 83 | LPTG Inc. |
| 84 | LW-GP2B, Inc |
| 85 | LW-GP2D, Inc. |
| 86 | LW-LP Inc. |
| 87 | LW-LP Properties Inc. |
| 88 | MBR/GP Corp. |
| 89 | MMP Funding Corporation |
| 90 | NJ Atlantic Inc. |
| 91 | NJ Somerset Inc. |
| 92 | NP Investment I Co. |
| 93 | PAC Aircraft Management Inc. |
| 94 | PAMI 5-7 East 17th Street Inc. |
| 95 | PAMI Newark Inc. |
| 96 | PAMI PPC I Inc. |
| 97 | PAMI Public/Private II, Inc. |
| 98 | PAMI Raymond Inc. |
| 99 | Petro L Corporation |
| 100 | Principal Transactions II Inc. |
| 101 | Principal Transactions Inc. |
| 102 | Property Asset Management Inc. |
| 103 | Real Estate Private Equity Inc. |

| No. | Company Name |
|---|---|
| 104 | Rock Hill Investors Inc. |
| 105 | SBA 2011 Acquisition Co Inc. |
| 106 | SASCO ARC CORPORATION |
| 107 | Select Asset Inc. |
| 108 | Sharpstown Center Inc. |
| **No.** | **Company Name** |
| 109 | Shearson Financial Services Of TX Inc. |
| 110 | Solar Finance Inc |
| 111 | Structured Asset Securities Corp |
| 112 | Structured Options Inc. |
| 113 | Thai Holding I Inc. |
| 114 | Thai Holding II Inc. |
| 115 | Tulsa Hotels LS, Inc |
| 116 | Warren Atlantic Inc. |
| 117 | Warren/GP Corp. |
| 118 | West Bay Club Development Corp. |
| 119 | West Bay Realty Inc. |
| 120 | Wharf Reinsurance Inc. |
| 121 | Winter Garden Inc. |
| 122 | Woodlands Commercial Corporation |
| 123 | Lehman Re Inc. |
| 124 | BK II Properties Inc. |
| 125 | ASIA INDO OPPORTUNITY I LTD |
| 126 | ASIA INDO OPPORTUNITY II LTD |
| 127 | BALLYBUNION INVESTMENT LIMITED |
| 128 | BALLYBUNION INVESTMENT NO 2 LIMITED |
| 129 | BALLYBUNION INVESTMENT NO 3 LIMITED |
| 130 | BIRCH Y.K. |
| 131 | BISON II SP. Z.O.O. |
| 132 | CAPITAL GROWTH INVESTMENTS LTD. |
| 133 | CENTRAL TOKYO HOLDINGS INC. |
| 134 | CENTRAL TOKYO INVESTMENTS INC. |
| 135 | CENTRAL TOKYO PROPERTIES INC. |
| 136 | CEREP III INVESTMENT D S.ÀR.L. |
| 137 | CIMT LIMITED |
| 138 | CJC INVESTMENTS INC |
| 139 | CYGNUS Y.K. |
| 140 | DYNAMO INVESTMENTS LIMITED |

| No. | Company Name |
|---|---|
| 141 | EAGLE HOLDINGS II INC |
| 142 | EAST DOVER LIMITED |
| 143 | ELMWOOD Y.K. |
| 144 | FALCON HOLDINGS II INC. |
| 145 | FALCON HOLDINGS III INC. |
| 146 | FALCON HOLDINGS IV INC. |
| **No.** | **Company Name** |
| 147 | FALCON INVESTOR I INC. |
| 148 | FALCON INVESTOR II INC. |
| 149 | FALCON INVESTOR III INC. |
| 150 | FALCON INVESTOR IV INC. |
| 151 | FALCON INVESTOR IX INC. |
| 152 | FALCON INVESTOR V INC . |
| 153 | FALCON INVESTOR VI INC. |
| 154 | FALCON INVESTOR VII INC. |
| 155 | FALCON INVESTOR VIII INC. |
| 156 | FALCON INVESTOR X INC. |
| 157 | GAINSBOROUGH INVESTMENTS BV |
| 158 | GKI KOREA DEVELOPMENT LIMITED |
| 159 | GKI KOREA MANAGEMENT LIMITED |
| 160 | GLOBAL KOREA INVESTMENTS LTD |
| 161 | GLOBAL TAIWAN INVESTMENTS LTD |
| 162 | GLOBAL THAI PROPERTY FUND |
| 163 | GRA FINANCE CORPORATION LTD. |
| 164 | HOLLYHOCK YK |
| 165 | HONG KONG TRUST NO. 1 |
| 166 | IVANHOE LANE PTY LTD |
| 167 | JAPAN REAL ESTATE INVESTMENT PARTNERSHIP INC. |
| 168 | JAPAN TK INVESTOR I (CAYMAN) HOLDINGS INC. |
| 169 | JASMINE Y.K. |
| 170 | KENILWORTH INVESTMENTS 1 LTD |
| 171 | KENILWORTH INVESTMENTS 2 LTD |
| 172 | KINGFISHER CAPITAL CDO LTD |
| 173 | L.B.A. YK |
| 174 | LAMCO Services Ltd |
| 175 | LB ALPHA FINANCE CAYMAN LIMITED |
| 176 | LB BETA FINANCE CAYMAN LIMITED |
| 177 | LB CANADA SKYPOWER |
| 178 | LB DAME LP S.ÀR.L. |

<u>**EXECUTION VERSION**</u>

| No. | Company Name |
|-----|-------------|
| 179 | LB DAME S.ÀR.L. |
| 180 | LB FINANCE JAPAN HEAD OFFICE |
| 181 | LB FUNDING BV |
| 182 | LB HONG KONG FUNDING TRUST |
| 183 | LB INDIA HOLDINGS MAURITIUS I LTD |
| 184 | LB INDIA HOLDINGS MAURITIUS II LTD |
| **No.** | **Company Name** |
| 185 | LB INVESTMENT MGMT COMPANY LTD (f/k/a LB INDIA HOLDINGS CAYMAN II LIMITED) |
| 186 | LB INVESTMENTS (UK) LTD |
| 187 | LB LUX RE HOLDINGS S.A.R.L |
| 188 | LB MAURITIUS I LTD. |
| 189 | LB OFFSHORE PARTNERS II LTD. |
| 190 | LB OFFSHORE PARTNERS LTD |
| 191 | LB OFFSHORE RE MEZZANINE ASSOC,LTD. |
| 192 | LB OPPORTUNITY HOLDING INC |
| 193 | LB RE FINANCING NO.1 LIMITED |
| 194 | LB SHELF CI IV |
| 195 | LB VINTNERS (LUXEMBOURG) S.ÀR.L. |
| 196 | LB VINTNERS BRIDGE (LUXEMBOURG) S.ÀR.L. |
| 197 | LB3 GMBH |
| 198 | LBD YK |
| 199 | LBE YK |
| 200 | LBHK FUNDING (CAYMAN) NO. 1 LIMITED |
| 201 | LBHK FUNDING (CAYMAN) NO. 2 LIMITED |
| 202 | LBHK FUNDING (CAYMAN) NO. 4 LIMITED |
| 203 | LBMB ASSOCIATES IV (EUROPE) S.A.R.L |
| 204 | LBMB EUROPE MGMT CORP SARL |
| 205 | LBO FUNDING (CAYMAN) LIMITED |
| 206 | LBQ FUNDING (CAYMAN) LIMITED |
| 207 | LBQ HONG KONG SERVICES LIMITED |
| 208 | LBREP GAITHERSBURG HOLDINGS LLC |
| 209 | LBS HOLDINGS SARL |
| 210 | LBSP HOLDING (IRLAND) PUBLIC LTD |
| 211 | LBSP LIMITED |
| 212 | LCPI DHS  (f/k/a LB SHELF II, INC.) |
| 213 | LEHMAN BROTHERS (CAYMAN ISLANDS) LTD. |
| 214 | LEHMAN BROTHERS (THAILAND) LIMITED PCO-NEWTHB |
| 215 | LEHMAN BROTHERS ASEAN OPPORTUNITY LTD |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 216 | LEHMAN BROTHERS ASIA ISSUANCE CO LTD |
| 217 | LEHMAN BROTHERS AUSTRALIA SECURITIES PTY LIMITED |
| 218 | LEHMAN BROTHERS CAPITAL (THAILAND) LIMITED |
| 219 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN) II, LTD |
| 220 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN), LTD |
| 221 | Lehman Brothers Global Services Ltd. |
| **No.** | **Company Name** |
| 222 | LEHMAN BROTHERS HK OLYMPUS FUNDING TRUST |
| 223 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP |
| 224 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP2 |
| 225 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP3 |
| 226 | LEHMAN BROTHERS HOLDINGS, INC. UK BRANCH |
| 227 | LEHMAN BROTHERS HY OPPORTUNITIES KOREA INC. |
| 228 | Lehman Brothers Investments Japan Inc. |
| 229 | LEHMAN BROTHERS LATIN AMERICA LIMITED |
| 230 | LEHMAN BROTHERS OFFSHORE COMMUNICATIONS ASSOCIATES LTD. |
| 231 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES II LTD. |
| 232 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES LTD |
| 233 | LEHMAN BROTHERS OPPORTUNITY LTD. |
| 234 | LEHMAN BROTHERS PACIFIC SERVICES |
| 235 | LEHMAN BROTHERS SOUTH EAST ASIA INVESTMENTS PTE LIMITED |
| 236 | LEHMAN BROTHERS UK INVESTMENTS LTD |
| 237 | LEHMAN RISK SERVICES (BERMUDA) LTD. |
| 238 | LEHMAN SCOTTISH FINANCE LP |
| 239 | LEHMAN VIP INVESTMENT LDC |
| 240 | LUXEMBOURG FINANCE S.A.R.L. |
| 241 | LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE SARL |
| 242 | M&L DEBT INVESTMENTS HOLDINGS PTY |
| 243 | M&L DEBT INVESTMENTS PTY LIMITED |
| 244 | MAEWHA K-STARS LTD |
| 245 | MARLIN INTERNATIONAL Y.K. |
| 246 | MEISHO ESTATE Y.K |
| 247 | MICT LIMITED |
| 248 | NOVACORP REALTY/GP INC. |
| 249 | OPAL FINANCE HOLDINGS IRELAND LIMITED |
| 250 | PHUKET HOTEL 3 HOLDING COMPANY LIMITED |
| 251 | REVIVAL HOLDINGS LIMITED |
| 252 | SATURN INVESTMENT INC |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 253 | SERAFINO INVESTMENTS PTY LTD |
| 254 | SOGKI DEVELOPMENT INC. |
| 255 | SOGKI INC. |
| 256 | SOGKI MANAGEMENT INC |
| 257 | SOGTI INC. |
| 258 | SOR INVESTOR I INC |
| **No.** | **Company Name** |
| 259 | SOR INVESTORS IV INC |
| 260 | SOUTHWESTERN FIRST CAPITAL LLC |
| 261 | TAHOE Y.K. |
| 262 | TCP CAP VI GP (EUROPE) L.P. INC. |
| 263 | TMIC LIMITED |
| 264 | VINTNERS BIDCO S.C.A. |
| 265 | VINTNERS S.ÀR.L. |
| 266 | Y.K. SAPPHIRE INVESTMENT I |
| 267 | YELLOWTAIL INTERNATIONAL Y.K. |
| 268 | YK DUCKHORN |

## EXHIBIT D

## INSTITUTIONAL INVESTOR REQUEST LETTER



Robert J. Madden
rmadden@gibbsbruns.com
713.751.5266

*Via Email and Federal Express*

March _____, 2017

Franklin H. Top III
Scott A. Lewis
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603

Michael S. Kraut
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, New York 10178

*Counsel for U.S. Bank National Association,
solely in its capacity as Indenture Trustee for
Certain Mortgage-Backed Securities Trusts*

M. William Munno
Daniel E. Guzmán
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004

*Counsel for Law Debenture Trust Company of
New York, solely in its capacity as Separate
Trustee for Certain Mortgage-Backed
Securities Trusts*

John C. Weitnauer
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

*Counsel for Wilmington Trust Company and
Wilmington Trust, National Association, each
solely in its capacity as Trustee for Certain
Mortgage-Backed Securities Trusts*

Dennis Drebsky
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022

*Counsel for Deutsche Bank National Trust
Company, solely in its capacity as Trustee for
Certain Mortgage-Backed Securities Trusts*

Re:    Binding Settlement Offer from Lehman to Trustees of RMBS Trusts

Dear Counsel:

<u>**EXECUTION VERSION**</u>

This firm represents 14 large institutional investors who collectively are holders, and/or authorized investment managers for holders, of approximately $6 billion of the unpaid principal balance of securities ("UPB") issued by the RMBS Trusts listed on Exhibit "A" to the attached RMBS Trust Settlement Agreement (the "Trusts"). Our clients' holdings include 25% or more of the UPB of 69 of the Trusts, which Trusts account for approximately 35% of the total UPB across all of the Trusts.

Our clients have engaged in extensive, mediated negotiations with representatives of the LBHI estate in an effort to reach a proposed settlement, that our clients would be willing to recommend, of the claims set forth in the Proofs of Claim filed by your clients on behalf of the Trusts.

We understand the LBHI debtors have advised you of the terms of a binding offer they have agreed to make to the Trustees to settle these claims. A copy of that binding offer is enclosed with this correspondence for your review.

Our clients have advocated settlement in this matter for some time, in no small part because of the significant expense that has been imposed on the Trusts by virtue of the Court-ordered Protocol. Though those earlier efforts did not lead to a settlement the Trustees were able to accept, this offer is one the Trustees certainly should accept. It <u>virtually ensures</u> the Trusts claims will be allowed in an amount no less than $2.416 billion, because Lehman has agreed to seek estimation at that amount. In addition, while setting a functional floor on the recovery, the offer establishes no ceiling; instead, the Trustees are free to put on whatever proof they wish, to advocate for an increased estimation if they possess evidence they believe warrants it. And, finally, by making the estimation final as to both the Trusts and Lehman, it ends both the hemorrhage of dollars caused by the protocol and eliminates the risk--through elimination of any appeals--that this hemorrhage of funds will resume. In short, there is no reasonable basis on which the Trustees could or should refuse this guarantee of a certain recovery of more than a $1 billion in cash, with the opportunity to obtain more.

Accordingly, on behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf. Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

_____
Robert Madden
On behalf of the Institutional Investors

Cc:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,

Cascade Investment, L.L.C.,

Federal Home Loan Bank of Atlanta,

Goldman Sachs Asset Management, L.P.,

Invesco Advisers, Inc.,

Kore Advisors, L.P.,

Metropolitan Life Insurance Company,

Pacific Investment Management Company, LLC,

Sealink Designated Activity Company, through its investment manager
       Neuberger Berman Europe Limited

The TCW Group, Inc., on behalf of itself and its subsidiaries

Thrivent Financial for Lutherans,

Voya Investment Management LLC, and

Western Asset Management Company.

**EXECUTION VERSION**

**EXHIBIT E**



**EXECUTION VERSION**

## **EXHIBIT F**

### **TRUSTEE FINDINGS**

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. Certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the Accepting Trustees acted within the bounds of its discretion, reasonably, and in good faith with respect to its evaluation and acceptance of the Trust Settlement Agreement dated as of November 30, 2016 and modified as of March 17, 2017 (the "Settlement Agreement") concerning the applicable Accepting Trust(s).

## <u>EXHIBIT G</u>

**I.    CLAIMS AND DEFENSES TO BE TRIED**

### a.  The Plan Administrator's Position Statement

The RMBS Trustees allege that LBHI: (i) breached certain representations and
warranties regarding the quality and characteristics of certain mortgage loans, or
(ii) provided deficient mortgage loan files to the RMBS Trusts, when they sold
loans into certain residential mortgage-backed securitization trusts.  LBHI will
ask the Bankruptcy Court to estimate the claims related to those mortgage loans
that have not already been disallowed or expunged from the RMBS Trustees'
proofs of claim, in particular those loans that have been placed into the RMBS
Protocol by the RMBS Trustees.  The loan-by-loan analysis conducted by the
Plan Administrator through steps 1 and 2 of the RMBS Protocol and additional
evidence will provide various bases upon which the Court can make a realistic
assessment of the outcome of the RMBS Trustees' claims, without the undue
delay that would likely occur if the Parties were to adjudicate these claims in their
entirety.

### b.  The RMBS Trustees' Position Statement

The following claims will be estimated:  claims arising out of alleged breaches of
representations and warranties made by the LBHI Debtors in applicable Trust
Agreements, Assignment and Assumption Agreements, Indentures, Mortgage
Loan Sale and Assignment Agreements and/or other agreements governing or
related to the Trust and Terminated Trusts (the "<u>Governing Agreements</u>")
concerning Mortgage Loans in the residential mortgage-backed securitizations
identified on <u>Exhibit A</u> (the "<u>Trusts</u>").  The RMBS Trustees allege that the LBHI
Debtors breached one or more of their representations and warranties under the
Governing Agreements with respect to certain loans in the RMBS Trusts in a
manner that materially and adversely affected the value of the loans or
certificateholders' interests in the loans.  The RMBS Trustees intend to
demonstrate that the LBHI Debtors breached their representations and warranties
with respect to over 91,000 loans through evidence derived from the RMBS
Trustees' loan-by-loan review and presented to the LBHI Debtors as required by
the RMBS Protocol; and the absence of any legally or factually supported bases
proffered by the Plan Administrator during the RMBS Protocol for the rejection
of the Trustees' claims.

**II.    NATURE AND LENGTH OF THE HEARING**

The Parties agree that their claims and defenses will be determined at an
estimation hearing that the parties will jointly request the court schedule no earlier

than Monday, October 16, 2017 (the "Hearing").[1]  The Hearing shall be conducted in accordance with the procedures set forth herein.

The Parties agree that the Hearing shall be scheduled for at least 14 hearing days, or a total of 98 hours, on the record.  The LBHI Debtors will be allotted 7 days (or a total of 49 hours) to present their case, including rebuttals, and 7 days (or a total of 49 hours) will be allotted to the RMBS Trustees.  Each Party's allotted time will run during its (i) opening and closing statements and (ii) direct or cross examination of any witness.  Either side is free to use less than its allotted time.  The scheduling of the dates on which the Hearing shall be conducted shall be at the discretion of the Court.

Each side shall be allowed to present opening statements of up to two hours in length and closing statements of up to two hours in length.  Each Party will be able to reserve and reallocate its time for opening and closing statements.

### III.    TIMING AND CONTENT OF EXPERT REPORTS, AND EXPERT DISCOVERY

The Parties agree to pre-Hearing expert discovery pursuant to the following schedule:

| | |
|---|---|
| Parties disclose the identity and subject matter of Experts then expected to provide Affirmative Reports, and Lehman to identify such settlements that it intends to use in its Expert Reports | Wednesday, May 10, 2017 |
| Simultaneous exchange of Affirmative Reports, and the Parties to identify exemplar loans to be used in their case-in-chief | Thursday, June 1, 2017 |
| Simultaneous exchange of Rebuttal Reports, the Parties to identify exemplar loans to be used by their rebuttal experts, and the RMBS Trustees to identify such settlements that they intend to use in their Expert | Friday, July 14, 2017 |

---

[1] Should the date of the Hearing in this section be moved to a later date, the Parties will meet and confer in good faith to negotiate appropriate modifications of the dates set forth in Section III of this agreement.

| Reports | |
|---|---|
| Simultaneous exchange of Reply Reports with any additional exemplar loans.[2] | Monday, August 21, 2017 |
| Completion of Expert Depositions | Thursday, September 21, 2017 |

*Expert Reports*.  Each expert witness must provide a signed written report that contains:

    i.   a complete statement of the opinions the witness is expected to express and the basis for such opinions;

    ii.  the facts or data relied upon by the witness in forming any such opinions and, to the extent the witness' opinions include or rely upon the results of any quantitative calculations or estimates, the underlying data and all formulae, macros and any other information necessary to allow the opposing party to reproduce such quantitative calculations or estimates[3];

    iii. any assumptions that the expert was provided and relied upon in forming the opinions to be expressed;

    iv. any exhibits prepared in connection with the written report;

    v.  the witness's qualifications, including a list of all publications authored in the previous 10 years;

    vi. a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    vii. a statement of the compensation to be paid in connection with the case.

*Information Excluded from Disclosure*.  The Parties shall not be required to disclose and no witness may be examined regarding (i) drafts of any report, calculation, analysis or estimate, regardless of the form in which the draft is recorded; (ii) other notes or writing taken or prepared by or for the testifying expert; or (iii) communications involving any expert witness regardless of the form of the communications, including but not limited to any communication between (x) any expert witness and the Parties' attorneys, (y) any expert witness and the witness's staff, and (z) communications between testifying experts and consulting experts.  Additionally, there shall be no disclosure of materials prepared by or for consulting experts. The Parties further agree that the provision of any materials to an expert witness and/or the witness's staff shall not

---

[2] Any reply shall be limited to addressing materials, opinions or arguments raised in rebuttal reports.

[3] To the extent any such data, calculations or estimates are in the form of or rely upon computer data files, the witness shall produce all such data files, in the electronic format used by the witness, and sufficient documentation or explanation to enable one reasonably skilled in the art to understand and use such data files.

constitute a subject matter waiver of the attorney client privilege or any other privilege or protection.

## IV.    PRE-TRIAL BRIEFS AND SUBMISSIONS

All pending motions concerning the Covered Loans and RMBS Protocol are deemed withdrawn.  Each of the Parties shall submit a single pre-trial brief addressing reasonably anticipated disputes concerning substantive law no less than 15 days prior to the Hearing.  Each of the pre-trial briefs shall be no longer than 50 pages in length.  The pre-trial brief shall be the only pre-hearing brief or submission submitted by the Parties with respect to disputes concerning substantive law.  For the avoidance of doubt, nothing in this agreement shall prejudice the right of any Party to make, in connection with the Hearing, arguments or challenges based on the sufficiency, completeness or timeliness of materials, loan files, or documentation submitted by any Party under the Protocol or arguments or challenges based on compliance with the requirements of the Protocol by any Party, including but not limited to any arguments made by any Party in connection with *Lehman's Second Objection to Certain RMBS Trust Claims and Motion to Disallow and Expunge Certain RMBS Trust Claims for Insufficient Documentation* [Doc. No. 53620].

## V.    WITNESSES

No less than 75 days prior to the Hearing, the Parties shall submit a preliminary list of the witnesses that they may present at the Hearing.  Each Party shall make a good-faith effort to include on its preliminary witness list all of the individuals (and only those individuals) that the Party believes it will present at the Hearing.  No less than 45 days prior to the Hearing the Parties shall submit final witness lists of those individuals they expect to call at the Hearing.

Direct testimony of witnesses may be presented by written declaration, which shall be provided by Lehman no less than 30 days before the hearing, and shall be provided by the RMBS Trustees no less than 15 days prior to the Hearing.  Notwithstanding the foregoing, the Parties shall each be permitted to present direct testimony of any witness at the Hearing.  Depositions of fact witnesses, if any, shall be completed at least 15 days prior to the Hearing.  In addition to hearing witnesses, the Parties shall also each be entitled to take the deposition of up to three fact witnesses. Such depositions shall be completed no later than 15 days before the hearing date.

For the removal of doubt, both the Trustees and Lehman shall be permitted to depose any witness identified by the other side as a Hearing witness.  Should either side wish to add a witness based on developments during the Hearing, that Party shall provide sufficient advance notice such that the other Party will have the opportunity to depose that witness before he/she testifies at the Hearing.  Each Party reserves all objections to the designation of any person as a witness or deponent.

## VI.    EXHIBITS

On the dates set forth in Section III, the Parties shall identify for one another, by Loan Number, any specific loans that they intend to introduce as exemplar loans in their cases-in-chief at the Hearing.  The Parties reserve the right to request that they be allowed to introduce additional exemplar loans, however, the other Party shall have the right to move to exclude such exemplar loans.

No less than 30 days prior to the Hearing, the Parties shall exchange lists of exhibits (not including demonstratives or exemplar loans, which is addressed above) that they expect to be offered in their cases-in-chief.  The parties will cooperate in good faith to create a Bates Numbered set of all documents that will be offered as trial exhibits.  The Parties may supplement their exhibit lists before and during the Hearing if, in good faith, it is necessary to do so.

If a Party objects to the other Party's proposed use of any testimony or exhibits, that Party shall provide prompt notice to the other Party no later than 10 days prior to the Hearing, or in the case of later added exhibits, promptly after the exhibits are identified, and the Parties shall promptly attempt to resolve the objection.

## VII.    EVIDENCE

The Parties may offer into evidence before the Court, at the Hearing, without objection by any Party:

(i)    the RMBS Trust Settlement Agreements entered into by and between the LBHI Debtors and the Institutional Investors on October 26, 2015 and November 29, 2016;

(ii)    materials concerning other settlement agreements in disputes involving residential mortgage-backed securities.  Each Party will identify within 15 days of the execution by LBHI and the Institutional Investors of the Settlement Agreement to which this Exhibit G is appended, a preliminary list of those settlements that it wishes to admit into evidence;

(iii)    ████████████ REDACTED ████████████;

(iv)    the RMBS Claim Files, as defined in the Protocol Order;

(v)    the loan origination and servicing files for each of the loans as to which the RMBS Trustees assert a claim;

(vi)    the RMBS Claim, as defined in the Protocol, for each such claim;

(vii)    the Claim Tracking Spreadsheet, as defined in the Protocol;

(viii)    the Approved Claims Report, as defined in the Protocol;

(ix)    the Rejected Claims Report, as defined in the Protocol;

(x)    any disputed Approved Claims, as referenced in the Protocol;

(xi)    Rejected Claim File rebuttals, as referenced in the Protocol;

(xii)    the Plan Administrator's Statement, as defined in the Protocol;

(xiii)    any other materials exchanged between the Parties (including but not limited to the Nationstar and Intex datatapes in support of the Purchase Price) during the Protocol;

(xiv)    the Governing Agreements related to the Trusts; and

(xv)    the holdings of the Institutional Investors, which shall be updated and certified by the Institutional Investors as of the first day of the Estimation Hearing.

For the avoidance of doubt, items (iv)-(xiii) above are intended to refer to materials exchanged during the Protocol and the agreement herein extends only to materials that were, in fact, so exchanged by the Parties.

With respect to the foregoing categories or documents, while the Parties agree that such documents will be admitted into evidence, they reserve all rights to present arguments as to reliability, competency, weight, relevance, timeliness or any other arguments concerning the Court's consideration of such evidence. In addition, the Parties reserve all rights to seek to introduce additional evidence at the Hearing.

EXECUTION VERSION

## EXHIBIT H

## ALLOCATION PERCENTAGES

| Trustee | Trust Name / Loan Group | Initial Allocated Percentage |
|---|---|---|
| Deutsche Bank | SAIL 2004-1 / 1 | 0.004308% |
| Deutsche Bank | SAIL 2004-1 / 2 | 0.001292% |
| Law Debenture | ARC 2002-BC10 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC10 / 2 | 0.001084% |
| Law Debenture | ARC 2002-BC10 / 3 | 0.001060% |
| Law Debenture | ARC 2002-BC8 / 1 | 0.008188% |
| Law Debenture | ARC 2002-BC8 / 2 | 0.000561% |
| Law Debenture | ARC 2002-BC9 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC9 / 2 | 0.000169% |
| Law Debenture | BNC 2007-4 / 1 | 0.598969% |
| Law Debenture | BNC 2007-4 / 2 | 0.319296% |
| Law Debenture | LABS 2007-1 / 1 | 0.213542% |
| Law Debenture | LABS 2007-1 / 2 | 0.665016% |
| Law Debenture | LMT 2006-9 / 1 | 0.007225% |
| Law Debenture | LMT 2006-9 / 2 | 0.142322% |
| Law Debenture | LMT 2006-9 / 3 | 0.059861% |
| Law Debenture | LMT 2007-1 / 1 | 0.104230% |
| Law Debenture | LMT 2007-1 / 2 | 0.015085% |
| Law Debenture | LMT 2007-1 / 3 | 0.051720% |
| Law Debenture | LMT 2007-4 / 1 | 0.081740% |
| Law Debenture | LMT 2007-4 / 2 | 0.179616% |
| Law Debenture | LMT 2007-4 / 3 | 0.030551% |
| Law Debenture | LMT 2007-4 / 4 | 0.030503% |
| Law Debenture | LMT 2007-4 / 5 | 0.007382% |
| Law Debenture | LMT 2007-5 / 1 | 0.068732% |
| Law Debenture | LMT 2007-5 / 2 | 0.000000% |
| Law Debenture | LMT 2007-5 / 3 | 0.207011% |
| Law Debenture | LMT 2007-5 / 4 | 0.082310% |
| Law Debenture | LMT 2007-9 / 1 | 0.082662% |
| Law Debenture | LMT 2007-9 / 2 | 0.000000% |
| Law Debenture | LMT 2008-2 / 1 | 0.139862% |

| Law Debenture | LMT 2008-6 / 1 | 0.034315% |
| Law Debenture | LMT 2008-6 / 2 | 0.015777% |
| Law Debenture | SAIL 2003-BC12 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC12 / 2 | 0.001352% |
| Law Debenture | SAIL 2003-BC12 / 3 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 2 | 0.002550% |
| Law Debenture | SAIL 2003-BC4 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC4 / 2 | 0.002132% |
| Law Debenture | SARM 2004-10 / 1 | 0.049816% |
| Law Debenture | SARM 2004-10 / 2 | 0.041340% |
| Law Debenture | SARM 2004-10 / 3 | 0.069912% |
| Law Debenture | SARM 2004-10 / 4 | 0.005914% |
| Law Debenture | SARM 2004-16 / 1 | 0.081050% |
| Law Debenture | SARM 2004-16 / 2 | 0.025806% |
| Law Debenture | SARM 2004-16 / 3 | 0.071327% |
| Law Debenture | SARM 2004-16 / 4 | 0.006938% |
| Law Debenture | SARM 2004-16 / 5 | 0.006614% |
| Law Debenture | SARM 2004-16 / 6 | 0.024738% |
| Law Debenture | SARM 2004-18 / 1 | 0.076254% |
| Law Debenture | SARM 2004-18 / 2 | 0.033334% |
| Law Debenture | SARM 2004-18 / 3 | 0.068914% |
| Law Debenture | SARM 2004-18 / 4 | 0.011927% |
| Law Debenture | SARM 2004-18 / 5 | 0.000184% |
| Law Debenture | SARM 2004-20 / 1 | 0.092546% |
| Law Debenture | SARM 2004-20 / 2 | 0.046727% |
| Law Debenture | SARM 2004-20 / 3 | 0.020287% |
| Law Debenture | SARM 2004-20 / 4 | 0.002601% |
| Law Debenture | SARM 2004-20 / 5 | 0.001475% |
| Law Debenture | SARM 2004-5 / 1 | 0.004269% |
| Law Debenture | SARM 2004-5 / 2 | 0.017610% |
| Law Debenture | SARM 2004-5 / 3 | 0.035427% |
| Law Debenture | SARM 2004-5 / 4 | 0.002673% |
| Law Debenture | SARM 2004-5 / 5 | 0.001785% |
| Law Debenture | SARM 2004-9XS / 1 | 0.010376% |
| Law Debenture | SARM 2005-11 / 1 | 0.046958% |
| Law Debenture | SARM 2005-11 / 2 | 0.020525% |
| Law Debenture | SARM 2005-11 / 3 | 0.029317% |
| Law Debenture | SARM 2005-11 / 4 | 0.002855% |

| | | |
|---|---|---|
| Law Debenture | SARM 2005-11 / 5 | 0.002325% |
| Law Debenture | SARM 2005-12 / 1 | 0.065902% |
| Law Debenture | SARM 2005-12 / 2 | 0.029879% |
| Law Debenture | SARM 2005-12 / 3 | 0.041953% |
| Law Debenture | SARM 2005-12 / 4 | 0.024114% |
| Law Debenture | SARM 2005-12 / 5 | 0.012730% |
| Law Debenture | SARM 2005-12 / 6 | 0.000000% |
| Law Debenture | SARM 2005-15 / 1 | 0.058291% |
| Law Debenture | SARM 2005-15 / 2 | 0.005084% |
| Law Debenture | SARM 2005-15 / 3 | 0.009176% |
| Law Debenture | SARM 2005-15 / 4 | 0.000000% |
| Law Debenture | SARM 2005-15 / 5 | 0.000000% |
| Law Debenture | SARM 2005-17 / 1 | 0.010736% |
| Law Debenture | SARM 2005-17 / 2 | 0.030931% |
| Law Debenture | SARM 2005-17 / 3 | 0.141143% |
| Law Debenture | SARM 2005-17 / 4 | 0.000000% |
| Law Debenture | SARM 2005-17 / 5 | 0.040697% |
| Law Debenture | SARM 2005-17 / 6 | 0.000000% |
| Law Debenture | SARM 2005-20 / 1 | 0.006759% |
| Law Debenture | SARM 2005-20 / 2 | 0.158112% |
| Law Debenture | SARM 2005-20 / 3 | 0.021248% |
| Law Debenture | SARM 2005-20 / 4 | 0.057642% |
| Law Debenture | SARM 2007-1 / 1 | 0.488971% |
| Law Debenture | SARM 2007-1 / 2 | 0.039373% |
| Law Debenture | SARM 2007-11 / 1 | 0.400153% |
| Law Debenture | SARM 2007-11 / 2 | 0.124982% |
| Law Debenture | SARM 2007-11 / 3 | 0.155263% |
| Law Debenture | SARM 2007-2 / 1 | 0.568272% |
| Law Debenture | SARM 2007-2 / 2 | 0.048575% |
| Law Debenture | SARM 2007-3 / 1 | 0.538650% |
| Law Debenture | SARM 2007-3 / 2 | 0.004111% |
| Law Debenture | SARM 2007-3 / 3 | 0.013387% |
| Law Debenture | SARM 2007-3 / 4 | 0.000000% |
| Law Debenture | SARM 2007-4 / 1 | 0.837854% |
| Law Debenture | SARM 2007-6 / 1 | 0.254836% |
| Law Debenture | SARM 2007-6 / 2 | 0.477651% |
| Law Debenture | SARM 2007-6 / 3 | 0.227329% |
| Law Debenture | SASCO 2003-15A / 1 | 0.002203% |
| Law Debenture | SASCO 2003-15A / 2 | 0.004188% |

| | | |
|---|---|---|
| Law Debenture | SASCO 2003-15A / 3 | 0.000917% |
| Law Debenture | SASCO 2003-15A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 1 | 0.011847% |
| Law Debenture | SASCO 2003-17A / 2 | 0.010668% |
| Law Debenture | SASCO 2003-17A / 3 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 4 | 0.000598% |
| Law Debenture | SASCO 2003-26A / 1 | 0.001135% |
| Law Debenture | SASCO 2003-26A / 2 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 3 | 0.037971% |
| Law Debenture | SASCO 2003-26A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 5 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 6 | 0.001571% |
| Law Debenture | SASCO 2003-26A / 7 | 0.000365% |
| Law Debenture | SASCO 2003-34A / 1 | 0.004542% |
| Law Debenture | SASCO 2003-34A / 2 | 0.003370% |
| Law Debenture | SASCO 2003-34A / 3 | 0.010398% |
| Law Debenture | SASCO 2003-34A / 4 | 0.000633% |
| Law Debenture | SASCO 2003-34A / 5 | 0.029231% |
| Law Debenture | SASCO 2003-34A / 6 | 0.005114% |
| Law Debenture | SASCO 2003-6A / 1 | 0.000347% |
| Law Debenture | SASCO 2003-6A / 2 | 0.001655% |
| Law Debenture | SASCO 2003-6A / 3 | 0.002655% |
| Law Debenture | SASCO 2003-6A / 4 | 0.001979% |
| Law Debenture | SASCO 2003-S2 / 1 | 0.004955% |
| Law Debenture | SASCO 2005-S6 / 1 | 0.579689% |
| Law Debenture | SASCO 2005-S7 / 1 | 0.365128% |
| Law Debenture | SASCO 2005-S7 / 2 | 0.455817% |
| Law Debenture | SASCO 2007-BC1 / 1 | 1.057679% |
| Law Debenture | SASCO 2007-BC1 / 2 | 0.982354% |
| Law Debenture | SASCO 2007-MLN1 / 1 | 0.944060% |
| Law Debenture | SASCO 2007-MLN1 / 2 | 1.324885% |
| Law Debenture | SASCO 2007-OSI / 1 | 1.052390% |
| Law Debenture | SASCO 2007-OSI / 2 | 1.196287% |
| US Bank | ARC 2004-1 / 1 | 0.000000% |
| US Bank | ARC 2004-1 / 2 | 0.000000% |
| US Bank | BNC 2006-1 / 1 | 0.634371% |
| US Bank | BNC 2006-1 / 2 | 0.595645% |
| US Bank | BNC 2006-2 / 1 | 0.203133% |
| US Bank | BNC 2006-2 / 2 | 0.735519% |

| US Bank | BNC 2007-1 / 1 | 0.987162% |
|---------|----------------|-----------|
| US Bank | BNC 2007-1 / 2 | 0.886811% |
| US Bank | BNC 2007-2 / 1 | 1.137371% |
| US Bank | BNC 2007-2 / 2 | 1.028894% |
| US Bank | LABS 2004-1 / 1 | 0.007673% |
| US Bank | LABS 2004-1 / 2 | 0.008799% |
| US Bank | LMT 2005-1 / 1 | 0.047402% |
| US Bank | LMT 2005-1 / 2 | 0.067437% |
| US Bank | LMT 2005-1 / 3 | 0.029578% |
| US Bank | LMT 2005-1 / 4 | 0.018448% |
| US Bank | LMT 2005-1 / 5 | 0.045656% |
| US Bank | LMT 2005-1 / 6 | 0.003233% |
| US Bank | LMT 2005-2 / 1 | 0.110091% |
| US Bank | LMT 2005-2 / 2 | 0.086622% |
| US Bank | LMT 2005-2 / 3 | 0.078927% |
| US Bank | LMT 2005-2 / 4 | 0.026577% |
| US Bank | LMT 2005-2 / 5 | 0.074712% |
| US Bank | LMT 2005-3 / 1 | 0.075870% |
| US Bank | LMT 2005-3 / 2 | 0.060637% |
| US Bank | LMT 2005-3 / 3 | 0.035600% |
| US Bank | LMT 2005-3 / 4 | 0.021575% |
| US Bank | LMT 2006-2 / 1 | 0.005721% |
| US Bank | LMT 2006-2 / 2 | 0.011030% |
| US Bank | LMT 2006-2 / 3 | 0.004150% |
| US Bank | LMT 2006-2 / 4 | 0.002940% |
| US Bank | LMT 2006-8 / 1 | 0.321303% |
| US Bank | LMT 2007-10 / 1 | 0.080406% |
| US Bank | LMT 2007-10 / 2 | 0.493666% |
| US Bank | LMT 2007-10 / 3 | 0.001068% |
| US Bank | LMT 2007-2 / 1 | 0.018559% |
| US Bank | LMT 2007-2 / 2 | 0.032447% |
| US Bank | LMT 2007-2 / 3 | 0.121884% |
| US Bank | LMT 2007-3 / 1 | 0.028116% |
| US Bank | LMT 2007-6 / 1 | 0.020340% |
| US Bank | LMT 2007-6 / 2 | 0.159604% |
| US Bank | LMT 2007-7 / 1 | 0.037798% |
| US Bank | LMT 2007-7 / 2 | 0.000697% |
| US Bank | LMT 2007-7 / 3 | 0.226436% |
| US Bank | LMT 2007-8 / 1 | 0.151236% |

| US Bank | LMT 2007-8 / 2 | 0.039659% |
|---------|----------------|-----------|
| US Bank | LMT 2007-8 / 3 | 0.350808% |
| US Bank | LXS 2005-2 / 1 | 0.407721% |
| US Bank | LXS 2005-2 / 2 | 0.067132% |
| US Bank | LXS 2005-4 / 1 | 0.242492% |
| US Bank | LXS 2005-4 / 2 | 0.189077% |
| US Bank | LXS 2006-10N / 1 | 0.177095% |
| US Bank | LXS 2006-10N / 2 | 0.000000% |
| US Bank | LXS 2006-10N / 3 | 0.000000% |
| US Bank | LXS 2006-11 / 1 | 0.546454% |
| US Bank | LXS 2006-11 / 2 | 0.025908% |
| US Bank | LXS 2006-12N / 1 | 0.068131% |
| US Bank | LXS 2006-12N / 2 | 0.000000% |
| US Bank | LXS 2006-12N / 3 | 0.000000% |
| US Bank | LXS 2006-15 / 1 | 1.087065% |
| US Bank | LXS 2006-19 / 1 | 1.315674% |
| US Bank | LXS 2006-20 / 1 | 1.191402% |
| US Bank | LXS 2006-3 / 1 | 0.655467% |
| US Bank | LXS 2006-8 / 1 | 0.396812% |
| US Bank | LXS 2006-8 / 2 | 0.315565% |
| US Bank | LXS 2006-8 / 3 | 0.350715% |
| US Bank | LXS 2007-1 / 1 | 1.089568% |
| US Bank | LXS 2007-1 / 2 | 0.244584% |
| US Bank | LXS 2007-1 / 3 | 0.000000% |
| US Bank | LXS 2007-10H / 1 | 1.763647% |
| US Bank | LXS 2007-10H / 2 | 0.386591% |
| US Bank | LXS 2007-12N / 1 | 0.000000% |
| US Bank | LXS 2007-12N / 2 | 0.846426% |
| US Bank | LXS 2007-12N / 3 | 0.000000% |
| US Bank | LXS 2007-14H / 1 | 2.649003% |
| US Bank | LXS 2007-15N / 1 | 0.116525% |
| US Bank | LXS 2007-15N / 2 | 0.375078% |
| US Bank | LXS 2007-15N / 3 | 0.000000% |
| US Bank | LXS 2007-15N / 4 | 0.000000% |
| US Bank | LXS 2007-15N / 6 | 0.000000% |
| US Bank | LXS 2007-15N / 1C | 0.156605% |
| US Bank | LXS 2007-16N / 1 | 0.139360% |
| US Bank | LXS 2007-16N / 2 | 0.725591% |
| US Bank | LXS 2007-16N / 3 | 0.094417% |

| US Bank | LXS 2007-16N / 4 | 0.000000% |
|---------|------------------|-----------|
| US Bank | LXS 2007-17H / 1 | 1.713333% |
| US Bank | LXS 2007-18N / 1 | 0.622723% |
| US Bank | LXS 2007-18N / 2 | 0.549264% |
| US Bank | LXS 2007-20N / 1 | 0.868777% |
| US Bank | LXS 2007-3 / 2 | 0.933371% |
| US Bank | LXS 2007-3 / 1A | 0.144193% |
| US Bank | LXS 2007-3 / 1B | 0.620399% |
| US Bank | LXS 2007-3 / 3A | 0.199179% |
| US Bank | LXS 2007-3 / 3B | 0.256320% |
| US Bank | LXS 2007-3 / 4A | 0.000000% |
| US Bank | LXS 2007-3 / 4B | 0.084520% |
| US Bank | LXS 2007-5H / 1 | 0.351476% |
| US Bank | LXS 2007-5H / 2 | 0.408046% |
| US Bank | LXS 2007-5H / 3 | 0.941454% |
| US Bank | LXS 2007-6 / 1 | 1.656792% |
| US Bank | LXS 2007-6 / 2 | 0.720225% |
| US Bank | LXS 2007-6 / 3 | 1.128605% |
| US Bank | LXS 2007-7N / 1 | 0.298622% |
| US Bank | LXS 2007-7N / 2 | 0.149496% |
| US Bank | LXS 2007-7N / 3 | 0.000000% |
| US Bank | LXS 2007-8H / 1 | 3.215265% |
| US Bank | LXS 2007-9 / 1 | 0.705272% |
| US Bank | LXS 2007-9 / 2 | 0.000000% |
| US Bank | RLT 2008-AH1 / 1 | 0.038943% |
| US Bank | SAIL 2003-BC1 / 1 | 0.001775% |
| US Bank | SAIL 2003-BC1 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 2 | 0.001061% |
| US Bank | SAIL 2003-BC10 / 3 | 0.000316% |
| US Bank | SAIL 2003-BC11 / 1 | 0.000923% |
| US Bank | SAIL 2003-BC11 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 2 | 0.001758% |
| US Bank | SAIL 2003-BC13 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 2 | 0.000308% |
| US Bank | SAIL 2003-BC2 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC5 / 1 | 0.008841% |

| US Bank | SAIL 2003-BC5 / 2 | 0.000000% |
|---------|-------------------|-----------|
| US Bank | SAIL 2003-BC8 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 3a | 0.002498% |
| US Bank | SAIL 2003-BC8 / 3b | 0.001917% |
| US Bank | SAIL 2003-BC9 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 3 | 0.003657% |
| US Bank | SAIL 2004-10 / 1 | 0.000000% |
| US Bank | SAIL 2004-10 / 2 | 0.020774% |
| US Bank | SAIL 2004-10 / 3 | 0.009093% |
| US Bank | SAIL 2004-10 / 4 | 0.019061% |
| US Bank | SAIL 2004-2 / 1 | 0.000000% |
| US Bank | SAIL 2004-2 / 2 | 0.004715% |
| US Bank | SAIL 2004-2 / 3 | 0.000000% |
| US Bank | SAIL 2004-3 / 1 | 0.002379% |
| US Bank | SAIL 2004-3 / 2 | 0.017431% |
| US Bank | SAIL 2004-4 / 1 | 0.000000% |
| US Bank | SAIL 2004-4 / 2 | 0.000000% |
| US Bank | SAIL 2004-4 / 3 | 0.000000% |
| US Bank | SAIL 2004-5 / 1 | 0.000651% |
| US Bank | SAIL 2004-5 / 2 | 0.000929% |
| US Bank | SAIL 2004-6 / 1 | 0.002381% |
| US Bank | SAIL 2004-6 / 2 | 0.001584% |
| US Bank | SAIL 2004-8 / 1 | 0.000000% |
| US Bank | SAIL 2004-8 / 2 | 0.002003% |
| US Bank | SAIL 2004-8 / 3 | 0.000000% |
| US Bank | SAIL 2004-8 / 4 | 0.003276% |
| US Bank | SAIL 2004-8 / 5 | 0.011847% |
| US Bank | SAIL 2004-9 / 1 | 0.000745% |
| US Bank | SAIL 2004-9 / 2 | 0.004372% |
| US Bank | SAIL 2004-9 / 3 | 0.001530% |
| US Bank | SAIL 2005-1 / 1 | 0.000000% |
| US Bank | SAIL 2005-1 / 2 | 0.018902% |
| US Bank | SAIL 2005-1 / 3 | 0.020621% |
| US Bank | SAIL 2005-10 / 1 | 0.000018% |
| US Bank | SAIL 2005-10 / 2 | 0.000000% |
| US Bank | SAIL 2005-10 / 3 | 0.018075% |
| US Bank | SAIL 2005-11 / 1 | 0.002021% |

**EXECUTION VERSION**

| US Bank | SAIL 2005-11 / 2 | 0.000000% |
|---------|------------------|-----------|
| US Bank | SAIL 2005-11 / 3 | 0.025150% |
| US Bank | SAIL 2005-2 / 1 | 0.013629% |
| US Bank | SAIL 2005-2 / 2 | 0.004903% |
| US Bank | SAIL 2005-3 / 1 | 0.000000% |
| US Bank | SAIL 2005-3 / 2 | 0.010890% |
| US Bank | SAIL 2005-3 / 3 | 0.004563% |
| US Bank | SAIL 2005-3 / 4 | 0.000000% |
| US Bank | SAIL 2005-4 / 1 | 0.062889% |
| US Bank | SAIL 2005-4 / 2 | 0.052243% |
| US Bank | SAIL 2005-5 / 1 | 0.000000% |
| US Bank | SAIL 2005-5 / 2 | 0.044159% |
| US Bank | SAIL 2005-5 / 3 | 0.030846% |
| US Bank | SAIL 2005-5 / 4 | 0.027217% |
| US Bank | SAIL 2005-6 / 1 | 0.000000% |
| US Bank | SAIL 2005-6 / 2 | 0.012233% |
| US Bank | SAIL 2005-6 / 3 | 0.023835% |
| US Bank | SAIL 2005-6 / 4 | 0.048166% |
| US Bank | SAIL 2005-7 / 1 | 0.027160% |
| US Bank | SAIL 2005-7 / 2 | 0.037440% |
| US Bank | SAIL 2005-8 / 1 | 0.031559% |
| US Bank | SAIL 2005-8 / 2 | 0.055215% |
| US Bank | SAIL 2005-9 / 1 | 0.000000% |
| US Bank | SAIL 2005-9 / 2 | 0.000000% |
| US Bank | SAIL 2005-9 / 3 | 0.037779% |
| US Bank | SAIL 2005-HE3 / 1 | 0.031341% |
| US Bank | SAIL 2005-HE3 / 2 | 0.031600% |
| US Bank | SAIL 2006-1 / 1 | 0.020272% |
| US Bank | SAIL 2006-2 / 1 | 0.043225% |
| US Bank | SAIL 2006-4 / 1 | 0.000000% |
| US Bank | SAIL 2006-4 / 2 | 0.009465% |
| US Bank | SAIL 2006-4 / 3 | 0.016682% |
| US Bank | SAIL 2006-BNC3 / 1 | 1.853131% |
| US Bank | SAIL 2006-BNC3 / 2 | 1.984505% |
| US Bank | SARM 2005-22 / 1 | 0.224487% |
| US Bank | SARM 2005-22 / 2 | 0.088204% |
| US Bank | SARM 2005-22 / 3 | 0.000000% |
| US Bank | SARM 2005-22 / 4 | 0.000000% |
| US Bank | SARM 2005-22 / 5 | 0.153723% |

| US Bank | SARM 2005-23 / 1 | 0.152283% |
|---------|------------------|-----------|
| US Bank | SARM 2005-23 / 2 | 0.127682% |
| US Bank | SARM 2005-23 / 3 | 0.147378% |
| US Bank | SARM 2005-23 / 4 | 0.000000% |
| US Bank | SARM 2005-6XS / 1 | 0.158228% |
| US Bank | SARM 2005-8XS / 1 | 0.167643% |
| US Bank | SARM 2006-1 / 1 | 0.090431% |
| US Bank | SARM 2006-1 / 2 | 0.043361% |
| US Bank | SARM 2006-1 / 3 | 0.000000% |
| US Bank | SARM 2006-1 / 4 | 0.189958% |
| US Bank | SARM 2006-1 / 5 | 0.032162% |
| US Bank | SARM 2006-1 / 6 | 0.110819% |
| US Bank | SARM 2006-1 / 7 | 0.000000% |
| US Bank | SARM 2006-1 / 8 | 0.101616% |
| US Bank | SARM 2006-10 / 1 | 0.000000% |
| US Bank | SARM 2006-10 / 2 | 0.051032% |
| US Bank | SARM 2006-10 / 3 | 0.054674% |
| US Bank | SARM 2006-11 / 1 | 0.285091% |
| US Bank | SARM 2006-11 / 2 | 0.052407% |
| US Bank | SARM 2006-11 / 3 | 0.034068% |
| US Bank | SARM 2006-12 / 1 | 0.415504% |
| US Bank | SARM 2006-12 / 2 | 0.047158% |
| US Bank | SARM 2006-2 / 1 | 0.088211% |
| US Bank | SARM 2006-2 / 2 | 0.116346% |
| US Bank | SARM 2006-2 / 3 | 0.090787% |
| US Bank | SARM 2006-2 / 4 | 0.284508% |
| US Bank | SARM 2006-2 / 5 | 0.098247% |
| US Bank | SARM 2006-3 / 1 | 0.108397% |
| US Bank | SARM 2006-3 / 2 | 0.059825% |
| US Bank | SARM 2006-3 / 3 | 0.110221% |
| US Bank | SARM 2006-3 / 4 | 0.119412% |
| US Bank | SARM 2006-4 / 1 | 0.153813% |
| US Bank | SARM 2006-4 / 2 | 0.072317% |
| US Bank | SARM 2006-4 / 3 | 0.093587% |
| US Bank | SARM 2006-4 / 4 | 0.023258% |
| US Bank | SARM 2006-4 / 5 | 0.246539% |
| US Bank | SARM 2006-4 / 6 | 0.133100% |
| US Bank | SARM 2006-4 / 7 | 0.000000% |
| US Bank | SARM 2006-5 / 1 | 0.061507% |

| US Bank | SARM 2006-5 / 2 | 0.135872% |
|---|---|---|
| US Bank | SARM 2006-5 / 3 | 0.190280% |
| US Bank | SARM 2006-5 / 4 | 0.052103% |
| US Bank | SARM 2006-5 / 5 | 0.094904% |
| US Bank | SARM 2006-6 / 1 | 0.133156% |
| US Bank | SARM 2006-6 / 2 | 0.188455% |
| US Bank | SARM 2006-6 / 3 | 0.098324% |
| US Bank | SARM 2006-7 / 1 | 0.021553% |
| US Bank | SARM 2006-7 / 2 | 0.075574% |
| US Bank | SARM 2006-7 / 3 | 0.147236% |
| US Bank | SARM 2006-7 / 4 | 0.064788% |
| US Bank | SARM 2006-8 / 1 | 0.000000% |
| US Bank | SARM 2006-8 / 2 | 0.140340% |
| US Bank | SARM 2006-8 / 3 | 0.000000% |
| US Bank | SARM 2006-8 / 4 | 0.000000% |
| US Bank | SARM 2006-9 / 1 | 0.121490% |
| US Bank | SARM 2006-9 / 2 | 0.012400% |
| US Bank | SARM 2006-9 / 3 | 0.050361% |
| US Bank | SARM 2006-9 / 4 | 0.000000% |
| US Bank | SARM 2007-10 / 1 | 0.418956% |
| US Bank | SARM 2007-10 / 2 | 0.352233% |
| US Bank | SARM 2007-8 / 1 | 0.524086% |
| US Bank | SARM 2007-8 / 2 | 0.233335% |
| US Bank | SARM 2008-2 / 1 | 0.176724% |
| US Bank | SASCO 2003-25XS / 1 | 0.016419% |
| US Bank | SASCO 2003-39EX / 1 | 0.034170% |
| US Bank | SASCO 2003-GEL1 / 1 | 0.004737% |
| US Bank | SASCO 2003-NP1 / 1 | 0.004274% |
| US Bank | SASCO 2004-10 / 4 | 0.040548% |
| US Bank | SASCO 2004-11XS / 1 | 0.037679% |
| US Bank | SASCO 2004-11XS / 2 | 0.001614% |
| US Bank | SASCO 2004-13 / 1 | 0.000000% |
| US Bank | SASCO 2004-13 / 2 | 0.041289% |
| US Bank | SASCO 2004-17XS / 1 | 0.028814% |
| US Bank | SASCO 2004-19XS / 1 | 0.026352% |
| US Bank | SASCO 2004-20 / 1 | 0.000574% |
| US Bank | SASCO 2004-20 / 2 | 0.008173% |
| US Bank | SASCO 2004-20 / 3 | 0.005517% |
| US Bank | SASCO 2004-20 / 4 | 0.020767% |

| US Bank | SASCO 2004-20 / 5 | 0.008046% |
|---------|-------------------|-----------|
| US Bank | SASCO 2004-20 / 6 | 0.000000% |
| US Bank | SASCO 2004-20 / 7 | 0.000021% |
| US Bank | SASCO 2004-20 / 8 | 0.008707% |
| US Bank | SASCO 2004-21XS / 1 | 0.049709% |
| US Bank | SASCO 2004-21XS / 2 | 0.016566% |
| US Bank | SASCO 2004-2AC / 1 | 0.042243% |
| US Bank | SASCO 2004-6XS / 1 | 0.025015% |
| US Bank | SASCO 2004-7 / 1 | 0.033747% |
| US Bank | SASCO 2004-7 / 2 | 0.001088% |
| US Bank | SASCO 2004-7 / 3 | 0.005477% |
| US Bank | SASCO 2004-9XS / 1 | 0.046737% |
| US Bank | SASCO 2004-9XS / 2 | 0.009750% |
| US Bank | SASCO 2004-GEL1 / 1 | 0.011649% |
| US Bank | SASCO 2004-GEL2 / 1 | 0.008805% |
| US Bank | SASCO 2004-GEL3 / 1 | 0.002683% |
| US Bank | SASCO 2004-NP1 / 1 | 0.007823% |
| US Bank | SASCO 2004-S2 / 1 | 0.005952% |
| US Bank | SASCO 2004-S3 / 1 | 0.006036% |
| US Bank | SASCO 2004-S3 / 2 | 0.013127% |
| US Bank | SASCO 2004-S4 / 1 | 0.059859% |
| US Bank | SASCO 2005-14 / 1 | 0.008746% |
| US Bank | SASCO 2005-14 / 2 | 0.008792% |
| US Bank | SASCO 2005-14 / 3 | 0.020391% |
| US Bank | SASCO 2005-14 / 4 | 0.041388% |
| US Bank | SASCO 2005-3 / 1 | 0.058777% |
| US Bank | SASCO 2005-7XS / 1 | 0.071050% |
| US Bank | SASCO 2005-7XS / 2 | 0.078792% |
| US Bank | SASCO 2005-GEL2 / 1 | 0.010236% |
| US Bank | SASCO 2005-GEL2 / 2 | 0.001913% |
| US Bank | SASCO 2005-GEL3 / 1 | 0.016596% |
| US Bank | SASCO 2005-GEL4 / 1 | 0.029040% |
| US Bank | SASCO 2005-RF1 / 1 | 0.000040% |
| US Bank | SASCO 2005-RF2 / 1 | 0.000869% |
| US Bank | SASCO 2005-RF4 / 2 | 0.000913% |
| US Bank | SASCO 2005-RF5 / 1 | 0.000212% |
| US Bank | SASCO 2005-RF5 / 2 | 0.000000% |
| US Bank | SASCO 2005-RF6 / 1 | 0.000017% |
| US Bank | SASCO 2005-RF7 / 1 | 0.000682% |

| US Bank | SASCO 2005-S1 / 1 | 0.016985% |
|---------|-------------------|-----------|
| US Bank | SASCO 2005-S1 / 2 | 0.074697% |
| US Bank | SASCO 2005-S2 / 1 | 0.107416% |
| US Bank | SASCO 2005-S3 / 1 | 0.232562% |
| US Bank | SASCO 2005-S4 / 1 | 0.043521% |
| US Bank | SASCO 2005-S5 / 1 | 0.379139% |
| US Bank | SASCO 2005-SC1 / 1 | 0.212532% |
| US Bank | SASCO 2006-BC2 / 1 | 0.659689% |
| US Bank | SASCO 2006-BC2 / 2 | 0.008230% |
| US Bank | SASCO 2006-BC3 / 1 | 0.042642% |
| US Bank | SASCO 2006-BC3 / 2 | 0.086333% |
| US Bank | SASCO 2006-BC4 / 1 | 0.021788% |
| US Bank | SASCO 2006-BC4 / 2 | 0.049696% |
| US Bank | SASCO 2006-BC6 / 1 | 0.772772% |
| US Bank | SASCO 2006-BC6 / 2 | 0.670175% |
| US Bank | SASCO 2006-GEL1 / 1 | 0.018225% |
| US Bank | SASCO 2006-GEL2 / 1 | 0.008997% |
| US Bank | SASCO 2006-GEL3 / 1 | 0.007282% |
| US Bank | SASCO 2006-GEL3 / 2 | 0.000000% |
| US Bank | SASCO 2006-GEL4 / 1 | 0.046913% |
| US Bank | SASCO 2006-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF2 / 1 | 0.001991% |
| US Bank | SASCO 2006-RF3 / 1 | 0.000480% |
| US Bank | SASCO 2006-RF3 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF3 / 3 | 0.000398% |
| US Bank | SASCO 2006-RF3 / 4 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 2 | 0.000225% |
| US Bank | SASCO 2006-RF4 / 3 | 0.000000% |
| US Bank | SASCO 2006-S1 / 1 | 1.286686% |
| US Bank | SASCO 2006-Z / 1 | 0.125224% |
| US Bank | SASCO 2006-Z / 2 | 0.163178% |
| US Bank | SASCO 2007-BC2 / 1 | 0.018223% |
| US Bank | SASCO 2007-BC2 / 2 | 0.056520% |
| US Bank | SASCO 2007-BC3 / 1 | 0.682815% |
| US Bank | SASCO 2007-BC3 / 2 | 0.617148% |
| US Bank | SASCO 2007-BC4 / 1 | 1.341653% |
| US Bank | SASCO 2007-BC4 / 2 | 1.475628% |

EXECUTION VERSION

| US Bank | SASCO 2007-BNC1 / 1 | 0.950916% |
|---|---|---|
| US Bank | SASCO 2007-BNC1 / 2 | 1.402866% |
| US Bank | SASCO 2007-GEL1 / 1 | 0.199334% |
| US Bank | SASCO 2007-GEL2 / 1 | 0.255981% |
| US Bank | SASCO 2007-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2007-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2007-TC1 / 1 | 0.238499% |
| Wilmington Trust | BNC 2007-3 / 1 | 1.032133% |
| Wilmington Trust | BNC 2007-3 / 2 | 0.490340% |
| Wilmington Trust | LMT 2006-1 / 1 | 0.128637% |
| Wilmington Trust | LMT 2006-1 / 2 | 0.023404% |
| Wilmington Trust | LMT 2006-1 / 3 | 0.051984% |
| Wilmington Trust | LMT 2006-4 / 1 | 0.011941% |
| Wilmington Trust | LMT 2006-4 / 2 | 0.001525% |
| Wilmington Trust | LXS 2005-1 / 1 | 0.166349% |
| Wilmington Trust | LXS 2005-1 / 2 | 0.167067% |
| Wilmington Trust | LXS 2005-1 / 3 | 0.054199% |
| Wilmington Trust | LXS 2005-10 / 1 | 0.305489% |
| Wilmington Trust | LXS 2005-10 / 2 | 0.200249% |
| Wilmington Trust | LXS 2005-3 / 1 | 0.242947% |
| Wilmington Trust | LXS 2005-3 / 2 | 0.227732% |
| Wilmington Trust | LXS 2005-3 / 3 | 0.105695% |
| Wilmington Trust | LXS 2005-6 / 1 | 0.264233% |
| Wilmington Trust | LXS 2005-6 / 2 | 0.187614% |
| Wilmington Trust | LXS 2005-6 / 3 | 0.214582% |
| Wilmington Trust | LXS 2005-8 / 1 | 0.270499% |
| Wilmington Trust | LXS 2005-8 / 2 | 0.195244% |
| Wilmington Trust | LXS 2006-1 / 1 | 0.287423% |
| Wilmington Trust | LXS 2006-1 / 2 | 0.218340% |
| Wilmington Trust | LXS 2006-13 / 1 | 0.731870% |
| Wilmington Trust | LXS 2006-13 / 2 | 0.043277% |
| Wilmington Trust | LXS 2006-17 / 1 | 1.227788% |
| Wilmington Trust | LXS 2006-17 / 2 | 0.000000% |
| Wilmington Trust | LXS 2006-5 / 1 | 0.744378% |
| Wilmington Trust | LXS 2006-5 / 2 | 0.234677% |
| Wilmington Trust | LXS 2006-7 / 1 | 0.876394% |
| Wilmington Trust | LXS 2006-7 / 2 | 0.369689% |
| Wilmington Trust | LXS 2006-9 / 1 | 0.538173% |
| Wilmington Trust | LXS 2006-9 / 2 | 0.328633% |

| | | |
|---|---|---|
| Wilmington Trust | LXS 2007-11 / 1 | 1.110351% |
| Wilmington Trust | SARM 2005-3XS / 1 | 0.037970% |
| Wilmington Trust | SASCO 2003-12XS / 1 | 0.003221% |
| Wilmington Trust | SASCO 2003-18XS / 1 | 0.008246% |
| Wilmington Trust | SASCO 2003-28XS / 1 | 0.004696% |
| Wilmington Trust | SASCO 2003-29 / 1 | 0.005971% |
| Wilmington Trust | SASCO 2003-29 / 2 | 0.001001% |
| Wilmington Trust | SASCO 2003-29 / 3 | 0.003988% |
| Wilmington Trust | SASCO 2003-29 / 4 | 0.002210% |
| Wilmington Trust | SASCO 2003-29 / 5 | 0.005912% |
| Wilmington Trust | SASCO 2003-30 / 1 | 0.025074% |
| Wilmington Trust | SASCO 2003-30 / 2 | 0.001480% |
| Wilmington Trust | SASCO 2003-30 / 3 | 0.015082% |
| Wilmington Trust | SASCO 2003-35 / 1 | 0.000555% |
| Wilmington Trust | SASCO 2003-35 / 2 | 0.001603% |
| Wilmington Trust | SASCO 2003-35 / 3 | 0.013751% |
| Wilmington Trust | SASCO 2003-35 / 4 | 0.019244% |
| Wilmington Trust | SASCO 2003-36XS / 1 | 0.023291% |
| Wilmington Trust | SASCO 2003-38 / 1 | 0.009282% |
| Wilmington Trust | SASCO 2003-38 / 2 | 0.003798% |
| Wilmington Trust | SASCO 2003-3XS / 1 | 0.004044% |
| Wilmington Trust | SASCO 2003-S1 / 1 | 0.020231% |
| Wilmington Trust | SASCO 2004-15 / 1 | 0.000156% |
| Wilmington Trust | SASCO 2004-15 / 2 | 0.000000% |
| Wilmington Trust | SASCO 2004-15 / 3 | 0.012284% |
| Wilmington Trust | SASCO 2004-15 / 4 | 0.000677% |
| Wilmington Trust | SASCO 2004-16XS / 1 | 0.032070% |
| Wilmington Trust | SASCO 2004-18H / 1 | 0.000796% |
| Wilmington Trust | SASCO 2004-22 / 1 | 0.015932% |
| Wilmington Trust | SASCO 2004-23XS / 1 | 0.039230% |
| Wilmington Trust | SASCO 2004-23XS / 2 | 0.055258% |
| Wilmington Trust | SASCO 2004-4XS / 1 | 0.015873% |
| Wilmington Trust | SASCO 2004-4XS / 2 | 0.016730% |
| Wilmington Trust | SASCO 2005-1 / 1 | 0.062667% |
| Wilmington Trust | SASCO 2005-1 / 2 | 0.006624% |
| Wilmington Trust | SASCO 2005-1 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 5 | 0.001916% |
| Wilmington Trust | SASCO 2005-1 / 6 | 0.074564% |

| | | |
|---|---|---|
| Wilmington Trust | SASCO 2005-1 / 7 | 0.043110% |
| Wilmington Trust | SASCO 2005-10 / 1 | 0.042529% |
| Wilmington Trust | SASCO 2005-10 / 2 | 0.017863% |
| Wilmington Trust | SASCO 2005-10 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 5 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 6 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 7 | 0.002397% |
| Wilmington Trust | SASCO 2005-10 / 8 | 0.038340% |
| Wilmington Trust | SASCO 2005-11H / 1 | 0.000000% |
| Wilmington Trust | SASCO 2005-15 / 1 | 0.006576% |
| Wilmington Trust | SASCO 2005-15 / 2 | 0.035261% |
| Wilmington Trust | SASCO 2005-15 / 3 | 0.008890% |
| Wilmington Trust | SASCO 2005-15 / 4 | 0.042647% |
| Wilmington Trust | SASCO 2005-15 / 5 | 0.014276% |
| Wilmington Trust | SASCO 2005-17 / 1 | 0.001003% |
| Wilmington Trust | SASCO 2005-17 / 2 | 0.005479% |
| Wilmington Trust | SASCO 2005-17 / 3 | 0.019832% |
| Wilmington Trust | SASCO 2005-17 / 4 | 0.037825% |
| Wilmington Trust | SASCO 2005-17 / 5 | 0.042364% |
| Wilmington Trust | SASCO 2005-2XS / 1 | 0.047617% |
| Wilmington Trust | SASCO 2005-2XS / 2 | 0.048195% |
| Wilmington Trust | SASCO 2005-4XS / 1 | 0.062751% |
| Wilmington Trust | SASCO 2005-4XS / 2 | 0.047130% |
| Wilmington Trust | SASCO 2005-4XS / 3 | 0.010096% |
| Wilmington Trust | SASCO 2005-5 / 1 | 0.077738% |
| Wilmington Trust | SASCO 2005-5 / 2 | 0.029624% |
| Wilmington Trust | SASCO 2005-5 / 3 | 0.023057% |
| Wilmington Trust | SASCO 2005-5 / 4 | 0.000009% |
| Wilmington Trust | SASCO 2005-9XS / 1 | 0.107536% |
| Wilmington Trust | SASCO 2005-9XS / 2 | 0.080869% |
| Wilmington Trust | SASCO 2006-S2 / 1 | 1.811246% |
| Wilmington Trust | SASCO 2006-S3 / 1 | 1.020158% |
| Wilmington Trust | SASCO 2006-S4 / 1 | 1.465131% |
| **Total** | | **100.000000%** |

EXECUTION VERSION

## EXHIBIT I

### DEBTORS' FINDINGS

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. All parties entitled to receive notice of the Motion have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the LBHI Debtors has acted in good faith and exercised sound business judgment in connection with its determination to enter into and execute the Settlement Agreement. Approval of the Settlement Agreement is in the best interests of the LBHI Debtors, their respective estates and creditors.

# EXHIBIT 6

Dated:  March 20, 2017

**NOTICE REGARDING RECEIPT OF A SETTLEMENT OFFER CONCERNING CERTAIN CLAIMS AGAINST THE LBHI DEBTORS BELONGING TO THE RMBS TRUSTEES (DEFINED BELOW) AND/OR THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS LISTED IN <u>EXHIBIT A</u> HERETO AND FURTHER IDENTIFIED BY CUSIP NUMBERS ON THE WEBSITE LOCATED AT <u>http://www.LBHIrmbssettlement.com</u> (THE "RMBS TRUSTEES' WEBSITE") AT THE TAB ENTITLED "LIST OF COVERED RMBS TRUSTS" (COLLECTIVELY, THE "<u>COVERED RMBS TRUSTS</u>" AND EACH A "<u>COVERED RMBS TRUST</u>").[1]**

**THE PROPOSED SETTLEMENT AGREEMENT MATERIALLY AFFECTS THE INTERESTS OF HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES ISSUED BY THE COVERED RMBS TRUSTS (THE "<u>CERTIFICATEHOLDERS</u>"). CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS SHOULD READ CAREFULLY THIS NOTICE AND THE MATERIALS REFERENCED HEREIN IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

**NOTICE IS HEREBY GIVEN BY:**

**Deutsche Bank National Trust Company
Law Debenture Trust Company of New York
U.S. Bank National Association
Wilmington Trust Company and Wilmington Trust, National Association**

**EACH, IN ITS CAPACITY AS TRUSTEE, SEPARATE TRUSTEE, SUCCESSOR TRUSTEE, OR OTHER SIMILAR CAPACITIES OF THE COVERED RMBS TRUSTS (COLLECTIVELY, THE "<u>RMBS TRUSTEES</u>" AND EACH AN "<u>RMBS TRUSTEE</u>"), TO THE CERTIFICATEHOLDERS.**

**THIS NOTICE CONTAINS IMPORTANT INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE COVERED RMBS TRUSTS.  ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.**

This notice (the "<u>Notice</u>") is given to you by the RMBS Trustees under certain applicable Trust Agreements or other similar agreements governing the Covered RMBS Trusts (the "<u>Governing Agreements</u>").

---

[1]      Any CUSIP numbers appearing in this Notice, the exhibit hereto or on the website maintained by the RMBS Trustees have been included solely for the convenience of the Certificateholders.  The RMBS Trustees assume no responsibility for the selection or use of such numbers and make no representations as to the correctness of the CUSIP numbers appearing herein or therein.

**BACKGROUND**

On September 15, 2008, Lehman Brothers Holdings, Inc. ("LBHI") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (*In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (SCC)) and on subsequent dates thereafter, affiliates of LBHI (including Structured Assets Securities Corp., together with LBHI and all affiliated debtors, the "LBHI Debtors") also filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

The RMBS Trustees (or predecessor trustees, where applicable) filed proofs of claim in the Chapter 11 Cases on behalf of certain RMBS Trusts (the "RMBS Trusts") asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning mortgage loans in the RMBS Trusts under the Governing Agreements (collectively, the "Claims").

On December 29, 2014, the Bankruptcy Court entered an *Order Establishing a Protocol to Resolve Claims Filed by Trustees on behalf of Certain Issuers of Residential Mortgage-Backed Securities* (available on the docket for the Chapter 11 Cases at ECF No. 47569) setting forth a protocol (the "Protocol") for the review of mortgage loan files, the assertion of the Claims by the RMBS Trustees on behalf of the RMBS Trusts, the response by the LBHI Debtors to the Claims, and a mechanism for resolving disputes regarding the Claims. The RMBS Trustees have since been pursuing Claims in accordance with the terms of the Protocol, and continue to do so, with expenses paid from assets of the RMBS Trusts.

**THIS NOTICE CONCERNS A SETTLEMENT OFFER CONCERNING CLAIMS AGAINST THE LBHI DEBTORS.** IN ORDER TO BIND ANY COVERED RMBS TRUST OR RELATED CERTIFICATEHOLDERS, THE PROPOSED SETTLEMENT AGREEMENT MUST BE ACCEPTED ON A FINAL BASIS, IF AT ALL, ON OR BEFORE JUNE 1, 2017 AS DESCRIBED HEREIN. IF FINALLY ACCEPTED BY THE RMBS TRUSTEES AND APPROVED BY BOTH THE BANKRUPTCY COURT AND THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (THE "DISTRICT COURT") AS CONTEMPLATED BY THE PROPOSED SETTLEMENT AGREEMENT (SUBJECT TO OTHER CONDITIONS PRECEDENT), THE PROPOSED SETTLEMENT AGREEMENT WOULD BIND THE ACCEPTING COVERED RMBS TRUSTS AND RELATED CERTIFICATEHOLDERS.

THE PROPOSED SETTLEMENT AGREEMENT STATES THAT ANY FINAL ACCEPTANCE OF THE SETTLEMENT IS CONDITIONED UPON (I) ENTRY BY THE DISTRICT COURT OF AN ORDER APPROVING THE SETTLEMENT AND FINDING, AMONG OTHER THINGS AS SET FORTH IN EXHIBIT F TO THE PROPOSED SETTLEMENT AGREEMENT, THAT EACH RMBS TRUSTEE ACTED WITHIN THE BOUNDS OF ITS DISCRETION, REASONABLY, AND IN GOOD FAITH WITH RESPECT TO ITS EVALUATION AND ACCEPTANCE OF THE PROPOSED SETTLEMENT AGREEMENT (THE "TRUSTEE FINDINGS"); (II) THE TRUSTEE FINDINGS BECOMING A FINAL ORDER; AND (III) THE RECEIPT BY THE ACCEPTING TRUSTEES OF EITHER AN ACCEPTABLE REMIC OPINION OR AN IRS PRIVATE LETTER RULING.

THE SETTLEMENT OFFER AND RELATED COURT APPROVAL PROCEDURES
MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE
RMBS TRUSTEES REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE
RECIPIENTS READ THIS NOTICE, THE PROPOSED SETTLEMENT AGREEMENT, AND
RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND
FINANCIAL ADVISORS.

**THE SETTLEMENT OFFER AND THE PROPOSED SETTLEMENT AGREEMENT**

A group of fourteen (14) institutional investors (the "Institutional Investors") have
submitted to the RMBS Trustees a settlement offer (the "Settlement Offer") from the LBHI
Debtors in the form of an RMBS Trust Settlement Agreement (the "Proposed Settlement
Agreement"), dated as of November 30, 2016, and modified as of March 17, 2017 (the
"Modification Date"), concerning certain Claims of the Covered RMBS Trusts.  The Institutional
Investors request that the RMBS Trustees evaluate and accept the Proposed Settlement
Agreement.  On or about November 30, 2016, the RMBS Trustees were provided with the
Proposed Settlement Agreement, which has since been modified, only after, and upon the
condition that, they agreed to keep confidential and not disclose the existence or terms of the
Proposed Settlement Agreement until after the Modification Date.  The RMBS Trustees are
issuing this Notice to all Certificateholders and other interested parties before deciding whether
to accept or reject the Settlement Offer.

A copy of the Proposed Settlement Agreement, together with a copy of the Institutional
Investors' letter to the RMBS Trustees concerning the Proposed Settlement Agreement, is
available at the RMBS Trustees' Website at the tab entitled "Certain Relevant Documents"
(available at http://lbhirmbssettlement.com/Settlement_Agreement.pdf).  A copy of the
Institutional Investors' letter to the RMBS Trustees concerning the Proposed Settlement
Agreement is available at the RMBS Trustees' Website at the tab entitled "Certain Relevant
Documents" (available at http://lbhirmbssettlement.com/Institutional_Investors_Letter.pdf).
Capitalized terms used but not defined herein will have the meanings assigned to them in the
Proposed Settlement Agreement.  This Notice attempts to summarize certain terms of the
Proposed Settlement Agreement; please refer to the Proposed Settlement Agreement itself for the
actual terms of the Settlement Offer.

Under the terms of the Proposed Settlement Agreement, the LBHI Debtors would allow a
Class 7 General Unsecured claim in the Chapter 11 Cases against LBHI (the "Allowed Claim")
in an amount to be determined by the Bankruptcy Court after an Estimation Proceeding in
accordance with the procedures set forth in Exhibit G to the Proposed Settlement Agreement.  In
the Estimation Proceeding, under Section 502(c) of the Bankruptcy Code, the LBHI Debtors will
seek Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts, for
purposes of setting the amount of the Allowed Claim, at a total amount of $2,416,000,000,
without prejudice to the rights of the LBHI Debtors to argue in furtherance of such estimation
that an amount lesser than $2,416,000,000 is correct, reasonable, or legally and factually
supportable, as described further in the Proposed Settlement Agreement.  The Accepting
Trustees will be entitled to seek Estimation of the Covered Loan Claims in the Estimation
Proceeding at an amount greater than $2,416,000,000.  To the extent that the Bankruptcy Court
decides that the Allowed Claim should be set at an amount (i) less than $2,000,000,000, such
decision may be appealed by the RMBS Trustees;  (ii) between $2,000,000,000 and

3

$2,416,000,000, the Allowed Claim will be set at $2,416,000,000; and (iii) greater than $2,416,000,000, the Allowed Claim will be set at such greater amount. [2] The Bankruptcy Court's decision may be appealed by the Accepting Trustees only if the Estimation is for an amount less than $2,000,000,000. Under no circumstances may the LBHI Debtors appeal the Bankruptcy Court's decision that sets the amount of the Allowed Claim.

The Allowed Claim will include any interest thereon to the extent provided by Section 8.4 of the Plan and will be paid net of the Legal Fees (as determined in accordance with the attorneys' fee provision set forth in Section 6.05 of the Proposed Settlement Agreement). The Net Allowed Claim will be allocated, and the Allocable Share of the Net Allocated Claim calculated, in accordance with a formula provided in Section 3.04 of the Proposed Settlement Agreement. Following the acceptance of the Proposed Settlement Agreement, the Parties, including the RMBS Trustees, will have no ability to adjust, amend, or revise the allocation formula as to any Covered RMBS Trust for which an RMBS Trustee accepts the Proposed Settlement Agreement.

In exchange for the Allowed Claim, the LBHI Debtors would receive releases and waivers with respect to Covered Loan Claims (as defined in the Proposed Settlement Agreement). Please refer to the Proposed Settlement Agreement for further details concerning the Net Allowed Claim, the allocation of same, the proposed releases, and the other terms of the Settlement Offer.

For the Proposed Settlement Agreement to bind the Covered RMBS Trusts or related Certificateholders, the RMBS Trustees must accept the Settlement Offer pursuant to a process that is set forth in the Proposed Settlement Agreement. The RMBS Trustees are permitted to accept or reject the Settlement Offer separately as to each Covered RMBS Trust. Under certain conditions, if a sufficient number of Covered RMBS Trusts reject the Settlement Offer, the LBHI Debtors may terminate the Proposed Settlement Agreement. In order to bind any Covered RMBS Trust or related Certificateholders, the RMBS Trustees must accept or reject the Proposed Settlement Agreement on a final basis, on or before June 1, 2017. Please refer to the Proposed Settlement Agreement for further details concerning the other dates relevant to the Settlement Offer.

ANY CERTIFICATEHOLDERS WHO WISH TO HAVE THEIR VIEWS CONCERNING WHETHER THE RMBS TRUSTEES SHOULD ACCEPT OR REJECT THE PROPOSED SETTLEMENT AGREEMENT FOR THEIR RELATED COVERED RMBS TRUST(S) TO BE CONSIDERED BY THE RMBS TRUSTEES AND/OR THEIR EXPERTS ARE REQUESTED TO CONTACT THE RMBS TRUSTEES IMMEDIATELY AND CERTAINLY NO LATER THAN MAY 5, 2017. **GIVEN THE IMPENDING DEADLINES, THE RMBS TRUSTEES LIKELY WILL NOT BE IN A POSITION TO MEANINGFULLY CONSIDER, IF AT ALL, VIEWS OF CERTIFICATEHOLDERS OR OTHER INFORMATION THAT THEY RECEIVE AFTER MAY 5, 2017.** PLEASE

---

[2] The $2 billion and $2.416 billion figures described in subparts (i), (ii) and (iii) of this paragraph would be reduced proportionately if one or more Covered Trusts is excluded from the Proposed Settlement Agreement. *See* Proposed Settlement Agreement, § 3.02.

COMMUNICATE WITH THE APPLICABLE RMBS TRUSTEE(S) USING THE CONTACT INFORMATION OF SUCH RMBS TRUSTEE AVAILABLE AT THE RMBS TRUSTEES' WEBSITE AT THE TAB ENTITLED "RMBS TRUSTEES' CONTACT INFORMATION" (AVAILABLE AT http://lbhirmbssettlement.com/trustee_contact.php).

The RMBS Trustees' fees and expenses relating to their evaluation of the Proposed Settlement Agreement, including expert fees and expenses, are being paid from assets of the Covered RMBS Trusts pursuant to the RMBS Trustees' rights to payment of fees and expenses under Governing Agreements and related court orders.

**THE PROPOSED SETTLEMENT AGREEMENT REMAINS UNDER THE REVIEW OF THE RMBS TRUSTEES AND THEIR EXPERT**. The RMBS Trustees have retained the Honorable Judith Fitzgerald (Ret.) as an expert to assist them with an independent evaluation of the Settlement Offer as set forth in the Proposed Settlement Agreement. Each RMBS Trustee also has engaged legal counsel to advise it with respect to relevant legal matters affecting the particular Covered RMBS Trusts that it administers. The RMBS Trustees are reviewing the Proposed Settlement Agreement with the assistance of Judge Fitzgerald and each RMBS Trustee's legal counsel. It is anticipated that Judge Fitzgerald will provide a report to the RMBS Trustees concerning her evaluation of the Settlement Offer.

As of the date of this Notice, none of the RMBS Trustees has made any final determination, on behalf of the Covered RMBS Trusts for which it serves as trustee, as to the reasonableness of, or the advisability of accepting, the Proposed Settlement Agreement. Although the RMBS Trustees are working together in their evaluation of the Proposed Settlement Agreement, each RMBS Trustee will assess the Proposed Settlement Agreement and make its own decision as to whether to accept or reject the Proposed Settlement Agreement on behalf of each Covered RMBS Trust for which it serves as trustee.

Certificateholders are encouraged to check the RMBS Trustees' Website regularly for updates that may impact particular Covered RMBS Trusts or groups of Covered RMBS Trusts.

**OTHER MATTERS**

This Notice summarizes certain terms of the Proposed Settlement Agreement (including the Trustee Findings) and is not a complete summary or statement of the material terms thereof, of relevant law or of relevant legal procedures. Certificateholders and other potentially interested persons are urged to review carefully the Proposed Settlement Agreement and to consider its implications, including without limitation the releases of the Covered Loan Claims and other actual or potential claims related to Covered Loans. The RMBS Trustees may send further notices with respect to the matters addressed herein and developments relating to the Settlement Offer, all of which will be made available at the RMBS Trustees' Website at the tab entitled "Notices" (available at http://lbhirmbssettlement.com/notice.php). You may also obtain any documents filed with the Court on the docket for the Chapter 11 Cases by logging on to PACER at https://www.pacer.gov (password required) or by visiting LBHI's claims agent website at http://www.lehman-docket.com (no password required).

For inquiries, or to furnish any direction pursuant to the Governing Agreements with respect to the matters discussed herein, Certificateholders are directed to contact the applicable

RMBS Trustee using the contact information of such RMBS Trustee available at the RMBS Trustees' Website at the tab entitled "RMBS Trustees' Contact Information" (available at http://lbhirmbssettlement.com/trustee_contact.php). Certificateholders will be required to verify their holdings before receiving information from the applicable RMBS Trustee. Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

Certificateholders and other persons interested in the Covered RMBS Trusts should not rely on the RMBS Trustees, their counsel, experts or other advisors retained by the RMBS Trustees, as their sole source of information. Certificateholders and other potentially interested persons are urged to consult with their own legal and financial advisors.

Please note that this Notice is not intended and should not be construed as investment, accounting, financial, legal, tax or other advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisors in respect of all matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Receipt of this Notice should not be construed as evidence or acknowledgment of any requirement applicable to, or of any right or authority on the part of any recipient under the Governing Documents to direct, the matters addressed herein, or of any obligations on the part of any RMBS Trustee with respect thereto, and each RMBS Trustee expressly reserves all rights in determining appropriate actions and requirements concerning these matters.

Each of the RMBS Trustees expressly reserves all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities that might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

**Deutsche Bank National Trust Company**
**Law Debenture Trust Company of New York**
**U.S. Bank National Association**
**Wilmington Trust Company and Wilmington Trust, National Association**

**EXHIBIT A**

**Covered RMBS Trusts**

## **EXHIBIT A**

### **TRUSTS**

| No. | Trust Name |
| --- | --- |
| 1 | ARC 2002-BC10 |
| 2 | ARC 2002-BC8 |
| 3 | ARC 2002-BC9 |
| 4 | ARC 2004-1 |
| 5 | BNC 2006-1 |
| 6 | BNC 2006-2 |
| 7 | BNC 2007-1 |
| 8 | BNC 2007-2 |
| 9 | BNC 2007-3 |
| 10 | BNC 2007-4 |
| 11 | LABS 2004-1 |
| 12 | LABS 2007-1 |
| 13 | LMT 2005-1 |
| 14 | LMT 2005-2 |
| 15 | LMT 2005-3 |
| 16 | LMT 2006-1 |
| 17 | LMT 2006-2 |
| 18 | LMT 2006-4 |
| 19 | LMT 2006-8 |
| 20 | LMT 2006-9 |
| 21 | LMT 2007-1 |
| 22 | LMT 2007-10 |
| 23 | LMT 2007-2 |
| 24 | LMT 2007-3 |
| 25 | LMT 2007-4 |
| 26 | LMT 2007-5 |
| 27 | LMT 2007-6 |
| 28 | LMT 2007-7 |
| 29 | LMT 2007-8 |
| 30 | LMT 2007-9 |
| 31 | LMT 2008-2 |
| 32 | LMT 2008-6 |
| 33 | LXS 2005-1 |
| 34 | LXS 2005-10 |
| 35 | LXS 2005-2 |
| 36 | LXS 2005-3 |
| 37 | LXS 2005-4 |

| 38 | LXS 2005-6 |
| 39 | LXS 2005-8 |
| 40 | LXS 2006-1 |
| 41 | LXS 2006-10N |
| 42 | LXS 2006-11 |
| 43 | LXS 2006-12N |
| 44 | LXS 2006-13 |
| 45 | LXS 2006-15 |
| 46 | LXS 2006-17 |
| 47 | LXS 2006-19 |
| 48 | LXS 2006-20 |
| 49 | LXS 2006-3 |
| 50 | LXS 2006-5 |
| 51 | LXS 2006-7 |
| 52 | LXS 2006-8 |
| 53 | LXS 2006-9 |
| 54 | LXS 2007-1 |
| 55 | LXS 2007-10H |
| 56 | LXS 2007-11 |
| 57 | LXS 2007-12N |
| 58 | LXS 2007-14H |
| 59 | LXS 2007-15N |
| 60 | LXS 2007-16N |
| 61 | LXS 2007-17H |
| 62 | LXS 2007-18N |
| 63 | LXS 2007-20N |
| 64 | LXS 2007-3 |
| 65 | LXS 2007-5H |
| 66 | LXS 2007-6 |
| 67 | LXS 2007-7N |
| 68 | LXS 2007-8H |
| 69 | LXS 2007-9 |
| 70 | RLT 2008-AH1 |
| 71 | SAIL 2003-BC1 |
| 72 | SAIL 2003-BC10 |
| 73 | SAIL 2003-BC11 |
| 74 | SAIL 2003-BC12 |
| 75 | SAIL 2003-BC13 |
| 76 | SAIL 2003-BC2 |
| 77 | SAIL 2003-BC3 |
| 78 | SAIL 2003-BC4 |
| 79 | SAIL 2003-BC5 |
| 80 | SAIL 2003-BC8 |

| 81  | SAIL 2003-BC9   |
| 82  | SAIL 2004-1     |
| 83  | SAIL 2004-10    |
| 84  | SAIL 2004-2     |
| 85  | SAIL 2004-3     |
| 86  | SAIL 2004-4     |
| 87  | SAIL 2004-5     |
| 88  | SAIL 2004-6     |
| 89  | SAIL 2004-8     |
| 90  | SAIL 2004-9     |
| 91  | SAIL 2005-1     |
| 92  | SAIL 2005-10    |
| 93  | SAIL 2005-11    |
| 94  | SAIL 2005-2     |
| 95  | SAIL 2005-3     |
| 96  | SAIL 2005-4     |
| 97  | SAIL 2005-5     |
| 98  | SAIL 2005-6     |
| 99  | SAIL 2005-7     |
| 100 | SAIL 2005-8     |
| 101 | SAIL 2005-9     |
| 102 | SAIL 2005-HE3   |
| 103 | SAIL 2006-1     |
| 104 | SAIL 2006-2     |
| 105 | SAIL 2006-4     |
| 106 | SAIL 2006-BNC3  |
| 107 | SARM 2004-10    |
| 108 | SARM 2004-16    |
| 109 | SARM 2004-18    |
| 110 | SARM 2004-20    |
| 111 | SARM 2004-5     |
| 112 | SARM 2004-9XS   |
| 113 | SARM 2005-11    |
| 114 | SARM 2005-12    |
| 115 | SARM 2005-15    |
| 116 | SARM 2005-17    |
| 117 | SARM 2005-20    |
| 118 | SARM 2005-22    |
| 119 | SARM 2005-23    |
| 120 | SARM 2005-3XS   |
| 121 | SARM 2005-6XS   |
| 122 | SARM 2005-8XS   |
| 123 | SARM 2006-1     |

| | |
|---|---|
| 124 | SARM 2006-10 |
| 125 | SARM 2006-11 |
| 126 | SARM 2006-12 |
| 127 | SARM 2006-2 |
| 128 | SARM 2006-3 |
| 129 | SARM 2006-4 |
| 130 | SARM 2006-5 |
| 131 | SARM 2006-6 |
| 132 | SARM 2006-7 |
| 133 | SARM 2006-8 |
| 134 | SARM 2006-9 |
| 135 | SARM 2007-1 |
| 136 | SARM 2007-10 |
| 137 | SARM 2007-11 |
| 138 | SARM 2007-2 |
| 139 | SARM 2007-3 |
| 140 | SARM 2007-4 |
| 141 | SARM 2007-6 |
| 142 | SARM 2007-8 |
| 143 | SARM 2008-2 |
| 144 | SASCO 2003-12XS |
| 145 | SASCO 2003-15A |
| 146 | SASCO 2003-17A |
| 147 | SASCO 2003-18XS |
| 148 | SASCO 2003-25XS |
| 149 | SASCO 2003-26A |
| 150 | SASCO 2003-28XS |
| 151 | SASCO 2003-29 |
| 152 | SASCO 2003-30 |
| 153 | SASCO 2003-34A |
| 154 | SASCO 2003-35 |
| 155 | SASCO 2003-36XS |
| 156 | SASCO 2003-38 |
| 157 | SASCO 2003-39EX |
| 158 | SASCO 2003-3XS |
| 159 | SASCO 2003-6A |
| 160 | SASCO 2003-GEL1 |
| 161 | SASCO 2003-NP1 |
| 162 | SASCO 2003-S1 |
| 163 | SASCO 2003-S2 |
| 164 | SASCO 2004-10 |
| 165 | SASCO 2004-11XS |
| 166 | SASCO 2004-13 |

| 167 | SASCO 2004-15 |
| 168 | SASCO 2004-16XS |
| 169 | SASCO 2004-17XS |
| 170 | SASCO 2004-18H |
| 171 | SASCO 2004-19XS |
| 172 | SASCO 2004-20 |
| 173 | SASCO 2004-21XS |
| 174 | SASCO 2004-22 |
| 175 | SASCO 2004-23XS |
| 176 | SASCO 2004-2AC |
| 177 | SASCO 2004-4XS |
| 178 | SASCO 2004-6XS |
| 179 | SASCO 2004-7 |
| 180 | SASCO 2004-9XS |
| 181 | SASCO 2004-GEL1 |
| 182 | SASCO 2004-GEL2 |
| 183 | SASCO 2004-GEL3 |
| 184 | SASCO 2004-NP1 |
| 185 | SASCO 2004-S2 |
| 186 | SASCO 2004-S3 |
| 187 | SASCO 2004-S4 |
| 188 | SASCO 2005-1 |
| 189 | SASCO 2005-10 |
| 190 | SASCO 2005-11H |
| 191 | SASCO 2005-14 |
| 192 | SASCO 2005-15 |
| 193 | SASCO 2005-17 |
| 194 | SASCO 2005-2XS |
| 195 | SASCO 2005-3 |
| 196 | SASCO 2005-4XS |
| 197 | SASCO 2005-5 |
| 198 | SASCO 2005-7XS |
| 199 | SASCO 2005-9XS |
| 200 | SASCO 2005-GEL2 |
| 201 | SASCO 2005-GEL3 |
| 202 | SASCO 2005-GEL4 |
| 203 | SASCO 2005-RF1 |
| 204 | SASCO 2005-RF2 |
| 205 | SASCO 2005-RF4 |
| 206 | SASCO 2005-RF5 |
| 207 | SASCO 2005-RF6 |
| 208 | SASCO 2005-RF7 |
| 209 | SASCO 2005-S1 |

| 210 | SASCO 2005-S2 |
| 211 | SASCO 2005-S3 |
| 212 | SASCO 2005-S4 |
| 213 | SASCO 2005-S5 |
| 214 | SASCO 2005-S6 |
| 215 | SASCO 2005-S7 |
| 216 | SASCO 2005-SC1 |
| 217 | SASCO 2006-BC2 |
| 218 | SASCO 2006-BC3 |
| 219 | SASCO 2006-BC4 |
| 220 | SASCO 2006-BC6 |
| 221 | SASCO 2006-GEL1 |
| 222 | SASCO 2006-GEL2 |
| 223 | SASCO 2006-GEL3 |
| 224 | SASCO 2006-GEL4 |
| 225 | SASCO 2006-RF1 |
| 226 | SASCO 2006-RF2 |
| 227 | SASCO 2006-RF3 |
| 228 | SASCO 2006-RF4 |
| 229 | SASCO 2006-S1 |
| 230 | SASCO 2006-S2 |
| 231 | SASCO 2006-S3 |
| 232 | SASCO 2006-S4 |
| 233 | SASCO 2006-Z |
| 234 | SASCO 2007-BC1 |
| 235 | SASCO 2007-BC2 |
| 236 | SASCO 2007-BC3 |
| 237 | SASCO 2007-BC4 |
| 238 | SASCO 2007-BNC1 |
| 239 | SASCO 2007-GEL1 |
| 240 | SASCO 2007-GEL2 |
| 241 | SASCO 2007-MLN1 |
| 242 | SASCO 2007-OSI |
| 243 | SASCO 2007-RF1 |
| 244 | SASCO 2007-TC1 |

# EXHIBIT 7

**GIBBS & BRUNS** LLP

**ITITUTIONAL INVESTORS IN RMBS ISSUED
BY LEHMAN ANNOUNCE BINDING OFFER BY THE
PLAN ADMINISTRATOR TO THE LEHMAN ESTATE
TO FOUR RMBS TRUSTEES TO SETTLE
MORTGAGE REPURCHASE CLAIMS FOR 244 RMBS
TRUSTS**

04.03.2017

HOUSTON, April 3, 2017 — Today, 14 institutional investors represented by Gibbs & Bruns LLP ("Institutional Investors") announced they have reached an agreement with the Plan Administrator for Lehman Brothers Holdings Inc. and the other Debtors in the Lehman Bankruptcy Proceeding (the "Plan Administrator") under which the Plan Administrator has made a binding offer ("Offer") to the Trustees for 244 RMBS Trusts issued by Lehman (or into which Lehman contributed mortgages) to settle mortgage repurchase claims in respect of Covered Loans. The Institutional Investors support the agreement and have asked the Trustees to accept it. The Trusts included in the Offer are listed on Exhibit "A."

Robert Madden, counsel for the Institutional Investors, calls this announcement, "an important capstone to our clients' efforts to address the problems of ineligible mortgages in residential mortgage-backed securitizations." "Fair and efficient resolutions like this one," he added, "have been transformative for the market and for investors."

The Trustees will have until June 1, 2017 to accept the Offer. The Offer includes the following key terms:

1.    The allowed amount of the mortgage repurchase claims submitted under the existing loan review protocol in respect of Covered Loans will be determined by the Lehman Bankruptcy Court in an estimation proceeding to commence in October 2017;

2.    In the estimation proceeding, the Plan Administrator and the Trustees each will have the opportunity to present evidence to support their views as to the allowable value of the Covered Loan Claims submitted by the Trustees under the protocol that had been established by the Bankruptcy Court;

3.    Despite the evidence presented, the Plan Administrator has agreed to request that the Trusts' claims on account of Covered Loans be allowed in the amount of $2.416 billion (the Institutional Investors previously negotiated a proposed settlement at that level and agree that a settlement at that level is fair and reasonable) and that if the Bankruptcy Court determines the claims in a range of $2.00 billion to $2.416 billion, to nevertheless allow the claim in the amount of $2.416 billion;

4.    In exchange for the Plan Administrator's agreement to request a $2.416 billion claim in respect of Covered Loan Claims, rather than a lower claim, the Trustees will waive their right to appeal a Bankruptcy Court decision so long as the Bankruptcy Court determines the claim in an amount greater than $2.0 billion;

5.    The Plan Administrator has agreed to waive its right to appeal the Bankruptcy Court's determination; and

6.    A release of all repurchase claims that have been or could have been asserted by the Trusts in respect of Covered Loans.

6/26/2017   14 Institutional Investors in RMBS Issued by Lehman Announce Binding Offer by the Plan Administrator to the Lehman Estate...

08-13555-mg   Doc 55679   Filed 06/29/17   Entered 06/29/17 17:46:31   Main Document
Pg 255 of 366

The Offer is available at a website created by the Trustees, which can be found at:
http://www.lbhirmbssettlement.com/.

The Institutional Investors who are parties to the agreement are:

- · AEGON USA Investment Management, LLC
- · BlackRock Financial Management Inc.
- · Cascade Investment, L.L.C.
- · Federal Home Loan Bank of Atlanta
- · Goldman Sachs Asset Management, L.P.
- · Invesco Advisers, Inc.
- · Kore Advisors, L.P.
- · Metropolitan Life Insurance Company
- · Pacific Investment Management Company LLC
- · Sealink Designated Activity Company, through its investment manager
  Neuberger Berman Europe Limited
- · The TCW Group, Inc.
- · Thrivent Financial for Lutherans
- · Voya Investment Management LLC
- · Western Asset Management Company

The agreement is subject to acceptance of the Offer by the Trustees.  Pursuant to the agreement, the Institutional Investors have requested that the Trustees accept the Settlement. The Institutional Investors have also agreed to use their reasonable best efforts to obtain court approval of the settlement, if the Trustees elect to accept the Offer and seek judicial findings from the Bankruptcy Court concerning their decision to do so.  Attorneys' fees for the Institutional Investors' counsel, Gibbs & Bruns, will be paid upon consummation of the settlement and final allowance of the Trusts' claim.

### FAQs

Q:      Who are the parties to the settlement?

A:      The Plan Administrator has made a binding Offer to the RMBS Trustees of all of the RMBS Trusts listed on Exhibit "A."  The Trustees who have received the offer are:  U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust National Association, Deutsche Bank National Trust Company, in each case acting in their representative capacities as trustees, co-trustees, separate trustees and or successor trustees of the applicable Trusts.  The Offer is being made pursuant to an agreement between Lehman and the Institutional Investors.

Q:      What Trusts are involved in the proposed settlement?

A:      There are 244 Trusts involved in the settlement.  They are listed on Exhibit "A."

Q:      What was the role of the 14 Institutional Investors?

A:      The Institutional Investors, through their Steering Committee and their counsel, led the settlement negotiations.  The Institutional Investors did not negotiate on behalf of the Trustees. The Institutional Investors have requested that the Trustees enter into the settlement and will appear in court to support the settlement and the judicial findings called for by the proposed settlement.

Q:      Will the Institutional Investors benefit differently than other investors under the settlement?

6/26/2017  14 Institutional Investors in RMBS Issued by Lehman Announce Binding Offer by the Plan Administrator to the Lehman Estate…

08-13555-mg  Doc 55679  Filed 06/29/17  Entered 06/29/17 17:46:31  Main Document
Pg 256 of 366

A:      No, they will not.  Upon the Trustees' acceptance of the proposed settlement, and the completion of the estimation proceeding called for by the proposed agreement, the allowed claim will be allocated among the RMBS Trusts based on a detailed allocation schedule prepared by an expert retained by the Trustees, based upon the Trustees' loan file review and claim submission in the Lehman bankruptcy Proceeding.  The allocation schedule is attached to the proposed settlement agreement as Exhibit H.  The proposed settlement agreement is available at a website created by the Trustees, which can be found at: http://www.lbhirmbssettlement.com/.  Each RMBS Trust's allocable share of the settlement payment will flow down its payment waterfall in accordance with the governing documents for that Trust.  The Institutional Investors will participate in the settlement, like every other investor, based on the terms of the payment waterfall.

**Q:      Are individual investors' securities claims affected by the settlement?**

A:      No, they are not.  The settlement pertains only to the Trusts' repurchase claims.  The Offer states specifically that:  "The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("Disclosure Claims") that an Investor may seek to assert based upon such Investor's purchase or sale of Securities."  The Plan Administrator has reserved the right to assert that any payment made or benefit conferred under the settlement constitutes an offset or credit against or a reduction in the gross amount of an Investor's Disclosure Claim damages.  Note, also, however, the settlement agreement expressly provides that nothing in the agreement is intended to or shall be read to alter, modify, or amend any order of the Court, any provision in Lehman's Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

**Q:      How will the Trustees assess whether to accept the Offer?**

A:      The Trustees have until June 1, 2017 to conduct a reasonable investigation of the settlement and its terms.

        The Trustees may conduct such diligence as they deem necessary to inform themselves concerning the Settlement, may solicit input from Investors, and may retain experts to assist them.

**Q:      When and how will the settlement payment be distributed?**

A:      Once the allowable amount of the claim is determined by the Bankruptcy Court and all required court approvals have become final, payments on account of the allowed claim will be made under Lehman's Bankruptcy Court approved bankruptcy plan.  Distributions on account of the allowed claim will be made to the applicable Trustees, and then allocated to the Trusts pursuant to an allocation schedule attached to the proposed settlement agreement as Exhibit H.  The proposed settlement agreement is available at a website created by the Trustees, which can be found at: http://www.lbhirmbssettlement.com/.  The timing of payment is not certain, as it depends upon a number of factors including:  a) whether the Trustees accept the settlement, b) whether the Trustees elect to condition their acceptance on approval of certain judicial findings concerning their decision to accept the settlement, c) whether the judicial findings , if sought, are granted, d) when the estimation proceeding to set the amount of the allowed claim is concluded, e) whether the amount estimated and allowed is subject to appeal, and f) certain required REMIC determinations.

**Q:      How will the settlement payment be allocated among the Trusts?**

A:      The settlement agreement specifies that the total allowed claim awarded to the Trust will be allocated pursuant to the Trust-by-Trust percentages set out in the schedule attached to the proposed settlement agreement as Exhibit H.  The proposed settlement agreement is available at a website created by the Trustees, which can be found at: http://www.lbhirmbssettlement.com/.  The allocation schedule was prepared by an expert retained by the Trustees, based upon the Trustees' loan file review and claim submission in the Lehman bankruptcy Proceeding.

6/26/2017   08-13555-mg   Doc 55679   14 Institutional Investors in RMBS Issued by Lehman Announce Binding Offer by the Plan Administrator to the Lehman Estate...   Filed 06/29/17   Entered 06/29/17 17:46:31   Main Document

Pg 257 of 366

**Q:** How can interested investors learn more about the settlement?

**A:** All investors have received or will receive a notice from the relevant Trustee(s) concerning the settlement terms. Information is also available on a settlement-related website that has been created by the Trustees located at: http://www.lbhirmbssettlement.com/.

## EXHIBIT A

| | |
|---|---|
| ARC 2002-BC10 | SARM 2006-1 |
| ARC 2002-BC8 | SARM 2006-10 |
| ARC 2002-BC9 | SARM 2006-11 |
| ARC 2004-1 | SARM 2006-12 |
| BNC 2006-1 | SARM 2006-2 |
| BNC 2006-2 | SARM 2006-3 |
| BNC 2007-1 | SARM 2006-4 |
| BNC 2007-2 | SARM 2006-5 |
| BNC 2007-3 | SARM 2006-6 |
| BNC 2007-4 | SARM 2006-7 |
| LABS 2004-1 | SARM 2006-8 |
| LABS 2007-1 | SARM 2006-9 |
| LMT 2005-1 | SARM 2007-1 |
| LMT 2005-2 | SARM 2007-10 |
| LMT 2005-3 | SARM 2007-11 |
| LMT 2006-1 | SARM 2007-2 |
| LMT 2006-2 | SARM 2007-3 |
| LMT 2006-4 | SARM 2007-4 |
| LMT 2006-8 | SARM 2007-6 |
| LMT 2006-9 | SARM 2007-8 |
| LMT 2007-1 | SARM 2008-2 |
| LMT 2007-10 | SASCO 2003-12XS |
| LMT 2007-2 | SASCO 2003-15A |
| LMT 2007-3 | SASCO 2003-17A |
| LMT 2007-4 | SASCO 2003-18XS |
| LMT 2007-5 | SASCO 2003-25XS |
| LMT 2007-6 | SASCO 2003-26A |
| LMT 2007-7 | SASCO 2003-28XS |
| LMT 2007-8 | SASCO 2003-29 |
| LMT 2007-9 | SASCO 2003-30 |
| LMT 2008-2 | SASCO 2003-34A |
| LMT 2008-6 | SASCO 2003-35 |
| LXS 2005-1 | SASCO 2003-36XS |
| LXS 2005-10 | SASCO 2003-38 |
| LXS 2005-2 | SASCO 2003-39EX |
| LXS 2005-3 | SASCO 2003-3XS |
| LXS 2005-4 | SASCO 2003-6A |

| | |
|---|---|
| LXS 2005-6 | SASCO 2003-GEL1 |
| LXS 2005-8 | SASCO 2003-NP1 |
| LXS 2006-1 | SASCO 2003-S1 |
| LXS 2006-10N | SASCO 2003-S2 |
| LXS 2006-11 | SASCO 2004-10 |
| LXS 2006-12N | SASCO 2004-11XS |
| LXS 2006-13 | SASCO 2004-13 |
| LXS 2006-15 | SASCO 2004-15 |
| LXS 2006-17 | SASCO 2004-16XS |
| LXS 2006-19 | SASCO 2004-17XS |
| LXS 2006-20 | SASCO 2004-18H |
| LXS 2006-3 | SASCO 2004-19XS |
| LXS 2006-5 | SASCO 2004-20 |
| LXS 2006-7 | SASCO 2004-21XS |
| LXS 2006-8 | SASCO 2004-22 |
| LXS 2006-9 | SASCO 2004-23XS |
| LXS 2007-1 | SASCO 2004-2AC |
| LXS 2007-10H | SASCO 2004-4XS |
| LXS 2007-11 | SASCO 2004-6XS |
| LXS 2007-12N | SASCO 2004-7 |
| LXS 2007-14H | SASCO 2004-9XS |
| LXS 2007-15N | SASCO 2004-GEL1 |
| LXS 2007-16N | SASCO 2004-GEL2 |
| LXS 2007-17H | SASCO 2004-GEL3 |
| LXS 2007-18N | SASCO 2004-NP1 |
| LXS 2007-20N | SASCO 2004-S2 |
| LXS 2007-3 | SASCO 2004-S3 |
| LXS 2007-5H | SASCO 2004-S4 |
| LXS 2007-6 | SASCO 2005-1 |
| LXS 2007-7N | SASCO 2005-10 |
| LXS 2007-8H | SASCO 2005-11H |
| LXS 2007-9 | SASCO 2005-14 |
| RLT 2008-AH1 | SASCO 2005-15 |
| SAIL 2003-BC1 | SASCO 2005-17 |
| SAIL 2003-BC10 | SASCO 2005-2XS |
| SAIL 2003-BC11 | SASCO 2005-3 |
| SAIL 2003-BC12 | SASCO 2005-4XS |
| SAIL 2003-BC13 | SASCO 2005-5 |
| SAIL 2003-BC2 | SASCO 2005-7XS |
| SAIL 2003-BC3 | SASCO 2005-9XS |
| SAIL 2003-BC4 | SASCO 2005-GEL2 |
| SAIL 2003-BC5 | SASCO 2005-GEL3 |
| SAIL 2003-BC8 | SASCO 2005-GEL4 |
| SAIL 2003-BC9 | SASCO 2005-RF1 |

| | |
|---|---|
| SAIL 2004-1 | SASCO 2005-RF2 |
| SAIL 2004-10 | SASCO 2005-RF4 |
| SAIL 2004-2 | SASCO 2005-RF5 |
| SAIL 2004-3 | SASCO 2005-RF6 |
| SAIL 2004-4 | SASCO 2005-RF7 |
| SAIL 2004-5 | SASCO 2005-S1 |
| SAIL 2004-6 | SASCO 2005-S2 |
| SAIL 2004-8 | SASCO 2005-S3 |
| SAIL 2004-9 | SASCO 2005-S4 |
| SAIL 2005-1 | SASCO 2005-S5 |
| SAIL 2005-10 | SASCO 2005-S6 |
| SAIL 2005-11 | SASCO 2005-S7 |
| SAIL 2005-2 | SASCO 2005-SC1 |
| SAIL 2005-3 | SASCO 2006-BC2 |
| SAIL 2005-4 | SASCO 2006-BC3 |
| SAIL 2005-5 | SASCO 2006-BC4 |
| SAIL 2005-6 | SASCO 2006-BC6 |
| SAIL 2005-7 | SASCO 2006-GEL1 |
| SAIL 2005-8 | SASCO 2006-GEL2 |
| SAIL 2005-9 | SASCO 2006-GEL3 |
| SAIL 2005-HE3 | SASCO 2006-GEL4 |
| SAIL 2006-1 | SASCO 2006-RF1 |
| SAIL 2006-2 | SASCO 2006-RF2 |
| SAIL 2006-4 | SASCO 2006-RF3 |
| SAIL 2006-BNC3 | SASCO 2006-RF4 |
| SARM 2004-10 | SASCO 2006-S1 |
| SARM 2004-16 | SASCO 2006-S2 |
| SARM 2004-18 | SASCO 2006-S3 |
| SARM 2004-20 | SASCO 2006-S4 |
| SARM 2004-5 | SASCO 2006-Z |
| SARM 2004-9XS | SASCO 2007-BC1 |
| SARM 2005-11 | SASCO 2007-BC2 |
| SARM 2005-12 | SASCO 2007-BC3 |
| SARM 2005-15 | SASCO 2007-BC4 |
| SARM 2005-17 | SASCO 2007-BNC1 |
| SARM 2005-20 | SASCO 2007-GEL1 |
| SARM 2005-22 | SASCO 2007-GEL2 |
| SARM 2005-23 | SASCO 2007-MLN1 |
| SARM 2005-3XS | SASCO 2007-OSI |
| SARM 2005-6XS | SASCO 2007-RF1 |
| SARM 2005-8XS | SASCO 2007-TC1 |

###

6/26/2017   14 Institutional Investors in RMBS Issued by Lehman Announce Binding Offer by the Plan Administrator to the Lehman Estate than Estat…

08-13555-mg    Doc 55679    Filed 06/29/17    Entered 06/29/17 17:46:31    Main Document
Pg 260 of 366

**ABOUT GIBBS & BRUNS LLP**

Gibbs & Bruns LLP is a litigation boutique engaged in high-stakes business and commercial litigation.  The firm is renowned for its signature lean trial teams and representation of both plaintiffs and defendants in complex matters, including significant securities and institutional investor litigation, director and officer liability, contract disputes, fraud and fiduciary claims, energy litigation, construction litigation, trust and estate litigation, antitrust litigation, legal and professional malpractice, and partnership disputes.  For more information, visit **www.gibbsbruns.com.**

Related Professionals

- Robert J. Madden

- Kathy D. Patrick

- David Sheeren

© 2010, Gibbs & Bruns LLP, Houston, TX

# EXHIBIT 8



14 of 22 DOCUMENTS

Copyright 2017 SourceMedia, Inc.
All Rights Reserved



nationalmortgagenews.com

**April 3, 2017**

**SECTION:** Vol. 1 No. 1

**LENGTH:** 299  words

**HEADLINE:** Investors' group supports Lehman settlement offer on **RMBS**

**BYLINE:** Bonnie Sinnock

**BODY:**

Fourteen institutional investors represented by the law firm Gibbs & Bruns LLP are supporting the **Lehman Brothers** bankruptcy plan administrator's offer to settle certain securitized mortgage repurchase claims with securities' trustees.

The administrator would request that the court allow the trusts' $2.41 billion claim regardless of evidence presented as part of the binding offer, according to the law firm.

In return, the trustees would waive their right to appeal a bankruptcy court decision as long as the court determines a claim greater than $2 billion.

"Resolutions like this one have been transformative for the market and for investors," said Robert Madden, counsel for the institutional investors involved.

The many investor lawsuits related pre-crisis **RMBS** have taken several years to play out and both sides have gotten increasingly eager to cut through the considerable red tape that surrounds them. Issuers originally brought the private-label bonds involved in the settlement offer between 2002 and 2005.

The institutional investors who are parties to the agreement are AEGON USA Investment Management, BlackRock Financial Management Inc., Cascade Investment, the Federal Home Loan Bank of Atlanta, Goldman Sachs Asset

Investors' group supports Lehman settlement offer on RMBS nationalmortgagenews.com April 3, 2017

Management, Invesco Advisers Inc., Kore Advisors, Metropolitan Life Insurance Co., Pacific Investment Management Co., Sealink Designated Activity Co. through investment manager Neuberger Berman Europe Ltd., The TCW Group Inc., Thrivent Financial for Lutherans, Voya Investment Management and Western Asset Management Co.

Trustees for the 244 pre-crisis **RMBS** trusts involved will have until June 1 to accept the settlement. The offer calls for the court to determine the allowed amount of the repurchase claims submitted through a proceeding that would start in October.

**URL:** http://www.nationalmortgagenews.com/news/investors-group-supports-lehman-settlement-offer-on-**rmbs**

**LOAD-DATE:** April 3, 2017

# EXHIBIT 9

Dated:  April 21, 2017

**NOTICE PROVIDING FURTHER INFORMATION ABOUT THE PROPOSED RMBS TRUST SETTLEMENT AGREEMENT, DATED AS OF NOVEMBER 30, 2016, AND MODIFIED AS OF MARCH 17, 2017 (THE "<u>PROPOSED SETTLEMENT AGREEMENT</u>"), FROM LEHMAN BROTHERS HOLDINGS, INC. AND ALL AFFILIATED DEBTORS (THE "<u>LBHI DEBTORS</u>").**

**THE PROPOSED SETTLEMENT AGREEMENT MATERIALLY AFFECTS THE INTERESTS OF HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "<u>CERTIFICATEHOLDERS</u>") ISSUED BY THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS LISTED IN <u>EXHIBIT A</u> HERETO AND FURTHER IDENTIFIED BY CUSIP NUMBERS ON THE WEBSITE LOCATED AT <u>http://www.LBHIrmbssettlement.com</u> (THE "<u>RMBS TRUSTEES' WEBSITE</u>") AT THE TAB ENTITLED "LIST OF COVERED RMBS TRUSTS" (COLLECTIVELY, THE "<u>COVERED RMBS TRUSTS</u>" AND EACH A "<u>COVERED RMBS TRUST</u>"). [1] CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS SHOULD READ CAREFULLY THIS NOTICE AND THE MATERIALS REFERENCED HEREIN IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

> **NOTICE IS HEREBY GIVEN BY:**
>
> **Deutsche Bank National Trust Company**
> **TMI Trust Company, successor to Law Debenture Trust Company of New York**
> **U.S. Bank National Association**
> **Wilmington Trust Company and Wilmington Trust, National Association**

**EACH, IN ITS CAPACITY AS TRUSTEE, SEPARATE TRUSTEE, SUCCESSOR TRUSTEE, OR OTHER SIMILAR CAPACITIES OF THE COVERED RMBS TRUSTS (COLLECTIVELY, THE "<u>RMBS TRUSTEES</u>" AND EACH AN "<u>RMBS TRUSTEE</u>"), TO THE CERTIFICATEHOLDERS.**

**THIS NOTICE CONTAINS IMPORTANT INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE COVERED RMBS TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.**

This notice (the "<u>Notice</u>") is given to you by the RMBS Trustees under certain applicable Trust Agreements or other similar agreements governing the Covered RMBS Trusts

---

[1]    Any CUSIP numbers appearing in this Notice, Exhibit A hereto or on the RMBS Trustees' Website have been included solely for the convenience of the Certificateholders.  The RMBS Trustees assume no responsibility for the selection or use of such numbers and make no representations as to the correctness of the CUSIP numbers appearing herein or therein.

(the "Governing Agreements").  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Proposed Settlement Agreement.

**THE RMBS TRUSTEES' MARCH 20, 2017 NOTICE TO HOLDERS AND THE PROPOSED SETTLEMENT AGREEMENT**

In a prior notice to Certificateholders dated March 20, 2017 (the "March 20, 2017 Notice to Holders"), the RMBS Trustees informed Certificateholders that, on March 17, 2017, a group of fourteen (14) institutional investors represented by Gibbs and Bruns LLP (the "Institutional Investors") submitted to the RMBS Trustees a settlement offer from the LBHI Debtors (the "Settlement Offer") concerning the Covered Loan Claims and in the form of the Proposed Settlement Agreement.  The RMBS Trustees' March 20, 2017 Notice to Holders referenced certain terms of the Proposed Settlement Agreement; please refer to the Proposed Settlement Agreement itself for the full and complete terms.  A copy of the Proposed Settlement Agreement, together with a copy of the Institutional Investors' letter to the RMBS Trustees concerning the Proposed Settlement Agreement, is available at the RMBS Trustees' Website at the tab entitled "Certain Relevant Documents" (available at http://lbhirmbssettlement.com/Settlement_Agreement.pdf).  A copy of the March 20, 2017 Notice to Holders also is posted on the RMBS Trustees' Website at the tab entitled "Notices" (available at http://lbhirmbssettlement.com/notice.pdf).

Since the publication of the March 20, 2017 Notice to Holders, the RMBS Trustees have received questions relating to the Proposed Settlement Agreement.  The RMBS Trustees are sending this notice to provide additional information, including information that is intended to respond to those questions.

**CIRCUMSTANCES LEADING UP TO THE PROPOSED SETTLEMENT AGREEMENT**

On October 26, 2015, the Institutional Investors[2] and the LBHI Debtors informed the RMBS Trustees that they had reached an agreement (the "October 2015 Settlement Agreement") that they wanted to deliver to the RMBS Trustees for their consideration that, if accepted by the RMBS Trustees, would settle the claims asserted in the RMBS Trustees' proofs of claim against the LBHI Debtors.  The Institutional Investors and the LBHI Debtors agreed to share the October 2015 Settlement Agreement with the RMBS Trustees only if the RMBS Trustees agreed to keep the agreement confidential.  The RMBS Trustees agreed to keep it confidential and received a copy of the October 2015 Settlement Agreement.

Some of the material terms of the October 2015 Settlement Agreement, which the Institutional Investors and the LBHI Debtors had executed, included:

- the LBHI Debtors agreed to allow an unsecured Class 7 claim to settle the claims in the RMBS Trustees' proofs of claim for $2.44 billion in exchange for releases;

---

[2]     The Institutional Investors at that time comprised a group of fifteen (15) institutional investors who were represented then, as now, by Gibbs and Bruns LLP.

- the RMBS Trustees were not permitted to disclose the offer unless and until they accepted it;

- the $2.44 billion would be allocated based on each trust's estimated lifetime losses, except that estimated lifetime losses associated with Transferor Loans would be reduced by 99%; and

- the LBHI Debtors had the right to terminate the October 2015 Settlement Agreement if the RMBS Trustees opted out of the settlement as to a certain threshold of trusts.[3]

The RMBS Trustees worked with experienced counsel to consider the settlement offer and retained experts to advise the RMBS Trustees and their other experts: (i) the Honorable Anthony J. Carpinello (Ret.), a former Associate Justice of the New York State Supreme Court, Appellate Division, Third Department, to advise the RMBS Trustees and other experts as to issues relating to New York law; (ii) the Honorable Arthur Gonzalez (Ret.), the former Chief Judge for the United States Bankruptcy Court for the Southern District of New York, to advise the RMBS Trustees and other experts as to issues relating to bankruptcy law and process and the Federal Rules of Evidence; and (iii) Ronald Greenspan of FTI Consulting to serve as the "top-level" expert to advise the RMBS Trustees whether they should accept the settlement as to each applicable trust.

Between November 2015 and early February 2016, the RMBS Trustees worked with those experts to evaluate the October 2015 Settlement Agreement. In February 2016, the RMBS Trustees conveyed to the LBHI Debtors, based on preliminary work performed by experts, the number of trusts for which the RMBS Trustees might be advised to accept the settlement. Subsequently, the LBHI Debtors formally withdrew the October 2015 Settlement Agreement.

Beginning in the spring of 2016, the LBHI Debtors and the Institutional Investors participated in mediation. At the request of the mediator, the RMBS Trustees provided certain information to the mediator, on a confidential basis, to enable him to facilitate a revised settlement offer.

On November 30, 2016, the LBHI Debtors sent to the RMBS Trustees on a confidential basis a settlement agreement that the Institutional Investors and the LBHI Debtors had executed (the "November 2016 Settlement Agreement") for consideration by the RMBS Trustees. The November 2016 Settlement Agreement, if accepted by the RMBS Trustees, would settle the claims asserted in the RMBS Trustees' proofs of claim against the LBHI Debtors. The November 2016 Settlement Agreement included the following terms:

- the LBHI Debtors would file a motion with the Bankruptcy Court to estimate the RMBS Trustees' claims at $2.44 billion, if the RMBS Trustees would agree that their claims could be estimated by the Bankruptcy Court;

---

[3]     Pursuant to the terms of the October 2015 Settlement Agreement, the RMBS Trustees had the right to learn the opt-out threshold. Because the RMBS Trustees undertook to make the determinations whether to accept or reject the October 2015 Settlement Agreement on a trust-by-trust basis, they did not exercise their right to learn the opt-out threshold, as that threshold was not relevant to their trust-by-trust determinations.

- although the LBHI Debtors would argue that the estimation should be $2.44 billion, the RMBS Trustees would be permitted to argue that the Estimation should be whatever amount they believed was warranted;

- the LBHI Debtors and the RMBS Trustees would agree that the Bankruptcy Court's Estimation of the RMBS Trustees' claims would become the value of the Allowed Claim, and neither party could appeal the decision; and

- an expert selected by the RMBS Trustees would determine the allocation of the Allowed Claim among the accepting trusts.

The RMBS Trustees were not authorized to disclose the November 2016 Settlement Agreement to third parties without the LBHI Debtors' prior written consent.

As contemplated in the November 2016 Settlement Agreement, the RMBS Trustees requested that Duff & Phelps LLP ("Duff & Phelps"), the financial advisory firm retained by the RMBS Trustees in the Bankruptcy Proceeding to assist the RMBS Trustees with the Protocol, prepare a reasonable allocation methodology and schedule.  Based on its industry experience, familiarity with the loans at issue and the claims submitted in connection with the Protocol, Duff & Phelps provided the RMBS Trustees with an allocation methodology and schedule, which the RMBS Trustees sent to the Institutional Investors and the LBHI Debtors.  Neither the Institutional Investors nor the LBHI Debtors provided any substantive comments or changes to the Duff & Phelps allocation methodology and schedule.

On March 17, 2017, the Institutional Investors submitted to the RMBS Trustees the Proposed Settlement Agreement, which reflected the Duff & Phelps allocation methodology and schedule in Section 3.04 and Exhibit H with no substantive changes.  Following a February 22, 2017 decision of the United States District Court for the Southern District of New York affirming a decision of the U.S. Bankruptcy Court for the Southern District of New York expunging the RMBS Trustees' claims relating to Transferor Loans, the Proposed Settlement Agreement deleted from the November 2016 Settlement Agreement the resolution of the RMBS Trustees' claims involving Transferor Loans (and contemplated releases relating thereto) and, accordingly, reduced the amount that the LBHI Debtors would seek to estimate the Allowed Claim by $24 million, from $2.44 billion to $2.416 billion.  On March 24, 2017, the RMBS Trustees filed a notice of appeal of the District Court's decision to the Second Circuit.

The Institutional Investors and the LBHI Debtors, not the RMBS Trustees, negotiated the initial $2.44 billion amount and subsequently the $2.416 billion amount.  At the Estimation Proceeding, the RMBS Trustees intend to argue that the Allowed Claim for Covered Loan Claims should be set in an amount greater than $2.416 billion.

In addition, the Proposed Settlement Agreement contained the following modifications to the November 2016 Settlement Agreement that the RMBS Trustees had requested:

- the RMBS Trustees were permitted to disclose the Proposed Settlement Agreement to Certificateholders promptly after receipt and were given additional time to solicit Certificateholder feedback for their experts and themselves to consider before the Acceptance Date;

4

- although the LBHI Debtors are waiving their appellate rights under all circumstances, the RMBS Trustees may appeal if the Bankruptcy Court estimates the Covered Loan Claims at less than $2 billion;

- if the Bankruptcy Court estimates the Covered Loan Claims between $2 billion and $2.416 billion, the Allowed Claim would be set at $2.416 billion;

- the RMBS Trustees bargained for detailed procedures for the Estimation Proceeding that are memorialized in Exhibit G to the Proposed Settlement Agreement and are required to be approved by the Bankruptcy Court, including (i) that the Hearing (as defined in Exhibit G) shall be scheduled for at least 14 hearing days, or a total of 98 hours, on the record and (ii) the LBHI Debtors will be allotted 7 days (or a total of 49 hours) to present their case, including rebuttals, and 7 days (or a total of 49 hours) will be allotted to the RMBS Trustees; and

- the RMBS Trustees are not required to accept or reject the Proposed Settlement Agreement as to all Covered RMBS Trusts; rather, any RMBS Trustee (i) may accept the Proposed Settlement Agreement as to certain Covered RMBS Trusts and (ii) has the right, but not the obligation, to terminate the Proposed Settlement Agreement as to one or more of its Accepting Trusts in the event the applicable Accepting Trustee has been directed, before the 9019 Objection Deadline, to terminate the Proposed Settlement Agreement as to such Accepting Trust or Accepting Trusts in a manner acceptable to the Accepting Trustee, but only for the Accepting Trust or Accepting Trusts for which such a direction has been provided.

As stated in the RMBS Trustees' March 20, 2017 Notice to Holders, if the RMBS Trustees' rejection of the Settlement Offer as to Covered RMBS Trusts exceeds a threshold agreed upon by the Institutional Investors and the LBHI Debtors (but not disclosed in the Proposed Settlement Agreement), then the LBHI Debtors may terminate the Proposed Settlement Agreement. The RMBS Trustees do not know what threshold of opt-outs by Covered RMBS Trusts would give the LBHI Debtors the right to terminate the Proposed Settlement Agreement. As with the October 2015 Settlement Agreement, because the RMBS Trustees have undertaken to make the determinations whether to accept the Proposed Settlement Agreement on a trust-by-trust basis, they have not exercised their right to learn the opt-out threshold because it is not relevant to their trust-by-trust determinations.

Also as stated in the March 20, 2017 Notice to Holders, counsel for the RMBS Trustees retained the Honorable Judith Fitzgerald (Ret.), the former Chief Judge of the United States Bankruptcy Court for the Western District of Pennsylvania, to advise the RMBS Trustees on the reasonableness of the Proposed Settlement Agreement for each Covered RMBS Trust as a means for resolving the claims asserted by the RMBS Trustees against the LBHI Debtors.

ANY CERTIFICATEHOLDERS WHO WISH TO HAVE THEIR VIEWS CONCERNING WHETHER THE RMBS TRUSTEES SHOULD ACCEPT OR REJECT THE PROPOSED SETTLEMENT AGREEMENT FOR THEIR RELATED COVERED RMBS TRUST(S) TO BE CONSIDERED BY THE RMBS TRUSTEES AND/OR THEIR EXPERTS ARE REQUESTED TO CONTACT THE RMBS TRUSTEES IMMEDIATELY AND CERTAINLY NO LATER THAN MAY 5, 2017. **GIVEN THE IMPENDING DEADLINES,**

**THE RMBS TRUSTEES LIKELY WILL NOT BE IN A POSITION TO MEANINGFULLY CONSIDER, IF AT ALL, VIEWS OF CERTIFICATEHOLDERS OR OTHER INFORMATION THAT THEY RECEIVE AFTER MAY 5, 2017.** PLEASE COMMUNICATE WITH THE APPLICABLE RMBS TRUSTEE(S) USING THE CONTACT INFORMATION OF SUCH RMBS TRUSTEE AVAILABLE AT THE RMBS TRUSTEES' WEBSITE AT THE TAB ENTITLED "RMBS TRUSTEES' CONTACT INFORMATION" (AVAILABLE AT http://lbhirmbssettlement.com/trustee_contact.php).

As of the date of this Notice, none of the RMBS Trustees has made any final determination, on behalf of the Covered RMBS Trusts for which it serves as trustee, as to the reasonableness of, or the advisability of accepting, the Proposed Settlement Agreement. Although the RMBS Trustees are working together in their evaluation of the Proposed Settlement Agreement, each RMBS Trustee will assess the Proposed Settlement Agreement and make its own decision as to whether to accept or reject the Proposed Settlement Agreement on behalf of each Covered RMBS Trust for which it serves as trustee.

Certificateholders are encouraged to check the RMBS Trustees' Website regularly for updates that may impact particular Covered RMBS Trusts or groups of Covered RMBS Trusts.

**OTHER MATTERS**

This Notice references certain terms of the Proposed Settlement Agreement, the October 2015 Settlement Agreement and the November 2016 Settlement Agreement, respectively, and is not a complete summary or statement of the material terms thereof, of relevant law, or of relevant legal procedures. Certificateholders and other potentially interested persons are urged to review carefully the Proposed Settlement Agreement and to consider its implications, including without limitation the releases of the Covered Loan Claims and other actual or potential claims related to Covered Loans. The RMBS Trustees may send further notices with respect to the matters addressed herein and developments relating to the Settlement Offer, all of which will be made available at the RMBS Trustees' Website at the tab entitled "Notices" (available at http://lbhirmbssettlement.com/notice.php). You may also obtain any documents filed with the Court on the docket for the Chapter 11 Cases by logging on to PACER at https://www.pacer.gov (password required) or by visiting LBHI's claims agent website at http://www.lehman-docket.com (no password required).

For inquiries, or to furnish any direction pursuant to the Governing Agreements with respect to the matters discussed herein, Certificateholders are directed to contact the applicable RMBS Trustee using the contact information of such RMBS Trustee available at the RMBS Trustees' Website at the tab entitled "RMBS Trustees' Contact Information" (available at http://lbhirmbssettlement.com/trustee_contact.php). Certificateholders will be required to verify their holdings before receiving information from the applicable RMBS Trustee. Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

Certificateholders and other persons interested in the Covered RMBS Trusts should not rely on the RMBS Trustees, their counsel, experts or other advisors retained by the RMBS

6

Trustees, as their sole source of information.  Certificateholders and other potentially interested persons are urged to consult with their own legal and financial advisors.

Please note that this Notice is not intended and should not be construed as investment, accounting, financial, legal, tax or other advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees.  Each person or entity receiving this Notice should seek the advice of its own advisors in respect of all matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Receipt of this Notice should not be construed as evidence or acknowledgment of any requirement applicable to, or of any right or authority on the part of any recipient under the Governing Documents to direct, the matters addressed herein, or of any obligations on the part of any RMBS Trustee with respect thereto, and each RMBS Trustee expressly reserves all rights in determining appropriate actions and requirements concerning these matters.

Each of the RMBS Trustees expressly reserves all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities that might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

**Deutsche Bank National Trust Company**
**TMI Trust Company, successor to Law Debenture Trust Company of New York**
**U.S. Bank National Association**
**Wilmington Trust Company and Wilmington Trust, National Association**

## EXHIBIT A

## <u>Covered RMBS Trusts</u>

## EXHIBIT A

## TRUSTS

| No. | Trust Name |
|-----|------------|
| 1 | ARC 2002-BC10 |
| 2 | ARC 2002-BC8 |
| 3 | ARC 2002-BC9 |
| 4 | ARC 2004-1 |
| 5 | BNC 2006-1 |
| 6 | BNC 2006-2 |
| 7 | BNC 2007-1 |
| 8 | BNC 2007-2 |
| 9 | BNC 2007-3 |
| 10 | BNC 2007-4 |
| 11 | LABS 2004-1 |
| 12 | LABS 2007-1 |
| 13 | LMT 2005-1 |
| 14 | LMT 2005-2 |
| 15 | LMT 2005-3 |
| 16 | LMT 2006-1 |
| 17 | LMT 2006-2 |
| 18 | LMT 2006-4 |
| 19 | LMT 2006-8 |
| 20 | LMT 2006-9 |
| 21 | LMT 2007-1 |
| 22 | LMT 2007-10 |
| 23 | LMT 2007-2 |
| 24 | LMT 2007-3 |
| 25 | LMT 2007-4 |
| 26 | LMT 2007-5 |
| 27 | LMT 2007-6 |
| 28 | LMT 2007-7 |
| 29 | LMT 2007-8 |
| 30 | LMT 2007-9 |
| 31 | LMT 2008-2 |
| 32 | LMT 2008-6 |
| 33 | LXS 2005-1 |
| 34 | LXS 2005-10 |
| 35 | LXS 2005-2 |
| 36 | LXS 2005-3 |
| 37 | LXS 2005-4 |

| 38 | LXS 2005-6 |
| 39 | LXS 2005-8 |
| 40 | LXS 2006-1 |
| 41 | LXS 2006-10N |
| 42 | LXS 2006-11 |
| 43 | LXS 2006-12N |
| 44 | LXS 2006-13 |
| 45 | LXS 2006-15 |
| 46 | LXS 2006-17 |
| 47 | LXS 2006-19 |
| 48 | LXS 2006-20 |
| 49 | LXS 2006-3 |
| 50 | LXS 2006-5 |
| 51 | LXS 2006-7 |
| 52 | LXS 2006-8 |
| 53 | LXS 2006-9 |
| 54 | LXS 2007-1 |
| 55 | LXS 2007-10H |
| 56 | LXS 2007-11 |
| 57 | LXS 2007-12N |
| 58 | LXS 2007-14H |
| 59 | LXS 2007-15N |
| 60 | LXS 2007-16N |
| 61 | LXS 2007-17H |
| 62 | LXS 2007-18N |
| 63 | LXS 2007-20N |
| 64 | LXS 2007-3 |
| 65 | LXS 2007-5H |
| 66 | LXS 2007-6 |
| 67 | LXS 2007-7N |
| 68 | LXS 2007-8H |
| 69 | LXS 2007-9 |
| 70 | RLT 2008-AH1 |
| 71 | SAIL 2003-BC1 |
| 72 | SAIL 2003-BC10 |
| 73 | SAIL 2003-BC11 |
| 74 | SAIL 2003-BC12 |
| 75 | SAIL 2003-BC13 |
| 76 | SAIL 2003-BC2 |
| 77 | SAIL 2003-BC3 |
| 78 | SAIL 2003-BC4 |
| 79 | SAIL 2003-BC5 |
| 80 | SAIL 2003-BC8 |

| | |
|---|---|
| 81 | SAIL 2003-BC9 |
| 82 | SAIL 2004-1 |
| 83 | SAIL 2004-10 |
| 84 | SAIL 2004-2 |
| 85 | SAIL 2004-3 |
| 86 | SAIL 2004-4 |
| 87 | SAIL 2004-5 |
| 88 | SAIL 2004-6 |
| 89 | SAIL 2004-8 |
| 90 | SAIL 2004-9 |
| 91 | SAIL 2005-1 |
| 92 | SAIL 2005-10 |
| 93 | SAIL 2005-11 |
| 94 | SAIL 2005-2 |
| 95 | SAIL 2005-3 |
| 96 | SAIL 2005-4 |
| 97 | SAIL 2005-5 |
| 98 | SAIL 2005-6 |
| 99 | SAIL 2005-7 |
| 100 | SAIL 2005-8 |
| 101 | SAIL 2005-9 |
| 102 | SAIL 2005-HE3 |
| 103 | SAIL 2006-1 |
| 104 | SAIL 2006-2 |
| 105 | SAIL 2006-4 |
| 106 | SAIL 2006-BNC3 |
| 107 | SARM 2004-10 |
| 108 | SARM 2004-16 |
| 109 | SARM 2004-18 |
| 110 | SARM 2004-20 |
| 111 | SARM 2004-5 |
| 112 | SARM 2004-9XS |
| 113 | SARM 2005-11 |
| 114 | SARM 2005-12 |
| 115 | SARM 2005-15 |
| 116 | SARM 2005-17 |
| 117 | SARM 2005-20 |
| 118 | SARM 2005-22 |
| 119 | SARM 2005-23 |
| 120 | SARM 2005-3XS |
| 121 | SARM 2005-6XS |
| 122 | SARM 2005-8XS |
| 123 | SARM 2006-1 |

| | |
|---|---|
| 124 | SARM 2006-10 |
| 125 | SARM 2006-11 |
| 126 | SARM 2006-12 |
| 127 | SARM 2006-2 |
| 128 | SARM 2006-3 |
| 129 | SARM 2006-4 |
| 130 | SARM 2006-5 |
| 131 | SARM 2006-6 |
| 132 | SARM 2006-7 |
| 133 | SARM 2006-8 |
| 134 | SARM 2006-9 |
| 135 | SARM 2007-1 |
| 136 | SARM 2007-10 |
| 137 | SARM 2007-11 |
| 138 | SARM 2007-2 |
| 139 | SARM 2007-3 |
| 140 | SARM 2007-4 |
| 141 | SARM 2007-6 |
| 142 | SARM 2007-8 |
| 143 | SARM 2008-2 |
| 144 | SASCO 2003-12XS |
| 145 | SASCO 2003-15A |
| 146 | SASCO 2003-17A |
| 147 | SASCO 2003-18XS |
| 148 | SASCO 2003-25XS |
| 149 | SASCO 2003-26A |
| 150 | SASCO 2003-28XS |
| 151 | SASCO 2003-29 |
| 152 | SASCO 2003-30 |
| 153 | SASCO 2003-34A |
| 154 | SASCO 2003-35 |
| 155 | SASCO 2003-36XS |
| 156 | SASCO 2003-38 |
| 157 | SASCO 2003-39EX |
| 158 | SASCO 2003-3XS |
| 159 | SASCO 2003-6A |
| 160 | SASCO 2003-GEL1 |
| 161 | SASCO 2003-NP1 |
| 162 | SASCO 2003-S1 |
| 163 | SASCO 2003-S2 |
| 164 | SASCO 2004-10 |
| 165 | SASCO 2004-11XS |
| 166 | SASCO 2004-13 |

| | |
|---|---|
| 167 | SASCO 2004-15 |
| 168 | SASCO 2004-16XS |
| 169 | SASCO 2004-17XS |
| 170 | SASCO 2004-18H |
| 171 | SASCO 2004-19XS |
| 172 | SASCO 2004-20 |
| 173 | SASCO 2004-21XS |
| 174 | SASCO 2004-22 |
| 175 | SASCO 2004-23XS |
| 176 | SASCO 2004-2AC |
| 177 | SASCO 2004-4XS |
| 178 | SASCO 2004-6XS |
| 179 | SASCO 2004-7 |
| 180 | SASCO 2004-9XS |
| 181 | SASCO 2004-GEL1 |
| 182 | SASCO 2004-GEL2 |
| 183 | SASCO 2004-GEL3 |
| 184 | SASCO 2004-NP1 |
| 185 | SASCO 2004-S2 |
| 186 | SASCO 2004-S3 |
| 187 | SASCO 2004-S4 |
| 188 | SASCO 2005-1 |
| 189 | SASCO 2005-10 |
| 190 | SASCO 2005-11H |
| 191 | SASCO 2005-14 |
| 192 | SASCO 2005-15 |
| 193 | SASCO 2005-17 |
| 194 | SASCO 2005-2XS |
| 195 | SASCO 2005-3 |
| 196 | SASCO 2005-4XS |
| 197 | SASCO 2005-5 |
| 198 | SASCO 2005-7XS |
| 199 | SASCO 2005-9XS |
| 200 | SASCO 2005-GEL2 |
| 201 | SASCO 2005-GEL3 |
| 202 | SASCO 2005-GEL4 |
| 203 | SASCO 2005-RF1 |
| 204 | SASCO 2005-RF2 |
| 205 | SASCO 2005-RF4 |
| 206 | SASCO 2005-RF5 |
| 207 | SASCO 2005-RF6 |
| 208 | SASCO 2005-RF7 |
| 209 | SASCO 2005-S1 |

| 210 | SASCO 2005-S2 |
| 211 | SASCO 2005-S3 |
| 212 | SASCO 2005-S4 |
| 213 | SASCO 2005-S5 |
| 214 | SASCO 2005-S6 |
| 215 | SASCO 2005-S7 |
| 216 | SASCO 2005-SC1 |
| 217 | SASCO 2006-BC2 |
| 218 | SASCO 2006-BC3 |
| 219 | SASCO 2006-BC4 |
| 220 | SASCO 2006-BC6 |
| 221 | SASCO 2006-GEL1 |
| 222 | SASCO 2006-GEL2 |
| 223 | SASCO 2006-GEL3 |
| 224 | SASCO 2006-GEL4 |
| 225 | SASCO 2006-RF1 |
| 226 | SASCO 2006-RF2 |
| 227 | SASCO 2006-RF3 |
| 228 | SASCO 2006-RF4 |
| 229 | SASCO 2006-S1 |
| 230 | SASCO 2006-S2 |
| 231 | SASCO 2006-S3 |
| 232 | SASCO 2006-S4 |
| 233 | SASCO 2006-Z |
| 234 | SASCO 2007-BC1 |
| 235 | SASCO 2007-BC2 |
| 236 | SASCO 2007-BC3 |
| 237 | SASCO 2007-BC4 |
| 238 | SASCO 2007-BNC1 |
| 239 | SASCO 2007-GEL1 |
| 240 | SASCO 2007-GEL2 |
| 241 | SASCO 2007-MLN1 |
| 242 | SASCO 2007-OSI |
| 243 | SASCO 2007-RF1 |
| 244 | SASCO 2007-TC1 |

# EXHIBIT 10

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

> **The complete 9019 Motion and related exhibits (the "Motion") associated with this Notice can be found for review and downloaded, free of charge, at (i) the website of the Debtors' Claims and Noticing Agent, Epiq Bankruptcy Solutions, LLC ("Epiq") available at http://dm.epiq11.com/LBH (the Motion is located within Docket No. 55232) or (ii) the website of the RMBS Trustees' Noticing Agent, The Garden City Group ("GCG") available at http://lbhirmbssettlement.com/pdflib/Lehman_Brothers_Holdings_Inc_Motion.pdf.**
>
> **You may also request a copy of the Motion, free of charge, by directly contacting (i) Epiq at (646) 282-2400 or email at Lehman@epiqsystems.com or (ii) GCG at (855) 907-3115 or email at Questions@lbhirmbssettlement.com.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                )
In re                )    Chapter 11 Case No.
                )
Lehman Brothers Holdings Inc., et al.,  )    08-13555 (SCC)
                )
        Debtors.        )    Jointly Administered
                )
------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.
PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(A) FOR
ENTRY OF ORDER (A) APPROVING RMBS SETTLEMENT
AGREEMENT, (B) MAKING CERTAIN REQUIRED FINDINGS
REGARDING DECISION OF RMBS TRUSTEES AND LBHI DEBTORS
TO ENTER INTO RMBS SETTLEMENT AGREEMENT, (C)
SCHEDULING ESTIMATION PROCEEDING TO DETERMINE RMBS
CLAIMS AND APPROVING RELATED PROCEDURES
REGARDING <u>CONDUCT OF HEARING, AND (D) GRANTING RELATED
RELIEF</u>**

    **PLEASE TAKE NOTICE** that, on April 27, 2017 Lehman Brothers Holdings Inc. (the

"<u>Plan Administrator</u>"), as Plan Administrator under the *Modified Third Amended Joint Chapter

11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, on behalf of itself and the

other affiliated debtors in the above-captioned cases (collectively, the "LBHI Debtors") filed the

Motion of Lehman Brothers Holdings Inc. Pursuant To Fed. R. Bankr. P. 9019 And 11 U.S.C.

§ 105(a) For Entry Of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain

Required Findings Regarding Decision Of RMBS Trustees And LBHI Debtors To Enter Into

RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding To Determine RMBS

Claims And Approving Related Procedures Regarding Conduct Of Hearing, And (D) Granting

Related Relief (the "Motion").   Capitalized terms used but not defined herein shall have the

meanings given to them in the Motion.

PLEASE TAKE FURTHER NOTICE that a hearing will be held on the Motion before

the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States

Bankruptcy Court for the Southern District of New York, Courtroom 623, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court") on **July 6, 2017 at 10:00 a.m.
(prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion (including

approval of the Trustee Findings and the Debtors' Findings) must be made in writing, state with

particularity the grounds therefor, conform to the Federal Rules of Bankruptcy Procedure and the

Local Bankruptcy Rules for the Southern District of New York, be filed electronically in text

searchable portable document format (PDF) with the Court in accordance with General Order M-

399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the

Court), by registered users of the Court's case filing system and by all other parties in interest

(with a hard copy delivered directly to the Judge's Chambers), and be served in accordance with

General Order M-399, and upon (i) the chambers of the Honorable Shelley C. Chapman, One

Bowling Green, New York, New York 10004, Courtroom 23; (ii) Willkie Farr & Gallagher LLP,

2

787 Seventh Avenue, New York, New York 10019 (Attn: Paul V. Shalhoub, Esq. and Todd G. Cosenza, Esq.) and Rollin Braswell Fisher LLC, 8350 East Crescent Parkway, Suite 100, Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq. and Maritza D. Braswell, Esq.), attorneys for LBHI and certain of its affiliates; (iii) Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002 (Attn: Kathy Patrick, Esq. and Robert Madden, Esq.), attorneys for the Institutional Investors; (iv) Chapman & Cutler LLP, 111 West Monroe Street, Chicago, Illinois 60603 (Attn: Franklin H. Top III, Esq. and Scott A. Lewis, Esq.), Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178 (Attn: Michael S. Kraut, Esq.), Seward & Kissel LLP, 1 Battery Park Plaza, New York, New York 10004 (Attn: M. William Munno, Esq. and Daniel E. Guzman, Esq.), Alston & Bird LLP, 1201 West Peachtree Street, Suite 4900, Atlanta, Georgia 30309 (Attn: John C. Weitnauer, Esq.), Holwell Shuster & Goldberg LLP, 750 Seventh Avenue, 26th Floor, New York, New York 10019 (Attn: Michael S. Shuster, Esq.) and Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022 (Attn: Dennis Drebsky, Esq.), attorneys for the Trustees; and (v) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz, Esq.) so as to be actually filed and received by no later than **June 22, 2017 at 12:00 noon (EDT)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion may be granted without a hearing if no objection is timely filed and served as set forth above and in accordance with the order, dated June 17, 2010, implementing certain notice and case management procedures in these cases (Docket No. 9635) (the "Case Management Order").

3

Dated: April 27, 2017
New York, New York

/s/ Paul V. Shalhoub
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111

Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)
ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

# EXHIBIT 11

<u>EXECUTION VERSION</u>

## <u>RMBS TRUST SETTLEMENT AGREEMENT</u>

This RMBS Trust Settlement Agreement ("<u>Settlement Agreement</u>") is entered into as of November 30, 2016 (the "<u>Agreement Date</u>"), and modified as of March 17, 2017 (the "<u>Modification Date</u>"), by and among Lehman Brothers Holdings Inc. (the "<u>Plan Administrator</u>") and the other Debtors in the Bankruptcy Proceeding (as defined below) (collectively, the "<u>LBHI Debtors</u>") and the authorized Investment Advisors (as defined below) and Investors (as defined below) identified in the attached signature pages (collectively, the "<u>Institutional Investors</u>"); and, upon acceptance as described below, the Accepting Trustees (defined and set forth herein).  Each of the LBHI Debtors and the Institutional Investors may be referred to herein as an "<u>Initial Party</u>" and collectively as the "<u>Initial Parties</u>."  Upon acceptance by the Accepting Trustees, each of the Accepting Trustees and the Initial Parties may be referred to herein as a "<u>Party</u>" and collectively as the "<u>Parties</u>."

## <u>RECITALS</u>

WHEREAS, certain of the LBHI Debtors were the Seller, Sponsor, and/or Depositor for certain residential mortgage-backed securitizations (collectively, the "<u>RMBS</u>");

WHEREAS, certain of the LBHI Debtors are parties to certain applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the RMBS (the "<u>Governing Agreements</u>");

WHEREAS, pursuant to the Governing Agreements, certain of the LBHI Debtors have contributed or sold loans originated by various entities into the RMBS (the "<u>Mortgage Loans</u>");

WHEREAS, the LBHI Debtors commenced bankruptcy cases in the United States Bankruptcy Court for the Southern District of New York, styled or related to *In re Lehman Brothers Holdings Inc., et al.*, Chapter 11 Case No. 08-13555 (the "<u>Bankruptcy Proceeding</u>");

WHEREAS, certain trustees for the RMBS filed proofs of claim in the Bankruptcy Proceeding asserting claims arising out of, among other things, alleged breaches of representations and warranties concerning the Mortgage Loans by certain of the LBHI Debtors under the Governing Agreements;

WHEREAS, as of the Modification Date, the 244 RMBS identified on the attached <u>Exhibit A</u> (the "<u>Trusts</u>") have not been terminated and the proofs of claim filed by the trustees for such Trusts (the "<u>Trustees</u>") on behalf of and/or relating to such Trusts (the "<u>Proofs of Claim</u>") assert, among other things, claims on behalf of the Trusts;

WHEREAS, as of the Modification Date, the 16 RMBS identified on the attached <u>Exhibit B</u> (the "<u>Terminated Trusts</u>") were terminated and the proofs of claim filed by the then trustees for such Terminated Trusts on behalf of and/or related to such Trusts (the "<u>Terminated Trusts Proofs of Claim</u>") assert, among other things, claims on behalf of the Terminated Trusts;

WHEREAS, on December 29, 2014, the Court presiding over the Bankruptcy Proceeding entered an Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities (Docket No. 47569) (the "Protocol Order") setting forth a protocol (the "Protocol") for the review of mortgage loan files, the assertion of RMBS Claims (as defined in the Protocol Order) by the Trustees, the response by the LBHI Debtors to such claims, and a mechanism for resolving disputes regarding such claims;

WHEREAS, the LBHI Debtors dispute the validity of the Proofs of Claims and the RMBS Claims (collectively, the "Claims"), as well as the Terminated Trusts Proofs of Claim, and subject to the terms of this Settlement Agreement, waive no rights and preserve all of their defenses with respect to the Claims and the Terminated Trusts Proofs of Claim except as expressly stated herein;

WHEREAS, the Trustees maintain the validity of the Claims and, subject to the terms of this Settlement Agreement, waive no rights with respect to the Claims except as expressly stated herein;

WHEREAS, the Institutional Investors are represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and, through counsel, engaged in extensive arm's length and good faith settlement negotiations with the LBHI Debtors regarding the Claims and the Terminated Trusts Proofs of Claim that included the use of David Geronemus of JAMS, as mediator, and the exchange of confidential materials;

WHEREAS, pursuant to this Settlement Agreement, the Parties wish to provide for an efficient, cost-effective, and equitable mechanism for fully and finally resolving the disputes between the Trustees and the LBHI Debtors regarding the Claims relating to Covered Loans (defined below) (the "Covered Loan Claims");

WHEREAS, this Settlement Agreement shall be presented to the Trustees for their consideration and approval, upon which approval the Trustees shall become Accepting Trustees (as defined herein) and Parties to this Settlement Agreement as set forth herein; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Covered Loan Claims.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

ARTICLE I.  DEFINITIONS

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement

shall, with respect to any particular Trust, have the definition given to them in the Governing Agreements for that Trust.

1.01.    "Acceptance Date" means June 1, 2017, unless extended as provided herein.

1.02.    "Accepting Trustees" means the Trustees that expressly accept the Settlement Agreement pursuant to Section 2.03.

1.03.    "Accepting Trusts" means the Trusts for which an Accepting Trustee has accepted the Settlement Agreement pursuant to Section 2.03.

1.04.    "Allocable Share" means, for any Participating Trust, the share of the Net Allowed Claim allocable to that Trust, as set forth in Section 3.04.

1.05.    "Allocated Percentage" has the meaning set forth in Section 3.04.

1.06.    "Allowed Claim" has the meaning set forth in Section 3.01.

1.07.    "Bankruptcy Court" means the court presiding over the Bankruptcy Proceeding.

1.08.    "Covered Loans" shall mean (a) the Mortgage Loans identified as the "Covered Loans" in The RMBS Trustees' Motion to (i) Increase the Reserve to $12.143 Billion and (ii) Estimate and Allow Their Claims for Covered Loans at $12.143 Billion Pursuant to Section 502(c) of the Bankruptcy Code (ECF Doc. No. 46078), dated August 22, 2014, filed by the Trustees in the Bankruptcy Proceeding, and (b) the additional Mortgage Loans identified as "Covered Loans" in the Status Report of the RMBS Trustees with respect to Compliance with the Protocol and the Motion to Extend the Overall Claim File Cut-Off Date for Certain Loans under the Protocol Order and For Related Relief (ECF Doc. No. 52342).

1.09.    "District Court" means a United States District Court for the Southern District of New York.

1.10.    "Effective Date" shall mean the date of Final Court Approval.

1.11.    "Estimation" shall mean the estimation of the Covered Loan Claims under the Trusts, supported by legal and loan review professionals and expert analysis and analytics, pursuant to 11 U.S.C. § 502(c).

1.12.    "Estimation Proceeding" means an estimation proceeding, conducted by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c), in accordance with the procedures set forth in Exhibit G hereto, at which proceeding the Bankruptcy Court will estimate and assign a value to the Covered Loan Claims, which value will constitute the full and final Allowed Claim amount as provided herein.

1.13.    "Excluded Trust" has the meaning set forth in Section 3.02(a).

1.14.    "Expert" means the professional firm retained or to be retained by one or more of the Accepting Trustees to make the calculations required in connection with the allocation of the Net Allowed Claim pursuant to Section 3.04.

1.15.    "Final Court Approval" shall mean the later of the dates that the Trustee Findings Order and the order approving this Settlement Agreement (which may include the Trustee Findings Order) becomes a Final Order.

1.16.    "Final Order" shall mean an order or judgment of a court of competent jurisdiction that has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure (or any analogous rule applicable to such court); provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous rule applicable to such court) may be filed relating to such order shall not cause an order not to be a Final Order.

1.17.    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority).

1.18.    "Institutional Investors" shall mean the authorized Investment Advisors and Investors identified in the attached signature pages.

1.19.    "Investment Advisor" shall mean the following Institutional Investors: BlackRock Financial Management Inc.; Goldman Sachs Asset Management, L.P.; Invesco Advisers, Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Sealink Designated Activity Company, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; and Western Asset Management Company, and, for the avoidance of doubt, shall not include (i) any of the individual clients or funds whose assets are managed by such Investment Advisor or (ii) any affiliates of such Investment Advisor.

1.20.    "Investors" shall mean all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees, and/or transferees, and beneficial

holders of certificates, bonds or notes in the Trusts claiming rights through certificateholders, bondholders and noteholders in the Trusts, including but not limited to the Institutional Investors.

1.21.    "Liquidated Loans" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017 are not Non-Liquidated Loans, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.22.    "Net Allowed Claim" has the meaning set forth in Section 3.01.

1.23.    "Non-Liquidated Loans" means Covered Loans that, per information reported by the servicer or master servicer as of January 31, 2017, were performing to some extent under the applicable mortgage loan documents, loans that were in default but had yet to have been foreclosed upon, or loans that had been foreclosed upon but the real property that secures the repayment of the mortgage loan had not been sold and for which the final loss suffered by the trust has not been reported by the applicable servicer or master servicer, and for which an RMBS Claim was submitted under the Protocol and, as of January 31, 2017, had not been withdrawn.

1.24.    "Participating Trust" has the meaning set forth in Section 3.02(a).

1.25.    "Party in Interest" shall have the same meaning as the term "party in interest" is used in 11 U.S.C. 1109(b), and shall include any Investor.

1.26.    "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority.

1.27.    "Plan" shall mean the LBHI Debtors' third amended joint chapter 11 plan confirmed by the Bankruptcy Court on December 6, 2011 (Docket No. 23023).

1.28.    "Plan Payments" shall mean distributions under the Plan on account of the Net Allowed Claim.

1.29.    "Released Parties" shall mean: (i) any and all LBHI Debtors, including, without limitation, Lehman Brothers Holdings Inc., Structured Asset Securities Corporation, BNC Mortgage LLC, Finance America LLC, and LBHI Debtors' affiliates and subsidiaries identified on Exhibit C hereto, and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents; and (ii) Aurora Commercial Corp., f/k/a Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB, and Aurora Loan Services, LLC (collectively, "Aurora"), and their respective present and former directors, officers, employees, auditors, advisors (including financial advisors), legal counsel, representatives, and agents.

1.30.    "Required Tax Conclusions" shall mean, except as otherwise described in Subsection 1.30(v) below, all of the following U.S. federal income tax conclusions (or their substantive equivalents) for each Accepting Trust, or portion thereof, for which a timely, valid and continuing REMIC election (as defined in the Internal Revenue Code of 1986, as amended

(the "Internal Revenue Code") has been made, and remains in effect, in accordance with the applicable Governing Agreements (each, a "REMIC Trust"):

(i) none of (a) the execution of this Settlement Agreement, (b) the methodology for determining, and the right to receive, an Allocable Share of the Net Allowed Claim, or (c) the receipt of Plan Payments, will cause such REMIC Trust to fail to meet the requirements of Internal Revenue Code Section 860D(a)(4);

(ii) the receipt of Plan Payments by such REMIC Trust will be treated as payments received on qualified mortgages within the meaning of U.S. Treasury Regulation Section 1.860G-2(g)(1)(ii);

(iii) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement will not cause any regular interest in such REMIC Trust to fail to qualify as a "regular interest", as defined in Internal Revenue Code Section 860G(a)(1) and will not cause the sole class of residual interest in such REMIC Trust to fail to qualify as a "residual interest", as defined in Code section 860G(a)(2);

(iv) the receipt of Plan Payments by such REMIC Trust will not be treated as a "prohibited transaction" within the meaning of Internal Revenue Code Section 860F(a)(2) or as a contribution that is subject to the tax imposed under Internal Revenue Code Section 860G(d)(1); and

(v) in the case of a REMIC Opinion only, none of (a) the right to receive an Allocable Share of the Net Allowed Claim, (b) the receipt of Plan Payments or (c) the distribution of Plan Payments in accordance with the applicable Governing Agreements and the Settlement Agreement, will cause such REMIC Trust to fail to qualify as a REMIC as defined in Internal Revenue Code Section 860D.

1.31.   "REMIC Opinion" shall mean the opinion of tax counsel, reasonably acceptable to the LBHI Debtors and the Accepting Trustees, experienced in the U.S. federal income taxation of "real estate mortgage investment conduits," that concludes at a "will" level of certainty, subject to customary assumptions and exceptions and based on all of the relevant facts and circumstances, that a court of competent jurisdiction would agree and render a judgment on each of the Required Tax Conclusions.  For purposes of this Settlement Agreement, each of the following law firms shall be considered acceptable to the LBHI Debtors and the Accepting Trustees for purposes of rendering a REMIC Opinion: K&L Gates LLP; Cadwalader, Wickersham & Taft LLP; and Mayer Brown LLP.

1.32.   "RMBS Reserve" means the reserve maintained by the LBHI Debtors pursuant to that certain order of the Bankruptcy Court dated February 22, 2012 (Docket No. 25643).

1.33.   "Settlement" means the negotiated settlement set forth in this Settlement Agreement, including all terms and conditions thereof.

1.34.   "Transferor Loans" means the Mortgage Loans sold into, deposited into or otherwise conveyed into the Trusts that are not Covered Loans.

**EXECUTION VERSION**

1.35.  "<u>Transferor Trusts</u>" means all Trusts that contain solely Transferor Loans.

1.36.  "<u>Trustee Findings</u>" shall mean the findings of fact and conclusions of law set forth on <u>Exhibit F</u> annexed hereto

1.37.  "<u>Trustee Findings Order</u>" shall mean an order when entered by the District Court after considering certain proposed findings of fact and conclusions of law submitted by the Bankruptcy Court, or by a court of competent jurisdiction if the District Court declines to enter such order on the basis of the District Court's jurisdiction, containing, among other things, the Trustee Findings.

1.38.  "<u>Trustees</u>" shall mean U.S. Bank National Association, Law Debenture Trust Company of New York, Wilmington Trust Company, Wilmington Trust National Association, Deutsche Bank National Trust Company, in each case acting in their respective capacities as trustees, co-trustees, separate trustees and/or successor trustees of the applicable Trust(s).

## ARTICLE II.  <u>SETTLEMENT PROCESS</u>

2.01.  <u>Effective Date for the LBHI Debtors and Institutional Investors</u>.  This Settlement Agreement shall be binding and effective upon the LBHI Debtors (subject to Bankruptcy Court approval) and the Institutional Investors as of the Agreement Date and shall continue to be binding and irrevocable until: (i) such time as the LBHI Debtors or the Accepting Trustees shall exercise any right they may have to terminate the Settlement Agreement under Section 2.03(c) below; or (ii) the date Final Court Approval becomes legally impossible.  Promptly following the Modification Date, the LBHI Debtors shall request that the Bankruptcy Court schedule and hold a chambers conference at a time and date mutually agreeable to the Initial Parties and the Trustees so that the LBHI Debtors and the Institutional Investors may inform the Court of the existence and terms of this Settlement Agreement.  The LBHI Debtors and the Institutional Investors agree that, subject to acceptable confidentiality arrangements, counsel for the Trustees shall be informed of and entitled to attend such conference.  At that chambers conference, the Plan Administrator and the Trustees shall inform the Bankruptcy Court that they believe it is appropriate to suspend the Protocol until the earlier of the conclusion of the Estimation Hearing or the termination of this Settlement Agreement.

2.02.  <u>Presentation of Settlement to Trustees/Intervention</u>.

(a)  <u>Request Letter</u>.  This Settlement Agreement shall be presented to the Trustees for their review, evaluation, and acceptance within one (1) business day of the Modification Date as follows:  The Institutional Investors shall submit, through their counsel, a letter (in the form annexed hereto as <u>Exhibit D</u>) to each of the Trustees expressing their support for the settlement and requesting and urging that each enter into the Settlement Agreement.

(b)  <u>Intervention in Court Approval Process</u>.  Following the filing of the 9019 Motion (as defined in Section 2.03(a) below), the Institutional Investors shall jointly file a motion for leave to intervene (or a similar pleading) in the Bankruptcy Court (and, at the appropriate time, the District Court (or such other court of competent jurisdiction)  in connection with such court's consideration of the entry of the Trustee Findings Order), to

**EXECUTION VERSION**

evidence their support for the Settlement, the Settlement Agreement, the Trustee Findings Order, the entry of an order by the court barring Investors in the Participating Trusts from asserting claims against the Trustees for the Participating Trusts with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and Final Court Approval. Each of the Institutional Investors shall use its reasonable best efforts to prosecute the intervention, to support the Settlement, and to obtain Final Court Approval of the Settlement Agreement and entry of the Trustee Findings Order. The Institutional Investors' obligation to use reasonable best efforts shall continue until the earliest of (i) Final Court Approval, (ii) the date Final Court Approval becomes legally impossible, (iii) the date on which the LBHI Debtors or the Accepting Trustees terminate the Settlement Agreement pursuant to Section 2.03(c), below, or (iv) any material breach by the LBHI Debtors of the Settlement Agreement (which breach is not cured or waived within 90 days of written notice of such breach having been provided by a Party).

2.03.  Acceptance by Trustees/Final Court Approval.

(a)  Acceptance of Settlement Agreement/Notice. On or prior to the Acceptance Date, each Trustee shall provide written notice to the Institutional Investors and the LBHI Debtors accepting or rejecting the Settlement separately on behalf of each Trust and an executed signature page for this Settlement Agreement to the Institutional Investors and the LBHI Debtors, all in accordance with the notice provisions set forth in Section 6.17 hereof, subject to Sections 2.03(c) and 2.06 below; provided, however, if any Trust listed on Exhibit A is terminated after the Modification Date but before the date the LBHI Debtors commence Plan Payments on the Net Allowed Claim, the Trustee that was the trustee for such Trust shall provide written notice to the Institutional Investors and the LBHI Debtors of such fact and such trust shall also be considered a Terminated Trust.

Within 21 days after the Modification Date, the LBHI Debtors shall file a motion (the "Scheduling Motion") requesting that the Bankruptcy Court enter an order (1) approving a notice program with respect to its consideration of the 9019 Motion (as defined below), (2) setting a date by which all objections to the 9019 Motion must be filed and served (which deadline shall be at least twenty-one  (21) days after the Acceptance Date, the "9019 Objection Deadline"), and (3) setting the date of the hearing to consider approval of the 9019 Motion.

Within 21 days of the Bankruptcy Court order granting the Scheduling Motion, the LBHI Debtors shall file a motion with the Bankruptcy Court (which may include the Scheduling Motion, the "9019 Motion") requesting that the Bankruptcy Court enter an order (i) approving this Settlement Agreement and containing the Trustee Findings (which shall be submitted by the Bankruptcy Court to the District Court) and the Debtors' Findings (defined below), (ii) setting the date on which the Estimation Proceeding will begin, which date shall be no earlier than October 16, 2017; and (iii) providing that the Estimation Proceeding shall be conducted in accordance with the procedures set forth in Exhibit G hereto.

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the Accepting Trustees to all Investors and all financial guaranty institutions known to the Accepting Trustees to have an interest in the Trusts in the manner approved by the Bankruptcy Court.

Notice of the Settlement Agreement and the 9019 Motion shall be provided by the LBHI Debtors to those parties required to receive notice in the Bankruptcy Proceeding, and all known servicers and master servicers of loans in the Trusts, all known mortgage originators (including all known brokers, bulk sellers, and correspondents against whom the LBHI Debtors may have indemnity claims arising from the Settlement Agreement), and any other person who the LBHI Debtors shall conclude may have a claim or interest in the Trusts or the Settlement Agreement in the manner approved by the Bankruptcy Court.

Upon the Acceptance Date, this Settlement Agreement shall continue in effect for such Accepting Trustee(s) and the associated Trusts unless and until:  (i) the Bankruptcy Court has issued an order that has become a Final Order denying approval of the Settlement Agreement or declines to submit the Trustee Findings to the District Court; (ii) the District Court or, if the District Court declines to exercise jurisdiction, a different court of competent jurisdiction, has issued an order that has become a Final Order denying approval of the Settlement Agreement or entry of the Trustee Findings Order; (iii) the date on which obtaining Final Court Approval becomes legally impossible; or (iv) the Settlement Agreement is terminated in accordance with Section 2.03(c) below.

(b)    Best Efforts.  During the period during which Final Court Approval is being sought, the Accepting Trustees, the LBHI Debtors, and the Institutional Investors shall each be obligated to use their reasonable best efforts to obtain Final Court Approval of the Settlement and the entry of the Trustee Findings Order so long as there has been no material breach of this Settlement Agreement.  The Parties' obligation to use reasonable best efforts to obtain Final Court Approval shall continue in effect regardless of any intervening court decisions or regulatory actions issued after the Acceptance Date, or if any Party discovers facts that are additional to, inconsistent with, or different from those which they knew at the time they entered into this Settlement Agreement, until such time as Final Court Approval becomes legally impossible.

(c)    The LBHI Debtors' and the Accepting Trustees' Right to Terminate.  The LBHI Debtors and the Institutional Investors have entered into a confidential letter agreement that provides the LBHI Debtors the right to terminate this Settlement Agreement in the manner provided in clauses (i) and (ii) in the immediately following sentence (the "Confidential Letter Agreement") (the Trustees shall be entitled to know such confidential agreed-upon percentages provided they agree to hold such agreed-upon percentages in confidence, and the LBHI Debtors shall be entitled to disclose such percentages to the Bankruptcy Court and the District Court).

The LBHI Debtors shall have the right to terminate this Settlement Agreement in the event that (i) Trustees for a percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such

- 9 -

Trusts and the amount of losses on the Mortgage Loans in such Trusts, as of the Modification Date, have not accepted this Settlement Agreement by the Acceptance Date, (ii) an agreed-upon percentage (as agreed upon in the Confidential Letter Agreement) of Trusts that are not Transferor Trusts measured by the number of such Trusts and the amount of losses on the Mortgage Loans in such Trusts, are not included within Final Court Approval of the Settlement Agreement, (iii) (x) the REMIC Approval is not obtained by the date that is one year after the Trustee Findings Order becomes a Final Order or (y) the LBHI Debtors form the good faith belief that no REMIC Approval will take place, or (iv) the Bankruptcy Court does not include within the order approving this Settlement Agreement the findings of fact and conclusions of law set forth on <u>Exhibit I</u> hereto (the "<u>Debtors' Findings</u>").

An Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts (i) in the event that an Accepting Trust or Accepting Trusts are not included within Final Court Approval, but only for the Accepting Trust or Accepting Trusts that are not included within Final Court Approval, (ii) in the event the applicable Accepting Trustee has been directed, prior to the 9019 Objection Deadline, to terminate this Settlement Agreement as to such Accepting Trust or Accepting Trusts in a manner acceptable to the Accepting Trustee, but only for the Accepting Trust or Accepting Trusts for which such a direction has been provided, or (iii) the Bankruptcy Court does not include within the order approving this Settlement Agreement the proposed Trustee Findings for submission by the Bankruptcy Court to the District Court.

The LBHI Debtors shall have the right to terminate this Settlement Agreement, and an Accepting Trustee shall have the right to terminate this Settlement Agreement as to one or more of its Accepting Trusts, in the event that: (i) the Bankruptcy Court has not entered an order approving this Settlement Agreement (inclusive of the Debtors' Findings and the proposed Trustee Findings) by July 31, 2017; or (ii) the Bankruptcy Court does not agree that the Estimation Hearing will be conducted in accordance with the terms set forth in Exhibit G ████████████ REDACTED ██████████████████ ████████████████████.

The LBHI Debtors and the Accepting Trustees shall provide written notice to each other and the Institutional Investors of the exercise of their right to terminate this Settlement Agreement in accordance with the terms of this paragraph. The LBHI Debtors' and the Accepting Trustees' right to terminate this Settlement Agreement upon the occurrence of any of the events described in this paragraph shall be waived if not exercised, by providing notice as set forth in the preceding sentence, within 20 days following the occurrence of the applicable event.

2.04.    <u>Trustee Review</u>.  The Trustees shall have until the Acceptance Date to conduct an investigation of the Settlement Agreement and its terms.  The Trustees may conduct such diligence, may solicit input from Investors, and may retain experts to assist them as they deem necessary to inform themselves concerning the Settlement Agreement.

2.05.    <u>Effect of Termination</u>.  In the event that this Settlement Agreement is terminated

as provided for herein, the Settlement Agreement shall be null and void as to those Trusts for which it is terminated, and all pending claims filed by or on behalf of such Trusts shall be resolved pursuant to the Protocol Order**,** as amended by the Bankruptcy Court as appropriate in light of the suspension of the Protocol referred to in Section 2.03(a) herein and approved by the Bankruptcy Court, or in such other manner as the Bankruptcy Court shall direct.

2.06.   <u>REMIC Approval/Trustee Findings/Other Trustee Conditions</u>.  The Trustees may condition their acceptance of this Settlement Agreement upon:

(i) the District Court's approval of the Trustee Findings;

(ii) the Trustee Findings Order becoming a Final Order;

(iii) the receipt by the Accepting Trustees of the earlier of either:

(a) (a) A REMIC Opinion, in form and substance reasonably acceptable to the Accepting Trustees and LBHI Debtors, from legal counsel reasonably acceptable to the Accepting Trustees and the LBHI Debtors but retained by and at the expense of the LBHI Debtors, with respect to the REMIC Trusts that comprise the Accepting Trusts on behalf of which the Accepting Trustees (each acting as trustee, indenture trustee or separate trustee, as applicable) accepted the Settlement Agreement. The LBHI Debtors shall use their reasonable best efforts to obtain the REMIC Opinion for all REMIC Trusts that are, or are within, or that comprise, an Accepting Trust within 180 days of the Acceptance Date.

(b) A private letter ruling(s), or similar guidance, acceptable to the Parties, applicable to the REMIC Trusts that are, or are within, or that comprise, an Accepting Trust from the Internal Revenue Service containing the Required Tax Conclusions (the "REMIC Private Letter Ruling"). Only if, and after, (i) the LBHI Debtors notify the Accepting Trustees that it would not be possible or practicable for them to obtain an opinion of counsel as described in Section 2.06(iii)(a) or (ii) the Accepting Trustees determine that a REMIC Opinion delivered to them is not acceptable in form, content, or counsel providing the REMIC Opinion, the Accepting Trustees shall begin the process to cause requests for such letter ruling(s) to be submitted, if necessary, to the Internal Revenue Service as promptly as practicable, shall use reasonable best efforts to pursue such requests, and such requests may not be abandoned, unless an acceptable REMIC Opinion has been obtained, without the consent (which shall not unreasonably be withheld) of the LBHI Debtors and the Institutional Investors. In the event that the provisions of Section 3.06 of this Settlement Agreement are modified, the Accepting Trustees shall, if necessary, update their request(s) to the Internal Revenue Service to take account of such modifications. The LBHI Debtors shall use their reasonable best efforts to

**EXECUTION VERSION**

assist the Accepting Trustees' preparation and pursuit of the request for the rulings.

Receipt of the first to occur of either an acceptable REMIC Opinion or the REMIC Private Letter Ruling shall constitute the "REMIC Approval" as that term is used herein. The Parties acknowledge and agree that pursuit of the REMIC Approval shall not delay the commencement and conduct of the Estimation Proceeding, and such proceeding may take place and be completed while the applicable Parties pursue a REMIC Approval.

2.07 <u>Bar Order</u>. In connection with the entry of the Trustee Findings Order, the LBHI Debtors, the Accepting Trustees, and the Institutional Investors shall request the entry of an order barring Investors in the Accepting Trusts from asserting claims against the Accepting Trustees with respect to their evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, provided however that the entry of such a bar order is not a condition of Final Court Approval.

2.08. <u>LBHI Representations</u>. The LBHI Debtors represent to the Trustees that each of the entities identified on <u>Exhibit C</u> hereto is an affiliate or subsidiary of one or more of the LBHI Debtors.


ARTICLE III. <u>SETTLEMENT TERMS</u>

3.01. <u>Settlement Consideration and Payment</u>.

The Settlement consideration shall consist of an allowed Class 7 General Unsecured claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc. in an amount to be determined by the Bankruptcy Court in the Estimation Proceeding (the "<u>Allowed Claim</u>"), *plus* interest thereon to the extent provided by Section 8.4 of the Plan, *less* the Legal Fees (as defined and determined in accordance with the attorneys' fee provision in Section 6.05) (the "<u>Net Allowed Claim</u>"). In accordance with the allocation methodology in Section 3.04, each Participating Trust shall be awarded its Allocable Share of the Net Allowed Claim. Distributions on account of the Allocable Shares of the Net Allowed Claim shall be made by the LBHI Debtors in accordance with, and on the periodic distribution dates contained in, the Plan (the "<u>Plan Payments</u>"), following the Final Expert Calculation, as defined in Section 3.04 below, and receipt of the REMIC Approval.

Unless otherwise directed in writing by the applicable Accepting Trustee prior to the making of Distributions on account of the Allocable Shares of the Net Allowed Claim, the LBHI Debtors shall make all such Distributions to the applicable Accepting Trustee for the Participating Trusts.

The LBHI Debtors shall have no responsibility for the maintenance or distribution of amounts paid to the Accepting Trustees on account of the Net Allowed Claim.

To the extent that any Accepting Trustee is the party responsible for distributing

**EXECUTION VERSION**

payments for a given Trust under the applicable Governing Agreement(s), that Accepting Trustee shall use its reasonable best efforts to distribute the amounts received from the LBHI Debtors on account of the Allocable Shares of the Net Allowed Claim promptly.

Notwithstanding the foregoing, to the extent that any Accepting Trustee or other party responsible for calculating or distributing Plan Payments for a given Trust forms a good-faith belief that guidance from a court is necessary or appropriate for resolving ambiguities or disputes concerning the distribution of Plan Payments, the Accepting Trustee or other party responsible for calculating or distributing such Plan Payments shall have the right to seek guidance from a court of competent jurisdiction before distributing those amounts.  Any decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments under this Settlement Agreement or under the Plan.

3.02    The Estimation Proceeding.

(a)    The LBHI Debtors shall include in the 9019 Motion a request seeking Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts pursuant to 11 U.S.C. § 502(c) (the "Estimation Motion").  In the Estimation Proceeding, the LBHI Debtors shall seek Estimation of the Covered Loan Claims arising under or related to the Accepting Trusts, for purposes of setting the amount of the Allowed Claim under Section 3.01 herein, at a total amount of $2,416,000,000.00 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), without prejudice to the rights of the LBHI Debtors to argue in furtherance of such estimation that an amount different from $2.416 billion is correct, reasonable, or legally and factually supportable (provided, however, that (x) if all Trusts are not Accepting Trusts, (y) if any Accepting Trust is not included within Final Court Approval, or (z) if any Accepting Trust is not included within the Estimation and Estimation Proceeding (whether because it has become a Terminated Trust or for any other reason) (the Trusts listed in clauses (x), (y) and (z), the "Excluded Trusts"), the Parties agree that the $2.416 billion will be reduced by an amount equal to $2.416 billion multiplied by the sum of the Initial Allocated Percentages (as defined in Section 3.04 below) of the Excluded Trusts).  A "Participating Trust" is any Accepting Trust that is not an Excluded Trust.).

(b)    The Accepting Trustees shall agree and consent to the Estimation Motion solely to the extent of agreeing to estimation of the Covered Loan Claims of the Participating Trusts pursuant to 11 U.S.C. § 502(c) pursuant to this Settlement Agreement.  The Accepting Trustees shall be entitled to seek estimation of the Covered Loan Claims of the Participating Trusts in the Estimation Proceeding at whatever sum they choose.

(c)    The LBHI Debtors and the Accepting Trustees agree that, except as provided below in Section 3.02(c)(ii), the Bankruptcy Court shall not be required to make findings of fact or conclusions of law when determining the Allowed Claim, and the Net Allowed Claim amount decided by the Bankruptcy Court as a result of the Estimation Proceeding, shall be final, binding, not subject to appeal or reconsideration, and shall be conclusive of the LBHI Debtors' liability to the Participating Trusts or in any way related to the  Covered Loan Claims of the Participating Trusts; provided however, that:

(i) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set between $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) and $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS), the Allowed Claim shall be set, and deemed to be set, for all purposes with respect to the Covered Loan Claims of the Participating Trusts as $2,416,000,000 (TWO BILLION, FOUR HUNDRED SIXTEEN MILLION AND 00/100 DOLLARS) (provided, however, if there are any Excluded Trusts, the Parties agree that the $2 billion and the $2.416 billion will be reduced by an amount equal to the $2 billion and the $2.416 billion multiplied by the sum of the Initial Allocated Percentages of the Excluded Trusts)**;** and

(ii) to the extent that the Bankruptcy Court decides that the Allowed Claim should be set at an amount less than $2,000,000,000 (TWO BILLION AND 00/100 DOLLARS) (reduced by an amount equal to the $2 billion multiplied by the sum of the Initial Allocated Percentages of any Excluded Trusts), the Bankruptcy Court shall make findings of fact and conclusions of law when determining the Allowed Claim, and the Accepting Trustees retain, and do not waive, any right to appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim) (provided, however, if any Accepting Trusts become Excluded Trusts after the Court sets the Allowed Claim, the Parties agree that the amount determined in a Final Order by the Bankruptcy Court or, if applicable, an appellate Court, will be reduced by an amount equal to such amount multiplied by the sum of the Initial Allocated Percentages of those Excluded Trusts)..

For the avoidance of doubt, under no circumstances may the LBHI Debtors appeal the Bankruptcy Court's decision in which it sets the amount of the Allowed Claim.

3.03.    <u>Release of Claims</u>.  For and in consideration of the allowance of the Allowed Claim and the other agreements and consideration provided herein, the Participating Trusts, the Accepting Trustees for the Participating Trusts, and any and all persons claiming by, through, or on behalf of such Participating Trusts (including any Investors claiming derivatively for any such trust) and any and all agents or appointees acting on behalf of the Accepting Trustees (collectively, the "<u>Releasors</u>"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of the Released Parties, as of the Effective Date, for any and all claims (as defined in section 101 of the Bankruptcy Code) that were asserted, or that could have been asserted, in the Covered Loan Claims filed or asserted in the Bankruptcy Proceeding or in the Protocol by the Accepting Trustees on behalf of the Participating Trusts (collectively, all such claims being defined as the "<u>Trust Released Claims</u>"); *provided, however*, that the Participating Trusts' Allocable Shares and any claims of any Trust arising out of or relating to Transferor Loans are not released, waived or discharged by operation of this Settlement Agreement and are not a Trust Released Claim.  Upon Final Court Approval:  (a) each of the Claims filed or asserted by the Accepting Trustees on behalf of or related to the Participating Trusts shall be allowed as provided herein for Covered Loan Claims and otherwise shall be disallowed and expunged only with respect to Covered Loan Claims; (b) the LBHI Debtors shall no longer be required to maintain any amounts in the RMBS Reserve on account of the Trust Released Claims; and (c) the Allocable Shares shall be conclusive of the Debtors' liability relating to the Covered Loan Claims of the Participating Trusts.  Except as provided herein, no

- 14 -

**EXECUTION VERSION**

distributions from the LBHI Debtors shall be required on account of the Trust Released Claims. For the avoidance of doubt, nothing in this Section 3.03 is intended to address claims related to Trusts that are not Participating Trusts or claims arising out of or related to Transferor Loans.

3.04 <u>Allocation Formula</u>.  The Net Allowed Claim shall be allocated amongst the relevant trusts by the Accepting Trustees by calculating for each such trust its "Allocable Share" of the Net Allowed Claim as described below, pursuant to the binding determination of the Expert who will perform any calculations required.  To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("<u>Loan Groups</u>") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts solely for purposes of the allocation methodologies set forth below.  The Accepting Trustees may fully and conclusively rely on the Expert's determinations and calculations without any obligation to independently re-verify the same.

The allocated percentage for any given Trust (the "<u>Allocated Percentage</u>") shall be (a) the dollar amount of the claims asserted pursuant to the Protocol by the relevant trust as determined by the Expert, *divided by* (b) the dollar amount of claims asserted pursuant to the Protocol by the relevant trusts as determined by the Expert, expressed as a percentage.  Attached hereto as <u>Exhibit H</u> is a list of the Allocated Percentages for each Trust (assuming that each Trust becomes a Participating Trust) (for purposes of this Agreement such allocated percentages shall be deemed the "<u>Initial Allocated Percentages</u>").

For purposes of determining the dollar amounts used in <u>Exhibit H</u>, the Expert has used the following methodology. For all Liquidated Loans, the Expert used total dollar amount of the loss on each such loan that was the subject of an RMBS Claim that was reported to the Trustee by the applicable servicer or master servicer as of January 31, 2017.  For all Non-Liquidated Loans the Expert has used the Purchase Price, including the impact of any balance modifications, of each such loan as of January 31, 2017 *less* the market value of such loan as of January 31, 2017 using the Andrew Davidson & Co.'s LoanKinetics model.

In the event that all Trusts become Accepting Trusts and no Trusts become Excluded Trusts, the Allocated Percentage for each Trust will be the same as set forth on <u>Exhibit H</u>. However, in the event that any Trust does not become an Accepting Trust or any Trust becomes an Excluded Trust, the Allocated Percentage will be recalculated in accordance with the methodology described above with only the following changes: the dollar amount of claims asserted under the Protocol of any Trust that is not a Participating Trust will be set at zero.

For any Participating Trust, the Allocable Share will be equal to the Net Allowed Claim multiplied by Allocated Percentage. The Expert shall calculate the Allocable Share for each Participating Trust within thirty (30) days of the date the Net Allowed Claim has been determined by the Bankruptcy Court (the "<u>Final Expert Calculation</u>" and the "<u>Final Allocated Percentages</u>"). In performing the Final Expert Calculation, the Expert shall be permitted to make such adjustments as are necessary to ensure that the effects of rounding do not cause the sum of the Allocable Shares to exceed the amount of the Net Allowed Claim.

3.05.   Plan Administrator's Allocation.

The Parties agree (a) that the allocation set forth in Section 3.04 above shall in no way be binding on the LBHI Debtors or affect the LBHI Debtors' right to account for and allocate the Allowed Claim in accordance with their own analyses of the Claims and in the best interests of the Estate, and (b) the Bankruptcy Court order approving this Settlement Agreement shall expressly preserve such right; provided, that, the LBHI Debtors' account and allocation of the Allowed Claim shall in no way affect the allowance and priority of such claims or manner in which the Allowed Claim is allocated among the Trusts as provided in Section 3.04 above.

3.06   Subsequent Recovery/Repayment of Principal.

(a)   Plan Payments on each Participating Trust's Allocable Share shall be deposited into the related Trust's collection or distribution account pursuant to the terms of the Governing Agreements, for further distribution in accordance with the distribution provisions of the Governing Agreements as though such Plan Payments are a subsequent recovery available for distribution on the related distribution date; and further provided that if the Governing Agreement for such a Trust does not include the concept of "subsequent recovery," Plan Payments to such Trust shall be distributed as though they are unscheduled principal available for distribution on the related distribution date), subject to Section 3.04. If distribution of Plan Payments to a trust would become payable to a class of REMIC residual interests, whether on the initial distribution of such Plan Payments or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Trust, such Plan Payment shall be maintained in the distribution account, and the party responsible for distributing payments under the Governing Agreements of a given trust shall distribute it on the next distribution date according to the provisions of this Subsection 3.06(a).

(b)   In connection with the distribution of Plan Payments to Participating Trusts pursuant to Subsection 3.06(a), to the extent permitted under each Trust's Governing Agreement, the applicable Accepting Trustee, or the party responsible for calculating certificate balances pursuant to the terms of the Governing Agreements of a given Participating Trust, will apply the amount of the Plan Payment for that Trust to increase the balance of securities within that Trust (other than any class of REMIC residual interests) *in the reverse order of* previously allocated losses, as though such Plan Payment was a subsequent recovery; and further provided that if the Governing Agreement for a particular Participating Trust does not include the concept of "subsequent recovery," to the extent permitted under each Trust's Governing Agreement, the securities for such Trust shall be increased, *in reverse order of* previously allocated losses, as though the Plan Payment was distributed as though it was unscheduled principal), but in each case by not more than the amount of such losses previously allocated to that class of securities pursuant to the Governing Agreements. Investors shall not be entitled to payment in respect of interest on the amount of such increases for any interest accrual period relating to the distribution date on which such increase occurs or any prior distribution date. For the avoidance of doubt, this Subsection 3.06(b) is intended only to increase the balances of the related classes of securities, as provided for herein, and shall not affect the distribution of Plan Payments on the Net Allowed Claim

- 16 -

provided for in Subsection 3.06(a).

(c)    Should the party responsible for calculating distributions and/or making distributions to Investors under the terms of the Governing Agreements of a given Trust or a court determine that the payment procedure described in Sections 3.06(a) and 3.06(b) may not conform to the terms of the Governing Agreement for a particular Accepting Trust, the distribution described above shall be modified to distribute that Trust's Plan Payments as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the party responsible for calculating distributions under the terms of the Governing Agreements of a given Trust or a court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

(d) Notwithstanding anything to the contrary set forth in this Section 3.06 or any other provision of this Settlement Agreement, each Accepting Trustee and/or the party responsible for such implementation shall be entitled, prior to implementing the forgoing Subsections 3.06(a)-(c), to seek further guidance from a court of competent jurisdiction regarding the applicable procedures under the Governing Agreements related to the distribution of Plan Payments or determining the balance of securities potentially affected by distribution of the Plan Payments.  Any such Accepting Trustee's or other implementing party's decision to seek such guidance shall have no effect on, and shall not change, the timing of Plan Payments to the Accepting Trustees under this Settlement Agreement or under the Plan.


3.07.    No Alteration of Trigger Dates or Similar Credit Support Measurement Dates. Neither the Net Allowed Claim nor any allocation or application thereof pursuant to Section 3.04, nor the receipt of any Plan Payments pursuant to Section 3.06 shall be deemed to reverse the occurrence of any transaction-related trigger in any Participating Trust.

3.08.    Responsibility for Distribution of Plan Payments.  An Accepting Trustee (to the extent it is the party responsible for making distributions under the applicable Governing Agreement(s)), or the party responsible for making distributions under the applicable Governing Agreement(s) if it is not the Accepting Trustee, shall administer distribution of the Plan Payments under the terms of the Governing Agreements.  No party (including the LBHI Debtors and the Institutional Investors), other than the party responsible for calculating and causing the distributions under the applicable Governing Agreements, shall have any liability to Accepting Trustees, the Participating Trusts, any Investor in such Trusts, or any other Person in connection with the determination of the Net Allowed Claim, the Allocated Percentages, the Final Expert Determination or the administration or distribution of the Plan Payments, including under any indemnification obligation that exists under any Governing Agreement.

3.09.    Expert Calculation of Final Allocated Percentages to be Conclusive.  In the absence of bad faith or manifest error, the Expert's calculations of the Final Allocated Percentages and each Participating Trust's Allocable Share shall be binding on all Participating Trusts.

3.10.    Full Satisfaction.  The determination and allowance of the Net Allowed Claim

under the Plan pursuant to this Settlement Agreement shall be in full and final satisfaction of any and all Covered Loan Claims of the Participating Trusts (but not the Excluded Trusts or the Transferor Trusts) and, except for Plan Payments, there shall be no further recovery against the LBHI Debtors by a Participating Trust on account of any of the Trust Released Claims.

3.11.    Release of RMBS Reserve.  Notwithstanding anything to the contrary contained herein, following the Bankruptcy Court's determination of the Allowed Claim if the REMIC Approval has not occurred on or before October 31, 2018, the Accepting Trustees, solely in their capacity as trustee for Participating Trusts and not on behalf of any other Trusts, shall not oppose any request or motion by the LBHI Debtors to reduce the RMBS Reserve to the amount necessary to make distributions under the Plan on account of the Allocable Shares.

ARTICLE IV.  CLAIMS NOT RELEASED

4.01.    Financial-Guaranty Provider Rights and Obligations.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Trust has rights or obligations wholly independent of the rights or obligations of the Trustee of or Investors in such Trust, the Trustees, or the Trusts, the releases and waivers in Article III are not intended to and shall not release such rights, if any, provided, however, that the LBHI Debtors reserve all rights with respect to the position they may take on whether the resolution of the Covered Loan Claims pursuant to this Settlement Agreement shall offset or otherwise bar any claims asserted by a third party guarantor or financial-guaranty provider.

4.02.    Mortgage Originator and Third Party Guarantor Claims.  The Parties do not release or waive any rights or claims against any party that is not a Released Party, including: (a) repurchase and indemnity claims any Trustee or any Released Party may have against any mortgage originator (including brokers, bulk sellers, and correspondents), and (b) claims against any third party guarantor or financial-guaranty provider with respect to the Trusts, if any.

4.03.    Settlement Agreement Rights.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement.

4.04.    Disclosure Claims/Bar Date.  The releases and waivers in Article III do not include any direct individual claims for securities fraud or other alleged disclosure violations ("Disclosure Claims") that an Investor may seek to assert based upon such Investor's purchase or sale of securities; provided, however, that the question of the extent to which any payment made or benefit conferred pursuant to this Settlement Agreement may constitute an offset or credit against, or a reduction in the gross amount of, any such claim shall be determined in the action in which such claim is raised, and, notwithstanding any other provision in this Settlement Agreement, the Parties reserve all rights with respect to the position they may take on that question in those actions and acknowledge that all other Persons similarly reserve such rights. Notwithstanding the foregoing, the Investment Advisers for themselves, and not for any individual clients or funds they advise, state that they do not own any Disclosure Claims and hereby irrevocably, fully and finally release any Disclosure Claims to the extent they own such claims personally, and such Investment Advisers agree not to assist or advise any of the individual clients or funds that they advise in bringing any Disclosure Claim except to the extent legally required.   Nothing in this provision shall bar any individual client, or any fund advised

by an Investment Adviser, from asserting its own Disclosure Claims on its own behalf.  Nothing in this Settlement Agreement is intended or shall be read to alter, modify, or amend any order of the Bankruptcy Court, any provision in the Plan, or provision of law concerning the assertion or timeliness of any Disclosure Claims or any other claims.

4.05.   <u>Repurchase Obligations of Unaffiliated Mortgage Sellers</u>.  Claims against parties other than the Released Parties related to the origination and/or sale of Mortgage Loans sold or securitized by the LBHI Debtors are not released.  To the extent that the LBHI Debtors, or any successors or assigns of the LBHI Debtors, elect to pursue any third-parties, unaffiliated with the LBHI Debtors, for recovery based on the Trust Released Claims related to the origination and/or sale of Covered Loans, the Accepting Trustees agree to use commercially reasonable efforts to assist such pursuit (provided that the LBHI Debtors shall reimburse the Accepting Trustees in full, in cash, for their reasonable and necessary fees, costs and expenses in providing such assistance); *provided, however*, neither the Accepting Trustees nor their counsel, advisors or experts shall be obligated to disclose or provide to the LBHI Debtors any work product or attorney-client privileged information.

4.06.   <u>Obligations of Master Servicers and Servicers.</u>  This Settlement Agreement shall not release or affect any obligation of any Master Servicer or Servicer not a debtor in the Bankruptcy Proceeding, including without limitation Aurora, under any of the Governing Agreements that pertain to the servicing of Mortgage Loans held by the Trusts.

4.07.   <u>Correction of Certain Document Defects</u>.  The releases and waivers in this agreement do not release any party from any existing obligation under the Governing Agreements to provide and/or procure, as applicable, documents needed to cure document defects, provided however, that any claims for monetary damages against the LBHI Debtors based upon the failure to cure such defects shall be included with the Trust Released Claims, and further provided that nothing in this Section 4.07 is intended to or shall be interpreted to create new obligations on the part of any party.

4.07.   <u>Inter-Debtor Claims</u>.  This Settlement Agreement shall not waive, release or discharge any claims, liabilities, rights, obligations or other relationships held by one or more LBHI Debtors against one or more other LBHI Debtors.

ARTICLE V.   <u>RELEASE OF UNKNOWN CLAIMS</u>

5.01.   Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM

OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
HER SETTLEMENT WITH THE DEBTOR."

5.02.    The Parties acknowledge that inclusion of the provisions of this Article V to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

## ARTICLE VI.  MISCELLANEOUS PROVISIONS

6.01.    Terminated Trusts.  Effective as of the Modification Date, the Accepting Trustees agree that they will not pursue any claims of, or on behalf of, any Terminated Trust, but make no representations as to whether any assignees of claims relating to Terminated Trusts will pursue or not pursue such claims.  For the avoidance of doubt, the definition of "Trust" does not include any "Terminated Trusts."  The Accepting Trustees agree that, as of the Modification Date, they will no longer pursue any rights with respect to any of the Terminated Trusts Proofs of Claim, and acknowledge that they have no standing to oppose and will not oppose any objection filed by the LBHI Debtors to the Terminated Trusts Proofs of Claim.

6.02.    Holdings.  Each of the Institutional Investors shall continue to hold securities issued by at least one of the Accepting Trusts sufficient to support its individual standing to prosecute any intervention in any proceeding seeking entry of the Trustee Findings Order (the "Required Holdings").  Such maintenance of Required Holdings shall continue until the earliest of:  (i) the date on which Final Court Approval is obtained; (ii) such time as Final Court Approval becomes legally impossible; or (iii) any material breach of the Settlement Agreement by the LBHI Debtors or any Accepting Trustee, which breach is not cured or waived within ninety (90) days of written notice of such breach having been provided by a party to the Settlement Agreement; provided, however, that continued holding is not required if prohibited by law, regulation, contract, or fiduciary obligations.  The requirements of this Section 6.02 shall be met if any investor, fund, or entity included within the definition of that Institutional Investor maintains holdings in compliance with this Settlement Agreement.  For the avoidance of doubt, other than as set forth above and/or as otherwise required by federal or state securities laws, this Settlement Agreement shall not restrict the right of any Institutional Investor to sell or exchange any security issued by a Trust free and clear of any encumbrance.  No Trustee shall be required to provide any oversight with respect to the Institutional Investors' compliance with this Section 6.02.  The Parties agree that the aggregate amounts of securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings of each Institutional Investor shall remain confidential, subject to review only by the LBHI Debtors and the Trustees unless required by law, regulation, or process.

6.03.    No Inconsistent Directions.  Except for providing the Request Letter, the Institutional Investors agree that between the date hereof and the Effective Date, with respect to the securities issued by the Trusts, they will not, individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or join with any other Investors or Trustees to cause the Trustees to enforce (or seek derivatively to enforce) any Claims for any Trust.  Nothing in this Settlement Agreement shall restrict the ability of, or require, any Trustee to demand that any other Investor who seeks to direct the Trustee regarding the Settlement must post the indemnity or bond, if any, required or permitted by the Governing Agreements for the applicable Trust.

**EXECUTION VERSION**

6.04.   No Amendments to Governing Agreements.  The Parties agree that this Settlement Agreement reflects a compromise of disputed claims and is not intended to, and shall not be argued or deemed to constitute, an amendment of any term of any Governing Agreement; provided, however, that compliance with this Settlement Agreement and its Exhibits, including the provisions relating to Plan Payments, shall be deemed compliance with the applicable Governing Agreements and no Party or Investor shall make any subsequent claim to the contrary.

6.05.   Legal Fees.  As payment of the attorneys' fees for counsel to the Institutional Investors for its work relating to the Settlement, Gibbs & Bruns shall be allocated, without conveyance to the Accepting Trusts, 4.75% of the first $2,416,000,000 of the Allowed Claim (the "Legal Fees") by the Plan Administrator, without the requirement of submitting any form of estate retention or fee application, as an allowed Class 7 General Unsecured Claim in the Bankruptcy Proceeding against Lehman Brothers Holdings Inc.  Distributions under the Plan on account of the Legal Fees shall be made at such times as distributions are made on account of the Allowed Claim in accordance with, and on the periodic distribution dates contained in, the Plan.

6.06.   Voluntary Agreement.  Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress.  This Settlement Agreement is a settlement of disputed matters.

6.07.   No Admission of Breach or Wrongdoing.  The LBHI Debtors have denied and continue to deny any breach, fault, liability, or wrongdoing.  This denial includes, but is not limited to, allegations of breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which any LBHI Debtor was the Seller, Sponsor, Servicer, or Depositor.  Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the LBHI Debtors with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the LBHI Debtors have or could have asserted.  No statements made by any Party to this Settlement Agreement in support of the Settlement or the Trustee Findings Order shall be admissible in any other proceeding for any purpose.

6.08.   Concerning the Trustees.  The provisions of this Settlement Agreement shall not affect the rights and obligations of the Trustees under the applicable Governing Agreements, which shall equally apply to each and every such Trustee's rights and obligations under the Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to imply that any Trustee owes any greater duties under the Governing Agreements than it would otherwise owe under those agreements.

6.09.   Counterparts.  This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement.  Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as

delivery of the original signature page to this Settlement Agreement.

6.10.    <u>Joint Drafting</u>.  Following the Modification Date, this Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

6.11.    <u>Entire Agreement</u>.  This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties, at the relevant point in time, or their duly appointed agents.  All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement.

6.12.    <u>Specific Performance</u>.  It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief as a remedy for any such breach.  The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

6.13.    <u>Authority</u>.  Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

6.14.    <u>No Obligation to Amend</u>.  No Party shall be under any obligation to participate in the amendment of any term of any Governing Agreement and shall not have any liability to any other Party or Person in connection with any amendment to any term of any Governing Agreement that any Party or other Person determines is necessary to implement the terms of this Settlement Agreement.

6.15.    <u>No Third Party Beneficiaries</u>.  There are no third party beneficiaries of this Settlement Agreement.

6.16.    <u>Headings</u>.  The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

6.17.    <u>Notices</u>.  All notices or demands given or made by one Party to another Party relating to this Settlement Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission, and shall be deemed to be given for purposes of this Settlement Agreement on the earlier of the date of actual receipt or three days after the deposit thereof in the mail or the electronic transmission of the message.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

<u>EXECUTION VERSION</u>

To:   Institutional Investors
c/o Kathy Patrick
Gibbs & Bruns LLP
1100 Louisiana
Suite 5300
Houston, TX 77002
Tel: 713-650-8805
Email: kpatrick@gibbsbruns.com

To:   The LBHI Debtors
c/o Paul Shalhoub
c/o Todd Cosenza
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-728-8000
Email: pshalhoub@willkie.com
        tcosenza@willkie.com

c/o Michael Rollin
c/o Maritza Dominguez Braswell
Rollin Braswell Fisher LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Tel: 303-945-7415
Email: mrollin@RBF.Law
        mbraswell@RBF.Law

To:   The Accepting Trustees, at such addresses identified in writing by the applicable Accepting Trustee to the other Parties.

6.18.   <u>Disputes and Bankruptcy Court Approval</u>.  This Settlement Agreement, and any disputes arising under or in connection with this Settlement Agreement, are to be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof.  Except as otherwise provided in this Settlement Agreement, each of the Parties hereto consents to the exclusive jurisdiction of the Bankruptcy Court to hear and determine any dispute regarding the interpretation or enforcement of this Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. Thereafter, each of the Parties hereto consents to the non-exclusive jurisdiction of the federal and state courts of New York with respect to such matters.

6.19.   <u>Press Statements</u>.  In the event the Parties agree to make this Settlement Agreement public, the Parties shall agree in advance on the text of a permissible disclosure concerning this Settlement Agreement, which shall be factual and non-disparaging.  The Parties agree that any subsequent press statements concerning this Settlement Agreement also shall be factual and non-disparaging.  At any time on or after the Modification Date, each Trustee may provide notice of this Settlement Agreement and its terms publicly and/or to such present and

former Investors of the Trusts and other persons, including all financial guaranty institutions and securities administrators known to the Trustees to have an interest in the Trusts, as such Trustee determines, in its sole discretion, is necessary or appropriate.

     6.20.   <u>Fiduciary Obligations</u>.  Nothing in this Settlement Agreement shall be construed to require any Party to breach any investment management agreement or fiduciary obligation to comply with this Settlement Agreement.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

**EXECUTION VERSION**

IN WITNESS WHEREOF, each Party by its duly authorized representative has executed this Settlement Agreement as of the date first written above:

Lehman Brothers Holdings Inc., as Plan
Administrator for Lehman Brothers Holding Inc.
and the other LBHI Debtors

By: _____

Name: _____

Title: _____

Gibbs & Bruns, LLP,
counsel to, and authorized signatory for:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,
Cascade Investment, L.L.C.,
Federal Home Loan Bank of Atlanta,
Goldman Sachs Asset Management, L.P.,
Invesco Advisers, Inc.,
Kore Advisors, L.P.,
Metropolitan Life Insurance Company,
Pacific Investment Management Company, LLC,
Sealink Designated Activity Company, through its investment manager
        Neuberger Berman Europe Limited
The TCW Group, Inc., on behalf of itself and its subsidiaries
Thrivent Financial for Lutherans,
Voya Investment Management LLC, and
Western Asset Management Company.

By: _____

Name:   Robert Madden _____

Title:   Partner _____

**EXECUTION VERSION**

ACCEPTED AND AGREED for the Accepting Trusts attached to this signature page for which the Accepting Trustee acts as Trustee, subject in all instances to the conditions and termination rights set forth in the Settlement Agreement, including, without limitation, Final Court Approval and the conditions and termination rights set forth in Sections 2.03 and 2.06 of the Settlement Agreement.

Accepting Trustee: U.S. Bank National Association, solely as trustee

Signature:

Name:          Brad Zwetzig

Title:           Vice President

Date:           June 1, 2017

Notices:       Brad Zwetzig
               U.S. Bank Global Corporate Trust Services
               190 S. LaSalle Street
               Chicago, Illinois, 60603
               Tel: (312) 332-6576
               Email: brad.zwetzig@usbank.com

With a copy to:

               Michael S. Kraut
               Morgan, Lewis & Bockius LLP
               101 Park Avenue
               New York, New York, 10178-0060
               Tel: (212) 309-6927
               Email: mkraut@morganlewis.com

**EXECUTION VERSION**

## U.S. BANK ACCEPTING TRUSTS

| | |
|----|----------------|
| 1 | BNC 2006-1 |
| 2 | BNC 2006-2 |
| 3 | BNC 2007-1 |
| 4 | BNC 2007-2 |
| 5 | LABS 2004-1 |
| 6 | LMT 2005-1 |
| 7 | LMT 2005-2 |
| 8 | LMT 2005-3 |
| 9 | LMT 2006-2 |
| 10 | LMT 2006-8 |
| 11 | LMT 2007-10 |
| 12 | LMT 2007-2 |
| 13 | LMT 2007-3 |
| 14 | LMT 2007-6 |
| 15 | LMT 2007-7 |
| 16 | LMT 2007-8 |
| 17 | LXS 2005-2 |
| 18 | LXS 2005-4 |
| 19 | LXS 2006-10N |
| 20 | LXS 2006-11 |
| 21 | LXS 2006-12N |
| 22 | LXS 2006-15 |
| 23 | LXS 2006-19 |
| 24 | LXS 2006-20 |
| 25 | LXS 2006-3 |
| 26 | LXS 2006-8 |
| 27 | LXS 2007-1 |
| 28 | LXS 2007-10H |
| 29 | LXS 2007-12N |
| 30 | LXS 2007-14H |
| 31 | LXS 2007-15N |
| 32 | LXS 2007-16N |
| 33 | LXS 2007-17H |
| 34 | LXS 2007-18N |
| 35 | LXS 2007-20N |
| 36 | LXS 2007-3 |
| 37 | LXS 2007-5H |
| 38 | LXS 2007-6 |
| 39 | LXS 2007-7N |
| 40 | LXS 2007-8H |

| 41 | LXS 2007-9 |
| 42 | RLT 2008-AH1 |
| 43 | SAIL 2003-BC1 |
| 44 | SAIL 2003-BC10 |
| 45 | SAIL 2003-BC11 |
| 46 | SAIL 2003-BC13 |
| 47 | SAIL 2003-BC2 |
| 48 | SAIL 2003-BC5 |
| 49 | SAIL 2003-BC8 |
| 50 | SAIL 2003-BC9 |
| 51 | SAIL 2004-10 |
| 52 | SAIL 2004-2 |
| 53 | SAIL 2004-3 |
| 54 | SAIL 2004-5 |
| 55 | SAIL 2004-6 |
| 56 | SAIL 2004-8 |
| 57 | SAIL 2004-9 |
| 58 | SAIL 2005-1 |
| 59 | SAIL 2005-10 |
| 60 | SAIL 2005-11 |
| 61 | SAIL 2005-2 |
| 62 | SAIL 2005-3 |
| 63 | SAIL 2005-4 |
| 64 | SAIL 2005-5 |
| 65 | SAIL 2005-6 |
| 66 | SAIL 2005-7 |
| 67 | SAIL 2005-8 |
| 68 | SAIL 2005-9 |
| 69 | SAIL 2005-HE3 |
| 70 | SAIL 2006-1 |
| 71 | SAIL 2006-2 |
| 72 | SAIL 2006-4 |
| 73 | SAIL 2006-BNC3 |
| 74 | SARM 2005-22 |
| 75 | SARM 2005-23 |
| 76 | SARM 2005-6XS |
| 77 | SARM 2005-8XS |
| 78 | SARM 2006-1 |
| 79 | SARM 2006-10 |
| 80 | SARM 2006-11 |
| 81 | SARM 2006-12 |
| 82 | SARM 2006-2 |
| 83 | SARM 2006-3 |
| 84 | SARM 2006-4 |
| 85 | SARM 2006-5 |

| 86 | SARM 2006-6 |
|---|---|
| 87 | SARM 2006-7 |
| 88 | SARM 2006-8 |
| 89 | SARM 2006-9 |
| 90 | SARM 2007-10 |
| 91 | SARM 2007-8 |
| 92 | SARM 2008-2 |
| 93 | SASCO 2003-25XS |
| 94 | SASCO 2003-39EX |
| 95 | SASCO 2003-GEL1 |
| 96 | SASCO 2003-NP1 |
| 97 | SASCO 2004-10 |
| 98 | SASCO 2004-11XS |
| 99 | SASCO 2004-13 |
| 100 | SASCO 2004-17XS |
| 101 | SASCO 2004-19XS |
| 102 | SASCO 2004-20 |
| 103 | SASCO 2004-21XS |
| 104 | SASCO 2004-2AC |
| 105 | SASCO 2004-6XS |
| 106 | SASCO 2004-7 |
| 107 | SASCO 2004-9XS |
| 108 | SASCO 2004-GEL1 |
| 109 | SASCO 2004-GEL2 |
| 110 | SASCO 2004-GEL3 |
| 111 | SASCO 2004-NP1 |
| 112 | SASCO 2004-S2 |
| 113 | SASCO 2004-S3 |
| 114 | SASCO 2004-S4 |
| 115 | SASCO 2005-14 |
| 116 | SASCO 2005-3 |
| 117 | SASCO 2005-7XS |
| 118 | SASCO 2005-GEL2 |
| 119 | SASCO 2005-GEL3 |
| 120 | SASCO 2005-GEL4 |
| 121 | SASCO 2005-RF1 |
| 122 | SASCO 2005-RF2 |
| 123 | SASCO 2005-RF4 |
| 124 | SASCO 2005-RF5 |
| 125 | SASCO 2005-RF6 |
| 126 | SASCO 2005-RF7 |
| 127 | SASCO 2005-S1 |
| 128 | SASCO 2005-S2 |
| 129 | SASCO 2005-S3 |
| 130 | SASCO 2005-S4 |

U.S. Bank Accepting Trusts – Page 3 of 4

| 131 | SASCO 2005-S5 |
| 132 | SASCO 2005-SC1 |
| 133 | SASCO 2006-BC2 |
| 134 | SASCO 2006-BC3 |
| 135 | SASCO 2006-BC4 |
| 136 | SASCO 2006-BC6 |
| 137 | SASCO 2006-GEL1 |
| 138 | SASCO 2006-GEL2 |
| 139 | SASCO 2006-GEL3 |
| 140 | SASCO 2006-GEL4 |
| 141 | SASCO 2006-RF2 |
| 142 | SASCO 2006-RF3 |
| 143 | SASCO 2006-RF4 |
| 144 | SASCO 2006-S1 |
| 145 | SASCO 2006-Z |
| 146 | SASCO 2007-BC2 |
| 147 | SASCO 2007-BC3 |
| 148 | SASCO 2007-BC4 |
| 149 | SASCO 2007-BNC1 |
| 150 | SASCO 2007-GEL1 |
| 151 | SASCO 2007-GEL2 |
| 152 | SASCO 2007-TC1 |

**EXECUTION VERSION**

ACCEPTED AND AGREED for the Accepting Trusts attached to this signature page for which the Accepting Trustee acts as Trustee, subject in all instances to the conditions and termination rights set forth in the Settlement Agreement, including, without limitation, Final Court Approval and the conditions and termination rights set forth in Sections 2.03 and 2.06 of the Settlement Agreement.

Accepting Trustee: TMI Trust Company, Successor to Law Debenture Trust Company of New York, solely as separate trustee

Signature:

Name:        Jane Strobel

Title:         Vice President

Date:         June 1, 2017

Notices:      Jane Strobel
             TMI Trust Company
             1100 Abernathy Road NE, Suite 480
             Atlanta, GA 30328-5634
             Tel: (678) 221-5920
             Email: jstrobel@tmico.com

With a copy to:

       M. William Munno
       Seward & Kissel LLP
       One Battery Park Plaza
       New York, New York, 10004
       Tel: (212) 574-1587
       Email: munno@sewkis.com

**EXECUTION VERSION**

**TMI TRUST COMPANY ACCEPTING TRUSTS**

| | |
|---|---|
| 1 | ARC 2002-BC8 |
| 2 | ARC 2002-BC9 |
| 3 | ARC 2002-BC10 |
| 4 | BNC 2007-4 |
| 5 | LABS 2007-1 |
| 6 | LMT 2006-9 |
| 7 | LMT 2007-1 |
| 8 | LMT 2007-4 |
| 9 | LMT 2007-5 |
| 10 | LMT 2007-9 |
| 11 | LMT 2008-2 |
| 12 | LMT 2008-6 |
| 13 | SAIL 2003-BC3 |
| 14 | SAIL 2003-BC4 |
| 15 | SAIL 2003-BC12 |
| 16 | SARM 2004-5 |
| 17 | SARM 2004-9XS |
| 18 | SARM 2004-10 |
| 19 | SARM 2004-16 |
| 20 | SARM 2004-18 |
| 21 | SARM 2004-20 |
| 22 | SARM 2005-11 |
| 23 | SARM 2005-12 |
| 24 | SARM 2005-15 |
| 25 | SARM 2005-17 |
| 26 | SARM 2005-20 |
| 27 | SARM 2007-1 |
| 28 | SARM 2007-2 |
| 29 | SARM 2007-3 |
| 30 | SARM 2007-4 |
| 31 | SARM 2007-6 |
| 32 | SARM 2007-11 |
| 33 | SASCO 2003-6A |
| 34 | SASCO 2003-15A |
| 35 | SASCO 2003-17A |
| 36 | SASCO 2003-26A |
| 37 | SASCO 2003-34A |
| 38 | SASCO 2003-S2 |

| 39 | SASCO 2005-S6 |
|----|---------------|
| 40 | SASCO 2005-S7 |
| 41 | SASCO 2007-BC1 |
| 42 | SASCO 2007-MLN1 |
| 43 | SASCO 2007-OSI |

**EXECUTION VERSION**

ACCEPTED AND AGREED for the Accepting Trusts attached to this signature page for which the Accepting Trustee acts as trustee, subject in all instances to the conditions and termination rights set forth in the Settlement Agreement, including, without limitation, Final Court Approval and the conditions and termination rights set forth in Sections 2.03 and 2.06 of the Settlement Agreement.

Accepting Trustee: Wilmington Trust, National Association, solely as trustee

Signature:

Name:
      Roseline K. Maney
      Administrative Vice President

Title:

Date:      June 1, 2017

Notices:
      1100 North Market Street
      Wilmington, DE  19890

Accepting Trustee: Wilmington Trust Company, solely as trustee

Signature:

Name:
      Roseline K. Maney
      Administrative Vice President

Title:

Date:      June 1, 2017

Notices:
      1100 North Market Street
      Wilmington, DE  19890

Both with a copy to:

      Jason Solomon
      Alston & Bird LLP
      101 South Tryon Street, Suite 4000
      Charlotte, North Carolina 28280
      Tel: (704) 444-1295
      Email: jason.solomon@alston.com

**WILMINGTON TRUST, NATIONAL ASSOCIATION ACCEPTING TRUSTS**

BNCMT 2007-3
LMT 2006-1
LMT 2006-4
LXS 2005-1
LXS 2005-3
LXS 2005-6
LXS 2005-8
LXS 2005-10
LXS 2006-1
LXS 2006-5
LXS 2006-7
LXS 2006-9
LXS 2006-13
LXS 2006-17
LXS 2007-11
SARM 2005-3XS
SASCO 2003-S1
SASCO 2004-18H
SASCO 2004-23XS
SASCO 2005-9XS
SASCO 2005-10
SASCO 2005-15
SASCO 2005-17
SASCO 2006-S2
SASCO 2006-S3
SASCO 2006-S4

**WILMINGTON TRUST COMPANY ACCEPTING TRUSTS**

SASCO 2003-3XS
SASCO 2003-12XS
SASCO 2003-18XS
SASCO 2003-28XS
SASCO 2003-29
SASCO 2003-30
SASCO 2003-35
SASCO 2003-36XS
SASCO 2004-4XS
SASCO 2004-15
SASCO 2004-16XS

SASCO 2004-22
SASCO 2005-1
SASCO 2005-2XS
SASCO 2005-4XS
SASCO 2005-5

**EXECUTION VERSION**

ACCEPTED AND AGREED for the Accepting Trust identified below for which the Accepting Trustee acts as Trustee, subject in all instances to the conditions and termination rights set forth in the Settlement Agreement, including, without limitation, Final Court Approval and the conditions and termination rights set forth in Sections 2.03 and 2.06 of the Settlement Agreement:

Accepting Trustee:  Deutsche Bank National Trust Company, solely as Trustee of the
    Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates Series 2004-1

Signature:    _____

Name:        Marion Hogan

Title:        Assistant Vice President

Date:        June 1, 2017

Notices:     Marion Hogan
             Deutsche Bank National Trust Company
             1761 East St. Andrew Place
             Santa Ana CA 92705
             Tel:  (714) 247-6282
             Email:  marion.c.hogan@db.com


With a copy to:

             Amanda D. Darwin
             Nixon Peabody LLP
             100 Summer Street
             Boston, MA  02110-2131
             Tel:  (617) 345-1042
             Email:  adarwin@nixonpeabody.com

**<u>EXECUTION VERSION</u>**

**DEUTSCHE BANK NATIONAL TRUST COMPANY**
**ACCEPTING TRUSTS**

**SAIL 2004-1**

## EXHIBIT A

## TRUSTS

| No. | Trust Name |
|-----|------------|
| 1 | ARC 2002-BC10 |
| 2 | ARC 2002-BC8 |
| 3 | ARC 2002-BC9 |
| 4 | ARC 2004-1 |
| 5 | BNC 2006-1 |
| 6 | BNC 2006-2 |
| 7 | BNC 2007-1 |
| 8 | BNC 2007-2 |
| 9 | BNC 2007-3 |
| 10 | BNC 2007-4 |
| 11 | LABS 2004-1 |
| 12 | LABS 2007-1 |
| 13 | LMT 2005-1 |
| 14 | LMT 2005-2 |
| 15 | LMT 2005-3 |
| 16 | LMT 2006-1 |
| 17 | LMT 2006-2 |
| 18 | LMT 2006-4 |
| 19 | LMT 2006-8 |
| 20 | LMT 2006-9 |
| 21 | LMT 2007-1 |
| 22 | LMT 2007-10 |
| 23 | LMT 2007-2 |
| 24 | LMT 2007-3 |
| 25 | LMT 2007-4 |
| 26 | LMT 2007-5 |
| 27 | LMT 2007-6 |
| 28 | LMT 2007-7 |
| 29 | LMT 2007-8 |
| 30 | LMT 2007-9 |
| 31 | LMT 2008-2 |
| 32 | LMT 2008-6 |
| 33 | LXS 2005-1 |
| 34 | LXS 2005-10 |
| 35 | LXS 2005-2 |
| 36 | LXS 2005-3 |
| 37 | LXS 2005-4 |

EXECUTION VERSION

| 38 | LXS 2005-6 |
|----|-----------|
| 39 | LXS 2005-8 |
| 40 | LXS 2006-1 |
| 41 | LXS 2006-10N |
| 42 | LXS 2006-11 |
| 43 | LXS 2006-12N |
| 44 | LXS 2006-13 |
| 45 | LXS 2006-15 |
| 46 | LXS 2006-17 |
| 47 | LXS 2006-19 |
| 48 | LXS 2006-20 |
| 49 | LXS 2006-3 |
| 50 | LXS 2006-5 |
| 51 | LXS 2006-7 |
| 52 | LXS 2006-8 |
| 53 | LXS 2006-9 |
| 54 | LXS 2007-1 |
| 55 | LXS 2007-10H |
| 56 | LXS 2007-11 |
| 57 | LXS 2007-12N |
| 58 | LXS 2007-14H |
| 59 | LXS 2007-15N |
| 60 | LXS 2007-16N |
| 61 | LXS 2007-17H |
| 62 | LXS 2007-18N |
| 63 | LXS 2007-20N |
| 64 | LXS 2007-3 |
| 65 | LXS 2007-5H |
| 66 | LXS 2007-6 |
| 67 | LXS 2007-7N |
| 68 | LXS 2007-8H |
| 69 | LXS 2007-9 |
| 70 | RLT 2008-AH1 |
| 71 | SAIL 2003-BC1 |
| 72 | SAIL 2003-BC10 |
| 73 | SAIL 2003-BC11 |
| 74 | SAIL 2003-BC12 |
| 75 | SAIL 2003-BC13 |
| 76 | SAIL 2003-BC2 |
| 77 | SAIL 2003-BC3 |
| 78 | SAIL 2003-BC4 |
| 79 | SAIL 2003-BC5 |
| 80 | SAIL 2003-BC8 |

| | |
|---|---|
| 81 | SAIL 2003-BC9 |
| 82 | SAIL 2004-1 |
| 83 | SAIL 2004-10 |
| 84 | SAIL 2004-2 |
| 85 | SAIL 2004-3 |
| 86 | SAIL 2004-4 |
| 87 | SAIL 2004-5 |
| 88 | SAIL 2004-6 |
| 89 | SAIL 2004-8 |
| 90 | SAIL 2004-9 |
| 91 | SAIL 2005-1 |
| 92 | SAIL 2005-10 |
| 93 | SAIL 2005-11 |
| 94 | SAIL 2005-2 |
| 95 | SAIL 2005-3 |
| 96 | SAIL 2005-4 |
| 97 | SAIL 2005-5 |
| 98 | SAIL 2005-6 |
| 99 | SAIL 2005-7 |
| 100 | SAIL 2005-8 |
| 101 | SAIL 2005-9 |
| 102 | SAIL 2005-HE3 |
| 103 | SAIL 2006-1 |
| 104 | SAIL 2006-2 |
| 105 | SAIL 2006-4 |
| 106 | SAIL 2006-BNC3 |
| 107 | SARM 2004-10 |
| 108 | SARM 2004-16 |
| 109 | SARM 2004-18 |
| 110 | SARM 2004-20 |
| 111 | SARM 2004-5 |
| 112 | SARM 2004-9XS |
| 113 | SARM 2005-11 |
| 114 | SARM 2005-12 |
| 115 | SARM 2005-15 |
| 116 | SARM 2005-17 |
| 117 | SARM 2005-20 |
| 118 | SARM 2005-22 |
| 119 | SARM 2005-23 |
| 120 | SARM 2005-3XS |
| 121 | SARM 2005-6XS |
| 122 | SARM 2005-8XS |
| 123 | SARM 2006-1 |

| | |
|---|---|
| 124 | SARM 2006-10 |
| 125 | SARM 2006-11 |
| 126 | SARM 2006-12 |
| 127 | SARM 2006-2 |
| 128 | SARM 2006-3 |
| 129 | SARM 2006-4 |
| 130 | SARM 2006-5 |
| 131 | SARM 2006-6 |
| 132 | SARM 2006-7 |
| 133 | SARM 2006-8 |
| 134 | SARM 2006-9 |
| 135 | SARM 2007-1 |
| 136 | SARM 2007-10 |
| 137 | SARM 2007-11 |
| 138 | SARM 2007-2 |
| 139 | SARM 2007-3 |
| 140 | SARM 2007-4 |
| 141 | SARM 2007-6 |
| 142 | SARM 2007-8 |
| 143 | SARM 2008-2 |
| 144 | SASCO 2003-12XS |
| 145 | SASCO 2003-15A |
| 146 | SASCO 2003-17A |
| 147 | SASCO 2003-18XS |
| 148 | SASCO 2003-25XS |
| 149 | SASCO 2003-26A |
| 150 | SASCO 2003-28XS |
| 151 | SASCO 2003-29 |
| 152 | SASCO 2003-30 |
| 153 | SASCO 2003-34A |
| 154 | SASCO 2003-35 |
| 155 | SASCO 2003-36XS |
| 156 | SASCO 2003-38 |
| 157 | SASCO 2003-39EX |
| 158 | SASCO 2003-3XS |
| 159 | SASCO 2003-6A |
| 160 | SASCO 2003-GEL1 |
| 161 | SASCO 2003-NP1 |
| 162 | SASCO 2003-S1 |
| 163 | SASCO 2003-S2 |
| 164 | SASCO 2004-10 |
| 165 | SASCO 2004-11XS |
| 166 | SASCO 2004-13 |

| | |
|---|---|
| 167 | SASCO 2004-15 |
| 168 | SASCO 2004-16XS |
| 169 | SASCO 2004-17XS |
| 170 | SASCO 2004-18H |
| 171 | SASCO 2004-19XS |
| 172 | SASCO 2004-20 |
| 173 | SASCO 2004-21XS |
| 174 | SASCO 2004-22 |
| 175 | SASCO 2004-23XS |
| 176 | SASCO 2004-2AC |
| 177 | SASCO 2004-4XS |
| 178 | SASCO 2004-6XS |
| 179 | SASCO 2004-7 |
| 180 | SASCO 2004-9XS |
| 181 | SASCO 2004-GEL1 |
| 182 | SASCO 2004-GEL2 |
| 183 | SASCO 2004-GEL3 |
| 184 | SASCO 2004-NP1 |
| 185 | SASCO 2004-S2 |
| 186 | SASCO 2004-S3 |
| 187 | SASCO 2004-S4 |
| 188 | SASCO 2005-1 |
| 189 | SASCO 2005-10 |
| 190 | SASCO 2005-11H |
| 191 | SASCO 2005-14 |
| 192 | SASCO 2005-15 |
| 193 | SASCO 2005-17 |
| 194 | SASCO 2005-2XS |
| 195 | SASCO 2005-3 |
| 196 | SASCO 2005-4XS |
| 197 | SASCO 2005-5 |
| 198 | SASCO 2005-7XS |
| 199 | SASCO 2005-9XS |
| 200 | SASCO 2005-GEL2 |
| 201 | SASCO 2005-GEL3 |
| 202 | SASCO 2005-GEL4 |
| 203 | SASCO 2005-RF1 |
| 204 | SASCO 2005-RF2 |
| 205 | SASCO 2005-RF4 |
| 206 | SASCO 2005-RF5 |
| 207 | SASCO 2005-RF6 |
| 208 | SASCO 2005-RF7 |
| 209 | SASCO 2005-S1 |

| | |
|---|---|
| 210 | SASCO 2005-S2 |
| 211 | SASCO 2005-S3 |
| 212 | SASCO 2005-S4 |
| 213 | SASCO 2005-S5 |
| 214 | SASCO 2005-S6 |
| 215 | SASCO 2005-S7 |
| 216 | SASCO 2005-SC1 |
| 217 | SASCO 2006-BC2 |
| 218 | SASCO 2006-BC3 |
| 219 | SASCO 2006-BC4 |
| 220 | SASCO 2006-BC6 |
| 221 | SASCO 2006-GEL1 |
| 222 | SASCO 2006-GEL2 |
| 223 | SASCO 2006-GEL3 |
| 224 | SASCO 2006-GEL4 |
| 225 | SASCO 2006-RF1 |
| 226 | SASCO 2006-RF2 |
| 227 | SASCO 2006-RF3 |
| 228 | SASCO 2006-RF4 |
| 229 | SASCO 2006-S1 |
| 230 | SASCO 2006-S2 |
| 231 | SASCO 2006-S3 |
| 232 | SASCO 2006-S4 |
| 233 | SASCO 2006-Z |
| 234 | SASCO 2007-BC1 |
| 235 | SASCO 2007-BC2 |
| 236 | SASCO 2007-BC3 |
| 237 | SASCO 2007-BC4 |
| 238 | SASCO 2007-BNC1 |
| 239 | SASCO 2007-GEL1 |
| 240 | SASCO 2007-GEL2 |
| 241 | SASCO 2007-MLN1 |
| 242 | SASCO 2007-OSI |
| 243 | SASCO 2007-RF1 |
| 244 | SASCO 2007-TC1 |

<u>**EXECUTION VERSION**</u>

<u>**EXHIBIT B**</u>

**TERMINATED TRUSTS**

| <u>**No.**</u> | <u>**Trust Name**</u> |
|---|---|
| 1 | LABS 2003-1 |
| 2 | SASCO 2003-10 |
| 3 | SASCO 2003-14 |
| 4 | SASCO 2003-16 |
| 5 | SASCO 2003-20 |
| 6 | SASCO 2003-21 |
| 7 | SASCO 2003-4 |
| 8 | SASCO 2003-8 |
| 9 | SASCO 2003-NP2 |
| 10 | SASCO 2003-NP3 |
| 11 | SASCO 2003-RNP2 |
| 12 | SASCO 2004-NP2 |
| 13 | SASCO 2007-RF2 |
| 14 | SASC 2003-32 |
| 15 | SASC 2004-3 |
| 16 | SASC 2005-6 |

## EXHIBIT C

## SUBSIDIARIES AND AFFILIATES

| No. | Company Name |
|---|---|
| 1 | Lehman Brothers Holdings Inc. |
| 2 | 314 Commonwealth Ave. Inc. |
| 3 | Acesco Holdings Inc |
| 4 | Appalachian Asset Management Corp. |
| 5 | Battle Station LHCI., Inc. |
| 6 | Brookson Corp. |
| 7 | Brookwood Energy And Properties Inc. |
| 8 | Campus Door, Inc. |
| 9 | Capital Crossing Securities Corp II |
| 10 | Da Group Holdings Inc. |
| 11 | Diogenes Holdings Inc. |
| 12 | Diogenes Management Company Inc. |
| 13 | Dl Mortgage Corporation |
| 14 | DOLCAP INC |
| 15 | E.F.H. Insurance Agency Of Pennsylvania, Inc. |
| 16 | Fleet Street Condos Inc. |
| 17 | Frah Special Services Inc. |
| 18 | Future Financial Holdings Inc. |
| 19 | GA Dekalb Inc. |
| 20 | Industrial Holdings Corporation |
| 21 | LB Brickstone Inc. |
| 22 | LB Eastview, Inc. |
| 23 | LB Funding Corp II |
| 24 | LB Hercules Agency, Inc. |
| 25 | LB I Group Inc. |
| 26 | LB Lakeside I Inc. |
| 27 | LB Lakeside II Inc. |
| 28 | LB Lakeside III Inc. |
| 29 | LB LIH Corp. |
| 30 | LB Skypower Inc. |
| 31 | LB Transaction No. 5 Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 32 | LB Verve Condos Inc. |
| 33 | LB Windsor Capital One Bloor Street East Inc. |
| 34 | LB Windsor Kitchener Inc. |
| **No.** | **Company Name** |
| 35 | LB Windsor Pointz Avenue Inc. |
| 36 | LBMB CAPITAL PARTNERS V EAGLE ENERGY HOLDINGS |
| 37 | LBMB FUND (B) EAGLE ENERGY HOLDINGS LP |
| 38 | LBMB FUND EAGLE ENERGY HOLDINGS LP |
| 39 | LBMB PARTNERS EAGLE ENERGY HOLDINGS LP |
| 40 | LBTC Transfer Inc. |
| 41 | LCPI Properties, Inc. |
| 42 | Lehman ABS Corporation |
| 43 | Lehman Aircraft Securitization Holdings Inc. |
| 44 | Lehman Ali Inc. |
| 45 | Lehman Brothers  Asset Management Inc. |
| 46 | Lehman Brothers (Israel) Inc. |
| 47 | Lehman Brothers Bancorp, Inc. |
| 48 | Lehman Brothers Commercial Corporation |
| 49 | Lehman Brothers Commodity Services Inc. |
| 50 | Lehman Brothers Communications Associates Inc |
| 51 | Lehman Brothers Derivative Products Inc. |
| 52 | Lehman Brothers Europe Inc. |
| 53 | Lehman Brothers Finance (Japan) Inc. |
| 54 | Lehman Brothers Financial Products Inc. |
| 55 | Lehman Brothers Futures Asset Management Corp |
| 56 | Lehman Brothers International Services Inc. |
| 57 | Lehman Brothers Investment Holdings Company |
| 58 | Lehman Brothers Investments Japan Inc. |
| 59 | Lehman Brothers Merchant Banking Partners II |
| 60 | Lehman Brothers Mortgage Opportunity |
| 61 | Lehman Brothers OTC Derivatives Inc. |
| 62 | Lehman Brothers Overseas Inc. |
| 63 | Lehman Brothers Pera Inc. |
| 64 | Lehman Brothers Special Financing Inc. |
| 65 | Lehman Brothers U.K. Holdings (Delaware) Inc. |
| 66 | Lehman Brothers Venture Associates, Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 67 | Lehman Brothers/FW Inc. |
| 68 | Lehman Brothers/Rosecliff Inc. |
| 69 | Lehman Commercial Paper Inc. |
| 70 | Lehman Housing Capital Inc. |
| 71 | Lehman Housing Lending Corp. |
| **No.** | **Company Name** |
| 72 | Lehman Investments Inc. |
| 73 | Lehman Pass-Through Securities Inc. |
| 74 | Lehman Tax Credit Advisor Inc. |
| 75 | Lehman VIP Holdings Inc. |
| 76 | LHCI GP VI Inc. |
| 77 | LHCI GP VII Inc. |
| 78 | LHCI GP VIII Inc. |
| 79 | LHCI GP X, Inc. |
| 80 | LHCI GP XI, Inc |
| 81 | LHCI Martinsburg GP Inc. |
| 82 | Libro Holdings I Inc. |
| 83 | LPTG Inc. |
| 84 | LW-GP2B, Inc |
| 85 | LW-GP2D, Inc. |
| 86 | LW-LP Inc. |
| 87 | LW-LP Properties Inc. |
| 88 | MBR/GP Corp. |
| 89 | MMP Funding Corporation |
| 90 | NJ Atlantic Inc. |
| 91 | NJ Somerset Inc. |
| 92 | NP Investment I Co. |
| 93 | PAC Aircraft Management Inc. |
| 94 | PAMI 5-7 East 17th Street Inc. |
| 95 | PAMI Newark Inc. |
| 96 | PAMI PPC I Inc. |
| 97 | PAMI Public/Private II, Inc. |
| 98 | PAMI Raymond Inc. |
| 99 | Petro L Corporation |
| 100 | Principal Transactions II Inc. |
| 101 | Principal Transactions Inc. |
| 102 | Property Asset Management Inc. |
| 103 | Real Estate Private Equity Inc. |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 104 | Rock Hill Investors Inc. |
| 105 | SBA 2011 Acquisition Co Inc. |
| 106 | SASCO ARC CORPORATION |
| 107 | Select Asset Inc. |
| 108 | Sharpstown Center Inc. |
| **No.** | **Company Name** |
| 109 | Shearson Financial Services Of TX Inc. |
| 110 | Solar Finance Inc |
| 111 | Structured Asset Securities Corp |
| 112 | Structured Options Inc. |
| 113 | Thai Holding I Inc. |
| 114 | Thai Holding II Inc. |
| 115 | Tulsa Hotels LS, Inc |
| 116 | Warren Atlantic Inc. |
| 117 | Warren/GP Corp. |
| 118 | West Bay Club Development Corp. |
| 119 | West Bay Realty Inc. |
| 120 | Wharf Reinsurance Inc. |
| 121 | Winter Garden Inc. |
| 122 | Woodlands Commercial Corporation |
| 123 | Lehman Re Inc. |
| 124 | BK II Properties Inc. |
| 125 | ASIA INDO OPPORTUNITY I LTD |
| 126 | ASIA INDO OPPORTUNITY II LTD |
| 127 | BALLYBUNION INVESTMENT LIMITED |
| 128 | BALLYBUNION INVESTMENT NO 2 LIMITED |
| 129 | BALLYBUNION INVESTMENT NO 3 LIMITED |
| 130 | BIRCH Y.K. |
| 131 | BISON II SP. Z.O.O. |
| 132 | CAPITAL GROWTH INVESTMENTS LTD. |
| 133 | CENTRAL TOKYO HOLDINGS INC. |
| 134 | CENTRAL TOKYO INVESTMENTS INC. |
| 135 | CENTRAL TOKYO PROPERTIES INC. |
| 136 | CEREP III INVESTMENT D S.ÀR.L. |
| 137 | CIMT LIMITED |
| 138 | CJC INVESTMENTS INC |
| 139 | CYGNUS Y.K. |
| 140 | DYNAMO INVESTMENTS LIMITED |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 141 | EAGLE HOLDINGS II INC |
| 142 | EAST DOVER LIMITED |
| 143 | ELMWOOD Y.K. |
| 144 | FALCON HOLDINGS II INC. |
| 145 | FALCON HOLDINGS III INC. |
| 146 | FALCON HOLDINGS IV INC. |
| **No.** | **Company Name** |
| 147 | FALCON INVESTOR I INC. |
| 148 | FALCON INVESTOR II INC. |
| 149 | FALCON INVESTOR III INC. |
| 150 | FALCON INVESTOR IV INC. |
| 151 | FALCON INVESTOR IX INC. |
| 152 | FALCON INVESTOR V INC . |
| 153 | FALCON INVESTOR VI INC. |
| 154 | FALCON INVESTOR VII INC. |
| 155 | FALCON INVESTOR VIII INC. |
| 156 | FALCON INVESTOR X INC. |
| 157 | GAINSBOROUGH INVESTMENTS BV |
| 158 | GKI KOREA DEVELOPMENT LIMITED |
| 159 | GKI KOREA MANAGEMENT LIMITED |
| 160 | GLOBAL KOREA INVESTMENTS LTD |
| 161 | GLOBAL TAIWAN INVESTMENTS LTD |
| 162 | GLOBAL THAI PROPERTY FUND |
| 163 | GRA FINANCE CORPORATION LTD. |
| 164 | HOLLYHOCK YK |
| 165 | HONG KONG TRUST NO. 1 |
| 166 | IVANHOE LANE PTY LTD |
| 167 | JAPAN REAL ESTATE INVESTMENT PARTNERSHIP INC. |
| 168 | JAPAN TK INVESTOR I (CAYMAN) HOLDINGS INC. |
| 169 | JASMINE Y.K. |
| 170 | KENILWORTH INVESTMENTS 1 LTD |
| 171 | KENILWORTH INVESTMENTS 2 LTD |
| 172 | KINGFISHER CAPITAL CDO LTD |
| 173 | L.B.A. YK |
| 174 | LAMCO Services Ltd |
| 175 | LB ALPHA FINANCE CAYMAN LIMITED |
| 176 | LB BETA FINANCE CAYMAN LIMITED |
| 177 | LB CANADA SKYPOWER |
| 178 | LB DAME LP S.ÀR.L. |

**EXECUTION VERSION**

| No. | Company Name |
|-----|--------------|
| 179 | LB DAME S.ÀR.L. |
| 180 | LB FINANCE JAPAN HEAD OFFICE |
| 181 | LB FUNDING BV |
| 182 | LB HONG KONG FUNDING TRUST |
| 183 | LB INDIA HOLDINGS MAURITIUS I LTD |
| 184 | LB INDIA HOLDINGS MAURITIUS II LTD |
| No. | Company Name |
| 185 | LB INVESTMENT MGMT COMPANY LTD (f/k/a LB INDIA HOLDINGS CAYMAN II LIMITED) |
| 186 | LB INVESTMENTS (UK) LTD |
| 187 | LB LUX RE HOLDINGS S.A.R.L |
| 188 | LB MAURITIUS I LTD. |
| 189 | LB OFFSHORE PARTNERS II LTD. |
| 190 | LB OFFSHORE PARTNERS LTD |
| 191 | LB OFFSHORE RE MEZZANINE ASSOC,LTD. |
| 192 | LB OPPORTUNITY HOLDING INC |
| 193 | LB RE FINANCING NO.1 LIMITED |
| 194 | LB SHELF CI IV |
| 195 | LB VINTNERS (LUXEMBOURG) S.ÀR.L. |
| 196 | LB VINTNERS BRIDGE (LUXEMBOURG) S.ÀR.L. |
| 197 | LB3 GMBH |
| 198 | LBD YK |
| 199 | LBE YK |
| 200 | LBHK FUNDING (CAYMAN) NO. 1 LIMITED |
| 201 | LBHK FUNDING (CAYMAN) NO. 2 LIMITED |
| 202 | LBHK FUNDING (CAYMAN) NO. 4 LIMITED |
| 203 | LBMB ASSOCIATES IV (EUROPE) S.A.R.L |
| 204 | LBMB EUROPE MGMT CORP SARL |
| 205 | LBO FUNDING (CAYMAN) LIMITED |
| 206 | LBQ FUNDING (CAYMAN) LIMITED |
| 207 | LBQ HONG KONG SERVICES LIMITED |
| 208 | LBREP GAITHERSBURG HOLDINGS LLC |
| 209 | LBS HOLDINGS SARL |
| 210 | LBSP HOLDING (IRLAND) PUBLIC LTD |
| 211 | LBSP LIMITED |
| 212 | LCPI DHS  (f/k/a LB SHELF II, INC.) |
| 213 | LEHMAN BROTHERS (CAYMAN ISLANDS) LTD. |
| 214 | LEHMAN BROTHERS (THAILAND) LIMITED PCO-NEWTHB |
| 215 | LEHMAN BROTHERS ASEAN OPPORTUNITY LTD |

**EXECUTION VERSION**

| No. | Company Name |
|---|---|
| 216 | LEHMAN BROTHERS ASIA ISSUANCE CO LTD |
| 217 | LEHMAN BROTHERS AUSTRALIA SECURITIES PTY LIMITED |
| 218 | LEHMAN BROTHERS CAPITAL (THAILAND) LIMITED |
| 219 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN) II, LTD |
| 220 | LEHMAN BROTHERS CDO ASSOCIATES (CAYMAN), LTD |
| 221 | Lehman Brothers Global Services Ltd. |
| **No.** | **Company Name** |
| 222 | LEHMAN BROTHERS HK OLYMPUS FUNDING TRUST |
| 223 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP |
| 224 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP2 |
| 225 | LEHMAN BROTHERS HOLDINGS SCOTTISH LP3 |
| 226 | LEHMAN BROTHERS HOLDINGS, INC. UK BRANCH |
| 227 | LEHMAN BROTHERS HY OPPORTUNITIES KOREA INC. |
| 228 | Lehman Brothers Investments Japan Inc. |
| 229 | LEHMAN BROTHERS LATIN AMERICA LIMITED |
| 230 | LEHMAN BROTHERS OFFSHORE COMMUNICATIONS ASSOCIATES LTD. |
| 231 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES II LTD. |
| 232 | LEHMAN BROTHERS OFFSHORE REAL ESTATE ASSOCIATES LTD |
| 233 | LEHMAN BROTHERS OPPORTUNITY LTD. |
| 234 | LEHMAN BROTHERS PACIFIC SERVICES |
| 235 | LEHMAN BROTHERS SOUTH EAST ASIA INVESTMENTS PTE LIMITED |
| 236 | LEHMAN BROTHERS UK INVESTMENTS LTD |
| 237 | LEHMAN RISK SERVICES (BERMUDA) LTD. |
| 238 | LEHMAN SCOTTISH FINANCE LP |
| 239 | LEHMAN VIP INVESTMENT LDC |
| 240 | LUXEMBOURG FINANCE S.A.R.L. |
| 241 | LUXEMBOURG RESIDENTIAL PROPERTIES LOAN FINANCE SARL |
| 242 | M&L DEBT INVESTMENTS HOLDINGS PTY |
| 243 | M&L DEBT INVESTMENTS PTY LIMITED |
| 244 | MAEWHA K-STARS LTD |
| 245 | MARLIN INTERNATIONAL Y.K. |
| 246 | MEISHO ESTATE Y.K |
| 247 | MICT LIMITED |
| 248 | NOVACORP REALTY/GP INC. |
| 249 | OPAL FINANCE HOLDINGS IRELAND LIMITED |
| 250 | PHUKET HOTEL 3 HOLDING COMPANY LIMITED |
| 251 | REVIVAL HOLDINGS LIMITED |
| 252 | SATURN INVESTMENT INC |

**EXECUTION VERSION**

| No. | Company Name |
| --- | --- |
| 253 | SERAFINO INVESTMENTS PTY LTD |
| 254 | SOGKI DEVELOPMENT INC. |
| 255 | SOGKI INC. |
| 256 | SOGKI MANAGEMENT INC |
| 257 | SOGTI INC. |
| 258 | SOR INVESTOR I INC |
| **No.** | **Company Name** |
| 259 | SOR INVESTORS IV INC |
| 260 | SOUTHWESTERN FIRST CAPITAL LLC |
| 261 | TAHOE Y.K. |
| 262 | TCP CAP VI GP (EUROPE) L.P. INC. |
| 263 | TMIC LIMITED |
| 264 | VINTNERS BIDCO S.C.A. |
| 265 | VINTNERS S.ÀR.L. |
| 266 | Y.K. SAPPHIRE INVESTMENT I |
| 267 | YELLOWTAIL INTERNATIONAL Y.K. |
| 268 | YK DUCKHORN |

EXECUTION VERSION

## EXHIBIT D

## INSTITUTIONAL INVESTOR REQUEST LETTER



Robert J. Madden
rmadden@gibbsbruns.com
713.751.5266

*Via Email and Federal Express*

March _____, 2017

| | |
|---|---|
| Franklin H. Top III<br>Scott A. Lewis<br>CHAPMAN AND CUTLER LLP<br>111 West Monroe Street<br>Chicago, Illinois 60603 | M. William Munno<br>Daniel E. Guzmán<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, New York 10004 |
| Michael S. Kraut<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Ave.<br>New York, New York 10178 | *Counsel for Law Debenture Trust Company of New York, solely in its capacity as Separate Trustee for Certain Mortgage-Backed Securities Trusts* |
| *Counsel for U.S. Bank National Association, solely in its capacity as Indenture Trustee for Certain Mortgage-Backed Securities Trusts* | |
| John C. Weitnauer<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309 | Dennis Drebsky<br>NIXON PEABODY LLP<br>437 Madison Avenue<br>New York, New York 10022 |
| *Counsel for Wilmington Trust Company and Wilmington Trust, National Association, each solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* | *Counsel for Deutsche Bank National Trust Company, solely in its capacity as Trustee for Certain Mortgage-Backed Securities Trusts* |

Re:    Binding Settlement Offer from Lehman to Trustees of RMBS Trusts

Dear Counsel:

<u>**EXECUTION VERSION**</u>

This firm represents 14 large institutional investors who collectively are holders, and/or authorized investment managers for holders, of approximately $6 billion of the unpaid principal balance of securities ("UPB") issued by the RMBS Trusts listed on Exhibit "A" to the attached RMBS Trust Settlement Agreement (the "Trusts"). Our clients' holdings include 25% or more of the UPB of 69 of the Trusts, which Trusts account for approximately 35% of the total UPB across all of the Trusts.

Our clients have engaged in extensive, mediated negotiations with representatives of the LBHI estate in an effort to reach a proposed settlement, that our clients would be willing to recommend, of the claims set forth in the Proofs of Claim filed by your clients on behalf of the Trusts.

We understand the LBHI debtors have advised you of the terms of a binding offer they have agreed to make to the Trustees to settle these claims. A copy of that binding offer is enclosed with this correspondence for your review.

Our clients have advocated settlement in this matter for some time, in no small part because of the significant expense that has been imposed on the Trusts by virtue of the Court-ordered Protocol. Though those earlier efforts did not lead to a settlement the Trustees were able to accept, this offer is one the Trustees certainly should accept. It <u>virtually ensures</u> the Trusts claims will be allowed in an amount no less than $2.416 billion, because Lehman has agreed to seek estimation at that amount. In addition, while setting a functional floor on the recovery, the offer establishes no ceiling; instead, the Trustees are free to put on whatever proof they wish, to advocate for an increased estimation if they possess evidence they believe warrants it. And, finally, by making the estimation final as to both the Trusts and Lehman, it ends both the hemorrhage of dollars caused by the protocol and eliminates the risk--through elimination of any appeals--that this hemorrhage of funds will resume. In short, there is no reasonable basis on which the Trustees could or should refuse this guarantee of a certain recovery of more than a $1 billion in cash, with the opportunity to obtain more.

Accordingly, on behalf of our clients, we ask each of the Trustees to exercise their independent business judgment to accept the settlement on the Trusts' behalf. Though this is not a binding instruction from our clients, all of our clients believe the settlement is in the best interests of all of the Trusts included in the settlement, so they urge the Trustees to accept it.

Very truly yours,

_____
Robert Madden
On behalf of the Institutional Investors

Cc:

AEGON USA Investment Management, LLC,
BlackRock Financial Management, Inc.,

<u>**EXECUTION VERSION**</u>

Cascade Investment, L.L.C.,

Federal Home Loan Bank of Atlanta,

Goldman Sachs Asset Management, L.P.,

Invesco Advisers, Inc.,

Kore Advisors, L.P.,

Metropolitan Life Insurance Company,

Pacific Investment Management Company, LLC,

Sealink Designated Activity Company, through its investment manager
       Neuberger Berman Europe Limited

The TCW Group, Inc., on behalf of itself and its subsidiaries

Thrivent Financial for Lutherans,

Voya Investment Management LLC, and

Western Asset Management Company.

**EXECUTION VERSION**

**EXHIBIT E**



**EXECUTION VERSION**

**EXHIBIT F**

**TRUSTEE FINDINGS**

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. Certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the Accepting Trustees acted within the bounds of its discretion, reasonably, and in good faith with respect to its evaluation and acceptance of the Trust Settlement Agreement dated as of November 30, 2016 and modified as of March 17, 2017 (the "Settlement Agreement") concerning the applicable Accepting Trust(s).

**EXECUTION VERSION**

## EXHIBIT G

### I.   CLAIMS AND DEFENSES TO BE TRIED

#### a.  The Plan Administrator's Position Statement

The RMBS Trustees allege that LBHI: (i) breached certain representations and warranties regarding the quality and characteristics of certain mortgage loans, or (ii) provided deficient mortgage loan files to the RMBS Trusts, when they sold loans into certain residential mortgage-backed securitization trusts.  LBHI will ask the Bankruptcy Court to estimate the claims related to those mortgage loans that have not already been disallowed or expunged from the RMBS Trustees' proofs of claim, in particular those loans that have been placed into the RMBS Protocol by the RMBS Trustees.  The loan-by-loan analysis conducted by the Plan Administrator through steps 1 and 2 of the RMBS Protocol and additional evidence will provide various bases upon which the Court can make a realistic assessment of the outcome of the RMBS Trustees' claims, without the undue delay that would likely occur if the Parties were to adjudicate these claims in their entirety.

#### b.  The RMBS Trustees' Position Statement

The following claims will be estimated:  claims arising out of alleged breaches of representations and warranties made by the LBHI Debtors in applicable Trust Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Sale and Assignment Agreements and/or other agreements governing or related to the Trust and Terminated Trusts (the "Governing Agreements") concerning Mortgage Loans in the residential mortgage-backed securitizations identified on Exhibit A (the "Trusts").  The RMBS Trustees allege that the LBHI Debtors breached one or more of their representations and warranties under the Governing Agreements with respect to certain loans in the RMBS Trusts in a manner that materially and adversely affected the value of the loans or certificateholders' interests in the loans.  The RMBS Trustees intend to demonstrate that the LBHI Debtors breached their representations and warranties with respect to over 91,000 loans through evidence derived from the RMBS Trustees' loan-by-loan review and presented to the LBHI Debtors as required by the RMBS Protocol; and the absence of any legally or factually supported bases proffered by the Plan Administrator during the RMBS Protocol for the rejection of the Trustees' claims.

### II.   NATURE AND LENGTH OF THE HEARING

The Parties agree that their claims and defenses will be determined at an estimation hearing that the parties will jointly request the court schedule no earlier

- 3 -

than Monday, October 16, 2017 (the "Hearing").[1]  The Hearing shall be conducted in accordance with the procedures set forth herein.

The Parties agree that the Hearing shall be scheduled for at least 14 hearing days, or a total of 98 hours, on the record.  The LBHI Debtors will be allotted 7 days (or a total of 49 hours) to present their case, including rebuttals, and 7 days (or a total of 49 hours) will be allotted to the RMBS Trustees.  Each Party's allotted time will run during its (i) opening and closing statements and (ii) direct or cross examination of any witness.  Either side is free to use less than its allotted time.  The scheduling of the dates on which the Hearing shall be conducted shall be at the discretion of the Court.

Each side shall be allowed to present opening statements of up to two hours in length and closing statements of up to two hours in length.  Each Party will be able to reserve and reallocate its time for opening and closing statements.

## III.   TIMING AND CONTENT OF EXPERT REPORTS, AND EXPERT DISCOVERY

The Parties agree to pre-Hearing expert discovery pursuant to the following schedule:

| | |
|---|---|
| Parties disclose the identity and subject matter of Experts then expected to provide Affirmative Reports, and Lehman to identify such settlements that it intends to use in its Expert Reports | Wednesday, May 10, 2017 |
| Simultaneous exchange of Affirmative Reports, and the Parties to identify exemplar loans to be used in their case-in-chief | Thursday, June 1, 2017 |
| Simultaneous exchange of Rebuttal Reports, the Parties to identify exemplar loans to be used by their rebuttal experts, and the RMBS Trustees to identify such settlements that they intend to use in their Expert | Friday, July 14, 2017 |

---

[1] Should the date of the Hearing in this section be moved to a later date, the Parties will meet and confer in good faith to negotiate appropriate modifications of the dates set forth in Section III of this agreement.

| Reports | |
|---|---|
| Simultaneous exchange of Reply Reports with any additional exemplar loans.[2] | Monday, August 21, 2017 |
| Completion of Expert Depositions | Thursday, September 21, 2017 |

*Expert Reports*.  Each expert witness must provide a signed written report that contains:

    i.  a complete statement of the opinions the witness is expected to express and the basis for such opinions;

   ii.  the facts or data relied upon by the witness in forming any such opinions and, to the extent the witness' opinions include or rely upon the results of any quantitative calculations or estimates, the underlying data and all formulae, macros and any other information necessary to allow the opposing party to reproduce such quantitative calculations or estimates[3];

  iii.  any assumptions that the expert was provided and relied upon in forming the opinions to be expressed;

  iv.  any exhibits prepared in connection with the written report;

   v.  the witness's qualifications, including a list of all publications authored in the previous 10 years;

  vi.  a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

 vii.  a statement of the compensation to be paid in connection with the case.

*Information Excluded from Disclosure*.  The Parties shall not be required to disclose and no witness may be examined regarding (i) drafts of any report, calculation, analysis or estimate, regardless of the form in which the draft is recorded; (ii) other notes or writing taken or prepared by or for the testifying expert; or (iii) communications involving any expert witness regardless of the form of the communications, including but not limited to any communication between (x) any expert witness and the Parties' attorneys, (y) any expert witness and the witness's staff, and (z) communications between testifying experts and consulting experts.  Additionally, there shall be no disclosure of materials prepared by or for consulting experts. The Parties further agree that the provision of any materials to an expert witness and/or the witness's staff shall not

---

[2] Any reply shall be limited to addressing materials, opinions or arguments raised in rebuttal reports.

[3] To the extent any such data, calculations or estimates are in the form of or rely upon computer data files, the witness shall produce all such data files, in the electronic format used by the witness, and sufficient documentation or explanation to enable one reasonably skilled in the art to understand and use such data files.

constitute a subject matter waiver of the attorney client privilege or any other privilege or protection.

## IV. PRE-TRIAL BRIEFS AND SUBMISSIONS

All pending motions concerning the Covered Loans and RMBS Protocol are deemed withdrawn.  Each of the Parties shall submit a single pre-trial brief addressing reasonably anticipated disputes concerning substantive law no less than 15 days prior to the Hearing.  Each of the pre-trial briefs shall be no longer than 50 pages in length.  The pre-trial brief shall be the only pre-hearing brief or submission submitted by the Parties with respect to disputes concerning substantive law.  For the avoidance of doubt, nothing in this agreement shall prejudice the right of any Party to make, in connection with the Hearing, arguments or challenges based on the sufficiency, completeness or timeliness of materials, loan files, or documentation submitted by any Party under the Protocol or arguments or challenges based on compliance with the requirements of the Protocol by any Party, including but not limited to any arguments made by any Party in connection with *Lehman's Second Objection to Certain RMBS Trust Claims and Motion to Disallow and Expunge Certain RMBS Trust Claims for Insufficient Documentation* [Doc. No. 53620].

## V. WITNESSES

No less than 75 days prior to the Hearing, the Parties shall submit a preliminary list of the witnesses that they may present at the Hearing.  Each Party shall make a good-faith effort to include on its preliminary witness list all of the individuals (and only those individuals) that the Party believes it will present at the Hearing.  No less than 45 days prior to the Hearing the Parties shall submit final witness lists of those individuals they expect to call at the Hearing.

Direct testimony of witnesses may be presented by written declaration, which shall be provided by Lehman no less than 30 days before the hearing, and shall be provided by the RMBS Trustees no less than 15 days prior to the Hearing.  Notwithstanding the foregoing, the Parties shall each be permitted to present direct testimony of any witness at the Hearing.  Depositions of fact witnesses, if any, shall be completed at least 15 days prior to the Hearing.  In addition to hearing witnesses, the Parties shall also each be entitled to take the deposition of up to three fact witnesses. Such depositions shall be completed no later than 15 days before the hearing date.

For the removal of doubt, both the Trustees and Lehman shall be permitted to depose any witness identified by the other side as a Hearing witness.  Should either side wish to add a witness based on developments during the Hearing, that Party shall provide sufficient advance notice such that the other Party will have the opportunity to depose that witness before he/she testifies at the Hearing.  Each Party reserves all objections to the designation of any person as a witness or deponent.

## VI.    EXHIBITS

On the dates set forth in Section III, the Parties shall identify for one another, by Loan Number, any specific loans that they intend to introduce as exemplar loans in their cases-in-chief at the Hearing.  The Parties reserve the right to request that they be allowed to introduce additional exemplar loans, however, the other Party shall have the right to move to exclude such exemplar loans.

No less than 30 days prior to the Hearing, the Parties shall exchange lists of exhibits (not including demonstratives or exemplar loans, which is addressed above) that they expect to be offered in their cases-in-chief.  The parties will cooperate in good faith to create a Bates Numbered set of all documents that will be offered as trial exhibits.  The Parties may supplement their exhibit lists before and during the Hearing if, in good faith, it is necessary to do so.

If a Party objects to the other Party's proposed use of any testimony or exhibits, that Party shall provide prompt notice to the other Party no later than 10 days prior to the Hearing, or in the case of later added exhibits, promptly after the exhibits are identified, and the Parties shall promptly attempt to resolve the objection.

## VII.    EVIDENCE

The Parties may offer into evidence before the Court, at the Hearing, without objection by any Party:

(i)    the RMBS Trust Settlement Agreements entered into by and between the LBHI Debtors and the Institutional Investors on October 26, 2015 and November 29, 2016;

(ii)    materials concerning other settlement agreements in disputes involving residential mortgage-backed securities.  Each Party will identify within 15 days of the execution by LBHI and the Institutional Investors of the Settlement Agreement to which this Exhibit G is appended, a preliminary list of those settlements that it wishes to admit into evidence;

(iii)    REDACTED ;

(iv)    the RMBS Claim Files, as defined in the Protocol Order;

(v)    the loan origination and servicing files for each of the loans as to which the RMBS Trustees assert a claim;

(vi)    the RMBS Claim, as defined in the Protocol, for each such claim;

(vii)    the Claim Tracking Spreadsheet, as defined in the Protocol;

(viii)   the Approved Claims Report, as defined in the Protocol;

(ix)    the Rejected Claims Report, as defined in the Protocol;

(x)     any disputed Approved Claims, as referenced in the Protocol;

(xi)    Rejected Claim File rebuttals, as referenced in the Protocol;

(xii)   the Plan Administrator's Statement, as defined in the Protocol;

(xiii)  any other materials exchanged between the Parties (including but not limited to the Nationstar and Intex datatapes in support of the Purchase Price) during the Protocol;

(xiv)   the Governing Agreements related to the Trusts; and

(xv)    the holdings of the Institutional Investors, which shall be updated and certified by the Institutional Investors as of the first day of the Estimation Hearing.

For the avoidance of doubt, items (iv)-(xiii) above are intended to refer to materials exchanged during the Protocol and the agreement herein extends only to materials that were, in fact, so exchanged by the Parties.

With respect to the foregoing categories or documents, while the Parties agree that such documents will be admitted into evidence, they reserve all rights to present arguments as to reliability, competency, weight, relevance, timeliness or any other arguments concerning the Court's consideration of such evidence.  In addition, the Parties reserve all rights to seek to introduce additional evidence at the Hearing.

EXECUTION VERSION

## EXHIBIT H

### ALLOCATION PERCENTAGES

| Trustee | Trust Name / Loan Group | Initial Allocated Percentage |
|---|---|---|
| Deutsche Bank | SAIL 2004-1 / 1 | 0.004308% |
| Deutsche Bank | SAIL 2004-1 / 2 | 0.001292% |
| Law Debenture | ARC 2002-BC10 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC10 / 2 | 0.001084% |
| Law Debenture | ARC 2002-BC10 / 3 | 0.001060% |
| Law Debenture | ARC 2002-BC8 / 1 | 0.008188% |
| Law Debenture | ARC 2002-BC8 / 2 | 0.000561% |
| Law Debenture | ARC 2002-BC9 / 1 | 0.000000% |
| Law Debenture | ARC 2002-BC9 / 2 | 0.000169% |
| Law Debenture | BNC 2007-4 / 1 | 0.598969% |
| Law Debenture | BNC 2007-4 / 2 | 0.319296% |
| Law Debenture | LABS 2007-1 / 1 | 0.213542% |
| Law Debenture | LABS 2007-1 / 2 | 0.665016% |
| Law Debenture | LMT 2006-9 / 1 | 0.007225% |
| Law Debenture | LMT 2006-9 / 2 | 0.142322% |
| Law Debenture | LMT 2006-9 / 3 | 0.059861% |
| Law Debenture | LMT 2007-1 / 1 | 0.104230% |
| Law Debenture | LMT 2007-1 / 2 | 0.015085% |
| Law Debenture | LMT 2007-1 / 3 | 0.051720% |
| Law Debenture | LMT 2007-4 / 1 | 0.081740% |
| Law Debenture | LMT 2007-4 / 2 | 0.179616% |
| Law Debenture | LMT 2007-4 / 3 | 0.030551% |
| Law Debenture | LMT 2007-4 / 4 | 0.030503% |
| Law Debenture | LMT 2007-4 / 5 | 0.007382% |
| Law Debenture | LMT 2007-5 / 1 | 0.068732% |
| Law Debenture | LMT 2007-5 / 2 | 0.000000% |
| Law Debenture | LMT 2007-5 / 3 | 0.207011% |
| Law Debenture | LMT 2007-5 / 4 | 0.082310% |
| Law Debenture | LMT 2007-9 / 1 | 0.082662% |
| Law Debenture | LMT 2007-9 / 2 | 0.000000% |
| Law Debenture | LMT 2008-2 / 1 | 0.139862% |

DB1/ 91137811.2

| Law Debenture | LMT 2008-6 / 1 | 0.034315% |
|---|---|---|
| Law Debenture | LMT 2008-6 / 2 | 0.015777% |
| Law Debenture | SAIL 2003-BC12 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC12 / 2 | 0.001352% |
| Law Debenture | SAIL 2003-BC12 / 3 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC3 / 2 | 0.002550% |
| Law Debenture | SAIL 2003-BC4 / 1 | 0.000000% |
| Law Debenture | SAIL 2003-BC4 / 2 | 0.002132% |
| Law Debenture | SARM 2004-10 / 1 | 0.049816% |
| Law Debenture | SARM 2004-10 / 2 | 0.041340% |
| Law Debenture | SARM 2004-10 / 3 | 0.069912% |
| Law Debenture | SARM 2004-10 / 4 | 0.005914% |
| Law Debenture | SARM 2004-16 / 1 | 0.081050% |
| Law Debenture | SARM 2004-16 / 2 | 0.025806% |
| Law Debenture | SARM 2004-16 / 3 | 0.071327% |
| Law Debenture | SARM 2004-16 / 4 | 0.006938% |
| Law Debenture | SARM 2004-16 / 5 | 0.006614% |
| Law Debenture | SARM 2004-16 / 6 | 0.024738% |
| Law Debenture | SARM 2004-18 / 1 | 0.076254% |
| Law Debenture | SARM 2004-18 / 2 | 0.033334% |
| Law Debenture | SARM 2004-18 / 3 | 0.068914% |
| Law Debenture | SARM 2004-18 / 4 | 0.011927% |
| Law Debenture | SARM 2004-18 / 5 | 0.000184% |
| Law Debenture | SARM 2004-20 / 1 | 0.092546% |
| Law Debenture | SARM 2004-20 / 2 | 0.046727% |
| Law Debenture | SARM 2004-20 / 3 | 0.020287% |
| Law Debenture | SARM 2004-20 / 4 | 0.002601% |
| Law Debenture | SARM 2004-20 / 5 | 0.001475% |
| Law Debenture | SARM 2004-5 / 1 | 0.004269% |
| Law Debenture | SARM 2004-5 / 2 | 0.017610% |
| Law Debenture | SARM 2004-5 / 3 | 0.035427% |
| Law Debenture | SARM 2004-5 / 4 | 0.002673% |
| Law Debenture | SARM 2004-5 / 5 | 0.001785% |
| Law Debenture | SARM 2004-9XS / 1 | 0.010376% |
| Law Debenture | SARM 2005-11 / 1 | 0.046958% |
| Law Debenture | SARM 2005-11 / 2 | 0.020525% |
| Law Debenture | SARM 2005-11 / 3 | 0.029317% |
| Law Debenture | SARM 2005-11 / 4 | 0.002855% |

| Law Debenture | SARM 2005-11 / 5 | 0.002325% |
|---|---|---|
| Law Debenture | SARM 2005-12 / 1 | 0.065902% |
| Law Debenture | SARM 2005-12 / 2 | 0.029879% |
| Law Debenture | SARM 2005-12 / 3 | 0.041953% |
| Law Debenture | SARM 2005-12 / 4 | 0.024114% |
| Law Debenture | SARM 2005-12 / 5 | 0.012730% |
| Law Debenture | SARM 2005-12 / 6 | 0.000000% |
| Law Debenture | SARM 2005-15 / 1 | 0.058291% |
| Law Debenture | SARM 2005-15 / 2 | 0.005084% |
| Law Debenture | SARM 2005-15 / 3 | 0.009176% |
| Law Debenture | SARM 2005-15 / 4 | 0.000000% |
| Law Debenture | SARM 2005-15 / 5 | 0.000000% |
| Law Debenture | SARM 2005-17 / 1 | 0.010736% |
| Law Debenture | SARM 2005-17 / 2 | 0.030931% |
| Law Debenture | SARM 2005-17 / 3 | 0.141143% |
| Law Debenture | SARM 2005-17 / 4 | 0.000000% |
| Law Debenture | SARM 2005-17 / 5 | 0.040697% |
| Law Debenture | SARM 2005-17 / 6 | 0.000000% |
| Law Debenture | SARM 2005-20 / 1 | 0.006759% |
| Law Debenture | SARM 2005-20 / 2 | 0.158112% |
| Law Debenture | SARM 2005-20 / 3 | 0.021248% |
| Law Debenture | SARM 2005-20 / 4 | 0.057642% |
| Law Debenture | SARM 2007-1 / 1 | 0.488971% |
| Law Debenture | SARM 2007-1 / 2 | 0.039373% |
| Law Debenture | SARM 2007-11 / 1 | 0.400153% |
| Law Debenture | SARM 2007-11 / 2 | 0.124982% |
| Law Debenture | SARM 2007-11 / 3 | 0.155263% |
| Law Debenture | SARM 2007-2 / 1 | 0.568272% |
| Law Debenture | SARM 2007-2 / 2 | 0.048575% |
| Law Debenture | SARM 2007-3 / 1 | 0.538650% |
| Law Debenture | SARM 2007-3 / 2 | 0.004111% |
| Law Debenture | SARM 2007-3 / 3 | 0.013387% |
| Law Debenture | SARM 2007-3 / 4 | 0.000000% |
| Law Debenture | SARM 2007-4 / 1 | 0.837854% |
| Law Debenture | SARM 2007-6 / 1 | 0.254836% |
| Law Debenture | SARM 2007-6 / 2 | 0.477651% |
| Law Debenture | SARM 2007-6 / 3 | 0.227329% |
| Law Debenture | SASCO 2003-15A / 1 | 0.002203% |
| Law Debenture | SASCO 2003-15A / 2 | 0.004188% |

| | | |
|---|---|---|
| Law Debenture | SASCO 2003-15A / 3 | 0.000917% |
| Law Debenture | SASCO 2003-15A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 1 | 0.011847% |
| Law Debenture | SASCO 2003-17A / 2 | 0.010668% |
| Law Debenture | SASCO 2003-17A / 3 | 0.000000% |
| Law Debenture | SASCO 2003-17A / 4 | 0.000598% |
| Law Debenture | SASCO 2003-26A / 1 | 0.001135% |
| Law Debenture | SASCO 2003-26A / 2 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 3 | 0.037971% |
| Law Debenture | SASCO 2003-26A / 4 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 5 | 0.000000% |
| Law Debenture | SASCO 2003-26A / 6 | 0.001571% |
| Law Debenture | SASCO 2003-26A / 7 | 0.000365% |
| Law Debenture | SASCO 2003-34A / 1 | 0.004542% |
| Law Debenture | SASCO 2003-34A / 2 | 0.003370% |
| Law Debenture | SASCO 2003-34A / 3 | 0.010398% |
| Law Debenture | SASCO 2003-34A / 4 | 0.000633% |
| Law Debenture | SASCO 2003-34A / 5 | 0.029231% |
| Law Debenture | SASCO 2003-34A / 6 | 0.005114% |
| Law Debenture | SASCO 2003-6A / 1 | 0.000347% |
| Law Debenture | SASCO 2003-6A / 2 | 0.001655% |
| Law Debenture | SASCO 2003-6A / 3 | 0.002655% |
| Law Debenture | SASCO 2003-6A / 4 | 0.001979% |
| Law Debenture | SASCO 2003-S2 / 1 | 0.004955% |
| Law Debenture | SASCO 2005-S6 / 1 | 0.579689% |
| Law Debenture | SASCO 2005-S7 / 1 | 0.365128% |
| Law Debenture | SASCO 2005-S7 / 2 | 0.455817% |
| Law Debenture | SASCO 2007-BC1 / 1 | 1.057679% |
| Law Debenture | SASCO 2007-BC1 / 2 | 0.982354% |
| Law Debenture | SASCO 2007-MLN1 / 1 | 0.944060% |
| Law Debenture | SASCO 2007-MLN1 / 2 | 1.324885% |
| Law Debenture | SASCO 2007-OSI / 1 | 1.052390% |
| Law Debenture | SASCO 2007-OSI / 2 | 1.196287% |
| US Bank | ARC 2004-1 / 1 | 0.000000% |
| US Bank | ARC 2004-1 / 2 | 0.000000% |
| US Bank | BNC 2006-1 / 1 | 0.634371% |
| US Bank | BNC 2006-1 / 2 | 0.595645% |
| US Bank | BNC 2006-2 / 1 | 0.203133% |
| US Bank | BNC 2006-2 / 2 | 0.735519% |

EXECUTION VERSION

| US Bank | BNC 2007-1 / 1 | 0.987162% |
|---------|----------------|-----------|
| US Bank | BNC 2007-1 / 2 | 0.886811% |
| US Bank | BNC 2007-2 / 1 | 1.137371% |
| US Bank | BNC 2007-2 / 2 | 1.028894% |
| US Bank | LABS 2004-1 / 1 | 0.007673% |
| US Bank | LABS 2004-1 / 2 | 0.008799% |
| US Bank | LMT 2005-1 / 1 | 0.047402% |
| US Bank | LMT 2005-1 / 2 | 0.067437% |
| US Bank | LMT 2005-1 / 3 | 0.029578% |
| US Bank | LMT 2005-1 / 4 | 0.018448% |
| US Bank | LMT 2005-1 / 5 | 0.045656% |
| US Bank | LMT 2005-1 / 6 | 0.003233% |
| US Bank | LMT 2005-2 / 1 | 0.110091% |
| US Bank | LMT 2005-2 / 2 | 0.086622% |
| US Bank | LMT 2005-2 / 3 | 0.078927% |
| US Bank | LMT 2005-2 / 4 | 0.026577% |
| US Bank | LMT 2005-2 / 5 | 0.074712% |
| US Bank | LMT 2005-3 / 1 | 0.075870% |
| US Bank | LMT 2005-3 / 2 | 0.060637% |
| US Bank | LMT 2005-3 / 3 | 0.035600% |
| US Bank | LMT 2005-3 / 4 | 0.021575% |
| US Bank | LMT 2006-2 / 1 | 0.005721% |
| US Bank | LMT 2006-2 / 2 | 0.011030% |
| US Bank | LMT 2006-2 / 3 | 0.004150% |
| US Bank | LMT 2006-2 / 4 | 0.002940% |
| US Bank | LMT 2006-8 / 1 | 0.321303% |
| US Bank | LMT 2007-10 / 1 | 0.080406% |
| US Bank | LMT 2007-10 / 2 | 0.493666% |
| US Bank | LMT 2007-10 / 3 | 0.001068% |
| US Bank | LMT 2007-2 / 1 | 0.018559% |
| US Bank | LMT 2007-2 / 2 | 0.032447% |
| US Bank | LMT 2007-2 / 3 | 0.121884% |
| US Bank | LMT 2007-3 / 1 | 0.028116% |
| US Bank | LMT 2007-6 / 1 | 0.020340% |
| US Bank | LMT 2007-6 / 2 | 0.159604% |
| US Bank | LMT 2007-7 / 1 | 0.037798% |
| US Bank | LMT 2007-7 / 2 | 0.000697% |
| US Bank | LMT 2007-7 / 3 | 0.226436% |
| US Bank | LMT 2007-8 / 1 | 0.151236% |

| US Bank | LMT 2007-8 / 2 | 0.039659% |
|---------|----------------|-----------|
| US Bank | LMT 2007-8 / 3 | 0.350808% |
| US Bank | LXS 2005-2 / 1 | 0.407721% |
| US Bank | LXS 2005-2 / 2 | 0.067132% |
| US Bank | LXS 2005-4 / 1 | 0.242492% |
| US Bank | LXS 2005-4 / 2 | 0.189077% |
| US Bank | LXS 2006-10N / 1 | 0.177095% |
| US Bank | LXS 2006-10N / 2 | 0.000000% |
| US Bank | LXS 2006-10N / 3 | 0.000000% |
| US Bank | LXS 2006-11 / 1 | 0.546454% |
| US Bank | LXS 2006-11 / 2 | 0.025908% |
| US Bank | LXS 2006-12N / 1 | 0.068131% |
| US Bank | LXS 2006-12N / 2 | 0.000000% |
| US Bank | LXS 2006-12N / 3 | 0.000000% |
| US Bank | LXS 2006-15 / 1 | 1.087065% |
| US Bank | LXS 2006-19 / 1 | 1.315674% |
| US Bank | LXS 2006-20 / 1 | 1.191402% |
| US Bank | LXS 2006-3 / 1 | 0.655467% |
| US Bank | LXS 2006-8 / 1 | 0.396812% |
| US Bank | LXS 2006-8 / 2 | 0.315565% |
| US Bank | LXS 2006-8 / 3 | 0.350715% |
| US Bank | LXS 2007-1 / 1 | 1.089568% |
| US Bank | LXS 2007-1 / 2 | 0.244584% |
| US Bank | LXS 2007-1 / 3 | 0.000000% |
| US Bank | LXS 2007-10H / 1 | 1.763647% |
| US Bank | LXS 2007-10H / 2 | 0.386591% |
| US Bank | LXS 2007-12N / 1 | 0.000000% |
| US Bank | LXS 2007-12N / 2 | 0.846426% |
| US Bank | LXS 2007-12N / 3 | 0.000000% |
| US Bank | LXS 2007-14H / 1 | 2.649003% |
| US Bank | LXS 2007-15N / 1 | 0.116525% |
| US Bank | LXS 2007-15N / 2 | 0.375078% |
| US Bank | LXS 2007-15N / 3 | 0.000000% |
| US Bank | LXS 2007-15N / 4 | 0.000000% |
| US Bank | LXS 2007-15N / 6 | 0.000000% |
| US Bank | LXS 2007-15N / 1C | 0.156605% |
| US Bank | LXS 2007-16N / 1 | 0.139360% |
| US Bank | LXS 2007-16N / 2 | 0.725591% |
| US Bank | LXS 2007-16N / 3 | 0.094417% |

| US Bank | LXS 2007-16N / 4 | 0.000000% |
|---------|------------------|-----------|
| US Bank | LXS 2007-17H / 1 | 1.713333% |
| US Bank | LXS 2007-18N / 1 | 0.622723% |
| US Bank | LXS 2007-18N / 2 | 0.549264% |
| US Bank | LXS 2007-20N / 1 | 0.868777% |
| US Bank | LXS 2007-3 / 2 | 0.933371% |
| US Bank | LXS 2007-3 / 1A | 0.144193% |
| US Bank | LXS 2007-3 / 1B | 0.620399% |
| US Bank | LXS 2007-3 / 3A | 0.199179% |
| US Bank | LXS 2007-3 / 3B | 0.256320% |
| US Bank | LXS 2007-3 / 4A | 0.000000% |
| US Bank | LXS 2007-3 / 4B | 0.084520% |
| US Bank | LXS 2007-5H / 1 | 0.351476% |
| US Bank | LXS 2007-5H / 2 | 0.408046% |
| US Bank | LXS 2007-5H / 3 | 0.941454% |
| US Bank | LXS 2007-6 / 1 | 1.656792% |
| US Bank | LXS 2007-6 / 2 | 0.720225% |
| US Bank | LXS 2007-6 / 3 | 1.128605% |
| US Bank | LXS 2007-7N / 1 | 0.298622% |
| US Bank | LXS 2007-7N / 2 | 0.149496% |
| US Bank | LXS 2007-7N / 3 | 0.000000% |
| US Bank | LXS 2007-8H / 1 | 3.215265% |
| US Bank | LXS 2007-9 / 1 | 0.705272% |
| US Bank | LXS 2007-9 / 2 | 0.000000% |
| US Bank | RLT 2008-AH1 / 1 | 0.038943% |
| US Bank | SAIL 2003-BC1 / 1 | 0.001775% |
| US Bank | SAIL 2003-BC1 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC10 / 2 | 0.001061% |
| US Bank | SAIL 2003-BC10 / 3 | 0.000316% |
| US Bank | SAIL 2003-BC11 / 1 | 0.000923% |
| US Bank | SAIL 2003-BC11 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC13 / 2 | 0.001758% |
| US Bank | SAIL 2003-BC13 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC2 / 2 | 0.000308% |
| US Bank | SAIL 2003-BC2 / 3 | 0.000000% |
| US Bank | SAIL 2003-BC5 / 1 | 0.008841% |

EXECUTION VERSION

| US Bank | SAIL 2003-BC5 / 2 | 0.000000% |
|---------|-------------------|-----------|
| US Bank | SAIL 2003-BC8 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC8 / 3a | 0.002498% |
| US Bank | SAIL 2003-BC8 / 3b | 0.001917% |
| US Bank | SAIL 2003-BC9 / 1 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 2 | 0.000000% |
| US Bank | SAIL 2003-BC9 / 3 | 0.003657% |
| US Bank | SAIL 2004-10 / 1 | 0.000000% |
| US Bank | SAIL 2004-10 / 2 | 0.020774% |
| US Bank | SAIL 2004-10 / 3 | 0.009093% |
| US Bank | SAIL 2004-10 / 4 | 0.019061% |
| US Bank | SAIL 2004-2 / 1 | 0.000000% |
| US Bank | SAIL 2004-2 / 2 | 0.004715% |
| US Bank | SAIL 2004-2 / 3 | 0.000000% |
| US Bank | SAIL 2004-3 / 1 | 0.002379% |
| US Bank | SAIL 2004-3 / 2 | 0.017431% |
| US Bank | SAIL 2004-4 / 1 | 0.000000% |
| US Bank | SAIL 2004-4 / 2 | 0.000000% |
| US Bank | SAIL 2004-4 / 3 | 0.000000% |
| US Bank | SAIL 2004-5 / 1 | 0.000651% |
| US Bank | SAIL 2004-5 / 2 | 0.000929% |
| US Bank | SAIL 2004-6 / 1 | 0.002381% |
| US Bank | SAIL 2004-6 / 2 | 0.001584% |
| US Bank | SAIL 2004-8 / 1 | 0.000000% |
| US Bank | SAIL 2004-8 / 2 | 0.002003% |
| US Bank | SAIL 2004-8 / 3 | 0.000000% |
| US Bank | SAIL 2004-8 / 4 | 0.003276% |
| US Bank | SAIL 2004-8 / 5 | 0.011847% |
| US Bank | SAIL 2004-9 / 1 | 0.000745% |
| US Bank | SAIL 2004-9 / 2 | 0.004372% |
| US Bank | SAIL 2004-9 / 3 | 0.001530% |
| US Bank | SAIL 2005-1 / 1 | 0.000000% |
| US Bank | SAIL 2005-1 / 2 | 0.018902% |
| US Bank | SAIL 2005-1 / 3 | 0.020621% |
| US Bank | SAIL 2005-10 / 1 | 0.000018% |
| US Bank | SAIL 2005-10 / 2 | 0.000000% |
| US Bank | SAIL 2005-10 / 3 | 0.018075% |
| US Bank | SAIL 2005-11 / 1 | 0.002021% |

| | | |
|---|---|---|
| US Bank | SAIL 2005-11 / 2 | 0.000000% |
| US Bank | SAIL 2005-11 / 3 | 0.025150% |
| US Bank | SAIL 2005-2 / 1 | 0.013629% |
| US Bank | SAIL 2005-2 / 2 | 0.004903% |
| US Bank | SAIL 2005-3 / 1 | 0.000000% |
| US Bank | SAIL 2005-3 / 2 | 0.010890% |
| US Bank | SAIL 2005-3 / 3 | 0.004563% |
| US Bank | SAIL 2005-3 / 4 | 0.000000% |
| US Bank | SAIL 2005-4 / 1 | 0.062889% |
| US Bank | SAIL 2005-4 / 2 | 0.052243% |
| US Bank | SAIL 2005-5 / 1 | 0.000000% |
| US Bank | SAIL 2005-5 / 2 | 0.044159% |
| US Bank | SAIL 2005-5 / 3 | 0.030846% |
| US Bank | SAIL 2005-5 / 4 | 0.027217% |
| US Bank | SAIL 2005-6 / 1 | 0.000000% |
| US Bank | SAIL 2005-6 / 2 | 0.012233% |
| US Bank | SAIL 2005-6 / 3 | 0.023835% |
| US Bank | SAIL 2005-6 / 4 | 0.048166% |
| US Bank | SAIL 2005-7 / 1 | 0.027160% |
| US Bank | SAIL 2005-7 / 2 | 0.037440% |
| US Bank | SAIL 2005-8 / 1 | 0.031559% |
| US Bank | SAIL 2005-8 / 2 | 0.055215% |
| US Bank | SAIL 2005-9 / 1 | 0.000000% |
| US Bank | SAIL 2005-9 / 2 | 0.000000% |
| US Bank | SAIL 2005-9 / 3 | 0.037779% |
| US Bank | SAIL 2005-HE3 / 1 | 0.031341% |
| US Bank | SAIL 2005-HE3 / 2 | 0.031600% |
| US Bank | SAIL 2006-1 / 1 | 0.020272% |
| US Bank | SAIL 2006-2 / 1 | 0.043225% |
| US Bank | SAIL 2006-4 / 1 | 0.000000% |
| US Bank | SAIL 2006-4 / 2 | 0.009465% |
| US Bank | SAIL 2006-4 / 3 | 0.016682% |
| US Bank | SAIL 2006-BNC3 / 1 | 1.853131% |
| US Bank | SAIL 2006-BNC3 / 2 | 1.984505% |
| US Bank | SARM 2005-22 / 1 | 0.224487% |
| US Bank | SARM 2005-22 / 2 | 0.088204% |
| US Bank | SARM 2005-22 / 3 | 0.000000% |
| US Bank | SARM 2005-22 / 4 | 0.000000% |
| US Bank | SARM 2005-22 / 5 | 0.153723% |

- 17 -

| US Bank | SARM 2005-23 / 1 | 0.152283% |
| US Bank | SARM 2005-23 / 2 | 0.127682% |
| US Bank | SARM 2005-23 / 3 | 0.147378% |
| US Bank | SARM 2005-23 / 4 | 0.000000% |
| US Bank | SARM 2005-6XS / 1 | 0.158228% |
| US Bank | SARM 2005-8XS / 1 | 0.167643% |
| US Bank | SARM 2006-1 / 1 | 0.090431% |
| US Bank | SARM 2006-1 / 2 | 0.043361% |
| US Bank | SARM 2006-1 / 3 | 0.000000% |
| US Bank | SARM 2006-1 / 4 | 0.189958% |
| US Bank | SARM 2006-1 / 5 | 0.032162% |
| US Bank | SARM 2006-1 / 6 | 0.110819% |
| US Bank | SARM 2006-1 / 7 | 0.000000% |
| US Bank | SARM 2006-1 / 8 | 0.101616% |
| US Bank | SARM 2006-10 / 1 | 0.000000% |
| US Bank | SARM 2006-10 / 2 | 0.051032% |
| US Bank | SARM 2006-10 / 3 | 0.054674% |
| US Bank | SARM 2006-11 / 1 | 0.285091% |
| US Bank | SARM 2006-11 / 2 | 0.052407% |
| US Bank | SARM 2006-11 / 3 | 0.034068% |
| US Bank | SARM 2006-12 / 1 | 0.415504% |
| US Bank | SARM 2006-12 / 2 | 0.047158% |
| US Bank | SARM 2006-2 / 1 | 0.088211% |
| US Bank | SARM 2006-2 / 2 | 0.116346% |
| US Bank | SARM 2006-2 / 3 | 0.090787% |
| US Bank | SARM 2006-2 / 4 | 0.284508% |
| US Bank | SARM 2006-2 / 5 | 0.098247% |
| US Bank | SARM 2006-3 / 1 | 0.108397% |
| US Bank | SARM 2006-3 / 2 | 0.059825% |
| US Bank | SARM 2006-3 / 3 | 0.110221% |
| US Bank | SARM 2006-3 / 4 | 0.119412% |
| US Bank | SARM 2006-4 / 1 | 0.153813% |
| US Bank | SARM 2006-4 / 2 | 0.072317% |
| US Bank | SARM 2006-4 / 3 | 0.093587% |
| US Bank | SARM 2006-4 / 4 | 0.023258% |
| US Bank | SARM 2006-4 / 5 | 0.246539% |
| US Bank | SARM 2006-4 / 6 | 0.133100% |
| US Bank | SARM 2006-4 / 7 | 0.000000% |
| US Bank | SARM 2006-5 / 1 | 0.061507% |

| US Bank | SARM 2006-5 / 2 | 0.135872% |
|---|---|---|
| US Bank | SARM 2006-5 / 3 | 0.190280% |
| US Bank | SARM 2006-5 / 4 | 0.052103% |
| US Bank | SARM 2006-5 / 5 | 0.094904% |
| US Bank | SARM 2006-6 / 1 | 0.133156% |
| US Bank | SARM 2006-6 / 2 | 0.188455% |
| US Bank | SARM 2006-6 / 3 | 0.098324% |
| US Bank | SARM 2006-7 / 1 | 0.021553% |
| US Bank | SARM 2006-7 / 2 | 0.075574% |
| US Bank | SARM 2006-7 / 3 | 0.147236% |
| US Bank | SARM 2006-7 / 4 | 0.064788% |
| US Bank | SARM 2006-8 / 1 | 0.000000% |
| US Bank | SARM 2006-8 / 2 | 0.140340% |
| US Bank | SARM 2006-8 / 3 | 0.000000% |
| US Bank | SARM 2006-8 / 4 | 0.000000% |
| US Bank | SARM 2006-9 / 1 | 0.121490% |
| US Bank | SARM 2006-9 / 2 | 0.012400% |
| US Bank | SARM 2006-9 / 3 | 0.050361% |
| US Bank | SARM 2006-9 / 4 | 0.000000% |
| US Bank | SARM 2007-10 / 1 | 0.418956% |
| US Bank | SARM 2007-10 / 2 | 0.352233% |
| US Bank | SARM 2007-8 / 1 | 0.524086% |
| US Bank | SARM 2007-8 / 2 | 0.233335% |
| US Bank | SARM 2008-2 / 1 | 0.176724% |
| US Bank | SASCO 2003-25XS / 1 | 0.016419% |
| US Bank | SASCO 2003-39EX / 1 | 0.034170% |
| US Bank | SASCO 2003-GEL1 / 1 | 0.004737% |
| US Bank | SASCO 2003-NP1 / 1 | 0.004274% |
| US Bank | SASCO 2004-10 / 4 | 0.040548% |
| US Bank | SASCO 2004-11XS / 1 | 0.037679% |
| US Bank | SASCO 2004-11XS / 2 | 0.001614% |
| US Bank | SASCO 2004-13 / 1 | 0.000000% |
| US Bank | SASCO 2004-13 / 2 | 0.041289% |
| US Bank | SASCO 2004-17XS / 1 | 0.028814% |
| US Bank | SASCO 2004-19XS / 1 | 0.026352% |
| US Bank | SASCO 2004-20 / 1 | 0.000574% |
| US Bank | SASCO 2004-20 / 2 | 0.008173% |
| US Bank | SASCO 2004-20 / 3 | 0.005517% |
| US Bank | SASCO 2004-20 / 4 | 0.020767% |

| US Bank | SASCO 2004-20 / 5 | 0.008046% |
|---------|-------------------|-----------|
| US Bank | SASCO 2004-20 / 6 | 0.000000% |
| US Bank | SASCO 2004-20 / 7 | 0.000021% |
| US Bank | SASCO 2004-20 / 8 | 0.008707% |
| US Bank | SASCO 2004-21XS / 1 | 0.049709% |
| US Bank | SASCO 2004-21XS / 2 | 0.016566% |
| US Bank | SASCO 2004-2AC / 1 | 0.042243% |
| US Bank | SASCO 2004-6XS / 1 | 0.025015% |
| US Bank | SASCO 2004-7 / 1 | 0.033747% |
| US Bank | SASCO 2004-7 / 2 | 0.001088% |
| US Bank | SASCO 2004-7 / 3 | 0.005477% |
| US Bank | SASCO 2004-9XS / 1 | 0.046737% |
| US Bank | SASCO 2004-9XS / 2 | 0.009750% |
| US Bank | SASCO 2004-GEL1 / 1 | 0.011649% |
| US Bank | SASCO 2004-GEL2 / 1 | 0.008805% |
| US Bank | SASCO 2004-GEL3 / 1 | 0.002683% |
| US Bank | SASCO 2004-NP1 / 1 | 0.007823% |
| US Bank | SASCO 2004-S2 / 1 | 0.005952% |
| US Bank | SASCO 2004-S3 / 1 | 0.006036% |
| US Bank | SASCO 2004-S3 / 2 | 0.013127% |
| US Bank | SASCO 2004-S4 / 1 | 0.059859% |
| US Bank | SASCO 2005-14 / 1 | 0.008746% |
| US Bank | SASCO 2005-14 / 2 | 0.008792% |
| US Bank | SASCO 2005-14 / 3 | 0.020391% |
| US Bank | SASCO 2005-14 / 4 | 0.041388% |
| US Bank | SASCO 2005-3 / 1 | 0.058777% |
| US Bank | SASCO 2005-7XS / 1 | 0.071050% |
| US Bank | SASCO 2005-7XS / 2 | 0.078792% |
| US Bank | SASCO 2005-GEL2 / 1 | 0.010236% |
| US Bank | SASCO 2005-GEL2 / 2 | 0.001913% |
| US Bank | SASCO 2005-GEL3 / 1 | 0.016596% |
| US Bank | SASCO 2005-GEL4 / 1 | 0.029040% |
| US Bank | SASCO 2005-RF1 / 1 | 0.000040% |
| US Bank | SASCO 2005-RF2 / 1 | 0.000869% |
| US Bank | SASCO 2005-RF4 / 2 | 0.000913% |
| US Bank | SASCO 2005-RF5 / 1 | 0.000212% |
| US Bank | SASCO 2005-RF5 / 2 | 0.000000% |
| US Bank | SASCO 2005-RF6 / 1 | 0.000017% |
| US Bank | SASCO 2005-RF7 / 1 | 0.000682% |

EXECUTION VERSION

| US Bank | SASCO 2005-S1 / 1 | 0.016985% |
|---------|-------------------|-----------|
| US Bank | SASCO 2005-S1 / 2 | 0.074697% |
| US Bank | SASCO 2005-S2 / 1 | 0.107416% |
| US Bank | SASCO 2005-S3 / 1 | 0.232562% |
| US Bank | SASCO 2005-S4 / 1 | 0.043521% |
| US Bank | SASCO 2005-S5 / 1 | 0.379139% |
| US Bank | SASCO 2005-SC1 / 1 | 0.212532% |
| US Bank | SASCO 2006-BC2 / 1 | 0.659689% |
| US Bank | SASCO 2006-BC2 / 2 | 0.008230% |
| US Bank | SASCO 2006-BC3 / 1 | 0.042642% |
| US Bank | SASCO 2006-BC3 / 2 | 0.086333% |
| US Bank | SASCO 2006-BC4 / 1 | 0.021788% |
| US Bank | SASCO 2006-BC4 / 2 | 0.049696% |
| US Bank | SASCO 2006-BC6 / 1 | 0.772772% |
| US Bank | SASCO 2006-BC6 / 2 | 0.670175% |
| US Bank | SASCO 2006-GEL1 / 1 | 0.018225% |
| US Bank | SASCO 2006-GEL2 / 1 | 0.008997% |
| US Bank | SASCO 2006-GEL3 / 1 | 0.007282% |
| US Bank | SASCO 2006-GEL3 / 2 | 0.000000% |
| US Bank | SASCO 2006-GEL4 / 1 | 0.046913% |
| US Bank | SASCO 2006-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF2 / 1 | 0.001991% |
| US Bank | SASCO 2006-RF3 / 1 | 0.000480% |
| US Bank | SASCO 2006-RF3 / 2 | 0.000000% |
| US Bank | SASCO 2006-RF3 / 3 | 0.000398% |
| US Bank | SASCO 2006-RF3 / 4 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 1 | 0.000000% |
| US Bank | SASCO 2006-RF4 / 2 | 0.000225% |
| US Bank | SASCO 2006-RF4 / 3 | 0.000000% |
| US Bank | SASCO 2006-S1 / 1 | 1.286686% |
| US Bank | SASCO 2006-Z / 1 | 0.125224% |
| US Bank | SASCO 2006-Z / 2 | 0.163178% |
| US Bank | SASCO 2007-BC2 / 1 | 0.018223% |
| US Bank | SASCO 2007-BC2 / 2 | 0.056520% |
| US Bank | SASCO 2007-BC3 / 1 | 0.682815% |
| US Bank | SASCO 2007-BC3 / 2 | 0.617148% |
| US Bank | SASCO 2007-BC4 / 1 | 1.341653% |
| US Bank | SASCO 2007-BC4 / 2 | 1.475628% |

DB1/ 91137811.2

**EXECUTION VERSION**

| US Bank | SASCO 2007-BNC1 / 1 | 0.950916% |
| US Bank | SASCO 2007-BNC1 / 2 | 1.402866% |
| US Bank | SASCO 2007-GEL1 / 1 | 0.199334% |
| US Bank | SASCO 2007-GEL2 / 1 | 0.255981% |
| US Bank | SASCO 2007-RF1 / 1 | 0.000000% |
| US Bank | SASCO 2007-RF1 / 2 | 0.000000% |
| US Bank | SASCO 2007-TC1 / 1 | 0.238499% |
| Wilmington Trust | BNC 2007-3 / 1 | 1.032133% |
| Wilmington Trust | BNC 2007-3 / 2 | 0.490340% |
| Wilmington Trust | LMT 2006-1 / 1 | 0.128637% |
| Wilmington Trust | LMT 2006-1 / 2 | 0.023404% |
| Wilmington Trust | LMT 2006-1 / 3 | 0.051984% |
| Wilmington Trust | LMT 2006-4 / 1 | 0.011941% |
| Wilmington Trust | LMT 2006-4 / 2 | 0.001525% |
| Wilmington Trust | LXS 2005-1 / 1 | 0.166349% |
| Wilmington Trust | LXS 2005-1 / 2 | 0.167067% |
| Wilmington Trust | LXS 2005-1 / 3 | 0.054199% |
| Wilmington Trust | LXS 2005-10 / 1 | 0.305489% |
| Wilmington Trust | LXS 2005-10 / 2 | 0.200249% |
| Wilmington Trust | LXS 2005-3 / 1 | 0.242947% |
| Wilmington Trust | LXS 2005-3 / 2 | 0.227732% |
| Wilmington Trust | LXS 2005-3 / 3 | 0.105695% |
| Wilmington Trust | LXS 2005-6 / 1 | 0.264233% |
| Wilmington Trust | LXS 2005-6 / 2 | 0.187614% |
| Wilmington Trust | LXS 2005-6 / 3 | 0.214582% |
| Wilmington Trust | LXS 2005-8 / 1 | 0.270499% |
| Wilmington Trust | LXS 2005-8 / 2 | 0.195244% |
| Wilmington Trust | LXS 2006-1 / 1 | 0.287423% |
| Wilmington Trust | LXS 2006-1 / 2 | 0.218340% |
| Wilmington Trust | LXS 2006-13 / 1 | 0.731870% |
| Wilmington Trust | LXS 2006-13 / 2 | 0.043277% |
| Wilmington Trust | LXS 2006-17 / 1 | 1.227788% |
| Wilmington Trust | LXS 2006-17 / 2 | 0.000000% |
| Wilmington Trust | LXS 2006-5 / 1 | 0.744378% |
| Wilmington Trust | LXS 2006-5 / 2 | 0.234677% |
| Wilmington Trust | LXS 2006-7 / 1 | 0.876394% |
| Wilmington Trust | LXS 2006-7 / 2 | 0.369689% |
| Wilmington Trust | LXS 2006-9 / 1 | 0.538173% |
| Wilmington Trust | LXS 2006-9 / 2 | 0.328633% |

EXECUTION VERSION

| Wilmington Trust | LXS 2007-11 / 1 | 1.110351% |
|---|---|---|
| Wilmington Trust | SARM 2005-3XS / 1 | 0.037970% |
| Wilmington Trust | SASCO 2003-12XS / 1 | 0.003221% |
| Wilmington Trust | SASCO 2003-18XS / 1 | 0.008246% |
| Wilmington Trust | SASCO 2003-28XS / 1 | 0.004696% |
| Wilmington Trust | SASCO 2003-29 / 1 | 0.005971% |
| Wilmington Trust | SASCO 2003-29 / 2 | 0.001001% |
| Wilmington Trust | SASCO 2003-29 / 3 | 0.003988% |
| Wilmington Trust | SASCO 2003-29 / 4 | 0.002210% |
| Wilmington Trust | SASCO 2003-29 / 5 | 0.005912% |
| Wilmington Trust | SASCO 2003-30 / 1 | 0.025074% |
| Wilmington Trust | SASCO 2003-30 / 2 | 0.001480% |
| Wilmington Trust | SASCO 2003-30 / 3 | 0.015082% |
| Wilmington Trust | SASCO 2003-35 / 1 | 0.000555% |
| Wilmington Trust | SASCO 2003-35 / 2 | 0.001603% |
| Wilmington Trust | SASCO 2003-35 / 3 | 0.013751% |
| Wilmington Trust | SASCO 2003-35 / 4 | 0.019244% |
| Wilmington Trust | SASCO 2003-36XS / 1 | 0.023291% |
| Wilmington Trust | SASCO 2003-38 / 1 | 0.009282% |
| Wilmington Trust | SASCO 2003-38 / 2 | 0.003798% |
| Wilmington Trust | SASCO 2003-3XS / 1 | 0.004044% |
| Wilmington Trust | SASCO 2003-S1 / 1 | 0.020231% |
| Wilmington Trust | SASCO 2004-15 / 1 | 0.000156% |
| Wilmington Trust | SASCO 2004-15 / 2 | 0.000000% |
| Wilmington Trust | SASCO 2004-15 / 3 | 0.012284% |
| Wilmington Trust | SASCO 2004-15 / 4 | 0.000677% |
| Wilmington Trust | SASCO 2004-16XS / 1 | 0.032070% |
| Wilmington Trust | SASCO 2004-18H / 1 | 0.000796% |
| Wilmington Trust | SASCO 2004-22 / 1 | 0.015932% |
| Wilmington Trust | SASCO 2004-23XS / 1 | 0.039230% |
| Wilmington Trust | SASCO 2004-23XS / 2 | 0.055258% |
| Wilmington Trust | SASCO 2004-4XS / 1 | 0.015873% |
| Wilmington Trust | SASCO 2004-4XS / 2 | 0.016730% |
| Wilmington Trust | SASCO 2005-1 / 1 | 0.062667% |
| Wilmington Trust | SASCO 2005-1 / 2 | 0.006624% |
| Wilmington Trust | SASCO 2005-1 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-1 / 5 | 0.001916% |
| Wilmington Trust | SASCO 2005-1 / 6 | 0.074564% |

DB1/ 91137811.2

| | | |
|---|---|---|
| Wilmington Trust | SASCO 2005-1 / 7 | 0.043110% |
| Wilmington Trust | SASCO 2005-10 / 1 | 0.042529% |
| Wilmington Trust | SASCO 2005-10 / 2 | 0.017863% |
| Wilmington Trust | SASCO 2005-10 / 3 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 4 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 5 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 6 | 0.000000% |
| Wilmington Trust | SASCO 2005-10 / 7 | 0.002397% |
| Wilmington Trust | SASCO 2005-10 / 8 | 0.038340% |
| Wilmington Trust | SASCO 2005-11H / 1 | 0.000000% |
| Wilmington Trust | SASCO 2005-15 / 1 | 0.006576% |
| Wilmington Trust | SASCO 2005-15 / 2 | 0.035261% |
| Wilmington Trust | SASCO 2005-15 / 3 | 0.008890% |
| Wilmington Trust | SASCO 2005-15 / 4 | 0.042647% |
| Wilmington Trust | SASCO 2005-15 / 5 | 0.014276% |
| Wilmington Trust | SASCO 2005-17 / 1 | 0.001003% |
| Wilmington Trust | SASCO 2005-17 / 2 | 0.005479% |
| Wilmington Trust | SASCO 2005-17 / 3 | 0.019832% |
| Wilmington Trust | SASCO 2005-17 / 4 | 0.037825% |
| Wilmington Trust | SASCO 2005-17 / 5 | 0.042364% |
| Wilmington Trust | SASCO 2005-2XS / 1 | 0.047617% |
| Wilmington Trust | SASCO 2005-2XS / 2 | 0.048195% |
| Wilmington Trust | SASCO 2005-4XS / 1 | 0.062751% |
| Wilmington Trust | SASCO 2005-4XS / 2 | 0.047130% |
| Wilmington Trust | SASCO 2005-4XS / 3 | 0.010096% |
| Wilmington Trust | SASCO 2005-5 / 1 | 0.077738% |
| Wilmington Trust | SASCO 2005-5 / 2 | 0.029624% |
| Wilmington Trust | SASCO 2005-5 / 3 | 0.023057% |
| Wilmington Trust | SASCO 2005-5 / 4 | 0.000009% |
| Wilmington Trust | SASCO 2005-9XS / 1 | 0.107536% |
| Wilmington Trust | SASCO 2005-9XS / 2 | 0.080869% |
| Wilmington Trust | SASCO 2006-S2 / 1 | 1.811246% |
| Wilmington Trust | SASCO 2006-S3 / 1 | 1.020158% |
| Wilmington Trust | SASCO 2006-S4 / 1 | 1.465131% |
| **Total** | | **100.000000%** |

**EXECUTION VERSION**

## **EXHIBIT I**

## **DEBTORS' FINDINGS**

1. This Court has jurisdiction to hear this motion and adjudicate the Motion.

2. All parties entitled to receive notice of the Motion have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of this Motion, and constitutes due and sufficient notice of this Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the LBHI Debtors has acted in good faith and exercised sound business judgment in connection with its determination to enter into and execute the Settlement Agreement. Approval of the Settlement Agreement is in the best interests of the LBHI Debtors, their respective estates and creditors.