**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

| | |
|---|---|
| In re | ) |
| | ) |
| Lehman Brothers Holdings Inc., et al., | ) |
| | ) |
| Debtors. | ) |
| | ) |

Chapter 11 Case No.

08-13555 (SCC)

Jointly Administered

---------------------------------------------------------x

### DECLARATION OF JUDITH K. FITZGERALD IN CONNECTION WITH
### RMBS TRUSTEES' STATEMENT IN SUPPORT OF LBHI DEBTORS' 9019 MOTION

1.      I was retained as an expert by Morgan, Lewis & Bockius LLP, Chapman and

Cutler LLP, Alston & Bird LLP, Seward & Kissel LLP, and Nixon Peabody LLP in their

capacity as the respective counsel (collectively "Counsel") for U.S. Bank National Association,

Wilmington Trust Company and Wilmington Trust, National Association, TMI Trust Company

(successor to Law Debenture Trust Company of New York) and Deutsche Bank National Trust

Company, each acting solely in its capacity as trustees, indenture trustee, and/or successor

trustees (collectively, the "Trustees").  I have personal knowledge of the facts set forth herein.  I

offer this affidavit in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed.*

*R. Bankr. P. 9019 and 11 U.S.C § 105(A) for Entry of Order (A) Approving RMBS Settlement*

*Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and*

*LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding*

*to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing,*

*and (D) Granting Related Relief* [Docket No. 55232] (the "Motion").  Specifically, I offer this

affidavit in support of the Trustee Findings set forth in Exhibit F of the RMBS Settlement
Agreement.[1]

## SCOPE OF MY WORK

2.      I was retained by Counsel to form an independent opinion of the reasonableness
of the RMBS Settlement Agreement among Lehman Brothers Holdings Inc. (with its direct and
indirect subsidiaries, the "LBHI Debtors"), the Institutional Investors, and the Trustees as a
means of resolving the Trustees' claims in the Bankruptcy Proceeding submitted through the
Protocol.  Specifically, I was asked to recommend whether the RMBS Settlement Agreement
should be accepted or rejected for each of the 244 affected RMBS Trusts (the "Covered Trusts").

3.      My compensation is not tied to the content of my Expert Report (as defined
below) or the results of the proceeding.

## MY QUALIFICATIONS

4.      I am an attorney in good standing and licensed to practice in the state courts of
Pennsylvania and the federal courts in the Western District of Pennsylvania.  I have also
practiced in the federal courts in the Southern District of West Virginia and the Eastern District
of Virginia on a *pro hac vice* basis.  I am a 1970 graduate of the University of Pittsburgh, and a
1973 graduate of the University of Pittsburgh School of Law.  I was admitted to the Bar of the
Commonwealth of Pennsylvania in 1973.

5.      I took the oath of office as a United States Bankruptcy Judge on October 30,
1987.  I sat in the Western District of Pennsylvania for over 25 years and during that time, also
sat by designation in the District of Delaware for 20 years, the Eastern District of Pennsylvania
for 8 years, and the United States Virgin Islands for 9 years.  I served as Chief Judge in the
Western District of Pennsylvania Bankruptcy Court for 5 years.  My experience on the bench

---

[1] Any terms used but not defined here are defined in RMBS Settlement Agreement.

2

encompassed business and individual reorganization cases in chapter 11, individual and business cases in chapter 7, individual cases in chapter 13, and family farmer cases in chapter 12. I adjudicated hundreds of chapter 11 cases and thousands of chapter 13 cases through plan confirmation. I have considered and ruled on hundreds of motions to approve settlements as stand-alone motions and in conjunction with plan confirmation. Many of the cases on my docket required a determination of the reasonableness of settlement agreements for the purposes of liquidating and/or paying claims, including assessing whether the agreements were entered into at arm's length and in good faith.

6.    Immediately before I was appointed to the bench, I was an Assistant United States Attorney for the Western District of Pennsylvania for nearly 12 years. In that capacity, I actively litigated civil, criminal, and bankruptcy cases and argued cases on appeal to the United States Court of Appeals for the Third Circuit. Prior to my employment with the Office of the United States Attorney, I served as a judicial law clerk.

7.    For many years I have taught as an Adjunct Professor, and continue to teach as a Professor of Practice, at the University of Pittsburgh School of Law. I retired from my position as a United States Bankruptcy Judge on May 31, 2013 and became a tenured professor of law at Indiana Tech Law School for two years between 2013 and 2015.

8.    On December 1, 2013, I affiliated as Of Counsel with the Pittsburgh based law firm of Tucker Arensberg, P.C., and I have been a shareholder since August 31, 2014.

9.    The primary areas of my practice for the past forty years have been complex litigation in bankruptcy, criminal, and civil contexts both as a judge and as a litigator, and teaching and practicing bankruptcy and commercial law. I have received numerous recognitions

and honors; those accolades, as well as additional details about my background, are described more fully my *curriculum vitae*, a true and correct copy of which is attached hereto as **Exhibit 1**.

10.     Regarding the opinion I have been asked to render, my experience has been informed by, *inter alia*, the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*; the Federal Rules of Bankruptcy Procedure; the general standards applicable to settlements of class actions under Federal Rule of Civil Procedure 23; and applicable case law concerning, among other things, settlements, claims objections, and claims estimations.  Additionally, as a Bankruptcy Judge who sat in four jurisdictions, I examined and ruled on hundreds of settlements and presided over bankruptcy cases in which indenture trustees, mortgage servicers, and representatives or agents of other loan parties appeared.  My collective experience gives me the necessary background and expertise to address the matter on which I have been asked to opine.  Further details as to my qualifications appear in Part I of my report, The Expert Report of Judith K. Fitzgerald (the "Expert Report"), attached hereto as **Exhibit 2**.  I was assisted throughout the process by my colleagues at Tucker Arensberg, P.C.

## MY PROCESS AND ANALYSIS

11.     At the outset of my engagement, the Trustees provided me with a copy of the November 2016 Settlement Agreement that was presented to them by the LBHI Debtors and the Institutional Investors.  After a thorough review of the November 2016 Settlement Agreement, I provided comments to the Trustees identifying concerns with respect to a few specific provisions.  I understand that the Trustees relayed my feedback to the LBHI Debtors, which ultimately led to a March 2017 modification of the November 2016 Settlement Agreement.  The Trustees provided me with the March 2017 modified version ("the RMBS Settlement

Agreement"), which I carefully analyzed. The RMBS Settlement Agreement addressed to my satisfaction the issues I raised with the November 2016 Settlement Agreement.

12.    In preparing my Expert Report, and throughout the evaluation process, I participated in conference calls with the Trustees (typically on a weekly basis), as well as additional ad hoc telephone calls and in-person meetings. During these calls and meetings, I identified information necessary to prepare my Expert Report. The Trustees also facilitated a conference call between the Trustees' expert financial consultants, Duff and Phelps, and me to answer questions that I had.

13.    As a result of our calls and meetings, and per my requests, I was provided with a substantial number of documents and comprehensive volumes of data. The data included: representative copies of the Governing Agreements; summaries of certain agreement provisions; examples of the types of alleged breaches of representations and warranties; information related to the Protocol; the costs required to comply with the Protocol; and case law concerning, among other things, prior RMBS settlements. The materials consisted of thousands of pages of documents and data. I have been provided with every document that I requested.

14.    I was also provided with the notices disseminated by the Trustees related to the RMBS Settlement Agreement, which, along with the above-referenced materials, were kept in an electronic data room for my ease of access.

15.    The Trustees further provided me with the feedback that they received from Certificate Holders[2] throughout their evaluation of the RMBS Settlement Agreement. I thoroughly reviewed and considered all such feedback.

---

[2] I refer to the investors including the Institutional Investors collectively as the "Certificate Holders."

16.    I analyzed the RMBS Settlement Agreement, drawing upon factors that bankruptcy courts typically utilize when assessing the reasonableness of a proposed settlement, i.e., whether accepting it would be in the best interests of the bankruptcy estate and its creditors.

17.    I considered the litigation positions of the LBHI Debtors in disputing the RMBS Claims and the cost, time and efforts of the Trustees in pursuit of the RMBS Claims. I also considered the opinions of other experts retained by the Trustees, as well as applicable law regarding residential mortgage-backed securitization trusts and settlements by RMBS trustees.

18.    Finally, to assess the benefit of the RMBS Settlement Agreement to the Certificate Holders, in addition to what is set forth above, I also:

- reviewed the representations and warranties alleged to have been breached and evaluated the difficulty, time and expense required to prove breaches without the certainty provided by Exhibit "G" to the RMBS Settlement Agreement;

- considered the actions undertaken by the Trustees to ascertain the allowed amount of the RMBS Claims arising pursuant to the Governing Agreements, as defined below, with respect to breaches of representations and warranties;

- took note of the significant effort undertaken by Trustees in negotiating certain changes to and entering into the RMBS Settlement Agreement and the changes made for the benefit of the Certificate Holders that resulted from Trustees' participation in the negotiations;

- factored in the Bankruptcy Court's *Order Approving and Establishing Notice Procedures with Respect to Proposed RMBS Settlement Agreement* [Docket No. 55154], the notices regarding the RMBS Settlement Agreement transmitted to

Certificate Holders, and the notices of the Motion and response deadlines and

hearing date, transmitted to Certificate Holders;

- recognized that the RMBS Settlement Agreement provides that distributions will

  be made in accordance with the Governing Agreements;

- considered the recommendation of the Institutional Investors; and

- considered the comments provided by other Certificate Holders.

19.    After completing my review of the relevant documents and data, I prepared and

submitted my Expert Report to the Trustees on May 28, 2017.

## MY EXPERT REPORT

20.    My methodology in assessing the RMBS Settlement Agreement is described in

Part I, Section G of my Expert Report.

21.    Part II, Sections B1–B3 of my Expert Report (pp. 13–28) provide a factual

background of the dispute that led to the RMBS Settlement Agreement.

22.    Part II, Section B4 of my Expert Report (pp. 28–30) describes some significant

terms of the RMBS Settlement Agreement.

23.    Part II, Section C1 of my Expert Report (pp. 30–33) describes why I concluded

that the Trustees provided notice to the Certificate Holders and afforded them an opportunity to

be heard.

24.    Part II, Section C2 of my Expert Report (pp. 33–42) describes Investors' feedback

to the Trustees concerning the RMBS Settlement Agreement, which I considered carefully as

part of my analysis.  In this section, I explain why I disagreed with the points raised by the

Certificate Holders who opposed the RMBS Settlement Agreement.

25.    In Part II, Section C3 of my Expert Report (pp. 43–62), I explain my analysis of the RMBS Settlement Agreement, drawing upon factors that bankruptcy courts typically utilize when assessing the reasonableness of a proposed settlement in terms of whether accepting it would be in the best interests of the bankruptcy estate and its creditors.

26.    After considering these factors and others set forth above in Paragraphs 13–18, as well as the situation faced by the Trustees in this Bankruptcy Proceeding, I concluded to a reasonable degree of professional certainty, that the RMBS Settlement Agreement sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement Agreement, in the circumstances of this Bankruptcy Proceeding, would be appropriate as to all of the Accepting Trusts.

27.    As explained in n.3 of my Expert Report, I recommended that the Trustees not accept the RMBS Settlement Agreement with respect to five trusts that contain loans for which no claims were submitted through the Protocol.  I was not asked by the Trustees to consider claims relating to one Trust that terminated after March 17, 2017.

## SUPPLEMENT TO MY EXPERT REPORT

28.    After my Expert Report was sent to the Trustees, but before the June 1, 2017 Acceptance Date, U.S. Bank, National Association received additional correspondence from Certificate Holders.  This correspondence was provided to me by counsel to U.S. Bank National Association, and I considered carefully the investor feedback, which was substantively the same as the investor feedback I previously analyzed and addressed in my Expert Report.  Based on this additional correspondence, I drafted a supplement to my Expert Report (the "Supplement") confirming that the additional correspondence did not change the opinions as set forth in my

Expert Report.  I submitted the Supplement to the Trustees on June 1, 2017.  A true and correct copy of the Supplement is attached hereto as **Exhibit 3**.

29.     I declare under penalty of perjury that the foregoing is true and correct.


Date:   June 29, 2017

Hon. Judith K. Fitzgerald (Ret.)