IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>Lehman Brothers Holdings Inc., et al.,<br><br>                Debtors | Chapter 11 Case No.<br>08-13555 (SCC)<br><br><br>Jointly Administered |

**AFFIDAVIT OF JANE STROBEL OF TMI TRUST COMPANY REGARDING ITS ACCEPTANCE OF THE RMBS SETTLEMENT AGREEMENT AND IN SUPPORT OF LBHI'S RULE 9019 MOTION TO APPROVE IT**

STATE OF GEORGIA    )
                                  ) ss.:
COUNTY OF FULTON    )

        JANE STROBEL, being duly sworn, deposes and says:

        1.      I am Vice President, CCTS of TMI Trust Company ("TMI" or the "Separate Trustee"), the successor to Law Debenture Trust Company of New York ("Law Debenture").[1] Solely in TMI's capacity as Separate Trustee, I submit this affidavit in connection with TMI's acceptance of a settlement offer (the "RMBS Settlement Agreement") from LBHI concerning the Covered Loan Claims (as defined herein) and in support of LBHI's Motion[2] to

---

[1] Law Debenture was appointed on various dates as Separate Trustee for forty three of the Covered Trusts for which Wells Fargo Bank, National Association ("Wells Fargo") serves as trustee (the "43 Covered Trusts"). *See* Exhibit 1 for a list of the 43 Covered Trusts. On April 13, 2017, Law Debenture transferred to TMI its separate trustee business, including certain trust instruments under which Law Debenture was appointed to act by Wells Fargo (the "Trust Instruments"). TMI has assumed all responsibilities as separate trustee under the Trust Instruments, including for the 43 Covered Trusts.

[2] "Motion" means the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing,*

approve the RMBS Settlement Agreement, and specifically in support of the Trustees' entitlement to the Trustee Findings set forth in Exhibit F of the RMBS Settlement Agreement.

2. I have personal knowledge of the facts set forth herein, except as to certain matters that I believe to be true based on (a) information provided by the RMBS Trustees'[3] expert, (b) information about positions of parties in this adversary proceeding contained in pleadings that I reviewed, and (c) my review of business records of TMI and Law Debenture.

3. My responsibilities include, among other things, managing and overseeing matters relating to TMI's role as Separate Trustee to various RMBS trusts. TMI serves as Separate Trustee for the 43 Covered Trusts for which LBHI[4] has responsibility under the governing agreements for breaches of representations and warranties that materially and adversely affect the value of that loan to the Trust or its certificateholders (a "material breach").[5]

I. TERMS OF THE RMBS SETTLEMENT AGREEMENT

4. A group of institutional investors,[6] holding approximately $6 billion in certificates in 195 of the RMBS Trusts at issue, submitted the RMBS Settlement Agreement to

---

*and (D) Granting Related Relief*. Any terms not defined here are defined in the RMBS Settlement Agreement

[3] The RMBS Trustees are U.S. Bank National Association ("U.S. Bank"), Wilmington Trust Company and Wilmington Trust, National Association ("Wilmington Trust"), Deutsche Bank National Trust Company ("Deutsche Bank"), and TMI.

[4] "LBHI" refers to Lehman Brothers Holdings, Inc. and its affiliates that filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.

[5] Under the governing documents, the RMBS Trustees were assigned "all the right, title, and interest" in mortgages contained within the Trusts. For example, Trust Agreement ARC 2002-BC10, for which TMI is the Separate Trustee, provides at § 2.01(a): "Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05, and 2.06, in trust, all the right, title, and interest of the Depositor in and to the Mortgage Loans." This Trust Agreement is attached as Exhibit 2.

[6] The institutional investors are: AEGON USA Investment Management, LLC, BlackRock Financial Management, Inc., Cascade Investment, LLC; the Federal Home Loan Bank of

2

the RMBS Trustees dated as of November 30, 2016, modified as of March 17, 2017. The RMBS Settlement Agreement concerns claims involving Covered Loans in Covered RMBS Trusts ("Covered Loan Claims").[7] The Institutional Investors asked the RMBS Trustees to accept the RMBS Settlement Agreement. *See* U.S. Bank Aff. Ex. 4 at 2.[8]

5. The RMBS Settlement Agreement contemplated that LBHI would allow a Class 7 General Unsecured claim in the Chapter 11 Cases against LBHI (the "Allowed Claim") in an amount to be determined by the Bankruptcy Court after an estimation proceeding in accordance with the procedures set forth in Exhibit G to the RMBS Settlement Agreement (the "Estimation Proceeding").

6. In the Estimation Proceeding, LBHI will seek estimation of the Covered Loan Claims at a total amount of $2,416,000,000, without prejudice to LBHI's rights to argue for an amount less than $2,416,000,000. The RMBS Trustees will argue for an amount greater than $2,416,000,000. To the extent that the Bankruptcy Court decides that the Allowed Claim should be set at an amount (i) less than $2,000,000,000, such decision may be appealed by the RMBS Trustees; (ii) between $2,000,000,000 and $2,416,000,000, the Allowed Claim will be set at $2,416,000,000; and (iii) greater than $2,416,000,000, the Allowed Claim will be set at such

---

Atlanta; Goldman Sachs Asset Management L.P.; Invesco Advisers, L.P.; Voya Investment Management LLC; Kore Advisors, L.P.; Metropolitan Life Insurance Company; Pacific Investment Management Company LLC; Sealink Designated Activity Company, through its investment manager Neuberger Berman Europe Limited; The TCW Group, Inc. on behalf of itself and its subsidiaries; Thrivent Financial for Lutherans; Western Asset Management Company. These investors are referenced in this affidavit as the "Institutional Investors."

[7] "Covered Loans" refers to loans for which LBHI has acknowledged it would have responsibility if there was a material breach. "Covered RMBS Trusts" refers to trusts with Covered Loans.

[8] For the Court's convenience and to avoid duplicative submissions, I have cited to the Exhibits submitted with the affidavit of Brad Zwetzig of U.S. Bank. Exhibits are cited as "U.S. Bank Aff. Ex. __," etc.

3

greater amount.[9] The Bankruptcy Court's decision may be appealed by the RMBS Trustees only if the amount is less than $2,000,000,000. LBHI has no right of appeal. In exchange, LBHI will receive releases and waivers with respect to Covered Loan Claims.

## II.   THE SEPARATE TRUSTEE'S EVALUATION OF THE RMBS SETTLEMENT AGREEMENT

7.   Wells Fargo Bank, N.A. is trustee for each of the 43 Covered Trusts. In its capacity as Separate Trustee, TMI has authority to enforce and compromise repurchase claims against LBHI.

8.   TMI has retained the law firm Seward & Kissel LLP to represent it as outside counsel in connection with the RMBS Settlement Agreement. Seward & Kissel LLP had represented Law Debenture in connection with the RMBS Settlement Agreement and related matters until April 13, 2017, when TMI became the successor Separate Trustee.

9.   In connection with my oversight role relating to TMI's activities as a Separate Trustee for the 43 Covered Trusts, I was responsible for the Separate Trustee's review of the RMBS Settlement Agreement. I participated in calls with the other Trustees and their counsel, as well as calls with TMI's outside counsel concerning the RMBS Settlement Agreement.

## III.   THE SEPARATE TRUSTEE'S EVALUATION

10.   I am aware that, after receiving the RMBS Settlement Agreement in November 2016, the RMBS Trustees' counsel consulted with each other and began the process of identifying potential experts to assist the RMBS Trustees in their evaluation of the RMBS

---

[9]   The $2 billion and $2.416 billion figured described in subparagraphs (i), (ii) and (iii) of this paragraph would be reduced proportionately if one or more Covered RMBS Trusts are excluded from the RMBS Settlement Agreement. See RMBS Settlement Agreement, § 3.02.

4

Settlement Agreement. Ultimately, Judith Fitzgerald (Ret.), the former Chief Judge of the United States Bankruptcy Court for the Western District of Pennsylvania, was selected.

11. I am also aware that Judge Fitzgerald was to form an independent opinion on the reasonableness of the RMBS Settlement Agreement for each trust as a means of resolving the RMBS Trustees' Covered Loan Claims against LBHI. Based on the qualifications she presented in her report, I believe Judge Fitzgerald is qualified to provide the opinion for which she was retained and that the opinion is within her field of expertise. *See* Declaration of the Honorable Judge Judith K. Fitzgerald (Ret.) ("Fitzgerald Decl."), Ex. 2 (Expert Report of Judge Fitzgerald, dated May 28, 2017) (the "Fitzgerald Report"), at pages 1-3 & Ex. 1 therein.

### IV. THE EXPERT'S EVALUATION OF THE SETTLEMENT OFFER

12. I am aware that, at the outset of her review and throughout the process, Judge Fitzgerald requested documents and information from the RMBS Trustees to aid her evaluation of the RMBS Settlement Agreement. Counsel provided Judge Fitzgerald, among other documents, agreements governing the Trusts, summaries of the main representations and warranties in the governing documents, the Protocol Order and Protocol, status reports filed with the Bankruptcy Court regarding the Protocol, and other documents she requested.

13. Judge Fitzgerald provided comments to the Trustees including a few specific provisions that she believed needed to be changed to make the offer reasonable. Judge Fitzgerald believed, for example, that the Trustees had to be able to disclose the terms of a settlement to Investors and solicit their views, and that there needed to be a written procedure for how the estimation proceeding would be conducted.

14. Since TMI became the Separate Trustee, I participated in calls with the other Trustees, their counsel, and TMI's outside counsel regarding Judge Fitzgerald's progress and information and documents provided to her.

5

## V. THE TRUSTEES' COMMUNICATIONS WITH INVESTORS

15. The Trustees retained Garden City Group, LLC ("GCG") to assist in their efforts to provide information to Investors in the Trusts. GCG established and maintains a publicly accessible website containing among other documents, the RMBS Settlement Agreement, the letter from counsel for the Institutional Investors, investor notices, Judge Fitzgerald's expert report, the parties' filings, and orders of this Court at www.lbhirmbssettlement.com (the "Settlement Website").

16. I am aware that on March 20, 2017, the RMBS Trustees sent a notice to Investors informing them about the RMBS Settlement Agreement. *See* U.S. Bank Aff. Ex. 6. That notice provided the address of the Settlement Website, and where Investors and others could view the RMBS Settlement Agreement. The notice also set forth certain basic terms of the RMBS Settlement Agreement (including the Estimation Hearing, the releases to be provided to LBHI, and the Acceptance Date (as those terms are defined in the RMBS Settlement Agreement) by which the RMBS Trustees were initially required to reach a decision to accept or reject the RMBS Settlement Agreement). The RMBS Trustees urged any potentially interested persons to review the RMBS Settlement Agreement carefully and referred Investors to the Settlement Website for a complete copy of its terms. The RMBS Trustees also informed Investors that they had retained Judge Fitzgerald to assist them in evaluating the RMBS Settlement Agreement.

17. During the evaluation period, the RMBS Trustees posted a second notice dated April 21, 2017 regarding the circumstances leading up to the RMBS Settlement Agreement. *See* U.S. Bank Aff. Ex. 9.

## VI. COMMUNICATIONS WITH INVESTORS

18. I am aware that since 2012, our counsel had assisted Law Debenture, in its capacity as the former separate trustee, in pursuing repurchase claims in connection with proofs

of claims filed in the LBHI bankruptcy proceeding and other repurchase proceedings. The experience with the Protocol has shown that the pursuit of breach of representation and warranty claims is very expensive, very time consuming, and very uncertain.

19. Some Investors – separate from the Institutional Investors – favored settlement, while others expressed reservations. I had a written communication from a representative of Investors in three Covered Trusts and an indirect interest in another Covered Trust. Our counsel had oral and written communications with representatives of several Investors.

20. Our counsel provided a representative of several Investors who requested one with a form of a direction and indemnity letter.

21. No Investor or group of Investors ever responded to TMI regarding the form of direction and indemnity letter potentially to opt out of the RMBS Settlement Agreement.

**VII. EXPERT REPORT**

22. On May 22, 2017, Judge Fitzgerald met with the RMBS Trustees and their counsel to discuss her opinion and to answer any questions the Trustees had. I attended the meeting. Judge Fitzgerald discussed her analysis, answered questions, and noted her preliminary conclusions which recommended acceptance of the RMBS Settlement Agreement for all but six of the 244 Trusts, including the 43 Covered Trusts for which TMI is the Separate Trustee (the "Fitzgerald Report"). *See* Fitzgerald Decl., Ex. 2, at page 10, n. 3 (Fitzgerald Report).

23. In her Report, Judge Fitzgerald noted: "It is my opinion, to a reasonable degree of professional certainty, that the RMBS Settlement sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement, in the circumstances of this Bankruptcy Proceeding, would be appropriate …." Fitzgerald Decl., Ex. 2 at page 10 (Fitzgerald Report). Judge Fitzgerald did not recommend settlement for one trust that

7

had terminated, and thus was not a trust for which any Trustee could accept or reject the RMBS Settlement Agreement, and five other trusts that did not have a Covered Loan Claim. None of those six trusts was a trust for which TMI was the Separate Trustee.

### VIII. THE SEPARATE TRUSTEE'S DECISION TO ACCEPT THE SETTLEMENT OFFER

24. I reviewed the Fitzgerald Report and its opinion. After (a) considering Judge Fitzgerald's opinion that the Separate Trustee accept the RMBS Settlement Agreement on behalf of each of the 43 Covered Trusts, (b) my understanding regarding the cost and time associated with the Protocol process for resolving the Covered Loan Claims, and (c) the evidentiary hearing that would be held to afford the Trustees the opportunity promptly to estimate the amount of their allowed claims, I, on behalf of TMI, reached the decision to accept the RMBS Settlement Agreement on behalf of the 43 Covered Trusts.

25. On June 1, 2017, I executed the RMBS Settlement Agreement on behalf of TMI in its capacity as Separate Trustee of each of the 43 Covered Trusts.

### IX. NOTICE TO INVESTORS OF ACCEPTANCE OF THE RMBS SETTLEMENT AGREEMENT

26. On June 1, 2017, upon acceptance of the RMBS Settlement Agreement, the RMBS Trustees issued a notice informing Investors of their determinations, and posted a copy of that notice on the Settlement Website. The notice also reminded Investors of the deadline to file an objection to LBHI's Motion.

### CONCLUSION

27. For the reasons noted, TMI believes that TMI acted reasonably and in good faith in evaluating and accepting the RMBS Settlement Agreement for each of the 43 Covered Trusts, and believes that it is in the best interests of the Investors in each of the 43 Covered Trusts. Accordingly, TMI requests that the Court grant the Motion.

_____
Jane Strobel

Sworn to before me
June 29, 2017

_____
Notary Public

SK 29346 0009 7463033

[Notary Seal: Brandon Michael Lisinski, Notary Public, Forsyth County, Georgia, Expires July 31, 2018]

9