UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al*,

Debtors

Chapter 11

Case No. 08-13555 (SCC)

(Jointly Administered)

### AFFIDAVIT OF EDMOND ESSES IN CONNECTION WITH RMBS TRUSTEES' STATEMENT IN SUPPORT OF LBHI DEBTORS' 9019 MOTION

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

EDMOND ESSES, being duly sworn, deposes and says:

1. I am Director, Dispute and Investigations, of Duff & Phelps LLC ("Duff & Phelps"), who are the financial advisor to the RMBS Trustees (defined below). I have been employed by Duff & Phelps since December 10, 2010. I have personal knowledge of the facts set forth in this affidavit. I offer this affidavit in support of the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C § 105(A) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision of RMBS Trustees and LBHI Debtors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting Related Relief* [Docket No. 55232] (the "Motion"). Specifically, I offer this affidavit in support of the Trustee Findings set forth in Exhibit F of the RMBS Settlement Agreement.

2. In May 2013, Duff & Phelps was retained by Deutsche Bank National Trust Company ("Deutsche Bank"), Law Debenture Trust Company of New York ("LDTC") (since succeeded by TMI Trust Company, ("TMI")), U.S. Bank National Association ("U.S. Bank"), Wilmington Trust Company and Wilmington Trust, National Association (collectively, "Wilmington Trust" and together with Deutsche Bank, U.S. Bank, LDTC, and TMI, the "RMBS Trustees") in their several capacities as trustees or separate trustees and/or successor trustees under certain residential mortgage-backed securitization trusts (the "RMBS Trusts") sponsored by Lehman Brothers Holdings, Inc. or one of its affiliates ("LBHI"). Since its retention, Duff & Phelps has been acting as financial advisors to the RMBS Trustees concerning the proofs of claim that the RMBS Trustees filed against LBHI.

I. **The Protocol**

3. On December 29, 2014, this Court entered the *Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities* [Docket No. 47569] (the "Protocol Order"). Attached to the Protocol Order is the RMBS Claims Protocol (the "Protocol").

4. The Protocol requires the RMBS Trustees to assert their RMBS Claims (as defined in the Protocol Order) on a loan-by-loan, rolling basis. In order to meet the requirements of the Protocol, the RMBS Trustees requested Duff & Phelps's assistance with the preparation and submission of RMBS Claims to the LBHI Debtors. Duff & Phelps has also acted as a liaison for the RMBS Trustees with the advisors to LBHI, in its capacity as plan administrator (the "Plan Administrator").

5. Pursuant to the Protocol, the RMBS Trustees collected and reviewed approximately 172,000 mortgage loan files. The RMBS Trustees submitted 94,564 RMBS

Claims at Step 1 of the Protocol. Step 2 of the Protocol requires the Plan Administrator to review the RMBS Claims submitted by the RMBS Trustees. As of the end of Step 2 of the Protocol, the status of the submission and review of the RMBS Claim Files (as defined in the Protocol Order) is as follows: (i) the Plan Administrator approved 993 RMBS Claims (or 1.1% of the RMBS Claim Files submitted); (ii) for 64 RMBS Claims (or 0.1%), the Plan Administrator disputed the Purchase Price (as defined in the applicable Trust Agreement) provided by the RMBS Trustees; (iii) the Plan Administrator rejected 63,235 RMBS Claims (or 66.9%); and (iv) 30,272 RMBS Claims (or 32.0%) were deemed by the Plan Administrator to have insufficient documentation for review.[1]

6. After reviewing the Plan Administrator's responses, the RMBS Trustees rescinded 1,156 of the Rejected Claim Files (as defined in the Protocol Order). As of January 31, 2017, the RMBS Trustees additionally rescinded 991 RMBS Claims that had since paid off after submission of the RMBS Claims without any loss.

7. In accordance with the Protocol, the RMBS Trustees timely resubmitted the 61,088 Rejected Claim Files to the Plan Administrator with the RMBS Trustees' rebuttal. *See* Protocol V.a. For the 64 Approved Claims (as defined in the Protocol Order) for which the Plan Administrator disputed the Purchase Price, the RMBS Trustees have timely disputed the amount to be allowed for each such disputed Approved Claim. *See id.* V.b.

8. In summary, of the 94,564 RMBS Claim Files submitted by the RMBS Trustees in Step 1 of the Protocol, 91,424 RMBS Claim Files (or 96.7%) were unresolved and subject to "negotiation of a mutually acceptable allowed claim" under Step 3 of the Protocol. *Id.* V.a. and

---

[1] Duff & Phelps does not agree that the RMBS Claim Files are incomplete or that they have insufficient documentation on which the Plan Administrator could determine to accept (or reject) an RMBS Claim on each loan or determine the Purchase Price on each loan.

3

V.b. In other words, the Plan Administrator and the RMBS Trustees had resolved only 3.3% of the RMBS Claims through Step 2 of the Protocol process.

9. As required by Step 3 of the Protocol, representatives of the RMBS Trustees and the Plan Administrator met (by phone or in person) several times per week beginning in June 2016 in an attempt to negotiate mutually acceptable allowed RMBS Claims. The results of those meetings are as follows: 3,159 RMBS Claims were discussed; 63 RMBS Claims were accepted by the Plan Administrator during these discussions; 364 RMBS Claims were rescinded by the RMBS Trustees; and 2,732 of the RMBS Claims were not resolved.

10. For the 364 RMBS Claims that were rescinded in Step 3 of the Protocol, the RMBS Trustees reconsidered the RMBS Claims in light of new, factual information that the Plan Administrator had not provided during Step 2 of the Protocol.

11. Prior to the suspension of the Protocol, there were a total of 155 such meetings. The number of meetings in each week varied, but there were never more than seven such meetings in any week. The number of RMBS Claims reviewed in these meetings varied, but the number never exceeded 30. The fastest pace the parties achieved for discussing RMBS Claims Files in Step 3 of the Protocol was 150 per week. Less than 15% of the RMBS Claims reviewed during Step 3 of the Protocol were resolved by the parties. Unless changes were made to the Protocol or issues that were in dispute between the parties were resolved, Step 3 of the Protocol alone could take more than twelve years at that pace, and it would take many more years to complete the remaining steps of the Protocol for all of the RMBS Claims.

12. Duff & Phelps estimates that the cost of the Protocol to date approximates $130,000,000. This does not include any fees and expenses of counsel, or any internal fees or

4

expenses of the RMBS Trustees. Therefore, the aggregate cost of resolving the RMBS Trustees' proofs of claim is even higher.

## II. Allocation Methodology

13. Before the RMBS Settlement Agreement was finalized, the RMBS Trustees asked Duff & Phelps to provide an allocation of the claim amount the RMBS Trusts would receive in the estimation proceeding contemplated by the RMBS Settlement Agreement. After careful consideration, we concluded that the fairest methodology would take into account the results of the RMBS Claims submitted under the Protocol. As a result, we provided the parties with the allocation formula described in Section 3.04 of the RMBS Settlement Agreement and the allocation percentages set forth in Exhibit H to the RMBS Settlement Agreement.

14. Five of the RMBS Trusts that were the subject of the RMBS Settlement Agreement did not submit any RMBS Claims under the Protocol. Those five RMBS Trusts are: (i) ARC 2004-1; (ii) SAIL 2004-4; (iii) SASCO 2005-11H; (iv) SASCO 2006-RF1; and (v) SASCO 2007-RF1. As a result, those five RMBS Trusts would not have received any distributions under the allocation formula. I understand that the RMBS Trustees have rejected the RMBS Settlement Agreement with respect to these five RMBS Trusts.

## III. Meetings with Judge Fitzgerald

15. I understand that, as part of her evaluation of the RMBS Settlement Agreement, Judge Fitzgerald had questions with respect to the Protocol and the RMBS Claims that were submitted thereunder. On March 27, 2017, my colleagues Allen Pfeiffer, Jennifer Press and I participated in a conference call with Judge Fitzgerald to answer any questions she had with respect to the Protocol and the RMBS Claims submitted thereunder.

16. Mr. Pfeiffer and I also met in person with Judge Fitzgerald on May 22, 2017 to answer any further questions she had in advance of finalizing her report. At the request of Judge Fitzgerald, Duff & Phelps provided to counsel for the RMBS Trustees information, on an RMBS Trust-by-RMBS Trust basis, concerning RMBS Claims asserted under the Protocol, the allocation, the outstanding principal balance of each RMBS Trust, and the beneficial ownership stake held by investors who had offered opinions in support of, or opposition to, the RMBS Settlement Agreement.

_____
Edmond Esses

Sworn to before me
June 29, 2017

_____
Notary Public
MY COMMISSION EXPIRES
ON FEBRUARY 13, 2018