**Hearing Date: July 6, 2017 at 9:00 a.m. (ET)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              )
In re                                         )    Chapter 11 Case No.
                                              )
Lehman Brothers Holdings Inc., et al.,        )    08-13555 (SCC)
                                              )
          Debtors.                            )    Jointly Administered
                                              )
------------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.'S OMNIBUS REPLY IN FURTHER SUPPORT OF THE MOTION OF LEHMAN BROTHERS HOLDINGS INC. PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C § 105(A) FOR ENTRY OF ORDER (A) APPROVING RMBS SETTLEMENT AGREEMENT, (B) MAKING CERTAIN REQUIRED FINDINGS REGARDING DECISION OF RMBS TRUSTEES AND LBHI DEBTORS TO ENTER INTO RMBS SETTLEMENT AGREEMENT, (C) SCHEDULING ESTIMATION PROCEEDING TO DETERMINE RMBS CLAIMS AND APPROVING RELATED PROCEDURES REGARDING CONDUCT OF HEARING, AND (D) GRANTING RELATED RELIEF**

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................1

NOTICE...................................................................................................................................4

JURISDICTION .....................................................................................................................5

ARGUMENT ...........................................................................................................................9

CONCLUSION.......................................................................................................................16

i

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Cibro Petroleum Prods. v. City of Albany (In re Winimo Realty Corp.)*,
   270 B.R. 108 (S.D.N.Y. 2001) ...........................................................................6

*City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
   572 F. Supp. 2d 314 (E.D.N.Y. 2008) ...............................................................7

*In re Delta Air Lines, Inc.*,
   370 B.R. 537 (Bankr. S.D.N.Y. 2007) ............................................................6, 7

*In re Dewey & LeBoeuf LLP*,
   478 B.R. 627 (Bankr. S.D.N.Y. 2012) ...............................................................6

*In re Dreier LLP*,
   No. 08-15051 (SMB), 2012 WL 4867376 (Bankr. S.D.N.Y. Oct. 12, 2012) ......8

*Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*,
   29 F.3d 88 (2d Cir. 1994) ...................................................................................8

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
   478 F.3d 452 (2d Cir. 2007) ................................................................................2

*Publicker Industries Inc. v. United States (In re Cuyahoga Equipment Corp.)*,
   980 F. 2d 110 (2d Cir. 1992) ...............................................................................8

**STATUTES AND RULES**

28 U.S.C. § 1334 .....................................................................................................5

28 U.S.C. § 1334(a) .................................................................................................5

28 U.S.C. § 1334(b) .................................................................................................6

28 U.S.C. § 1367 .....................................................................................................8

28 U.S.C. § 157(a) ...................................................................................................5

28 U.S.C. § 157(b)(1) ..............................................................................................6

28 U.S.C. § 157(b)(2) ..............................................................................................6

28 U.S.C. § 157(b)(2)(A) .........................................................................................6

28 U.S.C. § 157(b)(2)(B) .........................................................................................6

28 U.S.C. § 157(b)(2)(O) ............................................................................................6

28 U.S.C. § 157(c)(1) ..................................................................................................7

Fed. R. Bankr. P. 9019(a) ...........................................................................................6

Lehman Brothers Holdings Inc., as Plan Administrator ("LBHI" or the "Plan Administrator"), hereby submits this omnibus reply (the "Reply") to the objections to the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(A) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decisions of RMBS Trustees and LBHI Directors to Enter into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting Related Relief* (the "Motion")[1] [Dkt. No. 55232] seeking approval of the Settlement Agreement, entered into as of November 30, 2016, and modified as of March 17, 2017 (the "Settlement Agreement"), by and among LBHI, the other LBHI Debtors, the Institutional Investors and the Accepting Trustees (collectively, the "Parties").  In support of this Reply, LBHI respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On April 27, 2017, the Plan Administrator filed the Motion seeking approval of the Settlement Agreement.  The Settlement Agreement establishes a stream-lined process to resolve the RMBS Claims, which are claims that were submitted through the Protocol for alleged breaches of representations and warranties concerning mortgage loans in certain residential mortgage-backed securitizations in which LBHI served as seller, and minimizes the risks, costs and delay associated with prolonged loan-level litigation and attendant appeals. As set forth in the Declaration of Zachary Trumpp, filed concurrently herewith, the Settlement Agreement is in the best interests of the LBHI Debtors and creditors.  (Trumpp Decl. ¶ 22.)[2]

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

[2]    References to "Trumpp Decl." are to the accompanying *Declaration of Zachary Trumpp In Support of the Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(A) For Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision Of RMBS Trustees And LBHI Debtors To Enter Into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding To Determine RMBS Claims And Approving Related Procedures Regarding Conduct Of Hearing, And (D) Granting Related Relief.* References to the "Shalhoub Decl." are to the accompanying

2.      In deciding whether a particular settlement falls within the "range of reasonableness," courts in this Circuit consider the "*Iridium*" factors. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007). These factors are: (i) the balance between the litigation's possibility of success and the settlement's future benefits, (ii) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (iii) the paramount interests of creditors; (iv) whether other parties in interest support the settlement; (v) "the nature and breadth of releases to be obtained by officers and directors"; (vi) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; and (vii) "the extent to which the settlement is the product of arm's-length bargaining." *Id.* at 462 (internal citations and quotations omitted).  The *Iridium* factors are satisfied in this case and the Settlement Agreement (Shalhoub Decl. Ex. 1 at Ex. B.) should be approved.

3.      The Settlement Agreement is the result of extensive, arm's-length negotiations between sophisticated parties, acting within their discretion, reasonably and in good faith, and represented by experienced counsel.  As part of those negotiations and in the exercise of its discretion, the Plan Administrator carefully considered, among other things, the complex nature of the litigation, weighed the costs, benefits and risks of continuing with the Protocol and likely substantial loan-level litigation, and took into consideration the interests of creditors and the

---

*Declaration of Paul V. Shalhoub In Support of the Omnibus Reply In Further Support Of The Motion Of Lehman Brothers Holdings Inc. Pursuant To Fed. R. Bankr. P. 9019 And 11 U.S.C § 105(A) For Entry Of Order (A) Approving RMBS Settlement Agreement, (B) Making Certain Required Findings Regarding Decision Of RMBS Trustees And LBHI Debtors To Enter Into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding To Determine RMBS Claims And Approving Related Procedures Regarding Conduct Of Hearing, And (D) Granting Related Relief.*

views of the Institutional Investors. As explained in the Motion, all of these factors weigh in favor of approving the Settlement Agreement.

4.      The Settlement Agreement is unusual in that no claims are being settled and allowed as part of the agreement. Rather, under the Settlement Agreement, the Parties have agreed to an Estimation Process pursuant to which this Court will determine the appropriate allowed amount of the RMBS Claims submitted in the Protocol, in a manner that the Parties believe will likely avoid years of continued loan-level litigation and attendant appeals. The Settlement Agreement provides an efficient path to the resolution of tens of thousands of RMBS Claims. Otherwise, the parties would have to continue to pursue resolution of these claims under the Protocol, which would require tremendous time and expense and ultimately result in protracted litigation. These factors were properly weighed, and the interests of the creditors considered, in LBHI's determination to enter into the Settlement Agreement. (Shalhoub Decl. Ex. 1 at 25-31.)

5.      The following objections (together, the "Objections") were filed on or prior to the objection deadline of June 22, 2017:

- Preliminary Objection Of The Investor Group to the Motion of Lehman Brothers Inc., dated June 6, 2017 [Dkt. No. 55432] ("Investor Group Objection");[3]

- Limited Objection of Royal Park Investments SA/NV to the Motion of Lehman Brothers Holdings Inc., dated June 22, 2017 [Dkt. No. 55614] ("Royal Park Objection");[4]

---

[3]    The "Investor Group" consisted of: Whitebox Advisors LLC, Deer Park Road Management Company, LP, Tilden Park Capital Management LP, Prophet Capital Asset Management, Ltd., Olifant Fund, Ltd., and Strongbow Fund Ltd.

- Objection of Claimants Sylvia Vega Sutfin, Michelle Seymour, Cheryl McNeil, Linda Howard-James, Isabel Uajardo and Denise Colombo to the Motion of Lehman Brothers Holdings, Inc., dated June 21, 2017 [Dkt. No. 55609] ("BNC Claimants' Objection");

- Limited Objection of Five Points, LLC to the Motion of Lehman Brothers Holdings Inc., dated June 22, 2017 [Dkt. No. 55613] ("Five Points Objection"); and

- iFreedom Direct Corporation's Limited Objection and Reservation of Rights Concerning the Motion of Lehman Brothers Holdings Inc., dated June 22, 2017 [Dkt. No. 55616] ("iFreedom Objection").

6.      For the reasons explained below and in the submissions of the Institutional Investors and the RMBS Trustees in support of the Motion, each of the Objections (to the extent not consensually resolved and/or withdrawn) is meritless and should be overruled, and the Court should exercise its jurisdiction to approve the Motion.

## NOTICE

7.      On March 20, 2017, the Trustees sent a notice to the certificateholders in the Trusts: (i) informing them of the existence of the Settlement Agreement; (ii) informing them that the Trustees had retained Judge Judith Fitzgerald to perform an independent evaluation of the Settlement Agreement; and (iii) giving them the opportunity to comment on the Settlement Agreement.  The Trustees provided this notice by April 21, 2017.  The Trustees also established a publicly-available website, http://www.lbhirmbssettlement.com/, to which they posted notices and information regarding the Settlement Agreement.

---

[4]    Royal Park filed two objections [Dkt. Nos. 55614 and Dkt. No. 55615].  The two filings are identical in substance, but were filed by different counsel.

4

8.      On March 22, 2017, the Plan Administrator filed a motion seeking entry of an

order approving notice procedures in connection with the hearing to consider approval of the

Settlement Agreement (the "Scheduling Motion").  [Dkt. No. 55096.]

9.      By order dated April 6, 2017, this Court granted the Scheduling Motion,

scheduled a hearing to consider the Motion for July 6, 2017 and approved the form and manner

of notice for such hearing.  The Plan Administrator and the Trustees provided notice of the July

6th hearing and the Settlement Agreement to all interested parties, including certificateholders.

On April 21, 2017, the RMBS Trustees provided a second notice to certificateholders containing

additional information regarding the Settlement Agreement.

10.     On May 28, 2017, Judge Fitzgerald provided the RMBS Trustees with an expert

report detailing her work and advising them of her conclusion that the Settlement Agreement was

a fair and reasonable resolution of the RMBS claims.  (Shalhoub Decl. Ex. 2.)  This report was

posted on the settlement website and notice of the Accepting Trustees' acceptance of the

Settlement Agreement was posted on June 1, 2017.

## JURISDICTION

### 1.      The Court Has Jurisdiction Over the Motion Because it is a Core Proceeding.

11.     Under 28 U.S.C. § 1334, district courts have original and exclusive jurisdiction of

all cases under the Bankruptcy Code, and original but not exclusive jurisdiction of all civil

proceedings arising under the Bankruptcy Code, or arising in or related to cases under the

Bankruptcy Code.  28 U.S.C. §§ 1334(a), (b).

12.     Pursuant to 28 U.S.C. § 157(a) and an amended standing order of reference dated

January 31, 2012, the United States District Court for the Southern District of New York referred

all such cases and proceedings to bankruptcy judges in this District.  Pursuant to 28 U.S.C. §

157(b)(1), bankruptcy judges may hear and determine all cases under the Bankruptcy Code and all core proceedings arising under the Bankruptcy Code, or arising in a case under the Bankruptcy Code, referred under section 157(a), and may enter appropriate orders and judgments. 28 U.S.C. § 157(b)(1).

13.    "'Core proceedings' are matters 'arising under' the Bankruptcy Code or 'arising in' bankruptcy cases." *Cibro Petroleum Prods. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 119 (S.D.N.Y. 2001).  Section 157 sets out a non-exhaustive list of core proceedings, including, (i) matters concerning administration of the estate; (ii) allowance or disallowance of claims against the estate, and (iii) other proceedings affecting the liquidation of the assets of the estate.  28 U.S.C. §§ 157(b)(2)(A),(B), and (O).

14.    The Motion unquestionably arises under and in this bankruptcy case, as it seeks to establish a process to resolve the largest single set of claims remaining in the LBHI estate, will result in the allowance or disallowance of the Accepting Trustees' claims, and is central to the administration of the estate.  Accordingly, the Court has jurisdiction to issue a final order with respect to all matters relating to the Motion.  *See e.g.* 28 U.S.C. §§ 157(b)(2), and 1334(b); *see, e.g., In re Delta Air Lines, Inc.,* 370 B.R. 537, 549 (Bankr. S.D.N.Y. 2007) (holding that "there can be no question that this Court has jurisdiction with regard to the Settlement in its entirety under both the 'arising under title 11' and the 'arising in or related to cases under title 11' clauses of 28 U.S.C. § 1334(b)"); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (a bankruptcy court "approve[s] a compromise or settlement" under Fed. R. Bankr. P. 9019(a)).

**2.      The Court Also May Exercise "Related To" Jurisdiction on the Motion.**

15.      While the Plan Administrator believes that the Court's consideration of the Motion is a core proceeding and that the Court therefore appropriately may enter a final order with respect to all of the issues raised by the Motion as a core proceeding, even if the Court were to determine or treat its consideration of the Trustee Findings as a non-core proceeding, the Court still may hear and determine the Trustee Findings under 28 U.S.C. §§ 157(c)(1) and 1334(b).  Under section 157(c)(1), a bankruptcy judge may hear a proceeding that is not a core proceeding but is otherwise "related to" a case under the Bankruptcy Code.  28 U.S.C. § 157(c)(1).  In such a proceeding, the bankruptcy judge is to submit proposed findings of fact and conclusions of law to the district court, and any final order shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.  *Id.  see, e.g., In re Delta Air Lines*, 370 B.R. at 549.

16.      In the Second Circuit, a bankruptcy court's "related to" jurisdiction is extremely broad, encompassing any action or proceeding that would "conceivably have any effect on" the estate.  *See City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008) (citations omitted).  For the reasons stated above and in the Motion, the Motion is unquestionably "related to" these bankruptcy cases.  Therefore, this Court may exercise related to jurisdiction with respect to the Trustee Findings by providing its proposed findings of fact and conclusions of law with respect to the Trustee Findings to the District Court for review and approval.

          **3.**       **The Court Also May Exercise Supplemental Jurisdiction over the Trustee Findings.**

17.      In the unlikely event this Court were to determine that the portion of the Motion requesting approval of the Trustee Findings is not within the Court's jurisdiction as a proceeding arising under, in or related to a case under the Bankruptcy Code, the Plan Administrator submits that the Court also could exercise supplemental jurisdiction under 28 U.S.C. §§ 1334 and 1367 because the balance of the Motion is a core proceeding. *Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994) (bankruptcy court possessed jurisdiction over dispute between third parties "under principles of supplemental jurisdiction") (citing 28 U.S.C. § 1367); *In re Dreier LLP*, No. 08-15051 (SMB), 2012 WL 4867376, at *5 (Bankr. S.D.N.Y. Oct. 12, 2012) ("the Second Circuit Court of Appeals has ruled that a bankruptcy court may acquire jurisdiction over a dispute between third parties under the principles of supplemental jurisdiction.") (citation omitted). Therefore, the bankruptcy court could issue proposed findings of fact and conclusions of law for the District Court to approve pursuant to the Settlement Agreement.

18.      *Publicker Industries Inc. v. United States (In re Cuyahoga Equipment Corp.)* (980 F. 2d 110, 115 (2d Cir. 1992)) provides an analogous fact pattern to this case with respect to a court's supplemental jurisdiction. In *Cuyahoga*, the District Court, sitting in bankruptcy, examined whether it had the ability to approve a settlement that would essentially bar a non-debtor entity's contribution claims that existed as part of a separate District Court action. The District Court concluded that it had supplemental jurisdiction because all the claims were "intertwined" and form "part of the same case," with the bankruptcy claims. *Cuyahoga*, 980 F.2d at 115 (the bankruptcy court's "authority to approve the settlement. . . could properly be founded on its supplemental jurisdiction"). Here, the Settlement Agreement is conditioned both

on the Debtors' Findings and the Trustee Findings.  (Shalhoub Decl. Ex. 1 at 4-5.)  Therefore,

just as in *Cuyahoga*, this Court has supplemental jurisdiction to approve the Motion.

19.    In any case, the Settlement Agreement requires that the District Court approve the

Trustee Findings.  Accordingly, the Debtors request that the Court make proposed findings of

fact and conclusions of law with respect to the Trustee Findings, and submit its proposed

findings and conclusions to the District Court for consideration and approval.

## ARGUMENT

### I.    ALL FIVE OBJECTIONS HAVE BEEN RESOLVED OR ARE MERITLESS.

20.    Five preliminary and limited objections were filed with respect to the Motion.

None of the Objections claim that the Settlement Agreement is unfair, inequitable, or

unreasonable.  Instead, the Objections either assert that they were not provided with enough

information to evaluate the Settlement Agreement, or advance various arguments that are

irrelevant to the issues that that the Court must consider to grant the Motion.  While the Plan

Administrator believes that none of the Objections pose any impediment to Court approval of the

Motion, as set forth below, the Parties have successfully resolved three of the Objections.  The

remaining two Objections should be overruled for the reasons explained below.

### A.    The Investor Group Objection Has Been Resolved.

21.    On June 6, 2017, the Investor Group filed its Objection (Shalhoub Decl. Ex. 3),

stating that it would be serving document requests on the Trustees for additional information in

order to properly evaluate the proposed settlement, and objecting to the entry of the Trustee

Findings and any order that would bar certificateholders from asserting claims against the

Trustees with respect to their evaluation and acceptance of the Settlement Agreement.  (*See id.* at

2; Motion at Ex. A at 4.)

22.     Subsequent to the Investor Group Objection, the Plan Administrator, the

Accepting Trustees and the Institutional Investors engaged in arms-length negotiations with the

Investor Group to resolve the objection.  These negotiations led to a resolution that was

submitted to the Court on June 27, 2017.  (Shalhoub Decl. Ex. 4.)  In exchange for agreeing to

withdraw the preliminary objection, the Parties and the Investor Group agreed that:

> [I]n consideration of the Investor Group withdrawing its objection to the Motion,
> the Debtors, the Trustees and the Institutional Investors have agreed: (i) to strike
> Exhibit E from the Settlement Agreement; (ii) that neither Exhibit E, nor the
> Institutional Investors' views on what constitutes a fair or reasonable settlement
> of the Claims, shall be admissible for any purpose in connection with the Motion
> or the proposed Estimation Proceeding; (iii) that the Institutional Investors shall
> express no position, in connection with the hearing on the Motion or the
> Estimation Proceeding, concerning the claim amount that they believe is fair and
> reasonable; (iv) that the agreements set forth in the foregoing clauses (i), (ii) and
> (iii) are not and shall not be deemed to be admissions of liability or concessions of
> any argument or defense by any party in connection with either the Motion or the
> Estimation Proceeding and were agreed to in order to resolve the Investor Group's
> preliminary objection; (v) that the parties to the Estimation Proceeding may offer
> into evidence before the Court, at any hearing or otherwise, and without objection
> as to admissibility by any other party, the RMBS Trust Settlement Agreement
> entered into by and between the LBHI Debtors and the Institutional Investors
> dated October 26, 2015, which shall be admissible in the Estimation Proceeding;
> and (vi) with respect to the foregoing clause (v), the parties to the Estimation
> Proceeding agree that although such settlement agreement will be admitted into
> evidence, they reserve all rights to present arguments as to reliability,
> competency, weight, relevance, timeliness or any other arguments concerning the
> Court's consideration of such evidence.

[Dkt. No. 55650].

23.     Pursuant to this agreement, among other things, Exhibit E will be struck from the

Settlement Agreement and neither the written statement of the Institutional Investors' attached as

Exhibit E to the Settlement Agreement nor the Institutional Investors' views on what constitutes

a fair or reasonable settlement of the Claims will be admissible into evidence during the hearing

on the Motion or the Estimation Proceeding.  Nor will the Institutional Investors express a

position concerning the claim amount they believe is fair and reasonable.  The agreement is clear

10

that these limitations are not admissions of liability or concessions of any argument or defense

by any party in connection with either the Motion or the Estimation Proceeding and were agreed

to in order to resolve the Investor Group Objection. Moreover, the agreement does not affect the

Institutional Investors' continued support of the Settlement Agreement or this Court's approval

of the Settlement Agreement and the Motion or any other matter.

24.     The Investor Group Objection was formally withdrawn on June 29, 2017.  [Dkt
No. 55670.]

**B.     The Royal Park Objection Has Been Resolved.**

25.     Royal Park Investment SA/NV ("Royal Park") is the named plaintiff and

proposed class representative in a class action against Wells Fargo pending in the District Court

for the Southern District of New York, *Royal Park Investments SA/NV v. Wells Fargo Bank,*

*N.A., as Trustee*, No. 14-cv-09764-KPF-SN (S.D.N.Y.).

26.     On June 22, 2017, Royal Park filed its Objection to the Motion.  (Shalhoub Decl.

Ex. 5.)[5]  The Royal Park Objection does not dispute that the proposed settlement "likely

represents an acceptable" outcome for certificateholders.  Rather Royal Park's sole concern was

whether the releases and findings made as part of the Motion may affect their rights in their

District Court case against Wells Fargo.  (Shalhoub Decl. Ex. 5 at 2-3.)

27.     Subsequent to the filing of the Royal Park Objection, the Parties engaged in arms-

length negotiations regarding the issues raised in the objection.  To resolve the Objection, the

Parties agreed that the following language will be included in a revised proposed order and that

Royal Park will withdraw its Objection upon such inclusion:

> This Order is not intended to, and does not release, enjoin, or preclude any claim
> or cause of action that any investor in any of the Accepting Trusts (including any

---

[5]   Royal Park filed an additional Objection to the Motion on June 22, 2017, which is identical in substance, but
filed by different counsel.  (Shalhoub Decl. Ex. 6.)

former investors that have retained their claims) has against any Accepting Trustee or any other person or entity, other than (i) claims against the Accepting Trustees arising out of the Accepting Trustees' evaluation and acceptance of the Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and (ii) claims against the Released Parties to the extent released under the Settlement Agreement.  Moreover, for the avoidance of any doubt, except as to (i) and (ii) above, the entry of this Order does not and is not intended to extinguish or prevent the prosecution of the claims and causes of action, or the assertion of defenses, that have been asserted in the cases styled as *Royal Park Investments SA/NV v. U.S. Bank National Association, as Trustee*, No. 14-cv-02590-VM (S.D.N.Y.) and *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., as Trustee*, No. 14-cv-09764-KPF-SN (S.D.N.Y.), and the parties to those cases reserve all rights to present arguments and evidence in those cases as to any impact that the Settlement Agreement and the facts underlying the Settlement Agreement may have on those cases to the extent not inconsistent with the balance of this paragraph.

## C.    The BNC Claimants' Objection Is Without Merit and Should be Overruled.

28.    The BNC Claimants' Objection is brought by several persons (the "BNC Claimants") who allege they are former employees of and hold claims against BNC Mortgage Inc. ("BNC").  In 2004, the BNC Claimants filed an employment discrimination, harassment, retaliation, and wrongful termination action against BNC.  They later filed proofs of claim, [each] asserting $4,500,000.00, against the estate of BNC.  (Shalhoub Decl. Ex. 7.)  Objections to these claims are pending.

29.    On June 21, 2017, the BNC Claimants filed an objection to the Motion. (Shalhoub Decl. Ex. 7.)  The BNC Claimants assert that the Settlement Agreement does not satisfy the *Iridium* factors, purportedly because it is not in the paramount interest of creditors. (Shalhoub Decl. Ex. 7 at 2.)  The basis for this objection is that the Settlement Agreement is silent as to what portion of the Net Allowed Claim, if any, will be allocated to which LBHI Debtors (including against BNC, against which the BNC Claimants assert $27 million in claims in the aggregate).

12

30.     This objection is wholly without merit and should be overruled for a number of

reasons.  First, all that is being considered by the Court at the hearing is whether the Settlement

Agreement should be approved.  The Settlement Agreement, however, does not determine any

liability of any debtors other than LBHI.  Instead, pursuant to the Settlement Agreement, a

process (*i.e.,* the Estimation Process) will be put into place pursuant to which the Court will

estimate and determine the allowed amount of the Covered Loan Claims.

31.     Second, the Covered Loan Claims that have been asserted have been asserted only

against LBHI, and not any other LBHI Debtor.  Although BNC liability may arise from various

sources, none are the subject of the hearing to consider approval of the Settlement Agreement or,

if approved, the Estimation Proceeding.  One source of potential BNC liability is the Trustees'

claims against BNC, claim numbers 31036 and 33107.  Neither of these claims were subject to

the Protocol and will be resolved in due course.  In addition, LBHI may have claims against

BNC on account of BNC's origination and sale to LBHI of mortgage loan files originated by

BNC for which LBHI may be liable.  Likewise, neither the approval of the Settlement

Agreement nor the Estimation Proceeding address the allowance of those claims.

32.     Third, consistent with this, the ultimate settlement consideration that will be

determined by the Court will be an allowed Class 7 General Unsecured Claim against LBHI (and

not any other LBHI Debtor), in the amount determined by the Court in the Estimation

Proceeding.  The Estimation Proceeding is not contemplated to begin until mid-October 2017.

Simply, then, nothing is being determined at the July hearing on the Settlement Agreement (or

the October Estimation Proceeding for that matter) that impacts BNC in any way.  While LBHI

may seek to recover from BNC some portion of the Net Allowed Claim at some point *after* the

Estimation Proceeding (as it may do from any originator of the Covered Loans that give rise to

13

liability as to LBHI), whether it will seek to do so is a hypothetical that is not before the Court, and does not affect the conclusion that the Settlement Agreement is in the best interests of creditors.  Accordingly, the BNC Claimants' Objection should be overruled.

### D.   The Five Points Objection Has Been Resolved.

33.    Five Points, LLC ("Five Points") asserts it is the beneficial owner of certificates, notes or other securities issues by various of the covered RMBS trusts.

34.    Five Points objects to the Motion to the extent that the Settlement Agreement modifies the payment waterfall in the Governing Agreements. However, that is neither the intent nor result of Section 3.06 of the Settlement Agreement.  While Sections 3.06(a) and 3.06(b) of the Settlement Agreement are intended to provide additional clarity to how distributions of settlement proceeds are to be made consistent with the Governing Agreements, Section 3.06(c) of the Settlement Agreement is intended to make clear that the provisions of the Governing Agreements control over any conflict between the Settlement Agreement and the Governing Agreements.  That section expressly provides that:

> Should the party responsible for calculating distributions and/or making distributions to Investors under the terms of the Governing Agreements of a given Trust or a court determine that the payment procedure described in Sections 3.06(a) and 3.06(b) may not conform to the terms of the Governing Agreement for a particular Accepting Trust, the distribution described above shall be modified to distribute that Trust's Plan Payments as a payment of principal under the Governing Agreement for that Trust, or in such other manner as the party responsible for calculating distributions under the terms of the Governing Agreements of a given Trust or a court should determine is in conformance with the terms of the Governing Agreement for a particular Trust.

(RMBS Trust Settlement Agreement Section § 3.06(c).)  Similarly, Section 3.08 of the Settlement Agreement expressly provides that:

> An Accepting Trustee (to the extent is the party responsible for making distributions under the applicable Governing Agreement(s)), or the party responsible for making distributions under the applicable Governing Agreement(s) if it is not the Accepting Trustee, shall administer distribution of the Plan Payments under the terms of the Governing Agreements.

35.     In order to resolve the above objection of Five Points, and the others raised in its Objection, the Parties have confirmed to Five Points that the provisions of the Governing Agreements, including, without limitation, all provisions regarding distributions of trust proceeds, will control over any conflict between the Settlement Agreement and the Governing Agreements.  Five Points has informed the Parties that all of its objections are resolved by such confirmation and that it will withdraw its Objection.

### E.     The iFreedom Objection Should be Overruled.

36.     iFreedom Direct Corporation ("iFreedom") both brokered and sold mortgage loans to Lehman Brothers Bank, which iFreedom alleges were then transferred and/or assigned to LBHI.  iFreedom objected to approval of the Motion to the extent the RMBS Settlement Agreement and the Estimation Proceeding adversely impact iFreedom's ability to defend any indemnification claim sought by LBHI on account of any RMBS Claims subject to the Motion.[6]

37.     The Plan Administrator has been unable to consensually resolve the iFreedom Objection.  (Shalhoub Decl. Ex. 8.)  Nevertheless, the Plan Administrator hereby confirms that neither LBHI's nor iFreedom's rights with respect to any subsequent indemnification claims against iFreedom arising from the resolution of the RMBS Claims or the Estimation Proceeding will be affected by iFreedom's non-participation in the Estimation Proceeding.  As a result, the Plan Administrator respectfully submits that iFreedom's objections have been adequately addressed and should be overruled.

---

[6]     iFreedom and LBHI are currently involved in litigation in the District Court for the District of Utah regarding iFreedom's duty to indemnify LBHI for certain sums that LBHI paid to Fannie Mae and Freddie Mac as part of settlement agreements LBHI entered into with them.

15

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests that the Court

overrule the Objections to the extent they have not been consensually resolved and or withdrawn

and enter an order granting the relief requested in the Motion and such other relief as is just and

proper.


Dated:   New York, New York
         June 30, 2017

 /s/ Paul V. Shalhoub
Paul V. Shalhoub
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings*
*Inc. and Certain of Its Affiliates*

16