```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
In Re: Lehman Brothers Holdings Inc.      :
                                          :
SHINHAN BANK,                             :    17 Civ. 03424(DLC)
                          Appellant,      :
                                          :    OPINION & ORDER
                -v-                       :
                                          :
LEHMAN BROTHERS HOLDINGS INC. and         :
LEHMAN BROTHERS SPECIAL FINANCING INC.,   :
                                          :
                          Appellees.      :
                                          :
-----------------------------------------X
```

Appearances:

For Appellant:
John A. Bicks
Henry E. Shin
Robert T. Honeywell
Priya Chadha
K&L Gates LLP (NYC)
599 Lexington Avenue
New York, NY 10022

Brian D. Koosed
K&L Gates (DC)
1601 K. Street, N.W.
Washington, DC 20006

For Appellees:
Christopher J. Cox
Weil, Gotshal & Manges, L.L.P.
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Jacqueline Marcus
Weil, Gotshal & Manges LLP (NYC)
767 Fifth Avenue
New York, NY 10153

DENISE COTE, District Judge:

This dispute arises from a bankruptcy proceeding in which Lehman Brothers Holdings Inc. ("LBHI"), the Chapter 11 bankruptcy plan administrator for Lehman Brothers Special Financing Inc. ("LBSF") (collectively, "Lehman"), sought to "claw back" certain transfers to appellant Shinhan Bank ("Shinhan").  On April 20, while a motion to dismiss was fully submitted and pending before the bankruptcy court, Lehman and Shinhan agreed to a settlement of a certain sum of money in exchange for mutual releases.  Shinhan appeals the bankruptcy court's finding that the settlement agreement is enforceable.  For the reasons that follow, the decision of the bankruptcy court is affirmed.

## BACKGROUND

The facts, which are undisputed, are as follows.  On September 14, 2010, LBSF filed an adversary proceeding in the bankruptcy court seeking to avoid, or "claw back," certain transfers to Shinhan and hundreds of other noteholder defendants.  Shinhan is headquartered in South Korea.  The defendants in the underlying proceeding, including Shinhan, filed a motion to dismiss on December 14, 2015, and the motion became fully submitted on April 4, 2016.  Oral argument on the motion was scheduled to occur on May 4.

While the motion was pending, the parties were referred to mediation. At an April 6, 2016 settlement conference, the Mediator proposed that Shinhan pay Lehman a certain amount (the "Settlement Amount") to settle the case. On April 20, counsel for Shinhan wrote to the Mediator: "We appreciate your consideration in allowing Shinhan Bank additional time to consider your settlement proposal in this matter, which we are pleased to report that Shinhan has agreed to accept. We look forward to hearing back from you once you have Lehman's response." The same day the Mediator reported via email that

> the parties have agreed to settle this dispute: Shinhan Bank will pay Lehman $[redacted] in full and complete settlement. Because Lehman has routine settlement documentation, I ask Lehman to provide the documentation to Shinhan for its review. Please conclude this matter promptly. Inform me of any problems or delays. Thank you for your conscientious -- and very constructive -- work to bring this matter to a mutually agreeable resolution.

On April 21, Lehman sent Shinhan's counsel a draft agreement. Oral argument on the motion occurred as scheduled on May 4.

On May 11, Shinhan proposed two changes to the agreement: (1) granting Shinhan 10 days rather than 5 days to pay the Settlement Amount; and (2) revising Section 4 "to require that the parties execute hard copies . . . as opposed to electronic copies due to [Shinhan's] internal regulations." Shinhan proposed that the agreement be dated as of the day that Shinhan executed it in hard copy form. Shinhan also requested

3

documentation from LBSF to validate the authority of LBHI to sign the Agreement on LBSF's behalf.

On May 12, Lehman accepted Shinhan's proposed changes and requests and advised that Lehman would "circulate[] an execution copy" of the agreement.  On May 19, Shinhan requested that (1) rather than sign the agreement in counterparts, Lehman send Shinhan two original, signed copies of the Release Agreement; and (2) LBSF provide a Board resolution and other documents establishing the LBSF and LBHI signatories' authority to sign the written agreement.  LBSF agreed to provide those additional documents that same day.  On May 26, LBSF and LBHI, as credit support provider, signed the agreement, titled the "Release Agreement."  On May 27, LBSF sent the signed Release Agreement to Shinhan for its signature.  On May 30, Shinhan received the Release Agreement signed by Lehman.

On June 14, Lehman asked Shinhan's counsel: "Have you heard anything from Shinhan on their execution of the Agreement?"  Shinhan's counsel responded that "Shinhan is trying to get everything signed up . . . by the end of this week."  On June 17, Shinhan's counsel informed Lehman:  "[I]t looks like the week of June 27 is most likely for signature/payment."  On the morning of June 28, Lehman again inquired as to Shinhan's execution of the Release Agreement, asking Shinhan's counsel "Any updates?"  Shinhan's counsel replied within minutes that

4

"Shinhan just confirmed that they have completed their internal approval process and the Settlement Agreement will be signed by Thursday[,] June 30 . . . after which they will remit the Settlement Amount."

Approximately four hours later on June 28, the bankruptcy court issued its order dismissing Lehman's claims against Shinhan and other defendants in the adversary proceeding, with prejudice.  On June 30, 2016, LBSF wrote to Shinhan's counsel: "We have not seen the wire come in yet today.  Please let me know which bank Shinhan has used to wire the Settlement Amount." Shinhan's counsel responded that "[a]s we and our client are still evaluating the [bankruptcy court's] decision and expect to continue to do so over the next few days, we will get back to you on this sometime next week."

Shinhan subsequently advised Lehman that it did not believe an enforceable settlement agreement had been entered into and that it would not pay the Settlement Amount.  Shinhan does not dispute that, until the bankruptcy court granted the motion to dismiss, it intended to sign the agreement.  Lehman's attempts to resolve the issue with Shinhan through the Mediator were unsuccessful.

On January 30, 2017, LBSF filed a motion to enforce the settlement and Release Agreement.  On March 21, the bankruptcy court heard argument and ruled that the settlement agreement was

5

enforceable. In doing so, it carefully applied the four-factor test in <u>Winston v. Mediafare Entertainment Corp.</u>, 777 F.2d 78 (2d Cir. 1985). The bankruptcy court issued a written order granting LBSF's motion on March 29. Shinhan filed a notice of appeal on April 11. The briefing became fully submitted on June 19.

### **DISCUSSION**

This appeal presents a purely legal question: whether the bankruptcy court erred in finding that Shinhan and Lehman entered into an enforceable settlement agreement. A bankruptcy court's factual findings are reviewed for clear error and its legal conclusions <u>de novo</u>. <u>See</u> <u>In re Motor Liquidation Co.</u>, No. 11cv7893(DLC), 2012 WL 398640, at *2 (S.D.N.Y. Feb. 7, 2012). <u>See also</u> <u>In re Quebecor World (USA) Inc.</u>, 719 F.3d 94, 97 (2d Cir. 2013).

"[P]arties are free to enter into a binding contract without memorializing their agreement in a fully executed document." <u>Winston</u>, 777 F.2d at 80. "Parties may enter into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." <u>Powell v. Omnicom</u>, 497 F.3d 124, 129 (2d Cir. 2007). On the other hand, "[p]arties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time." <u>Id.</u> "The intention of the parties on

6

this issue is a question of fact, to be determined by examination of the totality of the circumstances." Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." Powell, 497 F.3d at 128.

Four factors guide the inquiry whether the parties intended to be bound in the absence of a writing:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. at 129. An analysis of these four factors weighs strongly in favor of affirming the bankruptcy court's ruling.

A. Express Reservation Not to Be Bound

"[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Winston, 777 F.2d at 80. Shinhan has pointed to no express reservation by either party of the right not to be bound in the absence of a writing.

In the April 20 email, the Mediator asked that Lehman provide Shinhan with "routine settlement documentation."

7

Shinhan claims that this, and the fact that the parties did endeavor to put the agreement in writing, demonstrates that a writing was required before it was bound.  This argument fails. "Discussing execution of a formal document . . . is not the same as reserving the right not to be bound in the absence a formal document."  <u>Jackson v. N.Y. City Dep't of Educ.</u>, No. 10cv9193(DLC), 2012 WL 1986593, at *3 (S.D.N.Y. June 4, 2012).

The balance of Shinhan's brief as to the first <u>Winston</u> factor is concerned with terms contained in the unexecuted Release Agreement.  Specifically, Shinhan notes that the Release Agreement contains the following language:

> WHEREAS, as of the date hereof, the Parties have agreed to a settlement amount in favor of Lehman in the amount of $[redacted] . . . in respect of claims made by Lehman against [Shinhan] . . ."
>
> . . .
>
> Section 4.  <u>Execution in Counterparts</u>. . . . .  The date of execution of this Release Agreement shall be the date that [Shinhan] signs this Release Agreement . . . and this Release Agreement shall become effective and valid upon such execution.
>
> Section 5.  <u>Effectiveness.</u>  This Release Agreement shall become effective upon execution hereof by each of the Parties and the payment . . . of the Settlement Amount to Lehman."

The terms of a later, unexecuted agreement are not relevant when a settlement has already been agreed to, as in this case.  Shinan also relies on <u>Ciaramella</u> for the proposition that the language in the Release Agreement is an express

8

reservation, but this reliance is misplaced. In Ciaramella, the parties did not have a settlement agreement in place when the parties exchanged written drafts containing language that indicated a writing was required to be bound. Ciaramella, 131 F.3d at 324. Here, the agreement had been reached before the drafts formalizing the settlement were exchanged.

B. Partial Performance

This factor weighs in favor of Shinhan's contention that there is no enforceable settlement. There has been no partial performance of the April 20 agreement. The benefits of the agreement were a release from litigation in exchange for a payment. No money has been paid and no releases have been signed. Lehman's cooperation in providing the settlement documentation and consenting to Shinhan's request do not constitute partial performance of the obligations of the April 20 agreement.

C. Agreement On All Terms

"[E]ven 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." Powell, 497 F.3d at 130 (citation omitted). But, such changes are relevant "only if they show that there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a

9

writing satisfactory to both sides in every respect." Id. (citation omitted). Continued negotiations over the "performance of the settlement rather than assent to its terms" will not suffice. Id.

In this case, the material terms of the settlement -- a sum of money in exchange for a release -- were agreed upon on April 20. The terms upon which there was continuing negotiation, such as 5 or 10 days to pay Lehman and whether the Release Agreement should be submitted electronically or in hard copy, relate to the performance of the settlement rather than its material terms.

D. Agreement Usually Committed to Writing

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Id. at 131 (citation omitted). Where "the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." Ciaramella, 131 F.3d at 326. "[T]he complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally." Id.

The terms of this uncomplicated settlement agreement were not announced in open court, but rather in an April 6 mediation

10

session, and the April 20 emails between the parties and the Mediator. There is nothing about the terms of their agreement that suggests it could not or should not be enforced without a formal document signed by the parties.

It was prudent nonetheless to put this type of settlement agreement into a formal writing, as the parties in this case endeavored to do. The parties drafted a written agreement that was unsigned by Shinhan only because of its own delay and the court's issuance of the dismissal order. Allowing Shinhan to back out of the April 20 agreement because the parties took steps to record their agreement in a writing would frustrate the important goal of committing to writing already-agreed-to settlements.

## **CONCLUSION**

The bankruptcy court's finding that the April 20 settlement and the Release Agreement are enforceable is affirmed.

Dated:    New York, New York
          August 2, 2017

                                         _____
                                              DENISE COTE
                                         United States District Judge

11