LEHMAN BROTHERS

# Lehman Brothers Holdings Inc., et al.
# Plan Administration Update

August 17, 2017



# Disclaimer

The information and data included in this Report are derived from sources available to Lehman Brothers Holdings Inc., in its capacity as Plan Administrator (the "Plan Administrator") under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [ECF No. 22737]. The Plan Administrator has prepared this presentation based on the information available to it at this time; however, such information is incomplete and may be materially deficient in certain respects. This report was prepared by the Plan Administrator for purposes of presenting the Court with a status of the Estates of Lehman Brothers Holdings Inc. and certain of its subsidiaries that commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Estates") as of the date of the presentation.  In preparing this Report, the Plan Administrator made various estimates and assumptions based on information available to it. As such, this Report contains forward-looking statements that involve known and unknown risks, uncertainties and other factors which may cause the Chapter 11 Estates' actual results, performance or achievements to be materially different from any future results, performance or achievements expressed or implied by these forward-looking statements. All statements other than statements of historical fact are statements that could be deemed forward-looking statements, including all statements containing information regarding the intent, belief or current expectation of the Chapter 11 Estates. Accordingly, the information herein is subject to change and any such change may be material.  The presentation is not meant to be relied upon by investors or others as a complete description of the state of the Chapter 11 Estates, their business, condition (financial or otherwise), results of operations, prospects, assets or liabilities. The information in this presentation will only be updated, including any corrections, in connection with future presentations to the Court on the state of the Chapter 11 Estates. The Plan Administrator reserves all rights to revise this report.  All amounts are unaudited and subject to revision. This report is intended to be read in conjunction with the Plan Administrator's previous filings, including Monthly Operating Reports ("MORs") and other reports filed with the Securities and Exchange Commission and the Court.

# I. Progress Since Last Plan Administrator Update

- **The Plan Administrator continues to monetize assets and resolve claims fairly and equitably**

- **Since the last update (August 16, 2016), the Plan Administrator has made progress implementing the Chapter 11 plan - within the past year, the Plan Administrator has:**

  - Distributed approximately $6.8 billion (for a total $116.6 billion of cumulative distributions since emergence from bankruptcy)

  - Resolved $7.9 billion of filed claims (bringing the total to $147 billion of claims resolved since emergence from bankruptcy)

- **Nevertheless, this case remains a massive "mega-bankruptcy" case**

  - Approximately $7 billion of assets remain in the Estate, including cash (much of which is reserved for disputed claims), net of future operating expenses and excluding potential litigation recoveries

  - Significant contingent and unliquidated claims remain unresolved – estimation and other strategies will be required to resolve these claims

  - 450+ claims remain unresolved seeking over $28.6 billion, and the resolution of which will likely require substantial judicial resources and Court time

  - Remaining matters:

    - Big Banks – Citi and Credit Suisse

    - RMBS related issues

    - Other Matters – dissolution of non-debtor affiliates and guaranty claim issues

# I. Progress Since Last Plan Administrator Update

◆ **Distributions: $6.8 billion in distributions since D10**



*In USD millions*

**Distributions[1]**

D11 - D12 Distributions: $6,841

D1 – D12 Distributions: $116,609

1. All distribution amounts sourced from individual published distribution notices

3

# I. Progress Since Last Plan Administrator Update

◆ **Claims Resolution: $7.9 billion in filed claim amount has been resolved since D10**

**Filed Amount of Unresolved Claims[1]**



1. Based on data from claims register maintained by Epiq Systems, Inc.

# I. Progress Since Last Plan Administrator Update

- **As litigated matters moved forward, access to the Court enabled and accelerated the resolution of meaningful disputes**

- **Significant settlements and resolutions since August 2016**:

  - **JPM Deficiency case:** In March 2017, the Court approved the Plan Administrator's settlement of JPM Deficiency Claims enabling the Estates to recover $797.5 million. This settlement also avoided the time, expense and risk that the Estates otherwise would have faced in connection with disputes surrounding JPM's process for closing out approximately 3,600 Lehman securities positions, worth approximately $20 billion - the largest ever foreclosure of a securities portfolio

  - **FHLB New York:** In April 2017, after 5 days of trial, the Plan Administrator resolved its adversary complaint against the Federal Home Loan Bank of New York which had filed claims of $90 million. The settlement resulted in a $70 million payment to Lehman

  - **FHLB Cincinnati:** On December 12, 2016, after six days of trial, the Plan Administrator was able to arrive at an acceptable resolution of the claims asserted by the Federal Home Loan Bank of Cincinnati

  - **RSU's:** On May 4, 2017, the Second Circuit Court of Appeals sustained the District Court's decision upholding the Bankruptcy Court's order sustaining the objections filed by the Plan Administrator challenging the claims of holders of restricted stock units that had been awarded by LBHI prior to bankruptcy

  - **Daiwa:** In September 2016, the Plan Administrator successfully resolved LBSF's adversary proceeding filed against Daiwa Securities Capital Markets regarding 953 outstanding swaps Daiwa had terminated after LBHI's bankruptcy

  - **QVT:** In March 2017, the Plan Administrator resolved its disputes with QVT after 15 trial days. The disputes related to the valuation of 836 trades with QVT

  - **Shinhan Bank (SPV Avoidance Action):** In July 2017, District Court affirmed the Bankruptcy Court's ruling enforcing the unsigned settlement and release agreement between Shinhan and LBSF

# I. Progress Since Last Plan Administrator Update

## Resolved Litigation Matters Since Last Update

◆ 13 matters resolved since the last Plan Administration Update

|    | Resolved Matters            | Case #    | Resolution Period |
|----|-----------------------------|-----------|-------------------|
| 1  | Acts Retirement             | 15-01430  | Feb 2017          |
| 2  | Daiwa                       | 15-01431  | Sep 2016          |
| 3  | FHLB Cincinnati             | 13-01330  | Dec 2016          |
| 4  | FHLB NY                     | 15-01110  | Apr 2017          |
| 5  | HSBC                        | 15-01412  | Sep 2016          |
| 6  | JPM - Deficiency            | 12-01874  | Mar 2017          |
| 7  | LHM Financial               | 14-02393  | Jan 2017          |
| 8  | Longwood at Oakmont         | 15-01299  | Dec 2016          |
| 9  | Merrill Lynch / LCH         | 14-02030  | Aug 2016          |
| 10 | Presbyterian Senior Care    | 15-01300  | Dec 2016          |
| 11 | QVT                         | N/A       | Mar 2017          |
| 12 | Restricted Stock Unit [1]   | various   | May 2017          |
| 13 | Winchester Medical          | 14-02092  | Oct 2016          |

1. In May 2017, Second Circuit Court affirmed the rulings of the District Court and Bankruptcy Court

# II. Remaining Matters[1,2,3]

## Active Litigation Matters

◆ 7 matters remaining in Bankruptcy Court calendar, of which 4 have a litigation calendar

| # | Active Matters | Case # | 2017 Q1 | 2017 Q2 | 2017 Q3 | 2017 Q4 | 2018 Q1 |
|---|---|---|---|---|---|---|---|
| 1 | Citigroup | 12-01044 | | Trial - ongoing (4/25/17) | | | |
| 2 | Private Label | 08-13555 | | | Expert (9/29/17) | Trial (10/16/17) | |
| 3 | Sequa[4] | 15-01404 | Discovery (3/10/17) | Expert (6/1/17) — SJ Motions (SJ: 7/21/17) | | Trial (10/23/17) | |
| 4 | Credit Suisse[4] | 13-01676 | Discovery (ongoing) | | | | |
| 5 | BNC Colombo | na | no calendar | | | | |
| 6 | RMBS Originator Downstream Indemnity | various | no calendar | | | | |
| 7 | SRM | na | no calendar | | | | |

---

1. Includes only matters where a schedule has been ordered and is subject to change. Length of trial is based on estimates
2. Matters ranked alphabetically and grouped between those matters with or without calendars
3. Excludes SPV Avoidance and Maverick Claims Objection which are in Appeal in District Court
4. Current scheduling order for Sequa and Credit Suisse is out of date and a new Amended Scheduling Order to be filed

7

# II. Remaining Matters

- **Big Banks**

  - Citi and Credit Suisse are highly complex and fact intensive matters and include multi-faceted bankruptcy issues involving set-off, post-petition interest, and a range of valuation issues

  - Both of these cases have taken, and are likely to continue to require, an enormous use of the Court's time and resources to resolve

  - **Citi**

    - As of August 15, there have been 42 days of trial – additional trial dates have been scheduled through November 30

    - After trial is completed, substantial time will be required for post trial motions and closing arguments

  - **Credit Suisse**

    - Serial discovery disputes have required substantial Court time and attention

    - The Plan Administrator anticipates the Credit Suisse trial to be comparable to the Citi trial in size and scope

# II. Remaining Matters

- **Private Label Trust RMBS Claims**

  - **Covered Loans:** As a consequence of a Settlement Agreement that was approved by the Court, substantially all of the Private Label RMBS Claims will be estimated by the Court at hearings currently scheduled to commence on October 16, 2017

  - The Plan Administrator has requested that the Court estimate the claims at $2.38 billion based on a settlement previously negotiated with attorneys for 15 large institutional holders of Lehman RMBS – those investors support the settlement – the Plan Administrator's evidence will demonstrate that the requested estimated value is at the high end of the range of potential compensable claims in the claims protocol

  - Under the claims protocol approved by the Court, the RMBS Trustees submitted in excess of 94,000 "covered" loan files on behalf of 247 trusts – the Plan Administrator and the Institutional Investors agreed to ascribe a $2.416 billion claim on account of the claims arising from these files

  - Subsequently, 20 trusts were removed from the estimation process accounting for $36mm of claims – by agreement with the Trustees and the Institutional Investors, this reduced the proposed allowed claim from $2.416 billion to $2.38 billion

    - For one trust, SASCO 2006-S4, the trust's controlling investor directed the RMBS Trustees to remove it from the estimation process. The claims submitted on account of this trust remain in the Protocol

    - The RMBS Trustees withdrew 12 trusts from the settlement because those trusts were terminated, and

    - 7 trusts were removed because all of the claims/loan files originally submitted by the RMBS Trustees under the Protocol have been voluntarily withdrawn by the RMBS Trustees

  - **Transferor Loans and Claims Against SASCO:** On June 27, 2016, the Bankruptcy Court entered an order disallowing all claims related to Transferor Trusts. On February 22, 2017, the District Court affirmed the Court's disallowance. The RMBS Trustees appealed that affirmance to the Court of Appeals

9

# II. Remaining Matters

- **Downstream Indemnity Claims Against Mortgage Originators**

    - In June 2014, the Court established an ADR protocol to enable the resolution of claims without the need for judicial intervention - many mortgage originators refused to participate in the ADR

    - As a result, the Plan Administrator filed an Omnibus Complaint in this Court against approximately 140 mortgage loan sellers in order to preserve its indemnification claims - since filing of the Complaint, the number of mortgage loan sellers participating in the action has decreased to 103

    - With the aid of the Court, the Plan Administrator and mortgage loan sellers entered into a Case Management Order ("CMO") in an effort to streamline the Omnibus case

    - Pursuant to the CMO, the Plan Administrator filed and served a Second Amended Complaint on each mortgage loan seller

    - The parties are now in Phase I of the CMO which allowed for mortgage loan sellers to file an omnibus Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) – this motion has been fully briefed and the parties await the Court to set a hearing date

    - Phase I of the CMO also allowed for mortgage loan sellers to file an Omnibus Motion to Transfer Venue with each mortgage loan seller permitted to file a declaration outlining the unique set of facts in support of its position. This Motion and declarations were filed on August 7. The Plan Administrator's opposition to the Motion is due on October 6; at that point, this Motion will also be fully briefed

    - After both Omnibus Motions are ruled on by the Court, the mortgage loan sellers will then be directed to file their answer to the Second Amended Complaints, and parties will then proceed to discovery as outlined in Phase II of the CMO

    - Upon resolution of the Private Label RMBS claims, the Estate will obtain rights to pursue mortgage loan sellers for loss recoveries, in addition to those matters in the current downstream process

# II. Remaining Matters

- **Guarantee Claims**

  - Disputes concerning the satisfaction of LBHI's guarantee of claims against certain Non-Controlled Affiliates – significant judicial resources might be required to resolved these disputes

    - LBIE

      - Disputes with 3 creditors remain in connection with LBHI's guarantee of claims against LBIE

      - These disputes call into question whether the guarantee claims of these creditors already have or will be satisfied in full

    - LBT

      - In connection with a small subset of primary claims against LBT that were guaranteed by LBHI, the allowed amount of the primary claims exceed the allowed amount of the guarantee claims

      - To date, distributions on account of certain of the primary and guarantee claims have satisfied the allowed amount of the guarantee claims

      - In order to avoid overpayments and avoid the cost of pursuing collection actions, on August 11, 2017, the Plan Administrator filed a motion requesting the establishment of a process designed to reduce overpayment risk without imposing risk on holders of the guarantee claims

- **Resolution of non-debtor affiliates and related issues**

# III. Conclusion

- Since the last Plan Administration Update, approximately $6.8 billion has been distributed and approximately $7.9 billion of claims filed have been resolved

- These cases remain "mega-bankruptcy" cases with approximately $7 billion of remaining assets, including cash (much of which is reserved for disputed claims), net of future operating expenses and excluding potential litigation recoveries and over 450 unresolved claims

- In addition to the ongoing trial over the valuation of Citi's claim, a trial concerning the estimation of the RMBS Private Label claims is scheduled to commence on October 16, 2017, and, absent a settlement, the Court will need to conduct a massive trial over the valuation of Credit Suisse's claims

- While the Plan Administrator continues to drive towards the completion of its mandate under Lehman's Chapter 11 plan, additional judicial resources will be required to enable the Plan Administrator to enhance creditor recoveries and facilitate the final administration of these estates

- The Plan Administrator continues to maintain a robust and experienced litigation platform and is prepared to strike the necessary balance considering the value of fair compromise, the cost of litigation, the benefit received by the Estate's creditors from timely resolution and the goal of ensuring that all creditors are treated fairly