HEARING DATE AND TIME: September 15, 2017 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: September 8, 2017 at 4:00 p.m. (Eastern Time)

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

Attorneys for Lehman Brothers Holdings Inc.
And Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**In re**                                                    :    **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*    :    **08-13555 (SCC)**
                                                             :
                                  **Debtors.**               :    **(Jointly Administered)**
-------------------------------------------------------------------x

**NOTICE OF HEARING ON THE PLAN ADMINISTRATOR'S**
**OBJECTION TO CERTAIN CLAIMS FILED BY U.S. BANK, N.A.**

**PLEASE TAKE NOTICE** that, on August 16, 2017, Lehman Brothers Holdings Inc.

("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc., Structured Assets Securities Corporation ("SASCO") (together,

"Lehman") and collectively with their Affiliated Debtors for certain entities in the above

referenced chapter 11 cases (the "Debtors"), filed the Plan Administrator's objection to Claim

Numbers 30872, 31040, 31047, 31050, 67909, and 67910, and that a hearing (the "Hearing") to

consider the Objection will be held before the Honorable Shelley C. Chapman, United States

Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, New York, New York 10004, on **September 15, 2017**

**at 10:00 a.m. (Eastern Time)** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers in accordance with customary practices of the Bankruptcy Court and General Order M-399 (which can be found at www.nysb.uscourts.gov), to the extent applicable, and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Rollin Braswell Fisher LLC, 8350 East Crescent Pkwy., Suite 100, Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq. and Maritza Dominguez Braswell, Esq.) and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **September 8, 2017 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:  August 16, 2017

/s/ Michael A. Rollin
Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc.
And Certain of Its Affiliates*

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

Attorneys for Lehman Brothers Holdings Inc.
And Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re                                                      :   **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*   :   **08-13555 (SCC)**
                                                           :
                            **Debtors.**                   :   **(Jointly Administered)**
--------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION TO**
**CERTAIN CLAIMS FILED BY U.S. BANK, N.A.**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured

Assets Securities Corporation ("SASCO") (together, "Lehman," and collectively with their

affiliated debtors in the above-captioned cases, the "Debtors"), respectfully represents as follows:

**RELIEF REQUESTED**

      1.    The Plan Administrator files this objection pursuant to section 502(b) of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking the disallowance and expungement of claim numbers

30872, 31040, 31047, 31050, 67909, and 67910 (collectively, the "U.S. Bank Claims," asserted

against LBHI and SASCO by U.S. Bank, N.A. ("Claimant")).

2.       The U.S. Bank Claims do not comply with this Court's July 2, 2009 order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") (ECF 4271), as they were not submitted with necessary and sufficient supporting documentation to enable the Plan Administrator to evaluate the claims, and Claimant has subsequently failed to produce specific documentation upon request.  The U.S. Bank Claims do not constitute valid *prima facie* claims, and the Plan Administrator requests the U.S. Bank Claims be disallowed and expunged in their entirety.

## JURISDICTION

3.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

4.       Commencing on September 15, 2008 (the "Commencement Date"), and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5.       On July 2, 2009, this Court entered the Bar Date Order, which requires, among other things, that "each Proof of Claim must: . . . (v) set forth with specificity the legal and factual basis for the alleged claim; [and] (vi) include supporting documentation or an explanation as to why documentation is not available . . . ."  Bar Date Order at 6.  The supporting documentation requirement was specifically set forth on the face of the Court-approved proof of claim form.  *Id*. at Exhibit B.  Furthermore, the Bar Date Order provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date

2

Order on or before the Bar Date . . . specifying the applicable Debtor and other requirements set

forth herein, shall forever be barred, estopped, and enjoined from asserting such claim against the

Debtors (or filing a Proof of Claim with respect thereto) . . . ." *Id*. at 9-10.  A copy of the Bar Date

Order is publicly available at http://www.lehman-docket.com.

6.      Claimant received notice of the Bar Date Order via mail and as posted on the

docket.  *See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice").[1]  The Bar

Date Notice, which was also published in *The New York Times* (International Edition), *The Wall

Street Journal* (International Edition), and *The Financial Times*, specifically instructs claimants

that "[i]f you file a Proof of Claim, your filed Proof of Claim must: . . . (vi) include supporting

documentation or an explanation as to why documentation is not available . . . ."  Bar Date Notice

at 4.

7.      The Bar Date Notice also prominently states in bold-face type that "any creditor

who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date

. . . specifying the applicable Debtor and other requirements set forth in the Bar Date Order, for

any claim such creditor holds or wishes to assert against the Debtors, will be forever barred,

estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect

to such claim) . . . ."  *Id*. at 6.

8.      On December 6, 2011, the Court approved and entered an order confirming the Plan

(the "Confirmation Order") (ECF 23023).  The Plan became effective on March 6, 2012 (the

"Effective Date").  The Confirmation Order provides that "[a]fter the Effective Date, other than a

proof of Claim relating to an executory contract or unexpired lease that is rejected pursuant to the

Plan, a proof of Claim relating to a prepetition Claim may not be filed or amended without

---

[1] The Bar Date Notice was attached as Exhibit B to the Bar Date Order.

authority of the Court." Confirmation Order at ¶ 86.  Pursuant to the Plan, the Plan Administrator is authorized to interpose and prosecute objections to claims filed against the Chapter 11 Estates.

<strong><u>SUMMARY OF THE U.S. BANK CLAIMS</u></strong>

**A.    Claims 30872 and 31040**

9.    Claims 30827 and 31040 were filed against LBHI and SASCO, respectively, by Claimant as custodian under certain custodial agreements by and between Claimant and various trustees with respect to LBHI's and SASCO's obligations under the custodial agreements and related fee letters.  [Claim No. 30872, addendum p. 1; Claim No. 31040, addendum p. 1].

10.    Claims 30827 and 31040 are substantially similar and allege that pursuant to the terms of the relevant custodial agreements, the Claimant performed certain duties with respect to mortgage loan documents relating to the relevant trusts.  [Claim No. 30872, ¶ 2; Claim No. 31040, ¶ 2].  Claimant alleges that under the terms of the relevant custodial agreements, and in certain transactions, the terms of supplemental fee letters, all custodial fees and expenses were to be paid by LBHI or SASCO.  *Id.*  The claims also allege that "files that are the subject of the Custodial Agreements may be missing material documents" and that LBHI or SASCO may be responsible for the missing documents and the resulting damages.  *Id.*

11.    These broad assertions do not contain sufficient documentation and/or information to indicate that the Claimant has performed an analysis of the alleged claims.  The claims do not identify the provisions of the documents giving rise to LBHI and SASCO's obligations to reimburse any custodial fees and expenses incurred by Claimant and do not describe what fees and expenses Claimant may have incurred.  While both Claims 30872 and 31040 include exhibits which list the relevant Custodial Agreements and set forth damage amounts related to the

4

transactions, there is no description of the services performed or expenses incurred by the Claimant to support these damage amounts.

12.     Moreover, in over seven years since filing, Claimant has never supplemented Claims 30872 and 31040, has not filed any supporting documentation, and has not provided an explanation as to why such documentation was then, or is now, unavailable.    The Plan Administrator has contacted Claimant requesting supporting documentation, but to date none has been provided.

**B.    Claims 31047 and 31050**

13.     Claims 31047 and 31050 were filed against LBHI by Claimant as trustee on behalf of the holder of an interest in the relevant trusts, SASCO Mortgage Loan Trust 2007-RNP1 and the Residential Loan Trust 2008-AH1, respectively (collectively, the "Trusts").  [Claim No. 31047, ¶ 1; Claim No. 31050, ¶ 1].

14.     Claimant alleges that the servicing agreements relating to the Trusts impose an obligation on the servicers to make certain advances of the costs and expenses related to the servicing of loans within the Trusts.  [Claim No. 31047, ¶ 2; Claim No. 31050, ¶ 2].  Claimant alleges that Aurora Loan Services ("Aurora") "has caused the servicers to advance prior servicer advances to LBHI and/or its affiliate Lehman Brothers, Inc. ("LBI"), and has subsequently allowed the servicers to reimburse themselves from the Trusts for those payments."  *Id*.

15.     Claimant has failed to allege sufficient facts to allow the Plan Administrator to assess the claims.  Claimant provides no support for its contention that LBHI improperly retained advances.  The allegations do not identify the alleged advances that were made by the prior servicers which were then allegedly improperly retained by LBHI.  The claims do not identify the operative provisions of the relevant "transfer agreements" or even identify the parties to these

5

agreements.  Instead, the claims broadly assert that the Claimant has been advised by an interest holder that "Aurora has allowed its affiliates LBHI and/or LBI to improperly retain over $40 million." *Id.* at ¶ 2.

16.     Claimant specifically notes that "[i]t is uncertain how much of these improperly retained advances were distributed to LBHI" and that Claimant would continue to investigate the claims. *Id.* at ¶ 2.  However, in over seven years since filing, Claimant has never supplemented these claims, has not filed any supporting documentation, and has not provided an explanation as to why such documentation was then, or is now, unavailable.  The Plan Administrator has contacted Claimant requesting supporting documentation, but to date none has been provided.

17.     Furthermore, any potential liability LBHI may have to the relevant interest holder has been resolved through a general release of claims granted to LBHI by the interest holder.  As the potential claims underlying Claims 31047 and 31050 have been released, the Plan Administrator has no underlying liability to the interest holder and the Claimant has no basis for maintaining these claims on the interest holder's behalf.  For these reasons, the Plan Administrator requests that Claims 31047 and 31050 be disallowed and expunged in their entirety.

### C.     Claims 67909 and 67910 – The U.S. Bank CDO/NIM Master Claims

18.     Prior to the Commencement Date, from time to time, LBHI transferred residential and commercial mortgage loans to SASCO, which then transferred such assets to certain trusts or special purpose vehicles in connection with the securitization of the assets, in exchange for a cash payment (the "RMBS & CMBS Transactions").  In addition, in certain net interest margin and resecuritization transactions, LBHI transferred certain securities issued in RMBS & CMBS Transactions to SASCO, which then transferred such securities to certain trusts or special purpose vehicles for a cash payment (the "CDO/NIM Transactions").

6

19.     On or before September 22, 2009, 98 separate proofs of claims were filed against LBHI and SASCO with respect to certain CDO/NIM Transactions (the "CDO/NIM Claims").[2] Eighty-eight (88) of the CDO/NIM Claims were originally filed by Claimant while ten (10) CDO/NIM Claims were filed by Bank of America, N.A. and subsequently transferred to Claimant pursuant to a Transfer of Claims Other Than for Security filed on June 20, 2011.  (ECF 17904).

20.     On March 14, 2011, the Debtors' filed the One Hundred Ninth Omnibus Objection to Claims (Insufficient Documentation) (the "Omnibus Objection") in the above-captioned case (ECF15008).   Through the Omnibus Objection, the Debtors sought to disallow and expunge numerous proofs of claim, including several CDO/NIM Claims[3] (the "Omnibus CDO/NIM Claims"), because they were "submitted without sufficient supporting documentation or an explanation as to why such documentation was unavailable" in violation of the Bar Date Order. Omnibus Objection at 3.

21.     On June 7, 2011, the Debtors filed the Notice of Withdrawal of Debtor's One Hundred and Ninth Omnibus Objection to Claims (Insufficient Documentation) as to Certain Claimants (the "Notice of Withdrawal") (ECF 17471).   Through the Notice of Withdrawal, the Debtors withdrew without prejudice the objections set forth in the Omnibus Objection for certain claims, including the Omnibus CDO/NIM Claims.   Notice of Withdrawal at 1.   The Notice of Withdrawal expressly provided that Debtors "reserve their rights to object to the claims listed on Exhibit A [which included the Omnibus CDO/NIM Claims] on any grounds in the future."   *Id.*

---

[2] The CDO/NIM Claims are identified on the Exhibit As attached to Claims 67909 and 67910.
[3] The CDO/NIM Claims included in the Omnibus Objection were Claims 19860, 19861, and 19862.

22.     Through the Notice of Withdrawal, the Debtors sought to allow Claimant another opportunity to provide supporting documentation for the Omnibus CDO/NIM Claims,[4] as well as all of the other CDO/NIM Claims, as required under the Bar Date Order.

### a. Claim 67909 – The LBHI Master Claim

23.     On February 23, 2012, LBHI and SASCO, as Debtors and Debtors in Possession, entered into the Stipulation and Agreement Relating to Certain Claims Filed by U.S. Bank National Association, as Indenture Trustee, Against Lehman Brothers Holdings Inc. and Structured Assets Securities Corporation with Claimant relating to certain CDO/NIM Claims (the "LBHI Stipulation").

24.     Pursuant to the LBHI Stipulation, certain CDO/NIM Claims asserted against LBHI and SASCO were combined into a newly created master claim in the amount of $500,000 (the "LBHI Master Claim").  The LBHI Stipulation constituted a joint direction to the claims agent to create a new claim number for the newly established LBHI Master Claim.  [Claim No. 67909, ¶ 6].  Under the LBHI Stipulation, the CDO/NIM Claims consolidated under the newly created LBHI Master Claim were deemed disallowed and expunged as duplicative of the LBHI Master Claim.

25.     The LBHI Master Claim relates to certain individual CDO/NIM Transactions.  [Claim No. 67909, ¶ 7].  The LBHI Master Claim describes the CDO/NIM Claims as asserting "claims for fees and expenses of the Claimant, as well as claims for any losses incurred by the respective trust as a result of the failure or inability of SASCO and/or LBHI to perform certain duties under the relevant trust agreements."  *Id*. at 2.

---

[4] Each CDO/NIM claim was filed with an attachment labeled either "Addendum" or "EXHIBIT A TO PROOF OF CLAIM."

26.     The securities at issue in the CDO/NIM Transactions which are subject to the LBHI Master Claim were acquired by SASCO from LBHI under the terms of various Securities Purchase Agreements ("SPAs") between SASCO and LBHI.  Claimant filed the original CDO/NIM Claims as trustee for the various trusts at issue pursuant to trust agreements executed by and among the trustee and SASCO, as depositor (the "Trust Agreements").

27.     The LBHI Master Claim consists of sixteen (16) CDO claims and one (1) NIM claim.  Fourteen (14) of the CDO claims are asserted against LBHI and allege that under the terms of the controlling SPAs, LBHI made certain representations and warranties to SASCO.  These claims allege that SASCO then assigned its rights and interests under the SPAs to the trustee under the terms of the relevant Trust Agreement.  The sole CDO claim filed against SASCO asserts that SASCO, as depositor, made certain representations and warranties to the trustee under the terms of the relevant SPA and Trust Agreement.  U.S. Bank asserts breaches of these representations and warranties by LBHI and SASCO.  Additionally, all of the LBHI and SASCO CDO claims assert a claim for any other unknown obligations, losses, fees or expenses which may have been incurred by the trustee and are attributable to the Debtor.

28.     In addition to breach of representation and warranty claims, various CDO claims assert claims for reimbursement of Trustee expenses and for the failure to provide a reserve fund deposit as required by the applicable Trust Agreement.

29.     The LBHI Master Claim also contains a CDO claim asserting a claim for administration fees and expenses pursuant to the controlling administration agreement dated July 25, 2005, between U.S. Bank, as administrator, Lehman Securities Corporation, as depositor, and the trust sponsor, Wind Master Trust.  This claim also asserts a claim for fees and expenses pursuant to the controlling Trust Agreement and a claim for reimbursement of insufficient interest

9

account funds pursuant to a side letter dated August 27, 2007, by and between U.S. Bank, as trustee, the trust sponsor, and LBHI.

30.     The sole NIM claim included in the LBHI Master Claim asserts a claim against LBHI for breaches of representations and warranties made by LBHI in the relevant "transaction documents" which include the relevant Trust Agreement and Mortgage Loan Sale Agreement and other transaction documents identified therein.  The NIM claim also asserts a claim relating to taxes imposed on the trust for which LBHI is claimed to be contractually responsible, and a claim for unliquidated and unknown breaches by LBHI of other covenants or agreements under the transaction documents.

31.     The CDO/NIM Claims at issue in the LBHI Master Claim do not allege any specific breaches or identify the provisions of the transaction agreements that are alleged to have been breached, but instead broadly assert breaches of representations and warranties arising under the controlling SPAs and Trust Agreements.  These broad assertions do not contain sufficient documentation and/or information to indicate that the Claimant has performed an analysis of the alleged claims or identify any specific breaches that would entitle Claimant to a claim.

32.     The claims at issue in the LBHI Master Claim do not state the monetary value of any damages caused by LBHI or SASCO due to the alleged breaches and only state the full amount of principal and interest due on the underlying notes in the event sales of the underlying securities are determined to be a financing transaction rather than a true sale.  For claims alleging specific trustee and administrator fees and expenses, Claimant has provided no support for these amounts, either in the underlying claims themselves, or after attempts by LBHI to verify and resolve these claims.  Claimant has made no further efforts to define or support the amounts it attributes to the alleged breaches.

10

33.     As set forth above, the LBHI Master Claim and CDO/NIM Claims allege no specific breaches, were filed without any supporting evidence or documentation, and do not specify or support the amount of damages alleged.  Moreover, in over seven years since filing, Claimant has never supplemented the CDO/NIM Claims or LBHI Master Claim, has not filed any supporting documentation, and has not provided an explanation as to why such documentation was then, or is now, unavailable.  The Plan Administrator has contacted Claimant requesting supporting documentation, but to date none has been provided.

### b.   Claim 67910 – The SASCO Master Claim

34.     On February 23, 2012, LBHI and SASCO, as Debtors and Debtors in Possession, entered into a second Stipulation and Agreement Relating to Certain Claims Filed by U.S. Bank National Association, as Indenture Trustee, Against Lehman Brothers Holdings Inc. and Structured Assets Securities Corporation with Claimant relating to the certain CDO/NIM Claims (the "SASCO Stipulation").

35.     Pursuant to the SASCO Stipulation, certain CDO/NIM Claims asserted against SASCO were combined into a newly created master claim in the amount of $9,500,000 (the "SASCO Master Claim").  The SASCO Stipulation constituted a joint direction to the claims agent to create a new claim number for the newly established SASCO Master Claim.  [Claim No. 67910, ¶ 6].  Under the SASCO Stipulation, the CDO/NIM Claims underlying the SASCO Master Claim were deemed disallowed and expunged as duplicative of the SASCO Master Claim.

36.     The SASCO Master Claim relates to the individual CDO/NIM Transactions. [Claim No. 67910, ¶ 7].  The SASCO Master Claim describes the CDO/NIM Claims as asserting "claims for fees and expenses of the Claimant, as well as claims for any losses incurred by the

respective trust as a result of the failure or inability of SASCO and/or LBHI to perform certain duties under the relevant trust agreements." *Id*. at 2.

37.     The SASCO Master Claim consists of fifty-eight (58) NIM claims and twenty-three (23) CDO claims.  Claimant asserted the CDO/NIM Claims as trustee pursuant to trust agreements by and among the trustee and SASCO, as depositor.  Claimant also asserted claims as indenture trustee pursuant to various indentures by and among the indenture trustee and the issuers of the underlying securities (the "Indenture Agreements"), and as administrator under the applicable administration agreement by and among the administrator, SASCO, as depositor, and the issuers of the underlying securities (the "Administration Agreements").   Additionally, all of the CDO/NIM Claims asserted a claim for any other breaches which may be unknown to the Claimant at the time of filing the CDO/NIM Claims.

38.     The SASCO Master Claim consists of twenty-nine (29) claims that allege that SASCO, as depositor, made certain representations and warranties to the trustee under the terms of the applicable transaction documents, including the relevant trust agreement.  Claimant asserts breaches of these representations and warranties by SASCO.

39.     The SASCO Master Claim also contains fifty-one (51) claims alleging breaches of SASCO's obligations under the controlling Administration Agreement.  These claims also assert a claim for indemnification with respect to Claimant's performance of its duties as indenture trustee and administrator under the controlling Indenture and Administration Agreement.

40.     One NIM claim subject to the SASCO Master Claim asserts a claim for the costs, fees, and expenses associated with terminating the underlying trust pursuant to a trust agreement between SASCO, as depositor, and Claimant, as Administrator, dated June 1, 2003, and states that the notes issued under the trust have been paid in full.

41.    The CDO/NIM Claims at issue in the SASCO Master Claim do not allege any specific breaches, but instead broadly assert breaches of representations and warranties arising under the controlling transaction documents.  These broad assertions do not contain sufficient documentation and/or information indicating that the Claimant has performed an analysis of the alleged claims or identified any specific breaches that would entitle Claimant to a claim.

42.    The CDO/NIM Claims at issue in the SASCO Master Claim do not state the monetary value of any damages caused by SASCO due to the alleged breaches and only state the full amount of principal and interest due on the underlying notes in the event sales of the underlying securities are determined to be a financing transaction rather than a true sale.  For claims alleging specific trustee and administrator fees and expenses, Claimant has provided no support for these amounts, either in the underlying claims themselves, or after attempts by SASCO to verify and resolve these claims.  Claimant has made no further efforts to define or support the amounts it attributes to the alleged breaches.

43.    As set forth above, the SASCO Master Claim and CDO/NIM Claims allege no specific breaches, were filed without any supporting evidence or documentation, and do not specify or support the amount of damages alleged.  The Claimant has had over seven years to provide supporting documentation but has failed to make sufficient information available to enable LBHI to assess the SASCO Master Claim and underlying CDO/NIM Claims.

**THE U.S. BANK CLAIMS SHOULD BE DISALLOWED AND EXPUNGED**

44.    In reviewing the claims filed on the claims register in these cases and maintained by the Court-approved claims agent, the Plan Administrator has identified the U.S. Bank Claims as claims that should be disallowed and expunged because they do not include sufficient

13

documentation supporting the existence of a debt or an explanation as to why such documentation is unavailable and, therefore, do not constitute valid *prima facie* claims.

45.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

46.    Courts in the Second Circuit and elsewhere recognize that failure to support a claim with the documentation mandated by Bankruptcy Rule 3001(c) deprives the claim of a presumption of validity.  *See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) ("Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim."); *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("If . . . the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, e.g., by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), . . . [the claim] is . . . deprived of any *prima facie* validity which it could otherwise have obtained.") (internal citations omitted).

47.    The Bar Date Order specifically requires that "each Proof of Claim must: … (vi) include supporting documentation or an explanation as to why documentation is not available . . . ."  Bar Date Order at 6.  This requirement for documentation not a unique one.  Indeed, this Court and others in the Southern District of New York have entered similar orders requiring that proofs of claim include supporting documentation or an explanation as to why documentation is unavailable.  *See In re Finlay Enterprises, Inc.*, No. 09-14873 (JMP) (Peck, J.), Oct. 20, 2009

Order (ECF 316) at 6; *see also In re AGT Crunch Acquisition LLC, et al.*, No. 09-12889 (REG) (Gerber, J.), Oct. 14, 2009 Order (ECF 554) at 2-3.

48.    As noted above, Claimant was specifically provided notice of these documentation requirements in the Bar Date Notice, which included instructions on how to complete a proof of claim form and a warning that failure to comply with those instructions would result in claims being barred.  See Bar Date Notice at 4, 6.  Nevertheless, Claimant filed the U.S. Bank Claims without including sufficient documentation supporting the validity of these claims or an explanation as to why such documentation is unavailable.

49.    Courts have also held that where a claimant refuses to support its claim after a debtor's request for more information, the claim should be disallowed and expunged. *See In re Chateaugay*, No. 89 Civ. 5994 (CSH), 1991 WL 60527 (S.D.N.Y. Apr. 8, 1991).  The district court in *Chateaugay* affirmed the bankruptcy court's decision to expunge 149 claims on the grounds that they were not sufficiently specific, and where the claimant had failed to comply with the debtor's request, lodged "over a year earlier," for more information about the claims.  *Id*. at *2-5.

50.    Because the U.S. Bank Claims fail to comply with the Bar Date Order's specific direction that claims include supporting documentation or an explanation as to why such documentation is unavailable, and does not provide information to permit the Plan Administrator to determine the validity or amount of the U.S. Bank Claims, the U.S. Bank Claims violate the Bar Date Order and do not constitute valid *prima facie* claims.  Therefore, the Plan Administrator requests that the Court disallow and expunge the U.S. Bank Claims.

## RESERVATION OF RIGHTS

51.    The Plan Administrator reserves all rights to object on any other bases to the U.S. Bank Claims as to which the Court does not grant the relief requested herein.   The Plan

Administrator reserves the right to conduct discovery as to the U.S. Bank Claims and any matters raised by Claimant and to supplement this and other filings as a result thereof.

## NOTICE

52.      No trustee has been appointed in these chapter 11 cases.  Notice of the Claim has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Claimant; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases.  (ECF 9635).  The Plan Administrator submits that no other or further notice need be provided.

53.      Except as set forth herein, no previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  August 16, 2017

/s/ Michael A. Rollin
Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers
Holdings Inc. and Certain of Its
Affiliates*

16

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------------------x
                                                        :
In re                                                   :       **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :       **08-13555 (SCC)**
                                                        :
                        **Debtors.**                    :       **(Jointly Administered)**
                                                        :
----------------------------------------------------------------------------------x

**ORDER GRANTING PLAN ADMINISTRATOR'S OBJECTION**
**TO CERTAIN CLAIMS FILED BY U.S. BANK, N.A.**

Upon the Plan Administrator's Objection to Certain Claims Filed by U.S. Bank, N.A.,

dated August 16, 2017 (the "Objection"),[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc., Structured Assets Securities Corporation ("SASCO") (together, "Lehman") and

collectively with their Affiliated Debtors for certain entities in the above referenced chapter 11

cases (the "Debtors"), pursuant to section 502(b) of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure, seeking to

disallow and expunge the Claim, all as more fully described in the Objection; and notice of the

Objection having been provided to the Claimant, and it appearing that no other or further notice

need be provided; and the Court having found and determined that the relief sought in the

Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest,

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is:

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings
ascribed to such terms in the Objection.

ORDERED that the relief requested in the Objection is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, claim numbers 30872, 31040, 31047, 31050, 67909, and 67910 are hereby disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2017
New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE