**HEARING DATE AND TIME: September 15, 2017 at 10:00 a.m. (EDT)**
**RESPONSE DEADLINE: September 8, 2017 at 4:00 p.m. (EDT)**

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Lehman Brothers Holdings Inc.*
*And Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                      :   **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*                :   **08-13555 (SCC)**
                                                           :
                                    Debtors.               :   **(Jointly Administered)**
---------------------------------------------------------------x

**NOTICE OF HEARING ON THE**
**PLAN ADMINISTRATOR'S OBJECTION TO CLAIM NUMBERS 22639 and 22775**

**PLEASE TAKE NOTICE** that, on August 16, 2017, Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc., Structured Assets Securities Corporation ("SASCO") (together, "Lehman") and collectively with their Affiliated Debtors for certain entities in the above referenced chapter 11 cases (the "Debtors"), filed the Plan Administrator's Objection to Claim Numbers 22639 and 22775 (the "Objection"), and that a hearing (the "Hearing") to consider the Objection will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **September 15, 2017** at 10:00 a.m. (Eastern Time) or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM, preferably in Portable Document Format (PDF) (with a hard copy delivered directly to Chambers), in accordance with customary practices of the Bankruptcy Court and General Order M-399 (which can be found at www.nysb.uscourts.gov), to the extent applicable, and shall be served in accordance with General Order M-399 upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii) attorneys for LBHI, Rollin Braswell Fisher LLC, 8350 East Crescent Pkwy., Suite 100, Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq. and Maritza Dominguez Braswell, Esq.) and (iii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq.); so as to be so filed and received by no later than **September 8, 2017 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection, the Plan Administrator may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

2

Dated: August 16, 2017

<u>/s/ Michael A. Rollin</u>
Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers Holdings Inc.
And Certain of Its Affiliates*

HEARING DATE AND TIME: September 15, 2017 at 10:00 a.m. (EDT)
RESPONSE DEADLINE: September 8, 2017 at 4:00 p.m. (EDT)

ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468
Michael A. Rollin

*Attorneys for Lehman Brothers Holdings Inc.
And Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.* | : 08-13555 (SCC) |
| | : |
| Debtors. | : (Jointly Administered) |

---------------------------------------------------------------------x

**PLAN ADMINISTRATOR'S OBJECTION
TO CLAIM NUMBERS 22639 AND 22775**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured Assets Securities Corporation ("SASCO") (together, "Lehman," and collectively with their affiliated debtors in the above-captioned cases, the "Debtors"), respectfully represents as follows:

**RELIEF REQUESTED**

1.  The Plan Administrator files this objection pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking the disallowance and expungement of claim numbers 22639 and 22775 (the "Claims," filed by Citibank, N.A. ("Citibank")).

2.  Lehman and creditors holding valid claims are prejudiced by Citibank's failure to properly assert and establish the validity of their claims.  The Plan Administrator has made substantial progress in liquidating the Debtors' estates, but actions and inactions like those of Citibank impede further progress. For the reasons explained below, the Claims should be disallowed and expunged.

## JURISDICTION

3.  This Court has subject matter jurisdiction to consider this Objection pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Debtors' confirmed plan (the "Plan"), and paragraph 77 of the order confirming the Plan.  This Objection is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.  On July 2, 2009, this Court entered the Bar Date Order, which requires, among other things, that "each Proof of Claim must: . . . (v) set forth with specificity the legal and factual basis for the alleged claim; [and] (vi) include supporting documentation or an explanation as to why documentation is not available . . . ." Bar Date Order at 6.  The supporting documentation requirement was specifically set forth on the face of the Court-approved proof of claim form.  *Id*. at Exhibit B.  Furthermore, the Bar Date Order provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date . . . specifying the applicable Debtor and other requirements set forth herein, shall forever be barred, estopped, and enjoined from asserting such claim against the

Debtors (or filing a Proof of Claim with respect thereto) . . . ." *Id*. at 9-10. A copy of the Bar Date Order is publicly available at http://www.lehman-docket.com.

5. Claimant received notice of the Bar Date Order via mail and as posted on the docket. *See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice").[1] The Bar Date Notice, which was also published in *The New York Times* (International Edition), *The Wall Street Journal* (International Edition), and *The Financial Times*, specifically instructs claimants that "[i]f you file a Proof of Claim, your filed Proof of Claim must: . . . (vi) include supporting documentation or an explanation as to why documentation is not available . . . ." Bar Date Notice at 4

6. The Bar Date Notice also prominently states in bold-face type that "any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date . . . specifying the applicable Debtor and other requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim) . . . ." *Id*. at 6.

7. The Claims were filed nearly eight years ago by Citibank, as trustee on behalf of two trusts, SASCO 2006-RM1 and SASCO 2007-RM1, that issued securities backed by pools of reverse mortgage loans (together the "Citi Reverse Mortgage Trusts"). The Citibank Claims assert "no less than" approximately $930 million in claims for alleged breaches of representations and warranties and document deficiencies (the "RMBS Claims") and other claims against LBHI and

---

[1] The Bar Date Notice was attached as Exhibit B to the Bar Date Order.

3

SASCO for damages allegedly incurred by the Citi Reverse Mortgage Trusts and Citibank as trustee (the "Miscellaneous Claims").

8. Although the Claims include broad allegations regarding the obligations of LBHI and SASCO under the Governing Agreements, they identify no specific deficient mortgage loan files, breaches of representations and warranties, or other grounds for liability.

9. In an effort to assess the validity and size of the Claims, the Plan Administrator began contacting Citibank in the summer of 2010 and requested that mortgage loan-level evidentiary support be delivered no later than December 31st of that year. In response to Lehman's requests, Citibank supplied no mortgage loan data and admitted that they had not identified any specific breaches and would not expend any further effort to identify breaches.

10. Due to the dearth of specific assertions and support included with the Claims, and claims submitted on behalf of other RMBS trusts, the Debtors were unable to evaluate their merit. Accordingly, on March 14, 2011, the Plan Administrator filed the One Hundred and Ninth Omnibus Objection to the Claims ("Insufficient Documentation Objection") (ECF 15008) seeking to disallow such claims, on the basis that they violated the Bar Date Order by not providing sufficient supporting documentation.

11. In response to the Plan Administrator's objection, certain securitization trustees allowed their claims to be expunged, and others, including Citibank, transferred nearly all of their claims to other entities as successor trustees. Citibank, however, chose to remain as trustee for the Citi Reverse Mortgage Trusts. After argument, the Court reserved decision on the Insufficient Document Objection, but noted on the record that "if there are claims, the *trustees would be put to their proof*, and whether they can actually succeed in carrying a burden of proof establishing

residential and mortgage loan breaches . . . would be extraordinarily difficult." (*See* 6/30/2011 Hearing Tr. at 71 (ECF 18251) (emphasis added)).

12. In connection with consummation of the Plan, on February 22, 2012, the Debtors agreed with Citibank and other trustees to establish a reserve in an aggregate amount sufficient for a $5 billion Class 7 (general unsecured) claim against LBHI and SASCO, comprised of a $4.75 billion reserve for the claims filed by the trustees against LBHI and a $250 million reserve for the claims filed by the trustees against SASCO. (*See* Order Pursuant to Section 8.4 Of The Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. And Its Affiliated Debtors and Sections 105(A), 502(C) And 1142(B) Of The Bankruptcy Code Estimating the Amounts of Claims Filed by Indenture Trustees On Behalf of Issuers of Residential Mortgage-Backed Securities for Purposes of Establishing Reserves, ("RMBS Reserve Order" (ECF 25643)).

13. Since the filing of the Claims, Citibank has failed to take any steps to pursue them. As a result, Lehman is compelled to press this objection.

## SUMMARY OF THE CLAIMS

14. The Claims assert: (1) RMBS Claims, that is, claims for alleged breaches of representations and warranties and document deficiencies asserted by Citibank in its capacity as trustee for the Citi Reverse Mortgage Trusts; and (2) Miscellaneous Claims, including (a) unspecified claims relating to Lehman's alleged failure to satisfy other obligations under the Governing Agreements and unspecified and unliquidated claims asserted in the event that "it is determined that [Lehman] had engaged in any fraud or other improper acts . . . that placed [Lehman] in economic distress or otherwise directly or indirectly damaged" the Citi Reverse

5

Mortgage Trusts; and (b) claims asserted by Citibank on its own behalf for custodial fees that LBHI and SASCO allegedly are obligated to pay under the Governing Agreements.

15. The residential mortgage-backed securities covered by the Claims were or are secured by a pool of reverse mortgage loans aggregated by Lehman and sold into the Citi Reverse Mortgage Trusts. Payments on the underlying reverse mortgage loans are utilized to make payments on the RMBS. In connection with the sale of mortgage loans into the trusts, limited representations and warranties were made by the selling entities to the trust relating to the quality and nature of the mortgage loans, the borrowers, and the properties. The Governing Agreements for these transactions (Mortgage Loan Sale and Assignment Agreements, Transfer and Servicing Agreements, Trust Agreements, and Indentures) set forth the respective rights and obligations of the parties to the agreements, such as providing for repurchase obligations and establishing the requirements that trigger such obligations.

16. The gravamen of Citibank's representation and warranty claims is that Lehman breached mortgage loan-level representations and warranties in the Governing Agreements. To trigger Lehman's obligation to compensate the Citi Reverse Mortgage Trusts for losses, if any, the Governing Agreements specifically require Citibank, as trustee, to prove each of the following elements for *each mortgage loan*: (a) a breach of a representation and warranty ("Breach"); (b) the Breach adversely and materially affected the value of the mortgage loan ("AMA"); and (c) prompt notice of the Breach was provided to Lehman ("Notice" and collectively the "Rep and Warranty Required Elements"). The Governing Agreements unambiguously provide that these Required Elements must be satisfied for *each mortgage loan*.

17. The gravamen of Citibank's document deficiency claims is that SASCO failed to deliver complete mortgage files for each mortgage loan. In order to require SASCO to compensate

6

the Citi Reverse Mortgage Trusts for their losses, if any, arising out of document deficiencies, the Governing Agreements require Citibank to prove each of the following for *each mortgage loan*: (a) a document or documents constituting part of a mortgage file is missing, does not appear regular on its face, or appears to be unrelated to the mortgage loans (a "Material Defect"); (b) the Material Defect has not been cured; and (c) a loss has been incurred with respect to such mortgage loan, which loss is attributable to the failure of SASCO to cure such Material Defect (the "Document Defect Required Elements"). The Governing Agreements unambiguously provide that the Document Defect Required Elements must be satisfied for *each mortgage loan*.

18. In addition to the RMBS Claims, Citibank has asserted other Miscellaneous Claims, both on behalf of the Citi Reverse Mortgage Trusts and on its own behalf as trustee, e.g., claims for custodial fees that LBHI or SASCO allegedly owe Citibank under the Governing Agreements. To the extent any of these claims arise out of the Governing Agreements, Citibank must articulate a basis for the claims with reference to the specific agreement and provision, and provide sufficient evidence giving rise to liability. To the extent the Miscellaneous Claims arise under other theories of liability, the Bar Date Order requires that they be articulated specifically and cite supporting documentation.

19. As of the filing of this Objection and nearly seven years after the claims were filed, Citibank still has not adequately pled the Claims under the Governing Agreements, bankruptcy law, or the Bar Date Order, nor has it provided the required loan-level (or other) evidence necessary to support the claims. Indeed, Citibank has not articulated a single Breach or Material Defect as to any mortgage loan for which it contends that LBHI and SASCO bear liability. Instead, Citibank

7

asserts aggregate claim amounts approximating $930 million (representing the unpaid principal amount of the mortgage loans in the related trusts as of June 30, 2009).

## THE CLAIM SHOULD BE DISALLOWED AND EXPUNGED

20. Under section 502 of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 of the title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Once such an objection is made, as here, the burden shifts to Citibank to prove by a preponderance of the evidence that under applicable law the Claims should be allowed. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden . . . shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citation omitted); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007) ("If the objecting party rebuts the claimant's prima facie case, 'it is for the claimant to prove his claim, not for the objector to disprove it.'") (citation omitted); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an object[or] offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim.").

21. Moreover, the Bar Date Order requires, among other things, that "each Proof of Claim must: . . . (vi) include supporting documentation or an explanation as to why documentation is not available." (Bar Date Order at 6). The Bar Date Order further provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date . . . specifying the applicable Debtor and other requirements set forth herein, shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto)" (*Id*. at 9-10). Citibank

8

has not complied with these requirements, either by the Bar Date (September 22, 2009) or in the nearly seven years since.

22. Furthermore, it is Citibank's obligation to provide supporting documentation for the Claims or they are not entitled to a presumption of validity. Courts in the Second Circuit and elsewhere recognize that failure to support a claim with the documentation mandated by Bankruptcy Rule 3001(c) deprives the claim of the presumption of validity. *See In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) ("Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim."); *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("If . . . the claimant fails to allege facts in the proof of claim that are sufficient to support the claim, e.g., by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), . . . [the claim] is . . . deprived of any *prima facie* validity which it could otherwise have obtained." (quotations omitted)); *see also In re DePugh*, 409 B.R. 125, 135 (Bankr. S.D. Tex. 2009) ("If . . . an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome . . ."). Citibank has failed to satisfy its burden and has demonstrated no intention of doing so.

23. Courts have held that where a claimant refuses to support its claim after a debtor's request for more information, the claim should be disallowed and expunged. *See In re Chateaugay*, No. 89 Civ. 5994 CSH), 1991 WL 60527 (S.D.N.Y. Apr. 8, 1991). For example, in *In re Chateaugay* the District Court affirmed the bankruptcy court's decision to expunge 149 claims on the grounds that they were insufficiently specific and that the claimant had failed to comply with the debtor's request, lodged "over a year earlier," for more information about the claims. *See In re Chateaugay* 1991 WL 60527 at *2-5. Here, Lehman first requested more information about the

9

Claims from Citibank approximately *seven years ago*, but additional information was not provided.

24. Citibank has failed to articulate or provide any evidence in support of any element of any claim for any of the approximately 3,333 mortgage loans underlying the Citibank Claims. Consequently, those claims are unenforceable against LBHI and SASCO under any agreement or applicable law.

25. The Claims consist only of broad allegations and identify sections of the Governing Agreements under which LBHI and SASCO could potentially have liability. For each proof of claim, Citibank by its own admission provided only: "(a) the names of the trusts involved in the transactions; (b) the number of underlying residential mortgage loans included in each trust; (c) the aggregate unpaid principal balance for the mortgage loans in each transaction as of June 30, 2009; and (d) certain fees and expenses incurred as of June 30, 2009." (*See* Citibank's Response to the Insufficient Documentation Objection at 4 (ECF 17883)).

26. The Claims purport to assert damages in the aggregate principal amount of mortgage loans held by the Citi Reverse Mortgage Trusts as of June 30, 2009. Such amount bears no relation to damages, if any, that may have been incurred by the Citi Reverse Mortgage Trusts. Indeed, Citibank has acknowledged that the Claims are grossly overstated. (*See* 6/30/2011 Hearing Tr. at 43 (ECF 18251). ("[W]e don't stand before this Court and suggest that the claims should be allowed in the total aggregate unpaid principal balance of the mortgage loans in each trust. That would not be an accurate presentation of what we think the amount would be.")). The claimed amount simply is not supportable and Citibank has made no effort to determine which reverse

10

mortgage loans and representations LBHI or SASCO may have breached to create liability to the Citi Reverse Mortgage Trusts. The Claims should be disallowed and expunged.

## RESERVATION OF RIGHTS

27. The Plan Administrator reserves all rights to object on any other bases to the Claim as to which the Court does not grant the relief requested herein. The Plan Administrator reserves the right to conduct discovery as to the Claim and any matters raised by Claimant and to supplement this and other filings as a result thereof.

## NOTICE

28. No trustee has been appointed in these chapter 11 cases. Notice of the Objection has been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Claimant; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635]. The Plan Administrator submits that no other or further notice need be provided.

29. Except as set forth herein, no previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

11

Dated: August 16, 2017.

/s/ Michael A. Rollin
Michael A. Rollin
ROLLIN BRASWELL FISHER LLC
8350 E. Crescent Parkway, Suite 100
Greenwood Village, CO 80111
Telephone: (303) 945-7415
Facsimile: (303) 974-7468

*Attorneys for Lehman Brothers
Holdings Inc. and Certain of Its
Affiliates*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (SCC)**
:
Debtors. : **(Jointly Administered)**
:
---------------------------------------------------------------x

# ORDER GRANTING PLAN ADMINISTRATOR'S
# OBJECTION TO CLAIM NUMBERS 22639 AND 22775

Upon the Plan Administrator's Objection to Claim Numbers 22639 and 22775, filed by Citibank, N.A. ("Citibank"), dated August 16, 2017 (the "Objection"),[1] of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator") and Structured Assets Securities Corporation ("SASCO") (together, "Lehman," and collectively with their affiliated debtors in the above-captioned cases, the "Debtors", pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure, seeking to disallow and expunge the Claim, all as more fully described in the Objection; and notice of the Objection having been provided to the Claimant, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is:

ORDERED that the relief requested in the Objection is granted; and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, claim numbers 22639 and 22775 are hereby disallowed and expunged in their entirety with prejudice; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: _____, 2017
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE