# Exhibit B

Document2

*EXECUTION*

INDENTURE

by and among

SASCO NIM COMPANY 2006-NC1
as Issuer

SASCO ARC CORPORATION
as Co-Issuer

and

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee

Dated as of October 20, 2006

SASCO NET INTEREST MARGIN NOTES,
SERIES 2006-NC1, CLASS A and CLASS B

TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS AND INCORPORATION BY REFERENCE ...................................2
Section 1.01. Definitions ............................................................................2
Section 1.02. Rules of Construction ............................................................7

ARTICLE II THE NOTES ............................................................................8
Section 2.01. Form ....................................................................................8
Section 2.02. Execution, Authentication, Delivery and Dating .................9
Section 2.03. Registration; Registration of Transfer and Exchange .........10
Section 2.04. Mutilated, Destroyed, Lost or Stolen Notes .......................16
Section 2.05. Persons Deemed Owners .....................................................16
Section 2.06. Payment of Principal and Interest .......................................17
Section 2.07. Cancellation .........................................................................17
Section 2.08. Authentication of Notes ......................................................18
Section 2.09. Book-Entry Notes ................................................................21
Section 2.10. Notices to Clearing Agency ................................................21
Section 2.11. Definitive Notes ...................................................................22
Section 2.12. Tax .......................................................................................22
Section 2.13. Release of Collateral ...........................................................22
Section 2.14. Section 3(c)(7) Procedures .................................................22

ARTICLE III COVENANTS ........................................................................24
Section 3.01. Payment of Principal and Interest .......................................24
Section 3.02. Maintenance of Office or Agency .......................................24
Section 3.03. Money for Payments To Be Held in Trust ..........................24
Section 3.04. Existence ..............................................................................26
Section 3.05. Protection of Collateral .......................................................26
Section 3.06. Performance of Obligations ................................................27
Section 3.07. Negative Covenants .............................................................28
Section 3.08. [Reserved] ............................................................................29
Section 3.09. Restricted Payments ............................................................29
Section 3.10. Treatment of Notes as Debt for Tax Purposes ....................29
Section 3.11. Notice of Events of Default .................................................29
Section 3.12. Further Instruments and Acts ..............................................30
Section 3.13. Annual Statement as to Compliance ...................................30

ARTICLE IV SATISFACTION AND DISCHARGE ...........................................30
Section 4.01. Satisfaction and Discharge of Indenture .............................30
Section 4.02. Application of Trust Money .................................................31
Section 4.03. Repayment of Moneys Held by Paying Agent ....................31

ARTICLE V REMEDIES ............................................................................31
Section 5.01. Events of Default .................................................................31
Section 5.02. Acceleration of Maturity; Rescission and Annulment ........32
Section 5.03. Collection of Indebtedness and Suits for Enforcement by Indenture Trustee .......33

Section 5.04.  Remedies; Priorities.............................................................................35
Section 5.05.  Limitation of Suits...............................................................................36
Section 5.06.  Unconditional Rights of Noteholders To Receive Principal and Interest ............37
Section 5.07.  Restoration of Rights and Remedies .........................................................37
Section 5.08.  Rights and Remedies Cumulative .............................................................37
Section 5.09.  Delay or Omission Not a Waiver ..............................................................37
Section 5.10.  Control by Noteholders .........................................................................37
Section 5.11.  Waiver of Past Defaults ........................................................................38
Section 5.12.  Undertaking for Costs ..........................................................................38
Section 5.13.  Waiver of Stay or Extension Laws ...........................................................38
Section 5.14.  Action on Notes .................................................................................39
Section 5.15.  Optional Preservation of the Collateral ....................................................39
Section 5.16.  Performance and Enforcement of Certain Obligations...................................39

ARTICLE VI THE INDENTURE TRUSTEE ...............................................................40

Section 6.01.  Duties of Indenture Trustee ..................................................................40
Section 6.02.  Rights of Indenture Trustee ..................................................................41
Section 6.03.  Individual Rights of Indenture Trustee .....................................................42
Section 6.04.  Indenture Trustee's Disclaimer ..............................................................43
Section 6.05.  Notice of Default ...............................................................................43
Section 6.06.  Reports by Indenture Trustee to Holders ..................................................43
Section 6.07.  Compensation and Indemnity ................................................................43
Section 6.08.  Replacement of Indenture Trustee ..........................................................44
Section 6.09.  Successor Indenture Trustee by Merger .....................................................45
Section 6.10.  Appointment of Co-Indenture Trustee or Separate Indenture Trustee ................45
Section 6.11.  Eligibility ........................................................................................47
Section 6.12.  Representations and Warranties ..............................................................47

ARTICLE VII NOTEHOLDERS' LISTS AND REPORTS ...............................................47

Section 7.01.  Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders ........47
Section 7.02.  Preservation of Information; Communications to Noteholders............................47

ARTICLE VIII ACCOUNTS, DISBURSEMENTS AND RELEASES.......................................48

Section 8.01.  Collection of Money ............................................................................48
Section 8.02.  Establishment of Note Payment Account; Payments on the Notes ....................48
Section 8.03.  Release of Collateral...........................................................................48

ARTICLE IX SUPPLEMENTAL INDENTURES...........................................................49

Section 9.01.  Supplemental Indentures Without Consent of Noteholders .............................49
Section 9.02.  Supplemental Indentures with Consent of Noteholders .................................50
Section 9.03.  Execution of Supplemental Indentures .....................................................51
Section 9.04.  Effect of Supplemental Indenture ...........................................................51
Section 9.05.  Reference in Notes to Supplemental Indentures...........................................52

ARTICLE X [RESERVED] .................................................................................52

Section 10.01. [Reserved].......................................................................................52

ARTICLE XI MISCELLANEOUS..........................................................................52

Section 11.01. Compliance Certificates and Opinions, etc. ........................................................ 52
Section 11.02. Form of Documents Delivered to Indenture Trustee ........................................... 52
Section 11.03. Acts of Noteholders ............................................................................................. 53
Section 11.04. Notices, etc. to Indenture Trustee, Issuer, Co-Issuer and Rating Agencies ......... 54
Section 11.05. Notices to Noteholders; Waiver .......................................................................... 55
Section 11.06. Effect of Headings and Table of Contents ........................................................... 55
Section 11.07. Successors and Assigns ....................................................................................... 55
Section 11.08. Severability ......................................................................................................... 55
Section 11.09. Benefits of Indenture and Consent of Noteholders ............................................. 55
Section 11.10. Legal Holidays .................................................................................................... 56
Section 11.11. Governing Law .................................................................................................... 56
Section 11.12. Counterparts ........................................................................................................ 56
Section 11.13. Recording of Indenture ....................................................................................... 56
Section 11.14. Obligations .......................................................................................................... 56
Section 11.15. No Petition ........................................................................................................... 56
Section 11.16. Inspection ............................................................................................................ 57
Section 11.17. Agreements of Noteholders ................................................................................. 57

EXHIBIT A-1      Form of Class A and Class B Rule 144A Global Note
EXHIBIT A-2      Form of Class A and Class B Regulation S Global Note
EXHIBIT B        Form of Class A and Class B Rule 144A Investment Letter (Definitive
                 Notes)
EXHIBIT C-1      Form of Transfer Certificate for Transfer from Restricted Global Security
                 to Regulation S Global Security
EXHIBIT C-2      Form of Transfer Certificate for Transfer from Regulation S Global
                 Security to Restricted Global Security
EXHIBIT D        Form of Section 3(c)(7) Reminder Notice

INDENTURE, dated as of October 20, 2006, by and among SASCO NIM COMPANY 2006-NC1, a company established under the laws of the Cayman Islands, as issuer (the "Issuer"), SASCO ARC CORPORATION, a Delaware corporation, as co-issuer (the "Co-Issuer"), and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as indenture trustee and not in its individual capacity (the "Indenture Trustee").

Each party agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Notes:

GRANTING CLAUSE

Subject to the terms of this Indenture, the Issuer hereby Grants to the Indenture Trustee at the Closing Date, as Indenture Trustee for the benefit of the Holders of the Notes, all of the Issuer's right, title and interest in and to: (i) the Trust Estate (as defined in the Sale and Collection Agreement); (ii) the Sale and Collection Agreement; (iii) the Administration Agreement; (iv) the Note Payment Account, all amounts and property in the Note Payment Account from time to time, and the Security Entitlements to all Financial Assets credited to the Note Payment Account from time to time; (v) all present and future claims, demands, causes of action and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing; and (vi) all other accounts, chattel paper, goods, general intangibles, instruments, Security Entitlements and documents of the Trust from time to time (collectively, the "Collateral").

The foregoing Grant is made in trust to secure (i) the payment of principal of and interest on, and any other amounts owing in respect of, the Notes, equally and ratably in each case without prejudice, priority or distinction (except as expressly provided herein) in accordance with their terms, (ii) the payment of all other sums payable under this Indenture with respect to the Notes, and (iii) compliance with the provisions of this Indenture, all as provided in this Indenture.

The foregoing Grant does not and is not intended to result in the creation of or assumption by the Indenture Trustee of any obligation of the Seller, the Issuer, the Co-Issuer or any other Person in connection with the Trust Estate or under any agreement or instrument relating thereto except as specifically set forth herein.

The Indenture Trustee, as Indenture Trustee on behalf of the Holders of the Notes, acknowledges such Grant, accepts the trust hereunder and agrees to perform the duties required of it in this Indenture in accordance with its terms.

Each Holder, by acceptance of the Notes, and the Indenture Trustee agree and acknowledge that each item of Collateral that is physically delivered to the Indenture Trustee

will be held by the Indenture Trustee in trust for the benefit of the Noteholders under the terms of this Agreement.

ARTICLE I

DEFINITIONS AND INCORPORATION BY REFERENCE

Section 1.01. <u>Definitions</u>. Except as otherwise specified herein or as the context may otherwise require, (i) capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in the Sale and Collection Agreement for all purposes of this Indenture and (ii) the following terms have the respective meanings set forth below for all purposes of this Indenture.

<u>Act</u>:  The meaning specified in Section 11.03(a).

<u>Affiliate</u>:  With respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

<u>Anniversary Year</u>:  The one-year period beginning on the Closing Date and ending on the first anniversary thereof, and each subsequent one-year period beginning on the day after the end of the preceding Anniversary Year and ending on next succeeding anniversary of the Closing Date.

<u>Book-Entry Notes</u>:  A beneficial interest in any Class of Notes, ownership and transfers of which shall be made through book entries by a Clearing Agency as described in Section 2.09; *provided* that after the occurrence of a condition whereupon Definitive Notes are to be issued to Note Owners, such Book-Entry Notes shall no longer be "Book-Entry Notes." As of the Closing Date, the Notes constitute Book-Entry Notes.

<u>Clearstream</u>:  Clearstream Banking Luxembourg, and any successor thereto.

<u>Collateral</u>:  The meaning specified in the Granting Clause of this Indenture.

<u>Commission</u>:  The Securities and Exchange Commission.

<u>Default</u>:  Any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default.

<u>Definitive Notes</u>:  The meaning specified in Section 2.09.

<u>Depositor</u>:  Structured Asset Securities Corporation, a Delaware corporation.

<u>Depository</u>:  DTC or any other Person designated by the Issuer as Depository in the case of Book-Entry Notes.

**Depository Institution:** Any depository institution or trust company, including the Indenture Trustee, that (a) is incorporated under the laws of the United States of America or any State thereof, (b) is subject to supervision and examination by federal or state banking authorities and (c) has outstanding unsecured commercial paper or other short-term unsecured debt obligations that are rated in the highest rating category by the Rating Agency, or is otherwise acceptable to the Rating Agency.

**DTC:** The Depository Trust Company.

**Euroclear:** Euroclear Bank, S.A./N.V., as operator of the Euroclear System.

**Event of Default:** The meaning specified in Section 5.01.

**Exchange Act:** The Securities Exchange Act of 1934, as amended.

**Executive Officer:** With respect to any corporation, the chief executive officer, chief operating officer, chief financial officer, president, executive vice president, any vice president, the secretary or the treasurer of such corporation; and with respect to any partnership, any general partner thereof.

**Global Securities:** The meaning specified in Section 2.01(a).

**Grant:** Mortgage, pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to this Indenture. A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of the Collateral and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring Proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

**Holder** or **Noteholder:** The registered holder of any Note as recorded on the books of the Note Registrar except that, solely for the purposes of taking any action or giving any consent pursuant to this Agreement, any Note registered in the name of the Seller, the Indenture Trustee or any Affiliate thereof shall be deemed not to be outstanding in determining whether the requisite percentage necessary to effect any such consent has been obtained, except that, in determining whether the Indenture Trustee shall be protected in relying upon any such consent, only Notes which a Responsible Officer of the Indenture Trustee knows to be so held shall be disregarded. The Indenture Trustee may request and conclusively rely on certifications by the Seller in determining whether any Notes are registered to an Affiliate of the Seller.

**Indenture Trustee Fee:** The compensation paid to the Indenture Trustee for its services under this Indenture as agreed to in a separate agreement between the Indenture Trustee and Lehman Brothers Inc.

Independent Certificate: A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 11.01, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in the Sale and Collection Agreement and that the signer is Independent within the meaning thereof.

Initial Purchaser: Lehman Brothers Inc.

Investment Company Act: The Investment Company Act of 1940, as amended.

Issuer Order and Issuer Request: A written order or request signed in the name of the Issuer by any one of its Authorized Officers, or by an authorized officer of the Depositor if so permitted under the Administration Agreement, and delivered to the Indenture Trustee.

Note Depository Agreement: Each of (i) the agreement dated October 20, 2006, among the Issuer, the Co-Issuer and The Depository Trust Company, as the initial Clearing Agency, relating to the Class A Book-Entry Notes, and (ii) the agreement dated October 20, 2006, between the Issuer and The Depository Trust Company, as the initial Clearing Agency, relating to the Class B Book-Entry Notes.

Note Owner: With respect to a Book-Entry Note, the Person who is the beneficial owner of such Book-Entry Note, as reflected on the books of the Clearing Agency or on the books of a Person maintaining an account with such Clearing Agency (directly as a Clearing Agency Participant or as an indirect participant, in each case in accordance with the rules of such Clearing Agency). With respect to a Definitive Note, the Holder thereof.

Note Register and Note Registrar: The respective meanings specified in Section 2.03.

Officer's Certificate: A certificate signed by any Authorized Officer of the Issuer (or by an officer of the Depositor pursuant to the Administration Agreement), under the circumstances described in, and otherwise complying with, the applicable requirements of Section 11.01, and delivered to the Indenture Trustee.

Opinion of Counsel: One or more written opinions of counsel who may, except as otherwise expressly provided in this Indenture, be employees of or counsel to the Issuer and who shall be satisfactory to the Indenture Trustee, which opinion or opinions shall be addressed to the Indenture Trustee, as Indenture Trustee, and shall comply with any applicable requirements of Section 11.01 and shall be in form and substance satisfactory to the Indenture Trustee.

Outstanding: With respect to any Note and as of the date of determination, any Note theretofore authenticated and delivered under this Indenture except:

(i)     Notes theretofore canceled by the Note Registrar or delivered to the Note Registrar for cancellation;

(ii)    Notes or portions thereof the payment for which money in the necessary amount has been theretofore deposited with the Indenture Trustee or any Paying Agent in trust for the related Noteholders; and

(iii)    Notes in exchange for or in lieu of which other Notes have been authenticated and delivered pursuant to this Indenture unless proof satisfactory to the Indenture Trustee is presented that any such Notes are held by a bona fide purchaser;

*provided*, that in determining whether the Holders of the requisite Outstanding Amount of the Notes have given any request, demand, authorization, direction, notice, consent, or waiver hereunder or under any other Operative Agreement, Notes owned by the Issuer, the Co-Issuer, any other obligor upon the Notes, the Seller, or any Affiliate of any of the foregoing Persons shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Indenture Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent, or waiver, only Notes that a Responsible Officer of the Indenture Trustee knows to be so owned shall be so disregarded. Notes so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Indenture Trustee the pledgee's right so to act with respect to such Notes and that the pledgee is not the Issuer, the Co-Issuer, any other obligor upon the Notes, the Seller or any Affiliate of any of the foregoing Persons.

Outstanding Amount:  The aggregate of the Class Principal Amounts of all Notes Outstanding at the date of determination.

Person:  Any individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Predecessor Note:  With respect to any particular Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such particular Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 2.04 in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as the mutilated, lost, destroyed or stolen Note.

Priority Class:  The Class A Notes for so long as the Class A Notes are outstanding; thereafter, the Class B Notes for so long as the Class B Notes are outstanding.

Prospective Owner:  As defined in Section 2.03(c) of this Agreement.

QIB:  A Qualified Institutional Buyer.

QP:  A Qualified Purchaser.

Qualified Institutional Buyer:  The meaning given to such term under Rule 144A.

Qualified Purchaser:  The meaning given to such term in Section 2(a)(51) under the Investment Company Act.

Rating:  The rating initially assigned to each Class of Notes by the Rating Agency, as evidenced by a letter from the Rating Agency.

Rating Agency Condition:  With respect to any action to which the Rating Agency Condition applies, the Rating Agency shall have been given 10 days (or such shorter period acceptable to the Rating Agency) prior notice of any action to which the Rating Agency Condition applies and the Rating Agency shall have notified the Seller, the Issuer, the Indenture Trustee and the Administrator in writing that such proposed action will not result in a reduction or withdrawal of the then current rating of either Class of Notes.

Register of Members:  The register to be maintained by the Issuer in the Cayman Islands and otherwise in accordance with Section 40 of the Companies Law (2004 Revision) of the Cayman Islands.

Registered Holder:  The Person in whose name a Note is registered on the Note Register on the applicable Record Date.

Registered Notes:  Those Notes which are in registered form. Each of the Notes will be Registered Notes.

Regulation S:  Regulation S promulgated under the Securities Act or any successor provision thereto, in each case as the same may be amended from time to time; and all references to any rule, section or subsection of, or definition or term contained in, Regulation S means such rule, section, subsection, definition or term, as the case may be, or any successor thereto, in each case as the same may be amended from time to time.

Regulation S Global Security:  The meaning specified in Section 2.01(b).

Reminder Notice:  A notice to Note Owners of the Global Securities substantially in the form of Exhibit D hereto that states that: (1) each Note Owner is required to be a QIB that is also a QP that can make the representations set forth in Section 2.03(d) of this Indenture; (2) the Notes can only be transferred to another QIB that is also a QP that can make the same representations; and (3) the Issuer has the right to force any Note Owner that does not meet the requirements set forth in either clause (1) or (2) above to sell its Notes.

Required Rating:  With respect to the Class A Notes, "BBB-" by S&P. With respect to the Class B Notes, "BB" by S&P.

Restricted Global Security:  The meaning specified in Section 2.01(b).

Rule 144A:  Rule 144A under the Securities Act.

Rule 144A Book-Entry Note:  Any Book-Entry Note offered, resold, pledged or otherwise transferred to a person pursuant to Rule 144A and held through DTC.

Rule 144A Information:  The information required to be delivered under Rule 144A(d)(4) under the Securities Act.

Sale and Collection Agreement:  The Sale and Collection Agreement dated as of October 20, 2006, among the Issuer, the Seller, the Indenture Trustee and the Administrator, as such agreement may be amended or supplemented from time to time.

Shareholder:  A holder of Preference Shares as reflected in the Register of Members of the Issuer.

State:  Any one of the 50 States of the United States of America or the District of Columbia.

U.S. Person:  A citizen or resident of the United States, a corporation, partnership or other entity created or organized in or under the laws of the United States or any State (other than a partnership that is not treated as a U.S. Person under any applicable Treasury regulations), or an estate whose income is subject to United States federal income tax regardless of its source, or a trust if a court within the United States is able to exercise primary supervision over the administration of the trust and one or more U.S. Persons have the authority to control all substantial decisions of the trust.  Notwithstanding the preceding sentence, to the extent provided in Treasury regulations, certain trusts in existence on August 20, 1996 and treated as U.S. Persons prior to such date, that elect to continue to be treated as U.S. Persons, also will be U.S. Persons.

Section 1.02.  Rules of Construction.  Unless the context otherwise requires:

(i)    a term has the meaning assigned to it;

(ii)    an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted accounting principles as in effect from time to time;

(iii)    "or" is not exclusive;

(iv)    "including" means including without limitation;

(v)    words in the singular include the plural and words in the plural include the singular;

(vi)    any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delivered in connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented (as provided in such agreements) and includes (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; references to a Person are also to its permitted successors and assigns;

(vii)    terms defined in the UCC and not otherwise defined herein shall have the meaning assigned to them in the UCC;

(viii)    references to "U.S. dollars", "dollars", or the sign "$" shall be construed as references to United States dollars which are freely transferable by residents and non-residents of the United States of America and convertible by such persons into any other

freely convertible currency unless such transferability or convertibility is restricted by any law or regulation of general application in which event references to "U.S. dollars", "dollars", or the sign "$" shall be construed as references to such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts in the United States of America, and "cents" shall be construed accordingly; and

(ix)    unless otherwise indicated, references within any document to appendices, articles, schedules, sections, paragraphs, clauses or exhibits are references to appendices, articles, schedules, sections, paragraphs, clauses or exhibits in or to such document.

ARTICLE II
THE NOTES

Section 2.01.  Form.

(a)    The Notes shall be designated as the SASCO Net Interest Margin Notes, Series 2006-NC1, Class A and Class B.  The Notes, together with the Indenture Trustee's certificate of authentication, shall be in substantially the forms set forth in Exhibits A-1 and A-2 hereto, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by the officers executing such Notes, as evidenced by their execution thereof.  Any portion of the text of any Note may be set forth on the reverse thereof, with an appropriate reference thereto on the face of the Note.

The Definitive Notes and the global certificates ("Global Securities") representing the Book-Entry Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods (with or without steel engraved borders), all as determined by the officers executing such Notes, as evidenced by their execution of such Notes.

The Notes shall be issued as registered Notes, and except as otherwise provided by supplement to this Indenture, in denominations of at least $250,000 principal amount and any larger denomination that is an integral multiple of $1 approved by the Issuer, such approval to be evidenced by the execution thereof; *provided, however*, that one Note of any Class may be issued in any amount in excess of the minimum denomination.  If the Notes are issuable in whole or in part in Book-Entry form, any such Note may provide that it shall represent the aggregate amount of Outstanding Notes from time to time endorsed thereon and may provide that the aggregate amount of Outstanding Notes represented thereby may from time to time be reduced to reflect exchanges or increased to reflect the issuance of an additional principal amount of Notes.  Any endorsement of a Note in Book-Entry form to reflect the amount, or any increase or decrease in the amount, of Outstanding Notes represented thereby shall be made in such manner and by such Person or Persons, as shall be specified therein or in the Issuer Order of authentication delivered to the Indenture Trustee.

The terms of the Notes set forth in Exhibits A-1 and A-2 hereto are part of the terms of this Indenture.

(b)     The Notes offered and sold in reliance on the exemption from registration under Rule 144A shall be issued initially in the form of one or more permanent global Notes in definitive, fully registered form without interest coupons with the applicable legends set forth in Exhibit A-1 hereto added to the forms of such Notes (each, a "Restricted Global Security"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Indenture Trustee as custodian for the Depository and registered in the name of a nominee of the Depository, duly executed by the Issuer and Co-Issuer, as applicable, and authenticated by the Indenture Trustee as hereinafter provided.  The aggregate principal amounts of the Restricted Global Securities may from time to time be increased or decreased by adjustments made on the records of the Indenture Trustee or the Depository or its nominee, as the case may be, as hereinafter provided.

The Notes sold in offshore transactions in reliance on Regulation S shall be issued initially in the form of one or more permanent global Notes in definitive, fully registered form without interest coupons with the applicable legends set forth in Exhibit A-2 hereto added to the forms of such Notes (each, a "Regulation S Global Security"), which shall be deposited on behalf of the subscribers for such Notes represented thereby with the Indenture Trustee as custodian for the Depository, duly executed by the Issuer and Co-Issuer, as applicable, and authenticated by the Indenture Trustee as hereinafter provided.  The aggregate principal amounts of the Regulation S Global Securities may from time to time be increased or decreased by adjustments made on the records of the Indenture Trustee or the Depository or its nominee, as the case may be, as hereinafter provided.

Section 2.02.  Execution, Authentication, Delivery and Dating.  The Notes shall be executed on behalf of the Issuer by an Authorized Officer of the Issuer.  The Class A Notes shall also be executed on behalf of the Co-Issuer by an Authorized Officer of the Co-Issuer.  The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issuer or the Co-Issuer shall bind the Issuer and Co-Issuer, as applicable, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of such Notes.

Subject to the conditions set forth in Section 2.08, the Indenture Trustee shall upon Issuer Order authenticate and deliver Class A Notes for original issuance in the aggregate principal amount of U.S. $28,000,000 and shall authenticate and deliver Class B Notes for original issuance in the aggregate principal amount of U.S. $8,000,000.

The Notes that are authenticated and delivered by the Indenture Trustee to or upon the order of the Issuer on the Closing Date shall be dated the Closing Date.  All other Notes that are authenticated after the Closing Date as a result of transfer or exchange or for any other purpose under this Indenture shall be dated the date of their authentication.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless there appears on such Note a certificate of authentication (substantially in the form provided for in the forms of Notes at Exhibits A-1 and A-2 hereto) executed by the

Indenture Trustee by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

Section 2.03.  Registration; Registration of Transfer and Exchange.

(a)    The Issuer shall cause to be kept a register (the "Note Register") in which, subject to such reasonable regulations as it may prescribe, the Issuer shall provide for the registration of Notes and the registration of transfers of Notes.  The Indenture Trustee initially shall be the "Note Registrar" for the purpose of registering Notes and transfers of Notes as herein provided. Upon any resignation of any Note Registrar, the Issuer shall promptly appoint a successor or, if it elects not to make such an appointment, assume the duties of Note Registrar.

If a Person other than the Indenture Trustee is appointed by the Issuer as Note Registrar, the Issuer will give the Indenture Trustee prompt written notice of the appointment of such Note Registrar and of the location, and any change in the location, of the Note Register, and the Indenture Trustee shall have the right to inspect the Note Register at all reasonable times and to obtain copies thereof, and the Indenture Trustee shall have the right to rely upon a certificate executed on behalf of the Note Registrar by an Executive Officer thereof as to the names and addresses of the Holders of the Notes and the principal amounts and number of such Notes.

Upon surrender for registration of transfer of any Note at the office or agency of the Issuer to be maintained as provided in Section 3.02, the Issuer and Co-Issuer, as applicable, shall execute, and the Indenture Trustee shall authenticate and the Noteholder shall be entitled to obtain from the Indenture Trustee, in the name of the designated transferee or transferees, one or more new Notes in any authorized denominations, of a like aggregate principal amount.  At the option of the Holder, Notes may be exchanged for other Notes in any authorized denominations, of a like aggregate principal amount, upon surrender of such Notes to be exchanged at such office or agency.  Whenever any Notes are so surrendered for exchange, the Issuer and Co-Issuer, as applicable, shall execute, and the Indenture Trustee shall authenticate and the Noteholder shall be entitled to obtain from the Indenture Trustee, the Notes which the Noteholder making the exchange is entitled to receive.

All Notes issued upon any registration of transfer or exchange of Notes shall be the valid obligations of the Issuer and Co-Issuer, as applicable, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Notes surrendered upon such registration of transfer or exchange.

Any Note presented or surrendered for registration of transfer or exchange shall be duly endorsed by, or be accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly executed by, the Holder thereof or such Holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible guarantor institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Registrar in addition to, or in substitution for, STAMP, all in accordance with the Exchange Act.

No service charge shall be made to a Noteholder for any registration of transfer or exchange of Notes, but the Issuer may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes, other than exchanges pursuant to Section 2.04 or Section 9.05 not involving any transfer.

The preceding provisions of this Section 2.03 notwithstanding, the Issuer and Co-Issuer, as applicable, shall not be required to make and the Note Registrar need not register transfers or exchanges of Notes for a period of 15 days preceding the Payment Date for any payment with respect to such Note.

(b)     Notwithstanding any of the foregoing provisions of this Section 2.03, no Note may be offered, sold, delivered or transferred (including, without limitation, by pledge or hypothecation) except (i) in connection with the initial sale of the Notes to Lehman Brothers Inc. pursuant to Section 4(2) of the Securities Act and (ii) thereafter, (A) under Rule 144A, to Qualified Institutional Buyers that are also Qualified Purchasers purchasing for their own account or for the account of one or more Qualified Institutional Buyers that are also Qualified Purchasers to whom notice has been given that the transfer is being made in reliance of Rule 144A for investment purposes and not with a view to, or for offer or sale in connection with, any distribution in violation of the Securities Act or (B) to non-U.S. persons in offshore transactions in reliance on Regulation S. Each Note shall bear a restrictive legend to the foregoing effect substantially in the form of the legends on the face of the forms of Notes at Exhibits A-1 and A-2 hereto.

(c)     Each prospective purchaser and any subsequent transferee of a Book-Entry Note other than the Depositor or an Affiliate thereof (each, a "Prospective Owner") shall be deemed to have represented and warranted, and each Prospective Owner of a Definitive Note and each Prospective Owner of a Book-Entry Note upon initial issuance shall represent and warrant, in writing, to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)     Such Person is duly authorized to purchase the Notes and its purchase of investments having the characteristics of the Notes is authorized under, and not directly or indirectly in contravention of, any law, charter, trust instrument or other operative document, investment guidelines or list of permissible or impermissible investments that is applicable to the investor; and

(ii)     Such Person understands that each Holder of a Note, by virtue of its acceptance thereof, assents to the terms, provisions and conditions of this Indenture.

(d)     Each Prospective Owner of a Book-Entry Note, other than Notes sold in offshore transactions in reliance on Regulation S, shall be deemed to have represented and warranted, and each Prospective Owner of a Definitive Note and each Prospective Owner of a Book-Entry Note upon initial issuance shall represent and warrant in writing, in substantially the form set forth in Exhibit B hereto, to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)    Such Person is a Qualified Institutional Buyer that is also a Qualified Purchaser and is aware that the seller of such Note may be relying on the exemption from the registration requirements of the Securities Act provided by Rule 144A and is acquiring such Note for its own account or for the account of one or more Qualified Institutional Buyers that are also Qualified Purchasers for whom it is authorized to act;

(ii)    Such person understands that such Notes have not been registered under the Securities Act, and that, if in the future it decides to offer, resell, pledge or otherwise transfer such Notes, such Notes may be offered, resold, pledged or otherwise transferred only (A) to a person that is a Qualified Institutional Buyer that is also a Qualified Purchaser that is purchasing such Notes for its own account or for the account of a Qualified Institutional Buyer that is also a Qualified Purchaser to whom notice is given that the transfer is being made in reliance on Rule 144A, for investment purposes and not with a view to, or for offer or sale in connection with, any distribution in violation of the Securities Act, in each case in compliance with the requirements of this Indenture or (B) to a non-U.S. person in an offshore transaction in reliance on Regulation S; and

(iii)    (A) With respect to any Prospective Owner of a Class A Note, such Person either (i) is not acquiring the Class A Note for, or on behalf of, an employee benefit plan or other retirement arrangement subject to Section 406 of ERISA or Section 4975 of the Code or any substantially similar applicable law ("Similar Law"), or any entity deemed to hold the plan assets of the foregoing (a "Benefit Plan"), or (ii) is acquiring the Class A Note for, or on behalf of, a Benefit Plan and its acquisition and holding of such Class A Note (x) will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code which is not covered by Prohibited Transaction Class Exemption ("PTCE") 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable statutory or administrative exemption and (y) will not cause a non-exempt violation of any Similar Law; and

(B) With respect to any Prospective Owner of a Class B Note, such Person is not acquiring the Class B Note for or on behalf of, a Benefit Plan.

(e)    Each Prospective Owner of a Note sold in an offshore transaction in reliance on Regulation S shall be deemed to have represented and warranted to the Indenture Trustee and the Note Registrar and any of their respective successors that:

(i)    Such Person is not a U.S. person within the meaning of Regulation S and was, at the time the buy order was originated, outside the United States;

(ii)    Such Person understands that such Notes have not been registered under the Securities Act, and that (x) until the expiration of the 40-day distribution compliance period (within the meaning of Regulation S), no offer, sale, pledge or other transfer of such Notes or any interest therein shall be made in the United States or to or for the account or benefit of a U.S. person (each as defined in Regulation S), (y) if in the future it decides to offer, resell, pledge or otherwise transfer such Notes, such Notes may be offered, resold, pledged or otherwise transferred only (A) to a person that is a Qualified Institutional Buyer that is also a Qualified Purchaser that is purchasing such Notes for its

own account or for the account of a Qualified Institutional Buyer that is also a Qualified Purchaser to which notice is given that the transfer is being made in reliance on Rule 144A, or (B) in an offshore transaction (as defined in Regulation S) in compliance with the provisions of Regulation S, in each case in compliance with the requirements of this Indenture; and it will notify such transferee of the transfer restrictions specified in this Section 2.03; and

(iii)    (A) With respect to any Prospective Owner of a Class A Note, such Person either (i) is not acquiring the Class A Note for, or on behalf of a Benefit Plan, or (ii) is acquiring the Class A Note for, or on behalf of, a Benefit Plan and its acquisition and holding of such Class A Note (x) will not result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of the Code which is not covered by PTCE 84-14, PTCE 90-1, PTCE 91-38, PTCE 95-60, PTCE 96-23 or some other applicable statutory or administrative exemption and (y) will not cause a non-exempt violation of any Similar Law; and

(B)  With respect to any Prospective Owner of a Class B Note, such Person is not acquiring the Class B Note for or on behalf of, a Benefit Plan.

In the event that a transfer of a Definitive Note is to be made in reliance upon an exemption from the Securities Act and state securities laws, in order to assure compliance with the Securities Act and such laws, the prospective transferee shall certify to the Indenture Trustee in writing the facts surrounding the transfer in substantially the forms set forth in Exhibit B, Exhibit C-1 or Exhibit C-2 hereto, as applicable.

If requested in writing, the Indenture Trustee on behalf of the Depositor shall provide to any Holder of a Note and any prospective transferee designated by any such Holder, information regarding the Notes and the Underlying Securities and such other information as, in the Depositor's determination, shall be necessary to satisfy the condition to eligibility set forth in Rule 144A(d)(4) for transfer of any such Note without registration thereof under the Securities Act pursuant to the registration exemption provided by Rule 144A upon receipt from the Depositor, if not otherwise available to the Indenture Trustee.  The Rule 144A Information will include copies of any or all of the following items requested by the prospective transferees:

(i)    the Offering Memorandum and any amendments and supplements thereto;

(ii)    this Indenture and the Sale and Collection Agreement and any amendments thereto;

(iii)    copies of each monthly statement or report sent to Noteholders pursuant to this Indenture during the 12 months immediately prior to such request; and

(iv)    such other information as is reasonably available to the Indenture Trustee and is directly related to the payments on the Notes.

Each Holder of a Note desiring to effect such a transfer shall, and does hereby agree to, indemnify the Issuer, the Co-Issuer, the Indenture Trustee and the Depositor against any liability

that may result if the transfer is not so exempt or is not made in accordance with federal and state securities laws.

The Indenture Trustee shall cause each Note to contain a legend substantially similar to the applicable legend provided in Exhibits A-1 and A-2 hereto stating that transfer of such Notes is subject to certain restrictions as set forth herein.

(f)    Any purported transfer of a Note (or any interest therein) not in accordance with this Section 2.03 shall be null and void and shall not be given effect for any purpose hereunder and will not operate to transfer any rights to such Person, notwithstanding any instructions to the contrary to the Issuer, the Co-Issuer, the Indenture Trustee or any intermediary; and the Indenture Trustee shall not make any distributions on such Note for as long as such Person is the Holder of such Note and the Indenture Trustee shall have the right to compel such Person to transfer such Note to a Person who does meet the requirements of this Section 2.03.

(g)    Notwithstanding any provision to the contrary herein, so long as a Global Security representing the Notes remains outstanding and is held by or on behalf of the Depository, transfers of a Global Security representing the Notes, in whole or in part, shall only be made in accordance with this Section 2.03.

(i)    Subject to clauses (ii) and (iii) of this Section 2.03(g), transfers of a Global Security representing the Notes shall be limited to transfers of such Global Security in whole, but not in part, to nominees of the Depository or to a successor of the Depository or such successor's nominee.

(ii)    Restricted Global Security to Regulation S Global Security. If a holder of a beneficial interest in a Restricted Global Security deposited with or on behalf of the Depository wishes at any time to exchange its interest in such Restricted Global Security for an interest in a Regulation S Global Security, or to transfer its interest in such Restricted Global Security to a Person who wishes to take delivery thereof in the form of an interest in a Regulation S Global Security, such holder, provided such holder is not a U.S. Person, may, subject to the rules and procedures of the Depository, exchange or cause the exchange of such interest for an equivalent beneficial interest in the Regulation S Global Security. Upon receipt by the Indenture Trustee, as Note Registrar, of (A) instructions from the Depository directing the Indenture Trustee, as Note Registrar, to cause to be credited a beneficial interest in a Regulation S Global Security in an amount equal to the beneficial interest in such Restricted Global Security to be exchanged but not less than the minimum denomination applicable to such holder's Notes held through a Regulation S Global Security, (B) a written order given in accordance with the Depository's procedures containing information regarding the participant account of the Depository and, in the case of a transfer pursuant to and in accordance with Regulation S, the Euroclear or Clearstream account to be credited with such increase and (C) a certificate in the form of Exhibit C-1 hereto given by the holder of such beneficial interest stating that the exchange or transfer of such interest has been made in compliance with the transfer restrictions applicable to the Global Securities, including that the holder is not a U.S. Person, and pursuant to and in accordance with Regulation S, the Indenture Trustee, as Note Registrar, shall reduce the principal amount of the Restricted Global

Security and increase the principal amount of the Regulation S Global Security by the aggregate principal amount of the beneficial interest in the Restricted Global Security to be exchanged, and shall instruct Euroclear or Clearstream, as applicable, concurrently with such reduction, to credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Regulation S Global Security equal to the reduction in the principal amount of the Restricted Global Security.

(iii)    <u>Regulation S Global Security to Restricted Global Security</u>.  If a holder of a beneficial interest in a Regulation S Global Security deposited with or on behalf of the Depository wishes at any time to transfer its interest in such Regulation S Global Security to a Person who wishes to take delivery thereof in the form of an interest in a Restricted Global Security, such holder may, subject to the rules and procedures the Depository, exchange or cause the exchange of such interest for an equivalent beneficial interest in a Restricted Global Security. Upon receipt by the Indenture Trustee, as Note Registrar, of (A) instructions from the Depository directing the Indenture Trustee, as Note Registrar, to cause to be credited a beneficial interest in a Restricted Global Security in an amount equal to the beneficial interest in such Regulation S Global Security to be exchanged but not less than the minimum denomination applicable to such Holder's Notes held through a Restricted Global Security, to be exchanged, such instructions to contain information regarding the participant account with the Depository to be credited with such increase, and (B) a certificate in the form of Exhibit C-2 hereto given by the holder of such beneficial interest and stating, among other things, that the Person acquiring such interest in a Restricted Global Security is a Qualified Institutional Buyer that is also a Qualified Purchaser and is obtaining such beneficial interest in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any State of the United States or any other jurisdiction, then the Indenture Trustee, as Note Registrar, will reduce the principal amount of the Regulation S Global Security and increase the principal amount of the Restricted Global Security by the aggregate principal amount of the beneficial interest in the Regulation S Global Security to be transferred and the Indenture Trustee, as Note Registrar, shall instruct the Depository, concurrently with such reduction, to credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Restricted Global Security equal to the reduction in the principal amount of the Regulation S Global Security.

(iv)    <u>Other Exchanges</u>.  In the event that a Global Security is exchanged for Notes in definitive registered form without interest coupons, pursuant to Section 2.09 hereof, such Notes may be exchanged for one another only in accordance with such procedures as are substantially consistent with the provisions above (including certification requirements intended to insure that such transfers (A) comply with Rule 144A and are made to Qualified Institutional Buyers that are Qualified Purchasers or (B) are to non-U.S. Persons or otherwise comply with Regulation S under the Securities Act, as the case may be) and as may be from time to time adopted by the Issuer and the Indenture Trustee.

(v)    <u>Restrictions on U.S. Transfers</u>.  Transfers of interests in the Regulation S Global Security to U.S. persons (as defined in Regulation S) shall be limited to transfers made pursuant to the provisions of Section 2.03(g)(iii).

202095 SASCO NIM 2006-NCI
Indenture                                        15

(h)      Neither the Indenture Trustee nor the Note Registrar will have the responsibility to monitor transfers of the Notes while they are in book-entry form or will have any liability for transfers of Book-Entry Notes in violation of any of the transfer restrictions described in this Section 2.03.

Section 2.04.  Mutilated, Destroyed, Lost or Stolen Notes.  If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it to hold the Issuer, the Co-Issuer (as applicable) and the Indenture Trustee harmless, then, in the absence of notice to the Issuer, the Co-Issuer (as applicable), the Note Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, upon the Issuer's request the Indenture Trustee shall execute, authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note; *provided, however*, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof.  If, after the delivery of such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the Issuer, the Co-Issuer (as applicable) and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer, the Co-Issuer (as applicable) or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 2.04, the Issuer or the Indenture Trustee may require the payment by the Holder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section 2.04 in replacement of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer and the Co-Issuer, as applicable, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 2.04 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 2.05.  Persons Deemed Owners.  Prior to due presentment for registration of transfer of any Note, the Issuer, the Co-Issuer, the Indenture Trustee and any agent of the Issuer, the Co-Issuer or the Indenture Trustee may treat the Person in whose name any Note is registered

(as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the Issuer, the Co-Issuer, the Indenture Trustee or any agent of the Issuer, the Co-Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 2.06.   Payment of Principal and Interest.

(a)   The Notes shall accrue interest at the applicable Interest Rate as set forth in the Sale and Collection Agreement, and such interest shall be payable on each Payment Date, subject to Section 3.01 hereof.   Interest on the Notes shall be computed on the basis of a 360-day year consisting of twelve 30-day months.  All interest payments on the Notes shall be made *pro rata* to the Noteholders of such Class entitled thereto.  Any installment of interest or principal payable on any Note shall be paid on the applicable Payment Date to the Person in whose name such Note is registered on the related Record Date by wire transfer in immediately available funds to an account specified in the request and at the expense of such Noteholder, except that, unless Definitive Notes have been issued pursuant to Section 2.11, with respect to Notes registered on the Record Date in the name of the nominee of the Clearing Agency (initially, such nominee to be Cede & Co.), payment will be made by wire transfer in immediately available funds to the account designated by such nominee, except for the final installment of principal payable with respect to such Note on the Maturity Date, which shall be payable as provided below.  The funds represented by any such wires returned undelivered shall be held in accordance with Section 3.03.

(b)   The entire unpaid principal amount of the Notes together with any unpaid interest in respect thereof shall be due and payable, if not previously paid, on the earlier of (i) the Maturity Date or (ii) the date on which an Event of Default shall have occurred and be continuing, if the Indenture Trustee or the Noteholders have declared the Notes to be immediately due and payable in the manner provided in Section 5.02.  All principal payments on the Notes shall be made *pro rata* to the Noteholders entitled thereto.  The Person in whose name a Note is registered at the close of business on the Record Date preceding the Payment Date on which the Issuer expects that the final installment of principal of and interest, if any, on such Note will be paid shall be notified by the Indenture Trustee, on behalf of the Issuer, of such final payment.  Such notice shall be mailed or transmitted by facsimile prior to such final Payment Date and shall specify that such final installment will be payable only upon presentation and surrender of such Note and shall specify the place where such Note may be presented and surrendered for payment of such installment.

Section 2.07.   Cancellation.  All Notes surrendered for payment, registration of transfer or exchange shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture Trustee and shall be promptly canceled by the Indenture Trustee.  The Issuer shall deliver to the Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly canceled by the Indenture Trustee.  No Notes shall be authenticated in lieu of or in exchange for any Notes canceled as provided in this Section, except as expressly permitted by this Indenture.  All canceled Notes may be held or disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the

time unless the Issuer shall direct by an Issuer Order that they be destroyed or returned to it; provided, that such Issuer Order is timely and the Notes have not been previously disposed of by the Indenture Trustee.

Section 2.08.  Authentication of Notes.

(a)    The Notes shall be authenticated by the Indenture Trustee, upon an Issuer Request and upon receipt by the Indenture Trustee of the following:

(i)    An Issuer Order authorizing the execution and authentication of such Notes, which Issuer Order the Co-Issuer hereby authorizes the Issuer to deliver on its behalf with respect to the Class A Notes;

(ii)    All of the items of Collateral that are to be delivered to the Indenture Trustee or its designee;

(iii)    An executed counterpart of this Indenture, the Administration Agreement, the Securities Purchase Agreement and the Sale and Collection Agreement;

(iv)    Except to the extent provided in subsection (b) below, Opinions of Counsel addressed to the Indenture Trustee to the effect that:

(A) the Issuer has been duly formed and is validly existing as a company under the laws of the Cayman Islands, and has power, authority and legal right to execute and deliver this Indenture and the other Operative Agreements to which it is a party;

(B) the issuance of the Notes has been duly and validly authorized by the Issuer;

(C) the Notes, when executed and authenticated in accordance with the provisions of this Indenture and delivered against payment therefor, will be the legal, valid and binding obligations of the Issuer pursuant to the terms of this Indenture and will be entitled to the benefits of this Indenture, and will be enforceable in accordance with their terms, subject to bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent or preferential conveyance and other similar laws of general application affecting the rights of creditors generally and to general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(D) all conditions precedent provided for in this Indenture relating to the authentication of the Notes have been complied with;

(E) assuming due authorization, execution and delivery thereof by the Indenture Trustee, this Indenture has been duly executed and delivered by the Issuer and constitutes the legal, valid and binding obligation of the Issuer, enforceable against the Issuer in accordance with its terms, subject to bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent or preferential

conveyance and other similar laws of general application affecting the rights of creditors generally and to general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(F) the Issuer is not required to be registered under the Investment Company Act of 1940, as amended;

(G) the provisions of this Indenture are sufficient to create a valid security interest in favor of the Indenture Trustee in the Collateral; and

(H) the delivery by the Issuer to the Indenture Trustee in the State of Wisconsin of the Underlying Securities will perfect the security interest in favor of the Indenture Trustee under the UCC as in effect in such jurisdiction in all right, title and interest of the Issuer in such Underlying Securities and, assuming the Indenture Trustee acquires its interest in the Underlying Securities without knowledge that the same are subject to a security interest (other than the security interest created by this Indenture), the Indenture Trustee will acquire such security interest in the Underlying Securities free and clear of any prior lien of a kind which may be perfected under Article 9 of the UCC as in effect in such jurisdiction.

(v)     An Officer's Certificate of the Depositor on behalf of the Issuer and the Co-Issuer complying with the requirements of Section 11.01 and stating that:

(A)     neither the Issuer nor the Co-Issuer is in Default under this Indenture and the issuance of the Notes will not result in any breach of any of the terms, conditions or provisions of, or constitute a default under, any indenture, mortgage, deed of trust or other agreement or instrument to which the Issuer or the Co-Issuer, as applicable, is a party or by which it is bound, or any order of any court or administrative agency entered in any proceeding to which the Issuer is a party or by which it may be bound or to which it may be subject;

(B)     the Issuer (i) has good and marketable title to the Underlying Securities being Granted to the Indenture Trustee hereunder and has acquired its ownership in such Collateral in good faith without notice of any adverse claim, (ii) has not assigned, pledged or otherwise encumbered any interest or participation in the Underlying Securities and has acquired its ownership in such Collateral in good faith without notice of any adverse claim (or, if any such interest or participation has been assigned, it has been released) other than interests Granted pursuant to this Indenture and (iii) has the right to Grant a security interest in and pledge all of its right, title and interest in the Underlying Securities to the Indenture Trustee;

(C)     this Indenture creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code) in the Underlying Securities in favor of the Indenture Trustee on behalf of the Noteholders, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Issuer;

(D)     the Underlying Securities constitute "certificated securities" and the Issuer's rights under the Sale and Collection Agreement and the Administration Agreement constitute "general intangibles" as such terms are defined in the applicable Uniform Commercial Code;

(E)     the Issuer has Granted to the Indenture Trustee all of its right, title, and interest in the Underlying Securities and has delivered or caused the Underlying Securities to be delivered to the Indenture Trustee and registered in the name of the Indenture Trustee;

(F)     other than the security interest Granted to the Indenture Trustee in the Collateral pursuant to the provisions to this Indenture, neither the Issuer nor the Co-Issuer have pledged, assigned, sold, granted a security interest in, or otherwise conveyed any interest in the Collateral. Neither Issuer nor the Co-Issuer is aware of any judgment or tax lien filings against either such entity which would constitute a lien against the Collateral and has not authorized the filing of and is not aware of any financing statements against the Issuer or the Co-Issuer that include a description of the Collateral other than any financing statement (i) relating to the security interest granted to the Indenture Trustee hereunder or (ii) that has been terminated;

(G)     any form UCC-1 filed or to be filed against the Issuer for the benefit of the Indenture Trustee and the Noteholders with respect to the Collateral shall be filed no later than ten days after the Closing Date and shall contain the statement that a purchaser of a security interest in any Collateral described in such financing statement will violate the rights of the Indenture Trustee, as secured party, in such Collateral;

(H)     none of the security certificates that constitute or evidence the Collateral have any marks or notations indicating that they have been pledged, assigned or otherwise conveyed to any Person other than the Indenture Trustee;

(I)     attached thereto is a true and correct copy of a letter signed by the Rating Agency to the effect that the Notes have been assigned the Required Rating; and

(J)     all conditions precedent provided for in this Indenture relating to the authentication and delivery of the Notes have been complied with.

(b)     The representations and warranties made pursuant to the foregoing Officer's Certificate shall survive the discharge of this Indenture and may not be waived by any party hereto. The Opinions of Counsel to be delivered pursuant to subsection (a)(iv) above may differ from the Opinions of Counsel described in such subsection so long as such Opinions of Counsel so delivered are acceptable to the Rating Agency and reasonably acceptable to the Indenture Trustee, which shall be conclusively evidenced by the Indenture Trustee's authentication and delivery of the Notes and the Rating Agency's issuance of its letter pursuant to subsection

(a)(v)(I) above, respectively, and such acceptable opinions shall be deemed to be the Opinions of Counsel required pursuant to subsection (a)(iv) above.

Section 2.09. <u>Book-Entry Notes</u>. Notes initially acquired by Qualified Institutional Buyers that are also Qualified Purchasers or by non-U.S. persons in offshore transactions in reliance on Regulation S, upon original issuance, will be issued in the form of typewritten Notes or Global Securities representing the Book-Entry Notes, to be delivered to DTC, the initial Clearing Agency, by, or on behalf of, the Issuer and the Co-Issuer, as applicable. The Book-Entry Notes shall be registered initially on the Note Register in the name of Cede & Co., the nominee of DTC, and no owner thereof will receive a Definitive Note representing such Note Owner's interest in such Note, except as provided in Section 2.11. Unless and until definitive, fully registered Notes (the "Definitive Notes") have been issued to such Note Owners pursuant to Section 2.11:

(i)    the provisions of this Section shall be in full force and effect;

(ii)    the Note Registrar and the Indenture Trustee shall be entitled to deal with the Clearing Agency for all purposes of this Indenture (including the payment of principal of and any interest on the Notes and the giving of instructions or directions hereunder) as the sole Holder of the Notes, and shall have no obligation to the Note Owners;

(iii)    to the extent that the provisions of this Section conflict with any other provisions of this Indenture, the provisions of this Section shall control;

(iv)    the rights of Note Owners shall be exercised only through the Clearing Agency and shall be limited to those established by law and agreements between such Note Owners and the Clearing Agency and/or the Clearing Agency Participants pursuant to the Note Depository Agreement. Unless and until Definitive Notes are issued pursuant to Section 2.11, the initial Clearing Agency will make book-entry transfers among the Clearing Agency Participants and receive and transmit payments of principal of and any interest on the Notes to such Clearing Agency Participants; and

(v)    whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders of Notes evidencing a specified percentage of the Outstanding Amount of the Notes, the Clearing Agency shall be deemed to represent such percentage only to the extent that it has received instructions to such effect from Note Owners and/or Clearing Agency Participants owning or representing, respectively, such required percentage of the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

Section 2.10. <u>Notices to Clearing Agency</u>. Whenever a notice or other communication to the Noteholders is required under this Indenture, unless and until Definitive Notes shall have been issued to such Note Owners pursuant to Section 2.11, the Indenture Trustee shall give all such notices and communications specified herein to be given to Holders of the Notes to the Clearing Agency, and shall have no obligation to such Note Owners.

Section 2.11. <u>Definitive Notes</u>. If (i) the Issuer advises the Indenture Trustee in writing that the Clearing Agency is no longer willing or able to properly discharge its responsibilities with respect to the Book-Entry Notes and the Indenture Trustee or the Issuer is unable to locate a qualified successor or (ii) after the occurrence of an Event of Default, Owners of the Book-Entry Notes representing beneficial interests aggregating at least a majority of the Outstanding Amount of Book-Entry Notes advise the Clearing Agency in writing that the continuation of a book-entry system through the Clearing Agency is no longer in the best interests of such Note Owners, then the Clearing Agency shall notify all Note Owners and the Indenture Trustee of the occurrence of such event and of the availability of Definitive Notes to Note Owners requesting the same. Upon surrender to the Indenture Trustee of the typewritten Notes representing the Book-Entry Notes by the Clearing Agency, accompanied by registration instructions, the Issuer and the Co-Issuer, as applicable, shall execute and the Indenture Trustee shall authenticate the Definitive Notes in accordance with the instructions of the Clearing Agency. None of the Issuer, the Co-Issuer (as applicable) the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected in relying on, such instructions. Upon the issuance of Definitive Notes, the Indenture Trustee shall recognize the Holders of the Definitive Notes as Noteholders.

Section 2.12. <u>Tax</u>. The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes will qualify as indebtedness of the Issuer secured by the Collateral. The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of a Note (and each Note Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes for federal, state and local income, single business and franchise tax purposes as indebtedness of the Issuer.

Section 2.13. <u>Release of Collateral</u>. Subject to the provisions of Sections 8.03 and 11.01 and the terms of the Operative Agreements, the Indenture Trustee shall release property from the lien of this Indenture only upon receipt of an Issuer Request accompanied by (i) an Officer's Certificate to the effect that such release is a permissible release of Collateral under the Sale and Collection Agreement and (ii) an Opinion of Counsel to the same effect, provided that no such Officer's Certificate or Opinion of Counsel shall be necessary in respect of property released from the lien of this Indenture in accordance with the provisions hereof if such property consists solely of cash.

Section 2.14. <u>Section 3(c)(7) Procedures</u>. (a) Section 3(c)(7) Reminder Notices. The Indenture Trustee on behalf of the Issuer shall send, or shall cause to be sent, to the Note Owners of the Global Securities a Reminder Notice on an annual basis on each anniversary of the Closing Date by sending or causing to be sent a copy of each Reminder Notice to DTC, with a request that DTC forward each such notice to the relevant DTC participants for further delivery to Note Owners of the Global Securities.

(b)    <u>DTC Actions</u>. The Issuer shall direct or cause its agent to direct DTC to take the following steps in connection with the Global Securities:

(i)        include the "3c7" marker in the DTC 20-character security descriptor and the 48-character additional descriptor for the Global Securities of each Class in order to indicate that sales are limited to QIBs that are also QPs;

(ii)        cause each physical DTC deliver order ticket delivered by DTC to purchasers to contain the 20-character security descriptor; and shall direct DTC to cause each DTC deliver order ticket delivered by DTC to purchasers in electronic form to contain the "3c7" indicator and the related user manual for participants;

(iii)        send an important Section 3(c)(7) Notice outlining the Section 3(c)(7) restrictions applicable to the Issuer to all DTC participants in connection with the initial offering of the Global Securities;

(iv)        include the Global Securities in DTC's "Reference Directory" of Section 3(c)(7) offerings; and

(v)        from time to time (upon the request of the Note Registrar but at the expense of the Issuer) deliver to the Issuer a list of all DTC participants holding an interest in the Global Securities.

(c)        Bloomberg Screens, etc. The Issuer shall from time to time request (or cause another to request on the Issuer's behalf) all third-party vendors to include on screens maintained by such vendors appropriate legends regarding Rule 144A and Section 3(c)(7) restrictions on the Global Securities. Without limiting the foregoing, the Issuer shall request Bloomberg, L.P. to include the following on each Bloomberg screen containing information about the Global Securities:

(i)        the "Note Box" on the bottom of the "Security Display" page describing the Global Securities should state: "Iss'd Under 144A/3c7";

(ii)        the "Security Display" page should have a flashing red indicator stating "Additional Note Pg"; and

(iii)        such indicator should link to an "Additional Security Information" page, which should state that the Global Securities "are being offered in reliance on the exemption from registration under Rule 144A under the Securities Act of 1933 to persons that are both (1) qualified institutional buyers (as defined in Rule 144A under the Securities Act) and (2) qualified purchasers (as defined under Section 3(c)(7) of the Investment Company Act of 1940, as amended)."

(d)        CUSIP. The Issuer shall cause each "CUSIP" number obtained for a Global Note to have an attached "fixed field" that contains "3c7" and "144A" indicators.

ARTICLE III
COVENANTS

Section 3.01.  Payment of Principal and Interest.  The Issuer and the Co-Issuer will duly and punctually pay (or will cause to be duly and punctually paid) the principal of and interest on the Class A Notes in accordance with the terms of such Notes and this Indenture.  The Issuer will duly and punctually pay (or will cause to be duly and punctually paid) the principal of and interest on the Class B Notes in accordance with the terms of such Notes and this Indenture.  Without limiting the foregoing, unless the Notes have been declared due and payable pursuant to Section 5.02 and monies collected by the Indenture Trustee are being applied in accordance with Section 5.04(b), subject to and in accordance with Section 4.01 of the Sale and Collection Agreement, the Issuer (and the Co-Issuer, with respect to the Class A Notes) will cause to be paid all amounts on deposit in the Note Payment Account on each Payment Date to the Holders thereof.  Amounts properly withheld under the Code by any Person from a payment to any Noteholder of interest and/or principal shall be considered as having been paid by the Issuer and the Co-Issuer, as applicable, to such Noteholder for all purposes of this Indenture.

The Class A Notes shall be non-recourse obligations of the Issuer and the Co-Issuer and shall be limited in right of payment to amounts available from the Collateral as provided in this Indenture.  The Class B Notes shall be non-recourse obligations of the Issuer and shall be limited in right of payment to amounts available from the Collateral as provided in this Indenture.  The Issuer and the Co-Issuer shall not otherwise be liable for payment of the Notes, and none of the owners, agents, officers, directors, employees, or successors or assigns of the Issuer or the Co-Issuer shall be personally liable for any amounts payable, or performance due, under the Notes or this Indenture.  If any other provision of this Indenture shall be deemed to conflict with the provisions of this Section 3.01, the provisions of this Section 3.01 shall control.

Section 3.02.  Maintenance of Office or Agency.  The Issuer will or will cause the Indenture Trustee to maintain an office or agency where Notes may be surrendered for registration of transfer or exchange, and where notices and demands to or upon the Issuer in respect of the Notes and this Indenture may be served which initially shall be the Corporate Trust Office.  The Issuer hereby initially appoints the Indenture Trustee to serve as its agent for the foregoing purposes and to serve as Paying Agent with respect to the Notes.  The Issuer will give prompt written notice to the Indenture Trustee of the appointment of new or additional paying agents for the Notes, the location, and of any change in the location, of any such office or agency.  If at any time the Issuer shall fail to maintain any such office or agency or shall fail to furnish the Indenture Trustee with the address thereof, such surrenders, notices and demands may be made or delivered at the Corporate Trust Office, and the Issuer hereby appoints the Indenture Trustee as its agent to receive all such surrenders, notices and demands.

Section 3.03.  Money for Payments To Be Held in Trust.  All payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn from the Note Payment Account pursuant to Section 4.01 of the Sale and Collection Agreement shall be made on behalf of the Issuer by the Indenture Trustee or by the Paying Agent.

On or before the Business Day preceding each Payment Date, the Issuer shall deposit or cause to be deposited in the Note Payment Account an aggregate sum sufficient to pay the

amounts then becoming due under the Notes, such sum to be held in trust for the benefit of the Persons entitled thereto, and (unless the Paying Agent is the Indenture Trustee) shall promptly notify the Indenture Trustee of its action or failure so to act.

Any Paying Agent other than the Indenture Trustee shall be appointed by Issuer Order with written notice thereof to the Indenture Trustee. Any Paying Agent appointed by the Issuer shall be a Person who would be eligible to be Indenture Trustee hereunder as provided in Section 6.11. The Issuer shall not appoint any Paying Agent (other than the Indenture Trustee) which is not, at the time of such appointment, a Depository Institution.

The Issuer shall cause each Paying Agent (other than the Indenture Trustee) to execute and deliver to the Indenture Trustee an instrument in which such Paying Agent shall agree with the Indenture Trustee (and if the Indenture Trustee acts as Paying Agent, it hereby so agrees), subject to the provisions of this Section, that such Paying Agent will:

(i)     hold all sums held by it for the payment of amounts due with respect to the Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided and pay such sums to such Persons as herein provided;

(ii)     give the Indenture Trustee notice of any default by the Issuer (or any other obligor upon the Notes) of which it has actual knowledge in the making of any payment required to be made with respect to the Notes;

(iii)     at any time during the continuance of any such default, upon the written request of the Indenture Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

(iv)     immediately resign as a Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in trust for the payment of the Notes if at any time it ceases to meet the standards required to be met by a Paying Agent at the time of its appointment; and

(v)     comply with all requirements of the Code with respect to the withholding from any payments made by it on any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting requirements in connection therewith; *provided, however,* that with respect to withholding and reporting requirements applicable to original issue discount (if any) on the Notes, the Issuer shall have first provided the calculations pertaining thereto to the Indenture Trustee.

The Issuer by Issuer Order, or the Indenture Trustee may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent. Upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

202095 SASCO NIM 2006-NC1
Indenture

Subject to applicable laws with respect to escheat of funds or abandoned property, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for two years after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; *provided, however*, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in a newspaper published in the English language, customarily published on each Business Day and of general circulation in The City of New York, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer. The Indenture Trustee shall also adopt and employ, at the expense and direction of the Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to Holders whose right to or interest in moneys due and payable but not claimed is determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for each such Holder).

Section 3.04.  Existence.

(a)      The Issuer shall keep in full effect its existence, rights and franchises as a company under the laws of the Cayman Islands and shall obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture, the Notes and the Collateral.

(b)      The Co-Issuer shall keep in full effect its existence, rights and franchises as a corporation under the laws of the State of Delaware and shall obtain and preserve its qualification to do business in each jurisdiction in which such qualification is or shall be necessary to protect the validity and enforceability of this Indenture and the Notes.

Section 3.05.  Protection of Collateral.  The Issuer will, from time to time and upon direction of the Majority Noteholders, execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i)      provide further assurance with respect to the Grant of all or any portion of the Collateral;

(ii)      maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(iii)      perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iv)      enforce any rights with respect to the Collateral; or

(v)      preserve and defend title to the Collateral and the rights of the Indenture Trustee and the Noteholders in such Collateral against the claims of all Persons and parties.

The Issuer hereby designates the Seller as its agent and attorney-in-fact to prepare and file any financing statement, continuation statement or other instrument required to be executed pursuant to this Section 3.05.

Section 3.06.   Performance of Obligations.

(a)      Neither the Issuer nor the Co-Issuer shall take any action, and each of the Issuer and Co-Issuer shall use its best efforts not to permit any action to be taken by others, that would release any Person from any of such Person's material covenants or obligations under any instrument or agreement included in the Collateral or that would result in the amendment, hypothecation, subordination, termination or discharge of, or impair the validity or effectiveness of, any such instrument or agreement, except as expressly provided in this Indenture, the Sale and Collection Agreement or such other instrument or agreement.

(b)      Each of the Issuer and the Co-Issuer may contract with or otherwise obtain the assistance of other Persons (including, without limitation, the Administrator or the Depositor under the Administration Agreement) to assist it in performing its duties under this Indenture, and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuer or the Co-Issuer, as applicable, shall be deemed to be action taken by the Issuer or the Co-Issuer, as the case may be.   Initially, the Issuer has contracted with the Depositor and the Administrator to assist the Issuer in performing its duties under this Indenture.   The Administrator must at all times be the same Person as the Indenture Trustee.

(c)      Each of the Issuer and the Co-Issuer shall punctually perform and observe all of its obligations and agreements, if any, contained in this Indenture, any other Operative Agreements to which it is a party and in the instruments and agreements included in the Collateral, including but not limited to filing or causing to be filed all UCC financing statements and continuation statements required to be filed by the terms of this Indenture and the Sale and Collection Agreement.   Except as otherwise expressly provided herein or in the Sale and Collection Agreement, the Issuer shall not waive, amend, modify, supplement or terminate any Operative Agreement or any provision thereof without the consent of the Indenture Trustee (solely with respect to amendments and modifications that would have an effect on the rights or obligations of the Indenture Trustee or the Operative Agreements to which the Indenture Trustee is a party) and a majority of the Outstanding Amount of the Notes.

(d)    .  Without derogating from the absolute nature of the assignment granted to the Indenture Trustee under this Indenture or the rights of the Indenture Trustee hereunder, the Issuer agrees (i) that it will not, without the prior written consent of the Holders of at least a majority in Outstanding Amount of the Notes affected thereby, amend, modify, waive, supplement, terminate or surrender, or agree to any amendment, modification, supplement, termination, waiver or surrender of, the terms of any Collateral (except to the extent otherwise provided in the *Sale and Collection Agreement*) or *waive timely performance or observance by the Seller under* the Sale and Collection Agreement; and (ii) that any such amendment shall not (A) increase or

reduce in any manner the amount of, or accelerate or delay the timing of, distributions that are required to be made for the benefit of the Noteholders or (B) reduce the aforesaid percentage of the Notes that is required to consent to any such amendment, without the consent of the Holders of all the Outstanding Notes affected thereby. If any such amendment, modification, supplement or waiver shall be so consented to by such Holders, the Issuer agrees, promptly following a request by the Indenture Trustee, to execute and deliver, in its own name and at its own expense, such agreements, instruments, consents and other documents as may be necessary or appropriate in the circumstances.

Section 3.07. <u>Negative Covenants</u>. So long as any Notes are Outstanding, the Issuer and Co-Issuer shall not:

(a)     except as expressly permitted by this Indenture, the Securities Purchase Agreement or the Sale and Collection Agreement, sell, transfer, exchange or otherwise dispose of any of the Collateral, unless directed to do so by the Indenture Trustee;

(b)     claim any credit on, or make any deduction from the principal or interest, if any, payable in respect of, the Notes (other than amounts properly withheld from such payments under the Code) or assert any claim against any present or former Noteholder by reason of the payment of the taxes levied or assessed upon any part of the Collateral;

(c)     engage in any business or activity other than as permitted by its Articles of Association or other than in connection with, or relating to, the issuance of Notes pursuant to this Indenture, or, except upon satisfaction of the Rating Agency Condition or delivery to the Indenture Trustee of an Opinion of Counsel to the effect that such amendment will have no material adverse effect on the interests of Noteholders, amend its Articles of Association as in effect on the Closing Date;

(d)     issue debt obligations secured by the Collateral under any other indenture;

(e)     incur or assume any indebtedness or guaranty any indebtedness of any Person, except for such indebtedness as may be incurred by the Issuer or Co-Issuer in connection with the issuance of the Notes pursuant to this Indenture or in connection with the issuance of notes of any other series secured by assets other than the Collateral;

(f)     dissolve or liquidate in whole or in part or merge or consolidate with any other Person or convey or transfer the Trust Estate to any Person without the consent of Noteholders holding not less than 66-2/3% of the Outstanding Amount of the Notes unless the Issuer or Co-Issuer shall have caused the Indenture Trustee to have received written confirmation from the Rating Agency to the effect that the consummation of such transaction satisfies the Rating Agency Condition;

(g)     (A) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations with respect to the Notes under this Indenture except as may be expressly permitted hereby, (B) permit any lien, charge, excise, claim, security interest, mortgage or other encumbrance (other than the lien of this

Indenture) to be created on or extend to or otherwise arise upon or burden the Collateral or any part thereof or any interest therein or the proceeds thereof (other than tax liens, mechanic's liens and other liens that arise by operation of law) in each case on any of the Underlying Securities and arising solely as a result of an action or omission of the related obligor or (C) permit the lien of this Indenture not to constitute a valid first priority (other than with respect to any such tax, mechanic's or other lien) security interest in the Collateral;

(h)     remove the Administrator without cause unless the Rating Agency Condition shall have been satisfied in connection with such removal;

(i)     take any other action or fail to take any action which may cause the Issuer to be engaged in a U.S. trade or business for U.S. federal tax purposes, in furtherance and not in limitation of the foregoing, the Issuer shall not:

(1)     earn or receive any fee or compensation in connection with its acquisition of the Collateral; or

(2)     hold the Issuer out, through advertising or otherwise, as originating loans, lending funds, making a market in or a dealer in loans or other assets, or insuring or guarantying debt obligations;

(j)     make or permit to remain outstanding, any loan or advance to, or own or acquire any stock or securities of, any Person other than the Underlying Securities and any other instruments constituting part of the Trust Estate; or

(k)     voluntarily file a petition for bankruptcy, reorganization, assignment for the benefit of creditors or similar proceedings.

Section 3.08.  [Reserved]

Section 3.09.  Restricted Payments.  The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof from the Collateral to any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security by use of the Collateral or (iii) set aside or otherwise segregate any amounts for any such purpose from the Collateral; *provided, however*, that the Issuer may pay any such dividend or make, or cause to be made, (x) any such distributions to the extent funds are available for such purpose under this Indenture or the Sale and Collection Agreement and (y) payments to the Indenture Trustee and the Administrator pursuant to the Administration Agreement.

Section 3.10.  Treatment of Notes as Debt for Tax Purposes.  Each of the Issuer and the Co-Issuer shall treat the Notes as indebtedness of the Issuer for all federal and state tax purposes.

Section 3.11.  Notice of Events of Default.  The Issuer shall give the Indenture Trustee and the Rating Agency prompt written notice of each Event of Default hereunder, each default

on the part of the Seller under the Sale and Collection Agreement and each default on the part of the Seller or Lehman Brothers Inc. of its obligations under the Securities Purchase Agreement.

Section 3.12.  Further Instruments and Acts.  Upon request of the Indenture Trustee, the Issuer and the Co-Issuer shall execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

Section 3.13.  Annual Statement as to Compliance.  So long as the Notes are outstanding, the Issuer shall deliver or cause to be delivered to the Indenture Trustee, within 120 days after the end of each fiscal year of the Issuer (commencing with the fiscal year 2006), an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(i)     a review of the activities of the Issuer during such year and of its performance under this Indenture has been made under such Authorized Officer's supervision; and

(ii)     to the best of such Authorized Officer's knowledge, based on such review, the Issuer has complied with all conditions and covenants under this Indenture throughout such year, or, if there has been a default in its compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nature and status thereof.

ARTICLE IV
SATISFACTION AND DISCHARGE

Section 4.01.  Satisfaction and Discharge of Indenture.  This Indenture shall be discharged and cease to be of further effect with respect to the Notes and the Collateral securing such Notes when either (i) the Sale and Collection Agreement has been terminated pursuant to Section 5.01(a)(i) or Section 5.01(a)(ii) thereof or (ii) all of the following have occurred:

(a)     either

(1)     all Notes theretofore authenticated and delivered (other than (A) Notes that have been mutilated, destroyed, lost or stolen and that have been replaced or paid as provided in Section 2.04 and (B) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation; or

(2)     all Notes not theretofore delivered to the Indenture Trustee for cancellation (A) have become due and payable within one year at the Maturity Date, and (B) are to be called for redemption within one year under arrangements satisfactory to the Indenture Trustee for the giving of notice of redemption by the Indenture Trustee in the name, and at the expense, of the Issuer, and the Issuer has irrevocably deposited or caused to be irrevocably deposited with the Indenture Trustee cash or direct obligations of or obligations guaranteed by the United States of America (which will mature prior to

the date such amounts are payable), in trust for such purpose, in an amount sufficient to pay and discharge the entire indebtedness on such Notes to the applicable Maturity Date.

(b)    the Issuer has paid or caused to be paid all other sums payable hereunder and no other amounts will become due and payable by the Issuer or the Co-Issuer; and

(c)    the Issuer has delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel (at the Issuer's expense), each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture with respect to the Notes have been complied with, then, upon an Issuer Request, this Indenture and the lien, rights, and interests created hereby shall cease to be of further effect with respect to the Notes (except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.05, 3.07 and 3.08 hereof, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and only the obligations of the Indenture Trustee under Section 4.02) and (vi) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them), and the Indenture Trustee, on demand of and at the expense of the Issuer, shall execute and deliver proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, and shall pay, or assign or transfer and deliver, to or at the direction of the Issuer, all Collateral held by it after satisfaction of the conditions specified in clauses (b) and (c) above.

Section 4.02. Application of Trust Money. All moneys deposited with the Indenture Trustee pursuant to Sections 3.03 and 4.01 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent, as the Indenture Trustee may determine, to the Holders of the Notes for the payment of all sums due and to become due thereon for principal and interest, if any; but such moneys need not be segregated from other funds except to the extent required herein or otherwise required by law.

Section 4.03. Repayment of Moneys Held by Paying Agent. In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all moneys then held by any Paying Agent other than the Indenture Trustee under the provisions of this Indenture with respect to such Notes shall, upon demand of the Issuer, be paid to the Indenture Trustee to be held and applied according to Section 3.03 and thereupon such Paying Agent shall be released from all further liability with respect to such monies.

ARTICLE V
REMEDIES

Section 5.01. Events of Default.

(a)    "Event of Default," wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(i)    default in the payment of any Carryforward Interest on the most senior class of interest bearing Notes entitled thereto outstanding for three consecutive Payment Dates or a default in the payment of the entire principal of any Note on the Maturity Date;

(ii)    either the Issuer or the pool of Collateral becomes an "investment company" required to be registered under the Investment Company Act; or

(iii)    default in the observance or performance of any covenant or agreement of the Issuer made in this Indenture (other than a covenant or agreement, a default in the observance or performance of which is elsewhere in this Section 5.01 specifically dealt with), or any representation or warranty of the Issuer made in this Indenture, the Sale and Collection Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made, and such default shall continue or not be cured, or the circumstance or condition in respect of which such misrepresentation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Holders of at least 25% of the Outstanding Amount of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of Default hereunder; or

(iv)    the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Collateral in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Collateral, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(v)    the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Collateral, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

The Issuer shall deliver to a Responsible Officer of the Indenture Trustee, within five days after the occurrence thereof, written notice in the form of an Officer's Certificate of any event which with the giving of notice and the lapse of time would become an Event of Default, its status and what action the Issuer is taking or proposes to take with respect thereto.

Section 5.02.    Acceleration of Maturity; Rescission and Annulment.

(a)    If an Event of Default should occur and be continuing of which a Responsible Officer of the Indenture Trustee has actual knowledge, then and in every such case the Indenture Trustee may, and, at the direction or upon the prior written consent of the Holders of 100% of the Outstanding Amount of the Priority Class shall, declare all the Notes to be immediately due and payable, by written notice to the Issuer, and upon any such declaration the unpaid principal amount of such Notes, together with accrued and unpaid interest thereon through the date of acceleration, shall become immediately due and payable.

(b)    At any time after such declaration of acceleration of maturity has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture Trustee as hereinafter provided in this Article V, Holders of 100% of the Outstanding Amount of the Priority Class, by written notice to the Issuer and the Indenture Trustee, may rescind and annul such declaration and its consequences if (i) the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

(A)    all payments of principal of and interest on all Class A Notes and all payments of principal of and interest on all Class B Notes and all other amounts that would then be due hereunder or upon each Class of Notes if the Event of Default giving rise to such acceleration had not occurred; and

(B)    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

(ii)    all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.11.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03.  Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a)    If an Event of Default occurs and is continuing of which a Responsible Officer of the Indenture Trustee has actual knowledge, the Indenture Trustee may, and, subject to Section 5.10, shall, at the direction of the Holders of the Priority Class representing not less than a majority of the Outstanding Amount thereof, proceed to protect and enforce its rights and the rights of the Noteholders, by such appropriate Proceedings as the Indenture Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(b)    In case there shall be pending, relative to the Issuer or any other obligor upon the Notes or any Person having or claiming an ownership interest in the Collateral, Proceedings under Title 11 of the United States Bankruptcy Code of 1986, as amended or any other

applicable federal or state or Cayman Islands bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer or its property or such other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuer or other obligor upon the Notes, or to the creditors or property of the Issuer or such other obligor, the Indenture Trustee, irrespective of whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the provisions of this Section 5.03, shall be entitled and empowered, upon the direction of the Holders of the Priority Class representing not less than a majority of the Outstanding Amount thereof, by intervention in such Proceedings or otherwise:

(i)    to file and prove a claim or claims for the whole amount of principal and interest owing and unpaid in respect of the Notes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee, and their respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee (except as a result of negligence or bad faith)), and of the Noteholders allowed in such Proceedings;

(ii)    unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)    to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute all amounts received with respect to the claims of the Noteholders and the Indenture Trustee on their behalf;

(iv)    to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Indenture Trustee or the Holders of Notes allowed in any judicial proceedings relative to the Issuer, its creditors and its property; and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by each of such Noteholders to make payments to the Indenture Trustee and, in the event that the Indenture Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee except as a result of negligence or bad faith;

(v)    nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the

claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person;

(vi)    all rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings relative thereto, and any such action or Proceedings instituted by the Indenture Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes; and

(vii)    in any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any provision of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the Noteholders, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04.  Remedies; Priorities.  (a)  If an Event of Default shall have occurred and be continuing, of which a Responsible Officer of the Indenture Trustee has actual knowledge, the Indenture Trustee may, and at the direction of the Majority Noteholders shall, do one or more of the following (subject to Section 5.05):

(i)    institute Proceedings in its own name (as Indenture Trustee) and as trustee of an express trust for the collection of all amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Issuer and any other obligor upon such Notes monies adjudged due;

(ii)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with respect to the Collateral;

(iii)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee or the Noteholders; and

(iv)    sell the Collateral or any portion thereof or rights or interest therein in a commercially reasonable manner, at one or more public or private sales called and conducted in any manner permitted by law;

*provided, however*, that the Indenture Trustee may not sell or otherwise liquidate the Collateral following an Event of Default, unless (A) the Holders of 100% of the Outstanding Amount of the Notes consent thereto, (B) the proceeds of such sale or liquidation distributable to the Noteholders are sufficient to discharge in full all amounts then due and unpaid upon the Notes for principal and interest or (C) the Indenture Trustee determines that the Collateral will not continue to provide sufficient funds for the payment of principal of and interest on the Notes as they would have become due if the Notes had not been declared due and payable, and the

Indenture Trustee obtains the consent of Holders of 66-2/3% of the Outstanding Amount of the Notes. In determining such sufficiency or insufficiency with respect to clauses (B) and (C), the Indenture Trustee shall obtain at the cost of the Issuer and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Collateral for such purpose.

(b)    If the Indenture Trustee collects any money or property pursuant to this Article V, it shall pay out the money or property in the following order:

*first*, to the Indenture Trustee, for any costs or expenses incurred by it in connection with the enforcement of the remedies provided for in this Article V and for any other unpaid amounts due to the Indenture Trustee hereunder, and to the Issuer, to the extent of any fees and expenses due and owing to it;

*second*, to the Class A Notes, all accrued and unpaid interest thereon and amounts in respect of principal up to their Class Principal Amount; *provided, however*, that accrued and unpaid interest shall be paid to Noteholders of such Class before any payments in respect of principal;

*third*, to the Class B Notes, all accrued and unpaid interest thereon and amounts in respect of principal up to their Class Principal Amount; *provided, however*, that accrued and unpaid interest shall be paid to Noteholders of such Class before any payments in respect of principal; and

*fourth*, to the Issuer.

The Indenture Trustee may fix a record date and payment date for any payment to be made to the Noteholders pursuant to this Section. At least 15 days before such record date, the Indenture Trustee shall mail to each Noteholder and the Issuer a notice that states the record date, the payment date and the amount to be paid.

Section 5.05. Limitation of Suits. No Holder of any Note shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

(a)    such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(b)    the Majority Noteholders have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(c)    such Holder or Holders have offered to the Indenture Trustee indemnity reasonably satisfactory to it against the costs, expenses and liabilities to be incurred in complying with such request;

(d)    the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such Proceedings; and

(e)    no direction inconsistent with such written request has been given to the Indenture Trustee during such 60-day period by the Majority Noteholders.

It is understood and intended that no one or more Holders of Notes shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided.

Section 5.06.    Unconditional Rights of Noteholders To Receive Principal and Interest. Notwithstanding any other provisions in this Indenture, the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on, such Note on or after the Maturity Date and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.07.    Restoration of Rights and Remedies. If the Indenture Trustee or any Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then and in every such case the Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding had been instituted.

Section 5.08.    Rights and Remedies Cumulative. No right or remedy herein conferred upon or reserved to the Indenture Trustee or to the Noteholders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.09.    Delay or Omission Not a Waiver. No delay or omission of the Indenture Trustee or any Holder of any Note to exercise any right or remedy accruing upon any Default or Event of Default shall impair any such right or remedy or constitute a waiver of any such Default or Event of Default or an acquiescence therein. Every right and remedy given by this Article V or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.10.    Control by Noteholders. Except as otherwise provided in Section 5.02, the Majority Noteholders shall have the right to direct the time, method and place of conducting any Proceeding for any remedy available to the Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee; provided that:

(a)    such direction shall not be in conflict with any rule of law or with this Indenture;

(b)    such Holders shall have offered the Indenture Trustee indemnity reasonably satisfactory to it against the costs, expenses and liabilities incurred in complying with such direction;

(c)    subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or liquidate the Collateral shall be by Holders of Notes representing not less than 100% of the Outstanding Amount of the Notes; and

(d)    the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not inconsistent with such direction.

Notwithstanding the rights of the Noteholders set forth in this Section, subject to Section 6.01, the Indenture Trustee need not take any action that it determines might involve it in liability or might materially adversely affect the rights of any Noteholders not consenting to such action.

Section 5.11.  Waiver of Past Defaults.  Prior to the declaration of the acceleration of the maturity of the Notes as provided in Section 5.02, the Majority Noteholders may waive any past Default or Event of Default and its consequences except a Default (a) in the payment of interest, if any, on any of the Notes or (b) in respect of a covenant or provision hereof that cannot be modified or amended without the consent of the Holder of each Note, as applicable.  In the case of any such waiver, the Issuer, the Indenture Trustee and the Holders of the Notes shall be restored to their former positions and rights hereunder, respectively; but no such waiver shall extend to any subsequent or other Default or impair any right consequent thereto.

Upon any such waiver, such Default shall cease to exist and be deemed to have been cured and not to have occurred, and any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereto.

Section 5.12.  Undertaking for Costs.  All parties to this Indenture agree, and each Holder of any Note by such Holder's acceptance thereof shall be deemed to have agreed, that any court may in its discretion require, in any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant; but the provisions of this Section shall not apply to (a) any suit instituted by the Indenture Trustee, (b) any suit instituted by any Noteholder, or group of Noteholders, in each case holding in the aggregate more than 10% of the Outstanding Amount of the Notes or (c) any suit instituted by any Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective due dates expressed in such Note and in this Indenture.

Section 5.13.  Waiver of Stay or Extension Laws.  The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or advantage of, any stay or extension law wherever

enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 5.14. <u>Action on Notes</u>. The Indenture Trustee's right to seek and recover judgment on the Notes or under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Noteholders shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuer or by the levy of any execution under such judgment upon any portion of the Collateral or upon any of the assets of the Issuer. Any money or property collected by the Indenture Trustee shall be applied in accordance with Section 5.04(b).

Section 5.15. <u>Optional Preservation of the Collateral</u>. If the Notes have been declared to be due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, but need not, elect to maintain possession of the Collateral. In determining whether to maintain possession of the Collateral, the Indenture Trustee may, but need not, obtain and rely upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Collateral for such purpose.

Section 5.16. <u>Performance and Enforcement of Certain Obligations</u>.

(a)   Promptly following a request from the Indenture Trustee to do so and at the Issuer's expense, the Issuer shall take all such lawful action as the Indenture Trustee may request to compel or secure the performance and observance by the Seller of its obligations to the Issuer under or in connection with the Sale and Collection Agreement or by the Seller of its obligations under or in connection with the Securities Purchase Agreement, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuer under or in connection with the Sale and Collection Agreement to the extent and in the manner directed by the Indenture Trustee, including the transmission of notices of default on the part of the Seller thereunder and the institution of legal or administrative actions or proceedings to compel or secure performance by the Seller of its obligations under the Sale and Collection Agreement.

(b)   If an Event of Default of which a Responsible Officer of the Indenture Trustee has actual knowledge has occurred and is continuing, the Indenture Trustee may, and at the direction (which direction shall be in writing or by telephone, confirmed in writing promptly thereafter) of the Majority Noteholders shall, subject to Section 5.10, exercise all rights, remedies, powers, privileges and claims of the Issuer against the Seller under or in connection with the Sale and Collection Agreement, or against the Seller under or in connection with the Securities Purchase Agreement, including the right or power to take any action to compel or secure performance or observance by the Seller of its obligations to the Issuer thereunder and to give any consent, request, notice, direction, approval, extension, or waiver under the Sale and Collection Agreement or the Securities Purchase Agreement, as the case may be, and any right of the Issuer to take such action shall be suspended.

ARTICLE VI
THE INDENTURE TRUSTEE

Section 6.01.  <u>Duties of Indenture Trustee</u>.

(a)     If an Event of Default has occurred and is continuing, the Indenture Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b)     Except during the continuance of an Event of Default:

(i)     the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, the Indenture Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

(ii)     in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Indenture Trustee and conforming to the requirements of this Indenture; *provided, however,* the Indenture Trustee shall examine the certificates and opinions to determine whether or not they conform on their face to the requirements of this Indenture.

(c)     The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)     this paragraph does not limit the effect of paragraph (b) of this Section;

(ii)     the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer of the Indenture Trustee unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts;

(iii)     the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with this Agreement or upon a direction received by it pursuant to Sections 5.02, 5.04, 5.05, 5.10, 5.11 or 5.16 or any other direction of the holders of the Majority Noteholders relating to the time, method and place of conducting any proceeding for any remedy available to the Indenture Trustee, or exercising or omitting to exercise any trust or power conferred upon the Indenture Trustee under this Agreement;

(iv)     the Indenture Trustee shall not be liable for interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer;

(v)     money held in trust by the Indenture Trustee shall be segregated from other funds except to the extent permitted by law or the terms of this Indenture or the Sale and Collection Agreement;

(vi)    no provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or indemnity reasonably satisfactory to it against such risk or liability is not reasonably assured to it;

(vii)    every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section;

(viii)    the Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of any default or Event of Default (except an Event of Default described in Section 5.01(a)(i)) unless a Responsible Officer of the Indenture Trustee shall have actual knowledge thereof. In absence of such actual knowledge, the Indenture Trustee may conclusively assume that there is no default or Event of Default; and

(ix)    anything in this Agreement to the contrary notwithstanding, in no event shall the Indenture Trustee be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Indenture Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

(d)    The Indenture Trustee shall not have any duty or obligation to manage, make any payment with respect to, register, record, sell, dispose of, or otherwise deal with the Collateral, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Indenture Trustee is a party, except as expressly provided (i) in accordance with the powers granted to and the authority conferred upon the Indenture Trustee pursuant to this Agreement or any other Operative Agreement, and (ii) in accordance with any document or instruction delivered to the Indenture Trustee pursuant the terms of this Agreement; and no implied duties or obligations shall be read into this Agreement or any Operative Agreement against the Indenture Trustee. The Indenture Trustee shall have no responsibility for filing any financing or continuation statement in any public office at any time or to otherwise perfect or maintain the perfection of any security interest or lien granted to it hereunder or to prepare or file any Commission filing for the Trust or to record this Agreement or any Operative Agreement or to prepare or file any tax return for the Issuer or the Co-Issuer. The Indenture Trustee nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any liens on any part of the Collateral that result from actions by, or claims against itself that are not related to the administration of the Collateral.

Section 6.02.  Rights of Indenture Trustee.

(a)    The Indenture Trustee may rely on and shall be protected in acting in good faith upon any document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or matter stated in any such document.

(b)      Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel.  The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on an Officer's Certificate or an Opinion of Counsel.

(c)      The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a custodian or nominee and the Indenture Trustee shall not be responsible for any misconduct or negligence on the part of such agent, attorney, custodian or nominee appointed by the Indenture Trustee with due care.

(d)      The Indenture Trustee shall not be liable for any action it takes or omits to take which it believes to be authorized or within its rights or powers; *provided, however*, that such action or omission by the Indenture Trustee does not constitute willful misconduct, negligence or bad faith.

(e)      The Indenture Trustee may consult with counsel, and the advice or opinion of counsel or any Opinion of Counsel with respect to legal matters relating to the Operative Agreements shall be full and complete authorization and protection from liability with respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.  The Issuer shall be responsible for the reasonable costs and expenses of any such counsel.

(f)      The Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Majority Noteholders; *provided, however*, that if the payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Indenture Trustee, not reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee may require reasonable indemnity against such cost, expense or liability as a condition to taking any such action.  The reasonable expense of every such investigation shall be paid by the Issuer or, if paid by the Indenture Trustee, shall be repaid by the Issuer upon demand.

(g)      The right of the Indenture Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty, and the Indenture Trustee shall not be answerable for other than its negligence or willful misconduct in the performance of such act.

(h)      The Indenture Trustee shall not be required to give any bond or surety in respect of the execution of the powers granted hereunder.

Section 6.03.  Individual Rights of Indenture Trustee.  The Indenture Trustee may in any capacity other than as Indenture Trustee, become the owner or pledgee of Notes and may otherwise deal with the Issuer, the Co-Issuer or their respective Affiliates with the same rights it would have if it were not Indenture Trustee.  Any Paying Agent, Note Registrar, co-registrar or co-paying agent may do the same with like rights.

Section 6.04.  Indenture Trustee's Disclaimer.  The Indenture Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture, any other Operative Agreement or the Notes or the Issuer's use of the proceeds from the Notes, or responsible for any statement of the Issuer or the Co-Issuer in this Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Indenture Trustee's certificate of authentication.

Neither the Administrator nor the Indenture Trustee shall have any responsibility for establishing or maintaining the tax treatment of the Notes or for preparing, executing or filing any tax returns or reports of any kind or nature under the laws of any jurisdiction with respect to the Issuer, the Co-Issuer or the Notes.

Section 6.05.  Notice of Default.  If a Default occurs and is continuing and if it is known to a Responsible Officer of the Indenture Trustee, the Indenture Trustee shall mail to each Noteholder notice of the Default within 30 days after it acquires knowledge of such Default.

Section 6.06.  Reports by Indenture Trustee to Holders.  Upon written request by a Noteholder, the Indenture Trustee shall, in accordance with the requirements of the Code and Treasury regulations, deliver or cause to be delivered to each Noteholder such information as reasonably available to it and may be required to enable such holder to prepare its federal and State income tax returns.

Section 6.07.  Compensation and Indemnity.  As compensation for its services hereunder and under the Sale and Collection Agreement and any other Operative Agreement (including in its capacity as Note Registrar, Preference Share Paying Agent, Paying Agent and Securities Intermediary), the Indenture Trustee shall be entitled to receive the Indenture Trustee Fee (which shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) payable by Lehman Brothers Inc. together with reimbursement for all reasonable out-of-pocket expenses incurred or made by it, including costs of collection, payable by the Issuer; provided, however, that such reimbursable amounts may not exceed $100,000 during any Anniversary Year.  Such expenses shall include the reasonable compensation and expenses, disbursements and advances, if any, of the Indenture Trustee's agents, counsel, accountants and experts.  The Issuer agrees to cause the Seller and Lehman Brothers Inc. (who hereby agree) to, and the Seller and Lehman Brothers Inc. shall, jointly and severally indemnify the Indenture Trustee (including in its capacities as the Note Registrar, Paying Agent and Securities Intermediary) against any and all loss, liability or expense (including attorneys' fees) incurred by the Indenture Trustee in connection with the administration of this trust and the performance of its duties under the Operative Agreements to the extent provided in Section 6.07(c).  The Indenture Trustee shall notify each of the Issuer, the Seller and Lehman Brothers Inc. promptly of any claim for which it may seek indemnity.  Failure by the Indenture Trustee to so notify the Issuer, the Seller and Lehman Brothers Inc. shall not relieve the Seller and Lehman Brothers Inc. of its obligations hereunder.  The Issuer shall or shall cause the Seller and Lehman Brothers Inc. to defend any such claim, and the Indenture Trustee, the Paying Agent and the Securities Intermediary may have separate counsel and the Issuer shall or shall cause the Seller and Lehman Brothers Inc. to pay the fees and expenses of such counsel to the extent provided in Section 6.07(c).  Neither the Seller nor Lehman Brothers Inc. need reimburse any expense or indemnify against any loss, liability or expense incurred by the Indenture Trustee, the Note

Registrar, the Paying Agent or the Securities Intermediary to the extent attributable to such Person's own willful misconduct, negligence or bad faith.

(b)     The payment and indemnification obligations of the Seller and Lehman Brothers Inc. to the Indenture Trustee pursuant to this Section shall survive the resignation or removal of the Indenture Trustee or discharge of this Indenture. When the Indenture Trustee incurs expenses in connection with the occurrence of a Default specified in Section 5.01(a)(iv) or (v) with respect to the Issuer or the Co-Issuer, the expenses are intended to constitute expenses of administration under Title 11 of the United States Bankruptcy Code of 1986, as amended, or any other applicable federal or State bankruptcy, insolvency or similar law.

(c)     Notwithstanding anything to the contrary in this Section 6.07, any reimbursements and indemnities to the Indenture Trustee pursuant to this Section 6.07 shall be payable; *first*, from the Note Payment Account prior to payments on the Notes; and *second*, to the extent not paid pursuant to clause first within 60 days of first being incurred, by the Seller and Lehman Brothers Inc. If any amounts shall be on deposit in the Note Payment Account subsequent to the payment of any reimbursement or indemnification amounts pursuant to clause second of the preceding sentence, then reimbursement for such payment shall be payable out of amounts on deposit in the Note Payment Account prior to payments on the Notes on any Payment Date first to the Seller and Lehman Brothers Inc., to the extent of the payment made by such entity to the Indenture Trustee pursuant to the preceding sentence.

Section 6.08.  Replacement of Indenture Trustee.  No resignation or removal of the Indenture Trustee and no appointment of a successor Indenture Trustee shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section. The Indenture Trustee may resign at any time by so notifying the Issuer. The Holders of a majority in Outstanding Amount of the Notes may remove the Indenture Trustee by so notifying the Indenture Trustee and may appoint a successor Indenture Trustee. The Issuer shall remove the Indenture Trustee if:

(a)     the Indenture Trustee fails to comply with Section 6.11;

(b)     the Indenture Trustee is adjudged a bankrupt or insolvent;

(c)     a receiver or other public officer takes charge of the Indenture Trustee or its property; or

(d)     the Indenture Trustee otherwise becomes incapable of acting.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the office of Indenture Trustee for any reason (the Indenture Trustee in such event being referred to herein as the "resigning or removed Indenture Trustee"), the Issuer shall promptly appoint a successor Indenture Trustee that satisfies the eligibility requirements of Section 6.11.

The resigning or removed Indenture Trustee agrees to cooperate with any successor Indenture Trustee in effecting the termination of the resigning or removed Indenture Trustee's responsibilities and rights hereunder and shall promptly provide such successor Indenture

Trustee all documents and records reasonably requested by it to enable it to assume the Indenture Trustee's functions hereunder. Any successor Indenture Trustee shall have all the rights, powers and duties of the Indenture Trustee under this Indenture.

The resigning or removed Indenture Trustee shall Grant to the successor Indenture Trustee the Collateral, and the Seller, the Issuer, the Co-Issuer and the resigning or removed Indenture Trustee shall execute and deliver such instruments and do such other things as may reasonably be required for more fully and certainly vesting and confirming in the successor Indenture Trustee all rights, powers, duties and obligations under this Indenture.

The successor Indenture Trustee shall deliver a written acceptance of its appointment to the resigning or removed Indenture Trustee and the Issuer. The successor Indenture Trustee shall mail a notice of its succession to Noteholders. The resigning Indenture Trustee shall promptly transfer all property held by it as Indenture Trustee to the successor Indenture Trustee.

If a successor Indenture Trustee does not take office within 60 days after the retiring Indenture Trustee resigns or is removed, the resigning or removed Indenture Trustee, the Issuer or the Holders of a majority of the Outstanding Amount of the Notes may petition any court of competent jurisdiction for the appointment of a successor Indenture Trustee. If the Indenture Trustee fails to comply with Section 6.11, any Noteholder may petition any court of competent jurisdiction for the removal of the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section, the Issuer's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee.

Section 6.09. <u>Successor Indenture Trustee by Merger</u>. If the Indenture Trustee consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation or banking association, the resulting, surviving or transferee corporation without any further act shall be the successor Indenture Trustee; provided, that such corporation or banking association shall be otherwise qualified and eligible under Section 6.11. The Indenture Trustee shall provide the Rating Agency prior written notice of any such transaction.

In case at the time such successor or successors by merger, conversion or consolidation to the Indenture Trustee shall succeed to the trusts created by this Indenture any of the Notes shall have been authenticated but not delivered, any such successor to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such Notes so authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Indenture Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Indenture Trustee; and in all such cases, such certificates shall have full force and effect.

Section 6.10. <u>Appointment of Co-Indenture Trustee or Separate Indenture Trustee</u>.

(a)     Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Collateral may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders, such title to the Collateral, or any part thereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable.  No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 and no notice to Noteholders of the appointment of any co-trustee or separate trustee shall be required under this Section 6.10;

(b)     Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)     all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Collateral or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)     no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c)     Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them.  Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI.  Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, jointly with the Indenture Trustee, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording protection to, the Indenture Trustee.  Every such instrument shall be filed with the Indenture Trustee.

(d)     Any separate trustee or co-trustee may at any time constitute the Indenture Trustee its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name.  If any separate trustee or co-trustee shall cease to exist, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by

the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

Section 6.11. <u>Eligibility</u>. The Indenture Trustee shall at all times (i) have a combined capital and surplus of at least $50,000,000 as set forth in its most recently published annual report of condition, (ii) have a long-term debt rating equivalent to "A" or better (or the equivalent) by the Rating Agency or be otherwise acceptable to such Rating Agency and (iii) not be an Affiliate of the Issuer or the Co-Issuer.

Section 6.12. <u>Representations and Warranties</u>. The Indenture Trustee hereby represents that:

(a)    the Indenture Trustee is duly organized and validly existing as a national banking association in good standing under the laws of the United States with power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted;

(b)    the Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate action;

(c)    the consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under the articles of organization or bylaws of the Indenture Trustee or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound; and

(d)    there are no proceedings or investigations pending or, to the knowledge of the Indenture Trustee, threatened before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Trustee or its properties: (i) asserting the invalidity of this Indenture, (ii) seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (iii) seeking any determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

ARTICLE VII
NOTEHOLDERS' LISTS AND REPORTS

Section 7.01. <u>Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders</u>. The Issuer will furnish or cause to be furnished to the Indenture Trustee not more than five days after each Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the Holders of Notes as of such Record Date; *provided, however*, that so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

Section 7.02. <u>Preservation of Information; Communications to Noteholders</u>. The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and

addresses of the Holders of Notes contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of Holders of Notes received by the Indenture Trustee in its capacity as Note Registrar. The Indenture Trustee may destroy any prior list furnished to it as provided in Section 7.01 upon receipt of a new list so furnished.

## ARTICLE VIII
## ACCOUNTS, DISBURSEMENTS AND RELEASES

Section 8.01.  Collection of Money.  Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture. The Indenture Trustee shall apply all such money received by it as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Collateral, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02.  Establishment of Note Payment Account; Payments on the Notes.

(a)     On or prior to the Closing Date, the Indenture Trustee shall establish and maintain in its name the Note Payment Account, as provided in Section 4.01 of the Sale and Collection Agreement.

(b)     On each Payment Date, the Paying Agent (or, if the Indenture Trustee acts as Paying Agent, the Indenture Trustee) shall distribute all amounts on deposit in the Note Payment Account as provided in Section 4.01 of the Sale and Collection Agreement.

Section 8.03.  Release of Collateral.  (a) Subject to the payment of its fees and expenses pursuant to Section 6.07, the Indenture Trustee may, and when required by the provisions of this Indenture or the Sale and Collection Agreement shall, execute instruments to release property from the lien of this Indenture, or convey the Indenture Trustee's interest in the same, in a manner and under circumstances that are not inconsistent with the provisions of this Indenture or the Sale and Collection Agreement. No party relying upon an instrument executed by the Indenture Trustee as provided in this Article VIII shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any monies.

(b)     The Indenture Trustee shall, at such time as there are no Notes outstanding and all fees and expenses of the Indenture Trustee pursuant to Section 6.07 hereof have been paid, release any remaining portion of the Collateral that secured the Notes from the lien of this Indenture and release to the Issuer or any other Person entitled thereto any funds then on deposit in the Note Payment Account. The Indenture Trustee shall release property from the lien of this Indenture pursuant to this subsection (b) only upon receipt of an Issuer Request accompanied by

an Officer's Certificate and an Opinion of Counsel, each meeting the applicable requirements of Section 11.01 hereof.

ARTICLE IX
SUPPLEMENTAL INDENTURES

Section 9.01. <u>Supplemental Indentures Without Consent of Noteholders.</u>

(a)    Without the consent of the Holders of any Notes but with prior written notice to the Rating Agency and with the prior written consent of the Issuer, the Indenture Trustee, the Issuer and the Co-Issuer, when authorized by an Issuer Order, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)    to correct or amplify the description of any property at any time subject to the lien of this Indenture, or better to assure, convey and confirm unto the Indenture Trustee any property subject or required to be subjected to the lien of this Indenture, or to subject to the lien of this Indenture additional property;

(ii)    to evidence the succession, in compliance with the applicable provisions hereof, of another person to the Issuer or the Co-Issuer, and the assumption by any such successor of the covenants of the Issuer or the Co-Issuer, respectively, herein and in the Notes contained;

(iii)    to add to the covenants of the Issuer or the Co-Issuer, for the benefit of the Holders of the Notes, or to surrender any right or power herein conferred upon the Issuer;

(iv)    to (A) cure any ambiguity, (B) correct or supplement any provision herein or in any supplemental indenture that may be inconsistent with any other provisions herein or in any supplemental indenture or to conform the provisions hereof to those of any Offering Document, (C) obtain a rating for a Class of Notes from a nationally recognized statistical rating organization, or (D) make any other provisions with respect to matters or questions arising under this Indenture; *provided, however,* that no such supplemental indenture entered into pursuant to clause (D) of this subparagraph (iv) shall adversely affect in any material respect the interests of any Holder not consenting thereto; or

(v)    to evidence and provide for the acceptance of the appointment hereunder of a successor trustee with respect to the Notes and to add to or change any of the provisions of this Indenture as shall be necessary to facilitate the administration of the trusts hereunder by more than one trustee, pursuant to the requirements of Article VI.

The Indenture Trustee is hereby authorized to join in the execution of any such supplemental indenture and to make any further appropriate agreements and stipulations that may be therein contained.

(b)    The Issuer, the Co-Issuer and the Indenture Trustee, when authorized by an Issuer Order, may, also without the consent of any Noteholder but with prior notice to the Rating

Agency, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Noteholders under this Indenture; *provided, however*, that such action shall not, as evidenced by either (i) an Opinion of Counsel or (ii) satisfaction of the Rating Agency Condition, adversely affect in any material respect the interests of any Noteholder.

Section 9.02. <u>Supplemental Indentures with Consent of Noteholders</u>. The Issuer, the Co-Issuer and the Indenture Trustee, when authorized by an Issuer Order, also may, with the prior consent of the Rating Agency and with the consent of not less than 66-2/3% of the Outstanding Amount of the Notes affected thereby and the unanimous consent of the Shareholders, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Holders of the Notes under this Indenture; *provided, however*, that no such supplemental indenture shall, without the consent of the Holder of each Outstanding Note affected thereby and the unanimous consent of Shareholders:

(a)     change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof, the interest rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Collateral to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(b)     reduce the percentage of the Outstanding Amount of the Notes, the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(c)     modify or alter the provisions of the proviso to the definition of the term "Outstanding";

(d)     reduce the percentage of the Outstanding Amount of the Notes required to direct the Indenture Trustee to direct the Issuer to sell or liquidate the Collateral pursuant to Section 5.04;

(e)     modify any provision of this Section 9.02 except to increase any percentage specified herein or to provide that certain additional provisions of this Indenture or the Operative Agreements cannot be modified or waived without the consent of the Holder of each Outstanding Note affected thereby;

(f)     modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note on any Payment Date; or

(g)    permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with respect to any part of the Collateral or, except as otherwise permitted or contemplated herein, terminate the lien of this Indenture on any property at any time subject hereto or deprive the Holder of any Note of the security provided by the lien of this Indenture.

The Indenture Trustee may rely on an Opinion of Counsel (at the expense of the party requesting the supplemental indenture) regarding whether or not any Notes would be affected by any supplemental indenture and any such determination shall be conclusive upon the Holders of all Notes, whether theretofore or thereafter authenticated and delivered hereunder.

In connection with requesting the consent of the Noteholders or Shareholders pursuant to this Section, the Issuer (or the Depositor pursuant to the Administration Agreement) shall mail to the Holders of the Notes or the Shareholders, as applicable, at the address furnished for such purpose by the Note Registrar, in the case of the Noteholders, or at the address set out in the Register of Members, in the case of the Shareholders, to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture.  It shall not be necessary for any Act of Noteholders or any written consent of Shareholders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act or written consent shall approve the substance thereof.

Section 9.03.  <u>Execution of Supplemental Indentures</u>.  In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive, and subject to Sections 6.01 and 6.02, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture and all conditions precedent thereto have been satisfied.  The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Nothing in this Section 9.03 shall be construed to require that any Person obtain the consent of the Indenture Trustee to any amendment or waiver or any provision of any document where the making of such amendment or the giving of such waiver without obtaining the consent of the Indenture Trustee is not prohibited by this Indenture or by the terms of the document that is the subject of the proposed amendment or waiver.

Section 9.04.  <u>Effect of Supplemental Indenture</u>.  Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer, the Co-Issuer, the Holders of the Notes and any Shareholders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05. <u>Reference in Notes to Supplemental Indentures</u>. Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article IX may, and if required by the Indenture Trustee shall, bear a notation in form approved by the Indenture Trustee as to any matter provided for in such supplemental indenture. If the Issuer, the Co-Issuer or the Indenture Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and the Co-Issuer, as applicable, and authenticated and delivered by the Indenture Trustee in exchange for Outstanding Notes.

ARTICLE X
[RESERVED]

ARTICLE XI
MISCELLANEOUS

Section 11.01. <u>Compliance Certificates and Opinions, etc.</u>

(a)     Upon any application or request by the Issuer to the Indenture Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee (x) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with and (y) an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opinion need be furnished. Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(i)     a statement that each signatory of such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(ii)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(iii)     a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation as is necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(iv)     a statement as to whether or not, in the opinion of each such signatory, such condition or covenant has been complied with.

Section 11.02. <u>Form of Documents Delivered to Indenture Trustee</u>. In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person

may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such officer's certificate or opinion is based are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Seller, stating that the information with respect to such factual matters is in the possession of the Seller, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee, it is provided that the Issuer or the Co-Issuer shall deliver any document as a condition of the granting of such application, or as evidence of the Issuer's or the Co-Issuer's, as applicable, compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such application or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such document shall in such case be conditions precedent to the right of the Issuer to have such application granted or to the sufficiency of such certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 11.03.  Acts of Noteholders.

(a)     Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as herein otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuer.  Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner provided in this Section.

(b)     The fact and date of the execution by any person of any such instrument or writing may be proved in any manner that the Indenture Trustee deems sufficient.

(c)     The ownership of Notes shall be proved by the Note Register.

(d)     Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Notes shall bind the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee, the Issuer or the Co-Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 11.04.  Notices, etc. to Indenture Trustee, Issuer, Co-Issuer, Rating Agency and Shareholders.  Any request, demand, authorization, direction, notice, consent, waiver or Act of the Noteholders or consent of the Shareholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or Act of the Noteholders or consent of the Shareholders is to be made upon, given or furnished to or filed with:

(a)     The Indenture Trustee by any Noteholder, any Shareholder or by the Issuer or the Co-Issuer shall be sufficient if made in writing and given, furnished or filed to or with the Indenture Trustee's corporate trust office for purposes of presentment and surrender of the Notes for the final payment thereon and, for transfers and exchanges of the Notes is located at 60 Livingston Avenue, St. Paul, Minnesota 55107, and for all other purposes is located at U.S. Bank National Association, One Federal Street, Third Floor, Boston, Massachusetts 02110, Attention: Structured Finance — SASCO 2007-BC2, or any other address that the Indenture Trustee may designate from time to time by notice to the Noteholders

(b)     The Issuer by the Indenture Trustee or by any Noteholder or Shareholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Issuer addressed to:  SASCO NIM COMPANY 2006-NC1, in care of Walkers SPV Limited, Walker House, 87 Mary Street, George Town, Grand Cayman KY1 9002, Cayman Islands, or at any other address previously furnished in writing to the Indenture Trustee by the Issuer or the Administrator.  The Issuer shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee.

(c)     The Co-Issuer by the Indenture Trustee or by any Noteholder or Shareholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Co-Issuer addressed to:  SASCO ARC Corporation, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, or at any other address previously furnished in writing to the Indenture Trustee by the Co-Issuer or the Administrator.

(d)     Any notice required to be given to the Seller or Lehman Brothers Inc. pursuant to Section 6.07 shall be sufficient for every purpose hereunder if in writing and delivered by first-class mail, postage prepaid, overnight courier or facsimile to such parties addressed to: Structured Asset Securities Corporation, 745 Seventh Avenue, 7th Floor, New York, New York 10019, Attention: Mortgage Backed Securities-Finance, fax no. (212) 526-8950.

(e)     Notices required to be given to the Rating Agency by the Issuer or the Indenture Trustee shall be in writing, personally delivered or mailed by certified mail, return receipt

requested by overnight courier or facsimile, if to S&P: Standard & Poor's Ratings Services, 55 Water Street, New York, New York 10041, fax no. (212) 438-2661.

Section 11.05.  Notices to Noteholders or Shareholders; Waiver.  Where this Indenture provides for notice to Noteholders or Shareholders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) if in writing and delivered by first-class mail, postage prepaid, overnight courier or facsimile to each Noteholder affected by such event, at his address as it appears on the Note Register, or to each Shareholder affected by such event, at his address as it appears in the Register of Members of the Issuer, in each case not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.  In any case where notice to the Noteholders or Shareholders is given by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder or Shareholder shall affect the sufficiency of such notice with respect to other Noteholders or other Shareholders, and any notice that is mailed in the manner herein provided shall conclusively be presumed to have been duly given.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.  Waivers of notice by the Noteholders or Shareholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to Noteholders or Shareholders when such notice is required to be given pursuant to any provision of this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Section 11.06.  Effect of Headings and Table of Contents.  The Article and Section headings herein and the Table of Contents are for convenience of reference only and shall not affect the interpretation hereof.

Section 11.07.  Successors and Assigns.  All covenants and agreements in this Indenture and the Notes by each of the Issuer and the Co-Issuer shall bind its respective successors and assigns, whether so expressed or not.  All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 11.08.  Severability.  In case any provision in this Indenture or in the Notes shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 11.09.  Benefits of Indenture and Consent of Noteholders or Shareholders. Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders, the Shareholders (but solely with respect to Section 9.02) and any other party secured hereunder, and any other Person with an ownership interest in any part of the Collateral, any benefit or any legal or equitable

right, remedy or claim under this Indenture. Each Noteholder and Note Owner, by acceptance of a Note or, in the case of a Note Owner, a beneficial interest in a Note, consents to and agrees to be bound by the terms and conditions of this Indenture.

Section 11.10. <u>Legal Holidays</u>. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 11.11. <u>Governing Law</u>. THIS INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 11.12. <u>Counterparts</u>. This Indenture may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 11.13. <u>Recording of Indenture</u>. If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel at its expense (which may be counsel to the Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 11.14. <u>Obligations</u>. No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Co-Issuer or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or the Co-Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, the Co-Issuer or the Indenture Trustee or of any successor or assign of the Indenture Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee has no such obligations in its individual capacity) and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity.

Section 11.15. <u>No Petition</u>. The Indenture Trustee, by entering into this Indenture, and each Noteholder, by its acceptance of a Note, hereby covenant and agree that they will not at any time institute against the Depositor, or join in any institution against the Depositor, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection

with any obligations relating to the Notes, this Indenture or any of the other Operative Agreements.

The Indenture Trustee, by entering into this Indenture, and each Noteholder, by accepting a Note, hereby covenant and agree that they will not at any time institute against the Issuer or the Co-Issuer, or join in any institution against the Issuer or the Co-Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state or Cayman Islands bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the other Operative Agreements.

Section 11.16.  <u>Inspection</u>.  The Issuer agrees that, on reasonable prior notice, it will permit any representative of the Indenture Trustee during the Issuer's normal business hours, to examine all the books of account, records, reports and other papers of the Issuer, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuer's affairs, finances and accounts with the Issuer's officers, employees, and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested.  The Indenture Trustee shall and shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee may reasonably determine that such disclosure is consistent with its obligations hereunder.

Section 11.17  <u>Agreements of Noteholders</u>.  Each Noteholder, by accepting a Note, hereby acknowledges and agrees that, to the extent that such Noteholder is deemed to have an interest in any asset of the Issuer that was pledged to secure any other debt obligation of the Issuer:

(a)    the interest of such Noteholder in such asset is subordinate to the claims or rights of any holder of such other debt obligation; and

(b)    this Indenture constitutes a subordination agreement for purposes of Section 510(a) of the Bankruptcy Code.

[Signature page follows]

IN WITNESS WHEREOF, the Issuer, the Co-Issuer, and the Indenture Trustee have caused this Indenture to be duly executed by their respective officers or attorneys, thereunto duly authorized and duly attested, all as of the day and year first above written.

Executed as a deed by
SASCO NIM COMPANY 2006-NC1

By: _____
    Name: Darius Kingsley
    Title: Attorney – in – Fact

SASCO ARC CORPORATION

By: _____
    Name:  Ellen V. Kiernan
    Title:   Senior Vice President

U.S. BANK NATIONAL ASSOCIATION,
    as Indenture Trustee

By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the Issuer, the Co-Issuer, and the Indenture Trustee have caused this Indenture to be duly executed by their respective officers or attorneys, thereunto duly authorized and duly attested, all as of the day and year first above written.

Executed as a deed by
SASCO NIM COMPANY 2006-NC1

By: _____
    Name:
    Title: Attorney – in – Fact


SASCO ARC CORPORATION

By: _____
    Name:  Ellen V. Kiernan
    Title:   Senior Vice President


U.S. BANK NATIONAL ASSOCIATION,
    as Indenture Trustee


By: _____
    Name:
    Title:

IN WITNESS WHEREOF, the Issuer, the Co-Issuer, and the Indenture Trustee have caused this Indenture to be duly executed by their respective officers or attorneys, thereunto duly authorized and duly attested, all as of the day and year first above written.

Executed as a deed by
SASCO NIM COMPANY 2006-NC1

By:_____

    Name:
    Title: Attorney – in – Fact


SASCO ARC CORPORATION


By:_____

    Name:  Ellen V. Kiernan
    Title:   Senior Vice President


U.S. BANK NATIONAL ASSOCIATION,
    as Indenture Trustee


By:_____

    Name:    James H. Byrnes
    Title:     Vice President

Solely for the purposes of Section 6.07,
accepted and agreed to by:

LEHMAN BROTHERS INC.

By: _____
    Name: Michael Hitzmann
    Title:  Senior Vice President

Solely for the purposes of Section 6.07,
accepted and agreed to by:

STRUCTURED ASSET SECURITIES CORPORATION

By: _____
    Name: Ellen V. Kiernan
    Title:  Senior Vice President

DISTRICT OF COLUMBIA              )
                                 )
                                 )

BEFORE ME, the undersigned authority, a Notary Public in and for said county and state, on
this day personally appeared DARIUS KINGSLEY , and signed before me the foregoing
instrument and acknowledged to me that the same was the act of the said SASCO NIM
COMPANY 2006-NC1, a Cayman Islands company, and that such person executed the same as
the act of the said company for the purpose and consideration therein expressed, and in the
capacities therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 20th day of October 2006

_____
Notary Public in and for the District of Columbia

My commission expires:

SUZANNE W. RHODES
Notary Public, District of Columbia
My Commission Expires July 14, 2011

202095 SASCO NIM 2006-NC1
Indenture

STATE OF ___Massachusetts___ )

COUNTY OF ___SUFFOLK___ )

BEFORE ME, the undersigned authority, a Notary Public in and for said county and state, on this day personally appeared __James H. Byrnes__ , known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of U.S. BANK NATIONAL ASSOCIATION, a national banking association, and that such person executed the same as the act of said corporation for the purpose and consideration therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 19 day of October 2006



WINNIE L. CHEN
Notary Public
Commonwealth of Massachusetts
My Commission Expires March 26, 2010

_____
Notary Public in and for the State of ___Massachusetts___

WINNIE L. CHEN
My commission expires:
MARCH 26, 2010

202095 SASCO NIM 2006-NC1
Indenture

STATE OF _New York_ )
                                    )
COUNTY OF _New York_ )

BEFORE ME, the undersigned authority, a Notary Public in and for said county and state, on this day personally appeared ~~Ellen Brown~~ , known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of SASCO ARC CORPORATION, a Delaware corporation, and that such person executed the same as the act of said corporation for the purpose and consideration therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _____ day of October 2006

_Tamara L. Ervin_
Notary Public in and for the State of _NY_

TAMARA L. ERVIN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01ER6149184
Qualified in New York County
My Commission Expires July 03, 2010

My commission expires:

_____

202095 SASCO NIM 2006-NC1
Indenture