# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

September 8, 2017

**VIA EMAIL AND ECF**

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:    _In re Lehman Brothers Holdings Inc., et al._, Ch. 11 Case No. 08-13555 (SCC)

Dear Judge Chapman:

I am counsel to Lehman Brothers Holdings Inc. ("Lehman," or the "Plan Administrator").  I write to raise two issues, to respond to the September 7, 2017 letter of Michael S. Shuster ("September 7 Letter"), and to request a discovery and pre-trial conference with the Court.

On August 30, the Court held a scheduling conference.  The Court granted the Trustees' request for a one-week continuance of the estimation hearing, from October 16 to October 23.  During this conference, the Trustees indicated that they understood that the Court's schedule was carefully calibrated to accommodate an October trial date, and would endeavor in good faith to work toward an October 23 trial date.  Based on the September 7 Letter, it appears that the Trustees have already decided to abandon that commitment.  Unfortunately, that decision and another significant issue that has arisen since the August 30 conference require the Court's intervention.

First, the Trustees' have made unjustified requests either to strike portions of the expert report of Charles Grice or, in the alternative, to adjourn the hearing indefinitely based on information that they requested (which they were not entitled to under Exhibit G) relating to Mr. Grice's work on this matter.  Second, although the Trustees previously agreed to produce their primary witness through which they are presenting their claims, Mr. James Aronoff, on September 20, 2017, the Trustees are now refusing to produce him until they take Mr. Grice's deposition in mid-October. Finally, the Trustees have refused to disclose information central to the opinion of the Hon. Robert S. Smith regarding the supposedly detailed consideration the Trustees gave to the October 2015 settlement agreement between the Plan Administrator and the Institutional Investors.  As the parties are at an impasse regarding these issues, the Plan Administrator respectfully requests a conference as soon as the Court's schedule permits.[1]

---

[1] The Plan Administrator is mindful of the Court's rule that requests for a conference shall be less than two pages, however, the Plan Administrator respectfully requests it be permitted to exceed that limit given that it is jointly filing a response to the Trustees' letter and making additional requests necessitating a need for a conference.

Production of Grice Narratives

The Plan Administrator is surprised that the production of information that the Trustees requested has prompted such an extreme reaction.  The Plan Administrator produced additional information from Mr. Grice's review of the same loan files that the Trustees reviewed and asserted claims on in the Protocol, so it is difficult for the Plan Administrator to understand any prejudice.  In fact, if there is any prejudice, it is  because the Trustees' process for asserting claims in the Protocol was so defective that they now cannot respond to facts contained in the underlying loan files (which have been identified by Mr. Grice since early July) that demonstrate the weakness of their claims without an indefinite adjournment of the trial deadline.

For background, on June 1, the Plan Administrator disclosed the expert report of Charles Grice. Mr. Grice provided an opinion regarding the parties' processes and positions, based in part upon his review of 1,879 Breach Claims (the "Grice Breach Claims").  Although Mr. Grice disclosed his findings as to whether he agreed with the Plan Administrator's conclusion on these Breach Claims as part of his opinion regarding the parties' processes and positions, he did not conduct a review of loans or breaches for the purposes of developing a pool-wide breach rate.  Mr. Grice did discuss in detail in his opening report his conclusions regarding certain "exemplar loans" that he reviewed, as did Mr. Aronoff in his report.

Contrary to the Trustees' claims, Mr. Grice was not required to disclose the materials that were produced on September 1, which are short summaries of his analysis regarding some of the Grice Breach Claims, in his opening report.  Mr. Grice was only required to disclose the loan files that he "relied upon" in reaching his conclusions and that formed the basis of his opinion as to the parties' processes and positions in the Protocol, which he did on June 1.  (Exhibit G(III).)  After the Trustees requested more detail on Mr. Grice's review, on July 5, the Plan Administrator provided the bates numbers of documents that Mr. Grice and his team viewed as particularly relevant to his conclusions in an effort to avoid the delay and disruption that would be occasioned by litigating a discovery dispute.  On July 27, the Trustees responded to 1,151 of the Grice Breach Claims through Mr. Aronoff's rebuttal report.

The Trustees' now claim that the Plan Administrator's September 1 production severely prejudices them.  The Trustees ask the Court to either strike Mr. Grice's opinions about the 1,151 Grice Breach Claims entirely, or for an indefinite adjournment of the trial date while they undergo a "six to eight week" project to re-review each loan file.  (September 7 Letter, at 2.) The Trustees, however, cannot articulate any basis for why these materials were required to be produced on June 1, nor any prejudice that would require upsetting the carefully calibrated trial date in this case.

The information that the Plan Administrator produced on September 1 was not required to be disclosed by Exhibit G.  Instead, it merely reflects additional information about the Breach Claims identified in Mr. Grice's June 1 report.  Had the Trustees believed that these materials were required to be produced along with Mr. Grice's opening report, they should have pressed their request for them after June 1.  Their failure to do so is either a tacit admission that they did not believe Exhibit G required their disclosure, that Mr. Aronoff did not actually need them to respond to Mr. Grice, or an intent to save their objection for a time when it would maximize

disruption to the trial schedule.  Regardless, the Trustees have no basis in Exhibit G for the relief they are seeking now.

Moreover, the September 7 Letter provides no detail on why the Trustees, and the seven review firms retained by them during the Protocol, need "six to eight-week[s]" to review short summaries of Breach Claims on loan files they have already reviewed twice (first in the Protocol, and second during Mr. Aronoff's rebuttal report) prior to Mr. Grice's deposition on September 28.[2]  The Trustees certainly should have no need to perform a re-review of loan files that they have reviewed twice already.  Rather, their characterization of the work required seems designed to justify a further delay of the trial.

Moreover, Exhibit G clearly contemplates that the parties will disclose the exemplar loans they will use at trial by August 28, which the Plan Administrator has done.  The Plan Administrator has not designated the vast majority of the Grice Breach Claims as exemplars at trial.  The notion that the Trustees will need to perform a detailed re-review of each of the Grice Breach Claims in preparation for a trial in which each party is allotted 49 hours of record time is not in keeping with the spirit of this proceeding or consistent with the procedures set forth in Exhibit G.

While the Plan Administrator is willing to offer additional dates for Mr. Grice's deposition in October, the Trustees have provided no basis to strike Mr. Grice from "testifying about these breaches," to delay depositions of their own experts until after Mr. Grice testifies, or for a "further adjournment of the trial." (September 7 Letter, at 2.)

<u>Deposition Scheduling</u>

After exchanging witness availability dates, the Plan Administrator selected September 20 for Mr. Aronoff's deposition.  The Trustees chose September 28 for Mr. Grice.  Yesterday afternoon, the Trustees informed the Plan Administrator that they would no longer produce Mr. Aronoff for a deposition until (1) the Court rules on the issues raised in the September 7 Letter, and (2) until they are allowed to take Mr. Grice's deposition.  The Trustees claim they will not be ready to take Mr. Grice's deposition until mid-October.

The Trustees' second basis for refusing to produce Mr. Aronoff is an obvious attempt to manufacture a justification for an additional adjournment of the trial deadline.  The Trustees have represented that Mr. Aronoff is the witness through which they will primarily present the claims upon which they bear the burden at trial.  Logically, his deposition should come before Mr. Grice's.  In any event, the Trustees have already agreed to produce Mr. Aronoff for deposition on September 20.  At no time before yesterday did the Trustees condition his availability on first taking the deposition of Mr. Grice.

<u>Smith Materials</u>

---

[2] In the two months between opening and rebuttal reports, Mr. Aronoff reviewed 1,151 Grice Breach Claims and prepared a report responding to those Breach Claims, and Mr. Morrow reviewed an additional 856 Breach Claims in connection with his report.  Similarly, reviewers working under the supervision of Mr. Grice reviewed nearly 2,000 Breach Claims within the month between rebuttal and reply reports.  The volume of claims already reviewed by the parties, and the more limited nature of the review that the Trustees would need to do to review the information that was produced on September 1, belies any claim that the Trustees are prejudiced.

On August 28, the Trustees disclosed the expert report of the Hon. Robert S. Smith (the "Smith Report"). The Smith Report seeks to rebut a portion of Daniel Fischel's opinion regarding the economic import of the Institutional Investors' willingness to accept an allowed claim of $2.44 billion in October 2015 (the "October 2015 Settlement"). Central to Judge Smith's criticism of Professor Fischel's opinion is the allegation that "Professor Fischel's analysis of behavior is unjustifiably selective: he largely ignores the behavior of other actors—the Trustees and the LBHI Debtors—that caused the proposed settlement that Institutional Investors accepted in October 2015 to fail, and to be replaced by the present settlement." (Smith Report ¶ 12). Judge Smith goes on to describe the Trustees' behavior, including their "careful consideration" of the expert reports of the Hon. Anthony J. Carpinello, the Hon. Arthur Gonzalez, and Ronald Greenspan of FTI Consulting (the "2015 Expert Reports"). (Smith Report ¶ 15.) Judge Smith concludes that "the behavior of the Trustees is consistent with the view that, as to many Trusts, the proposed October 2015 settlement provided inadequate consideration of the release of the Covered Loan Claims." Having placed the Trustees' behavior and the bases for that behavior squarely at issue in this proceeding, the Plan Administrator is entitled to review the reports that provided support for that behavior.

On September 1, in response to these portions of the Smith Report, the Plan Administrator asked that the Trustees provide the 2015 Expert Reports. The Trustees refused because "Judge Smith purportedly only relied upon the Notice Providing Further Information About The Proposed RMBS Trust Settlement Agreement dated April 21, 2017, which contains a description of the October 2015 settlement offer and the RMBS Trustees' evaluation of it." (*See* Exhibit A, Letter from Michael S. Shuster to Todd G. Cosenza, September 6, 2017.)

The Trustees' position is contorted. The Trustees have placed their own behavior, including their decision-making with respect to the settlements, squarely at-issue. Thus, the Plan Administrator is entitled to the analysis underlying the 2015 Expert Reports (which purportedly conclude that the October 2015 Settlement was "inadequate"). Judge Smith has opined that the Trustee's determination to reject the October 2015 Settlement was "careful" and superior to the decision of the Institutional Investors to accept that same Settlement. Yet, despite Judge Smith's discussion of the 2015 Expert Reports, the Trustees have refused to allow the Plan Administrator the ability to evaluate that analysis and test Judge Smith's opinion on the reliability and significance of the 2015 Expert Reports. The Plan Administrator cannot fairly rebut Judge Smith's opinion that the Trustees gave "careful consideration" to the October 2015 Settlement and properly concluded that the $2.44 billion offer was inadequate — or that their decision-making benefited from accurate information and meaningful analysis that was not available to the Institutional Investors — without having immediate access to those reports.

The Plan Administrator requests that the Court order the Trustees to produce the 2015 Expert Reports and produce Mr. Aronoff on September 20, and to deny the relief requested in the September 7 Letter. The Plan Administrator is available for a conference at the Court's convenience.

Respectfully submitted,

Todd G. Cosenza

cc: All counsel (*via* email)

(Enclosures)

## Exhibit A

# HOLWELL SHUSTER & GOLDBERG LLP

*750 Seventh Avenue, 26th Floor*
*New York, New York 10019*
*Tel: (646) 837-5151*
*Fax: (646) 837-5150*
*www.hsgllp.com*

*Michael S. Shuster*
*646-837-5153*
*mshuster@hsgllp.com*

September 6, 2017

**<u>VIA EMAIL</u>**

Todd Cosenza
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019

*Re:       In re Lehman Brothers Holdings Inc. RMBS Claims Estimation Hearing*

Dear Todd:

      We write on behalf of the RMBS Trustees in response to your letter dated September 1, 2017 regarding the Expert Report of Robert S. Smith.  There is no "glaring issue" with respect to the materials on which Judge Smith relied to draw conclusions regarding the October 2015 settlement offer.  As the RMBS Trustees disclosed on August 28, 2017, Judge Smith relied upon the Notice Providing Further Information About The Proposed RMBS Trust Settlement Agreement dated April 21, 2017, which contains a description of the October 2015 settlement offer and the RMBS Trustees' evaluation of it.  That Notice is publicly available at http://www.lbhirmbssettlement.com/2d_Notice.pdf, and has been for several months now.

      The RMBS Trustees reserve all rights.

Very Truly Yours,

Michael S. Shuster

cc:       All counsel (via email)