# HOLWELL SHUSTER & GOLDBERG LLP

*750 Seventh Avenue, 26th Floor*
*New York, New York 10019*
*Tel: (646) 837-5151*
*Fax: (646) 837-5150*
*www.hsgllp.com*

September 11, 2017

**VIA EMAIL AND ECF**

Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

*Re:    In re Lehman Brothers Holdings Inc. RMBS Claims Estimation Proceeding*

Dear Judge Chapman:

    We write on behalf of the RMBS Trustees to respond to the Plan Administrator's letter dated September 8, 2017 regarding the Trustee's request for relief concerning the Plan Administrator's thirteenth-hour disclosure of the bases for Mr. Grice's opinions, and the issues raised regarding deposition scheduling and Judge Robert S. Smith's expert report disclosures. The Trustees respectfully request that the Court consider this letter in its consideration of the parties' disputes.

## Mr. Grice's Untimely Disclosures

    The Plan Administrator's position is improper and fundamentally inconsistent with the express terms of Exhibit G, which largely adopts the requirements for expert disclosure set forth in Rule 26 of the Federal Rules, namely, a statement of the experts' opinions, the basis for those opinions and the materials the experts relied on to form those opinions. (Compare Fed. R. Civ. P. 26(a)(2) with Ex. G, III.ii.) Rule 37 of the Federal Rules, made applicable through Federal Rules of Bankruptcy Procedure 7037 and 9014 further provide that where "a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Applying those standards to determine whether preclusion is appropriate, courts consider factors including (1) justification for the omission, (2) the importance of the undisclosed opinion, (3) the prejudice that the undisclosed opinion would cause to the opposing party, and (4) the possibility of a continuance. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (*citing Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006)). Such sanctions are routinely imposed. *See, e.g., Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at \*4-5 (S.D.N.Y. Dec. 18, 2009) (precluding expert's untimely disclosure that merely rehashe[d] the conclusions reached in [the expert's] opening report" but "cite[d] testing that purportedly support[ed] the conclusion," which "could [] have [been] conducted … before his initial report was drafted").

    The Plan Administrator's untimely disclosures of the bases of Mr. Grice's opinions are neither substantially justified nor harmless.

In his initial report Mr. Grice states that he agrees with the Plan Administrator's rejection of the Trustees' breach findings in virtually all of the breach findings he reviewed, but he provides no statement of the bases for his conclusions. Instead, the Plan Administrator provided a breach finding by breach finding statement of the bases for Mr. Grice's position for the first time on September 1, 2017, three months after initial expert reports were due and several days after the expert reporting period ended pursuant to this Court's Order. The Plan Administrator did so in a submission to the Court without prior notice to the Trustees. The Plan Administrator's letter concedes as much, stating that Mr. Grice's affirmative report "disclosed his findings as to whether he agreed with the Plan Administrator's conclusions" with respect to the breaches that he reviewed and that the September 1 submission "reflects additional information about the Breach Claims identified in Mr. Grice's June 1 report." (Letter at 1; *see also* Sept. 7 email from Cosenza at Ex. A ("We will not agree to withdraw these appendices *as they are part of the expert report*.").)

The Plan Administrator's letter does not attempt to deny or justify this conduct, nor could it. Rather, the Plan Administrator argues that "had the Trustees believed that these materials were required to be produced along with Mr. Grice's opening report, they should have pressed their request for them after June 1." (*Id.*) We do not understand the Plan Administrator's basis for this statement considering that the Trustees did demand a statement of the bases for Mr. Grice's opinions repeatedly, beginning on June 12, 2017. (June 12 Letter from Shuster at 2, at Ex. B.) The Plan Administrator has acknowledged these demands, and responded, as it does now, by stating (incorrectly) that "we disagree" that Exhibit G requires the production of "the basis for the conclusions they [Messrs. Grice and Castro] reached." (July 5 Letter from Cosenza at 2-3, at Ex. C; *see also* Ex. A ("You have been demanding this very information.").) Rather than burden the Court with these disputes, the Trustees obtained what information they could (an incomplete and belated list of documents on with Mr. Grice purported to rely five weeks after such disclosures were required), relied on the good faith of the Plan Administrator in maintaining its position that its disclosures were complete, and prepared to litigate their case accordingly.

The Plan Administrator's last-minute reconsideration of the scope of Mr. Grice's reports belies its position that the disclosures are unimportant. If these disclosures were neither required nor important, then why submit them to the Court now or withhold them from scrutiny by the Trustees' experts during the expert disclosure period?

The prejudice to the Trustees from the Plan Administrator's gamesmanship is obvious and substantial. Had the Plan Administrator provided the bases for Mr. Grice's opinions on a timely basis, the Trustees' experts would have had an opportunity to challenge them in rebuttal, or at a minimum, in reply reports. But as the record currently stands, Mr. Grice has been permitted to submit unrebutted disclosures. And with only a month to go before the hearing, the Trustees face the daunting task of evaluating Mr. Grice's explanation for his opposition on over 1,100 breaches in the time left before the hearing. Even if it were possible to accomplish that project given what the Plan Administrator's counsel recently described to the Court as the Herculean task of completing depositions and preparing for the hearing, it would be an enormous and distracting undertaking that the Trustees should not be saddled with now. In these circumstances, the case law is clear, either the Plan Administrator should not be allowed to use this information or the possibility of a continuance should be considered. *See Design Strategy, Inc.*, 469 F.3d at 296. That is precisely what the Trustees requested.

### Deposition Scheduling

The Plan Administrator's complaints regarding deposition scheduling are not well taken. The Trustees offered Mr. Aronoff for deposition on September 20 prior to receiving additional and untimely disclosures with respect to Mr. Grice's review of over 1,100 breaches. Fairness demands that if the Grice amendment is permitted, the Trustees be given the opportunity to prepare the applicable witnesses to rebut those disclosures at deposition. It is simply unrealistic for Mr. Aronoff to do that by September 20. With respect to the deposition order, while negotiating Exhibit G, the Plan Administrator insisted that it present its case first, despite the fact that the estimation hearing concerns the Trustees' claims. Having done so, it cannot now insist that all of the Trustees' key witnesses sit for depositions before the Plan Administrator's corresponding affirmative experts are deposed. On that front, we note that at the time the parties conferred with the Court regarding the continuance, the Plan Administrator's other key witness, Mr. Castro, was purportedly available from September 11 to September 30, and the Trustees selected September 12, only to have the Plan Administrator then refuse to produce Mr. Castro on September 12 without any justification and instead offer dates in early October. (*See* Ex. D.)

### The Plan Administrator's Improper Request for the Trustees' Work Product

The Plan Administrator's attempt to seek the Trustees' work product with respect to its October 2015 settlement offer is improper, and again, misstates the record. The Plan Administrator claims that the Trustees have "placed their own behavior, including their decision-making with respect to the settlements, squarely at-issue." (Letter at 4.) But it is the Plan Administrator that has put other settlements, including the October 2015 offer, at issue. The Trustees' position throughout has been that these settlements are irrelevant in light of the upcoming hearing on the merits, as provided by Exhibit G. Judge Smith's reply report to Mr. Fischel's report merely states what counsel for the Plan Administrator told this Court in support of its 9019 motion. (July 6, 2017 Hearing Transcript, at 15:18-23 at Ex. E ("The [2015] agreement was presented to the trustees who engaged multiple experts to assist in evaluating that settlement proposal; however, the trustees told the plan administrator that an insufficient number of trusts would accept a settlement so the plan administrator withdraw [sic] the settlement agreement.").)

The only thing Judge Smith has done is to draw inferences from the same set of facts that the Plan Administrator put before this Court, which Judge Smith obtained (as properly and timely disclosed by the Trustees) from the Notice Providing Further Information About the Proposed RMBS Trust Settlement Agreement dated April 21, 2017. (Letter Ex. A.[1]) If the Plan Administrator thinks the disclosures in the Notice are an inappropriate basis for the conclusions Judge Smith reached, the Plan Administrator is welcome to press that position at Judge Smith's deposition and at the hearing. That theory does not entitle the Plan Administrator to work product-protected reports that Judge Smith neither received nor relied on.

---

[1] The Plan Administrator misquotes my September 6, 2017 letter, stating that the Trustees refused to provide the 2015 reports because "'Judge Smith *purportedly only* relied on the Notice....'" In that letter, I stated unequivocally that "Judge Smith relied upon the Notice" as the basis for the opinions in question. (Letter, Ex. A.)

Respectfully submitted,

Michael S. Shuster

cc:    All counsel (via email)

# EXHIBIT A

| | |
|---|---|
| **From:** | Cosenza, Todd |
| **To:** | Michael Shuster; Waisnor, Jonathan D.; Neil R. Lieberman; Franklin H. Top III; Scott A. Lewis; Weitnauer, Kit; Solomon, Jason; Sigler, Sage; Munno, M. William; Guzman, Daniel; JPM.Kraut, Michael; Moore, James O.; anna.goldenhersh@morganlewis.com; Dorit Ungar Black; Daniel P. Goldberg; Dwight Healy; Lani A. Perlman; Drebsky, Dennis |
| **Cc:** | Yanez, Antonio; McCallen, Benjamin; Davis, Joseph; Ndau, Orton; Watson, Leah; DiSpirito, Genevieve M. |
| **Subject:** | RE: In re Lehman Brothers - RMBS Estimation Proceeding |
| **Date:** | Thursday, September 7, 2017 9:57:00 AM |

Michael,

Thank you for your email. We are still analyzing the documentation you submitted to the Court. However, we don't see how you can represent, without having consulted with us, that materials labeled "Breach Support Documentation" contain all documents relevant to review of the claim or the defenses.

Your objection to our production of the Grice appendices is not well taken. You have been demanding this very information. We hardly think that it is "beyond the pale" for us to produce to you information that you requested, well in advance of Mr. Grice's deposition. As we told you on our meet and confer two weeks ago, our review and production of these supporting materials has been delayed because of the Trustees' now largely disproven claims of supposedly hundreds of erroneous "defects" in Mr. Grice's initial Appendix E, and their failure to provide the complete bates mapping information we requested on June 1, which in fact we still do not have. We provided the appendices to you and the Court simultaneously. We will not agree to withdraw these appendices as they are part of the expert report.

All rights are reserved.

Regards,
Todd

**Todd G. Cosenza**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8677 | Fax: +1 212 728 9677
tcosenza@willkie.com | vCard | www.willkie.com bio

**From:** Michael Shuster [mailto:mshuster@hsgllp.com]
**Sent:** Wednesday, September 06, 2017 6:09 PM
**To:** Waisnor, Jonathan D. <JWaisnor@willkie.com>; Neil R. Lieberman <nlieberman@hsgllp.com>; Franklin H. Top III <top@chapman.com>; Scott A. Lewis <slewis@chapman.com>; Weitnauer, Kit <Kit.Weitnauer@alston.com>; Solomon, Jason <Jason.Solomon@alston.com>; Sigler, Sage <Sage.Sigler@alston.com>; Munno, M. William <munno@sewkis.com>; Guzman, Daniel <guzman@sewkis.com>; JPM.Kraut, Michael <mkraut@morganlewis.com>; Moore, James O. <james.moore@morganlewis.com>; anna.goldenhersh@morganlewis.com; Dorit Ungar Black <dblack@hsgllp.com>; Daniel P. Goldberg <dgoldberg@hsgllp.com>; Dwight Healy

<dhealy@hsgllp.com>; Lani A. Perlman <lperlman@hsgllp.com>; Drebsky, Dennis
<ddrebsky@nixonpeabody.com>
**Cc:** Cosenza, Todd <TCosenza@willkie.com>; Yanez, Antonio <ayanez@willkie.com>; McCallen,
Benjamin <BMcCallen@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; Ndau, Orton
<ONdau@willkie.com>; Watson, Leah <LWatson@willkie.com>; DiSpirito, Genevieve M.
<GDiSpirito@willkie.com>
**Subject:** Re: In re Lehman Brothers - RMBS Estimation Proceeding

Todd, I have had no response to my email.  We intend to seek relief from the Court.

Michael Shuster
Holwell Shuster & Goldberg LLP
750 Seventh Avenue, 26th Floor
New York, NY 10019
(646) 837-5153 (office)
(914) 715-6623 (mobile)
www.hsgllp.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for
the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication
is prohibited. If you believe that you have received this email in error, please notify the sender
immediately and delete it from your system.

On Sep 5, 2017, at 5:51 PM, Michael Shuster <mshuster@hsgllp.com> wrote:

Todd –

I write in response to your request that the Trustees withdraw their submission of
the Breach Support Documentation that they provided to the Court along with
their expert reports.  This documentation consists of the claim file packages for
the exemplar loans cited in Mr. Aronoff's reports, along with any document cited
by either party's experts with respect to the exemplar loans.  The documents thus
were not "cherry-picked" as your letter suggested, nor was the Plan Administrator
prejudiced by their submission to the Court – the Plan Administrator has had
these files since they were submitted during the Protocol process.  Nevertheless,
the RMBS Trustees will withdraw the submissions subject to the parties'
negotiations regarding the submission of exemplar loan materials and will write to
the Court tomorrow to inform the Court.

Meanwhile, on Friday, the Plan Administrator provided the Court with
Appendices D to Mr. Grice's Rebuttal and Reply Reports, which contain "review
narratives" that had not been previously provided to the RMBS Trustees and
additional citations to documents that were not reflected in earlier versions of
these appendices.  Providing this material for the first time after Reply reports
were submitted and only in a submission to the Court is beyond the pale.  These

late disclosures severely prejudice the RMBS Trustees and we demand that the Plan Administrator withdraw them and agree that the added material will not otherwise be presented by Mr. Grice.  Please advise me of your client's position immediately.

Regards,

Mike


**From:** Waisnor, Jonathan D. [mailto:JWaisnor@willkie.com]
**Sent:** Friday, September 1, 2017 1:50 PM
**To:** Neil R. Lieberman <nlieberman@hsgllp.com>; Franklin H. Top III <top@chapman.com>; Scott A. Lewis <slewis@chapman.com>; Weitnauer, Kit <Kit.Weitnauer@alston.com>; Solomon, Jason <Jason.Solomon@alston.com>; Sigler, Sage <Sage.Sigler@alston.com>; Munno, M. William <munno@sewkis.com>; Guzman, Daniel <guzman@sewkis.com>; .JPM.Kraut, Michael <mkraut@morganlewis.com>; Moore, James O. <james.moore@morganlewis.com>; anna.goldenhersh@morganlewis.com; Dorit Ungar Black <dblack@hsgllp.com>; Daniel P. Goldberg <dgoldberg@hsgllp.com>; Dwight Healy <dhealy@hsgllp.com>; Michael Shuster <mshuster@hsgllp.com>; Lani A. Perlman <lperlman@hsgllp.com>; Drebsky, Dennis <ddrebsky@nixonpeabody.com>
**Cc:** Cosenza, Todd <TCosenza@willkie.com>; Yanez, Antonio <ayanez@willkie.com>; McCallen, Benjamin <BMcCallen@willkie.com>; Davis, Joseph <JDavis@WILLKIE.COM>; Ndau, Orton <ONdau@willkie.com>; Watson, Leah <LWatson@willkie.com>; DiSpirito, Genevieve M. <GDiSpirito@willkie.com>
**Subject:** In re Lehman Brothers - RMBS Estimation Proceeding

Counsel:

Please find attached correspondence from Todd G. Cosenza.

**Jonathan D. Waisnor**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8597 | Fax: +1 212 728 9597
jwaisnor@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT B

# HOLWELL SHUSTER & GOLDBERG LLP

*750 Seventh Avenue, 26th Floor*
*New York, New York 10019*
*Tel: (646) 837-5151*
*Fax: (646) 837-5150*
*www.hsgllp.com*

*Michael Shuster*
 *646-837-5153*
 *mshuster@hsgllp.com*

June 12, 2017

**VIA EMAIL**

Todd Cosenza
Wilkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Re:    *In re* Lehman Brothers Holdings, Inc., No. 08-13555 (Bankr. S.D.N.Y.)

Dear Todd:

We write on behalf of the RMBS Trustees with respect to deficiencies in the expert disclosures of Bradford Cornell, Daniel Castro and Charles Grice (the "Cornell Report," "Castro Report," and the "Grice Report" respectively). As you know, Exhibit G requires that each expert witness report contain "the facts or data relied upon by the witness in forming any [] opinions and, to the extent the witness' opinions include or rely upon the results of any quantitative calculations or estimates," their reports are to contain "the underlying data and all formulae, macros and any other information necessary to allow the opposing party to reproduce such quantitative calculations or estimates." (Ex. G, III.ii). The Cornell Report, Castro Report, and Grice Report each, as set forth in more detail below, fail to provide such underlying information.

## The Cornell Report

In his report, Prof. Cornell states, in Table 9 (page 20), that the aggregate claim value for certain claims is $232.6 million (equal to $236.8 million of aggregate purchase price minus $4.2 million of losses due to servicer errors). But, in the report, he does not provide the specific formulas and variables used to determine these amounts, in aggregate or at the loan level. The captions of Table

1

9 and Exhibit D mention two XL files, "Loan_Level_data.xlsx" and "Breach_Level_Data.xlsx". We suspect that these spreadsheets contain specific formulas and variables Prof. Cornell used to arrive at these amounts.

Please provide these two spreadsheets and any other "formulae, macros and [...] other information necessary to allow the [Trustees] to reproduce [Prof. Cornell's] quantitative calculations or estimates."

### The Castro Report

In the Castro Report, Mr. Castro purports to have "reviewed a sample of 380 breach claims" and, in the course of that review, examined "data [that] included macro-economic factors over the life of the loan, including state-level home price indices, LIBOR and mortgage rates, unemployment rates, and state and national GDP figures." (Castro Report ¶¶ 107-08). Although Appendix D lists various "Publicly Available Data" sources. Mr. Castro does not identify which data points he examined for each loan in the 380 breach-claim sample. (Castro Report ¶¶ 107-08). Please provide on a loan-by-loan basis the macro-economic data that Mr. Castro relied upon for his review of the Castro sample. (Ex. G, III.ii.).

Mr. Castro also states that he "made a determination as to whether I felt the Plan Administrator's responses to Claimants' regarding AMA were reasonable" for the 380 breach claims in his sample. (Castro Report ¶ 109). Exhibit 2 lists the breach ID and loan number for each of the 380 loans, but fails to provide the results of Mr. Castro's AMA review. Please provide, on a breach-by-breach basis, the results of Mr. Castro's AMA review that he relied upon in reaching his conclusion.

### The Grice Report

Mr. Grice states that he "audited a subset of the Claimants' Breach Claims and the Plan Administrator's Responses. . . For 1,879 Disputed Breach Claims, my team and I examined the claim, reviewed the Plan Administrator's response, and performed an independent review to determine whether the response provided by the Plan Administrator is substantiated by the evidence." (Grice Report ¶ 83). Appendix E to Mr. Grice's report contains the final conclusion that Mr. Grice reached as to each of the breach claims, but does not contain the information upon which that conclusion is based, *i.e.*, the information upon which he based his conclusion and to which the Trustees are entitled pursuant to Exhibit G. Take, for instance, loan 37479797: the Trustees originally alleged that a qualified appraisal was missing from the file; the Plan Administrator responded but did not specify that it had located the appraisal in the file; and Mr. Grice states that he has found the appraisal, without specifically identifying the document. (Grice Report ¶ 90). The Trustees are entitled to know exactly what Mr. Grice's findings were on each of the 1,879 breach claims that he purports to have reviewed as he relied upon these findings in reaching his conclusions. (Ex. G, III.ii). Please provide the details of Mr. Grice's analysis on a breach-by-breach basis.

2

Given the July 14 deadline for rebuttal reports, the RMBS Trustees demand that the data missing from the Cornell Report, the Castro Report, and the Grice Report be provided immediately.

The Trustees reserve all their rights, including with respect to the use of sampling by Lehman's experts which is the subject of separate correspondence between us, dated June 5, 7, and 12.

Very truly yours,

Michael Shuster

Cc:  All Counsel

3

EXHIBIT C

# WILLKIE FARR & GALLAGHER LLP

TODD G. COSENZA
212 728 8677
tcosenza@willkie.com

787 Seventh Avenue
New York, NY 10019 6099
Tel:   212 728 8000
Fax:   212 728 8111

July 5, 2017

<u>**VIA EMAIL**</u>

Michael S. Shuster
Holwell Shuster & Goldberg
750 Seventh Avenue, 26th Floor
New York, NY 10019

Re:    <u>In re Lehman Brothers Holdings Inc., et al., Ch. 11 Case No. 08-13555 (SCC)</u>

Dear Michael,

     We write in response to your June 30, 2017 letter to the Court, and to the various letters you have sent related to the Trustees' discovery requests and demands for expert-related information. Your letter to the Court was premature and also incorrect, as there was no "impasse" with respect to most of the issues raised in your letter. As explained below, the Plan Administrator intends to produce materials in accordance with the agreements reached in our meet and confer. These materials were not, however, immediately available and took time to collect and organize.

### 1)  May 5, 2017 Discovery Requests

     More than six years after the Trustees' proofs of claim were filed, two and a half years after the beginning of the Protocol, and only months before the estimation hearing in this matter, you served numerous document requests and interrogatories, seeking materials ranging from every document "concerning each Breach Claim or Breach Notice made or sent by LBHI concerning any loan" to "[e]ach [d]ocument concerning government or regulatory inquiries regarding LBHI's mortgage-loan origination and securitization practices[.]" The Trustees have been aware of these categories of documents, literally, for years. If the Trustees believed these materials were relevant, they should have served discovery requests ages ago, or requested from the Court that their production occur as part of the Protocol. The Trustees did neither.

     In addition, as part of their agreement to participate in the upcoming estimation proceeding, the parties engaged in extensive and vigorous negotiations concerning, among other things, pre-hearing procedures, disclosures and the exchange of certain discovery, including expert discovery and the number and timing of fact depositions. The parties agreements on those topics are set forth in detail in Exhibit G. At no time during the negotiations of Exhibit G was there any discussion of document discovery beyond the productions contemplated in connection

with expert reports. Nor would it have made sense for significant discovery requests to be served now: any such discovery should have been exchanged prior to the submission of initial expert reports so that the parties' respective experts could rely on it.

Nevertheless, in an effort to efficiently resolve our disputes and obviate the need for Court involvement, the Plan Administrator agreed to provide various materials responsive to your requests. Specifically, the Plan Administrator will provide the Trustees with the mortgage loan schedules in its possession, custody, and control. Given the volume of these documents, however, the Plan Administrator requests that the Trustees provide a list of the mortgage loan schedules that they are missing, so as to reduce the burden on the Plan Administrator in collecting these materials. The Plan Administrator will also provide the Trustees with the interest calculation on the disputed claims holdback.

In addition, the Trustees have requested all policies and procedures related to any repurchase claims made by or to Lehman. These documents have no relevance to this proceeding. This litigation does not concern Lehman's prior practices concerning the handling of repurchase claims, but rather whether the Trustees have satisfied their burden to show that Lehman has a repurchase obligation with respect to the roughly 73,000 loans that are still at issue in the case.

In any event, the Plan Administrator has identified copies of 2012 policies and procedures for Aurora. The policies and procedures of a non-Debtor, former affiliate of Lehman have no bearing on whether the Trustees can show entitlement to a repurchase of the at-issue loans. Nevertheless, in an effort to resolve this dispute, and without waiving any objections (including all objections at the estimation hearing related to the admissibility or relevance of these materials), the Plan Administrator will produce copies of the 2012 Aurora policies and procedures.

Finally, the Trustees requested the names of "key" individuals involved in repurchase requests made to and by Lehman. The Plan Administrator has previously identified the individual most knowledgeable on these topics at Lehman: Zachary Trumpp. The Trustee has stated its position that this disclosure is inadequate. We disagree. It is unreasonable and inappropriate for the Trustees to demand that the Plan Administrator identify an unspecified number of "key" individuals who could be witnesses for the Trustees. Again, however, in an effort to reach a reasonable compromise and to not burden the Court with this issue, the Plan Administrator is willing to provide a non-exhaustive list of fourteen individuals whose areas of responsibility included repurchase requests made by or to Lehman from 2003 to the present. (*See* Appendix 4). The Plan Administrator requests that the Trustees provide a list of two individuals who have knowledge of the process and procedures for repurchase requests for each Trustee. Surely this reciprocal request should not be objectionable to the Trustees considering the substantial production agreed to by the Plan Administrator and the relevance of this information.

2)  **Expert Materials**

The Trustees request certain information related to the data Castro and Grice reviewed in connection with their breach claim reviews, and the basis for the conclusions they reached. The

Trustees contend that Exhibit G requires the production of this information. Again, we disagree. Nevertheless, the Plan Administrator is willing to provide the following materials: (1) a list of the macroeconomic factors relied upon by Mr. Castro in his review of 380 breach claims (Appendix 1); (2) a list of Bates numbers or descriptions of the documents that Mr. Castro found to be most relevant to his AMA analysis on each of the breach claims (Appendix 2)[1]; and (3) a list of Bates numbers or descriptions of the documents that Mr. Grice found to be particularly relevant for his conclusions on each breach claim, including the relevant underwriting guidelines (Appendix 3).[2]

You also requested (i) clarification of the source of the loan-level data on which Dr. Cornell relied, (ii) identification of certain "paid in full" loans on Table 2 of his report, and (iii) calculation of the servicing error reflected on Table 9 of his report. As to (i) and (iii), the Plan Administrator will confirm that the "MBSData" was sourced from MBSData, LLC, and that the servicing error reflected on Table 9 of his report was calculated as the difference between the total CURRENT_PURCHASE_PRICE of $221,918,449 and the total APPROVED_PURCHASE_PRICE of $217,682,392 on the Mortgage Loans with Compensable Claims. A list of loans responsive to request (ii) will be produced.

You have also requested two excel files ("Loan_Level_data.xlsx" and "Breach_Level_data.xlsx.") that you "suspect . . . contain specific formulas and variables Prof. Cornell" relied upon. The Plan Administrator already provided this information via email/FTP link sent to Neil Lieberman on June 1, 2017. (The Trustees confirmed receipt of these files on June 2, 2017.) To the extent the Trustees did not download that information previously, we have confirmed that the FTP site is still active.

The Plan Administrator is also providing corrected versions of the Grice Report and the June 1, 2017 disclosure of exemplar loans. The only change to both documents is the correction of a typographical error that resulted in exemplar loan number 36817302 being identified by the incorrect loan number 36187302. (*See* Grice Report at 33 n.41.)

In your June 12, 2017 letter related to the methodology that Mr. Castro and Mr. Grice used to determine their breach claim review samples, you claim that my letter of June 7, 2017 "confirmed that neither Mr. Grice nor Mr. Castro used a statistically valid methodology to select the loan review findings that they reviewed in support of their opinions" and "failed to make their selection on a random basis." These statements, and the conclusions that your letter attempts to draw from them regarding the scope of Mr. Grice and Mr. Castro's opinions, are a gross mischaracterization of the June 7 letter. The June 7 letter states that Mr. Grice and Mr.

---

[1]    The Trustees also seek Mr. Castro's AMA conclusions on each breach claim he reviewed. As noted in his report, Mr. Castro concluded that the Trustees failed to meet their burden to establish AMA for 378 of the 380 he reviewed. Mr. Castro is still collecting additional information from the Plan Administrator to complete his review of the remaining two breach claims. Those breach claims are as follows: (1) Loan Number 33576331, Breach Claim 2411560; and (2) Loan Number 40128597, Breach Claim 2438290.

[2]    The excel files containing citations to the supporting documents for the Castro and Grice reports reference documents with Bates stamp prefixes LBHIT6 and LBHIT7. The LBHIT6 documents are documents that were exchanged by the parties in the Protocol, but were not Bates stamped at the time. The LBHIT7 documents are the underwriting guidelines and product profiles relevant to the Trustees breach claims. We will be producing all documents with the Bates stamp prefixes LBHIT6 and LBHIT7.

Castro reviewed a number of loan files, that Exhibit G places no obligation on the Plan Administrator to disclose the methodology by which they selected those loan files for review as part of the exchange of expert reports, and that these loan file reviews do not constitute a "sampling" approach like the approach that the Court rejected in 2014 in favor of the Protocol. Contrary to your letter, Mr. Grice and Mr. Castro are not foreclosed from using their review to draw conclusions regarding the processes and positions taken by the parties as part of the Protocol.

The Plan Administrator continues to reserve all its rights.

Sincerely,

Todd G. Cosenza

cc: All counsel (*via* email)

(Enclosures)

- 4 -

# Appendix 4

| Name |
| --- |
| Scott Drosdick |
| John Baker |
| Scot Osborne |
| Heston Gray |
| Robin Akell |
| Keri Reed |
| Charles Haliburton |
| Brian Minear |
| Jamie Payne |
| Cassie Leet |
| Charles Dix |
| Nicole Mi Young Kim |
| Laura McCann |
| Ron Dooley |

# EXHIBIT D

| | |
|---|---|
| **From:** | Waisnor, Jonathan D. |
| **To:** | Neil R. Lieberman |
| **Cc:** | Michael Rollin; McCallen, Benjamin; Yanez, Antonio; Franklin H. Top III; Scott A. Lewis; Weitnauer, Kit; Solomon, Jason; Sigler, Sage; Munno, M. William; Guzman, Daniel; JPM.Kraut, Michael; Moore, James O.; anna.goldenhersh@morganlewis.com; Dorit Ungar Black; Daniel P. Goldberg; Dwight Healy; Davis, Joseph; Watson, Leah; Michael Shuster; Lani A. Perlman; Drebsky, Dennis; Ndau, Orton; Cosenza, Todd |
| **Subject:** | In re Lehman Brothers Holdings Inc. Estimation Proceeding |
| **Date:** | Friday, August 25, 2017 6:02:33 PM |
| **Attachments:** | 2017.08.25 Letter from Waisnor to Shuster.pdf |

Neil,

Attached please find the disclosures that we agreed to exchange today. Below, please find the dates of availability for depositions for the Plan Administrator's witnesses:

1. Charles Grice is available from September 25 through September 29
2. We have agreed that Bradford Cornell's deposition will be on September 21
3. Daniel Fischel is available on September 25 at our offices in New York, or on September 26 -27 in Chicago (we will arrange a location for the deposition in Chicago)
4. Dan Castro is available from September 11 through September 30
5. Zack Trumpp is available September 19 through September 29

In addition, we would like to schedule a pretrial conference for the week of September 5. We would suggest the morning of September 6. Our understanding is that Judge Chapman is on vacation next week and we would prefer to do any pretrial conference in person.

**Jonathan D. Waisnor**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8597 | Fax: +1 212 728 9597
jwaisnor@willkie.com | vCard | www.willkie.com bio

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# HOLWELL SHUSTER & GOLDBERG LLP

*750 Seventh Avenue, 26th Floor*
*New York, New York 10019*
*Tel: (646) 837-5151*
*Fax: (646) 837-5150*
*www.hsgllp.com*

*Michael S. Shuster*
*646-837-5153*
*mshuster@hsgllp.com*

August 30, 2017

**VIA EMAIL**

Todd Cosenza
Willkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019

Re:    *In re Lehman Brothers Holdings Inc. RMBS Claims Estimation Hearing*

Dear Todd:

      The RMBS Trustees agree to the following deposition dates:

- Mr. Castro: September 12
- Dr. Cornell: September 14
- Dr. McCrary: September 18
- Mr. Grice: September 28
- Mr. Trumpp: September 29

      As to Mr. Fischel: The one date the Plan Administrator proposes for Mr. Fischel's deposition in New York is unworkable. We cannot travel to Chicago to take his deposition as the Plan Administrator has offered given the overall case schedule. Please propose additional dates in New York. We are available to take Mr. Fischel's deposition in New York any day the week of September 18, or alternatively on September 28 in Chicago.

      Please confirm the dates on which the Plan Administrator is prepared to take depositions of the RMBS Trustees' witnesses. We first provided potential dates for those depositions weeks ago and again more recently as agreed, but your client has not confirmed a single deposition date. We cannot continue to ask the witnesses to hold open the dates, and counsel too need to firm up their schedules. The Trustees reserve all rights.

Very Truly Yours,

Michael S. Shuster

cc:    All counsel (via email)

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

September 6, 2017

**VIA EMAIL**

Michael S. Shuster
Holwell Shuster & Goldberg LLP
750 Seventh Avenue, 26th Floor
New York, NY 10019

Re: *In re Lehman Brothers Holdings Inc., et al., Ch. 11 Case No. 08-13555 (SCC)*

Dear Michael:

We write on behalf of the Plan Administrator in response to your letter dated September 1, 2017. The Plan Administrator would like to meet and confer on the issues raised below. Please let us know your availability.

First, the Plan Administrator confirms that Mr. Trumpp is available on October 2, 2017. Second, while we would appreciate receiving prompt confirmation of whether the Trustees plan to designate Mr. Esses as a fact witness, the Plan Administrator intends to depose him regardless. Please let us know when he is available.

The Plan Administrator intends to take Judge Smith's deposition on September 19, as agreed in my letter of September 1, 2017. Contrary to your letter, the fact that the Trustees offered Judge Smith as a reply witness to Dr. Fischel is irrelevant to whether his deposition can take place prior to Dr. Fischel's. The Trustees seemed to recognize this, previously offering several dates when Judge Smith was available prior to Dr. Fischel's availability in late September and early October, before they withdrew those dates.

We also write to inform you that we are no longer making Mr. Castro available on September 12. He is available any day beginning October 2 through October 6. Please select one of those dates.

Lastly, we requested, on June 1, a list of six specific pieces of information "in order to tie the Trustees' Bates numbers to the existing set of Bates numbered documents . . . [and] confirm the accuracy of the Trustees' production." (June 1 Letter from Benjamin P. McCallen to Neil

NEW YORK   WASHINGTON   PARIS   LONDON   MILAN   ROME   FRANKFURT   BRUSSELS

Lieberman, at 2-3.) On August 22, you agreed to provide us with the requested information. We understand that the Trustees provided certain of these categories of mapping information on August 25, but did not provide two other categories: information on how the hard drives the Trustees provided with bates numbered documents correspond to the hard drives you provided us previously, as well as the corresponding LBHI start and end bates numbers to the Trustees' bates numbered documents. Please provide this information immediately.

The Plan Administrator continues to reserve all of its rights.

Sincerely,

Todd G. Cosenza

cc: All counsel (via email)

2

EXHIBIT E

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - x

4   In the Matter of:

5   LEHMAN BROTHERS HOLDINGS INC.,     CASE NO. 08-13555-scc

6           Debtor.

7   - - - - - - - - - - - - - - - - x

8                       United States Bankruptcy Court

9                       One Bowling Green

10                      New York, New York

11

12                      July 6, 2017

13                      9:02 AM

14

15

16

17

18

19

20

21   B E F O R E:

22   HON. SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO - MATTHEW

Page 15

1          MR. COSENZA:  -- the entry of the protocol order.

2          During the -- and what led us to the settlement.

3          During the protocol the plan administrator and the

4    institutional ambassadors engaged in negotiations to try to

5    settlement the claims.

6          From January 2015 through October 2015 we engaged

7    in mediation with Mr. Madden before -- and his firm before

8    David Jeronimus.  That resulted in agreement which would

9    have allowed all claims in the amount of $2.44 billion.  The

10   $2.44 billion is roughly the same amount that's been

11   allocated here.  There was some amount that had been

12   allocated to the transfer of trusts that have now been

13   disallowed, as well as, as I mentioned before, a number of

14   trusts have fallen out of the process.

15         The parties agreed that the -- have agreed that

16   the October 26, 2015 agreement will be admitted into

17   evidence during the estimation proceeding.

18         The agreement was presented to the trustees who

19   engaged multiple experts to assist in evaluating that

20   settlement proposal; however, the trustees told the plan

21   administrator that an insufficient number of trusts would

22   accept a settlement so the plan administrator withdraw the

23   settlement agreement.

24         After withdrawal of the first proposed settlement

25   the plan administrator and institutional ambassadors