WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         )
In re                                                    )   Chapter 11 Case No.
                                                         )
Lehman Brothers Holdings Inc., <u>et al.</u>,           )   08-13555 (SCC)
                                                         )
Debtors.                                                 )   Jointly Administered
                                                         )
-------------------------------------------------------- x

**NOTICE OF FILING OF CORRECTED MOTION**
**OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C. § 105(A) FOR**
**APPROVAL OF STIPULATION AND AGREED ORDER BETWEEN**
**LEHMAN BROTHERS HOLDINGS INC. AND NEW RESIDENTIAL**
<u>**INVESTMENT CORP. REGARDING SETTLEMENT OF CLAIMS**</u>

**PLEASE TAKE NOTICE** that, on September 7, 2017, Lehman Brothers Holdings Inc.

(the "<u>Plan Administrator</u>"), as Plan Administrator under the *Modified Third Amended Joint*

*Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, on behalf of itself

and the other affiliated debtors in the above-captioned cases (collectively, the "<u>LBHI Debtors</u>"),

filed the *Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11*

*U.S.C. § 105(a) for Approval of Stipulation and Agreed Order Between Lehman Brothers Holdings Inc. and New Residential Investment Corp. Regarding Settlement of Claims* [Docket No. 56238] (the "Motion") and the *Notice of Presentment of the Motion* [Docket No. 56239] (the "Notice"), with a Presentment Date of September 21, 2017 at 12:00 noon (prevailing Eastern Time) and an Objection Deadline of September 18, 2017 at 4:00 p.m. (prevailing Eastern Time). Capitalized terms used but not defined herein have the meanings given to them in the Motion and/or the Notice.

**PLEASE TAKE FURTHER NOTICE** that, as a result of a scrivener's error, the Motion incorrectly lists one of the claim numbers for the SASC 2004-15 Claims filed by the SASC 2004-15 Trustee as claim number "22733," when the actual claim number is "22773." The Plan Administrator hereby files a corrected Motion, annexed hereto as Exhibit 1, reflecting only this correction.

**PLEASE TAKE FURTHER NOTICE** that the Presentment Date and the Objection Deadline remain the same.

*The remainder of this page is intentionally left blank.*

Dated:  September 11, 2017
        New York, New York

                              Respectfully Submitted,

                              By:   /s/ Paul V. Shalhoub
                                  Paul V. Shalhoub
                                  Todd G. Cosenza
                                  WILLKIE FARR & GALLAGHER LLP
                                  787 Seventh Avenue
                                  New York, New York 10019
                                  Tel:  (212) 728-8000
                                  Fax:  (212) 728-8111

                                  Michael A. Rollin
                                  Maritza Dominguez Braswell (*pro hac vice*)
                                  ROLLIN BRASWELL FISHER LLC
                                  8350 East Crescent Parkway, Suite 100
                                  Greenwood Village, Colorado 80111
                                  Tel: (303) 945-7415
                                  Fax: (303) 974-7468

                                  *Attorneys for Lehman Brothers Holdings Inc. and
                                  Certain of Its Affiliates*

### Exhibit 1

**Corrected Motion**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           )
  In re                                                    )    Case No. 08-13555 (SCC)
                                                           )
Lehman Brothers Holdings Inc., <u>et al.</u>,             )    Chapter 11
                                                           )
         Debtors.                                          )    Jointly Administered
                                                           )
---------------------------------------------------------- x

**MOTION PURSUANT TO FED. R. BANKR. P. 9019 AND 11 U.S.C § 105(A)**
**FOR APPROVAL OF STIPULATION AND AGREED ORDER BETWEEN LEHMAN**
**BROTHERS HOLDINGS INC. AND NEW RESIDENTIAL INVETMENT CORP.**
**<u>REGARDING SETTLEMENT OF CLAIMS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

JURISDICTION AND VENUE ...............................................................................2

RELEVANT BACKGROUND .................................................................................2

      A.     Specific Procedural Background.........................................................2

      B.     Specific Factual Background ..............................................................5

THE STIPULATION................................................................................................6

RELIEF REQUESTED..............................................................................................7

BASIS FOR RELIEF ...............................................................................................7

NOTICE AND PROCEDURE ...............................................................................10

CONCLUSION.......................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page(s)**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chicago (In re Ionosphere Clubs, Inc.)*,
    156 B.R. 414 (S.D.N.Y. 1993) ........................................................................................7

*In re Best Prods. Co.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ...........................................................................8, 9

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983) ..........................................................................................8

*In re Hibbard Brown & Co.*,
    217 B.R. 41 (Bankr. S.D.N.Y. 1998) .............................................................................7

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
    478 F.3d 452 (2d Cir. 2007) ........................................................................................8, 9

*Nellis v. Shugrue*,
    165 B.R. 115 (S.D.N.Y. 1994) ......................................................................................7

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ......................................................................................7, 8

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993) ......................................................................................8

**Statutes**

11 U.S.C. § 105(a) ..............................................................................................................8

Fed. R. Bankr. P. 9019 ......................................................................................................7

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and the other affiliated

debtors in the above-captioned cases (collectively, the "LBHI Debtors"), files this motion (the

"Motion"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy

Code"), for entry of an order granting the relief sought herein and respectfully represents:

## PRELIMINARY STATEMENT

1.      By this Motion, the Plan Administrator requests approval of the *Stipulation*

*and Agreed Order Between Lehman Brothers Holdings Inc. and New Residential Investment Corp.*

*Regarding Settlement of Claims*, attached hereto as Exhibit A (the "Stipulation").  The Stipulation

provides for the settlement, in full and final satisfaction, of all disputes between the Plan

Administrator and New Residential Investment Corp. ("NRZ"), relating to (i) the SARM 2004-5

Claims,[1] (ii) the SASC 2003-17 Claims, and (iii) the SASC 2004-15 Claims (collectively, the

"Claims").   Among other things, the Stipulation settles the Claims (which allege that LBHI

breached certain representations and warranties concerning mortgage loans in the Trusts) for the

agreed allowed amounts specified herein (and in the Stipulation).

2.      Notably, the Stipulation provides for the resolution of the Claims at allowed

amounts, which amounts are either equal to or substantially less than the amounts (based on what

---

[1]      Capitalized terms used herein but not otherwise defined shall have the meanings given to them later in this
Motion.

would have been their allocable share of the RMBS Settlement Amount) that the Plan Administrator would request allowance for at the Estimation Hearing.

3.    For the reasons explained below, the Plan Administrator has determined in the exercise of its sound business judgment that the Stipulation represents a fair and equitable resolution of the Claims and satisfies the Second Circuit's standard for approval of a compromise under Bankruptcy Rule 9019.  The Plan Administrator respectfully requests that the Court approve the Stipulation and grant the other relief requested herein.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan.  This Motion is a "core proceeding" arising in these cases.  Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

### A.    Specific Procedural Background

5.    On September 15, 2008 (the "Petition Date"), the LBHI Debtors commenced these cases.  On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim.  Pursuant to that order, the LBHI Debtors provided notice of the bar date of September 22, 2009 (the "Bar Date") to all known and potential creditors.

6.    Prior to the Petition Date, certain of the LBHI Debtors, in the ordinary course of business, would acquire residential mortgage loans either originated or purchased by their subsidiaries and securitize such loans.  Securitization of such loans entailed the establishment of a trust to acquire the loans, hold the loans, and issue securities supported by proceeds of the loans.  Here, in connection with such securitizations and pursuant to the governing trust

2

agreements, the SARM 2004-5 Trust,[2] the SASC 2003-17A Trust[3] and the SASC 2004-15 Trust[4]

(collectively, the "Trusts") were established to hold certain mortgage loans being securitized.

SASCO and LBHI also entered into the Sale Agreements, pursuant to which SASCO acquired

certain mortgage loans from LBHI and in turn, LBHI made certain representations and warranties

to SASCO regarding, *inter alia*, the quality and nature of such mortgage loans.  In connection

therewith and pursuant to the applicable Trust Agreement, SASCO conveyed the mortgage loans

to the applicable Trustee (including the representations and warranties SASCO received from

LBHI with respect to the mortgage loans under the Sale Agreements) for inclusion in the Trusts.

---

[2]     Pursuant to that certain Trust Agreement, dated as of April 1, 2004 (as may have been amended, supplemented or modified, the "SARM 2004-5 Trust Agreement"), by and among Structured Asset Securities Corporation ("SASCO"), as depositor, Aurora Loan Services Inc. ("Aurora"), as master servicer (including any successor master servicer, the "SARM 2004-5 Master Servicer") and Wells Fargo Bank National Association ("Wells Fargo"), as trustee (including any successor trustee, the "SARM 2004-5 Trustee"), the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificate Series 2004-5 (the "SARM 2004-5 Trust") was established.  In connection therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement dated as of April 1, 2004 (as may have been amended, supplemented or modified, the "SARM 2004-5 Sale Agreement").

[3]     Pursuant to that certain Trust Agreement, dated as of May 1, 2003 (as may have been amended, supplemented or modified, the "SASC 2003-17A Trust Agreement"), by and among SASCO, as depositor, Aurora, as master servicer (including any successor master servicer, the "SASC 2003-17A Master Servicer") and Wells Fargo Bank Minnesota, National Association, as trustee (including any successor trustee, the "SASC 2003-17A Trustee"), the Structured Asset Securities Corporation Mortgage Pass-Through Certificate Series 2003-17A Trust (the "SASC 2003-17A Trust") was established.  In connection therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement, dated as of May 1, 2003 (as may have been amended, supplemented or modified, the "SASC 2003-17A Sale Agreement").

[4]     Pursuant to that certain Trust Agreement, dated as of August 1, 2004 (as may have been amended, supplemented or modified, the "SASC 2004-15 Trust Agreement," and collectively with the SARM 2004-5 and SASC 2003-17A Trust Agreements, the "Trust Agreements"), among SASCO, as depositor, Aurora, as master servicer (including any successor master servicer, the "SASC 2004-15 Master Servicer," and with the SARM 2004-5 Master Servicer and the SASC 2003-17A Master Servicer, the "Master Servicers"), and Citibank, National Association, as trustee (including any successor trustee, the "SASC 2004-15 Trustee," and collectively with the SARM 2004-5 and SASC 2003-17A Trustees, the "Trustees"), the Structured Asset Securities Corporation Mortgage Pass-Through Certificate Series 2004-15 Trust Fund (the "SASC 2004-15 Trust") was established.  In connection therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement, dated as of August 1, 2004 (as may have been amended, supplemented or modified, the "SASC 2004-15 Sale Agreement," and collectively with the SARM 2004-5 and SASC 2003-17A Sale Agreements, the "Sale Agreements").

3

7.    On or prior to the Bar Date, the following proof of claims were filed by or on behalf of the Trusts: (i) the SARM 2004-5 Trustee filed claim numbers 24810 and 24811 (the "SARM 2004-5 Claims"), (ii) the SASC 2003-17A Trustee filed claim numbers 24792 and 24793 (the "SASC 2003-17A Claims") and (iii) the SASC 2004-15 Trustee filed claim numbers 22766 and 22773 (the "SASC 2004-15 Claims," and collectively with the SARM 2004-5 and SASC 2003-17A Claims, the "Claims").  The Claims were filed against LBHI for amounts allegedly owing by LBHI in its capacity as seller pursuant to the Trust Agreements and Sale Agreements regarding, *inter alia*, certain alleged repurchase and reimbursement obligations and breaches of representations and warranties relating to the relevant mortgage loans.

8.    On December 29, 2014, the Court entered an order (Docket No. 47569, the "Protocol Order"), approving the Plan Administrator's proposed protocol (the "Protocol") to reconcile and determine the RMBS Claims (as defined in the Protocol Order) on a loan-by-loan basis, including any RMBS Claims of the Trusts.  The Protocol Order and Protocol established a multi-step process to address the RMBS Claims, including the following steps: (i) production and review of claims files, (ii) review of claims files by the Plan Administrator, (iii) non-binding negotiation procedure for rejected claims and disputed approved claims, (iv) non-binding dispute resolution procedure to resolve claims files disputes and (v) court review and approval of claim amounts.

9.    For (i) the SARM 2004-5 Trust, approximately $15,957,908 in amount in RMBS Claims were submitted under the Protocol (which the SARM 2004-5 Trustee's experts subsequently reduced to $13,585,021), (ii) the SASC 2003-17A Trust, $3,917,116 in RMBS Claims were submitted under the Protocol (which the SASC 2003-17A Trustee's experts subsequently reduced to $1,257,338), and (iii) the SASC 2004-15 Trust, approximately $4,886,850

4

in RMBS Claims were submitted under the Protocol (which the SASC 2004-15 Trustee's experts

subsequently reduced to $3,364,920).

10.     On November 30, 2016, during the course of the Protocol, the Plan

Administrator announced the terms of a settlement agreement (as subsequently modified, the

"RMBS Settlement Agreement") with certain institutional investors whereby the Plan

Administrator agreed to seek allowance of the RMBS Claims for $2.416 billion (as may be

adjusted, the "RMBS Settlement Amount").   On July 6, 2017, this Court entered an order

approving the RMBS Settlement Agreement  (Docket No. 55706) and providing for, *inter alia*, an

estimation proceeding (the "Estimation Proceeding") pursuant to which the Plan Administrator

would seek estimation of the RMBS Claims at the RMBS Settlement Amount (as adjusted) for

those trusts that accepted the Settlement and do not subsequently become excluded trusts.[5]

**B.     Specific Factual Background**

11.     The Trust Agreements provide for specific procedures pursuant to which

the relevant Master Servicer can purchase the underlying mortgage loans and terminate the

relevant Trusts when the principal balance of the mortgage loans in the Trusts is less than 10%.

One such procedure is a "clean-up call option" (the "Clean-Up Call Option"), pursuant to which

the Master Servicer has the option to cause the Trust to sell to it, *inter alia*, (i) the remaining unpaid

principal balance plus unpaid interest of the active mortgages in the Trust and (ii) any other

property in the Trust at the fair market value determined by an independent appraiser mutually

agreed upon by the Master Servicer and the Trustee.

12.     Here, each of the Master Servicers exercised its rights under the Clean-Up

Call Option and in connection therewith, (i) the SARM 2004-5 and SASC 2003-17A Master

---

[5]      Trusts could become excluded trusts if, for example, the relevant trust collapsed or terminated prior to the
Estimation Proceeding.

Servicers acquired the SARM 2004-5 and SASC 2003-17A Claims from the relevant Trusts at a price equivalent to approximately a 43% distribution on what would have been such Claims' allocable share of the RMBS Settlement Amount and (ii) the SASC 2004-15 Master Servicer acquired the relevant Claims from the SASC 2004-15 Trust at a price equivalent to approximately a 14% distribution on such Claims' allocable share of the RMBS Settlement Amount.

## THE STIPULATION

13.    The Plan Administrator and NRZ have come to an agreement as to the resolution of their disputes arising out of or relating to the Claims and the Trusts.[6]  The key terms of the Stipulation are as follows.[7]

14.    First, the Plan Administrator and NRZ have agreed to settle each of the Claims as follows: (i) the SARM 2004-5 Claims to be allowed as a Class 7 Claim against LBHI in the aggregate amount of $1,492.218.00; (ii) the SASC 2003-17A Claims to be allowed as a Class 7 Claim against LBHI in the aggregate amount of $558,410.00; and (iii) the SASC 2004-15 Claims to be allowed as a Class 7 Claim against LBHI in the aggregate amount of $97,484.00 (each such allowed amount, the "Allowed Amount," and collectively, the "Allowed Amounts").

15.    And second, for each of the Claims, in the event that the amount collected by NRZ in respect of each of the Allowed Amount (such amount, the "Collected Amount") exceeds

---

[6]    Although the Plan Administrator has authority under the Plan and orders of this Court to settle the Claims without Court approval, the Plan Administrator is seeking Court approval of the Stipulation because the relevant Trusts and Claims have been part of the Protocol and would have been part of the Estimation Proceeding given the RMBS Claims that had been submitted by the Trusts.  The Plan Administrator therefore desires complete transparency given the pending Estimation Proceeding.

[7]    The summary of Stipulation is qualified in its entirety by the terms and conditions of the Stipulation.  Such terms and conditions control to the extent that there is any conflict or inconsistency between this summary and the Stipulation.

the purchase price NRZ paid for the Claim (the "<u>Purchase Price</u>"), NRZ shall promptly remit to

the Plan Administrator the excess of the Collected Amount over the Purchase Price.

## RELIEF REQUESTED

16.     The Plan Administrator, in its informed business judgment, submits that the

Stipulation is in the best interests of the LBHI Debtors' estates and should be approved pursuant

to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Accordingly,

the Plan Administrator respectfully requests that this Court approve the Stipulation.

## BASIS FOR RELIEF

17.     Rule 9019(a) provides, in part, that "[o]n motion by the [debtor-in-

possession] and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a).   This rule empowers bankruptcy courts to approve a settlement

agreement where "it is supported by adequate consideration, is 'fair and equitable,' and is in the

best interests of the estate."  *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chicago

(In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993).  The Court's analysis is not a

mechanical process, but rather contemplates a "range of reasonableness .. . which recognizes the

uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily

inherent in taking any litigation to completion...."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972).

18.     The decision to approve a particular settlement lies within the sound

discretion of the Bankruptcy Court.  *See Nellis v. Shugrue,* 165 B.R. 115, 122-23 (S.D.N.Y. 1994);

*In re Ionosphere Clubs, Inc.*, 156 B.R. at 426.  Discretion should be exercised by the Bankruptcy

Court "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co.*,

217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that

settlements are favored and, in fact, encouraged.").  A proposed compromise settlement implicates

the issue of whether it is "fair and equitable, and . . . in the best interest of the [debtor's] estate."
*In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations and quotations omitted).

19.    To approve a proposed settlement, the Court need not definitively decide the numerous issues of law and fact raised by the settlement.  Rather, the Court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d at 693); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("the court need not conduct a 'mini-trial' to determine the merits of the underlying [dispute]").

20.    This Court also has the authority to approve a settlement under section 105(a) of the Bankruptcy Code, which allows it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  *See* 11 U.S.C. § 105(a).

21.    In deciding whether a particular settlement falls within the "range of reasonableness," courts consider the following "*Iridium*" factors: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (iii) the paramount interests of creditors; (iv) whether other parties in interest support the settlement; (v) "the nature and breadth of releases to be obtained by officers and directors"; (vi) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; and (vii) "the extent to which the settlement is the product of arm's-length bargaining."  *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re*

8

*Iridium Operating LLC),* 478 F.3d 452, 462 (2d Cir. 2007) (internal citations and quotations omitted).

22.    Here, the Stipulation will benefit the LBHI Debtors, their estates, and their creditors, and is "fair and equitable" and "in the best interest of [LBHI's] estate." *See Best Prods.*, 165 B.R. at 50 (internal citations and questions omitted). First, the Stipulation will fully resolve all disputes related to the Claims and Trusts, thus sparing LBHI from future disputes or litigation and their attendant costs. In addition, the Stipulation is the result of arm's-length negotiations between sophisticated parties. As part of these negotiations, the Plan Administrator and NRZ each concluded that the Allowed Amounts were reasonable and appropriate based on their own assessments of the possibility of success of any litigation and the benefits of the Stipulation.

23.    In particular, the Allowed Amounts negotiated by the parties are either identical (for the SARM 2004-5 and SASC 2003-17A Claims) or substantially lower (for the SASC 2004-15 Claims) to (i) what each Trust otherwise would have received as its allocable share of the RMBS Settlement Amount under the RMBS Settlement Agreement and (ii) the amounts that the Plan Administrator would have requested this Court to adopt at the Estimation Proceeding for each relevant Trust. Stated otherwise, the Stipulation provides for the resolution of the Claims at the same or lower amounts (based on what would have been their allocable share of the RMBS Settlement Amount) that the Plan Administrator would request allowance for at the Estimation Hearing.

24.    Furthermore, while the Stipulation requires the Plan Administrator to seek allowance of the Claims at what it considers the very high end of an acceptable settlement of the claims, it allows the Plan Administrator to achieve finality, avoid continued litigation, and stem the continued incurrence of costs and delays relating to resolving these Claims.

9

25.     In the Plan Administrator's view, the reasonableness of the Allowed Amounts must also be considered in light of the significant amounts of the RMBS Claims submitted for the relevant Trusts under the Protocol.  As described above, for (i) the SARM 2004-5 Trust, approximately $15,957,908 in RMBS Claims were submitted under the Protocol (which the SARM 2004-5 Trustee's experts subsequently reduced to $13,585,021), (ii) the SASC 2003-17A Trust, $3,917,116 in RMBS Claims were submitted under the Protocol (which the SASC 2003-17A Trustee's experts subsequently reduced to $1,257,338), and (iii) the SASC 2004-15 Trust, approximately $4,886,850 in RMBS Claims were submitted under the Protocol (which the SASC 2004-15 Trustee's experts subsequently reduced to $3,364,920).  The Allowed Amounts that the Plan Administrator is seeking approval of are significantly lower than the claim amounts that were submitted by the relevant Trustees through the Protocol.  They also are significantly lower than the reduced amounts proffered by the Trustee's experts.

26.     Finally, at all times, the Plan Administrator and NRZ have been represented by experienced and sophisticated counsel, and the Stipulation was negotiated at arm's length and in good faith.

27.     For the reasons stated above, and in the Plan Administrator's informed business judgment, the terms set forth in the Stipulation are a "fair and equitable" resolution of the parties' disputes, well within the "range of reasonableness," and are in the best interests of the LBHI Debtors, their estates, and their creditors.  Accordingly, the Plan Administrator requests that the Stipulation be approved.

## NOTICE AND PROCEDURE

28.     No trustee has been appointed in these cases.  The Plan Administrator will serve notice of this Motion in accordance with the procedures set forth in the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007

Implementing Certain Notice and Case Management Procedures, entered on June 17, 2010 [ECF No. 9635], on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for NRZ; and (vi) all parties who have requested notice in the Chapter 11 Cases. The Plan Administrator submits that no other or further notice need be provided. No previous request for the relief sought herein has been made to this Court or any other court.

29. This Motion sets forth the legal authorities upon which the Motion is based. Accordingly, the Plan Administrator respectfully submits that the Motion itself satisfies the requirements of the local bankruptcy rules that a separate memorandum of law be submitted herewith.

30. No prior motion for the relief set forth herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

## <u>CONCLUSION</u>

**WHEREFORE**, the Plan Administrator respectfully requests the entry of the Stipulation

granting the relief requested herein and such other and further relief as the Court may deem just

and proper.

Dated:  New York, New York
        September 7, 2017

                              Respectfully Submitted,

                          By:   /s/ Paul V. Shalhoub
                              Paul V. Shalhoub
                              Todd G. Cosenza
                              WILLKIE FARR & GALLAGHER LLP
                              787 Seventh Avenue
                              New York, New York 10019
                              Tel:  (212) 728-8000
                              Fax:  (212) 728-8111

                              Michael A. Rollin
                              Maritza Dominguez Braswell (*pro hac vice*)
                              ROLLIN BRASWELL FISHER LLC
                              8350 East Crescent Parkway, Suite 100
                              Greenwood Village, Colorado 80111
                              Tel: (303) 945-7415
                              Fax: (303) 974-7468

                              *Attorneys for Debtors Lehman Brothers Holdings
                              Inc. and Certain of Its Affiliates*

## **EXHIBIT A**

**Stipulation**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------x
                                             )

In re                               )       Chapter 11 Case No.
                                             )

Lehman Brothers Holdings Inc., <u>et al.</u>,   )       08-13555 (SCC)
                                           )

         Debtors.               )       Jointly Administered
                                           )
--------------------------------------------------------x

**STIPULATION AND AGREED ORDER BETWEEN LEHMAN BROTHERS**
**HOLDINGS INC. AND NEW RESIDENTIAL INVESTMENT CORP.**
**REGARDING SETTLEMENT OF CLAIMS**

        This Stipulation and Agreed Order (this "<u>Stipulation</u>") is entered into between

Lehman Brothers Holdings Inc. ("<u>LBHI</u>" or the "<u>Plan Administrator</u>"), as Plan Administrator

under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and*

*Its Affiliated Debtors* (the "<u>Plan</u>"), on behalf of itself and the other affiliated debtors in the

above-captioned cases (collectively, the "<u>LBHI Debtors</u>"), and New Residential Investment

Corp. ("<u>NRZ</u>") with respect to the following:

## RECITALS

A.      On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates each commenced in this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

B.      On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claims [Docket No. 4271]. Pursuant to that order, the LBHI Debtors provided notice of the bar date of September 22, 2009 (the "Bar Date") to all known and potential creditors.

C.      Pursuant to that certain Trust Agreement, dated as of April 1, 2004 (as may have been amended, supplemented or modified, the "SARM 2004-5 Trust Agreement"), by and among Structured Asset Securities Corporation ("SASCO"), as Depositor, Aurora Loan Services Inc. ("Aurora"), as Master Servicer and Wells Fargo Bank National Association ("Wells Fargo"), as Trustee (including any successor Trustee, the "SARM 2004-5 Trustee"), the Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificate Series 2004-5 (the "SARM 2004-5 Trust") was established. In connection therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement dated as of April 1, 2004 (as may have been amended, supplemented or modified, the "SARM 2004-5 Sale Agreement"), pursuant to which SASCO acquired certain mortgage loans from LBHI and in turn, LBHI made certain representation and warranties to SASCO relating to such mortgage loans. Pursuant to the SARM 2004-5 Trust Agreement, SASCO conveyed the mortgage loans to the SARM 2004-5 Trustee for inclusion in the SARM 2004-5 Trust (including the representations and warranties that SASCO received from LBHI with respect to the mortgage loans under the SARM 2004-5 Sale Agreement).

2

D.      Pursuant to that certain Trust Agreement, dated as of May 1, 2003 (as

may have been amended, supplemented or modified, the "SASC 2003-17A Trust Agreement"),

by and among SASCO, as Depositor, Aurora, as Master Servicer and Wells Fargo Bank

Minnesota, National Association, as Trustee (including any successor Trustee, the "SASC 2003-

17A Trustee"), the Structured Asset Securities Corporation Mortgage Pass-Through Certificates

Series 2003-17A Trust Fund (the "SASC 2003-17A Trust") was established.  In connection

therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment

Agreement dated as of May 1, 2003 (as may have been amended, supplemented or modified, the

"SASC 2003-17A Sale Agreement"), pursuant to which SASCO acquired certain mortgage loans

from LBHI and in turn, LBHI made certain representation and warranties to SASCO relating to

such mortgage loans.  Pursuant to the SASC 2003-17A Trust Agreement, SASCO conveyed the

mortgage loans to the SASC 2003-17A Trustee for inclusion in the SASC 2003-17A Trust

(including the representations and warranties that SASCO received from LBHI with respect to

the mortgage loans under the SASC 2003-17A Sale Agreement).

E.      Pursuant to that certain Trust Agreement, dated as of August 1, 2004 (as

may have been amended, supplemented or modified, the "SASC 2004-15 Trust Agreement," and

collectively with the SARM 2004-5 and SASC 2003-17A Trust Agreements, the "Trust

Agreements"), among SASCO, as Depositor, Aurora, as Master Servicer and Citibank, National

Association, as Trustee (including any successor Trustee, the "SASC 2004-15 Trustee," and

collectively with the SARM 2004-5 and SASC 2003-17A Trustees, the "Trustees"), the

Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2004-15

Trust Fund (the "SASC 2004-15 Trust," and collectively with the SARM 2004-5 Trust and

SASC 2003-17A Trust, the "Trusts") was established.  In connection therewith, SASCO and

3

LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement dated as of August 1, 2004 (as may have been amended, supplemented or modified, the "SASC 2004-15 Sale Agreement," and collectively with the SARM 2004-5 and SASC 2003-17A Sale Agreements, the "Sale Agreements"), pursuant to which SASCO acquired certain mortgage loans from LBHI and in turn, LBHI made certain representation and warranties to SASCO relating to such mortgage loans.  Pursuant to the SASC 2004-15 Trust Agreement, SASCO conveyed the mortgage loans to the SASC 2004-15 Trustee for inclusion in the SASC 2004-15 Trust (including the representations and warranties that SASCO received from LBHI with respect to the mortgage loans under the SASC 2004-15 Sale Agreement).

F.    On or prior to the Bar Date, the following proof of claims were filed by or on behalf of the Trusts:  (i) the SARM 2004-5 Trustee filed claim numbers 24810 and 24811 (the "SARM 2004-5 Claims"), (ii) the SASC 2003-17A Trustee filed claim numbers 24792 and 24793 (the "SASC 2003-17A Claims") and (iii) the SASC 2004-15 Trustee filed claim numbers 22766 and 22773 (the "SASC 2004-15 Claims," and collectively with the SARM 2004-5 and SASC 2003-17A Claims, the "Claims").   The Claims were filed against LBHI for amounts allegedly owing by LBHI in its capacity as seller pursuant to the Trust Agreements and Sale Agreements regarding, *inter alia*, certain alleged repurchase and reimbursement obligations and breaches of representations and warranties relating to the relevant mortgage loans.

G.    Subsequent to the filing of the Claims, NRZ acquired the Claims.

H.    The Plan Administrator and NRZ have engaged in arm's-length, good faith negotiations regarding the validity of the Claims asserted and have agreed to settle the Claims on the terms set forth in the Letter Agreements (as defined below) and herein.

4

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED by the Plan Administrator and NRZ (each, a "Party," and collectively, the "Parties"), through their undersigned counsel, and ORDERED and APPROVED by the Court as follows:

1.    Those certain letter agreements entered into between the Parties, dated July 20, 2017 and August 10, 2017 (collectively, the "Letter Agreements"), copies of which are annexed hereto as Exhibit A, are approved.  Pursuant to the Letter Agreements: (i) the SARM 2004-5 Claims shall be allowed as a Class 7 Claim against LBHI in the aggregate amount of $1,492.218.00; (ii) the SASC 2003-17A Claims shall be allowed as a Class 7 Claim against LBHI in the aggregate amount of $558,410.00; and (iii) the SASC 2004-15 Claims shall be allowed as a Class 7 Claim against LBHI in the aggregate amount of $97,484.00 (each such allowed amount, the "Allowed Amount," and collectively, the "Allowed Amounts").

2.    As provided in the Letter Agreements, in the event that the amount received by NRZ on account of distributions under the Plan in respect of the Allowed Amounts (such amount, the "Collected Amount") exceeds the purchase price NRZ paid for the relevant Claim as specified in the applicable Letter Agreement (the "Purchase Price"), NRZ shall promptly remit to the Plan Administrator the excess of the Collected Amount over the Purchase Price.

3.    Except for its entitlement to receive distributions under the Plan on account of the Allowed Amount of the Claims as provided for herein and in the Letter Agreements, NRZ waives and releases the Claims and any and all other claims, if any, it has against the LBHI Debtors on account of the Trusts.

4.    This Stipulation shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.

5.      No amendment or waiver of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by the Parties, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

6.      This Stipulation shall be governed by and construed in accordance with the laws of the State of New York, without reference to conflicts of law principles.

7.      This Court shall retain jurisdiction over the interpretation, implementation and enforcement of the terms of the Stipulation.


[Signatures Appear on Next Page]

6

Dated: New York, New York
        September 7, 2017


By:   /s/ Paul V. Shalhoub
      Paul V. Shalhoub
      Todd G. Cosenza
      WILLKIE FARR & GALLAGHER LLP
      787 Seventh Avenue
      New York, New York 10019
      Telephone: (212) 728-8000
      Fax: (212) 728-8111

- and -

      Michael A. Rollin
      Maritza Dominguez Braswell (*pro hac vice*)
      ROLLIN BRASWELL FISHER LLC
      8350 East Crescent Parkway, Suite 100
      Greenwood Village, Colorado 80111
      Telephone: (303) 945-7415
      Fax: (303) 974-7468

      *Attorneys for the Lehman Brothers Holdings
      Inc. and Certain of Its Affiliates*



By:   /s/ Scott J. Swerdloff
      Scott J. Swerdloff
      Christine Vrettos
      DENTONS US LLP
      1221 Avenue of the Americas
      New York, New York 10020-1089
      Telephone: (212) 768-6700
      Fax: (212) 768-6800

      *Attorneys for New Residential Investment
      Corp.*


**IT IS SO ORDERED**:

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

7

# EXHIBIT A

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105


July 20, 2017


Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:   Letter Agreement Regarding Optional Termination Right

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates Series 2004-5, and the Trust Agreement, dated as of April 1, 2004 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Wells Fargo Bank, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund").  Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I.   Proof of Claim. In connection with its exercise of the Optional Termination Right (as defined below), New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ shall acquire proof of claims No. 24810 and No. 24811 (collectively, the "Proof of Claim") owned by the Trust Fund for a purchase price of $651,353 (the "Purchase Price").

SECTION II.  Representations and Warranties.  NRZ hereby represents and warrants that it has entered into an agreement pursuant to which NRZ has the right to direct the exercise of the Optional Termination Right (as defined below).

SECTION III. Consent to Exercise of Optional Termination. Pursuant to the optional termination section of the Agreement, NRZ or its subsidiary or designee has the right with the consent of LBHI, as seller or otherwise, to purchase the Mortgage Loans and any REO properties included in the Trust Fund at an applicable purchase price pursuant to the terms of the Agreement (such right for the Trust Fund, the "Optional Termination Right").  Subject to receipt of the Consent Fee, as defined below and the other terms of this Letter Agreement, LBHI consents to the exercise by NRZ or its subsidiary or designee of the Optional Termination Right with respect to the Trust Fund and the related Agreement in exchange for the following:

(i) NRZ hereby agrees that it shall pay to LBHI, upon the exercise of its Optional Termination Right, an amount equal to the product of (a) 0.15625% and (b) the aggregate scheduled principal balance of the Mortgage Loans in the Trust Fund immediately prior to the date on which the Optional Termination Right is exercised (such amount, the "Consent Fee").

(ii)    NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in the Proof of Claim.

(iii)    NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to the Proof of Claim or otherwise pursue, prosecute or collect upon the Proof of Claim an amount in excess of the Allowed Amount.  LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" under LBHI's bankruptcy plan in an amount equal to $1,492,218 (the "Allowed Amount").  In the event that the amount collected by NRZ in respect of the allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

(iv)    Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to any trust fund, and mortgage loans held in any of such trust funds, in respect to which LBHI is or was the sponsor and/or has the right to consent to the optional termination of such trusts and the purchase mortgage loans and any REO properties included in the related trust fund, and any related proofs of claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request.

In furtherance of the foregoing, LBHI hereby agrees that, simultaneous with the execution of this Letter Agreement, it shall execute the consent letter attached as Exhibit A hereto.

SECTION IV. <u>Counterparts</u>.    This Letter Agreement may be executed simultaneously in any number of counterparts.  Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement.  A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. <u>Governing Law</u>.    THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS

2

LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. <u>Waivers; Amendment</u>.  No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.    <u>Successors and Assigns</u>.  This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto without the execution or filing of any paper or any further act or consent on the part of any party hereto.  LBHI may assign its rights to payment of the Consent Fee and NRZ agrees to pay the Consent Fee due hereunder directly to such assignee upon notice from LBHI of any assignment of such Consent Fee.

SECTION VIII.    <u>Severability of Provisions</u>.  If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

SECTION IX. <u>Exhibits</u>.  All exhibits and any other addenda or supplements hereto are incorporated herein and made a part hereof.

SECTION X. <u>Further Assurances</u>.  Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

SECTION XI. <u>Confidentiality</u>. Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information").  Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether

3

at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI. It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

SECTION XII.    Consent to Jurisdiction.    Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

4

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By:_____

Name:   Cameron MacDougall
Title:    Secretary

The foregoing Letter Agreement is hereby confirmed and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: _____

Name: _MATTHEW CANTOR_____

Title: _SVP - LEGAL AFFAIRS_____

LETTER AGREEMENT

July 20, 2017

Lehman Brothers Holdings Inc.
1271 Sixth Avenue
New York, NY 10020

New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has entered into an agreement pursuant to which it has the right to cause the termination of the securitization trust fund relating to the transaction identified as Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates Series 2004-5 (the "Transaction") subject to the consent of LBHI.  By acknowledging below, LBHI hereby consents, for the Transaction, to the right of NRZ or a subsidiary or designee of NRZ to cause any and all such terminations and take any and all other actions in connection therewith which requires LBHI's consent.

Yours truly,

NEW      RESIDENTIAL      INVESTMENT
CORP.

By:_____

Name:    Cameron MacDougall
Title:    Secretary

ACKNOWLEDGED AND AGREED:

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Name: MATT CANTOR

Title: SVP - LEGAL AFFAIRS

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105


August 10, 2017


Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:  Letter Agreement Allowance of Claim

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-17A, and the Trust Agreement, dated as of May 1, 2003 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Wells Fargo Bank Minnesota, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund"). Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I. Proof of Claim. New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has acquired the claims related to the Trust Fund appearing in proof of claims No. 24792 and 24793 (collectively, the "Proof of Claim") for a purchase price of $243,746 (the "Purchase Price").

SECTION II. Representations and Warranties. NRZ hereby represents and warrants that is the sole exclusive owner of the Proof of Claim.


SECTION III. Claim Settlement.

A.        LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" (the "Settlement Motion") under LBHI's bankruptcy plan in an amount equal to $558,410 (the "Allowed Amount"). In the event that the amount collected by NRZ in respect of the Allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected

Amount over the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

B.        Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to the Mortgage Loans or claims asserted in connection with the Mortgage Loans, Trust Fund, or the Proof of Claim and any allocation of the price allocated to such claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request. NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in any Proof of Claim.

C.        Other than to support the Settlement Motion, NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to any Proof of Claim or otherwise pursue, prosecute or collect upon any Proof of Claim.

SECTION IV. Counterparts.          This Letter Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement. A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. Governing Law. THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. Waivers; Amendment. No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.          Successors and Assigns. This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto

2

without the execution or filing of any paper or any further act or consent on the part of any party hereto. .

SECTION VIII.                    Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

SECTION IX. Further Assurances. Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

SECTION X. Confidentiality. Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information"). Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI. It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

3

SECTION XI. <u>Consent to Jurisdiction.</u> Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

4

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By: _____

Name:    Nicola Santoro, Jr.

Title:    Chief Financial Officer

The foregoing Letter Agreement is hereby confirmed
and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: _Mathew Cantor s/_

Name:

Title: _SUP- Legal Affairs_

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105

August 10, 2017

Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:  Letter Agreement Allowance of Claim

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2004-15, and the Trust Agreement, dated as of August 1, 2004 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Citibank, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund"). Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I. Proof of Claim. New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has acquired the claims related to the Trust Fund appearing in proof of claims No. 22766 and No. 22773 (collectively, the "Proof of Claim") for a purchase price of $43,868 (the "Purchase Price").

SECTION II. Representations and Warranties. NRZ hereby represents and warrants that is the sole exclusive owner of the Proof of Claim.

SECTION III. Claim Settlement.

A.      LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" (the "Settlement Motion") under LBHI's bankruptcy plan in an amount equal to $97,484 (the "Allowed Amount"). In the event that the amount collected by NRZ in respect of the Allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected

Amount over the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

B.　　Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to the Mortgage Loans or claims asserted in connection with the Mortgage Loans, Trust Fund, or the Proof of Claim and any allocation of the price allocated to such claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request. NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in any Proof of Claim.

C.　　Other than to support the Settlement Motion, NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to any Proof of Claim or otherwise pursue, prosecute or collect upon any Proof of Claim.

SECTION IV. Counterparts.　　This Letter Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement. A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. Governing Law. THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. Waivers; Amendment. No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.　　　　Successors and Assigns. This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto

2

without the execution or filing of any paper or any further act or consent on the part of any party hereto. .

SECTION VIII.                    Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

SECTION IX. Further Assurances. Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

SECTION X. Confidentiality. Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information"). Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI. It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

3

SECTION XI. <u>Consent to Jurisdiction.</u> Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By: _____

Name:  Nicola Santoro, Jr.

Title:   Chief Financial Officer

The foregoing Letter Agreement is hereby confirmed
and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: Matthew Canter s/
Name:
Title: SVP - Legal Affairs