# EXHIBIT A

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105

July 20, 2017

Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:   Letter Agreement Regarding Optional Termination Right

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates Series 2004-5, and the Trust Agreement, dated as of April 1, 2004 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Wells Fargo Bank, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund"). Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I.   Proof of Claim. In connection with its exercise of the Optional Termination Right (as defined below), New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ shall acquire proof of claims No. 24810 and No. 24811 (collectively, the "Proof of Claim") owned by the Trust Fund for a purchase price of $651,353 (the "Purchase Price").

SECTION II.   Representations and Warranties.   NRZ hereby represents and warrants that it has entered into an agreement pursuant to which NRZ has the right to direct the exercise of the Optional Termination Right (as defined below).

SECTION III. Consent to Exercise of Optional Termination. Pursuant to the optional termination section of the Agreement, NRZ or its subsidiary or designee has the right with the consent of LBHI, as seller or otherwise, to purchase the Mortgage Loans and any REO properties included in the Trust Fund at an applicable purchase price pursuant to the terms of the Agreement (such right for the Trust Fund, the "Optional Termination Right"). Subject to receipt of the Consent Fee, as defined below and the other terms of this Letter Agreement, LBHI consents to the exercise by NRZ or its subsidiary or designee of the Optional Termination Right with respect to the Trust Fund and the related Agreement in exchange for the following:

(i) NRZ hereby agrees that it shall pay to LBHI, upon the exercise of its Optional Termination Right, an amount equal to the product of (a) 0.15625% and (b) the aggregate scheduled principal balance of the Mortgage Loans in the Trust Fund immediately prior to the date on which the Optional Termination Right is exercised (such amount, the "Consent Fee").

(ii)     NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in the Proof of Claim.

(iii)     NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to the Proof of Claim or otherwise pursue, prosecute or collect upon the Proof of Claim an amount in excess of the Allowed Amount. LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" under LBHI's bankruptcy plan in an amount equal to $1,492,218 (the "Allowed Amount"). In the event that the amount collected by NRZ in respect of the allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

(iv)     Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to any trust fund, and mortgage loans held in any of such trust funds, in respect to which LBHI is or was the sponsor and/or has the right to consent to the optional termination of such trusts and the purchase mortgage loans and any REO properties included in the related trust fund, and any related proofs of claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request.

In furtherance of the foregoing, LBHI hereby agrees that, simultaneous with the execution of this Letter Agreement, it shall execute the consent letter attached as Exhibit A hereto.

SECTION IV. <u>Counterparts</u>.     This Letter Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement. A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. <u>Governing Law</u>.     THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS

LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. Waivers; Amendment.    No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.        Successors and Assigns.    This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto without the execution or filing of any paper or any further act or consent on the part of any party hereto.  LBHI may assign its rights to payment of the Consent Fee and NRZ agrees to pay the Consent Fee due hereunder directly to such assignee upon notice from LBHI of any assignment of such Consent Fee.

SECTION VIII.        Severability of Provisions.    If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

SECTION IX. Exhibits.    All exhibits and any other addenda or supplements hereto are incorporated herein and made a part hereof.

SECTION X.  Further Assurances.    Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

SECTION XI. Confidentiality. Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information").  Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether

3

at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI.  It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

SECTION XII.    Consent to Jurisdiction.    Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By:_____

Name:  Cameron MacDougall

Title:   Secretary

The foregoing Letter Agreement is hereby confirmed
and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: _____

Name: _MATTHEW CANTOR_____

Title: _SVP - LEGAL AFFAIRS_____

LETTER AGREEMENT

July 20, 2017

Lehman Brothers Holdings Inc.
1271 Sixth Avenue
New York, NY 10020

New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has entered into an agreement pursuant to which it has the right to cause the termination of the securitization trust fund relating to the transaction identified as Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates Series 2004-5 (the "Transaction") subject to the consent of LBHI.  By acknowledging below, LBHI hereby consents, for the Transaction, to the right of NRZ or a subsidiary or designee of NRZ to cause any and all such terminations and take any and all other actions in connection therewith which requires LBHI's consent.

Yours truly,

NEW     RESIDENTIAL     INVESTMENT
CORP.

By:_____

Name:   Cameron MacDougall
Title:    Secretary

ACKNOWLEDGED AND AGREED:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name: Matt Cantwell
Title: SVP - Legal Affairs

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105

August 10, 2017

Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:  Letter Agreement Allowance of Claim

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2003-17A, and the Trust Agreement, dated as of May 1, 2003 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Wells Fargo Bank Minnesota, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund"). Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I. Proof of Claim. New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has acquired the claims related to the Trust Fund appearing in proof of claims No. 24792 and 24793 (collectively, the "Proof of Claim") for a purchase price of $243,746 (the "Purchase Price").

SECTION II. Representations and Warranties. NRZ hereby represents and warrants that is the sole exclusive owner of the Proof of Claim.

SECTION III. Claim Settlement.

A.        LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" (the "Settlement Motion") under LBHI's bankruptcy plan in an amount equal to $558,410 (the "Allowed Amount"). In the event that the amount collected by NRZ in respect of the Allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected

Amount over the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

B.      Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to the Mortgage Loans or claims asserted in connection with the Mortgage Loans, Trust Fund, or the Proof of Claim and any allocation of the price allocated to such claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request. NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in any Proof of Claim.

C.      Other than to support the Settlement Motion, NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to any Proof of Claim or otherwise pursue, prosecute or collect upon any Proof of Claim.

SECTION IV. Counterparts.              This Letter Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement. A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. Governing Law. THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. Waivers; Amendment. No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.              Successors and Assigns. This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto

2

without the execution or filing of any paper or any further act or consent on the part of any party hereto. .

SECTION VIII.             Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

SECTION IX. Further Assurances. Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

SECTION X. Confidentiality. Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information"). Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI. It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

3

SECTION XI. <u>Consent to Jurisdiction.</u> Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

4

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By: _____

Name:   Nicola Santoro, Jr.
Title:   Chief Financial Officer

The foregoing Letter Agreement is hereby confirmed
and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: _Mathew Cantor  s/_

Name:

Title: _SUP- Legal Affairs_

New Residential Investment Corp.
1345 Avenue of the Americas
New York, New York 10105

August 10, 2017

Lehman Brothers Holdings Inc.
10350 Park Meadows Drive
Littleton, Colorado 80124

Re:  Letter Agreement Allowance of Claim

Ladies and Gentlemen:

Reference is hereby made to the transaction identified as Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2004-15, and the Trust Agreement, dated as of August 1, 2004 among Structured Asset Securities Corporation, as Depositor, Aurora Loan Services Inc., as Master Servicer and Citibank, National Association, as Trustee pursuant to which a trust fund was created to hold Mortgage Loans included in such transaction, as such agreement has been amended, supplemented or modified from time to time (the "Agreement" and the related trust fund created thereunder, the "Trust Fund"). Capitalized terms used but not defined herein shall have the meanings given to them in the Agreement.

In consideration of the promises and the mutual covenants set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION I. Proof of Claim. New Residential Investment Corp. ("NRZ") or a subsidiary or designee of NRZ has acquired the claims related to the Trust Fund appearing in proof of claims No. 22766 and No. 22773 (collectively, the "Proof of Claim") for a purchase price of $43,868 (the "Purchase Price").

SECTION II. Representations and Warranties. NRZ hereby represents and warrants that is the sole exclusive owner of the Proof of Claim.

SECTION III. Claim Settlement.

A.       LBHI agrees to petition the bankruptcy court to approve the Proof of Claim as "allowed" (the "Settlement Motion") under LBHI's bankruptcy plan in an amount equal to $97,484 (the "Allowed Amount"). In the event that the amount collected by NRZ in respect of the Allowed Proof of Claim (such amount, the "Collected Amount") exceeds the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected

Amount over the Purchase Price, NRZ shall promptly remit to LBHI the excess of the Collected Amount over the Purchase Price.

B.      Within five business days hereof and thereafter upon coming in to possession, NRZ shall provide to LBHI copies of all reports, analysis and valuation information and any supplemental information with respect to the Mortgage Loans or claims asserted in connection with the Mortgage Loans, Trust Fund, or the Proof of Claim and any allocation of the price allocated to such claims, including any such information prepared or provided by RRMS Advisors LLC or other third party providers (each an "Information Provider"). NRZ agrees to use commercially reasonable efforts to direct and instruct any Information Provider to review such information with LBHI upon LBHI's reasonable request. NRZ hereby agrees that it and its affiliates shall not assign, sell or transfer, directly or indirectly, whether by contract, trust, swap, hedge or other option, any legal, economic or beneficial interest in any Proof of Claim.

C.      Other than to support the Settlement Motion, NRZ hereby agrees that it and its affiliates shall not directly or indirectly, in any capacity, and/or at any time, participate in any litigation or contested action or proceeding relating to any Proof of Claim or otherwise pursue, prosecute or collect upon any Proof of Claim.

SECTION IV. Counterparts.            This Letter Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original and all such counterparts shall constitute one and the same agreement. A facsimile, electronic, or photocopy signature on this Letter Agreement or any notice delivered hereunder shall have the same legal effect as an original signature.

SECTION V. Governing Law. THIS LETTER AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

SECTION VI. Waivers; Amendment. No term or provision of this Letter Agreement may be waived unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced. This Letter Agreement may not be amended, modified or altered unless the same shall be in writing and duly executed by the authorized representatives of the parties hereto.

SECTION VII.            Successors and Assigns. This Letter Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Any person into which a party may be merged or consolidated (or any person resulting from any merger or consolidation involving such party), any person resulting from a change in form of a party or any person succeeding to the business of such party shall be considered the "successor" of such party hereunder and shall be considered a party hereto

2

without the execution or filing of any paper or any further act or consent on the part of any party hereto. .

      SECTION VIII.        <u>Severability of Provisions.</u> If any one or more of the covenants, agreements, provisions or terms of this Letter Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Letter Agreement and shall in no way affect the validity or enforceability of the other provisions of this Letter Agreement.

      SECTION IX. <u>Further Assurances.</u> Each party to this Letter Agreement agrees to execute and deliver such instruments and take such actions as the other party may, from time to time, reasonably request to affect the purpose and carry out the terms of this Letter Agreement.

      SECTION X. <u>Confidentiality.</u> Neither party nor any of its affiliates will disclose to any other person the terms of this Letter Agreement or issue any press release or make any public statement with respect thereto, except in accordance with this paragraph or with the prior written consent of the other party (such information, the "Confidential Information"). Each party and its Party Representatives (as defined below) shall be entitled to disclose Confidential Information without the prior written consent of the other party if (a) required to disclose such information pursuant to any judicial order, applicable law or request of any governmental authority, (b) any such information is or becomes generally available to the public other than, as a result of disclosure by such party in violation of this Letter Agreement or (c) any such information is reasonably necessary to be disclosed in connection with any judicial proceeding, arbitration, civil, criminal, investigative or administrative claim or any other proceeding whether at law, in equity or otherwise affecting such party or its affiliates or the Party Representatives. Either party shall be permitted to disclose Confidential Information on a need to know basis with accountants, financial advisers, attorneys, auditors and other third party service providers (each, a "Party Representative") and each person receiving such information shall retain such information in confidence in accordance with this paragraph; provided and notwithstanding the foregoing, each shall remain responsible for any disclosure of Confidential Information by such person in violation of this paragraph. Each party and its affiliates shall hold and use all Confidential Information in compliance with all applicable laws and regulations. Each party and its affiliates shall take reasonable measures to ensure that the Confidential Information is not disclosed, published, released, transferred, duplicated or otherwise made available to others in contravention of the provisions of this Letter Agreement or any applicable law. The parties hereto agree that their obligations not to disclose Confidential Information shall terminate on the third anniversary of the effectiveness of this Letter Agreement. The parties agree that irreparable damage for which money damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not comply with this Section XI. It is accordingly agreed that prior to the termination of this Section XI, the parties shall be entitled to seek specific performance and injunctive and other equitable relief as a remedy for any such breach, in each case, without posting a bond or undertaking, this being in addition to any other remedy to which such party is entitled to at law or equity.

SECTION XI. <u>Consent to Jurisdiction.</u> Each party hereto hereby irrevocably consents and submits to the jurisdiction of the bankruptcy court for the Southern District of New York having jurisdiction over LBHI's bankruptcy case for the resolution of any action, claim or dispute arising out of or relating to this Letter Agreement.

*[Signature Page Follows]*

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us a counterpart hereof, whereupon this instrument along with all counterparts will become a binding agreement among NRZ and certain of its subsidiaries and LBHI in accordance with its terms.

Very truly yours,

NEW RESIDENTIAL INVESTMENT CORP.

By: _____

Name:  Nicola Santoro, Jr.

Title:  Chief Financial Officer

The foregoing Letter Agreement is hereby confirmed
and accepted as of the date first above written.

LEHMAN BROTHERS HOLDING INC.,

By: Matthew Canter s/
Name:
Title: SVP - Legal Affairs