UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                             : Chapter 11 Case No.
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    : 08-13555 (SCC)
                                                                  :
                    Debtors.                              : (Jointly Administered)
------------------------------------------------------------------x

## DECLARATION OF STEVEN MULLANEY

Pursuant to 28 U.S.C. § 1746, I, Steven Mullaney, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, my review of relevant business records of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF", and collectively with their other chapter 11 affiliates, the "Chapter 11 Estates"), and my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Among Citibank, N.A. and Certain of Its Affiliates and Lehman Brothers Holdings Inc. and certain of its Affiliates (the "Motion").[1]

3. I am a Managing Director at LBHI. I joined LBHI in March 2009, and I am responsible for helping to manage the derivatives-related bankruptcy claims filed by LBHI's largest and most complex counterparties as well as managing a group of professionals who value all derivatives transactions in the Chapter 11 Estates. I have been deeply involved in derivatives-

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion.

related litigations brought by the Chapter 11 Estates, including, in particular, the litigation with Citibank, N.A. ("Citibank") and certain of its affiliates in various adversary proceedings.

## Background

4. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF, commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

5. On September 14, 2010, LBSF commenced Adversary Proceeding No. 10-03547 (SCC), captioned *Lehman Bros. Special Financing Inc. v. Bank of America N.A., et al., (In re Lehman Bros. Holdings Inc.)*, Case No. 08-13555 (SCC) (the "Bank of America Litigation"), challenging, among other things, (a) the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes; and (b) the distribution of funds to certain holders of notes. LBSF named Citibank as a "Trustee Defendant" and a "Noteholder Defendant," and Citicorp Nominees Pty Ltd. ("Citi Nominees") and CGMI as "Noteholder Defendants" in the Bank of America Litigation.

6. On September 14, 2010, LBSF commenced Adversary Proceeding No. 10-03542 (SCC), captioned *Lehman Bros. Special Financing Inc. v. U.S. Bank N.A., et al., (In re Lehman Bros. Holdings Inc.)*, Case No. 08-13555 (SCC) (the "U.S. Bank Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

7. On September 14, 2010, LBFP commenced Adversary Proceeding No. 10-03544 (SCC), captioned *Lehman Brothers Financial Products Inc. v. The Bank of New York*

*Mellon Trust Co. N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Case No. 08-13555 (SCC) (the "LBFP BNY Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBFP's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

8. On September 14, 2010, LBSF commenced Adversary Proceeding No. 10-03545 (SCC), captioned *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Trust Corp., et al., (In re Lehman Brothers Holdings Inc.)*, (the "LBSF BNY Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

9. On October 1, 2010, LBSF commenced Adversary Proceeding No. 10-03809 (SCC), captioned *Lehman Bros. Special Financing Inc. v. Wells Fargo N.A., et al., (In re Lehman Bros. Holdings Inc.)*, Case No. 08-13555 (SCC) (the "Wells Fargo Litigation," and together with the Bank of America Litigation, the U.S. Bank Litigation, the LBFP BNY Litigation, and the LBSF BNY Litigation, the "Flip Clause Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

10. On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012.

11. On February 8, 2012, LBHI commenced Adversary Proceeding No. 12-1043 (SCC), captioned *Lehman Bros. Holdings Inc. v. CitiMortgage, Inc., (In re Lehman Bros. Holdings Inc.)*, Case No. 08-13555 (SCC) (the "CitiMortgage Litigation"), seeking, among other things, to recover or to avoid the transfer of certain settlement funds allegedly transferred by

LBHI to CitiMortgage on or about August 29, 2008. CitiMortgage filed an answer to LBHI's Complaint, [ECF No. 21], dated September 19, 2014, denying all claims and asserting numerous defenses.

12. On February 8, 2012, LBHI, LBSF, LBCS, LBCC, and the Creditors' Committee (collectively, "Plaintiffs") commenced Adversary Proceeding No. 12-1044 (SCC), captioned *Lehman Bros. Holdings Inc., et al v. Citibank, N.A., et al., (In re Lehman Bros. Holdings Inc.)*, Case No. 08-13555 (SCC) (the "Citibank Litigation," and together with the Flip Clause Litigation and the CitiMortgage Litigation, the "Relevant Adversary Proceedings"). On December 19, 2014, Plaintiffs' filed their *Third Amended Complaint and Claims Objection*, [ECF No. 99], in the Citibank Litigation (the "Amended Complaint"). Pursuant to the Amended Complaint, Plaintiffs, among other things: (a) challenge Citibank's ability to set off against a $2 billion cash deposit of LBHI; (b) challenge the validity and enforceability of a September 9, 2008 amendment to a Guaranty dated January 7, 2004; (c) challenge Citibank's alleged retention of $204 million owed to LBCC under the Citibank CLS Settlement Services Amended and Restated Agreement for CLS User Members among Lehman Brothers Inc. ("LBI"), LBCC, and Citibank, N.A. (London Branch), dated as of October 28, 2004 ("CLS Agreement"); (d) challenge approximately $15 million in Disputed CLS Transfers (as defined below); (e) challenge the amount and validity of various "Citi Derivatives Claims" (as later defined herein) arising from the early termination of various swap agreements and other financial derivatives contracts, and assert that the Citibank Entities owe the Lehman Entities more than $200 million as a result of such early terminations; (f) seek the return of LBHI's $2 billion cash deposit; (g) seek the disallowance, reduction, and equitable subordination of Citi's claims, including the Citi

Derivatives Claims; and (h) seek damages, as well as statutory interest under New York law and other costs and fees.[7]

13. The Citibank Entities that are defendants in the Citibank Litigation (collectively, the "Citi Defendants") filed an answer to the Amended Complaint, dated April 9, 2015 [ECF No. 107] (the "Answer"), denying all claims and asserting numerous defenses.

14. The Parties engaged in extensive fact and expert discovery over the course of almost five years. Party and third-party productions totaled over 1.4 million documents, over thirty expert witnesses provided expert reports, and approximately 170 depositions were taken in the case. Multiple summary judgment motions were filed, including with respect to Citibank's claims against LBHI for post-petition interest and fees, Citibank's ability to set off LBHI's $2 billion cash deposit, the validity and enforceability of the September 9, 2008 amendment to a Guaranty dated January 7, 2004, and whether certain trades were rightfully within the trade population for Citi Derivatives Claims.

15. Following discovery and substantial pre-trial motion practice (including motions *in limine*), trial of the Citibank Litigation commenced on April 25, 2017. Over the next four months, the Court presided over 42 days of trial, including substantial fact and expert testimony.

16. In late August, 2017, the Parties agreed to renew settlement discussions and invited the Court to confer with them during the process. In early September 2017, those settlement discussions commenced and, following a five-day mediation, on September 13, 2017, the Parties agreed to the terms of a global settlement, the terms of which are embodied in the

---

[7] On March 12, 2015, the Court so-ordered that certain *Stipulation Dismissing Counts IX And X Of The Third Amended Complaint With Prejudice* [ECF No. 106], pursuant to which Plaintiffs' dismissed claims against Citibank for recovery of a $500 million transfer allegedly made to Citibank on or about September 14, 2008.

Settlement Agreement, resolving all of the Settled Claims (as defined below) and dismissing the Relevant Adversary Proceedings pursuant to the terms of the Settlement Agreement.

### The Settlement

17.     By the Motion, the Movants are seeking approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), of a global settlement of disputes among the Lehman Entities[2] and the Citibank Entities[3] (the "Settlement"), the terms of which are to be reflected in a settlement agreement (the "Settlement Agreement"). The Settlement Agreement provides for the resolution of substantially all of the disputes between the parties thereto, including the Relevant Adversary Proceedings, and puts an end to years of contentious litigation.

18.     The Settlement Agreement will result in the return of approximately $1.74 billion to the Lehman Entities. Prior to the Petition Date, LBHI had deposited $2 billion with Citibank. Prior to the date of this Motion, the Lehman Entities maintained deposit accounts with Citibank with an aggregate balance of approximately $2,093,445,729. Under the Settlement Agreement, Citibank will return, and LBHI will receive, approximately $1,743,445,729 from those deposit accounts.

19.     The Settlement Agreement resolves all of the Relevant Claims asserted by the Citibank Entities against the Lehman Entities, including the following proofs of claim,

---

[2]     As used herein, the term "Lehman Entities" means LBHI, LBSF, Lehman Brothers Commercial Corp. ("LBCC"), Lehman Brothers Commodity Services Inc. ("LBCS"), and Lehman Brothers Financial Products Inc. ("LBFP").

[3]     As used herein, the term "Citibank Entities" means Citibank, N.A. ("Citibank"), Citigroup Global Markets Inc. ("CGMI"), Citigroup Financial Products Inc. ("Citi Financial"), Citigroup Global Markets Ltd. ("CGML"), Citi Canyon Ltd. ("Citi Canyon"), CitiMortgage, Inc. ("CitiMortgage"), Citibank A.S., Citibank Korea Inc. ("Citi Korea"), Citi Swapco Inc. ("Citi Swapco"), and Citigroup Energy Inc. ("Citi Energy").

-6-

including any claims for post-petition interest, fees, and costs against any of the Lehman Entities on account of such claims (collectively, the "Settled Claims"):[9]

| Creditor | Debtor | Claim # |
|---|---|---|
| Citibank | LBHI | 797 |
| Citibank | LBCS | 17932 |
| Citibank | LBHI | 29873 |
| Citibank | LBSF | 67733 |
| Citibank | LBCC | 67734 |
| Citibank | LBHI | 67736 |
| CGMI | LBHI | 68119 |
| Citi Financial | LBSF | 17926* |
| Citi Financial | LBHI | 29637* |
| CGML | LBCS | 29880 |
| CGML | LBSF | 29881 |
| CGML | LBHI | 29882 |
| Citi Canyon | LBSF | 17895 |
| CitiMortgage | LBHI | 17899 |
| Citi Canyon | LBHI | 17913 |
| Citibank A.S. | LBHI | 17918 |
| Citibank (as assignee of Citi Korea) | LBHI | 17921* |
| Citi Swapco | LBSF | 17933 |
| Citi Swapco | LBHI | 17934 |
| Citi Energy | LBHI | 17936 |
| Citi Energy | LBCS | 17937 |

* Settled Claims do not include certain portions of the proof of claim allowed pursuant to prior settlement agreement dated September 3, 2015 among certain of the Lehman Entities and Citibank Entities.

20.    The Settlement Agreement also resolves all of the pending litigation in the Relevant Adversary Proceedings between the Citibank Entities and the Lehman Entities before this Court, including the Citibank Litigation, the CitiMortgage Litigation and the Flip Clause Litigation, each as more fully described in the Motion.

21.    Pursuant to the Settled Claims, the Citibank Entities asserted approximately $2.1 billion in claims against the Lehman Entities, the majority of which were

---

[9] The Settlement Agreement does not affect any claims held by the Citibank Entities that were asserted in properly filed proofs of claim and not otherwise identified in the Schedules to the Settlement Agreement.

asserted in full against LBSF, LBCC, or LBCS as primary obligor, and LBHI as guarantor. The Settled Claims involve more than thirty-thousand (30,000) transactions, including complex derivatives transactions, and include guaranty claims and claims based on loans. The Citi Derivatives Claims being settled here total approximately $1.8 billion. The Relevant Adversary Proceedings involve dozens of causes of action based on equally complex pre-Commencement Date financial transactions involving the Citibank Entities and the Lehman Entities. Attempting to settle these disputes on an individual or piecemeal basis has proven to be difficult and impractical. Accordingly, the Plan Administrator determined, in the exercise of its sound business judgment, that a global settlement had the potential to produce a settlement that is fair and reasonable, and in the best interests of the Lehman Entities and their respective estates and creditors. I believe that the global Settlement embodied in the Settlement Agreement achieves that result.

22. The mechanics of the Settlement Agreement, and the transactions contemplated thereby, are accurately described in the Motion.

23. The Settlement Agreement provides that the Lehman Entities and Citibank (on behalf of itself and the Citibank Entities) will execute mutual releases, which shall include a full and final release of (1) all claims held by the Citibank Entities against the Lehman Entities that were asserted in, could have been asserted in, or relate to the Relevant Claims, and (2) all claims, causes of action, defenses, and counterclaims of the Parties against one another and the Parties' affiliates and subsidiaries that were asserted in, could have been asserted in, or relate to the Relevant Adversary Proceedings; *provided*, that the mutual releases shall not release (a) any claims held by the Citibank Entities that have been asserted in a properly filed proof of claim that is not a Relevant Claim (e.g., claims that previously were allowed by court order) or (b) any right or obligation under the Settlement Agreement.

24. In consideration of the Debit Amount and other consideration provided under the Settlement Agreement, the parties agreed that the Citibank Entities would transfer and assign the Relevant Claims to LBHI. The Parties also agreed that in the event they are unable to transfer any claim(s) by way of assignment, they will enter into mutually acceptable documentation providing Lehman a participation interest in the relevant claim(s) or otherwise transferring the economic benefit of the claims to Lehman.

25. Attempting to resolve the Settled Claims on an individual or piecemeal basis has proven to be difficult and impractical. Accordingly, the Plan Administrator determined, in the exercise of its sound business judgment, and I believe, that the Settlement is fair and reasonable, and in the best interests of the Lehman Entities and their respective estates and creditors.

26. Although the Plan Administrator believes that many of the claims asserted by the Citibank Entities are greatly overstated and, if litigated to finality, would be greatly reduced in amount, the Plan Administrator acknowledges that there are hundreds of variables at play, and that the outcome of litigation is inherently uncertain. Accordingly, the Plan Administrator has determined in its informed business judgment that the terms of the Settlement Agreement are in the best interests of the Lehman Entities and their respective estates and creditors. Absent consummation of the Settlement Agreement, the Lehman Entities and the Citibank Entities would proceed with litigation, which would include time-consuming and expensive legal proceedings, including potential appeals, as well as the risks attendant to such litigation. The Settlement Agreement will enable the Lehman Entities to avoid expending further resources in connection with these disputes, while recovering substantial funds that have been held by Citibank in the Deposit Accounts for nearly nine years.

27. Here, the Settlement Agreement will benefit LBHI, LBSF, their estates and their creditors and the other Lehman Entities. First, the Settlement Agreement will result in the return of approximately $1.74 billion to the Lehman Entities. The Plan Administrator has determined, in the exercise of its business judgment, that the Turnover Amount is reasonable in light of the complexities of the litigation, the attendant risks and the likely costs of litigating the Disputed Matters to finality. Second, entry into the Settlement Agreement will avoid future disputes and litigation, including what could be protracted appeals, concerning the Disputed Matters.

28. In addition, the Settlement is the product of extensive good faith, arm's length negotiations and is not the product of collusion or fraud. Rather, the Settlement is the result of the Parties' shared recognition of the litigation risks to which each side is exposed, and the realization that litigating all of the Disputed Matters to a final resolution would be exorbitantly expensive and time-consuming. The Parties thus negotiated in good faith, at arm's length, to resolve the Disputed Matters.

29. For the reasons stated above, I believe the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the parties' disputes, well within the "range of reasonableness," and are in the best interests of each of the Lehman Entities and their respective estates and creditors.

30. I have discussed the Settlement at length with my colleagues involved in the management of the Chapter 11 Estates and we have concluded, in our considered business judgment, that the Settlement is in the best interests of each of the Lehman Entities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of September 2017.

/s/ Steven Mullaney
Steven Mullaney