# Exhibit 1

## SETTLEMENT AGREEMENT

AGREEMENT dated as of September 29, 2017 (the "<u>Settlement Date</u>") among Citibank, N.A., ("<u>Citibank</u>") on behalf of itself and on behalf of Citigroup Financial Products Inc., Citigroup Global Markets Ltd., Citigroup Global Markets Inc., Citibank A.S., Citi Canyon Ltd., Citi Swapco Inc., Citibank Korea Inc., Citigroup Energy Inc., and CitiMortgage, Inc. (together with Citibank, each a "<u>Citibank Entity</u>" and collectively the "<u>Citibank Entities</u>"), Lehman Brothers Holdings Inc., in its individual capacity and as Plan Administrator ("<u>LBHI</u>"), Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), Lehman Brothers Commercial Corp. ("<u>LBCC</u>"), Lehman Brothers Commodity Services Inc. ("<u>LBCS</u>"), and Lehman Brothers Financial Products Inc. ("<u>LBFP</u>" and together with LBHI, LBSF, LBCC, and LBCS, each a "<u>Lehman Entity</u>" and collectively the "<u>Lehman Entities</u>"), and the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. (the "<u>Committee</u>"), through its litigation subcommittee (the "<u>Subcommittee</u>") (each a "<u>Party</u>" and collectively the "<u>Parties</u>").  Reference is made to Section 1 below for the meaning of certain capitalized terms used herein without definition.

### Background

A.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "<u>Chapter 11 Cases</u>") under chapter 11 of title 11 of the United States Code, as amended, before the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) at Case No. 08-13555 (SCC).  The Committee is the official committee of unsecured creditors appointed in the Chapter 11 Cases.

B.    On or before the deadline to file proofs of claim against the Lehman Entities in the Chapter 11 Cases, the Citibank Entities filed numerous proofs of claim against the Lehman Entities, including those proofs of claim set forth on Schedule A-1 and Schedule A-2.

C.    On September 14, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. Bank of America, N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03547, last amended on October 13, 2015 at Dkt. 1156 (as amended, the "<u>Bank of America Litigation</u>"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.  On February 6, 2017, LBSF filed a notice of appeal, Adv. No. 10-03547 at Dkt. 1403, from an order entered by the Bankruptcy Court on July 19, 2016 dismissing certain claims asserted in the Bank of America Litigation, Adv. No. 10-03547 at Dkt. 1371, Addendum A to which notice of appeal, Adv. No. 10-03547 at Dkt. 1403-1, listed as defendants Citibank, Citicorp Nominees Pty Ltd., and Citigroup Global Markets Inc.

D.    On September 14, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. U.S. Bank N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03542 (the "<u>U.S. Bank Litigation</u>"), challenging, among other things, the enforceability of certain contractual provisions

1

purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

E.      On September 14, 2010, LBFP commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Financial Products Inc. v. The Bank of New York Mellon Trust Co. N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03544 (the "LBFP BNY Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBFP's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes. On October 8, 2015, the parties to the LBFP BNY Litigation filed a stipulation voluntarily dismissing the adversary proceeding, with prejudice, Adv. No. 10-03544 at Dkt. 88.

F.      On September 14, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Trust Corp., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03545 (the "LBSF BNY Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

G.      On October 1, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. Wells Fargo N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03809 (the "Wells Fargo Litigation," and together with the Bank of America Litigation, the U.S. Bank Litigation, the LBFP BNY Litigation, and the LBSF BNY Litigation, each a "Flip Clause Litigation" and collectively the "Flip Clause Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.

H.      On December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 at Dkt. 23023 (the "Plan"). LBHI was appointed as Plan Administrator under the Plan, with the powers and authority stated in the Plan. Pursuant to the Plan, the Subcommittee has a continuing role with respect to certain litigation conducted by LBHI as Plan Administrator.

I.      LBHI and the Committee commenced an adversary proceeding and claims objection in the Bankruptcy Court against certain Citibank Entities on February 8, 2012, captioned *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 12-01044 at Dkt. 1, amended on December 9, 2014, Adv. No. 12-01044 at Dkt. 99 (as amended, the "Citibank Litigation"). Pursuant to the Citibank Litigation, certain of the Lehman Entities asserted claims to, among other things, recover more than $2 billion in prepetition deposits maintained by Citibank and recover amounts allegedly owing to the Lehman Entities on terminated derivatives trades. The Lehman Entities also objected to, and sought to equitably subordinate, certain of the Citibank Entities' claims against the Lehman Entities, including the claims included in proofs of claim 67736, 29882, 29637, 17934, 17913, and 17936 (against LBHI), 17895, 67733, 17926, 29881, and 17933 (against LBSF), 67734 (against LBCC), and

17937 and 29880 (against LBCS). The proofs of claim to which the Lehman Entities objected included approximately $1.8 billion in claims arising from terminated derivatives.

J.      LBHI commenced an adversary proceeding in the Bankruptcy Court against CitiMortgage, Inc. on February 8, 2012, captioned *Lehman Brothers Holdings Inc. v. CitiMortgage, Inc., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 12-01043 at Dkt. 1 (the "CitiMortgage Litigation").

K.      The Lehman Entities have represented to Citibank that they have objected to all of the Citibank Entities' claims in the Chapter 11 Cases to which they will object and will not object to any other claims of any Citibank Entity.

L.      The Lehman Entities and the Citibank Entities have disputes regarding the Disputed Matters and desire to resolve these disputes.  The Parties have engaged in extensive discussions and negotiations in a good-faith attempt to reach a consensual resolution of the Disputed Matters.

M.      The Parties desire to provide for the resolution of all of the Disputed Matters on the terms and conditions set forth below.

**THEREFORE, IT IS AGREED**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged:

### Terms and Conditions

1.      Defined Terms.   In this Settlement Agreement, the following terms shall have the following respective meanings.

"Actions" means all claims, objections to claims, causes of action, avoidance actions, setoff challenges, debts, obligations, rights, suits, damages, actions, interests, remedies, costs, expenses and liabilities, whether asserted or un-asserted, known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, accrued or un-accrued, state or federal, currently existing or hereafter arising, in law, contract, equity or otherwise, including without limitation all claims for prepetition, post-petition, post-confirmation, prejudgment and post-judgment interest and all appeal rights.

"Approval Order" means an order of the Bankruptcy Court in the form of Exhibit A hereto (with only such changes to which each of the Parties may agree in its sole discretion).

"Assigned Claims" means those claims set forth in the proofs of claim listed on Schedule A-1, including any claims for post-petition interest, fees, and costs against the Lehman Entities on such claims.

"Disputed Matters" means the Relevant Claims and the Relevant Adversary Proceedings, including any and all Actions arising from or relating to the matters, facts, and circumstances described in the Relevant Claims and the Relevant Adversary Proceedings.

"Effective Date" means the date on which the Approval Order shall have become a Final Order as defined in the Plan.

"Relevant Claims" means the Assigned Claims, the Withdrawn Claims, and the Subrogated Claims.

"Relevant Adversary Proceedings" means the Citibank Litigation, the CitiMortgage Litigation, and the Flip Clause Litigation (as to the Flip Clause Litigation, solely to the extent the Actions asserted therein are asserted against Citibank Releasees).

"Subrogated Claims" means those claims set forth on Schedule B, including any claims for post-petition interest, fees, and costs against the Lehman Entities on such claims.

"Turnover Date" means the date on which the Turnover Amount shall have been transferred to LBHI in accordance with Section 2 of this Agreement.

"Withdrawn Claims" means those claims set forth in the proofs of claim listed on Schedule A-2, including any claims for post-petition interest, fees, and costs against the Lehman Entities on such claims.

2.    Turnover of Deposits to LBHI.  As soon as reasonably practicable, and in any event no later than the fifth business day, after the Effective Date, Citibank shall (i) debit $350,000,000.00 (the "Debit Amount") from LBHI's deposit account 20435400 at Citibank and transfer the Debit Amount to a Citibank account for the exclusive benefit of the Citibank Entities, and (ii) transfer to LBHI the remaining balance in deposit account 20435400, together with the available balance in each of the other deposit accounts belonging to Lehman Entities at Citibank set forth on Schedule C, including any accrued interest credited to the accounts on Schedule C before the Turnover Date (collectively, the "Turnover Amount"), by wire transfer of immediately available funds to the following account (the "Turnover Account"):

> Branch: Citibank New York
> SWIFT: CITIUS33
> ABA: 021000089
> Address: 111 WALL STREET
> NEW YORK, NEW YORK 10043 (USA)
>
> Account Number: 3078-4686
> Account Name: Lehman Brothers Holdings Inc.

Citibank's transfer of the Debit Amount and the Turnover Amount pursuant to Section 2 of this Settlement Agreement shall be made free and clear of all liens, claims and encumbrances; *provided, however,* that the Parties acknowledge that LBSF has a security interest in the deposit accounts set forth on Schedule C to the extent provided in that certain Order Authorizing Lehman Brothers Special Financing Inc. to Invest Disputed Claims Reserves [Docket No. 50558], dated August 7, 2015 (the "Disputed Claims Reserves Order"), and that the existence of such interest shall not be deemed a breach of any representations or warranties made in this Settlement Agreement; and *provided, further,* that LBSF consents to the transfer of the Debit

Amount and the Turnover Amount and waives, releases, and, upon the transfer of the Debit Amount and the Turnover Amount, discharges all Actions against Citibank arising under or relating to the Disputed Claims Reserve Order.

3. <u>Mutual Releases</u>.

    (a)    Automatically on the Turnover Date, all of the Lehman Entities and the Committee hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every one of the Citibank Entities, all of their parents, subsidiaries, and affiliates, including, without limitation, Citicorp Nominees Pty Ltd., Starling Strategies Ltd., OSDF Ltd., Citigroup Investments Inc., CGI Private Equity, L.P., LLC., and Citigroup Alternative Investments LLC., and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, predecessors, and representatives (each a "<u>Citibank Releasee</u>" and collectively, the "<u>Citibank Releasees</u>") from and in respect of all Disputed Matters; *provided, however,* that the foregoing release, waiver, and discharge shall not release, waive, or discharge any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; and *provided, further,* that in the event that any of Citicorp Nominees Pty Ltd., Starling Strategies Ltd., OSDF Ltd., Citigroup Investments Inc., CGI Private Equity, L.P., LLC., or Citigroup Alternative Investments LLC seeks to assert, amend, or assign to any party any Action against any Lehman Entity arising from or relating to the matters, facts, and circumstances described in the Disputed Matters, the foregoing release, waiver, and discharge of that particular Citibank Releasee shall be null and void.

    (b)    Automatically on the Turnover Date, all of the Citibank Entities hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every of the Lehman Entities and all of their parents, subsidiaries, and affiliates (in each case who are debtors in the Chapter 11 Cases), the Committee, and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, predecessors, and representatives (each a "<u>Lehman Releasee</u>" and collectively, the "<u>Lehman Releasees</u>") from and in respect of the Disputed Matters; *provided, however,* that the foregoing release, waiver, and discharge shall not release, waive, or discharge (i) any claim held by the Citibank Entities that has been asserted in a properly filed proof of claim that is not a Relevant Claim, (ii) any claim held by any of the Citibank Entities asserted in a Relevant Claim that has been previously allowed under the Plan pursuant to a prior settlement between any of the Citibank Entities and any of the Lehman Entities, and (iii) any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement.

(c)     Each Lehman Entity and the Committee confirms and agrees that it will commence no further Actions against any of the Citibank Releasees, including that it will not object to or otherwise challenge claims filed by any of the Citibank Releasees in the Chapter 11 Cases, and releases and waives any such further Action, objection or challenge; *provided, however,* that the foregoing confirmation and agreement shall not release, waive or discharge any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; and *further provided, however*, that nothing in this Section 3(c) shall prevent any Lehman Entity from asserting any counterclaim or defense in any Action commenced against it by any Citibank Releasee after the Settlement Date.

(d)     All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the Actions described in Sections 3(a), (b), and (c).  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

(e)     Each Lehman Entity and the Committee further confirms and agrees that it is not aware of any actual or potential Action held by any of the Lehman Entities or any other subsidiaries of LBHI against any Citibank Releasee that would not be released by Sections 3(a) and 3(c) hereof.

(f)     Each Party represents and warrants that it has not sold, assigned, transferred, or otherwise encumbered or disposed of, and will not sell, assign, transfer, or otherwise encumber or dispose of, any Action purported to be released by such Party pursuant to Sections 3(a), (b) or (c) (a "Released Action") or, for the avoidance of doubt, any Action that, if not for any such sale, assignment, transfer, or other disposition, would constitute a Released Action.

(g)     Notwithstanding any other provision herein, this Settlement Agreement shall not, and shall not be deemed to, waive, alter, or otherwise change the Parties' obligations under any operative confidentiality or protective order entered by the Bankruptcy Court in the Relevant Adversary Proceedings, or relieve any Party of any obligation to respond to discovery requests related to claims by or against third parties.

(h)     Bracebridge.  For the avoidance of doubt, the mutual releases made pursuant to this Section 3 shall include a full and final release of all Actions in connection with the Collapse Transaction as defined in the Third Amended Complaint and Claims Objection filed in the Citibank Litigation, Adv. No. 12-01044 at Dkt. 99. Citibank further covenants that:  (i) neither it nor any Citibank Entity will pursue

any Actions against Bracebridge Capital, LLC, or any of its affiliates or subsidiaries (the "Bracebridge Entities"), or any of the Bracebridge Entities' affiliates, successors, or assigns, arising from the Collapse Transaction or any modification, abandonment, cancellation, repudiation, assignment, novation, breach, or other acts or omissions of the Citibank Entities or the Bracebridge Entities affecting the Collapse Transaction, and (ii) neither it nor any Citibank Entity will seek to assign to any party any Actions arising from the Collapse Transaction.

4.    <u>Assignment of Assigned Claims and Subrogated Claims</u>.

(a)    Automatically on the Turnover Date, and in consideration of the Debit Amount and other consideration provided under this Settlement Agreement, in each case without any further action by any party, (i) the Citibank Entities irrevocably sell, transfer, assign, grant, and convey the Assigned Claims and the Subrogated Claims to LBHI with effect on and after the Turnover Date, and (ii) LBHI irrevocably acquires and assumes the Assigned Claims and the Subrogated Claims with effect on and after the Turnover Date.

(b)    LBHI hereby acknowledges and confirms that (i) the Assigned Claims and Subrogated Claims are being assigned to LBHI on an "AS-IS," "WHERE-IS" basis and "WITH ALL FAULTS," and subject to any and all claims and defenses of all types, *except, for the avoidance of doubt*, any claims or defenses by any Citibank Entity to the assignment of the Assigned Claims and Subrogated Claims, (ii) the Citibank Entities make no representations or warranties concerning the validity, enforceability, or any other aspect of the Assigned Claims and Subrogated Claims, and (iii) the Citibank Entities do not promise, guarantee or warrant that the Lehman Entities are entitled to exercise any subrogation rights related to the Assigned Claims or Subrogated Claims; *provided, however*, that notwithstanding this Section 4(b), the Citibank Entities represent and warrant that they have not sold, assigned, transferred, or otherwise encumbered any of the Assigned Claims or Subrogated Claims.

(c)    LBHI hereby covenants and agrees that the Citibank Entities shall not be liable for any claims, damages, or losses incurred by LBHI if (i) the assignment of the Assigned Claims and Subrogated Claims pursuant to this Settlement Agreement is not recognized or enforced for any reason in the bankruptcy or insolvency proceeding of the primary obligor liable for the Assigned Claim or Subrogated Claim, or (ii) LBHI is unable to receive any distribution, payment, or recovery on account of the Assigned Claims and Subrogated Claims, *provided*, *however*, that Citibank shall promptly transfer to the Turnover Account the amount of any payments or distributions received by any Citibank Entity in respect of any of the Relevant Claims after the Turnover Date; and *provided, further*, that the foregoing covenant and agreement shall not release, waive or discharge any liability of any Citibank Entity for breach of any of its obligations under Section 4 of this Settlement Agreement.

(d)    LBHI hereby covenants and agrees that it will indemnify, reimburse, and hold harmless the Citibank Entities for any fees (including counsel fees incurred after the Turnover Date), costs, expenses, fines, or other amounts incurred by, or imposed on, the Citibank Entities resulting from the assignment of the Assigned Claims and Subrogated Claims, including any amounts incurred by the Citibank Entities in connection with their assisting LBHI in defending or responding to any challenge or objection to the assignment of the Assigned Claims and Subrogated Claims, any challenge or objection to LBHI's asserted subrogation rights, or other means of transferring the economic benefits of the Subrogated Claims to LBHI; *provided, however*, that prior to incurring any counsel fees, the Citibank Entities must confer in good faith and cooperate with LBHI to determine the most cost-effective means of effectuating the transfer of the economic benefit of any challenged claims, including at LBHI's option, providing LBHI a 100% participation interest in such claims or otherwise transferring their economic benefit to LBHI.  Notwithstanding any provision of this Settlement Agreement to the contrary, the Citibank Entities shall have no obligation to defend or respond to any challenge or objection to the assignment of the Assigned Claims and Subrogated Claims; *provided, however*, that if requested by LBHI, Citibank shall use reasonable efforts to assist the Lehman Entities in enforcing any rights of subrogation they may have with respect to the Subrogated Claims.  To the extent not paid in cash within thirty (30) days of written notice from Citibank, Citibank shall receive an allowed administrative expense claim against LBHI in an amount equal to the reasonable and documented fees, costs, expenses, fines, or other amounts incurred by, or imposed on, the Citibank Entities that are indemnified by LBHI under this Settlement Agreement.

(e)    In the event that the assignment of any Subrogated Claim is not permitted by applicable law, or LBHI is unable to resolve a primary obligor's objection to such assignment, then the Parties shall enter into mutually agreeable documentation providing LBHI a 100% participation interest in the Subrogated Claims or otherwise transferring the economic benefit of the Subrogated Claims to LBHI; *provided, however*, that the Parties acknowledge that any participation interest or transfer of the economic benefit of the Subrogated Claims shall not include payments or distributions to the Citibank Entities on account of the Subrogated Claims made on or before the Turnover Date.

5.    <u>Withdrawal of Withdrawn Claims</u>.

(a)    Automatically on the Turnover Date, and in consideration of the Debit Amount and other consideration provided under this Settlement Agreement, without any further action by any party, the Withdrawn Claims shall be deemed satisfied and withdrawn with prejudice.  The Citi Entities authorize LBHI to provide a copy of this Settlement Agreement to the Bankruptcy Court-approved claims and noticing agent with instructions to update the claims registry to reflect the withdrawal of the Withdrawn Claims.

(b)     Citibank covenants and agrees that neither it nor any Citibank Entity will seek to amend or assert or assign to any party any Withdrawn Claim or any claim against any Lehman Entity that has previously been withdrawn in writing by any Citibank Entity.

6.    <u>Dismissal of Relevant Adversary Proceedings</u>.    Not later than two business days following the Turnover Date, the Lehman Entities, as applicable, will dismiss with prejudice each of the Citibank Releasees, as applicable, from the Relevant Adversary Proceedings, with each party to bear its own costs.

7.    <u>Termination of Reserve Stipulations</u>.  On the Turnover Date, any existing stipulations or agreements among the Parties regarding the Lehman Entities' reserve obligations under the Plan, solely to the extent such obligations are in respect of any of the Relevant Claims, shall be deemed terminated.

8.    <u>Bankruptcy Court Approval</u>.

(a)     The obligations of the Lehman Entities to this Settlement Agreement are subject to Bankruptcy Court approval, except that LBHI's obligations under this Section 8(a) are effective upon the Settlement Date.  Effective upon the Settlement Date, LBHI shall promptly file a motion with the Bankruptcy Court seeking entry of the Approval Order, and shall reasonably endeavor to obtain the entry and finality of the Approval Order.  LBHI shall consult in good faith with Citibank as to such motion and any related pleadings and any changes to the Approval Order. Citibank shall cooperate in good faith with LBHI's efforts to obtain the entry and finality of the Approval Order; and all of the Citibank Entities, the Lehman Entities, and the Committee, their counsel and other agents and representatives, shall in good faith and to the full extent reasonably possible (i) cooperate with each other's reasonable requests regarding such motions and related pleadings, (ii) refrain from issuing any press releases relating to this Settlement Agreement or the Disputed Matters, (iii) refrain from making disparaging statements about the other in such motion, pleadings, and any other written or oral statements (including without limitation public statements and statements to the media) relating to this Settlement Agreement or the Disputed Matters (other than in connection with any action, suit, or proceeding to enforce the terms hereof), and (iv) refrain from publicly characterizing the settlement as more favorable to the Lehman Entities or to the Citibank Entities, or as being other than fair, reasonable, equitable, or the like.

(b)     In the event that the Bankruptcy Court declines to enter the Approval Order (or a court enters an order precluding the entry of an order that would qualify as the Approval Order or overturning any Approval Order entered by the Bankruptcy Court, and such order has become final and no longer subject to appeal or certiorari proceeding), this Settlement Agreement shall terminate and be of no further force or effect.  If this Settlement Agreement terminates in accordance with the preceding sentence, each provision contained in this Settlement Agreement shall be of no further force and effect from and after such date of

termination and (without limiting the generality of the foregoing) the mutual releases and contractual modification provided for in Sections 3 and 4 shall be void *ab initio*; *provided*, *however*, that Section 12 shall survive any termination of this Settlement Agreement.

(c)     All litigation activity of whatever nature in connection with the Citibank Litigation and the CitiMortgage Litigation (except steps necessary to effectuate the Settlement Agreement) shall be suspended unless and until this Settlement Agreement is terminated in accordance with Section 8(b).

9.    Lehman Entity Accounts.

(a)     The Parties shall cooperate as may be required from time to time to close the accounts identified on Schedule C.  Such cooperation may include, but is not limited to, the issuance of instruction letters by the Lehman Entities to Citibank directing the closing of accounts.

(b)     In order to identify any additional accounts (including but not limited to bank deposit accounts) not identified on Schedule C of this Agreement owned by any Lehman Entity and maintained at any Citibank Entity (each a "Lehman Entity Account" and collectively, the "Lehman Entity Accounts"), LBHI shall provide the Citibank Entities with the Employer Identification Numbers of the Lehman Entities, and the Citibank Entities shall make prompt and reasonable efforts to search for accounts corresponding to those Employer Identification Numbers and provide a list of any such Lehman Entity Accounts to LBHI.  The Parties shall engage in good faith discussions to determine the proper disposition of any property in such Lehman Entity Account in a manner consistent with this Settlement Agreement.

(c)     Except as provided in Section 2 herein, nothing in this Settlement Agreement, including but not limited to the provisions of Section 3(a) and Section 3(c) herein, shall release, waive, or discharge any right of any Lehman Entity in any Lehman Entity Account.

10.    Further Assurances.  Each Party shall execute and deliver at its own expense such writings as may reasonably be requested by another Party to effectuate the terms of this Settlement Agreement.

11.    Entire Agreement.  This Settlement Agreement constitutes the entire contract among the Parties relative to the subject matter hereof.  This Settlement Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, but all prior settlement agreements among the Parties and their affiliates shall remain in full force and effect.  No amendment, supplement, or modification of this Settlement Agreement, or waiver of rights hereunder, shall be binding unless executed in writing by the Party affected thereby.

12.    No Admissions.   Nothing in this Settlement Agreement or any negotiations or proceedings in connection herewith shall be claimed to be evidence of an admission by any Party

or its affiliates of any liability, violation of law, or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any Party. Neither this Settlement Agreement, nor any negotiations or proceedings in connection herewith, may be used in any proceeding against any Party or its affiliates for any purpose except with respect to the validity, effectuation, and enforcement of this Settlement Agreement. Nothing contained herein shall be deemed an admission by any Party of any assertions made herein by any other Party.

13.    Counterparts; Signatures. This Settlement Agreement may be executed in one or more counterparts, all of which taken together shall constitute one instrument. This Settlement Agreement may be executed and delivered manually, by facsimile transmission, or by email transmission.

14.    Governing Law; Jurisdiction. THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW) WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANOTHER JURISDICTION. Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, and any appellate court from any such court, in any proceeding arising out of or relating to this Settlement Agreement, or for recognition or enforcement of any judgment resulting from any such proceeding, and each Party hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, action, or proceeding may be heard and determined in the Bankruptcy Court. Each Party hereby knowingly, voluntarily, intentionally, irrevocably, and unconditionally waives, to the full extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any proceeding arising out of or relating to the Settlement Agreement in the Bankruptcy Court specified above, (ii) the defense of an inconvenient forum to the maintenance of such proceeding in the Bankruptcy Court, (iii) the right to object, with respect to such proceeding, that the Bankruptcy Court does not have jurisdiction over such Party and (iv) any right to a trial by jury with respect to any such proceeding.

15.    Binding Effect. This Settlement Agreement shall bind, and be for the benefit of, the Parties hereto and their respective successors and assigns as of the Settlement Date, subject only to necessary Bankruptcy Court approval of the Settlement Agreement by Final Order (as defined in the Plan). Nothing in this Settlement Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any rights, remedies, obligations, or liabilities under or by reason of this Settlement Agreement, *except* that all persons and entities released pursuant to Sections 3 and 4 of this Settlement Agreement are intended beneficiaries of such release (provided that this Settlement Agreement in any event may be amended, supplemented, or modified in the manner set forth in Section 11).

16.    Construction; No Reliance. This Settlement Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Settlement Agreement or any of its provisions against the Party responsible for drafting this Settlement Agreement will not apply in any construction or interpretation of this Settlement Agreement. All Section references in this Settlement Agreement refer to Sections of

this Settlement Agreement, unless otherwise specified.  The Parties acknowledge and agree that they have been represented by their own counsel and advisors in connection with this Settlement Agreement, have conducted their own investigations of the relevant facts and circumstances, and are not relying on any representations or warranties of any other Party except for the representations and warranties expressly set forth herein.

17.    <u>Full Power and Authority</u>.  LBHI hereby represents and warrants that it has full power and authority, in its capacity as Plan Administrator, to execute, deliver, and perform this Settlement Agreement on behalf of each Lehman Entity.  Citibank hereby represents and warrants that it has full power and authority to execute, deliver, and perform this Settlement Agreement on behalf of each Citibank Entity.  Pursuant to the Plan, the Subcommittee has full power and authority, in its capacity as the litigation subcommittee of the Committee, to execute, deliver, and perform this Settlement Agreement on behalf of the Committee by and through the member of the Subcommittee signing this Settlement Agreement.

IN WITNESS WHEREOF the Parties have executed this Settlement Agreement as of the date first set forth above.

[Remainder of page intentionally left blank]

*Signature Page to September 2017 Settlement Agreement*

CITIBANK, N.A., on behalf of itself and CITIGROUP FINANCIAL PRODUCTS INC.,
CITIGROUP GLOBAL MARKETS LTD., CITIGROUP GLOBAL MARKETS INC.,
CITIBANK A.S., CITI CANYON LTD., CITI SWAPCO INC., CITIBANK KOREA INC.,
CITIGROUP ENERGY INC., AND CITIMORTGAGE, INC.


By _____

Mary Reisert
Managing Director
Associate General Counsel
Citigroup Inc.
388 Greenwich Street
New York, New York 10013

*Signature Page to September 29, 2017 Settlement Agreement*

LEHMAN BROTHERS HOLDINGS INC.

By_____
MATHEW CANTOR   EVP-LEGAL AFFAIRS

LEHMAN BROTHERS SPECIAL FINANCING INC.

By_____
MATHEW CANTOR - EVP-LEGAL AFFAIRS

LEHMAN BROTHERS COMMERCIAL CORP.

By_____
MATTHEW CANTOR - EVP - LEGAL AFFAIRS

LEHMAN BROTHERS COMMODITY SERVICES INC.

By_____
MATTHEW CANTOR
EVP-LEGAL AFFAIRS

LEHMAN BROTHERS FINANCIAL PRODUCTS INC.

By_____
MATTHEW CANTOR
EVP-LEGAL AFFAIRS



OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

BY_____

14

*Signature Page to September 29, 2017 Settlement Agreement*

LEHMAN BROTHERS HOLDINGS INC.


By_____


LEHMAN BROTHERS SPECIAL FINANCING INC.


By_____


LEHMAN BROTHERS COMMERCIAL CORP.


By_____


LEHMAN BROTHERS COMMODITY SERVICES INC.


By_____


LEHMAN BROTHERS FINANCIAL PRODUCTS INC.


By_____


OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS
HOLDINGS INC.

BY THE LITIGATION SUBCOMMITTEE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.

BY _____

14

## Schedule A-1 Assigned Claims

| Creditor | Debtor | Proof of Claim # |
|---|---|---|
| Citibank, N.A. | LBCS | 17932 |
| Citibank, N.A. | LBSF | 67733 |
| Citibank, N.A. | LBCC | 67734 |
| Citigroup Financial Products Inc. | LBSF | 17926* |
| Citigroup Global Markets Ltd. | LBCS | 29880 |
| Citigroup Global Markets Ltd. | LBSF | 29881 |
| Citi Canyon Ltd. | LBSF | 17895 |
| Citi Swapco Inc. | LBSF | 17933 |
| Citigroup Energy Inc. | LBCS | 17937 |

*       Proof of Claim 17926 shall not include the "LBSF Rate Cap Claim" as defined in that certain Settlement Agreement dated September 3, 2015 among Lehman Brothers Holdings Inc., as Plan Administrator,  and is affiliated debtors and debtors in possession, and Citibank, N.A., Citigroup Financial Products Inc., and TOB Capital LP (the "September 2015 Settlement Agreement"). Notwithstanding any other provision of this Settlement Agreement to the contrary, the LBSF Rate Cap Claim shall not be an Assigned Claim or a Relevant Claim.

## Schedule A-2 Withdrawn Claims

| Creditor | Debtor | Proof of Claim # |
|---|---|---|
| CitiMortgage, Inc. | LBHI | 17899 |
| Citi Canyon Ltd. | LBHI | 17913 |
| Citibank A.S. | LBHI | 17918 |
| Citibank N.A. (as assignee of Citibank Korea Inc.) | LBHI | 17921* |
| Citi Swapco Inc. | LBHI | 17934 |
| Citigroup Energy Inc. | LBHI | 17936 |
| Citibank, N.A. | LBHI | 797 |
| Citibank, N.A. | LBHI | 29873 |
| Citibank, N.A. | LBHI | 67736 |
| Citigroup Global Markets Inc. | LBHI | 68119 |
| Citigroup Financial Products Inc. | LBHI | 29637** |
| Citigroup Global Markets Ltd. | LBHI | 29882 |

\*       Proof of Claim 17921 shall not include the "LBSF ISDA Guarantee Claim" as defined in the September 2015 Settlement Agreement.  Notwithstanding any other provision of this Settlement Agreement to the contrary, the LBSF ISDA Guarantee Claim shall not be a Withdrawn Claim or a Relevant Claim.

\*\*       Proof of Claim 29637 shall not include the "LBSF Rate Cap Guarantee Claim" as defined in the September 2015 Settlement Agreement.  Notwithstanding any other provision of this Settlement Agreement to the contrary, the LBSF Rate Cap Guarantee Claim shall not be a Withdrawn Claim or a Relevant Claim.

## Schedule B – Subrogated Claims

| Creditor | Debtor | Claim # | Allowed Amount | |
|---|---|---|---|---|
| Citibank, N.A. | Lehman Brothers Commercial Corporation Asia Limited | 441B0047* | HKD | 2,188,788,538 |
| Citibank, N.A. | Lehman Brothers Securities N.V. | | CHF | 2,663,966 |
| Citibank A.S. | LB UK RE Holdings Ltd. | | GBP | 10,453,253 |

\*     The "Subrogated Claim" in respect of Claim 441B0047 shall only be in respect of Citibank's claim against Lehman Brothers Commercial Corporation Asia Limited ("LBCCA") with respect to LBCCA's obligations under:   (i) that certain Committed Revolving Loan Agreement with Guarantee dated as of August 28, 2007 (as subsequently amended) between LBCCA and Citibank, and (ii) that certain ISDA Master Agreement dated as of July 12, 2007 between LBCCA and Citibank.

### Schedule C – Lehman Entities' Bank Accounts Held by Citibank, N.A.

| Depositor | Account Number | 8/31/2017 Balance ($) |
|---|---|---|
| Lehman Brothers Holdings Inc. | 20435400 | 2,007,992,624 |
| Lehman Brothers Holdings Inc. | 30826233 | 58,294,316 |
| Lehman Brothers Holdings Inc. | 30870189 | 3,457,953 |
| Lehman Brothers Commodity Services Inc. | 30870154 | 13,077,368 |
| Lehman Brothers Commodity Services Inc. | 30826292 | 4,979,946 |
| Lehman Brothers Commercial Corp. | 30826356 | 4,964,512 |
| Lehman Brothers Special Financing Inc. | 30826305 | 679,010 |

## **EXHIBIT A**

[FORM OF APPROVAL ORDER]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
                                     :

In re                             :       **Chapter 11 Case No.**
                                       :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :       **08-13555 (SCC)**
                                       :

**Debtors.**                          :       **(Jointly Administered)**
                                       :
---------------------------------------------------------------------x

**[PROPOSED] ORDER PURSUANT TO RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE
BANKRUPTCY CODE APPROVING SETTLEMENT AGREEMENT
AMONG CITIBANK, N.A. AND CERTAIN OF ITS AFFILIATES, AND LEHMAN
BROTHERS HOLDINGS INC. AND CERTAIN OF ITS AFFILIATES**

Upon the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI" and the

"Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter*

*11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of

itself, Lehman Brothers Special Financing Inc.  ("LBSF") and the other Lehman Entities,

together with the Official Committee of Unsecured Creditors (the "Creditors' Committee," and

together with LBHI, the "Movants"), seeking the entry of an order pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11

of the United States Code (the "Bankruptcy Code") for approval of the settlement agreement

dated as of September 29, 2017, by and among the Plan Administrator, on behalf of LBHI, LBSF

and the other Lehman Entities, and Citibank, N.A. ("Citibank"), on behalf of itself and the other

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to
them in the Motion.

Citibank Entities, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for the Chapter 11 Cases [ECF No. 9635] and the order governing settlement of

claims [ECF No. 29505]; and it appearing that no other or further notice need be provided; and a

hearing having been held to consider the relief requested in the Motion; and the Court having

reviewed the Motion and having considered the entire record before the Court, including the

Declaration of Steven Mullaney in Support of the Motion; and the Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and the Court having determined that the Settlement is the product of

good faith, arm's length negotiations, that the Settlement is fair and reasonable, and that the legal

and factual bases set forth in the Motion establish good cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and

sufficient notice of such Motion; and it is further

ORDERED that any objections to the Motion that have not heretofore been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rules 6004 and 9019 of the Bankruptcy Rules, the Settlement is approved and the Lehman Entities and the Committee are duly authorized to consummate the transactions contemplated under the Settlement Agreement, and to execute and deliver such documents and instruments, and take such other actions as may be reasonably necessary, to consummate the Settlement Agreement, it being understood that any actions described in this paragraph taken by the Lehman Entities may be taken without the necessity of any further Court proceedings or approval, or any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that, the Settlement Agreement is approved and incorporated herein by reference as if set forth completely herein; and it is further

ORDERED that the failure to specifically include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision; and it is further

ORDERED that any applicable stay is hereby modified solely to allow Citibank to debit the Debit Amount in accordance with the terms of the Settlement Agreement; and it is further

ORDERED that, on the Turnover Date, the Assigned Claims and Subrogated Claims (each as defined in the Settlement Agreement) shall be assigned to LBHI on a final basis and in accordance with the terms of the Settlement Agreement; and it is further

ORDERED that Citibank shall be entitled to an allowed administrative expense claim against LBHI to the extent provided in Section 4(d) of the Settlement Agreement; and it is further

ORDERED that this Order shall be effective immediately upon its entry and the requirements of Bankruptcy Rule 6004(h) are waived; and it is further

ORDERED that the Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: New York, New York
        October ___, 2017


_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE