# HOLWELL SHUSTER & GOLDBERG LLP

*750 Seventh Avenue, 26th Floor*
*New York, New York 10019*
*Tel: (646) 837-5151*
*Fax: (646) 837-5150*
*www.hsgllp.com*

*Michael S. Shuster*
*646-837-5153*
*mshuster@hsgllp.com*

October 17, 2017

**VIA EMAIL AND ECF**

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10014

Re:   In re Lehman Brothers Holdings Inc., et al., Ch. 11 Case No. 08-13555 (SCC)

Dear Judge Chapman:

      We write on behalf of the RMBS Trustees to respectfully request that Your Honor deny the Plan Administrator's request for an additional day to depose Mr. James Aronoff.

      The Plan Administrator asserts that because Mr. Aronoff "designed and implemented" the Trustees' loan review process during the Protocol and lead the "team that directed and oversaw the Trustees' forensic loan review," he is a fact witness. (October 16, 2017 Letter from T. Cosenza at 1.)  But the case law is clear that these responsibilities are fully consistent with the role of a reunderwriting *expert* in RMBS putback litigations. *See Assured Guar. Mun. Corp. v. Flagstar, FSB*, 920 F. Supp. 2d 475, 488–90 (S.D.N.Y. 2013) (accepting the loan review expert's testimony where she "instructed the underwriters to review the loan files," provided the reviewers with an "underwriting review protocol" that "described the standards to be applied" and "made the ultimate determination of whether a loan was materially defective").  Indeed, courts have criticized the opinions of experts for *failing* to design and supervise the loan review process.  *See, e.g.*, *The Bank of New York Mellon, solely as Trustee GE-WMC Mortg. Sec. Trust 2006-1 v. WMC Mortg., LLC*, No. 12-cv-7096, 2015 WL 4887446, at *1, *8 (S.D.N.Y. Aug. 17, 2015) (excluding testimony of loan underwriting expert who "rel[ied] upon data gathered by reunderwriters whose methodology the expert did not design, whom he did not directly or indirectly supervise, and over whom he did not impose quality control").  From the outset of the loan review assignment Mr. Aronoff was identified as the expert who would design the process, and render an expert opinion as to the loan review process and the breaching loans identified through that process.  That he did so does not render him a fact witness.

The Plan Administrator's characterization of Mr. Aronoff as a "fact" witness involved in the Trustees' Protocol review is further undermined by the fact that it has already deposed one such genuine fact witness, Edmond Esses, and has requested the deposition of another, Allen Pfeiffer (the Trustees have provided a date for Mr. Pfeiffer's deposition). Messrs. Pfeiffer and Esses were the leaders of the Duff and Phelps team that ran the day-to-day operations of the Trustees' Protocol process, supervised the process of obtaining documents from servicers and interacted on a daily basis with the five loan review firms engaged by the Trustees. Messrs. Pfeiffer and Esses also were the Duff and Phelps personnel who engaged in day-to-day communications with the Plan Administrator, as the written record abundantly demonstrates. They are true fact witnesses; Mr. Aronoff is not.

Moreover, as its ample quotes from Mr. Aronoff's deposition reflect, the Plan Administrator was able to cover the full breadth of Mr. Aronoff's role and reports during the allotted deposition time. It was for that very reason that the Trustees stated that they would be willing to discuss accommodating the Plan Administrator's request, but requested a showing of the topics that the Plan Administrator felt it was unable to cover during the deposition before considering whether to make Mr. Aronoff available for limited additional deposition time. The Trustees were (and remain) willing to discuss that additional time, but the Plan Administrator has failed, even in its letter to the Court, to identify any aspect of Mr. Aronoff's work that it was unable to test.



Respectfully Submitted,

Michael S. Shuster

cc:   All counsel (via email)