Hearing Date and Time: April 17, 2018 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: January 17, 2018 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------x
In re                                                             :   Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., et al.,                            :   08-13555 (SCC)
                                                                  :
                    Debtors.                                      :   (Jointly Administered)
------------------------------------------------------------------x
```

# NOTICE OF MOTION OF THE
# PLAN ADMINISTRATOR FOR AN ORDER IN AID OF
# EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11
# PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code for authority to issue the Substituted Preferred Stock, all as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 17, 2018 at 10:00 a.m. (Eastern Time)** (the "Hearing").

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Garrett A. Fail, attorneys for LBHI and certain of its affiliates; and (iii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea B. Schwartz, Esq., so as to be so filed and received no later than **January 17, 2018 at 4:00 p.m. (Eastern Time) (the "Objection Deadline")**.

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 21, 2017
      New York, New York

                                              /s/ Garrett A. Fail
                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007
                                              Jacqueline Marcus
                                              Garrett A. Fail

                                              Attorneys for Lehman Brothers Holdings Inc.
                                              and Certain of Its Affiliates

Hearing Date and Time: April 17, 2018 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: January 17, 2018 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :    Chapter 11 Case No.
                                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,                         :    08-13555 (SCC)
                                                               :
                            Debtors.                           :    (Jointly Administered)
---------------------------------------------------------------x

## MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan")[1] for the entities in the above-referenced chapter 11 cases (the "Chapter 11 Estates"), files this motion and respectfully represents:

### Relief Requested

1. By this Motion, the Plan Administrator requests authority to cause LBHI to issue preferred stock so that such stock is available to substitute for equity securities (the "ECAPS") previously issued by five non-debtor partnerships. The relief requested will enable

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

LBHI's creditors to realize the value of those five partnerships to which they are contractually entitled. It will ensure that both LBHI and the holders of the ECAPS remain in the economic positions and recover in the priorities to which they contractually agreed prepetition, preventing a windfall to third parties at the expense of creditors of LBHI.

## Background

2. Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (collectively, these "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3. On December 6, 2011, the Court approved and entered an order confirming the Plan (ECF No. 23023) (the "Confirmation Order"). The Plan became effective on March 6, 2012.

4. The Plan Administrator is authorized pursuant to the Plan to exercise its reasonable business judgment as necessary to maximize Distributions to holders of Allowed Claims. (Plan § 6.1(b)(iii).) The Plan Administrator is also authorized to "perform other duties and functions that are consistent with the implementation of the Plan." (*Id.* § 6.1(b)(xiv).)

5. Pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to these Chapter 11 Cases, including, without limitation, those set forth in Article XIV of the Plan. (Conf'n Order ¶ 77.) Section 14.1 of the Plan, in turn, provides for the retention by the Court of exclusive jurisdiction to, among other things, "issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code" and "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce . . . the Plan, the Confirmation Order or any other order of the Bankruptcy Court." (Plan § 14.1(e), (i).)

**Jurisdiction**

6. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Partnerships**

7. Issuance of the ECAPS was a cost-effective means of raising funds that qualified as capital for regulatory purposes.

8. On March 22, 2005, LBHI and a number of parties entered into a Limited Partnership Agreement ("LB UK I Agreement") establishing Lehman Brothers UK Capital Funding LP ("LB UK I"), a limited partnership organized under the Limited Partnerships Act 1907 of England. On August 25, 2005, February 17, 2006, January 3 and May 10, 2007, respectively, LBHI and a number of other parties entered into agreements substantially similar to the LB UK I Agreement, establishing Lehman Brothers UK Capital Funding II LP ("LB UK II"), Lehman Brothers UK Capital Funding III LP ("LB UK III"), Lehman Brothers UK Capital Funding IV LP ("LB UK IV"), and Lehman Brothers UK Capital Funding V LP ("LB UK V"; each of the foregoing and LB UK I, a "Partnership"; each such agreement, a "Partnership Agreement").[2] An LBHI affiliate, LB GP No. 1 Ltd. (the "GP"), was the general partner of each Partnership. Another LBHI affiliate, LB Investment Holdings Ltd., was the "Preferential Limited Partner" of each Partnership.

9. The Partnerships were created to increase regulatory capital for LBHI and for Lehman Brothers Holdings plc ("LBH PLC"), another one of LBHI's Non-Controlled

---

[2] True and correct copies of the transaction documents cited herein are attached as exhibits to the *Declaration of Richard Katz in Support of Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* filed concurrently herewith.

3

Affiliates, by purchasing LBHI's or LBH PLC's subordinated debt (which debt was treated in a similar way to preferred equity for such purposes). LBHI and LBH PLC raised funds through the Partnerships by way of back-to-back subordinated arrangements. Specifically, pursuant to each Partnership Agreement, investors entered into a subscription agreement for the issuance of equity interests in such Partnership known as ECAPS: Enhanced Capital Advantaged Preferred Securities. LB UK I, LB UK II, and LB UK III used the proceeds of their issuances of ECAPS to purchase subordinated debt issued by LBH PLC. LB UK IV and LB UK V used the proceeds of their ECAPS issuances to purchase subordinated debt issued by LBHI. (The subordinated debt issued by LBH PLC and LBHI is collectively referred to herein as the "Subordinated Notes.")[3] The value of the ECAPS was broadly equal to the value of the applicable Partnership Assets less the costs associated with administering the applicable Partnership and any distribution rights of certain other partners.

10. Certain obligations under the Partnership Agreements of LB UK I, LB UK II, and LB UK III were guaranteed by LBH PLC. Certain obligations under the Partnership Agreements of LB UK IV and LB UK V were guaranteed by LBHI. In each case, the priority of the guaranteed obligations was subordinated.

11. Thus, ECAPS investments in the Partnerships were, in substance, indirect, subordinated investments in LBHI or LBH PLC, as applicable. As discussed below and as was made clear in the prospectus for each Partnership's ECAPS, certain events triggered the substitution of LBHI preferred stock for ECAPS.

---

[3] LB UK III, LB UK IV, and LB UK V also invested in certain liquidity funds, aggregating $26 million and €22 million, although it remains uncertain whether these funds are the rightful property of the Partnerships. The Subordinated Notes and any rightful interest in such funds constitute the "Partnership Assets."

4

12. After the Commencement Date, on June 22, 2010, the GP was dissolved. As a result, each Partnership was also dissolved. As of the dissolution of the GP in June 2010, LBHI believed that the Subordinated Notes had no value.

13. Starting on or about June 20, 2016, a holder of ECAPS issued by each Partnership took steps to reconstitute the Partnerships under English law. The holder of such ECAPS did so because it believes that the Partnership Assets now may have value.

14. The Plan Administrator now also believes that, depending on the resolution of certain matters in connection with the estates of LBHI's UK-based Non-Controlled Affiliates, the Partnership Assets now may have value.

15. The GP, the Partnerships, and, therefore, the Partnership Assets, currently are under the control of joint liquidators Bruce Mackay and Matthew Haw of RSM Restructuring Advisory LLP (the "Joint Liquidators").

**The ECAPS Terms Require the Substitution of LBHI Preferred Stock for the ECAPS**

16. The ECAPS Terms impose on the GP the obligation to substitute preferred stock in LBHI (the "Substituted Preferred Stock") for the ECAPS under certain circumstances.[4] The substitution provisions, which are substantially identical in each Partnership Agreement, are as follows:

> If a Trigger Event occurs, then, provided that (if required at such time) no relevant Supervisory Authority has objected, the General Partner shall take all reasonable steps to cause the substitution of the [ECAPS] by depositary shares representing Substituted Preferred Stock (the "**Preferred Securities Substitution**") on the Substitution Date, as defined below.

---

[4] "Substituted Preferred Stock" is defined as "fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends calculated in the same manner as the [ECAPS], having no voting rights (except as required by law) and being subject to optional redemption in the same manner as the [ECAPS]." (*See* § 1 of the Description of the Preferred Securities in each prospectus (the "ECAPS Terms").)

5

As soon as reasonably practicable following the occurrence of a Trigger Event, the General Partner shall cause notice (the "**Trigger Event Notice**") to be given to the Holders (in accordance with paragraph 10) and to the Stock Exchanges that the depositary shares representing Substituted Preferred Stock will be available from the date (the "**Substitution Date**") specified in the Trigger Event Notice for the purpose.

Until such time as the Trigger Event Notice is given by the General Partner (in accordance with paragraph 10), Holders will continue to be entitled to receive Distributions and/or a Liquidation Distributions in respect of the [ECAPS] but thereafter Holders will have no further rights, title or interest in or to their [ECAPS] except to have them substituted in the manner and to the persons described below.

The Trigger Event Notice will contain a form of substitution confirmation (the "**Preferred Securities Substitution Confirmation**") to be completed by each Holder (or, for so long as the [ECAPS] are registered in the name of a nominee of a common depositary for Euroclear and Clearstream, Luxembourg, by each accountholder named in the records of Euroclear and Clearstream, Luxembourg, as the holder of an interest in the [ECAPS]). The form of Preferred Securities Substitution Confirmation shall also be made available at the offices of each Paying and Transfer Agent. To receive Substituted Preferred Stock in respect of its holding of [ECAPS], a Paying and Transfer Agent must receive from the Holder (or such accountholder, as the case may be) a Preferred Securities Substitution Confirmation together with the certificate representing the relative holding of [ECAPS] or other evidence of entitlement satisfactory to the General Partner.

Each share of Substituted Preferred Stock allotted will rank for any dividend from the immediately preceding [March 30] but otherwise will have no entitlement to any accrued Distributions or any other payment in respect of the [ECAPS].

Upon a Preferred Securities Substitution, each Holder (or, as the case may be, accountholder) shall receive in respect of each €1,000 Liquidation Preference of Preferred Securities, one depositary share representing Substituted Preferred Stock with a nominal amount of €1,000.

No Preferred Securities Substitution will take place and the Holders will continue to hold their [ECAPS] and all their rights thereunder if prior to the Substitution Date, a winding-up of LBHI occurs.

(*See* ECAPS Terms § 5.1.)

17. A "<u>Trigger Event</u>" occurs "if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership" or fails to meet certain capital-adequacy

6

requirements.  (*See* ECAPS Terms § 1.)  Here, a Trigger Event occurred on the Commencement Date when "LBHI [wa]s placed into bankruptcy," thereby contractually permitting the Preferred Securities Substitution to occur.  (*See* ECAPS Terms §§ 1, 5.1.)

## The Substituted Preferred Stock

18. Prior to the Commencement Date and until the Effective Date, Section 4.1 of LBHI's corporate charter (the "Charter") authorized LBHI to issue blank-check preferred stock:

> Authorized Shares.  The total number of shares of capital stock which the Corporation shall have authority to issue [includes] twenty-four million nine hundred ninety-nine thousand (24,999,000) shares of preferred stock, $1.00 par value per share (the "Preferred Stock").  Shares of Preferred Stock may be issued from time to time in one or more classes or series, each of which class or series shall have such distinctive designation or title as shall be fixed by the Board of Directors of the Corporation (the "Board of Directors") or any committee thereof established by resolution of the Board of Directors pursuant to the By-Laws prior to the issuance of any shares thereof.  Each such class or series of Preferred Stock shall have such voting powers, full or limited, or no voting powers, and such preferences and relative, participating, optional or other special rights and such qualifications, limitations or restrictions thereof, as shall be stated in such resolution or resolutions providing for the issue of such class or series of Preferred Stock as may be adopted from time to time by the Board of Directors prior to the issuance of any shares thereof pursuant to the authority hereby expressly vested in it, all in accordance with the laws of the State of Delaware.

As set forth in LBHI's prepetition filings with the Securities and Exchange Commission, and as of the Effective Date, more than 17,000,000 shares of LBHI preferred stock remained available for issuance.  The Preferred Securities Substitution would require only a small fraction of the available shares.

7

19. LBHI did not take any steps to effect a Preferred Securities Substitution prior to the Effective Date. Had LBHI issued the Substituted Preferred Stock prior to the Effective Date, it would have been treated as LBHI Class 12 Equity Interests under the Plan.[5]

### The Proposed Substitution

20. If authorized, LBHI intends to issue the Substituted Preferred Stock under the Charter and instruct that the GP deliver them to the holders of ECAPS, which will then no longer have any rights or interest in respect of the ECAPS. After its issuance, the Substituted Preferred Stock would be compromised pursuant to the Plan as if it had been issued on the Commencement Date for all purposes in these Chapter 11 Cases. Among other things, each ECAPS holder would be entitled to a portion of any residual value of the Plan Trust up to the value of the liquidation preference of such holder's Substituted Preferred Stock. Upon the substitution, the net value of the Partnership Assets would ultimately inure to the creditors of LBHI through its ownership of the GP and certain non-Debtor intermediate subsidiaries that own the Preferential Limited Partner. Treatment consistent with LBHI's preferred equity is exactly what the ECAPS holders bargained for when they invested in the ECAPS. ECAPS holders were compensated for their investment risk that LBHI preferred stock would be substituted for their ECAPS in the event of, among other things, LBHI's commencement of a chapter 11 case. The substitution aligns parties' economic entitlements with their expectations *ex ante*. Further, to ensure that a Preferred Securities Substitution is in the best interests of the Chapter 11 Estates, the Plan Administrator plans to seek confirmation from the Internal Revenue Service that the substitution will not result in adverse tax consequences to the Chapter 11 Estates.

---

[5] The Plan Trust now holds the Plan Trust Stock "for the benefit of holders of such former LBHI Stock consistent with their former relative priority and economic entitlements." Under Section 7.4(a) of the Plan: "The sole purpose of the Plan Trust shall be to hold the Plan Trust Stock as provided in Section 4.17(b). . . . Any distribution from assets of LBHI that is made to the Plan Trust as holder of such [Plan Trust Stock] shall be for the benefit of the holders of Equity Interests in accordance with Section 4.17(b)."

8

21. The circumstances of these complex Chapter 11 Cases are unusual: the administration of the Chapter 11 Estates continues long after the Effective Date of the Plan and depends on the Plan Administrator's continued operations including collecting on claims against and interests in Non-Controlled Affiliates, the current value of which could not have been imagined on the Effective Date. The Debtors are seeking to effectuate the Preferred Securities Substitution as soon as reasonably practicable after the Commencement Date, bearing in mind the unique size and complexity of these Chapter 11 Cases, coupled with the myriad cross-border affiliate transactions and tax considerations that had to be analyzed. The ECAPS holders have suffered no prejudice as a result of any delay in issuing the Substituted Preferred Stock.

22. The Preferred Securities Substitution may be challenged in England by the holders of ECAPS. Any such challenges, presumably questioning compliance with the contractual requirements for a Preferred Securities Substitution, are matters for an English Court, are not before this Court, and are unlikely to prevail. Although there may be questions of English law and usage, it is possible that the English Court would be interested in input from this Court regarding the history and characterization of these Chapter 11 Cases, and that it may become appropriate for this Court to assist the English Court on this issue.

**The Court May Authorize the
Issuance of the Substituted Preferred Stock**

23. The Court has broad authority, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code. *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan."); 11 U.S.C. § 105(a) ("The court may

9

issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (holding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. § 1142(b) . . . and it has continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.") (internal citations and quotation marks omitted)).

24. In addition, as discussed above, both the Plan and the Confirmation Order provided for the Court's retention of jurisdiction over all matters arising under or related to, these Chapter 11 Cases.

## Issuance of the Substituted Preferred Stock Is in the Best Interests of the Chapter 11 Estates

25. Issuance of the Substituted Preferred Stock may increase the value of the Chapter 11 Estates, without adversely affecting any creditor of the Chapter 11 Estates (in its capacity as such), and should be approved.

26. The Preferred Securities Substitution is in the best interests of LBHI and its creditors because it enables LBHI to preserve substantial value for the benefit of its creditors. Absent the Preferred Securities Substitution, the holders of ECAPS could receive a windfall at the expense of LBHI's creditors. The holders of ECAPS expected to receive LBHI preferred stock in the event of an LBHI bankruptcy. They could not reasonably have expected to receive recoveries on ECAPS based on the Partnership Assets contrary to the plain language of the ECAPS Terms. A Preferred Securities Substitution will provide holders of the ECAPS with the

10

securities that they expected to receive following the Commencement Date—preferred stock in LBHI—and its corresponding Plan treatment and equity value.

27. Issuance of the Substituted Preferred Stock furthers the Plan Administrator's duty "to maximize Distributions to holders of Allowed Claims." (Plan § 6.1(b)(iii).) No creditor or equity holder of LBHI is harmed in its capacity as such. Creditors' recoveries will increase by the amount of the Partnerships' net value. And the potential for recovery at all to equity holders will only increase. (Holders of LBHI Class 12 Equity Interests are nevertheless not expected to receive any Distributions on account of such interests.) Issuance of the Substituted Preferred Stock will not conflict with the purpose of any of the Effective Date amendments to LBHI's certificate of incorporation: achieving strict compliance with certain requirements of the Bankruptcy Code and protecting the LBHI tax group's tax attributes.

28. The Preferred Securities Substitution is akin to the allowance of LBHI Class 12 Equity Interests in the aggregate amount of the ECAPS' notional value. The Plan Administrator already has the authority to allow Class 12 Equity Interests[6] and requires Court approval primarily for the ministerial act of issuing the Substituted Preferred Stock—an act in furtherance of the implementation of the Plan but not expressly authorized by it. To prevent creditors from losing LBHI's bargained-for entitlement to any value of the Partnership Assets, the Court should authorize the issuance of the Substituted Preferred Stock.

---

[6] Under the *Order Modifying Certain Existing Claims Orders* (ECF No. 29505), "[t]he Plan Administrator is authorized to settle any and all Claims . . . asserted against the Debtors without prior approval of the Court or any other party in interest where . . . the allowed amount of the settled Claim is less than or equal to $200 million[.]"

11

**Conclusion**

29.     For the reasons set forth above, the Plan Administrator requests that the Court enter an order in the form attached hereto as <u>Exhibit A</u> to permit LBHI to issue the Substituted Preferred Stock.

**Notice**

30.     No trustee has been appointed in these Chapter 11 Cases. The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635), has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these Chapter 11 Cases; and (vi) the Joint Liquidators. The Plan Administrator submits that no other or further notice need be provided.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  November 21, 2017
        New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

12

**Exhibit A**

Proposed Order

WEIL:\96296832\22\58399.0011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :    08-13555 (SCC)
                                                   :
              Debtors.                             :    (Jointly Administered)
------------------------------------------------------------------x

**ORDER IN AID OF EXECUTION OF
THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN
OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Upon the motion (the "Motion"),[1] dated November 21, 2017 of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") for authority to issue the Substituted Preferred Stock, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) all parties who have requested notice in these Chapter 11 Cases; and (vi) the Joint Liquidators in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

these cases (ECF No. 9635); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that (i) the relief sought in the Motion is in the best interests of the Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; (ii) the GP has been dissolved and subsequently restored; (iii) LBHI's chapter 11 case remains open, LBHI remains a corporation in existence, LBHI is not in a chapter 7 liquidation, and no trustee has been appointed to liquidate LBHI's assets; (iv) effecting the Preferred Securities Substitution (as described more fully in the Motion) would be in the best interests of LBHI's Chapter 11 Estate and economic stakeholders; and (v) the relief requested in the Motion is reasonable and has been granted at the appropriate time in light of the unique circumstances of these Chapter 11 Cases; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Plan Administrator is authorized to cause LBHI to issue preferred stock under the Charter in such amounts and on such terms as are necessary for such preferred stock to constitute Substituted Preferred Stock under the ECAPS Terms; and it is further

ORDERED that the Substituted Preferred Stock shall be governed by the Plan and will be compromised in accordance with the Plan as if such Substituted Preferred Stock had been issued on the Commencement Date; and it is further

ORDERED that the Plan Administrator and any other party may take any other action that is necessary or appropriate to effectuate the issuance of the Substituted Preferred Stock; and it is further

2

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2017

_____
Honorable Shelley C. Chapman
United States Bankruptcy Judge

WEIL:\96296832\22\58399.0011