## **Exhibit H**

LB UK IV Prospectus

WEIL:\96354029\2\58399.0011

**IMPORTANT NOTICE**

## NOT FOR DISTRIBUTION TO ANY US PERSON OR TO ANY PERSON
## OR ADDRESS IN THE US

**IMPORTANT: You must read the following before continuing.** The following applies to the Base Prospectus following this page (the **Base Prospectus**), and you are therefore advised to read this carefully before reading, accessing or making any other use of the Base Prospectus. In accessing the Base Prospectus, you agree to be bound by the following terms and conditions, including any modifications to them any time you receive any information from us as a result of such access.

NOTHING IN THIS ELECTRONIC TRANSMISSION CONSTITUTES AN OFFER OF SECURITIES FOR SALE IN THE UNITED STATES OR ANY OTHER JURISDICTION WHERE IT IS UNLAWFUL TO DO SO. THE PREFERRED SECURITIES AND THE SUBORDINATED GUARANTEE HAVE NOT BEEN, AND WILL NOT BE, REGISTERED UNDER THE US SECURITIES ACT OF 1933, AS AMENDED (THE **SECURITIES ACT**), OR THE SECURITIES LAWS OF ANY STATE OF THE US OR OTHER JURISDICTION AND THE PREFERRED SECURITIES MAY NOT BE OFFERED OR SOLD WITHIN THE US OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, US PERSONS (AS DEFINED IN REGULATION S UNDER THE SECURITIES ACT), EXCEPT PURSUANT TO AN EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND APPLICABLE STATE OR LOCAL SECURITIES LAWS.

THE FOLLOWING BASE PROSPECTUS MAY NOT BE FORWARDED OR DISTRIBUTED TO ANY OTHER PERSON AND MAY NOT BE REPRODUCED IN ANY MANNER WHATSOEVER, AND IN PARTICULAR, MAY NOT BE FORWARDED TO ANY US PERSON OR TO ANY US ADDRESS. ANY FORWARDING, DISTRIBUTION OR REPRODUCTION OF THIS DOCUMENT IN WHOLE OR IN PART IS UNAUTHORISED. FAILURE TO COMPLY WITH THIS DIRECTIVE MAY RESULT IN A VIOLATION OF THE SECURITIES ACT OR THE APPLICABLE LAWS OF OTHER JURISDICTIONS.

**Confirmation of the Representation:** In order to be eligible to view this Base Prospectus or make an investment decision with respect to the securities investors must not be a US Person (within the meaning of Regulation S under the Securities Act). This Base Prospectus is being sent to you on the basis that by accepting the e-mail and accessing this Base Prospectus, you shall be deemed to have represented to us that you are not a US Person, the electronic mail address that you have given to us and to which this e-mail has been delivered is not located in the US, its territories and possessions (including Puerto Rico, the US Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands), and that you consent to delivery of such Base Prospectus by electronic transmission.

**YOU ARE REMINDED THAT THIS BASE PROSPECTUS HAS BEEN DELIVERED TO YOU ON THE BASIS THAT YOU ARE A PERSON INTO WHOSE POSSESSION THIS BASE PROSPECTUS MAY LAWFULLY BE DELIVERED IN ACCORDANCE WITH THE LAWS OF THE JURISDICTION IN WHICH YOU ARE LOCATED AND YOU MAY NOT, NOR ARE YOU AUTHORISED TO, DELIVER THIS BASE PROSPECTUS TO ANY PERSON EXCEPT IN COMPLIANCE WITH ALL APPLICABLE LAWS.**

The materials relating to the offering do not constitute, and may not be used in connection with, an offer or solicitation in any place where offers or solicitations are not permitted by law. If a jurisdiction requires that the offering be made by a licensed broker or dealer and the underwriters or any affiliate of the underwriters is a licensed broker or dealer in that jurisdiction, the offering shall be deemed to be made by the underwriters or such affiliate on behalf of the Guarantor in such jurisdiction.

Under no circumstances shall this Base Prospectus constitute an offer to sell or the solicitation of an offer to buy nor shall there be any sale of these securities in any jurisdiction in which such offer, solicitation or sale would be unlawful. Recipients of this Base Prospectus who intend to subscribe for or purchase the securities are reminded that any subscription or purchase may only be made on the basis of the information contained in the final prospectus. This Base Prospectus may only be communicated to persons in the United Kingdom in circumstances where section 21(1) of the Financial Services and Markets Act 2000 does not apply to the Guarantor.

This Base Prospectus has been sent to you in an electronic form. You are reminded that documents transmitted via this medium may be altered or changed during the process of electronic transmission. Consequently neither Lehman Brothers International (Europe) nor any person who controls Lehman Brothers International (Europe) nor any director, officer, employee or agent of Lehman Brothers International (Europe) nor any affiliate of any such person accepts any liability or responsibility whatsoever in respect of any difference between the Base Prospectus distributed to you in electronic format and the hard copy version available to you on request from Lehman Brothers International (Europe).

# LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

*(a limited partnership organised under the laws of England and Wales)*

## Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (Euro ECAPS$^{SM}$)

having the benefit of a subordinated guarantee of

# LEHMAN BROTHERS HOLDINGS INC.

*(incorporated with limited liability in the State of Delaware)*

The Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (the **Euro ECAPS**$^{SM}$ or the **Preferred Securities**), each with a liquidation preference of €1,000, will comprise limited partnership interests in Lehman Brothers UK Capital Funding IV LP (the **Issuer**).

Holders of the Preferred Securities will receive (subject as described herein under "*Description of the Preferred Securities*") non-cumulative preferential cash distributions (the **Distributions**) payable annually in arrear on the date specified in the Final Terms referred to herein in each year at the fixed rate per annum specified in the Final Terms referred to herein, all as more fully described herein under "*Description of the Preferred Securities*".

**See "Risk Factors" for a discussion of certain factors that should be considered by prospective investors, including certain United States federal income tax conseqences.**

As an English limited partnership, the Issuer will not be a legal entity separate from its partners. The Preferred Securities will benefit from a subordinated guarantee to be dated the Closing Date (the **Subordinated Guarantee**) entered into by Lehman Brothers Holdings Inc. (**LBHI**) of declared dividends and redemption amounts, all as more fully described herein under "*Subordinated Guarantee*".

Application has been made to the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000 (the **UK Listing Authority**) for the Preferred Securities to be admitted to the Official List of the UK Listing Authority (the **Official List**) and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market.

Application will also be made to Euronext Amsterdam N.V. (**Euronext Amsterdam**) for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam. The London Stock Exchange's Gilt Edged and Fixed Interest Market and Euronext Amsterdam are regulated markets for the purposes of Directive 93/22/EC (the **Investment Services Directive**).

This document has been approved by the UK Listing Authority as a base prospectus within the meaning of Directive 2003/71/EC (the **Prospectus Directive**). Certain information relating to the Preferred Securities will be contained in the Final Terms, see "*Summary − Final Terms*" and "*Form of Final Terms*" for details of such information.

Lead Manager

# LEHMAN BROTHERS

The date of this Base Prospectus is 4 January 2007

ECAPS$^{SM}$ is a service mark of Lehman Brothers

LB GP No. 1 Ltd. in its capacity as the General Partner (the **General Partner**) and LBHI together (the **Responsible Persons**) accept responsibility for the information contained in this Base Prospectus. To the best of the knowledge and belief of the General Partner and LBHI (each having taken all reasonable care to ensure that such is the case) the information contained in this Base Prospectus is in accordance with the facts and does not omit anything likely to affect the import of such information.

No person is or has been authorised to give any information or to make any representation not contained or incorporated in or consistent with this Base Prospectus and, if given or made, such information or representation must not be relied upon as having been authorised by the Issuer, the General Partner, The Bank of New York Depository (Nominees) Limited (**BNYD**), LBHI or the Managers (as defined under "*Subscription and Sale*" below). Neither the delivery of this Base Prospectus nor any subscription, sale or purchase made in connection herewith shall, in any circumstances, create any implication that there has been no change in the affairs of the Issuer, the General Partner, LBHI or the Group (as defined in the Terms and Conditions of the Preferred Securities) since the date hereof.

Neither this Base Prospectus nor any other information supplied in connection with the Preferred Securities (a) is intended to provide the basis of any credit or other evaluation or (b) should be considered as a recommendation by the Issuer, the General Partner, LBHI, BNYD, any member of the Group or the Managers that any recipient of this Base Prospectus or any other information supplied in connection with the Preferred Securities should purchase the Preferred Securities. Each prospective investor contemplating purchasing Preferred Securities should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness, of the Issuer and LBHI.

Prospective investors should inform themselves as to the legal requirements and tax consequences within the countries of their residence and domicile for the acquisition, holding or disposal of Preferred Securities and any foreign exchange restrictions that might be relevant to them. This Base Prospectus does not constitute an offer of, or an invitation by or on behalf of, the Issuer or any of its partners, the General Partner, BNYD, LBHI or the Managers to subscribe for or purchase any of the Preferred Securities.

Prospective investors should satisfy themselves that they understand all of the risks associated with making investments in the Preferred Securities. If a prospective investor is in any doubt whatsoever as to the risks involved in investing in the Preferred Securities, he should consult his professional advisers.

The distribution of this Base Prospectus and the offering of the Preferred Securities in certain jurisdictions may be restricted by law. Persons into whose possession this Base Prospectus comes are required by the Issuer, the General Partner, LBHI and the Managers to inform themselves about, and to observe, any such restrictions.

In respect of the United Kingdom, this Base Prospectus is directed only at (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully. Preferred Securities are only available to such persons. Persons who (a) do not have such professional experience in participating in unregulated schemes and in matters relating to investments and/or (b) do not fall within said article 22(2) and 49(2) and/or (c) are not persons to whom this Base Prospectus may be communicated lawfully should not rely on this Base Prospectus.

Notwithstanding anything in this Base Prospectus to the contrary, the Issuer, the General Partner, LBHI, the Managers and each prospective investor (and any employee, representative or other agent of the Issuer, the General Partner, LBHI and the Managers or of any prospective investor) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transactions contemplated by this Base Prospectus and all materials of any kind (including opinions or other tax analyses, if any) that are provided to them or to it relating to such tax treatment and tax structure. However, any such information

relating to the tax treatment or tax structure is required to be kept confidential to the extent necessary to comply with any applicable federal or state securities laws.

The Preferred Securities may not be offered or sold, directly or indirectly, and neither this Base Prospectus nor any advertisement or other offering material may be distributed or published in any jurisdiction, except in accordance with the legal requirements applicable in that jurisdiction. In particular, the Preferred Securities have not been, and will not be, registered under the United States Securities Act of 1933, as amended (the **Securities Act**). The Preferred Securities may not be offered, sold or delivered within the United States or to, or for the account or benefit of, US persons. A further description of certain restrictions on the offering and sale of the Preferred Securities and on the distribution of this Base Prospectus is given under "*Subscription and Sale*" below.

**IN CONNECTION WITH THE ISSUE OF THE PREFERRED SECURITIES, LEHMAN BROTHERS INTERNATIONAL (EUROPE) OR ANY PERSON ACTING FOR IT MAY OVER-ALLOT THE PREFERRED SECURITIES (PROVIDED THAT THE AGGREGATE PRINCIPAL AMOUNT OF THE PREFERRED SECURITIES DOES NOT EXCEED 105 PER CENT. OF THE AGGREGATE PRINCIPAL AMOUNT OF THE PREFERRED SECURITIES) OR EFFECT TRANSACTIONS WITH A VIEW TO SUPPORTING THE MARKET PRICE OF THE PREFERRED SECURITIES AT A LEVEL HIGHER THAN THAT WHICH MIGHT OTHERWISE PREVAIL. HOWEVER, THERE IS NO ASSURANCE THAT LEHMAN BROTHERS INTERNATIONAL (EUROPE) (OR PERSONS ACTING ON BEHALF OF LEHMAN BROTHERS INTERNATIONAL (EUROPE)) WILL UNDERTAKE STABILISATION ACTION. ANY STABILISATION ACTION MAY BEGIN ON OR AFTER THE DATE ON WHICH ADEQUATE PUBLIC DISCLOSURE OF THE TERMS OF THE OFFER OF THE PREFERRED SECURITIES IS MADE AND, IF BEGUN, MAY BE ENDED AT ANY TIME, BUT IT MUST END NO LATER THAN THE EARLIER OF 30 DAYS AFTER THE CLOSING DATE AND 60 DAYS AFTER THE DATE OF THE ALLOTMENT OF THE PREFERRED SECURITIES.**

All references in this Base Prospectus to **EUR**, **€**, **Euro** and **euro** are to the single currency introduced at the start of the third stage of European economic and monetary union pursuant to the Treaty establishing the European Community, as amended from time to time. All references in this Base Prospectus to **US$** and **$** are to United States dollars. All references in this Base Prospectus to **£** are to pounds sterling.

## CONTENTS

| Clause | Page |
|---|---|
| Summary | 5 |
| Risk Factors | 13 |
| Available Information | 17 |
| Information Incorporated by Reference | 18 |
| Description of the Preferred Securities | 20 |
| Summary of Provisions Relating to the Preferred Securities in Global Form | 33 |
| Subordinated Guarantee | 34 |
| Use of Proceeds | 40 |
| Lehman Brothers UK Capital Funding IV LP | 41 |
| Lehman Brothers Holdings Inc. | 44 |
| Consolidated Stockholders' Equity of LBHI | 49 |
| Summary Consolidated Financial Information of LBHI | 50 |
| Taxation | 52 |
| Subscription and Sale | 56 |
| General Information | 59 |
| Form of Final Terms | 62 |

## SUMMARY

**This Summary must be read as an introduction to this Base Prospectus and any decision to invest in any Preferred Securities should be based on a consideration of this Base Prospectus as a whole, including the documents incorporated by reference. Following the implementation of the relevant provisions of the Prospectus Directive in each Member State of the European Economic Area no civil liability will attach to the Responsible Persons in any such Member State in respect of this Summary (including any translation hereof required by the competent authority of any Member State where an offer to the public of the Preferred Securities may be made) unless it is misleading, inaccurate or inconsistent when read together with other parts of this Base Prospectus. Where a claim relating to information contained in this Base Prospectus is brought before a court in a Member State of the European Economic Area, the plaintiff may, under the national legislation of the Member State where the claim is brought, be required to bear the costs of translating the Base Prospectus before the legal proceedings are initiated.**

*Capitalised terms used but not defined in this summary shall bear the respective meanings ascribed to them under "Description of the Preferred Securities"*

| | |
|---|---|
| **Issuer:** | Lehman Brothers UK Capital Funding IV LP (the **Issuer**), an English limited partnership formed and registered under the Limited Partnerships Act 1907 (the **Act**). |
| | The business of the partnership, as administered by, or on behalf of, the General Partner, will include the following: |
| | – raising and providing finance and financial support to LBHI; |
| | – acquiring and holding for investment purposes the Issuer's assets; |
| | – monitoring the Issuer's assets and determining whether they continue to be suitable; and |
| | – functions necessary or incidental thereto. |
| | On the Closing Date, the General Partner will use the total of the partners' capital contributions to acquire the Partnership Assets, being the Subordinated Notes and the Third Party Assets. The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets. |
| **General Partner:** | LB GP No.1 Ltd. (incorporated with limited liability in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI. |
| **Preferential Limited Partner:** | LB Investment Holdings Ltd (incorporated with limited liability in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI. |
| | Subject to the payment of the Further Distribution, the Preferential Limited Partner shall be entitled to receive amounts received by the Issuer from its investment in the Partnership Assets in excess of those required to make payments in respect of the Preferred Securities. |
| **Guarantor:** | Lehman Brothers Holdings Inc. (incorporated with limited liability in the State of Delaware). |

LBHI is the ultimate parent company of the Lehman Brothers group. Lehman Brothers' principal business activities are investment banking, capital markets and investment management.

Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

**Issue:**

Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**$^{SM}$), each with a liquidation preference of €1,000 (the **Liquidation Preference**), comprising interests in a limited partnership share in the Issuer.

**Subordinated Guarantee:**

LBHI will provide a subordinated guarantee to be executed by LBHI on the Closing Date (the **Subordinated Guarantee**) in respect of:

–    any due Distributions;

–    payments on redemption of the Preferred Securities; and

–    any Additional Amounts,

which will be in favour of the Holders.

The Subordinated Guarantee will rank *pari passu* with the non-cumulative perpetual preferred securities or preferred stock of LBHI (whether or not in issue).

The Subordinated Guarantee will not cover payments on liquidation of the Issuer. See "*Rights upon Liquidation*" below.

**Distribution Rate:**

The Preferred Securities will entitle Holders to receive (subject as described below) non-cumulative preferential cash distributions (the **Distributions**).

Distributions will be payable out of the Issuer's own legally available resources annually in arrear on the distribution payment date in each year specified in the Final Terms (each a **Distribution Payment Date**).

Distributions will accrue at a rate per annum specified in the Final Terms.

The Holders will receive Distributions from the Issuer only if the Issuer has received sufficient funds from its assets.

In addition the Holders may receive a Further Distribution on redemption.

**Optional Waiver:**

Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

The General Partner will have full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

**Mandatory Waiver:**

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

– such payment will cause a Trigger Event; or

– in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

(x) the Trailing Two Quarters Consolidated Net Income Amount of LBHI is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

(y) the Tangible Common Stockholders' Equity Amount of LBHI as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount of LBHI at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

**Distributions non-cumulative:**

Save as described above, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no right to receive from the Issuer amounts paid under Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, which would otherwise have been used by the Issuer (being the holder thereof) to fund such Distribution, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be allocated, subject to payment of the Further Distribution, to the Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

**Distribution and Capital Stopper:**

In the event that Distributions are not paid on the Preferred Securities, subject as provided in the next sentence, LBHI has undertaken that, in the event that any Distribution is not paid in full, it will not:

(a) declare or pay any dividend on its shares of common stock; or

(b) repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

7

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock and/or common stock of LBHI equal to the amount of Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

**Trigger Event and Substituted Preferred Stock:**

If a Trigger Event occurs and is continuing, then, provided that (if required at such time) any relevant Supervisory Authority has not objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock.

On the substitution date, each Preferred Security of €1,000 in nominal amount will be substituted for one depositary share representing Substituted Preferred Stock which will have a nominal amount of €1,000 (or its equivalent in US$).

The General Partner will notify Holders if a Trigger Event occurs. In the notice, the General Partner will include information on the procedures for effecting the substitution.

**Optional Redemption:**

If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then to the extent that the redemption proceeds in respect thereof are not used to acquire Replacement Affiliate Investments, the Preferred Securities will also be redeemed by the General Partner, on the same date, each to be redeemed at the Optional Redemption Price.

Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time).

As a result, the relevant Supervisory Authority when granting such a consent for the redemption of the Subordinated Notes or the Replacement Affiliate Investments will also be granting a consent for any redemption of the Preferred Securities.

A Further Distribution may be payable on Optional Redemption.

| | |
|---|---|
| **Capital Disqualification Event:** | If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations. |
| **Tax Event:** | If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons at any time, then, if they are not replaced by Replacement Affiliate Investments, the General Partner at its option may either (i) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (ii) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will remain as Qualifying Regulatory Capital Securities. |
| **Rating Agency Event:** | If a Rating Agency Event occurs and is continuing, the General Partner at its option may redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price. |
| | Any redemption of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time). |
| **Ranking of the Preferred Securities:** | The Preferred Securities, together with the Subordinated Guarantee, are intended to provide Holders, with respect to the Issuer, with rights on liquidation of the Issuer equivalent to non-cumulative preferred stock of LBHI, whether or not issued. |
| | Claims under the Preferred Securities in respect of any Liquidation Distributions will rank: |
| | (a)    senior to the rights of the General Partner and the Preferential Limited Partner; and |
| | (b)    junior to the claims of creditors of the Issuer (if any). |
| **Rights upon Liquidation:** | In the event of the dissolution of the Issuer, Holders will be entitled to receive, subject as set out below, for each Preferred Security a Liquidation Distribution out of the assets of the Issuer legally available for distribution. |
| | LBHI has undertaken that, so long as any of the Preferred Securities is outstanding: |
| | (a)    unless a Trigger Event occurs or LBHI is being wound up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and |

|  | (b) | the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred. |

**Withholding Tax and Additional Amounts:**

The Issuer will pay such additional amounts (**Additional Amounts**) as may be necessary in order that the net payment received by each Holder in respect of the Preferred Securities, after deduction or withholding of or on account of any taxes imposed by tax authorities in the United States and the United Kingdom upon payments made by or on behalf of the Issuer, will equal the amount which would have been received in the absence of any such deduction or withholding of or on account of taxes, subject to customary exceptions.

The Subordinated Guarantee will contain a similar provision relating to any taxes imposed by tax authorities in the United States.

**Administrator:**

The Issuer will appoint an administrator to perform those operational matters in relation to the Issuer required under the Financial Services and Markets Act 2000 to be performed by a person authorised by the United Kingdom Financial Services Authority to establish, operate and wind-up collective investment schemes.

**Partnership Assets:**

The proceeds raised by the issue of the Preferred Securities together with the Preferential Limited Partner's capital contribution will be used by the Issuer to purchase the Subordinated Notes and the Third Party Assets.

The Subordinated Notes will represent approximately 95 per cent. of the Partnership Assets. The Subordinated Notes will be issued by LBHI, will have a maturity of 30 years and will be redeemable by LBHI on the interest payment date to be specified in the Final Terms (**First Call Date of Subordinated Notes**) or any interest payment date thereafter, subject to there being no objection from any relevant Supervisory Authority.

Unless the Preferred Securities are redeemed prior to or simultaneously with the maturity of the Subordinated Notes, then on maturity of the Subordinated Notes or any Replacement Affiliate Investments, the General Partner will, subject to prior consent of the relevant Supervisory Authority (if required at such time), reinvest the proceeds of redemption of the Subordinated Notes or Replacement Affiliate Investments in Replacement Affiliate Investments (or further Replacement Affiliate Investments) that will contain the same terms as the Subordinated Notes in respect of tenor, principal amount, interest payment dates and redemption (including redemption for tax reasons) and will be callable on any interest payment date. However, upon issuance of such Replacement Affiliate Investments, the Distribution Rate will be the rate per annum

determined by the then prevailing market conditions for instruments of similar risk and 30 year maturity.

The Third Party Assets will represent approximately 5 per cent. of the Partnership Assets.

**Voting Rights:** Except as described in "*Description of the Preferred Securities – Meetings*" and as provided in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

**Form of the Preferred Securities:** The Preferred Securities will be in registered form.

On or about the Closing Date, a single global certificate (the **Global Certificate**) in respect of the Preferred Securities will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear Bank SA/N.V., (**Euroclear**) and Clearstream Banking, société anonyme (**Clearstream, Luxembourg**). The Global Certificate will be issued, and the Preferred Securities will be registered, in the name of The Bank of New York Depository (Nominees) Limited (the **Initial Limited Partner**) as nominee of the Common Depositary.

For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers thereof will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

Definitive certificates will not be made available to Holders other than in certain limited circumstances. See "*Summary of Provisions Relating to the Preferred Securities in Global Form*".

**Listings:** Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market which is a regulated market for the purposes of the Investment Services Directive.

Application has also been made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

**Ratings:** The Preferred Securities are expected to be assigned, on issue ratings from Standard & Poor's Ratings Group, Moody's Investors Service and Fitch Ratings which will be contained in the Final Terms. A credit rating is not a recommendation to buy, sell or hold securities and may be subject to revision, suspension or withdrawal at any time by the relevant rating organisation.

**Governing Law:** The Limited Partnership Agreement establishing the Issuer and the Preferred Securities will be governed by, and construed in accordance with, English law.

The Subordinated Guarantee will be governed by, and construed in accordance with, New York law.

**Final Terms:**

The following information will be contained in the Final Terms:

- Issue Price and Offer Price per Preferred Security;

- Aggregate Nominal Amount of Preferred Securities;

- Distribution Payment Dates;

- Distribution Rate;

- Closing Date;

- First Call Date of Subordinated Notes;

- Net Proceeds;

- Ratings;

- Names and addresses of Managers;

- Combined selling, management and underwriting commission;

- Total estimated expenses (including the commission);

- ISIN;

- Common Code; and

- WKN number.

## RISK FACTORS

*Prospective investors should carefully consider the following information in conjunction with the other information contained in this Base Prospectus. Capitalised terms used but not defined in this section shall bear the respective meanings ascribed to them under the "Description of the Preferred Securities".*

### Risk Factor relating to LBHI

LBHI is the ultimate parent company of the Lehman Brothers group. The Subordinated Guarantee will be solely LBHI's obligation and no other entity will have any obligation, contingent or otherwise, to make any payments in respect thereof. Because LBHI is a holding company whose primary assets consist of shares of stock or other equity interests in or amounts due from subsidiaries, almost all of its income is derived from those subsidiaries. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Accordingly, LBHI will be dependent on dividends and other distributions or loans from its subsidiaries to generate the funds necessary to meet obligations with respect to the Subordinated Guarantee. Due to covenants contained in certain of LBHI's debt agreements and regulations relating to capital requirements affecting certain of its more significant subsidiaries, the ability of certain subsidiaries to pay dividends and other distributions and make loans to LBHI is restricted. The notes to LBHI's financial statements included in its most recent annual report on Form 10-K set forth the amount of net assets of its subsidiaries that were restricted as to the payment of dividends to LBHI at 30 November 2005. Additionally, as an equity holder, LBHI's ability to participate in any distribution of assets of any subsidiary is subordinate to the claims of creditors of the subsidiary, except to the extent that any claims LBHI may have as a creditor of the subsidiary are judicially recognised. If these sources are not adequate, LBHI may be unable to make payments of principal or interest in respect of the Subordinated Guarantee, and a Holder could lose all or a part of its investment.

### Risk Factors relating to the Group

The financial condition and results of operations of the Group may be affected by uncertain or unfavourable economic, market, legal and other conditions. These conditions include but are not limited to:

#### *Market Risk*

Changes in interest and foreign exchange rates, financial instruments and real estate valuations and increases in volatility can increase credit and market risks and may also affect customer-flow-related revenues and proprietary trading revenues as well as affect the volume of debt and equity underwritings and merger and acquisition transactions.

#### *Competitive Environment*

All aspects of the Group's business are highly competitive. The Group's competitive ability depends on many factors, including its reputation, the quality of its services and advice, intellectual capital, product innovation, execution ability, pricing, sales efforts and the talent of its employees.

#### *Business Environment*

Concerns about geopolitical developments, oil prices and natural disasters, among other things, can affect the global financial markets. Accounting and corporate governance scandals in recent years have had a significant effect on investor confidence.

#### *Liquidity*

Liquidity and liquidity management are of critical importance in the Group's industry. Liquidity could be affected by the inability to access the long-term or short-term debt, repurchase or securities-lending markets or to draw under credit facilities, whether due to factors specific to the Group or to general market conditions. In addition, the amount and timing of contingent events, such as unfunded commitments and guarantees,

could adversely affect cash requirements and liquidity. To mitigate these risks, the liquidity and funding policies of the Group have been conservatively designed to maintain sufficient liquid financial resources to continually fund its balance sheet and to meet all expected cash outflows, for one year in a stressed liquidity environment.

### Credit Ratings

The Group's access to the unsecured funding markets is dependent on its credit ratings. A reduction in credit ratings could adversely affect the Group's access to liquidity alternatives and its competitive position, and could increase the cost of funding or trigger additional collateral requirements.

### Credit Exposure

Credit exposure represents the possibility that a counterparty will be unable to honour its contractual obligations. Although the Group actively manages credit exposure daily as part of its risk management framework, counterparty default risk may arise from unforeseen events or circumstances.

### Operational Risk

Operational risk is the risk of loss resulting from inadequate or failed internal or outsourced processes, people, infrastructure and technology, or from external events. The Group seeks to minimise these risks through an effective internal control environment.

### Legal, Regulatory and Reputational Risk

The securities and financial services industries are subject to extensive regulation under both federal and state laws in the US and under the laws of the many other jurisdictions in which the Group does business. The Group is also regulated by a number of self-regulatory organisations such as the National Association of Securities Dealers, the Municipal Securities Rulemaking Board and the National Futures Association, and by national securities and commodities exchanges, including the New York Stock Exchange. As of 1 December 2005, LBHI became regulated by the SEC as a consolidated supervised entity, and as such, LBHI are subject to group-wide supervision and examination by the SEC, and accordingly, LBHI are subject to minimum capital requirements on a consolidated basis. Violation of applicable regulations could result in legal and/or administrative proceedings, which may impose censures, fines, cease-and-desist orders or suspension of a firm, its officers or employees. The scrutiny of the financial services industry has increased over the past several years, which has led to increased regulatory investigations and litigation against financial services firms.

Legislation and rules adopted both in the US and around the world have imposed substantial new or more stringent regulations, internal practices, capital requirements, procedures and controls and disclosure requirements in such areas as financial reporting, corporate governance, auditor independence, equity compensation plans, restrictions on the interaction between equity research analysts and investment banking employees and money laundering.

The trend and scope of increased compliance requirements has increased costs necessary to ensure compliance. Our reputation is critical in maintaining our relationships with clients, investors, regulators and the general public, and is a key focus in our risk management efforts.

The Group is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against the Group and others with respect to transactions in which the Group acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and actions brought on behalf of various classes of claimants against many securities firms and lending institutions, including the Group.

See Part I, Item 1A, Risk Factors, in the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2005 of LBHI filed with the SEC on Form 10-K for additional information about these and other risks inherent in our business.

**Risk Factors relating to the Preferred Securities**

*Risks Associated with LBHI's Financial Condition*

The Issuer is a newly established limited partnership with no previous operating history or revenues. It is expected that the Issuer's sole source of funds to pay Distributions on the Preferred Securities will be payments which it receives from its investments in Subordinated Notes (issued by LBHI), in Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The rights of Holders shall be represented solely by the Preferred Securities and the Subordinated Guarantee, and under no circumstances will the rights of Holders be represented by the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets nor shall Holders be entitled to receive or hold the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes or any payments due in respect of the Subordinated Notes and/or the Third Party Assets or any Replacement Affiliate Investments replacing the Subordinated Notes and/or the Third Party Assets.

The Preferred Securities are guaranteed on a limited and subordinated basis by LBHI pursuant to the terms of the Subordinated Guarantee. Accordingly, if LBHI's financial condition were to deteriorate, the Holders may suffer direct and materially adverse consequences, including non-payment of Distributions on the Preferred Securities or of payments under the Subordinated Guarantee.

*Limitations to Remedies of Holders under the Subordinated Guarantee*

In the event that LBHI is in breach of its payment obligations under the Subordinated Guarantee, the terms of the Subordinated Guarantee do not confer rights in favour of the Holders to petition for the winding up of LBHI.

*Distributions are Discretionary and Not Cumulative*

Distributions on the Preferred Securities are not cumulative. The discretion of the General Partner to resolve that a Distribution should not be paid is unfettered. As set out in "Description of the Preferred Securities", Distributions on the Preferred Securities will be paid on each Distribution Payment Date out of interest received by the Issuer from its investment in the Partnership Assets and from other resources legally available, if any, and only if the General Partner has not published a No Payment Notice. If a No Payment Notice is published, the Holders will not be entitled to receive such Distributions (or any payment under the Subordinated Guarantee in respect of such Distributions) or have any claim in respect thereof. In certain circumstances the General Partner must publish a No Payment Notice.

*United States Federal Income Taxation of Holders*

There are certain US federal income tax implications associated with purchasing, owning and disposing of the Preferred Securities. This Base Prospectus contains a section entitled "Taxation - Certain United States Federal Income Tax Considerations" which addresses, among other things, the characterisation of the Issuer and the Subordinated Notes for US federal income tax purposes. The transactions described in this Base Prospectus are complex and characterisations other than those described in this Base Prospectus are possible. See "Taxation - Certain United States Federal Income Tax Considerations - Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

Investors are urged to consider the taxation section carefully even if they are not generally subject to taxation in the United States. The taxation section is of a general nature only and does not purport to be a complete analysis of all potential tax considerations relating to the Preferred Securities. Accordingly prospective investors should consult their own professional advisors concerning the possible tax consequences of purchasing, holding and/or selling Preferred Securities

### Perpetual Nature of the Preferred Securities

The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Although the General Partner may redeem the Preferred Securities in whole but not in part in certain circumstances, in each case at the Optional Redemption Price, there are limitations on the General Partner's ability to do so. Therefore, Holders should be aware that they may be required to bear the financial risks of an investment in the Preferred Securities for an indefinite period of time.

### Substitution

If a Trigger Event occurs and is continuing, the General Partner will, provided that (if required at such time) no relevant Supervisory Authority has objected, take all reasonable steps to cause the substitution of the Preferred Securities with depositary shares representing fully paid non-cumulative preferred stock issued directly by LBHI. A Trigger Event shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term.

Although LBHI has undertaken that, in the event that the Preferred Securities are substituted by depositary shares representing Substituted Preferred Stock, LBHI will apply for admission to trading of the Substituted Preferred Stock on a regulated market for the purposes of the Investment Services Directive (outside the United States). However, there can be no assurance that a competent authority will agree to such admission of Substituted Preferred Stock. In addition, the tax treatment for holders of Substituted Preferred Stock may be different from that for Holders of the Preferred Securities.

### No Limitation on Senior Debt

The obligations of LBHI under the Subordinated Guarantee will rank junior as to payments to all liabilities to creditors of LBHI (including without limitation general creditors and subordinated debt holders excluding Parity Securities and Junior Share Capital) and claims of holders of senior ranking securities. In the event that LBHI is wound-up, liquidated or dissolved, the assets of LBHI would be available to pay obligations under the Subordinated Guarantee only after all payments have been made on such senior liabilities and claims. LBHI is not prohibited from issuing, guaranteeing or otherwise incurring further debt ranking *pari passu* with, or senior to, its obligations under the Subordinated Guarantee. The issue of any such debt may reduce the amount recoverable by Holders of the Preferred Securities under the Subordinated Guarantee. Accordingly, on the winding-up of LBHI and after payment of senior creditors, there may not be a sufficient amount to satisfy the amounts owing to the Holders of the Preferred Securities.

### Absence of Prior Public Markets

The Preferred Securities constitute a new issue of securities by the Issuer. Prior to this issue, there will have been no public market for the Preferred Securities. Although application has been made for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market and on Eurolist by Euronext Amsterdam, there can be no assurance that an active public market for the Preferred Securities will develop and, if such a market were to develop, the Managers are under no obligation to maintain such a market. The liquidity and the market prices for the Preferred Securities can be expected to vary with changes in market and economic conditions, the financial condition and prospects of LBHI and other factors that generally influence the market prices of securities.

## AVAILABLE INFORMATION

LBHI files annual, quarterly and current reports, proxy statements and other information with the Securities and Exchange Commission (the **SEC**). You may read and copy any document LBHI files with the SEC at the SEC's Public Reference Room at 100 F Street, NE, Washington, DC 20549. You may obtain information on the operation of the Public Reference Room by calling the SEC at +1 800 SEC 0330 (or +1 202 551 8090). The SEC maintains an internet site that contains annual, quarterly and current reports, proxy and information statements and other information regarding issuers that file electronically with the SEC. LBHI's electronic SEC filings are available to the public at http://www.sec.gov.

LBHI's public internet site is http://www.lehman.com. LBHI makes available free of charge through its internet site, via a link to the SEC's internet site at http://www.sec.gov, its annual report on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed or furnished pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (the **Exchange Act**), as soon as reasonably practicable after it electronically files such material with, or furnishes it to, the SEC. LBHI also makes available through its internet site, via a link to the SEC's internet site, statements of beneficial ownership of LBHI's equity securities filed by its directors, officers, 10 per cent. or greater shareholders and others under Section 16 of the Exchange Act.

In addition, LBHI currently makes available on http://www.lehman.com its most recent annual report on Form 10-K, its quarterly reports on Form 10-Q for the current fiscal year, its most recent proxy statement and its most recent annual report to stockholders, although in some cases these documents are not available on that site as soon as they are available on the SEC's site.

Copies of the materials referred to in the preceding paragraphs, as well as copies of any current amendment or supplement to this Base Prospectus, may also be obtained from the persons set forth under "*Information Incorporated By Reference*".

## INFORMATION INCORPORATED BY REFERENCE

The following documents which have previously been published or are published simultaneously with this Base Prospectus and have been filed with the Financial Services Authority shall be incorporated in, and form part of, this Base Prospectus:

(a)   the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2004 of LBHI filed with the SEC on Form 10-K including the consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2004 and 30 November 2003 (set out on pages 63 to 109 and F-l to F-15, respectively);

(b)   the annual report pursuant to Section 13 or 15(d) of the Exchange Act for the fiscal year ended 30 November 2005 of LBHI filed with the SEC on Form 10-K including the audited consolidated and unconsolidated financial statements (including the auditors' report thereon and notes thereto) of LBHI in respect of the years ended 30 November 2005 and 30 November 2004;

(c)   the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 28 February 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 28 February 2006 (set out on pages 3 to 39);

(d)   the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 31 May 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 31 May 2006 (set out on pages 3 to 40);

(e)   the quarterly report pursuant to Section 13 or 15(d) of the Exchange Act for the quarterly period ended 31 August 2006 of LBHI filed with the SEC on Form 10-Q including the consolidated interim quarterly financial statements of LBHI in respect of the three months ended 31 August 2006 (set out on pages 3 to 41);

(f)   the current report of LBHI pursuant to Section 13 or 15(d) of the Exchange Act filed with the SEC on Form 8-K on 14 December 2006 containing preliminary and unaudited financial results for the fiscal quarter and year ended 30 November 2006;

Certain of the financial data set out in the Information Incorporated by Reference in items (a) to (f) above is not audited and is derived from Lehman Brothers' internal management and accounting records or publicly available information.

(g)   the LBHI notice of 2006 Annual Meeting of Stockholders and proxy statement dated 27 February 2006 (including the details relating to LBHI's board of directors, director independence, audit committee and shareholders set out on pages 1 to 39 thereof) (the **Proxy Statement**),

save that any statement contained in a document which is deemed to be incorporated by reference herein shall be deemed to be modified or superseded for the purpose of this Base Prospectus to the extent that a statement contained herein modifies or supersedes such earlier statement (whether expressly, by implication or otherwise). Any statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute part of this Base Prospectus.

Any documents themselves incorporated by reference in the documents deemed to be incorporated by reference herein shall not form part of this Base Prospectus.

The Issuer will provide, without charge, to each person to whom a copy of this Base Prospectus has been delivered, upon the oral or written request of such person, a copy of any or all of the documents which or portions of which are incorporated herein by reference. Written or oral requests for such documents should be directed to the Issuer at its specified offices below. In addition, such documents and copies of the Final Terms will be available without charge from the registered offices of the Issuer and the Paying Agents in

Amsterdam and London during usual business hours on any weekday (Saturdays and public holidays excepted).

## DESCRIPTION OF THE PREFERRED SECURITIES

*The Preferred Securities are limited partnership interests in the Issuer. The following description should be read in conjunction with, and is subject to the terms of, the Limited Partnership Agreement (as defined below), a copy of which is available for inspection as described under "General Information".*

## 1.    Definitions and Interpretation

In this description of the Preferred Securities, except to the extent that the context otherwise requires:

**Act** means the Limited Partnerships Act 1907, as amended and/or restated from time to time;

**Additional Amounts** means the additional amounts which may be payable by the Issuer in respect of the Preferred Securities as a result of the imposition of United Kingdom or United States withholding taxes as described in paragraph 6;

**Adverse Tax Effect** means the reduction, limitation or denial of any deduction, credit, partnership allocation, deferral, exemption or other relief granted or allowable (including for the avoidance of doubt the ability to surrender any of the foregoing under any consolidation provisions) under US or UK tax principles, as the case may be;

**Agency Agreement** means the agency agreement dated the Closing Date relating to the Preferred Securities between, *inter alios*, LBHI, the Registrar and the Paying and Transfer Agents;

**Business Day** means a day on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealing in foreign exchange and foreign currency deposits) in London and on which the TARGET System, or any successor thereto, is operating;

**Calculation Date**, in respect of any Distribution Payment Date, means the 20th Business Day before such Distribution Payment Date;

A **Capital Disqualification Event** shall occur if a change of the regulations, requirements, guidelines and policies of any relevant Supervisory Authority relating to capital adequacy of financial institutions in the jurisdiction of such Supervisory Authority results in the Preferred Securities or the Subordinated Notes no longer qualifying as regulatory capital pursuant to such regulations, requirements, guidelines and policies;

**Clearstream, Luxembourg** means Clearstream Banking, société anonyme or its successor;

**Closing Date** means the date specified as such in the Final Terms;

**Code** means the United States Internal Revenue Code of 1986;

**Distribution Payment Dates** means the date in each year specified as such in the Final Terms;

**Distribution Period** means the period from, and including, the Closing Date to, but excluding, the first Distribution Payment Date and each period thereafter from, and including, one Distribution Payment Date to, but excluding, the next Distribution Payment Date;

**Distribution Rate** means, in respect of a Distribution Period, the percentage rate determined pursuant to paragraph 2.2;

**Distributions** means the non-cumulative distributions in respect of the Preferred Securities as described under paragraph 2;

**Euroclear** means Euroclear Bank S.A./N.V. or its successor;

**Euro-zone** means the region comprised of the member states of the European Union that have adopted the single currency in accordance with the Treaty establishing the European Community (signed in Rome on 25 March 1957) as amended;

**Final Terms** means the Final Terms relating to the Preferred Securities, the format of which will be substantially as set out in the base prospectus relating to the Preferred Securities approved by the Financial Services Authority in its capacity as competent authority under the Financial Services and Markets Act 2000;

**First Call Date** means the date specified as such in the Final Terms;

**Further Distribution** means, if upon redemption of the Preferred Securities the Partnership Assets exceed 100 per cent. of the aggregate of the Preferred Capital Contribution and the capital contribution of the Preferential Limited Partner, in respect of each Preferred Security an amount calculated by the General Partner representing a *pro rata* share of 50 per cent. of any such excess. For the avoidance of doubt there is no obligation on the General Partner or any other person to invest the Partnership Assets in such a way as would guarantee the generation of a Further Distribution;

**GAAP** means, at any date or for any period, US generally accepted accounting principles as in effect on such date or for such period;

**General Partner** means LB GP No.1 Ltd. (incorporated in England and Wales with registered number 5355491), a wholly-owned Subsidiary of LBHI;

**Group** means LBHI and its Subsidiaries;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time;

**Initial Limited Partner** means The Bank of New York Depository (Nominees) Limited (incorporated in England and Wales with registered number 03227439);

**Invested Partnership Assets** means the Subordinated Notes or any Replacement Affiliate Investments and the Third Party Assets;

**Issuer** means Lehman Brothers UK Capital Funding IV LP;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to the Subordinated Guarantee and the Parity Securities;

**LBHI** means Lehman Brothers Holdings Inc. (incorporated in the State of Delaware) and its successors and assignees;

**Limited Partnership Agreement** means an agreement dated 3 January 2007 between, *inter alios*, the General Partner and the Preferential Limited Partner establishing the Issuer, as the same may be amended from time to time;

**Liquidation Distribution** means the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment, and (b) any Additional Amounts, in each case in cash only;

**Liquidation Preference** means the liquidation preference of €1,000 per Preferred Security;

**New Capital Amount** means, at any date, the net proceeds received from new issuances of LBHI common stock or perpetual deferrable preferred stock (whether in one or more public offerings or private placements) during the period commencing on the 90th day prior to such date and designated by LBHI's board of directors at or before the time of issuance as relevant for the purposes of the above financial tests in respect of the Preferred Securities;

**No Payment Notice** means a notice which is published pursuant to paragraph 2.4;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under the Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of the Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with the Subordinated Guarantee;

**Partnership Assets** means the assets of the Issuer including the Subordinated Notes or Replacement Affiliate Investments and the Third Party Assets;

**Paying and Transfer Agents** means the Principal Paying and Transfer Agent, The Bank of New York (Luxembourg), S.A., ING Bank N.V. and/or such other entities as are appointed by the General Partner on behalf of the Issuer and notified to the Holders as described under paragraph 10;

**Permitted Reorganisation** means a solvent reconstruction, amalgamation, reorganisation, merger or consolidation whereby all or substantially all of the business, undertaking and assets of LBHI are transferred to a successor entity which assumes all of LBHI's obligation under the Subordinated Guarantee;

**Preferential Limited Partner** means, on the Closing Date, LB Investment Holdings Ltd (incorporated in England and Wales with registered number 4385277), a wholly-owned Subsidiary of LBHI or any other Subsidiary of LBHI;

**Preferential Limited Partner Return** means, subject to payment of any Further Distribution, the excess received by the Issuer from Partnership Assets, over any amounts payable to the Holders;

**Preferred Capital Contribution** means, in relation to the Preferred Securities, the aggregate contribution to the assets of the Issuer (being a whole multiple of €1,000) paid in cash by the Holders and the Preferential Limited Partner;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**[SM]) of the Issuer, originally issued on the Closing Date, each such security representing an interest of a Holder in the Issuer attributable to the whole of each €1,000 of the Preferred Capital Contribution and including any further Preferred Securities of the Issuer of the same series issued after the Closing Date and ranking *pari passu* with the Preferred Securities as regards participation in the profits and assets of the Issuer and **Preferred Security** shall be construed accordingly;

**Principal Paying and Transfer Agent** means The Bank of New York or such other entity as is appointed by the General Partner on behalf of the Issuer and notified to the Holders as described in paragraph 10;

**Qualifying Regulatory Capital Securities** means securities which (a) qualify as regulatory capital for the purposes of the Supervisory Authority and (b) would be economically equivalent in all material aspects to the Preferred Securities;

**Rating Agency Event** means a change in the methodology employed by any nationally recognised statistical rating organisation within the meaning of Rule 15c3-1 under the Securities Exchange Act of 1934, as amended, that currently publishes a rating for LBHI or any of its subsidiaries (a **rating agency**) in assigning equity credit to securities such as the Preferred Securities, as such methodology is in effect on the Closing Date (the **current criteria**), which change results in a lower equity credit being assigned by such rating agency to the Preferred Securities as of the date of such change than the equity credit that would have been assigned to the Preferred Securities as of the date of such change by such rating agency pursuant to its current criteria;

**Redemption Date** means the date fixed for redemption under a notice given under paragraph 4.2, 4.3 or 4.5;

**Register** means the register of Holders maintained outside the United Kingdom on behalf of the Issuer;

**Registrar** means The Bank of New York (Luxembourg), S.A. or such other entity appointed by the Issuer and notified to the Holders as described under paragraph 10;

**Replacement Affiliate Investments** means

(a)    subordinated debt securities (other than the Subordinated Notes) that are issued or guaranteed by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time); or

(b)    provided that (if required) the relevant Supervisory Authority has not objected, such other instruments issued by a member of the Group other than LBHI (but of a comparable rating to LBHI at the relevant time),

*provided that* in both cases

(i)    the Replacement Affiliate Investments shall, in the event of their issuance, be debt for US federal income tax purposes; and

(ii)   neither the General Partner nor the Preferential Limited Partner shall be an obligor of the Replacement Affiliate Investments;

**Stock Exchanges** means the London Stock Exchange plc, Euronext Amsterdam N.V. and/or such other stock exchange approved by the General Partner on which the Preferred Securities may be listed from time to time;

**Subordinated Guarantee** means the subordinated guarantee in respect of the Preferred Securities executed by LBHI on the Closing Date;

**Subordinated Notes** means the Fixed Rate Subordinated Notes, originally issued on the Closing Date in the principal amount equal to the aggregate nominal amount of the Preferred Securities, by LBHI and held by the Issuer together with the Third Party Assets as initial partnership assets, or any Replacement Affiliate Investments which are held by the Issuer as part of the partnership assets thereafter;

**Subsidiary** means, in relation to any entity, any company (a) in which that entity holds a majority of the voting rights or (b) of which that entity is a member and has the right to appoint or remove a majority of the board of directors or (c) of which that entity is a member and controls a majority of the voting rights, and includes any company which is a Subsidiary of a Subsidiary of that entity;

**Substituted Preferred Stock** means fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends calculated in the same manner as the Preferred Securities, having no voting rights (except as required by law) and being subject to optional redemption in the same manner as the Preferred Securities;

**Supervisory Authority** means the US Securities and Exchange Commission or any organisation or authority having supervisory responsibility for the prudential supervision of financial institutions engaged in regulated activities carried on by LBHI or its affiliates;

**Tangible Common Stockholders' Equity Amount** means, as of any quarter end and subject to adjustments described below, LBHI's common stockholders' equity minus identifiable intangible assets and goodwill, in each case as reflected on LBHI's consolidated GAAP balance sheet as of such quarter end and such that all financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements as of the relevant dates or for the relevant periods, except (a) that LBHI's common stockholders' equity at any date will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 1244 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, Tangible Common Stockholders; Equity Amount as of a fiscal quarter end is higher or lower than it would have been in the absence of such change, then, for purposes of the calculations described in paragraph 2.4, Tangible Common Stockholders Equity Amount will be calculated on a pro forma basis as if such change had not occurred;

**TARGET** means the Trans European Real-Time Gross Settlement Express Transfer (TARGET) System;

**TARGET Business Day** means a day on which TARGET is operating;

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United Kingdom, the United States, or any political subdivision of or by any authority therein or thereof having power to tax;

**Tax Event** means a UK Tax Event or a US Tax Event;

**Third Party Assets** means (a) cash or (b) debt securities of entities not affiliated with LBHI represented by instruments which (i) are debt for US federal income tax purposes; (ii) have a rating from Standard & Poor's and/or Moody's Investors Services or an internationally recognised rating agency that signifies investment grade; and (iii) in respect of any payment of interest and/or repayment of principal to a holder of such an instrument are not subject to any withholding or deduction for or on account of any tax;

**Trailing Two Quarters Consolidated Net Income Amount** means, for any fiscal quarter and subject to adjustments described below, the sum of LBHI's consolidated net income for the two fiscal quarters ending as of the last day of such fiscal quarter. Financial terms used in this definition will be determined in accordance with GAAP as applied to and reflected in LBHI's consolidated financial statements for the relevant periods, except (a) that LBHI's consolidated net income for any period will be adjusted to exclude extraordinary items, unusual items and infrequently occurring items as defined in APB 30, goodwill impairment as defined in Financial Accounting Standards Board Statements of Financial Accounting Standards (**SFAS**) No. 142 and amounts relating to discontinued operations as defined in SFAS No. 1244 and (b) as provided in the next sentence. If because of a change in GAAP that results in a cumulative effect of a change in accounting principle or a restatement, consolidated net income is higher or lower than it would have been in the absence of such change, then, for purposes of calculating the calculations described in paragraph 2.4, commencing with the fiscal quarter for which such change in GAAP becomes effective, such consolidated net income will be calculated on a pro forma basis as if such change had not occurred;

**Trigger Event** shall occur (a) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership, (b) if LBHI has capital adequacy levels which are less than the minimum capital adequacy levels which are imposed by the relevant Supervisory Authority or (c) if the relevant Supervisory Authority, in its sole discretion, informs LBHI that it will not meet its minimum capital requirement in the near term;

**UK Tax Event** means that, as a result of any change (each a **Relevant Change**) in, or prospective or actual amendment to, the laws of the United Kingdom or any political subdivision or authority thereof having power to tax, or any change in the application of such laws, or in the official or generally published interpretation of such laws (including the enactment of any legislation, any judicial decision or any regulatory determination in the UK), or any interpretation or pronouncement by any relevant tax authority that provides for a position with respect to such laws or regulations that differs from the previously generally accepted position in relation to similar transactions or which differs from any specific written confirmation given by a tax authority in respect of the Preferred Securities and/or the Subordinated Notes, which change or amendment becomes effective or is to take effect, on or after the Closing Date, there is more than an insubstantial risk that:

(a)    the Issuer or the General Partner would be subject to more than a *de minimis* amount of tax in respect of the Subordinated Notes or the Preferred Securities in the UK (except, in the case of the General Partner only, for any such tax that would arise as a result of (i) profits arising to it as a result of payments received by it from the Issuer or (ii) activities (if any) carried on by it other than those permitted or contemplated in the Limited Partnership Agreement in respect of the Subordinated Notes and the Preferred Securities);

(b)    payments to Holders (including payments in respect of the Preferred Securities and the Subordinated Guarantee) would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK;

(c)    payments in respect of the Subordinated Notes would be subject to deduction or to withholding of or on account of tax in the UK or would give rise to any obligation to account for any tax in the UK; or

(d)    the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, LBHI, the General Partner, LBHI or any other company with which LBHI is grouped for UK tax purposes;

**US Tax Event** means that, as a result of (a) any amendment to, change in or announced proposed change in the laws (or any regulations thereunder whether in proposed, temporary or final form) of the United States or any political subdivision or taxing authority thereof or therein, (b) a judicial decision interpreting, applying or clarifying such laws or regulations, (c) an administrative pronouncement or action that represents an official position (including a clarification of an official position) of the governmental authority or regulatory body making such administrative pronouncement or taking such action, or (d) a threatened challenge asserted in connection with an audit of the Issuer, LBHI or the General Partner, or a threatened challenge asserted in writing against any other taxpayer that has raised capital through the issuance of securities similar to the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities, which amendment or change is adopted or which decision, pronouncement or proposed change is announced or which action, clarification or challenge occurs on or after the date of the issuance of the Preferred Securities, there is more than an insubstantial risk that:

(i)    the Issuer is or would be subject to more than a *de minimis* amount of tax or similar assessments (including, for the avoidance of doubt, any withholding tax) in the United States;

(ii)   payments on the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities are or would be subject to deduction or to withholding of or on account of tax imposed by a governmental authority in the United States; or

(iii)  the Subordinated Notes, Replacement Affiliate Investments or the Preferred Securities have, or will have, an Adverse Tax Effect on the Issuer, the General Partner, LBHI or any other company with which LBHI is affiliated for US tax purposes.

In this description of the Preferred Securities any reference to a particular time shall, unless otherwise specified, be to Central European time.

**2.    Distributions**

2.1    Subject as provided in paragraphs 2.3 and 2.4, non-cumulative distributions (the **Distributions**) on the Preferred Securities will accrue from the Closing Date (or, in the case of any further preferred securities issued pursuant to paragraph 8.4, from their respective dates of issue) and shall be payable out of the Issuer's own legally available resources annually in arrear on each Distribution Payment Date.

2.2    Distributions will be payable at the Distribution Rate being the rate per annum specified in the Final Terms. Where Distributions are to be calculated in respect of any period, the applicable day count fraction will be the number of days in the relevant period from and including the date from which Distributions begin to accrue to but excluding the date on which they are payable divided by the number of days in the Distribution Period comprising the relevant period or in which the relevant period falls.

2.3    Subject to clause 2.4, Holders will be entitled to receive Distributions from the Issuer if it has received sufficient funds under the Partnership Assets.

2.4    Furthermore, notwithstanding the existence of such resources legally available for distribution by the Issuer, the Holders will not be entitled to receive Distributions if the General Partner has published a No Payment Notice in respect of such Distribution, in which case there will be no payment due under the Preferred Securities.

The General Partner will have the full discretion to publish the No Payment Notice in respect of any Distribution at any time and for any reason.

In addition, without limiting the discretion detailed above, the General Partner will deliver a No Payment Notice if:

- such payment will cause a Trigger Event;

- the Partnership Assets will not be sufficient to allow the Issuer to pay a full distribution when due; or

- in respect of the relevant Distribution Payment Date Distributions that would be payable on such date exceed the New Capital Amount if on the Calculation Date relative to such Distribution Payment Date:

    (x) the Trailing Two Quarters Consolidated Net Income Amount is not a positive amount for the two-fiscal quarter period ending on the last day of the fiscal quarter that is two fiscal quarters prior to the most recently completed fiscal quarter before that Calculation Date; and

    (y) the Tangible Common Stockholders' Equity Amount as of the end of the most recently completed fiscal quarter before that Calculation Date and as of the end of the fiscal quarter that is two quarters before that fiscal quarter has declined in each case by 10 per cent. or more as compared to the Tangible Common Stockholders' Equity Amount at the end of the "benchmark fiscal quarter" for that Distribution Payment Date, which is the sixth fiscal quarter preceding the most recently completed fiscal quarter before that Calculation Date.

2.5    No Holder shall have any claim in respect of any Distribution or part thereof not payable as a result of the limitation set out in paragraph 2.4. Accordingly, such amounts will not cumulate for the benefit of Holders or entitle the Holders to any claim in respect thereof against the Issuer or against LBHI under the Subordinated Guarantee.

2.6    Save as described above and in respect of a Further Distribution, Holders will have no right to participate in the profits of the Issuer or LBHI and in particular will have no rights to receive from the Issuer any amounts paid to the Issuer, amounts paid under the Partnership Assets or otherwise amounts in excess of Distributions due and payable under the Preferred Securities. In the event that any amounts received by the Issuer on the Partnership Assets, exceed the amount (if any) then due by way of Distribution under the Preferred Securities, the amount of such excess will be paid to the Preferential Limited Partner as and when they are received. Holders will have no rights in respect of such excess.

## 3.    Liquidation Distributions

3.1    In the event of the dissolution of the Issuer, the Holders will be entitled to receive the Liquidation Distribution, in respect of each Preferred Security held, out of the assets of the Issuer available for distribution to such Holders under the Act. Such entitlement will arise (a) before any payments due to the General Partner and the Preferential Limited Partner and (b) before any distribution of assets is made to the General Partner, but such entitlement will rank equally with the entitlement of the holders of all other preferred securities issued by the Issuer which rank *pari passu* with the Preferred Securities, if any.

3.2    After payment of all Liquidation Distributions, or the relevant proportion thereof if applicable, the General Partner will be entitled to any remaining assets of the Issuer representing proceeds of the sale or redemption of the Issuer's partnership assets and the Holders will have no right or claim to any of the remaining assets of the Issuer or LBHI. For the avoidance of doubt, Holders will have no right to receive the Partnership Assets.

3.3    Subject to the Act, other than in the events referred to in paragraphs 4.2, 4.3, 4.5, 4.8 and 5, the General Partner will not permit, or take any action that would or might cause, the liquidation or dissolution of the Issuer. No Holder shall have any claim (whether against the Issuer or LBHI) in

respect of any Liquidation Distribution or part thereof not paid when it would, but for the operation of this paragraph 3.3, otherwise have become due.

**4.    Redemption, Purchases, Substitution and Variation**

4.1    The Preferred Securities have no fixed final redemption date and Holders have no right to call for the redemption of the Preferred Securities. Any redemption is subject to the provisions of the Act.

4.2    If the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms, then if the redemption proceeds in respect thereof are not used to acquire Replacement Affiliate Investments, the Preferred Securities will also be redeemed, in whole but not in part, by the General Partner on the same date, each to be redeemed at the Optional Redemption Price.

4.3    If a Tax Event occurs and is continuing, the effect of which cannot be avoided by the Issuer, LBHI or the issuer of the Replacement Affiliate Investments, as the case may be, taking reasonable measures available to it or if the Subordinated Notes or the Replacement Affiliate Investments, as the case may be, are redeemed pursuant to their terms for tax reasons, then if they are not replaced by Replacement Affiliate Investments, the General Partner on the same date at its option may either (a) redeem the Preferred Securities in whole, but not in part, on the same date, each to be redeemed at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities.

4.4    Prior to the publication of any redemption pursuant to paragraph 4.3, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption and an opinion of counsel to LBHI experienced in such matters to the effect that a Tax Event has occurred and specifying which of the clauses as set out in the definition of "Tax Event" is applicable.

4.5    If a Rating Agency Event occurs and is continuing, the General Partner at its option may either (a) redeem the Preferred Securities in whole, but not in part, at the Optional Redemption Price or (b) substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities provided that such Preferred Securities will be Qualifying Regulatory Capital Securities which, in either case, have the same equity credit (as such term is used in the definition of Rating Agency Event) as applied to the Preferred Securities before the Rating Agency Event.

4.6    Prior to the publication of any redemption pursuant to paragraph 4.5, the General Partner shall deliver to the Registrar a certificate signed by two members of the board of directors of LBHI stating that the Issuer is entitled to effect such redemption.

4.7    Any redemption or purchase of the Preferred Securities, the Subordinated Notes or Replacement Affiliate Investments is subject to the consent of the relevant Supervisory Authority (if required at such time). As a result, the relevant Supervisory Authority when granting such a consent for the redemption or purchase of the Subordinated Notes and/or Replacement Affiliate Investments will also be granting their consent for any redemption or purchase of the Preferred Securities. The relevant Supervisory Authority may impose conditions on any such redemption or purchase.

4.8    All Preferred Securities which are redeemed will forthwith be cancelled and any Preferred Securities which are purchased may be cancelled. Any Preferred Securities cancelled accordingly may not be reissued or resold.

4.9    If a Capital Disqualification Event occurs and is continuing, the General Partner may substitute all of the Preferred Securities for Qualifying Regulatory Capital Securities or vary the terms of the Preferred Securities so that they become Qualifying Regulatory Capital Securities in accordance with applicable laws and regulations.

**5.**    **Substitution for Preferred Stock**

5.1    If a Trigger Event occurs, then, provided that (if required at such time) no relevant Supervisory Authority has objected, the General Partner shall take all reasonable steps to cause the substitution of the Preferred Securities by depositary shares representing Substituted Preferred Stock (the **Preferred Securities Substitution**) on the Substitution Date, as defined below.

As soon as reasonably practicable following the occurrence of a Trigger Event, the General Partner shall cause notice (the **Trigger Event Notice**) to be given to the Holders (in accordance with paragraph 10) and to the Stock Exchanges that the depositary shares representing Substituted Preferred Stock will be available from the date (the **Substitution Date**) specified in the Trigger Event Notice for the purpose.

Until such time as the Trigger Event Notice is given by the General Partner (in accordance with paragraph 10), Holders will continue to be entitled to receive Distributions and/or a Liquidation Distribution in respect of the Preferred Securities but thereafter Holders will have no further rights, title or interest in or to their Preferred Securities except to have them substituted in the manner and to the persons described below.

The Trigger Event Notice will contain a form of substitution confirmation (the **Preferred Securities Substitution Confirmation**) to be completed by each Holder (or, for so long as the Preferred Securities are registered in the name of a nominee of a common depositary for Euroclear and Clearstream, Luxembourg, by each accountholder named in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in the Preferred Securities). The form of Preferred Securities Substitution Confirmation shall also be made available at the offices of each Paying and Transfer Agent. To receive Substituted Preferred Stock in respect of its holding of Preferred Securities, a Paying and Transfer Agent must receive from the Holder (or such accountholder, as the case may be) a Preferred Securities Substitution Confirmation together with the certificate representing the relative holding of Preferred Securities or other evidence of entitlement satisfactory to the General Partner.

Each share of Substituted Preferred Stock allotted will rank for any dividend from the immediately preceding Distribution Payment Date but otherwise will have no entitlement to any accrued Distributions or any other payment in respect of the Preferred Securities.

Upon a Preferred Securities Substitution, each Holder (or, as the case may be, accountholder) shall receive in respect of each €1,000 Liquidation Preference of Preferred Securities, one depositary share representing Substituted Preferred Stock with a nominal amount of €1,000 (or its equivalent in US$).

No Preferred Securities Substitution will take place and the Holders will continue to hold their Preferred Securities and all their rights thereunder if prior to the Substitution Date, a winding-up of LBHI occurs.

*LBHI has undertaken that it will pay any taxes or capital duties or stamp duties payable in the UK arising on the allotment and issue of the depositary shares representing Substituted Preferred Stock. LBHI will not be obliged to pay, and each Holder (or, as the case may be, accountholder) delivering Preferred Securities and a duly completed Preferred Securities Substitution Confirmation to a Paying and Transfer Agent must pay, any other taxes, stamp duty reserves taxes and capital, stamp, issue and registration duties arising on the relevant Preferred Securities Substitution. LBHI will not be obliged to pay and each recipient must pay all, if any, taxes arising by reference to any disposal or deemed disposal of a Preferred Security in connection with such Preferred Securities Substitution.*

5.2    The General Partner will use all reasonable endeavours to procure that certificates (if any) for depositary shares representing Substituted Preferred Stock issued on a Preferred Securities Substitution will be despatched by mail free of charge (but uninsured and at the risk of the person entitled thereto) within one month after receipt of a duly completed Preferred Securities Substitution Confirmation.

**6.    Additional Amounts and Characterisation**

6.1    All payments in respect of the Preferred Securities by the Issuer will be made without withholding or deduction for, or on account of, any Tax, unless the withholding or deduction of such Tax is required by law. In that event, each Holder will be entitled to receive, as further distributions, such additional amounts (the **Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable in respect of the Preferred Securities in the absence of such withholding or deduction; except that no such Additional Amounts will be payable to a Holder (or to a third party on his behalf) with respect to any Preferred Security:

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United Kingdom or the United States, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where the Holder is related to LBHI within the meaning of either section 871(h) or section 881(c) of the Code; or

(c)    where the Holder is a bank whose receipt of income from the Preferred Securities is (in whole or in part) pursuant to an extension of credit by the bank to LBHI in the ordinary course of its banking business within the meaning of section 881(c) of the Code; or

(d)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive; or

(e)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required,

and except that the Issuer's obligation to make any such payments is subject to the limitations provided in paragraphs 2 and 3.

6.2    By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and for US federal income tax purposes to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person. In addition, by purchasing the Preferred Securities, each Holder agrees, and the Issuer, Preferential Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes.

**7.    Payments**

7.1    Distributions will be payable in accordance with the Act on the relevant Distribution Payment Date (or where any Distribution Payment Date is not a TARGET Business Day on the next TARGET Business Day (without interest in respect of such delay)) to the Holders of record as they appear on the Register on the relevant record date, which will be five TARGET Business Days prior to the relevant Distribution Payment Date.

If the General Partner gives a notice of redemption pursuant to paragraph 4.2, 4.3 or 4.5 or in respect of the Preferred Securities, then on the relevant Redemption Date the General Partner shall procure that the Optional Redemption Price will be paid by the Registrar or by the Paying and Transfer Agents on behalf of the Issuer to the Holders. To the extent that a Further Distribution falls to be paid on redemption of the Preferred Securities it shall be paid together with the Optional Redemption Price. Upon such payment, all rights of Holders to participate in the assets of the Issuer or to be returned any amount in respect of the Preferred Securities (including the Preferred Capital Contribution (or any part

thereof) made by or on behalf of the Holders) will be extinguished and the Holders shall thereupon cease to be limited partners of the Issuer provided their holding of Preferred Securities is redeemed in accordance with the foregoing, and the Preferred Capital Contribution will, on payment of the Optional Redemption Price, be deemed repaid.

7.2 Subject to all applicable fiscal or other laws and regulations:

(a) each payment in respect of Distributions will be made by cheque and mailed to the Holder of record at such Holder's address as it appears on the Register on the relevant record date for the Preferred Securities; and

(b) any payment in respect of the Optional Redemption Price or the Liquidation Distribution in respect of any Preferred Security will be made by cheque against presentation and surrender of the relevant certificate of entitlement at the office of the Registrar or a Paying and Transfer Agent,

provided, however, that a Holder may receive such payment by direct transfer if appropriate direct transfer instructions have been received by the Registrar in sufficient time prior to the relevant date of payment. Holders will not be entitled to any interest or other payment for any delay after the due date in receiving the amount due if the due date is not a TARGET Business Day, if the Holder is late in surrendering certificates (if required to do so) or if a cheque mailed in accordance with this paragraph arrives after the due date for payment.

In the event that payment of the Optional Redemption Price in respect of any Preferred Security is improperly withheld or refused and not paid by the Issuer, Distributions on such Preferred Security, subject as described in paragraphs 2.3 and 2.4, will continue to accrue, from the relevant Redemption Date to the date of actual payment of such Optional Redemption Price.

7.3 The General Partner will, and LBHI has undertaken in the Subordinated Guarantee that it will procure that the General Partner will, maintain at all times whilst the Preferred Securities are outstanding (a) whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission, (b) a Registrar having its office outside the United Kingdom and (c) a Paying and Transfer Agent having a specified office in a European Union Member State other than the United Kingdom that will not be obliged to withhold or deduct tax pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive.

## 8. Meetings

8.1 Except as described below and provided for in the Act, Holders will not be entitled to receive notice of, or attend or vote at, any meeting of partners in the Issuer or participate in the management of the Issuer.

8.2 The consent in writing of the Holders of at least a simple majority in Liquidation Preference of the outstanding Preferred Securities or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities, shall be required in order to give effect to any variation or abrogation of the rights, preferences and privileges of the Preferred Securities by way of amendment of the Limited Partnership Agreement or otherwise (unless otherwise provided in the terms of the Preferred Securities or as required by applicable law).

8.3 No such sanction shall be required if, as determined by the General Partner, the change is solely of a formal, minor or technical nature or is to correct an error or cure an ambiguity or which does not adversely affect the rights of Holders (provided that the change does not reduce the amounts payable to Holders, impose any obligation on the Holders or any modification of the terms of the Preferred Securities) in which case the General Partner shall be authorised to approve and implement such change.

8.4  Notwithstanding the foregoing, the General Partner may, without the consent or sanction of the Holders, take such action as is required in order to amend the Limited Partnership Agreement:

(a)  to allow an increase in the level of the Preferred Capital Contributions and the corresponding number of Preferred Securities; or

(b)  to authorise, create and issue one or more other series of securities or partnership interests in the Issuer ranking junior, as regards participation in the profits and assets of the Issuer, to the Preferred Securities and to admit, if relevant, new holders in respect thereof.

Thereafter the Issuer may, provided that the circumstances for non-payment of Distributions in paragraph 2.4 are not subsisting, without the consent of the Holders issue any such further securities either having the same terms and conditions as the Preferred Securities in all respects (or in all respects except for the first payment of Distributions on them) and so that such further issue shall be consolidated and form a single series with the Preferred Securities or upon such other terms as aforesaid. References herein to the Preferred Securities include (unless the context requires otherwise) any other securities issued pursuant to this paragraph and forming a single series with the Preferred Securities.

8.5  Notwithstanding the foregoing, no vote of the Holders will be required for the redemption, cancellation or substitution of the Preferred Securities or withdrawal of a Holder in accordance with the Limited Partnership Agreement.

8.6  The General Partner will cause a notice of any meeting at which Holders are entitled to vote and any voting forms to be mailed to each Holder. Each such notice will include a statement setting forth (a) the date, time and place of such meeting, (b) a description of any resolution to be proposed for adoption at such meeting on which such Holders are entitled to vote and (c) instructions for the delivery of proxies.

## 9.    Covenant of the General Partner

The General Partner undertakes not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listing of the Preferred Securities and any other partnership interests in the Issuer (where applicable), the Register, the Registrar, the Paying and Transfer Agents and a listing agent in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the Issuer, the Issuer's holding of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of a custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

## 10.   Notices

All notices to the Holders will be mailed to the Holder of record and in addition, if and for so long as the Preferred Securities are admitted to trading on the regulated market of a Stock Exchange, notices will be given in accordance with regulations relating to such admission. Any mailed notice shall be deemed to have been given one clear day after the date on which it was posted and any notice published in a newspaper shall be deemed to have been given on the date of publication or, if so published more than once or on different dates, on the date of the first publication.

## 11.   Transfers and Form

The Preferred Securities will be in registered form each with a Liquidation Preference of €1,000.

If definitive certificates are made available in respect of Preferred Securities they will be available from the Registrar and from each of the Paying and Transfer Agents, and will be posted to the relevant Holders at the address shown in the Register or, as applicable, in the relevant instrument of transfer within three Business

Days in London of issue, by uninsured post at the risk of such Holders. Transfers of Preferred Securities if represented by definitive certificates may be effected by presentation of the relevant certificate (with the transfer certificate attached thereto duly completed on behalf of the transferor and transferee) at the specified office of the Registrar or any Paying and Transfer Agent. Where a Holder transfers some only of the Preferred Securities represented by any such certificate he shall be entitled to a certificate for the balance without charge at the specified office of the Registrar or any Paying and Transfer Agent. All transfers of Preferred Securities by Holders must be effected in accordance with the Act and subject to the provisions of the Limited Partnership Agreement.

## 12.    Replacement of Certificates

If a certificate is damaged or defaced or alleged to have been lost, stolen or destroyed, a new certificate representing the same Preferred Securities may be issued on payment of such fee and on such terms (if any) as to evidence and indemnity and the payment of out-of-pocket expenses as the General Partner may think fit and on payment of the costs of the General Partner incidental to its investigation of the evidence and, if damaged or defaced, on delivery up of the old certificate at the office of the Registrar or any Paying and Transfer Agent.

## 13.    Prescription

Claims against the Issuer for payment of Distributions and sums in respect of the Optional Redemption Price or Liquidation Distribution of the Preferred Securities will be prescribed in accordance with English law unless made within ten years from the date on which such payment becomes due or, if later, the date on which the Issuer makes such payment available to Holders.

## 14.    Governing Law and Jurisdiction

14.1    The Limited Partnership Agreement and the Preferred Securities shall be governed by, and construed in accordance with, English law.

14.2    The Guarantor agrees for the benefit of the Holders that the courts of England shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with the Preferred Securities (respectively **Proceedings** and **Disputes**) and, for such purposes, irrevocably submits to the jurisdiction of such courts.

14.3    The Guarantor irrevocably waives any objection which it might now or hereafter have to the courts of England being nominated as the forum to hear and determine any Proceedings and to settle any Disputes, and agrees not to claim that any such court is not a convenient or appropriate forum.

14.4    LBHI agrees that the documents which start any Proceedings and any other documents required to be served in relation to those Proceedings may be served on it by being delivered to it at 25 Bank Street, London, E14 5LE, England or at any other address in Great Britain at which service of process may be served on it in accordance with Part XXIII of the Companies Act 1985. This paragraph 14 applies to Proceedings in England and to Proceedings elsewhere. If the appointment of the person mentioned in this paragraph 14.4 ceases to be effective, LBHI shall forthwith appoint a person in England to accept service of process on its behalf in England and notify the name and address of such person to the Principal Paying and Transfer Agent and, failing such appointment within fifteen days, any Holder shall be entitled to appoint such a person by written notice addressed to LBHI and delivered to the LBHI or to the specified office of the Principal Paying and Transfer Agent. Nothing in this paragraph shall affect the right of any Holder to serve process in any other manner permitted by law.

14.5    The submission to the jurisdiction of the courts of England shall not (and shall not be construed so as to) limit the right of any Holder to take Proceedings in any other court of competent jurisdiction, nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not) if and to the extent permitted by law.

## SUMMARY OF PROVISIONS RELATING TO THE PREFERRED SECURITIES IN GLOBAL FORM

**Initial Issue of Preferred Securities**

The Preferred Securities will be issued in registered form and will be initially represented by interests in a Global Certificate which will be deposited with The Bank of New York (the **Common Depositary**) as common depositary for Euroclear and Clearstream, Luxembourg. The Preferred Securities will be registered in the name of the Initial Limited Partner, as nominee for the Common Depositary. For so long as the Preferred Securities are deposited and registered as described above, book-entry interests in the Preferred Securities will be shown on, and transfers of such interests will be effected only through, records maintained by Euroclear and Clearstream, Luxembourg.

**Exchange**

If either or both of Euroclear and Clearstream, Luxembourg is or are closed for business for a continuous period of 14 days (other than for the purposes of a public holiday) or announces an intention permanently to cease business, then a number of Preferred Securities corresponding to its book-entry interest in the Preferred Securities represented by the Global Certificate held by the Common Depositary referred to above will, subject to such reasonable requirements as the General Partner may require, be transferred to each holder of an interest in the Preferred Securities whose name is notified by the Common Depositary to the Registrar. Each such holder will be registered as a Holder in the Register and registered with the Registrar at Companies House in Cardiff on the Limited Partnerships Register in accordance with the Act and will receive a certificate made out in its name. Other than in the circumstances referred to in this paragraph, definitive certificates will not be available to Holders.

**Accountholders**

So long as the Preferred Securities are registered in the name of a nominee for a common depositary for Euroclear and Clearstream, Luxembourg, the nominee for Euroclear and Clearstream, Luxembourg will be the sole registered owner or holder of the Preferred Securities represented by the Global Certificate for all purposes under the Limited Partnership Agreement. Except as set forth under "*Description of Preferred Securities – Transfers and Form*" and under "*Transfers of Interests*" below, the persons shown in the records of Euroclear, Clearstream, Luxembourg or any other clearing system as the holders of the Preferred Securities evidenced by the Global Certificate (each an **Accountholder**) will not be entitled to have Preferred Securities registered in their names, will not receive or be entitled to receive physical delivery of definitive certificates evidencing interests in the Preferred Securities and will not be considered registered owners or holders thereof under the Limited Partnership Agreement. Accordingly, each Accountholder must rely on the rules and procedures of Euroclear and Clearstream, Luxembourg, as the case may be, to exercise any rights and obligations of an investor in Preferred Securities.

**Payment**

Each Accountholder must look solely to Euroclear or Clearstream, Luxembourg, as the case may be, for its share of each payment made by the Issuer to the registered holder of the Preferred Securities and in relation to all other rights arising under the Global Certificate, subject to and in accordance with the respective rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be. Such persons shall have no claim directly against the Issuer in respect of payments due on the Preferred Securities for so long as the Preferred Securities are represented by the Global Certificate and such obligations of the Issuer will be discharged by payment to the registered holder of the Preferred Securities in respect of each amount so paid.

**Transfers of Interests**

Accountholders will only be able to transfer their beneficial interests in the Preferred Securities in accordance with the restrictions described under "*Description of Preferred Securities – Transfers and Form*" and the rules and procedures of Euroclear or Clearstream, Luxembourg, as the case may be.

## SUBORDINATED GUARANTEE

*The following is the Subordinated Guarantee substantially in the form to be executed by LBHI.*

THIS GUARANTEE AGREEMENT (the **Subordinated Guarantee**), dated [*Closing Date will be inserted here*], is executed and delivered by Lehman Brothers Holdings Inc. (**LBHI**) for the benefit of the Holders (as defined below).

WHEREAS LBHI desires to issue this Subordinated Guarantee for the benefit of the Holders, as provided herein by reason of its interest in the financing and to induce the Holders to provide necessary funds.

NOW, THEREFORE in consideration of the premises, the receipt whereof is hereby acknowledged, LBHI executes and delivers this Subordinated Guarantee for the benefit of the Holders.

### 1.    Definitions

As used in this Subordinated Guarantee, capitalised terms not defined herein shall have the meanings ascribed to them in the Limited Partnership Agreement and otherwise the following terms shall, unless the context otherwise requires, have the following meanings:

**Guaranteed Payments** means (without duplication) collectively payments by LBHI in respect of an amount equal to (i) all Distributions due on the Preferred Securities, (ii) the Optional Redemption Price and (iii) any Additional Amounts;

**Holder** means, in respect of each Preferred Security, each person registered on the Register as the limited partner holding such Preferred Security at the relevant time, save that for as long as the Preferred Securities are registered in the name of a common depositary (or of a nominee for a common depositary) for Euroclear and Clearstream, Luxembourg, each person (other than Euroclear and Clearstream, Luxembourg) who is for the time being shown in the records of Euroclear and Clearstream, Luxembourg as the holder of an interest in any Preferred Securities (in which regard any certificate or other document issued by Euroclear or Clearstream, Luxembourg as to the number of Preferred Securities standing to the account of any person shall be conclusive and binding for all purposes) shall be treated by the Issuer, LBHI and any Paying and Transfer Agent as the holder of Preferred Securities in a nominal amount equal to such interest for all purposes other than with respect to payments, the right to which shall be vested in the name of the person appearing as the relative limited partner in the Register;

**Junior Share Capital** means LBHI's common stock, together with any other securities or obligations of LBHI expressed to rank junior to this Subordinated Guarantee and the Parity Securities;

**Limited Partnership Agreement** means the Limited Partnership Agreement dated 3 January 2007 establishing the Issuer, as amended from time to time;

**Optional Redemption Price** means, in respect of each Preferred Security, the Liquidation Preference plus (a) any due and accrued but unpaid Distributions calculated from (and including) the immediately preceding Distribution Payment Date (or, if none, the Closing Date) to (but excluding) the date of payment and (b) any Additional Amounts payable, in each case in cash only;

**Parity Securities** means any non-cumulative preferred stock, non-cumulative preferred securities (other than the Preferred Securities) or other securities either (a) issued directly by LBHI and ranking *pari passu* with LBHI's obligations under this Subordinated Guarantee or (b) issued by the Issuer or any Subsidiary or other entity and entitled to the benefit of this Subordinated Guarantee or benefiting from any other guarantee or support agreement from LBHI ranking *pari passu* with this Subordinated Guarantee;

**Preferred Securities** means the outstanding Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities (**Euro ECAPS**<sup>SM</sup>) of the Issuer, originally issued on the Closing Date, together with any further such preferred securities issued after the date of this Subordinated Guarantee, the Holders of which are

entitled to the benefits of this Subordinated Guarantee as evidenced by the execution of this Subordinated Guarantee and **Preferred Security** shall be construed accordingly; and

**Tax** means any present or future taxes or duties of whatsoever nature imposed or levied by or on behalf of the United States or any subdivision of or by any authority therein or thereof having power to tax.

## 2.    Guarantee

2.1    Subject to the exceptions and limitations contained in the following provisions of this clause 2, LBHI irrevocably agrees to pay in full to the Holders the Guaranteed Payments, as and when due, to the extent that such payments shall not have been paid when due and payable by the Issuer regardless of any defence, right of set-off or counterclaim which the Issuer may have or assert. This Guarantee is continuing, irrevocable and absolute. The rights and claims of the Holders against LBHI under this Guarantee are subordinated as described in paragraph 2.9.

2.2    All Guaranteed Payments made hereunder will be made without withholding or deduction for or on account of any Tax, unless the withholding or deduction of such taxes, duties, assessments or governmental charges is required by law. In that event, LBHI will pay such additional amounts (**LBHI Additional Amounts**) as may be necessary in order that the net amounts received by the Holders after such withholding or deduction shall equal the amounts which would have been receivable under this Subordinated Guarantee in the absence of such withholding or deduction; except that no such LBHI Additional Amounts will be payable to a Holder (or a third party on his behalf):

(a)    to the extent that such Tax is imposed or levied by virtue of such Holder (or the beneficial owner) of such Preferred Security having some connection with the United States or the United Kingdom, other than merely being a Holder (or beneficial owner) of such Preferred Security; or

(b)    where such withholding or deduction is imposed on a payment to or on behalf of an individual and is required to be made pursuant to European Union Directive 2003/48/EC on the taxation of savings or any law implementing or complying with, or introduced in order to conform to, such Directive;

(c)    where the Holder would have been able to avoid such withholding or deduction by presenting the Preferred Securities to another Paying and Transfer Agent, insofar as presentation for payment is required; or

(d)    where the Holder would not have been entitled to Additional Amounts.

2.3    LBHI hereby waives notice of acceptance of this Subordinated Guarantee and of any liability to which it applies or may apply, presentment, demand for payment, protest, notice of non-payment, notice of dishonour, notice of redemption and all other notices and demands.

2.4    The obligations, covenants, agreements and duties of LBHI under this Subordinated Guarantee shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

(a)    the release or waiver, by operation of law or otherwise, of the performance or observance by the Issuer of any express or implied agreement, covenant, term or condition relating to the Preferred Securities to be performed or observed by or on behalf of the Issuer;

(b)    the extension of time for the payment by or on behalf of the Issuer of all or any portion of any Distribution, the Optional Redemption Price, the Liquidation Distribution or any other sums payable under the terms of the Preferred Securities or the extension of time for the performance of any other obligation under, arising out of, or in connection with, the Preferred Securities;

(c)    any failure, omission, delay or lack of diligence on the part of Holders to enforce, assert or exercise any right, privilege, power or remedy conferred on the Holders pursuant to the terms

of the Preferred Securities, or any action on the part of the Issuer granting indulgence or extension of any kind;

(d)    the voluntary or involuntary winding-up, dissolution, amalgamation, reconstruction, sale of any collateral, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganisation, arrangement, composition or readjustment of debt of, or other similar proceedings affecting, the Issuer or any of the assets of the Issuer;

(e)    any invalidity of, or defect or deficiency in, the Preferred Securities; or

(f)    the settlement or compromise of any obligation guaranteed hereby or hereby incurred.

There shall be no obligation on the Holders to give notice to, or obtain consent of, LBHI with respect to the occurrence of any of the foregoing.

2.5    This Subordinated Guarantee shall be deposited with and held by the Registrar until all the obligations of LBHI have been discharged in full. LBHI hereby acknowledges the right of every Holder to the production of, and the right of every Holder to obtain a copy of, this Subordinated Guarantee from the Registrar.

2.6    A Holder may enforce this Subordinated Guarantee directly against LBHI, and LBHI waives any right or remedy to require that any action be brought against the Issuer or any other person or entity before proceeding against LBHI. All waivers contained in this Subordinated Guarantee shall be without prejudice to the right to proceed against the Issuer and the General Partner as permitted by the terms of the Preferred Securities. LBHI agrees that this Subordinated Guarantee shall not be discharged except by complete performance of all obligations of LBHI under this Subordinated Guarantee.

2.7    LBHI shall be subrogated to any and all rights of the Holders against the assets of the Issuer in respect of any amounts paid to the Holders by LBHI under this Subordinated Guarantee. LBHI shall not (except to the extent required by mandatory provisions of law) exercise any rights which it may acquire by way of subrogation or any indemnity, reimbursement or other agreement, in all cases as a result of a payment under this Subordinated Guarantee, if, at the time of any such payment, any amounts are due and unpaid under this Subordinated Guarantee. If LBHI shall receive or be paid any amount with respect to the Preferred Securities in violation of the preceding sentence, LBHI agrees to pay over such amount to the Holders.

2.8    LBHI acknowledges that its obligations hereunder are several and independent of the obligations of the Issuer with respect to the Preferred Securities and that LBHI shall be liable as principal and sole obligor hereunder to make Guaranteed Payments pursuant to the terms of this Subordinated Guarantee, notwithstanding the occurrence of any event referred to in clause 2.4.

2.9    Subject to applicable law, LBHI agrees that its obligations hereunder constitute unsecured obligations of LBHI subordinated in right of payment to Senior Creditors and will at all times rank:

(a)    junior to all subordinated liabilities of LBHI (in each case other than any liability of LBHI which is referred to in (b) or (c) below and any other liability expressed to rank *pari passu* with or junior to this Subordinated Guarantee) (the **Senior Creditors**);

(b)    *pari passu* with Parity Securities, if any, issued by LBHI and any guarantee or support agreement of LBHI ranking *pari passu* with this Subordinated Guarantee and issued in respect of Parity Securities issued by the Issuer or any Subsidiary; and

(c)    senior to the Junior Share Capital of LBHI.

2.10    No Holder shall following any breach by LBHI of any of its obligations under this Subordinated Guarantee be entitled to exercise any right of set-off or counterclaim which may be available to it against amounts owing by LBHI to such Holder. Notwithstanding the provisions of the foregoing sentence, if any of the said rights and claims of any Holder against LBHI is discharged by set-off, such Holder will immediately pay an amount equal to the amount of such discharge to LBHI or, in the event

of its winding-up, the liquidator of LBHI and until such time as payment is made will hold a sum equal to such amount in trust for LBHI, or the liquidator of LBHI, and accordingly any such discharge will be deemed not to have taken place.

2.11    In the event of the winding-up of LBHI if any payment or distribution of assets of LBHI of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of LBHI being subordinated to the payment of amounts owing under this Subordinated Guarantee, shall be received by any Holders, before the claims of Senior Creditors have been paid in full, such payment or distribution shall be held in trust by the Holder, as applicable, and shall be immediately returned by it to the liquidator of LBHI and in that event the receipt by the liquidator shall be a good discharge to the relevant Holder. Thereupon, such payment or distribution will be deemed not to have been made or received.

## 3.    Undertakings of LBHI

3.1    LBHI will procure that it will maintain, at all times whilst the Preferred Securities are outstanding and whilst the Preferred Securities are admitted to trading on the regulated market of any Stock Exchange, a Paying and Transfer Agent in such location as is required to maintain such admission to trading.

3.2    Subject as provided in the next sentence, LBHI undertakes that, in the event that any Distribution is not paid in full, it will not:

(a)    declare or pay any dividend on its shares of common stock; or

(b)    repurchase or redeem any of its non-cumulative preferred stock or common stock at its option,

until the earlier of (i) such time as Distributions on the Preferred Securities have been paid in full for one year or (ii) such time as an amount out of the proceeds of an issue and sale of preferred stock or common stock of LBHI equal to Distributions not paid on such Distribution Payment Date is paid to the Holders.

The above restriction shall not apply to:

(i)    dividends or distributions in the form of LBHI's common stock;

(ii)    any declaration of a dividend in connection with the implementation of a shareholders' rights plan, or the issuance of stock under any such plan in the future, or the redemption or repurchase of any such rights pursuant thereto; and

(iii)    purchases of common stock related to the issuance of common stock or rights under any of LBHI's benefit plans.

3.3    LBHI undertakes that, as long as any of the Preferred Securities is outstanding:

(a)    unless LBHI is being wound-up, LBHI will not take any action that would or might cause the liquidation, dissolution or winding-up of the General Partner or the Issuer otherwise than with the prior written approval of any relevant Supervisory Authority (if required at such time); and

(b)    the General Partner will at all times be a directly or indirectly wholly-owned Subsidiary of LBHI unless (i) otherwise approved by the Holders in accordance with the procedure set out in the Limited Partnership Agreement or (ii) after a substitution of the Preferred Securities for depositary shares representing Substituted Preferred Stock has occurred.

## 4.    Termination

With respect to the Preferred Securities, this Subordinated Guarantee shall terminate and be of no further force and effect upon the earliest of:

(a)    full payment of the Optional Redemption Price;

(b)     purchase and cancellation of all Preferred Securities;

(c)     dissolution of the Issuer; or

(d)     if the Issuer pays to the Holders all amounts which could be claimed by them under the Subordinated Guarantee,

provided however that this Subordinated Guarantee will continue to be effective or will be reinstated, as the case may be, if at any time payment of any sums paid in respect of the Preferred Securities or under this Subordinated Guarantee must be restored to a Holder for any reason whatsoever.

**5.     Transfer; Amendment; Notices**

5.1     Subject to operation of law, all guarantees and agreements contained in this Subordinated Guarantee shall bind the successors, assigns, receivers, trustees and representatives of LBHI and shall inure to the benefit of the Holders. LBHI shall not transfer its obligations hereunder without (a) the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or (b) the sanction of a resolution, passed by Holders representing at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities and otherwise convened and held in accordance with procedures contained in Schedule 2 to the Limited Partnership Agreement and applicable law.

5.2     Except for those changes (a) required by clause 3.1 hereof; or (b) which do not adversely affect the rights of Holders (in any of which cases no agreement will be required), this Subordinated Guarantee shall be changed only by agreement in writing signed or sealed by LBHI with the prior approval of the Holders of not less than a simple majority in Liquidation Preference of the outstanding Preferred Securities (excluding any Preferred Securities held by LBHI or any Subsidiary of LBHI), or the sanction of a resolution, passed by Holders of at least a simple majority in Liquidation Preference of the Preferred Securities present or represented at a separate meeting at which the quorum shall be Holders present or represented holding at least one-third in Liquidation Preference of the outstanding Preferred Securities.

5.3     Any notice, request or other communication required or permitted to be given hereunder to LBHI shall be given in writing by delivering the same against receipt therefor or be addressed to LBHI, as follows, to its mailing address at:

Lehman Brothers Holdings Inc.
1301 Avenue of the Americas
New York, New York 10019

Attention:   Corporate Counsel
Facsimile:   (212) 526 – 0339

The address of LBHI may be changed at any time and from time to time and shall be the most recent such address furnished in writing by LBHI to the Registrar.

All such notices shall be deemed to have been given when received in person, telecopied with receipt confirmed, or mailed by first class mail, postage prepaid except that if a notice or other document is refused delivery or cannot be delivered because of a changed address of which no notice was given, such notice or other document shall be deemed to have been delivered on the date of such refusal or inability to deliver.

Any notice, request or other communication required or permitted to be given hereunder to the Holders shall be given by LBHI in the same manner as notices sent on behalf of the Issuer to Holders.

5.4     This Subordinated Guarantee is solely for the benefit of the Holders and is not separately transferable from their interests in respect of the Preferred Securities.

**6.      Governing Law**

THIS SUBORDINATED GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

This Subordinated Guarantee is executed as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**
as guarantor


By: _____
     Name:
     Title:

## USE OF PROCEEDS

The net proceeds of the issue of the Preferred Securities which will be set out in the Final Terms will augment the capital base of LBHI. The Issuer will use the net proceeds of the issue of the Preferred Securities to subscribe for the Partnership Assets.

## LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

**Introduction**

The Issuer was registered in England and Wales on 3 January 2007 under the Limited Partnerships Act 1907, with LB GP No. 1 Ltd. as the general partner (in such capacity, the **General Partner**) and LB Investment Holdings Ltd as the preferential limited partner (the **Preferential Limited Partner**). The General Partner, the Preferential Limited Partner and BNYD have, *inter alios*, entered into a limited partnership agreement on 3 January 2007 (the **Limited Partnership Agreement**) for the purpose of establishing the Issuer. Pursuant to the Limited Partnership Agreement, it is intended that BNYD, as the nominee company of the common depositary for Euroclear and Clearstream, Luxembourg will become a limited partner (i.e. the Initial Limited Partner) of the Issuer with effect from the Closing Date. The Issuer is not a legal entity separate from its partners and has no subsidiaries. The Limited Partnership Agreement does not create a trust relationship between any of the partners. The Issuer will be dissolved upon redemption of the Preferred Securities. The Issuer's registered office is 25 Bank Street, London E14 5LE. It has no telephone number.

The General Partner, incorporated with limited liability in England and Wales with registered number 5355491 is a wholly-owned subsidiary of LBHI and is the sole general partner of the Issuer. The General Partner's registered office is 25 Bank Street, London E14 5LE. As such, the General Partner solely manages the Issuer (subject to the appointment by the Issuer of the Administrator as described below). The Issuer is a wholly controlled subsidiary undertaking of the General Partner. The General Partner fulfils a similar function for Lehman Brothers UK Capital Funding I LP, Lehman Brothers UK Capital Funding II LP and Lehman Brothers UK Capital Funding III LP. The duties to and functions of the General Partner are contained in the Limited Partnership Agreement. None of such duties or functions give rise to any potential conflict of interest between duties owed to the Issuer and any other interests of the General Partner. LBHI will undertake in the Subordinated Guarantee to ensure that, unless otherwise approved by a simple majority of the Holders, the General Partner will at all times be either LBHI itself or a directly or indirectly wholly-owned subsidiary of LBHI.

The board of Directors of the General Partner comprises:

| Name | Function | Principal outside activities |
| --- | --- | --- |
| Paolo Tonucci | Director | Director of Lehman Brothers Holdings plc |
| Dave Rushton | Director | Director of Lehman Brothers Holdings plc |
| Antony Rush | Director | |

For the purposes of this document, the business address of each of the Directors of the General Partner is 25 Bank Street, London E14 5LE. There are no potential conflicts of interest between the duties of the Directors of the General Partner to the Issuer and their private interests and/or other duties.

The Preferential Limited Partner, incorporated with limited liability in England and Wales with registered number 4385277 is a wholly-owned Subsidiary of LBHI. The Preferential Limited Partner shall be entitled to receive all amounts received by the Issuer from its investment in the Subordinated Notes or Replacement Affiliate Investments (each as defined herein under **Description of the Preferred Securities**), as the case may be, in excess of those required to make payments in respect of the Preferred Securities.

Provided that they do not become involved with the administration of the limited partnership, and subject to compliance with the provisions of the Act, the liability of persons registered as limited partners of the Issuer pursuant to the Act for the debts or obligations of the limited partnership will be limited to the amount of partnership capital which they have contributed or agreed to contribute to the partnership, i.e. €1,000 per Preferred Security.

No financial statements of the Issuer have yet been prepared. The first financial statements of the Issuer are expected to be prepared for the period ending 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements. It is not intended that the Issuer will publish interim financial statements.

**Activity**

The business of the Issuer is generally to raise finance for the Group and is more particularly described in the Limited Partnership Agreement. The Issuer has carried out no operations since its registration other than in relation to the creation of the Preferred Securities. The capital contributions to be made by the partners will be used by the Issuer to subscribe for the Subordinated Notes and the Third Party Assets.

**Administration**

For UK regulatory purposes, the Issuer will be operated by the General Partner or, insofar as the General Partner is not so authorised, by an administrator (the **Administrator**) authorised by the Financial Services Authority under the Financial Services and Markets Act 2000 (the **FSMA**) to establish, operate and wind-up collective investment schemes. The registered office of the Issuer and the General Partner is 25 Bank Street, London E14 5LE. Neither the Initial Limited Partner nor any Holder may participate in the administration of the Issuer.

The General Partner has agreed to contribute capital from time to time to the extent required for the Issuer to meet any operating expenses which it may have. The General Partner has also agreed that it will at all times maintain sole ownership, whether directly or indirectly, of its general partner interest in the Issuer, subject to the terms of the Limited Partnership Agreement. The Limited Partnership Agreement provides that all of the Issuer's business and affairs will be conducted by the General Partner save for those operational matters required to be performed by an Administrator under the FSMA. The General Partner will have unlimited liability for the debts and obligations of the Issuer to the extent that these cannot be satisfied out of partnership assets.

If the Issuer is dissolved, the Limited Partnership Agreement provides that the General Partner will only be entitled to any assets of the Issuer remaining after (i) all debts and other liabilities of the Issuer have been satisfied in full and (ii) the full Liquidation Preference to which the Holders are entitled and all other amounts to which the holders of any other partnership interests are entitled have been paid to, or irrevocably set aside for, such holders.

**Capitalisation**

In addition to the initial capital contribution by the General Partner of €1, the initial capital contribution of €12,500,000 of the Preferential Limited Partner (such initial capital contribution to be supplemented on the Closing Date by such other amount as is necessary in order that the initial capital contribution of the Preferential Limited Partner amounts to 5 per cent. of the aggregate nominal amount of the Preferred Securities) and the preferred capital contribution equating to the aggregate nominal amount of the Preferred Securities to be made by the Initial Limited Partner in relation to the Preferred Securities on the date of issue of the Preferred Securities and such other capital contributions as may be made by the General Partner from time to time to meet certain operating expenses of the partnership, the General Partner may accept additional limited partners and additional capital contributions to the Issuer in accordance with the provisions of the Limited Partnership Agreement. Limited partnerships do not have share capital.

**Indebtedness**

Since the date of its registration, the Issuer has not had any loan capital outstanding, has not incurred any borrowings, has had no contingent liabilities, has not granted any guarantees and does not intend to have outstanding any such loan capital, incur any such borrowings, have any such contingent liabilities or grant any such guarantees other than in connection with the issue of the Preferred Securities and other partnership interests in the Issuer. The General Partner has undertaken in the Limited Partnership Agreement not to incur any indebtedness in the name of the Issuer other than the costs and expenses incidental to creating the Preferred Securities and the Issuer and any other partnership interests in the Issuer, performing its obligations in respect of the Limited Partnership Agreement, maintaining the listings of the Preferred Securities, the Register, the Registrar, the Paying and Transfer Agents and listing agents in respect of the Preferred Securities and corresponding agents (where applicable) with respect to any other partnership interests in the

Issuer, the Issuer's holding of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the maintenance of any custodian therefor, the exercise of the Issuer's rights in respect of the partnership assets and any other securities acquired with any other capital contributions to the Issuer or substitutions therefor and the administration of the Issuer.

# LEHMAN BROTHERS HOLDINGS INC.

**Information about LBHI**

Lehman Brothers Holdings Inc., a Delaware corporation, was incorporated on 29 December 1983, for an indefinite term, pursuant to the General Corporation Law of the State of Delaware, USA, with registration number 2024634. LBHI and its subsidiaries are collectively referred to as "Lehman Brothers". LBHI's executive offices are located at 745 Seventh Avenue, New York, New York 10019, USA, and its telephone number is + 1 212 526 7000. The common stock of LBHI is listed on the New York Stock Exchange under the symbol "LEH".

The stated legal purpose of LBHI is to engage in any lawful act or activity for which corporations may be organised under the General Corporation Law of the State of Delaware (as set out in article 3 of LBHI's Restated Certificate of Incorporation).

To the best of LBHI's knowledge, it is in material compliance with the applicable corporate governance regimes in the United States of America.

**Business Overview**

Lehman Brothers, an innovator in global finance, serves the financial needs of corporations, governments and municipalities, institutional clients and individuals worldwide. Lehman Brothers provides a full array of equities and fixed income sales, trading and research, investment banking services and investment management and advisory services. Its global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region. Lehman Brothers, through predecessor entities, was founded in 1850.

Through its subsidiaries, Lehman Brothers is a global market-maker in all major equity and fixed income products. To facilitate its market-making activities, Lehman Brothers is a member of all principal securities and commodities exchanges in the United States, as well as NASD, Inc., and it holds memberships or associate memberships on several principal international securities and commodities exchanges, including the London, Tokyo, Hong Kong, Frankfurt, Paris, Milan and Australian stock exchanges.

Lehman Brothers' principal business activities are investment banking, capital markets and investment management. Through its investment banking, trading, research, structuring and distribution capabilities in equity and fixed income products, Lehman Brothers continues to build on its client flow business model, which is based on its principal focus of facilitating client transactions in all major global capital markets products and services. Lehman Brothers generates client flow revenues from institutional, corporate, government and high-net-worth customers by (i) advising on and structuring transactions specifically suited to meet client needs; (ii) serving as a market maker and/or intermediary in the global marketplace, including having securities and other financial instrument products available to allow clients to adjust their portfolios and diversify risks across different market cycles; (iii) providing investment management and advisory services; and (iv) acting as an underwriter to clients. As part of its client flow activities, Lehman Brothers maintains inventory positions of varying amounts across a broad range of financial instruments. In addition, Lehman Brothers also takes proprietary trading and investment positions. The financial services industry is significantly influenced by worldwide economic conditions as well as other factors inherent in the global financial markets. As a result, revenues and earnings may vary from quarter to quarter and from year to year. Lehman Brothers believes its client flow orientation helps to mitigate overall revenue volatility.

Lehman Brothers operates in three business segments: Investment Banking, Capital Markets and Investment Management. Financial information concerning Lehman Brothers for the fiscal years ended 30 November 2005 and 2004, including the amount of net revenues contributed by each segment in such periods, is set forth in the Consolidated Financial Statements and Notes thereto which are incorporated by reference in this Base Prospectus.

Lehman Brothers is engaged primarily in providing financial services. Other businesses in which Lehman Brothers is engaged represent less than 10 per cent. of each of consolidated assets, revenues and pre-tax income.

## Organisational Structure

LBHI is the ultimate parent company of the Lehman Brothers group. Since LBHI is primarily a holding company, its cash flow and consequent ability to satisfy its obligations under the Subordinated Guarantee are dependent upon the earnings of its subsidiaries and dividends or other distributions of those earnings or loans or other payments by those subsidiaries to LBHI. LBHI's subsidiaries will have no obligation to pay any amount in respect of the Subordinated Guarantee or to make any funds available therefor. Several of LBHI's principal subsidiaries are subject to various capital adequacy requirements promulgated by the regulatory, banking and exchange authorities of the countries in which they operate and/or to capital targets established by various ratings agencies. The requirements referred to above, and certain covenants contained in various debt agreements, may restrict LBHI's ability to withdraw capital from its subsidiaries by dividends, loans or other payments. Additionally, the ability of LBHI to participate as an equity holder in any distribution of assets of any subsidiary is generally subordinated to the claims of creditors of the subsidiary.

As disclosed in the "*Information Incorporated by Reference*", Lehman Brothers is involved in a number of judicial, regulatory and arbitration proceedings concerning matters arising in connection with the conduct of its business, including actions brought against Lehman Brothers and others with respect to transactions in which Lehman Brothers acted as an underwriter or financial advisor, actions arising out of its activities as a broker or dealer in securities and actions brought on behalf of various classes of claimants against many securities firms and lending institutions, including Lehman Brothers. Although there can be no assurance as to the ultimate outcome, Lehman Brothers generally has denied, or believes it has a meritorious defense and will deny, liability in all significant cases pending against it, including the matters described in the "*Documents Incorporated by Reference*", and it intends to defend vigorously each such case. Based on information currently available, Lehman Brothers believes the amount, or range, of reasonably possible losses in connection with the actions against it, including the matters described in the "*Documents Incorporated by Reference*", in excess of established reserves, in the aggregate, not to be material to Lehman Brothers' consolidated financial condition or cash flows. However, losses may be material to Lehman Brothers' operating results for any particular future period, depending on the level of its income for such period.

## Management

## Board of Directors of LBHI

Set forth below are the names, the principal occupations and functions within LBHI and principal outside activities of the current members of the board of directors of LBHI, each of whose business address in their capacity as a director is at LBHI's principal place of business:

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer of LBHI | Serves on the Board of Directors of the Federal Reserve Bank of New York, Trustee of the Mount Sinai Medical Center and is on the Board of Directors of The Mount Sinai Children's Center Foundation, member of the Executive Committee of the Board of Directors of The Partnership for New York City, member of the Business Roundtable and The Business Council, serves on the Board of Trustees of Middlebury College. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|---|---|---|
| Michael L. Ainslie | Private Investor and Former President and Chief Executive Officer of Sotheby's Holdings. Serves as member of the Audit Committee of LBHI | Director of St. Joe Company and Lehman Brothers Bank, FSB, Trustee of Vanderbilt University, Chairman of the Posse Foundation, Inc. and Director of the US Tennis Association Foundation. |
| John F. Akers | Retired Chairman of International Business Machines Corporation. Serves as Chairman of the Compensation and Benefits Committee and as a member of the Finance Committee of LBHI | Director of W. R. Grace & Co., The New York Times Company and PepsiCo, Inc. |
| Roger S. Berlind | Theatrical Producer. Serves as a member of the Audit Committee and the Finance Committee of LBHI | Theatrical producer and principal of Berlind Productions and Governor of the League of American Theatres and Producers. |
| Thomas H. Cruikshank | Retired Chairman and Chief Executive Officer of Halliburton Company. Serves as Chairman of the Audit Committee and as a member of the Nominating and Corporate Governance Committee of LBHI | Director of Lehman Brothers Inc. |
| Marsha Johnson Evans | Rear Admiral, US Navy (Retired). Serves as Chairman of the Nominating and Corporate Governance Committee and as a member of the Finance Committee of LBHI | Director of Office Depot, Inc., Weight Watchers International Inc. and Huntsman Corporation, serves on the Advisory Board of the Pew Partnership for Civic Change, a project of the Pew Charitable Trusts, Director of the Naval Academy Foundation and a Presidential Appointee to the Board of Visitors of the United States Military Academy at West Point. |
| Sir Christopher Gent | Non-Executive Chairman of GlaxoSmithKline plc. Serves as a member of the Audit Committee and the Compensation and Benefits Committee of LBHI | Director of Ferrari SpA and a Senior Advisor to Bain & Company, Inc. |
| Roland A. Hernandez | Retired chairman and Chief Executive officer of Telemundo Group, Inc. Serves as a member of the Finance Committee of LBHI | Director of MGM Mirage, The Ryland Group, Inc., Vail Resorts, Inc. and Wal-Mart Stores, Inc. Serves on advisory boards for Harvard University's David Rockefeller Center for Latin American Studies and Harvard Law School, as well as the board of Yale University's President's Council on International Activities. Dean's advisory board member for the University of Southern California's Annenberg School for Communication. |

| Name | Principal Occupation and Function within LBHI | Principal Outside Activities |
|------|-----------------------------------------------|------------------------------|
| Henry Kaufman | President of Henry Kaufman & Company, Inc. Serves as Chairman of the Finance Committee of LBHI | Member (and the Chairman Emeritus) of the Board of Trustees of the Institute of International Education, a Member of the Board of Trustees of New York University, a Member (and the Chairman Emeritus) of the Board of Overseers of the Stern School of Business of New York University, a Member of the Board of Trustees of the Animal Medical Center, a Member of the International Advisory Committee of the Federal Reserve Bank of New York, a Member of the Advisory Committee to the Investment Committee of the International Monetary Fund Staff Retirement Plan, a Member of the Board of Governors of Tel-Aviv University and Treasurer (and former Trustee) of The Economic Club of New York. |
| John D. Macomber | Principal of JDM Investment Group. Serves as a member of the Compensation and Benefits Committee, the Executive Committee and the Nominating and Corporate Governance Committee of LBHI | Director of AEA Investors Inc., Mettler-Toledo International and Warren Pharmaceuticals, Inc. Chairman of the Council for Excellence in Government and Vice Chairman of the Atlantic Council, Director of the National Campaign to Prevent Teen Pregnancy and a Trustee of the Carnegie Institution of Washington and the Folger Library. |

Except as disclosed in the sections headed "Independence" and "Certain Transactions and Agreements with Directors and Executive Officers" in the Proxy Statement, there are no potential conflicts of interest between any duties of the directors to LBHI and their private interests or other duties.

**Executive Officers of LBHI**

| | |
|--|--|
| Richard S. Fuld, Jr. | Chairman and Chief Executive Officer |
| Scott Freidheim | Co-Chief Administrative Officer |
| Joseph M. Gregory | President and Chief Operating Officer |
| Ian Lowitt | Co-Chief Administrative Officer |
| Christopher M. O'Meara | Chief Financial Officer |
| Thomas A. Russo | Chief Legal Officer |

**Interim Financial Data**

On 14 December 2006, LBHI reported net income of US$1.0 billion, or US$1.72 per common share (diluted), for the fourth fiscal quarter ended 30 November 2006. This compares with net income of US$823 million, or US$1.38 per common share (diluted), in the fourth quarter of fiscal 2005. Revenues and net revenues for LBHI for the fourth fiscal quarter ended 30 November 2006, were US$13.160 billion and US$4.533 billion, respectively, compared with US$9.055 billion and US$3.690 billion for the fourth fiscal quarter ended 30 November 2005.

For the full year of fiscal 2006, LBHI reported net income of US$4.007 billion, or US$6.81 per common share (diluted), compared with US$3.260 billion, or US$5.43 per common share (diluted), for the fiscal year ended 30 November 2005. Revenues and net revenues for LBHI for the fiscal year ended 30 November 2006, were US$46.709 billion and US$17.583 billion, respectively, compared with US$32.420 billion and US$14.630 billion for the fiscal year ended 30 November 2005.

These results are preliminary and unaudited For more detailed information, see LBHI's Current Report on Form 8-K filed with the US Securities and Exchange Commission on 14 December 2006.

## CONSOLIDATED STOCKHOLDERS' EQUITY OF LBHI

All of the financial information below is extracted without material adjustment from the unaudited consolidated financial statements of LBHI included in LBHI's Quarterly Report on Form 10-Q for the quarter ended 31 August 2006 filed with the SEC. The following table sets forth the consolidated capitalisation of LBHI and its subsidiaries as of 30 November 2005 and 31 August 2006[1]:

|  | At 31 August 2006 | At 30 November 2005 |
|---|---|---|
|  | *(US$ millions)* | |
| **Stockholders' equity:** | | |
| Preferred Stock: ........................................... | 1,095 | 1,095 |
| Common Stock: $0.10 par value ............................. | | |
| Shares authorised: 1,200,000,000 in 2006 and 2005 ............... | | |
| Shares issued: 608,845,822 in 2006 and 605,337,946 in 2005[2] ........... | | |
| Shares outstanding: 530,296,514 in 2006 and 542,874,206 in 2005 ..... | 61 | 61 |
| Additional paid-in capital.......................................... | 8,941 | 6,283 |
| Accumulated other comprehensive income (loss), net of tax ............... | (17) | (16) |
| Retained earnings .................................................. | 14,938 | 12,198 |
| Common stock held in RSU trust ...................................... | (1,743) | (1,510) |
| Other stockholders' equity, net....................................... | - | 2,275 |
| Common stock in treasury, at cost: 78,549,308 shares in 2006 and | | |
| 62,463,740 shares in 2005 .......................................... | (4,879) | (3,592) |
| Total common stockholders' equity ..................................... | 17,301 | 15,699 |
| Total stockholders' equity.......................................... | 18,396 | 16,794 |

Notes:

1.    There has been no material change in the capitalisation of LBHI since 31 August 2006. For more information about LBHI's common stock and preferred stock, see the Notes to Consolidated Financial Statements included in LBHI's Annual Report on Form 10-K for the 12 months ended 30 November 2005

2.    All shares issued are fully paid and non-assessable.

## SUMMARY CONSOLIDATED FINANCIAL INFORMATION OF LBHI

The following table sets forth selected consolidated financial information on LBHI as of the dates and for the periods indicated. The selected consolidated financial information as of and for the 12 month periods ended 30 November, 2005 and 2004 are extracted without material adjustment from the audited consolidated financial statements of LBHI included or incorporated by reference in LBHI's Annual Report on Form 10-K for the 12 month period ended 30 November 2005 or 2004 filed with the SEC and the selected consolidated financial information as of and for the 9 month periods ended 31 August 2006 and 2005 are extracted without material adjustment from the unaudited consolidated financial statements of LBHI included or incorporated by reference in LBHI's quarterly report on Form 10-Q for the period ended 31 August 2006 or 2005 filed with the SEC.

**Statement of Income Data**

|  | Year ended 30 November 2005 | Year ended 30 November 2004 | Nine months ended 31 August 2006 | Nine months ended 31 August 2005 |
|---|---|---|---|---|
|  | *(In US$ millions)* | | | |
| **Revenues:** | | | | |
| Principal transactions | 7,811 | 5,699 | 7,183 | 5,924 |
| Investment banking | 2,894 | 2,188 | 2,302 | 2,077 |
| Commissions | 1,728 | 1,537 | 1,623 | 1,252 |
| Interest and dividends | 19,043 | 11,032 | 21,386 | 13,416 |
| Other | 944 | 794 | 1,055 | 696 |
| Total revenues | 32,420 | 21,250 | 33,549 | 23,365 |
| Interest expense | 17,790 | 9,674 | 20,499 | 12,425 |
| Net revenues | 14,630 | 11,576 | 13,050 | 10,940 |
| **Non-Interest Expenses**: | | | | |
| Compensation and benefits | 7,213 | 5,730 | 6,434 | 5,415 |
| Other expenses | 2,588 | 2,328 | 2,200 | 1,913 |
| **Total non-interest expenses** | 9,801 | 8,058 | 8,634 | 7,328 |
| Income before taxes, dividends on trust preferred securities and cumulative effect of accounting change | 4,829 | 3,518 | 4,416 | 3,612 |
| Provision for income taxes | 1,569 | 1,125 | 1,460 | 1,175 |
| Dividends on trust preferred securities | 0 | 24 | 0 | 0 |
| Net income | 3,260 | 2,369 | 3,003 | 2,437 |
| Net income applicable to common stock | 3,191 | 2,297 | 2,954 | 2,383 |
| **Earnings per common share (diluted):** | 5.43 | 3.95 | 5.09 | 4.05 |

**Balance Sheet Data**

|  | *At 30 November 2005* | *At 30 November 2004* | *At 31 August 2006* |
|---|---|---|---|
|  | *(in US$ millions)* | | |
| Total assets ....................................................................... | 410,063 | 357,168 | 473,737 |
| Net assets[1] ...................................................................... | 211,424 | 175,221 | 239,424 |
| Short-term borrowings and current portion of long-term borrowings ................................................................... | 11,351 | 9,978 | 18,238 |
| Long-term debt ................................................................. | 53,899 | 49,365 | 74,034 |
| Total liabilities ................................................................ | 393,269 | 342,248 | 455,341 |
| Total stockholders' equity ................................................ | 16,794 | 14,920 | 18,396 |
| Total long-term capital[2] .................................................. | 70,693 | 64,285 | 92,430 |

Notes:

1.    Net assets represent total assets excluding: (1) cash and securities segregated and on deposit for regulatory and other purposes, (2) securities received as collateral, (3) securities purchased under agreements to resell, (4) securities borrowed and (5) identifiable intangible assets and goodwill. LBHI believes net assets is a measure more useful to investors than total assets when comparing companies in the securities industry because it excludes certain assets considered to have a low-risk profile and identifiable intangible assets and goodwill. Net assets as presented are not necessarily comparable to similarly-titled measures provided by other companies in the securities industry because of different methods of calculation.

2.    Total long-term capital includes long-term borrowings (excluding any borrowings with remaining maturities of less than twelve months) and total stockholders' equity. LBHI believes total capital is useful to investors as a measure of its financial strength.

# TAXATION

## UNITED KINGDOM

*The following is a summary of certain UK taxation considerations relevant to persons who purchase, own and dispose of Preferred Securities. This summary addresses only the taxation consequences to holders that acquire Preferred Securities pursuant to the offering at the initial offering price and does not apply to certain classes of holders such as dealers, financial traders and certain persons who are exempt from UK taxation on their income.*

*This summary does not address the position of persons who are resident in the UK or have some connection with the UK beyond the holding of Preferred Securities.*

***This summary is for general information only based on law and practice at the date hereof in the UK and is not exhaustive. Prospective investors are advised to consult with their own taxation advisers as to the taxation consequences of the purchase, ownership and disposition of Preferred Securities, including the effect of tax laws in countries other than the UK.***

### Distributions on the Preferred Securities

On the basis that the Issuer is treated for the purposes of UK taxation as a partnership, payments of Distributions on Preferred Securities may be made without withholding for or on account of UK taxation.

### Stamp Duty and Stamp Duty Reserve Tax (SDRT)

No UK stamp duty will be chargeable in respect of the issue of the Preferred Securities to a Holder. Transfers of the Preferred Securities within a clearing system will not be chargeable to UK stamp duty.

The Issuer has been advised that no liability to SDRT should arise in respect of the issue or subsequent transfer of the Preferred Securities.

## CERTAIN UNITED STATES FEDERAL INCOME TAX CONSIDERATIONS

**To ensure compliance with the Internal Revenue Service Circular 230, you are hereby notified that any discussion of tax matters set forth in this Base Prospectus was written in connection with promotion or marketing of the transactions or matters addressed herein and was not intended or written to be used, and cannot be used by any prospective investor, for the purpose of avoiding tax-related penalties under federal, state or local tax law. Each prospective investor should seek advice based on its particular circumstances from an independent tax advisor.**

The following section describes certain US federal income tax consequences that may be relevant with respect to the acquisition, ownership and disposition of the Preferred Securities. This summary addresses only the US federal income tax considerations for non-US Holders (as defined below) that acquire the Preferred Securities on original issuance at their initial offering price and hold the Preferred Securities as capital assets for US federal income tax purposes. This section is based on the US Internal Revenue Code of 1986 (the **Code**), US Treasury regulations and judicial and administrative interpretations, in each case as in effect and available on the date of this Base Prospectus. All of the foregoing are subject to change, possibly with retroactive effect. Any such change could affect the tax consequences described below.

This section does not purport to be a comprehensive description of all the tax considerations that may be relevant to the Preferred Securities. In particular, this summary does not address tax considerations applicable to Holders that may be subject to special tax rules including, without limitation, the following: (a) financial institutions; (b) insurance companies; (c) dealers or traders in securities, currencies or notional principal contracts; (d) tax-exempt entities; (e) persons that will hold the Preferred Securities as part of a "hedging" or "conversion" transaction or as a position in a "straddle" or as part of a "synthetic security" or other integrated transaction for US federal income tax purposes; (f) persons that have a "functional currency" other than the US dollar; (g) regulated investment companies; (h) real estate investment trusts; (i) controlled

foreign corporations, as defined by section 957 of the Code; (j) persons who hold Preferred Securities through partnerships or other pass-through entities; and (k) persons who own, directly, indirectly or constructively, 10 per cent. or more (in voting power) of LBHI.

Further, this section does not address alternative minimum tax consequences or the indirect effects on the holders of equity interests in a Holder. This section also does not address the US federal estate and gift tax or any non-US tax consequences to Holders of the Preferred Securities.

**Each prospective investor should consult its own tax advisor with respect to the US federal, state, local and foreign tax consequences of acquiring, owning or disposing of the Preferred Securities.**

For the purposes of this section, a "Non-US Holder" is a beneficial owner of Preferred Securities that is not a US Holder. A "US Holder" is a person that is, for US federal income tax purposes: (a) a citizen or resident of the United States, (b) a corporation, or other entity that is treated as a corporation for US federal income tax purposes, created or organised in or under the laws of the United States or any state of the United States (including the District of Columbia), (c) an estate, the income of which is subject to US federal income taxation regardless of its source, or (d) a trust, if it (1) is subject to the primary supervision of a court within the United States and one or more US persons have the authority to control all of the substantial decisions of such trust or (2) has a valid election in effect under the applicable US Treasury regulations to be treated as a United States person.

No statutory, administrative or judicial authority addresses the treatment of the Preferred Securities or Subordinated Notes or instruments similar to the Preferred Securities or Subordinated Notes for US federal income tax purposes and no rulings have been sought or are expected to be sought from the Internal Revenue Service (the **IRS**) with respect to any of the US federal income tax consequences regarding this particular offering. As a result, the Issuer and LBHI cannot assure you that the IRS will agree with the tax characterisations and the tax consequences below.

**If you are considering purchasing the Preferred Securities, you should consult your own tax advisors concerning the US federal tax consequences in light of your particular situation and any consequences arising under the laws of any other taxing jurisdiction.**

The transactions described in this Base Prospectus are complex and characterisations other than those described are possible. See "–Possible Re-characterisation". Any differing treatment arising from a re-characterisation could affect the amount, timing and character of income, gain or loss in respect of an investment in the Preferred Securities.

### Classification of the Issuer

Allen & Overy LLP (**Tax Counsel**) is of the opinion that, under current law and assuming full compliance with the terms of the Limited Partnership Agreement, and based on certain representations, the Issuer will not be treated as an association or a publicly traded partnership taxable as a corporation for US federal income tax purposes. By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Issuer as a partnership for US federal income tax purposes and to treat the Preferred Securities as equity interests in such partnership and not as a direct interest in LBHI or in any other person. If, however, the Issuer were re-characterised, income paid on the Subordinated Notes, any Replacement Affiliate Investments or the Preferred Securities could become subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided). Unless indicated otherwise, the remainder of this discussion assumes that the Issuer will be classified as a partnership under US federal income tax principles.

### Classification of the Subordinated Notes

By purchasing the Preferred Securities, each Holder agrees, and the Issuer, Priority Limited Partner, General Partner and LBHI agree, to treat the Subordinated Notes as indebtedness for all US federal income tax purposes. Tax Counsel has advised that, in its opinion, under current law and assuming full compliance with the terms of the Subordinated Notes, and based on certain representations, while the matter is not free from

doubt and there is no authority directly on point, the Subordinated Notes will be characterised as indebtedness. However, such position is not binding on the IRS or the courts. Therefore, while Tax Counsel believes that its conclusions would be sustained if challenged, there can be no assurance that this will be the case. Unless indicated otherwise, the remainder of this discussion assumes that the Subordinated Notes will be classified as indebtedness of LBHI under US federal income tax principles.

**Possible Re-characterisation**

The IRS has issued regulations pursuant to section 701 of the Code under which the IRS may (i) disregard or recast the form of a transaction if a partnership is used with a principal purpose of substantially reducing the partner's tax liability in a manner inconsistent with the intent of the partnership provisions of the Code or (ii) treat a partnership as the aggregate of its partners other than an entity. Moreover, section 7701(*l*) of the Code grants the IRS broad authority to promulgate regulations to prevent tax avoidance through the use of conduit arrangements by re-characterising any multi-party financing transaction as a transaction directly among two or more such parties. Each of the Issuer, General Partner and LBHI believe that these provisions should not apply. However, there can be no assurance that the IRS will not reach a different conclusion or that any such re-characterisation would not be adverse to Holders in light of their particular circumstances.

**Non-US Holders**

The General Partner, on behalf of the Issuer, intends to conduct its affairs in such a manner that its income is not effectively connected with a US trade or business and, accordingly, the General Partner, on behalf of the Issuer, does not intend to withhold tax applicable to effectively connected income for non-US Holders. However, should such withholding be required, the Issuer may withhold the amounts from other distributions payable to the applicable non-US Holder.

As a partnership, the Issuer will not be a taxable entity for US federal income tax purposes. Instead, Holders will be allocated, for US federal income tax purposes, a distributive share of the Issuer's income from the Subordinated Notes (or Replacement Affiliated Investments) and the Third Party Assets and other items of income, gain, loss, and deduction of the Issuer (if any). A non-US Holder's distributive share of such items generally determines the US tax treatment of such Holder even if current distributions are not made on the Preferred Securities.

Because of the "portfolio interest" exception, the General Partner, on behalf of the Issuer, intends not to withhold on distributions in respect of interest payable on the Subordinated Notes (or Replacement Affiliated Investments) to a non-US Holder provided the non-US Holder is not actually or constructively a "10 per cent. shareholder" of LBHI, a "controlled foreign corporation" with respect to which LBHI is related within the meaning of the Code, or a bank whose receipt of interest on the Subordinated Notes (or any Replacement Affiliate Investments) is described in section 881(c)(3)(A) of the Code. As noted above under "Possible Re-characterisation", it is possible that the Issuer might be re-characterised in which case, income derived by the Issuer from the Subordinated Notes, any Replacement Affiliate Investments or distributions on the Preferred Securities could be subject to US tax withholding at the rate of 30 per cent. (or a lower applicable treaty rate if appropriate certifications are provided).

Any gain realised on the sale, redemption, retirement or other taxable disposition of the Preferred Securities will be exempt from US federal income and withholding tax, provided that (1) the gain is not effectively connected with the conduct of a trade or business within the United States by such non-US Holder, and (2) in the case of a non-US Holder that is a foreign individual, such non-US Holder is not present in the United States for 183 days or more in the taxable year.

**Holders considering an investment in the Preferred Securities should consult their own tax advisors.**

**Information Reporting and Backup Withholding**

Non-US Holders are generally exempt from backup withholding requirements with respect to the receipt of income from the Preferred Securities. Backup withholding may apply to the proceeds from the sale of Preferred Securities effected at a United States office of a broker and information reporting (but not generally

backup withholding) may apply if you use the foreign office of a broker or agent that has certain connections with the United States. You may be required to comply with applicable certification procedures in order to avoid the application of the information reporting and backup withholding requirements.

Backup withholding is not an additional tax. An investor may generally obtain a refund of any amounts withheld under the backup withholding rules that exceed its US federal income tax liability by filing a refund claim with the IRS.

## EU DIRECTIVE ON THE TAXATION OF SAVINGS INCOME

Under EC Council Directive 2003/48/EC on the taxation of savings income, Member States are required, from 1 July 2005, to provide to the tax authorities of another Member State details of payments of interest (or similar income) paid by a person within its jurisdiction to an individual resident in that other Member State. However, for a transitional period, Belgium, Luxembourg and Austria are instead required (unless during that period they elect otherwise) to operate a withholding system in relation to such payments (the ending of such transitional period being dependent upon the conclusion of certain other agreements relating to information exchange with certain other countries). A number of non-EU countries and territories including Switzerland have agreed to adopt similar measures (a withholding system in the case of Switzerland) with effect from the same date.

## SUBSCRIPTION AND SALE

Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE, together with banks and other financial institutions to be named in the Final Terms (together, the **Managers**) will jointly and severally agree to subscribe for the entire issued amount of the Preferred Securities pursuant to a Subscription Agreement (the **Subscription Agreement**) expected to be dated on or about the date of publication of the Final Terms at a price per Preferred Security to be set out in the Final Terms. The Managers will receive a combined selling, management and underwriting commission of to be set out in the Final Terms. In addition, the Managers shall be reimbursed for certain of their expenses in connection with the issue of the Preferred Securities. The total estimated expenses of the issue of the Preferred Securities are to be set out in the Final Terms. The Managers will be entitled to terminate the Subscription Agreement in certain circumstances before the issue of the Preferred Securities.

The Issuer will only offer and allot Securities to the Managers. The selection of the Managers will be at the sole discretion of the General Partner.

This Base Prospectus is valid for use in an "offer of securities to the public" relating to the Preferred Securities for the period from its date of publication until the day falling 30 days after the Closing Date.

The aggregate nominal amount of the issue and the initial cash distribution will be as set out in the Final Terms to be published on the date that the Subscription Agreement is entered into. A copy of the Final Terms will be made available as described under "*General Information*".

The Managers will agree in the Subscription Agreement that they will only offer the Preferred Securities in accordance with the following restrictions:

## PLAN OF DISTRIBUTION

### United States

The Preferred Securities and the Subordinated Guarantee have not been and will not be registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S under the Securities Act (**Regulation S**).

Each Manager has agreed that, except as permitted by the Subscription Agreement, it will not offer, sell or deliver the Preferred Securities (i) as part of their distribution at any time or (ii) otherwise until 40 days after the later of the commencement of the offering and the Closing Date within the United States or to, or for the account or benefit of, US persons and that it will have sent to each distributor, dealer or person receiving a selling concession, fee or other remuneration that purchases Preferred Securities from it during the distribution compliance period a confirmation or other notice setting forth the restrictions on offers and sales of the Preferred Securities within the United States or to, or for the account or benefit of, US persons. Terms used in this paragraph have the meanings given to them by Regulation S.

In addition, until 40 days after the commencement of the offering, an offer or sale of Preferred Securities within the United States by any dealer that is not participating in the offering may violate the registration requirements of the Securities Act.

### United Kingdom

Each Manager has represented and agreed that, except as permitted by the Subscription Agreement:

(a)    it has only offered or sold and will only offer or sell Preferred Securities to (a) investment professionals falling within article 14(5) of the Financial Services and Markets Act 2000 (Promotion of Collective Investment Schemes) (Exemptions) Order 2001 (the **Promotion of CIS Order**) and article 19(5) of the Financial Services and Markets Act 2000 (Financial Promotion) Order 2001 (the **Financial Promotion Order**), who have professional experience of participating in unregulated

schemes and of matters relating to investments; and/or (b) persons falling within article 22(2) of the Promotion of CIS Order and article 49(2) of the Financial Promotion Order; and/or (c) any other persons to whom this Base Prospectus may be communicated lawfully;

(b)    it has in place and will have in place proper systems and procedures to prevent any person other than those persons described in (a) above from participating in the Preferred Securities;

(c)    it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of Section 21 of the FSMA) received by it in connection with the issue of the Preferred Securities in circumstances in which Section 21(1) of the FSMA does not apply to LBHI; and

(d)    it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to the Preferred Securities in, from or otherwise involving the United Kingdom.

## European Economic Area

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a **Relevant Member State**), each Manager has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the **Relevant Implementation Date**) it has not made and will not make an offer of Preferred Securities to the public in that Relevant Member State prior to the publication of a prospectus in relation to the Preferred Securities which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of Preferred Securities to the public in that Relevant Member State at any time:

(a)    to legal entities which are authorised or regulated to operate in the financial markets or, if not so authorised or regulated, whose corporate purpose is solely to invest in securities;

(b)    to any legal entity which has two or more of (i) an average of at least 250 employees during the last financial year; (ii) a total balance sheet of more than €43,000,000 and (iii) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(c)    in any other circumstances which do not require the publication by the Issuer and LBHI of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of Preferred Securities to the public" in relation to any Preferred Securities in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the Preferred Securities to be offered so as to enable an investor to decide to purchase or subscribe the Preferred Securities, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression **Prospectus Directive** means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

## Singapore

This Base Prospectus has not been registered as a prospectus with the Monetary Authority of Singapore under the Securities and Futures Act, Chapter 289 of Singapore (the **Securities and Futures Act**). Each Manager has represented, warranted and agreed that the Preferred Securities may not be offered or sold or made the subject of an invitation for subscription or purchase nor may this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities be circulated or distributed, whether directly or indirectly, to any person in Singapore other than (a) to an institutional investor or other person falling within Section 274 of the Securities and Futures Act, (b) to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions specified in Section 275 of the Securities and Futures Act, or (c)

pursuant to, and in accordance with the conditions of, any other applicable provision of the Securities and Futures Act.

Each Manager has further represented, warranted and agreed to notify (whether through the distribution of this Base Prospectus or any other document or material in connection with the offer or sale or invitation for subscription or purchase of any Preferred Securities or otherwise) each of the following relevant persons specified in Section 275 of this Securities and Futures Act which has subscribed or purchased Preferred Securities from and through that Manager, namely a person who is:

(a)     a corporation (which is not an accredited investor) the sole business of which is to hold investments and the entire share capital of which is owned by one or more individuals, each of whom is an accredited investor; or

(b)     a trust (where the trustee is not an accredited investor) whose sole purpose is to hold investments and each beneficiary is an accredited investor,

that shares, debentures and units of shares and debentures of that corporation or the beneficiaries' rights and interest in that trust shall not be transferable for six months after that corporation or trust has acquired the Preferred Securities under Section 275 of the Securities and Futures Act except:

(i)     to an institutional investor under Section 274 of the Securities and Futures Act or to a relevant person, or any person pursuant to Section 275(1A) of the Securities and Futures Act, and in accordance with the conditions, specified in Section 275 of the Securities and Futures Act;

(ii)    where no consideration is given for the transfer; or

(iii)   by operation of law.

## Hong Kong

Each Manager has represented and agreed that:

(a)     it has not offered or sold and will not offer or sell in Hong Kong, Special Administrative Region of the People's Republic of China (**Hong Kong**), by means of any document, any Preferred Securities other than (i) to "professional investors" as defined in the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance or (ii) in other circumstances which do not result in the document being a "prospectus" as defined in the Companies Ordinance (Cap. 32) of Hong Kong or which do not constitute an offer to the public within the meaning of that Ordinance; and

(b)     it has not issued or had in its possession for the purposes of issue and will not issue or have in its possession for the purposes of issue any advertisement, invitation or document relating to the Preferred Securities, whether in Hong Kong or elsewhere, which is directed at, or the contents of which are likely to be accessed or read by, the public in Hong Kong (except if permitted to do so under the securities laws of Hong Kong) other than with respect to Preferred Securities which are or are intended to be disposed of only to persons outside Hong Kong or only to "professional investors" within the meaning of the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance.

## General

Persons into whose hands this Base Prospectus comes are required by the Issuer, LBHI and the Managers to comply with all applicable laws and regulations in each country or jurisdiction in or from which they purchase, offer, sell or deliver Preferred Securities or have in their possession or distribute such offering material, in all cases at their own expense.

## GENERAL INFORMATION

### Authorisations

The Limited Partnership Agreement to establish the Issuer was duly authorised by a resolution of the board of directors of the General Partner passed on 20 December 2006.

The entering into of the Limited Partnership Agreement, the Agency Agreement, the Administration Agreement, the Subscription Agreement and the Subordinated Guarantee by LBHI will be authorised by the Chief Financial Officer of LBHI on the date specified in the Final Terms pursuant to the authority delegated to him by the Guarantor.

All consents, approvals, authorisations or other orders of all regulatory authorities required by the Issuer under the laws of England and Wales and LBHI under the laws of the State of Delaware and the United States of America have been, or will prior to the Closing Date be, given for the issue of the Preferred Securities and for the Issuer, the General Partner and LBHI, as the case may be, to undertake and perform their respective obligations as appropriate under the Limited Partnership Agreement, the Subscription Agreement, the Agency Agreement, the Preferred Securities and the Subordinated Guarantee.

### Listing

Application has been made to the UK Listing Authority for the Preferred Securities to be admitted to the Official List of the UK Listing Authority and to the London Stock Exchange plc for the Preferred Securities to be admitted to trading on the London Stock Exchange plc's Gilt Edged and Fixed Interest Market. The London Stock Exchange plc's Gilt Edged and Fixed Interest Market is a regulated market for the purposes of Directive 93/22/EEC (the Investment Service Directive).

It is expected that listing and admission to trading will take place on or about the Closing Date, subject to issue of the Global Certificate.

Application will also be made to Euronext Amsterdam for the Preferred Securities to be admitted to trading on Eurolist by Euronext Amsterdam.

### Clearing Systems

The preferred Securities have been accepted for clearance through Euroclear and Clearstream, Luxembourg. The ISIN for this issue and the Common Code shall be set forth in the Final Terms. The address of Euroclear is 1 Boulevard du Roi Albert III, B-1210 Belgium and the address of Clearstream, Luxembourg is 42 Avenue JF Kennedy, L-1855 Luxembourg.

### No significant change or material adverse change

There has been no significant change in the financial or trading position of the Issuer since its date of establishment.

There has been no material adverse change in the prospects of the Issuer since its date of establishment.

There has been no significant change in the financial or trading position of LBHI and the Group since 31 August 2006 (being the date of the most recent interim accounts of the Gurarantor and the Group).

There has been no material adverse change in the prospects of LBHI or the Group since 30 November 2005.

### Litigation

There are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which the Issuer is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of the Issuer.

Except as disclosed in this Base Prospectus, there are no governmental, legal or arbitration proceedings (including any such proceedings which are pending or threatened of which LBHI or any subsidiary of the Group is aware) during the previous 12 months which may have, or have had in the recent past, significant effects on the financial position or profitability of LBHI or any subsidiary of the Group.

**Accounts and Auditors**

The auditors of the Issuer are Ernst & Young LLP, Chartered Accountants and Registered Auditors, of 1 More London Place, London SE1 2AF.

The Issuer is newly established and does not currently have any financial statements (see also "*Documents*" below).

The consolidated financial statements for the years ended 30 November 2004 and 30 November 2005 of LBHI have been prepared in accordance with generally accepted accounting principles in the United States and have been reported upon without qualification for LBHI by Ernst & Young LLP, certified public accountants, which has its principal place of business at 5 Times Square, New York, New York 10036, USA.

Ernst & Young LLP is an independent registered public accounting firm with respect to LBHI and its subsidiaries within the meaning of the Securities Act of 1933, as amended and the applicable rules and regulations thereunder adopted by the Securities and Exchange Commission and the Public Company Accounting Oversight Board (United States) (PCAOB).

**Documents**

Copies of the following financial statements will be available free of charge from the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the annual reports (including the audited consolidated financial statements) of LBHI in respect of the financial years ended 30 November 2005, 2004 and 2003; including the audit reports on such financial statements;

(b)     the most recently published annual reports (including the audited annual consolidated financial statements) of LBHI and the most recently published unaudited interim consolidated financial statements of LBHI.

LBHI currently prepares audited consolidated financial statements on an annual basis and unaudited interim consolidated financial statements on a quarterly basis.

The Issuer is newly established as a limited partnership and has not traded or operated as at the date of this Base Prospectus. The first financial statements of the Issuer are expected to be prepared for the period ending on 30 November 2007. Thereafter, it is intended that the Issuer will prepare audited annual financial statements.

Copies of the Issuer's most recently published annual reports (if any) and audited annual financial statements of the Issuer will be available free of charge at the offices of the Paying and Transfer Agents. It is not intended that the Issuer will publish interim financial statements.

In addition, the following documents are available for inspection at the specified offices of the Paying and Transfer Agents for so long as any of the Preferred Securities remains outstanding:

(a)     the Subscription Agreement;

(b)     the Subordinated Guarantee;

(c)     the Limited Partnership Agreement;

(d)     the Administration Agreement;

(e)     the Agency Agreement;

(f)    the Final Terms; and

(g)    the Restated Certificate of Incorporation and the Amended and Restated By-Laws of LBHI.

## Certificates of Approval

The UK Listing Authority, in its capacity as competent authority in the United Kingdom for the purposes of the Prospectus Directive will be requested to provide the following competent authorities in other Member States with a certificate of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom:

(a)    The Banking, Finance and Insurance Commission, or CBFA, which is the competent authority of Belgium for the purposes of the Prospectus Directive;

(b)    The German Federal Financial Supervisory Authority (Bundesanstalt für Finanzdienstleistungsaufsicht), which is the competent authority of Germany for the purposes of the Prospectus Directive;

(c)    The Commissione Nazionale per le Società e la Borsa (CONSOB), which is the competent authority of Italy for the purposes of the Prospectus Directive;

(d)    The Commission de Surveillance du Secteur Financier, which is the competent authority of Luxembourg for the purposes of the Prospectus Directive;

(e)    The Stichting Autoriteit Financiële Markten, or "AFM", which is the competent authority of The Netherlands for the purposes of the Prospectus Directive;

(f)    The Securities Commission (CMVM), which is the competent authority of Portugal for the purposes of the Prospectus Directive; and

(g)    The Comisión Nacional del Mercado de Valores, or CNMV, which is the competent authority of Spain for the purposes of the Prospectus Directive.

In addition to the applications described above, the General Partner, on behalf of the Issuer, may, on or after the date of this Base Prospectus, make applications for one or more further certificates of approval under Article 18 of the Prospectus Directive as implemented in the United Kingdom to be issued by the UK Listing Authority to the competent authority in any Member State.

## Capital Replacement Intent

If the Preferred Securities are redeemed, it is the intention of the General Partner that they will be redeemed only to the extent the aggregate redemption price is equal to or less than the net proceeds, if any, received by LBHI or any of its subsidiaries from new issuances to purchasers other than affiliates during the period commencing on the 180th calendar day prior to the date of redemption of any securities that have equal or greater equity characteristics as the Preferred Securities.

## FORM OF FINAL TERMS

### Final Terms

### Lehman Brothers UK Capital Funding IV LP

### Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities

| | |
|---|---|
| **Closing Date:** | [*Insert*] |
| **Issue Price and Offer Price per Preferred Security:** | [*Insert*] |
| **Distribution Rate:** | [*Insert*] per cent. per annum |
| **Distribution Payment Dates:** | [*Insert. NB the distribution payment dates will fall annually following the Closing Date*] |
| **Aggregate Nominal Amount of the Preferred Securities:** | €[*Insert*] |
| **First Call Date of Subordinated Notes:** | [*Insert*] |
| **Net proceeds:** | €[*Insert*] |
| **Names and addresses of Managers:** | [*Insert*] |
| **ISIN:** | XS[*Insert*] |
| **Common Code:** | [*Insert*] |
| **WKN Number:** | [*Insert*] |
| **Combined selling, management and underwriting commission:** | €[*Insert*] per Preferred Security |
| **Total estimated expenses of the issue of the Preferred Securities (including the commission):** | €[*Insert*] |
| **Ratings:** | [*Insert*] |
| **Date of resolution of Chief Financial Officer of LBHI:** | [*Insert*] |
| **Other terms:** | [*Insert*] |

The above pricing gives a yield of [*Insert details*]. Such yield is applicable as of the date of these Final Terms and may fluctuate in the future.

The date of these Final Terms is [*Insert*].

| **ISSUER** | **GUARANTOR** |
|---|---|
| **Lehman Brothers UK Capital Funding IV LP** | **Lehman Brothers Holdings Inc.** |
| 25 Bank Street | 745 Seventh Avenue |
| London E14 5LE | New York, |
| England | New York 10019 |

### PRINCIPAL PAYING AND TRANSFER AGENT

**The Bank of New York**

One Canada Square

London E14 5AL

England

| **PAYING AND TRANSFER AGENT AND REGISTRAR** | **PAYING AND TRANSFER AGENT** |
|---|---|
| **The Bank of New York (Luxembourg), S.A.** | **ING Bank N.V.** |
| Aerogolf Center | Van Heenvlietlaan 220 |
| 1A Hoehenhof | 1083 CN Amsterdam |
| L - 1736 Senningerberg | The Netherlands |
| Luxembourg | |

### LEGAL ADVISERS

*to the Managers*

| *as to United States law* | *as to English and United States law* |
|---|---|
| **Barrett DiPaolo** | **Allen & Overy LLP** |
| Lehman Brothers Holdings Inc. | One Bishops Square |
| 745 Seventh Avenue | London E1 6AO |
| New York, | England |
| New York 10019 | |

### AUDITORS

| *to the Issuer* | *to LBHI* |
|---|---|
| **Ernst & Young LLP** | **Ernst & Young LLP** |
| 1 More London Place | 5 Times Square |
| London SE1 2AF | New York |
| England | New York 10036 |

## FINAL TERMS

### Lehman Brothers UK Capital Funding IV LP (the "Issuer")

### €200,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities (Euro ECAPS®) (the "Preferred Securities")

#### having the benefit of a subordinated guarantee of

#### Lehman Brothers Holdings Inc. (the "Guarantor")

Terms used herein shall be deemed to be defined as such for the purposes of the Description of the Preferred Securities set forth in the Base Prospectus dated 4th January, 2007 which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the **Prospectus Directive**).  This document constitutes the Final Terms of the Preferred Securities described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus.  Full information on the Issuer and the offer of the Preferred Securities is only available on the basis of the combination of these Final Terms and the Base Prospectus.  The Base Prospectus is available for viewing at 25 Bank Street, Canary Wharf, London E14 5LE and copies may be obtained from 25 Bank Street, Canary Wharf, London E14 5LE.

| | |
|---|---|
| **Closing Date:** | 25th January, 2007 |
| **Issue Price and Offer Price per Preferred Security:** | €1,000 |
| **Distribution Rate:** | 5.75 per cent. per annum payable annually in arrear |
| **Distribution Payment Dates:** | 25th April in each year with the first Distribution Payment Date being on 25th April, 2008 (long first coupon). |
| | In respect of the first Distribution accruing from and including the Closing Date, the applicable day count fraction shall be Actual/Actual (ICMA) which, subject to paragraphs 2.3 and 2.4 of the "Description of the Preferred Securities", shall result in a Distribution of €71.68 in respect of each Preferred Security being payable on 25th April, 2008.  On each Distribution Payment Date thereafter, subject to paragraphs 2.3 and 2.4 of the "Description of the Preferred Securities", a Distribution of €57.50 shall be payable in respect of each Preferred Security. |

ECAPS® is a registered trademark of Lehman Brothers

| | |
|---|---|
| **Aggregate Nominal Amount of the Preferred Securities:** | €200,000,000 |

| | |
|---|---|
| **First Call Date of Subordinated Notes:** | 25th April, 2012 |

In the event that the Subordinated Notes or the Replacement Affiliate Investments are redeemed at the option of LBHI (or the issuer of the Replacement Affiliate Investments, as the case may be) pursuant to their terms and the General Partner intends to redeem the Preferred Securities pursuant to paragraph 4.2 of the "Description of the Preferred Securities", the General Partner shall give not less than 30 nor more than 60 days' notice to the Holders.

| | |
|---|---|
| **Net proceeds:** | €196,000,000 |

**Names and addresses of Managers:**

**Lead Manager**
Lehman Brothers International (Europe)
25 Bank Street, Canary Wharf, London E14 4LE, United Kingdom

**Co-Managers**
Banco Bilbao Vizcaya Argentaria, S.A.
Via de los Poblados s/n, Madrid 28033, Spain

Banco Millennium bcp Investimento, SA
Avenida José Malhoa, 27, 1070-157 Lisbon, Portugal

DZ BANK AG Deutsche Zentral-Genossenschaftsbank, Frankfurt am Main
Platz der Republik, D-60265 Frankfurt am Main, Germany

EFG Eurobank Ergasias S.A.
8 Othonos St., 105 57 Athens, Greece

Nordea Bank Danmark A/S
Christiansbro, Strandgade 3, PO Box 850, DK-0900 Copenhagen C, Denmark

| | |
|---|---|
| **ISIN:** | XS0282978666 |
| **Common Code:** | 028297866 |
| **Fondscode:** | 15957 |
| **Combined selling, management and underwriting** | €20 per Preferred Security |

**commission:**

| | |
|---|---|
| **Total estimated expenses of the issue of the Preferred Securities (including the commission):** | The total amount of expenses is estimated to be €4,180,000, broken down as follows (all figures approximate): |

|  |  |
|---|---|
| Commissions payable: | €4,000,000 |
| Legal fees: | €170,000 |
| Listing fees: | €5,000 |
| Other fees: | €5,000 |

**Ratings:** The Preferred Securities are expected to be assigned on issue the following ratings:

| | |
|---|---|
| Moody's Investors Service: | A3 |
| Fitch, Inc: | A |
| Standard & Poor's Rating Services, a division of The McGraw-Hill Companies Inc.: | A- |

**Date of resolution of Chief Financial Officer of LBHI:** 11th January, 2007

**Other terms:** Not Applicable

The above pricing gives a yield of 5.75 per cent. per annum. Such yield is calculated at the Closing Date on the basis of the Issue Price. It is not an indication of future yield.

If closing of the Preferred Securities does not take place on the Closing Date or at all, the offer of the Preferred Securities will be withdrawn, all subscriptions for the Preferred Securities will be disregarded, any allotments made will be deemed not to have been made and any subscription payments made will be annulled. All dealings in the Preferred Securities prior to settlement and delivery are at the sole risk of the parties concerned.

Euronext Amsterdam N.V. is not responsible or liable for any loss incurred by any person as a result of a withdrawal of the offer of the Preferred Securities and/or (the related) annulment of any transactions on Eurolist by Euronext Amsterdam N.V.

The date of these Final Terms is 23rd January, 2007.

**LISTING AND ADMISSION TO TRADING APPLICATION**

These Final Terms comprise the final terms required to list and have admitted to trading the issue by Lehman Brothers UK Capital Funding IV LP of the Preferred Securities described herein.

**RESPONSIBILITY**

Each of the LB GP No. 1 Ltd. (the "**General Partner**"), acting on behalf of the Issuer, and the Guarantor accepts responsibility for the information contained in these Final Terms.


Signed by LB GP No. 1 Ltd.                       Signed on behalf of the Guarantor:
as General Partner,
acting on behalf of the Issuer:


By:    ………………………………..          By:    ………………………………..

     *Duly authorised*                                      *Duly authorised*