UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
                                                          :
In re                                                     :    Chapter 11
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                  :    Case No. 08-13555 (SCC)
                                                          :
                                          Debtors.        :    (Jointly Administered)
                                                          :
----------------------------------------------------------x

## DECLARATION OF MICHAEL SUTTON IN SUPPORT OF OBJECTION OF DEUTSCHE BANK AG, LONDON BRANCH TO MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE PLAN

I, Michael Sutton, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am a Managing Director of Deutsche Bank AG, London Branch ("Deutsche Bank") which maintains its principal place of business at Winchester House, 1 Great Winchester Street, London EC2N 2DB, England.

2.  I submit this Declaration in support of the accompanying objection (the "Objection") of Deutsche Bank to the *Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [ECF #57036] (the "Motion") in the above-captioned proceeding.[1]

3.  I make this Declaration based on my personal knowledge, review of the relevant documents, and consultation with my colleagues.

4.  Since the commencement of the various insolvency proceedings of Lehman affiliates worldwide, I have headed the team at Deutsche Bank that manages the substantial majority of Deutsche Bank's portfolio of claims against Lehman entities in UK insolvency

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Objection.

proceedings, which portfolio includes approximately $688 million in principal amount of the ECAPS that are at issue in the Motion and the Objection.

5.      Deutsche Bank acquired the substantial majority of its ECAPS holdings after the Effective Date with the expectation that any Preferred Securities Substitution, if ever viable, had been foreclosed by, among other things, the Plan.

6.      Deutsche Bank considers that the ECAPS might have material value depending on, among other things, the surplus at LBIE being sufficient to reach through LBHI2 and LBH to the Partnerships that issued the ECAPS.

Exhibits

7.      Annexed hereto as Exhibit A is a true and correct copy of the Liquidators' June 23, 2017 Notice to Holders of ECAPS issued by LB UK III, as received by Deutsche Bank.

8.      Annexed hereto as Exhibit B is a true and correct copy of the Liquidators' November 13, 2017 Notice to Holders of ECAPS issued by LB UK III, as received by Deutsche Bank.

9.      Annexed hereto as Exhibit C is a true and correct copy of the LBHI2 Administrators' Proposals dated March 6, 2009, as downloaded from UK Companies House.

10.     Annexed hereto as Exhibit D is a true and correct copy of the LBIE Administrators' Tenth Progress Report, dated October 11, 2013, as downloaded from the LBIE Administrators' official website.

11.     Annexed hereto as Exhibit E is a true and correct copy of the LBIE Administrators' Twelfth Progress Report, dated October 10, 2014, as downloaded from the LBIE Administrators' official website.

12. Annexed hereto as Exhibit F is a true and correct copy of the LBIE Administrator's Eighteenth Progress Report, dated October 9, 2017, as downloaded from the LBIE Administrators' official website.

13. Annexed hereto as Exhibit G is a true and correct copy of the LBH Administrators' most recent Progress Report, dated October 11, 2017, as downloaded from the LBH Administrators' official website.

14. Annexed hereto as Exhibit H is a true and correct copy of the report and accounts of LB UK III for the year ended November 30, 2007, as downloaded from the website of the London Stock Exchange.

15. Annexed hereto as Exhibit I is a true and correct copy of the report and accounts of LB UK IV for the year ended November 30, 2007, as downloaded from the website of the London Stock Exchange.

16. Annexed hereto as Exhibit J is a true and correct copy of the report and accounts of LB UK V for the year ended November 30, 2007, as downloaded from the website of the London Stock Exchange.

17. Annexed hereto as Exhibit K is a true and correct copy of an announcement dated January 21, 2009 by the directors of Lehman Brothers Liquidity Funds Plc, published by the Regulatory News Service of the London Stock Exchange.

18. Annexed hereto as Exhibit L is a true and correct copy of the Form 8-K filed by LBHI with the SEC on March 6, 2012 (without exhibits), as downloaded from SEC's website (www.sec.gov).

19. Annexed hereto as Exhibit M is a true and correct copy of LBHI's Amended and Restated Articles of Incorporation, as included in the foregoing Form 8-K as Exhibit 3.1.

20. Annexed hereto as <u>Exhibit N</u> is a true and correct copy of LBHI's Amended and Restated By-Laws, as included in the foregoing Form 8-K as Exhibit 3.2.

The Partnerships, the GP and the ECAPS

21. On information and belief, LBHI has always been the sole member of the GP. Ex. A, § 3.1.

22. Each of the Partnerships issued ECAPS. Ex. A, § 3.7. LB UK I, LB UK II and LB UK III used the proceeds to purchase subordinated notes issued by LBH (the "LBH Sub Notes"). *Id.*, § 3.10. LB UK IV and LB UK V used the proceeds to purchase subordinated notes issued by LBHI. *Id.*

23. On information and belief, the GP never took the requisite steps to bring about a Preferred Securities Substitution in September 2008 or at any time thereafter, and LBHI never expressed to the GP or the ECAPS Holders any interest in a Preferred Securities Substitution occurring until many months after the GP had been restored to the Register of Companies. *See* Ex. B, §§ 5.3-5.6.

24. On information and belief, on June 22, 2010, the GP was stricken from the Register of Companies on the basis that the Registrar had reasonable cause to believe that the GP was not carrying on any business. *See* Ex. A, § 3.16. The GP's directors and secretary all resigned prior to the GP being struck off the Register of Companies. *Id.*, § 3.17.

25. On February 3, 2017, the GP was restored to the Register of Companies, as the result of efforts undertaken by Deutsche Bank, in its capacity as an ECAPS Holder, beginning in June 2016. *Id.*, §§ 3.18-19. The reason Deutsche Bank sought to restore the GP was that it considered that the Partnerships might have assets that would need to be protected and ultimately distributed to ECAP holders. LBHI was actively involved in the GP's restoration process, *see*

*id.*, § 4.8.3, together with the appointment of the Liquidators (LBHI being the sole member of the GP) *see id.*, § 3.1. To my knowledge, during that restoration process, LBHI did not express any intention to bring about a Preferred Securities Substitution.

26. On February 28, 2017, the Liquidators (i.e., Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP) were appointed as Joint Liquidators of the GP, pursuant to a special resolution of the GP's sole member, LBHI. Ex. A, § 3.1. The appointment of the Liquidators was ratified by the GP's creditors at a creditors' meeting on April 12, 2017. *Id.*

27. Deutsche Bank's position concerning the parties' bargained-for rights under the Partnership Agreements is that, to the extent those agreements remain in place, they do not permit or require any party to replace the ECAPS with Substituted Preferred Stock, even assuming they ever did (which Deutsche Bank does not concede), as a matter of English law.

28. I understand from my most recent correspondence with a member of the Liquidators' staff that the Liquidators consider that there are a number of points that would need to be addressed by the English Court before any Preferred Securities Substitution could be effected. I consider it likely that proceedings in the English Court will be commenced in due course.

Partnership Assets

(i) The Investment Proceeds

29. LB UK III, LB UK IV and LB UK V, consistent with the descriptions in the relevant offering documents relating to the ECAPS issued by those Partnerships, invested in certain money market funds, the proceeds of which, on information and belief, were subsequently held by LBHI. Ex. B, § 3.13.

30. The August 29, 2008 account statements of LB UK III, LB UK IV and LB UK V showed the value of these investments as of November 30, 2007 of €12,247,900 (Ex. H at 8), €10,334,142 (Ex. I at 8) and $25,646,026 (Ex. J at 8), respectively.

31. On January 21, 2009 (within five months of the Commencement Date), a company announcement of Lehman Brothers Liquidity Funds plc made it clear that the relevant investments in money market funds would be redeemed as cash (the "Investment Proceeds"). Ex. K.

32. On information and belief, LBHI was in possession of the Investment Proceeds well before the Effective Date. The Liquidators have reported that the Investment Proceeds "post demise of the [Lehman] Group were held by or under the control of LBHI" and that "[d]espite LBHI's initial written confirmation in February 2017 that upon expiry of the fixed term deposit accounts (in May 2017) the [Investment Proceeds] would be paid to the [Liquidators] on the maturity of the fixed term deposit accounts LBHI did not pay the [Investment Proceeds] to the [Liquidators]. This was on the basis that LBHI was (contrary to its earlier position) investigating whether in fact the [Investment Proceeds] were the property of the relevant Partnerships." Ex. B, § 4.4.

33. The Liquidators have reported that in October 2017, after eight months of the Liquidators' efforts, the Plan Administrator finally released the last of the Investment Proceeds to the GP, while purporting to reserve its rights and obtaining the Liquidators' agreement not to distribute the Investment Proceeds until all competing claims to them have been resolved, in the amounts of €12.8 million, €10.8 million and $26.7 million, on behalf of LB UK III, LB UK IV and LB UK V, respectively. Ex. B, §§ 4.8-4.11.

(ii)  LBH Sub Notes

34. Each of the Partnerships issued ECAPS. Ex. A, § 3.7. LB UK I, LB UK II and LB UK III used the proceeds to purchase LBH Sub Notes. Any recoveries by those Partnerships on the LBH Sub Notes would be assets available for distribution to ECAPS Holders.

35. The most recent Progress Report of LBH, dated October 11, 2017, states that the Administrators of LBH "consider it possible that there may be a surplus available in due course for a distribution to subordinated creditors but . . . there remain a number of variables that would have a significant impact on the quantum of any such surplus." Ex. G. at 3.

36. The variables that could impact the quantum of a surplus at LBH (and therefore the recoveries by the subordinated creditors of LBH including the relevant Partnerships) include, among other things, (i) the quantum of the surplus ultimately available at LBIE for distribution to LBIE's subordinated debt and equity (in which LB Holdings Intermediate 2 Limited ("LBHI2") holds a significant economic interest) and (ii) the extent to which such value could, in turn, be passed from LBHI2 to LBH through, among other things, certain subordinated loans owed by LBHI2 to LBH.

37. With respect to the surplus at LBIE:

    a. on February 18, 2013, LBIE's Administrators announced that LBHI was joined as a respondent to the first Waterfall Application to the High Court, which concerned the priority of subordinated debt claims of LBHI2 in light of an expected surplus at LBIE – raising the possibility that some portion of that surplus could reach the Partnerships.

    b. On October 11, 2013, the LBIE Administrators issued their Tenth Progress Report indicating a possible surplus in LBIE: "The recent strengthening in the

financial position of the Administration now suggests that an outcome close to 100% recovery is likely in the Low case scenario, whilst in the High case scenario there would be sufficient funds to settle in full all ordinary ranking (unsubordinated) claims with a significant surplus available." *See* Ex. D at 6.

c. On October 10, 2014, the LBIE Administrators released their Twelfth Progress Report, showing that LBIE's estate would have a low case surplus (before post-administration interest, non-provable claims, and subordinated debt) of £4.94 billion and a high case surplus of £7.39 billion. Ex. E at 7.

d. On October 9, 2017, the LBIE Administrators released their Eighteenth Progress Report, showing a low case surplus (before post-administration interest, non-provable claims, and subordinated debt) of £7.07 billion and a high case surplus of £8.097 billion, and potentially over £2.4 billion to be available for the subordinated debt (in which LBHI2 holds a significant economic interest). Ex. F at 16.

38. As to the extent to which such value could, in turn, be passed from LBHI2 to LBH through subordinated loans owed by LBHI2 to LBH, the Statement of Administrator's Proposals of LBHI2 dated March 6, 2009 (the "Proposals") listed LBHI2's investment in LBIE as being financed by three sources of debt: (i) $730 million of fixed rate notes, (ii) $2.2 billion of loan facilities from LBH (the "LBH Loans") and (iii) $6.1 billion of floating rate subordinated notes (the "Floating Rate Notes"). The Proposals stated that "the Administrators understand that both the Floating Rate Notes and the LBH Loans are subordinated to all other creditors and that the Floating Rate Notes are, in turn, subordinated to the LBH Loans." Ex. C at 4.

I hereby declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: January 17, 2018
London, England

*/s/ Michael Sutton*

Michael Sutton
Managing Director