# EXHIBIT A

*THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE REGISTERED AND BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO BENEFICIAL OWNERS OF THE SECURITIES IN A TIMELY MANNER.*

LEHMAN BROTHERS UK CAPITAL FUNDING III LP ("LP III")

EUR 500,000,000 FIXED/FLOATING RATE ENHANCED CAPITAL ADVANTAGED PREFERRED SECURITIES ("LP III ECAPS")

ISIN XS0243852562

23 June 2017

Notice to Holders

<u>Liquidation of LB GP No.1 Ltd ("the Company") and implications for holders of LP III ECAPS</u>

1   **PRELIMINARY INFORMATION**

1.1   THIS NOTICE IS IMPORTANT AND REQUIRES YOUR IMMEDIATE ATTENTION.

1.2   If you are in any doubt as to the action you should take, you are recommended to seek your own financial, legal or other advice immediately from your stockbroker, bank manager, solicitor, accountant or other appropriately authorised independent financial adviser.

1.3   If you have sold or otherwise transferred your entire (or any part of your) holding(s) of the LP III ECAPS you should immediately forward this notice to the purchaser or transferee or to the stockbroker, bank or other agent through whom the sale or transfer was effected for transmission to the purchaser or transferee.

1.4   This notice contains certain information potentially relating to the future outlook for LP III. Although we believe any expectations are based on reasonable assumptions, any statements about the future outlook for LP III may be influenced by factors that could cause actual outcomes and results to be materially different. As a result, you should not rely on any forward-looking statements. Any forward-looking statements included in this notice are made only as of the date of this notice, and except as otherwise required by law, we undertake no obligation to publicly update or revise any such forward-looking statements to reflect subsequent events or circumstances.

2   **QUALIFICATION STATEMENT**

2.1   This notice has been prepared using information obtained by the Joint Liquidators of the Company whilst completing preliminary investigations and preliminary and limited (on account of the paucity of current financial information) due diligence. The Joint Liquidators have carried out no audit or other verification work.

2.2   Due to the circumstances explained in this notice, there has been no current financial information available on which to base an up to date statement of LP III's financial affairs.

1

2.3 This notice notifies the beneficial owners of the LP III ECAPS of the appointment of the Joint Liquidators and provides an update regarding the progress of the Liquidation. This notice should not be used for any other purpose, or to inform any investment decision in relation to any debt or financial interest in LP III and the Partnerships, as listed in paragraph 3.4, below.

2.4 The information set out in this notice is being distributed to all holders of LP III ECAPS at the same time and is also being published via stock exchange announcements and Bloomberg such that the information set out in this notice does not constitute material non-public information.

2.5 Neither the Joint Liquidators nor RSM Restructuring Advisory LLP accept any liability whatsoever arising as a result of any decision or action taken or refrained from as a result of information contained in this notice.

## 3 BACKGROUND

3.1 Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP were appointed as joint liquidators ("**the Joint Liquidators**") of the Company on 28 February 2017 pursuant to a special resolution of the Company's sole member, Lehman Brothers Holdings Inc. ("**LBHI**"). The appointment of the Joint Liquidators was ratified by the Company's creditors at a meeting of creditors held on 12 April 2017.

3.2 The Company is part of the Lehman Investment Banking Group ("**the Group**"). It operated from premises at 25 Bank Street, London, E14 5LE prior to the collapse of the Group in September 2008.

3.3 Prior to the collapse of the Group in 2008, a funding structure was developed by the Group to fund, on a subordinated basis, capital to be made available to Lehman Brothers Holdings Plc (in administration) ("**LBH**") and LBHI in respect of tier 1 regulatory capital.

3.4 The funding structure was established through five limited partnerships as follows:

    3.4.1 Lehman Brothers UK Capital Funding LP ("**LP I**")

    3.4.2 Lehman Brothers UK Capital Funding II LP ("**LP II**")

    3.4.3 Lehman Brothers UK Capital Funding III LP ("**LP III**")

    3.4.4 Lehman Brothers UK Capital Funding IV LP ("**LP IV**")

    3.4.5 Lehman Brothers UK Capital Funding V LP ("**LP V**"),

(together "**the Partnerships**" or individually a "**Partnership**" as the context requires).

3.5 The Company acted as a general partner of each of the Partnerships.

3.6 The Partnerships formed the structure of the capital funding arrangement.

3.7    The purpose of the Partnerships was to raise tier 1 regulatory capital for LBH and LBHI by issuing securities to investors. The securities issued by the Partnerships were as follows (definitions taken from the Prospectus for each of the Partnerships):

   3.7.1    **LP I** – EUR 225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-voting, Non-Cumulative Perpetual Preferred Securities;

   3.7.2    **LP II** – EUR 250,000,000 Euro Fixed Rate Guaranteed Non-voting, Non-cumulative Perpetual Preferred Securities;

   3.7.3    **LP III** – EUR 500,000,000 Fixed / Floating Rate Enhanced Capital Advantaged Preferred Securities;

   3.7.4    **LP IV** – EUR 200,000,000 Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities; and

   3.7.5    **LP V** – USD 500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities.

3.8    Reference hereafter to "Securities" relates to any one or more (as the context requires) of the above investments issued by the Partnerships.

3.9    Although this specific notice is addressed and has been distributed (to the extent possible) to the holders of the LP III ECAPS with ISIN XS0243852562 issued by LP III, this notice contains information relevant to each of the Partnerships and is therefore to be read as a composite update to enable holders of Securities issued by each of the Partnerships to understand the position applicable to all of the Partnerships. Separate notices (in materially the same form) have been distributed to holders of Securities issued by each of the Partnerships.

3.10    The majority of the funds raised by the Partnerships from the issue of the Securities were applied in purchasing subordinated note investments as follows:

   3.10.1    LP I, LP II and LP III purchased subordinated notes from LBH.

   3.10.2    LP IV and LP V purchased subordinated notes from LBHI.

3.11    The Joint Liquidators understand that the subordinated notes constituted the majority of the assets held by each Partnership.

3.12    The Joint Liquidators also understand that in relation to certain of the Partnerships, a small proportion of the funds raised were invested in certain money market funds.

3.13    The funding structures operated by the Partnerships were unregulated collective investment schemes ("**CIS**"), the operation of which is regulated by the Financial Conduct Authority ("**the FCA**"). The FCA has confirmed that it has no objection to the Joint Liquidators winding up the Partnerships and relying upon the exemption set out in Article 72H of the Financial Services and Markets Act 2000 (Regulated Activities) Order 2001 ("**RAO**").

3.14 RSM Restructuring Advisory LLP was approached in September 2016 by LBHI, the Company's sole Member, to assist with placing the Company in liquidation once it had been restored (as explained in paragraphs 3.16 - 3.21 below) and specifically to deal with "winding up" the Partnerships' affairs and dealing with any assets or rights of the Partnerships.

3.15 The Joint Liquidators have assumed control of certain copy documents in relation to each of the Partnerships which are sufficient to understand the general nature of the funding structures that were created.

3.16 The collapse of the Group precipitated the demise of the Company and the Partnerships. The Company was struck off the Register of Companies under section 1000 of the Companies Act 2006 on 20 June 2010.

3.17 The Company's directors and the Company's secretary all resigned prior to the Company being struck off the Register of Companies.

3.18 An application to restore the Company to the Register of Companies was made by Deutsche Bank AG (being a person with an interest in the restoration of the Company to the Register of Companies) on 20 June 2016.

3.19 At a hearing on 20 January 2017 in the Central London County Court an order was made by District Judge Hart restoring the Company to the Register of Companies. The restoration was effective from 3 February 2017.

3.20 The reason it was sought to restore the Company to the Register of Companies was that it was the general partner of the Partnerships and it had become apparent that the Partnerships might be entitled to assets which would need to be distributed to those who are ultimately entitled to them.

3.21 The function of winding up the Partnerships (i.e. realising the Partnerships' assets and distributing those assets) will fall to the Joint Liquidators of the Company acting as insolvency practitioners.

## 4 APPLICATIONS TO COURT

4.1 Procedurally the liquidation of the Company has not been typical. It has been necessary to make several applications to Court to address a number of issues that have arisen on account of the Company being struck off the Register of Companies on 22 June 2010 (it has since been restored) and the Company having no directors.

4.2 The Court has granted the following orders in relation to the Company and the Partnerships. Each order was required in order for the Joint Liquidators to effect the primary purpose of the winding up of the Partnerships which is to take control of / protect any assets belonging to the individual Partnerships and to realise and ultimately distribute those assets to those who are entitled to them.

## ORDER 1

4.3  A declaration pursuant to section 1032(3) of the Companies Act 2006, that consequent upon the Company's restoration to the Register of Companies on 3 February 2017 the Company continues to act as the general partner of the Partnerships.

## ORDER 2

4.4  A declaration pursuant to s.166(5) of the Insolvency Act 1986 that by reason of the default of the Company to comply with s. 98(1A) of the Insolvency Act 1986 the Joint Liquidators, rather than the Company, take the requisite steps set out in s.98(1A) to convene a meeting of creditors.

## ORDER 3

4.5  A direction pursuant to rule 4.3 of the Insolvency Rules 1986 that the time for holding the meeting of creditors in accordance with s.98(1A) of the Insolvency Act be extended so that the meeting be held on or before Friday 28th April 2017.

## ORDER 4

4.6  A direction (in the absence of any acting director) that the Joint Liquidators prepare as far as is feasible, a statement of affairs to be laid before the meeting of creditors to be convened by the Joint Liquidators. The said statement of affairs to include, or be accompanied by a document containing an account of the recent restoration of the Company to the Register of Companies, the winding up of the Company and the costs and expenses associated with these matters.

## ORDER 5

4.7  An order pursuant to s.6(3) of the Limited Partnerships Act 1907 that the affairs of the Partnerships be wound up by the Joint Liquidators in their capacity as insolvency practitioners.

## ORDER 6

4.8  A direction that the Joint Liquidators be permitted:

   4.8.1  to draw past and future costs and expenses in connection with the winding up of the Company and the winding up of the Partnerships out of the Partnership Assets as defined in the Limited Partnership Agreements of each of the Partnerships;

   4.8.2  to pay the reasonable legal fees of Deutsche Bank AG incurred in connection with the restoration of the Company to the Register of Companies; and

   4.8.3  to pay the reasonable legal fees of LBHI incurred in connection with the restoration of the Company to the Register of Companies and subsequently putting the Company into liquidation.

### ORDER 7

4.9  The costs of and expenses occasioned by the application to Court be paid out of the Partnership Assets as defined in each of the Limited Partnership Agreements of the Partnerships.

### ORDER 8

4.10  Liberty to apply for the purpose of enabling any creditor of the Partnerships or beneficial owner of the Securities issued by the Partnerships to apply to Court for the purpose of reviewing the Joint Liquidators' remuneration and expenses (see section 7 below).

### ORDER 9

4.11  That the Joint Liquidators' witness statement (and certain parts of the accompanying exhibit) in support of the applications for the above orders be sealed by the Court (i.e. kept confidential) and not be made available for inspection without permission of the Court until such time as the necessity for confidentiality ceases to apply (explained in paragraph 5.2 below).

5  **THE PARTNERSHIPS' ASSETS**

### CASH

5.1  At the time of the Joint Liquidator's appointment they understood from LBHI that it was holding cash (**"the Funds"**) which would be paid to the Joint Liquidators in May 2017.

5.2  The value of the Funds (and apportionment as between the Partnerships) is price sensitive information. This is reflected by the order of the Court that reference to such price sensitive information be redacted from documents filed at Court in order to preserve confidentiality until the Joint Liquidators are in a position to release the information in a controlled manner (see paragraph 4.11 above).

5.3  At the outset of the liquidation, it was anticipated that the Joint Liquidators would receive the Funds from LBHI by the middle of May 2017 (at the expiry of certain fixed term deposit accounts within which the Funds were held).

5.4  It was thereafter the Joint Liquidators' intention (but only once the Funds were under their control and fully released to the Joint Liquidators by LBHI) to disclose the value and apportionment of the Funds (as between the Partnerships) to holders of the Securities.

5.5  LBHI has not paid the Funds to the Joint Liquidators as was originally anticipated. LBHI has advised the Joint Liquidators that it may wish to make a claim to some or all of the Funds and this is currently under consideration by LBHI.

5.6  The Joint Liquidators, in turn, are investigating whether any one or more of the Partnerships are entitled to the Funds and propose to circulate a further update notice

once those investigations are complete and/or an agreement has been reached with LBHI. Until those issues are investigated further and resolved it will not be possible to provide further details (in particular, the value of the Funds, who may be entitled to receive a share of the Funds (or any other cash assets), the quantum of any distribution or the time frame for any potential distribution).

**POTENTIAL CLAIMS AGAINST THIRD PARTIES**

5.7 The Joint Liquidators are also investigating whether any of the Partnerships have claims against any third parties (and particularly entities within the Group). For example:

    5.7.1 **LP I, LP II and LP III**

    5.7.2 The Joint Liquidators are aware that LBH issued subordinated notes to LP I, LP II and LP III in return for the payment of the tier 1 regulatory capital that had been raised by the issuance of the Securities by LP I, LP II and LP III. The Partnerships may have a claim for payment of a dividend by LBH in relation to the subordinated notes that were issued and a protective claim has been filed in the estate of LBH.

    5.7.3 LBH also provided a subordinated guarantee to the holders of the Securities. The wording of the subordinated guarantee included in the prospectus suggests that the holders of the Securities have subordinated guarantee claims against LBH, although it is unclear how those claims would be made in practice. Holders of the securities should take their own independent legal advice in relation to the subordinated guarantee and any claims they may wish to make. The Joint Liquidators' initial assessment is that the Company has no separate right to make a claim pursuant to the subordinated guarantee and it is the holders of the Securities that have locus to enforce the subordinated guarantee.

    5.7.4 **LP IV and LP V**

    5.7.5 The Joint Liquidators are aware that LBHI issued subordinated notes to LP IV and LP V in return for the payment of the tier 1 regulatory capital that had been raised by the issuance of the Securities by LP IV and LP V. The Partnerships may have a claim for payment of a dividend by LBHI in relation to the subordinated notes that were issued. This is a matter that the Joint Liquidators are investigating further.

    5.7.6 LBHI also provided a subordinated guarantee to the holders of the Securities. Please see paragraph 5.7.3 above.

5.8 The values of any claims that the Partnerships may have are yet to be quantified and the prospect of recovering any funds pursuant to any claims is very uncertain.

## 6 JOINT LIQUIDATORS' STRATEGY WITH REGARD TO WINDING UP THE PARTNERSHIPS

6.1 The Joint Liquidators' preliminary strategy is as follows:

6.1.1 Investigate the Partnerships' entitlement to the Funds.

6.1.2 Determine who is entitled to receive a share of any assets belonging to the Partnerships. LBHI has indicated that it might make a claim to the Partnerships' assets (including the Funds) but has not yet fully articulated the basis for such a claim. The Joint Liquidators will in due course investigate and consider any claim that LBHI might make.

6.1.3 Liaise with the former administrator of the Partnerships, Law Debenture Trust Corporation Plc ("**LDTC**") in order to take control of all relevant documents in relation to the Partnerships that are in its possession to ensure that the Joint Liquidators hold a complete suite of documentation. This work stream is already at an advanced stage and the Joint Liquidators now have control of relevant documents relating to the structure of the Partnerships and Securities (although it is clear the documents do not form a complete set).

6.1.4 Liaise with the Company's and the Partnerships' former accountants (Ernst & Young) and former lawyers (Allen & Overy) to determine the scope of matters upon which the former professional advisors acted and whether they hold any information relevant to the winding up of the Partnerships. This work stream is in progress.

6.1.5 Maintain an ongoing review of the position concerning the protective claims that have been filed in the estates of LBH in relation to the subordinated notes issued by LBH to LP I, LP II and LP III in order to determine whether any dividend may be received in respect of those claims.

6.1.6 Investigate whether any claims can be filed against LBHI in relation to the subordinated notes issued to LP IV and LPV by LBHI.

## 7 PROFESSIONAL COSTS

7.1 The Court directed that the Joint Liquidators should explain to holders of the Securities the costs incurred to date and the basis upon which costs will be incurred in the future with regard to the winding up of the Partnerships.

7.2 The professional costs and expenses incurred on a time costs basis are as follows:

7.2.1 <u>Joint Liquidators (RSM)</u>

7.2.2 Time costs: £195,815 plus VAT and disbursements have been incurred to date, of which £69,110 relates to time costs incurred in the period leading up to the Joint Liquidators' appointment on 28 February 2017.

7.2.3 <u>Charles Russell Speechlys LLP (solicitors for the Joint Liquidators)</u>

7.2.4 Time costs: £170,965 plus VAT and disbursements

7.2.5 Disbursements: Leading Counsel for the Joint Liquidators £72,125 plus VAT

7.2.6 <u>Dentons UKMEA LLP (Solicitors for Deutsche Bank AG) (subject to the Joint Liquidators' assessment with regard to the reasonableness of those fees)</u>

7.2.7 Time costs: £105,880.84 plus VAT (up to 15 March 2017 as per proof of debt form).

7.2.8 Disbursements: £6,960.45 plus VAT where appropriate (up to 15 March 2017 as per proof of debt form).

7.2.9 <u>Weil Gotshal & Manges (Solicitors for LBHI) (subject to the Joint Liquidators' assessment with regards to the reasonableness of those fees)</u>

7.2.10 Time costs: USD 97,795.35 (up to 11 April 2017 as per proof of debt form).

7.3 The professional costs and disbursements outlined above relate to necessary steps that have been taken to place the Company into liquidation and begin the process of winding up the affairs of the Partnerships. Additional costs are expected to be incurred with respect to the distribution of any amounts to holders of Securities.

7.4 The professional costs and disbursements will be paid from the Partnerships' assets in accordance with the order of the Court.

7.5 The hourly rates of those expected to be involved in this matter going forward are as follows (figures quoted exclude VAT which will be payable at the current rate of 20%):

7.6 <u>RSM Restructuring Advisory LLP</u>

7.7 Partner (Joint Liquidators)        £545

7.8 Manager                            £325

7.9 Senior Administrator               £220

7.10 <u>Charles Russell Speechlys LLP</u>

7.11 Partner                           £545

| | | |
|---|---|---|
| 7.12 | Senior Associate | £385 |
| 7.13 | Legal Executive | £195 |
| 7.14 | Trainees | £180 |
| 7.15 | <u>Counsel</u> | |
| 7.16 | Queen's Counsel | £650 |

## 8  FURTHER UPDATE NOTICES TO HOLDERS OF SECURITIES

8.1  The Joint Liquidators' initial view is that they will provide updates to holders of Securities as and when there are significant matters to report and otherwise routinely on a 6-monthly basis (or such other interval as the Joint Liquidators may determine in the future) by the following methods:

8.1.1  to the extent possible, notice distributed via the clearing systems relevant to the Securities for each Partnership (i.e. either the Euroclear system or Clearstream system); and

8.1.2  to the extent possible, notice distributed via the relevant exchanges upon which the Securities for each Partnership are listed.

## 9  INFORMAL INVESTORS' COMMITTEE

9.1  We have been approached by one of the holders of the Securities (which we understand holds Securities issued by each of the Partnerships) and they have requested that an informal investors' committee is established.

9.2  The Joint Liquidators are minded to consider the appointment of such a committee. If you are an investor and you are interested in becoming a member of an informal investors' committee please register your interest by contacting Samantha Hawkins and verifying your holding of the Securities in the manner set out at paragraph 10.2 below.

9.3  Any such informal committee would be non-binding upon the Joint Liquidators and established only as an additional means of liaising with investors in relation to all of the Partnerships and providing a forum for discussing and providing feedback to the Joint Liquidators in relation to the various issues arising. The provision of information to any informal committee would not extend beyond information that investors would ordinarily expect to receive via the written notices that the Joint Liquidators propose to provide as set out in paragraph 8 above.

9.4  As the Joint Liquidators have prepared this notice on a composite basis (i.e. it refers to all Partnerships), their intention is that any informal investor committee should also exist on a composite basis instead of separate committees for each of the Partnerships.

10  **CONTACTS**

10.1  Holders of the Securities who have queries concerning anything mentioned in this notice may contact the Joint Liquidators as follows:

    10.1.1  <u>Post:</u> RSM Restructuring Advisory LLP, 25 Farringdon Street, London, EC4A 4AB

    10.1.2  <u>E-mail:</u> Samantha.Hawkins@rsmuk.com

10.2  Please note that in any correspondence with the Joint Liquidators, holders of the Securities will be required to verify their holdings of the Securities to the Joint Liquidators by:

    10.2.1  the holders sending an e-mail to the Joint Liquidators c/o Samantha Hawkins using the email address shown at paragraph 10.1.2 above and referencing "LB GP No. 1 Ltd (In Liquidation)" and the ISIN of the Securities in the subject line and disclosing the identity of the holder, the identity of the Partnerships or Partnership that issued the Securities, the nominal amount of each ISIN held by the holder and the details of the person(s) who shall represent the holder; and

    10.2.2  the holders providing (by e-mail to the Joint Liquidators c/o Samantha Hawkins) a letter, screen shot or other proof of holding (in each case from Euroclear/Clearstream and their custodian (if applicable)) verifying each of its holdings in the Securities and disclosing the following information:

        (a)  ISIN

        (b)  Account number

        (c)  Participant name

        (d)  Nominal amount

        (e)  Beneficial Holder Details (including e-mail address)

Dated: 23 June 2017

Signed: *[signature]*

**This notice is given by**
**Bruce Alexander Mackay**
**RSM Restructuring Advisory LLP**
**as Joint Liquidator of LB GP No.1 Ltd**