# EXHIBIT B

*THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT IS OF INTEREST TO THE REGISTERED AND BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO BENEFICIAL OWNERS OF THE SECURITIES IN A TIMELY MANNER.*

**LEHMAN BROTHERS UK CAPITAL FUNDING III LP ("LP III")**

**EUR 500,000,000 FIXED/FLOATING RATE ENHANCED CAPITAL ADVANTAGED PREFERRED SECURITIES ("LP III PREFERRED SECURITIES")**

**ISIN XS0243852562**

13 November 2017

**Notice to Holders**

**Liquidation of LB GP No.1 Ltd ("the Company") and implications for holders of LP III Preferred Securities**

1 **PRELIMINARY INFORMATION**

1.1 THIS NOTICE IS IMPORTANT AND REQUIRES YOUR IMMEDIATE ATTENTION.

1.2 If you are in any doubt as to the action you should take, you are recommended to seek your own financial, legal or other advice immediately from your stockbroker, bank manager, solicitor, accountant or other appropriately authorised independent financial adviser.

1.3 If you have sold or otherwise transferred your entire (or any part of your) holding(s) of the LP III Preferred Securities you should immediately forward this notice to the purchaser or transferee or to the stockbroker, bank or other agent through whom the sale or transfer was effected for transmission to the purchaser or transferee.

1.4 This notice contains certain information potentially relating to the future outlook for LP III. Although we believe any expectations are based on reasonable assumptions, any statements about the future outlook for LP III may be influenced by factors that could cause actual outcomes and results to be materially different. As a result, you should not rely on any forward-looking statements. Any forward-looking statements included in this notice are made only as of the date of this notice, and except as otherwise required by law, we undertake no obligation to publicly update or revise any such forward-looking statements to reflect subsequent events or circumstances.

2 **QUALIFICATION STATEMENT**

2.1 This notice has been prepared using information obtained by the Joint Liquidators of the Company whilst completing preliminary investigations and preliminary and limited (on account of the paucity of current financial information) due diligence. The Joint Liquidators have carried out no audit or other verification work.

2.2 This notice provides an update regarding the progress of the Liquidation. This notice should not be used for any other purpose, or to inform any investment decision in relation to any debt or financial interest in LP III and the Partnerships.

2.3 The information set out in this notice is being distributed to all holders of LP III Preferred Securities at the same time and is also being published via stock exchange announcements and Bloomberg such that the information set out in this notice does not constitute material non-public information.

2.4 Neither the Joint Liquidators nor RSM Restructuring Advisory LLP accept any liability whatsoever arising as a result of any decision or action taken or refrained from as a result of information contained in this notice.

2.5 This notice should be read in conjunction with the previous Notice to the Holders issued by the Joint Liquidators on 23 June 2017, a copy of which is available on request.

3 **BACKGROUND**

3.1 Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP were appointed as joint liquidators ("**the Joint Liquidators**") of the Company on 28 February 2017 pursuant to a special resolution of the Company's sole member, Lehman Brothers Holdings Inc. ("**LBHI**"). The appointment of the Joint Liquidators was ratified by the Company's creditors at a meeting of creditors held on 12 April 2017.

3.2 The appointment of the Joint Liquidators followed a Court process in which the Company was restored to the Register of Companies with effect from 3 February 2017. The restoration process and a number of related Court Orders that flowed from it were set out in the Joint Liquidators' Notice to Holders dated 23 June 2017 ("**the June 2017 Notice**").

3.3 The Company is part of the Lehman Investment Banking Group ("**the Group**"). It operated from premises at 25 Bank Street, London, E14 5LE prior to the collapse of the Group in September 2008.

3.4 Prior to the collapse of the Group in 2008, a funding structure was developed by the Group to fund, on a subordinated basis, capital to be made available to Lehman Brothers Holdings Plc (in administration) ("**LBH**") and LBHI in respect of regulatory capital.

3.5 The funding structure was established through five limited partnerships as follows:

    3.5.1 Lehman Brothers UK Capital Funding LP ("**LP I**")

    3.5.2 Lehman Brothers UK Capital Funding II LP ("**LP II**")

    3.5.3 Lehman Brothers UK Capital Funding III LP ("**LP III**")

    3.5.4 Lehman Brothers UK Capital Funding IV LP ("**LP IV**")

    3.5.5 Lehman Brothers UK Capital Funding V LP ("**LP V**"),

(together "**the Partnerships**" or individually a "**Partnership**" as the context requires).

3.6  The Company acted as a general partner of each of the Partnerships.

3.7  The Partnerships formed the structure of the capital funding arrangement.

3.8  The purpose of the Partnerships was to raise regulatory capital for LBH and LBHI by issuing securities to investors. The securities issued by the Partnerships were as follows (definitions taken from the Prospectus for each of the Partnerships):

- 3.8.1  **LP I** – EUR 225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-voting, Non-Cumulative Perpetual Preferred Securities;

- 3.8.2  **LP II** – EUR 250,000,000 Euro Fixed Rate Guaranteed Non-voting, Non-cumulative Perpetual Preferred Securities;

- 3.8.3  **LP III** – EUR 500,000,000 Fixed / Floating Rate Enhanced Capital Advantaged Preferred Securities;

- 3.8.4  **LP IV** – EUR 200,000,000 Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities; and

- 3.8.5  **LP V** – USD 500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities.

3.9  Reference hereafter to "**Securities**" relates to any one or more (as the context requires) of the above investments issued by the Partnerships.

3.10  Although this specific notice is addressed and has been distributed (to the extent possible) to the holders of the LP III Preferred Securities with ISIN XS0243852562 issued by LP III, this notice contains information relevant to each of the Partnerships and is therefore to be read as a composite update to enable holders of Securities issued by each of the Partnerships to understand the position applicable to all of the Partnerships. Separate notices (in materially the same form) have been distributed to holders of Securities issued by each of the Partnerships.

3.11  The majority of the funds raised by the Partnerships from the issue of the Securities were applied in purchasing subordinated note investments as follows:

- 3.11.1  LP I, LP II and LP III purchased subordinated notes from LBH.

- 3.11.2  LP IV and LP V purchased subordinated notes from LBHI.

3.12  The Joint Liquidators understand that the subordinated notes constituted the majority of the assets held by each Partnership.

3.13  The Joint Liquidators also understand that in relation to LP III, LP IV and LP V, a small proportion of the funds raised were invested in certain money market funds which post demise of the Group were held by or under the control of LBHI (addressed in further detail in section 4 below).

3.14 The funding structures operated by the Partnerships were unregulated collective investment schemes ("**CIS**"), the operation of which is regulated by the Financial Conduct Authority ("**the FCA**"). The FCA has confirmed that it has no objection to the Joint Liquidators winding up the Partnerships and relying upon the exemption set out in Article 72H of the Financial Services and Markets Act 2000 (Regulated Activities) Order 2001 ("**RAO**").

4  **THE PARTNERSHIPS' ASSETS**

**CASH**

4.1 At the time of the Joint Liquidators' appointment they were informed by LBHI in writing that it was holding the following approximate cash balances on behalf of LP III, LP IV and LP V in fixed term deposit accounts which, upon expiry of the fixed terms in May 2017, would be paid to the Joint Liquidators for the benefit of LP III, LP IV and LP V:

  4.1.1   LP III    €12m

  4.1.2   LP IV    €10m

  4.1.3   LP V    US$26m

4.2 The Joint Liquidators' investigations indicate that the cash balances held by LBHI related to the money market investments referred to in paragraph 3.13 above. Hereinafter, the cash sums that were held by LBHI are referred to as "**the Funds**".

4.3 It was the Joint Liquidators' intention (but only once the Funds were under their control and fully released to the Joint Liquidators by LBHI) to disclose the value and apportionment of the Funds (as between LP III, LP IV and LP V) to holders of the Securities. Accordingly, the details in paragraph 4.1 above were not revealed in the June 2017 Notice.

4.4 Despite LBHI's initial written confirmation in February 2017 that upon expiry of the fixed term deposit accounts (in May 2017) the Funds would be paid to the Joint Liquidators, on the maturity of the fixed term deposit accounts LBHI did not pay the Funds to the Joint Liquidators. This was on the basis that LBHI was (contrary to its earlier position) investigating whether in fact the Funds were the property of the relevant Partnerships.

4.5 Based upon the prospectuses for the Securities, the partnership agreements and audited accounts for LP III, LP IV and V it has always been the Joint Liquidators' position that the Funds held by LBHI belonged to LP III, LP IV and LP V (in the proportions set out above) and that no part of the Funds related to LP I and/or LP II.

4.6 LBHI's London based legal team advised that LBHI was reviewing all documentation in relation to the Funds to determine whether in fact LBHI was entitled to retain some or all of the Funds. Despite repeated requests for LBHI to confirm its position, no substantive explanation was provided for the basis upon which LBHI believed it could retain the Funds.

4.7 On account of LBHI's refusal to pay the Funds to the Joint Liquidators, the Joint Liquidators and their legal team reviewed in detail the contemporaneous documentation relating to the Funds in relation to LP III, LP IV and LP V and compiled evidence to support the respective Partnerships' entitlement to the Funds.

4.8 After repeated requests by the Joint Liquidators for LBHI to explain its position, LBHI eventually agreed to pay the Funds to the Joint Liquidators for the benefit of LP III, LP IV and LP V and the following amounts were received on the following dates:

 4.8.1 LP III €12.8m 5 September 2017

 4.8.2 LP IV €10.8m 13 October 2017

 4.8.3 LP V US$26.7m 12 October 2017

4.9 LBHI raised the possibility that the Joint Administrators of LBH may have a claim to the LP III Funds. However, we understand that the LBH Joint Administrators provided confirmation directly to LBHI that LBH had no such claim.

4.10 LBHI only agreed to transfer the Funds if the Joint Liquidators:

 4.10.1 acknowledged that the payment was without prejudice to any potential claims LBHI or LB Investment Holdings Ltd (which was the "**Preferential Limited Partner**" for each of the Partnerships which LBHI has applied to Court to be restored to the Register of Companies) may have in respect of the Funds; and

 4.10.2 agreeing not to make distributions of the Funds without receiving (i) confirmation from LBHI and the Preferential Limited Partner that they do not have any claims against the Funds; or (ii) an order from the Court that LBHI and the Preferential Limited Partner do not have any claims against the Funds following an application to the Court on notice to LBHI and the Preferential Limited Partner.

4.11 The Joint Liquidators agreed to those conditions in order to receive the Funds as the alternative was to issue court proceedings seeking payment of the Funds (which remains a possibility if the matter cannot be agreed with LBHI and the Preferential Limited Partner in due course). LBHI and the Preferential Limited Partner have not fully articulated the basis and quantum of their potential claims, but we expect them to do so in due course.

**POTENTIAL CLAIMS AGAINST THIRD PARTIES (SUBORDINATED NOTES)**

**LP I, LP II and LP III**

4.12 LBH issued subordinated notes to LP I, LP II and LP III in return for the payment of the regulatory capital that had been raised by the issuance of the Securities by LP I, LP II and LP III. These three Partnerships may have a claim for payment of a dividend by LBH in relation to the subordinated notes that were issued and claims have been filed in the administration of LBH on behalf of LP I, LP II and LP III by the Joint Liquidators.

4.13   The Joint Liquidators have been liaising with the Joint Administrators of LBH in relation to the claims submitted on behalf of LP I, LP II and LP III and current indications are that the dividend prospects in respect of the claims made on behalf of LP I, LP II and LP III relating to the subordinated notes are dependent upon several variables, which (on a non-exhaustive basis) are summarised below:

   4.13.1   **Waterfall litigation**: The various aspects of the Lehman waterfall litigation directly affect the level of surplus funds expected to be distributed within the Group, most particularly from Lehman Brothers International (Europe) ("**LBIE**") (in administration). The Joint Liquidators understand this in turn may impact upon the recoveries made in the LBH administration estate and the level of funds, if any, available to LBH's subordinated creditors.

   4.13.2   **Priority of subordinated claims against LB Holdings Intermediate 2 Limited ("LBHI2")**:

   (a)   The value of LBH's estate will be significantly affected by the level of dividends flowing through the waterfall to LBHI2.

   (b)   If and when the Joint Administrators of LBHI2 have paid all costs, senior creditors and statutory interest, any surplus funds may be available to distribute to LBHI2's subordinated creditors. The Joint Liquidators understand that there are two subordinated creditors: (1) Lehman Brothers Holdings Scottish LP 3 ("**SLP3**"); and (2) LBH. The relative seniority of the two claims remains to be determined.

   4.13.3   **Priority of subordinated claims against LBH**:

   (a)   If LBH has a senior or pari-passu claim against LBHI2, it may be possible that sufficient funds will flow into LBH to allow the Joint Administrators of LBH to discharge all costs, senior unsecured liabilities and statutory interest. Any surplus funds may then be available for distribution to LBH's subordinated creditors.

   (b)   The Joint Liquidators understand that there are two groups of subordinated creditors in relation to LBH: (1) LBHI; and (2) LP I, LP II and LP III. The relative seniority of the two groups of claims remains to be determined.

4.14   The Joint Liquidators were invited (and have agreed) to join LBH's creditors' committee ("**the LBH Committee**") and represent the interests of LP I, LP II and LP III and hence the holders of the Securities for those Partnerships. The primary purpose of the Joint Liquidators joining the LBH Committee is so that the Joint Liquidators can be involved specifically in matters relating to the determination of the priority of the subordinated claims explained above. The next LBH Committee meeting (and the first to be attended by the Joint Liquidators) will be held on 30 November 2017.

4.15   In the meantime, the Joint Liquidators have only very recently been provided with a hard copy dataset of core documents said to be relevant to the determination of the

subordinated claims. These documents have been provided by the solicitors acting for the Joint Administrators of LBHI2 and LBH. The Joint Liquidators have been invited to provide their view of the priority of the two levels of subordinated claims and the Joint Liquidators are liaising with the Joint Administrator of LBHI2 and LBH in relation to that.

4.16  To the extent that the priority of the subordinated claims cannot be agreed between the relevant parties, the LBHI2/LBH Joint Administrators have advised the Joint Liquidators that they anticipate issuing court proceedings to determine any disputed priority issues relating to subordinated debts relating to LBHI2 and LBH. The Joint Liquidators anticipate being a party to proceedings as respondents in order to make suitable representations on behalf of LP I, LP II and LP III.

**LP IV and LP V**

4.17  It was LBHI and not LBH that issued subordinated notes to LP IV and LP V in return for the payment of the regulatory capital that was raised by the issuance of the Securities by LP IV and LP V. The Partnerships may have a claim for payment of a dividend by LBHI in relation to the subordinated notes that were issued. This is a matter that the Joint Liquidators are investigating further. However it is the Joint Liquidators' understanding that LBHI's subordinated debt holders are currently not expected to receive any distribution.

**POTENTIAL CLAIMS AGAINST THIRD PARTIES (SUBORDINATED GUARANTEE)**

4.18  LBH also provided a subordinated guarantee to the holders of the Securities in relation to LP I, LP II and LP III. The wording of the subordinated guarantee included in the prospectus suggests that the holders of the Securities have subordinated guarantee claims against LBH, although it is unclear how those claims would be made in practice. Holders of the Securities should take their own independent legal advice in relation to the subordinated guarantee and any claims they may wish to make. The Joint Liquidators' initial assessment is that the Company has no separate right to make a claim pursuant to the subordinated guarantee and it is the holders of the Securities that have locus to enforce the subordinated guarantee.

4.19  LBHI also provided a subordinated guarantee to the holders of the Preferred Securities in relation to LP IV and LP V. Please see paragraph 4.18 above.

5  **POTENTIAL SUBSTITUTION OF SECURITIES FOR ALL PARTNERHSIPS**

5.1  The Joint Liquidators are aware that in certain circumstances (referred to in the relevant documentation for the Partnerships as a "Trigger Event" and broadly covering an insolvency and/or reorganisation of LBHI or capital inadequacy) that provided the relevant "Supervisory Authority" does not object, the Company shall take all reasonable steps to cause the substitution of the Securities with fully-paid non-cumulative preferred stock issued directly by LBHI.

5.2  LBHI is subject to Chapter 11 (reorganisation proceedings) of the US Bankruptcy Code and LBHI's position is that a "Trigger Event" has occurred.

5.3 The Law Debenture Trust Corporation Plc (which acted as the administrator of the Partnerships prior to the Company being struck off in 2010) has provided the Joint Liquidators with records relating to the Company and the Partnerships. Included within the records was a letter from the former directors of the Company to LBHI which advised that on 15 September 2008 a "Trigger Event" had occurred and requested that LBHI issue the substituted preferred stock. This was not acted upon by LBHI at that time.

5.4 At this stage the substitution has not taken place and LBHI has very recently advised the Joint Liquidators that it is going to apply for permission from the US Bankruptcy Court (before the end of November) to issue fully paid up substituted preferred stock and that the Joint Liquidators will be provided with a copy of LBHI's Court motion in that regard once filed.

5.5 The substitution process is subject to any objections that may be raised by the relevant Supervisory Authority (i.e. the FCA and/or Prudential Regulation Authority ("PRA") in the UK) and LBHI has confirmed that it has not yet communicated with the relevant Supervisory Authority. The Joint Liquidators' position on the authority point is that with regards to the UK, confirmation from the FCA and/or PRA that they have no objections should be sought before substitution can take effect.

5.6 The Joint Liquidators have repeatedly requested that LBHI explains its position in relation to the Trigger Event and substitution. The proposed application by LBHI to the US Bankruptcy Court for permission to issue fully paid up substituted preferred stock is a very recent development and LBHI's intentions were only outlined to the Joint Liquidators in the week commencing 6 November 2017, despite repeated requests by the Joint Liquidators for LBHI to explain its position since July 2017.

5.7 The Joint Liquidators are aware that the Trigger Event and proposed substitution have potentially fundamental implications for holders of Securities and this is a matter that the Joint Liquidators are reviewing very closely in conjunction with their legal advisors.

5.8 Depending on how this issue develops it may be appropriate for the holders of the Securities to seek their own legal representation, individually or collectively.

6 **PROFESSIONAL COSTS**

6.1 The Court directed that the Joint Liquidators should explain to holders of the Securities the costs incurred to date and the basis upon which costs will be incurred in the future with regard to the winding up of the Partnerships.

6.2 The professional costs and expenses incurred to date on a time costs basis are as follows:

    6.2.1 <u>Joint Liquidators (RSM)</u>

    6.2.2 Time costs: £301,295 plus VAT and disbursements have been incurred to 9 November 2017, of which £69,110 relates to time costs incurred in the period leading up to the Joint Liquidators appointment on 28 February 2017.

6.2.3 £235,013 plus VAT and disbursements of £2,335 have been paid to date.

6.2.4 <u>Charles Russell Speechlys LLP (solicitors for the Joint Liquidators)</u>

6.2.5 Time costs: £234,818 plus VAT and disbursements have been incurred to 9 November 2017. Of this sum £224,213 plus VAT and disbursements has been invoiced and £174,739 plus VAT and disbursements has been paid.

6.2.6 Disbursements: Leading Counsel for the Joint Liquidators £81,700 plus VAT of this sum £72,125 plus VAT has been paid.

6.2.7 <u>Dentons UKMEA LLP (Solicitors for Deutsche Bank AG) (subject to the Joint Liquidators' assessment with regard to the reasonableness of those fees)</u>

6.2.8 Time costs: £105,880.84 plus VAT (up to 15 March 2017 as per proof of debt form). As yet these costs have not been agreed and discharged.

6.2.9 Disbursements: £6,960.45 plus VAT where appropriate (up to 15 March 2017 as per proof of debt form).

6.2.10 <u>Weil Gotshal & Manges (Solicitors for LBHI) (subject to the Joint Liquidators' assessment with regards to the reasonableness of those fees)</u>

6.2.11 Time costs: USD 97,795.35 (up to 11 April 2017 as per proof of debt form). As yet these costs have not been agreed and discharged.

6.2.12 Agents costs: It should be noted that additional costs have been incurred and will be discharged in connection with the provision of information to the holders of the Securities.

6.3 The professional costs and disbursements outlined above relate to necessary steps that have been taken to place the Company into liquidation and begin the process of winding up the affairs of the Partnerships.

6.4 The professional costs and disbursements have been (and will continue to be) paid from the Partnerships' assets in accordance with the order of the Court. To date the costs have been paid and apportioned as follows:

6.4.1 Costs relating to all Partnerships have been paid from the Funds and apportioned between LP III, LP IV and LP V. To date, the majority of the costs incurred have been relevant to all Partnerships. To the extent any further funds are realised in relation to LP I and LP II then the apportionment of costs will be adjusted accordingly so that no one (or more) Partnerships disproportionately bears the costs of the winding-up of the Partnerships collectively.

6.4.2 Costs specifically relating to LP I, LP II and LP III in relation to the claims against LBH will be paid from LP III's share of the Funds as LP I and LP II have no cash assets. LP IV and LP V have not contributed to these costs on the basis that the work undertaken does not relate to LP IV and V. To the

extent any further funds are realised in relation to LP I and LP II then the apportionment of costs can be adjusted accordingly so that LP III does not disproportionately bear the costs of issues relating equally to LP I, LP II and LP III.

6.5   The hourly rates of those expected to be involved in this matter going forward are as follows (figures quoted exclude VAT which will be payable at the current rate of 20% where appropriate):

6.6   RSM Restructuring Advisory LLP

| | | |
|---|---|---|
| 6.7 | Partner (Joint Liquidators) | £545 |
| 6.8 | Manager | £325 |
| 6.9 | Senior Administrator | £220 |

6.10  Charles Russell Speechlys LLP

| | | |
|---|---|---|
| 6.11 | Partner | £545 |
| 6.12 | Senior Associate | £385 |
| 6.13 | Legal Executive | £195 |
| 6.14 | Trainees | £180 |

6.15  Counsel

| | | |
|---|---|---|
| 6.16 | Queen's Counsel | £650 |

7   **FURTHER UPDATE NOTICES TO HOLDERS OF SECURITIES**

7.1   The Joint Liquidators will continue to provide updates to holders of Securities as and when there are significant matters to report and otherwise routinely on a 6-monthly basis (or such other interval as the Joint Liquidators may determine in the future) by the following methods:

   7.1.1   to the extent possible, notice distributed via the clearing systems relevant to the Securities for each Partnership (i.e. either the Euroclear system or Clearstream system); and

   7.1.2   to the extent possible, notice distributed via the relevant exchanges upon which the Securities for each Partnership are listed.

8   **INFORMAL INVESTORS' COMMITTEE**

8.1   The Joint Liquidators have been approached by several holders of the Securities and they have requested that an informal investors' committee ("IIC") is established.

8.2  The Joint Liquidators now wish to proceed with the constitution of an IIC and will shortly be writing to those holders of Securities who have registered their interest regarding the formation of such a committee.

8.3  It is currently envisaged that there will be two IICs, one which will include holders of Securities in respect of LP I, LP II and LP III and a second committee with holders of Securities in respect of LP IV and LP V. It is proposed to split the IICs in this way to maximise the efficiency of dealing with issues that are specific to certain Partnerships or groups of Partnerships, for example the LBH subordinated notes, which only relate to LP I, LP II and LP III.

8.4  The members of the IICs will be selected on the basis of the size of their holdings, and the Joint Liquidators anticipate that the maximum number of committee members will be between three and five.

8.5  If you hold Securities and you are interested in becoming a member of an IIC and you have not already registered your interest, please do so by contacting Samantha Hawkins using the details provided at 9.1.2 below, and verifying your holding of the Securities in the manner set out at paragraph 9.2.2 below.

8.6  Please be reminded that the IICs have no statutory powers or locus and will be non-binding upon the Joint Liquidators. They are to be established only as an additional means of liaising with investors in relation to the Partnerships and providing a forum for discussing and providing feedback to the Joint Liquidators in relation to the various issues arising. The provision of information to any IIC would not extend beyond information that investors would ordinarily expect to receive via the written notices that the Joint Liquidators propose to provide as set out in paragraph 7 above.

9   **CONTACTS**

9.1  Holders of the Securities who have queries concerning anything mentioned in this notice may contact the Joint Liquidators as follows:

   9.1.1   Post: RSM Restructuring Advisory LLP, 25 Farringdon Street, London, EC4A 4AB

   9.1.2   E-mail: Samantha.Hawkins@rsmuk.com

9.2  Please note that in any correspondence with the Joint Liquidators, holders of the Securities will be required to verify their holdings of the Securities to the Joint Liquidators by:

   9.2.1   the holders sending an e-mail to the Joint Liquidators c/o Samantha Hawkins using the email address shown at paragraph 9.1.2 above and referencing "LB GP No. 1 Ltd (In Liquidation)" and the ISIN of the Securities in the subject line and disclosing the identity of the holder, the identity of the Partnerships or Partnership that issued the Securities, the nominal amount of each ISIN held by the holder and the details of the person(s) who shall represent the holder; and

9.2.2   the holders providing (by e-mail to the Joint Liquidators c/o Samantha Hawkins) a letter, screen shot or other proof of holding (in each case from Euroclear/Clearstream and their custodian (if applicable)) verifying each of its holdings in the Securities and disclosing the following information:

(a) ISIN

(b) Account number

(c) Participant name

(d) Nominal amount

(e) Beneficial Holder Details (including e-mail address)


Dated:    13 November 2017

Signed: ..................................

**This notice is given by**
**Bruce Alexander Mackay**
**RSM Restructuring Advisory LLP**
**as Joint Liquidator of LB GP No.1 Ltd**

WKS/281577591.1WKS/281577591.1