# EXHIBIT C

Rule 2.33                                                                    Form 2.17B

The Insolvency Act 1986

# Statement of administrator's proposals

# 2.17B

| Name of Company | Company Number |
|---|---|
| LB Holdings Intermediate 2 Limited | 05957878 |

| In the | Court case number |
|---|---|
| High Court of Justice, Chancery Division Companies Court *(full name of court)* | 429 of 2009 |

(a) Insert full name(s) and address(es) of administrator(s)

I / We (a) Derek Anthony Howell, Anthony Victor Lomas, Steven Anthony Pearson and Michael John Andrew Jervis of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT

attach a copy of *my / our proposals in respect of the administration of the above company.

A copy of these proposals was sent to all known creditors on

* Delete as applicable

(b) Insert date

(b) 6 March 2009

Signed 

Joint / Administrator(s)

Dated  6 March 2009

**Contact Details:**

You do not have to give any contact information in the box opposite but if you do, it will help Companies House to contact you if there is a query on the form. The contact information that you give will be visible to searchers of the public record

| Daisy Bassila | |
|---|---|
| PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT | |
| | Tel  020 7583 5000 |
| DX Number | DX Exchange |

have completed and signed this form please send it to the Registrar of Companies at:

es House, Crown Way, Cardiff, CF14 3UZ          DX 33050 Cardiff

TUESDAY

*ALZ5Y816*

A42          10/03/2009          56
COMPANIES HOUSE

# LB Holdings Intermediate 2 Limited - in Administration

## Joint Administrators' Proposals for Achieving the Purpose of the Administration

## 3 March 2009



COMPANIES HOUSE

# Contents

| **Section** | | **Page** |
|---|---|---|
| Section 1: | Purpose of this document | 2 |
| Section 2: | The circumstances giving rise to the Administrators' appointment | 3 |
| Section 3 | An overview of the Company's business and structure and the Administrators' actions to date | 4 |
| Section 4: | Proposals for achieving the purpose of the Administration | 5 |
| Section 5: | Financial information | 7 |
| Section 6: | Statutory and other information | 9 |
| Appendix A: | Common questions and answers – | 10 |
| | Part I The initial meeting of creditors and the creditors' committee, | |
| | Part II Creditors' guide to administrators' fees (in accordance with Statement of Insolvency Practice no. 9) | |
| Appendix B: | The Administrators' charging and disbursements recovery policy | 16 |

PricewaterhouseCoopers LLP

# Section 1: Purpose of this document

## Introduction

AV Lomas, SA Pearson, MJA Jervis and I were appointed as Administrators (hereinafter referred to collectively as "the Administrators" or the "Joint Administrators") of LB Holdings Intermediate 2 Limited (the "Company" or "LBHI2"), by the directors of the Company on 14 January 2009.

The purpose of the Administration is to realise the Company's business and assets in a manner which will result in a more advantageous realisation than would be achieved on a winding up (a formal liquidation, as defined in the Insolvency Act 1986 ("IA86")). The powers and duties of the Joint Administrators are set out in the IA86, as amended by the 2002 Enterprise Act and the related rules. Each of the Administrators of LBHI2 is a partner in the UK firm of PricewaterhouseCoopers LLP ("PwC") and a licensed Insolvency Practitioner, regulated by the Institute of Chartered Accountants in England and Wales.

This document and the appendices are provided to you in accordance with paragraph 49, Schedule B1 of the IA86. Within it we set out:

- the background to the Administration, including the events immediately leading up to the appointment of Administrators;

- an overview of the Company's business and structure;

- the manner in which the Company's affairs are being managed, including details of the steps taken to date and the Administrators' proposed actions;

- the Administrators' proposals, in accordance with the IA86;

- comments on the availability of financial information;

- statutory information regarding the Company;

- information regarding the meeting of

creditors and the creditors' committee; and

- information regarding the administrators' fees and disbursements.

## Creditors' meeting

The creditors' meeting for LBHI2 will be conducted by correspondence due to the limited number of creditors of the Company.

Creditors will be bound by the Administrators' proposals if such proposals are approved by the requisite majority. It is therefore important that you read this document carefully and return the postal resolutions on the enclosed Form 2.25B to the address stated thereon, by 12:00pm on Monday 23 March 2009.

Creditors are requested to vote upon the Administrators' proposals, on whether a creditors' committee should be formed and, if no committee is formed, to fix the Administrators' remuneration. Details of the Administrators' timecosts to 15 February 2009 are provided in Appendix B, together with an explanation of the time charging and disbursement recovery policy.

A creditor is entitled to propose modifications to these proposals for the Administrators' and creditors' consideration.

## Future reporting

At six monthly intervals further reports will be provided to the creditors of LBHI2 , setting out the progress that has been made together with the Company's receipts and payments for each six monthly period.

Signed:

**Derek Anthony Howell**
*Joint Administrator*
*LB Holdings Intermediate 2 Limited*

# Section 2: The circumstances giving rise to the Administrators' appointment

**Background information**

LBHI2 is part of the Lehman Brothers group and, more specifically, a subsidiary of the Lehman Brothers Holdings PLC - in administration ("LBH") sub-group and the parent company of Lehman Brothers International (Europe) - in administration ("LBIE").

The Company's main assets are intercompany debtors and tax losses, whilst its main liabilities are to intercompany creditors and in particular, to LBIE as a result of its shareholding in an unlimited liability company.

**Events immediately preceding the Administrators' appointment**

Following the insolvency of Lehman Brothers Holdings Inc ("LBHI") and the appointment of administrators to LBIE, the administrators of LBIE undertook a detailed review of the Lehman Group of companies within the UK.

As part of this review it was established that LBHI2 would not have sufficient assets to meet its liabilities and it was placed into Administration on 14 January 2009.

**Objectives of the Administration**

As it was not reasonably practicable to rescue the Company as a going concern, the Administrators are pursuing the objective of achieving a better result for LBHI2's creditors as a whole than would be likely if LBHI2 were wound up (without first being in Administration).

**The specific aims of the Administration are to:**

- gain control of the Company in order to deal with and realise the tax losses.

PricewaterhouseCoopers LLP

# Section 3: An overview of the Company's business and structure and the Administrators' actions to date

**Overview of the Company's business**

LBHI2 holds the investment in LBIE (which is considered to be of £nil value).

The LBHI2 investment in LBIE was principally financed by the issue of:

- $6.1bn Floating Rate Subordinated Notes (the "Floating Rate Notes") due in 2017 which are listed on the Channel Islands Stock Exchange. This entire issue was acquired by another group company, Lehman Brothers Holdings Scottish LP3;
- $730m of Fixed Rate Notes (the "Fixed Rate Notes") due in 2012 which were listed on the Cayman Islands Stock Exchange; and
- A combination of long and short term loan facilities from LBH (the "LBH Loans") of which some $2.2bn remains due.

The Administrators understand that both the Floating Rate Notes and the LBH Loans are subordinated to all other creditors and that the Floating Rate Notes are, in turn, subordinated to the LBH Loans.

**Administrators' actions to date**

In light of the significant tax losses arising from interest payable on the debt referred to above, the Administrators have commenced a review of the tax position of the Company, to asses the potential value that may be realised through a sale of losses to other Lehman Brothers group companies.

**Dividend prospects**

The Administrators are not yet able to determine the quantum and timing of any distribution to ordinary unsecured creditors.

# Section 4: Proposals for achieving the purpose of the Administration

The Administrators make the following proposals for achieving the purpose of administration:

i) The Administrators will continue to manage and finance LBHI2's business, affairs and property from asset realisations in such manner as they consider expedient with a view to achieving a better result for LBHI2's creditors as a whole than would be likely if LBHI2 had been immediately liquidated.

ii) The Administrators may investigate and if appropriate, pursue any claims that LBHI2 may have under the Companies Act 1985, the Companies Act 2006 or the Insolvency Act 1986 ("IA86") or otherwise. In addition, the Administrators shall do all such other things and generally exercise all their powers as Administrators as they in their discretion consider desirable in order to achieve the purpose of the Administration or to protect and preserve the assets of LBHI2 or to maximise their realisations or for any other purpose incidental to these proposals.

iii) The Administrators will at their discretion establish in principle the claims of unsecured creditors for adjudication by a subsequent liquidator or supervisor of a company voluntary arrangement and the costs of so doing be met as a cost of the Administration as part of the Administrators' remuneration.

iv) The Administrators may at their discretion make an application to court for permission to make distributions to unsecured creditors under Paragraph 65(3) Schedule B1 IA86.

v) A creditors' committee will be established if sufficient creditors are willing to act on it. The Administrators propose to seek the election of a creditors' committee and to consult with it from time to time. Where the Administrators consider it appropriate, they will seek sanction from the committee to a proposed action rather than convening a meeting of all creditors.

vi) The Administrators will consult with the creditors' committee concerning the necessary steps to extend the Administration beyond the statutory duration of one year if an extension is considered advantageous. The Administrators shall either apply to the cohurt or seek consent from the appropriate classes of creditors for an extension.

vii) The Administrators may use any one or a combination of "exit route" strategies in order to bring the Administration to an end. The Administrators wish to retain a number of the options which are available to them, including:

(a) the Administrators may place LBHI2 into creditors' voluntary liquidation. In these circumstances, it is proposed that Derek Anthony Howell, Anthony Victor Lomas, Steven Anthony Pearson and Michael John Andrew Jervis be appointed as Joint Liquidators and any act required or authorised to be done by the Joint Liquidators may be done by either any or all of them. In accordance with Paragraph 83(7) Schedule B1 IA86 and Rule 2.117(3) of the Insolvency Rules 1986, creditors may nominate alternative liquidators, provided that the nomination is made after the receipt of these proposals and before they are approved, **OR**

(b) The Administrators may formulate a proposal for a company voluntary arrangement ("CVA") and put it to meetings of LBHI2's creditors and shareholders for approval. If the CVA is approved, the Administration will be brought to an end by notice to the Registrar of Companies on completion of the Administration under Paragraph 84 Schedule B1 IA86, following registration of which LBHI2 will be dissolved three months later, **OR**

(c) Once all of the assets have been realised and the Administrators have concluded all work within the Administration, the Administrators will file a notice under Paragraph 84(1)

PricewaterhouseCoopers LLP

Schedule B1 IA86 with the Registrar of Companies, following registration of which the Company will be dissolved three months later or apply to court under Paragraph 79 Sch.B1 for the Administration to be ended, **OR**

(d) The Administrators may apply to the Court to allow the Administrators to distribute surplus funds to unsecured non-preferential creditors. If such permission is given, the Administration will be brought to an end by notice to the Registrar of Companies under Paragraph 84 Schedule B1 IA86, following registration of which LBHI2 will be dissolved three months later. If permission is not granted the Administrators will place LBHI2 into creditors' voluntary liquidation or otherwise act in accordance with any Order of the Court.

viii) The Administrators shall be discharged from liability pursuant to Paragraph 98(1) Sch.B1 IA86 in respect of any action of theirs as Administrators at a time determined by the creditors committee or, if no creditors committee appointed, after 14 days from the date of ceasing to act as Administrators of LBHI2.

ix) The Administrators' fees will be fixed under Rule 2.106 of the Insolvency Rules 1986 by reference to the time properly given by the Administrators and the various grades of their staff according to their firm's usual charge-out rates for work of this nature and that disbursements for services provided by the Administrators' own firm (defined as Category 2 disbursements in Statement of Insolvency Practice No.9) be charged in accordance with the Administrators' firm's policy. It will be for the creditors' committee to fix the basis and level of the Administrators' fees and Category 2 disbursements but if no committee is appointed, it will be for the general body of creditors to determine these instead, as set out in Appendix B.

## Voting

Creditors are asked to vote upon the following matters by completing and returning the enclosed Form 2.25B:

i) The approval of the Administrators' proposals for achieving the purpose of

administration; and

ii) The formation of a creditors' committee.

iii) If a creditors' committee is not formed – the basis and level of the Administrators' fees and Category 2 disbursements.

iv) If a creditors' committee is not formed – the timing of the Administrators' discharge from liability pursuant to Paragraph 98(1) Sch.B1 IA86.

# Section 5: Financial Information

The Administrators have granted the directors
an extension of time in which to prepare a
Statement of Affairs due to the complexity of the
task.

The Administrators do not believe it is in the
interests of creditors to provide an alternative
analysis at this time as such analysis is likely to
be materially incomplete and as a result
materially misleading in gaining an
understanding of the assets and liabilities of the
Company.

Attached is a list of those parties believed by the
directors to be creditors, together with estimated
amounts due as at 14 January 2009, the date of
the appointment of Administrators.

The amounts stated therein may be materially
altered by the effect of the Administration of
LBHI2 and other Lehman group companies.

When available, a copy of the Statement of
Affairs will be lodged at Companies House.

**Receipts and Payments**

To date there have been no receipts into the
estate and no payments have been made.

PricewaterhouseCoopers LLP

**LB Holdings Intermediate 2 Limited**

**List of Creditors as at 14 January 2009**

| Name of creditor or Claimant | Address (with postcode) | Amount of debt $ |
|---|---|---|
| Lehman Brothers Holdings Plc | 25 Bank Street, London E14 5LE | 262,515,935 |
| Lehman Brothers Holdings Plc (subordinated) | 25 Bank Street, London E14 5LE | 2,249,596,834 |
| Lehman Brothers Holdings Scottish LP3 | Johnstone House, 52-54 Rose Street, Aberdeen, AB10 1UD | 6,274,122,449 |
| Luxembourg Finance SARL | Avenue Pasteur 6, Luxembourg | 738,456,700 |
| | | **9,524,691,918** |

# Section 6: Statutory and other information

| | |
|---|---|
| **Court details for the Administration:** | High Court of Justice, Chancery Division, Companies Court - Court Case 429 of 2009 |
| **Full name:** | LB Holdings Intermediate 2 Limited |
| **Trading name:** | LB Holdings Intermediate 2 Limited |
| **Registered number:** | 05957878 |
| **Registered address:** | 25 Bank Street, London E14 5LE |
| **Company directors:** | Dominic Ian Gibb, Ian Michael Jameson and Anthony John Rush |
| **Company secretary:** | Parul Dave and Emily Upton |
| **Shareholdings held by the directors and secretary:** | None of the directors own shares in LBHI2 |
| **Date of the Administration appointment:** | 14 January 2009 |
| **Administrators' names and addresses:** | DA Howell, AV Lomas, SA Pearson and MJA Jervis of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT |
| **Appointer's name and address:** | The directors, 25 Bank Street, London E14 5LE |
| **Objective being pursued by the Administrators:** | Achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration) |
| **Division of the Administrators' responsibilities:** | Statement of powers for the purposes of paragraph 100(2) of schedule B1 to the Insolvency Act 1986. The Directors of LB Holdings Intermediate 2 Limited (the "Company") have appointed DA Howell, AV Lomas, SA Pearson and MJA Jervis of PricewaterhouseCoopers LLP, Plumtree Court, London EC4A 4HT as joint administrators of the Company. The joint administrators will act jointly and severally so that all functions may be exercised by any or all of them. |
| **Proposed end of the Administration:** | The Administrators are not yet in a position to determine the most likely exit route from the Administration and wish to retain the options available to them. |
| **Estimated dividend for unsecured creditors:** | It is too early to estimate the likely dividend for unsecured creditors. |
| **Estimated values of the prescribed part and LBHI2's net property:** | Nil |
| **Whether and why the Administrators intend to apply to court under Section 176A(5) IA86:** | Not applicable as there will be no prescribed part. |
| **The European Regulation on Insolvency Proceedings (Council Regulation(EC) No 1346/2000 of 29 May 2000):** | The European Regulation on Insolvency Proceedings applies to this Administration and these are the main proceedings. |

PricewaterhouseCoopers LLP

# Appendix A: Common Questions and Answers

## I – The initial meeting of creditors and the creditors' committee

**Am I obliged to vote at the meeting that is being conducted by correspondence - "postal meeting"**
You are not obliged to vote, and if you do not wish to vote there is no need to return the Form 2.25B to register your vote. You will not prejudice your claim and entitlement to dividend if you do not do so.

**How do I ensure that my vote counts?**
In order to be counted, a creditors' vote must be received by the Administrators by 12.00 hours on the closing date specified on Form 2.25B and must be accompanied by written details of the creditor's claim (Rule 2.48(2)).

If any vote is received without written details of the creditor's claim, or the Administrators decide that the creditor is not entitled to vote according to Rules 2.38 and 2.39, that creditor's vote shall be disregarded (Rule 2.48(3)).

The closing date shall be set at the discretion of the Administrators. In any event, it must not be set less than 14 days from the date of issue of the Form 2.25B (Rule 2.48(4)).

**Who decides whether my claim ranks for voting purposes?**
The Administrator has the power to accept or reject the whole or any part of your claim (Rule 2.39(1)). If he is in doubt whether your claim should be admitted, he should mark it as objected to and allow you to vote. If however, the objection is sustained, then your vote will be declared invalid (Rule 2.39(3)). If your vote was critical to the outcome of the meeting, this could change the resolutions that were passed and/or result in a further meeting (Rule 2.39(4)).

**What happens if I disagree with the Administrator's decision?**
You are entitled to appeal to the court for an order reversing the Administrator's decision on your claim provided you do so within 14 days of the Administrator reporting the result of the postal meeting to the court, the Registrar of Companies and the creditors (Rule 2.39(5)). If the court does reverse the Administrator's

decision it can order that another meeting be held or make such other order as it thinks just (Rule 2.39(4)).

Creditors also have the right to appeal to the court if they believe that the administration unfairly harms their interests (Paragraph 74(1) Sch.B1 IA86).

We recommend that you seek legal advice about the merits of taking these steps in any particular circumstances.

**How do I calculate my claim for voting purposes?**
Votes are calculated according to the amount of a creditor's claim as at the date on which the Company entered administration, less any payments that have been made to him after that date in respect of his claim and any adjustments by way of set-off in accordance with Rule 2.85 as if that Rule were applied on the date that the votes were counted (Rule 2.38(4)).

**What majorities are needed to approve resolutions?**
A resolution to approve the proposals or any modification to them is passed at the creditors' postal meeting if supported by a majority in excess of 50% in value of the creditors voting on the resolution (Rule 2.43(1)).

Any resolution is invalid if those voting against it include more than 50% in value of the creditors to whom notice of the meeting was sent and who are not, to the best of the chairman's / Administrator's belief, connected with the Company (Rule 2.43(2)).

**What happens if I cannot yet quantify my claim with certainty?**
A creditor cannot vote in respect of a debt for an unliquidated amount or any debt whose value is not ascertained, unless the Administrator agrees to put on the debt an estimated minimum value for voting purposes (Rule 2.38(5)).

**What happens if my debt is wholly or partly secured?**
A secured creditor whose debt is wholly or partly secured is entitled to vote only in respect of the balance (if any) of his debt after deducting the value of his security as estimated by him.

However, if the Administrators have made a statement under Paragraph 52(1)(b) Sch.B1 IA86 and an initial creditors' meeting has been requisitioned by creditors under Paragraph 52(2) Sch.B1 IA86, a secured creditor is entitled to vote in respect of the full value of this debt without any deduction for the value of his security (Rule 2.40).

**What happens if I hold a negotiable instrument?**
A creditor shall not vote in respect of a debt on or secured by a current bill of exchange or promissory note unless he is willing: -
a) to treat the liability to him on the bill or note of every person who is liable on it antecedently to the Company and against whom a bankruptcy order has not been made (or in the case of a company, which has not gone into liquidation) as security in his hands; and
b) to estimate the value of the security and, for the purpose of his entitlement to vote, to deduct it from his claim (Rule 2.41).

**What happens if I am a creditor under a hire-purchase, conditional sale agreement or leasing agreement?**
An owner of goods under a hire-purchase or chattel leasing agreement, or a seller of goods under a conditional sale agreement is entitled to vote in respect of the amount of the debt due and payable to him by the Company on the date the Company entered Administration. In calculating the amount of any debt for this purpose, no account shall be taken of any amount attributable to the exercise of any right under the relevant agreement, so far as the right has become exercisable solely by virtue of: -
-    the making of an administration application
-    a notice of intention to appoint an administrator or any matter arising as a consequence, or
-    of the Company entering administration (Rule 2.42).

**Am I bound by the Administrators' proposals if they are approved at the meeting?**
The Administrators' proposals, when approved by the creditors' meeting, will dictate how the Company's affairs will be conducted in future and how creditors' claims will be addressed.

Once approved the proposals are binding on all creditors, including those who did not vote at the postal meeting.  For this reason, it is important that creditors properly consider the proposals and decide whether and how they wish to vote.

**What are the functions of the creditors' committee?**
The creditors' committee shall assist the Administrator in discharging his functions, and act in relation to him in such manner as may be agreed from time to time (Rule 2.52(1)).

In particular, it has the duty to agree the basis of the Administrator's remuneration (Rule 2.106(3)).

**How is the creditors' committee formed?**
The creditors' committee is established at a creditors' meeting. It is not obligatory but the creditors decide whether they wish to have one (Paragraph 57(1) Sch.B1 IA86).

The committee must consist of at least three and not more than five creditors of the company elected at the meeting (Rule 2.50(1)).

Any creditor of the company is eligible to be a member of the committee, so long as his claim has not been rejected for the purpose of his entitlement to vote (Rule 2.50(2). A body corporate may be a member of the committee, but it can only act as such through a properly appointed representative (Rule 2.50(3)).

No person may act as a member of the committee unless and until he has agreed to do so (Rule 2.51(2)). Unless the relevant proxy or authorisation contains a statement to the contrary, such agreement may be given by the creditor's proxy-holder or representative under Section 375 of the Companies Act 1985 present at the meeting establishing the committee (Rule 2.51(2)).

A person acting as a committee member's representative must hold a letter of authority entitling him so to act (either generally or specially) and signed by or on behalf of the committee-member (Rule 2.55(2)).

No member may be represented by a body corporate, or by a person who is an undischarged bankrupt, a disqualified director or a person who is subject to a bankruptcy restrictions order, bankruptcy restrictions undertaking or interim bankruptcy restrictions order or is subject to a composition or arrangement with his creditors (Rule 2.55(4)).

No person shall on the same committee act at one and the same time as representative of more than one committee-member (Rule 2.55(5)).

The creditors' committee does not come into being, and accordingly cannot act, until the Administrator has issued a certificate of its due constitution (Rule 2.51(1))

## II – A creditor's guide to administrators' fees (in accordance with Statement of Insolvency Practice No.9)

The following information about the Administrators' fees is from Statement of Insolvency Practice No.9 ("SIP 9") produced by the Association of Business Recovery Professionals, Appendix C: A Creditors' Guide to Administrators' Fees (England and Wales) (Revised with effect from 1 April 2007).

### 1 Introduction

1.1 When a company goes into administration the costs of the proceedings are paid out of its assets. The creditors, who hope eventually to recover some of their debts out of the assets, therefore have a direct interest in the level of costs, and in particular the remuneration of the insolvency practitioner appointed to act as administrator. The insolvency legislation recognises this interest by providing mechanisms for creditors to determine the basis of the administrator's fees. This guide is intended to help creditors be aware of their rights under the legislation to approve and monitor fees and explains the basis on which fees are fixed.

### 2 The nature of administration

2.1 Administration is a procedure which places a company under the control of an insolvency practitioner and the protection of the court with the following objective:
- rescuing the company as a going concern, or
- achieving a better result for the creditors as a whole than would be likely if the company were wound up without first being in administration, or if the administrator thinks neither of these objectives is reasonably practicable
- realising property in order to make a distribution to secured or preferential creditors.

### 3 The creditors' committee

3.1 The creditors have the right to appoint a committee with a minimum of 3 and a maximum of 5 members. One of the functions of the committee is to determine the basis of the administrator's remuneration. The committee is normally established at the meeting of creditors which the administrator is required to hold within a maximum of 10 weeks from the beginning of the administration to consider his proposals. The administrator must call the first meeting of the committee within 6 weeks of its establishment, and subsequent meetings must be held either at specified dates agreed by the committee, or when a member of the committee asks for one, or when the administrator decides he needs to hold one. The committee has power to summon the administrator to attend before it and provide information about the exercise of his functions.

### 4 Fixing the administrator's fees

4.1 The basis for fixing the administrator's remuneration is set out in Rule 2.106 of the Insolvency Rules 1986, which states that it shall be fixed either:
- as a percentage of the value of the property which the administrator has to deal with, or
- by reference to the time properly given by the administrator and his staff in attending to matters arising in the administration.

It is for the creditors' committee (if there is one) to determine on which of these bases the remuneration is to be fixed, and if it is fixed as a percentage fix the percentage to be applied. Rule 2.106 says that in arriving at its decision the committee shall have regard to the following matters:
- the complexity (or otherwise) of the case;
- any responsibility of an exceptional kind or degree which falls on the administrator;
- the effectiveness with which the administrator appears to be carrying out, or to have carried out, his duties;
- the value and nature of the property which the administrator has to deal with.

4.2 If there is no creditors' committee, or the committee does not make the requisite determination, the administrator's remuneration may be fixed by a resolution of a meeting of creditors having regard to the same matters as the committee would. If the remuneration is not fixed in any of these ways, it will be fixed by the court on application by the administrator.

4.3 There are special rules about creditors'

resolutions in cases where the administrator has stated in his proposals that the company has insufficient property to enable a distribution to be made to unsecured creditors except out of the reserved fund which may have to be set aside out of floating charge assets. In this case, if there is no creditors' committee, or the committee does not make the requisite determination, the remuneration may be fixed by the approval of:

- each secured creditor of the company; or
- if the administrator has made or intends to make a distribution to preferential creditors –
  - each secured creditor of the company; and
  - preferential creditors whose debts amount to more than 50% of the preferential debts of the company, disregarding debts of any creditor who does not respond to an invitation to give or withhold approval, having regard to the same matters as the committee would.

Note that there is no requirement to hold a creditors' meeting in such cases unless a meeting is requisitioned by creditors whose debts amount to at least 10 per cent of the total debts of the company.

**4.4** A resolution of creditors may be obtained by correspondence.

**5 What information should be provided by the administrator?**

**5.1 When seeking fee approval**

5.1.1 When seeking agreement to his fees the administrator should provide sufficient supporting information to enable the committee or the creditors to form a judgement as to whether the proposed fee is reasonable having regard to all the circumstances of the case. The nature and extent of the supporting information which should be provided will depend on:

- the nature of the approval being sought;
- the stage during the administration of the case at which it is being sought; and
- the size and complexity of the case.

5.1.2 Where, at any creditors' or committee meeting, the administrator seeks agreement to the terms on which he is to be remunerated, he should provide the meeting with details of the charge-out rates of all grades of staff, including principals, which are likely to be involved on the case.

5.1.3 Where the administrator seeks agreement to his fees during the course of the administration, he should always provide an up to date receipts and payments account. Where the proposed fee is based on time costs the administrator should disclose to the committee or the creditors the time spent and the charge-out value in the particular case, together with, where appropriate, such additional information as may reasonably be required having regard to the size and complexity of the case. The additional information should comprise a sufficient explanation of what the administrator has achieved and how it was achieved to enable the value of the exercise to be assessed (whilst recognising that the administrator must fulfil certain statutory obligations that might be seen to bring no added value for creditors) and to establish that the time has been properly spent on the case. That assessment will need to be made having regard to the time spent and the rates at which that time was charged, bearing in mind the factors set out in paragraph 4.1 above.

To enable this assessment to be carried out it may be necessary for the administrator to provide an analysis of the time spent on the case by type of activity and grade of staff. The degree of detail will depend on the circumstances of the case, but it will be helpful to be aware of the professional guidance which has been given to insolvency practitioners on this subject. The guidance suggests the following areas of activity as a basis for the analysis of time spent:

- Administration and planning
- Investigations
- Realisation of assets
- Trading
- Creditors
- Any other case-specific matters

The following categories are suggested as a basis for analysis by grade of staff:

- Partner
- Manager
- Other senior professionals
- Assistants and support staff

The explanation of what has been done can be expected to include an outline of the nature of the assignment and the administrator's own initial assessment, including the anticipated return to creditors. To the extent applicable it should also explain:

- Any significant aspects of the case, particularly those that affect the amount of time spent.
- The reasons for subsequent changes in strategy.
- Any comments on any figures in the summary of time spent accompanying the request the administrator wishes to make.
- The steps taken to establish the views of creditors, particularly in relation to agreeing the strategy for the assignment, budgeting, time recording, fee drawing or fee agreement.
- Any existing agreement about fees.
- Details of how other professionals, including subcontractors, were chosen, how they were contracted to be paid, and what steps have been taken to review their fees.

It should be borne in mind that the degree of analysis and form of presentation should be proportionate to the size and complexity of the case. In smaller cases not all categories of activity will always be relevant, whilst further analysis may be necessary in larger cases.

5.1.4 Where the fee is charged on a percentage basis the administrator should provide details of any work which has been or is intended to be sub-contracted out which would normally be undertaken directly by an administrator or his staff.

## 5.2 After fee approval

Where a resolution fixing the basis of fees is passed at any creditors' meeting held before he has substantially completed his functions, the administrator should notify the creditors of the details of the resolution in his next report or circular to them. In all subsequent reports to creditors the administrator should specify the amount of remuneration he has drawn in accordance with the resolution. Where the fee is based on time costs he should also provide details of the time spent and charge-out value to date and any material changes in the rates charged for the various grades since the resolution was first passed. He should also provide such additional information as may be required in accordance with the principles set out in paragraph 5.1.3. Where the fee is charged on a percentage basis the administrator should provide the details set out in paragraph 5.1.4 above regarding work which has been sub-contracted out.

## 5.3 Expenses and disbursements

There is no statutory requirement for the committee or the creditors to approve the drawing of expenses or disbursements. However, professional guidance issued to insolvency practitioners requires that, where the administrator proposes to recover costs which, whilst being in the nature of expenses or disbursements, may include an element of shared or allocated costs (such as room hire, document storage or communication facilities provided by the administrator's own firm), they must be disclosed and be authorised by those responsible for approving his remuneration. Such expenses must be directly incurred on the case and subject to a reasonable method of calculation and allocation.

## 6 What if a creditor is dissatisfied?

6.1 If a creditor believes that the administrator's remuneration is too high he may, if at least 25 per cent in value of the creditors (including himself) agree, apply to the court for an order that it be reduced. If the court does not dismiss the application (which it may if it considers that insufficient cause is shown) the applicant must give the administrator a copy of the application and supporting evidence at least 14 days before the hearing. Unless the court orders otherwise, the costs must be paid by the applicant and not as an expense of the administration.

## 7 What if the administrator is dissatisfied?

7.1 If the administrator considers that the remuneration fixed by the creditors' committee is insufficient he may request that it be increased by resolution of the creditors. If he considers that the remuneration fixed by the committee or the creditors is insufficient, he may apply to the court for it to be increased. If he decides to apply to the court he must give at least 14 days' notice to the members of the creditors' committee and the committee may nominate one or more of its members to appear or be represented on the application. If there is no committee, the administrator's notice of his application must be sent to such of the company's creditors as the court may direct, and they may nominate one or more of their number to appear or be represented. The court may order the costs to be paid as an expense of the administration.

## 8 Other matters relating to fees

8.1 Where there are joint administrators it is for them to agree between themselves how the remuneration payable should be apportioned.

Any dispute arising between them may be referred to the court, the creditors' committee or a meeting of creditors.

**8.2** If the administrator is a solicitor and employs his own firm to act on behalf of the company, profit costs may not be paid unless authorised by the creditors' committee, the creditors or the court.

### 9. Provision of information – additional requirements

In any case where the administrator is appointed on or after 1 April 2005 he must provide certain information about time spent on a case, free of charge, upon request by any creditor, director or shareholder of the company. The information which must be provided is:

- the total number of hours spent on the case by the administrator or staff assigned to the case;
- for each grade of staff, the average hourly rate at which they are charged out;
- the number of hours spent by each grade of staff in the relevant period.

The period for which the information must be provided is the period from appointment to the end of the most recent period of six months reckoned from the date of the administrator's appointment, or where he has vacated office, the date that he vacated office. The information must be provided within 28 days of receipt of the request by the administrator, and requests must be made within two years from vacation of office.

PricewaterhouseCoopers LLP

# Appendix B: The Administrators' charging and disbursements recovery policy

**Overview of the Administrators' strategy and objectives**

DA Howell, AV Lomas, SA Pearson and MJA Jervis were appointed Administrators of LB Holdings Intermediate 2 Limited on 14 January 2009 with the objective of achieving a better result for the Company's creditors as a whole than would be likely if the Company were wound up (without first being in Administration).

As stated earlier in the proposals, the main action taken since appointment has been to deal with and realise the tax losses.

**Legal and other professional firms**

The Administrators have instructed Linklaters to act as their legal advices. They will be remunerated on a timecost basis and were appointed due to their prior knowledge of the Company's business: -

| Service provided | Name of firm | Reason selected | Basis of fees |
|---|---|---|---|
| Legal advice | Linklaters | Prior knowledge | Time costs |

All third party professionals are required to submit time costs analyses and narrative in support of invoices rendered.

**Office holder's charging and disbursement policy**

The time charged to the Administration is by reference to the time properly given by the Administrators and their staff in attending to matters arising.

It is the Administrators' policy to delegate tasks in the Administration to appropriate members of staff considering their level of experience and any requisite specialist knowledge, supervised accordingly, so as to maximise the cost effectiveness of the work performed. Matters of

particular complexity or significance requiring more exceptional responsibility are dealt with by senior staff or the Administrators themselves. Set out below are the relevant charge-out rates per hour worked for the grades of the Administrators' staff actually or likely to be involved on this assignment. Time is charged by reference to actual work carried out on the assignment. There has been no allocation of any general costs or overhead costs.

| Grade | Relevant maximum charge out rate per hour  £ |
|---|---|
| Partner | 750 |
| Director | 570 |
| Senior Manager | 425 |
| Manager | 365 |
| Senior associate – qualified / consultant | 310 |
| Associate | 190 |

Specialist departments within the Administrators' firm such as Tax, VAT, Property and Pensions may charge a number of hours if and when the Administrators require their expert advice. Such specialists' rates do vary but the figures below provide an indication of the maximum rate per hour.

| Grade | Relevant maximum charge out rate per hour £ |
|---|---|
| Partner | 970 |
| Director | 890 |
| Senior Manager | 735 |
| Manager | 540 |
| Senior associate – qualified / consultant | 390 |
| Associate | 175 |

In common with all professional firms, the scale rates used by the Administrators may periodically rise (for example to cover annual inflationary cost increases) over the period of the Administration. Any material amendments to these rates will be advised to the creditors and / or the creditors'

committee in the next statutory report.

The Administrators' firm's expenses policy allows for all properly incurred expenses to be recharged to the case. Disbursements are charged to the assignment as follows: -

**Disbursements for services provided by the Administrators' own firm(s) (Category 2 disbursements)**

| Photocopying | At 3 pence per sheet copied, only charged for circulars to creditors and other bulk copying. |
| --- | --- |
| Mileage | At a maximum of 62 pence per mile (up to 2,000cc) or 81 pence per mile (over 2,000cc) |

**Narrative of work carried out for the period 14 January 2009 to 15 February 2009**

The key areas of work have been:

- Strategy and planning issues;
- Indentifying and securing the Company's assets;
- Tax & VAT planning; and
- Compliance and statutory matters.

**LB Holdings Intermediate 2 Limited - in Administration**

**Time cost summary for the period 14th January 2009 to 15th February 2009**

| Classification of work | Partner / Director (Hrs) | Senior Manager / Manager (Hrs) | Senior Associate (Hrs) | Associate (Hrs) | Total hours (Hrs) | Time cost (£) | Average hourly rate (£) |
|---|---|---|---|---|---|---|---|
| Accounting and treasury | | | | 0.80 | 0.80 | 152.00 | 190.00 |
| Administration and Planning | 1.50 | 1.30 | 4.50 | 14.50 | 21.80 | 5,797.50 | 265.94 |
| Reporting | | | | 4.70 | 4.70 | 893.00 | 190.00 |
| | | | | | | | |
| Total to date | 1.50 | 1.30 | 4.50 | 20.00 | 27.30 | 6,842.50 | 250.64 |
| | | | | | | | |
| Total time cost: (£) | 1,125.00 | 522.50 | 1,395.00 | 3,800.00 | | | |
| | | | | | | | |
| Average hourly rate: (£) | 750.00 | 401.92 | 310.00 | 190.00 | | | |

| The Administrators' policy for charging for disbursements is: | Costs to date (£) |
|---|---|
| Photocopying is charged at 3p per sheet for creditors and bulk copying | |
| Mileage is charged at a maximum of 62p per mile (up to 2000cc) or 81p per mile (over 2000cc) | |
| All other disbursements are charged at cost | |
| Total | 0 |