# EXHIBIT G

# *Lehman Brothers Holdings plc – In Administration*

Joint Administrators' progress report for the period 15 March 2017 to 14 September 2017

11 October 2017



# *Contents*

*Section 1*    *Purpose of the Joint Administrators' progress report*    *2-3*

*Section 2*    *Joint Administrators' actions to date*    *4-5*

*Section 3*    *Statutory and other Information*    *6*

*Section 4*    *Financial Information*    *7*

*Section 5*    *Receipts and Payments Account*    *8*

*Section 6*    *Expenses*    *9*

*Section 7*    *Joint Administrators' time costs*    *10-12*

*Section 8*    *Joint Administrators' estimate of future time costs*    *13-14*

# Section 1  Purpose of the Joint Administrators' progress report

## Introduction

This is the 18th progress report by the Joint Administrators (the "Administrators") of Lehman Brothers Holdings plc ("LBH" or the "Company").

This report provides an update on the work that the Administrators have undertaken and the progress made since their appointment, with particular focus on the progress made in the six months to 14 September 2017 ("the reporting period").

## Objectives of the Administration

The Administrators are pursuing the objective of achieving a better result for LBH's creditors as a whole than would be likely if LBH were wound up (without first being in Administration).

The specific aims of this Administration are to:

- Realise all assets, including all cash and derivative positions on a managed basis;
- Mitigate so far as is possible and agree in principle the claims of all creditors; and
- Continue to manage its subsidiaries with a view to maximising returns to LBH's creditors.

## Creditors' Committee

Current membership of the Creditors' Committee ("the Committee") is as follows:

- Lehman Brothers Holdings Inc ("LBHI");
- Lehman Brothers International (Europe) ("LBIE");
- Lehman Brothers Limited ("LBL"); and
- Lehman Brothers Securities Asia Limited.

The Administrators continue to meet with the Committee to discuss significant issues and outline key decisions.

## Outcome for creditors

On 2 May 2014, the Court granted the Administrators permission to make distributions to the Company's unsecured creditors.

As previously reported, LBH together with certain other Lehman UK Affiliates were exploring commercial terms to settle the Waterfall III litigation and expedite payment of further distributions to creditors (the "Inter-Affiliate Settlement").

The Administrators are pleased to confirm that the Inter-Affiliate Settlement was completed in August 2017 and became effective on 6 September 2017. This enabled a third interim distribution of 62.963 pence in the £ to be declared and paid to the Company's unsecured, unsubordinated creditors.

In total, LBH has now declared and paid dividends totalling c.£709.4m, representing a cumulative figure of 69.043 pence in the £.

As a result of the Waterfall judgement handed down by the Supreme Court in May 2017, and in particular the decisions that Currency Conversion Claims do not exist and that any contribution claim by LBIE against its shareholders is limited to non-provable claims, the Administrators anticipate that further distributions will be made to unsecured, unsubordinated creditors.

The quantum and timing of further distributions remains uncertain, being contingent on the amount of further recoveries made by the Company from its equity in LBEL and from its senior and subordinated claims against LB Holdings Intermediate 2 Limited ("LBHI2").

### Subordinated creditors

The Company has received claims from two holders of debt instruments, namely LBHI and LB GP No.1 Limited in Liquidation ("LBGP"). LBGP has claimed on behalf of three Lehman Brothers Capital Funding partnerships (the "Funds"):

- Lehman Brothers UK Capital Funding LP (ISIN: XS0215349357);
- Lehman Brothers UK Capital Funding II LP (ISIN: XS0229269856); and
- Lehman Brothers UK Capital Funding III LP (ISIN: XS0243852562).

The Funds are managed by their general partner, LBGP. The liquidators are Bruce Mackay and Matthew Haw of RSM Restructuring Advisory LLP, based at 25 Farringdon Street, London EC4A 4AB.

These claims are subordinated to the claims of unsubordinated, unsecured creditors and will only be entitled to receive distributions if the unsubordinated, unsecured creditors have been paid in full, including statutory interest.

The Administrators consider it possible that there may be a surplus available in due course for a

distribution to subordinated creditors but, as stated above, there remain a number of variables that would have a significant impact on the quantum of any such surplus.

**Guarantee creditors**

As creditors are aware, LBH guaranteed the investors in the Funds.

Investors in the Funds are invited to notify the Administrators of any claim against LBH for the amount they invested in each fund. However, the guarantee provided by LBH is subordinated to LBH's unsubordinated, unsecured creditors and the subordinated creditors referred to above.

The Administrators estimate that there is unlikely to be any surplus available to pay a dividend to creditors with guarantee claims. However, this position continues to be monitored by the Administrators.

## Extension to the term of office

On 5 November 2015, the High Court granted the Administrators' application to extend their term of office by a further five years to 30 November 2020.

## Future reports

The Administrators' next progress report to creditors will be sent in approximately six months.

Signed:

GE Bruce
Joint Administrator
Lehman Brothers Holdings plc

*DA Howell, AV Lomas, SA Pearson, GE Bruce and JG Parr were appointed as Joint Administrators of Lehman Brothers Holdings plc to manage its affairs, business and property as agents without personal liability. The Joint Administrators are licensed in the United Kingdom to act as insolvency practitioners by the Institute of Chartered Accountants in England and Wales.*

*The Joint Administrators are bound by the Insolvency Code of Ethics which can be found at:*
*https://www.gov.uk/government/publications/insolvency-practitioner-code-of-ethics.*

*The Joint Administrators are Data Controllers of personal data as defined by the Data Protection Act 1998. PricewaterhouseCoopers LLP will act as Data Processor on their instructions. Personal data will be kept secure and processed only for matters relating to the Administrations.*

# Section 2    Joint Administrators' actions to date

## Asset review

Following their appointment, the Administrators conducted a detailed review of the asset position, which identified the following categories of assets:

- Investments in subsidiary undertakings;
- Financial assets; and
- Inter-company debts.

The Administrators continue to monitor the Company's remaining assets, ensuring that the strategy put in place remains the most effective way to realise value for the benefit of LBH's creditors.

## Investments in subsidiary undertakings

LBH held an equity interest in 22 Lehman group companies. Of these, the most significant shareholdings were in Lehman Brothers Asset Management (Europe) Limited ("LBAM"), Lehman Brothers Europe Limited ("LBEL") and MBAM Investor Limited ("MBAM").

As a result of the Inter-Affiliate Settlement, in September 2017 LBEL declared and paid a distribution to LBH, as its sole shareholder, totalling £375m. Further realisations are anticipated.

In June 2017, LBH received a sum of £9.6m from MBAM in its capacity as sole shareholder. Further realisations from MBAM remain highly contingent upon receipts from LBHI2 as well as LBH and these continue to be reviewed by the Administrators.

### LB Cayman Finance Limited ("LBCF")

As previously reported, LBH's subsidiary, LBCF, agreed a claim against LBIE for c. £472k and immediately assigned its claim to LBH by way of dividend. In the reporting period, a catch up distribution was paid to LBH by LBIE representing 100 pence in the £.

## Key intercompany debtor realisations

Following the Inter-Affiliate Settlement, LBH's senior claim against LBHI2 was admitted in the amount of £184m. On 6 September 2017, LBHI2 declared and paid to LBH a dividend of 100 pence in the £ plus some of its entitlement to statutory interest. A total of £247m was received by LBH.

## Other debtor realisations

Other realisations in the reporting period include:

- A total of c£1.1m from Lehman Brothers (PTG) Limited in respect of the sixth and seventh interim distributions;
- A receipt of £78k from LBEL in respect of statutory interest; and
- Twelfth dividends from Lehman Brothers Special Financing Inc ("LBSFI") and Lehman Commercial Paper Inc ("LCPI") of c.$37k and c.$28k respectively;

All receipts in USD were converted to GBP to minimise any foreign exchange loss risk.

Further distributions from LBSFI and LCPI are expected on a six monthly basis. The timing and quantum of receipts from other debtors remain uncertain.

## Waterfall applications

Creditors may be aware that three of LBH's subsidiaries, LBIE, LBHI2 and LBL, are applicants and/or respondents in a series of applications made by their administrators, collectively referred to as the Waterfall applications. There were three applications before the courts aimed at clarifying how the administrators should treat and calculate the value of various claims between the parties.

In summary, the current status of the applications is as follows:

Waterfall I – Supreme Court Judgment handed down in May 2017.

Waterfall II – Split into Parts A, B and C for expediency; Parts A & B were heard by the Court of Appeal in April 2017 with further submissions following the Waterfall I Judgment – Judgment awaited; Part C is due to be heard by the Court of Appeal in July 2018.

Waterfall III – application dismissed following the Inter-Affiliate Settlement.

The issues covered by Waterfall II largely relate to the calculation of statutory interest so the outcome for creditors of any company which pays statutory interest will be affected by the Court's decision.

As LBH's future recoveries from affiliates will directly or indirectly be affected by these issues the Administrators expect the final Waterfall II decision

to have a direct bearing on the outcome for the Company's creditors.

Full details of the Waterfall applications and judgements can be found using the following link:

http://www.pwc.co.uk/services/business-recovery/administrations/lehman.html

## Tax

All corporation tax returns up to and including the year ended 14 September 2015 have been agreed by HM Revenue & Customs ("HMRC"). The corporation tax return for the year ended 14 September 2016 will be submitted to HMRC shortly and shows a profit which is being sheltered by brought-forward losses. The tax computation for the year ended 14 September 2017 will be drafted in due course.

**Budget 2017**

The 2017 Finance Bill published by the UK government on 20 March 2017, included legislation in respect of changes to the use of corporation tax loss relief that was expected to apply from April 2017. However as a result of the general election, the pre-election Finance Bill was truncated and this measure was omitted from the updated version. Finance Bill (No. 2) 2017 was published on Friday 8 September and reintroduced most of the measures which were omitted with the same commencement dates and in substantially the same form. Finance Bill (No. 2) 2017 has yet to receive Royal Assent, which is anticipated in late November /early December 2017, and therefore is still subject to change.

In summary the main changes as they currently stand are:

(i) Companies will only be able to use losses carried forward against up to 50% of their profits above £5m; and

(ii) The current streaming rules in relation to the use of losses will be amended to allow losses arising on or after 1 April 2017 to be usable, when carried forward, against profits from other income streams (i.e. carried forward trading losses may be used against non-trading profits) and, profits of other group companies (i.e. carried-forward losses may be claimed/surrendered as group relief). As a result of these reforms, companies with significant brought forward tax losses may potentially become tax paying entities and sooner than previously forecast.

The Administrators will provide further commentary on the implications of this in future reports following Royal Assent.

## Investigations and actions

Nothing has come to the Administrators' attention during the reporting period to suggest that any further work is required in accordance with their duties under the Company Directors' Disqualification Act 1986 and Statement of Insolvency Practice No.2.

# Section 3   Statutory and other Information

| | |
|---|---|
| *Court details for the Administration:* | High Court of Justice, Chancery Division, Companies Court – case 7943 of 2008 |
| *Full name:* | Lehman Brothers Holdings plc |
| *Trading name:* | Lehman Brothers Holdings plc |
| *Registered number:* | 01854685 |
| *Registered address:* | 7 More London Riverside, London SE1 2RT |
| *Date of the Administration appointment:* | 15 September 2008 |
| *Administrators' names and addresses:* | AV Lomas, SA Pearson, DA Howell, GE Bruce and JG Parr, of PricewaterhouseCoopers LLP, 7 More London Riverside, London SE1 2RT |
| *Appointer's / applicant's name and address:* | High Court of Justice, Chancery Division, Companies Court, The Rolls Building, 7 Rolls Buildings, Fetter Lane, London EC4A 1NL (former address The Strand, London, WC2A 2LL)  on the application of the directors of the Company, 25 Bank Street, London, E14 5LE |
| *Objective being pursued by the Administrators:* | Achieving a better result for LBH's creditors as a whole than would be likely if LBH were wound up (without first being in Administration) |
| *Division of the Administrators' responsibilities:* | In relation to paragraph 100(2) Sch.B1 IA86, during the period for which the Administration is in force, any act required or authorised under any enactment to be done by either or all of the Joint Administrators may be done by any one or more of the persons for the time being holding that office. |
| *Details of any extensions of the initial period of appointment:* | The High Court of Justice has granted five successive extensions to the Administration period to: 30 November 2010, 30 November 2011, 30 November 2013, 30 November 2015 and to 30 November 2020. |

# *Section 4    Financial Information*

## *Receipts and payments account*

An account of the receipts and payments for the six months to 14 September 2017, together with a cumulative total since the beginning of the Administration, is attached in Section 5.

Figures have been rounded to the nearest £0.1m.

### Key movements in the reporting period

- Recoveries of £384.2m from LBEL and MBAM;
- Debtor receipts of c.£249.1m and c.$0.1m;
- Legal fees of c.£1.6m plus VAT, of which c.£1.5m plus VAT relate to Waterfall III;
- Administrators' fees of c.£0.8m plus VAT; and
- A third interim distribution to unsecured, unsubordinated creditors totalling c.£644m.

## *Administrators' expenses*

As previously reported, Statement of Insolvency Practice number 9 ("SIP9"), issued by the Institute of Chartered Accountants in England and Wales, was revised with effect from 1 December 2015 and applies to all open insolvency cases. SIP9 details the disclosure standards required by insolvency office holders in respect of fees, expenses and payments to associates.

In accordance with SIP9, there is a statement of the expenses that the Administrators have incurred from the date of their appointment to 14 September 2017, together with an estimate of future expenses. This is in Section 6.

## *Administrators' remuneration*

The Committee is responsible for approving the basis and amount of the Administrators' remuneration. The Committee has resolved that the Administrators' remuneration be fixed by reference to the time properly given by the Administrators and their staff in attending to matters arising in the Administration.

In accordance with SIP9, the following information has been provided in Section 7:

(i) an analysis of the Administrators' time costs for the period 1 March 2017 to 31 August 2017, including the cumulative total time costs from the date of the Administrators' appointment to 31 August 2017; and

(ii) a summary of the Administrators' time costs for the period, including the key categories of work, further information of the work undertaken, a description of why the work was necessary, how the work benefits creditors and whether it was required by statute.

In line with the Committee's approval, as at 14 September 2017, the Administrators have drawn remuneration of £6.3m plus VAT in respect of time costs incurred to 31 May 2017.  Of this, £1.1m plus VAT represents 75% of time costs incurred from 1 October 2016 to 31 May 2017.

## *Disbursements*

The Administrators are not required to seek approval to draw expenses or disbursements unless they are for shared or allocated services provided by our own firm, including room hire, document storage, photocopying, communication facilities. These types of expenses are called "Category 2" disbursements and they must be directly incurred on the case, subject to a reasonable method of calculation and allocation and approved by the same party who approves the Administrators' fees.

Category 1 disbursements comprise payments to third parties, for example in relation to travel costs, statutory advertising and insolvency office holders' insurance.

The Administrators' expenses policy allows for all properly incurred expenses to be recharged to the Administration.

Category 1 disbursements incurred from 1 March 2017 to 31 August 2017 total c.£27k and Category 2 disbursements total c.£0.2k.

## *Creditors' rights*

Creditors have the right to ask for information and challenge an administrator's fees if they believe that they are too high. You can find an explanatory note online at:

http://www.icaew.com/~/media/corporate/files/technical/insolvency/creditors%20guides/a%20creditors%20guide%20to%20administrators%20fees%20010407.ashx

Creditors can request a paper copy of the above guide by contacting Lehman.affiliates@uk.pwc.com.

# Section 5   Receipts and Payments Account

Sums have been rounded to the nearest £0.1m.

| | GBP | | | USD | | | EUR | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 14-Sep-17 | Movements in Period | 14-Mar-17 | 14-Sep-17 | Movements in Period | 14-Mar-17 | 14-Sep-17 | Movements in Period | 14-Mar-17 |
| **Receipts** | | | | | | | | | |
| Investments in subsidiaries | 385.2 | 384.2 | 1.0 | 0.5 | - | 0.5 | - | - | - |
| Intercompany debtors (Note 1) | 274.6 | 249.1 | 25.5 | 56.8 | 0.1 | 56.7 | - | - | - |
| Book debts | 0.1 | - | 0.1 | 14.1 | - | 14.1 | - | - | - |
| Sale of tax losses | 9.1 | - | 9.1 | - | - | - | - | - | - |
| Proceeds from sale of ESO (Note 2) | 1.0 | - | 1.0 | - | - | - | 0.3 | - | 0.3 |
| Bank Interest | 1.2 | 0.1 | 1.1 | 0.2 | - | 0.2 | - | - | - |
| LBAM tax loss receipts | 2.5 | - | 2.5 | - | - | - | - | - | - |
| Net proceeds from sale of LBAM | (0.8) | - | (0.8) | 74.1 | - | 74.1 | - | - | - |
| **Total Receipts** | **672.9** | **633.4** | **39.5** | **145.7** | **0.1** | **145.6** | **0.3** | **-** | **0.3** |
| | | | | | | | | | |
| **Payments** | | | | | | | | | |
| Legal fees | 3.8 | 1.6 | 2.2 | - | - | - | - | - | - |
| Legal fees relating to Pension costs | 0.4 | - | 0.4 | - | - | - | - | - | - |
| Payments on behalf of subsidiaries | 0.1 | - | 0.1 | - | - | - | - | - | - |
| Wages & salaries | 0.3 | - | 0.3 | - | - | - | - | - | - |
| IT costs | 0.2 | - | 0.2 | - | - | - | - | - | - |
| Joint Administrators' remuneration | 6.3 | 0.8 | 5.5 | - | - | - | - | - | - |
| Professional fees | 0.1 | - | 0.1 | - | - | - | - | - | - |
| Insurance | 0.2 | - | 0.2 | - | - | - | - | - | - |
| Contribution to tax costs | 0.2 | - | 0.2 | - | - | - | - | - | - |
| Net VAT irrecoverable (Note 3) | 0.5 | 0.2 | 0.3 | - | - | - | - | - | - |
| Net VAT recoverable (Note 3) | 0.8 | 0.1 | 0.7 | - | - | - | - | - | - |
| **Total Payments** | **12.9** | **2.7** | **10.2** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | |
| **Intracompany Transfers** | | | | | | | | | |
| Payment | - | - | - | 145.7 | 0.1 | 145.6 | 0.3 | - | 0.3 |
| Receipt | 99.4 | 0.1 | 99.3 | - | - | - | - | - | - |
| **Total receipts less total payments** | **759.4** | **630.8** | **128.6** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | |
| **Distributions to non-preferential unsecured unsubordinated creditors** | | | | | | | | | |
| 1st dividend of 4.08p in the £, declared 3 September 2014 | 43.8 | - | 43.8 | - | - | - | - | - | - |
| 2nd dividend of 2p in the £, declared 10 February 2016 | 21.6 | - | 21.6 | - | - | - | - | - | - |
| 3rd dividend of 62.963p in the £, declared 6 September 2017 | 644.0 | 644.0 | 0.0 | - | - | - | - | - | - |
| **Balance held net of distributions** | **50.0** | **(13.2)** | **63.2** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | |
| **Cash Balances** | | | | | | | | | |
| HSBC | 50.0 | 48.4 | 1.6 | - | - | - | - | - | - |
| Money market deposits (Note 4) | - | (61.6) | 61.6 | - | - | - | - | - | - |
| **Total Cash/Movements** | **50.0** | **(13.2)** | **63.2** | **-** | **-** | **-** | **-** | **-** | **-** |

Notes:
(1) Intercompany debtor balance includes settlements from all classes of debtors
(2) Net proceeds from sale of shares in ESE Special Opportunities Plc.
(3) LBH is VAT registered and entitled to reclaim 63.09% of input VAT. Therefore 36.91% of VAT is irrecoverable.
(4) Funds are invested on the money markets in order to accrue interest and to manage risk.
(5) Sums have been rounded to the nearest 0.1m (GBP, USD or EUR as appropriate)
(6) All of the Company's assets are uncharged, there being no secured creditors.
(7) The Administrators are not in a position to provide an estimated outcome for comparative purposes.
(8) The estimated to realise values of assets shown in the directors' statement of affairs do not represent a meaningful comparison with the current position and are therefore excluded.

# Section 6  Expenses

The information in the table below provides details of the Administrators' expenses.  Expenses are defined as amounts payable by the Administrators from the estate, they include the Administrators' fees but exclude distributions to creditors.  The table also excludes any potential tax liabilities that may be payable as an Administration expense, as amounts becoming due will depend on the position at the end of the tax accounting period.

The information in the below table should be read together with the receipts and payments account in Section 5, which shows the expenses paid in the period, but which excludes those incurred which have not yet been paid.

In estimating future expenses, assumptions have been made relevant to the annual run rate and length of the current period of extension, where appropriate.

Sums have been rounded to the nearest £0.1m.

| | Brought forward from preceding period £ | Incurred in the period under review £ | Cumulative £ | Accrued and not paid £ | Estimated future £ | Anticipated total £ |
|---|---|---|---|---|---|---|
| Legal fees | 2.2 | 1.6 | 3.8 | 0.1 | 7.0 | 10.9 |
| Pension related legal costs | 0.4 | - | 0.4 | - | - | 0.4 |
| Payments on behalf of subsidiaries | 0.1 | - | 0.1 | - | - | 0.1 |
| Wages & salaries | 0.3 | - | 0.3 | - | 0.2 | 0.5 |
| IT costs | 0.2 | - | 0.2 | - | - | 0.2 |
| Joint Administrators' remuneration | 5.5 | 0.8 | 6.3 | 0.7 | 7.2 | 14.2 |
| Professional fees | 0.1 | - | 0.1 | - | - | 0.1 |
| Insurance | 0.2 | - | 0.2 | - | - | 0.2 |
| Contribution to tax costs | 0.2 | - | 0.2 | - | - | 0.2 |
| General reserve | | | | | 4.8 | 4.8 |
| Net VAT (of which 63.09% is recoverable) | 1.0 | 0.3 | 1.3 | 0.2 | 3.8 | 5.3 |
| Total | 10.2 | 2.7 | 12.9 | 1.0 | 23.0 | 36.9 |

Certain classes of future costs are subject to material uncertainties, which prevent the Administrators from providing a meaningful estimate of future costs at this time.

An explanation of the key issues impacting the estate is provided in Section 8.

# Section 7  Joint Administrators' time costs

| Classification of work | Partner / Director | | Senior Manager / Manager | | Senior Associate | | Associate / Support Staff | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Hours | £ | Hours | £ | Hours | £ | Hours | £ | Hours | £ |
| Accounting and Treasury | 1.00 | 935 | 33.65 | 15,852 | 66.25 | 20,818 | 48.65 | 11,643 | 149.55 | 49,248 |
| Strategy and Planning | 143.95 | 118,059 | 514.05 | 249,074 | 185.60 | 54,310 | 46.20 | 10,267 | 889.80 | 431,710 |
| Statutory and Compliance | 6.00 | 4,784 | 3.20 | 1,643 | 32.50 | 11,293 | 150.25 | 35,488 | 191.95 | 53,208 |
| Tax and VAT | 133.65 | 140,609 | 184.80 | 115,888 | 52.50 | 18,760 | 34.90 | 7,273 | 405.85 | 282,530 |
| Creditors and Distributions | 0.75 | 615 | 63.60 | 29,957 | 65.05 | 19,489 | 81.85 | 19,717 | 211.25 | 69,778 |
| **Total for six months ended 31 August 2017** | **285.35** | **265,002** | **799.30** | **412,414** | **401.90** | **124,670** | **361.85** | **84,388** | **1,848.40** | **886,474** |
| **Average hourly rate for the six month period to 31 August 2017** | | | | | | | | | | **480** |
| **Cumulative total to 31 August 2017** | | | | | | | | | | **7,036,910** |

| Current charge out rates | Business Recovery Services | | Specialist | |
|---|---|---|---|---|
| | Max £/hr | | Max £/hr | |
| Grade | From 1 July 2015 | From 1 July 2017 | From 1 July 2015 | From 1 July 2017 |
| Partner | 899 | 935 | 1,262 | 1312 |
| Director | 788 | 820 | 1,108 | 1152 |
| Senior Manager | 527 | 548 | 932 | 969 |
| Manager | 444 | 462 | 680 | 707 |
| Senior Associate | 371 | 386 | 505 | 525 |
| Associate/Support Staff | 236 | 245 | 235 | 244 |

The Administrators' remuneration has been fixed by reference to the time properly given by the Joint Administrators and their staff in attending to matters arising in the Administration. The minimum unit for time charged by the Administrators and their staff is 0.05 of an hour.

Specialist departments within PricewaterhouseCoopers LLP, such as Tax, VAT and Pensions, do sometimes charge a number of hours, should we require their expert advice. Their rates do vary, however, the figures shown give an indication of the maximum rate per hour.

Charge-out rates were held unchanged from 1 July 2012 to 30 June 2015. An increase of 3% in charge-out rates was effective from 1 July 2015 to 30 June 2017. A further increase of 4% in charge-out rates is effective from 1 July 2017, and in line with other Group affiliates controlled by PricewaterhouseCoopers LLP's office holders.

**Notes:**

(1) The cumulative total refers to the time costs incurred to 31 August 2017, of which c.6.3m has been paid to date.

# Summary of the Joint Administrators' time costs for the six months ended 31 August 2017

## Accounting and Treasury - £49,248

An essential function for management of funds held by the Administrators on behalf of the Company, the Administrators' treasury and cash management teams monitor and control the movement of funds, mitigate risk and seek to maximise the interest made on investments for the benefit of the Company's creditors.

- Provision of information for the purposes of statutory reporting;
- Analysis of interest rates available with counterparties;
- Active management of deposits on the money market, and mitigating risk on such deposits;
- Due consideration of best strategy for dealing with cash;
- Execution of sale of USD receipts into GBP;
- Arrangement of receipts and payments of funds and coding of movements;
- Monitoring flow of funds into the bank accounts;
- Daily monitoring of the funds held, coordinating with case team to ensure that the optimal level of funds are held on deposit; and
- Coordinating with case team to plan distribution funding.

## Strategy and Planning - £431,710

The inherent complexities of the LBH estate mean that the Administrators and their staff have invested a significant proportion of their time in the planning and delivery of their strategy for the progression of the Administration. This is whilst ensuring that LBH's interests in relation to the wider Lehman Brothers group are appropriately represented. The Administrators consider that their actions support their objective of achieving a better result for LBH's creditors as a whole than would be likely if LBH were wound up (without first being in Administration) and anticipate that the Company will be dissolved after conclusion of the Administration.

Recoveries from debtors and investments in the review period total c.£633.3m.

Activities include:

- Continued development of the financial model to estimate the various range of outcomes for the estate as and when there are further developments in the Waterfall proceedings;
- Extensive participation in discussions with other Lehman affiliates to settle outstanding litigation and accelerate distributions to creditors culminating in the Inter-Affiliate Settlement;
- Planning and delivering the strategy for the third interim distribution to creditors;
- Regular review of debtor balances, liaising internally and with debtors in order to collect balances payable to LBH;
- Consideration of strategy to maximise the outcome for LBH's creditors;
- Updating strategy documents;
- Discussions with stakeholders in regards to this strategy;
- Review and maintenance of financial information including updating the estimated outcome statement;
- Regular case team meetings to manage case progression;
- Review of assets in subsidiary companies and determining strategies to best manage these in order to achieve closure of the subsidiary estates;
- Liaison with specialist teams. Conducting review of documents to assist with the strategy for Waterfall III;
- Correspondence with other parties' legal teams to find common ground and ensure process remains as efficient as possible;
- Development of strategy, arguments, position papers and skeletons for Waterfall III application and attendance at court; and
- Complying with the requirements of the Inter-Affiliate settlement.

## Statutory and Compliance - £53,208

The following tasks were undertaken in accordance with the Joint Administrators' statutory obligations or internal compliance.

- Ensuring that the Administrators comply with the requirements of the Insolvency (England and Wales) Rules 2016;
- Preparation of the Administrators' 17th progress report;
- Circulating progress report to creditors;
- Statutory filings at Companies House and the Court;
- Preparing and reviewing receipts and payments account for the 17th progress report to creditors;
- Preparing and reviewing detailed time cost information in support of the Joint Administrators remuneration;
- Carrying out six monthly case reviews;
- Liaising with the Administrators on statutory issues;
- Managing communications available on website; and
- Maintaining case files and the LBH database.

## Tax and VAT- £282,530

The following tasks were undertaken for VAT and tax compliance purposes.

- Analysis of the tax implications of the Inter-Affiliate settlement including:
  - o analysis of LBH specific tax issues (e.g. classification of receipt from LBEL for tax purposes and corresponding tax treatment/shelter, analysis of foreign exchange position on claims);
  - o initial consideration of the accounting treatment of the Inter-Affiliate deal;
  - o continued work on the calculation of the tax provision for inclusion in the financial model under a number of different assumptions;
  - o review of the creditor base and corresponding WHT position; and
  - o regular update meetings with the Administrator and attending various all-parties meetings.
- Preparing and finalising the 2016 accounts for corporation tax purposes;
- Preparation and review of the draft 2016 tax return;
- Review of the tax position following the reinstatement of LBCF and assignment to LBH of LBCF's claim into LBIE;
- Preparation for and attendance at quarterly tax update meetings;
- VAT reconciliation, preparation and submission of VAT returns;
- Ongoing review of tax controls within the Lehman group to ensure compliance with the Senior Accounting Officer legislation, including preparation and submission of the SAO certification; and
- Preparation of the Tax Strategy documentation for publication on behalf of the Lehman group to ensure compliance with Schedule 19 of the Finance Act (No.2.) 2016, describing the group's approach to tax risk, planning, governance and HM Revenue & Customs.

## Creditors and Distributions - £69,778

The following tasks were undertaken for the benefit of the creditors.

- Responding to creditor enquiries via the Lehman Affiliate mailbox and updating creditor information on LBH's database;
- Reviewing and analysing the level of claims submitted ahead of the third interim distribution;
- Preparation and circulating the Notice of Intended Dividend to creditors;
- Calculation of the third interim distribution; and
- Dealing with logistics of paying of the third interim distribution.

# Section 8 Joint Administrators' estimate of future time costs

LBH's principal outstanding positions are its shareholdings in LBEL and LBL, and its unsecured claims against LBHI2, all of which collectively with LBH are significantly impacted by the outcome of the Waterfall litigation. Whilst certain aspects of the Waterfall litigation remains ongoing, the Administrators continue to actively progress all other matters pertaining to the estate.

LBH is central to the UK Lehman structure. As such, the ultimate resolution of the estate will not only be subject to a range of complex matters affecting LBH itself, but also to matters where LBH is implicated by its relationships with entities in the wider Lehman group. Accordingly, the Administrators have set aside a reserve of £7.2m for their future time costs, broadly analysed as follows:

|  | (£m) |
| --- | --- |
| Accounting and treasury | 0.5 |
| Strategy and planning | 5.1 |
| Statutory and compliance, Tax and VAT | 1.0 |
| Creditors/distributions | 0.6 |
|  | 7.2 |

The above figures assume that:

- The Administration will be concluded prior to 30 November 2020, when a further extension would otherwise be required;
- Time costs relating to care and maintenance of the case will be incurred at a similar rate to that incurred in the reporting period; and
- There will be further distributions to the Company's unsecured unsubordinated creditors.

## Relationships

The Administrators have no business or personal relationships with the parties who approve their fees or who provide services to the Administration where the relationship could give rise to a conflict of interest.

## Details of subcontracted work

Certain centralised services are undertaken on behalf of LBH by employees retained by LBIE and LB SF Warehouse Limited; this includes the provision of certain tax and VAT services and key staff resource. The costs of such services are invoiced directly to LBH on a time costs basis and are invoiced directly to the estate. The indirect benefit to the Company's creditors is through cost savings as the Administrators consider it more efficient that this work is carried out by subcontractors.

## Legal and other professional firms

The Administrators have instructed the following professionals on this case to assist with various legal matters arising in the Administration. In addition, the directors of the subsidiaries have instructed Reed Smith LLP.

The selection of individual legal firms is determined by the jurisdiction and nature of the advice being sought, and whether a conflict exists. All professional firms instructed by the Administrators are required to provide a narrative explanation in support of invoices. All invoices are reviewed before being approved for payment. The Administrators have satisfied themselves that the level of legal and professional costs are appropriate.

| Service provided | Name of firm / organisation | Reason selected | Basis of fees |
|---|---|---|---|
| Legal services: | *Linklaters LLP* | *Industry knowledge* | *Time costs* |
| | *Dentons UKMEA LLP/ Dentons US LLP* | *Industry knowledge* | *Time costs* |
| | *Maples and Calder* | *Territory knowledge* | *Time costs* |
| | *Reed Smith LLP* | *Territory knowledge (subsidiaries)* | *Time costs* |
| | *Hogan Lovells International LLP* | *Industry knowledge (Waterfall III)* | *Time costs* |
| | *Saville & Co* | *Notarial certification* | *Fixed fee* |

In accordance with
Rule 18.6 of the
Insolvency (England &
Wales) Rules 2016.

# AM10
### Notice of administrator's progress report


Companies House

For further information, please
refer to our guidance at
www.gov.uk/companieshouse

## 1 Company details

| Company number | 0 1 8 5 4 6 8 5 |
|---|---|
| Company name in full | Lehman Brothers Holdings plc |

→ **Filling in this form**
Please complete in typescript or in
bold black capitals.

## 2 Administrator's name

| Full forename(s) | Gillian |
|---|---|
| Surname | Bruce |

## 3 Administrator's address

| Building name/number | PricewaterhouseCoopers LLP |
|---|---|
| Street | 7 More London Riverside |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |

## 4 Administrator's name ❶

| Full forename(s) | Derek |
|---|---|
| Surname | Howell |

❶ **Other administrator**
Use this section to tell us about
another administrator.

## 5 Administrator's address ❷

| Building name/number | PricewaterhouseCoopers LLP |
|---|---|
| Street | 7 More London Riverside |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |

❷ **Other administrator**
Use this section to tell us about
another administrator.

04/17 Version 1.0

# AM10
Notice of administrator's progress report

| 6 | Period of progress report | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| From date | d 1 | d 5 | | m 0 | m 3 | | y 2 | y 0 | y 1 | y 7 | |
| To date | d 1 | d 4 | | m 0 | m 9 | | y 2 | y 0 | y 1 | y 7 | |

| 7 | Progress report |
|---|---|
| | ☑  I attach a copy of the progress report |

| 8 | Sign and date |
|---|---|

| Administrator's signature | Signature |
|---|---|
| | X  ⟨signature⟩                    X |

| Signature date | d 1 | d 1 | | m 1 | m 0 | | y 2 | y 0 | y 1 | y 7 |
|---|---|---|---|---|---|---|---|---|---|---|

# AM10
## Notice of administrator's progress report

### 👤 Presenter information

You do not have to give any contact information, but if you do it will help Companies House if there is a query on the form. The contact information you give will be visible to searchers of the public record.

| | |
|---|---|
| Contact name | Harmeet S Harish |
| Company name | PricewaterhouseCoopers LLP |
| | |
| Address | 7 More London Riverside |
| | |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |
| DX | |
| Telephone | 0207 583 5000 |

### ✔ Checklist

**We may return forms completed incorrectly or with information missing.**

**Please make sure you have remembered the following:**
- ☐ The company name and number match the information held on the public Register.
- ☐ You have attached the required documents.
- ☐ You have signed the form.

### ❗ Important information

**All information on this form will appear on the public record.**

### ✉ Where to send

**You may return this form to any Companies House address, however for expediency we advise you to return it to the address below:**

The Registrar of Companies, Companies House, Crown Way, Cardiff, Wales, CF14 3UZ.
DX 33050 Cardiff.

### ℹ Further information

For further information please see the guidance notes on the website at www.gov.uk/companieshouse or email enquiries@companieshouse.gov.uk

This form is available in an alternative format. Please visit the forms page on the website at www.gov.uk/companieshouse

# Continuation page
Name and address of insolvency practitioner

✓ **What this form is for**
Use this continuation page to tell us about another insolvency practitioner where more than 2 are already jointly appointed. Attach this to the relevant form. ❶ Use extra copies to tell us of additional insolvency practitioners.

✗ **What this form is NOT for**
You can't use this continuation page to tell us about an appointment, resignation, removal or vacation of office.

→ **Filling in this form**
Please complete in typescript or in bold black capitals.

All fields are mandatory unless specified or indicated by *

## 1　Appointment type

Tick to show the nature of the appointment:

- ☑ Administrator
- ☐ Administrative receiver
- ☐ Receiver
- ☐ Manager
- ☐ Nominee
- ☐ Supervisor
- ☐ Liquidator
- ☐ Provisional liquidator

❶ You can use this continuation page with the following forms:
- VAM1, VAM2, VAM3, VAM4, VAM6, VAM7
- CVA1, CVA3, CVA4
- AM02, AM03, AM04, AM05, AM06, AM07, AM08, AM09, AM10, AM12, AM13, AM14, AM19, AM20, AM21, AM22, AM23, AM24, AM25
- REC1, REC2, REC3
- LIQ02, LIQ03, LIQ05, LIQ13, LIQ14,
- WU07, WU15
- COM1, COM2, COM3, COM4
- NDISC

## 2　Insolvency practitioner's name

| Full forename(s) | Julian Guy |
|---|---|
| Surname | Parr |

## 3　Insolvency practitioner's address

| Building name/number | PricewaterhouseCoopers LLP |
|---|---|
| Street | 7 More London Riverside |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |

# Continuation page
Name and address of insolvency practitioner

✓ **What this form is for**
Use this continuation page to tell us about another insolvency practitioner where more than 2 are already jointly appointed. Attach this to the relevant form. ❶ Use extra copies to tell us of additional insolvency practitioners.

✗ **What this form is NOT for**
You can't use this continuation page to tell us about an appointment, resignation, removal or vacation of office.

→ **Filling in this form**
Please complete in typescript or in bold black capitals.

All fields are mandatory unless specified or indicated by *

## 1  Appointment type

Tick to show the nature of the appointment:

☑ Administrator
☐ Administrative receiver
☐ Receiver
☐ Manager
☐ Nominee
☐ Supervisor
☐ Liquidator
☐ Provisional liquidator

❶ You can use this continuation page with the following forms:
- VAM1, VAM2, VAM3, VAM4, VAM6, VAM7
- CVA1, CVA3, CVA4
- AM02, AM03, AM04, AM05, AM06, AM07, AM08, AM09, AM10, AM12, AM13, AM14, AM19, AM20, AM21, AM22, AM23, AM24, AM25
- REC1, REC2, REC3
- LIQ02, LIQ03, LIQ05, LIQ13, LIQ14,
- WU07, WU15
- COM1, COM2, COM3, COM4
- NDISC

## 2  Insolvency practitioner's name

| Full forename(s) | Anthony Victor |
| Surname | Lomas |

## 3  Insolvency practitioner's address

| Building name/number | PricewaterhouseCoopers LLP |
| Street | 7 More London Riverside |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |

# Continuation page
## Name and address of insolvency practitioner

✓ **What this form is for**
Use this continuation page to tell us about another insolvency practitioner where more than 2 are already jointly appointed. Attach this to the relevant form. ❶ Use extra copies to tell us of additional insolvency practitioners.

✗ **What this form is NOT for**
You can't use this continuation page to tell us about an appointment, resignation, removal or vacation of office.

→ **Filling in this form**
Please complete in typescript or in bold black capitals.

All fields are mandatory unless specified or indicated by *

## 1　Appointment type

Tick to show the nature of the appointment:

☑ Administrator
☐ Administrative receiver
☐ Receiver
☐ Manager
☐ Nominee
☐ Supervisor
☐ Liquidator
☐ Provisional liquidator

❶ You can use this continuation page with the following forms:
- VAM1, VAM2, VAM3, VAM4, VAM6, VAM7
- CVA1, CVA3, CVA4
- AM02, AM03, AM04, AM05, AM06, AM07, AM08, AM09, AM10, AM12, AM13, AM14, AM19, AM20, AM21, AM22, AM23, AM24, AM25
- REC1, REC2, REC3
- LIQ02, LIQ03, LIQ05, LIQ13, LIQ14,
- WU07, WU15
- COM1, COM2, COM3, COM4
- NDISC

## 2　Insolvency practitioner's name

| Full forename(s) | Steven |
|---|---|
| Surname | Pearson |

## 3　Insolvency practitioner's address

| Building name/number | PricewaterhouseCoopers LLP |
|---|---|
| Street | 7 More London Riverside |
| | |
| Post town | |
| County/Region | London |
| Postcode | S E 1 2 R T |
| Country | United Kingdom |