Luke A. Barefoot
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Attorneys for Barclays Bank Plc*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re                                    :    Chapter 11
                                         :
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :    Case No. 08-13555 (SCC)
                                         :
        Debtors.                         :    Jointly Administered
                                         :
---------------------------------------------------------------x

**OBJECTION OF BARCLAYS BANK PLC TO MOTION OF THE PLAN
ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE PLAN
AND JOINDER IN THE OBJECTION OF DEUTSCHE BANK AG, LONDON BRANCH**

Barclays Bank PLC ("Barclays"), as a holder of ECAPS, hereby objects (this "Objection") to the *Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Doc. No. 57036] (the "Motion") and joins in the objection to the Motion filed by Deutsche Bank AG, London Branch [Doc. No. 57490] (the "Deutsche Bank Objection").[1]

**PRELIMINARY STATEMENT**

1.    The relief the Motion purports to seek is fundamentally at odds with the terms of the confirmed Plan and the legitimate expectations and rights of holders of the ECAPS. At base, to permit the Plan Administrator to operate in an entirely fictional world in which preferred shares of LBHI were somehow issued on the Commencement Date (which they were not), and

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

such shares were then cancelled pursuant to the terms of the Plan (when they were not), is at odds with factual, legal and economic reality. In particular, the terms of the Plan provide for treatment and distributions to LBHI equityholders in accordance with their rights as they existed "*immediately prior* to the Commencement Date." Plan § 4.17(c). Even under the fiction that the Plan Administrator now asks this Court to accept, the Trigger Event that would purportedly permit substitution of preferred LBHI shares was the Commencement Date itself, with substitution occurring "*following* the occurrence of a Trigger Event [here, on the Commencement Date]." Mot. ¶ 16. The Plan thus provides no basis for treatment under Class 12 for the preferred shares that the Plan Administrator would somehow retroactively create on the Commencement Date for the holders of the ECAPS. In addition, the Motion fails to address how the Plan Administrator can issue the Substituted Preferred Stock nearly a decade after the Commencement Date without violating Delaware law or U.S. securities laws, even if the Plan Administrator purports to issue the securities as if such issuance was made on the Commencement Date. For these reasons, and as more fully set forth in the Deutsche Bank Objection, the Motion should be denied in its entirety.

## ARGUMENT[2]

### I. The Class 12 Plan Treatment Hypothesized in the Motion Applies Only to Equity Interests Actually Existing Before the Commencement Date

2.     The Plan Administrator's supposition that holders of ECAPS would have received Class 12 Equity Interests under the Plan that entitled them to residual value of the LBHI estate is incorrect under the plain terms of the Plan and the Partnership Agreements. Mot. ¶ 19. While

---

[2]    Rather than re-state facts with which the Court is already familiar, Barclays incorporates by reference the factual background set forth in the Deutsche Bank Objection. See Deutsche Bank Objection ¶¶ 10-38. Any facts relevant to this Objection that are not discussed in the Deutsche Bank Objection are stated herein.

the Motion's selective quotations suggest otherwise, the Plan only considers respective rights existing *immediately prior* to the petition date to determine the rights of and distributions to holders of Class 12 Equity Interests. Specifically, the Plan is clear that Class 12 Equity Interests will participate in and receive distributions only if such interests existed immediately prior to the Commencement Date:

> [I]n the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its share of any remaining assets of LBHI consistent with such holder's rights of payment **existing immediately prior to the Commencement Date**." Plan, § 4.17 (emphasis added).

3. By contrast, the Motion is clear that it contemplates preferred stock fictionally "issued on the Commencement Date for all purposes." Mot. ¶ 20; Mot. Ex. A (Proposed Order) ¶ 2 (providing for treatment under the Plan "as if such Substituted Preferred Stock has been issued on the Commencement Date"). This proposed timing is no accident. Because the Trigger Event under the Partnership Agreements is the Commencement Date itself, as the Plan Administrator acknowledges in the Motion, it is impossible for the recipients of Substituted Preferred Stock to have had any entitlement to such stock "prior to the Commencement Date." See Mot. ¶ 16. Instead, the Partnership Agreements contemplate that any Preferred Securities Substitution would have occurred "[a]s soon as reasonably practicable *following* the occurrence of a Trigger Event." Id. (emphasis added).

4. This disconnect alone is sufficient to defeat the Motion. By treating the fictional shares as if they had been issued on the Commencement Date, as the Motion requests, the Plan Administrator seeks to somehow replace those retroactively issued preferred shares with interests under Class 12 of the Plan, which actually would have the effect of excluding the beneficiaries of those shares from any potential distributions. The plain terms of the confirmed Plan thus belie

3

any suggestion that under the scheme the Plan Administrator has proposed, ECAPS holders will be treated "consistent with LBHI's preferred equity." Mot. ¶ 20.

5.      Moreover, throughout the Motion, the Plan Administrator asserts that the proposed issuance of Substituted Preferred Stock "aligns the parties' economic entitlements with their expectations." Mot. ¶20. But the Plan Administrator's desire to create an imagined world in which current ECAP holders are treated *as if* they were issued preferred stock on the Commencement Date ignores the critical fact that despite the passage of nearly ten years, the proposed issuance of Substituted Preferred Stock *never actually occurred*. As of each of September 2008, December 2011, and at present, the ECAPS holders had never been issued preferred stock. ECAPS holders were thus without notice that the Plan could affect their rights as such, and had no reason to participate in negotiations of the Plan or consider issues raised by potential application of certain of its terms to preferred stock that had never been issued. In this light, to say that the *nunc pro tunc* relief sought by the Motion nearly a decade after the Commencement Date is somehow consistent with "expectations *ex ante*" (Mot. ¶ 20) truly strains credulity. To the contrary, the fact that the Plan's distribution provisions for Class 12 apply only to pre-Commencement Date equity and that the Plan nowhere so much as mentions post-Commencement Date equity only underscores that until LBHI concocted the relief sought in the Motion, no party's "expectations" included the issuance of any additional LBHI equity.

II.     **The Motion Fails to Establish the Validity of the Hypothetical Preferred Stock Issuance Under Delaware Law or SEC Regulation**

6.      The Plan Administrator has provided no evidence that the proposed issuance of Substituted Preferred Stock would comply with governing Delaware law or federal securities law. This is particularly telling where there is good reason to believe that a current issuance of preferred LBHI shares would violate both Delaware corporate law and U.S. Securities Exchange

4

Commission ("SEC") regulations. Regardless of whether the Plan Administrator thinks the issuance of Substituted Preferred Stock can be treated as if it occurred in 2008, the Plan Administrator acknowledges that, if the Motion is granted, it intends to <u>actually issue</u> preferred stock in the near future and therefore cannot ignore the law of its state of incorporation or SEC regulations. Mot. ¶1.

7. First, even if the Plan Administrator was correct that the pre-Commencement Date LBHI charter was the governing document, the relevant language cited by the Plan Administrator plainly establishes that a board resolution is required prior to issuing any new preferred equity:

> Each such class or series of Preferred Stock shall have such voting powers, full or limited, or no voting powers, and such preferences and relative, participating, optional or other special rights and such qualifications, limitations or restrictions thereof, as **shall be stated in such resolution or resolutions providing for the issue of such class or series of Preferred Stock as may be adopted from time to time by the Board of Directors** prior to the issuance of any shares thereof pursuant to the authority hereby expressly vested in it, **all in accordance with the laws of the State of Delaware.**

Charter, §4.1; Mot. ¶18 (emphasis added)

While the Plan Administrator would like all the benefits of treating the proposed issuance of Substituted Preferred Stock as if it occurred in 2008, it cannot conveniently ignore all the corporate law requirements that would have applied to an issuance of preferred equity in 2008. Although LBHI has a post-Effective Date board of directors, this board is composed of different entities with different interests than the board of directors of LBHI as it existed in 2008 and that would have been tasked with considering stakeholders' interests in issuing preferred shares.[3] Tellingly, the Plan Administrator makes no mention of any board authorization of the current

---

[3] This is not a mere theoretical concern where the Plan Administrator's hypothetical proposal would have LBHI issue new preferred equity immediately after taking steps to authorize commencement of these Chapter 11 cases.

5

proposed equity issuance even though the language in the charter cited by the Plan Administrator states that a resolution of the board of directors is required prior to issuing any series of Preferred Stock.  While the Plan Administrator may attempt to have the current LBHI board of directors pass a resolution authorizing the proposed issuance of Substituted Preferred Stock, the Plan Administrator has pointed to no authority indicating that a board of directors is permitted to step into the shoes of a previously existing board of directors and issue shares as if such shares were issued nearly a decade prior.  Barclays has found no authority to suggest that such a brazen attempt to expand the scope of powers of a current board of directors has ever been authorized under Delaware law and submits that this Court should not enable the Plan Administrator to rewrite 2008 history in 2018.

8. The fact that the LBHI board of directors did not authorize the proposed issuance of Substituted Preferred Stock in 2008, or at any time prior to the amendment of the Charter on the Effective Date of the Plan, means any issuance of preferred equity by LBHI in 2018 under its current post-Effective Date charter would be null and void.  As Deutsche Bank correctly highlighted in the Deutsche Bank Objection, Delaware law is clear that stock issued without legal authority is null and void. Deutsche Bank Obj. ¶48, FN 4; Boris v. Schaheen, No. CV 8160-VCN, 2013 WL 6331287, at *14 (Del. Ch. Dec. 2, 2013) ("[S]tock is valid only if it is issued pursuant to a written instrument evidencing board approval of the stock issue.").  Without appropriate board approval "in accordance with the laws of the State of Delaware," as the former charter required, the proposed issuance of Substituted Preferred Stock would be invalid *ab initio*.

9. In addition to potential state law restrictions on the proposed issuance of Substituted Preferred Stock, SEC regulations also may restrict or prohibit the Plan Administrator's ability to cause LBHI to issue new preferred equity.  Under Section 5 of the

Securities Act of 1933, securities offerings must be registered by filing a registration statement with the SEC, unless a statutory exemption to the registration requirement applies. See 15 U.S.C. § 77(e); S.E.C. v. Bronson, 14 F. Supp. 3d 402, 407 (S.D.N.Y. 2014). The Plan Administrator provides no evidence in the Motion that the proposed issuance of the Substituted Preferred Stock would either be exempt or registered with the SEC.[4] In fact, as expressly required by the Plan, the Plan Administrator filed a Form 15 with the SEC for the purpose of terminating the registration of any of LBHI's publicly traded securities on the Effective Date.[5] Moreover, the Plan has expressly cancelled the type of securities that LBHI would now issue. Plan § 4.17. And while the Plan Administrator hopes to issue such securities pursuant to the pre-Commencement Date charter (as if it was still governing), it conveniently ignores the fact that the issuance will actually occur in 2018 and be subject to all applicable securities regulations in 2018. While the Plan Administrator attempts to assuage any potential concern that the Court and ECAP holders should have regarding potential tax consequences of the transaction by assuring the Court that it will seek confirmation from the Internal Revenue Service that the substitution will not result in any adverse tax consequences for the Chapter 11 Estates (Mot. ¶ 20), the Plan Administrator makes no mention of any confirmation from the SEC that this transaction is permissible in the first place.

10.    While the Plan Administrator might like to think that it can simply treat the whole proposed issuance of Substituted Preferred Stock as if it occurred in 2008, there is simply no evidence that the SEC, the IRS, or Delaware state law would also be willing to permit LBHI to

---

[4]    Even if, in response to this Objection, the Plan Administrator takes the position that an exemption applies, such an exemption may come with trading restrictions that further underscore that the unregistered shares that LBHI now proposes to issue in 2018 cannot be deemed the equivalent of shares that could have been issued under a valid registration statement in 2008 (but were not).

[5]    Plan §4.17; Lehman Brothers Holdings Inc., Securities Registration Termination (Form 15) (Mar. 6, 2012).

7

travel back nearly a decade to fictionally issue preferred securities. Barclays, like Deutsche Bank, forcefully objects to the Plan Administrator's proposed time travelling experiment and request that the Court reject any such attempt to rewrite history.

## **RESERVATION OF RIGHTS**

11. Barclays reserves all of its rights and remedies in connection with the subject matter of the Objection and/or under and in respect of the Partnership Agreements and all documents related thereto (whether such rights and remedies exist in the laws of any jurisdiction, in equity, contract or otherwise, whether or not pleaded in this Objection). Nothing stated or omitted in this Objection or in connection with the Motion generally is intended to be or should be construed as a waiver of any of such rights or remedies, acceptance of any breach of contractual terms or other duties or affirmation of the existence of any contractual relationship. In the Motion, the Plan Administrator concedes that interpretation of the rights and remedies under the Partnership Agreements are for the English Court to determine. Accordingly, nothing in this Objection is intended to waive, limit, restrict or otherwise prejudice any arguments, rights or remedies which Barclays may have under or in respect of the Partnership Agreements including their true meaning and effectiveness or under English law generally. This Objection is filed without prejudice to any other factual and legal statements, arguments or evidence which Barclays may place before the English Court in connection with the Partnership and/or the Partnership Agreements.

12. Barclays also joins Deutsche Bank in submitting that because the Motion does not raise issues of English law, if the Court were inclined to grant the Motion, its approval order should not purport to resolve any English law issues, which should properly be determined by the English Court.

## CONCLUSION

For these reasons and those set forth in the Deutsche Bank Objection, Barclays respectfully requests that this Court deny the Motion in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York
January 30, 2018

                                  CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                  By:  */s/ Luke A. Barefoot*
                                       Luke A. Barefoot
                                       One Liberty Plaza
                                       New York, NY 10006
                                       Telephone:  (212) 225-2000
                                       Fax:  (212) 225-3999

                                       *Attorneys for Barclays Bank PLC*