Hearing Date and Time: April 17, 2018 at 10:00 a.m. (Eastern Time)
Objection Deadline: January 31, 2018 at 4:00 p.m. (Eastern Time)

David R. Seligman, P.C.
Joseph M. Graham (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:  david.seligman@kirkland.com
        joe.graham@kirkland.com

Mark McKane, P.C. (*pro hac vice* pending)
Kevin Chang (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL**
**LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:  mark.mckane@kirkland.com
        kevin.chang@kirkland.com

*Counsel to the Joint Liquidators*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) | Case No. 08-13555 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**LIMITED OBJECTION OF THE JOINT LIQUIDATORS TO THE MOTION OF THE
PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE
MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN
BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory

LLP (the "***Joint Liquidators***")[1] hereby file this limited objection ("***Limited Objection***") to the

*Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third*

*Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 23023-1] (the "***Plan***").

[Docket No. 57036] (the "*Motion*").[2]  In support of the Limited Objection, the Joint Liquidators respectfully state as follows.

## Preliminary Statement

1.      The Joint Liquidators are licensed insolvency practitioners in England and are liquidators of LB GP No. 1 Ltd. (the "*General Partner*"), the general partner for five limited partnerships (the "*Partnerships*") created to raise regulatory capital for LBHI and its U.K.-affiliate, Lehman Brothers Holdings Plc ("*LBH Plc*"), which is in administration under U.K. insolvency law.  The Joint Liquidators are tasked with liquidating the General Partner and winding up the Partnerships, and thereafter distributing any available surplus assets to those who are entitled.  The Joint Liquidators accordingly file this Limited Objection to provide the Court with the necessary background to put the Motion in the appropriate context, and, to the extent necessary, to ensure that the interests of all stakeholders are protected, particularly those who likely will be prejudiced by the relief LBHI seeks, but who may not otherwise be fully represented.

2.      *First*, the Joint Liquidators note that they are under a duty to both the Partnerships and the English High Court that appointed them, to wind up the Partnerships and ensure that all arguments relevant to any dispute concerning the Partnerships are properly positioned before any court so that the dispute may be determined fairly.  Here, LBHI's Motion implicates the rights of holders ("*ECAPS Holders*") of preferred securities ("*ECAPS*") issued by the Partnerships in accordance with the prospectuses governing those ECAPS ("*Prospectuses*").  Specifically, the Prospectuses contain a substitution provision ("*ECAPS Substitution Provision*") that, if

---

[2]    On January 5, 2018, LBHI's counsel agreed to a two-week extension of the deadline by which the Joint Liquidators must respond to the Motion, from January 17, 2018, to January 31, 2018.  This Limited Objection is therefore a timely response to the Motion.

triggered, has the potential to extinguish the ECAPS Holders' claims to certain assets held by the Partnerships and to elevate the claims of LB Investment Holdings Ltd. (the "***Preferential Limited Partner***"), a party to the agreements governing each of the respective Partnerships (the "***Partnership Agreements***").

3.      ***Second***, the Joint Liquidators must apprise this Court of additional relevant facts for its consideration of LBHI's Motion.  Specifically, attached as exhibits to the accompanying *Declaration of Mark McKane in Support of the Limited Objection of the Joint Liquidators to the Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "***McKane Decl.***") are copies of letters from 2009 exchanged between LBHI and the General Partner.  This correspondence illustrates that soon after LBHI's bankruptcy filing and years before the Court entered the Confirmation Order and LBHI substantially consummated its Plan, LBHI was made aware that the filing of the chapter 11 cases may have triggered the ECAPS Substitution Provision, and yet LBHI took no action.  The Joint Liquidators came into possession of this correspondence as part of their mandate and believe it would be inappropriate not to bring this correspondence to the Court's attention.

4.      ***Third***, if the Motion is successful, the Joint Liquidators anticipate that it will be necessary for proceedings to be commenced in the High Court in London to determine issues relating to the ECAPS Substitution Provision, which will be governed by English law.   Given the potential for litigation in England in due course, the resolution of LBHI's Motion takes on heightened significance for the Partnerships.  While before today one ECAPS Holder, Deutsche Bank AG ("***Deutsche Bank***"), has filed a comprehensive objection [Docket No. 57490] (the "***Deutsche Bank Objection***"), LBHI has refused to confirm (without caveats) whether or not it

3

will challenge the standing of any ECAPS Holder to oppose the Motion.  Given the Joint

Liquidators' duty to all those who have an interest in the Partnerships' assets, the Joint

Liquidators believe that it is important that all parties have a full and fair opportunity to present

their positions with respect to LBHI's Motion.  Accordingly, after reviewing the Motion and the

Deutsche Bank Objection, and conferring with U.S. bankruptcy counsel, the Joint Liquidators

have determined that it is appropriate to join in with and adopt the Deutsche Bank Objection, in

the event and to the extent that this Court determines that Deutsche Bank as an ECAPS Holder

lacks standing to be heard regarding the Motion.

### Background

**A.      Overview Of LB GP No. 1 Ltd. And Related U.K. Limited Partnerships.**

5.      LB GP No. 1 Ltd. is the General Partner for five Partnerships formed in 2006 to

fund, on a subordinated basis, regulatory capital to be made available to LBH Plc and LBHI:

(a) Lehman Brothers UK Capital Funding LP ("*LP I*"); (b) Lehman Brothers UK Capital

Funding II LP ("*LP II*"); (c) Lehman Brothers UK Capital Funding III LP ("*LP III*");

(d) Lehman Brothers UK Capital Funding IV LP ("*LP IV*"); and (e) Lehman Brothers UK

Capital Funding V LP ("*LP V*").  The Partnerships are governed by their respective Partnership

Agreements.  In addition to the General Partner, LB Investment Holdings Ltd., whose ultimate

parent is LBHI, was appointed the Preferential Limited Partner for each of the Partnerships.  *See*

McKane Decl., Ex. 1 ("*LP III Partnership Agreement*") § 2.6(b).[3]

6.      The General Partner is a company incorporated in England and Wales under U.K.

law and is part of the Lehman Group.  As of September 2008, LBHI was the sole member of the

General Partner.  The Partnership Agreements provide that: (a) they are "governed by, and shall

---

[3]    The LP III Partnership Agreement is attached to the McKane Declaration as Exhibit 1, which upon information
and belief, is representative of the Agreements for each of the Partnerships.

be construed in accordance with, the laws of England"; (b) "LBHI irrevocably agrees for the benefit of the other parties that the courts of England shall have jurisdiction to hear and determine any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with [these] Agreement[s] . . . and, for such purposes, irrevocably submits to the jurisdiction of such courts"; and (c) "LBHI irrevocably waives any objection which it might now or hereafter have to the courts of England being nominated as the forum to hear and determine any Proceeding and to settle any Disputes and agrees not to claim that any such court is not a convenient or appropriate forum."  LP III Partnership Agreement § 19.2(a).

7.     The Partnerships were formed to raise regulatory capital for LBHI and LBH Plc by issuing the ECAPS to investors.  Upon formation: (a) LP I issued EUR $225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-Voting, Non-Cumulative Perpetual Preferred Securities; (b) LP II issued EUR $250,000,000 Euro Fixed Rate Guaranteed Non-Voting, Non-Cumulative Perpetual Preferred Securities; (c) LP III issued EUR $500,000,000 Fixed / Floating Rate Enhanced Capital Advantaged Preferred Securities; (d) LP IV issued EUR $200,000,000 Euro Fixed Rate Enhanced Capital Advantaged Preferred Securities; and (e) LP V issued USD $500,000,000 Fixed Rate Enhanced Capital Advantaged Preferred Securities.  The majority of the funds the Partnerships raised from issuing the ECAPS were used to purchase subordinated notes issued by LBHI and LBH Plc.  LPs IV and V purchased LBHI-issued subordinated notes, and LPs I, II, and III purchased LBH Plc-issued subordinated notes (collectively, the "*Subordinated Notes*").  The Prospectuses issued by the Partnerships, and their respective Partnership Agreements, govern the rights and obligations of ECAPS Holders.

8.     Importantly for the purposes of LBHI's Motion, the Prospectuses include a substitution provision that permits the ECAPS to be substituted with preferred LBHI stock upon

certain conditions.  The first condition is the occurrence of a "Trigger Event," which "shall occur

(i) if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership."  McKane

Decl., Ex. 2 ("*LP III Prospectus*") § 1.[4]    The second condition is that no "Supervisory

Authority" has objected to the substitution, defined as "any organisation or authority having

supervisory responsibility for the prudential supervision of financial institutions engaged in

regulated activities carried on by LBHI or its affiliates in such jurisdiction."  *Id.*  The third

condition is that a "winding-up of LBHI" has not occurred.  *Id.* § 5.1 ("No Preferred Securities

Substitution will take place and the Holders will continue to hold their Preferred Securities and

all their rights thereunder if prior to the Substitution Date, a winding-up of LBHI occurs.").  If all

three conditions are satisfied, the General Partner shall "take all reasonable steps to cause the

substitution of the Preferred Securities by . . . Substituted Preferred Stock," constituting

"fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends

calculated in the same manner as the Preferred Securities, having no voting rights . . . and being

subject to optional redemption in the same manner as the Preferred Securities."  *Id.*  The

Prospectuses further provide that "[n]o Preferred Securities Substitution will take place and the

Holders will continue to hold their Preferred Securities and all their rights thereunder if prior to

the Substitution Date, a winding-up of LBHI occurs."  *Id.* § 5.1.  The ECAPS are "governed by,

and construed in accordance with, English law."  *Id.* § 14.

9.    The Partnership Agreements also provide the order of priority to whom the

Partnerships' assets are to be distributed upon dissolution: ECAPS Holders are first entitled to

repayment, followed by the Preferential Limited Partner, and lastly, any surplus reverts to the

---

[4]    Attached as Exhibit 2 to the McKane Declaration is the Prospectus for the ECAP issued by LP III, which upon information and belief, is representative of the Prospectuses governing the ECAPS issued by the other Partnerships.

General Partner.  *See* LP III Partnership Agreement § 16.5(a)(i)–(iii).  An ECAPS Substitution would change this waterfall priority scheme by eliminating the rights of ECAPS Holders.  In other words, currently the ECAPS Holders have a first priority to the Partnerships' assets, likely resulting in a meaningful recovery on account of their ECAPS investments.  But upon an ECAPS Substitution, those same ECAPS Holders would then have rights to distributions only from LBHI's Plan Trust as though they had been preferred shareholders of LBHI prior to the Effective Date, but would have no right to a recovery from the Partnerships' assets, thus virtually guaranteeing the current ECAPS Holders no recovery on their ECAPS investments.

   **B.    LBHI's Chapter 11 Cases.**

   10.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced the above-captioned chapter 11 cases.  In those cases, two of the Partnerships were creditors of LBHI.  Specifically, LPs IV and V held Subordinated Notes claims against LBHI that were addressed in LBHI's Plan.  *See* Plan § 4.13 (treatment of Subordinated Class 10A Claims against LBHI).  Moreover, LBHI was a party to each of the Partnership Agreements, and thus each Partnership had a vested interest in the treatment of those Partnership Agreements during LBHI's chapter 11 cases.  *See* LP III Partnership Agreement at 2.

   11.    Soon after the Petition Date, upon information and belief, the General Partner made several written and oral requests to LBHI to take a position with respect to issuing the Substituted Preferred Stock, given the commencement of an LBHI bankruptcy.   On January 20, 2009, the General Partner sent a letter to LBHI: (a) notifying LBHI that a Trigger Event occurred as of the Petition Date; (b) detailing the General Partner's multiple previous oral and written requests to LBHI's advisors to issue the Substituted Preferred Stock; (c) noting that the General Partner "must advise the holders of the Preferred Securities as soon as possible of the status of the Preferred Securities and whether Substituted Preferred Stock will be issued"; and

7

(d) urgently requesting a response to the General Partner's request for LBHI to issue Substituted Preferred Stock. *See* McKane Decl., Ex. 3. A month later, on February 24, 2009, LBHI sent a response letter to the General Partner, stating that "we cannot say at this time whether Lehman Brothers Holdings Inc. will be able to issue Substituted Preferred Stock, nor give you any indication as to when we will be in a position to determine the same." *See* McKane Decl., Ex. 4.[5]

12.    This correspondence was delivered to the Joint Liquidators from Law Debenture Trust Corporation p.l.c. ("*LDTC*"), which was the entity responsible for managing the affairs of the General Partner until the appointment of the Joint Liquidators. LDTC, which is regulated by the Financial Conduct Authority (a U.K. financial regulatory body), dealt with matters on behalf of the General Partner to ensure compliance with applicable regulatory laws in England.

13.    In 2010, all of the General Partner's directors and corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, but was restored upon the application of Deutsche Bank, as explained below.

14.    On December 6, 2011, the Court approved and entered the order confirming the Plan [Docket No. 23023] (the "*Confirmation Order*"), which Plan was substantially consummated and went effective on March 6, 2012 (the "*Effective Date*"). The Plan provides, in relevant part, that as of the Effective Date, "all LBHI Stock shall be cancelled[.]" Plan § 4.17(b).

**C.    Appointment of Joint Liquidators.**

15.    On June 20, 2016, one of the ECAPS Holders, Deutsche Bank, filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon information and belief, Deutsche Bank sought to

---

[5]    To ensure the completeness of the record before the Court, the Joint Liquidators are submitting copies of this correspondence, which were not referenced in either the Motion or the Deutsche Bank Objection.

8

restore the General Partner because it identified assets potentially available for distribution to ECAPS Holders. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint the Joint Liquidators. The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017.

16. The General Partner has no assets and few liabilities. The Joint Liquidators were appointed as liquidators of the General Partnership so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant Partnership Agreements and applicable English law. The Partnerships' assets currently consist of cash held by three of the five Partnerships and claims held by each of the Partnerships against other entities. As set forth above, the Partnership Agreements are governed by English law and are accordingly subject to the jurisdiction of the English Court. In that regard, the High Court in London made an order, pursuant to section 6(3) of the Limited Partnerships Act of 1907, that the affairs of the Partnerships be wound up by the Joint Liquidators in their capacities as insolvency practitioners. *See* McKane Decl., Ex. 5 ¶ 5. Pursuant to the High Court's order, the Joint Liquidators have a dual role as liquidators of the General Partner and also insolvency practitioners responsible for winding-up the Partnerships. *See id.* ¶¶ 2–5.

17. On February 27, 2017, and again on June 2, 2017, LBHI sent written confirmation to the General Partner and the Joint Liquidators that it had identified funds in its possession and that it "received, and continues to hold . . . on behalf of" LP III, LP IV, and LP V: $12 million Euros for LP III, $10 million Euros for LP V, and $26,535,355.99 USD for LP V. The Joint

Liquidators were aware of these funds prior to February 2017 but not the exact amounts.  LBHI ultimately provided these funds to the Joint Liquidators in September and October 2017.  In the interim, LBHI filed an application to reinstate the Preferential Limited Partner to the Register of Companies through a subsidiary, Lehman Brothers UK Investments Limited, which proceedings remain ongoing.

18.    Shortly thereafter, LBHI filed the Motion.  On January 17, 2018, Deutsche Bank filed its Objection to the Motion.  On January 19, 2018, the Joint Liquidators sent a letter to LBHI, seeking assurances that LBHI would not challenge Deutsche Bank's standing to pursue its arguments against the Motion.  On January 24, 2018, LBHI sent a response, refusing to give those assurances without the Joint Liquidators' agreement not to object to or even seek to be heard on the Motion—caveats that would prevent the Joint Liquidators from even providing the Court with additional background on the issues raised therein.

## <u>Argument</u>

19.    As the officeholders appointed by LBHI itself to be joint liquidators of the General Partner and as insolvency practitioners appointed by the High Court in London to wind up the Partnerships, the Joint Liquidators have a number of duties with respect to the winding up of the General Partner and the Partnerships, including: (a) investigating the affairs of the General Partner and the Partnerships; (b) identifying and managing the Partnerships' assets; (c) circulating information to the current investors in the Partnerships who are the ECAP Holders; and (d) realizing the estates' assets and distributing the proceeds to those entitled to them in accordance with the priorities set forth in the controlling documents, including the Partnership Agreements and the Prospectuses, and applicable English law.  LBHI's Motion directly implicates those duties.  Moreover, the Joint Liquidators also have an interest in the

Motion because of the Partnerships' status as creditors of LBHI.  Two of the Partnerships are creditors of LBHI through the Subordinated Notes, with corresponding bankruptcy claims and rights to distributions in accordance with the priorities set forth in the Plan.

20.     Pursuant to their fiduciary duties and responsibility to liquidate the General Partner and wind up the Partnerships, the Joint Liquidators have investigated matters relating to the Motion and taken advice from their U.S. legal counsel on the relief sought therein.  The Joint Liquidators have an obligation to ensure that this Court is fully apprised of all facts and issues relevant to the Motion.  This obligation arises out of the responsibility that the Joint Liquidators have to all parties that claim an interest in the Partnerships' assets and that, therefore, have an interest in the outcome of the Motion.  The ECAPS Holders are one such stakeholder group, given the potential for the substitution of ECAPS with LBHI preferred stock, LBHI is another. Deutsche Bank is only one of many ECAPS Holders.

21.     As insolvency practitioners tasked with winding up the Partnerships' estates, the Joint Liquidators believe that ECAPS Holders should have the opportunity to present their views in favor of or in opposition to the Motion, given the clear and material impact that an ECAPS Substitution will have on their recoveries.  While Deutsche Bank, a substantial ECAPS Holder, filed a comprehensive objection, there may also be a significant number of other ECAPS Holders who may or may not have received notice of the Motion, or lack the understanding of the nature or relief requested therein or the resources to retain U.S. counsel to present their positions to the Court.  The Joint Liquidators note that it does not appear that LBHI has undertaken any additional effort to serve the Motion on or otherwise notify any ECAPS Holder not already represented in these chapter 11 cases and included in the ECF electronic service list.  *See Affidavit of Service* [Docket No. 57045].

22.     To that end, and in the interest of ensuring a complete record before the Court, the Joint Liquidators are submitting herewith correspondence confirming that LBHI was aware of the potential impact of the ECAPS Substitution years before the Court entered the Confirmation Order and LBHI substantially consummated its Plan.  As previously noted, attached as Exhibits 1 and 2 to the McKane Declaration are true and accurate copies of correspondence sent to and from LBHI regarding the ECAPS Substitution Provision in the Prospectuses, which illustrate that: LBHI was notified multiple times soon after the Petition Date that a Trigger Event occurred; that LBHI was aware of the General Partner's concerns regarding whether Preferred Substituted Stock would be issued; and that LBHI took no further steps to cause an ECAPS Substitution.  *See* McKane Decl., Exs. 1, 2.  The Joint Liquidators had this correspondence in their possession and believe it would be inappropriate not to bring it to the Court's attention.

23.     Further, the Joint Liquidators wish to make the Court aware that LBHI's proposed ECAPS Substitution contemplates litigation in two jurisdictions.  This Court's adjudication of the Motion is the first stage.  If the Motion is denied, that denial will likely resolve the substitution question in its entirety.  If the Motion is granted, however, the Joint Liquidators will be required to seek guidance from the English courts regarding whether LBHI's proposal comports with the applicable Partnership Agreements and Prospectuses, which are governed by English law and contain English choice-of-venue provisions.  *See* LP III Partnership Agreement § 19.2(a); LP III Prospectus § 14.  Among other things, the potential English proceedings will involve the consideration of English contract law, including the law applicable to the construction and interpretation of contracts; whether a "winding up" of LBHI has occurred under the relevant Partnership Agreements; whether a "Trigger Event" has occurred in accordance with the terms of the ECAPS; whether an ECAPS Substitution can now take place;

and implications under English securities laws, including the rights of ECAPS Holders relative to the Preferred Limited Partner; whether there is any objection from a "relevant Supervisory Authority"; and the effect of any such objection. Given the broad scope of these issues, the Joint Liquidators expect the potential English proceedings to be contentious, extending, with any appeal, to many months, involving numerous parties in interest, and imposing a significant burden on the Partnership estates.

24. Resolution of LBHI's Motion takes on even greater significance to the Partnerships, given the potential for time-consuming and expensive litigation that will materially decrease the present value of distributions to the Partnerships' claimants. Such burdensome litigation will only result if this Court determines, in the first instance, that the relief sought by LBHI's Motion is well-founded and not violative of the Bankruptcy Code, any other Court orders, including the Confirmation Order, and Plan-related documents, including the Plan Trust Agreement and the Amended and Restated Certificate of Incorporation for LBHI. To the extent the Court is inclined to grant the Motion, given the necessary follow-on English proceedings that must occur, the Joint Liquidators respectfully request that any order of this Court preserve all of the parties' respective rights, so that an English court has a full and fair opportunity to address all of the issues properly raised for its consideration, and so that there are no jurisdictional or other conflicts between the U.S. and English courts.

25. Finally, as described above, the Joint Liquidators sought clarification from LBHI whether it would challenge the standing of Deutsche Bank or other ECAPS Holders to assert objections to the Motion. The Joint Liquidators received no unconditional assurances. Instead, LBHI conditioned its agreement not to raise standing issues on the Joint Liquidators agreeing not to object to, or even be heard with respect to, the Motion—a condition the Joint Liquidators

could not accept given their duties and responsibilities.  Thus, the Joint Liquidators file this Limited Objection to protect the rights of ECAPS Holders to present their positions regarding the Motion and to place additional material information before the U.S. Court.  Accordingly, after reviewing the Motion and the Deutsche Bank Objection, and conferring with U.S. bankruptcy counsel, the Joint Liquidators have determined that it is appropriate to join in and adopt the Deutsche Bank Objection's arguments, in the event and to the extent that this Court determines that the ECAPS Holders lack standing to be heard regarding LBHI's Motion.

*[Remainder of page intentionally left blank.]*

WHEREFORE, subject to the conditions set forth herein, the Joint Liquidators respectfully join in with and adopt the Deutsche Bank Objection.


Dated: January 31, 2018
New York, New York

*/s/ David R. Seligman, P.C.*
David R. Seligman, P.C.
Joseph M. Graham (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email: david.seligman@kirkland.com
          joe.graham@kirkland.com

-and-

Mark McKane, P.C. (*pro hac vice* pending)
Kevin Chang (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:  mark.mckane@kirkland.com
          kevin.chang@kirkland.com

*Counsel to the Joint Liquidators*