Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS INC.,   Case No. 08-13555-scc

7              Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                      United States Bankruptcy Court

11                      One Bowling Green

12                      New York, New York 10004-1408

13

14                      January 22, 2018

15                      1:57 PM

16

17

18

19

20

21

22

23   B E F O R E:

24   HON. SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

1    IN RE:   RMBS Claims Estimation Trial

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sherri L. Breach

```
                                                        Page 3
 1    A P P E A R A N C E S :

 2    WILKIE FARR & GALLAGHER LLP

 3          Attorneys for the Plan Administrator

 4          787 Seventh Avenue

 5          New York, NY 10019-6099

 6

 7    BY:  TODD G. COSENZA, ESQ.

 8

 9    ROLLIN BRASWELL FISHER LLC

10          Attorneys for Unspecified

11          8350 East Crescent Parkway

12          Suite 100

13          Greenwood Village, CO 80111

14

15    BY:  MICHAEL ROLLIN, ESQ.

16

17    HOLWELL SHUSTER & GOLDBERG LLP

18          Attorneys for the Trustees

19          750 Seventh Avenue, 26th Floor

20          New York, NY 10019

21

22    BY:  MICHAEL S. SHUSTER, ESQ.

23          DANIEL GOLDBERG, ESQ.

24          DWIGHT A. HEALY, ESQ.

25
```

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Okay.  Oh, Mr. Goldberg.

 3         (Laughter)

 4              MR. GOLDBERG:  Good afternoon, Your Honor.

 5              THE COURT:  Welcome back.

 6              MR. GOLDBERG:  Thank you.

 7              THE COURT:  We've missed you.

 8              MR. GOLDBERG:  Not too many people say that.

 9              THE COURT:  All right.  Let's get started.

10              MR. GOLDBERG:  So Mr. Rollin and I have decided

11    that we should keep our day jobs.  Post-production movie

12    editing is not our strong suit.  But, nevertheless, for

13    purposes of today we've been able to work together to cut

14    down the video that we're going to play in court.

15              THE COURT:  Okay.

16              MR. GOLDBERG:  The run time is about an hour, all

17    in.

18              THE COURT:  Okay.

19              MR. GOLDBERG:  It includes designations and

20    counter-designations from both sides.  I don't believe Your

21    Honor will be able to tell from the video who designated

22    what, but we are more than happy to tell you should we

23    believe that to be relevant.

24              Our plan is to after today for the parties to

25    consult because there's more to the -- more video clips that
```

Page 5

```
 1   the parties would like the Court to review.  We just are not

 2   showing them today to take the court time --

 3            THE COURT:  Okay.

 4            MR. GOLDBERG:  And then we'll submit to you a

 5   drive that will have, it will probably be closer to two and

 6   a half hours of video that Your Honor --

 7            THE COURT:  Okay.  So let me --

 8            MR. GOLDBERG:  -- will just --

 9            THE COURT:  -- let me understand this.

10            So -- but is what you're going to give me on the

11   drive going to be on some of the same -- so we're like --

12   we're looking at a highlights reel today?

13            MR. GOLDBERG:  That's actually not a bad way to

14   look at it.

15            THE COURT:  Okay.

16            MR. GOLDBERG:  So the drive that we give you will

17   include what is in here today.

18            THE COURT:  Okay.  So this is like a highlights

19   reel and then what you're going to give me on the drive will

20   be more.

21            MR. GOLDBERG:  Correct.  That's correct.

22            THE COURT:  Okay.  But I won't have to piece in

23   what I'm seeing today with --

24            MR. GOLDBERG:  You won't --

25            THE COURT:  -- what I'm going to get on the drive?
```

```
 1              MR. GOLDBERG:  You will not.  And, in fact, what
 2    we're also going to provide to Your Honor is what we've
 3    between the parties called a scrip so you will actually see
 4    the questions and answers on a piece of paper that you can
 5    line up to the date so that you're not solely reliant on
 6    looking at a video.  If you want to find a piece of
 7    testimony later --
 8              THE COURT:  Right.
 9              MR. GOLDBERG:  -- you don't have to scroll through
10    an hour of --
11              THE COURT:  Right.  Right.  Right.  Perfect.
12    Okay.  That sounds --
13              MR. GOLDBERG:  Okay.
14              THE COURT:  That sounds good.
15              MR. GOLDBERG:  So with that we also -- if I may
16    approach?
17              THE COURT:  Sure.
18              MR. GOLDBERG:  We have a binder to provide that
19    has documents that were referenced in the video.
20              THE COURT:  Great.
21              MR. GOLDBERG:  And when -- there are more
22    documents in that binder that are going to be relevant to
23    the video today because we worked to cut down the video.
24    But they will be relevant to the full piece when we submit
25    it.
```

1           If at any point in time, Your Honor, when we get

2    to the video we're going to look at a document on the -- in

3    the video, I suspect we might have to pause it to allow Your

4    Honor to get there in the document.  So we can do that at

5    any point.  Obviously --

6           THE COURT:  Okay.  Well, the --

7           MR. GOLDBERG:  -- you'll tell us --

8           THE COURT:  Well, the --

9           MR. GOLDBERG:  -- if you --

10          THE COURT:  We're not going to -- I Mean, you can

11   just pop up and --

12          MR. GOLDBERG:  Sure.

13          THE COURT:  -- you know, kind of a few seconds in

14   advance.  But I'll follow along.  I've done this numerous

15   times --

16          MR. GOLDBERG:  Great.  Great.

17          THE COURT:  -- before.  Okay.

18          And just let me say that I don't know if you

19   wanted to put -- make a record as to --

20          MR. GOLDBERG:  I do.

21          THE COURT:  -- exactly what we're doing and I

22   would like to express my appreciation for your working this

23   out.

24          So do you want to do that?  Mr. Rollin?

25          MR. ROLLIN:  Sure.  The only -- one thing I wanted

Page 8

1    to add in advance of watching the video is that in the --

2    during the course of the deposition, of course, I would have

3    imposed an objection.  I have consulted -- conferred with

4    opposing counsel.  We withdraw a significant majority of

5    those.  We're not going to require any sort of a ruling.

6          There are some, however, that we stand on.

7          THE COURT:  Okay.

8          MR. ROLLIN:  I don't think -- I think it would

9    really hinder this process if we stood up and talked about

10   them during the course of the video, but instead when we

11   submit either the script, the script together with the

12   longer video we'll then make our objections more clear,

13   interpose any objections that were reserved, and then Your

14   Honor, should you choose, can view the testimony in that

15   light.

16         THE COURT:  Okay.  But you're not going to ask

17   that as I would during the trial make some sort of a written

18   disposition of those objections?

19         MR. ROLLIN:  No.  No, Your Honor.

20         THE COURT:  What I've had done before and when

21   we've done this kind of video testimony is actually

22   literally to pause it and -- and deal with the objection.

23         But if you're okay with you preserve your

24   objection.  I do what I decide to do --

25         MR. GOLDBERG:  I think --

Page 9

1                THE COURT:  -- later, then that's fine with me.

2                MR. GOLDBERG:  I think that's how we envisioned it

3      was if --

4                THE COURT:  Okay.

5                MR. GOLDBERG:  -- there's an objection to

6      testimony we have briefing.  There's going to be closing

7      argument.  If somebody thinks some piece of evidence is not

8      admissible --

9                THE COURT:  Great.

10               MR. GOLDBERG:  -- we'll tell you.

11               MR. ROLLIN:  Yeah.  And many that Your Honor will

12     hear today, again, are withdrawn.  They're not going to be

13     an issue.  We'll just highlight those that --

14               THE COURT:  Okay.

15               MR. ROLLIN:  -- are issues with the further

16     submission.

17               THE COURT:  Okay.

18               MR. GOLDBERG:  And so Your Honor asked for an

19     overview so that we have a --

20               THE COURT:  Yeah.  Just so --

21               MR. GOLDBERG:  -- record of --

22               THE COURT:  -- we have a record.

23               MR. GOLDBERG:  -- what we're doing.

24               So as we understand it one of the issues that Your

25     Honor is going to be called upon to decide is whether or not

Page 10

1    certain breaches have a material and adverse affect on the

2    value of the loans such that they give rise to a valid put

3    back right.

4            The plan administrator was to call Daniel Castro

5    as their expert on that subject.  As we understand it Mr. --

6            THE COURT:  He is unavailable.

7            MR. GOLDBERG:  He is unavailable.  And in lieu of

8    that the Court is going to accept Mr. Castro's expert

9    reports and deposition designations from the trustees in

10   response to that.

11           THE COURT:  Okay.  And --

12           MR. GOLDBERG:  Also --

13           THE COURT:  And the trustees, just so the record

14   is completely clear, the trustees do not in any way dispute

15   Mr. Castro's unavailability.

16           MR. GOLDBERG:  Sorry.  I thought you were going to

17   say something else.  Yeah.  No.  We do not dispute his

18   unavailability.  We do have an objection.  We understand the

19   ruling and the ship has sailed, but we have an objection to

20   allowing his expert reports in without him testifying live

21   and that we're not -- don't have an opportunity to cross-

22   examine him at trial.  We understand the ruling.  We just

23   want to make sure there's a record of the objection.

24           THE COURT:  Right.  So under all of the

25   circumstances we're going to proceed as you've outlined.

Page 11

1    It's the best -- I feel it's the best that we can do under

2    the circumstances.

3              MR. GOLDBERG:  Understood.

4              THE COURT:  Okay.  So --

5              MR. GOLDBERG:  So with that --

6              THE COURT:  -- with that --

7              MR. GOLDBERG:  -- I think we can dim the lights

8    and hit play.

9              THE COURT:  I don't know if we need to dim the

10   lights.

11       (Laughter)

12             MR. GOLDBERG:  I did not mean literally.

13       (At 2:03 p.m. video played)

14       (At 2:06 p.m.)

15             MR. ROLLIN:  Can we interrupt just for a moment?

16             THE COURT:  Yes.

17             MR. ROLLIN:  Your Honor, this seems to be

18   inadvertent to me, but Mr. Goldberg and I had an agreement

19   that that particular clip was not going to be shown, that

20   last segment.

21             THE COURT:  Well, I can tell you quite honestly I

22   could not recall what was said if my life depended on it.

23       (Laughter)

24             MR. ROLLIN:  I --

25             THE COURT:  So I'm just -- what I'm reacting to is

Page 12

1    we just kind of jumped into this.  I don't -- I'm just

2    trying to look at his report just to kind of frame a little

3    bit more what he's about to talk about.

4         MR. GOLDBERG:  So we -- okay.  So we tried to

5    assist the Court with that.  But if you'll see like on the

6    screen now we have a subject matter heading and then --

7         THE COURT:  Right.

8         MR. GOLDBERG:  -- when the testimony plays it will

9    be related to that subject matter heading, and then when we

10   switch topics there will be another subject matter heading.

11   So the idea will be that the Court will at least know the

12   subject that he is talking about.

13        THE COURT:  Yeah.

14        MR. GOLDBERG:  It is not necessarily keyed to a

15   page in his report as --

16        THE COURT:  Okay.

17        MR. GOLDBERG:  -- as lined up.

18        I -- as far as what Mr. Rollin just said, I think

19   I might have misunderstood about the playing of that

20   segment.  It's passed so Your Honor has just said you hadn't

21   really seen it anyway.  We did not intend to play a segment

22   today that Mr. Rollin had consented to.  I thought he had

23   consented to that piece.  That was inadvertent.

24        THE COURT:  Okay.

25        MR. ROLLIN:  Right.  I did not contend to that.

Page 13

1    These -- there are some things taken out of order and some

2    completeness designations that were not included, so we

3    discussed it ahead of time.  So --

4            THE COURT:  Okay.  So why --

5            MR. ROLLIN:  -- that's --

6            THE COURT:  We'll leave that whole thing until the

7    full -- the larger --

8            MR. GOLDBERG:  Fair enough.

9            THE COURT:  Yeah.

10       (Pause)

11           MR. ROLLIN:  Your Honor --

12           THE COURT:  Yes.

13           MR. ROLLIN:  Sorry.  One other concern.  I

14   apologize.

15           I didn't -- I did not know in advance of this

16   showing that these headers were going to be shown to Your

17   Honor.  I knew that they -- that each segment had a heading.

18   I have not studied the headings.  I haven't had an

19   opportunity to determine whether or not --

20           THE COURT:  I see.

21           MR. ROLLIN:  -- I think they fairly characterize

22   the testimony.

23           THE COURT:  So the headings are not going to be

24   evidence and I'll take the headings as I would something on

25   a demonstrative slide that you would present if Mr. Castro

Page 14

1    were on the witness stand.  Does that make it better?

2            MR. ROLLIN:  Sure.  That's fine, Your Honor.  I

3    just wanted to let you know we -- we may have concerns about

4    the headings.  I've heard Your Honor and I have nothing else

5    to say about it.

6            THE COURT:  Okay.

7            MR. GOLDBERG:  To be clear they do have the

8    headings, but we don't have to quibble about that.

9            THE COURT:  Let's keep going, please.

10        (At 2:09 p.m. video played)

11        (At 2:37 p.m.)

12            MR. GOLDBERG:  So, Your Honor, that's in the

13    binder.  It's -- go to Tab 6.

14            THE COURT:  Got it.  Thank you.

15            MR. GOLDBERG:  And, Your Honor, just to save

16    another pause it's -- the testimony is on page 31.

17            THE COURT:  Great.  Thank you.

18        (At 2:37 p.m. video played)

19        (At 2:50 p.m.)

20            MR. GOLDBERG:  And we're just pausing to allow

21    Your Honor to get there.

22            THE COURT:  Okay.  I'm there.  Thank you.

23        (At 2:50 p.m. video played)

24        (At 2:50 p.m.)

25            MR. GOLDBERG:  Pause for a second.

1          I'm giving you a second to get there.

2          THE COURT:  I'm there.  Thank you.

3          MR. GOLDBERG:  Okay.

4     (At 2:50 p.m. video played)

5     (At 2:51 p.m.)

6          THE COURT:  Mr. Goldberg, can I just ask you to

7    pause this for a second?

8          MR. GOLDBERG:  Sure.  Of course.

9          THE COURT:  I just want to put on the record, I

10   don't know if this is out of nowhere, but I still have the

11   GSC case.

12         MR. GOLDBERG:  I've recently come to learn that.

13         THE COURT:  Okay.  So I still have a substantial

14   open matter in that case.  I inherited that case from Judge

15   Gonzalez when he retired on the somewhat inaccurate

16   representation that it was all done.

17     (Laughter)

18         THE COURT:  The same thing was said about Lehman.

19   So we know how that worked out.

20         I have no knowledge or awareness of Mr. Castro's

21   involvement in GSC or specific knowledge about anything than

22   glancing (sic) I'm looking at in the document that you just

23   showed me.

24         When this started I thought I had heard him say

25   GSC but I kind of let it pass.  There's nothing about what's

1    pending before me that -- well, I can't say that there's

2    nothing about it that overlaps as a general matter.  I don't

3    think it -- if -- what's pending before me in GSC will have

4    no bearing on my view of Mr. Castro's opinions in this case.

5    But I just thought it was important as I'm looking at this

6    document right now and seeing specifically what he did

7    during the 2005-2008 time frame that I just make this

8    statement to all of you.

9              MR. GOLDBERG:  I --

10             THE COURT:  I'm a big believer in disclosure and

11   no surprises.

12             MR. GOLDBERG:  As I stand here today I'm not aware

13   of anything that causes a conflict or problem simply because

14   you're presiding over the bankruptcy of GSC and Mr. Castro

15   is a, I believe a former, but I don't honestly even know

16   that, former partner at GSC.  I don't --

17             THE COURT:  That's what it looked -- that's what

18   it looks like.  But, you know, I never had occasion to make

19   that connection in that case or frankly until this

20   afternoon, today when I heard what he said and I saw these

21   documents which perhaps reveals that I didn't look at his

22   background before today.  But it is what it is.

23             So I just --

24             MR. GOLDBERG:  Yeah.  I --

25             THE COURT:  Okay.

1           MR. GOLDBERG:  I think from our perspective we

2      don't see a problem in --

3           THE COURT:  Okay.

4           MR. GOLDBERG:  -- terms of a conflict.

5           THE COURT:  I would ask the plan administrator

6      counsel to --

7           MR. COSENZA:  We have no --

8           THE COURT:  Okay.

9           MR. COSENZA:  -- objection, Your Honor.

10          THE COURT:  All right.

11          MR. COSENZA:  We don't see a conflict.

12          THE COURT:  All right.  So let's just keep going.

13          MR. GOLDBERG:  Thank you.

14     (At 2:54 p.m. video played)

15     (At 2:57 p.m.)

16          MR. GOLDBERG:  So, Your Honor, I've paused the

17     video.  If we were cross-examining Mr. Castro I would now

18     pull out that testimony that I referenced and it's in your

19     binder --

20          THE COURT:  Okay.

21          MR. GOLDBERG:  -- as Exhibit 1164, TRX-1164.

22          THE COURT:  Yes.

23          MR. GOLDBERG:  And this is a deposition testimony

24     Mr. Castro gave in another RMBS case and this is available

25     on Pacer.  We pulled this transcript off of Pacer.

Page 18

1          THE COURT:  Okay.  But it says filed under seal.

2          MR. GOLDBERG:  I see that, but that's -- we got it

3     off of Pacer and as I understand it that's how it is on

4     Pacer.  So if it might have been under seal at some point,

5     it wasn't when we got it because we just pulled it off of

6     the public docket.

7          THE COURT:  Okay.  Mr. Rollin.

8          MR. ROLLIN:  Your Honor, I object to this -- the

9     introduction of this document.  I realize we're in an

10    unusual proceeding and circumstance.  And, nevertheless,

11    bearing that in mind I -- this appears to be an excerpt.  I

12    don't know the context.  I don't know what else was said.

13    It wasn't raised during the course of Mr. Castro's

14    deposition.

15         And in the course of the deposition there is

16    always the possibility -- the federal rules explicitly deal

17    with the possibility that a witness may become unavailable

18    and then the parties are left with the transcript.  The

19    parties need to do what they need to do if they intend to

20    use the transcript in a certain way.

21         With respect to this issue I understand that Mr.

22    Goldberg anticipated cross-examining Mr. Castro and in that

23    case Mr. Castro would have been able to contextualize and

24    respond to this.  But he did not ask those questions.  And

25    without being able to know the full context and respond, I

```
 1    object on -- formally on relevance and hearsay grounds.

 2              MR. GOLDBERG:  I -- Your Honor, if I may respond.

 3         (Pause)

 4              THE COURT:  Sure.

 5              MR. GOLDBERG:  Mr. Rollin I think was speaking

 6    about the federal rules and I'm sure he's talking about

 7    Federal Rule of Civil Procedure 32.  And I think we would

 8    happily live with that, but we're actually not in this

 9    circumstance, for reasons that we spoke about, we're not

10    limited to the deposition transcript.  The plan

11    administrator has been allowed to put in the expert reports

12    of Mr. Castro which would never come in under a strict

13    federal rules of evidence interpretation.  So they've been

14    given great leeway.

15              So it is true and I advised counsel that with

16    respect to this exhibit, TRX-1164, which was produced to

17    them in discovery by the way, that I specifically did not

18    ask Mr. Castro about it in his deposition once he gave the

19    sequence that we just played on the video because I was

20    going to use it for impeachment at trial.

21              THE COURT:  What was the last question at -- tell

22    --

23              MR. GOLDBERG:  It reads --

24              THE COURT:  Not from the transcript.  What did he

25    say that you're now going to --
```

1          MR. GOLDBERG:  Sure.  That's what I was going to

2     read.

3          THE COURT:  Yeah.  Go ahead.

4          MR. GOLDBERG:  From the video the question is, "Do

5     you recall testifying under oath that there was no such

6     model" -- meaning baseline risk -- loan level baseline risk

7     of loss models -- "available to investors until the earliest

8     of 2008."  "Question: Do you recall that or not?"  "Answer:

9     I don't recall that.  No."

10         But then earlier in the sequence in the video we

11    just played he said such models were available.  He says he

12    created them.

13         In the Exhibit 1164 starting on page 77 and line

14    7, and it runs through page 79, line 10, Mr. Castro

15    testifies pretty much to the opposite saying that from --

16    and I had the date wrong.  I -- in my questioning to him in

17    his deposition I said 2008, but the reality is what he says

18    is at some point in early 2007, between '05 and 2007 sum and

19    substance what he says is that rating agencies and

20    sophisticated institutional investors did not have the

21    ability to model on a loan level a base front line risk of

22    loss.

23         THE COURT:  But then if you --

24         MR. ROLLIN:  Your Honor --

25         THE COURT:  -- if you continue to read the

1    transcript that you just put in it's -- there are a whole

2    lot more questions and answers that elaborate on that; that

3    --

4              MR. GOLDBERG:  After page 2 -- after page 79?

5              THE COURT:  I'm looking at page 79.

6              MR. GOLDBERG:  Sure, because I'm saying after --

7    you're saying there was more questions and answers after --

8              THE COURT:  Right.

9              MR. GOLDBERG:  If they want to counter-designate

10   something --

11             THE COURT:  So the --

12             MR. GOLDBERG:  -- they're free to do that.

13             THE COURT:  No.  But the -- but now we're getting

14   -- we're getting into never never land.  I mean, the -- what

15   I'm seeing on the page is not impeaching.  So --

16             MR. GOLDBERG:  He says -- if you look at

17   specifically page 79, line 2 the question is:

18             "Question:  So is it fair to say then that from

19             2005 to 2007 most RMBS investors did not have or

20             use loan level default models?"

21             "Answer:  '05 and '06 that would be true.  I'm not

22             sure about '07 when people started catching up.

23             But, yeah, there were some large sophisticated

24             investors that like in '06 couldn't do it."

25             MR. ROLLIN:  Your Honor, this is never never land

Page 22

```
 1    in multiple ways.  First of all, I agree with Your Honor's

 2    observation, and we're looking at this now, that this isn't

 3    impeaching.

 4              THE COURT:  It's not impeaching.

 5              MR. GOLDBERG:  Well, how is it --

 6              MR. ROLLIN:  It's also not relevant, Your Honor,

 7    that --

 8              THE COURT:  He --

 9              MR. GOLDBERG:  I don't --

10              THE COURT:  The question related to before 2008.

11              MR. GOLDBERG:  And he's saying --

12              THE COURT:  And he's saying, yeah, there were some

13    before 2008.

14              MR. GOLDBERG:  No.  No.  No.  No.  No.

15              THE COURT:  Yeah.  Yeah.  Yeah.  Yeah.

16         (Laughter)

17              THE COURT:  Okay.  So --

18              MR. GOLDBERG:  The question is, do you recall

19    testifying --

20              MR. SHUSTER:  Counsel, respectfully --

21              MR. GOLDBERG:  The -- I didn't say yeah.  Yeah.

22    Yeah.  Yeah.

23              THE COURT:  No.  I'm not saying respectfully.

24              MR. SHUSTER:  He is.

25              MR. GOLDBERG:  I didn't say --
```

1           THE COURT:  He's saying respectfully no, no, no,

2      no, no.  Okay.  You know what?  We're done.  Okay.  This is

3      not coming in.  We're going to move on.

4           MR. GOLDBERG:  Okay.

5           THE COURT:  Okay.

6       (Pause)

7           THE COURT:  You know, I do -- these titles really

8      are advocacy pieces I have to say.  They are not plain

9      vanilla subject matter headings.

10          MR. GOLDBERG:  Well, we didn't tend -- intend it

11     that way.  We tried -- we were just trying to --

12          THE COURT:  Okay.  Using the words, proximate

13     cause, that's not --

14          MR. GOLDBERG:  Well, that's --

15          THE COURT:  -- a subject matter heading.  So --

16          MR. GOLDBERG:  Well, the testimony talks about

17     that.

18          THE COURT:  Okay.  All right.  Keep going.

19      (At 3:04 p.m. video played)

20      (At 3:04 p.m.)

21          THE COURT:  Yes, Mr. Goldberg.

22          MR. GOLDBERG:  I just want to make sure Your

23     Honor's there at the exhibit before we continue.

24          THE COURT:  I was not that time actually.  I was

25     trying to make a note.  What is the exhibit number?

Page 24

1           MR. GOLDBERG:  It's Exhibit TRX-1227.  And, again,

2    to save another stop the relevant testimony is addressed as

3    something on page 4.

4           THE COURT:  Okay.  Thank you very much.

5        (At 3:05 p.m. video played)

6        (At 3:30 p.m.)

7           MR. GOLDBERG:  Sorry.  I just realized this little

8    segment we have agreed not to put in.  It's actually based

9    on a misunderstanding --

10           THE COURT:  Okay.

11           MR. GOLDBERG:  -- between the witness and I.

12           THE COURT:  And --

13           MR. GOLDBERG:  And I think that ends the --

14           THE COURT:  Okay.

15           MR. GOLDBERG:  -- playing of the video.

16           THE COURT:  I was about to observe that time

17    seemed to be elongating.  That was more than an hour, so.

18           MR. GOLDBERG:  So I --

19           THE COURT:  Okay.

20           MR. GOLDBERG:  -- think that that ends the video

21    and I -- as I mentioned --

22           THE COURT:  Okay.

23           MR. GOLDBERG:  -- at the outset the parties will

24    confer and submit to Your Honor a more fulsome video.

25           THE COURT:  Okay.  All right.  Excellent.

1            So, Mr. Shuster, yes.

2            MR. SHUSTER:  Could we have a ten or 15 minute

3    break?

4            THE COURT:  Yes.  I think that would be a good

5    idea.

6            MR. SHUSTER:  And then we're -- okay.  Very good.

7            THE COURT:  All right.  Why don't you and Mr.

8    Cosenza just come up for a moment?

9        (Sidebar off the record)

10            THE COURT:  Okay.  We're going to take a break and

11   then I'm not exactly sure if it's going to be ten or 15, but

12   the parties are going to let us know when they're ready to

13   resume.  All right.

14            Thank you very much.

15            MR. GOLDBERG:  Thank you.

16        (Recessed at 3:32 p.m.; reconvened at 3:52 p.m.)

17            THE COURT:  All right.  Please have a seat.

18            So, Mr. Shuster.

19            MR. SHUSTER:  The trustees have no more witnesses

20   to call, Your Honor.

21            THE COURT:  Okay.

22            UNIDENTIFIED SPEAKER:  Your Honor, we obviously

23   have no objection to that other than we were prepared to

24   cross-examination Mr. Aronoff and in the context of that

25   cross-examination we're prepared to show some video

Page 26

1    testimony from experts that they've taken off of their trial

2    list, specifically Mr. O'Driskell (ph) and Mr. Burnett (ph).

3            And the law is very clear that that type of

4    testimony, specifically testimony from an expert that was

5    submitted as a trial witness and later withdrawn is

6    considered an admission by the other side and can come in.

7            And we're happy to do it on the papers, but I just

8    wanted to put a placeholder in for that.

9            THE COURT:  Yes, Mr. Healy.

10           MR. HEALY:  Your -- I'm not sure that either one

11   of the witnesses mentioned or the statements by them are

12   adoptive admissions.  If any of their transcript is to be

13   designated since the reports were listed as exhibits to the

14   transcripts, the reports ought also to come in through

15   fault.

16           UNIDENTIFIED SPEAKER:  That's not how the rule

17   works, Your Honor.  Adoptive admissions are essentially

18   something that -- that is permitted to be admitted as

19   evidence because it is an admission by the other side.  They

20   don't then get to designate their own witnesses testimony.

21   The reason we get to designate it is because it's an

22   admission by the other side.

23           MR. HEALY:  Well, designations for -- counter-

24   designations for completeness would always be --

25           THE COURT:  Okay.  You're -- you're just talking

Page 27

1   entirely past each other.  Okay.  The point that's being

2   made is that you designated a witness that you then

3   withdrew.  You've now decided -- you've decided to not call

4   Mr. Aronoff, right, which would have created --

5           MR. HEALY:  Well -- I'm sorry.  I didn't mean to

6   interrupt Your Honor.

7           THE COURT:  Yeah, which would have created an

8   occasion for them to introduce these other --

9           UNIDENTIFIED SPEAKER:  Video clips and --

10          THE COURT:  -- video clips.

11          UNIDENTIFIED SPEAKER:  Right, deposition

12  testimony.

13          MR. HEALY:  Well, we called Mr. Aronoff on our

14  direct case.  They had the opportunity to put in whatever

15  they thought was appropriate and what was permissible under

16  the rules.

17          UNIDENTIFIED SPEAKER:  Right.  They --

18          MR. HEALY:  The fact that we've not decided to go

19  forward with them as a rebuttal witness doesn't entitle them

20  to any further opportunity to use deposition testimony.

21          THE COURT:  We're going to have to look at the

22  rules.  I thought we were done.  This is not the dictionary

23  definition of being done.  So let me get my glasses.  We can

24  walk through the rules and we can try to figure this out.

25          UNIDENTIFIED SPEAKER:  I'm happy to, Your Honor.

1   I have I think what can be helpful here, the rule of

2   citations and some case law that would also help guide us on

3   this issue.

4           MR. SHUSTER:  May I -- may I just --

5           THE COURT:  Uh-huh.

6           MR. SHUSTER:  Procedurally the only thing I'll say

7   is if the plan administrator is content to try to do this on

8   papers, why don't we -- I mean, if they want to brief the

9   rule briefly in a two-page letter and we can brief the rule

10  --

11          THE COURT:  I don't want to do that.

12          MR. SHUSTER:  Okay.

13          THE COURT:  I --

14          MR. SHUSTER:  I --

15          THE COURT:  I have to devote all of my time --

16          MR. SHUSTER:  Yeah.

17          THE COURT:  -- to working on a decision for you

18  folks.  So I don't -- I've been trying to avoid --

19          MR. SHUSTER:  Yeah.

20          THE COURT:  -- these ancillary --

21          MR. SHUSTER:  Understood.

22          THE COURT:  -- skirmishes.  So you want to give me

23  a -- you want to give me a rule, you want to give me some

24  cases.  Let's just try to do this right now.

25          UNIDENTIFIED SPEAKER:  Yes, Your Honor.  I'll be

Page 29

1    brief.  The rule is 801(d)(2) which outlines several types

2    of statements that constitute the opposing party's

3    admissions.

4         (Pause)

5             UNIDENTIFIED SPEAKER:  And specifically

6    801(d)(2)(B) is a party statement will be admitted as non-

7    hearsay if it's a statement that (1) the party manifested

8    that it adopted or believed to be true.  And there's case

9    law in the Southern District of New York, specifically

10   Prepple versus Gutman Breast Diagnostics Institution (ph),

11   and I can give the cite for that to Your Honor.  It's a

12   Westlaw cite, 1999WL1243891, Southern District of New York

13   case 1999.

14             The plaintiff sought the admission of a

15   radiologist opinion.  The radiologist was designated by the

16   defendant as an expert witness for trial.  The defendant

17   chose shortly before trial not to call that expert.  And

18   then, of course, the other side decided that they did want

19   to call the expert because there were helpful admissions,

20   much like in this case.

21             The expert did not appear for trial and in

22   granting the plaintiff's motion the Court found it material

23   that (1) the expert wrote a report that was served to the

24   other side; (2) the expert gave a deposition; (3) the expert

25   was identified as a trial witness in the pretrial order.

Page 30

1    And here's what the Court said, which I think is material

2    and relevant to this case:

3              "In this regard we note that defendant was

4              obviously fully aware of the expert's opinions and

5              analysis by no later than the date on which its

6              counsel received the report and that it chose

7              nonetheless to proffer her as an expert -- as its

8              expert radiological witness to produce her report

9              to the other parties as the summary of all

10             opinions as to which she would testify at trial on

11             its behalf to proffer her for deposition and then

12             to list her as a witness in the joint pretrial

13             order.  These steps reflect an acceptance of the

14             contents of the report sufficient to constitute an

15             adoption."

16             And that's exactly the circumstances we have here.

17             THE COURT:  So it's got nothing to do with whether

18   or not Mr. Aronoff testifies in the rebuttal -- in the

19   trustee's case.

20             UNIDENTIFIED SPEAKER:  That's right, Your Honor.

21             THE COURT:  It's --

22             UNIDENTIFIED SPEAKER:  We're entitled to --

23             THE COURT:  -- as part of your rebuttal case your

24   point is that you're entitled to put into evidence those

25   adoptive admissions, those portions of those reports because

Page 31

1    those individuals were designated as trial witnesses.

2              UNIDENTIFIED SPEAKER:  The deposition testimony,

3    that's exactly right, Your Honor.  And Mr. Aronoff would

4    have presented an opportunity for that, but under the rules

5    we can admit those statements regardless.

6              MR. HEALY:  Your --

7              THE COURT:  Mr. Healy.

8              MR. HEALY:  Your Honor, first of all I haven't had

9    a chance to look at the cases that are being cited.  That's

10   the -- so I note that.

11             I don't think that is by any means the only case

12   on the issue.  I have a different understanding of what the

13   law is.  I don't have cases in front of me.  I would request

14   the opportunity to cite cases to Your Honor.

15             But even if the case that was cited represents the

16   law, what that case says, as I heard it, was that the

17   reports, right, submitted by the expert can be submitted.

18   We're fine submitting the reports from Mr. Burnett and Mr.

19   O'Driskell.

20             UNIDENTIFIED SPEAKER:  There --

21             MR. HEALY:  Perfectly happy to do that if they

22   would like to do that.

23             UNIDENTIFIED SPEAKER:  Your Honor, the point of

24   that case was simply that there were admissions by the other

25   side and it wasn't really relevant whether it was report or

Page 32

1   testimony.  But there are other cases where expert

2   deposition testimony has been admitted under the same rule,

3   a different subsection, but the same rule.  There are three

4   separate subsections.  One of them is the one I just

5   recited, but also experts can be considered agents of the

6   other party.

7           And to the extent experts are designated

8   specifically on a subject matter, 801(d)(2)(C) provides that

9   those admissions are admissible in evidence.

10          And so really on -- under whatever theory

11  deposition testimony would be admissible -- and, again,

12  there are cases and if you would like me to cite them I can,

13  where deposition testimony, not just reports, but testimony

14  has been admitted under this rule.

15          MR. HEALY:  Well, the one case that I heard

16  described said that the report could be submitted by the

17  other side.  And as I said we don't object to the admission

18  of the reports.  And to the extent any portions of the

19  deposition transcripts are to be cited --

20          THE COURT:  Well, the 801 is broader than the

21  report.

22          MR. HEALY:  I understand that.  But the case that

23  was doing the analysis --

24          THE COURT:  Well, you know, I don't -- I don't

25  like to do anything by ambush and I certainly can't tell you

Page 33

1    that I have a full understanding of how this has been

2    applied.  I'm just a little surprised that we're having this

3    kind of dispute as we're trying to close out --

4              UNIDENTIFIED SPEAKER:  Yeah.

5              THE COURT:  -- the case.

6              MR. HEALY:  This is the first time we've heard of

7    this, Your Honor.  And had it been raised in advance we

8    could have either discussed it and attempted to resolve it

9    or at least I would have had the opportunity to look at the

10   cases that were being relied upon and cited to the Court and

11   to respond --

12             THE COURT:  Would you have objected if this were

13   raised in the cross-examination of Mr. Aronoff?

14             MR. HEALY:  Yes.

15             UNIDENTIFIED SPEAKER:  Your Honor, part of what's

16   happened here is we've had to sort of go back and forth.

17   Right.  They had two expert witnesses on their list for

18   trial that we spent an incredible amount of resources --

19             THE COURT:  That's true.

20             UNIDENTIFIED SPEAKER:  -- preparing both as it

21   relates to their deposition testimony, providing reports and

22   response, and then for trial.  And then at the last minute

23   they pulled them off the list on this AMA issue.  They tell

24   us Aronoff is coming in to testify.  They pull him off the

25   trial witness list now, you know, five minutes ago, ten

Page 34

1    minutes ago.

2             And so we're constantly having to pivot to

3    accommodate the changes because -- and, frankly, Your Honor,

4    it's in part because they don't like what these experts

5    testified to in deposition.  They gave statements.  They

6    gave admissions that are materially supportive of the plan

7    administrator's position and that really contradict their

8    risk of loss theory generally.  They don't like what they've

9    said.  They've taken them off the list and now they don't

10   want those admissions which, again, under the law we're

11   entitled to have in evidence.

12             MR. HEALY:  Your Honor, respectfully, Mr. Runoff's

13   testimony today has nothing to do with this.  Mr. Aronoff

14   testified at length and was cross-examined, I believe, at

15   either -- at even more length.  They had -- if they thought

16   that there was a legitimate basis to use the deposition

17   testimony or reports of other experts who were not appearing

18   -- they knew who those experts were -- they were free to do

19   it.

20             Secondly, as an aside, I would note that we're not

21   the only party who has withdrawn witnesses.  They've also

22   withdrawn a witness.  So I don't think there's anything

23   shocking about the fact that witnesses were withdrawn.

24             And, third, the --

25             THE COURT:  What witness have they withdrawn?

1            MR. HEALY:  McClary (ph).

2            UNIDENTIFIED SPEAKER:  Yeah.  That was on a very

3    small peripheral issue --

4            THE COURT:  Okay.  Well, I mean --

5            MR. HEALY:  Well, no.  No.  No.

6            THE COURT:  -- this --

7            UNIDENTIFIED SPEAKER:  -- (indiscernible) --

8            MR. HEALY:  (Indiscernible).

9            THE COURT:  Okay.  Look, this is devolving into

10   not a good place.  The fact of the matter is that what's

11   going to happen is that you're going to have to do

12   submissions and in order for me to meaningfully judge the

13   submissions I'm going to have to look at the very materials

14   that you're going to tell me shouldn't come in.  That's the

15   only way to -- if we're going to -- if we're going to parse

16   this in terms of the expert reports and the deposition

17   testimony, then I'm going to have to submissions and I'm

18   going to have to have arguments from each of you as to why I

19   should or should not look at each of them.

20            So I'm going to have looked at them.  You can

21   submit them.  You can submit a letter and then it's just

22   going to be folded into the opinion that I render at the end

23   of the case.  I -- this -- this just has to conclude.

24            UNIDENTIFIED SPEAKER:  And we're --

25            MR. COSENZA:  So, Your Honor, can I add one -- one

1    just --

2             THE COURT:  Can we -- I'm going to go -- we're

3    going to go off the record.

4             MR. COSENZA:  Yeah.

5             THE COURT:  Okay.  And just have your teams and

6    we're going to figure this out.

7             MR. COSENZA:  Sure.

8             THE COURT:  All right.  That -- I see no reason to

9    hold everybody here today.

10            Closing arguments will begin at 10 a.m. on

11   February 5th.

12            Thank you.

13            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

14       (Whereupon, these proceedings concluded at 4:04 p.m.)

15                        * * * * *

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2                      T E S T I M O N Y

3      DEBTOR'S

4      WITNESS                EXAM BY                    PAGE

5      N/A

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 38

1                    C E R T I F I C A T I O N

2

3        I, Sherri L. Breach, certify that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

**Sherri L Breach**

Digitally signed by Sherri L Breach
DN: cn=Sherri L Breach, o, ou,
email=digital1@veritext.com,
c=US
Date: 2018.01.24 16:17:09 -05'00'

6

7   _____

8   Sherri L. Breach

9   AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11  Date:   January 24, 2018

12

13

14

15

16

17

18

19

20

21

22   Veritext Legal Solutions

23   330 Old Country Road

24   Suite 300

25   Mineola, NY 11501