Michael A. Hanin (mhanin@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
Paul J. Burgo (pburgo@kasowitz.com)
Uri A. Itkin (uitkin@kasowitz.com)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel for the Investor Group*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 Case No. |
| Lehman Brothers Holdings Inc., et al., | 08-13555 (SCC) |
| Debtors. | Jointly Administered |

**MOTION (I) TO ENFORCE SETTLEMENT AGREEMENT,
(II) TO DIRECT PLAN ADMINISTER TO WITHDRAW CERTAIN
TESTIMONY PRESENTED AT ESTIMATION PROCEEDING OR
(III) ALTERNATIVELY, TO STRIKE SUCH TESTIMONY**

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 7

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of New York Mellon*,
   4 N.Y.S.3d 204 (N.Y. App. Div. 2015) ...................................................................................11

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) .........................................................................................................7

*Facebook, Inc. v. Pacific Northwest Software, Inc.*,
   640 F.3d 1034 (9th Cir. 2011) ..................................................................................................8

*Highland Capital Mgmt. L.P., v. Schneider*,
   551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) ..............................................................................8

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002) .....................................................................................................10

*Island Intellectual Prop. LLC v. Deutsche Bank AG*,
   No. 09-CV-2675, 2012 WL 526722 (S.D.N.Y. Feb. 14, 2012) ................................................8

*LinkCo, Inc. v. Fujitsu Ltd.*,
   No. 00-CV-7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ..............................................9

*New York v. United Parcel Serv., Inc.*,
   No. 15-CV-1136, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) .............................................7

*In re Rezulin Products Liability Litig.*,
   309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) ..............................................................................8

*In re VVF Communications Corp.*,
   41 B.R. 546 (Bankr. D.Col. 1984) ............................................................................................9

*Wantanabe Realty Corp. v. City of New York*,
   No. 01-CV-10137, 2004 WL 188088 (S.D.N.Y. Feb. 2, 2004) ................................................8

*Weisfelner v. Blavatnick (In re Lyondell Chemical Co.)*,
   558 B.R. 661 (Bankr. S.D.N.Y. 2016) ..................................................................................8, 9

**Other Authorities**

Restatement (Second) of Contracts § 203(a) .................................................................................10

The Investor Group[1], beneficial owners of over $1.4 billion of certificates issued by 114 of the 244 Participating Trusts, hereby files this motion requesting that the Court enforce the terms of the Investor Group's June 27, 2017 settlement agreement with the Plan Administrator, the Trustees, and the Institutional Investors (the "<u>Agreement</u>") (Doc. 55650)[2] by directing the Plan Administrator to withdraw certain testimony provided by its expert, Daniel Fischel, at the Estimation Proceeding in violation of the Agreement or, alternatively, by striking such testimony from the record of the Estimation Proceeding, and respectfully shows as follows:

## PRELIMINARY STATEMENT

1.  The Plan Administrator breached the Agreement, which resolved the Investor Group's objection to the Plan Administrator's March 17, 2017 settlement agreement with the Trustees (the "<u>Procedural Settlement</u>").[3] The Investor Group's principal opposition to the Procedural Settlement stemmed from the parties' stipulation to admit into evidence, at the Estimation Proceeding, so-called "Exhibit E," a statement from the Institutional Investors expressing their belief that "*today*" a settlement of the Trustees' claims at $2.416 billion "is fair and reasonable." (*See* Settlement Motion at Ex. B at Ex. E (emphasis added).) The Investor Group was concerned that the Institutional Investors' untested views would be given undue weight, and would unfairly anchor the allowed amount of the Trustees' claims at $2.416 billion. As a result, the Investor Group insisted that Exhibit E should be excluded unless the Investor Group had an opportunity to take discovery of the Institutional Investors' views and related motivations and

---

[1] The Investor Group includes, each on behalf of its advisory clients: Whitebox Advisors LLC, Deer Park Road Management Company, LP, Tilden Park Capital Management LP, Prophet Capital Asset Management, Tricadia Capital Management LLC, BlueMountain Capital Management LLC, Poet Advisors, FFI Fund Ltd., FYI Ltd., Olifant Fund, Ltd., and Strongbow Fund Ltd. Other capitalized terms not defined herein shall have the meaning given to them in the Procedural Settlement, as approved by the Court on July 6, 2017 (Doc. 55706).

[2] A copy of the Agreement is annexed as **Exhibit A**.

[3] *See Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C § 105(A)* (Docket No. 55232) (the "<u>Settlement Motion</u>") at Exhibit B.

submit a statement expressing its own views that the Trustees' claims should be allowed in the amount of $11.4 billion sought by the Trustees.

2. To resolve the Investor Group's objection, the parties – including the Plan Administrator – agreed to treat the Institutional Investors' views as inadmissible. In other words, the parties agreed that the Court would be asked to estimate the Trustees' claims based solely on their actual worth and merit, ***not on what the Institutional Investors (or the Investor Group) thought those claims should be worth***.

3. As such, the parties agreed to remove Exhibit E in its entirety. To ensure that the substance of stricken Exhibit E would not make its way into the Estimation Proceeding, the Institutional Investors agreed not to appear at the Estimation Proceeding and the parties (including the Plan Administrator) agreed that "the Institutional Investors' views on what constitutes a fair or reasonable settlement of the Claims," would not be "admissible for any purpose in connection with the . . . proposed Estimation Proceeding." The agreed-upon inadmissibility of the Institutional Investors' "views" – a crucial and heavily negotiated component of the Agreement – was broad, absolute, and not limited to a particular point in time when those views may have been expressed.

4. Despite the unequivocal language in the Agreement, the Plan Administrator introduced evidence during the Estimation Proceeding – through the opinion of its purported expert, Daniel Fischel – concerning the Institutional Investors' alleged views of what constitutes a reasonable settlement of the Trustees' claims. Specifically, at the Plan Administrator's direction, Professor Fischel testified: (i) about the Institutional Investors' views of what constituted a fair and reasonable settlement of the Trustees' claims in or about October 2015, (ii) that those views should inform the credibility of the Plan Administrator's proposed allowed claim amount and, (iii) that the Court should give "significant deference" to those views when estimating the claims.

2

5.      The Plan Administrator's violation of the Agreement is clear from the record. As agreed, the Institutional Investors did not appear and did not submit any evidence of their purported views. However, the Plan Administrator used Professor Fischel to speculate on what their views may be. If this violation is not remedied, the Investor Group will be deprived of the benefit of the bargain it struck in the Agreement with the Plan Administrator, the Trustees, and the Institutional Investors: to take discovery of the Institutional Investors' 2015 views and motivations, and to show that those views and motivations are irrelevant today for a number of reasons, including intervening legal developments, much higher recoveries for trusts that opted out of global settlements (negotiated by the same Institutional Investors) and pursued discovery and loan reviews, and the completion of the Trustees' loan review here.

6.      As such, the Investor Group respectfully requests that the Court enforce the Agreement by directing the Plan Administrator to withdraw Professor Fischel's violating testimony (detailed below). Alternatively, the Court should strike such testimony from the record of the Estimation Proceeding. Either way, the Institutional Investors' views should not factor into or anchor the Court's determination of the allowed amount of the Trustees' claims.[4]

## BACKGROUND

7.      The Investor Group objected to the initial version of the Procedural Settlement because, among other things, it permitted the Plan Administrator to offer into evidence the Institutional Investors' views concerning the appropriate allowance of the Trustees' claims.[5] The proposed statement of the Institutional Investors, attached to the initial Procedural Settlement

---

[4]     Prior to filing this motion, the Investor Group attempted to resolve this dispute with the Plan Administrator numerous times. Most recently, on February 1, 2018, counsel for the Investor Group emailed counsel for the Plan Administrator requesting that the Plan Administrator voluntarily withdraw the problematic testimony and related demonstratives from the record of the Estimation Proceeding and advising that, absent such withdrawal, the Investor Group would file this motion the following day. The Plan Administrator responded later that day that it refused to withdraw the problematic testimony and related demonstratives.

[5]     *See Preliminary Objection of the Investor Group to the Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a)*, dated June 6, 2017 (Doc. 55432).

3

Exhibit E, recited the amount at which the Institutional Investors agreed to settle the claims in October 2015 (the "<u>Rejected 2015 Agreement</u>") and then expressed the Institutional Investors' views that such amount was a fair and reasonable amount for the Trustees' claims today.

8.  The statement, and the Plan Administrator's ability to introduce the statement, was improper and prejudicial for a number of reasons, including that:

- It was made by a minority group of certificateholders who did not participate in the loan review process;

- It was based on opinions formed in 2015 or earlier, long before the Trustees completed their loan review;

- It provided no opportunity to investigate or cross-examine the Institutional Investors' motivations, the purpose and nature of their negotiations, and their position in the Trusts' capital structure and waterfall; and

- It did not incorporate – and provided no opportunity to counter the Institutional Investors' statement with – views of other certificateholders, including the Investor Group, who believed that the $2.4 billion allowed claim amount would be far too low.

9.  Given these flaws, the Investor Group sought, among other things, discovery of the Institutional Investors concerning their views and motivations ahead of the contemplated Estimation Proceeding.

10. After extensive negotiations with the Plan Administrator, the Trustees, and the Institutional Investors, the Investor Group signed the Agreement to resolve its objections and discovery demands. In the Agreement, the parties recognized that the Investor Group believed that:

> admitting Exhibit E [the Institutional Investors' statement] into evidence would be unfairly prejudicial unless (a) the Investor Group

4

is permitted to take discovery of the Institutional Investors' bases and motivations for making the statement in Exhibit E; and (b) the Investor Group is permitted to file a statement addressing the bases and motivations for the Institutional Investors' statement and expressing the Investor Group's belief that settlement at $2.416 billion is neither fair nor reasonable. (*See* **Exhibit A**.)

11. In consideration for the Investor Group's withdrawal of its objection, the parties agreed, among other things:

> (i) to strike Exhibit E from the Settlement Agreement; (ii) that neither Exhibit E, ***nor the Institutional Investors' views on what constitutes a fair or reasonable settlement of the Claims***, shall be admissible for any purpose in connection with the Motion or the proposed Estimation Proceeding; (iii) that the Institutional Investors shall express no position, in connection with the hearing on the Motion or the Estimation Proceeding, concerning the claim amount that they believe is fair and reasonable . . . (*id.*)(emphasis added).

12. In reliance on these terms, the Investor Group withdrew its objection, and surrendered its right to object, obtain discovery, or present evidence at the Estimation Proceeding.[6]

13. Despite the Agreement, Professor Fischel submitted a rebuttal report leading up to the Estimation Proceeding that dedicated an entire section to the Institutional Investors' views of what constitutes a fair or reasonable settlement. The Trustees raised concerns that those statements in the report facially violated the Agreement. (*See* **Exhibit B**.) The Plan Administrator rejected these concerns. (*See* **Exhibit C**.)

14. The Trustees deposed Professor Fischel on October 17, 2017, and he confirmed his intent to express at the Estimation Proceeding the same views as in his rebuttal report, in violation of the Agreement.[7]

---

[6]    *See Notice of Withdrawal of Preliminary Objection of the Investor Group to the Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(a)*, dated June 29, 2017 (Doc. 55670).

[7]    It is worth noting that, anticipating this outcome, counsel for the Investor Group attempted to attend the deposition through the undersigned counsel. However, counsel for the Plan Administrator objected and refused to allow Professor Fischel to testify unless undersigned counsel left the room.

5

15. By letter dated October 24, 2017, the Investor Group advised the Plan Administrator that this aspect of Professor Fischel's report was inappropriate and violated the Agreement. (*See* **Exhibit D**.) The Plan Administrator rejected the Investor Group's concerns but conceded, paradoxically, that the Institutional Investors' views were not admissible. (*See* **Exhibit E**.)

16. Despite the Investor Group's warnings and proactive attempts to prevent violations of the Agreement, the Plan Administrator elicited Professor Fischel's improper opinion on December 4, 2017, Day 5 of the Estimation Proceeding. (December 4, 2017 Estimation Proceeding Tr. ("Fischel Tr.") at 1,085:17-1,099:11.) Below is an excerpt of some of Professor Fischel's most egregious testimony as it related to violating the Agreement:

> [The Institutional Investors] have the most to gain by making a good decision and the most to lose by making a bad decision, they have the best incentives, in some sense, to value the claims at the right amount to reach an appropriate settlement, not just on their behalf but on behalf of all of the certificate holders. (Fischel Tr. at 1091:5-13)
>
> . . .
>
> And again [the Institutional Investors] have not just large stakes, but as I think will be as clear from their names and also from other exhibits, they're the shrewdest, most experienced financial investors in the world, and they have no incentive to reach the wrong decision about what the claim should be settled for, which is why I think, certainly one of the reasons ***why I think their decision to resolve the dispute in 2015 for approximately $2.4 billion is entitled to substantial deference***. And because that number, particularly as adjusted as a result of the trusts, the few trusts that have dropped out, is basically Lehman's proposed allowed claim in this proceeding. That's again my first opinion why I think the institutional investors' judgment should be entitled to substantial deference and why Lehman's proposed allowed claim in this proceeding is far more credible than the Trustees', which is approximately $9 billion higher than what the institutional investors were willing to resolve their claim for in 2015. (*Id.* at 1092:7-1093:9)
>
> . . .
>
> because of the enormous disparity between the Lehman proposed allowed claim, which is basically identical to what the institutional investors decided, and the Trustees' proposed allowed claim which

6

> again bears no relationship to the judgment that the institutional investors made when their own money was at stake, their own money that they manage – that they own as well as the money that they manage for others, that to me was highly significant. (*Id.* at 1095:21-1096:9)
>
> . . .
>
> Q: Now before I move on to your second opinion, just to summarize, I think you said this before, but why was the support of the institutional investors important to you in distinguishing between Lehman and the Trustees' proposed allowed claims?
>
> A. Again, I think I've tried to make this clear so I don't want to be too repetitive. **But basically it's because the Lehman's proposed allowed claim completely matches the judgment** of the most sophisticated, experienced institutional investors who have the largest economic stake, the most to gain and the most to lose by making either the right decision or the wrong decision, and the Trustees' proposed claim bears absolutely no relationship to what people in the marketplace, with their own wealth at stake and their own clients' wealth at stake, decided the claim should be resolved for. (*Id.* at 1098:12-1099:11.)

Although the Trustees objected to this testimony, and the Court noted their objection, this testimony presently remains part of the record. (*Id.* at 1129:21-1130:9.)

## ARGUMENT

17. It is black letter law that the Court has "broad discretion" to exclude the inadmissible portions of Professor Fischel's testimony. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Exclusion is warranted notwithstanding that the Estimation Proceeding is a bench trial. *See*, *e.g.*, *New York v. United Parcel Serv., Inc.*, No. 15-CV-1136, 2016 WL 4735368, at *1 (S.D.N.Y. Sept. 10, 2016) (A bench trial is not a "free for all" for "expert witnesses").

18. The Agreement plainly prohibited the Institutional Investors from appearing and the Plan Administrator from introducing the Institutional Investors' "views" of what constitutes a "fair" or "reasonable" settlement – period – at the Estimation Proceeding. The Institutional Investors complied with their part of the bargain, and no one else appeared on their behalf. But

7

the Plan Administrator nevertheless introduced speculation concerning the Institutional Investors' views into the evidentiary record via the testimony of Professor Fischel. The language of the parties' bargain is unambiguous, and should be enforced to strike the offending portions of Professor Fischel's testimony. *See, e.g.*, *Facebook, Inc. v. Pacific Northwest Software, Inc.*, 640 F.3d 1034, 1041 (9th Cir. 2011) (affirming the exclusion of evidence based on parties' prior agreement).

19. The Plan Administrator cannot use Professor Fischel to circumvent the Agreement – *i.e.*, to introduce otherwise inadmissible facts. Courts in this Circuit widely recognize that it is "inappropriate for experts to act as mere conduits for others' hearsay, or as vehicles for factual narrative." *See, e.g.*, *Island Intellectual Prop. LLC v. Deutsche Bank AG,* No. 09-CV-2675, 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012) (citing *Wantanabe Realty Corp. v. City of New York,* No. 01-CV-10137, 2004 WL 188088, at *2 (S.D.N.Y. Feb. 2, 2004); *Highland Capital Mgmt. L.P., v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008); *In re Rezulin Products Liability Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)). An expert "may not merely recite a factual narrative that does not draw technical or scientific conclusions." *Weisfelner v. Blavatnick (In re Lyondell Chemical Co.)*, 558 B.R. 661, 667 (Bankr. S.D.N.Y. 2016). Nor may the expert "opine on parties' states of mind or intent." *Id.*

20. This is precisely what the Plan Administrator had Professor Fischel do. Having agreed to exclude the Institutional Investors and their views from the Estimation Proceeding, the Plan Administrator used Professor Fischel's improper expert testimony to introduce the excluded evidence. Specifically, the Plan Administrator had Professor Fischel speculate about the Institutional Investors' views concerning allowance of the Trustees' claims based on their support of the Rejected 2015 Agreement. Professor Fischel then opined that the Institutional Investors' views in 2015 should be extrapolated and given significant weight *today*, in the Estimation

8

Proceeding.[8] This is precisely the form of evidence that the parties agreed to keep out of the Estimation Proceeding, and precisely the sort of improper expert testimony that courts exclude. *See, e.g., LinkCo, Inc. v. Fujitsu Ltd.*, No. 00-CV-7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (excluding expert report because firsthand "testimony by fact witnesses . . . would be far more appropriate") (quotations omitted); *accord In re Lyondell Chemical Co.*, 558 B.R. at 668-669 ("factual narratives" and "state of mind" are not an appropriate subject for expert testimony).

21. Fundamental to the Agreement was a mutual promise that the parties would litigate estimation based on the ***merits of the claims***, not the Institutional Investors' (nor the Investor Group's) own views of the appropriate amounts. Permitting Professor Fischel's testimony to remain in the record would sanction the Plan Administrator's violation of the Agreement and perpetuate an inequity on the Investor Group, who agreed to forgo discovery of the Institutional Investors – and its objection to the Procedural Settlement – based on the express understanding that investors' views would be entirely outside the scope of the Estimation Proceeding. *See In re VVF Communications Corp.*, 41 B.R. 546, 553 (Bankr. D.Col. 1984) ("Having induced the secured creditors to rely upon the Agreement and upon this Court's approval of the Agreement, the Debtor is estopped and cannot now invoke the equitable powers of this Court to set aside the enforcement of that agreement, when it alone has failed to comply with the provisions of the Agreement").

22. That the Agreement permitted the Plan Administrator to introduce the Rejected 2015 Agreement into evidence does not override the Agreement's express prohibition on the introduction of the Institutional Investors' views on what constitutes a fair and reasonable amount

---

[8] *See, e.g.*, Fischel Tr. at 1,085:17-21 ("My first opinion is that the behavior of the institutional investors, particularly in connection with the 2015 settlement, supports the covered loan claims that Lehman has advanced . . ."); *id.* at 1,087:4-18 (discussing institutional investors' incentives in making "decisions"); *id.* at 1,088:2-6 (discussing the "judgment that they reached in connection with the 2015 settlement"); *id.* at 1,088:7-13 (discussing "willingness there to settle their claim for approximately I think it was $2.4 billion at the time before some of the trusts dropped out"); *id.* at 1091:9-12 (discussing institutional investors' "[valu[ation] [of] the claims at the right amount to reach an appropriate settlement"); *id.* 1,092:12-1,093:9 (discussing institutional investors' "decision" and "judgment"); *id.* at 1,095:7-1,096:9 (discussing "judgment"); *id.* at 1,098:22-1,099:11 (same).

9

of the Trustees' allowed claims. The Agreement allows introduction of the Rejected 2015 Agreement *itself*, not any ancillary views or beliefs. Any other read of the Agreement would impermissibly render superfluous the express prohibitions agreed to by the Plan Administrator concerning the Institutional Investors' views. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("contract interpretations that render provisions of a contract superfluous" are disfavored) (collecting cases); Restatement (Second) of Contracts § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect"); *Id.* cmt. b ("[s]ince an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous").

23. The Investor Group insisted on the terms of the Agreement for a reason. The Institutional Investors represent a minority of the certificateholders in the Participating Trusts, and do not speak for or represent the "market." While the Institutional Investors claim to own approximately $6 billion of the unpaid principal balance of the certificates, the Investor Group owns over $1.4 billion, and investors holding billions more have not been heard. That the Institutional Investors may have believed in 2015 that a certain amount was an acceptable settlement is probative of nothing, as there is no evidence whatsoever concerning the Institutional Investors' idiosyncratic interests, knowledge, holdings, and/or expected recovery from any allowance, either now or in 2015. Indeed, the only reason it would make any sense to infer that the Institutional Investors would prefer an allowed claim amount lower than the $11.4 billion requested by the Trustees at the Estimation Proceeding would be if the Institutional Investors' interests were *distinct* from other investors.

24. At bottom, the views of any investors – as well as Professor Fischel's ruminations as to the Institutional Investors' purported state of mind – are irrelevant to the Estimation

10

Proceeding. Unlike the RMBS proceedings referenced by Professor Fischel, the Estimation Proceeding is not a settlement – it is an estimation of the Trustees' repurchase claims, determined based on the legal and factual merits.[9] The Institutional Investors' views – made on an uninformed basis, without any loan review, and having undergone no scrutiny or inquiry via discovery – must be accorded no weight or deference of any kind in the Estimation Proceeding, and, most certainly, cannot be accorded "substantial deference" as Professor Fischel improperly opined.

## CONCLUSION

25. Accordingly, for the reasons stated herein, the Investor Group respectfully requests that the Court either (i) enforce the Agreement and direct the Plan Administrator to withdraw the portions of Professor Fischel's testimony cited in Paragraph 16 above and all related demonstratives, or alternatively (ii) strike that testimony and all related demonstratives from the record of the Estimation Proceeding, and (iii) grant such other and further relief as the Court deems just and proper.

---

[9] Indeed, in global RMBS settlements – unlike here – the views of institutional investors were relevant only because the courts looked at whether the trustees reasonably exercised their discretion in accepting the settlement amounts negotiated by the institutional investors; the amount of the settlements was not at issue. *See*, *e.g.*, *In re Bank of New York Mellon*, 4 N.Y.S.3d 204, 207-209 (N.Y. App. Div. 2015) ("The ultimate issue for determination here is whether the trustee's discretionary power was exercised reasonably and in good faith. It is not the task of the court to decide whether we agree with the [t]rustee's judgment; rather, our task is limited to ensuring that the trustee has not acted in bad faith such that his conduct constituted an abuse of discretion."). By contrast, the allowed amount of the Trustees' claims is the *sole* inquiry before the Court at the Estimation Proceeding.

11

Dated: February 2, 2018
       New York, New York

                                                   KASOWITZ BENSON TORRES LLP

                                                   By: */s/ Daniel A. Fliman*
                                                      Michael A. Hanin (mhanin@kasowitz.com)
                                                      Daniel A. Fliman (dfliman@kasowitz.com)
                                                      Paul J. Burgo (pburgo@kasowitz.com)
                                                      Uri A. Itkin (uitkin@kasowitz.com)

                                               1633 Broadway
                                               New York, New York 10019
                                               Telephone:  (212) 506-1700
                                               Facsimile:  (212) 506-1800

                                               *Counsel for the Investor Group*