**Hearing Date and Time**:  **March 7, 2018 at 10:00 a.m. (EST)**
**Objection Deadline**:  **February 28, 2018 at 5:00 p.m. (EST)**

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                          )
In re                                                     )     Case No. 08-13555 (SCC)
                                                          )
Lehman Brothers Holdings Inc., <u>et al.</u>,            )     Chapter 11
                                                          )
              Debtors.                                    )     Jointly Administered
                                                          )
-------------------------------------------------------- x

### NOTICE OF LEHMAN BROTHERS HOLDINGS INC.'S MOTION TO ESTIMATE RMBS CLAIMS OF SASCO 2006-S4 FOR RESERVE PURPOSES PURSUANT TO 11 U.S.C § 502(C)

**PLEASE TAKE NOTICE** that, on February 19, 2018, Lehman Brothers Holdings Inc.

("LBHI" or the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended*

*Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"),

on behalf of itself and the other affiliated debtors in the above-captioned cases (collectively, the

"LBHI Debtors"), filed the Motion to Estimate RMBS Claims of SASCO 2006-S4 for Reserve

Purposes Pursuant to 11 U.S.C § 502(c) (the "<u>Motion</u>").  Capitalized terms used but not defined herein have the meanings given to them in the Motion.

PLEASE TAKE FURTHER NOTICE that a hearing on the Motion will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 623, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>") on **March 7, 2018 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be made in writing, state with particularity the grounds therefor, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, be filed electronically in text searchable portable document format (PDF) with the Court in accordance with General Order M-399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the Court), by registered users of the Court's case filing system and by all other parties in interest (with a hard copy delivered directly to the Judge's Chambers), and be served in accordance with General Order M-399, and upon (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 23; (ii) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Paul V. Shalhoub, Esq. and Todd G. Cosenza, Esq.) and Rollin Braswell Fisher LLC, 8350 East Crescent Parkway, Suite 100, Greenwood Village, Colorado 80111 (Attn: Michael A. Rollin, Esq. and Maritza D. Braswell, Esq.), attorneys for LBHI and certain of its affiliates; (iii) Alston & Bird LLP, One Atlantic Center, 1201 West Peachtree Street, Suite 4900, Atlanta, Georgia 30309 (Attn: John C. Weitnauer, Esq.) and Holwell Shuster & Goldberg LLP, 750 Seventh Avenue, 26th Floor, New York, New York 10019 (Attn: Michael S. Shuster, Esq.), attorneys for SASCO 2006-S4; and

(v) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan D. Golden, Esq., and Andrea B. Schwartz, Esq.) so as to be actually filed and received by no later than **February 28, 2018 at 5:00 p.m. (EST)** (the "Objection Deadline").

      **PLEASE TAKE FURTHER NOTICE** that the relief requested in the Motion may be granted without a hearing if no objection is timely filed and served as set forth above and in accordance with the order, dated June 17, 2010, implementing certain notice and case management procedures in these cases (Docket No. 9635) (the "Case Management Order").

Dated: New York, New York
       February 19, 2018

                              Respectfully Submitted,

                By:  /s/ Paul V. Shalhoub
                   Paul V. Shalhoub
                   Todd G. Cosenza
                   WILLKIE FARR & GALLAGHER LLP
                   787 Seventh Avenue
                   New York, New York 10019
                   Tel:  (212) 728-8000
                   Fax:  (212) 728-8111

                   Michael A. Rollin
                   Maritza Dominguez Braswell (*pro hac vice*)
                   ROLLIN BRASWELL FISHER LLC
                   8350 East Crescent Parkway, Suite 100
                   Greenwood Village, Colorado 80111
                   Tel: (303) 945-7415
                   Fax: (303) 974-7468

                   *Attorneys for Debtors Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel:  (212) 728-8000
Fax:  (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Debtors Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                                          )
  In re                                                   )    Case No. 08-13555 (SCC)
                                                          )
  Lehman Brothers Holdings Inc., et al.,                  )    Chapter 11
                                                          )
        Debtors.                                          )    Jointly Administered
                                                          )
--------------------------------------------------------- x

**LEHMAN BROTHERS HOLDINGS INC.'S**
**MOTION TO ESTIMATE RMBS CLAIMS OF SASCO 2006-S4**
**FOR RESERVE PURPOSES PURSUANT TO 11 U.S.C § 502(C)**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE ...................................................................................................4

RELEVANT BACKGROUND ....................................................................................................4

RELIEF REQUESTED..................................................................................................................9

BASIS FOR RELIEF ...................................................................................................................9

NOTICE AND PROCEDURE ...................................................................................................11

CONCLUSION.............................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                  **<u>Page(s)</u>**

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...............................................................9

*Bittner v. Borne Chem. Co.*,
    691 F.2d 134 (3d Cir. 1982) ..........................................................................10

*In re Chemtura Corp.*,
    448 B.R. 635 (Bankr. S.D.N.Y. 2011) .............................................................10

*In re Enron Corp.*,
    No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) ..................10

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*,
    10 F.3d 944 (2d Cir. 1993) ..............................................................................9

*O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*,
    981 F.2d 1450 (5th Cir. 1993) ........................................................................10

*In re Thomson McKinnon Sec., Inc.*,
    143 B.R. 612 (Bankr. S.D.N.Y. 1992) .............................................................10

**TO THE HONORABLE SHELLEY C. CHAPMAN,**
**UNITED STATES BANKRUPTCY JUDGE:**

   Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and the other affiliated

debtors in the above-captioned cases (collectively, the "LBHI Debtors"), files this motion (the

"Motion"), pursuant to section 502(c) of title 11 of the United States Code (the "Bankruptcy

Code"), to estimate the SASCO 2006-S4 Claims[1] for reserve purposes, and respectfully represents:

### PRELIMINARY STATEMENT

   1.  The Plan Administrator presently maintains a $4.75 billion claims reserve

(the "RMBS Reserve") on account of the claims asserted by the RMBS Trustees in respect of the

"Covered Loan" trusts.[2]  Upon the Court's determination of the Allowed Claim in the Estimation

Proceeding, every Covered Loan trust covered by the RMBS Reserve (except one) will have its

claim fixed at an appropriate level and will be allowed for distribution purposes.  The only Covered

Loan trust that will have disputed claims remaining at that point requiring a claims reserve is the

SASCO 2006-S4 Trust, which is the only trust to have opted out of the RMBS Settlement

Agreement.[3]  At the conclusion of the Estimation Proceeding, the RMBS Claims that have been

---

[1]  Capitalized terms not immediately defined herein have the meanings ascribed to them later in this Motion or in the RMBS Settlement Agreement, as applicable.

[2]  The RMBS Reserve was originally established in the amount of $5 billion by agreement of the Plan Administrator and the RMBS Trustees after some motion practice.  See Docket No. 25643.  By order dated July 27, 2016 [Docket No. 53163], the Plan Administrator was authorized to reduce the RMBS Reserve to $4.75 billion.

[3]  Citibank, N.A., in its capacity as trustee for SASCO 2006-RM1 and SASCO 2007-RM1, filed two proofs of claim alleging breaches of origination representations and warranties (Claim No. 22639 against LBHI and Claim No. 22775 against SASCO) (the "Citibank Reverse Mortgage Claims").  The Citibank Reverse Mortgage Claims were not subject to the Estimation Proceeding.  The RMBS Reserve does not cover Claim No. 22775 against SASCO, although it does cover Claim No. 22639 against LBHI.  The Plan Administrator previously has objected to Claim No. 22639 for insufficient documentation [see Docket No. 55977], to which Citibank, N.A. has responded, and the Plan Administrator is in the process of trying to reach an agreement with Citibank, N.A., regarding an appropriate reserve for such claim.

asserted by the SASCO 2006-S4 Trust will be addressed by continuing with the Protocol (Steps 3, 4 and, if necessary, 5). Inasmuch as the SASCO 2006-S4 Trust has asserted approximately 3,900 breach claims on account of approximately 2,800 loan files, absent an agreement of the parties, the resolution of such claims is very likely to take an exceedingly long time and delay the administration of the case.

2.      The Plan Administrator thus requests that the Court estimate the SASCO 2006-S4 Claims, for reserve purposes only, in an amount equal to 1.465131% of the greater of (x) $2.416 billion and (y) if higher, the amount of the Allowed Claim determined by the Court (which would result in a reserve of $35 million or more, depending on the Court's estimation of the Allowed Claim). While the Court may estimate the Allowed Claim at less than $2.38 billion, the Plan Administrator does not seek to have the claims asserted by the SASCO 2006-S4 Trust estimated at less than $35 million for reserve purposes.

3.      The SASCO 2006-S4 Claims are being pursued by the SASCO 2006-S4 Trust, the only Trust to opt out of the RMBS Settlement Agreement. In connection with the Protocol and later Estimation Proceeding, approximately 2,800 loan files with asserted RMBS Claims aggregating approximately $182 million were submitted on behalf of the SASCO 2006-S4 Trust. The Plan Administrator believes such claims are grossly inflated, and seeks to estimate such claims for reserve purposes at an amount equivalent to what the SASCO 2006-S4 Trust would have received under the RMBS Settlement Agreement had it not opted out. Estimating the SASCO 2006-S4 Claims at this amount will allow the Plan Administrator to make timely distributions following this Court's determination of the Allowed Claim on March 8, 2018, without having to unnecessarily reserve for an additional $150 million in unsupported claims.

4.      The Court just concluded over 20 days of trial and arguments in connection with the Estimation Proceeding and heard substantial evidence (including testimony from expert witnesses, information related to comparable RMBS settlements and indicia of value indicated by the conduct of relevant economic stakeholders) supporting the Plan Administrator's request that the Court estimate the RMBS Claims in the amount of $2.38 billion.  In the Plan Administrator's view, after hearing all of the evidence at the Estimation Proceeding, there is no reason for this Court to conduct a lengthy or complicated estimation hearing simply to estimate the SASCO 2006-S4 Claims for reserve purposes—doing so would only unduly further delay administration of the LBHI Debtors' estates.

5.      Notably, the SASCO 2006-S4 Trustee's expert, Mr. James H. Aronoff, included the SASCO 2006-S4 Claims in his opening expert report in connection with the Estimation Proceeding—in other words, Mr. Aronoff issued the same opinion and related analysis on the SASCO 2006-S4 Claims as the other RMBS Claims that were the subject of his report and before this Court in the Estimation Proceeding (which directly ties the estimation of the SASCO 2006-S4 Claims to those at issue in the Estimation Proceeding).  Estimating the SASCO 2006-S4 Claims for reserve purposes in the same amounts as what would have been the allocable share of its Allowed Claim under the RMBS Settlement Agreement would allow for the LBHI Debtors' estates to be administered in a more efficient and reasonable way and is in the best interest of all parties.  Having just concluded the Estimation Proceeding, and with the Court having weighed and considered all the arguments and evidence regarding the validity of the RMBS Claims and about to render its determination of the Allowed Claim on the day following the hearing date of this Motion, the Court is uniquely situated to estimate the SASCO 2006-S4 Claims at this time.

3

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Article XIV of the Plan and paragraph 77 of the order confirming the Plan.  This Motion is a "core proceeding" arising in these cases.  Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

7.      On September 15, 2008 (the "Petition Date"), the LBHI Debtors commenced these cases.  On July 2, 2009, the Court entered an order setting forth the procedures and deadlines for filing proofs of claim.  Pursuant to that order, the LBHI Debtors provided notice of the bar date of September 22, 2009 (the "Bar Date") to all known and potential creditors.

8.      Prior to the Petition Date, certain of the LBHI Debtors, in the ordinary course of business, would acquire residential mortgage loans either originated or purchased by their subsidiaries and securitize such loans.  Securitization of such loans entailed the establishment of a trust to acquire the loans, hold the loans, and issue securities supported by proceeds of the loans.  Here, in connection with such a securitization and pursuant to the governing trust agreement, the SASCO 2006-S4 Trust[4] was established to hold certain mortgage loans being securitized.  SASCO and LBHI also entered into the Sale Agreement, pursuant to which SASCO acquired the mortgage loans from LBHI and in turn, LBHI made certain representations and warranties to SASCO regarding, *inter alia*, the quality and nature of such mortgage loans.  In

---

[4]      Pursuant to that certain Trust Agreement, dated as of December 1, 2006 (as may have been amended, supplemented or modified, the "Trust Agreement"), by and among Structured Asset Securities Corporation ("SASCO"), as depositor, Aurora Loan Services Inc. ("Aurora"), as master servicer (including any successor master servicer, the "Master Servicer") and Citibank, N.A., as trustee (including any successor trustee, the "SASCO 2006-S4 Trustee"), the Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-S4 (the "SASCO 2006-S4 Trust") was established.  In connection therewith, SASCO and LBHI entered into that certain Mortgage Loan Sale and Assignment Agreement dated as of December 1, 2006 (as may have been amended, supplemented or modified, the "Sale Agreement").

4

connection therewith and pursuant to the Trust Agreement, SASCO conveyed the mortgage loans

to the SASCO 2006-S4 Trustee (including the representations and warranties SASCO received

from LBHI with respect to the mortgage loans under the Sale Agreement) for inclusion in the

SASCO 2006-S4 Trust.

9.      On or prior to the Bar Date, the SASCO 2006-S4 Trustee filed claim

numbers 22604 and 22773 (together, and including all RMBS Claims asserted by the SASCO

2006-S4 Trust in connection with the Protocol, the "SASCO 2006-S4 Claims") against LBHI for

amounts allegedly owing by LBHI in its capacity as seller pursuant to the Trust Agreement and

Sale Agreement regarding, *inter alia*, certain alleged repurchase and reimbursement obligations

and breaches of representations and warranties relating to the mortgage loans.

10.     On December 29, 2014, the Court entered an order (Docket No. 47569, the

"Protocol Order"), approving the Plan Administrator's proposed protocol (the "Protocol") to

reconcile and determine the RMBS Claims (as defined in the Protocol Order) on a loan-by-loan

basis, including the SASCO 2006-S4 Claims.  The Protocol Order and Protocol established a

multi-step process to address the RMBS Claims, including: (i) the production and review of claims

files; (ii) the review of claims files by the Plan Administrator; (iii) negotiation for rejected claims

and disputed approved claims; (iv) non-binding dispute resolution to resolve claims files disputes;

and (v) judicial determination of the RMBS Claims, if necessary.  For the SASCO 2006-S4 Trust,

approximately 2,800 loan files and $182 million in RMBS Claims were submitted under the

Protocol and pursued in the Estimation Proceeding until such trust opted-out.

11.     On November 30, 2016, the Plan Administrator announced the terms of a

settlement agreement (as subsequently modified, the "RMBS Settlement Agreement") with certain

institutional investors whereby the Plan Administrator agreed to seek allowance of the RMBS

Claims for $2.416 billion (as adjusted, the "Allowed Claim").[5]   On June 22, 2017, the SASCO

2006-S4 Trustee, on behalf of the SASCO 2006-S4 Trust, sent the Plan Administrator and the

institutional investors a letter exercising the right to withdraw or "opt-out" of the RMBS

Settlement Agreement.

12.    On July 6, 2017, this Court entered an order approving the RMBS

Settlement Agreement (Docket No. 55706) and providing for, *inter alia*, an estimation proceeding

(the "Estimation Proceeding") pursuant to which the Plan Administrator would seek estimation of

the RMBS Claims at the Allowed Claim amount (as adjusted) for those trusts that accepted the

RMBS Settlement Agreement.  The RMBS Settlement Agreement also required certain procedures

in connection with the Estimation Proceeding, including, *inter alia*, a pre-Estimation Proceeding

expert discovery schedule and submission of the Plan Administrator's and the RMBS Trustees'[6]

expert reports.  In connection therewith, on June 1, 2017, the Plan Administrator and the RMBS

Trustees submitted their opening expert reports,[7] which provided, *inter alia*, relevant information

related to the analysis of the RMBS Claims submitted under the Protocol, the types of breaches

alleged by the RMBS Trustees and supporting evidence.

---

[5]    Pursuant to the RMBS Settlement Agreement, the Plan Administrator agreed to seek allowance for 91,151 loans and 188,317 breach claims at $2.416 billion, to be adjusted depending on the number of trusts that accepted the settlement.  Subsequently, a small number of trusts collapsed and one opted-out, lowering the agreed upon amount at which the Plan Administrator would seek estimation for to $2.38 billion.

[6]    The "RMBS Trustees" refer to the trustees of the 225 trusts that are collateralized by residential mortgage backed securities sponsored by certain of the LBHI Debtors.  The RMBS Trustees are Deutsche Bank National Trust Company, Law Debenture Trust Company of New York, U.S. Bank National Association, Wilmington Trust Company and Wilmington Trust, National Association.

[7]    The Plan Administrator submitted expert reports from Dr. Bradford Cornell, Charles Grice, and Daniel I. Castro and the trustees submitted expert reports by James H. Aronoff, Fiachra O'Driscoll, Dr. Richard Ellson, and Dr. Karl N. Snow.  In connection with his report, Mr. Grice reviewed 67 of the SASCO 2006-S4 Claims and Dr. Cornell calculated that the Purchase Price of the loans in the SASCO 2006-S4 Trust that were submitted to the Protocol (but before any loans were withdrawn) was approximately $212 million.

13.     Included as one of the RMBS Trustees' expert reports was a report by Mr. James H. Aronoff (as subsequently amended on July 27, 2017, the "Aronoff Report").  Of the approximately 116,000 breach claims on 76,000 loans that were part of the Aronoff Report, approximately 3,900 individual breach claims on approximately 2,800 loan files were asserted on account of the SASCO 2006-S4 Trust.   The Aronoff Report became the basis for the RMBS Trustees' argument that all of the RMBS Claims that were the subject of the Aronoff Report were valid and material and adverse to the value of the loans and/or the interests of certificateholders. At the Estimation Proceeding, Mr. Aronoff testified that each and every one of the alleged breach findings on the loans in the Aronoff Report were valid, material, and adverse to the value of the loans and/or the interests of certificateholders (except for claims on those loans he specifically identified as "mistakes" during the Estimation Proceeding or which the RMBS Trustees withdrew subsequent to the Aronoff Report).

14.     Also on June 1, 2017, the RMBS Trustees exchanged the expert reports of Dr. Karl N. Snow and Dr. Richard Ellson.  Dr. Snow calculated the "Purchase Price" for all the loans that were the subject of the Aronoff Report, and used an offset calculated by Dr. Ellson to calculate a "Net Purchase Price" for the non-liquidated loans that were the subject of the Aronoff Report.  The RMBS Trustees used the sum of their Purchase Price calculations for liquidated loans and Net Purchase Price calculations for non-liquidated loans as a basis for their proposed Allowed Claim amount.   With respect to the SASCO 2006-S4 Claims, Dr. Snow calculated total Purchase Prices and Net Purchase Prices of approximately $182 million.  The RMBS Trustees did not offer into evidence any alternative calculation of damages.

15.     The Estimation Proceeding commenced on November 20, 2017, with opening arguments followed by the Plan Administrator's presentation of its case.  The RMBS

7

Trustees began presenting their affirmative case on December 11, 2017 in support of their argument that the Court should estimate the RMBS Claims at approximately $11.4 billion. The RMBS Trustees presented evidence including a description of their breach review process, which they argued provided the basis for their proposed Allowed Claim amount. This included multiple days of testimony by Mr. Aronoff, who the RMBS Trustees put forward as the expert who had been retained at the outset of the Protocol to testify about its results. The RMBS Trustees also claimed that the damages should be calculated using the Purchase Prices and Net Purchase Prices offered by Dr. Snow.

16.    In the Plan Administrator's affirmative and rebuttal cases, the Plan Administrator sought to establish that the RMBS Claims should be estimated at no more than $2.38 billion. The Plan Administrator presented evidence supporting the soundness of the Plan Administrator's breach review process, and demonstrating the flaws in the RMBS Trustees' breach review process. The Plan Administrator also presented evidence showing that a proposed Allowed Claim amount of $2.38 billion was fair and reasonable. This Court will shortly determine the amount of the Allowed Claim with respect to the RMBS Claims for Trusts subject to the Estimation Proceeding in light of all of the evidence presented.

17.    On January 3, 2018, counsel for the Plan Administrator was contacted by counsel for the SASCO 2006-S4 Trustee regarding resolution of the SASCO 2006-S4 Claims. Counsel for Plan Administrator informed counsel for the SASCO 2006-S4 Trustee that the Protocol was still in effect for the SASCO 2006-S4 Trust, and would restart upon conclusion of the Estimation Proceeding, but that the Plan Administrator was willing to restart the Protocol prior to then as an accommodation. Counsel for the SASCO 2006-S4 Trustee proposed that the parties engage in a full loan-by-loan trial before this Court and requested a pre-trial conference. The Plan

Administrator responded that under the RMBS Settlement Agreement, Trusts that opted-out of estimation remained subject to the Protocol.  The parties agreed to exchange contact information so that further business-to-business discussions under Step 3 of the Protocol could commence.

18.    On February 1, 2018, the RMBS Trustees submitted their "Post-Hearing Brief" (Docket No. 57609), in which they maintained that all or most of the RMBS Claims that were the subject of the Aronoff Report were valid claims that should be estimated at the amounts calculated by Dr. Snow.  The Estimation Proceeding concluded on February 6, 2018, and the Court has informed the parties that it intends to render a bench decision on March 8, 2018.

## RELIEF REQUESTED

19.    The Plan Administrator requests that this Court estimate, for reserve purposes, the SASCO 2006-S4 Claims at an amount equal to what would have been their allocable share of the Allowed Claim had the SASCO 2006-S4 Trustee not opted out of the RMBS Settlement Agreement, pursuant to section 502(c) of the Bankruptcy Code.

## BASIS FOR RELIEF

20.    Bankruptcy courts have broad discretion in estimating claims, "so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007).  Among other circumstances, bankruptcy courts may estimate claims in order "to avoid undue delay in the administration of bankruptcy proceedings."  *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 957 (2d Cir. 1993).  As such, bankruptcy courts may estimate claims under section 502(c)(1) of the Bankruptcy Code in order:  "1) [t]o avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions, and 2) . . . to

promote a fair distribution to creditors through a realistic assessment of uncertain claims." *O'Neill v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 981 F.2d 1450, 1461 (5th Cir. 1993).

21.    Without a specific methodology prescribed in section 502(c), a court's authority to estimate claims is only limited by "the legal rules that may govern the ultimate value of the claim" and "those general principles which should inform all decisions made pursuant to the [Bankruptcy] Code." *In re Chemtura Corp.*, 448 B.R. 635, 649-50 (Bankr. S.D.N.Y. 2011). Estimation requires only "sufficient evidence on which to base a *reasonable estimate* of the claim." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (emphasis added). The principal consideration when estimating the value of a claim is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." *Cont'l Airlines*, 981 F.2d at 1461; *see also In re Enron Corp.*, Ch. 11 Case No. 01-16034, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of establishing the amount of claims that are to receive distribution shares") (citing *In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992))).

22.    The facts and circumstances of this case support estimation of the SASCO 2006-S4 Claims for reserve purposes at an amount equal to what would have been the trust's allocable share of the Allowed Claim had the trust not opted out, including that:

- This Court just completed an intensive more than 20 days of hearing evidence, testimony and arguments related to estimation of the RMBS Claims at $2.38 billion. There is no reason this Court needs to now hear additional evidence to estimate the SASCO 2006-S4 Claims for reserve purposes. Rather, the Plan Administrator submits that this Court already has the necessary information and evidence to estimate the SASCO 2006-S4 Claims at an amount equal to what would have been the trust's allocable share of what this Court will determine is the appropriate Allowed Claim.

- The Trustee's own expert included the SASCO 2006-S4 Claims in his analysis in the Aronoff Report (prior to the SASCO 2006-S4 Trust opting out of the RMBS Settlement Agreement). Thus, in connection with determining the Allowed Claim, the Court necessarily will have considered the trustee's own expert's views

regarding the validity of the SASCO 2006-S4 Claims and the trust's support and theory of recovery.

■    Resolution of the merits of the SASCO 2006-S4 Claims could take years and the Plan Administrator has been unable to reach agreement with the SASCO 2006-S4 Trustee on an appropriate claims reserve. Estimation for reserve purposes is therefore appropriate and, having now conducted the Estimation Proceeding, the Court has a sound basis to estimate such claims in the manner proposed by the Plan Administrator without conducting further proceedings.

■    The Plan Administrator is only seeking to estimate the SASCO 2006-S4 Claims for reserve purposes, not for purposes of allowance or distribution.

## NOTICE AND PROCEDURE

23.    No trustee has been appointed in these cases.  The Plan Administrator will serve notice of this Motion in accordance with the procedures set forth in the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures, entered on June 17, 2010 [Docket No. 9635], on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) counsel for the SASCO 2006-S4 Trust; and (vi) all parties who have requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided. No previous request for the relief sought herein has been made to this Court or any other court.

24.    This Motion sets forth the legal authorities upon which the Motion is based. Accordingly, the Plan Administrator respectfully submits that the Motion itself satisfies the requirements of the local bankruptcy rules that a separate memorandum of law be submitted herewith.

25.    No prior motion for the relief set forth herein has been made to this or any other court

11

## CONCLUSION

**WHEREFORE**, for the reasons set forth above, the Plan Administrator respectfully

requests that the Court enter an order, substantially in the form of order annexed hereto as

Exhibit A, granting the relief requested herein and such other and further relief as the Court may

deem just and proper.

Dated: New York, New York
      February 19, 2018

                              Respectfully Submitted,

                        By:   /s/ Paul V. Shalhoub
                             Paul V. Shalhoub
                             Todd G. Cosenza
                             WILLKIE FARR & GALLAGHER LLP
                             787 Seventh Avenue
                             New York, New York 10019
                             Tel:  (212) 728-8000
                             Fax:  (212) 728-8111

                             Michael A. Rollin
                             Maritza Dominguez Braswell (*pro hac vice*)
                             ROLLIN BRASWELL FISHER LLC
                             8350 East Crescent Parkway, Suite 100
                             Greenwood Village, Colorado 80111
                             Tel: (303) 945-7415
                             Fax: (303) 974-7468

                             *Attorneys for Debtors Lehman Brothers Holdings*
                             *Inc. and Certain of Its Affiliates*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------- x
                                                        )
   In re                                                )    Case No. 08-13555 (SCC)
                                                        )
   Lehman Brothers Holdings Inc., et al.,               )    Chapter 11
                                                        )
                         Debtors.                       )    Jointly Administered
                                                        )
------------------------------------------------------- x
```

## ORDER ESTIMATING FOR RESERVE PURPOSES
## THE SASCO 2006-S4 CLAIMS

Upon consideration of the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc.

("LBHI" and the "Plan Administrator"), as Plan Administrator under the *Modified Third*

*Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*

(the "Plan"), on behalf of itself and the other affiliated debtors in the above-captioned cases

(collectively, the "LBHI Debtors"), to estimate the SASCO 2006-S4 Claims for reserve

purposes, pursuant to section 502(c) of title 11 of the United States Code (the "Bankruptcy

Code"), all as more fully described in the Motion; and this Court having conducted a hearing to

consider the relief requested in the Motion on March 7, 2018 (the "Hearing"), during which time

all interested parties were offered an opportunity to be heard with respect to the Motion; and it

appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.), Article XIV of the Plan and paragraph 77 of the order confirming the Plan; and it

appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding

---

[1]     Capitalized terms not defined herein have the same meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §157(b); and notice of the Motion having been provided in the manner

described in the Motion; and such notice having been adequate and appropriate under the

circumstances, and it appearing that no other or further notice need be provided; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and it appearing that the relief requested in the Motion is in the best

interests of the LBHI Debtors' estates, their creditors, and all parties in interest; and after due

deliberation and sufficient cause appearing therefore, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The relief requested in the Motion is granted to the extent set forth herein.

2.      Following this Court's determination of the Allowed Claim, the SASCO 2006-S4

Claims shall be estimated for reserve purposes, pursuant to section 502(c) of the Bankruptcy

Code, at an amount equal to what would have been the SASCO 2006-S4 Trust's Allocable Share

(as defined in the RMBS Settlement Agreement) of the Allowed Claim had the SASCO 2006-S4

Trustee not opted out of the RMBS Settlement Agreement.

3.      The terms and conditions of this Order shall be immediately effective and

enforceable upon entry of this Order.

4.      All objections to the Motion or the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the

merits.

5.      The Plan Administrator is authorized to take all action necessary to the relief

granted in this Order.

6.      This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

2

Dated: March __, 2018
New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE