Hearing Date and Time: March 7, 2018 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: February 28, 2018 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :        08-13555 (SCC)
                                              :
                    Debtors.                  :        (Jointly Administered)
                                              :
------------------------------------------------------------------------x
```

## NOTICE OF MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF GLOBAL RELEASE AGREEMENT WITH THE BANK OF NEW YORK MELLON AND CERTAIN AFFILIATES

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated February 20, 2018 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI" and solely in its capacity as Plan Administrator, the "Plan Administrator") as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* for certain entities in the above-referenced chapter 11 cases, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the global release agreement among (i) LBSF, (ii) LBHI, (iii) The Bank of New York Mellon, (iv) The Bank of New York Mellon, London Branch, (v) The Bank of New York Mellon Trust Company,

National Association, and (vi) BNY Mellon Corporate Trustee Service Limited *f/k/a* BNY

Corporate Trustee Services Limited ((iii)-(vi) collectively, the "BNYM Entities"), as more fully

described in the Motion, will be held before the Honorable Shelley C. Chapman, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**March 7, 2018 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, and shall be filed

with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at *www.nysb.uscourts.gov*) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the

Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom

623; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153,

Attn: Jacqueline Marcus, Esq., attorneys for the Plan Administrator; (iii) the Office of the United

States Trustee for Region 2, U.S. Federal Office Building 201 Varick Street, Suite 1006, New

York, New York 10014, Attn: William K. Harrington, Esq. and Andrea B. Schwartz, Esq.; and

(iv) Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, Attn: Eric A.

Schaffer, Esq. and Michael J. Venditto, Esq., attorneys for the BNYM Entities, so as to be so

filed and received no later than **February 28, 2018 at 4:00 p.m. (Prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 20, 2018
    New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Lehman Brothers Holdings Inc.
and Lehman Brothers Special Financing Inc.*

WEIL:\96421023\6\58399.0011

Hearing Date and Time:  March 7, 2018 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  February 28, 2018 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

*Attorneys for Lehman Brothers Holdings Inc.*
*and Lehman Brothers Special Financing Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
:
**In re**                                                        :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (SCC)**
:
                    **Debtors.**                    :        **(Jointly Administered)**
:
------------------------------------------------------------------------x

**MOTION PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND**
**SECTION 105(a) OF THE BANKRUPTCY CODE FOR APPROVAL OF**
**GLOBAL RELEASE AGREEMENT WITH THE BANK OF**
**NEW YORK MELLON AND CERTAIN AFFILIATES**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

          Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator") as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors* (the "Plan") for certain entities in the above-referenced

chapter 11 cases, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"),

submits this motion (the "Motion") and respectfully represents:

**Relief Requested**

          1.          By this Motion, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code"), the Plan Administrator on behalf of itself and LBSF seeks approval of a global release agreement, dated as of February 15, 2018 (the "Global Release Agreement"), among (i) LBHI, (ii) LBSF, (iii) The Bank of New York Mellon ("BNYM"), (iv) The Bank of New York Mellon, London Branch, (v) The Bank of New York Mellon Trust Company, National Association (the "BNYM Trust"), and (vi) BNY Mellon Corporate Trustee Service Limited *f/k/a* BNY Corporate Trustee Services Limited (collectively (iii)-(vi), the "BNYM Entities" and (i)-(vi), the "Parties").  The Global Release Agreement resolves certain disputes described more fully below.

**Background**

2.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF, commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

3.      On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

**Jurisdiction**

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Credit Default Transactions**

5.      On the Commencement Date, LBHI and LBSF were parties to numerous structured finance transactions for which the BNYM Entities acted in various capacities, including as indenture trustee, custodian or paying agent.  Since the Commencement Date, the vast majority of these structured transactions have been liquidated, terminated or otherwise resolved.  A relatively small number remain active.  Over the last several months, the Plan

2

Administrator has reviewed each of these active transactions and engaged in discussions with the BNYM Entities to resolve open issues that have prevented the closeout of these transactions. The discussions have culminated in the Global Release Agreement.

6.      A large portion of the structured transactions involved a multi-issuer synthetic debt repackaged note issuance program known as the "Dante Programme", which was established by a Principal Trust Deed made by Dante Finance Public Limited Company on October 10, 2002 (as amended and restated, the  "Principal Trust Deed").  Pursuant to certain deeds of accessions, Ruby Finance Public Limited Company ("Ruby") and Quartz Finance Public Limited Company ("Quartz") acceded to the Principal Trust Deed, issuing notes and entering into derivative transactions with LBSF.

***Ruby Transactions:***

7.      LBSF and Ruby entered into one or more swap transactions (collectively, the "Ruby Transactions") pursuant to a 1992 form ISDA Master Agreement, dated as of October 10, 2002 (as amended and restated, the "Ruby ISDA Master Agreement"), as amended and supplemented by those certain schedules to the Ruby ISDA Master Agreement (collectively, the "Ruby Schedules") and confirmations, including the Credit Default Swap Confirmation, dated August 18, 2005 (the "Ruby 2005-1 Confirmation" and collectively with the other confirmations, the "Ruby Confirmations") related to the Ruby 2005-1 Notes (as hereinafter defined).  The Ruby 2005-1 Confirmation relates to the Supplemental Trust Deed and Drawdown Agreement, dated August 18, 2005, entered into, by, among others, LBSF, BNY CTS, and Ruby, pursuant to which Ruby issued certain notes (the "Ruby 2005-1 Notes").  LBHI guaranteed LBSF's obligations under the Ruby ISDA Master Agreement, the Ruby Schedules, and the Ruby Confirmations (the "LBHI Ruby Guarantee" and, together with the Ruby ISDA Master Agreement, the Ruby

3

Schedules, and the Ruby Confirmations, the "<u>Ruby Credit Default Swap Agreement</u>").    The

Ruby 2005-1 Notes were secured by a pool of collateral that also secured the Ruby Credit

Default Swap Agreement.

        8.    Under the Ruby Credit Default Swap Agreement, LBSF agreed to make

periodic payments to Ruby in exchange for the Ruby's promise to make payments to LBSF in

respect of losses incurred in respect of certain specified reference obligations.    In effect, LBSF,

as the "Swap Counterparty," purchased protection from the Ruby, which sold protection on the

creditworthiness of the obligations referenced in the Ruby Credit Default Swap Agreement.

***Quartz Transactions*:**

        9.    LBSF and Quartz entered into one or more swap transactions (collectively,

the "<u>Quartz Transactions</u>" and, together with the Ruby Transactions, the "<u>Dante Transactions</u>")

pursuant to a 1992 form ISDA Master Agreement, dated as of October 10, 2002 (as amended

and restated on January 30, 2004, the "<u>Quartz ISDA Master Agreement</u>"), as amended and

supplemented by those certain schedules to the Quartz ISDA Master Agreement (collectively,

the "<u>Quartz Schedules</u>") and confirmations, including the Credit Default Swap Confirmation,

dated August 20, 2004 (the "<u>Quartz 2004-1 Confirmation</u>" and collectively with the other

confirmations, the "<u>Quartz Confirmations</u>") related to the Quartz 2004-1 Notes (as hereinafter

defined).    The Quartz 2004-1 Confirmation relates to the Supplemental Trust Deed and

Drawdown Agreement, dated August 20, 2004, entered into, by, among others, LBSF, BNYM

Trust, and Quartz, pursuant to which Quartz issued certain notes (the "<u>Quartz 2004-1 Notes</u>").

LBHI guaranteed LBSF's obligations under the Quartz ISDA Master Agreement, the Quartz

Schedules, and the Quartz Confirmations (the "<u>LBHI Quartz Guarantee</u>" and, together with the

Quartz ISDA Master Agreement, the Quartz Schedules, and the Quartz Confirmations, the

4

"Quartz Credit Default Swap Agreement"). The Quartz 2004-1 Notes were secured by a pool of collateral that also secured the Quartz Credit Default Swap Agreement.

10. Under the Quartz Credit Default Swap Agreement, LBSF agreed to make periodic payments to Quartz in exchange for the Quartz's promise to make payments to LBSF in respect of losses incurred in respect of certain specified reference obligations. In effect, LBSF, as the "Swap Counterparty," purchased protection from the Quartz, which sold protection on the creditworthiness of the obligations referenced in the Quartz Credit Default Swap Agreement.

***Federation Transactions***:

11. Federation A-1 and BNYM, as trustee, among others, are parties to that certain Series Indenture, dated as of May 9, 2007 (the "A-1 Indenture"), pursuant to which Federation A-1 issued certain notes (the "Federation A-1 Notes"). Federation A-2 and BNYM NA, as trustee, among others, are parties to that certain Series Indenture, dated as of May 9, 2007 (the "A-2 Indenture" and, together with the A-1 Indenture, the "Federation Indentures"), pursuant to which Federation A-2 issued certain notes (the "Federation A-2 Notes" and, collectively with Federation A-1 Notes, the Ruby 2005-1 Notes, the Quartz 2004-1 Notes, the "Notes").

12. In connection with the Federation A-1 Notes and the Federation A-2 Notes, each Federation Issuer entered into one or more swap transactions (collectively, the "Federation Transactions" and, together with the Dante Transactions, the "Credit Default Transactions") pursuant to 1992 form ISDA Master Agreements, each dated as of May 9, 2007 (such Master Agreements, any confirmations, schedules and related documents, the "Federation ISDA Master Agreements"). LBHI guaranteed LBSF's obligations under the each of the Federation ISDA Master Agreements pursuant to certain Guarantees, each dated May 14, 2007

(the "LBHI Federation Guarantee" and, together with the Federation ISDA Master Agreements,

the "Federation Credit Default Swap Agreement").    The Federation A-1 Notes and the

Federation A-2 Notes were secured by a pool of collateral that also secured the Federation Credit

Default Swap Agreement.

13.    Under the Federation Credit Default Swap Agreement, LBSF agreed to

make periodic payments to the Federation Issuers in exchange for the Federation Issuers'

promise to make payments to LBSF in respect of losses incurred in respect of certain specified

reference obligations.    In effect, LBSF, as the "Swap Counterparty," purchased protection from

the Federation Issuers, which sold protection on the creditworthiness of the obligations

referenced in the Federation Credit Default Swap Agreement.

## Liquidation Distributions and the Dispute

14.    On October 27, 2008, BNYM, as trustee under each of the Federation

Indentures (the "Federation Trustee"), delivered to LBSF a "Notice of Termination" that, *inter

alia*, designated October 30, 2008, as the "Early Termination Date" for the Federation Swaps,

which resulted in the automatic acceleration of the principal of, accrued interest on, the

Federation A-1 Notes and the Federation A-2 Notes.    Thereafter, on October 30, 2008, BNYM

NA distributed the aggregate amount of AUD 65,703,782.02 to holders of the Federation A-1

Notes and the Federation A-2 Notes (together, the "Federation Distribution").

15.    On October 31, 2008, Ruby terminated the Ruby Transactions and

subsequently distributed €18,826,670.39 of the proceeds of the collateral pledged to secure

repayment of the Ruby 2005-1 Notes (the "Ruby Distribution") to holders of such notes.

16.    On November 2, 2008, Quartz terminated the Quartz 2004-1 Transactions

and subsequently distributed €24,973,720.66 of the proceeds of the collateral pledged to secure

6

repayment of the Quartz 2004-1 Notes (the "Quartz Distribution" and, together with the Federation Distribution and Ruby Distribution, the "Liquidation Distributions") to holders of such notes.

17.     Each of the Liquidation Distributions was made by the trustees under the Federation Indentures or the Supplemental Trust Deed and Drawdown Agreements, as applicable, governing the issuance of the various Notes, pursuant to which each trustee purportedly applied payment proceeds received in accordance with "waterfall" provisions (the "Waterfall Provisions"). The Waterfall Provisions generally provide that a termination payment owed to LBSF as Swap Counterparty will be paid in advance of any distributions to holders of the Notes unless, *inter alia*, LBSF is the defaulting party under the applicable Credit Default Transaction. Additionally, the Waterfall Provisions purport to provide that if, *inter alia*, LBSF is the defaulting party under the applicable Credit Default Transaction, the termination payment owed to LBSF is paid after the holders of the Notes.

18.     On September 14, 2010, LBSF commenced Adversary Proceeding No. 10-03547, captioned *Lehman Bros. Special Fin. Inc. v. Bank of Am. National Ass'n, et al.* (*In re Lehman Bros. Holdings Inc.*, *et al.*), Case No. 08-13542 (SCC) (the "Adversary Proceeding"), (a) seeking, *inter alia*, to enforce priority of payment provisions in various transactions, including the Dante Transactions and the Federation Transactions, (b) challenging the proper interpretation of the Credit Default Swap Agreements, (c) challenging enforceability of certain provisions in the Credit Default Swap Agreements and related agreements purporting to modify LBSF's right to receive payment upon early termination of the Dante Transactions and Federation Transactions solely as a result of LBSF's or LBHI's bankruptcy filings, and (d) seeking to recover, for the benefit of their estates, among other things, all or a portion of the

7

Liquidation Distributions.  On October 13, 2015, LBSF filed an amended complaint (the "Fourth Amended Complaint"), which, among other things, set forth additional claims in Counts XXIV and XXV asserting that the Federation Distribution was in breach of the Federation Indentures. The Adversary Proceeding also involved other similar, but unrelated, disputes involving other issuers and trustees.

19.    On June 28, 2016 the Court entered its *Memorandum Decision on Omnibus Motion of the Noteholder Defendants to Dismiss the Fourth Amended Complaint* (Adv. Proc. ECF No. 1360, as revised by Adv. Proc. ECF No. 1367) and, in accordance therewith, on July 19, 2016, the Court entered the order dismissing certain claims asserted in the Adversary Proceeding (Adv. Proc. ECF No. 1371, the "Dismissal Order").  On February 6, 2017, LBSF filed a notice of appeal from the Dismissal Order.  The Dismissal Order did not dismiss the claims asserted in Counts XXIV and XXV of the Fourth Amended Complaint.

20.    Prior to the Dismissal Order, starting on or about January 2012, as a result of extensive settlement negotiations, BNYM Trust, as trustee under the Dante Programme (the "Dante Trustee") and LBSF, among other parties, entered into certain settlement deeds (the "Settlement Deeds") resolving, among other things, payments to which LBSF was entitled under the applicable Waterfall Provisions for certain series of notes.  The Settlement Deeds were accompanied by or included, among other things, an indemnity from LBSF and LBHI to certain indemnified parties, including the Dante Trustee, pursuant to the terms and conditions of a Trust Deed ("Lehman Indemnities").  Additionally, each of the Settlement Deeds also provided for LBSF to fund all or a portion of certain holdback amounts or excess contingences as deemed needed by the Dante Trustee.

8

21.    The Parties have agreed to enter into a settlement to address (a) the Lehman Indemnities, (b) LBSF's ongoing obligations to reimburse the costs, expenses and fees owed to the BNYM Entities arising from their services as trustee, custodian and/or paying agent in connection with any of the Credit Default Transactions, (c) reimbursement of certain amounts due to LBSF, and (d) the objection filed by the BNYM Entities to the Plan Supplement filed by LBSF on October 25, 2011 (ECF No. 21254) (as amended, the "BNYM Objection").    The BNYM Entities have conditioned such settlement on the Court's approval of the terms of the Global Release Agreement pursuant to the terms of Bankruptcy Rule 9019.  Entry of an order by this Court, in the form annexed hereto, is a condition precedent to the effectiveness of the Global Release Agreement.

## The Global Release Agreement[1]

22.    The salient terms of the Global Release Agreement are as follows:

a.  Upon the Effective Date (as defined in the Global Release Agreement), the Lehman Indemnities will be terminated.

b.  Upon the Effective Date LBSF's ongoing obligations to reimburse the costs, expenses and fees owed to the BNYM Entities arising from their services as trustee, custodian and/or paying agent in connection with any of the Credit Default Transactions are to be liquidated and terminated.

c.  Within ten (10) business days following the Effective Date, the BNYM Entities shall pay LBSF a specified agreed upon amount (the "Global Release Amount") without deduction, set-off, or counterclaim, to LBSF.

d.  Upon the BNYM Entities' execution of the Global Release Agreement and payment of the Global Release Amount to LBSF, LBSF, LBHI and the Plan Administrator will generally release,

---

[1] In keeping with the confidentiality provisions of the Global Release Agreement, and due to the Parties' desire to keep terms that are material to pending litigation confidential, the Global Release Agreement has not been annexed hereto.  The Plan Administrator will provide a copy of the Global Release Agreement to the Court and the Office of the United States Trustee prior to the hearing to consider the relief requested herein.

9

discharge and acquit each BNYM Released Party from all Released Claims.[2]

e. Within six (6) business days after receipt of the Global Release Amount, LBSF, LBHI and the Plan Administrator will dismiss with prejudice all claims asserted against the BNYM Entities in the Adversary Proceeding.

f. LBSF, LBHI and the Plan Administrator agree, upon written request of the BNYM Entities at any time after the Effective Date, to provide written releases of any claims they may have against any Beneficial Holders (as defined in the Global Release Agreement) solely with respect to the Released Claims.

g. Upon the Effective Date, each of the BNYM Entities on behalf of itself and any other party, person or entity claiming under or through it, generally releases, discharges and acquits each Lehman Released Party[3] from all Released Claims.

h. Upon the Effective Date the BNYM Objection shall be deemed withdrawn with prejudice and the BNYM Entities shall file with the Bankruptcy Court a notice of withdrawal of the BNYM Objection within five (5) business days of the Effective Date.

i. LBSF, LBHI, the Plan Administrator and the BNYM Entities have agreed to certain further assurances and mutual cooperation as set forth in the Global Release Agreement.

23.    The Plan Administrator has determined in its informed business judgment

that the terms of the Global Release Agreement are in the best interests of LBSF and LBHI.

Approval of the Global Release Agreement will enable LBSF and LBHI to resolve all remaining

---

[2] "Released Claims" means all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, whether known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, arising under or related to (i) Agreement Documents and the Transactions, and in each case including their negotiation, execution, performance, any breaches thereof, or their termination, (ii) Adversary Proceedings, (iii) the Schedule B Transactions, or (iv) the Schedule C Transactions; provided, however, that the Released Claims shall not include any claims relating to the collateral that will be the subject of the Collateral Release Agreement described in Section 5 of the Global Release Agreement.

[3] "Lehman Released Party" shall mean collectively, and in each case in its capacity as such, each of LBHI, the Plan Administrator, and LBSF and their current and former affiliates, and current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), employees, agents, financial advisors, attorneys, accountants, consultants, representatives, and other professionals.

WEIL:\96421023\6\58399.0011

disputes with the BNYM Entities and avoid expending further resources on litigation with the BNYM Entities. It will also eliminate the outstanding indemnities which, in many instances, are potential substantial long term obligations of the Debtors and free up additional cash that may be used to fund ongoing distributions to creditors, while recovering a substantial portion of the amount in dispute.

### The Global Release Agreement Is in LBSF's Best Interests and Should Be Approved

24.     The Plan Administrator on behalf of itself and LBSF submits that the Global Release Agreement is in the Debtors' best interests and should be approved under Rule 9019 of the Bankruptcy Rules. Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed. R. Bankr. R. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group*, *Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Id.*; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

25.     Compromises are "a normal part of the process of reorganization." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself. *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. at 758. The decision to approve a particular compromise lies within the sound discretion of the Court. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994). The Court's discretion may be exercised "in light

11

of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). A proposed compromise and settlement implicates the issue of whether it is "fair and equitable, and in the best interest of the [debtor's] estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted). The court must apprise itself "of all relevant facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424.

26.    Courts typically consider the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any litigated judgment; (iii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; (iv) the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement; (v) the competence and experience of counsel who support the settlement; (vi) the relative benefits to be received by members of any affected class; (vii) the extent to which the settlement is truly the product of arm's-length bargaining and not the product of fraud or collusion; and (viii) the debtor's informed judgment that the settlement is fair and reasonable. *See Id.*; *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*, 168 B.R. at 50.

27.    While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. Moreover, in reviewing a global

12

compromise, a court need not be aware of or decide the particulars of each individual claim resolved by the settlement or "assess the minutia of each and every claim"; rather, a court "need only canvass the issues and see whether the settlement falls 'below the lowest point in the range of reasonableness.'" *Shugrue*, 165 B.R. at 123. As one court explained in assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Global Release Agreement *in its entirety* is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1993) (emphasis added).

28.     Here, the Global Release Agreement will benefit LBHI, LBSF and their creditors. First, the Global Release Agreement will result in a substantial payment to LBSF's estate that the Plan Administrator has determined, in the exercise of its business judgment, will adequately compensate LBSF's estate for resolving the remaining disputes. Second, entry into the Global Release Agreement will avoid future disputes and litigation with the BNYM Entities as it relates to the Transactions (as defined in the Global Release Agreement). Finally, by terminating the Lehman Indemnities and other contingent obligations, the Global Settlement will assist LBHI, LBSF, and the Plan Administrator in effectuating a wind down of the Debtors' estates.

29.     For the reasons stated above, and in the Plan Administrator's informed business judgment, the compromises set forth in the Global Release Agreement are a "fair and equitable" resolution of the parties' dispute, well within the "range of reasonableness," and are in the best interests of LBHI, LBSF, and their respective estates and creditors. Accordingly, the Plan Administrator requests that the Global Release Agreement be approved, effective immediately upon entry of an Order granting the relief requested herein.

**The Bankruptcy Court Has Authority Pursuant to**
**Section 105(a) of the Bankruptcy Code to Approve the Global Release Agreement**

30.    The Plan Administrator also seeks approval of the Global Release Agreement pursuant to section 105(a) of the Bankruptcy Code.  This Court has authority under the broad equitable powers of the Bankruptcy Code, as set forth in section 105(a), to approve the Global Release Agreement.  Courts have used their equitable powers to permit deviations in trust agreements in order to preserve and protect a trust or where circumstances exist that would defeat or substantially impair the accomplishment of the purposes of the trust.  *See, e.g., In re A.H. Robbins*, 880 F.2d 769, 776 (4th Cir. 1989) (noting that section 105(a) authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code and finding that matters relating to the control and supervision of trusts are within the equity jurisdiction of the court); *In re Joint Eastern and Southern Districts Asbestos Litigation*, 878 F. Supp 473 (E.D.N.Y. & S.D.N.Y. 1995) and 129 B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) authorizes the federal courts in bankruptcy cases to approve a settlement modifying distributions, obligations, and payment procedures under a trust).  Accordingly, the Court has authority under section 105(a) of the Bankruptcy Code to direct the applicable BNYM Entities, in particular the Dante Trustee and the Federation Trustee, to effectuate the terms of the Global Release Agreement where, in certain instances, strict adherence to the Indentures may frustrate the parties efforts to reach a global resolution.

**Waiver of Bankruptcy Rule 6004(h)**

31.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Debtors

14

seek a waiver of the 14-day stay extant in Bankruptcy Rule 6004(h) to avoid any delays in the

Dante Trustee's and Federation Trustees' ability to effectuate the terms of the Global Release

Agreement which, among other things, inure to the benefit of LBSF and LBHI.

## **Notice**

32.    No trustee has been appointed in these chapter 11 cases.    The Plan

Administrator has served notice of this Motion in accordance with the procedures set forth in the

second amended order entered on June 17, 2010, governing case management and administrative

procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and

Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

Southern District of New York; (v) the attorneys for the BNYM Entities; and (vi) all parties who

have requested notice in the Chapter 11 Cases.    The Plan Administrator submits that no other or

further notice need be provided.

WHEREFORE the Plan Administrator on behalf of itself and LBSF respectfully

requests that the Court grant the relief requested herein and such other and further relief as it

deems just and proper.

Dated: February 20, 2018
        New York, New York

                                        /s/ Jacqueline Marcus
                                        Jacqueline Marcus
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        *Attorneys for Lehman Brothers Holdings Inc.*
                                        *and Lehman Brothers Special Financing Inc.*

15

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
                                                            :
In re                                                       :          **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                :          **08-13555 (SCC)**
                                                            :
                                    **Debtors.**            :          **(Jointly Administered)**
                                                            :
-------------------------------------------------------------------------x

**ORDER PURSUANT TO RULE 9019 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE AND**
**SECTION 105(a) OF THE BANKRUPTCY CODE APPROVING THE**
**GLOBAL RELEASE AGREEMENT WITH THE BANK OF**
**NEW YORK MELLON AND CERTAIN AFFILIATES**

Upon the motion, dated February 20, 2018 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI" or the "Plan Administrator") as Plan Administrator under the *Modified*

*Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated*

*Debtors*, on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"), pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section

105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of the Global

Release Agreement (the "Global Release Agreement") among (i) LBSF, (ii) LBHI, (iii) The

Bank of New York Mellon, (iv) The Bank of New York Mellon, London Branch, (v) The Bank

of New York Mellon Trust Company, National Association, and (vi) BNY Mellon Corporate

Trustee Service Limited *f/k/a* BNY Corporate Trustee Services Limited ((iii)-(vi) collectively,

the "BNYM Entities") involving resolutions of issues, *inter alia*, pertaining to the (a)  Series

2007-1 Federation A-1 Notes[1] and the Series 2007-1 Federation A-2 Notes, and (b) Dante

Programme, all as more fully described in the Motion; and the Court having jurisdiction to

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.); and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance

with the procedures set forth in the amended order entered on June 17, 2010, governing case

management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S.

Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the

United States Attorney for the Southern District of New York; (v) the attorneys for the BNYM

Entities; and (vi) all parties who have requested notice in the Chapter 11 Cases, and it appearing

that no other or further notice need be provided; and a hearing having been held to consider the

relief requested in the Motion; and the Court having found and determined that the relief sought

in the Motion is in the best interests of LBHI and LBSF, their estates, their creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, the Global Release

Agreement is approved; and it is further

ORDERED that LBSF and LBHI, acting through the Plan Administrator, are

authorized to execute, deliver, implement and fully perform any and all obligations, instruments,

documents and papers and to take any and all actions reasonably necessary or appropriate to

2

consummate the Global Release Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that, pursuant to section 105(a) of the Bankruptcy Code, the BNYM Entities are authorized and directed to take such actions as they reasonably deem necessary or appropriate to consummate the Global Release Agreement and to perform any and all obligations contemplated therein, including, without limitation, to pay the Global Release Amount thereunder using proceeds held by the BNYM Entities, in their respective capacities as trustees under the Indentures; and it is further

ORDERED that this Order is binding and effective on the Plan Administrator, LBHI and its subsidiaries that commenced the Chapter 11 Cases, including LBSF (collectively, the "Chapter 11 Entities"), the BNYM Entities, as well as any successor trustees under the Indentures. The Plan Administrator, the Chapter 11 Entities, and the BNYM Entities, in their services as trustees, custodian and/or paying agent in connection with any of the Credit Default Transactions, and all of their respective current and former officers, directors, shareholders, employees, agents, attorneys, successors and assigns, shall be and hereby are, fully exculpated and shall not have liability to each other or the Chapter 11 Entities, arising out of, relating to, or in connection with the Motion, the Global Release Agreement or this Order, except to the extent of any obligations set forth in the Global Release Agreement that have not been performed; and it is further

ORDERED that notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

3

and sufficient notice of thereof; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: _____, 2018
        New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\96421023\6\58399.0011