**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                         :

**In re**                              :     **Chapter 11 Case. No.**
                         :

**LEHMAN BROTHERS HOLDINGS INC., et al.,** :    **08-13555 (SCC)**
                         :

            **Debtors.**       :     **(Jointly Administered)**
                         :
-------------------------------------------------------------------x

## DECLARATION OF EDMOND ESSES

I, EDMOND ESSES, declare under penalty of perjury as follows:

1.      I am Director, Dispute and Investigations, of Duff & Phelps LLC ("Duff & Phelps"). I have been employed by Duff & Phelps since December 10, 2010. I have personal knowledge of the facts set forth in this declaration. I offer this declaration in support of the *Objection of Wilmington Trust, National Association, as Trustee for Structured Assets Securities Corporation Mortgage Pass-Through Certificates, Series 2006-S4, to Lehman Brothers Holdings Inc.'s Motion to Estimate RMBS Claims of SASCO 2006-S4 for Reserve Purposes Pursuant to 11 U.S.C. § 502(c), and Cross-Motion to Estimate RMBS Claims for SASCO 2006-S4 for Reserve Purposes and for Relief from the Protocol Order.*

2.      On December 29, 2014, this Court entered the *Order Establishing a Protocol to Resolve Claims Filed by Trustees on Behalf of Certain Issuers of Residential Mortgage-Backed Securities* (ECF No. 47569) (the "Protocol").[1] During the Protocol, Duff & Phelps, in its capacity as financial advisor to the RMBS Trustees,[2] was responsible for implementing each of the steps

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Protocol.
[2] The RMBS Trustees are U.S. Bank National Association, TMI Trust Company, Wilmington Trust Company, Wilmington Trust, National Association and Deutsche Bank National Trust Company (the "**RMBS Trustees**").

set forth in the Protocol Order to resolve the RMBS Claims, including collecting loan files, designing the loan review process to identify breaches of loans held by the trusts subject to the Protocol, including Securities Assets Security Corporation Mortgage Pass-Through Certificates, Series 2006-S4 ("**SASCO 2006-S4**"), identifying and retaining loan review firms to participate in the loan review process, overseeing the loan review process, submitting claims to LBHI, designing the process for reviewing LBHI's responses and responding to such responses, maintaining day-to-day communications with LBHI throughout the Protocol, and supporting Mr. Aronoff in his testimony regarding the loan review. I was the project manager at Duff & Phelps during the Protocol and was responsible for managing the implementation of the Protocol. Specifically, I was responsible for collecting loan files from servicers, assisting Mr. Aronoff in designing and managing the loan review process, identifying and selecting the loan review firms, structuring work flow for compliance with the Protocol, assembling the team necessary to perform tasks required by the Protocol, overseeing the development of necessary data and tracking systems, submission of claim files in accordance with the Protocol, and communicating with LBHI.

3.      I testified about my role and responsibilities at the recent Estimation Hearing held to estimate claims asserted by certain trusts subject to the Protocol. It is my understanding that in accordance with the terms of the Settlement Agreement governing the Estimation Hearing, Wilmington Trust, National Association, as trustee for SASCO 2006-S4, opted out of the Settlement Agreement and, as a result, its claims were not a subject of the Estimation Hearing.

4.      During Step 1 of the Protocol, the Trustees submitted 5,173 breach claims on 3,385 SASCO 2006-S4 loans. During Step 2 of the Protocol, LBHI accepted 76 of these loans and 2,987[3] remained unresolved. During Step 3 of the Protocol, the parties discussed claims on 99 SASCO

---

[3] The Trustees rescinded 322 loans during Step 2 of the protocol. In addition, 10 loans paid off during the course of the Protocol. For the avoidance of doubt, this figure includes those 10 loans.

2006-S4 loans; 91 loans were not resolved, with LBHI accepting just one loan.[4] At the conclusion of Steps 2 and 3 of the Protocol, there were 4,402 breaches on 3,046 SASCO 2006-S4 loans that remained outstanding. Claims on 2,867 SASCO 2006-S4 loans remain unresolved as of January 2018.[5] A list of these loans, together with the 77 loans accepted by LBHI during the Protocol, is annexed hereto as Exhibit 1.

5.    Of the 2,867 SASCO 2006-S4 loans that remain unresolved, 2,556 are loans that were serviced by Aurora and that LBHI deemed complete during the Protocol, of which 847 include missing document breaches. *See* Protocol at § II(a) ("The 51,109 substantially complete origination files in Aurora's possession…shall serve as a template for what the Plan Administrator considers a complete file"). In addition, 2,632 of the 2,944 SASCO 2006-S4 loans outstanding as of January 2018, as set forth below, were deemed complete.

6.    During the Protocol, LBHI refused to review claims with respect to loans as to which it claimed that the loan file was missing certain documents that the LBHI asserted were "critical" and put review "on hold." For the entire population of breaching loans identified by the RMBS Trustees, LBHI put 30,241 of loan files on hold, representing approximately one-third of all the loan as to which the RMBS Trustees asserted breach claims. LBHI placed only 36 of the outstanding SASCO 2006-S4 loans as of January 2018 on-hold.

7.    Initial expert reports in advance of the Estimation Hearing were submitted on June 1, 2017. These reports included analyses of breach claims asserted on 2,831 SASCO 2006-S4 loans. Subsequent to the submission of initial expert reports, on June 22, 2017, SASCO 2006-S4 opted out of the Estimation Hearing.

---

[4] During Step 3, the Trustees rescinded 7 loans.
[5] As noted above, 10 loans paid off during Steps 2 and 3 of the Protocol. An additional 19 loans paid off thereafter and the Trustee are no longer pursuing 83 loans.

8.      During the course of the Protocol, a data management team at Duff & Phelps was responsible for collecting and maintaining all of the information exchanged during between the parties during the Protocol.  I have collected information concerning the 2,944 SASCO 2006-S4 loans outstanding as of January 2018, which I used to generate the tables set forth in Exhibits 2 – 6 hereto and described below.  Each of the Exhibits, as well as the tables below, accurately summarize information contained in materials exchanged during the Protocol, including the Claim Tracking Spreadsheets, claim packages, entire loan files, data tapes from the Master Servicer, and information contained in LBHI's responses to claim submissions made during the Protocol and the Trustees' rebuttals.

9.      Annexed hereto as Exhibit 2 is a table showing the breach claims affecting the 2,944 SASCO 2006-S4 loans that were outstanding as of January 2018.  2,804 breach claims on 2,146 loans are based on a misrepresentation of income, debt, occupancy, or employment. 1,261 claims on 1,048 loans are based on the absence or deficiency of key documents, including, for example, 884 breach claims for HUD-1s, 46 breach claims for Truth In Lending Act disclosure forms, and 142 breach claims for qualified appraisals.  LBHI placed 9 of the 1,048 loans on-hold.

10.      Annexed hereto as Exhibit 3 is a table showing the variances of the 1,328 breach claims based on a misrepresentation of income affecting 1,323 SASCO 2006-S4 loans.

| Monthly Percentage Difference | Number of Claims |
|---|---|
| Less than 20% | 76 |
| 20% to 40% | 141 |
| 40% to 80% | 244 |
| 80% to 120% | 182 |
| 120% to 500% | 403 |
| Greater than 500% | 162 |
| N/A | 120 |

4

11.    Annexed hereto as Exhibit 4 is a table showing the breach claims on 858 SASCO 2006-S4 loans based on misrepresentation of debt, including, for example, whether each breach claims is based on mortgage or non-mortgage debt.

| Type of Debt | Number of Claims |
| --- | --- |
| Pre-Close Mortgage | 559 |
| Pre-Close Installment | 133 |
| Post-Close Mortgage | 126 |
| Other Monthly Obligations | 22 |
| Post-Close Installment | 18 |

12.    Annexed hereto as Exhibit 5 is a table showing the breach claims on 354 SASCO 2006-S4 loans based on a misrepresentation of occupancy, as well as the 320 breach claims based on the borrower's failure to occupy the subject property as his primary residence – the borrower represented that the home on which the subject mortgage was obtained would be used as a primary residence but in fact was not. The remaining occupancy breach claims were instances where the borrower represented that the subject property would be used as a secondary residence, but in fact it was an investment property.

| Represented Occupancy | Number of Claims |
| --- | --- |
| Primary Residence | 320 |
| Secondary Residence | 34 |

13.    Annexed hereto as Exhibit 6 is a table showing the claims on 264 SASCO 2006-S4 loans based on a misrepresentation of employment, including, for example, 138 where the borrower did not work at the employer represented on the borrower's loan application.

| Type of Employment Finding | Number of Claims |
| --- | --- |
| Did Not Work Where Represented | 138 |
| Job Title | 52 |
| Undisclosed Employment | 43 |

5

| Type of Employment | 17 |
|---|---|
| Job Length | 14 |

14.    I declare under penalty of perjury that the foregoing is true and correct.

Executed the 28th day of February 2018, in New York, New York

Edmond Esses