WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000
Fax: (212) 728-8111
Paul V. Shalhoub
Todd G. Cosenza

ROLLIN BRASWELL FISHER LLC
8350 East Crescent Parkway, Suite 100
Greenwood Village, Colorado 80111
Tel: (303) 945-7415
Fax: (303) 974-7468
Michael A. Rollin
Maritza Dominguez Braswell (*pro hac vice*)

*Attorneys for Debtors Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                                         )
In re                                                    )   Case No. 08-13555 (SCC)
                                                         )
Lehman Brothers Holdings Inc., et al.,                   )   Chapter 11
                                                         )
         Debtors.                                        )   Jointly Administered
                                                         )
---------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.'S
REPLY IN SUPPORT OF MOTION TO ESTIMATE RMBS CLAIMS OF SASCO 2006-
S4 FOR RESERVE PURPOSES PURSUANT TO 11 U.S.C § 502(C)**

The Plan Administrator submits this reply in support of its motion to estimate the SASCO 2006-S4 Claims[1] for reserve purposes (the "<u>Motion</u>"), and in response to the objection of Wilmington Trust, National Association, as Trustee for SASCO 2006-S4 (the "<u>Objection</u>").[2]

## ARGUMENT

1. In the Motion, the Plan Administrator sought to estimate the claims of the SASCO 2006-S4 Trust (the "<u>Trust</u>") for reserve purposes using a methodology that set the reserve based on the Trust's agreed-upon allocation from the RMBS Settlement Agreement and the Court's ultimate decision in the Estimation Proceeding. As set forth in the Motion, the Plan Administrator's approach is eminently reasonable and fair to the Trust, and appropriately balances the interests of all creditors.

2. The parties agree that the Court may employ whatever estimation methodology "is best suited to the circumstances of the case." *In re Adelphia Business Solutions, Inc.*, 341 B.R. 415, 424 (Bankr. S.D.N.Y. 2003) (citing *Ralph Lauren Womenswear*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). The Plan Administrator submits that the methodology best suited for this case is one that reflects the Court's judgment and reasoned consideration of the evidence. Here, the Plan Administrator offered the Court a reserve estimation methodology that does just that by asking the Court to use the outcome of the Estimation Proceeding -- which included months of discovery and a full 20-day trial on indisputably similar claims -- to estimate the proper reserve.

---

[1] Capitalized terms not immediately defined herein have the meanings ascribed to them in the Plan Administrator's Motion.

[2] Along with their Objection, the Trustee also filed an untimely, procedurally improper, and meritless cross-motion for relief from the Protocol Order, along with several declarations and sealed exhibits in support of that cross-motion. Pursuant to the conference between the Court and the parties on March 1, 2018, the Plan Administrator will address the issues raised in the cross-motion at the appropriate time after the issuance of the Court's estimation decision on March 8.

3. In response, the Trustee asserts that the Trust's claims "should be reserved at full value," which it defines as the full Purchase Price of every loan on which the Trust has asserted claims, or $191.7 million. (Trustee's Obj. at ¶ 38.)[3] This is more than twice the Trust's Allocable Share of the current $4.75 billion reserve set in December 2014. Next, the Trustee argues in the alternative that "at a minimum" the reserve for the Trust's claims should be set at approximately $70 million, which is the equivalent of its pro rata share of the current reserve. (Trustee's Obj. at ¶¶ 47-49.)[4] The Plan Administrator views that reserve as a ceiling not a floor, if the Court determines that the reserve for the Estimation Proceeding should be set at or below that level.

4. Indeed, the Trustee's request for a $191.7 million reserve ignores the entirety of the Estimation Proceeding, the outcome of which will be by far the most apt yardstick by which to measure the value of the Trust's claims. The Trustee's Objection itself proves this point. The Objection attaches declarations and summaries of the claims from the same witnesses who testified at the Estimation Proceeding (Messrs. Aronoff, Esses and Snow), which clearly demonstrate that the Trust's claims are the product of the same loan review process managed by Mr. Aronoff. That loan review process was the focal point of the trial and resulted in the same

---

[3] In the Motion, the Plan Administrator said that the total claim amount on the Trust was $182 million. (Motion at ¶ 10.) The difference between this number and the Trustee's proposed $191.7 million reserve appears to be explained by the fact that the Trustee's proposed reserve amount incorporates Purchase Prices for (i) 121 loans that were submitted into the Protocol, but were then withdrawn during expert submissions, and (ii) the full Purchase Price for active loans without any offset for the value of those loans. This is contrary to positions that the RMBS Trustees took at the estimation proceeding, and is further evidence of why the Trustee's proposed reserve is inflated.

[4] Notably, courts typically estimate disputed claims for reserve purposes at lower than the face value of the claim. *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 280-282 (Bankr. S.D.N.Y. 2007) (estimating claim for future legal fees at approximately 33% of claimants' "minimum" requested reserve amount); *In re Chemtura Corp.*, 448 B.R. 635, 669 (Bankr. S.D.N.Y. 2011) (estimating disputed claim at 30% of claimant's proposed reserve amount).

2

categories of claims calculated using the same damages methodology as the Trust seeks to apply here. *See* Docket Nos. 57744, 57746, 57747.

5. To justify its full-value reserve proposal, the Trustee ironically advances the same arguments presented at the Estimation Proceeding (Trustee's Obj. at ¶¶ 4-12, 31, 35-40.) As the Trustee is well aware, however, this Court will rule on precisely those arguments after 20 days of trial and after considering extensive briefing and argument by the same law firm that represents it here. Moreover, the Trustee knows that this Court will render its decision in the Estimation Proceeding the day after the hearing on this motion in a thorough opinion that is likely to take many hours to read. (2/9/18 Tr. 136:2-6.) Remarkably, the Trustee asks this Court to ignore its own well-considered judgment on these positions and simply accept that the Trustee will succeed here on those same arguments, presented by the same law firm and witnesses, regardless of its decision in that case.

6. On the other hand, the Plan Administrator's reserve proposal credits the Court's decision in the Estimation Proceeding by adjusting the reserve based on the Court's determinations on these very issues. By contrast, the Trustee's reserve methodology unreasonably assumes that it will prevail on all of these issues, that every single claim on every single loan is valid, and that it should be awarded its full claimed damages on every loan regardless of the Court's determinations of the same controlling issues in the Estimation Proceeding.

7. Setting a reserve at the amount proposed by the Trustee would have a significant impact on the administration of the estate and the interests of other creditors. Reserving an amount clearly in excess of the current Allocable Share of the reserve, in excess of what more than 220 similarly-situated Trusts will have received, and significantly more than

3

would be necessary to cover distributions, would place the Trust above all other creditors (including creditors who voluntarily agreed to reserve for their claims at lower than the full value of what they think the claims are worth) and unfairly delay distributions to those creditors of that excess reserve. The Trustee has not even tried to explain why the SASCO 2006-S4 Trust should be given such preferential treatment. Indeed, the Trustee's decision to wait until the Estimation Proceeding was largely concluded, but just prior to resolution, to press their claim, when the Trust opted-out in June 2017, is particularly puzzling and ignores the great significance of the Court's imminent ruling in the Estimation Proceeding.

*The remainder of this page is intentionally left blank.*

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth above, the Plan Administrator respectfully requests that the Court overrule the Trustee's Objection and enter the form of order annexed to the Motion as Exhibit A.

Dated: New York, New York
March 5, 2018

> Respectfully Submitted,
>
> By: /s/ Paul V. Shalhoub
> Paul V. Shalhoub
> Todd G. Cosenza
> WILLKIE FARR & GALLAGHER LLP
> 787 Seventh Avenue
> New York, New York 10019
> Tel: (212) 728-8000
> Fax: (212) 728-8111
>
> Michael A. Rollin
> Maritza Dominguez Braswell (*pro hac vice*)
> ROLLIN BRASWELL FISHER LLC
> 8350 East Crescent Parkway, Suite 100
> Greenwood Village, Colorado 80111
> Tel: (303) 945-7415
> Fax: (303) 974-7468
>
> *Attorneys for Debtors Lehman Brothers Holdings Inc. and Certain of Its Affiliates*