UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            )
In re                                                       )   Case No. 08-13555 (SCC)
                                                            )
Lehman Brothers Holdings Inc., et al.,                      )   Chapter 11
                                                            )
        Debtors.                                            )   Jointly Administered
                                                            )
------------------------------------------------------------x

# ORDER APPROVING RMBS SETTLEMENT AGREEMENT AND INCLUDING CERTAIN PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon the motion, dated April 27, 2017 (the "Motion"),[1] of Lehman Brothers Holdings Inc. (the "Plan Administrator") as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and the other affiliated debtors in the above-captioned cases (collectively, the "LBHI Debtors"), pursuant to rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of that certain RMBS Trust Settlement Agreement entered into as of November 30, 2016, and modified as of March 17, 2017 (the "RMBS Settlement Agreement"), by and among the LBHI Debtors, the Institutional Investors and the Accepting Trustees, all as more fully described in the Motion; and this Court having conducted a hearing to consider the Motion on July 6, 2017 (the "Hearing"), during which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having reviewed and considered (i) the Motion and the exhibits thereto (including the RMBS Settlement Agreement), (ii) the objections to the Motion filed by the Investor Group (Docket No. 55432), the BNC

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion and/or the Omnibus Reply (defined herein), as applicable.

Claimants (Docket No. 55609), Five Points (Docket No. 55613), Royal Park (Docket Nos. 55614 & 55615), and iFreedom (Docket No. 55616), (iii) the Plan Administrator's June 27, 2007 letter to the Court regarding the Investor Group's objection (Docket No. 55650), (iv) the notice of withdrawal of the Investor Group's objection (Docket No. 55670), (v) Lehman Brothers Holdings Inc.'s Omnibus Reply in Further Support of the Motion (Docket No. 55690) (the "Omnibus Reply"), (vi) the Declaration of Paul V. Shalhoub in Support of the Motion (Docket No. 55691), (vii) the Declaration of Zachary Trumpp in Support of the Motion (Docket No. 55692) (the "Trumpp Decl."), (viii) the RMBS Trustees' Statement in Support of the Motion (Docket No. 55677) (the "Trustees' Statement"), (ix) the declarations and affidavits filed in support of the RMBS Statement Agreement and the exhibits thereto by (a) Melissa Rossiter, Vice President of Deutsche Bank National Trust Company (Docket No. 55676), (b) Brad Zwetzig, Vice President of U.S. Bank National Association (Docket No. 55678), (c) Hon. Judith K. Fitzgerald, retained expert of the Trustees (Docket No. 55680), (d) Jane Strobel, Vice President, CCTS of TMI Trust Company, successor to Law Debenture Trust Company of New York (Docket No. 55681), (e) Jose Fraga, Senior Director of Operations at Garden City Group (Docket No. 55682), (f) Adam Scozzafava, Vice President of Wilmington Trust Company and Wilmington Trust, National Association (Docket No. 55683) and (g) Edmond Esses, Director, Dispute and Investigations, of Duff & Phelps LLC (Docket No. 55685), (x) the Institutional Investors' Disclosure of Economic Interests (Docket No. 55665), (xi) the Institutional Investors' Response In Support of the Motion and Entry of the Trustee Findings and Bar Order (Docket No. 55763) (the "Institutional Investor' Statement") and (xii) the arguments of counsel made, and the evidence proffered and adduced, at the Hearing; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference

M-431, dated January 31, 2012 (Preska, C.J.); and it appearing that venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. §157(b); and the RMBS Settlement Agreement requesting that this Court submit the Trustee Findings contained herein to the District Court for consideration and approval; and notice of the Motion having been given in accordance with this Court's April 6, 2017 scheduling order (Docket No. 55154) (the "Scheduling Order"); and it appearing that no other or further notice need be provided; and the Court having found that the RMBS Settlement Agreement is reasonable, fair and equitable and supported by adequate consideration; and it appearing that the relief requested in the Motion is in the best interests of the LBHI Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED that:

1. This Court has jurisdiction to hear and adjudicate the Motion.

2. Certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust, and all parties entitled to receive notice of the Motion, have been provided with notice that was reasonable, adequate, and was the best notice practicable, was reasonably calculated to put interested parties on notice of the Motion, and constitutes due and sufficient notice of the Motion in satisfaction of federal and state due process requirements and other applicable law. All such persons have been given the opportunity to be heard in opposition to the Motion.

3. Any objections that were raised or that could have been raised in opposition to the Motion, that have not been withdrawn or resolved, are overruled and/or waived.

4. Each of the Accepting Trustees acted within the bounds of its discretion,

- 3 -

reasonably, and in good faith with respect to its evaluation and acceptance of the RMBS Settlement Agreement concerning the applicable Accepting Trust(s).

    a. The Accepting Trustees identified specific corporate trust officers to evaluate the RMBS Settlement Agreement as to each applicable trust. Affidavit of Brad Zwetzig sworn to June 28, 2017 [Docket No. 55678] ("Zwetzig Aff."), Exh, ¶¶ 12, 13; Affidavit of Jane Strobel sworn to June 29, 2017 [Docket No. 55681] ("Strobel Aff."), ¶ 9; Affidavit of Adam Scozzafava sworn to June 29, 2017 [Docket No. 55683] ("Scozzafava Aff."), ¶¶ 15, 23; Affidavit of Melissa Rossiter sworn to June 23, 2017 [Docket No. 55676] ("Rossiter Aff"), ¶¶ 12-13.

    b. The Accepting Trustees worked with and relied upon experienced and competent counsel and financial advisors to assist with their evaluation of the RMBS Settlement Agreement. Zwetzig Aff., Exh, ¶ 5; Strobel Aff., ¶8; Scozzafava Aff., ¶¶ 6-8; Rossiter Aff., ¶ 4; Affidavit of Edmond Esses sworn to June 29, 2017 [Docket No. 55685] ("Esses Aff."), at ¶ 15-16.

    c. The Accepting Trustees took appropriate steps to notify certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust of the proposed terms of the RMBS Settlement Agreement that the Accepting Trustees were evaluating the RMBS Settlement Agreement and that such interested persons could provide input for the Accepting Trustees to consider before deciding whether to accept the RMBS Settlement Agreement. Affidavit of Jose Fraga sworn to June 28, 2017 [Docket No. 55682]; Zwetzig Aff., Exh, ¶¶ 21-27; Strobel Aff., ¶¶ 15-17, 26; Scozzafava Aff., ¶¶ 24-31.

d.  The Accepting Trustees retained former bankruptcy judge Judith Fitzgerald, an experienced and highly-qualified expert, to provide an independent evaluation of the reasonableness of the RMBS Settlement Agreement as a means of resolving claims submitted through the Protocol and to prepare a report setting forth her findings. Declaration of Judith K. Fitzgerald dated June 29, 2017 [Docket No. 55680] ("Fitzgerald Decl."), ¶¶ 2-10, Exhs. 1-2; Zwetzig Aff., Exh, ¶¶ 14-19; Strobel Aff., ¶10-11; Scozzafava Aff., ¶ 16-18, 21; Rossiter Aff., ¶¶ 14-16. The Accepting Trustees regularly communicated with Judge Fitzgerald during her evaluation process and provided her with all documents and information that she requested. Fitzgerald Aff., ¶¶ 12-15; Zwetzig Aff., Exh, ¶¶ 28-30; Strobel Aff., ¶ 12; Scozzafava Aff., ¶¶ 32-34; Rossiter Aff., ¶¶ 17-18, 20. After analyzing appropriate considerations, including the feedback of investors in the Accepting Trusts, Fitzgerald Decl., ¶¶ 16-18, 20-25 and Exh. 2, Judge Fitzgerald provided a report to the Accepting Trustees in which she opined "to a reasonable degree of professional certainty, that the RMBS Settlement [Agreement] sets forth a reasonable methodology to liquidate the disputed RMBS Claims, and that entry into the RMBS Settlement Agreement, in the circumstances of this Bankruptcy Proceeding, would be appropriate" as to the Accepting Trusts. Fitzgerald Decl., ¶ 26 and Exh. 2, at 8; Zwetzig Aff., Exh, ¶ 31; Strobel Aff., ¶ 23; Scozzafava Aff., ¶ 35; Rossiter Aff., ¶ 21.

e.  With the assistance of their counsel, the Accepting Trustees evaluated the RMBS Settlement Agreement as well as potential alternative courses of action, considered the input of investors in the Accepting Trusts, and appropriately

- 5 -

08-13555-mg    Doc 57838-1    Filed 04/10/18    Entered 04/10/18 12:27:07    Exhibit
Pg 6 of 14

relied on the recommendations of their expert, Judge Fitzgerald, when they decided to execute the RMBS Settlement Agreement with respect to the Accepting Trusts.  Zwetzig Aff., Exh, ¶ 34; Strobel Aff., ¶¶ 24-25; Scozzafava Aff., ¶ 38; Rossiter Aff., ¶ 23.

5. The Court has applied the factors outlined by the Second Circuit in *Iridium*,[2] the leading case on the standard for approving Bankruptcy Rule 9019 settlements in the Second Circuit, and concludes that each of the *Iridium* factors applicable to the Motion weighs in favor of approving the RMBS Settlement Agreement.

6. The first *Iridium* factor asks whether the likelihood of the debtor succeeding in litigating the claims proposed to be settled is outweighed by the future benefits the debtor can enjoy from the proposed settlement.  This *Iridium* factor does not apply in the typical way to the Settlement because the parties are agreeing to a process and set of procedures for an Estimation Proceeding, rather than a monetary resolution.   Nevertheless, this *Iridium* factor is easily satisfied here.  The Plan Administrator has established that the benefits of the Settlement (including substantially reduced expense and delay, as compared to continuing to proceed under the Protocol) outweigh the risks because the risks associated with resolving the Covered Loan Claims pursuant to the Settlement (likelihood of success on the underlying dispute) should not materially differ from resolution of the Covered Loan Claims pursuant to the Protocol.  As part

---

[2] In deciding whether a particular settlement falls within the "range of reasonableness," courts consider the following "*Iridium*" factors: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (iii) the paramount interests of creditors; (iv) whether other parties in interest support the settlement; (v) "the nature and breadth of releases to be obtained by officers and directors"; (vi) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing the settlement; and (vii) "the extent to which the settlement is the product of arm's-length bargaining." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 462 (2d Cir. 2007) (internal citations and quotations omitted).

08-13555-scc    Doc 55706    Filed 07/06/17    Entered 07/06/17 15:46:27    Main Document
Pg 7 of 14

of the negotiations of the RMBS Settlement Agreement, the Plan Administrator, the Institutional Investors, and the Accepting Trustees each concluded that determining the Net Allowed Claim through the Estimation Proceeding was reasonable and appropriate based on their own assessments of the risks, costs and delay likely to arise from a prolonged loan-level litigation as opposed to the efficiency in determining the Net Allowed Claim through the agreed Estimation Proceeding. (Trumpp Decl. at ¶ 25.) The terms of the RMBS Settlement Agreement reflect the LBHI Debtors' reasonable assessment of the substantial time and expense of completing the Protocol (including protracted Step 5 litigation and attendant appeals), and the related impact on the LBHI Debtors' future distribution efforts, balanced against the benefits to all parties of more near term, efficient and certain resolution of such litigation. (*Id.*) The RMBS Settlement Agreement will allow the LBHI Debtors to determine the Covered Loan Claims sooner than the Protocol's multistep process, save substantial costs that would arise from completing that process, and reduce the risk of appeal and expedite distributions to all creditors, which will help conclude the LBHI Debtors' cases significantly sooner than the expected timeframe of the Protocol. (*Id.*) Continuing under the Protocol would likely involve protracted litigation due to the numerous factual issues and complex legal issues involved, which would be expensive, time consuming, and would delay recoveries for the other creditors. (*Id.* at ¶ 27.) Proceeding with the Estimation Proceeding (and the RMBS Settlement Agreement) constitutes a more efficient and reasonable way to resolve the Covered Loan Claims in the best interests of all parties. (*Id.* at ¶ 28).

7. The second *Iridium* factor analyzes the likelihood of complex and protracted litigation, which, as explained above, clearly cuts in favor of the Settlement. The Plan Administrator has established that there is a high likelihood that litigation of the Covered Loan

Claims would be difficult, protracted, and costly. *(Id.* at ¶¶ 30-32.) The Covered Loan Claims, if not resolved by the Settlement, will continue for many years through the Protocol. *(Id.* at ¶30.) The history of the Protocol and these cases make clear that the litigation and related process will be contentious and drawn out. (*Id.*) The RMBS Settlement Agreement will avoid the drawn-out litigation that otherwise would be necessary to resolve the Covered Loan Claims. (*Id.*)

8. The third *Iridium* factor examines whether the settlement being evaluated is in the paramount interests of the debtor's creditors. The BNC Claimants filed an Objection to the Motion, asserting that the RMBS Settlement Agreement is not in the paramount interests of creditors (Docket No. 55609). The basis for this Objection is that the RMBS Settlement Agreement is silent as to what portion of the Net Allowed Claim, if any, will be allocated to which LBHI Debtors (including against BNC, against which the BNC Claimants assert $27 million in claims in the aggregate). This Court overrules that objection as the Plan Administrator has established that the RMBS Settlement Agreement is beneficial to the LBHI Debtors' estates and their stakeholders because the proposed Settlement will resolve one of the single largest group of unsecured claims that are outstanding against the LBHI Debtors, thus providing predictability with respect to the LBHI Debtors' future distributions under the Plan. (Trumpp Decl. at ¶ 33.) The Settlement will materially accelerate the resolution of these massive and factually intensive claims. (*Id.*) As the foregoing findings of the first two *Iridium* factors indicate, the evidence demonstrates that the Settlement provides numerous benefits to creditors, including providing a framework for a prompt determination of the Covered Loan Claims in a fair and reasonable manner before this Court, eliminating significant risks which accompany litigating the Covered Loan Claims, and burdening the LBHI Debtors' estates with significant legal expenses. (*Id.* at ¶¶ 25-33.)

9. The fourth *Iridium* factor asks a court to consider the level of support for the settlement among other parties-in-interest in a case. The Trustees, the only parties other than the LBHI Debtors with standing to litigate the claims that will be determined in the Estimation Proceeding, entered into the RMBS Settlement Agreement and support the Estimation Process to be established by it. (*Id.* at ¶ 34.) (*see also* Trustees' Statement at pg. 1.) In addition, certain Institutional Investors, who are holders, and/or authorized investment managers for holders, of over $6 billion in certificates in the Trusts regarding the Covered Loan Claims, support all aspects of the Settlement and entry by the Court of the relief requested in the Motion, including the Trustee Findings and the Bar Order. (Institutional Investors' Statement at ¶ 1.) Accordingly, this factor weighs in approval of the Settlement.

10. As to the fifth *Iridium* factor, the RMBS Settlement Agreement releases the LBHI Debtors, their non-Debtor affiliates and the LBHI Debtors' officers and directors of any and all claims that were asserted, or that could have been asserted, by the Accepting Trusts or anyone claiming by or through the Accepting Trusts related to the Covered Loan Claims, except to the limited extent set forth in Article IV of the RMBS Settlement Agreement. (*Id.* at ¶ 35.) This release provides certainty and finality to the LBHI Debtors' estates and eliminates potential residual exposure from indemnification or other claims. (*Id.*) The Court finds the releases contained in the RMBS Settlement Agreement to be appropriate.

11. The sixth *Iridium* factor considers the competency of counsel supporting, and the experience and knowledge of the judge reviewing, the settlement. None of the parties and no other person disputes the competency and experience of counsel supporting the Settlement, nor do any contest the competency and experience of this Court. (*Id.* at ¶ 36.)

12. This Court concludes that the seventh *Iridium* factor—the extent to which

- 9 -

the Settlement was the product of arm's length bargaining—also weighs in favor of approval of the Settlement.  The record includes evidence of years of extensive, good faith and arms' length negotiations among the parties, including several months of negotiating the Settlement itself  (*Id.* at ¶¶ 22-25, 36.)  The record is devoid of any evidence that the Settlement was produced by anything but arm's length negotiations.

13. In sum, the Plan Administrator has determined to seek to have this Court estimate and allow the Covered Loan Claims at $2.416 billion, rather than at some lesser amount that the Plan Administrator believes it may be able to achieve (*Id.* at ¶ 25), but subject to the Accepting Trustees' right to seek a higher amount, because the Plan Administrator believes this is a fair resolution after taking into account all of the foregoing.  This Court agrees.  The Plan Administrator's determination to request allowance at $2.416 billion is a reasonable determination in view of the wide range of potential outcomes and the time and expense that will be saved by the Estimation Process.

14. Accordingly, each of the Plan Administrator and the other LBHI Debtors has acted in good faith and exercised sound business judgment in connection with its determination to enter into and execute the Settlement Agreement.  Approval of the RMBS Settlement Agreement is in the best interests of the LBHI Debtors, their respective estates and creditors.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

A. The Motion is granted.

B. Pursuant to Bankruptcy Rule 9019, the RMBS Settlement Agreement (including all annexed Exhibits thereto, except for <u>Exhibit E</u>) is approved.

C. To the extent not already authorized, the Plan Administrator and the other LBHI Debtors, acting through the Plan Administrator, are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the RMBS Settlement Agreement and perform any and all obligations contemplated therein.

D. The Estimation Proceeding shall be conducted in accordance with the procedures set forth in <u>Exhibit G</u> of the RMBS Settlement Agreement.

E. This Order and the RMBS Settlement Agreement are binding and effective on the LBHI Debtors, the Institutional Investors, and the Accepting Trustees, as well as any successor to any of the forgoing.

F. Certificateholders, noteholders, and any other parties claiming rights in any Accepting Trust shall be barred from asserting claims against the Accepting Trustees with respect to their evaluation and acceptance of the RMBS Settlement Agreement and implementation of the RMBS Settlement Agreement in accordance with its terms.

G. The findings of fact and conclusions of law enumerated above in ¶¶ 1-4 (to the extent that they pertain to the Trustee Findings) and ¶ F (the

"Proposed Findings and Conclusions") shall be submitted for approval to the United States District Court for the Southern District of New York.

H. The allocation set forth in Section 3.04 of the RMBS Settlement Agreement shall in no way be binding on the Plan Administrator or the other LBHI Debtors or affect each such party's right to account for and allocate the Allowed Claim in accordance with its own analyses of the Claims and in the best interests of the Estate, and such right hereby is expressly preserved; provided, that, the Plan Administrator's and other LBHI Debtors' account and allocation of the Allowed Claim shall in no way affect the allowance and priority of such claim or manner in which the Allowed Claim is allocated among the Trusts as provided in Section 3.04 of the RMBS Settlement Agreement.

I. This Order is not intended to, and does not release, enjoin, or preclude any claim or cause of action that any investor in any of the Accepting Trusts (including any former investors that have retained their claims) has against any Accepting Trustee or any other person or entity, other than (i) claims against the Accepting Trustees arising out of the Accepting Trustees' evaluation and acceptance of the RMBS Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and (ii) claims against the Released Parties to the extent released under the RMBS Settlement Agreement. Moreover, for the avoidance of any doubt, except as to (i) and (ii) above, the entry of this Order does not and is not intended to extinguish or prevent the prosecution of the claims and causes

of action, or the assertion of defenses, that have been asserted in the cases styled as *Royal Park Investments SA/NV v. U.S. Bank National Association, as Trustee*, No. 14-cv-02590-VM (S.D.N.Y.) and *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., as Trustee*, No. 14-cv-09764-KPF-SN (S.D.N.Y.), and the parties to those cases reserve all rights to present arguments and evidence in those cases as to any impact that the RMBS Settlement Agreement and the facts underlying the RMBS Settlement Agreement may have on those cases to the extent not inconsistent with the balance of this paragraph.

J.  Neither LBHI's nor iFreedom's rights with respect to any subsequent indemnification claims against iFreedom arising from the resolution of the RMBS Claims or the Estimation Proceeding will be affected by iFreedom's non-participation in the Estimation Proceeding.

K.  The terms of this Order shall be effective and enforceable immediately upon its entry.

  L. Except to the extent set forth in ¶ G above with respect to the Proposed Findings and Conclusions, this Court retains exclusive jurisdiction to hear and determine any dispute regarding the interpretation or enforcement of the RMBS Settlement Agreement until the closing of the LBHI Debtors' bankruptcy cases. The Court otherwise retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: July 6, 2017
   New York, New York

            /S/ Shelley C. Chapman
            THE HONORABLE SHELLEY C. CHAPMAN
            UNITED STATES BANKRUPTCY JUDGE