# Exhibit C

Rescap Motion

**MORGAN, LEWIS & BOCKIUS LLP**
Glenn E. Siegel
John C. Goodchild, III (*pro hac vice*)
James O. Moore
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212 309-6001
*Counsel to The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Deutsche Bank National Trust Company, and Deutsche Bank Trust Company Americas as Trustee of Certain Mortgage-Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALLEN & OVERY LLP**
John Kibler
1221 Avenue of Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
*Counsel to HSBC Bank USA, N.A., as Trustee of Certain Mortgage-Backed Securities Trust*

**ALSTON & BIRD LLP**
John C. Weitnauer (*pro hac vice*)
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**DECHERT LLP**
Mauricio A. España
Craig P. Druehl
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

# MOTION OF THE RMBS TRUSTEES
## FOR APPROVAL OF CERTAIN NON-MATERIAL PLAN MODIFICATIONS



1212020150601000000000006

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE ................................................................................................. 4

BACKGROUND ........................................................................................................................ 4

RELIEF REQUESTED .............................................................................................................. 6

    A.   Modifications Regarding RMBS Trusts or Loan Groups That Have Been or Will Be Terminated .................................................................................................................. 6

    B.   Modifications Regarding "Subsequent Recoveries" ...................................................... 9

    C.   Modifications to Prevent Distributions to Residual Certificate Classes ......................... 11

    D.   Modifications Regarding RMBS Trusts with Outstanding Realized Losses Lower than Predicted ................................................................................................... 12

BASIS FOR RELIEF ................................................................................................................. 13

NOTICE ..................................................................................................................................... 14

NO PRIOR REQUESTS ............................................................................................................ 15

CONCLUSION .......................................................................................................................... 15

12-12020-mg Doc 9380-3 Filed 04/17/18 Entered 04/17/18 14:16:12 Exhibit C
Pg 4 of 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................................................ 13

*Chinichian v. Campolongo (In re Chinichian)*,
    784 F.2d 1440 (9th Cir. 1986) ............................................................................. 14

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983) ............................................................................... 14

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .............................................................................................. 13

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962) .............................................................................................. 13

*Smalls v. Bank of N.Y.*,
    No. 05-cv-8474, 2008 WL 1883998 (S.D.N.Y. Apr. 29, 2008) ........................... 13

**Statutes**

11 U.S.C. § 105 ................................................................................................... 1, 4, 13, 14

11 U.S.C. § 1142 ...................................................................................................... 1, 4, 13

28 U.S.C. § 157 .................................................................................................................. 4

28 U.S.C. § 1334 ................................................................................................................ 4

28 U.S.C. § 1408 ................................................................................................................ 4

28 U.S.C. § 1409 ................................................................................................................ 4

**Other Authorities**

Fed. R. Bankr. P. 1015 ................................................................................................... 1, 4

Fed. R. Bankr. P. 3020 ............................................................................................. 1, 4, 14

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The RMBS Trustees[1] file this motion (the "**Motion**") pursuant to sections 105(a) and 1142 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 1015(c) and 3020(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Article XII of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065-1] (the "**Plan**"), seeking entry of an order (the "**Proposed Order**"), in a form substantially similar to that attached hereto as **Exhibit 1**, making certain nonmaterial modifications to the provisions of the Plan concerning the distributions under Article IV.C. of the Plan.  In support of the Motion, the RMBS Trustees respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      One of the many settlements that comprised the global settlement under the Plan was the RMBS Settlement, which is "the settlement that provides for the allowance, priority, and allocation of the RMBS Trust Claims, through approval of the Original RMBS Settlement Agreements as expanded, modified and superseded as set forth in Article IV.C of the Plan."  Plan, Art. I.A.265.

2.      The allocation of the proceeds of the RMBS Settlement among the various RMBS Trusts (or Loan Groups within the RMBS Trusts) was pursuant to an allocation determined by Duff & Phelps ("**Duff**").  The allocation was to be finalized following the Effective Date under the Plan.  On March 31, 2014, the RMBS Trustees filed the final allocation

---

[1] Capitalized terms used in this motion and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

of the RMBS Settlement among the various RMBS Trusts (the "**Final RMBS Settlement Allocation**").

3.      Since that time, however, it has become clear that the language in the Plan governing the distribution of the cash proceeds of the RMBS Settlement requires modification to address four issues that have been encountered with respect to the distributions as contemplated by the Plan:

4.      *First*, since the Final RMBS Settlement Allocation was filed, certain RMBS Trusts (or Loan Groups within an RMBS Trust) have terminated, and other terminations are expected to occur in the future.  In some instances, the terms on which an RMBS Trust (or Loan Group) was terminated did not provide for post-termination distributions to Certificateholders, such as the distribution of the proceeds of the RMBS Settlement.  Further, in some instances the cost of valuing and documenting the treatment of a post-termination distribution exceeds the value of the distribution itself.

5.      *Second*, the Plan provides that the proceeds of the RMBS Settlement are to be treated as "Subsequent Recoveries" under the applicable governing agreement of the RMBS Trusts, or, if that term is not used in a governing agreement, the proceeds are to be distributed as "unscheduled principal."  However, distributing the proceeds as "Subsequent Recoveries" or "unscheduled principal" may result in an ambiguity in the distribution waterfall for certain RMBS Trusts by reinstating subordinate certificates that were previously reduced to zero.

6.      *Third*, it is possible that a distribution of the proceeds of the RMBS Settlement would result in a distribution to RMBS certificates that represent a residual interest in a REMIC or other certificates that were not expected to receive any valuable distribution from the RMBS Trust.

- 2 -

7.      *Fourth*, the Duff allocation takes into account the possibility of future liquidated losses on mortgage loans, some of which have not yet occurred.  The governing agreements for certain RMBS Trusts do not provide for distributions of "Subsequent Recoveries" (as provided under the Plan) from these RMBS Trusts to their Certificateholders absent such losses.

8.      The RMBS Trustees anticipated that, given the many hundreds of RMBS Trusts and Loan Groups involved in the RMBS Settlement, and the existence of variations among the governing agreements, the provisions of the Plan governing the distribution of the proceeds of the RMBS Settlement would need to be revisited at some future date.  For that reason, the Plan specifically contemplates that should the Court determine that modifications to the Plan provisions governing the distribution of the proceeds are necessary, such modifications would be deemed non-material under Article IV.C.3.(e).  However, out of an abundance of caution and to provide all of the involved parties comfort that they are not in violation of the Plan or Confirmation Order, the RMBS Trustees bring this Motion on notice to the special and general service lists, as well as to the Certificateholders.

9.      Given the administrative nature of the requested modifications, the RMBS Trustees do not expect the relief requested herein to be controversial.  The changes will harmonize the Plan and its supporting documents with the governing agreements of the RMBS Trusts to facilitate distributions already contemplated thereunder.  As such, the modifications are necessary to fulfill the Plan's intended purpose.

10.     The RMBS Trustees consulted with the ResCap Liquidating Trust (the "**Liquidating Trust**") prior to filing the Motion, and the Liquidating Trust indicated that the

modifications do not affect the Liquidating Trust and, therefore, it has no objection to the relief sought herein.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Article XII of the Plan.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

12.    The statutory predicates for the relief requested herein are sections 105(a) and 1142 of the Bankruptcy Code and Rules 1015(c) and 3020(d) of the Bankruptcy Rules.

## BACKGROUND

13.    On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

14.    On December 11, 2013, this Court entered an order (the "**Confirmation Order**") approving the Plan [Docket No. 6065].

15.    On December 17, 2013, the Effective Date (as defined in the Plan) occurred [Docket No. 6137].

16.    Article IV.C. of the Plan provides for the approval of the RMBS Settlement, including the allowance of the RMBS Trust Claims, the allocation of the RMBS Trust Claims amongst the RMBS Trusts, and the distribution of the proceeds of the RMBS Settlements to the RMBS Claims Trust for the benefit of the RMBS Trusts on account of the RMBS Trust Claims.

17.    Attached as Schedules 1-G through 4-R to the Plan were the RMBS Trust Claims Schedules containing the initial allocation of the RMBS Trust Claims amongst the

RMBS Trusts. Pursuant to Article I.A.268 of the Plan, the RMBS Trust Claims Schedules were to be updated following the Effective Date. On March 31, 2014, the RMBS Trustees filed revised RMBS Trust Claims Schedules containing the Final RMBS Settlement Allocation [Docket No. 6728].

18. To facilitate distributions of the proceeds of the RMBS Settlements from the RMBS Claims Trust, to the RMBS Trusts themselves, and, ultimately, to the Certificateholders, Article IV.C.(3)(e) of the Plan provided that the distributions from the RMBS Claims Trust to the RMBS Trusts shall be treated as "Subsequent Recoveries" as that term is used in the applicable governing agreement for a particular RMBS Trust (a "**Governing Agreement**").

19. Article IV.C.(3)(e) further provided that in the event the Governing Agreement for a particular RMBS Trust did not use the term "Subsequent Recoveries," any distribution from such an RMBS Trust on account of an RMBS Trust Claim to a Certificateholder shall be distributed "as though it was unscheduled principal available for distribution on that distribution date."

20. Although Article IV.C.(3)(e) of the Plan attempted to anticipate how distributions to Certificateholders should be made given the multitude of Governing Agreements associated with the various RMBS Trusts, the Plan recognized that some modification to the Plan may be necessary and deemed such modifications to be non-material. Article IV.C(3)(e) provides that "should the Bankruptcy Court determine that a different treatment is required to conform the distributions to the requirements of the governing agreements, that determination shall govern and shall not constitute a material change to this Plan."

12-12020-mg   Doc 57880-3   Filed 04/17/18   Entered 04/17/18 14:16:12   Exhibit C
Pg 9 of 27

21.     More broadly, pursuant to Article XII of the Plan, this Court retained exclusive jurisdiction "to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order." Plan, Art. XII(j).[2]

## RELIEF REQUESTED

22.     By this Motion, the RMBS Trustees respectfully request that this Court enter the Proposed Order approving the requested non-material modifications to the Plan attached to the Proposed Order as **Annex 1** (the "**Requested Modifications**") and directing all parties to take all necessary actions to implement the Requested Modifications.  The following is a summary of the Requested Modifications and the reason each is necessary.

### A.  Modifications Regarding RMBS Trusts or Loan Groups That Have Been or Will Be Terminated

23.     RMBS Trusts are terminated from time to time because the trust's assets (a) are sold in connection with a trust termination or redemption at the option of a transaction party or (b) have been amortized or liquidated in the ordinary course over time.  Generally, once an RMBS Trust is terminated, pursuant to its Governing Agreement there are no further distributions to the Certificateholders of such trust, and the parties to the Governing Agreements, including (i) the applicable RMBS Trustee, (ii) any paying agent, securities administrator, co-administrator, grantor trustee, master servicer, and/or custodian with respect to the RMBS Trusts, (iii) any party to or subject to a Governing Agreement that calculates waterfall payments and loss allocations to the relevant Certificateholders for such RMBS Trust (a "**Calculation Agent**"), or (iv) any agent of an RMBS Trustee or a Calculation Agent (each of the RMBS Trustee, the

---

[2] The RMBS Trustees note that both the Plan and the Confirmation Order contain an additional, express permission in favor of the Plan Proponents – the Debtors and the Creditors Committee – to make nonmaterial modifications to the Plan without the consent of any other entity.  See Article XI.A. of the Plan and Confirmation Order, § II, ¶ 60.

Calculation Agent, and any agent of either of them, a "**Relying Party**" or collectively, the
"**Relying Partie**s"), are discharged from their obligations and duties under the Governing
Agreements.

24. Between March 31, 2014 (the date that the Final RMBS Settlement
Allocation was filed) and the date hereof, some RMBS Trusts have been terminated. Further,
between the date hereof and the final distributions of cash from the RMBS Claims Trust (the
"**Claims Trust Cash**") to the RMBS Trustees for the benefit of the RMBS Trusts, more RMBS
Trusts will likely terminate.

25. Similarly, from time to time loan groups within an RMBS Trust are
terminated because (i) the trust's assets are sold in connection with a trust termination or
redemption at the option of a transaction party, or (ii) the loan group's assets have been
amortized or liquidated in the ordinary course over time. Generally, once a loan group is
terminated, the Governing Agreements provide that there are no more distributions or payments
to the Certificateholders associated with that Loan Group. Some Governing Agreements have
cross-collateralization provisions that, under certain circumstances, direct that funds received on
a loan group are to be distributed to Certificateholders associated with a different loan group of
the RMBS Trust. Since March 31, 2014, some loan groups have been terminated; between the
date hereof and the final distributions of Claims Trust Cash, additional loan groups will likely
terminate.

26. As a general rule, the termination of an RMBS Trust or loan group at the
option of a transaction party pursuant to the Governing Agreements is effected by the sale to
such party of certain assets (*i.e.*, the mortgage loans and any REO properties) of such RMBS
Trust or such loan group (one or more such sales, an "**Asset Sale**"). Generally, an Asset Sale

would also require the sale or disposition of all other assets of such RMBS Trust or loan group, including (if required by applicable law or Governing Agreement), the right to receive future distributions of Claims Trust Cash. The documents evidencing an Asset Sale (the "**Sale Documents**") may provide how future distributions of Claims Trust Cash received by the RMBS Trustee are to be handled, in which case the Claims Trust Cash distributed after the closing of such Asset Sale will be treated as required by the Sale Documents. For example, the Sale Documents could provide that Claims Trust Cash received post-closing is to be remitted to the buyer of the sold assets. The proceeds from an Asset Sale, including the sale of the right to receive future Claims Trust Cash in connection with the termination of an RMBS Trust or Loan Group, will be distributed to the Certificateholders of that RMBS Trust or Loan Group as Subsequent Recoveries (as defined below).[3]

27. In connection with some terminations, however, it may reasonably be determined that the cost of valuing and documenting the sale of future distributions of Claims Trust Cash will exceed the anticipated future distributions of Claims Trust Cash. As such, there may be terminations of RMBS Trusts or of loan groups that do not provide for the sale of the future distributions of Claims Trust Cash.

28. In these situations, the Requested Modifications would provide that if the cost of valuing and documenting the sale of future distributions of Claims Trust Cash of an RMBS Trust or of a loan group would reasonably be determined to exceed the fair market value

---

[3] To facilitate an Asset Sale (including the sale of the right to receive future distributions of Claims Trust Cash) in connection with the termination of an RMBS Trust or loan group, the RMBS Trustees, as beneficiaries of the RMBS Claims Trust, will cause the RMBS Claims Trust to be amended to clarify that a RMBS Trustee may sell or assign such RMBS Trustee's rights to future distributions of Claims Trust Cash solely in connection with or contemplation of terminations of RMBS Trusts or loan groups at a fair market value of the future stream of Claims Trust Cash attributable to such RMBS Trust or loan group. The RMBS Trustees will be entitled conclusively to rely on a determination by an advisor to certain of the RMBS Trustees as to whether the sale price for the future stream of Claims Trust Cash is at a fair market value. This amendment to the RMBS Claims Trust does not require a modification of the Plan or Court approval.

of the future distributions of Claims Trust Cash, such Claims Trust Cash will be treated as "Recycled Funds,"[4] but where there is an Asset Sale that includes the sale of future distributions of Claims Trust Cash in connection with the termination of an RMBS Trust or Loan Group, the proceeds from the sale of the future distributions of Claims Trust Cash will be distributed as "Subsequent Recoveries."

### B. Modifications Regarding "Subsequent Recoveries"

29.     Many of the Governing Agreements have provisions that prescribe the treatment of recoveries received on mortgage loans after the loans have been liquidated with outstanding unreimbursed realized losses.  These provisions typically refer to such recoveries as "**Subsequent Recoveries**."  However, some Governing Agreements use different defined terms, such as "Recoveries" or "Recovery on a Prior Loss," or some other defined term, while others do not use any defined term at all.  Further, other Governing Agreements do not contain any provisions regarding Subsequent Recoveries, or contain incomplete provisions regarding the treatment of Subsequent Recoveries.

30.     Subsequent Recoveries are generally paid to Certificateholders as principal.  Generally, every dollar of Subsequent Recoveries received and distributed to Certificateholders also results in either (a) an increase to the certificate principal balance of the most senior class(es) (based on reverse priority of loss allocations) of certificates having unreimbursed realized losses (a "**Write-up**") or (b) the reversal of the previously allocated realized loss to which the Subsequent Recovery relates.  In addition, certificates with a zero balance at the time of the distribution of Claims Trust Cash are eligible to be written-up, unless prohibited by the Governing Agreement.  The classes of certificates that receive Subsequent

---

[4] As provided in the Requested Modifications, "Recycled Funds" will be pooled among the RMBS Trusts for future distributions to non-terminated RMBS Trusts based on an allocation calculation by Duff.

Recoveries are not necessarily the same classes of certificates that have their certificate principal balances written-up.

31.     For some RMBS Trusts such a Write-up can, under certain circumstances, reinstate classes of subordinate certificates that were previously reduced to zero, and therefore possibly reverse the "**Credit Support Depletion Date**," or the date that the principal balance of each class of subordinate certificates is reduced to zero, such that the senior certificates start taking losses.  The reversal of the Credit Support Depletion Date can create certain ambiguities in the waterfall calculations for some RMBS Trusts.

32.     The Requested Modifications address this situation, so that if it is unclear whether a reversal of the Credit Support Depletion Date may occur, the Claims Trust Cash will be held in escrow by the appropriate Relying Party until the earlier of (i) the first date in the future that it can be processed without reversing the Credit Support Depletion Date, and (ii) the final distribution date in connection with the termination of the trust.

33.     For Governing Agreements that do not have a provision addressing the concept of recoveries received on mortgage loans after the loans have been liquidated with outstanding unreimbursed realized losses, the well-established practice in the industry is to treat Subsequent Recoveries in the same manner that Subsequent Recoveries are treated in RMBS Trusts that contain express and complete provisions governing the treatment of Subsequent Recoveries, including writing up certificates with a zero balance (unless prohibited by the Governing Agreement).

34.     Article IV.C.3(e) of the Plan originally provided that in the absence of the defined term "Subsequent Recovery" in any Governing Agreement, the Plan distributions should be treated as "unscheduled principal."  However, treating the Plan distributions as unscheduled

principal is inconsistent with the waterfall provisions of the Governing Agreements of many
RMBS Trusts.

35.    The Requested Modifications address these situations by eliminating the
Plan's instruction to treat Plan distributions as "unscheduled principal" and instead, the language
of the Governing Agreements regarding Subsequent Recoveries will be followed (whether the
exact same defined term is used or not), or, in the event a Governing Agreement does not contain
any provisions regarding Subsequent Recoveries, or contains incomplete provisions (whether the
exact same defined term is used or not), the Requested Modifications provide that the Relying
Parties shall treat Claims Trust Cash as if the Governing Agreement contained customary
provisions regarding the treatment of Subsequent Recoveries.

### C. Modifications to Prevent Distributions to Residual Certificate Classes

36.    Under certain scenarios for certain RMBS Trusts, it is possible that
processing Claims Trust Cash as Subsequent Recoveries could lead to distributions (i) to
certificates that represent the residual interest in a REMIC (typically known as class R
certificates) or (ii) to a class of regular interest certificates that is structured as a credit
enhancement class representing overcollateralization supporting other classes of certificates
(collectively, the "**Residual Certificate Classes**").  Such Residual Certificate Classes were not
expected to receive distributions under the RMBS Settlement.  Accordingly, the Requested
Modifications address the possibility of such unintended distributions by providing that if the
processing of any Claims Trust Cash will result in any distribution to a Residual Certificate
Class, the applicable Relying Parties will hold such Claims Trust Cash until the earlier of (x) the
first future distribution date for such RMBS Trust when the distribution of such Claims Trust
Cash can be processed without resulting in a distribution to a Residual Certificate Class, and (y)

the date of the termination of such RMBS Trust, in which case such Claims Trust Cash shall become Recycled Funds to which such RMBS Trust has no further interest or entitlement.

**D.  Modifications Regarding RMBS Trusts with
Outstanding Realized Losses Lower than Predicted**

37.     The Recognized RMBS Claims were calculated by Duff by taking into account both liquidated mortgage loan losses the RMBS Trusts incurred in the past and such losses that Duff expected the RMBS Trusts to incur in the future.  However, some RMBS Trusts have not, as of the date hereof, incurred liquidated losses (although they may incur such losses in the future), or have incurred liquidated losses that are less than the Claims Trust Cash to be distributed (although they may incur more liquidated losses in the future).  Notwithstanding that fact, these RMBS Trusts are entitled under the Plan to receive Claims Trust Cash as and when distributed by the RMBS Claims Trust.  The Governing Agreements for certain RMBS Trusts do not contemplate that an RMBS Trust would receive settlement distributions in advance of suffering a liquidated loss.  For such RMBS Trusts, it is impossible to process Claims Trust Cash as Subsequent Recoveries.

38.     Accordingly, the Requested Modifications provide that, if a Relying Party determines that, as of any date that Claims Trust Cash is to be distributed, an RMBS Trust (i) has not yet incurred any liquidated losses, or (ii) the liquidated losses incurred are less than the Claims Trust Cash to be distributed, then, in each case, the Relying Party will hold such Claims Trust Cash or such portion thereof, until the earlier of (x) the date such RMBS Trust incurs losses to which the Claims Trust Cash can be applied as Subsequent Recoveries, and (y) the termination of such RMBS Trust, in which case such Claims Trust Cash shall become Recycled Funds to which such RMBS Trust has no further interest or entitlement.

## BASIS FOR RELIEF

39.     The Requested Modifications are necessary to effect distributions to Certificateholders as originally contemplated by the Plan.   Absent implementation of the Requested Modifications, there is the risk that some Certificateholders will never receive the distribution to which they are entitled.

40.     Moreover, as discussed above, pursuant to Article IV.C.3(e) of the Plan, the Requested Modifications are, by definition, non-material modifications.   The Requested Modifications will not alter the legal rights or relationships of holders of claims or affect their interests in any way.   Because the Requested Modifications are necessary to fulfill the Plan's intended purpose, the RMBS Trustees have determined that the Requested Modifications to the Plan described above are reasonable and necessary.

41.     Section 1142(b) of the Bankruptcy Code provides that a "court may direct the debtor and any other necessary party to execute or deliver . . . any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act  . . . that is necessary for the consummation of the Plan."

42.     Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).  Moreover, this Court has the "inherent power" to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (reaffirming these principles established in *Link*); *Smalls v. Bank of N.Y.*, No. 05-cv-8474, 2008 WL 1883998, at *3 (S.D.N.Y. Apr. 29, 2008) (same); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (noting the "power inherent in every court to control the disposition of the cases on its docket with economy of time

- 13 -

and effort for itself, for counsel, and for litigants"). Pursuant to section 105(a) of the Bankruptcy Code, this Court has equitable power to fashion an order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (citations omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances.").

43.     Section 105(d) of the Bankruptcy Code also permits this Court, *sua sponte* or on the request of a party in interest, to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2), and Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any order necessary to administer the estate."

44.     Accordingly, after giving wide notice of the Motion, the RMBS Trustees are requesting that the Court enter the Proposed Order and approve the Requested Modifications.

## **NOTICE**

45.     Notice of this Motion has been given to the parties identified on the Special Service List and General Service List, as such terms are defined in the Notice, Case Management, and Administrative Procedures approved by the Court [Docket No. 141].

46.     Further, each of the RMBS Trustees are providing Certificateholders with notice of this Motion as follows:  (a) The Garden City Group, Inc. ("**GCG**") was retained by the RMBS Trustees to coordinate and facilitate dissemination of notices to Certificateholders in

- 14 -

connection with this case, and will update the RMBS Trustee Website, located at www.rescaprmbssettlement.com, by posting a link to this Motion on the "Notices," "Recent Updates," and "Relevant Deadlines and Court Hearings" sections of that website; (b) GCG will email the Motion to The Depository Trust Company for posting on its LENS Notification System; (c) GCG will email the Motion to Broadridge; and (d) GCG will mail the Notice of Motion to certain registered holders. The RMBS Trustees submit that no further notice of the Motion is necessary.

## NO PRIOR REQUESTS

47.    No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the RMBS Trustees respectfully request that this Court enter the Proposed Order approving the Requested Modifications to the Plan.

Dated: New York, New York
June 1, 2015

MORGAN, LEWIS & BOCKIUS LLP

By: s/ Glenn E. Siegel
Glenn E. Siegel
John C. Goodchild, III (*pro hac vice*)
James O. Moore
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212 309-6001

*Counsel to The Bank of New York Mellon and The
Bank of New York Mellon Trust Company, N.A., as
Trustee of Certain Mortgage-Backed Securities
Trusts, and Deutsche Bank National Trust Company
and Deutsche Bank Trust Company Americas, as
Trustee of Certain Mortgage-Backed Securities
Trusts*

DECHERT LLP

By: s/ Mauricio A. España
Mauricio A. España
Craig P. Druehl
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The
Bank of New York Mellon Trust Company, N.A., as
Trustee of Certain Mortgage-Backed Securities
Trusts*

SEWARD & KISSEL LLP

By: s/ Mark D. Kotwick
Mark D. Kotwick
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of
Certain Mortgage-Backed Securities Trusts*

ALSTON & BIRD LLP

By: s/ John C. Weitnauer
John C. Weitnauer (*pro hac vice*)
90 Park Avenue
New York, NewYork 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as
Trustee of Certain Mortgage-Backed
Securities Trusts*

ALLEN & OVERY LLP

By: s/ John Kibler
John Kibler
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Counsel to HSBC Bank USA, N.A., as
Trustee of Certain Mortgage-Backed
Securities Trust*

**<u>Exhibit 1</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

|   |   |   |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

----------------------------------------------------------------

## <u>ORDER APPROVING CERTAIN NON-MATERIAL PLAN MODIFICATIONS</u>

Upon the motion (the "**Motion**")[1] filed by the RMBS Trustees, for an order

making certain nonmaterial modifications to the provisions of the Plan, as more fully set forth in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York,

dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been provided, and no other or further notice need be provided; and the relief requested in

the Motion being in the best interests of the RMBS Trusts, and the Certificateholders; and the

Court having reviewed the Motion; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor;

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted as provided herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

2.      In accordance with the Motion, the Court approves the non-material modifications to the Plan attached hereto as **Annex 1** (the "**Non-Material Plan Modifications**").

3.      All parties, including the ResCap Liquidating Trust, are authorized and directed to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      The Relying Parties (as defined in the Plan Modifications) are authorized to treat cash distributions from the RMBS Claims Trust to the RMBS Trustees for the benefit of the RMBS Trusts in accordance with the Plan as modified by this Order.

5.      Nothing herein shall prejudice the rights of the RMBS Trustees to request further modifications to the Plan, including the implementation of non-material modifications on the terms of the Plan and the Confirmation Order.

6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      The Court shall retain jurisdiction relating to the interpretation and implementation of this Order.

Dated:   _____, 2015
         New York, New York

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

**Annex 1**

**Non-Material Plan Modifications**

A.  Article IV.C of the Plan is modified to add a new subsection 9, as follows:

**9.**  _Definitions Applicable Only to Article IV. C. of the Plan._ The following defined terms are applicable only to Article IV.C. of the Plan:

"**Asset Sale**" means the sale of all of the assets of an RMBS Trust, or of the assets of one or more Loan Groups of an RMBS Trust, to a third party, including, if required by the terms of the Governing Agreements or otherwise required in connection with such sale to comply with applicable law, the sale of the right of an RMBS Trust to receive future distributions of Claims Trust Cash.

"**Certificateholder**" means the holder of any certificate issued by an RMBS Trust.

"**Claims Trust Cash**" means any distributions of cash from the RMBS Claims Trust to the RMBS Trustees for the benefit of an RMBS Trust.

"**Credit Support Depletion Date**" means the date that the principal balance of all classes of subordinate certificates in an RMBS Trust is reduced to zero such that the senior certificates in such RMBS Trust start taking losses.

"**Governing Agreements**" means the agreements, indentures, pooling and servicing agreements and other documents governing an RMBS Trust.

"**Calculation Agent**" means any party to, or subject to, a Governing Agreement that calculates waterfall payments and loss allocations to the relevant Certificateholders for such RMBS Trust.

"**Relying Party**" means any Calculation Agent or RMBS Trustee for an RMBS Trust and any agent of such RMBS Trustee or Calculation Agent.

"**Recycled Funds**" means Claims Trust Cash that is designated as Recycled Funds pursuant to Article IV.C.3.e of the Plan and any other Claims Trust Cash remaining that would not be distributable to RMBS Trust Certificateholders pursuant to the Governing Agreements after application of Article IV.C.3.e of the Plan.

"**Residual Certificate Class**" means (i) any class of certificates issued by an RMBS Trust that represents the residual interest in a REMIC (typically known as class R certificates) or (ii) any class of regular interest certificates in an RMBS Trust that is structured as a credit enhancement class intended to provide overcollateralization support to other classes of certificates.

"**Sale Documents**" means the documents evidencing an Asset Sale.

"**Subsequent Recoveries**" means recoveries by an RMBS Trust on mortgage loans that have been liquidated with outstanding unreimbursed realized losses.

"**Terminated Loan Group**" means any Loan Group in an RMBS Trust where all the loans in the Loan Group have been or are being sold, paid off or charged off before the applicable date on which any Relying Party calculates and makes a distribution of Claims Trust Cash.

"**Terminated RMBS Trust**" means any RMBS Trust that was or will be terminated before the applicable date on which any Relying Party calculates and makes a distribution of Claims Trust Cash.

B.  Article IV.C.3.e of the Plan is modified in its entirety by deleting the current section and replacing it with the following:

All Claims Trust Cash distributed for the benefit of an RMBS Trust shall be treated in the same way as the Governing Agreements for such RMBS Trust treat recoveries on mortgage loans that have been liquidated with outstanding unreimbursed realized losses (whether the Governing Agreements use a defined term such as "Subsequent Recoveries," "Recoveries," "Recoveries on a Prior Loss" or some other defined term); but in the event that the Governing Agreements for such RMBS Trust do not contain such provisions or concepts similar to Subsequent Recoveries, or contain such provisions or concepts but such provisions or concepts are incomplete, all Claims Trust Cash may, in accordance with industry practice, be treated in the same way as if the Governing Agreements included complete provisions for the treatment of Subsequent Recoveries (*e*.g., (a) the Subsequent Recoveries are paid to certificateholders as principal, and (b)(i) the certificate principal balance of the most senior class(es) (based on reverse priority of loss allocations) of certificates having unreimbursed realized losses shall be increased by the amount of Subsequent Recoveries distributed (a "**Write-Up**")), or (b)(ii) the previously allocated realized loss will otherwise be reversed. In addition, certificates with a zero balance at the time of the distribution of Claims Trust Cash shall be eligible to be written up unless the Governing agreements expressly prohibit writing up zero balance certificates), *provided however*,

if a Relying Party determines that:

(i) a Write-up would reinstate classes of subordinate certificates that were previously reduced to zero and thereby reverse the Credit Support Depletion Date (such that the pre-Credit Support Depletion Date waterfall would apply), the Claims Trust Cash will be held in escrow by the Relying Parties until the earlier of (x) the first future distribution date for such RMBS Trust when the distribution of such Claims Trust Cash or any portion of such Claims Trust Cash can be processed without reversing the Credit Support Depletion Date in which case the Claims Trust Cash or portion thereof will be distributed as set forth above (i.e. the escrowed funds will be used to cover losses allocated to the senior certificates in the future), and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will be distributed as a Subsequent Recovery

(without regard to the reversal of the Credit Support Depletion Date) with the final distribution effected by the termination of the RMBS Trust,

(ii) treating Claims Trust Cash as Subsequent Recoveries would result in a distribution to a Residual Certificate Class, the Relying Parties will hold such Claims Trust Cash until the earlier of (x) the first future distribution date for such RMBS Trust when the distribution of such Claims Trust Cash or any portion of such Claims Trust Cash will not result in a distribution to a Residual Certificate Class in which case the Claims Trust Cash or portion thereof will be distributed as set forth above, and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will become Recycled Funds to which such RMBS Trust or Loan Group has no further interest or entitlement, and/or

(iii) as of any date that Claims Trust Cash is to be distributed, an RMBS Trust has not yet incurred any losses or the losses incurred are less than the Claims Trust Cash to be distributed, then the Relying Party will hold such Claims Trust Cash, until the earlier of (x) such RMBS Trust incurs losses to which the Claims Trust Cash or any portion of such Claims Trust Cash can be applied as Subsequent Recoveries in which case the Claims Trust Cash or portion thereof will be distributed on the first future distribution date for such RMBS Trust to the extent of such losses and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will become Recycled Funds to which such RMBS Trust or Loan Group has no further interest or entitlement.

*Provisions Applicable to a Terminated or Terminating RMBS Trust.* In the event an RMBS Trust has terminated, future distributions of Claims Trust Cash shall be treated as Recycled Funds; *provided, however*, if there was an Asset Sale in connection with the termination of the RMBS Trust and the Sale Documents include provisions regarding the distribution of such Claims Trust Cash after the closing of the Asset Sale, then such Claims Trust Cash will be distributed in accordance with the provisions of such Sale Documents. The net proceeds from any sale of the right to receive future Claims Trust Cash will be distributed to the Certificateholders of that RMBS Trust as Subsequent Recoveries. In the event an RMBS Trust is terminating, the RMBS Trustee of such RMBS Trust may liquidate future distributions of Claims Trust Cash through an Asset Sale at fair market value determined by an advisor, upon which value the RMBS Trustee may conclusively rely. In connection with the sale of future distributions of Claim Trust Cash, notwithstanding the foregoing, if the cost of valuing and documenting the sale of future distributions of Claims Trust Cash is reasonably determined by the RMBS Trustee to exceed the future distributions of Claims Trust Cash allocable to such RMBS Trust, such future distributions of Claim Trust Cash shall be treated as Recycled Funds.

*Provisions Applicable to a Terminated or Terminating Loan Group.* In the event a Loan Group becomes a Terminated Loan Group or in the event the certificates associated with a Loan Group have been paid off and have no outstanding unreimbursed realized losses, Claims Trust Cash that is distributable to an RMBS

iii

Trustee in respect of either circumstance shall be (x) distributed in accordance with any applicable provisions of the Governing Agreements (including any provisions that would use such Claims Trust Cash for the benefit of other Loan Groups in such RMBS Trust by way of cross-collateralization or otherwise), or (y) if there are no such provisions in the Governing Agreements, treated as Recycled Funds *provided, however,* if there was an Asset Sale by such Terminated Loan Group and the Sale Documents include provisions regarding the distribution of such Claims Trust Cash after the closing of the Asset Sale that apply to such future Claims Trust Cash, then such Claims Trust Cash will be distributed in accordance with such the provisions of the Sale Documents. The net proceeds from the sale of the right to receive future Claims Trust Cash will be distributed to the Certificateholders associated with that Loan Group as Subsequent Recoveries.  In the event that a Loan Group is terminating, and if the RMBS Trustee of the RMBS Trust with such Loan Group plans to liquidate future distributions of Claims Trust Cash of such Loan Group through an Asset Sale, the RMBS Trustee may liquidate such future distributions of Claims Trust Cash at fair market value as determined by an advisor, upon which value the RMBS Trustee may conclusively rely. In connection with the sale of future distributions of Claim Trust Cash, notwithstanding the foregoing, if the cost of valuing and documenting the sale of future distributions of Claims Trust Cash is reasonably determined by the RMBS Trustee to exceed the future distributions of Claims Trust Cash allocable to such Loan Group, such future distributions of Claim Trust Cash shall be treated in accordance with clauses (x) and (y) above.

*Treatment of Recycled Funds.*   From time to time the RMBS Trustees shall aggregate Recycled Funds and re-distribute such funds to any and all other RMBS Trusts for which there was no determination that such RMBS Trusts' allocable share of Claims Trust Cash should be treated as Recycled Funds, based on calculations made by Duff.  If such Recycled Funds cannot be distributed to other RMBS Trusts as described in the previous sentence such Recycled Funds shall be treated in a manner consistent with applicable escheatment law.

Notwithstanding anything to the contrary herein, should the Bankruptcy Court determine that a different treatment is required to conform the distributions to the requirements of the Governing Agreements of any RMBS Trust, such determination shall govern and shall not constitute a material change to this Plan.

Notwithstanding the foregoing or anything to the contrary in any Governing Agreement, no distributions of Claims Trust Cash shall be paid over or distributed to any Monoline.

iv

12-12020-mg   Doc 3879-3   Filed 06/01/18   Entered 06/01/18 14:46:08   Exhibit 1
(Proposed Order)   Pg 1 of 8

## **<u>Exhibit 1</u>**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER APPROVING CERTAIN NON-MATERIAL PLAN MODIFICATIONS

Upon the motion (the "**Motion**")[1] filed by the RMBS Trustees, for an order

making certain nonmaterial modifications to the provisions of the Plan, as more fully set forth in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of

Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York,

dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion

having been provided, and no other or further notice need be provided; and the relief requested in

the Motion being in the best interests of the RMBS Trusts, and the Certificateholders; and the

Court having reviewed the Motion; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

2.      In accordance with the Motion, the Court approves the non-material modifications to the Plan attached hereto as **Annex 1** (the "**Non-Material Plan Modifications**").

3.      All parties, including the ResCap Liquidating Trust, are authorized and directed to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

4.      The Relying Parties (as defined in the Plan Modifications) are authorized to treat cash distributions from the RMBS Claims Trust to the RMBS Trustees for the benefit of the RMBS Trusts in accordance with the Plan as modified by this Order.

5.      Nothing herein shall prejudice the rights of the RMBS Trustees to request further modifications to the Plan, including the implementation of non-material modifications on the terms of the Plan and the Confirmation Order.

6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      The Court shall retain jurisdiction relating to the interpretation and implementation of this Order.

Dated:   _____, 2015
         New York, New York

                                   _____
                                   UNITED STATES BANKRUPTCY JUDGE

2

12-12020-mg Doc 5679-1 Filed 06/07/19 Entered 06/07/19 16:46:08 Exhibit C-
Rescap Motion Pg 32 of 36

**<u>Annex 1</u>**

**Non-Material Plan Modifications**

A. Article IV.C of the Plan is modified to add a new subsection 9, as follows:

**9.** *Definitions Applicable Only to Article IV. C. of the Plan.* The following defined terms are applicable only to Article IV.C. of the Plan:

"**Asset Sale**" means the sale of all of the assets of an RMBS Trust, or of the assets of one or more Loan Groups of an RMBS Trust, to a third party, including, if required by the terms of the Governing Agreements or otherwise required in connection with such sale to comply with applicable law, the sale of the right of an RMBS Trust to receive future distributions of Claims Trust Cash.

"**Certificateholder**" means the holder of any certificate issued by an RMBS Trust.

"**Claims Trust Cash**" means any distributions of cash from the RMBS Claims Trust to the RMBS Trustees for the benefit of an RMBS Trust.

"**Credit Support Depletion Date**" means the date that the principal balance of all classes of subordinate certificates in an RMBS Trust is reduced to zero such that the senior certificates in such RMBS Trust start taking losses.

"**Governing Agreements**" means the agreements, indentures, pooling and servicing agreements and other documents governing an RMBS Trust.

"**Calculation Agent**" means any party to, or subject to, a Governing Agreement that calculates waterfall payments and loss allocations to the relevant Certificateholders for such RMBS Trust.

"**Relying Party**" means any Calculation Agent or RMBS Trustee for an RMBS Trust and any agent of such RMBS Trustee or Calculation Agent.

"**Recycled Funds**" means Claims Trust Cash that is designated as Recycled Funds pursuant to Article IV.C.3.e of the Plan and any other Claims Trust Cash remaining that would not be distributable to RMBS Trust Certificateholders pursuant to the Governing Agreements after application of Article IV.C.3.e of the Plan.

"**Residual Certificate Class**" means (i) any class of certificates issued by an RMBS Trust that represents the residual interest in a REMIC (typically known as class R certificates) or (ii) any class of regular interest certificates in an RMBS Trust that is structured as a credit enhancement class intended to provide overcollateralization support to other classes of certificates.

"**Sale Documents**" means the documents evidencing an Asset Sale.

"**Subsequent Recoveries**" means recoveries by an RMBS Trust on mortgage loans that have been liquidated with outstanding unreimbursed realized losses.

i

"**Terminated Loan Group**" means any Loan Group in an RMBS Trust where all the loans in the Loan Group have been or are being sold, paid off or charged off before the applicable date on which any Relying Party calculates and makes a distribution of Claims Trust Cash.

"**Terminated RMBS Trust**" means any RMBS Trust that was or will be terminated before the applicable date on which any Relying Party calculates and makes a distribution of Claims Trust Cash.

B.   Article IV.C.3.e of the Plan is modified in its entirety by deleting the current section and replacing it with the following:

All Claims Trust Cash distributed for the benefit of an RMBS Trust shall be treated in the same way as the Governing Agreements for such RMBS Trust treat recoveries on mortgage loans that have been liquidated with outstanding unreimbursed realized losses (whether the Governing Agreements use a defined term such as "Subsequent Recoveries," "Recoveries," "Recoveries on a Prior Loss" or some other defined term); but in the event that the Governing Agreements for such RMBS Trust do not contain such provisions or concepts similar to Subsequent Recoveries, or contain such provisions or concepts but such provisions or concepts are incomplete, all Claims Trust Cash may, in accordance with industry practice, be treated in the same way as if the Governing Agreements included complete provisions for the treatment of Subsequent Recoveries (*e*.g., (a) the Subsequent Recoveries are paid to certificateholders as principal, and (b)(i) the certificate principal balance of the most senior class(es) (based on reverse priority of loss allocations) of certificates having unreimbursed realized losses shall be increased by the amount of Subsequent Recoveries distributed (a "**Write-Up**")), or (b)(ii) the previously allocated realized loss will otherwise be reversed. In addition, certificates with a zero balance at the time of the distribution of Claims Trust Cash shall be eligible to be written up unless the Governing agreements expressly prohibit writing up zero balance certificates), *provided however*,

if a Relying Party determines that:

(i) a Write-up would reinstate classes of subordinate certificates that were previously reduced to zero and thereby reverse the Credit Support Depletion Date (such that the pre-Credit Support Depletion Date waterfall would apply), the Claims Trust Cash will be held in escrow by the Relying Parties until the earlier of (x) the first future distribution date for such RMBS Trust when the distribution of such Claims Trust Cash or any portion of such Claims Trust Cash can be processed without reversing the Credit Support Depletion Date in which case the Claims Trust Cash or portion thereof will be distributed as set forth above (i.e. the escrowed funds will be used to cover losses allocated to the senior certificates in the future), and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will be distributed as a Subsequent Recovery

(without regard to the reversal of the Credit Support Depletion Date) with the final distribution effected by the termination of the RMBS Trust,

(ii) treating Claims Trust Cash as Subsequent Recoveries would result in a distribution to a Residual Certificate Class, the Relying Parties will hold such Claims Trust Cash until the earlier of (x) the first future distribution date for such RMBS Trust when the distribution of such Claims Trust Cash or any portion of such Claims Trust Cash will not result in a distribution to a Residual Certificate Class in which case the Claims Trust Cash or portion thereof will be distributed as set forth above, and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will become Recycled Funds to which such RMBS Trust or Loan Group has no further interest or entitlement, and/or

(iii) as of any date that Claims Trust Cash is to be distributed, an RMBS Trust has not yet incurred any losses or the losses incurred are less than the Claims Trust Cash to be distributed, then the Relying Party will hold such Claims Trust Cash, until the earlier of (x) such RMBS Trust incurs losses to which the Claims Trust Cash or any portion of such Claims Trust Cash can be applied as Subsequent Recoveries in which case the Claims Trust Cash or portion thereof will be distributed on the first future distribution date for such RMBS Trust to the extent of such losses and (y) the termination of an RMBS Trust or a Loan Group in which case such Claims Trust Cash will become Recycled Funds to which such RMBS Trust or Loan Group has no further interest or entitlement.

*Provisions Applicable to a Terminated or Terminating RMBS Trust.*  In the event an RMBS Trust has terminated, future distributions of Claims Trust Cash shall be treated as Recycled Funds; *provided, however*, if there was an Asset Sale in connection with the termination of the RMBS Trust and the Sale Documents include provisions regarding the distribution of such Claims Trust Cash after the closing of the Asset Sale, then such Claims Trust Cash will be distributed in accordance with the provisions of such Sale Documents. The net proceeds from any sale of the right to receive future Claims Trust Cash will be distributed to the Certificateholders of that RMBS Trust as Subsequent Recoveries.  In the event an RMBS Trust is terminating, the RMBS Trustee of such RMBS Trust may liquidate future distributions of Claims Trust Cash through an Asset Sale at fair market value determined by an advisor, upon which value the RMBS Trustee may conclusively rely.  In connection with the sale of future distributions of Claim Trust Cash, notwithstanding the foregoing, if the cost of valuing and documenting the sale of future distributions of Claims Trust Cash is reasonably determined by the RMBS Trustee to exceed the future distributions of Claims Trust Cash allocable to such RMBS Trust, such future distributions of Claim Trust Cash shall be treated as Recycled Funds.

*Provisions Applicable to a Terminated or Terminating Loan Group.*  In the event a Loan Group becomes a Terminated Loan Group or in the event the certificates associated with a Loan Group have been paid off and have no outstanding unreimbursed realized losses, Claims Trust Cash that is distributable to an RMBS

Trustee in respect of either circumstance shall be (x) distributed in accordance
with any applicable provisions of the Governing Agreements (including any
provisions that would use such Claims Trust Cash for the benefit of other Loan
Groups in such RMBS Trust by way of cross-collateralization or otherwise), or
(y) if there are no such provisions in the Governing Agreements, treated as
Recycled Funds *provided, however*, if there was an Asset Sale by such
Terminated Loan Group and the Sale Documents include provisions regarding the
distribution of such Claims Trust Cash after the closing of the Asset Sale that
apply to such future Claims Trust Cash, then such Claims Trust Cash will be
distributed in accordance with such the provisions of the Sale Documents. The net
proceeds from the sale of the right to receive future Claims Trust Cash will be
distributed to the Certificateholders associated with that Loan Group as
Subsequent Recoveries. In the event that a Loan Group is terminating, and if the
RMBS Trustee of the RMBS Trust with such Loan Group plans to liquidate future
distributions of Claims Trust Cash of such Loan Group through an Asset Sale, the
RMBS Trustee may liquidate such future distributions of Claims Trust Cash at
fair market value as determined by an advisor, upon which value the RMBS
Trustee may conclusively rely. In connection with the sale of future distributions
of Claim Trust Cash, notwithstanding the foregoing, if the cost of valuing and
documenting the sale of future distributions of Claims Trust Cash is reasonably
determined by the RMBS Trustee to exceed the future distributions of Claims
Trust Cash allocable to such Loan Group, such future distributions of Claim Trust
Cash shall be treated in accordance with clauses (x) and (y) above.

*Treatment of Recycled Funds.* From time to time the RMBS Trustees shall
aggregate Recycled Funds and re-distribute such funds to any and all other RMBS
Trusts for which there was no determination that such RMBS Trusts' allocable
share of Claims Trust Cash should be treated as Recycled Funds, based on
calculations made by Duff. If such Recycled Funds cannot be distributed to other
RMBS Trusts as described in the previous sentence such Recycled Funds shall be
treated in a manner consistent with applicable escheatment law.

Notwithstanding anything to the contrary herein, should the Bankruptcy Court
determine that a different treatment is required to conform the distributions to the
requirements of the Governing Agreements of any RMBS Trust, such
determination shall govern and shall not constitute a material change to this Plan.

Notwithstanding the foregoing or anything to the contrary in any Governing
Agreement, no distributions of Claims Trust Cash shall be paid over or distributed
to any Monoline.

iv