# Exhibit B



Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    LEHMAN BROTHERS HOLDINGS INC.,

8

9         Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                United States Bankruptcy Court

13                One Bowling Green

14                New York, NY  10004

15

16                April 19, 2018

17                10:06 AM

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

1    HEARING re Doc #57838 Motion for Temporary Restraining Order

2    and Order to Show Cause filed by Chester B. Salomon on

3    behalf of Institutional Investors.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

**Page 3**

1   A P P E A R A N C E S :

2

3   BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP

4        Attorneys for Institutional Investors

5        299 Park Avenue

6        New York, NY 10171

7

8   BY:  ALEC P. OSTROW

9

10  GIBBS & BRUNS LLP

11       Attorneys for Institutional Investors

12       1100 Louisiana, Suite 5300

13       Houston, TX 77002

14

15  BY:  DAVID SHEEREN

16

17  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

18       Attorney for

19       1633 Broadway

20       New York, NY 10019

21

22  BY:  URI A. ITKIN

23       PAUL J. BURGO

24

25

**Page 4**

```
 1   ALSTON & BIRD

 2        Attorneys for Wilmington Trust NA & Wilmington Trust

 3        Company

 4        90 Park Avenue

 5        New York, NY 10016

 6

 7   BY:  ALEXANDER S. LORENZO

 8

 9   FAEGRE BAKER DANIELS LLP

10        Attorneys for Wells Fargo Bank, N.A.

11        2200 Wells Fargo Center

12        90 S. Seventh Street

13        Minneapolis, MN 55402

14

15   BY:  ROBERT L. SCHNELL

16        STEPHEN M. MERTZ

17

18   HAHN & HESSEN LLP

19        Attorneys for Wells Fargo Bank, N.A.

20        488 Madison Avenue

21        New York, NY 10022

22

23   BY:  ZACH NEWMAN

24

25
```

Page 5

```
 1   MAYER BROWN LLP
 2         Attorneys for Citibank, N.A.
 3         1221 Avenue of the Americas
 4         New York, NY 10020
 5
 6   BY:  JARMAN D. RUSSELL
 7         CHRISTOPHER J. HOUPT
 8
 9   ALSTON & BIRD LLP
10         Attorneys for Wilmington Trust
11         One Atlantic Center
12         1201 West Peachtree Street
13         Atlanta, GA 30309
14
15   BY:  DAVID A. WENDER
16
17   MORGAN, LEWIS & BOCKIUS LLP
18         Attorneys for U.S. Bank
19         101 Park Avenue
20         New York, NY 10178
21
22   BY:  GLENN E. SIEGEL
23         MICHAEL KRAUT
24
25
```

1              P R O C E E D I N G S

2              MR. OSTROW:  Alec Ostrow, from Becker, Glynn,

3    Muffly, Chassin & Hosinski, co-counsel to the institutional

4    investors.

5              MR. SHEEREN:  Good morning, Your Honor.  David

6    Sheeren, with the Gibbs & Bruns firm in Texas, for the

7    institutional investors.

8              MR. SIEGEL:  Good morning, Your Honor.  It's Glenn

9    Siegel, from Morgan Lewis, on behalf of U.S. Bank.  And I

10   expect I'll be taking the lead for the Trust administrators.

11             THE COURT:  Okay, thank you.  I apologize for the

12   telephonic format this morning.  As some of you know, I

13   rather messed up my knee and I'm just having a very hard

14   time getting around, and therefore, I am not there today.

15   So, I did want to proceed since I understand that this is a

16   matter of some urgency.

17             Could someone give me an update as to the current

18   state of things in the State Court?

19             MR. SHEEREN:  Yes, Your Honor.  This is David

20   Sheeren for the institutional investors.  The hearing before

21   Justice Friedman went forward last week.  She didn't enter

22   any of the proposed orders.  Instead, she's asked the

23   parties to call her, I believe on April 23rd following this

24   hearing to update her on what happened in the Bankruptcy

25   Court.

1          She also asked the parties to address a couple of,

2     I'll call them form issues, and maybe even a substantive

3     issue she had with the order to show cause that had been

4     submitted.  And I believe a new order to show cause

5     reflecting some edits has been submitted in the State Court.

6          But in effect, Your Honor, that case is not

7     proceeding at this moment, and the Judge has asked us to

8     call her and update her on the outcome of this bankruptcy

9     hearing next week.

10          MR. NEWMAN:  Judge, Good morning.  It's Zach

11    Newman, from Hahn & Hessen, representing Wells Fargo.  Just

12    to give the Trustee administrator and the Trustee's side of

13    things with respect to the State Court, the proposed order

14    to show cause was the effort of all of the interested

15    parties that have filed notices of appearance, including the

16    institutional investors.  And an agreed-upon order to show

17    cause was filed yesterday following a conference call with

18    the Judge's law secretary.

19          The Judge's law secretary indicated that absent a

20    ruling today from the Bankruptcy Court that it is proceeding

21    to exercise jurisdiction over the matter, it intends to have

22    that order to show cause signed and docketed, which includes

23    various notice provisions, likely tomorrow, or the end of

24    today, perhaps.  It is Thursday, I believe -- or tomorrow.

25          So, as far as the State Court proceeding, Judge

1   Friedman is certainly aware of these proceedings and is

2   aware of the schedule here, but that proceeding is moving

3   forward presently.  Thank you.

4           THE COURT:  Okay.  Okay.  All right, so who do I

5   hear from first, Mr. Ostrow?

6           MR. OSTROW:  Thank you, Your Honor.  As we put in

7   the penultimate part of our supplemental memorandum, we'd

8   like very much to divide the responsibility for the

9   discussions today.

10          As I said last week, I'm not all that familiar

11  with the RMBS settlement agreement and the particulars of

12  how the distributions are supposed to work.  Mr. Sheeran,

13  from Gibbs & Bruns, has lived with this for some time, and

14  with your permission I'd like to have him address that.  I

15  can address the bankruptcy issues of jurisdiction and the

16  issue that was raised in the papers -- in our position about

17  the applicability of the Anti-Injunction Act.  And we'd be

18  happy to take those in any order Your Honor would like to

19  hear them.

20          THE COURT:  Okay.  I appreciate that.  Thank you,

21  Mr. Ostrow.  I think that with respect to the jurisdictional

22  issues and the like, I don't know that I need to hear much

23  more other than what is in the papers.  Where the action is,

24  so to speak, is what we talked about the first go-round, and

25  very simply, whether I'm asked to interpret the settlement

Page 9

1    agreement, or whether the resolution of this matter is going

2    to involve more than that and interpretation of the

3    governing agreement, that's the whole ball of wax as far as

4    I'm concerned.  And everyone dove into those issues very

5    thoroughly.  So, that's really the only thing that I'm

6    interested in hearing about today.

7            So, Mr. Sheeren, if you want to speak more to

8    that, that would be great.

9            MR. SHEEREN:  Absolutely.  Thank you, Your Honor.

10   Your Honor, the question you pose is does this require the

11   interpretation of the indenturers or the settlement

12   agreement.  As we laid out in our papers, we believe this

13   only requires the Court to interpret the settlement

14   agreement.

15           You asked the parties to lay out a roadmap of the

16   provisions that issue.  Your Honor, we've done that under

17   the settlement agreement.  Fundamentally, there are three

18   provisions that control the outcome here:  3.01, that's the

19   provision --

20           THE COURT:  I --

21           MR. SHEEREN:  Sorry, Your Honor?

22           THE COURT:  Yeah, no, I'm just following along

23   with you and agree, it's -- yes, 3.01.

24           MR. SHEEREN:  Yes, that's the provision under

25   which the settlement agreement the Trustees could come into

1    court potentially and seek further judicial instruction.

2    But importantly, it also requires Trustees to use their

3    reasonable best efforts to distribute the plan payments

4    promptly.  So, that's the first provision.

5         THE COURT:  The second provision is Section 3.06.

6    That's the provision of the settlement agreement that

7    dictates how the Trustees were to distribute the plan

8    payments.  And the structure of Section 3.06, we think, is

9    pretty simple.  We think that it's quite clear that in

10   3.06(a), there is an instruction to the Trustees to

11   distribute the plan payments to investors as though they

12   were subsequent recoveries under the governing agreements.

13        The second step is 3.06(b).  And 3.06(b) provides

14   for a write up of the certificate balances in connection

15   with the distribution of the subsequent recoveries.

16   Importantly, Your Honor, the Trustees have alleged that the

17   central issue in this case is, do they distribute the plan

18   payments to investors first and then write up the

19   certificate balances, or to the first write up a certificate

20   balances and then distribute the plan payments to investors?

21        We think that question, which they have described

22   as the central issue here -- and that is at Paragraph 3 of

23   their brief -- we think that question is resolved by the

24   last sentence of section 3.06(b) of the settlement agreement

25   itself.  And what does that sentence say?  It says, "For the

Page 11

1    avoidance of doubt, this Subsection 3.06(b) is intended only

2    to increase the balances of the related classes of

3    securities as provided for herein and shall not affect the

4    distribution of plan payments on the net allowed claim

5    provided for in Subsection 3.06(a)."

6            We think that sentence speaks directly to the

7    order of operations, and we think it resolves it.  But we're

8    not here to fundamentally resolve the question of the

9    interpretation of the settlement agreement.  The question

10   is, what document is this Court going to have to interpret

11   to resolve the "central issue" of the order of operations.

12           Your Honor, it is telling indeed that in the

13   Trustees' brief, which they submitted yesterday, they have

14   not cited a single provision of the indenturers which they

15   will be asking Your Honor to interpret as to the order of

16   operations issue.

17           We have laid out that we think the issue is a

18   settlement agreement issue; it's a 3.06 issue.  And we're

19   somewhat baffled that they still have not identified these

20   alleged interpretation questions under the indentures.  They

21   haven't cited any provision of the indenturers in their

22   brief.  They talk about the settlement agreement.

23           All right, so that's the first point, Your Honor.

24   We think that the central issue --

25           THE COURT:  Well let me ask a question and maybe

1    we will --

2          MR. SHEEREN:  Yes.

3          THE COURT:  -- do this by way of a little back-

4    and-forth with the Trustee.  Because I guess I'm looking

5    exactly at the language that you are focusing on, which

6    seems to reflect that this is not a finding so much as an

7    observation, which seems to reflect that people thought

8    about this and put in the line settlement agreement language

9    to specifically address it.

10          MR. SHEEREN:  Correct.

11          THE COURT:  But --

12          MR. SHEEREN:  We think the --

13          THE COURT:  So, to take you up --

14          MR. SHEEREN:  -- settlement agreement is clear.

15          THE COURT:  Right.  So, to take you up on your

16    challenge, if you will, if I were to say I am enforcing the

17    settlement agreement as written and direct the Trustees to

18    make distributions in accordance with that language in

19    3.06(a) and 3.06(b), are the Trustees telling me that they

20    wouldn't know what to do?

21          MR. SHEEREN:  I cannot imagine that they wouldn't

22    know what to do for this reason.  That is a clear

23    instruction.  Pay first, write up second.  And then when you

24    look to Section 6.04 of the settlement agreement, Your

25    Honor, what it says is this settlement agreement is not

Page 13

1    intended to amend the governing agreements, but it says

2    something more.  It says if the Trustees distribute the plan

3    payments in conformance with the settlement agreement, they

4    will be deemed to have complied with the terms of the

5    governing agreements.

6         Your Honor, they bargained for that provision

7    because they wanted judicial cover that their distribution

8    of the plan payments in accordance with the settlement

9    agreement, including 3.06(a) and 3.06(b), would be subject

10   to judicial confirmation, and that if someone came in and

11   tried to sue them for distributing the plan payments in that

12   way, they could go carry around that 9019 order that Your

13   Honor signed, which barred holders -- and there's a bar

14   order, Paragraph -- there's a bar order in that 9019,

15   Paragraph 19.  It says certificate holders are barred from

16   suing the Trustees so long as they implement the settlement

17   agreement in accordance with its terms.  And so, we think

18   this is clearly a settlement issue.

19        The Trustees have -- they appear to concede that

20   the governing agreements are silent as to the order of

21   operations issue.  They certainly haven't cited a provision

22   of the governing agreements that goes to the order of

23   operations issue.  So, we don't understand what terms of the

24   indenturers they would be asking the Court to interpret as

25   to this central question.  And I can --

Page 14

1           THE COURT:  Okay.

2           MR. SHEEREN:  -- move on with the argument, unless

3       --

4           THE COURT:  Yeah, I --

5           MR. SHEEREN:  -- unless Your Honor has further

6       questions about that point.

7           THE COURT:  No.  So, that was very helpful.  And

8       again, this isn't an evidentiary hearing, but we've all been

9       at this for a very long time.  And what you appear to be

10      telling me is that people thought about this and the

11      settlement agreement was drafted to take care of this, as

12      opposed to the alternative narrative, which is, oh gee, you

13      know, so focused on settlement in terms of arriving at a

14      vehicle for liquidating the claims, we didn't really focus

15      on the distribution issue, and imagine our surprise to find

16      there is an ambiguity.  Alternatively, and I guess worse --

17      and I'm asking you for your reaction to this -- the Trustees

18      just elected to lay in the weeds.

19           The thing that troubles me the most is this has

20      been around for years, and years, and years.  It's not the

21      Trustees' first rodeo.  We knew we were -- we knew what we

22      were doing for months, and months, and months.  And yet,

23      here we are in April and we're starting -- the Trustees want

24      to go down another path.

25           So, I just am asking for your observations or

1    arguments, because it's not evident, about whether issue was

2    joined on this point back at the time of the settlement

3    agreement or not.  You seem to be telling me that the

4    settlement itself reflects a thoughtful resolution of how to

5    distribute these payments, yes?

6         MR. SHEEREN:  Yes, Your Honor.  That is our

7    position.  Our position is the settlement agreement was

8    drafted by sophisticated parties, and it's clear and speaks

9    for itself.  And the argument that I've made on 3.06(b) on

10   the settlement agreement, that we think that dictates the

11   order of operations, that's absolutely consistent with what

12   we've said in a couple of the prior State Court proceedings.

13   This isn't a new argument.  But I want to talk about that

14   delay point, Your Honor, because I think it is very

15   important, and it's one of our client's key concerns.

16        The question is why did the Trustees wait until

17   the evening before receiving approximately $800 million in

18   plan payments to raise this issue?  We think they have

19   utterly failed to offer any explanation for that.  We think

20   that if they felt this was a real ambiguity or dispute, they

21   were obligated under the settlement agreement, section 3.01

22   -- that's their duty to reasonably -- to use reasonable best

23   effort to promptly distribute the settlement payments, and

24   3.01 says they also have to form a good faith belief that

25   there is a real ambiguity or dispute -- we think they had an

Page 16

1    obligation to raise this back in July of 2017.

2            As Your Honor noted, if they felt it was an

3    ambiguity, they must have known back then because, Your

4    Honor, the Countrywide case where this first came up, the

5    Trustees' petition was filed in February of 2016.  A similar

6    issue was raised in the bankruptcy case of the ResCap

7    matters in July of 2015.

8            So, this was on their radar and it is absolutely

9    wrong to suggest, as the Trustees do, that the institutional

10   investors somehow knew that the Trustees were going to do

11   this, that we somehow agreed to kick the can.  That's not

12   only wrong, it's baffling, Your Honor, because when you look

13   at how the prior cases had been filed and when they were

14   resolved, there was nothing that would've prevented the

15   Trustees from coming to Your Honor and asking for

16   clarification on the order of operation.

17           THE COURT:  Well, here's my observation on that.

18   And Mr. Siegel, you can address this when it's your turn.

19   The entire structure of this very unusual and heavily

20   negotiated settlement revolved around the Trustees'

21   findings.  There is absolutely no reason if the Trustees

22   needed an order, the protection of an order, which it seems

23   like they do, there is absolutely no reason that in the

24   Trustees' findings this issue couldn't have been raised.

25           This is just -- it is -- you know, shocking is too

1    strong a word in the world that we live in, but it's

2    troubling that we have to have this discussion now, when

3    sure as shooting, at least from my perspective, we were

4    done.  We were done.  And I said this at the preliminary go-

5    round on this when Mr. Ostrow was holding down the fort,

6    there's just no way that this couldn't have been raised at

7    an earlier point.

8            And Mr. Siegel, you weren't at the first hearing,

9    and there was some argument that was made that, oh, we

10   couldn't have gone and started an Article 77 proceeding then

11   because we didn't know what trusts were going to be

12   involved.  And that's just flat out wrong.  The only thing,

13   the only high-class problem that, frankly, the -- that folks

14   were going to have -- not from Lehman's perspective -- was

15   that the number -- the claim was going to be greater.  And

16   then the waterfall might have extended farther down.  But

17   there was absolutely no reason why this couldn't have been

18   raised at many, many stages before today.

19           MR. SHEEREN:  And --

20           THE COURT:  And I feel -- obviously, I feel pretty

21   strongly about that.

22           MR. SHEEREN:  Your Honor, David Sheeren.  Just to

23   finish up quickly, they have asked the State Court to weigh

24   in on trusts that account for -- I think the number is

25   around $800 million out of the $940 million that I believe

Page 18

1    has been distributed to the Trustees.  So, the suggestion

2    that they were somehow judicious in selecting the trusts

3    where they're seeking instructions is just wrong.  It

4    appears to us that they have not even analyzed to a large

5    degree whether any of these issues, these alleged issues,

6    make any difference in investors recoveries.

7            Your Honor, we've been in these cases pursuing

8    RMBS claims for six years.  This Court has a unique

9    perspective on the history of these disputes.  The 9019

10   process, which the Trustees bargained for and got a very

11   protective order -- and that's what they needed, and they

12   got it, and it prevents certificate holders from suing the

13   Trustees, so long as they implement the settlement

14   agreement.  And we think the settlement agreement here is

15   very clear.

16           And in any event, if there's a fight about what it

17   means or what it requires, we think this Court is the Court

18   that should exercise that jurisdiction.  And with that, Your

19   Honor, unless you have further questions, I'll cede the

20   floor.

21           THE COURT:  All right.  Thank you.  Mr. Siegel?

22           MR. SIEGEL:  Your Honor, there are so many things

23   I need to respond to, I'm having a little difficulty

24   figuring out in what order I should respond to them.  So,

25   forgive me if I don't respond to them in the order you would

Page 19

1    prefer, although I'm sure you'll tell me if there's

2    something you want to hear about earlier than other things.

3            THE COURT:  Well, Mr. Siegel, I'm going to tell

4    you right at the top, okay?  This is not what proceeding in

5    good faith looks like.  This is not what it looks like to

6    involve the Lehman estate, the Court, the institutional

7    investors, and everyone else in a transparent, good faith

8    process.  That's not what it looks like.  This is what --

9            MR. SIEGEL:  Your Honor --

10           THE COURT:  -- (indiscernible) -- no, Mr. Siegel,

11   you're not going to interrupt me just because I'm not in the

12   courtroom.  This is not what it looks like.  There were

13   many, many, many points during this incredibly lengthy

14   process in which the Trustees, who have never been shy about

15   saying what they don't know and what they can't identify,

16   the Trustees could have been, just to be clear, Your Honor,

17   after this is all over, we are going to commence and Article

18   77 proceeding.

19           If nothing else is clear, nobody said that.

20   Nobody told me that.  At the -- in the middle of February,

21   you knew that I was ruling on March 8th, because everybody

22   knew that we were driving towards the distribution date.

23   Did you start the Article 77 proceeding in February?  No.

24   You started it in April.  Was it raised at the time of the

25   9019 settlement where there could've been findings that

Page 20

1    would protect the Trustees?  No.

2           Did anybody speak up and tell me, oh, by the way,

3    Judge, that order that you're entering that looks like on

4    its face it's directing payments, it's ripe with ambiguity;

5    we're going to have to go do a whole State Court Article 77

6    proceeding?

7           There were countless chamber conferences leading

8    to the settlement, when everybody was torturing themselves

9    over how to get this done, that the concept of an Article 77

10   proceeding, to protect the Trustees came up.  And lo and

11   behold, when the 9019 structure was arrived at, it was

12   hailed as a protective and effective procedure to avoid that

13   whole thing.

14          And now, five -- just kidding, the certificate

15   holders may have to wait another couple of years to get

16   their money.  It's not a good look.  It's not a good look.

17   And the last thing I want to do is take on more work; trust

18   me.  This is just wrong.

19          MR. SIEGEL:  Your Honor, I very much understand

20   your frustration with the process.  And obviously, as a late

21   --

22          THE COURT:  No, no, no.  No, no, no, no, no.  It's

23   not my frustration with the process.  It is my frustration

24   and profound disappointment with the Trustees.

25          MR. SIEGEL:  Understood.  I am only going to do

1    the best I can to explain to you where we are, give you the

2    perspective of the Trustees, and indicate to you what I

3    believe you would have to undertake if in fact you determine

4    that this last issue was an issue that needed to be

5    resolved.

6           I understand Your Honor's feelings about this.

7    I'm certain that the Trustees did not intend to give you

8    this impression.  And I think probably it is most

9    constructive to move forward and talk about where we are now

10   and how we need to get across the finish line.  Is that

11   appropriate, Your Honor?

12          THE COURT:  Truthfully, I find your remarks very

13   patronizing, and you can continue to say whatever you want

14   to say.  Nothing that you said has addressed on the merits

15   any of my points about what has led us to today.  So,

16   instead, what you're going to do now is attempt to, in

17   essence, frighten me by pointing at all the provisions of

18   the governing agreement that I'm going to have to resolve.

19          So, why don't we -- we're going to have to agree

20   to disagree, and Mr. Siegel, why don't I just let you make

21   your points.

22          MR. SIEGEL:  Well, Your Honor, having heard what

23   you've said, then I'm going to take a little bit of a step

24   back and at least give you some of the perspective we have,

25   not to change your mind, because I was not here, I did not

Page 22

1    participate in this proceeding.  So, I understand that you

2    have -- that you have your views on this, and I'm not going

3    to go there.

4              But what I do want to talk about is at least my

5    reading of these documents and my perception, having worked

6    previously with the institutional investors as well, and the

7    one thing I will certainly say is they are well represented,

8    they have been involved in these proceedings for many, many

9    years, and they are familiar with all of these issues.  I --

10   just as this is not the first visit of the Trustees to this

11   rodeo, this is certainly not the first visit of the

12   institutional investors to this rodeo.

13             The issue that we are talking about, which is the

14   order of operations, is an issue that has been raised

15   numerous times in numerous courts and been resolved in a

16   variety of different ways.  When it has economic

17   significance, parties who have points of view as to how to

18   read these documents, I've had an opportunity to be heard,

19   and then the arbiter makes a decision about how the

20   documents are to be read.  When there is not an economic

21   consequence to this, the parties move on and they don't

22   worry about the issue.

23             The reason we are talking about this, among other

24   things, is that the order of operations has economic

25   consequences to a variety of the certificate holders.  I

Page 23

1    mean, it depends on what you get.

2            THE COURT:  Mr. Siegel, at what point in time did

3    the Trustees know that this issue was live in this case?

4    Are you telling me, as a matter of the math, that you did

5    not know that this issue would be in play until I entered my

6    decision?

7            MR. SIEGEL:  What I --

8            THE COURT:  I don't -- I do not under -- as a

9    matter of the math, I do not understand that, because the

10   settle -- the amount of the claim is, frankly, the lowest

11   possible amount that was likely to happen.  Your argument

12   has some sway if you're saying, oh, well look, it's an $11

13   million claim and we didn't realize we were going to be

14   distributing down that far, and therefore, we never raised

15   it.

16           But what you told me three minutes ago was it has

17   been -- it's come up before and it's been raised in numerous

18   courts, and there have been instructions numerous times,

19   putting to one side how I don't really understand how the

20   same provision in indentures gets different readings.

21           I mean, I just don't understand at what point the

22   Trustees just perform under the indentures.  If the point is

23   that every single time they're going to need instruction

24   from a court, and given the low level of the settlement

25   here, you're admitting to me that you knew this was coming

Page 24

1    down the pike.

2            MR. SIEGEL:  The --

3            THE COURT:  And if that's the case, then it seems

4    to me that someone should have told me that, just so you

5    know, Your Honor, after you're all done, we're going to be

6    going -- we're going to be having an Article 77 proceeding.

7            MR. SIEGEL:  Clearly --

8            THE COURT:  So, my narrow question is at what

9    point -- isn't it the case that you knew long before April

10   of 2018 that this order of operations issue was going to be

11   in play?

12           MR. SIEGEL:  Your Honor, first of all, let me just

13   say it is very clear that this is something that it would

14   have been preferable earlier on to flag to this Court.  I

15   can't say otherwise.  We could have avoided a lot of

16   unhappiness if we had simply identified this issue more

17   clearly.  I certainly don't want to give you a different

18   impression.

19           What I do want to indicate to you is the ripeness

20   of this did depend, at least in part, on the scope and

21   extent of the settlement proceeds.  For example, if the

22   number had been higher, the economics that drove the order

23   of operation would have been different, and it might very

24   well have been that some trusts would have been indifferent

25   to the outcome.  You know, money sometimes just solves

1   problems.

2          This is about -- ultimately, the order of

3   operations is about whether you write things up because

4   money has come in that formally was thought not to be coming

5   in, and people were taken out of the money and out of the

6   distribution scheme.  When enough money comes in, that can

7   work itself out.

8          The Trustees had a concern -- and again, perhaps

9   that should have been expressed earlier on to this Court as

10  part of the overall process -- but had a concern that had

11  they gone to the Article 77 court, or had they raise the

12  issue here -- and I will come back to that for a moment --

13  and forgive me, I was not involved in the earlier part of

14  the process, so if I -- if my understanding of what I have

15  is different than yours, it's certainly not intended to be

16  anything other than my honest view of what's going on here.

17         The first thing is, the thought was that if the

18  number was higher or if the number was lower, it was going

19  to impact a different pool of investors.  And one of the

20  things the Trustees wanted to make sure of is that the

21  various certificate holders knew what was at stake for them

22  prior to the commencement of the proceeding, so that they

23  could make a determination whether this was worth fighting

24  for them.

25         I would also make the observation that, at least

1    from my point of view in reading the documents, and indeed,

2    looking at the last sentence of 3.06(b), that the priority

3    here -- particularly from the standpoint of this Court and

4    the administration of the Lehman estate -- was to make sure

5    that there was a settlement of the claim amount between the

6    Lehman estate and the various trusts so that the Lehman

7    estate could go forward and make the distribution it could

8    make to the maximum amount possible to its own creditors.

9            I think that -- first of all, again, I think this

10   is an issue the institutional investors have known about and

11   have been familiar about.  Perhaps it should've been

12   resolved in this Court, but I would suggest to you if that

13   had happened, we would have all still preferred to have done

14   this part of the settlement first, because if we had held

15   up-- if we had held up the settlement -- I'm sorry, the

16   settlement of the gross claim from Lehman to the trusts --

17   if we had held that in order to resolve the order of

18   operation issue, that would have resulted -- delay

19   distribution to Lehman creditors of the amounts that were

20   now freed up.

21           THE COURT:  Mr. Siegel, with all due respect,

22   that's what you call a strawman argument.  It's not about,

23   oh, we didn't deal with this issue because from the Lehman

24   estate's perspective, this needed to be done.  This took

25   long enough, every step of the way, every painful step of

1    the way.

2            If your argument -- the terms of the settlement

3    agreement cut against your argument.  If it were only Lehman

4    on the one hand and distributes, I'll call it, on the other

5    hand, then there would have -- the settlement agreement

6    would have been entirely silent, entirely silent, on this

7    issue.

8            But there's language in the settlement agreement.

9    There's language in the settlement agreement.  The

10   settlement agreement could have said, this settlement

11   agreement shall have no effect whatsoever on how the

12   distributions of the plan payments would be made, and the

13   parties and the Trustees shall commence an Article 77

14   proceeding within 10 days of the entry of this Court's order

15   approving the settlement.  You're all a bunch of really

16   smart lawyers.  It didn't say that.

17           MR. SIEGEL:  But, Your --

18           THE COURT:  What the institutional investors are

19   telling me -- and I don't hear you to have contradicted

20   them, because I know you to be very forthright and honest --

21   is that this was discussed, that there was any crisp sense

22   that notwithstanding the fact that lawyers spent time

23   drafting this language in the settlement agreement, it

24   doesn't really matter because we're just going to go get an

25   Article 77 order.  And it could've been in the Trustees'

1    findings because, as the Trustees have pointed out, it talks

2    about to the extent that there's any open questions, go to a

3    court of competent jurisdiction.

4         I simply do not understand.  If I enter an order,

5    which I think I will, that says that the settlement proceeds

6    shall be distributed in accordance with the settlement

7    agreement, the Trustees better, with specificity, identify

8    why they can't.  Not just a vague, general, dear Justice

9    Friedman, please tell us how to do our job --

10        MR. SIEGEL:  Understood, Your Honor.

11        THE COURT:  -- other than --

12        MR. SIEGEL:  (indiscernible)

13        MR. SIEGEL:  -- other than telling me that this is

14   inevitably going to lead me into interpreting the governing

15   agreement, which I have no intention of doing, you have not

16   specifically identified the specific questions under the

17   governing agreement which I would be being asked to decide.

18        MR. SIEGEL:  Your Honor, I understand that we did

19   not provide you with the specific agreements -- I'm sorry --

20   the specific provisions of the governing agreements in

21   response to these pleadings.  What I can -- I can say two

22   things, though.

23        If you look at Section 3.06 generally, you can see

24   that all of the provisions that are made reference to by the

25   institutional investors are qualified by the terms pursuant

1    to the terms of the governing agreements.  There are

2    repeated references to the governing agreements.

3           I accept the fact that we haven't given you any of

4    the provisions of the governing agreements, but we have

5    those provisions of the governing agreements.  If Your Honor

6    thinks it would be useful, we would provide that to you.

7           What the Trustees do not feel comfortable doing is

8    making the determination on their own in the face of the

9    language of those agreements that the agreements are silent

10   on the point.  That's the term that the institutional

11   investors used.  The term we use in the petition is that

12   they are -- let's see, we say that they do not clearly

13   specify.  But there are provisions that talk about the

14   treatment of subsequent payments.

15          If it would be useful to Your Honor, we can show

16   you what those provisions are.  We do think that the

17   document, as written, makes it clear that 3.06 is only

18   applicable if it does not contradict with the terms of the

19   governing agreements.

20          I appreciate the fact that the institutional

21   investors are unhappy that they found so many of the

22   agreements to have these provisions in them, but we are

23   happy to provide those provisions.

24          I think it Your Honor enters an order that says

25   that we should enforce the agreement and act pursuant to

1    3.06, that doesn't solve the problem completely because

2    unless Your Honor also finds that the terms of the governing

3    agreements do not require a different outcome, I don't know

4    that we will be able to do so, because all 3.06 --

5              THE COURT:   Okay, so Mr. Siegel -- so Mr. Siegel,

6    I'll make that finding.

7              MR. HOUPT:   Christopher Houpt, of Mayer Brown, for

8    Citibank, and I'd like to respond -- and actually, I think

9    this falls on what we were just talking about -- but respond

10   to, as Your Honor, I think, correctly characterized the

11   investors' argument about the last sentence of 3.06(b).  And

12   I will make this point, although as I think you know, my

13   client, Citibank, is not a Trustee, and we were not involved

14   in negotiating the settlement agreement, and we became

15   involved only as we got closer to the payment, because we're

16   the paying agent.

17             But Mr. Sheeren read that last sentence to you and

18   he pointed out that at the time this agreement was being

19   negotiated, the parties, or at least the institutional

20   investors, were aware that the order of operations issue was

21   being litigated under the Countrywide settlement.

22             What he forgot to mention is that the Countrywide

23   settlement had exactly the same language in it.  It was not

24   verbatim, but I can read it to you.  It's pretty close.  And

25   in fact, the Countrywide settlement's language is even more

1   detailed and more robust than what is in the Lehman

2   settlement.

3           And so, as I, someone who was involved in the

4   Countrywide case and did not become involved in the Lehman

5   matter until recently, looked at that language in 3.06(b), I

6   found it hard to believe that that was intended to resolve

7   the ambiguity with respect to the distribution of the

8   Countrywide settlement, because they simply adopted the same

9   language that had been used in the Countrywide settlement.

10          MR. SHEEREN:  if I may respond to that, Your

11  Honor, David Sheeren, with the institutional investors.

12          THE COURT:  I don't know... Again, this is

13  getting to be a little surreal, because I'm hearing --

14  everyone I'm hearing from on the Trustees' side wasn't here

15  before.  And no one is engaging with me on my fundamental

16  question about why we're here now when, according to the

17  Trustees, you know, boy, we really need this instruction,

18  and oh, we've done this countless times.  But nobody

19  bothered.  Nobody bothered making that clear at any earlier

20  point.  And you know what?  It might have made a difference

21  in the institutional investors' willingness to sign on to

22  the settlement.

23          MR. KRAUT:  Your Honor, Michael Kraut, for U.S.

24  Bank.

25          THE COURT:  Well, I find it particularly unhelpful

Page 32

1    to keep hearing from people who weren't here during those

2    years that we spent before today.

3              MR. KRAUT:  Your Honor, Michael Kraut, from Morgan

4    Lewis, for U.S. Bank.  I was here.  Mr. Sheeren was not, but

5    I was, and I can walk you through -- I can answer your

6    questions, Your Honor.  I'm prepared to answer.  I jotted

7    down five quick points I would like to make to address what

8    you've been asking.  I can't be confident that you will be

9    satisfied, but you're entitled to an answer to your

10   question.  So, let me try.

11             THE COURT:  Okay.

12             MR. KRAUT:  First of all, Your Honor asked whether

13   this issue or the possibility of this issue was known a year

14   ago.  It was.  It was known to all parties because of the

15   parallel proceedings, as in the other actions.

16             As Mr. Siegel mentioned before, to have a proper

17   Article 77 or Trust instructional proceeding of any kind, it

18   requires meaningful notice to the affected holders, and that

19   couldn't be done until a month ago.  And we can explain why,

20   if that would be helpful, Your Honor.  We've tried, but we

21   can try a little better.  But that could not have been done

22   until then.

23             THE COURT:  So, just to be very -- just to be

24   nitpicky about it, why wasn't your action commenced on March

25   9th?

1              MR. KRAUT:  Once we found out the amount that was

2     available, the Trustees -- we -- I can only speak for U.S.

3     Bank -- we worked with our investor reporting folks who do

4     calculations.  We talked to the Securities administrators,

5     some of whom are in this court now, but weren't part of that

6     proceeding before.  And we had to try to see which trust

7     would be affected once we knew the amount that was there.

8     That takes a little bit of time to go through hundreds of

9     trusts in a month.  You may disagree, Your Honor, but to me,

10    that was actually very quick.  And for us to be able to do

11    that, we were able to exclude a number of trusts that are

12    not part of this proceeding now because we determined that

13    it would not have a material effect -- issues would not have

14    a material effect on the payment, the intra-trust payments.

15    And therefore, that's what we used that time to do, and to

16    prepare the pleadings to be ready to go on that.  So, that's

17    my first point, Your Honor.

18              The second is -- and I'll apologize on behalf of

19    the Trustees -- we thought we did address this.  We thought

20    by having that provision in the agreement that said, to the

21    extent that the Securities administrators, some of whom are

22    not parties to this proceeding, have questions about this,

23    or as we were watching the way this was playing out and

24    being hard fought in another court, we recognized that there

25    was a possibility that there would not be clarity coming out

Page 34

1   of that proceeding that would solve this issue for all

2   trusts.  There are hundreds of trusts here with different

3   language.  And so, we thought we did raise that by including

4   that provision.

5            Number three, the reason we didn't speak about it

6   with Your Honor is because it never occurred to us that this

7   was an issue for this Court.  In our view, once the money

8   was paid and was in the Trustees' -- had been received by

9   the Trustees, the Trustees what do what they always do,

10  which is to go to a New York court or a trust instructional

11  proceeding court to address these issues.

12           So, if that was oversight on our part, and it

13  sounds like it was, then I apologize for that.  But I hope -

14  - the way I view it is that it reflects our good faith

15  belief that this was never going to be an issue for this

16  Court.  But we should not have assumed that, and we could've

17  raised it.

18           THE COURT:  But hold on.  The institutional

19  investors are telling me that they've been completely

20  blindsided.

21           MR. KRAUT:  Your Honor, that was going to be my

22  fifth point, but I'll make it my fourth point.

23           THE COURT:  Okay.

24           MR. KRAUT:  That's --

25           THE COURT:  Okay, thanks.

1           MR. KRAUT:  That's completely disingenuous, Your

2      Honor.  I sat in rooms with the institutional investors'

3      counsel and with counsel for the plan administrator, and at

4      the time these discussions were ongoing, we included this

5      provision to address this issue because the plan

6      administrator wanted this proceeding to go forward, to get

7      this resolved.  The institutional investors were pushing to

8      get this resolved.  We, of course, wanted it resolved too,

9      Your Honor.  But the decisions were made among the three

10     parties there, and if Mr. Sheeren wasn't involved in those

11     discussions and doesn't know that, then that's fine.  I hope

12     that's all this is.  Because the pressure on the Trustees to

13     not raise issues like that that could bog us down so that we

14     could get this proceeding back on track and forward after

15     all these years was exactly what we were hearing from the

16     plan administrator and from the institutional investors.

17           When we raised issues that seemed like they were

18     things that needed to be dealt with at the time, that could

19     create delay, we were told that we were causing this process

20     to slow down.  And the way-- the three parties, not the

21     Trustees, Your Honor -- the three sets of parties agreed to

22     work through this issue -- was to deal with the issues that

23     would get the money out of the estate, and then at that

24     point the plan administrator wasn't concerned anymore, the

25     institutional investors knew they had their deal, and this

1    could go forward.

2            So, for people to come into Your Honor's court and

3    say that this is all on the Trustees and they're surprised?

4    I know you said earlier that we shouldn't use the word

5    shocked these days, but I'm shocked.

6            And then the last point, Your Honor, is I know you

7    mentioned earlier today, and you said it last time, that the

8    $2.4 billion was the lowest that the Trustees could get.

9    And I think there are two points that I want to respond to

10   on that, Your Honor.

11           The first one is that even if the -- as Mr. Siegel

12   said before, if the number was lower or the number was

13   higher, that could have affected which trusts were part of

14   this proceeding.  So, it wasn't just knowing that there was

15   a minimum.  More trusts or less trusts -- more money or less

16   money could have impacted this.

17           But I will tell you, Your Honor, the way we

18   negotiated this agreement and the discussions that we had,

19   and the way we still read that agreement, there was no

20   certainty to us that $2.4 billion was the low number.  The

21   low -- below $2 billion, we had a right of appeal, and we

22   bargained for that right because we believed that while we

23   thought the claims were worth more, we recognized there was

24   a possibility that the amount could be less.  And so, it was

25   not our understanding then.  It was not our read of the

Page 37

1    agreement then.  And we don't think the agreement provides

2    that.  So, the notion that before March we knew that we were

3    going to get at least $2.4 billion, that's not what the

4    Trustees understood.

5            And those are the points --

6            THE COURT:  Yeah, I --

7            MR. KRAUT:  -- I wanted to raise and I'm happy to

8    listen.

9            THE COURT:  I agree.  I thoroughly agree with your

10   last point and I appreciate your perspective on what the

11   institutional investors may or may have not known.

12           MR. SHEEREN:  Your Honor, may I respond to that?

13   David Sheeren, for the institutional investors.

14           THE COURT:  Yes.

15           MR. SHEEREN:  Thank you.

16           THE COURT:  Of course.

17           MR. SHEEREN:  Your Honor, I have not had the honor

18   or pleasure of appearing before you.  This is the first

19   time.  As counsel here knows, I'm a senior associate at

20   Gibbs & Bruns.  I have been involved in RMBS matters for six

21   years.  I know all of these lawyers very well.  Again, I was

22   involved in every draft settlement agreement.  The

23   suggestion that I'm a new person here, that I'm a stranger,

24   that I don't know what was going on, Your Honor, is wrong.

25   It's just wrong.

1            Let me say this.  3.01 speaks for itself.  It says

2      the Trustees have a duty to use their reasonable best

3      efforts to promptly distribute the settlement payments, and

4      that if they have a good faith belief that there is a real

5      dispute or ambiguity, they can seek judicial relief.

6            Your Honor, that's what the settlement agreement

7      sets.  There was no reason that the Trustees could not have

8      filed this case in July 2017.  The notice issue is a

9      complete red herring.  They could have come to Your Honor

10     and said, look, we think there is a potential ambiguity on

11     the order of operations; let's solve that problem so we

12     don't have a situation where at the end of the estimation

13     proceeding we have an allowed claim, but the true economic

14     creditors, the investors, don't receive their money for two

15     years.  They should have done that.  I think they've

16     admitted that this could have been brought earlier.

17            Another point on the timing, Your Honor.  The

18     suggestion that the Trustees may find more disputes or

19     ambiguities if they received it less money is bizarre.  Your

20     Honor, under these waterfalls, the more money to sort of

21     flow through them, the more likely you are to find problems.

22     And in any event, that is a new explanation for the delay

23     that we didn't see in the papers, that they haven't

24     substantiated in any way, and which I frankly find baffling.

25            I do not understand how the Trustees would have

1    been unable to seek an earlier declaration from this Court

2    that the order of operations is pay first or write up first.

3            There's been some discussion, Your Honor about

4    what the state of the world was back in March and April and

5    May and June of 2017.  I was there.  Here's the state of the

6    world at that time.

7            The Countrywide case had been filed in February of

8    2016.  BNY Mellon said do you pay first or do your write up

9    first?  Three months later, there was unanimous investors'

10   support that the order of operation should be pay first for

11   512 of the 530 trusts.  So, within three months, investors

12   agreed, hey, there is no issue here under the settlement

13   agreement.  That settlement agreement said pay first, write

14   up second, and lo and behold, investors could read that

15   provision and the Court entered an order releasing over $8

16   billion to investors in May 2016 on a pay first basis.

17           But that didn't end the Countrywide case.  There

18   were still a handful of trusts, about a dozen trusts, where

19   there was disputes around another provision in the

20   indentures that had nothing to do with pay first or write up

21   second.  It had to do with a defined term.  I litigated

22   this.  Some counsel in this room litigated this as well.  It

23   had to do with a defined term called the principal

24   distribution amounts, and the parties had different views of

25   what that defined term is and what it required by way of the

1    distributions.

2           We briefed up that question and had an order from

3    Justice Scarpulla in Supreme Court on that second question

4    of what does the principal distribution amount mean in April

5    of 2017?  That's Docket 193 from the Countrywide matter.

6    "Parties do not dispute that the distribution provisions in

7    the settlement agreements" -- this is a reference to the

8    Countrywide settlement agreement -- "direct the Trustee to

9    pay out the allocable share first and then to write up the

10   certificates."

11          So, Your Honor, that decision was issued in April

12   of 2017, and back in May of 2016 there had been a unanimous

13   consensual distribution on pay first, using, as counsel, Mr.

14   Houpt, pointed out, a settlement agreement that had this

15   same provision at the end of the (indiscernible) write up

16   provision.

17          So, the notion that, you know, because of some

18   complications in our Countrywide Article 77, we somehow

19   agreed to kick the can is just flatly disproven by the

20   timing of the Countrywide case, and the fact that we had the

21   resolution of the pay first issue before the Trustees even

22   accepted the lien settlement agreement, Your Honor.

23          But whether or not the settlement agreement at

24   Section 3.06 is dispositive is something Your Honor should

25   determine, because it's wrapped up in the seemingly endless

1      need for judicial cover that these Trustees have displayed

2      throughout these cases.

3              Section 3.01 says there's a threshold before even

4      going and seeking judicial instructions.  That's part of

5      this Court's jurisdiction.  We think the Court should

6      exercise its jurisdiction.  The Trustees have sought to

7      exercise a right to seek judicial relief.  But with that,

8      Your Honor, comes obligations to show that they're

9      exercising that right in an appropriate way, that they've

10     not been hiding the ball for 10 months.

11             And with that, I've responded to the points that I

12     just couldn't leave unopened, Your Honor.

13             MR. HOUPT:  Your Honor, if I may respond to that

14     as briefly as I can?  This is Chris Houpt again for

15     Citibank.

16             THE COURT:  Yes.

17             MR. HOUPT:  There were some general points there

18     and some specific points.  With respect to the supposed

19     endless need for judicial instruction, I think counsel --

20     I'm sure he doesn't mean to misstate this, but obviously,

21     both the Countrywide case and the J.P. Morgan distribution

22     case, they did not involve unanimous investor consent.  They

23     were heavily litigated.  In some trusts, only one investor

24     appeared, and those were resolved quickly because that

25     investor just said, here's what I want to do, and the court

Page 42

1      did it.

2              But on many other trusts, there were numerous

3      investors arguing and filing very long, detailed briefs

4      about why -- you know, why each side was right.  What the

5      institutional investors argued in that case -- I was looking

6      at their brief again this morning -- they did not cite at

7      all in the Countrywide case the language that they say is

8      dispositive here at the end of 3.06(b).  Instead, they

9      argued that the Court needs to interpret the PSAs in light

10     of the prospective supplements.  They argued about the

11     purpose of securitization and the purpose of subordination,

12     and that the Court should enter an order that is consistent

13     with the idea that senior investors get paid first,

14     regardless of what the details in the contract say.

15             They argued about the purpose, not the text, of

16     the settlement agreement.  They quoted trial testimony from

17     my partner, who was involved in drafting that, about what he

18     thought the settlement agreement was intended to do, rather

19     than what it said.  And then they concluded by arguing that

20     the court should interpret the PSAs to give effect to the

21     reasonable commercial expectations of the investor

22     community, as reflected in the Intex model, which is a

23     computer software that investors use for analyzing RMBS cash

24     flows.

25             Now, those arguments were ultimately unsuccessful.

Page 43

1    No one said that they were made in bad faith and no one ever

2    suggested that the Court should simply order us to follow

3    the contracts for all of us to follow the settlement

4    agreement.  No one thought that it was that simple.

5            Now, with respect to the idea that the order of

6    operations issue was resolved promptly in the Countrywide

7    case, that, I believe, was because the Countrywide

8    settlement said explicitly that after the distribution of

9    the allocable share to investors pursuant to a particular

10   paragraph, the Trustee will allocate the amount of the

11   allocable share for that trust in the reverse order, et

12   cetera.

13           That settlement agreement at least had some fairly

14   explicit language about the order.  One thing happens after

15   the other.  That particular language -- sorry for this

16   feedback -- that language is not present in this agreement.

17   Instead, the investors are telling you that this agreement

18   is clear and explicit, and the parties resolved that issue

19   by taking language that was already in the Countrywide

20   settlement agreement, and that the Court in the Countrywide

21   settlement case didn't find relevant to the resolution of

22   the issue under the PSAs.

23           So, I think at a minimum -- and I understand the

24   Court is frustrated with the timing -- but the idea that

25   there is not a good faith need for resolution, and the idea

1   that because we're here today in a proceeding that only the

2   institutional investors have been able to initiate and have

3   been able to appear in, that you're only getting one side of

4   the story, I think it is -- there is no reason at all to

5   think that if we have notice that investors are going to

6   unanimously stand up and condemn the Trustees and say, just

7   order the Trustees to do what the contracts say.  It's

8   absolutely not that simple, and the history confirms that.

9            MR. SHEEREN:  Your Honor, David Sheeren for the

10  institutional investors.  Counsel just read from a brief

11  that we submitted on the dozen or so trusts that I had just

12  described did not involve the pay first issue.  We were

13  debating --

14           THE COURT:  Mm hmm.

15           MR. SHEEREN:  -- the meaning of the principal

16  distribution amount.  The pay first issue --

17           THE COURT:  Yep.

18           MR. SHEEREN:  -- was resolved in May 2016.  In the

19  order that I just read from the Countrywide court that

20  resolved the principal distribution amount dispute, that was

21  issued in --

22           THE COURT:  Yep.

23           MR. SHEEREN:  -- April 2017.  Okay, so that's the

24  context of the timing here.

25           THE COURT:  Okay.  Let me -- I'm just trying to...

1    Very narrow question on pay first.

2              MR. SHEEREN:  Yes.

3              THE COURT:  The institutional investors believe

4    that pay first is conclusively resolved by section 3.06 of

5    the settlement agreement, correct?

6              MR. SHEEREN:  Correct, Your Honor.

7              THE COURT:  Okay.  And on what basis, or what is

8    exactly the Trustees' argument to the contrary?  Section

9    3.06 clearly -- makes it very clear that certificate write

10   up cannot occur before payment.  It's just entirely clear.

11             MR. SHEEREN:  We agree, Your Honor, and at Section

12   3.06(c) it says if the party distributing the payments

13   determines -- and I'm summarizing it -- determines that

14   doing what 3.06(a) and 3.06(b) say to do, they say if that

15   conflicts with the governing agreements, then follow the

16   governing agreements.  But 3.06(a) and (b) provide that

17   clear instruction.  And the Trustees have not cited a single

18   provision of the indenturers that they argue conflicts with

19   that construction, that clear order of operations.

20             THE COURT:  So --

21             MR. SHEEREN:  And that's the nature of our --

22             THE COURT:  So --

23             MR. SHEEREN:  -- complaint.

24             THE COURT:  So, Mr. Siegel, I'll go back to you.

25   I clearly can order and direct that the settlement

Page 46

1    agreement's terms be enforced, including without limitation

2    that payments shall be made in accordance with Section

3    3.06(a)(b) and (c), which in sum and substance say pay

4    first, write up second?  So, you --

5              MR. SIEGEL:  You --

6              THE COURT:  You can go -- right?  I mean, I can

7    say that.  That's obvious.

8              MR. SIEGEL:   Your Honor, you can certainly say

9    that we are required to comply with Section 3.06, because we

10   agreed that we -- not only -- it doesn't matter if we

11   agreed, but we also agree with you that you could do that.

12   Our difficulty is not that point.  Our difficulty is that

13   strewn throughout 3.06 is language that says that this is

14   the case, provided that the governing agreements do not

15   conflict.  So, what we think is --

16             THE COURT:  But it's -- but, sir, you're ignoring

17   the language about that it cannot affect the distribution of

18   plan payments.  And if you did write up first, that would

19   affect the distribution of the plan payments.

20             MR. SIEGEL:  But the distribution of the plan

21   payments --

22             THE COURT:  So, what you're going to tell me --

23   yeah.  It's a circularity, you're going to tell me --

24             MR. SIEGEL:  I mean -- there is --

25             THE COURT:  You have to go into --

1          MR. SIEGEL:  Yeah, I mean, there is a problem with

2     that.  Whatever this means, it can't mean that we have to

3     make a distribution that doesn't comply with the governing

4     agreements.  So, what -- look, what we think at the end of

5     the day is that so long as --

6          THE COURT:  Hold on.  Hold on.  Hold on.  If I

7     were to say -- if I were to make a finding that...  I mean,

8     there's just a level of absurdity to this, frankly, that if

9     I were to say the settlement agreement has to be enforced as

10    written, and the settlement agreement requires pay first,

11    period, you're telling me that that's not good enough?

12         MR. SIEGEL:  Your Honor, what I'm...  If you were

13    to read Section 3.06 to determine that the language that

14    says pursuant to the terms of the governing agreements does

15    not affect the remainder of the provisions, I suppose we

16    would be required to comply with that

17         But Your Honor, if you were to consider doing so,

18    we would feel very strongly that to do so, you would need to

19    give other certificate holders the opportunity to present

20    their own points of view on this.  That is what we are

21    concerned about.  This is ultimately a due process issue for

22    them.

23         MR. SHEEREN:  As to notice, Your Honor, that will

24    be a question you can determine whether that is necessary.

25    This is -- sorry -- David Sheeren for the institutional

1    investors.  Our view would be that the settlement agreement

2    provides clear notice as to the order of operations and that

3    none would be required.

4           However, the issue here is, is this going to be a

5    case that you decide or a case that Justice Friedman in the

6    State Court decides.  And at this moment, Your Honor, we

7    just haven't heard any argument why this Court shouldn't

8    exercise its jurisdiction over issues like whether there

9    should be notice.

10          MR. ITKIN:  Your Honor, this is Uri Itkin, from

11   Kasowitz.  We're here on behalf of the noteholder group, and

12   we were observing in the background.  But I would like just

13   a minute to speak.  While we agree with the --

14          THE COURT:  Wait.  Hold on.  Hold on, I don't know

15   who -- what do you mean, noteholder group?  Who are you?

16          MR. ITKIN: We have appeared in the context of the

17   RMBS estimation proceeding.  We had objected to the 9019

18   motion.

19          THE COURT:  Okay.  Same group.

20          MR. ITKIN:  Yeah, we represent a number of other

21   investors.  And while we agree with the institutional

22   investors that this should be decided expeditiously, and

23   investors certainly want to get paid as soon as possible,

24   our understanding was that this hearing and this proceeding

25   is really about the forum, and not to decide the meaning of

Page 49

1    the document.  And so, we just want to caution the Court

2    about, you know, resolving and interpreting the documents --

3             THE COURT:  Okay.  Hold on.  Hold on.  Hold on.

4    You don't need to caution me about anything.

5             MR. ITKIN:  I apologize, Your Honor.  I --

6             THE COURT:  I understand how to do my job.  The

7    fact that I am not in the room doesn't mean that any of you

8    get to be patronizing and condescending.

9             MR. ITKIN:  Your Honor, that was not at all my

10   content.

11            THE COURT:  Don't caution me.  I'm sure it wasn't

12   your intent.  But people need to be thoughtful about the

13   words that come out of their mouths.  So, start now.  You

14   don't need to caution me.  We are talking about whether or

15   not I'm going to decide these issues, or whether Justice

16   Friedman is.  I'm fully aware of that.

17            MR. ITKIN:  And --

18            THE COURT:  Do you have anything else to say?

19            MR. ITKIN:  No, that was my only intent, Your

20   Honor.  And to the extent that you're going to interpret the

21   settlement agreement here, we just would like an opportunity

22   and maybe some notice -- and it does not have to be long --

23   to weigh in on those issues as well.

24            THE COURT:  Thank you.

25            MR. ITKIN:  Thank you, Your Honor.

1          THE COURT:  Anyone else?

2          MR. HOUPT:  Well, Your Honor, just very briefly.

3    This is Chris Houpt again.  I think it was pointed out to

4    you, but I just want to make sure that it was pointed out in

5    a clear way, that 3.06(b) says what it says.  And then

6    3.06(c) says that if the distributions required by the

7    settlement agreement deviate from the terms of the governing

8    agreements, then we don't follow the settlement agreement,

9    we followed the governing agreements.

10          And so, I think that's exactly the problem with

11   just ordering us to follow the settlement, even assuming

12   that everyone agreed that the settlement was unambiguous on

13   this point, that the settlement expressly defers to the

14   governing agreements.  And it does that because the Trustees

15   and the investors certainly were not permitted, under the

16   terms of those agreements, to amend those agreements.

17          THE COURT:  All right.  All right.

18          MR. SIEGEL:  Your Honor, only one additional

19   point.  The entirety of the Article 77 proceeding actually

20   deals with a number of other issues in addition to this

21   issue.

22          THE COURT:  Yes.

23          MR. SIEGEL:  It deals with zero -- what is it,

24   zero --

25          MAN 1:  Balance.

Page 51

1            MR. SIEGEL:  -- zero balance.  And there was one

2    other issue -- what?

3            MAN 1:  Over-collateralization --

4            THE COURT:  Yes.

5            MR. SIEGEL:  Over-collateralization issues.

6            THE COURT:  You're right.  Yep.

7            MR. SIEGEL:  We -- whether Your Honor decides to

8    hear this or not, we will have to decide what to do with

9    those issues as well.

10           THE COURT:  Yeah, I appreciate that.  You're

11   right.  We were focusing on the one provision, and it's more

12   complicated than that.  Well, obviously I've thought about

13   this, and as you can probably tell, I'm quite unhappy that

14   we have to deal with this issue.

15           This is not an evidentiary record.  I'm not making

16   evidentiary findings, but I find the fact that we're here

17   extremely troubling.  I think that it was having -- I think

18   the due process point is a serious point.  Due process is a

19   nonnegotiable right and it is of concern to me that

20   appropriate notice be given.

21           That being said, this has been going on for a

22   very, very long time, and I do think as a practical matter,

23   that folks with the most skin in the game have certainly

24   kept apprised of what's going on.

25           I find it troubling that this was not brought to

1    my attention and that there was not a crystal-clear

2    understanding that, you know, as they say in the securities

3    trading business, done is done.  Done was not done here.  We

4    had a 9019 process, we had a very long trial, a decision,

5    and I frankly find not satisfying the explanation that it

6    was only upon the rendering of decisions that the Trustees,

7    who have been the Trustees under these indentures for years

8    and years and years, only then began to determine whether

9    and to what extent there would be these issues.

10           I take the point about the possibility that the

11   claim amount could have been lower and there would've been

12   appeal rights, and that's certainly correct.  I have no

13   intention of interpreting the government agreement.  As to

14   that, I am going to abstain.  That's not what I do.  It's

15   not what I have expertise in.  It would not be appropriate

16   for me to do that.

17           What I'm going to direct you to do, it's not

18   entirely clean, if you will, but I will enter an order

19   abstaining, provided however -- not provided however, but

20   also directing that the settlement agreement be enforced

21   strictly in accordance with its terms.  And that I would

22   suggest greatest respect to Justice Friedman for taking on

23   these Herculean tasks.  That when you embark on whatever it

24   is you're going to embark before her, that the questions

25   presented to her be examined through the lens of the

1    language of the settlement agreement.

2           And to the extent that there is any question in

3    her mind as to what the settlement agreement means, I would

4    respectfully request that that question be sent back to me.

5    But to the extent that what happens when you go into the

6    settlement agreement and link it up to the governing

7    agreement is that you're driving a road and you're

8    completely clear how to get to the destination.

9           And then at the very end, if there's a slight

10   ambiguity that requires a detour into the governing

11   agreement, certainly on those questions, I'm not going to

12   offer an opinion.  I do not feel that that would be an

13   appropriate exercise of my jurisdiction.

14          That being said, as I think I've made it pretty

15   clear, and I'm usually -- I hope you all would agree, I'm

16   usually in a better humor most of the time -- the reason for

17   that is I feel that there was a lack of candor here.  I'm

18   hesitating to not use the words bad faith, but I think there

19   was a lack of candor here.  And I think that it's a shock to

20   lots of folks that we were done, and then we were not done.

21          And to the extent that the institutional investors

22   believe they have rights that they can assert in this Court

23   in that regard, I'll hear them.  I think that, you know, the

24   notion that there are going to be further proceedings and

25   that these certificate holders, who have waiting years and

Page 54

1    years and years, frankly, while the Trustees drafted one

2    solution versus another solution to get the comforts that in

3    the exercise of their responsibilities they need, that

4    shouldn't be a cost borne by the certificate holders.  And

5    that's what I feel is happening now.

6         But I am very careful about not getting out ahead

7    of where I believe I should exercise my jurisdiction.  And

8    accordingly, I'm going to direct that you work on an order

9    that reflects the ruling that I've just made, including

10   language that says that this is without prejudice to the

11   rights of the institutional investors to seek whatever

12   relief or assert whatever claims they believe they had with

13   respect to what I'll call, you know, the process points

14   leading up to this, and what I'm concerned about in terms of

15   the candor of the Trustees in making clear that this was

16   going to be the path.  In other words, that done was not

17   done.

18        That's all I have.  I appreciate you coming down

19   and putting up with this slightly unusual format, in light

20   of the fact that I'm having a hard time walking.  And I wish

21   you all a good day.

22        MR. OSTROW:  If you don't mind, we have some

23   questions about what exactly Your Honor has reserved

24   jurisdiction over.

25        THE COURT:  I am -- I don't know that -- it's a

Page 55

1    reservation of jurisdiction only to the extent that Justice

2    Friedman identified questions that she believes require

3    interpretation of the settlement agreement.  As to purely

4    issues of interpretation of the governing agreement that are

5    not otherwise resolved by the settlement agreement, as to

6    that latter category, I am abstaining.

7            MR. OSTROW:  Your Honor, does that mean that we

8    can only come back to you if Justice Friedman says we can,

9    or is there something that come back to you for, such as to

10   enforce the pay first, to enforce the provision that they'll

11   use reasonable best efforts to distribute the amounts as

12   promptly as possible?

13           THE COURT:  That's just getting to the substantive

14   results that you're seeking.  And what I'm saying is that

15   I'm not going to do that.  You can urge to Justice Friedman

16   that the settlement agreement says what you would have it

17   say, and my request and expectation is that the settlement

18   agreement will be enforced in accordance with its terms.  To

19   the extent that Justice Friedman determines that there's a

20   question in that regard, she can determine to send it back

21   to me.  Otherwise, we're just chasing our tails.

22           MR. OSTROW:  Okay.  Thank you, Your Honor.

23           THE COURT:  I know it's not -- it may not be the

24   most crystal-clear proposition.  It's the best I can do.

25           MR. OSTROW:  Thank you.

Page 56

1            THE COURT:  You can work on in order and I have a

2    high degree of confidence you won't agree.

3            MR. OSTROW:  Okay.

4            THE COURT:  But at least try to work on an order

5    on a consensual basis.

6            ALL:  Thank you, Your Honor.

7            THE COURT:  All right.  Thank you, folks.

8      (Whereupon these proceedings were concluded at 11:25 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 57

```
 1                    C E R T I F I C A T I O N

 2

 3        I, Sonya Ledanski Hyde, certified that the foregoing

 4    transcript is a true and accurate record of the proceedings.

 5

 6        Sonya                 Digitally signed by Sonya Ledanski
                                 Hyde
                                 DN: cn=Sonya Ledanski Hyde, o, ou,
 7        Ledanski Hyde         email=digital1@veritext.com, c=US
                                 Date: 2018.04.23 16:22:00 -04'00'

 8    Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  April 23, 2018
```

**&**

**&**  3:3,10,17 4:1,2
4:18 5:9,17 6:3,6
7:11 8:13 37:20

**0**

**08-13555**  1:3

**1**

**1**  50:25 51:3
**10**  27:14 41:10
**10004**  1:14
**10016**  4:5
**10019**  3:20
**10020**  5:4
**10022**  4:21
**101**  5:19
**10171**  3:6
**10178**  5:20
**10:06**  1:17
**11**  23:12
**1100**  3:12
**11501**  57:23
**11:25**  56:8
**1201**  5:12
**1221**  5:3
**1633**  3:19
**19**  1:16 13:15
**193**  40:5

**2**

**2**  36:21
**2.4**  36:8,20 37:3
**2015**  16:7
**2016**  16:5 39:8,16
40:12 44:18
**2017**  16:1 38:8
39:5 40:5,12
44:23
**2018**  1:16 24:10
57:25
**2200**  4:11
**23**  57:25
**23rd**  6:23

**299**  3:5

**3**

**3**  10:22
**3.01**  9:18 15:21,24
38:1 41:3
**3.01.**  9:23
**3.06**  10:8,10,13,13
10:24 11:1,5,18
12:19,19 13:9,9
15:9 26:2 28:23
29:17 30:1,4,11
31:5 40:24 42:8
45:4,9,12,14,14
45:16 46:3,9,13
47:13 50:5,6
**3.06.**  10:5
**300**  57:22
**30309**  5:13
**330**  57:21

**4**

**488**  4:20

**5**

**512**  39:11
**530**  39:11
**5300**  3:12
**55402**  4:13
**57838**  2:1

**6**

**6.04**  12:24

**7**

**77**  17:10 19:18,23
20:5,9 24:6 25:11
27:13,25 32:17
40:18 50:19
**77002**  3:13

**8**

**8**  39:15
**800**  15:17 17:25
**8th**  19:21

**9**

**90**  4:4,12
**9019**  13:12,14
18:9 19:25 20:11
48:17 52:4
**940**  17:25
**9th**  32:25

**a**

**able**  30:4 33:10,11
44:2,3
**absent**  7:19
**absolutely**  9:9
15:11 16:8,21,23
17:17 44:8
**abstain**  52:14
**abstaining**  52:19
55:6
**absurdity**  47:8
**accept**  29:3
**accepted**  40:22
**account**  17:24
**accurate**  57:4
**act**  8:17 29:25
**action**  8:23 32:24
**actions**  32:15
**addition**  50:20
**additional**  50:18
**address**  7:1 8:14
8:15 12:9 16:18
32:7 33:19 34:11
35:5
**addressed**  21:14
**administration**
26:4
**administrator**
7:12 35:3,6,16,24
**administrators**
6:10 33:4,21
**admitted**  38:16
**admitting**  23:25
**adopted**  31:8
**affect**  11:3 46:17
46:19 47:15

**agent**  30:16
**ago**  23:16 32:14
32:19
**agree**  9:23 21:17
37:9,9 45:11
46:11 48:13,21
53:15 56:2
**agreed**  7:16 16:11
35:21 39:12 40:19
46:10,11 50:12
**agreement**  8:11
9:1,3,12,14,17,25
10:6,24 11:9,18
11:22 12:8,14,17
12:24,25 13:3,9
13:17 14:11 15:3
15:7,10,21 18:14
18:14 21:18 27:3
27:5,8,9,10,11,23
28:7,15,17 29:25
30:14,18 33:20
36:18,19 37:1,1
37:22 38:6 39:13
39:13 40:8,14,22
40:23 42:16,18
43:4,13,16,17,20
45:5 47:9,10 48:1
49:21 50:7,8
52:13,20 53:1,3,6
53:7,11 55:3,4,5
55:16,18
**agreement's**  46:1
**agreements**  10:12
13:1,5,20,22
28:19,20 29:1,2,4
29:5,9,9,19,22
30:3 40:7 45:15
45:16 46:14 47:4
47:14 50:8,9,14
50:16,16
**ahead**  54:6
**alec**  3:8 6:2

**alexander** 4:7
**alleged** 10:16
  11:20 18:5
**allocable** 40:9
  43:9,11
**allocate** 43:10
**allowed** 11:4
  38:13
**alston** 4:1 5:9
**alternative** 14:12
**alternatively**
  14:16
**ambiguities** 38:19
**ambiguity** 14:16
  15:20,25 16:3
  20:4 31:7 38:5,10
  53:10
**amend** 13:1 50:16
**americas** 5:3
**amount** 23:10,11
  26:5,8 33:1,7
  36:24 40:4 43:10
  44:16,20 52:11
**amounts** 26:19
  39:24 55:11
**analyzed** 18:4
**analyzing** 42:23
**answer** 32:5,6,9
**anti** 8:17
**anybody** 20:2
**anymore** 35:24
**apologize** 6:11
  33:18 34:13 49:5
**appeal** 36:21
  52:12
**appear** 13:19 14:9
  44:3
**appearance** 7:15
**appeared** 41:24
  48:16
**appearing** 37:18
**appears** 18:4

**applicability** 8:17
**applicable** 29:18
**appreciate** 8:20
  29:20 37:10 51:10
  54:18
**apprised** 51:24
**appropriate**
  21:11 41:9 51:20
  52:15 53:13
**approving** 27:15
**approximately**
  15:17
**april** 1:16 6:23
  14:23 19:24 24:9
  39:4 40:4,11
  44:23 57:25
**arbiter** 22:19
**argue** 45:18
**argued** 42:5,9,10
  42:15
**arguing** 42:3,19
**argument** 14:2
  15:9,13 17:9
  23:11 26:22 27:2
  27:3 30:11 45:8
  48:7
**arguments** 15:1
  42:25
**arrived** 20:11
**arriving** 14:13
**article** 17:10
  19:17,23 20:5,9
  24:6 25:11 27:13
  27:25 32:17 40:18
  50:19
**asked** 6:22 7:1,7
  8:25 9:15 17:23
  28:17 32:12
**asking** 11:15
  13:24 14:17,25
  16:15 32:8
**assert** 53:22 54:12

**associate** 37:19
**assumed** 34:16
**assuming** 50:11
**atlanta** 5:13
**atlantic** 5:11
**attempt** 21:16
**attention** 52:1
**attorney** 3:18
**attorneys** 3:4,11
  4:2,10,19 5:2,10
  5:18
**available** 33:2
**avenue** 3:5 4:4,20
  5:3,19
**avoid** 20:12
**avoidance** 11:1
**avoided** 24:15
**aware** 8:1,2 30:20
  49:16

**b**

**b** 1:21 2:2 10:13
  10:13,24 11:1
  12:19 13:9 15:9
  26:2 30:11 31:5
  42:8 45:14,16
  46:3 50:5
**back** 12:3 15:2
  16:1,3 21:24
  25:12 35:14 39:4
  40:12 45:24 53:4
  55:8,9,20
**background**
  48:12
**bad** 43:1 53:18
**baffled** 11:19
**baffling** 16:12
  38:24
**baker** 4:9
**balance** 50:25
  51:1
**balances** 10:14,19
  10:20 11:2

**ball** 9:3 41:10
**bank** 4:10,19 5:18
  6:9 31:24 32:4
  33:3
**bankruptcy** 1:1
  1:12,23 6:24 7:8
  7:20 8:15 16:6
**bar** 13:13,14
**bargained** 13:6
  18:10 36:22
**barred** 13:13,15
**basis** 39:16 45:7
  56:5
**becker** 3:3 6:2
**began** 52:8
**behalf** 2:3 6:9
  33:18 48:11
**behold** 20:11
  39:14
**belief** 15:24 34:15
  38:4
**believe** 6:23 7:4
  7:24 9:12 17:25
  21:3 31:6 43:7
  45:3 53:22 54:7
  54:12
**believed** 36:22
**believes** 55:2
**benson** 3:17
**best** 10:3 15:22
  21:1 38:2 55:11
  55:24
**better** 28:7 32:21
  53:16
**billion** 36:8,20,21
  37:3 39:16
**bird** 4:1 5:9
**bit** 21:23 33:8
**bizarre** 38:19
**blindsided** 34:20
**bny** 39:8
**bockius** 5:17

bog  35:13
borne  54:4
bothered  31:19,19
bowling  1:13
boy  31:17
brief  10:23 11:13
  11:22 42:6 44:10
briefed  40:2
briefly  41:14 50:2
briefs  42:3
broadway  3:19
brothers  1:7
brought  38:16
  51:25
brown  5:1 30:7
bruns  3:10 6:6
  8:13 37:20
bunch  27:15
burgo  3:23
business  52:3

**c**

c  1:22 3:1 6:1
  45:12 46:3 50:6
  57:1,1
calculations  33:4
call  6:23 7:2,8,17
  26:22 27:4 54:13
called  39:23
candor  53:17,19
  54:15
care  14:11
careful  54:6
carry  13:12
case  1:3 7:6 10:17
  16:4,6 23:3 24:3,9
  31:4 38:8 39:7,17
  40:20 41:21,22
  42:5,7 43:7,21
  46:14 48:5,5
cases  16:13 18:7
  41:2
cash  42:23

category  55:6
cause  2:2 7:3,4,14
  7:17,22
causing  35:19
caution  49:1,4,11
  49:14
cede  18:19
center  4:11 5:11
central  10:17,22
  11:11,24 13:25
certain  21:7
certainly  8:1
  13:21 22:7,11
  24:17 25:15 46:8
  48:23 50:15 51:23
  52:12 53:11
certainty  36:20
certificate  10:14
  10:19,19 13:15
  18:12 20:14 22:25
  25:21 45:9 47:19
  53:25 54:4
certificates  40:10
certified  57:3
cetera  43:12
challenge  12:16
chamber  20:7
change  21:25
chapman  1:22
characterized
  30:10
chasing  55:21
chassin  3:3 6:3
chester  2:2
chris  41:14 50:3
christopher  5:7
  30:7
circularity  46:23
cite  42:6
cited  11:14,21
  13:21 45:17
citibank  5:2 30:8
  30:13 41:15

claim  11:4 17:15
  23:10,13 26:5,16
  38:13 52:11
claims  14:14 18:8
  36:23 54:12
clarification
  16:16
clarity  33:25
class  17:13
classes  11:2
clean  52:18
clear  10:9 12:14
  12:22 15:8 18:15
  19:16,19 24:13
  29:17 31:19 43:18
  45:9,10,17,19
  48:2 50:5 52:1
  53:8,15 54:15
  55:24
clearly  13:18 24:7
  24:17 29:12 45:9
  45:25
client  30:13
client's  15:15
close  30:24
closer  30:15
collateralization
  51:3,5
come  9:25 23:17
  25:4,12 36:2 38:9
  49:13 55:8,9
comes  25:6 41:8
comfortable  29:7
comforts  54:2
coming  16:15
  23:25 25:4 33:25
  54:18
commence  19:17
  27:13
commenced  32:24
commencement
  25:22

commercial  42:21
community  42:22
company  4:3
competent  28:3
complaint  45:23
complete  38:9
completely  30:1
  34:19 35:1 53:8
complicated
  51:12
complications
  40:18
complied  13:4
comply  46:9 47:3
  47:16
computer  42:23
concede  13:19
concept  20:9
concern  25:8,10
  51:19
concerned  9:4
  35:24 47:21 54:14
concerns  15:15
concluded  42:19
  56:8
conclusively  45:4
condemn  44:6
condescending
  49:8
conference  7:17
conferences  20:7
confidence  56:2
confident  32:8
confirmation
  13:10
confirms  44:8
conflict  46:15
conflicts  45:15,18
conformance  13:3
connection  10:14
consensual  40:13
  56:5

consent 41:22
consequence 22:21
consequences 22:25
consider 47:17
consistent 15:11 42:12
construction 45:19
constructive 21:9
content 49:10
context 44:24 48:16
continue 21:13
contract 42:14
contracts 43:3 44:7
contradict 29:18
contradicted 27:19
contrary 45:8
control 9:18
correct 12:10 45:5 45:6 52:12
correctly 30:10
cost 54:4
could've 19:25 27:25 34:16
counsel 6:3 35:3,3 37:19 39:22 40:13 41:19 44:10
countless 20:7 31:18
country 57:21
countrywide 16:4 30:21,22,25 31:4 31:8,9 39:7,17 40:5,8,18,20 41:21 42:7 43:6,7 43:19,20 44:19
couple 7:1 15:12 20:15

course 35:8 37:16
court 1:1,12 6:11 6:18,25 7:5,13,20 7:25 8:4,20 9:13 9:20,22 10:1,5 11:10,25 12:3,11 12:13,15 13:24 14:1,4,7 15:12 16:17 17:20,23 18:8,17,17,21 19:3,6,10 20:5,22 21:12 23:2,8,24 24:3,8,14 25:9,11 26:3,12,21 27:18 28:3,11 30:5 31:12,25 32:11,23 33:5,24 34:7,10 34:11,16,18,23,25 36:2 37:6,9,14,16 39:1,15 40:3 41:5 41:16,25 42:9,12 42:20 43:2,20,24 44:14,17,19,22,25 45:3,7,20,22,24 46:6,16,22,25 47:6 48:6,7,14,19 49:1,3,6,11,18,24 50:1,17,22 51:4,6 51:10 53:22 54:25 55:13,23 56:1,4,7
court's 27:14 41:5
courtroom 19:12
courts 22:15 23:18
cover 13:7 41:1
create 35:19
creditors 26:8,19 38:14
crisp 27:21
crystal 52:1 55:24
current 6:17
cut 27:3

**d**

d 5:6 6:1
daniels 4:9
date 19:22 57:25
david 3:15 5:15 6:5,19 17:22 31:11 37:13 44:9 47:25
day 47:5 54:21
days 27:14 36:5
deal 26:23 35:22 35:25 51:14
deals 50:20,23
dealt 35:18
dear 28:8
debating 44:13
debtor 1:9
decide 28:17 48:5 48:25 49:15 51:8
decided 48:22
decides 48:6 51:7
decision 22:19 23:6 40:11 52:4
decisions 35:9 52:6
declaration 39:1
deemed 13:4
defers 50:13
defined 39:21,23 39:25
degree 18:5 56:2
delay 15:14 26:18 35:19 38:22
depend 24:20
depends 23:1
described 10:21 44:12
destination 53:8
detailed 31:1 42:3
details 42:14
determination 25:23 29:8

determine 21:3 40:25 47:13,24 52:8 55:20
determined 33:12
determines 45:13 45:13 55:19
detour 53:10
deviate 50:7
dictates 10:7 15:10
difference 18:6 31:20
different 22:16 23:20 24:17,23 25:15,19 30:3 34:2 39:24
difficulty 18:23 46:12,12
direct 12:17 40:8 45:25 52:17 54:8
directing 20:4 52:20
directly 11:6
disagree 21:20 33:9
disappointment 20:24
discussed 27:21
discussion 17:2 39:3
discussions 8:9 35:4,11 36:18
disingenuous 35:1
displayed 41:1
dispositive 40:24 42:8
disproven 40:19
dispute 15:20,25 38:5 40:6 44:20
disputes 18:9 38:18 39:19
distribute 10:3,7 10:11,17,20 13:2

[distribute - finding]                                                    Page 5

15:5,23 38:3
55:11
**distributed** 18:1
28:6
**distributes** 27:4
**distributing** 13:11
23:14 45:12
**distribution** 10:15
11:4 13:7 14:15
19:22 25:6 26:7
26:19 31:7 39:24
40:4,6,13 41:21
43:8 44:16,20
46:17,19,20 47:3
**distributions** 8:12
12:18 27:12 40:1
50:6
**district** 1:2
**divide** 8:8
**doc** 2:1
**docket** 40:5
**docketed** 7:22
**document** 11:10
29:17 49:1
**documents** 22:5
22:18,20 26:1
49:2
**doing** 14:22 28:15
29:7 45:14 47:17
**doubt** 11:1
**dove** 9:4
**dozen** 39:18 44:11
**draft** 37:22
**drafted** 14:11
15:8 54:1
**drafting** 27:23
42:17
**driving** 19:22
53:7
**drove** 24:22
**due** 26:21 47:21
51:18,18

**duty** 15:22 38:2

**e**

**e** 1:21,21 3:1,1
5:22 6:1,1 57:1
**earlier** 17:7 19:2
24:14 25:9,13
31:19 36:4,7
38:16 39:1
**economic** 22:16
22:20,24 38:13
**economics** 24:22
**ecro** 1:25
**edits** 7:5
**effect** 7:6 27:11
33:13,14 42:20
**effective** 20:12
**effort** 7:14 15:23
**efforts** 10:3 38:3
55:11
**elected** 14:18
**embark** 52:23,24
**endless** 40:25
41:19
**enforce** 29:25
55:10,10
**enforced** 46:1
47:9 52:20 55:18
**enforcing** 12:16
**engaging** 31:15
**enter** 6:21 28:4
42:12 52:18
**entered** 23:5
39:15
**entering** 20:3
**enters** 29:24
**entire** 16:19
**entirely** 27:6,6
45:10 52:18
**entirety** 50:19
**entitled** 32:9
**entry** 27:14
**essence** 21:17

**estate** 19:6 26:4,6
26:7 35:23
**estate's** 26:24
**estimation** 38:12
48:17
**et** 43:11
**evening** 15:17
**event** 18:16 38:22
**everybody** 19:21
20:8
**evident** 15:1
**evidentiary** 14:8
51:15,16
**exactly** 12:5 30:23
35:15 45:8 50:10
54:23
**examined** 52:25
**example** 24:21
**exclude** 33:11
**exercise** 7:21
18:18 41:6,7 48:8
53:13 54:3,7
**exercising** 41:9
**expect** 6:10
**expectation** 55:17
**expectations**
42:21
**expeditiously**
48:22
**expertise** 52:15
**explain** 21:1
32:19
**explanation** 15:19
38:22 52:5
**explicit** 43:14,18
**explicitly** 43:8
**expressed** 25:9
**expressly** 50:13
**extended** 17:16
**extent** 24:21 28:2
33:21 49:20 52:9
53:2,5,21 55:1,19

**extremely** 51:17

**f**

**f** 1:21,25 57:1
**face** 20:4 29:8
**fact** 21:3 27:22
29:3,20 30:25
40:20 49:7 51:16
54:20
**faegre** 4:9
**failed** 15:19
**fairly** 43:13
**faith** 15:24 19:5,7
34:14 38:4 43:1
43:25 53:18
**falls** 30:9
**familiar** 8:10 22:9
26:11
**far** 7:25 9:3 23:14
**fargo** 4:10,11,19
7:11
**farther** 17:16
**february** 16:5
19:20,23 39:7
**feedback** 43:16
**feel** 17:20,20 29:7
47:18 53:12,17
54:5
**feelings** 21:6
**felt** 15:20 16:2
**ferguson** 1:25
**fifth** 34:22
**fight** 18:16
**fighting** 25:23
**figuring** 18:24
**filed** 2:2 7:15,17
16:5,13 38:8 39:7
**filing** 42:3
**find** 14:15 21:12
31:25 38:18,21,24
43:21 51:16,25
52:5
**finding** 12:6 30:6
47:7

[findings - hiding]                                                                                         Page 6

**findings**  16:21,24
  19:25 28:1 51:16
**finds**  30:2
**fine**  35:11
**finish**  17:23 21:10
**firm**  6:6
**first**  8:5,24 10:4
  10:18,19 11:23
  12:23 14:21 16:4
  17:8 22:10,11
  24:12 25:17 26:9
  26:14 32:12 33:17
  36:11 37:18 39:2
  39:2,8,9,10,13,16
  39:20 40:9,13,21
  42:13 44:12,16
  45:1,4 46:4,18
  47:10 55:10
**five**  20:14 32:7
**flag**  24:14
**flat**  17:12
**flatly**  40:19
**floor**  18:20
**flow**  38:21
**flows**  42:24
**focus**  14:14
**focused**  14:13
**focusing**  12:5
  51:11
**folks**  17:13 33:3
  51:23 53:20 56:7
**follow**  43:2,3
  45:15 50:8,11
**followed**  50:9
**following**  6:23
  7:17 9:22
**foregoing**  57:3
**forgive**  18:25
  25:13
**forgot**  30:22
**form**  7:2 15:24
**formally**  25:4

**format**  6:12 54:19
**fort**  17:5
**forth**  12:4
**forthright**  27:20
**forum**  48:25
**forward**  6:21 8:3
  21:9 26:7 35:6,14
  36:1
**fought**  33:24
**found**  29:21 31:6
  33:1
**fourth**  34:22
**frankly**  17:13
  23:10 38:24 47:8
  52:5 54:1
**freed**  26:20
**friedman**  3:17
  6:21 8:1 28:9 48:5
  49:16 52:22 55:2
  55:8,15,19
**frighten**  21:17
**frustrated**  43:24
**frustration**  20:20
  20:23,23
**fully**  49:16
**fundamental**
  31:15
**fundamentally**
  9:17 11:8
**further**  10:1 14:5
  18:19 53:24

**g**

**g**  6:1
**ga**  5:13
**game**  51:23
**gee**  14:12
**general**  28:8
  41:17
**generally**  28:23
**getting**  6:14 31:13
  44:3 54:6 55:13
**gibbs**  3:10 6:6
  8:13 37:20

**give**  6:17 7:12
  21:1,7,24 24:17
  42:20 47:19
**given**  23:24 29:3
  51:20
**glenn**  5:22 6:8
**glynn**  3:3 6:2
**go**  8:24 13:12
  14:24 17:4 20:5
  22:3 26:7 27:24
  28:2 33:8,16
  34:10 35:6 36:1
  45:24 46:6,25
  53:5
**goes**  13:22
**going**  9:1 11:10
  16:10 17:11,14,15
  19:3,11,17 20:5
  20:25 21:16,18,19
  21:23 22:2 23:13
  23:23 24:5,6,6,10
  25:16,18 27:24
  28:14 34:15,21
  37:3,24 41:4 44:5
  46:22,23 48:4
  49:15,20 51:21,24
  52:14,17,24 53:11
  53:24 54:8,16
  55:15
**good**  6:5,8 7:10
  15:24 19:5,7
  20:16,16 34:14
  38:4 43:25 47:11
  54:21
**governing**  9:3
  10:12 13:1,5,20
  13:22 21:18 28:14
  28:17,20 29:1,2,4
  29:5,19 30:2
  45:15,16 46:14
  47:3,14 50:7,9,14
  53:6,10 55:4

**government**  52:13
**great**  9:8
**greater**  17:15
**greatest**  52:22
**green**  1:13
**gross**  26:16
**group**  48:11,15,19
**guess**  12:4 14:16

**h**

**hahn**  4:18 7:11
**hailed**  20:12
**hand**  27:4,5
**handful**  39:18
**happen**  23:11
**happened**  6:24
  26:13
**happening**  54:5
**happens**  43:14
  53:5
**happy**  8:18 29:23
  37:7
**hard**  6:13 31:6
  33:24 54:20
**hear**  8:5,19,22
  19:2 27:19 51:8
  53:23
**heard**  21:22 22:18
  48:7
**hearing**  2:1 6:20
  6:24 7:9 9:6 14:8
  17:8 31:13,14
  32:1 35:15 48:24
**heavily**  16:19
  41:23
**held**  26:14,15,17
**helpful**  14:7 32:20
**herculean**  52:23
**herring**  38:9
**hesitating**  53:18
**hessen**  4:18 7:11
**hey**  39:12
**hiding**  41:10

**high** 17:13 56:2
**higher** 24:22
25:18 36:13
**history** 18:9 44:8
**hmm** 44:14
**hold** 34:18 47:6,6
47:6 48:14,14
49:3,3,3
**holders** 13:13,15
18:12 20:15 22:25
25:21 32:18 47:19
53:25 54:4
**holding** 17:5
**holdings** 1:7
**hon** 1:22
**honest** 25:16
27:20
**honor** 6:5,8,19 7:6
8:6,18 9:9,10,16
9:21 10:16 11:12
11:15,23 12:25
13:6,13 14:5 15:6
15:14 16:2,4,12
16:15 17:22 18:7
18:19,22 19:9,16
20:19 21:11,22
24:5,12 28:10,18
29:5,15,24 30:2
30:10 31:11,23
32:3,6,12,20 33:9
33:17 34:6,21
35:2,9,21 36:6,10
36:17 37:12,17,17
37:24 38:6,9,17
38:20 39:3 40:11
40:22,24 41:8,12
41:13 44:9 45:6
45:11 46:8 47:12
47:17,23 48:6,10
49:5,9,20,25 50:2
50:18 51:7 54:23
55:7,22 56:6

**honor's** 21:6 36:2
**hope** 34:13 35:11
53:15
**hosinski** 3:3 6:3
**houpt** 5:7 30:7,7
40:14 41:13,14,17
50:2,3
**houston** 3:13
**humor** 53:16
**hundreds** 33:8
34:2
**hyde** 2:25 57:3,8

**i**

**idea** 42:13 43:5,24
43:25
**identified** 11:19
24:16 28:16 55:2
**identify** 19:15
28:7
**ignoring** 46:16
**imagine** 12:21
14:15
**impact** 25:19
**impacted** 36:16
**implement** 13:16
18:13
**important** 15:15
**importantly** 10:2
10:16
**impression** 21:8
24:18
**included** 35:4
**includes** 7:22
**including** 7:15
13:9 34:3 46:1
54:9
**increase** 11:2
**incredibly** 19:13
**indenturers** 9:11
11:14,21 13:24
45:18
**indentures** 11:20
23:20,22 39:20

52:7
**indicate** 21:2
24:19
**indicated** 7:19
**indifferent** 24:24
**indiscernible**
19:10 28:12 40:15
**inevitably** 28:14
**initiate** 44:2
**injunction** 8:17
**institutional** 2:3
3:4,11 6:3,7,20
7:16 16:9 19:6
22:6,12 26:10
27:18 28:25 29:10
29:20 30:19 31:11
31:21 34:18 35:2
35:7,16,25 37:11
37:13 42:5 44:2
44:10 45:3 47:25
48:21 53:21 54:11
**instruction** 10:1
10:10 12:23 23:23
31:17 41:19 45:17
**instructional**
32:17 34:10
**instructions** 18:3
23:18 41:4
**intend** 21:7
**intended** 11:1
13:1 25:15 31:6
42:18
**intends** 7:21
**intent** 49:12,19
**intention** 28:15
52:13
**interested** 7:14
9:6
**interpret** 8:25
9:13 11:10,15
13:24 42:9,20
49:20

**interpretation** 9:2
9:11 11:9,20 55:3
55:4
**interpreting**
28:14 49:2 52:13
**interrupt** 19:11
**intex** 42:22
**intra** 33:14
**investor** 33:3
41:22,23,25 42:21
**investors** 2:3 3:4
3:11 6:4,7,20 7:16
10:11,18,20 16:10
18:6 19:7 22:6,12
25:19 26:10 27:18
28:25 29:11,21
30:11,20 31:11,21
34:19 35:2,7,16
35:25 37:11,13
38:14 39:9,11,14
39:16 42:3,5,13
42:23 43:9,17
44:2,5,10 45:3
48:1,21,22,23
50:15 53:21 54:11
**involve** 9:2 19:6
41:22 44:12
**involved** 17:12
22:8 25:13 30:13
30:15 31:3,4
35:10 37:20,22
42:17
**issue** 7:3 8:16
9:16 10:17,22
11:11,16,17,18,18
11:24 13:18,21,23
14:15 15:1,18
16:6,24 21:4,4
22:13,14,22 23:3
23:5 24:10,16
25:12 26:10,18,23
27:7 30:20 32:13
32:13 34:1,7,15

35:5,22 38:8
39:12 40:21 43:6
43:18,22 44:12,16
47:21 48:4 50:21
51:2,14
**issued** 40:11
44:21
**issues** 7:2 8:15,22
9:4 18:5,5 22:9
33:13 34:11 35:13
35:17,22 48:8
49:15,23 50:20
51:5,9 52:9 55:4
**itkin** 3:22 48:10
48:10,16,20 49:5
49:9,17,19,25

**j**

**j** 3:23 5:7
**j.p.** 41:21
**jarman** 5:6
**job** 28:9 49:6
**joined** 15:2
**jotted** 32:6
**judge** 1:23 7:7,10
7:25 20:3
**judge's** 7:18,19
**judicial** 10:1 13:7
13:10 38:5 41:1,4
41:7,19
**judicious** 18:2
**july** 16:1,7 38:8
**june** 39:5
**jurisdiction** 7:21
8:15 18:18 28:3
41:5,6 48:8 53:13
54:7,24 55:1
**jurisdictional**
8:21
**justice** 6:21 28:8
40:3 48:5 49:15
52:22 55:1,8,15
55:19

**k**

**kasowitz** 3:17
48:11
**keep** 32:1
**kept** 51:24
**key** 15:15
**kick** 16:11 40:19
**kidding** 20:14
**kind** 32:17
**knee** 6:13
**knew** 14:21,21
16:10 19:21,22
23:25 24:9 25:21
33:7 35:25 37:2
**know** 6:12 8:22
12:20,22 14:13
16:25 17:11 19:15
23:3,5 24:5,25
27:20 30:3,12
31:12,17,20 35:11
36:4,6 37:21,24
40:17 42:4 48:14
49:2 52:2 53:23
54:13,25 55:23
**knowing** 36:14
**known** 16:3 26:10
32:13,14 37:11
**knows** 37:19
**kraut** 5:23 31:23
31:23 32:3,3,12
33:1 34:21,24
35:1 37:7

**l**

**l** 4:15
**lack** 53:17,19
**laid** 9:12 11:17
**language** 12:5,8
12:18 27:8,9,23
29:9 30:23,25
31:5,9 34:3 42:7
43:14,15,16,19
46:13,17 47:13
53:1 54:10

**large** 18:4
**late** 20:20
**law** 7:18,19
**lawyers** 27:16,22
37:21
**lay** 9:15 14:18
**lead** 6:10 28:14
**leading** 20:7
54:14
**leave** 41:12
**led** 21:15
**ledanski** 2:25 57:3
57:8
**legal** 57:20
**lehman** 1:7 19:6
26:4,6,6,16,19,23
27:3 31:1,4
**lehman's** 17:14
**lengthy** 19:13
**lens** 52:25
**level** 23:24 47:8
**lewis** 5:17 6:9
32:4
**lien** 40:22
**light** 42:9 54:19
**limitation** 46:1
**line** 12:8 21:10
**link** 53:6
**liquidating** 14:14
**listen** 37:8
**litigated** 30:21
39:21,22 41:23
**little** 12:3 18:23
21:23 31:13 32:21
33:8
**live** 17:1 23:3
**lived** 8:13
**llp** 3:3,10,17 4:9
4:18 5:1,9,17
**lo** 20:10 39:14
**long** 13:16 14:9
18:13 24:9 26:25
42:3 47:5 49:22

51:22 52:4
**look** 12:24 16:12
20:16,16 23:12
28:23 38:10 47:4
**looked** 31:5
**looking** 12:4 26:2
42:5
**looks** 19:5,5,8,12
20:3
**lorenzo** 4:7
**lot** 24:15
**lots** 53:20
**louisiana** 3:12
**low** 23:24 36:20
36:21
**lower** 25:18 36:12
52:11
**lowest** 23:10 36:8

**m**

**m** 4:16
**madison** 4:20
**making** 29:8
31:19 51:15 54:15
**man** 50:25 51:3
**march** 19:21
32:24 37:2 39:4
**material** 33:13,14
**math** 23:4,9
**matter** 1:5 6:16
7:21 9:1 23:4,9
27:24 31:5 40:5
46:10 51:22
**matters** 16:7
37:20
**maximum** 26:8
**mayer** 5:1 30:7
**mean** 23:1,21 40:4
41:20 46:6,24
47:1,2,7 48:15
49:7 55:7
**meaning** 44:15
48:25

**meaningful** 32:18
**means** 18:17 47:2
53:3
**mellon** 39:8
**memorandum** 8:7
**mention** 30:22
**mentioned** 32:16
36:7
**merits** 21:14
**mertz** 4:16
**messed** 6:13
**michael** 5:23
31:23 32:3
**middle** 19:20
**million** 15:17
17:25,25 23:13
**mind** 21:25 53:3
54:22
**mineola** 57:23
**minimum** 36:15
43:23
**minneapolis** 4:13
**minute** 48:13
**minutes** 23:16
**misstate** 41:20
**mm** 44:14
**mn** 4:13
**model** 42:22
**moment** 7:7 25:12
48:6
**money** 20:16
24:25 25:4,5,6
34:7 35:23 36:15
36:16 38:14,19,20
**month** 32:19 33:9
**months** 14:22,22
14:22 39:9,11
41:10
**morgan** 5:17 6:9
32:3 41:21
**morning** 6:5,8,12
7:10 42:6

**motion** 2:1 48:18
**mouths** 49:13
**move** 14:2 21:9
22:21
**moving** 8:2
**muffly** 3:3 6:3

**n**

**n** 3:1 6:1 57:1
**n.a.** 4:10,19 5:2
**narrative** 14:12
**narrow** 24:8 45:1
**nature** 45:21
**necessary** 47:24
**need** 8:22 18:23
21:10 23:23 31:17
41:1,19 43:25
47:18 49:4,12,14
54:3
**needed** 16:22
18:11 21:4 26:24
35:18
**needs** 42:9
**negotiated** 16:20
30:19 36:18
**negotiating** 30:14
**net** 11:4
**never** 19:14 23:14
34:6,15
**new** 1:2,14 3:6,20
4:5,21 5:4,20 7:4
15:13 34:10 37:23
38:22
**newman** 4:23
7:10,11
**nitpicky** 32:24
**nonnegotiable**
51:19
**noted** 16:2
**noteholder** 48:11
48:15
**notice** 7:23 32:18
38:8 44:5 47:23
48:2,9 49:22

51:20
**notices** 7:15
**notion** 37:2 40:17
53:24
**notwithstanding**
27:22
**number** 17:15,24
24:22 25:18,18
33:11 34:5 36:12
36:12,20 48:20
50:20
**numerous** 22:15
22:15 23:17,18
42:2
**ny** 1:14 3:6,20 4:5
4:21 5:4,20 57:23

**o**

**o** 1:21 6:1 57:1
**objected** 48:17
**obligated** 15:21
**obligation** 16:1
**obligations** 41:8
**observation** 12:7
16:17 25:25
**observations**
14:25
**observing** 48:12
**obvious** 46:7
**obviously** 17:20
20:20 41:20 51:12
**occur** 45:10
**occurred** 34:6
**offer** 15:19 53:12
**oh** 14:12 17:9
20:2 23:12 26:23
31:18
**okay** 6:11 8:4,4,20
14:1 19:4 30:5
32:11 34:23,25
44:23,25 45:7
48:19 49:3 55:22
56:3

**old** 57:21
**once** 33:1,7 34:7
**ongoing** 35:4
**open** 28:2
**operation** 16:16
24:23 26:18 39:10
**operations** 11:7
11:11,16 13:21,23
15:11 22:14,24
24:10 25:3 30:20
38:11 39:2 43:6
45:19 48:2
**opinion** 53:12
**opportunity**
22:18 47:19 49:21
**opposed** 14:12
**order** 2:1,2 7:3,4
7:13,16,22 8:18
11:7,11,15 13:12
13:14,14,20,22
15:11 16:16,22,22
18:11,24,25 20:3
22:14,24 24:10,22
25:2 26:17,17
27:14,25 28:4
29:24 30:20 38:11
39:2,10,15 40:2
42:12 43:2,5,11
43:14 44:7,19
45:19,25 48:2
52:18 54:8 56:1,4
**ordering** 50:11
**orders** 6:22
**ostrow** 3:8 6:2,2
8:5,6,21 17:5
54:22 55:7,22,25
56:3
**outcome** 7:8 9:18
24:25 30:3
**overall** 25:10
**oversight** 34:12

| **p** | | | |
|---|---|---|---|
| **p** 3:1,1,8 6:1 | 15:23 20:4 27:12 | 50:4 | **problem** 17:13 |
| **paid** 34:8 42:13 | 29:14 33:14 38:3 | **pointing** 21:17 | 30:1 38:11 47:1 |
| 48:23 | 45:12 46:2,18,19 | **points** 19:13 | 50:10 |
| **painful** 26:25 | 46:21 | 21:15,21 22:17 | **problems** 25:1 |
| **papers** 8:16,23 | **peachtree** 5:12 | 32:7 36:9 37:5 | 38:21 |
| 9:12 38:23 | **penultimate** 8:7 | 41:11,17,18 47:20 | **procedure** 20:12 |
| **paragraph** 10:22 | **people** 12:7 14:10 | 54:13 | **proceed** 6:15 |
| 13:14,15 43:10 | 25:5 32:1 36:2 | **pool** 25:19 | **proceeding** 7:7,20 |
| **parallel** 32:15 | 49:12 | **pose** 9:10 | 7:25 8:2 17:10 |
| **park** 3:5 4:4 5:19 | **perception** 22:5 | **position** 8:16 15:7 | 19:4,18,23 20:6 |
| **part** 8:7 24:20 | **perform** 23:22 | 15:7 | 20:10 22:1 24:6 |
| 25:10,13 26:14 | **period** 47:11 | **possibility** 32:13 | 25:22 27:14 32:17 |
| 33:5,12 34:12 | **permission** 8:14 | 33:25 36:24 52:10 | 33:6,12,22 34:1 |
| 36:13 41:4 | **permitted** 50:15 | **possible** 23:11 | 34:11 35:6,14 |
| **participate** 22:1 | **person** 37:23 | 26:8 48:23 55:12 | 36:14 38:13 44:1 |
| **particular** 43:9,15 | **perspective** 17:3 | **potential** 38:10 | 48:17,24 50:19 |
| **particularly** 26:3 | 17:14 18:9 21:2 | **potentially** 10:1 | **proceedings** 8:1 |
| 31:25 | 21:24 26:24 37:10 | **practical** 51:22 | 15:12 22:8 32:15 |
| **particulars** 8:11 | **petition** 16:5 | **prefer** 19:1 | 53:24 56:8 57:4 |
| **parties** 6:23 7:1 | 29:11 | **preferable** 24:14 | **proceeds** 24:21 |
| 7:15 9:15 15:8 | **pike** 24:1 | **preferred** 26:13 | 28:5 |
| 22:17,21 27:13 | **plan** 10:3,7,11,17 | **prejudice** 54:10 | **process** 18:10 |
| 30:19 32:14 33:22 | 10:20 11:4 13:2,8 | **preliminary** 17:4 | 19:8,14 20:20,23 |
| 35:10,20,21 39:24 | 13:11 15:18 27:12 | **prepare** 33:16 | 25:10,14 35:19 |
| 40:6 43:18 | 35:3,5,16,24 | **prepared** 32:6 | 47:21 51:18,18 |
| **partner** 42:17 | 46:18,19,20 | **present** 43:16 | 52:4 54:13 |
| **party** 45:12 | **play** 23:5 24:11 | 47:19 | **profound** 20:24 |
| **path** 14:24 54:16 | **playing** 33:23 | **presented** 52:25 | **promptly** 10:4 |
| **patronizing** 21:13 | **pleadings** 28:21 | **presently** 8:3 | 15:23 38:3 43:6 |
| 49:8 | 33:16 | **pressure** 35:12 | 55:12 |
| **paul** 3:23 | **please** 28:9 | **pretty** 10:9 17:20 | **proper** 32:16 |
| **pay** 12:23 39:2,8 | **pleasure** 37:18 | 30:24 53:14 | **proposed** 6:22 |
| 39:10,13,16,20 | **point** 11:23 14:6 | **prevented** 16:14 | 7:13 |
| 40:9,13,21 44:12 | 15:2,14 17:7 23:2 | **prevents** 18:12 | **proposition** 55:24 |
| 44:16 45:1,4 46:3 | 23:21,22 24:9 | **previously** 22:6 | **prospective** 42:10 |
| 47:10 55:10 | 26:1 29:10 30:12 | **principal** 39:23 | **protect** 20:1,10 |
| **paying** 30:16 | 31:20 33:17 34:22 | 40:4 44:15,20 | **protection** 16:22 |
| **payment** 30:15 | 34:22 35:24 36:6 | **prior** 15:12 16:13 | **protective** 18:11 |
| 33:14 45:10 | 37:10 38:17 46:12 | 25:22 | 20:12 |
| **payments** 10:3,8 | 50:13,19 51:18,18 | **priority** 26:2 | **provide** 28:19 |
| 10:11,18,20 11:4 | 52:10 | **probably** 21:8 | 29:6,23 45:16 |
| 13:3,8,11 15:5,18 | **pointed** 28:1 | 51:13 | **provided** 11:3,5 |
| | 30:18 40:14 50:3 | | 46:14 52:19,19 |

**provides** 10:13
37:1 48:2
**provision** 9:19,24
10:4,5,6 11:14,21
13:6,21 23:20
33:20 34:4 35:5
39:15,19 40:15,16
45:18 51:11 55:10
**provisions** 7:23
9:16,18 21:17
28:20,24 29:4,5
29:13,16,22,23
40:6 47:15
**psas** 42:9,20
43:22
**purely** 55:3
**purpose** 42:11,11
42:15
**pursuant** 28:25
29:25 43:9 47:14
**pursuing** 18:7
**pushing** 35:7
**put** 8:6 12:8
**putting** 23:19
54:19

**q**

**qualified** 28:25
**question** 9:10
10:21,23 11:8,9
11:25 13:25 15:16
24:8 31:16 32:10
40:2,3 45:1 47:24
53:2,4 55:20
**questions** 11:20
14:6 18:19 28:2
28:16 32:6 33:22
52:24 53:11 54:23
55:2
**quick** 32:7 33:10
**quickly** 17:23
41:24
**quite** 10:9 51:13

**quoted** 42:16

**r**

**r** 1:21 3:1 6:1 57:1
**radar** 16:8
**raise** 15:18 16:1
25:11 34:3 35:13
37:7
**raised** 8:16 16:6
16:24 17:6,18
19:24 22:14 23:14
23:17 34:17 35:17
**reaction** 14:17
**read** 22:18,20
30:17,24 36:19,25
39:14 44:10,19
47:13
**reading** 22:5 26:1
**readings** 23:20
**ready** 33:16
**real** 15:20,25 38:4
**realize** 23:13
**really** 9:5 14:14
23:19 27:15,24
31:17 48:25
**reason** 12:22
16:21,23 17:17
22:23 34:5 38:7
44:4 53:16
**reasonable** 10:3
15:22 38:2 42:21
55:11
**reasonably** 15:22
**receive** 38:14
**received** 34:8
38:19
**receiving** 15:17
**recognized** 33:24
36:23
**record** 51:15 57:4
**recoveries** 10:12
10:15 18:6
**red** 38:9

**reference** 28:24
40:7
**references** 29:2
**reflect** 12:6,7
**reflected** 42:22
**reflecting** 7:5
**reflects** 15:4
34:14 54:9
**regard** 53:23
55:20
**regardless** 42:14
**related** 11:2
**releasing** 39:15
**relevant** 43:21
**relief** 38:5 41:7
54:12
**remainder** 47:15
**remarks** 21:12
**rendering** 52:6
**repeated** 29:2
**reporting** 33:3
**represent** 48:20
**represented** 22:7
**representing** 7:11
**request** 53:4
55:17
**require** 9:10 30:3
55:2
**required** 39:25
46:9 47:16 48:3
50:6
**requires** 9:13 10:2
18:17 32:18 47:10
53:10
**rescap** 16:6
**reservation** 55:1
**reserved** 54:23
**resolution** 9:1
15:4 40:21 43:21
43:25
**resolve** 11:8,11
21:18 26:17 31:6

**resolved** 10:23
16:14 21:5 22:15
26:12 35:7,8,8
41:24 43:6,18
44:18,20 45:4
55:5
**resolves** 11:7
**resolving** 49:2
**respect** 7:13 8:21
26:21 31:7 41:18
43:5 52:22 54:13
**respectfully** 53:4
**respond** 18:23,24
18:25 30:8,9
31:10 36:9 37:12
41:13
**responded** 41:11
**response** 28:21
**responsibilities**
54:3
**responsibility** 8:8
**restraining** 2:1
**resulted** 26:18
**results** 55:14
**reverse** 43:11
**revolved** 16:20
**right** 8:4 11:23
12:15 18:21 19:4
36:21,22 41:7,9
42:4 46:6 50:17
50:17 51:6,11,19
56:7
**rights** 52:12 53:22
54:11
**ripe** 20:4
**ripeness** 24:19
**rmbs** 8:11 18:8
37:20 42:23 48:17
**road** 53:7 57:21
**roadmap** 9:15
**robert** 4:15
**robust** 31:1

[rodeo - specify]                                                                                    Page 12

rodeo  14:21 22:11
  22:12
room  39:22 49:7
rooms  35:2
round  8:24 17:5
ruling  7:20 19:21
  54:9
russell  5:6

**s**

s  3:1 4:7,12 6:1
salomon  2:2
sat  35:2
satisfied  32:9
satisfying  52:5
saying  19:15
  23:12 55:14
says  10:25 12:25
  13:1,2,15 15:24
  28:5 29:24 38:1
  41:3 45:12 46:13
  47:14 50:5,5,6
  54:10 55:8,16
scarpulla  40:3
scc  1:3
schedule  8:2
scheme  25:6
schnell  4:15
scope  24:20
second  10:5,13
  12:23 33:18 39:14
  39:21 40:3 46:4
secretary  7:18,19
section  10:5,8,24
  12:24 15:21 28:23
  40:24 41:3 45:4,8
  45:11 46:2,9
  47:13
securities  11:3
  33:4,21 52:2
securitization
  42:11
see  28:23 29:12
  33:6 38:23

seek  10:1 38:5
  39:1 41:7 54:11
seeking  18:3 41:4
  55:14
seemingly  40:25
selecting  18:2
send  55:20
senior  37:19
  42:13
sense  27:21
sent  53:4
sentence  10:24,25
  11:6 26:2 30:11
  30:17
serious  51:18
sets  35:21 38:7
settle  23:10
settlement  8:11
  8:25 9:11,13,17
  9:25 10:6,24 11:9
  11:18,22 12:8,14
  12:17,24,25 13:3
  13:8,16,18 14:11
  14:13 15:2,4,7,10
  15:21,23 16:20
  18:13,14 19:25
  20:8 23:24 24:21
  26:5,14,15,16
  27:2,5,8,9,10,10
  27:15,23 28:5,6
  30:14,21,23 31:2
  31:8,9,22 37:22
  38:3,6 39:12,13
  40:7,8,14,22,23
  42:16,18 43:3,8
  43:13,20,21 45:5
  45:25 47:9,10
  48:1 49:21 50:7,8
  50:11,12,13 52:20
  53:1,3,6 55:3,5,16
  55:17
settlement's  30:25

seventh  4:12
share  40:9 43:9
  43:11
sheeran  8:12
sheeren  3:15 6:5,6
  6:19,20 9:7,9,21
  9:24 12:2,10,12
  12:14,21 14:2,5
  15:6 17:19,22,22
  30:17 31:10,11
  32:4 35:10 37:12
  37:13,15,17 44:9
  44:9,15,18,23
  45:2,6,11,21,23
  47:23,25
shelley  1:22
shock  53:19
shocked  36:5,5
shocking  16:25
shooting  17:3
should've  26:11
show  2:2 7:3,4,14
  7:16,22 29:15
  41:8
shy  19:14
side  7:12 23:19
  31:14 42:4 44:3
siegel  5:22 6:8,9
  16:18 17:8 18:21
  18:22 19:3,9,10
  20:19,25 21:20,22
  23:2,7 24:2,7,12
  26:21 27:17 28:10
  28:12,13,18 30:5
  30:5 32:16 36:11
  45:24 46:5,8,20
  46:24 47:1,12
  50:18,23 51:1,5,7
sign  31:21
signed  7:22 13:13
significance  22:17
silent  13:20 27:6,6
  29:9

similar  16:5
simple  10:9 43:4
  44:8
simply  8:25 24:16
  28:4 31:8 43:2
single  11:14 23:23
  45:17
sir  46:16
situation  38:12
six  18:8 37:20
skin  51:23
slight  53:9
slightly  54:19
slow  35:20
smart  27:16
software  42:23
solution  54:2,2
solutions  57:20
solve  30:1 34:1
  38:11
solves  24:25
somewhat  11:19
sonya  2:25 57:3,8
soon  48:23
sophisticated  15:8
sorry  9:21 26:15
  28:19 43:15 47:25
sort  38:20
sought  41:6
sounds  34:13
southern  1:2
speak  8:24 9:7
  20:2 33:2 34:5
  48:13
speaks  11:6 15:8
  38:1
specific  28:16,19
  28:20 41:18
specifically  12:9
  28:16
specificity  28:7
specify  29:13

spent 27:22 32:2
stages 17:18
stake 25:21
stand 44:6
standpoint 26:3
start 19:23 49:13
started 17:10
   19:24
starting 14:23
state 6:18,18 7:5
   7:13,25 15:12
   17:23 20:5 39:4,5
   48:6
states 1:1,12
step 10:13 21:23
   26:25,25
stephen 4:16
story 44:4
stranger 37:23
strawman 26:22
street 4:12 5:12
strewn 46:13
strictly 52:21
strong 17:1
strongly 17:21
   47:18
structure 10:8
   16:19 20:11
subject 13:9
submitted 7:4,5
   11:13 44:11
subordination
   42:11
subsection 11:1,5
subsequent 10:12
   10:15 29:14
substance 46:3
substantiated
   38:24
substantive 7:2
   55:13
sue 13:11

suggest 16:9
   26:12 52:22
suggested 43:2
suggestion 18:1
   37:23 38:18
suing 13:16 18:12
suite 3:12 57:22
sum 46:3
summarizing
   45:13
supplemental 8:7
supplements
   42:10
support 39:10
suppose 47:15
supposed 8:12
   41:18
supreme 40:3
sure 17:3 19:1
   25:20 26:4 41:20
   49:11 50:4
surprise 14:15
surprised 36:3
surreal 31:13
sway 23:12

t

t 57:1,1
tails 55:21
take 8:18 12:13
   12:15 14:11 20:17
   21:23 52:10
taken 25:5
takes 33:8
talk 11:22 15:13
   21:9 22:4 29:13
talked 8:24 33:4
talking 22:13,23
   30:9 49:14
talks 28:1
tasks 52:23
telephonic 6:12
tell 19:1,3 20:2
   28:9 36:17 46:22

46:23 51:13
telling 11:12
   12:19 14:10 15:3
   23:4 27:19 28:13
   34:19 43:17 47:11
temporary 2:1
term 29:10,11
   39:21,23,25
terms 13:4,17,23
   14:13 27:2 28:25
   29:1,18 30:2 46:1
   47:14 50:7,16
   52:21 54:14 55:18
testimony 42:16
texas 6:6
text 42:15
thank 6:11 8:3,6
   8:20 9:9 18:21
   37:15 49:24,25
   55:22,25 56:6,7
thanks 34:25
thing 9:5 14:19
   17:12 20:13,17
   22:7 25:17 43:14
things 6:18 7:13
   18:22 19:2 22:24
   25:3,20 28:22
   35:18
think 8:21 10:8,9
   10:21,23 11:6,7
   11:17,24 12:12
   13:17 15:10,14,18
   15:19,25 17:24
   18:14,17 21:8
   26:9,9 28:5 29:16
   29:24 30:8,10,12
   36:9 37:1 38:10
   38:15 41:5,19
   43:23 44:4,5
   46:15 47:4 50:3
   50:10 51:17,17,22
   53:14,18,19,23

thinks 29:6
thoroughly 9:5
   37:9
thought 12:7
   14:10 25:4,17
   33:19,19 34:3
   36:23 42:18 43:4
   51:12
thoughtful 15:4
   49:12
three 9:17 23:16
   34:5 35:9,20,21
   39:9,11
threshold 41:3
thursday 7:24
time 6:14 8:13
   14:9 15:2 19:24
   23:2,23 27:22
   30:18 33:8,15
   35:4,18 36:7
   37:19 39:6 51:22
   53:16 54:20
times 22:15 23:18
   31:18
timing 38:17
   40:20 43:24 44:24
today 6:14 7:20
   7:24 8:9 9:6 17:18
   21:15 32:2 36:7
   44:1
told 19:20 23:16
   24:4 35:19
tomorrow 7:23,24
top 19:4
torres 3:17
torturing 20:8
track 35:14
trading 52:3
transcribed 2:25
transcript 57:4
transparent 19:7
treatment 29:14

trial  42:16 52:4
tried  13:11 32:20
troubles  14:19
troubling  17:2
  51:17,25
true  38:13 57:4
trust  4:2,2 5:10
  6:10 20:17 32:17
  33:6,14 34:10
  43:11
trustee  7:12 12:4
  30:13 40:8 43:10
trustee's  7:12
trustees  9:25 10:2
  10:7,10,16 11:13
  12:17,19 13:2,16
  13:19 14:17,21,23
  15:16 16:5,9,10
  16:15,20,21,24
  18:1,10,13 19:14
  19:16 20:1,10,24
  21:2,7 22:10 23:3
  23:22 25:8,20
  27:13,25 28:1,7
  29:7 31:14,17
  33:2,19 34:8,9,9
  35:12,21 36:3,8
  37:4 38:2,7,18,25
  40:21 41:1,6 44:6
  44:7 45:8,17
  50:14 52:6,7 54:1
  54:15
trusts  17:11,24
  18:2 24:24 26:6
  26:16 33:9,11
  34:2,2 36:13,15
  36:15 39:11,18,18
  41:23 42:2 44:11
truthfully  21:12
try  32:10,21 33:6
  56:4
trying  44:25

turn  16:18
two  28:21 36:9
  38:14
tx  3:13

**u**

u.s.  1:23 5:18 6:9
  31:23 32:4 33:2
ultimately  25:2
  42:25 47:21
unable  39:1
unambiguous
  50:12
unanimous  39:9
  40:12 41:22
unanimously  44:6
understand  6:15
  13:23 20:19 21:6
  22:1 23:9,19,21
  28:4,18 38:25
  43:23 49:6
understanding
  25:14 36:25 48:24
  52:2
understood  20:25
  28:10 37:4
undertake  21:3
unhappiness
  24:16
unhappy  29:21
  51:13
unhelpful  31:25
unique  18:8
united  1:1,12
unopened  41:12
unsuccessful
  42:25
unusual  16:19
  54:19
update  6:17,24
  7:8
urge  55:15
urgency  6:16

uri  3:22 48:10
use  10:2 15:22
  29:11 36:4 38:2
  42:23 53:18 55:11
useful  29:6,15
usually  53:15,16
utterly  15:19

**v**

vague  28:8
variety  22:16,25
various  7:23
  25:21 26:6
vehicle  14:14
verbatim  30:24
veritext  57:20
versus  54:2
view  22:17 25:16
  26:1 34:7,14
  47:20 48:1
views  22:2 39:24
visit  22:10,11

**w**

wait  15:16 20:15
  48:14
waiting  53:25
walk  32:5
walking  54:20
want  6:15 9:7
  14:23 15:13 19:2
  20:17 21:13 22:4
  24:17,19 36:9
  41:25 48:23 49:1
  50:4
wanted  13:7
  25:20 35:6,8 37:7
watching  33:23
waterfall  17:16
waterfalls  38:20
wax  9:3
way  12:3 13:12
  17:6 20:2 26:25
  27:1 33:23 34:14
  35:20 36:17,19

38:24 39:25 41:9
  50:5
ways  22:16
we've  9:16 14:18
  15:12 18:7 31:18
  32:20
weeds  14:18
week  6:21 7:9
  8:10
weigh  17:23 49:23
wells  4:10,11,19
  7:11
wender  5:15
went  6:21
west  5:12
whatsoever  27:11
willingness  31:21
wilmington  4:2,2
  5:10
wish  54:20
word  17:1 36:4
words  49:13
  53:18 54:16
work  8:12 20:17
  25:7 35:22 54:8
  56:1,4
worked  22:5 33:3
world  17:1 39:4,6
worry  22:22
worse  14:16
worth  25:23 36:23
would've  16:14
  52:11
wrapped  40:25
write  10:14,18,19
  12:23 25:3 39:2,8
  39:13,20 40:9,15
  45:9 46:4,18
written  12:17
  29:17 47:10
wrong  16:9,12
  17:12 18:3 20:18
  37:24,25

**[x - zero]**

| **x** |
| --- |
| **x**   1:4,10 |
| **y** |
| **yeah**   9:22 14:4 |
| 37:6 46:23 47:1 |
| 48:20 51:10 |
| **year**   32:13 |
| **years**   14:20,20,20 |
| 18:8 20:15 22:9 |
| 32:2 35:15 37:21 |
| 38:15 52:7,8,8 |
| 53:25 54:1,1 |
| **yep**   44:17,22 51:6 |
| **yesterday**   7:17 |
| 11:13 |
| **york**   1:2,14 3:6,20 |
| 4:5,21 5:4,20 |
| 34:10 |
| **z** |
| **zach**   4:23 7:10 |
| **zero**   50:23,24 |
| 51:1 |