Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5    LEHMAN BROTHERS HOLDINGS INC.,   Case No. 08-13555-scc

6                    Debtor.

7

8

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11

12

13

14

15                        United States Bankruptcy Court

16                        One Bowling Green

17                        New York, New York 10004-1408

18

19                        October 13, 2017

20                        9:31 AM

21

22

23   B E F O R E:

24   HON. SHELLEY C. CHAPMAN

25   U.S. BANKRUPTCY JUDGE

Page 2

1    IN RE:   Doc #56300 Motion for Approval of Settlement

2    Agreement Among Citibank, N.A., and Certain of Its

3    Affiliates, and Lehman Brothers Holdings Inc., and Certain

4    of Its Affiliates

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

```
 1    A P P E A R A N C E S :

 2    QUINN EMANUEL

 3         Attorneys for the Official Creditors' Committee

 4         51 Madison Avenue, 22nd Floor

 5         New York, NY 10010

 6

 7    BY:  ANDREW J. ROSSMAN, ESQ.

 8         CALLI RAY, ESQ.

 9

10    PAUL, WEISS, RIFKIND, WHARTON & GARROSIN LLP

11         Attorneys for the Defendants

12         1285 Avenue of the Americas

13         New York, NY 10019-6064

14

15    BY:  JAY COHEN, ESQ.

16         KYLE J. KIMPLER, ESQ.

17

18

19

20

21

22

23

24

25
```

Page 4

```
 1                    P R O C E E D I N G S

 2             THE COURT:  Good morning.

 3             MR. ROSSMAN:  Good morning.

 4             THE COURT:  Please have a seat.  Hello.  How are

 5    you today?  It's good to see you.

 6             MR. ROSSMAN:  You too, Your Honor.

 7             MR. COHEN:  Good morning.

 8             THE COURT:  What should we do today?

 9         (Laughter)

10             MR. ROSSMAN:  We'd like to call -- no.

11         (Laughter)

12             MR. ROSSMAN:  Your Honor, it's my privilege and my

13    pleasure to present a motion for settlement --

14             THE COURT:  Okay.

15             MR. ROSSMAN:  -- under Bankruptcy Rule 9019 in the

16    Lehman against Citibank, a series of litigations.  May I

17    begin?

18             THE COURT:  Sure.

19             MR. ROSSMAN:  So Andrew Rossman with Quinn Emanuel

20    for the official creditors' committee of Lehman Brothers

21    Holdings Inc., for the record.  I see the podium is still

22    sideways, so I'll --

23             THE COURT:  The podium is still sideways because

24    we have another group coming in for a trial, so we just

25    thought we would adopt Mr. Cohen's excellent --
```

Page 5

1          MR. ROSSMAN:  You'd adopt Mr. Cohen's --

2          THE COURT:  -- excellent configuration.  Although,

3     Mr. Cohen, you're not sitting in your usual chair today I

4     would note.

5          MR. COHEN:  I've been reduced to a regular chair,

6     right.

7          THE COURT:  Yes, you've been reduced to a regular

8     chair.  But you may have noticed also that this is a

9     particularly rare case, because after you all left I

10    actually had to have the courtroom painted.

11         MR. ROSSMAN:  We noticed.

12         THE COURT:  Did you notice?

13         MR. ROSSMAN:  We did notice, yeah.

14         THE COURT:  It's quite lovely.

15         MR. ROSSMAN:  The courtroom looks spiffy.

16         THE COURT:  It does look spiffy, and larger.

17         MR. ROSSMAN:  Yeah.

18         THE COURT:  But we digress.  Go ahead,

19    Mr. Rossman.

20         MR. ROSSMAN:  We do.

21         So, Your Honor, I'm here today with my colleague,

22    Callie Ray, (indiscernible) Steve Mullaney and Kimberly

23    Cloud (ph) from the estate, smaller crowd than you're used

24    to seeing, but I assure you everyone is aware of what's

25    happening today and pleased that we got here.

Page 6

1          THE COURT:  All right.  Well I have read the

2     papers, so I'm happy to hear your presentation.

3          MR. ROSSMAN:  Sure, I've got a very brief one.

4          THE COURT:  Okay.

5          MR. ROSSMAN:  But I think there are a few things

6     that merit saying.

7          THE COURT:  Sure.

8          MR. ROSSMAN:  First for the benefit of, you know,

9     posterity I do want to thank the Court, the court personnel,

10    court security officers, all of whom have protected us and

11    kept us comfortable here.

12         I want to especially recognize Your Honor's

13    chambers and dedicated clerks who have poured through all of

14    the pain and suffering we've bestowed upon you, and

15    Ms. Isen in particular, and I want to -- who has probably

16    suffered the most -- and I do think it's important to

17    recognize the special role that the Court has played into

18    this before I get into the merits of the settlement.

19         I think history thinks of the Honorable James Peck

20    as the Lehman judge, I think those who are in this courtroom

21    think of Your Honor, and the level of dedication, and you

22    know, frankly skill and determination that the Court has

23    brought to these proceedings in bringing them to the part of

24    trial and guiding us through 42 days of some of the most

25    complex trial material anyone will ever see and then

Page 7

1  ultimately guiding us and aiding us to reach a settlement

2  here, really is a testament to I think the extraordinary

3  talents, and you know, frankly level of commitment that the

4  Court has to these cases and to the cause of justice in this

5  courthouse.

6         So we owe you an enormous debt and I didn't want

7  that to go unsaid before I get to the substance of the case.

8         THE COURT:  I appreciate your comments, I won't

9  dispute your statements.  I will agree with respect to

10  commitment, that I will cop to that charge, but I won't -- I

11  appreciate your other comments, so.

12         MR. ROSSMAN:  So what we have here before you,

13  Your Honor, is a global settlement of all disputes between

14  the Lehman estate, the creditors' committee, and Citibank

15  and its affiliates, and it is, as Your Honor is well

16  familiar with the standards under Rule 9019 and TMT Trailer

17  Ferry, it is an appropriate approach to settle our massive

18  disputes to do it on a global basis taking into

19  consideration the difficulties of settling disputes

20  individually, something that we have taken into

21  consideration, and we have determined that the settlement

22  that you have before you easily exceeds the lowest end of

23  the range of reasonableness.

24         We come to you with a high degree of conviction

25  that this is a settlement that is fair and reasonable in all

Page 8

1    respects and appropriate for the estate and its creditors.

2           Just to briefly describe what we've got here.

3           It is not -- it is a settlement of what we the

4    Citibank litigation, which is the adversary proceeding that

5    includes the derivative claim objection and the dispute over

6    the handling of the $2 billion deposit that Lehman placed

7    with Citibank in June of 2008.  That adversary proceeding

8    alone has a panoply of issues associated with it, some of

9    which were the subject of summary judgment motions that were

10   pending before Your Honor, and the subject of the trial that

11   proceeded for some four months in this courthouse was over

12   the close out of some 30,000 derivative trades and the claim

13   that Citi and its affiliates asserted against Lehman

14   Brothers Special Finance and its affiliates in the amount of

15   -- in excess of $2 billion.

16          It resolves the claim.  It resolves all of the

17   claims that have been asserted by Citibank against Lehman.

18   It resolves that adversary proceeding.  It disposes of the

19   $2 billion plus that are in that account.  And it resolves

20   other litigation as well.  It resolves what we refer to as

21   the CitiMortgage litigation, which is an effort -- was an

22   effort to avoid an alleged preferential payment.  It also

23   resolves a series of litigations that we refer to as the

24   flip clause litigations that relate to a modification in the

25   change of the priority of payments that are made under

Page 9

1    certain swaps as a result of the bankruptcy event of

2    default.  Your Honor has ruled on those cases that are on

3    appeal.  It resolves that appeal as it relates to Citibank.

4            So we will be upon, if the Court is so kind as to

5    approval this settlement when it becomes final, we will be

6    dismissing the relevant adversary proceedings and the claims

7    that are made against LBHI are going to be withdraw pursuant

8    to the settlement agreement.

9            They are a series of claims that are set forth

10   specifically in the settlement agreement that will be

11   assigned to LBHI.  Those are claims against other Lehman

12   affiliates, and those will be up to the plan administrator,

13   consistent with a plan, to determine the resolution of those

14   claims.

15           We filed a supplement to the 9019 motion that

16   identifies specifically one of those claims that exceeds the

17   $200 million threshold, so you'll see --

18           THE COURT:  Right.

19           MR. ROSSMAN:  -- in the supplement how that claim

20   is specifically --

21           THE COURT:  Yes.

22           MR. ROSSMAN:  -- going to be treated.

23           And in addition to the dismissal of prejudice of

24   the litigation, withdrawal from assignment of the claims

25   there's an exchange of mutual releases between the parties

Page 10

1    that are broad and relate to all of the disputed matters.

2    So it's all of the claims and defenses that were brought in

3    the adversary proceedings or the disputed claim litigations

4    and any matters relating to or arising there from.  So it is

5    what we think of as a global settlement or piecing the value

6    between the parties.

7              The substance of the settlement is very

8    straightforward.  The litigation was complicated, the

9    settlement was actually relatively straightforward.

10             In the account that was -- originally held the

11   deposit of $2 billion back in 2008, it's approximately 2.09

12   -- I'm sorry -- $2.093 billion.

13             THE COURT:  Uh-huh.

14             MR. ROSSMAN:  Citibank will debit to itself

15   $350 million.

16             THE COURT:  Uh-huh.

17             MR. ROSSMAN:  The remainder of the content of that

18   account and some other accounts will be transferred to

19   Lehman upon -- shortly after the effectiveness of the

20   settlement, no later than five business days --

21             THE COURT:  Okay.

22             MR. ROSSMAN:  -- from the effectiveness of this

23   settlement agreement, which will result in a return to the

24   estate of approximately $1.74 billion, which the estate is

25   prepared to try to distribute it as rapidly as it can

Page 11

1    consistent with its obligations under the plan and the

2    confirmation order, to all of Lehman's creditors.

3             So in terms of the 9019 standards, which Your

4    Honor is -- and let me just pause there for a second to see

5    if Your Honor has any questions about --

6             THE COURT:  Nope.

7             MR. ROSSMAN:  -- the content of the settlement.

8             In terms of the standard under 9019 the -- I think

9    Your Honor is well familiar with the probability of success

10   and the uncertainties of the facts and the law regarding

11   this case.

12            The complexity, expense, and duration of this

13   litigation is unlike any many people have seen in their

14   legal careers.  It's as long a trial, perhaps as almost any

15   that's been held in the courthouse.  The issues were

16   presented I would say, Your Honor, at a level of detail with

17   a level of -- and I'm referring to my adversaries for a

18   moment -- with a level of vigor and skill and

19   professionalism that I don't think is exceeded anywhere.  So

20   I think you got a strong of presentation of a dispute issue

21   could have for resolution.

22            I'm aware of no creditors who are objecting to

23   this settlement.  You have the full support of the

24   creditors' committee, as well as the support of the Lehman

25   estate.  Competence of counsel I hope you come to the

Page 12

1    collusion that we know what we're doing by now.

2         THE COURT:  I'll have more to say -- I'll have

3    something to say about that towards the end of the hearing.

4         MR. ROSSMAN:  Arms length bargaining.  This is the

5    -- not only was it litigated, but there was an extensive

6    process of trying to resolve this over the course of many

7    years culminating in a five-day mediation presided over by

8    Your Honor.  So I think it easily surpasses anyone's notion

9    of arms length.

10        In terms of the debtor's informed judgment you

11   have a debtor here who has seen more of these claims than

12   anyone else, including claims involving the big banks that

13   than could be imagined, so you know, the debtor, and you

14   have in the record the declaration of Steven Mullaney, who

15   has testified in this court who is, you know, the business

16   owner of this particular case and the top valuation

17   professional of the estate, one of the top business persons

18   at the estate, you know, supporting the substance of the

19   settlement, he's a person who knows well of what he speaks,

20   and the entire estate supporting the settlement.

21        And finally in terms of the relative benefits

22   obviously we have the concrete benefit of the return of

23   substantial funds to the Lehman estate and the creditors.

24        So for all of those reasons we very much support

25   the settlement, we're pleased to be here, and we thank

Page 13

1    everyone for indulging us to get to that point.

2              Thank you, Your Honor.

3              THE COURT:  Thank you.

4              All right.  Does anyone else wish to be heard with

5    respect to the request to approve the settlement of all

6    claims between Lehman and Citibank as set forth in the

7    motion papers that have been filed on behalf of the estate?

8              Okay.  I'm going read a short decision into the

9    record, and then when I conclude with that there are some

10   other comments that I'd like to make to the parties and

11   frankly for the record.

12             Before the Court is the motion of Lehman Brothers

13   Holdings Inc. as plan administrator on behalf of itself,

14   Lehman Brothers Special Financing, and the other Lehman

15   entities, together with the official committee of unsecured

16   creditors seeking the entry of an order pursuant to Rule

17   9019 of the Federal Rules of Bankruptcy Procedure and

18   Section 105(a) of title 11 of the United States Code for

19   approval of a settlement agreement dated as of

20   September 29th, 2017 by and among the plan administrator on

21   behalf of LBHI, LBSF, and the other Lehman entities, and

22   Citibank, N.A. on behalf of itself and the other Citibank

23   entities.

24             Prior to the petition date LBHI had deposited

25   $2 billion with Citibank, and prior to the date of the

Page 14

1    settlement motion the Lehman entities maintained deposit

2    accounts with Citibank with an aggregate balance of

3    approximately $2.093 billion.

4         The settlement agreement between the plan

5    administrator and Citibank resolves the relevant claims,

6    including the settled claims, and the relevant adversary

7    proceedings, as such terms are defined in the motion, and

8    will result in the return of approximately $1.74 billion to

9    the Lehman entities from the deposit accounts with Citibank.

10        Pursuant to the settlement agreement all of the

11   pending litigation between the parties that is before this

12   Court will be resolved, including the Citibank litigation,

13   the CitiMortgage litigation, and the flip clause litigation,

14   each of which the Court is intimately familiar with and

15   which is described in greater deal in the motion.

16        Rule 9019 of the Federal Rules of Bankruptcy

17   Procedure provides in pertinent part that, "After notice and

18   a hearing the Court may approve a compromise or settlement."

19        Courts have held that a settlement under

20   Bankruptcy Rule 9019 will be approved if it is fair and

21   equitable and in the best interest of the estate.

22        The settlement proponent bears the burden to

23   persuade the Court that the settlement is in the best

24   interest of the estate.

25        In assessing whether a settlement is in the best

Page 15

1    interest of the estate "it is not necessary for the Court to

2    conduct a mini-trial of the facts or the merits underlying

3    each dispute."  In re: Adelphia Communications Corp., 368

4    Bankruptcy 140, Bankruptcy Southern District of New York,

5    2007.  Rather the Court must be apprised of those facts that

6    are necessary to enable it to evaluate the settlement and to

7    make a considered and independent judgment.

8         To be approved the settlement need not be the best

9    that the debtor could have obtained, rather "there is a

10   range of reasonableness with respect to a settlement.  A

11   range which recognizes the uncertainties of law and fact in

12   any particular case and the common risks and costs

13   necessarily inherent in taking any litigation to

14   completion."  Newman versus Stein, 464 F.2d 689, Second

15   Circuit, 1972.  Cert denied 409 U.S. 1039, 1972.

16        When courts in the Second Circuit consider whether

17   a settlement is within the range of reasonableness they

18   apply the following factors set forth in Motorola versus

19   Official Committee of Unsecured Creditors.  In re: Iridium

20   Operating, LLC, 478 F.3d 452, Second Circuit, 2007,

21   colloquially known as the Iridium factors.

22        One, the balance between the litigation's

23   possibility of success and the settlement's future benefits.

24        Two, the likelihood of complex and protractive

25   litigation with its intended expense, inconvenience, and

1    delay.

2           Three, the paramount interest of creditors.

3           Four, whether other parties in interest support

4    the settlement.

5           Five, the nature and breadth of releases to be

6    obtained by officers and directors.

7           Six, the competency and experience of counsel

8    supporting, and the experience and knowledge of the

9    bankruptcy judge reviewing the settlement.

10          And seven, the extent to which the settlement is

11   the product of arms length bargaining.

12          In evaluating the reasonableness of the settlement

13   agreement here the Court has applied the Iridium factors and

14   concludes that the settlement is well within the range of

15   reasonableness and is unquestionably in the best interest of

16   the Lehman estates.

17          In particular when considering two of the most

18   significant Iridium factors, one, whether the likelihood of

19   the plan administrator succeeding in litigating the claims

20   proposed to be settled is outweighed by the future benefits

21   the estate can enjoy from the proposed settlement; and two,

22   the prospect of complex and protracted litigation were the

23   settlement not to be approved, the Court finds that such

24   factors clearly and overwhelmingly weigh in favor of

25   approval of the settlement.

Page 17

1          By the settled claims the Citibank entities have

2     asserted approximately $2.1 billion in claims against the

3     Lehman entities, the majority of which have been asserted in

4     full against LBSF, LBCC, or LBCS as primary obligor, and

5     against LBHI as guarantor.

6          The settled claims involve more than 30,000

7     transactions, including complex derivatives transactions

8     which were currently being litigated before the Court in the

9     Citibank litigation which was pending at the time of to

10    settlement.

11         In addition, as described in the motion and in the

12    declaration of Mr. Mullaney filed in support thereof, the

13    relevant adversary proceedings involve dozens of other

14    causes of action based on equally complex prepetition

15    financial transactions involving the Citibank entities and

16    the Lehman entities.

17         As Mr. Mullaney describes, the plan

18    administrator's attempts to settle these complex disputes on

19    an individual or piecemeal basis proved to be difficult and

20    impractical.

21         Although the plan administrator has asserted that

22    many of the claims asserted by the Citibank estates are

23    greatly overstated and could greatly be reduced if litigated

24    to finality, the plan administrator also recognizes that

25    litigation is inherently uncertain and thus determined in

Page 18

1    the exercise of its sound business judgment that a global

2    settlement of the relevant adversary proceedings and the

3    benefits of such a settlement would outweigh the likelihood

4    of success in litigating each of to disputes.

5         The Court concludes that the plan administrator's

6    determination is reasonable and should be approved.

7         In examining a settlement pursuant to Bankruptcy

8    Rule 9019 the Court need not determine a specific dollar

9    amount for the claims at issue, rather the Court is required

10   to evaluate whether the settlement, as an integrated

11   compromise, falls above or below the lowest point in the

12   range of reasonableness.

13        The Court finds that given the numerous highly

14   complex disputes being resolved through the settlement

15   agreement and the Lehman estate's ability to immediately

16   recover substantial funds from Citibank that have been held

17   in the deposit accounts for nearly nine years, the

18   determination to enter into the settlement falls well above

19   the lowest point in the range of reasonableness.

20        Moreover, the Court finds that the prospect of

21   complex and protracted litigation without a settlement, the

22   second Iridium factor, is all but certain.  This factor also

23   weighs heavily in favor of approval of the settlement

24   agreement.

25        The plan administrator has asserted that

Page 19

1    litigation of the relevant adversary proceedings will

2    continue to be time-consuming and expensive.  The Citibank

3    litigation alone, which the Court notes is only one of the

4    relevant adversary proceedings being settled here, has

5    involved 5 years of discovery, the production of over

6    1.4 million documents, over 30 expert witnesses,

7    approximately 100 depositions -- 170 depositions, and span

8    42 days of trial thus far.

9            Entry into the settlement agreement enables the

10   Lehman entities to avoid expending further resources in

11   connection with all disputes with Citibank in the Lehman

12   cases, including the Citibank litigation.

13           Accordingly, the Court finds that the plan

14   administrator's determination to enter into the settlement

15   agreement is a reasonable determination in view of the time

16   and expense of complex litigation that will be avoided by

17   the settlement and in light of the Lehman estate's ability

18   to recover $1.74 billion at this time.

19           The Court finds that the plan administrator

20   appropriately exercised its business judgment here, and the

21   Court approves the settlement pursuant to Bankruptcy Rule

22   9019.

23           Okay.  So that concludes my ruling, which you can

24   reference in the order that you present approving the

25   settlement.

Page 20

1            But I'd like to take a few minutes, if you don't

2       mind, to say some things.

3            This has been an extraordinary experience for all

4       of us, for me personally, and for my staff.  Ms. Chu started

5       when the trial started.  She was not even here for I think

6       it was five days of argument on summary judgment motions,

7       and that's not even counting the summary judgment motion

8       that we held some time ago, which I think might even be

9       before Mr. Cohen's involvement in the case.  I think we had

10      your partner, Mr. Shimshak here and your other partner,

11      Ms. Hammerman, on that as well.

12           Given the scope and complexity of this the

13      parties' level of cooperation during the run up to the trial

14      is -- was and is remarkable.  There were very few discovery

15      disputes.  There were very few, if any, disputes over

16      scheduling.  And I think that reflects, notwithstanding the

17      difficulty and the huge stakes that were involved here, that

18      counsel maintained an excellent working relationship with

19      one another, and your respect for each other was on display

20      and manifest during the entirety of this case.  It was quite

21      extraordinary.  There were some very tense moments, and your

22      respect and civility to one another and to the Court were

23      unflagging and were noteworthy.

24           Next, the teams that you brought to bear.

25      Certainly, Mr. Rossman, and you Mr. Cohen, had the lead

Page 21

1   role, the burden of which I can only imagine.  I know that

2   your work every day here didn't end when you left, and I

3   truly cannot imagine the physical and emotional toll that it

4   took.  But you were backed up by tremendous teams, some of

5   whom I got to see in action, and I am grateful for the fact

6   that given how high the stakes were you had the confidence

7   to, and the good sense frankly, to enable some of your

8   junior partners and associates to present testimony before

9   the Court.  To a man and a woman they were fabulous, and I

10  hope that for some of them, many of whom it may have been

11  their first time presenting such a significant piece of

12  evidence, it will not be the last time.  I was grateful for

13  that and it's very much appreciated and your mentorship of

14  them I think was very much in evidence.

15          There were undoubtedly a lot of people that I

16  didn't get to see who were hold up in those rooms that you

17  had in the courthouse buried beneath jelly beans and

18  printers and coffee cups, and to each and every one of them

19  we are grateful.

20          Things went remarkably smoothly here.  We had very

21  few technical glitches.  There were real-time demonstratives

22  produced.  All of it was quite remarkable and I think you

23  too, Mr. Rossman and Mr. Cohen, would be the first to

24  acknowledge that you couldn't have done it without the

25  support of those teams.  So for that I am grateful.

Page 22

1              Your clients, many of whom sat here day in, day

2      out paying rapt attention to everything that happened.  Some

3      were not able to be here every day, some had other business

4      to attend to.  I know that they were paying attention to

5      everything that occurred.

6              During the course of the trial, which began in

7      April and the leaves were coming on the trees and ends today

8      when leaves are falling off the trees, people experienced

9      life events.  Not just birthdays and anniversaries, we had

10     at least one birth --

11              UNIDENTIFIED SPEAKER:  I think we had three.

12              THE COURT:  We had three?

13              MS. RAY:  Almost four.

14              UNIDENTIFIED SPEAKER:  Yeah.

15              MS. RAY:  Four as of today.

16              UNIDENTIFIED SPEAKER:  Four today.

17              THE COURT:  I have the chills.  I was only aware

18     of one.  One of the wonderful people from Citibank who was

19     here faithfully day in and day out until her newborn child

20     made it impossible for her to be here.  so that's something.

21     I think -- I don't think if we had Bat Mitzvahs and Bar

22     Mitzvahs.  We had beginnings of college.  And there was some

23     loss on both sides.  I know that representatives of clients

24     lost family members who were dear to them.

25              And notwithstanding that -- and this is quite

Page 23

1    extraordinary -- notwithstanding that I know that they

2    remained engaged in the process in which they had an amazing

3    level of dedication.

4           People think of these cases as just about money,

5    and I think that certainly they're about money, but they're

6    also about peoples dedication to the people that they work

7    with, peoples dedication to principles of law, and the way

8    practices are conducted at various firms, and I think people

9    were also aware of the significance beyond these four walls

10   of what occurred here.

11          For better or worse the Court was not given the

12   opportunity to pronounce any rules of law, but the case

13   nonetheless I think was and will be very instructive, lots

14   of issues having to do with the conduct of these cases and

15   the nature of these derivatives.

16          It was certainly a learning process.  I learned a

17   lot.  I've probably forgotten a little bit of it by now, but

18   I certainly learned a lot and I hoped that everybody learned

19   a lot too.

20          Finally, the level of skill, the level of good

21   nature, the level of generosity of spirit that you,

22   Mr. Rossman, and you, Mr. Cohen, brought to bear I will

23   never forget.  I see a lot of very skilled lawyers in here,

24   and that is my great privilege and honor.  You two have set

25   a very, very high bar.  It was -- joy may not be the right

1    word -- but it was exciting to watch you in action and it

2    was my great privilege to preside over the trial.

3            I probably got tired sometimes.  I may have been

4    short with you, I may have lost my patience.  So that I

5    apologize.

6            I have nothing but the utmost respect, and that

7    respect has increased today by your expressions of

8    appreciation for the Court, for the Court staff, especially

9    for Ms. Isen, without whom I couldn't get around every day.

10           So dare I say we miss you, we're glad to see you,

11   I think some have described this case -- this trial as epic,

12   one might even say it was a marathon, but we're completing

13   the marathon today, 26.2 miles.

14           Before you go -- see she's telling me what to do

15   here.  She's telling me I can't give it away.  But because

16   each case stands on its own Ms. Isen and I have a parting

17   gift for each of you.  This is it, this is the whole case

18   right here.  They say -- it says long credit, short

19   protection, black net seller, red net buyer, short credit,

20   long protection.  Would you approach?

21           UNIDENTIFIED SPEAKER:  I could have used that.

22       (Laughter)

23           UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

24           THE COURT:  Take it and frame it.

25           UNIDENTIFIED SPEAKER:  This may be the part that I

Page 25

1    forgot.

2       (Laughter)

3          THE COURT:  You're not getting my handwritten

4    copies of the calendar which I've had taped on the wall.

5    These I'm going to keep so that I can remember everyone with

6    the 42 days.

7          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

8          THE COURT:  Thank you.  I forgot one.  Step back,

9    one more moment.  I forgot the most important one.  Your

10   families.  Your families.  Children, wives, anyone else in

11   your life who put up with this entire thing and who

12   undoubtedly asked you day in and day out when it was going

13   to be over.  Are you kidding me we have to cancel vacation?

14   You look terrible.  I can't stand this anymore.

15          To your families, just thank you very much to

16   them.  I hope they're happy to have you back.  I'm sure that

17   they are.  So my husband on the other hand you're going to

18   hear from him.

19       (Laughter)

20          THE COURT:  Any way, I think that's it.  I think

21   we're done.  All right?  Thank you very much.

22       (A chorus of thank you)

23          (Whereupon these proceedings were concluded at

24   10:02 a.m.)

25                          * * * * *

1                          I N D E X

2

3                          RULINGS

4                                                           PAGE

5    Doc #56300 Motion for Approval of Settlement

6    Agreement Among Citibank, N.A., and Certain of Its

7    Affiliates, and Lehman Brothers Holdings Inc.,

8    and Certain of Its Affiliates                          13

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                    C E R T I F I C A T I O N

2

3      I, Dawn South certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Dawn South    Digitally signed by Dawn South
                     DN: cn=Dawn South, o, ou,
                     email=digital@veritext.com, c=US
6      _____
                     Date: 2018.04.25 12:05:04 -04'00'

7      Dawn South

8      Certified Electronic Transcriber

9

10

11     Date:  October 16, 2017

12

13

14

15

16

17

18

19

20

21

22     Veritext Legal Solutions

23     330 Old Country Road

24     Suite 300

25     Mineola, NY 11501