**Hearing Date and Time: June 7, 2018 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (SCC) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

## REPLY IN SUPPORT OF MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

## TABLE OF CONTENTS

Page

REPLY ...................................................................................................................1

I.      Issues Not Before This Court ...............................................................2

II.     The Objections Should Be Overruled ...................................................4

        A.      Issuance of Stock Is Not Prohibited ........................................4

        B.      The Relief Requested Is Not a "Modification"....................12

CONCLUSION ...................................................................................................17

WEIL:\96551358\16\58399.0011

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. files this reply in further support of the *Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (ECF No. 57036) (the "<u>Motion</u>")[1] and respectfully represents as follows:

## **REPLY**

1.    *Not one* creditor of LBHI and *not one* holder of an equity interest in LBHI objected to the Motion in its capacity as creditor or equity holder, i.e. a party in interest in these cases.  This is not surprising; it is uncontested that the relief requested will benefit *all* creditors of and *all* holders of equity interests in LBHI by increasing the distributable value of the Chapter 11 Estates.

2.    Two parties that made outsized economic investments *outside of these cases* objected to the Motion, and three others joined one of the objections, even though the relief requested in the Motion could only lead to increased distributions to all five of the parties on all of their claims against LBHI.[2]   In addition, the liquidators of the general partner of the Partnerships adopted the same objection so that the arguments contained therein could be considered even if the Court found that the Objector (DB) did not have standing to object on its own (because DB is objecting as a creditor of a creditor and case law is clear that such a party is not a party in interest with standing to object).[3]

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

[2] Objections were filed by Deutsche Bank AG, London Branch ("<u>DB</u>") (*see* ECF No. 57490 (the "<u>DB Objection</u>")) and Barclays Bank PLC ("<u>Barclays</u>") (*see* ECF No. 57595 (the "<u>Barclays Objection</u>")).  Citigroup Global Markets Inc., Merrill Lynch, Pierce Fenner & Smith Inc. and Merrill Lynch International and CarVal Investors UK Limited each filed a joinder to the DB Objection with no additional substance.  (*See* ECF Nos. 57596, 57600 and 57601.)

[3] *See* ECF No. 57603 (the "<u>Liquidators' Objection</u>" and collectively with the DB Objection and Barclays Objection, the "<u>Objections</u>" and their proponents, the  "<u>Objectors</u>").

3.      The content of the Objections can be divided into, and is therefore addressed below, in two parts.  Arguments regarding alleged harm to the objectors' outside investments or expectations of purchasers of ECAPS (for undisclosed prices from third parties) from any subsequent Preferred Securities Substitution may be issues for an English court to decide.  They are not before this Court.  The remaining arguments, which contain tremendous rhetorical flourish but no substantive merit, fall away upon scrutiny.

4.      For the reasons set forth in the Motion and below, the Objections should be overruled and the Motion should be granted.  A comparison reflecting revisions to the Proposed Order is attached hereto as Exhibit A.

## I.      Issues Not Before This Court

5.      The Motion only seeks authority to *issue* preferred stock.  It does *not* seek to compel a Preferred Securities Substitution.  The Motion clearly acknowledges that "[t]he Preferred Securities Substitution may be challenged in England by the holders of ECAPS" and that "[a]ny such challenges … are matters for an English court." [Mot. ¶22.] Therefore, much of what is raised as an issue in the Objections need not be determined by this Court and should be ignored completely for purposes of the Motion.  Any challenges to the Preferred Securities Substitution set forth in the Objections do not prevent approval of the Motion now.

6.      Two out of the three arguments in the DB Objection fall squarely into this category.

7.      Section III of the DB Objection raises questions of fact on two themes: (i) when did LBHI know or when should LBHI have known that the Preferred Securities had value and (ii) what were expectations of various ECAPS holders over time.  An English court's determination of these questions may be required if a party challenges a Preferred Securities Substitution, but these questions are not before this Court.  Regardless of the answer to these

questions, there is no question – and no Objection disputing – that the relief sought by the Plan Administrator in the Motion will benefit all creditors and equity holders of LBHI in their capacities as such.[4]

8.    Section II of the DB Objection suggests that LBHI will not be able to compel a Preferred Securities Substitution because LBHI cannot enforce the Partnership Agreements because the agreements were executory contracts rejected pursuant to the Plan. Again, this argument may be made before an English court after the Motion is granted.[5]   (Of course, admissions made by DB in the DB Objection and relevant case law notably absent from the Objection will make it virtually impossible for any such argument ultimately to succeed.[6])

---

[4] Accordingly, the Plan Administrator will not respond to each and every allegation made in the Objections.  Its failure to do so is not an admission of any allegation.  An English court will ultimately determine, for example, whether it is relevant or persuasive that LBHI knew that the Partnerships, at one time, held certain cash from investments in liquidity funds, when *LBHI* held and maintained possession of that very cash for years while in these cases.  (An English court will further consider the relatively inconsequential value of such cash compared to the potential value of the remaining majority of Partnership Assets.)  An English court will also determine whether LBHI acted within a reasonable timeframe in seeking a Preferred Securities Substitution, considering the "fog of Lehman" had not lifted either when the GP first asked LBHI to commence a substitution or before the GP and the Partnerships dissolved in 2010 (i.e., when there was no counterparty with whom LBHI was left to engage).  And an English court will determine the expectations of the various ECAPS holders over time.  Relevant to that inquiry may be: the fact that the ECAPS had been dissolved for years; discovery of the amounts paid by the Objectors for their postpetition investments in ECAPS; and the acknowledgements by the GP that Preferred Securities Substitutions were possible subsequent to LBHI's bankruptcy.  The Liquidators' Objection may, in fact, be helpful to LBHI in this regard, as the liquidators confirm the purpose of the Partnerships was to "raise regulatory capital for LBHI" [Liq. Obj. ¶7; Katz Decl. ¶¶7, 9] and explain that the Partnerships (i) were aware and conceded that a Trigger Event occurred, (ii) requested that LBHI issue the Substitute Preferred Stock to consummate a Preferred Securities Substitution, and then (iii) dissolved before LBHI's Plan Effective Date.  [*See* Liq. Obj. ¶¶3, 11.]

[5] As noted in the Motion, it is possible that an English court would be interested in input from this Court and it may be appropriate for this Court to assist the English court on a particular issue. [*See* Mot. ¶22.]

[6] If the Partnership Agreements are executory contracts at all, in paragraph 12 of its objection, DB admits that LBHI is a party to the Partnership Agreements for very limited purposes – essentially the clause governing the Preferred Securities Substitution.  Rejection of an executory contract under section 365(a) constitutes a breach, not a termination, of that contract.  *In re Enron Corp.*, No. 01-B-16034 (AJG), 2006 WL 898033, at *4 (Bankr. S.D.N.Y. Mar. 24, 2006); *Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 701 (S.D.N.Y. 2014) ("Rejection is not a termination, but rather gives rise to a remedy for breach of contract in the non-debtor party." (internal quotation marks omitted)).  Likewise, rejection does not necessarily result in a *material* breach giving rise to a right of the counterparty to avoid complying with the contract.  *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386-87 (2d Cir. 1997).  Instead, bankruptcy courts must look to applicable contract law to determine the rights and remedies of the counterparty to a rejected contract.  *Id.*  Whether a breach is material under applicable contract law is a fact-specific inquiry in which courts typically consider to what extent the injured party will be deprived of the benefit that it reasonably expected under the contract and whether the breach defeats the fundamental object of the contract.  *See*, *e.g.*, *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp.

9.      If objecting parties prevail in an English court to prevent a Preferred Securities Substitution, such parties will suffer no harm from this Court's granting of the Motion and LBHI's having the ability to issue the Substitute Preferred Stock.  If, though, as LBHI will argue for, objecting parties do not prevail in an English court, then objecting parties will have had their day in court, will have tried the issues fairly and completely, but will not receive a windfall at the expense of LBHI's creditors and equity holders.  LBHI is not seeking to advantage its position in litigation to come in the English courts.  The Objectors are seeking to preclude LBHI from having its day in court.

## II.     The Objections Should Be Overruled

10.      LBHI has for more than six years since the Effective Date of the Plan collected significant assets, including from non-controlled affiliates around the globe, to distribute to its creditors in the waterfall priority dictated by the Plan.  LBHI seeks to continue to implement the Plan and collect assets to which it believes it is entitled.  The Objectors, who lay claim to some of the same assets, seek to block LBHI to better their chance of individual profit from high-risk investments outside of the Chapter 11 Estates.  As detailed below, none of the Objections' remaining arguments is a sufficient basis to deny the relief requested.  Described in an entertaining fashion, the arguments are red herrings.  The Court should not be distracted.

### A.     Issuance of Stock Is Not Prohibited

11.      Ignoring the obvious benefit to creditors of the relief requested, and seemingly grasping for any excuse to block LBHI, the Objectors invent a prerequisite and then

---

2d 283, 295-96 (S.D.N.Y. 2005) (noting that a material breach is one that "go[es] to the root of the agreement between the parties" and that a determination of materiality is "necessarily a function of context and circumstances"); *Forsyth Cty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 633 (2010) ("A breach is material when it is so substantial and fundamental as to defeat the object of the contract." (internal quotation marks omitted)). Here, where LBHI is willing and will be able to consummate a Preferred Securities Substitution, DB cannot establish that rejection gave rise to a material breach or, even if it did, that LBHI could not cure that breach by consummating the Preferred Securities Substitution.

blindly assert that the Plan Administrator has failed to establish compliance with Delaware law and federal securities law.  [*See* B. Obj. ¶6; DB Obj. ¶48.]  This general and vague assertion reflects a complete misunderstanding as to how Delaware corporate law and federal securities laws operate.  Indeed, Securities Exchange Commission ("<u>SEC</u>") regulations and Delaware corporate laws will be fully satisfied.

     i.     <u>SEC Regulations Do Not and Will Not Prohibit Issuance of Stock</u>

12.     For its Objection, Barclays states that "the Plan Administrator makes no mention of any confirmation from the SEC."  [B. Obj. ¶9.]  The Motion makes no such mention because LBHI does not need *advance* – or indeed any – approval from the SEC in order to rely on exemptions from registration under the Securities Act of 1993, as amended (the "<u>Securities Act</u>").  The federal securities laws and SEC rules and regulations thereunder do not and will not prohibit this Court from granting the Motion, because such provisions are *remedial* in nature. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 238 (2d Cir. 1985) (noting that securities laws are "remedial" and courts should be wary of interpreting them too broadly).

13.     LBHI only needs to issue the Substitute Preferred Stock pursuant to a valid Securities Act exemption. *See SEC v. Bronson*, 14 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) ("Under Section 5 of the Securities Act, securities offered for sale must be registered by filing a registration statement with the SEC, *unless a statutory exemption to the registration requirement applies*.") (emphasis added).

14.     There are a number of Securities Act exemptions from registration upon which LBHI may rely to issue the Substitute Preferred Stock, including but not limited to, the statutory private placement safe harbor codified in section 4(a)(2) of the Securities Act. *See* 15 U.S.C § 77d.  LBHI could also utilize Regulation S, which exempts certain offerings

5

outside the United States from registration under Section 5 of the Securities Act.[7] *See* 17 C.F.R. § 230.901. Or, LBHI may rely on an exemption under Section 3(a)(9) allowing issuance under certain circumstances to effect an exchange. *See* 15 U.S.C § 77c. This Court need not decide, nor even consider, if any or all (or any combination) of these exemptions will be available. Such a decision is for the *Plan Administrator* to make prior to issuing any such security. The Plan Administrator will not cause LBHI to issue the Substitute Preferred Stock pursuant to an exemption from registration under the Securities Act if it determines no viable claim for such an exemption would be available.

15. Likewise, the Plan Administrator has no obligation to seek advance approval from the Internal Revenue Service, as the Barclays Objection suggests. [B. Obj. ¶10 (stating "there is simply no evidence that the . . . IRS would also be willing to permit LBHI to . . . issue preferred securities.").] LBHI may seek a ruling from the IRS if it is concerned that the issuance of the Substitute Preferred Stock would jeopardize the value of certain tax attributes; but LBHI is just as entitled to determine that the benefit of any stock issuance outweighs the cost of any potential loss of tax attributes and to proceed without a ruling. LBHI is vested with the sole decision-making authority in this regard pursuant to the Plan. (*See* Plan §§6.1(b)(iii) (vesting the Plan Administrator with the authority to "exercise its reasonable business judgment to direct and control the wind down . . . and . . . abandoning of the assets of the Debtors . . . as necessary to maximize Distributions to holders of Allowed Claims"), 6.1(b)(iv) (same with respect to "prosecut[ing] all Litigation Claims . . . on behalf of the Debtors") and 6.1(b)(x) (same with respect to "administer[ing] each Debtor's tax obligations").).

---

[7] The ECAPS themselves were primarily offered outside the United States pursuant to Regulation S. *See* each ECAPS prospectus attached as an exhibit to the *Declaration of Richard Katz in Support of Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc.* (ECF No. 57037).

ii.    Delaware Law Does Not Prohibit Issuance of Stock

16.    The Objectors simply omit reference to the applicable Delaware corporate law and case law that contradicts the premise of the Objections entirely.  The *only* support the Objectors cite in their attempt to manufacture a Delaware corporate law issue is the unpublished opinion of *Boris v. Schaheen,* No. CV 8160-VCN, 2013 WL 6331287, at *2 (Del. Ch. Dec. 2, 2013).  Remarkably, although both the DB Objection and Barclays Objection rely *solely* on this opinion, neither Objection discloses that the opinion was *abrogated* by amendments to Delaware General Corporation Law section 205 and is now considered too strict with respect to corporate formalities and the ratification of certain corporate acts.  *See In re Numoda Corp. S'holder Litig.*, C.A. No. 9163–VCN, 2015 WL 402265 at *15 (Del. Ch. Jan. 30, 2015) ("[*Boris v. Schaheen*] is now the wrong result"), aff'd, 128 A.3d 991 (Del. 2015) (unpublished table decision); *Finnegan v. Baker*, 35 N.E.3d 778, 784 n.8 (Mass. App. Ct. 2015) (noting *Boris v. Schaheen* "is now moot" and *rejecting the notion* that "corporate acts . . . and stocks found to be 'void' due to failure to comply with applicable provisions . . . may not be ratified or otherwise validated on equitable grounds.").  Delaware General Corporation Law section 205 now "empowers the Court to grant an equitable remedy for corporate acts that once would have been void at law and unreachable by equity." *In re Numoda Corp. S'holder Litig.*, WL 402265 at *7.  The Objectors have no support for their Delaware law argument.

17.    The Objectors' general assertions regarding Delaware corporate law in an attempt to create the specter of a governance issue where none exists are equally misguided. From a Delaware corporate law perspective, as Barclays concedes, the Substitute Preferred Stock was available to be issued under the pre-Effective Date charter.  [B. Obj. ¶7; (*see* Charter §4.1.).] LBHI's pre-Effective Date board of directors had authorized the issuance of the Substitute

7

Preferred Stock.  LBHI's current board can likewise approve the issuance of the Substitute

Preferred Stock in conjunction with the Proposed Order once approved by the Court.  From a

Delaware corporate law perspective, there are no governance issues here.

18.    Further, there is no doubt that the entry of an order by this Court can

constitute a valid act under Delaware corporate law.  An order will constitute a corporate action

which has the "effect as if exercised and taken by unanimous action of the directors and

stockholders of the corporation."  Del. Code Ann. tit. 8, § 303(a). This long standing rule is

codified at Delaware General Corporation Law section 303(a):

> Any corporation of this State . . . may put into effect and carry out any
> decrees and orders of the court or judge in such bankruptcy proceeding . . .
> without further action by its directors or stockholders . . . with like effect
> as if exercised and taken by unanimous action of the directors and
> stockholders of the corporation.

*Id.*; *see Gates v. VPI Liquidation Corp. (In re VPI Liquidation Corp.)*, 353 B.R. 431, 437

(W.D. Pa. 2006) (recognizing that "[u]nder Section 303(a) of the Delaware General Corporation

Law there exists no state corporate law impediment relative to further action to be taken by the

Debtors' authorized representatives pursuant to Order or approval of this Court"); *RTC v. Allied

Stores Corp. (Matter of Federated Dep't Stores, Inc.)*, 133 B.R. 886, 891 (S.D. Ohio 1991)

(relying on Bankruptcy Code section 105 and Delaware General Corporation Law section 303 to

amend preferred equity certificates in a manner clearly not permitted outside of bankruptcy in

order to avoid a potential tax liability that was "clearly in the best interest of the Bankruptcy

Estate").  To deny a bankruptcy court its authority under Delaware General Corporation Law

section 303 would "unduly restrict and restrain [its] judges." *RTC v. Allied Stores Corp.*,

131 B.R. at 892.

19.    Indeed, the Objectors' argument that the Substitute Preferred Stock would

be void under Delaware corporate law is inconsistent with orders that this Court and other courts

8

in this jurisdiction have routinely entered under the authority of section 1142 of the Bankruptcy

Code exempting strict compliance with state corporate laws.    The confirmation order in

*In re Innkeepers*, for example, provided:

> Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the
> Delaware General Corporation Law, and any comparable provision of the
> business corporation or company laws of any other state . . .[debtors are
> authorized to issue securities] . . . without the need for any approvals,
> authorizations, or consents, except for those expressly required pursuant to
> the Plan.

No. 10-13800 (SCC) (Bankr. S.D.N.Y. June 29, 2011), ECF No. 1804, at ¶ 234; *accord In re*

*Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. July, 27, 2016),

ECF No. 1358, at ¶ 68 ("Pursuant to section 1142 of the Bankruptcy Code, to the extent that,

under applicable nonbankruptcy law or the rules of any stock exchange, any of the foregoing

actions that would otherwise require approval of the equity holders or directors (or any

equivalent body) of the Debtors . . . such approval (including any board resolution required to

confirm that the New Common Stock shall be uncertificated) shall be deemed to have occurred

and shall be in effect from and after the Effective Date without any further action by the equity

holders or directors (or any equivalent body) of the Debtors."); *In re Oldco M. Corp.*, No. 09-

13412 (MG), 2010 WL 2910136, at *18 (Bankr. S.D.N.Y. Feb. 23, 2010) ("To the extent that,

under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the

consent or approval of the stockholders, members or directors of any of the Debtors, this Order

shall, pursuant to section 1142 of the Bankruptcy Code and the State Statutes,[8] constitute such

---

8 "State Statutes" is defined therein as "section 303 of the Delaware General Corporation Law, sections 450.1861
and 450.1862 of the Michigan Business Corporation Act, section 808 of the New York Business Corporation Law
and section 1903(b) of the Pennsylvania Business Corporation Law and any comparable provisions of the business
corporation law of any other state." *In re Oldco M. Corp.* at 17.  These statutes generally operate in the same manner
as section 303 of Delaware General Corporation Law, which operates as described in paragraph 19.

consent or approval, and such actions are deemed to have been taken by unanimous action of the directors, stockholders and members of the appropriate Debtor").

20.    The Confirmation Order in these cases similarly authorized "any or all corporate actions . . . including dissolutions of each of the Debtors, any release, amendment or restatement of any bylaws, certificates of incorporation . . ." and directed that "such documents shall be accepted by each of the state filing offices . . . and shall become effective in accordance with their terms and the provisions of state law."[9]  (Conf'n Order ¶51.)

### iii.    The Plan Did Not "Nullify" the Pre-Effective Date Charter

21.    The Objectors further assert that confirmation of the Plan had the effect of "nullifying" LBHI's pre-Effective Date charter and by-laws.  As support for this proposition, the Objectors look to a Form 15 that LBHI filed with the SEC and to sections 7.7 and 15.2 of the Plan.  [DB Obj. ¶41.]  None supports the conclusion that the pre-Effective Date charter was "nullified" by the Confirmation Order.

22.    The Form 15 which LBHI filed with the SEC has no effect on LBHI's pre-Effective Date charter and no relevance here.  The filing of such a form with the SEC does not itself cancel any class or series of securities or nullify a corporate charter.  The sole purpose of filing a Form 15 is to disclose that the filer no longer believes it has a reporting obligation under the Securities Exchange Act of 1934, as amended ("Exchange Act"),  with respect to certain securities, and that such filer is otherwise terminating or suspending further reporting

---

[9] *See also In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *21 (Bankr. S.D.N.Y. May 25, 2005) (finding the debtor "hereby is authorized and empowered to take such [corporate] actions . . . and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any shareholders' or board of directors' approval"); *In re Source Enters., Inc.*, No. 06-11707 (AJG), 2007 WL 2903954, at *15 (Bankr. S.D.N.Y. Oct. 1, 2007) (finding "matters under the plan…or execution of all documentation incident to the plan…shall be deemed to have been authorized by this Confirmation Order and to have occurred…without any further action by anyone"), aff'd, 392 B.R. 541 (S.D.N.Y. 2008).

under the Exchange Act until further notice or unless otherwise required by the federal securities laws.[10]

23.    Likewise, section 7.7 of the Plan does not "nullify" LBHI's pre-Effective Date charter or by-laws.  It "amended" the documents "to the extent necessary to carry out the provisions of the Plan."   (Plan § 7.7; Plan Suppl., Ex. 1, Part A.)   Nothing prohibits the documents from being further amended, and, as set forth in the Motion, the relief requested herein is in furtherance of LBHI carrying out the most important operative provision of the Plan: Section 6.1(b).

24.    Section 15.2 of the Plan governs the issuance of certain "New Securities'[11] as Plan distributions by the Debtors *after the Effective Date*.  As DB suggests, this provision is irrelevant to the current analysis.  [DB Obj. ¶41.]  It cannot be construed as any limitation on the ability of the Court to authorize LBHI to issue the Substitute Preferred Stock under its pre-Effective Date charter.

        iv.    Section 1123(a)(6) of the Bankruptcy Code Does Not Prohibit Issuance of Substituted Preferred Stock.

25.    The Objectors assert that Section 1123(a)(6) of the Bankruptcy Code prohibits the issuance of Substituted Preferred Stock.  But section 1123(a)(6) applies only to charters applicable upon emergence from bankruptcy.  The Motion seeks authority to issue Substitute Preferred Stock under its pre-Effective Date charter.  As such, Section 1123(a)(6) is not implicated by the Motion.

---

[10] Such reporting obligations generally arise under the Exchange Act from either (or both) the issuance under a Securities Act registration statement or the Exchange Act registration of a specific class or series of securities.

[11] "New Securities means the securities that may be distributed by a Debtor or Debtor-Controlled Entity after the Effective Date to the holders of Allowed Claims against or Equity Interests in such Debtor representing an interest in an existing or newly formed entity of a Debtor or Debtor-Controlled Entity pursuant to and in a manner consistent with Section 15.2 of the Plan." (Plan § 1.107; *see also* Plan Article X (Liquidating Trust).)

### B.    The Relief Requested Is Not a "Modification"

26.    The Objectors spend pages arguing for what LBHI has repeatedly acknowledged: LBHI's Plan has been substantially consummated.  There is no debate about this.

27.    What LBHI does dispute is the Objectors' characterization of the relief requested as an attempt to "modify the Plan" in violation of section 1127(b) of the Bankruptcy Code.  While section 1127(b) of the Bankruptcy Code governs modifications to a confirmed plan, the relief requested does not change, alter or contradict any provisions of (or rights of creditors created by) the Plan, i.e. the relief requested is not a "modification" within the meaning of section 1127(b).

28.    The Bankruptcy Code does not define the term "modification."  Instead, courts determine what constitutes a 'modification' on a case-by-case basis. *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011).

29.    This Court has already – and repeatedly – acknowledged that even if the relief requested were to change, deviate or be an exception from a requirement of the Plan, it is not necessarily a "modification" of the Plan for the purposes of section 1127(b). *See e.g., Order in Aid of Execution of the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (ECF No. 56904) (altering the distribution date set by the Plan); *Order in Aid of Execution of the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (ECF No. 52950) (same); *Order in Aid of Execution of the Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (ECF No. 34348) (same); *Order Establishing Deadline for Filing OFAC Certification and Approving Related Procedures* (ECF No. 49458) (establishing additional requirement and forfeiture mechanism for certain distributions).

WEIL:\96551358\16\58399.0011

30.     In this District, courts have "found that a 'modification' occurred when there was an alteration of 'the legal relationships among the debtor and its creditors and other parties in interest' or when the change to the plan affected the legal relationships among them." *In re Boylan Int'l*, 452 B.R. at 47; *Doral Ctr., Inc. v. Ionosphere Clubs, Inc.* (*In re Ionosphere Clubs, Inc.*), 208 B.R. 812, 816 (S.D.N.Y. 1997); *see In re Johns-Manville Corp.*, 920 F.2d 121, 129 (2d Cir. 1990) (finding a Trustee's motion was not a "modification" where "substantive rights of the Claimants" remain unchanged).

31.     When a plan is silent as to a particular situation, as is the case here, courts may "clarify" and "'interpret' plan provisions to further equitable concerns." *SCH Corp. v. CFI Class Action Claimants*, 597 F. App'x 143, 148 (3rd Cir. 2015), quoting *Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 152–53 (Bankr. D. Del. 2002) and *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 380 (E.D. Pa. 1996).  In doing so, courts further distinguish between actions which "modify" the Plan and those that "implement" or "effectuate" a confirmed plan.  *Hawkins v. Chapter 11 Trustee, (In re Reserve Capital Corp.)*, No. 6:07–cv–0766 (LEK), 2009 WL 701115, at *3 (N.D.N.Y. Mar. 13, 2009) (finding that the Trustee was "effectuat[ing] the terms of the Plan" rather than "amending" the Plan because the settlement did not "violate" or "remove" provisions of the plan); *Johns-Manville*, 920 F.2d at 128-29 (noting that the Plan claims processing facility was granted discretion to "establish procedures" to reduce costs and concluding the exercise of such discretion is not a "modification" within the meaning of section 1127(b)).

32.     For the reasons stated above and in the Motion, the Motion does not propose any action that is inconsistent with the Plan nor does it alter the payment rights of any *creditor* or *party in interest* derived from the Plan.  The issuance of stock itself has no effect on

the "legal relationship" or "payment rights" of any creditor of the estate.  Creditors will continue

to be paid in accordance with the priority outlined in the Plan.  Distributions are *not* being taken

from one class of claims and being made to another.  LBHI will be pursuing recoveries for its

creditors as it has been for close to ten years.

33.    The Plan Administrator seeks approval solely for the act of issuing

Substitute Preferred Stock.  This is an act in furtherance of the implementation of the Plan but

not expressly authorized or prohibited by the Plan.  There is no alteration of "payment rights" *of

any creditor* or *party in interest* because the issuance of the Substitute Preferred Stock will not

result in any dividend being paid ahead of any prepetition claims given that the Substitute

Preferred Stock will be cancelled pursuant to the Plan.

34.    The relief requested is consistent with relief already ordered by this Court

pursuant to section 1142.  This Court has already entered and order stating that the issuance of

equity securities by LBHI is in furtherance of the Plan.  *See Order in Aid of Execution of the

Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated

Debtors* (ECF No. 34347) (ordering "[t]he issuance . . . of notes or equity securities . . .

in connection with any disposition or acquisition of assets of or by a Debtor . . . shall be deemed

to be in furtherance of and in connection with the Plan").

35.    While it is true the newly issued stock would constitute Class 12 Equity

Interests later, the Plan Administrator already has been granted authority by this Court to agree to

such an allowance, as set forth in the Motion, of Class 12 claims,[12] and nothing precludes the

allowance of additional amounts with Court approval.  To the extent this would constitute an

---

[12] Under the *Order Modifying Certain Existing Claims Orders* (ECF No. 29505), "[T]he Plan Administrator is authorized to settle any and all Claims . . . asserted against the Debtors without prior approval of the Court or any other party in interest where . . . the allowed amount of the settled Claim is less than or equal to $200 million[.]"

"alteration" of a "legal relationship" (which it likely does not), it is fully within the discretion already granted by this Court to the Plan Administrator, pursuant to the Plan.

36.    For this reason, the Court should also disregard Barclays's argument that Class 12 Plan Treatment only applies to stock "immediately prior to the Commencement Date." [B. Obj. ¶2; (*see* Plan §4.17).]    Ultimate inclusion in Class 12 (if a Preferred Securities Substitution were to happen) is fully consistent with the Objectors' relative priority, contractual terms, and expectations when they invested in the ECAPS and fully within the Plan Administrator's authority to settle such claims.    This Court has repeatedly issued orders reclassifying claims as Equity Interests to enforce prepetition relationships with the Debtors and to prevent windfalls to those whose rights are no greater than equity holders.    *See, e.g., Order Granting Debtors' Two Hundred Fourteenth Omnibus Objection to Disallow and Expunge Certain Claims* (ECF No. 22881) (reclassifying certain ECAPS Subordinated Guarantee Claims as "equivalent with preferred equity and [thereby] included in the class of Equity Interests"); *Order Sustaining Omnibus Objections and Reclassifying Claims For Restricted Stock Units and Contingent Stock Awards* (ECF No. 46853), *Schwartz v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 548 B.R. 663, 669-70 (S.D.N.Y. 2016) (affirming this Court's reclassification of certain Restricted Stock Units as "equity interests" and considering whether claimant "had the risk and reward expectations of an equity holder"), aff'd, 855 F.3d 459 (2d Cir. 2017).

37.    It is not surprising that no creditor or holder of an interest in Class 12 objected to the Motion.    The only conclusion from this is that, unlike the Objectors', their interests are aligned with maximizing the estate and not distorted by other investments outside

15

the purview of the estate.  Creditors and shareholders only stand to gain from the issuance of the

Substitute Preferred Stock and subsequent allowance of such stock as a Class 12 Equity Interest.

38.    For the same reasons that the Motion is not a "modification" of the Plan, it

should not be construed as a modification of the Confirmation Order.  The DB Objection latches

on to language in the Confirmation Order [¶81.] which effectuates the cancellation of the then-

existing LBHI stock on the Effective Date. [DB Obj. ¶60.]  But the Plan Administrator is seeking

to issue new stock.  The Substitute Preferred Stock will be cancelled pursuant to the Plan *and* the

Confirmation Order.  As such, the issuance of the Substitute Preferred Stock will not result in

any dividend being paid ahead of any prepetition claims.

16

## **CONCLUSION**

39.     The Court has broad authority, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code. The Plan directs the Plan Administrator "to maximize Distributions to holders of allowed claims" and this Motion seeks solely to take the first step in a process to accomplish just that. (Plan § 6.1(b)(iii).) The issuance of the Substituted Preferred Stock will provide an opportunity to increase the value of the Chapter 11 estates, *without reducing the recovery of a single creditor or equity holder.*  It cannot be denied that the relief requested is in the best interest of LBHI's estate.  The Objectors have collectively failed to provide a single legitimate reason for why the estate should suffer so that the Objectors' outside – and opposing – investments may prosper.  Based on the Motion, this reply and on all of the proceedings before this Court in these cases, the Motion should be approved.

Dated: May 24, 2018
      New York, New York

                                                  /s/ *Garrett A. Fail*               
                                                  WEIL, GOTSHAL & MANGES LLP
                                                  767 Fifth Avenue
                                                  New York, New York 10153
                                                  Telephone: (212) 310-8000
                                                  Facsimile: (212) 310-8007
                                                  Jacqueline Marcus
                                                  Garrett A. Fail

                                                  Attorneys for Lehman Brothers Holdings Inc.
                                                  and Certain of Its Affiliates

WEIL:\96551358\16\58399.0011

## Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                                              :        Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :        08-13555 (SCC)
                                                   :
                                Debtors.           :        (Jointly Administered)

-------------------------------------------------------------------x

### ORDER IN AID OF EXECUTION OF
### THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN
### OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

Upon the motion (the "Motion"),[1] dated November 21, 2017 of Lehman Brothers

Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter

11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to

sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") for

authority to issue the Substituted Preferred Stock, all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-

431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the U.S. Trustee; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; (v) all parties who have requested notice in these Chapter 11 Cases; and

(vi) the Joint Liquidators in accordance with the procedures set forth in the second amended

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635); and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that ~~(i)~~ the relief sought in the Motion is in the best interests of the Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; ~~(ii) the GP has been dissolved and subsequently restored; (iii) LBHI's chapter 11 case remains open, LBHI remains a corporation in existence, LBHI is not in a chapter 7 liquidation, and no trustee has been appointed to liquidate LBHI's assets; (iv) effecting the Preferred Securities Substitution (as described more fully in the Motion) would be in the best interests of LBHI's Chapter 11 Estate and economic stakeholders; and (v) the relief requested in the Motion is reasonable and has been granted at the appropriate time in light of the unique circumstances of these Chapter 11 Cases;~~ and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Plan Administrator is authorized to cause LBHI to issue preferred stock under the Charter in such amounts and on such terms as are necessary for such preferred stock to constitute Substituted Preferred Stock under the ECAPS Terms; and it is further

ORDERED that the Substituted Preferred Stock shall be governed by the Plan and will be compromised in accordance with the Plan as if such Substituted Preferred Stock had been issued on the Commencement Date; and it is further

ORDERED that the Plan Administrator and any other party may take any other action that is necessary or appropriate to effectuate the issuance of the Substituted Preferred Stock; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2017 8

_____
Honorable Shelley C. Chapman
United States Bankruptcy Judge