```
                                                            Page 1

 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3

 4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6    LEHMAN BROTHERS HOLDINGS INC.,   Case No. 08-13555-scc

 7                 Debtor.

 8    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 9

10                        United States Bankruptcy Court

11                        One Bowling Green

12                        New York, New York 10004-1408

13

14                        June 7, 2018

15                        10:02 AM

16

17

18

19

20

21

22

23    B E F O R E:

24    HON. SHELLEY C. CHAPMAN

25    U.S. BANKRUPTCY JUDGE
```

Page 2

1    IN RE:  Doc #57036 Motion of the Plan Administrator for an

2    Order in Aid of Execution of the Modified Third Amended

3    Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and

4    Its Affiliated Debtors

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dawn South

1    A P P E A R A N C E S :

2    WEIL, GOTSHAL & MANGES LLP

3          Attorneys for the Debtor

4          767 Fifth Avenue

5          New York, NY 10153-0119

6

7    BY:  GARRETT FAIL, ESQ.

8          JACQUELINE MARCUS, ESQ.

9

10   MORGAN LEWIS

11         Attorneys for Deutsche Bank

12         101 Park Avenue

13         New York, NY 10178-0060

14

15   BY:  JOSHUA DORCHAK, ESQ.

16         MELISSA Y. BOEY, ESQ.

17

18   SIDLEY AUSTIN LLP

19         Attorney for Deutsche Bank

20         787 Seventh Avenue

21         New York, NY 10019

22

23   BY:  ALEX R. ROVIRA, ESQ.

24

25

1  KIRKLAND & ELLIS LLP

2       Attorney for the Joint Liquidators of the General

3       Partners

4       300 North LaSalle

5       Chicago, IL 60654

6

7  BY:  JOSEPH M. GRAHAM, ESQ.

8

9  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

10       Attorney for Citigroup Global Markets Inc.

11       1285 Avenue of the Americas

12       New York, NY 10019-6064

13

14  BY:  KYLE J. KIMPLER, ESQ.

15

16  CLEARY GOTTLEIB STEEN & HAMILTON LLP

17       Attorney for Barclays Bank PLC

18       One Liberty Plaza

19       New York, NY 10006-1470

20

21  BY:  LUKE A. BAREFOOT, ESQ.

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  Good morning.

3      Hello, Mr. Fail, how are you?

4              MR. FAIL:  Good morning, Your Honor.  Well, thank

5      you.

6              THE COURT:  This case is still going on?

7              MR. FAIL:  Coming up on ten years, Your Honor.

8              THE COURT:  Yes, it is coming up on ten years.

9              All right.  So lots of pleadings.  Thank you for

10     the agenda.  I've read everything, but I'm happy to hear

11     from you and anyone else who wishes to be heard this

12     morning.

13             MR. FAIL:  Thank you, Your Honor.  For the record,

14     Garrett Fail, Weil, Gotshal & Manges, for Lehman Brothers

15     Holdings Inc. as plan administrator.

16             Your Honor, for more than six years since Lehman's

17     plan effective date the plan administrator has pursued

18     recoveries on behalf of creditors of the U.S. Chapter 11

19     estates and has successfully recovered vast amounts both

20     from foreign affiliates and from third parties who often

21     sought entitlements, the same assets that the plan

22     administrator did.

23             LBHI acted as it was charged to pursuant to

24     Section 6.1(b) of the plan, to maximize distributions to

25     holders of allowed claims and to make distributions

Page 6

1    consistent with the prepetition global capital structure.

2              Pursuant to that charge over 15 distributions, the

3    plan administrator distributed approximately 44 and a half

4    percent to LBHI's senior unsecured creditors.  Only about

5    six percent of that, Your Honor, was available cash at the

6    first distribution date.  The remaining majority was

7    collected or became available over the next 14 distribution

8    cycles.

9              Under unique circumstances across the Chapter 11

10   estates the plan administrator distributed a staggering

11   $124.6 billion, including $92.2 billion on account of third

12   party and non-controlled affiliate claims, and $32.4 billion

13   among the debtors and their controlled affiliates.

14             The motion on today's agenda seeks an order in aid

15   of further execution of the plan.  There's no question that

16   the relief requested is in the best interest of LBHI's

17   estate and all of LBHI's creditors.

18             We understand the Court has reviewed all of the

19   filings in advance of the hearing, we recognize the Court's

20   busy docket, and respectfully I will not walk through the

21   motion or the plan administrator's reply.  The Court simply

22   has the authority to grant the relief requested pursuant to

23   Sections 105 and 1142 of the Bankruptcy Code.  None of the

24   objections precludes entry of the proposed order.  Given our

25   substantive response it's not clear which, if any, of the

Page 7

1    objections will be prosecuted this morning.

2              So I'm prepared to answer any questions that the

3    Court may have for the plan administrator at this time and

4    would otherwise reserve time to reply to any arguments made

5    this morning.

6              THE COURT:  Where does the plan administrator

7    stand on the question of standing?  Is that something I need

8    to address from your perspective?

9              MR. FAIL:  Based on the pleadings, Your Honor, it

10   didn't matter who was going to make the arguments --

11             THE COURT:  Okay.

12             MR. FAIL:  -- we're not looking to -- just to have

13   Deutsche Bank or Barclays precluded and to have the general

14   partner stand up and make the same arguments.  The arguments

15   are out there, we're sure the Court would consider them sua

16   sponte or whoever was arguing it.  It's not an issue --

17             THE COURT:  Okay.

18             MR. FAIL:  -- that we're going to make the Court

19   decide.

20             THE COURT:  All right.  Thank you.  That's

21   helpful.

22             All right.  So why don't I hear from, it looks

23   like Mr. Dorchak is going to be first up, and then I might

24   have some questions for you.

25             MR. FAIL:  Thank you, Your Honor.

Page 8

```
 1                THE COURT:  Thank you.

 2                Hello, Mr. Dorchak --

 3                MR. DORCHAK:  Good morning, Your Honor.

 4                THE COURT:  -- how are you?

 5                MR. DORCHAK:  I'm fine, Your Honor.  How are you?

 6                THE COURT:  I'm okay.

 7                MR. DORCHAK:  Great.  For the record, Joshua

 8      Dorchak, Morgan Lewis & Bockius LLP, on behalf of Deutsche

 9      Bank, London Branch.

10                THE COURT:  Can I ask you, do others intend to

11      speak or are you kind of taking the laboring on behalf of

12      all of -- not on behalf of the objecting parties -- but are

13      others planning to speak as well?

14                MR. DORCHAK:  My understanding, Your Honor, is

15      that Barclays is going to address one point briefly --

16                THE COURT:  Okay.

17                MR. DORCHAK:  -- after I finish.  I don't know of

18      anyone else --

19                THE COURT:  Okay.

20                MR. DORCHAK:  -- unless maybe liquidator's

21      counsel --

22                THE COURT:  Okay.

23                MR. DORCHAK:  -- that would like to say something.

24                THE COURT:  All right.  Thank you.

25                MR. DORCHAK:  Before I actually do argue anything
```

Page 9

1    if it please the Court I'd like to introduce the

2    representatives from Deutsche Bank who have flown in for the

3    hearing.

4               THE COURT:  Okay.

5               MR. DORCHAK:  It includes Michael Sutton, who's in

6    the front row.

7               THE COURT:  Hello.

8               MR. DORCHAK:  Our declarant.  And Jamie Liu (ph),

9    his colleague next to him.

10              THE COURT:  Okay.  Hello.

11              MR. DORCHAK:  Also Phillip Taylor, who's UK

12   counsel (indiscernible).  And with me at the table in front,

13   Melissa Boey, my colleague, and Alex Roviera from Sidley in

14   New York, as co-counsel.  Just so I've introduced people.

15              THE COURT:  Okay.

16              MR. DORCHAK:  Thank you, Your Honor.

17              So that was a very short introduction.  I'm not

18   surprised that it was short because the premise behind the

19   motion is this is no big deal.  Either because it's simply

20   fulfilling the duty to maximize distributions to creditors

21   or because we've done it before or whatever.  It's a bunch

22   of complicated stuff in England, you don't have to worry

23   about it, this is just straight up trying to kick out more

24   money to the creditors.  Okay.  So --

25              THE COURT:  It's a little more nuanced than that,

Page 10

1    Mr. Dorchak.

2              MR. DORCHAK:  Well I'd like to get much more

3    nuanced than that actually, so that's why it's going to take

4    me a little longer than it took Mr. Fail, if that's all

5    right with Your Honor.  But what I don't want to do, unless

6    you want me do, is go through the elaborate factual

7    background and the waterfall and the options --

8              THE COURT:  I understand.

9              MR. DORCHAK:  -- like the players and all that.

10   I'd like to stick to the --

11             THE COURT:  The question is --

12             MR. DORCHAK:  -- matters of the law.

13             THE COURT:  -- the sole question is whether or not

14   this is something that can be authorized under the plan.

15   That's the question.

16             MR. DORCHAK:  Right.  Whether or not the relief

17   sought furthers the terms of the plan or whether it actually

18   contradicts them, in a null shell.  And I've got four

19   sections of the Bankruptcy Code that I think the motion

20   offends and I'd like to go through those.

21             THE COURT:  Well I don't know that I agree with

22   your characterization of the issue that way.

23             MR. DORCHAK:  Okay.

24             THE COURT:  And this is -- it's kind of

25   simplistic.  But the plan administrator, on a very simple

Page 11

1   level, argues that enhancing the distributions to the Lehman

2   creditors would be in furtherance of the plan, but the

3   question is whether or not it is permitted by the plan.

4           MR. DORCHAK:  Oh, I agree with that

5   characterization, Your Honor.

6           THE COURT:  Right?  That's the question.  Not -- I

7   mean we can almost stipulate to the fact that if Lehman is

8   permitted to do what they seek to do, subject to whatever

9   would happen in England, which is not uncomplicated, that

10  there's a substantial likelihood that there would be an

11  enhancement of distributions to LBHI creditors.  So that's

12  not the question.  The question is, can they do it?

13          MR. DORCHAK:  I agree with that.  My answer is no,

14  Your Honor.

15          THE COURT:  Your answer is no.

16          MR. DORCHAK:  I'm going to try and tell you why.

17  The -- we were accused of getting overly rhetorical with our

18  time machine --

19          THE COURT:  You were pretty rhetorical.

20          MR. DORCHAK:  Well I stand by all the rhetoric,

21  Your Honor, because I think it had a point, it was

22  actually --

23          THE COURT:  I expected you to have slides of --

24  from the movie Back to the Future.

25      (Laughter)

1              MR. DORCHAK:  I didn't want to get silly about it,

2      Your Honor, but I think the point was a legitimate one, that

3      what they're asking for here, what they tell you is no big

4      deal is actually -- we should be able to stipulate that it's

5      extraordinary for a debtor operating under a Chapter 11 plan

6      to say just let me pretend it's 2008 and go back and do some

7      stuff that I say I could do, trust me, in 2008, and then let

8      me -- that stuff happened in 2011, 2012, and then we'll come

9      back to now and I'll go to England some day, I don't know

10     when, and do some stuff that you don't have to worry about

11     it.  That to me is not just a simple request to fulfill a

12     specific subsection of the plan.  And to the extent there is

13     a specific subsection of the plan that the debtors hang this

14     all on it's the one that you just mentioned.

15             So I can just look at that specifically for a

16     moment, maybe that's a good --

17             THE COURT:  Okay.

18             MR. DORCHAK:  -- thing to start with.  Section

19     6.1(b)(iii) is the subsection that permits the plan

20     administrator to "maximize distributions to holders of

21     allowed claims."

22             My point about that subsection is that it's a

23     subsection and it's subject to the introductory portion of

24     Section 6.1(b), which reads -- well sorry -- authorizes the

25     plan administrator to "carry out and implement the

Page 13

1    provisions of the plan, including without limitation .."

2    and then you get to maximizing distributions.

3          So my -- it's a simple point but I think it's

4    important, maximizing distributions is not an absolute.

5    It's not carte blanche.  It's not a ticket to do whatever

6    you want as long as it's good for the creditors.  So you've

7    got to do something that the plan tells you you can do.  You

8    have to be implementing the plan in a way that benefits the

9    creditors.  And that's why we're here arguing.

10         As you said, Your Honor, we're not arguing about

11   whether if they win long term in England some money might

12   come in and then go back out of the creditors, we're not --

13   we don't dispute that.

14         Okay.  Now, the reason I don't believe in a very

15   non-rhetorical academic legal way that the relief sought is

16   consistent with the concept of implementing the plan is four

17   fold.  So you're probably groaning already, but just -- I'll

18   try to be efficient.  Okay?

19         First let's talk about Section 1127, which

20   provides that the proponent of a plan may modify the plan

21   before it goes effective, but then after the plan goes

22   effective it can't -- well sorry -- after it's substantially

23   consummated the debtor can't modify the plan further.

24         And LBHI doesn't dispute that the plan has been

25   substantially consummated, and they don't dispute that they

Page 14

1    can't modify the plan today.  So we're not arguing about

2    that that.  They say they're not modifying the plan.

3              THE COURT:  Right.

4              MR. DORCHAK:  Okay.  That's my first legal

5    statutory question I'd like to look at.  And I have two

6    points on this.

7              The first one is if you look at Section 1127 --

8              THE COURT:  Right.  They say they're not modifying

9    the plan, right?

10             MR. DORCHAK:  Modifying -- modify being a term

11   that needs to be decided on a case by case basis.  And I

12   would have thought it meant change.  They say well it

13   depends what it means.  And they cite Judge Glenn for this,

14   and I'll get to the --

15             THE COURT:  Okay.

16             MR. DORCHAK:  -- I'll get to their interpretation.

17   To me modification doesn't necessarily need to be explained.

18             But here's one thing that 1127(b) explicitly says.

19   Even before the plan goes substantially consummated it can't

20   be modified such that the plan as modified fails to meet the

21   requirements of Sections 1122 and 1123.

22             So whatever else modify might mean Congress said

23   out loud you can't change a plan in a way that contradicts

24   Section 1122 or 1123.  It's right there in the statute.

25             THE COURT:  Okay.

Page 15

1            MR. DORCHAK:  So obviously the next question is,

2    well what do those two sections say?  Section 1123(a)(6)

3    says that a plan has to provide, if the debtor is a

4    corporation, that the corporate charter, the new one

5    established under the plan, include as provision prohibiting

6    the issuance of non-voting equity securities.  That's a

7    quote.  Okay.  That's what you can't do.

8            What does the motion seek to do?  The motion seeks

9    to get permission to issue these substitute preferred

10   securities.  But here's my punch-line, Your Honor, the

11   substitute securities are securities that as defined in the

12   governing documents have no voting rights.  So that's plain

13   and simple, it's in the offering circular and we've quoted

14   it in our brief.

15           So LBHI is saying modify is a vague term, and I'm

16   saying well whatever modify means Congress said you can't

17   change a plan in a way that explicitly contradicts 1123.

18   1123 says you can't issue non-voting securities and you just

19   told me --

20           THE COURT:  I'm still confused --

21           MR. DORCHAK:  -- you want to issue --

22           THE COURT:  -- if LBHI is not taking the position

23   that this constitutes a modification of the plan --

24           MR. DORCHAK:  Uh-huh.

25           THE COURT:  -- they're not taking that position,

Page 16

1    right?  Then why are we talking about 1127 anymore?

2           MR. DORCHAK:  My -- I guess it's an argument is

3    that it may be open to question what modification means

4    generally, but when Congress says out loud that a certain

5    specific thing can't be done then obviously Congress

6    considers that a modification.

7           THE COURT:  Okay.  I'll try it one more time.

8    What you're saying is even though Lehman is saying that

9    they're not modifying the plan, you're saying that they are

10   modifying the plan --

11          MR. DORCHAK:  Uh-huh.

12          THE COURT:  -- attempting to modify the plan --

13          MR. DORCHAK:  Right.

14          THE COURT:  -- and that they can't because of the

15   argument that you've laid out.

16          MR. DORCHAK:  They agree that they can't modify

17   the plan, right?  They just say that's not what they're

18   doing.  I say that's what they are doing for two reasons,

19   and I just gave you the first one.

20          THE COURT:  Okay.

21          MR. DORCHAK:  Which is modification may generally

22   be a vague term that needs to be --

23          THE COURT:  Modify is not a vague term.

24          MR. DORCHAK:  Okay.

25          THE COURT:  It's pretty simple.  They say they're

Page 17

1    not modifying it, you say they are -- maybe they are

2    modifying it and they can't modify it because they don't

3    comply with the provisions of the Code, right?  I mean

4    that's it in a nutshell, right?

5            MR. DORCHAK:  I'm saying you can't get vague about

6    what Congress said specifically, and Congress said this

7    thing specifically about non-voting securities.

8            So before we even get to what modified might mean

9    it can't mean what they want to do on the face of the

10   statute.  All right?

11           THE COURT:  Okay.

12           MR. DORCHAK:  The follow-up argument is if you

13   don't believe that, okay, let's talk about what modify could

14   mean according to Judge Glenn, and Judge Glenn defined

15   modification -- this is in the In re Boilen (ph) case that

16   we both cite -- as "the alteration of legal relationships

17   among the debtors and the creditors and other parties in

18   interest."  So that's what they say they're not doing --

19           THE COURT:  Uh-huh.

20           MR. DORCHAK:  -- and that's what I say they are

21   doing.  Although this is my second argument.  All right.  On

22   this point.

23           So why do I say that they're altering the legal

24   relationship amongst themselves and the ECAPS holders?  I

25   mean probably know what I'm going to say, it seems obvious

Page 18

1    to me, the first way in which they're modifying legal --

2    their legal relationship is that they're taking the ECAPS

3    holders who in such capacity are strangers to this plan and

4    they're saying we're going to jam you into Class 12 of

5    LBHI's creditor --

6            THE COURT:  If they're strangers to the plan how

7    can there be a relationship?

8            MR. DORCHAK:  They're trying to create a

9    relationship where there is none, and that is a change from

10   non-legal relationship to legal relationship.  I feel pretty

11   good that that is a legal -- an alteration in a legal

12   relationship.

13           And my follow up is similar, which is if this

14   relief is granted they basically get a ticket to sue the

15   ECAPS holders in London.  They can't do that today.  That's

16   why we're here.

17           THE COURT:  Uh-huh.

18           MR. DORCHAK:  If you grant the relief and give

19   them something they can go over to England and offer to us,

20   not that we want it, now they've got at least a purported

21   basis to sue us when they couldn't before, and being free --

22   freedom from being sued turning into being sued to me is a

23   change in a legal relationship.

24           Now, we of course on the merits dispute what

25   they're going to say, but that's not my point, my point is

Page 19

1   it went from not being a potential defendant to being a

2   potential defendant.  To me that's an alteration of the

3   legal relationship.

4           And then the third way, which is a little more

5   elaborate, is that there are various guaranteed claims

6   indirect or directly related to the ECAPS.

7           THE COURT:  Lots of parties can become defendants

8   as a result of things that occur beyond their control,

9   right?

10          MR. DORCHAK:  Sure.

11          THE COURT:  For example, I don't know,

12  indemnification claims could arise, right?

13          MR. DORCHAK:  Sure.

14          THE COURT:  And so the just a simple fact of, as

15  you put it, going from a non-relationship status to a

16  relationship status isn't in and of itself offensive, right?

17          MR. DORCHAK:  I think it's a change.  I don't have

18  to prove it's offensive, I have to prove that it's an

19  alteration of a legal relationship.  You can sue me, you

20  can't sue me.  Something has changed there, the legal

21  relationship.  I mean lawsuits are based on legal

22  relationships.

23          THE COURT:  Yes.  But my point is that often time

24  you can become part of, as you put it, a legal relationship

25  because of things that other people do, and that's not

1    necessarily -- you don't necessarily have a veto over that.

2    If there are two parties in a dispute --

3           MR. DORCHAK:  Uh-huh.

4           THE COURT:  -- and they resolve that dispute and

5    that gives rise to an indemnification claim against somebody

6    who the moment before that resolution was, as you put it,

7    without a relationship, all of a sudden they're now in a

8    relationship, right, as an indemnity.

9           MR. DORCHAK:  But a legally different relationship

10   I would say.

11          THE COURT:  Right.

12          MR. DORCHAK:  Yes.  And if that happens to the

13   ECAPS holders because of something beyond their control it's

14   still happening, it's happening because LBHI is making it

15   happen.  That's my point.  They're the ones changing the

16   legal relationship.

17          THE COURT:  Yes, but the question -- but it's

18   circular.  The question is whether they're entitled to do

19   that.  So --

20          MR. DORCHAK:  But we know they're not because

21   Section 1127 says they can't.

22          THE COURT:  If we knew that they were not,

23   Mr. Dorchak, we wouldn't be here.  So the question is

24   whether or not they can do it.

25          So once again, the fact that If Lehman was granted

Page 21

1    the relief, as you in your words, I'm not adopting them, I'm

2    just trying to --

3              MR. DORCHAK:  Understood.

4              THE COURT:  -- articulate what you're telling me,

5    is that the fact that the ECAPS holders would then be in a

6    relationship is not per se objectionable.  The question is

7    whether Lehman is entitled to bring them into that

8    relationship.

9              MR. DORCHAK:  Entitled to alter the current

10   relationship.

11             THE COURT:  Yes, exactly.  Right.

12             MR. DORCHAK:  Of course it would.  The ECAPS

13   holders are all creditors of LBHI already, there's a legal

14   relationship already, right?

15             THE COURT:  But you're telling me --

16             MR. DORCHAK:  But as ECAPS --

17             THE COURT:  -- something differently.

18             MR. DORCHAK:  Right.  I'm acknowledging there is

19   something that would be consistent but then this would be

20   something that I say would change.  And they admit that if

21   there is an alteration then they can't get this relief.

22   That's what the dispute is, if they're actually altering a

23   legal relationship.  I say yes, they say no.  And I'm happy

24   to move on to my next point --

25             THE COURT:  Sure.

Page 22

```
 1              MR. DORCHAK:  -- with my point having been made.
 2   Except I did want to throw in one PS, which is just because
 3   you're -- the thing you're trying to do increases creditor
 4   -- increases the distributions to creditors from your estate
 5   that's not enough to get you an exemption of some sort from
 6   1127.  So Judge Bernstein's Rickle (ph) case --
 7              THE COURT:  Hold on one moment, Mr. Dorchak.
 8              MR. DORCHAK:  Uh-huh.  Sure.
 9              THE COURT:  We're getting word that the phone line
10   cut off.
11              MR. DORCHAK:  Okay.
12              THE COURT:  So if you would take a moment and --
13              MR. DORCHAK:  Shall I sit down?
14              THE COURT:  No, you can stand.
15              MR. DORCHAK:  Already.
16              THE COURT:  Or sit, whichever you want.
17              MR. DORCHAK:  A little sip of water maybe?  Thank
18   you.
19              THE COURT:  Sounds good.
20        (Pause)
21              THE COURT:  Sorry about that, Mr. Dorchak, we
22   don't know what happened, but we appear to be back.
23              MR. DORCHAK:  No problem, Your Honor.  I remember
24   what I was going to say.  Should I continue?
25              THE COURT:  Please.
```

1            MR. DORCHAK:  Okay.  I was talking about there

2     being no exemption from a Section 1127 just because what

3     you're doing is beneficial for the estate so what's the harm

4     in some abstract notion, and Judge Bernstein's Rickle case,

5     which we cited a couple times and there's also a case, SCH

6     Corp., which was cited by both parties from the Third

7     Circuit in 2015 makes this clear, a modification, if it was

8     one, still violates 1127 even if it's good for the

9     creditors.

10            All right.  Now I'm ready to go on to 1142, that's

11     the second section --

12            THE COURT:  Okay.

13            MR. DORCHAK:  -- of the Bankruptcy Code -- or the

14     third if you include 1123, and I think it's violated by this

15     motion.  And I want to start out by saying you may -- I'm

16     sure you noticed this -- they made a motion under Section

17     1142.  We objected and said you can't have that for all the

18     following reasons and we also discussed 1127, it's blocking

19     the relief that they sought.

20            On reply, as you noticed, what they did

21     essentially was well number one there's a bunch of

22     complicated stuff that's going on in England so don't worry

23     about all that, number two, this Court has the power to

24     trump anything the ICC or the IRS, or the Delaware corporate

25     lawyers have to say about anything.  Okay, that's the side

Page 24

1    issue, I don't care about that.  But around page 10 of their

2    brief they say the thing about everything is okay because

3    we're going to do this as if it was 2008.  It's one

4    sentence.  And then after that the rest of the brief is

5    argument that they're not modifying the plan under 1127.  In

6    other words the thing we just talked about.  But they never

7    mention Section 1142 in a substantive way in their reply.

8    And my theory is because they know that they've got a

9    problem under 1142.  But all right, well I'm going to try

10   and argue now why they do.

11          But before I say what it is that's wrong with the

12   1142 relief I wanted to make one point, which is this.  Just

13   -- even if they convinced you that they're right, that the

14   motion does not offend Section 1127, it's all good, they're

15   not modifying anything.

16          THE COURT:  Uh-huh.

17          MR. DORCHAK:  The fact that they're not violating

18   1127 is not a basis to grant the motion, because after all

19   the motion doesn't violate dozens of sections of the

20   Bankruptcy Code --

21          THE COURT:  Right.

22          MR. DORCHAK:  -- and you can't issue an order

23   saying this is okay because it doesn't violate Section 1127.

24   So they need affirmative relief under 1142.  And so even if

25   I haven't said anything you're convinced by yet they still

1    have to convince you on 1142.

2            Now, 1142, as you Your Honor says in subsection

3    (a) that the debtors shall carry out the plan.  Okay.  So

4    again, carry out the plan just like I pointed out that the

5    plan can only be carried out in a way that's consistent with

6    the plan.  And then Section (b) says that the Court may --

7    not shall -- may direct the debtor to transfer any property

8    dealt with by a confirmed plan and to perform any other act

9    that is necessary for the consummation of the plan.

10           So to get the relief under 1142 LBHI has to

11   convince you that number one that what they're asking for is

12   necessary for the consummation of the plan.  That's what the

13   statute says.  And then number two, even if they've

14   convinced you it's necessary, that it's something that you

15   in your discretion should do, because you may do that, but

16   you don't have to do that.

17           My position, as you can imagine, is that the

18   necessity factor does not exist here, and I'll tell you why.

19   The first one is sort of philosophical.  They admit that the

20   plan has been substantially consummated.  So how can

21   anything be necessary to consummate the plan when it's

22   already been substantially consummated?  I'm not sure you

23   need --

24           THE COURT:  I don't understand that inconsistency.

25           MR. DORCHAK:  Okay.

Page 26

1              THE COURT:  Substantially consummated is a term of

2    art.

3              MR. DORCHAK:  Uh-huh.

4              THE COURT:  Substantially is not entirely.

5    Substantially consummated is a useful and important term in

6    other context.  But you can have substantially completed

7    painting your house and it's still necessary for you to go

8    out and buy a little pint of paint because you have a small

9    section still to paint.  So --

10             MR. DORCHAK:  I take your point.

11             THE COURT:  -- I don't really --

12             MR. DORCHAK:  Okay.

13             THE COURT:  -- that's not a killer argument.

14             MR. DORCHAK:  No, that was -- that's my warm-up

15   argument.  That's the one that I said was somewhat

16   philosophical.  All right?  I've got -- I'll move around the

17   more legal points.

18             And there's another sort of philosophical point.

19   Which is how could -- they want this relief to be granted as

20   if it were 2008.  So the philosophical point there is, how

21   can anything that occurs in 2008 be necessary to consummate

22   a plan that isn't even going to be proposed for another

23   three years?  I mean there's a disconnect between what they

24   -- they want to get away with --

25             THE COURT:  Well now you're doing a Schrodinger's

Page 27

1    cat on me, right?  You're -- right?

2             MR. DORCHAK:  They're doing on you, Your Honor,

3    yes.  That's why I said that one is kind of philosophical

4    too.  I stand by it.  But here's the real one, the drum

5    roll, the real reason why.

6             The most important thing about this motion in

7    general is the reason why it's not necessary for the

8    consummation of the plan, which is that it absolutely

9    contradicts the plan.

10            Now that's more than just a logical trick to say

11   it's not necessary for the consummation of a plan to do

12   something that contradicts the consummation of that plan.

13   So what's the contradiction?  But you know what I'm going to

14   say.  The plan and the confirmation order, the amended

15   charter, the amended bylaws, they all say flat out LBHI's

16   stock common and preferred is being canceled, one share

17   remaining goes to the plan trust and the -- I mean I could

18   go and read all this but you know -- I'll just pick one if

19   you don't mind.

20            THE COURT:  Uh-huh.

21            MR. DORCHAK:  The amended bylaws don't just say

22   that the old stuff is canceled, you know, implying there

23   shouldn't be any new stuff because after all there's only

24   one share now, actually the minute bylaws actually say out

25   loud "unless otherwise required by law no capital stock of

Page 28

1    the corporation shall be issuable or transferable to any

2    person other than the plan trust as defined in the plan."

3    That's just flat out LBHI in its capacity as a -- acting

4    under the plan can't issue LBHI stock to anybody except the

5    plan trust, and the ECAPS holders are not the plan trust,

6    and that's a glaring absolute inconsistency.

7              And I could beat away at the point, I don't think

8    I need to, Your Honor, I mean that's -- it's not consistent

9    with canceling all the stock and not being able to issue

10   more stock to say you know what, let's issue some more stock

11   and it's no big deal.  I don't know -- I don't really have

12   much else to say on that point.

13             THE COURT:  Okay.

14             MR. DORCHAK:  I'll move on to the well we've done

15   it before argument.  There's a list of prior orders entered

16   in this case that LBHI cites, and I won't go through it,

17   like you've already -- this Court has already decided that

18   we can sort of create equity whenever we feel like it.  But

19   it's all off point, surprise, and I won't even talk about

20   the administrative stuff, the purely ministerial stuff.  But

21   the idea that you can grant this motion today because, you

22   know, Judge Peck said that they could -- that the debtors

23   can kick out distributions one week before or after the date

24   in the plan.  I mean that's not precedence.

25             The more substantive orders that have been entered

Page 29

```
1    -- I won't go into detail -- but they all do the same thing,

2    which is they decide how an existing prepetition claim

3    against the estate should be classified whether it's

4    subordinated or not in a word.  This motion does not seek to

5    take an existing claim and say, you know what, Your Honor,

6    this should be subordinated.  It seeks to create all of a

7    sudden ten years retroactively a supposed equity interest

8    and then go ahead and treat it under the plan.  That's -- I

9    submit that's different than what the precedent does.

10             And I don't think I want to say anything else

11   about that unless Your Honor wants to hear something else

12   about that.

13             THE COURT:  Okay.

14             MR. DORCHAK:  I'm turning the corner, Your Honor,

15   I'm almost there.

16             THE COURT:  Very good.

17             MR. DORCHAK:  We have an important side which,

18   which is I haven't brought this up yet, but the confirmation

19   order --

20             THE COURT:  Uh-huh.

21             MR. DORCHAK:  -- as the force of law, and in

22   general the plan of course has the force of law -- but

23   that's -- you know, that's why this is important -- the plan

24   is the law of Lehman, right?

25             THE COURT:  Yep.
```

1           MR. DORCHAK:  And the confirmation order makes it

2    a binding final judgment.  If they want to do what they

3    propose to do they have to show you it's okay under the

4    plan, but they also have to show you it's okay to modify the

5    confirmation order.  It's a different -- it's a related

6    thing, but it's a different thing.

7           THE COURT:  Uh-huh.

8           MR. DORCHAK:  And they didn't even try to meet the

9    standard for Rule 60, and I don't think they can.  Why we

10   think they can't is in our brief, I won't go into it, but I

11   don't think that should get swept under the rug.

12          My last issue, the old rejected contract issue.

13   The -- I wanted to start out by just saying something which

14   everyone should know, I have a quote from Judge Seibel

15   affirming Judge Drake in the A&P case, but it could have

16   come from somewhere else.

17          "Rejection of executory contracts are fundamental

18   issues of bankruptcy law unique to the Bankruptcy Code and

19   thus challenges to the effects of rejection orders are core

20   proceedings because of claims that would not exist

21   independent of the bankruptcy case."

22          Now you know that -- close quote, I'm sorry.  You

23   know that.  I bring it up because isn't it strange that the

24   debtors want a judge in England to decide all this

25   complicated rejected contract stuff that they put in their

Page 31

1    footnotes in their reply.

2            THE COURT:  Can you direct me to that?  I didn't

3    read that that way.  In the reply or in the main brief?

4            MR. DORCHAK:  No, let me (indiscernible),

5    Your Honor.  As part of this sort of trust me all this

6    interesting stuff that's going to happen in England some day

7    theme.

8            THE COURT:  I mean I -- there was substantial --

9            MR. DORCHAK:  Footnote 6.

10           THE COURT:  In the opening brief or the reply

11   brief?

12           MR. DORCHAK:  No.  No, not in the opening.

13           THE COURT:  The reply brief.  Okay.  Hold on.

14           MR. DORCHAK:  There's a massive footnote 6 at the

15   bottom of page 3.

16           THE COURT:  Right.

17           MR. DORCHAK:  Right.  Actually it's up in the text

18   as well, paragraph 8.

19       (Pause)

20           THE COURT:  I wasn't reading this to say that LBHI

21   intended to have a discussion with an English court about

22   the effects of contract rejection or executory contracts

23   under the Bankruptcy Code.  My impression is that if they --

24   if LBHI clears the hurdle here that the issue before the

25   English court would be the ability to issue the substitute

Page 32

1    preferred stock.  So I just don't --

2              MR. DORCHAK:  Okay.

3              THE COURT:  I'm just trying to follow your --

4    yeah, I agree with you that --

5              MR. DORCHAK:  This argument may be made before an

6    English court after the motion is granted.  In other words

7    after you grant the motion --

8              THE COURT:  Right.

9              MR. DORCHAK:  -- and then let's argue in England

10   about whether -- what the effect of the rejection of

11   executory contracts would be.

12             THE COURT:  Okay.  Maybe you and I disagree about

13   that the question before the English court will be the

14   effect of the rejection.  I think it's --

15             MR. DORCHAK:  I don't know if it matters,

16   Your Honor.  If you agree with me that this is an issue that

17   you, the bankruptcy judge, should be deciding, because I

18   want you to decide it.

19             THE COURT:  Wait.  No, you want me to say they

20   can't do what they want to do.

21             MR. DORCHAK:  Absolutely.

22             THE COURT:  Right?  But you're not saying that if

23   I agree with LBHI that you want the whole next step to

24   happen here.

25             MR. DORCHAK:  No, I don't want that to -- I don't

Page 33

1    want that either.  Maybe you don't want that, Your Honor, I

2    don't want that.  I don't think anyone wants that.

3              THE COURT:  Right.

4              MR. DORCHAK:  All I'm trying to say is this, it's

5    my characterization of their reply that they're trying to

6    duck a difficult issue that is about rejection of contract

7    by saying but wait, wait, wait we'll take care of it later.

8    And I'm saying, no, we can take care of it now because this

9    is a Bankruptcy Code issue.  That's all, Your Honor, and I

10   think it sounds like you agree with you that this is your

11   issue.  So so far so good.

12             THE COURT:  No, no, no, that's -- you're -- I

13   don't know if we're conflating or we're glossing over, but

14   you are attempting to characterize what would be before the

15   English court as an interpretation of the effect of rejected

16   executory contracts here, and I don't agree with that.

17             I think it's pretty clear -- made pretty clear by

18   Lehman that whether or not the next step could happen would

19   be an issue for the English court.  I simply don't see that

20   as implicating an interpretation of the rejection of

21   executory contract.  So --

22             MR. DORCHAK:  Okay.

23             THE COURT:  -- you know, I think it's neither here

24   nor there.

25             MR. DORCHAK:  Whether these partnership agreements

Page 34

1    were contracts that were executory and then rejected under

2    the plan?

3              THE COURT:  No, I think it's neither here nor

4    there whether you and I can come to an agreed --

5              MR. DORCHAK:  All right.

6              THE COURT:  -- statement of the issue.

7              MR. DORCHAK:  Okay.

8              THE COURT:  Okay?

9              MR. DORCHAK:  If you let me address the issue of

10   whether indeed the partnership agreements were executory

11   contracts that were --

12             THE COURT:  Sure.  That's my issue.

13             MR. DORCHAK:  That's what I said, Your Honor.

14             THE COURT:  No, it's not, but go ahead.

15             MR. DORCHAK:  That's what I was trying to say.

16             THE COURT:  Right.

17             MR. DORCHAK:  Okay.  So I don't know if there are

18   any other disputed fact issues here.  I mean if it needs to

19   be briefed we can brief it.  But I think it's perfectly

20   simple.

21             In this jurisdiction an executory contract is one

22   in which "each party must still give something to get

23   something."  That's from In re: Riadinzio (ph), a 1997 case,

24   but it's really sort of modified countrymen.

25             THE COURT:  Countrymen rule.  Modified countrymen.

Page 35

1    Okay.

2             MR. DORCHAK:  Exactly.

3             Now, we wouldn't really be here right now unless

4    it were true that on the one hand, according to them, the

5    general partner has to do something, issue notices, go talk

6    to clear stream, et cetera, et cetera, to get this

7    substitution effected and that LBHI has to do something, in

8    other words show up with some preferred securities in order

9    to get the substitution effect, and both sides have to do

10   something in order to get the substitution.  That was true

11   on the petition date, it's an executory contract.

12            I don't know what you can say to the contrary, and

13   I don't think there's any dispute that if it was an

14   executory contract on the petition date it was rejected

15   under the plan because it's not expressly assumed.  They

16   didn't dispute that.

17            And they go on and say well kind of so what if it

18   was rejected?  And again it's in a footnote, but this -- now

19   that's the point they're trying to make.  Rejecting a

20   contract doesn't kill off the contract, right, as if that's

21   what I said it did.  We all know that, Your Honor.  I don't

22   need to be educated on that.  Certainly you don't need to be

23   educated on that because you have issued orders and

24   judgments insisting that the terms of a contract that's been

25   rejected would have to be enforced any way.

Page 36

```
 1                THE COURT:  Sure.
 2                MR. DORCHAK:  And there's no dispute.  There's
 3      case -- I'm not arguing the contract --
 4                THE COURT:  Right.
 5                MR. DORCHAK:  -- I hope you don't think I'm
 6      being --
 7                THE COURT:  Hope.
 8                MR. DORCHAK:  -- childish.  There's arbitration
 9      provisions and choices of law and caps on damages and of
10      course there's a distinction made.
11                THE COURT:  Right.
12                MR. DORCHAK:  No question.  All right.  Good.
13                But even though the terms remain enforceable the
14      one thing the debtor can't do, having rejected the contract,
15      is force the other side to keep performing as if the
16      contract were still in force.  I think you'll agree with
17      that.  I got a quote from Judge Gerber, I could have gotten
18      other ones, I'll just say it out loud, "The rejection
19      excuses future performance under that contract by the
20      contract of counterparties."
21                So whatever else might be true under these
22      partnership agreements the one thing, if it was a rejected
23      contract under the plan, the one thing the debtor can't do
24      is force the general partner or the ECAPS holders to go
25      ahead with this substitution.  They can't -- they're not
```

Page 37

1    allowed to do that.  And I think they can't because as I

2    just said, it's an executory contract that was not assumed

3    under the plan it was therefore rejected.  Like whether the

4    breach of material?  That doesn't matter.  It's cut and

5    dried in my opinion, and of course that's the way I put it,

6    Your Honor, but I hope you see why I have reason to do that.

7    So that's my last legal point is the rejection.  This is

8    with reference to Section 365(g) of the Bankruptcy Code, so

9    it was backing away as a matter of law with no disputed

10   facts and just a couple unambiguous quotes from the

11   partnership agreement and the amended charter and the

12   amended bylaws.

13           I think it's clear that the relief that's being

14   sought here contradicts Section 1127, Section 1123, Section

15   1142, and Section 365(g), and that's even if the goal, a

16   laudable one generally, is to maximize distributions to

17   creditors.

18           THE COURT:  Okay.  Thank you.

19           MR. DORCHAK:  Thank you, Your Honor.

20           THE COURT:  All right.  Does anyone else from the

21   objectors wish to be heard?

22           MR. BAREFOOT:  Good morning, Your Honor.  Luke

23   Barefoot from Cleary Gottlieb for Barclays Bank PLC.

24           Your Honor, we certainly respect the hard work and

25   efforts that have resulted in the substantial distributions

Page 38

1    to creditors that Mr. Fail addressed, but as I think

2    Your Honor put it, the sole question here today is not

3    whether additional distributions to creditors are desirable,

4    but whether what LBHI wants to do can be authorized under

5    this plan.

6            And I know we've been accused of a lot of

7    rhetorical flourish, so I'm going to stick instead to the

8    exact text of what the debtors are asking Your Honor to

9    order.

10           They're asking this Court to live in a fictional

11   world where these shares would be issued as if it were 2008

12   and then have those shares be treated as if they were

13   canceled by the plan.

14           And I'm not characterizing this, this is from the

15   literal text of the proposed order that they're asking

16   Your Honor to sign.

17           The third ordered paragraph provides that the

18   substituted preferred shares will be compromised in

19   accordance with the plan as if those substituted preferred

20   shares were issued on the commencement date.  But we all

21   know that on the commencement date LBHI was doing anything

22   other than issuing new preferred equity, and it's not in

23   accordance with the plan or with any of the other provisions

24   that Mr. Dorchak has cited to have this Court close its eyes

25   to reality and live in a fictional as if world.

Page 39

1          And there's one provision of the plan in

2   particular that I want to address that I think makes this

3   very clear.  The core of the relief that the debtors are

4   seeking is to classify these retroactively as if shares in

5   Class 12 of the plan so that they will be canceled and

6   valueless, but that is completely inconsistent with the

7   distribution provisions that Class 12 provides.  That's in

8   Section 4.17(c) of the plan, which after this single share

9   is issued to the plan trust there are still provisions for

10  distributions to holders of Class 12 interest.  And what the

11  plan provides very clearly is that those distributions will

12  be made "consistent with such holders' rights of payment as

13  they existed immediately prior to the petition date."  Not

14  on the petition date, not after the petition date,

15  immediately prior to the petition date.

16          But the shares that the Court is asking to be

17  authorized to issue won't be issued prior to the petition

18  date, they need to be issued following the petition date,

19  and that's very strategic and very important, because in

20  order for this to be a triggering event that would even

21  arguably resolve in a substitution it needs to be occurring

22  after the petition which triggered that potential right.

23          It's simply completely inconsistent to say that

24  we're going to be classified in Class 12 to say that the

25  Court can issue this order in furtherance of implementation

Page 40

1    of Class 12 when these shares, if they are issued under this

2    fiction on the commencement date, would exclude the ECAPS

3    holders from the very distribution mechanics that Class 12

4    provides, which is only for holders of shares that existed

5    prior to the petition date.  And I don't think this is a

6    technical term, but in any event I think it also helps

7    underscore expectations and economic reality.

8              The plan was drafted this way to allow

9    distributions only to holders of equity interest that

10   existed prior to the petition date because those are the

11   only shares that there were.  No one ever contemplated, and

12   the plan didn't contemplate, that there would be

13   subsequently issued shares.  And LBHI has no textual

14   response to this or explanation for this.  The only

15   explanation they have is that this is consistent with the

16   economic realities of what the ECAPS holders should have

17   expected, but the substitution simply never occurred prior

18   to the petition date or prior to confirmation.

19             So what the ECAPS holders expected is what the

20   terms of the plan say, that Class 12 distributions will only

21   apply to holders of shares that existed prior to the

22   petition date.

23             They also try to cite, as Mr. Dorchak noted, to a

24   bunch of other orders that Your Honor has entered

25   reclassifying existing claims as equity interest that would

Page 41

1    then be subject to Class 12, but those claims or

2    recharacterized themselves existed prior to the petition

3    date.  So it's perfectly consistent for them to receive

4    distributions and be classified in accordance with the

5    actual terms of Section 1417(c) where they would receive

6    distributions in accordance with their prepetition date

7    rights.

8            I also just briefly wanted to address Your Honor's

9    question about whether this is an alteration of the legal

10   relationship in reference to this distribution section.

11           Mr. Dorchak was pointing out the very valid point

12   that by subjecting us potentially to these proceedings in

13   England that itself is a legal alteration.  I don't even

14   think you need to go that far.  Issuance of new shares that

15   would be attempted to be distributed to these holders

16   in lieu of our existing ECAPS securities that both LBHI and

17   our clients believe had value, that itself is an alteration

18   of legal rights in a much more fundamental way that makes

19   clear that the plan is a modification within the meaning of

20   1127.

21           The only other point, Your Honor, I wanted to

22   address is the debtor's suggestion in paragraph 35 of their

23   reply that the Court need not really address many of these

24   questions because they have existing omnibus authority to

25   allow claims, including claims in Class 12, in the plan

1     administrator's sole discretion.

2              I think it's important to recognize that everyone

3     knows that that's not going to get them where they want to

4     go.  We all agree that the plan administrator has the

5     authority to allow claims, but they're not seeking to just

6     allow a claim for us in Class 12, they're seeking to issue

7     new preferred shares that will then be canceled under Class

8     12, and it's that issuance that they don't have the

9     authority to do and that they can't do in a manner that's

10    consistent with the provisions of Class 12 of the plan.

11             THE COURT:  Okay.  Thank you, Mr. Barefoot.

12             MR. BAREFOOT:  Thank you, Your Honor.

13             THE COURT:  Hold on.  Good morning.

14             MR. GRAHAM:  Good morning, Your Honor.  Joe Graham

15    of Kirkland & Ellis, on behalf of the joint liquidators.

16             I stand in large part to make sure that in case

17    standing becomes an issue we have stepped up as we are an

18    actual creditor -- a direct creditor of the reorganized

19    entity.

20             I also wanted to just clarify from the

21    partnership's view obviously this is the first of a

22    potential two-step process, the second part of that process

23    likely happens in the high court of London, but

24    notwithstanding discussion about rejection contracts here

25    today, but we don't know that we have to get there and waste

Page 43

1    our very limited resources on that process.

2              So (indiscernible) under 1142 you do have the

3    power obviously to issue any orders, but we don't know that

4    this actually applies, and you've been asking questions

5    about that, and one of them is, you know, the two ways you

6    can do it is transfer of property dealt with by a confirmed

7    plan or perform any other act necessary to consummation.

8              And in our view we have a hard time seeing how

9    issuing shares that have been canceled already are necessary

10   to consummation of that plan, a plan that was very clear

11   that there was one share issued, one share to the plan

12   trust, and as my colleagues over here have mentioned

13   already, that you know, distributions would be done in

14   accordance with peoples' rights as of the commencement date.

15             So we just -- I'm a debtor lawyer by trade, I like

16   aggressive reads of plans, we just don't know in this

17   instance whether -- we don't believe that in this instance

18   1142 actually authorizes this.

19             Thank you.

20             THE COURT:  All right.  Thank you, Mr. Graham.

21             Okay.  Looks like that completes the presentations

22   by the objectors.  Mr. Fail?

23             MR. FAIL:  Thank you again, Your Honor.

24             THE COURT:  To the extent that you can reply

25   specifically to the arguments that were made that would be

Page 44

1    helpful to me.

2           MR. FAIL:  Sure.  It sounded like there was one

3    question at the beginning but there are a lot of points to

4    rebut.

5           THE COURT:  Yep.

6           MR. FAIL:  I think before jumping in to respond

7    specifically I would just say as an overall matter not one

8    of the parties that spoke suggested that this wouldn't --

9    that this would harm any creditor or equity holder.  It's

10   not a matter of standing, but from the Court's perspective

11   and the debtor's perspective, this is -- these are arguments

12   made by investors outside of the U.S. Chapter 11 capital

13   structure that made investments at some point in time either

14   prebankruptcy or most likely post-bankruptcy, but there's no

15   doubt that this is beneficial to all creditors.

16          I was taking notes so I'll respond in the order

17   that the comments were made.

18          THE COURT:  Okay.

19          MR. FAIL:  I apologize if it -- if some of them

20   are repetitive.  I think some of the arguments overlapped.

21          There was a comment originally that it's

22   extraordinary to go back in time.  Your Honor, the word

23   extraordinary has been used many times in this case because

24   these are extraordinary cases, we're standing here ten years

25   later, and so the fact that the cases are still open and

Page 45

1    we're still distributing billions of dollars doesn't -- the

2    fact that this is described as extraordinary we don't

3    necessarily agree, but it's unique and that doesn't scare

4    the plan administrator.

5            There was a question about section -- subsection 3

6    and 6.1(b).  I think that was misdirected or rather not

7    relevant that it's a subsection and therefore shouldn't be

8    allowed.  You have to look at the intro, but when you look

9    at the intro 6.1(b) is what you can do without authority of

10   the Court.  We're here seeking authority of the Court to do

11   stuff in furtherance.  We're here because we believe we need

12   the Court's authority or assistance in doing this.  So

13   arguments that we couldn't do it without, I mean we're here,

14   Your Honor, we're seeking permission.

15           And so with your authority we believe we can do it

16   and that there is ample authority under 1142 using Section

17   105 to bolster it in connection with 6.1 of the plan, the

18   charter that LBHI has to collect assets.

19           There was a discussion about 1123(a)(6) that

20   Your Honor went into that the charter has to say no

21   issuance.

22           Your Honor, we're not looking to amend the current

23   charter although the confirmation order in paragraph 51 says

24   that the debtors can, and as in most post-reorganized

25   company the purpose of bankruptcy is to live on and charters

Page 46

1  can be amended over time.  This plan is no different.  But

2  we aren't seeking, to be very clear, to amend the current

3  charter.  We are looking to issue in the future, not

4  retroactively, not pretending it happened, we're here today

5  to ask for permission and authority to issue stock that will

6  be compromised under the plan, stock that will permit it not

7  to be in violation of 1123(a)(6).  It's just the same as if

8  we were allowing additional claims reclassifying claims.

9          There was talk about, you know, we're altering

10 legal relationships and affecting parties that weren't

11 parties.  Let me address those each two separate things.

12         One was, you know, we shouldn't consider that

13 judge you allow claims all the time.  But let's just think

14 about the magnitude of these unique cases.

15         Subsequent to the effective date in these cases

16 11,276 claims have been resolved.  I would suggest that that

17 is a unique circumstance that the plan was confirmed and

18 different parties came in, some had their claims allowed

19 late, some were allowed to modify and supplement and amend

20 their claims against the debtor's objection, but months and

21 years after the petition date.  So the debtors don't find

22 the reasoning persuasive and we hope that you won't.

23         In 2017 and 2018 alone giving credit to a little

24 bit over I couldn't decide -- you know, couldn't discern

25 specifically after the GP was reconstituted -- but 513

Page 47

1   claims alone were allowed in 2017 and 2018.  Work continues

2   and relationships are being altered, and each one is being

3   allowed or disallowed as a prepetition claim as of the

4   effective date in accordance with the Code in allowance of

5   claims.  So we don't think that that is anything

6   substantial.

7               What else was discussed?  There was a discussion

8   about now the ECAPS holders can be sued.  To be very clear,

9   parties around the world could be sued by Lehman Brothers

10  Holdings Inc. as plan administrator on behalf of any of its

11  debtors or on behalf of any of its controlled affiliates.

12  It's specifically preserved in the confirmation order in

13  paragraph 76.

14              We are also specifically in litigation around the

15  world, including in the courts in England.  And to be very

16  clear, Deutsche Bank can be sued here before this Court or

17  in others in the United States.  And I'm told and informed

18  that the estates in conducting an inquiry into Deutsche Bank

19  in connection with the ECAPS and they should be on notice

20  for document preservations and the like in accordance with

21  that, but there's no merit whatsoever to the fact that this

22  ruling here will give a basis to sue Deutsche Bank.  That's

23  not the intention, it's not necessary.

24              There was a comment about Section 1142 that we

25  didn't say anything in our reply.  I think we said it all in

1    our motion, Your Honor, I think the statute says it, and

2    we've pointed out to -- we've pointed to the Court's

3    authority under 1142 and 105, we've given examples where

4    we've pointed to the plan provisions that do that, we said

5    it's consistent to allow us to operate under the state law

6    but now they're saying that it's a big deal and it's a side

7    show, but took up a substantial portion of their brief so we

8    responded to it.

9            There was no mention in their objections to

10   Section 303 of the Delaware Corporate Code, but when we did

11   look at it it was very helpful and pointed us right to why

12   we need this order.

13           THE COURT:  Mr. Fail, slightly off topic though,

14   there was some mention of the amount at issue.  What's your

15   -- do you have a sizing of the aggregate amount that's at

16   issue here?

17           MR. FAIL:  I wish it were a simple answer,

18   Your Honor.

19           THE COURT:  Okay.

20           MR. FAIL:  It depends on the outcome of a number

21   of different positions that are being litigated by these

22   parties and others in the courts of England that are at

23   different levels of trial on appeal.

24           THE COURT:  All related to this?

25           MR. FAIL:  All touching this.  Lehman continues to

Page 49

1    be a web.  So the value of the assets of each of the

2    partnerships, which is really what we're talking about, the

3    value of the sub-debt of Lehman Brothers Holdings PLC is not

4    known.  It'll depend on the outcome of other litigation.  If

5    Deutsche Bank has its way and others that are taking that

6    position it might have tremendous value, hundreds of

7    millions of dollars.

8              THE COURT:  What do you mean if Deutsche Bank has

9    its way?

10             MR. FAIL:  If Deutsche Bank's arguments are

11   persuasive in various aspects.  I'm not the most familiar

12   with the various litigations that are going on in the UK.

13             THE COURT:  Oh, in other parts of the web.

14             MR. FAIL:  Not here, in the UK --

15             THE COURT:  Okay.

16             MR. FAIL:  -- in courts, and depending on the

17   recoveries on the sub-debt of PLC's sub-debt --

18             THE COURT:  Okay.

19             MR. FAIL:  -- that is yet to be determined and

20   it's -- so it's hard to say if there will be value, but

21   Deutsche Bank revived the trust believing that there is

22   value to be had.  If there is value to be had it could be

23   very significant even in the Lehman world in Lehman dollars.

24             THE COURT:  So what -- and you talk about getting

25   existential -- so where was that value, what was it doing,

1       who held it, who was looking out for it --

2               MR. FAIL:  That's a great point, Your Honor.

3               THE COURT:  -- before the revival?

4               MR. FAIL:  That's a great point.  It goes to the

5       delay argument, and they're saying -- you know, there were

6       arguments that we think will be before the UK court and not

7       necessary here, but what is the harm of it coming up now?

8               THE COURT:  My question is very specific though.

9       If a partnership is dissolved --

10              MR. FAIL:  The assets go to the crown, as they

11      say, across the pond.  The entities were dissolved and the

12      UK government essentially bolted.  They were reinstated as

13      talked about retroactive --

14              THE COURT:  And the UK government gives it back?

15              MR. FAIL:  The actions that the -- that Deutsche

16      Bank and others took in the UK to establish the liquidators

17      that are standing here today brought back the general

18      partner and the partnerships as if they had never gone away.

19      So it's okay to do it in the UK, for example, six years

20      later just before the statutory deadline to do it

21      retroactive as if they existed in time.  It's ironic, I

22      know, Your Honor, that they're saying that we shouldn't be

23      able to do something retroactively.

24              THE COURT:  But then with that debt -- so that

25      debt literally --

Page 51

1          MR. FAIL:  It's sitting there and whether they

2     filed a claim or not or whether they have to file a claim

3     they don't have bar dates as I understand in the UK as we

4     do.  PLC has not made a distribution on account of the sub-

5     debt yet.  There is literally no harm in the passage of

6     time.  The amount of the distributions, they're not sitting

7     on the proceeds of the sub-debt yet.  I don't -- I'm not

8     even positive if they actually filed claims, but I don't

9     know that that's prohibited of them receiving recoveries.

10    In other words we're just in time to do it.

11          The litigations are advancing in the UK and at

12    some point we will know what the value is, but we're just in

13    time.  They've acted to bring back the partnership, the

14    general partner retroactively.  I mean folks glossed over

15    the time periods that they originally articulated and made a

16    lot out of oh, we're eight years, ten years past the

17    bankruptcy, but the general partner who's charged with

18    (indiscernible) leading a substitution, the general partner

19    who's represented here today, dissolved in June of 2010.  At

20    that point there was no one to effectuate the substitution.

21    They were revived and we moved forward in this court to

22    continue what should be done.

23          And in terms of whether or not there was a comment

24    later on in the discussion about could we enforce our

25    rights, could we force them to do that, I don't know about

Page 52

```
1     -- and I'm happy to argue and we can brief further -- but

2     our position is that we could under the Bankruptcy Code and

3     under the contract law and under case law here in the U.S.

4     compel someone when our breach was not material as it wasn't

5     here, but regardless in the UK LBHI will preserve and assert

6     all of its rights that it has as the general partner of the

7     partnerships and preferred limited partner.

8             We believe that that -- liquidators have

9     obligations to us as well and not only to the ECAPS holders

10    or not at all to the ECAPS holders if we're right.

11            So that'll be an issue, that'll be litigated in UK

12    as well, but whether or not we can compel them to under U.S.

13    law and contracts here or under the obligations that the

14    liquidators have in the UK we don't have to get into today,

15    respectfully.

16            THE COURT:  Okay.  The other question somewhat

17    unrelated to the merits that have been argued here today is

18    this unlike any other litigation, can the parties not try to

19    resolve this on some sort of a comprehensive basis?

20            I mean it seems as if there's a very

21    long/expensive litigation path over what looks to be, you

22    know, a high-class problem, that there's value that's been

23    found.  Is there any prospect of settlement discussions

24    between and among the parties?

25            MR. FAIL:  Your Honor, our --
```

1              THE COURT:  I mean mind you I'm --

2              MR. FAIL:  Yeah.

3              THE COURT:  -- largely in the dark about this --

4              MR. FAIL:  The plan administrator --

5              THE COURT:  -- web of litigation.

6              MR. FAIL:  The plan administrator has not run to

7    this Court as the first option in any case that I'm familiar

8    with.  The plan administrator has worked to try to reach

9    resolutions.  There has been litigation and there continues

10   to be litigation.

11             The way it came up in conversation this morning

12   though the fact that, you know, this could be burdensome to

13   the liquidator does not ring true or appeal or at all

14   persuasive to LBHI whose money we believe it is for our

15   creditors.

16             This is one litigation that is now going on as,

17   you know, we're in year nine of the liquidation of the UK

18   entities.  It's -- I don't want to say laughable because

19   that's too dismissive -- but you know, it's not persuasive

20   at all that this piece of litigation is the one that's going

21   to break anybody's -- the straw that's going to break

22   anyone's back and therefore we should just give up

23   potentially hundreds of millions of dollars.  LBHI will

24   pursue its rights.

25             We're happy to engage in settlement discussions

1    with any party and we've attempted it and we're here today.

2              THE COURT:  All right.

3              MR. FAIL:  Respectfully.

4              THE COURT:  Anything else?

5              MR. FAIL:  Let me just see if there were other

6    points that just need to be responded to briefly.

7              We spoke about 1142.

8              Your Honor understands the difference between

9    consummating and substantially consummated.

10             We talked about the claims that have been allowed.

11             I made the clarification that we're not looking to

12   do something retroactively just although -- and I point out

13   that the trusts themselves and the preferred -- the

14   partnerships were brought back to life retroactively under

15   UK statute.

16             We don't believe this contradicts the plan.  We're

17   giving stock that will be compromised pursuant to the plan.

18   That's very important.  It would be different if we were

19   saying we wanted to pay out dividends on preferred equity

20   now that was prepetition ahead of prepetition creditors.

21   Specifically we're not doing that.  That would be something

22   that is different and certainly we're not looking to skip

23   the waterfall of priority that's required by the Code or our

24   plan.

25             If Your Honor chooses to decide the rejection

Page 55

1     issue we're happy to brief it and I pointed that out.

2           Going back to the first point I made about this

3     not being taken on behalf of any creditor or equity holder

4     acting as such.  The references to the definition of equity

5     interest in the plan is an attempt to get a real gotcha.

6     It's very, very clear what the expectations of prepetition

7     ECAPS investors was.  It's in the prospectus.  It says

8     "intended to provide holders with rights on liquidation of

9     the issuer," you know, which it is in liquidation,

10    Your Honor, "equivalent to non-cumulative preferred stock of

11    LBHI."  That's everyone's expectation.

12          Also during the cases before it dissolved the

13    general partner sought to substitute that.  That was also

14    known and should have been an expectation.

15          LBHI has been pursuing recoveries around the world

16    at every option.  That should be everyone's expectation.  I

17    think it is with the parties with whom we're here today and

18    with whom we are engaged in litigation in the U.S. -- in the

19    UK, Your Honor.

20          I would also just point out in the confirmation

21    order paragraph 75 on the point of definition of equity

22    interest says, "The definition of equity interest included

23    in the plan is without prejudice to the debtor's right to

24    object to or seek to subordinate any claim and any

25    creditor's rights to defend against such action."  That's

1    paragraph 75 of docket 23023.  Right?

2              So we knew things were going to happen after the

3    bankruptcy, that was put in for RSUs, that was put in for

4    other circumstances that would come up and did come up.

5    This Court has allowed the result that parties that aren't

6    entitled to senior recoveries out of LBHI's assets get them

7    in the appropriate way.

8              We're not looking to change the golden share.

9    There is one share, it's held for parties.  We're saying who

10   would get it in the unlikely event that there is a waterfall

11   to be had that allows it to happen?

12             We talked about late claims.  We talked about I

13   think all of the other points that need to.

14             Your Honor, I'm obviously happy to answer any

15   other questions.  The plan administrator has put a lot of

16   thought into this and wouldn't have proceeded if we don't

17   think that there's a viable path to recovery for its

18   creditors here.

19             THE COURT:  Okay.  Thank you, Mr. Fail.

20             MR. FAIL:  Thank you.

21             THE COURT:  Okay.  All right.  Thank you all very

22   much.  We're going to take this under advisement and we'll

23   get back to you when we're ready to issue a ruling.  Okay?

24   Thank you all.  Have a pleasant day.

25        (A chorus of thank you)

Page 57

1

2        (Whereupon, these proceedings were concluded at 11:04

3    a.m.)

4                              *  *  *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 58

1                    C E R T I F I C A T I O N

2

3        I, Dawn South, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5    Dawn South

6    _____

7    Dawn South

8    Certified Electronic Transcriber

9

10

11

12

13

14

15   Date:  June 8, 2018

16

17

18

19

20

21

22    Veritext Legal Solutions

23    330 Old Country Road

24    Suite 300

25    Mineola, NY 11501