**Hearing Date and Time: June 27, 2018 at 2:00 p.m.  (Prevailing Eastern Time)**
**Objection Date and Time: June 20, 2018 at 4:00 p.m.  (Prevailing Eastern Time)**

Andrew J. Rossman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010
*Attorneys for Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                           :
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (SCC)
                                           :
Debtors.                                   :    (Jointly Administered)
                                           :
-------------------------------------------------------------------x
```

**NOTICE OF MOTION PURSUANT TO RULE 9019 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE
BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT AGREEMENT
AMONG CREDIT SUISSE AG, AND CERTAIN OF ITS AFFILIATES, AND
LEHMAN BROTHERS HOLDINGS INC., AND CERTAIN OF ITS AFFILIATES**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated June 12, 2018 (the

"Motion"), of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers*

*Holdings Inc. and Its Affiliated Debtors*, on behalf of itself and the other Lehman Entities,[1]

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of

---

[1]  As used herein, the term "Lehman Entities" means LBHI, Lehman Brothers Special
Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp. ("LBCC"), and Lehman Brothers
Commodity Services Inc. ("LBCS").

a settlement agreement among the Plan Administrator, on behalf of LBHI, LBSF and the other

Lehman Entities, and Credit Suisse AG ("Credit Suisse") and the other CS Entities,[2] all as more

fully described in the Motion, will be held before the Honorable Shelley C. Chapman, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs

House, Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy

Court"), on June 27, 2018 at 2:00 p.m. (Prevailing Eastern Time) (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in

writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for

the Southern District of New York, shall set forth the name of the objecting party, the basis for

the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable

Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 623; (ii)

attorneys for the Lehman Entities, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison

Avenue, 22nd Floor, New York, New York 10010 (Attn: Andrew J. Rossman); (iii) the Office of

the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, Suite

1006, New York, New York 10014 (Attn: William K. Harrington, Esq., Susan Golden, Esq. and

Andrea B. Schwartz, Esq.); and (iv) attorneys for Credit Suisse, Cravath, Swaine & Moore LLP,

---

[2]  As used herein, the term "CS Entities" means Credit Suisse, Credit Suisse International
("CSI"), Credit Suisse Energy LLC ("CSE"), Credit Suisse Securities (Europe) Ltd. ("CSSE"),
Credit Suisse Loan Funding LLC ("CSLF"), and Credit Suisse Securities (USA) LLC ("CSSU").

825 8th Avenue, New York, New York 10019 (Attn: Darin McAtee and Nathan Denning), so as

to be so filed and received by no later than June 20, 2018 at 4:00 p.m.  (Prevailing Eastern Time)

(the "Objection Deadline").

 PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received

by the Objection Deadline, the relief requested shall be deemed unopposed and the Bankruptcy

Court may enter an order granting the relief sought without a hearing.

 PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the

Hearing and failure to appear may result in relief being granted or denied upon default.

Dated: June 12, 2018
   New York, New York


      QUINN EMANUEL URQUHART & SULLIVAN,
      LLP

      By: */s/* Andrew J. Rossman_____
      Andrew J. Rossman
      *Attorneys for Lehman Brothers Holdings Inc. and*
      *Certain of Its Affiliates*

Andrew J. Rossman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010
*Attorneys for Lehman Brothers Holdings Inc. and*
*Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                         :
In re                                    :    Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :    08-13555 (SCC)
                                         :
Debtors.                                 :    (Jointly Administered)
                                         :
                                         :
-----------------------------------------------------------------x
```

**MOTION PURSUANT TO RULE 9019 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE**
**BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT AGREEMENT**
**AMONG CREDIT SUISSE AG, AND CERTAIN OF ITS AFFILIATES, AND**
**LEHMAN BROTHERS HOLDINGS INC., AND CERTAIN OF ITS AFFILIATES**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan

Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman*

*Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and the

other Lehman Entities,[3] files this motion (the "Motion") and respectfully represents:

---

[3] As used herein, the term "Lehman Entities" means LBHI, Lehman Brothers
Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp. ("LBCC"), and
Lehman Brothers Commodity Services Inc. ("LBCS").

## Relief Requested

1.       By this Motion, the Plan Administrator seeks approval, pursuant to Rule

9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), of a global

settlement of disputes among the Lehman Entities and the CS Entities[4] (the

"Settlement"), the terms of which are set forth in that certain Settlement Agreement,

dated as of June 12, 2018 among the CS Entities and the Lehman Entities (the

"Settlement Agreement"),[5] and requests that such approval be immediately effective and

enforceable.  The Settlement Agreement provides for the resolution of the Derivatives

Litigation (defined below) between the parties thereto and puts an end to years of

contentious litigation.

2.       Under the Settlement Agreement, certain claims asserted by the CS

Entities against LBSF, LBCC, and LBCS (the "Lehman Subsidiaries") as primary

---

[4]    As used herein, the term "CS Entities" means Credit Suisse AG ("Credit
Suisse"), Credit Suisse International ("CSI"), Credit Suisse Energy LLC ("CSE"), Credit
Suisse Securities (Europe) Ltd. ("CSSE"), Credit Suisse Loan Funding LLC ("CSLF"),
and Credit Suisse Securities (USA) LLC ("CSSU").

[5]    The summary of the Settlement Agreement herein is qualified in its entirety by
the terms and conditions of the Settlement Agreement.  The terms and conditions of the
Settlement Agreement control to the extent that there is any conflict or inconsistency
between this summary and the Settlement Agreement. Capitalized terms used but not
defined herein shall have the meaning ascribed to such terms in the Settlement
Agreement.  In the event the Settlement Agreement does not become effective for any
reason, the Parties agree that neither this Motion, the Settlement Agreement, nor any act
performed or document executed pursuant to or in furtherance thereof shall be deemed to
be, or used as, an admission with respect to, or waiver of, any right, claim or defense
asserted by the CS Entities or Lehman Entities in the Derivatives Litigation (as defined
herein) or with respect to any of the Settled Claims (as defined herein).

obligors (the "Non-Guarantee Claims") will be reduced by an aggregate amount of approximately $797 million, to an aggregate allowed amount of $385,000,000. Certain claims asserted by the CS Entities against LBHI (the "Guarantee Claims") will be reduced by approximately $789 million to an aggregate allowed amount of $363,660,000.

3.      The Lehman Entities and the CS Entities will dismiss the Derivatives Litigation and execute broad general releases. The Settlement Agreement was negotiated in good faith and at arm's length, and from the standpoint of the Lehman Entities, falls well within the range of reasonableness, as required by the cases applying Bankruptcy Rule 9019.

4.      The Plan Administrator has determined, in the exercise of its sound business judgment, that the Settlement Agreement is in the best interests of LBHI, the other Lehman Entities, and their respective estates and creditors. Entry of an order approving and authorizing the Settlement Agreement is a condition precedent to the effectiveness of the Settlement Agreement.

### Procedural Background

5.      Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF, commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.

6.      Subsequent to the Commencement Date, Credit Suisse, CSI, CSE, and CSSE (each a "Defendant" and collectively the "Defendants"), filed numerous proofs of claim against the Lehman Entities, including Proof of Claim numbers 22843, 22813,

3

22854, 22852, 22828, 22815, 22853, 22841, 22856, 22848, 22849, 22847, 22842, 22812, 22821, and 22820 (each such claim a "CS Claim" and collectively the "CS Claims"): (a) in net amounts totaling approximately $1.18 billion against the Lehman Subsidiaries as primary obligors, based on tens of thousands of derivatives trades; and (b) in the same amounts against LBHI as guarantor.

7.      On January 11, 2010, CSE transferred Proof of Claim numbers 22828 and 22815 to CSLF by evidence and notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

8.      On July 1, 2010, Credit Suisse transferred Proof of Claim numbers 22854 and 22852 to CSI by evidence and notice given pursuant to Bankruptcy Rule 3001(e)(2).

9.      On February 15, 2011, CSI transferred Proof of Claim numbers 22843, 22813, 22854, and 22852 to Credit Suisse by evidence and notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

10.     On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023].  The Plan became effective on March 6, 2012.

11.     On November 6, 2013, the Lehman Entities ("Plaintiffs") commenced an adversary proceeding and claims objection in the Bankruptcy Court against the CS Entities, captioned *Lehman Brothers Holdings Inc., et al. v. Credit Suisse, et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 13-01676 at Dkt. 1 (as amended, the "Derivatives Litigation").  On March 17, 2017, Plaintiffs filed their *Amended Adversary Complaint and Objection to Claims*, Adv. No. 13-01676 at Dkt. 43 (the "Amended Complaint") in the Derivatives Litigation.  Pursuant to the Amended Complaint,

4

Plaintiffs, among other things, challenge the amount of the CS Claims and seek damages, as well as statutory interest under New York law and other costs and fees.

12.    Defendants filed an answer to the Amended Complaint, dated March 31, 2017, Adv. No. 13-01676 at Dkt. 50 (the "Answer"), denying all of Plaintiffs' claims.

13.    On April 28, 2017, Proof of Claim numbers 22812 and 22841 were expunged.  On August 11, 2017, Proof of Claim number 22847 was expunged, and Proof of Claim number 22849 was purchased by LBHI.

14.    The Parties engaged in extensive fact and expert discovery over the course of more than four years.  Party and third-party productions totaled over 28 million pages of documents and electronic files, seven expert witnesses provided expert reports, and nearly 100 witnesses gave deposition testimony in the case, including more than 30 days of corporate testimony.

15.    On May 25, 2018, following months of ongoing settlement discussions, the Parties reached an agreement in principle to resolve the Derivatives Litigation, the terms of which are embodied in the Settlement Agreement.[6]

## Jurisdiction

16.    This Court has subject matter jurisdiction to consider and determine this

---

[6]  As part of the settlement, Lehman has also agreed to release CSSE and CSSU from the "Flip Clause Litigation," which is the adversary proceeding captioned *Lehman Brothers Special Financing Inc. v. Bank of America, N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03547, last amended on October 13, 2015 at Dkt. 1156, as amended and solely as asserted against the CS Entities.  The claims against CSSE and CSSU in that litigation were dismissed by the Bankruptcy Court on July 19, 2016.  The district court affirmed the dismissal of those claims in an order dated March 14, 2018. On April 13, 2018, LBSF filed a notice of appeal of the district court's order.

matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Settled Claims and Adversary Proceeding**

17.     The Settlement Agreement provides for the resolution of all disputes between the Lehman Entities and the CS Entities concerning the following proofs of claim asserted by the CS Entities against the Lehman Entities, including any claims for post-petition interest, fees, and costs against any of the Lehman Entities on account of such claims (collectively, the "Settled Claims"):

| Filer | Holder | Debtor | Proof of Claim # |
|---|---|---|---|
| CSI | Credit Suisse* | LBSF | 22843 |
| CSI | Credit Suisse* | LBHI | 22813 |
| Credit Suisse | Credit Suisse* | LBSF | 22854 |
| Credit Suisse | Credit Suisse* | LBHI | 22852 |
| CSE | CSLF* | LBCS | 22828 |
| CSE | CSLF* | LBHI | 22815 |
| Credit Suisse | Credit Suisse | LBCC | 22853 |
| CSSE | CSSE | LBSF | 22856 |
| CSSE | CSSE | LBHI | 22848 |
| CSI | CSI | LBCC | 22842 |
| CSI | CSI | LBCS | 22821 |
| CSI | CSI | LBHI | 22820 |

* Transferee of claim pursuant to notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

18.     Prior to the Commencement Date, the Lehman Subsidiaries traded financial derivatives with certain of the CS Entities pursuant to certain master agreements (collectively, the "Master Agreements"), including: the 1992 ISDA Master Agreement (Multicurrency – Cross Border) dated as of September 12, 2008 among LBSF and CSI (the "LBSF-CSI Agreement"); the 1992 ISDA Master Agreement (Multicurrency – Cross

6

Border) dated as of August 20, 2004 among LBSF and Credit Suisse (the "LBSF-Credit

Suisse Agreement"); the 1992 ISDA Master Agreement (Multicurrency – Cross Border)

dated as of May 17, 2006 among LBCS and CSE (the "LBCS-CSE Agreement"); the

1992 ISDA Master Agreement (Multicurrency – Cross Border) dated as of August 20,

2004 among LBCC and Credit Suisse (the "LBCC-Credit Suisse Agreement"); the 1992

ISDA Master Agreement (Multicurrency – Cross Border) dated as of June 6, 1997 among

LBSF and CSSE (the "LBSF-CSSE Agreement"); the 1992 ISDA Master Agreement

(Multicurrency – Cross Border) dated as of September 28, 1998 among LBCC and CSSE

(the "LBCC-CSSE Agreement"); the 1992 ISDA Master Agreement (Multicurrency –

Cross Border) dated as of December 18, 1995 among LBCC and CSI (the "LBCC-CSI

Agreement"); and the 1992 ISDA Master Agreement (Multicurrency – Cross Border)

dated as of March 23, 2008 among LBCS and CSI (the "LBCS-CSI Agreement").

19.     On August 29, 2008, the Lehman Subsidiaries and certain of the CS

Entities entered into the Close-out Amount Multilateral Agreement (the "Close-out

Amount Agreement") which amended certain of the Master Agreements to specify that

the parties agreed to use the "Close-out Amount" method to determine the settlement

amount due upon early termination, so that the Early Termination Amount upon an Event

of Default would be calculated by the Non-Defaulting Party pursuant to the Close-out

Amount definition in the 2002 ISDA Master Agreement.

20.     LBHI was a guarantor of the Lehman Subsidiaries' obligations under each

of the Master Agreements.  Its chapter 11 filing was an Event of Default under the Master

Agreements.  The CS Entities that were parties to the Master Agreements (the "CS

7

Defendants") terminated the derivatives transactions documented pursuant to the Master

Agreements.  Under each of the Master Agreements, the terminating party was

designated as the party (the "Determining Party") responsible for providing a calculation

statement setting forth the amounts due (if any) among the parties upon termination, and

each of the Master Agreements contained provisions governing the calculation of such

amounts (the "Early Termination Amounts").  The Master Agreements that had been

amended by the Close-out Amount Agreement required the Determining Party to

calculate the respective Early Termination Amount in accordance with the definition of

"Close-out Amount" as provided in the form 2002 ISDA Master Agreement.

21.    The CS Defendants calculated the Early Termination Amounts and filed

claims for those amounts, including claims against LBHI as guarantor of the Lehman

Subsidiaries' obligations.

22.    In the Amended Complaint, Plaintiffs allege that the CS Defendants'

calculation of the Early Termination Amounts breached the terms of the respective

Master Agreements and seek various relief, including, among other things, a judgment (a)

sustaining Plaintiffs' objections to the CS Claims and reducing, disallowing, or

expunging such claims, and (b) determining that the CS Defendants breached the Master

Agreements and owe the Lehman Subsidiaries damages.

23.    In the Answer, the CS Defendants deny all of Plaintiffs' claims.

24.    The dispute among Plaintiffs and the CS Defendants over the CS Claims

has been proceeding before this Court as part of the Derivatives Litigation.

25.    Certain of the CS Claims were expunged or purchased by LBHI on

8

various dates in 2017.  The remaining CS Claims, comprising the Settled Claims, will be
resolved pursuant to the Settlement Agreement.

## The Settlement

26.     On May 25, 2018, following months of ongoing settlement discussions,
the Parties reached an agreement in principle to resolve the Derivatives Litigation, the
terms of which are embodied in the Settlement Agreement, which, subject to Court
approval, will resolve all of the Settled Claims and result in the dismissal of the
Derivatives Litigation.

27.     Pursuant to the Settled Claims, the CS Entities asserted approximately
$1.18 billion in net claims against the Lehman Subsidiaries as primary obligors
(comprising the Non-Guarantee Claims) and claims in approximately the same amounts
against LBHI as guarantor (comprising the Guarantee Claims).  The parties to the
Derivatives Litigation have negotiated a Settlement of the Settled Claims on the terms set
forth in the Settlement Agreement.  The Plan Administrator has determined, in the
exercise of its sound business judgment, and submits that the Settlement is fair and
reasonable, and in the best interests of the Lehman Entities and their respective estates
and creditors.

## The Settlement Agreement

28.     Under the Settlement Agreement, the Settled Claims will be reduced to
aggregate allowed amounts (the "Allowed Amounts") of: (a) $385,000,000 against the
Lehman Subsidiaries under the Non-Guarantee Claims; and (b) $363,660,000 against
LBHI as guarantor under the Guarantee Claims, as set forth below:

| Creditor | Debtor | Proof of Claim # | Alleged Amount | Allowed Amount |
|---|---|---|---|---|
| Credit Suisse | LBSF | 22843 | $932,898,750.38 | $251,891,406 |
| Credit Suisse | LBHI | 22813 | $932,898,750.38 | $251,891,406 |
| Credit Suisse | LBSF | 22854 | $138,712,743.90 | $72,473,674 |
| Credit Suisse | LBHI | 22852 | $138,712,743.90 | $72,473,674 |
| CSLF | LBCS | 22828 | $71,622,924.27 | $34,940,000 |
| CSLF | LBHI | 22815 | $71,622,924.27 | $34,940,000 |
| Credit Suisse | LBCC | 22853 | $21,822,749.28 | $16,619,263 |
| CSSE | LBSF | 22856 | $9,657,351.37 | $4,354,920 |
| CSSE | LBHI | 22848 | $9,657,351.37 | $4,354,920 |
| CSI | LBCC | 22842 | $6,720,736.76 | $4,720,737 |
| CSI | LBCS | 22821 | $219,534.00 | $0 |
| CSI | LBHI | 22820 | $219,534.00 | $0 |

29.     Each Allowed Amount against LBSF shall be allowed as nonpriority general unsecured claims in LBSF Class 4A of the Plan (the "LBSF Claims").  Each Allowed Amount against LBCS shall be allowed as nonpriority general unsecured claims in LBCS Class 4 of the Plan (the "LBCS Claims").  Each Allowed Amount against LBCC shall be allowed as nonpriority general unsecured claims in LBCC Class 4 of the Plan (the "LBCC Claims").  Each Allowed Amount against LBHI shall be allowed as nonpriority general unsecured claims in LBHI Class 9A of the Plan.  Each Settled Claim shall be entitled to all rights and benefits provided for by the Plan to allowed claims of each Settled Claim's respective class, including interest provided for by Section 8.4 of the Plan and, where applicable, post-petition interest, including, in the case of CS Claims 22853 and 22842, post-petition interest at the rate of the overnight LIBOR rate for each relevant date plus one percent, compounded daily.

30.     Other material terms of the Settlement Agreement are as follows:

**Timing and Process**:  The Parties have agreed that:

10

(i)      the Parties have a binding and enforceable settlement as of the date of the execution of the Settlement Agreement (the "Execution Date"), subject only to Bankruptcy Court approval of the Settlement Agreement by Final Order (as defined in the Plan); and

(ii)      counsel for LBHI would file this motion (the "Approval Motion") on the date hereof seeking approval of the material terms of the Settlement Agreement.

**Dismissal of Relevant Adversary Proceedings**:  Not later than two (2) business days following the date on which the Approval Order shall have become a Final Order as defined in the Plan (the "Effective Date"), the Parties will stipulate to the dismissal with prejudice of the Derivatives Litigation, with each party to bear its own fees and costs.

**Mutual Releases**:

The Settlement Agreement contains the following releases:

(i)          Automatically on the Effective Date, all of the Lehman Entities hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every one of the CS Entities, all of their parents, subsidiaries, and affiliates, all holders of any interest in the Settled Claims, and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, assigns, predecessors, and representatives (each a "CS Releasee" and collectively, the "CS Releasees") from and in respect of the Derivatives Litigation, the Settled Claims and the Flip Clause Litigation, *except* that the foregoing release, waive, and discharge shall not release, waive, or discharge any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; *provided, however*, that nothing in this section shall prevent any Lehman Releasee from asserting any counterclaim or defense in any Action commenced against it by any CS Releasee after the Execution Date.  For the avoidance of doubt, nothing in this section shall release, waive, or

11

discharge from and in respect of the Flip Clause Litigation any holder of any beneficial interest in the notes at issue in the Flip Clause Litigation with respect to such beneficial interest, but shall release any Action that was asserted or that could have been asserted against the CS Releasees in the Flip Clause Litigation.

(ii)     Subject to the provisions of the Settlement Agreement governing reduction and allowance of the Settled Claims, automatically on the Effective Date, all of the CS Entities hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every of the Lehman Entities and all of their parents, subsidiaries, and affiliates (in each case who are debtors in the Chapter 11 Cases), and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, assigns, predecessors, and representatives (each a "Lehman Releasee" and collectively, the "Lehman Releasees") from and in respect of the Derivatives Litigation, the Settled Claims and the Flip Clause Litigation; *provided, however,* that the foregoing release, waive, and discharge shall not release, waive, or discharge (i) any claim that is not a Settled Claim, (ii) any claim held by any of the CS Entities that has been previously allowed under the Plan pursuant to a prior settlement between any of the CS Entities and any of the Lehman Entities, and (iii) any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; and *provided, further*, that nothing in this section shall prevent any CS Releasee from asserting any counterclaim or defense in any Action commenced against it by any Lehman Releasee after the Execution Date.

**Choice of Law/Jurisdiction**:  The Settlement Agreement will be construed and enforced in accordance with, and the rights of the Parties

shall be governed by, the laws of the State of New York (including
Section 5-1401 of the New York General Obligations Law), without
regard to conflicts of laws principles that would require the application of
the law of another jurisdiction. The Bankruptcy Court shall have
exclusive jurisdiction over any action or proceeding with respect to the
Settlement Agreement and each Party agrees to submit to such jurisdiction
and to waive any defense based on the location or jurisdiction of such
court.

31.     Although the Plan Administrator believes that many of the claims asserted

by the CS Entities are greatly overstated and, if litigated to finality, would be

substantially reduced, the Plan Administrator acknowledges that there are hundreds of

variables at play, that the outcome of litigation is inherently uncertain, and that the CS

Entities have vigorously defended each of their claims and claim amounts. Accordingly,

the Plan Administrator has determined in its informed business judgment that the terms

of the Settlement Agreement are in the best interests of the Lehman Entities and their

respective estates and creditors. Absent consummation of the Settlement Agreement, the

Lehman Entities and the CS Entities would proceed with litigation, which would include

time-consuming and expensive legal proceedings, including potential appeals, as well as

the risks attendant to such litigation. The Settlement Agreement will enable the Lehman

Entities to avoid expending further resources in connection with these disputes, while

significantly reducing the amount of the Settled Claims.

### The Settlement Agreement Is in the Lehman
### Entities' Best Interests and Should Be Approved

32.     The Plan Administrator, on behalf of LBHI and the other Lehman Entities,

submits that the Settlement Agreement is in the best interests of LBHI, the other Lehman

Entities, and their respective estates and creditors, and should be approved under Rule

9019 of the Bankruptcy Rules.  Bankruptcy Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."  Fed. R. Bankr. Proc. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *In re Drexel Burnham Lambert Group, Inc*., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness."  *Id.* (quotations omitted); *accord Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

33.    Compromises are "a normal part of the process of reorganization."  *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Compromises may be effected separately during the reorganization proceedings or in the body of the plan itself.  *In re Drexel Burnham Lambert Group, Inc*., 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992).  The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The Court's discretion may be exercised "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  A proposed compromise settlement implicates the issue of whether it is "fair and equitable, and . . . in the best interest of the [debtor's] estate."  *In re Best Products*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).  The Court must apprise itself "of all facts necessary for an intelligent and objective opinion of

14

the probabilities of ultimate success should the claim be litigated." *Anderson*, 390 U.S. at

424.

34.    Courts typically consider the following factors in determining whether a

settlement should be approved: (i) the probability of success in litigation, with due

consideration for the uncertainty in fact and law; (ii) the difficulties of collecting any

litigated judgment; (iii) the complexity and likely duration of the litigation and any

attendant expense, inconvenience, and delay; (iv) the proportion of creditors who do not

object to, or who affirmatively support, the proposed settlement; (v) the competence and

experience of counsel who support the settlement; (vi) the relative benefits to be received

by members of any affected class; (vii) the extent to which the settlement is truly the

product of arm's-length bargaining and not the product of fraud or collusion; and (viii)

the debtor's informed judgment that the settlement is fair and reasonable. *See id.*; *In re*

*Ashford Hotels, Ltd.*, 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); *In re Best Prods. Co.*,

168 B.R. at 50.

35.    While a court must evaluate "all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424, a

court need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff*, 699

F.2d at 608, or conduct a full independent investigation, *Drexel Burnham*, 134 B.R. at

505.  Moreover, in reviewing a proposed global compromise, the Court need not "assess

the minutia of each and every claim"; rather, the Court need only "canvass the issues and

see whether the settlement falls below the lowest point in the range of reasonableness."

*Shugrue*, 165 B.R. at 123 (internal citations omitted).  As one court explained in

15

assessing a global settlement of claims, "[t]he appropriate inquiry is whether the Settlement Agreement in its entirety is appropriate for the . . . estate." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 430 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

36.     Here, the Settlement Agreement will benefit the Lehman Entities, their estates, and their creditors.  First, the Settlement Agreement will result in the reduction of the Non-Guarantee Claims by approximately $797 million in aggregate and of the Guarantee Claims by approximately $789 million.  The Plan Administrator has determined, in the exercise of its business judgment, the Allowed Amount is a reasonable in light of the complexities of the litigation, the vigorous way in which the CS Entities have pursued each of their claims, the attendant risks and the likely costs of litigating the Derivatives Litigation to finality.  Second, entry into the Settlement Agreement will avoid future disputes and litigation, including what could be protracted appeals, concerning the Derivatives Litigation.  Third, entry into the Settlement Agreement will make cash held as reserves against the Settled Claims available for distribution to other creditors of the Lehman Entities.

37.     In addition, the Settlement is the product of extensive good faith, arm's length negotiations and is not the product of collusion or fraud.  Rather, the Settlement is the result of the Parties' shared recognition of the litigation risks to which each side is exposed, and the realization that litigating the Derivatives Litigation to a final resolution would be exorbitantly expensive and time consuming.  The Parties thus negotiated in good faith, at arm's length, to resolve the Derivatives Litigation.

38.     For the reasons stated above, and in the Plan Administrator's informed business judgment, the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the Parties' dispute, well within the "range of reasonableness," and are in the best interests of LBHI and the other Lehman Entities, and their respective estates and creditors.  Accordingly, the Plan Administrator requests that the Settlement Agreement be approved, effective immediately upon entry of an Order granting the relief requested herein.

### The Bankruptcy Court Has Authority Pursuant to Section 105(a) of the Bankruptcy Code to Approve the Settlement Agreement

39.     The Plan Administrator also seeks approval of the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code.  This Court has authority under the broad equitable powers of the Bankruptcy Code set forth in section 105(a) to approve the Settlement Agreement.  *See, e.g.*, *In re A.H.  Robbins*, 880 F.2d 769, 776 (4th Cir. 1989) (section 105(a) authorizes the court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code); *In re Joint E. & S. Dis. Asbestos Litig.*, 878 F. Supp. 473 (E.D.N.Y. & S.D.N.Y. 1995) and 129 B.R. 710 (E.D.N.Y. & S.D.N.Y. 1991) (holding that section 105(a) of the Bankruptcy Code authorizes the federal courts in bankruptcy cases to approve a settlement modifying distributions, obligations, and payment procedures under a trust).

40.     This Court has granted similar relief in these Chapter 11 Cases pursuant to section 105(a) of the Bankruptcy Code.  *See* Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Settlement Agreement Among Citibank, N.A. and Certain of Its Affiliates, and Lehman

Brothers Holdings Inc. and Certain of Its Affiliates [ECF No. 56466]; Order Granting

Motion of Lehman Brothers Holdings Inc. and Official Committee of Unsecured

Creditors, Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(A), For Entry of Order

Approving Settlement with JPMorgan Chase Bank, N.A. and Certain of Its Affiliates

[ECF No. 54788]; Order Approving the Settlement Agreement Relating to Restructured

Asset Certificates with Enhanced Returns, Series 2006-20AT Credit Default Swap

Agreement and Trust Agreement [ECF No. 49408]; Order Approving the Settlement

Agreement Relating to Exum Ridge CBO 2007-2 Credit Default Swap Agreement and

Indenture [ECF No. 48318]; Order Pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Partial

Settlement Agreement Relating to SGS HY Credit Fund I (Exum Ridge CBO 2006-3)

Swap Agreement and Indenture [ECF No. 45451]; Order Approving Partial Settlement

Agreements Relating to Certain Credit Default Swap Agreements and Trust Agreements

[ECF No. 39624]; Order Pursuant to Section 105(a) of the Bankruptcy Code and

Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating to Airlie CDO

I, Ltd.  [ECF No. 39017]; Order Pursuant to Section 105(a) of the Bankruptcy Code and

Bankruptcy Rule 9019 Approving Partial Settlement Agreement Relating to Pebble Creek

LCDO 2007-3, Ltd.  [ECF No. 36867]; Order Approving Settlement Agreement and

Indemnity Between Lehman Brothers Special Financing Inc. and Deutsche Bank Trust

Company Americas, as Trustee, Relating to Credit Default Swap Agreement [ECF No.

30096].

     41.     The use of the Court's equitable authority is justified and appropriate here.

18

## Notice

42.     No trustee has been appointed in these Chapter 11 Cases.  The Plan Administrator has served notice of this Motion in accordance with the procedures set forth in the Second Amended Order entered on June 17, 2010, governing case management and administrative procedures for these cases [ECF No. 9635] on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the attorneys for Credit Suisse; and (vi) all parties who have requested notice in the Chapter 11 Cases.  The Plan Administrator submits that no other or further notice need be provided.

43.     No previous request for the relief sought herein has been made by the Plan Administrator to this or any other Court.

## Waiver of Bankruptcy Rule 6004(h)

75.     The Plan Administrator requests that any order approving the Motion be effective immediately upon entry and that the Court waive the applicability of Bankruptcy Rule 6004(h).

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:    June 12, 2018
          New York, New York

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/* Andrew J. Rossman
Andrew J. Rossman
*Attorneys for Lehman Brothers Holdings
Inc. and Certain of Its Affiliates*