**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re                                                   : Chapter 11 Case No.
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,            : 08-13555 (SCC)
                                                        :
                     Debtors.                           : (Jointly Administered)
------------------------------------------------------------------------x

## DECLARATION OF STEVEN MULLANEY

Pursuant to 28 U.S.C. § 1746, I, Steven Mullaney, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, my review of relevant business records of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF", and collectively with their other chapter 11 affiliates, the "Chapter 11 Estates" or "Lehman"), and my consultation with other employees of and advisors to the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Among Credit Suisse AG, and Certain of Its Affiliates, and Lehman Brothers Holdings Inc., and Certain of its Affiliates (the "Motion").[1]

3. I am a Managing Director at LBHI. I joined LBHI in March 2009, and I am responsible for helping to manage the derivatives-related bankruptcy claims filed by Lehman's largest and most complex counterparties as well as managing a group of professionals who value all derivatives transactions in the Chapter 11 Estates. I have been deeply involved in derivatives-

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion.

related litigations brought by the Chapter 11 Estates, including, in particular, the litigation with Credit Suisse AG ("Credit Suisse") and certain of its affiliates captioned *Lehman Brothers Holdings Inc., et al. v. Credit Suisse, et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 13-01676 (SCC) (Bankr. S.D.N.Y.) (the "Derivatives Litigation").

**Background**

4. Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries, including LBSF, commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Subsequent to the Commencement Date, Credit Suisse, Credit Suisse International ("CSI"), Credit Suisse Energy LLC ("CSE"), and Credit Suisse Securities (Europe) Ltd. ("CSSE" and together with Credit Suisse, CSI, and CSE, each a "Defendant" and collectively the "Defendants"), filed numerous proofs of claim against various Chapter 11 Estates, including Proof of Claim numbers 22843, 22813, 22854, 22852, 22828, 22815, 22853, 22841, 22856, 22848, 22849, 22847, 22842, 22812, 22821, and 22820 (each such claim, a "CS Claim" and collectively the "CS Claims"): (a) in amounts totaling approximately $1.18 billion against LBSF, LBCC, and LBCS (the "Lehman Subsidiaries") as primary obligors, based on tens of thousands of derivatives trades; and (b) in the same amounts against LBHI as guarantor of the Lehman Subsidiaries.

6. On January 11, 2010, CSE transferred Proof of Claim numbers 22828 and 22815 to Credit Suisse Loan Funding LLC ("CSLF") by evidence and notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

7. On July 1, 2010, Credit Suisse transferred Proof of Claim numbers 22854 and 22852 to CSI by evidence and notice given pursuant to Bankruptcy Rule 3001(e)(2).

8. On September 14, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. Bank of America, N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03547, last amended on October 13, 2015 at Dkt. 1156 (as amended and solely as asserted against the CS Entities, the "Flip Clause Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes. On February 6, 2017, LBSF filed a notice of appeal, Adv. No. 10-03547 at Dkt. 1403, from an order entered by the Bankruptcy Court on July 19, 2016 dismissing certain claims asserted in the Flip Clause Litigation, Adv. No. 10-03547 at Dkt. 1371, Addendum A to which notice of appeal, Adv. No. 10-03547 at Dkt. 1403-1, listed as defendants CSSE and Credit Suisse Securities (USA) LLC ("CSSU" and together with Credit Suisse, CSI, CSE, CSSE, and CSLF, each a "CS Entity" and collectively the "CS Entities" and together with the Lehman Entities, each a "Party" and collectively the "Parties"). On April 13, 2018, LBSF filed a notice of appeal, Case No. 17-cv-01224 at Dkt. 117, from an order entered by the District Court on March 14, 2018 affirming the Bankruptcy Court's July 19, 2016 order in the Flip Clause Litigation, Case No. 17-cv-01224 at Dkt. 116, Addendum A to which notice of appeal, Case No. 17-cv-01224 at Dkt. 117-2, listed as defendants CSSE and CSSU.

9. On February 15, 2011, CSI transferred Proof of Claim numbers 22843, 22813, 22854, and 22852 to Credit Suisse by evidence and notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

10. On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012. Among other things,

the Plan required the Chapter 11 Estates to set aside cash and assets as reserves ("Reserves") based on the amount of creditors' claims, including the CS Claims.

11. On November 6, 2013, LBHI, LBSF, Lehman Brothers Commodity Services Inc. ("LBCS"), and Lehman Brothers Commercial Corp. ("LBCC") (collectively, "Plaintiffs" or "Lehman Entities") commenced the Derivatives Litigation. On March 17, 2017, Plaintiffs filed their *Amended Adversary Complaint and Objection to Claims*, Adv. No. 13-01676 at Dkt. 43 (the "Amended Complaint") in the Derivatives Litigation. Pursuant to the Amended Complaint, Plaintiffs, among other things, challenge the amount of the CS Claims and seek damages, as well as statutory interest under New York law and other costs and fees.

12. Defendants filed an answer to the Amended Complaint, dated March 31, 2017, Adv. No. 13-01676 at Dkt. 50 (the "Answer"), denying all of Plaintiffs' claims.

13. On April 28, 2017, Proof of Claim numbers 22812 and 22841 were expunged. On August 11, 2017, Proof of Claim number 22847 was expunged, and Proof of Claim number 22849 was purchased by LBHI.

14. On December 11, 2017, Plaintiffs filed their *Amended Motion of Lehman Plaintiffs to Estimate Proof of Claim Nos. 22813, 22843, 22852, and 22854 for Reserve Purposes*, Adv. No. 13-01676 at Dkt. 78 (the "Motion to Estimate") in the Derivatives Litigation. Pursuant to the Motion to Estimate, Plaintiffs sought an entry of an order estimating Proof of Claim numbers 22813 and 22843 at a maximum of $475,898,750 and estimating Proof of Claim numbers 22852 and 22854 at a maximum of $96,712,744, in each case solely for the purpose of calculating Reserves. On January 12, 2018, the Bankruptcy Court entered the *Joint Stipulation and Order Regarding Motion of Lehman Plaintiffs to Estimate Proofs of Claim Nos. 22813, 22843, 22852 and 22854 for Reserve Purposes*, Adv. No. 13-01676 at Dkt. 86, pursuant to which the parties to the Derivatives Litigation stipulated and agreed, and the Bankruptcy Court ordered, among other

things, that, in each case solely for the purpose of calculating Reserves, Proof of Claim numbers 22813 and 22843 should each be estimated at $793 million and Proof of Claim numbers 22852 and 22854 should each be estimated at $118 million. Accordingly, the Chapter 11 Estates reduced the Reserves held against the CS Claims by an estimated amount of approximately $76 million.

15. The parties to the Derivatives Litigation engaged in extensive fact and expert discovery over the course of more than four years. Party and third-party productions totaled over 28 million pages of documents and electronic files, seven expert witnesses provided expert reports, and nearly 100 witnesses gave deposition testimony in the case, including more than 30 days of corporate testimony.

16. On May 25, 2018, following months of ongoing settlement discussions, the Parties reached an agreement in principle to resolve the Derivatives Litigation, the terms of which are embodied in the Settlement Agreement.[2]

**The Settlement**

17. By the Motion, the Movants are seeking approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of the Bankruptcy Code, of a global settlement of disputes among the Lehman Entities and the CS Entities (the "Settlement"), the terms of which are reflected in a settlement agreement (the "Settlement Agreement"). The Settlement Agreement provides for the resolution of the Derivatives Litigation and puts an end to years of contentious litigation.

18. The Settlement Agreement provides for the resolution of all disputes between the Lehman Entities and the CS Entities concerning the following proofs of claim asserted

---

[2] As part of the settlement, Lehman has also agreed to release CSSE and CSSU from the Flip Clause Litigation.

by the CS Entities against the Lehman Entities, including any claims for post-petition interest, fees, and costs against any of the Lehman Entities on account of such claims (collectively, the "Settled Claims"):[9]

| Creditor | Debtor | Proof of Claim # |
|---|---|---|
| Credit Suisse* | LBSF | 22843 |
| Credit Suisse* | LBHI | 22813 |
| Credit Suisse* | LBSF | 22854 |
| Credit Suisse* | LBHI | 22852 |
| CSLF* | LBCS | 22828 |
| CSLF* | LBHI | 22815 |
| Credit Suisse | LBCC | 22853 |
| CSSE | LBSF | 22856 |
| CSSE | LBHI | 22848 |
| CSI | LBCC | 22842 |
| CSI | LBCS | 22821 |
| CSI | LBHI | 22820 |

* Transferee of claim pursuant to notice given pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

19. Pursuant to the Settled Claims, the CS Entities asserted approximately $1.18 billion in claims against the Lehman Subsidiaries as primary obligors (the "Non-Guarantee Claims") and claims in approximately the same amounts against LBHI as guarantor (the "Guarantee Claims"). The Parties have negotiated a Settlement of the Settled Claims as embodied in the Settlement Agreement. The Plan Administrator has determined, in the exercise of its sound business judgment, and submits that the Settlement is fair and reasonable, and in the best interests of the Lehman Entities and their respective estates and creditors. I believe that the global Settlement embodied in the Settlement Agreement achieves that result.

---

[9] The Settlement Agreement does not affect any claim held by the CS Entities that is not a Settled Claim, any claim held by any of the CS Entities that has been previously allowed under the Plan pursuant to a prior settlement between any of the CS Entities and any of the Lehman Entities, or any claim that has been previously expunged or purchased by LBHI.

20. The mechanics of the Settlement Agreement, and the transactions contemplated thereby, are accurately described in the Motion.

21. The Settlement Agreement provides that the Lehman Entities and Credit Suisse (on behalf of itself and the CS Entities) will stipulate to the dismissal of the Derivatives Litigation and execute mutual releases, which shall include a full and final release of (1) all claims held by the CS Entities against the Lehman Entities that were asserted in, could have been asserted in, or relate to the Settled Claims and the Flip Clause Litigation, and (2) all claims, causes of action, defenses, and counterclaims of the Parties against one another and the Parties' affiliates, subsidiaries, and assigns that were asserted in, could have been asserted in, or relate to the Settled Claims; *provided*, that the mutual releases shall not release (a) any claim that is not a Settled Claim, and (b) any claim held by any of the CS Entities that has been previously allowed under the Plan pursuant to a prior settlement between any of the CS Entities and any of the Lehman Entities.

22. In consideration of allowance of the Settled Claims, the parties agreed that the Non-Guarantee Claims would be reduced to an aggregate amount of $385,000,000 against the Lehman Subsidiaries as primary obligors, and that the Guarantee Claims would be reduced to an aggregate amount of $363,660,000 against LBHI as guarantor (collectively, the "Allowed Amount"). The allocation of the Allowed Amount among the Settled Claims was made pursuant to the Plan Administrator's corporate governance for determining issues among the Chapter 11 Estates and was provided to the CS Entities.

23. Although the Plan Administrator believes that many of the claims asserted by the CS Entities are overstated and, if litigated to finality, would be reduced significantly, the Plan Administrator acknowledges that there are hundreds of variables at play, that the outcome of litigation is inherently uncertain, and that the CS Entities have vigorously defended each of

their claims and claim amounts. Accordingly, the Plan Administrator has determined in its informed business judgment that the terms of the Settlement Agreement are in the best interests of the Lehman Entities and their respective estates and creditors. Absent consummation of the Settlement Agreement, the Lehman Entities and the CS Entities would proceed with litigation, which would include time-consuming and expensive legal proceedings, including potential appeals, as well as the risks attendant to such litigation. The Settlement Agreement will enable the Lehman Entities to avoid expending further resources in connection with these disputes, while significantly reducing the amount of the Settled Claims.

24. Here, the Settlement Agreement will benefit LBHI, LBSF, their estates and their creditors and the other Lehman Entities. First, the Settlement Agreement will result in the reduction of the Non-Guarantee Claims by approximately $797 million in aggregate against the Lehman Subsidiaries, and in a reduction of the Guarantee Claims by approximately $789 million in aggregate against LBHI. The Plan Administrator has determined, in the exercise of its business judgment, the Allowed Amount is reasonable in light of the complexities of the litigation, the vigorous way in which the CS Entities have pursued each of their claims, the attendant risks and the likely costs of litigating the Derivatives Litigation to finality. Second, entry into the Settlement Agreement will avoid future disputes and litigation, including what could be protracted appeals, concerning the Derivatives Litigation and the Settled Claims. Third, entry into the Settlement Agreement will permit the Plan Administrator to release Reserves held against the Settled Claims, thereby making an estimated amount of approximately $280 million in cash available to the Chapter 11 Estates' creditors other than the CS Entities on the next distribution date.

25. In addition, the Settlement is the product of extensive good faith, arm's length negotiations and is not the product of collusion or fraud. Rather, the Settlement is the

result of the Parties' shared recognition of the litigation risks to which each side is exposed, and the realization that litigating the Derivatives Litigation to a final resolution would be exorbitantly expensive and time consuming. The Parties thus negotiated in good faith, at arm's length, to resolve the Derivatives Litigation and the Flip Clause Litigation.

26.     For the reasons stated above, I believe the compromises set forth in the Settlement Agreement are a "fair and equitable" resolution of the parties' disputes, well within the "range of reasonableness," and are in the best interests of each of the Lehman Entities and their respective estates and creditors.

27.     I have discussed the Settlement at length with my colleagues involved in the management of the Chapter 11 Estates and we have concluded, in our considered business judgment, that the Settlement is in the best interests of each of the Lehman Entities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of June 2018.

/s/ *Steven Mullaney*
Steven Mullaney