**Hearing Date and Time: June 27, 2018 at 2:00 p.m.  (Prevailing Eastern Time)**
**Objection Date and Time: June 20, 2018 at 4:00 p.m.  (Prevailing Eastern Time)**

Andrew J. Rossman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 MADISON AVENUE
NEW YORK, NEW YORK 10010
*Attorneys for Lehman Brothers Holdings Inc. and
Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
In re                                                             :    **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                        :    **08-13555 (SCC)**
                                                                  :
Debtors.                                                          :    **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

## NOTICE OF FILING OF CORRECTED EXHIBIT

PLEASE TAKE NOTICE that Lehman Brothers Holdings Inc., as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, has filed the attached corrected Attachment 1 (a fully executed copy of the settlement agreement) which replaces and supersedes Attachment 1 originally filed with the *Motion Pursuant to Rule 9019 of the federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Among Credit Suisse AG, and Certain of its Affiliates, and Lehman Brothers Holdings Inc., and Certain of Its Affiliates* (ECF No. 58254).

*[signature page follows]*

Dated: June 13, 2018
New York, New York

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

        By: */s/* Andrew J. Rossman
        Andrew J. Rossman
        *Attorneys for Lehman Brothers Holdings Inc. and Certain of Its Affiliates*

2

**Attachment 1**

**SETTLEMENT AGREEMENT**

AGREEMENT dated as of June 12, 2018 among Credit Suisse AG ("Credit Suisse"), on behalf of itself and on behalf of Credit Suisse International ("CSI"), Credit Suisse Energy LLC ("CSE"), Credit Suisse Securities (Europe) Ltd. ("CSSE"), Credit Suisse Loan Funding LLC ("CSLF"), and Credit Suisse Securities (USA) LLC ("CSSU" and together with Credit Suisse, CSI, CSE, CSSE, and CSLF, each a "CS Entity" and collectively the "CS Entities"), Lehman Brothers Holdings Inc., in its individual capacity and as Plan Administrator ("LBHI"), Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp. ("LBCC"), and Lehman Brothers Commodity Services Inc. ("LBCS" and together with LBHI, LBSF, and LBCC each a "Lehman Entity" and collectively the "Lehman Entities") (each of the foregoing a "Party" and collectively the "Parties").  Reference is made to Section 1 below for the meaning of certain capitalized terms used herein without definition.

**Background**

A.     Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, as amended, before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") at Case No. 08-13555 (SCC).

B.     On or before the deadline to file proofs of claim against the Lehman Entities in the Chapter 11 Cases, the CS Entities filed numerous proofs of claim against the Lehman Entities, including Proof of Claim numbers 22843, 22813, 22854, 22852, 22828, 22815, 22853, 22841, 22856, 22848, 22849, 22847, 22842, 22812, 22821, and 22820 (each such claim a "CS Claim" and collectively the "CS Claims").

C.     On January 11, 2010, CSE transferred Proof of Claim numbers 22828 and 22815 to CSLF by evidence and notice given pursuant to Bankruptcy Rule 3001(e)(2).

D.     On July 1, 2010, Credit Suisse transferred Proof of Claim numbers 22854 and 22852 to CSI by evidence and notice given pursuant to Bankruptcy Rule 3001(e)(2).

E.     On September 14, 2010, LBSF commenced an adversary proceeding in the Bankruptcy Court against various parties captioned *Lehman Brothers Special Financing Inc. v. Bank of America, N.A., et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 10-03547, last amended on October 13, 2015 at Dkt. 1156 (as amended and solely as asserted against the CS Entities, the "Flip Clause Litigation"), challenging, among other things, the enforceability of certain contractual provisions purporting to modify LBSF's right to receive payments in connection with the early termination of certain swap agreements with certain issuers of notes.  On February 6, 2017, LBSF filed a notice of appeal, Adv. No. 10-03547 at Dkt. 1403, from an order entered by the Bankruptcy Court on July 19, 2016 dismissing certain claims asserted in the Flip Clause Litigation, Adv. No. 10-03547 at Dkt. 1371, Addendum A to which notice of appeal, Adv. No. 10-03547 at Dkt. 1403-1, listed as defendants CSSE and CSSU.  On April 13, 2018, LBSF filed a notice of appeal, Case No. 17-cv-01224 at Dkt. 117, from an order entered by the District Court on March 14, 2018

1

affirming the Bankruptcy Court's July 19, 2016 order in the Flip Clause Litigation, Case No. 17-cv-01224 at Dkt. 116, Addendum A to which notice of appeal, Case No. 17-cv-01224 at Dkt. 117-2, listed as defendants CSSE and CSSU.

F.     On February 15, 2011, CSI transferred Proof of Claim numbers 22843, 22813, 22854, and 22852 to Credit Suisse by evidence and notice given pursuant to Bankruptcy Rule 3001(e)(2).

G.     On December 6, 2011, the Bankruptcy Court entered an order confirming the Modified Third Amended Joint Chapter 11 Plan of LBHI and Its Affiliated Debtors, *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 at Dkt. 23023 (the "Plan"). LBHI was appointed as Plan Administrator under the Plan, with the powers and authority stated in the Plan.

H.     On November 6, 2013, the Lehman Entities commenced an adversary proceeding and claims objection in the Bankruptcy Court against the CS Entities, captioned *Lehman Brothers Holdings Inc., et al. v. Credit Suisse, et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 13-01676 at Dkt. 1 (as amended, the "Derivatives Litigation"). On March 17, 2017, Plaintiffs filed their *Amended Adversary Complaint and Objection to Claims*, Adv. No. 13-01676 at Dkt. 43 (the "Amended Complaint") in the Derivatives Litigation. Pursuant to the Amended Complaint, Plaintiffs, among other things, challenge the amount of the CS Claims and seek damages, as well as statutory interest under New York law and other costs and fees.

I.     On April 28, 2017, Proof of Claim numbers 22812 and 22841 were expunged. On August 11, 2017, Proof of Claim number 22847 was expunged, and Proof of Claim number 22849 was purchased by LBHI.

J.     The Lehman Entities have represented to the CS Entities that they have objected to all of the CS Entities' claims in the Chapter 11 Cases to which they will object and will not object to any other claims of any CS Entity.

K.     The Lehman Entities and the CS Entities have disputes regarding the Derivatives Litigation and the Flip Clause Litigation and desire to resolve these disputes. The Parties have engaged in extensive discussions and negotiations in a good-faith attempt to reach a consensual resolution of the Derivatives Litigation and the Flip Clause Litigation.

L.     The Parties desire to provide for the resolution of the Derivatives Litigation and the Flip Clause Litigation on the terms and conditions set forth below.

**THEREFORE, IT IS AGREED**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged:

### Terms and Conditions

1.     Defined Terms. In this Settlement Agreement, the following terms shall have the following respective meanings.

> "Actions" means all claims, objections to claims, causes of action, avoidance actions, setoff challenges, debts, obligations, rights, suits, damages, actions, interests, remedies, costs, expenses and liabilities, whether asserted or un-asserted, known or

2

unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, contingent or fixed, accrued or un-accrued, state or federal, currently existing or hereafter arising, in law, contract, equity or otherwise, including without limitation all claims for prepetition, post-petition, post-confirmation, prejudgment and post-judgment interest and all appeal rights.

"Approval Order" means an order of the Bankruptcy Court in the form of Exhibit A hereto (with only such changes to which each of the Parties may agree in its sole discretion).

"Effective Date" means the date on which the Approval Order shall have become a Final Order as defined in the Plan.

"Execution Date" means the date on which this Settlement Agreement shall have been executed and delivered by all of the Parties.

"Settled Claims" means the CS Claims listed in Schedule A hereto, and any other Actions by any of the Lehman Entities or the CS Entities arising out of any of the transactions giving rise to the CS Claims listed in Schedule A hereto.

2. Reduction and Allowance of Claims.

   (a) The Settled Claims shall be reduced and allowed on a final basis as nonpriority general unsecured claims and reconciled in the amounts set forth in Schedule A hereto (each an "Allowed Amount" and together the "Allowed Amounts"). The Settled Claims shall not be subject to objections or defenses whether by way of netting, set off, recoupment, counterclaim or otherwise, or be subject to any claim that would have the effect of subordinating the Settled Claims to the claims of other nonpriority general unsecured creditors.

   (b) For the avoidance of doubt, each Settled Claim shall be entitled to all rights and benefits provided for by the Plan to allowed claims of each Settled Claim's respective class, including interest provided for by Section 8.4 of the Plan and, where applicable, post-petition interest, including, in the case of CS Claims 22853 and 22842, post-petition interest at the rate of the overnight LIBOR rate for each relevant date plus one percent, compounded daily.

3. Mutual Releases.

   (a) Automatically on the Effective Date, all of the Lehman Entities hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every one of the CS Entities, all of their parents, subsidiaries, and affiliates, all holders of any interest in the Settled Claims, and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, assigns, predecessors, and representatives (each a "CS Releasee" and collectively, the "CS Releasees") from and in respect of the

3

Derivatives Litigation, the Settled Claims and the Flip Clause Litigation, *except* that the foregoing release, waiver, and discharge shall not release, waive, or discharge any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; *provided, however*, that nothing in this Section 3(a) shall prevent any Lehman Releasee from asserting any counterclaim or defense in any Action commenced against it by any CS Releasee after the Execution Date. For the avoidance of doubt, nothing in this Section 3(a) shall release, waive, or discharge from and in respect of the Flip Clause Litigation any holder of any beneficial interest in the notes at issue in the Flip Clause Litigation with respect to such beneficial interest, but shall release any Action that was asserted or that could have been asserted against the CS Releasees in the Flip Clause Litigation.

(b) Subject to the provisions of Section 2, automatically on the Effective Date, all of the CS Entities hereby do and shall be deemed to irrevocably, unconditionally, and forever generally release, waive, and discharge each and every of the Lehman Entities and all of their parents, subsidiaries, and affiliates (in each case who are debtors in the Chapter 11 Cases), and (in each case solely in their capacities as such) all of their respective property, current and former officers, directors, employees, divisions, branches, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents, successors, assigns, predecessors, and representatives (each a "<u>Lehman Releasee</u>" and collectively, the "<u>Lehman Releasees</u>") from and in respect of the Derivatives Litigation, the Settled Claims and the Flip Clause Litigation; *provided, however,* that the foregoing release, waiver, and discharge shall not release, waive, or discharge (i) any claim that is not a Settled Claim, (ii) any claim held by any of the CS Entities that has been previously allowed under the Plan pursuant to a prior settlement between any of the CS Entities and any of the Lehman Entities, and (iii) any right or obligation under this Settlement Agreement, including the right to enforce this Settlement Agreement; and *provided, further*, that nothing in this Section 3(b) shall prevent any CS Releasee from asserting any counterclaim or defense in any Action commenced against it by any Lehman Releasee after the Execution Date.

(c) All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the Actions described in Sections 3(a) and (b) hereof. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

(d) Each Lehman Entity further confirms and agrees that it is not aware of any actual or potential Action held by any of the Lehman Entities or any other subsidiaries of

4

        LBHI against any CS Releasee that would not be released by Sections 3(a) and (b) hereof.

   (e)    Each Party represents and warrants that it has full power and authority (i) to enter into this Settlement Agreement, (ii) to compromise or settle any Action purported to be released by such Party pursuant to Sections 3(a) or (b) hereof, and (iii) to enter into the releases contemplated by this Settlement Agreement.

   (f)    Notwithstanding any other provision herein, this Settlement Agreement shall not, and shall not be deemed to, waive, alter, or otherwise change the Parties', or any other person's or entity's, obligations under any operative confidentiality or protective order entered by any court in the Derivatives Litigation or the Flip Clause Litigation, or relieve any Party, or any other person or entity, of any obligation to respond to discovery requests related to claims by or against third parties.

4.    <u>Dismissal of the Derivatives Litigation</u>. Not later than two business days following the Effective Date, the Parties will stipulate to the dismissal with prejudice of the Derivatives Litigation with each party to bear its own fees and costs.

5.    <u>Bankruptcy Court Approval</u>.

   (a)    The obligations of LBSF pursuant to this Settlement Agreement with respect to Proof of Claim number 22843 and of LBHI with respect to Proof of Claim number 22813 are subject to Bankruptcy Court approval, *except* that any obligations of LBSF and LBHI under this Section 5(a) are effective upon the Execution Date. Effective upon the Execution Date, LBHI shall promptly file a motion with the Bankruptcy Court seeking entry of the Approval Order and shall reasonably endeavor to obtain the entry and finality of the Approval Order. LBHI shall consult in good faith with Credit Suisse as to such motion and any related pleadings and any changes to the Approval Order. Credit Suisse shall cooperate in good faith with LBHI's efforts to obtain the entry and finality of the Approval Order; and all of the CS Entities, and the Lehman Entities, their counsel and other agents and representatives, shall in good faith and to the full extent reasonably possible (i) cooperate with each other's reasonable requests regarding such motions and related pleadings, (ii) refrain from making disparaging statements about the other in such motion, pleadings, and any other written or oral statements (including without limitation public statements and statements to the media) relating to this Settlement Agreement, the Derivatives Litigation, or the Settled Claims (other than in connection with any action, suit, or proceeding to enforce the terms hereof), and (iii) refrain from publicly characterizing the settlement as more favorable to the Lehman Entities or to the CS Entities, or as being other than fair, reasonable, equitable, or the like.

   (b)    In the event that the Bankruptcy Court declines to enter the Approval Order (or a court enters an order precluding the entry of an order that would qualify as the Approval Order or overturning any Approval Order entered by the Bankruptcy Court, and such order has become final and no longer subject to appeal or certiorari

5

proceeding), this Settlement Agreement shall terminate and be of no further force or effect. If this Settlement Agreement terminates in accordance with the preceding sentence, (i) each provision contained in this Settlement Agreement shall be of no further force and effect from and after such date of termination and (without limiting the generality of the foregoing) the mutual releases provided for in Section 3 shall be void *ab initio*; *provided*, *however*, that Section 8 shall survive any termination of this Settlement Agreement, and (ii) the Parties shall make reasonable efforts and cooperate in good faith to revise, amend, or otherwise obtain relief from any existing court order governing the scheduling in the Derivatives Litigation to facilitate the resumption of the Derivatives Litigation on a reasonable schedule.

(c) All litigation activity of whatever nature in connection with the Derivatives Litigation (except steps necessary to effectuate the Settlement Agreement) shall be suspended unless and until this Settlement Agreement is terminated in accordance with Section 5(b).

6. <u>Further Assurances</u>. Each Party shall execute and deliver at its own expense such writings as may reasonably be requested by another Party to effectuate the terms of this Settlement Agreement.

7. <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire contract among the Parties relative to the subject matter hereof. This Settlement Agreement supersedes any previous agreements or understandings among the Parties, express or implied, with respect to the subject matter hereof, but all prior settlement agreements among the Parties and their affiliates shall remain in full force and effect. No amendment, supplement, or modification of this Settlement Agreement, or waiver of rights hereunder, shall be binding unless executed in writing by the Party affected thereby.

8. <u>No Admissions</u>. Nothing in this Settlement Agreement or any negotiations or proceedings in connection herewith shall be claimed to be evidence of an admission by any Party or its affiliates of any liability, violation of law, or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any Party. Neither this Settlement Agreement, nor any negotiations or proceedings in connection herewith, may be used in any proceeding against any Party or its affiliates for any purpose except with respect to the validity, effectuation, and enforcement of this Settlement Agreement. Nothing contained herein shall be deemed an admission by any Party of any assertions made herein by any other Party.

9. <u>Counterparts; Signatures</u>. This Settlement Agreement may be executed in one or more counterparts, all of which taken together shall constitute one instrument. This Settlement Agreement may be executed and delivered manually, by facsimile transmission, or by email transmission.

10. <u>Governing Law; Jurisdiction</u>. THIS SETTLEMENT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW) WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF THAT WOULD REQUIRE THE APPLICATION OF THE

6

LAW OF ANOTHER JURISDICTION. Each Party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Bankruptcy Court, and any appellate court from any such court, in any proceeding arising out of or relating to this Settlement Agreement, or for recognition or enforcement of any judgment resulting from any such proceeding, and each Party hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, action, or proceeding may be heard and determined in the Bankruptcy Court. Each Party hereby knowingly, voluntarily, intentionally, irrevocably, and unconditionally waives, to the full extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any proceeding arising out of or relating to the Settlement Agreement in the Bankruptcy Court specified above, (ii) the defense of an inconvenient forum to the maintenance of such proceeding in the Bankruptcy Court, (iii) the right to object, with respect to such proceeding, that the Bankruptcy Court does not have jurisdiction over such Party and (iv) any right to a trial by jury with respect to any such proceeding.

11.     Binding Effect. This Settlement Agreement shall bind, and be for the benefit of, the Parties hereto and their respective successors and assigns as of the Execution Date, subject only to necessary Bankruptcy Court approval of the Settlement Agreement by Final Order (as defined in the Plan). Nothing in this Settlement Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto and their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Settlement Agreement, *except* that all persons and entities released pursuant to Section 3 of this Settlement Agreement are intended beneficiaries of such release (provided that this Settlement Agreement in any event may be amended, supplemented, or modified in the manner set forth in Section 7).

12.     Construction; No Reliance. This Settlement Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Settlement Agreement or any of its provisions against the Party responsible for drafting this Settlement Agreement will not apply in any construction or interpretation of this Settlement Agreement. All Section references in this Settlement Agreement refer to Sections of this Settlement Agreement, unless otherwise specified. The Parties acknowledge and agree that they have been represented by their own counsel and advisors in connection with this Settlement Agreement, have conducted their own investigations of the relevant facts and circumstances, and are not relying on any representations or warranties of any other Party except for the representations and warranties expressly set forth herein.

13.     Full Power and Authority. Each of the Parties hereby represents and warrants that it has full power and authority to execute, deliver, and perform its obligations under this Settlement Agreement. For the avoidance of doubt, the CS Entities represent and warrant that they have full power and authority to compromise, settle, adjust, and finally resolve the Settled Claims.

IN WITNESS WHEREOF the Parties have executed this Settlement Agreement as of the date first set forth above.

[Remainder of page intentionally left blank]

*Signature Page to June 12, 2018 Settlement Agreement*

CREDIT SUISSE AG

By _[signatures]_

CREDIT SUISSE INTERNATIONAL

By_____

CREDIT SUISSE ENERGY LLC

By_____

CREDIT SUISSE SECURITIES (EUROPE) LTD.

By_____

CREDIT SUISSE LOAN FUNDING LLC

By_____

CREDIT SUISSE SECURITIES (USA) LLC

By_____

*Signature Page to June 12, 2018 Settlement Agreement*

CREDIT SUISSE AG

By_____


CREDIT SUISSE INTERNATIONAL

By _____/s/ Shui Wong_____   _____/s/ Bik Kwan Chung_____
         Shui Wong                    Bik Kwan Chung
     Authorized Signatory           Authorized Signatory


CREDIT SUISSE ENERGY LLC

By_____


CREDIT SUISSE SECURITIES (EUROPE) LTD.

By _____/s/ Shui Wong_____   _____/s/ Bik Kwan Chung_____
         ~~Shui~~ Wong                 Bik Kwan Chung
     Authorized Signatory           Authorized Signatory


CREDIT SUISSE LOAN FUNDING LLC

By_____


CREDIT SUISSE SECURITIES (USA) LLC

By_____

*Signature Page to June 12, 2018 Settlement Agreement*

CREDIT SUISSE AG

By_____

CREDIT SUISSE INTERNATIONAL

By_____

CREDIT SUISSE ENERGY LLC

By _*[signature]*_____

CREDIT SUISSE SECURITIES (EUROPE) LTD.

By_____

CREDIT SUISSE LOAN FUNDING LLC

By _*[signature]*_____

CREDIT SUISSE SECURITIES (USA) LLC

By _*[signature]*_____

*Signature Page to June 12, 2018 Settlement Agreement*

LEHMAN BROTHERS HOLDINGS INC.

By _/s/ Christopher O'Meara_
Christopher O'Meara

LEHMAN BROTHERS SPECIAL FINANCING INC.

By _/s/ Christopher O'Meara_
Christopher O'Meara

LEHMAN BROTHERS COMMERCIAL CORP.

By _/s/ Christopher O'Meara_
Christopher O'Meara

LEHMAN BROTHERS COMMODITY SERVICES INC.

By _/s/ Christopher O'Meara_
Christopher O'Meara

9

Schedule A: Settled Claims

| Creditor | Debtor | Proof of Claim # | Alleged Amount | Allowed Amount** |
|---|---|---|---|---|
| Credit Suisse* | LBSF | 22843 | $932,898,750.38 | $251,891,406 |
| Credit Suisse* | LBHI | 22813 | $932,898,750.38 | $251,891,406 |
| Credit Suisse* | LBSF | 22854 | $138,712,743.90 | $72,473,674 |
| Credit Suisse* | LBHI | 22852 | $138,712,743.90 | $72,473,674 |
| CSLF* | LBCS | 22828 | $71,622,924.27 | $34,940,000 |
| CSLF* | LBHI | 22815 | $71,622,924.27 | $34,940,000 |
| Credit Suisse | LBCC | 22853 | $21,822,749.28 | $16,619,263 |
| CSSE | LBSF | 22856 | $9,657,351.37 | $4,354,920 |
| CSSE | LBHI | 22848 | $9,657,351.37 | $4,354,920 |
| CSI | LBCC | 22842 | $6,720,736.76 | $4,720,737 |
| CSI | LBCS | 22821 | $219,534.00 | $0 |
| CSI | LBHI | 22820 | $219,534.00 | $0 |

\*      Transferee of claim pursuant to notice given pursuant to Bankruptcy Rule 3001(e)(2).

\*\*     Each Allowed Amount against LBSF shall be allowed as nonpriority general unsecured claims in LBSF Class 4A of the Plan (the "LBSF Claims").  Each Allowed Amount against LBCS shall be allowed as nonpriority general unsecured claims in LBCS Class 4 of the Plan (the "LBCS Claims").  Each Allowed Amount against LBCC shall be allowed as nonpriority general unsecured claims in LBCC Class 4 of the Plan (the "LBCC Claims" and together with the LBSF Claims and the LCBS Claims the "Non-Guarantee Claims").  Each Allowed Amount against LBHI shall be allowed as nonpriority general unsecured claims in LBHI Class 9A of the Plan.

10

## EXHIBIT A

[FORM OF APPROVAL ORDER]

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------x
                                              :
In re                                         :    Chapter 11 Case No.
                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.,        :    08-13555 (SCC)
                                              :
Debtors.                                      :    (Jointly Administered)
                                              :
------------------------------------------------------------------x
```

### ORDER PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a) OF THE BANKRUPTCY CODE APPROVING SETTLEMENT AGREEMENT AMONG CREDIT SUISSE AG AND CERTAIN OF ITS AFFILIATES, AND LEHMAN BROTHERS HOLDINGS INC. AND CERTAIN OF ITS AFFILIATES

Upon the motion (the "Motion")[1] of Lehman Brothers Holdings Inc. ("LBHI" and the "Plan Administrator"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), on behalf of itself and Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corp. ("LBCC"), and Lehman Brothers Commodity Services Inc. ("LBCS" and, together with LBHI, LBSF, and LBCC, the "Lehman Entities"), seeking the entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") for approval of the settlement agreement dated as of June 12, 2018, by and among the Lehman Entities, and Credit Suisse AG ("Credit Suisse") and the other CS Entities,[2] all as more fully described in the Motion; and the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] As used herein, the term "CS Entities" means Credit Suisse, Credit Suisse International ("CSI"), Credit Suisse Energy LLC ("CSE"), Credit Suisse Securities (Europe) Ltd.

Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for the Chapter 11 Cases [ECF No. 9635] and the order governing settlement of claims [ECF No. 29505]; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having reviewed the Motion and having considered the entire record before the Court, including the Declaration of Steven Mullaney in Support of the Motion; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having determined that the Settlement is the product of good faith and arm's length negotiations, that the Settlement is fair and reasonable, that the Allowed Amount for each Settled Claim is fair and reasonable, and that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Settlement Agreement is approved and incorporated herein by reference as if set forth completely herein; and it is further

---

("CSSE"), Credit Suisse Loan Funding LLC ("CSLF"), and Credit Suisse Securities (USA) LLC ("CSSU").

ORDERED that the failure to specifically include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision; and it is further

ORDERED that the Settled Claims shall be, and hereby are, reduced and allowed as set forth in Schedule A to the Settlement Agreement; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that any objections to the Motion that have not heretofore been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rules 6004 and 9019 of the Bankruptcy Rules, the Settlement is approved and the Lehman Entities are duly authorized to consummate the transactions contemplated under the Settlement Agreement, and to execute and deliver such documents and instruments, and take such other actions as may be reasonably necessary, to consummate the Settlement Agreement, it being understood that any actions described in this paragraph taken by the Lehman Entities may be taken without the necessity of any further Court proceedings or approval, or any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; and it is further

ORDERED that this Order shall be effective immediately upon its entry and the requirements of Bankruptcy Rule 6004(h) are waived; and it is further

ORDERED that the Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      June _____, 2018

                                                       _____
                                                      THE HONORABLE SHELLEY C. CHAPMAN
                                                      UNITED STATES BANKRUPTCY JUDGE