Hearing Date: June 27, 2018 at 2:00 p.m. (EDT)
Objection Deadline: June 20, 2018, at 4:00 p.m. (EDT)
Relates to CM/ECF Docket No. 58254

**BINDER & SCHWARTZ LLP**
Eric B. Fisher
Neil S. Binder
M. Tomas Murphy
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
Facsimile: (212) 510-7299

*Attorneys for CarVal Entities and
Empyrean Capital Partners, LP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC)<br><br>(Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS COMMODITY SERVICES INC., and LEHMAN BROTHERS COMMERCIAL CORP.<br><br>Plaintiffs,<br><br>-against-<br><br>CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, CREDIT SUISSE ENERGY LLC, CREDIT SUISSE SECURITIES (EUROPE) LTD. and CREDIT SUISSE LOAN FUNDING LLC.<br><br>Defendants. | Adversary Proceeding<br><br>Adv. Proc. No. 13-01676 (SCC) |

**OBJECTION OF CARVAL ENTITIES AND EMPYREAN CAPITAL PARTNERS, LP
TO LEHMAN BROTHERS HOLDINGS INC.'S MOTION PURSUANT TO RULE 9019
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND SECTION 105(a)
OF THE BANKRUPTCY CODE FOR APPROVAL OF SETTLEMENT AGREEMENT
AMONG CREDIT SUISSE AG, AND CERTAIN OF ITS AFFILIATES, AND LEHMAN
BROTHERS HOLDINGS INC., AND CERTAIN OF ITS AFFILIATES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ................................................................................................................................ 5

I.   THE RULE 9019 MOTION FAILS TO PROVIDE FACTUAL SUPPORT
     NECESSARY FOR AN INDEPENDENT, REASONED ANALYSIS OF THE CREDIT
     SUISSE SETTLEMENT ..................................................................................................... 5

II.  LEHMAN HAS REPRESENTED TO THIS COURT THAT IT LACKED THE
     INFORMATION NECESSARY TO EVALUATE CREDIT SUISSE'S DEMANDS ..... 9

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*In re A & C Props.*,
   784 F.2d 1377 (9th Cir. 1986) ................................................................................................ 5

*In re Ambac Fin. Group, Inc.*,
   457 B.R. 299 (Bankr. S.D.N.Y. 2011) ........................................................................... 4, 5, 6, 8

*In re Dewey & LeBoeuf LLP*,
   478 B.R. 627 (Bankr. S.D.N.Y. 2012) ........................................................................................ 4

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007) ........................................................................................................ 4

*In re Lion Capital Group*,
   49 B.R. 163 (Bankr. S.D.N.Y. 1985) ..................................................................................... 4, 6

*In re MF Global Inc.*,
   466 B.R. 244 (Bankr. S.D.N.Y. 2012) ........................................................................................ 4

*In re NII Holdings, Inc.*,
   536 B.R. 61 (Bankr. S.D.N.Y. 2015) ..................................................................................... 4, 7

*In re Residential Capital, LLC*,
   497 B.R. 720 (Bankr. S.D.N.Y. 2013) ........................................................................................ 9

*In re Sabine Oil & Gas Corp.*,
   555 B.R. 180 (Bankr. S.D.N.Y. 2016) ................................................................................ 4, 5, 7

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) ............................................................................................................ 5, 6, 7

**RULES**

Fed. R. Bankr. P. 9019 .................................................................................................... 3, 4, 5

1.      The CarVal Entities ("CarVal")[1] and Empyrean Capital Partners, LP ("Empyrean") hereby object to the Motion Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure And Section 105(a) Of The Bankruptcy Code For Approval Of Settlement Agreement Among Credit Suisse AG, And Certain Of Its Affiliates, And Lehman Brothers Holdings Inc., And Certain Of Its Affiliates (the "Rule 9019 Motion") on the ground that the record does not contain sufficient facts to permit this Court to form an independent, reasoned opinion as to the reasonableness of the settlement.

## PRELIMINARY STATEMENT

2.      On June 12, 2018, Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as plan administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors*, submitted for this Court's approval a proposed settlement agreement (the "Credit Suisse Settlement") executed between LBHI and various Lehman affiliates (together, "Lehman") on the one hand, and Credit Suisse AG and various Credit Suisse affiliates (together, "Credit Suisse") on the other. The Credit Suisse Settlement provides for the global resolution of disputes between Lehman and Credit Suisse, including resolution of a multi-million-dollar adversary action concerning the value of certain claims held by Credit Suisse (the "Credit Suisse Claims") which is currently pending before this Court under

---

[1] The CarVal Entities are CVI AA Lux Master S.à.r.l.; CVI AA Lux Securities S.à.r.l.; CVI AV Lux Master S.à.r.l.; CVI AV Lux Securities S.à.r.l.; CVF Lux Master S.à.r.l.; CVF Lux Securities Trading S.à.r.l.; CVF Lux Finco, LLC; CVF II Lux Finco, LLC; CVI CVF II Lux Master S.à.r.l.; CVI CVF II Lux Securities Trading S.à.r.l.; CVI CVF III Lux Master S.à.r.l.; CVI CVF III Lux Securities S.à.r.l.; CVIC Lux Master S.à.r.l.; CVIC Lux Securities Trading S.à.r.l.; CVIC II Lux Master S.à.r.l.; CVIC II Lux Securities Trading S.à.r.l.; CarVal GCF Lux Master S.à.r.l. ;CarVal GCF Lux Securities S.à.r.l.; CVI GVF (Lux) Master S.à.r.l.; CVI GVF Lux 12 S.à.r.l.; CVI HH Investments LP; CVI CHVF Lux Master S.à.r.l.; and CVI CHVF Lux Securities S.à.r.l.

the caption *Lehman Brothers Holdings Inc., et al. v. Credit Suisse, et al.*, Adv. No. 13-01676 (the "Derivatives Action").

3. CarVal and Empyrean each have a significant stake in the outcome of the Derivatives Action, collectively holding more than $8 billion in claims against Lehman Brothers Special Financing Inc. ("LBSF"), constituting approximately half of all non-affiliate creditor claims. An initial review of the limited information available, using the recent Citibank settlement as a benchmark, suggests that the proposed settlement amount here is a significant departure, prompting concern that this settlement is being driven more by a desire to wrap up the big bank claims this year than by a reasonable estimation of the value of this last claim.

4. These concerns are compounded by the fact that the Credit Suisse Settlement is essentially a black box. The Rule 9019 Motion sets out the settlement amount but is silent as to how the parties arrived at the figure. There is no analysis of the value of the claims, no assessment of the litigation risk or of alternative settlement outcomes, and no substantive discussion of the merits of the settlement beyond boilerplate statements regarding the inherent expense and uncertainty of litigation. We sent a letter to Lehman requesting clarification of the proposed settlement prior to the filing of the Rule 9019 Motion but have received no substantive response. Accordingly, contemporaneous with this objection, we will be serving targeted discovery requests seeking information regarding how the Credit Suisse Claims were valued by Lehman and Credit Suisse, and how this proposed settlement compares to certain other big bank derivative settlements entered into by Lehman. We are prepared to proceed expeditiously upon receipt of the requested information.

5. The information to be gathered from the public record of the Derivatives Action only deepens the mystery, for though the litigation has been ongoing for several years, Lehman

2

stated as recently as March of this year that, as a result of what Lehman characterized as Credit Suisse's persistent "pattern of discovery misconduct," Lehman remained "in the dark" as to how Credit Suisse had arrived at its valuation of the Credit Suisse Claims and had "no idea" how Credit Suisse intended to support its demands. Less than three months later, agreement on the Credit Suisse Settlement was reached. There is nothing in the public record to explain this dramatic turnaround, and the Rule 9019 Motion sheds no light. Given Lehman's own representations to this Court, *as recently as March of this year*, that it lacked the information necessary to even begin to understand the basis of Credit Suisse's valuations, something more than Lehman's say-so should be required now in order to satisfactorily establish the reasonableness of settlement terms so dramatically out of keeping with Lehman's prior pleadings and filings. Indeed, it is difficult to conceive how this Court could come to anything like an informed and independent assessment of the merits of the agreement on the record as it stands.

6.  As this bankruptcy approaches its tenth year, we recognize that there is a strong desire among all concerned to bring the most significant claims to resolution. However, we respectfully submit that Lehman has not satisfied its obligation to the Court in this instance and that more information—much more—is required before this Court can entertain approval of the Credit Suisse Settlement. Under these circumstances, the Rule 9019 Motion should be denied. In the alternative, the hearing scheduled for June 27, 2018 should be adjourned in order to enable limited discovery concerning the reasonableness of the Credit Suisse Settlement and to permit additional submissions as to whether Lehman can satisfy the Rule 9019 standard for settlement approval.

**LEGAL STANDARD**

7.  On a motion pursuant to Bankruptcy Rule 9019, a court must determine that the proposed settlement is "fair, equitable, and in the best interests of the estate before it may

3

approve it." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). The burden is on the proponent to "persuade the court that the settlement is in the best interests of the estate." *In re MF Global Inc.*, 466 B.R. 244, 248 (Bankr. S.D.N.Y. 2012); *see also In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 257 (Bankr. S.D.N.Y. 2016). While the court is "not required to go so far as to conduct a trial on the terms to approve a settlement," *MF Global*, 466 B.R. at 247, the court has a "duty to evaluate each component" of the settlement agreement as well as to "consider the reasonableness of the settlement agreement as a whole." *Sabine*, 555 B.R. at 258, 279; *see also In re NII Holdings, Inc.*, 536 B.R. 61, 105 (Bankr. S.D.N.Y. 2015) (Court "mandated by precedent" to "undertake its own analysis of each component" of proposed settlement). Accordingly, Rule 9019 requires that "sufficient evidence . . . be presented to permit appropriate analysis." *In re Lion Capital Group*, 49 B.R. 163, 190 (Bankr. S.D.N.Y. 1985).

8.  In the Second Circuit, the analysis is guided by the seven "interrelated factors" set forth by the Court of Appeals in its seminal decision in *In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007):

> (1) The balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation . . . including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6), the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Iridium*, 478 F.3d at 462 (quotation marks and citations omitted); *see also In re Ambac Fin. Group, Inc.*, 457 B.R. 299, 303 (Bankr. S.D.N.Y. 2011). In analyzing the *Iridium* factors, the court "must exercise its own independent judgment." *Dewey*, 478 B.R. at 641. In particular, the

4

Court "may not substitute the debtor's judgment for its own," but must instead "undertake an independent, reasoned analysis of the claims at issue." *Sabine*, 555 B.R. at 258.

9. As this Court has observed, "[p]erhaps the best formulation" of the approach to be taken is contained in the United States Supreme Court's decision in *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *See Sabine*, 555 B.R. at 257; *see also NII Holdings*, 536 B.R. at 99. There, the Supreme Court stated:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*TMT Trailer Ferry*, 390 U.S. at 424-25. More succinctly put, in order to "make an informed and independent judgment" regarding the reasonableness of a proposed settlement, what a court needs are "facts, not allegations." *Id*. at 437.

## ARGUMENT

### I. THE RULE 9019 MOTION FAILS TO PROVIDE FACTUAL SUPPORT NECESSARY FOR AN INDEPENDENT, REASONED ANALYSIS OF THE CREDIT SUISSE SETTLEMENT

10. On a motion seeking approval of a settlement under Bankruptcy Rule 9019, it is incumbent upon the court to "familiarize itself with the facts relevant and necessary" in order to make an informed evaluation of the reasonableness of the proposed agreement. *Ambac*, 457 B.R. at 304; *see also In re A & C Props.*, 784 F.2d 1377, 1383 (9th Cir. 1986) ("An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable,

5

constitutes an abuse of discretion."). It falls to the settlement proponent to provide those facts and, among other things, make a persuasive showing regarding the "merits of the claims proposed to be settled and the likelihood of success on those claims." *See Ambac*, 457 B.R. at 304; *see also In re Lion Capital Group*, 49 B.R. at 176 ("The settling parties must set forth the facts in sufficient detail that a reviewing court could distinguish it from mere boilerplate approval of the trustee's suggestions." (citations and quotation marks omitted)).

11. The Rule 9019 Motion is bereft of the factual support necessary to permit this Court to make an informed, independent assessment of the reasonableness of the terms of the Credit Suisse Settlement. Lehman's advocacy for the Credit Suisse Settlement never ventures beyond the obvious observation that litigation of the Credit Suisse Claims would be "inherently uncertain," "expensive," and "time-consuming." Rule 9019 Motion ¶¶ 31, 36-37. But the parties to the Derivatives Action have already committed to an expedited litigation schedule under which discovery should be substantially complete and trial is to commence in just over four months, suggesting that the further costs and duration of litigation will be limited and can be reasonably estimated. *See* Seventh Amended Scheduling Order & Discovery Plan, Adversary Proceeding No. 13-01676-scc ("Adv. Pro.") Dkt. No. 101 (March 26, 2018). In any event, "litigation and delay are always the alternative to settlement." *TMT Trailer Ferry*, 390 U.S. at 434. The question is "whether that alternative is worth pursuing," and the answer to that question "necessarily depends upon a reasoned judgment as to the probable outcome of the litigation." *Id.*

12. Lehman's Rule 9019 Motion provides no information that would support such a reasoned judgment or allow this Court to "form an educated estimate of the complexity, expense and likely duration of [the] litigation." *Id.* at 424; *see also In re Lion Capital Group*, 49 B.R. at

6

190 ("The best interests of creditors . . . requires more than a trustee's *ipse dixit* or request for reliance on his judgment."). There is no analysis of the reasonable range of value of the claims, no examination of the likely costs or risks of litigation, no consideration of alternative settlement scenarios, and ultimately no meaningful discussion of any of the considerations that presumably informed the settlement terms. *TMT Trailer Ferry*, 390 U.S. at 440-41 (finding settlement approval improper where record is "devoid of facts which would have permitted a reasoned judgment that the claims . . . should be settled in this fashion"); *see also Sabine*, 555 B.R. at 297 (noting this Court's "extensive review of the parties' differing valuation methodologies and their estimates" of claims at issue); *NII Holdings*, 536 B.R. at 101-05 (summarizing "extensive analysis" of merits of settled claims and potential settlement scenarios undertaken by debtors and unsecured creditors' committee).

13. On June 6, 2018, on behalf of CarVal and Empyrean, we sent a letter to Lehman's counsel requesting information regarding the valuations performed by Lehman and Credit Suisse, respectively, in light of press reports that a $385 million settlement was imminent. Lehman has provided no substantive response. Accordingly, contemporaneous with this objection, we will be filing discovery requests.

14. There are, to be sure, hints in the Rule 9019 Motion that information of relevance may exist. Lehman notes that discovery yielded "over 28 million pages of documents," Rule 9019 Motion ¶ 14, but none are cited in support of the settlement. Similarly, Lehman adverts to what must amount to hundreds of hours of deposition testimony, *id*., but provides neither the identities of the deponents nor the substance of their testimony. Lehman asserts that "seven expert witnesses provided expert reports," *id*., but its Rule 9019 Motion makes no further reference to these experts and offers no summary of their findings. *See Sabine*, 555 B.R. at 202,

7

260 (Debtors' expert "prepared an extensive analysis of the total amounts that could be asserted for each claim and the risk-adjusted amounts of potential recoveries on each claim based on the likelihood of success."). If the "extensive fact and expert discovery" undertaken by the parties to the Credit Suisse Settlement, Rule 9019 Motion ¶ 14, yielded substantive evidence that underlies the settlement terms or the settlement amount, Lehman does not include it in its Rule 9019 Motion.

15. Lehman has consistently held the position that the Credit Suisse Claims are wildly overstated. Based on the information available as of December 2017, Lehman was confident that Credit Suisse had employed "impermissible, inconsistent, and self-serving" valuation practices to inflate the value of the Credit Suisse Claims. Estimation Motion ¶ 5. According to the amended complaint and objection filed by Lehman last year, the total value of Credit Suisse's claim was only $75 million, and with respect to claims of two of the Credit Suisse entities, Lehman had a receivable with an aggregate value of approximately $150 million. *See* Amended Adversary Complaint & Objection To Claims ("Am. Compl.") ¶ 56, Adv. Pro. Dkt. No. 43 (March 17, 2017). The Rule 9019 Motion does not explain what became of the alleged $150 million in Lehman receivables and does not take account of these millions of dollars allegedly owed to Lehman.

16. In short, the Rule 9019 Motion simply does not provide this Court with the factual foundation necessary for an independent, reasoned review of the Credit Suisse Settlement. For this reason, the Rule 9019 Motion should be denied in its present form or, in the alternative, the hearing on the Rule 9019 Motion should be adjourned in order to enable limited discovery into the factual basis for LBHI's conclusion that the Credit Suisse Settlement is in the best interests of Lehman and its creditors. *See Ambac*, 457 B.R. at 302 (noting scheduling of hearing to "allow

the parties a month's time to conduct limited discovery and file additional submissions); *see also, e.g.*, *In re Residential Capital, LLC*, 497 B.R. 720, 747 (Bankr. S.D.N.Y. 2013) (noting adjournment of hearing on Rule 9019 motion to allow objectors to seek discovery).

## II. LEHMAN HAS REPRESENTED TO THIS COURT THAT IT LACKED THE INFORMATION NECESSARY TO EVALUATE CREDIT SUISSE'S DEMANDS

17. Throughout the Derivatives Action, Lehman has made clear that a full accounting of Credit Suisse's valuation is an essential prerequisite to any assessment of the Credit Suisse Claims. Just six months ago, Lehman advised this Court that its objection to the Credit Suisse Claims could not be resolved unless and until it had received the information underlying Credit Suisse's valuations in an "organized and comprehensive fashion" or had otherwise "reconstruct[ed] it via discovery, by sifting through more than 4 million documents" and "conducting dozens of depositions." *See* [Redacted] Amended Motion Of Lehman Plaintiffs To Estimate Proof of Claim Nos. 22813, 22843, 22852, And 22854 For Reserve Purposes ¶ 20, Adv. Pro. Dkt. No. 78 (Dec. 11, 2017) ("Estimation Motion"). Absent such information, Lehman maintained, it would be unable to assess Credit Suisse's claims on any basis more reliable than "rough estimates." *Id*.

18. There is nothing in the public record to indicate that Lehman ever received the "organized and comprehensive" information sought from Credit Suisse, and there is much to suggest otherwise. In its Rule 9019 Motion, Lehman hails the proposed settlement with Credit Suisse as the product of "extensive fact and expert discovery over the course of more than four years," ¶ 14, but what the docket reveals is that as late as March of this year, Lehman remained "in the dark" about Credit Suisse's valuation process and, by its own admission, had no sound basis for assessing the reasonableness of Credit Suisse's demands.

19. In December 2017, Lehman reported to this Court that Credit Suisse had not yet provided necessary support for its valuation of the Credit Suisse Claims and was in fact resisting such discovery. Estimation Motion ¶ 20. According to Lehman, Credit Suisse was refusing to "identify information on the calculation and evidentiary basis (if any) for its Claim valuations" and was further "refusing to provide essential Rule 30(b)(6) testimony on the evidentiary basis for its Claim." *See* Letter from Diane Cafferata, Adv. Pro. Dkt. No. 81 (Dec. 21, 2017), at 1, 2. In a subsequent letter to this Court, Lehman protested what it described as Credit Suisse's ongoing refusal to provide critical testimony and a complete record of relevant trade data. *See* Letter from Diane Cafferata, Adv. Pro. Dkt. No. 84 (January 8, 2018), at 1-3.

20. In the succeeding months, Lehman continued to accuse Credit Suisse of a "pattern of discovery misconduct" and "calculated noncompliance." *See* Letter from Diane Cafferata, Adv. Pro. Dkt. No. 91 (March 5, 2018), at 1, 4. Lehman advised this Court that as of March 5, 2018, Credit Suisse still had not provided even the most "basic and essential" evidence, including market information that its traders "actually and contemporaneously relied upon in determine the close-out amounts that comprise its claim." *Id*. at 1-2. Lehman added that "virtually all" of Credit Suisse's 30(b)(6) witnesses had been "unprepared to provide testimony on the designated topics" and that Credit Suisse had thus failed to provide "testimony on the close-outs of almost all of the most significant products at issue," "depriv[ing] Lehman of knowledgeable corporate testimony." *Id*. at 1, 4-5. As a result, Lehman remained "in the dark on what actual support Credit Suisse has for its claim." *Id*. at 1. Lehman concluded that it had "no roadmap from which it can reasonably determine the basis for Credit Suisse's close-out amounts" and "no idea what Credit Suisse intends to rely upon to support its commodities claim." *Id*. at 4.

21.     That was in March 2018.  Just over two months later, the deal was struck.  This watershed reversal goes unremarked in the Rule 9019 Motion, and nothing in the public record explains it.  Indeed, as this Court well knows, the discovery disputes between the parties to the Credit Suisse Settlement continued beyond March 2018.  Just last month—*less than two weeks before* Lehman reached its agreement in principle with Credit Suisse—Lehman was asking this Court to compel the deposition testimony of a "relevant percipient witness" who, according to Lehman, was "evading service and refusing to provide testimony" in "knowing disobedience of a subpoena."  Letter from Diane Cafferata, Adv. Pro. Dkt. No. 113 (May 14, 2018), at 1, 3.  The record does not disclose whether Lehman ever obtained the deposition testimony of this relevant witness or any of the other evidence that Lehman claimed was indispensable to an informed analysis of Credit Suisse's contested valuation of the Credit Suisse Claims.

22.     For these reasons, too, the Rule 9019 Motion should be denied.

## CONCLUSION

23.     For the reasons set forth above, CarVal and Empyrean respectfully request that the Court deny the Rule 9019 Motion or, in the alternative, adjourn the June 27, 2018 Hearing in order to permit limited discovery, and grant such other and further relief as may be just and proper.

Dated: June 20, 2018
      New York, New York

Respectfully submitted,

**BINDER & SCHWARTZ LLP**

/s/ Eric B. Fisher
Eric B. Fisher
Neil S. Binder
M. Tomas Murphy
366 Madison Avenue, 6th Floor
New York, New York 10017
Tel: (212) 510-7008
Facsimile: (212) 510-7299
Email: efisher@binderschwartz.com
Email: nbinder@binderschwartz.com
Email: tmurphy@binderschwartz.com

*Attorneys for the CarVal Entities and Empyrean Capital Partners, LP*

12