**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : 08-13555 (SCC) |
| | : |
| Debtors. | : (Jointly Administered) |

------------------------------------------------------------------------x

## DECLARATION OF DIANE L. CAFFERATA

I, DIANE L. CAFFERATA, do hereby declare under penalty of perjury:

1. I am a partner at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and counsel for Plaintiffs in the adversary proceeding captioned *Lehman Brothers Holdings Inc., et al. v. Credit Suisse, et al., (In re Lehman Brothers Holdings Inc.)*, Adv. No. 13-01676 (SCC) (Bankr. S.D.N.Y.) (the "Derivatives Litigation"). I have also been involved in other derivatives-related litigations brought by the Chapter 11 Estates. If called to testify, I could testify to the truth of the matters set forth herein.

2. I respectfully submit this declaration in further support of the *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code for Approval of Settlement Agreement Among Credit Suisse AG, and Certain of Its Affiliates, and Lehman Brothers Holdings Inc., and Certain of Its Affiliates* (the "Motion").

3. Quinn Emanuel is a premier litigation firm with over 780 attorneys across nine countries and has represented the Lehman Entities in various litigations since 2009, when Quinn Emanuel was designated as lead counsel in connection with the claims and causes of action against JPMorgan and Citibank pursuant to a joint protocol between the Debtors and the Official

1

Committee of Unsecured Creditors.[1]  See Exhibit A to *Joint Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., and Lehman Brothers Holdings Inc. for Entry of an Order Authorizing Committee's Intervention in Proceeding for All Purposes, Lehman Brothers Holdings Inc., et al. v. JPMorgan Chase Bank, N.A. (In re Lehman Brothers Holdings, Inc.)*, Adv. Pro. No. 10-03266 (JMP) (Bankr. S.D.N.Y.) [Dkt. # 2].  Plaintiffs are represented in the Derivatives Litigation by a team of highly competent and skilled attorneys at Quinn Emanuel with decades of combined experience in a broad range of complex commercial litigation, including other derivatives-related litigation brought by the Lehman Entities.  Lead partners in the Derivatives Litigation include Andrew Rossman, who as lead trial counsel has recovered over $5 billion to date in settlements and judgments for other parties in high-profile disputes and has served as lead counsel for the Lehman Entities in multibillion dollar lawsuits against JPMorgan, Citibank and others, including the four-month trial against Citibank in 2017, and Daniel Cunningham, who previously served as counsel to the International Swaps and Derivatives Association ("ISDA") and, as a principal architect of the ISDA Master Agreements, is considered one of the most knowledgeable lawyers in the world regarding derivatives, among other partners with extensive complex commercial litigation experience.

4. As counsel to Plaintiffs in the Derivatives Litigation, I have first-hand knowledge and have been heavily involved in the extensive fact discovery that has taken place between Plaintiffs and the CS Defendants (together, the "Parties") throughout this matter.  The Plaintiffs undertook an enormous discovery campaign in this case over the course of more than four years.  The Derivatives Litigation complaint was filed on November 6, 2013, Adv. No. 13-

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Motion.

2

01676 (SCC) [Dkt. #1], and subsequently amended on March 17, 2017, Adv. No. 13-01676 (SCC) [Dkt. #43]. Plaintiffs served the CS Defendants with three rounds of Requests for the Production of Documents, comprising over 100 individual document requests, and 15 Interrogatories. Plaintiffs also served subpoenas on dozens of third parties. Attached hereto as **Exhibits A-D** are true and correct copies of Plaintiffs' Requests for the Production of Documents, dated February 25, 2014, March 20, 2015 and August 29, 2016, and Plaintiffs' First Set of Interrogatories dated February 25, 2014.

5. In total, the document production included over 28 million pages of documents and electronic files. The Parties took over 100 depositions, primarily taken by Plaintiffs. Throughout the case, Plaintiffs vigorously pressed the CS Defendants to comply with their discovery obligations. The Parties exchanged hundreds of pieces of correspondence and conducted dozens of meet and confers regarding discovery issues. Where they deemed it necessary and appropriate, Plaintiffs brought discovery disputes to the attention of the Court, including an omnibus motion to compel and even a request to file a motion for sanctions. *See Motion and Memorandum of Law in Support of Plaintiffs' Motion to Compel the Credit Suisse Defendants to Produce Documents by a Date Certain*, filed July 29, 2017, Adv. No. 13-01676 (SCC) [Dkt. #55]; March 5, 2018 letter, Adv. No. 13-01676 (SCC) [Dkt. #91].

6. On December 5, 2017, Plaintiffs filed the *Motion to Estimate Proof of Claim Nos. 22813, 22843, 22852, and 22854 for Reserve Purposes* (the "Estimation Motion"), subsequently amended on December 11, 2017, Adv. No. 13-01676 (SCC) [Dkt. #78]. After discussions with Credit Suisse, the Estimation Motion was resolved by the *Joint Stipulation and Order Regarding Motion of Lehman Plaintiffs to Estimate Proofs of Claim Nos. 22813, 22843, 22852 and 22854 for Reserve Purposes*, ordered January 16, 2018, Adv. No. 13-01676 (SCC)

[Dkt. #86], which reduced the amount of Reserves required to be held against the Settled Claims and accordingly Plaintiffs withdrew the motion.

7. After the Estimation Motion was filed, Plaintiffs became involved in a series of discovery disputes with the CS Defendants specifically related to the evidentiary support for the CS Claims.

8. On December 21, 2017, Plaintiffs wrote to the Court requesting a conference concerning the CS Defendants' failure to produce certain documents as required by the Court's October 19, 2017 *Order Granting in Part Plaintiffs' Motion to Compel the Credit Suisse Defendants to Produce Documents by a Date Certain*, Adv. No. 13-01676 (SCC) [Dkt. # 75] and the CS Defendants' failure to identify certain information on the calculation of and evidentiary basis for the CS Claim valuations. *See* December 21, 2017 letter, Adv. No. 13-01676 (SCC) [Dkt. #81].

9. On January 10, 2018, the Parties attended a conference with the Court where the CS Defendants were ordered to identify any support that traders actually relied upon in calculating the CS Claims (the "January 10 Order"). Attached hereto as **Exhibit E** is a true and correct copy of the transcript of the January 10, 2018 conference.

10. Over the following weeks, in response to the January 10 Order, the CS Defendants produced a series of spreadsheet compilations purportedly identifying such supporting documentation. After reviewing the spreadsheet compilations, Plaintiffs identified to the CS Defendants through correspondence certain deficiencies in the compilations.

11. On March 5, 2018, the Plaintiffs requested a conference with the Court concerning the CS Defendants' noncompliance with the January 10 Order and requested leave to

4

file a motion for sanctions against the CS Defendants.  *See* March 5, 2018 letter, Adv. No. 13-01676 (SCC) [Dkt. #91].

12. On March 20, 2018, the Parties again attended a conference with the Court (the "March 20 Conference") where the Court reiterated its prior order that the CS Defendants should have provided the materials that traders actually relied upon to close-out their Lehman-facing positions.  Attached hereto as **Exhibit F** is a true and correct copy of the March 20, 2018 transcript.

13. However, after the conference, the Court requested that the Parties again attempt to reach a negotiated resolution of the issues that would be raised by Plaintiffs' proposed motion for sanctions against the CS Defendants, and on April 3, 2018, the Parties met and conferred in an attempt to resolve the issues raised by Plaintiffs at the March 20 Conference.

14. As a result of the March 20 Conference and subsequent discussions between the Parties, over the following weeks, the CS Defendants made revisions to their claim support compilations.  The CS Defendants also began to send Plaintiffs pre-deposition correspondence that purported to identify the principal materials upcoming witnesses relied upon to close out their Lehman-facing positions.

15. On April 18, 2018, the CS Defendants produced revised spreadsheet compilations purportedly identifying documents relied upon by traders to determine close-out values for their Lehman-facing rates, structured products, commodities, and foreign exchange derivatives trades.  The spreadsheet compilations also purported to identify the trader or traders responsible for closing out the positions.  Attached hereto as **Exhibit G** is a true and correct copy of the April 18, 2018 letter.

5

16. On April 23, 2018, the CS Defendants produced revised spreadsheet compilations purportedly identifying documents relied upon by traders to determine close-out values for their Lehman-facing credit derivatives trades. The spreadsheet compilations also purported to identify the trader or traders responsible for closing out the positions. Attached hereto as **Exhibit H** is a true and correct copy of the April 23, 2018 letter.

17. Throughout this period, the Parties were also conducting depositions on a near-daily basis, often with multiple depositions scheduled on the same day, while simultaneously preparing for expert discovery. From January 2018 through May 2018, the Plaintiffs obtained fact and corporate deposition testimony from nearly 100 current and former Credit Suisse employees spanning all of the disputed derivatives product areas. Plaintiffs deposed almost 40 witnesses regarding credit derivatives; approximately 30 witnesses regarding rates derivatives; 11 witnesses regarding securitized products; 10 witnesses regarding commodities derivatives; and two witnesses regarding foreign exchange derivatives. The Plaintiffs were also preparing to take the depositions of approximately 20 additional Credit Suisse witnesses, including 15 witnesses scheduled for depositions in London pursuant to the Hague Convention.

18. On May 16, 2018, the Parties joined a teleconference with the Court regarding Plaintiffs' request to compel the deposition of a single former Credit Suisse employee, which was resolved in Plaintiffs' favor. *See* May 14, 2018 letter, Adv. No. 13-01676 (SCC) [Dkt. # 113]. At the end of this conference, the Parties represented to the Court that there were no outstanding discovery disputes between the Parties.

19. On May 21, 2018, the CS Defendants served seven expert reports totaling roughly 1,535 pages (the "CS Expert Reports"). The CS Expert Reports cited information from the revised spreadsheet compilations provided in connection with Exhibits G and H. At this time,

6

in response to the CS Expert Reports, Plaintiffs began coordinating with more than 10 experts to prepare rebuttal reports.

20. The CS Defendants also continued to produce documents throughout 2018 with the latest document production being made on May 21, 2018 and containing certain materials relied upon in the CS Expert Reports.

21. The Plaintiffs and CS Defendants have had intermittent settlement discussions over several years that have been unsuccessful until recently. On May 25, 2018, the Parties reached an agreement in principle to resolve the Derivatives Litigation.

22. Under the *Seventh Amended Scheduling Order and Discovery Plan* in the Derivatives Litigation, Adv. No. 13-01676 (SCC) [Dkt. #101], trial was scheduled to commence on October 29, 2018. Before trial, the Plaintiffs would have needed to complete 15 depositions of overseas witnesses plus additional fact witness depositions; prepare rebuttal reports in response to the CS Expert reports; complete at least 17 expert depositions; potentially litigate any dispositive motions; prepare pretrial exchanges including deposition designations, trial exhibits and witness lists; and exchange pretrial briefs by mid-September 2018. Based on our experience in the Citibank trial, if the trial were to proceed in the Derivatives Litigation, a reasonable estimate of the length of time needed to complete the trial would be approximately six to nine months.

23. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Los Angeles, California on this 29th day of June 2018.

*[signature]*
Diane L. Cafferata