# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X
                                                 :

In re:                                        :    Chapter 11
                                              :

LEHMAN BROTHERS HOLDINGS INC., *et al.,*  :    Case No. 08-13555 (SCC)
                                              :

                      Debtors.        :    (Jointly Administered)
                                              :

-----------------------------------------------------------X
                                                 :

LEHMAN BROTHERS HOLDINGS INC.,     :
LEHMAN BROTHERS SPECIAL FINANCING  :
INC., LEHMAN BROTHERS COMMODITY    :
SERVICES INC. and LEHMAN BROTHERS    :
COMMERCIAL CORP.,                  :
                                              :

                      Plaintiffs,     :
                                              :

                    -against-       :    Adv. Proc. No. 13-01676 (SCC)
                                              :

CREDIT SUISSE, CREDIT SUISSE       :
INTERNATIONAL, CREDIT SUISSE ENERGY  :
LLC and CREDIT SUISSE SECURITIES    :
(EUROPE) LTD.,                    :
                                              :

                    Defendants.     :
                                              :

-----------------------------------------------------------X

### PLAINTIFFS' FIRST REQUEST FOR THE
### PRODUCTION OF DOCUMENTS BY DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable to this

adversary proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7034, Plaintiffs, by

and through their undersigned counsel, hereby requests that Defendants Credit Suisse (n/k/a

Credit Suisse AG) ("CS"), Credit Suisse International ("CS International"), Credit Suisse Energy

LLC ("CS Energy"), and Credit Suisse Securities (Europe) Ltd. ("CS Europe") (collectively,

"Defendants" or "Credit Suisse") produce, or produce for inspection and copying, the documents

and things requested herein (the "<u>Request(s)</u>") at the offices of Jones Day, 222 East 41st Street,

New York, New York 10017, within 30 days after the date of service hereof.  These Requests are

to be read in accordance with the Instructions and Definitions that follow.  These Requests are

provided without prejudice to, or waiver of, Plaintiffs' rights to conduct further discovery at a

later date.

## <u>INSTRUCTIONS</u>

1.     Each Request below shall operate and be construed independently and unless

otherwise indicated, no Request limits the scope of any other Request.  Unless otherwise stated

with respect to a particular Request, the time period applicable to each Request is from June 1,

2008 to the present, and includes all documents and communications concerning that period,

even if obtained, prepared or published outside that period.

2.     Each Request shall be construed according to the broadest possible construction

of its terms, and in such a way as to bring within its scope any document or communication that

could otherwise be construed as outside of its scope.

3.     All electronic documents are to be produced in accordance with the parties'

Proposed Scheduling Order and Discovery Plan. (Adv. Proc. Doc. No. 4).

4.     Your response to any Request calling for the identification of persons shall

include any such person's (i) name, (ii) title, (iii) applicable role, (iv) current employment status

with Credit Suisse, and (v) last known contact information, to the extent such information is

within Your custody, possession, or control.

5.     You are required not only to furnish documents and communications in your

possession but also to furnish documents and communications that are in the possession of your

attorneys, accountants, agents or anyone else acting on your behalf or under your control, except

to the extent that such information is privileged.  If you are not in possession of documents or communications responsive to any Request, so state in writing in response to the Request.

6.    In the event you claim that any information called for in these Requests is immune from discovery on the basis of privilege or other basis, set forth the information required by Rule 7034-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").

7.    You must produce documents and communications as they are kept in the usual course of business or produce documents organized and labeled to correspond with the categories in these Requests.

8.    Documents and communications shall not be edited, cut, redacted or expunged and shall include all attachments, appendices, tables and exhibits and all covering memoranda, letters or documents.

9.    If any otherwise responsive document or communication has been, but no longer is, in your possession, custody or control, or has ceased to exist, state:

  a.    the date, type and number of pages of the document or communication;

  b.    the information contained therein or subject matter of the document or communication;

  c.    the author;

  d.    each address and addressee;

  e.    the identity of any attachments or appendices to the document or communication;

  f.    all persons having knowledge of the contents of the document or communication;

  g.    the present location and custodian of the document or communication, if it still exists;

  h.    the date and manner of any destruction or discard of the document or

communication; or the circumstances under which the document or communication ceased to exist; and

    i.    the person authorizing or carrying out such destruction or discard.

10.    All documents and communications responsive to this First Request for the Production of Documents shall be produced in such a fashion as to indicate clearly the person or file from which they were produced.

11.    For the purposes hereof, the reference to any entity shall include any and all past or present officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other Person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

## **<u>DEFINITIONS</u>**

Pursuant to Local Bankruptcy Rule 7026-1, the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "<u>Local Civil Rules</u>") are incorporated fully herein.  In addition, the following Definitions shall apply to each and every Request:

1.    "<u>Answer</u>" shall mean the Answer to Adversary Complaint and Objection to Claims, filed by You in this action on January 27, 2014 (Adv. Proc. Doc. No. 9), and any amendments thereto.

2.    "<u>Calculation Statement</u>" shall mean any of the spreadsheets attached to the Proofs of Claim as Exhibit C, any amendments or modifications thereto, or any other calculations, valuation statements, schedules, data, or other information and materials sent by Credit Suisse to the Debtors as required by Section 6(d) of the relevant Swap Agreement.

3.    "Close-out Amount" has the same meaning as that term is used in the 2002 ISDA

Master Agreement or the August 29, 2008 Close-out Amount Multilateral Agreement, including

any amendments thereto.

4.    "Credit Suisse," "You" and "Your" shall mean Credit Suisse, including any entity

from which or to which any claim reflected in any Proof of Claim has been assigned or otherwise

transferred, in whole or in part, and any person acting on its behalf or under its control, including

any of its employees, agents, subsidiaries, affiliates, predecessors, successors, or representatives,

and shall include, but not be limited to, personnel or entities in any management position, any

support group, any back-office, middle-office, or front-office function, any product control or

similar group, any sales or trading function, any entity or group that may provide credit valuation

adjustments ("CVA"), any entity or group with any responsibility for counterparty or other risk

management, any information technology group, any treasury group, any finance group, and any

operations group.

5.    "Debtor" or "Debtors" shall mean, individually or collectively, Lehman Brothers

Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing, Inc. ("LBSF"), Lehman Brothers

Commercial Corporation ("LBCC"), Lehman Brothers Commodity Services, Inc. ("LBCS"), and

their affiliated debtors and debtors in possession in the above-captioned chapter 11 bankruptcy

cases and, where applicable, their former and present agents, successors, predecessors, attorneys,

advisors, investigators, employees, representatives, subsidiaries and affiliates, or other persons

acting, or who have acted, on their behalf.

6.    "Derivatives Position" shall mean any interest in any trade types identified on

Schedule 3 attached hereto, including any related or underlying cash trades or exchange-traded

contracts.

7.      "<u>Derivatives Questionnaire</u>" shall mean the questionnaire, responses, and supporting data and information submitted by You in connection with any Proof of Claim pursuant to the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Bankr. Doc. No. 4271).

8.      "<u>Early Termination Amount</u>" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto.

9.      "<u>Early Termination Date</u>" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto.

10.     "<u>Including</u>" shall mean "including, but not limited to," and is intended to illustrate the kinds of documents responsive to each Request.  Phrases following "including" are not intended to be exhaustive of the materials sought by the Request and shall not in any way be read to limit the scope of the Request.

11.     "<u>Proofs of Claim</u>" shall mean, as applicable, any one, or more, or all of the Proofs of Claim identified on Schedule 2 attached hereto, filed by Credit Suisse in the Bankruptcy Proceedings, together with any materials submitted therewith or attachments thereto, including without limitation any Calculation Statement.

12.     "<u>Regulator</u>" shall mean any or all of the Securities and Exchange Commission, the Federal Reserve Board, the Federal Reserve Bank of New York, the United States Department of Treasury, the Securities Investor Protection Corporation, the Office of the Comptroller of the Currency, the Financial Services Authority (U.K.) or any predecessor or successor bodies, the New York State Department of Financial Services (including any subsidiary or predecessor body, such as the New York State Banking Department), or any other

state, federal, national, multinational, market, industry, government, or quasi-government body, foreign or domestic.

13.     "Relevant Time Period" shall mean the period commencing on June 1, 2008 through December 31, 2008.

14.     "Replacement Transaction" shall mean:  (a) any actual, proposed, hypothetical, or contemplated transaction or transactions entered into by You, on Your behalf, or for Your benefit, in order to (i) replace any Swap Agreement or Terminated Transaction on a transaction, agreement, portfolio or other basis or (ii) replace, mitigate, or hedge risks or losses concerning any Swap Agreement or Terminated Transaction on a transaction, agreement, portfolio or other basis; (b) any actual, proposed, or hypothetical transaction and/or internal model that You used to calculate alleged damages, losses, costs, expenses, and/or any other amounts owed to or by You in connection with or under any Swap Agreement.

15.     "Swap Agreement" shall mean any or all the agreements identified on Schedule 1 attached hereto, specifically including (i) the relevant ISDA Master Agreement(s); (ii) any Schedules thereto; (iii) any Credit Support Annexes to the Schedules; (iv) the Confirmations of the Transactions, and (v) all amendments to the foregoing, including without limitation any amendments that may have been made by operation of the August 29, 2008 Close-out Amount Multilateral Agreement.

16.     "Terminated Transaction" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto, and shall also mean any group of Terminated Transactions.

17.     Any capitalized terms not defined herein shall have the meaning set forth in the relevant Swap Agreement.

## <u>DOCUMENTS REQUESTED</u>

1.      All documents and communications concerning Your practices, policies or procedures for hedging, managing, analyzing, or reviewing the risk or exposure associated with Your Derivatives Position, including with respect to any transaction governed by any (i) 2002 ISDA Master Agreement, (ii) 1992 Multi-Currency-Cross Border ISDA Master Agreement, or (iii) Swap Agreement, or other similar derivatives transaction agreement.

2.       All documents, guidelines, manuals, or other writings, and communications concerning or comprising any policies, procedures, or plans You utilized, considered, or referred to for managing, valuing, or marking Your Derivatives Position.

3.      All documents concerning and comprising Your daily and/or end-of-day marks or valuations for any Terminated Transaction, including as generated by You through any system or model, from the month-end for August 2008 through the last day any trade relating to such Terminated Transactions remained in Your system or was otherwise accounted for within Credit Suisse.

4.      All documents concerning or comprising any independent or internal price or model valuation or model verification relating to Your Derivatives Position.

5.      All documents and communications concerning or reflecting any methodology or model You have used or considered to determine the value of Your derivatives trading book for any purpose, regardless of when created, including documents concerning any changes or modifications to any such methodology or model.

6.      All documents and communications concerning any practices, policies, guidance, instructions, or procedures used or considered by You regarding termination or close-out of transactions or groups of transactions governed by the Swap Agreements or any other derivatives

transaction agreement, including terminations arising in the ordinary course of business or through any default, bankruptcy, novation, assignment, or Termination Event.

7.   All documents and communications concerning Your practices, policies or procedures, or methodologies used or considered, for calculating Early Termination Amounts or Close-out Amounts for transactions governed by the Swap Agreements or any other derivatives transaction agreement.

8.   All documents concerning Your statements in the Answer that "Credit Suisse calculated the net amount owed upon early termination of the parties' derivatives transactions" and "admits that Credit Suisse submitted claims in the amount of $932,898,750" with regard to "the LBSF-CS International Agreement and proofs of claim numbers 22843 and 22813."

9.   All document concerning Your statement in the Answer that "CS International calculated the amount owed under the LBSF-CS International Agreement in good faith using commercially reasonable procedures to produce commercially reasonable results consistent with the Master Agreements and governing law," and the basis for such statement.

10.   All documents concerning Your statements in the Answer that "Credit Suisse calculated the net amount owed upon early termination of the parties' derivatives transactions" and "admits that Credit Suisse submitted claims in the amount of $219,534" with regard to "the LBCS-CS  International Agreement and proofs of claim numbers 22828 and 22815."

11.   All document concerning Your statement in the Answer that "CS International calculated the amount owed under the LBCS-CS International Agreement in good faith using commercially reasonable procedures to produce commercially reasonable results consistent with the Master Agreements and governing law," and the basis for such statement.

12.     All document concerning Your statement in the Answer that "CS International calculated the amount owed under the LBSF-CS International Agreement in good faith using commercially reasonable procedures to produce commercially reasonable results consistent with the Master Agreements and governing law," and the basis for such statement

13.     All documents and communications concerning Your consideration or determination to call an Early Termination Event in connection with the Swap Agreements.

14.     All documents concerning Your consideration or determination of any actual or contemplated Early Termination Date or Close-out Date relating to the Swap Agreements.

15.     All documents and communications concerning or reflecting the date, time, and time zone You used or considered when determining any Early Termination Date or Close-out Date under the Swap Agreements.

16.     All documents and communications concerning or reflecting the date, time, and time zone You used or considered when calculating Early Termination Amounts or Close-out Amounts under the Swap Agreements, including any documents sufficient to show how such determinations or considerations are or are not reflected in the Proofs of Claim.

17.     All documents and communications concerning or reflecting any methodology You used or considered for determining the date, time, and time zone You used when calculating Early Termination Amounts or Close-out Amounts under the Swap Agreements, including any documents sufficient to show how or why any such date, time, or time zone was or was not determined to be used.

18.     All documents and communications concerning, reflecting, or comprising any policies, procedures, or methods You conveyed, used, or considered in directing, instructing, informing, or educating any Credit Suisse personnel involved in closing out or terminating the

Terminated Transactions or any other derivatives transactions, groups of transactions, or positions, including with regard to how to determine or calculate the close-out date, time, and methodology to be applied.

19.     All documents and communications concerning any actions You took or considered to hedge or manage Your Derivatives Position in connection with, relating to, or arising from the Terminated Transactions.

20.     All documents and communications concerning the manner and methodology You used or considered in netting or otherwise off-setting any Terminated Transactions, or any related adjustments, add-ons, or bid-ask spreads, whether on an individual, portfolio, or other basis, relating to the Early Termination Amount or Close-out Amount under any Swap Agreement, including documents sufficient to show how any such calculations are reflected in the Proofs of Claim.

21.     All documents and communications concerning or reflecting how You analyzed, hedged, closed out, or managed Your risk or exposure with respect to any Terminated Transaction during the Relevant Time Period, whether on an individual, portfolio, or other basis, including all intra-day and closing risk reports relied on, referenced, viewed, or referred to by You during the Relevant Time Period.

22.     All intra-day and closing risk reports and any other documents concerning Your risk management of Your Derivatives Position relating to the Swap Agreements or other similar derivatives transactions, including all documents relating to any applicable risk limits or violations, modifications, deviations, or exceptions thereof.

23.     All documents and communications concerning Your practices, policies or procedures with respect to inter- or intra-desk trading, or inter- or intra-desk netting, within and

among Credit Suisse or any Credit Suisse entity as such relates to managing risk, hedging, valuing, or close-out procedures with regard to transactions governed by the Swap Agreements or any other derivatives transaction agreement.

24.     All documents necessary to replicate the valuation set forth in any Calculation Statement including, as may be applicable, information on the underlying reference entity, notional amount, clip size, CUSIP/ISIN, time-stamped pricing runs, relevant market/exchange, reference rates and rate sources, yields, volatilities, spreads, correlations, DV01, PV01, any curves and/or methodologies utilized (including assumptions and linear interpolation, discounting methodologies, and/or transaction netting methodologies), reference price sources (e.g. Markit) and prices used, trade summaries or risk memoranda describing the trade rationale or background, and all other documentation reflecting relevant data in the relevant market as may be required for such calculation(s).

25.     All documents and communications between You and Markit during or relating to the Relevant Time Period concerning Your Derivatives Position.

26.     All documents and communications between You and TriOptima during or relating to the Relevant Time Period concerning Your Derivatives Position.

27.     All documents and communications concerning any Replacement Transaction You considered or entered into with respect to each Terminated Transaction, including documents concerning: (i) any bid processes and negotiations to enter into any Replacement Transaction and any quotes, including proxy quotes, transmitted in connection therewith; (ii) any consideration paid or received in connection with a Replacement Transaction; (iii) the name of any internal or external entity that effectuated a replacement; (iv) when any such transaction was

effected; and (v) confirmations, master agreements, and all relevant documentation related to such Replacement Transaction.

28.     All documents and communications concerning any bid-ask spreads you paid or received as a result of managing Your Derivatives Position as it relates to the Debtors.

29.     All documents and communications concerning any adjustment or add-on to any mid-market values or close-out amounts, whether as a result of calculating bid-ask spread or otherwise, You made or considered in calculating Early Termination Amounts or Close-out Amounts under the Swap Agreements, including any methodology used or considered by You in calculating such amounts and any documents sufficient to show how any such amounts are reflected in the Proofs of Claim.

30.     All documents concerning Your policies, procedures, or practices in setting, calculating, valuing, charging, or paying amounts related to bid-ask spreads, including the determination of appropriate bid-offer quotations, sizes, or amounts, to be provided by you, or incurred by you, in any new or replacement transaction relating to the derivative trade types identified on Schedule 3.

31.     All documents and communications concerning any bid-ask spread, adjustment, or add-on reflected in any Proof of Claim, including all documents sufficient to show whether and when such amount was actually incurred by You.

32.     All documents sufficient to identify any bid-ask spread You paid in connection with any early termination, as that term is used or understood in the context of the Swap Agreements or any other derivatives transaction agreement.

33.     All documents sufficient to identify any bid-ask spread You charged or claimed but did not pay in connection with any early termination, as that term is used or understood in the context of the Swap Agreements or any other derivatives transaction agreement.

34.     All documents and communications related to bid-ask spread construction methodologies necessary to replicate the valuations set forth in Your Calculation Statements.

35.     All documents and communications concerning the preparation of and calculations related to Your Proofs of Claims, including any methodology used or considered in performing any such calculations.

36.     All documents and communications concerning Your actual losses or gains in connection with the close-out of or otherwise relating to the Terminated Transactions, including the methodology by which You calculated that amount.

37.     All documents and communications concerning any gains, losses, costs, or other damages reflected in Your Calculation Statements, including documents concerning any gain, loss or cost incurred in connection with terminating, liquidating, rebalancing, or reestablishing any hedge or trade related to a Terminated Transaction.

38.     All documents and communications concerning or reflecting how You managed, accounted for, or reported, whether internally or externally, any trades, movements, losses, gains, or costs associated with the Terminated Transactions, including:

      i.    financial and accounting entries made on Credit Suisse's books and records relating to

          a.   the valuation of any transactions as of any actual or contemplated Early Termination Date or Close-out Date,

          b.   the termination or close-out of any Terminated Transaction,

          c.   any actual or contemplated Early Termination Amount or Close-out Amount,

    d.  any actual or contemplated establishment, modification, or release of reserves,

    e.  any actual or contemplated valuation or timing adjustments, and

    f.  the termination, liquidation or reestablishment of any hedge or trade related to a Terminated Transaction, including any Replacement Transaction;

  ii.  documents necessary to identify all financial or accounting entries made on Credit Suisse's books and records that are related to the foregoing entries described in subpart (i) of this Request; and

  iii.  documents concerning or explaining reasons that accounting, bookkeeping, or database entries concerning the losses, costs, or gains associated with the Terminated Transactions were or were not made, were modified after they were made, or were deleted.

39.    All documents concerning and comprising Your practices, policies, or procedures, with respect to valuation adjustments, including as applicable timing adjustments, reserve adjustments, or suspense accounts, as they relate to Your Derivatives Position, and any record of such adjustments.

40.    All documents and communications concerning any actions You took or considered to mitigate any claimed losses or damages relating to the Terminated Transactions, including documents sufficient to show how any such efforts are reflected in the Proofs of Claim.

41.    All documents and communications concerning any actions You took or considered to rebalance, reapportion, or otherwise account for, whether internally or externally, any losses, gains, or costs relating to the Terminated Transactions, irrespective of how such losses, gains, or costs are or are not reflected, valued, or calculated in connection with Your Proofs of Claim.

42.    All documents and communications concerning any actions You took or considered to engage in compression or risk reduction activities with the Debtors with respect to any Derivatives Position.

43.    All documents sufficient to show the organizational structure, reporting relationships, and individuals involved in any way with Your derivatives trading business or the derivatives trading business of any relevant subsidiaries or affiliates at any time during August 2008 through October 2008, including any management personnel with any responsibility or function related to Your derivatives trading business.

44.    All documents sufficient to identify all Credit Suisse personnel involved in (i) closing out any transaction or terminated trade relating to the Swap Agreements, or (ii) rebalancing or otherwise involved in the management of any portfolio relating to any Terminated Transaction.  For individuals no longer employed at Credit Suisse, documents sufficient to identify any such person's last known contact information.

45.    All documents and communications concerning any actual or proposed trade, sale, purchase, or other transaction, whether internal or external, of the types identified on Schedule 3, including transcriptions or recordings of voice messages and instant messaging services, relating to the Debtors, the Swap Agreements, or any Terminated Transaction during the Relevant Time Period.

46.    Documents sufficient to show all of Your trading activity during the Relevant Time Period that was conducted in part or in whole in anticipation of or in response to any Termination Event under the Swap Agreements.

47.    Documents identifying, relating to, constituting, or comprising all weekly risk reports, trader reports, trading management reports, CVA group reports, and trader commentaries, or other similar or related communications, relating to the derivative trade types identified on Schedule 3, regardless of when created.  If any such documents are not prepared

and/or disseminated on a weekly basis, then this Request shall be read to call for all requested documents as of the last business day of each week.

48.     Documents concerning, identifying, relating to, or comprising all risk reports, trader reports, trading management reports, CVA group reports, and trader commentaries, or other similar or related communications, relating to the derivative trade types identified on Schedule 3, during or relating to the Relevant Time Period.

49.     All documents concerning every trade of the types identified on Schedule 3 that You entered into from September 1, 2008 through November 30, 2008, including documents concerning the dates, times, notional amounts, prices and valuations for such trades.

50.     All documents and communications concerning any quotations, whether made by You or on Your behalf, or submitted to You, or requested from You, relating to any Terminated Transaction, during the Relevant Time Period.

51.     All documents and communications concerning any quotes, indications, or trades that Credit Suisse provided to any customers, counterparties, or other third parties, who were closing out or terminating derivatives trades, transactions, or portfolios relating to the Debtors, from September 12, 2008 through December 31, 2008.

52.     All documents concerning mark-to-market values or quotations received by You from derivatives counterparties other than Debtors during the Relevant Time Period, including (i) derivatives trades or related cash trades; (ii) dealer quotations; (iii) mid-market prices; (iv) screen shots; (v) bid/offer adjustments; (vi) liquidity adjustments; (vii) portfolio aggregation; or (viii) responses to OWICs or BWICs.

53.    All documents and communications from third parties relating to the Terminated Transactions concerning requests by or on behalf of Credit Suisse for relevant market data, including relevant rates, prices, yields, yield curves, volatilities, spreads, and/or correlations.

54.    All documents concerning the actual, requested, or contemplated purchase, sale or novation, during or relating to the Relevant Time Period, of portfolios, trades, transactions, or groups of trades or transactions of any of the derivative trade types identified on Schedule 3, as such relate to the Debtors.

55.    All documents concerning any request for collateral or credit support from Credit Suisse to any of the Debtors, including any methodology used or contemplated by You to determine or calculate the type, value, or amount of collateral or credit support, and any changes to such valuation methodology, from March 1, 2008 through any applicable Early Termination Date or Close-out Date.

56.    All documents concerning any dispute regarding the type, value, or amount of collateral or credit support relating to any request for collateral or credit support from Credit Suisse to any of the Debtors.

57.    All documents concerning any proposed or actual increase, modification, termination, reduction, or change in the level or nature of business activity between You and the Debtors during the Relevant Time Period, including all documents concerning any internal credit risk assessment relating to Your business activity with the Debtors.

58.    All documents and communications, related to activities that occurred at the Federal Reserve Bank of New York between September 12, 208 and September 15, 2008, including (i) documents concerning the personnel and role of any Credit Suisse employee or agent involved, (ii) documents related to the emergency derivatives trading session proposed at

the request of the Federal Reserve Bank of New York on September 14, 2008, and (iii) and any

actions by You or on Your behalf in undertaking, considering, or otherwise preparing for any

related compression activity.

59.    All documents and communications concerning any trades, contingent trades,

attempted trades, or other trades or transactions involving You that occurred between September

12, 208 and September 15, 2008, whether or not such resulted from the activities, requests, or

sponsorship of the Federal Reserve Bank of New York.

60.    All documents prepared by You or on Your behalf from March 1, 2008 through

any applicable Early Termination Date or Close-out Date, regardless of purpose, concerning

Your exposure or risk vis-a-vis the Debtors.

61.    All documents and communications concerning any statement disseminated

publicly relating to the liquidity, solvency, or financial condition of the Debtors, or relating in

any way to the Swap Agreements, including documents identifying the personnel involved in the

preparation, creation, or dissemination of such statements.

62.    All documents and communications concerning any Derivatives Questionnaire,

including documents identifying the personnel involved in the preparation or consideration

thereof.

63.    All documents and communications concerning the collection, preparation,

organization, and submission of any data supplied by Credit Suisse in connection with any

Derivatives Questionnaire, including documents identifying the personnel involved in any such

activities.

64.    All documents and communications concerning any procedures, processes, or methodologies used or considered to collect, prepare, organize, and submit any data supplied by Credit Suisse in connection with any Derivatives Questionnaire.

65.    All documents and communications concerning any discussion, interpretation, or analysis prepared by You or on Your behalf, whether prepared or disseminated internally or externally, regarding any of the terms of any ISDA Master Agreement, the August 29, 2008 Close-out Amount Multilateral Agreement, or any amendments thereto.

66.    All documents and communications concerning any discussion, interpretation, analysis or comments prepared by You or on Your behalf to be disseminated to any trade, oversight, regulatory, governmental, judicial, or similar entity, including any peer, constituent, or related committee, group, or subgroup thereof, regarding any actual, proposed, draft, or contemplated terms of the (i) 2002 ISDA Master Agreement and (ii) 1992 Multi-Currency-Cross Border ISDA Master Agreement, and any amendments thereto, including any term or definition contained or referenced in Section 5 or Section 6 thereof.

67.    All documents prepared by You or on Your behalf concerning any consideration or application of any actual, proposed, draft, or contemplated terms or definitions of the (i) 2002 ISDA Master Agreement and (ii) 1992 Multi-Currency-Cross Border ISDA Master Agreement, and any amendments thereto, including any term or definition contained or referenced in Section 5 or Section 6 thereof.

68.    All documents and communications concerning any statement, whether in public or private, or public filing made by You or on Your behalf, to any Regulator, credit rating agency, or other third party concerning the Debtors, the Swap Agreements, Your Derivatives

Position, or Your derivatives business or portfolio, including the effect or impact of any of the foregoing on the Profit and Loss (P&L) or risk exposure of Credit Suisse.

69.     All documents and communications concerning any statement, discussion, analysis, or documents, that any Regulator, credit rating agency, or other third party was provided by, obtained from, or requested from You, regarding any claimed loss, potential loss, exposure, risk mitigation efforts or any other potential or actual risk faced by Credit Suisse relating, directly or indirectly, to the Swap Agreements or Terminated Transactions, and the manner in which any of the foregoing is reflected in any Proof of Claim.

70.     All documents and communications concerning any discussion or analysis of whether and in what manner to disclose, report, inform, notify or otherwise communicate with any Regulator or investor any information about any claimed loss, potential loss, exposure, risk mitigation efforts or any other potential or actual risks faced by Credit Suisse relating, directly or indirectly, to the Swap Agreements or Terminated Transactions, including all documents concerning any such report or disclosure. If no such report or disclosure was made to any Regulator or any of Your investors, all documents concerning the decision to not make such a report or disclosure.

71.     All documents and communications concerning the negotiation, sale, participation, financing, or monetization of any claim or group of claims, in whole or in part, reflected in any Proof of Claim.

72.     All documents and communications concerning any actions You took or considered during the Relevant Time Period relating to the London Clearing House's derivatives portfolio, including as such relates to the Debtors.

73.    All documents concerning any actual or proposed audit, or work performed or proposed to be performed by any auditor, whether internal or external, relating to the Terminated Transactions, including all documents concerning any auditing work performed or proposed regarding the adequacy of any reserves.

74.    All documents concerning any audit adjustments made, proposed, or contemplated during the preparation or audit of Your 2008 financial statements, regulatory reports or filings to any Regulator, or any other documents audited or reviewed by any auditor, as such relate to the Terminated Transactions.

75.    All documents and communications concerning any contemplated, proposed or actual efforts or activities by Credit Suisse personnel to create, require, use, operate under, or engage in any different, modified, additional, or specialized instructions, practices, or policies with regard to derivatives transactions relating to the Debtors as compared with those applicable to any other counterparty, bank, or dealer or trader of derivatives, regardless of time period, including with respect to the activities of Credit Suisse personnel relating to the interbank market, assignments, novations, management, or close-outs of Derivative Positions relating to the Debtors.

76.    All documents and communications concerning any contemplated, proposed or actual efforts or activities by Credit Suisse to modify, alter, replace, deviate from, refrain from, or add to any generally applicable policy or procedure relating to the manner, methodology, scope, and direction in which Credit Suisse would engage in, propose, seek, or request trade activity with regard to Derivatives Positions relating to the Debtors.

77.     All document retention policy documents created, considered, implemented,

modified, or in place for You, and all documents and communications concerning such

document retention policies.


Dated:  February 25, 2014
        New York, New York

Respectfully submitted,

JONES DAY


*/s/ Jayant W. Tambe*
Jayant W. Tambe
Laura Washington Sawyer
Benjamin Rosenblum
Patrick J. Smith
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

*Attorneys for Lehman Brothers Holdings Inc.*

## <u>SCHEDULE 1</u>

1. ISDA Master Agreement between LBSF and CS International, dated as of September 12, 2008 (Contract ID: 79280CSFLLBSF)

2. ISDA Master Agreement between LBSF and CS, dated as of August 20, 2004 (Contract ID: 071597QCSFLBSF)

3. ISDA Master Agreement between LBCS and CS Energy, dated as of May 17, 2006 (Contract ID: 051706CREDLBCS)

4. ISDA Master Agreement between LBCC and CS, dated as of August 20, 2004 (Contract ID: 071597QCSFLBCC)

5. ISDA Master Agreement between LBSF and CS Europe, dated as of June 6, 1997 (Contract ID: 051697CFBELBSF)

6. ISDA Master Agreement between LBCC and CS Europe, dated as of September 28, 1998 (Contract ID: 051697CFBELBCC)

7. ISDA Master Agreement between LBCC and CS International, dated as of December 18, 1995 (Contract ID: 79280CSFLLBCC)

8. ISDA Master Agreement between LBCS and CS International, dated as of March 23, 2008 (Contract ID: 79280CSFLLBCS)

## **SCHEDULE 2**

1.    Claim No. 22812

2.    Claim No. 22813

3.    Claim No. 22815

4.    Claim No. 22816

5.    Claim No. 22817

6.    Claim No. 22820

7.    Claim No. 22821

8.    Claim No. 22828

9.    Claim No. 22841

10.    Claim No. 22842

11.    Claim No. 22843

12.    Claim No. 22847

13.    Claim No. 22848

14.    Claim No. 22849

15.    Claim No. 22852

16.    Claim No. 22853

17.    Claim No. 22854

18.    Claim No. 22856

## SCHEDULE 3

1.    Foreign exchange derivatives

2.    Credit derivatives

3.    Interest rate derivatives

4.    Commodity derivatives

5.    Securitized products derivatives

## <u>CERTIFICATE OF SERVICE</u>

I, Patrick J. Smith, hereby certify that on this day, February 25, 2014, a true and correct copy of the foregoing Plaintiffs' First Request for the Production of Documents by Defendants was served on Michael A. Paskin and Margot A. Miller of Cravath, Swaine & Moore LLP, counsel for Defendants, via electronic mail.

/s/  *Patrick J. Smith*
Patrick J. Smith