# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X
                                                           :
In re:                                                     :   Chapter 11
                                                           :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*                   :   Case No. 08-13555 (SCC)
                                                           :
                             Debtors.                      :   (Jointly Administered)
                                                           :
-----------------------------------------------------------X
                                                           :
LEHMAN BROTHERS HOLDINGS INC.,                             :
LEHMAN BROTHERS SPECIAL FINANCING                          :
INC., LEHMAN BROTHERS COMMODITY                            :
SERVICES INC. and LEHMAN BROTHERS                          :
COMMERCIAL CORP.,                                          :
                                                           :
                             Plaintiffs,                   :
                                                           :
                   -against-                               :   Adv. Proc. No. 13-01676 (SCC)
                                                           :
CREDIT SUISSE, CREDIT SUISSE                               :
INTERNATIONAL, CREDIT SUISSE ENERGY                        :
LLC and CREDIT SUISSE SECURITIES                           :
(EUROPE) LTD.,                                             :
                                                           :
                             Defendants.                   :
                                                           :
-----------------------------------------------------------X


### PLAINTIFFS' SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS BY DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, made applicable to this

adversary proceeding by Federal Rules of Bankruptcy Procedure 7026 and 7034, Plaintiffs, by

and through their undersigned counsel, hereby request that Defendants Credit Suisse (n/k/a

Credit Suisse AG) ("CS"), Credit Suisse International ("CS International"), Credit Suisse Energy

LLC ("CS Energy"), and Credit Suisse Securities (Europe) Ltd. ("CS Europe") produce, or

produce for inspection and copying, the documents and things requested herein (the "Request(s)")

at the offices of Jones Day, 222 East 41st Street, New York, New York 10017, within 30 days

after the date of service hereof.  These Requests are to be read in accordance with the

Instructions and Definitions that follow.  These Requests are provided without prejudice to, or

waiver of, Plaintiffs' rights to conduct further discovery at a later date.

## INSTRUCTIONS

1.      Each Request below shall operate and be construed independently, and unless

otherwise indicated, no Request limits the scope of any other Request.  Unless otherwise stated

with respect to a particular Request, the time period applicable to each Request is from March 1,

2008 to the present, and includes all documents and communications concerning that period,

even if obtained, prepared, or published outside that period.

2.      Each Request shall be construed according to the broadest possible construction

of its terms, and in such a way as to bring within its scope any document or communication that

could otherwise be construed as outside of its scope.

3.      All electronic documents are to be produced in accordance with the parties'

Proposed Scheduling Order and Discovery Plan (Adv. Proc. Doc. No. 4), and any amendments

thereto, and without limitation shall include any electronic mail, tapes, tape lines, instant

messages and similar electronically transmitted real-time communications, and communications

in chat rooms and message boards.

4.      Your response to any Request calling for the identification of persons shall

include any such person's (i) name, (ii) title, (iii) applicable role, (iv) current employment status

with Credit Suisse, and (v) last known contact information, to the extent such information is

within Your custody, possession, or control.

5.      You are required not only to furnish documents and communications in Your possession but also to furnish documents and communications that are in the possession of Your attorneys, accountants, agents, or anyone else acting on Your behalf or under Your control, except to the extent that such information is privileged.  If You are not in possession of documents or communications responsive to any Request, so state in writing in response to the Request.

6.      In the event You claim that any information called for in these Requests is immune from discovery on the basis of privilege or other basis, set forth the information required by Rule 7034-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rule(s)").

7.      You must produce documents and communications as they are kept in the usual course of business or produce documents organized and labeled to correspond with the categories in these Requests.

8.      Documents and communications shall not be edited, cut, redacted, or expunged and shall include all attachments, appendices, tables, and exhibits and all covering memoranda, letters, or documents.

9.      If any otherwise responsive document or communication has been, but no longer is, in Your possession, custody, or control, or has ceased to exist, state:

a.      the date, type, and number of pages of the document or communication;

b.      the information contained therein or subject matter of the document or communication;

c.      the author;

d.      each address and addressee;

e.      the identity of any attachments or appendices to the document or communication;

     f.      all persons having knowledge of the contents of the document or communication;

     g.      the present location and custodian of the document or communication, if it still exists;

     h.      the date and manner of any destruction or discard of the document or communication; or the circumstances under which the document or communication ceased to exist; and

     i.      the person authorizing or carrying out such destruction or discard.

10.     All documents and communications responsive to this Second Request for the Production of Documents shall be produced in such a fashion as to indicate clearly the person or file from which they were produced.

11.     For the purposes hereof, the reference to any entity shall include any and all past or present officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other Person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

## **DEFINITIONS**

Pursuant to Local Bankruptcy Rule 7026-1, the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Civil Rule(s)") are incorporated fully herein.  In addition, the following Definitions shall apply to each and every Request:

1.     Any term used but not defined herein that was defined in Plaintiffs' First Request for the Production of Documents by Defendants shall have the same meaning as was defined therein, unless modified by these Definitions.

2.      "Central Book" shall mean the Credit Suisse organizational unit, entity, or group responsible for recording Your assets and liabilities.

3.      "Credit Suisse," "You," and "Your" shall mean Credit Suisse, including any entity from which or to which any claim reflected in any Proof of Claim, identified on Schedule 2 attached hereto, has been assigned or otherwise transferred, in whole or in part, and any person acting on its behalf or under its control, including any of its employees, agents, subsidiaries, affiliates, predecessors, successors, or representatives, and shall include, but not be limited to, personnel or entities in any management position, any support group, any back-office, middle-office, or front-office function, any product control or similar groups, any sales or trading function, any CVA Group, any entity or group with any responsibility for counterparty or other risk management, any information technology group, any treasury group, any finance group, and any operations group.

4.      "CVA Group" shall mean the Credit Suisse organizational unit, entity, or group responsible for calculating or providing credit valuation adjustments.

5.      "Debtor" or "Debtors" shall mean, individually or collectively, Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing, Inc. ("LBSF"), Lehman Brothers Commercial Corporation ("LBCC"), Lehman Brothers Commodity Services, Inc. ("LBCS"), and their affiliated debtors and debtors in possession in the above-captioned Chapter 11 bankruptcy cases and, where applicable, their former and present agents, successors, predecessors, attorneys, advisors, investigators, employees, representatives, subsidiaries and affiliates, or other persons acting, or who have acted, on their behalf.

-5-

6.      "<u>Derivatives Position(s)</u>" shall mean any interest in any trade types identified on Schedule 3 attached hereto, including any related transactions, positions maintained with respect to such trades, or underlying cash trades or exchange-traded contracts.

7.      "<u>Early Termination Date</u>" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto.

8.      "<u>Examiner</u>" refers to Anton R. Valukas, his counsel, and/or his financial advisors, including any predecessors, successors, parents, subsidiaries, present and former divisions or entities under common control, affiliates and each of their present and former trustees, directors, officers, employees, accountants, attorneys, agents, representatives, and any other person acting under the control or on behalf of any of them, in accordance with the Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code, dated January 16, 2009 (Bankr. Doc. No. 2569).

9.      "<u>Including</u>" shall mean "including, but not limited to," and is intended to illustrate the kinds of documents responsive to each Request.  Phrases following "including" are not intended to be exhaustive of the materials sought by the Request and shall not in any way be read to limit the scope of the Request.

10.      "<u>Lehman</u>" shall mean LBHI and all its subsidiaries and affiliates, any of their past or present officers, directors, employees, associates, consultants, attorneys, representatives, agents, or other persons working on their behalf, including their predecessors and successors in interest.

11.      "<u>Netting</u>" shall mean, with respect to a Derivatives Position, the process of compression, offsetting and/or aggregating the value of a transaction or groups of transactions, including any related or underlying cash trades or exchange-traded contracts, whose type and

scope of risk, as evaluated based on characteristics including but not limited to maturity date, product type, delta, and volatility, counterbalance each other and/or offset any gains and losses, however defined by You, associated with such transactions or groups of transactions.

12.    "Practices" shall mean both Your stated practices and procedures as found, for illustration only, in written, posted, or published materials made available to Your personnel, as well as actual practices undertaken or employed by Your personnel, whether or not such activity comports with or is reflected in any stated practices or procedures.

13.    "Price Verification" shall mean any periodic procedure to verify price inputs, models, or marks used to value trades.

14.    "Regulator" shall mean any or all of the Securities and Exchange Commission, the Federal Reserve Board, the Federal Reserve Bank of New York, the United States Department of Treasury, the Securities Investor Protection Corporation, the Office of the Comptroller of the Currency, the Financial Industry Regulatory Authority ("FINRA"), the Financial Services Authority (U.K.) or any predecessor or successor bodies, the New York State Department of Financial Services (including any subsidiary or predecessor body, such as the New York State Banking Department), the Swiss Financial Market Supervisory Authority ("FINMA"), or any other state, federal, national, multinational, market, industry, government, or quasi-government body, foreign or domestic.

15.    "Swap Agreement" shall mean any or all the agreements identified on Schedule 1 attached hereto, specifically including (i) the relevant ISDA Master Agreement(s); (ii) any Schedules thereto; (iii) any Credit Support Annexes to the Schedules; (iv) the Confirmations of the Transactions, and (v) all amendments to the foregoing, including without limitation any

amendments that may have been made by operation of the August 29, 2008 Close-out Amount
Multilateral Agreement.

16.    "Terminated Transaction" has the same meaning as that term is used under any
applicable Swap Agreement, including any amendments thereto, and shall also mean any group
of Terminated Transactions.

17.    Any capitalized terms not defined herein shall have the meaning set forth in the
relevant Swap Agreement.

## DOCUMENTS REQUESTED

1.    All documents and communications concerning models, calculations, white
papers, or Practices used by You to determine potential future exposure ("PFE"); value at risk
("VAR"); the establishment of reserves; or any market-value, liquidity, or other adjustments,
relating to Your Derivatives Positions.

2.    All documents and communications concerning Your Practices with respect to the
Statement of Financial Accounting Standards No. 157 ("FAS 157"), including but not limited to
Your policies on the use thereof and any actual or contemplated use or application thereof to the
valuation of Your Derivatives Positions.

3.    All documents and communications comprising or reflecting Your Practices for
hedging, managing, analyzing, reviewing, or assessing the risk or exposure associated with any
transaction or group of transactions relating to Your Derivatives Position.

4.    All documents and communications comprising or reflecting Your Practices
relating to the manner in which profit and loss relating to the trading activity with respect to

Your Derivatives Position is recorded, reported, or accounted for, whether on an individual, aggregate, by-trader, by-desk, by-product, by-portfolio, by-business unit, or other basis.

5.      All documents and communications comprising or reflecting Your Practices relating to the manner in which sales credits or expected value relating to the trading activity with respect to Your Derivatives Position is recorded, reported, or accounted for, whether on an individual, aggregate, by-trader, by-desk, by-product, by-portfolio, by-business unit, or other basis.

6.      All documents and communications comprising or reflecting Your Practices relating to the manner in which reserves relating to the trading activity with respect to Your Derivatives Position are established, determined, recorded, reported, or accounted for, whether on an individual, aggregate, by-trader, by-desk, by-product, by-portfolio, by-business unit, or other basis.

7.      All documents and communications comprising or reflecting Your Practices relating to the manner in which profit and loss relating to the trading activity with respect to Your Derivatives Positions is recorded, reported, or accounted for by You, the Central Book, any product control group, any business unit, the CVA Group, or individual traders, including without limitation in estimates, spreadsheets, or reports prepared at the close of each business day (or other relevant closing period used by You) to provide a profit-and-loss explanation, attribution, or accounting.

8.      All documents and communications sufficient to show Your actual profit and loss relating to the Terminated Transactions, however determined by You, both prior to and after any applicable Early Termination Date, including without limitation all documents and communications recording, reporting, or accounting such profit or loss.

9.     All documents and communications concerning any Practices used or prepared by You to manage, report, demonstrate, memorialize, inform, or assist in the recording and management of Your Derivatives Position and/or related hedging activity, including without limitation all documents used or prepared intra-day, at the close of each business day or other relevant closing period used by You, or periodically, and consisting without limitation of any:

   a.   position management spreadsheets or similar tools;
   b.   spreadsheets or tools used for managing, illustrating, demonstrating, recording, or explaining derivatives positions or trades, whether on an on-going, cumulative, or real-time basis and including without limitation by individual traders or pursuant to any Practices;
   c.   outputs from any derivative management systems, regardless of whether or developed by You or purchased from a third party, such as Calypso and Summit;
   d.   web-based applications;
   e.   trade blotters;
   f.   sales credit or expected value information;
   g.   quote sheets;
   h.   activity reports;
   i.   time and sale documents for derivative trades, cash securities, and exchange traded instruments; and
   j.   confirmations and output reports from electronic trading platforms.

10.     All documents and communications regarding, reflecting, or comprising Your Practices, policies, procedures, or methodologies for awarding sales credits; measuring profitability per transaction; determining expected value measurements or outcomes; or measuring the performance or profitability of derivative transactions, derivative sales and trading personnel, or Your trading with derivative counterparties.

11.     Documents sufficient to establish Credit Suisse's policies and procedures for resolving disputes over sales credits or any other performance or compensation measurements for salespersons involved in trades.

12.     Documents sufficient to show how You measure profitability and performance
related to Your Derivatives Position, and consisting without limitation of:

    a.  policies or measurement methodologies for determining sales credits;

    b.  policies or measurement methodologies for measuring profitability per transaction whether by salesman, trader, or counterparty or other method;

    c.  policies or measurement methodologies for determining sales credits or profitability based on counterparty type;

    d.  policies or measurement methodologies for assessing risk adjusted return per transaction and whether such is attributed to salesman, traders, and/or counterparties;

    e.  policies for determining counterparty credit charges on a transactional basis; and

    f.  policies for determining reserves, liquidity, capital, financing, or other charges or reserves.

13.     All documents and communications concerning any Practices used or prepared by
You to manage, report, demonstrate, memorialize, inform, or assist in the measurement of
profitability per transaction, or whatever method You use to measure the actual performance or
profitability of derivatives transactions, sales and trading personnel, and trading related to Your
Derivatives Position, and consisting without limitation of:

    a.  sales credit reports or similar documents;

    b.  trade blotters;

    c.  profitability per trade information;

    d.  performance or profitability per counterparty;

    e.  reports or other tools to demonstrate counterparty credit charges per trade; and

    f.  reports or other tools showing reserves, liquidity, capital, financing, or other charges or reserves.

14.     All documents and communications concerning, comprising or reflecting any
sales credit information, whether relating to an individual sale or transaction or group of sales or
transactions, transmitted by or among Credit Suisse derivatives traders and sales personnel, or
any manager or supervisor thereof.

15.     For or concerning September 2008, all documents and communications regarding or comprising Your Practices with respect to any budgets, estimates or targets relating to the prospective, projected, anticipated, requested, mandated, or actual performance or profitability of derivatives transactions, sales and trading personnel, and trading, as they relate to Your Derivatives Position vis-à-vis Lehman, including without limitation all documents and communications regarding actual measures of such performance or profitability as compared with any such budgets, estimates or targets.

16.     For or concerning the year 2008, all documents and communications comprising or reflecting any research, daily commentary, market commentary or summary prepared, distributed, or received by Credit Suisse traders with respect to Your Derivatives Position.

17.     From or concerning June 1, 2008 to or concerning December 31, 2008, all documents and communications concerning, comprising or reflecting any specific request or ask (or "axe") made or received by, or any sales credit incentive extended to or by, any Credit Suisse derivatives trader to engage in a transaction concerning Your Derivatives Position, including in order to purchase protection, mitigate risk, or hedge a specified exposure.

18.     All documents and communications comprising or reflecting Your Practices for pricing, or calculating the value to You, of any Derivatives Position.

19.     All documents and communications comprising or reflecting Your Practices for calculating mid-market values for any Derivatives Position.

20.     All documents and communications concerning or reflecting how You calculated the value to You of each or all of the Terminated Transactions.

21.     All documents and communications concerning or reflecting how You calculated mid-market values for each or all of the Terminated Transactions.

22.     All documents and communications concerning or reflecting whether and how the value associated with the Terminated Transactions was marked or reflected in Your accounts and/or Central Book.

23.     All documents concerning the ability of Credit Suisse's derivatives desks or business units to enter into trades with other Credit Suisse desks or business units, including but not limited to which desks had such authority and which did not.

24.     All documents and communications sufficient to show, or concerning or reflecting, whether and how any sale or trade or transaction or group of trades or transactions relating to Your Derivatives Positions was marked, charged, reflected, or accounted for within Credit Suisse, including without limitation documents sufficient to show:

     a.   whether and how any such sale, trade or transaction, or any value associated therewith, is denominated, assigned or classified;

     b.   the trader, desk, portfolio, business unit, and/or other division or classification into which such sale, trade or transaction is assigned or classified; and

     c.   whether and how any such sale, trade or transaction regarding the Terminated Transactions, or any value associated therewith, was denominated, assigned or classified both prior to and after any applicable Early Termination Date.

25.     All documents and communications concerning or reflecting any reporting or recording, whether internally or externally, of Your unwinding or close-out of the Terminated Transactions, including but not limited to those relating to Your valuation of, and any profit or loss associated with, any such transactions or group of transactions.

26.     All documents and communications sufficient to show, or concerning, comprising, reflecting, reporting, or recording any actions taken or contemplated by the CVA Group or by the Central Book in preparation for or as a consequence of Lehman's bankruptcy.

27.     All documents and communications concerning, comprising or reflecting any information actually or contemplated to be provided by You to the Examiner.

-13-

28.     All documents and communications sufficient to show or explain the names (and other identifying descriptors, including without limitation electronic and short-hand identifiers) of each trading book associated with all derivatives, cash, or futures transactions You undertook from June 1, 2008 through December 31, 2008, inclusive.

29.     All documents and communications sufficient to show or explain the manner in which the trading books identified in the preceding Request and any other of Your trading books are organized in relation to each other (or "rolled-up") within Credit Suisse, whether hierarchically or otherwise, and the manner in which the referenced derivatives, cash, or futures transactions are organized within (or "mapped" to) each referenced trading book.

30.     All documents and communications comprising or reflecting any floor plans, telephone or personnel directories, organizational charts, hierarchies, or other compilations of personnel by name, title, function, location, business unit, or otherwise, within Credit Suisse.

31.     All documents and communications concerning or comprising Your Practices relating to the communication or receipt of pricing or valuation information, bids or offers to or from electronic trading platforms, as such relate to Your Derivatives Position.

32.     For or concerning the year 2008, all documents and communications sufficient to show Your transmittal or receipt of pricing or valuation information to or from any internal or external electronic platform, as such relate to Your Derivatives Position, including without limitation all documents and communications concerning any bids or offers associated with or contained within any such transmittal(s).

33.     All documents and communications sufficient to show, or concerning, comprising or reflecting Your Practices regarding, any Netting activity that You undertook from January 1, 2008 through December 31, 2008, inclusive, involving or relating to transactions between You

and the Debtors, including without limitation transactions relating to any of the Swap Agreements.

34.    All documents and communications sufficient to show, or concerning, comprising or reflecting Your Practices regarding, any Netting activity that You undertook from January 1, 2008 through December 31, 2008, inclusive, with respect to transactions between You and derivatives counterparties other than Debtors.

35.    All documents and communications concerning, comprising or reflecting Your Practices in the period from September 12, 2008 through December 31, 2008, inclusive, with respect to the London Clearing House (a/k/a LCH.Clearnet), or any other derivatives transaction clearing house, as such concern any derivatives transactions to which Debtors were a party.

36.    All documents from January 1, 2008 to the present concerning Credit Suisse's communications with or about the Federal Reserve Board, the Federal Reserve Bank of New York, the United States Department of Treasury, the Securities and Exchange Commission, the Securities Investor Protection Corporation, the Office of the Comptroller of the Currency, or any other Regulator, concerning derivatives trading.

37.    Documents sufficient to establish Credit Suisse's policies and procedures for maintaining, archiving, indexing, and storing data related to trades, including, but not limited to, electronic and telephonic communications.

38.    Documents sufficient to identify the systems, databases, or tools that Credit Suisse traders used to manage trades, including but not limited to such systems, databases, or tools used for capturing trades, marking positions, and assessing risk.

39.    Documents sufficient to establish Credit Suisse's policies and procedures for Price Verification of trades.

Dated: March 20, 2015
     New York, New York

Respectfully submitted,

JONES DAY

*/s/ Laura W. Sawyer*
Jayant W. Tambe
Laura Washington Sawyer
Mahesh Venkatakrishnan
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

*Attorneys for Plaintiffs*

## <u>SCHEDULE 1</u>

1.  ISDA Master Agreement between LBSF and CS International, dated as of September 12, 2008 (Contract ID:  79280CSFLLBSF)

2.  ISDA Master Agreement between LBSF and CS, dated as of August 20, 2004 (Contract ID:  071597QCSFLBSF)

3.  ISDA Master Agreement between LBCS and CS Energy, dated as of May 17, 2006 (Contract ID:  051706CREDLBCS)

4.  ISDA Master Agreement between LBCC and CS, dated as of August 20, 2004 (Contract ID:  071597QCSFLBCC)

5.  ISDA Master Agreement between LBSF and CS Europe, dated as of June 6, 1997 (Contract ID:  051697CFBELBSF)

6.  ISDA Master Agreement between LBCC and CS Europe, dated as of September 28, 1998 (Contract ID:  051697CFBELBCC)

7.  ISDA Master Agreement between LBCC and CS International, dated as of December 18, 1995 (Contract ID:  79280CSFLLBCC)

8.  ISDA Master Agreement between LBCS and CS International, dated as of March 23, 2008 (Contract ID:  79280CSFLLBCS)

## SCHEDULE 2

1.      Claim No. 22812

2.      Claim No. 22813

3.      Claim No. 22815

4.      Claim No. 22820

5.      Claim No. 22821

6.      Claim No. 22828

7.      Claim No. 22841

8.      Claim No. 22842

9.      Claim No. 22843

10.     Claim No. 22847

11.     Claim No. 22848

12.     Claim No. 22849

13.     Claim No. 22852

14.     Claim No. 22853

15.     Claim No. 22854

16.     Claim No. 22856

## **SCHEDULE 3**

1.      Foreign exchange derivatives

2.      Credit derivatives

3.      Interest rate derivatives

4.      Commodity derivatives

5.      Securitized products derivatives

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen P. Farrelly, hereby certify that on this day, March 20, 2015, a true and correct copy of the foregoing Plaintiffs' Second Request for the Production of Documents by Defendants was served on Michael A. Paskin and Margot A. Miller of Cravath, Swaine & Moore LLP, counsel for Defendants, via electronic mail and overnight mail.

/s/ *Stephen P. Farrelly*
Stephen P. Farrelly