# EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
:
In re:                                              :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.,*   :    Case No. 08-13555 (SCC)
:
Debtors.                            :    (Jointly Administered)
:
------------------------------------------------------------X
:
LEHMAN BROTHERS HOLDINGS INC.,                      :
LEHMAN BROTHERS SPECIAL FINANCING                   :
INC., LEHMAN BROTHERS COMMODITY                     :
SERVICES INC. and LEHMAN BROTHERS                   :
COMMERCIAL CORP.,                                   :
:
Plaintiffs,                         :
:
-against-                                    :    Adv. Proc. No. 13-01676 (SCC)
:
CREDIT SUISSE, CREDIT SUISSE                        :
INTERNATIONAL, CREDIT SUISSE ENERGY                 :
LLC and CREDIT SUISSE SECURITIES                    :
(EUROPE) LTD.,                                      :
:
Defendants.                         :
:
------------------------------------------------------------X

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS**

Pursuant to Rule 7033 of the Federal Rules of Bankruptcy Procedure and Rule 33 of the Federal Rules of Civil Procedure, and Local Rule 7033-1 of the Local Bankruptcy Rules for the Southern District of New York, Plaintiffs submits the following First Set of Interrogatories (the "<u>Interrogatories</u>") to Defendants Credit Suisse (n/k/a Credit Suisse AG), Credit Suisse International, Credit Suisse Energy LLC, and Credit Suisse Securities (Europe) Ltd. (collectively "Defendants" or "Credit Suisse"). Plaintiffs hereby request that Defendants respond to the Interrogatories, fully in writing and under oath, and serve their responses upon undersigned

counsel within thirty (30) days after service of these Interrogatories. Each of these Interrogatories is to be read in accordance with the Instructions and Definitions that follow. These Interrogatories are provided without prejudice to, or waiver of, Plaintiffs' right to conduct further discovery at a later date.

## **INSTRUCTIONS**

1.     Each Interrogatory shall operate and be construed independently and unless otherwise indicated, no Interrogatory limits the scope of any other Interrogatory. Unless otherwise stated with respect to a particular Interrogatory, the time period applicable to each Interrogatory is from June 1, 2008 to the present.

2.     Restate in full each Interrogatory, followed immediately by Your written response to the Interrogatory. Give separate answers to each Interrogatory.

3.     Each Interrogatory shall be construed according to the broadest possible construction of its terms, and in such a way as to bring within its scope any person that could otherwise be construed as outside of its scope.

4.     Your response to each Interrogatory shall include such information as is within Your custody, possession, or control, or that of Your attorneys, investigators, trustees, employees, experts retained by You or Your attorneys or other representatives and agents, and not merely information within Your personal knowledge.

5.     Your response to any Interrogatory calling for the identification of persons shall include any such person's (i) name, (ii) title, (iii) applicable role, (iv) current employment status with Credit Suisse, and (v) last known contact information, to the extent such information is within Your custody, possession, or control.

6.	If You deny knowledge or information sufficient to answer an Interrogatory or any part thereof, then: (i) answer to the extent possible; (ii) state the basis for Your inability to answer the remainder; (iii) state whatever information or knowledge You have concerning the unanswered portion; (iv) specify the type of information that You contend is not available, the reason the information is not available to You, and what You have done to locate such information; and (v) state the name and address of each Person, if any, believed to have such knowledge or information.

7.	If You claim that an Interrogatory is objectionable, then: (i) identify the portion of the Interrogatory claimed to be objectionable and state the nature and basis of the objection; (ii) identify any information withheld pursuant to such objections with sufficient particularity and in sufficient detail to permit the Court to determine whether information falls within the scope of such objections; and (iii) answer any portion of the Interrogatory that is not claimed to be objectionable.

8.	If You object to any Interrogatory or part thereof on the basis of attorney/client, work-product, or any other privilege or basis for non-production, identify the privilege claimed, as well as each statement or Communication for which such privilege is claimed, together with the following information with respect to each such statement or communication: (a) the date made; (b) the name(s) of person(s) present or who were parties to the statement or communication; (c) the subject matter; and (d) every fact supporting the claim that the information is privileged or covered by other grounds for non-production.

9.	If You elect to answer any Interrogatory in the manner provided by Federal Rule of Civil Procedure 33(d) (as incorporated by Federal Rule of Bankruptcy Procedure 7033), identify the documents with specificity (by Bates number, where possible), identify the name of

the employee certifying the documents as business records, and produce them, organized according to Interrogatory number so answered. All Documents should be produced in the manner, form, and position in which they are kept in the ordinary course of business.

10. For the purposes hereof, the reference to any entity shall include any and all past or present officers, directors, employees, associates, consultants, attorneys, representatives, and agents or any other Person or entity representing such entity or acting on its behalf as well as any and all affiliate entities, predecessors and successors in interest, and their respective officers, directors, employees, associates, consultants, attorneys, representatives, and agents.

## DEFINITIONS

Pursuant to Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"), the uniform definitions and rules of construction set forth in Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (the "Local Civil Rules") are incorporated fully herein. In addition, the following definitions shall apply to each and every Interrogatory:

1. "Calculation Statement" shall mean any of the spreadsheets attached to the Proofs of Claim as Exhibit C, any amendments or modifications thereto, or any other calculations, valuation statements, schedules, data, or other information and materials sent by Credit Suisse to the Debtors as required by Section 6(d) of the relevant Swap Agreements.

2. "Close-out Amount" has the same meaning as that term is used in the 2002 ISDA Master Agreement or the August 29, 2008 Close-out Amount Multilateral Agreement, including any amendments thereto.

3. "Credit Suisse," "You" and "Your" shall mean Credit Suisse, including any entity from which or to which any claim reflected in any Proof of Claim has been assigned or otherwise

-4-

transferred, in whole or in part, and any person acting on its behalf or under its control, including any of its employees, agents, subsidiaries, affiliates, predecessors, successors, or representatives, and shall include, but not be limited to, personnel or entities in any management position, any support group, any back-office, middle-office, or front-office function, any product control or similar group, any sales or trading function, any entity or group that may provide credit valuation adjustments ("CVA"), any entity or group with any responsibility for counterparty or other risk management, any information technology group, any treasury group, any finance group, and any operations group.

4.  "Debtor" or "Debtors" shall mean, individually or collectively, Lehman Brothers Holdings, Inc. ("LBHI"), Lehman Brothers Special Financing, Inc. ("LBSF"), Lehman Brothers Commercial Corporation ("LBCC"), Lehman Brothers Commodity Services, Inc. ("LBCS"), and their affiliated debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases and, where applicable, their former and present agents, successors, predecessors, attorneys, advisors, investigators, employees, representatives, subsidiaries and affiliates, or other persons acting, or who have acted, on their behalf.

5.  "Derivatives Questionnaire" shall mean the questionnaire, responses, and supporting data and information submitted by You in connection with any Proof of Claim pursuant to the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Bankr. Doc. No. 4271).

6.  "Early Termination Amount" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto.

**7.** "Early Termination Date" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto.

8. "Including" shall mean "including, but not limited to," and is intended to illustrate the kinds of information responsive to each Interrogatory. Phrases following "including" are not intended to be exhaustive of the materials sought by the Interrogatory and shall not in any way be read to limit the scope of the Interrogatory.

9. "Persons" shall, as applicable, include current and former employees, officers, agents, and individuals associated with Credit Suisse.

10. "Proofs of Claim" shall mean, as applicable, any one, or more, or all of the Proofs of Claim identified on Schedule 2 attached hereto, filed by Credit Suisse in the Bankruptcy Proceedings, together with any materials submitted therewith or attachments thereto, including without limitation any Calculation Statement.

11. "Regulator" shall mean any or all of the Securities and Exchange Commission, the Federal Reserve Board, the Federal Reserve Bank of New York, the United States Department of Treasury, the Securities Investor Protection Corporation, the Office of the Comptroller of the Currency, the Financial Services Authority (U.K.) or any predecessor or successor bodies, the New York State Department of Financial Services (including any subsidiary or predecessor body, such as the New York State Banking Department), or any other state, federal, national, multinational, market, industry, governmental, or quasi-government body, foreign or domestic.

12. "Replacement Transaction" shall mean: (a) any actual, proposed, hypothetical, or contemplated transaction or transactions entered into by You, on Your behalf, or for Your benefit, in order to (i) replace any Swap Agreement or Terminated Transaction on a transaction,

-6-

agreement, portfolio or other basis or (ii) replace, mitigate, or hedge risks or losses concerning any Swap Agreement or Terminated Transaction on a transaction, agreement, portfolio or other basis; (b) any actual, proposed, or hypothetical transaction and/or internal model that You used to calculate alleged damages, losses, costs, expenses, and/or any other amounts owed to or by You in connection with or under any Swap Agreement.

13. "Swap Agreement" shall mean any or all the agreements identified on Schedule 1 attached hereto, specifically including (i) the relevant ISDA Master Agreement(s); (ii) any Schedules thereto; (iii) any Credit Support Annexes to the Schedules; (iv) the Confirmations of the Transactions; and (v) all amendments to the foregoing, including without limitation any amendments that may have been made by operation of the August 29, 2008 Close-out Amount Multilateral Agreement.

14. "Terminated Transaction" has the same meaning as that term is used under any applicable Swap Agreement, including any amendments thereto, and shall also mean any group of Terminated Transactions.

15. Any capitalized terms not defined herein shall have the meaning set forth in the relevant Swap Agreement.

**INTERROGATORIES**

1. Identify all Persons who were involved in, present for or informed of Your evaluation, assessment, determination, or calculation of Your counterparty credit, market, litigation or other risk or exposure vis-à-vis the Debtors.

2. Identify all Persons who have knowledge of any communications or analysis by You or on Your behalf concerning Your rights or obligations under the terms, whether individually or collectively, of any ISDA Master Agreement, the Swap Agreements and/or any

Terminated Transactions thereunder.

3. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any valuations, calculations, quotations, bids, or trades with respect to any Terminated Transaction or Replacement Transaction.

4. Identify all Persons, including but not limited to any traders, who have knowledge of, participated in, or exercised any responsibility regarding closing out any transaction or trade relating to the Swap Agreements, including all Persons who have knowledge of, participated in, or exercised any responsibility in balancing or managing Your derivatives portfolio vis-à-vis the Debtors.

5. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any actual, proposed or contemplated hedging or risk management procedures, policies, or actions relating to any ISDA Master Agreement, the Swap Agreements and/or any Terminated Transactions thereunder.

6. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any actions You took, considered, or proposed, or were asked to take, consider, or propose in connection with closing out of any transaction, trade, portfolios or derivative agreements that any third party had with Debtors.

7. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding Your practices, policies or procedures for valuing or marking derivatives positions relating to the Swap Agreements or other similar derivatives transactions with any counterparty.

8. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any determination or calculation of any actual, proposed, or

-8-

contemplated Early Termination Date, Close-out Date or determination of event of default under any Swap Agreement.

9. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any determination of any actual, proposed, or contemplated Early Termination Amount or Close-out Amount under any Swap Agreement.

10. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding the manner and methodology You used or considered in netting or otherwise off-setting any Terminated Transactions, whether on an individual, agreement, portfolio, or other basis, in calculating any actual or contemplated Early Termination Amount or Close-out Amount under any Swap Agreement.

11. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding the determination, calculation, or claim of any adjustment or add-on, whether as a result of calculating a bid-ask spread or otherwise, You made or considered in calculating any Early Termination Amount or Close-out Amount, or which are otherwise reflected in Your Proofs of Claim.

12. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding the activities that occurred at the Federal Reserve Bank of New York between September 12, 2008 and September 15, 2008, including the emergency derivatives trading session proposed at the request of the Federal Reserve Bank of New York on September 14, 2008.

13. Identify all Persons who have knowledge of, participated in, or exercised any responsibility regarding any statement or submission made by You, whether in public or private,

-9-

to any Regulator or credit rating agency concerning Your trading activity under the Swap Agreements, any ISDA Master Agreement, or any similar derivatives transactions or agreements.

14. Identify all Persons who have knowledge of, participated in, or exercised any responsibility, or participated in any communications or analysis, regarding the preparation of any of the Proofs of Claim or any individual claim, statement, averment, or calculation, in any Proof of Claim, including any Calculation Statement.

15. Identify all Persons who have knowledge of, participated in, or exercised any responsibility, or participated in any communications, regarding the preparation of any Derivatives Questionnaire or any individual responses included in any Derivatives Questionnaire, including all Persons involved in any way with the collection, preparation, organization, and submission of any data or information supplied by Credit Suisse in connection with any Derivatives Questionnaire.

Dated: February 25, 2014
      New York, New York

Respectfully submitted,

JONES DAY

*/s/ Jayant W. Tambe*
Jayant W. Tambe
Laura Washington Sawyer
Benjamin Rosenblum
Patrick J. Smith
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

*Attorneys for Lehman Brothers Holdings Inc.*

## **SCHEDULE 1**

1. ISDA Master Agreement between LBSF and CS International, dated as of September 12, 2008 (Contract ID:  79280CSFLLBSF)

2. ISDA Master Agreement between LBSF and CS, dated as of August 20, 2004 (Contract ID:  071597QCSFLBSF)

3. ISDA Master Agreement between LBCS and CS Energy, dated as of May 17, 2006 (Contract ID:  051706CREDLBCS)

4. ISDA Master Agreement between LBCC and CS, dated as of August 20, 2004 (Contract ID:  071597QCSFLBCC)

5. ISDA Master Agreement between LBSF and CS Europe, dated as of June 6, 1997 (Contract ID:  051697CFBELBSF)

6. ISDA Master Agreement between LBCC and CS Europe, dated as of September 28, 1998 (Contract ID:  051697CFBELBCC)

7. ISDA Master Agreement between LBCC and CS International, dated as of December 18, 1995 (Contract ID:  79280CSFLLBCC)

8. ISDA Master Agreement between LBCS and CS International, dated as of March 23, 2008 (Contract ID:  79280CSFLLBCS)

## **SCHEDULE 2**

1. Claim No. 22812
2. Claim No. 22813
3. Claim No. 22815
4. Claim No. 22816
5. Claim No. 22817
6. Claim No. 22820
7. Claim No. 22821
8. Claim No. 22828
9. Claim No. 22841
10. Claim No. 22842
11. Claim No. 22843
12. Claim No. 22847
13. Claim No. 22848
14. Claim No. 22849
15. Claim No. 22852
16. Claim No. 22853
17. Claim No. 22854
18. Claim No. 22856

-13-

## CERTIFICATE OF SERVICE

I, Patrick J. Smith, hereby certify that on this day, February 25, 2014, a true and correct copy of the foregoing Plaintiffs' First Set of Interrogatories to Defendants was served on Michael A. Paskin and Margot A. Miller of Cravath, Swaine & Moore LLP, counsel for Defendants, via electronic mail.

/s/ *Patrick J. Smith*
Patrick J. Smith