**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

**LEHMAN BROTHERS HOLDINGS INC., et al.**

**Debtors.**
-------------------------------------------------------------x

**Chapter 11**
**Case No. 08-13555 (SCC)**

### APPLICATION FOR AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 DIRECTING EXAMINATION AND PRODUCTION OF CERTAIN DOCUMENTS

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Fondo de Proteccion Social de los Depositos Bancarios, f/k/a Fondo de Proteccion Social de los Depositos Bancarios y Proteccion Bancaria ("FOGADE"), by its attorneys, White & Wolnerman, PLLC, submits this application (the "Application") seeking the entry of an order (the "Order") pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"): (i) authorizing FOGADE, by its counsel, to issue subpoenas upon the Debtors, Epiq Systems ("Epiq"), and the plan administrator (the "Plan Administrator"), directing the production of documents, as more fully identified on Exhibit "A" attached hereto, and further directing the oral examination of a representative of the Plan Administrator and the Debtors concerning the Documents and information requested therein; (ii) authorizing the issuance of third party subpoenas, including subpoenas directed to Lehman Brothers Treasury Co. BV, Euroclear Brussels, Clearstream and Smith Rocke, Ltd. related to distributions made on account of the structured notes which are the basis for FOGADE's allowed distributions; and (iii) allowing, as may be necessary, for the submission of commissions to allow for the discovery outside of this District and overseas. In support of the relief requested in this Application, FOGADE respectfully submits as follows:

## BACKGROUND

1. As will be set forth below, this Application follows this Court's order entered March 30, 2018 which directed the release of information pertaining to FOGADE's allowed claims in the Lehman Brothers Holdings Inc. ("LBH") bankruptcy case and FOGADE's investigation that followed. A copy of the March 30, 2018 Order is annexed hereto as Exhibit "B."

2. Specifically, FOGADE's allowed claims pertain to distributions on account of certain notes that it succeeded in interest to as a result of its takeover of two failed Venezuelan banks, Banco Canarias de Venezuela, C.A. ("Banco Canarias") and Banco Canarias' affiliate Credican, S.A. ("Credican"). Following information received upon the entry of the March 30, 2018 Order, FOGADE conducted an investigation into the structured notes and the distributions it was receiving on account of them. It then learned that in addition to the distributions made on account of FOGADE's allowed claims by LBH, a separate and parallel set of distributions have been and continue to be made by an LBH Dutch affiliate, Lehman Brothers Treasury Co. BV ("Treasury") on account of the same structured notes that backstopped the LBH distributions (the "Treasury Distributions"). FOGADE has not received any of the Treasury Distributions and does not know who has or under what possible claim of authority they are being made. As a result, it continues to lack fundamental information concerning its allowed claims and their relationship to the Treasury Distributions. This includes, *inter alia*: (i) whether and to what extent the Treasury Distributions limit the distributions being paid out on account of FOGADE's allowed claims; (ii) the identity of any recipients of the Treasury Distributions, and under what authority those distributions are being made; and (iii) documentation concerning the distributions, including the underlying securities and any purported assignments of the same. Our attempts to get this information voluntarily have not proven fruitful, necessitating this Application.

**A.    The LBH Bankruptcy and the FOGADE Claims**

3.    On September 15, 2008, LBH and 22 of its affiliates filed voluntary bankruptcy cases (collectively, the "Case" or "LBH Case") under Chapter 11 of 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code") in the bankruptcy court for the Southern District of New York.[1] In connection therewith, Banco Canarias and Banco Canarias' affiliate Credican, S.A. filed claim numbers 62726, 62722 and 64729 in the LBH Case (the "Claims"). The Claims were thereafter allowed pursuant to a Stipulation of Settlement (Exhibit "C" hereto) and, as was subsequently discovered, pursuant to the order of this Court dated August 10, 2011 and Notice dated August 24, 2011 (Exhibit "D" hereto), following which distributions have been made thereon.

4.    As is explained in detail in the Declaration of Gustavo Soto M., FOGADE's International Representative, dated February 14, 2018 [Doc. No. 57673-3] and filed in connection with FOGADE's Motion to Direct the Release of Documents (Exhibit "E" hereto), FOGADE did not file the original proofs of claim, nor did FOGADE settle them. On November 2, 2009, a little over a year after the filing date, Banco Canarias and its affiliate, Credican filed the Claims. Shortly thereafter, on November 19, 2009, the Superintendencia de las Instituciones del Sector Bancario ("SUDEBAN") intervened in Banco Canarias. On November 27, 2009 SUDEBAN appointed FOGADE as the liquidator of Banco Canarias, but no appointment was made at that time for the liquidation of Credican. As a consequence, Credican continued to operate under SUDEBAN's supervision. Over four and one half years later, on May 19, 2014, SUDEBAN appointed FOGADE as the liquidator of Credican.

---

[1] Shortly thereafter, on September 19, 2008, Lehman Brothers, Inc. filed under the Securities Investor Protection Act of 1970, 15 U.S.C. §78aaa *et seq.*, in the bankruptcy court for the Southern District of New York under Case No. 08-01420 (SCC) (the "SIPA Case").

3

5.      As is further explained in the Soto Declaration, FOGADE had very little information available to it following its takeover of Credican. With respect to the Claims, it only possessed a poor version of the settlement agreement affecting Claim 62726 (the "Settlement Agreement") and no documentation pertaining to Claim 62722, despite best efforts to secure the assets of the institutions it was charged to liquidate. While it understood that it was the holder of the allowed Claims, it lacked basic information concerning them, including the underlying structured notes.

B.      **The Smith Rocke Litigation**

6.      Another aspect of FOGADE's Claims is worth bringing to this Court's attention as it appears increasingly relevant. Following FOGADE's appointment over Banco Canarias and subsequent to SUDEBAN's intervention in Credican, Smith Rocke Ltd., ("Smith Rocke") a British Virgin Island Company, claimed to be a shareholder of Credican. In an action commenced in the United States District Court, Southern District of New York, Case No. 12-07316 against, among others, the Republic of Venezuela, FOGADE and SUDEBAN, Smith Rocke claimed that the Defendants misappropriated promissory notes and other assets belonging to the LBH estate (the "Smith Rocke Action"). Smith Rocke acquired shares in Credican from former Credican Shareholders who apparently received in exchange shares in Smith Rocke. These shareholders, in addition, assigned to Smith Rocke whatever their interest was in the notes and the assets securing them. FOGADE eventually established its right and interest in the Credican assets and, more specifically, distributions being made thereunder pursuant to the Claims, in both the Smith Rocke Action and in proceedings before this Court.

7.      The District Court dismissed the Smith Rocke Action by Order & Opinion dated January 27, 2014 (Exhibit "F" hereto). That order became final when Smith Rocke abandoned its appeal from the same.

8.      Following FOGADE's appointment over Credican it inquired concerning the Claims and learned that various transfers were made in derogation of its interests, including the transfer of two claims from Banco Canarias (then in liquidation) to Credican (in supervision). The transfer of claims form utilized Chadbourne & Park's address; Chadbourne & Park represented Smith Rocke in the Smith Rocke Action. FOGADE moved to designate its then attorney, Diaz, Reus & Targ, LLP ("DRT"), as distribution agent and Chadbourne & Park initially appeared for Smith Rocke and opposed the application. Subsequently, Chadbourne & Park withdrew its opposition. By Order dated October 28, 2014, this Court granted FOGADE's motion to designate DRT as its agent for receipt of all distributions in the Bankruptcy Cases.

C.      **FOGADE's Request for the Release of Documents**

9.      Following the apparent resolution of the Smith Rocke dispute, on FOGADE's motion, this Court entered an Order dated February 25, 2016 (the "LBH Agency Order") substituting Homer Bonner Jacobs, P.C. ("HBJ") and Otterbourg, P.C. as FOGADE's counsel and appointed HBJ as distribution agent. Thereafter, following HBJ's notice of withdrawal, FOGADE retained its present counsel, White & Wolnerman, PLLC ("W&W"), by Stipulation and Order entered on January 26, 2018 [Doc. No. 57560]. Under the same stipulation FOGADE's foreign counsel, Escritorio Juridico Financiero Soto & Asociados, was appointed as the distribution agent.

10.     Once these substitutions were accomplished, FOGADE sought information that it lacked pertaining to its Claims. As stated in the Soto Declaration, the only documentation

5

located at Credican following the takeover consisted of a poor quality copy of the Settlement Agreement pertaining to Claim 62726. FOGADE assumed a similar agreement existed with respect to Claim 62722 and requests were made to Epiq to provide documentation concerning the allowance of both claims.

11. Epiq, upon consultation with counsel, refused to provide the information to FOGADE voluntarily, insisting on a court order. Application was duly made. As set forth therein, the documents were needed for the following reasons: A) FOGADE is a government agency, and for administrative and legal reasons must have complete and detailed control of all assets under its jurisdiction and an ability to fully account for all monies received and spent; and B) should FOGADE decide to sell its interest in the Claims it would require the disclosure of the documents backing up its position. These considerations are fully relevant to the present Application.

12. No objection was raised to the Motion Directing the Release of Documents. However, counsel for the Plan Administrator negotiated the form of the proposed order, filed on consent of the parties, and this Court signed the March 30, 2018 Order. The March 30, 2018 Order provides:

> ORDERED that the Debtors, their agents, servants and employees, including the Plan Administrator, Debtors' counsel and Epiq Systems, Inc. upon the entry of this Order release true and complete copies of all settlement agreements pertaining to the allowed claims 62722 and 62726 to FOGADE through FOGADE's counsel, White & Wolnerman, PLLC; and it is further
>
> ORDERED that the foregoing is with a full reservation of FOGADE's right to seek additional documents and the Debtors, their agents, servants and employees, including the Plan Administrator, Debtors' counsel and Epiq Systems, Inc.'s right to object to the same.

13.     In connection with the foregoing we received a complete copy of the Settlement Agreement. We also learned and obtained the order and notice demonstrating that Claim 62722 was allowed by this Court (See Exhibit "D" hereto).

**D.     The Treasury Bankruptcy, the Structured Notes, Parallel Distributions and the April 23, 2018 Requests Directed to Epiq.**

14.     As was previously noted, one purpose for seeking information concerning the Claims was to determine their present value with respect to present and future distributions. In its attempt to do just that FOGADE uncovered information it was previously unaware of and which has raised issues far beyond the issue of value (which remains a pressing and unanswered concern).

15.     In particular, FOGADE, by tracing the ISIN numbers identified on the notices, learned about the Treasury Distributions. Following this, a letter was sent to Epiq on April 23, 2018 (the "April 23 Letter") requesting information concerning the distributions, (Exhibit "G" hereto).

16.     As is set forth in the April 23 Letter, FOGADE's remaining allowed claims total $72,394,896.58. On this amount disbursements totaling $20,264,701.99 have been made totaling slightly less than 28% of the Claims. However, and previously unknown to FOGADE, *during this same period of time Treasury made disbursements to unknown recipients on account of the same structured notes totaling $25,852,287.27*. These disbursements are itemized in the charts contained in the April 23 Letter.

17.     Based on this, FOGADE made the following requests for information in the April 23 Letter:

> 1. Is any entity other than LBH paying the allowed claim amounts indicated in both the Settlement Agreement and the Court Order (i.e. LBI or LBT)?

7

2. If so:

    A. Besides the notices of distribution which indicate cumulative disbursement payments, is there another way to ascertain how much of FOGADE's claims have been paid, including the percentage and nominal amounts?

    B. Under what authority are such payments being made and which person is being paid?

3. If not:

    A. Since the structured notes were owned by Credican how is it possible that disbursements are being made by Treasury on account of the same underlying securities to other parties.

    B. Under what authority are such payments being made and which person is being paid?

4. What is LBH's position concerning how much of the Claims have been paid and how much is due?

5. Under what timeframe will that balance be liquidated?

6. What are the risk factors, if any, that could reduce or jeopardize FOGADE's recovery of the unpaid balance?

7. Credican maintained other positions with Lehman (i.e. Lehman Brothers Treasury claim # 900003945 -LBI FOGADE Claim). Would you please provide us with a history of all past payments from any Lehman Brothers related entities to FOGADE/Credican and the corresponding wire/payment confirmations?

While some additional information was received, these fundamental questions remain unanswered.

**E.**     <u>**Requests Directed to Houthoff**</u>

18. We received an initial email response from Epiq on April 23, acknowledging receipt, advising that the letter is being reviewed by the Plan Administrator, Lehman and its counsel, and further advising us that, "The LBT liquidation is being administered by Houthoff Buruma in the Netherlands and I would encourage you to review their website and reach out to

8

them for more clarity specifically to those [Treasury Distribution] payments." To date, no further information has been forthcoming from Epiq, the Debtors or the Plan Administrator.

19. Some information was gleaned from the website, however, including as we now understand it that Treasury is an affiliate of LBH that funded some portion of LBH's operations through the issuance of structured notes, including those in which FOGADE now has an interest. LBH guaranteed those notes and the allowed claims are, apparently, based on those guarantees. Treasury further asserted a claim against LBH in the LBH case which was settled and the settlement is as we understand it the principal source of Treasury's funding and backstops its composition plan approved by the Dutch Court. In connection with that plan Treasury has been making distributions on the structured notes, including those at issue here bearing ISIN XS0258731909, ISIN XS0295087042 and ISIN XS0295087125. We are still without any information concerning how those Treasury Disbursements impact the Claims and the other unanswered questions posed to Epiq in FOGADE's April 23 Letter.

20. In a further attempt to get full and complete responses to FOGADE's questions, we contacted Houthoff, first by email on April 24, 2018, (Exhibit "H" hereto). In a discussion that followed we were advised that the only instance where a noteholder would not receive distributions from both LBH and Treasury is where Treasury was not the issuer of the notes. In this case it appears that Treasury was the issuer of the notes. Nevertheless, FOGADE has not received any distributions from Treasury.

21. By follow up email on April 25, 2018 we sent Houthoff a copy of the April 23 Letter. We received by email sent April 26, 2018, (Exhibit "I" hereto), the following response:

> Lehman Brothers Treasury Co. B.V. in liquidation ("LBT") issued various notes, including the ISINs you mention in your letter. LBT is in liquidation and solely still exists to make distributions to its creditors, in particular holders of notes LBT issued. LBT has made 13 distributions so far. LBT makes distributions in

9

> accordance with the Composition Plan (available at https://lehmanbrotherstreasury.com).
>
> Lehman Brothers Holdings Inc. ("LBHI") guaranteed the notes issued by LBT. LBHI also makes distributions on notes issued by LBT. Please note that our firm is only involved in the liquidation of LBT.
>
> LBT makes distributions on the notes it issued via clearing institutions such as Clearstream and Euroclear. Intermediate custodians hold the notes for noteholders either directly via an account at these clearing institutions or indirectly via one or more other intermediate custodians who in turn hold an account at these clearing institutions. The intermediate custodians arrange for the onwards distribution to noteholders of distributions received through the clearing institutions. Ultimately, distributions by LBT arrive at the securities accounts of the various noteholders on which they hold their respective notes.
>
> Should you have any questions regarding the whereabouts of distributions made by LBT on LBT notes held by Banca Canarias and/or Credican's, please contact the custodian through which Banca Canarias and/or Credican hold the respective LBT notes.

22. In response to the foregoing we requested by email sent on April 26, 2018 (Exhibit "J" hereto) the following:

> For point of reference, we are talking about three securities: 1. ISIN XS0258731909; 2. ISIN XS0295087042; and 3. ISIN XS0295087125. As to each could you please advise us as follows:
>
> 1. To which of these clearing institutions have Treasury's distributions been made?
>
> 2. Which, if any, of the clearing institutions is acting as a direct custodian of the securities and which, if any, is acting as an indirect custodian?

In addition, we asked Houthoff to verify that these were the only other Credican obligations receiving distributions from Treasury.

23. Houthoff answered this email on June 5, 2018 (Exhibit "K" hereto) by advising us:

> I contacted Euroclear. They informed me that they do not know who is below in the custody chain. They only see the direct participant who holds an account with Euroclear regarding the respective ISINs in their systems. They do not know for which entities the

direct participants hold the notes and whether Banco Canarias de Venezuela, C.A. and Banco Canarias' affiliate Credican, S.A. is one of them.

This response left unanswered the fundamental question of to whom and under what authority the Treasury Distributions are being made.

F.      **The Clearstream and Euroclear Inquiries.**

24.     Based on this information we attempted to contact Euroclear and Clearstream directly using the limited publically available information for that purpose. Copies of the letters directed to these companies are annexed hereto as Exhibit "L".

25.     We received from this contradictory information concerning the structured notes at issue and in either event no information identifying the alleged holders of the notes and the recipients of the distributions. By email dated May 30, 2018, Euroclear indicated, "the mentioned ISIN codes are not eligible in Euroclear Belgium, Euroclear France or Euroclear Nederland, therefore we cannot take into account your question/request." This would suggest that Clearstream is the distribution agent for Treasury on the notes. However, the Houthoff response that came several days later on June 5, 2018, annexed hereto as Exhibit "K", contradicted this stating, "…[t]hey only see the direct participant who holds an account with Euroclear *regarding the respective ISINs* in their systems…" (Emphasis added).

26.     The only response on behalf of Clearstream was an email from its counsel, Carter Ledyard & Milburn LLP. The firm reserved its client's rights and promised a follow up response which was never forthcoming.

27.     As the foregoing makes clear, FOGADE has made numerous attempts to obtain voluntarily information concerning its allowed claims and the distributions paid and to be paid thereon. This includes information concerning the remaining distributions to which it is entitled and how those distributions may be impacted by the Treasury Distributions it recently learned

11

have been taking place. It also includes understanding how and under what authority those same distributions are being made and whether they are being converted. The present Application is made in order to obtain this information under the authority of this Court and pursuant to Bankruptcy Rule 2004.

## JURISDICTION AND VENUE

28. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § l57(b). Venue is properly before this Court under 28 U.S.C. §§ 1408 and 1409. The legal predicate for the relief sought herein is Bankruptcy Code Section 105 and Bankruptcy Rules 2004 and 9016.

## RELIEF REQUESTED

29. FOGADE is seeking documents that underlie its allowed claims, as well as other information in the Debtors, Epiq, and the Plan Administrator's possession custody and control pertaining to the structured notes and any other asset in which FOGADE possesses an interest by virtue of its appointment over Banco Canarias and Credican. FOGADE is also seeking to examine representatives of the Debtors, Epiq and the Plan Administrator concerning such documents, the allowed claims, the Treasury structured notes, the Debtors' settlement with Treasury, the distributions on account of the structured notes and the relationship between the distributions by the Debtors on account of the secured notes and the Treasury Distributions. Finally FOGADE is seeking leave to serve third party subpoenas and seeks commissions in order to obtain information pertaining to these issues in the possession of those third parties.

## BASIS FOR RELIEF

30. Pursuant to Rule 2004 of the Bankruptcy Rules, upon the motion of any party in interest, the Court may order the examination of any person and the production of documentary

evidence relating to the property and financial condition and operations of a debtor, or to any matter which may affect the administration of the debtor's estate. FOGADE submits that the relief requested herein relates to the property and financial condition of the Debtors' estates, as well as the administration of the Debtors' estate, particularly as concerns the Claims and the distributions being made on account of the same, and are therefore within the parameters of Rule 2004 of the Bankruptcy Rules.

31.     Bankruptcy Rule 2004 states, in relevant part:

(a)     <u>Examination on Motion</u>. On motion of any party in interest, the court may order the examination of any entity.

(b)     <u>Scope of Examination</u>. The examination of an entity under this rule … may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

(c)     <u>Compelling Attendance and Production of Documentary Evidence</u>. The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

32.     Bankruptcy Rule 2004 provides for very broad discovery. "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (*citing Cameron v. United States*, 231 U.S. 710, 717 (1914); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993) ("Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation."), *aff'd* 17 F.3d 600 (2d Cir. 1994); *In re*

13

*Millennium Lab Holdings II, LLC*, 562 B.R. 614 (Bankr. Del. 2016) (affirming post-confirmation employment of Rule 2004).

33. Indeed, the investigative power embodied in Rule 2004 is so broad that an examination thereunder can "legitimately be in the nature of a fishing expedition." *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); *see also In re Hilsen*, No. 87-11261, 2008 Bankr. LEXIS 2123, at 1-2 (2d Cir. July 25, 2008) (same); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (same); *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984) (same).

34. Here, the predicate for the discovery sought by FOGADE has been clearly established. The Debtors, the Plan Administrator and its agent Epiq have information directly relevant to FOGADE's allowed claims and the distributions it is receiving. In addition thereto, the issues concerning the distributions raise concerns about whether FOGADE's rights have been compromised and the information and examinations being requested will shed light on this and safeguard the bankruptcy process against its potential abuse. As a matter of law, equity and comity the present Application should be granted.

**WHEREFORE,** Fondo de Proteccion Social de los Depositos Bancarios, f/k/a Fondo de Proteccion Social de los Depositos Bancarios y Proteccion Bancaria requests entry of an order authorizing and directing the production of documents, as more fully identified on *Exhibit A* attached hereto, and the oral examinations of a representative of each of the Debtors, the Plan Administrator and Epiq, allowing for the issuance of third party subpoenas and commissions as warranted and granting Fondo de Proteccion Social de los Depositos Bancarios, f/k/a Fondo de Proteccion Social de los Depositos Bancarios y Proteccion Bancaria such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 2, 2018

**WHITE & WOLNERMAN, PLLC**

By: /s/ Randolph E. White
Randolph E. White
950 Third Avenue, 11th Floor
New York, New York 10022
*Counsel to FOGADE*