Hearing Date and Time: August 14, 2018 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: July 31, 2018 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re                                                   :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                :    08-13555 (SCC)
                                                        :
              Debtors.                                  :    (Jointly Administered)
                                                        :
------------------------------------------------------------x

**MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF**
**EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11**
**PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan")[1] for the entities in the above-referenced chapter 11 cases, respectfully represents:

**PRELIMINARY STATEMENT**

1.  By April 2014, Lehman Brothers International (Europe) ("LBIE"), a non-debtor Primary Obligor under the Plan, made distributions of (or reserved for disputed claims)

---
[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1

100% of principal on the Primary Claims asserted against LBIE. Due to the interaction between (x) a Plan provision converting consideration in foreign currency using confirmation-date exchange rates and (y) the Bankruptcy Code provision converting amounts of foreign currency Guarantee Claims using petition date exchange rates, certain Guarantee Claims based on Primary Claims against LBIE were entitled to receive additional consideration from LBHI before being deemed satisfied in full under the Plan. However, given the widely-anticipated surplus expected to be available for additional distribution by LBIE as consideration on Primary Claims, the Plan Administrator sought, in June 2015, to estimate or object to essentially all Guarantee Claims based on a Primary Claim against LBIE – so that LBHI would not unnecessarily have to reserve for or make Distributions on any such claims. Indeed, on a consensual basis, virtually all LBIE-based Guarantee Claims were either estimated to be zero for all purposes, withdrawn, or deemed satisfied in full.

2. Notwithstanding the foregoing, Deutsche Bank AG and certain of its affiliates (collectively, "Deutsche Bank") and Attestor Value Master Fund LP ("Attestor," and together with Deutsche Bank, the "Remaining Claimants") held and continue to assert Guarantee Claims against LBHI (the "Remaining Claims") based on Primary Claims against LBIE. The Remaining Claimants had argued, among other things, that the likelihood, amount, and nature of any additional distributions or consideration paid by LBIE on the Primary Claims were uncertain. As a result, LBHI is required to reserve and withhold from distribution to holders of all other allowed claims more than $220 million in cash and assets.

3. Meanwhile, LBIE has proposed and won creditor and English court approval of a scheme of arrangement (the "LBIE Scheme"), which this Court recently recognized in LBIE's chapter 15 proceeding. The LBIE Scheme became effective on June 20,

2

2018. The likelihood, amount, and nature of additional consideration by LBIE on Primary Claims is now certain. As established below, pursuant to the LBIE Scheme, LBIE will provide additional consideration on Primary Claims equal to a minimum of 38.43% of such Primary Claims (the "Subsequent LBIE Distribution"), bringing the total consideration from LBIE to at least 138.43% on Primary Claims.

4. The Plan Administrator and the Remaining Claimants agreed to narrow their disputes regarding the Remaining Claims to one dispositive issue of Plan interpretation: whether the Subsequent LBIE Distribution is "consideration provided on the corresponding Primary Claim" within the meaning of Section 8.13 of the Plan. The parties agreed to seek a determination of this issue from the Court at this time. The parties further agreed that neither will object to the form of the motion by which such determination is sought.

5. The Plan Administrator believes it is beyond reasonable dispute that the Subsequent LBIE Distribution will be "consideration provided on the corresponding Primary Claim" within the meaning of Section 8.13 of the Plan. If the Plan Administrator is correct as to that construction, LBHI will not be required to maintain reserves for, or make Distributions on, the Remaining Claims, which will be deemed satisfied in full by LBIE alone in accordance with the Plan.

6. Accordingly, the Plan Administrator hereby seeks a determination in aid of consummation of the Plan in order (i) to prevent improper excess payments to the Remaining Claimants, at the expense of other creditors of LBHI, and (ii) to release reserves totaling more than $220 million in cash and assets that the Remaining Claimants have insisted that LBHI otherwise maintain.

**JURISDICTION**

7.       This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**BACKGROUND**

A.    **Chapter 11 Case Background**

8.       Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

9.       On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012.

B.    **LBIE's English-law Administration**

10.      LBIE is a subsidiary of LBHI that is not a debtor in the Chapter 11 Cases. On September 15, 2008, LBIE entered English administration proceedings pursuant to the English Insolvency Act of 1986. LBIE's estate is currently being wound-up by certain joint administrators not controlled by the Plan Administrator (the "Joint Administrators").

11.      By April 2014, LBIE had distributed to its unsecured creditors, with certain *de minimis* exceptions, 100% of the allowed amounts of their claims against LBIE.[2] In recognition of a potential surplus, the Joint Administrators commenced a series of proceedings in

---

[2] *Declaration of Russell Downs in Support of Verified Chapter 15 Petition and Related Relief* at ¶11, Case No. 18-11470-(SCC) (Bankr. S.D.N.Y. May 14, 2018), ECF No. 4 ("Downs Declaration").

4

the U.K. to determine certain issues relating to creditors' entitlements to the surplus (the "Waterfall Proceedings"). *See* Downs Declaration ¶12. The conclusion of the Waterfall Proceedings culminated in the LBIE Scheme. *Id.*

12. On June 5, 2018, the Joint Administrators announced that the LBIE Scheme had been approved by the required majority of its creditors.[3] On June 18, 2018, the LBIE Scheme was sanctioned by the English High Court and was recognized by this Court in LBIE's chapter 15 proceeding the following day.[4] The LBIE Scheme became effective on June 20, 2018.[5] The LBIE Scheme enables the Joint Administrators to "quickly and efficiently" distribute the remaining surplus to its creditors. Downs Declaration ¶12.

**C.    The Subsequent LBIE Distribution**

13. In relevant part, the LBIE Scheme provides that LBIE will make a surplus distribution on Primary Claims to:

- "8% Creditors," who will receive statutory interest at a rate of 8% per annum on the outstanding principal amount of their Allowed Primary Claim, calculated from September 15, 2008, to the date when the principal amount of their claim was paid in full (*e.g.*, 74 months for a total of 38.43%[6]); and

---

[3] *See Notice of Approval and Sanction Hearing*, dated June 5, 2018 (the "Creditor Approval Notice"). The Creditor Approval Notice is available at https://www.pwc.co.uk/business-recovery/administrations/assets/notice-of-approval-and-sanction-hearing.pdf.

[4] *See Order Recognizing Foreign Proceeding and Granting Related Relief*, Case No. 18-11470-(SCC) (Bankr. S.D.N.Y. June 19, 2018), ECF No. 15.

[5] *See* Joint Administrators' Announcement of the proposed scheme of arrangement, pursuant to Part 26 of the Companies Act 2006, for a full and final settlement in respect of surplus entitlements and the payment of statutory interest – notification of effective date, dated June 20, 2018 (the "Effective Date Notice"). The Effective Date Notice is available https://www.pwc.co.uk/services/business-recovery/administrations/lehman/update-announcement-of-the-proposed-scheme-of-arrangement-pursuant-to-part-26-payment-of-statutory-interest-date-20june-2018.html.

[6] Interest accrued on the outstanding amount, which decreased from time to time as LBIE made each of its prior distributions.

5

- "Higher Rate Creditors," who may elect to either:

    o receive the same amount as 8% Creditors receive plus an additional 2.5% of the value of their Allowed Primary Claims (*e.g.*, for a total of 40.93%); or

    o submit a certification for the rate and amount of interest applicable to their Higher Rate Claims. "In no event will a Higher Rate Creditor receive . . less than the minimum Statutory Interest of 8% per annum."

Downs Declaration ¶37-38. *See also* LBIE Scheme ¶¶ 5, 6, 7.[7]

14. There can be no dispute that the Subsequent LBIE Distribution is a payment from LBIE. *See e.g.*, LBIE Scheme ¶¶6.1, 7.1, and 9.1 ("the Company [*i.e.*, LBIE] shall pay").

15. Moreover, under the LBIE Scheme, an "8% Payment" is a payment of "Statutory Interest *in respect of* [] 8% Interest Claims . . . ." *See* LBIE Scheme ¶6.1.1 (emphasis added). The 8% Payment is calculated based on the principal amount of the underlying Admitted Claim. *See* LBIE Scheme ¶6.2. An "8% Interest Claim" is "a Provable Claim . . ." *See* LBIE Scheme ¶1.1. A "Provable Claim" is "a Claim provable in the Administration, in accordance with Rule 14.2 of the Insolvency Rules . . . ." *Id.* Generally, claims provable under Rule 14.2 of the Insolvency (England & Wales) Rules 2016 (the "Insolvency Rules") are "[a]ll claims by creditors . . . [that] are provable as debts against the company or bankrupt . . . ." Insolvency Rules 14.2.

**D.     Plan Provisions Governing Distributions**

16. Under the Plan and consistent with applicable law,

---

[7] By process of elimination, Remaining Claimants in the matter at hand are either holders of 8% Interest Claims or Higher Rate Claims. *See* Downs Decl. at fn. 14 ("[c]urrently, the only contract known by the Administrators that gives rise to a Specified Interest Claim is owned by LBHI").

> An . . . Allowed Guarantee Claim that receives Distributions . . . that combined with . . . Distributions or other consideration provided on the corresponding Primary Claim . . . equal the Allowed amount of such Guarantee Claim . . . shall . . . be deemed satisfied in full . . . .

Plan § 8.13(a). Accordingly, the Plan provides that, "[i]n no event shall . . . an Allowed Guarantee Claim receive Distributions . . . that combined *with Distributions or other consideration provided on the corresponding Primary Claim* . . . are in excess of the Allowed amount of the Guarantee Claim . . . ." *Id.* § 8.13(b) (emphasis added).

17. Claims against LBHI are valued in lawful currency of the United States as of LBHI's petition date, September 15, 2008. 11 U.S.C. §502(b); *cf.* Plan §8.13(d) ("Nothing contained in this provision shall affect the applicable exchange rate for determining the Allowed Amount of any Claim under section 502(b) of the Bankruptcy Code."). However, "[f]or the purposes of determining whether an Allowed Claim has been satisfied in full in accordance with Section 8.13(a) of the Plan,"

> all . . . consideration provided by a Primary Obligor in a currency other than the U.S. Dollar shall be converted to the U.S. Dollar applying the existing exchange rate derived from Reuters existing at approximately 3:00 p.m. GMT on the Confirmation Date [December 6, 2011].

*Id.* at §8.13(d).

18. LBIE's four interim distributions to creditors were made in British Pounds. As a result of the different conversion rates under the Plan, a Guarantee Claim, including a Remaining Guarantee Claim, may have been entitled to additional consideration from LBHI, before it is deemed satisfied in full under the Plan, even though the related Primary Claim against LBIE received 100% in distributions from LBIE by April 2014.

19. Pursuant to the Plan, the Plan Administrator has established reserves for each Disputed Claim based on Distributions that would have been made to the holder of such

claim if the claim were Allowed in the lesser of the filed amount of such claim, the amount determined by the Court for purposes of fixing the amount to be retained for such Disputed Claim, and the amount agreed upon by the holder of such Disputed Claim and the Plan Administrator. *Id.* at §8.4.

### E. The Reserve Stipulations

20. On June 10, 2015, and February 23, 2017, the Plan Administrator filed motions seeking to estimate essentially all LBIE-based Guarantee Claims at zero and to reduce the required reserves in light of the widely anticipated Subsequent LBIE Distribution [ECF Nos. 49954, 54904 (the "Estimation Motions").] Virtually all of these claims were estimated to be zero or withdrawn consensually on an uncontested basis. [*See*, *e.g.*, ECF Nos. 50298, 50824, 50948, 50977, 50978 (granting the Plan Administrator's motion to estimate on an uncontested basis).]

21. The Remaining Claimants objected to the Estimation Motions. They alleged at the time that, among a number of other things, it was "decidedly uncertain" that the Subsequent LBIE Distribution would ever happen. They also speculated any additional consideration from LBIE might not be enough to cover LBHI's guarantee obligations. They argued that maintaining reserves for the Remaining Claims does not "unduly delay" the administration of these cases because LBHI's allowed creditors have already recovered more than expected. They claimed that any entitlement to a Subsequent LBIE Distribution would "necessarily" increase their Primary Claim against LBIE, rather than satisfy it, and thereby increase their Guarantee Claim against LBHI. Finally, they suggested that the Subsequent LBIE Distribution would not be "consideration" within the meaning of section 8.13(a) of the Plan. *See*

*Objection of Deutsche Bank AG and Affiliates to Motion of Plan Administrator to Estimate Claims for Reserve and Distribution purposes*, at ¶¶4, 7, 14 (Mar. 21, 2017), ECF No. 55085.

22.   The Remaining Claimants have since agreed to drop all of their arguments other than their contention that the Subsequent LBIE Distribution will not be "other consideration provided on the corresponding Primary Claim" within the meaning of section 8.13(a) of the Plan.  In exchange, LBHI agreed to maintain a reserve for the Remaining Claims in the amount of more than $220 million in cash and assets until such time as this Court makes a determination on the applicability of section 8.13(a) of the Plan to the Subsequent LBIE Distribution (the "Reserve Stipulations").  At the time, a significant distribution on the Primary Claims was anticipated but the Waterfall Proceedings were ongoing and the specific amount of the payment had not yet been determined.

23.   If this Court determines that the Subsequent LBIE Distribution is "other consideration provided on the corresponding Primary Claim," the Remaining Claims will be fully resolved and LBHI will no longer be required to distribute or maintain any reserves on account of the Remaining Claims pursuant to the Reserve Stipulations.

**BASIS FOR REQUESTED RELIEF**

24.   It is well established that the Court has broad authority, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code, to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan."); 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or

9

appropriate to carry out the provisions of this title."); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (holding that bankruptcy courts retain post-confirmation jurisdiction to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. § 1142(b) . . . and it has continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.") (internal quotation marks omitted)).

25. In addition, as discussed above, both the Plan and the Confirmation Order provided for the Court's retention of jurisdiction over all matters arising under or related to, these Chapter 11 Cases, and both the Plan Administrator and the Remaining Claimants have agreed to seek the Court's determination of the pending issue.

### THE SUBSEQUENT LBIE DISTRIBUTION IS "OTHER CONSIDERATION PROVIDED ON THE CORRESPONDING PRIMARY CLAIM"

26. There are at least three reasons why the forthcoming Subsequent LBIE Distribution will be "other consideration provided on the corresponding Primary Claim" against LBIE. First, the Subsequent LBIE Distribution falls within the plain language of section 8.13(a). Second, it is the only interpretation consistent with the purpose of the section 8.13, other orders from this Court, fundamental principles of bankruptcy, and guarantee law's well established "single satisfaction" rule. Third, the nature of the Subsequent LBIE Distribution under English law puts it squarely within the meaning of section 8.13(a).

**A.    The Subsequent LBIE Distribution Falls within the Plain Language of Section 8.13(a)**

27. When interpreting a confirmed plan, the principles of contract law apply. *See In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013); *Official Comm. of Unsecured*

10

*Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006); *see Breeden v. Bennett (In re Bennett Funding Grp., Inc.)*, 220 B.R. 743, 758 (Bankr. N.D.N.Y. 1997) ("[T]he ... Plan became a binding contract ... and must be interpreted in accordance with general contract law.").

28.    Section 15.14 of the Plan specifies that the "rights and obligations arising under the Plan" are governed and should be enforced pursuant to New York law. Plan § 15.14. Under New York law, when interpreting an unambiguous contract, "[w]ords and phrases are given their plain meaning." *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (applying New York law). "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *In re Dynegy Inc.*, 486 B.R. at 590 (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir.1992)).

29.    The relevant contract question here is whether the Subsequent LBIE Distribution will constitute "other consideration provided on the corresponding Primary Claim." *See* Plan § 8.13(a).[8]

30.    "Consideration" is a widely used word throughout contract law and, unless qualified, captures the endless permutations by which parties can exchange value.[9] *See Goldman Sachs Grp., Inc. v. Almah LLC*, 85 A.D.3d 424, 427 (1st Dep't 2011) (the word "consideration"

---

[8] There is no dispute that LBIE is a Primary Obligor within the meaning of section 8.13(a) of the Plan. See Plan § 1.126 ("Primary Obligor means an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted."). Further, there is no question that the Subsequent LBIE Distribution will be a payment from LBIE. *See e.g.*, LBIE Scheme ¶¶6.1, 7.1, and 9.1.

[9] "Consideration" is most often associated with the requirement to render a contract enforceable: "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee; that which motivates a person to do something, [especially] to engage in a legal act." Consideration, Black's Law Dictionary (10th ed. 2014).

11

has a broad meaning unless the agreement suggests the parties intended a limitation). There is no qualifier on "consideration" in section 8.13(a) of the Plan. *Id.*

31. It is beyond a doubt that a cash payment is a type of "consideration."

32. Moreover, the Subsequent LBIE Distribution is consideration "provided on the corresponding claim." The Subsequent LBIE Distribution is a payment towards, and calculated based on the amount of, the Primary Claim.

33. The words "other consideration" in section 8.13(a) of the Plan should further be interpreted in conjunction with the preceding clause: "combined with Distributions." Plan § 8.13(a). "Distributions" is defined by the Plan as "any initial or subsequent payment or transfer made under the Plan." *Id.* § 1.47. Such language is very broad and includes postpetition interest on Primary Claims, including distributions of postpetition interest from Subsidiary Debtors that are Primary Obligors for Guarantee Claims. *See id.* § 8.13(c) ("each holder of each such Allowed Claim shall receive its Pro Rata Share of further Distributions, if any . . . in satisfaction of postpetition interest on the Allowed amount of such Claims . . . until such time as all postpetition interest on all such Allowed Claims has been paid in full.").

34. It would be an inconsistent and frankly absurd result to read section 8.13(a) of the Plan so as to count postpetition interest distributed by one affiliate of LBHI (*i.e.*, a Subsidiary Debtor) but not postpetition interest distributed by another affiliated Primary Obligor (here, LBIE) to determine when a Guarantee Claim against LBHI is satisfied. As postpetition interest counts as a Distribution, it makes no sense to read "other consideration" to exclude that very type of payment on a claim. *See generally Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 516 (2d Cir. 2001) (interpreting a contract to avoid a windfall when it was "hard to believe that the parties intended" such result based on the context of the dispute).

12

35. Indeed, this Court has entered orders stating that postpetition interest, parallel to the LBIE Subsequent Distribution, is a payment "on" an allowed claim. *See Order Sustaining Plan Administrator's Objection to Demands for Postpetition Interest Related to Claim No. 28308* (Mar. 12, 2017), ECF No. 54525 ("The parties are directed to submit an order fixing the allowed amount of postpetition interest *on* the Allowed Claim consistent with this Order.") (emphasis added).

B. **The Plain Meaning is the Only Interpretation Consistent with the Purpose of Section 8.13 of the Plan, Guarantee Law's Well-Established "Single Satisfaction" Rule and Fundamental Principles of Bankruptcy**

36. While the plain language of section 8.13(a) is clear, this Court has noted that the "meaning of particular language ... should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes *Lehman Bros. Special Fin. Inc. v. Bank of Am., N.A. (In re Lehman Bros. Holdings Inc.)*, 553 B.R. 476, 498–99 (Bankr. S.D.N.Y. 2016), *aff'd*, Case No. 17 Civ. 1224 (LGS), 2018 WL 1322225 (S.D.N.Y. Mar. 14, 2018), *appeal filed*, Case No. 18-1079 (2d Cir. Apr. 13, 2018). It is clear from the text of the Plan that the intended purpose of section 8.13 was to limit the holders of the Guarantee Claimants, among many others, to a single satisfaction of their Guarantee Claims and to avoid a double recovery at the expense of other creditors. Indeed, this is the only reading of Section 8.13(a) that is consistent with the fundamental principle of law that creditors holding both a primary claim and a guarantee claim are entitled only to a "single satisfaction" of their claims. *See Bankers' Trust Co. v. Irving Trust Co. (In re United Cigar Stores)*, 73 F.2d 296, 298 (2d Cir. 1934) ("In no case can the [holder of a guarantee claim]

13

recover from all sources more than the full amount of its claim.");[10] Section 8.13(a) must be read to cast a wide net to ensure that certain creditors do not receive a "double recovery" at the expense of other creditors.

37. The corporate context helps drive home this point. LBHI was the parent company of a global business with numerous subsidiaries prior to commencing its chapter 11 case and has had billions in alleged guarantee liabilities asserted in these chapter 11 cases corresponding to numerous different Primary Obligors. Each and every one of the various types of consideration that a Primary Obligor might distribute to its creditors in foreign jurisdictions, and in different insolvency proceedings, could not have been known at the time the Plan was drafted or confirmed. Thus the "other consideration" phrase in section 8.13 had a primary purpose: to capture all types of payments a Primary Obligor might make on the corresponding Primary Claim in order to avoid a double recovery on the alleged guarantee claims.

38. But even if section 8.13(a) was ambiguous, which it is not, the best evidence of its intended meaning is its subsequent application in practice. *See Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 264 (2d Cir. 1965) (quoting *Seymour v. Warren,* 179 N.Y. 1, 6 (1904) ("[t]here is no better way of ascertaining the meaning and construction of a written contract than to look at the acts and conduct of the parties under it.")); *Actrade Liquidation Tr. v.*

---

[10] *See Ross v. Worth Elec. Supply Co.*, 100 Misc. 2d 1058, 1061 (Civ. Ct. N.Y. Cnty. 1979) ("It is fundamental in suretyship that with the payment of the principal obligation the obligations of both principal and surety are discharged."); *see also Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) ("[A] plaintiff is entitled to only one satisfaction for each injury."); *United States v. Zan Mach. Co.,* 803 F. Supp. 620, 623 (E.D.N.Y. 1992) ("It is hornbook law that a plaintiff cannot recover twice for the same injury."); *Leighty v. Brunn*, 125 A.D.2d 648, 648-49 (2d Dep't 1986) ("It is beyond cavil that a plaintiff is entitled to only one recovery with respect to an identical damage claim."); RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 19 (1996) ("To the extent that the underlying obligation is discharged by performance or other satisfaction by the principal obligor, the secondary obligation is also discharged. The obligee is entitled to only one aggregate performance.").

14

08-13555-mg    Doc 58381    Filed 07/10/18    Entered 07/10/18 19:39:18    Main Document
Pg 15 of 19


*Greenwich Ins. Co. (Actrade Fin. Techs., Ltd.)*, 424 B.R. 59, 74 (Bankr. S.D.N.Y. 2009) (finding conduct outside of the litigation context to be "compelling" evidence).

39. Here, the best illustration of section 8.13(a)'s meaning in practice is that virtually all other similarly situated creditors withdrew their LBIE-based guaranty claims or consented to this Court's estimation of the claims at zero for all purposes. *See* ECF Nos. 50298, 50824, 50948, 50977, 50978 (granting the Plan Administrator's motion to estimate on an uncontested basis).

C. **The Subsequent LBIE Distribution is "On" the Primary Claim Under English Law**

40. While New York law governs, the Plan Administrator's position is entirely consistent with, and supported by, English law. Insolvency Rule 14.23(7) states: "[A]ny surplus remaining after payment of the debts proved must, before being applied for any other purpose, be applied in paying interest *on* those debts…" Insolvency Rule 14.23(7) (emphasis added). *See In the Matter of Lehman Brothers International (Europe) (In Administration)* [2014] EWHC 704 (Ch), at ¶86 (the "Waterfall I High Court Judgement") (noting that the "policy behind statutory interest is to compensate creditors for the delay in payment to them of their debts on account of the insolvency process.").

41. The right to the Subsequent LBIE Distribution is a payment right derived solely from the holder's status as a creditor of LBIE and is calculated based on the amount of the provable debt which gave rise to the alleged guarantee claim (*i.e.*, the Primary Claim). The Primary Claim is the only reason the holder of a Guarantee Claim will receive a Subsequent LBIE Distribution under the LBIE Scheme. If the Remaining Claimants did not hold the underlying claim, they would not be entitled to any funds distributed as part of the Subsequent

WEIL:\96623850\4\58399.0011

LBIE Distribution (*i.e.*, it is a benefit they receive as holders of an Admitted Claim). *See* Insolvency Rules 14.2; 14.23.

42. The text of the LBIE Scheme further confirms the conclusion that the Subsequent LBIE Distribution is "consideration provided on the" underlying claim (*see* Plan § 8.13(a)) to compensate for the loss that LBHI allegedly guaranteed. Section 6.1 of the LBIE Scheme explains that an "8% Payment" is a payment of "Statutory Interest *in respect of* [] 8% Interest Claims . . . ." *See* LBIE Scheme ¶6.1.1 (emphasis added). The 8% Payment is to be calculated based on the principal amount of the underlying Admitted Claim. *See* LBIE Scheme ¶6.2. Thus, the 8% Interest Claims, as defined by the LBIE Scheme, are payments "in respect of" the underlying provable claim, *i.e.* the "Primary Claim" referenced by section 8.13(a) of the Plan.[11]

## CONCLUSION

43. For the reasons set forth above, the Plan Administrator requests that the Court enter an order in the form attached hereto as Exhibit A.

## NOTICE

44. No trustee has been appointed in the Chapter 11 Cases. The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635], has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the record holder of each Remaining Claim; and (vi) all

---

[11] Similarly, the payment received by Higher Rate Creditors is "in respect of" the underlying Primary Claim. *See* LBIE Scheme 6.1.2

16

08-13555-mg    Doc 58381    Filed 07/10/18    Entered 07/10/18 19:39:18    Main Document
Pg 17 of 19


parties who have requested notice in these chapter 11 cases. The Plan Administrator submits that no other or further notice need be provided.

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: New York, New York
June 10, 2018

/s/ *Garrett A. Fail*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

WEIL:\96623850\4\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                              :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :    **08-13555 (SCC)**
:
Debtors.                        :    **(Jointly Administered)**
:
------------------------------------------------------------------x

**ORDER IN AID OF EXECUTION OF**
**THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

Upon the motion [ECF No. _____ (the "Motion")],[1] dated July 10, 2018, of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), for approval, pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), for an order in aid of execution of the Plan, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) the record holders of the Remaining Claims; and (vi) all other parties entitled to notice in accordance with the procedures set forth in

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]; and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Subsequent LBIE Distribution is "other consideration provided on the corresponding Primary Claim" within the meaning of section 8.13(a) of the Plan; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2018

_____
Honorable Shelley C. Chapman
United States Bankruptcy Judge