Hearing Date and Time: August 14, 2018 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail
Richard L. Levine

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
| In re | : | Chapter 11 Case No. |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

# REPLY IN SUPPORT OF MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. files this reply to objections filed by Attestor Capital LLP [ECF No. 58449] and Deutsche Bank AG and its affiliates [ECF No. 58450] and in further support of the *Motion of the Plan Administrator for an Order in Aid of Execution of the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (ECF No. 58381) (the "Motion")[1] and respectfully represents as follows:

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion. Citation to the objections (the "Objections") herein refers to ECF No. 58449 (because ECF No. 58450 adds no substantive arguments).

**REPLY**

1.      The Objections by the Remaining Claimants are addressed below and should be overruled for the reasons stated.[2]

**I.      The Subsequent LBIE Distribution is "other consideration provided on the corresponding Primary Claim[s]" of the Remaining Claimants within the plain meaning of Section 8.13(a) of the Plan.**

2.      The Subsequent LBIE Distribution is "*other consideration provided on* the corresponding Primary Claim[s]" within the plain meaning of Section 8.13(a) of the Plan. *See* Mot. §A. The Remaining Claimants assert four arguments in an attempt to lead the Court to a different conclusion and limit the term "consideration" to payments of principal. For the reasons set forth below, none of these arguments are persuasive.

3.      The Remaining Claimants' *first* argument ignores entirely – and contradicts – the plain language of Section 8.13(a). The Remaining Claimants contend that the Subsequent LBIE Distributions "do not satisfy" the Remaining Claimants' Primary Claims. Obj. § I.A. This lead argument is a red herring, though, as "consideration provided on" need not "satisfy" a Primary Claim. *See* Plan §8.13(a) (stating "other consideration provided on the corresponding Primary Claim" and *not* "other consideration satisfying the corresponding Primary Claim" or "other consideration satisfying the principal amount of the Primary Claim"). The Remaining Claimants' *ipse dixit* cannot change the governing language. The Court should, therefore, dismiss this argument out of hand.

4.      The Court should not be distracted by the Remaining Claimants' discussion of *Waterfall I* or *Waterfall IIA* in support of this first argument:

---

[2] Failure to respond to each allegation in the Objections should not be interpreted as an admission of such allegation and the Plan Administrator reserves all rights with respect thereto.

a. In paragraph 24, the Remaining Claimants build a strawman argument that "statutory interest is not a prepetition, provable debt." The Plan Administrator never argued that it was – and it need not be so for the Plan Administrator to prevail on the Motion. Indeed, this strawman argument improperly conflates interest *being* a claim (which it is not) with interest being *consideration provided on* a claim (which, as the Plan Administrator argues, it is).

b. In paragraph 14, the Remaining Claimants discuss the concept of a "currency conversion claim," which creditors of LBIE had sought to assert against LBIE for "any currency shortfall suffered as a consequence of being required to prove their debt (and receive dividends) in GBP even though the original Primary Claim was in USD." Obj. ¶14.[3] In paragraphs 26 and 27, the Remaining Claimants describe an English High Court ruling that payment of statutory interest "cannot operate to reduce" and "cannot be treated as satisfying" a currency conversion claim. But such ruling is not relevant, nor binding, nor even persuasive here because: (i) as set forth at the outset, *satisfaction* of the Primary Claim is neither required nor determinative of the question of whether the Subsequent LBIE distribution is *consideration provided on* the Primary Claim; (ii) whether English statutory interest would reduce or satisfy an asserted currency conversion claim in the English administration under English law is entirely distinct from interpretation of Plan language under New York law; (iii) the UK Supreme Court subsequently held that there is no right to, or concept of, a currency conversion claim under English law – *i.e.*, the English High Court decision cited by the Remaining Claimants is not good law (Obj. ¶28); and (iv) the English High Court's decision was under appeal at the time it was rendered moot by the U.K. Supreme Court's ruling, and a majority of the Court of Appeal (the

---

[3] This potential foreign exchange shortfall arose as a result of converting and asserting claims against LBIE and had nothing to do with Guarantee Claims against LBHI or Distributions under Section 8.13 of the Plan.

3

intermediate appellate court) gave a strong indication that the decision would have been reversed.[4]

5.   The Remaining Claimants' *second* argument is that statutory interest from LBIE is not a "component of" the Remaining Claimants' Primary Claims and claims for statutory interest against LBIE would not be Primary Claims independently because LBHI did not guarantee postpetition interest. Obj. § I.B. This is another – though similar – red herring. The Remaining Claimants are conflating and confusing two separate concepts: a claim for postpetition interest against LBIE for which LBHI is not liable as a guarantor and payment of postpetition interest by LBIE on the Primary Claim, which by plain meaning is "consideration provided on" the Primary Claim and, therefore, counts to satisfy the Guarantee Claim in accordance with the Plan. The Plan Administrator never argued that postpetition interest was a component of a Primary Claim or that it was a Primary Claim itself. *See* Mot. The Plan Administrator's position is that the Subsequent LBIE Distribution (*i.e.*, postpetition statutory interest) is *consideration provided on* a Primary Claim.

6.   The Remaining Claimants' *third* argument is that the Subsequent LBIE Distribution is not "consideration" because "there is no [] quid pro quo underlying the Statutory Interest Payments" because the Remaining Claimants "never gave anything to LBIE or its Administrators in order to obtain the Statutory Interest Payments." Obj. §I.C.1. But admissions throughout the Objections contradict any suggestion that the Subsequent LBIE Distribution is a

---

[4] Two of the three appellate judges reviewing the *Waterfall IIA* decision made their views clear that statutory interest payments can satisfy currency conversion claims (if they exist). Lord Justice Briggs stated that you "treat anything that comes out of what you call the "black box" – that's the UK insolvency process – whether it comes out as a dividend or a statutory interest payment, there's a payment on account against your foreign currency claim." Both Lord Justice Briggs and Lady Justice Gloster described the alternative as "having your cake and eating it." Lord Justice Briggs further stated: "You have to take the whole statute. The statute … gives you statutory interest, you might say, partly as a quid pro quo for that thoroughly tough arrangement if you happen to be a foreign currency creditor." See Transcript from Court of Appeal hearing *In the matter of Lehman Brothers International (Europe)* (In Administration) [2017] EWCA Civ 1462.

4

"gratuitous transfer" for "no bargain or exchange." *Id.* ¶37, 38. *See also* Obj. ¶2 ("[T]he holders of Primary Claims against LBIE, including the *Claimants, received payments* in respect of statutory interest, *as compensation* for the lengthy period during the LBIE Administration in which their admitted claims were unpaid.") (emphasis added); *id.* ¶ 24 ("[A]s the Plan Administrator notes, the 'policy behind statutory interest *is to compensate creditors* for the delay in payment to them of their debts *on account of* the insolvency process.'") (emphasis added) (citations omitted); *id.* ¶29 ("As stated above, the policy behind statutory interest *is to compensate creditors* for the delay in payment to them of their debts as a result of the insolvency process.") (emphasis added); *see also*, *supra*, fn. 3 Transcript from Court of Appeal ("The statute … gives you statutory interest, you might say, partly *as a quid pro quo* ….") (emphasis added).[5]

       7.     The Remaining Claimants' *fourth* argument is that the Subsequent LBIE Distribution is not provided "on" the Primary Claims. *Id.* §I.C.2. Again, the Remaining Claimants' argument is pure *ipse dixit* that twists the meaning of plain English. The Objection contains no authority for any of the self-serving, conclusory statements upon which it asks the Court to rely and no logic to refute the arguments set forth in the Motion. *See id.* ¶¶ 40-44; *see* Mot. ¶¶ 33-35 and 40 (noting English law Insolvency Rules direct "surplus, before being applied for any other purpose, be applied in paying interest *on* those debts …"). There is no basis and certainly no requirement for the Court to limit the broad use of the word "on" to mean *only* "in satisfaction of" principal.

---

[5] Likewise, this Court should not be misled by the suggestion that the Subsequent LBIE Distribution is not "based on" a claim simply because creditors are not required to make an "affirmative claim" for statutory interest. Obj. ¶38. The amount of the Subsequent LBIE Distribution *is* directly related to the amount of and therefore is based on the Primary Claim. As the Remaining Claimants admit, "[c]ertainly there is some [] relationship. But for the Primary Claims, … the Claimants would have no right to the Statutory Interest Payments; and the amounts of their Statutory Interest Payments are calculated *based on* the amounts of their 'provable debt[s] which gave rise to the alleged guarantee claim[s].'" *Id.* ¶30 (emphasis added). The Remaining Creditors also did not disclose whether or to what extent they are holders of Higher Rate Claims that have or will submit a certification, or claim, for their Subsequent LBIE Distribution.

8.  In sum, as set forth in the Motion, and demonstrated above, the plain language of the Plan is clear. *See* Mot. ¶36. Under New York law, "[w]ords and phrases are given their plain meaning." *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (applying New York law) ("[W]here 'the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law,' and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal.") (citations omitted).

## II. The Plan Administrator's plain meaning interpretation is supported by past practice and is fair and reasonable

9.  As set forth in the Motion, Second Circuit precedent holds that even if Section 8.13(a) was ambiguous, which it is not, the best evidence of its intended meaning is its subsequent application in practice. *See* Mot. ¶38. This precedent (as well as other precedent[6]) contradicts the Remaining Claimants' single-sentence, unsupported, assertion that "[n]either 'meaning in practice' nor 'majority rules' is a principle of New York contract interpretation." Obj. ¶50. The Objections do not dispute, and the Court can take judicial notice, that the Remaining Claimants alone have adopted their interpretation of the Plan, while virtually all other third party, LBIE-based guarantee claims have been deemed satisfied, estimated to be zero for all purposes, or withdrawn based on the plain language reading adopted by the Plan Administrator. *See* Mot. ¶39.

10. The Motion included two points to demonstrate that the Plan Administrator's reading of Section 8.13(a) was not only consistent with its plain meaning and

---

[6] *See also Brooklyn Life Ins. Co. of New York v. Dutcher*, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to."); *Seymour v. Warren*, 179 N.Y. 1, 6, 71 N.E. 260, 261 (1904) ("There is no better way of ascertaining the meaning and construction of a written contract than to look at the acts and conduct of the parties under it."); *Town of Pelham v. City of Mount Vernon*, 304 N.Y. 15, 23, 105 N.E.2d 604, 608 (1952) ("[T]here is distinguished authority for the simple statement[:] 'There is no surer way to find out what parties meant, than to see what they have done.'") (citations omitted).

6

subsequent application in practice, but also "fair and reasonable," "a practical interpretation," and not "absurd, commercially unreasonable or contrary to [] reasonable expectations." *See id.* ¶¶ 36-37; Obj. ¶45.

11. One such point was that the term "consideration" captures all types of payments a Primary Obligor might make on the corresponding Primary Claim in foreign jurisdictions and different insolvency proceedings. Mot. ¶ 37. Indeed, the Remaining Claimants agree that "[t]he word 'consideration' is used so as to encompass whatever types of property or value (cash, securities, other) might be distributed in foreign proceedings . . . ." Obj. ¶49. They then provide no explanation or support for their self-serving conclusion that, in contrast, "consideration" here is limited to amounts used to "discharge" "principal" and excludes "postpetition statutory interest" on a claim. *Id.*

12. And the Remaining Claimants' attempt to so limit the word "consideration" is inconsistent with the Plan overall. As set forth in the Motion, the term "Distribution" in the Plan includes postpetition interest on Primary Claims. *See* Mot. ¶33. The Remaining Claimants acknowledge this. Obj. ¶51, 54, 55]. As set forth in the Motion, it would be inconsistent and absurd to read Section 8.13(a) to count postpetition interest distributed by one affiliate of LBHI but not postpetition interest distributed by another Primary Obligor, and, therefore, it makes no sense to read "other consideration" to exclude postpetition interest. *See* Mot. ¶34.

13. Therefore, the Remaining Claimants are forced to (illogically) argue that the term "Distribution" and, thus, "other consideration" "need not" and "cannot" include postpetition interest when used in 8.13(a). Obj. ¶51. But to reach this wrong conclusion, they rely on false assumptions. For example, they assert that, without exception, a Primary Claim and

7

a Guarantee Claim "would … be a claim of the same amount." *Id.* ¶52.  There is no requirement, however, in the Plan for a Primary Claim and corresponding Guarantee Claim to be Allowed in the same amount and, in fact, they were not always (even when the Primary Obligor was a Debtor).[7]  In circumstances where the Guarantee Claim is Allowed in a higher amount than the Allowed amount of the Primary Claim, the Guarantee Claim would not be satisfied in full when the Primary Claim is, and the Primary Obligor's Distribution of postpetition interest would count to satisfy the guarantee liability.  Thus, the Remaining Claimants are wrong to assume that *both* the Primary Claim and the Guarantee Claim will be satisfied before postpetition interest can be paid by a Debtor.  Further, although the Remaining Claimants acknowledge that "[t]he Plan should be read so as to avoid internal inconsistencies, if possible" (Obj. ¶54),  they argue that the Court must read an inconsistency between Sections 8.13(b) and (c). *Id.* ¶53.  The Court need not do so, though, as there is a clear, plain, and consistent reading of these subsections that gives meaning to both sections and has operated to provide hundreds of millions of dollars in postpetition interest to creditors in these cases.  Thus, rather than avoiding blatant inconsistencies, the Remaining Claimants are creating them.

14. The second point made in the Motion to demonstrate that the Plan Administrator's reading of Section 8.13(a) was fair, reasonable, and practical was that the purpose of Section 8.13 is to limit holders of Guarantee Claims to a single satisfaction and to avoid a double recovery. *Id.* ¶ 36.  This point is clear from the plain text of, and throughout, Section 8.13.[8]  The Remaining Claimants even *agree* that this is a purpose of Section 8.13.  *See*

---

[7] The varying Petition Dates for different Debtors led to different Allowed Claim amounts in certain instances; defenses to guarantee liability led to different Allowed Claim amounts in other instances, for examples.

[8] *See* Plan §8.13 (a) (deeming Guarantee Claims satisfied by a combination of Distributions or other consideration from LBHI as guarantor and the Primary Obligor and entitling LBHI to subrogation for payments made by a Primary Obligor in excess of such amount); §8.13(b) (capping recoveries on Guarantee Claims based on a combination of Distributions or other consideration from LBHI as guarantor and the Primary Obligor); §8.13(d)

8

Obj. ¶ 46. The Remaining Claimants suggest, however, that Section 8.13 as a whole has an additional purpose, based on their reading of Section 8.13(d) alone: "to protect the specific subset of creditors holding Guarantee Claims whose corresponding Primary Claims are not paid in USD from the depreciation of the foreign currency against the USD from the Petition Date to the Confirmation Date." *Id.* ¶47. Relying on this newly discovered "purpose," the Remaining Claimants conclude that "*LBHI provides that protection by paying* [12.89% of the USD amount of the Guarantee Claims after LBIE paid 100% of the GBP amount of the Primary Claims (what the Objection calls the "Remaining Guarantee Obligation")]," that "the 'single satisfaction' on a Guarantee Claim" includes this payment, and that it is not "a form of 'double recovery.'" *Id.* (emphasis added).

15. This argument cannot withstand analysis. As a starting point, the suggestion of an additional purpose of Section 8.13 should be disregarded because it has no foundation in the plain text of the Plan, is not supported by any evidence, and is contradicted by known facts and law of the case. Specifically, not all foreign currencies depreciated against the dollar between the Petition Date and the Confirmation Date; some, like the Japanese Yen and Hong Kong Dollar, appreciated. As a result, and in accordance with Section 8.13 of the Plan, this Court ruled that distributions equal to approximately 74% of a Primary Claim in Japanese Yen satisfied a Guarantee Claim in full. [*See* ECF No. 48322 (ruling after a contested hearing)]. This Court entered numerous other orders deeming similarly situated creditors satisfied in full. *See, e.g.,* ECF Nos. 47968 and 50166 (disallowing claims based on Japanese Yen), 52980

---

(providing means to calculate sum of Distributions or other consideration from Primary Obligors and LBHI); §8.13(e) (permitting LBHI to request information regarding and withhold Distributions based on future distributions from Primary Obligors); §8.13(f) (discussing treatment of Distributions that are recovered by LBHI by way of subrogation, disgorgement, or otherwise after Guarantee Claims are satisfied in full and Primary Obligors made additional Distributions or provide additional other consideration).

9

(disallowing claims based on Hong Kong Dollar). Separately, the foreign exchange rates as of an unknown, future Confirmation Date could not be known when the Plan was drafted. Based on the foregoing, the conclusion that the Remaining Claimants reached based on the additional "purpose" of Section 8.13 should be dismissed summarily.

16. The Remaining Claimants' conclusion should be dismissed for other reasons as well. The Plan Administrator does not dispute that the amount of the Remaining Guarantee Obligation must be paid before the Remaining Claims are deemed satisfied in full. The Remaining Guarantee Obligation is "protected" in that sense. Likewise, the Plan Administrator does not dispute that receipt of the Remaining Guarantee Obligation would count towards a "single satisfaction" on a Guarantee Claim and not a "double recovery" on a Guarantee Claim even though the aggregate payments would exceed the principal amount of the Primary Claims. None of that requires *LBHI* (as the Remaining Claimants conclude) to pay the Remaining Guarantee Obligation. Obj. ¶56. Rather, the Plan says that a Guarantee Claim shall be deemed satisfied in full only when the Guarantee Claim and the Primary Claim receive amounts that equal a sum that includes the Remaining Guarantee Obligation (note passive tense). *See* Plan §8.13(a). The question of whether amounts paid by LBIE will satisfy the Remaining Guarantee Obligation (*i.e.*, whether payment of postpetition interest from a Primary Obligor will be deemed to satisfy the "protected" excess amount for a Guarantee Claim), as the Plan Administrator urges, is the question before the Court.[9]

17. The Remaining Claimants try to buttress their interpretation by arguing, in paragraph 56 of the Objection, that if the Motion is granted, "the Claimants will actually have *less* than a single satisfaction of their claims." Obj. ¶56. The "single satisfaction of their claims"

---

[9] That question is not answered by reading the Remaining Claimants' purported purpose into the Plan. Therefore, even if the Remaining Claimants' suggestion of a secondary purpose was correct, it is of no relevance.

that they refer to here is misleading and irrelevant under the Plan. The Remaining Claimants suggest that they will be satisfied only when they receive principal plus interest from LBIE (a minimum of 138.43% of the GBP amount of their claims against LBIE) PLUS an additional amount from LBHI. This, however, has no basis in the Plan. The Remaining Claimants may be disappointed, but under the Plan, and determinative for the Motion, Section 8.13(a) is clear: Guarantee Claims are deemed satisfied when the amount(s) received on the Guarantee Claim and/or the Primary Claim equal the amount of the Guarantee Claim – not the amount of the Primary Claim (and certainly not the Primary Claim plus accrued interest). *See* Plan §8.13. *See also*, *e.g.*, ECF Nos. 47968, 50166, 52980 (deeming Guarantee Claims satisfied in full where Primary Claims were allowed in amounts higher than Guarantee Claims). This is, indeed, entirely consistent with the Remaining Claimant's argument that LBHI did not guarantee payment of postpetition interest by LBIE. *See* Obj. § I.B. (arguing that statutory interest from LBIE is not a "component of" the Remaining Claimants' Primary Claims and claims for statutory interest against LBIE would not be Primary Claims independently because LBHI did not guarantee postpetition interest).

    18. The Remaining Claimants also purport to rely on the incorrect presumptions addressed above that (a) *LBHI* has the absolute obligation to satisfy the Remaining Guarantee Obligation, *see* ¶ 14, *supra*, and (b) they are entitled to recover principal plus interest from LBIE plus an additional amount from LBHI *see* ¶ 15, *supra*, when they (y) characterize the Plan Administrator as using the Subsequent LBIE Distribution "*to subsidize LBHI's* Remaining Guarantee Obligation," and (z) describe a hypothetical in which they have "paid themselves" and "channel" their consideration from the Subsequent LBIE Distribution to "*cover LBHI's* Remaining Guarantee Obligation." Obj. ¶56 (emphasis added). Such logic is circular, but it was

11

necessary for them to build and balance their final argument that: in an unimaginable circumstance in which the Court finds both that LBHI has the absolute obligation to pay the Remaining Guarantee Obligation and that the Remaining Claimants are entitled to recover principal plus interest from LBIE plus an additional amount from LBHI (*i.e.*, finding in favor of the Remaining Claimants), the Court would nonetheless grant the Motion (ruling in favor of the Plan Administrator). In that circumstance (which could never occur), they argue, the Subsequent LBIE Distribution would "*subsidize LBHI's* Remaining Guarantee Obligation," the Remaining Claimants would "pay themselves" from the Subsequent LBIE Distribution, and their "rights [as] a holder of a Guarantee Claim with respect to corresponding Primary Claim" would be "affected." *Id.* ¶57-8. This is clearly not a plain reading of the Plan.[10]

19.  Finally, the relief requested in the Motion will not affect the Remaining Creditors' rights against LBIE with respect to their Primary Claims, and the assertion that the Remaining Claimants will receive less from LBIE than similarly situated parties who did not file a Guarantee Claim against LBHI is simply false – they will receive the same amount.

---

[10] Nor is it a plain reading of the Plan to ignore an introductory clause of the last sentence of Section 8.13(a).

## CONCLUSION

20. The Court has broad authority to issue orders necessary to implement the Plan. The Remaining Claimants have failed to prove their entitlement to a Distribution from LBHI. Based on the Motion, this reply, and all of the proceedings before this Court in these cases, the Motion should be approved. The Plan Administrator reserves all rights to amend and supplement this reply.

Dated: August 7, 2018
      New York, New York

*/s/ Garrett A. Fail*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail
Richard L. Levine

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates