# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Garrett Fail**
+1 (212) 310-8451
Garrett.Fail@weil.com

August 27, 2018

<u>Via E-mail and ECF</u>

The Honorable Shelley C. Chapman
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Room 623
New York, New York 10004-1408
scc.chambers@nysb.uscourts.gov

Re: *In re Lehman Brothers Holdings Inc.*, Ch. 11 Case No. 08-13555 - Sixteenth Plan Distribution

Dear Judge Chapman:

We write on behalf of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "*Plan*") to inform the Court of an attempt by certain parties to interfere – out of the public's view – with the above-captioned Debtors' fast-approaching October 4, 2018, Plan distribution ("*D16*").

Late on Friday, August 24, 2018, Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators (the "*Joint Liquidators*") of LB GP No. 1 Ltd. (the "*General Partner*"), the general partner for five limited partnerships with which the Court is familiar[1] (the "*Partnerships*"), delivered to the Debtors' claims agent seven new proofs of claim (the "*New Claims*") on behalf of the Partnerships.

With delivery of their New Claims, the Joint Liquidators seemingly believed they could add nearly $3 Billion of new liabilities in the late stages of these cases: $2,180,188,607 of Affiliate Claims and Senior Affiliate Guarantee Claims against LBHI and $800,171,924 of Affiliate Claims against Lehman Brothers Special Financing Inc. ("*LBSF*").

---

[1] Lehman Brothers UK Capital Funding LP, Lehman Brothers UK Capital Funding II LP , Lehman Brothers UK Capital Funding III LP, Lehman Brothers UK Capital Funding IV LP, and Lehman Brothers UK Capital Funding V LP. The Court will recall that the General Partner was restored upon the application of Deutsche Bank AG. *See* ECF No 57603 (objection of the Joint Liquidators).

The Honorable Shelley C. Chapman
August 27, 2018
Page 2

**Weil, Gotshal & Manges LLP**

We have already informed the Joint Liquidators that, pursuant to paragraph 86 of the Confirmation Order, "a proof of Claim relating to a prepetition Claim may not be filed or amended without the authority of the Court."

We have also informed the Joint Liquidators that, pursuant to the Plan, and because no claim has been filed, no reserve for such claim will be established at LBHI or LBSF. At D16, LBHI and LBSF will distribute all of their Available Cash (as defined in the Plan) as required by the Plan.

The Joint Liquidators, General Partner, and/or Partnerships will decide whether they will seek relief; if they decide to go forward, they will have the burden attendant to prosecuting any such request. The Plan Administrator is prepared to oppose any request to file the New Claims, to increase liabilities beyond those disclosed in the Debtors' public financial statements, to establish reserves, or to delay Plan distributions. Among many other reasons, the New Claims are without merit.

As the Court is aware, Plan distributions require significant advanced planning. D16 preparations are already underway. Accordingly, the Plan Administrator requests a conference at the Court's earliest convenience at which the Court can determine conclusively whether the Joint Liquidators will seek relief and, if necessary, establish a briefing schedule so as to avoid interfering with the announced D16.

In the interim, and given the active trading in claims against LBHI and LBSF and the material effect that the New Claims, if allowed, would have on the rights and entitlements of creditors of LBHI and LBSF, the Plan Administrator wanted to provide prompt public notice of the action by the Joint Administrators. A copy of the New Claims is annexed hereto.

Respectfully submitted,


/s/ Garrett Fail


cc:  Joseph M. Graham, Kirkland & Ellis LLP, counsel for the Joint Liquidators

| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Holdings Inc.** | Case No. of Debtor<br>**08-13555** | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000   Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____   Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ 318,347,500, as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: See addendum
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____% 
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

**7.** Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

AUG 2 4 2018

EPIQ

Date:
16 AUGUST 2018

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

BRUCE ALEXANDER MACKAY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No. 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING LP
WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## _____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## _____ INFORMATION _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                          :
In re:                                                    :
                                                          :          **Chapter 11**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :          **Case No. 08-13555 (JMP)**
                                                          :
                                                          :          **(Jointly Administered)**
                                          **Debtors.**    :
                                                          :
-----------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING LP AGAINST LEHMAN BROTHERS HOLDINGS INC.

### A.      The Chapter 11 Cases

1.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

### B.      The Schedules and Bar Date Order

2.      On March 12, 2009, LBHI filed schedules of its assets and liabilities. On June 15, 2009, LBHI filed amended schedules of its assets and liabilities (the "Schedules"). Schedule F was amended on December 2, 2011.

3.      On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271] (the "Bar Date Order") establishing a claims bar date by which certain entities were required to file proofs of claim against the debtors in the Chapter 11 Cases.

4.      Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". See Bar Date Order at 5.

Although Lehman Brothers UK Capital Funding LP ("LP I") was not on the Exempt Entities List, three of its affiliated partnerships were. See Exempt Entities List (including LB UK Capital Funding III LP, Lehman Brothers UK Capital Funding IV LP, and Lehman Brothers UK Capital Funding V LP). LP I reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

**C.    The Partnership**

5.    LP I is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP I and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP I was formed to raise regulatory capital for Lehman Brothers Holdings plc ("LBH") by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP I issued EUR 225,000,000 Fixed Rate to CMS-Linked Guaranteed Non-Voting, Non-Cumulative Perpetual Securities. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBH.

6.    As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI and the other debtors in the Chapter 11 Cases negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737], which was confirmed on December 6, 2011 [Docket No. 23023], and went effective on March 6, 2012 [Docket No. 26039].

7. On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the Chapter 11 Cases, so that it may appropriately distribute the Partnerships' assets.

**D.     The Subordinated Notes Claims**

8. LP I purchased EUR 225,000,000 Fixed Rate to CMS-Linked Subordinated Notes due 2035 from LBH in an offering that closed on March 29, 2005 (the "Notes"). The Notes are an allowed obligation of LBH in its U.K.-based insolvency proceeding.

**E.     Guarantee Claim against LBHI**

9. The Board of Directors of LBHI, by unanimous written consent, adopted a resolution as of June 9, 2005, to guarantee the debts of certain of its subsidiaries, including LBH (the "Board Resolution"). A copy of the Board Resolution is attached as **Exhibit 1**. LP I was managed by the General Partner, whose sole shareholder was LBHI. Thus, upon information and belief, LP I had constructive knowledge if not actual knowledge of the Board Resolution.

-3-

10.     By this Proof of Claim, LP I asserts the full amount of $318,397,500 against LBHI on account of the guarantee of the Notes based on the Board Resolution (EUR / USD conversion rate of EUR 1 = USD 1.4151 (per ECB published rate) as at September 15, 2008).

### F.     Reservation of Rights

11.     LP I reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

### G.     Notices

12.     All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring
Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention:  Bruce Mackay
Telephone:  +44 (0)20 3201 8000
Email:  bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention:  David R. Seligman, P.C. and Joseph M. Graham
Telephone:  (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*       *       *       *       *

## Exhibit 1

**Board Resolution**

# UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS,** the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS,** certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS,** due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS,** the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS,** Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS,** Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS,** Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT,**

06-09-05   11:31   JDM INVESTMENTS                     ID=2023380294                  P.02

06. 05. 2005    09:..   LEHMAN → 912023380294                          NO.290   004
26/06/3205      16:41   LEHMAN → 916487582653                          NO.504   002

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

Richard S. Fuld, Jr.

John D. Macomber

2

06/08/2005    16:41    LEHMAN → 916467582653    NO.504    P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 8/24/2018 at 4:47 PM Central. Please print this page as proof of your filing.

---

**Lehman Brothers UK Capital Funding LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Holdings plc |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | I've attached the subordinated note offering circulated purchased by Lehman Brothers UK Capital Funding LP, which was issued by Lehman Brothers Holdings plc. |

| Documents |
|---|
| tab 4_281715696_1.PDF |

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | The document that LB GP No. 1 Ltd. has with respect to the subordinated note is the attached offering circular. |

| Documents |
|---|
| tab 4_281715696_1.PDF |

| | |
|---|---|
| Amount of claim against Obligor | $225,000,000.00 |

| | |
|---|---|
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |

Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire.

| Documents |
|---|
| LBHI Board Guarantee Resolution (6.9.05).pdf |

| | |
|---|---|
| Amount of claim against the Guarantor | $318,397,500.00 |

| **United States Bankruptcy Court/Southern District of New York** | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | |
| Lehman Brothers Holdings Inc. | 08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding II LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000   Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:       Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 353,775,000, as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.*

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See addendum
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

4. **Secured** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.

**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

**AUG 2 4 2018**

**EPIQ**

| Date:<br>16 August 2018 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>BRUCE ALEXANDER MACKAY | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No. 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING II LLP WITHOUT PERSONAL LIABILITY.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 13-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## __ D E F I N I T I O N S __

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to assure the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## __ I N F O R M A T I O N __

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
                                                    :
In re:                                              :
                                                    :          **Chapter 11**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :          **Case No. 08-13555 (JMP)**
                                                    :
                                                    :          **(Jointly Administered)**
                        **Debtors.**              :
                                                    :
--------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING II LP AGAINST LEHMAN BROTHERS HOLDINGS INC.

**A.**    **The Chapter 11 Cases**

1.    On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**B.**    **The Schedules and Bar Date Order**

2.    On March 12, 2009, LBHI filed schedules of its assets and liabilities. On June 15, 2009, LBHI filed amended schedules of its assets and liabilities (the "Schedules"). Schedule F was amended on December 2, 2011.

3.    On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271] (the "Bar Date Order") establishing a claims bar date by which certain entities were required to file proofs of claim against the debtors in the Chapter 11 Cases.

4.    Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". See Bar Date Order at 5.

Although Lehman Brothers UK Capital Funding II LP ("LP II") was not on the Exempt Entities List, three of its affiliated partnerships were. See Exempt Entities List (including LB UK Capital Funding III LP, Lehman Brothers UK Capital Funding IV LP, and Lehman Brothers UK Capital Funding V LP). LP II reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

### C.    The Partnership

5.    LP II is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP II and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP II was formed to raise regulatory capital for Lehman Brothers Holdings plc ("LBH") by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP II issued EUR 250,000,000 Fixed Rate to Guaranteed Non-Voting, Non-Cumulative Perpetual Securities. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBH.

6.    As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI and the other debtors in the Chapter 11 Cases negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737], which was confirmed on December 6, 2011 [Docket No. 23023], and went effective on March 6, 2012 [Docket No. 26039].

7.     On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the Chapter 11 Cases, so that it may appropriately distribute the Partnerships' assets.

**D.     The Subordinated Notes Claims**

8.     LP II purchased (a) EUR 200,000,000 Fixed Rate Subordinated Notes due 2035 from LBH in an offering that closed on September 19, 2005, and (b) EUR 50,000,000 Fixed Rate Subordinated Notes due 2035 from LBH in an offering that closed on October 26, 2005 (collectively, the "Notes"). The Notes are an allowed obligation of LBH in its U.K.-based insolvency proceeding.

**E.     Guarantee Claim against LBHI**

9.     The Board of Directors of LBHI, by unanimous written consent, adopted a resolution as of June 9, 2005, to guarantee the debts of certain of its subsidiaries, including LBH (the "Board Resolution"). A copy of the Board Resolution is attached as **Exhibit 1**. LP II

-3-

purchased the Notes from LBH after the issuance of the Board Resolution. LP II was managed by the General Partner, whose sole shareholder was LBHI. Thus, upon information and belief, LP II had constructive knowledge if not actual knowledge of the Board Resolution.

10.    By this Proof of Claim, LP II asserts the full amount of $353,775,000 against LBHI on account of the guarantee of the Notes based on the Board Resolution (EUR / USD conversion rate of EUR 1 = USD 1.4151 (per ECB published rate) as at September 15, 2008).

**F.    Reservation of Rights**

11.    LP II reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

**G.    Notices**

12.    All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring
Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention: Bruce Mackay
Telephone: +44 (0)20 3201 8000
Email: bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention: David R. Seligman, P.C. and Joseph M. Graham
Telephone: (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*        *        *        *        *

-4-

**<u>Exhibit 1</u>**

**Board Resolution**

# UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS**, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS**, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS**, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS**, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS**, Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS**, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS**, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT**,

06-09-05   11:31   JDM INVESTMENTS                     ID=2023380294                P.02

RESOLVED, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

RESOLVED, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

RESOLVED, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

RESOLVED, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

FURTHER RESOLVED, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

_____
Richard S. Fuld, Jr.

_____
John D. Macomber

06-09-05   09:48          RECEIVED FROM:212 526 9339              P.04

06/08/2005   16:41   LEHMAN → 916467582653                              NO.504   P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

|     | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
| --- | --- | --- |
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

## CLAIM FORM FILING CONFIRMATION

Your claim form was successfully filed on 8/24/2018 at 4:53 PM Central. Please print this page as proof of your filing.

**Lehman Brothers UK Capital Funding II LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Holdings plc |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | I've attached the subordinated notes offering circular for the notes purchased by Lehman Brothers UK Capital Funding LP, which notes were issued by Lehman Brothers Holdings plc. |

| Documents |
|---|
| tab 15_281715956_1.PDF |
| tab 21_281716081_1.PDF |

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | The documents that LB GP No. 1 Ltd. have with respect to the subordinated notes are the attached offering circulars. |

| Documents |
|---|
| tab 15_281715956_1.PDF |
| tab 21_281716081_1.PDF |

| | |
|---|---|
| Amount of claim against Obligor | $250,000,000.00 |
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |
| Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire. | |

| Documents |
|---|
| LBHI Board Guarantee Resolution (6.9.05).pdf |

| | |
|---|---|
| Amount of claim against the Guarantor | $353,775,000.00 |

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 |

# PROOF OF CLAIM

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding III LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000    Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____    Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 707,550,000, as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. § 503(b)(9), complete item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** See addendum
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
**Amount of Secured Claim:** $_____    **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $_____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: _____

**FOR COURT USE ONLY**

FILED / RECEIVED
AUG 24 2018
EPIQ

Date:
16 AUGUST 2018

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[signature] BRUCE ALEXANDER MACKAY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING III LLP
WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## _____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## _____ INFORMATION _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

In re:                                                            :

                                                                  :        **Chapter 11**

                                                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **Case No. 08-13555 (JMP)**

                                                                  :

                                                                  :        **(Jointly Administered)**

                              **Debtors.**        :

                                                                  :

------------------------------------------------------------------x

**ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL
FUNDING III LP AGAINST LEHMAN BROTHERS HOLDINGS INC.**

**A.       The Chapter 11 Cases**

1.       On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and

several of its subsidiaries commenced voluntary cases (the "Chapter 11 Cases") under chapter 11

of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court").

**B.       The Schedules and Bar Date Order**

2.       On March 12, 2009, LBHI filed schedules of its assets and liabilities.  On June 15,

2009, LBHI filed amended schedules of its assets and liabilities (the "Schedules").  Schedule F

was amended on December 2, 2011.

3.       On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271] (the

"Bar Date Order") establishing a claims bar date by which certain entities were required to file

proofs of claim against the debtors in the Chapter 11 Cases.

4.       Pursuant to the Bar Date Order, persons or entities were **not** required to file a

proof of claim if they were included on the "Exempt Entities List".  See Bar Date Order at 5.

Lehman Brothers UK Capital Funding IV LP ("LP III") was and is on the Exempt Entities List. Thus, LP III was not required to file a proof of claim under the Bar Date Order and does so now only out of an abundance of caution. LP III reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

**C.    The Partnership**

5.    LP III is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP III and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP III was formed to raise regulatory capital for Lehman Brothers Holdings plc ("LBH") by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP III issued EUR 500,000,000 Fixed / Floating Rate ECAPS. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBH.

6.    As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI and the other debtors in the Chapter 11 Cases negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737], which was confirmed on December 6, 2011 [Docket No. 23023], and went effective on March 6, 2012 [Docket No. 26039].

7.    On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017.

-2-

Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the Chapter 11 Cases, so that it may appropriately distribute the Partnerships' assets.

### D.    The Subordinated Notes Claims

8.    LP III purchased EUR 500,000,000 Fixed/Floating Rate Subordinated Notes due 2036 from LBH in an offering that closed on February 20, 2006 (collectively, the "Notes"). The Notes are an allowed obligation of LBH in its U.K.-based insolvency proceeding.

### E.    Guarantee Claim against LBHI

9.    The Board of Directors of LBHI, by unanimous written consent, adopted a resolution as of June 9, 2005, to guarantee the debts of certain of its subsidiaries, including LBH (the "Board Resolution"). A copy of the Board Resolution is attached as **Exhibit 1**. LP III purchased the Notes from LBH after the issuance of the Board Resolution. LP III was managed by the General Partner, whose sole shareholder was LBHI. Thus, upon information and belief, LP III had constructive knowledge if not actual knowledge of the Board Resolution.

10.    By this Proof of Claim, LP III asserts the full amount of $707,550,000 against LBHI on account of the guarantee of the Notes based on the Board Resolution (EUR / USD conversion rate of EUR 1 = USD 1.4151 as at September 15, 2008).

**F.    Reservation of Rights**

11.    LP III reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

**G.    Notices**

12.    All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring
Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention:  Bruce Mackay
Telephone:  +44 (0)20 3201 8000
Email:  bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention:  David R. Seligman, P.C. and Joseph M. Graham
Telephone:  (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*    *    *    *    *

## <u>Exhibit 1</u>

**Board Resolution**

06/08/2005    16:41    LEHMAN → 916467582653                                    NO.504    P01

# UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS**, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS**, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS**, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS**, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS**, Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS**, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS**, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT**,

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 7, 2005

Richard S. Fuld, Jr.                    John D. Macomber

2

06/08/2005    16:41    LEHMAN → 916467582653                                    NO.504    P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 8/24/2018 at 4:58 PM Central. Please print this page as proof of your filing.

**Lehman Brothers UK Capital Funding III LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Holdings plc |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | I've attached the subordinated note offering circular for the note purchased by Lehman Brothers UK Capital Funding III LP, which notes were issued by Lehman Brothers Holdings plc |

| Documents |
|---|
| tab 28_281716727_1.PDF |

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | The document that LB GP No. 1 Ltd. has with respect to the subordinated notes is the attached offering circular. |

| Documents |
|---|
| tab 28_281716727_1.PDF |

| | |
|---|---|
| Amount of claim against Obligor | $500,000,000.00 |
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |
| Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire. | |

| Documents |
|---|
| LBHI Board Guarantee Resolution (6.9.05).pdf |

| | |
|---|---|
| Amount of claim against the Guarantor | $707,500,000.00 |

| *United States Bankruptcy Court/Southern District of New York* | **PROOF OF CLAIM** |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al.  Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| Lehman Brothers Holdings Inc. | 08-13555 |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000    Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
    *(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 187,531,243 + as set forth in the addendum
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: See addendum
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $ _____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____    Basis for perfection: _____
Amount of Secured Claim: $ _____    Amount Unsecured: $ _____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: _____

FOR COURT USE ONLY

**FILED / RECEIVED**

AUG 24 2018

**EPIQ**

| Date:  16 AUGUST 2018 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.   BRUCE ALEXANDER MACKAY |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No. 1 LTD AND LEHMAN BROTHERS CAPITAL FUNDING IV LP WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 13-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9).**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods were sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

# _____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

# _____ I N F O R M A T I O N _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view
your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                    :
In re:                                              :
                                                    :         **Chapter 11**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :         **Case No. 08-13555 (JMP)**
                                                    :
                                                    :         **(Jointly Administered)**
                           **Debtors.**             :
                                                    :
-----------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING IV LP AGAINST LEHMAN BROTHERS HOLDINGS INC.

**A.    The Chapter 11 Cases**

1.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "LBHI Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      On October 3, 2008 (the "LBSF Petition Date"), Lehman Brothers Special Financing Inc. ("LBSF") commenced a voluntary proceeding (the "LBSF Case") in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  The LBHI Cases and the LBSF Case have been consolidated for administrative purposes.

**B.    The Schedules and Bar Date Order**

3.      On March 12, 2009, LBSF filed schedules of its assets and liabilities.   On June 15, 2009, LBSF filed amended schedules of its assets and liabilities (the "Schedules").

4.      On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271 in the LBHI Cases] (the "Bar Date Order") establishing a claims bar date by which certain entities were

required to file proofs of claim against the debtors in the LBHI Cases and the LBSF Case. Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". See Bar Date Order at 5. Lehman Brothers UK Capital Funding IV LP ("LP IV") was and is on the Exempt Entities List. Thus, LP IV was not required to file a proof of claim under the Bar Date Order and does so now only out of an abundance of caution. LP IV reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

**C.    The Partnership**

5.      LP IV is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP IV and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP IV was formed to raise regulatory capital for LBHI by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP IV issued EUR 200,000,000 Euro Fixed Rate ECAPS. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBHI.

6.      As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI, LBSF, and the other debtors in the LBHI Cases and the LBSF Case negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737 in the LBHI Cases], which was confirmed on December 6, 2011 [Docket No. 23023 in the LBHI Cases], and went effective on March 6, 2012 [Docket No. 26039 in the LBHI Cases].

-2-

7.    On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the LBHI Cases and the LBSF Case, so that it may appropriately distribute the Partnerships' assets.

**D.    The Swap Claims**

8.    Upon information and belief, LP IV was party to a 40-year non-call 5-year interest rate swap with LBSF (the "Swap"). Upon information and belief, the notional amount of the Swap was €200,000,000, with a maturity of April 25, 2047. LBSF had a cancellation option on the Swap that could be exercised on April 25, 2012, and annually thereafter. Upon information and belief, the interest rate on the fixed interest rate leg of the Swap is 5.75%, which interest was receivable annually on April 25 of each year from and including April 25, 2008, to and including the termination date. Upon information and belief, the interest rate on the floating interest rate leg of the Swap is 3 month EUROLIBOR + 0.79%, payable quarterly on the 25th of

-3-

January, April, July, and October each year from and including April 25, 2007, to and including the termination date.

9.     Upon information and belief, LBSF's Schedules include an intercompany receivable from Lehman Brothers UK Capital Funding IV LP to LBSF for $15,386,252. See Schedules, Schedule B - Personal Property, Page 1 of 2 (showing LB Capital Funding No. 4 LP as owing an intercompany receivable to LBSF). The Joint Liquidators believe that this intercompany receivable is on account of the Swap.

10.    The Joint Liquidators have no information indicating that LBSF cancelled the Swap pursuant to its cancellation option or that LBSF or LP IV terminated the swap upon the commencement of the LBSF Case.

11.    Pursuant to Article 11.1 of the Plan, all prepetition executory contracts between LBHI, LBSF, or any other debtor and another person or entity was deemed rejected on the effective date of the Plan, except as otherwise set forth in Article 11.1. Upon information and belief, the Swap was therefore rejected as of March 6, 2012.

12.    The Joint Liquidators have not at this time been able to locate further information on the Swap other than what is attached hereto as **Exhibit 1** and **Exhibit 2**. Contemporaneously herewith, the Joint Liquidators have contacted counsel to LBHI and LBSF and requested all documentation they have with respect to the Swap.

13.    The Joint Liquidators had the Swap independently valued based on the limited information that the Joint Liquidators currently have in their possession. The Joint Liquidators will amend this Proof of Claim as necessary upon obtaining additional documentation or learning new facts related to the Swap and reserve all of their rights and those of LP IV in relation to the Swap. The independent analysis the Joint Liquidators have received values the Swap claim at $187,531,243. The Swap claim includes (a) $165,470,725 for amounts owed as a result of the

-4-

automatic rejection of the Swap upon consummation of the Plan on March 6, 2012 (EUR / USD conversion rate of EUR 1 = USD 1.3153 as at March 6, 2012), and (b) $22,060,518 of net unpaid and accrued amounts owed to LP IV up to and including March 6, 2012 (EUR / USD conversion rate of EUR 1 = USD 1.4151 as at September 15, 2008). The Joint Liquidators have assumed that net unpaid and accrued amounts owed to LP IV up to and including March 6, 2012, have not been paid.

14.     Contemporaneously herewith, LP IV has filed a proof of claim against LBSF on account of the Swap.

**E.     Guarantee Claim against LBHI**

15.     As noted above, the Joint Liquidators do not currently have any documentation related to the Swap, including documentation related to any guarantee of the Swap by LBHI or any other entity. Notwithstanding the foregoing, upon information and belief, many of LBSF's swaps were guaranteed by LBHI. *See, e.g., Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Settlement Agreement Among Credit Suisse AG and Certain of its Affiliates, and Lehman Brothers Holdings Inc. and Certain of its Affiliates* [Docket No. 58434] (approving settlement with LBHI guaranteeing swap claims against LBSF).

16.     In addition, the Board of Directors of LBHI, by unanimous written consent, adopted a resolution as of June 9, 2005, to guarantee the debts of certain of its subsidiaries, including LBSF (the "Board Resolution"). A copy of the Board Resolution is attached as **Exhibit 3**. LP V entered into the Swap with LBSF after the issuance of the Board Resolution. LP V was managed by the General Partner, whose sole shareholder was LBHI. Thus, upon information and belief, LP V had constructive knowledge if not actual knowledge of the Board Resolution.

-5-

17.    By this Proof of Claim, LP IV asserts the full amount of $187,531,243 against LBHI on account of the guarantee of the Swap (being the combined sum of the amounts shown and explained in paragraph 13).

**F.    Reservation of Rights**

18.    LP IV reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

**G.    Notices**

19.    All notices with respect to this Proof of Claim should be sent to:

> c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring
> Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
> Lehman Brothers UK Capital Funding IV LP
> RSM Restructuring Advisory LLP
> 25 Farringdon Street
> London, EC4A 4AB
> Attention:  Bruce Mackay
> Telephone:  +44 (0)20 3201 8000
> Email:  bruce.mackay@rsmuk.com
>
> with copies to:
>
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attention:  David R. Seligman, P.C. and Joseph M. Graham
> Telephone:  (312) 862-2000
> Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*    *    *    *    *

**<u>Exhibit 1</u>**

**Indicative Term Sheet re Swap**



## LEHMAN BROTHERS
### Fixed Income Derivative Products

# 40yr non call 5yr interest rate swap

| | |
|---|---|
| Party A | Lehman Brothers UK Capital Funding IV LP |
| Party B | Lehman Brothers Special Finance |
| Notional Amount | EUR 200,000,000 |
| Trade Date | 11 January 2007 |
| Settlement Date | 25 January 2007 |
| Maturity Date | 25 April 2047 |
| Cancellation Option | On 25th April 2012 and annually thereafter, Option Holder may choose to terminate the swap. On such termination, no further payments will be made by either party. Notice date is 37 days. |
| Cancellation Option Holder | Lehman Brothers Special Finance |
| Initial Exchange | None |
| Final Exchange | None |
| Swap Exchange | |
| Party A pays | 3month Euribor + 79 bps, quarterly Act/360 on Notional Amount |
| Party B pays | 5.75% annually Act/Act on Notional Amount |
| Calculation Agent | Party B |
| Documentation | All capitalised terms used in this term sheet and not otherwise defined will have the meanings given to them in the 2000 ISDA Definitions |

This termsheet is indicative only and is subject to change without notice. Information other than indicative terms (including market data and statistical information) has been obtained from various sources. We do not represent that it is complete or accurate. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters, is not comprehensive, is not intended to suggest that outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. No assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Transactions of the sort described herein contain complex characteristics and risk factors. Transactions incorporating derivatives may create additional risks and exposures. Before entering into any transaction, you should consider the suitability of the transaction to your particular circumstances and independently review (with your professional advisers as necessary) the specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences. Lehman Brothers does not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. References herein to 'Lehman Bros' shall include Lehman Brothers International (Europe) and Lehman Brothers Europe Limited and their affiliates. Both Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are regulated by the Financial Services Authority.

**Exhibit 2**

**LP IV Interim report and Accounts (Unaudited) For the Period Ended 31 May 2008**

# LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

Interim Report and Accounts
(Unaudited)
For the period ended 31 May 2008
Registered No. LP 011818

## Lehman Brothers UK Capital Funding IV LP

Registered No. LP 011818

**PARTNERS**
LB GP No. 1 Limited – General Partner
The Bank of New York Depository (Nominees) Limited – Initial Limited Partner
LB Investment Holdings Limited – Preferential Limited Partner

**BUSINESS ADDRESS**
25 Bank Street
London
E14 5LE

**AUDITORS**
Ernst & Young LLP
1 More London Place
London SE1 2AF

## Lehman Brothers UK Capital Funding IV LP

### INTERIM PARTNERS' REPORT

The partners present their interim report and unaudited condensed accounts for the six months ended 31 May 2008.

This condensed interim financial information does not comprise statutory accounts within the meaning of section 240 of the Companies Act 1985 (section 434 of the Companies Act 2006).

Lehman Brothers UK Capital Funding IV LP is registered as a limited partnership under the Limited Partnership Act 1907.

The Limited Partnership agreement was made on 3 January, 2007 between the companies:

1. **LB GP NO. 1 LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the General Partner");

2. **THE BANK OF NEW YORK DEPOSITARY (NOMINEES) LIMITED**, a company incorporated in England and Wales whose registered office is at 1 Canada Square, London E14 5AL, United Kingdom ("the Initial Limited Partner"); and

3. **LB INVESTMENT HOLDINGS LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holdings Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the Preferential Limited Partner").

The capital contribution made by the partners is disclosed in note 12 of the accounts.

Under the Limited Partnership agreement, no partner shall have any right to withdraw from the partnership or make a demand for withdrawal of any part of its Capital Contribution until the dissolution of the partnership.

Further, any distribution made on the distribution payment date shall not have the benefit of reducing, withdrawing, returning or eliminating any part of the Aggregate Capital Contributions.

A Limited Partner may make further Capital Contribution to satisfy any commitment or may be separately agreed with the General Partner in line with the Limited Partnership agreement.

Partners' profit and losses are allocated between them in accordance with the Limited Partnership agreement, which also governs the rights of partners regarding drawings.

### PRINCIPAL ACTIVITY

The principal activity of the limited partnership is to raise capital by issuing preferred securities to the Initial Limited Partner, which is then further lent on to Lehman Brothers Holdings Inc.

### REVIEW OF BUSINESS AND FUTURE DEVELOPMENTS

The loss after taxation for the six months period of Eur 4,447,695 is set out on page 5 and has been transferred to the partner's current account (note 13). (Period from 3 January to 31 May 2007 – Eur10, 396,467).

The partners do not expect any significant changes to the business in the foreseeable future and the financial position of the partnership at the end of the period was satisfactory.

### RELATED PARTY TRANSACTIONS

There are no related party transactions to report.  The partnership has taken advantage of the exemption in paragraph 3(c) of Financial Reporting Standard 8 from disclosing transactions with related parties that are part of Lehman Brothers Holdings Inc.

Lehman Brothers UK Capital Funding IV LP

## INTERIM PARTNERS' REPORT (CONTINUED)

### GOING CONCERN

LB GP No.1 Limited, the partnership's General Partner, has confirmed that it will maintain its financial support to enable the partnership to meet its liabilities as they fall due, if required.

The partners have a reasonable expectation that the partnership has adequate resources to continue in operational existence for the foreseeable future. For this reason, they continue to adopt the going concern basis in preparing the accounts.

The partners consider that no additional disclosures in respect of going concern are necessary for the accounts to give a true and fair view.

### GROUP RISK MANAGEMENT

Risk management policies and procedures for Lehman Brothers Holdings Inc. and subsidiaries (the "Group") (including all international locations) are developed on a global basis.

As a leading global investment bank, risk is an inherent part of our businesses. Global markets, by their nature, are prone to uncertainty and subject participants to a variety of risks. Risk management is considered to be of paramount importance in our day-to-day operations. Consequently, we devote significant resources (including investments in employees and technology) to the measurement, analysis and management of risk.

The principal risks of the partnership and management of risk are disclosed in note 15 of the accounts.

On behalf of the General Partner

1 1 SEP 2008

Lehman Brothers UK Capital Funding IV LP

## STATEMENT OF PARTNERS' RESPONSIBILITIES

The partners confirm that this condensed financial information has been prepared in accordance with IAS 34 as adopted by the European Union and that the interim partners' report includes a fair review of information required by DTR 4.2.7 and DTR 4.2.8, namely:

- an indication of important events that have occurred during the first six months and their impact on the condensed set of financial statements, and a description of the principal risks and uncertainties for the remaining six months of the financial year; and

- material related-party transactions in the first six months and any material changes in the related-party transactions described in the last annual report.

## Lehman Brothers UK Capital Funding IV LP

PROFIT AND LOSS ACCOUNT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| Interest receivable and similar income | 2 | 19,903,808 | 3,383,311 |
| Interest payable and similar charges | 3 | (24,351,503) | (13,779,778) |
| LOSS ON ORDINARY ACTIVITIES BEFORE TAXATION | | (4,447,695) | (10,396,467) |
| Taxation on loss on ordinary activities | 5 | - | - |
| LOSS FOR THE FINANCIAL PERIOD | | (4,447,695) | (10,396,467) |

### LOSS APPROPRIATION ACCOUNT FOR THE PERIOD

| | | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| Loss to be shared | | (4,447,695) | (10,396,467) |
| Share of Loss: | | | |
| General Partner – LB GP No. 1 Limited | 13 | - | - |
| Initial Limited Partner – Bank of New York Depository (Nominees) Ltd | 13 | - | - |
| Preferential Limited Partner - LB Investment Holdings Limited | 13 | 4,447,695 | 10,396,467 |

There are no other gains or losses attributable to the partners of the partnership for six months ended 31 May 2008 and for the period from 3 January to 31 May 2007.

The results in the profit and loss account for the six month period ended 31 May 2008 and for the period from 3 January to 31 May 2007 relates to continuing activities.

## Lehman Brothers UK Capital Funding IV LP

**BALANCE SHEET**
As at 31 May 2008

| | Notes | Unaudited 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|---|
| **FINANCIAL ASSETS** | | | |
| Available for sale – Money Market Investments | 6 | 10,555,212 | 10,334,142 |
| Loans and receivables | 7 | 200,000,001 | 200,000,001 |
| | | 210,555,213 | 210,334,143 |
| **CURRENT ASSETS** | | | |
| Debtors: amounts falling due within one year | 7 | 1,123,800 | 1,114,111 |
| **CURRENT LIABILITIES** | | | |
| CREDITORS: amounts falling due within one year | 8 | (1,165,753) | (9,767,123) |
| NET CURRENT (LIABILITIES) / ASSETS | | (41,953) | (8,653,012) |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** | | 210,513,260 | 201,681,131 |
| CREDITORS: amounts falling due after more than one year | 9 | (200,000,000) | (200,000,000) |
| Derivative financial instrument | 10 | (17,705,652) | (4,425,828) |
| | | (7,192,392) | (2,744,697) |
| **FINANCED BY:** | | | |
| Partners' capital accounts | 12 | 10,000,001 | 10,000,001 |
| Partners' current accounts | 13 | (17,192,393) | (12,744,698) |
| | | (7,192,392) | (2,744,697) |

The accounts and notes to the accounts on pages 5 to 14 were approved by the General Partner on
and were signed on their behalf by:

11 SEP 2008

## Lehman Brothers UK Capital Funding IV LP

### CASH FLOW STATEMENT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES | 14 | – | (1) |
| | | | |
| RETURNS ON INVESTMENTS AND SERVICING OF FINANCE | | | |
| Interest received | | 19,673,049 | 2,273,500 |
| Interest paid | | (19,673,049) | (2,273,500) |
| Dividends received from Money Market Investment | | 221,070 | 126,843 |
| | | | |
| Net cash inflow from returns on investments and servicing of finance | | 221,070 | 126,843 |
| | | | |
| CAPITAL EXPENDITURE AND FINANCIAL INVESTMENT | | | |
| Purchase of Money Market Investment | | (221,070) | (10,126,843) |
| Purchase of sub-ordinated debt | | – | (200,000,000) |
| | | | |
| Net cash outflow from capital expenditure and financial investment | | (221,070) | (210,126,843) |
| | | | |
| FINANCING | | | |
| Partnership capital account deposited | | – | 10,000,001 |
| Increase in perpetual preferred securities | | – | 200,000,000 |
| | | | |
| Net cash inflow from financing | | – | 210,000,001 |
| | | | |
| | | – | – |
| MOVEMENT IN NET CASH | | | |

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

1.  **ACCOUNTING POLICIES**

*Basis of Preparation*
The condensed interim accounts of Lehman Brothers UK Capital Funding IV LP have been prepared in accordance with the Disclosure and Transparency Rules of the Financial Services Authority and with IAS 34, 'Interim financial reporting'.  The condensed interim financial information should be read in conjunction with the annual financial statements for the year ended 30 November 2007, which have been prepared under applicable accounting standards in the United Kingdom and in accordance with The Partnerships and Unlimited Companies (Accounts) Regulation 1993.

*Accounting Policies*
The accounting policies applied are consistent with those of the annual financial statements for the year ended 30 November 2007.

2.  **INTEREST RECEIVABLE AND SIMILAR INCOME**

|  | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Interest receivable on subordinated notes issued by other group undertakings | 5,347,122 | 3,256,467 |
| Dividend Income receivable on money market investment | 221,070 | 126,844 |
| Interest received on interest rate swap | 14,335,616 | — |
|  | 19,903,808 | 3,383,311 |

3.  **INTEREST PAYABLE AND SIMILAR CHARGES**

|  | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Interest payable on perpetual preferred securities | (5,734,247) | (4,001,370) |
| Interest paid on interest rate swap | (5,337,432) | (2,273,500) |
| Interest rate swap fair value loss | (13,279,824) | (7,504,908) |
|  | (24,351,503) | (13,779,778) |

4.  **PROFIT AND LOSS ACCOUNT**
The partnership had no employees during the period (2007 – none).

There was no income distribution paid to the General Partner, Initial Limited Partner and the Preferential Limited Partner during the period (2007 – nil).

Any income or losses of the partnership are appropriated to the Preferential Limited Partner's current account in accordance with the Partnership Agreement.

5.  **TAX ON LOSS ON ORDINARY ACTIVITIES**
No provision for taxation has been made in the accounts. Each partner is exclusively liable for tax liabilities arising out of their interest in the partnership and this will be assessed on them and not the partnership.

8

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

**6.    AVAILABLE FOR SALE - MONEY MARKET INVESTMENTS**

| | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Money Market Investments | 10,555,212 | 10,334,142 |

On 25 January 2007, the partnership subscribed to Money Market Investment of Lehman Brothers AAA Euro Liquidity Fund, listed on the Irish Stock Exchange, maturing on the 25 April 2037.

The partnership's investment in the money market fund of Lehman Brothers AAA Euro Liquidity Fund expose it to credit risk that the issuer of the security, Lehman Brothers AAA Euro Liquidity Fund will be unable to repay the dividend and principal in a timely manner.

The maximum amount of the credit exposure as at 31 May 2008 is Eur 10,555,212 (2007 – Eur 10,334,142).

| | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Notional at the beginning of the period | 10,334,142 | 10,000,000 |
| Notional subscribed during the period | 221,070 | 334,142 |
| | 10,555,212 | 10,334,142 |

During the period dividend income of Eur 221,070 was received and reinvested with equivalent value of shares received with a nominal value of Eur 1 per share.

**7.    LOANS AND RECEIVABLES**

| | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| **(a) Debtors: amount falling due after one year** | | |
| Amount receivable from other group undertakings | 1 | 1 |
| Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 200,000,000 |
| | 200,000,001 | 200,000,001 |

On 25 January 2007, the partnership has subscribed to Subordinated notes of Lehman Brothers Holding PLC, maturing on 25 April 2037. The interest rate on the notes is EURIBOR + 0.79%. The interest is receivable quarterly on 25 January, April, July and October each year from and including 25 April 2008 to and including the termination date.

The effective interest rate of EURIBOR + 0.79% has been used to calculate the amortised value of the Subordinated notes as at the six month period end date 31 May 2008.

The partnership's investment in the subordinated notes of Lehman Brothers Holdings PLC expose it to credit risk that the issuer of the subordinated notes, Lehman Brothers Holdings PLC will be unable to repay interest and principal in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is Eur 200,000,000 (2007 – Eur 200,000,000).

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

7.   **LOANS AND RECEIVABLES (CONTINUED)**

|  | 31 May 2008<br>EUR | 30 Nov 2007<br>EUR |
|---|---|---|
| **(b) Debtors: amount falling due within one year**<br>Interest receivable on subordinated notes issued by other group undertakings | 1,123,800 | 1,114,111 |

The maximum amount of the credit exposure as at 31 May 2008 is Eur 1,123,800 (2007 – Eur 1,114,111).

8.   **CREDITORS: AMOUNTS FALLING DUE WITHIN ONE YEAR**

|  | 31 May 2008<br>EUR | 30 Nov 2007<br>EUR |
|---|---|---|
| Interest payable on perpetual preferred securities | (1,165,753) | (9,767,123) |

9.   **CREDITORS: AMOUNTS FALLING DUE AFTER MORE THAN ONE YEAR**

|  | 31 May 2008<br>EUR | 30 Nov 2007<br>EUR |
|---|---|---|
| Financial liability at amortised cost -<br>Perpetual preferred securities | (200,000,000) | (200,000,000) |

On 25 January 2007, the partnership issued Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities, listed on the London Stock Exchange and Euronext Amsterdam NV. The Perpetual Preferred Securities are guaranteed by Lehman Brothers Holding Inc and include an optional redemption clause that may be exercised by the General Partner if the Subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

The interest rate on the Perpetual Preferred Securities is 5.75%. The interest is payable on 25 April each year from and including 25 April 2008 to and including the termination date.

The effective interest rate of 5.75% has been used to calculate the amortised value of the Perpetual Preferred Securities as at the six month period end date 31 May 2008 (2007 – 5.75%).

The partnership has not had any default of principal, interest or any other breaches with respect to their liabilities for the financial period.

10

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

10.  DERIVATIVES FINANCIAL INSTRUMENT

| | | 31 May 2008 |
| | | Fair value |
| | Notional Amount | Liabilities |
| | EUR | EUR |
|---|---|---|
| Interest rate swap | 200,000,000 | (17,705,652) |

| | | 30 Nov 2007 |
| | | Fair value |
| | Notional Amount | Liabilities |
| | EUR | EUR |
|---|---|---|
| Interest rate swap | 200,000,000 | (4,425,828) |

On 25 January 2007, the partnership subscribed to Interest rate Swap with Lehman Brothers Special Finance, maturing on 25 April 2047. The Interest rate Swap includes a cancellation option held by Lehman Brothers Special Finance to terminate the Swap on 25 April 2012 and annually thereafter.

The interest rate on the fixed interest rate leg of the Interest rate Swap is 5.75%. The interest is receivable annually on 25 April each year from and including 25 April 2008 to and including the termination date.

The interest rate on the floating interest rate leg of the Interest rate Swap is 3 month EURIBOR + 0.79%. The interest is payable quarterly on 25 January, April, July and October each year from and including 25 April 2007 to and including the termination date.

11.  FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES

| | 31 May 2008 Carrying value EUR | 31 May 2008 Fair value EUR |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | | |
| - Amount receivable from other group undertakings | 1 | 1 |
| - Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 141,792,000 |
| - Debtors: Amounts falling due within one year | 1,123,800 | 1,123,800 |
| (ii) Available for Sale – Money Market Investments | 10,555,212 | 10,555,212 |
| | | |
| **Financial Liabilities** | | |
| (i) Financial liability at amortised cost | | |
| - Perpetual Preferred Securities | (200,000,000) | (124,000,000) |
| (ii) Fair value through P&L | | |
| Derivative Financial Instrument - Interest rate Swap (negative value) | (17,705,652) | (17,705,651) |
| (iii) Creditors: Amounts falling due within one year | (1,165,753) | (1,165,753) |

11

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

11. **FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES (CONTINUED)**

|  | 30 Nov 2007 Carrying value EUR | 30 Nov 2007 Fair value EUR |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | | |
|   - Amount receivable from other group undertakings | 1 | 1 |
|   - Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 171,740,192 |
|   - Debtors: Amounts falling due within one year | 1,114,111 | 1,114,111 |
| (ii) Available for Sale – Money Market Investments | 10,334,142 | 10,334,142 |
| **Financial Liabilities** | | |
| (i) Financial liability at amortised cost | | |
|   - Perpetual Preferred Securities | (200,000,000) | (158,681,600) |
| (ii) Fair value through P&L | | |
|   Derivative Financial Instrument - Interest rate Swap (negative value) | (4,425,828) | (4,425,828) |
| (iii) Creditors: Amounts falling due within one year | (9,767,123) | (9,767,123) |

The fair value of quoted instruments is determined by reference to bid prices at the close of business on the balance sheet date. Where there is no active market, fair value is determined using the valuation techniques. These include using recent arm's length market transactions; reference to the current market value of another instrument which is substantially the same; discounted cash flow analysis and pricing models.

The fair value approximates the carrying value of the six months end balance of the debtors – amounts falling due within one year and the creditors – amounts falling due within one year.

12. **PARTNERS' ACCOUNTS**

**Capital Accounts**

|  | General Partner EUR | Initial Limited Partner EUR | Preferential Limited Partner EUR | Total EUR |
|---|---|---|---|---|
| At 30 November 2007 | 1 | – | 10,000,000 | 10,000,001 |
| At 31 May 2008 | 1 | – | 10,000,000 | 10,000,001 |

12

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

13. **PARTNERS' CURRENT ACCOUNTS**

**Current Accounts**

| | General Partner EUR | Initial Limited Partner EUR | Preferential Limited Partner EUR | Total EUR |
|---|---|---|---|---|
| At 1 December 2007 | – | – | (12,744,698) | (12,744,698) |
| Share of loss for the period | – | – | (4,447,695) | (4,447,695) |
| At 31 May 2008 | – | – | (17,192,393) | (17,192,393) |

**Loan Accounts**
There are no loan accounts held by the General Partner, Initial Limited Partner and the Preferential Limited Partner during the period (2007 – nil).

14. **CASH FLOW FROM OPERATING ACTIVITIES**

| | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Operating profit | – | – |
| Increase in debtors | – | (1) |
| | – | (1) |

13

Lehman Brothers UK Capital Funding IV LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

15. **FINANCIAL RISK MANAGEMENT**

**Market price risk** – Market price risk can be defined as the uncertainty from future price movements of the financial instrument issued and invested in by the partnership. Market price risk arises mainly from economic factors and is not limited to interest rate and currency movements. This exposure to market price risk may result in substantial fluctuations in the market price of the issued preferred securities and the invested subordinated notes from time to time. The partnership seeks to minimise these risks by holding the same notional value of the invested subordinated notes and the issued perpetual preferred securities as the market price of the two financial instruments are linked.

**Currency risk** – Foreign currency risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in foreign exchange rates. The partnership is not exposed to currency risk because the issued perpetual preferred securities and the investment in the subordinated notes are both in the same currency.

**Credit risk** – The partnership's transactions in the subordinated notes expose it to the risk that the counterparty will not be able to honour its contractual obligation to deliver the investment for the purchase or cash for a sale. The issuer's sole source of funds to pay distribution on the preferred securities will be payments which it receives from its investments in the subordinated notes issued by Lehman Brothers Holding Inc. The perpetual preferred securities will benefit from a subordinated guarantee entered into by Lehman Brothers Holding Inc which is the parent company of the Lehman Brothers group of companies.

**Liquidity risk** – The assets of the partnership include subordinated notes that are issued by Lehman Brothers Holding Inc.

Whilst, the preferred securities has no fixed final redemption date, the securities carry an optional redemption clause that may be exercised by the General Partner to redeem the preferred securities if the subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

**Interest rate risk** – Interest rate risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in interest rates. Investments and issued debt with fixed or floating rates may experience substantial fluctuations in net cash flow and valuation for changing interest rate. If interest rates rise, the income potential of the investment or issued debt may rise or fall depending on if the interest rate is fixed or floating and vice versa.

16. **ULTIMATE PARENT UNDERTAKING**

The ultimate parent undertaking of Lehman Brothers UK Capital Funding IV LP is LB GP No.1 Limited, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc.

The largest group in which the results of the partnership are consolidated is that headed by LB GP No. 1 Limited. The consolidated accounts of the group are available to the public from 25 bank Street, London E14 5LE.

14

**Exhibit 3**

**Board Resolution**

# UNANIMOUS WRITTEN CONSENT OF THE

# EXECUTIVE COMMITTEE OF THE

# BOARD OF DIRECTORS OF

# LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

WHEREAS, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

WHEREAS, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

WHEREAS, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

WHEREAS, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

WHEREAS, Management wishes to establish additional Guaranteed Subsidiaries,

WHEREAS, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

WHEREAS, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

NOW THEREFORE BE IT,

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

Richard S. Fuld, Jr.                              John D. Macomber

2

06/08/2005    16:41    LEHMAN → 916467582653                    NO.504    P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

## CLAIM FORM FILING CONFIRMATION

Your claim form was successfully filed on 8/24/2018 at 4:37 PM Central. Please print this page as proof of your filing.

---

**Lehman Brothers UK Capital Funding LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

Name of Debtor, or other entity, against which you have a direct claim (the "Obligor")

Lehman Brothers Special Financing Inc. (08-13888)

If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed.

| Documents |
| --- |
| LP IV Claim Against LBSF.pdf |

List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount.

| Documents |
| --- |
| 31 - Lehman Brothers UK Capital Funding IV LP and Lehman Brothers Specia....pdf |

Amount of claim against Obligor

$187,037,060.00

Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"):

Lehman Brothers Holdings Inc. (08-13555)

Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire.

| Documents |
| --- |
| LBHI Board Guarantee Resolution (6.9.05).pdf |

Amount of claim against the Guarantor

$187,531,243.00

---

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | |
| Lehman Brothers Holdings Inc. | 08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding V LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000    Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**
_____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ 612,934,864 , as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO** http://www.lehman-claims.com **AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: See addendum
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
**3a.** Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

**7.** Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED

AUG 24 2018

EPIQ

| Date:<br>16 AUGUST 2018 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>[signature]    BRUCE ALEXANDER MACKAY |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT FOR LB GP No 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING V LP WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that Qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9).**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## ___ DEFINITIONS ___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market); exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## ___ INFORMATION ___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:                                            :

                                                  :          **Chapter 11**

                                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :          **Case No. 08-13555 (JMP)**

                                                  :

                                                  :          **(Jointly Administered)**

                         **Debtors.**             :

                                                  :

-------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING V LP AGAINST LEHMAN BROTHERS HOLDINGS INC.

**A.      The Chapter 11 Cases**

1.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "LBHI Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      On October 3, 2008 (the "LBSF Petition Date"), Lehman Brothers Special Financing Inc. ("LBSF") commenced a voluntary proceeding (the "LBSF Case") in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  The LBHI Cases and the LBSF Case have been consolidated for administrative purposes.

**B.      The Schedules and Bar Date Order**

3.      On March 12, 2009, LBSF filed schedules of its assets and liabilities.  On June 15, 2009, LBSF filed amended schedules of its assets and liabilities (the "Schedules").

4.      On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271 in the LBHI Cases] (the "Bar Date Order") establishing a claims bar date by which certain entities were

required to file proofs of claim against the debtors in the LBHI Cases and the LBSF Case. Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". See Bar Date Order at 5. Lehman Brothers UK Capital Funding V LP ("LP V") was and is on the Exempt Entities List. Thus, LP V was not required to file a proof of claim under the Bar Date Order and does so now only out of an abundance of caution. LP V reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

**C.    The Partnership**

5.      LP V is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP V and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP V was formed to raise regulatory capital for LBHI by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP V issued $500,000,000 Fixed Rate ECAPS. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBHI.

6.      As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI, LBSF, and the other debtors in the LBHI Cases and the LBSF Case negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737 in the LBHI Cases], which was confirmed on December 11, 2011 [Docket No. 23023 in the LBHI Cases], and went effective on March 6, 2012 [Docket No. 26039 in the LBHI Cases].

7.      On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the LBHI Cases and the LBSF Case, so that it may appropriately distribute the Partnerships' assets.

**D.      The Swap Claims against LBSF**

8.      Upon information and belief, LP V was party to a 60-year non-call 5-year interest rate swap with LBSF (the "Swap"). Upon information and belief, the notional amount of the Swap was $500,000,000, with a maturity of June 1, 2067. LBSF had a cancellation option on the Swap that could be exercised on June 1, 2012, and annually thereafter. Upon information and belief, the interest rate on the fixed interest rate leg of the Swap is 6.90%, which interest was receivable annually on June 1 of each year from and including June 1, 2008, to and including the termination date. Upon information and belief, the interest rate on the floating interest rate leg of the Swap is 3 month USD LIBOR + 0.64%, payable quarterly on the 1st of March, June,

September, and December each year from and including June 1, 2008, to and including the termination date.

9.    Upon information and belief, LBSF's Schedules include an intercompany payable from LBSF to Lehman Brothers UK Capital Funding V LP for $26,808,640.  See Schedules, Schedule F - Personal Property, Page 2 of 5 (showing unliquidated amount owed to LB Capital Funding No. 5 LP as an intercompany payable from LBSF).  The Joint Liquidators believe that this intercompany payable is on account of the Swap.

10.    The Joint Liquidators have no information indicating that LBSF cancelled the Swap pursuant to its cancellation option or that LBSF or LP V terminated the swap upon the commencement of the LBSF Case.

11.    Pursuant to Article 11.1 of the Plan, all prepetition executory contracts between LBHI, LBSF, or any other debtor and another person or entity was deemed rejected on the effective date of the Plan, except as otherwise set forth in Article 11.1.  Upon information and belief, the Swap was therefore rejected as of March 6, 2012.

12.    The Joint Liquidators have not at this time been able to locate further information on the Swap other than what is attached hereto as **Exhibit 1** and **Exhibit 2**, including with respect to any guarantees of the Swap by LBHI.  Contemporaneously herewith, the Joint Liquidators have contacted counsel to LBHI and LBSF and requested all documentation they have with respect to the Swap.

13.    The Joint Liquidators had the Swap independently valued based on the limited information that the Joint Liquidators currently have in their possession.  The Joint Liquidators will amend this Proof of Claim as necessary upon obtaining additional documentation or learning new facts related to the Swap and reserve all of their rights and those of LP V in relation to the Swap.  The independent analysis the Joint Liquidators have received values the Swap claim at

$612,934,864. The Swap claim includes (a) $531,318,852 for amounts owed as a result of the automatic rejection of the Swap upon consummation of the Plan on March 6, 2012, and (b) $81,616,012 of net unpaid and accrued amounts owed to LP V up to and including March 6, 2012. The Joint Liquidators have assumed that net unpaid and accrued amounts owed to LP V up to and including March 6, 2012, have not been paid. Contemporaneously herewith, LP V has filed a proof of claim against LBSF on account of the Swap.

### E.    Guarantee Claim against LBHI

14.    As noted above, the Joint Liquidators do not currently have any documentation related to the Swap, including documentation related to any guarantee of the Swap by LBHI or any other entity. Notwithstanding the foregoing, upon information and belief, many of LBSF's swaps were guaranteed by LBHI. *See, e.g., Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code Approving Settlement Agreement Among Credit Suisse AG and Certain of its Affiliates, and Lehman Brothers Holdings Inc. and Certain of its Affiliates* [Docket No. 58434] (approving settlement with LBHI guaranteeing swap claims against LBSF).

15.    In addition, the Board of Directors of LBHI, by unanimous written consent, adopted a resolution as of June 9, 2005, to guarantee the debts of certain of its subsidiaries, including LBSF (the "Board Resolution"). A copy of the Board Resolution is attached as **Exhibit 3**. LP V entered into the Swap with LBSF after the issuance of the Board Resolution. LP V was managed by the General Partner, whose sole shareholder was LBHI. Thus, upon information and belief, LP V had constructive knowledge if not actual knowledge of the Board Resolution.

16.     By this Proof of Claim, LP V asserts the full amount of $612,934,864 against LBHI on account of the guarantee of the Swap (being the combined sum of the amounts shown and explained in paragraph 13).

**F.      Reservation of Rights**

17.     LP V reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

**G.      Notices**

18.     All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring
Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding V LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention: Bruce Mackay
Telephone: +44 (0)20 3201 8000
Email: bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention: David R. Seligman, P.C. and Joseph M. Graham
Telephone: (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*     *     *     *     *

**<u>Exhibit 1</u>**

**Indicative Term Sheet re Swap**



## LEHMAN BROTHERS

### Fixed Income Derivative Products

# 60yr non call 5yr interest rate swap

| | |
|---|---|
| Party A | Lehman Brothers UK Capital Funding V LP |
| Party B | Lehman Brothers Special Finance |
| Notional Amount | USD 500,000,000 |
| Trade Date | 15 May 2007 |
| Settlement Date | 1 June 2007 |
| Maturity Date | 1 June 2067 |
| Cancellation Option | On 1st June 2012 and annually thereafter, Option Holder may choose to terminate the swap. On such termination, no further payments will be made by either party. Notice date is 37 days. |
| Cancellation Option Holder | Lehman Brothers Special Finance |
| Initial Exchange | None |
| Final Exchange | None |
| Swap Exchange | |
| Party A pays | 3month Libor + 64 bps, modified following quarterly Act/360 on Notional Amount |
| Party B pays | 6.90% annually unadjusted 30/360 on Notional Amount |
| Calculation Agent | Party B |
| Business Days | NEW YORK |
| Documentation | All capitalised terms used in this term sheet and not otherwise defined will have the meanings given to them in the 2000 ISDA Definitions |

This termsheet is indicative only and is subject to change without notice. Information other than indicative terms (including market data and statistical information) has been obtained from various sources. We do not represent that it is complete or accurate. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters, is not comprehensive, is not intended to suggest that outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. No assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Transactions of the sort described herein contain complex characteristics and risk factors. Transactions incorporating derivatives may create additional risks and exposures. Before entering into any transaction, you should consider the suitability of the transaction to your particular circumstances and independently review (with your professional advisers as necessary) the specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences. Lehman Brothers does not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. References herein to 'Lehman Bros' shall include Lehman Brothers International (Europe) and Lehman Brothers Europe Limited and their affiliates. Both Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are regulated by the Financial Services Authority.

**Exhibit 2**

**LP V Interim report and Accounts (Unaudited) For the Period Ended 31 May 2008**

# LEHMAN BROTHERS UK CAPITAL FUNDING V LP

Interim Report and Accounts

(Unaudited)

For the period ended 31 May 2008

Registered No. LP 012132

# Lehman Brothers UK Capital Funding V LP

Registered No. LP 012132

**PARTNERS**
LB GP No. 1 Limited – General Partner
The Bank of New York Depository (Nominees) Limited – Initial Limited Partner
LB Investment Holdings Limited – Preferential Limited Partner

**BUSINESS ADDRESS**
25 Bank Street
London
E14 5LE

**AUDITORS**
Ernst & Young LLP
1 More London Place
London SE1 2AF

Lehman Brothers UK Capital Funding V LP

## INTERIM PARTNERS' REPORT

The partners present their interim report and unaudited condensed accounts for the six months ended 31 May 2008.

This condensed interim financial information does not comprise statutory accounts within the meaning of section 240 of the Companies Act 1985 (section 434 of the Companies Act 2006).

Lehman Brothers UK Capital Funding V LP is registered as a limited partnership under the Limited Partnership Act 1907.

The Limited Partnership agreement was made on 10 May, 2007 between the companies:

1. **LB GP NO. 1 LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the General Partner");

2. **THE BANK OF NEW YORK DEPOSITARY (NOMINEES) LIMITED**, a company incorporated in England and Wales whose registered office is at 1 Canada Square, London E14 5AL, United Kingdom ("the Initial Limited Partner"); and

3. **LB INVESTMENT HOLDINGS LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holdings Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the Preferential Limited Partner").

The capital contribution made by the partners is disclosed in note 12 of the accounts.

Under the Limited Partnership agreement, no Partner shall have any right to withdraw from the partnership or make a demand for withdrawal of any part of its Capital Contribution until the dissolution of the partnership.

Further, any distribution made on the distribution payment date shall not have the benefit of reducing, withdrawing, returning or eliminating any part of the Aggregate Capital Contributions.

A Limited Partner may make further Capital Contribution to satisfy any commitment or may be separately agreed with the General Partner in line with the Partnership Agreement.

Partners' profit and losses are allocated between them in accordance with the Limited Partnership agreement, which also governs the rights of partners regarding drawings.

## PRINCIPAL ACTIVITY

The principal activity of the limited partnership is to raise capital by issuing preferred securities to the Initial Limited Partner, which is then further lent on to Lehman Brothers Holdings Inc.

## REVIEW OF BUSINESS AND FUTURE DEVELOPMENTS

The profit after taxation for the six months period of USD 154,056 is set out on page 5 and has been transferred to the partner's current account (note 13). (Period from 10 May to 31 May 2007 - $nil).

The partners do not expect any significant changes to the business in the foreseeable future and the financial position of the partnership at the end of the period was satisfactory.

## RELATED PARTY TRANSACTIONS

There are no related party transactions to report. The partnership has taken advantage of the exemption in paragraph 3(c) of Financial Reporting Standard 8 from disclosing transactions with related parties that are part of Lehman Brothers Holdings Inc.

2

Lehman Brothers UK Capital Funding V LP

## INTERIM PARTNERS' REPORT (CONTINUED)

### GROUP RISK MANAGEMENT

Risk management policies and procedures for Lehman Brothers Holdings Inc. and subsidiaries (the "Group") (including all international locations) are developed on a global basis.

As a leading global investment bank, risk is an inherent part of our businesses. Global markets, by their nature, are prone to uncertainty and subject participants to a variety of risks. Risk management is considered to be of paramount importance in our day-to-day operations. Consequently, we devote significant resources (including investments in employees and technology) to the measurement, analysis and management of risk.

The principal risks of the partnership and management of risk are disclosed in note 15 of the accounts.

On behalf of the General Partner

1.1 SEP 2008

3

Lehman Brothers UK Capital Funding V LP

## STATEMENT OF PARTNERS' RESPONSIBILITIES

The partners confirm that this condensed financial information has been prepared in accordance with IAS 34 as adopted by the European Union and that the interim partners' report includes a fair review of information required by DTR 4.2.7 and DTR 4.2.8, namely:

- an indication of important events that have occurred during the first six months and their impact on the condensed set of financial statements, and a description of the principal risks and uncertainties for the remaining six months of the financial year; and

- material related-party transactions in the first six months and any material changes in the related-party transactions described in the last annual report.

Lehman Brothers UK Capital Funding V LP

## PROFIT AND LOSS ACCOUNT
For the period ended 31 May 2008

|  | Notes | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| Interest receivable and similar income | 2 | 32,515,357 | — |
| Interest payable and similar charges | 3 | (32,361,301) | — |
| PROFIT ON ORDINARY ACTIVITIES BEFORE TAXATION | | 154,056 | |
| Taxation on profit on ordinary activities | 5 | — | — |
| PROFIT FOR THE FINANCIAL PERIOD | | 154,056 | |

## PROFIT APPROPRIATION ACCOUNT FOR THE SIX MONTH PERIOD ENDED 31 MAY 2008

|  |  | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| Profit to be shared | | 154,056 | |
| Share of Profit: | | | |
| **PROFIT APPROPRIATION** | | | |
| General Partner – LB GP No. 1 Limited | 13 | - | - |
| Initial Limited Partner – Bank of New York Depository (Nominees) Ltd | 13 | - | - |
| Preferential Limited Partner - LB Investment Holdings Limited | 13 | (154,056) | - |
| | | - | - |

There are no other gains or losses attributable to the partners of the partnership for the six months ended 31 May 2008 and for the period 10 May to 31 May 2007.

The results in the profit and loss account for the six month period ended 31 May 2008 and for the period 10 May to 31 May 2007 relate to continuing activities.

## Lehman Brothers UK Capital Funding V LP

BALANCE SHEET
As at 31 May 2008

|  | Notes | *Unaudited* *31 May 2008* *USD* | *30 Nov 2007* *USD* |
|---|---|---|---|
| **FINANCIAL ASSETS** |  |  |  |
| Available for sale – Money Market Investment | 6 | 26,097,463 | 25,646,026 |
| Loans and receivables | 7 | 500,000,001 | 500,000,001 |
| Derivative financial instrument | 8 | 37,582,472 | 17,570,146 |
|  |  | 563,679,936 | 543,216,173 |
| **CURRENT ASSETS** |  |  |  |
| Debtors: amounts falling due within one year | 7 | 4,592,932 | 7,652,639 |
| **CURRENT LIABILITIES** |  |  |  |
| CREDITORS: amounts falling due within one year | 9 | (34,500,000) | (17,250,000) |
| **NET CURRENT (LIABILITIES)/ASSETS** |  | (29,907,068) | (9,597,361) |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** |  | 533,772,868 | 533,618,812 |
| CREDITORS: amounts falling due after more than one year | 10 | (500,000,000) | (500,000,000) |
|  |  | 33,772,868 | 33,618,812 |
| **FINANCED BY:** |  |  |  |
| Partners' capital accounts | 12 | 25,000,001 | 25,000,001 |
| Partners' current accounts | 13 | 8,772,867 | 8,618,811 |
|  |  | 33,772,868 | 33,618,812 |

The accounts and notes to the accounts on pages 5 to 14 were approved by the General Partner on
and were signed on their behalf by:

1 1 SEP 2008

## Lehman Brothers UK Capital Funding V LP

### CASH FLOW STATEMENT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES | 14 | — | (1) |
| | | | |
| RETURNS ON INVESTMENTS AND SERVICING OF FINANCE | | 15,111,301 | — |
| Interest received | | (15,111,301) | — |
| Interest paid | | 451,437 | — |
| Dividends received from Money Market Investment | | | |
| Net cash inflow from returns on investments and servicing of finance | | 451,437 | — |
| | | | |
| CAPITAL EXPENDITURE AND FINANCIAL INVESTMENT | | (451,437) | — |
| Purchase of Money Market Investment | | | |
| | | | |
| FINANCING | | — | 1 |
| Partnership capital account deposited | | | — |
| | | | |
| MOVEMENT IN NET CASH | | — | — |

7

Lehman Brothers UK Capital Funding V LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

1. **ACCOUNTING POLICIES**

*Basis of Preparation*
The condensed interim accounts of Lehman Brothers UK Capital Funding V LP have been prepared in accordance with the Disclosure and Transparency Rules of the Financial Services Authority and with IAS 34, 'Interim financial reporting'. The condensed interim financial information should be read in conjunction with the annual financial statements for the year ended 30 November 2007, which have been prepared under applicable accounting standards in the United Kingdom and in accordance with The Partnerships and Unlimited Companies (Accounts) Regulation 1993.

*Accounting Policies*
The accounting policies applied are consistent with those of the annual financial statements for the year ended 30 November 2007.

2. **INTEREST RECEIVABLE AND SIMILAR INCOME**

|  | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| Interest receivable on subordinated notes issued by other group undertakings | 12,051,594 | — |
| Dividend Income receivable on money market investment | 451,437 | — |
| Interest rate swap fair value gain | 20,012,326 | — |
|  | 32,515,357 | — |

3. **INTEREST PAYABLE AND SIMILAR CHARGES**

|  | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| Interest payable on perpetual preferred securities | 17,250,000 | — |
| Interest paid on interest rate swap | 15,111,301 | — |
|  | 32,361,301 | — |

4. **PROFIT AND LOSS ACCOUNT**
The partnership had no employees during the period (2007 – none).

There was no income distribution paid to the General Partner, Initial Limited Partner and Preferential Limited Partner during the period (2007 – nil).

Any income or losses of the partnership are appropriated to the Preferential Limited Partner's current account in accordance with the Partnership Agreement.

5. **TAX ON PROFIT ON ORDINARY ACTIVITIES**
No provision for taxation has been made in the accounts. Each partner is exclusively liable for tax liabilities arising out of their interest in the partnership and this will be assessed on them and not the partnership.

8

## Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

**6.    AVAILABLE FOR SALE – MONEY MARKET INVESTMENTS**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Money Market Investments | 26,097,463 | 25,646,026 |

On 1 June 2007, the partnership subscribed to Money Market Investment of Lehman Brothers AAA Dollar Liquidity Fund, listed on the Irish Stock Exchange, maturing on the 1 June 2037.

The partnership's investment in the money market fund of Lehman Brothers AAA Dollar Liquidity Fund expose it to credit risk that the issuer of the security, Lehman Brothers AAA Dollar Liquidity Fund will be unable to repay the dividend and principal in a timely manner.

The maximum amount of the credit exposure as at 31 May 2008 is USD 26,097,463 (2007 – USD 25,646,026).

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Notional at the beginning of the period | 25,646,026 | 25,000,000 |
| Notional subscribed during the period | 451,437 | 646,026 |
|  | 26,097,463 | 25,646,026 |

During the period dividend of USD 451,437 was received and reinvested with equivalent value of shares received with a nominal value of USD 1 per share (2007 – USD 646,026).

**7.    LOANS AND RECEIVABLES**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| **(a) Debtors: amount falling due after one year** |  |  |
| Amount receivable from other group undertakings | 1 | 1 |
| Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 500,000,000 | 500,000,000 |
|  | 500,000,001 | 500,000,001 |

On 1 June 2007, the partnership subscribed to Subordinated notes of Lehman Brothers Holding Inc, maturing on 1 June 2037. The interest rate on the notes is USD LIBOR + 0.64%. The interest is receivable quarterly on 1 March, June, September and December each year from and including 1 June 2008 to and including the termination date.

The effective interest rate of USD LIBOR + 0.64% has been used to calculate the amortised value of the Subordinated notes as at the six month end date 31 May 2008.

The partnership's investment in the subordinated notes of Lehman Brothers Holdings Inc expose it to credit risk that the issuer of the subordinated notes, Lehman Brothers Holdings Inc will be unable to repay interest and principal in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is USD 500,000,000 (2007 – USD 500,000,000).

9

Lehman Brothers UK Capital Funding V LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

| | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| **7. LOANS AND RECEIVABLES (CONTINUED)** | | |
| (b) Debtors: amount falling due within one year | | |
| Interest receivable on subordinated notes issued by other group undertaking | 4,592,932 | 7,652,639 |

The maximum amount of the credit exposure as at 31 May 2008 is USD 4,592,932 (2007 – USD 7,652,639).

**8. DERIVATIVES FINANCIAL INSTRUMENT**

| | Notional Amount USD | 31 May 2008 Fair value Assets USD |
|---|---|---|
| Interest rate swap | 500,000,000 | 37,582,472 |

| | Notional Amount USD | 30 Nov 2007 Fair value Assets USD |
|---|---|---|
| Interest rate swap | 500,000,000 | 17,570,146 |

On 1 June 2007, the partnership entered into an Interest rate Swap with Lehman Brothers Special Finance, maturing on 1 June 2067. The Interest rate Swap includes a cancellation option held by Lehman Brothers Special Financing to terminate the Swap on 1 June 2012 and annually thereafter.

The interest rate on the fixed interest rate leg of the Interest rate Swap is 6.90%. The interest is receivable annually on 1 June each year from and including 1 June 2008 to and including the termination date.

The interest rate on the floating interest rate leg of the Interest rate Swap is 3 month USD LIBOR + 0.64%. The interest is payable quarterly on 1 March, June, September and December each year from and including 1 June 2008 to and including the termination date.

The partnership's transactions in the interest rate swap of Lehman Brothers Special Finance expose it to credit risk that the issuer of the derivative, Lehman Brothers Special Finance will be unable to repay the interest in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is USD 37,582,472 (2007 – USD 17,570,146).

10

Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

9.     **CREDITORS: AMOUNTS FALLING DUE WITHIN ONE YEAR**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Interest payable on perpetual preferred securities | 34,500,000 | 17,250,000 |

10.     **CREDITORS: AMOUNTS FALLING DUE AFTER MORE THAN ONE YEAR**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Financial liability at amortised cost - Perpetual preferred securities | 500,000,000 | 500,000,000 |

On 1 June 2007, the partnership issued Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities, listed on the London Stock Exchange and Euronext Amsterdam NV. The Perpetual Preferred Securities are guaranteed by Lehman Brothers Holding Inc and include an optional redemption clause that may be exercised by the General Partner if the Subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

The interest rate on the Perpetual Preferred Securities is 6.90%. The interest is payable on 1 June each year from and including 1 June 2008 to and including the termination date.

The effective interest rate of 6.90% has been used to calculate the amortised value of the Perpetual Preferred Securities as at the six month end date 31 May 2008 (2007- 6.90%).

The partnership has not had any default of principal, interest or any other breaches with respect to their liabilities for the financial period.

Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

11.  FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES

|  | 31 May 2008<br>Carrying value<br>USD | 31 May 2008<br>Fair Value<br>USD |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | 1 | 1 |
|   - Amount receivable from other group undertakings | | |
|   - Financial asset at amortised cost -Subordinated notes issued | 500,000,000 | 411,605,000 |
|     by other group undertakings | 4,592,932 | 4,592,932 |
|   - Debtors: Amounts falling due within one year | 26,097,463 | 26,097,463 |
| (ii) Available for Sale - Money Market Investments | | |
| (iii) Fair Value through P&L | 37,582,472 | 37,582,472 |
|   - Derivative Financial Instrument - Interest rate Swap (positive value) | | |

| **Financial Liabilities** | | |
|---|---|---|
| (i) Financial liability at amortised cost | (500,000,000) | (419,375,000) |
|   - Perpetual Preferred Securities | (34,500,000) | (34,500,000) |
| (ii) Creditors: Amounts falling due within one year | | |

|  | 30 Nov 2007<br>Carrying value<br>USD | 30 Nov 2007<br>Fair Value<br>USD |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | 1 | 1 |
|   - Amount receivable from other group undertakings | | |
|   - Financial asset at amortised cost -Subordinated notes issued | 500,000,000 | 425,768,344 |
|     by other group undertakings | 7,652,639 | 7,652,639 |
|   - Debtors: Amounts falling due within one year | 25,646,026 | 25,646,026 |
| (ii) Available for Sale - Money Market Investments | | |
| (iii) Fair Value through P&L | 17,570,146 | 17,570,146 |
|   - Derivative Financial Instrument - Interest rate Swap (positive value) | | |

| **Financial Liabilities** | | |
|---|---|---|
| (i) Financial liability at amortised cost | (500,000,000) | (433,750,000) |
|   - Perpetual Preferred Securities | (17,250,000) | (17,250,000) |
| (ii) Creditors: Amounts falling due within one year | | |

The fair value of quoted instruments is determined by reference to bid prices at the close of business on the balance sheet date. Where there is no active market, fair value is determined using the valuation techniques. These include using recent arm's length market transactions: reference to the current market value of another instrument which is substantially the same; discounted cash flow analysis and pricing models.

The fair value approximates the carrying value of the six month end balance of the debtors — amounts falling due within one year and the creditors — amounts falling due within one year.

Lehman Brothers UK Capital Funding V LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

**12.   PARTNERS' ACCOUNTS**

**Capital accounts**

|  | General Partner USD | Initial Limited Partner USD | Preferential Limited Partner USD | Total USD |
|---|---|---|---|---|
| At 30 November 2007 | 1 | — | 25,000,000 | 25,000,001 |
| At 31 May 2008 | 1 | — | 25,000,000 | 25,000,001 |

**13.   PARTNERS' CURRENT ACCOUNTS**

**Current Accounts**

|  | General Partner USD | Initial Limited Partner USD | Preferential Limited Partner USD | Total USD |
|---|---|---|---|---|
| At 1 December 2007 | — | — | 8,618,811 | 8,618,811 |
| Share of profit for the period | — | — | 154,056 | 154,056 |
| At 31 May 2008 | — | — | 8,772,867 | 8,772,867 |

**Loan Accounts**
There are no loan accounts held by the General Partner, Initial Limited Partner and the Preferential Limited Partner during the period.

**14.   CASH FLOW FROM OPERATING ACTIVITIES**

|  | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| Operating profit | — | — |
| Increase in debtors | — | (1) |
|  | — | (1) |

13

Lehman Brothers UK Capital Funding V LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

15. **FINANCIAL RISK MANAGEMENT**

**Market price risk** – Market price risk can be defined as the uncertainty from future price movements of the financial instrument issued and invested in by the partnership. Market price risk arises mainly from economic factors and is not limited to interest rate and currency movements. This exposure to market price risk may result in substantial fluctuations in the market price of the issued preferred securities and the invested subordinated notes from time to time. The partnership seeks to minimise these risks by holding the same notional value of the invested subordinated notes and the issued perpetual preferred securities as the market price of the two financial instruments are linked.

**Currency risk** – Foreign currency risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in foreign exchange rates. The partnership is not exposed to currency risk because the issued perpetual preferred securities and the investment in the subordinated notes are both in the same currency.

**Credit risk** – The partnership's transactions in the subordinated notes expose it to the risk that the counterparty will not be able to honour its contractual obligation to deliver the investment for the purchase or cash for a sale. The issuer's sole source of funds to pay distribution on the preferred securities will be payments which it receives from its investments in the subordinated notes issued by Lehman Brothers Holding Inc. The perpetual preferred securities will benefit from a subordinated guarantee entered into by Lehman Brothers Holding Inc which is the parent company of the Lehman Brothers group of companies.

**Liquidity risk** – The assets of the partnership include subordinated notes that are issued by Lehman Brothers Holding Inc.

Whilst, the preferred securities has no fixed final redemption date, the securities carry an optional redemption clause that may be exercised by the General Partner to redeem the preferred securities if the subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

**Interest rate risk** – Interest rate risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in interest rates. Investments and Issued debt with fixed or floating rates may experience substantial fluctuations in net cash flow and valuation for changing interest rate. If interest rates rise, the income potential of the investment or issued debt may rise or fall depending on if the interest rate is fixed or floating and vice versa.

16. **ULTIMATE PARENT UNDERTAKING**

The ultimate parent company of Lehman Brothers UK Capital Funding V LP is LB GP No.1 Limited, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc.

The largest group in which the results of the partnership are consolidated is that headed by LB GP No.1 Limited. The consolidated financial statements of the group are available to the public from 25 Bank Street, London E14 5 LE.

14

**Exhibit 3**

**Board Resolution**

# UNANIMOUS WRITTEN CONSENT OF THE

## EXECUTIVE COMMITTEE OF THE

## BOARD OF DIRECTORS OF

## LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS**, the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS**, certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS**, due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS**, the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS**, Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS**, Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS**, Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT**,

RESOLVED, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

RESOLVED, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

RESOLVED, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

RESOLVED, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

FURTHER RESOLVED, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 7, 2005

_____                    _____
Richard S. Fuld, Jr.                        John D. Macomber

2

06/08/2005    16:41    LEHMAN → 916467582653    NO.504    P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

3

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 8/24/2018 at 4:40 PM Central. Please print this page as proof of your filing.

---

**Lehman Brothers UK Capital Funding V LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Special Financing Inc. (08-13888) |

If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed.

| Documents |
|---|
| LBSF - Lehman Brothers UK V.PDF |

List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount.

| Documents |
|---|
| 39 - Lehman Brothers UK Captial Funding V LP and Lehman Brothers Special....pdf |

| | |
|---|---|
| Amount of claim against Obligor | $612,934,864.00 |

| | |
|---|---|
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |

Please upload the specific promise, representation and/or agreement(s) (including any corporate resolutions) under which your claim arises against the Guarantor and describe the obligations/performance that is guaranteed. If you do not have possession of such document, please upload a written explanation of such guarantee in reasonable detail. You do not need to comply with this question if you have uploaded information in compliance with question 4a of the Derivative Questionnaire.

| Documents |
|---|
| LBHI Board Guarantee Resolution (6.9.05).pdf |

| | |
|---|---|
| Amount of claim against the Guarantor | $612,934,864.00 |

| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Special Financing Inc.** | Case No. of Debtor<br>**08-13888** | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side).

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.*
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000   Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:   Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ 187,037,060, as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: See addendum
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:
Value of Property: $ _____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____
Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$ _____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

**7. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**8. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

**FILED / RECEIVED**

AUG 2 4 2018

**EPIQ**

Date:
16 AUGUST 2018

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

BRUCE ALEXANDER MACKAY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No. 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING IV LP WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9).**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                    :
                                                          :        **Chapter 11**
                                                          :
**LEHMAN BROTHERS SPECIAL FINANCING**    :        **Case No. 08-13888 (JMP)**
**INC.**, *et al.,*                                       :
                                                          :
                                                          :        **(Jointly Administered)**
                                     **Debtors.**         :
                                                          :
------------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING IV LP AGAINST LEHMAN BROTHERS SPECIAL FINANCING INC.

**A.**    **The Chapter 11 Cases**

1.     On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "LBHI Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.     On October 3, 2008 (the "LBSF Petition Date"), Lehman Brothers Special Financing Inc. ("LBSF") commenced a voluntary proceeding (the "LBSF Case") in the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The LBHI Cases and the LBSF Case have been consolidated for administrative purposes.

**B.**    **The Schedules and Bar Date Order**

3.     On March 12, 2009, LBSF filed schedules of its assets and liabilities. On June 15, 2009, LBSF filed amended schedules of its assets and liabilities (the "Schedules").

4.     On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271 in the LBHI Cases] (the "Bar Date Order") establishing a claims bar date by which certain entities were

required to file proofs of claim against the debtors in the LBHI Cases and the LBSF Case. Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". <u>See</u> Bar Date Order at 5. Lehman Brothers UK Capital Funding IV LP ("<u>LP IV</u>") was and is on the Exempt Entities List. Thus, LP IV was not required to file a proof of claim under the Bar Date Order and does so now only out of an abundance of caution. LP IV reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

## C.    The Partnership

5.    LP IV is managed by LB GP No. 1 Ltd. (In Liquidation) (the "<u>General Partner</u>"), which is the General Partner for LP IV and four other partnerships (collectively, the "<u>Partnerships</u>") based in the United Kingdom. LP IV was formed to raise regulatory capital for LBHI by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "<u>ECAPS</u>") to investors (the "<u>ECAPS Holders</u>"). Upon formation, LP IV issued EUR 200,000,000 Euro Fixed Rate ECAPS. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBHI.

6.    As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager, when LBHI, LBSF, and the other debtors in the LBHI Cases and the LBSF Case negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737 in the LBHI Cases], which was confirmed on December 6, 2011 [Docket No. 23023 in the LBHI Cases], and went effective on March 6, 2012 [Docket No. 26039 in the LBHI Cases].

-2-

7.    On June 20, 2016, Deutsche Bank filed an application to restore the General

Partner to the Register of Companies. This restoration was made effective on February 3, 2017.

Upon being restored to the Register of Companies, the General Partner was placed into creditors'

voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General

Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander

Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators

of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was

later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint

Liquidators were appointed as liquidators of the General Partner so that they could wind up the

affairs of the Partnerships and distribute Partnership assets to those entitled to them in

accordance with the terms of the governing relevant partnership agreements and applicable

English law. Since their appointment, the Joint Liquidators have worked diligently to identify

assets and claims it may have against other parties, including claims in the LBHI Cases and the

LBSF Case, so that it may appropriately distribute the Partnerships' assets.

**D.    The Swap Claims**

8.    Upon information and belief, LP IV was party to a 40-year non-call 5-year

interest rate swap with LBSF (the "Swap"). Upon information and belief, the notional amount of

the Swap was €200,000,000, with a maturity of April 25, 2047. LBSF had a cancellation option

on the Swap that could be exercised on April 25, 2012, and annually thereafter. Upon

information and belief, the interest rate on the fixed interest rate leg of the Swap is 5.75%, which

interest was receivable annually on April 25 of each year from and including April 25, 2008, to

and including the termination date. Upon information and belief, the interest rate on the floating

interest rate leg of the Swap is 3 month EUROLIBOR + 0.79%, payable quarterly on the 25th of

January, April, July, and October each year from and including April 25, 2007, to and including the termination date.

9.    Upon information and belief, LBSF's Schedules include an intercompany receivable from Lehman Brothers UK Capital Funding IV LP to LBSF for $15,386,252. See Schedules, Schedule B - Personal Property, Page 1 of 2 (showing LB Capital Funding No. 4 LP as owing an intercompany receivable to LBSF). The Joint Liquidators believe that this intercompany receivable is on account of the Swap.

10.    The Joint Liquidators have no information indicating that LBSF cancelled the Swap pursuant to its cancellation option or that LBSF or LP IV terminated the swap upon the commencement of the LBSF Case.

11.    Pursuant to Article 11.1 of the Plan, all prepetition executory contracts between LBHI, LBSF, or any other debtor and another person or entity was deemed rejected on the effective date of the Plan, except as otherwise set forth in Article 11.1. Upon information and belief, the Swap was therefore rejected as of March 6, 2012.

12.    The Joint Liquidators have not at this time been able to locate further information on the Swap other than what is attached hereto as **Exhibit 1** and **Exhibit 2**. Contemporaneously herewith, the Joint Liquidators have contacted counsel to LBHI and LBSF and requested all documentation they have with respect to the Swap.

13.    The Joint Liquidators had the Swap independently valued based on the limited information that the Joint Liquidators currently have in their possession. The Joint Liquidators will amend this Proof of Claim as necessary upon obtaining additional documentation or learning new facts related to the Swap and reserve all of their rights and those of LP IV in relation to the Swap. The independent analysis the Joint Liquidators have received values the Swap claim at $187,037,060. The Swap claim includes (a) $165,470,725 for amounts owed as a result of the

-4-

automatic rejection of the Swap upon consummation of the Plan on March 6, 2012 (EUR / USD conversion rate of EUR 1 = USD 1.3153 (per ECB published rate) as at March 6, 2012), and (b) $21,566,335 of net unpaid and accrued amounts owed to LP IV up to and including March 6, 2012 (EUR / USD conversion rate of EUR 1 = USD 1.3834 (per ECB published rate) as at October 3, 2008). The Joint Liquidators have assumed that net unpaid and accrued amounts owed to LP IV up to and including March 6, 2012, have not been paid.

**E.    Reservation of Rights**

14.    LP IV reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

**F.    Notices**

15.    All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding IV LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention: Bruce Mackay
Telephone: +44 (0)20 3201 8000
Email: bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention: David R. Seligman, P.C. and Joseph M. Graham
Telephone: (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

*      *      *      *      *

-5-

## Exhibit 1

**Indicative Term Sheet re Swap**



LEHMAN BROTHERS

## Fixed Income Derivative Products

# 40yr non call 5yr interest rate swap

| | |
|---|---|
| Party A | Lehman Brothers UK Capital Funding IV LP |
| Party B | Lehman Brothers Special Finance |
| Notional Amount | EUR 200,000,000 |
| Trade Date | 11 January 2007 |
| Settlement Date | 25 January 2007 |
| Maturity Date | 25 April 2047 |
| Cancellation Option | On 25th April 2012 and annually thereafter, Option Holder may choose to terminate the swap. On such termination, no further payments will be made by either party. Notice date is 37 days. |
| Cancellation Option Holder | Lehman Brothers Special Finance |
| Initial Exchange | None |
| Final Exchange | None |
| Swap Exchange | |
| Party A pays | 3month Euribor + 79 bps, quarterly Act/360 on Notional Amount |
| Party B pays | 5.75% annually Act/Act on Notional Amount |
| Calculation Agent | Party B |
| Documentation | All capitalised terms used in this term sheet and not otherwise defined will have the meanings given to them in the 2000 ISDA Definitions |

This termsheet is indicative only and is subject to change without notice. Information other than indicative terms (including market data and statistical information) has been obtained from various sources. We do not represent that it is complete or accurate. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters, is not comprehensive, is not intended to suggest that outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. No assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Transactions of the sort described herein contain complex characteristics and risk factors. Transactions incorporating derivatives may create additional risks and exposures. Before entering into any transaction, you should consider the suitability of the transaction to your particular circumstances and independently review (with your professional advisers as necessary) the specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences. Lehman Brothers does not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. References herein to 'Lehman Bros' shall include Lehman Brothers International (Europe) and Lehman Brothers Europe Limited and their affiliates. Both Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are regulated by the Financial Services Authority.

**Exhibit 2**

**LP IV Interim report and Accounts (Unaudited) For the Period Ended 31 May 2008**

# LEHMAN BROTHERS UK CAPITAL FUNDING IV LP

Interim Report and Accounts

(Unaudited)

For the period ended 31 May 2008

Registered No. LP 011818

## Lehman Brothers UK Capital Funding IV LP

Registered No. LP 011818

**PARTNERS**
LB GP No. 1 Limited – General Partner
The Bank of New York Depository (Nominees) Limited – Initial Limited Partner
LB Investment Holdings Limited – Preferential Limited Partner

**BUSINESS ADDRESS**
25 Bank Street
London
E14 5LE

**AUDITORS**
Ernst & Young LLP
1 More London Place
London SE1 2AF

## Lehman Brothers UK Capital Funding IV LP

### INTERIM PARTNERS' REPORT

The partners present their interim report and unaudited condensed accounts for the six months ended 31 May 2008.

This condensed interim financial information does not comprise statutory accounts within the meaning of section 240 of the Companies Act 1985 (section 434 of the Companies Act 2006).

Lehman Brothers UK Capital Funding IV LP is registered as a limited partnership under the Limited Partnership Act 1907.

The Limited Partnership agreement was made on 3 January, 2007 between the companies:

1.  **LB GP NO. 1 LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the General Partner");

2.  **THE BANK OF NEW YORK DEPOSITARY (NOMINEES) LIMITED**, a company incorporated in England and Wales whose registered office is at 1 Canada Square, London E14 5AL, United Kingdom ("the Initial Limited Partner"); and

3.  **LB INVESTMENT HOLDINGS LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holdings Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the Preferential Limited Partner").

The capital contribution made by the partners is disclosed in note 12 of the accounts.

Under the Limited Partnership agreement, no partner shall have any right to withdraw from the partnership or make a demand for withdrawal of any part of its Capital Contribution until the dissolution of the partnership.

Further, any distribution made on the distribution payment date shall not have the benefit of reducing, withdrawing, returning or eliminating any part of the Aggregate Capital Contributions.

A Limited Partner may make further Capital Contribution to satisfy any commitment or may be separately agreed with the General Partner in line with the Limited Partnership agreement.

Partners' profit and losses are allocated between them in accordance with the Limited Partnership agreement, which also governs the rights of partners regarding drawings.

### PRINCIPAL ACTIVITY
The principal activity of the limited partnership is to raise capital by issuing preferred securities to the Initial Limited Partner, which is then further lent on to Lehman Brothers Holdings Inc.

### REVIEW OF BUSINESS AND FUTURE DEVELOPMENTS
The loss after taxation for the six months period of Eur 4,447,695 is set out on page 5 and has been transferred to the partner's current account (note 13). (Period from 3 January to 31 May 2007 – Eur10, 396,467).

The partners do not expect any significant changes to the business in the foreseeable future and the financial position of the partnership at the end of the period was satisfactory.

### RELATED PARTY TRANSACTIONS
There are no related party transactions to report. The partnership has taken advantage of the exemption in paragraph 3(c) of Financial Reporting Standard 8 from disclosing transactions with related parties that are part of Lehman Brothers Holdings Inc.

2

Lehman Brothers UK Capital Funding IV LP

## INTERIM PARTNERS' REPORT (CONTINUED)

### GOING CONCERN

LB GP No.1 Limited, the partnership's General Partner, has confirmed that it will maintain its financial support to enable the partnership to meet its liabilities as they fall due, if required.

The partners have a reasonable expectation that the partnership has adequate resources to continue in operational existence for the foreseeable future. For this reason, they continue to adopt the going concern basis in preparing the accounts.

The partners consider that no additional disclosures in respect of going concern are necessary for the accounts to give a true and fair view.

### GROUP RISK MANAGEMENT

Risk management policies and procedures for Lehman Brothers Holdings Inc. and subsidiaries (the "Group") (including all international locations) are developed on a global basis.

As a leading global investment bank, risk is an inherent part of our businesses. Global markets, by their nature, are prone to uncertainty and subject participants to a variety of risks. Risk management is considered to be of paramount importance in our day-to-day operations. Consequently, we devote significant resources (including investments in employees and technology) to the measurement, analysis and management of risk.

The principal risks of the partnership and management of risk are disclosed in note 15 of the accounts.

On behalf of the General Partner

1.1 SEP 2008

3

Lehman Brothers UK Capital Funding IV LP

## STATEMENT OF PARTNERS' RESPONSIBILITIES

The partners confirm that this condensed financial information has been prepared in accordance with IAS 34 as adopted by the European Union and that the interim partners' report includes a fair review of information required by DTR 4.2.7 and DTR 4.2.8, namely:

- an indication of important events that have occurred during the first six months and their impact on the condensed set of financial statements, and a description of the principal risks and uncertainties for the remaining six months of the financial year; and

- material related-party transactions in the first six months and any material changes in the related-party transactions described in the last annual report.

## Lehman Brothers UK Capital Funding IV LP

PROFIT AND LOSS ACCOUNT
For the period ended 31 May 2008

|  | Notes | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| Interest receivable and similar income | 2 | 19,903,808 | 3,383,311 |
| Interest payable and similar charges | 3 | (24,351,503) | (13,779,778) |
| | | (4,447,695) | (10,396,467) |
| **LOSS ON ORDINARY ACTIVITIES BEFORE TAXATION** | | | |
| Taxation on loss on ordinary activities | 5 | – | – |
| **LOSS FOR THE FINANCIAL PERIOD** | | (4,447,695) | (10,396,467) |

### LOSS APPROPRIATION ACCOUNT FOR THE PERIOD

|  |  | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| Loss to be shared | | (4,447,695) | (10,396,467) |
| Share of Loss: | | | |
| General Partner – LB GP No. 1 Limited | 13 | – | – |
| Initial Limited Partner – Bank of New York Depository (Nominees) Ltd | 13 | – | – |
| Preferential Limited Partner - LB Investment Holdings Limited | 13 | 4,447,695 | 10,396,467 |

There are no other gains or losses attributable to the partners of the partnership for six months ended 31 May 2008 and for the period from 3 January to 31 May 2007.

The results in the profit and loss account for the six month period ended 31 May 2008 and for the period from 3 January to 31 May 2007 relates to continuing activities.

5

## Lehman Brothers UK Capital Funding IV LP

**BALANCE SHEET**
As at 31 May 2008

| | Notes | Unaudited 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|---|
| **FINANCIAL ASSETS** | | | |
| Available for sale – Money Market Investments | 6 | 10,555,212 | 10,334,142 |
| Loans and receivables | 7 | 200,000,001 | 200,000,001 |
| | | 210,555,213 | 210,334,143 |
| **CURRENT ASSETS** | | | |
| Debtors: amounts falling due within one year | 7 | 1,123,800 | 1,114,111 |
| **CURRENT LIABILITIES** | | | |
| CREDITORS: amounts falling due within one year | 8 | (1,165,753) | (9,767,123) |
| | | (41,953) | (8,653,012) |
| NET CURRENT (LIABILITIES) / ASSETS | | | |
| TOTAL ASSETS LESS CURRENT LIABILITIES | | 210,513,260 | 201,681,131 |
| CREDITORS: amounts falling due after more than one year | 9 | (200,000,000) | (200,000,000) |
| Derivative financial instrument | 10 | (17,705,652) | (4,425,828) |
| | | (7,192,392) | (2,744,697) |
| **FINANCED BY:** | | | |
| Partners' capital accounts | 12 | 10,000,001 | 10,000,001 |
| Partners' current accounts | 13 | (17,192,393) | (12,744,698) |
| | | (7,192,392) | (2,744,697) |

The accounts and notes to the accounts on pages 5 to 14 were approved by the General Partner on
and were signed on their behalf by:

**1 1 SEP 2008**

6

## Lehman Brothers UK Capital Funding IV LP

### CASH FLOW STATEMENT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES | 14 | – | (1) |
| | | | |
| RETURNS ON INVESTMENTS AND SERVICING OF FINANCE | | | |
| Interest received | | 19,673,049 | 2,273,500 |
| Interest paid | | (19,673,049) | (2,273,500) |
| Dividends received from Money Market Investment | | 221,070 | 126,843 |
| | | | |
| Net cash inflow from returns on investments and servicing of finance | | 221,070 | 126,843 |
| | | | |
| CAPITAL EXPENDITURE AND FINANCIAL INVESTMENT | | | |
| Purchase of Money Market Investment | | (221,070) | (10,126,843) |
| Purchase of sub-ordinated debt | | – | (200,000,000) |
| | | | |
| Net cash outflow from capital expenditure and financial investment | | (221,070) | (210,126,843) |
| | | | |
| FINANCING | | | |
| Partnership capital account deposited | | – | 10,000,001 |
| Increase in perpetual preferred securities | | – | 200,000,000 |
| | | | |
| Net cash inflow from financing | | – | 210,000,001 |
| | | | |
| | | | |
| MOVEMENT IN NET CASH | | – | – |

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

1.    **ACCOUNTING POLICIES**

*Basis of Preparation*
The condensed interim accounts of Lehman Brothers UK Capital Funding IV LP have been prepared in accordance with the Disclosure and Transparency Rules of the Financial Services Authority and with IAS 34, 'Interim financial reporting'.    The condensed interim financial information should be read in conjunction with the annual financial statements for the year ended 30 November 2007, which have been prepared under applicable accounting standards in the United Kingdom and in accordance with The Partnerships and Unlimited Companies (Accounts) Regulation 1993.

*Accounting Policies*
The accounting policies applied are consistent with those of the annual financial statements for the year ended 30 November 2007.

2.    **INTEREST RECEIVABLE AND SIMILAR INCOME**

|  | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Interest receivable on subordinated notes issued by other group undertakings | 5,347,122 | 3,256,467 |
| Dividend Income receivable on money market investment | 221,070 | 126,844 |
| Interest received on interest rate swap | 14,335,616 | |
|  | 19,903,808 | 3,383,311 |

3.    **INTEREST PAYABLE AND SIMILAR CHARGES**

|  | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Interest payable on perpetual preferred securities | (5,734,247) | (4,001,370) |
| Interest paid on interest rate swap | (5,337,432) | (2,273,500) |
| Interest rate swap fair value loss | (13,279,824) | (7,504,908) |
|  | (24,351,503) | (13,779,778) |

4.    **PROFIT AND LOSS ACCOUNT**
The partnership had no employees during the period (2007 – none).

There was no income distribution paid to the General Partner, Initial Limited Partner and the Preferential Limited Partner during the period (2007 – nil).

Any income or losses of the partnership are appropriated to the Preferential Limited Partner's current account in accordance with the Partnership Agreement.

5.    **TAX ON LOSS ON ORDINARY ACTIVITIES**
No provision for taxation has been made in the accounts. Each partner is exclusively liable for tax liabilities arising out of their interest in the partnership and this will be assessed on them and not the partnership.

8

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

6.  **AVAILABLE FOR SALE - MONEY MARKET INVESTMENTS**

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Money Market Investments | 10,555,212 | 10,334,142 |

On 25 January 2007, the partnership subscribed to Money Market Investment of Lehman Brothers AAA Euro Liquidity Fund, listed on the Irish Stock Exchange, maturing on the 25 April 2037.

The partnership's investment in the money market fund of Lehman Brothers AAA Euro Liquidity Fund expose it to credit risk that the issuer of the security, Lehman Brothers AAA Euro Liquidity Fund will be unable to repay the dividend and principal in a timely manner.

The maximum amount of the credit exposure as at 31 May 2008 is Eur 10,555,212 (2007 – Eur 10,334,142).

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Notional at the beginning of the period | 10,334,142 | 10,000,000 |
| Notional subscribed during the period | 221,070 | 334,142 |
|  | 10,555,212 | 10,334,142 |

During the period dividend income of Eur 221,070 was received and reinvested with equivalent value of shares received with a nominal value of Eur 1 per share.

7.  **LOANS AND RECEIVABLES**

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| **(a) Debtors: amount falling due after one year** |  |  |
| Amount receivable from other group undertakings | 1 | 1 |
| Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 200,000,000 |
|  | 200,000,001 | 200,000,001 |

On 25 January 2007, the partnership has subscribed to Subordinated notes of Lehman Brothers Holding PLC, maturing on 25 April 2037. The interest rate on the notes is EURIBOR + 0.79%. The interest is receivable quarterly on 25 January, April, July and October each year from and including 25 April 2008 to and including the termination date.

The effective interest rate of EURIBOR + 0.79% has been used to calculate the amortised value of the Subordinated notes as at the six month period end date 31 May 2008.

The partnership's investment in the subordinated notes of Lehman Brothers Holdings PLC expose it to credit risk that the issuer of the subordinated notes, Lehman Brothers Holdings PLC will be unable to repay interest and principal in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is Eur 200,000,000 (2007 – Eur 200,000,000).

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

7.   **LOANS AND RECEIVABLES (CONTINUED)**

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| **(b) Debtors: amount falling due within one year** | | |
| Interest receivable on subordinated notes issued by other group undertakings | 1,123,800 | 1,114,111 |

The maximum amount of the credit exposure as at 31 May 2008 is Eur 1,123,800 (2007 – Eur 1,114,111).

8.   **CREDITORS: AMOUNTS FALLING DUE WITHIN ONE YEAR**

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Interest payable on perpetual preferred securities | (1,165,753) | (9,767,123) |

9.   **CREDITORS: AMOUNTS FALLING DUE AFTER MORE THAN ONE YEAR**

|  | 31 May 2008 EUR | 30 Nov 2007 EUR |
|---|---|---|
| Financial liability at amortised cost - Perpetual preferred securities | (200,000,000) | (200,000,000) |

On 25 January 2007, the partnership issued Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities, listed on the London Stock Exchange and Euronext Amsterdam NV. The Perpetual Preferred Securities are guaranteed by Lehman Brothers Holding Inc and include an optional redemption clause that may be exercised by the General Partner if the Subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

The interest rate on the Perpetual Preferred Securities is 5.75%. The interest is payable on 25 April each year from and including 25 April 2008 to and including the termination date.

The effective interest rate of 5.75% has been used to calculate the amortised value of the Perpetual Preferred Securities as at the six month period end date 31 May 2008 (2007 – 5.75%).

The partnership has not had any default of principal, interest or any other breaches with respect to their liabilities for the financial period.

10

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

10.   DERIVATIVES FINANCIAL INSTRUMENT

|  |  | 31 May 2008 |
|  |  | Fair value |
|  | Notional Amount | Liabilities |
|  | EUR | EUR |
| Interest rate swap | 200,000,000 | (17,705,652) |

|  |  | 30 Nov 2007 |
|  |  | Fair value |
|  | Notional Amount | Liabilities |
|  | EUR | EUR |
| Interest rate swap | 200,000,000 | (4,425,828) |

On 25 January 2007, the partnership subscribed to Interest rate Swap with Lehman Brothers Special Finance, maturing on 25 April 2047. The Interest rate Swap includes a cancellation option held by Lehman Brothers Special Finance to terminate the Swap on 25 April 2012 and annually thereafter.

The interest rate on the fixed interest rate leg of the Interest rate Swap is 5.75%. The interest is receivable annually on 25 April each year from and including 25 April 2008 to and including the termination date.

The interest rate on the floating interest rate leg of the Interest rate Swap is 3 month EURIBOR + 0.79%. The interest is payable quarterly on 25 January, April, July and October each year from and including 25 April 2007 to and including the termination date.

11.   FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES

|  | 31 May 2008 | 31 May 2008 |
|  | Carrying value | Fair value |
|  | EUR | EUR |
| **Financial Assets** |  |  |
| (i) Loans and receivable |  |  |
| - Amount receivable from other group undertakings | 1 | 1 |
| - Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 141,792,000 |
| - Debtors: Amounts falling due within one year | 1,123,800 | 1,123,800 |
| (ii) Available for Sale – Money Market Investments | 10,555,212 | 10,555,212 |
|  |  |  |
| **Financial Liabilities** |  |  |
| (i) Financial liability at amortised cost |  |  |
| - Perpetual Preferred Securities | (200,000,000) | (124,000,000) |
| (ii) Fair value through P&L |  |  |
| Derivative Financial Instrument - Interest rate Swap (negative value) | (17,705,652) | (17,705,651) |
| (iii) Creditors: Amounts falling due within one year | (1,165,753) | (1,165,753) |

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

11. FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES (CONTINUED)

|  | 30 Nov 2007 Carrying value EUR | 30 Nov 2007 Fair value EUR |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | | |
|   - Amount receivable from other group undertakings | 1 | 1 |
|   - Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 200,000,000 | 171,740,192 |
|   - Debtors: Amounts falling due within one year | 1,114,111 | 1,114,111 |
| (ii) Available for Sale – Money Market Investments | 10,334,142 | 10,334,142 |
| | | |
| **Financial Liabilities** | | |
| (i) Financial liability at amortised cost | | |
|   - Perpetual Preferred Securities | (200,000,000) | (158,681,600) |
| (ii) Fair value through P&L | | |
|   Derivative Financial Instrument - Interest rate Swap (negative value) | (4,425,828) | (4,425,828) |
| (iii) Creditors: Amounts falling due within one year | (9,767,123) | (9,767,123) |

The fair value of quoted instruments is determined by reference to bid prices at the close of business on the balance sheet date. Where there is no active market, fair value is determined using the valuation techniques. These include using recent arm's length market transactions; reference to the current market value of another instrument which is substantially the same; discounted cash flow analysis and pricing models.

The fair value approximates the carrying value of the six months end balance of the debtors – amounts falling due within one year and the creditors – amounts falling due within one year.

12. PARTNERS' ACCOUNTS

**Capital Accounts**

|  | General Partner EUR | Initial Limited Partner EUR | Preferential Limited Partner EUR | Total EUR |
|---|---|---|---|---|
| At 30 November 2007 | 1 | – | 10,000,000 | 10,000,001 |
| At 31 May 2008 | 1 | – | 10,000,000 | 10,000,001 |

Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

**13.  PARTNERS' CURRENT ACCOUNTS**

**Current Accounts**

|  | General Partner EUR | Initial Limited Partner EUR | Preferential Limited Partner EUR | Total EUR |
|---|---|---|---|---|
| At 1 December 2007 | – | – | (12,744,698) | (12,744,698) |
| Share of loss for the period | – | – | (4,447,695) | (4,447,695) |
| At 31 May 2008 | – | – | (17,192,393) | (17,192,393) |

**Loan Accounts**
There are no loan accounts held by the General Partner, Initial Limited Partner and the Preferential
Limited Partner during the period (2007 – nil).

**14.  CASH FLOW FROM OPERATING ACTIVITIES**

|  | 6 months to 31 May 2008 EUR | Period from 3 Jan to 31 May 2007 EUR |
|---|---|---|
| Operating profit | – | – |
| Increase in debtors | – | (1) |
|  | – | (1) |

13

## Lehman Brothers UK Capital Funding IV LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

**15.    FINANCIAL RISK MANAGEMENT**
**Market price risk** – Market price risk can be defined as the uncertainty from future price movements of the financial instrument issued and invested in by the partnership. Market price risk arises mainly from economic factors and is not limited to interest rate and currency movements. This exposure to market price risk may result in substantial fluctuations in the market price of the issued preferred securities and the invested subordinated notes from time to time. The partnership seeks to minimise these risks by holding the same notional value of the invested subordinated notes and the issued perpetual preferred securities as the market price of the two financial instruments are linked.

**Currency risk** – Foreign currency risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in foreign exchange rates. The partnership is not exposed to currency risk because the issued perpetual preferred securities and the investment in the subordinated notes are both in the same currency.

**Credit risk** – The partnership's transactions in the subordinated notes expose it to the risk that the counterparty will not be able to honour its contractual obligation to deliver the investment for the purchase or cash for a sale. The issuer's sole source of funds to pay distribution on the preferred securities will be payments which it receives from its investments in the subordinated notes issued by Lehman Brothers Holding Inc. The perpetual preferred securities will benefit from a subordinated guarantee entered into by Lehman Brothers Holding Inc which is the parent company of the Lehman Brothers group of companies.

**Liquidity risk** – The assets of the partnership include subordinated notes that are issued by Lehman Brothers Holding Inc.

Whilst, the preferred securities has no fixed final redemption date, the securities carry an optional redemption clause that may be exercised by the General Partner to redeem the preferred securities if the subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

**Interest rate risk** – Interest rate risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in interest rates. Investments and Issued debt with fixed or floating rates may experience substantial fluctuations in net cash flow and valuation for changing interest rate. If interest rates rise, the income potential of the investment or issued debt may rise or fall depending on if the interest rate is fixed or floating and vice versa.

**16.    ULTIMATE PARENT UNDERTAKING**
The ultimate parent undertaking of Lehman Brothers UK Capital Funding IV LP is LB GP No.1 Limited, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc.

The largest group in which the results of the partnership are consolidated is that headed by LB GP No. 1 Limited. The consolidated accounts of the group are available to the public from 25 bank Street, London E14 5LE.

14

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 8/24/2018 at 5:01 PM Central. Please print this page as proof of your filing.

**Lehman Brothers UK Capital Funding IV LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor | Lehman Brothers Special Financing Inc. (08-13888) |
| Please identify the counterparties, guarantor and/or credit support provider to the derivative contract. | Lehman Brothers UK Capital Funding IV LP, Lehman Brothers Special Finance Inc., Lehman Brothers Holdings Inc. (guarantor) |
| Have you entered into a termination agreement with the Debtors establishing the agreed upon amounts due in respect of derivative contracts? | Selected: No |
| Have the derivative contracts matured or been terminated? | Selected: No |

| **United States Bankruptcy Court/Southern District of New York** | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**Lehman Brothers Special Financing Inc.** | Case No. of Debtor<br>**08-13888** | |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.*
Lehman Brothers UK Capital Funding V LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB

Telephone number: +44 (0)20 3201 8000    Email Address: bruce.mackay@rsmuk.c

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____    Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 612,934,864, as set forth in the addendum

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete Item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** _____
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____
Value of Property: $ _____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____  Basis for perfection: _____
**Amount of Secured Claim:** $ _____  **Amount Unsecured:** $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$ _____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: _____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

AUG 24 2018

**EPIQ**

| Date:<br>16 AUGUST 2018 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>*[signature]* BRUCE ALEXANDER MACKAY |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

AS AGENT OF LB GP No. 1 LTD AND LEHMAN BROTHERS UK CAPITAL FUNDING V LP WITHOUT PERSONAL LIABILITY

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 13-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

# __ DEFINITIONS __

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
**Lehman Brothers Holdings Claims Processing**
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

# __ I N F O R M A T I O N __

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                         :

                                               :    **Chapter 11**

                                               :

**LEHMAN BROTHERS SPECIAL FINANCING**    :    **Case No. 08-13888 (JMP)**
**INC.,** *et al.,*

                                               :

                                               :    **(Jointly Administered)**

                         Debtors.               :

                                               :

-------------------------------------------------------------x

## ADDENDUM TO PROOF OF CLAIM FILED BY LEHMAN BROTHERS UK CAPITAL FUNDING V LP AGAINST LEHMAN BROTHERS SPECIAL FINANCING INC.

**A.    The Chapter 11 Cases**

1.    On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. and several of its subsidiaries commenced voluntary cases (the "LBHI Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.    On October 3, 2008 (the "LBSF Petition Date"), Lehman Brothers Special Financing Inc. ("LBSF") commenced a voluntary proceeding (the "LBSF Case") in the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The LBHI Cases and the LBSF Case have been consolidated for administrative purposes.

**B.    The Schedules and Bar Date Order**

3.    On March 12, 2009, LBSF filed schedules of its assets and liabilities. On June 15, 2009, LBSF filed amended schedules of its assets and liabilities (the "Schedules").

4.    On July 2, 2009, the Bankruptcy Court entered an order [Docket No. 4271 in the LBHI Cases] (the "Bar Date Order") establishing a claims bar date by which certain entities were

required to file proofs of claim against the debtors in the LBHI Cases and the LBSF Case. Pursuant to the Bar Date Order, persons or entities were **not** required to file a proof of claim if they were included on the "Exempt Entities List". See Bar Date Order at 5. Lehman Brothers UK Capital Funding V LP ("LP V") was and is on the Exempt Entities List. Thus, LP V was not required to file a proof of claim under the Bar Date Order and does so now only out of an abundance of caution. LP V reserves all rights with respect to the Bar Date Order and the Exempt Entities List.

C.     **The Partnership**

5.     LP V is managed by LB GP No. 1 Ltd. (In Liquidation) (the "General Partner"), which is the General Partner for LP V and four other partnerships (collectively, the "Partnerships") based in the United Kingdom. LP V was formed to raise regulatory capital for LBHI by issuing preferred securities in the form of Enhanced Capital Advantaged Preferred Securities (the "ECAPS") to investors (the "ECAPS Holders"). Upon formation, LP V issued $500,000,000 Fixed Rate ECAPS. The majority of the funds raised from issuing the ECAPS were used to purchase subordinated notes issued by LBHI.

6.     As of September 2008, LBHI was the sole member of the General Partner. In 2010, all of the General Partner's directors and its corporate secretary resigned from the company. The General Partner was dissolved on June 22, 2010, and removed from the Register of Companies in the U.K. The General Partner therefore did not exist, and the Partnerships had no manager when, LBHI, LBSF, and the other debtors in the LBHI Cases and the LBSF Case negotiated, confirmed, and consummated the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Docket No. 22737 in the LBHI Cases], which was confirmed on December 6, 2011 [Docket No. 23023 in the LBHI Cases], and went effective on March 6, 2012 [Docket No. 26039 in the LBHI Cases].

7.    On June 20, 2016, Deutsche Bank filed an application to restore the General Partner to the Register of Companies. This restoration was made effective on February 3, 2017. Upon being restored to the Register of Companies, the General Partner was placed into creditors' voluntary liquidation on February 28, 2017, by the resolution of LBHI acting as the General Partner's sole shareholder. On the same date, LBHI also resolved to appoint Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as the Joint Liquidators of the General Partner (the "Joint Liquidators"). The appointment of the Joint Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. The Joint Liquidators were appointed as liquidators of the General Partner so that they could wind up the affairs of the Partnerships and distribute Partnership assets to those entitled to them in accordance with the terms of the governing relevant partnership agreements and applicable English law. Since their appointment, the Joint Liquidators have worked diligently to identify assets and claims it may have against other parties, including claims in the LBHI Cases and the LBSF Case, so that it may appropriately distribute the Partnerships' assets.

**D.    The Swap Claims**

8.    Upon information and belief, LP V was party to a 60-year non-call 5-year interest rate swap with LBSF (the "Swap"). Upon information and belief, the notional amount of the Swap was $500,000,000, with a maturity of June 1, 2067. LBSF had a cancellation option on the Swap that could be exercised on June 1, 2012, and annually thereafter. Upon information and belief, the interest rate on the fixed interest rate leg of the Swap is 6.90%, which interest was receivable annually on June 1 of each year from and including June 1, 2008, to and including the termination date. Upon information and belief, the interest rate on the floating interest rate leg of the Swap is 3 month USD LIBOR + 0.64%, payable quarterly on the 1st of March, June,

September, and December each year from and including June 1, 2008, to and including the termination date.

9.      Upon information and belief, LBSF's Schedules include an intercompany payable from LBSF to Lehman Brothers UK Capital Funding V LP for $26,808,640. See Schedules, Schedule F - Personal Property, Page 2 of 5 (showing unliquidated amount owed to LB Capital Funding No. 5 LP as an intercompany payable from LBSF). The Joint Liquidators believe that this intercompany payable is on account of the Swap.

10.     The Joint Liquidators have no information indicating that LBSF cancelled the Swap pursuant to its cancellation option or that LBSF or LP V terminated the swap upon the commencement of the LBSF Case.

11.     Pursuant to Article 11.1 of the Plan, all prepetition executory contracts between LBHI, LBSF, or any other debtor and another person or entity was deemed rejected on the effective date of the Plan, except as otherwise set forth in Article 11.1. Upon information and belief, the Swap was therefore rejected as of March 6, 2012.

12.     The Joint Liquidators have not at this time been able to locate further information on the Swap other than what is attached hereto as **Exhibit 1** and **Exhibit 2**. Contemporaneously herewith, the Joint Liquidators have contacted counsel to LBHI and LBSF and requested all documentation they have with respect to the Swap.

13.     The Joint Liquidators had the Swap independently valued based on the limited information that the Joint Liquidators currently have in their possession. The Joint Liquidators will amend this Proof of Claim as necessary upon obtaining additional documentation or learning new facts related to the Swap and reserve all of their LP V's rights in relation to the Swap. The independent analysis the Joint Liquidators have received values the Swap claim at $612,934,864. The Swap claim includes (a) $531,318,852 for amounts owed as a

result of the automatic rejection of the Swap upon consummation of the Plan on March 6, 2012, and (b) $81,616,012 of net unpaid and accrued amounts owed to LP V up to and including March 6, 2012. The Joint Liquidators have assumed that net unpaid and accrued amounts owed to LP V up to and including March 6, 2012, have not been paid.

### E.    Reservation of Rights

14.    LP V reserves its rights to amend or amend and restate this Proof of Claim for any reason, including, but not limited to, the discovery of any new facts with respect to the claims underlying this Proof of Claim.

### F.    Notices

15.    All notices with respect to this Proof of Claim should be sent to:

c/o Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP as joint liquidators of LB GP No. 1 Ltd.
Lehman Brothers UK Capital Funding V LP
RSM Restructuring Advisory LLP
25 Farringdon Street
London, EC4A 4AB
Attention: Bruce Mackay
Telephone: +44 (0)20 3201 8000
Email: bruce.mackay@rsmuk.com

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention: David R. Seligman, P.C. and Joseph M. Graham
Telephone: (312) 862-2000
Email: david.seligman@kirkland.com, joe.graham@kirkland.com

\*        \*        \*        \*        \*

**<u>Exhibit 1</u>**

**Indicative Term Sheet re Swap**



**LEHMAN BROTHERS**

## Fixed Income Derivative Products

# 60yr non call 5yr interest rate swap

| | |
|---|---|
| Party A | Lehman Brothers UK Capital Funding V LP |
| Party B | Lehman Brothers Special Finance |
| Notional Amount | USD 500,000,000 |
| Trade Date | 15 May 2007 |
| Settlement Date | 1 June 2007 |
| Maturity Date | 1 June 2067 |
| Cancellation Option | On 1st June 2012 and annually thereafter, Option Holder may choose to terminate the swap. On such termination, no further payments will be made by either party. Notice date is 37 days. |
| Cancellation Option Holder | Lehman Brothers Special Finance |
| Initial Exchange | None |
| Final Exchange | None |
| Swap Exchange | |
| Party A pays | 3month Libor + 64 bps, modified following quarterly Act/360 on Notional Amount |
| Party B pays | 6.90% annually unadjusted 30/360 on Notional Amount |
| Calculation Agent | Party B |
| Business Days | NEW YORK |
| Documentation | All capitalised terms used in this term sheet and not otherwise defined will have the meanings given to them in the 2000 ISDA Definitions |

This termsheet is indicative only and is subject to change without notice. Information other than indicative terms (including market data and statistical information) has been obtained from various sources. We do not represent that it is complete or accurate. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters, is not comprehensive, is not intended to suggest that outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. No assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Transactions of the sort described herein contain complex characteristics and risk factors. Transactions incorporating derivatives may create additional risks and exposures. Before entering into any transaction, you should consider the suitability of the transaction to your particular circumstances and independently review (with your professional advisers as necessary) the specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences. Lehman Brothers does not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. References herein to 'Lehman Bros' shall include Lehman Brothers International (Europe) and Lehman Brothers Europe Limited and their affiliates. Both Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are regulated by the Financial Services Authority.

**Exhibit 2**

**LP V Interim report and Accounts (Unaudited) For the Period Ended 31 May 2008**

# LEHMAN BROTHERS UK CAPITAL FUNDING V LP

Interim Report and Accounts

(Unaudited)

For the period ended 31 May 2008

Registered No. LP 012132

## Lehman Brothers UK Capital Funding V LP

Registered No. LP 012132

**PARTNERS**
LB GP No. 1 Limited – General Partner
The Bank of New York Depository (Nominees) Limited – Initial Limited Partner
LB Investment Holdings Limited – Preferential Limited Partner

**BUSINESS ADDRESS**
25 Bank Street
London
E14 5LE

**AUDITORS**
Ernst & Young LLP
1 More London Place
London SE1 2AF

Lehman Brothers UK Capital Funding V LP

## INTERIM PARTNERS' REPORT

The partners present their interim report and unaudited condensed accounts for the six months ended 31 May 2008.

This condensed interim financial information does not comprise statutory accounts within the meaning of section 240 of the Companies Act 1985 (section 434 of the Companies Act 2006).

Lehman Brothers UK Capital Funding V LP is registered as a limited partnership under the Limited Partnership Act 1907.

The Limited Partnership agreement was made on 10 May, 2007 between the companies:

1. **LB GP NO. 1 LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the General Partner");

2. **THE BANK OF NEW YORK DEPOSITARY (NOMINEES) LIMITED**, a company incorporated in England and Wales whose registered office is at 1 Canada Square, London E14 5AL, United Kingdom ("the Initial Limited Partner"); and

3. **LB INVESTMENT HOLDINGS LIMITED**, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holdings Inc whose registered office is at 25 Bank Street, London E14 5LE, United Kingdom ("the Preferential Limited Partner").

The capital contribution made by the partners is disclosed in note 12 of the accounts.

Under the Limited Partnership agreement, no Partner shall have any right to withdraw from the partnership or make a demand for withdrawal of any part of its Capital Contribution until the dissolution of the partnership.

Further, any distribution made on the distribution payment date shall not have the benefit of reducing, withdrawing, returning or eliminating any part of the Aggregate Capital Contributions.

A Limited Partner may make further Capital Contribution to satisfy any commitment or may be separately agreed with the General Partner in line with the Partnership Agreement.

Partners' profit and losses are allocated between them in accordance with the Limited Partnership agreement, which also governs the rights of partners regarding drawings.

## PRINCIPAL ACTIVITY

The principal activity of the limited partnership is to raise capital by issuing preferred securities to the Initial Limited Partner, which is then further lent on to Lehman Brothers Holdings Inc.

## REVIEW OF BUSINESS AND FUTURE DEVELOPMENTS

The profit after taxation for the six months period of USD 154,056 is set out on page 5 and has been transferred to the partner's current account (note 13). (Period from 10 May to 31 May 2007 - $nil).

The partners do not expect any significant changes to the business in the foreseeable future and the financial position of the partnership at the end of the period was satisfactory.

## RELATED PARTY TRANSACTIONS

There are no related party transactions to report. The partnership has taken advantage of the exemption in paragraph 3(c) of Financial Reporting Standard 8 from disclosing transactions with related parties that are part of Lehman Brothers Holdings Inc.

2

Lehman Brothers UK Capital Funding V LP

## INTERIM PARTNERS' REPORT (CONTINUED)

### GROUP RISK MANAGEMENT

Risk management policies and procedures for Lehman Brothers Holdings Inc. and subsidiaries (the "Group") (including all international locations) are developed on a global basis.

As a leading global investment bank, risk is an inherent part of our businesses. Global markets, by their nature, are prone to uncertainty and subject participants to a variety of risks. Risk management is considered to be of paramount importance in our day-to-day operations. Consequently, we devote significant resources (including investments in employees and technology) to the measurement, analysis and management of risk.

The principal risks of the partnership and management of risk are disclosed in note 15 of the accounts.

On behalf of the General Partner

11 SEP 2008

3

Lehman Brothers UK Capital Funding V LP

## STATEMENT OF PARTNERS' RESPONSIBILITIES

The partners confirm that this condensed financial information has been prepared in accordance with IAS 34 as adopted by the European Union and that the interim partners' report includes a fair review of information required by DTR 4.2.7 and DTR 4.2.8, namely:

- an indication of important events that have occurred during the first six months and their impact on the condensed set of financial statements, and a description of the principal risks and uncertainties for the remaining six months of the financial year; and

- material related-party transactions in the first six months and any material changes in the related-party transactions described in the last annual report.

4

Lehman Brothers UK Capital Funding V LP

## PROFIT AND LOSS ACCOUNT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| Interest receivable and similar income | 2 | 32,515,357 | — |
| Interest payable and similar charges | 3 | (32,361,301) | — |
| PROFIT ON ORDINARY ACTIVITIES BEFORE TAXATION | | 154,056 | — |
| Taxation on profit on ordinary activities | 5 | — | — |
| PROFIT FOR THE FINANCIAL PERIOD | | 154,056 | — |

## PROFIT APPROPRIATION ACCOUNT FOR THE SIX MONTH PERIOD ENDED 31 MAY 2008

| | | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| Profit to be shared | | 154,056 | |
| Share of Profit: | | | |
| PROFIT APPROPRIATION | | | |
| General Partner – LB GP No. 1 Limited | 13 | - | - |
| Initial Limited Partner – Bank of New York Depository (Nominees) Ltd | 13 | | |
| Preferential Limited Partner - LB Investment Holdings Limited | 13 | (154,056) | - |
| | | - | - |

There are no other gains or losses attributable to the partners of the partnership for the six months ended 31 May 2008 and for the period 10 May to 31 May 2007.

The results in the profit and loss account for the six month period ended 31 May 2008 and for the period 10 May to 31 May 2007 relate to continuing activities.

5

## Lehman Brothers UK Capital Funding V LP

**BALANCE SHEET**
As at 31 May 2008

| | Notes | Unaudited 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|---|
| **FINANCIAL ASSETS** | | | |
| Available for sale – Money Market Investment | 6 | 26,097,463 | 25,646,026 |
| Loans and receivables | 7 | 500,000,001 | 500,000,001 |
| Derivative financial instrument | 8 | 37,582,472 | 17,570,146 |
| | | 563,679,936 | 543,216,173 |
| **CURRENT ASSETS** | | | |
| Debtors: amounts falling due within one year | 7 | 4,592,932 | 7,652,639 |
| **CURRENT LIABILITIES** | | | |
| CREDITORS: amounts falling due within one year | 9 | (34,500,000) | (17,250,000) |
| | | (29,907,068) | (9,597,361) |
| **NET CURRENT (LIABILITIES)/ASSETS** | | | |
| **TOTAL ASSETS LESS CURRENT LIABILITIES** | | 533,772,868 | 533,618,812 |
| CREDITORS: amounts falling due after more than one year | 10 | (500,000,000) | (500,000,000) |
| | | 33,772,868 | 33,618,812 |
| **FINANCED BY:** | | | |
| Partners' capital accounts | 12 | 25,000,001 | 25,000,001 |
| Partners' current accounts | 13 | 8,772,867 | 8,618,811 |
| | | 33,772,868 | 33,618,812 |

The accounts and notes to the accounts on pages 5 to 14 were approved by the General Partner on and were signed on their behalf by:

1 1 SEP 2008

6

Lehman Brothers UK Capital Funding V LP

CASH FLOW STATEMENT
For the period ended 31 May 2008

| | Notes | Unaudited 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES | 14 | – | (1) |
| | | | |
| RETURNS ON INVESTMENTS AND SERVICING OF FINANCE | | 15,111,301 | – |
| Interest received | | (15,111,301) | – |
| Interest paid | | 451,437 | – |
| Dividends received from Money Market Investment | | | |
| | | | |
| Net cash inflow from returns on investments and servicing of finance | | 451,437 | – |
| | | | |
| CAPITAL EXPENDITURE AND FINANCIAL INVESTMENT | | (451,437) | – |
| Purchase of Money Market Investment | | | |
| | | | |
| FINANCING | | – | 1 |
| Partnership capital account deposited | | | – |
| | | | |
| MOVEMENT IN NET CASH | | – | – |

7

## Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

1. **ACCOUNTING POLICIES**

   *Basis of Preparation*
   The condensed interim accounts of Lehman Brothers UK Capital Funding V LP have been prepared in accordance with the Disclosure and Transparency Rules of the Financial Services Authority and with IAS 34, 'Interim financial reporting'.   The condensed interim financial information should be read in conjunction with the annual financial statements for the year ended 30 November 2007, which have been prepared under applicable accounting standards in the United Kingdom and in accordance with The Partnerships and Unlimited Companies (Accounts) Regulation 1993.

   *Accounting Policies*
   The accounting policies applied are consistent with those of the annual financial statements for the year ended 30 November 2007.

2. **INTEREST RECEIVABLE AND SIMILAR INCOME**

| | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| Interest receivable on subordinated notes issued by other group undertakings | 12,051,594 | — |
| Dividend Income receivable on money market investment | 451,437 | — |
| Interest rate swap fair value gain | 20,012,326 | — |
| | 32,515,357 | — |

3. **INTEREST PAYABLE AND SIMILAR CHARGES**

| | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| Interest payable on perpetual preferred securities | 17,250,000 | — |
| Interest paid on interest rate swap | 15,111,301 | — |
| | 32,361,301 | — |

4. **PROFIT AND LOSS ACCOUNT**
   The partnership had no employees during the period (2007 – none).

   There was no income distribution paid to the General Partner, Initial Limited Partner and Preferential Limited Partner during the period (2007 – nil).

   Any income or losses of the partnership are appropriated to the Preferential Limited Partner's current account in accordance with the Partnership Agreement.

5. **TAX ON PROFIT ON ORDINARY ACTIVITIES**
   No provision for taxation has been made in the accounts. Each partner is exclusively liable for tax liabilities arising out of their interest in the partnership and this will be assessed on them and not the partnership.

8

## Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

6.  **AVAILABLE FOR SALE – MONEY MARKET INVESTMENTS**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Money Market Investments | 26,097,463 | 25,646,026 |

On 1 June 2007, the partnership subscribed to Money Market Investment of Lehman Brothers AAA Dollar Liquidity Fund, listed on the Irish Stock Exchange, maturing on the 1 June 2037.

The partnership's investment in the money market fund of Lehman Brothers AAA Dollar Liquidity Fund expose it to credit risk that the issuer of the security, Lehman Brothers AAA Dollar Liquidity Fund will be unable to repay the dividend and principal in a timely manner.

The maximum amount of the credit exposure as at 31 May 2008 is USD 26,097,463 (2007 – USD 25,646,026).

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Notional at the beginning of the period | 25,646,026 | 25,000,000 |
| Notional subscribed during the period | 451,437 | 646,026 |
|  | 26,097,463 | 25,646,026 |

During the period dividend of USD 451,437 was received and reinvested with equivalent value of shares received with a nominal value of USD 1 per share (2007 – USD 646,026).

7.  **LOANS AND RECEIVABLES**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| (a) Debtors: amount falling due after one year | | |
| Amount receivable from other group undertakings | 1 | 1 |
| Financial asset at amortised cost - Subordinated notes issued by other group undertakings | 500,000,000 | 500,000,000 |
|  | 500,000,001 | 500,000,001 |

On 1 June 2007, the partnership subscribed to Subordinated notes of Lehman Brothers Holding Inc, maturing on 1 June 2037. The interest rate on the notes is USD LIBOR + 0.64%. The interest is receivable quarterly on 1 March, June, September and December each year from and including 1 June 2008 to and including the termination date.

The effective interest rate of USD LIBOR + 0.64% has been used to calculate the amortised value of the Subordinated notes as at the six month end date 31 May 2008.

The partnership's investment in the subordinated notes of Lehman Brothers Holdings Inc expose it to credit risk that the issuer of the subordinated notes, Lehman Brothers Holdings Inc will be unable to repay interest and principal in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is USD 500,000,000 (2007 – USD 500,000,000).

9

Lehman Brothers UK Capital Funding V LP

## NOTES TO THE ACCOUNTS
As at 31 May 2008

| 7. | LOANS AND RECEIVABLES (CONTINUED) | 31 May 2008 USD | 30 Nov 2007 USD |
|----|-----|-----|-----|
| | (b) Debtors: amount falling due within one year | | |
| | Interest receivable on subordinated notes issued by other group undertaking | 4,592,932 | 7,652,639 |

The maximum amount of the credit exposure as at 31 May 2008 is USD 4,592,932 (2007 – USD 7,652,639).

**8.  DERIVATIVES FINANCIAL INSTRUMENT**

| | | 31 May 2008 |
|---|---|---|
| | Notional Amount USD | Fair value Assets USD |
| Interest rate swap | 500,000,000 | 37,582,472 |

| | | 30 Nov 2007 |
|---|---|---|
| | Notional Amount USD | Fair value Assets USD |
| Interest rate swap | 500,000,000 | 17,570,146 |

On 1 June 2007, the partnership entered into an Interest rate Swap with Lehman Brothers Special Finance, maturing on 1 June 2067. The Interest rate Swap includes a cancellation option held by Lehman Brothers Special Financing to terminate the Swap on 1 June 2012 and annually thereafter.

The interest rate on the fixed interest rate leg of the Interest rate Swap is 6.90%. The interest is receivable annually on 1 June each year from and including 1 June 2008 to and including the termination date.

The interest rate on the floating interest rate leg of the Interest rate Swap is 3 month USD LIBOR + 0.64%. The interest is payable quarterly on 1 March, June, September and December each year from and including 1 June 2008 to and including the termination date.

The partnership's transactions in the interest rate swap of Lehman Brothers Special Finance expose it to credit risk that the issuer of the derivative, Lehman Brothers Special Finance will be unable to repay the interest in a timely manner. The maximum amount of the credit exposure as at 31 May 2008 is USD 37,582,472 (2007 – USD 17,570,146).

10

## Lehman Brothers UK Capital Funding V LP

### NOTES TO THE ACCOUNTS
As at 31 May 2008

9.    **CREDITORS: AMOUNTS FALLING DUE WITHIN ONE YEAR**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Interest payable on perpetual preferred securities | 34,500,000 | 17,250,000 |

10.    **CREDITORS: AMOUNTS FALLING DUE AFTER MORE THAN ONE YEAR**

|  | 31 May 2008 USD | 30 Nov 2007 USD |
|---|---|---|
| Financial liability at amortised cost - Perpetual preferred securities | 500,000,000 | 500,000,000 |

On 1 June 2007, the partnership issued Guaranteed Non-voting Non-cumulative Perpetual Preferred Securities, listed on the London Stock Exchange and Euronext Amsterdam NV. The Perpetual Preferred Securities are guaranteed by Lehman Brothers Holding Inc and include an optional redemption clause that may be exercised by the General Partner if the Subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

The interest rate on the Perpetual Preferred Securities is 6.90%. The interest is payable on 1 June each year from and including 1 June 2008 to and including the termination date.

The effective interest rate of 6.90% has been used to calculate the amortised value of the Perpetual Preferred Securities as at the six month end date 31 May 2008 (2007- 6.90%).

The partnership has not had any default of principal, interest or any other breaches with respect to their liabilities for the financial period.

Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

11.   FAIR VALUES OF FINANCIAL ASSETS AND FINANCIAL LIABILITIES

|  | 31 May 2008<br>Carrying value<br>USD | 31 May 2008<br>Fair Value<br>USD |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | 1 | 1 |
|   - Amount receivable from other group undertakings | | |
|   - Financial asset at amortised cost -Subordinated notes issued | 500,000,000 | 411,605,000 |
|     by other group undertakings | 4,592,932 | 4,592,932 |
|   - Debtors: Amounts falling due within one year | 26,097,463 | 26,097,463 |
| (ii) Available for Sale - Money Market Investments | | |
| (iii) Fair Value through P&L | | |
|   - Derivative Financial Instrument - Interest rate Swap (positive value) | 37,582,472 | 37,582,472 |
| **Financial Liabilities** | | |
| (i) Financial liability at amortised cost | (500,000,000) | (419,375,000) |
|   - Perpetual Preferred Securities | (34,500,000) | (34,500,000) |
| (ii) Creditors: Amounts falling due within one year | | |

|  | 30 Nov 2007<br>Carrying value<br>USD | 30 Nov 2007<br>Fair Value<br>USD |
|---|---|---|
| **Financial Assets** | | |
| (i) Loans and receivable | 1 | 1 |
|   - Amount receivable from other group undertakings | | |
|   - Financial asset at amortised cost -Subordinated notes issued | 500,000,000 | 425,768,344 |
|     by other group undertakings | 7,652,639 | 7,652,639 |
|   - Debtors: Amounts falling due within one year | 25,646,026 | 25,646,026 |
| (ii) Available for Sale - Money Market Investments | | |
| (iii) Fair Value through P&L | | |
|   - Derivative Financial Instrument - Interest rate Swap (positive value) | 17,570,146 | 17,570,146 |
| **Financial Liabilities** | | |
| (i) Financial liability at amortised cost | (500,000,000) | (433,750,000) |
|   - Perpetual Preferred Securities | (17,250,000) | (17,250,000) |
| (ii) Creditors: Amounts falling due within one year | | |

The fair value of quoted instruments is determined by reference to bid prices at the close of business on the balance sheet date. Where there is no active market, fair value is determined using the valuation techniques. These include using recent arm's length market transactions: reference to the current market value of another instrument which is substantially the same; discounted cash flow analysis and pricing models.

The fair value approximates the carrying value of the six month end balance of the debtors – amounts falling due within one year and the creditors – amounts falling due within one year.

12

Lehman Brothers UK Capital Funding V LP

NOTES TO THE ACCOUNTS
As at 31 May 2008

12. **PARTNERS' ACCOUNTS**

**Capital accounts**

| | General Partner USD | Initial Limited Partner USD | Preferential Limited Partner USD | Total USD |
|---|---|---|---|---|
| At 30 November 2007 | 1 | – | 25,000,000 | 25,000,001 |
| At 31 May 2008 | 1 | – | 25,000,000 | 25,000,001 |

13. **PARTNERS' CURRENT ACCOUNTS**

**Current Accounts**

| | General Partner USD | Initial Limited Partner USD | Preferential Limited Partner USD | Total USD |
|---|---|---|---|---|
| At 1 December 2007 | – | – | 8,618,811 | 8,618,811 |
| Share of profit for the period | – | – | 154,056 | 154,056 |
| At 31 May 2008 | – | – | 8,772,867 | 8,772,867 |

**Loan Accounts**
There are no loan accounts held by the General Partner, Initial Limited Partner and the Preferential Limited Partner during the period.

14. **CASH FLOW FROM OPERATING ACTIVITIES**

| | 6 months to 31 May 2008 USD | Period from 10 May to 31 May 2007 USD |
|---|---|---|
| | – | – |
| Operating profit | – | (1) |
| Increase in debtors | | |
| | – | (1) |

13

## Lehman Brothers UK Capital Funding V LP

### NOTES TO THE ACCOUNTS
As at 31 May 2008

15. **FINANCIAL RISK MANAGEMENT**

**Market price risk** – Market price risk can be defined as the uncertainty from future price movements of the financial instrument issued and invested in by the partnership. Market price risk arises mainly from economic factors and is not limited to interest rate and currency movements. This exposure to market price risk may result in substantial fluctuations in the market price of the issued preferred securities and the invested subordinated notes from time to time. The partnership seeks to minimise these risks by holding the same notional value of the invested subordinated notes and the issued perpetual preferred securities as the market price of the two financial instruments are linked.

**Currency risk** – Foreign currency risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in foreign exchange rates. The partnership is not exposed to currency risk because the issued perpetual preferred securities and the investment in the subordinated notes are both in the same currency.

**Credit risk** – The partnership's transactions in the subordinated notes expose it to the risk that the counterparty will not be able to honour its contractual obligation to deliver the investment for the purchase or cash for a sale. The issuer's sole source of funds to pay distribution on the preferred securities will be payments which it receives from its investments in the subordinated notes issued by Lehman Brothers Holding Inc. The perpetual preferred securities will benefit from a subordinated guarantee entered into by Lehman Brothers Holding Inc which is the parent company of the Lehman Brothers group of companies.

**Liquidity risk** – The assets of the partnership include subordinated notes that are issued by Lehman Brothers Holding Inc.

Whilst, the preferred securities has no fixed final redemption date, the securities carry an optional redemption clause that may be exercised by the General Partner to redeem the preferred securities if the subordinated notes issued by Lehman Brothers Holding Inc are redeemed.

**Interest rate risk** – Interest rate risk is the risk that the value of the partnership's investments and issued debt will fluctuate as a result of changes in interest rates. Investments and Issued debt with fixed or floating rates may experience substantial fluctuations in net cash flow and valuation for changing interest rate. If interest rates rise, the income potential of the investment or issued debt may rise or fall depending on if the interest rate is fixed or floating and vice versa.

16. **ULTIMATE PARENT UNDERTAKING**
The ultimate parent company of Lehman Brothers UK Capital Funding V LP is LB GP No.1 Limited, a company incorporated in England and Wales and a wholly owned subsidiary of Lehman Brothers Holding Inc.

The largest group in which the results of the partnership are consolidated is that headed by LB GP No.1 Limited. The consolidated financial statements of the group are available to the public from 25 Bank Street, London E14 5 LE.

CLAIM FORM FILING CONFIRMATION

Your claim form was successfully filed on 8/24/2018 at 5:03 PM Central. Please print this page as proof of your filing.

**Lehman Brothers UK Capital Funding V LP, c/o Bruce Mackay and Matthew Haw of RSM Restructuring Advisory as joint liquidators of LB GP No. 1 Ltd.**
**25 Farringdon Street**
**London, EC4A 4AB UNITED KINGDOM**

| | |
|---|---|
| Name of Debtor | Lehman Brothers Special Financing Inc. (08-13888) |
| Please identify the counterparties, guarantor and/or credit support provider to the derivative contract. | Lehman Brothers UK Capital Funding V LP, Lehman Brothers Special Finance Inc., Lehman Brothers Holdings Inc. (guarantor) |
| Have you entered into a termination agreement with the Debtors establishing the agreed upon amounts due in respect of derivative contracts? | Selected: No |
| Have the derivative contracts matured or been terminated? | Selected: No |