B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT
Southern District of New York

In re <u>Lehman Brothers Holdings, Inc.</u>   Case No. <u>08-13555 (JMP)</u>

### PARTIAL TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

<u>Goldman, Sachs & Co. LLC</u>
Name of Transferee

<u>Taconic Master Fund 1.5 LP</u>
Name of Transferor

Name and Address where notices to transferee should be sent:

30 Hudson Street, 4th Floor
Jersey City, NJ 07302
Attn: Thierry C. Le Jouan
Email: gsd.link@gs.com
Tel: (212) 934-3921

Court Claim # (if known): <u>As set forth on Schedule 1 to the attached Agreement and Evidence of Transfer of Claim</u>
Amount of Claim Transferred: <u>As set forth on Schedule 1 to the attached Agreement and Evidence of Transfer of Claim</u>
Date Claim Filed: <u>Multiple</u>
Debtor: <u>Lehman Brothers Holdings, Inc.</u>

Name and Address where transferee payments should be sent (if different from above): N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____   Date: September 7th, 2018
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

1014747v.1 3091/00722

## AGREEMENT AND EVIDENCE OF PARTIAL TRANSFER OF CLAIM

1.     For value received, the adequacy and sufficiency of which are hereby acknowledged, **Taconic Master Fund 1.5 LP** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Goldman, Sachs & Co. LLC** ("Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof:

(a) an undivided interest, to the extent relating to Seller's record and beneficial ownership interest in commercial paper issued by the Debtor (as defined below) as specified in Schedule 1 attached hereto, in Seller's right, title and interest in and to the Proof of Claim Number(s) set forth in Schedule 1 attached hereto (the "Proofs of Claim") filed by or on behalf of Seller's predecessor in interest against Lehman Brothers Holdings, Inc. (the "Debtor") in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court") administered under Case No. 08-13555 (SCC) (such undivided interest, the "Purchased Claim"),

(b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements under which Seller or any prior seller (each a "Prior Seller") acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim (the "Predecessor Transfer Agreements"),

(c) the commercial paper (the "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto, and

(d) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), (c) and (d), the "Transferred Claim").

For the avoidance of doubt, the parties agree that (x) the Purchased Claim relates to the Purchased Security specified in Schedule 1 attached to this Agreement and Evidence of Partial Transfer of Claim (this "Agreement") and made a part of this Agreement by reference ("Schedule 1"), (y) this Agreement relates only to the Purchased Claim and the Purchased Security and not to any other proof of claim ("Other Claim") or other security ("Other Security") of the Seller or any other party, and (z) Seller does not waive, relinquish, assign or transfer to Purchaser any action, claim, right or lawsuit of any nature whatsoever in whole or in part (i) arising out of or in connection with any Other Claim or Other Security, (ii) arising out of or in connection with the non-transferred portion of the Proof of Claim or the related commercial paper or (iii) that any party other than Seller or any Prior Seller might have or might pursue, whether against the Debtor or any other party, arising out of or in connection with any claim, security, matter or issue whatsoever.

2.     Seller hereby represents and warrants to Purchaser and to Purchaser's successors and assigns that: (a) the Proof of Claim was duly and timely filed in accordance with the Court's order setting the deadline for filing proofs of claim and the applicable procedures set forth in that certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Docket Number 4271 in the Proceedings); (b) Seller owns and has good and marketable title to the Transferred Claim and the Purchased Security, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (c) Seller is duly authorized and empowered to execute and perform its obligations

under this Agreement; (d) the Proof of Claim includes the Purchased Claim; (e) Seller and Prior Sellers pursuant to the transfers evidenced, noticed and docketed in the Case under Number 40333 and 40335 have not, independently or together, engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claim proportionately less payments or distributions or less favorable treatment than that received by other unsecured creditors of the Debtor; (f) neither Seller, nor any Prior Seller that is an affiliate of Seller, is in breach of or in default pursuant to any Predecessor Transfer Agreement to which Seller or such Prior Seller is a party; (g) to the best of Seller's knowledge, without due inquiry, Prior Sellers pursuant to the Predecessor Transfer Agreements docketed in the Case under Number 8158 and 8237 have not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claim proportionately less payments or distributions or less favorable treatment than that received by other unsecured creditors of the Debtor; (g) no payment or other distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claim, other than the distributions set forth on Schedule 2 attached hereto; and (h) with respect to the first distribution on or around April 17, 2012, the second distribution on or around October 1, 2012, the third distribution on or around April 4, 2013 and the fourth distribution on or around October 3, 2013, each Prior Seller that is an affiliate of Seller that held legal and beneficial title to each of the Purchased Securities during the period from April 17, 2012 through October 3, 2013, received the same pro rata amount of distributions as was received by other creditors of the same class and type as the Purchased Securities.

3. Seller hereby waives any objection to the transfer of the Transferred Claim to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the Proceedings, including, without limitation, for voting and distribution purposes with respect to the Transferred Claim. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claim, recognizing Purchaser as the sole owner and holder of the Transferred Claim, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4. All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Partial Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights pursuant to this Agreement without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations, warranties and covenants made pursuant to this Agreement.

5. Seller has transferred, or shall transfer as soon as practicable after the date of this Agreement, each Purchased Security to a DTC account designated in writing by Purchaser to Seller against payment by Purchaser of the purchase price specified in a separate communication between Seller and Purchaser. Seller agrees to forward to Purchaser, as soon as reasonably practicable, all notices (not otherwise publicly available in the Proceedings or otherwise) as received by Seller with respect to the Transferred Claim. This Agreement supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the purchase and sale of the Purchased Security.

6. Seller agrees that any distribution received by Seller on account of the Transferred Claim on or after the trade date as of which Seller and Purchaser confirmed the transaction contemplated pursuant to this Agreement, whether in the form of cash, securities, instruments or any other property, shall constitute property of Purchaser to which Purchaser has an absolute right and that Seller shall hold such property in trust and shall, at its own expense, deliver to Purchaser within three business days any such property in the same form received, together with any endorsement or documents necessary to transfer such property to Purchaser.

7. Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such

other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

        8.     Seller's and Purchaser's rights and obligations pursuant to this Agreement are to be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the state and federal courts located in the County of New York in the State of New York with respect to any matter arising with respect to this Agreement, the Transferred Claim or the transaction contemplated pursuant to this Agreement. Each of Seller and Purchaser consents to service of process by certified mail at its address listed on the signature page below. With respect to any matter arising with respect to this Agreement, the Transferred Claim or the transaction contemplated pursuant to this Agreement, Seller and Purchaser waive any right to demand a trial by jury.

[Remainder of the page intentionally black]

IN WITNESS WHEREOF, this Agreement and Evidence of Partial Transfer of Claim is executed this 4th day of SEP, 2018.

**GOLDMAN, SACHS & CO. LLC**

By: /s/
Name: Adam Savarese
Title: Managing Director

30 Hudson Street, 4th Floor
Jersey City, NJ 07302
Attn: Thierry C. Le Jouan
Email: gsd.link@gs.com
Tel: (212) 934-3921

**TACONIC MASTER FUND 1.5 LP**

By: Taconic Capital Advisors LP, as Investment Advisor

By: /s/
Name: Peyton McNutt
Title: Authorized Signatory

Credit Contact

Taconic Master Fund 1.5 LP
c/o Taconic Capital Advisors LP
450 Park Avenue, 9th Floor
NY, NY 10022
Attention: Alexandra Grigos
Phone: 212 209-3125
Fax 212-209-3189
e-mail: agrigos@taconiccap.com

Admin Contact

Taconic Master Fund 1.5 LP
c/o Taconic Capital Advisors LP
450 Park Avenue, 9th Floor
NY, NY 10022
Attention: Alexandra Grigos
Phone: 212 209-3125
Fax 212-209-3189
e-mail: agrigos@taconiccap.com

Schedule 1

Transferred Claim

Purchased Claim

The Purchased Claim consists of the Allowed Amounts in U.S. Dollar of the Securities under the Proofs of Claim set forth below.

Description of the Purchased Security:

|    | **Description of Security** | **CUSIP** | **Proof of Claim** | **Issuer** | **Guarantor** | **Principal/Notional Amount** | **Claimed/Allowed Amount** |
|----|-----------------------------|-----------|--------------------|------------|---------------|-------------------------------|----------------------------|
| 1. | Commercial Paper | 52525KAB8 | 32145.16 | LBHI | N/A | $132,523.82 | $132,788.00 |
| 2. | Commercial Paper | 52525KAB8 | 32145.21 | LBHI | N/A | $983,881.68 | $985,843.00 |
| 3. | Commercial Paper | 52525KAB8 | 33007.12 | LBHI | N/A | $853,912.77 | $855,615.00 |
| 4. | Commercial Paper | 52525KAB8 | 67146.09 | LBHI | N/A | $2,881,368.72 | $2,887,112.58 |
| 5. | Commercial Paper | 52525MKT4 | 68063.01 | LBHI | N/A | $26,250,000.00 | $26,149,243.60 |
| 6. | Commercial Paper | 52525MKV9 | 68061.01 | LBHI | N/A | $3,600,000.00 | $3,583,676.01 |
| 7. | Commercial Paper | 52525MKV9 | 68063.01 | LBHI | N/A | $13,440,476.00 | $13,379,530.95 |

Schedule 1–1

Schedule 2

| CUSIP | Proof of Claim | Claim Amount | **17-Apr-12** 6.023822% | **1-Oct-12** 3.814592% | **4-Apr-13** 4.973258% | **3-Oct-13** 5.741091% | **3-Apr-14** 6.371619% | **2-Oct-14** 4.631324% | **2-Apr-15** 3.182633% | **1-Oct-15** 2.381665% |
|---|---|---|---|---|---|---|---|---|---|---|
| 52525KAB8 | 32145.16 | $132,788.00 | N/A | N/A | N/A | N/A | $8,460.75 | $6,149.84 | $4,226.15 | $3,162.57 |
| 52525KAB8 | 32145.21 | $985,843.00 | N/A | N/A | N/A | N/A | $62,814.16 | $45,657.58 | $31,375.76 | $23,479.48 |
| 52525KAB8 | 33007.12 | $855,615.00 | N/A | N/A | N/A | N/A | $54,516.53 | $39,626.30 | $27,231.09 | $20,377.88 |
| 52525KAB8 | 67146.09 | $2,887,112.58 | N/A | N/A | N/A | N/A | $183,955.81 | $133,711.54 | $91,886.20 | $68,761.35 |
| 52525MKT4 | 68063.01 | $26,149,243.60 | N/A | N/A | N/A | N/A | $1,666,130.17 | $1,211,056.19 | $832,234.46 | $622,787.38 |
| 52525MKV9 | 68061.01 | $3,583,676.01 | N/A | N/A | N/A | N/A | $228,338.18 | $165,971.65 | $114,055.26 | $85,351.16 |
| 52525MKV9 | 68063.01 | $13,379,530.95 | N/A | N/A | N/A | N/A | $852,492.74 | $619,649.43 | $425,821.37 | $318,655.61 |

| CUSIP | Proof of Claim | Claim Amount | **31-Mar-16** 0.679760% | **16-Jun-16** 0.996488% | **6-Oct-16** 1.688364% | **6-Apr-17** 1.305082% | **5-Oct-17** 0.881386% | **7-Dec-17** 1.179150% | **5-Apr-18** 0.735060% |
|---|---|---|---|---|---|---|---|---|---|
| 52525KAB8 | 32145.16 | $132,788.00 | $902.64 | $1,323.22 | $2,241.94 | $1,732.99 | $1,170.37 | $1,565.77 | $976.07 |
| 52525KAB8 | 32145.21 | $985,843.00 | $6,701.37 | $9,823.81 | $16,644.62 | $12,866.06 | $8,689.08 | $11,624.57 | $7,246.54 |
| 52525KAB8 | 33007.12 | $855,615.00 | $5,816.13 | $8,526.10 | $14,445.90 | $11,166.48 | $7,541.27 | $10,088.98 | $6,289.28 |
| 52525KAB8 | 67146.09 | $2,887,112.58 | $19,625.44 | $28,769.73 | $48,744.97 | $37,679.19 | $25,446.61 | $34,043.39 | $21,222.01 |
| 52525MKT4 | 68063.01 | $26,149,243.60 | $177,752.10 | $260,574.07 | $441,494.42 | $341,269.07 | $230,475.77 | $308,338.81 | $192,212.63 |
| 52525MKV9 | 68061.01 | $3,583,676.01 | $24,360.40 | $35,710.90 | $60,505.50 | $46,769.91 | $31,586.02 | $42,256.92 | $26,342.17 |
| 52525MKV9 | 68063.01 | $13,379,530.95 | $90,948.70 | $133,325.42 | $225,895.18 | $174,613.85 | $117,925.31 | $157,764.74 | $98,347.58 |