**Hearing Date:  October 29, 2018**
**Response Deadline:  October 15, 2018**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:     (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

FOX ROTHSCHILD LLP
101 Park Avenue, 17th Floor
New York, New York 10178
Telephone:     (212) 878-7900
Facsimile:     (212) 692-0940
Michael A. Rollin
Maritza Dominguez Braswell

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**FOR LEAVE TO AMEND AND EXTEND THE SCOPE OF THE ALTERNATIVE**
**DISPUTE RESOLUTION PROCEDURES ORDERS FOR INDEMNIFICATION**
**CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

        **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")

of Lehman Brothers Holdings Inc. ("LBHI"), for leave to amend and extend the scope of the

alternative dispute resolution procedures order for indemnification claims of the debtors against

mortgage loan sellers, as more fully described in the Motion, will be held before the Honorable

Shelley C. Chapman, United States Bankruptcy Judge, in Courtroom 623 of the United States

Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York

10004 (the "Bankruptcy Court") on, **October 29, 2018 at 11:00 AM (ET)** (the "Hearing").

   **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the

Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the

name of the objecting party, the basis for the objection and the specific grounds thereof, shall be

filed with the Bankruptcy Court, with proof of service, electronically in accordance with General

Order M-399 (available at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's electronic case filing system, and by all other parties in interest, on a 3.5 inch disk,

compact disk, or flash drive, preferably in PDF format, WordPerfect or any other Windows-

based word processing format (with two hard copies directly two Chambers), and shall be served

upon (i) the chambers of the Honorable Shelly C. Chapman, One Bowling Green, New York,

New York 10004, Courtroom 623, (ii) Wollmuth Maher & Deutsch LLP, 500 Fifth Ave., New

York, New York 10110 (Attn: William A. Maher, Esq. and Adam M. Bialek, Esq.), attorneys for

LBHI, (iii) Fox Rothschild LLP, 101 Park Avenue, 17th Floor, New York, New York 10178

(Attn: Michael A. Rollin, Esq. and Maritza Dominguez Braswell, Esq.), attorneys for LBHI, and

(iv) the Office for the United States Trustee, 201 Varick Street, Suite 1006, New York, New

York 10014 on or before October 15, 2018 at 4:00 PM (ET) (the "Response Deadline").

   **PLEASE TAKE FURTHER NOTICE** that the Motion may be granted without

a hearing if no objection or response is filed and served by the Response Deadline.

   **PLEASE TAKE FURTHER NOTICE** that parties filing a response or objection

are required to attend the Hearing, and failure to appear may result in the relief being granted or

denied upon default.

Dated:      New York, New York
            October 1, 2018

                              Respectfully submitted,

                              /s/  *William A. Maher*
                              William A. Maher
                              James N. Lawlor
                              Paul R. DeFilippo
                              Adam M. Bialek
                              Mara R. Lieber
                              WOLLMUTH MAHER & DEUTSCH LLP
                              500 Fifth Avenue
                              New York, New York 10110
                              Telephone:  (212) 382-3300
                              Facsimile:   (212) 382-0050

                              -and-

                              Michael A. Rollin
                              Maritza Dominguez Braswell
                              FOX ROTHSCHILD LLP
                              101 Park Avenue, 17th Floor
                              New York, New York 10178
                              Telephone: (212) 878-7900
                              Facsimile: (212) 692-0940

                              *Counsel for Lehman Brothers Holdings Inc.*

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:     (212) 382-3300
Facsimile:     (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

FOX ROTHSCHILD LLP
101 Park Avenue, 17th Floor
New York, New York 10178
Telephone:     (212) 878-7900
Facsimile:     (212) 692-0940
Michael A. Rollin
Maritza Dominguez Braswell

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (SCC) |

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**FOR LEAVE TO AMEND AND EXTEND THE SCOPE OF THE ALTERNATIVE**
**DISPUTE RESOLUTION PROCEDURES ORDERS FOR INDEMNIFICATION**
**CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), the Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), for LBHI and certain of its subsidiaries

(collectively, the "Debtors"), submits this Motion for Leave to Amend and Extend the Scope of

the Alternative Dispute Resolution Procedures Orders for Indemnification Claims of the Debtors

Against Mortgage Loan Sellers (the "Motion"), pursuant to Rule 15(a)(2) of the Federal Rules of

Civil Procedure, made applicable by Rule 7015 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules").  The proposed Amended Alternative Dispute Resolution Procedures

Orders for Indemnification Claims of the Debtors Against Mortgage Loan Sellers is attached as

Exhibit A (the "Amended ADR Order").  A blacklined version of the proposed Amended ADR

Order, which reflects amendments made to the Alternative Dispute Resolution Procedures Order

for Indemnification Claims of the Debtors Against Mortgage Loan Sellers, dated June 24, 2014

[Docket No. 45277] (the "ADR Order"), is attached as Exhibit B.

The Amended ADR Order also amends the Alternative Dispute Resolution

Procedure Order for Indemnification Claims of the Debtors Against Certain Mortgage Loan

Sellers, dated July 28, 2015 [Docket No. 50465], Alternative Dispute Resolution Procedures

Order for Indemnification Claims of the Debtors Against Mortgage Loan Seller SecurityNational

Mortgage Company, dated Aug. 12, 2014 [Docket No. 45702], Alternative Dispute Resolution

Procedures Order For Indemnification Claims of the Debtors Against Mortgage Loan Sellers

Universal American Mortgage Company, LLC, Standard Pacific Mortgage, Inc., Shea Mortgage,

Inc., CTX Mortgage Company, LLC, PrimeLending, A PlainsCapital, Company, Allied

Mortgage Group, Inc., and DHI Mortgage Company, LTD., dated July 21, 2014 [Docket No.

45315], and Alternative Dispute Resolution Procedures Order for Indemnification Claims of the

Debtors Against Mortgage Loan Seller, Stearns Lending, LLC f/k/a Stearns Lending, Inc., dated

July 21, 2014 [Docket No. 45314] (together, the "Modified ADR Orders").  The Modified ADR

Orders governed a handful of Sellers who negotiated modified ADR procedures.  This Motion

2

does not seek to change the Modified ADR Orders' procedures other than expand their scope to cover the RMBS Allowed Claims (defined below).

In support of its Motion, the Plan Administrator states as follows:

## Preliminary Statement

1.     The ADR Order was established to efficiently address indemnification claims the Plan Administrator held against approximately 3,000 counterparties involving over 11,000 mortgage loans related to the settlements of claims litigation with the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corp. ("Freddie Mac"). Since the ADR Order was entered, (i) this Court entered the Order Estimating Allowed Claim Pursuant to RMBS Settlement Agreement, dated March 15, 2018 [Docket No. 57785] (the "RMBS Order"), and (ii) the Plan Administrator separately settled a number of RMBS Trustees' (as defined below) proofs of claim, which resulted in the RMBS Trustees' having allowed claims for more than $2.45 billion (the "RMBS Allowed Claims"), resulting in potential additional Indemnification Claims (as defined below) by LBHI against approximately 3,000[1] additional counterparties involving over 70,000 mortgage loans.

2.     As a result of the Fannie Mae and Freddie Mac settlements and the RMBS Allowed Claims, the Plan Administrator may assert contractual or other rights to require banks and other mortgage lending institutions from which LBHI or its affiliates purchased or received mortgage loans (collectively, the "Sellers") to reimburse and indemnify LBHI pursuant to related transaction documents that contain indemnification provisions, wherein the Sellers agreed to

---

[1] While the Plan Administrator now holds Indemnification Claims (as defined in ¶ 2) against over 6,000 parties, many of those parties are no longer viable.  Accordingly, the universe of Sellers the Plan Administrator is pursuing claims against will be significantly smaller.

hold the Plan Administrator harmless from any losses or damages suffered with respect to the mortgage loans (the "Indemnification Claims").

3.      The proposed Amended ADR Order does not materially change the procedures in the existing ADR Order, but seeks to streamline the procedures in the existing ADR Order and to add to the ADR Order the Indemnification Claims arising out of the RMBS Allowed Claims, which had not accrued when the Court originally entered the ADR Order.

4.      Federal Rule of Bankruptcy Procedure 9024 authorizes the Court to amend the ADR Order because it incorporates by reference Fed. R. Civ. P. 60, which permits a party to seek to alter an order or judgment of the Court at any time "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  Courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."  *Degen v. U.S.*, 517 U.S. 820, 823 (1996).

5.      This Motion should be granted.  The proposed Amended ADR Order adds Indemnification Claims and additional Sellers to the ADR Order, rather than initiating a separate ADR process.  This makes sense because many of the Sellers who are subject to the original ADR Order also sold loans to LBHI that were resolved by the RMBS Allowed Claims.  As resolution of claims and litigation is a traditional responsibility of this Court, the Court has the inherent authority to enter such relief.  Bankruptcy Rule 9024 expressly authorizes this Court to modify its orders in the interest of justice.  Finally, by analogy, under Bankruptcy Rule 7015, courts invariably permit a plaintiff to amend its pleadings unless the defendant demonstrates that such amendment:  (i) is being sought in bad faith; (ii) would unduly prejudice the plaintiff; or (iii) would be futile.  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also In re AMR Corp.*, 506 B.R. 368, 382 (Bankr. S.D.N.Y. 2014) (noting that "the

standard under Rule 15(a)(2) is generally lenient"). There is no bad faith here, and the Plan

Administrator's proposed amendment would not unduly prejudice any parties. Amending the

ADR Order to include the Indemnification Claims arising out of the RMBS Allowed Claims

would not be futile. Amending the ADR Order to include these claims will benefit the Plan

Administrator's creditors by expediting the resolution and recovery on account of such claims

and by increasing distributions to creditors.

### Background

6.      On September 15, 2008, and periodically thereafter (as applicable, the

"Commencement Date"), the Debtors commenced voluntary cases in this Court (the "Chapter 11

Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The

Chapter 11 Cases were consolidated for procedural purposes only and are being jointly

administered pursuant to Bankruptcy Rule 1015(b).

7.      By order dated December 6, 2011 (the "Confirmation Order"), the Bankruptcy

Court confirmed the Modified Third Amended Plan of Reorganization of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "Plan"), which became effective on March 6, 2012.

8.      The Plan provides for the orderly liquidation of all the property of the Debtors,

which revested on the Effective Date for the benefit of creditors and equity holders. Post-

confirmation, the equity in LBHI is held 100% by a trust defined in the Plan as the "Plan Trust."

The Plan Trust will liquidate the assets of the Debtors, including LBHI. *See* Plan § 7.4 ("The

Plan Trust shall be established on the Effective Date and shall continue in existence until the

Closing Date. . . . The Plan Trust shall exercise voting rights . . . in furtherance of the liquidation

of the Debtors and compliance with the provisions of the Plan."). Moreover, the Plan requires

LBHI, the Plan Administrator to, "wind-down, sell and otherwise liquidate assets of the Debtors

and/or Debtor-Controlled Entities in accordance with Section 6.1(b)(iii) of the Plan."  Plan §§

1.115, 7.6.  The Plan Administrator has the sole authority to liquidate assets, including

prosecuting Litigation Claims (defined below), to maximize distributions to creditors.  Plan §

6.1(b)(iii) and (iv).

9.      Under the Plan, LBHI will retain all Litigation Claims not otherwise disposed of

in the Plan.  Plan § 13.8.  "Litigation Claims" means "any and all Causes of Action held by"

LBHI.  Plan § 1.102.  The Plan further defines "Causes of Action" as "any and all actions, causes

of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and

demands whatsoever . . . liquidated or *unliquidated*, fixed or *contingent*, matured or *unmatured*,

disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing *or*

*hereafter arising*, in law, equity, or otherwise, *based in whole or in part upon any act or*

*omission or other event occurring prior to the Effective Date*.  Plan § 1.17 (emphasis added).

This definition encompasses the Indemnification Claims.

> [e]xcept as otherwise agreed by the Debtors, the Debtors' rights to
> assert or prosecute Litigation Claims for *reimbursement*,
> *indemnification*, recoupment or any other similar right, including,
> without limitation, any right to setoff with respect to any of the
> foregoing, against any entity, including, without limitation, a
> Primary Obligor, *on account of Distributions made to the holders*
> *of Allowed Claims* or Allowed Guarantee Claims, *shall be fully*
> *preserved* to the fullest extent permitted by applicable law.

Plan § 8.14(b) (emphasis added).  The Confirmation Order reiterates LBHI's "rights to *assert or*

*prosecute* Litigation Claims for *reimbursement, indemnification*, recoupment or any other similar

right . . . ."  Confirmation Order ¶ 79 (emphasis added).  Thus, the Plan contemplates the post-

confirmation monetization of LBHI's indemnification and reimbursement claims against Sellers,

6

including claims that would arise from the allowance of proofs of claim filed by the RMBS Trustees.

### The Triggering of the Indemnification Claims[2]

10.    Historically, LBHI purchased, sold and serviced residential mortgage loans, arranging directly or through its affiliates to purchase or obtain submission of mortgage loans from the Sellers and then to package them for securitization and/or sale.  In such transactions, the Sellers agreed to indemnify the purchaser and hold it harmless from any losses or damages suffered with respect to the mortgage loans.  Securitization of the loans entailed the establishment of a trust or other special purpose vehicle to acquire the loans, hold the loans, and issue securities supported by proceeds of the loans.  In connection with the securitizations, LBHI made certain representations and warranties regarding the quality and nature of certain of the loans or the documents in the applicable loan file(s).  The governing agreements typically provided that the trustee may seek repurchase of a loan in the event certain representations and warranties were breached.

11.    On or around September 22, 2009, certain trustees for hundreds of trusts (the "RMBS Trustees") filed proofs of claims (the "RMBS Claims[3]"), which claims included, among others, the allegation that the Plan Administrator breached various representations and warranties regarding the quality and characteristics of hundreds of thousands of mortgage loans.  *See generally* Motion of Lehman Brothers Holdings Inc. Pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 105(A) for Entry of Order (A) Approving RMBS Settlement Agreement, (B) Making

---

[2] For more background on the Fannie Settlement, Freddie Settlement and original ADR Order, please see the Motion for Alternative Dispute Resolution Procedures Order for Indemnification Claims of Debtors Against Mortgage Loan Sellers, dated May 29, 2014 [Docket No. 44450] (the "ADR Motion").

[3] The definition of Claims in the ADR Motion is expanded to include the RMBS Claims.

7

Certain Required Findings Regarding Decisions of RMBS Trustees and LBHI Debtors to Enter

Into RMBS Settlement Agreement, (C) Scheduling Estimation Proceeding to Determine RMBS

Claims and Approving Related Procedures Regarding Conduct of Hearing, and (D) Granting

Related Relief, dated April 27, 2017, ¶ 14 [Docket No. 55232].

12.    The Plan Administrator entered into a settlement agreement (the "<u>RMBS</u>

<u>Settlement Agreement</u>"), under which it agreed to seek estimation of some of the RMBS Claims

before this Court in an estimation proceeding (the "<u>Estimation Proceeding</u>").

13.    At the conclusion of the Estimation Proceeding, the Court entered the RMBS

Order which allowed a portion of the RMBS Claims, including those for which the Plan

Administrator seeks indemnification and/or reimbursement related to the mortgage loans

purchased from the Sellers.

14.    The Plan Administrator also settled a number of the RMBS Claims in the ordinary

course of business, including those for which the Plan Administrator seeks indemnification

and/or reimbursement related to the mortgage loans purchased from the Sellers.

15.    In other words, the RMBS Indemnification Claims arise from the resolution of the

repurchase demands made on the Plan Administrator by the RMBS Trustees through the

Estimation Proceeding, settlement agreements and resolution of proofs of claim.  As a result, the

Plan Administrator is entitled to indemnification by the Sellers.

## Jurisdiction

16.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Importantly, this Court recently ruled that it has subject matter jurisdiction over the

Indemnification Claims arising out of the Fannie Settlement and the Freddie Settlement.  *See*

Memorandum Decision and Order Denying Omnibus Motion to Dismiss for Lack of Subject

Matter Jurisdiction and Improper Venue, Adv. Proc. No. 16-01019, Docket No. 606 (Bankr.

S.D.N.Y. Aug. 13, 2018).  The Motion and relief requested satisfy the requirements for the

Bankruptcy Court's exercise of post-confirmation jurisdiction.  *First*, the Motion and the relief

have a "close nexus" to the bankruptcy case.  *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re

DPH Holdings Corp.)*, 448 Fed. Appx. 134, 137 (2d Cir. 2011).  *See also In re Metro-Goldwyn-

Mayer*, 459 B.R. 555, 556 (Bankr. S.D.N.Y. 2010) ("The 'close nexus' test is met when a matter

affects the interpretation, implementation, consummation, execution, or administration of the

confirmed plan" (citation and internal quotation marks omitted)).  Section 13.8 of the Plan

specifically provides that LBHI retains Litigation Claims, and the Indemnification Claims clearly

fall within the Plan's definition of Litigation Claims as "liquidated or unliquidated, fixed or

contingent, matured or unmatured" causes of action "based in whole or in part upon any act or

omission or other event occurring prior to the Effective Date."

17.      Significantly, Section 8.14 of the Plan and Paragraph 79 of the Confirmation

Order expressly preserve LBHI's power to prosecute Indemnification Claims, while Section

6.1(b)(iv) of the Plan grants LBHI the power to prosecute Litigation Claims generally.  The Plan

and the Confirmation Order expressly provide that the Plan Administrator is to liquidate all

assets to maximize distributions to creditors.  *See* Plan § 6.1(b)(iii); *see also* § 7.6 (purpose of the

Plan is to "sell and otherwise liquidate assets of the Debtors" to allow LBHI to maximize

distributions pursuant to § 6.1(b)(iii)).  In that regard, the Plan directs the Plan Administrator to

liquidate all Litigation Claims, which includes the Indemnification Claims, for the benefit of

creditors.  *See* Plan § 6.1(b)(iv).  The prosecution of such claims undoubtedly will affect the

amounts available for distribution to creditors and further the Plan's goal of maximizing

distributions, thus satisfying the close nexus requirement.  *See*, *e.g.*, *CCM Pathfinder Pompano*

9

*Bay, LLC v. Compass Fin. Partners LLP*, 396 B.R. 602, 605-606 (S.D.N.Y. 2008) (finding

jurisdiction over third-party dispute where stream of payments was to be made to the liquidated

debtor to be used for distributions to creditors); *Krys v. Sugrue*, 08 Civ. 3065, 2008 WL

4070920, at *6 (S.D.N.Y. Oct. 23, 2008) (finding jurisdiction over actions by litigation trust

formed by plan to liquidate private action claims contributed by creditors).

18.    *Second*, the Plan granted the Bankruptcy Court the jurisdiction to adjudicate the

Indemnification Claims (as well as enter orders in connection with such adjudications, as is the

case here).  "Where the plan contains broad jurisdictional provisions, the 'Bankruptcy Court's

post-confirmation jurisdiction is as broad as the statutory grant – that is, it extends to all

proceedings 'related to' the bankruptcy.'"  *See Eastern Airlines, Inc. v. General Mills, Inc. (In re

Ionosphere Clubs, Inc.)*, No. 89 B 10448, 1999 Bankr. LEXIS 1875, at *21 (Bankr. S.D.N.Y.

May 12, 1999) (quoting *Back v. LTV Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 638

(S.D.N.Y. 1997)).

19.    The Confirmation Order provides that the Bankruptcy Court shall, upon the

"Effective Date," retain "exclusive jurisdiction over all matters arising under or related to the

Chapter 11 Cases, including, without limitation, the matters set forth in Article XIV of the Plan."

*See* Confirmation Order ¶ 77.  Article XIV of the Plan contains a list of matters over which the

Bankruptcy Court retained exclusive jurisdiction, including but not limited to the following:

> (b)  To determine any and all adversary proceedings,
> applications and contested matters relating to the Chapter 11
> Cases;

* * *

> (e)  To issue such orders in aid of execution of the Plan to
> the extent authorized by section 1142 of the Bankruptcy Code;

* * *

(i)  To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce or to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

\* \* \*

(k)  To hear and determine any actions brought to recover all assets of LBHI and property of the estates, wherever located or to determine or declare entitlement to such assets and property . . .

Plan § 14.1.  Section 14.1(b) authorizes generally the initiation of adversary proceedings.

Section 14.1(k) dovetails with the Plan provisions directing liquidation of all assets, including

Litigation Claims, to maximize distributions.  Similarly, Sections 14.1(e) and (i) are intended to

retain jurisdiction for the Bankruptcy Court to enforce and implement the Plan, the Confirmation

Order and all other orders of the Bankruptcy Court.  Given that the Plan and Confirmation Order

expressly preserve Indemnification Claims for the benefit of creditors, both provisions support

the exercise of jurisdiction to implement ADR procedures with respect to such claims.

20.     Finally, the RMBS Order contains the following jurisdictional language:  "This

Court shall retain jurisdiction with respect to all matters arising from or related to the

interpretation or implementation of this Order."  The retention of jurisdiction to implement the

RMBS Order necessarily includes the power to adjudicate the Indemnification Claims vested by

the RMBS Order.  Such power is consistent with the Plan provisions expressly permitting the

Plan Administrator to retain the authority to prosecute reimbursement and indemnification

claims.

## Relief Requested

21.     Pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order M-143 (the "Standing Order"), the Plan Administrator requests ADR procedures with respect to the Indemnification Claims.  All RMBS Indemnification Claims will be governed by the Amended ADR Order.

## The Indemnification Claims

22.     With the inclusion of the RMBS Indemnification Claims, the Plan Administrator estimates it now holds Indemnification Claims against approximately 6,200 Sellers arising out of more than 72,000 mortgage loans.  The ADR Order already governs many of those Sellers, but some were not subjected to it.  Given the sheer volume of the Indemnification Claims, the Plan Administrator believes that its rights to reimbursement and indemnification can be most efficiently enforced through an ADR procedure that could go forward simultaneously with litigation.  Requiring the Plan Administrator to only resort to litigation against each Seller would be expensive and time consuming, unduly delaying liquidation of the Plan Administrator's assets and increasing costs to the Plan Administrator.  Many common issues exist with respect to the Plan Administrator's Indemnification Claims, including the central reimbursement and indemnification rights.  In an effort to capture the value in the Indemnification Claims and streamline their liquidation, the Plan Administrator proposes certain ADR procedures to reduce the costs of enforcing the Plan Administrator's affirmative claims, preserve value and promote judicial efficiency (the "Indemnification ADR Procedures").

23.     The Plan Administrator has a good faith belief that there are approximately 6,200 Sellers, with each Seller potentially subject to multiple Indemnification Claims for which the Plain Administrator believes a right to monetary recovery exists.

12

24.     The existing ADR Order has benefitted the Plan Administrator's creditors and resulted in hundreds of settlements.[4]  Judge Peck previously lauded other ADR procedures as "indisputably a success" and further observed that "the results speak for themselves as being beneficial to the estate and also beneficial to the Court . . . because this means that matters that might otherwise be burdening the Court are being managed in a private fashion."  Tr. of Hr'g, Jan. 11, 2012, at 22:23-25, 23:1-2.  In addition, the Plan Administrator anticipates utilizing the Standing Order, which governs mediation of matters in bankruptcy cases and adversary proceedings.

## Indemnification ADR Disputes

25.     As it did previously, the Plan Administrator will designate a dispute (an "Indemnification ADR Dispute") as to any Indemnification Claim by serving on a Seller (i) a copy of an order approving this Motion and (ii) a notice (an "Indemnification ADR Notice") containing sufficient information regarding the Plan Administrator's affirmative claim and its demand for settlement (with the Indemnification ADR Notice, an "Indemnification ADR Package").  Under the proposed procedure, service on or notice to a Seller of an Indemnification ADR Package will be deemed adequate if such service or notice is provided to the Seller, the Seller's counsel, legal guardian, estate representative, or other representative by (i) hand delivery, (ii) first class mail, or (iii) overnight mail.

## Mandatory Participation

26.     The Amended ADR Order provides that the Plan Administrator and each Seller (a) must participate in good faith with the proposed Indemnification ADR Procedures and (b)

---

[4] In addition, as a result of the ADR process, the Plan Administrator has determined to not pursue litigation versus hundreds of Sellers.  Accordingly, even when a settlement has not been reached, often the ADR process has led to more efficient resolutions and helped save the Plan Administrator's assets.

13

must comply with the Indemnification ADR Procedures, unless otherwise provided in a specific

order applicable to a particular Indemnification ADR Dispute.  The Indemnification ADR

Procedures do not compel the Plan Administrator and the Seller to settle or compromise any

dispute, but each party will be required to (i) serve an answer in response to the proposed

settlement set forth in an Indemnification ADR Package, (ii) engage in settlement discussions,

(iii) participate in any mediation in good faith, (iv) follow the directions of the mediator, and (v)

follow the Indemnification ADR Procedures approved by this Court.

## No Substitute for Claims Procedures and Removal of Actions

27.    The Indemnification ADR Procedures are not intended to and will not be utilized

(i) as a substitute for chapter 11 claims procedures, or (ii) to limit the Plan Administrator's rights

to, among other things, object to claims filed by Sellers on any basis permitted by the

Bankruptcy Code.  Nothing contained herein, however, will limit a Seller's right to assert valid

and enforceable setoff rights with respect to an Indemnification Claim or any other valid defense

to the Plan Administrator's demand thereunder.

28.    If a Seller has commenced any action or proceeding in any other court or forum,

or commences any other action or proceeding in any other court or forum following service upon

it of an Indemnification ADR Package, the Plan Administrator reserves the right to remove to

this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other

court or proceeding to protect the Plan Administrator's creditors, despite the incomplete status of

the steps prescribed under the Indemnification ADR Procedures.

## Notice/Response Stage

29.    Upon receipt of the Indemnification ADR Package, the Seller will have fifteen

(15) calendar days to respond in writing with respect to the Plan Administrator's demand.  The

period in the original ADR Order was twenty (20) days, and has been shortened to streamline the process.  The Seller may (i) agree to settle the Indemnification ADR Dispute under the terms in the Plan Administrator's Indemnification ADR Notice, (ii) propose alternative settlement terms and briefly explain the reasons for such proposal, or (iii) decline to settle the Indemnification ADR Dispute and provide a brief explanation setting forth the reasons for such denial ((i), (ii) and (iii) together, the "Statement of Position").

30.    Upon receipt of a Seller's Statement of Position, the Plan Administrator will have fifteen (15) days to serve an optional reply (the "Reply") to the Seller, which may include (i) a modification of the Plan Administrator's demand in the Indemnification ADR Notice, (ii) a response to a Seller's counteroffer, (iii) additional information or briefing supporting the demand made in the Indemnification ADR Notice, or (iv) a rejection of any counteroffer in which case the Indemnification ADR Dispute will automatically proceed to the Mediation Stage within fifteen (15) calendar days.  If the Plan Administrator does not serve a Reply within the above time frame, the Indemnification ADR Dispute will automatically proceed to the Mediation Stage. In the original ADR Order, the Plan Administrator's Reply was not optional.  This change is based on the Plan Administrator's determination that this will improve the efficiency of the ADR process.  If the Seller fails to respond, the Plan Administrator may seek Sanctions (as defined in Paragraph 39 herein).[5]  The Indemnification ADR Package, Statement of Position, the Reply, and remedies imposed as part of any Sanctions are collectively referred to herein as the "Notice/Response Stage."

---

[5] The Plan Administrator may also be subject to Sanctions should it fail to mediate in accordance with the requirements of the proposed Order.  *See*, *infra*, ¶ 39.

**Settlement Conferences**

31.     After service of an Indemnification ADR Package, the Plan Administrator or a

Seller may request an initial telephonic settlement conference (a "Settlement Conference") (or in

person if the parties agree) to be held within five (5) calendar days after the receipt of such

request (the "Notice of Settlement Conference").  The Settlement Conference enables parties to

attempt to settle prior to mediation.  Upon receipt of the Notice of Settlement Conference, the

recipient will have to respond within two (2) calendar days by either accepting the proposed date

and time in the Notice of Settlement Conference or proposing an alternate date and time that is

no later than five (5) calendar days from the date and time in the Notice of Settlement

Conference.  If the parties cannot agree on a time and date for the Settlement Conference, the

Indemnification ADR Dispute will proceed to the Mediation Stage (as defined below).

32.     Under the proposed procedures, the parties will allocate approximately one (1)

hour for the initial Settlement Conference, in which only the Plan Administrator and its

representatives and the Seller and its representatives will participate.  All discussions between

the parties and the contents of any papers submitted prior to the Mediation Stage (as defined

below) shall remain confidential and privileged in accordance with the confidentiality provisions

of the proposed order and shall not be discoverable or admissible as evidence in any subsequent

litigation of the Indemnification ADR Dispute or elsewhere, except as provided by further order

of this Court.

**Mediation Stage**

33.     If the Plan Administrator and the Seller cannot resolve the Indemnification ADR

Dispute during the Notice/Response Stage, such dispute will proceed to mediation (the

"Mediation Stage").  The Plan Administrator proposes that the Court select a slate of mediators

16

to hear and preside over all mediations to permit multiple mediations to occur simultaneously.

Once a matter reaches the Mediation Stage, the Plan Administrator will select a mediator, and

the Plan Administrator will contact the mediator to schedule the initial mediation date.  Attached

as Schedule A is a list of mediators whom the Plan Administrator proposes as approved

mediators.  The list is comprised of mediators that already serve as panel mediators for either the

United States District Court or the United States Bankruptcy Court for the Southern District of

New York.  Ira L. Herman was included on Schedule A in the original ADR Order but has been

removed because of a potential conflict with his new law firm representing certain defendants in

connection with the Indemnification Claims.

34.     If the initially selected mediator is unwilling or unavailable to serve, then the Plan

Administrator shall select an alternate mediator from the approved list.  In the unlikely event that

none of the mediators on the approved list are willing and/or available, the parties will select an

alternate mediator as mutually agreed in writing by all parties subject to the applicable

Indemnification ADR Dispute.  If the Plan Administrator and the Seller cannot agree upon a

mediator within ten (10) calendar days after the Notice/Response Stage, the Court will appoint

one or more mediators.

35.     The mediator will have the broadest possible discretion as provided under the

Standing Order.

36.     The mediation proceedings will take place in New York, New York.

37.     The Plan Administrator shall submit to the mediator (i) the Indemnification ADR

Package, (ii) the Seller's Statement of Position, (iii) the Reply, if any, and (iv) any other

materials exchanged by the parties reflecting the parties' relative positions ("<u>Mediation</u>

<u>Materials</u>").  No additional papers shall be submitted to the mediator unless requested by the

17

mediator.  All Mediation Materials will be delivered at least seven (7) days prior to the scheduled

mediation proceeding and will not be filed with the Court.  In the original ADR Order, all

Mediation Materials were to be delivered at least ten (10) days prior to the mediation.

38.    All parties to an Indemnification ADR Dispute will appear in person at the

mediation proceeding.  Each party must have a business principal in attendance having

settlement authority.  The ADR Order is also amended to include a provision that if the parties

are unable to agree on a date for the mediation, the mediator will fix a date at his or her

discretion.

### General Mediation Rules

39.    Upon the filing of an application, and after notice and a hearing, the Court may

sanction the parties for failing to comply with the Indemnification ADR Procedures.  If the

mediator reports to the Court that a party subject to the Indemnification ADR Procedures is not

cooperating, the Court may, on its own motion, schedule a hearing to consider sanctions

("Sanctions") against that party for its failure to cooperate in good faith.  Sanctions as they relate

to LBHI may include but are not limited to (i) attorneys' fees; (ii) fees and costs of the mediator;

(iii) termination of the Indemnification ADR Procedures as to one or more Indemnification

Claims; and/or (iv) rejection of some or all claims asserted by LBHI in the applicable

Indemnification ADR Dispute.  Sanctions as they relate to Sellers may include but are not

limited to (i) attorneys' fees; (ii) fees and costs of the mediator; (iii) immediate initiation of the

mediation stage, provided the matter has not yet reached that point; and/or (iv) termination of the

mediation with the right for LBHI to elect to commence an action against a defaulting Seller.

Litigation with respect to the issuance of Sanctions will not delay the commencement of the

Mediation Stage of these procedures upon the completion of the Notice/Response Stage.

40.     All proposed deadlines may be modified by the mutual consent of the Plan

Administrator and the applicable Sellers or by the Court for cause shown.  All parties will be

responsible for their counsel fees and shall share equally in the fees and expenses of the

mediator.  The Amended ADR Order requires Sellers to pay any deposit required by the

Mediator within 10 days of the request and the failure to pay any such deposit may subject the

party to the sanctions described in Paragraph 39.  Any retainer not used will be held by the

mediator through the conclusion of the mediation, as determined by the mediator.

### Confidentiality

41.     The proposed order approving this Motion and the Indemnification ADR

Procedures incorporates the confidentiality provisions of section 5.0 of the Standing Order.  No

parties (or their attorneys or advisers) shall disclose for any purpose to the Court or any third-

party any statements or arguments made or positions taken by the mediator, the Plan

Administrator or a Seller during any part of the ADR process, including Settlement Conferences

and the Mediation Stage.  Similarly, all briefs, records, reports, and other documents received or

made by the mediator in such capacity will remain confidential and will not be provided to the

Court, unless they would be otherwise admissible.  In addition, the mediator will not be

compelled to disclose such records, reports, and other documents in connection with any hearing

held by the Court; provided, however, the mediator may report to the Court the status of the

mediation efforts but will not disclose the content thereof.

42.     Rule 408 of the Federal Rules of Evidence will apply to all aspects of the

Indemnification ADR Procedures including the Settlement Conferences and Mediation Stage.

## The Mediation Procedures Should Be Approved

43.     Section 1.1 of the Standing Order permits the Court to assign a matter to mediation upon the motion of a party in interest, the U.S. Trustee, or on its own motion.  Further, Standing Order section 1.3 permits the Court to assign an adversary proceeding, contested matter, or other dispute to mediation.  Section 105(a) of the Bankruptcy Code grants bankruptcy courts the "equitable power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"  *New Eng. Dairies, Inc v. Dairy Mart Conv. Stores, Inc. (In re Dairy Mart Conv. Stores, Inc.*), 351 F.3d 86, 91 (2d Cir. 2003) (quoting 11 U.S.C. § 105(a)).

44.     Thus, the Standing Order expresses the Court's intent to facilitate mediation in all matters.  Consistent with that intent, the Plan Administrator respectfully requests that the Court exercise its authority to implement the Indemnification ADR Procedures with respect to the Indemnification Claims.

45.     Given the Plan Administrator's success in implementing ADR Procedures with the Indemnification Claims and in other contexts, it is reasonable to believe that this Court could achieve similar level of efficiency and progress with respect to monetizing the Indemnification Claims.

46.     The Plan Administrator believes that the Indemnification ADR Procedures will help develop a productive and consensual resolution process to reduce the costs associated with the litigation and collection of the Plan Administrator's affirmative claims.

47.     The relief requested is the same as the relief that has been granted by this Court (*see* ADR Order) and substantially similar to the relief that this Court has granted in connection with similar motions to implement mediation procedures, both in these cases and in other large

chapter 11 cases. *See, e.g., In re Lehman Bros. Holdings Inc., et al.,* Case No. 08-13555 (Bankr.

S.D.N.Y. Sept. 19, 2009) (Alternative Dispute Resolution Procedures Order for Affirmative

Claims of Debtors Under Derivative Contracts) [Docket No. 5207]; *In re Enron Corp.*, Case No.

01-16034 (ALG) (Bankr. S.D.N.Y. March 4, 2003) [Docket No. 9533] and (Bankr. S.D.N.Y.

March 20, 2003) [Docket No. 9862] (ordering mediation procedures with respect to twenty-four

adversary proceedings regarding certain trading disputes); *In re Ames Dep't Stores, Inc., et al.*,

Case No. 01-42217 (REG) (Bankr. S.D.N.Y. June 25, 2007) [Docket No. 3195] (ordering

mandatory mediation procedures regarding over 900 adversary proceedings that the debtors

commenced against various preference defendants).

48.     Mediation allows an unbiased third party to assist adversaries in resolving issues

upon which they disagree. The Plan Administrator submits that the Indemnification ADR

Procedures will be a worthwhile process that will enable it to reduce its costs and expenses of

collection, maximize the value of the Indemnification Claims and promote judicial efficiency by

consensually resolving many claims. Based upon the foregoing, the Plan Administrator

respectfully requests that the Court approve the Indemnification ADR Procedures.

## Notice

49.     No trustee has been appointed in these chapter 11 cases. The Plan Administrator,

in accordance with the procedures in the second amended order entered on June 17, 2010

governing case management and administrative procedures for these cases [Docket No. 9635],

served notice of this Motion on (i) the U.S. Trustee; (ii) all known viable Sellers; and (iii) all

parties who requested notice in these chapter 11 cases. The Plan Administrator submits that no

other or further notice need be provided.

21

50.     No previous request for the relief sought herein has been made by the Plan Administrator to this or any other court.

WHEREFORE, the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:      New York, New York
            October 1, 2018

                                    Respectfully submitted,

                                    /s/  *William A. Maher*
                                    William A. Maher
                                    James N. Lawlor
                                    Paul R. DeFilippo
                                    Adam M. Bialek
                                    Mara R. Lieber
                                    WOLLMUTH MAHER & DEUTSCH LLP
                                    500 Fifth Avenue
                                    New York, New York 10110
                                    Telephone:  (212) 382-3300
                                    Facsimile:   (212) 382-0050

                                    -and-

                                    Michael A. Rollin
                                    Maritza Dominguez Braswell
                                    FOX ROTHSCHILD LLP
                                    101 Park Avenue, 17th Floor
                                    New York, New York 10178
                                    Telephone: (212) 878-7900
                                    Facsimile: (212) 692-0940

                                    *Counsel for Lehman Brothers Holdings Inc.*

# SCHEDULE A

| Mediator | Contact Information |
|---|---|
| Peter L. Borowitz | c/o Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY<br>Tel: 212-909-6525<br>Fax: 212-521-7525<br>Email: plborowtiz@debevoise.com |
| Timothy T. Brock | Satterlee Stephens LLP<br>230 Park Avenue, 11th Floor<br>New York, NY 10169<br>Tel: 212-818-9200<br>Email: tbrock@ssbb.com |
| Martin G. Bunin | Farrell Fritz, P.C.<br>622 Third Avenue<br>Suite 37200<br>New York, NY 10017<br>Tel: 212-687-1230<br>Email: mbunin@farrellfritz.com |
| Keith N. Costa | Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169-0075<br>Tel: 212-905-3761<br>Email: kcosta@otterbourg.com |
| Melanie L. Cyganowski | Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169-0075<br>Tel: 212-905-3677<br>Email: mcyganowski@otterbourg.com |
| Andrew B. Eckstein | Moritt Hock & Hamroff LLP<br>1407 Broadway, 39th Floor<br>New York, NY 10018<br>Tel: 212-239-2000<br>Fax: 212-239-7277<br>Email: aeckstein@moritthock.com |
| Judith Elkin | 23 Malysana Lane<br>New Rochelle, NY 10805<br>Tel: 917-671-8062<br>Email: elkinj@mac.com |
| Yann Geron | Reitler Kailas & Rosenblatt LLC<br>885 Third Avenue, 20th Floor<br>New York, NY 10022<br>Tel: 212-209-3050<br>Mobile: 914-582-6965<br>Email: ygeron@reitlerlaw.com |

| Eric Haber | Cooley LLP<br>1114 Avenue of Americas<br>New York, NY 10036<br>Tel: 212-479-6144<br>Email: ehaber@cooley.com |
|---|---|
| Marc E. Hirschfield | Royer Cooper Cohen Braunfeld LLC<br>1120 Avenue of the Americas<br>4th Floor<br>New York, NY 10036<br>Tel: 212-994-0451<br>Mobile: 917-273-2405<br>Email: mhirschfield@rccblaw.com |
| Norman N. Kinel | Squire Patton Boggs<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Tel: 212-407-0130<br>Mobile: 732-690-4822<br>Email: norman.kinel@squirepb.com |
| Tracy L. Klestadt | Klestadt Winters Jureller Southard & Stevens, LLP<br>200 West 41st Street<br>17th Floor<br>New York, NY 10036-7203<br>Tel: 212-972-3000 ext 101<br>Fax: 212-972-2245<br>Email: tklestadt@klestadt.com |
| Kenneth M. Lewis | Whiteford Taylor Preston<br>444 Madison Avenue<br>4th Floor<br>New York, NY 10022<br>Tel: 914-761-8400<br>Fax: 914-580-9177<br>Email: klewis@wtplaw.com |
| Joseph T. Moldovan | Morrison Cohen LLP<br>909 Third Avenue<br>New York, NY 10022-4784<br>Tel: 212-735-8603<br>Email: jmoldovan@morrisoncohen.com |
| Robert J. Rosenberg | 125 East 61st Street<br>New York, NY 10065<br>Tel: 212-644-5758<br>Mobile: 917-273-5216<br>Email: robertrosenbe@gmail.com |