**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                        :
In re                                                   :   Chapter 11
                                                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :   Case No. 08-13555 (SCC)
                                                        :
              Debtors.                          :   (Jointly Administered)
-----------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER ON MOTION IN AID OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS

A P P E A R A N C E S:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
By:    Jacqueline Marcus, Esq.
       Garrett A. Fail, Esq.

*Counsel for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
By:    Joshua Dorchak, Esq.
       Melissa Y. Boey, Esq.

       -and-

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
By:    Alex R. Rovira, Esq.

*Counsel for Deutsche Bank AG, London Branch*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
By:   Luke A. Barefoot, Esq.

*Counsel for Barclays Bank PLC*

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois 60654
By:   David R. Seligman, P.C.
      Joseph M. Graham, Esq.

555 California Street
San Francisco, California 94104
By:   Mark McKane, P.C.
      Kevin Chang, Esq.

*Counsel for the Joint Liquidators of the General Partner*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
By:   Kyle J. Kimpler, Esq.
      Dan Youngblut, Esq.

*Counsel for Citigroup Global Markets Inc.*

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
By:   Emil A. Kleinhaus, Esq.

*Counsel for Merrill Lynch, Pierce, Fenner & Smith Inc.
and Merrill Lynch International*

PAUL HASTINGS LLP
200 Park Avenue, 26th Floor
New York, New York 10166
By:   Luc A. Despins, Esq.
      James T. Grogan, Esq.

*Counsel to CarVal Investors UK Limited*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion (the "Motion"),[1] dated November 21, 2017, of Lehman Brothers Holdings Inc. ("LBHI" or the "Plan Administrator"), as Plan Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors (the "Plan"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") for an order in aid of execution of the Plan. In support of the Motion, the Plan Administrator filed the Declaration of Richard Katz (the "Katz Decl.").[2]

Objections to the Motion were filed by (i) Deutsche Bank AG, London Branch ("DB" and, such objection, the "DB Objection")[3] on January 17, 2018, together with the accompanying Declaration of Michael Sutton (the "Sutton Decl.")[4] in support thereof; and (ii) Barclays Bank PLC ("Barclays" and, such objection, the "Barclays Objection")[5] on January 30, 2018. Joinders to the DB Objection were filed by Citigroup Global Markets Inc. ("Citi");[6] Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch International (collectively, "Merrill Lynch");[7] and CarVal Investors UK Limited ("CarVal").[8] DB, Barclays, Citi, Merrill Lynch, and CarVal each objected to the Motion in its capacity as a holder of the securities at issue in the Motion.

On January 31, 2018, Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP, in their capacity as the joint liquidators of the General Partner (as defined below) (the "Liquidators" and, together with DB, Barclays, Citi, Merrill Lynch, and CarVal, the "Objecting Parties") filed (i) a limited objection to the Motion (the "Liquidators'

---

[1] ECF No. 57036.
[2] ECF No. 57037.
[3] ECF No. 57490.
[4] ECF No. 57493.
[5] ECF No. 57595.
[6] ECF No. 57596.
[7] ECF No. 57600.
[8] ECF No. 57601.

1

Objection"),[9] pursuant to which the Liquidators also joined in the arguments made in the DB Objection, and (ii) the Declaration of Mark McKane[10] in support thereof.

On May 24, 2018, the Plan Administrator filed a Reply in Support of the Motion (the "Reply").[11] On June 7, 2018, the Court held a hearing on the Motion (the "Hearing") at which the Court heard oral argument from the Plan Administrator, DB, Barclays, and the Liquidators.[12]

**BACKGROUND**

**A. The Partnerships and ECAPS**

Between 2005 and 2007, LBHI and certain other parties, including certain of its affiliates, established five partnerships: Lehman Brothers UK Capital Funding LP ("LB UK I"), Lehman Brothers UK Capital Funding II LP ("LB UK II"), Lehman Brothers UK Capital Funding III LP ("LB UK III"), Lehman Brothers UK Capital Funding IV LP ("LB UK IV"), and Lehman Brothers UK Capital Funding V LP ("LB UK V" and, each of the foregoing, a "Partnership"). The Partnerships were created to increase regulatory capital for LBHI and Lehman Brothers Holdings plc ("LBH PLC"), an LBHI non-controlled affiliate, through "back-to-back subordinated arrangements."[13] Specifically, the Partnerships issued equity securities known as Enhanced Capital Advantaged Preferred Securities or "ECAPS;" the value of the ECAPS was broadly equal to the value of the Partnership assets less the costs associated with administering the applicable Partnership and any distribution rights of certain other partners.[14] Using the proceeds raised from the issuance of ECAPS, the Partnerships purchased (i) subordinated debt of

---

[9]   ECF No. 57603.
[10]  ECF No. 57605.
[11]  ECF No. 58100.
[12]  At the Hearing, counsel for the Liquidators stated that he was appearing primarily in the event and to the extent that LBHI challenged the standing of DB and the other Objecting Parties to object to the Motion. *See* June 7, 2018 Hr'g Tr. 42:14-19. Because LBHI did not challenge the standing of DB or Barclays to make arguments at the Hearing, the Liquidators provided limited argument. *See* June 7, 2018 Hr'g Tr. 7:6-19.
[13]  Katz Decl. ¶ 7.
[14]  *See* Katz Decl. ¶ 7.

2

LBH PLC (the "LBH PLC Subordinated Notes") in the case of LB UK I, LB UK II, and LB UK III, or (ii) subordinated debt of LBHI ("LBHI Subordinated Notes" and, together with the LBH PLC Subordinated Notes, the "Subordinated Notes") in the case of LB UK IV and LB UK V.[15] In addition to purchasing the Subordinated Notes, LB UK III, LB UK IV, and LB UK V also invested in certain money market funds, the proceeds of which were held by LBHI.[16] Because the value of the ECAPS was approximately equal to the value of the Partnership assets, an investment in ECAPS was, in substance, an indirect investment in the Subordinated Notes of LBHI or LBH PLC, as applicable.[17]

LBHI indirectly controlled each of the Partnerships (i) as the sole member of the Partnerships' general partner, LB GP No. 1 Ltd. (the "General Partner"), and (ii) through its indirect ownership of LB Investment Holdings Ltd., the "Preferential Limited Partner" of each Partnership. The General Partner is a company incorporated in England and Wales and the agreements governing each of the respective Partnerships (the "Partnership Agreements") are governed by the laws of the United Kingdom.[18] LBH PLC guaranteed certain obligations of LB UK I, LB UK II, and LB UK III under their respective Partnership Agreements and, similarly, LBHI guaranteed certain obligations of LB UK IV and LB UK V under their respective Partnership Agreements.[19] None of the Partnerships, the General Partner, or the Preferential Limited Partner is a debtor in these chapter 11 proceedings.

---

[15] *See* Katz Decl. ¶ 7.
[16] *See* Motion ¶ 9, n.3; DB Objection ¶ 15.
[17] *See* Motion ¶ 11.
[18] *See* Motion ¶ 8. LBHI has stated that true and correct copies of the Partnership Agreements and other transaction documents are attached as exhibits to the Katz Decl. *See* Motion ¶ 8, n.2.
[19] *See* Motion ¶ 10.

3

### B. Substitution of Preferred Stock for ECAPS

The terms of the ECAPS (the "ECAPS Terms"),[20] which are substantially identical under each Partnership Agreement, provided a mechanism pursuant to which the ECAPS could be substituted for preferred stock of LBHI. Specifically, the ECAPS Terms state that "[i]f a Trigger Event occurs . . . the General Partner shall take all reasonable steps to cause the substitution of the [ECAPS] [for] Substituted Preferred Stock (the "Preferred Securities Substitution") on the Substitution Date . . . ."[21]

"Substituted Preferred Stock" is defined under the ECAPS Terms as "fully-paid non-cumulative preferred stock issued directly by LBHI bearing a right to dividends calculated in the same manner as the [ECAPS], having no voting rights (except as required by law) and being subject to optional redemption in the same manner as the [ECAPS]."[22] A "Trigger Event," as defined under the ECAPS Terms, occurs "if LBHI is placed into bankruptcy, reorganisation, conservatorship or receivership" or fails to meet certain capital-adequacy requirements.[23]

Pursuant to its corporate charter in effect prior to the Petition Date (as defined below) (the "Pre-Effective Date Charter"), LBHI was authorized to issue 24,999,000 shares of preferred stock, of which over 17,000,000 shares remained available to be issued as of the Effective Date (as defined below).[24]

### C. The Chapter 11 Cases and the Plan

On September 15, 2008 (the "Petition Date") and periodically thereafter, LBHI and certain of its subsidiaries (the "Debtors") commenced with this Court voluntary cases under

---

[20]   An example of the ECAPS Terms can be found on Schedule 2 of the LB UK I Partnership Agreement, which is attached as Ex. A to the Katz. Decl.
[21]   *See* ECAPS Terms § 5.1.
[22]   *See* ECAPS Terms § 1.
[23]   *See* ECAPS Terms § 1.
[24]   *See* Motion ¶ 18 (citing section 4.1 of the Pre-Effective Date Charter).

4

chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). On December 6, 2011, the Court entered an order confirming the Plan (the "Confirmation Order")[25] and the Plan became effective on March 6, 2012 (the "Effective Date").

Pursuant to the ECAPS Terms, a Trigger Event occurred on the Petition Date, the date on which LBHI was placed into bankruptcy. Notwithstanding the occurrence of a Trigger Event, the General Partner did not take the requisite steps to effect a Preferred Securities Substitution prior to the Effective Date.[26]

### D. Reinstatement of the General Partner

On June 22, 2010, the General Partner was dissolved and stricken from the Register of Companies in the United Kingdom on the basis that the Registrar of Companies had reasonable cause to believe that the General Partner was no longer conducting business.[27] As a result, each of the Partnerships was also dissolved.[28]

DB, in its capacity as an ECAPS holder, subsequently determined that the Partnerships might have assets that it believed would need to be protected and ultimately distributed to ECAPS holders; as such, it sought to restore the General Partner to the Register of Companies.[29] On June 20, 2016, DB filed an application to restore the General Partner, and, on February 3, 2017, the General Partner was restored to the Registrar of Companies.[30] On February 28, 2017, pursuant to a special resolution of LBHI acting as the General Partner's sole shareholder, the

---

[25] ECF No. 23023. A copy of the Plan is attached as Exhibit A to the Confirmation Order.
[26] *See* Motion ¶ 19.
[27] *See* DB Objection ¶ 18.
[28] *See* Motion ¶ 12.
[29] *See* Sutton Decl. ¶ 25; Liquidators' Objection ¶ 15.
[30] *See* Liquidators' Objection ¶ 15.

5

General Partner was placed into creditors' voluntary liquidation and the Liquidators were appointed as joint liquidators of the General Partner.[31]

In October 2017, the Liquidators received money market fund proceeds from the Plan Administrator in the amounts of approximately €12.8 million, €10.8 million, and $26.7 million on behalf of LB UK III, LB UK IV, and LB UK V, respectively (the "Investment Proceeds"); however, in distributing the Investment Proceeds to the Liquidators, LBHI reserved its rights to obtain the Liquidators' agreement not to distribute the Investment Proceeds until all competing claims to such proceeds have been resolved.[32]

### E. The Proposed Substitution

By the Motion, the Plan Administrator requests authority to issue Substituted Preferred Stock under LBHI's Pre-Effective Date Charter as if such stock had been issued on the Petition Date. If the Plan Administrator is authorized to issue Substituted Preferred Stock, LBHI states that it will then seek authority to instruct the General Partner to deliver such Substituted Preferred Stock to ECAPS holders to effectuate a Preferred Securities Substitution, after which (i) ECAPS holders would be entitled to a portion of the distributions for holders of LBHI Class 12 Equity Interests under the Plan; and (ii) the net value of the Partnerships, including the Investment Proceeds and the Subordinated Notes, would inure to the creditors of LBHI through LBHI's ownership of the General Partner and indirect ownership of the Preferential Limited Partner.[33]

Notwithstanding the complex backdrop against which the Motion was brought, the question before this Court is a simple one: whether or not the Plan Administrator may cause

---

[31] *See* Liquidators' Objection ¶ 15. The appointment of the Liquidators was later ratified by a meeting of the General Partner's creditors on April 12, 2017. *See* Liquidators' Objection ¶ 15.
[32] *See* DB Objection ¶ 36.
[33] *See* Motion ¶ 20.

6

LBHI to issue Substituted Preferred Stock under its Pre-Effective Date Charter as if such stock had been issued on the Petition Date. For the reasons that follow, the Court concludes that neither the Bankruptcy Code nor the Plan authorizes the Plan Administrator to issue Substituted Preferred Stock under LBHI's Pre-Effective Date Charter.[34]

**DISCUSSION**

### A. Applicable Law

The Plan Administrator moves this Court pursuant to the Court's authority under sections 105(a) and 1142(b) of the Bankruptcy Code to issue orders necessary to implement the provisions of the Bankruptcy Code and the Plan, respectively.[35]

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Although section 105(a) grants a court broad equitable powers, courts have long recognized that section 105(a) does not confer on the court the power to create substantive rights not otherwise available under applicable law, nor does it "constitute a roving commission to do equity." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003) (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). Instead, a court's equitable powers under section 105(a) must be exercised within the confines of the Bankruptcy Code. *Id.*

Section 1142(b) of the Bankruptcy Code provides that

> [t]he court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to

---

[34] Accordingly, the Court need not address the question of the Plan Administrator's ability to compel a Preferred Securities Substitution under the ECAPS Terms, which DB maintains would be a matter for the High Court in London to decide. *See* DB Objection ¶ 2.

[35] *See* Motion ¶ 23.

7

> effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan.

11 U.S.C. § 1142(b). "Section 1142(b) 'empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan.'" *In re WorldCom, Inc.*, Case No. 02-13533, 2009 WL 2959457, at *7 (Bankr. S.D.N.Y. May 19, 2009) (citing *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 306 (5th Cir. 2002)). However, courts have held that section 1142(b) is not an independent source of power; section 1142(b) does not confer any substantive rights on a party apart from what is provided for in the plan. *See Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007) (citing *In re U.S. Brass Corp.*, 301 F.3d at 306).

### B. Relevant Provisions of the Plan

#### 1. Authority of the Plan Administrator

The Plan confers upon LBHI, as the Plan Administrator for each of the Debtors,[36] broad authority to carry out and implement the provisions of the Plan. Specifically, section 6.1(b) of the Plan provides that

> the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to . . .
>
> > (iii)    exercise its reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the assets of the Debtors and/or Debtor-Controlled Entities under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims; . . . and
> >
> > (xiv)    perform other duties and functions that are consistent with the implementation of the Plan.

Plan § 6.1(b)(iii) and (xiv).

---

[36] *See* Plan § 6.1(a) ("LBHI shall serve as Plan Administrator for each of the Debtors.").

### 2. Treatment of LBHI Common and Preferred Stock

The Plan provides that, on the Effective Date, all outstanding shares of LBHI common and preferred stock were cancelled and exchanged for one new share of LBHI common stock which was issued to the Plan Trust (as defined in the Plan); the Plan Trust holds such share of LBHI stock for the benefit of all holders of former LBHI stock. *See* Plan § 4.17(b) ("[A]ll LBHI Stock shall be cancelled [and one new share of LBHI common stock] shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements . . . ."); Confirmation Order ¶ 81 (same). Pursuant to section 7.4(a) of the Plan, "[a]ny distribution from assets of LBHI that is made to the Plan Trust as holder of such share shall be for the benefit of the holders of Equity Interests in accordance with Section 4.17(b)." Plan § 7.4(a).

### 3. The Pre-Effective Date Charter and the Amended Charter

Pursuant to section 7.7 of the Plan, "[a]s of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan." Plan § 7.7. In connection with the Effective Date of the Plan, (i) the Pre-Effective Date Charter was amended and restated by that certain Amended and Restated Certificate of Incorporation dated March 2, 2012 (the "Amended Charter") and (ii) LBHI adopted the Amended and Restated By-Laws (the "Amended By-Laws").[37] The Amended Charter amended and restated the Pre-Effective Date Charter in its entirety. *See* Amended Charter ¶ 3 (The "Amended and Restated Certificate of Incorporation amends and restates in its entirety the Certificate of Incorporation of [LBHI], as amended"); Amended Charter ¶ 7 ("The

---

[37] *See* Ex. L to the Sutton Decl. (Form 8-K filed by LBHI with Securities and Exchange Commission on March 6, 2012 announcing filing of Amended Charter and adoption of Amended By-Laws); Ex. M to the Sutton Decl. (Amended Charter); Ex. N to the Sutton Decl. (Amended By-Laws).

text of the Certificate of Incorporation is hereby amended and restated to read, in its entirety, as follows:").

Pursuant to the terms of the Amended Charter and the Amended By-Laws, LBHI is prohibited from issuing any non-voting capital stock except the one share of common stock to be held by the Plan Trust. Specifically, the fourth provision of the Amended Charter provides that "[LBHI] shall not be authorized to issue any non-voting capital stock of any class, series or other designation to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code . . . ."[38] *See* Amended Charter at 2. Additionally, the Amended By-Laws provide that "[u]nless otherwise required by law, no capital stock of the Corporation shall be issuable or transferable to any person other than the Plan Trust (as defined in the Plan)." *See* Amended By-Laws, Article VI, §1.

### C. The Parties' Positions

The Plan Administrator asserts that it is authorized to issue Substituted Preferred Stock under the Pre-Effective Date Charter "in furtherance of LBHI carrying out the most important operative provision of the Plan: Section 6.1(b)."[39] Specifically, the Plan Administrator points to its authority under subsections (iii) and (xiv) of section 6.1(b), "to carry out and implement all provisions of the Plan, including, without limitation, to . . . exercise its reasonable business

---

[38] Section 1123(a)(6) of the Bankruptcy Code provides:
(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall
(6) provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.
11 U.S.C. § 1123(a)(6).
[39] Reply ¶ 23.

10

judgment . . . as necessary to maximize Distributions to holders of Allowed Claims" and to "perform other duties and functions that are consistent with the implementation of the Plan."[40]

The Plan Administrator does not cite to any precedential decision in which a debtor has been granted *nunc pro tunc* relief to issue stock after the effective date of its confirmed plan as though such stock had been issued on the petition date. Instead, the Plan Administrator emphasizes that these Chapter 11 Cases are "unique" and complicated because the administration of the LBHI estate, which has continued long after the Effective Date of the Plan, depends on the Plan Administrator's collection on claims related to a myriad of intricate cross-border transactions with its non-controlled affiliates; as such, the Plan Administrator urges this Court to find that the relief sought by the Motion is reasonable given such unusual circumstances.[41] The Plan Administrator also argues that the Motion should be granted because a Preferred Securities Substitution, which can only be effectuated if LBHI first issues Substituted Preferred Stock, is in the best interest of LBHI and its creditors and will provide an opportunity to maximize distributions to holders of Allowed Claims without adversely affecting any creditor or equity holder of the Debtors' estates.[42]

The Objecting Parties vehemently disagree with the Plan Administrator, arguing most pertinently that the relief sought by the Plan Administrator directly contradicts the intent of the Plan and the Confirmation Order which, among other things, (i) cancelled the type of securities that the Plan Administrator now seeks to issue pursuant to the Motion; (ii) fixed the sole constituent of LBHI Class 12 Equity Interests as the Plan Trust (and such class did not include the ECAPS holders); (iii) nullified the Pre-Effective Date Charter (pursuant to which LBHI now

---

[40]  *See* Motion ¶ 4.
[41]  *See* Motion ¶ 21; *see also* June 7, 2018 Hr'g Tr. 6:9; 44:21-45:4; 46:13-22.
[42]  *See* Motion ¶ 25; Reply ¶ 39.

11

seeks authority to issue new Substituted Preferred Stock); and (iv) effectuated an amended charter and amended by-laws which expressly prohibit LBHI from issuing new non-voting capital stock.[43]

The Objecting Parties also argue that issuance of the Substituted Preferred Stock – which, pursuant to the ECAPS Terms, must be non-voting shares – would violate section 1123(a)(6) of the Bankruptcy Code, which mandates that a plan shall "provide for the inclusion in the charter of the debtor . . . a provision prohibiting the issuance of nonvoting equity securities . . . ."[44]  11 U.S.C. § 1123(a)(6).  Accordingly, the Objecting Parties assert that, because issuing Substituted Preferred Stock is prohibited under the Plan and by the Bankruptcy Code, the Plan Administrator's request to "execute" the Plan is really an attempt to modify the Plan.[45]  The Objecting Parties argue that the Plan cannot be modified because it has been substantially consummated and, pursuant to section 1127(b) of the Bankruptcy Code, a plan may not be modified after it has been substantially consummated.[46]

### D. Neither the Bankruptcy Code Nor the Plan Permits the Plan Administrator to Issue Stock Under the Pre-Effective Date Charter

Section 1142(b) of the Bankruptcy Code provides that this Court may direct the Plan Administrator "to perform any . . . act . . . that is necessary for the consummation of the plan."

---

[43]   *See* DB Objection, ¶ 3.
[44]   *See* DB Objection ¶ 47; *see generally* June 7, 2018 Hr'g Tr. 15:1-17:10.
[45]   *See* DB Objection ¶ 51.
[46]   *See* DB Objection ¶ 52 (citing *In re Rickel & Assocs., Inc.,* 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (collecting cases); *In re Boylan Int'l, Ltd,* 452 B.R. 43, 48 (Bankr. S.D.N.Y. 2011) (citing 7 COLLIER ON BANKRUPTCY ¶ 1127.03[1][a])).
   Section 1127(b) of the Bankruptcy Code provides that
   > The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan *and before substantial consummation of such plan*, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan *only if circumstances warrant such modification* and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.
   11 U.S.C. § 1127(b) (emphasis added).

12

11 U.S.C. § 1142(b). Section 1142(b) of the Bankruptcy Code does not operate on a stand-alone basis; it does not confer any substantive rights beyond what is provided for in a plan. *See In re WorldCom, Inc.*, 2009 WL 2959457, at *7 (citation omitted); *Vill. of Rosemont v. Jaffe*, 482 F.3d at 935 (citation omitted). Here, the Plan Administrator concedes that the Plan does not expressly authorize LBHI to issue Substituted Preferred Stock under the Pre-Effective Date Charter; notwithstanding, it emphasizes that the Plan does not expressly prohibit such action either.[47] Since the Plan does not explicitly bar LBHI from retroactively issuing preferred stock under its Pre-Effective Date Charter as though such shares had been issued on the Petition Date, the Plan Administrator asserts that it has the authority to issue such stock pursuant to its broad mandate under section 6.1(b) of the Plan. The Court disagrees with the Plan Administrator's interpretation of section 6.1(b) of the Plan.

Section 6.1(b) sets out the authority of the Plan Administrator to act on behalf of the Debtors and "*to carry out and implement all provisions of the Plan*, including, without limitation, to . . . exercise its reasonable business judgment to direct and control the wind down . . . of the Debtors . . . as necessary to maximize Distributions to holders of Allowed Claim [and] perform other duties and functions *that are consistent with the implementation of the Plan*." Plan § 6.1(b)(iii) and (xiv) (emphasis added). The plain language of section 6.1(b) reflects that the Plan Administrator's authority is tethered to and must be consistent with other provisions of the Plan. Section 6.1(b)(iii) does not, as the Plan Administrator suggests, confer authority on the Plan Administrator to fulfill its duty to maximize distributions to holders of allowed claims under the Plan by any means possible; instead, the Plan Administrator is required to operate within the confines of the Plan. That the Plan does not expressly prohibit the Plan Administrator from

---

[47]  *See* Reply ¶ 33.

13

issuing stock pursuant to LBHI's Pre-Effective Date Charter is unsurprising and of no consequence; it would indeed be impossible to include in a plan an exhaustive list of all "prohibited" actions.

While issuing preferred stock under the Pre-Effective Date Charter is indeed not explicitly prohibited by the Plan, the Court finds that such an action would contravene core provisions of the Plan both as written and as implemented. First, the Pre-Effective Date Charter was amended and restated in its entirety by the Amended Charter. Even if the Pre-Effective Date Charter was only amended to the extent necessary to carry out the provisions of the Plan, as the Plan Administrator contends,[48] it nonetheless specifically prohibits LBHI from issuing new, non-voting stock to any party other than to the Plan Trust. The Amended By-Laws also prohibit LBHI from issuing new, non-voting stock. Although the Plan Administrator contends that it does not seek to issue the Substituted Preferred Stock pursuant to the Amended Charter, and, therefore, the prohibitions against the issuance of new securities under the Plan, the Amended Charter, and the Bankruptcy Code are not implicated,[49] the Plan Administrator ignores the incontrovertible fact that the Plan incorporates the terms of the Amended Charter and the Amended By-Laws and nullifies the Pre-Effective Date Charter. The Pre-Effective Date Charter cannot selectively be brought back to life. Accordingly, the Court finds that the Plan Administrator does not have the power to issue Substituted Preferred Stock pursuant to section 6.1(b) the Plan and, therefore, it declines to grant the Motion pursuant to section 1142(b) of the Bankruptcy Code.

The Plan Administrator also asserts that Court has authority to grant the Motion pursuant to section 105(a) of the Bankruptcy Code. The Court disagrees. Section 105(a) grants a court

---

[48] *See* Reply ¶ 23.
[49] *See* Reply ¶¶ 21-25.

14

broad power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). However, section 105(a) does not operate on a stand-alone basis; it does not authorize a court to create substantive rights that are otherwise unavailable under applicable law. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 92 (citing *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). The Plan Administrator moves pursuant to section 105(a) of the Code, but it has cited to no other applicable law that provides authority for LBHI to issue Substituted Preferred Stock. Instead, the Plan Administrator merely asserts that issuance of the Substituted Preferred Stock "may increase the value of the Chapter 11 Estates, without adversely affecting any creditor of the Chapter 11 Estates (in its capacity as such), and should be approved."[50] Notwithstanding the Plan Administrator's laudable goal of increasing value, a general bankruptcy concept or objective is insufficient to provide a basis on which this Court can grant the Motion pursuant to section 105(a); rather, "an exercise of section 105 power [must] be tied to another Bankruptcy Code section." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 92 (citation omitted) ("The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing."). The Court has not been provided with any provision of the Code which supports the relief requested by LBHI; accordingly, the Court declines to grant the Motion pursuant to section 105(a).

---

[50] Motion ¶ 25.

By their objections, the Objecting Parties have also raised the issues of (i) whether the Partnership Agreements were executory contracts that were rejected; (ii) whether any issuance of Substituted Preferred Stock would comport with U.S. securities laws and Delaware corporate law; and (iii) whether the Motion seeks a modification of the Plan and the Confirmation Order. Because the Court has determined that the Plan Administrator is not authorized to issue Substituted Preferred Stock, the Court declines to address these issues.

For all of the foregoing reasons, the Motion is denied.

IT IS SO ORDERED.

Dated: October 11, 2018
      New York, New York

                                            /S/ Shelley C. Chapman
                                            HONORABLE SHELLEY C. CHAPMAN
                                            UNITED STATES BANKRUPTCY JUDGE