Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - -x

4   In re:                              : Chapter 11 Case No.

5   LEHMAN BROTHERS HOLDINGS INC., et al., : 08-13555 (SCC)

6            Debtors.                    : (Jointly

7   - - - - - - - - - - - - - - - - - - -x Administered)

8   In re:                              :

9   LEHMAN BROTHERS INC.,               : Case No.

10           Debtor.                    : 08-01420 (SCC)

11  - - - - - - - - - - - - - - - - - - -x (SIPA)

12

13                  United States Bankruptcy Court

14                  One Bowling Green

15                  New York, NY  10004

16

17                  August 14, 2018

18                  10:04 AM

19

20

21  B E F O R E :

22  HON SHELLEY C. CHAPMAN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  KAREN

Page 2

1    HEARING re 08-01420-scc Doc # 14646 Twenty-Sixth Application

2    of Hughes Hubbard & Reed LLP for Allowance of Interim

3    Compensation for Services Rendered and Reimbursement of

4    Actual and Necessary Expenses

5

6    HEARING re 08-01420-scc Doc # 14645 Trustees Motion for an

7    Order Authorizing the Abandonment of Certain Discovery

8    Databases

9

10   HEARING re 08-13555-scc Doc # 58381 Motion of Plan

11   Administrator for an Order in Aid of Execution of the

12   Modified Third Amended Joint Chapter 11 Plan of Lehman

13   Brothers Holdings Inc. and Its Affiliated Debtors

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   WEIL GOTSHAL & MANGES LLP

 4        Attorneys for

 5        767 Fifth Avenue

 6        New York, NY 10153

 7

 8   BY:  GARRETT FAIL

 9        RICHARD L. LEVINE

10        JASON HUFENDICK

11

12   SIDLEY AUSTIN LLP

13        Attorneys for Attestor Capital

14        787 Seventh Avenue

15        New York, NY 10019

16

17   BY:  ALEX R. ROVIRA

18

19   SECURITIES INVESTOR PROTECTION CORPORATION

20        1667 K Street, N.W. Suite 1000

21        Washington, D.C. 20006

22

23   BY:  KENNETH J. CAPUTO

24

25
```

```
 1    HUGHES HUBBARD & REED LLP
 2         Attorneys for
 3         One Battery Park Plaza
 4         New York, NY 10004
 5
 6    BY:  ELIZABETH A. BEITLER
 7         JEFFREY MARGOLIN
 8         ERIN DIERS
 9
10    MORGAN, LEWIS BOCKIUS LLP
11         Attorneys for Deutsche Bank
12         101 Park Avenue
13         New York, NY 10178
14
15    BY:  JOSHUA DORCHAK
16
17    ALSO PRESENT TELEPHONICALLY:
18
19    PATRICK MOHAN
20    CELINE BUEHL
21    PHILLIP TAYLOR
22    GARRETT FAIL
23    GABRIEL GLAZER
24
25
```

Page 5

1                P R O C E E D I N G S

2            THE COURT:  Please have a seat.  Good Morning,

3    Karen.  How's everyone?  Should we start with LBI?

4            MS. DIERS:  Good morning, Your Honor.

5            THE COURT:  Good morning.

6            MS. DIERS:  Erin Diers with Hughes Hubbard & Reed

7    for the SIPA Trustee.  With me today are Ken Caputo from

8    SIPC, and my colleagues, Jeff Margolin and Elizabeth Beitler

9    with Hughes Hubbard.

10           We have a very short agenda today, just two

11   uncontested matters.  Before I address today's motions, I

12   wanted to first just give you an update on where we are from

13   the last time we were before you.

14           THE COURT:  Okay.

15           MS. DIERS:  The last time we were before you, you

16   approved the accelerated final distribution action.

17           THE COURT:  Right.

18           MS. DIERS:  And since then, the Trustee's

19   professionals have been reaching out to claimants and

20   responding to questions.  And as a result, 521 of the 1,800

21   eligible claimants have elected, and our deadline is this

22   Thursday, and they represent over $215 million of the

23   aggregate unsecured claim value.

24           The Trustee intends to commence the

25   (indiscernible) distribution, which will be approximately

1       $170 million in mid-September.

2               THE COURT:  Great.

3               MS. DIERS:  We also continue to pursue monetizing

4       residual assets.  That includes filing claims in class

5       action settlements for financial product manipulation, the

6       LIBOR settlement and the FX settlement.

7               We've submitted four claims to date and are also

8       evaluating additional claims.  And there is no update,

9       unfortunately, on the claim litigation that's pending before

10      the district court.  There're two separate matters related

11      to these sub-claims.

12              So if it's okay, we will now address the first

13      matter --

14              THE COURT:  Sure.

15              MS. DIERS:  -- which is Hughes Hubbard's 26th

16      interim fee application --

17              THE COURT:  Yes.

18              MS. DIERS:  -- for the fourth-month period of

19      January through April 2018.  No objections have been filed.

20      SIPC filed its recommendation in support of the application

21      and Mr. Caputo is here in court today.

22              During the application period.  Hughes Hubbard

23      expended approximately 3,000 hours, of which approximately

24      153 were incurred by the Trustee.  Court total fee request

25      of approximately $2.2 million.  In addition, the firm

Page 7

1   requests expenses of approximately $9,500.

2           As you know, the firm provides a 10 percent public

3   interest discount, which is reflected in the application.

4   In addition to that discount, Hughes Hubbard voluntarily

5   adjusted the fees by approximately $62,000 and made

6   additional reductions after SIPC review and also reduced

7   expenses by over $10,000.

8           A significant portion of Hughes Hubbard's work

9   during the application period related to the accelerated

10  final distribution and advancing the (indiscernible) interim

11  distribution.

12          So again, Your Honor, SIPC supports the allowance

13  of fees and its recommendation is entitled to reliance under

14  the SIPA statute.  So unless the Court has any questions,

15  Hughes Hubbard respectfully requests entry of an order

16  approving the fee application.

17          THE COURT:  Thank you very much.  Does anyone else

18  wish to be heard?

19          All right.  The application is approved.  Thank

20  you.  Thank you --

21          MS. DIERS:  Thank you.

22          THE COURT:  -- for continuing work to bring this

23  part of the proceeding to a conclusion.  The agendas are

24  getting thinner and thinner, which is a -- which is a good

25  thing.

Page 8

```
 1              And the only other thing on the agenda this

 2     morning is the Trustee's motion regarding the abandonment of

 3     certain databases, continuing that effort on the part of the

 4     Trustee.

 5              MS. DIERS:  Yes.  My colleague, Ms. Beitler, will

 6     address that motion.

 7              THE COURT:  Very good.  Okay, thank you.

 8              MS. BEITLER:  Good morning, Your Honor.

 9              THE COURT:  Good morning.

10              MS. BEITLER:  Elizabeth Beitler, Hughes Hubbard

11     for the Trustee, Mr. Gibbon.

12              As Ms. Diers said, I'll be addressing the

13     Trustee's motion for an order authorizing the abandonment of

14     certain discovery databases.

15              This motion is the sixth such motion filed -- to

16     be filed with the court.  Your Honor has previously approved

17     the five prior motions seeking similar relief, and those

18     orders have all been effectuated.

19              The current motion seeks this court's authority to

20     abandon and destroy discovery databases maintained in

21     connection with the LBIE and ACATS litigations.

22              Your Honor's order disallowing and expunging the

23     ACATS claim has now became final, and a portion of the LBIE

24     discovery database retained by the Trustee at the request of

25     Barclays is no longer needed given that the Barclay -- that
```

Page 9

1    LBIE have now settled all matters.

2         The abandonment of these databases which comprise

3    of over 754,000 documents and total over 1.47 terabytes of

4    data will result in savings to the LBIE estate of

5    approximately $180,000 per year.

6         As with the prior motions, the Trustee filed this

7    motions -- this motion in furtherance of transparency to

8    allow potentially interested parties an opportunity to

9    contact the Trustee.

10        The Trustee has served notice of this motion on

11   all parties on all parties who have previously requested

12   documentation from the Trustee since the commencement of the

13   liquidation as well as numerous governmental regulators.

14   Trustee's counsel received a number of informal inquiries

15   regarding the motion that have all been resolved.  No

16   responses to the motion were filed.

17        Trustee's professionals have confirmed that the

18   data at issue is not needed in order to effectuate the

19   Trustee's remaining tasks in winding down the LBIE estate.

20        In addition, SIPC, represented in the courtroom

21   today by Mr. Caputo, supports this motion.

22        Unless the Court has any further questions, the

23   Trustee respectfully requests entry of this order as yet

24   another step towards winding down the LBIE estate.

25        THE COURT:  Very good.  Thank you.  does anyone

Page 10

1    else wish to be heard with respect to the Trustee's motion

2    to abandon these databases?

3            Okay.  Very good.  I grant the motion.  We'll

4    enter the order later today.  Thank you very much.

5            MS. BEITLER:  Thank you.

6            THE COURT:  So the next time we'll see you will be

7    on September 17th.

8            MR. CAPUTO:  Looking forward to it, Your Honor.

9            THE COURT:  Will Mr. Gibbons be with us?

10           MR. CAPUTO:  He will.

11           THE COURT:  Excellent.  It's a very much

12   anticipated anniversary for all concerned.

13           MR. CAPUTO:  Indeed.

14           THE COURT:  Appreciate the effort that I know that

15   the LBIE estate is putting into its presentation.  I'll look

16   forward to hearing it at that time.

17           But in the meantime, if you wish to be excused,

18   that's fine.  And enjoy the rest of your summer.

19           MR. CAPUTO:  Thank you, Your Honor.

20           THE COURT:  Thank you very much.

21           MR. MARGOLIN:  We'll email orders to change --

22           THE COURT:  Yes, please.  Thank you.

23           MR. MARGOLIN:  Okay.

24           THE COURT:  Okay.  We'll move on to the LBHI

25   agenda.

Page 11

1          MR. FAIL:  Good morning, Your Honor.

2          THE COURT:  Good morning.

3          MR. FAIL:  Garrett Fail, Weil, Gotshal & Manges on

4    behalf of the Plan Administrator of the Lehman Brothers

5    Holdings Inc. estates.

6          The next item on the agenda is the plan

7    administrator's motion for an order in aid of execution of

8    the plan.  It's at Docket Number 58381.  We're confident

9    that the Court has reviewed the pleadings.  We know that the

10   Court is familiar with Section 8.13 of the plan as the Court

11   has ruled a number of times in a number of different

12   contexts based on the plain meaning of this section of the

13   plan.

14         The parties agree that prior to LBIE's latest

15   distribution, distributions or other consideration of

16   approximately 13 cents had to be provided on either the

17   guarantee or the primary claims at issue for the guarantee

18   claims to be deemed satisfied under the plan.  There are no

19   relevant facts in dispute.

20         The question before the Court is one of plan

21   interpretation.  As set forth in the motion, LBIE's latest

22   distribution of more than 13 cents clearly falls within the

23   plain meaning of "other consideration provided on the

24   corresponding primary claim" in Section 8.13(a) of the plan.

25   Neither the word "consideration" nor the word "on" is

1    limiting.

2            There's nothing in the plan that requires that

3    consideration provided on the corresponding primary claim be

4    limited to consideration in satisfaction of the principal

5    amount of the primary claim or consideration provided to

6    reduce the principal amount of the primary claim.

7            The plan administrator's reply brief addressed

8    each of the attempts by Deutsche Bank and Attestor to twist

9    plain meaning and to create inconsistencies where none

10   exist.

11           Rather than repeat our papers or complicate a

12   simple reading, I'm happy to answer any questions that the

13   Court has at this time and otherwise reserve time to respond

14   to any arguments made this morning.

15           THE COURT:  All right.  That's fine.  Thank you

16   very much, Mr. Fail.

17           MR. FAIL:  Thank you, Your Honor.

18           MR. ROVIRA:  Good morning, Your Honor.

19           THE COURT:  Good morning.

20           MR. ROVIRA:  Alex Rovira from Sidley Austin on

21   behalf of Attestor Capital and certain of its managed funds.

22           Your Honor, the dispute before the Court is on

23   interpretation of Section 8.13(a) of the Debtor's plan, and

24   specifically whether payments received on account of

25   statutory interest under the English insolvency rules are

1    within the party's intended meaning of 8.13(a) that is

2    "consideration provided on corresponding primary claim."

3              Your Honor, we did put together a demonstrative

4    that would -- I think would help aid the Court to set the

5    issue and to help us propose our position to you.  We have

6    copies to the -- for the plan administrator's counsel.

7              THE COURT:  Okay.

8              MR. ROVIRA:  May I approach, Your Honor?

9              THE COURT:  Sure.  Thank you.

10             Here's the thing, okay?  I'm interpreting the

11   words in the plan.  How could anything like this possibly

12   matter?

13             MR. ROVIRA:  Your Honor, it matters because you

14   can't look at the plan in isolation.  We're talking about

15   specific consideration, and that is statutory interest

16   payments.  That was something that was provided --

17             THE COURT:  But this demonstrative purports to

18   demonstrate to me why you should get more money by virtue of

19   the LBHI guarantee.  Whether or not that's the case has

20   nothing to do with the way these numbers happen to run.  I

21   just --

22             MR. ROVIRA:  Understood, Your Honor.  We can move

23   on from the demonstrative.  We don't need to address it.

24             THE COURT:  No, that -- I mean, the demonstrative

25   -- this is reflected in your -- in your papers.

Page 14

1          MR. ROVIRA:  Correct, Your Honor.

2          THE COURT:  This is just a -- with color and

3    pictures on it.  I mean, you've taken me through the math in

4    the papers, but -- well --

5          MR. ROVIRA:  Let me just go to our argument then.

6    And before we -- before turning to 8.13(a), I want to

7    address the nature and the basis of the statutory interest

8    payments, and that requires us to look at English law.

9          And I'm not going to spend a lot of time on

10   English law because this is an interpretation of a Chapter

11   11 plan, but it is relevant to understand whether these

12   statutory interest payments satisfy the terms of the plan by

13   determining the nature of that plan.  And the English court

14   has --

15         THE COURT:  That -- that statement that you just

16   made, I -- I'm not following.  Whether the statutory

17   interest payments satisfy the terms of the plan.  The

18   question is whether or not this is other consideration

19   provided on the primary claim.  That's it.  That's the whole

20   question.

21         MR. ROVIRA:  Correct.

22         THE COURT:  Right?

23         MR. ROVIRA:  Yep.

24         THE COURT:  So it's not -- it either it -- either

25   it is or it isn't, right?

1                    MR. ROVIRA:  Correct.  But we have to understand

2        what it is, and that's -- that's what we need to -- in order

3        to know whether something fits, we have to understand the

4        nature of it, and is it something that is a primary claim,

5        is it consideration?  And -- but we have to see what is

6        that?  Is it a payment towards any claim, or is it a payment

7        towards a primary claim?  Let's -- let's see what that --

8        the nature of that statutory insert is to see.

9                    THE COURT:  But, it -- if -- go ahead.

10                    MR. ROVIRA:  I just don't think we can take these

11        payments out of context.  It needs to determine what is this

12        payment, and that's a statutory interest that was -- arose

13        post-petition by English statute.  It was not under the

14        underlying contract that formed the basis of the primary

15        claim on the guarantee.  If --

16                    THE COURT:  Let me ask you this.  You didn't

17        receive -- the consideration was not received because your,

18        you know, your client's name was drawn out of a hat.  The

19        consideration was received because your client has a primary

20        claim under the plan.  It --

21                    MR. ROVIRA:  That --

22                    THE COURT:  It didn't win the lottery, right?  It

23        didn't get the -- this consideration because it won the

24        lottery, right?

25                    MR. ROVIRA:  It's in spite of having a -- an

Page 16

1    admitted claim.

2            THE COURT:  In spite of?

3            MR. ROVIRA:  Yeah.  It's --

4            THE COURT:  If you didn't have the claim, would

5    you have gotten the consideration?

6            MR. ROVIRA:  No.  You're right.  We do need to

7    have the claim.  But it has -- it's statutory.  It's not

8    because of the claim itself.  It's not -- it's compensatory

9    for the delay of receiving the payment in full of that

10   primary claim.  So it's not -- it's correct that it was

11   determined by reference to the admitted claim, but it's a

12   completely independent and separate right in the --

13           THE COURT:  So let me ask you this question.

14   They're -- the -- you and Deutsche Bank are the only two

15   claimants who are taking this position.  Why do you think

16   that is?  Better lawyers?  Everybody else just didn't think

17   of this argument?

18           MR. ROVIRA:  No, Your Honor.

19           THE COURT:  It's a -- it's a serious question.

20   I'm asking it as a serious question.  I've been presiding

21   over this case a long time.  As Mr. Fail suggested, there

22   have been multiple attempts to garner additional

23   consideration based on provisions of the plan and the

24   mechanics of how, for example, currency conversions work.

25   And they -- and they both failed.

Page 17

1           Here, in response to the estates' previous motions

2     with respect to the guarantee claims, everyone else went

3     away except the two of you.  Why do you think that is?  Did

4     they just miss the issue?  They left all that money on the

5     table?

6           MR. ROVIRA:  No, Your Honor.  Some of them

7     settled.  And we looked at some of the claims, and some of

8     the claims seem to have been allowed.  I'm not certain why

9     or in terms of what the terms of those settlements were, but

10    it's not that.  And the plan administrators use the word

11    "virtually all," not everyone.  So some of them did settle.

12    Some of them, you know -- I were -- you know, we would think

13    that just --

14           THE COURT:  Well, remember, those were at an

15    earlier point in time when the certainty of the payment in

16    full as a result of the LBIE Distributions didn't exist as

17    it does now.

18           MR. ROVIRA:  Correct, Your Honor, but it -- it's a

19    simple business judgment that those parties made, whether it

20    was a cost-efficient basis to pursue their claims.  But --

21    the -- because of those -- the actions of those other

22    parties, that is not the conduct of the party before you

23    today.

24           And the case law and the conduct of the parties

25    has been consistent, and we have opposed that.  And we don't

1   know why they withdrew, but I don't think that they withdrew

2   because they adopted the plan administrator's

3   interpretation.  They made their own decision based on the

4   specific facts and circumstances of each of those claims

5   with different values, different -- different specific

6   circumstances.

7          So I don't think that you can look at the conduct

8   of parties that some settled, some, you know, were foreign

9   creditors and may not have wanted a -- to cause that expense

10  and burden of litigating that claim.

11         So, Your Honor, I don't think the conduct of the

12  party's caselaw really is reflective of the parties

13  admitting or giving up and saying we withdrew because we

14  adopted the plan administrator's plan.  I just don't think

15  that's the -- a proper analysis of the conduct of the

16  parties, and the conduct of the parties here have been

17  consistent to oppose that plan administrator's

18  determination.

19         So, Your Honor, I want to just make another

20  reference to English law, and that is the High Court's

21  decision on what the statutory interest payments were.  And

22  it made two relevant decisions.  One was that it found that

23  the creditors did not have one composite claim principal as

24  primary claim and interest -- not one composite.  It was two

25  specific and distinct claims, one for principal of the

Page 19

1    primary claim, and one separate and distinct post-petition

2    statutory claim.

3              And the second holding was that -- that statutory

4    interest cannot discharge principal.  And we think that's

5    relevant --

6              THE COURT:  That has nothing to do with what the

7    words of the plan say.  The plan does not talk about

8    receiving consideration in satisfaction of a primary claim.

9              MR. ROVIRA:  I think it is relevant because the

10   High Court says this isn't with respect to a primary claim.

11   It's -- well, it doesn't say it's not with respect to.

12             THE COURT:  Satisfaction.

13             MR. ROVIRA:  It doesn't satisfact.  It doesn't

14   discharge.

15             THE COURT:  The plan language does not say -- does

16   not contain language that speaks to the discharge or

17   satisfaction of a primary claim.

18             MR. ROVIRA:  And we're not asking that it needs to

19   add that language.  The context of 8.13(a) provides meaning

20   to the words "provided on." The purpose of 8.13(a) is to

21   determine whether the allowed guarantee claim has been

22   satisfied in full.

23             So in that context, we need to determine whether

24   this consideration, this payment, this statutory interest,

25   was it provided on the corresponding claim such on promise -

Page 20

1    - corresponding primary claim such that it would limit or

2    satisfy, reduce, the guarantee obligation.

3              THE COURT:  Right?

4              MR. ROVIRA:  Right.  And when the High Court says

5    this payment isn't with regards to the primary claim.

6    Primary claim has already been satisfied in full.  This is

7    with regards to compensation for a delay in having your

8    admitted claim satisfied in full.

9              That, you know, in the context of 8.13(a), we

10   think it's a reasonable interpretation that "provided on"

11   means "in satisfaction of," but we don't -- we don't have to

12   add those language -- that language in.  You have to look at

13   the whole phrase, you know?  If we look at a dictionary,

14   "on" has numerous reading -- numerous meanings.

15             THE COURT:  Well, this is one of the more

16   noteworthy parts of your brief.  I find this -- well, it's

17   paragraph 41 where you say that the term "on," in the phrase

18   "consideration provided on the corresponding primary claim,"

19   is used to describe the relationship between a payment and

20   an obligation.

21             This is the part that I find very interesting:

22   "As used in plan Section 8.13(a), the term 'on' is clearly

23   narrower than 'in connection with' or 'relating to' or 'with

24   respect to.' These terms collectively are used 119 times in

25   the plan as a whole, including once within Section 8.13(a),

Page 21

1   and surely would have been used here if a broad relationship

2   between payments from LBIE and the primary claims had been

3   intended.  Thus, it is clear that 'provided on the primary

4   claims' means something narrower than the mere fact that the

5   statutory interest payments 'correspond to' the primary

6   claims."

7           And then you go on in paragraph 42 to say: "The

8   plain meaning of 'on' in the sense of the payment on a claim

9   is in satisfaction of, payments in whatever form made on a

10  claim reduce the amount of that claim.  That is the natural

11  intuitive meaning of a payment being provided on a claim."

12          So I think Mr. -- in Mr. Fail's charitable

13  characterization of this as ipse dixit -- this is completely

14  made up.  This is a completely made-up argument.  You're

15  taking a simple word, "on," and building a whole

16  architecture around it.  That's made up.

17          MR. ROVIRA:  I disagree, Your Honor.

18          THE COURT:  It's -- it -- you could apply a "but

19  for" test, but for the claim you wouldn't have gotten the

20  consideration.  That's payment on.

21          MR. ROVIRA:  That's not payment on.  The -- we're

22  -- you can't look at "on" in isolation.  It has to be

23  consideration.  And consideration is a bargain for exchange.

24  It's something that's given in exchange for something, and

25  this statutory interest payment was not bargained for.  It's

Page 22

1      not a consideration as --

2                THE COURT:  But that's also -- that's another ipse

3      dixit or made-up argument that -- that construction of the

4      word "consideration" in the context of plan consideration.

5      In the context of a plan, consideration -- I went to law

6      school too.  I know what consideration is in the contract

7      context.  But in the plan context, consideration is what you

8      get on account of your claim -- on your claim, in payment of

9      your claim, for your claim, because you have a claim.  All

10     those things are the same.  They're all the same thing.

11               MR. ROVIRA:  I beg to differ only because this is

12     not in payment of our claim.  It's compensation for the

13     delay in receiving payment of our claim.  Those are two

14     separate things.  Interest is different than your claim.

15               THE COURT:  What's the purpose of a guarantee?

16               MR. ROVIRA:  Interest is different than your debt.

17               THE COURT:  What's the purpose of a guarantee?

18               MR. ROVIRA:  To make sure that you receive payment

19     on the primary claim.

20               THE COURT:  To make sure that you're whole, right?

21     To make sure that you're not left with anything still owing

22     on account of your claim, right?

23               MR. ROVIRA:  Correct.

24               THE COURT:  Right.  Your client is whole.

25               MR. ROVIRA:  Our client is not whole, Your Honor.

Page 23

1    Our client is whole with respect to the compensation for the

2    delay in receiving this payment, that statutory interest

3    that is a post-petition right.  It's a post-petition right

4    that is granted on the statute that administrator is

5    required to give, so it's compensatory.

6            If that is to be used to make ourselves whole on

7    the guarantee claim, then we're -- we're suffering a loss

8    from not receiving that statutory interest payment that was

9    required under English statute to provide us with

10   compensation for that delay that all other LBIE creditors

11   are receiving in whole.

12           So we're not -- we're not getting in addition to.

13   This has been ten years of not receiving that payment, so

14   this statutory interest is a completely different and for a

15   different purpose.  It has nothing to do with the primary

16   claim other than that it's calculated on the basis of that

17   claim.  But it's not in satisfaction of that claim.

18           And that's what Section 8.13(a) -- and Section

19   8.13(a) is determined to look at whether --

20           THE COURT:  8.13(a) says nothing about in

21   satisfaction of -- in discharge of.

22           MR. ROVIRA:  It's to determine whether the

23   guarantee claim, the allowed guarantee claim, has been

24   satisfied before.  That's what it refers.  And it looks at

25   capital D Distributions, and it looks at other

Page 24

1    considerations provided on the primary claim.

2           And our position is that this is not provided on

3    the primary claim.  The primary claim by defined under the

4    plan under Section 1.4 provides that the primary claim has

5    to be a claim which has a corresponding guarantee claim.

6    The statutory interest payment was a separate claim.  It

7    didn't have a guarantee related to it so it can't be in

8    respect of a primary claim.  That statutory interest payment

9    was not guaranteed.  It couldn't have been guaranteed.

10          So, Your Honor, we -- we don't think that that

11   statutory interest payment could be consideration.  It

12   couldn't be in satisfaction, which is the purpose of 8.13,

13   and it can't be on a primary claim as defined by the plan.

14   And as the English courts have said, it cannot be used to

15   discharge a principal debt.

16          It's almost like any kind of interest.  If I owed

17   you $100, and I kept on paying you interest over 10 years

18   and I defaulted, I would still owe you the $100 even if I

19   paid you $1,000 of interest.  That -- the nature of that

20   interest payment is not to satisfy that primary debt.

21          So, Your Honor, I think it's within the

22   expectations of the parties that a narrower interpretation

23   of what "provided on," what "consideration" on the primary

24   claim would mean.  And we don't think that's ambiguous.

25          In order for the plan administrator's definition

Page 25

1    to make sense, you have to look at it in isolation, and you

2    have to think of "provided on" as "calculated based on,"

3    "accrued on," "relating to." Those terms are not used in

4    that -- in that section, in Section 8.13(a).

5              And, Your Honor, we don't think that language is

6    ambiguous, but New York Court says that if it is ambiguous,

7    then you look at the narrower interpretation.  You look at

8    the interpretation within that phrase.

9              There's a case, and I can give you the cite for

10   it, Roswell Capital Partners where he used the term

11   "violation" on its own in isolation was very broad.  And the

12   term "law" in isolation was very broad, but there was a

13   narrower construction that the courts said we must give to

14   the phrase "violation of law," and that, Your Honor, is what

15   we think is a reasonable expectation of the parties looking

16   at the complete term, "consideration," "provided on," "the

17   corresponding primary claim." And whether that is in

18   satisfaction of a guarantee claim.

19             And our position is that statutory interest which

20   is a post-petition right, it's a separate right, cannot be

21   in -- it cannot be as consideration because there was

22   nothing to bargain for, and it cannot discharge, or reduce,

23   or limit the guarantee claim because it wasn't paid on it,

24   Your Honor.

25             Your Honor, the -- another argument I wanted to

1   address was the plan administrator's suggestion that

2   consideration would include interest.  They make that

3   argument in their motion on Paragraphs 33 and 35.  And they

4   say that consideration, as used in section 8.13(a), must

5   include interest because of the preceding phrase to it,

6   "combined with Distributions." Capital D, Distributions,

7   requires a broad interpretation of distributions.

8          But again, I think the context and the words used

9   matter.  And they don't provide any evidence other than that

10  distributions as used in 8.13(c) would include interest, but

11  --

12         THE COURT:  But what about that the argument that

13  you go down that path right?

14         You have to read 8.13(a), to count -- post-

15  petition interest distributed by one affiliate of LBHI but

16  not post-petition interest distributed by another primary

17  obligor.  It's all got to be consistent.

18         MR. ROVIRA:  And it is consistent, Your Honor.

19  The language is consistent because distributions on the

20  subsidiary Debtor, it cannot be within -- with post-petition

21  interest because 8.13(c) tells you you cannot distribute --

22         THE COURT:  So your point is that -- you agree

23  that the word "consideration" is used to encompass whatever

24  types of property or value -- cash, securities, other --

25  might be distributed in foreign proceedings.  Right?  You

Page 27

1    agree with that.  That's from your papers, right?

2         MR. ROVIRA:  We -- in isolation, yes.  It can be

3    very broad.

4         THE COURT:  What do you mean?

5         MR. ROVIRA:  What I mean is that it has to be

6    consideration for something.  It could -- it could be all

7    types of value of property --

8         THE COURT:  Okay, but you say that that

9    consideration is used -- so it's to encompass whatever types

10   of property or value might be distributed in foreign

11   proceedings, but it's limited to amounts used to discharge

12   principal and excludes post-petition statutory --

13        MR. ROVIRA:  On the primary claim.  Just focus on

14   the language, right?  It's just a primary claim.  And the

15   primary claim could include contractual interests.

16        THE COURT:  But the primary claim is a term that's

17   used to distinguish it from the guarantee claim.

18        MR. ROVIRA:  Correct.  Correct.  And the guarantee

19   claim and the primary claim does not include statutory

20   interest.  It includes contractual interest.  If there was

21   an interest paid or an interest owing pre-petition, that

22   interest is included, and then that becomes the principal.

23   That's what I'm considering the principal of the primary

24   claim.

25             It doesn't include interest post-petition.  And so

Page 28

1    a payment that is with respect to being paid to satisfy a

2    post-petition statutory obligation of the LBIE

3    administrators cannot be viewed in isolation.  Yes, it's

4    value, but no it's not in payment of a primary claim.  It's

5    in payment of a separate and distinct claim.

6              I think that's my argument, Your Honor.

7              THE COURT: Okay.

8              MR. ROVIRA:  Do you have any other questions?

9              THE COURT:  Thank you very much.

10             MR. ROVIRA:  Thank you.

11             MR. FAIL:  Your Honor --

12             THE COURT:  Mr. Fail?

13             MR. FAIL:  I think -- I think Your Honor

14   understands the plan administrator's arguments and the

15   difference between being a primary claim and consideration

16   being provided on the claim, and we set forth our arguments

17   as to why the Court should not give weight or an argument

18   cannot be constructed on the High Court's discussion of

19   claims that were subsequently determined not to exist

20   between, you know, currency claim versus interest and the

21   intermediate appellate court's dicta that, you know, it

22   would've been overruled.  So I'm going to rest --

23             THE COURT:  Do you have --

24             MR. FAIL:  -- but I'll -- but I'm happy to answer

25   questions.

Page 29

1              THE COURT:  Well, let me ask you what -- do you

2    have anything that you want to say in response to the notion

3    that -- I'm paraphrasing -- that the statutory interest

4    "consideration," I put in quotes, has nothing to do with the

5    claim because it's compensation for delay or -- I'm

6    paraphrasing.

7              MR. FAIL:  Understood, Your Honor.  We responded

8    to that in the papers as well.  This line of argument comes

9    from an attempt to distinguish or to argue that the post-

10   petition interest had to be a primary claim instead of being

11   consideration on a claim.

12             If you look at our plans', LBHI's plans',

13   provision for post-petition interest, it is -- it is

14   interest on a claim as well and not part of the primary

15   claim.  Your Honor made that determination, I believe,

16   earlier in the cases when parties tried to get compound

17   interest --

18             THE COURT:  Right.

19             MR. FAIL:  -- and there was a difference between

20   interest being part of a claim versus being on the claim.

21   So we've seen the 8.13 arguments before, and only if you

22   believe -- which it -- which you should not -- that a

23   payment has to reduce a primary claim, which the plan

24   doesn't provide, or satisfy would the subsequent argument be

25   relevant that, you know, interest had to be the primary

Page 30

1    claim.  It doesn't.  This is consideration provided by LBIE

2    on -- on account of, because of, but for -- the primary

3    claim.  It wasn't gratuitous.  The distinction --

4              THE COURT:  Well, I think that's the key point,

5    that it -- that it -- that it wasn't gratuitous.  It wasn't

6    --

7              MR. FAIL:  Parties in -- parties that were

8    creditors of LBIE received a bundle of rights in the U.K.

9    administration just like here in the U.S. under the U.S.

10   Bankruptcy Code, parties are entitled to receive a

11   distribution up to the amount of their claim in

12   satisfaction, here 100 cents on the dollar, there 100 p on

13   the pound.  And then afterwards, they're entitled to post-

14   petition interest, just like our plan provides pursuant to

15   8.13, interest as a distribution that comes after on a

16   claim.

17             They are pursuant to LBIE's scheme, and in

18   accordance with the insolvency rules, interest is paid on a

19   primary claim under their rules.  The word "on" is in the

20   rules.  And to do anything else, Your Honor, at this stage,

21   would be inconsistent with the interpretation and the

22   reading.

23             There was an allusion, I think, that the word

24   "virtually" had a meaning that should change Your Honor's

25   mind.  To be clear, my intention for writing the word

Page 31

1    "virtually" was because there were three parties that when

2    I-- when we drafted the papers, we were confirming their

3    interpretation pursuant to an agreement that they have been

4    satisfied.  They received the subsequent LBIE distribution,

5    three significant counterparties, large intuitions with a

6    number of claims have confirmed, and those claims have been

7    deemed satisfied.

8           The "virtually" also referred to the fact that

9    there's at least one party with whom the Court's familiar,

10   Maverick, which made a representation that they won't be

11   receiving interest.  So that party, you know, we've already

12   won and the claim has been dismissed, but it's on appeal.

13   They've made representations they won't be receiving

14   interest.  We don't think they have a claim, but if they

15   have a claim, we can revisit the whole scenario.

16          That is not -- that is not here.  SRM is under --

17   is under the Court's consideration.

18          THE COURT:  Subject -- right.

19          MR. FAIL:  They've made a lot of arguments over

20   time, Your Honor.  I don't know which ones they're going to

21   pursue.  We don't think they have a claim, but if they have

22   a claim, we don't know, you know, exactly what they've

23   received.  So as an abundance of caution, I said

24   "virtually."

25          I'm not aware on behalf of the estate of any LBI-

1    based primary guarantee claims where LBIE was a primary

2    obligor where the party was an affiliate that is receiving

3    distributions, but I would say this, Your Honor.  To the

4    extent that LBHI has made a distribution on guarantee

5    claims, LB -- and the primary obligor has satisfied in part

6    or in full the total consideration -- LBHI has pursued and

7    LBHI will pursue rights of subrogation, right, to enforce

8    the plan provisions which say that no party should be

9    unjustly enriched to collect back that money.  It has done

10    it in the past.  It has collected, and it will pursue to

11    enforce the single recovery rule.

12          There's no question that under our plan as a

13    result of converting claims -- allowed claims -- as of a

14    petition date and are compromised in agreement to uniformly

15    count distributions made over the past eight and a half

16    years or ten years of the case virtually in jurisdictions

17    around the world, to convert those distributions or

18    consideration.

19          As of the confirmation date, 13 cents was owed.

20    That is protected.  It was saying, you know, they can't get

21    it.  There's no question.  That's a total red herring.  They

22    were entitled to receive 13 more cents.  The only question

23    is who had to pay it?  They are saying we do in addition to

24    everything that LBIE says, and we're just simply saying the

25    amount that LBIE paid should satisfy it.  It's the basis on

1    which the Court estimated all other claims.

2          This isn't a new argument.  This argument was the

3    reason everyone knew when we filed the estimation motions

4    that LBIE was going to pay 100 pence on the pound, and all

5    that would come left was interest.  There were questions of

6    when it would pay, who's going to be paid first on sub-debt

7    or interest.  So would it come, how much would it be, would

8    it be enough to meet 13 cents?

9          There were questions that parties in Europe made

10   that maybe all of the 100 p on the pound that we were saying

11   was principal should be interest first.  Shows how fluid

12   cash and consideration could be.  People made that argument

13   so that they could continue to accrue interest.

14          THE COURT:  Right.  I've read that.

15          MR. FAIL:  Right?  To make more money.  But

16   there's no doubt that LBIE paid 100 p on the pound.  There's

17   now no question that it was principal.  There's now no

18   question this is interest.  The only question is, is it

19   consideration on the claim?  We don't see any other reading

20   that isn't torture, that doesn't ignore the definition or

21   say, you know, consider -- distribution does include

22   interest in most of the plan but not when I want to read it

23   here.

24          And as we've said, we've found examples where

25   guarantee claims are allowed in amounts higher than primary

Page 34

1    -- primary claims where the primary obligor was a Debtor.

2    So we don't think that there was any merit to the argument,

3    and again, I'm happy to answer any further questions.

4            THE COURT:  All right.  All right.  Thank you.

5    Well, at least I hope it was clear that I spent a lot of

6    time reading and rereading and parsing the language and

7    attempting to give the objectors every benefit of the doubt,

8    but I kept coming back to where I started, which is I agree

9    with the plan administrator's characterization that in large

10   measure, the arguments that were raised were red herrings.

11           It -- the objectors took something that I believe

12   is very simple and straightforward and creatively attempted

13   to take the Court on a frolicking detour through the plan,

14   reading meanings into words that clearly is not there,

15   reading a purpose into plan provisions that I think there's

16   no evidence was there.

17           The fact of the matter is, as far as my reading of

18   the plan is concerned, the subsequent LBIE distribution is

19   "other consideration provided on the corresponding primary

20   claim within the meaning of 8.13(a) of the plan." That's it.

21   It's no more complicated than that, and I don't believe that

22   it's necessary to debunk or address in detail any of the

23   additional arguments.

24           I will say, though, that this interpretation of

25   the plan is consistent with the single satisfaction rule.

Page 35

1   That's the way the guarantee works.  That's the way it

2   should work -- it should work here.  And I think to allow --

3   to require that additional monies be paid by LBHI on the

4   guarantee would violate that very, very fundamental

5   principle.

6           So based on the entirety of the record, my

7   observations today, which can be incorporated by reference

8   into the order, I intend to grant the plan administrator's

9   motion and overrule the objections.

10          All right.  Thank you.

11          MR. ROVIRA:  Thank you, Your Honor.

12          MR. FAIL:  Thank you, Your Honor.

13          (Whereupon these proceedings were concluded at

14   10:45 AM)

15

16

17

18

19

20

21

22

23

24

25

1                          **I N D E X**

2

3                          RULINGS

4                                               Page        Line

5

6    Hughes Hubbard Fee Application Approved        7           19

7

8    Motion to Abandon Certain Databases Granted  10           3

9

10   Plan Administrator's Motion Granted          35           8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 37

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5
     Sonya Ledanski          Digitally signed by Sonya Ledanski Hyde
6                            DN: cn=Sonya Ledanski Hyde, o, ou,
                             email=digital@veritext.com, c=US
     Hyde                    Date: 2018.09.24 15:06:47 -04'00'
7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 19, 2018, 2018