**Hearing Date: October 29, 2018**

**Response Deadline: October 23, 2018**

MEDLIN & HARGRAVE
A Professional Corporation
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: (707) 570-2200
Facsimile: (707) 570-2201
Joshua A. Rosenthal (CA SBN 190284) admitted *pro hac vice*

Attorneys for American Pacific Mortgage Corp., Parkside Lending, LLC, Sacramento 1st individually and as successor by merger to Comstock Mortgage and Cornerstone Mortgage, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 08-13555 (SCC) |
| LEHMAN BROTHERS HOLDINGS, INC., et al., | |
|     Debtors. | |

**DEFENDANTS AMERICAN PACIFIC MORTGAGE, INC.'S, PARKSIDE LENDING, LLC CORNERSTONE MORTGAGE, INC. AND SACRAMENTO 1ST MORTGAGE, INC.'S OPPOSITION TO LEHMAN BROTHER'S HOLDINGS, INC.'S MOTION FOR LEAVE TO AMEND AND EXTEND THE SCOPE OF THE ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDERS FOR INDEMNIFICATION OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS**

**Introduction**

    Defendants American Pacific Mortgage Corp. Parkside Lending, LLC, Cornerstone Mortgage, Inc. and Sacramento 1st Mortgage, Inc., individually and as successor by merger to Comstock Mortgage (collective referred to herein as "Moving Defendants") don't so much oppose the present motion as they are requesting that changes be made to the ADR order to make the order more equitable so that all parties can participate in the settlement process with the

1

feeling that they are being treated fairly. Lehman's behavior during the ADR process in connection with the previous claims has not been consistent with fairness and many of the defendants feel that Lehman is using the ADR process as a sword to inflict financial pain as opposed to a neutral settlement procedure to assist parties in resolving their disputes before engaging in protracted and expensive litigation. In short, we are requesting:

- An expanded list of potential mediators;
- An ability to conduct the mediation in a location other than in New York or to allow the parties to appear at the mediation via video conference;
- Joint selection of a mediator by Lehman and the defendants;
- Requirement that Lehman provide its documentation on the loans at issue and the alleged misrepresentations in advance as part of the Indemnification ADR Notice.

**Argument**

The proposed Amended ADR Order does not specify what documentation Lehman has to provide to any of the defendants. It merely states that "LBHI shall serve upon a Seller a notice containing sufficient information regarding the Indemnification ADR Dispute to make the Seller aware of the nature of LBHI's affirmative claim and of its demand for settlement, including an amount of monetary recovery LBHI would accept in full settlement and compromise." (Page 8 of Redline of ADR Order to Proposed Amended ADR Order, Doc 58858-2).

This section of the order is the same as the previous ADR order. In connection with the previous ADR order, Lehman provided links to download the relevant loan files and certain documents related to the alleged misrepresentations in the loan files. This enabled the defendants to analyze Lehman's claims with respect to loans that were at least 10 years old at the

2

time, well past the time that defendants' document retention programs required maintaining the documents.

Moving defendants respectfully request the Court add language to the order ensuring that defendants' obligations under the ADR order do not begin until defendants have been provided with the loan documentation and whatever evidence Lehman has indicating breaches of the representations and warranties of the relevant loan sale/brokerage contracts. The ADR process is expensive and time consuming. For it have any utility at all, the defendants need more than just Lehman's assertion that certain loan numbers are associated with certain losses.

In counsel's experience with respect to going through the ADR process on four filed matters, there is not a feeling that Lehman views this process as an equitable way of resolving a dispute. Lehman has used the process as a sword to inflict financial pain rather than a tool for resolution. Lehman has insisted on selecting the mediator without input from the defendants. In counsel's experience, this led to a mediator who billed $10,000 per mediation – just for defendants. Per the terms of the mediation agreement, this meant that Lehman presumably paid the same amount of money. $20,000 for a one-day mediation with minimal preparation is outrageous (around $1,000 was returned at the end of each mediation). A high cost retired appellate court judge in San Francisco bills at $600 an hour for a 10 hour day as a mediator. So, Moving Defendants wound up paying more than three times that for their mediations.

Lehman also refused to accommodate defendants' request to conduct the mediations in a place more convenient for the defendants. Lehman insisted on conducting the mediation in NY even though the defendants and their counsel were located elsewhere, most of Lehman's counsel were in Colorado at the time and most of the Lehman representatives who attended the

mediations were not based in NY. It appeared to this attorney that the only reason Lehman was insisting upon this arrangement was to inflict pain on defendants – not to reach a mutually agreeable settlement.

Throughout this litigation, the Lehman non-attorney representatives, including John Baker, have directly contacted the client representative for this counsel's clients about settlement when they know said parties were represented by counsel. This attorney has repeatedly admonished Lehman and its counsel as to this inappropriate communication. However, the warnings are ignored and the contact happen again. In discussions with other attorneys defending clients this matter, they have experienced the same thing. While Mr. Baker and the other Lehman representatives that directly contacted represented parties are not lawyers, their capacity in these actions is as part of a legal proceeding to recover money and Lehman has in house attorneys and outside counsel handling the prosecution. So, any direction to or by Lehman employees to directly contact represented parties around the back of their counsel is completely inappropriate. Yet it still occurs.

The point of recounting this past behavior is to illustrate the disrespect that Lehman shows to the parties to this litigation and the disrespect to opposing counsel. When a defendant hires counsel and is still being harassed by a bill collector, being made to participate in an ADR procedure where they have no say in the choice of the mediator and the location seems to be chosen solely to inconvenience that party it leads a party to believe that they are not getting a fair shake in the ADR process. Since a party is not compelled to resolve the matter at mediation, the process is much more productive if one of the parties doesn't feel it is being treated unfairly while the other party is bullying it into participating. In light of the way in which Lehman has conducted this process in the past and the fact that these defendants have already participated in

unsuccessful mediation, any future mediation would be much more productive if the choice of the mediator wasn't as limited as Lehman proposes, defendants had a say in the choice of the mediator and had a say in the location of the mediation.

### Conclusion

Moving Defendants respectfully request that they not be compelled to spend an exorbitant amount of money taking part in another fruitless ADR process. To make the process as useful as possible, Moving Defendants request that if the ADR order is amended, as requested by plaintiff, that it be amended to include language requiring Lehman to provide whatever loan files it has related to the alleged breaches and any evidence demonstrating the alleged breaches before any defendant is required to respond to any ADR demand, the mediator list not be limited to the current list of 15 mediators, that the mediator be agreed to by Lehman and defendant and that the mediation be conducted in a location convenient for all parties. If it is not possible to conduct the mediation in a mutually agreeable location, the order should reflect a party's ability to appear by video conference.

///

///

///

///

///

DATED: October 23, 2018

                By:  */s/ Joshua A. Rosenthal*
                     Joshua A. Rosenthal

                     MEDLIN & HARGRAVE
                     A Professional Corporation
                     3562 Round Barn Circle, Suite 212
                     Santa Rosa, CA 95403
                     Telephone:  (707) 570-2200
                     Facsimile:   (707) 570-2201

                     Attorneys for American Pacific Mortgage Corp.,
                     Parkside Lending, LLC, Sacramento 1st individually
                     and as successor by merger to Comstock Mortgage and
                     Cornerstone Mortgage, Inc.