WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 382-3300
Facsimile:    (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

FOX ROTHSCHILD LLP
101 Park Avenue, 17th Floor
New York, New York 10178
Telephone:    (212) 878-7900
Facsimile:    (212) 692-0940
Michael A. Rollin
Maritza Dominguez Braswell

*Counsel for Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— x
:    **Chapter 11**
**In re:**    :
:    **Case No. 08-13555 (SCC)**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :
:
**Debtors.**    :
—————————————————————————— x

**PLAN ADMINISTRATOR'S OMNIBUS RESPONSE TO OBJECTIONS TO MOTION
FOR ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR
LEAVE TO AMEND AND EXTEND THE SCOPE OF THE ALTERNATIVE
DISPUTE RESOLUTION PROCEDURES ORDERS FOR INDEMNIFICATION
<u>CLAIMS OF THE DEBTORS AGAINST MORTGAGE LOAN SELLERS</u>**

Lehman Brothers Holdings Inc. ("<u>LBHI</u>" or the "<u>Plan Administrator</u>"), the Plan

Administrator under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers

Holdings Inc. and Its Affiliated Debtors (the "<u>Plan</u>"), for LBHI and certain of its subsidiaries

(collectively, the "<u>Debtors</u>"), submits this omnibus response to the objections made by certain

Sellers (the "Objectors") to its motion, dated October 17, 2018, for an order granting leave to

amend and extend the scope of the alternative dispute resolution procedures order for

indemnification claims of the debtors against mortgage loan sellers [Dkt. No. 58858] (the

"Motion")[1] and respectfully represent:

## PRELIMINARY STATEMENT

1.    The Plan Administrator made a modest proposal to continue an ADR Process to

cover new Indemnification Claims with certain minor modifications.  The new claims arise from

recent RMBS Trustee claim resolutions, but the underlying factual and legal issues are the same

as earlier Indemnification Claims, *i.e.*, the counterparties sold loans governed by essentially the

same Sellers's Guide or similar agreements, and those agreements included indemnification

clauses triggered under the same or very similar circumstances.  The Plan Administrator served

3,000 potential counterparties with the Motion.  The 14 objections and joinders of approximately

76 Sellers can be summarized in a word – more.  The Objectors want more.  An absurd level of

more.  They want more documents – essentially full fact discovery before any mediation can take

place.  They want more time – they oppose even a modest shortening of time frames and removal

of known bottlenecks from the original process.  The way more delay – they want a standstill of

any and all litigation for an indeterminate period.  They want more control – they want to be able

to veto any court-appointed mediator who they arbitrarily perceive as unfavorable.  They want

more expense – they want to shift all burdens and all costs onto the Plan Administrator by

forcing LBHI, the mediator and estate professionals to travel to potentially hundreds of locations,

all on the Plan Administrator's dime.  The Objectors' only real reason to oppose the Plan

Administrator's effort—an on-going effort reflected in its successful management of numerous,

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

complex matters—is to create inefficiency and unnecessary burden. The objections should be overruled.

2.      The Court has overseen multiple ADR processes in the Chapter 11 cases, all of which have tremendously benefitted creditors, litigants and this Court. The original ADR process succeeded as LBHI acted in good faith, selected mediators of high caliber, made sure that counterparties and mediators were properly informed of the claims and given access to substantial information and relevant evidence. Some parties settled, some did not. Many more may. The Objectors, by and large, are a group of counterparties that have chosen to litigate every issue in this Court, in the District Court, and in other courts throughout the country, regardless of the previous rulings which rejected their positions. Not surprisingly, they attempt to disrupt the ADR process and seek to make it more burdensome than litigation itself. The proposed changes to the ADR Order, however, will aid all parties and should be approved.

3.      Many of the objections do not concern the Plan Administrator's proposed amendments to the ADR Procedures or the expansion of the scope, but instead relate to existing processes and procedures in connection with the GSE Indemnification Claims. These objections should not be entertained. The purpose of the Motion was to expand the scope of the ADR Order and make minor changes based on the Plan Administrator's mediation experience. It should not be an opportunity for Sellers to attack the existing ADR Indemnification Procedures, which have resulted in hundreds of settlements totaling tens of millions of dollars.

4.      Many Objectors claim they lack sufficient facts about the RMBS Indemnification Claims. However, the Motion laid out the facts concerning the RMBS Indemnification Claims and all Objectors that are parties in Adv. Proc. No. 16-01019 have seen the Plan Administrator's proposed amended complaint, which contains additional facts concerning the RMBS

3

Indemnification Claims.  The suggestion that the Objectors do not know the basis for the RMBS

Indemnification Claims is unfounded.

5.    The record of success from the ADR Order strongly shows the merit of such a

process here.  Accordingly, as the Court has jurisdiction to order mediation, LBHI respectfully

requests that its Motion seeking to institute the Indemnification ADR Procedures be granted.

### ARGUMENT

6.    This omnibus reply will respond to each issue raised by the objections.[2]

> Objection:        The Court Does Not Have
>                   the Power To Amend Its Order

7.    Several Objectors argue at length that the law the Plan Administrator relies upon

for the relief are inapplicable and implies that the Court lacks the power to amend the ADR

Order.  This argument is without merit.

*8.*    The Court already determined that it had the power to enter the ADR Order.  To

the extent that the ADR Order is a final order, pursuant to Rule 60(b)(6), made applicable by

Bankruptcy Rule 9024, the Court has the power to modify the order for "any other reason that

justifies relief."  Fed. R. Civ. P. 60(b)(6).  Unlike certain other subsections of Rule 60, Rule

60(b) has no one-year time limit on an amendment; the timing need only be reasonable, which is

is here, given that the RMBS matters were just concluded a few months ago.[3]  *See Howard v.*

*United States*, 2018 WL 3973005, at *1 (E.D.N.Y. Aug. 20, 2018), *appeal docketed*, No. 18-

---

[2] Guild Mortgage Company's ("Guild") objection that it is not a successor to Liberty Financial Group, Inc. ("Liberty") is not a basis to deny the Motion.  As Guild acknowledges, the parties are engaged in discovery regarding that issue, and Guild can raise its defenses to a successor liability claim during mediation.  The objection of Security National Mortgage Company ("Security National")—that the Amended ADR Order does not fully track its modified ADR Order—is meritless, as the Plan Administrator already stated that the only modifications it was proposing to the Modified ADR Orders was to expand the scope to include the RMBS Indemnification Claims.

[3] The absurdity of the objection under Rule 60 is apparent as the Court could simply authorize an entirely separate but identical ADR Process for RMBS-related claims.

2706 (2d Cir. Sept. 11, 2018) (allowing a motion pursuant to Fed. R. Civ. P. 60(b)(6) that was over four years old, finding it was reasonable considering the movant was diligent, there was no prejudice to the opposing party, and it would not undermine the interests of finality).

9.    Moreover, to the extent the ADR Order is interlocutory, it is well established that a court "possesses the inherent procedural power to reconsider, rescind, *or modify* an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis added). This power extends to bankruptcy courts. *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). Accordingly, the Court possesses the inherent power to modify its orders.

10.    As the Objectors cannot articulate how the Court has the power to enter the ADR Order but not the power to amend it, this objection should be overruled.

Objection:    The Court Does Not Have Jurisdiction to Amend the Order

11.    Some Objectors argue that "at this stage and absent the provision of more concrete facts . . . the Court lacks the requisite subject matter jurisdiction over the putative new claims, such that any mandatory form of dispute resolution order pursuant to the Proposed ADR Order cannot be properly issued or imposed on them." Acre Opp.[4] at 6. This argument makes little sense.[5]

12.    The Court already concluded it had subject matter jurisdiction to consider the same relief when it entered the ADR Order. *See* ADR Order ¶ A ("The Court has jurisdiction to enter this Order . . . [p]ursuant to Paragraph 77 of the Confirmation Order and Section 14.1 of the

---

[4] Limited Objection and Reservation of Rights to Motion of Lehman Brothers Holdings Inc. For Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedures Order For Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 58593].

[5] The fact that certain parties have appealed this Court's determination that it has subject matter jurisdiction over the claims does not prevent this Court from entering the Amended ADR Order. *Cf. Nw. Nat'l Ins. Co. v. Insco, Ltd.*, 866 F. Supp. 2d 214, 217 (S.D.N.Y. 2011).

5

Plan . . . ."); *see also* Memorandum Decision and Order Denying Omnibus Motion to Dismiss for

Lack of Subject Matter Jurisdiction and Improper Venue [Adv. Proc. No. 16-01019, Dkt. No.

606].  Although the facts are nearly identical to the original ADR motion, Objectors argue that

the Plan Administrator has not provided enough facts for the Court to determine that it has

subject matter jurisdiction over the amendment.  This argument falls flat.

13.    Assuming that the more-stringent standard for post-confirmation jurisdiction

applies, this Court may nonetheless exercise jurisdiction over a motion such as this one if the

matter has a "close nexus" to the bankruptcy case.  *See Ace Am. Ins. Co. v. DPH Holdings Corp.

(In re DPH Holdings Corp.)*, 448 Fed. App'x 134, 137 (2d Cir. 2011) (summary order and

opinion holding the lower court was correct in first determining whether it had jurisdiction using

the close nexus test).  "Broadly speaking, the proceeding must affect some aspect of the plan—

its meaning, its implementation or its consummation—to come within the Court's post-

confirmation jurisdiction."  *General Media, Inc. v. Guccione (In re General Media, Inc.)*, 335

B.R. 66, 74 (Bankr. S.D.N.Y. 2005).  In the case of a liquidating plan, the close nexus text is

more easily satisfied because of the anticipation that the bankruptcy court will be involved in the

liquidation process after confirmation.  *See E. Airlines, Inc. v. General Mills, Inc. (In re

Ionosphere Clubs, Inc.)*, 1999 Bankr. LEXIS 1875, at *18 (Bankr. S.D.N.Y. May 12, 1999).  As

Judge Lifland noted in *In re Ionosphere*:

> Because 'the liquidation purpose is effectuated by the bankruptcy
> estate, via the trustee, creditors' committee or disbursing agent,
> marshaling assets for distribution to creditors. . . disputes between
> the debtors and others that develop out of liquidation are the
> responsibility of the bankruptcy court.'

*Id*. (citation omitted).

14.     The close nexus requirement is satisfied here, particularly given that this is a liquidating Plan.  As the Plan Administrator for the post-confirmation Debtors, LBHI is directed to wind down and liquidate the assets of all the Debtors.  Plan § 7.6.  The liquidation of all the assets, including eventually LBHI itself, will be used to fund distributions by operation of the implementation provisions of the Plan.  Plan § 6.1(b)(iii).  Section 8.14(b) of the Plan and paragraph 79 of the Confirmation Order both provide that the Debtors retain the right to assert and prosecute Indemnification Claims.  The foregoing provisions also make clear that LBHI will pursue Indemnification Claims to fund additional distributions to creditors.  Liquidating the Indemnification Claims undoubtedly will affect recoveries by creditors, a factor which warrants the exercise of post-confirmation jurisdiction.  *See In re Ionosphere*, 1999 Bankr. LEXIS 1875, at *20-21; *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006).

15.     As with the Indemnification Claims that arose from the GSE Settlement Agreements, the Plan Administrator provided sufficient information concerning the RMBS Trustee Indemnification Claims to establish that the Court has jurisdiction.  In the Motion, the Plan Administrator explained that the RMBS Trustees filed proofs of claim for the Defective Loans sold by Sellers and explained how the Plan and the Confirmation Order provided for jurisdiction.  Motion at 7-11.  Beyond saying they need more "concrete facts," Objectors have no other basis to contend that the Court lacks subject matter jurisdiction.

16.     Finally, the Plan Administrator is not requesting that the Court enter dispositive final or even interlocutory orders on the RMBS Indemnification Claims themselves.  Rather, the relief requested is a settlement process to resolve outstanding claims held by LBHI.  That relief is clearly consistent with and authorized under the Plan and Confirmation Order.  Accordingly, this objection should be overruled.

<u>Objection:</u>    Only Parties Who Have Not Mediated Before
<u>Should Be Subject to the Amended ADR Order</u>

17.    Guild argues that only the parties who have not participated in the ADR process

should be subject to the Amended ADR Order.  Guild Opp.[6] at 3-4.  In support of this argument,

Guild claims that the Plan Administrator's process is defective.  The fact that Guild and the Plan

Administrator had an unsuccessful mediation does not warrant what Guild requests.  All

Indemnification Claims should be subject to the Amended ADR Order, as the purpose of that

order is to resolve the claims without having to engage in full-blown litigation.  If certain Sellers

were permitted to effectively opt out of the Amended ADR Order, then the mandatory nature of

the process would be undone and the process undermined as that is a key feature of its success.

18.    Moreover, now that all incoming RMBS claims have been resolved, the Plan

Administrator is optimistic that some of the prior barriers to mediated settlements have been

removed, and that failed mediations may be rejuvenated.  Accordingly, this objection should be

overruled.

<u>Objection</u>**:**    <u>The Litigation Should Be Stayed</u>

19.    Certain Objectors argue that "[a]ll other matters, including the pending litigation

in Case No. 16-01019 and related adversary proceedings, and the Objector's responses to

LBHI's motion for leave to serve a Third Amended Complaint, should be adjourned pending

LBHI's production of" additional documents.  Acre Opp. at 10.  Objectors reason that "the

parties need time to assess the claims and defenses and reach resolution before proceeding to

expensive litigation."  *Id.*  This objection should be overruled.

20.    *First*, coupling a demand for a standstill of all Indemnification Claims (GSE and

---

[6] Guild Mortgage Company's Joinder of Objection and Objection to Lehman Brothers Holdings, Inc.'s Motion for Leave to Extend the Scope of the ADR Procedures [Adv. Proc. No. 17-01001, Dkt. No. 63].

RMBS) while simultaneously demanding what is the equivalent of complete discovery (as discussed below) from a plaintiff, demonstrates that the objections are not propounded for the purpose of enhancing the ADR process. Rather, such objections advocate for expansive, pre-litigation and one-sided discovery hoping to delay both the litigation and the ADR process.

21.     *Second*, Case No. 16-01019 does not currently include the RMBS Indemnification Claims, and Objectors fail to explain why the GSE Indemnification Claims should also be stayed for them to assess their claims and defenses to the RMBS Indemnification Claims. This objection is contrary to the position many Objectors have taken in opposing the Plan Administrator's motion to amend the complaints to include the RMBS Indemnification Claims. Certain of the Objectors claim they are prejudiced by adding the RMBS Indemnification Claims as the two sets of indemnification claims are not sufficiently similar and allowing joinder would delay the litigation. These positions are both irreconcilable and independently insupportable.

22.     *Third*, the Objectors' proposal is impracticable. Case No. 16-01019 has nearly 80 defendants. It would take significant time for the Plan Administrator to provide all 80 defendants with complete discovery, allow them to "assess the claims and defenses," then once the cases are joined, conduct its own discovery, in effect, doubling the time spent on discovery. Under any analysis, the foregoing process would not be cost effective, undercutting the Objectors' objections. In any event, the next phase of the cases will be fact discovery, meaning many documents Objectors seek will be provided in the proceedings (as opposed to just the entry of the Amended ADR Order).

23.     *Fourth*, nothing in the rules or case law prohibits mediation while litigation is taking place. To the contrary, mediation is often pursued parallel to litigation because mediation can push the parties to resolve their claims and defenses at a reduced cost at any stage of the

litigation. *See In re Teligent, Inc.*, 417 B.R. 197, 205 (Bankr. S.D.N.Y. 2009) ("Mediation plays a critical role in the resolution of lawsuits by fostering settlement and preserving personal and judicial resources."). That is what Plan Administrator seeks here.

24.    Accordingly, the Proposed Amended ADR Order should not include a litigation standstill.

<u>Objection</u>:    The Proposed Amended ADR Order Must Provide
That No Party Waives Any Rights, Arguments or Defenses

25.    Certain Objectors assert the need for specific amendments to the Indemnification ADR Order to protect the Sellers' rights. Specifically, Sellers request language that "no party waives any rights, arguments or defenses, including, but not limited to, with respect to subject matter jurisdiction and/or venue, improper and/or inconvenient forum." Acre Opp. at 10-11. The proposed changes are redundant of existing provisions and simply unnecessary.

26.    As a preliminary matter, the ADR Order already states as follows: "The parties' participation in the Indemnification ADR Procedures set forth herein, including the Notice/Response Stage and the Mediation Stage, shall not cause either LBHI or any individual Seller to waive or release any claims defenses or remedies that the individual parties would otherwise hold." Amended ADR Order ¶ 15. The Plan Administrator requests no change to that language. Objectors do not explain why this language is insufficient—particularly as the defense of subject matter jurisdiction cannot be waived.

27.    As with the original ADR Order, any mediation will be *non-binding*, and, by its very nature, the parties waive no claims, defenses, or remedies that they may have by participating in mediation. Concerns over waiver of any claims, defenses, or remedies are unfounded.

10

<u>Objection</u>:        The Plan Administrator Needs to Provide Detailed
<u>Evidence Concerning the Indemnification Claims</u>

28.        Objectors argue that the Plan Administrator should have to provide an

extraordinary amount of information and documentation in connection with the mediation and

that this requirement should be set out in the Amended ADR Order.  Many of those Objectors

make a document demand for ten (10) or more broad categories of documents.  *See, e.g.*,

Wintrust[7] Opp. at 12; Acre Opp. at 4-5 ¶ 9.  The Objectors seek pre-litigation discovery in a non-

binding mediation without having to provide reciprocal discovery.[8]  Objectors argue that "[these]

documents were among those that the Plan Administrator deemed necessary to review in order to

resolve the 'Private Label Trustees' claims about specific loans and are critical to establishing

the Objectors' potential liability."  Wintrust Opp. at 4; *see also* Acre Opp. at 5.  The idea that the

Plan Administrator should provide all the information obtained and produced in the Estimation

Proceeding, which was analogous to a trial, during a non-binding mediation defeats the purpose

of ADR, which is to settle claims without having to litigate claims to trial.

29.        Despite certain Objectors' mischaracterization of the existing ADR process, the

Plan Administrator provided substantial contract and loan level information in connection with

prior mediations.[9]  For example, the Plan Administrator provided borrower information, portions

---

[7] Limited Objection and Reservation of Rights in Response to the Plan Administrator's Motion for Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 58955].

[8] Some Objectors argue that the Court should only enter the amended order *after* they have full discovery.  Acre Opp. at 4.  The demand that the Plan Administrator must provide full discovery before it has joined issue by bringing suit is patently unreasonable and should be rejected.

[9] Response Mortgage Services, Inc. ("<u>RMS</u>") argues that the complaints are insufficient to permit meaningful mediation.  RMS's presumption that Sellers will only have a complaint is incorrect.  The Plan Administrator will provide the mediator and each Seller with a position statement and substantial evidence, including all or relevant portions of the contract documents, as well as loan-level information, documentation of breaches, losses and other data.  Other objections arguing that materials received to date contain very little information regarding the new claims are similarly incorrect in their premise.

11

of the loan file and evidence of the alleged breaches. The Plan Administrator also provided the Seller's Guide, the Seller's agreements governing the sale and/or broker of the loans and settlement materials. It also provides the loan loss amounts. When it has received reasonable requests for relevant additional information, the Plan Administrator has provided it if it is accessible. The Plan Administrator intends to continue to provide the foregoing information.

30.    The purpose of ADR is to resolve the Indemnification Claims in a timely, cost efficient manner. The Plan Administrator understands that the Sellers need information to evaluate the claims but requiring the Plan Administrator to provide full fact discovery is neither fair nor cost efficient. Accordingly, the objection should be overruled, and the Amended ADR Order should require the Plan Administrator to provide the same or similar information provided in the original ADR process, supplemented when necessary.

<u>Objection</u>:    The Motion Shortens the Time to
<u>Respond to the Indemnification ADR Notice</u>

31.    Certain Objectors are opposed to any reductions of time, no matter how reasonable. Objector iFreedom Direct Corporation's ("<u>iFreedom</u>") not only takes issue with the Plan Administrator's proposed amendment shortening the time that a Seller must respond to an Indemnification ADR Notice from twenty (20) to fifteen (15) days, it also suggests it should have *more* than twenty (20) days. *See* iFreedom Opp.[10] at 3. Other Objectors similarly argue that they should be given *more* time to respond to "formulate a thoughtful response." *See* Acre Opp. at 12-13.

32.    Objectors misunderstand the Plan Administrator's purpose in shortening the time. Based on prior experience, a fifteen (15)-day period to reply is sufficient in the majority of

_____

[10] iFreedom Direct Corporation's Objection and Reservation of Rights Concerning Motion of Lehman Brothers Holdings Inc. For Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedures Order for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 58916].

mediations.  Many Sellers are represented by counsel that has already participated in mediations,

so the Statements of Position it receives from the Plan Administrator will contain familiar

information and generate substantially similar responses from Sellers as it has in the past.

Moreover, the exchange of position statements is intended to provide the mediator with key

information and the parties' starting positions, not replace mediation.  Some Sellers submit

lengthy responses, others choose not to.  In the past, the exchange of position statements has not

been the key factor in achieving a settlement.  The majority of ADR settlements, in fact, occur

either prior to any exchange of position statements or as a result of the actual mediation, which is

why the Plan Administrator has proposed streamlining the process to reflect experience.

33.    In any event, the Plan Administrator is amenable to reasonable extensions of time

on a case-by-case basis.  The shortening of time is not prejudicial.  Accordingly, the objection

should be overruled.

Objection:    The Plan Administrator is Permitted to Unilaterally
Elect to Cease "Pre-Mediation" Communications
and Automatically Force the Parties Into Mediation

34.    As another example of why the ADR Procedures "impose additional financial and

other [unfair] burdens" (iFreedom Opp. at 3), iFreedom mistakenly cites to non-existent ¶ 6(d) of

the ADR Order.  The Plan Administrator suspects iFreedom likely intended to refer to ¶ 6(b),

which states that "once LBHI serves an Indemnification ADR Package upon a Seller, the Seller

must serve the required responses."  Amended ADR Order ¶ 6(b).[11]  It appears iFreedom takes

issue with the fact that the ADR Procedure is mandatory.

---

[11] iFreedom notes that the numbering is incorrect.  The numbering in the Proposed Amended ADR Order is
(attached to the Motion as Exhibit A) is correct, but the redline (Ex. B) did not automatically renumber.  However,
iFreedom appears to cite to paragraphs in both Exhibits.  Moreover, the sections it cites to in certain instances (such
as paragraph 6(b) are not correct in either Exhibit.  As such, the Plan Administrator's response to iFreedom's
arguments is based upon its best understanding of what iFreedom is citing.

35.     The ADR Procedure has always been mandatory, and the Motion did not seek an alteration.  This Court has already concluded that directing participation in mandatory mediation is not inherently unfair when it entered its original ADR Order.  *See* ADR Order.  Mandatory mediation is not unfair because it is non-binding and the Sellers cannot be forced to settle.  *See Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1176-77 (5th Cir. 1979) (held mandatory mediation process "do not violate the federal right to due process of law of law").  In fact, the mandatory nature of the process is a key feature that will likely lead to more and earlier settlements.   As such, this objection should be overruled.

Objection:        The Plan Administrator Is Unilaterally Able to Contact a Mediator

36.     In the Amended ADR Order, the Plan Administrator will contact the mediator to schedule the initial mediation date.  This is a change from the original ADR Order, where the Plan Administrator and the Seller contacted the mediator together.  iFreedom (again, without reasoning) cites to this change as imposing additional burdens.  In fact, the change is intended to eliminate a bottleneck in the prior process and adds no additional costs or burdens.  On the contrary, it streamlines the process and promotes efficiencies.

37.     In the Plan Administrator's experience, despite completed exchanges of mediation materials, Sellers would sometimes simply avoid contacting the mediator with the Plan Administrator (or refuse to tender their share of the mediator's retainer), therefore delaying mediation.  While the Plan Administrator can contact the mediator to schedule the mediation without the Seller, the Plan Administrator cannot unilaterally choose a date.  Although the proposed change is reasonable, in the alternative, the Plan Administrator would agree to a deadline by which the parties must contact the mediator together, and only if that deadline passes, the Plan Administrator would then be permitted to contact the mediator unilaterally.

14

<u>Objection:</u>    <u>The Process for the Selection of Mediators is Unfair</u>

38.    Some Objectors assert that the procedure for the selection of the mediator unfairly favors LBHI.  They suggest the parties should jointly select the mediator for each dispute and that the list of mediators should be expanded.  The proposal is unnecessary and only increases the potential for delay.

39.    As a preliminary matter, the objections imply that the listed mediators are incapable of being neutral because the Plan Administrator has identified them.  The Objectors fail to recognize that the mediators are not adjuncts of the Plan Administrator, but are court-appointed.  They are well known to the Court and counsel for many parties and are upstanding members of the bar.  The mediators are also conflict free.  There is no basis for such an implication.

40.    The Plan Administrator believes that it must select the mediator for practical reasons.  First, most Sellers or their counsel will participate in one or two mediations.  However, the Plan Administrator handles potentially hundreds of mediations, many overlapping or occurring at the same time.  The Plan Administrator needs the flexibility to select mediators based on work load and availability to keep the process moving.  Only the Plan Administrator knows the work loads of mediators and can distribute matters among them.

41.    It is also impractical to require the Plan Administrator and the Sellers to mutually select an independent mediator.  Given past experience in simply trying to schedule mediations with certain Sellers, requiring mutual consent will only create a new bottleneck to mediation.  Moreover, an impasse will require the parties to involve the Court to appoint a mediator.  That process is inefficient and costly, and would lead to further delays.

42.     The Objectors also argue that the mediator list should not be limited to mediators chosen by the Plan Administrator.[12]  Such a demand increases the cost and chance of delay. Most listed mediators have already conducted ADRs as to GSE Indemnification Claims.  They have experience in understanding and evaluating the claims, and have examined much of the same documentation and reviewed legal arguments and evidence in the context of mediation. Those mediators also have invaluable experience facilitating settlements.  In stark contrast, new mediators will have a substantial learning curve, with the attendant cost and delay, and will likely have no experience in settling such claims.

43.     Finally, Security National Mortgage argues that the parties "should be entitled to have the opportunity to utilize an acceptable mediator who has no previous involvement with mediating a matter involving LBHI relative or similar claims."  SNMC Opp.[13] at 5.  In other words, an existing mediator's familiarity with the legal issues and claims is reason enough to *reject* them.  Security National's proposal would cause extraordinary delay and would be inefficient.  Taken to its logical conclusion, Security National's position means that no mediator could be used twice, or, stated differently, every case must have a different mediator.

44.     Finally, selecting a mediator gives the Plan Administrator no advantage as mediations are non-binding.  Simply stated, the mediator is not a decision-maker.  The Sellers can decline to settle if good faith efforts fail.  It is therefore, in the Plan Administrator's own interest to select effective mediators.

---

[12] iFreedom argues that it "has no idea how much these mediators cost or their qualifications."  iFreedom Opp. at 3-4.  The mediator's information is available in the public domain, and iFreedom actually mediated in front of at least one of them.  Additionally any argument that mediators approved by this Court or the Southern District of New York are unqualified is unfounded.

[13] Response of Security National Mortgage Company to the Motion of Lehman Brothers Holdings Inc. for Leave to Amend and Extend the Scope of the Alternative Dispute Resolution Procedure Orders for Indemnification Claims of the Debtors Against Mortgage Loan Sellers [Dkt. No. 58956].

> Objection:    New York Is an Inconvenient
> Venue for the Mediation to Take Place

45.    Response:    Certain Objectors complain that parties should agree on the location of mediation, rather than requiring mediation in New York.  As a threshold matter, such objections ignore that the Indemnification ADR Procedures are consistent with the principle of centralizing bankruptcy disputes to one forum.  *See In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997); *see also iFreedom Direct Corp. v. Lehman Bros. Holdings Inc.*, 2017 WL 3671573, at *6 (D. Utah Aug. 24, 2017) (dismissing declaratory judgment action against LBHI because the Bankruptcy Court provided a better forum for resolution); *Guaranty Bank v. Lehman Bros. Holdings Inc.*, [No. 2:15-CV-00549, Dkt. No. 32], at 3 (E.D. Wis. May 20, 2016) (same); *Gateway Mortg. Grp., LLC v. Lehman Bros. Holdings Inc.*, [No. 4:16-CV-02123, Dkt. No. 32] (S.D. Tex. Sept. 13, 2016) (same), *aff'd* 694 F. App'x 225 (5th Cir. 2017); *Sec. Nat'l Mortg. Co. v. Lehman Bros. Holdings Inc.*, 2016 WL 6396343, at *8–11 (Del. Super. Ct. Aug. 24, 2016) (same).  The burden imposed on the Plan Administrator to mediate with thousands of Sellers in multiple occasions far outweighs the minimal burden on the Sellers from mediating their limited number of disputes in New York.  And, contrary to iFreedom's assertion, the Plan Administrator does not have vastly superior resources, as its purpose is to reduce costs and maximize distributions to creditors.

46.    In connection with this argument, certain Objectors also ask that Sellers be allowed to appear at mediation via telephone or video conference.  The Plan Administrator has been involved with dozens of mediations in connection with the ADR Order, and hundreds of other mediations since it filed for bankruptcy, and in its experience, video conference mediations are far less effective and often a waste of time and resources.  Parties engage in more meaningful discussions when the mediator communicates in person and opines on the value of claims.  And,

17

the idea that the parties could meaningfully engage with a mediator over the telephone is unfounded, as nuances like tone and body language would be absent.

47.    Finally, it makes little sense for a mediator and the Plan Administrator to travel to dozens of locations, along with a team of professionals, to mediate with different parties.  The cost and inconvenience of coordinating such a massive logistical challenge for the Plan Administrator is far greater than what is required of one Seller for one mediation.

> Objection:    The Mediator Can Unilaterally Select a Mediation
> Date Without Regard to the Seller's Availability,
> and the Sellers Must Pay a Deposit Upon Request

48.    iFreedom states that "[p]aragraph 8(f) permits the mediator to unilaterally select a mediation date without regard to iFreedom's availability."  iFreedom Opp. at 4.  This statement misconstrues that paragraph.  Paragraph 8(f) states that "if the parties are unable to agree on a date for the mediation, the mediator will fix a date at his or her discretion."  This proposed amendment responds to the Plan Administrator's experience with the initial ADR Order, where Sellers would claim they had no availability for long extended periods of time to avoid mediating.  This paragraph is not intended to permit the mediator fix a date without regard for legitimate scheduling conflicts.

49.    iFreedom also argues that "[p]aragraph 15" unfairly "requires iFreedom to pay an unspecified deposit to the unilaterally selected mediator within 10 days and failure to do so would subject iFreedom to sanctions."  *Id.*  First, as explained below, Sanctions can only be entered if the Court determines that *either party* is not acting in good faith.  Second, the requirement that a party pay a deposit upon request within 10 days was added for the same reason discussed in ¶ 32 above.  In the initial ADR Order, Sellers would refuse to pay a mediators deposit in an attempt to circumvent participating in mediation.  A Seller will, of

course, be informed of the amount of the deposit during the process of selecting the mediator, and any legitimate financial concerns will be considered during scheduling.  Again, Sanctions can only be imposed if the Court finds a party was not participating in good faith.

Objection:      Costs and Fees Should Be Incurred by Debtors

50.    Response:      Some objectors contend that all costs and mediator fees should be incurred by the Plan Administrator as it is the party requesting mediation.  Under the American Rule, absent statutory authority, attorneys' fees, costs and expenses are usually the burden of each party; consequently, mediating parties are not entitled to shift the costs and fees of mediation to the other party.  *See Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (noting that under the "American Rule," non-taxable costs, including "mediation services" are borne by each party absent statutory authority to the contrary) (citation omitted); *Tiedel v. Nw. Mich. Coll.*, 865 F.2d 88, 93-94 (6th Cir. 1988) (reversing an award of mediation costs and attorneys' fees to the prevailing party at trial arising from a local rule that shifted fees and expenses if the prevailing party was also successful in mediation; district court lacked authority to ignore the American Rule to make mediation more meaningful).  Such treatment is appropriate considering that all parties, including the Sellers, can benefit from good faith participation.

Objection      The Plan Administrator Can Remove a
Proceeding to the Court Without Any Basis in Law

51.    iFreedom argues that "[p]aragraph 12 may be construed to vest LBHI with unfettered ability to remove a proceeding to this Court without regard to applicable law.  LBHI should not have any greater rights than those afforded under existing legal authority."  iFreedom Opp. at 4.  Other Objectors make a similar objection.  *See* Acre Opp. at 13 ("Any Other Actions by Sellers in Other Courts Must be Governed by Applicable Law").

19

52.     Objectors misconstrue the relevant paragraph.  Paragraph 12[14] in question states:

> Removal. If a Seller has commenced any action or proceeding in any other court or forum, or commences any other action or proceeding in any other court or forum following service upon it of an Indemnification ADR Package, *LBHI may seek to remove* to this Court any such lawsuit, proceeding, or claim and to defend or take action in any such other court or proceeding to protect LBHI's creditors, despite the incomplete status of the steps prescribed under the Indemnification ADR Procedures.

The Plan Administrator's ability the "seek to remove" an action to this Court does not afford the Plan Administrator "greater rights than those afforded under existing legal authority."  The paragraph only allows the Plan Administrator to seek to remove an action that is incomplete under the Indemnification ADR Procedures in response to a Seller commencing an action against the Plan Administrator.  It does not grant the Plan Administrator the ability to have a proceeding heard before this Court without regard to applicable law.  This is based on experience.  As, in each of the four cases where a Seller sought to have an out-of-district court hear the Indemnification Claims instead of this Court, the other court applied the law applicable in that jurisdiction (and concluded that the case should be centralized and heard in this Court).

Objection:     The Plan Administrator Will Unfairly Wield
               Sanctions Against the Sellers Without Any Recourse

53.     Response:     iFreedom argues that "[p]aragraph 10 appears to permit the Court to enter sanctions without due process based solely on a 'report' from the mediator."  iFreedom Opp. at 4.  This argument misstates when sanctions can be entered.

54.     Sanctions can only be entered "[i]f, *after notice and a hearing*, the Court determines [either party] has not complied with the Indemnification ADR Procedures *in good faith*," that party may be subject to Sanctions.  Amended ADR Order ¶ 12 (emphasis added).  If a

---

[14] Paragraph 14 in the Amended ADR Order.

mediator issues a report that a party is not acting in good faith, the Court can simply schedule a hearing without a motion from the party.  This does not mean that the Court can enter Sanctions based solely on the mediator report; the other party is afforded a hearing where it can dispute the contents of the mediator report.

Objection:        The ADR Order Contains Disputed Findings and Conclusions

55.    Some Objectors claim that the ADR Order makes disputed findings.  As noted, except with respect to the Court's authority to enter the Amended ADR Order, there are no findings or conclusions that prejudice the Sellers in any future or current litigation.  As noted, the ADR Order expressly provides as follows:  "The parties' participation in the Indemnification ADR Procedures set forth herein, including the Notice/Response Stage and the Mediation Stage, shall not cause either LBHI or any individual Seller to waive or release any claims defenses or remedies that the individual parties would otherwise hold."  Amended ADR Order ¶ 15.  The language sufficiently protects the Sellers.

Objection:        Certain Sellers Were Not Served

56.    Certain Objectors allege that some "Objectors were never even properly served this Motion" and identify a number of Sellers.  *See* Acre Opp. at 3 n.4.  However, other than stating that "[o]n information and belief in consultation with the principal for each Objector" those Objectors were not served, counsel fails to explain why it believes they were not properly served.  The Plan Administrator used the most recent addresses it had for service, satisfying the notice requirements.  Each of those Objectors appears on the affidavit of service for the Motion [Dkt. No. 58876], has received notice of the Motion (since it is objecting to it) and at least three entities listed were served with the Motion through the same counsel which is objecting.  *See id.* Without more, this argument is meritless.  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,

21

301 F.3d 54, 57-58 (2d Cir. 2002) ("In New York, a process server's affidavit of service

establishes a prima facie case of the account of the method of service, and thus, in the absence of

contrary facts, we presume that [the party] was properly served . . . .").

## CONCLUSION

WHEREFORE, for the reasons set forth above, LBHI respectfully requests that the Court

(i) overrule the objections to the Motion; (ii) grant the Motion; and (iii) grant such other and

further relief as the Court may deem just and appropriate.

Dated:          New York, New York
                October 26, 2018

                                        Respectfully submitted,

                                        /s/  William A. Maher
                                        William A. Maher
                                        James N. Lawlor
                                        Paul R. DeFilippo
                                        Adam M. Bialek
                                        Mara R. Lieber
                                        WOLLMUTH MAHER & DEUTSCH LLP
                                        500 Fifth Avenue
                                        New York, New York 10110
                                        Telephone:  (212) 382-3300
                                        Facsimile:   (212) 382-0050

                                        -and-

                                        Michael A. Rollin
                                        Maritza Dominguez Braswell
                                        FOX ROTHSCHILD LLP
                                        101 Park Avenue, 17th Floor
                                        New York, New York 10178
                                        Telephone: (212) 878-7900
                                        Facsimile: (212) 692-0940

                                        *Counsel for Lehman Brothers Holdings Inc.*