WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo
James N. Lawlor
Adam M. Bialek
Mara R. Lieber

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | **Chapter 11** |
| Debtors. | **Case No. 08-13555 (SCC)** |
| LEHMAN BROTHERS HOLDINGS INC., | **Adv. Proc. No. _____** |
| Plaintiff, | |
| -against- | |
| SIERRA PACIFIC MORTGAGE COMPANY, INC., | |
| Defendant. | |

**ADVERSARY COMPLAINT**

Plaintiff Lehman Brothers Holdings Inc. ("LBHI"), the Plan Administrator under the

Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its

Affiliated Debtors (the "Plan"), for its Complaint against Defendant Sierra Pacific Mortgage

Company, Inc. ("Defendant") alleges upon knowledge as to itself and its own conduct, and upon

information and belief as to all other matters, as follows:

**NATURE OF ACTION**

1.       LBHI seeks to enforce its right to contractual indemnification for liabilities,

losses, damages, claims, judgments and any other costs, fees and expenses LBHI incurred as a

result of Defendant's sale and/or submission of defective mortgage loans in breach of

Defendant's representations, warranties, obligations, and/or covenants and/or for which LBHI

incurred liability due to Defendant's acts, failures to act and/or omissions (the "Defective

Loans").

2.       In reliance on Defendant's promises, covenants, and representations and

warranties, LBHI securitized certain loans.  In connection with the securitizations, which were

marketed and sold to third party investors, LBHI made certain representations and warranties

regarding the quality and characteristics of certain of the loans that were coextensive with those

made by Defendant.  LBHI retained the right to seek indemnification from Defendant in the

event it became liable for certain indemnification events.  After the trustees for hundreds of trusts

(the "RMBS Trustees") allegedly discovered that the mortgage loans breached certain of those

representations and warranties, the RMBS Trustees filed claims in LBHI's bankruptcy case for

losses suffered on certain loans.  On March 15, 2018, this Court entered the Order Estimating

Allowed Claim Pursuant to RMBS Settlement, dated March 15, 2018 (ECF No. 57785) (the

"RMBS Order") resolving the majority of the claims.  LBHI also settled several other RMBS

2

Trustee claims as permitted by the Plan.[1]

3.      By this action, LBHI seeks to recover money damages from Defendant for the indemnification claims.

## PARTIES

4.      On September 15, 2008, Plaintiff LBHI commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  LBHI is a Delaware corporation with its principal place of business in New York, New York.

5.      Defendant is organized in and does business within the United States.

## JURISDICTION AND VENUE

6.      This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      This Court has subject-matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and as the matter has a close nexus with the Plan, which was confirmed by Order of the Bankruptcy Court, dated December 6, 2011 (the "Confirmation Order"), and became effective on March 6, 2012.  The Court has retained post-confirmation jurisdiction over this matter pursuant to section 14.1 of the Plan and paragraph 77 of the Confirmation Order.

8.      Venue is proper under 28 U.S.C. §§ 157(a), 1391, 1408, and 1409 because the claims arise out of pre-petition contracts and are asserted as part of the administration of the estate as set forth in the Plan, and because a substantial part of the acts or omissions giving rise to the claims occurred within the district, including the underlying agreements and loan

---

[1] *See* RMBS Trust Settlement Agreement, entered into as of June 25, 2018, between LBHI and Wilmington Trust National Association; Allowed Proof of Claim numbers:  720000, 720001, 720002, 720003, 720004, 720005, 720006, 720007, 720008, 720009, 720010, 720011, 720012, 720013, 720014, 720015, 720016, 720017, 22773.04, 24792, 24810, 720020, 720025, 720021, 720024, 720022, 720023, 720018, 720019.

transactions, and because the loss was suffered within the district.

9.      This Court has personal jurisdiction over Defendant under Rule 7004(f) of the

Bankruptcy Rules.  In addition, this Court has personal jurisdiction over Defendant because

Defendant is organized in and does business within the United States, and because the

transactions giving rise to this controversy occurred in the United States.

## FACTUAL BACKGROUND

10.      Prior to commencement of these case, LBHI engaged in the purchase and sale of

mortgage loans directly or through affiliates, including Lehman Brothers Bank, FSB ("LBB"),

then securitized the loans, which were then marketed and sold to third party investors.

11.      At all relevant times, Defendant engaged in mortgage origination, as well as the

sale of mortgage loans on the secondary market to entities such as LBB and LBHI.

### A.      The Governing Agreements

12.      This dispute arises out of Defendant's sale of residential mortgage loans to

LBHI's assignor, LBB, under the Loan Purchase Agreement with LBB (the "LPA");[2] and

Defendant's submission of residential mortgage loans to LBHI's assignor, LBB, under one

Broker Agreement with LBB (the "Broker Agreement").[3]

13.      The dates of the relevant LPA and Broker Agreement, are listed in Exhibit A

hereto.

14.      The LPA specifically incorporates the terms and conditions of the Seller's Guide

of loan administrator, Aurora Loan Services LLC (the "Seller's Guide," together with the LPA

---

[2] Although the language of certain sections referenced throughout this Complaint may vary slightly from LPA to LPA, it is generally consistent in all material respects.

[3] The operative Broker Agreement for each of the Defective Loans is the version in effect at the time the Defendant sold the loan to LBB.  Although the language of certain sections referenced throughout this Complaint may vary slightly from Broker Agreement to Broker Agreement, it is generally consistent in all material respects.

and Broker Agreement, the "Agreements") which sets forth additional duties and obligations of Defendant.[4] The Seller's Guide in its entirety is valid and binding on Defendant.

15.    The Agreements set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery, and conveyance of the mortgage loans and mortgage loan documents.

16.    The Agreements also set forth Defendant's duties and obligations regarding underwriting; representations and warranties concerning the parties and individual mortgage loans purchased, sold or submitted; and Defendant's indemnification obligations.

17.    Pursuant to the Agreements, Defendant sold and/or submitted Defective Loans to LBB that resulted in LBHI being exposed to and incurring liability, as described further below.

18.    The parties agreed that Defendant's obligations would extend to any subsequent purchasers and/or assignees, such as, in this case, LBHI. The Seller's Guide defines the "Purchaser" as LBB and, among others, its "successors and/or assigns." *See* Seller's Guide § 8.

19.    The Broker Agreement provides that LBB as the "Lender, in its sole discretion, may assign this Agreement from time to time." *See e.g.,* Broker Agreement § 19.

20.    In conjunction with the sale by LBB to LBHI of the Defective Loans, LBB assigned to LBHI all of its rights and remedies under the Agreements pertaining to the loans.

21.    Further, the Seller's Guide provides that LBHI, as a subsequent holder of any mortgage loan, "shall be a third party beneficiary" of the LPA. *See* Seller's Guide § 711.

**B.    Defendant's Representations Under the LPA**

22.    Accordingly, LBHI as the "assignee" and third-party beneficiary of the LPA, and

---

[4] The operative Seller's Guide for each of the Defective Loans is the version in effect at the time the Defendant sold the loan to LBB. Although the language of certain sections referenced throughout this Complaint may vary slightly from Seller's Guide to Seller's Guide, it is generally consistent in all material respects.

as "subsequent holder" of the loans, is entitled to all the benefits of the Agreements, including the right to contractual indemnification for Defective Loans.

23.    With respect to each of the loans sold to LBHI (as, among other things, LBB's assignee) under the LPA, Defendant made a number of representations, warranties, and covenants concerning the quality, characteristics, and underwriting of the mortgage loans; the property securing the mortgage loans; and the borrowers.

24.    Specific examples of Defendant's representations, warranties and covenants include, but are not limited to, the following:

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading. Seller's Guide § 703(1).

> Seller . . . has duly and faithfully complied with and will continue to comply with: (i) all applicable laws, rules, regulations, decrees, pronouncements, directives, orders and contractual requirements with respect to the origination, closing, underwriting, processing and servicing of each Mortgage Loan . . . . Seller's Guide § 703(8).

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Seller's Guide § 703(12).

> There is no default, breach, violation or event of acceleration existing under the Mortgage or the Note and, no event has occurred or condition exists that, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration and neither Seller nor its predecessors has waived any default, breach, violation or event of acceleration. Seller's Guide § 703(18).

The Mortgage Loan has been originated and processed by Seller or Seller's correspondent in accordance with, and conforms with, the terms of this Seller's Guide and the Loan Purchase Agreement, and the Mortgage Loan has been underwritten in accordance with Underwriting Guidelines in effect as of the date of the Delivery Commitment applicable to the Mortgage Loan. The Mortgage Loan complies with all the requirements of the related Program Profile applicable to such Mortgage Loan . . . .  Seller's Guide § 703(21).

The Mortgaged Property is lawfully occupied under applicable law, unless properly disclosed to Purchaser.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property, or with respect to the use and occupancy of the same (including, without limitation, certificates of occupancy and fire underwriting certificates), have been made or obtained by Seller or Seller's correspondent from the appropriate authorities.  The Mortgagor represented at the time of origination of the Mortgage Loan that the Mortgagor would occupy the Mortgaged Property as the Mortgagor's primary residence, if applicable.  Seller's Guide § 703(24).

Notwithstanding anything contained elsewhere in this Seller's Guide or the Loan Purchase Agreement, Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with each Mortgage Loan comply with applicable federal and state law, including without limitation, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 as applicable, and the requirements of Fannie Mae or Freddie Mac and the Seller's Guide and were conducted and delivered prior to approval of the Mortgage Loan application by either (i) in the case of an appraisal, by a qualified appraiser, duly appointed by the Seller, or (ii) a valuation method meeting the requirements of the Seller's Guide.  The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate.  Any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property has no interest, direct or indirect, in the Mortgaged Property or in any security thereof.  The compensation of any appraiser, inspector or other real estate professional engaged in the valuation of the Mortgaged Property was not affected by the approval or disapproval of the Mortgage Loan.  Seller's Guide § 703(36).

25.    To the extent Defendant was also the underwriter of certain loans as permitted

under the Seller's Guide or other applicable agreements, Defendant additionally represented,

warranted and covenanted in Section 717(1) of the Seller's Guide that with respect to such loans:

> All underwriting performed by Seller hereunder shall be in strict compliance with the underwriting guidelines and product descriptions contained in the Seller's Guide and such other guidelines and requirements as may be provided to Seller in writing from time to time.

26.     Defendant represented and/or warranted that it had the ability to perform its

obligations under, and satisfy all requirements of, the LPA.  *See* Seller's Guide § 702(5).

27.     LBHI (as, among other things, LBB's assignee) relied upon the representations

and warranties contained in the Agreements in purchasing the loans.  Specifically, Section 701 of

the Seller's Guide provides that:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

**C.      Defendant's Indemnification Obligation Under the LPA**

28.     Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee)

from liabilities, claims, judgments, losses and expenses it might sustain as a result of the

Defective Loans, including attorneys' fees.  Section 711 of the Seller's Guide, entitled

"Indemnification and Third Party Claims," provides, in pertinent part, as follows:

> In addition to any repurchase and cure obligations of Seller, . . . Seller shall indemnify Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement by

any agent, employee, representative or officer of Seller or Seller's correspondent.  In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorney's fees of Purchaser incurred in enforcing Seller's obligations hereunder . . . .

**D.     Defendant's Representations Under the Broker Agreement**

29.     With respect to each of the loans submitted under the Broker Agreement, Defendant made a number of representations, warranties, and covenants concerning the quality, characteristics, and underwriting of the mortgage loans; the property securing the mortgage loans; and the borrowers of the mortgage loans.

30.     Specific examples of Defendant's representations, warranties and covenants include, but are not limited to, the following:

> Broker has made diligent inquiry into all facts and circumstances in making the loan, including all material representations and warranties of the borrower, and to Broker's knowledge, none of the statements, information, or documentation included in the loan application, underwriting and closing packages contain any false or misleading statements or omit material facts necessary to make such statements accurate and not misleading. After review of the entire loan application package and closing documents . . . Broker has no knowledge of nor any reason to know of any fraudulent information or documentation present in the loan application package, closing documents or in the origination process used to generate the loan application package or closing documents.  Broker Agreement § 8(g).

> Broker has no knowledge nor any reason to know of any circumstance or condition which might indicate that the appraisal is incomplete or inaccurate or that the value of the Property might not be at least the amount reported therein, or any circumstances or conditions with respect to the Property, the borrower or the borrower's credit that could reasonably be expected to cause private institutional investors to regard the loan as an unacceptable investment or cause the loan to become delinquent, or adversely affect the value or marketability of the loan.  Broker Agreement § 8(h).

> Broker has complied with all terms, conditions, and requirements of Lender's Guidelines and this Agreement, and with Applicable Law

relating to the loan application process. . . . Broker Agreement §
8(k).

31.     Defendant represented and/or warranted that it had the ability to perform its

obligations under, and satisfy all requirements of, the Broker Agreement.

32.     Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee)

from liabilities, claims, judgments, losses and expenses it might sustain as a result of the

Defective Loans, including attorneys' fees.  Section 9 of the Broker Agreement, entitled

"Indemnification," provides, in pertinent part, as follows:

> In addition to Lender's rights and remedies under Applicable Law
> (whether arising at law or in equity), Broker shall indemnify and
> hold Lender, its successors and assigns, and their respective officers,
> directors, employees. shareholders, members, agents, contractors,
> affiliates and subsidiaries (collectively, the "Lender Indemnitees")
> harmless from and against, and shall reimburse Lender Indemnitees
> with respect to, any and all claims, demands, losses, damages,
> interest, penalties, fines, forfeitures, judgments and expenses
> (including, without limitation, reasonable fees and disbursements of
> counsel, and court costs) (any of the foregoing hereinafter referred
> to as a "Claim"), resulting from, relating to or arising out of, whether
> the result of negligent or intentional conduct or otherwise: (i) any
> breach of any representation or warranty made by Broker pursuant
> to this Agreement or Lender's Guidelines: (ii) any breach or failure
> to perform any covenant or obligation of Broker in this Agreement
> or Lender's Guidelines. . . .

33.     The Broker Agreement also provides for the "prevailing party" to recover

attorneys' fees incurred to enforce the Broker Agreement.  Section 18 of the Broker Agreement,

entitled "Attorneys' Fees," provides as follows:

> If any action or proceeding is brought for the enforcement of this
> Agreement, or because of an alleged dispute, breach, default, or
> misrepresentation in connection with any of the provisions of this
> Agreement, the successful or prevailing party or parties shall be
> entitled to reasonable attorneys' fees and other costs incurred in that
> action or proceeding, in addition to any other relief to which it or
> they may be entitled.

10

E.      **LBHI's Settlement with RMBS Trustees**

34.      When LBB acquired loans from Defendant and others, it typically did not

permanently hold those loans on its books.  The loans it acquired from Defendant and other

entities, including Defective Loans, were sold to LBHI, and then packaged for securitization.

35.      In connection with such securitizations, LBHI relied on information that

Defendant provided to LBB, and it made representations and warranties to the securitization

trusts, based, in part, on the representations Defendant made to LBB.

36.      The agreements governing the securitizations provide that the applicable RMBS

Trustee may seek contractually defined repurchases of loans in the event certain breaches of

representations and warranties occurred.

37.      Eventually, the RMBS Trustees discovered breaches of representations,

warranties and/or covenants in the Defective Loans.

38.      The RMBS Trustees filed claim to recover for losses on the Defective Loans and

other loans sold to LBB.

39.      Many of the loans at issue in the claims, including the loans in Exhibit B, were

alleged to contain defects which caused LBHI to incur losses, judgments, costs, expenses,

attorneys' fees, and liability to the RMBS Trustees.

40.      LBHI was forced to defend against such allegations and eventually settle with the

RMBS Trustees.

41.      LBHI entered into a settlement agreement with the RMBS Trustees, under which

it agreed to seek estimation of the liability underlying the claims in a proceeding before the

Bankruptcy Court (the "Estimation Proceeding").  In that Estimation Proceeding, the RMBS

Trustees sought damages of over $11.4 billion in damages based upon losses flowing from the at

issue loans.  After the conclusion of the lengthy and highly contested Estimation Proceeding, for

which LBHI provided notice of that proceeding to the Defendants, the Court entered the RMBS

Order allowing a claim in favor of the RMBS Trustees.  LBHI also settled several other RMBS

Trustee claims in the course of business its bankruptcy case as permitted by the Plan.[5]

42.    LBHI incurred liability, expenses, costs, losses, judgments, and attorneys' fees to

the RMBS Trustees as a result of defects, including but not limited to, defects concerning the

quality and characteristics of the loans, the creditworthiness of the borrowers, the characteristics

of the collateral, the intended and actual occupancy status of the properties, compliance with

appraisal standards and lending regulations, application of underwriting guidelines and the

collection and review of the loan application and supporting documentation, and documentation

deficiencies.

43.    As it concerns Defendant specifically, Exhibit B attached hereto identifies each of

the at issue loans in connection with the RMBS Order, and provides a non-exclusive list of the

defects alleged by the RMBS Trustees on those loans.  LBHI incurred liability, expenses, losses,

judgments, attorneys' fees, and other costs as a result of the Defective Loans.  A general

description of the defects identified in Exhibit B is included in Exhibit C attached hereto.

44.    LBHI made representations, warranties, obligations and/or covenants to the

RMBS Trustees that were coextensive with those made by Defendant, and LBHI incurred

liability to the RMBS Trustees as a result of Defendant's acts, failures, omissions, and breaches

of its representations, warranties, obligations, and/or covenants.

**F.    Defendant's Obligation to Indemnify LBHI**

45.    Defendant agreed to indemnify LBHI (as, among other things, LBB's assignee)

---

[5] *See* RMBS Trust Settlement Agreement, entered into as of June 25, 2018, between LBHI and Wilmington Trust National Association; Allowed Proof of Claim numbers:  720000, 720001, 720002, 720003, 720004, 720005, 720006, 720007, 720008, 720009, 720010, 720011, 720012, 720013, 720014, 720015, 720016, 720017, 22773.04, 24792, 24810, 720020, 720025, 720021, 720024, 720022, 720023, 720018, 720019.

from liabilities, claims, judgments, losses, attorneys' fees, and expenses it might sustain as a result of the Defective Loans.  *See* Seller's Guide § 711; Broker Agreement § 9.

46.    Pursuant to the Agreements, the laws of the State of New York govern this action.

47.    All conditions precedent to bringing this action have been met, occurred or have been waived.

## FIRST CLAIM FOR RELIEF

## (Contractual Indemnification)

48.    LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

49.    The Agreements are valid and enforceable contracts that are binding upon Defendant.

50.    LBHI and/or LBB has substantially performed all of their obligations under the Agreements.

51.    Defendant owes LBHI indemnity for its liabilities, losses, claims, attorneys' fees, judgments and any other costs, fees and expenses as to the Defective Loans.

52.    Defendant's breaches of the Agreements and other acts and/or omissions as to the Defective Loans resulted in LBHI incurring liability and/or losses in an amount to be determined at trial, plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs, and all other fees and costs provided by the Agreements.

## PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against Defendant

a)    For all damages arising from or relating to Defendant's obligations under the
        indemnification provisions of the Agreements, in an amount to be determined at

13

trial;

b)   For recoverable interest;

c)   For the costs and expenses incurred by LBHI in enforcing Defendant's

obligations under the Agreement, including attorneys' fees and costs and any

expert witness fees incurred in litigation; and

d)   Providing for such other relief as the Court deems just and proper.

Dated: New York, New York
       November 15, 2018

                                                  /s/ William A. Maher
                                                  William A. Maher
                                                  Paul R. DeFilippo
                                                  James N. Lawlor
                                                  Adam M. Bialek
                                                  Mara R. Lieber

                                                  WOLLMUTH MAHER & DEUTSCH LLP
                                                  500 Fifth Avenue
                                                  New York, New York 10110
                                                  Telephone:  (212) 382-3300
                                                  Facsimile:   (212) 382-0050

                                                  *Counsel for Lehman Brothers Holdings Inc.*