David R. Seligman, P.C.
Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Mark McKane, P.C. (admitted *pro hac vice*)
Kevin Chang (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

*Counsel to the Joint Liquidators*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al. | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

**NOTICE OF JOINT LIQUIDATORS' MOTION FOR AN ORDER ENFORCING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTIONS**

**PLEASE TAKE NOTICE** that a hearing on the *Joint Liquidators' Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for Purposes of Distributions* (the "***Motion***") will be held before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "***Court***"), One Bowling Green, Courtroom No. 623, New York, New York 10004-1408, on **February 27, 2019, at 10:00 a.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court (a) electronically in accordance with

General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004; (ii) Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 606054, Attn:  David R. Seligman, P.C. and Joseph M. Graham and Kirkland & Ellis LLP, 555 California Street, San Francisco, California 94104, Attn:  Mark McKane, P.C. and Kevin Chang, counsel to the joint liquidators for LB GP No. 1 Ltd., Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP (the "*Joint Liquidators*"); and (iii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Andrea B. Schwartz, Esq.; so as to be so filed and received by no later than **February 14, 2019, at 4:00 p.m. (prevailing Eastern Time)**.[1]

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Joint Liquidators.

---

[1]    Pursuant to paragraph 32 of the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures*, the objection deadline would be February 20, 2019, at 4:00 p.m., prevailing Eastern Time, provided that the objection deadline may be earlier if a motion is filed more than 17 days before the objection deadline.  The Joint Liquidators have moved up the objection deadline by 6 days in an effort to provide the Court additional time to review the pleadings in advance of the February 27, 2019, omnibus hearing.

Dated: January 22, 2019
New York, New York

/s/ David R. Seligman, P.C.

David R. Seligman, P.C.
Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email: david.seligman@kirkland.com
           joe.graham@kirkland.com

-and-

Mark McKane, P.C. (admitted *pro hac vice*)
Kevin Chang (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500
Email:  mark.mckane@kirkland.com
           kevin.chang@kirkland.com

*Counsel to the Joint Liquidators*

**Hearing Date and Time: February 27, 2019, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: February 14, 2019, at 4:00 p.m. (prevailing Eastern Time)**

David R. Seligman, P.C.
Joseph M. Graham (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Mark McKane, P.C. (admitted *pro hac vice*)
Kevin Chang (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

*Counsel to the Joint Liquidators*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) Case No. 08-13555 (SCC) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## JOINT LIQUIDATORS' MOTION FOR AN ORDER ENFORCING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTIONS

Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP (the "***Joint Liquidators***") hereby file this motion for an order enforcing the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* [Dkt. No. 23023-1] (the "***Plan***") and the order confirming the Plan [Dkt. No. 23023] (the "***Confirmation Order***") with respect to claims held by Lehman Brothers UK Capital Financing IV ("***LP IV***") and Lehman Brothers UK Capital Financing V ("***LP V***") for purposes of receiving distributions under the Plan. This motion is accompanied by the *Declaration of Mark McKane* (the "***McKane Decl.***"), filed herewith. In support of this motion, the Joint Liquidators respectfully state as follows.

## Preliminary Statement

1.     The Joint Liquidators were appointed on February 28, 2017, as the joint liquidators for LB GP No. 1 Ltd. (the "***General Partner***"), the general partner for five certain limited partnerships (the "***Partnerships***").  The Joint Liquidators' appointment was ratified by the General Partner's creditors on April 12, 2017.  Among the five Partnerships are LP IV and LP V, which are the subject of this motion.  The Joint Liquidators are charged with overseeing the liquidation of the General Partner and the winding up of all of the Partnerships, under the supervision of the English High Court (the "***English Court***").  Among the Joint Liquidators' chief responsibilities is the determination of the assets and liabilities of each of the Partnerships so that the Joint Liquidators can oversee distributions to each Partnership's stakeholders in accordance with the priorities set forth in the controlling Partnership Agreements and applicable English law.

2.     The Joint Liquidators have worked diligently to investigate and determine each Partnerships' assets.  Certain of the Partnerships' assets are tangible.  For example, LP IV and LP V hold cash received from Lehman Brothers Holdings Inc. ("***LBHI***" or the "***Plan Administrator***") in October 2017.  (*See* [Dkt. No. 58884], at 6.)  Certain of the Partnerships' assets are intangible.  For example, LP IV and LP V have valid subordinated notes claims against LBHI.[1]

3.     Likewise, the Joint Liquidators have sought to determine each Partnership's liabilities and the respective level of priorities of those who have an interest in the distribution of each Partnership's assets.  It was primarily for this reason that the Joint Liquidators participated in the briefing and oral argument in connection with the Plan Administrator's own motion [Dkt.

---

[1]    Moreover, certain of the other Partnerships have valid claims against LBHI's U.K.-affiliate, Lehman Brothers Holdings Plc, which are being addressed in that entity's insolvency proceedings.

No. 57036] for an order in aid of execution of the Plan. (*See* [Dkt. No. 57603] ("***Substitution***

***Motion***"); June 7, 2018, Hr'g Tr. 42:14–43:19.) The Court ruled on the Substitution Motion on

October 11, 2018, which provided the Joint Liquidators certainty as to the proper holders of the

preferred securities issued by the Partnerships (i.e., the "ECAPS"). (*See* [Dkt. No. 58884].)

4.     The Joint Liquidators also believe that LP IV and LP V may have claims against

(and possible liabilities owing to) Lehman Brothers Special Financing Inc. ("***LBSF***"). These

claims have been reflected by LBSF on its Schedules of Assets and Liabilities (the "***Schedules***").

Upon information and belief, these claims arose from two interest rate swap agreements between

LBSF and each of LP IV and LP V that were in existence as of LBSF's petition date (the

"***Swaps***"). In the Schedules, LBSF listed that it owed an unliquidated intercompany payable to

LP V under one Swap in the amount $26,808,640, and that LBSF held an intercompany

receivable against LP IV under the other Swap in the amount $15,386,252.

5.     The Joint Liquidators have little information in their own possession about the

Swaps. Without additional information, the Joint Liquidators cannot determine what claims may

exist with respect to the Swaps, even if that results in claims in favor of LBSF for the benefit of

LBSF's creditors. As part of their efforts to fulfill their obligations to determine the assets and

liabilities of the Partnerships as required by their mandate, the Joint Liquidators have attempted

on multiple occasions to obtain additional information and documentation from the Plan

Administrator and others about the Swaps.

6.     The Plan Administrator has informed the Joint Liquidators that the Plan

Administrator will not provide any information about the Swaps (presumably even if that may

result in amounts owed to LBSF). Specifically, the Plan Administrator stated that it does not

believe that LP IV and LP V have any valid claims on account of the Swaps because no proofs of

claim were filed at some as-yet-unspecified date during the chapter 11 cases, and thus there is no reason that the Plan Administrator should provide any information about the Swaps.

7.        But as discussed below, the Joint Liquidators respectfully submit that the Plan Administrator's position is incorrect.  Under the Court's bar date order, LP IV and LP V—the two relevant Partnerships here—were included on the list of "exempt entities" that were not required to file proofs of claim.  (*See* McKane Decl., Ex. B at 8.).  The Court's bar date order and the "exempt entities" list were never amended with respect to LP IV and LP V.  The Joint Liquidators are not aware of anything subsequent, whether in the Plan, the Confirmation Order, or otherwise, that explicitly overrode the bar date order to provide that, notwithstanding that order, LP IV and LP V were thereafter required to file a proof of claim by any particular date (especially with respect to claims previously scheduled by the Debtors).

8.        The Joint Liquidators have explained their position to the Plan Administrator; however, the Plan Administrator still takes the position that LP IV and LP V were required to file proofs of claim and refuses to provide any more explanation or cite to any particular provision of the Plan or court order.  The Joint Liquidators find this position concerning, because at the time of the bar date, in addition to LP IV and LP V being listed in the bar date order's "exempt entities" list, LBSF was certainly aware of the Swaps, having previously included them on the Schedules.  Moreover, as discussed below, after the bar date, LBHI allowed the Partnerships' corporate governance to lapse, resulting in the dissolution and striking of the General Partner from the U.K. Register of Companies, such that at the time of the Plan, the Confirmation Order, and the Plan's March 6, 2012, effective date (the "***Effective Date***")—and as a direct result of LBHI's own failure to act—no person was in a position to file the very proofs of claim on behalf of the Partnerships that the Plan Administrator now (incorrectly) claims should have been filed.

4

9.      The Joint Liquidators accordingly bring this motion to enforce the provisions of the Plan and Confirmation Order, and request that the Court order that the Swap claims of LP IV and LP V (the "*Swap Claims*") be treated as claims that are subject to the Plan's claims allowance, objection, reserve, and distribution provisions, on a going forward basis.  Importantly, the Joint Liquidators, who were appointed over five years after the Effective Date, wish to underscore that they certainly recognize the length of time that has passed since the Effective Date, and they do not bring this motion lightly.   Nevertheless, the Joint Liquidators: are appointed to wind-up the General Partner and are authorized by the English Court to wind-up the affairs of the Partnerships in their capacity as insolvency practitioners; have identified the Swap Claims as potential assets (and potential liabilities) of LP IV and LP V that were scheduled and exempted from the bar date order; have not received any information from the Plan Administrators about the Swap Claims (even if that results in claims for the benefit of LBSF); and have not been provided any explanation by the Plan Administrator as to why it has treated the Swap Claims as disallowed.  To that end, the Joint Liquidators bring this motion to obtain direction and certainty from this Court with respect to the Swap Claims and their treatment in these chapter 11 cases.

10.      The Joint Liquidators also recognize that the Plan Administrator has made sixteen distributions to date and that no reserve was established for the Swap Claims prior to those distributions.  The Joint Liquidators are not seeking that the Plan Administrator claw back or otherwise impact any previous distribution.  Instead, the Joint Liquidators are requesting that the Plan Administrator be required to address (and, if necessary, appropriately reserve for) the Swap Claims on a go-forward basis, pending their resolution as part of the claims allowance process in these cases.

## Jurisdiction and Venue

11.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Article XIV, Section 14.1(h) of the Plan.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).  The statutory bases for the relief requested in this motion are sections 105(a) and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").

## Background

### A.    Formation Of The Partnerships And Dissolution Of The General Partner.[2]

12.    Between 2005 and 2007, LBHI and its U.K. affiliate, LBH PLC, established the General Partner and the Partnerships to raise regulatory capital through the issuance of preferred securities in the form of Enhanced Capital Advantage Preferred Securities ("**ECAPS**") to investors.  As of September 15, 2008, LBHI was the sole member of the General Partner.  LBHI was also the ultimate parent for LB Investment Holdings Ltd., the Preferential Limited Partner for each of the Partnerships.

### B.    The Chapter 11 Filing and Bar Date Order.

13.    On September 15, 2008, LBHI and, shortly thereafter, several of its subsidiaries (collectively, the "**Debtors**") commenced these chapter 11 cases, including LBSF on October 3, 2008 (the "**Petition Date**").  The Debtors' chapter 11 cases were consolidated for administrative purposes.  On June 15, 2009, LBSF filed the LBSF Schedules, attached to the McKane Declaration as **Exhibit A**.  The Swap Claims were reflected in the LBSF Schedules, which reference a non-contingent, non-disputed, unliquidated intercompany payable to LP V in the

---

[2]    The Court recently summarized much of the relevant factual background for this motion in the *Memorandum Decision and Order on Motion in Aid of Execution of the Plan* [Dkt. No. 58884].

amount of $26,808,640, *see* LBSF Schedules, Schedule F, Rider at 2, and an intercompany receivable from LP IV in the amount of $15,386,252, *see id.*, Schedule B, Rider B-16 at 1. The Global Notes to the LBSF Schedules indicate that these payable and receivable amounts are calculated as of the Lehman Global Close on September 14, 2008. (*See id.* at 4.)

14.     On July 2, 2009, the Court entered an order [Dkt. No. 4271] (the "***Bar Date Order***"), which set September 22, 2009, as the general deadline by which to file proofs of claim (the "***Bar Date***"), with one exception pertinent here: entities appearing on the "Exempt Entities List," attached to the McKane Declaration as **Exhibit B**, "are **not** required to file a Proof of Claim on or before the Bar Date." (Bar Date Order at 3, 5.) The two Partnerships at issue here, "Lehman Brothers UK Capital Funding IV LP" (i.e., LP IV) and "Lehman Brothers UK Capital Funding V LP" (i.e., LP V), are identified on the Exempt Entities List. (*See* McKane Decl., Ex. B at 8.)

### C.     The De-Registration of the Partnerships.

15.     By January 21, 2010, all of the General Partner's directors and its corporate secretary had resigned from the company. LBHI, which was the sole member of the General Partner, and thus the only one in a position to appoint new directors or officers, did not replace any of the General Partner's directors or the corporate secretary. As a result of LBHI's inaction, on June 22, 2010, the General Partner was dissolved and stricken from the U.K. Register of Companies (a notice having previously been filed at Companies House on March 9, 2010, confirming the intention to strike the General Partner off the U.K. Register of Companies). After that date, no one had the authority to take action on behalf of the Partnerships.

### D.     The Plan and Confirmation Order.

16.     The Plan and the Confirmation Order entered on December 6, 2011, make no specific reference to the Partnerships. The Joint Liquidators have not been pointed to any

provision that explicitly alters the Bar Date Order carve-out relevant to the Swap Claims, or that specifically requires previously "Exempt Entities" LP IV and LP V to file proofs of claim notwithstanding the Bar Date Order. As previously mentioned, given the dissolution of LP IV and LP V, no one would have been in a position to file claims in connection with the Swap Claims as of the Effective Date in any event.

### E.    The Joint Liquidators' Investigation Into The Swap Claims.

17.    On June 20, 2016, Deutsche Bank, an ECAPS holder, filed an application to restore the General Partner to the U.K. Register of Companies, which went into effect on February 3, 2017. On February 28, 2017, LBHI placed the General Partner into creditors' voluntary liquidation under the relevant provisions of the Insolvency Act 1986 by passing a special resolution as its sole shareholder. The Honourable Justice Hildyard, sitting as a Judge in the English Court in London, ordered that pursuant to section 6(3) of the Limited Partnerships Act 1907, the affairs of the Partnerships be wound up by the Joint Liquidators in their capacity as insolvency practitioners. The Joint Liquidators' appointment as liquidators of the General Partner was subsequently ratified by the General Partner's creditors on April 12, 2017.

18.    Upon appointment, the Joint Liquidators began investigating the Partnerships' various assets and liabilities, including locating and reviewing the Partnerships' accounts and financial statements. These statements indicated that LP IV and LP V were parties to the Swaps, which the Joint Liquidators discovered also were identified in LBSF's Schedules. Upon identifying the Swaps, the Joint Liquidators wrote to Law Debenture Trust Corporation plc, which was the administrator that dealt with all Partnership activities that were regulated pursuant to the Financial Services and Markets Act 2000 in the U.K., to determine what information it had about the Swaps. The Joint Liquidators also wrote to Bank of New York Mellon, the principal paying and transfer agent in relation to the ECAPS, to see if it had any documentation about the

8

Swaps. Neither had any information on the Swaps. The Joint Liquidators also reviewed the documents provided by the Partnerships' auditor, Ernst & Young ("*EY*"), and identified indicative terms sheets for the Swaps. (*See* McKane Dec. Exh. C, Exh. D.) After further requests, EY provided additional information which included calculations of the Swaps' values for LP IV's and LP V's interim report and accounts, for the period ending May 31, 2008. (*See* McKane Dec. Exh. E at 11, Exh. F at 10.) The Joint Liquidators also contacted former directors about the Swaps, who were not able to provide any useful information. More recently, the Joint Liquidators contacted the Plan Administrator and its advisors in both the U.S. and the U.K. to locate further documentation relating to the Swaps, but nothing has been provided to date. Finally, the Joint Liquidators are liaising with the Joint Administrators of Lehman Brothers International (Europe) who control the U.K. Lehman archive to determine whether a search can be undertaken to locate documentation relevant to the Swaps.

19.     Based on the little information obtained to date, upon information and belief, LP IV was party to a 40-year non-call 5-year interest rate swap with LBSF (the "***LP IV Swap***"), attached to the McKane Declaration as **Exhibit C**. Upon information and belief, the notional amount of the Swap was €200,000,000, with a trade date of January 11, 2007, a settlement date of January 25, 2007, and a maturity date of April 25, 2047. *See id.* Upon information and belief, the interest rate on the fixed interest rate leg of the Swap is 5.75%, receivable annually on April 25 of each year from and following April 25, 2008, up to and including the termination date. *See id.* Upon information and belief, the interest rate on the floating interest rate leg of the Swap is 3 months EUROLIBOR + 0.79%, payable quarterly on the 25th of January, April, July, and October each year from and including April 25, 2007, to and including the termination date. *See id.*

9

20.     Further, upon information and belief, LP V was party to a 60-year non-call 5-year interest rate swap (the "***LP V Swap***"), attached to the McKane Declaration as **Exhibit D**.   Upon information and belief, the notional amount of the Swap was $500,000,000 USD, with a trade date of May 15, 2007, a settlement date of June 1, 2007, and a maturity date of June 1, 2067.  *See id.*  Upon information and belief, the interest rate on the fixed interest rate leg of the Swap is 6.90%, receivable annually on June 1 of each year from and including June 1, 2008, to and including the termination date.  *See id.*  Upon information and belief, the interest rate on the floating interest leg of the Swap is 3 month USD LIBOR 0.64%, payable quarterly on the 1st of March, June, September, and December over that same time frame.  *See id.*

21.     As noted above, the Joint Liquidators do not have any further information on the Swap Claims.  Without even basic information, for example, regarding whether the Swaps were terminated (and, if so, the termination date), the Joint Liquidators cannot begin to determine their ultimate value and whether there are resulting claims in favor of LBSF, LP IV, or LP V. Although  the  Joint  Liquidators'  investigation  remains  ongoing,  their  own  independent preliminary analysis indicates that LP IV's and LP V's Swap Claims may have values up to $187,037,060 and $612,934,864, respectively, assuming that the underlying Swaps are not terminated prior to maturity.  The Joint Liquidators have discovered no evidence that either party ever terminated the Swaps.  But if, for example, the Swaps were terminated on or shortly after the Petition Date, LP V's Swap Claim would be much lower, and LBSF might have a claim against LP IV.[3]

---

[3]   Pursuant to Article 11.1 of the Plan, all prepetition executory contracts between LBHI, LBSF, or any other debtor and another person or entity were deemed rejected on the Effective Date, except as otherwise set forth in Article 11.1.  The Joint Liquidators do not have information regarding whether the Swaps were terminated prior to the Effective Date.  If the Swaps were not terminated, upon information and belief, the Swaps would have been rejected as of March 6, 2012.

22.     After several months of independently attempting to obtain additional documents related to the Swaps and as noted above, the Joint Liquidators formally informed the Plan Administrator of the existence of the Swaps on August 7, 2018, seeking assistance and further information.  The Plan Administrator refused to provide any further information.  On August 24, 2018, out of an abundance of caution and although expressly stating that such claims did not need to be filed, the Joint Liquidators, on behalf of LP IV and LP V, attempted to file proofs of claim against LBSF (among other claims) in an effort to ensure that the Plan Administrator was aware of the potential amount of Partnership claims.  The Joint Liquidators did not seek to delay or otherwise affect the then imminent distribution number 16 to unsecured creditors under the Plan.

## Argument

23.     The Joint Liquidators, having been appointed by the English Court in their capacity as insolvency practitioners pursuant to section 6(3) of the Limited Partnership Act of 1907 to wind up the Partnerships, are responsible for identifying and realizing all of the Partnerships' assets, assessing the Partnerships' liabilities, repaying all of the Partnerships' outstanding debts, and allocating any remaining capital assets to interested stakeholders in the priority set forth in the governing Partnership Agreements.  The Joint Liquidators have been investigating the Partnerships' potential assets and liabilities since their appointment.  Over the last several months, the Joint Liquidators have sought to work cooperatively with the Plan Administrator in the hopes of reaching a consensual resolution regarding their information requests, and the parties and their advisors have exchanged numerous calls, emails, and letters during that time.  The Plan Administrator has continued to deny liability on account of the Swap Claims, asserting that they were extinguished for failure to file proofs of claim by some

11

unspecified date, but at a time when the General Partner was dissolved and the Partnerships had no manager to oversee their affairs due to LBHI's own inaction. The Joint Liquidators respectfully submit that the Plan Administrator's position is at odds with the Plan, the Confirmation Order, and the Bar Date Order. For all of the following reasons, the Joint Liquidators respectfully request that the Court grant this motion.

## I.   THE COURT SHOULD ENFORCE THE CONFIRMATION ORDER AND PLAN TO REQUIRE THE PLAN ADMINISTRATOR TO ACCOUNT FOR THE SWAP CLAIMS UNTIL THEIR ALLOWANCE IS DETERMINED.

### A.   The Court Has Jurisdiction To Enforce The Plan.

24.     Pursuant to the Confirmation Order, this Court retained exclusive jurisdiction to enforce the Confirmation Order and the Plan, and over all matters arising under or related to these chapter 11 cases. (*See* Confirmation Order, ¶ 77; Plan, Art. 14.1.) The Plan and the Confirmation Order contain mechanisms for the claims allowance process, including allowance, liquidation, reserves, and distribution procedures. (*See* Plan, Art. VIII ("Provisions Regarding … Distributions Under the Plan"), Art. IX ("Procedures for Treating Disputed Claims"); Confirmation Order, ¶¶ 40–45 ("Distributions and Reserves")). Moreover, any dispute over what claims needed to be filed (or did not need to be filed, as the case may be) pursuant to the Bar Date Order arises under the Bankruptcy Code because "it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Leco Enters.*, 144 B.R. 244, 248–49 (S.D.N.Y. 1992). Moreover, the Court retains jurisdiction to enforce its own orders, including the Confirmation Order and the Bar Date Order. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

12

### B.    Applicable Law

25.    Enforcing the Plan is appropriate because "a confirmed plan holds the status of a binding contract as between the debtor and its creditors."  *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998) (*citing McFarland v. Leyh (In re Texas Gen. Petroleum Corp.*), 52 F.3d 1330, 1335 (5th Cir. 1995); *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D. Pa. 1996)); *see also* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor.").

### C.    LP IV And LP V Were Not Required To File Proofs Of Claim To Preserve The Swap Claims.

26.    The Plan contains various mechanisms and procedures regarding claims against any of the Debtors (including LBSF), including allowance, liquidation, reserve, and distribution provisions.  (*See* Plan, Art. VIII ("Provisions Regarding … Distributions Under the Plan"), Art. IX ("Procedures for Treating Disputed Claims"); Confirmation Order, ¶¶ 40–45 ("Distributions and Reserves").)   LBSF is required to maintain appropriate reserves for disputed claims and make distributions on account of allowed claims.  (*See* Plan, Art. 8.4.)

27.    LP IV and LP V were not required to file proofs of claim against the Debtors under the Bar Date Order.  The Bar Date Order includes a carve-out from the proof of claim filing requirements for entities listed on the Exempt Entities List, on which both LP IV and LP V appear.  (*See* Bar Date Order at 3, 5 ("[T]he following persons or entities are **not** required to file a Proof of Claim on or before the Bar Date: [. . . ] any entity included on the Exempt Entities List[.]"); McKane Decl., Ex. B at 8.)   The Confirmation Order and the Plan do not specifically alter the carve-out included in the Bar Date Order with respect to the Swap Claims.

13

28.     In fact, the Plan and the Confirmation Order preserve the Swap Claims.   A "Claim" under the Plan is as defined under the section 101(5) of the Bankruptcy Code, which does not require that a proof of claim be filed.  (Plan, Art. 1.22.)  The Plan's allowance and dispute provisions then address the treatment of various claims.  (*See* Plan, Art. 1.4, Art. 1.46.) These provisions do not specifically state whether the claims of "Exempt Entities" are "allowed" or "disputed," where such claims were listed in the Schedules and where the Bar Date Order did not require the filing of a proof of claim.  But certainly nothing in the Plan explicitly eliminates the Swap Claims.

29.     The Debtors' actions during the confirmation process illustrate that, when the Debtors wanted to, they knew how to require certain originally-denominated Exempt Entities to have to file a proof of claim after the Bar Date, but they did not impose that requirement on LP IV and LP V.  Specifically, the Plan divides affiliates of the Debtors into two categories: "Non-Controlled Affiliates" and "Debtor-Controlled Entities."   (Plan, Art. 1.41, 1.108.)   A "Non-Controlled Affiliate" is defined as "an Affiliate of the Debtors that is not currently managed by a Debtor as of the Effective Date . . ."   (Plan, Art. 1.108.)   In contrast, a "Debtor-Controlled Entity" is defined as "a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor as of the Effective Date."  (Plan, Art. 1.41.)  At the time of the Confirmation Order and the Effective Date (and thereafter), LP IV and LP V were Non-Controlled Affiliates, given that their General Partner had been dissolved and stricken from U.K. Registry of Companies approximately eighteen months earlier and they were not managed by a Debtor on the Effective Date.  This position has been conceded by the Plan Administrator in the Substitution Motion.  (Substitution Motion ¶ 21 ("[T]he administration of the Chapter 11 Estates continues long after the Effective Date of the Plan and depends on the Plan

Administrator's continued operations including collecting on claims and interests in Non-Controlled Affiliates . . .")

30.     During the confirmation process, however, the Debtors included a "Schedule of Claims of Debtor-Controlled Entities" in the Plan Supplement (as defined in the Plan), which listed the prepetition claims of each Debtor-Controlled Entity against each of the Debtors that would be allowed under the Plan.  (*See* Confirmation Order ¶ 25.)   To the extent a Debtor-Controlled Entity did not have a claim listed on the schedule, that Debtor-Controlled Entity would not have a claim against any Debtors' estate, *even if that Debtor-Controlled Entity was previously listed on the Bar Date Order's Exempt Entities List*.  (*Id.*)  Thus, the Plan and Confirmation Order illustrate that at confirmation, the Debtors were focused on allowing or disallowing claims by certain Exempt Entities, *but only to the extent that those Exempt Entities were classified as a Debtor-Controlled Entity*.

31.     In contrast, LP IV and LP V were not Debtor-Controlled Entities on the Effective Date, under the terms of the Plan and the Confirmation Order.  At that time, the General Partner had been dissolved and stricken from the U.K. Register of Companies, and LBHI did not manage or otherwise control the General Partner.   There is simply nothing in the Plan or the Confirmation Order that explicitly disallows claims of Non-Controlled Affiliates as of the Effective Date who were previously listed on the Bar Date Order's Exempt Entities List, or that otherwise explicitly requires such Non-Controlled Affiliates to thereafter file claims by a particular date.

32.     Because LP IV and LP V's claims were not expressly disallowed or extinguished by virtue of the Confirmation Order and the Plan, the Bar Date Order carve-out still controls with respect to the Swap Claims.  Because LP IV and LP V are exempt from having to file a proof of

claim under the Bar Date Order, their Swap Claims are preserved without having to file a proof of claim at any time, before or after the Bar Date. (*See* Plan, Art. 1.4. (a "Claim" is "Allowed" under the Plan if it "is not Disputed").) The Court should accordingly enforce the Confirmation Order and the Plan with respect to the Swap Claims, which contain allowance, reserve, and distribution procedures regarding unresolved claims.

> **D.    The Plan Administrator Must Apply the Plan's Claim Provisions to the Swap Claims.**

33.    Given the lack of information provided by the Plan Administrator to the Joint Liquidators, the Joint Liquidators believe that on a going-forward basis the Plan Administrator must apply the Plan's claim provisions (including the dispute mechanism and reserve provisions) to the Swap Claims as timely filed claims, until such time as the parties can exchange information about the Swap Claims, attempt to reach a consensual resolution of the Swap Claims, or absent such resolution, seek adjudication of the Swap Claims by the Court. Notably, the Joint Liquidators are not seeking that the Plan Administrator claw back any previous distribution to create a reserve for the Swap Claims, and instead are seeking solely to have the Swap Claims addressed (and, if necessary, appropriately reserved for) on a going-forward basis.

34.    For example, the Confirmation Order provides that "[p]ursuant to Section 8.4 of the Plan, the Debtors shall reserve an aggregate amount equal to the Pro Rata Share of the Distributions that would have been made to each holder of a Disputed claim if such Disputed claim were an Allowed Claim against such Debtor[.]" (Confirmation Order ¶ 42; *see also* Plan, Art. 8.4.) A "Claim" under the Plan is as defined under the section 101(5) of the Bankruptcy Code. A Claim is "Allowed" under the Plan if it "is not Disputed." (Plan, Art. 1.4.) A Claim is "Disputed" if "any Claim proof of which was timely and properly filed . . . as to which a timely objection . . . has been interposed, which objection . . . has not been withdrawn or determined by

16

a Final Order." (Plan, Art. 1.46.)  Here, no objection has been filed with respect to the Swap

Claims, and no provision of the Plan or the Confirmation Order otherwise explicitly disallows

them, notwithstanding the Bar Date Order.

## II.   ENFORCING THE PLAN WILL NOT PREJUDICE THE PLAN ADMINISTRATOR'S ADMINISTRATION OF THE LBSF OR LBHI ESTATE.

35.    Although the Joint Liquidators' request for relief is supported—and should be

governed entirely—by the Bar Date Order, the Plan, and the Confirmation Order, the Joint

Liquidators separately note that enforcement of the Plan's express provisions will not result in

any prejudice to the Plan Administrators' administration of the LBSF or LBHI estates.  The relief

sought by the Joint Liquidators would only affect prospective distributions under the Plan.

36.    Moreover, the failure of the Debtors to alter the 2009 Bar Date Order carve-out

with respect to the claims of LP IV and LP V was entirely one of LBHI's own making.  After the

Petition Date, the Partnerships (at that time ultimately controlled by LBHI) never commenced

their own separate insolvency proceedings, unlike many of LBHI's other foreign affiliates and

subsidiaries.  (*See Debtors' Disclosure Statement for Third Amended Joint Chapter 11 Plan of

Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the

Bankruptcy Code*, Art. VI.F.4 ("Cross-Border Insolvency Protocol / Negotiations With Foreign

Debtors").)  Instead, LBHI remained the sole controlling shareholder of the General Partner of

the Partnerships.  At the time of the 2009 Bar Date Order, LP IV and LP V were indisputably

exempt from having to file a proof of claim under the Bar Date Order.  By 2010, the General

Partner's board and corporate secretary had resigned, and only LBHI, as the sole member of the

General Partner, had the power to appoint new directors, keep the General Partner from being

dissolved, and ensure that the Partnerships had proper fiduciaries managing their affairs (and

asserting claims on their behalf, if appropriate).  But LBHI took no action and allowed the

General Partner to dissolve and be stricken from the U.K. Register of Companies on June 22, 2010.  At the time of confirmation of the Plan on December 6, 2011, the Debtors could have provided in the Plan for the specific allowance or disallowance of the claims of LP IV and LP V (with appropriate notice and due process), as the Debtors did in the Plan Supplement for claims of certain Debtor-Controlled Entities that were previously listed on the Exempt Entities List, but they did not.

37.    Instead, the Debtors' inaction ensured that there was no oversight from a fiduciary or a court over the affairs of the General Partner and the Partnerships for another approximately five years, until the General Partner was reinstituted, and only then by application of an ECAPS holder, not LBHI.  It was only then, once the Joint Liquidators were appointed, that someone was in a position to start analyzing the affairs of the General Partner and the Partnerships.  The Joint Liquidators, with little to no information, given LBHI's prior ownership and control, acted expeditiously to identify potential claims and liabilities of the Partnerships.  The Joint Liquidators' first task upon being appointed was to obtain certain funds that belonged to certain Partnerships but were held by LBHI since the Petition Date, a process that took 8 months.  One month later, in November 2017, the Plan Administrator filed the Substitution Motion, to which the Joint Liquidators naturally directed most of their time, attention, and resources.  If granted, virtually all of the Partnerships' assets could potentially have been directed to LBHI through the Preferential Limited Partner, leaving little else, if anything, for the Joint Liquidators to do with respect to winding up the Partnerships.  Although the Court ultimately rejected the proposed substitution, the Substitution Motion was not denied until October 2018.

38.    Once the Joint Liquidators became aware of the existence of the scheduled Swap Claims, they worked diligently to investigate the details about the Swaps from a variety of

18

sources, and attempted to maintain open lines of communication with the Plan Administrator while doing so.   The Joint Liquidators also have been clear that they are seeking to determine which parties may have valid claims on account of the Swaps, even if that results in claims by LBSF against LP IV or LP V.   Unfortunately, after the Joint Liquidators spent several months attempting to gain information about the Swaps from a variety of sources, the Plan Administrator informed the Joint Liquidators that it would not provide any such information.

39.    As a result, the Joint Liquidators had no other choice but to file this motion to seek direction and certainty from this Court as to the status of the Swap Claims, so that the Joint Liquidators can move forward with their judicially required obligation to wind-down the General Partner and the Partnerships.

*[Remainder of page intentionally left blank.]*

WHEREFORE, subject to the conditions set forth herein, the Joint Liquidators respectfully request that the Court enforce the provisions of the Confirmation Order and the Plan with respect to the Swap Claims held by LP IV and LP V against LBSF.

| | |
|---|---|
| Dated: January 22, 2019<br>New York, New York | */s/ David R. Seligman, P.C.*<br>David R. Seligman, P.C.<br>Joseph M. Graham (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email: david.seligman@kirkland.com<br>        joe.graham@kirkland.com<br><br>-and-<br><br>Mark McKane, P.C. (admitted *pro hac vice*)<br>Kevin Chang (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>555 California Street<br>San Francisco, California 94104<br>Telephone:    (415) 439-1400<br>Facsimile:    (415) 439-1500<br>Email:  mark.mckane@kirkland.com<br>        kevin.chang@kirkland.com<br><br>*Counsel to the Joint Liquidators* |

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al. | Case No. 08-13555 (SCC) |
| Debtors. | (Jointly Administered) |

### ORDER ENFORCING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTIONS

Upon the motion (the "***Motion***")[1] of Bruce Alexander Mackay and Matthew Robert Haw of RSM Restructuring Advisory LLP for entry of an order (this "***Order***"), enforcing the provisions of the Confirmation Order and Plan with respect to the Swap Claims held by LP IV and LP V against LBSF, all as more fully set forth in the Motion; and upon the McKane Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Joint Liquidators' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    The Swap Claims were not barred or disallowed by the Plan or the Confirmation Order, and the Plan Administrator must comply with the claims distribution and dispute provisions set forth in Articles VIII and IX of the Plan with respect to the Swap Claims.

3.    The Joint Liquidators and the Plan Administrator shall promptly meet and confer concerning a plan to promptly adjudicate allowance or disallowance of the Swap Claims. This Court will hold a status conference on _____, 2019, at __:__ _.m., prevailing Eastern Time.

4.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2019

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

2