

Sharon Markowitz
612.335.1974 **DIRECT**
612.335.1657 **DIRECT FAX**
sharon.markowitz@stinson.com

January 30, 2019

The Honorable Judge Shelley C. Chapman
United States Bankruptcy Court
 for the Southern District of New York
One Bowling Green
New York, NY 1004-2307

Re:   In re:  Lehman Brothers Holdings Inc., et al.; Court File No. 08-13555 (SCC)
       Lehman Brothers Holdings Inc. Central Adversary Court File No. 16-01019 (SCC)

Dear Judge Chapman:

I write on behalf of Select Defendants[1] regarding the Case Management Order (CMO) that will govern this litigation.

Over the past several weeks, Plaintiff and the Select Defendants have been actively meeting and conferring in good faith regarding the CMO.  We are pleased to report that after much hard work and

---

[1] The Select Defendants are First Bank, Texas Capital Bank, Sutton Bank, First Horizon Home Loans Corporation, RBC Mortgage Company, Flagstar Bank, FSB, Ditech Financial LLC,  Wintrust Mortgage Corporation as successor to SGB Corp., Branch Banking & Trust Company as successor to National Penn Bank, Branch Banking & Trust Company as successor to American Home Bank, Colorado Federal Savings Bank, Bank of England, Capital Bank Corporation, as successor by merger to TIB Bank, Colonial Savings,  Crestline Funding Corporation, CTX Mortgage Company, DHI Mortgage Company, Eagle Mortgage Holdings as successor by merger to Eagle Home Mortgage,  Universal American Mortgage Company, First Equity Mortgage Bankers, Freedom Mortgage Corporation, Gateway Mortgage Group, Mountain West Financial, Paramount Residential Mortgage Group, Shea Mortgage, Standard Pacific Mortgage,  and TBI Mortgage Company f/k/a Westminster Mortgage Corporation, Home Loan Center, Guaranteed Rate, United Bank, George Mason Mortgage, LoanDepot.com as successor to Mortgage Master, On Q Financial, Banc of California, Cherry Creek Mortgage, 1st 2nd Mortgage Co. of NJ, Inc., Access National Mortgage Corp., First Credit Union, Merrimack Mortgage, Jersey Mortgage Company of NJ, Mason-McDuffie Mortgage Corporation, North Atlantic Mortgage Corp., NOVA Financial & Investment Corp., The Mortgage House, Union Mortgage Group/Union Bank and Trust and Gateway Bank, American Interbanc Mortgage, Seattle Savings Bank, Webster Bank, Stearns Lending, Homeward Residential, Ocwen Financial Corporation, Southern Fidelity Mortgage, Group 2000 Real Estate Services, American Pacific Mortgage Corporation, Cornerstone Mortgage, Sacramento 1st, Parkside Lending, and Vitek.

The Honorable Judge Shelley C. Chapman
January 30, 2019
Page 2

good faith negotiation, Plaintiff and the Select Defendants have reached agreement on a mutually acceptable CMO as to all issues, with only one exception: the numerical limit on interrogatories.[2]

Plaintiff proposes that each "side" in this litigation be permitted to serve 30 "common" interrogatories (defined as interrogatories that seek a type of information that is common across multiple cases) and 10 unique (i.e. non-common) interrogatories. Under this proposal, Plaintiff is one "side" of the case, and all 184 Defendants are the other. Thus, the end result of this proposal is that Plaintiff gets to serve 30 interrogatories on all 184 Defendants—to which they must each respond separately—and then may serve 10 unique interrogatories on each Defendant; whereas the 184 Defendants must coordinate to serve only 30 total common interrogatories on Plaintiff, and they may each serve only 10 unique interrogatories each.

The Select Defendants have agreed to Plaintiff's proposed framework of common and unique interrogatories, but disagree as to the number of interrogatories each side may serve. Under the Select Defendants' proposal, each side is permitted to serve 120 common interrogatories and 25 unique interrogatories.[3] For the reasons set forth below, the Court should adopt the Select Defendants' proposal, which is reasonable, consistent with similar litigation, and necessary given the large number of differently-situated Defendants in these cases.

*First*, these cases warrant substantial written discovery because they are complex, involve three different underlying settlements, will turn on a factual record that goes back nearly two decades, and involve disputes over many different contracts. Among other things, the Select Defendants intend to take written discovery into the following areas, all of which have been highly relevant in similar cases:

(i) The factual background surrounding each of the three different settlements for which LBHI now seeks indemnity;
(ii) The contractual relationship between LBHI and each Defendant;
(iii) The existence, enforceability, and scope of the assignment agreements LBHI relies upon;
(iv) The parties' course of performance regarding the purchase and sale of loans;
(v) LBHI's underwriting and due diligence of the at-issue loans;
(vi) LBHI's repurchase practices and repurchase history as to each Defendant;
(vii) LBHI's quality control policies and practices and its quality control findings as to specific loans;
(viii) LBHI's sales and marketing practices;
(ix) LBHI's securitization of the at-issue loans;
(x) LBHI's representations and warranties to Fannie Mae, Freddie Mac, and RMBS investors; and

---

[2] Attached as Exhibit A hereto is a copy of the Select Defendants' proposed CMO. For the Court's convenience, this CMO shows the parties' competing positions regarding interrogatories in brackets on page 9.

[3] Under each proposal, these numerical limits may effectively be expanded or limited by Court order or by agreement of the parties.

   (xi)  The losses and/or liabilities allegedly incurred by LBHI related to the at-issue loans.

Given this broad array of issues, 30 common interrogatories is insufficient to meet the discovery needs of 184 Defendants.

*Second*, the Select Defendants' proposal is justified by the substantial coordination challenges that Defendants face. There are fundamental differences within the defense group with respect to strategy and approach, and no Defendant should be forced to forego critical written discovery merely because another Defendant disagrees with that Defendant's priorities. A group of 184 Defendants—some of whom have GSE loans and some of whom have RMBS loans—cannot be expected to come to an agreement on only 30 common interrogatories. That problem is exacerbated even further if each Defendant is limited to 10 unique interrogatories. The Defendants have different defenses, different strategies, different factual records, and different theories, and Plaintiff's proposal, if adopted, would prevent the Defendants from pursuing them all in the name of administrative efficiency. Moreover, it would create nearly endless derivative litigation on this issue, because Defendants would inevitably be forced to seek the assistance of the Court in expanding the number of permitted interrogatories due to disagreements amongst the Defendants.

*Third*, experience from recent similar cases teaches that Plaintiff's proposed limits are unreasonable and unworkable. Several of the Select Defendants are represented by counsel who litigated on behalf of the same or different correspondent lenders in the consolidated ResCap indemnity litigation[4] that followed the confirmation of Residential Capital, LLC's bankruptcy plan.[5] Notably, although the case management order in those consolidated actions contained specific numerical limits for certain types of discovery, it permitted *unlimited* common interrogatories and 20 unique interrogatories per case.[6] The decision to allow unlimited common discovery recognized the complex issues in dispute and the severe coordination challenges the sixty-plus Defendants would face if forced to litigate amongst themselves over which interrogatories were worthy of asking.

---

[4] As Your Honor is aware, the ResCap litigation involves facts and claims that are very similar to those at issue in these actions, in that both involve post-bankruptcy-settlement attempts to obtain indemnity from correspondent lenders. These actions are arguably more complicated than the ResCap cases, however, because they involve three underlying settlements (the Fannie Mae settlement, the Freddie Mac settlement, and the RMBS settlement), whereas the ResCap litigation involved just one global settlement.

[5] *In Re: RFC and ResCap Liquidating Trust Litigation*, Case No. 13-CV-3451, Doc No. 277, Pretrial Order No. 5: Consolidated Case Management Order (March 18, 2015).

[6] *Id.* at ¶ IV.A ("There are no numerical limits on written discovery as to common issues."); ¶ IV.A.1 ("As to unique issues, that is, issues specific to a particular Defendant, no party shall serve more than 20 interrogatories).

The discovery record in the ResCap cases proved that the absence of a limit on common interrogatories made good sense. Both sides of that litigation served *more than 100* common interrogatories over the course of the litigation, yet no side ever moved the Court to modify the case management order to impose a numerical limit based on abusive interrogatories. Indeed, the case management order was amended several times, but in every instance, it permitted unlimited common interrogatories. LBHI's proposal to severely limit interrogatories makes little sense, especially in light of the fact that there are more than twice as many Defendants in these cases than were in the ResCap cases.[7]

*Fourth*, the Select Defendants' proposal will enable the parties to propound interrogatories where appropriate rather than resorting to asking the same questions — less efficiently — during depositions. These cases will likely involve many questions about specific loans and specific Defendants[8] which are best addressed in writing, with the benefit of access to records, rather than in a live deposition where the witness will have no memory of specific loan-level details. The alternative to Defendants' proposal would be endless Rule 30(b)(6) depositions during which witnesses read from pre-prepared scripts. That is not efficient.

In conclusion, since the Defendants are being asked to coordinate their defense and discovery strategy for the purposes of efficiency, the court should allow them the tools to do so effectively. Plaintiff's proposed limits tie Defendants' hands and are counterproductive to this goal. For all these reasons, the Select Defendants' proposal is reasonable, efficient, and will avoid needless motion practice. The Select Defendants respectfully request that the Court enter a CMO that permits each side in this case to serve 120 common interrogatories and 25 unique interrogatories.

Sincerely,

Stinson Leonard Street LLP

Sharon Markowitz

---

[7] While the Select Defendants believe that an unlimited common interrogatories structure, as existed in the ResCap litigation, makes the most sense, they have compromised and agreed to a reasonable cap of 120 common interrogatories (which amounts to less than one interrogatory per Defendant) and 25 case-specific interrogatories.

[8] Such requests are "common" under the definition in the CMO because they "seek[] the same or a similar category of documents or information for multiple (but perhaps not all) Defendants" even though the "responsive information [is not necessarily] identical."