Page 1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  LEHMAN BROTHERS HOLDINGS INC.,  Case No. 08-13555-scc

7           Debtor.

8  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

9

10           United States Bankruptcy Court

11           One Bowling Green

12           New York, New York 10004-1408

13

14           January 14, 2019

15           11:02 AM

16

17

18

19

20

21

22

23  B E F O R E:

24  HON. SHELLEY C. CHAPMAN

25  U.S. BANKRUPTCY JUDGE

1   Status Conference Regarding Maverick Claim [ECF No. 59086]
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sherri L. Breach

```
 1   A P P E A R A N C E S :
 2   WEIL, GOTSHAL & MANGES, LLP
 3         Attorneys for Debtor
 4         767 Fifth Avenue
 5         New York, New York 10153
 6
 7   BY:   RICHARD L. LEVINE, ESQ.
 8         GARRETT FAIL, ESQ.
 9         AGUSTINA BERRO, ESQ.
10
11   SHEARMAN & STERLING, LLP
12         Attorneys for Maverick Entities
13         599 Lexington Avenue
14         New York, New York 10022
15
16   BY:   RANDALL MARTIN, ESQ.
17         COLIN VAUGHN-CASEY, ESQ.
18
19
20
21
22
23
24
25
```

Page 4

1         P R O C E E D I N G S

2         THE COURT:  How's everyone?  Please have a seat.

3    Welcome back.

4         MR. LEVINE:  Thank you, Your Honor.

5         MR. MARTIN:  Thank you, Your Honor.

6         THE COURT:  Okay.  So this is just a status

7    conference, right?  We're not going to argue today, correct?

8         MR. LEVINE:  Correct, Your Honor.

9         THE COURT:  Okay.  So let me tell you what I've

10   done in preparation for today.  I have the November 14th

11   letter.  There was no response or anything -- or anything

12   filed.  And the letter attaches the opinion and order

13   entered by Judge Abrams back in September in which she

14   indicated that there were matters that had not been

15   addressed here in the first instance and that on remand

16   that's her direction that we should look at those.

17         I also -- I have not had a chance to look at the

18   transcript of the proceedings that occurred before Judge

19   Abrams, but it obviously appears from the opinion that at

20   least part of the decision rested on an argument that was

21   not made here.

22         MR. LEVINE:  That is correct, Your Honor.

23         THE COURT:  Okay.  And that has to do with the

24   nature of the termination inasmuch as it was a consensual

25   termination.

1            Okay.  But that is what it is.  So we're left with
2    -- so I'm just trying to understand what's still in dispute
3    and what's not in dispute.  So per Judge Abrams' order our
4    stop, look and listen date is the petition date?
5            MR. LEVINE:  Correct.
6            THE COURT:  No dispute about that.
7            MR. LEVINE:  No dispute about that, Your Honor.
8            THE COURT:  So the only thing that we're disputing
9    about is an amount?
10           MR. LEVINE:  That's correct, Your Honor.
11           THE COURT:  Okay.  And when last seen when you all
12   were before me the worst case scenario as articulated by
13   Lehman was that it was the delta -- well, it's the delta
14   between what was paid by LBIE on the, what I would call the
15   562 date, but not the 562 date, the subsequent date --
16           MR. LEVINE:  Correct, Your Honor.
17           THE COURT:  -- and what the amount was on the
18   petition date, and that was a delta of approximately 17, 16
19   to $17 million.  But then there's the issue of netting.
20           So let -- when we were last here I think Mr.
21   Levine you told me worst case scenario for Lehman so to
22   speak was 4.3 million when you applied netting.
23           MR. LEVINE:  Right.  So --
24           THE COURT:  So is that -- so now you've -- you've
25   now -- I've now demonstrated the (indiscernible) of my

1   knowledge and understanding.  So why don't you take over and
2   tell me what you think we need to do.
3           MR. LEVINE:  Okay.  Thank you, Your Honor.
4           Well, we think that given Maverick's victory at
5   the District Court and the District Court's determination
6   that 502 applies --
7           THE COURT:  Right.
8           MR. LEVINE:  -- the 16.2 is now off the table.
9   The 16.2 is not measuring as of the petition date.  As of
10  the petition date if you -- there is -- the amount that was
11  owed by Libby is either zero if you apply the collateral
12  against all six Maverick funds, or if you ignore the one
13  Maverick fund that owned a lot to Libby --
14          THE COURT:  Yeah.
15          MR. LEVINE:  -- then it's 4.3 million was the
16  claim of the five of the six Maverick funds as of the
17  petition date.  And we think that's the end of the story.
18  You don't look to two, three years into the future when you
19  have a petition date measurement.
20          So --
21          THE COURT:  So that -- okay.  So that's a more
22  granular and better way of saying what I said, which is that
23  the top line number for Lehman's exposure is an allowed
24  claim of 4.3 million.  That's what your position is.
25          MR. LEVINE:  Right.  And -- and the 16.2 we think

1  is off the table not only because it's not a petition date
2  number, that the way 502 applies is you just look at what
3  the obligation was on that date and it doesn't matter what
4  Libby paid or didn't pay down the future under the case law
5  and under the plan and under the Bankruptcy Code.  You just
6  -- there was an obligation on that date or there wasn't, or
7  whatever it was or wasn't is -- that's the end of the story.
8           So the 16.2 doesn't matter because that's what
9  happened to the collateral allegedly because we're on a
10 motion to dismiss so we don't know what really happened.
11 But --
12          THE COURT:  Right.
13          MR. LEVINE:  -- there are allegations --
14          THE COURT:  Just to be clear, I'm listening to you
15 not as listening to argument, but just as identifying what
16 the --
17          MR. LEVINE:  Right.  No.  I --
18          THE COURT:  -- what the issues are.
19          MR. LEVINE:  I appreciate that.
20          The other reason we don't think 16.2 is on the
21 table is because that's based on a theory which we believe
22 Your Honor rejected last time we were here, but the District
23 Court questioned and Maverick seemed to agree that you
24 hadn't ruled on it, we thought you did, which is in
25 bankruptcy you can't get more than you get outside of

1   bankruptcy.  And that the -- the fact that they had 118

2   million of collateral posted that -- which went down to 101

3   something so you had that 16.2 is irrelevant because we

4   weren't guaranteeing their collateral.  We were guaranteeing

5   the net amount of anything Libby owed.

6            Their theory is they have the right to request

7   back all their collateral and Libby breached by not

8   returning it.  That's not how collateral works.

9            THE COURT:  Right.

10           MR. LEVINE:  Collateral is there to protect Libby

11  against what -- what was owed by the Maverick funds and that

12  was either 4.3 or zero.  So we think both on the timing

13  perspective and the whole concept of collateral.  And all

14  these long positions they admit in their proofs of claim are

15  long -- is the collateral.  There's no -- it's the same

16  thing.  The long positions are the collateral.  And I would

17  say they're proofs of claim, expressly say that.  The --

18  each proofs of claim, paragraph 3 in some, paragraph 5 in

19  the other --

20           THE COURT:  We went through a little bit of this

21  --

22           MR. LEVINE:  Right.

23           THE COURT:  -- last time where you made that point

24  and the response was that that was just kind of boiler plate

25  language to prevent their being an accusation that they have

Page 9

```
 1   overseen --
 2              MR. LEVINE:  Well, there's the footnote --
 3              THE COURT:  So --
 4              MR. LEVINE:  -- but there's also the language in -
 5   - which I think --
 6              THE COURT:  Yeah.
 7              MR. LEVINE:  -- we had that discussion about --
 8              THE COURT:  Right.
 9              MR. LEVINE:  -- but there is actually text in the
10   --
11              THE COURT:  Right.  So, Mr. Levine, you're getting
12   perilously close --
13              MR. LEVINE:  Yeah.  Okay.
14              THE COURT:  -- to making a very detailed argument.
15              MR. LEVINE:  Okay.  So in any event, where we
16   think the bottom line is that the only kind of thing that's
17   left to be done in this case is some limited discovery on
18   whether the collateral that was posted was cross-
19   collateralized so that -- so we can get into the question of
20   zero or 4.3 million so that all the collateral posted was
21   there to protect Libby against that six fund which owed a
22   lot of money, or the lateral -- or the collateral was not
23   cross-collateralized.
24              THE COURT:  Yeah.
25              MR. LEVINE:  So we think that's the only issue
```

1  really left in this case.
2           THE COURT:  Okay.
3           MR. LEVINE:  Thank you.
4           THE COURT:  All right.
5           MR. MARTIN:  Good morning, Your Honor.
6           THE COURT:  Good morning.
7           MR. MARTIN:  Randy Martin.  Thank you for making
8  time for us today.
9           THE COURT:  Yeah.
10          MR. MARTIN:  We disagree with a lot of that and I
11  don't want to string into argument because as you said we're
12  not here to argue today.
13          One thing I did hear towards the end of that --
14          THE COURT:  Well, but let me hear, what's your --
15  your headline -- your headline is you want an allowed claim
16  for $17 million?
17          MR. MARTIN:  An allowed claim for $118 million
18  subject to a cap, the maximum recovery and distribution of
19  approximately $16 million.
20          THE COURT:  Okay.
21          MR. MARTIN:  The theory being, and I don't want to
22  get into the entire argument, but the theory being that the
23  District Court has now confirmed that the appropriate time
24  to calculate our claim, our allowed claim was the petition
25  date.  On that date we were owed $118 million and we've

```
 1   never and to this day have not received that $118.
 2            THE COURT:  Okay.  So -- but not --
 3            MR. MARTIN:  So our view of --
 4            THE COURT:  But -- okay.  That's just, again, a
 5   more expansive of saying that your position is that it's
 6   still capping an allowed, a net, a -- not net, I don't want
 7   to use net because I don't want to confuse it with the
 8   collateral netting issue.  After application of monies
 9   received from LBIE you would be seeking to have a $16
10   million, a recovery on $16 million of an allowed claim?
11            MR. MARTIN:  The allowed claim would be $118
12   million to account for the fact that we've already received
13   $102 million approximately, and in light of the single
14   satisfaction rule --
15            THE COURT:  Right.
16            MR. MARTIN:  -- that dictates that we can never
17   recover more than one-hundred percent, we would cap it at
18   the distribution of $16 million.
19            THE COURT:  Okay.  So you're -- you've now just
20   answered my question.  Your position is that you -- you
21   think you're entitled to get 16 -- not just an allowed claim
22   for $16 million, but actually 16 actual million dollars.
23            MR. MARTIN:  That's correct, Your Honor.  That's
24   correct.
25            THE COURT:  Okay.  Okay in the sense of I hear
```

1  you.

2          MR. MARTIN:  Understood, Your Honor.  And I think

3  to move this process forward we need to move, as Mr. Levine

4  said, towards discovery and ultimately towards a claims

5  resolution hearing.  There's -- and I'm not sure that there

6  was such a suggestion.  There's no further merit to any

7  further sufficiency hearings and we agree that the time has

8  come for discovery to move forward in this matter and for

9  you to hear the facts if we're not able to resolve the

10 matter ourselves, and for you to apply the law to the facts

11 that you determine.

12         We can brief all of this or present it to you at

13 the conclusion of a hearing, which I think would be a brief

14 hearing with a fairly limited number of facts to be

15 presented to Your Honor.  But we share Mr. Levine's view

16 that the time now is to move forward with discovery and

17 towards an allowance hearing on these claims.

18         MR. LEVINE:  Thank you, Your Honor.

19         I think where we discovery -- I mean, obviously we

20 completely disagree with their recovery theory.  We think it

21 makes no commercial sense that somehow as guarantor we were

22 responsible for the gross amount of the collateral.  I mean,

23 that's not -- that makes no commercial sense of how the

24 world works.  The collateral was there --

25         THE COURT:  Okay.  No.  We don't --

1        MR. LEVINE: -- to protect Libby. But --

2        THE COURT: We don't need -- right.

3        MR. LEVINE: Well, what I'm getting got is I think

4   Your Honor is in a position now based on the prior

5   submissions or if Your Honor wanted some additional

6   submissions to rule that there is no claim for 16.2 million.

7   That is either zero or it's 4.3 or perhaps something in

8   between. And we think that it makes a lot of sense --

9        THE COURT: Here's what my -- here's what my

10  concern is. I don't know if I -- I don't know -- I agree

11  with you that there needs to be the limit, very, very

12  limited discovery and it should be extremely limited.

13       But I am not smart enough sitting here right now

14  to tell whether or not the right thing to do is to go to yet

15  another "motion to dismiss/sufficiency" or whether just to

16  do it all at once because we're already in a piecemeal world

17  here and, you know, frankly I've never had this occur

18  before, never been reversed and remanded before in nine,

19  almost ten years.

20       So I --

21       MR. LEVINE: Our apologies for that.

22       THE COURT: No. That's my fault entirely, I'm

23  sure.

24       But I -- it just seems to me that for the sake of

25  moving this forward I would like to, you know, rather than

Page 14

1  go narrow just go, you know, so it's like let's just get it
2  done.
3         MR. LEVINE:  Well --
4         THE COURT:  So --
5         MR. LEVINE:  -- I would say the opposite
6  perspective is that the few claims that still exist against
7  the estate which were not settled or resolved, and obviously
8  most were settled, are where the two sides just have
9  completely different valuations.
10        THE COURT:  Right.
11        MR. LEVINE:  Right.  Lehman is absolutely
12 convinced that their -- their exposure can't be worth a
13 claim for 4.3 million and that obviously with that
14 perspective --
15        THE COURT:  Right.
16        MR. LEVINE:  -- their fiduciary obligations
17 prevent them from putting --
18        THE COURT:  Sure.
19        MR. LEVINE:  -- monies on the table beyond that.
20        While on the other hand, you have Maverick which
21 believes that they're entitled to 16.2 million in cash, you
22 know, a claim for over a hundred million.  And I think that
23 a ruling by Your Honor yes or no on the 16.2 million cash
24 claim would allow a settlement because it's the blockage
25 that's creating this incredible difference between the two

Page 15

1  sides' valuation.  Lehman is convinced 16.2 million just is

2  not there as a matter of law and they're -- they're --

3            THE COURT:  Well, if you're --

4            MR. LEVINE:  -- unwilling to put value towards in

5  it --

6            THE COURT:  Right.

7            MR. LEVINE:  -- in settlement.  But --

8            THE COURT:  But the catch is whether or not we

9  have a continued sufficiency hearing.  I think I agree with

10 you that we're beyond the sufficiency stage, but now I agree

11 with you that wide apart from the general proposition that

12 if there's a issue narrowing/dispositive issue purely of

13 law, right, then that's -- I should be given an opportunity

14 to rule on that.

15           MR. FAIL:  And --

16           THE COURT:  So --

17           MR. FAIL:  And, Your Honor --

18           THE COURT:  Yeah.

19           MR. FAIL:  -- Garrett Fail for the record.  That

20 would certainly narrow the scope of any discovery.

21           THE COURT:  Right.

22           MR. FAIL:  The discovery Mr. Levine referred to --

23           THE COURT:  Right.

24           MR. FAIL:  -- is whether or not the debtors would

25 seek to further limit recovery based on Ivanhoe from a claim

```
 1   of 4.3 to zero --
 2              THE COURT:  Right.
 3              MR. FAIL:  -- and all parties can make a
 4   determination as to whether the further litigation and costs
 5   and expense was necessary or settlement was necessary in
 6   that instance as opposed to whatever discovery would be
 7   necessary in -- under Maverick's theory to argue the claim.
 8              THE COURT:  Yeah.  Yeah.
 9              MR. FAIL:  But we believe that it certainly is, as
10   we argued originally in the papers, a sufficiency decision
11   that the petition date value is the net value of what Libby
12   owed, net being not the gross of collateral, but just what
13   Libby owed which was admitted.  And I don't think it would
14   be any further briefing.  It's in the original briefs, our
15   argument --
16              THE COURT:  Well, I'm going to --
17              MR. FAIL:  -- in the alternative.
18              THE COURT:  -- I mean, I --
19              MR. FAIL:  We're happy to --
20              THE COURT:  Yeah.
21              MR. FAIL:  -- submit further, but we think --
22              THE COURT:  Right.
23              MR. FAIL:  -- that you could rule and it would
24   certainly narrow on a sufficiency basis.
25              THE COURT:  Well, given the procedural posture and
```

Page 17

1  frankly to assist us I'm going to ask you -- I'm going to
2  take you up on that, this concept.
3           So I -- make a further motion, file a further
4  brief.  You have -- you guys have the opportunity to respond
5  on this narrow issue and, you know, if you agree that
6  discovery should be -- look, you're -- I don't know.  What's
7  the discovery, right?  The discovery is what do the
8  documents say, right?  I mean, it strikes me as somebody
9  could complete that in 15 minutes.
10          So, look, I think you're right.  I think you
11 should present, you know, a supplemental briefing.  And I'm
12 just concerned about procedure, if it should be a request
13 for summary judgment, if it should be a request for a
14 declaratory judgment, judgement of the pleadings, I just
15 don't know.
16          MR. LEVINE:  Uh-huh.
17          THE COURT:  You figure it out and you tell me and
18 then you -- and then Maverick should obviously have an ample
19 opportunity to respond.  I don't want to piece together
20 arguments that were made in the old briefs and figure out
21 how they fit in in light of the District Court's ruling.
22          Go ahead, Mr. Martin.
23          MR. MARTIN:  Your Honor, I don't want to try to
24 talk you out of a ruling if your mind is set.  Your initial
25 instinct was the correct one.

```
 1              The issues that they're talking about now are
 2    factual matters.  The notion that --
 3              THE COURT:  They're not factual matters, though.
 4    I mean, they -- there are certain factual matters that
 5    remain to be seen, but I -- you probably read off of my
 6    infamously bad poker face that I was a little surprised to
 7    hear that what you folks are seeking is 16 million green
 8    dollars.  I mean, that's -- you know, that's not something I
 9    hear very often in this kind of a construct.
10              So I am -- I -- look, if in your responsive papers
11    you convince me that this is a factual matter, then I guess
12    I won't be able to grant the ruling.
13              MR. MARTIN:  And fundamentally that's the problem,
14    Your Honor, because it is our factual allegation and we need
15    to present evidence on this.  But there was no set up or
16    netting on the petition date.
17              I also struggle, frankly, with the same issue
18    you're struggling with which is what the procedural posture
19    for this additional proceeding would be.  Even if you
20    conclude that there was some set up or you apply some new
21    principle, it's going to be some sort of advisory ruling on
22    what you will rule in the future.
23              THE COURT:  Well, it's a partial summary judgment.
24    It's just a partial -- it's a partial summary judgment.  I
25    mean, that gets presented to me, has been presented to me
```

1    many times in the years of Lehman over whether or not, you

2    know, a write-up setoff as a matter of law is available, you

3    know, whether or not, you know, just hypothetically, not

4    tied to any particular case, whether as a matter of law, you

5    know, setoff is available because of a lack of mutuality or,

6    you know, or something else.

7            If you're saying that there are going to be

8    disputed issues of material fact around that, I mean, the --

9    then we're into are documents clear and unambiguous on their

10   face, whether or not there's some ambiguity.

11           I -- I'm going to stand by what I said the second

12   round and not -- you know, I think that Lehman should make

13   an appropriate motion and you should respond.  And if the

14   response includes you don't think that I have the discretion

15   or authority or what have you to make any sort of ruling

16   then you should just tell me that.

17           But, you know, and just agree on a schedule, but

18   let's do it sooner rather than later.  All right.

19           So we're going to go off the record.

20           (Whereupon, these proceedings concluded at 11:21

21   a.m.)

22                              * * * * *

23

24

25

1           C E R T I F I C A T I O N

2

3      I, Sherri L. Breach, certify that the foregoing

4  transcript is a true and accurate record of the proceedings.

5

6  *Sherri L Breach* — Digitally signed by Sherri L Breach, DN: cn=Sherri L Breach, o, ou, email=digital1@veritext.com, c=US, Date: 2019.01.21 11:28:14 -05'00'

7  _____

8  Sherri L. Breach

9  AAERT Certified Electronic Reporter & Transcriber CERT*D-397

10

11 Date:  January 21, 2019

12

13

14

15

16

17

18

19

20

21

22 Veritext Legal Solutions

23 330 Old Country Road

24 Suite 300

25 Mineola, NY 11501