WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., et al.,             :    08-13555 (SCC)
                                                   :
                              Debtors.             :    (Jointly Administered)
------------------------------------------------------------------x

## PLAN ADMINISTRATOR'S OBJECTION TO MOTION TO ALLOW LATE CLAIM

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc., as Plan Administrator, files this objection to the *Joint Liquidators' Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for Purposes of Distributions* (ECF No. 59409) (the "*Motion*")[1] and respectfully represents:

## OBJECTION

1.    *First:* Styled as a motion to enforce the Plan, the Motion points to no provision of the Plan that mandates LBSF's consideration of a new, unliquidated claim at this late

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

stage of these cases.  Simply stated: no such provision exists.  The Court may deny the Motion on this basis alone.

2.      *Second:* The Court also may deny the Motion because the Motion relies on an assumption that the Partnerships are *not* "Debtor-Controlled Entities."  Mot. ¶¶ 29, 31.  In fact, the Partnerships *are* Debtor-Controlled Entities.  A "Debtor Controlled Entity" is "a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor *as of the Effective Date*."  Plan §1.41 (emphasis added).  LBHI managed and controlled the Partnerships through the Effective Date, as the Joint Liquidators themselves allege: (a) LB GP No 1 Ltd. (the "*General Partner*") is the general partner for the Partnerships, Mot. ¶ 1; (b) LBHI is the sole member of the General Partner, *id.* ¶ 15; (c) LBHI's actions or inactions led the Partnerships not to file a proof of claim prior to the Effective Date, *id.* ¶¶ 8, 15, 16, 36, 37; and (d) LBHI was the controlling entity that placed the General Partner into its current voluntary liquidation and resolved that Bruce Mackay and Matthew Haw of RSM Restructuring Advisory LLP be nominated as Joint Liquidators in 2017, *id.* ¶ 17.  Accordingly:

a.      Although they were exempt from the 2009 bar date, the Partnerships were subject to the 2011 Plan and Confirmation Order provisions, cited by the Joint Liquidators, that barred claims of the Partnerships not included on the "Schedule of Claims of Debtor-Controlled Entities."  *See* Motion ¶30; Plan §§ 6.5, 15.5; Confirmation Order ¶¶ 25, 86.

b.      Allowing any new claims of the Partnerships, as Debtor-Controlled Entities, would be an amendment to the Schedule of Claims of Debtor-Controlled Entities and an impermissible amendment to the consummated Plan.[2]

---

[2] The Schedule of Claims of Debtor-Controlled Entities was incorporated into and an integral part of the Plan (See Plan Section 1.114 (defining "Plan"); cf. Section 6.5(j) ("Any settlement agreement entered into among any of the Debtors and any Creditor that is contained in the Plan

c.    Requesting allowance of any new claims of the Partnerships

(amending the Schedule of Claims of Debtor-Controlled Entities) is a request for reconsideration

of the Confirmation Order, and the Joint Liquidators have not satisfied the strict standard for

reconsideration of the Court's order.[3]

3.    *Third:* Even if, assuming *arguendo*, the Partnerships are *not* "Debtor-

Controlled Entities," and the analysis above does not apply, the Court still may deny the Motion.

The Joint Liquidators argue that if the Partnerships are not Debtor-Controlled Entities: the

Partnerships were not required to file proofs of claim by the 2009 bar date, Mot. ¶¶ 7, 27, 31, 32;

and nothing in the Plan or Confirmation Order specifically allowed or disallowed claims by the

Partnership, *id.* ¶¶ 28, 31, 32.   Based on this, the Joint Liquidators conclude the Partnerships'

claims were "preserved," *id.* ¶¶ 28, 32, and seek an order declaring that they are automatically

"claims that are subject to the Plan's claims allowance, objection, reserve, and distribution

provisions, on a going forward basis."  *Id.* ¶ 9.   Mistakenly, the Joint Liquidators overlook

paragraphs 86 and 37 of the Confirmation Order, which, as discussed below, impose new bars on

all claims and do not reference or rely on the Bar Date Order or list of Exempt Entities.[4]   Contrary

---

Supplement is incorporated into the Plan and shall become effective in accordance with its terms").
As the Joint Liquidators and Deutsche Bank previously argued also in connection with ECAPS,
the Bankruptcy Code and case law restrict amendments of consummated chapter 11 plans. *See*
ECF Nos. 57490, 57603.  Here, any amendments would have a material impact on remaining
creditor recoveries.

[3] In addition, the Schedule of Claims of Debtor-Controlled Entities represented settlements and it
formed part of a larger, integrated, collective settlement that was the Plan.  As set forth in the
declarations in support of confirmation, no aspect of the Plan stands alone.  The settlements were
integrated. *See* Confirmation Order § V.  Courts favor settlements and the finality of settlements.
This Court should not overturn the largest court-approved settlement in history to allow any new
claims to be asserted by the Partnerships.

[4] The Joint Liquidators also overlook the Plan's and Confirmation Order's injunction provisions.
*See* Plan §§ 13.5, 13.7; Confirmation Order ¶¶54-55.  Any demands made of the Debtors following
the Effective Date were void as violations of the Plan injunction and automatic stay in place
pursuant to Section 13.7 of the Plan and Paragraph 54 of the Confirmation Order.  The Plan

to the Joint Liquidators' suggestion, there is no loophole in the Plan that compels the Plan

Administrator to recognize claims asserted absent Court approval.

4.      Paragraph 86 of the Confirmation Order states: "After the Effective Date,

other than a proof of Claim relating to an executory contract or unexpired lease that is rejected

pursuant to the Plan, a proof of Claim relating to a prepetition Claim may not be filed or amended

without the authority of the Court." Confirmation Order ¶ 86. Thus, *if* the Swaps were terminated

prior to the Effective Date, a claim based on the Swaps was barred after the Effective Date.

Further, the Joint Liquidators concede, because they must, that *if* the Swaps were not terminated

before the Effective Date, they were rejected on the Effective Date.[5] *See* Mot. fn. 3 ("If the Swaps

were not terminated, upon information and belief, the Swaps would have been rejected as of March

6, 2012"). Any claim based on an alleged rejection of a Swap pursuant to the Plan was barred

after April 20, 2012, nearly seven (7) years ago. This necessarily is the case because Paragraph

37 of the Confirmation Order states, in relevant part:

> Pursuant to Section 11.4 of the Plan, if the rejection of an executory contract …
> pursuant to Section 11.1 of the Plan results in damages …, if not evidenced by a
> previously filed proof of Claim, a Claim for such damages shall be forever barred
> and shall not be enforceable against the Debtors, or any property to be distributed
> under the Plan, unless a proof of Claim is filed with the Court and served upon the
> Debtors, on or before the date that is forty-five (45) days after … notice of entry of
> the Confirmation Order and occurrence of the Effective Date [i.e., March 6, 2012
> [ECF No. 26039]].

*Id.* ¶ 37; *see also Plan* § 11.4. Even if the Partnerships are not Debtor-Controlled Entities, any

claims they seek to assert based on the Swaps are late claims.

---

Administrator reserves all rights to seek reimbursement of costs and expenses in connection
therewith.

[5] The Court may therefore disregard entirely the Joint Liquidators' discussion of sensational
calculations made while "assuming that the underlying Swaps are not terminated" prior to their
2047 and 2067 maturities. *See* Mot. ¶¶ 19-21.

5.      Moreover, the Joint Liquidators are therefore wrong to suggest they have no burden at all when they attempt to impose a burden on the Plan Administrator to object to these late claims.  Parties seeking to assert new claims subsequent to the Court's bar dates bear the heavy burden to demonstrate cause to permit the additional administrative expense and dilution of other creditors.  The Joint Liquidators have not attempted to satisfy their burden of demonstrating excusable neglect for late claims, relying instead on their demonstrably incorrect argument that their claim was timely.

6.      In exercising its discretion during the course of these cases to disallow hundreds of late-filed claims and to refuse new claims to be filed and existing claims to be amended, the Court has properly focused on (a) whether any delay in filing was in the creditors' control, (b) the impact on the administration of these mega cases, and (c) the impact on other creditors, notwithstanding the potential validity of the late or new claims.  *See e.g., In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010), aff'd sub nom. *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011).[6]  Here, application of each of these factors militates denial of additional claims against the Debtors (if the Joint Liquidators were even to seek such relief).

a.      Ipse dixit regarding the Joint Liquidators' diligence and expedience aside, much of the delay was within the control of the Joint Liquidators and avoidable by them and any parties seeking to benefit from prosecution of the Motion.  The Joint Liquidators scheduled the Motion to be heard a full *two years* after their appointment (February 28, 2017 -

---

[6] This Court has entered numerous orders disallowing and expunging claims solely on the basis that they were not timely filed. *See*, *e.g.*,  ECF Nos. 12407, 12413, 12424, 12527, 12675, 18202, 18203, 18419, 18420, 18427, 19503, 19517, 19521, 21379, 22950, 24673, 27106, 27640, 28394, 29142, 29606, 29607, 29890, 29891, 30356, 31127, 31133, 31142, 32142, 32146, 32152, 32242, 32258, 33252, 33268, 33270, 34461, 34696, 34701, 35716, 38388, 45303.

February 27, 2019).  They waited nearly 700 days from their appointment even to file their Motion.[7]  That is an extraordinary delay, considering the Court granted all other potential creditors only approximately 400 days between LBHI's 2008 petition date and LBSF's 2009 bar date, only approximately 80 days between the entry of the bar date order and the 2009 bar date, and only 45 days after the Effective Date for claims based on contracts rejected pursuant to the Plan. Inexplicably, the Joint Liquidators waited over 150 days *since their last attempt* to file proofs of claim without prior Court order (which attempt was referenced nowhere in the Motion[8]).  *See* ECF No. 58763.  The information that the Joint Liquidators have now was known to all parties in interest in LBSF's cases since the filing by LBSF of its schedules of liabilities in June of 2009. Indeed, while Deutsche Bank waited until June of 2016 (the last date permitted by statute) to apply to restore the General Partner, Deutsche Bank – or any holder of ECAPS –  could have taken similar steps to restore the General Partner anytime between the June 2010 dissolution and the March 2012 Plan Effective Date or anytime in the more than three years thereafter.  In addition, Deutsche Bank or any other party that had a claim against the Debtors could have objected to confirmation of the Plan or sought to have the Schedule of Claims of Debtor-Controlled Entities amended.  Instead, Deutsche Bank signed a plan support agreement in support of the Plan, and no party advocated asserting an additional claim on behalf of the Partnerships.

---

[7] The Motion alleges the Joint Liquidators' "chief responsibilities" were to determine the assets and liabilities of the Partnerships.  The declaration filed in support of the Motion does not support any of the facts alleged in the Motion with respect to the Joint Liquidators' purported efforts in discharging their responsibilities.

[8] The Motion does not disclose what amount the Joint Liquidators are attempting to assert now, as if the amount is irrelevant.  Five months ago, they sought to assert nearly $3 Billion of new liabilities: $2,180,188,607 of Affiliate Claims and Senior Affiliate Guarantee Claims against LBHI and $800,171,924 of Affiliate Claims against LBSF.  The Court, the Plan Administrator, and creditors of LBHI and LBSF are left to wonder: did the Joint Liquidators abandon any of these claims, or will a subsequent motion follow with additional, intentional delay?

b.   In the Motion, the Joint Liquidators summarily conclude, without any support, that permitting the Partnership to assert additional claims "will not result in any prejudice to the Plan Administrators' [sic.] administration of the LBSF or LBHI estates" because it would "only affect prospective distributions under the Plan." Mot. ¶35.   The Court has acknowledged previously the impact on the administration of these cases of admitting additional claims.   The Plan Administrator need not repeat the arguments in detail here.   The Plan Administrator notes, however, that the Joint Liquidators ignore the incremental administrative expense required for analysis and any objections to newly-asserted claims that will be incurred at the expense of all creditors of LBSF.   As remaining amounts available for distribution continue to decrease over time, the proportion of expense to creditor recovery continues to increase exponentially.[9]

c.   The Joint Liquidators also ignore that claims against LBSF and LBHI continue to trade.   Since February 2017, creditors have recorded more than 1,315 trades of claims totaling more than $8.175 Billion against LBSF: 674 trades of claims totaling more than $3.28 Billion in 2017; 564 trades of claims totaling more than $4.65 Billion in 2018; and at least 80 trades of claims totaling more than $240 Million thus far in 2019.   Allowing additional claims against any of the Debtors will have a material effect on the value of the remaining distributions available to other creditors, requiring a reserve of likely all Distributions from LBSF at the next upcoming Distribution Date.[10]   "Creditors must be able to learn what they will receive under a

---

[9] The Joint Administrators were on notice that LBSF was required to distribute its Available Cash at each Distribution Date, and that, since the Joint Liquidators were appointed, LBSF has distributed $1.777 Billion from its estate to its creditors: $74.1 Million in April 2017; $84.7 Million in October 2017; $629.5 Million in December 2017; $135.2 Million in April 2018; and $287.3 Million in October 2018. *See* Plan § 8.3; ECF Nos. 55129, 56298, 57065, 57808, 58847.

[10] LBSF had only approximately $14 million in unrestricted cash as of December 31, 2018, *see* ECF No. 59436, and to reserve the amount needed to "catch-up" on Distributions LBSF made to

Plan . . . [f]ailure to [identify the creditor body] prejudices the entire community of interest . . ."
*See In re Waterman S.S. Corp.*, 59 B.R. 724, 728 (Bankr. S.D.N.Y. 1986).

       7.      Pursuant to Section 8.3 of the Plan, the Plan Administrator is required to distribute Available Cash on each Distribution Date.  Notwithstanding any interpretation of the Joint Liquidators, pursuant to Section 8.4 of the Plan, the Debtors are not required to reserve any amounts for the Swap Claims as they prepare for or make the upcoming seventeenth Plan Distribution.

       8.      The Plan Administrator reserves all rights to object to any claim that may be permitted to be asserted against any of the Debtors.

       9.      Further, the Plan Administrator reserves all rights to withhold Plan Distributions from any claim that ultimately may be Allowed against any of the Debtors pursuant to Paragraph 45 of the Confirmation Order, which permits any Debtor to setoff against or recoup from any Claim and the payments to be made pursuant to the Plan with respect to such Claim any claims of any nature whatsoever that the Debtor may have against the claimant.

Dated: February 25, 2019
      New York, New York

                         /s/ Garrett A. Fail
                         WEIL, GOTSHAL & MANGES LLP
                         767 Fifth Avenue
                         New York, New York 10153
                         Telephone: (212) 310-8000
                         Facsimile: (212) 310-8007
                         Jacqueline Marcus
                         Garrett A. Fail

                         Attorneys for Lehman Brothers Holdings Inc.
                         and Certain of Its Affiliates

---

date, LBSF would need to reserve approximately 40.2% of the filed amount of any new claim, *see* Plan §8.4; ECF No. 58847.