**HEARING DATE AND TIME: June 19, 2019 at 11:00 a.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re                                                       :     Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :     08-13555 (SCC)
                                                            :
                                          Debtors.      :     (Jointly Administered)
-------------------------------------------------------------------x

## PLAN ADMINISTRATOR'S OBJECTION TO MOTION TO ALLOW LATE CLAIM

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator, files this objection to the *Motion for an Order Enforcing the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors for Purposes of Distributions* filed last month by Rex Wu ("Wu") (ECF No. 59614) (the "Motion") and respectfully represents:

## OBJECTION

1.      Wu seeks "approval and granting of [his] Proof of Claim" [Mot. ¶10] – a claim alleged for the first time in April 2019 as an attachment to his Motion. Specifically, Wu seeks recovery on a claim of $662,780.77 based on guarantees issued by LBHI (each a "Subordinated Guarantee") in connection with securities issued by four separate trusts that owned subordinated debt issued by LBHI. [*Id.* at Ex. D.]

WEIL:\97024259\10\58399.0011

2.      As set forth below, even if Wu was permitted to file his claim, and even if

the claim was allowed, any liability for the claim would be subordinated in accordance with section

510(a) of the Bankruptcy Code to the level of preferred equity in LBHI; Wu would recover nothing

from LBHI in these cases.[1]

3.      Nonetheless, Wu should not be permitted to file his claim.   Upon

information and belief, Wu acquired his securities after entry of the confirmation order in 2011

and after consummation of the plan in these chapter 11 cases (the "Plan") in 2012.[2]  By that time,

additional claims against LBHI based on the Subordinated Guarantees (held by the then-holder of

Wu's securities) were subject to (not exempt from) a bar date.  Wu has not plead, and cannot

establish, cause to permit the filing of a claim years after the bar date and possibly six years or

more after Wu acquired the trust securities and his purported claim.  The Motion can be denied on

this basis alone.

4.      Moreover, even if Wu could file a claim, the claim could not be allowed.

As this Court held in 2011, LBHI has no liability for guarantee claims based on a Subordinated

Guarantee.[3]  The Court has also recognized that claims like Wu's would be duplicative of allowed

claims filed by the indenture trustees for the subordinated debt issued by LBHI linked to the

securities issued by the four trusts in which Wu invested.  Indeed, the Court disallowed over 1,725

proofs of claim on that basis.  The Court would find the same is true for Wu's claim.  The Motion

can be denied on these bases alone.

---

[1] *Accord* ECF No. 27630 (order classifying guarantee claim based on Subordinated Guarantee for purposes of Distributions under the Plan as an LBHI Class 12 Equity Interest with consent of Debtors).

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan. [ECF No. 22737.]  Wu failed to disclose the date on which he acquired his claims and improperly redacted the attachments to the Motion.  Wu should disclose this information to the Court and parties in interest.

[3] *See e.g.*, ECF No. 23049 (order dated granting LBHI's 218th omnibus objection [ECF No. 20107] and disallowing and expunging claims based on a Subordinated Guarantee).

5.      Accordingly, the Motion should be denied with prejudice.

**The Trusts and the Subordinated Guarantees**

6.      The Court approved the disclosure statement for solicitation of votes on the Plan by order, dated September 1, 2011 [ECF No. 19631].   As described in the disclosure statement, as of August 31, 2008, the Debtors' long-term borrowing included billions of dollars of subordinated debt.  [ECF No. 19629.]

7.      Claims against LBHI on account of LBHI's subordinated debt are classified in LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C of the Plan.  *See Id.*  Holders of claims in LBHI Class 10A, LBHI Class 10B, or LBHI Class 10C "are not expected to receive any Distributions on account of such Claims." *Id.*  "Any Distributions that would have been paid to such Claims are automatically redistributed to holders of [allowed senior unsecured claims against LBHI]." *Id.*

8.      Prior to the Commencement Date, certain issuances of LBHI's subordinated debt (the "Subordinated Debt") were acquired by certain trusts, which, in turn, issued securities (the "Trust Preferred Securities") to third parties.  LBHI issued Subordinated Guarantees in connection with the issuance of the Trust Preferred Securities.

9.      Wu purports to have acquired Trust Preferred Securities in four trusts: Lehman Brothers Holdings Capital Trust III ("Capital Trust III"), Lehman Brothers Holdings Capital Trust IV ("Capital Trust IV"), Lehman Brothers Holdings Capital Trust V ("Capital Trust V"), and Lehman Brothers Holdings Capital Trust VI ("Capital Trust VI") (collectively, the "Trusts").  Each Trust held a separate issuance of Subordinated Debt.

10.    Wu alleges he reviewed the relevant prospectuses for the Trust Preferred

Securities.[4]  *See* Mot. ¶3.  These prospectuses made clear with repeated references that:

a.  the Trusts' assets consisted exclusively of Subordinated Debt[5];

b.  the Trusts could only make payments on the Trust Preferred Securities if LBHI first makes payments on the Subordinated Debt[6];

c.  the Subordinated Guarantee does not cover payments when the Trust does not have sufficient funds to make payments on the Trust Preferred Securities.  In other words, if LBHI does not make a payment on the Subordinated Debt, the Trust will not have sufficient funds to make payments on the Trust Preferred Securities, and the Subordinated Guarantee will not obligate LBHI to make those payments on the Trust's behalf.[7]

d.  LBHI's obligations under the guarantee are subordinate to its obligations under all of its other liabilities.[8]

11.    The Subordinated Guarantees themselves likewise provide that:

[LBHI's] [g]uarantee will constitute unsecured obligations of [LBHI] and will rank (i) subordinate and junior in right of payment to all other liabilities of [LBHI], (ii) on a parity with the most senior preferred or preference stock… and (iii) senior to [LBHI's] common stock.[9]

---

[4] Copies of the prospectuses are available on the Court's docket.  [*See* ECF No. 20107.]  The Debtors will provide the Court with courtesy copies in advance of the hearing on the Motion.

[5] *See, e.g.,* LBH Capital Trust III prospectus supplement for 6.375% Preferred Securities, Series K, dated March 12, 2003 ("Prospectus III") at s-1 ("The trust that is issuing the preferred securities will have no assets other than subordinated debentures issued by Lehman Brothers Holdings."), *Id.* at s-7 ("The only assets of the trust will be the subordinated debentures."); LBH Capital Trust IV prospectus supplement for 6.375% Preferred Securities, Series L, dated October 9, 2003 ("Prospectus IV") at s-1, *Id.* at s-7; LBH Capital Trust Lehman Brothers Holdings Capital Trust V prospectus supplement for 6.00% Preferred Securities, Series M, dated April 1, 2003 ("Prospectus V") at s-1, *Id.* at s-7; LBH Capital Trust VI prospectus supplement for 6.24% Preferred Securities, Series N, dated January 5, 2005 ("Prospectus VI") at s-1, *Id.* at s-8.

[6] Prospectus III at s-1, s-5 ("[P]ayments under the subordinated debentures will be the sole source of income to the trust."); Prospectus IV at s-1 (same), s-5 (same); Prospectus V s-1 (same), s-5 (same); Prospectus VI s-1 (same), s-6 (same).

[7] *See* Description of the Guarantee, Prospectus III at page 20, Prospectus IV at page 21, Prospectus V at page 21, Prospectus VI at page 21.

[8] *See* Description of the Guarantee, Prospectus III at page 20, Prospectus IV at page 21, Prospectus V at page 21, Prospectus VI at page 21.

[9] *See e.g., id.*

**Bar Dates and Relevant Claims**

12.    As set forth in the Motion, on July 2, 2009, this Court entered an order (the "Bar Date Order") [ECF No. 4271] setting forth the procedures and establishing September 22, 2009 (the "Bar Date") as the general deadline for filing proofs of claim in the Chapter 11 Cases.

13.    The indenture trustees for the Subordinated Debt linked to the Trust Preferred Securities filed proofs of claim on behalf of the holders of such securities prior to the Bar Date.  These claims, identified in the chart below, were subsequently Allowed against LBHI:

| Claim No. | Allowed Amount | Plan Class | Applicable Trust |
|---|---|---|---|
| 21805 | $314,207,499.10 | LBHI Class 10B | Capital Trust III |
| 22122 | $311,742,937.05 | LBHI Class 10B | Capital Trust IV |
| 22123 | $416,013,746.69 | LBHI Class 10B | Capital Trust V |
| 67753 | $234,250,517.60 | LBHI Class 10B | Capital Trust VI |

14.    Thus, as was intended, in this case, the indenture trustees for securities listed on the Bar Date Order's "Master List of Securities" filed a global proof of claim on behalf of all holders of such securities.  It is therefore of no import that the Trusts appeared on the Bar Date Order's "Exempt Entities List" but did not file proofs of claim.  The beneficial interests of the Trusts and the individual holders of Trust Preferred Securities were represented by more than $1 billion in Allowed claims against LBHI.  [*See* Bar Date Order at 3, 5.]

15.    Wu didn't file a proof of claim prior to the Bar Date – because he did not hold any claim against LBHI prior to the Bar Date.  But more than 1,725 proofs of claim were filed by other parties who purported to hold the Subordinated Debt and/or Trust Preferred Securities.  The Court disallowed and expunged each of these claims as duplicative of the Allowed claims filed by the indenture trustee referenced above or, in several instances, as late claims.[10]  It

---

[10] *See, e.g.,* ECF Nos. 12671 (duplicative), 12893 (duplicative), 12835 (duplicative), 12676 (duplicative), 12527 (late), 12413 (late), 18427 (late), 19528 (late).  Each of these Court orders and the corresponding motions was filed publicly on the Court's docket.  In addition, as disclosed in its financial reports, from time to time LBHI publishes responses to questions received from creditors and other parties.  A non-exhaustive review revealed that LBHI published

is possible that Wu acquired his Trust Preferred Securities from one of the parties whose claims against LBHI had been expunged.

16.     On December 6, 2011, the Court entered an order confirming the Plan (the "Confirmation Order"). [ECF No. 23023.]  The Confirmation Order provided: "After the Effective Date, … a proof of Claim relating to a prepetition Claim may not be filed … without the authority of the Court."  [Confirmation Order ¶ 86.]  This order applies whether or not the purported creditor was subject to the Bar Date, was a party listed on the Exempt Entities List, or was the holder of a security listed on the Master List of Securities.

## The Court Should Not Permit the Filing of A New Claim

17.     Styled as a motion to enforce the Plan, the Motion points to no provision of the Plan that mandates LBHI's consideration of a new claim.  Simply stated: no such provision exists.  The Confirmation Order directly contradicts the notion that parties may freely file new claims.  The Court may deny the Motion "to enforce the Plan" on this basis alone.

18.     Wu has not carried his burden to establish cause to allow him to file a claim. In exercising its discretion during the course of these cases to disallow hundreds of late-filed claims and to refuse new claims to be filed and existing claims to be amended, the Court has properly focused on (a) whether any delay in filing was in the creditors' control, (b) the impact on the administration of these mega cases, and (c) the impact on other creditors, notwithstanding the potential validity of the late or new claims.  *See e.g., In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 (Bankr. S.D.N.Y. 2010), aff'd sub nom. *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros.*

---

responses to questions regarding the Trusts and Trust Preferred Securities in February and October of 2014. *See* https://dm.epiq11.com/case/LBH/documents.   LBHI disclosed then that, based on projected future cash flow estimates, holders of Trust Preferred Securities would not receive any recovery.

*Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011). Here, application of each of these factors militates denial of Claimant's claims against the Debtors.

19.     Control: Any delay in filing a claim was clearly within Wu's control. Wu does not and cannot argue otherwise.[11]

20.     Impact on administration:   The Court has repeatedly recognized the deleterious impact of new claims on the administration of these mega cases.   The Plan Administrator need not repeat all of the arguments it has made in the past in detail here. "The prejudice to the Debtors is not traceable to the filing of any single additional claim but to the impact of permitting exceptions that will encourage others to seek similar leniency." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010), aff'd sub nom. *CVI GVF (Lux) Master S.a.r.l. v. Lehman Bros. Holdings Inc.*, 445 B.R. 137 (S.D.N.Y. 2011).[12] Granting the Motion will open the floodgates for the thousands of similarly-situated, individual holders of Subordinated Guarantees to file motions to allow claims and motions for reconsideration of the disallowance of their prior claims. Two parties have already filed a joinder to the Motion.[13] Wu ignores the incremental administrative expense required for analysis and any objection to each newly-asserted claim.   As remaining amounts available for distribution continue to decrease over time, the proportion of expense to creditor recovery continues to increase exponentially. Wu's incredible

---

[11] As noted above, it is possible that Wu acquired his Trust Preferred Securities from a party who had, in fact, filed a proof of claim that was subsequently disallowed by the Court. Without a blocking number, there is no way that LBHI would be able to determine legitimate ownership and eliminate the possibility of more than one party filing claims for the same interest.

[12] "Creditors act at their peril where they fail to adequately investigate and pursue their rights." *Id.* *Cf. In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) (stating a deadline for asserting claims is more than a "procedural gauntlet" and functions as "an integral part of the reorganization process."); *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (same).

[13] Indeed, Wu's filing of the Motion and the parties' filings of their joinders, support the argument that LBHI made to deny another motion to allow new proofs of claim to be filed late in these cases. [*See* ECF No. 59549.] Wu appears to have been inspired by (and in fact copy blocks of text from) the filing of that other motion. [*Cf.* Mot. at ¶ 28 (referring to "the Partnerships" and "LP IV and LP V") with ECF No. 59409 at ¶ 36.]

assertion that there will not be "*any* prejudice to the … administration of the LBHI estate" is pure

*ipse dixit* and should not alter the Court's established view.

21.    <u>Impact on creditors</u>:    Wu is wrong to conclude that because his request

would "only affect prospective distributions under the Plan," there would be no negative effect on

other creditors. Mot. ¶ 27. Admission and allowance of new claims clearly would dilute remaining

recoveries for current creditors. "Creditors must be able to learn what they will receive under a

Plan . . . [f]ailure to [identify the creditor body] prejudices the entire community of interest . . ."

*See In re Waterman S.S. Corp.*, 59 B.R. 724, 728 (Bankr. S.D.N.Y. 1986). Here, the prejudice

would be extraordinary given (a) the potential magnitude of additional claims that could be

asserted (discussed above), and (b) LBHI has no liability for these claims, and even if it did, any

liability would be subordinated to all other creditors of LBHI (discussed below).

## Wu's Claim Cannot Be Allowed

22.    The Court has disallowed and expunged timely-filed claims similar to the

claim asserted now by Wu on the basis that LBHI has no liability to Wu under the Subordinated

Guarantee.  [*See* ECF Nos. 23049, 27630.]  The Court would find the same if Wu's claim were

filed.  For this reason, the Motion should be denied.

23.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  A proof

of claim is "deemed allowed, unless a party in interest objects."  11 U.S.C. § 502(a).  If an objection

refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to

demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y.

2009); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15

(Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

24.    Wu seeks recovery on an allowed claim in the amount of $662,780.77. There is no basis for an allowed claim in this amount.  It is undisputed that each Trust's only asset is Subordinated Debt and that holders of Subordinated Debt will not recover from LBHI pursuant the Plan.  The Trusts "only make payments on the [Trust Preferred Securities] if [LBHI] first makes payment on the Subordinated Debt." [*See e.g.*, Prospectus IV at 1.]  The Subordinated Guarantee "does not cover payments when the [Trust] does not have sufficient funds to make payments on the [Trust Preferred Securities]." [*Id.* at s-4.]  Thus, by the express terms of the Subordinated Guarantee, LBHI has no liability under the Subordinated Guarantee. [*See id.* at 21 (describing the terms of the Subordinated Guarantee).]  Therefore, claims based on Subordinated Guarantee should be disallowed and expunged in their entirety.  Indeed, claims based on Subordinated Guarantees have been disallowed by the Court for this reason.  [*See* 23049, 27630.]  Further, allowing an individual claim by Wu would lead to Wu potentially receiving a duplicative recovery, as his beneficial interest was represented by the allowed claims filed by the indenture trustees.

**Wu's Claim Would Be Subordinated**

25.    Section 510(a) of the Bankruptcy Code provides that "[a] subordination agreement is enforceable … to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a).

26.    Courts have routinely held that the "enforcement of lawful subordination agreements by Bankruptcy Courts does not offend the policy of equal distribution of the bankrupt's estate." *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr. N.Y. 1980), citing *In re Credit Industrial Corp.*, 366 F.2d 402, 407 (2d Cir. 1966).  Under general contract law principles, when

a subordination agreement is unambiguous, the parties' rights are governed exclusively by that agreement. *In re Leasing Consultants, Inc.*, 2 B.R. at 169. This Court has enforced subordination provisions consistently in these cases, including through the classification and treatment of Subordinated Debt pursuant to the Plan.

27.    The prospectuses upon which Wu purports to have relied clearly provides that any liability that LBHI would have on the Subordinated Guarantee is subordinated to the level of preferred equity interests in LBHI:

> [LBHI's] [g]uarantee will constitute unsecured obligations of [LBHI] and will rank (i) subordinate and junior in right of payment to all other liabilities of [LBHI], (ii) on a parity with the most senior preferred or preference stock… and (iii) senior to [LBHI's] common stock.

[Prospectus IV at 21.]. Thus, if LBHI had any liability on account of the Subordinated Guarantee, such liability would be subordinate and junior in right of payment to all other liabilities of LBHI and *pari passu* with LBHI's preferred equity, which is not expected to recover from LBHI. Wu acknowledges this. [Mot. ¶6.]

28.    Wu's cites two letters filed on the docket by Mr. Rickey Gregory. [Mot. ¶¶ 7, 8, citing ECF Nos. 46304, 59555.] Neither Wu nor either of Mr. Gregory's letters is clear, but neither alters the clear fact that any liability under the Subordinated Guarantees is not entitled to recover as a claim against LBHI.

## JOINDERS

29.    Mr. Gregory filed a joinder to the Motion. [ECF No. 59659.] The joinder contains no substantive argument and alleges no new fact pertinent to the Motion. Wu subsequently filed a letter on the docket expressing his support for Mr. Gregory. [ECF No. 59715.] Subsequently, Dan Lanello and Julie Lanello each filed separate (but identical) joinders to the Motion. [ECF Nos. 59735, 59736.] Like Mr. Gregory's joinder, the Lanello joinders contain no

new substantive argument and allege no new fact pertinent to the Motion.  The Court should not

grant any relief based on the joinders.

## **RESERVATION OF RIGHTS**

30.     LBHI reserves all rights to object to any claim that may be permitted to be

asserted against any of the Debtors.

Dated: May 29, 2019
         New York, New York

/s/ Garrett A. Fail
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates