Hearing Date:  June 19th 2019 11:00am (Prevailing Eastern Time)

Rex Wu
6315 N Campbell
Chicago, IL 60659
312-785-0348
REX WU@LIVE.COM

## UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rex Wu, | ) Case No.: 08-13555 (SCC) |
| vs. | ) (Jointly Administered) |
| Lehman Brothers Holdings INC., et al, | ) Re: Dkt #59614 |
| Debtors. | ) |

JUN - 5 2019

**REX WU'S RESPONSE TO THE PLAN ADMINISTRATOR'S OBJECTION TO NOTICE OF MOTION FOR AN ORDER ENFORCING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTIONS**

Rex Wu hereby responds to the Debtor's objection ("The Objection") to "NOTICE OF MOTION FOR AN ORDER ENFORCING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTIONS." In support hereof, Rex Wu respectfully states as follows:

### BACKGROUND

1. The Plan Administrator needs to fully explain if the Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI's guarantee' provision of parity with the most senior preferred or preference stock of Lehman Brothers Holdings Inc. and its Affiliates are or are not in parity with the ECAPS in detail base on the Prospectus? If not, please provide detail on as to why it is not.  This is a very important question to address the GUARANTEE and **needs** to be addressed.

The Guarantee have a major component which was fully explained in my motion but, distorted in the Debtor's "Objection."  That component is "PARITY."

Per Capital Trust VI Prospectus:

"The Guarantee will constitute an unsecured obligation of Lehman Brothers Holdings and will rank:
  i.  Subordinate and junior of rights in payment to all other liabilities of Lehman Brother's Holdings
  ii. **On a parity with the most senior preferred or preference stock <u>now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect of any preferred securities of ANY AFFILIATE of Lehman Brothers Holdings</u>**, and
  iii. Senior to Lehman Brothers Holdings common stock

This is important because it creates a liability for the Debtors. The Guarantee is a subordinated guarantee due to the underlying asset is a subordinated debt. But it also offers a PARITY clause which is enforceable with as much weight and is independent to the subordinated debenture.

The Debtor goes out of his way to focus on the subordinate debentures instead of the parity in his Objection because the parity clause is the strength of the GUARANTEE. The Debtor even omitted wording on the parity clause to hide from this fact. We will address the ommitation in this Objection. The Parity of the Guarantee is what is needed to be addressed and a major component of Rex Wu's motion.

There are three Arguments to be granted in my motion, 1. Enforce the Guarantee, 2. Bar Date Exemption, and the 3. Guarantee Claim.

### RESPONSE TO OBJECTION

2. Rex Wu's motion is based on the Global Guarantee, Board of Director's Guarantee and the <u>Prospectus Guarantee</u> and is <u>**NOT**</u> based on the <u>Subordinate Debenture</u> which was used by the Debtor throughout the "Objection". *Rex Wu is enforcing his right to enforce the Guarantee afforded to him in the Prospectuses of Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI because the Trustee failed to enforced the Guarantee.*

3. Within Rex Wu's "Arguments" in his motion, "Rex Wu who is owners of shares of LEHKQ, LEHLQ, LHHMQ and LEHNQ is exercising his rights under the Prospectus of LEHKQ, LEHLQ, LHHMQ and LEHNQ and the "PLAN" (Docket #23023-1) to enforce the "Guarantee" *and* Guarantee Claims." The procedures to enforcing the Guarantee are listed on the motion with details and exhibits. If the Guarantee is enforced, a Guarantee Claim is included for convenience and next steps.

4. The procedures that are needed to enforce the GUARANTEE and the Guarantee rights afforded to Rex Wu are listed in the Prospectus and included in his motion:

   a. Point #5, ""Rex Wu who is the owner of shares of LEHKQ, LEHLQ, LHHMQ AND LEHNQ is exercising his right under the Prospectus of LEHKQ, LEHLQ, LHHMQ AND LEHNQ and the "THE PLAN" [Docket# 23023-1] to enforce the "GUARANTEE.""

   "If the guarantee trustee fails to enforce the guarantee trustee's rights under the guarantee, any holder of related preferred securities may directly sue Lehman Brothers Holdings to enforce the guarantee trustee's rights under the guarantee without first suing the trust, the guarantee trustee or any other person."

b. Point #6, ""LEHKQ, LEHLQ LHHMQ AND LEHNQ are:

"On a parity with the most senior preferred or preference stock now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect of any preferred securities of *any affiliate of Lehman Brothers Holdings,* and Senior to Lehman Brothers Holdings common stock......""

**Rex Wu's argument to enforce the "Guarantee" was not objected or opposed by the Debtor. The Debtor even quoted the Guarantee rights in his Objections. Rex Wu respectfully requests the Honorable Court to rule in his favor for Rex Wu to enforce the "Guarantee" in its entirety.**

5. The points Lehman Brothers Holdings Tncorporated Capital Trusts TTT, TV, V and VT are in parity with its affiliates' most senior preferred or preference stocks was not objected or opposed.

   a. Lehman Brothers Holdings Tnc.'s affiliates in the United Kingdom paid off all their creditors and its equity.

   "Lehman Brothers Holdings Tnc.'s affiliates in the United Kingdom paid off all their creditors and its equity. **"We have been able to pay everybody everything they were owned – and we had £8bn left over, which was mainly the bank's own capital."** (EXHTBTT A)

   b. Point #7, "LBHT's Capital Trusts TTT, TV, V, and VT Global Guarantee/Resolution claims are in parity with or rank higher than LBHT's, LBSF's or LBCC's corresponding guaranteed debt claims that were paid in 2014. (Docket#46304)"

   c. "LBHT and JPMCB/JPMST are codebtors and thus affiliates in this bankruptcy via common control. JPMCB/JPMST guaranteed the claims of all its affiliates with LBHT's September 9, 2008 Guarantee and Security Agreement. Therefore, my CTs guaranteed claims are parity with the CTs held by JPMST or JPMCB affiliates per the CTs relevant prospectus. (Docket #59555)."

**Rex Wu request the Honorable Court to rule in his favor as there were parity distributions, payouts, settlement or any compensation paid to LBSF, LBCC, LBHI and JPMSI or JPMCB due to the Debtor not opposed or objected to these points.**

6. The Debtor sees the relevance and the enforceability of the Guarantee as valid to the extent that the debtor chose to omit the entire clause relating to the *parity* of the preferred securities to the "Affiliates" on their Objection to my motion when quoting "THE STATUS OF THE GUARANTEE".

   a. Per Capital Trust VT Prospectus

   "The Guarantee will constitute an unsecured obligation of Lehman Brothers Holdings and will rank:
   i. Subordinate and junior of rights in payment to all other liabilities of Lehman Brother's Holdings
   ii. **On a parity with the most senior preferred or preference stock <u>now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers</u>**

**Holdings in respect of any preferred securities of ANY AFFILIATE of Lehman Brothers Holdings**, and

iii.  Senior to Lehman Brothers Holdings common stock

b.  Per Debtor's Objection

The Subordinated Guarantees themselves likewise provide that: [LBHT's] [g]guarantee will constitute unsecured obligations of [LBHT] and will rank (i) subordinate and junior in right of payment to all other liabilities of [LBHT], **(ii) on a parity with the most senior preferred or preference stock…** and (iii) senior to [LBHT's] common stock.

7.  To explain the Status of the Guarantee, if there are any payouts, distributions or settlements "with the most senior preferred and preference stock hereafter issued by Lehman Brothers Holdings and with **ANY GUARANTEE** now and hereafter entered by Lehman Brothers Holdings in respect of any preferred securities of **ANY AFFILIATE** of Lehman Brothers Holdings," the Lehman Brothers Holding Inc. Capital Trusts III, IV, V and VI are entitled to the same payout, distribution, or settlement because of the "Parity with Affiliates" rights stated in the Prospectus.  "And senior to the commons stocks of Lehman Brothers Holdings."

8.  The Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI being in parity with the most senior preferred or preference stock is of great importance that the Debtor chose to leave that part of the clause out of their objection because it proves the Guarantee entitles each of their holders to distributions, payouts or settlements made by the Debtors to those Affiliates which are in PARITY with the Lehman Brothers Holdings Inc.'s Capital Trust III, IV, V and VI.  The GUARANTEE which Rex Wu is enforcing allows the Lehman Brothers Holdings Inc Capital Trusts III, IV, V and VI through the GUARANTEE to be classed other than 10B, another proper claim class, a set-off claim or to be settled.

9.  The Debtor did not deny that the Bar Date argument is invalid nor did the Debtor oppose the Bar Date argument with reasons stating what Rex Wu stated in his motion is invalid.  Instead, the Debtor stated what the procedures are as to the Bar Date. Therefore, the Debtor did not object to the BAR DATE

**Rex Wu's argument to enforce the Bar Date was not objected or opposed by the Debtor. Rex Wu respectfully requests the Honorable Court to rule in his favor to grant the Bar Date Exemption in its entirety.**

- The Plan contains various mechanisms and procedures regarding claims against any of the Debtors, including allowance, reserve, and distribution provisions.  (See Plan, Art. VIII ("Provisions Regarding … Distributions Under the Plan"), Art. IX ("Procedures for Treating Disputed Claims"); Confirmation Order, ¶¶ 40-45 ("Distributions and Reserves").)  LBHT is required to maintain appropriate reserves for disputed claims and make distributions on account of allowed claims. (See Plan, Art. 8.4.)  (Docket #59409)

- LEHKQ, LEHLQ, LHHMQ and LEHNQ were not required to file proofs of claim against the Debtors under the Bar Date Order.  The Bar Date Order includes a carve-out from the proof of claim filing requirements for entities listed on the Exempt Entities List, on which LEHKQ, LEHLQ, LHHMQ and LEHNQ appear.  (See Bar Date Order  ("[T]he following persons or entities are not required to file a Proof of Claim on or before the Bar Date: [. . . ] any entity included on the Exempt Entities List[.]").  The Confirmation Order and the Plan do not specifically alter the carve-out

included in the Bar Date Order with respect to the Guarantee and the Guarantee Claims.

- In fact, the Plan and the Confirmation Order preserve the Guarantee Claims. A "Claim" under the Plan is as defined under the section 101(5) of the Bankruptcy Code, which does not require that a proof of claim be filed. (Plan, Art. 1.22.) The Plan's allowance and dispute provisions then address the treatment of various claims. (See Plan, Art. 1.4, Art. 1.46.) These provisions do not specifically state whether the claims of "Exempt Entities" are "allowed" or "disputed," where such claims were listed in the Schedules and where the Bar Date Order did not require the filing of a proof of claim. But certainly nothing in the Plan explicitly eliminates the Guarantee and the Guarantee Claims. (Docket #59409)

- The Debtors' actions during the confirmation process illustrate that, when the Debtors wanted to, they knew how to require certain originally-denominated Exempt Entities to have to file a proof of claim after the Bar Date, but they did not impose that requirement on the "GUARANTEE" and Guarantee Claims of LEHKQ, LEHLQ, LHHMQ AND LEHNQ.

- Because LEHKQ, LEHLQ, LHHMQ AND LEHNQ'S "GUARANTEE" and Guarantee claims were not expressly disallowed or extinguished by virtue of the Confirmation Order and the Plan, the Bar Date Order carve-out still controls with respect to the Guarantee Claims. Because LEHKQ, LEHLQ, LHHMQ AND LEHNQ are exempt from having to file a proof of claim under the Bar Date Order, their Guarantee Claims are preserved without having to file a proof of claim at any time, before or after the Bar Date. (See Plan, Art. 1.4. (a "Claim" is "Allowed" under the Plan if it "is not Disputed").)    The Court should accordingly enforce the Confirmation Order and the Plan with respect to the Guarantee Claims, which contain allowance, reserve, and distribution procedures regarding unresolved claims.

10. "The order "ORDER PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3) ESTABLISHING THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND APPROVING THE PROOF OF CLAIM FORM" [Docket #4271 page 4 and 5] governs the BAR DATE ORDER states the following:

…….. *"ORDERED that the following persons or entities are **not** required to file a Proof*

*of Claim on or before the Bar Date:*

    *(a) any person or entity whose claim is listed on the Schedules and (i) whose*

*claim is not described as "disputed," "contingent," or "unliquidated," and (ii) who*

*does not dispute the amount, priority or nature of the claim set forth in the*

*Schedules;*

    *(b) any person or entity whose claim has been paid in full by the Debtors;*

    *(c) any person or entity that holds an interest in the Debtors, which interest*

*is based exclusively upon the ownership of common or preferred stock, membership*

*interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; provided, however, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;*

*(d) any person or entity that holds a claim that has been allowed by an order of this Court entered on or before the Bar Date;*

*(e) any holder of a claim for which a separate deadline is fixed by this Court;*

*(f) any holder of a claim who has already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; provided, however, any holder that has filed a Proof of Claim based on a Derivative Contract or a Guarantee on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantees;*

*(g) any holder of any claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy, insolvency proceeding or similar proceeding, in a foreign jurisdiction; provided, however, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;*

*(h) any holder of a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "Master List of Securities") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a*

*global proof(s) of claim on behalf of all holders of securities for which it is*

*identified as Indenture Trustee on the Master List of Securities); provided, however,*

*that security holders who wish to assert claims against the Debtors arising out of or*

*relating to the sale, issuance, or distribution of a security, must file Proofs of*

*Claim on or before the Bar Date, unless another exception identified herein applies;*

*and*

> *(i) any entity included on the Exempt Entities List available on the Debtors'*
>
> *website http://www.lehman-docket.com (the "Exempt Entities List") and any*
>
> *subsidiary for which the entity on the Exempt Entities List owns at least a*
>
> *fifty percent equity interest in such subsidiary, specifically excluding any*
>
> *subsidiary that is in a bankruptcy, insolvency or similar proceeding in a*
>
> *foreign jurisdiction and Lehman Brothers Inc.;*

*and it is further"*

11.   The LBHI's Capital Trust III, IV, V and VI meets the requirements under bullet point (i)

12.   Furthermore, under the Bar Date Order Notice (Docket # 4251 Exhibit A), "you do not need to file a proof of claim if…"

13.   *(9)   You are an entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "Exempt Entities List") or any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, specifically excluding any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction or Lehman Brothers Inc.*

14.   "If your claim falls within **any** of the above categories, your rights as the holder of such claim will be preserved **without** you filing of a Proof of Claim." *(Docket #4251 Exhibit A)*

15. Also, Rex Wu enforcing my right to exercise the guarantee under exemption (h) and (i) of the Bar Date Order.  The Capital Trusts III, IV, V and VI are Exempted entities with each of their Prospectus enforceable.

16. The Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI preferred
securities to this day still trade over the counter.  FTNRA and SEC rules states
holders of the preferred securities are the rightful holders of the rights and
standing to the securities ala the Prospectus as if it were from day 1.  The
Prospectus rights are valid and enforceable under the Plan of Reorganization and the
Confirmation Order.  The Debtor could have asked the Trustee to delist but did not.

17. Rex Wu's Guarantee Claim should be approved because of the qualification(s) to be
exempted under the BAR DATE order and plus the Lehman Brothers Holdings Inc's Capital
Trusts III, IV, V and VI are not in bankruptcy.  Lehman Brothers Holding Inc. is in
Bankruptcy.  The four Capital Trusts preferred holders (beneficiaries) are NOT Lehman
Brothers Holdings Inc's equity holders.

> "An equity security holder is a holder of an equity security of the debtor.
> Examples of an equity security are a share in a corporation, an interest of a
> limited partner in a limited partnership, or a right to purchase, sell, or
> subscribe to a share, security, or interest of a share in a corporation or an
> interest in a limited partnership. 11 U.S.C. § 101(16), (17)"
>
> The Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI are not
> listed on the Unaudited Balance Sheet filed by Lehman Brothers Holdings Inc.
> semi-annually or are the LBHI Capital Trusts III, IV, V and VI listed on the
> Plan of Reorganization or the Confirmation Order as a subsidiary or an
> affiliate of Lehman Brothers Holding Inc.  The equity interest holder stated in
> 501(a) represents equity interest holders of Lehman Brothers Holdings Inc.
> Therefore, the claim qualification is accurate.

18. The Guarantee Claim meets the requirements of 502(b)(1) requirement because there
is a liability created by the "Parity" to any of LBHT Affiliate's most senior
preferred or preference stock clause within the Guarantee of Lehman Brothers
Holdings Inc. Capital Trusts III, IV, V and VI Prospectus.  The Prospectuses are
enforceable.  The Debtors even quoted the Prospectus in their "Objection."  501(a)
is also met.  Any payment made to Lehman Brothers Holdings Inc.'s Affiliates'
holders who are in parity with the Lehman Brothers Holdings Inc. Capital Trusts
III, IV, V and VI are current liabilities.

19. Rex Wu requests the Honorable Court to enforce the Guarantee and within the guarantee
the parity clause with affiliates creates a liability.  The Debtor quoting the
Prospectus in his "Objection" should deem in enforceable in its entirety.  The Bar
Date Exemption exempts the claim to be filed by the Bar Date.  There is a section in
the Plan of Reorganization that grants the Honorable Judge Chapman the right to
approve claims at the Honorable Judge's discretion which is specially established for
special cases like Rex Wu's motion.  Rex Wu respectfully requests as also per his
motion for Honorable Judge Chapman to grant the claim.

20. Rex Wu's motion have 3 arguments.  They are Enforce the Guarantee, the Bar Date
Exemption and the Guarantee Claim.

21. **Description of the Guarantee — Right of Set-off**

*Per LBHI Capital Trust IV Prospectus:*

> "Pursuant to and to the extent set forth in the guarantee, Lehman Brothers Holdings
> will irrevocably and unconditionally agree to pay in full to the holders of the
> preferred securities and common securities, on a pro rata basis, as and when due,
> regardless of any defense, **right of set-off** or counterclaim which the trust may
> have to assert, the following payments without duplication:

- Any accumulated and unpaid distributions that are required to be paid on the preferred securities, to the extent the trust have funds available for such distributions;

- The redemption price per preferred security, to the extent the trust has funds available for such redemptions; and

- Upon a voluntary or involuntary dissolution, winding-up or liquidation of the trust, other than in connection with the distribution of junior subordinate debt securities to the holders of preferred securities, the lesser of

  - The aggregate liquidation amount of the preferred securities and all accumulated and unpaid distributions thereon, or
  - The amount of assets of the trust remaining for distribution to holders of the preferred securities upon a liquidation of the trust."

  -

22. Even though this applies to the subordinate debenture, Rex Wu wants to point out that set-off remedies are available for the Guarantee.

""If a trust enforcement event occurs, the holders of preferred securities would rely on the enforcement by the property trustee of its rights as registered holder of the subordinated debentures against Holdings. In addition, the holders of a majority in liquidation amount of the preferred securities will have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the property trustee or to direct the exercise of any trust or power conferred upon the property trustee under the declaration of trust, including the right to direct the property trustee to exercise the remedies available to it as the holder of the subordinated debentures. The subordinated indenture provides that the indenture trustee shall give holders of subordinated debentures notice of all events of default within 30 days after occurrence.

If the property trustee fails to enforce its rights under the subordinated debentures in respect of an indenture event of default after a holder of preferred securities has made a written request, such holder may, to the extent permitted by applicable law, institute a legal proceeding against Holdings to enforce the property trustee's rights under the subordinated debentures. In addition, if Holdings fails to pay interest or principal on the subordinated debentures, a holder of preferred securities may directly institute a proceeding for enforcement of payment to such holder of the principal of or interest on the subordinated debentures having a principal amount equal to the aggregate stated liquidation amount of the preferred securities of such holder (a "direct action"). **In connection with such a direct action, Holdings will have the right under the indenture to set off any payment made to such holder by Holdings.** The holders of preferred securities will not be able to exercise directly any other remedy available to the holders of the subordinated debentures.""

---

[1] "A set-off will prevent the Debtors from making a duplicate payment to a holder. LBHI could issue new notes for all 4 Capital Trusts, within 30 days, to avoid duplicate payments under the June 9, 2005 BOD's LBH PLC Guarantee, i.e. LBT"

23. LBHI will have to make payments to the Trust if the Guarantee is enforced globally. Unfortunately, only the majority holder can exercise that right and several communications to the Trustee BNYM has been unresponsive. Rex Wu is exercising his individual right to enforce the GUARANTEE as afforded to him by the Prospectus. (EXHIBIT B)

24. If the guarantee is enforced which is what Rex Wu is advocating and exercising his right to enforce the Guarantee under the Prospectus, then the PARITY provision will list that CTs with the parity stocks paid out similar to in Europe where the Trustee PWC paid out that AFFILIATE(s) 100% plus post-petition interest plus payments to their equity. The entities managed under trustee PWC are affiliates.

25. **The rights** of LBHI's Capital Trusts III, IV, V and VI were preserved by LBHI Capital Trusts III, IV, V and VI being EXEMPTED per the Bar Date Order, the Board of Director's Guarantee and the Global Guarantee. The rights of the Lehman Brothers Holdings Inc's Capital Trusts III, IV, V and VI are governed by each respective prospectus.

26. The new claim is allowed by the Bar Date Exemption. The Bar Date does not apply to Rex Wu's new claim. Based on Rex Wu exercising his rights under the Prospectus to enforce the Guarantee, the Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI are in parity with LBHI's affiliates i.e. the ones in Europe where they paid their senior preferred and common shareholders. Thus, the Lehman Brothers Holdings Inc. Capital Trusts III, IV, V and VI are entitled to that amount and a new liability arises. **IF Lehman Brothers Holdings Inc. or any of its affiliates paid their most senior preferred or preference stock, there is a current liability.** With LBHI's Capital Trusts III, IV, V and VI being exempted from the bar date and with the new current liability from the parity with affiliates' most senior preferred or preference shares plus the FINRA and SEC rules allows a new claim and therefore Rex Wu's claim is not a duplicate claim.

27. Lehman Brothers Holdings Inc.'s Liability comes from the

"On a parity with the most senior preferred or preference stock now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect of any preferred securities of ANY AFFILIATE of Lehman Brothers Holdings"

clause in which the Debtor attempted to hide on his Objection. When enforced, the liabilities to Lehman Brothers Holdings Inc. Capital Trust III, IV, V and VI are entitled to parity amounts as the payments amounts made to the European Affiliates, ECAPs and any other Affiliates' senior preferred or preference stock. These are all current liabilities.

28. Not all Guarantees have the same terms. Not all Guarantees carry the same terms like what the LBHI' Capital Trusts III, IV, V and VI have…

"The Guarantee will constitute an unsecured obligation of Lehman Brothers Holdings and will rank:
   i. Subordinate and junior of rights in payment to all other liabilities of Lehman Brother's Holdings
   ii. **On a parity with the most senior preferred or preference stock <u>now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect of any preferred securities of ANY AFFILIATE of Lehman Brothers Holdings</u>, and**

iii.  Senior to Lehman Brothers Holdings common stock

Point ii, and the non-dischargeable clause is what makes this Guarantee unique.

29. Lehman Brothers Holdings Inc is the largest corporate bankruptcy in US History.  The bankruptcy proceeding is under scrutiny and must be executed accordingly and with the rule of law.  Rex Wu's motion is in compliance and meets all the requirements and his rights are protected by the Plan of Reorganization, Confirmation Order and the BAR DATE Order.  The Debtor's reason for not wanting to deal with enforcement because the debtor doesn't want to "Flood Gates" is misguided.  The Debtor is responsible to make sure the Bankruptcy is carried out properly and according to LAW and not determine rightful enforcement actions by a preconceived notion of "Opening Flood Gates."  By stating the debtor does not want to open flood gates it insinuates there is a prejudice or favoritism towards a class of creditors and an appearance to suppress potential valid enforcements, issues or claims.

30. Rex Wu's motion does not have a material impact to creditors because the enforceable amount under the guarantee is immaterial to the overall distributions.  The Debtor has moved or granted and placed parity affiliate interest to distribution classes, payouts or settlements in the past.

31. Rex Wu respectfully request Honorable Judge Chapman to grant the claim with the powers granted to the Honorable Judge from The Plan of Reorganization, Confirmation Order and Bar Date order to approve claims at Honorable Judge Chapman's discretion.

32. Rex Wu supported the Joinder of Rickey Gregory because Rickey Gregory's Joinder and Rex Wu's motion have similarities and not differences.  Rex Wu disagrees with the Debtor that the Rickey Gregory Joinder has nothing new to add.  Rex Wu also refutes the Debtor's comment that Rex Wu and Rickey Gregory's points are not clear because a detailed letter was sent to the Debtor via email 6 days before the Debtor's Objection was submitted. The contributions by Rickey Gregory are as follows and needs to be addressed. (EXHIBIT C)

   1. LBHI's Capital Trusts III, IV, V, and VI should already have a valid Global Guarantee/Resolution claim which are in parity with or rank higher than LBHI's, LBSF's or LBCC's corresponding guaranteed debt claims that were paid in 2014.

   2. (a) Docket 8307, page 1775 - Report of Anton R. Valukas, Examiner

      "This resolution, however, may be viewed as a unilateral contract for a general guaranty that may be enforced by "anyone to whom it is presented who acts upon it" 6619""
      .
      .
      .
      footnote 6620: The LBHI 2006 10-k (Feb, 13, 2007) and 2007 10-K (Jan. 29, 2008) refer to the fact that LBHI "guarantee[s] all of the obligations of certain subsidiaries...."

      (b) Docket # 46304
      Filed Sep 13 2014
      Response to Order Granting Motion for Authorization for Lehman Brothers Special Financing Inc. and Lehman Brothers Commercial Corporation to invest disputed claims reserves for claim numbers 66455

and 66476 (related document(s)[46276]) filed by Rickey Gregory.
(White, Greg)
Debtor: 08-13555 Lehman Brothers Holdings Inc.
Related Dockets

(c) The ECAPS' June 9, 2005 Board Resolution (Guarantee Claim against
LBHT) facts are inside "Docket # 58763
Filed Aug 27 2018
Letter to The Honorable Shelley C. Chapman Regarding Sixteenth Plan
Distribution Filed by Garrett A. Fail on behalf of Lehman Brothers
Holdings Inc.. (Fail, Garrett)
Debtor: 08-13555 Lehman Brothers Holdings Inc."

(d) LBHT's Capital Trust Preferred Securities (CTs), per their
relevant prospectus, and the ECAPS are guaranteed
by the June 9, 2005 General Guaranty or Board of Directors' Resolution
by way of LBH PLC's General Guaranty. LBHT guaranteed the liabilities,
including the ECAPS Limited Partnerships 1 thru 3 subordinate notes,
issued by LBH PLC with the June 9, 2005 General Guaranty or Board of
Directors' Resolution.


3.   Parity with the ECAPS

"PROSPECTUS SUPPLEMENT

(To prospectus dated June 5, 2001)

8,000,000 Preferred Securities

LEHMAN BROTHERS HOLDINGS CAPITAL TRUST VI

6.24% Preferred Securities, Series N

(Liquidation amount $25 per preferred security)

fully and unconditionally guaranteed, to the extent set forth herein, by

LEHMAN BROTHERS HOLDINGS INC.
.
.
.


Status of the Guarantees

        The guarantee will constitute an unsecured obligation of
Lehman Brothers Holdings and will rank:

    •
subordinate and junior in right of payment to all other liabilities of
Lehman Brothers Holdings,


    •
on a parity with the most senior preferred or preference stock now or
hereafter issued by Lehman Brothers Holdings and with any guarantee
now or hereafter entered into by Lehman Brothers Holdings in respect

of any preferred securities of any affiliate of Lehman Brothers
Holdings, and

- 

senior to Lehman Brothers Holding's common stock.

        The guarantee will not place a limitation on the amount of
additional senior debt that may be incurred by Lehman Brothers
Holdings.

"

https://www.sec.gov/Archives/edgar/data/806085/000104746905000357/a2149684z424b
2.htm


****

"NATURE OF THE ACTION
08-13555-scc Doc 59660 Filed 04/30/19 Entered 04/30/19 11:00:47 Main Document
1. LBHT brings this action to recover $260,095,121.86 owed to LBHT from
Defendants pursuant to the terms of the Settlement Agreement (as
defined below)1 entered into by
LBHT and Defendants. Specifically, LBHT is owed $128,044,775.80 from
LBL, $16,280,324.87
from MBAM, $10,160,114.94 from ESH, and $105,609,906.25 from LBHT2.
LBHT distributed
these amounts on account of LBHT Class 4B Senior Affiliate Guarantee
Claims that were allowed
pursuant to the Settlement Agreement (the "Guarantee Claims"). Each
Defendant is in breach of
the Settlement Agreement for its failure to remit such amount to LBHT.
2. Pursuant to the Settlement Agreement, the Defendants agreed to remit to LBHT
distributions that exceeded the amount of the Primary Claim.2 The
relevant Primary Obligors have
made distributions to the holder of each Primary Claim that equal the
amount of the Primary Claim.
Thus, according to the express terms of the Settlement Agreement, all
amounts distributed by
1 Capitalized terms used herein but not otherwise defined shall have
the same meaning as in the
Settlement Agreement.
2 Many of the LBHT Class 4B Senior Affiliate Guarantee Claims that
were allowed pursuant to the
Settlement Agreement were allowed against LBHT in amounts
substantially lower than the amount
of the corresponding Primary Claims. Accordingly, the allowed Primary
Claim, and not the
allowed Guarantee Claim, was used to measure satisfaction of the
Guarantee Claim.

- 
- 
-

TT. LBH PLC Made Distributions That Exceed the Amount of the Applicable Primary
Claims
22. LBL. Under the Settlement Agreement, LBHT gave Defendant LBL an Allowed
Class 4B Senior Affiliate Guarantee Claim (No. 200020) in the amount
of $360,000,000.00. To
date, LBHT has made distributions of $128,044,775.80 on account of
such claim. The
corresponding Primary Claim against LBH PLC equals GBP 709,013,200.00.
To date, LBH PLC
distributed GBP 726,861,189.28 on account of the Primary Claim (GBP
709,013,200.00 as 100%
principal and GBP 17,847,989.28 as statutory interest).
23. MBAM. Under the Settlement Agreement, LBHT gave Defendant MBAM an
Allowed Class 4B Senior Affiliate Guarantee Claim (No. 200031) in the amount of
$46,568,411.00. To date, LBHT has made distributions of $16,280,324.87
on account of such

claim. The corresponding Primary Claim against LBH PLC equals GBP
51,924,415.00. To date,
LBH PLC distributed GBP 53,231,508.30 on account of the Primary Claim
(GBP 51,924,415.00
as 100% principal and GBP 1,307,093.30 as statutory interest).
24. ESH. Under the Settlement Agreement, LBHT gave Defendant ESH an Allowed
Class 4B Senior Affiliate Guarantee Claim (No. 200023) in the amount
of $28,565,323.00. To
date, LBHT has made distributions of $10,160,114.94 on account of such
claim. The corresponding
Primary Claim against LBH PLC equals GBP 31,358,468.41. To date, LBH
PLC distributed GBP
32,147,855.14 on account of the Primary Claim (GBP 31,358,468.41 as
100% principal and GBP
789,386.73 as statutory interest).
TTT. LBTE Made Distributions That Exceed the Amount of the Applicable
Primary Claims
25. Under the Settlement Agreement, LBHT gave Defendant LBHT2 an Allowed Class
4B Senior Affiliate Guarantee Claim (No. 200016) in the amount of
$302,087,667.00.5 To date,
LBHT has made distributions of $105,609,906.25 on account of such
claim. The corresponding
Primary Claims against LBTE total GBP 1,278,542,606.85. To date, LBTE
distributed
GBP 1,996,348,851.41 on account of the Primary Claims (GBP
1,278,542,606.85 as 100%
principal and GBP 717,806,244.56 as statutory interest).
IV. LBHT's Efforts to Avoid Litigation
26. Defendants have failed to make any portion of their required
payments to date under
the Clawback Provision.
27. LBHT engaged in discussions with Defendants for over six months to
recover the
amounts to which LBHT became entitled. While LBHT hoped that the
discussions would lead to a satisfactory resolution, as of the filing
of this adversary complaint, those discussions have not
resulted in a consensual resolution. Accordingly, LBHT hereby brings
these claims against
Defendants.

14 of 32

5 LBHT2 subsequently assigned its rights to receive distributions from LBIE on the corresponding
Primary Claims."

*****

8-13555-jmp Doc 22759 Filed 11/29/11 Entered 11/29/11 16:38:50 Main Document

LBHT. The Plan separately classifies Claims against or Equity Interests in LBHT into seventeen (17) Classes as follows:

Class 1 includes Claims entitled to priority under section 507(a) of the Bankruptcy Code or, to the extent applicable, 12 U.S.C. § 4617(b)(15), other than Priority Tax Claims, which are not classified and are separately treated under section 2.3 of the Plan.

Class 2 includes all Secured Claims that are secured by a lien or collateral or
that are subject to a valid right of setoff in accordance with Section 506 of the
Bankruptcy Code.

Class 3 provides for the separate classification of Senior Unsecured Claims, which generally are Claims based upon bonds issued by LBHT that are contractually entitled to a priority in right to payment over all subordinated debt Claims against LBHT.

Class 4A provides for the separate classification of Senior Affiliate Claims, which are Claims asserted by Affiliates against LBHT that are contractually entitled to a priority in right to payment over certain subordinated debt Claims
against LBHT.

Class 4B provides for the separate classification of Senior
Affiliate Guarantee
Claims, which are Guarantee Claims asserted by Affiliates that are contractually entitled to a priority in right to payment over certain subordinated debt Claims against LBHT.

Class 5 provides for the separate classification of Senior Third-Party Guarantee Claims, which are Guarantee Claims asserted by a party that is not an Affiliate and that are contractually entitled to a priority in right to payment
over certain subordinated debt Claims against LBHT.

Class 6A provides for the separate classification of Convenience Claims, which are Senior Unsecured Claims or General Unsecured Claims in an amount of $50,000 or less.

Class 6B provides for the separate classification of Convenience Guarantee Claims, which are Senior Third-Party Guarantee Claims or Third-Party Guarantee Claims in an amount of $50,000 or less.

Class 7 provides for the separate classification of General Unsecured Claims against LBHT, which generally include trade vendor, rejection damages and litigation Claims (other than Claims subject to section 510(b) of the Bankruptcy Code), that are not entitled to a priority in right to

payment over subordinated debt
Claims against LBHI.

Class 8 provides for the separate classification of Affiliate Claims against
LBHI, which are all Claims against LBHI asserted by an Affiliate that are not
entitled to a priority in right to payment over subordinated debt
Claims against
LBHI.

Class 9A provides for the separate classification of Third Party Guarantee
Claims, which are Guarantee Claims asserted by a party that is not an Affiliate
or a Designated Entity and that are not entitled to a priority in right to
payment over subordinated debt Claims against LBHI.

Class 9B provides for the separate classification of the Guarantee
Claim of the
Racers Trusts, which is allowed pursuant to the Global Settlement in the
amount of $1.947 billion.

Classes 10A, 10B and 10C provides for the separate classification Claims
against LBHI that are contractually subordinated to certain other Claims
against LBHI.

Class 11 provides for the separate classification of Claims against LBHI that
are subordinated to other Claims against LBHI pursuant to section 510(b) of
the Bankruptcy Code.

Class 12 provides for the separate classification of LBHI Equity Interests.

33. Rickey Gregory Lehman Brothers Holdings Capital Trust III, IV, V and VI's
holdings.  (EXHIBIT D)


Wherefore, for all of the foregoing reasons, Rex Wu respectfully request that the

court overrule the Objection to Rex Wu's "MOTION FOR AN ORDER ENFORCING THE MODIFIED

THIRD AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS

AFFILIATED DEBTORS FOR PURPOSES OF DISTRIBUTION" and grant Rex Wu's motion and grant

such other reliefs the court deems just and equitable.


Dated: June 3rd[th] 2019                        Respectfully Submitted,



                                                Rex Wu
                                                6315 N. Campbell
                                                Chicago, IL 60659
                                                312-785-0348

## EXHIBIT A

**Lehman gamble paid out for brave investors**
By Dominic O'Connell Today Programme business presenter

**Investors who took a gamble on the wreck of Lehman Brothers' UK operations after the investment bank collapsed made up to seven times their money.**

The assets of Lehman's UK arm greatly exceeded its liabilities. Tony Lomas, the partner at the accountancy firm PwC who was appointed lead administrator, told the BBC there was a surplus of about £8bn.  Lehman's collapse into administration a decade ago marked the height of the financial crisis.

Creditors able to wait while the administrators unwound millions of trading positions received back more than they were originally owed, said Mr Lomas, who has recently left PwC.  That was because they were entitled to back interest on their debts, and were eventually paid 140% of their claims - or 40% more than face value.

Some creditors did not wait, however, and were happy to sell their claims against Lehman in the early days of the insolvency.

Typically they sold for a fraction of the face value - in many cases just a fifth or a quarter of the sum owed.

The investors who bought those claims and waited for a payout made up to seven times their money. "But they didn't know that was going to happen," Mr Lomas said.

Lehman UK was far from flush when he first took over. The US parent company had grabbed all the cash available - a normal practice for large multinational companies with central treasury units - and the British operation was unable to meet its bills. "There was £3bn that had to go out on the Monday morning and it didn't have it," Mr Lomas said.

As a result, Lehman UK was put into administration, and the search for assets began. "The first thing is you are looking for assets - and for liabilities - and first of all for liquid assets, things that you might be able to sell quickly," Mr Lomas said.

"We had a September payroll due and the quarterly rent was due. We needed about £100m quickly. We couldn't find liquid assets quickly enough, so we had to borrow £100m from a hedge fund."

That search for ready funds was itself fraught. "You had to be sure you were borrowing from the right legal entity - from the right bit of Lehmans that you were sure assets would fall into," he explained. "Most of the counterparties to Lehman trades just identified them as trades with Lehman - not the actual legal entity, so you had to be sure."

**"We have been able to pay everybody everything they were owned - and we had £8bn left over, which was mainly the bank's own capital."**

Separately, the senior Bank of England official who dealt with the fallout from the Lehman collapse has revealed the Bank arranged to bring $86bn from the US to help keep London markets running in the wake of the collapse.

Sarah Breeden, now executive director for international banks supervision at the Prudential Regulation Authority, said the Lehman administration meant London markets were running short of US dollars, leading the Bank of England to agree a "swap" deal with its US counterparts. "Eventually that totalled $86bn," she said.

The Bank of England lost no money from its interventions after Lehman, Ms Breeden added.

**EXHIBIT B**

Dear Mr. Goldblatt,

I joined motion Docket # 59614 to enforce the June 9, 2005 LBHI's
Board of Directors Guarantee amongst other related items. I own the
following shares:

LBHI's TRuPS/subordinate notes Bank of New York Mellon

Ticker
Claim Number
Cusip Number
Issuer/Trust

LEHKQ (I own 28,000 shares)
21805
52519Y209
Lehman Brothers Holdings Capital Trust III


LEHLQ  (I own 28,000 shares)
22122
52520B206
Lehman Brothers Holdings Capital Trust IV

LHHMQ  (I own 6,000 shares)
22123
52520E200
Lehman Brothers Holdings Capital Trust V

LEHNQ (I own 9,000 shares)
67753
52520X208
Lehman Brothers Holdings Capital Trust VI



Respectfully submitted,
Rickey M. Gregory
By: /s/ Rickey M. Gregory

Rickey M. Gregory

7090 FM 141
Dime Box, Texas 77853
Telephone: (512) 417-6312
Email: rickeygregory4477@gmail.com
Pro-se

Exhibit A:


Docket # 59659
Filed Apr 25 2019
Motion to Join Joinder to Motion for an Order Enforcing the Modified
Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc.
and its Affiliated Debtors for Purposes of Distributions filed by Rex
Wu (related document(s)[59614]) filed by Rickey Gregory. (White, Greg)
Debtor: 08-13555 Lehman Brothers Holdings Inc.
Related Dockets
VIEW
Related Dockets


Docket # 59614
Filed Apr 08 2019
Motion to Approve Motion for an Order Enforcing the Modified Third
Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its
Affiliated Debtors for Purposes of Distributions filed by Rex Wu.
(White, Greg)
Debtor: 08-13555 Lehman Brothers Holdings Inc.


Docket # 59715
Filed May 13 2019
Letter re: Joinder to Motion for an Order Enforcing the Modified Third
Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its
Affiliated Debtors for Purposes of Distributions filed by Rex Wu
(related document(s)[59659]) Filed by Rex Wu. (White, Greg)
Debtor: 08-13555 Lehman Brothers Holdings Inc.


Exhibit B:

---------- Forwarded message ----------
From: Rex W <rex_wu@live.com>
Date: Mon, 27 May 2019 14:52:01 +0000
Subject: Fwd: Lehman Brothers Holdings Capital Trust III IV V VI
Trustee Request ---Filed Motion---
To: rickey gregory <rickeygregory4477@gmail.com>
Cc: rickeygregory165 <rickeygregory165@gmail.com>

Rickey,

Fyi, Here is what I sent to BNYM.

Rex Wu
Mobile: (312) 785-0348

Sent via my mobile device



From: Rex W
Sent: Wednesday, April 10, 9:24 AM
Subject: FW: Lehman Brothers Holdings Capital Trust III IV V VI
Trustee Request ---Filed Motion---
To: jonathan.goldblatt@bnymellon.com


Hello Mr. Goldblatt,

As an FYI, here is the motion I filed with Honorable Judge Chapman.
This should have been your job (BNYM) as the Trustee.

Thanks,

Rex

Sent from Mail<https://go.microsoft.com/fwlink/?LinkId=550986> for Windows 10

From: Rex W<mailto:rex_wu@live.com>
Sent: Wednesday, April 3, 2019 9:44 AM
To: jonathan.goldblatt@bnymellon.com<mailto:jonathan.goldblatt@bnymellon.com>
Subject: Fwd: Lehman Brothers Holdings Capital Trust III IV V VI Trustee Request

Hello Mr. Goldblatt,

I am following up on the email I sent March 27th. The ECAPs are able
to get their claims reserved. I am enforcing my rights to the
guarantee to the Trustee of the Capital Trusts. Please see previous
and the forwarded email. BNYM is listed as the Trustee and you are
listed as the contact person on the Master Service List. Please
respond to my request. Or forward my request and this email to the
appropriate person. You are listed as the contact person. Time is
an essence. I look forward to hearing from you. Thank you.
Best Regards,
Rex Wu
Mobile: (312) 785-0348
Sent via my mobile device


From: Rex W
Sent: Wednesday, March 27, 4:20 PM
Subject: Lehman Brothers Holdings Capital Trust III IV V VI Trustee Request
To: jonathan.goldblatt@bnymellon.com
Cc: Rex W

Good Afternoon Mr. Goldblatt,
I got your email address from the Lehman Brother's updated Master
Service List filed today by Epiq. I am a holder of the preferred
shares of the Lehman Brothers Holdings Capital Trust III, IV, V and VI
in which the BNYM is the Trustee. The BNYM is the Trustee of the
Capital Trust in which the subordinate debt claims currently is in
class 10B. The cusips are listed below:
52519Y209 LEHKQ
52520B206 LEHLQ
52520E200 LHHMQ
52520X208 LEHNQ
I am requesting that the BNYM as Trustee enforce the GUARANTEE of the
4 CTs listed above. The 4 Capital Trusts which you oversee does not
have a due date to file the guarantee because the 4 CTs are EXEMPT
from the BAR Date. This information is on the Weil/Lehman website.
The 4 CTs are on the same list of EXEMPT Entities in which the ECAPs
(European Capital Trusts's) Trustee is currently arguing before
Honorable Judge Shelley's court. They are arguing to enforce the LBHI
bankruptcy which exempts the ECAPs from the BAR date thus allowing
their claim to proceed. This can be argued with the 4 Capital Trusts
to enforce the guarantee.
I am exercising my rights under the Prospectus of each Capital Trust
to request the BNYM as Trustee to please enforce the CT's guarantee
and request the Bankruptcy court to enforce the POR and place the CTs

21 oF 32

preferred shares in a higher class like other parity guarantees in
class 4B or the proper class to be determined for the benefit of the
Capital Trusts and their preferred shareholders.
I look forward to your response and guidance.
This email will be CC to myself.
Thank you.
Best Regards,
Rex

Rex Wu
Mobile: (312) 785-0348
Sent via my mobile device

  NEF scc Ch11 Motion to Approve Re Lehman Brothers Holdin.pdf
4897K View as HTML Scan and download

**From: Rex W**
**Sent: Thursday, May 23, 2019 6:42 PM**
**To: GARRETT.FAIL@weil.com**
**Cc: matthew.cantor@lehmanholdings.com; kristine.dickson@lehmanholdings.com; rickey gregory**
**Subject: Motion #59614**


Dear Mr. Fails,

I hope all is well.  I am open to settlement talks in regards to motion docket #59614.  Please let me know if there is any interest.  Thank you.

Best Regards,


Rex Wu

---

***Joinder:  Rickey Gregory****

………………………………………….

**BAR DATE**

1.  The order "ORDER PURSUANT TO SECTION 502(b)(9) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3003(c)(3) ESTABLISHING THE DEADLINE FOR FILING PROOFS OF CLAIM, APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND APPROVING THE PROOF OF CLAIM FORM" [Docket #4271 page 4 and 5] governs the BAR DATE ORDER states the following:

*…….."ORDERED that the following persons or entities are **not** required to file a Proof of Claim on or before the Bar Date:*

*(a) any person or entity whose claim is listed on the Schedules and (i) whose claim is not described as "disputed," "contingent," or "unliquidated," and (ii) who does not dispute the amount, priority or nature of the claim set forth in the Schedules;*
*(b) any person or entity whose claim has been paid in full by the Debtors;*
*(c) any person or entity that holds an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; provided, however, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;*
*(d) any person or entity that holds a claim that has been allowed by an order of this Court entered on or before the Bar Date;*
*(e) any holder of a claim for which a separate deadline is fixed by this Court;*

*(f) any holder of a claim who has already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; provided, however, any holder that has filed a Proof of Claim based on a Derivative Contract or a Guarantee on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantees;*

*(g) any holder of any claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy, insolvency proceeding or similar proceeding, in a foreign jurisdiction; provided, however, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;*

*(h) any holder of a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "Master List of Securities") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association,  and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities); provided, however, that security holders who wish to assert claims against the Debtors arising out of or relating to the sale, issuance, or distribution of a security, must file Proofs of Claim on or before the Bar Date, **unless another exception identified herein applies**; and*

*(i) any entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "Exempt Entities List") **and** any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, specifically excluding any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction and Lehman Brothers Inc.;*

and it is further"

2.    The LBHI Capital Trust III, IV, V and VI are Exempted Entities on the   "Exempt Entities List"  (Docket # 59614 Exhibit B) under the Bar Date Order.

3.    The LBHI's Capital Trust III, IV, V and VI meets the requirements under bullet point (i)

4.    The four prospectuses that affords me the right to enforce the guarantee belongs to LBHI's Capital Trust III, IV, V and VI.

5.    Furthermore, under the Bar Date Order Notice (Docket # 4251 Exhibit A), "<u>you do not need to file a proof of claim if...</u>"

*(a)  (9)  You are an entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "Exempt Entities List") **or** any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, specifically excluding any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction or Lehman Brothers Inc.*

6.    <u>"If your claim falls within **any** of the above categories, your rights as the holder of such claim will be preserved **without** you filing of a Proof of Claim."</u> *(Docket #4251 Exhibit A)*

7. The rights of LBHI's Capital Trusts III, IV, V and VI were preserved by LBHI Capital Trusts III, IV, V and VI being on the "Exempted Entities List" per the Bar Date Order. The rights of the Capital Trusts are governed by each respective prospectus.

8. The Prospectuses of LBHI's Capital Trust III, IV, V and VI are enforceable and valid.

9. I am enforcing my right to enforce the GUARANTEE under the prospectuses of LBHI Capital Trust III, IV, V and VI.

10. Also, I am enforcing my right to exercise the guarantee under exemption (h) and (i) of the Bar Date Order. The Capital Trusts III, IV, V and VI are Exempted Entities with each of their **Prospectuses 100% enforceable and valid thus affording me the right to enforce the Guarantee.**

## Relevent Prospectuses:

11. LBHI's Capital Trusts III, IV,V and VI each have "Relevant Prospectuses" as per the Plan Administrator on the February 26th 2014, LBHI Plan Administration's response to creditors.

12. I am exercising my right to enforce the guarantee under the relevant prospectuses.

## PARITY

13. LBHI's Capital Trusts III, IV, V, and VI should already have a valid Global Guarantee/Resolution claim which are in parity with or rank higher than LBHI's, LBSF's or LBCC's corresponding guaranteed debt claims that were paid in 2014.

14. (a) Docket 8307, page 1775 - Report of Anton R. Valukas, Examiner

   **"This resolution,however, may be viewed as a unilateral contract for a general guaranty that may be enforced by "anyone to whom it is presented who acts upon it" 6619""**

   .
   .

   .
   footnote 6620: The LBHI 2006 10-k (Feb, 13, 2007) and 2007 10-K (Jan. 29, 2008) refer to the fact that LBHI "guarantee[s] all of the obligations of certain subsidiaries...."

   (b) Docket # 46304
   Filed Sep 13 2014
   Response to Order Granting Motion for Authorization for Lehman Brothers Special Financing Inc. and Lehman Brothers Commercial Corporation to invest disputed claims reserves for claim numbers 66455 and 66476 (related document(s)[46276]) filed by Rickey Gregory. (White, Greg)
   Debtor: 08-13555 Lehman Brothers Holdings Inc.

Related Dockets

(c) The ECAPS' June 9, 2005 Board Resolution (Guarantee Claim against
LBHI) facts are inside "Docket # 58763
Filed Aug 27 2018
Letter to The Honorable Shelley C. Chapman Regarding Sixteenth Plan
Distribution Filed by Garrett A. Fail on behalf of Lehman Brothers
Holdings Inc.. (Fail, Garrett)
Debtor: 08-13555 Lehman Brothers Holdings Inc."

(d) LBHI's Capital Trust Preferred Securities (CTs), per their
relevant prospectus, and the ECAPS are guaranteed
by the June 9, 2005 General Guaranty or Board of Directors' Resolution
by way of LBH PLC's General Guaranty. LBHI guaranteed the liabilities,
including the ECAPS Limited Partnerships 1 thru 3 subordinate notes,
issued by LBH PLC with the June 9, 2005 General Guaranty or Board of
Directors' Resolution.

15. Parity with the ECAPS

"PROSPECTUS SUPPLEMENT

(To prospectus dated June 5, 2001)

8,000,000 Preferred Securities

LEHMAN BROTHERS HOLDINGS CAPITAL TRUST VI

6.24% Preferred Securities, Series N

(Liquidation amount $25 per preferred security)

fully and unconditionally guaranteed, to the extent set forth herein, by

LEHMAN BROTHERS HOLDINGS INC.

.
.
.

Status of the Guarantees

    The guarantee will constitute an unsecured obligation of
Lehman Brothers Holdings and will rank:

•
subordinate and junior in right of payment to all other liabilities of
Lehman Brothers Holdings,

- on a parity with the most senior preferred or preference stock now or hereafter issued by Lehman Brothers Holdings and with any guarantee now or hereafter entered into by Lehman Brothers Holdings in respect of any preferred securities of any affiliate of Lehman Brothers Holdings, and

- senior to Lehman Brothers Holding's common stock.

The guarantee will not place a limitation on the amount of additional senior debt that may be incurred by Lehman Brothers Holdings.

"

https://www.sec.gov/Archives/edgar/data/806085/000104746905000357/a2149684z424b2.htm

****

"NATURE OF THE ACTION
08-13555-scc Doc 59660 Filed 04/30/19 Entered 04/30/19 11:00:47 Main Document
1. LBHI brings this action to recover $260,095,121.86 owed to LBHI from Defendants pursuant to the terms of the Settlement Agreement (as defined below)1 entered into by
LBHI and Defendants. Specifically, LBHI is owed $128,044,775.80 from LBL, $16,280,324.87
from MBAM, $10,160,114.94 from ESH, and $105,609,906.25 from LBHI2.
LBHI distributed
these amounts on account of LBHI Class 4B Senior Affiliate Guarantee Claims that were allowed
pursuant to the Settlement Agreement (the "Guarantee Claims"). Each Defendant is in breach of
the Settlement Agreement for its failure to remit such amount to LBHI.
2. Pursuant to the Settlement Agreement, the Defendants agreed to remit to LBHI distributions that exceeded the amount of the Primary Claim.2 The relevant Primary Obligors have
made distributions to the holder of each Primary Claim that equal the amount of the Primary Claim.
Thus, according to the express terms of the Settlement Agreement, all amounts distributed by
1 Capitalized terms used herein but not otherwise defined shall have

the same meaning as in the
Settlement Agreement.
2 Many of the LBHI Class 4B Senior Affiliate Guarantee Claims that
were allowed pursuant to the
Settlement Agreement were allowed against LBHI in amounts
substantially lower than the amount
of the corresponding Primary Claims. Accordingly, the allowed Primary
Claim, and not the
allowed Guarantee Claim, was used to measure satisfaction of the
Guarantee Claim.

.

.

.

II. LBH PLC Made Distributions That Exceed the Amount of the Applicable Primary
Claims
22. LBL. Under the Settlement Agreement, LBHI gave Defendant LBL an Allowed
Class 4B Senior Affiliate Guarantee Claim (No. 200020) in the amount
of $360,000,000.00. To
date, LBHI has made distributions of $128,044,775.80 on account of
such claim. The
corresponding Primary Claim against LBH PLC equals GBP 709,013,200.00.
To date, LBH PLC
distributed GBP 726,861,189.28 on account of the Primary Claim (GBP
709,013,200.00 as 100%
principal and GBP 17,847,989.28 as statutory interest).
23. MBAM. Under the Settlement Agreement, LBHI gave Defendant MBAM an
Allowed Class 4B Senior Affiliate Guarantee Claim (No. 200031) in the amount of
$46,568,411.00. To date, LBHI has made distributions of $16,280,324.87
on account of such

claim. The corresponding Primary Claim against LBH PLC equals GBP
51,924,415.00. To date,
LBH PLC distributed GBP 53,231,508.30 on account of the Primary Claim
(GBP 51,924,415.00
as 100% principal and GBP 1,307,093.30 as statutory interest).
24. ESH. Under the Settlement Agreement, LBHI gave Defendant ESH an Allowed
Class 4B Senior Affiliate Guarantee Claim (No. 200023) in the amount
of $28,565,323.00. To
date, LBHI has made distributions of $10,160,114.94 on account of such
claim. The corresponding
Primary Claim against LBH PLC equals GBP 31,358,468.41. To date, LBH
PLC distributed GBP
32,147,855.14 on account of the Primary Claim (GBP 31,358,468.41 as
100% principal and GBP

789,386.73 as statutory interest).

III. LBIE Made Distributions That Exceed the Amount of the Applicable Primary Claims

25. Under the Settlement Agreement, LBHI gave Defendant LBHI2 an Allowed Class 4B Senior Affiliate Guarantee Claim (No. 200016) in the amount of $302,087,667.00.5 To date,
LBHI has made distributions of $105,609,906.25 on account of such claim. The corresponding
Primary Claims against LBIE total GBP 1,278,542,606.85. To date, LBIE distributed
GBP 1,996,348,851.41 on account of the Primary Claims (GBP 1,278,542,606.85 as 100%
principal and GBP 717,806,244.56 as statutory interest).

IV. LBHI's Efforts to Avoid Litigation

26. Defendants have failed to make any portion of their required payments to date under
the Clawback Provision.

27. LBHI engaged in discussions with Defendants for over six months to recover the
amounts to which LBHI became entitled. While LBHI hoped that the discussions would lead to a satisfactory resolution, as of the filing of this adversary complaint, those discussions have not
resulted in a consensual resolution. Accordingly, LBHI hereby brings these claims against
Defendants.


5 LBHI2 subsequently assigned its rights to receive distributions from LBIE on the corresponding
Primary Claims."


*****

8-13555-jmp Doc 22759 Filed 11/29/11 Entered 11/29/11 16:38:50 Main Document

LBHI. The Plan separately classifies Claims against or Equity Interests in LBHI into seventeen (17) Classes as follows:

   Class 1 includes Claims entitled to priority under section 507(a) of the Bankruptcy Code or, to the extent applicable, 12 U.S.C. § 4617(b)(15), other than Priority Tax Claims, which are not classified and are separately treated under section 2.3 of the Plan.

   Class 2 includes all Secured Claims that are secured by a lien or collateral or
that are subject to a valid right of setoff in accordance with Section 506 of the
Bankruptcy Code.

Class 3 provides for the separate classification of Senior Unsecured Claims, which generally are Claims based upon bonds issued by LBHI that are contractually entitled to a priority in right to payment over all subordinated debt Claims against LBHI.

Class 4A provides for the separate classification of Senior Affiliate Claims, which are Claims asserted by Affiliates against LBHI that are contractually entitled to a priority in right to payment over certain subordinated debt Claims against LBHI.

Class 4B provides for the separate classification of Senior Affiliate Guarantee Claims, which are Guarantee Claims asserted by Affiliates that are contractually entitled to a priority in right to payment over certain subordinated debt Claims against LBHI.

Class 5 provides for the separate classification of Senior Third-Party Guarantee Claims, which are Guarantee Claims asserted by a party that is not an Affiliate and that are contractually entitled to a priority in right to payment over certain subordinated debt Claims against LBHI.

Class 6A provides for the separate classification of Convenience Claims, which are Senior Unsecured Claims or General Unsecured Claims in an amount of $50,000 or less.

Class 6B provides for the separate classification of Convenience Guarantee Claims, which are Senior Third-Party Guarantee Claims or Third-Party Guarantee Claims in an amount of $50,000 or less.

Class 7 provides for the separate classification of General Unsecured Claims against LBHI, which generally include trade vendor, rejection damages and litigation Claims (other than Claims subject to section 510(b) of the Bankruptcy Code), that are not entitled to a priority in right to payment over subordinated debt Claims against LBHI.

Class 8 provides for the separate classification of Affiliate Claims against LBHI, which are all Claims against LBHI asserted by an Affiliate that are not entitled to a priority in right to payment over subordinated debt Claims against LBHI.

Class 9A provides for the separate classification of Third Party Guarantee Claims, which are Guarantee Claims asserted by a party that is not an Affiliate or a Designated Entity and that are not entitled to a priority in right to payment over subordinated debt Claims against LBHI.

Class 9B provides for the separate classification of the Guarantee Claim of the
Racers Trusts, which is allowed pursuant to the Global Settlement in the amount of $1.947 billion.

Classes 10A, 10B and 10C provides for the separate classification Claims against LBHI that are contractually subordinated to certain other Claims against LBHI.

Class 11 provides for the separate classification of Claims against LBHI that are subordinated to other Claims against LBHI pursuant to section 510(b) of the Bankruptcy Code.

Class 12 provides for the separate classification of LBHI Equity Interests.

Sent from Mail for Windows 10

## EXHIBIT D

Rickey Gregory is a holder of 70,000 Capital Trust shares. His
principal is $25 per share ($1,750,000.00) and his back interest is
above $24 per share ($1,680,000).

See LBHI's TRuPS/subordinate notes Bank of New York Mellon claim numbers below:

Ticker
Claim Number
Cusip Number
Issuer/Trust

LEHKQ (I own 28,000 shares)
21805
52519Y209
Lehman Brothers Holdings Capital Trust III


LEHLQ (I own 28,000 shares)
22122
52520B206
Lehman Brothers Holdings Capital Trust IV

LHHMQ (I own 6,000 shares)
22123
52520E200
Lehman Brothers Holdings Capital Trust V

LEHNQ (I own 9,000 shares)
67753
52520X208
Lehman Brothers Holdings Capital Trust VI

Also, Rickey Gregory is a holder of 2,200 shares of 7.25% LBHI Plan
Trust's Preferred Stock. The principal is $1000 per share ($2,200,000.00).