> This form is used in connection with mortgages insured under the One to four family provisions of the National Housing Act.

# MORTGAGE NOTE

STATE OF _Indiana_

9025 East 13th Street, Indianapolis, In. 46229
[Property Address]

1. DEFINITIONS

   "Borrower" means each person signing at the end of this Note. "Lender" means  MERCHANTS MORTGAGE CORPORATION, an Indiana Corporation and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

2. BORROWER'S PROMISE TO PAY: INTEREST

   In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Loan Agreement dated November 1, 1990, Borrower promises to pay to the order of Lender such amounts as Lender advances under the Loan Agreement and interest. Interest will be charged on unpaid principal at the rate of Nine and One-eighth per cent (9.125 %) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance at the end of each month. If one or more note allonges are executed by Borrower together with this Note, the covenants of the allonge(s) shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box indicating attached allonge(s).]

   [xx] Adjustable Rate Allonge        [  ] Shared Appreciation Allonge

3. PROMISE TO PAY SECURED

   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT
   (A) Time
      Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.

   (B) Place
      Payment shall be made at  Merchants Mortgage Corporation P. O. Box 5138, Indianapolis, In. 46255-0759 or any such other place as Lender may designate in writing.

   (C) Limitation of liability
      Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If the First Security Instrument is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

5. BORROWER'S RIGHT TO PREPAY

      A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty on the first day of any month. Otherwise, a Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty after giving Lender two (2) weeks notice. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

6. IMMEDIATE PAYMENT IN FULL
   (A) Death or Sale
      Lender may require immediate payment in full of all outstanding principal and accrued interest if:

      (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

      (ii) A borrower conveys all of his or her title to the Property and no other Borrower retains title to the Property in fee simple and on a leasehold interest as set forth in 24 CFR 206.45(a).

   Other Grounds
   Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

      (i)   The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

      (ii)    For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

      (iii)    An obligation of the Borrower under the Security Instrument is not performed.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at an different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts under this Note.

10.     RELATIONSHIP TO SECOND NOTE

(A) Second Note
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note on the Property to the Secretary.

(B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

(C) Effect on Borrower

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ Borrower (Seal)
Virginia S. King

_____ Borrower (Seal)

_____ Borrower (Seal)

_____ Borrower (Seal)

Pay to the order of
WENDOVER FUNDING, INC.

Without Recourse

MERCHANTS MORTGAGE CORPORATION

BY: _____
Cynthia L. McClatchey
Clerical Production Coordinator

All right, title and interest of the undersigned to the within credit instrument is hereby assigned to the Secretary of Housing and Urban Development of Washington, D.C., his/her successors and assigns, 7th day of December, 2001

WENDOVER FINANCIAL SERVICES CORPORATION
BY: _____

-4-

## NOTE ALLONGE

Loan Number:

Borrower Name:     KING, VIRGINIA

Original Note Date:     11/3/1990

Original Note Amount:  $58900

PAY TO THE ORDER OF:

**U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT**

Without Recourse,

**Secretary of Housing and Urban Development**

**BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, AS ITS APPOINTED ATTORNEY IN FACT**

BY: _____
Print Name:
Title:     **Drew Edwards**
           **Assistant Vice President**

900117606

(Space Above This Line For Recording Data)

State of Indiana

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on November 1, , 1990.
The Mortgagor is Virginia S. King, Unmarried Adult

whose address is 9025 East 13th Street, Indianapolis, In. 46229
, ("Borrower"). This Security Instrument is given to
MERCHANTS MORTGAGE CORPORATION
which is organized and existing under the laws of The State of Indiana , and whose
address is P. O. Box 5138, 201 S. Capitol, Indianapolis, In. 46255
, ("Lender"). Borrower owes Lender the principal sum of
Fifty Eight Thousand Nine Hundred Dollars and no/100——————————————————————
Dollar (U.S. $ 58,900.00 ——). This debt is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable upon the event that the property securing this instrument is no longer the Borrower's principal residence. Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Loan Agreement dated the same date as this Security Instrument. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions & modifications, (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in Marion County:

Lots Fifty-three (53), Fifty-four (54), Fifty-five (55), Ninety-two (92), Ninety-three (93), and Ninety-four (94) in Cooper and Hadley's Wilmet Park, an Addition to the City of Indianapolis, as per plat thereof, recorded in Plat Book 24, page 143, in the Office of the Recorder of Marion County, Indiana.

which has the address of 9025 East 13th Street, Indianapolis, (Street, City),
Indiana 46229 (Zip Code), ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of a) taxes, ground rents, b) flood and hazard insurance premiums, and c) assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower, or by charging such payments to a line of credit as provided for in the Loan Agreement.

Each monthly installment for items (a), (b), and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full annual amount for each item shall be accumulated by Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust to pay items (a), (b), and (c) before they become delinquent.

If at any time the total of the payments held by Lender for items (a), (b), and (c), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall refund payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for items (a), (b), or (c) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. Most Security Instruments insured by the Secretary are insured under programs which require advance payment of the entire mortgage insurance premium. If this Security Instrument is or was insured under a program which did not require advance payment of the annual mortgage insurance premium, then each monthly payment shall also include either: (i) an installment of the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary. Each monthly installment of the mortgage insurance premium shall be in an amount sufficient to accumulate the full annual mortgage insurance premium with Lender one month prior to the date the full annual mortgage insurance premium is due to the Secretary, or if the Security Instrument is held by the Secretary, each monthly charge shall be in an amount equal to one-twelfth of one-half percent of the outstanding principal balance due on the Note.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender and the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Preservation and Maintenance of the Property, Leaseholds. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the property if the property is vacant or abandoned or the loan is in default.

Lender may take reasonable action to protect and preserve such vacant or abandoned property. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the property or for conveyance in place of condemnation shall be paid to Lender and Borrower jointly. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary to the Property, and then to the reduction of indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

900117608

9. Grounds for Acceleration of Debt.

(a) Due and Payable. Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) A Borrower conveys all of his or her title in the Property and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than ninety-nine years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower.

(b) Due and Payable with Secretary Approval. Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

"Principal residence" shall have the same meaning as in the Loan Agreement.

(c) Notice to Lender. Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9 occur.

(d) Notice to Secretary and Borrower. Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this paragraph 9. Lender shall not have the right to foreclosure until Borrower has had 30 days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the property for at least 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) provide the Lender with a deed in lieu of foreclosure.

10. No Deficiency Judgments. Borrower shall have no personal liability for payments of the debt. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Property is foreclosed. If this Security Instrument is assigned to the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the mortgage lien.

12. First Lien Status.

(a) Modification.

If state law limits the first lien status of this Security Instrument as originally executed and recorded, to a maximum amount of debt or a maximum number of years, Borrower agrees to execute any additional documents required by the Lender and approved by the Secretary to extend the first lien status to an additional amount of debt and an additional number of years and to cause any other liens to be removed or subordinated as provided in the Loan Agreement.

(b) Tax Deferral Programs.

Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

13. Relationship to Second Security Instrument.

(a) Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Security Instrument on the Property to the Secretary.

900117608

Page 3 of 5

(b) Relationship of First and Second Security Instruments. Payments made by the Secretary shall not be included in the debt under the Note secured by this Security Instrument unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt.

(c) Effect on Borrower. Where there is no assignment or reimbursement as described in (b) (i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by Secretary and secured by the Second Security Instrument; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) No Duty of the Secretary. The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. Forbearance by Lender Not a Waiver. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. Successors and Assigns Bound; Joint and Several Liability. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. An assignment made in accordance with the regulations of the Secretary shall fully relieve the Lender of its obligations under this Security Instrument. Borrower may not assign any rights or obligations under this Security Instrument or under the Note. Borrower's covenants and agreements shall be joint and several.

16. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given Borrower or Lender when given as provided in this paragraph.

17. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. Borrower's Copy. Borrower shall be given one conformed copy of this Security Instrument.

19. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

20. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provide in this paragraph 20 including, but not limited to, reasonable attorneys' fees and costs of title evidence.

21. Release. Upon payment of all sums secured by this Security Instrument, Lender enter shall release this Security Instrument without charge to Borrower.

22. Waiver of Valuation and Appraisement. Borrower waives all right of valuation and appraisement.

900117606

Riders to this Security Instrument. If one or more riders are executed by Borrowers and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. Check applicable boxes.

☐ Condominium Rider   ☒ Adjustable Rate Rider   ☐ Growing Equity Rider
☐ Planned Unit Development Rider   ☐ Other

By Signing Below, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____Virginia S. King_____ - Borrower

_____ - Borrower

_____ - Borrower

STATE OF INDIANA,    Marion    County ss:

On this  first  day of  November , 19 90, before me, the undersigned, a Notary Public in and for said County, personally appeared Virginia S. King

, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission expires:
3-24-93

_____
Notary Public    Ruthann Robinson
Resident of Marion

This Instrument was prepared by: Susan D. Ward, Assistant Vice President
Merchants Mortgage Corporation

900117606

Page 5 of 5

ADJUSTABLE RATE RIDER
(Home Equity Conversion Mortgage)

THIS ADJUSTABLE RATE RIDER is made this __first__ day of __November__ 19 90, and is incorporated into and shall be deemed to amend and supplement the Mortgage, ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to MERCHANTS MORTGAGE CORPORATION, an Indiana Corporation ("Lender") of the same date and to secure the Loan Agreement of the same date and covering the property described in the Security Instrument and location at: _____9025 East 13th Street, Indianapolis, In. 46229_____
(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
THE INTEREST RATE

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Under the Note, the initial stated interest rate of __Nine and One Eighth__ per centum (9.125 %) per annum ("Initial Interest Rate") on the unpaid principal balance is subject to change, as hereinafter described. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance.

2. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year ("Index"; the Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15 (519)). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will notify Borrower in writing of any such substitute index (giving all necessary information for Borrower to obtain such index) and after the dates of such notice the substitute index will be deemed to be the Index hereunder.

3. Lender will perform the calculations under Paragraphs 4 or 5 to determine the new adjusted interest rate. The amount of the new adjusted interest rate, if any, will be based on the Borrower's election to have a cap on both the annual and lifetime rate adjustments, or to have a maximum interest rate only for the life of the loan.

(Check the appropriate box)

[ ] maximum interest rate for life of loan (Paragraph 5 applies).

[XX] a cap on both the annual and lifetime rate adjustments (Paragraph 4 applies).

4. Annual and Lifetime Caps.

  (a) The First adjustment to the interest rate (if any adjustment is required) will be effective on the first day of __December__, 19 91, (which date will not be less than twelve months nor more than eighteen months from the date of closing) and thereafter each adjustment to the interest rate will be made effective on that day of each succeeding year ("Change Date") until the loan is repaid in full.

  (b) The amount of the Index will be determined, using the most recently available figure, thirty (30) days before the Change Date ("Current Index").

  (c) __One and Sixty Hundredths__ percent points ( 1.60 %; the "Margin") will be added to the Current Index and the sum of this addition will be rounded to the nearest one-eighth of one percentage point (0.125%). The sum of the rounded Margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date.

900117606

(d) The Calculated Interest Rate will be compared to the interest rate being earned immediately prior to the current Change Date (such interest rate being called the "Existing Interest Rate"). Then, the new adjusted interest rate, if any, will be determined as follows:

(i) If the Calculated Interest Rate is the same as the Existing Interest Rate, the interest rate will not change.

(ii) If the difference between the Calculated Interest Rate and the Existing Interest Rate is less than or equal to two percentage points, the new adjusted interest rate will be equal to the Calculated Interest Rate (subject to the "5% Cap" in Paragraph 4(e).

(iii) If the Calculated Interest Rate exceeds the Existing Interest Rate by more than two percentage points, the new adjusted interest rate will be equal to two percentage points higher than the Existing Interest Rate (subject to the 5% Cap).

(iv) If the Calculated Interest Rate is less than the Existing Interest Rate by more than two percentage points, the new adjusted interest rate will be equal to two percentage points less than the Existing Interest Rate (subject to the 5% Cap).

(e) Notwithstanding anything contained in this Adjustable Rate Rider, in no event will any new adjusted interest rate be more than five percentage (5%) points higher or lower than the Initial Interest Rate over the term of the Security Instrument.

(f) Any new adjusted rate will become effective on the Change Date and thereafter will be deemed to be the Existing Interest Rate. The new Existing Interest Rate will remain in effect until the next Change Date on which the interest rate is adjusted.

5. Lifetime Maximum Interest Rate.

(a) The first adjustment to the interest rate (if any adjustment is required) will be effective on ___N/A___, 19___, (which date will be the first day of the second full calendar month after closing) and thereafter each adjustment to the interest rate will be made effective on that day of each succeeding month ("Change Date") until the loan is repaid in full.

(b) The amount of the Index will be determined, using the most recently available figure, thirty (30) days before the Change Date ("Current Index").

(c) ___N/A___ percentage points ( ___N/A___ %; the "Margin") will be added to the Current Index and the sum of this addition will be rounded to the nearest one-eighth of one percentage point (0.125%). The sum of the rounded Margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date.

(d) The lesser of ___N/A___ % (the lifetime maximum interest rate) or the Calculated Interest Rate will be the new adjusted rate. The new adjusted rate will become effective on the Change Date and thereafter will be deemed to be the Existing Interest Rate. The new Existing Interest Rate will remain in effect until the next Change Date on which the interest rate is adjusted.

6. (a) If the Existing Interest Rate changes on any Change Date, Lender will apply the new Existing Interest Rate to the total outstanding principal balance. At least twenty-five (25) days before the accrued interest is added to the mortgage balance, Lender will give Borrower written notice ("Adjustment Notice") of any change in the Existing Interest Rate. Each Adjustment Notice will set forth (i) the date the Adjustment Notice is given, (ii) the Change Date, (iii) the new Existing Interest Rate as adjusted on the Change Date, (iv) the Current Index and the date it was published, (v) the method of calculating the adjusted interest rate, and (vi) any other information which may be required by law from time to time.

-2-                                    900117606

(b) Borrower agrees to pay the interest rate by having it applied to the outstanding principal balance beginning twenty-five (25) days after Lender has given the Adjustment Notice to Borrower. Borrower will continue to pay the adjusted interest rate amount set forth in the last Adjustment Notice given by Lender to Borrower until twenty-five (25) days after Lender has given a further Adjustment Notice to borrower. Notwithstanding anything to the contrary contained in this Adjustable Rate Rider or the Security Instrument, Borrower will be relieved of any obligation to pay, and Lender will have forfeited its right to collect, any increase in the interest including interest added to the principal (caused by the recalculation of such amount under Paragraphs 4 and 5) before twenty-five (25) days after Lender has given the applicable Adjustment Notice to Borrower.

(c) Notwithstanding anything contained in this Adjustable Rate Rider, in the event that (i) the Existing Interest Rate was reduced on a Change Date, and (ii) Lender failed to give the Adjustment Notice when required, and (iii) Borrower, consequently, paid any interest in excess of the amount which would have been set forth in such Adjustment Notice ("Excess Payments"), then Lender must subtract from the unpaid principal balance all Excess Payments, with interest thereon at a rate equal to the sum of the Margin and the Index on the Change Date when the Existing Interest Rate was so reduced, from the date each such Excess Payment was made by Borrower thereby increasing the available funds under the mortgage by the Excess Payment and the interest thereon.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Virginia S. King

_____ (Seal)

State of Indiana
County of   Marion

The foregoing instrument was acknowledged before me this first day of November, 19 90 by
                    Virginia S. King

_____
Ruthann Robinson   Notary Public
            Marion   County, Indiana

My Commission expires: 3-24-   19 93

My County of Residence: Marion

-3-                           900117606

This form was prepared by:
Merchants Mortgage Corporation
National City Center
101 West Washington Street, Suite 200E
Indianapolis, Indiana 46255

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is National City Center, 101 West Washington Street, Suite 200E, Indianapolis, Indiana 46255 does hereby grant, sell, assign, transfer and convey unto Wendover Funding, a corporation organized and existing under the laws of the State of North Carolina (herein "Assignee"); whose address is 725 N. Regional Road, Greensboro, North Carolina 27409, a certain mortgage dated November 1, 1990 made and executed by Merchants Mortgage Corporation, to and in favor of Virginia S. King, an Unmarried Adult and given to secure payment of Fifty Eight Thousand Nine Hundred and 00/100 Dollars (US $58,900.00), which mortgage is of record as Number 900117606, recorded on November 9, 1990 in the Recorder's Office of Marion County, State of Indiana, together with the Note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on August 31, 1995.

MERCHANTS MORTGAGE CORPORATION

By: _Sondra S. Emberton_
Sondra S. Emberton, Vice President

Attest: _Stephen L. Smith_
Stephen L. Smith, Secretary

State of _Indiana_
County of _Marion_

I, the undersigned, a Notary Public in and for the said County in said State, hereby certify that _Stephen L. Smith_ personally came before me this day and acknowledged that he is the Secretary of Merchants Mortgage Corporation, a corporation organized and existing under the laws of The State of Indiana, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its Vice President, sealed with its corporate seal and attested by Stephen L. Smith as its Secretary. Witness my hand and official stamp or seal, this _6th_ day of _Sept_, 1995.

_Cheryl L. Gibson_ - Notary                SEAL
My Commission Expires: _Sept. 21, 1998_
My County of residence is _Marion_

09/23/95 08:46AM JOAN H. ROMERIL MARION CTY RECORDER RLH   10.00 PAGES: 1

Inst # 1995-0119666



**INDIANA**
COUNTY OF **MARION**
POOL NO.
LOAN NO.

PREPARED BY SECURITY CONNECTIONS, INC.
WHEN RECORDED MAIL TO:
Security Connections, Inc.
620 S. Woodruff Ave.
Idaho Falls, ID 83401

## ASSIGNMENT OF MORTGAGE

ALL MEN BY THESE PRESENTS:
That **WENDOVER FINANCIAL SERVICES CORPORATION, A NORTH CAROLINA CORPORATION**

located at **725 NORTH REGIONAL ROAD, GREENSBORO, NC  27409**,
party of the first part, for value received has granted, bargained, sold, assigned, transferred and set over unto **LEHMAN CAPITAL, A DIVISION OF LEHMAN BROTHERS HOLDINGS, INC., A DELAWARE CORPORATION**

located at **C/O 353 SACRAMENTO STREET, SUITE 420, SAN FRANCISCO, CA  94111**
party of the second part, its successors and assigns, a certain indenture of mortgage dated **NOVEMBER 1, 1990** made by **VIRGINIA S. KING, UNMARRIED ADULT**

to **MERCHANTS MORTGAGE CORPORATION** as Beneficiary
securing the payment of one promissory note therein described for the sum of **FIFTY-EIGHT THOUSAND NINE HUNDRED and NO/100-----** dollars (**$58,900.00**)
and all its right, title and interest in and to the premises situated in county of **MARION**, State of Indiana, and described in said mortgage as follows, to wit:
**AS DESCRIBED ON SAID MORTGAGE REFERRED TO HEREIN.**

Assignment-Interv.-Recorded

which said mortgage is recorded in the office of the recorder of **MARION** County, in the State of Indiana in Book/Drawer _____ at Page/Card _____, Document# or Instrument # **900117606** and Microfilm# _____
together with the said note therein described and the money due or to grow due thereon, with the interest:

Page 1 of 2

08/14/01 10:13AM WANDA MARTIN MARION CTY RECORDER    JRC    12.00 PAGES: 2

Inst # 2001-0143088

Loan No.
TO HAVE AND TO HOLD the same unto the said party of the second part, its successors and assigns, forever, subject only to the provisions in the said indenture of mortgage contained.
IN WITNESS WHEREOF, the party of the first part has caused this instrument to be executed in its name by **RUANA RANSOM** and attested by _____.
This **16th** day of **JULY 2001**, but effective the **31st** day of **OCTOBER 2000**.
ATTEST:
**WENDOVER FINANCIAL SERVICES CORPORATION FORMERLY KNOWN AS WENDOVER FUNDING, INC.**

BY _____
RUANA RANSOM
ASSISTANT SECRETARY

BY _____

STATE OF **IDAHO** )
                   )
COUNTY OF **BINGHAM** )

On **JULY 16, 2001**, before me, **JOAN COOK** personally appeared **RUANA RANSOM** and personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) who executed the within instrument as **ASSISTANT SECRETARY** and _____ on behalf of the corporation therein named and acknowledged to me that the corporation executed it.

JOAN COOK (COMMISSION EXP. 02-16-07)
Notary Public

JOAN COOK
NOTARY PUBLIC
STATE OF IDAHO

PREPARED BY:
KARLEEN MAUGHAN
520 SOUTH WOODRUFF AVE
IDAHO FALLS, ID  83401

C=S.375.0001
P=S.001.4965        J=WN888.S.04965        Page 2 of 2



Record and Return to:
Wendover Financial Services
Attn: Shari L. Phelps
725 N Regional Rd.
Greensboro NC 27409
Loan No. 54767, King

## ASSIGNMENT OF MORTGAGE

Know All persons by these presents, that the undersigned for and in consideration of One Dollar ($1.00) and other good and valuable consideration to it in hand paid, Wendover Financial Services Corp., formerly known as Wendover Funding Inc., 725 N. Regional Road, Greensboro, NC 27409 does hereby assign to the SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, DC, 451 7th Street SW, Washington, DC 20410, its successors and assigns a certain Mortgage Deed in the original principal sum of $58,900.00, made, executed and delivered by the Mortgagor: Virginia S. King, Unmarried Adult, whose address is 9025 East 13th Street, Indianapolis, IN. 46229, to MERCHANTS MORTGAGE CORPORATION, dated the 1ST of November, 1990, together with a NOTE and indebtedness therein mentioned, said Mortgage being recorded on November 9, 1990 as Document No. 900117606 in the office of the Recorder of Deeds located in Marion County, and said Mortgage being assigned to the current holder by instrument recorded on September 23, 1995 as Document No. 1995-0119666 in the office of the Recorder of Deeds located in Marion County, in the State of Indiana. This Assignment is made without recourse or warranty, except that the undersigned hereby warrants that:

a.) No act or omission of the undersigned has impaired the validity and priority of the said security instrument.

b.) The security instrument is a good and valid first lien and is prior to all mechanics' and materialmen's liens filed of record regardless of when such liens attached, and prior to all liens, encumbrances, or defects which may arise except such liens or other matters as have been approved by assignee here under;

c.) The sum of $58,900.00 dollars together with the interest from the 1st day of November, 1990, at the rate of 9.125% per annum, computed as provided in the credit instrument, is actually due and owing under the said credit instruments;

d.) The undersigned has a good right to assign the said security as described in Exhibit "A" attached hereto and made a part hereof, signed, sealed and delivered December 5, 2001.

WITNESS:                                     Wendover Financial Services Corp.

_Shari Phelps_                               By: _Deborah C. Pitts_
_Audra Hopper_                                    Deborah C. Pitts
                                                  Vice President

STATE OF North Carolina
COUNTY OF Forsyth

On this 5th day of December, 2001 before me, the subscriber, a Notary Public in and for said county, personally appeared Deborah C. Pitts to me personally known, who being by me duly sworn, did say that she/he is the Vice President of Wendover Financial Services Corp., and the said instrument was signed on behalf of said corporation, by authority of its board of directors, and Deborah C. Pitts acknowledges said instrument to be the free act and deed of said corporation.

_Philip Williams_
Notary Public
My Commission Expires: 9-18-05

EXHIBIT A TO ASSIGNMENT OF MORTGAGE DATED DECEMBER 5, 2001

BY AND BETWEEN
WENDOVER FINANCIAL SERVICES CORP., ASSIGNOR
AND
SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, DC, ASSIGNEE

Lots Fifty-three (53), Fifty-four (54), Fifty-five (55), Ninety-two (92), Ninety-three (93), and Ninety-four (94) in Cooper and Hadley's Wilmet Park, an Addition to the City of Indianapolis, as per plat thereof, recorded in Plat Book 24, page 143, in the Office of the Recorder of Marion County, Indiana.

UNOFFICIAL COPY

A201700095223
08/23/2017 9:58 AM
KATHERINE SWEENEY BELL
MARION COUNTY IN RECORDER
FEE: $ 35.00
PAGES: 2
By: ER

Recording Requested By:
Roosevelt Management Company
Prepared By: Roosevelt Management Company
212-938-4800
When recorded mail to:
CoreLogic Recording Services
1637 NW 136th Avenue, Suite G-108
Sunrise, FL 33323

"Exhibit   E   "

Property Address:
9025 EAST 13TH STREET
INDIANAPOLIS, IN 46229

Loan Number
FHA Case Number

## ASSIGNMENT OF MORTGAGE

For Value Received, the Secretary of Housing & Urban Development, the holder of a Mortgage (herein "Assignor") whose address is 451 7th Street SW, Washington, DC 20410 does hereby grant, sell, assign, transfer and convey unto U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT whose address is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, Minnesota 55107 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Mortgagee: MERCHANTS MORTGAGE CORPORATION
Borrower(s): VIRGINIA R. KING, UNMARRIED ADULT
Date of Mortgage: 11/01/1990
Original Loan Amount: $58,900.00
Recorded in MARION COUNTY, IN on: 11/09/1990, book N/A, page N/A and instrument number 908117606.

Property Legal Description:
Refer to legal description on original mortgage.

I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT I HAVE TAKEN REASONABLE CARE TO REDACT EACH SOCIAL SECURITY NUMBER IN THIS DOCUMENT, UNLESS REQUIRED BY LAW.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

Power of Attorney Recorded on 7/19/17
Instrument # A2017 0081530
Book          Page

the Secretary of Housing & Urban Development, by Rushmore Loan Management Services LLC, its appointed Attorney-in-Fact

By: _____
Linda Genneken Chapa
Sr. Vice President

UNOFFICIAL COPY

## ACKNOWLEDGMENT

STATE OF    TEXAS }

COUNTY OF    DALLAS

On  8-15-2017 , before me the undersigned, a Notary Public in and for said State, personally appeared, __Linda Genneken Chapa__, __Sr Vice President__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the duly authorized person who executed the within instrument on behalf of SECRETARY OF HOUSING AND URBAN DEVELOPMENT, BY RUSHMORE LOAN MANAGEMENT SERVICES LLC, ITS APPOINTED ATTORNEY IN FACT and acknowledged / swore to me that such __Sr Vice President__, executed the within instrument pursuant to its by-laws or a resolution of its Board of directors.

WITNESS MY HAND AND OFFICIAL SEAL.

[signature]

Notary Public in and for said County and State
My Commission expires on: 11/04/17

BLANCA ESTELA CORONA
Notary Public, State of Texas
Comm. Expires 11-04-2017
Notary ID 12548700-0