## Exhibit A

Transcript from hearing held on June 19, 2019

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 08-13555-scc

4    - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6    LEHMAN BROTHERS HOLDINGS INC.,

7             Debtor.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 16-01019-scc

10   - - - - - - - - - - - - - - - - - - - - - - - - - - x

11   LEHMAN BROTHERS HOLDINGS INC.,

12               Plaintiff,

13            v.

14   1ST ADVANTAGE MORTGAGE, L.L.C., et al.,

15               Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - - x

17   Adv. Case No.

18   - - - - - - - - - - - - - - - - - - - - - - - - - - x

19   LEHMAN BROTHERS HOLDINGS INC.,

20               Plaintiff,

21            v.

22   GOLDWATER BANK, N.A., as SUCCESSOR TO COMMUNITY BANKS OF

23   COLORADO,

24               Defendant.

25   - - - - - - - - - - - - - - - - - - - - - - - - - - x

Page 2

1    Adv. Case No. 18-01825-scc

2    - - - - - - - - - - - - - - - - - - - - - - - - - x

3    LEHMAN BROTHERS HOLDINGS INC.,

4                   Plaintiff,

5          v.

6    SUBURBAN MORTGAGE, INC.,

7                   Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - x

9    Adv. Case No. 18-01839-scc

10   - - - - - - - - - - - - - - - - - - - - - - - - - x

11   LEHMAN BROTHERS HOLDINGS INC.,

12                  Plaintiff,

13         v.

14   IMORTGAGE.COM, INC., et al.,

15                  Defendants.

16   - - - - - - - - - - - - - - - - - - - - - - - - - x

17

18

19

20

21

22

23

24

25





Page 3

1   Adv. Case No. 18-01842-scc

2   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3   LEHMAN BROTHERS HOLDINGS INC.,

4                   Plaintiff,

5           v.

6   PMAC LENDING SERVICES INC., individually and as successor by

7   merger to PMC Bancorp, f/k/a Professional Mortgage Corp.,

8   and as successor by merger to Reliant Mortgage Company, LLC,

9   PMC BANCORP, f/k/a Professional Mortgage Corp.,

10  individually, Reliant Mortgage Company, LLC, individually,

11                  Defendants.

12  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13  Adv. Case No. 19-01018-scc

14  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

15  LEHMAN BROTHERS HOLDINGS INC.,

16                  Plaintiff,

17          v.

18  NETWORK FUNDING L.P., et al.,

19                  Defendants.

20  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

21

22

23

24

25

**Page 4**

1    Adv. Case No. 19-01020-scc

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

3    LEHMAN BROTHERS HOLDINGS INC.,

4                    Plaintiff,

5            v.

6    THE CROSSFIRE FINANCIAL NETWORK, INC.,

7                    Defendant.

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

9

10                   United States Bankruptcy Court

11                   One Bowling Green

12                   New York, NY  10004

13

14                   June 19, 2019

15                   10:11 AM

16

17

18

19

20

21   B E F O R E :

22   HON SHELLEY C. CHAPMAN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  TENILLE

Page 5

1    HEARING re Adversary proceeding: 16-01019-scc Lehman

2    Brothers Holdings Inc. v. 1st Advantage Mortgage, L.L.C. et

3    al Pre-Motion Conference

4

5    HEARING re Adversary proceeding: 18-01754-scc Lehman

6    Brothers Holdings Inc. v. Goldwater  Bank, N.A., as

7    successor to Community Ba  Pre-Motion Conference

8

9    HEARING re Adversary proceeding: 18-01825-scc Lehman

10   Brothers Holdings Inc. v. SUBURBAN MORTGAGE, INC.

11   Pre-Motion Conference

12

13   HEARING re Adversary proceeding: 18-01839-scc Lehman

14   Brothers Holdings Inc. v. Imortgage.com, Inc. et al

15   Pre-Motion Conference

16

17   HEARING re Adversary proceeding: 18-01842-scc Lehman

18   Brothers Holdings Inc. v. PMAC Lending Services, Inc.,

19   individually and as s Pre-Motion Conference

20

21   HEARING re Adversary proceeding: 19-01018-scc Lehman

22   Brothers Holdings Inc. v. Network Funding L.P. et al

23   Pre-Motion Conference

24

25

Page 6

1    HEARING re Adversary proceeding: 19-01020-scc Lehman

2    Brothers Holdings Inc. v. The Crossfire Financial Network

3    Inc.  Pre-Motion Conference

4

5    HEARING re 08-13555-scc Lehman Brothers Holdings Inc.

6    Doc #59614 Motion for an Order Enforcing the Modified Third

7    Amended Joint  Chapter 11 Plan of Lehman Brothers Holdings

8    Inc. and its Affiliated Debtors for Purposes of

9    Distributions filed by Rex Wu

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

**Page 7**

1    A P P E A R A N C E S :

2

3    LANI ADLER PARTNERS

4          Attorneys for Suburban Mortgage Inc.

5          599 Lexington Avenue

6          New York, NY 10022- 6030

7

8    BY:  LANI A. ADLER

9

10   WOLLMUTH MAHER & DEUTSCH LLP

11         Attorneys for the Debtor

12         500 Fifth Avenue

13         New York, NY 10110

14

15   BY:  JAMES N. LAWLOR

16         BRANT DUNCAN KUEHN

17

18   OFFIT KURMAN

19         Attorneys for Goldwater Bank N.A

20         10 East 40th Street

21         New York, NY 10016

22

23   BY:  ALBENA I. PETRAKOV

24

25

**Page 8**

1   ALSO PRESENT TELEPHONICALLY:

2

3   TRACY HENDERSON

4   AARON MALO

5   MICHAEL KIEVAL

6   JASON SANJANA

7   ENZA BODERONE

8   KENNETH DUVALL

9   PHILIP STEIN

10   CHRISTOPHER LAVOY

11   AMJAD KHAN

12   REBECCA RODRIGUEZ

13   LILIT ASADOURIAN

14

15

16

17

18

19

20

21

22

23

24

25

Page 9

1                    P R O C E E D I N G S

2              THE COURT:  Who's here who has a letter filed on

3      the docket?  I've got LoanDepot, Network Funding.

4              MR. LAVOY:  Yes.

5              THE COURT:  Who's here representing LoanDepot?

6              MR. LAVOY:  Good morning, Your Honor.  Chris LaVoy

7      on behalf of LoanDepot.

8              THE COURT:  Okay.  All right.  So let's look at

9      that one first.  And Mr. LaVoy, you sent a letter dated May

10     13th that asks to bring a motion to dismiss with respect to

11     successor liability.  Plan administrator says that they have

12     sufficiently alleged successor liability.  So have you folks

13     spoken to each other?

14             MR. LAVOY:  We have not, Your Honor.

15             MR. KUEHN:  Not since the letter, Your Honor.

16             THE COURT:  Okay.  So why don't -- why don't we

17     hear from the plan administrator your -- to the extent that

18     you have kind of a granular description of what's the basis

19     of your belief that there is successor liability here?

20             MR. KUEHN:  Certainly, Your Honor.  LoanDepot's

21     arguments primarily are based on the claims that the

22     Delaware Supreme Court hasn't recognized mere continuation

23     and that we haven't alleged sufficient fraudulent intent to

24     show a de facto merger.

25             THE COURT:  Mh hmm.

1              MR. KUEHN:  However, while the Delaware Supreme

2       Court has not explicitly recognized a mere continuation, the

3       lower courts have, and there's no indication that the

4       Supreme Court will not.

5              Secondly, Delaware law, as we set out in our

6       letter, does not require fraudulent intent to show a de

7       facto merger.  And then if you look at the factual

8       descriptions in our complaint, which are found at Paragraphs

9       42 to 53, they're extensive.  Not to say that the

10      allegations in our complaint are necessarily sufficient to

11      prove --

12             THE COURT:  Understood.

13             MR. KUEHN:  -- these elements, but there's

14      certainly enough to survive a motion to dismiss.  It just

15      doesn't seem like a good use of our time to be briefing this

16      now before discovery.

17             THE COURT:  Okay.  Mr. LaVoy?

18             MR. LAVOY:  To clarify, Your Honor, with respect

19      to the de facto merger theory, one element of our argument

20      is that the fraud component has not been adequately pled.

21      And the caselaw is -- some cases appear to require a fraud

22      allegation or a fraud component to establish de facto

23      merger.  But we don't believe other elements necessary to

24      establish de facto merger inadequately alleged in the

25      complaint, so it's not isolated to the fraud element.

1          And then with respect to the companion mere

2     continuation theory for successor liability, as opposing

3     counsel pointed out, there have been open questions

4     regarding whether the Delaware Supreme Court would recognize

5     this theory of successor liability.  At least one court has

6     held that it would not, and we believe it would be

7     beneficial to have this threshold issue resolved at the

8     outset to determine whether there's any mere continuation

9     theory to proceed with for LBHI.

10          THE COURT:  Okay.  Thank you, Mr. LaVoy.  How many

11     loans are at issue here?  Do you know?

12          MR. KUEHN:  I don't know offhand.

13          MR. LAVOY:  I'm --

14          THE COURT:  Mr. LaVoy, do you know?

15          MR. LAVOY:  I didn't hear you.  I apologize, Your

16     Honor.

17          THE COURT:  I'm sorry?

18          MR. KUEHN:  He didn't hear you, Your Honor.

19          MR. LAVOY:  I didn't hear.

20          THE COURT:  My question is do you know how many

21     loans are at issue here, your client's loans?

22          MR. LAVOY:  I do not -- I do not know the exact --

23     I do not know the exact number.  I believe the value of the

24     numerous loans on the RMBS side is in the 20- to 30-million

25     range.

1            MR. KUEHN:  That's correct, Your Honor.  It's 27.6

2    million.

3            THE COURT:  Okay.

4            MR. KUEHN:  Is the principle.

5            THE COURT:  All right.  Thank you.  All right.

6    Well, based on what you've said, you obviously don't agree.

7    I will -- I will simply say that there hasn't been a very

8    good track record which -- with respect to these motions,

9    but I'll give you the ability to file it.

10           So let's go through the other ones, and I want to

11   see if there are any efficiencies that we -- can be gained

12   to the extent that others who've made this request ought to

13   be on the same timeframe.  So thank you, Mr. LaVoy.

14           The next letter is on behalf of Network Funding.

15   Mr. Kieval?

16           MR. KIEVAL:  Yes, Your Honor.  This is -- yes,

17   Your Honor.  Michael Kieval on behalf of (indiscernible)

18   defendants.

19           THE COURT:  Okay.  All right.  So this is a --

20   this is a different basis.  This has to do with whether or

21   not a release contained in a prior settlement is applicable

22   here such that it would preclude the claims that LBHI has

23   filed.  And Lehman points out that the settlement that

24   you're talking about relates to different loans than the

25   settlement -- than what was at issue in the previous

1    settlement, and therefore the release does not apply.

2         MR. KUEHN:  Yes, Your Honor.  Not only does it

3    relate to different loans, but it precedes by almost a

4    decade the estimation here in the settlement.  So it simply

5    doesn't apply.

6         THE COURT:  Well, I don't know that those two

7    things are necessarily true.  In other words, the

8    settlement, as we all know, under my view of the law -- and

9    the settlement gave rise to indemnification claims.

10        MR. KUEHN:  Correct.

11        THE COURT:  Okay.  So whether or not a prior

12   settlement could borrow those claims is a separate question

13   from whether or not these are different loans.

14        MR. KUEHN:  Correct, but it's both the different

15   loans, the language of the settlement agreement, and the

16   time the settlement agreement was entered.

17        THE COURT:  Okay.  Well, all -- okay.  I was just

18   taking issue with that narrow statement that you made.

19        So Mr. Kieval, have you had a chance to consider

20   what the plan administrator has pointed out?

21        MR. KIEVAL:  Yes, and we've discussed this with

22   them previously, and there are a few issues.  First of all,

23   we believe that the language of the release itself does

24   cover it.  There are two parts of the release.  There's a

25   release of unknown claims arising from events that gave rise

1    to the litigation, so that's -- we do believe that it comes

2    under that.

3              But broader than that, the issue here is this was

4    a settlement that merged into a judgment under Texas law,

5    and the Texas law treats preclusion fairly broadly in these

6    contexts.  And so we would argue that there is a -- that to

7    the extent that -- basically that there's a subject matter

8    -- when the judgment on dismissing their claims based on the

9    settlement was entered, that it had a much broader effect

10   than the language of the release because it's not simply

11   about the release.

12             But it goes on to -- there's another issue, and

13   one that the administration doesn't address at all in their

14   letter, which is the issue that there is a merger clause and

15   that the merger clause supersedes all previous agreements.

16   And therefore, to the extent that they're suing under the

17   same agreement, those agreements no longer exist and are no

18   longer binding on my client.

19             THE COURT:  Okay.  Well, I'm not going to do the

20   merits on this basis.  I'm not particular persuaded by, at

21   this point, by any argument that based on Texas law the

22   analysis would be any different.  Either the release relates

23   to this and it covers it or it doesn't.

24             I think that I've got some selective quoting of

25   the documents back and forth to me, and you're just going to

1    have to brief it.

2          So we're going to -- at the conclusion of this

3    morning session, we'll come up with a briefing schedule.

4    All right?

5          MR. KIEVAL:  Thank you, Your Honor.

6          THE COURT:  Okay.  Okay.  The next letter is PMAC

7    Lending Services.

8          MR. KHAN:  Yes.  Good morning, Your Honor.  This

9    is Amjad Khan representing PMAC and then also PMC Bancorp

10   and Reliant --

11         THE COURT:  Okay.

12         MR. KHAN:  -- for which you received letters as

13   well.

14         THE COURT:  Okay.  So your letter raises both the

15   statute of limitations issue and the successor liability

16   issue.

17         MR. KUEHN:  Yes, Your Honor.

18         MR. KHAN:  Yes, Your Honor.

19         THE COURT:  So Mr. Khan, are you aware of the

20   extensive procedural history that exists with respect to the

21   statute of limitations issue in this court and elsewhere?

22         MR. KHAN:  Yes, I'm keenly aware of it, Your

23   Honor, and I am also aware of Your Honor's ruling in the

24   Universal Mortgage case.  I -- but I do believe that the

25   facts of our case are unique in several ways.  And if Your

1   Honor can indulge me for a minute, I can explain why.

2           THE COURT:  No, I don't -- I'm not going to

3   indulge you for a minute.  If you --

4           MR. KHAN:  Well, I -- what I mean to say is that

5   --

6           THE COURT:  Excuse me.

7           MR. KHAN:  -- there's a judgment --

8           THE COURT:  Excuse me.

9           MR. KHAN:  -- in our case.

10          THE COURT:  Excuse me.  To the extent that you

11  believe that you will be successful in convincing me that

12  the claims are time barred, you can make a motion.  I am not

13  -- I am telling you, and I've said it repeatedly, I'm not

14  going to, from scratch, redo what I have done multiple

15  times.  So you can make your motion and I'll rule on it, but

16  the ruling may simply say, for the reasons stated in my

17  previous ruling, and see also the statements made by the

18  district court in declining the request to appeal my

19  previous ruling.

20          So, you know, you're entitled to due process.

21  You're entitled to establish why -- you know, at least to

22  have some ruling from this court as to whether or not that

23  statute of limitations ruling applies to you.

24          MR. KHAN:  Understood, Your Honor.

25          THE COURT:  But you ought to go through it very

Page 17

1    carefully because there continues to be a disconnect in how

2    folks are reading the Tenth Circuit decision and the way

3    that I have interpreted it, which I'm not going to be

4    dialing back.

5           So what you're going to have do though is you're

6    going to have to make two separate motions.  You're going to

7    have to make a motion with respect to the Tenth Circuit

8    theory, so to speak, and then a separate motion on the

9    successor liability.

10          MR. KHAN:  Understood, Your Honor.  May I

11   respectfully raise one procedural point which I think is

12   critical that was raised by Lehman?  And this is an

13   important clarification.

14          In Your Honor's amended CMO, Your Honor can see

15   that in Section 2-I, Your Honor permitted threshold motions.

16   Any defendant would reserve with a supplemental or

17   additional complaint to any threshold motion, and so Lehman

18   argued that 2-E governs the situation for our defendant, but

19   I want to make it very clear that we are listed in Exhibit

20   4, all of our clients.  And so the letter brief that was

21   actually filed -- letter response that was filed by Lehman

22   with respect to the letters that we raised on May 13th are

23   not actually permitted under Section 2-I.

24          And I raise it only because this is an important

25   procedural point that I think it governs LoanDepot and

1    Reliant, PMAC, and PMC where Your Honor permitted any

2    threshold motion.  And Lehman seems to think that we are

3    governed by 2-E, which is a supplemental brief process.

4              THE COURT:  Okay.  It's really -- it's not worth

5    talking about.  You're going to make your motion.

6              MR. KHAN:  Yes.  I --

7              THE COURT:  Right?

8              MR. KHAN:  -- just wanted to point that out.

9    That's fine, Your Honor.  Yeah.

10             THE COURT:  What -- am I missing something?

11             MR. KHAN:  No.

12             THE COURT:  Okay.  So you're going to make your

13   motion, and we'll -- when we get to the end, we'll figure

14   out a way to establish a briefing schedule.  If not today,

15   then in some relatively coordinated fashion.

16             Okay.  So Mr. Khan, that -- we've covered your

17   other letter as well; have we not?

18             MR. KHAN:  You have, Your Honor, with your -- with

19   your observations.

20             THE COURT:  Okay.

21             MR. KHAN:  I think that covers both letters.

22             THE COURT:  Okay.

23             MR. KHAN:  Thank you.

24             THE COURT:  All right.  Just to make that clear,

25   so that's also with respect to the second letter that you

1    filed.  Okay.

2              So just for the record, that was PMAC Lending

3    Services and PMC Bancorp.  Okay.

4              So that brings us to Crossfire Financial Network.

5    Is anyone here --

6              MS. RODRIGUEZ:  Yes.

7              THE COURT:  Yes.

8              MS. RODRIGUEZ:  Good morning, Judge.  Rebecca

9    Rodriguez from GrayRobinson on behalf of Crossfire Financial

10   Network.

11             THE COURT:  Okay.  All right.  So Ms. Rodriguez,

12   you have two different matters that you raise.  One is a

13   release issue, and one is a motion to transfer venue.

14             MS. RODRIGUEZ:  Correct, Judge.

15             THE COURT:  Okay.  Are you -- are -- have you

16   familiarized yourself with the decisions that were rendered

17   within other -- in many other cases requesting a venue

18   transfer?

19             MS. RODRIGUEZ:  Yes, Your Honor.  I've researched

20   your opinions in prior adversary proceedings related to this

21   bankruptcy on that issue.

22             THE COURT:  And you think it would be worthwhile

23   to move the transfer venue?

24             MS. RODRIGUEZ:  Well, for a limited reason,

25   potentially yes, Judge.  There might be a benefit to

Page 20

1    extension here.  So the Florida judge who presided over one

2    of the Crossfire cases with Aurora Bank could interpret and

3    determine the scope and application of the settlement

4    agreement because Crossfire and Aurora settled three

5    lawsuits.  And the settlement agreement between those two

6    entities states that it's to be interpreted under Florida

7    law.

8               So for that very limited reason, I thought there

9    might be a potential benefit to having this matter

10   transferred back to the Florida judge for the Florida judge

11   to determine whether that settlement agreement under Florida

12   law should extend to subsequent matters based on the

13   language of the release.

14              MR. KUEHN:  Your Honor, we disagree, obviously.

15   First of all, as to the merits of the settlement agreement

16   itself, as we pointed out in the letter response,

17   Crossfire's letter omitted key language from the release

18   which limits the extent of the release to matters that are

19   relating to or arising from the judgments.  Those judgments

20   relate to individual loans that are not the loans at issue

21   in the adversary proceeding, clearly unrelated.  We don't

22   think there's any --

23              THE COURT:  All right.  So hold on.  So, Ms.

24   Rodriguez, do you have a response to that?

25              MS. RODRIGUEZ:  Yes, Judge.  The release language

Page 21

1    under Florida law applies to subsequent matters between the

2    parties and, if I can pull it, the language itself --

3             THE COURT:  So if there were -- if there were a

4    slip-and-fall claim, it -- your view of the prior release

5    was that it would cover it and preclude that?

6             MS. RODRIGUEZ:  No.  If it was related to the loan

7    purchase agreement, which was the subject matter of those

8    lawsuits, then yes.

9             MR. KUEHN:  If it had --

10            MS. RODRIGUEZ:  Aurora sued Crossfire in Colorado

11   and in Florida alleging that they're the successor to the

12   loan purchase agreement that's now at issue in this lawsuit.

13   And when the parties negotiated a resolution of those suits,

14   it included this very broad release language, which contains

15   language like whether known or unknown, and it applies to --

16   it applies to any successors or assigned to party's

17   hereafter can, shall, or may have (indiscernible) equity.

18   And it's very broad language.  And because that settlement

19   agreement has to be interpreted under Florida law, because

20   that's what the parties agreed to, that language is very

21   favorable to Crossfire in this instance, particularly

22   because three of the five loans --

23            THE COURT:  Okay.  Ms. Rodriguez, hold -- Ms. --

24   please.  I'm not interested in a full argument on the

25   merits.  Okay?  I understand what your plan is.  All right?

Page 22

1    Okay.

2            I don't see any way around having to brief this.

3    I have yet to grant a motion for a change of venue.  I would

4    encourage you to think carefully about whether or not you

5    think that that's worth doing.  I can interpret Florida law

6    as well as anyone else, and I really would like to have this

7    proceed as efficiently as possible.

8            But on the language -- on the motion with respect

9    to the release, we're just going to have to have full

10   briefing because I can't -- I can't piecemeal determine

11   whether or not one or the other of you is giving me the

12   correct view of the release.  I mean, I know that these

13   releases refer to LPAs, whether or not it says what you say,

14   Ms. Rodriguez, or whether it says what the plan

15   administrator says.  We'll just have to determine.

16           How many loans are at issue on this one; do we

17   know?  Or notional value?

18           MR. KUEHN:  (Indiscernible) tell you quickly.

19           MS. RODRIGUEZ:  It's five loans, and it's a -- the

20   payment in total is a little over $1 million.

21           THE COURT:  Okay.  All right.  If you would stand

22   by, Ms. Rodriguez, for us to have the scheduling discussion.

23   We're almost done.

24           MS. RODRIGUEZ:  Thank you, Judge.  And I will

25   (indiscernible) my client on your guidance and

1     recommendations on the venue issue.  I will discuss it.

2              THE COURT:  Okay.  I wouldn't characterize it as

3     recommendation so much as an observation.  All right?

4              MS. RODRIGUEZ:  Understood.  Thank you, Judge.

5              THE COURT:  Thank you.

6              All right.  So that brings us up to Goldwater Bank

7     as successor to Community Banks of Colorado.

8              MS. PETRAKOV:  Good morning.

9              THE COURT:  Hello.  Thank you for being here in

10    person.

11             MS. PETRAKOV:  I'm Albena Petrakov, Offit Kurman,

12    on behalf of Goldwater.

13             THE COURT:  Yes.  So this is a successor liability

14    issue.  You state in your letter, Ms. Petrakov, that this

15    lack of specific allegations reflects Plaintiff's failure to

16    engage in any reasonable investigation of facts.  Had LBHI

17    done so, it would have discovered that Goldwater bank is not

18    a successor to Community Banks of Colorado.  Community Bank

19    entered receivership.  A small subset of assets was

20    transferred, etc.

21             So have you had a chance to speak to each other?

22             MS. PETRAKOV:  We had a brief chance to talk with

23    Mr. (indiscernible), and I have provided some documentation

24    to show that Affiliated Financial Group LLC, which is a --

25             THE COURT:  Mh hmm.

1          MS. PETRAKOV:  -- (indiscernible) owned subsidiary

2      of Goldwater Bank, purchased a small subset of assets in

3      2009, before the receivership.

4          THE COURT:  Mh hmm.

5          MS. PETRAKOV:  And we agreed to disagree.  We

6      haven't reached any common solution.  I don't think that the

7      mere -- the de facto merger or continuation exceptions apply

8      to the extent CBC continues to exist after the purchase.  I

9      don't think there could be a de facto merger under Colorado

10     law, which is going to be the active law.

11         And with respect to the continuation, under

12     Colorado law, to establish continuation, you need to prove

13     continuation of the company or the entity, meaning same

14     shareholder interests or officers and directors, not

15     continuation of the business operations.

16         As (indiscernible), we think that neither

17     Goldwater Bank nor the subsidiary belong in this case.

18         THE COURT:  Okay.  Thank you.  This seem -- this

19     one seems a little different than the other ones.

20         MR. KUEHN:  I -- it is, but it flags the same

21     issue that we face that we face in many of the successor

22     claims, and that is that the documents, facts, the

23     information is primarily in the hands of the defendants.  We

24     can do our diligence.  We can search the public record.  But

25     unless it's a, you know, a publicly traded company, unless

Page 25

1    it files with the SEC, there's limited diligence there.

2    There's limited information that we can get from the public

3    record.  And --

4              THE COURT:  But in this situation -- I don't

5    disagree with that, but in this situation, Ms. Petrakov

6    seems to have supplied you, just in this letter, with a

7    bunch of facts and seems to me to be willing to give you

8    more facts.

9              MR. KUEHN:  If we can -- pardon me.

10             THE COURT:  Yeah.

11             MR. KUEHN:  If we can engage in discovery before

12   the motion is filed, that would make sense.  We're happy to

13   address the motion once --

14             THE COURT:  Well, I don't want to use the word

15   "discovery."  I would like to use the word "diligence."

16             MR. KUEHN:  Diligence.

17             THE COURT:  I don't want to -- we're not going to

18   do --

19             MR. KUEHN:  So --

20             THE COURT:  I think it kind of defeats the purpose

21   to be doing discovery, which is litigation.  I think that

22   you are limited.  You only know -- you only can know what

23   you know, but you have somebody here who's willing to give

24   you information.  Once you have the information, if you --

25   if you still agree to -- if you disagree, you're going to --

Page 26

1    the motion's going to have to move forward and we'll have to

2    deal with it then.

3            But right now, it seems like just in this letter

4    there's a bunch of information that you ought to take some

5    time to evaluate and figure out whether you want to pursue

6    this or whether you need to amend.

7            MR. KUEHN:  That's fine.  As long as we can

8    exchange information and continue to discuss before motions

9    are filed, that would make sense.

10           THE COURT:  Okay.  All right.  So Ms. Petrakov,

11   you're willing to do that?

12           MS. PETRAKOV:  Absolutely.

13           THE COURT:  Following up on what you just said.

14           All right.  So for this one, I'm not going to ask

15   you that arrive at a briefing schedule today.  I'm just

16   going to ask that, as promptly as practicable, you exchange

17   information.  Keep talking to each other.  If you get to an

18   agreement, I'll see a voluntary dismissal or something on

19   the docket.  If you don't, then let us know and come up with

20   a briefing schedule.

21           MS. PETRAKOV:  Thank you, Your Honor.

22           MR. KUEHN:  Thank you, Your Honor.

23           THE COURT:  All right?  Okay.  Very good.  Thank

24   you, Ms. Petrakov.

25           Okay.  So is that -- that covers all of the letter

1    requests except for Ms. Adler.

2              MS. ADLER:  Right.

3              MR. KUEHN:  Correct, Your Honor.

4              THE COURT:  So Ms. Adler's in a category of her

5    own.  So let's come on up, but let's --

6              MS. ADLER:  Good morning, Your Honor.

7              THE COURT:  Good morning.

8              Yeah, so do we want her tried with everyone -- you

9    have her on the phone.  We want to try to gather a set of

10   briefing schedules for the other motions to dismiss, or do

11   you want to take that offline and see what -- how you can do

12   that?  I'd like them all to be on relatively the same track

13   so that I can achieve any efficiency that might be

14   available.

15             MR. KUEHN:  I think it's probably something that

16   we can accomplish offline --

17             THE COURT:  Okay.

18             MR. KUEHN:  -- and send you a letter in the next

19   day or so.

20             THE COURT:  Okay.  All right.  So folks on the

21   phone, I think that makes sense so I don't have to keep

22   other folks in the courtroom waiting.  So why don't you work

23   on a briefing schedule sooner rather than later?

24             And the issues are not extensive, so I don't need,

25   you know, bunches of affidavits and 30-page briefs and

1    whatnot.  But see if you can work something out.

2              MR. KUEHN:  Yes, Your Honor.

3              THE COURT:  All right.  And then in terms of a

4    hearing date, do you want to do that now and then work

5    backward from that?  Do you want to pick a hearing date?

6    Because --

7              MR. KUEHN:  Sure.  We can do that.

8              THE COURT:  Because you're here.

9              MR. KUEHN:  Yes.

10             THE COURT:  So are we looking at July, August,

11   September?  You tell me.

12             MR. KUEHN:  I would imagine --

13             THE COURT:  With a lot of backs and forths.

14             MR. KUEHN:  Yeah.  I would imagine -- I would

15   imagine August, perhaps September?  I don't know how long

16   the defendants are going to need to file their initial

17   motions.  Obviously, we've done a lot of work on the -- on

18   our side to prepare.

19             THE COURT:  Right.

20             MR. KUEHN:  So it shouldn't take too long to

21   respond.

22             THE COURT:  Okay.  Why don't -- why don't I do

23   this?  Instead of making you pick a date, a firm date,

24   today, why don't I tell you what's available in August and

25   what's available in September, and then that can be part of

1   your discussion.

2          MR. KUEHN:  Perfect.

3          THE COURT:  Okay.  All right.  So in August, the

4   -- August 12th through 15th I think would be the best choice

5   for August.  The prior week I'm out teaching and whatnot.

6   And the end of August always elicits family commitments and

7   picking kids up from camp and whatnot.  So we don't want to

8   do that.

9          September is complicated as well.  It would have

10  to be the 4th or 5th, which is the Wednesday and Thursday

11  after Labor Day.  And then the next -- really the --

12  incredibly, the next available date would probably be in

13  October because of -- I have other commitments and there's

14  the Jewish holidays.

15         So I would love to have the -- the 4th and the 5th

16  look really good to me, of September.

17         MR. KUEHN:  Okay.  We'll discuss with the

18  defendants and see if we can work out a schedule that lands

19  on the 4th and 5th.

20         THE COURT:  Okay.  That ought to be doable because

21  that's almost two months out from now.

22         MR. KUEHN:  Should be plenty of time.

23         THE COURT:  Okay.  Just take sure that when you're

24  doing the schedule that the last piece of paper in gets --

25  would get to me no later than August 22.

1          MR. KUEHN:  Certainly.

2          THE COURT:  Okay?  Okay.  So if the folks who are

3     on the phone for the first segment want to ring off, you're

4     very welcome to.  You can stay onboard if you like.

5          Okay.  Ms. Adler.

6          MS. ADLER:  Good morning, Judge.

7          THE COURT:  Good morning.  How are you?

8          MS. ADLER:  I am good.  It's nice to see you,

9     Judge.

10          THE COURT:  Is it really?

11          MS. ADLER:  Yeah.  Yeah.  It's been a while.  It's

12     been a while.  I try to stay out of trouble --

13          THE COURT:  Okay.

14          MS. ADLER:  -- when we're not -- we're not here.

15          THE COURT:  Very good.  So you filed a letter.

16          MS. ADLER:  We filed a letter following the filing

17     of the motion to dismiss, obviously.

18          THE COURT:  Right.

19          MS. ADLER:  And the motion to dismiss is based

20     wholly on Your Honor's decision.

21          THE COURT:  So this is a fascinating -- this is

22     fascinating to me.  What you're telling me in the letter is,

23     based on my decision on subject matter jurisdiction, I'm now

24     going to dismiss these cases.

25          MS. ADLER:  I think you might, Your Honor.

1           THE COURT:  Can you tell --

2           MS. ADLER:  I think you should.

3           THE COURT:  Tell me how I'm going to do -- why I'm

4    going to do that.

5           MS. ADLER:  Because as I understood Your Honor's

6    GSE subject matter jurisdiction argument, I'll call it, Your

7    Honor determined that there was a close nexus because these

8    were prepetition litigation claims that LB -- prepetition

9    contingent, unmatured litigation claims that LBHI had at the

10   time of the bankruptcy filing, prior to the bankruptcy

11   filing, and as to which the plan retained jurisdiction.

12          And I believe that we have put in sufficient

13   document-related facts to show Your Honor, at least with

14   respect to the RMBS claims asserted against the moving

15   defendants, that one of two things are the case.  Either any

16   possible claims that Lehman Brothers Bank had were not

17   assigned to LBHI till long after the petition, and in some

18   instances until long after the plan was confirmed and became

19   effective.

20          THE COURT:  Okay.  So time out.

21          MS. ADLER:  Yeah.

22          THE COURT:  So let me -- let me stay -- let me

23   stay with you because this was presented in your letter in a

24   very truncated way.

25          MS. ADLER:  Right.

Page 32

1          THE COURT:  That's not a criticism.

2          MS. ADLER:  We only have two pages.

3          THE COURT:  I understand.

4          MS. ADLER:  Got it.

5          THE COURT:  So what you're saying is that for

6    Fannie and Freddie, the estate had contingent

7    indemnification claims.

8          MS. ADLER:  No.  I'm saying that we did not

9    discuss the assignment issues in connection with Fannie and

10   Freddie.

11         THE COURT:  Okay.  But, you see, you're jumping

12   between -- you started with that the -- you're telling me

13   that the premise of my previous decision with respect to

14   subject matter jurisdiction on the Fannie and Freddie claims

15   was the fact that those were prepetition contingent claims.

16         MS. ADLER:  Right.  That is what Your Honor's

17   concluded were --

18         THE COURT:  Well, that -- those are the facts from

19   the ground, right?

20         MS. ADLER:  I don't -- actually, Judge, I believe

21   you found those facts.  I don't think there is records

22   supporting those facts.  I think they're simply allegations

23   in the complaint.  So -- and there's nothing very clear in

24   the complaint about when --

25         THE COURT:  Well, hold on.

1          MS. ADLER:  -- the rights were assigned by Lehman

2     Brothers Bank to LBHI.

3          THE COURT:  No, no, no.  Don't talk to me about --

4     don't talk about assignments.  I'm just talking about that

5     Fannie and Freddie filed huge claims against Lehman,

6     prepetition claims, right?  And --

7          MS. ADLER:  Fannie and Freddie, yes.

8          THE COURT:  Yes.

9          MS. ADLER:  That's not -- I'm -- but you're

10    misunderstanding me.  My under -- maybe I misspoke.

11         THE COURT:  Perhaps you're not explaining it --

12         MS. ADLER:  I am sure that's correct, Judge.  Let

13    me try again.

14         THE COURT:  So, but let me -- let me try this.

15    Fannie and Freddie had huge claims against the estate,

16    right?  The estate settled those.

17         MS. ADLER:  Correct.

18         THE COURT:  Right?  And then arising out of those

19    settlements, the estate asserted the downstream claims

20    against, amongst others, your clients.

21         MS. ADLER:  That's correct.

22         THE COURT:  Okay.  Okay.  You try because I'm not

23    understanding what you're saying.

24         MS. ADLER:  Okay.  As I read your GSE subject

25    matter jurisdiction case, and I have read it many times --

 1            THE COURT:  Okay.

 2            MS. ADLER:  -- my understanding of your analysis

 3    and the reason that you concluded that there was a close

 4    nexus sufficient to predicate subject -- related to subject

 5    matter jurisdiction was because you state -- and you state

 6    it three times -- that LBHI --

 7            THE COURT:  Mh hmm.

 8            MS. ADLER:  -- held contingent, unmatured,

 9    prepetition claims against the mortgage originators.

10            THE COURT:  Yes.

11            MS. ADLER:  Okay.

12            THE COURT:  Yes.

13            MS. ADLER:  My point is I don't think that's

14    factually accurate.  I think that is --

15            THE COURT:  You thought I was wrong then or you

16    think I'm not going to be able to say that about the --

17            MS. ADLER:  I don't think the record was before

18    you then, so I think it was immaterial.  And the allegations

19    in the complaint do not, I think, conspicuously fail to

20    specify when Lehman Brothers Bank, non-debtor Lehman

21    Brothers Bank, assigned its rights, remedies,

22    representations, and warranties to Lehman Brothers Holdings.

23    And --

24            THE COURT:  Okay.  Now I -- now I understand what

25    you're saying.

1          MS. ADLER:  So -- right.  So if I --

2          THE COURT:  Now I understand what you're saying.

3          MS. ADLER:  Okay.  I'm sorry if that didn't come

4    across clearly.

5          THE COURT:  Without -- no, without -- I'm not --

6    I'm not going to agree or disagree with how --

7          MS. ADLER:  I understand.

8          THE COURT:  -- you're characterizing the opinion,

9    but now at least I understand what you're saying.

10          MS. ADLER:  So the arguments very sketchily in the

11    -- not sketchy arguments but to abbreviate them -- in the

12    motion to dismiss are effectively twofold.  One is that the

13    assignment documents available in the public record -- and

14    from submissions --

15          THE COURT:  Mh hmm.

16          MS. ADLER:  -- that Lehman has filed show that the

17    rights that would give Lehman the ability to -- Lehman

18    Holdings the ability --

19          THE COURT:  Mh hmm.

20          MS. ADLER:  -- to come after our clients, they

21    didn't get those rights till post-petition.

22          THE COURT:  I understand what you're saying.

23          MS. ADLER:  Or --

24          THE COURT:  Right.

25          MS. ADLER:  -- from a more conventional standpoint

Page 36

1    point of view, which is also, as you know --

2             THE COURT:  Mh hmm.

3             MS. ADLER:  -- analyzed under 12 B-1 that if

4    Lehman Brothers Holdings purportedly got these rights before

5    it filed its bankruptcy filing, those rights were divested

6    when the loans were sold by Lehman Brothers Holding through

7    SAS Co, through Structured Assets Securities Corporation --

8             THE COURT:  That's a different argument.

9             MS. ADLER:  To the RMBS trustees.

10            THE COURT:  Okay.  That's a different argument.

11            MS. ADLER:  But they're two prongs in --

12            THE COURT:  That's what I call the Goldilocks

13   argument.  At one point it was too early, at one point it

14   was too late --

15            MS. ADLER:  Right.

16            THE COURT:  -- but it was never just right.

17            MS. ADLER:  Correct.

18            THE COURT:  Okay.

19            MS. ADLER:  That's exactly right.

20            THE COURT:  Right.

21            MS. ADLER:  That is --

22            THE COURT:  That's your argument?

23            MS. ADLER:  That is the argument.

24            THE COURT:  Okay.

25            MS. ADLER:  That's correct.

1            THE COURT:  All right.  So I understand what

2    you're saying now.

3            MS. ADLER:  Good.

4            THE COURT:  Do you understand what Ms. Adler is

5    saying?

6            MR. KUEHN:  I think I do.

7            THE COURT:  I know you disagree with it, but do

8    you understand what she's saying?

9            MR. KUEHN:  I believe I understand the argument.

10            THE COURT:  Okay.  So, you know, so you're going

11    to have -- you're going to -- you're going to make this

12    motion.

13            MS. ADLER:  Well, if you give us permission to

14    make the motion.

15            THE COURT:  Well, I'm --

16            MS. ADLER:  We've made the motion to dismiss.  Mr.

17    -- Lehman Holdings opposition is due, Mr. Brent just told

18    me, July 12th.

19            THE COURT:  Right, but --

20            MS. ADLER:  And that'll be fully briefed --

21            THE COURT:  Okay.

22            MS. ADLER:  -- in August.

23            THE COURT:  But -- okay.  But I'm not going to say

24    discovery.

25            MS. ADLER:  I understand.  But the -- I mean, I --

1           THE COURT:  What this is only about -- not only,

2     but this is about not whether these cases go on but whether

3     these cases go on here because I can't preside unless I have

4     subject matter jurisdiction.

5           MS. ADLER:  Well, that's correct.

6           THE COURT:  Right.

7           MS. ADLER:  And they or may not go on elsewhere.

8     Who knows?  I mean, if you don't have subject matter -- if

9     you don't have subject matter jurisdiction, no one in the

10    Southern District does on a related-to basis, and I don't

11    know if there are other independent bases for federal court

12    jurisdiction and/or, if there were, if there would be

13    personal jurisdiction.  With respect to my client, there

14    would not be personal jurisdiction, I don't think --

15          THE COURT:  All right.  Well, that's --

16          MS. ADLER:  -- in the Southern District.

17          THE COURT:  That's way beyond what we're going to

18    talk about.

19          MS. ADLER:  Right.

20          THE COURT:  So, okay.  So why don't you have a

21    seat.

22          MS. ADLER:  Okay.

23          THE COURT:  Thank you for patiently explaining

24    what your -- what your theory was.  Okay.

25          MR. KUEHN:  So, Your Honor, first of all, before I

1    even get into the merits on their motion to dismiss --

2             THE COURT:  Yeah.  You don't have to get --

3             MR. KUEHN:  -- which I don't think makes sense.  I

4    don't think it makes sense here today.

5             THE COURT:  That's -- don't make -- don't get into

6    the merits of the motion.  I was just -- based on the

7    limited description in Ms. Adler's letter, I wanted to

8    understand what her thinking was.  Now I understand what her

9    thinking was, and I'm not saying whether I agree with it --

10   whether I agree with the new theory, whether I agree with

11   the characterization of the previous onionin, none of that.

12   This was simply a request for a stay of discovery, and I'm

13   -- I've had those requests before, and I'm not going to

14   grant it now.  So go -- so I don't know that there's that

15   much more to talk about.

16            MR. KUEHN:  I don't hint I have anything else to

17   say if you're denying their request to file a motion for

18   stay of discovery.

19            THE COURT:  Well, Ms. Adler, do you want to file a

20   formal motion?

21            MS. ADLER:  Yeah, we -- I mean, there are -- you

22   know, there's caselaw on when a stay of discovery may be

23   appropriate, and the standards which I specified in the

24   letter are the Court is to consider the -- it is true it's

25   discretionary.  It's not automatic, but if the Court doesn't

1    have subject matter jurisdiction and there's good argument,

2    an argument that is quote "not unfounded in the law," and

3    respectfully, it's your argument that we're relying upon

4    here, so I know, you know, it's founded in the law.  People

5    should not be going forward.

6         And then the other factors that you consider are

7    the breadth of the discovery sought, the strength of the

8    underlying motion, and the burden, and whether the motion is

9    potentially dispositive.

10        THE COURT:  How many -- how many loans are

11   involved in --

12        MS. ADLER:  In the moving defendants?  From -- on

13   behalf of the moving defendants?

14        THE COURT:  Mh hmm.

15        MS. ADLER:  Ms. Henderson's on the line, and she

16   can tell you how many are from her clients.  Between my

17   clients and counsel representing the other moving

18   defendants, there are about 55.

19        THE COURT:  What are the -- where are we in the

20   CMO in terms of moving deadlines for discovery?

21        MS. ADLER:  We --

22        THE COURT:  Because you're asking me to basically

23   suspend the CMO.

24        MS. ADLER:  No, I'm not at all.  And I'm -- we're

25   not asking about the GSE because that case is continuing.

 1   We're talk about the RMBS --

 2           THE COURT:  And you're asking me to suspend the

 3   CMO with respect to the RMBS.

 4           MS. ADLER:  Yeah, but there're --

 5           THE COURT:  The new wave.

 6           MS. ADLER:  -- 30 defendants.  Maybe 20 moving

 7   defendants.  There are 190-plus other defendants.

 8           THE COURT:  No, but you're asking me to disrupt

 9   the CMO with regard to all those defendants, to suspend the

10   CMO.

11           MS. ADLER:  Pending Your Honor's decision on the

12   --

13           THE COURT:  Ms. Adler, the effect of that is that

14   the dates in the CMO would be suspended until I decide.

15           MS. ADLER:  I actually, Your Honor, well, don't

16   think that it's likely.  We're asking for a brief stay

17   pending your decision.

18           THE COURT:  But it would -- if it --

19           MS. ADLER:  You'll have the papers in August, at

20   the latest.

21           THE COURT:  If there -- if there -- if there's a

22   discovery deadline in August, I'm not --

23           MS. ADLER:  No, discovery is ongoing.  I mean, the

24   parties have exchanged -- and Mr. Kuehn will correct me if

25   I'm wrong -- have exchanged requests for production and

1    interrogatories and their objections to them.  There have

2    been -- the only documents that have been produced which

3    were not sort of part of formal discovery were the loan

4    files --

5              THE COURT:  Okay.

6              MS. ADLER:  -- and the trust documents that Your

7    Honor --

8              THE COURT:  So answer me this.  What's the next

9    date?  I don't want to bother having to rule on a motion

10   where, as a practical matter, there's no effect.  If there

11   are --

12             MS. ADLER:  Well, we are all -- there's very, you

13   know, the --

14             THE COURT:  Could someone answer my narrow

15   question?  What is the next operative date in the CMO that

16   would be suspended if I were to agree with you that

17   discovery should be stayed?

18             MS. ADLER:  Hold on just a minute, and I will tell

19   you.

20             THE COURT:  Do you know, Mr. Kuehn?

21             MR. KUEHN:  Substantial completion --

22             MS. HENDERSON:  Good morning, Your Honor.  This is

23   Tracy Henderson, American Mortgage Law Group --

24             THE COURT:  Well, Ms. Henderson, no.  No, no, no.

25   Hang in there.  I'm going to hear from Mr. Kuehn.

1            MS. HENDERSON:  I wanted to ask a question, Judge.

2            MR. KUEHN:  The next hard and fast date in the CMO

3    related to document production and discovery is the

4    substantial completion of discovery, of document production

5    on April 13th next year.

6            THE COURT:  On April 13th next year?

7            MR. KUEHN:  Yes.

8            THE COURT:  So Ms. Adler, why are we doing this?

9    What's the point?

10           MS. ADLER:  Because, Your Honor, before April

11   13th, everybody is in good faith trying very hard to cull

12   trillions of documents responsive to, you know, what both

13   sides think are very overbroad document requests.

14           THE COURT:  Okay.  So if you -- if you -- if you

15   do nothing until I rule on this sometime in the fall, you

16   have until April next year.

17           MS. ADLER:  No, I would -- theoretically you're

18   supposed to be producing on a rolling basis, and so is every

19   --

20           THE COURT:  So just roll slower.

21           MS. ADLER:  Well, okay.  I mean, I --

22           THE COURT:  I mean, this is --

23           MS. ADLER:  I think it's --

24           THE COURT:  Listen.  This is a waste of everyone's

25   time.

1            MS. ADLER:  On the contrary, Your Honor.  If --

2            THE COURT:  There is no effect.  If I were to

3    grant a quote, unquote "stay," there is no effect.

4            MS. ADLER:  There actually is an effect, Your

5    Honor.  Our clients are all spending a whole lot money

6    looking for responsive documents determining what's

7    responsive.

8            THE COURT:  Mr. Kuehn, I don't --

9            MS. ADLER:  We're not waiting until April.

10            THE COURT:  I don't want to have the estate or

11    these parties spend money on a motion for stay of discovery

12    when there is no practical effect of it.  What am I missing

13    here?  There's not -- there aren't depositions scheduled for

14    next week.  There is not a production deadline for next

15    week.  You're talking about something that is 10 months

16    away.  There is no practical effect to this.

17            MS. ADLER:  Well, Your Honor, if we're going to

18    complete discovery by April of next year -- which includes

19    obviously producing documents, answering interrogatories,

20    taking depositions after that --

21            THE COURT:  So hypothetically, if I rule on your

22    motions in October -- October, okay.  October.  November,

23    December, January, February, March, April.  That's six

24    months.

25            MS. ADLER:  Your Honor, I am totally comfortable,

1   A, if Your Honor can rule in October, and, B, if in front of

2   the Court right now we can all agree that --

3              THE COURT:  I'm not --

4              MS. ADLER:  -- the moving defendants are not

5   violating any --

6              THE COURT:  They should -- moving --

7              MS. ADLER:  -- obligations --

8              THE COURT:  How about this?  The moving defendants

9   shall not be deemed to have violated their obligations under

10   the CMO if between now and the disposition of the motion to

11   dismiss they do not produce any additional documents.

12              MS. ADLER:  That's totally acceptable.  That's

13   fine with me, Your Honor.  Thank you.

14              MR. KUEHN:  I mean, that's fine as long as the

15   defendants continue to participate in all the other written

16   discovery that we need to deal with, interrogatories and --

17              THE COURT:  What -- but that's what I was asking

18   before.  What's the next date for them to do something?

19              MR. KUEHN:  Well, they are supposed to start

20   rolling production in late June.  I think it's June 25th or

21   26th.

22              THE COURT:  Okay, so --

23              MS. HENDERSON:  29th.

24              THE COURT:  Okay.

25              MR. KUEHN:  29th.

1          THE COURT:  Okay.  So here we are 10 days before

2     that.  Do you have documents to produce, Ms. Adler?

3          MS. ADLER:  I would have by June -- I would have

4     some.  I have 50 -- my client has 51 loans.  They're a tiny

5     little thing.  We have loads of clients, so have we started

6     to look for and go through documents?  Indeed, we have.

7          THE COURT:  Okay.  So if you have documents now,

8     as of today, why don't you just produce them?  You just said

9     that you're obligated to make a rolling production.  So if

10    you have documents, you should produce them.

11         MS. ADLER:  And then, Your Honor, we can stop

12    pending -- stop doing additional --

13         THE COURT:  Hold on.

14         MS. ADLER:  I'm not averse to producing them.  I'm

15    trying to diminish the burden or avoid the burden --

16         THE COURT:  You're representing to me that you

17    want to have your clients not have to continue to look for

18    documents.  On the other hand, document -- there's a date

19    for production next week.  So either people have been

20    diligently looking for documents, or they haven't.  You

21    can't have it both ways.

22         MS. ADLER:  We have been, Your Honor.

23         THE COURT:  Okay.  Then if you have documents now,

24    why is it burdensome to produce them?

25         MS. ADLER:  Because they're for a couple of loans.

1                    MS. HENDERSON:  Your Honor --

2                    MS. ADLER:  I'm happy to produce what I've got.

3                    THE COURT:  Okay.

4                    MS. ADLER:  The point is should the burden and

5        expense be ongoing if there is a --

6                    THE COURT:  Ms. Adler, you are -- okay.  We're now

7        beyond the initial phase where I have patience, okay?  You

8        are -- if -- to the extent that you want to avoid future

9        burden, that's one thing.  To the extent that you have in

10       good faith been acting under the CMO and you have documents

11       --

12                   MS. ADLER:  I'm --

13                   THE COURT:  -- today, which you're suggesting to

14       me that everyone's working in good faith and they don't want

15       to be criticized for not having done that, then if you have

16       documents that have been located today, those should be

17       produced.  And that should go for everybody.

18                   MS. ADLER:  That's fine, Your Honor.  I'm not

19       objecting to that.  I think what we're doing is trying to

20       stop the clock as of today.  No one's saying that we

21       shouldn't produce that which we've already collected.

22                   THE COURT:  Well, it's very unclear that that's

23       not what you would want because you are telling me you don't

24       want to undertake any burden whatsoever.

25                   MS. ADLER:  Well, yes, going forward.  Exactly

1     right.  I mean, I'm here making the application to make the

2     motion.  I respect that Your Honor thinks that no notion --

3     no motion is necessary given what we've just discussed.

4     But, you know, answering interrogatories is not inexpensive

5     or without burden.  There're like 90-some-odd, I think,

6     interrogatories in -- right?

7              THE COURT:  What's the date for answering

8     interrogatories?

9              MS. ADLER:  The responses and objections are due

10    within 45 days from the time they were served, and they were

11    served on or about May 20 or 22.  You'll have to confirm.

12             THE COURT:  Look, here's the thing.  Okay.

13             MS. HENDERSON:  (Indiscernible).

14             THE COURT:  CMO -- the CMO was an extensively

15    litigated and negotiated document.  There was nothing in the

16    CMO that said -- that talked about any stays of discovery,

17    any ability to modify it for any reason like this.  So I

18    would suggest that if you want to make your motion, make

19    your motion.  We're going to keep going in the meantime.  I

20    told you what my views are.  I'll rule on the motions to

21    dismiss, and we can take it from there.

22             MS. ADLER:  I'm sorry.  So if we want to make --

23             THE COURT:  Make a motion.

24             MS. ADLER:  Make the motion to stay?  Fine.

25             THE COURT:  Okay.

1            MR. KUEHN:  Your Honor, if I could just make a --

2            THE COURT:  Sure.

3            MR. KUEHN:  -- couple of final points.  I

4    apologize.  I just would like to make the point that the

5    Lehman estate, it's not an operating business.  It's a

6    liquidating --

7            THE COURT:  Oh, they're quite aware of that.

8            MR. KUEHN:  It's trying to recover money for its

9    creditors.

10           THE COURT:  Yeah.

11           MR. KUEHN:  And responding to these motions --

12           THE COURT:  I understand.

13           MR. KUEHN:  -- it's costly.  It's costly and --

14           THE COURT:  I understand.

15           MR. KUEHN:  -- it hurts our creditors, and, you

16   know, if it's a meritless motion that's going to be a waste

17   of time, it's also a waste of money.  And yes, you know, our

18   client has a (indiscernible) fee recovery provisions in the

19   seller's guide --

20           THE COURT:  Mh hmm.

21           MR. KUEHN:  -- but the problem is we've been told

22   by a lot of defendants when we're discussing resolution of

23   claims that there's no money there.  So it's almost a free

24   option when they keep filing motions.

25           THE COURT:  Well, that's the part that I've never

Page 50

1    understood about this.  All -- and we've had this

2    conversation countless times.  To the extent that defendants

3    say, I have no money, I've said to the plan administrator on

4    repeated occasions, you should follow up on that because

5    it's not worth the plan administrator's time and money

6    pursuing a judgment that you're not going to be able to get

7    satisfied.  And then when those conversations begin to take

8    place, all of a sudden, things quiet down because maybe

9    there is money there.

10            MR. KUEHN:  Yes, Your Honor.

11            THE COURT:  Okay.  So I -- you know, I only know

12   what I know.  People are going to act in their own economic

13   interest.  I believe that one way or another, these cases

14   are going to move forward somewhere and that discovery

15   informs a settlement discussion.

16            So I understand that the defendants continue to

17   seek to avail themselves of every motion that there is.  I

18   get that.  I've said at the beginning I'm not cutting off

19   anybody's due process rights.  That imposes a cost on the

20   plan administrator.  It is what it is.  I -- there's nothing

21   that I can do about that, you know, within limits.

22            I'm not saying that folks ought to file -- be able

23   to file frivolous motions, and I think that I've done

24   everything that I can to discourage repeat motions and bake

25   into this version of the CMO the ability to pro forma things

1   and simply incorporate by reference previous rulings so that

2   these folks, new folks, were afforded due process and have

3   the benefit of a substantive ruling so that they have their

4   rights preserved for appeal and other matters going forward.

5   That was the whole theory of the new version of the CMO.

6           MR. KUEHN:  Absolutely, Your Honor.  Absolutely,

7   Your Honor.  I just want to be clear that we will be putting

8   in our opposition to their substantive motion, a motion to

9   dismiss --

10          THE COURT:  Mh hmm.

11          MR. KUEHN:  -- in July.  July 12th, I believe, is

12  the date.

13          THE COURT:  Okay.

14          MR. KUEHN:  And so, you know, you'll see our

15  arguments then on the merits.

16          THE COURT:  Right.

17          MR. KUEHN:  And you'll see it doesn't make sense

18  to stay discovery at all.

19          THE COURT:  Okay.  Well, then that's fine.  Ms.

20  Adler thinks she has a winning argument both on subject

21  matter jurisdiction and staying discovery, so we'll have to

22  look at it.  Okay.  I mean, to the extent that your headline

23  argument is going to be that to the extent that Ms. Adler is

24  saying we've got a sure winner on subject matter

25  jurisdiction, I mean, fundamentally you're going to oppose

Page 52

1    that motion to stay discovery because you think she's wrong

2    on the subject matter jurisdiction.

3              MR. KUEHN:  And because there's no additional

4    burden because if we lose on subject matter jurisdiction, as

5    you pointed out, we'll be suing in a different court, and

6    the same discovery will be at issue.

7              THE COURT:  Well, Ms. Adler seems to have a theory

8    that Lehman -- that that's not true, that there may be no

9    court that you can sue in.

10             MR. KUEHN:  Yes, she does have a new argument on

11   that point.

12             THE COURT:  Okay.

13             MR. KUEHN:  The standing argument that we'll

14   explain why that's --

15             THE COURT:  The Goldilocks argument.

16             MR. KUEHN:  The Goldilocks argument.  We'll

17   explain why it's simply incorrect.  But the primary argument

18   doesn't affect --

19             THE COURT:  Okay.

20             MR. KUEHN:  -- where the --

21             THE COURT:  All right.  Well, look.  I mean, I had

22   hoped that we would be able to get to a practical resolution

23   of this issue.  Maybe that will emerge as we get later, but

24   for now, I'm not going to be in the position of any

25   defendant saying that their rights under federal rules were

Page 53

1    truncated anyway.  So --

2            MS. ADLER:  Your Honor, two points.  Obviously, we

3    don't agree with the meritless.  And also, to the extent

4    that our arguments prevail with respect to subject matter

5    jurisdiction, they probably preclude actions in other

6    courts.

7            But the second point is if indeed Mr. -- Counsel

8    is --

9            THE COURT:  Ms. Adler, you just won.  You're going

10   to file your motion.  Why aren't we done?

11           MS. ADLER:  I'm trying to address Counsel's point

12   and your point about the plaintiff's sensitivity to cost

13   issues.  So what I was going to propose -- which meshes with

14   something you said earlier, Your Honor -- is that if we wait

15   till we see the arguments on July 12th that Defendant makes

16   and we can do so in evaluating whether we think it makes

17   sense to go forward with the motion to stay without being

18   deemed not in compliance with any discovery obligations, I'm

19   happy to do that.  No one wants to make frivolous motions or

20   motions that have no chance of prevailing, obviously, on

21   either side.

22           THE COURT:  But the CMO will remain in effect.

23   The deadlines will remain in effect.  You can do whatever

24   you believe you're entitled to do.  If you want to wait to

25   file your motion till you see their response to the -- to

Page 54

1    the subject matter jurisdiction motion, you can do that.

2    But I'm not -- I'm not going to suspend any deadlines

3    pending that.  You can decide when you want to stay

4    discovery.

5              MS. ADLER:  Well, I think -- I understand that

6    Your Honor isn't suspending deadlines.  I was going back to

7    a comment Your Honor made a short time ago about because the

8    deadlines are over a period of time that ranges --

9              THE COURT:  I'm not going to micromanage whether

10   or not it's okay for your clients to spend one hour a week

11   looking for documents or 10 hours a week looking for

12   documents.

13             MS. ADLER:  I understand, Your Honor.

14             THE COURT:  You --

15             MS. ADLER:  We'll work it out.

16             THE COURT:  You folks do whatever you need to do

17   under the order, and I'm not going to conduct an

18   investigation into what you've done.  I trust that you'll

19   proceed in good faith.

20             MS. ADLER:  Of course.  Thank you very much, Your

21   Honor.

22             THE COURT:  Okay.  So, Ms. Adler, are you and the

23   other similarly lined parties in fact going to wait and see

24   what Lehman's response is?

25             MS. ADLER:  I have to speak to Counsel, and

1       they're on the phone, so I don't want to do that --

2               THE COURT:  Okay.

3               MS. ADLER:  -- obviously right in front of

4       everybody.

5               THE COURT:  Would you be so kind, after you've had

6       a chance to confer with Ms. Henderson or whoever else that

7       it is, could you let the plan administrator know --

8               MS. ADLER:  Sure.

9               THE COURT:  -- what you're going to do?

10              MS. ADLER:  Yeah.

11              THE COURT:  Just so they can --

12              MS. ADLER:  We might try and work something

13      consensual out with them, mirabile dictu.

14              THE COURT:  That would be --

15              MS. ADLER:  I know, Your Honor.

16              THE COURT:  Stranger things have happened.

17              MS. ADLER:  Not many, but sure.

18              THE COURT:  Not many.

19              MS. ADLER:  Sure, Your Honor.

20              THE COURT:  Okay.

21              MS. ADLER:  Yeah.

22              THE COURT:  All right.

23              MS. ADLER:  And if we work something out, we'll

24      let you know too.

25              THE COURT:  Okay.

1              MS. ADLER:  All right.

2              THE COURT:  All right.

3              MS. ADLER:  Thank you very much, Your Honor.

4              THE COURT:  All right.  Thank you.  All right.

5              MR. KUEHN:  Thank you, Your Honor.

6              THE COURT:  We're done for this?

7              MR. KUEHN:  We are done.

8              THE COURT:  We are done.  Okay.  Thank you very

9    much.  Okay.  So we're going to roll right into the 11:00

10   calendar.  So thank you.  Okay.  First on the 11:00 calendar

11   is 45th Street Park Avenue.

12              Okay.  Could the folks who are here for the 11:00

13   Lehman matter please come up?

14              MR. FAIL:  Good morning, Your Honor.

15              THE COURT:  All right.  Good morning, Mr. Fail.

16   How are you?

17              MAN:  Good morning, Your Honor.

18              THE COURT:  All right, let me --

19              MR. WU:  Good morning, Your Honor.

20              THE COURT:  All right.  Let me --

21              MAN:  Good morning, Your Honor.

22              THE COURT:  Okay.  Let me see who's on the phone.

23              (Overlapping Voices)

24              MR. GREGORY:  Ricky Gregory is present, Your

25   Honor.

1        THE COURT:  I'm going to be muting the lines of

2    everyone except for Mr. Wu.  And just to make it clear, this

3    is an unusual circumstance in that it's very rare that when

4    a party wishes to make a substantive argument that I allow

5    that to be made telephonically.

6        So, Mr. Wu, we have afforded you that courtesy.

7    It appears that you live in Chicago.  That's for today only.

8    And going forward, as is my practice in every case, to the

9    extent that there would have to be any further substantive

10   arguments on this matter or any other, I would expect that

11   you would appear in person.

12       MR. WU:  Thank you, Your Honor.  I do appreciate

13   it.

14       THE COURT:  All right.  So, there was a late-

15   breaking slew of documents that hit the docket, many of

16   which I'm just going to put to the side.  Although I would

17   note that they -- it appears that people are copying

18   documents from each other and from documents that are on the

19   docket, and that folks are actually copying from the wrong

20   documents.

21       So, you can take a look at what you filed, and I'm

22   sure that if you spend a little time, you'd figure out that

23   you're copying from the wrong documents.  So, I'll come back

24   to that point perhaps later.

25       So, with respect to Mr. Wu, there was received by

Page 58

1   the Court on June 13th a document bearing a June 11th date

2   that styled as a motion to demand service, in which Mr. Wu,

3   you assert that you didn't receive service and you state

4   without any support whatsoever that it's intentionally

5   committed by the debtor.

6          So, we went ahead and pulled the certificate, the

7   affidavit of service, as we do in every case, and it did not

8   appear that your name was on the affidavit of service.

9          So, Mr. Fail, did I miss something in the

10  affidavit of service.

11         MR. FAIL:  No, Your Honor.  Good morning.  For the

12  record, Garret Fail, Weil, Gotshal & Manges, here this

13  morning with my colleague Jason Hufendick.

14         Your Honor is correct.  And thank you for giving

15  me an opportunity to point out it was not an intentional

16  omission.  It was an inadvertent oversight that Mr. Wu was

17  not served with our objection to his motion, which I would

18  note, and I'm sure Your Honor is aware, is different than if

19  the Debtor, or here, the plan administrator, were the

20  movant.  This is simply an objection to his motion.

21         I think, as Your Honor and the Plan Administrator

22  is aware, Mr. Wu did receive actual notice in time to file

23  quite timely in advance of this hearing a substantive

24  lengthy reply.

25         THE COURT:  Okay.  Let me --

1           MR. FAIL:  Nonetheless, Your Honor, we --

2           THE COURT:  Let me ask --

3           MR. WU:  The reply --

4           THE COURT:  Let me ask this --

5           MR. WU:  The reply that I filed --

6           THE COURT:  Mr. Wu --

7           MR. WU:  (indiscernible)

8           THE COURT:  Mr. Wu, here's the way it works.

9    You're on the phone.  You will --

10          MR. WU:  Yes, Your Honor.

11          THE COURT:  You're going to get to speak when I

12   ask you to speak.  Okay?

13          MR. WU:  I understand.  And I apologize, Your

14   Honor.

15          THE COURT:  All right.  Otherwise, everyone's

16   going to be talking over each other.  Mr. Wu, my question to

17   you is when did you actually see the objection that had been

18   filed?

19          MR. WU:  I saw the objection that was filed

20   shortly after it hit the docket. And that's only because I

21   was looking over the dockets and to make sure I --

22          THE COURT:  Mr. Wu, I understand that you weren't

23   served with it.  We're not going to dispute that.  There is

24   no dispute as to that.  My question is what was the date

25   that you actually saw the document as you continued to check

Page 60

1    the docket?  The Plan Administrator's objection was filed on

2    May 29th.  So --

3              MR. WU:  I don't know the exact date, but it would

4    be around that date --

5              THE COURT:  Okay.

6              MR. WU:  -- May 29th or May 30th.

7              THE COURT:  So, at that moment you knew it hadn't

8    -- or shortly thereafter, it hadn't been served on you.

9              Now, Mr. Fail, when you figured out that Mr. Wu

10   had inadvertently not been served, what did you do, if

11   anything?

12             MR. FAIL:  Your Honor, we reached out to Mr. Wu

13   and asked if he would like additional time, and we offered

14   to adjourn this hearing and contact your chambers to work

15   out another date if he needed additional time, wanted to

16   file an additional substantive response.  He requested that

17   we proceed today, reserving all of his rights to make

18   arguments today, Your Honor.

19             THE COURT:  Okay.  So, Mr. Wu, what is it that you

20   -- when the Plan Administrator -- when Mr. Fail reached out

21   to you to say -- to acknowledge the error in service and to

22   offer you an adjourned date so that you could file something

23   substantive, obviously, you didn't take them up on that

24   offer.  Why not?

25             MR. WU:  When I received the call yesterday, it

Page 61

1   was a series of three phone calls.  We finally spoke, I

2   would say, around 6:00 Eastern time, 5:00 Central time.

3   During that call -- you know, it felt more threatened --

4   threatened than any other meaning to it.  So, I just take my

5   --

6           THE COURT:  I'm sorry.  I cannot understand the

7   word -- I cannot understand you.  All I can hear is the word

8   threatened.

9           MR. WU:  Right.  So, I --

10           THE COURT:  Mr. Fail has told me that he called

11   you and said, would you like to adjourn the hearing so that

12   you could file a response, and you apparently said no.

13           MR. WU:  Correct.

14           THE COURT:  So, what is it that you want to happen

15   today?  What do you think -- why -- if you want to respond

16   and he gave you the opportunity to respond, then why are we

17   here today?

18           MR. WU:  What I want to respond, what I want to

19   say is stated in my motion, and it's stated on my response

20   to the objection and the demand for service.  Everything

21   that I want to say is within the motion.

22           I just want to let Your Honor know and the

23   Honorable Court know that my due process was not honored,

24   and my rights have been violated, and to take that into

25   consideration.

1            THE COURT:  Okay.  Mr. Wu, we're not going to play

2     games.  I understand that you are not represented by counsel

3     and that you're appearing pro se.  In plain English, last

4     night Mr. Fail called you and said, you weren't served;

5     would you like more time; we'll adjourn the motion.  He

6     offered you the opportunity to not be here today and to file

7     a substantive response to the Plan Administrator's

8     objection.  That's due process.  That's what it looks like.

9            Now, you apparently said no, you want to be on the

10    phone.  So, you have a choice to make.  If you don't want to

11    file further substantive papers, we can go forward today.

12    And I'm going to rule on your motion, and that would

13    encompass all of these joinders.

14            But you're not -- you can't have it both ways.

15    When counsel calls you and acknowledges that you weren't

16    served, and offers you more time, it would seem logical for

17    you to have said, thank you, I'd like a couple of weeks to

18    file a response.  But you didn't do that.  You're here

19    today.

20            So, there was an inadvertent error.  There's no

21    conspiracy theory here.  This was a very unfortunate error.

22    Others who have filed joinders, in fact, were served.  Their

23    names are listed on the certificate of service.  You have

24    already told me that you had actual notice.  You saw the

25    objection.  You could have called my chambers.  I know that

Page 63

1    you know how to get in touch with chambers because you

2    contacted my chambers numerous times in order to arrange for

3    a hearing date.

4             So, if we're not going to go forward with this

5    argument today, because you're going to insist on your right

6    to file something more, then you can file something more,

7    and then one of two things is going to happen.  I will

8    either take the matter under advisement and issue a ruling

9    without there being another hearing like this, or I will

10   schedule another hearing and you will have to appear in

11   person.  You've now had --

12            MR. WU:  Your Honor --

13            THE COURT:  You've now had almost three weeks to

14   look at the arguments that were made by the Plan

15   Administrator and to think about whether or not you think

16   that you still have an argument for relief.  So, what would

17   you like to do, Mr. Wu?

18            MR. WU:  I would like to proceed today, Your

19   Honor.

20            THE COURT:  Saying that you would like to proceed

21   today, by that, let's be very specific.  By that, that means

22   that if you don't like the disposition that you get from the

23   Court and you wish to pursue your rights further on appeal,

24   that the fact that there was an inadvertent to serve you is

25   not something that you would be permitted to complain about

Page 64

1    subsequently.

2             MR. WU:  Yes, Your Honor.

3             THE COURT:  Okay.  On this record, then,

4    notwithstanding the inadvertent failure of the Plan

5    Administrator to serve Mr. Wu with the objection, we're

6    going to go forward and entertain argument on the matters.

7             Okay.  So, thank you Mr. Wu.  I think that's

8    helpful.  So, Mr. Wu, you did file a response on June 6th,

9    correct?

10            MR. WU:  Correct.

11            THE COURT:  Okay.  All right.  Mr. Fail, I've read

12   the objection that you filed.  I don't think I have any

13   questions.  Is there anything more that you want to add

14   before I hear from Mr. Wu?

15            MR. FAIL:  No, thank you, Your Honor.

16            THE COURT:  Okay.  All right.  Mr. Wu, have you

17   had an opportunity to really parse through what's being said

18   in the objection?

19            MR. WU:  Yes, I have.

20            THE COURT:  Okay.  So, well let me just take a few

21   minutes for the benefit of everybody on the phone, just so I

22   can make sure that everybody understands this.

23            At Docket 59409, there was a motion filed on

24   behalf of joint liquidators with respect to entities known

25   as LP4 and LP5.  That motion essentially sought permission

Page 65

1    to file a late claim with respect to certain so-called

2    exempt entities that had been dissented from the bar date

3    and were not were not required to file a proof of claim.

4           The facts and circumstances that were set forth in

5    that document were extremely unique.  That's the document,

6    Mr. Wu, that you used your template for your motion.  It

7    didn't require any detective work on my part.  You cited to

8    that document in your pleading.  And just to make clear the

9    fact that it was essentially a cut-and-paste, you refer in

10   your pleading to LP4 and LP5, which, of course, has no

11   application to your claims.

12          So, I think that you, and apparently other folks

13   who have sought to join you, saw that and thought, well,

14   there are similar securities involved.  Perhaps those

15   arguments apply to you, and that you might be able to file a

16   late proof of claim.  That's not correct, for any or all of

17   the reasons that are set forth in the Plan Administrator's

18   pleading.

19          First, and most importantly, your securities are

20   held -- are in a trust.  And even though that trust might

21   have been listed on the exempt entities list, in fact, a

22   proof of claim that beneficially covers securities that you

23   hold.

24          I'm not even going to address the issue of when

25   you acquired the security and whether or not you acquired

Page 66

1    them after the bar date.  That's a whole separate set of

2    issues.

3           The other thing that seems to be unfortunate, is

4    there's a misreading of the subordination provisions.  So,

5    even if there could be a proof of claim, and even if it

6    could be allowed, it's deeply, deeply subordinated to a

7    level that does not receive a distribution under the plan.

8           The guarantee of the subordinated securities,

9    which is related to the securities that you hold, the claim

10   that you hold with respect to those securities, only comes

11   into play to the extent that there is a distribution on the

12   underlined subordinated securities.  There's not, because

13   those securities are lower than all unsecured claims against

14   LBHI.

15          Under the plan, pursuant to the Bankruptcy Code,

16   there is a priority of payment.  Equity securities and those

17   claims that are on a parity with equity securities are not

18   entitled to receive a distribution.

19          MR. WU:  Your Honor, may I?

20          THE COURT:  Yes, go ahead.  So, I'm struggling to

21   understand the basis on which you believe you're entitled to

22   a distribution.  Moreover, the concept that these many years

23   later, it would be the right thing to do to give you

24   permission to file a proof of claim and the blanket

25   assertion that there is no prejudice is simply not true.

1          There have been precious few instances in which

2     someone has been granted leave to file a late proof of

3     claim.  And your own arguments are belied by the fact that

4     you have a host of joinders, because it appears that this

5     argument has now seemed to gain some traction among folks

6     who are either in touch with you, or who have read about it.

7          But there seems to be some connectivity here with

8     people copying the same letter and sending it in as a

9     joinder.  And far from being just you, Mr. Wu, there are

10    apparently a bunch of other people think that they'd like to

11    have similar relief.

12          So, in light of all that, I'm happy to hear

13    anything that you think I've gotten wrong or that the Plan

14    Administrator has gotten wrong as to why you should be

15    permitted to file a new claim, and why even if you were

16    permitted to file a new claim, under the clear provisions of

17    the plan and the securities at issue, why you think you

18    would be entitled to any distribution.

19          MR. WU:  Your Honor, the guarantee was the parity,

20    and the capital trust securities which are in parity with

21    LBIE and ECAPS.  That's the way I believe that's been

22    treated.

23          THE COURT:  Mr. Wu --

24          MR. WU:  And --

25          THE COURT:  Mr. Wu, I cannot understand.  This is

Page 68

1   a demonstration of why folks need to come in person.  I

2   cannot understand the words.  I cannot understand you.  So,

3   you do you're too close to your phone or you're too far from

4   your phone, or something.

5         MR. WU:  I'm sorry, Your Honor.  The guarantee

6   that I was referring to states that the securities that I'm

7   referring is on parity with LBIE and ECAPS.  And that's when

8   (indiscernible) the liability (indiscernible) --

9         THE COURT:  With LBIE?

10        MR. WU:  Yes, LBIE.  It's in parity -- if you look

11  at the (indiscernible) on Exhibit 8, they issued preferred

12  securities which are in parity with our capital trust.  And

13  that's why I filed the motion.  It's because that -- it is

14  in parity and we're entitled to the same treatment, because

15  (indiscernible) --

16        THE COURT:  Hold on.  Mr. Fail, maybe you're --

17  given that you're much younger than me, maybe you can

18  understand what Mr. Wu is saying, because I simply,

19  physically cannot understand what he's saying.

20        MR. FAIL:  I'll attribute it to me being on the

21  better side of the speakers, rather than say anything else,

22  Your Honor.  But I think what Mr. Wu is saying is that --

23  and it's what he wrote in his -- in part of his reply.  He's

24  focusing on the language "parity."  So, Your Honor, the

25  subordination provisions said three things.

1            THE COURT:  Hold on, Mr. Fail.  Let me catch up

2   with you.

3            MR. FAIL:  That's okay.

4            THE COURT:  So, which document of Mr. Wu's are you

5   talking about?

6            MR. FAIL:  I'm referring to Document 59751, which

7   is his reply.

8            THE COURT:  Okay, hold on.  Let me pull that up.

9            MR. FAIL:  Take your time, Your Honor.  I have a

10   copy that I can hand up, if it would be helpful.

11            THE COURT:  Which (indiscernible) is it?

12            WOMAN:  (indiscernible)

13            MR. FAIL:  It was filed on 6/6.  Your Honor, may I

14   approach?

15            THE COURT:  Yeah.  Okay.  So, Mr. Wu, I'm looking

16   at the document that you filed on June 6th.

17            MR. FAIL:  And so, Your Honor, if you look --

18            THE COURT:  Just -- just --

19            MR. FAIL:  Apologies.

20            THE COURT:  I can't let it go unsaid --

21            MR. FAIL:  Okay.

22            THE COURT:  -- because it's very troubling to me,

23   Mr. Wu, that you engaged in this little bit of gamesmanship

24   about today.  You filed a response.  You discovered you

25   hadn't been served.  Mr. Fail went to the trouble of calling

1    you.  It's just not the way one proceeds.  It's a waste of

2    everyone's time.

3                That being said, I'm considering your objection on

4    the merits.  So, Mr. Fail --

5                MR. FAIL:  An example of the quote is on Page 2 of

6    the --

7                THE COURT:  Page 2.

8                MR. FAIL:  -- of that reply, at the very top, Your

9    Honor.

10               THE COURT:  Yeah.

11               MR. FAIL:  It's a -- it purports to be a quote

12   from the guarantee subordination section.  And so, it

13   describes that the guarantee --

14               THE COURT:  Yeah?

15               MR. FAIL:  -- will cost acute and unsecured

16   obligation of LBHI that ranks --

17               THE COURT:  Right.

18               MR. FAIL:  -- one, subordinate, as Your Honor

19   pointed out --

20               THE COURT:  Right.

21               MR. FAIL:  -- to the rights of all other general

22   unsecured creditors.

23               THE COURT:  Right.

24               MR. FAIL:  Second, parity -- so, it's one, two and

25   three -- on parity with the most preferred -- most senior

Page 71

1   preferred or preference stock, now or hereinafter issued by

2   LBHI --

3           THE COURT:  Right.

4           MR. FAIL:  -- which is consistent with what Your

5   Honor had said and what --

6           THE COURT:  Yeah.

7           MR. FAIL:  -- the Debtor said.  But also, with any

8   guarantee --

9           THE COURT:  Right.

10          MR. FAIL:  -- by LBHI in respect to preferred

11  securities of any affiliate of HI.

12          THE COURT:  Right.

13          MR. FAIL:  Mr. Wu is suggesting that there were

14  affiliates that LBHI guaranteed, and apparently some -- but

15  he hasn't described or listed any guarantee of any preferred

16  securities from an entity that would rank differently.  But

17  he's saying there were solvent entities -- he's quoting LBHE

18  as an example, and then he throws in ECAPS, but those

19  weren't guaranteed.

20          And he's saying, therefore, that makes it somehow

21  higher.  But then let's just look at 3, just to complete it,

22  senior to LBHI common stock.  So, it's below GUCs --

23          THE COURT:  Right.

24          MR. FAIL:  -- above common, and we're saying

25  preferred.

1            THE COURT:  Right.

2            MR. FAIL:  And so, for example, he has claims in

3    four trusts, Capital Trusts he's alleging he has claims.

4            THE COURT:  Right.

5            MR. FAIL:  So, this language, Plan Administrator

6    believes, means that his Capital Trust 4 or 5, 6 -- 3, 4, 5,

7    6, they're all the same, because this language is in all of

8    the prospectuses.

9            THE COURT:  Right.

10            MR. FAIL:  He's suggesting that there was a

11    guarantee, an undisclosed -- he has the burden, but he

12    hasn't met it.  He's saying somehow this language gives him

13    a general unsecured claim because notwithstanding being

14    junior to all other GUCs, this middle paragraph focusing on

15    the word parity gives him parity with some other guaranteed

16    claim, of which I'm not aware, that has been allowed.

17            And that's -- Your Honor, that's his argument.  I

18    can't do it any more justice than that.  Again, Mr. Wu, you

19    know, if I misstated it, please -- it's your argument.

20            MR. WU:  Your Honor --

21            THE COURT:  Mr. Wu, these securities are junior to

22    all unsecured claims.  There was --

23            MR. WU:  (indiscernible)

24            THE COURT:  -- a proof of claim filed that

25    represents your claim, in essence.

1          MR. WU:  But that would not fall under the

2     guarantee, Your Honor --

3          THE COURT:  It doesn't matter.

4          MR. WU:  -- because --

5          THE COURT:  It doesn't  matter.  The guarantee

6     only is as good -- the guarantee is only as good as the

7     underlying claim.  The underlying claim was filed.  The

8     underlying claim was allowed.  The underlying claim was

9     subordinated.

10          MR. FAIL:  And additionally, Your Honor, as we

11    pointed out, it was equivalent to a bad boy guarantee.  It

12    wasn't in addition.  It said, if LBHI --

13          THE COURT:  Right.

14          MR. FAIL:  -- paid the trust and the trust didn't

15    pay it out, LBHI would make --

16          THE COURT:  Exactly.

17          MR. FAIL:  -- good under the same priority.

18          THE COURT:  Right.  Exactly.

19          MR. FAIL:  Which case has not occurred, as Your

20    Honor --

21          THE COURT:  No.

22          MR. FAIL:  -- has pointed out.

23          THE COURT:  Mr. Wu, when did you acquire these

24    securities?  When did you acquire your claim?

25          MR. WU:  It's on and off, but the current

Page 74

1    (indiscernible) are between 2013 and I would say 2019.  So,

2    that's (indiscernible) 2011.

3              THE COURT:  You've been what since 2011?

4              MR. WU:  You know, I bought a few and sold a few

5    since 2011.  But --

6              THE COURT:  Did you buy them after the bar date?

7              MR. FAIL:  Not these bonds, Your Honor.  I think

8    he's saying --

9              MR. WU:  Yes.

10             MR. FAIL:  -- he's bought other bonds.  The claims

11   -- Your Honor, I think what he's saying is the claims that

12   he's holding and the claims that he's asserting now he

13   bought between 2013 and some in 2019.  Separately and apart,

14   he bought and sold some securities in Lehman Brothers, but

15   that they're not relevant today since 2011, is what I heard.

16             MR. WU:  (indiscernible)

17             MR. FAIL:  Subsequent to the bar date, though,

18   Your Honor.

19             MR. WU:  Yes.  Those securities were bought after

20   the bar date.  The ones I (indiscernible) are from 2013 to

21   currently.

22             THE COURT:  I mean, that in and of itself

23   precludes you from raising any of these issues.  You can't

24   come into a case after a bar date has passed when the seller

25   -- whoever sold you your claim or your security has been

Page 75

1    subject to a bar date and did or did not act.  Then you

2    don't get to come in, as was done in the case in the motion

3    that you copied from, and say, well, there was no way I

4    could have filed a claim at the time because the partnership

5    was dissolved, et cetera, et cetera.

6            There was a claim.  It was subject to a bar date.

7    It filed or it didn't file.  It was in fact here covered by

8    a proof of claim that was filed on behalf of the beneficial

9    holders.  You then bought the security.  You bought it warts

10   and all.  You don't get to resurrect a bar date or get

11   greater rights than the person who was subject to the bar

12   date.  So, you bought that security as you found it.

13           Even if that were not the case, it's six years

14   later.  You are obviously inspired by this motion, which is

15   a completely different circumstance.  And your reading of

16   the prospectus is incorrect in terms of your interpretation

17   of how the subordination and the ranking, if you will, of

18   the guarantee.

19           MR. WU:  Your Honor, may I?

20           THE COURT:  Go ahead.

21           MR. WU:  You know, within the guarantee, you know,

22   it was written -- within the prospectus, it was written so

23   that if the Trustee does not bring the enforcement.  In

24   fact, even the original holders can't bring enforcement of

25   the guarantee.

1           THE COURT:  Mr. Wu --

2           MR. WU:  Which is what we --

3           THE COURT:  Lehman's a big bankruptcy.  There was

4    a process.  There were trillions of dollars of claims.  It

5    was managed for the first five years by Judge Peck.  It's

6    been managed by me since he retired.  There were bar debts.

7    There were deadlines.

8           The concept that somebody who's trading in these

9    claims can come in in 2019 and get authority to file a new

10   claim, after having voluntarily traded into the position, is

11   a non-starter.  Even if we get beyond that, there was a bar

12   order.  There was a proof of claim that was filed that

13   covers the proof of claim that you would file if I were to

14   give you permission, which I'm not going to.

15          That proof of claim does not entitle anyone to

16   recover any cash money from Lehman.  And that's because the

17   securities are subordinated below general unsecured claims,

18   which as of now, the recoveries are about 40 cents on the

19   dollar.

20          So, for four or five different reasons, you are

21   not entitled to any relief, and you are not entitled to any

22   recovery from the Lehman estate.  And the same is true with

23   respect to all of the persons who filed identically for the

24   joinders.

25          So, I'm going to ask -- it appears on my control

Page 77

1    panel that someone wants to be heard.

2              MR. GREGORY:  Your Honor, this is Ricky Gregory

3    speaking.  I've been working very closely with Mr. Wu on his

4    motion.  And basically, due to the fact that the ECAPS

5    general partner was taken off the register of companies in

6    London, did not have a voice from June 2010 --

7              THE COURT:  Mr. Gregory, ECAPS --

8              MR. GREGORY:  (indiscernible) go ahead.

9              THE COURT:  Mr. Gregory --

10             MR. GREGORY:  Yes.

11             THE COURT:  ECAPS has nothing to do with this.

12             MR. GREGORY:  Let me make the link (indiscernible)

13   for you.

14             THE COURT:  ECAPS has --

15             MR. GREGORY:  Can I make the link?  Can I make my

16   statement for you very quickly? Basically, LBH PLC has their

17   subordinate notes for Partnerships 1, 2 and 3 guaranteed by

18   the Board of Directors' June 9, 2005 global guarantee.

19             A clause in the prospectus for (indiscernible)

20   states that we are parity with any guarantee for any

21   affiliate --

22             THE COURT:  Okay.  Mr. Gregory --

23             MR. GREGORY:  Go ahead.

24             THE COURT:  Mr. Gregory --

25             MR. GREGORY:  I'm listening.

1          THE COURT:  Do you have a motion on file?

2          MR. GREGORY:  I filed a joinder with Mr. Wu.  And

3     I also stated that I would support what he had in his

4     joinder.

5          THE COURT:  Okay.  Are you in --

6          MR. GREGORY:  In addition to what I filed in my

7     joinder.

8          THE COURT:  Excuse me, Mr. Gregory.  I'm getting

9     close to cutting you off the line.  You're not an attorney.

10    You don't have a motion on file.  This is not friends and

11    family.

12         MR. GREGORY:  I joined Rex, a motion with a

13    joinder.

14         THE COURT:  Finish your statement, Mr. Gregory.

15         MR. GREGORY:  LBH PLC subordinate notes for

16    Partnerships 1, 2 and 3 were guaranteed by the global

17    agreement that was created by the Board of Directors on June

18    9, 2005.  If you look at the Capital Trust prospectus, it

19    states that the holding companies, which is LBHI's Capital

20    Trust securities, or parity with any guarantee issues for

21    any affiliate, it's a fact that the Capital Trust of the

22    (indiscernible) securities.  It's a fact that the enhanced

23    Capital Preferred Securities issued by Partnerships 1

24    through 5 are preferred securities.  It's a fact that the

25    general partner is an affiliate of LBHI.

Page 79

1            So, in reading the language of the prospectus,

2       basically the Capital Trust inherits the same guarantee,

3       that global guarantee, that the ECAPS has.  And that creates

4       a current liability.

5            Now, I didn't become aware of this until Docket

6       58763 was filed on August 27, 2018.  It was a letter from

7       Mr. Fail that has a copy of the claims for Partnerships 1,

8       2, 3, 4 and 5, the ECAPS.  And it also talks about how the

9       Lehman Brothers Special Financing guaranteed swap claims for

10      the (indiscernible) agreement for Partnerships 3, 4 and 5

11      are also guaranteed by the global agreement, even though the

12      Capital Trusts do not have a claim with Lehman Brothers

13      Special Financing, we still have a parity with the guarantee

14      for Lehman Brothers Special Financing.

15           I also have a Docket 46304 that was filed on

16      September 13th, 2014, where I mention this when they were

17      going to make a -- when they were going to pay out the

18      disputed claims, the Lehman Brothers Commercial Corporation

19      and Lehman Brothers Special Financing.  But I was basing it

20      in 2014 upon the J.P. Morgan guarantee for their September

21      agreement.

22           I was not aware back in 2014 that the ECAPS had

23      their subordinate notes for Partnerships 1, 2 and 3

24      guaranteed by the global agreement.  If you look at the

25      prospectus for the Capital Trust, if we're not paid anything

Page 80

1    by LBHI, basically LBHI, according to the prospectus, will

2    divide up the subordinate debenture into 25-dollar units and

3    issue them to the holders of the Capital Trust.

4            When you look at the finance -- FINRA --

5    (indiscernible) Financial Industry Regulatory Authority and

6    the SEC, any holder who purchased these securities, since

7    they're still trading, is the holder as if they bought them

8    from day one.  Otherwise, it's fraud for these securities to

9    be trading if we're not the legitimate holders.

10           If a payment is ever made out, it's going to be

11   paid out through the Bank of New York Mellon.  The Bank of

12   New York Mellon is going to pay the holders of record, which

13   is us.  The Bank of New York Mellon is the Trustee for the

14   ECAPS, and it's the Trustee for the Capital Trust securities

15   as well.

16           THE COURT:  Mr. Fail?

17           MR. FAIL:  Thank you, Your Honor.  There was a lot

18   in that that, if you'd like, I can try to respond to.  At

19   the beginning of the colloquy attempted to -- it was a

20   discussion about what have been referred to as ECAPS, as

21   Your Honor has identified, separate trusts, perhaps some

22   similarities.

23           Your Honor will recall, and for Mr. Gregory's

24   benefit, the ECAPS -- certain ECAPS held subordinated debt,

25   not issued like the (indiscernible) ones here by LBHI, but

Page 81

1    issued by Lehman Brothers Holdings, PLC, an entity in

2    Europe.  It held (indiscernible) from PLC.  It came with a

3    guarantee, a subordinated guarantee, from LBH PLC.  Similar

4    regulatory purposes to be treated subordinate.

5              Mr. Gregory also referred to, I believe, a 2005

6    written consent by the Board of Directors of LBHI that have

7    been referred to from time to time as the corporate

8    resolution.  We've discussed that in numerous pleadings,

9    Your Honor, and I believe Your Honor referred to it in her

10   recent decision with SRM.

11             That guarantee has been argued that it guaranteed

12   the obligations, certain obligations, from PLC.  Mr.

13   Gregory, and perhaps Mr. Wu, are trying to now say somehow

14   that this written consent gives a non-subordinated guarantee

15   because HI allegedly guaranteed PLC, which guaranteed

16   something else.

17             That argument fails by Mr. Gregory's admission

18   that he found out about the unanimous written consent on

19   August 2018, eight years after the bankruptcy and seven

20   years after the bar date.

21             THE COURT:  So, what you're referring to is the

22   law that's clear and that I set forth in the recent SRM

23   decision, which I wouldn't charge Mr. Gregory or Mr. Wu with

24   being aware of.  But the law is that when there is a general

25   guarantee, as opposed to a specific guarantee, and corporate

1    resolution is a general guarantee, it's necessary to show

2    that one acted in reliance -- with knowledge of and in

3    reliance on the general guarantee.  So, by definition,

4    that's not the case here.

5             THE COURT:  It's impossible for Mr. Wu, who didn't

6    purchase it pre-petition.  It was known to be impossible by

7    Mr. Gregory's admission.  And certainly, the prospectus

8    which -- we've covered this in prior objections, perhaps

9    before Your Honor's taking over the case, or perhaps after -

10   - the prospectus and documents make it very clear that the

11   only guarantee issued was the limited one, the only

12   guaranteed issued here that's relevant.  It's the very

13   limited, very subordinated guarantee of LBHI.

14            So, I think I was able to explain and put together

15   -- there were other discussions of Mr. Gregory's prior

16   filings.  He referred to two different things, I think,

17   including a long time ago when we made a -- we did an

18   advance -- to advance money for distributions, I think we

19   did a substitution, Your Honor, with reserves that were held

20   for the J.P. Morgan litigation.  I mean, Mr. Gregory filed a

21   statement then that was irrelevant, and I don't think it's

22   relevant here.

23            So, I'm happy to answer any further questions or

24   respond.  But nothing in the joinders, nothing in the

25   motion, nothing articulated today by the movant or joinder

1    change the Debtors' position -- the Plan Administrator's

2    position, Your Honor.

3              THE COURT:  All right.  Thank you.  All right,

4    there were a number of other documents that were filed by

5    Julie (indiscernible), Dan (indiscernible), (indiscernible)

6    Ms. Elizabeth Harrison.  There were also a couple of

7    objections that were filed to the timing of the early

8    distribution.

9              MR. FAIL:  Would you like me to address those --

10             THE COURT:  Well, let me take a shot first.  Mr.

11   Wu, you filed at 59772 an objection to the timing of the

12   early distribution.  I don't know what you're talking about.

13   There's not an early distribution.

14             MR. FAIL:  Well, Your Honor, maybe just -- it has

15   not been presented yet.  If Your Honor -- can I...?

16             THE COURT:  Sure.

17             MR. FAIL:  Thank you very much.  So, on June 7th,

18   so earlier this month, at Docket 59756, it is not related to

19   the motion before Your Honor today --

20             THE COURT:  Right.

21             MR. FAIL:  -- so we don't expect that you would be

22   aware.

23             THE COURT:  Yeah.

24             MR. FAIL:  We filed a motion seeking permission to

25   do a supplemental distribution.

Page 84

1            THE COURT:  Yes.

2            MR. FAIL:  Okay.

3            THE COURT:  Yeah.

4            MR. FAIL:  And so, what it requested was to set a

5     record date of, I believe --

6            THE COURT:  Uh huh.

7            MR. FAIL:  -- okay -- the 17th.  And so, what

8     these parties are objecting to is the fact that they did not

9     have an allowed claim.  So, if Your Honor were to grant

10    their motion, then they would be allowed to have a claim,

11    but it wouldn't receive a distribution.

12            The Plan Administrator's position, if Your Honor

13    would address it while the parties are on the phone for

14    judicial ease, is to the extent that Your Honor denies the

15    motion, we request that Your Honor overrule these objections

16    such that we could present, subject to any other new novel

17    arguments made -- that we would be able to present without

18    an additional hearing on the subsequent motion.

19            The sole basis for the objection to LBHI and other

20    Debtors making a distribution is that these parties on the

21    telephone today wouldn't be included if Your Honor granted

22    them permission to have claims.  And again, I'm happy to

23    answer any further questions.

24            THE COURT:  Yeah, there was just -- there was some

25    sense -- and there's been such a flurry of documents filed,

Page 85

1    all that basically say the same thing.  I can't' put my

2    finger on it now, but there was some suggestion in one of

3    the documents that this was part of some grand scheme, that

4    the record date was set in connection with the hearing dated

5    this motion, and that it was designed to cut off the rights

6    of these persons.  That's a pure fabrication.

7                    MR. FAIL:  We think so, Your Honor.

8                    THE COURT:  So, you know, again, there's a --

9    something that emerges from these pleadings that I find very

10   troubling, which is to say that folks seem to be reinforcing

11   each other's views of this situation in ways that are just

12   not tethered to the facts and the operative plan documents.

13                    Mr. Wu, do you have anything else you want to add?

14   We have to wrap this up.

15                    MR. WU:  I do not, Your Honor.

16                    THE COURT:  I'm sorry.  Who was just speaking?

17                    MR. WU:  I do not, Your Honor.

18                    THE COURT:  Okay.  That was you, Mr. Wu?

19                    MR. WU:  (indiscernible)

20                    MR. GREGORY:  Your Honor?

21                    THE COURT:  Okay.  Is there anyone else on the

22   phone who'd like to be heard?

23                    MR. GREGORY:  Yes.  I would like to be heard, Your

24   Honor.

25                    THE COURT:  Okay.  Go ahead, Mr. Gregory.  The SEC

Page 86

1   has ruled whereby if you purchase these securities, you own

2   them as though you own them from day one, and you have

3   standing.  Well, it should be considered fraud for these

4   securities to still trade if the prospectus cannot be

5   honored --

6          THE COURT:  Well, Mr. Gregory --

7          MR. GREGORY:  -- according to the parity rules --

8          THE COURT:  I'm not going to --

9          MR. GREGORY:  Go ahead.

10          THE COURT:  Mr. Gregory, I'm going to engage you

11   in a detailed discussion of what the SEC has or has not

12   said.  I will tell you that as far as I'm aware people trade

13   in all sorts of securities that range from worthless to

14   entirely worthless to worth a few pennies to let's see who

15   you sell it to for another penny.

16          This is a bankruptcy case that was conducted

17   pursuant to the rules of this Court, Federal Rules of Civil

18   Procedure as adopted and incorporated into the bankruptcy

19   rules according to the Bankruptcy Code under the glare and

20   spotlight for years and years and years.

21          It resulted in a plan of reorganization.  The plan

22   of reorganization contemplated a bar date and an orderly

23   process for the consideration of claims.  That's what has

24   occurred here.

25          In fact, this case is coming to its conclusion.

Page 87

1    The law and the orders of this Court need to be upheld and

2    given their plain and clear meaning.  It's not an endless

3    round of people diving into these very complicated documents

4    and coming up with new and novel theories.  If you bought a

5    security based on your belief and understanding of what the

6    security entitled you to, that's your business.

7              Lehman Brothers is not in the business now and has

8    not in the business since September of 2008, of minting

9    securities.  Mr. Fail, am I wrong?

10             MR. FAIL:  No, Your Honor.

11             THE COURT:  Okay.  Claims trade, securities trade

12   -- it's not within this Court's control and, frankly, it's

13   not within the Lehman Brother's plan administrator's

14   control.

15             Once again I will say, and this constitutes a

16   ruling, that the plan administrator -- and I don't often say

17   this, and Mr. Fail, you've been around a lot, the plan

18   administrator prevails sometimes, sometimes the plan

19   administrator spectacularly doesn't prevail.  As I

20   understand it there's an argument in the Second Circuit next

21   week in a billion dollar matter in which this Court ruled

22   against the plan administrator.

23             So, for the benefit of the folks on the phone I

24   want to make it perfectly clear.  Plan administrator

25   prevails sometimes and the plan administrator doesn't

Page 88

1    prevail sometimes.  There is no Lehman.  There is only a

2    plan administrator collecting assets and liquidating claims

3    and sending out distributions for the benefit of creditors.

4            This exercise has cost creditors money.  If these

5    pleadings had been filed by lawyers there would be a

6    reasonable basis for me to entertain a motion for sanctions.

7    Under Rule 9011 of the Federal Bankruptcy Rules, it's

8    important, it's obligated that you make diligent inquiry

9    into the facts of the law governing any pleading you file in

10   the Court.

11           Mr. Fail has repeated today many of the arguments

12   that were laid out in the plan administrator's brief.  I'll

13   repeat them again for your benefit.

14           This is not like the situation in the pleading

15   from which Mr. Wu, you copied your objection.  In this case

16   in fact, the indenture trustee for these securities filed a

17   proof of claim.  The beneficial interests and the individual

18   holders of the securities were represented by $1 billion in

19   allowed claims against the estate.  So, that's one reason

20   why Mr. Wu, you cannot prevail.

21           Secondly, as has been made clear, you acquired

22   these positions after the bar date, so that places you in a

23   whole separate category.

24           Under the test for filing a new proof of claim,

25   I've heard nothing today that would provide a basis for me

1    to give you leave to file a new claim.  There are no new

2    facts.  The simple statement that there would not be

3    prejudice has been undermined by, among other things, the

4    many joinders that have been filed to your motion indicating

5    that there are folks out there who should -- the relief

6    requested -- I grant -- your request would be granted by the

7    Court would start filing claims and the notional amount of

8    these securities is very large.  Who knows how many claims

9    there would be.

10           But perhaps most importantly, your reading of the

11   prospectuses is flawed.  Your reading of the prospectuses is

12   flawed.  Under any scenario any claim that you have would be

13   subordinated to general unsecured claims and is not entitled

14   to a distribution under the plan.

15           So, for those reasons, and as more fully explained

16   in the objection filed by the plan administrator, and I

17   don't often say this because I don't often agree with

18   everything the plan administrator says, I agree with all of

19   the points made in the plan administrator's objection.

20           So, for all the reasons I'm going to deny Mr. Wu's

21   motion and to the extent that the joinders believe or are

22   taking the position that their joinders constitute separate

23   motions, those joinders/motions are also denied.

24           The objection with respect to the timing of the

25   so-called record date in early distribution, that's been

1    raised by Mr. Wu and by one or more of the joining parties,

2    that too is denied.

3            So, Mr. Fail, I'm going to ask that you prepare an

4    order.  As a courtesy if you would circulate it to Mr. Wu

5    and to the other joining parties and then send it to

6    chambers.  We'll enter the order.  The order should reflect

7    my ruling and indicate that for the reasons more fully

8    described on the record of the hearing.

9            Mr. Wu, for your benefit and the benefit of the

10   other parties who are appearing here without lawyers, once

11   that order is entered that order can form the basis of the

12   exercise of any appellate rights that you wish to exercise.

13           Transcript of these proceedings can be obtained

14   should you wish to get a copy.  Do you have any questions,

15   Mr. Wu?  Okay.  All right, I think that's all we have.  Mr.

16   Fail, is there anything else I need to think about today?

17           MR. FAIL:  No, Your Honor.  Thank you, again, and

18   thank your chambers for the time and attention that you've

19   given to the matter.

20           THE COURT:  Okay.  All right, thank you folks.

21   Enjoy the rest of your day.

22

23           (Whereupon these proceedings were concluded at

24   12:09 PM)

25

Page 91

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  June 21, 2019

| & | | |
|---|---|---|
| **&**   7:10 58:12 | | |

| 0 | | |
|---|---|---|
| **08-13555**   1:3 6:5 | | |

| 1 | | |
|---|---|---|
| **1**   22:20 36:3 77:17 78:16,23 79:7,23 88:18 | | |

**10**   7:20 44:15 46:1 54:11
**10004**   4:12
**10016**   7:21
**10022**   7:6
**10110**   7:13
**10:11**   4:15
**11**   6:7
**11501**   91:23
**11th**   58:1
**12**   36:3
**12:09**   90:24
**12th**   29:4 37:18 51:11 53:15
**13th**   9:10 17:22 43:5,6,11 58:1 79:16
**15th**   29:4
**16-01019**   1:9 5:1
**17th**   84:7
**18-01754**   5:5
**18-01825**   2:1 5:9
**18-01839**   2:9 5:13
**18-01842**   3:1 5:17
**19**   4:14
**19-01018**   3:13 5:21
**19-01020**   4:1 6:1
**190**   41:7
**1st**   1:14 5:2

| 2 | | |
|---|---|---|
| **2**   17:15,18,23 18:3 70:5,7 77:17 78:16 79:8,23 | | |

**20**   11:24 41:6 48:11
**2005**   77:18 78:18 81:5
**2008**   87:8
**2009**   24:3
**2010**   77:6
**2011**   74:2,3,5,15
**2013**   74:1,13,20
**2014**   79:16,20,22
**2018**   79:6 81:19
**2019**   4:14 74:1,13 76:9 91:25
**21**   91:25
**22**   29:25 48:11
**25**   80:2
**25th**   45:20
**26th**   45:21
**27**   79:6
**27.6**   12:1
**29th**   45:23,25 60:2,6

| 3 | | |
|---|---|---|
| **3**   71:21 72:6 77:17 78:16 79:8,10,23 | | |

**30**   11:24 27:25 41:6
**300**   91:22
**30th**   60:6
**330**   91:21

| 4 | | |
|---|---|---|
| **4**   17:20 72:6,6 79:8,10 | | |

**40**   76:18
**40th**   7:20
**42**   10:9
**45**   48:10
**45th**   56:11
**46304**   79:15
**4th**   29:10,15,19

| 5 | | |
|---|---|---|
| **5**   72:6,6 78:24 79:8,10 | | |

**50**   46:4
**500**   7:12
**51**   46:4
**53**   10:9
**55**   40:18
**58763**   79:6
**59409**   64:23
**59614**   6:6
**59751**   69:6
**59756**   83:18
**59772**   83:11
**599**   7:5
**5:00**   61:2
**5th**   29:10,15,19

| 6 | | |
|---|---|---|
| **6**   72:6,7 | | |

**6/6**   69:13
**6030**   7:6
**6:00**   61:2
**6th**   64:8 69:16

| 7 | | |
|---|---|---|
| **7th**   83:17 | | |

| 8 | | |
|---|---|---|
| **8**   68:11 | | |

| 9 | | |
|---|---|---|
| **9**   77:18 78:18 | | |

**90**   48:5
**9011**   88:7

| a | | |
|---|---|---|
| **aaron**   8:4 | | |

**abbreviate**   35:11
**ability**   12:9 35:17 35:18 48:17 50:25
**able**   34:16 50:6,22 52:22 65:15 82:14 84:17
**absolutely**   26:12 51:6,6

**acceptable**   45:12
**accomplish**   27:16
**accurate**   34:14 91:4
**achieve**   27:13
**acknowledge** 60:21
**acknowledges** 62:15
**acquire**   73:23,24
**acquired**   65:25,25 88:21
**act**   50:12 75:1
**acted**   82:2
**acting**   47:10
**actions**   53:5
**active**   24:10
**actual**   58:22 62:24
**acute**   70:15
**add**   64:13 85:13
**addition**   73:12 78:6
**additional**   17:17 45:11 46:12 52:3 60:13,15,16 84:18
**additionally** 73:10
**address**   14:13 25:13 53:11 65:24 83:9 84:13
**adequately**   10:20
**adjourn**   60:14 61:11 62:5
**adjourned**   60:22
**adler**   7:3,8 27:1,2 27:6 30:5,6,8,11 30:14,16,19,25 31:2,5,21,25 32:2 32:4,8,16,20 33:1 33:7,9,12,17,21 33:24 34:2,8,11 34:13,17 35:1,3,7

35:10,16,20,23,25
36:3,9,11,15,17
36:19,21,23,25
37:3,4,13,16,20
37:22,25 38:5,7
38:16,19,22 39:19
39:21 40:12,15,21
40:24 41:4,6,11
41:13,15,19,23
42:6,12,18 43:8
43:10,17,21,23
44:1,4,9,17,25
45:4,7,12 46:2,3
46:11,14,22,25
47:2,4,6,12,18,25
48:9,22,24 51:20
51:23 52:7 53:2,9
53:11 54:5,13,15
54:20,22,25 55:3
55:8,10,12,15,17
55:19,21,23 56:1
56:3
**adler's** 27:4 39:7
**administration**
14:13
**administrator**
9:11,17 13:20
22:15 50:3,20
55:7 58:19,21
60:20 63:15 64:5
67:14 72:5 87:16
87:18,19,22,24,25
88:2 89:16,18
**administrator's**
50:5 60:1 62:7
65:17 83:1 84:12
87:13 88:12 89:19
**admission** 81:17
82:7
**adopted** 86:18
**adv** 1:9,17 2:1,9
3:1,13 4:1

**advance** 58:23
82:18,18
**advantage** 1:14
5:2
**adversary** 5:1,5,9
5:13,17,21 6:1
19:20 20:21
**advisement** 63:8
**affect** 52:18
**affidavit** 58:7,8
58:10
**affidavits** 27:25
**affiliate** 71:11
77:21 78:21,25
**affiliated** 6:8
23:24
**affiliates** 71:14
**afforded** 51:2
57:6
**ago** 54:7 82:17
**agree** 12:6 25:25
35:6 39:9,10,10
42:16 45:2 53:3
89:17,18
**agreed** 21:20 24:5
**agreement** 13:15
13:16 14:17 20:4
20:5,11,15 21:7
21:12,19 26:18
78:17 79:10,11,21
79:24
**agreements** 14:15
14:17
**ahead** 58:6 66:20
75:20 77:8,23
85:25 86:9
**al** 1:14 2:14 3:18
5:3,14,22
**albene** 7:23 23:11
**allegation** 10:22
**allegations** 10:10
23:15 32:22 34:18

**alleged** 9:12,23
10:24
**allegedly** 81:15
**alleging** 21:11
72:3
**allow** 57:4
**allowed** 66:6
72:16 73:8 84:9
84:10 88:19
**amend** 26:6
**amended** 6:7
17:14
**american** 42:23
**amjad** 8:11 15:9
**amount** 89:7
**analysis** 14:22
34:2
**analyzed** 36:3
**answer** 42:8,14
82:23 84:23
**answering** 44:19
48:4,7
**anybody's** 50:19
**anyway** 53:1
**apart** 74:13
**apologies** 69:19
**apologize** 11:15
49:4 59:13
**apparently** 61:12
62:9 65:12 67:10
71:14
**appeal** 16:18 51:4
63:23
**appear** 10:21
57:11 58:8 63:10
**appearing** 62:3
90:10
**appears** 57:7,17
67:4 76:25
**appellate** 90:12
**applicable** 12:21
**application** 20:3
48:1 65:11

**applies** 16:23 21:1
21:15,16
**apply** 13:1,5 24:7
65:15
**appreciate** 57:12
**approach** 69:14
**appropriate**
39:23
**april** 43:5,6,10,16
44:9,18,23
**argue** 14:6
**argued** 17:18
81:11
**argument** 10:19
14:21 21:24 31:6
36:8,10,13,22,23
37:9 40:1,2,3
51:20,23 52:10,13
52:15,16,17 57:4
63:5,16 64:6 67:5
72:17,19 81:17
87:20
**arguments** 9:21
35:10,11 51:15
53:4,15 57:10
60:18 63:14 65:15
67:3 84:17 88:11
**arising** 13:25
20:19 33:18
**arrange** 63:2
**arrive** 26:15
**articulated** 82:25
**asadourian** 8:13
**asked** 60:13
**asking** 40:22,25
41:2,8,16 45:17
**asks** 9:10
**assert** 58:3
**asserted** 31:14
33:19
**asserting** 74:12
**assertion** 66:25

**assets** 23:19 24:2
  36:7 88:2
**assigned** 21:16
  31:17 33:1 34:21
**assignment** 32:9
  35:13
**assignments** 33:4
**attempted** 80:19
**attention** 90:18
**attorney** 78:9
**attorneys** 7:4,11
  7:19
**attribute** 68:20
**august** 28:10,15
  28:24 29:3,4,5,6
  29:25 37:22 41:19
  41:22 79:6 81:19
**aurora** 20:2,4
  21:10
**authority** 76:9
  80:5
**automatic** 39:25
**avail** 50:17
**available** 27:14
  28:24,25 29:12
  35:13
**avenue** 7:5,12
  56:11
**averse** 46:14
**avoid** 46:15 47:8
**aware** 15:19,22
  15:23 49:7 58:18
  58:22 72:16 79:5
  79:22 81:24 83:22
  86:12

**b**

**b** 4:21 36:3 45:1
**ba** 5:7
**back** 14:25 17:4
  20:10 54:6 57:23
  79:22
**backs** 28:13

**backward** 28:5
**bad** 73:11
**bake** 50:24
**bancorp** 3:7,9
  15:9 19:3
**bank** 1:22 5:6
  7:19 20:2 23:6,17
  23:18 24:2,17
  31:16 33:2 34:20
  34:21 80:11,11,13
**bankruptcy** 1:1
  4:10,23 19:21
  31:10,10 36:5
  66:15 76:3 81:19
  86:16,18,19 88:7
**banks** 1:22 23:7
  23:18
**bar** 65:2 66:1 74:6
  74:17,20,24 75:1
  75:6,10,11 76:6
  76:11 81:20 86:22
  88:22
**barred** 16:12
**based** 9:21 12:6
  14:8,21 20:12
  30:19,23 39:6
  87:5
**bases** 38:11
**basically** 14:7
  40:22 77:4,16
  79:2 80:1 85:1
**basing** 79:19
**basis** 9:18 12:20
  14:20 38:10 43:18
  66:21 84:19 88:6
  88:25 90:11
**bearing** 58:1
**beginning** 50:18
  80:19
**behalf** 9:7 12:14
  12:17 19:9 23:12
  40:13 64:24 75:8

**belied** 67:3
**belief** 9:19 87:5
**believe** 10:23 11:6
  11:23 13:23 14:1
  15:24 16:11 31:12
  32:20 37:9 50:13
  51:11 53:24 66:21
  67:21 81:5,9 84:5
  89:21
**believes** 72:6
**belong** 24:17
**beneficial** 11:7
  75:8 88:17
**beneficially** 65:22
**benefit** 19:25 20:9
  51:3 64:21 80:24
  87:23 88:3,13
  90:9,9
**best** 29:4
**better** 68:21
**beyond** 38:17
  47:7 76:11
**big** 76:3
**billion** 87:21
  88:18
**binding** 14:18
**bit** 69:23
**blanket** 66:24
**board** 77:18 78:17
  81:6
**boderone** 8:7
**bonds** 74:7,10
**borrow** 13:12
**bother** 42:9
**bought** 74:4,10,13
  74:14,19 75:9,9
  75:12 80:7 87:4
**bowling** 4:11
**boy** 73:11
**brant** 7:16
**breadth** 40:7
**breaking** 57:15

**brent** 37:17
**brief** 15:1 17:20
  18:3 22:2 23:22
  41:16 88:12
**briefed** 37:20
**briefing** 10:15
  15:3 18:14 22:10
  26:15,20 27:10,23
**briefs** 27:25
**bring** 9:10 75:23
  75:24
**brings** 19:4 23:6
**broad** 21:14,18
**broader** 14:3,9
**broadly** 14:5
**brother's** 87:13
**brothers** 1:6,11
  1:19 2:3,11 3:3,15
  4:3 5:2,6,10,14,18
  5:22 6:2,5,7 31:16
  33:2 34:20,21,22
  36:4,6 74:14 79:9
  79:12,14,18,19
  81:1 87:7
**bunch** 25:7 26:4
  67:10
**bunches** 27:25
**burden** 40:8
  46:15,15 47:4,9
  47:24 48:5 52:4
  72:11
**burdensome**
  46:24
**business** 24:15
  49:5 87:6,7,8
**buy** 74:6

**c**

**c** 4:22 7:1 9:1 91:1
  91:1
**calendar** 56:10,10
**call** 31:6 36:12
  60:25 61:3

**called**  61:10 62:4
  62:25 65:1 89:25
**calling**  69:25
**calls**  61:1 62:15
**camp**  29:7
**capital**  67:20
  68:12 72:3,6
  78:18,19,21,23
  79:2,12,25 80:3
  80:14
**carefully**  17:1
  22:4
**case**  1:3,9,17 2:1,9
  3:1,13 4:1 15:24
  15:25 16:9 24:17
  31:15 33:25 40:25
  57:8 58:7 73:19
  74:24 75:2,13
  82:4,9 86:16,25
  88:15
**caselaw**  10:21
  39:22
**cases**  10:21 19:17
  20:2 30:24 38:2,3
  50:13
**cash**  76:16
**catch**  69:1
**category**  27:4
  88:23
**cbc**  24:8
**central**  61:2
**cents**  76:18
**certain**  65:1 80:24
  81:12
**certainly**  9:20
  10:14 30:1 82:7
**certificate**  58:6
  62:23
**certified**  91:3
**cetera**  75:5,5
**chambers**  60:14
  62:25 63:1,2 90:6
  90:18

**chance**  13:19
  23:21,22 53:20
  55:6
**change**  22:3 83:1
**chapman**  4:22
**chapter**  6:7
**characterization**
  39:11
**characterize**  23:2
**characterizing**
  35:8
**charge**  81:23
**check**  59:25
**chicago**  57:7
**choice**  29:4 62:10
**chris**  9:6
**christopher**  8:10
**circuit**  17:2,7
  87:20
**circulate**  90:4
**circumstance**
  57:3 75:15
**circumstances**
  65:4
**cited**  65:7
**civil**  86:17
**claim**  21:4 65:1,3
  65:16,22 66:5,9
  66:24 67:3,15,16
  72:13,16,24,25
  73:7,7,8,8,24
  74:25 75:4,6,8
  76:10,12,13,15
  79:12 84:9,10
  88:17,24 89:1,12
**claims**  9:21 12:22
  13:9,12,25 14:8
  16:12 24:22 31:8
  31:9,14,16 32:7
  32:14,15 33:5,6
  33:15,19 34:9
  49:23 65:11 66:13
  66:17 72:2,3,22

74:10,11,12 76:4
  76:9,17 79:7,9,18
  84:22 86:23 87:11
  88:2,19 89:7,8,13
**clarification**
  17:13
**clarify**  10:18
**clause**  14:14,15
  77:19
**clear**  17:19 18:24
  32:23 51:7 57:2
  65:8 67:16 81:22
  82:10 87:2,24
  88:21
**clearly**  20:21 35:4
**client**  14:18 22:25
  38:13 46:4 49:18
**client's**  11:21
**clients**  17:20
  33:20 35:20 40:16
  40:17 44:5 46:5
  46:17 54:10
**clock**  47:20
**close**  31:7 34:3
  68:3 78:9
**closely**  77:3
**cmo**  17:14 40:20
  40:23 41:3,9,10
  41:14 42:15 43:2
  45:10 47:10 48:14
  48:14,16 50:25
  51:5 53:22
**code**  66:15 86:19
**colleague**  58:13
**collected**  47:21
**collecting**  88:2
**colloquy**  80:19
**colorado**  1:23
  21:10 23:7,18
  24:9,12
**come**  15:3 26:19
  27:5 35:3,20
  56:13 57:23 68:1

74:24 75:2 76:9
**comes**  14:1 66:10
**comfortable**
  44:25
**coming**  86:25
  87:4
**comment**  54:7
**commercial**  79:18
**commitments**
  29:6,13
**committed**  58:5
**common**  24:6
  71:22,24
**community**  1:22
  5:7 23:7,18,18
**companies**  77:5
  78:19
**companion**  11:1
**company**  3:8,10
  24:13,25
**complain**  63:25
**complaint**  10:8,10
  10:25 17:17 32:23
  32:24 34:19
**complete**  44:18
  71:21
**completely**  75:15
**completion**  42:21
  43:4
**compliance**  53:18
**complicated**  29:9
  87:3
**component**  10:20
  10:22
**concept**  66:22
  76:8
**concluded**  32:17
  34:3 90:23
**conclusion**  15:2
  86:25
**conduct**  54:17
**conducted**  86:16

confer 55:6
conference 5:3,7
  5:11,15,19,23 6:3
confirm 48:11
confirmed 31:18
connection 32:9
  85:4
connectivity 67:7
consensual 55:13
consent 81:6,14
  81:18
consider 13:19
  39:24 40:6
consideration
  61:25 86:23
considered 86:3
considering 70:3
consistent 71:4
conspicuously
  34:19
conspiracy 62:21
constitute 89:22
constitutes 87:15
contact 60:14
contacted 63:2
contained 12:21
contains 21:14
contemplated
  86:22
contexts 14:6
contingent 31:9
  32:6,15 34:8
continuation 9:22
  10:2 11:2,8 24:7
  24:11,12,13,15
continue 26:8
  45:15 46:17 50:16
continued 59:25
continues 17:1
  24:8
continuing 40:25
contrary 44:1

control 76:25
  87:12,14
conventional
  35:25
conversation 50:2
conversations
  50:7
convincing 16:11
coordinated
  18:15
copied 75:3 88:15
copy 69:10 79:7
  90:14
copying 57:17,19
  57:23 67:8
corp 3:7,9
corporate 81:7,25
corporation 36:7
  79:18
correct 12:1 13:10
  13:14 19:14 22:12
  27:3 33:12,17,21
  36:17,25 38:5
  41:24 58:14 61:13
  64:9,10 65:16
cost 50:19 53:12
  70:15 88:4
costly 49:13,13
counsel 11:3
  40:17 53:7 54:25
  62:2,15
counsel's 53:11
countless 50:2
country 91:21
couple 46:25 49:3
  62:17 83:6
course 54:20
  65:10
court 1:1 4:10 9:2
  9:5,8,16,22,25
  10:2,4,12,17 11:4
  11:5,10,14,17,20
  12:3,5,19 13:6,11

13:17 14:19 15:6
15:11,14,19,21
16:2,6,8,10,18,22
16:25 18:4,7,10
18:12,20,22,24
19:7,11,15,22
20:23 21:3,23
22:21 23:2,5,9,13
23:25 24:4,18
25:4,10,14,17,20
26:10,13,23 27:4
27:7,17,20 28:3,8
28:10,13,19,22
29:3,20,23 30:2,7
30:10,13,15,18,21
31:1,3,20,22 32:1
32:3,5,11,18,25
33:3,8,11,14,18
33:22 34:1,7,10
34:12,15,24 35:2
35:5,8,15,19,22
35:24 36:2,8,10
36:12,16,18,20,22
36:24 37:1,4,7,10
37:15,19,21,23
38:1,6,11,15,17
38:20,23 39:2,5
39:19,24,25 40:10
40:14,19,22 41:2
41:5,8,13,18,21
42:5,8,14,20,24
43:6,8,14,20,22
43:24 44:2,8,10
44:21 45:2,3,6,8
45:17,22,24 46:1
46:7,13,16,23
47:3,6,13,22 48:7
48:12,14,23,25
49:2,7,10,12,14
49:20,25 50:11
51:10,13,16,19
52:5,7,9,12,15,19
52:21 53:9,22

54:9,14,16,22
55:2,5,9,11,14,16
55:18,20,22,25
56:2,4,6,8,15,18
56:20,22 57:1,14
58:1,25 59:2,4,6,8
59:11,15,22 60:5
60:7,19 61:6,10
61:14,23 62:1
63:13,20,23 64:3
64:11,16,20 66:20
67:23,25 68:9,16
69:1,4,8,11,15,18
69:20,22 70:7,10
70:14,17,20,23
71:3,6,9,12,23
72:1,4,9,21,24
73:3,5,13,16,18
73:21,23 74:3,6
74:22 75:20 76:1
76:3 77:7,9,11,14
77:22,24 78:1,5,8
78:14 80:16 81:21
82:5 83:3,10,16
83:20,23 84:1,3,6
84:24 85:8,16,18
85:21,25 86:6,8
86:10,17 87:1,11
87:21 88:10 89:7
90:20
court's 87:12
courtesy 57:6
  90:4
courtroom 27:22
courts 10:3 53:6
cover 13:24 21:5
covered 18:16
  75:7 82:8
covers 14:23
  18:21 26:25 65:22
  76:13
created 78:17

creates 79:3
creditors 49:9,15
70:22 88:3,4
critical 17:12
criticism 32:1
criticized 47:15
crossfire 4:6 6:2
19:4,9 20:2,4
21:10,21
crossfire's 20:17
cull 43:11
current 73:25
79:4
currently 74:21
cut 65:9 85:5
cutting 50:18 78:9

**d**

d 9:1
dan 83:5
date 28:4,5,23,23
29:12 42:9,15
43:2 45:18 46:18
48:7 51:12 58:1
59:24 60:3,4,15
60:22 63:3 65:2
66:1 74:6,17,20
74:24 75:1,6,10
75:12 81:20 84:5
85:4 86:22 88:22
89:25 91:25
dated 9:9 85:4
dates 41:14
day 27:19 29:11
80:8 86:2 90:21
days 46:1 48:10
de 9:24 10:6,19,22
10:24 24:7,9
deadline 41:22
44:14
deadlines 40:20
53:23 54:2,6,8
76:7

deal 26:2 45:16
debenture 80:2
debt 80:24
debtor 1:7 7:11
34:20 58:5,19
71:7
debtors 6:8 83:1
84:20
debts 76:6
decade 13:4
december 44:23
decide 41:14 54:3
decision 17:2
30:20,23 32:13
41:11,17 81:10,23
decisions 19:16
declining 16:18
deemed 45:9
53:18
deeply 66:6,6
defeats 25:20
defendant 1:24
2:7 4:7 17:16,18
52:25 53:15
defendants 1:15
2:15 3:11,19
12:18 24:23 28:16
29:18 31:15 40:12
40:13,18 41:6,7,7
41:9 45:4,8,15
49:22 50:2,16
definition 82:3
delaware 9:22
10:1,5 11:4
demand 58:2
61:20
demonstration
68:1
denied 89:23 90:2
denies 84:14
deny 89:20
denying 39:17

depositions 44:13
44:20
described 71:15
90:8
describes 70:13
description 9:18
39:7
descriptions 10:8
designed 85:5
detailed 86:11
detective 65:7
determine 11:8
20:3,11 22:10,15
determined 31:7
determining 44:6
deutsch 7:10
dialing 17:4
dictu 55:13
different 12:20,24
13:3,13,14 14:22
19:12 24:19 36:8
36:10 52:5 58:18
75:15 76:20 82:16
differently 71:16
diligence 24:24
25:1,15,16
diligent 88:8
diligently 46:20
diminish 46:15
directors 24:14
77:18 78:17 81:6
disagree 20:14
24:5 25:5,25 35:6
37:7
disconnect 17:1
discourage 50:24
discovered 23:17
69:24
discovery 10:16
25:11,15,21 37:24
39:12,18,22 40:7
40:20 41:22,23
42:3,17 43:3,4

44:11,18 45:16
48:16 50:14 51:18
51:21 52:1,6
53:18 54:4
discretionary
39:25
discuss 23:1 26:8
29:17 32:9
discussed 13:21
48:3 81:8
discussing 49:22
discussion 22:22
29:1 50:15 80:20
86:11
discussions 82:15
dismiss 9:10
10:14 27:10 30:17
30:19,24 35:12
37:16 39:1 45:11
48:21 51:9
dismissal 26:18
dismissing 14:8
disposition 45:10
63:22
dispositive 40:9
dispute 59:23,24
disputed 79:18
disrupt 41:8
dissented 65:2
dissolved 75:5
distribution 66:7
66:11,18,22 67:18
83:8,12,13,25
84:11,20 89:14,25
distributions 6:9
82:18 88:3
district 1:2 16:18
38:10,16
divested 36:5
divide 80:2
diving 87:3
doable 29:20

[doc - fact]                                                                                          Page 7

**doc** 6:6
**docket** 9:3 26:19
  57:15,19 59:20
  60:1 64:23 79:5
  79:15 83:18
**dockets** 59:21
**document** 31:13
  43:3,4,13 46:18
  48:15 58:1 59:25
  65:5,5,8 69:4,6,16
**documentation**
  23:23
**documents** 14:25
  24:22 35:13 42:2
  42:6 43:12 44:6
  44:19 45:11 46:2
  46:6,7,10,18,20
  46:23 47:10,16
  54:11,12 57:15,18
  57:18,20,23 82:10
  83:4 84:25 85:3
  85:12 87:3
**doing** 22:5 25:21
  29:24 43:8 46:12
  47:19
**dollar** 76:19 80:2
  87:21
**dollars** 76:4
**downstream**
  33:19
**due** 16:20 37:17
  48:9 50:19 51:2
  61:23 62:8 77:4
**duncan** 7:16
**duvall** 8:8

**e**

**e** 4:21,21 7:1,1 9:1
  9:1 17:18 18:3
  91:1
**earlier** 53:14
  83:18
**early** 36:13 83:7
  83:12,13 89:25

**ease** 84:14
**east** 7:20
**eastern** 61:2
**ecaps** 67:21 68:7
  71:18 77:4,7,11
  77:14 79:3,8,22
  80:14,20,24,24
**economic** 50:12
**ecro** 4:25
**effect** 14:9 41:13
  42:10 44:2,3,4,12
  44:16 53:22,23
**effective** 31:19
**effectively** 35:12
**efficiencies** 12:11
**efficiency** 27:13
**efficiently** 22:7
**eight** 81:19
**either** 14:22 31:15
  46:19 53:21 63:8
  65:9
**element** 10:19,25
**elements** 10:13,23
**elicits** 29:6
**elizabeth** 83:6
**emerge** 52:23
**emerges** 85:9
**encompass** 62:13
**encourage** 22:4
**endless** 87:2
**enforcement**
  75:23,24
**enforcing** 6:6
**engage** 23:16
  25:11 86:10
**engaged** 69:23
**english** 62:3
**enhanced** 78:22
**enjoy** 90:21
**enter** 90:6
**entered** 13:16
  14:9 23:19 90:11

**entertain** 64:6
  88:6
**entirely** 86:14
**entities** 20:6 64:24
  65:2,21 71:17
**entitle** 76:15
**entitled** 16:20,21
  53:24 66:18,21
  67:18 68:14 76:21
  76:21 87:6 89:13
**entity** 24:13 71:16
  81:1
**enza** 8:7
**equity** 21:17
  66:16,17
**equivalent** 73:11
**error** 60:21 62:20
  62:21
**essence** 72:25
**essentially** 64:25
  65:9
**establish** 10:22,24
  16:21 18:14 24:12
**estate** 32:6 33:15
  33:16,19 44:10
  49:5 76:22 88:19
**estimation** 13:4
**et** 1:14 2:14 3:18
  5:2,14,22 75:5,5
**europe** 81:2
**evaluate** 26:5
**evaluating** 53:16
**events** 13:25
**everybody** 43:11
  47:17 55:4 64:21
  64:22
**everyone's** 43:24
  47:14 59:15 70:2
**exact** 11:22,23
  60:3
**exactly** 36:19
  47:25 73:16,18

**example** 70:5
  71:18 72:2
**exceptions** 24:7
**exchange** 26:8,16
**exchanged** 41:24
  41:25
**excuse** 16:6,8,10
  78:8
**exempt** 65:2,21
**exercise** 88:4
  90:12,12
**exhibit** 17:19
  68:11
**exist** 14:17 24:8
**exists** 15:20
**expect** 57:10
  83:21
**expense** 47:5
**explain** 16:1
  52:14,17 82:14
**explained** 89:15
**explaining** 33:11
  38:23
**explicitly** 10:2
**extend** 20:12
**extension** 20:1
**extensive** 10:9
  15:20 27:24
**extensively** 48:14
**extent** 9:17 12:12
  14:7,16 16:10
  20:18 24:8 47:8,9
  50:2 51:22,23
  53:3 57:9 66:11
  84:14 89:21
**extremely** 65:5

**f**

**f** 3:7,9 4:21 91:1
**fabrication** 85:6
**face** 24:21,21
**fact** 32:15 54:23
  62:22 63:24 65:9
  65:21 67:3 75:7

75:24 77:4 78:21
78:22,24 84:8
86:25 88:16
**facto**  9:24 10:7,19
10:22,24 24:7,9
**factors**  40:6
**facts**  15:25 23:16
24:22 25:7,8
31:13 32:18,21,22
65:4 85:12 88:9
89:2
**factual**  10:7
**factually**  34:14
**fail**  34:19 56:14
56:15 58:9,11,12
59:1 60:9,12,20
61:10 62:4 64:11
64:15 68:16,20
69:1,3,6,9,13,17
69:19,21,25 70:4
70:5,8,11,15,18
70:21,24 71:4,7
71:10,13,24 72:2
72:5,10 73:10,14
73:17,19,22 74:7
74:10,17 79:7
80:16,17 83:9,14
83:17,21,24 84:2
84:4,7 85:7 87:9
87:10,17 88:11
90:3,16,17
**fails**  81:17
**failure**  23:15 64:4
**fairly**  14:5
**faith**  43:11 47:10
47:14 54:19
**fall**  21:4 43:15
73:1
**familiarized**
19:16
**family**  29:6 78:11
**fannie**  32:6,9,14
33:5,7,15

**far**  67:9 68:3
86:12
**fascinating**  30:21
30:22
**fashion**  18:15
**fast**  43:2
**favorable**  21:21
**february**  44:23
**federal**  38:11
52:25 86:17 88:7
**fee**  49:18
**felt**  61:3
**fifth**  7:12
**figure**  18:13 26:5
57:22
**figured**  60:9
**file**  12:9 28:16
39:17,19 50:22,23
53:10,25 58:22
60:16,22 61:12
62:6,11,18 63:6,6
64:8 65:1,3,15
66:24 67:2,15,16
75:7 76:9,13 78:1
78:10 88:9 89:1
**filed**  6:9 9:2 12:23
17:21,21 19:1
25:12 26:9 30:15
30:16 33:5 35:16
36:5 57:21 59:5
59:18,19 60:1
62:22 64:12,23
68:13 69:13,16,24
72:24 73:7 75:4,7
75:8 76:12,23
78:2,6 79:6,15
82:20 83:4,7,11
83:24 84:25 88:5
88:16 89:4,16
**files**  25:1 42:4
**filing**  30:16 31:10
31:11 36:5 49:24
88:24 89:7

**filings**  82:16
**final**  49:3
**finally**  61:1
**finance**  80:4
**financial**  4:6 6:2
19:4,9 23:24 80:5
**financing**  79:9,13
79:14,19
**find**  85:9
**fine**  18:9 26:7
45:13,14 47:18
48:24 51:19
**finger**  85:2
**finish**  78:14
**finra**  80:4
**firm**  28:23
**first**  9:9 13:22
20:15 30:3 38:25
56:10 65:19 76:5
83:10
**five**  21:22 22:19
76:5,20
**flags**  24:20
**flawed**  89:11,12
**florida**  20:1,6,10
20:10,11 21:1,11
21:19 22:5
**flurry**  84:25
**focusing**  68:24
72:14
**folks**  9:12 17:2
27:20,22 30:2
50:22 51:2,2
54:16 56:12 57:19
65:12 67:5 68:1
85:10 87:23 89:5
90:20
**follow**  50:4
**following**  26:13
30:16
**foregoing**  91:3
**form**  90:11

**forma**  50:25
**formal**  39:20 42:3
**forth**  14:25 65:4
65:17 81:22
**forths**  28:13
**forward**  26:1 40:5
47:25 50:14 51:4
53:17 57:8 62:11
63:4 64:6
**found**  10:8 32:21
75:12 81:18
**founded**  40:4
**four**  72:3 76:20
**frankly**  87:12
**fraud**  10:20,21,22
10:25 80:8 86:3
**fraudulent**  9:23
10:6
**freddie**  32:6,10,14
33:5,7,15
**free**  49:23
**friends**  78:10
**frivolous**  50:23
53:19
**front**  45:1 55:3
**full**  21:24 22:9
**fully**  37:20 89:15
90:7
**fundamentally**
51:25
**funding**  3:18 5:22
9:3 12:14
**further**  57:9
62:11 63:23 82:23
84:23
**future**  47:8

### g

**g**  9:1
**gain**  67:5
**gained**  12:11
**games**  62:2
**gamesmanship**
69:23

garret 58:12
gather 27:9
general 70:21
  72:13 76:17 77:5
  78:25 81:24 82:1
  82:3 89:13
getting 78:8
give 12:9 25:7,23
  35:17 37:13 66:23
  76:14 89:1
given 48:3 68:17
  87:2 90:19
gives 72:12,15
  81:14
giving 22:11
  58:14
glare 86:19
global 77:18
  78:16 79:3,11,24
go 12:10 16:25
  38:2,3,7 39:14
  46:6 47:17 53:17
  62:11 63:4 64:6
  66:20 69:20 75:20
  77:8,23 85:25
  86:9
goes 14:12
going 14:19,25
  15:2 16:2,14 17:3
  17:5,6,6 18:5,12
  22:9 24:10 25:17
  25:25 26:1,14,16
  28:16 30:24 31:3
  31:4 34:16 35:6
  37:10,11,11,23
  38:17 39:13 40:5
  42:25 44:17 47:25
  48:19,19 49:16
  50:6,12,14 51:4
  51:23,25 52:24
  53:9,13 54:2,6,9
  54:17,23 55:9
  56:9 57:1,8,16

59:11,16,23 62:1
62:12 63:4,5,7
64:6 65:24 76:14
76:25 79:17,17
80:10,12 86:8,10
89:20 90:3
goldilocks 36:12
  52:15,16
goldwater 1:22
  5:6 7:19 23:6,12
  23:17 24:2,17
good 9:6 10:15
  12:8 15:8 19:8
  23:8 26:23 27:6,7
  29:16 30:6,7,8,15
  37:3 40:1 42:22
  43:11 47:10,14
  54:19 56:14,15,17
  56:19,21 58:11
  73:6,6,17
gotshal 58:12
gotten 67:13,14
governed 18:3
governing 88:9
governs 17:18,25
grand 85:3
grant 22:3 39:14
  44:3 84:9 89:6
granted 67:2
  84:21 89:6
granular 9:18
grayrobinson
  19:9
greater 75:11
green 4:11
gregory 56:24,24
  77:2,2,7,8,9,10,12
  77:15,22,23,24,25
  78:2,6,8,12,14,15
  81:5,13,23 82:20
  85:20,23,25 86:6
  86:7,9,10

gregory's 80:23
  81:17 82:7,15
ground 32:19
group 23:24 42:23
gse 31:6 33:24
  40:25
guarantee 66:8
  67:19 68:5 70:12
  70:13 71:8,15
  72:11 73:2,5,6,11
  75:18,21,25 77:18
  77:20 78:20 79:2
  79:3,13,20 81:3,3
  81:11,14,25,25
  82:1,3,11,13
guaranteed 71:14
  71:19 72:15 77:17
  78:16 79:9,11,24
  81:11,15,15 82:12
gucs 71:22 72:14
guidance 22:25
guide 49:19

## h

hand 46:18 69:10
hands 24:23
hang 42:25
happen 61:14
  63:7
happened 55:16
happy 25:12 47:2
  53:19 67:12 82:23
  84:22
hard 43:2,11
harrison 83:6
headline 51:22
hear 9:17 11:15
  11:18,19 42:25
  61:7 64:14 67:12
heard 74:15 77:1
  85:22,23 88:25
hearing 5:1,5,9,13
  5:17,21 6:1,5 28:4
  28:5 58:23 60:14

61:11 63:3,9,10
  84:18 85:4 90:8
held 11:6 34:8
  65:20 80:24 81:2
  82:19
hello 23:9
helpful 64:8 69:10
henderson 8:3
  42:22,23,24 43:1
  45:23 47:1 48:13
  55:6
henderson's
  40:15
hereinafter 71:1
hi 71:11 81:15
higher 71:21
hint 39:16
history 15:20
hit 57:15 59:20
hmm 9:25 23:25
  24:4 34:7 35:15
  35:19 36:2 40:14
  49:20 51:10
hold 20:23 21:23
  32:25 42:18 46:13
  65:23 66:9,10
  68:16 69:1,8
holder 80:6,7
holders 75:9,24
  80:3,9,12 88:18
holding 36:6
  74:12 78:19
holdings 1:6,11
  1:19 2:3,11 3:3,15
  4:3 5:2,6,10,14,18
  5:22 6:2,5,7 34:22
  35:18 36:4 37:17
  81:1
holidays 29:14
hon 4:22
honor 9:6,14,15
  9:20 10:18 11:16
  11:18 12:1,16,17

13:2 15:5,8,17,18
15:23 16:1,24
17:10,14,15 18:1
18:9,18 19:19
20:14 26:21,22
27:3,6 28:2 30:25
31:7,13 38:25
41:15 42:7,22
43:10 44:1,5,17
44:25 45:1,13
46:11,22 47:1,18
48:2 49:1 50:10
51:6,7 53:2,14
54:6,7,13,21
55:15,19 56:3,5
56:14,17,19,21,25
57:12 58:11,14,18
58:21 59:1,10,14
60:12,18 61:22
63:12,19 64:2,15
66:19 67:19 68:5
68:22,24 69:9,13
69:17 70:9,18
71:5 72:17,20
73:2,10,20 74:7
74:11,18 75:19
77:2 80:17,21,23
81:9,9 82:19 83:2
83:14,15,19 84:9
84:12,14,15,21
85:7,15,17,20,24
87:10 90:17
honor's 15:23
17:14 30:20 31:5
32:16 41:11 82:9
honorable 61:23
honored 61:23
86:5
hoped 52:22
host 67:4
hour 54:10
hours 54:11

hufendick 58:13
huge 33:5,15
huh 84:6
hurts 49:15
hyde 6:25 91:3,8
hypothetically
44:21

i

identically 76:23
identified 80:21
imagine 28:12,14
28:15
immaterial 34:18
imortgage.com
2:14 5:14
important 17:13
17:24 88:8
importantly
65:19 89:10
imposes 50:19
impossible 82:5,6
inadequately
10:24
inadvertent 58:16
62:20 63:24 64:4
inadvertently
60:10
included 21:14
84:21
includes 44:18
including 82:17
incorporate 51:1
incorporated
86:18
incorrect 52:17
75:16
incredibly 29:12
indemnification
13:9 32:7
indenture 88:16
independent
38:11

indicate 90:7
indicating 89:4
indication 10:3
indiscernible
12:17 21:17 22:18
22:25 23:23 24:1
24:16 48:13 49:18
59:7 68:8,8,11,15
69:11,12 72:23
74:1,2,16,20 77:8
77:12,19 78:22
79:10 80:5,25
81:2 83:5,5,5
85:19
individual 20:20
88:17
individually 3:6
3:10,10 5:19
indulge 16:1,3
industry 80:5
inexpensive 48:4
information 24:23
25:2,24,24 26:4,8
26:17
informs 50:15
inherits 79:2
initial 28:16 47:7
inquiry 88:8
insist 63:5
inspired 75:14
instance 21:21
instances 31:18
67:1
intent 9:23 10:6
intentional 58:15
intentionally 58:4
interest 50:13
interested 21:24
interests 24:14
88:17
interpret 20:2
22:5

interpretation
75:16
interpreted 17:3
20:6 21:19
interrogatories
42:1 44:19 45:16
48:4,6,8
investigation
23:16 54:18
involved 40:11
65:14
irrelevant 82:21
isolated 10:25
issue 11:7,11,21
12:25 13:18 14:3
14:12,14 15:15,16
15:21 19:13,21
20:20 21:12 22:16
23:1,14 24:21
52:6,23 63:8
65:24 67:17 80:3
issued 68:11 71:1
78:23 80:25 81:1
82:11,12
issues 13:22 27:24
32:9 53:13 66:2
74:23 78:20

j

j.p. 79:20 82:20
james 7:15
january 44:23
jason 8:6 58:13
jewish 29:14
join 65:13
joinder 67:9 78:2
78:4,7,13 82:25
joinders 62:13,22
67:4 76:24 82:24
89:4,21,22,23
joined 78:12
joining 90:1,5
joint 6:7 64:24

**judge** 4:23 19:8
19:14,25 20:1,10
20:10,25 22:24
23:4 30:6,9 32:20
33:12 43:1 76:5
**judgment** 14:4,8
16:7 50:6
**judgments** 20:19
20:19
**judicial** 84:14
**julie** 83:5
**july** 28:10 37:18
51:11,11 53:15
**jumping** 32:11
**june** 4:14 45:20
45:20 46:3 58:1,1
64:8 69:16 77:6
77:18 78:17 83:17
91:25
**junior** 72:14,21
**jurisdiction** 30:23
31:6,11 32:14
33:25 34:5 38:4,9
38:12,13,14 40:1
51:21,25 52:2,4
53:5 54:1
**justice** 72:18

**k**

**k** 3:7,9
**keenly** 15:22
**keep** 26:17 27:21
48:19 49:24
**kenneth** 8:8
**key** 20:17
**khan** 8:11 15:8,9
15:12,18,19,22
16:4,7,9,24 17:10
18:6,8,11,16,18
18:21,23
**kids** 29:7
**kieval** 8:5 12:15
12:16,17 13:19,21
15:5

**kind** 9:18 25:20
55:5
**knew** 60:7
**know** 11:11,12,14
11:20,22,23 13:6
13:8 16:20,21
22:12,17 24:25
25:22,22,23 26:19
27:25 28:15 36:1
37:7,10 38:11
39:14,22 40:4,4
42:13,20 43:12
48:4 49:16,17
50:11,11,12,21
51:14 55:7,15,24
60:3 61:3,22,23
62:25 63:1 72:19
74:4 75:21,21
83:12 85:8
**knowledge** 82:2
**known** 21:15
64:24 82:6
**knows** 38:8 89:8
**kuehn** 7:16 9:15
9:20 10:1,13
11:12,18 12:1,4
13:2,10,14 15:17
20:14 21:9 22:18
24:20 25:9,11,16
25:19 26:7,22
27:3,15,18 28:2,7
28:9,12,14,20
29:2,17,22 30:1
37:6,9 38:25 39:3
39:16 41:24 42:20
42:21,25 43:2,7
44:8 45:14,19,25
49:1,3,8,11,13,15
49:21 50:10 51:6
51:11,14,17 52:3
52:10,13,16,20
56:5,7

**kurman** 7:18
23:11

**l**

**l.l.c.** 1:14 5:2
**l.p.** 3:18 5:22
**labor** 29:11
**lack** 23:15
**laid** 88:12
**lands** 29:18
**language** 13:15,23
14:10 20:13,17,25
21:2,14,15,18,20
22:8 68:24 72:5,7
72:12 79:1
**lani** 7:3,8
**large** 89:8
**late** 36:14 45:20
57:14 65:1,16
67:2
**latest** 41:20
**lavoy** 8:10 9:4,6,6
9:9,14 10:17,18
11:10,13,14,15,19
11:22 12:13
**law** 10:5 13:8 14:4
14:5,21 20:7,12
21:1,19 22:5
24:10,10,12 40:2
40:4 42:23 81:22
81:24 87:1 88:9
**lawlor** 7:15
**lawsuit** 21:12
**lawsuits** 20:5 21:8
**lawyers** 88:5
90:10
**lb** 31:8
**lbh** 77:16 78:15
81:3
**lbhe** 71:17
**lbhi** 11:9 12:22
23:16 31:9,17
33:2 34:6 66:14
70:16 71:2,10,14

71:22 73:12,15
78:25 80:1,1,25
81:6 82:13 84:19
**lbhi's** 78:19
**lbie** 67:21 68:7,9
68:10
**leave** 67:2 89:1
**ledanski** 6:25 91:3
91:8
**legal** 91:20
**legitimate** 80:9
**lehman** 1:6,11,19
2:3,11 3:3,15 4:3
5:1,5,9,13,17,21
6:1,5,7 12:23
17:12,17,21 18:2
31:16 33:1,5
34:20,20,22 35:16
35:17,17 36:4,6
37:17 49:5 52:8
56:13 74:14 76:16
76:22 79:9,12,14
79:18,19 81:1
87:7,13 88:1
**lehman's** 54:24
76:3
**lending** 3:6 5:18
15:7 19:2
**lengthy** 58:24
**letter** 9:2,9,15
10:6 12:14 14:14
15:6,14 17:20,21
18:17,25 20:16,17
23:14 25:6 26:3
26:25 27:18 30:15
30:16,22 31:23
39:7,24 67:8 79:6
**letters** 15:12
17:22 18:21
**level** 66:7
**lexington** 7:5
**liability** 9:11,12
9:19 11:2,5 15:15

17:9 23:13 68:8
79:4
**light** 67:12
**lilit** 8:13
**limitations** 15:15
15:21 16:23
**limited** 19:24 20:8
25:1,2,22 39:7
82:11,13
**limits** 20:18 50:21
**line** 40:15 78:9
**lined** 54:23
**lines** 57:1
**link** 77:12,15
**liquidating** 49:6
88:2
**liquidators** 64:24
**list** 65:21
**listed** 17:19 62:23
65:21 71:15
**listen** 43:24
**listening** 77:25
**litigated** 48:15
**litigation** 14:1
25:21 31:8,9
82:20
**little** 22:20 24:19
46:5 57:22 69:23
**live** 57:7
**llc** 3:8,10 23:24
**llp** 7:10
**loads** 46:5
**loan** 21:6,12 42:3
**loandepot** 9:3,5,7
17:25
**loandepot's** 9:20
**loans** 11:11,21,21
11:24 12:24 13:3
13:13,15 20:20,20
21:22 22:16,19
36:6 40:10 46:4
46:25

**located** 47:16
**logical** 62:16
**london** 77:6
**long** 26:7 28:15
28:20 31:17,18
45:14 82:17
**longer** 14:17,18
**look** 9:8 10:7
29:16 46:6,17
48:12 51:22 52:21
57:21 63:14 68:10
69:17 71:21 78:18
79:24 80:4
**looking** 28:10
44:6 46:20 54:11
54:11 59:21 69:15
**looks** 62:8
**lose** 52:4
**lot** 28:13,17 44:5
49:22 80:17 87:17
**love** 29:15
**lower** 10:3 66:13
**lp4** 64:25 65:10
**lp5** 64:25 65:10
**lpas** 22:13

**m**

**maher** 7:10
**making** 28:23
48:1 84:20
**malo** 8:4
**man** 56:17,21
**managed** 76:5,6
**manges** 58:12
**march** 44:23
**matter** 1:5 14:7
20:9 21:7 30:23
31:6 32:14 33:25
34:5 38:4,8,9 40:1
42:10 51:21,24
52:2,4 53:4 54:1
56:13 57:10 63:8
73:3,5 87:21
90:19

**matters** 19:12
20:12,18 21:1
51:4 64:6
**mean** 16:4 22:12
37:25 38:8 39:21
41:23 43:21,22
45:14 48:1 51:22
51:25 52:21 74:22
82:20
**meaning** 24:13
61:4 87:2
**means** 63:21 72:6
**mellon** 80:11,12
80:13
**mention** 79:16
**mere** 9:22 10:2
11:1,8 24:7
**merged** 14:4
**merger** 3:7,8 9:24
10:7,19,23,24
14:14,15 24:7,9
**meritless** 49:16
53:3
**merits** 14:20
20:15 21:25 39:1
39:6 51:15 70:4
**meshes** 53:13
**met** 72:12
**mh** 9:25 23:25
24:4 34:7 35:15
35:19 36:2 40:14
49:20 51:10
**michael** 8:5 12:17
**micromanage**
54:9
**middle** 72:14
**million** 11:24 12:2
22:20
**mineola** 91:23
**minting** 87:8
**minute** 16:1,3
42:18

**minutes** 64:21
**mirabile** 55:13
**misreading** 66:4
**missing** 18:10
44:12
**misspoke** 33:10
**misstated** 72:19
**misunderstanding**
33:10
**modified** 6:6
**modify** 48:17
**moment** 60:7
**money** 44:5,11
49:8,17,23 50:3,5
50:9 76:16 82:18
88:4
**month** 83:18
**months** 29:21
44:15,24
**morgan** 79:20
82:20
**morning** 9:6 15:3
15:8 19:8 23:8
27:6,7 30:6,7
42:22 56:14,15,17
56:19,21 58:11,13
**mortgage** 1:14 2:6
3:7,8,9,10 5:2,10
7:4 15:24 34:9
42:23
**motion** 5:3,7,11
5:15,19,23 6:3,6
9:10 10:14 16:12
16:15 17:7,8,17
18:2,5,13 19:13
22:3,8 25:12,13
30:17,19 35:12
37:12,14,16 39:1
39:6,17,20 40:8,8
42:9 44:11 45:10
48:2,3,18,19,23
48:24 49:16 50:17
51:8,8 52:1 53:10

[motion - opposed]                                                    Page 13

53:17,25 54:1
58:2,17,20 61:19
61:21 62:5,12
64:23,25 65:6
68:13 75:2,14
77:4 78:1,10,12
82:25 83:19,24
84:10,15,18 85:5
88:6 89:4,21
**motion's** 26:1
**motions** 12:8 17:6
17:15 26:8 27:10
28:17 44:22 48:20
49:11,24 50:23,24
53:19,20 89:23,23
**movant** 58:20
82:25
**move** 19:23 26:1
50:14
**moving** 31:14
40:12,13,17,20
41:6 45:4,6,8
**multiple** 16:14
**muting** 57:1

**n**

**n** 7:1,15 9:1 91:1
**n.a** 7:19
**n.a.** 1:22 5:6
**name** 58:8
**names** 62:23
**narrow** 13:18
42:14
**necessarily** 10:10
13:7
**necessary** 10:23
48:3 82:1
**need** 24:12 26:6
27:24 28:16 45:16
54:16 68:1 87:1
90:16
**needed** 60:15
**negotiated** 21:13
48:15

**neither** 24:16
**network** 3:18 4:6
5:22 6:2 9:3 12:14
19:4,10
**never** 36:16 49:25
**new** 1:2 4:12 7:6
7:13,21 39:10
41:5 51:2,5 52:10
67:15,16 76:9
80:11,12,13 84:16
87:4 88:24 89:1,1
**nexus** 31:7 34:4
**nice** 30:8
**night** 62:4
**non** 34:20 76:11
81:14
**note** 57:17 58:18
**notes** 77:17 78:15
79:23
**notice** 58:22 62:24
**notion** 48:2
**notional** 22:17
89:7
**notwithstanding**
64:4 72:13
**novel** 84:16 87:4
**november** 44:22
**number** 11:23
83:4
**numerous** 11:24
63:2 81:8
**ny** 4:12 7:6,13,21
91:23

**o**

**o** 4:21 9:1 91:1
**objecting** 47:19
84:8
**objection** 58:17
58:20 59:17,19
60:1 61:20 62:8
62:25 64:5,12,18
70:3 83:11 84:19
88:15 89:16,19,24

**objections** 42:1
48:9 82:8 83:7
84:15
**obligated** 46:9
88:8
**obligation** 70:16
**obligations** 45:7,9
53:18 81:12,12
**observation** 23:3
**observations**
18:19
**obtained** 90:13
**obviously** 12:6
20:14 28:17 30:17
44:19 53:2,20
55:3 60:23 75:14
**occasions** 50:4
**occurred** 73:19
86:24
**october** 29:13
44:22,22,22 45:1
**odd** 48:5
**offer** 60:22,24
**offered** 60:13 62:6
**offers** 62:16
**offhand** 11:12
**officers** 24:14
**offit** 7:18 23:11
**offline** 27:11,16
**oh** 49:7
**okay** 9:8,16 10:17
11:10 12:3,19
13:11,17,17 14:19
15:6,6,11,14 18:4
18:12,16,20,22
19:1,3,11,15
21:23,25 22:1,21
23:2 24:18 26:10
26:23,25 27:17,20
28:22 29:3,17,20
29:23 30:2,2,5,13
31:20 32:11 33:22
33:22,24 34:1,11

34:24 35:3 36:10
36:18,24 37:10,21
37:23 38:20,22,24
42:5 43:14,21
44:22 45:22,24
46:1,7,23 47:3,6,7
48:12,25 50:11
51:13,19,22 52:12
52:19 54:10,22
55:2,20,25 56:8,9
56:10,12,22 58:25
59:12 60:5,19
62:1 64:3,7,11,16
64:20 69:3,8,15
69:21 77:22 78:5
84:2,7 85:18,21
85:25 87:11 90:15
90:20
**old** 91:21
**omission** 58:16
**omitted** 20:17
**onboard** 30:4
**once** 25:13,24
87:15 90:10
**one's** 47:20
**ones** 12:10 24:19
74:20 80:25
**ongoing** 41:23
47:5
**onionin** 39:11
**open** 11:3
**operating** 49:5
**operations** 24:15
**operative** 42:15
85:12
**opinion** 35:8
**opinions** 19:20
**opportunity**
58:15 61:16 62:6
64:17
**oppose** 51:25
**opposed** 81:25

opposing 11:2
opposition 37:17
  51:8
option 49:24
order 6:6 54:17
  63:2 76:12 90:4,6
  90:6,11,11
orderly 86:22
orders 87:1
original 75:24
originators 34:9
ought 12:12 16:25
  26:4 29:20 50:22
outset 11:8
overbroad 43:13
overlapping
  56:23
overrule 84:15
oversight 58:16
owned 24:1

**p**

p 7:1,1 9:1
page 27:25 70:5,7
pages 32:2
paid 73:14 79:25
  80:11
panel 77:1
paper 29:24
papers 41:19
  62:11
paragraph 72:14
paragraphs 10:8
pardon 25:9
parity 66:17
  67:19,20 68:7,10
  68:12,14,24 70:24
  70:25 72:15,15
  77:20 78:20 79:13
  86:7
park 56:11
parse 64:17
part 28:25 42:3
  49:25 65:7 68:23

85:3
participate 45:15
particular 14:20
particularly
  21:21
parties 21:2,13,20
  41:24 44:11 54:23
  84:8,13,20 90:1,5
  90:10
partner 77:5
  78:25
partners 7:3
partnership 75:4
partnerships
  77:17 78:16,23
  79:7,10,23
parts 13:24
party 57:4
party's 21:16
passed 74:24
paste 65:9
patience 47:7
patiently 38:23
pay 73:15 79:17
  80:12
payment 22:20
  66:16 80:10
peck 76:5
pending 41:11,17
  46:12 54:3
pennies 86:14
penny 86:15
people 40:4 46:19
  50:12 57:17 67:8
  67:10 86:12 87:3
perfect 29:2
perfectly 87:24
period 54:8
permission 37:13
  64:25 66:24 76:14
  83:24 84:22
permitted 17:15
  17:23 18:1 63:25

67:15,16
person 23:10
  57:11 63:11 68:1
  75:11
personal 38:13,14
persons 76:23
  85:6
persuaded 14:20
petition 31:17
  35:21 82:6
petrakov 7:23
  23:8,11,11,14,22
  24:1,5 25:5 26:10
  26:12,21,24
phase 47:7
philip 8:9
phone 27:9,21
  30:3 55:1 56:22
  59:9 61:1 62:10
  64:21 68:3,4
  84:13 85:22 87:23
physically 68:19
pick 28:5,23
picking 29:7
piece 29:24
piecemeal 22:10
place 50:8
places 88:22
plain 62:3 87:2
plaintiff 1:12,20
  2:4,12 3:4,16 4:4
plaintiff's 23:15
  53:12
plan 6:7 9:11,17
  13:20 21:25 22:14
  31:11,18 50:3,5
  50:20 55:7 58:19
  58:21 60:1,20
  62:7 63:14 64:4
  65:17 66:7,15
  67:13,17 72:5
  83:1 84:12 85:12
  86:21,21 87:13,16

87:17,18,22,24,25
  88:2,12 89:14,16
  89:18,19
play 62:1 66:11
plc 77:16 78:15
  81:1,2,3,12,15
pleading 65:8,10
  65:18 88:9,14
pleadings 81:8
  85:9 88:5
please 21:24
  56:13 72:19
pled 10:20
plenty 29:22
plus 41:7
pm 90:24
pmac 3:6 5:18
  15:6,9 18:1 19:2
pmc 3:7,9 15:9
  18:1 19:3
point 14:21 17:11
  17:25 18:8 34:13
  36:1,13,13 43:9
  47:4 49:4 52:11
  53:7,11,12 57:24
  58:15
pointed 11:3
  13:20 20:16 52:5
  70:19 73:11,22
points 12:23 49:3
  53:2 89:19
position 52:24
  76:10 83:1,2
  84:12 89:22
positions 88:22
possible 22:7
  31:16
post 35:21
potential 20:9
potentially 19:25
  40:9
practicable 26:16

practical 42:10
44:12,16 52:22
practice 57:8
pre 5:3,7,11,15,19
5:23 6:3 82:6
precedes 13:3
precious 67:1
preclude 12:22
21:5 53:5
precludes 74:23
preclusion 14:5
predicate 34:4
preference 71:1
preferred 68:11
70:25 71:1,10,15
71:25 78:23,24
prejudice 66:25
89:3
premise 32:13
prepare 28:18
90:3
prepetition 31:8,8
32:15 33:6 34:9
present 8:1 56:24
84:16,17
presented 31:23
83:15
preserved 51:4
preside 38:3
presided 20:1
prevail 53:4 87:19
88:1,20
prevailing 53:20
prevails 87:18,25
previous 12:25
14:15 16:17,19
32:13 39:11 51:1
previously 13:22
primarily 9:21
24:23
primary 52:17
principle 12:4

prior 12:21 13:11
19:20 21:4 29:5
31:10 82:8,15
priority 66:16
73:17
pro 50:25 62:3
probably 27:15
29:12 53:5
problem 49:21
procedural 15:20
17:11,25
procedure 86:18
proceed 11:9 22:7
54:19 60:17 63:18
63:20
proceeding 5:1,5
5:9,13,17,21 6:1
20:21
proceedings
19:20 90:13,23
91:4
proceeds 70:1
process 16:20
18:3 50:19 51:2
61:23 62:8 76:4
86:23
produce 45:11
46:2,8,10,24 47:2
47:21
produced 42:2
47:17
producing 43:18
44:19 46:14
production 41:25
43:3,4 44:14
45:20 46:9,19
professional 3:7,9
promptly 26:16
prongs 36:11
proof 65:3,16,22
66:5,24 67:2
72:24 75:8 76:12
76:13,15 88:17,24

propose 53:13
prospectus 75:16
75:22 77:19 78:18
79:1,25 80:1 82:7
82:10 86:4
prospectuses 72:8
89:11,11
prove 10:11 24:12
provide 88:25
provided 23:23
provisions 49:18
66:4 67:16 68:25
public 24:24 25:2
35:13
publicly 24:25
pull 21:2 69:8
pulled 58:6
purchase 21:7,12
24:8 82:6 86:1
purchased 24:2
80:6
pure 85:6
purportedly 36:4
purports 70:11
purpose 25:20
purposes 6:8 81:4
pursuant 66:15
86:17
pursue 26:5 63:23
pursuing 50:6
put 31:12 57:16
82:14 85:1
putting 51:7

**q**

question 11:20
13:12 42:15 43:1
59:16,24
questions 11:3
64:13 82:23 84:23
90:14
quickly 22:18
77:16

quiet 50:8
quite 49:7 58:23
quote 40:2 44:3
70:5,11
quoting 14:24
71:17

**r**

r 4:21 7:1 9:1 91:1
raise 17:11,24
19:12
raised 17:12,22
90:1
raises 15:14
raising 74:23
range 11:25 86:13
ranges 54:8
rank 71:16
ranking 75:17
ranks 70:16
rare 57:3
reached 24:6
60:12,20
read 33:24,25
64:11 67:6
reading 17:2
75:15 79:1 89:10
89:11
really 18:4 22:6
29:11,16 30:10
64:17
reason 19:24 20:8
34:3 48:17 88:19
reasonable 23:16
88:6
reasons 16:16
65:17 76:20 89:15
89:20 90:7
rebecca 8:12 19:8
recall 80:23
receive 58:3,22
66:7,18 84:11
received 15:12
57:25 60:25

**receivership** 23:19 24:3

**recognize** 11:4

**recognized** 9:22 10:2

**recommendation** 23:3

**recommendations** 23:1

**record** 12:8 19:2 24:24 25:3 34:17 35:13 58:12 64:3 80:12 84:5 85:4 89:25 90:8 91:4

**records** 32:21

**recover** 49:8 76:16

**recoveries** 76:18

**recovery** 49:18 76:22

**redo** 16:14

**refer** 22:13 65:9

**reference** 51:1

**referred** 80:20 81:5,7,9 82:16

**referring** 68:6,7 69:6 81:21

**reflect** 90:6

**reflects** 23:15

**regard** 41:9

**regarding** 11:4

**register** 77:5

**regulatory** 80:5 81:4

**reinforcing** 85:10

**relate** 13:3 20:20

**related** 19:20 21:6 31:13 34:4 38:10 43:3 66:9 83:18

**relates** 12:24 14:22

**relating** 20:19

**relatively** 18:15 27:12

**release** 12:21 13:1 13:23,24,25 14:10 14:11,22 19:13 20:13,17,18,25 21:4,14 22:9,12

**releases** 22:13

**relevant** 74:15 82:12,22

**reliance** 82:2,3

**reliant** 3:8,10 15:10 18:1

**relief** 63:16 67:11 76:21 89:5

**relying** 40:3

**remain** 53:22,23

**remedies** 34:21

**rendered** 19:16

**reorganization** 86:21,22

**repeat** 50:24 88:13

**repeated** 50:4 88:11

**repeatedly** 16:13

**reply** 58:24 59:3,5 68:23 69:7 70:8

**representations** 34:22

**represented** 62:2 88:18

**representing** 9:5 15:9 40:17 46:16

**represents** 72:25

**request** 12:12 16:18 39:12,17 84:15 89:6

**requested** 60:16 84:4 89:6

**requesting** 19:17

**requests** 27:1 39:13 41:25 43:13

**require** 10:6,21 65:7

**required** 65:3

**researched** 19:19

**reserve** 17:16

**reserves** 82:19

**reserving** 60:17

**resolution** 21:13 49:22 52:22 81:8 82:1

**resolved** 11:7

**respect** 9:10 10:18 11:1 12:8 15:20 17:7,22 18:25 22:8 24:11 31:14 32:13 38:13 41:3 48:2 53:4 57:25 64:24 65:1 66:10 71:10 76:23 89:24

**respectfully** 17:11 40:3

**respond** 28:21 61:15,16,18 80:18 82:24

**responding** 49:11

**response** 17:21 20:16,24 53:25 54:24 60:16 61:12 61:19 62:7,18 64:8 69:24

**responses** 48:9

**responsive** 43:12 44:6,7

**rest** 90:21

**resulted** 86:21

**resurrect** 75:10

**retained** 31:11

**retired** 76:6

**rex** 6:9 78:12

**ricky** 56:24 77:2

**right** 9:8 12:5,5 12:19 15:4 18:7 18:24 19:11 20:23

21:25 22:21 23:3 23:6 26:3,10,14 26:23 27:2,20 28:3,19 29:3 30:18 31:25 32:16 32:19 33:6,16,18 35:1,24 36:15,16 36:19,20 37:1,19 38:6,15,19 45:2 48:1,6 51:16 52:21 55:3,22 56:1,2,4,4,9,15,18 56:20 57:14 59:15 61:9 63:5 64:11 64:16 66:23 70:17 70:20,23 71:3,9 71:12,23 72:1,4,9 73:13,18 83:3,3 83:20 90:15,20

**rights** 33:1 34:21 35:17,21 36:4,5 50:19 51:4 52:25 60:17 61:24 63:23 70:21 75:11 85:5 90:12

**ring** 30:3

**rise** 13:9,25

**rmbs** 11:24 31:14 36:9 41:1,3

**road** 91:21

**rodriguez** 8:12 19:6,8,9,11,14,19 19:24 20:24,25 21:6,10,23 22:14 22:19,22,24 23:4

**roll** 43:20 56:9

**rolling** 43:18 45:20 46:9

**round** 87:3

**rule** 16:15 42:9 43:15 44:21 45:1 48:20 62:12 88:7

ruled  86:1 87:21
rules  52:25 86:7
  86:17,17,19 88:7
ruling  15:23
  16:16,17,19,22,23
  51:3 63:8 87:16
  90:7
rulings  51:1

**s**

s  5:19 7:1 9:1
sanctions  88:6
sanjana  8:6
sas  36:7
satisfied  50:7
saw  59:19,25
  62:24 65:13
saying  32:5,8
  33:23 34:25 35:2
  35:9,22 37:2,5,8
  39:9 47:20 50:22
  51:24 52:25 63:20
  68:18,19,22 71:17
  71:20,24 72:12
  74:8,11
says  9:11 22:13,14
  22:15 89:18
scc  1:3,9 2:1,9 3:1
  3:13 4:1 5:1,5,9
  5:13,17,21 6:1,5
scenario  89:12
schedule  15:3
  18:14 26:15,20
  27:23 29:18,24
  63:10
scheduled  44:13
schedules  27:10
scheduling  22:22
scheme  85:3
scope  20:3
scratch  16:14
se  62:3
search  24:24

seat  38:21
sec  25:1 80:6
  85:25 86:11
second  18:25 53:7
  70:24 87:20
secondly  10:5
  88:21
section  17:15,23
  70:12
securities  36:7
  65:14,19,22 66:8
  66:9,10,12,13,16
  66:17 67:17,20
  68:6,12 71:11,16
  72:21 73:24 74:14
  74:19 76:17 78:20
  78:22,23,24 80:6
  80:8,14 86:1,4,13
  87:9,11 88:16,18
  89:8
security  65:25
  74:25 75:9,12
  87:5,6
see  12:11 16:17
  17:14 22:2 26:18
  27:11 28:1 29:18
  30:8 32:11 51:14
  51:17 53:15,25
  54:23 56:22 59:17
  86:14
seek  50:17
seeking  83:24
segment  30:3
selective  14:24
sell  86:15
seller  74:24
seller's  49:19
send  27:18 90:5
sending  67:8 88:3
senior  70:25
  71:22
sense  25:12 26:9
  27:21 39:3,4

51:17 53:17 84:25
sensitivity  53:12
sent  9:9
separate  13:12
  17:6,8 66:1 80:21
  88:23 89:22
separately  74:13
september  28:11
  28:15,25 29:9,16
  79:16,20 87:8
series  61:1
serve  63:24 64:5
served  48:10,11
  58:17 59:23 60:8
  60:10 62:4,16,22
  69:25
service  58:2,3,7,8
  58:10 60:21 61:20
  62:23
services  3:6 5:18
  15:7 19:3
session  15:3
set  10:5 27:9 65:4
  65:17 66:1 81:22
  84:4 85:4
settled  20:4 33:16
settlement  12:21
  12:23,25 13:1,4,8
  13:9,12,15,16
  14:4,9 20:3,5,11
  20:15 21:18 50:15
settlements  33:19
seven  81:19
shareholder
  24:14
shelley  4:22
short  54:7
shortly  59:20 60:8
shot  83:10
show  9:24 10:6
  23:24 31:13 35:16
  82:1

side  11:24 28:18
  53:21 57:16 68:21
sides  43:13
similar  65:14
  67:11 81:3
similarities  80:22
similarly  54:23
simple  89:2
simply  12:7 13:4
  14:10 16:16 32:22
  39:12 51:1 52:17
  58:20 66:25 68:18
situation  17:18
  25:4,5 85:11
  88:14
six  44:23 75:13
sketchily  35:10
sketchy  35:11
slew  57:15
slip  21:4
slower  43:20
small  23:19 24:2
sold  36:6 74:4,14
  74:25
sole  84:19
solution  24:6
solutions  91:20
solvent  71:17
somebody  25:23
  76:8
sonya  6:25 91:3,8
sooner  27:23
sorry  11:17 35:3
  48:22 61:6 68:5
  85:16
sort  42:3
sorts  86:13
sought  40:7 64:25
  65:13
southern  1:2
  38:10,16
speak  17:8 23:21
  54:25 59:11,12

speakers 68:21
speaking 77:3
  85:16
special 79:9,13,14
  79:19
specific 23:15
  63:21 81:25
specified 39:23
specify 34:20
spectacularly
  87:19
spend 44:11 54:10
  57:22
spending 44:5
spoke 61:1
spoken 9:13
spotlight 86:20
srm 81:10,22
stand 22:21
standards 39:23
standing 52:13
  86:3
standpoint 35:25
start 45:19 89:7
started 32:12 46:5
starter 76:11
state 23:14 34:5,5
  58:3
stated 16:16 61:19
  61:19 78:3
statement 13:18
  77:16 78:14 82:21
  89:2
statements 16:17
states 1:1 4:10
  20:6 68:6 77:20
  78:19
statute 15:15,21
  16:23
stay 30:4,12 31:22
  31:23 39:12,18,22
  41:16 44:3,11
  48:24 51:18 52:1

53:17 54:3
stayed 42:17
staying 51:21
stays 48:16
stein 8:9
stock 71:1,22
stop 46:11,12
  47:20
stranger 55:16
street 7:20 56:11
strength 40:7
structured 36:7
struggling 66:20
styled 58:2
subject 14:7 21:7
  30:23 31:6 32:14
  33:24 34:4,4 38:4
  38:8,9 40:1 51:20
  51:24 52:2,4 53:4
  54:1 75:1,6,11
  84:16
submissions 35:14
subordinate
  70:18 77:17 78:15
  79:23 80:2 81:4
subordinated
  66:6,8,12 73:9
  76:17 80:24 81:3
  81:14 82:13 89:13
subordination
  66:4 68:25 70:12
  75:17
subsequent 20:12
  21:1 74:17 84:18
subsequently 64:1
subset 23:19 24:2
subsidiary 24:1
  24:17
substantial 42:21
  43:4
substantive 51:3,8
  57:4,9 58:23
  60:16,23 62:7,11

substitution 82:19
suburban 2:6
  5:10 7:4
successful 16:11
successor 1:22 3:6
  3:8 5:7 9:11,12,19
  11:2,5 15:15 17:9
  21:11 23:7,13,18
  24:21
successors 21:16
sudden 50:8
sue 52:9
sued 21:10
sufficient 9:23
  10:10 31:12 34:4
sufficiently 9:12
suggest 48:18
suggesting 47:13
  71:13 72:10
suggestion 85:2
suing 14:16 52:5
suite 91:22
suits 21:13
supersedes 14:15
supplemental
  17:16 18:3 83:25
supplied 25:6
support 58:4 78:3
supporting 32:22
supposed 43:18
  45:19
supreme 9:22
  10:1,4 11:4
sure 28:7 29:23
  33:12 49:2 51:24
  55:8,17,19 57:22
  58:18 59:21 64:22
  83:16
survive 10:14
suspend 40:23
  41:2,9 54:2
suspended 41:14
  42:16

suspending 54:6
swap 79:9

t

t 91:1,1
take 26:4 27:11
  28:20 29:23 48:21
  50:7 57:21 60:23
  61:4,24 63:8
  64:20 69:9 83:10
taken 77:5
talk 23:22 33:3,4
  38:18 39:15 41:1
talked 48:16
talking 12:24 18:5
  26:17 33:4 44:15
  59:16 69:5 83:12
talks 79:8
teaching 29:5
telephone 84:21
telephonically 8:1
  57:5
tell 22:18 28:11
  28:24 31:1,3
  40:16 42:18 86:12
telling 16:13
  30:22 32:12 47:23
template 65:6
tenille 4:25
tenth 17:2,7
terms 28:3 40:20
  75:16
test 88:24
tethered 85:12
texas 14:4,5,21
thank 11:10 12:5
  12:13 15:5 18:23
  22:24 23:4,5,9
  24:18 26:21,22,23
  38:23 45:13 54:20
  56:3,4,5,8,10
  57:12 58:14 62:17
  64:7,15 80:17
  83:3,17 90:17,18

90:20
**theoretically**
43:17
**theories** 87:4
**theory** 10:19 11:2
11:5,9 17:8 38:24
39:10 51:5 52:7
62:21
**thing** 46:5 47:9
48:12 66:3,23
85:1
**things** 13:7 31:15
50:8,25 55:16
63:7 68:25 82:16
89:3
**think** 14:24 17:11
17:25 18:2,21
19:22 20:22 22:4
22:5 24:6,9,16
25:20,21 27:15,21
29:4 30:25 31:2
32:21,22 34:13,14
34:16,17,18,19
37:6 38:14 39:3,4
41:16 43:13,23
45:20 47:19 48:5
50:23 52:1 53:16
54:5 58:21 61:15
63:15,15 64:7,12
65:12 67:10,13,17
68:22 74:7,11
82:14,16,18,21
85:7 90:15,16
**thinking** 39:8,9
**thinks** 48:2 51:20
**third** 6:6
**thought** 20:8
34:15 65:13
**threatened** 61:3,4
61:8
**three** 20:4 21:22
34:6 61:1 63:13
68:25 70:25

**threshold** 11:7
17:15,17 18:2
**throws** 71:18
**thursday** 29:10
**till** 31:17 35:21
53:15,25
**time** 10:15 13:16
16:12 26:5 29:22
31:10,20 43:25
48:10 49:17 50:5
54:7,8 57:22
58:22 60:13,15
61:2,2 62:5,16
69:9 70:2 75:4
81:7,7 82:17
90:18
**timeframe** 12:13
**timely** 58:23
**times** 16:15 33:25
34:6 50:2 63:2
**timing** 83:7,11
89:24
**tiny** 46:4
**today** 18:14 26:15
28:24 39:4 46:8
47:13,16,20 57:7
60:17,18 61:15,17
62:6,11,19 63:5
63:18,21 69:24
74:15 82:25 83:19
84:21 88:11,25
90:16
**told** 37:17 48:20
49:21 61:10 62:24
**top** 70:8
**total** 22:20
**totally** 44:25
45:12
**touch** 63:1 67:6
**track** 12:8 27:12
**traction** 67:5
**tracy** 8:3 42:23

**trade** 86:4,12
87:11,11
**traded** 24:25
76:10
**trading** 76:8 80:7
80:9
**transcribed** 6:25
**transcript** 90:13
91:4
**transfer** 19:13,18
19:23
**transferred** 20:10
23:20
**treated** 67:22 81:4
**treatment** 68:14
**treats** 14:5
**tried** 27:8
**trillions** 43:12
76:4
**trouble** 30:12
69:25
**troubling** 69:22
85:10
**true** 13:7 39:24
52:8 66:25 76:22
91:4
**truncated** 31:24
53:1
**trust** 42:6 54:18
65:20,20 67:20
68:12 72:6 73:14
73:14 78:18,20,21
79:2,25 80:3,14
**trustee** 75:23
80:13,14 88:16
**trustees** 36:9
**trusts** 72:3,3
79:12 80:21
**try** 27:9 30:12
33:13,14,22 55:12
80:18
**trying** 43:11
46:15 47:19 49:8

53:11 81:13
**two** 13:6,24 17:6
19:12 20:5 29:21
31:15 32:2 36:11
53:2 63:7 70:24
82:16
**twofold** 35:12

**u**

**u.s.** 4:23
**uh** 84:6
**unanimous** 81:18
**unclear** 47:22
**underlined** 66:12
**underlying** 40:8
73:7,7,8,8
**undermined** 89:3
**understand** 21:25
32:3 34:24 35:2,7
35:9,22 37:1,4,8,9
37:25 39:8,8
49:12,14 50:16
54:5,13 59:13,22
61:6,7 62:2 66:21
67:25 68:2,2,18
68:19 87:20
**understanding**
33:23 34:2 87:5
**understands**
64:22
**understood** 10:12
16:24 17:10 23:4
31:5 50:1
**undertake** 47:24
**undisclosed** 72:11
**unfortunate**
62:21 66:3
**unfounded** 40:2
**unique** 15:25 65:5
**united** 1:1 4:10
**units** 80:2
**universal** 15:24
**unknown** 13:25
21:15

**[unmatured - younger]**                                                    Page 20

**unmatured** 31:9
  34:8
**unquote** 44:3
**unrelated** 20:21
**unsaid** 69:20
**unsecured** 66:13
  70:15,22 72:13,22
  76:17 89:13
**unusual** 57:3
**upheld** 87:1
**use** 10:15 25:14
  25:15

### v

**v** 1:13,21 2:5,13
  3:5,17 4:5 5:2,6
  5:10,14,18,22 6:2
**value** 11:23 22:17
**venue** 19:13,17,23
  22:3 23:1
**veritext** 91:20
**version** 50:25
  51:5
**view** 13:8 21:4
  22:12 36:1
**views** 48:20 85:11
**violated** 45:9
  61:24
**violating** 45:5
**voice** 77:6
**voices** 56:23
**voluntarily** 76:10
**voluntary** 26:18

### w

**wait** 53:14,24
  54:23
**waiting** 27:22
  44:9
**want** 12:10 17:19
  25:14,17 26:5
  27:8,9,11 28:4,5
  29:7 30:3 39:19
  42:9 44:10 46:17
  47:8,14,23,24

48:18,22 51:7
53:24 54:3 55:1
61:14,15,18,18,21
61:22 62:9,10
64:13 85:13 87:24
**wanted** 18:8 39:7
  43:1 60:15
**wants** 53:19 77:1
**warranties** 34:22
**warts** 75:9
**waste** 43:24 49:16
  49:17 70:1
**wave** 41:5
**way** 17:2 18:14
  22:2 31:24 38:17
  50:13 59:8 67:21
  70:1 75:3
**ways** 15:25 46:21
  62:14 85:11
**we've** 13:21 18:16
  28:17 37:16 47:21
  48:3 49:21 50:1
  51:24 81:8 82:8
**wednesday** 29:10
**week** 29:5 44:14
  44:15 46:19 54:10
  54:11 87:21
**weeks** 62:17 63:13
**weil** 58:12
**welcome** 30:4
**went** 58:6 69:25
**whatnot** 28:1 29:5
  29:7
**whatsoever** 47:24
  58:4
**who've** 12:12
**wholly** 30:20
**willing** 25:7,23
  26:11
**winner** 51:24
**winning** 51:20
**wish** 63:23 90:12
  90:14

**wishes** 57:4
**wollmuth** 7:10
**woman** 69:12
**won** 53:9
**word** 25:14,15
  61:7,7 72:15
**words** 13:7 68:2
**work** 27:22 28:1,4
  28:17 29:18 54:15
  55:12,23 60:14
  65:7
**working** 47:14
  77:3
**works** 59:8
**worth** 18:4 22:5
  50:5 86:14
**worthless** 86:13
  86:14
**worthwhile** 19:22
**wrap** 85:14
**written** 45:15
  75:22,22 81:6,14
  81:18
**wrong** 34:15
  41:25 52:1 57:19
  57:23 67:13,14
  87:9
**wrote** 68:23
**wu** 6:9 56:19 57:2
  57:6,12,25 58:2
  58:16,22 59:3,5,6
  59:7,8,10,13,16
  59:19,22 60:3,6,9
  60:12,19,25 61:9
  61:13,18 62:1
  63:12,17,18 64:2
  64:5,7,8,10,14,16
  64:19 65:6 66:19
  67:9,19,23,24,25
  68:5,10,18,22
  69:15,23 71:13
  72:18,20,21,23
  73:1,4,23,25 74:4

74:9,16,19 75:19
75:21 76:1,2 77:3
78:2 81:13,23
82:5 83:11 85:13
85:15,17,18,19
88:15,20 90:1,4,9
90:15
**wu's** 69:4 89:20

### x

**x** 1:4,8,10,16,18
  1:25 2:2,8,10,16
  3:2,12,14,20 4:2,8

### y

**yeah** 18:9 25:10
  27:8 28:14 30:11
  30:11 31:21 39:2
  39:21 41:4 49:10
  55:10,21 69:15
  70:10,14 71:6
  83:23 84:3,24
**year** 43:5,6,16
  44:18
**years** 66:22 75:13
  76:5 81:19,20
  86:20,20,20
**yesterday** 60:25
**york** 1:2 4:12 7:6
  7:13,21 80:11,12
  80:13
**younger** 68:17