WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Jacqueline Marcus
Garrett A. Fail

KEESAL, YOUNG & LOGAN LLP
450 Pacific Avenue
San Francisco, California 94133
Telephone: (415) 398-6000
Lisa Bertain

*Attorneys for Lehman Brothers Holdings Inc.*
*and Certain of Its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :    08-13555 (SCC)
                                                :
                  Debtors.                      :    (Jointly Administered)
                                                :
-------------------------------------------------------------------x
```

**THE PLAN ADMINISTRATOR'S REPLY**
**IN SUPPORT OF PLAN ADMINISTRATOR'S OBJECTION**
**TO CERTAIN AMENDED CLAIMS (REDUCE AND DISALLOW CLAIMS)**

WEIL:\97140299\5\58399.0011

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................................1

**Jurisdiction** ......................................................................................................................................2

**Background** ....................................................................................................................................2

**CLAIMANTS HAVE FAILED TO STATE A CLAIM FOR DEFAMATION** .......................3

A.       There Was No Slander Per Se or Slander Per Quod .......................................................3

B.       The Alleged Defamatory Statements Constitute Inactionable Statements of Opinion ..................................................................................................................................4

C.       BNC Is Protected By the Common Interest Privilege .......................................................8

**CONCLUSION** ..............................................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aviel v. Cal. State Univ.*,
  2003 Cal. App. Unpub. ...........................................................................................................7

*Biggins v. Hanson*,
  252 Cal. App. 2d 16 (1967) ................................................................................................10

*Blank v. Kirwan*,
  39 Cal.3d 311 (1985) ..........................................................................................................10

*Charney v. Standard General, L.P.*,
  10 Cal.App.5th 149, 158 (2017) ...........................................................................................5

*Decambre v. Rady Children's Hosp.-San Diego*,
  235 Cal. App. 4th 1 (2015) ...................................................................................................7

*Ferlauto v. Hamsher*,
  74 Cal.App.4th 1394 (1999) ............................................................................................6, 7

*GetFugu, Inc. v. Patton Boggs LLP*,
  220 Cal.App.4th 141 (2013) .................................................................................................6

*Gould v. Maryland Sound Indus., Inc.*,
  31 Cal.App.4th 1137 (1996) ............................................................................................6, 7

*Goyet v. Dean*,
  2003 Cal. App. Unpub. LEXIS 6255, *37 (June 26, 2003) ..................................................7

*Gregory v. McDonnel Douglas Corp.*,
  17 Cal. 3d 596 (1976) .......................................................................................................4, 6

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
  140 Cal. App. 4th 515 (2006) ...............................................................................................7

*Kacludis v. GTE Sprint Communications Corp.*,
  806 F. Supp. 866 (N.D. Cal. 1992) ....................................................................................10

*Kelly v. General Tel. Co.*,
  136 Cal. App. 3d 278 (1982) ..............................................................................................10

*Mamou v. Trendwest Resorts, Inc.*,
  165 Cal. App. 4th 686 (2008) ............................................................................................11

*McGrory v. Applied Signal Technology, Inc.*,
  212 Cal. App. 4th 1510 (2013) .................................................................................... 9

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ...................................................................................................... 5, 7

*The Nethercutt Collection v. Regalia*,
  172 Cal. App. 4th 361 (2009) ........................................................................................ 3

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ...................................................................................... 6

*Pashman v. Aetna Ins. Co.*,
  2014 U.S. Dist. LEXIS 98190 (N.D. Cal. July 18, 2014) .............................................. 9

*Reed v. Gallagher*,
  248 Cal.App.4th 841 (2016) ........................................................................................... 5

*Robomatic, Inc. v. Vetco Offshore*,
  225 Cal. App. 3d 270 (1990) .................................................................................... 9, 10

*Shively v. Bozanich*,
  31 Cal. 4th 1230 (2003) .................................................................................................. 3

*Shoemaker v. Friedbert*,
  80 Cal. App. 2d 911 (1947) .......................................................................................... 10

*Slaughter v. Friedman*,
  32 Cal. 3d 149 (1982) ............................................................................................... 4, 11

*Taus v. Loftus*,
  40 Cal. 4th 683 (2000) .................................................................................................... 9

*ZL Technologies, Inc. v. Does 1-7*,
  13 Cal. App. 5th 603 (2017) ...................................................................................... 7, 8

**Statutes**

11 U.S.C. § 105 .................................................................................................................. 2

28 U.S.C. § 157(b) ............................................................................................................. 2

28 U.S.C. § 1334 ................................................................................................................ 2

California Civil Code § 46 ............................................................................................ 3, 4

California Code of Civil Procedure § 47(c) ...................................................................... 9

California Code of Civil Procedure § 48 ......................................................................... 10

WEIL:\97140299\5\58399.0011

California Labor Code § 1053 ...................................................................................................9

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rule 1015(b) ................................................................2

General Order M-390....................................................................................................................2

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), in its capacity as Plan Administrator (the "Plan Administrator") under the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [ECF No. 22737] (the "Plan"), on behalf of BNC Mortgage Inc. ("BNC"), files this reply (the "Reply") in support of the Plan Administrators' Objection to Certain Amended Claims (the "Objection"), dated April 16, 2019 [ECF No. 59622],[1] and in response to the opposition of claimants, Sylvia Vega-Sutfin, Michelle Seymour, Cheryl McNeil, Linda (Weeks) Howard-James, Isabel Guajardo, and Coleen Denise Colombo (collectively, the "Claimants"), dated May 14, 2019 [ECF No. 59716] (the "Opposition"), to and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Objection reflects the latest pleading in the Plan Administrator's continuing attempt to have the Amended Claims filed by the Claimants reduced to a manageable and reasonable amount, whether by litigation, mediation, or settlement.[2]

2. While the Claimants dispute the Plan Administrator's characterization of their defamation claims, they have failed to distinguish the California authority cited by the Plan Administrator or otherwise establish that their defamation claims should survive dismissal.

3. Despite having been given an opportunity to re-plead their defamation claims, and even assuming that all of the allegations in the Amended Claims are true and drawing all reasonable inferences in favor of the Claimants, a substantial portion of each

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Objection.

[2] The Plan Administrator acknowledges, as noted in the Opposition, that the Objection does not pertain to the defamation claim asserted by Ms. Vega-Sutfin. As a result, for purposes of this Reply, the term "Claimants" shall not include Ms. Vega-Sutfin.

Amended Claim must be reduced and/or disallowed on account of the fact that the Claimants' defamation allegations are insufficient as a matter of California law because: (a) the alleged defamatory statements are statements of opinion, and/or (b) BNC is protected by the common interest privilege.

4.      Accordingly, for the reasons set forth in the Objection and in this Reply, the Plan Administrator respectfully requests that the Court reduce and disallow the portion of each Amended Claim (other than that of Ms. Vega-Sutfin) attributable to defamation.

## JURISDICTION

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334 and section 14.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

6.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases (together, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). BNC commenced its Chapter 11 Case on January 9, 2009.

7.      On April 19, 2010, the Court entered the *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors* (as amended and/or modified, the "Claims Procedures Order") [ECF No. 8474].

2

8. On December 6, 2011, the Court approved and entered an order confirming the Plan [ECF No. 23023]. The Plan became effective on March 6, 2012. Pursuant to the Plan, the Plan Administrator, among other things, is authorized to interpose and prosecute objections to claims filed against the chapter 11 estates of LBHI and its affiliates who commenced the Chapter 11 Cases (the "<u>Chapter 11 Estates</u>").

## **CLAIMANTS HAVE FAILED TO STATE A CLAIM FOR DEFAMATION**

9. To prevail on a defamation claim under California law, a plaintiff must plead a defamatory statement concerning plaintiff that is published which causes harm to plaintiff. *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003).

### A. *There Was No Slander Per Se or Slander Per Quod*

10. Under California law, slander is defined as "a false and unprivileged publication, orally uttered" which has at least one of the following five characteristics identified by California Civil Code Section 46:

> (a) charges a person with a crime, or with having been indicted, convicted, or punished for crime; (b) imputes in him the present existence of an infectious, contagious, or loathsome disease; (c) tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; (d) imputes to him impotence or a want of chastity; or (e) which, by natural consequence, causes actual damage.

Cal. Civ. Code § 46.

11. Slander is *per se* if it meets any of the first four characteristics identified by Section 46. An alleged slander that does not fit into the definition of slander *per se* is slander *per quod*. *The Nethercutt Collection v. Regalia*, 172 Cal. App. 4th 361, 367-70 (2009). The difference between slander *per se* and *per quod*—for purposes of allegations in a complaint—is

3

that, if a statement is slanderous *per se*, an action may be brought without alleging special damages. *Slaughter v. Friedman*, 32 Cal. 3d 149, 153-54 (1982).

12. Claimants argue that the alleged defamatory statements are "slanderous *per se*" because the alleged statements in the Amended Claims meet the third prong identified in Section 46. Opposition at 6-7.

13. However, regardless of whether a claimant is attempting to allege slander *per se* or slander *per quod*, the alleged defamatory statement must, under California law, (1) constitute a statement of fact and (2) not be privileged. California Code of Civil Procedure ("C.C.P.") § 46 (defining all categories of slander as an "unprivileged publication"); *Gregory v. McDonnel Douglas Corp.*, 17 Cal. 3d 596, 600 (1976) (holding that an "essential element" of "publication" is that it "contain a false statement *fact*") (emphasis in original).

14. Here, the alleged defamatory statements do not meet either of these criteria, let alone both. Indeed, the alleged statements are properly classified as statements of opinion and are protected by the common interest privilege pursuant to California Civil Code Section 47(c). As such, Claimants' argument that the alleged statements are slanderous *per se* fails. For the same reasons, to the extent the Claimants argue that the alleged statements are slanderous *per quod*, their argument fails.

B. **The Alleged Defamatory Statements Constitute Inactionable Statements of Opinion**

15. In the Opposition, Claimants argue that the alleged statements are not statements of opinion because they can reasonably be understood to be declaring or implying facts capable of being proven false. Claimants provide a chart attempting to show how each alleged statement is capable of being proven false. Opposition at 8. For example, Claimants contend that the statement "stay away from Colombo because she was a 'trouble maker' and was

4

'being watched'" can be proven false because "either Colombo was being watched because she was a trouble maker, or she was not." *Id*. As another example, Claimants contend that the statement "Guajardo 'was stupid for helping out her brother by loaning her the car'" can be proven false because "either Guajardo was stupid or she was not." *Id.* at 9.

16. The United States Supreme Court, however, has held that whether or not a statement can be understood as implying actual facts capable of being proven false depends on whether the "determination . . . can be made on a core of objective evidence." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). For instance, the Supreme Court found that an alleged defamatory statement that "petitioner committed perjury" was "sufficiently factual to be susceptible of being proved true or false" because the determination could be made by comparing the objective evidence of petitioner's testimony before an administrative hearing with his subsequent testimony before the court to determine whether he had lied. *Id*.

17. Here, the determination of whether all of the alleged defamatory statements are capable of being proven false cannot be made on a core of ***objective*** evidence. Rather, whether or not the alleged statements are capable of being proven false depends solely on ***subjective*** grounds and perspectives. *See, e.g.*, *Charney v. Standard General, L.P.*, 10 Cal.App.5th 149, 158 (2017) (finding statement that the plaintiff was investigated by an "independent" third party not defamatory because whether the investigation was independent was "a matter of opinion or subjective judgment"); *Reed v. Gallagher*, 248 Cal.App.4th 841, 856 (2016) (finding statement that "[l]egal records show that [the plaintiff] is an unscrupulous lawyer who was sued for negligence, fraud and financial elder abuse" was non-actionable because whether the attorney was unscrupulous "depend[ed] on one's point of view" and "involve[d] a high degree of subjectivity," and "[s]uch subjective judgment are incapable of being proved true

5

or false"); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal.App.4th 141, 156 (2013) (finding statement that "GetFugu runs an organization for the benefit of its officers and directors, not shareholders and employees" was "subjective opinion with respect to corporate governance at GetFugu" and, therefore, not actionable); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1047 (2008) (finding statements that an employee "slaved . . . without a break," the "employer wanted the employee to work round the clock" and the employer "apparently . . . hasn't heard about working hours" amounted to nonactionable statements of opinion because the determination depended on a subjective belief that working for the company was unpleasant). Further, Claimants have not alleged that the determination could possibly be made based on objective evidence. Nor have Claimants asserted that any such objective evidence even exists.

18.     Claimants unsuccessfully attempt to distinguish certain cases cited in the Plan Administrator's Objection. Opposition at 9-10. Claimants contend that the court's decision in *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596 (1976) is limited to statements made during a labor dispute. But the court in *Gregory* expressly states that the "requirement [that the publication in question must contain a false statement of *fact*] . . . is by no means limited to the labor dispute context." 17 Cal.3d at 600 (emphasis in original).

19.     In a similar vein, Claimants argue that the alleged defamatory statements in *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394 (1999) are distinguishable because they were made in a book, and the alleged defamatory statements in *Gould v. Maryland Sound Indus., Inc.*, 31 Cal.App.4th 1137 (1996) are distinguishable because they were made in an employer's performance evaluation. As California case law makes clear, however, the context in which alleged statements occur is only one factor considered when determining whether alleged statements are opinion or fact. *See Milkovich*, 497 U.S. at 9 (listing the factors). The factors

include (1) the specific language used, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appeared. *Id.* Thus, the principles set forth in *Ferlauto* and *Gould* are not limited to statements made within one specific context and, therefore, support the Objection.

20. Claimants do not address or attempt to distinguish the majority of cases cited in the Plan Administrator's Objection, all of which support the relief requested in the Objection. In *Aviel v. Cal. State Univ.*, 2003 Cal. App. Unpub. LEXIS 11173, at *31 n.6 (Nov. 25, 2003), the court held that a statement that an employee was "a snake, a dishonest trouble maker, that sues his employer and could not be trusted" was inactionable. Similarly, in *Goyet v. Dean*, 2003 Cal. App. Unpub. LEXIS 6255, *37 (June 26, 2003), the court had "no difficulty discerning that the defendants' characterizations of [plaintiff] as a 'trouble-maker,' a 'shady character,' a liar or a 'crook' and statements that [plaintiff] would 'steal all of the Association's money' in the reserves if elected are not actionable as false statements of fact" but are instead "broad, unfocused and wholly subjective" comments reflecting the defendants' personal opinions about [plaintiff] and/or his conduct." *See also Decambre v. Rady Children's Hosp.-San Diego*, 235 Cal. App. 4th 1, 27 (2015) (statement that doctor "was not a team player" was inactionable statement of opinion); *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 530 (2006) (holding that "[s]atirical, hyperbolic, imaginative, or figurative statements are not actionable.").

21. Finally, in *ZL Technologies, Inc. v. Does 1-7*, 13 Cal. App. 5th 603 (2017), the court noted that:

> Use of *hyperbolic, informal, crude or ungrammatical language, satirical tone, or vituperative, juvenile name-calling* provide support for the conclusion that offensive comments were nonactionable opinion. Similarly, *overly vague statements, and*

7

> *generalized comments lacking any specificity as to the time or place* of alleged conduct may be a further signal to the reader there is no factual basis for the accusations.

*Id.* at 624 (internal quotation marks omitted and emphasis added).

The *ZL Technologies* court held that a current employee's review of his company, including that "management lacks the experience [or] focus to drive growth," has "no transparency or accountability for their decisions," and "very poor for mentoring or professional development" was comprised entirely of generalized comments, which undisputedly communicated nonactionable opinions. *Id*. at 628.

22.     Based on the above authorities, all of the alleged defamatory statements set forth on Exhibit B of the Objection and described as statements of opinion are clearly inactionable.

C.     **BNC Is Protected By the Common Interest Privilege**

23.     The statements set forth on Exhibit B to the Objection also are protected by the common interest privilege, because they are statements made for a legitimate purpose. As explained by the California Appellate Court:

> The common interest privilege applies to statements by management and coworkers to other coworkers explaining why an employer disciplined an employee. Clearly, an employer is privileged in pursuing its own economic interests and that of its employees to ascertain whether an employee has breached his or her responsibilities of employment and if so, to communicate, in good faith, that fact to others within its employ so that (1) appropriate action may be taken against the employee; (2) the danger of such breaches occurring in the future may be minimized; and (3) present employees may not develop misconceptions that affect their employment with respect to certain conduct that was undertaken in the past.

*McGrory v. Applied Signal Technology, Inc.*, 212 Cal. App. 4th 1510, 1538 (2013); *see also Pashman v. Aetna Ins. Co.*, 2014 U.S. Dist. LEXIS 98190, at *61 (N.D. Cal. July 18, 2014) ("In

8

fact, employers may share a common interest in an employee's or former employee's performance with not only a supervisory committee or board of directors, but also with other employees in the same company or even third parties.").

24. The alleged defamatory statements concerning McNeil from a BNC manager to a prospective employer are also clearly protected by the "common interest privilege." Claimants' argument to the contrary is demonstrably wrong. Pursuant to Section 47(c), the common interest privilege "applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant." C.C.P. § 47(c); *see also* California Labor Code § 1053 (granting a former employer the right to make truthful statements about the reason why an employee was fired or why they quit if they are asked by a potential employer).

25. Although the common interest privilege may be inapplicable in certain situations if there is actual malice, the Claimants cannot defeat the application of the common interest privilege here because they have failed to adequately allege specific facts that the statements by BNC were made with malice. Cal. Civ. Code § 47(c). Claimants assert that "BNC cannot show an absence of malice necessary to support the privilege;" however, the burden of proving and alleging malice properly lies with Claimants. *See Taus v. Loftus*, 40 Cal. 4th 683, 721 (2000) (holding that "plaintiff bore the burden of establishing a prima facie case that the[] statements were made with actual malice"); *Robomatic, Inc. v. Vetco Offshore*, 225 Cal. App. 3d 270, 276 (1990) (holding that a "general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him."); *see also Kelly v. General Tel.*

9

*Co.*, 136 Cal. App. 3d 278, 285 (1982) (plaintiff must allege facts showing the publication was motivated by hatred or ill will toward plaintiff); *Biggins v. Hanson*, 252 Cal. App. 2d 16, 21 (1967) (plaintiff must allege facts showing the person uttering the defamation did not believe it to be true); *Blank v. Kirwan*, 39 Cal.3d 311, 318 (1985) (holding that the burden of proving whether there is a reasonable possibility that a defect in a complaint can be cured by amendment is squarely on the plaintiff).

26. Claimants' only allegation regarding malice is that "Defendants' false publications about Plaintiffs were made with malice and with intent to injure Plaintiffs, damage their reputations, and interfere with their employment." Amended Claims, at 2. Such a general allegation of malice is not sufficient. Courts have held that a "plaintiff must allege detailed facts showing defendant's ill will towards him." *Robomatic, Inc. v. Vetco Offshore*, 225 Cal. App. 3d 270, 276 (1990); *see also Kacludis v. GTE Sprint Communications Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) (general allegations that statements were made "with malice" or with "no reason to believe the statements were true" are insufficient to show "malice").

27. Claimants' attempt to establish that BNC employees made the statements bearing actual malice, hatred or ill will fails because the only facts Claimants have alleged are the purported defamatory statements themselves. California law is clear that malice cannot be inferred from the mere fact that an alleged statement makes a defamatory charge. C.C.P. § 48 (malice cannot be inferred from the statement); *Shoemaker v. Friedbert*, 80 Cal. App. 2d 911 (1947).

28. Finally, Claimants' bare-bones allegation that they "were retaliated against" fails because the supposed reasons that Claimants provide for why BNC bore Claimants ill will fall substantially short of allegations that California courts have accepted as sufficient for

10

a showing of actual malice. For example, in *Mamou v. Trendwest Resorts, Inc.*, 165 Cal. App. 4th 686, 729-31 (2008), the plaintiff alleged that his supervisors had been hostile to him as a member of the "Syrian regime," had been "so disappointed [in him] that you can't even put it in words," and had vowed to "get" or "get even" with him. In *Slaughter v. Friedman*, 32 Cal. 3d 149, 157 (1982), the plaintiff alleged that defendants had previous quarrels with, rivalries involving, and ill feeling toward Plaintiff arising out of services plaintiff had rendered. Specific allegations similar to those in *Mamou* and *Slaughter* are noticeably absent from Claimants' Amended Claims.

29. Accordingly, the statements alleged in the Amended Claims pertaining to the Claimants are insufficient to defeat the common interest privilege.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

30. For all the foregoing reasons, the Plan Administrator requests that the Court enter the proposed order attached to the Objection (a) disallowing any damages for defamation included in the Amended Claims (other than with respect to Ms. Vega-Sutfin) and (b) approving the Claim Reduction Procedures and directing the Claimants to comply with such procedures.

Dated: August 6, 2019
      New York, New York

/s/ Jacqueline Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Jacqueline Marcus
Garrett A. Fail

KEESAL, YOUNG & LOGAN LLP
450 Pacific Avenue
San Francisco, California 94133
Telephone: (415) 398-6000
Lisa Bertain

*Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates*