SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Solomon J. Noh
Randall Martin
Telephone:  (212) 848-4000
Facsimile:  (646) 848-7174

*Attorneys for the Maverick Entities*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------- x
                                       :
                                       :
                                       :
In re:                                 :      Chapter 11
                                       :
LEHMAN BROTHERS HOLDINGS INC., et al., :      Case No. 08 – 13555 (SCC)
                                       :
                    Debtors.           :      (Jointly Administered)
                                       :
                                       :
                                       :
-------------------------------------------------------------- x
```

**OPPOSITION OF THE MAVERICK ENTITIES TO THE BRIEF ON REMAND IN**
**SUPPORT OF PLAN ADMINISTRATOR'S FIVE HUNDRED NINETEENTH**
**<u>OMNIBUS OBJECTION TO CLAIMS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

PRELIMINARY STATEMENT ........................................................... 1

BACKGROUND ............................................................................... 4

ARGUMENT ................................................................................... 8

I.      The Lehman Entities Had No Right of Setoff, Exercised No Right of Setoff, and Failed to Honor Any Setoff Obligations on the Petition Date. ......... 8

        A.      The Lehman Entities Had No Right of Setoff on the Petition Date ............ 9

        B.      The Supreme Court Has Held That Setoff Requires Affirmative Action and LBIE Took No Such Action ..................................................... 13

        C.      Even If the Parties Had Agreed to Netting or Setoff, Maverick Would Be Entitled to a Claim of $118.1 Million, Reflecting the Protection of Maverick's Setoff Rights ..................................................... 14

II.      Maverick is Entitled to Assert the Full Value of its $118.1 Million Claim Against the LBHI Estate. ......................................................... 15

III.      LBHI Guaranteed All of LBIE's Obligations, Including All Obligations Related to Setoff, Netting, and the Payment of All Amounts Owed to Maverick ......................................................................... 17

        A.      The LBHI Guarantee Covered All "Obligations" and Was Not Limited to the Payment of the "Net" Amount Owed ................................ 17

        B.      The Maverick Proofs of Claim Asserted Gross Claims for the Full Value of All Custodied Cash and Securities and Expressly Preserved Maverick's Setoff Rights ..................................................... 18

IV.      LBHI's Other Arguments Lack Merit ................................................ 20

        A.      Maverick is Not Seeking to Recover a Greater Amount in Bankruptcy Than It Can Achieve Outside of Bankruptcy ............................... 20

        B.      Maverick Is Not Asserting That Its Claims Are Based on Events or Valuations That Occurred After the Petition Date ...................... 20

        C.      The District Court Did Not Fail to Dispose of LBHI's Prior Argument Concerning Consequential Damages ....................................... 21

        D.      Maverick's Allegations Are Plausible ....................................... 21

CONCLUSION..................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Baker v. Nat'l City Bank*, 511 F.2d 1016 (6th Cir. 1975) ...............................................13

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110
   (2d Cir. 2014) .......................................................................................................12

*Citizens Bank v. Strumpf*, 516 U.S. 16 (1995) ..........................................................2, 13

*Clarkson Co. v. Shaheen*, 533 F. Supp. 905 (S.D.N.Y. 1982) .......................................13

*In re DeLaurentiis Entm't Grp., Inc.*, 963 F.2d 1269 (9th Cir. 1992) .............................4

*In re Dillard Ford, Inc.*, 940 F.2d 1507 (11th Cir. 1991) ..................................................9

*Durham v. SMI Indus. Corp.*, 882 F.2d 881 (4th Cir. 1989).............................................9

*United States ex rel. IRS v. Norton*, 717 F.2d 767 (3d Cir. 1983) ..................................9

*Ivanhoe Bldg. & Loan Ass'n v. Orr*, 295 U.S. 243 (1935) .................................1, 15, 16

*In re LightSquared Inc.*, No. 12-12080 (SCC), 2014 WL 5488413 (Bankr. S.D.N.Y.
   Oct. 30, 2014) ......................................................................................................16

*Mahmood v. Cty. of Suffolk*, 166 A.D.3d 751, 88 N.Y.S.3d 577 (N.Y. App. Div. 2018)..............12

*Marcus Dairy, Inc. v. Jacene Realty Corp.*, 638 N.Y.S.2d 779 (App. Div. 1996) .........9

*In re McLean Indus., Inc.*, 90 B.R. 614 (Bankr. S.D.N.Y. 1988) ..................................10

*In re Pub. Serv. Co.*, 884 F.2d 11 (1st Cir. 1989) ...........................................................9

*In re Treco*, 240 F.3d 148 (2d Cir 2001)...................................................................2, 14

**Statutes & Rules**

Bankr. Code tit. 11, ch. 11 ........................................................................................5, 7, 12

Bankruptcy Code § 553 ...............................................................................................2, 9

Bankruptcy Code § 562 ...................................................................................................7

Bankruptcy Rule 2004 ....................................................................................................7

English Insolvency Act 1986 ..........................................................................................5

iii

TO THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE:

Maverick Long Enhanced Fund, Ltd., Maverick Neutral Levered Fund, Ltd.,

Maverick Neutral Fund, Ltd., Maverick Fund USA, Ltd., Maverick Fund II, Ltd. and Maverick

Fund, L.D.C. (collectively, the "**Maverick Entities**" or "**Maverick**") hereby submit this

response to the Brief on Remand in Further Support of Plan Administrator's Five Hundred

Nineteenth Omnibus Objection to Claims (No Liability Claims) [Docket No. 59807], submitted

by Lehman Brothers Holdings Inc. ("**LBHI**") on July 3, 2019 (the "**LBHI Brief**") with respect to

its guarantee liability on behalf of Lehman Brothers International (Europe) ("**LBIE**").[1]  In

support thereof, the Maverick Entities respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      LBHI's latest motion presents a simple question:  can a guarantor be

excused from its legal obligations on the basis of a setoff that never occurred?  The answer is no.

Maverick did not receive the benefit of any setoff, or netting, calculated as of the date of the

Lehman entities' bankruptcy filings.   Because the District Court has now ruled that the date for

calculating LBHI's guaranty liabilities was the Petition Date (as defined herein), LBHI can no

longer argue that the value that LBIE was obligated to pay Maverick was anything less than the

full $118.1 million that Maverick was owed on such date.  Under the United States Supreme

Court's *Ivanhoe Building & Loan Ass'n v. Orr*, 295 U.S. 243, 246-47 (1935), decision, Maverick

is entitled to assert the full amount of such claim against each of LBIE and LBHI, until it has

been paid in full.

---

[1] This brief addresses only those issues directly raised in LBHI's brief on remand.  Maverick
expressly reserves all of its prior rights, arguments, and claims, including all claims for damages and
compensation addressed in prior briefs or the Maverick proofs of claim, regardless of whether
discussed herein.

2.    As a threshold matter, LBIE had no right of setoff on the Petition Date; in fact, LBIE expressly contracted with Maverick to ensure that a LBIE bankruptcy filing would *not* result in automatic acceleration and setoff of mutual debts.  ¶¶ 22 and 25, *infra*.  LBHI itself has also previously admitted to this Court that it had no setoff rights under the relevant contracts unless Maverick defaulted, which never happened.  Furthermore, the Supreme Court has held that a setoff does not occur unless and until a party takes affirmative action to exercise and record such a right.  *Citizens Bank v. Strumpf*, 516 U.S. 16, 20 (1995).  No such affirmative action was taken here.

3.    But even if this Court were to ignore the fact that the Lehman entities had no setoff rights on the Petition Date, and ignore that they never exercised such rights, it would not change the proper legal result here.  The United States Court of Appeals for the Second Circuit, and the Bankruptcy Code itself, expressly recognize that a party entitled to a setoff is also entitled to an allowed claim to protect that setoff right.  Bankruptcy Code § 553; *In re Treco*, 240 F.3d 148, 162 (2d Cir 2001).  Thus, it is not enough that LBHI can supposedly point to what it claims was a setoff right as of the Petition Date.  The fact of the matter is that LBIE did not recognize or honor the result of any supposed Petition Date setoff.  Indeed, if LBHI were correct that the parties had agreed that their mutual debts were always subject to setoff, that can only further support Maverick's claim, because it would be an admission that Maverick was entitled to an allowed claim in the full amount of the setoff that LBIE never honored.

4.    LBHI's other misguided argument is its claim that Maverick is somehow seeking to recover more than it could have recovered outside of bankruptcy, or an amount greater than would be allowed under state law.  Specifically, LBHI argues that Maverick could only have recovered a maximum cash distribution of $4.3 million if Maverick had closed out its

accounts and positions moments before the Lehman bankruptcies.  In asking what the parties'

respective rights would have been under state law, LBHI has asked the right question but

provided a badly misleading answer.  What LBHI overlooks is the fact that such a close out

would have resulted in Maverick receiving exactly the same amount it demands here (*i.e.*, $118.1

million), reflecting a cash distribution of $4.3 million *in addition to the extinguishment of all of

the Maverick Entities' debts to LBIE, in an amount in excess of a hundred million dollars*.

The extinguishment of that debt is exactly what LBIE failed to honor and LBHI remains liable

for that breach.

        5.      Indeed, the one thing that LBHI more or less gets right is that the present

dispute revolves around a failure to recognize legitimate setoff rights.  But, it was Maverick's

setoff rights that have not been honored, either on the Petition Date or at any other point in time.

As this Court has correctly intuited from the outset, "commercial practice and commercial

reality" should have resulted in the parties' mutual exposure being measured "on a net basis".

March 24, 2017 Hearing Transcript [Docket No. 55115] ("Disallowance Transcript"), 75.

Maverick fully agrees with this Court's general intuition on this matter, which is well-grounded

in settled principles of law articulated by both the Supreme Court and the Second Circuit.   But it

is Maverick that should have been entitled to a setoff of every dollar of value in respect of the

assets it had deposited with LBIE, measured as of the Petition Date, before LBIE was able to

collect the amounts that it was owed by Maverick.  LBIE refused to allow such a setoff, either on

the Petition Date or in 2012, and LBHI is now liable for the remainder.  Upon allowance of its

claims, Maverick would recover approximately $16.2 million of the $30 million it ultimately

paid to LBIE.  That would mean Maverick will have paid the Lehman entities a total of

approximately $13.8 million, an amount that closely approximates (but exceeds) the net amount

that Maverick would have owed LBIE if the parties had agreed to a Petition Date setoff. That is exactly the correct economic, legal, and equitable result that this Court has long suggested should be the outcome here.[2]

## BACKGROUND

6.      The factual and procedural background of these claims has been described in greater detail in prior Maverick submissions.[3]  In light of the Court's familiarity with those factual recitations, which Maverick incorporates herein by reference, Maverick states below only an abbreviated version of the relevant facts.

7.       Each of the legally distinct Maverick Entities was party to a separate prime brokerage agreement (the "**Prime Brokerage Agreements**"), pursuant to which certain Lehman entities, including LBIE, agreed to maintain custody of certain cash and securities of the Maverick Entities.  A representative example of such an agreement is attached hereto as Exhibit A.

8.      LBIE was at all times obligated to return Maverick's cash and securities to Maverick, net of amounts used to extinguish any debts that Maverick owed to LBIE under certain contracts concerning the borrowing of securities to facilitate "short" trades (*i.e.*, Global Master Securities Lending Agreements, each a "**GMSLA**") and margin loans (*i.e.*, Margin Lending Agreements).  Representative examples of such agreements are attached hereto as Exhibit B and Exhibit C.

---

[2] *See also In re DeLaurentiis Entm't Grp., Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992) ("[T]he primacy of setoffs is essential to the equitable treatment of creditors. . . . Absent a setoff, a creditor . . . is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it.  It was to avoid this unfairness that setoffs were allowed in bankruptcy in the first place.").

[3] *See, e.g.*, Docket No. 50761 and 53435.  LBHI has undertaken to provide the Court with copies of these and other prior submissions.

9.     LBIE's obligations under each of these agreements were the subject of multiple guarantees, including an absolute and unconditional guarantee of payment extended by LBHI (the "**LBHI Guarantee**").  Attached hereto as <u>Exhibit D</u>.

10.    On September 15, 2008 (the "**Petition Date**"), LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On the same date, LBIE entered English administration proceedings pursuant to the English Insolvency Act 1986.

11.    Each of the Maverick Entities timely filed a proof of claim against LBHI, demanding a payment of all amounts owed under the Prime Brokerage Agreements and expressly preserving their rights of setoff (the "**Maverick Claims**").  A representative example is attached hereto as <u>Exhibit E.</u>

12.    On the Petition Date, the Maverick Entities were owed an aggregate of approximately $118.1 million, reflecting the value of cash and securities on deposit with LBIE. The Maverick Entities also owed LBIE approximately $129.6 million, reflecting the value of certain margin loans and loans of securities to facilitate short trades.  If those amounts had been subject to automatic netting or setoff on the Petition Date (which they were not), the Maverick Entities would have owed LBIE an aggregate amount of approximately $11.5 million.  Only one of the Maverick Entities (*i.e.*, Maverick Fund II) was a net debtor to LBIE on the Petition Date (for $15.9 million).  Each of the other Maverick Entities was a net creditor, being owed a total of approximately $4.3 million by LBIE on a net basis.[4]

13.    Years after LBIE sought bankruptcy protection under English law, LBIE and Maverick commenced discussions regarding the resolution of the parties' respective

---

[4] None of the Maverick Entities had agreed to satisfy the debts of the others and each was a legally separate entity with distinct legal rights and liabilities.

obligations.  The parties engaged in a comprehensive reconciliation process to determine the

precise quantities of cash and securities that were owed as of the Petition Date and agreed to the

amounts as stated in this objection.  During the course of settlement negotiations, Maverick

insisted that the parties' positions should have been treated as though they had been closed-out

and setoff on the Petition Date (a position consistent with this Court's frequently expressed

intuitions about what would have been commercially reasonable).  On such a basis, Maverick

would have paid LBIE a total of only $11.5 million (instead of the $30 million ultimately paid).

LBIE refused to treat the parties' obligations as having been setoff on the Petition Date, instead

adopting the view that all of Maverick's positions had continued to be "open," with long and

short positions to be valued as of the date on which the parties agreed to a final settlement.

Maverick rejected that legal position, pointing out, among other things, that LBIE had long been

in breach of all of its contractual obligations, and was contractually obligated to honor the full

amount that it owed Maverick on the Petition Date.

14.     Because LBIE never accepted that position, and because LBIE was able to

invoke favorable provisions of English insolvency law that, according to LBIE, permitted it to

escape its obligations to provide Maverick the full $118.1 million owed on the Petition Date,

Maverick was effectively compelled to enter into a settlement agreement with LBIE on March

30, 2012 (the "**LBIE Settlement Agreement**").

15.     Under the LBIE Settlement Agreement, Maverick received only a fraction

of the $118.1 million that it was owed on the Petition Date, receiving instead a setoff of not more

than $101.9 million, as compared to the $118.1 million setoff to which Maverick was

contractually entitled under New York law.  Because LBIE failed to provide Maverick credit for

the full $118.1 million owed, Maverick was forced to pay LBIE $30 million, when in fact it had

only ever owed LBIE $11.5 on the Petition Date.  In other words, LBIE did not honor its legal

obligations to provide Maverick the full value of the assets it had custodied, and to use such

value to reduce the amounts owed to it by Maverick on a dollar-for-dollar basis.  Maverick

therefore preserved its rights to pursue LBHI for the full remaining balance and for any other

amounts owed as a result of LBIE's breaches of contract and LBIE's failure to provide netting or

setoff in the full amount that Maverick would have been entitled to under applicable non-

bankruptcy law.

16.    During the course of these chapter 11 proceedings, LBHI has engaged in

extensive Bankruptcy Rule 2004 discovery, and has received comprehensive document

productions from Maverick, including documents that establish that:  (1) LBIE's English law

fiduciary representatives and insolvency professionals have agreed to and confirmed the

accuracy of the amounts of cash and securities that LBIE owed Maverick on the Petition Date;

and (2) LBIE has always refused to acknowledge that any setoff  occurred on the Petition Date or

at any date prior to 2012.

17.    On September 3, 2018, the District Court issued an Opinion & Order (the

"**District Court Order**"), remanding this matter to this Court for further proceedings after

reversing the Court's prior rulings on the application of section 562 of the Bankruptcy Code and

certain exculpation and limitation of liability clauses.  The District Court also made several

rulings and findings germane to this remanded proceeding, including the following (among

others):

    i.    "Maverick was under no obligation to pursue collection efforts
against LBIE and in the event of a default could proceed directly
against LBHI" (District Court Opinion & Order, 2); and

     ii.    LBIE had defaulted under the terms of its contracts with Maverick and the damages arising from such breach must be assessed as of the Petition Date (*id*. 3 and 16).

18.    During a January 14, 2019 status conference, this Court stated that the next proceeding before it should be based on "limited discovery" and that the proceedings were now "beyond the sufficiency stage".  January 14, 2019 Hearing Transcript [Docket No. 59467], 13 and 15.  LBHI disregarded both those rulings, refusing to discuss pre-hearing discovery with Maverick and has now filed yet another motion seeking to assess the sufficiency of Maverick's claims on the basis of its still evolving setoff theories.  The LBHI briefs on the subject of netting that will be assessed at the next hearing represent LBHI's fifth and sixth briefs seeking to dispose of the Maverick Claims without the benefit of any evidence and without allowing Maverick the basic right to a hearing on the allowance of its claims, more than eleven years after the Lehman entities first defaulted on their obligations to Maverick.  Moreover, by LBHI's own admission, the present motion cannot even resolve the Maverick Claims, because with respect to all but one such claim, LBHI is seeking only to cap Maverick's damages, rather than to have the claims expunged (which LBHI concedes cannot happen, because Maverick was owed millions of dollars even if LBHI's current legal positions are accepted by this Court).

## **ARGUMENT**

**I.**    **The Lehman Entities Had No Right of Setoff, Exercised No Right of Setoff, and Failed to Honor Any Setoff Obligations on the Petition Date.** LBHI argues that the amounts that LBIE owed Maverick on the Petition Date, which had been guaranteed by LBHI, were subject to setoff or netting on such date.  In fact, Lehman appears to be arguing that the only amount the parties ever actually owed one another, at any moment in time, was the net amount owed after accounting for a global closing out and setoff of all amounts owed under all contracts between the parties.  This argument fails for at least three independent reasons.  *First*,

LBIE had no right of setoff on the Petition Date. *Second*, even if it had setoff rights, LBIE never

took action to exercise any such setoff rights on the Petition Date, as required under Supreme

Court precedent. *Third*, even if Maverick and LBIE had contractually agreed that their

respective debts were subject to setoff on the Petition Date, as LBHI argues, this simply means

that Maverick held a claim protecting the full value of any such contractually required setoff (as

well as a claim for the payment of any net balance). Notably, LBIE never fully satisfied such a

claim (whether on the Petition Date or at any other time), because LBIE never provided

Maverick the full economic benefit of the setoff that LBHI now argues was mandatory. It is not

enough for LBHI to point to a supposed right or obligation of setoff, when no setoff in fact

happened or was honored. For each of these reasons, LBHI's renewed objection should be

denied.

### A.    The Lehman Entities Had No Right of Setoff on the Petition Date

20.    The Bankruptcy Code preserves but does not create rights of setoff that do

not already exist under applicable state law. Bankruptcy Code § 553; *In re Dillard Ford, Inc.*,

940 F.2d 1507, 1512 (11th Cir. 1991); *In re Pub. Serv. Co.*, 884 F.2d 11 (1st Cir. 1989); *Durham

v. SMI Indus. Corp.*, 882 F.2d 881 (4th Cir. 1989); *United States ex rel. IRS v. Norton*, 717 F.2d

767 (3d Cir. 1983). Here, the question of whether LBIE had a right of setoff is resolved bythe

parties' contracts.[5]

---

[5] Maverick has noted on several prior occasions that LBHI, as a guarantor, had no independent right
of setoff that could be applied to reduce the amount of its guarantee obligation. *Marcus Dairy, Inc.
v. Jacene Realty Corp.*, 638 N.Y.S.2d 779, 780 (App. Div. 1996) (collecting cases and holding that
under New York law "a guarantee agreement is separate and distinct" from the guaranteed contract
and that as a result "a party who enters into an unconditional guarantee of payment may not assert
setoffs or defenses which arise independently from the guarantee"). LBHI has never taken issue with
this uncontroversial proposition and appears to argue solely on the basis of setoff or netting rights
that it believes were supposedly available to LBIE.

21.    As Maverick has previously pointed out, under the Prime Brokerage Agreements, the parties expressly agreed that LBIE would not have the right to "set off or offset any obligation" owed to LBIE under the GMSLAs and Margin Lending Agreements unless Maverick had defaulted (which never happened).  Prime Brokerage Agreement, ¶ 4.  The GMSLA is equally if not more clear.  Section 10.2 of that contract states that a bankruptcy filing by a defaulting party can result in an automatic acceleration and setoff of all mutual debts between the parties.  Critically, however, section 9(v) of an addendum to the GMSLA states that the automatic setoff provision under section 10 will only ever apply if the party seeking bankruptcy protection was Maverick.   In other words, *the parties expressly agreed that a LBIE bankruptcy would not result in an automatic setoff of all mutual debts*.  *Id*.  The contracts could not be more clear.  *In re McLean Indus., Inc.*, 90 B.R. 614 (Bankr. S.D.N.Y. 1988) (collecting cases and holding setoff rights do not "survive" when they are "inconsistent with an express agreement between the parties").  Indeed, LBIE's express agreement that its own bankrupcty would not give rise to setoff rights is a fact pattern nearly identical to that in *McClean*, where "by selectively crossing out all references to setoff" a debtor "manifested an obvious and deliberate intent to….preclude setoff".  *Id*.

22.    Although it has now changed its tune, LBHI previously admitted to this Court, during oral argument, that Maverick's reading of the contract is correct:

> Now, we made a mistake in our opening brief, we cited to Your Honor the netting provision in the prime brokerage agreement, which provides for netting.  And [Maverick] correctly pointed out in their opposition that that only applied if Maverick was in default.

Disallowance Transcript, 18.  LBHI's prior admission should be treated as binding.[6]  LBIE has

---

[6] LBHI coupled its admission that it had no setoff rights under the parties' existing contracts with a frivolous argument that a cumulative rights clause in the Prime Brokerage Agreement allowed LBHI to invoke contractual rights under agreements that the parties had long ago terminated.  LBHI

also made the same admission on several occasions and during negotiations in 2012 LBIE

always refused to acknowledge that any setoff had occurred on the Petition Date.

23.    LBHI now asks this Court to ignore its own prior admission, and the

admission of its primary obligor.  In doing so, LBHI points to a handful of inapposite contractual

provisions, none of which address the question of a setoff triggered by an LBIE bankruptcy, to

argue that LBIE was entitled to a setoff on the Petition Date.  From the perspective of LBHI, the

only amount that LBIE ever owed Maverick (and hence the only amount that was guaranteed)

was the net amount owed after accounting for a setoff of all mutual debts under the parties'

distinct contracts.  Yet none of the provisions cited by LBHI actually say that:  in fact none

mention setoff or netting at all.  Instead, they deal with entirely different subject matters, such as

the grant of a security interest (Prime Brokerage Agreement ¶ 3), mandatory margin calls (Prime

Brokerage Agreement ¶ 17), and rights of rehypothecation (Prime Brokerage Agreement ¶ 19).

LBHI's quotations of the relevant contracts also frequently omit critical language, such as

LBHI's description of Prime Brokerage Agreement ¶ 3, which applies only in the "event of a

breach or default by" Maverick.

24.    But a lengthy exploration of the various provisions relied on by LBHI is

entirely unnecessary.  The chief flaw in LBHI's contractual interpretation is that it completely

ignores the only provisions of the prime brokerage contracts that actually do reference setoff

rights in the context of an LBIE insolvency (*i.e.*, sections 4 of the Prime Brokerage Agreement,

and section 10.2, as amended by addendum section 9(v), of the GMSLA).  LBHI's reading of the

contract simply cannot be squared with the fact that the parties expressly negotiated specific

contractual clauses that dictate whether, when, and under what circumstances the parties'

---

appears to have abandoned that unpersuasive argument, which was inconsistent with both the plain
language of the cumulative rights clause and common sense.

obligations under separate contracts would be subject to setoff.  Those provisions would be entirely meaningless and redundant if, as LBHI now tries to argue, the parties had in fact agreed that all amounts owed under the various contracts were always subject to some sort of automatic or deemed netting or setoff.  LBHI's reading of the parties' contracts thus runs afoul of the basic principle of contractual interpretation that a clear provision of a contract should not be interpreted in a manner that renders it redundant.  *Mahmood v. Cty. of Suffolk*, 166 A.D.3d 751, 753, 88 N.Y.S.3d 577, 579 (N.Y. App. Div. 2018) ("a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." ) (internal quotation marks, citation, and alterations omitted); *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) ("The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.") (internal quotation marks, citation, and alterations omitted).  The parties agreed to specific circumstances that would trigger a setoff, and specific circumstances that would not:  a LBIE bankruptcy did not trigger setoff rights, nor had the parties agreed to some sort of "automatic" netting, as both LBHI and LBIE have previously admitted.

25.    As a result, because LBIE had no right of setoff on the Petition Date, LBIE had an obligation to Maverick for the full $118.1 million owed on such date.[7]

---

[7] Needless to say, and as Maverick has always admitted (including in the proofs of claim filed in these chapter 11 proceedings), even in the absence of a matured right of setoff, LBIE was always going to be entitled to recover the full amounts it was owed under the contracts with Maverick. LBIE did in fact achieve at least such a full recovery of all such amounts, years after the fact, in connection with the LBIE Settlement.  Critically, therefore, this is not a case in which LBIE and LBHI will be deprived of their right to recover the full amounts that they were owed.  Indeed, those amounts have already been recovered in full.  Maverick has never received full credit or payment of the amounts it was owed, because LBIE never honored its full payment or setoff obligations, and Maverick is now entitled to assert those rights against LBHI.

    **B.**    **The Supreme Court Has Held That Setoff Requires Affirmative Action and LBIE Took No Such Action**

    26.    Even assuming, *arguendo*, that LBIE did have a right of setoff on the Petition Date, it never decided to exercise that right, never took action to accomplish the setoff, and never recorded any such setoff.  That alone is fatal to LBHI's argument that a setoff occurred on or before the Petition date, because the Supreme Court has held that the taking of such an action is a necessary element of any setoff.  *Citizens Bank v. Strumpf*, 516 U.S. at 19 ("[A] setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff."); ; *Baker v. Nat'l City Bank*, 511 F.2d 1016, 1018 (6th Cir. 1975) ("setoff is effected only when intent to setoff is accompanied by some act of consummation and evidence of the consummated setoff"); *see also Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 925 (S.D.N.Y. 1982) (same). .

    27.    Even if applicable law did not impose these threshold obligations on a party seeking to assert a claim of setoff, the parties' contracts also include provisions making it clear that setoff required affirmative action to be taken on a date certain.  For example, section 4 of the Prime Brokerage Agreements makes it clear that LBIE's setoff rights (which were not triggered in any event) would require LBIE to go through the steps of liquidating Maverick's collateral. Section 4 also makes clear that setoff rights can be exercised "at any time and from time to time", which is obviously inconsistent with LBHI's strained argument that the parties' mutual obligations were subject to some type of constant and automatic netting.  Indeed, it is no surprise that the parties did not agree that their positions would be automatically netted on a constant basis, because to do so would require the parties to close out positions, liquidate

collateral, and take other formal steps.  Here, LBIE never complied with those obligations on or

prior to the Petition Date (and had no right to do so in any event).[8]

### C.     Even If the Parties Had Agreed to Netting or Setoff, Maverick Would Be Entitled to a Claim of $118.1 Million, Reflecting the Protection of Maverick's Setoff Rights

28.     Even on LBHI's flawed reading of the contract—under which the parties

always have a right of setoff or netting and need take no action to exercise such rights—

Maverick held a valid claim against LBIE for $118.1 million on the Petition Date.  According to

LBHI, the parties agreed that LBIE would always be obligated to return every dollar owed to

Maverick (and vice versa).  LBHI also points out that under most or all circumstances LBIE

would have been entitled to satisfy the amounts LBIE owed to Maverick by applying such

amounts to extinguish debts owed by Maverick to LBIE.  Yet it is puzzling why LBHI thinks any

of this supports the position that Maverick could not assert a gross claim against both LBIE and

LBHI for the full amount it was owed.  To the contrary, under settled Second Circuit authority,

Maverick's guaranteed right to a dollar-for-dollar setoff should itself be treated as a claim within

the meaning of the Bankruptcy Code.  *In re Treco,* 240 F.3d 148, 162 (2d Cir. 2001) (Bankruptcy

Code treats a right of setoff as an allowed claim that can be asserted against a foreign bankrupt

seeking turnover of funds).  In other words, Maverick had an allowable claim to ensure that it

---

[8] The requirements that setoff rights be exercised and memorialized are no mere technicalities.  They play an important role in preventing precisely what LBHI is trying to do now.  It would be absurd to allow a party to declare, many years after the fact, and with no evidence, that it believes a setoff was taken on some specific date many years in the past.  That would be particularly unfair and unreasonable in a case such as this, where the values of Maverick's long and short positions were constantly fluctuating over time, and a party could, with hindsight, cherrypick a setoff date that minimized its net exposure.  To avoid that result, both applicable law and the parties' contracts impose clear requirements that any act of setoff be affirmatively declared and memorialized on a date certain.  Here, not only did LBIE not take any such action, it affirmatively disavowed the occurrence of any setoff on the Petition Date.  This provides a second independent basis to conclude that LBIE had an obligation to Maverick for the full $118.1 million that was owed on the Petition Date, unreduced by any setoff.

received precisely the treatment that LBHI now argues Maverick was entitled to (*i.e.*, a claim

reflecting an entitlement to a combination of setoffs and payments aggregating $118.1 million).

If anything, LBHI's reading of the parties' contracts seemingly makes it *even more clear* that

Maverick held claims against LBIE totaling $118.1 million on the Petition Date.  It is of no

relevance that a substantial majority of the Maverick Entities' claims may have been claims

reflecting a right of setoff (*i.e.*, a right to demand that LBIE apply any Maverick collateral that it

held to extinguish an offsetting amount of the Maverick Entities' debts to LBIE on the Petition

Date).  That right was itself a claim under settled federal bankruptcy law and LBHI's contention

that the parties had agreed to a mutual setoff of all respective debts on the Petition Date, if

accurate, would be a self-defeating admission.  *Id*.

29.    The fact of the matter is, whether Maverick is correct that no setoff rights

were matured or exercised on the Petition Date, or LBHI is correct that the parties were at all

times obligated to setoff all amounts owed to one another, the result is the same:  Maverick

always had a right to seek the return from LBIE of the full $118.1 million it was owed (whether

by setoff, cash payment, or a combination of the two).  LBHI guaranteed that right, which LBIE

never honored.

## II.    Maverick is Entitled to Assert the Full Value of its $118.1 Million Claim Against the LBHI Estate.

30.    Because Maverick held a claim on the Petition Date in the amount of

$118.1 million (either as a result of LBIE's breach of contract, as Maverick contends, or because

Maverick acquired a setoff right on that date, as LBHI contends), the only remaining question is

how that claim should be treated in this case.  The Supreme Court's decision in *Ivanhoe Building

& Loan Ass'n v. Orr*, 295 U.S. 243, 246-47 (1935), provides the answer.

31.    As this Court has previously explained, "[i]n *Ivanhoe*, the United States Supreme Court held that a creditor was permitted to assert the full value of its claim against a debtor co-obligor, unreduced by the stipulated value of the collateral, subject only to the 'single-satisfaction rule' that the creditor could not retain value beyond payment in full." *In re LightSquared Inc.*, No. 12-12080 (SCC), 2014 WL 5488413, at *5 (Bankr. S.D.N.Y. Oct. 30, 2014).  Lehman does not appear to dispute this black letter law.  LBHI Brief, 17-18.

32.    Having received no value from either LBHI or LBIE on the Petition Date (whether in the form of cash or setoff), Maverick did exactly what *Ivanhoe* allows:  Maverick made a demand on each of LBIE's and LBHI's bankruptcy estates for payment of the whole $118.1 million owed.  In 2012, LBIE made a partial payment to Maverick, allowing Maverick an offset of $101.9 million and extinguishing that amount of Maverick's debts to LBIE.  Importantly, that was only a partial payment and left a deficiency of $16.2 million (which increased the amount that Maverick was required to pay LBIE in the 2012 settlement).  It is not open to LBHI to argue—and LBHI does not appear to be arguing—that Maverick is now limited to an allowed claim of $16.2 million against the LBHI estate.  Instead, under *Ivanhoe*, Maverick is entitled to assert a claim for the full $118.1 million it was owed on the Petition Date, subject to a maximum recovery of that same amount (meaning, in effect, that Maverick can only collect an additional $16.2 million from LBHI).[9]

---

[9] LBHI continues to suggest that Maverick somehow believes that *Ivanhoe* can increase the size of a claim or override a setoff that had validly occurred.  That is not so.  Maverick's appeal to *Ivanhoe* is premised on the fact that this Court will recognize that Maverick holds an allowed claim of $118.1 million (either under Maverick's theory that the contract was breached on the Petition Date, or under LBHI's new theory that Maverick acquired a setoff right upon the occurrence of an LBIE insolvency).

III.    **LBHI Guaranteed All of LBIE's Obligations, Including All Obligations Related to Setoff, Netting, and the Payment of All Amounts Owed to Maverick**

33.    The LBHI Guarantee provides that LBHI would guaranty all "obligations" owed by LBIE under the Prime Brokerage Agreements.  This included LBIE's obligation to provide Maverick a combination of offsets and payments reflecting the full value of all cash and securities owed by Maverick.  Maverick filed proofs of claim that made a demand for the full value of all cash and securities entrusted to LBIE for safekeeping.  To avoid overstating the size of any cash distribution that was likely to ever be required to satisfy such obligations, the Maverick proofs of claim also recognized that a substantial portion of the asserted claim would likely be satisfied through a setoff.  Maverick also expressly preserved its own rights of setoff and clarified—"for the avoidance of doubt"—that it was asserting "gross" claims against LBHI. LBHI offers unpersuasive arguments to the contrary, but those arguments fail to account for the plain language of the relevant documents, as well as their obvious intent.

A.    **The LBHI Guarantee Covered All "Obligations" and Was Not Limited to the Payment of the "Net" Amount Owed**

34.    LBHI argues, with almost no explanation, that LBHI did not guarantee the safe return of the "gross amount" of the cash and securities that Maverick had entrusted to LBIE for safekeeping.  LBHI Objection, 35.  But that is precisely what LBHI guaranteed, as the District Court has already made clear.  District Court Opinion & Order, 2 ("The purpose of the Guarantee was to protect Maverick if its property became trapped by virtue of an LBIE bankruptcy").  Contrary to LBHI's unconvincing suggestion, the LBHI Guarantee simply does not contain any provision that would limit the amount guaranteed to a "net" amount.  Instead, the LBHI Guarantee was crafted in the broadest possible terms, to provide Maverick the broadest possible protection, stating that LBHI was guaranteeing "all obligations" under the Prime Brokerage Agreements.  LBHI Guarantee.  As LBHI's own brief argues at length, one such

17

obligation was LBIE's obligation to provide Maverick a dollar-for-dollar setoff of all mutual

debts, meaning that LBIE was obligated to reduce the amounts Maverick owed LBIE by $118.1

million and to pay Maverick any net balance due and owing after all LBIE debts were

extinguished.  As LBHI seems to admit, this was plainly agreed by the parties, and hence an

"obligation" under the contracts.  LBHI Brief, ¶ 14.  LBIE failed to satisfy this obligation on the

Petition Date, and even as late as 2012 had still afforded Maverick only a partial offset of the full

amount owed (*i.e.*, $101.9 million of the $118.1 million owed).  Because LBHI also promised

that it would guarantee LBIE's obligation to pay or credit Maverick a total of $118.1 million,

Maverick has a claim against LBHI for that same amount.[10]

### B.    The Maverick Proofs of Claim Asserted Gross Claims for the Full Value of All Custodied Cash and Securities and Expressly Preserved Maverick's Setoff Rights

35.    LBHI also makes an unconvincing argument that Maverick somehow only

asserted "net" claims, or that it waived or failed to preserve its right to assert a setoff claim

against LBIE and LBHI.  In fact, the proofs of claim say exactly the opposite.  Each of the

separate proofs of claim filed by the separate Maverick Entities plainly asserted a claim for the

---

[10] Although the plain language of the Guarantee, and the prior ruling of the District Court, should definitively resolve this question, basic principles of contractual interpretation, and a common sense appeal to the presumptive intent of the parties, further support Maverick's plain language reading.  If the parties had intended that LBHI, as a guarantor, was to be afforded unique netting or setoff rights distinct from those afforded to LBIE as primary obligor, they surely would have said so.  Indeed, the parties included highly detailed, complex setoff and netting provisions in the guaranteed contracts. The idea that the parties somehow implicitly included a separate setoff right that was unique to LBHI as guarantor, and that was inconsistent with the setoff rights afforded to the primary obligor, makes no sense.  Such a reading of the contract violates common sense, as well as the District Court's prior holding in this case that the words of the Guarantee should be interpreted in a manner consistent with those used in the underlying prime brokerage agreements.  District Court Opinion & Order, 16 ("It is a well-settled principle that the absence in one context of particular language used elsewhere by the same parties is intentional").  LBHI's unsupported interpretation of the LBHI Guarantee also violates a basic legal principle that LBHI has long invoked and which this Court has previously endorsed – *i.e.*, that the liability of a guarantor follows the liability of the primary obligor.  Thus, on the correct reading of the parties' contracts, because LBIE had no mature setoff rights on the Petition Date, neither did LBHI as guarantor.

full gross amount of the Maverick assets custodied with LBIE.  Each claim form expressly

quantified the full gross amount then believed to be owed to the specific Maverick Entity and

made a "demand for payment" of such amount.  The proof of claim forms also acknowledged the

likelihood that the actual amount of any cash payment was likely to reflect a substantial offset to

reflect the "amounts owed by Maverick in connection with the Prime Brokerage Documents".  In

addition, to avoid any ambiguity, and to foreclose precisely the argument that LBHI now makes,

the claim forms also unambiguously stated that:  "[f]or the avoidance of doubt" the amount

asserted by Maverick was a "***gross*** claim that ***does not take into account*** any amounts or

obligations that Maverick may owe to the Lehman entities."  The forms also expressly state that

the Maverick Claims did not reflect "a waiver of any setoff or recoupment rights under

applicable law".

        36.      In the face of these express reservations of rights, the intent of the

Maverick Claims was obvious:  Maverick was preserving its rights to receive a full recovery of

the gross value of all cash and securities entrusted to LBIE, while at the same time

acknowledging that the Lehman entities could avoid making a cash payment of the full gross

amount of such claims if LBIE instead satisfied those obligations by extinguishing debts owed to

it by Maverick on a dollar for dollar basis.  It is simply not the case that Maverick somehow

asserted only net claims (when the claim forms clarify that "gross" claims are being asserted), or

that Maverick somehow waived its right to hold LBHI accountable for LBIE's failure to honor

its setoff obligations in full (when Maverick expressly preserved that right).  Needless to say, it

also defies common sense that Maverick and its counsel intended to file proofs of claim that

would for some reason waive the right to pursue the full amount owed to Maverick.

IV.     **LBHI's Other Arguments Lack Merit**

37.     Although LBHI's core contention is its setoff argument, LBHI's brief is also interspersed with a handful of other unconvincing secondary arguments.

A.     **Maverick is Not Seeking to Recover a Greater Amount in Bankruptcy Than It Can Achieve Outside of Bankruptcy**

38.     LBHI repeatedly argues that Maverick is somehow seeking more than Maverick could recover in a non-bankruptcy context, or more than it could recover under applicable state law.  For example, LBHI contends that "LBIE's liability to Maverick as of any given point in time was for….the positive difference, if any, between the value of the collateral and the amount of Maverick's liabilities."  LBHI Brief, ¶ 14.  Based on this argument, LBHI argues that outside of a bankruptcy context the Maverick Entities were entitled, at most, to collect $4.3 million.  That is a partial truth at best and misses the fundamental point.  In the hypothetical scenario described by LBHI, the relevant Maverick Entities would have received the cash payment of $4.3 million ***and the full extinguishment and setoff of every dollar of debt owed to LBIE***.  In other words, if an out-of-court state law setoff had been effectuated on or immediately prior to the Petition Date, Maverick would have received exactly $118.1 million of value, the precise amount, to the penny, that it seeks and should ultimately recover after having asserted its direct claims against LBIE and its guarantee claims against LBHI.

B.     **Maverick Is Not Asserting That Its Claims Are Based on Events or Valuations That Occurred After the Petition Date**

39.     LBHI also continues to suggest that Maverick's theory is somehow based on events and valuations other than those that existed on the Petition Date.  LBHI Brief, 37-39.  That is false.  LBHI is attempting to contort Maverick's simple assertion of a Petition Date claim into something more complicated.  LBHI has tried this before, but the District Court saw through this transparent tactic.  District Court Opinion & Order, 3 and 15.  This Court should no longer

indulge LBHI's efforts to reframe Maverick's theory either.  Maverick's claim is simple and

based entirely on a demand for the payment of the full amount that it was owed on the Petition

Date (*i.e.*, $118.1 million).  The only relevance that Maverick has ever ascribed to the events that

occurred in 2012 is Maverick's good faith admission that the amounts recovered in 2012 should

count toward the maximum recovery that Maverick is now entitled to seek.  Maverick has never,

and does not today, contend that it has a claim premised on any facts or occurrences other than

those that prevailed on the Petition date, when Maverick's claim to the return of its cash and

securities arose, in the amount of $118.1 million.

### C.    The District Court Did Not Fail to Dispose of LBHI's Prior Argument Concerning Consequential Damages

40.    LBHI also makes a bizarre claim that the District Court has not yet ruled

on LBHI's prior arguments concerning a "prohibition on consequential damages".  LBHI Brief,

23.  That is plainly wrong.  The District Court expressly considered the relevant "limitation of

liability" clause (which contains the relevant provision that LBHI relies on), assessed LBHI's

arguments, and concluded that "any damages sustained by Maverick were not caused by activity

on the part of Lehman that is within the reach of the limitation of liability clause".  District Court

Opinion & Order, 14.  Lehman's argument was thus considered and soundly rejected.[11]  *Id*.

### D.    Maverick's Allegations Are Plausible

41.    LBHI also recycles language from its prior briefs on the plausibility

standard that a plaintiff must satisfy in a federal action.  Although LBHI appears to have

abandoned its prior and unconvincing efforts to argue that Maverick's allegations are

---

[11] In any event, LBHI has not attempted to renew that argument on the present motion, and the argument was in any event baseless, not least because Maverick has never sought consequential damages, but rather direct benefit of the bargain damages arising from the Lehman Entities core promises under the relevant contracts.

implausible, Maverick will address that contention briefly, for the avoidance of doubt.

Maverick's core allegations are entirely plausible. This is a simple claim: Maverick alleges it

was a prime brokerage customer of LBIE and that it had $118.1 million of assets custodied with

LBIE. Maverick alleges that LBHI guaranteed the full payment of all such obligations.

Maverick alleges that LBIE refused to provide Maverick the economic benefit of the $118.1

million, paying Maverick nothing on the Petition Date and refusing to acknowledge any setoff as

of the Petition Date. Finally, Maverick alleges the first and only time that it ever received any

payment on account of its claims was in 2012, when it received a partial offset, in an amount no

greater than $101.9 million, and that Maverick was unable to collect a larger sum because LBIE

was shielded under English bankruptcy law from its obligations to provide Maverick a

combination of payments and setoffs in the full amount of $118.1 million. Not one of those facts

is implausible: Maverick has alleged a simple fact pattern, revolving around a group of

involuntary creditors of the Lehman entities who, more than a decade after the Lehman collapse,

has not been allowed to enforce its guarantee claims against an entity that now admits that it

guaranteed an unfulfilled "obligation" of LBIE to pay Maverick, in cash or through an offset,

each and every dollar Maverick had custodied with LBIE.

## CONCLUSION

WHEREFORE, the Maverick Entities respectfully request that the Court reject

the Maverick Claim Objection, and either allow the Maverick Claims against LBHI or schedule

an evidentiary hearing with respect to such claims at some appropriate point thereafter consistent

with the Court's calendar.

Dated:   New York, New York
August 8, 2019

SHEARMAN & STERLING LLP

By: */s/ Randall Martin*

Randall Martin
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (646) 848-7174

Solomon J. Noh
9 Appold Street
London, EC2A 2AP
United Kingdom
Telephone:  +44 20 7655 5000
Facsimile:  +44 20 7655 5500

*Attorneys for the Maverick Entities*