Hearing Date and Time: September 10, 2019 at 2:30 p.m. (Prevailing Eastern Time)
Response Deadline: September 6, 2019 at 12:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                          :
**In re**                                 :    **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :    **08-13555 (SCC)**
                                          :
                         **Debtors.**     :    **(Jointly Administered)**
                                          :
-------------------------------------------------------------------x

## MOTION OF THE PLAN ADMINISTRATOR
## FOR ORDERS AUTHORIZING A CLAIMS CONSOLIDATION AUCTION

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the

*Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its*

*Affiliated Debtors* (the "Plan"),[1] respectfully represents in support of this motion:[2]

### Preliminary Statement

1.        The Plan Administrator continues in its charge to maximize Distributions

to holders of Allowed Claims and to make such distributions in an "expeditious, but orderly

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

[2] In support of this Motion, the Plan Administrator has filed the *Declaration of Anton Kolev in Support of Motion of the Plan Administrator for Orders Authorizing A Claims Consolidation Auction*, attached hereto as **Exhibit A** (the "Kolev Declaration").

manner."[3]  It has overseen eighteen Plan Distributions totaling approximately $127.5 billion over seven-and-a-half years.  It most recently estimated that it would oversee additional cash available for distributions of approximately $1.8 billion from LBHI, less cash distributed in the eighteenth Plan Distribution ("D18") and subject to many important notes, caveats, and considerations,[4] over time.

2.     The vast majority of all future cash available for Distributions (approximately 96%) will be made to holders of Allowed Claims against LBHI's estate (as opposed to creditors of the four other Debtors whose chapter 11 cases remain open).  LBHI, by far, has the greatest number of outstanding Allowed Claims compared to the other Debtors whose chapter 11 cases also remain open.

3.     After accounting for Allowed Claims that have been split among multiple creditors and applying certain Exclusions (as defined below), there are approximately 16,600 Allowed Claims held by a total of approximately 5,500 creditors in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 7, LBHI Class 8, and LBHI Class 9A (collectively, the "Eligible Classes").[5]  The vast majority, approximately 15,500, or 93%, of claims are Allowed in amounts equal to or less than $10 million (the "Eligible Claims," and the holders of such claims, the "Eligible Claimants").  In aggregate, the Eligible Claims will recover less than 10% of all future Distributions from LBHI.  The remaining approximately 7% of claims in the Eligible Classes are Allowed in amounts greater than $10 million, and these large claims, in aggregate, will recover approximately 90% of all future Distributions from LBHI.

---

[3] *See* Plan §6.1(b); Plan Trust Agreement §1.1 (Exhibit C, ECF No. 21254).

[4] *See* Q1 Financial Report (as defined below); *Notice Regarding Eighteenth Distribution Pursuant to the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Inc. and Its Affiliated Debtors* (ECF No. 59816).

[5] Unless stated otherwise, the figures detailed herein treat each portion of a split claim held by different holders as a separate claim.

2

4.      A majority of the Eligible Claims are original, prepetition creditors who have not traded their claims.  A majority of these creditors are also foreign creditors, who are frequently unable to deposit checks in U.S. dollars and incur fees to receive wire payments and additional fees to convert Plan Distributions from U.S. dollars into their respective foreign currencies.

5.      In order to provide the majority in number of LBHI's creditors an opportunity to sell their claims efficiently at a competitive market price and to end their participation in these chapter 11 cases, the Plan Administrator hereby seeks approval of a process (the "Claims Consolidation Auction") to facilitate the voluntary sale of the specified Eligible Claims to a single purchaser for each Eligible Class (each a "Sponsor") and for the consolidation of claims sold into a single aggregate claim per each respective class.  The Claims Consolidation Auction could consolidate up to approximately 15,500 individual Eligible Claims into seven claims, which would reduce the administrative burdens and costs associated with future Distributions over time (discussed in greater detail below and in the Kolev Declaration), for the benefit of all holders of Allowed Claims against LBHI.

6.      The procedures for the Claims Consolidation Auction are designed to elicit a competitive rate at a market-determined value to provide the highest return to the participating creditors. (Kolev Decl. ¶ 10.)  Nonetheless, in part because Eligible Claimants will be permitted to commit to participate before the price at which their claim will be purchased is established, the procedures provide for a minimum rate at which a Sponsor may bid.  The procedure for calculating the minimum rate is described in more detail below.

7.      In sum, the Claims Consolidation Auction offers final payments to creditors well in advance of LBHI's final distribution in its chapter 11 case.  Creditors electing to

participate in the Claims Consolidation Auction will receive two final payments: (i) the regularly-scheduled nineteenth Plan Distribution ("D19") from LBHI on or about October 3, 2019; and (ii) the purchase price(s) from the Sponsor(s) for their claims on or about November 27, 2019.[6] The Sponsors, as the purchaser of the electing claim(s), will receive all additional Distributions from LBHI after D19 over time with respect to such electing claims.[7]

### Relief Requested

8.      Pursuant to sections 105(a), 1141(b) and 1142 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2002 of the Federal Rules of Bankruptcy Procedure, the Plan Administrator requests entry of two orders to authorize the Plan Administrator to effectuate the Claims Consolidation Auction:

a.      First, an order substantially in the form attached hereto as Exhibit B (the "Procedures Order"):

    i.      approving the population of Eligible Claims to participate in, and the procedures for, the Claims Consolidation Auction (attached to the Procedures Order as Exhibit 1, the "Procedures");

    ii.     approving the sponsor bid form (attached to the Procedures Order as Exhibit 2, the "Sponsor Bid Form");

    iii.    approving the form of the notice to Eligible Claimants (attached to the Procedures Order as Exhibit 3, the "Eligible Claimant Notice");

    iv.     approving the form of the election, assignment, and release (attached to the Procedures Order as Exhibit 4, the "Election, Assignment, and Release"); and

    v.      approving the form of the notice of electing claims (attached to the Procedures Order as Exhibit 5, the "Notice of Electing Claims").

---

[6] Each payment will be made to the holder of the Eligible Claim on the applicable record date for D19 and the Claims Consolidation Auction.  To the extent an Eligible Claimant is a record date holder for the Claims Consolidation Auction, but is not a record date holder for D19, such Eligible Claimant will only receive the Purchase Price Payment (and vise versa).

[7]  For the avoidance of doubt, LBHI is not purchasing any claims.  Claims will be purchased by the applicable Sponsor, and LBHI's role in the Claims Consolidation Auction is solely to facilitate such process, administratively.

WEIL:\96776666\16\58399.0011

b.  Second, an order substantially in the form attached hereto as <u>Exhibit C</u> (the "<u>Election Order</u>"):

i.  approving the Plan Administrator's selection of a Sponsor for each Eligible Class;

ii.  approving the percent of Allowed amount of each claim that the Sponsor will pay to the electing claimants in U.S. Dollars (the "<u>Rate</u>") for each class of Eligible Claims; and

iii.  authorizing the Plan Administrator to effectuate the Claims Consolidation Auction pursuant to the Procedures.

9.  A summary of the timeline of events proposed by this Motion is below:

| Date | Filing / Event / Deadline |
|------|---------------------------|
| **September 6, 2019** | **Deadline to object to this Motion** |
| September 10, 2019 at 2:30 pm (ET) | Hearing to consider entry of Procedures Order |
| **September 20, 2019** | **Record Date for Eligible Claims** |
| September 27, 2019 | Plan Administrator to publish Record Date Schedule of Eligible Claims on Election Agent's website |
| September 30, 2019 | Plan Administrator to mail customized Solicitation Package to Eligible Claimants |
| **November 8, 2019 at 12:00 pm (ET)** | **Deadline for submission of Sponsor Bids** |
| November 11, 2019 | Plan Administrator to file notice with the identity of Sponsor(s) and the Rate(s) for each class of Eligible Claims |
| November 12, 2019 at 11:00 am (ET) | Hearing to consider entry of Election Order |
| **November 14, 2019 at 6:00 pm (ET)** | **Election Deadline** |
| November 18, 2019 | Plan Administrator to file Notice of Electing Claims |
| On or around November 27, 2019 | Plan Administrator to Disburse the Purchase Price Payments |

WEIL:\96776666\16\58399.0011

**Jurisdiction**

10.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157.  Pursuant to the Confirmation Order, the Court retained exclusive jurisdiction over all matters arising under or related to these chapter 11 cases, including, without limitation, those set forth in Article XIV of the Plan.  (Confirmation Order ¶ 77.)  Section 14.1 of the Plan, in turn, provides for the retention by the Court of exclusive jurisdiction to, among other things, "issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code." (Plan § 14.1.)

**Background**

11.     Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

12.     On December 6, 2011, the Court approved and entered an order confirming the Plan (ECF No. 23023) (the "Confirmation Order").  The Plan became effective on March 6, 2012.

13.     The Plan Administrator is authorized pursuant to the Plan to exercise its reasonable business judgment as necessary to maximize Distributions to holders of Allowed Claims.  (Plan § 6.1(b)(iii).)  The Plan Administrator is also authorized to "perform other duties and functions that are consistent with the implementation of the Plan."  (*Id.* § 6.1(b)(xiv).)

14.     On July 18, 2019, the Plan Administrator oversaw D18. (*See* ECF No. 59816.)

15.     On July 29, 2019, the Plan Administrator filed the *Quarterly Financial Report as of April 4, 2019 (Unaudited)* (ECF No. 59849) (the "Q1 2019 Financial Report"),

which disclosed "Estimated Cash Available for Distributions" for each Debtor as of April 4, 2019.  (*See* Q1 2019 Financial Report, pg. 11.)   The Q1 Financial Report also disclosed "Estimated Future Recovery" percentages for, among others, each Class of Allowed Claims against LBHI, again as of April 4, 2019.  (*Id.* at 10.)

16.    The Plan Administrator has scheduled D19 for on or about October 3, 2019. (*See* ECF No. 59891.)

### Minimum Rate

17.    Prior to the Claims Consolidation Auction, on or about September 26, 2019, the Plan Administrator intends to file its next financial report for the period ending June 30, 2019 (the "Q2 2019 Financial Report"), which will include (subject to important, relevant assumptions, caveats, and notes) updated "Estimated Cash Available for Distributions" and "Estimated Future Recovery" percentages, presented in a manner similar to those disclosed in the Q1 2019 Financial Report.   The Q2 2019 Financial Report will include Estimated Future Recovery percentages for each class of Allowed Claims against LBHI both *before* and *after* D19. The "Estimated Future Recovery" percentages for the period *after* D19 (the "Minimum Rate") will be utilized in the Claims Consolidation Auction as the minimum rate at which a Sponsor Bid will be accepted for each Eligible Class.

### Proposed Claims Consolidation

18.    The Claims Consolidation Auction will provide Eligible Claimants an opportunity to "cash out" of LBHI's chapter 11 case by assigning and transferring their claims to a third-party Sponsor in exchange for a one-time payment of cash.  **Participation in the Claims Consolidation Auction is voluntary**.

19.    To determine the Eligible Claims, the Plan Administrator considered the population of all Allowed Claims outstanding against LBHI in the Eligible Classes.   The Plan

7

Administrator did not include in the population of Eligible Claims those claims (a) which the Plan Administrator believes may be satisfied in full in accordance with the Plan such that the holder of such claims would not be entitled to all future Distributions from LBHI on account of such claims, (b) which are held by Debtors and Debtor Controlled Entities, and (c) for which, as of the Record Date for Eligible Claims, the Plan Administrator has not received the appropriate (i) Internal Revenue Service tax form or (ii) certification pertaining to Office of Foreign Assets Control compliance for the holder of such Eligible Claims (collectively, the "Exclusions").  For the avoidance of doubt, individual holders of LBHI's bonds paid through the depository system through an indenture trustee or paying agent will not be Eligible Claimants on account of such bonds.

20.     After applying the Exclusions, there are approximately 16,600 Allowed Claims in total held by a total of approximately 5,500 distinct creditors.  The Plan Administrator determined, in its reasonable business judgment, that it could be administratively beneficial to consolidate the thousands of outstanding claims that have been Allowed in amounts equal to or less than $10 million, which resulted in approximately 15,500 Eligible Claims.

21.     The Plan Administrator proposes to execute the Claims Consolidation Auction in accordance with the Procedures, the principal terms of which are described below:[8]

a.     **Auction for Selection of Sponsor**

i.     Submission of Sponsor Bids.  Upon entry of the Procedures Order, the Plan Administrator will solicit interested parties to submit bids to participate in the Claims Consolidation Auction as a Sponsor for one or more Eligible Classes (each, a "Sponsor Bid").  **Sponsor Bids shall be due at 12:00 pm (ET) on November 8, 2019** and the winning Sponsor Bid will be made public on or around November 11, 2019.  The Sponsor Bid will remain an open offer

---

[8] In the event of any inconsistency between the summary contained herein and the terms and provisions of the Procedures, the terms of the Procedures shall control.

for Eligible Claims until the Election Deadline (as defined below) on November 14, 2019. The Sponsor must be a United States person.

ii.     Rate. Each Sponsor Bid must be submitted using the Sponsor Bid Form, which requires, among other things, the proposed Sponsor to provide the Rate, expressed as a percent to the thousandth place (e.g., X.XXX% of the allowed claim amount). **The Rate for each Eligible Class must equal or exceed the Minimum Rate for the applicable Eligible Class.**

iii.    Evaluation of Sponsor Bids. The Plan Administrator will evaluate all Sponsor Bids and select a single entity to be the Sponsor for each Eligible Class, subject to the Tie-Breaking Procedures described below. In selecting the Sponsor, the Plan Administrator will balance, among other factors, the key goals of obtaining the highest Rate and executing the Claims Consolidation Auction in accordance with the Procedures. If no Sponsor Bids are received equal to or in excess of the Minimum Rate with respect to a particular Eligible Class, the Plan Administrator will not select a Sponsor with respect to such class.

iv.     Pre-Sponsor Bid Submission Electing Eligible Claims Disclosure. On or around November 7, 2019, the Plan Administrator will, upon request of a Prospective Sponsor, disclose to such Prospective Sponsor the aggregate number of Eligible Claims and the aggregate Allowed amount of such Eligible Claims that have, as of November 6, 2019, elected to participate in the Claims Consolidation Auction; *provided*, *however*, that in no event shall the Plan Administrator disclose on an individual basis the Eligible Claims that have elected to participate in the Claims Consolidation Auction until the filing of the Notice of Electing Claims (as defined in section VI(k)).

v.      Tie-Breaking Procedures. In the event that there is a tie for the highest and best cash offer for the Eligible Claims in a particular Eligible Class, the Plan Administrator shall notify such Prospective Sponsors who submitted the tie Sponsor Bids that they each have 24 hours to submit a new bid (a "Tie-Breaking Bid") using the same bid format. The Plan Administrator will evaluate the Tie-Breaking Bids and select a single entity to be the Sponsor for an Eligible Class for which the bids were submitted. If, following the submission of Tie-Breaking Bids, a tie persists, each Tie-Breaking Bid will be selected to be a winning Sponsor Bid and the corresponding Prospective Sponsors will each be selected to be a Sponsor for its *pro rata* share of the Electing Claims from the Eligible Class for which multiple Sponsors were selected. In the

9

event that no Tie-Breaking Bids are received, the original Sponsor Bids that gave rise to the tie in the first instance will each become a winning Sponsor Bid and the corresponding Prospective Sponsors will each be selected to be a Sponsor for its *pro rata* share of the Electing Claims from the Eligible Class for which multiple Sponsors were selected. If, pursuant to the proceeding two sentences, multiple Sponsors are selected for a single Eligible Class, such Sponsor's obligations will be several (and not joint) from the obligations of the other Sponsor(s) and such Sponsor(s) shall only be obligated to fund its *pro rata* share of the Deposit (as defined in the Procedures) and the Sponsor Payment (as defined below). For the avoidance of doubt, in the event that multiple Sponsor's are selected for a particular Eligible Class, the Plan Administrator shall have the right to terminate the Claims Consolidation Auction pursuant to section IX of the Procedures if a particular Sponsor does not fund its *pro rata* share.

b.   **Purchase Price Notice**

i.   Upon selection of the Sponsor, and not less than two business days prior to the hearing to consider the entry of the Election Order, the Plan Administrator shall file with the Court a supplement providing the following information (the "Purchase Price Notice"):

1.   the identity of the Sponsor for each Eligible Class;

2.   the Rate for each Eligible Class;

3.   any additional documents to be submitted to holders of Eligible Claims in support of the Claims Consolidation Auction or as may be directed by the Court; and

4.   a summary of the bidding process.

c.   **Solicitation of Eligible Claimants & Election Process**

i.   **Record Date. The record date for determining the holder of and size of claims to be considered Eligible Claims will be September 20, 2019.**   The Plan Administrator shall publish a schedule of Eligible Claims as of the Record Date (the "Record Date Schedule of Claims") by September 27, 2019 at https://dm.epiq11.com/lehman. Contemporaneously therewith, the Plan Administrator will publish a summary of the Eligible Claims in each Eligible Class, which will include the aggregate number of Eligible Claims and the aggregate Allowed amount of such Eligible Claims.

WEIL:\96776666\16\58399.0011

ii.       <u>Solicitation Package</u>.  Within five business days of filing the Record Date Schedule of Eligible Claims, the Plan Administrator shall serve on the holder of each Eligible Claim the following materials (the "<u>Solicitation Package</u>"):

     1.       the Eligible Claimant Notice;

     2.       the Procedures Order (without exhibits other than the Procedures);

     3.       the Election, Assignment, and Release; and

     4.       such other materials as the Court may direct.

iii.       **<u>Election Process</u>.  To sell claims in the Claims Consolidation Auction, an Eligible Claimant must return the Election, Assignment, and Release:**

     1.       by completing it electronically on the Election Agent's website at https://dm.epiq11.com/lehman,

     2.       by emailing an executed PDF copy to LBHIelection@epiqglobal.com, or

     3.       by mailing (or delivering via overnight delivery or courier service) an executed copy to the address provided in the Eligible Claimant Notice.

     **4.       The terms of the Election, Assignment, and Release are binding as to the associated claim(s) and as to the party executing it and irrevocable with respect to the associated claim(s) upon submission.**

iv.       **<u>Election Deadline</u>.  The deadline for receipt of Eligible Claimants' Election, Assignment, and Release and to participate in the Claims Consolidation Auction is 6:00 pm (ET) on November 14, 2019 (the "<u>Election Deadline</u>"). Submissions must be actually *received* by the Election Deadline to be deemed timely.  Parties are encouraged to use the electronic means of submission described in sections 21.c.iii.1 or 21.c.iii.2 above.**

v.       <u>Eligible Classes</u>.  Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 7, LBHI Class 8, and LBHI Class 9A will be eligible to participate.

vi.       <u>Eligible Claims</u>. Only Eligible Claims are included in the Claims Consolidation Auction.  Any Electing Claimant must be the owner

11

of such Eligible Claim on the Record Date. The LBHI General Creditor Claims Register, available on the Election Agent's website at https://dm.epiq11.com/lehman, is determinative of claim ownership.

vii. <u>Notice of Electing Claims</u>. Within five business days following the Election Deadline, the Plan Administrator will file on the docket of this case the Notice of Electing Claims, which shall identify all claims electing to participate in the Claims Consolidation Auction.

**d.** **Appointment of Election Agent**

i. <u>Election Agent</u>. Epiq Corporate Restructuring, LLC (the "<u>Election Agent</u>") shall serve as the Plan Administrator's agent for purposes of tabulating elections and effectuating the Sponsor's payment to each of the Electing Claimants.

**e.** **Disbursement of Purchase Price Payment**

i. **Each Electing Claimant will be entitled to a payment equal to the product of its Electing Claim(s)'s Allowed amount multiplied by the Rate applicable to its respective Eligible Class(es) (the "<u>Purchase Price Payment</u>").**

ii. <u>Claims Consolidation Auction Funding</u>. Upon three days' written notice from the Plan Administrator and no later than three business days subsequent to the filing of the Notice of Electing Claims, each winning Sponsor shall transfer to the Plan Administrator U.S. Dollars in the amount necessary to fund the Purchase Price Payments to Electing Claimants (each, a "<u>Sponsor Payment</u>"). Each Sponsor Payment will be calculated as the product of (a) the sum of the Allowed amounts of all Electing Claims in the respective Eligible Class multiplied by (b) the applicable Rate.[9]

iii. <u>Disbursement of Purchase Price Payment</u>. On or around November 27, 2019, or as soon as reasonably practicable thereafter, the Election Agent shall disburse to each Electing Claimant the Purchase Price Payment associated with each Electing Claim. The Plan Administrator is authorized to take all actions necessary to comply with applicable tax withholding and reporting requirements.

iv. <u>Consolidated Claim</u>. Upon the filing of the Notice of Electing Claims, all Electing Claims (as defined in section VI(f) of the

---

[9] Subject to *pro rata* allocation in the event of multiple Sponsors. *See* section 21.a.v above.

WEIL:\96776666\16\58399.0011

Procedures) will be deemed cancelled and expunged, and each respective winning Sponsor will receive a consolidated claim with (a) a single claim number and (b) an Allowed amount equal to the amount of such canceled and expunged Electing Claims attributable to the Eligible Class for which the Sponsor submitted the winning Sponsor Bid.

 v. <u>Receipt of Sponsor Payment(s)</u>. Disbursements of Purchase Price Payments will be subject to the Plan Administrator's receipt of the Sponsor Payment(s) from the Sponsor(s) for each Eligible Class. The cash comprising each Sponsor Payment remains property of the applicable Sponsor until it has been received by the Electing Claimants and is not the property of the Chapter 11 Estates. In no case will disbursements of Purchase Price Payments be made from the funds of the Chapter 11 Estates. The Sponsor Payment, to the extent it is within the control of the Plan Administrator, will be segregated from, and not commingled with, the Chapter 11 Estate's funds or any other funds managed by the Plan Administrator.

**f. Additional Obligations of the Sponsor(s)**

 i. <u>Transfer Fees</u>. Each Sponsor must pay and reimburse the Plan Administrator for any and all Bankruptcy Rule 3001(e)(2) transfer fees, which will be paid by the Plan Administrator to the Court (out of the funds deposited by each respective Sponsor pursuant to section VIII(a)) upon the Plan Administrator's filing of the Notice of Electing Claims. This amount will be calculated as the product of (a) the number of Electing Claims and (b) twenty-five dollars. The payment shall be due at the same time as the Sponsor Payment is due to the Plan Administrator. For the avoidance of doubt, the payment for transfer fees is in addition to the Sponsor Payment.

**g. Termination**

 i. **<u>Termination Right</u>. At any time before the full amount of the Sponsor Payment is funded for an applicable Eligible Class (including, in the case of multiple Sponsors for a single Eligible Class, if one of the Sponsors does not fund its *pro rata* share), the Plan Administrator may, in its sole and absolute discretion, terminate the Claims Consolidation Auction in full or with respect to certain Eligible Claims or Eligible Classes.**

 ii. <u>Effect on Electing Claims</u>. In the event the Plan Administrator exercises its right to terminate the Claims Consolidation Auction, any and all Electing Claimants shall have the same interests, rights,

entitlements, and claims in respect of their Electing Claim as if the Claims Consolidation Auction had never occurred.

22.     The Procedures are designed to elicit a competitive Rate at a market-determined value to provide the highest return to the Electing Claimants. (Kolev Decl. ¶ 10.) The Claims Consolidation Auction offers payment to Electing Claimants well in advance of the final distribution in the LBHI proceeding and provides certainty and closure to such claimholders, as well as the convenience of a single lump-sum payment. (Kolev Decl. ¶ 6.) **However, the Plan Administrator does not opine as to whether the Rate offered by the Sponsor will result in a payment to Electing Claimants that is the same, greater, or less than an amount the Electing Claimant would otherwise receive via a final distribution through the estate had the Electing Claimant not participated in the Claims Consolidation Auction. (Kolev Decl. ¶ 9.)**

## Basis for Relief

### A.    The Claims Consolidation Auction is Appropriate and Should be Approved

23.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. § 105(a). Under Section 105(a), the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See*, *e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (citations omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his order to meet differing circumstances."); *Sec. Investor Prot. Corp. v. Bernard L.*

14

*Madoff Inv. Sec. LLC*, 474 B.R. 76, 85 (S.D.N.Y. 2012) ("[B]ankruptcy courts are empowered to utilize their equitable powers under section 105 where appropriate 'to facilitate the implementation of other Bankruptcy Code provisions.'" (internal citations omitted)).

24.     Authorizing the Plan Administrator to execute the Claims Consolidation Auction is an appropriate use of the Court's power under Section 105(a) of the Bankruptcy Code and is consistent with the purposes of Bankruptcy Rule 3009, which is intended to protect the interests of creditors in prompt and efficient administration of distributions to their claims.  This goal will be furthered in two respects: (1) by affording Eligible Claimants the opportunity to monetize the remaining value of their Eligible Claims and conclude their exposure to LBHI, and (2) by aggregating eligible Allowed Claims, it will permit the Plan Administrator to complete future Plan Distributions more efficiently.

25.     The Plan Administrator requests that the Notice of Electing Claims, docketed by the Plan Administrator following the Election Deadline but prior to payment of the Purchase Price Payment, eliminate the need for additional notice pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2).  The Court will have already approved the form of Election, Assignment, and Release; and the Election, Assignment, and Release will be transmitted to the owners of the Eligible Claims, prepopulated with Claimant-identifying information, for the holders' consideration and execution.  A post-election notice period in these circumstances introduces revocability contrary to the finality needed to ensure effectiveness of the Claims Consolidation Auction.  The post-election notice period is also unnecessary given the uniformity, necessity, and Court-approved nature of the agreement being used to effectuate the Claims Consolidation Auction.

WEIL:\96776666\16\58399.0011

**B.      Processes Similar to this Claims Consolidation Auction Have Been Implemented in the LBI Liquidation, LBIE and LBT Proceedings, and Certain Chapter 11 Liquidations.**

26.      Last year, one of LBHI's former affiliates, Lehman Brothers, Inc. ("LBI"), obtained Court approval and completed a substantially similar process to the one proposed herein.  *See Order Approving (I) Accelerated Final Distribution Procedures; (II) the Form of the Notice of such Procedures; (III) the Form of the Election, Assignment, and Release (IV) the Population of Eligible Claims; and (V) the Form of the Notice of Electing Claims*, Case No. 08-01420-(SCC) (Bankr. S.D.N.Y. May 31, 2018); *Order Approving the Trustee to Effectuate the Accelerated Final Distribution Election*, Case No. 08-01420-(SCC) (Bankr. S.D.N.Y. June 25, 2018); *see Notice of Claims Electing to Participate in the Accelerated Final Distribution Election*, Case No. 08-01420-(SCC) (Bankr. S.D.N.Y. August 29, 2018) (illustrating the robust participation by LBI's creditors in a similar process).

27.      Previously, in 2016, the administrators of another one of LBHI's former affiliates, Lehman Brothers International (Europe) ("LBIE"), implemented processes similar to the proposed Claims Consolidation Auction.  In those processes, LBIE solicited its creditor population for willing participants, advising them of a reserve price on the sale of their claims.  Subsequently, LBIE marketed the pool of elected claimants to potential purchasers, selling the claims to the highest bidder.

28.      Creditor demand demonstrated by these processes and another recent process encouraged the Plan Administrator to facilitate a similar process for its creditors in these cases.  Most recently, Lehman Brothers Treasury Co. B.V. (in liquidation) ("LBT") successfully concluded an auction for a $10,475,844,413 portion of its $34,548,000,000 intercompany claim against LBHI for a total gross purchase price of $179,472,166.  The LBT auction illustrates the continued market demand for Allowed claims against LBHI.

16

29.     The proposed Claims Consolidation Auction is consistent with other processes approved as part of the confirmation of certain chapter 11 restructuring plans. *See Order Approving on a Final Basis the Disclosure Statement*, *In re: Mosaic Management Group, Inc.*, No. 16-20833-FRK (Bankr. S.D. Fla. June 5, 2017) (approving plan in which general unsecured claimholders could elect to receive an immediate payment of cash for their allowed claims rather than receive shares in the newly created investment trust); *Order Confirming Second Amended Joint Plan of Reorganization*, *In re: Movie Gallery, Inc.*, No. 07-33849 (Bankr. E.D. Va. Apr. 10, 2008) (approving plan in which general unsecured claimholders could elect to receive an immediate payment of cash equal to a fixed percent of their allowed claims rather than shares of new common stock created under the plan).   In each case, bankruptcy courts approved of the debtors' plans establishing procedures that permitted holders of general unsecured claims to assign their claims to a third-party plan sponsor in exchange for a one-time cash payment by that plan sponsor.

30.     In addition, as discussed above, both the Plan and the Confirmation Order provided for the Court's retention of jurisdiction over all matters arising under or related to, these chapter 11 cases.

## Notice

31.     No trustee has been appointed in these chapter 11 cases.   The Plan Administrator, in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases (ECF No. 9635), has served notice of this motion on (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the

17

Southern District of New York; and (v) all parties who have requested notice in these chapter 11 cases.  The Plan Administrator submits that no other or further notice need be provided.

### No Prior Request

32.    No prior motion for the relief requested herein has been made to this or any other court.

### Conclusion

WHEREFORE the Plan Administrator respectfully requests that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  August 23, 2019
      New York, New York

                    */s/ Garrett A. Fail*
                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007
                    Garrett A. Fail

                    Attorneys for Lehman Brothers Holdings Inc.
                    and Certain of Its Affiliates

WEIL:\96776666\16\58399.0011

**<u>Exhibit A</u>**

**Kolev Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                          :
In re                                                     :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,              :        **08-13555 (SCC)**
                                                          :
                              **Debtors.**                :        **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------x

### DECLARATION OF ANTON KOLEV
### IN SUPPORT OF MOTION OF THE PLAN ADMINISTRATOR
### FOR ORDERS AUTHORIZING A CLAIMS CONSOLIDATION AUCTION

Pursuant to 28 U.S.C. § 1746, I, Anton Kolev, hereby declare as follows:

1.      I submit this declaration in support of the *Motion of the Plan Administrator for an Order Authorizing a Claims Consolidation Auction* (the "Motion").[1]

2.      I am the Treasurer of Lehman Brothers Holdings Inc. ("LBHI"). My responsibilities include managing and overseeing the semi-annual distributions of funds to creditors pursuant to the *Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* (the "Plan").

3.      The statements set forth in this declaration are based upon my personal knowledge in my capacity as Treasurer, my review of certain documentation in connection with the Claims Consolidation Auction, information provided to me by LBHI's employees or advisors, and my opinion based upon knowledge and experience as Treasurer.

4.      All information presented in this declaration is as of July 31, 2019, unless otherwise noted, and is based on information available at this time. The information presented in this declaration, including corrections, if any, may be materially updated in the future, and the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

declarant reserves all rights to do so.  The selected balances and information contained herein have not been and will not be subject to audit or review by external accountants.

5.    After accounting for Allowed Claims that have been split among multiple creditors and applying certain Exclusions (as defined below), there are approximately 16,600 Allowed Claims held by a total of approximately 5,500 creditors in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 7, LBHI Class 8, and LBHI Class 9A (the "Eligible Classes").[2]  Such claims have a total Allowed amount of approximately $103 billion.  The following chart illustrates the breakdown of such claims and shows that less than 7% of such claims are entitled to approximately 90% of the future distributions that will be made by LBHI on account of such claims:

|  | *Population of Claims* | | *Distributions* |
| --- | --- | --- | --- |
| **Allowed Amount** | *#* | *%* | *%* |
| > **$250m** | 43 | *0.3%* | *54.4%* |
| >**$50m - 250m** | 203 | *1.2%* | *18.2%* |
| >**$25m - 50m** | 279 | *1.7%* | *8.8%* |
| >**$15m - 25m** | 297 | *1.8%* | *5.2%* |
| > **$10m - 15m** | 301 | *1.8%* | *3.3%* |
| **Total ≥ $10m** | 15,528 | ***93.3%*** | ***10.0%*** |
| >$5m - 10m | 611 | *3.7%* | *3.9%* |
| >$1m - 5m | 2,007 | *12.0%* | *4.2%* |
| >$500k - 1m | 1,132 | *6.8%* | *0.7%* |
| >$250k - 500k | 1,541 | *9.3%* | *0.5%* |
| >$100k - 250k | 3,203 | *19.2%* | *0.4%* |
| >$50k - 100k | 3,963 | *23.8%* | *0.2%* |
| >$25k - 50k | 1,376 | *8.3%* | *0.0%* |
| < $25k | 1,695 | *10.2%* | *0.0%* |
| **Total** | **16,651** | ***100.0%*** | ***100.0%*** |

6.    The following chart illustrates the anticipated population of Eligible Claims (the specific claims will be published on or around September 27, 2019 when the Plan

---

[2] Unless stated otherwise, the figures detailed herein treat each portion of a split claim held by different holders as a separate claim.

2

WEIL:\96776666\16\58399.0011

Administrator publishes the Record Date Schedule of Eligible Claims in accordance with the

Procedures):

| Plan Class | Eligible Claims Population | | Allowed Amount |
|---|---|---|---|
| | # | % | $ (USD) |
| LBHI Class 3 | 119 | 0.8% | $237,575,418 |
| LBHI Class 4 | 86 | 0.6% | $77,865,137 |
| LBHI Class 4B | 13 | 0.1% | $36,600,918 |
| LBHI Class 5 | 12,167 | 78.4% | $7,461,512,394 |
| LBHI Class 7 | 1,732 | 11.2% | $1,048,375,478 |
| LBHI Class 8 | 5 | 0.0% | $19,318,648 |
| LBHI Class 9A | 1,406 | 9.1% | $2,582,625,905 |
| Total: | 15,528 | 100.0% | $11,463,873,896 |

7.    The Claims Consolidation Auction is designed to facilitate an efficient

process for the Eligible Claimants and the Prospective Sponsors to transact, particularly those

who may not have had the opportunity to sell their claim as a result of the relative size of their

claim, their physical location, or the limited amount of expected remaining distributions.

Without the Claims Consolidation Auction, a party interested in purchasing the Eligible Claims

would have to negotiate an agreement with each individual Eligible Claimant which, for many of

the smaller Eligible Claims, could likely cost more than the future distributions to be received on

account of such Eligible Claims.  Accordingly, I believe that Claims Consolidation Auction will

provide many Eligible Claimants with an opportunity to sell their Eligible Claims that would

otherwise not exist.

8.    Further, the Claims Consolidation Auction will benefit the LBHI estate by

reducing the ongoing administrative obligations over time.  Distributions on the larger volume of

relatively smaller claims entails additional administrative complexity, as the Plan Administrator

must send approximately 5,500 individual wires or checks to distribute to Eligible Claimants.  In

addition, even with the Plan Administrator's distribution system applying historical distribution

data to the claims, the Plan Administrator must still review submitted tax information with

3

respect to all 15,500 Eligible Claims and then link the corresponding individual distribution information to each claim.  Bounced wires and returned or uncashed checks are common from the Eligible Claim population, generally the only population for which the Plan Administrator must implement the notice and expungement provisions of the Plan.  In addition, a majority of these creditors are also foreign creditors, who incur higher fees to receive wire payments and additional fees to convert Plan Distributions from U.S. dollars into their respective foreign currencies.  Distributions are sent to creditors in approximately 80 countries around the world. While the Plan provides that the Plan Administrator may hold, and not make distributions to creditors that are below $500.00, the creation of and accounting for these "allowed hold" reserves creates additional administrative burdens.  Accordingly, I believe consolidating such claims will reduce the administrative burdens and costs associated with future Plan Distributions over time.

9.    In service of the foregoing goals, the Plan Administrator has elected to exclude participation of the claims with an Allowed face amount of over $10 million, which are largely comprised of claims already traded, and certain other claims, including claims which (a) the Plan Administrator believes will be satisfied over time and not entitled to all future Distributions from LBHI, (b) which are held by Debtors and Debtor Controlled Entities, and (c) for which, as of the Record Date for Eligible Claims, the Plan Administrator has not received the appropriate (i) Internal Revenue Service tax form or (ii) certification pertaining to Office of Foreign Assets Control compliance for the holder of such Eligible Claims (collectively, the "Exclusions").  For the avoidance of doubt, individual holders of LBHI's bonds paid through the depository system through an indenture trustee or paying agent will not be Eligible Claimants on account of such bonds.

4

10.    Eligible Claimants' participation in the Claims Consolidation Auction is entirely voluntary.  The Plan Administrator does not opine as to whether the Rate offered by the Sponsor will result in a payment to Electing Claimants that is the same, greater, or less than an amount the Electing Claimant would otherwise receive via a final distribution through the estate had the Electing Claimant not participated in the Claims Consolidation Auction.  D19 will occur prior to the conclusion of the Claims Consolidation Auction.  Therefore, Plan Distributions through and including D19 will be made by LBHI to the record holder of all Eligible Claims as of the record date for D19.  If an Eligible Claimant elects to participate in the Claims Consolidation Auction, the D19 Plan Distribution and the Purchase Price Payment will be the final distributions received by such Electing Claimant for its Electing Claims.[3]  The Sponsors will be purchasing Eligible Claims and the right to receive all future Plan Distributions after D19.

11.    The Procedures are designed to elicit a competitive Rate at a market-determined value that will provide the highest return to the Electing Claimants.  Nonetheless, the Plan Administrator will not accept a Sponsor Bid that is less than the Minimum Rate.

12.    The Minimum Rate will be calculated based on the "Estimated Cash Available for Distributions" and "Estimated Future Recovery" percentages for the period after D19, which will be disclosed in the Q2 2019 Financial Report (subject to important, relevant assumptions, caveats, and notes).  The "Estimated Future Recovery" percentage for each Eligible Class (which will be utilized as the Minimum Rate) will be presented in a manner similar to how such figures were presented in the Q1 2019 Financial Report.  In the Q1 2019 Financial Report,

---

[3] Each payment will be made to the holder of the Eligible Claim on the applicable record date for D19 and the Claims Consolidation Auction.  To the extent an Eligible Claimant is a record date holder for the Claims Consolidation Auction, but is not a record date holder for D19, such Eligible Claimant will only receive the Purchase Price Payment (and vise versa).

WEIL:\96776666\16\58399.0011

the "Estimated Future Recovery" percentages were based on the "Estimated Cash Available for Distributions" which did not include (a) potential recoveries from Affirmative Litigations (as defined in the Q1 2019 Financial Report) and (b) estimates for potential Allowed amounts of Disputed Claims.  Further, the Estimated Future Recovery percentages will rely on a number of other assumptions, including, the principal amount of Allowed Claims eligible for Distributions.

13.     I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 23, 2019
New York, New York

*/s/ Anton Kolev*
Anton Kolev

WEIL:\96776666\16\58399.0011

## Exhibit B

## Proposed Procedures Order

WEIL:\96776666\16\58399.0011

```
----------------------------------------------------------------x
                                                 :
In re                                            :      Chapter 11 Case No.
                                                 :
LEHMAN BROTHERS HOLDINGS INC., et al.,           :      08-13555 (SCC)
                                                 :
                       Debtors.                  :      (Jointly Administered)
                                                 :
----------------------------------------------------------------x
```

### ORDER APPROVING (I) CLAIMS CONSOLIDATION AUCTION; (II) THE SPONSOR BID FORM (III) THE FORM OF THE NOTICE OF SUCH PROCEDURES; (IV) THE FORM OF THE ELECTION, ASSIGNMENT, AND RELEASE; (V) THE POPULATION OF ELIGIBLE CLAIMS; AND (VI) THE FORM OF THE NOTICE OF ELECTING CLAIMS

Upon the motion (the "Motion"),[1] dated August 23, 2019 of Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), pursuant to sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") for an order (the "Procedures Order") approving: (a) the procedures for the Claims Consolidation Auction, attached hereto as Exhibit 1 (the "Procedures"); (b) the form of the Sponsor Bid Form, attached hereto as Exhibit 2; (c) the form of the notice of Notice of Claims Consolidation Auction, attached hereto as Exhibit 3 (the "Eligible Claimant Notice"); (d) the form of the election, assignment, and release, attached hereto as Exhibit 4 (the "Election, Assignment, and Release"); and (e) the form of the notice of electing claims, attached hereto as Exhibit 5 (the "Notice of Electing Claims"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange

Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern

District of New York; and (v) all other parties entitled to notice in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [ECF No. 9635]; and it appearing that

no other or further notice need be provided; and a hearing having been held on September 10,

2019 (the "Hearing") to consider the relief requested in the Motion and the Court having

considered the any objections, and the Court having found and determined that the relief sought

in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor and for

the reasons stated by the Court on the record at the Hearing, it is hereby DETERMINED,

FOUND, ADJUDGED, AND DECREED:

## **FINDINGS OF FACT**

A.    <u>Findings of Fact</u>.  The findings set forth herein and in the record of the

Hearing constitute the Court's findings of fact pursuant to Rule 52 of the Federal Rules of Civil

Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of

the following findings of fact constitute conclusions of law, they are adopted as such.

B.    <u>Procedures</u>.  The Procedures are fair, reasonable, and appropriate under

the circumstances of these Chapter 11 Cases.

WEIL:\96776666\16\58399.0011

C.      _Sponsor Bid Form_.    The Sponsor Bid Form is (i) fair, reasonable and appropriate under the circumstances of these Chapter 11 Cases and (ii) sufficient for the purposes of binding a Prospective Sponsor to serve as a Sponsor for the Claims Consolidation Auction.

D.      _Eligible Claimant Notice_.    The Eligible Claimant Notice, together with the anticipated enclosures, is reasonably calculated to provide all holders of Eligible Claims with (i) timely and proper notice of the Claims Consolidation Auction and (ii) sufficient information regarding participation in the Claims Consolidation Auction, including the methods and deadline by which to return the Election, Assignment, and Release.

E.      _Election, Assignment, and Release_.    Election, Assignment, and Release is (i) fair, reasonable and appropriate under the circumstances of these Chapter 11 Cases and (ii) sufficient for the purposes of an Electing Claimant electing to participate in the Claims Consolidation Auction, assigning the Electing Claim to the applicable Sponsor, and releasing the Released Parties (as such term is defined in the Election, Assignment, and Release).

F.      _Eligible Claims_.    The Plan Administrator has articulated good and sufficient reasons for designating the Eligible Claims as the claims eligible to participate in the Claims Consolidation Auction.

G.      _Notice of Electing Claims_.    The Notice of Electing Claims is appropriate under the circumstances of these Chapter 11 Cases and is sufficient for, among other things, the purposes of providing notice to Electing Claimants of the transfer of their claims as contemplated by the Federal Rule of Bankruptcy Procedure 3001(e)(e).

H.      _Record Date_. The record date for purposes of determining the population of Eligible Claims and making the Purchase Price Payment authorized herein for all Electing Claimants is September 20, 2019 (the "_Record Date_").    Entry of the Procedures Order and the

3

Plan Administrator's publication of notice of the establishment of the Record Date on the Election Agent's website (https://dm.epiq11.com/lehman) constitutes good and sufficient notice of the Record Date.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.       The Motion is granted as set forth herein.

2.       Any objections to the entry of this Procedures Order or the relief granted herein that have not been withdrawn, waived, or settled, or otherwise resolved are hereby denied and overruled; and it is further

3.       The Procedures are approved in their entirety and are incorporated herein by reference, having the full force and effect of an order of this Court.

4.       The Plan Administrator is authorized to proceed with the Claims Consolidation Auction in accordance with the Procedures, taking all actions appropriate for its effectuation.

5.       Pursuant to section 105(a) of the Bankruptcy Code, to the maximum extent permitted by the Bankruptcy Code and applicable law, neither the Plan Administrator, nor the Election Agent, nor any of their respective representatives, agents, officers, directors, employees, partners, advisors, attorneys, or other professionals (collectively, the "Estate Parties") shall have nor incur any liability, or be subject to any right of action for any act or omission in connection with, relating to, or arising out of the reasonable execution of the Claims Consolidation Auction.

6.       Without limiting the foregoing, the Estate Parties shall not be liable to the Sponsor in connection with the Claims Consolidation Auction provided that the full amount of the Sponsor Payment is, as set forth in section VIII(b) of the Procedures, disbursed to the Electing Claimants, returned to the Sponsor, or retained by the Plan Administrator solely as set forth in section VII(d) of the Procedures.

7.      The Plan Administrator's filing of the Notice of Electing Claims, as set forth in the Procedures, shall satisfy any and all Federal Rule of Bankruptcy Procedure 3001(e)(2) requirements pertaining to the transfer of the Electing Claims, and the assignment and transfer of the Electing Claims to the Sponsor shall be deemed effective upon the Plan Administrator filing the Notice of Electing Claims and complying with the Court's payment requirements for the transfer of claims.   The clerk of Court is authorized to accept a single lump-sum payment in immediately available funds from the Plan Administrator in satisfaction of all fees associated with the transfer of the Electing Claims.

8.      The Claims Consolidation Auction shall be conducted in accordance with the provisions of this Procedures Order and the Procedures.

9.      The form of Sponsor Bid Form is approved in its entirety.

10.     The form of Eligible Claimant Notice is approved in its entirety.

11.     The form of Election, Assignment, and Release is approved in its entirety.

12.     Each and every executed Election, Assignment, and Release, once deemed valid by the Plan Administrator, is binding on the Electing Claimant and irrevocable, as set forth therein and in the Procedures.

13.     Only claimants holding claims designated as Eligible Claims shall be permitted to participate in the Claims Consolidation Auction and no other claimant may participate.

14.     The form of Notice of Electing Claims is approved in its entirety.

15.     The entry of this Procedures Order is without prejudice to the right of the Plan Administrator to seek a further order of this Court disallowing, expunging, objecting to, or otherwise resolving any unresolved claims.

WEIL:\96776666\16\58399.0011

16.     The terms and conditions of this Procedures Order shall be immediately effective and enforceable upon its entry.

17.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to this Procedures Order.

Dated: New York, New York
       _____, 2019

                                        _____
                                        Honorable Shelley C. Chapman
                                        United States Bankruptcy Judge

6

## **Exhibit 1**

**Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :    **08-13555 (SCC)**
                                            :
                    **Debtors.**            :    **(Jointly Administered)**
                                            :
--------------------------------------------------------------------x

## CLAIMS CONSOLIDATION AUCTION PROCEDURES[1]

These procedures (the "Procedures") have been approved by order (the "Procedures Order") of the United States Bankruptcy Court for the Southern District of New York (the "Court") entered on September [__], 2019 in the above-captioned case (ECF No. [__]).

These Procedures set forth the terms and conditions pursuant to which Lehman Brothers Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), is authorized to facilitate the voluntary sale and assignment of eligible claims against LBHI to a third-party purchaser (a "Sponsor").[2]

**I.    Eligible Claims**

(a)    Eligible Classes.    Only Allowed claims in the following Plan Classes (the "Eligible Classes") are eligible to participate:  LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5, LBHI Class 7, LBHI Class 8, and LBHI Class 9A.

(b)    Eligible Claims.

(i)    On or before September 27, 2019, LBHI will publish at https://dm.epiq11.com/lehman a schedule (the "Record Date Schedule of Claims") of claims (each, an "Eligible Claim" and the holder, an "Eligible Claimant") as of **September 20, 2019 (Prevailing Eastern Time)** (the "Record Date").    Contemporaneously therewith, the Plan Administrator will publish a summary of the Eligible Claims in each Eligible Class, which will include the aggregate number of Eligible Claims and the aggregate Allowed amount of such Eligible Claims.

(ii)    Only Eligible Claims may participate in the Claims Consolidation Auction.

---

[1]  Please navigate to the Plan Administrator's website (https://dm.epiq11.com/lehman) for a complete set of all materials related to the Claims Consolidation Auction.

[2] Capitalized terms used but not defined herein shall have the definitions ascribed to them in the Plan.

## II.    Solicitation of Eligible Claimants

(a)    <u>Election Agent</u>.  Epiq Corporate Restructuring, LLC shall serve as the Plan Administrator's agent (the "<u>Election Agent</u>") for purposes of effectuating the Claims Consolidation Auction, performing certain functions with the Plan Administrator's oversight as set forth in these Procedures, the Ancillary Documents, and as otherwise requested by the Plan Administrator.  The Sponsor acknowledges this appointment and releases the Election Agent as provided for in the Procedures Order.

(b)    <u>Solicitation of Electing Claimants</u>.  Within five business days following the publication of the Record Date Schedule of Eligible Claims, the Plan Administrator shall serve on each Eligible Claimant the following materials (collectively, the "<u>Solicitation Package</u>"):

(i)    A notice, substantially in the form of <u>Exhibit 3</u> to the Procedures Order, describing the Claims Consolidation Auction and providing instructions for participation (the "<u>Eligible Claimant Notice</u>");

(ii)    The Procedures Order (without exhibits other than the Procedures);

(iii)    An election, assignment, and release, substantially in the form of <u>Exhibit 4</u> to the Procedures Order, that must be executed and returned to the Election Agent with respect to each claim that is electing to participate in the Claims Consolidation Auction (the "<u>Election, Assignment, and Release</u>," and together with the Eligible Claimant Notice, the Form of Sponsor Bid (defined below), and Notice of Electing Claims (defined below) the "<u>Ancillary Documents</u>"); and

(iv)    Such other materials as the Court may direct.

## III.    Selection of Sponsor

(a)    The Plan Administrator may, in the Plan Administrator's sole discretion as an exercise of its business judgment, solicit and select from interested parties the entity best suited to serve as the Sponsor for each Eligible Class.

(b)    <u>Submission of Sponsor Bids</u>.  An interested party must submit a signed, written offer using the form attached to the Procedures Order as <u>Exhibit 2</u>  (each such submission, a "<u>Sponsor Bid</u>," and each party submitting a Sponsor Bid, a "<u>Prospective Sponsor</u>") by **November 8, 2019 at 12:00 pm (Prevailing Eastern Time)** (the "<u>Bid Deadline</u>").

(i)    Sponsor Bids must be submitted via email to: LBHI.Auction@weil.com.

(ii)    Each Sponsor Bid should reflect the Prospective Sponsor's highest and best cash offer to the Eligible Claimants for all of the Eligible Claims in an Eligible Class for which the Prospective Sponsor is bidding; *provided*; *however*, that such highest and best cash offer must equal or exceed the Minimum Rate (as described in the Motion) applicable to the Eligible Class for which the Prospective Sponsor Bid is placed.

2

(c)    Evaluation of Bids.  Following the Bid Deadline, the Plan Administrator will evaluate all Sponsor Bids and select a single Prospective Sponsor to be the Sponsor with respect to each Eligible Class.  In selecting the Sponsor, the Plan Administrator will balance, among other factors, the key goals of providing the highest rate of return to the Electing Claimants in each Eligible Class and executing the Claims Consolidation Auction in accordance with these Procedures without material modification (including considering the Sponsor's financial ability to meet its obligations under its Sponsor Bid and these Procedures).  The Plan Administrator in its sole discretion may evaluate the terms and conditions of any Sponsor Bid and reject any Sponsor Bid from further consideration without specifying any reasons therefore, including in the event of the receipt of identical Sponsor Bids.  The Plan Administrator may select a Sponsor for only certain Class(es), and is not required to select a Sponsor for each Eligible Class.  The Plan Administrator may choose to not select any Sponsor Bid and cancel the Claims Consolidation Auction for any reason.  If no Sponsor Bids are received equal to or in excess of the Minimum Rate with respect to a particular Eligible Class, the Plan Administrator will not select a Sponsor with respect to such class.  The Plan Administrator and its professionals shall have no liability to any Prospective Sponsor as a result of the rejection of any Sponsor Bid or the acceptance of any other or no Sponsor Bids.  The Plan Administrator is not required to consider bids not submitted in accordance with these Procedures.  The Plan Administrator will maintain the confidentiality of the identity of all Prospective Sponsors that are not selected as the Sponsor, but may, in the Plan Administrator's sole discretion, disclose information about the bids received so long as the identity of the Prospective Sponsor is not disclosed.  Promptly after the Plan Administrator has selected a Sponsor, the Plan Administrator shall notify each Prospective Sponsor whether or not it has been selected as the Sponsor for the Eligible Class for which it submitted a Sponsor Bid.

(d)    Pre-Sponsor Bid Submission Electing Eligible Claims Disclosure.  On or around November 7, 2019, the Plan Administrator will, upon request of a Prospective Sponsor, disclose to such Prospective Sponsor the aggregate number of Eligible Claims and the aggregate Allowed amount of such Eligible Claims that have, as of November 6, 2019, elected to participate in the Claims Consolidation Auction; *provided*, *however*, that in no event shall the Plan Administrator disclose on an individual basis the Eligible Claims that have elected to participate in the Claims Consolidation Auction until the filing of the Notice of Electing Claims (as defined in section VI(k)).

(e)    Tie-Breaking Procedures.  In the event that there is a tie for the highest and best cash offer for the Eligible Claims in a particular Eligible Class, the Plan Administrator shall notify such Prospective Sponsors who submitted the tie Sponsor Bids that they each have 24 hours to submit a new bid (a "Tie-Breaking Bid") using the same bid format.  The Plan Administrator will evaluate the Tie-Breaking Bids and select a single entity to be the Sponsor for an Eligible Class for which the bids were submitted.  If, following the submission of Tie-Breaking Bids, a tie persists, each Tie-Breaking Bid will be selected to be a winning Sponsor Bid and the corresponding Prospective Sponsors will each be selected to be a Sponsor for its *pro rata* share of the Electing Claims from the Eligible Class for which multiple Sponsors were selected.  In the event that no Tie-Breaking Bids are received, the original Sponsor Bids that gave rise to the tie in the first instance will each become a winning Sponsor Bid and the corresponding Prospective Sponsors will each be selected to be a Sponsor for its *pro rata* share of the Electing Claims from the Eligible Class for which multiple Sponsors were selected.  If, pursuant to the

WEIL:\96776666\16\58399.0011

proceeding two sentences, multiple Sponsors are selected for a single Eligible Class, such Sponsor's obligations will be several (and not joint) from the obligations of the other Sponsor(s) and such Sponsor(s) shall only be obligated to fund its *pro rata* share of the Deposit (as defined in section VIII(a)(i)) and the Sponsor Payment (as defined in section VIII(b)).

(f)    <u>Separate Auctions</u>.  The Claims Consolidation Auction for each Eligible Class is separate from, and independent of, the Claims Consolidation Auction for another Eligible Class. The termination of the Claims Consolidation Auction with respect to one Eligible Class (including if no Sponsor Bid is received for such Eligible Class) will not affect the Claims Consolidation Auction with respect to the other Eligible Classes.  A Prospective Sponsor may submit bids for multiple Eligible Classes; *provided*, *however*, that such Sponsor's Sponsor Bid for one Eligible Class may not in any way be conditioned on such Sponsor's Sponsor Bid for another Eligible Class.

## IV.    Purchase Price Notice

(a)    Following the Plan Administrator's selection of the Sponsor and not less than two business days prior to the Election Hearing (as defined in section V(a)), the Plan Administrator shall file with the Court a supplemental notice providing the following information (the "<u>Purchase Price Notice</u>"):

(i)    The identity of the Sponsor(s);

(ii)    The Rate committed to by the Sponsor for each Eligible Class (to the extent a Sponsor was selected for such Eligible Class);

(iii)    Any additional documents to be submitted to holders of Eligible Claims in support of the Claims Consolidation Auction or as may be determined by the Plan Administrator or directed by the Court; and

(iv)    A summary of the bidding process that led to the selection of the Sponsor(s) including at least: (a) the number of parties with whom the Plan Administrator was in contact regarding participation as the Sponsor for each Eligible Class and (b) the number of Sponsor Bids received for each Eligible Class.

## V.    Election Order Hearing

(a)    A hearing to consider entry of an order, approving, among other things, the party selected by the Plan Administrator as Sponsor for each Eligible Class and the Rate proposed by such Sponsor(s) (the "<u>Election Order</u>" and together with the Procedures Order, the "<u>Claims Consolidation Auction Orders</u>"), shall be held on **November 12, 2019 at 11:00 a.m. (Prevailing Eastern Time)** (the "<u>Election Hearing</u>").

## VI.    Election Process

(a)    **Election Deadline.  The deadline to participate in the Claims Consolidation Auction is 6:00 pm (ET) on November 14, 2019 (the "<u>Election Deadline</u>").**

WEIL:\96776666\16\58399.0011

(b)    To participate in the Claims Consolidation Auction, an Eligible Claimant must return the Election, Assignment, and Release by completing it electronically on the Election Agent's website at https://dm.epiq11.com/lehman, by emailing an executed PDF copy to LBHIelection@epiqglobal.com, or by mailing an executed copy via overnight delivery or courier service to the address provided in the Eligible Claimant Notice. **The submission must be *received* by the Election Agent or submitted electronically on or before the Election Deadline to be deemed timely.**

(c)    The Rate (*i.e.,* the purchase price for each Eligible Claim) will become known on or around November 11, 2019. **If an Eligible Claimant desires to wait for such Rate to be announced before submitting its Election, Assignment, and Release, the Plan Administrator strongly encourages that such submission be made electronically on the Election Agent's website at https://dm.epiq11.com/lehman or by email to LBHIelection@epiqglobal.com**.

(d)    The Plan Administrator will not accept any negotiation of, or amendment to, the Election, Assignment, and Release.

(e)    The Plan Administrator, in consultation with the Sponsor, may consider, but is not obligated to accept, Election, Assignment, and Release submissions received or electronically submitted after the Election Deadline. Further, the Plan Administrator, in consultation with the Sponsor, may consider, but is not obligated to waive any irregularities with Election, Assignment, and Release submissions.

(f)    An Eligible Claim, with respect to which a validly executed (as determined by the Plan Administrator) Election, Assignment, and Release is submitted, shall be deemed an "Electing Claim" and the party submitting an Electing Claim, an "Electing Claimant."

(g)    Any Electing Claimant must be the owner of such Eligible Claim on the Record Date.    The LBHI claims register, available on the Election Agent's website at https://dm.epiq11.com/lehman, is determinative of claim ownership. The list of Eligible Claims will be available on the Election Agent's website on or around September 27, 2019.

(h)    The terms of the Election, Assignment, and Release are binding and irrevocable upon submission as to the Electing Claim and the Electing Claimant.

(i)    The Plan Administrator may, but is not required to, work with any holder of an Eligible Claim to cure any deficiencies in a submitted Election, Assignment, and Release.

(j)    The Plan Administrator shall (a) have the discretion to determine whether submitted Election, Assignment, and Releases are valid pursuant to these Procedures and (b) have no obligation to notify Eligible Claimants of the validity or invalidity of any Election, Assignment, and Releases at any time.

(k)    Notices Regarding Electing Claims.    Within five business days following the Election Deadline, the Plan Administrator will file with the Court a notice identifying all Electing Claims (the "Notice of Electing Claims") and concurrently pay any Court fees associated with transferring claims out of the Deposit received from each respective Sponsor.

WEIL:\96776666\16\58399.0011

(i)        Upon the filing of the Notice of Electing Claims, all Electing Claims will be deemed cancelled and expunged, and each respective winning Sponsor will receive a consolidated claim with (a) a single claim number and (b) an Allowed amount equal to the amount of such canceled and expunged Electing Claims attributable to the Eligible Class for which the Sponsor submitted the winning Sponsor Bid.[3]

## VII.    Disbursement of Purchase Price Payment

(a)      If a Sponsor is selected for an Eligible Class, each Electing Claim in that Eligible Class will be entitled to a payment equal to the product of the allowed amount of such Electing Claim multiplied by the Rate applicable to its respective Eligible Class (the "Purchase Price Payment").

(b)      Disbursement of Purchase Price Payment.

(i)        On or around **November 27, 2019,** or as soon as reasonably practicable thereafter, the Plan Administrator, acting on behalf of and without liability to the Sponsor for this limited purpose, shall disburse, via check or wire, in the Plan Administrator's discretion, to each Electing Claimant, the Purchase Price Payment associated with each Election Claim.  Nothing in these Procedures shall impair the right of the Plan Administrator and the Election Agent to take all actions necessary to comply with applicable withholding and reporting requirements and to deduct any federal, state, or local withholding taxes from the disbursement of the Purchase Price Payment, as may be required.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been disbursed to and received by the applicable Electing Claimant.  **If an Eligible Claimant would like to change its payment instructions for payment of the Purchase Price Payment from the Eligible Claimant's current payment instructions, such request must be made by November 1, 2019.  To the extent an Eligible Claimant has requested payment by wire transfer, payment will be sent by wire transfer and the wire fee shall be deducted from the payment amount. The per wire fee is $20 for a transfer to a U.S. bank account or $35 for a transfer to a non-U.S. bank account**.

(ii)      Request to Disburse.  The Plan Administrator, or the Election Agent at the Plan Administrator's instruction, will disburse the Purchase Price Payment to the Electing Claimants pursuant to section VII(a) at the request of and on behalf of the Sponsor.  As provided in the Procedures Order and without limiting the language therein, the Plan Administrator shall not incur any liability to the Sponsor with respect to any actions taken on

---

[3] Subject to *pro rata* allocation pursuant to section III(e).

WEIL:\96776666\16\58399.0011

behalf of the Sponsor for the limited purpose of disbursing the Purchase Price Payment.

(c)    Receipt of Sponsor Payment.  Disbursement of the Purchase Price Payment will be subject to the Plan Administrator's receipt of the Sponsor Payment from the Sponsor.  The cash comprising the Sponsor Payment remains property of the Sponsor until it has been received by the Electing Claimants and is not the property of the LBHI estate at any point (except as provided for in section VII(d)).  In no case will disbursements of the Purchase Price Payment be made from funds of the LBHI estate.  The Sponsor Payment, to the extent it is within the control of the Plan Administrator, will be segregated from, and not commingled with, the LBHI estate's funds or any other funds managed by the Plan Administrator.

(d)    Application of Undeliverable Distribution Procedures.    The distribution procedures set forth in the Plan (including Plan section 8.7 with respect to undelivered mailings and Plan section 8.9 with respect to checks that are not negotiated within 90 days), and its provisions for noticing shall be generally effective with respect to the Electing Claims and the disbursement of the Purchase Price Distribution.  Without limitation, specific applications include: if a Purchase Price Distribution has not been collected by the Electing Claimant, then (a) the Election, Assignment, and Release shall remain effective in all respects, and (b) all rights to payment of the Purchase Price Distribution shall be deemed waived and become property of the LBHI estate without any right to recovery by the Electing Claimant (against the Plan Administrator or the Sponsor) or the Sponsor (against the Plan Administrator).  Nothing in this subsection shall limit Sponsor's right to receive any future interim or final distributions.

(e)    From time to time and not less than once per month, the Plan Administrator will provide the Sponsor with a report regarding the confirmed receipt of the Purchase Price Payment.  The Plan Administrator is not required to provide to the Sponsor any other information or reports regarding effectuation of the Purchase Price Payment.

(f)    Reasonably promptly following its determination that all Electing Claims have either received their Purchase Price Payment or have been deemed to have waived their right to receive such Purchase Price Payment, the Plan Administrator shall file with the Court a notice providing confirmation that all Purchase Price Payments have either been received by the Electing Claimants or have been waived pursuant to section VII(d).

## VIII.    Obligations of the Sponsor

(a)    Deposit.

(i)    By 2:00 pm (ET) on the first business day after receiving notification from the Plan Administrator that it has been selected as a Sponsor for an Eligible Class, the Sponsor shall submit to the Plan Administrator by wire transfer of immediately available funds a cash deposit (the "Deposit") in the amount of ten percent (10%) of the product of (y) the sum of the allowed amounts of all Eligible Claims in its applicable Eligible Class and (z) the Rate applicable to such Eligible Class (the "Sponsor Ceiling

Amount"). The Plan Administrator may, in its sole discretion, waive the requirement of this section.

(ii)     The Deposit shall not be considered LBHI estate property except pursuant to section VII(d). Interest, if any, that accrues on the Deposit shall become property of the LBHI estate and not returnable or applicable as set forth in this section VIII(a).

(iii)     The Deposit shall be used to pay the transfer fees in accordance with section VIII(c) and applied to the applicable Sponsor Payment. To the extent the Deposit exceeds the amount of the applicable Sponsor Payment, such excess will be returned to the applicable Sponsor.

(iv)     If the Sponsor fails to consummate the Claims Consolidation Auction as contemplated by its Sponsor Bid, the Plan Administrator will not have any obligation to return the Deposit. The Deposit may be retained by the Plan Administrator as liquidated damages, and the Plan Administrator shall have any and all rights, remedies, or causes of actions that may be available to the Plan Administrator. Nothing in these Procedures shall limit all available remedies of the Plan Administrator against a defaulting Sponsor, including with respect to specific performance. In the event that the Claims Consolidation Auction is terminated with respect to the Eligible Class for which the Sponsor submitted the Deposit pursuant to section IX for any reason other than the Sponsor's failure to consummate the Claims Consolidation Auction, the Deposit will be returned to the applicable Sponsor.

(b)     Claims Consolidation Auction Funding. Upon three days' written notice from the Plan Administrator and no later than three business days following the filing of the Notice of Electing Claims, the Sponsor shall remit or transfer to the Plan Administrator U.S. Dollars in the amount necessary to fully fund Purchase Price Payments to all Electing Claimants (each, a "Sponsor Payment"). The Sponsor Payment will be calculated as the product of (a) the sum of the allowed amount of all Electing Claims for such Sponsors applicable Eligible Class multiplied by (b) the Rate applicable to such Eligible Class.

(c)     Transfer Fees. In addition to the Sponsor Payment, each Sponsor shall pay to the Plan Administrator any and all Bankruptcy Rule 3001(e)(2) transfer fees, which will be paid by the Plan Administrator (out of the funds deposited by each respective Sponsor pursuant to section VIII(a)) to the Court upon the Plan Administrator's filing of the Notice of Electing Claims. This amount will be calculated as the product of (a) the number of Electing Claims and (b) twenty-five dollars. The payment shall be due at the same time as the Sponsor Payment is due to the Plan Administrator.

(d)     Expenses. No Prospective Sponsor or Sponsor shall be entitled for any reason to be reimbursed by the Plan Administrator or LBHI for any costs or expenses incurred in connection with its submitting a Sponsor Bid, performing as the Sponsor, or for any other reason.

(e)    <u>Cooperation with the Plan Administrator</u>.  The Sponsor will reasonably cooperate with the Plan Administrator as necessary for the effectuation of the Claims Consolidation Auction.

## IX.    Termination

(a)    <u>Plan Administrator's Unlimited Right to Terminate</u>.  At any time before the full amount of the Sponsor Payment is funded for an applicable Eligible Class (including, in the case of multiple Sponsors for a single Eligible Class, if a Sponsor does not fund its *pro rata* share), the Plan Administrator may, in the Plan Administrator's sole and absolute discretion, for any reason whatsoever and without need for approval from the Bankruptcy Court, terminate the Claims Consolidation Auction in full or with respect to certain Eligible Claims.  The Plan Administrator may terminate the Claims Consolidation Auction for any single class of Eligible Claims for any reason (while allowing the Claims Consolidation Auction for other classes of Eligible Claims to proceed).

(b)    <u>Effect on Electing Claims</u>.  In the event the Plan Administrator exercises its right to terminate pursuant to this section, (i) any Election, Assignment, and Release submitted by an Electing Claimant with respect to an Electing Claim for which the Claims Consolidation Auction is terminated shall automatically terminate and neither the Electing Claimant nor the Plan Administrator shall have any further rights or obligations under the Election, Assignment, and Release and (ii) such Electing Claimant shall have the same interests, rights, entitlements, and claims in respect of the Electing Claim as if the Claims Consolidation Auction had never occurred.

9

## **Exhibit 2**

**Form of Sponsor Bid**

WEIL:\96776666\16\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                            :
In re                                                       :        **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (SCC)**
                                                            :
                        **Debtors.**                        :        **(Jointly Administered)**
                                                            :
----------------------------------------------------------------x

## SPONSOR BID FORM

[__] ("<u>Prospective Sponsor</u>") hereby submits the following final and binding bid or bids in accordance with those certain procedures (the "<u>Procedures</u>") that have been approved by order of the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") entered on September [__], 2019 (ECF No. [__]) in the above-captioned chapter 11 cases, executed by the undersigned on [__], 2019 (the "<u>Sponsor Bid</u>") which shall be irrevocable upon submission and become effective in accordance with the Procedures. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Procedures.

1.    Prospective Sponsor hereby offers to perform as Sponsor under the Procedures as expressed in the Sponsor Bid (including each of its commitments as described in this Sponsor Bid and all provisions of the Procedures Order) and agrees that this Sponsor Bid is irrevocable upon submission and binding on the Prospective Sponsor upon (a) the Plan Administrator accepting its Sponsor Bid and (b) approval by the Court of the Sponsor pursuant to the Election Order.

2.    Prospective Sponsor hereby commits to purchase all Electing Claims in applicable Eligible Class at the rate(s) (the "<u>Rate</u>") specified below, which shall be equal to or greater than the Minimum Rate (as defined in the Procedures) for each Eligible Class:

| Eligible Class | Rate (X.XXX%) | Minimum Rate |
|---|---|---|
| LBHI Class 3 | | |
| LBHI Class 4A | | |
| LBHI Class 4B | | |
| LBHI Class 5 | | |
| LBHI Class 7 | | |
| LBHI Class 8 | | |
| LBHI Class 9A | | |

In addition, to the extent Prospective Sponsor has indicated and committed to purchasing the Eligible Claims in multiple Eligible Classes in the chart above, Prospective Sponsor hereby agrees and acknowledges that, in accordance with

section III(f) of the Procedures, this Sponsor Bid with respect to each respective Eligible Class is separate from and not conditioned on its Sponsor Bid being accepted with respect to any other Eligible Class for which the Sponsor Bid was placed.

3.      Prospective Sponsor hereby commits to, in accordance with section VIII(a) of the Procedures, deposit with the Plan Administrator by 2:00 pm (ET) on the first business day after receiving notification from the Plan Administrator that it has been selected as a Sponsor for an Eligible Class, an amount equal to the 10% of the Sponsor Commitment Ceiling (the "Deposit") for each Eligible Class for which the Prospective Sponsor is submitting its Sponsor Bid.  Based on the Rate specified above, Prospective Sponsor hereby commits to deposit the amount(s) specified below:

| Eligible Class | Required Deposit |
|---|---|
| LBHI Class 3 | $[__] |
| LBHI Class 4A | $[__] |
| LBHI Class 4B | $[__] |
| LBHI Class 5 | $[__] |
| LBHI Class 7 | $[__] |
| LBHI Class 8 | $[__] |
| LBHI Class 9A | $[__] |

4.      Prospective Sponsor hereby commits to pay Plan Administrator for any and all Bankruptcy Rule 3001(e)(2) transfer fees, which will be paid by the Plan Administrator to the Court (out of the funds deposited by each respective Sponsor pursuant to section VIII(a) of the Procedures) upon the Plan Administrator's filing of the Notice of Electing Claims.   This amount will be calculated as the product of (a) the number of Electing Claims and (b) twenty-five dollars.  Prospective Sponsor hereby agrees to make such payment in accordance with section VIII(c) of the Procedures.

5.      Prospective Sponsor hereby agrees to perform all obligations as Sponsor pursuant to, without material modification, the Claims Consolidation Auction Orders, the Procedures, and the Ancillary Documents (as defined in section II(b)(iii)) of the Procedures.

6.      Prospective Sponsor hereby represents that it has the financial capability to fund Sponsor Payment (as defined in section VIII(b) of the Procedures).  To the extent this Sponsor Bid relies on or requires external financing, Prospective Sponsor intends to work with the following institution(s) to provide such financing:

| Financial Institution(s) |
|---|
|  |

7.      Prospective Sponsor hereby represents that it is acting solely as principal and not on behalf of (or in concert with) any third party, except with respect to the entities named below (if Prospective Sponsor is acting on behalf of or proposes to use managed funds or subsidiaries to perform its obligations as the Sponsor (including, without limitation, funding the Sponsor Payment), then the Sponsor Bid must name all entities that will be involved, including the jurisdiction in which such entity is organized and operates and the relationship between the entities):

| Third-Party | Detailed Description of Relationship | Jurisdiction |
|---|---|---|
|  |  |  |

8.      Except with respect to those persons or entities disclosed in section 7 of this Sponsor Bid, Prospective Sponsor hereby represents and warrants that neither it, nor any of its affiliates, partners, managers, members, trustees, directors, officers, employees, or any of its third-party advisors, including but not limited to, agents, accountants, financial advisors, legal advisors, and consultants ("Representatives") have (a) disclosed to any other person or entity any bid information or bidding strategies in connection with this Sponsor Bid or the matters related to the Claims Consolidation Auction, and (b) have not, directly or indirectly, entered into any agreement, arrangement or understanding, or any discussions which might lead to such agreement, arrangement or understanding, with any other person or entity, including, but not limited to, other potential Sponsors in each case, regarding this Sponsor Bid of the Claims Consolidation Auction.

9.      Prospective Sponsor hereby confirms that it is a "United States person" within the meaning of Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended.

10.     Prospective Sponsor hereby represents that it has obtained all necessary corporate or internal approvals to perform as Sponsor in accordance with this Sponsor Bid.

11.     The name, title, telephone number, cell phone number, and email address of the person designated as contact person to answer questions regarding this bid are below:

| Contact Information |
|---|
|  |

WEIL:\96776666\16\58399.0011

IN WITNESS WHEREOF, the undersigned has duly executed this Sponsor Bid by its duly authorized representative dated the __ day of ____, 2019.

**Prospective Sponsor**
[name]

_____
Name:
Title:

## Exhibit 3

**Eligible Claimant Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                  :

In re                            :        Chapter 11 Case No.
                                  :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :       08-13555 (SCC)
                                  :

                Debtors.        :        (Jointly Administered)
                                  :

----------------------------------------------------------------x

### NOTICE OF OPPORTUNITY TO SELL YOUR CLAIM

---

**There is limited time to sell your claim in a Bankruptcy Court-approved process.**
**Your participation in the process is voluntary, but**
**your response must be <u>received by 6:00 pm (ET) on November 14, 2019 </u>to participate.**

**Please review the following notice carefully.**

---

Dear Eligible Claimant,

      You have received this notice because you are the record holder of one or more Eligible Claims against Lehman Brothers Holdings Inc. ("<u>LBHI</u>"), as outlined in the attached Election, Assignment, and Release agreement.

      LBHI intends to make its next interim distribution pursuant to its chapter 11 plan on October 3, 2019 ("<u>D19</u>").

      **The United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>") has approved a process that provides you with an opportunity to sell and monetize the remaining value of your claim after you receive the D19 payment (the "Claims Consolidation Auction"). This process will allow you to monetize your claim in the short term, in November 2019, rather than waiting for future distributions over time from LBHI.**

      LBHI is conducting an auction and will be soliciting bids from parties wishing to purchase thousands of claims against LBHI, including yours. The purchase price for such claims will be determined pursuant to a competitive market based auction. **The final proposed purchase price will be announced on or around November 11, 2019 at the following website: https://dm.epiq11.com/lehman. You may choose to participate in the auction at any point from now until 6:00 pm (ET) on November 14, 2019, although your response must be *received* by that time and date. You <u>do not</u> need to wait until the purchase price is announced to elect to sell your claim(s) in the auction.** The Court will approve the winning bid selected by LBHI as the best and highest bid for your claim, which, at a minimum if a

Sponsor is selected, will be greater than or equal to the "Minimum Sale Proceeds" listed on **Schedule A** of the Election, Assignment, and Release attached hereto.

The enclosed Procedures provide further information regarding this process. Additional information regarding LBHI's chapter 11 case, including LBHI's recent financial reports, can be found at https://dm.epiq11.com/lehman.

**If you wish to participate in this process to sell your claim, you must execute and return the enclosed Election, Assignment, and Release <u>so that it is actually received</u> by the Election Agent by 6:00 pm (ET) on November 14, 2019**. You may:

- complete the Election, Assignment, and Release electronically at https://dm.epiq11.com/lehman using the logon credentials found in the instructions to the Election, Assignment, and Release;

- email a PDF of an executed copy of the Election, Assignment, and Release to LBHIelection@epiqglobal.com;

- mail (or deliver by overnight or courier service) an executed copy of the Election, Assignment, and Release to:

    o **If by First Class Mail:**

        LBHI Election Processing
        c/o Epiq Corporate Restructuring, LLC
        P.O. Box 4422
        Beaverton, OR 97076-4422

    o **If by Overnight/Hand Delivery:**

        LBHI Election Processing
        c/o Epiq Corporate Restructuring, LLC
        10300 SW Allen Blvd.
        Beaverton, OR 97005

If you choose to wait until the final purchase price is announced on or around November 11, 2019 to submit the enclosed Election, Assignment, and Release, you will have <u>limited time</u> to deliver such executed Election, Assignment, and Release in the manner described above. **Accordingly, the Plan Administrator strongly encourages you to make plans in advance to submit your Election, Assignment, and Release electronically at https://dm.epiq11.com/lehman to ensure that it is received by 6:00 pm (ET) on November 14, 2019.**

**Your participation in the Claims Consolidation Auction is <u>voluntary</u>.** LBHI takes no position as to whether you should participate and does not opine as to whether your participation in this process will result in a payment that is the same, greater, or less than the amount you would receive through a final distribution from the estate if you do not participate.

If you have not submitted both the appropriate (i) Internal Revenue Service tax form ("Tax Form") and (ii) certification pertaining to Office of Foreign Assets Control compliance ("OFAC Certification") by 6:00 pm (ET) on November 14, 2019, your claim may not be eligible to participate in the Claims Consolidation Auction. For further information concerning the Tax Form and OFAC Certification, please review the *Notice to Holders of Allowed Claims Regarding Plan Distributions*, dated February 15, 2012 [ECF No. 25392]. Copies of the Tax Form and form for OFAC Certification are available at https://dm.epiq11.com/lehman. **Consult the claims register on this website to determine whether a Tax Form previously submitted is still valid.**

If you do not have an attorney in this case, you may wish to consult one before electing to participate in the sale process.

If you have any questions or would like additional copies of this notice and related materials, please contact the Plan Administrator's representatives by telephone at +1-503-520-4416 or toll free in the United States at 855-939-0539, by email at LBHIelection@epiqglobal.com, or by mail at the address set forth above.

Dated:    New York, New York
          September [__], 2019

## Exhibit 4

**Election, Assignment, and Release**

## LEHMAN BROTHERS HOLDINGS, INC. CLAIMS CONSOLIDATION AUCTION
## ELECTION, ASSIGNMENT, AND RELEASE INSTRUCTIONS

If you wish to sell your claim in the Claims Consolidation Auction, you must execute and return the signature page to the Election, Assignment, and Release on the following pages so that it is actually **received** by the Election Agent by **6:00 pm (ET) on November 14, 2019**.

You may submit the Election Form in several ways, as follows:

(1) **Online (preferred method)**: You may complete the Election Form electronically on a secure site at: https://dm.epiq11.com/lehman using the following logon credentials:
- Creditor Name: «Name»
- Your <u>User Access Code</u>: «User_Access_Code»

(2) **Via Email**: You may scan a complete and executed copy of this Election Form and email it to LBHIelection@epiqglobal.com; or

(3) **Via Mail, Overnight Mail or Hand Delivery**: You may send a complete and executed copy of this Election Form to one of the addresses below:

| If by First-Class Mail: | If by Hand Delivery or Overnight Mail: |
|---|---|
| LBHI Election Processing<br>c/o Epiq Corporate Restructuring, LLC<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | LBHI Election Processing<br>c/o Epiq Corporate Restructuring, LLC<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |

**THE DEADLINE FOR SUBMISSION IS 6:00 PM (ET) ON NOVEMBER 14, 2019. WE MUST <u>RECEIVE</u> YOUR EXECUTED SIGNATURE PAGE BY THIS DATE IF YOU WISH TO PARTICIPATE AND RECEIVE A FINAL PAYMENT.**

**THE FINAL AUCTION PRICE(S) WILL BE MADE AVAILABLE ON OR AROUND NOVEMBER 11, 2019 ON THE ELECTION AGENT'S WEBSITE AT HTTPS://DM.EPIQ11.COM/LEHMAN AND YOU WILL BE NOTIFIED ACCORDINGLY. YOU MAY EITHER RESPOND NOW OR WAIT TO RESPOND ONCE YOU ARE NOTIFIED OF THE FINAL AUCTION PRICE.**

If you choose to wait until the final purchase price is announced on or around November 11, 2019 to submit the enclosed Election, Assignment, and Release, you will have <u>limited time</u> to deliver such executed Election, Assignment, and Release in the manner described above. **Accordingly, the Plan Administrator strongly encourages you to make plans in advance to submit your Election, Assignment, and Release electronically at https://dm.epiq11.com/lehman to ensure that it is received by 6:00 pm (ET) on November 14, 2019.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,        :        **08-13555 (SCC)**
                                                    :
                        **Debtors.**                :        **(Jointly Administered)**
                                                    :
------------------------------------------------------------------x

### Election, Assignment, and Release

      This Election, Assignment, and Release is executed by the creditor set forth on the signature page (the "Claimant") with regard to the Lehman Brother Holdings Inc. allowed claim(s) which are indicated by Claimant as an electing claim on the signature page hereto and **Schedule A** attached hereto (the "Claim"). The Procedures (as defined herein) are incorporated by reference and made part of this Election, Assignment, and Release as if set forth herein in full, but in the event of any inconsistency between the Procedures and this Election, Assignment, and Release, the terms of this Election, Assignment, and Release shall govern.

## RECITALS

      A.    **WHEREAS**, the Bankruptcy Court for the Southern District of New York (the "Court") entered the *Procedures Order* (ECF No. [_____]) on [date], thereby approving the procedures set forth in Exhibit 1 thereto (the "Procedures")[1] and the form of this Election, Assignment, and Release;

      B.    **WHEREAS**, the Claimant desires to avail itself of the Claims Consolidation Auction and receive the Purchase Price Payment in the amount to determined at the Claims Consolidation Auction in November 2019 in consideration of Claimant's rights, title, and interests in, to and under, or arising out of, in connection with or related to the Claim.

## TERMS

**I.**    **Election**

      A.    <u>Participation</u>.    The Claimant hereby elects to participate in the Claims Consolidation Auction as approved by the Court and, accordingly, assigns the Claim to the Sponsor as described in section 2 herein and releases the Released Persons as described in section 3 herein.

      B.    <u>Warranties</u>.  The Claimant represents and warrants that it:

---

[1] Defined terms used but not defined herein shall have the meaning ascribed to them in Procedures.

(i) Will participate in the Claims Consolidation Auction pursuant to the terms and conditions set forth herein and in the Procedures, all relevant materials regarding which—specifically the materials in the Solicitation package—the Claimant has received and reviewed;

(ii) Is timely submitting this executed Election, Assignment, and Release by submitting it electronically or delivering it to LBHI so as to be *received* on or before **6:00 pm (ET) November 14, 2019**;

(iii) Acknowledges that the amount of the Purchase Price Payment will not be known until on or around November 11, 2019 and accepts such Purchase Price Payment as sufficient consideration for the assignment of its Claim and provision of the releases contained herein;

(iv) Was the sole legal and beneficial owner of the Claim on the Record Date of September 20, 2019 and is the owner of the Claim at the date that it is executing this Election, Assignment, and Release;

(v) Acknowledges that the assignment and transfer of the Claim to the Sponsor will be deemed effective upon the Plan Administrator's filing of the Notice of Electing Claimants on the docket of LBHI's chapter 11 case, as provided for in the Procedures approved by the Bankruptcy Court;

(vi) Acknowledges that by electing to participate in the Claims Consolidation Auction, it will forgo any and all future distributions after D19 (except the Purchase Price Payment) on the Claim and will no longer be a creditor or allowed claimholder of the LBHI estate;

(vii) Is aware of no liens or judgments against the Claim, and acknowledges and agrees that, to the extent that the Claim may be subject to any liens or judgments, delivery of the Purchase Price Payment will be subject to any such liens or judgments;

(viii) Acknowledges that it has adequate information concerning the LBHI estate to make an informed decision regarding its participation in the Claims Consolidation Auction and has independently and without reliance on any Released Person (as defined herein) made its own decision to participate in the Claims Consolidation Auction;

(ix) Acknowledges and agrees that the Plan Administrator may provide relevant tax information of the Electing Claimant to the Sponsor, as necessary, for purposes of effectuating the transfer of the Claim;

(x) Acknowledges and agrees that the Plan Administrator and the Election Agent are authorized to take all actions necessary to comply with applicable tax withholding and reporting requirements and shall be entitled to deduct any federal, state, or local withholding taxes from the disbursement of the Purchase Price Payment as necessary.  Any amounts

WEIL:\96776666\16\58399.0011

withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the Claimant;

(xi)     Acknowledges that none of the Released Parties (as defined herein) make any representation as to whether any payment made to, or amount received by, Claimant pursuant to the Claims Consolidation Auction in relation to the Claim will be the same, greater or less than any amount Claimant would or may have otherwise received in respect of such Claim had Claimant not participated in the Claim Consolidation Auction;

(xii)    Acknowledges that, at any time prior to paying the Purchase Price Payment, the Plan Administrator may, in his sole and absolute discretion, terminate the Claims Consolidation Auction in respect of the Claim; and

(xiii)   Authorizes the undersigned with the full power and authority to participate the Claim in the Claims Consolidation Auction and execute this Election, Assignment, and Release.

## II.    Assignment

A.    <u>Assignment</u>.  The Claimant hereby irrevocably assigns and transfers to the Sponsor the Claim and all rights, including any and all claims and causes of action and any proceeds derived therefrom, that the Claimant may have against any party, arising out of or relating to the Claim, excluding distributions made by the Plan Administrator before the date of this Election, Assignment and Release and excluding the Purchase Price Payment.

B.    <u>Transfer</u>.  The Claimant hereby authorizes the Plan Administrator to reflect the assignment of the Claim as a transfer on the register of LBHI claims pursuant to this Election, Assignment, and Release and the Procedures.

## III.    Release

A.    By executing this Election, Assignment, and Release, the Claimant, on behalf of his, her, or their heirs, successors, and assigns, unconditionally and irrevocably releases and forever discharges the Sponsor and its agents, employees, officers, directors, professionals, successors and assigns; the Plan Administrator and his agents, employees, professionals, successors and assigns; the Election Agent and all of its agents, employees, officers, professionals, successors and assigns; and the LBHI estate (all of the foregoing, collectively, the "<u>Released Persons</u>") of and from any and all claims or causes of action arising out of or relating to the Claim, the circumstances that gave rise to the Claim, and any other transactions or dealings with LBHI or any entity or other person affiliated with LBHI relating to the Claim, which the Claimant now has, or hereafter can, shall, or may have, for or by any reason of any cause, matter, or thing whatsoever, prior to and including the date of execution hereof.  Claimant agrees that in the event it receives any distributions with respect to the Claim other than the Purchase Price Payment after the date of this Election, Assignment, and Release, such distributions shall be promptly returned to the Plan Administrator

WEIL:\96776666\16\58399.0011

# SIGNATURE PAGE TO ELECTION, ASSIGNMENT, AND RELEASE

### *If you do not return this signature page,*
### *you will be deemed to have declined to participate and not sell any of your claims.*

---

**SECTION 1**: **Name & Contact Information**

The contact information provided below will be used only in connection with this Election Form

CREDITOR NAME:

CONTACT NAME:
(If different from the Creditor)

EMAIL ADDRESS:

PHONE NUMBER:

---

**SECTION 2**: **Please indicate your participation below**

☐    I **elect** to participate and agree to sell **all** of my claims listed on the attached **Schedule A**.

☐    I **elect** to participate and agree to sell **certain** of my claims as indicated on the attached **Schedule A.**

☐    I **decline** to participate and do not wish to sell any of my claims listed on the attached **Schedule A**.

---

**SECTION 3: Acknowledgement and Signature(s)**

The terms set forth in this Election, Assignment, and Release are hereby agreed to as set forth above.

If a second signatory is required, use the fields below.

By:                                                  By:

Name:                                             Name:

Title:                                               Title:

Date:                                               Date:

## SCHEDULE A

CREDITOR:

| CLAIM NUMBER | PLAN CLASS | ALLOWED AMOUNT | MINIMUM SALE PROCEEDS* | SELL THIS CLAIM |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

* This represents the minimum amount of cash you will receive based on the reserve price for the respective class.  The actual price will be equal to or greater than this amount.

**<u>Exhibit 5</u>**

**Notice of Electing Claims**

WEIL:\96776666\16\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                    :
In re                                                               :    **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (SCC)**
                                                                    :
                          **Debtors.**                              :    **(Jointly Administered)**
                                                                    :
-------------------------------------------------------------------x

### NOTICE OF ELECTING CLAIMS
### IN THE CLAIMS CONSOLIDATION AUCTION[1]

      **PLEASE TAKE NOTICE** that on September [__], 2019, this Court entered the Procedures Order (ECF No. [__]), and on November [__], 2019, this Court entered the Election Order (ECF No. [__]) (together, the "Claims Consolidation Procedures Order").

      **PLEASE TAKE FURTHER NOTICE** that the Claims Consolidation Procedures Orders authorized the Plan Administrator to, among other things, provide evidence and notice of the Electing Claims and transfer the Electing Claims in accordance with Federal Rule of Bankruptcy Procedure 3001(e)(2).

      **PLEASE TAKE FURTHER NOTICE** that the Electing Claims scheduled hereto as Exhibit A have been filed in this case and Allowed in [LBHI Class __]. The Plan Administrator hereby gives evidence and notice, pursuant to the Claims Consolidation Orders, of the assignment and transfers of these Electing Claims to the following Sponsor:

[Sponsor's Name]

[Address Line 1]
[Address Line 2]
[Address Line 3]

      **[PLEASE TAKE FURTHER NOTICE** that the Electing Claims scheduled hereto as Exhibit B have been filed in this case and Allowed in [LBHI Class __]. The Plan Administrator hereby gives evidence and notice, pursuant to the Claims Consolidation Orders, of the assignment and transfers of these Electing Claims to the following Sponsor:

[Sponsor's Name]

[Address Line 1]
[Address Line 2]
[Address Line 3]]

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Procedures, attached as Exhibit 1 to the Procedures Order. (ECF No. [__].)

**PLEASE TAKE FURTHER NOTICE** that the Electing Claims scheduled hereto as <u>Exhibit C</u> have been filed in this case and Allowed in [LBHI Class __].  The Plan Administrator hereby gives evidence and notice, pursuant to the Claims Consolidation Orders, of the assignment and transfers of these Electing Claims to the following Sponsor:

[Sponsor's Name]

[Address Line 1]
[Address Line 2]
[Address Line 3]

**PLEASE TAKE FURTHER NOTICE** that assignment and transfer of the Electing Claims to [each] Sponsor shall be deemed effective upon the filing of this Notice.

Dated:  New York, New York
       November [__], 2019

WEIL:\96776666\16\58399.0011

## Exhibit C

**Proposed Election Order**

WEIL:\96776666\16\58399.0011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                           :
In re                                                      :        **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,               :        **08-13555 (SCC)**
                                                           :
                                    **Debtors.**           :        **(Jointly Administered)**
                                                           :
-------------------------------------------------------------------x

**ORDER AUTHORIZING PLAN ADMINISTRATOR**
**TO EFFECTUATE CLAIMS CONSOLIDATION AUCTION**

Upon the motion (the "Motion"),[1] dated August 23, 2019 of Lehman Brothers

Holdings Inc. ("LBHI"), as Plan Administrator under the *Modified Third Amended Joint Chapter*

*11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan"), pursuant to

sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") for an

for entry of an order (the "Election Order") authorizing the Plan Administrator to proceed with

presenting the Claims Consolidation Auction to Eligible Claimants; the Bankruptcy Court having

approved the Procedures, the Notice,  the Election, Assignment, and Release, and the population

of Eligible Claims by order dated September [__], 2019 (the "Procedures Order"); and the Plan

Administrator having provided adequate and timely notice to all creditors and parties-in-interest

of the Motion and the documents approved by the Procedures Order; and it appearing that each

Sponsor submitted the highest and best offer to Electing Claimants for participation in the

Claims Consolidation Auction; and the Plan Administrator having complied in all respects with

the Procedures Order, and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; and (v) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635]; and it appearing that no other or further notice need be provided; and a hearing having been held on November 12, 2019 (the "Hearing") to consider the relief requested in the Motion and the Court having considered the any objections, and the Court having found and determined that the relief sought in the Motion is in the best interests of the Chapter 11 Estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A.    <u>Notice</u>.  Notice of the Procedures and the Purchase Price Notice was timely filed in accordance with the Procedures, was adequate and sufficient under the circumstances of these Chapter 11 Cases and this Court's Procedures Order.

B.    <u>Selection of Sponsor</u>.  The Plan Administrator's solicitation and selection of each Sponsor was made in accordance with the Procedures, and [Sponsor Name 1, Sponsor Name 2, etc.] each, as applicable, is capable to serve as Sponsor for its respective Eligible Class for the Claims Consolidation Auction.

C.    <u>Rate</u>.  The Rate is the highest and best offer that the Plan Administrator could obtain through the Procedures for payment by the Sponsor to Eligible Claimants for each

WEIL:\96776666\16\58399.0011

Eligible Class, and the Rate for each Eligible Class is fair, reasonable, and appropriate in light of the circumstances of these Chapter 11 Cases, and payment of the Purchase Price Payment constitutes fair, full and adequate consideration to the Electing Claimants for their Electing Claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The relief requested in the Motion, as supplemented by the Purchase Price Notice, is granted as set forth in this Election Order.

2.      Any objections to the entry of this Election Order or the relief granted herein that have not been withdrawn, waived, or settled, or otherwise resolved are hereby denied and overruled.

3.      [Sponsor Name] shall serve as the Sponsor in the Claims Consolidation Auction for [Class ___].

4.      The Rate to be applied in the Claims Consolidation Auction for each respective Eligible Class is approved.

5.      The Plan Administrator, the Election Agent, and the Sponsor are authorized to perform their obligations, comply with the terms of, and take all actions necessary to effectuate the Claims Consolidation Auction.

6.      The Plan Administrator is authorized to take all actions necessary to effectuate the relief granted pursuant to this Election Order.

7.      Pursuant to sections 105(a) and 1141 of the Bankruptcy Code, to the maximum extent permitted by the Bankruptcy Code and applicable law, neither the Plan Administrator, nor the Election Agent, nor any of their respective representatives, agents, officers, directors, employees, partners, advisors, attorneys, or other professionals (the "Estate Parties"), shall have

WEIL:\96776666\16\58399.0011

or incur any liability to, or be subject to any right of action for any act or omission in connection with, relating to, or arising out of the reasonable execution of the Claims Consolidation Auction.

8.      Without limiting the foregoing, the Estate Parties shall not be liable to the Sponsor in connection with the Claims Consolidation Auction provided that the full amount of each Sponsor Payment is, as set forth in section VIII(b) of the Procedures, disbursed to the applicable Electing Claimants, returned to the applicable Sponsor, or retained by the Plan Administrator solely as set forth in section VII(d) of the Distribution Procedures.

9.      Entry of this Election Order is without prejudice to the right of the Plan Administrator to seek a further order of this Court disallowing, expunging, objecting to, or otherwise resolving any unresolved claims.

10.     This Election Order shall be immediately effective and enforceable upon its entry.

11.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to this Election Order.


Dated:    New York, New York
          _____, 2019


          _____
          HONORABLE SHELLEY C. CHAPMAN
          UNITED STATES BANKRUPTCY JUDGE


4