Hearing Date and Time: September 10, 2019 at 2:30 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Garrett A. Fail

Attorneys for Lehman Brothers Holdings Inc.
and Certain of Its Affiliates

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
In re                                                             :    Chapter 11 Case No.
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., et al.,                            :    08-13555 (SCC)
                                                                  :
                                    Debtors.                      :    (Jointly Administered)
------------------------------------------------------------------x

## REPLY IN SUPPORT OF PLAN ADMINISTRATOR'S BRIEF ON REMAND IN SUPPORT OF FIVE HUNDRED NINETEENTH OMNIBUS OBJECTION TO CLAIMS

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. files this reply in further support of its *Brief on Remand in Further Support of Plan Administrator's Five Hundred Nineteenth Omnibus Objection to Claims* (ECF No. 59807) (the "Brief")[1] and respectfully represents as follows:

### REPLY

### I. Maverick Has Not Met Its Burden to Plausibly State a Claim

1. Maverick bears the burden to state a *prima facie* case for breach of a guarantee, which, under New York law, requires that Maverick to establish, among other things, the underlying debt on the Petition Date. (Br. ¶ 33.)

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Brief.

2. As set forth in the Brief and herein, Maverick failed to state a *prima facie* claim for an amount greater than the $4.3 million claim that LBHI agreed to allow. Maverick has not and cannot establish an unsatisfied "Obligation" of LBIE on the Petition Date greater than $4.3 million. Accordingly, Maverick's claims should be disallowed to the extent greater than $4.3 million.

3. In its Brief, LBHI argued that LBIE's Obligation to Maverick at any moment in time was for excess collateral only – the positive difference, if any, between the value of the posted collateral and the amount of Maverick's liabilities to LBIE.

4. In opposition to the Brief (ECF No. 59865) (the "Opposition"), Maverick *admits* this point, repeatedly and fatally. For example, Maverick *admits*:

> LBIE ***was at all times*** obligated to return Maverick's cash and securities to Maverick, ***net of amounts*** used to extinguish any debts that Maverick owed to LBIE under certain contracts concerning the borrowing of securities to facilitate "short" trades . . . and margin loans (*i.e.,* [MLA]s).

(Opp. ¶ 8 (emphasis added).) Maverick further *admits* that the "Obligations" LBHI guaranteed "included LBIE's obligation to provide Maverick a combination of offsets and payments reflecting the full value of all cash and securities owed by Maverick." (*Id.* ¶33.) Maverick *admits*: "Each of [five] Maverick Entities was a ***net creditor***, being owed a total of approximately $4.3 million by LBIE ***on a net basis***" as of the Petition Date. (*Id.* ¶12 (emphasis added).)

5. Maverick further *admits* the point by using a *net valuation methodology* to determine that a sixth "one of the Maverick Entities (i.e., Maverick Fund II) was a ***net debtor*** to LBIE on the Petition Date (for $15.9 million)." (*Id.*) Counter to its current line of argument, Maverick is not asserting that Maverick Fund II was a creditor on the Petition Date for the gross

amount of the collateral that it posted, even though Maverick Fund II did not formally settle with LBIE until 2012, along with the other Maverick Entities.

6. Maverick's admissions extend beyond phraseology in the Opposition. Maverick also *admits* that Maverick adopted and argued *LBHI's* position (*not Maverick's* current litigation position) in all of Maverick's negotiations with LBIE:

> Maverick insisted that the parties' positions should have been treated as though they had been closed-out and setoff on the Petition Date (a position consistent with this Court's frequently expressed intuitions about what would have been commercially reasonable).

(*Id.* ¶13.) Maverick *admits* it previously "rejected" the "legal position" Maverick is now advancing. (*Id.*) Indeed, as the Court stated in in *Ocean Transport Line, Inc. v. American Philippine Fiber Indus., Inc.*, 743 F.2d 85, 91 (2d Cir. 1984), quoting the decision of the U.*S.* Supreme Court in *Old Colony Trust Co. v. City of Omaha*, 230 U.S. 100, 118 (1913): "The parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent."[23]

7. Not surprisingly, therefore, Maverick has not been able to point LBHI, this Court, or the District Court to *a single* provision in the Prime Brokerage Documents or a *single* case that requires the Court to *ignore the purpose and function of collateral*.[4] Maverick has not pointed to *any* provision that *creates* an "Obligation" for LBIE to return *all* of its collateral

---

[2] Both bankruptcy courts and New York courts frequently examine events that take place prior to litigation to ascertain the original intent of the parties. *See*, *e.g.*, *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 60 (Bankr. S.D.N.Y. 2009); *Marine Midland Bank-Southern v. Thurlow*, 53 N.Y.2d 381, 387 (1981); *Cantrade Private Bank Lausanne Ltd. v. Torresy*, 876 F. Supp. 564, 573 (S.D.N.Y. 1995).

[3] The Prime Brokerage Documents are governed by New York law and it is of no significance that, subsequent to the Petition Date and LBIE's entry into a U.K. administration, LBIE argued for application of U.K. insolvency rules, or that Maverick ultimately settled with LBIE on terms other than what New York law or the Bankruptcy Code would have applied.

[4] As LBHI has shown, Maverick admits in each of its claims that its assets were held by LBIE as collateral for Maverick's obligations to LBIE and LBIE's affiliates, and the Prime Brokerage Documents make this clear as well. (*Br.* ¶¶12-18.)

3

custodied at LBIE rather than excess collateral. On this basis alone, Maverick has failed to sustain *its burden* to establish *prima facie* claims in excess of $4.3 million.

8. Maverick suggests "a lengthy exploration of the various provisions relied upon by LBHI is entirely unnecessary." (Opp. ¶24.) But the Court cannot ignore the plain language provisions of paragraphs 3 of the PB Agreement and 5 of the MLA, among others identified by LBHI, which support LBHI's position (and Maverick's admission) that LBIE's "Obligations" were "at all times" to return Maverick's collateral "net amounts used to extinguish any debts that Maverick owed to LBIE." (Opp. ¶ 8.)

9. Maverick suggests that the parties "expressly agreed" that LBIE's right to return only *excess* collateral exists only upon Maverick's default under the Prime Brokerage Documents. (Opp. ¶21 (directing the Court's attention to paragraph 4 of the PB Agreement and paragraph 10.2 of the GMSLA).) In other words, Maverick suggests that in all cases, in the ordinary course, absent a default by Maverick, LBIE would return all of Maverick's collateral, forgo its security – exactly when it would be needed – and become an unsecured creditor of Maverick for amounts that Maverick owes to LBIE when it came time to close out or settle amounts owed between the parties. Obviously no express language supports this interpretation. Maverick now asks the Court to adopt Maverick's commercially unreasonable inference rather than a plain reading. Indeed, Maverick cites no cases, and the Plan Administrator is aware of none, where collateral posted under a prime brokerage agreement was found to be owed separate and independent from the obligations that such collateral secured.[5] (*See* Br. ¶ 32-36.)

---

[5] Maverick relies heavily on factually inapposite *In re McLean Industries, Inc.*, 90 B.R. 614 (1988) for its interpretation of the Prime Brokerage Documents. (See Opp. 10.) *In re Mclean* involved a debtor that had a general depository account at a bank that had also issued a letter of credit on behalf of the debtor. In the debtor's bankruptcy case, the bank filed a motion seeking to lift the automatic stay to allow the bank to use funds in the general account to reimburse amounts the bank had paid pursuant to the letter of credit. The court denied the lift-stay motion primarily on the grounds that, in the negotiation of the letter of credit, the parties expressly agreed that the bank could not use funds from the general depository account to setoff amounts the bank paid out pursuant to the letter of

WEIL:\97156407\5\58399.0011

10. Notwithstanding prior arguments by the parties, the Court can determine independently now whether or not the last ten lines of paragraph 4 of the PB Agreement apply only in the event of a default by Maverick. There is nothing in those ten lines that requires that they be tethered to a default by Maverick.

11. The Court will recall that paragraph 4 of the PB Agreement is not required for the amount that LBHI guaranteed to be a net amount (and LBHI does not rely on it alone). As discussed previously, the PB Agreement provides that (the "Cumulative Rights Provision"):

> "The rights, remedies, benefits and protections afforded to each Lehman Brothers Entity under this Agreement and under any Contract you may have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are cumulative and in addition to any other rights, remedies, benefits and protections that any Lehman Brothers Entity may have. ***To the extent that the provisions of any Contracts you have with any Lehman Brothers Entity, whether heretofore or hereafter entered into, are inconsistent (whether the inconsistency be between the Contracts or within a single Contract), the conflict shall be resolved in favor of the provision which affords Lehman Brothers with the maximum rights, remedies, benefits or protections***."

(PB Agreement ¶32; *See* Hr'g. Tr. Mar. 24, 2017 (ECF No. 55115).) Thus, even if Maverick's cherry-picked provisions imply an entitlement to a gross claim, application of those provisions in such a manner would squarely conflict with ¶ 13 of the Master Prime Brokerage Agreement between LBIE and the Maverick funds, dated June 24, 1999 (*See* ECF No. 55046, Exhibit 1) and would be mooted by the Cumulative Rights Provision in the PB Agreement. Specifically, ¶ 13 of the Master Prime Brokerage Agreement provides:

> "On the occurrence of an Event of Default the following shall immediately occur[:]

---

credit, and accordingly, as a matter of New Jersey state law, the bank had no contractual (or other state law right) to setoff the amounts in the general account against funds paid pursuant to the letter of credit. In the case at hand, unlike in *McLean* where the funds did not secure the obligation, the collateral custodied at LBIE secured Maverick's obligations to the collective Lehman Entities. Maverick has identified no right to the return of the collateral custodied at LBIE absent satisfaction of the obligations that such collateral secured.

5

> (b) all . . . outstanding obligations of each party to deliver securities or Equivalent Securities or to pay cash to the other under this Agreement shall fall due for performance immediately;
>
> (c) the Non Defaulting Party shall establish, as at the Termination Date, the Default Market Values of all securities, Equivalent Securities and cash to be delivered or paid by each party under clause 13.l(b) above;
>
> (d) on the basis of the sums so established, an account shall be taken (as at the Termination Date) of what is due from each party to the other under this Agreement . . . and the sums due from one party shall be set off against the sums due from the other and only the balance of the account shall be payable (by the party having the claim valued at the lower amount) and such balance shall be due and payable on the next following Business Day."

(*See* ECF No. 55046, Exhibit 1).

## II. Maverick's Arguments Regarding Setoff Are Not Determinative or Persuasive

12. Maverick spends a significant portion of its Opposition discussing Bankruptcy Code permissible setoff and related case law. LBHI or LBIE's right to setoff is not the question presented by LBHI's Brief. The issue before the Court is a determination of Maverick's claims pursuant to section 502(b) of the Bankruptcy Code, which requires a calculation of contractual damages under New York contract law. *See* 11 U.S.C. 502(b) ("if . . . objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount."); *Latham Land I, LLC v. TGI Friday's, Inc.*, 96 A.D.3d 1327, 1331, 948 N.Y.S.2d 147, 151–52 (2012) ("[breach of contract] damages are typically expectation damages, measured by what it would take to put the non-breaching party in the same position that it would be in had the breaching party performed as promised under the contract"); *J.R. Loftus, Inc. v. White*, 85 N.Y.2d 874, 877, 649 N.E.2d 1196, 1198 (1995) ("If the parties intended the $90,000 fee to encompass both overhead during construction and profits as well, then awarding plaintiff that full amount would be improper. Consequently, the jury on a

6

new trial should be properly instructed so that any damage award plaintiff may recover will accurately reflect only anticipated profit or full contract price less the cost of performance.").

13. For purposes of its setoff arguments, Maverick assumes that it had on the Petition Date a gross claim against LBIE for the total value of its collateral and a separate liability to LBIE that was not setoff on the Petition Date. As set forth in the Brief and above, however, on the Petition Date, LBIE owed Maverick only a net amount totaling $4.3 million. Maverick's attempt to recharacterize the mechanics of the Prime Brokerage Documents which provide for the return of the net balance of the collateral as a "setoff" of distinct debts regulated by section 553 of the Bankruptcy Code is unpersuasive.[6] And, more importantly, such analysis is irrelevant to the determination of a claim as of the Petition Date pursuant to Section 502(b).

14. Accordingly, that LBIE and Maverick did not effectuate a closeout on the Petition Date and only reached a final settlement in 2012 is irrelevant. Indeed, Maverick appealed this Court's determination that the settlement date was the appropriate valuation date for Maverick's claims. If LBHI had not been a debtor on the Petition Date, LBHI could have delivered to Maverick $4.3 million in full and final settlement of all of LBIE's guaranteed Obligations. Maverick is not entitled to a larger claim for events that transpired subsequent to the Petition Date. *See In re Lehman Brothers Holdings Inc.*, 2019 WL 2323775, at *15 (Bankr. S.D.N.Y., 2019) (stating that "liability on a guarantee ceases to be contingent and is fixed after

---

[6] Maverick limited its setoff analysis to section 553 of the Bankruptcy Code. To the extent LBHI's right to setoff is at issue, such analysis is properly conducted pursuant to applicable state law and sections 502 and 558 of the bankruptcy code. *See In re White*, 260 B.R. 870, 883 (8th Cir. BAP (Neb. 2001) ("[Section 553] provision does not, however, address a debtor's right of setoff . . . debtor's right of setoff is governed by other provisions of the Bankruptcy Code and state law."); *In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bkrtcy.S.D.N.Y.1995) ("[W]e look to the parties contract and to applicable nonbankruptcy law to ascertain whether a debtor may offset its claim against a creditor's claim under either 11 U.S.C. § 502(b)(1) or 11 U.S.C. § 558"); *In re ADI Liquidation, Inc.*, 2015 WL 4638605, at *4 (Bankr.D.Del. 2015) (explaining that "[t]he Bankruptcy Code does not treat a debtor's and creditor's right to setoff equally"); *In re Westchester Structures, Inc.*, 181 B.R. 730, 740 (Bankr.S.D.N.Y.1995) ("The [debtor's] right to setoff is within the court's discretion and it may invoke equity to bend the rules, if required, to avert injustice").

7

the primary obligor has defaulted on its obligation; such default is the predicate to enforcement of the guarantee"); Maverick's Estimation Objection ¶ 18 ("LBHI's resulting liability under the [LBHI Guarantee] must be calculated based on . . . the date of breach (*i.e.*, September 15, 2008).").

## **CONCLUSION**

15. Based upon on all of the proceedings in these cases, the Maverick Claims should be disallowed to the extent they seek more than $4.3 million in aggregate.

Dated: August 27, 2019
       New York, New York

                                  /s/ Garrett A. Fail
                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York 10153
                                  Telephone: (212) 310-8000
                                  Facsimile: (212) 310-8007
                                  Garrett A. Fail

                                  Attorneys for Lehman Brothers Holdings Inc.
                                  and Certain of Its Affiliates