**Objection Date and Time: October 10, 2019 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: October 30, 2019 at 11:00 a.m. (Prevailing Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Attorneys for Lehman Brothers Holdings Inc.,*
*As Plan Administrator*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
In re                                                          :        Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,                         :        Case No. 08-13555 (SCC)
                                                               :
                               Debtors.                        :        (Jointly Administered)
-----------------------------------------------------------------------x

**NOTICE OF MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID**
**OF EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

　　　　**PLEASE TAKE NOTICE** that a hearing on the annexed motion ("**Motion**") of Lehman

Brothers Holdings Inc. ("**Plan Administrator**"), as Plan Administrator under the Modified Third

Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors

("**Plan**"), in aid of execution of the Plan with respect to Capital Partners Securities Co., Ltd., all

as more fully described in the Motion, will be held before the Honorable Shelley C. Chapman,

United States Bankruptcy Judge, in Courtroom 623, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004

("**Bankruptcy Court**"), on **October 30, 2019 at 11:00 a.m. (Prevailing Eastern Time)** (the

"Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 upon: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004; (ii) King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attn: Arthur Steinberg, Esq. and Scott Davidson, Esq., attorneys for the Plan Administrator; and (iii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: William K. Harrington, Esq. and Andrea B. Schwartz, Esq., so as to be so filed and received no later than **October 10, 2019 at 4:00 p.m. (Prevailing Eastern Time)** ("**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: New York, New York
      September 17, 2019

KING & SPALDING LLP


By: /s/ Arthur Steinberg
     Arthur Steinberg
     Scott Davidson
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

*Attorneys for Lehman Brothers Holdings*
*Inc., as Plan Administrator*

**Objection Date and Time: October 10, 2019 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: October 30, 2019 at 11:00 a.m. (Prevailing Eastern Time)**

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Attorneys for Lehman Brothers Holdings Inc.,*
*As Plan Administrator*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------------x

**MOTION OF THE PLAN ADMINISTRATOR FOR AN ORDER IN AID OF**
**EXECUTION OF THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN**
**OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

JURISDICTION .................................................................................................................. 3

BACKGROUND .................................................................................................................. 4

    A.    The Chapter 11 Cases ............................................................ 4

    B.    LBHI's Chapter 11 Plan.......................................................... 4

    C.    LBT's Liquidation ................................................................. 6

    D.    Excess Payment to Capital Partners......................................... 7

RELIEF REQUESTED.......................................................................................................... 8

    A.    The Plan Expressly Contemplates Disgorgement of the Excess Payment ........... 11

    B.    Section 502(j) of the Bankruptcy Code Contemplates Disgorgement of the
Excess Payment ....................................................................... 12

    C.    Capital Partners Should Disgorge the Excess Payment and Remit to the LBHI
Estate Any Future Distributions Received from LBT ......................................... 14

NOTICE............................................................................................................................ 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bio Medica Corp. v. Bailey*,
  341 F.Supp.3d 142 (N.D.N.Y. 2018) ......................................................................2

*Attestor Capital v. Lehman Bros Holdings Inc. (In re Lehman Bros Holdings Inc.)*,
  18 Civ. 7682 (KPF), 18 Civ. 7804 (KPF), 2019 WL 3852445 (S.D.N.Y. Aug. 16, 2019) ...............................................................................................5, 9, 10, 11

*In re Frontier Ins. Grp., Inc.*,
  585 B.R. 685 (Bankr. S.D.N.Y. 2018) .....................................................................9

*In re Granite Broad. Corp.*,
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) ...................................................................10

*In re Guild Music Corp.*,
  163 B.R. 17 (Bankr. D.R.I 1994) ...........................................................................13

*Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
  7 F.3d 32 (2d Cir. 1993) ..........................................................................................8

*In re K.D. Co., Inc.*,
  254 B.R. 480 (10th Cir. 2000) ...............................................................................10

*In re Oversight & Control Comm'n of Avanzit, S.A.*,
  385 B.R. 525 (Bankr. S.D.N.Y. 2008) .....................................................................9

*In re R&W Enters.*,
  181 B.R. 624 (Bankr. N.D. Fla. 1994) .............................................................12, 13

*In re Residential Capital, LLC*,
  698 Fed.Appx 16 (2d Cir. 2017) ..............................................................................4

*In re Robinson*,
  Adv. Proc. No. 99-01048, 2001 WL 36160438 (Bankr. D. Vt. May 22, 2001) ......13

*In re Sims*,
  278 B.R. 457 (Bankr. E.D. Ten. 2002) .............................................................12, 13

*In re South Side House, LLC*,
  474 B.R. 391 (Bankr. E.D.N.Y. 2012) ...................................................................10

i

*In re Sturm*,
121 B.R. 443 (Bankr. E.D. Pa. 1990) ....................................................................................13

*In re Talbot*,
124 F.3d 1201 (10th Cir. 1997) ....................................................................................12, 13

*In re Victory Mkts., Inc.*,
221 B.R. 298 (2d Cir. BAP 1998)..........................................................................................9

**Statutes**

11 U.S.C. § 105(a) .......................................................................................................................8

11 U.S.C. § 502(j)............................................................................................................. *passim*

11 U.S.C. § 1141(a) ...................................................................................................................10

11 U.S.C. § 1142 .........................................................................................................................3

11 U.S.C. § 1142(a) .................................................................................................................8, 9

28 U.S.C. § 157............................................................................................................................3

28 U.S.C. § 157(b)........................................................................................................................3

28 U.S.C. § 1334...........................................................................................................................3

DMSLIBRARY01\20666\230003\35104526.v2-9/17/19

Lehman Brothers Holdings Inc. ("**LBHI**" or the "**Plan Administrator**"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* ("**Plan**")[1] for the entities in the above-referenced chapter 11 cases ("**Chapter 11 Cases**"), respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      In connection with LBHI's bankruptcy case, various creditors filed guarantee claims against LBHI where the primary obligor was its affiliate, Lehman Brothers Treasury Co. B.V. ("**LBT**").  Those guarantee claims were allowed in the LBHI bankruptcy case ("**Allowed Guarantee Claims**") and claims against LBT ("**Primary Claims**") were also allowed in an insolvency proceeding concerning LBT in Amsterdam, Holland.[2]  Pursuant to the Plan, an Allowed Guarantee Claim against LBHI is deemed satisfied in full when distributions from LBHI, combined with distributions or other consideration provided on account of the corresponding Primary Claim, equal the amount of the Allowed Guarantee Claim.

2.      LBHI has made distributions on account of certain Allowed Guarantee Claims that combined with the consideration from LBT on the associated Primary Claims totals more than the amount of the Allowed Guarantee Claims.  The Plan Administrator has demanded the return of the excess from such holders and, while many of them have complied and returned the excess, others have not.  The Allowed Guarantee Claim paid the largest excess that has not been returned to the Plan Administrator ("**Excess Payment**") is the one held by Capital Partners Securities Co., Ltd. ("**Capital Partners**").

---

[1]    A copy of the Plan is attached hereto as **Exhibit "A."**

[2]    In general, the Primary Claims are based on structured securities that were issued by LBT and guaranteed by LBHI.

1

3.      The Plan Administrator's mandate is to enforce the confirmed Plan (which is the functional equivalent of a contract between LBHI and its creditors) so that, among other things, no creditor of an insolvent debtor recovers more than the amount of its Allowed Claim.  If any creditor does receive an excess payment, that creditor must return such payment to the bankruptcy estate.  That is precisely what the Plan Administrator requests here through disgorgement and the return of the Excess Payment from Capital Partners.  This remedy is expressly contemplated by both the Plan and the Bankruptcy Code.  Specifically, Section 8.13 of the Plan provides that the holder of an Allowed Guarantee Claim cannot receive more than the allowed amount of its claim, and disgorgement of any excess payments is expressly referenced therein.  *See* Plan, §§ 8.13(a), 8.13(f).  Moreover, Section 502(j) of the Bankruptcy Code explicitly references a trustee's right to recover excess payments made to a creditor.   Both the Plan and Section 502(j) of the Bankruptcy Code are consistent with the common law doctrine of unjust enrichment.[3]

4.      As LBT continues to make distributions to its creditors, the amount of the Excess Payments will grow.  Essentially, funds paid by LBT with respect to Capital Partners' Primary Claim are an accumulating credit against the amount that LBHI paid to Capital Partners on account of its Allowed Guarantee Claim.  Accordingly, this Motion seeks an order in aid of execution of the Plan directing Capital Partners to (a) return the Excess Payment in the amount of $5,718,351.21 forthwith to LBHI's bankruptcy estate, and (b) remit to the LBHI bankruptcy estate all future payments paid by LBT on account of its Primary Claim until such time as LBHI is reimbursed in

---

[3]   "New York courts have defined the 'essence' of unjust enrichment as a situation where 'one party is in possession of money or property that rightly belongs to another.'"  *American Bio Medica Corp. v. Bailey*, 341 F.Supp.3d 142, 162 (N.D.N.Y. 2018) (quoting *Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 819 N.Y.S.2d 182, 187 (3d Dept. 2006).  This is exactly the situation here as Capital Partners is in possession of funds that rightfully belongs to the Plan Administrator who will thereupon distribute the same to other LBHI creditors in accordance with the Plan.

full for all prior Distributions made by LBHI to Capital Partners on account of its Allowed Guarantee Claim.[4]

### JURISDICTION

5.    This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Section 14.1 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.    Pursuant to the Order confirming the Plan ("**Confirmation Order**") [ECF No. 23023],[5] this Court retained exclusive jurisdiction over all matters arising under or related to the Chapter 11 Cases, including, without limitation, those set forth in Article XIV of the Plan. *See* Confirmation Order, ¶ 77. Section 14.1 of the Plan provides for the retention by the Court of exclusive jurisdiction to, among other things, "issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code" and "enter and implement other orders, and take such other actions as may be necessary or appropriate to enforce . . . the Plan, the Confirmation Order or any other order of the Bankruptcy Court." Plan §§ 14.1(e), (i). In addition, Section 14.1(k) of the Plan provides that the Court has jurisdiction to "hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located or to determine or declare entitlement to such assets and property . . . ."

7.    Capital Partners is the holder of an Allowed Guarantee Claim and has received payments from the LBHI bankruptcy estate on account thereof. It has therefore submitted to the

---

[4]    The amount paid by LBHI on account of Capital Partners Allowed Guaranty Claim is $6,127,032.24. As noted, Capital Partners is not the only holder of Allowed Guarantee Claims that received an excess payment on an Allowed Guarantee Claim. Other holders of Allowed Guarantee Claims that received excess payments will be served with this Motion. The Plan Administrator reserves its rights to seek disgorgement of excess payments received by other holders of Allowed Guarantee Claims. The Plan Administrator believes that if it is successful in this Motion, the other recalcitrant guarantee creditors will fall in line and return their excess payments, and that this Motion is the most efficient path to achieving that result.

[5]    A copy of the Confirmation Order is attached hereto as **Exhibit "B."**

jurisdiction of this Court with respect to all matters arising from that claim and the payments made

with respect thereto, including all issues relating to any Excess Payment on account of its Allowed

Guarantee Claim.[6]

## BACKGROUND

**A.    The Chapter 11 Cases**

8.    Commencing on September 15, 2008, and periodically thereafter, LBHI and certain

of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy

Code.

9.    On August 10, 2011, the Court entered an Order approving procedures for

determining the Allowed amounts of Claims (including Guarantee Claims) with respect to

Lehman-based structured securities [ECF No. 19120] ("**Structured Securities Procedures**

**Order**").[7]  The Structured Securities Procedures Order established an ISIN-by-ISIN[8] method of

valuing and allowing the Guarantee Claims that correspond to the Primary Claims.  The Plan

Administrator has utilized that method in valuing and allowing such Guarantee Claims.

**B.    LBHI's Chapter 11 Plan**

10.    On December 6, 2011, the Court entered the Confirmation Order.  The Plan became

effective on March 6, 2012.  Pursuant to the Plan, LBHI, as Plan Administrator, is authorized "to

carry out and implement all provisions of the Plan . . . ."  Plan, § 6.1(b).

---

[6]    *See, e.g.*, *In re Residential Capital, LLC*, 698 Fed.Appx 16, 17 (2d Cir. 2017) ("A claimant who files a proof of claim with the bankruptcy court 'triggers the process of 'allowance and disallowance of claims,' and, therefore, a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim."  (quoting *In re CBI Holding, Co.*, 529 F.3d 432, 466 (2d Cir. 2008)).

[7]    A copy of the Structured Securities Procedures Order is attached hereto as **Exhibit "C."**

[8]    "ISIN" stands for "International Securities Identification Numbers."

11.     Section 8.13 of the Plan is entitled "Maximum Distribution."  As confirmed in

*Attestor Capital v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 18 Civ. 7682

(KPF), 18 Civ. 7804 (KPF), 2019 WL 3852445, at *8-9 (S.D.N.Y. Aug. 16, 2019) (referred to

herein as "***Attestor/LBHI***" or the "***Attestor/LBHI Opinion***"), this provision of the Plan governs

"how and to what extent Appellee [LBHI] would be liable for debts unpaid by its subsidiaries in

foreign bankruptcy proceedings."  *Attestor/LBHI*, 2019 WL 3852445, at *4.

12.     Section 8.13(a) provides, in relevant part:

> An . . . Allowed Guarantee Claim that receives Distributions . . . that combined with
> Distributions or other consideration provided on the corresponding Primary Claim
> . . . equal the Allowed amount of such Guarantee Claim . . . shall . . . be deemed
> satisfied in full as to such . . . Allowed Guarantee Claim against the applicable
> Debtor.  To the extent that an Allowed Guarantee Claim is deemed satisfied in full,
> LBHI shall be entitled to receive future Distributions or consideration on account
> of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the
> Plan to the extent of LBHI's Distribution on account of such Guarantee Claim *less*
> *any amounts received by LBHI by way of disgorgement thereof*. [emphasis
> added][9]

13.     Section 8.13(b) of the Plan further provides, in relevant part, that "[i]n no event

shall . . . an Allowed Guarantee Claim receive Distributions . . . that combined with Distributions

or other consideration provided on the corresponding Primary Claim . . . ***are in excess of the***

***Allowed amount of the Guarantee Claim*** . . . ." (emphasis added).  Thus, holders of Allowed

Guarantee Claims are not permitted to receive more than 100% of their allowed claims, when all

sources of payment or other consideration received by the holder are taken into account.

---

[9]     Section 8.14(a) of the Plan, which concerns subrogation rights, is not implicated by this Motion.  That Section
provides:

> Except as otherwise agreed by the Debtors, to the extent that a Debtor now has or becomes legally entitled to be
> subrogated to the rights of any Creditor, including on account of any Distributions received by holders of Allowed
> Guarantee Claims that are satisfied in full in accordance with Section 8.13(a) of the Plan, (i) such Creditor shall
> be deemed to have consented to the subrogation of its right against any third-party, including, without limitation,
> a Primary Obligor, that may be obligated to reimburse or indemnify the Debtor for all or a portion of such
> Distribution, or (ii) the Debtor shall have all rights, title and power as subrogee of the Creditor against any such
> third-party, including, without limitation, a Primary Obligor, to the fullest extent permitted by applicable law.

14.     Section 8.13(f) of the Plan also provides as follows:

Any portion of any Distribution made by LBHI to the holder of an Allowed
Guarantee Claim that is recovered pursuant to Section 8.13 or 8.14 of the Plan,
whether by way of subrogation, ***disgorgement*** or otherwise, shall be treated as
Available Cash of LBHI and distributed accordingly.  [emphasis added].

## C.     **LBT's Liquidation**

15.     LBT is a subsidiary of LBHI and is not a debtor in these Chapter 11 Cases.  On

October 8, 2008, LBT was declared bankrupt by the Amsterdam District Court.  Bankruptcy

trustees for LBT were thereafter appointed.

16.     On March 13, 2013, the Amsterdam District Court issued a decision approving

LBT's composition plan, which became effective on April 3, 2013.

17.     On April 12, 2013, LBT published final valuations for Primary Claims against LBT

on an ISIN-by-ISIN basis.  Certain Primary Claims were allowed by LBT in substantially higher

amounts than the corresponding Allowed Guarantee Claims were allowed by LBHI.

18.     Pursuant to previous distributions made by LBHI and LBT, certain Primary Claims

received consideration sufficient to satisfy LBHI's obligations on the corresponding Allowed

Guarantee Claims under Sections 8.13(a) and (b) of the Plan.  In that regard, the Plan Administrator

previously filed an objection to deem certain Allowed Guarantee Claims satisfied in full in

accordance with the Plan.  *See The Plan Administrator's Five-Hundred Twenty-First Omnibus*

*Objection To Claims (Satisfied Guarantee Claims)*, dated August 11, 2017 [ECF No. 55962]

("**Satisfied Guarantee Claims Objection**").  In that Objection, the Plan Administrator reserved

"all rights to recover amounts paid on account of Satisfied ISIN Claims in excess of amounts

permitted by the Plan."  Satisfied Guarantee Claims Objection, ¶ 14.[10]  The Court entered an Order

---

[10]     A copy of the Satisfied Guarantee Claims Objection is attached hereto as **Exhibit "D."**

("**Satisfied Guarantee Claims Order**") granting the Satisfied Guarantee Claims Objection on September 19, 2017 [ECF No. 56275].[11]

### D.    **Excess Payment to Capital Partners**

19.    Capital Partners is the holder of an Allowed Guarantee Claim (which is a portion of Claim No. 62783) that is based on Lehman structured securities.  Capital Partners' Allowed Guarantee Claim was deemed satisfied in full pursuant to the Satisfied Guarantee Claims Order.  As of the date of this Motion, taking into account distributions made by LBHI and LBT to date, the Excess Payment equals $5,718,351.21.

20.    On June 6, 2018, the Plan Administrator sent Capital Partners a letter ("**Plan Administrator June 2018 Letter**"),[12] explaining that pursuant to the Plan, Capital Partners' Allowed Guarantee Claim had been satisfied in full, and that Capital Partners received the Excess Payment.  Attached to the Plan Administrator June 2018 Letter was a schedule detailing (i) the allowed amounts of Capital Partners' Guarantee Claim against LBHI and its Primary Claim against LBT, (ii) the amount of distributions made by LBHI to Capital Partners on account of the Allowed Guarantee Claim, (iii) the amount of distributions made by LBT to Capital Partners on account of the Primary Claim, and (iv) the Excess Payment amount.  The Plan Administrator June 2018 Letter requested that Capital Partners promptly repay the amount of the Excess Payment to the LBHI bankruptcy estate.  Capital Partners did not respond to the Plan Administrator June 2018 Letter.

---

[11]    A copy of the Satisfied Guarantee Claims Order is attached hereto as **Exhibit "E."**  On the same day that it filed the Satisfied Guarantee Claims Objection, the Plan Administrator also filed the *Motion Of Plan Administrator Pursuant To Sections 105(a) And 1142(b) Of The Bankruptcy Code To Establish Procedures For Distributions On Account Of Guarantee Claims Corresponding To Certain Primary Claims Against Lehman Brothers Treasury Co. B.V.* [ECF No. 55963] ("**Guarantee Claims Procedures Motion**").  The Guarantee Claims Procedures Motion sought to establish procedures to govern the deemed satisfaction of Allowed Guarantee Claims.  The Court entered an Order establishing such procedures on September 19, 2017 [ECF No. 56274].  The Guarantee Claims Procedures Motion did not address the Excess Payment issue raised in this Motion.

[12]    A copy of the Plan Administrator June 2018 Letter is attached hereto as **Exhibit "F."**

The Plan Administrator followed up on its request by e-mail dated July 9, 2018 ("**Plan Administrator July 2018 E-mail**"),[13] but again no response was received.

21.    On November 30, 2018, the Plan Administrator sent Capital Partners a second letter ("**Plan Administrator November 2018 Letter**"),[14] which was substantially the same as the Plan Administrator June 2018 Letter.  Receiving no response again, the Plan Administrator sent a follow-up e-mail on January 16, 2019 ("**Plan Administrator January 2019 E-mail**").[15]  While Capital Partners has not responded to any of the Plan Administrator's correspondence regarding the Excess Payment, and has not repaid the Excess Payment, during this same time period, Capital Partners has communicated with the Plan Administrator on other matters.[16]

## **RELIEF REQUESTED**

22.    It is well established that the Court has broad authority, pursuant to Sections 105(a) and 1142(b) of the Bankruptcy Code, to issue orders necessary to implement the provisions of the Plan and the Bankruptcy Code.  *See* 11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan."); 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (holding that bankruptcy courts

---

[13]    A copy of the Plan Administrator July 2018 E-mail is attached hereto as **Exhibit "G."**

[14]    A copy of the Plan Administrator November 2018 Letter is attached hereto as **Exhibit "H."**

[15]    A copy of the Plan Administrator January 2019 E-mail is attached hereto as **Exhibit "I."**

[16]    *See* E-mail transmission from Mitsugu Saito to DL-lehmancallcenter, dated March 19, 2019 , a copy of which is attached hereto as **Exhibit "J."**  This email was sent by Mr. Saito who was the recipient of the Plan Administrator correspondence regarding the need to return the Excess Payment.

retain post-confirmation jurisdiction to the extent provided by the plan); *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535 (Bankr. S.D.N.Y. 2008) ("The bankruptcy court retains jurisdiction under 11 U.S.C. § 1142(b) . . . and it has continuing responsibilities to satisfy itself that the [p]lan is being properly implemented.") (internal quotation marks omitted)).

23.    By this Motion, the Plan Administrator seeks an Order from this Court, in aid of execution of the Plan, directing Capital Partners to return the Excess Payment to the LBHI bankruptcy estate, and that any future payments made by LBT on account of Capital Partners' Primary Claim be paid to LBHI until such time as LBHI is reimbursed for all prior Distributions made by LBHI to Capital Partners on account of its Allowed Guarantee Claim.

24.    The relief requested in this Motion is based on, *inter alia*, the Plan. A confirmed chapter 11 plan is equivalent to a binding contract between the debtor and its creditors. *See Attestor/LBHI*, 2019 WL 3852445, at *7 ("A confirmed Chapter 11 plan is treated as a binding contract on all parties to the plan."); *In re Victory Mkts., Inc.*, 221 B.R. 298, 303 (2d Cir. BAP 1998) ("[A] confirmed plan holds the status of a binding contract as between the debtor and its creditors.") One court likened a confirmed plan to a "super contract":

> It is often stated that a chapter 11 plan is a new contract between the debtor and its creditors, albeit one signed only by the plan proponent, in this case FIGI. References to chapter 11 plans as contracts or agreements—while useful for purposes of interpreting plans—are only by analogy, however. The binding effect of a chapter 11 plan is in fact premised on statutory and common law claim preclusion. That is, for the debtor, its creditors and holders of interests, the chapter 11 plan is the crucible by which the parties' claims and rights in property dealt with by the plan are transformed and governed post-confirmation—a "super-contract"— not because it is signed by all of the parties with claims against the debtor and holders of interests affected by the plan who participated in the case, but because of applicable provisions of the Bankruptcy Code and principles of res judicata.

*In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018) (citations omitted).

Accordingly, Capital Partners is bound by the terms of the confirmed Chapter 11 Plan, which the

Bankruptcy Court is required to enforce.  *See* 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor . . . and any creditor . . ."); *Attestor/LBHI*, 2019 3852445, at *4 (the Plan "govern[s], *inter alia*, how and to what extent [LBHI] would be liable for debts unpaid by its subsidiaries in foreign bankruptcy proceedings");  *In re K.D. Co., Inc.*, 254 B.R. 480, 491 (10th Cir. 2000) ("[T]he bankruptcy court was required to enforce the binding Confirmed Plan.").  As demonstrated below, the Plan unequivocally provides that a guarantee creditor—*e.g.*, Capital Partners—cannot recover more than the Maximum Amount of its Allowed Claim and, if it does, the Plan Administrator can seek to recover that excess payment.[17]

25.    The relief requested in the Motion is also based on the provisions of the Bankruptcy Code which concern the fair and equal treatment of all creditors.  Those provisions are construed to mean that a creditor of an insolvent debtor cannot receive more than the allowed amount of its claim.  *See In re Granite Broad. Corp.*, 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007 ("[t]here is no dispute that a class of creditors cannot receive more than full consideration for its claims . . ."); *In re South Side House, LLC*, 474 B.R. 391, 420 (Bankr. E.D.N.Y. 2012) ("a creditor cannot receive more than its allowed claim . . .").  If a creditor does receive an excess distribution, the Bankruptcy Code contemplates that such excess funds be recovered by the bankruptcy estate.  *See* 11 U.S.C. § 502(j).

26.    Accordingly, as demonstrated below, pursuant to the applicable provisions of the Plan and Bankruptcy Code, the relief requested in this Motion should be granted.

---

[17]    LBHI waived its subrogation rights with respect to LBT.  *See* Plan, § 6.5(b)(iii).  Although it has no remedy against LBT, the Plan was drafted to preserve LBHI's remedies against the holders of Allowed Guarantee Claims to the extent they receive an excess payment.  The Plan has a precise formula for calculating when an Allowed Guarantee Claim will be deemed satisfied in full.  Any overage received after full payment on that Allowed Guarantee Claim will lead to an excess payment, which can grow based on future distributions made to such creditor.  The holders of Allowed Guarantee Claims are bound by the formulas in the Plan as to the calculation of their claims, when such Claims will be deemed satisfied in full, and are subject to the disgorgement remedy for any excess payments received.

**A.**     **The Plan Expressly Contemplates Disgorgement of the Excess Payment**

27.     The relevant provisions of the Plan, which are binding on Capital Partners, are found in Section 8.13, entitled "Maximum Distributions." This Section of the Plan provides that holders of Allowed Guarantee Claims (including Capital Partners) are not permitted to receive more than 100% of their allowed claims, when all sources of payment or consideration received are taken into account.

28.     Moreover, both Section 8.13(a) and Section 8.13(f) of the Plan specifically contemplate a "disgorgement" remedy in the event of excess payments on an allowed claim. *See* Plan, § 8.13(a) ("To the extent that an Allowed Guarantee Claim is deemed satisfied in full, LBHI shall be entitled to receive future Distributions or consideration on account of the corresponding Primary Claim as subrogee pursuant to Section 8.14(a) of the Plan to the extent of LBHI's Distribution on account of such Guarantee Claim *less any amounts received by LBHI by way of disgorgement thereof*." (emphasis added)); Plan, § 8.13(f) ("Any portion of any Distribution made by LBHI to the holder of an Allowed Guarantee Claim that is recovered pursuant to Section 8.13 or 8.14 of the Plan, whether by way of subrogation, *disgorgement* or otherwise, shall be treated as Available Cash of LBHI and distributed accordingly." (emphasis added)).

29.     "As with any contract, the starting point for review of a plan is its plain language. Unless some ambiguity is to be found within the plan itself, the Court has no basis to look beyond its text. When interpreting a confirmed plan, the principles of contract law apply." *Attestor/LBHI*, 2019 WL 3852445, at *7 (citations and internal quotation marks omitted). "'A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id.* at *10 (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569

(2002)).  A plan provision, like Section 8.13, is unambiguous where its terms have a definite and precise meaning as to which there is no reasonable basis for a difference of opinion.  *Id*.

30.    Accordingly, since the language used in Sections 8.13(a) and 8.13(f) of the Plan contemplates that if distributions on an Allowed Guarantee Claim—*e.g.*, Capital Partners' Allowed Guarantee Claim— equals more than 100% of the allowed amount of the claim, the Plan Administrator is entitled to seek disgorgement of that Excess Payment.  Thus, Capital Partners should be required to return the excess to the LBHI bankruptcy estate.  Capital Partners should not be unjustly enriched at the expense of other claim holders who have allowed Claims against the LBHI bankruptcy estate.

**B.    Section 502(j) of the Bankruptcy Code Contemplates Disgorgement of the Excess Payment**

31.    In addition to the terms of the Plan, the Bankruptcy Code also contemplates a disgorgement remedy.  Section 502(j) of the Bankruptcy Code expressly provides that "[t]his subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor."  This "unrelated final sentence of Section 502(j)" provides a disgorgement avenue for the trustee "as it preserves the Trustee's Bankruptcy Act powers to 'recover from a creditor any excess payment or transfer made to such creditor.'"  *In re R&W Enters.*, 181 B.R. 624, 636-37 (Bankr. N.D. Fla. 1994).  Moreover, "[i]t is clear from this statement [the last sentence in Section 502(j)] that a trustee's authority to recover overpayments from a creditor is implied or contemplated by the Bankruptcy Code notwithstanding the absence of a specific Bankruptcy Code provision expressly granting such authority."  *In re Sims*, 278 B.R. 457, 477 (Bankr. E.D. Ten. 2002).

32.    A case cited in *Sims* that is factually similar to LBHI's situation is *In re Talbot*, 124 F.3d 1201 (10th Cir. 1997).  As recounted in *Sims*:

the chapter 13 trustee in *Talbot* sought disgorgement of overpayments made by her
to the Internal Revenue Service.  The court held that the IRS's receipt of funds
outside the plan by the debtors enabled it to receive more than it was entitled under
the terms of the debtors' confirmed plan.  Based on the binding effect of
confirmation as provided by 11 U.S.C. § 1326(a), the court of appeals concluded
that "the bankruptcy court had the power to order the IRS to disgorge all sums that
it extracted from the Talbots in derogation of the Plan."

*Sims*, 278 B.R. at 477 (citing *Talbot*, 124 F.3d at 1209).  While *Talbot* was a chapter 13 case, the

same principles apply here.

33.    The *R&W Enters.* case (referenced above) concerned a chapter 7 trustee seeking to

recover a distribution that was made to the IRS which should have been made to the county tax

assessor.  The court found that "[t]he IRS, in the case at hand, received a dividend from the

bankruptcy estate based upon a proof of claim filed in the bankruptcy case.  Any amount in excess

of the amount the IRS should have received must be redistributed to a creditor having a claim

against the bankruptcy estate."  *Id.*, 181 B.R. at 641.[18]  The court concluded:

> In an attempt to balance the equities in this case, this Court concludes that the
> combined effect of claims reconsideration under Fed.R.Bankr.P. 3008 and the
> Trustee's powers to recover excess dividends from overpaid creditors under Section
> 502(j) of the Bankruptcy Code, require that the County receive payment for its 1987
> taxes and that the source of the funds for that payment should be the amount
> overpaid the IRS.

*Id.* at 648.  Accordingly, the court directed the IRS to return the excess distribution to the estate.

*Id.* at 653; *see also In re Robinson*, Adv. Proc. No. 99-01048, 2001 WL 36160438, at *4 (Bankr.

D. Vt. May 22, 2001) ("there is no question that [the defendants] received a distribution greater

---

[18]    The *R&W Enterprises* court reviewed other decisions where a trustee was authorized to recover excess
distributions.  *See, e.g., In re Sturm*, 121 B.R. 443, 450 (Bankr. E.D. Pa. 1990) ("Usually, however, an erroneous
distribution effects a windfall to other creditors.  Normally, a trustee may recover distributions which he has
mistakenly made from the recipients receiving the windfall due to a factual mistake.") (citations omitted)); *In re
Guild Music Corp.*, 163 B.R. 17, 18 (Bankr. D.R.I 1994) (recognizing that Section 502(j) "provides ample
authority to support the Trustee's request [to recover improperly paid funds] and that the attempt to collect
overpayments is not prejudicial to creditors who receive monies to which they are not entitled . . .").

than they are entitled to under the Bankruptcy Code.  Thus, the defendants must disgorge the excess distribution.").

**C.    Capital Partners Should Disgorge the Excess Payment and Remit to the LBHI Estate Any Future Distributions Received from LBT**

34.    Here, the Plan Administrator, pursuant to the Plan, has calculated the amount of distributions on the Capital Partners' Allowed Guarantee Claim made to date and the distributions made by LBT on the underlying Primary Claim.  The Plan Administrator determined that the Excess Payment was made on Capital Partners' Allowed Guarantee Claim, and informed Capital Partners of this fact, providing a detailed schedule explaining the amount of the Excess Payment. Capital Partners has not disputed the Plan Administrator's calculations or that Capital Partners received the Excess Payment.

35.    Based on the foregoing, both the language in Section 8.13 of the Plan and Section 502(j) of the Bankruptcy Code require Capital Partners to return the Excess Payment to the LBHI bankruptcy estate so that such funds can be redistributed to holders of other Allowed Claims.

36.    In addition, LBT continues to make distributions on Primary Claims, including a Primary Claim held by Capital Partners.  Accordingly, the amount of the Excess Payment to Capital Partners will grow as LBT continues to make distributions to Capital Partners on account of its Primary Claim.  This Motion, therefore, also seeks an order directing Capital Partners to remit to the LBHI estate all future payments received from LBT on account of Capital Partners' Primary Claim until such time as LBHI is reimbursed for all prior Distributions made by LBHI to Capital Partners on account of Capital Partners' Allowed Guarantee Claim.

## NOTICE

37.    The Plan Administrator has served notice of this Motion on (i) the United States Trustee for Region 2; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the United States Attorney for the Southern District of New York; (v) Capital Partners Securities Co., Ltd; (vi) all other holders of Allowed Guarantee Claims who received excess distributions; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the Second Amended Order entered on June 17, 2010 governing case management and administrative procedures for these cases [ECF No. 9635].  The Plan Administrator submits that no other or further notice need be provided.

WHEREFORE, the Plan Administrator respectfully requests that the Court grant the relief requested herein, in the form of the order attached hereto as **Exhibit "K,"** and such other and further relief as is just and proper.

Dated: New York, New York
      September 17, 2019               KING & SPALDING


                                By:  /s/ Arthur Steinberg
                                    Arthur Steinberg
                                    Scott Davidson
                          1185 Avenue of the Americas
                          New York, NY  10036
                          (212) 556-2100

                          *Attorneys for Lehman Brothers Holdings*
                          *Inc., as Plan Administrator*